WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice* pending)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice* pending)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice* pending)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Case Nos.     19-\_\_\_\_\_ (\_\_\_) <br>                      19-\_\_\_\_\_ (\_\_\_) |
| **PG&E CORPORATION,** | |
|                   **Debtor.** | Chapter 11 |
| **Tax I.D. No. 94-3234914** | **MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(A) AND 362 FOR INTERIM AND FINAL ORDERS ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF STOCK OF, AND CLAIMS AGAINST, THE DEBTORS** |
| **In re:** | |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
|                   **Debtor.** | Date: <br> Time: <br> Place: |
| **Tax I.D. No. 94-0742640** | |

Case: 19-30088    Doc# 10    Filed: 01/29/19    Entered: 01/29/19 00:51:17    Page 1 of 22

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of interim and final orders authorizing the Debtors to establish procedures (the "**Procedures**") to protect the potential value of the Debtors' consolidated net operating loss carryforwards ("**NOLs**") and other tax benefits (collectively, the "**Tax Attributes**") for use in connection with the reorganization of the Debtors. The Procedures apply to (a) common stock of PG&E Corp. (the "**Common Stock**") and preferred stock of Utility ("**Preferred Stock**") (together with the Common Stock, the "**PG&E Stock**") and any options or similar rights (within the meaning of applicable Treasury Regulations) to acquire such stock (the "**Options**"), and (b) claims (each, as defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors (a "**Claim**"). The Debtors request relief effective *nunc pro tunc* to the date hereof.

A proposed form of order granting the relief requested herein on an interim basis (the "**Proposed Interim Order**") is annexed hereto as __Exhibit A__. A proposed form of order granting the relief requested herein on a final basis (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**") is annexed hereto as __Exhibit B__.

# **TABLE OF CONTENTS**

**Page**

I.      JURISDICTION .................................................................................................................7

II.     BACKGROUND ................................................................................................................7

III.    SUBJECT OF MOTION....................................................................................................7

        A.      The Debtors' Tax Attributes ...............................................................................7

        B.      The Proposed Procedures Relating to PG&E Stock .............................................9

        C.      The Proposed Procedures Relating to Claims.....................................................12

IV.     BASIS FOR RELIEF REQUESTED................................................................................15

        A.      The Automatic Stay Bars Any Equity Transfer that Would Diminish or Limit the Debtors' Interests in the Tax Attributes............................15

        B.      The Procedures Are Necessary and in the Best Interests of the Debtors, Their Estates, and Their Creditors........................................................18

        C.      The Relief Requested Should Be Granted on an Interim Basis .........................21

V.      RESERVATION OF RIGHTS .........................................................................................21

VI.     NOTICE ..........................................................................................................................22

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-30088    Doc# 10    Filed: 01/29/19    Entered: 01/29/19 00:51:17    Page 3 of 22

# **TABLE OF AUTHORITIESS**

**Cases**                                         **Page(s)**

*In re Aéropostale, Inc.*,
    Case No. 16-11275 (SHL), ECF Doc. 240 (Bankr. S.D.N.Y. June 3, 2016) .................................. 17

*In re AMR Corp.*,
    Case No. 11-15463 (SHL), ECF Doc. 890 (Bankr. S.D.N.Y. Jan. 27, 2012) .................................. 17

*In re Blue Earth, Inc.*,
    Case No. 10 16-30296 (DM), ECF Doc. 30 (Bankr. N.D. Cal. March 23, 2016) .......................... 17

*In re Delta Air Lines, Inc.*,
    Case No. 05-17923 (PCB), ECF Doc. 1640 (Bankr. S.D.N.Y. Dec. 20, 2005).............................. 17

*In re Fruehauf Trailer Corp.*,
    444 F.3d 203 (3d Cir. 2006) .................................................................................................... 16

*Gibson v. United States (In re Russell)*,
    927 F.2d 413 (8th Cir. 1991) .................................................................................................. 16

*In re The Great Atl. & Pac. Tea Co.*,
    Case No. 15-23007 (RDD), ECF Doc. 501 (Bankr. S.D.N.Y. Aug. 11, 2015) .......................... 17

*In re Grossman's Inc.*,
    No. 97-695 (PJW), 1997 WL 33446314 (Bankr. D. Del. Oct. 9, 1997) .................................... 15

*In re Metrocall, Inc.*,
    Case No. 02-11579, ECF Doc. 290 (Bankr. D. Del. July 8, 2002) ............................................ 17

*Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*,
    222 B.R. 417 (Bankr. S.D.N.Y. 1998) .................................................................................... 15

*Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*,
    928 F.2d 565 (2d Cir. 1991).............................................................................................. 15, 16

*In re Phar-Mor, Inc.*,
    152 B.R. 924 (Bankr. N.D. Ohio 1993) ............................................................................ 16, 17

*In re Reliance Acceptance Grp. Inc.*,
    Case No. 98-288 (PJW), ECF Doc. 270 (Bankr. D. Del. Apr. 28, 1998) .................................. 17

*United States v. Towers (In re Feiler)*,
    230 B.R. 164 (B.A.P. 9th Cir. 1999).......................................................................................... 15

