WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice* pending)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice* pending)
(Jessica.liou@weil.com)
Matthew Goren (*pro hac vice* pending)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>              **Debtor.**<br>**Tax I.D. No. 94-3234914**<br><br>**In re:**<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>              **Debtor.**<br>**Tax I.D. No. 94-0742640** | Case Nos. 19 -\_\_\_\_\_ (\_\_\_)<br>               19 -\_\_\_\_\_ (\_\_\_)<br><br>Chapter 11<br><br>**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 363, 507(a), AND 541(d) AND FED. R. BANKR. P. 6003 AND 6004 FOR INTERIM AND FINAL AUTHORITY TO PAY CERTAIN PREPETITION TAXES AND ASSESSMENTS AND GRANTING RELATED RELIEF**<br><br>Date:<br>Time:<br>Place: |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 105(a), 363(b), 507(a), and 541(d) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of interim and final orders authorizing, but not directing, the Debtors to pay prepetition taxes, assessments, fees, and other charges in the ordinary course of business, including any such taxes, assessments, fees, and charges subsequently determined upon audit, or otherwise, to be owed (collectively, the "**Taxes and Assessments**"), and granting related relief.

The Debtors also request that the Court authorize, but not direct, banks and other financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent the Debtors have sufficient funds standing to their credit with such institutions, whether such checks were presented or electronic requests were submitted before or after the Petition Date (as defined below), and that all such financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**").

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | JURISDICTION | 7 |
| II. | BACKGROUND | 7 |
| III. | THE DEBTORS' TAXES AND ASSESSMENTS | 7 |
| | A. Sales and Use Taxes | 8 |
| | B. Property Taxes | 9 |
| | C. Income Taxes | 9 |
| | D. Excise Taxes | 10 |
| | E. San Francisco Gross Receipts and Payroll Tax | 10 |
| | F. Pass Through Fees | 10 |
| | G. Regulatory Fees | 11 |
| | H. Other Taxes and Fees | 11 |
| IV. | BASIS FOR RELIEF REQUESTED | 12 |
| | A. Certain of the Taxes and Assessments Are Not Property of the Debtors' Estates | 12 |
| | B. Many of the Taxes and Assessments Are Priority Claims | 13 |
| | C. Interest and Penalties May Accrue on Certain Unpaid Property Taxes | 14 |
| | D. Directors and Officers May Have Personal Liability for Non-Payment of Taxes and Assessments | 15 |
| | E. The Court Has Authority Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code to Grant the Relief Requested | 15 |
| V. | BANKS SHOULD BE AUTHORIZED TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS ISSUED AND TRANSFERS REQUESTED TO PAY THE TAXES AND ASSESSMENTS | 18 |
| VI. | RESERVATION OF RIGHTS | 19 |
| VII. | IMMEDIATE ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 6003 | 19 |
| VIII. | REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS | 19 |
| IX. | NOTICE | 20 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*In re Adams Apple, Inc.*,
   829 F.2d 1484 (9th Cir. 1987) ............................................................................................. 17, 18

*Al Copeland Enters., Inc. v. Texas*,
   991 F.2d 233 (5th Cir. 1993) ...................................................................................................... 13

*In re Anchorage Nautical Tours, Inc.*,
   145 B.R. 637 (B.A.P. 9th Cir. 1992) ........................................................................................... 16

*In Matter of B & W Enterprises, Inc.*,
   713 F.2d 534 (9th Cir. 1983) ...................................................................................................... 17

*Begier v. IRS*,
   496 U.S. 53 (1990) ...................................................................................................................... 13

*Berg & Berg Enterprises, LLC v. Boyle*,
   178 Cal. App. 4th 1020 (2009) ................................................................................................... 16

*In re Brawders*,
   325 B.R. 405 (B.A.P. 9th Cir. 2005), *aff'd*, 503 F.3d 856 (9th Cir. 2007) ......................................... 14

*In re Chateaugay Corp.*,
   80 B.R. 279 (S.D.N.Y. 1987) ...................................................................................................... 17

*City of Farrell v. Sharon Steel Corp.*,
   41 F.3d 92 (3d Cir. 1994) ............................................................................................................ 13

