WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice* pending)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice* pending)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice* pending)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br>      **Debtor.** <br><br> **Tax I.D. No. 94-3234914** <br><br> **In re:** <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br>      **Debtor.** <br><br> **Tax I.D. No. 94-0742640** | Case Nos.   19 - _____ (\_\_\_) <br>         19 - _____ (\_\_\_) <br><br> Chapter 11 <br><br> **MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(b) AND FED. R. BANKR. P. 6003 AND 6004 (I) FOR INTERIM AND FINAL AUTHORITY TO PAY PREPETITION OBLIGATIONS OWED TO SHIPPERS, WAREHOUSEMEN, AND OTHER LIEN CLAIMANTS, AND (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY STATUS FOR CLAIMS ARISING FROM GOODS DELIVERED TO THE DEBTORS POSTPETITION** <br><br> Date: <br> Time: <br> Place: |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 105(a), 363(b), and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) for interim and final authority to pay the prepetition claims (the "**Lien Claims**") of certain third-party shippers, warehousemen, vendors, and other service providers or contractors that may be permitted to assert statutory or possessory liens against the Debtors' property and equipment if the Debtors fail to pay the prepetition amounts owed to those parties for their various goods and services (collectively, the "**Lien Claimants**"), and (ii) granting administrative priority status to all undisputed obligations of the Debtors owing to third-party vendors and suppliers arising from the postpetition delivery of goods ordered prior to the Petition Date (as defined below) and authorizing the Debtors to pay such obligations in the ordinary course of business.

A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**").

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | JURISDICTION | 7 |
| II. | BACKGROUND | 7 |
| III. | THE LIEN CLAIMANTS | 7 |
| IV. | THE PREPETITION ORDERS | 11 |
| V. | BASIS FOR RELIEF REQUESTED | 11 |
| | A. Payment of the Lien Claims is Warranted Under Sections 363(b) and 105(a) of the Bankruptcy Code | 12 |
| | B. The Obligations Owed Under the Prepetition Orders Are Administrative Priority Claims Under Section 503(b) of the Bankruptcy Code | 15 |
| | C. Banks Should Be Authorized to Receive, Process, Honor, and Pay Checks Issued and Transfers Requested to Pay the Lien Claims and Obligations Owed Under the Prepetition Orders | 16 |
| VI. | RESERVATION OF RIGHTS | 17 |
| VII. | IMMEDIATE ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 6003 | 17 |
| VIII. | REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS | 17 |
| IX. | NOTICE | 18 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*In re Adams Apple, Inc.*,
   829 F.2d 1484 (9th Cir. 1987) ............................................................................................14, 15

*In re Anchorage Nautical Tours, Inc.*,
   145 B.R. 637 (B.A.P. 9th Cir. 1992) ..............................................................................................13

*In Matter of B & W Enterprises, Inc.*,
   713 F.2d 534 (9th Cir. 1983) ...........................................................................................................14

*Berg & Berg Enterprises, LLC v. Boyle*,
   178 Cal. App. 4th 1020 (2009) ........................................................................................................12

*F.D.I.C. v. Castetter*,
   184 F.3d 1040 (9th Cir. 1999) .........................................................................................................12

*In re Chateaugay Corp.*,
   10 F.3d 944 (2d. Cir. 1993) ..............................................................................................................16

*In re Chateaugay Corp.*,
   80 B.R. 279 (S.D.N.Y. 1987) ...........................................................................................................14

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
   60 B.R. 612 (Bankr. S.D.N.Y. 1986) ................................................................................................6

*In re Curry & Sorensen, Inc.*,
   57 B.R. 824 (B.A.P. 9th Cir. 1986) ..................................................................................................13

*Czyzewski v. Jevic Holding Corp.*,
   137 S. Ct. 973 (2017) .......................................................................................................................13

*In re Eagle–Picher Indus., Inc.*
   124 B.R. 1021 (Bankr. S.D. Ohio 1991) .........................................................................................13

*In re Financial News Network, Inc.*
   134 B.R. 732 (Bankr. S.D.N.Y. 1991) ............................................................................................13

*Gordon v. Hines (In re Hines)*,
   147 F.3d 1185 (9th Cir. 1998) .........................................................................................................15

*In re Gulf Air*,
   112 B.R. 152 (Bankr. W.D. La. 1989) ............................................................................................14

*In re Ionosphere Clubs, Inc.*,
   98 B.R. 174 (Bankr. S.D.N.Y. 1989) ..............................................................................................12

