# EXHIBIT 1

166 FERC ¶ 61,049
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Neil Chatterjee, Chairman;
Cheryl A. LaFleur and Richard Glick.

| | |
|---|---|
| NextEra Energy, Inc. and NextEra Energy Partners, L.P. | Docket No. EL19-35-000 |
| v. | |
| Pacific Gas and Electric Company | |

ORDER ON PETITION FOR DECLARATORY ORDER AND COMPLAINT

(Issued January 25, 2019)

1.     On January 18, 2019, NextEra Energy, Inc. and NextEra Energy Partners, L.P. (collectively, NextEra) filed, pursuant to sections 206 and 306 of the Federal Power Act (FPA)[1] and Rules 206 and 207 of the Commission's Rules of Practice and Procedure,[2] a petition for declaratory order and complaint (Petition) against Pacific Gas and Electric Company (PG&E) requesting that the Commission find that, if PG&E files for bankruptcy, PG&E may not abrogate, amend, or reject in a bankruptcy proceeding any rates, terms and conditions of its wholesale power purchase agreements subject to the Commission's jurisdiction without first obtaining approval from the Commission under FPA sections 205 and 206.[3]  In this order, the Commission addresses NextEra's Petition for a declaratory order and clarifies its position with regard to bankruptcy filings that seek to reject Commission-jurisdictional wholesale power purchase agreements.

I.     **Background**

2.     NextEra states that several of its subsidiaries sell wind and solar energy to PG&E, pursuant to market-based rate authority, under various wholesale power purchase

---

[1] 16 U.S.C. §§ 824e, 825e (2012).

[2] 18 C.F.R. §§ 385.206, 385.207 (2018).

[3] 16 U.S.C. §§ 824d, 824e (2012).

agreements.[4]  NextEra states that PG&E recently announced that it will file for bankruptcy protection due to, among other reasons, liabilities relating to wildfires in California and that it will make that filing on or about January 29, 2019.[5]  In order to protect its wholesale power purchase agreements, NextEra requests that the Commission issue an order finding PG&E may not abrogate, amend, or reject its Commission-jurisdictional wholesale power purchase agreements with NextEra in any bankruptcy proceedings that may be initiated by PG&E without first obtaining approval from the Commission under FPA sections 205 or 206.[6]

3.      NextEra argues that this Commission has exclusive jurisdiction to regulate the rates, terms, and conditions of PG&E's wholesale power purchase agreements.[7]  NextEra asserts that, when enacting the FPA, Congress created a comprehensive regulatory framework for protecting the public interest and entrusted the Commission with the sole authority to implement that framework.  According to NextEra, the core of the Commission's regulatory responsibilities under the FPA is the exclusive authority to regulate the rates, terms and conditions for interstate transmission and wholesale sales of electric energy under FPA sections 205 and 206.[8]

4.      NextEra states that the Commission's broad and exclusive jurisdiction over rates has led to the filed-rate doctrine, which provides that a party "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other

---

[4] NextEra Petition at 2.  NextEra notes that the subsidiaries with wholesale power purchase agreements with PG&E include: Desert Sunlight Holdings, LLC, Shafter Solar, LLC, Genesis Solar, LLC, Westside Solar, LLC, Vasco Wind, LLC, North Sky River Energy, LLC, FPL Energy Montezuma Wind, LLC, and NextEra Energy Montezuma II Wind, LLC.

[5] *Id.* (citing Current Report on Form 8-K of Pacific Gas and Electric Corp. and PG&E (Jan. 13, 2019)).

[6] NextEra also requests an order no later than January 25, 2019 to reduce the risk that PG&E may attempt to obtain a restraining order or injunction in order to disable this Commission from exercising its jurisdiction over filed rates.  *Id.*

[7] *Id.* at 3-7.

