# EXHIBIT 2

166 FERC ¶ 61,053
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Neil Chatterjee, Chairman;
Cheryl A. LaFleur and Richard Glick.

| | |
|---|---|
| Exelon Corporation | Docket No. EL19-36-000 |
| v. | |
| Pacific Gas and Electric Company | |

ORDER ON PETITION FOR DECLARATORY ORDER AND COMPLAINT

(Issued January 28, 2019)

1.     On January 22, 2019, Exelon Corporation (Exelon) filed, pursuant to sections 206 and 306 of the Federal Power Act (FPA)[1] and Rules 206 and 207 of the Commission's Rules of Practice and Procedure,[2] a petition for declaratory order and complaint (Petition) against Pacific Gas and Electric Company (PG&E) requesting that the Commission find that, if PG&E files for bankruptcy, PG&E may not abrogate, amend, or reject in a bankruptcy proceeding any rates, terms and conditions of its wholesale power purchase agreements subject to the Commission's jurisdiction without first obtaining approval from the Commission under FPA sections 205 and 206.[3]  In this order, the Commission addresses Exelon's Petition for a declaratory order and clarifies its position with regard to bankruptcy filings that seek to reject Commission-jurisdictional wholesale power purchase agreements.[4]

---

[1] 16 U.S.C. §§ 824e, 825e (2012).

[2] 18 C.F.R. §§ 385.206, 385.207 (2018).

[3] 16 U.S.C. §§ 824d, 824e (2012).

[4] As noted below, Exelon's Petition seeks relief similar to that requested by NextEra Energy, Inc. and NextEra Energy Partners, L.P. (collectively, NextEra) in a petition it filed on January 18, 2019 in Docket No. EL19-35-000.  The Commission

## I.  **Background**

2.      Exelon states that it is a holding company with several subsidiaries that own electric transmission and distribution systems, as well as electric generation companies throughout the United States, including AV Solar Ranch 1, LLC, a public utility that owns a solar photovoltaic project in the Antelope Valley area of the Western Mojave Desert that sells its entire output to PG&E under a wholesale power purchase agreement.[5] Exelon states that PG&E recently announced that it will file for bankruptcy protection due to, among other reasons, liabilities relating to wildfires in California and that it will make that filing on or about January 29, 2019.[6]  In order to protect its wholesale power purchase agreement and those of others, Exelon requests that the Commission issue an order finding PG&E may not abrogate, amend, or reject its Commission-jurisdictional wholesale power purchase agreements with Exelon in any bankruptcy proceedings that may be initiated by PG&E without first obtaining approval from the Commission under FPA sections 205 or 206.[7]

3.      Exelon argues that this Commission has exclusive jurisdiction to regulate the rates, terms, and conditions of PG&E's wholesale power purchase agreements.[8]  Exelon asserts that the core of the Commission's regulatory responsibilities under the FPA is the exclusive authority to regulate the rates, terms and conditions for interstate transmission and wholesale sales of electric energy under FPA sections 205 and 206.[9]  Exelon states that the Commission's broad and exclusive jurisdiction over rates has led to the filed-rate doctrine, which provides that a party "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court

---

issued an order on NextEra's Petition on January 25, 2019.  *NextEra Energy, Inc. v. Pac. Gas & Elec. Co.*, 166 FERC ¶ 61,049 (2019) (*NextEra v. PG&E*).

   [5] Exelon Petition at 3-5.

   [6] *Id.* at 5 (citing Current Report on Form 8-K of Pacific Gas and Electric Corp. and PG&E (Jan. 13, 2019)).

   [7] *Id.* at 7-8.  Exelon also requests an order no later than January 28, 2019 to reduce the risk that PG&E may attempt to obtain a restraining order or injunction in order to disable this Commission from exercising its jurisdiction over filed rates.  *Id.* at 2, 26.

   [8] *Id.* at 8-11.

