Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>                **Debtor.**<br>Tax I.D. No. 94-3234914 | Case Nos.   19-_____ (___)<br>                    19-_____ (___)<br>Chapter 11<br>**DECLARATION OF SHAI Y. WAISMAN IN SUPPORT OF DEBTORS' APPLICATION FOR APPOINTMENT OF PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT** |
| **In re:**<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                **Debtor.**<br>Tax I.D. No. 94-0742640 | Date:<br>Time:<br>Place: |

I, Shai Y. Waisman, under penalty of perjury, declare as follows:

1. I am the Chief Executive Officer of Prime Clerk LLC ("**Prime Clerk**"), a chapter 11 administrative services firm whose headquarters are located at 830 3rd Avenue, 9th Floor, New York, New York 10022. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2. This Declaration is made in support of the above-captioned debtors' (collectively, the "**Debtors**") *Application Pursuant to 28 U.S.C. § 156(c) for Appointment of Prime Clerk LLC as Claims and Noticing Agent*, which was filed contemporaneously herewith (the "**Application**").[1]

3. Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

DECLARATION IN SUPPORT OF APPLICATION
APPOINTING NOTICING AND CLAIMS AGENT

have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as debtor's counsel or official claims and noticing agent in a bankruptcy case in this District and in other districts nationwide. Prime Clerk's active and former cases include: *NewZoom, Inc.*, No. 15-31141 (HB) (Bankr. N.D. Cal.); *Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del.); *Fairway Energy, LP*, No. 18-12684 (LSS) (Bankr. D. Del.); *Dixie Electric, LLC*, No. 18-12477 (KG) (Bankr. D. Del.); *New MACH Gen GP, LLC*, No. 18-11369 (MFW) (Bankr. D. Del.); *Gibson Brands, Inc.*, No. 18-11028 (CSS) (Bankr. D. Del.); *Bertucci's Holdings, Inc.*, No.18-10894 (MFW) (Bankr. D. Del.); *EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del.); *Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del.); *The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del.); *Orchard Acquisition Company, LLC*, No. 17-12914 (KG) (Bankr. D. Del.); *Rentech WP U.S., Inc.,* No. 17-12958 (CSS) (Bankr. D. Del.); *Appvion, Inc.,* No. 17-12082 (KJC) (Bankr. D. Del.); *Global Brokerage, Inc.,* No. 17-13532 (MEW) (Bankr. S.D.N.Y.); *Global A&T Electronics Ltd.,* No. 17-23931 (RDD) (Bankr. S.D.N.Y.); *Pacific Drilling S.A.*, No. 17-13193 (MEW) (Bankr. S.D.N.Y.); *Walter Investment Management Corporation,* No. 17-13446 (JLG) (Bankr. S.D.N.Y.); *Castex Energy Partners, L.P.,* No. 17-35835 (MI) (Bankr. S.D. Tex.); *Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va.); *TK Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del.); *Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *General Wireless Operations Inc. dba RadioShack,* No. 17-10506 (BLS) (Bankr. D. Del.); *Channel Technologies Group, LLC*, No. 16-11912 (DS) (Bankr. C.D. Cal.).

4. As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Prime Clerk will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "**Clerk**"), the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical and support services as specified in the Application and the Engagement

Agreement. In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit B** to the Application.

5. Prime Clerk represents, among other things, the following:

    (a) Prime Clerk is not a creditor of the Debtors;

    (b) Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the above captioned chapter 11 cases (the "**Chapter 11 Cases**");

    (c) By accepting employment in these Chapter 11 Cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

    (d) In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

    (e) Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

    (f) Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

    (g) In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Prime Clerk will not intentionally misrepresent any fact to any person;

    (h) Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

    (i) Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

    (j) None of the services provided by Prime Clerk as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

6. Although the Debtors do not propose to retain Prime Clerk under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "**Potential Parties in Interest**") in these Chapter 11 Cases. The list of Potential Parties in

Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' 50 largest unsecured creditors on a consolidated basis, the United States Trustee and any person employed in the office of the United States Trustee, and other parties. The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision. At this time, and as set forth in further detail herein, Prime Clerk is not aware of any connection that would present a disqualifying conflict of interest. Should Prime Clerk discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to file promptly a supplemental declaration.