*In re WorldCom, Inc.*,
    Case No. 02-13533 (AJG), ECF Doc. 3613 (Bankr. S.D.N.Y. Mar. 5, 2003)............................ 17

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Statutes**

26 C.F.R. § 1.382-3(a) .................................................................................................... 10, 13

26 C.F.R. § 1.382-4 .......................................................................................................... 10

26 C.F.R. § 1.382-9(d)(3) ................................................................................................. 19

26 C.F.R. § 1.1502-92(c)(3)(i) ........................................................................................... 9

11 U.S.C. § 105 ................................................................................................................ 15

11 U.S.C. § 105(a) ......................................................................................................... 2, 16

11 U.S.C. § 362(a)(3) ................................................................................................... 17, 18

11 U.S.C. § 365 ................................................................................................................ 21

11 U.S.C. § 541 ................................................................................................................ 15

11 U.S.C. § 1107(a) ........................................................................................................... 7

11 U.S.C. § 1108 ................................................................................................................ 7

26 U.S.C. § 38 .................................................................................................................... 7

26 U.S.C. § 172 .................................................................................................................. 7

26 U.S.C. § 382 .......................................................................................................... *passim*

26 U.S.C. § 382(g) ............................................................................................................. 8

26 U.S.C. § 382(*l*)(5) ................................................................................................. *passim*

26 U.S.C. § 382(*l*)(5)(A) ................................................................................................. 19

26 U.S.C. § 382(*l*)(5)(E) ................................................................................................. 19

26 U.S.C. § 382(*l*)(6) ....................................................................................................... 20

26 U.S.C. § 383 .................................................................................................................. 8

28 U.S.C. § 157 .................................................................................................................. 7

28 U.S.C. § 157(b) ............................................................................................................. 7

28 U.S.C. § 1334 ................................................................................................................ 7

28 U.S.C. § 1408 ................................................................................................................ 7

28 U.S.C. § 1409 ................................................................................................................ 7

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Other Authorities**

B.L.R. § 5011-1(a) ........................................................................................................... 7

Fed. R. Bankr. P. 2002 .................................................................................................... 22

Fed. R. Bankr. P. 3001 .................................................................................................... 13

Fed. R. Bankr. P. 3001(e) ............................................................................................... 18

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,*
      General Order 24 (N.D. Cal.) ................................................................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. BACKGROUND

On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in either of the Chapter 11 Cases.

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the Declaration of Jason P. Wells, Senior Vice President and Chief Financial Officer of PG&E Corp., filed contemporaneously herewith in support of the Debtors' chapter 11 petitions and related first day relief (the "**Wells Declaration**").

### III. SUBJECT OF MOTION

#### A. The Debtors' Tax Attributes

The Debtors possess certain Tax Attributes, including, as of the Petition Date, estimated federal NOLs of approximately $4 billion and certain tax credits (including investment tax credits and research and development tax credits) of approximately $115 million. The Tax Attributes are valuable assets.

Title 26 of the United States Code (the "**Tax Code**") generally permits a corporation to carry forward its NOLs to reduce future taxable income, thereby reducing, along with available tax credits, such corporation's tax liability in future periods. *See, e.g.*, 26 U.S.C. §§ 38 and 172. Accordingly, absent any intervening limitations and depending on future operating results and the consummation of taxable asset dispositions by the Debtors, the Tax Attributes could substantially reduce the Debtors' U.S. federal income tax liability for current and future periods, including during the pendency of these chapter

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

11 cases. The Tax Attributes are available to reduce the Debtors' federal income tax liability through the taxable year that includes the effective date of a chapter 11 plan and potentially thereafter, depending on the consequences of the restructuring. The Tax Attributes, therefore, could translate into future tax savings over time, and any such savings could enhance the Debtors' cash position for the benefit of all parties in interest and contribute to the Debtors' efforts toward a successful reorganization.

The Debtors' ability to utilize the Tax Attributes to reduce future tax liability is subject to certain statutory limitations. Sections 382 and 383 of the Tax Code limit a corporation's ability to utilize its NOLs, tax credits, and certain other tax benefits to offset future income once that corporation has undergone an "ownership change" within the meaning of section 382 of the Tax Code (an "**Ownership Change**"). Pursuant to section 382 of the Tax Code, an Ownership Change generally occurs when the percentage of a corporation's equity held by one or more of its "5-percent shareholders" (each, as that term is used in section 382 of the Tax Code, a "**5-Percent Shareholder**") increases by more than fifty (50) percentage points above the lowest percentage of the corporation's equity owned by such shareholder(s) at any time during the relevant testing period (usually three years). *See id*. § 382(g).