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
   60 B.R. 612 (Bankr. S.D.N.Y. 1986) ..................................................................................... 15, 16

*In re Cty. of Orange*,
   262 F.3d 1014 (9th Cir. 2001) .................................................................................................... 14

*In re Curry & Sorensen, Inc.*,
   57 B.R. 824 (B.A.P. 9th Cir. 1986) ............................................................................................. 16

*Czyzewski v. Jevic Holding Corp.*,
   137 S. Ct. 973 (2017) .................................................................................................................. 16

*In re Eagle–Picher Indus., Inc.*,
   124 B.R. 1021 (Bankr. S.D. Ohio 1991) .................................................................................... 17

*F.D.I.C. v. Castetter*,
   184 F.3d 1040 (9th Cir. 1999) .................................................................................................... 15

*In re Financial News Network, Inc.*
    134 B.R. 732 (Bankr. S.D.N.Y. 1991) .................................................................................. 17

*Gordon v. Hines (In re Hines)*,
    147 F.3d 1185 (9th Cir. 1998) ............................................................................................ 18

*In re Gulf Air*,
    112 B.R. 152 (Bankr. W.D. La. 1989) ................................................................................ 17

*In re Ionosphere Clubs, Inc.*,
    98 B.R. 174 (Bankr. S.D.N.Y. 1989) .................................................................................. 15

*In re Just For Feet, Inc.*,
    242 B.R. 821 (D. Del. 1999) ............................................................................................... 17

*In re Los Gatos Hotel Corporation*,
    Case No. 10-63135 (Bankr. N.D. Cal. Jan. 28, 2011) ........................................................ 18

*LTV Steel Co., Inc. v. Shalala (In re Chateaugay Corp.)*,
    53 F.3d 478 (2d Cir. 1995) ................................................................................................. 13

*Miltenberger v. Logansport, C&S W.R. Co.*,
    106 U.S. 286 (1882) ..................................................................................................... 16, 17

*In re NewZoom Inc.*,
    Case No. 15-31141-HB (Bankr. N.D. Cal. Nov. 11, 2015) ................................................ 18

*In re NVR L.P.*,
    147 B.R. 126 (Bankr. E.D. Va. 1992) ................................................................................ 17

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,
    147 B.R. 650 (S.D.N.Y. 1992) ........................................................................................... 15

*In re Pettit Oil Co.*,
    No. 13-47285, 2015 WL 6684225 (Bankr. W.D. Wash. Oct. 22, 2015) ............................ 18

*Scouler & Co., LLC v. Schwartz*,
    No. 11-CV-06377 NC, 2012 WL 1502762 (N.D. Cal. Apr. 23, 2012) .............................. 16

*Shank v. Washington State Dep't of Revenue (In re Shank)*,
    792 F.2d 829 (9th Cir. 1986) ............................................................................................. 13

*In re Structurlite Plastics Corp.*,
    86 B.R. 922 (Bankr. S.D. Ohio 1988) ................................................................................ 17

*U.S. v. Ron Pair Enterprises, Inc.*,
    489 U.S. 235 (1989) ........................................................................................................... 14

**Statutes**

11 U.S.C. § 105 ............................................................................................................................. 16

11 U.S.C. § 105(a) ........................................................................................................ 12, 15, 16, 17

11 U.S.C. § 363 ............................................................................................................................. 15

11 U.S.C. § 363(b) ........................................................................................................................ 12

11 U.S.C. § 365 ............................................................................................................................. 19

11 U.S.C. § 506(b) ........................................................................................................................ 14

11 U.S.C. § 507(a)(8) ........................................................................................................ 12, 13, 16

11 U.S.C. § 541(d) ..................................................................................................................... 2, 12

11 U.S.C. § 1107(a) ................................................................................................................... 7, 16

11 U.S.C. § 1108 ............................................................................................................................. 7

28 U.S.C. § 157 ............................................................................................................................... 7

28 U.S.C. § 1334 ............................................................................................................................. 7

28 U.S.C. § 1408 ............................................................................................................................. 7

28 U.S.C. § 1409 ............................................................................................................................. 7

Cal. Code Regs. Title 18, § 1702.5 ............................................................................................... 15

Cal. Rev. & T. Code § 2187 .......................................................................................................... 14

Cal. Rev. & T. Code § 2192.1 ....................................................................................................... 14

**Other Authorities**

B.L.R. § 5011-1(a) .......................................................................................................................... 7

Fed. R. Bankr. P. 2002 .................................................................................................................. 20

Fed. R. Bankr. P. 6003 ............................................................................................................... 2, 19

Fed. R. Bankr. P. 6004 ............................................................................................................... 2, 19

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*,
    General Order 24 (N.D. Cal.) .................................................................................................. 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in either of the Chapter 11 Cases.

Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the Declaration of Jason P. Wells, the Senior Vice President and Chief Financial Officer of PG&E Corporation, filed contemporaneously herewith in support of the Debtors' chapter 11 petitions and related first day relief (the "**Wells Declaration**").

## III. THE DEBTORS' TAXES AND ASSESSMENTS

In the ordinary course of their electricity and natural gas businesses, the Debtors collect, withhold, and incur a variety of Taxes and Assessments that they remit periodically to various federal, state, and local taxing, licensing, regulatory, and other governmental authorities (collectively, the "**Taxing Authorities**"). A list of the Taxing Authorities is annexed hereto as **Exhibit B** (the "**Taxing Authorities List**").[1]

---

[1] The Debtors have made an extensive and good-faith effort to identify on **Exhibit B** any Taxing Authorities to which they owe any amounts as of the Petition Date. However, due to the size and complexity of the Debtors' operations, certain Taxing Authorities may not be listed therein. Accordingly, **Exhibit B** is a non-exhaustive list of Taxing Authorities to which the Debtors may owe Taxes and Assessments. To the extent the Debtors identify additional Taxing Authorities not listed on **Exhibit B**, the Debtors seek authority to pay any Taxes and Assessments due and owing to such Taxing Authorities.

As set forth in further detail below, the Debtors generally pay the Taxes and Assessments bi-monthly, monthly, quarterly or annually, in each case, as required by applicable laws and regulations. As of the Petition Date, the Debtors estimate that an aggregate amount of approximately $139,200,000 in Taxes and Assessments are due and owing to the various Taxing Authorities, of which, approximately $11,300,000 will come due within the thirty (30) days following the Petition Date. A chart outlining the various categories and approximate amounts of the Taxes and Assessments that the Debtors are seeking authority to pay pursuant to this Motion is set forth below. The amounts of the Taxes and Assessments set forth below are good faith estimates based on the Debtors' books and records and remain subject to potential audits and other adjustments. As such, the Debtors also seek authority to pay any Taxes and Assessments due and owing following any such audit and adjustments.

| Categories of Taxes and Assessments | Approx. Amount Seeking Authority to Pay on Interim Basis | Approx. Amount Seeking Authority to Pay on Final Basis |
| --- | --- | --- |
| Sales and Use Taxes | $1,100,000 | $1,100,000 |
| Property Taxes | $0 | $43,500,000 |
| Income Taxes | *De minimis* | *De minimis* |
| Excise Taxes | $200,000 | $200,000 |
| San Francisco Gross Receipts Tax and Payroll Tax | $3,200,000 | $5,500,000 |
| Pass Through Fees | $6,800,000 | $79,700,000 |
| Regulatory Fees | $0 | $9,200,000 |
| Other Taxes and Fees | *De minimis* | *De minimis* |
| **Total Taxes and Assessments:** | **$11,300,000** | **$139,200,000** |

### A. Sales and Use Taxes

The Debtors incur sales tax on account of the purchase of tangible personal property utilized by the Debtors in the ordinary course of business (collectively, the "**Sales Taxes**"). The Debtors incur use taxes on account of the purchase of tangible personal property utilized by the Debtors in the ordinary course of business from vendors who do not collect sales tax (collectively, the "**Use Taxes**" and, together with the Sales Taxes, the "**Sales and Use Taxes**").

The Debtors pay approximately $500,000 to $4,000,000 per month in aggregate Sales and Use Taxes depending on the volume of nuclear fuel purchases, which can be seasonal. Although the Debtors believe they are current with respect to their payment of Sales and Use Taxes, the Debtors estimate that,

as of the Petition Date, they owe approximately $1,100,000 in Sales and Use Taxes, all of which will become due and payable within the first thirty (30) days of the Chapter 11 Cases.