*In re Just For Feet, Inc.*,
    242 B.R. 821 (D. Del. 1999) ................................................................................................. 13

*Miltenberger v. Logansport, C&S W.R. Co.*,
    106 U.S. 286 (1882) ............................................................................................................. 13

*In re NewZoom, Inc.*,
    Case No. 15-31141-HB (Bankr. N.D. Cal. Sept. 11, 2015) .................................................. 15

*In re NVR L.P.*,
    147 B.R. 126 (Bankr. E.D. Va. 1992) ................................................................................... 13

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,
    147 B.R. 650 (S.D.N.Y. 1992) .............................................................................................. 12

*In re Palau Corp.*,
    139 B.R. 942 (B.A.P. 9th Cir. 1992) ..................................................................................... 16

*In re Pettit Oil Co.*,
    No. 13-47285, 2015 WL 6684225 (Bankr. W.D. Wash. Oct. 22, 2015) .............................. 15

*Scouler & Co., LLC v. Schwartz*,
    No. 11-CV-06377 NC, 2012 WL 1502762 (N.D. Cal. Apr. 23, 2012) ................................. 12

*In re Structurlite Plastics Corp.*,
    86 B.R. 922 (Bankr. S.D. Ohio 1988) ................................................................................... 14

*In re Waste Systems Intern., Inc.*,
    280 B.R. 824 (Bankr. D. Del. 2002) ..................................................................................... 16

**Statutes**

11 U.S.C. § 105 ............................................................................................................................. 11

11 U.S.C. § 105(a) ................................................................................................................. *passim*

11 U.S.C. § 362(b)(3) ................................................................................................................... 10

11 U.S.C. § 363 .............................................................................................................................. 6

11 U.S.C. § 363(b) .................................................................................................................. 2, 5, 6

11 U.S.C. § 365 ............................................................................................................................. 17

11 U.S.C. § 503(b) ............................................................................................................ 5, 11, 12, 15

11 U.S.C. § 503(b)(1)(A) .............................................................................................................. 16

11 U.S.C. § 546(b) ........................................................................................................................ 10

11 U.S.C. § 546(b)(1)(A) .............................................................................................................. 11

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

11 U.S.C. § 1107(a) ............................................................................................................... 7, 13

11 U.S.C. § 1108 ........................................................................................................................ 7

28 U.S.C. § 157 .......................................................................................................................... 7

28 U.S.C. § 157(b) ..................................................................................................................... 7

28 U.S.C. § 1334 ........................................................................................................................ 7

28 U.S.C. § 1408 ........................................................................................................................ 7

28 U.S.C. § 1409 ........................................................................................................................ 7

**Other Authorities**

B.L.R. 5011-1(a) ........................................................................................................................ 7

Cal. Comm. § 7209 .................................................................................................................. 10

Cal. Comm. § 7307 .................................................................................................................... 9

Fed. R. Bankr. P. 2002 ............................................................................................................. 16

Fed. R. Bankr. P. 6003 ............................................................................................................. 17

Fed. R. Bankr. P. 6004 ............................................................................................................. 17

Fed. R. Bankr. P. 6004(a) ........................................................................................................ 17

Fed. R. Bankr. P. 6004(h) ........................................................................................................ 17

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*,
    General Order 24 (N.D. Cal.) ............................................................................................. 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in either of the Chapter 11 Cases.

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the Declaration of Jason P. Wells, Senior Vice President and Chief Financial Officer of PG&E Corp., in support of the Debtors' chapter 11 petitions and related first day relief, filed contemporaneously herewith (the "**Wells Declaration**").

## III. THE LIEN CLAIMANTS

In the ordinary course of their electricity and natural gas businesses, the Debtors routinely transact business with a number of entities that provide goods and services that may be permitted to assert statutory or possessory liens against the Debtors' property and equipment if the Debtors fail to pay for those parties' various goods or services. The Lien Claimants generally fall into the following categories: (i) Shippers, (ii) Warehousemen, and (iii) Maintenance and Repairmen (each as defined below). Each of these categories of Lien Claimants is discussed in further detail below.