[8] *Id.* at 3-4.

terms."[9]  NextEra asserts that once the Commission accepts or approves a filed rate as just and reasonable, the filed rate has the force of law and is the "equivalent of a federal regulation."[10]  In other words, NextEra explains that "the filed rate . . . is to be treated as though it were a statute, binding upon the seller and purchaser alike."[11]  NextEra states that the filed-rate doctrine protects more than just the rate, but also the terms and conditions, including the duration of a filed contract.  NextEra also argues that wholesale electricity contracts may be filed directly with the Commission under the FPA or may be negotiated under a filed and approved market-based rate tariff that does not require the utility to separately file each individual contract, but either way, the Commission's authority to regulate the rates, terms and conditions of the contract is exclusive and subject to the filed-rate doctrine.[12]

5.      NextEra further argues that a bankruptcy court's authority to reject contracts cannot deprive this Commission of its exclusive authority to determine whether rates, terms and conditions of wholesale power purchase agreements should be amended or abrogated.[13]  NextEra states that section 365(a) of the Bankruptcy Code[14] authorizes a bankruptcy court to assume or reject any executory contract of a debtor.  NextEra notes that, under the Bankruptcy Code, rejection acts as a breach that gives counterparties a general, unsecured claim for damages against the estate, and that, while the debtor has the initial responsibility for determining which contracts should be assumed and which should be rejected, and the debtor's decisions are generally reviewed by the bankruptcy court under the business judgement rule.[15]

6.      NextEra acknowledges that the Bankruptcy Code gives the bankruptcy court broad authority over a bankrupt entity's estate, but argues that the court cannot exercise its

---

[9] *Id.* at 4-5 (quoting *Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951) (*Montana-Dakota Utilities*) (internal quotations omitted)).

[10] *Id.* at 5 (quoting *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 839 (9th Cir. 2004) (internal quotations omitted)).

[11] *Id.* (quoting *Bos. Edison Co. v. FERC*, 856 F.2d 362, 372 (1st Cir. 1988) (internal quotations omitted)).

[12] *Id.* at 6-7.

[13] *Id.* at 7-15.

[14] 11 U.S.C. § 365(a) (2012).

[15] NextEra Petition at 7.

authority in a way that invades on the Commission's exclusive jurisdiction under the FPA.  Specifically, NextEra argues that a bankruptcy court cannot divest this Commission of its exclusive jurisdiction over the rates, terms and conditions in a wholesale electricity contract.[16]

7.      While acknowledging the United States Court of Appeals for the Fifth Circuit's (Fifth Circuit) decision in *In the Matter of Mirant Corp.*,[17] where the court found that rejection of a contract in bankruptcy does not amount to an invasion of this Commission's jurisdiction under the FPA, NextEra notes that, in subsequent years, federal courts have declined to follow *Mirant*.[18]  Specifically, NextEra states that in *Calpine*, the court rejected *Mirant*'s argument that the bankruptcy court does not interfere with the Commission's jurisdiction when it rejects a wholesale contract and authorizes an unsecured breach of contract claim.  NextEra states that the *Calpine* court also found that the Fifth Circuit decision in *Mirant* relied on precedent that had no corollaries in the United States Court of Appeals for the Second Circuit.[19]  Similarly, NextEra states that in *Boston Generating*, the court recognized that the bankruptcy court had the authority to reject a contract but held that debtors must also receive approval from the Commission for abrogation of the contract.[20]  In short, NextEra argues that the Commission should decline to follow *Mirant* and, instead, rely on *Calpine* and *Boston Generating* because the later decisions are better-reasoned and more respectful of the filed-rate doctrine and this Commission's regulatory responsibilities.

8.      NextEra summarizes *Mirant* as holding that the rejection of a contract in bankruptcy does not invade the Commission's exclusive jurisdiction because it merely constitutes a breach of the agreement, giving rise to a claim for contract damages—albeit an unsecured claim that must be asserted among all the other competing claims against the bankrupt estate.[21]  But NextEra states that there are at least two flaws with this

---

[16] *Id.* at 8 (citing *Blumenthal v. NRG Power Mktg., Inc.*, 103 FERC ¶ 61,344, *reh'g denied*, 104 FERC ¶ 61,211 (2003)).

[17] 378 F.3d 511 (5th Cir. 2004) (*Mirant*).

[18] NextEra Petition at 9-11 (citing *In re Calpine Corp.*, 337 B.R. 27 (S.D.N.Y. 2006) (*Calpine*); *In re Bos. Generating, LLC*, No. 10 Civ. 6258, 2010 WL 4616243 (S.D.N.Y. Nov. 12, 2010) (*Boston Generating*)).

[19] *Id.* at 10.

[20] *Id.* at 11.