   [9] *Id.* at 8.

can authorize commerce in the commodity on other terms."[10]  Exelon asserts that once the Commission accepts or approves a filed rate as just and reasonable, the filed rate has the force of law.[11]  In other words, Exelon explains that "the filed rate . . . is to be treated as though it were a statute, binding upon the seller and purchaser alike."[12]

4.      Exelon states that the filed-rate doctrine protects more than just the rate, but also the terms and conditions, including the duration of a filed contract.  Exelon also argues that wholesale electricity contracts may be filed directly with the Commission under the FPA or may be negotiated under a filed and approved market-based rate tariff that does not require the utility to separately file each individual contract, but either way, the Commission's authority to regulate the rates, terms and conditions of the contract is exclusive and subject to the filed-rate doctrine.[13]

5.      Exelon further argues that a bankruptcy court's authority to reject contracts cannot deprive this Commission of its exclusive authority to determine whether rates, terms and conditions of wholesale power purchase agreements should be amended or abrogated.[14]  Exelon states that section 365(a) of the Bankruptcy Code[15] authorizes a bankruptcy court to assume or reject any executory contract of a debtor.  Exelon notes that, under the Bankruptcy Code, rejection acts as a breach that gives counterparties a general, unsecured claim for damages against the estate, but that nothing in the Bankruptcy Code permits a court to occupy the Commission's exclusive role under the FPA.[16]

6.      Exelon argues that the Commission should find that any request made by PG&E to the bankruptcy court to reject a Commission-regulated wholesale power contract, if

---

[10] *Id.* at 9 (quoting *Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951) (*Montana-Dakota Utilities*) (internal quotations omitted)).

[11] *Id.* (quoting *Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 520 (1939); *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 839 (9th Cir. 2004) (internal quotations omitted)).

[12] *Id.* at 10 (quoting *Boston Edison Co. v. FERC*, 856 F.2d 361, 372 (1st Cir. 1988) (internal quotations omitted)).

[13] *Id.*

[14] *Id.* at 11-12.

[15] 11 U.S.C. § 365(a) (2012).

[16] Exelon Petition at 11.

granted, could put the court in the position of determining whether rejection would be contrary to the public interest and in violation of the *Mobile-Sierra* doctrine.[17]  Exelon argues that courts are not in a position to make that judgment and the FPA charges the Commission with making that determination.[18]  Exelon states that if PG&E is allowed to pick and choose which wholesale power purchase agreements it wants to perform, the affected sellers would need to recover their operating costs elsewhere to recover its operating and maintenance expenses and debt service.  Without guaranteed recovery of its costs, Exelon claims that those sellers would likely incur increased debt and borrowing costs, creating a disproportionately adverse effect on their ability to meet their financial obligations.[19]  Exelon asserts that all of these consequences would be adverse to the public interest, and without Commission review of the contract changes requested by PG&E, no review of the effect on the public interest would take place.[20]

7.      Exelon argues that the Commission should follow the more recent precedent in *In re Calpine Corp.*[21] and *In re Boston Generating, LLC*[22] in rejecting *Mirant Corp. v. Potomac Elec. Power Co.*,[23] and concluding that it has authority to review wholesale power purchase agreements that are submitted for rejection in a bankruptcy proceeding.[24]  Exelon argues that the *Mirant* decision fails to recognize the primacy of the Commission's plenary authority over the rates, terms, and conditions of wholesale power contracts under the FPA.[25]  Exelon states that the rejection of a wholesale power contract

---

[17] *See United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332 (1956); *Fed. Power Comm'n v. Sierra Pac. Power Co.*, 350 U.S. 348 (1956) (together creating the *Mobile-Sierra* presumption, which requires the Commission to presume that the rate set out in a freely negotiated wholesale-energy contract meets the "just and reasonable" requirement imposed by law).

[18] Exelon Petition at 13.

[19] *Id.*

[20] *Id.* at 14.

[21] 337 B.R. 27 (S.D.N.Y. 2006) (*Calpine*).

[22] 2010 WL 4616243 (S.D.N.Y. 2010) (*Boston Generating*).

[23] 378 F.3d 511 (5th Cir. 2004) (*Mirant*).

[24] Exelon Petition at 15-24.

[25] *Id.* at 21.

relieves the debtor of its obligation to perform the contract before its expiration, effectively amending or modifying its terms and conditions without Commission approval. Exelon argues that, in that manner, the effect of ignoring the Commission's exclusive jurisdiction following a PG&E bankruptcy filing would be to strip the Commission's statutorily-mandated oversight over wholesale power sales arrangements serving customers in Northern California and placing the specific rates, terms, and conditions of service to PG&E, and PG&E's customers, and replace it with the oversight of a bankruptcy court.