7. To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Prime Clerk serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

8. On December 7, 2017, Prime Clerk received an investment from an investment vehicle formed by Carlyle Strategic Partners IV, L.P. ("**CSP IV**"), an investment fund managed by Carlyle Investment Management L.L.C., each affiliates of The Carlyle Group (together with its subsidiaries, "**Carlyle**"). As a result of the transaction, Prime Clerk and CSP IV are affiliates under applicable law. The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules. However, CSP IV is not on the Potential Parties in Interest list in these cases as of the date hereof.

9. Carlyle is a global alternative asset manager with over 1,625 professionals operating in 31 offices over six continents that manages over $200 billion in over 330 investment vehicles spanning

Corporate Private Equity, Real Assets, Global Credit, and Investment Solutions. Carlyle's Corporate Private Equity funds, Real Assets funds, Global Credit funds, and Investment Solutions funds (collectively, the "**Funds**") are managed independently from each other. CSP IV, Carlyle Strategic Partners II, L.P. and Carlyle Strategic Partners III, L.P. (collectively, "**CSP**") are Global Credit funds that each are owned by a diverse group of limited partners, which exert no control over CSP's investment decisions, and a general partner affiliated with Carlyle. All CSP investment professionals involved with Prime Clerk are dedicated solely to CSP and are not involved in the Corporate Private Equity, Real Assets, or Investment Solutions businesses, although, from time to time, one or more CSP investment professionals may sit on the investment committee of another Global Credit fund.

10. Designees of CSP IV are members of the Board of Managers of Prime Clerk's ultimate parent company ("**Parent Board Designees**"), Prime Clerk Holdings LLC ("**HoldCo**"). HoldCo wholly owns Prime Clerk MidCo Holding LLC ("**MidCo**"), which wholly owns Prime Clerk. No Carlyle designees are Board members of MidCo or Prime Clerk. Further, Prime Clerk and CSP IV have the following restrictions in place (collectively, the "**Barrier**"): (i) prior to the Debtors commencing these cases, Prime Clerk did not share the names or any other information identifying the Debtors with the Parent Board Designees; (ii) Prime Clerk has not and will not furnish any material nonpublic information about the Debtors to CSP, the Parent Board Designees or any Carlyle entity; (ii) no CSP personnel nor any other Carlyle personnel work on Prime Clerk client matters or have access to Prime Clerk client information, client files or client personnel; (iii) no CSP personnel nor any other Carlyle personnel work in Prime Clerk's offices; (iv) other than the Parent Board Designees, Prime Clerk operates independently from Carlyle, including that it does not share any employees, officers or other management with Carlyle, has separate offices in separate buildings, and has separate IT systems; and (v) no Prime Clerk executive or employee is a director, officer or employee of Carlyle (or vice versa other than the Parent Board Designees).

11. Prime Clerk has searched the names of the Debtors and the names of the potential parties in interest provided by the Debtors against: (i) the names of the CSP funds and their respective investments; (ii) the names of Carlyle's other Global Credit funds; and (iii) the names of the Corporate Private Equity funds. Prime Clerk also has searched the names of the Debtors against the publicly-known investments of the Corporate Private Equity funds as set forth in the list most recently provided to Prime Clerk by Carlyle's internal compliance department ("**Carlyle Compliance**"). CSP operates autonomously from and makes independent investment decisions from the other Global Credit funds, the Corporate Private Equity funds, the Real Assets funds, and the Investment Solutions funds. Further, Carlyle maintains an internal information barrier between its Global Credit funds and the rest of the Carlyle funds. Accordingly, the conflicts search does not include the names of the Real Assets funds, the Investment Solutions funds or any of their or the other Global Credit funds' investments, nor does it include any portfolio companies of any of the Funds (other than those of CSP and the Corporate Private Equity funds as described above). Based solely on the foregoing search, Prime Clerk has determined, to the best of its knowledge, that there are no material connections. To the extent Prime Clerk learns of any material connections between the funds or investments included in the above described conflicts search and the Debtors, Prime Clerk will promptly file a supplemental disclosure.