The Debtors do not believe that PG&E Corp. has undergone an Ownership Change prior to the Petition Date. Accordingly, the Debtors believe that they have significant Tax Attributes that would be severely impaired by the occurrence of an Ownership Change during the pendency of these chapter 11 cases. Therefore, it is in the best interests of the Debtors and their stakeholders (including a customer base of over 16 million residential and non-residential customers) to restrict acquisitions of PG&E Stock that could result in an Ownership Change occurring *before* the effective date of a chapter 11 plan or any applicable bankruptcy court order. Such a restriction would protect the Debtors' ability to use the Tax Attributes during the pendency of these chapter 11 cases or, potentially, in the event of a future transaction, to offset gain or other income recognized in connection with the Debtors' sale or ownership of their assets, which may be significant in amount. In the event a pre-effective date Ownership Change occurred, the resulting limitation on the Debtors' Tax Attributes primarily depends on the value of the PG&E Stock at such time, and thus becomes increasingly severe as the value of the PG&E Stock declines. Although (as described below) the limitations imposed by section 382 of the Tax Code may be significantly less restrictive when an Ownership Change occurs *pursuant* to a confirmed chapter 11

plan (or any applicable bankruptcy court order), the benefits available under section 382 of the Tax Code in connection with a confirmed chapter 11 plan (or any applicable bankruptcy court order) are not applied retroactively to reduce the limitations imposed on a corporation's ability to utilize its tax benefits resulting from a *previous* Ownership Change (such as an Ownership Change occurring during the pendency of a chapter 11 case). *See id.* § 382(*l*)(5), (6).

A chapter 11 plan that contemplates a reorganization of the Debtors may involve the issuance of new common stock in the Debtors (or any successor to the Debtors) and the distribution of such stock to certain creditors in satisfaction, in whole or in part, of their respective Claims. This issuance and distribution could potentially result in an Ownership Change. In such event, it is possible that the special relief afforded by section 382(*l*)(5) of the Tax Code could be both available and beneficial to the Debtors; the Debtors, in that circumstance, may seek to qualify the restructuring for such relief. Such relief, however, may become unavailable to the Debtors if the trading and accumulation of certain Claims prior to the effective date of a chapter 11 plan is left unrestricted.

**B.    The Proposed Procedures Relating to PG&E Stock[1]**

By establishing procedures for monitoring acquisitions of PG&E Stock (the "**Stock Procedures**"), the Debtors can preserve their ability to seek the necessary relief if it appears that any such acquisition(s) may impair the Debtors' ability to utilize their Tax Attributes. Therefore, the Debtors propose the following Stock Procedures:

(1)    <u>Definitions</u>. For purposes of these Stock Procedures, the following terms have the following meanings:

(a)    "**Acquiring Group**" shall mean any group of persons (including any Entity) that has a plan or arrangement to acquire beneficial ownership of the stock of more than one Debtor within the meaning of Treasury Regulations section 1.1502-92(c)(3)(i).

(b)    "**Beneficial ownership**" of PG&E Stock and Options to acquire PG&E Stock shall be determined in accordance with section 382 of the Tax Code, the regulations promulgated by the U.S. Department of the Treasury under the Tax Code (the "**Treasury Regulations**"), and rulings

---

[1] The Stock Procedures delineated herein summarize the relevant portion of Exhibit 1 to the Proposed Orders, which sets forth the Procedures.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

issued by the Internal Revenue Service (the "**IRS**"), and as described herein, and, thus, to the extent provided in those sources, from time to time shall include, without limitation, (A) direct and indirect ownership (but determined without regard to any rule that treats stock of an entity as to which the constructive ownership rules apply as no longer owned by that entity) e.g., a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries, (B) ownership by a holder's family members, (C) ownership by any Entity, and (D) to the extent set forth in Treasury Regulations section 1.382-4, the ownership of an Option to acquire PG&E Stock.

(c)  "**Entity**" shall mean any "entity" as such term is defined in Treasury Regulations section 1.382-3(a), including any group of persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition of PG&E Stock.

(d)  "**Substantial Stockholder**" shall mean any person (including any Entity) or Acquiring Group that beneficially owns at least 24.6 million shares of Common Stock (representing approximately 4.75% of all issued and outstanding shares of Common Stock).

(2)  <u>Notice of Substantial Ownership</u>.  Any person (including any Entity) or Acquiring Group that beneficially owns, at any time on or after the Petition Date, PG&E Stock in an amount sufficient to qualify such person or Acquiring Group as a Substantial Stockholder shall file with this Court and serve upon (i) PG&E Corporation, 77 Beale Street, P.O. Box 770000 San Francisco, California 94177 (Attn: Mark Caron); (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq.; Jessica Liou, Esq.; and Matthew Goren, Esq.), as proposed counsel to the Debtors; (iii) counsel to any statutory committees appointed in the Chapter 11 Cases (each, an "**Official Committee**"); and (iv) counsel to the lenders under the Debtors' proposed debtor in possession financing facilities (the "**DIP Lenders**") (collectively, the "**Disclosure Parties**") a notice of such person's or Acquiring Group's substantial ownership (a "**Substantial Stock Ownership Notice**"), in substantially the form annexed to the Proposed Orders as **<u>Exhibit 2</u>**, which describes specifically and in detail such person's or Acquiring Group's ownership of PG&E Stock, on or before the date that is the later of (x) twenty (20) calendar days after the entry of the order granting the requested relief or (y) ten (10) business days after such person or Acquiring Group qualifies as a Substantial Stockholder.  At the election of the filing person or Acquiring Group, the Substantial Stockholder Ownership Notice to be

filed with this Court (but not the Substantial Stock Ownership Notice that is served upon the Debtors, the attorneys for the Debtors, and the attorneys for any Official Committee) may be redacted to exclude the taxpayer identification number and the amount of PG&E Stock beneficially owned.