### B. Property Taxes

The Debtors own real and personal property located in approximately fifty (50) counties within the State of California, as well as Texas and Nevada, that are subject to state and local real and personal property taxes (the "**Property Taxes**"). The California State Board of Equalization determines the aggregate value of all real and personal property owned by the Debtors in the state and allocates that value among each of the counties where property is located. The counties then tax the Debtors based on the allocated property values. Property Taxes accrue on an annualized basis and are paid twice a year. Property Taxes with respect to real property create a statutory first priority lien on the taxed property to the extent not paid. In fiscal year 2018, the Debtors paid approximately $491,900,000 in aggregate Property Taxes to the relevant Taxing Authorities. The Debtors estimate that, as of the Petition Date, approximately $43,500,000 of Property Taxes have accrued or relate to the period prior to the Petition Date but have not yet been paid, none of which will become due and payable in the first (30) days of the Chapter 11 Cases.

### C. Income Taxes

Under certain applicable laws, federal, state, and local Taxing Authorities levy taxes based on the Debtors' income (the "**Income Taxes**").[2] The Debtors allocate income tax liability between themselves pursuant to that certain *Tax Sharing Agreement* dated as of January 1, 1997. In California, Taxing Authorities are entitled to assert statutory liens on the Debtors' property that is located, or subject to tax, in the respective jurisdiction if these income taxes are not paid. Moreover, in California, directors and officers may be personally liable for failure to timely pay these taxes. The Debtors also pay a relatively minor amount of Income Taxes in several other states and in the District of Columbia. The Debtors are required to pay Income Taxes on a quarterly pre-payment basis (which is offset against amounts the Debtors are ultimately determined to owe on an annual basis). The Debtors have substantial net operating losses and do not anticipate the need to pay any federal or California Income Taxes for the

---

[2] Income Taxes include California franchise taxes, which are calculated based on income.

DEBTORS' MOTION TO PAY PREPETITION
TAXES AND ASSESSMENTS
9

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

period prior to the fiscal year ending December 31, 2017. The Debtors estimate that, as of the Petition Date, they owe a *de minimis* amount of state and local Income Taxes in jurisdictions other than California, which will come due in the first thirty (30) days of the Chapter 11 Cases.

### D. Excise Taxes

Under applicable laws, federal, state, and local Taxing Authorities levy taxes based on the Debtors' purchases or sales of specific goods (*e.g.*, alternative fuel excise tax) or services (*e.g.*, insurance premiums paid to foreign insurance companies) (collectively, the "**Excise Taxes**"). The Debtors generally pay Excise Taxes on a quarterly basis or as otherwise required by applicable laws and regulations. The Debtors estimate that, as of the Petition Date, they owe approximately $200,000 in Excise Taxes, all of which will become due and payable within the first thirty (30) days of the Chapter 11 Cases.

### E. San Francisco Gross Receipts and Payroll Tax

The Debtors incur a Gross Receipts and Payroll Tax assessed by the City of San Francisco (the "**Gross Receipts Tax**") to operate their businesses in that city. The Gross Receipts Tax is generally remitted by the Debtors several times a year and is based on San Francisco gross receipts and payroll. In 2018, the Debtors' aggregate liability for the Gross Receipts Tax was approximately $13,300,000. Although the Debtors believe they are current with respect to their payment of the Gross Receipts Tax, the Debtors estimate that, as of the Petition Date, they owe approximately $5,500,000 in Gross Receipts Tax, $3,200,000 of which will become due and payable within the first thirty (30) days of the Chapter 11 Cases.