As of the Petition Date, the Debtors estimate that they owe approximately $65,500,000 on account of Lien Claims, of which approximately $25,800,000 will come due in the first thirty (30) days

of the Chapter 11 Cases.[1]  A chart outlining the various categories and approximate amounts of the Lien Claims that the Debtors are seeking authority to pay pursuant to this Motion on an interim and final basis is set forth below:

| Categories | Approx. Amount Seeking to Pay on Interim Basis | Approx. Amount Seeking to Pay on Final Basis |
|---|---|---|
| Shippers | $1,800,000 | $6,000,000 |
| Warehouseman | $4,800,000 | $4,800,000 |
| Maintenance and Repairmen | $19,200,000 | $54,700,000 |
| **Total Approx. Lien Claims** | **$25,800,000** | **$65,500,000** |

*Shippers*.  In the ordinary course of business, the Debtors purchase natural gas (the "**Purchased Natural Gas**") from entities operating in all of the major natural gas basins in western North America, including basins in western Canada, the Rocky Mountains, and the southwestern United States. Although the Debtors own and operate over 6,400 miles of transmission pipelines, these pipelines do not connect directly to the Debtors' natural gas sources.  Therefore, it is necessary for the Debtors to rely on third-party transportation service providers (the "**Shippers**") to transport Purchased Natural Gas from their sources to the Debtors' transmission pipelines so that the Debtors may deliver natural gas to their residential, commercial, industrial, and agricultural customers and to fuel the Utility's gas-fired electric generation facilities in northern and central California.  The Debtors' ability to operate in the ordinary course, therefore, depends on their ability to take delivery of and transport Purchased Natural Gas in a timely fashion.  Additionally, the Debtors also rely on Shippers for the transportation of piping supplies, valves, replacement parts and other materials, all of which are integral to the day to day operations of their business.

---

[1] Concurrently herewith, the Debtors have filed a separate Motion seeking authority to pay, among other things, the prepetition claims of certain entities that are essential to protect the public health and safety and maintain the going-concern value of the Debtors' enterprise and the integrity of the Debtors' operations (the "**Operational Integrity Suppliers Motion**").  Although the Debtors have endeavored to provide accurate figures and calculations herein, there may, in some instances, be overlap between the amounts sought to be paid herein and the amounts sought to be paid pursuant to the Operational Integrity Suppliers Motion.

DEBTORS' MOTION TO PAY SHIPPERS,
WAREHOUSEMEN, AND OTHER LIEN CLAIMANTS

8

Case: 19-30088    Doc# 13    Filed: 01/29/19    Entered: 01/29/19 01:05:20    Page 8 of 18

If the Debtors fail to pay their Shippers in a timely manner, the Shippers may seek to assert statutory or possessory liens against Purchased Natural Gas or other materials and property that is in their possession with respect to any delinquent charges, potentially blocking the Debtors' access to the Purchased Natural Gas and such materials and property that is in transport.[2] Further, in many cases, only one third-party transportation service provider is capable of transporting Purchased Natural Gas or other materials from a given source, leaving the Debtors with no choice but to rely on a particular Shipper. With millions of dollars' worth of Purchased Natural Gas and other materials and property in transit at any given time, the cost of a disruption to the Debtors' operations that could be caused by the Shippers' exercising their rights likely far outweighs the prepetition amounts owed to the Shippers.

The Debtors estimate that the aggregate amount owed to Shippers for services provided during the period before the Petition Date is approximately $6,000,000, of which the Debtors are requesting authority to pay approximately $1,800,000 on an interim basis.

*Warehousemen*. In the ordinary course of business, the Debtors store natural gas that they purchase in various storage facilities (the "**Stored Natural Gas**"). The Debtors procure gas storage capacity as a tool to ensure reliability, in order to inject and withdraw gas to ensure compliance with system requirements, and to balance their position and serve load. Additionally, the Debtors store large diameter pipes used for natural gas pipelines, valves, natural gas replacement pipes and fittings, cables, wiring, and other parts for the electrical grid, and other property in certain third party warehouse facilities. Because the Debtors operate only three storage facilities of their own, all of which have

---

[2] For example, section 7307 of California's Commercial Code provides in pertinent part that:

> A carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law.

California Code, Commercial Code – COMM § 7307.

limited capacity, they rely on the services of these third-party storage providers (the "**Warehousemen**").

If the Debtors fail to pay their Warehousemen in a timely manner, the Warehousemen may seek to assert statutory or possessory liens against the Debtors' property that is in their possession; potentially blocking the Debtors' access to the Stored Natural Gas and other materials that are necessary for the business operations.[3] The Debtors estimate that the aggregate amount owed to Warehousemen for services provided during the period before the Petition Date is approximately $4,800,000, all of which is estimated to come due during the first 30 days of the Chapter 11 Cases.