[21] *Id.* at 12 (citing *Mirant*, 378 F.3d at 520).

reasoning.  First, NextEra argues that the rejection of a wholesale power contract in bankruptcy is more than a simple breach of that contract. The rejection terminates the contract before the agreed upon term has expired, and, therefore, effectively amends or modifies the obligation to deliver wholesale power for the term of the contract.[22]  Second, NextEra argues that when a bankruptcy court rejects a contract, it authorizes, as the exclusive form of relief, the counterparty to bring an unsecured claim against the bankrupt estate.  NextEra asserts that this has a direct effect on the rate charged under the agreement, because there is a substantial risk (indeed, a near certainty) that the counterparty to a wholesale contract will recover a rate that is different from the Commission-approved rate in its contract.  In other words, NextEra argues that for the counterparty, there is no practical difference between an order that directly changes the lawful rate and an order that changes the lawful rate by rejecting the contract and requiring the counterparty to assert an unsecured claim against the bankrupt estate.[23]

9.      NextEra also argues that the *Mirant* decision improperly relies on the absence in the Bankruptcy Code of any provision expressly stating that rates subject to the Commission's jurisdiction are exempt from rejection.[24]  Instead, NextEra asserts that, in light of the extensive precedent regarding the Commission's vast and exclusive authority to regulate wholesale rates, terms and conditions, if Congress had intended to divest the Commission of this long-recognized authority in bankruptcy proceedings, then it would have included such language in the Bankruptcy Code.  However, NextEra argues that no such language or stated intent exists in the text or is apparent in the legislative history of the Bankruptcy Code.

10.     Lastly, NextEra argues that there are sound policy reasons to embrace *Calpine* and *Boston Generating*.  Specifically, NextEra claims that the Commission's review of PG&E's wholesale contracts are greater than the policy concerns generally considered by a bankruptcy court.[25]  NextEra explains that in bankruptcy, the primary concern is to preserve the assets of the debtor so that they can be fairly divided among the creditors, but here, rejecting PG&E's wholesale contracts (at least its wholesale contracts with NextEra) will not have a significant impact on PG&E's estate.  According to NextEra, this is because PG&E's purchased power costs are generally passed through to its

---

[22] *Id.*

[23] *Id.* at 13.

[24] *Id.* at 14.

[25] *Id.*

customers and therefore, those costs do not shrink PG&E's estate.[26]  Conversely, NextEra states that rejection of the wholesale contracts by a bankruptcy court will directly and adversely impact the Commission's ability to promote rate certainty and facilitate the development of adequate power supplies.  NextEra argues that, if bankruptcy courts are allowed unilaterally to reject Commission-approved wholesale power contracts, it will create significant uncertainty for developers of new electric supplies, which will impede the development of new supplies.  Thus, NextEra requests that the Commission issue an order consistent with *Calpine* and *Boston Generating* and holding that PG&E cannot reject its wholesale power purchase agreements in bankruptcy, without the Commission's approval of the contract abrogation or modification under the standards of FPA sections 205 and 206.[27]

## II.   Notice and Responsive Pleadings

11.     Notice of NextEra's Petition was issued by the Commission, with PG&E's answer, interventions, and comments, due on or before January 22, 2019.  Timely motions to intervene were filed by Allco Finance Limited, American Wind Energy Association (AWEA), Avangrid Renewables, LLC, BP Energy Company, California Municipal Utilities Association, California Department of Water Resources, Cogentrix Energy Power Management, LLC, D.E. Shaw Renewable Investments, L.L.C., Diablo Winds, LLC, Dominion Energy Services, Inc., EDP Renewables North America LLC, El Dorado Hydro, LLC, First Solar, Inc., KES Kingsburg, L.P., Kingston Energy Storage, LLC, MC Shiloh IV Holdings LLC, Middle River Power, LLC, Modesto Irrigation District, Mojave Solar LLC, Northern California Power Agency, NRG Power Marketing LLC, Ruby Pipeline, L.L.C., the City of Santa Clara, California and M-S-R Public Power Agency, the Cities of Anaheim, Azusa, Banning, Colton, Pasadena, and Riverside, California, State Water Contractors, Transmission Agency of Northern California, and Vistra Energy Corporation and Dynegy Marketing and Trade, LLC.  Algonquin Power Company, Algonquin Power Sanger LLC, Algonquin SKIC 20 Solar, LLC, Brookfield Renewable Partners L.P., Calpine Corporation, Capital Dynamics, Inc., Clearway Energy Group LLC and Clearway Energy, Inc.,[28] Consolidated Edison Development, Inc.,

---

[26] *Id.*

[27] *Id.* at 15.