8.      Exelon then argues that Commission review of PG&E's wholesale power contracts would not result in any irreparable harm to PG&E.[26] Specifically, Exelon states that PG&E can already seek to modify the wholesale power contracts through an FPA section 206 proceeding before the Commission. Exelon asserts that Commission action on such a filing could proceed in parallel with any bankruptcy case, and would likely be resolved well in advance of any bankruptcy resolution. Thus, Exelon argues that a final reorganization plan in PG&E's chapter 11 bankruptcy case would not be delayed and could take into consideration any Commission resolution of the FPA section 206 complaint. According to Exelon, an additional reason that PG&E would not suffer irreparable harm if the Commission provides the requested relief here is that PG&E's costs for wholesale power purchases are flowed through to PG&E's customers.[27]

9.      Lastly, Exelon notes that section 1129(a)(6) of the Bankruptcy Code[28] specifically provides the Commission with the opportunity to review and approve any changes to rates during confirmation of the reorganization plan.[29] Exelon asserts that the requested relief here is entirely consistent with that role.

## II.    **Notice and Responsive Pleadings**

10.     Notice of Exelon's Petition was issued by the Commission, with PG&E's answer, interventions, and comments, due on or before January 24, 2019. California Public Utilities Commission filed a notice of intervention. Timely motions to intervene were filed by Arlington Wind Power Project LLC, Avangrid Renewables, LLC, Blackspring Ridge I Wind Project LP, Brookfield Renewable Partners L.P., California Department of Water Resources State Water Project, California Municipal Utilities Association, Calpine

---

[26] *Id.* at 24-25.

[27] *Id.* at 25.

[28] 11 U.S.C. § 1129(a)(6) (2012).

[29] *Id.* at 26.

Corporation, Chevron Power Holdings Inc., the City and County of San Francisco, the City of Santa Clara, California and M-S-R Public Power Agency, the Cities of Anaheim, Azusa, Banning, Colton, Pasadena, and Riverside, California, Citizens Sunrise Transmission LLC, D.E. Shaw Renewable Investments, L.L.C., Dominion Energy Services, Inc., EDF Renewables, Inc., EDP Renewables North America LLC, FTP Power LLC, KES Kingsburg, L.P., MC Shiloh IV Holdings LLC, Middle River Power, LLC, Modesto Irrigation District, National Rural Electric Cooperative Association, NextEra, Northern California Power Agency, NRG Power Marketing LLC, Panoche Energy Center, LLC, PSEG Companies,[30] Public Citizen, Inc., Rising Tree Wind Farm II LLC, Ruby Pipeline, L.L.C., Sacramento Municipal Utility District, State Water Contractors, Transmission Agency of Northern California, Turlock Irrigation District, and Western Area Power Administration.  Capital Dynamics, Inc., Clearway Energy Group LLC and Clearway Energy, Inc., Consolidated Edison Development, Inc., Southern Power Company,[31] Sunray Energy 2, LLC and Westlands Solar Farms LLC, Topaz Solar Farms LLC, Vantage Wind Energy LLC, and Western Power Trading Forum, filed timely motions to intervene and comments in support of Exelon's Petition.

11.     TerraForm Power, Inc. (TerraForm Power) filed a motion to intervene out-of-time on January 25, 2019.

12.     On January 24, 2019, PG&E filed an answer to the Petition.

## A.     **Answer**

13.     PG&E argues that the Commission should deny Exelon's Petition.  According to PG&E, a Commission order limiting PG&E's rights prior to its bankruptcy filing would violate the FPA and the Bankruptcy Code.  It would also contravene the terms of the agreements between Exelon and PG&E.

14.     PG&E offers three reasons in support of its position:  First, PG&E argues that Exelon's Petition is speculative and hypothetical because PG&E's bankruptcy has not yet occurred and no action has been taken with regard to any particular contract.  Additionally, PG&E claims that the Commission's jurisdiction under the FPA applies to the sale, but not the purchase, of power, and by extension, to sellers, but not buyers, of

---

[30] PSEG Companies consists of PSEG Power LLC and PSEG Energy Resources & Trade LLC.  The PSEG Companies are each wholly owned, direct and indirect subsidiaries of Public Service Enterprise Group Incorporated.