12. After the Petition Date, Prime Clerk will promptly request Carlyle Compliance to search the names of the Debtors against CSP's respective investments. To the extent Prime Clerk learns of any material connections involving the Debtors and such investments after Carlyle Compliance has searched such names, Prime Clerk will promptly file a supplemental disclosure.

13. Other than as specifically noted herein as to CSP, one or more of the other Funds may, in the ordinary course and from time to time, hold, control and/or manage loans to, or investments in, the Debtors and/or potential parties in interest and/or may trade debt and/or equity securities in the Debtors and/or potential parties in interest. In addition, other than as specifically noted herein as to CSP, the

Funds also may have had, currently have, or may in the future have business relationships or other connections with the Debtors or other potential parties in interest. Other than as specifically noted herein as to CSP, Prime Clerk has not undertaken to determine the existence, nature and/or full scope of any business relationships or other connections that any Carlyle entity may have with the Debtors and their affiliates or the potential parties in interest in these Chapter 11 Cases.

14. In addition, Prime Clerk may have had, may currently have or may in the future have business relationships unrelated to the Debtors with one or more Carlyle entities including, among others, portfolio companies of Carlyle.

15. Based on, among other things, the business separation between Prime Clerk and Carlyle, the Barrier, and in light of the administrative nature of the services proposed to be performed by Prime Clerk for the Debtors, Prime Clerk believes that it does not hold or represent an interest adverse to the Debtors.

16. Certain of Prime Clerk's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP ("**Weil**"); O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; Hughes Hubbard & Reed LLP; Gibson, Dunn & Crutcher LLP; Proskauer Rose LLP; McKinsey & Company; Centerview Partners LLC; KPMG LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC. Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these Chapter 11 Cases were filed.

17. I was previously a partner at Weil, counsel to the Debtors in these Chapter 11 Cases. Shira D. Weiner, General Counsel of Prime Clerk, was formerly an associate at Weil. Christina Pullo,

Senior Director of Solicitation and Public Securities at Prime Clerk, was previously an associate at Weil. Certain other employees of Prime Clerk were also formerly associates at Weil. I left Weil in March 2011, Ms. Weiner left Weil in February 2008, and Ms. Pullo left Weil in May 2009. Neither Ms. Weiner, Ms. Pullo nor I, nor any other former Weil associates now working at Prime Clerk worked on any matters involving the Debtors during their time at Weil.

18. Stephen Karotkin is a partner at Weil. Mr. Karotkin's son, Joshua Karotkin, a Director at Prime Clerk, has been an employee of Prime Clerk since April 2014. Joshua Karotkin holds no equity interest in Prime Clerk and receives no compensation based upon Prime Clerk's revenue. Furthermore, Joshua Karotkin has been screened from and will perform no work on this matter.

19. Prime Clerk has and will continue to represent clients in matters unrelated to these Chapter 11 Cases. In addition, Prime Clerk and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' Chapter 11 Cases. Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

20. Prime Clerk, as well as its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms and financial advisors. Such firms engaged by Prime Clerk or its personnel may appear in Chapter 11 Cases representing the Debtors or parties in interest. All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these Chapter 11 Cases.

21. From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire a debt or equity

security of many companies, one of which may be one of the Debtors or their affiliates, often without Prime Clerk's or its personnel's knowledge. Each Prime Clerk partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell or vote any particular security. Each Investment Fund is generally operated as a blind pool, meaning that when the Prime Clerk partners or employees make an investment in the particular Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

22. From time to time, Prime Clerk partners or employees may personally directly acquire a debt or equity security of a company which may be one of the Debtors or their affiliates. Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, subject to paragraph 21, all Prime Clerk partners and employees are barred from trading in securities with respect to matters in which Prime Clerk is retained. Subject to paragraph 21, upon information and belief, and upon reasonable inquiry, Prime Clerk does not believe that any of its partners or employees own any debt or equity securities of either company that is a Debtor or of any of their affiliates.

23. Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged. Moreover, to the best of my knowledge and belief, neither Prime Clerk nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Prime Clerk is to be engaged.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on January 29, 2019

/s/ Shai Y. Waisman

Shai Y. Waisman
Chief Executive Officer
Prime Clerk LLC
830 3rd Avenue, 9th Floor
New York, New York 10022