(3)    <u>Acquisition of PG&E Stock</u>.  At least twenty (20) business days prior to the proposed date of any transfer of PG&E Stock or exercise of any Option to acquire PG&E Stock that would result in an increase in the amount of PG&E Stock beneficially owned by any person (including any Entity) or Acquiring Group that currently is or, as a result of the proposed transaction, would be a Substantial Stockholder (a "**Proposed Acquisition Transaction**"), such person, Acquiring Group or Substantial Stockholder (a "**Proposed Transferee**") shall file with this Court and serve upon the Disclosure Parties a notice of such Proposed Transferee's intent to purchase, acquire, or otherwise accumulate PG&E Stock (an "**Acquisition Notice**"), in substantially the form annexed to the Proposed Orders as **<u>Exhibit 3</u>**, which describes specifically and in detail the Proposed Acquisition Transaction. At the election of the filing person or Acquiring Group, the Acquisition Notice to be filed with this Court (but not the Acquisition Notice that is served upon the Debtors, the attorneys for the Debtors, and the attorneys for any Official Committee) may be redacted to exclude the taxpayer identification number and the amount of PG&E Stock beneficially owned.

(4)    <u>Objection Procedures</u>. The Debtors and any Official Committee shall have fifteen (15) business days after the filing of an Acquisition Notice (the "**Objection Period**") to file with this Court and serve on a Proposed Transferee, an objection (each, an "**Objection**") to any Proposed Acquisition Transaction described in such Acquisition Notice.  If the Debtors or any Official Committee files an Objection by the expiration of the Objection Period (the "**Objection Deadline**"), then the applicable Proposed Acquisition Transaction shall not be effective unless approved by a final and nonappealable order of this Court.  If neither the Debtors nor any Official Committee file an Objection by the Objection Deadline or if the Debtors and any and all Official Committees provide written authorization to the Proposed Transferee, approving the Proposed Acquisition Transaction then such Proposed Acquisition Transaction may proceed solely as specifically described in the applicable Acquisition Notice.  Any further Proposed Acquisition Transaction must be the subject of an additional Acquisition Notice and Objection Period.

### C. The Proposed Procedures Relating to Claims

The procedures relating to the trading of Claims (the "**Claims Procedures**"), which only will become effective upon entry of the order granting the requested relief on a final basis, permit the full trading of Claims until the Debtors or another Plan Proponent (as hereinafter defined) decides to pursue a plan of reorganization contemplating the potential utilization of section 382(l)(5) of the Tax Code, at which point, if necessary for the Debtors to utilize that provision, a purchaser of certain Claims on or after the Petition Date may be required to resell some or all of such Claims. The following are certain principal provisions of the proposed Claims Procedures:[2]

(1)    Disclosure of 382(l)(5) Plan

If the proponent of a Plan (a "**Plan Proponent**") determines that the reorganized Debtors likely will benefit from the application of section 382(l)(5) of the Tax Code and reasonably anticipates that the reorganized Debtors (or any successors thereto) (the "**Post-Emergence PG&E**") will invoke such section (a "**382(l)(5) Plan**"), then the Plan Proponent shall disclose the following in its proposed disclosure statement or, in the case of items (c) through (e) described below, a later, separate notice (collectively, the "**Proposed 382(l)(5) Disclosure Statement**"):

(a)    Adequate information about the incremental tax benefits anticipated to be realized through the use of section 382(l)(5) of the Tax Code that, taking into account the Debtors' anticipated net unrealized built-in gains or net unrealized built-in losses, would not otherwise be available;

(b)    A summary of any restrictions expected to be imposed on the transferability of securities issued under the Plan in order to preserve such incremental tax benefits;

(c)    The (A) dollar amount of Claims (by class or other applicable classification) expected to result in a one-percent (1%) interest in the equity of Post-Emergence PG&E (the "**New PG&E Stock**") and (B) number of any of the specified interests (the "**Owned Interests**") in the Debtors expected to result in a one-percent (1%) interest in the New PG&E Stock, in each case based upon then-available information;

---

[2] The complete proposed Claims Procedures are set forth in **Exhibit 1** to the Proposed Final Order, which sets forth the Procedures.

DEBTORS' MOTION FOR NOTIFICATION
PROCEDURES AND TRANSFER RESTRICTIONS

12

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(d)     A specified date (the "**Determination Date**") that is not less than ten (10) calendar days after the service of the notice of the hearing with respect to the Proposed 382(l)(5) Disclosure Statement; and

(e)     A specified date (the "**Reporting Deadline**") that is not less than five (5) calendar days after the Determination Date, by which persons (including Entities, which for purposes of the Claims Procedures also includes an "entity" within the meaning of Treasury Regulations section 1.382-3(a)) must serve on various parties the Notice of Substantial Claim Ownership (as defined in paragraph B(3) of **Exhibit 1** to Proposed Final Order) required by these Claims Procedures.