### F. Pass Through Fees

The Debtors collect a variety of fees and taxes, including, but not limited to, utility users tax, excessive electric use tax, business license tax, and city franchise surcharges and other fees collected through customer billings and remitted to the applicable state and local municipalities (collectively, the "**Pass Through Fees**"). Pass Through Fees are generally remitted by the Debtors to the applicable Taxing Authorities several times a year. Pass Through Fees vary by county and are typically based on total revenues allocated based on public and private miles of electricity lines. Pass Through Fees paid to cities are either based on the Debtors' revenues within the city's boundaries or are calculated using

the same formula that is used by the counties. In fiscal year 2018, the Debtors accrued approximately $690,500,000 in aggregate Pass Through Fees to the relevant Taxing Authorities. Although the Debtors believe that they are current with respect to their payment of Pass Through Fees, the Debtors estimate that, as of the Petition Date, they owe approximately $79,700,000 in Pass Through Fees, approximately $6,800,000 of which will become due and payable within the first thirty (30) days of the Chapter 11 Cases.

### G. Regulatory Fees

The Debtors collect and remit various regulatory fees to commissions that regulate public utility companies, including for audit costs incurred by such commissions (the "**Regulatory Fees**"). These commissions include, without limitation, the California Energy Resources Conservation and Development Commission, the Federal Energy Regulatory Commission, Nuclear Regulatory Commission, and the California Public Utilities Commission.[3] Regulatory Fees are generally remitted by the Debtors to the applicable Taxing Authorities quarterly. The Debtors estimate that approximately $9,200,000 in Regulatory Fees have accrued and remain unpaid as of the Petition Date, none of which will become due and owing during the thirty (30) days after the Petition Date.

### H. Other Taxes and Fees

In addition to the foregoing, the Debtors collect, withhold, or incur certain other taxes, fees, and charges, including, but not limited to, taxes, license and registration fees, environmental permit fees, land fees, and encroachment fees paid on behalf of the Debtors and their subsidiaries (collectively, "**Other Taxes and Fees**"). Although the Debtors believe that they are current with respect to their payment of Other Taxes and Fees, the Debtors estimate that, as of the Petition Date, they owe a *de minimis* amount of Other Taxes and Fees, which will become due and payable within the first thirty (30) days of the Chapter 11 Cases.

---

[3] California Public Utilities Commission Regulatory Fees include not only direct regulatory fees, but also the costs of indirect regulatory expenses, such as directed contract costs for Commission auditors and consultants; and the costs of intervenor compensation awards pursuant to California Public Utilities Code §§ 1801-1812, which require Commission jurisdictional utilities to pay the reasonable costs of an intervenor's participation if that party makes a substantial contribution to the Commission's proceedings. The costs of these direct and indirect Regulatory Fees are recovered in the Debtor's utility rates.

## IV. BASIS FOR RELIEF REQUESTED

The Debtors seek authority to pay, in their discretion, the Taxes and Assessments in order to, among other things, prevent the Taxing Authorities from taking actions that may interfere with the administration of these Chapter 11 Cases and impede the Debtors' ability to successfully reorganize, including, in some instances, asserting liens on the Debtors' property, imposing penalties and/or significant interest on past-due taxes, and possibly bringing personal liability actions against directors, officers, and other employees in connection with non-payment of certain prepetition Taxes and Assessments.

Ample authority and cause exist to authorize the payment of the Taxes and Assessments, as requested herein, including, without limitation, that: (i) certain of the Taxes and Assessments are not property of the Debtors' estates; (ii) certain of the Taxes and Assessments may be entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code or result in the imposition of liens on the Debtors' property if unpaid; (iii) interest and penalties may accrue on certain unpaid Property Taxes even after the Petition Date; and (iv) governmental entities may pursue the Debtors' directors and officers for certain unpaid Taxes and Assessments, thereby distracting them from the Debtors' reorganization efforts. Further, the Court has authority to grant the relief requested in the Motion pursuant to section 363(b) and 105(a) of the Bankruptcy Code.

### A. Certain of the Taxes and Assessments Are Not Property of the Debtors' Estates

Certain of the Taxes and Assessments (such as certain Pass Through Fees) may not be property of the Debtors' estates, as they are collected from third parties and held in trust for payment to various Taxing Authorities. Section 541(d) of the Bankruptcy Code provides, in relevant part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