*Maintenance and Repairmen.* Certain of the Lien Claimants provide maintenance and repair services on the Debtors' vast network of production, transmission, and distribution facilities, including the Debtors' generation units and gas facilities (the "**Maintenance and Repairmen**"). The Maintenance and Repairmen, among other things, maintain, repair, refurbish, and replace components of the Debtors' facilities and equipment and provide fuel and parts for the Debtors' generation units. Many of the Maintenance and Repairmen are not under contract to perform future services, but rather perform work and related services on an order-by-order basis. If the Debtors become delinquent in their payments for such goods provided or services rendered, the Maintenance and Repairmen may assert liens, including mechanics' liens and materialman's liens, against the Debtors' property for the amounts owed. Additionally, those Maintenance and Repairmen that do have contracts with the Debtors may have been granted liens or other interests pursuant to such agreements to secure amounts owed to them under their relevant agreements. Pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting mechanics' liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.[4] The Debtors estimate that the aggregate amount

---

[3] *See* California Code, Commercial Code – COMM § 7209 ("A warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof in its possession for charges for storage or transportation, including demurrage and terminal charges, insurance, labor, or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law.")

[4] Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against

DEBTORS' MOTION TO PAY SHIPPERS, WAREHOUSEMEN, AND OTHER LIEN CLAIMANTS

10

owed to Maintenance and Repairmen for goods and services provided during the period before the Petition Date is approximately $54,700,000, of which the Debtors are requesting authority to pay approximately $19,200,000 on an interim basis.

In addition to having secured claims, if the Debtors are unable to satisfy the Lien Claims as requested herein, the Lien Claimants may refuse to provide critical ongoing goods or services to the Debtors or may seek to enforce their rights and liens on account of such claims. Accordingly, the Debtors seek authority to pay and discharge, on a case-by-case basis, the Lien Claims that the Debtors believe have created, or could give rise to, a lien against the Debtors' property or equipment, regardless of whether such Lien Claimants already have actually perfected their interests.

## IV. THE PREPETITION ORDERS

In addition to the relief requested with respect to the Lien Claimants, as of the Petition Date, the Debtors have certain prepetition purchase orders outstanding with various third-party vendors and suppliers (the "**Vendors**") for goods ordered by the Debtors that have not yet been delivered by the Vendors to the Debtors' facilities (the "**Prepetition Orders**"). These Vendors may be concerned that, because the Debtors' obligations under the Prepetition Orders arose prior to the Petition Date, such obligations will be treated as general unsecured claims in the Chapter 11 Cases. Accordingly, certain Vendors may refuse to provide goods purchased (or may recall shipments thereof) pursuant to the Prepetition Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court confirming that all undisputed obligations of the Debtors arising from the postpetition delivery of goods subject to Prepetition Orders are afforded administrative expense priority status under section 503(b) of the Bankruptcy Code.

## V. BASIS FOR RELIEF REQUESTED

To minimize the disruption that the Debtors' business operations will suffer if prepetition obligations owed to Lien Claimants are not paid, the Debtors respectfully requests that the Court authorize the Debtors to pay and honor the Lien Claims pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Additionally, the Debtors respectfully request that the Court confirm that all

---

an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A).

undisputed obligations of the Debtors arising from the postpetition delivery of goods subject to the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code and authorize and confirm that the Debtors may satisfy such obligations in the ordinary course of business.

### A. Payment of the Lien Claims is Warranted Under Sections 363(b) and 105(a) of the Bankruptcy Code

Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purposes exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also F.D.I.C. v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999) (the business judgment rule "requires directors to perform their duties in good faith and as an ordinarily prudent person in a like circumstance would"). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this District have consistently declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions were made in good faith. *Scouler & Co., LLC v. Schwartz*, No. 11-CV-06377 NC, 2012 WL 1502762, at *4 (N.D. Cal. Apr. 23, 2012); *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1046 (2009).