[28] Clearway Energy Group LLC's and Clearway Energy, Inc.'s comments were joined by Sand Drag LLC, Sun City Project LLC, El Dorado Hydro, LLC, Rock Creek Hydro, LLC, Cascade Energy Storage, LLC, Kingston Energy Storage, LLC, Sierra Energy Storage, LLC, First Solar, Inc., MC Shiloh IV Holdings LLC and NRG Power Marketing LLC.

Exelon Corporation, Solar Energy Industries Association, Southern Power Company,[29] TerraForm Companies, Topaz Solar Farms LLC, Vantage Wind Energy, and Western Power Trading Forum filed timely motions to intervene and comments in support of NextEra's Petition.

12.     Burney Forest Products, California Public Utilities Commission, Chevron Power Holdings Inc., Citizens Sunrise Transmission LLC, the City and County of San Francisco, Earthjustice, EDF Renewables, Inc., Fresno Cogeneration Partners, LP, FTP Power LLC, National Rural Electric Cooperative Association, Natural Resources Defense Council, Panoche Energy Center, LLC, PSEG Energy Resources & Trade LLC, PSEG Power LLC, Sacramento Municipal Utility District, Sustainable FERC Project, Turlock Irrigation District, Wellhead Electric Company, Western Area Power Administration, and Yuba City Cogen, Inc. filed motions to intervene out-of-time. American Council on Renewable Energy and Sunray Energy 2, LLC and Westlands Solar Farms LLC filed motions to intervene out-of-time and comments in support of NextEra's Petition on January 23, 2019.  Also on January 23, 2019, AWEA filed comments out-of-time supporting the Petition.  Bayerische Landesbank New York Branch submitted a letter in support of NextEra's Petition on January 23, 2019.

13.     On January 22, 2019, PG&E filed an answer to the Petition.  On January 23, 2019, NextEra filed a motion for leave to answer and an answer to PG&E's answer.

### A.     Answer and Answer to Answer

14.     PG&E argues that the Commission should deny NextEra's Petition.  According to PG&E, a Commission order limiting PG&E's rights prior to its bankruptcy filing would violate the FPA and the Bankruptcy Code.  It would also contravene the terms of the agreements between NextEra and PG&E.  PG&E offers three reasons in support of its position:  First, PG&E argues that NextEra's Petition is speculative and hypothetical because PG&E's bankruptcy has not yet occurred and no action has been taken with regard to any particular contract.  Additionally, PG&E claims that the Commission's jurisdiction under the FPA applies to the sale, but not the purchase, of power, and by extension, to sellers, but not buyers, of power.  Accordingly, PG&E states that the Commission is not authorized to order a buyer to continue to purchase power.  According to PG&E, such Commission action, as well as the Commission's potential involvement in

---

[29] Southern Power Company moved to intervene and filed comments on behalf of itself and its affiliates Morelos Solar, LLC, Blackwell Solar, LLC, Lost Hills Solar, LLC, North Star Solar, LLC, and Parrey, LLC.

the bankruptcy of any company involved in purchasing power, would represent a significant expansion of the Commission's authority.[30]

15.     Second, PG&E argues that the bankruptcy court will have jurisdiction over the issues raised in the Petition and that the Bankruptcy Code does not list wholesale power purchase agreements among the specific obligations that cannot be discharged in bankruptcy. PG&E contends that there is no precedent to support the argument that the Commission has exclusive jurisdiction over breaches of wholesale power purchase agreements or that parties must receive permission from the Commission before breaching. PG&E states that the rejection of a contract in bankruptcy is simply a breach of contract and cites the Court of Appeals conclusion in *Mirant* that debtors may reject wholesale power contracts in bankruptcy without Commission approval. PG&E further argues that breaching a contract is not a violation of the filed rate doctrine, but rather a failure to perform under a Commission-approved performance obligation, subject to claims for damages.[31]