[31] Southern Power Company moved to intervene and filed comments on behalf of itself and its affiliates Morelos Solar, LLC, Blackwell Solar, LLC, Lost Hills Solar, LLC, North Star Solar, LLC, and Parrey, LLC.

power.  Accordingly, PG&E states that the Commission is not authorized to order a buyer to continue to purchase power.  According to PG&E, such Commission action, as well as the Commission's potential involvement in the bankruptcy of any company involved in purchasing power, would represent a significant expansion of the Commission's authority.[32]

15.    Second, PG&E argues that the bankruptcy court will have jurisdiction over the issues raised in the Petition and that the Bankruptcy Code does not list wholesale power contracts among the specific obligations that cannot be discharged in bankruptcy.  PG&E contends that there is no precedent to support the argument that the Commission has exclusive jurisdiction over breaches of wholesale power contracts or that parties must receive permission from the Commission before breaching.  PG&E states that the rejection of a contract in bankruptcy is simply a breach of contract and cites the United States Court of Appeals for the Fifth Circuit (Fifth Circuit) conclusion in *Mirant* that debtors may reject wholesale power contracts in bankruptcy without Commission approval.  PG&E further argues that breaching a contract is not a violation of the filed rate doctrine, but rather a failure to perform under a Commission-approved performance obligation, subject to claims for damages.[33]

16.    Third, PG&E asserts that the Commission should disclaim jurisdiction in this proceeding in light of the specific contracts at issue.  PG&E contends that the Commission's litigation position in *FirstEnergy Solutions Corp. v. FERC*[34] rests on the assumption that concurrent jurisdiction would be straightforward to implement because it was possible for the debtors to concurrently seek approval from the Commission to modify the Commission.  However, PG&E argues that this assumption is not warranted here because the wholesale power contract includes a waiver provision under which the parties agreed they would not ask the Commission to modify the contracts.[35]  PG&E argues that these contractual provisions represent choices by the parties that the Commission should respect, and asserts that the waiver provisions are likely protected by the *Mobile-Sierra* presumption.[36]

---

[32] PG&E Answer at 2-3, 13.

[33] *Id.* at 3-4, 17-18.

[34] 2018 WL 2315916 (Bankr. N.D. Ohio May 18, 2018) (*FirstEnergy*)

[35] *Id.* at 22.

[36] *Id.* at 5, 23-24.

17.     Additionally, PG&E asserts that, even if the Commission has concurrent jurisdiction with the bankruptcy court, the Commission should decline to exercise that jurisdiction.  According to PG&E, this proceeding does not satisfy the conditions that the Commission has previously applied to determine whether to exercise jurisdiction.  PG&E argues that (1) this dispute does not draw upon the Commission's special expertise, (2) Commission action would create regulatory uncertainty, and (3) these cases are unimportant in relation to the Commission's regulatory responsibilities.[37]  For these reasons, PG&E requests that the Commission deny Exelon's Petition.

## III.   **Commission Determination**

### A.   **Procedural Matters**

18.     Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2018), the notice of intervention and timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

19.     Pursuant to Rule 214(d) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214(d) (2018), the Commission will grant TerraForm Power's late-filed motion to intervene given its interests in the proceeding, the early stage of the proceeding, and the absence of undue prejudice or delay.

### B.   **Substantive Matters**

20.     Exelon's requested relief is very similar to that requested by NextEra in a separate petition filed in Docket No. EL19-35-000.[38]  Consistent with the Commission's January 25, 2019 order on NextEra's petition, we provide here clarification on the Commission's position with respect to the issues raised in Exelon's Petition.  In so doing, we acknowledge that the law in this area is unsettled.  Several courts have read the FPA and the Bankruptcy Code *in pari materia* and reached different conclusions.[39]

21.     In *Mirant*, the Fifth Circuit concluded that the FPA does not preempt the Bankruptcy Code because rejection of the wholesale power purchase agreement in that

---

[37] *Id.* at 25-29.

[38] *See generally NextEra v. PG&E*, 166 FERC ¶ 61,049.