(2)     Claims Trading Before and After the Determination Date

(a)     Any person generally may trade freely and make a market in Claims until the Determination Date.

(b)     After the Determination Date, any acquisition of Claims by a person (including any Entity) who filed or was required to file a Notice of Substantial Claim Ownership or by a person who would be required to file a Notice of Substantial Claim Ownership as a result of the consummation of the contemplated transaction if the proposed acquisition date had been the Determination Date (each such person, a "**Proposed Claims Transferee**"), shall not be effective unless consummated in compliance with the Claims Procedures.

(c)     At least ten (10) business days prior to the proposed date of any acquisition of Claims by a Proposed Claims Transferee (each acquisition, a "**Proposed Claims Acquisition Transaction**"), such Proposed Claims Transferee shall serve upon the Plan Proponent and its counsel (and the Debtors and their counsel if not the Plan Proponent), counsel to the DIP Lenders, and counsel to any Official Committee a notice of such Proposed Claims Transferee's request to purchase, acquire, or otherwise accumulate a Claim (a "**Claims Acquisition Request**"), in substantially the form annexed to the Proposed Final Order as **Exhibit 6**, which describes specifically and in detail the Proposed Claims Acquisition Transaction, regardless of whether such transfer would be subject to the filing, notice, and hearing requirements set forth in Bankruptcy Rule 3001.

(d)     The Plan Proponent may determine, in consultation with the Debtors (if not the Plan Proponent), counsel to any Official Committee and counsel to the DIP Lenders, whether to

Case 19-30088    Doc 410    Filed 01/29/19    Entered: 01/29/19 00:51:17    Page 13 of
22

approve a Claims Acquisition Request. If the Plan Proponent does not approve a Claims Acquisition Request in writing within eight (8) business days after the Claims Acquisition Request is filed with the Court, the Claims Acquisition Request shall be deemed rejected.

(3) <u>Creditor Conduct and Sell-Downs</u>

(a) Following the Determination Date, if the Plan Proponent determines that certain persons holding Claims must sell or transfer all or a portion of their beneficial ownership of Claims so that the requirements of section 382(*l*)(5) of the Tax Code will be satisfied, the Plan Proponent may request—after notice to counsel to any Official Committee, counsel to the DIP Lenders, and the relevant claimholder(s), and a hearing—that this Court enter an order approving the issuance of a notice (a "**Sell-Down Notice**") that such claimholder(s) must sell, cause to sell, or otherwise transfer a specified amount of its beneficial ownership of Claims. Notwithstanding anything to the contrary in this Motion, no claimholder shall be required to sell, cause to sell, or otherwise transfer any beneficial ownership of Claims if such sale or transfer would result in the claimholder's beneficial ownership of an aggregate amount of Claims (by class or other applicable classification) that is less than such claimholder's "Protected Amount" (as defined in paragraph B(1)(p) of **<u>Exhibit 1</u>** to the Proposed Final Order).

(b) Each Sell-Down Notice shall direct such claimholder to sell, cause to sell, or otherwise transfer its beneficial ownership of the amount of Claims specified in the Sell-Down Notice to certain permitted transferees.

(c) Any person (including any Entity) that violates its obligations under the Claims Procedures shall be precluded from receiving, directly or indirectly, any consideration consisting of a beneficial ownership of New PG&E Stock that is attributable to the "Excess Amount of Claims" (as defined in paragraph B(5)(b) of **<u>Exhibit 1</u>** to the Proposed Final Order) for such person, including any consideration in lieu thereof, *provided* that such person may be entitled to receive any other consideration to which such person may be entitled by virtue of holding Claims.

## IV. BASIS FOR RELIEF REQUESTED

### A. The Automatic Stay Bars Any Equity Transfer that Would Diminish or Limit the Debtors' Interests in the Tax Attributes

In furtherance of the automatic stay provisions of section 362 of the Bankruptcy Code and pursuant to section 105 of the Bankruptcy Code, the Debtors seek authority to monitor and approve (or disapprove) certain acquisitions of PG&E Stock to protect against the occurrence of an Ownership Change during the pendency of these chapter 11 cases, and thereby to preserve the potential value of the Tax Attributes. The Debtors also seek authority to monitor and approve (or disapprove) certain transfers of Claims and to require the sell down of certain Claims acquired during these chapter 11 cases to preserve the Debtors' ability to avail themselves of relief under section 382(*l*)(5) of the Tax Code, if such relief is determined to be desirable and otherwise available.

Section 362 of the Bankruptcy Code enjoins all entities from, among other things, taking any action to obtain possession of property of or from the estate or to exercise control over property of the estate. Section 541 of the Bankruptcy Code defines "property of the estate" to include all legal or equitable interests of a debtor in property as of the Petition Date of a chapter 11 case, including tax benefits.