Certain of the Taxes and Assessments (such as certain Pass Through Fees) may constitute "trust fund" taxes, which the Debtors are required to collect and/or hold in trust for payment to the Taxing Authorities. To the extent the Debtors have collected or hold Taxes and Assessments in trust for payment

to the Taxing Authorities, such funds do not constitute property of the Debtors' estates. *See, e.g., Begier v. IRS*, 496 U.S. 53, 60–62 (1990) (holding that excise and withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate); *Shank v. Washington State Dep't of Revenue (In re Shank)*, 792 F.2d 829, 830 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund"); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96 (3d Cir. 1994) (finding that withholding taxes were subject to a trust); *Al Copeland Enters., Inc. v. Texas*, 991 F.2d 233, 235 (5th Cir. 1993) (debtors' prepetition collection of sales taxes and interest thereon held subject to trust and not property of estate). Accordingly, because the Debtors generally do not have an interest in such funds, the Debtors should be permitted to pay those funds to the Taxing Authorities as they become due, whether attributable to the pre-petition period or otherwise.

### B. Many of the Taxes and Assessments Are Priority Claims

Many, if not all, of the Taxes and Assessments are afforded priority status under section 507(a)(8) of the Bankruptcy Code. *See* 11 U.S.C. § 507(a)(8). These include unsecured claims of governmental units for a tax on or measured by income or gross receipts for a taxable year ending on or before the Petition Date (11 U.S.C. § 507(a)(8)(A)), a property tax incurred before the Petition Date and last payable without penalty after one year before the Petition Date (11 U.S.C. § 507(a)(8)(B)), and a tax required to be collected or withheld and for which the debtor is liable in whatever capacity (11 U.S.C. § 507(a)(8)(C)). Obligations labeled as "fees" or "charges" may also be entitled to priority status as taxes. *See LTV Steel Co., Inc. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 498 (2d Cir. 1995) (citation omitted). A fee or charge is a tax if it is an involuntary pecuniary burden: (i) laid upon the individual or property; (ii) imposed by, or under authority of the legislature; (iii) assumed for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and (iv) assessed under the police or taxing power of the state. *Id*. Here, all or substantially all of the Taxes and Assessments are involuntary pecuniary burdens imposed by the authority of a federal, state or local legislature under their police or taxing powers, the funds of which are used for general public benefit. Regardless of their statutory characterization as "fees" or "charges," many, if not all, of the Taxes and Assessments qualify for priority under section 507(a)(8) of the Bankruptcy Code.

Additionally, under California state law, taxes declared to be liens on real property "have priority over all other liens on the property, regardless of the time of their creation." Cal. Rev. & T. Code § 2192.1. Accordingly, any Taxes and Assessments on the Debtors' real property would constitute first priority liens against the property owned by the Debtors.

As priority claims, Taxes and Assessments must be paid in full before any general unsecured obligations of the Debtors may be satisfied. Accordingly, the relief requested herein will only affect the timing of the payment of the Taxes and Assessments and will not prejudice the rights of general unsecured creditors or other parties in interest.

### C. Interest and Penalties May Accrue on Certain Unpaid Property Taxes

As stated, pursuant to applicable state law, obligations to pay Property Taxes with respect to real property are secured by a lien on the property for which these taxes are incurred. Cal. Rev. & T. Code §§ 2187, 2192.1; *In re Cty. of Orange*, 262 F.3d 1014, 1018 (9th Cir. 2001) ("The property tax delinquent penalties are subject to statutory liens."); *In re Brawders*, 325 B.R. 405, 411 (B.A.P. 9th Cir. 2005), *aff'd*, 503 F.3d 856 (9th Cir. 2007) ("There is no dispute that [the county's] assessments are secured by a lien because California law provided as of the filing of the [case] that "every tax on real property is a lien against the property assessed").

Section 506(b) of the Bankruptcy Code provides that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). Thus, with respect to certain of the Debtors' Property Taxes, interest, and potentially penalties assessed on certain Property Taxes due under state law may continue to accrue even after the Petition Date. *See U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 238–49 (1989) (holding that section 506(b) entitles a creditor to receive post-petition interest on a nonconsensual oversecured claim allowed in a bankruptcy case). Because interest and penalties may accrue on certain Property Taxes if they are not paid as and when due, paying such Property Taxes as requested in this Motion will conserve resources and is in the best interests of the Debtors' estates and all parties in interest.