The Court may also rely on its equitable powers under section 105 of the Bankruptcy Code to grant the relief requested in this Motion. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of

DEBTORS' MOTION TO PAY SHIPPERS, WAREHOUSEMEN AND OTHER LIEN CLAIMANTS

12

this title." 11 U.S.C. § 105(a). Accordingly, the Court may authorize the Debtors to pay the Lien Claims because such relief is necessary for the Debtors to carry out their fiduciary duties under sections 1107(a) of the Bankruptcy Code. Under section 1107(a) of the Bankruptcy Code, "the debtor in possession has the same fiduciary duties and liabilities as a Trustee. When the debtor is a corporation, corporate officers and directors are considered to be fiduciaries both to the corporate debtor in possession and to the creditors." *In re Anchorage Nautical Tours, Inc.*, 145 B.R. 637, 643 (B.A.P. 9th Cir. 1992); *see also In re Curry & Sorensen, Inc.*, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986) ("[T]he debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would a trustee for a debtor out of possession.").

Numerous courts have acknowledged that payment of prepetition obligations, irrespective of statutory priorities, may be necessary to realize the objectives of the Bankruptcy Code, such as the preservation and enhancement of the value of a debtor's estate for the benefit of all creditors and other stakeholders. *See, e.g., Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts have approved distributions that are not consistent with ordinary priority rules in instances where significant Code-related objectives, such as enabling a successful reorganization, would be served and listing examples such as "first-day wage orders that allow payment of employees' prepetition wages, critical vendor orders that allow payment of essential suppliers' prepetition invoices, and roll-ups that allow lenders who continue financing the debtor to be paid first on their prepetition claims"); *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *In re Just For Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (allowing payment of prepetition claim because debtor could not survive without maintaining customer relationship); *In re Financial News Network, Inc.* 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991) (payment of prepetition claims allowed if "critical to the debtor's reorganization"); *In re NVR L.P.*, 147 B.R. 126, 128 (Bankr. E.D. Va. 1992) (holding that "proponent of the payment must show substantial necessity"); *In re Eagle–Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (stating that payment must be "necessary to avert a serious threat to the chapter 11 process").

Although there is a Ninth Circuit decision which fails to recognize the grant of authority given by the Bankruptcy Code to elevate certain pre-petition payments over others, that case is easily distinguishable from these Chapter 11 Cases and the relief sought herein, as the pre-petition payments at issue there were made by the debtor without notice, hearing, or authorization from the Bankruptcy Court. *In Matter of B & W Enterprises, Inc.*, 713 F.2d 534, 535 (9th Cir. 1983). Furthermore, although the B & W court noted that the "necessity of payment" doctrine was established in railroad reorganization cases, *id*. at 535, numerous courts have extended the doctrine beyond the railroad reorganization context. *See, e.g., In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately"); *In re Gulf Air*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (finding that payment of prepetition wage and benefit obligations was in the best interest of creditors and necessary for the successful reorganization of the debtor and granting the debtor's motion to pay prepetition employee expenses); *In re Chateaugay Corp.*, 80 B.R. 279, 285 (S.D.N.Y. 1987) (finding that bankruptcy courts have the authority to authorize the debtor to pay certain prepetition claims).

Moreover, since *B & W*, the Ninth Circuit has noted in other instances that certain pre-petition payments should be authorized regardless of whether they are priority payments under the Bankruptcy Code. *See In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987). In that case, in rejecting the appellants' argument that the cross-collateralization clause in a financing agreement violated the "fundamental tenet of bankruptcy law that like creditors must be treated alike," the Court of Appeals noted that the argument was "flawed because the fundamental tenet conflicts with another fundamental tenet – rehabilitation of debtors, which may supersede the policy of equal treatment." *Id.* The Ninth Circuit further stated that:

> [c]ases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.

*Id*.

Numerous Courts within the Ninth Circuit have followed the reasoning of *In re Adams Apple* in holding that the payment of certain pre-petition claims is not categorically barred when the payments promote the rehabilitation of the debtor. *See, e.g., In re Pettit Oil Co.*, No. 13-47285, 2015 WL 6684225, at *8 (Bankr. W.D. Wash. Oct. 22, 2015) (citing *In re Adams Apple Inc.* for proposition that it "is permissible to treat prepetition debts unequally when necessary for rehabilitation."); *Gordon v. Hines (In re Hines)*, 147 F.3d 1185, 1191 (9th Cir. 1998) (applying "essentially a doctrine of necessity" to provide for the payment of the fees of debtor's counsel in chapter 7 cases because without this right the "entire [chapter 7] system would suffer a massive breakdown"). Furthermore, courts within this Circuit have granted relief substantially similar to that sought herein. *See, e.g., In re NewZoom, Inc.*, Case No. 15-31141-HB (Bankr. N.D. Cal. Sept. 11, 2015) (approving motion for authority to pay prepetition claims related to shipping and warehousing charges).