16.     Third, PG&E asserts that the Commission should disclaim jurisdiction in this proceeding in light of the specific contracts at issue. PG&E contends that the Commission's argument in *FirstEnergy* that *Mobile-Sierra* gave the Commission a role in ensuring that any contract rejection was consistent with the public interest is not relevant here. PG&E claims that the parties to the wholesale power purchase agreements with PG&E either declined to apply *Mobile-Sierra* or waived the right to make the type of Commission filing contemplated by the Petition. Specifically, PG&E states that every single NextEra contract either expressly disclaims *Mobile-Sierra* protection, or includes a waiver provision indicating that they would not seek the Commission's modification of the contracts. PG&E argues that these contractual provisions represent choices by the parties that the Commission should respect.[32]

17.     Additionally, PG&E asserts that, even if the Commission has concurrent jurisdiction with the bankruptcy court, the Commission should decline to exercise that jurisdiction. According to PG&E, this proceeding does not satisfy the conditions that the Commission has previously applied to determine whether to exercise jurisdiction. PG&E argues that (1) this dispute does not draw upon the Commission's special expertise, (2) Commission action would create regulatory uncertainty, and (3) these cases are

---

[30] PG&E Answer at 2, 3, 12.

[31] *Id.* at 3, 17.

[32] *Id.* at 5, 22.

unimportant in relation to the Commission's regulatory responsibilities.[33]  For these reasons, PG&E requests that the Commission deny NextEra's Petition.

18.     In its answer, NextEra first argues that PG&E's procedural arguments should be rejected.  Noting the split between courts on the issue, NextEra argues that Rule 207 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.207, gives the Commission the authority to resolve the current controversy and remove uncertainty relating to whether a bankruptcy court may approve the rejection of a wholesale power contract.[34]  NextEra also argues that PG&E misconstrues the issues raised and relief requested in NextEra's Petition in arguing that the Commission has no jurisdiction over buyers; instead, NextEra asserts that it is asking the Commission to assert its jurisdiction over wholesale contracts, to which both sellers and buyers are parties.[35]

19.     With regard to the merits of its Petition, NextEra argues that rejection in bankruptcy is not like a run-of-the-mill contract breach.  Rather, according to NextEra, rejections are different because they require bankruptcy court approval and they establish bankruptcy court jurisdiction over the resolution of payments under the contract.  Additionally, NextEra asserts that a rejection modifies the duration of the contract and abrogates or terminates the obligation to deliver wholesale power under it.[36]  NextEra thus argues that these distinctions bring rejection within the scope of the filed rate doctrine, and under the Commission's exclusive jurisdiction.  Lastly, NextEra argues that PG&E's arguments concerning the *Mobile-Sierra* presumption, the Commission's lack of specialized expertise with rejection of wholesale power contracts in bankruptcy, and other related arguments are without merit.[37]

## III.     Commission Determination

### A.      Procedural Matters

20.     Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2018), the timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

---

[33] *Id.* at 25-28.

[34] NextEra Answer at 3-4.

[35] *Id.* at 5-6.

[36] *Id.* at 6 (citing *Calpine*, 337 B.R. at 36-37).

[37] *Id.* at 8-10.

21.     Pursuant to Rule 214(d) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214(d) (2018), the Commission will grant the late-filed motions to intervene given the entities' interests in the proceeding, the early stage of the proceeding, and the absence of undue prejudice or delay.

22.     Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2018), prohibits an answer to an answer unless otherwise ordered by the decisional authority.  We will accept NextEra's answer because it has provided information that assisted us in our decision-making process.

### B.     Substantive Matters

23.     In this order, we provide clarification on the Commission's position with respect to the issues raised in the Petition.  In so doing, we acknowledge that the law in this area is unsettled.  Several courts have read the FPA and the Bankruptcy Code *in pari materia* and reached different conclusions.[38]

24.     In *Mirant*, the Fifth Circuit concluded that the FPA does not preempt the Bankruptcy Code because rejection of the wholesale power purchase agreement in that proceeding would only have an indirect effect upon the filed rate.[39]  The court explained that rejection of an executory contract amounts to a breach of contract, providing the non-breaching party with an unsecured claim against the bankruptcy estate for an amount equal to its damages from the breach.  The court further determined that such a breach does not amount to a modification of the filed rate, but rather gives effect to it because the award of damages due to the breach would be based on the filed rate.[40]  The court also stated that the structure of the Bankruptcy Code indicates that Congress did not intend to limit the ability of utility companies to reject an executory power contract.[41]  Thus, the court concluded that the FPA does not preempt a district court's jurisdiction to

---

[38] *See Mirant*, 378 F.3d 511; *Calpine*, 337 B.R. 27; *Boston Generating*, 2010 WL 4616243.