[39] *See Mirant*, 378 F.3d 511; *Calpine*, 337 B.R. 27; *Boston Generating*, 2010 WL 4616243.

proceeding would only have an indirect effect upon the filed rate.[40] The court explained that rejection of an executory contract amounts to a breach of contract, providing the non-breaching party with an unsecured claim against the bankruptcy estate for an amount equal to its damages from the breach. The court further determined that such a breach does not amount to a modification of the filed rate, but rather gives effect to it because the award of damages due to the breach would be based on the filed rate.[41] The court also stated that the structure of the Bankruptcy Code indicates that Congress did not intend to limit the ability of utility companies to reject an executory power contract.[42] Thus, the court concluded that the FPA does not preempt a district court's jurisdiction to authorize the rejection of an executory contract subject to Commission regulation as part of a bankruptcy proceeding.[43]

22.    In *Calpine*, the United States District Court for the Southern District of New York declined to follow *Mirant*; instead, it found that it lacked subject matter jurisdiction to authorize rejection of the energy contracts at issue and concluded that the Commission has exclusive jurisdiction over their disposition.[44] The court acknowledged this Commission's broad and exclusive jurisdiction over rates, terms, and conditions, and noted that nothing in the FPA limits the Commission's jurisdiction in the bankruptcy context.[45] The court further found that, upon examining the Bankruptcy Code, there is little evidence of congressional intent to limit the Commission's regulatory authority, and that "[a]bsent overriding language, the Bankruptcy Code should not be read to interfere

---

[40] *Mirant*, 378 F.3d at 519-520. The Court explained, however, that "the FPA does not preempt breach of contract claims that challenge a filed rate." *Id.* at 519.

[41] *Id.* at 520.

[42] *Id.* at 521.

[43] *Id.* at 522. Despite the Fifth Circuit's conclusion, the court stated that, given the unique nature of a wholesale power purchase agreements for electric energy, it may be appropriate for the district court to apply a heightened standard of review when determining whether to reject wholesale power purchase agreements. *Id.* at 525. On remand, the district court noted that it would apply a heightened standard of review above that of the typical business judgement rule. *See generally In re Mirant*, 318 B.R. 100 (N.D. Tex. 2004).

[44] *Calpine*, 337 B.R. at 29-30.

[45] *Id.* at 32-33.

with [Commission] jurisdiction."[46]  The court thus concluded that it may not authorize rejection of the wholesale power purchase agreements at issue because to do so would directly interfere with the Commission's jurisdiction over the rates, terms, conditions, and duration of the wholesale energy contracts.[47]

23.     In *Boston Generating*, the parties to the proceeding agreed that debtors should seek Commission approval of the wholesale contract at issue, but disagreed over whether the bankruptcy court or the Commission may consider the rejection motion concurrently or the bankruptcy court must wait until the Commission has ruled.[48]  The court concluded that this disagreement was irrelevant because regardless of the order, "[i]f either the bankruptcy court or [the Commission] does not approve the Debtors' rejection of the [wholesale agreement], the Debtors may not reject the contract."  Thus, the court ordered the debtor to obtain a determination from the Commission pursuant to the Natural Gas Act as to whether it may reject the wholesale contract.[49]

24.     More recently, in *FirstEnergy* the bankruptcy court in the United States District Court for the Northern District of Ohio (Ohio Bankruptcy Court) issued a preliminary injunction enjoining the Commission from requiring FirstEnergy Solutions Corporation (FirstEnergy), which had filed a petition for bankruptcy, to continue performing under certain wholesale power contracts that FirstEnergy sought to reject through bankruptcy. In defending against the injunction, the Commission argued that, reading the FPA and the Bankruptcy Code together, the Commission maintains concurrent jurisdiction with bankruptcy courts over wholesale power agreements.  In other words, a debtor must seek bankruptcy court approval to reject a wholesale power agreement, as well as Commission approval to unilaterally change such agreement.  Rejecting the Commission's position, the Ohio Bankruptcy Court found that the automatic stay provision of the Bankruptcy Code[50] and its power to grant equitable relief under the Bankruptcy Code[51] support its

---

[46] *Id.*

[47] *Id.* at 36, 39.

[48] *Boston Generating*, 2010 WL 4616243 at *3.

[49] *Id.*

[50] 11 U.S.C. § 362(a) (2012).