The Tax Attributes are valuable property of the Debtors' estates and thus are protected, by operation of the automatic stay, from actions that would diminish their value, including transfers that would effect an Ownership Change. It is well established that a debtor's NOLs are property of the debtor's estate protected by the automatic stay. *See United States v. Towers (In re Feiler)*, 230 B.R. 164, 168 (B.A.P. 9th Cir. 1999) ("An NOL is a tax attribute of the debtor that is part of the bankruptcy estate"); *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991) ("[W]here a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay."); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them."); *In re Grossman's Inc.*, No. 97-695 (PJW), 1997 WL 33446314 (Bankr. D. Del. Oct. 9, 1997). The

Case: 19-30088    Doc# 340    Filed: 01/29/19    Entered: 01/29/19 00:51:17    Page 15 of 22

United States Court of Appeals for the Second Circuit, in its seminal *In re Prudential Lines Inc*. decision, affirmed the application of the automatic stay to a debtor's tax benefits and upheld a permanent injunction prohibiting a parent corporation from taking a worthless stock deduction that would have adversely affected the ability of the parent corporation's subsidiary to utilize its NOLs under the special relief provisions of section 382 of the Tax Code. *See* 928 F.2d at 573. As the Second Circuit stated:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the debtors have into the estate." Moreover, . . . [i]ncluding the right to a NOL carryforward as property of [a debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id*. (quoting H.R. Rep. No. 95-595, at 176 (1978)) (citations omitted); *see also In re Fruehauf Trailer Corp*., 444 F.3d 203, 211 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'" (quoting *Prudential Lines,* 928 F.2d at 572) (alteration in original)); *Gibson v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991) (concluding that the "right to carry forward the [debtor's] NOLs" was a "property interest" of the estate).

In *Prudential Lines*, the Second Circuit determined that, if the parent corporation were permitted to take a worthless stock deduction, its subsidiary's ability to carry forward its NOLs would be adversely impacted. The Second Circuit concluded that "despite the fact that the [parent corporation's] action [was] not directed specifically at [the debtor subsidiary], it [nonetheless was] barred by the automatic stay as an attempt to exercise control over property of the estate." *Prudential Lines*, 928 F.2d at 573–574.

In addition to finding that a debtor's NOLs are protected by the automatic stay, the Second Circuit also held that, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, a bankruptcy court may issue a permanent injunction to protect such NOLs. *Id*. at 574.

In *In re Phar-Mor, Inc.*, 152 B.R. 924 (Bankr. N.D. Ohio 1993), the bankruptcy court applied similar reasoning and granted the debtors' motion to prohibit transfers of their stock that could have had an adverse effect on their ability to utilize their NOLs, even though the debtors' stockholders had not stated any intent to sell their stock and the debtors had not shown that a sale that would trigger an Ownership Change was pending. *See id*. at 927. Despite the "ethereal" nature of the situation, the court

Case 19-30088 Doc 140 Filed 01/29/19 Entered: 01/29/19 00:51:17 Page 16 of 22

observed that "[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of benefit to creditors and will assist debtors in their reorganization process. This asset is entitled to protection while [the d]ebtors move forward toward reorganization." *Id*. (emphasis added).

The bankruptcy court in *Phar-Mor* also concluded that, because the debtors were seeking to enforce the automatic stay, they did not have to meet the more stringent requirements for preliminary injunctive relief:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits. The key elements for a stay . . . are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*Id*. at 926 (quoting *In re Golden Distribs., Inc.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

Bankruptcy courts (including this Court) have regularly approved restrictions on equity and/or claims trading to protect a debtor against the possible loss of valuable tax attributes. *See, e.g., In re Blue Earth, Inc.*, Case No. 10 16-30296 (DM), ECF Doc. 30 (Bankr. N.D. Cal. March 23, 2016) and ECF Doc. 112 (Bankr. N.D. Cal. April 28, 2016) (interim order and final order, respectively, establishing notification, objection and hearing procedures for transfers of equity securities); *In re Aéropostale, Inc.*, Case No. 16-11275 (SHL), ECF Doc. 240 (Bankr. S.D.N.Y. June 3, 2016) (approving notification procedures and restrictions on certain transfers of equity interests in the debtors); *In re The Great Atl. & Pac. Tea Co.*, Case No. 15-23007 (RDD), ECF Doc. 501 (Bankr. S.D.N.Y. Aug. 11, 2015) (approving notification procedures and restrictions on certain transfers of claims against and equity interests in the debtors); *In re AMR Corp.*, Case No. 11-15463 (SHL), ECF Doc. 890 (Bankr. S.D.N.Y. Jan. 27, 2012) (same); *In re Delta Air Lines, Inc.*, Case No. 05-17923 (PCB), ECF Doc. 1640 (Bankr. S.D.N.Y. Dec. 20, 2005) (approving notification procedures and restrictions on certain transfers of equity interests in the debtors); *In re WorldCom, Inc.*, Case No. 02-13533 (AJG), ECF Doc. 3613 (Bankr. S.D.N.Y. Mar. 5, 2003) (restricting acquisitions of stock above a certain threshold and establishing notification requirements for certain acquisitions of claims); *In re Metrocall, Inc.*, Case No. 02-11579, ECF Doc. 290 (Bankr. D. Del. July 8, 2002) (approving procedures by which the debtor would provide five business days' notice to object to proposed transfers of stock that would result in a transferee's holding 5 percent or more of the debtor's stock or a reduction in the ownership interest of an existing 5-percent

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

shareholder); *In re Reliance Acceptance Grp. Inc.*, Case No. 98-288 (PJW), ECF Doc. 270 (Bankr. D. Del. Apr. 28, 1998) (providing debtor with thirty-days' notice to object to proposed transfers that would result in a transferee holding five percent or more of debtor's common stock).