### D. Directors and Officers May Have Personal Liability for Non-Payment of Taxes and Assessments

California state law holds certain directors, officers, and other employees of entities responsible for collecting or withholding taxes, or remitting certain taxes, personally liable for these types of taxes. Cal. Code Regs. Title 18, § 1702.5 (personal liability for officers, employees, or members of limited partnerships or corporations who are under a duty to perform on behalf of an entity). Accordingly, to the extent certain Taxes and Assessments incurred by the Debtors before the Petition Date are not paid, as requested herein, certain of the Debtors' directors, officers, and other employees may be subject to personal liability. The Debtors do not believe it would be fair to expose these individuals to personal liability. Moreover, any attempt to hold these individuals personally liable would distract these key personnel from devoting their full attention to the Debtors' business and the orderly administration of these Chapter 11 Cases.

### E. The Court Has Authority Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code to Grant the Relief Requested

Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a Court may authorize a debtor to pay certain prepetition claims where a sound business purposes exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also F.D.I.C. v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999) (the business judgment rule "requires directors to perform their duties in good faith and as an ordinarily prudent person in a like circumstance would"). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R.

612, 616 (Bankr. S.D.N.Y. 1986). Courts construing California corporate law have consistently declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions were made in good faith. *Scouler & Co., LLC v. Schwartz*, No. 11-CV-06377 NC, 2012 WL 1502762, at *4 (N.D. Cal. Apr. 23, 2012); *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1046 (2009).

The Court may also rely on its equitable powers under section 105 of the Bankruptcy Code to grant the relief requested in this Motion. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court may authorize the Debtors to pay the Taxes and Assessments because such relief is necessary for the Debtors to carry out their fiduciary duties under sections 1107(a) of the Bankruptcy Code. Under section 1107(a) of the Bankruptcy Code "the debtor in possession has the same fiduciary duties and liabilities as a Trustee. When the debtor is a corporation, corporate officers and directors are considered to be fiduciaries both to the corporate debtor in possession and to the creditors." *In re Anchorage Nautical Tours, Inc.*, 145 B.R. 637, 643 (B.A.P. 9th Cir. 1992); *see also In re Curry & Sorensen, Inc.*, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986) ("[T]he debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would a trustee for a debtor out of possession").

Although many, if not all, of the Taxes and Assessments are entitled to priority status under section 507(a)(8) of the Bankruptcy Code, numerous Courts have acknowledged that payment of prepetition obligations, irrespective of statutory priorities, may be necessary to realize the objectives of the Bankruptcy Code, such as the preservation and enhancement of the value of a debtor's estate for the benefit of all creditors and other stakeholders. *See, e.g., Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts have approved distributions that are not consistent with ordinary priority rules in instances where significant Code-related objectives, such as enabling a successful reorganization, would be served and listing examples such as "first-day wage orders that allow payment of employees' prepetition wages, critical vendor orders that allow payment of essential suppliers' prepetition invoices, and roll-ups that allow lenders who continue financing the debtor to be paid first on their prepetition claims"); *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882)

(payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations*"*); *In re Just For Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (allowing payment of prepetition claim because debtor could not survive without maintaining customer relationship); *In re Financial News Network, Inc.* 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991) (payment of prepetition claims allowed if "critical to the debtor's reorganization*"); In re NVR L.P.*, 147 B.R. 126, 128 (Bankr. E.D. Va. 1992) (holding that "proponent of the payment must show substantial necessity"); *In re Eagle–Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (stating that payment must be "necessary to avert a serious threat to the chapter 11 process").

Although there is a Ninth Circuit decision which fails to recognize the grant of authority given by the Bankruptcy Code to elevate certain pre-petition payments over others, that case is easily distinguishable from these Chapter 11 Cases and the relief sought herein, as the pre-petition payments at issue there were made by the debtor without notice, hearing, or authorization from the Bankruptcy Court. *In Matter of B & W Enterprises, Inc.*, 713 F.2d 534, 535 (9th Cir. 1983). Furthermore, although the *B & W* court noted that the "necessity of payment" doctrine was established in railroad reorganization cases, *id*. at 535, numerous Courts have extended the doctrine beyond the railroad reorganization context. *See, e.g., In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately"); *In re Gulf Air*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (finding that payment of prepetition wage and benefit obligations was in the best interest of creditors and necessary for the successful reorganization of the debtor and granting the debtor's motion to pay prepetition employee expenses); *In re Chateaugay Corp.*, 80 B.R. 279, 285 (S.D.N.Y. 1987) (finding that bankruptcy courts have the authority to authorize the debtor to pay certain prepetition claims).