The relief requested by this Motion represents an exercise of sound business judgment and is necessary to facilitate a successful reorganization. Authorizing the Debtors to pay the Lien Claims is in the best interests of the Debtors, their estates, and all parties in interest. The Lien Claimants provide valuable shipping, warehousing, and maintenance and repair services to the Debtors, and certain of the Lien Claimants currently hold goods and property that are necessary to the Debtors' continued operations. If the Debtors do not pay the Lien Claims, the Shippers and Warehousemen likely will assert possessory liens on the Debtors' property and thereby prevent access to goods necessary to the Debtors' ongoing operations. Similarly, the Maintenance and Repairmen will assert mechanics' and materialman's liens on the Debtors' properties, thereby securing the outstanding amounts they are owed. Under these circumstances, the Debtors believe that having the authority to satisfy these claims not only will avoid any disruptions to their operations and the ability to provide utility service to their customers, but should not prejudice any other parties in interest by reason of the lien rights held by the Lien Claimants.

### B. The Obligations Owed Under the Prepetition Orders Are Administrative Priority Claims Under Section 503(b) of the Bankruptcy Code

Pursuant to section 503(b) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services are afforded administrative expense priority because

they benefit the estate postpetition. 11 U.S.C. § 503(b)(1)(A); *see also In re Waste Systems Intern., Inc.*, 280 B.R. 824, 826 (Bankr. D. Del. 2002) (holding that a non-debtor party to a prepetition consulting agreement was entitled to an administrative expense claim equal to the value of any postpetition benefit conferred on the estate); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d. Cir. 1993) (holding that an obligation arising from the postpetition performance relating to a prepetition transaction is entitled to administrative expense priority); *In re Palau Corp.*, 139 B.R. 942, 944 (B.A.P. 9th Cir. 1992) (holding that in order for a claim arising from a prepetition services contract to be entitled to administrative expense priority, the claimant must have rendered services postpetition). Accordingly, granting the relief sought herein with respect to the Prepetition Orders merely confirms the priority as to such claims, will not provide the Vendors with any greater priority than they would otherwise be entitled to and will not prejudice any party in interest. Absent such relief, the Debtors may be required to needlessly expend substantial time and effort reissuing the Prepetition Orders to provide the Vendors with assurance of administrative priority. This disruption to the continuous flow of goods and services to the Debtors would negatively impact the Debtors' ability to operate their businesses. Without the support of the Vendors, the Debtors will incur significant costs and lose valuable business relationships, to the detriment of all parties in interest. Therefore, the Court should confirm the administrative expense status of the Prepetition Orders.

### C. Banks Should Be Authorized to Receive, Process, Honor, and Pay Checks Issued and Transfers Requested to Pay the Lien Claims and Obligations Owed Under the Prepetition Orders

The Debtors further request that the Court authorize, but not direct, the Banks to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks issued or to be issued and electronic funds transfers requested or to be requested by the Debtors relating to the Lien Claims and the Prepetition Orders. The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or transfer requests on account of any prepetition Lien Claims or Prepetition Orders dishonored or rejected as a result of the Chapter 11 Cases.

## VI. RESERVATION OF RIGHTS

Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## VII. IMMEDIATE ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 6003

Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. As set forth above and in the Wells Declaration, if the Debtors fail to pay the Lien Claims, the Lien Claimants could potentially assert liens against the Debtors' property for the amounts owed on account of the Lien Claims and may refuse to deliver and provide goods and future services to the Debtors. Thus, the Debtors' failure to pay the Lien Claims could severely impair the Debtors' ability to operate their businesses for the benefit of all parties in interest. Accordingly, the Debtors have satisfied the requirements for immediate entry of an order granting the relief requested herein pursuant to Bankruptcy Rule 6003.

## VIII. REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## IX. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the Office of the California Attorney General; (vi) the California Public Utilities Commission; (vii) the Nuclear Regulatory Commission; (viii) the Federal Energy Regulatory Commission; (ix) the Office of the United States Attorney for the Northern District of California; (x) counsel for the agent under the Debtors' proposed debtor in possession financing facilities; (xi) the Banks; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 29, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Tobias S. Keller
　　　Tobias S. Keller

*Proposed Attorneys for Debtors
and Debtors in Possession*

DEBTORS' MOTION TO PAY SHIPPERS,
WAREHOUSEMEN, AND OTHER LIEN CLAIMANTS

18