[39] *Mirant*, 378 F.3d at 519-520.  The court explained, however, that "the FPA does preempt breach of contract claims that challenge a filed rate."  *Id.* at 519.

[40] *Id.* at 520.

[41] *Id.* at 521.

authorize the rejection of an executory contract subject to Commission regulation as part of a bankruptcy proceeding.[42]

25.     In *Calpine*, the United States District Court for the Southern District of New York declined to follow *Mirant*; instead, it found that it lacked subject matter jurisdiction to authorize rejection of the energy contracts at issue and concluded that the Commission has exclusive jurisdiction over their disposition.[43]  The court acknowledged this Commission's broad and exclusive jurisdiction over rates, terms, and conditions, and noted that nothing in the FPA limits the Commission's jurisdiction in the bankruptcy context.[44]  The court further found that, upon examining the Bankruptcy Code, there is little evidence of congressional intent to limit the Commission's regulatory authority, and that "[a]bsent overriding language, the Bankruptcy Code should not be read to interfere with [Commission] jurisdiction."[45]  The court thus concluded that it may not authorize rejection of the wholesale power purchase agreements at issue because to do so would directly interfere with the Commission's jurisdiction over the rates, terms, conditions, and duration of the wholesale energy contracts.[46]

26.     In *Boston Generating*, the parties to the proceeding agreed that debtors should seek Commission approval of the wholesale contract at issue, but disagreed over whether the bankruptcy court or the Commission may consider the rejection motion concurrently or the bankruptcy court must wait until the Commission has ruled.[47]  The court concluded that this disagreement was irrelevant because regardless of the order, "[i]f either the bankruptcy court or [the Commission] does not approve the Debtors' rejection of the [wholesale agreement], the Debtors may not reject the contract."  Thus, the court ordered

---

[42] *Id.* at 522.  Despite the Fifth Circuit's conclusion, the court stated that, given the unique nature of a wholesale power purchase agreements for electric energy, it may be appropriate for the district court to apply a heightened standard of review when determining whether to reject wholesale power purchase agreements.  *Id.* at 525.  On remand, the district court noted that it would apply a heightened standard of review above that of the typical business judgement rule.  *See generally In re Mirant*, 318 B.R. 100 (N.D. Tex. 2004).

[43] *Calpine*, 337 B.R. at 29-30.

[44] *Id.* at 32-33.

[45] *Id.*

[46] *Id.* at 36, 39.

[47] *Boston Generating*, 2010 WL 4616243 at *3.

the debtor to obtain a determination from the Commission pursuant to the Natural Gas Act as to whether it may reject the wholesale contract.[48]

27.     More recently, in *FirstEnergy Solutions Corp. v. FERC*,[49] the bankruptcy court in the United States District Court for the Northern District of Ohio (Ohio Bankruptcy Court) issued a preliminary injunction enjoining the Commission from requiring FirstEnergy Solutions Corporation (FirstEnergy), which had filed a petition for bankruptcy, to continue performing under certain wholesale power contracts that FirstEnergy sought to reject through bankruptcy.  In defending against the injunction, the Commission argued that, reading the FPA and the Bankruptcy Code together, the Commission maintains concurrent jurisdiction with bankruptcy courts over wholesale power agreements.  In other words, a debtor must seek bankruptcy court approval to reject a wholesale power agreement, as well as Commission approval to unilaterally change such agreement.  Rejecting the Commission's position, the Ohio Bankruptcy Court found that the automatic stay provision of the Bankruptcy Code[50] and its power to grant equitable relief under the Bankruptcy Code[51] support its decision to issue the preliminary injunction.  That opinion is currently pending appeal before the United States Court of Appeals for the Sixth Circuit.[52]

28.     Against this background, and given the unsettled state of the law, we have reviewed the FPA and Bankruptcy Code in light of the arguments raised in the Petition, and conclude that this Commission and the bankruptcy courts have concurrent jurisdiction to review and address the disposition of wholesale power contracts sought to be rejected through bankruptcy.  We find that to give effect to both the FPA and the Bankruptcy Code, a party to a Commission-jurisdictional wholesale power purchase agreement must obtain approval from both the Commission and the bankruptcy court to modify the filed rate and reject the contract, respectively.