[51] 11 U.S.C. § 105(a) (2012).

decision to issue the preliminary injunction.  That opinion is currently pending appeal before the United States Court of Appeals for the Sixth Circuit.[52]

25.     Against this background, and given the unsettled state of the law, we have reviewed the FPA and Bankruptcy Code in light of the arguments raised in the Petition, and conclude that the Commission and the bankruptcy courts have concurrent jurisdiction to review and address the disposition of wholesale power contracts sought to be rejected through bankruptcy.  We find that to give effect to both the FPA and the Bankruptcy Code, a party to a Commission-jurisdictional wholesale power purchase agreement must obtain approval from both the Commission and the bankruptcy court to modify the filed rate and reject the contract, respectively.

26.     Courts have repeatedly acknowledged the broad scope of the Commission's statutory jurisdiction over rates, terms, and conditions of wholesale electricity sales.[53] The Commission's exclusive authority to determine the reasonableness of wholesale electricity rates also extends to the rates, terms, and conditions of wholesale power agreements, as well as changes to those agreements.[54]  The Commission's broad and plenary authority over wholesale electricity rates led to the development of the filed-rate doctrine, which holds a party "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms."[55]  First designed to "ensure that federal courts respect the decisions of federal administrative agencies," the filed-rate doctrine recognizes that "[the Commission] alone is empowered to make that judgment of reasonableness, and until it has done so, no rate other than the one [approved by the Commission] may be charged."[56]  In short, under the FPA, the Commission determines the filed rate and "except for review of the Commission's orders, the courts can assume

---

[52] *See In re FirstEnergy Solutions Corp.*, Case Nos. 18-3787, 18-3788, 18-4095, 181-4097, 18-4107, 18-4110, Briefing Schedule (6th Cir. filed Jan. 17, 2019) (requiring appellants' principal briefs to be filed by February 26, 2019).

[53] *E.g.*, *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760 (2016).

[54] *See Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty., Wash.*, 554 U.S. 527 (2008) (discussing the standard that the Commission applies when reviewing the modification of a wholesale power purchase agreement).

[55] *Montana–Dakota Utilities*, 341 U.S. at 251.

[56] *Nantahala Power and Light Co. v. Thornburg*, 476 U.S. 953, 964 (1986) (quoting *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 581-82 (1981)).

no right to a different one."[57]  We find that a rejection of a Commission jurisdictional contract in a bankruptcy court alters the essential terms and conditions of the contract and the filed rate; thus, this Commission's jurisdiction is implicated, and our approval is required.[58]

27.    We disagree with PG&E's assertion that a Commission order addressing Exelon's Petition prior to PG&E's bankruptcy filing would violate the FPA and the Bankruptcy Code.  We are similarly unpersuaded by the argument that Exelon's Petition is without merit because it was filed in advance of PG&E's anticipated bankruptcy.  Given that the law is unsettled, under the circumstances here, we find it appropriate for parties to raise concerns related to activities covered by the provisions of the FPA, including the rates, terms, and conditions of wholesale power agreements.

28.    With regard to PG&E's statement that that the bankruptcy court will have jurisdiction over the issues raised in the Petition, we maintain that the Commission shares concurrent jurisdiction with bankruptcy courts over wholesale power agreements, as described above.  Similarly, concerning PG&E's argument that the Commission should disclaim its authority due to provisions contained within specific contracts, these agreements are still subject to the Commission's jurisdiction and the Commission maintains discretion to exercise its authority.

The Commission orders:

    We conclude that this Commission and the bankruptcy courts have concurrent jurisdiction to review and address the disposition of wholesale power contracts sought to be rejected through bankruptcy.

By the Commission.  Commissioner McNamee is not participating.

( S E A L )

                                        Nathaniel J. Davis, Sr.,
                                        Deputy Secretary.

---

[57] *Montana–Dakota Utilities*, 341 U.S. at 252.

[58] As the Commission stated in *NextEra v. PG&E*, while the circumstances of individual contracts may vary, the Commission's jurisdictional position is the same with regard to other wholesale power contracts PG&E may seek to terminate or modify through bankruptcy.  *NextEra. v. PG&E*, 166 FERC ¶ 61,049 at n.58.

Document Content(s)

EL19-36-000.DOCX.......................................................1-12