As these cases demonstrate, it is well settled that, pursuant to section 362(a)(3) of the Bankruptcy Code, the automatic stay enjoins actions that would adversely affect a debtor's ability to utilize its NOLs and other tax benefits.

### B. The Procedures Are Necessary and in the Best Interests of the Debtors, Their Estates, and Their Creditors

The Procedures are necessary to avoid severely impairing the Debtors' ability to utilize their Tax Attributes. The Debtors' ability to preserve their Tax Attributes may be seriously impaired unless the Stock Procedures are established immediately and *nunc pro tunc* to the Petition Date to ensure that the acquisition of PG&E Stock is either precluded or closely monitored and made subject to Court approval.

Depending on the Debtors' future earnings and the consequences of a restructuring, the Debtors' ability to utilize the Tax Attributes may enhance the Debtors' prospects for a successful emergence from chapter 11. The relief requested herein is narrowly tailored to permit certain stock and Claims trading to continue, subject to Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws.

The Stock Procedures must be implemented as soon as possible. Even if a transfer were to be null and void under section 362 of the Bankruptcy Code or as a result of a final order of the Court that prohibited such a transfer retroactively to the Petition Date, under federal income tax law, such transfer nevertheless may be regarded as having occurred for tax purposes, in which event the Debtors' estates could suffer an irrevocable loss of value. Accordingly, if a transfer occurs that limits the Debtors' ability to utilize their Tax Attributes under section 382 of the Tax Code, the Debtors' ability to realize the value of their Tax Attributes may be permanently lost. The relief requested, therefore, is crucial to prevent an irrevocable diminution of the value of the Debtors' estates.

The Claims Procedures permit the full trading of Claims until the Debtors or another Plan Proponent decides to pursue a Plan that contemplates the potential utilization of section 382(*l*)(5) of the Tax Code, at which point, if necessary for the Debtors' ability to utilize that provision, a purchaser of certain Claims on or after the Petition Date may be required to resell some or all of such Claims.

Case: 19-30088   Doc# 10   Filed: 01/29/19   Entered: 01/29/19 00:51:17   Page 18 of 22

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

It is in the best interests of the Debtors and their stakeholders to restrict stock acquisitions that could result in an Ownership Change *before* the effective date of a chapter 11 plan or any applicable bankruptcy court order. This restriction would permit the Debtors to utilize the Tax Attributes, if necessary, to offset gain or other income recognized in connection with the Debtors' ownership of their assets and operation of their business.

As they relate to an Ownership Change that occurs *pursuant to* a confirmed chapter 11 plan or any applicable bankruptcy court order, however, the limitations imposed by section 382 of the Tax Code are significantly less restrictive than those applicable to an Ownership Change that occurs before the effective date of (or otherwise outside of) a chapter 11 plan. *See* 26 U.S.C. § 382($l$)(5), (6). Under section 382($l$)(5) of the Tax Code (the "**Section 382($l$)(5) Safe Harbor**"), a corporation is not subject to the annual limitation ordinarily imposed by section 382 of the Tax Code with respect to an Ownership Change, provided that the Ownership Change resulted from the consummation of a chapter 11 plan or pursuant to any applicable bankruptcy court order and that the debtor's pre-Ownership Change shareholders and/or "qualified creditors" (as hereinafter defined) emerge from the reorganization owning at least fifty percent (50%) of the total value and voting power of the reorganized debtor's stock immediately after the Ownership Change. *Id.* § 382($l$)(5)(A). Under section 382($l$)(5)(E) of the Tax Code and the applicable Treasury Regulations, a creditor whose Claim is exchanged for stock of the reorganized debtor under a chapter 11 plan or pursuant to any applicable bankruptcy court order is, for purposes of section 382 of the Tax Code, a "qualified creditor" (each, a "**Qualified Creditor**") if such creditor's Claim either (a) has been owned by such creditor for eighteen (18) or more months prior to Petition Date or (b) arose in the ordinary course of the debtor's business and was at all times beneficially owned by such creditor. Creditors also may be classified as Qualified Creditors, despite not satisfying either of these conditions, if such creditors meet the criteria set forth in Treasury Regulations section 1.382-9(d)(3) (the "**De Minimis Rule**").

Under the De Minimis Rule, a debtor may, for purposes of the Section 382($l$)(5) Safe Harbor, "treat indebtedness as always having been owned by the beneficial owner of the indebtedness immediately before the [O]wnership [C]hange if the beneficial owner is not, immediately after the [O]wnership [C]hange, either a 5-[P]ercent [S]hareholder or an [E]ntity through which a 5-[P]ercent

Case 19-30088    Doc 410    Filed 01/29/19    Entered: 01/29/19 00:51:17    Page 19 of 22

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

[S]hareholder owns an indirect ownership interest" in the debtor. 26 C.F.R. § 1.382-9(d)(3). If a creditor is treated as having continuously owned its Claim(s) under the De Minimis Rule, such creditor will be regarded as a Qualified Creditor so long as the particular Claim(s) that it holds either (a) arose in the ordinary course of the debtor's business or (b) came into existence at least eighteen (18) months prior to the Petition Date.