Moreover, since *B & W*, the Ninth Circuit has noted in other instances that certain pre-petition payments should be authorized regardless of whether they are priority payments under the Bankruptcy Code. *See In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987). In that case, in rejecting the appellants' argument that the cross-collateralization clause in a financing agreement violated the

"fundamental tenet of bankruptcy law that like creditors must be treated alike," the Court of Appeals noted that the argument was "flawed because the fundamental tenet conflicts with another fundamental tenet – rehabilitation of debtors, which may supersede the policy of equal treatment." *Id*. The Ninth Circuit further stated that:

> [c]ases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.

*Id*.

Numerous Courts within the Ninth Circuit have followed the reasoning of *In re Adams Apple* in holding that the payment of certain prepetition claims is not categorically barred when the payments promote the rehabilitation of the debtor. *See, e.g., In re Pettit Oil Co.*, No. 13-47285, 2015 WL 6684225, at *8 (Bankr. W.D. Wash. Oct. 22, 2015) (citing *In re Adams Apple Inc*. for proposition that it "is permissible to treat prepetition debts unequally when necessary for rehabilitation."); *Gordon v. Hines (In re Hines)*, 147 F.3d 1185, 1191 (9th Cir. 1998) (applying "essentially a doctrine of necessity" to provide for the payment of the fees of debtor's counsel in chapter 7 cases because without this right the "entire [chapter 7] system would suffer a massive breakdown"). Furthermore, Courts within this Circuit have granted relief substantially similar to that sought herein. *See, e.g., In re Los Gatos Hotel Corporation*, Case No. 10-63135 (Bankr. N.D. Cal. Jan. 28, 2011) (approving motion for authority to pay certain prepetition taxes and assessments); *In re NewZoom Inc.*, Case No. 15-31141-HB (Bankr. N.D. Cal. Nov. 11, 2015) (same).

Payment of the Taxes and Assessments is an exercise of sound business judgment and necessary to facilitate a successful reorganization. Moreover, all, if not substantially all, of the Taxes and Assessments constitute priority claims and, in certain instances, payment thereof will avoid the imposition of liens and the accrual of unnecessary interest and other charges.

### V. BANKS SHOULD BE AUTHORIZED TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS ISSUED AND TRANSFERS REQUESTED TO PAY THE TAXES AND ASSESSMENTS

The Debtors further request that the Court authorize, but not direct, the Banks to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks issued or to be issued and electronic

funds transfers requested or to be requested by the Debtors relating to the Taxes and Assessments. The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or transfer requests on account of any prepetition Taxes and Assessments dishonored or rejected as a result of the Chapter 11 Cases.

## VI. RESERVATION OF RIGHTS

Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## VII. IMMEDIATE ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 6003

Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. As described herein and in the Wells Declaration, failure to pay the Taxes and Assessments may interfere with the Debtors' continued operations and restructuring, and increase the scope of secured claims held by the applicable Taxing Authorities against the Debtors' estates. Moreover, failure to pay certain of the Taxes and Assessments may expose the Debtors' directors and officers to personal liability, which would cause further distraction and delays and negatively impact the administration of these Chapter 11 Cases. Accordingly, the Debtors have satisfied the requirements for immediate entry of an order granting the relief requested herein pursuant to Bankruptcy Rule 6003.

## VIII. REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.

Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## IX. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the Office of the California Attorney General; (vi) the California Public Utilities Commission; (vii) the Nuclear Regulatory Commission; (viii) the Federal Energy Regulatory Commission; (ix) the Office of the United States Attorney for the Northern District of California; (x) counsel for the agent under the Debtors' proposed debtor in possession financing facilities; (xi) the Banks; (xii) the Taxing Authorities listed on **Exhibit B** hereto; and (xiii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 29, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Tobias S. Keller
     Tobias S. Keller

*Proposed Attorneys for Debtors and Debtors in Possession*