---

[48] *Id.*

[49] 2018 WL 2315916 (Bankr. N.D. Ohio May 18, 2018).

[50] 11 U.S.C. § 362(a) (2012).

[51] 11 U.S.C. § 105(a) (2012).

[52] *See In re FirstEnergy Solutions Corp.*, Case Nos. 18-3787, 18-3788, 18-4095, 181-4097, 18-4107, 18-4110, Briefing Schedule (6th Cir. filed Jan. 17, 2019) (requiring appellants' principal briefs to be filed by February 26, 2019).

29.     Courts have repeatedly acknowledged the broad scope of the Commission's statutory jurisdiction over rates, terms, and conditions of wholesale electricity sales.[53] The Commission's exclusive authority to determine the reasonableness of wholesale electricity rates also extends to the rates, terms, and conditions of wholesale power agreements, as well as changes to those agreements.[54]  The Commission's broad and plenary authority over wholesale electricity rates led to the development of the filed-rate doctrine, which holds a party "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms."[55]  First designed to "ensure that federal courts respect the decisions of federal administrative agencies," the filed-rate doctrine recognizes that "[the Commission] alone is empowered to make that judgment of reasonableness, and until it has done so, no rate other than the one [approved by the Commission] may be charged."[56]  In short, under the FPA, the Commission determines the filed rate and "except for review of the Commission's orders, the courts can assume no right to a different one."[57]  We find that a rejection of a Commission-jurisdictional contract in a bankruptcy court alters the essential terms and conditions of the contract and the filed rate; thus, this Commission's jurisdiction is implicated, and our approval is required.[58]

30.     We disagree with PG&E's assertion that a Commission order addressing NextEra's Petition prior to PG&E's bankruptcy filing would violate the FPA and the

---

[53] *E.g.*, *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760 (2016).

[54] *See Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty., Wash.*, 554 U.S. 527 (2008) (discussing the standard that the Commission applies when reviewing the modification of a wholesale power purchase agreement).

[55] *Montana–Dakota Utilities*, 341 U.S. at 251.

[56] *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 964 (1986) (quoting *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 581-82 (1981)).

[57] *Montana–Dakota Utilities*, 341 U.S. at 252.

[58] While this petition was pending, at least one other party to a wholesale power contract with PG&E has filed a petition seeking the same declaration that NextEra requests in this proceeding.  Exelon Corporation, Petition for Declaratory Order and Complaint, Docket No. EL19-36-000 (filed Jan. 22, 2019).  While the circumstances of individual contracts may vary—for example, to the extent *Mobile-Sierra* protections may or may not apply—the Commission's jurisdictional position is the same with regard to other wholesale power contracts PG&E may seek to terminate or modify through bankruptcy.

Bankruptcy Code.  We are similarly unpersuaded by the argument that NextEra's Petition is without merit because it was filed in advance of PG&E's anticipated bankruptcy. Given that the law is unsettled, under the circumstances here, we find it appropriate for parties to raise concerns related to activities covered by the provisions of the FPA, including the rates, terms, and conditions of wholesale power agreements.

31.     With regard to PG&E's statement that that the bankruptcy court will have jurisdiction over the issues raised in the Petition, we maintain that the Commission shares concurrent jurisdiction with bankruptcy courts over wholesale power agreements, as described above.  Similarly, concerning PG&E's argument that the Commission should disclaim its authority due to provisions contained within specific contracts, these agreements are still subject to the Commission's jurisdiction and the Commission maintains discretion to exercise its authority.  With respect to PG&E's arguments that the *Mobile-Sierra* doctrine does not apply to its power purchase agreements with NextEra, we are not reviewing the specific agreements here, but rather explaining the Commission's concurrent jurisdiction with respect to wholesale power agreements.

The Commission orders:

        We conclude that this Commission and the bankruptcy courts have concurrent jurisdiction to review and address the disposition of wholesale power contracts sought to be rejected through bankruptcy.

By the Commission.  Commissioner McNamee is not participating.

( S E A L )

                            Nathaniel J. Davis, Sr.,
                            Deputy Secretary.