Although there can be no assurance that the Section 382(*l*)(5) Safe Harbor ultimately will be available to the Debtors, and recognizing that the Debtors have not yet been able to determine whether the Section 382(*l*)(5) Safe Harbor, even if available, would yield significant benefits in the context of the Debtors' restructuring, it is important that the Debtors preserve their ability to propose a chapter 11 plan that could take advantage of the Section 382(*l*)(5) Safe Harbor. Because the determination of whether a creditor is a Qualified Creditor, in whole or in part, depends on the nature of its Claims and whether it has held its Claims (within the meaning of the applicable Treasury Regulations) until the effective date of the chapter 11 plan, transfers of Claims by creditors before such date pose a threat to the Debtors' ability to satisfy the requirements of the Section 382(*l*)(5) Safe Harbor. The requested relief will ensure that the Debtors will have flexibility, if the Debtors determine it to be desirable, to structure a chapter 11 plan or other distributions to comply with the requirements of the Section 382(*l*)(5) Safe Harbor and thus to preserve the Tax Attributes to the fullest extent possible.

Even if it is ultimately determined that either the Section 382(*l*)(5) Safe Harbor is unavailable to the Debtors or the relief provided thereby would not materially benefit the Debtors in the context of their restructuring, section 382(*l*)(6) of the Tax Code provides a second, alternative rule that applies when an Ownership Change occurs pursuant to a confirmed chapter 11 plan or any applicable bankruptcy court order. Specifically, section 382(*l*)(6) of the Tax Code provides that, if a debtor undergoes an Ownership Change pursuant to a chapter 11 plan and the Section 382(*l*)(5) Safe Harbor does not apply, then the appropriate value of the Debtors for purposes of calculating the annual limitation under section 382 of the Tax Code shall reflect the increase in value of the Debtors resulting from any surrender or cancellation of creditors' Claims. Generally, under section 382 of the Tax Code, the taxable income of a loss corporation available for offset by pre-Ownership Change Tax Attributes is annually limited to an amount equal to the long-term tax-exempt bond rate times the value of the loss company's stock

Case 19-30088    Doc 410    Filed 01/29/19    Entered: 01/29/19 00:51:17    Page 20 of
22

*immediately before* the Ownership Change. Thus, assuming the equity value of the Debtors increases as a result of the reorganization, section 382(*l*)(6) of the Tax Code will provide for a higher (and therefore less restrictive) annual limitation than would result under the general rules of section 382 of the Tax Code, thereby preserving the Debtors' ability to utilize a greater portion of their otherwise available Tax Attributes to offset any post-Ownership Change income. In all circumstances, it is in the best interest of the Debtors and their stakeholders for the Court to grant the requested relief in order to prevent an Ownership Change prior to the effective date of a chapter 11 plan or any applicable bankruptcy court order.

### C. The Relief Requested Should Be Granted on an Interim Basis

Granting the relief requested herein on an interim basis will benefit the Debtors and their stakeholders by preventing the severe impairment of the Debtors' ability to utilize the Tax Attributes pending final approval of the Procedures, while allowing holders of PG&E Stock and/or Claims against the Debtors and other parties in interest ample time to consider the Procedures. Absent the interim relief, the Debtors may be irreparably harmed due to stock acquisitions that may follow immediately after persons receive notice of this Motion. Persons may rush to acquire PG&E Stock before the Court imposes any restrictions on acquisitions, and such acquisitions may be regarded as occurring for tax purposes even if such acquisitions were to be null and void under section 362 of the Bankruptcy Code or as a result of a final order of this Court prohibiting such acquisitions *nunc pro tunc* to the Petition Date. Such acquisitions could seriously impair the Debtors' ability to utilize the Tax Attributes and would be counterproductive to the Debtors' objectives in seeking the relief requested herein. Accordingly, the Debtors request that the Stock Procedures proposed herein be approved on an interim basis and that a hearing be scheduled to consider entry of the Proposed Final Order.

## V. RESERVATION OF RIGHTS

Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any Claim, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any Claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

the validity of any Claim or a waiver of the Debtors' rights to dispute such Claim subsequently.

## VI.  NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) the Debtors' fifty (50) largest unsecured creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the Office of the California Attorney General; (vi) the California Public Utilities Commission; (vii) the Nuclear Regulatory Commission; (viii) the Federal Energy Regulatory Commission; (ix) the Office of the United States Attorney for the Northern District of California; (x) counsel for the agent under the Debtors' proposed debtor in possession financing facilities; and (xi) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002.  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 29, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**


By:  /s/ Tobias S. Keller
      Tobias S. Keller

*Proposed Attorneys for Debtors
and Debtors in Possession*