WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice* pending)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice* pending)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice* pending)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>**Debtor.**<br>**Tax I.D. No. 94-3234914** | Case Nos.   19 - _____ (___)<br>                      19 - _____ (___)<br><br>Chapter 11<br><br>**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 366 AND 105(a) REQUESTING ENTRY OF AN ORDER (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS, (II) ESTABLISHING PROCEDURES PROVIDING ADEQUATE ASSURANCE AND RESOLVING OBJECTIONS OF UTILITY PROVIDERS, AND (III) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICE** |
| **In re:**<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtor.**<br>**Tax I.D. No. 94-0742640** | Date:<br>Time:<br>Place: |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 366 and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order (i) approving the Debtors' proposed form of adequate assurance of payment for postpetition Utility Services (as defined below), (ii) establishing procedures for providing adequate assurance and resolving objections of Utility Providers (as defined below) relating to the adequacy of the proposed adequate assurance, and (iii) prohibiting the Utility Providers from altering, refusing, or discontinuing service to, or discriminating against, the Debtors because of the commencement of the Chapter 11 Cases or a debt that is owed by the Debtors for Utility Services rendered prior to the Petition Date (as defined below).

A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

**TABLE OF CONTENTS**

**Page**

I. JURISDICTION ................................................................................................................. 6

II. BACKGROUND ................................................................................................................ 6

III. THE DEBTORS' UTILITY SERVICES ........................................................................... 6

    A. Utility Providers ..................................................................................................... 6

    B. Proposed Adequate Assurance ............................................................................... 7

    C. Proposed Adequate Assurance Procedures and the Resolution of Objections ................................................................................................................. 9

    D. Subsequent Modifications of Utility Service List ................................................ 10

IV. BASIS FOR RELIEF REQUESTED ............................................................................... 11

V. RESERVATION OF RIGHTS ......................................................................................... 14

VI. NOTICE ............................................................................................................................ 14

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

DEBTORS' MOTION APPROVING ADEQUATE
ASSURANCE PROCEDURES FOR UTILITY PROVIDERS

3

Case: 19-30088   Doc# 32   Filed: 01/29/19   Entered: 01/29/19 03:03:20   Page 3 of 15

# TABLE OF AUTHORITIES
**Cases**                                               **Page(s)**

*In re Anchorage Nautical Tours, Inc.*,
   145 B.R. 637 (B.A.P. 9th Cir. 1992) .......................................................................... 13

*In re Caldor, Inc.*,
   199 B.R. 1 (S.D.N.Y. 1996), *aff'd sub nom. Va. Elec.
   & Power Co., v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997) ...................................... 13

*In re Curry & Sorensen, Inc.*,
   57 B.R. 824 (B.A.P. 9th Cir. 1986) ............................................................................ 13

*In re Penn. Cent. Transp. Co.*,
   467 F.2d 100 (3d Cir. 1972) ....................................................................................... 13

*In re Steinebach*,
   303 B.R. 634 (Bankr. D. Ariz. 2004) .................................................................... 12, 13

*Va. Elec. & Power Co. v. Caldor Inc.*,
   117 F.3d 646 (2d Cir. 1997) .................................................................................. 12, 13

**Statutes**

11 U.S.C. § 105(a) ........................................................................................................ 2, 13

11 U.S.C. § 365 .................................................................................................................. 14

11 U.S.C. § 366 ........................................................................................... 2, 6, 7, 10, 11

11 U.S.C. § 366(b) ...................................................................................................... 12, 13

11 U.S.C. § 366(c) .................................................................................................. 8, 12, 13

11 U.S.C. § 366(c)(1) ..................................................................................................... 7, 8

11 U.S.C. § 366(c)(1)(A)(v) .............................................................................................. 13

11 U.S.C. § 366(c)(2) ........................................................................................................... 7

11 U.S.C. § 366(c)(3) ......................................................................................................... 10

11 U.S.C. § 366(c)(3)(A) ................................................................................................... 12

11 U.S.C. § 1107(a) ...................................................................................................... 6, 13

11 U.S.C. § 1108 .................................................................................................................. 6

28 U.S.C. §§ 157 .................................................................................................................. 6

28 U.S.C. § 157(b) ............................................................................................................... 6

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

28 U.S.C. § 1334 ................................................................................................................6

28 U.S.C. § 1408 ................................................................................................................6

28 U.S.C. § 1409 ................................................................................................................6

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.............................11

**Other Authorities**

B.L.R. § 5011-1(a) ..............................................................................................................6

Fed. R. Bankr. P. 2002 ......................................................................................................15

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*,
    General Order 24 (N.D. Cal.) .......................................................................................6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in either of the Chapter 11 Cases.

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the Declaration of Jason P. Wells, Senior Vice President and Chief Financial Officer of PG&E Corp., filed contemporaneously herewith in support of the Debtors' chapter 11 petitions and related first day relief (the "**Wells Declaration**").

## III. THE DEBTORS' UTILITY SERVICES

### A. Utility Providers

In the ordinary course of their electricity and natural gas businesses, the Debtors incur expenses for electricity, natural gas, oil, water, sewer, telephone, and other utility services (collectively, the "**Utility Services**"). A list (the "**Utility Service List**") of the approximately 280 utility providers (collectively, the "**Utility Providers**") that provide Utility Services to the Debtors as of the Petition Date is attached hereto as **Exhibit B**.[1]

---

[1] The Debtors reserve the right to amend or supplement the Utility Service List to include any Utility Provider omitted. The inclusion of any entity on the Utility Service List is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future. Additionally, the Debtors themselves

Historically, the Debtors have a good payment history with the Utility Providers. To the best of the Debtors' knowledge, there are no defaults or material arrearages for the Debtors' undisputed invoices for prepetition Utility Services other than payment interruptions that may be caused by the commencement of the Chapter 11 Cases. Based on the monthly average for the twelve (12) months prior to the Petition Date, the Debtors estimate that their cost of Utility Services for the next thirty (30) days will be approximately $8,600,000.

Uninterrupted Utility Services are essential to the Debtors' ongoing operations and, therefore, the success of the Debtors' reorganization. The Debtors coordinate their complex businesses through their headquarters in San Francisco, California and their other facilities located in Northern California, including without limitation, their numerous power generation facilities, distribution facilities, compressor stations, and storage facilities. Any interruption of Utility Services provided at these locations would disrupt the Debtors' ability to communicate with, and provide the necessary support and services to, their employees, vendors, various regulatory authorities, and, most importantly, their customers. Should any Utility Provider alter, refuse, or discontinue service, even briefly, the Debtors' business operations could be severely disrupted, which, in turn, could lead to subsequent power outages or other service disruptions for the Debtors' customers. Any disruptions, therefore, would negatively impact the Debtors' business operations, customers, and all parties in interest.

**B.     Proposed Adequate Assurance**

Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after commencing its case. Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility may alter, refuse, or discontinue a debtor's utility service if the utility does not receive from the debtor within thirty (30) days of the commencement of the debtor's chapter 11 case "adequate assurance of payment" for postpetition utility services. Section 366(c)(1) of the Bankruptcy Code defines "assurance of payment" of postpetition charges as "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee." 11 U.S.C.

---

provide significant Utility Services to their business operations. For obvious reasons those Utility Services are not included in this Motion.

§ 366(c)(1).

The Debtors intend to pay all postpetition obligations owed to the Utility Providers in a timely manner and have sufficient funds to do so. As set forth in the Wells Declaration, the Debtors have a commitment for debtor in possession financing, which, together with existing cash and cash generated from operations, is more than adequate to fund their day to day expenses, including postpetition amounts for Utility Services. Notwithstanding the foregoing, to provide adequate assurance of payment to the Utility Providers pursuant to section 366(c) of the Bankruptcy Code, the Debtors propose to deposit into a segregated, interest-bearing bank account (the "**Adequate Assurance Account**") a sum equal to the cost of two (2) weeks of Utility Services, calculated based on the historical average of the Debtors' utility expenses over the twelve-month period prior to the Petition Date (the "**Adequate Assurance Deposit**"). The Adequate Assurance Deposit will not, however, include any amount on account of any Utility Provider that (a) agrees to a lesser amount, (b) already holds a deposit, letter of credit, surety bond, or other type of instrument securing the Debtors' performance equal to or greater than two weeks of Utility Services, or (c) is paid in advance for its Utility Services.[2] Based on the foregoing calculation, the Debtors estimate that the total amount of the Adequate Assurance Deposit will be approximately $4,800,000.

The Debtors shall, however, have the right to reduce the Adequate Assurance Deposit to the extent that any of the following occurs: (a) the Adequate Assurance Deposit includes any amount on account of a Utility Provider that the Debtors subsequently determine should be removed from the Utility Service List; (b) a Utility Provider properly serves an Additional Adequate Assurance Request (as defined below), and any settlement results in such Utility Provider's removal from the Utility Service List or in the Debtors' provision of alternate assurance to the Utility Provider; or (c) any Utility Provider has instead been provided with a letter of credit, cash deposit, or some other form of security acceptable to the Utility Provider. The Debtors submit that the Adequate Assurance Deposit, together with the Debtors' ability to pay for future Utility Services in the ordinary course of business

---

[2] To the extent that any Utility Provider is or will hold any cash deposit from the Debtors that is in excess of two (2) weeks' worth of the average utility cost, the Debtors reserve their right to demand return of such excess amounts.

(the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers.

**C.  Proposed Adequate Assurance Procedures and the Resolution of Objections**

The Debtors propose that the procedures described below (the "**Adequate Assurance Procedures**") be utilized in connection with the Proposed Adequate Assurance:

    a) The Debtors will fax, e-mail, serve by overnight mail, or otherwise expeditiously send a copy of the Proposed Order (as approved by the Bankruptcy Court), which includes the proposed Adequate Assurance Procedures, to each Utility Provider on the Utility Service List within three (3) business days after entry of the Proposed Order by the Bankruptcy Court.

    b) The Debtors will deposit the Adequate Assurance Deposit in the Adequate Assurance Account within five (5) business days of entry of the Proposed Order; provided, that to the extent any Utility Provider receives any additional assurance of payment as set forth herein, the Debtors may reduce the Adequate Assurance Deposit maintained in the Adequate Assurance Account by such amount.

    c) The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors on the earlier of (i) the date on which the Debtors have terminated the service from such provider and have satisfied in full all postpetition obligations due and owing to the applicable Utility Provider and (ii) the effective date of a plan of reorganization in the Chapter 11 Cases, if not applied earlier.

    d) Any Utility Provider not satisfied with the Proposed Adequate Assurance must serve a written request for additional assurance (an "**Additional Assurance Request**") on the following parties:  (i) the Debtors, 77 Beale Street, San Francisco, CA 94105 (Attn: Mari Becker and Nicholas Bijur); (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn.: Stephen Karotkin, Esq. and Lisa Lansio, Esq.); and (iii) Keller & Benvenutti, 650 California Street, Suite 1900, San Francisco, CA 94108 (Attn: Tobias S. Keller, Esq. and Jane Kim, Esq.) (collectively, the "**Adequate Assurance Notice Parties**").

    e) Any Additional Assurance Request must (i) be made in writing, (ii) set forth the location for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including the amounts of any security deposits, and (iv) set forth an explanation of why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

    f) Any Additional Assurance Request must be made and actually received by the Adequate Assurance Notice Parties by no later than twenty (20) days after entry of the Proposed Order by the Court, or such greater period as may be agreed to by the Debtors and the relevant Utility Provider. If a Utility Provider fails to timely file and serve an Additional Assurance Request, it shall:  (i) be deemed to have received adequate

assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (ii) be forbidden to discontinue, alter, or refuse service to, or discriminate against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

g) Upon receipt by the Adequate Assurance Notice Parties of any Additional Assurance Request as set forth above, the Debtors shall have the greater of (i) twenty (20) days from the receipt of such Additional Assurance Request, and (ii) thirty (30) days from entry of the Proposed Order (the "**Resolution Period**") to negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request, or such greater period as may be agreed to by the Debtors and the relevant Utility Provider.

h) If the Debtors, in their sole discretion, determine that an Additional Assurance Request or any consensual agreement reached in connection therewith is reasonable, the Debtors may resolve any Additional Assurance Request without further order of the Court, and may, in connection with any such agreement, in their sole discretion, provide a Utility Provider with additional adequate assurance of future payment, including but not limited to cash deposits, prepayments, or other forms of security.

i) If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach a resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will schedule a hearing before this Court to determine the adequacy of assurances of payment with respect to such Utility Provider (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code.

j) Pending resolution of a disputed Additional Assurance Request at the Determination Hearing, the relevant Utility Provider shall be prohibited from discontinuing, altering, or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

Absent compliance by the Utility Providers with the above Adequate Assurance Procedures, the Debtors request that the Utility Providers be prohibited from altering, refusing, or discontinuing service on account of any unpaid prepetition charges and be deemed to have received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code.

### D. Subsequent Modifications of Utility Service List

The Debtors have made an extensive and good-faith effort to identify all of their Utility Providers and include them on the Utility Service List. Nonetheless, to the extent that the Debtors subsequently identify additional Utility Providers, the Debtors seek authority, in their sole discretion,

to amend the Utility Service List to add any Utility Provider. The Debtors further request that the Court's order approving this Motion be deemed to apply to any such subsequently identified Utility Provider, regardless of when such Utility Provider is added to the Utility Service List. The Debtors will serve a copy of this Motion and the Proposed Order on any such Utility Provider subsequently added to the Utility Service List and deposit two weeks' worth of estimated utility costs in the Adequate Assurance Account for the benefit of such Utility Provider (less any amounts already on deposit with any such subsequently added Utility Provider that exceed outstanding prepetition amounts). Subsequently added Utility Providers shall have twenty (20) days from the date of service of the Proposed Order to make an Additional Assurance Request in accordance with the Adequate Assurance Procedures.

Any Utility Provider subsequently added to the Utility Service List that objects to the Proposed Order with respect to such Utility Provider must file an objection in accordance with the Federal Rules of Bankruptcy Procedure, the Bankruptcy Local Rules, and the Adequate Assurance Procedures.

## IV. BASIS FOR RELIEF REQUESTED

The relief requested will ensure that the Debtors' operations will not be disrupted, which would severely impact their businesses and prospects for a successful reorganization. The relief requested provides the Utility Providers with fair and orderly procedures for determining requests for Additional Adequate Assurance, without which the Debtors potentially could be forced to address in excess of one hundred requests by Utility Providers in a disorganized manner at a critical period in the Chapter 11 Cases when the Debtors' efforts should be more productively focused on their operations and the administration of the Chapter 11 Cases for the benefit of all parties in interest.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "**2005 Amendments**"), it was well established by Courts, commentators, and legislative history that section 366 of the Bankruptcy Code did not require, as a matter of course, that the debtor provide a deposit or other security to its utilities as adequate assurance of payment. For example, in *Virginia Electric & Power Co. v. Caldor, Inc.*, the United States Court of Appeals for the Second Circuit affirmed the Bankruptcy Court's ruling that the debtor's prepetition payment history and postpetition liquidity, as well as the administrative expense priority afforded to postpetition invoices,

DEBTORS' MOTION APPROVING ADEQUATE 11
ASSURANCE PROCEDURES FOR UTILITY PROVIDERS

constituted adequate assurance of future performance. *See* 117 F.3d 646, 647 (2d Cir. 1997). The Court rejected the argument that section 366(b) nevertheless required a "deposit or other security," holding that "a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under section 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'" *Id*. at 650.

Amendments to the Bankruptcy Code did not abrogate the Bankruptcy Court's ability to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment simply must be "adequate." Thus, while section 366(c) of the Bankruptcy Code limits the factors a court may consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide adequate assurance. Section 366(c) of the Bankruptcy Code gives courts the same discretion in determining the amount of payment necessary for adequate assurance that they previously had. *Compare* 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") *with* 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2).").

In addition, it is well established that section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. *See Va. Elec. & Power Co. v. Caldor Inc.*, 117 F.3d at 650 ("Even assuming that 'other security' should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'"); *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Courts have exercised that discretion to determine, that a number of factors including prepetition payment history and lack of any past requirement for a deposit may relieve a debtor from having to make any adequate assurance deposit postpetition"). This principle may be applicable in cases where the debtor has made prepetition deposits or prepayments for services that utility providers ultimately will render postpetition. *See* 11

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for postpetition services as adequate assurance).

Further, section 366(c) only requires that a utility's assurance of payment be "adequate." Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *See, e.g., In re Steinebach*, 303 B.R. at 641 ("Adequate assurance of payment is not, however, absolute assurance . . . 'a Bankruptcy Court is not required to give a utility company the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition services.'") (quoting *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002)); *see also In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) (section 366(b) "does not require an 'absolute guarantee of payment'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co., v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

Courts also have recognized that, in determining the requisite level of adequate assurance, Bankruptcy Courts should "focus 'upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Va. Elec. & Power Co.*, 117 F.3d at 650 (emphasis in original); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming Bankruptcy Court's ruling that utility deposits were not necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected").

Furthermore, the Court may also rely on its equitable powers to grant the relief requested in this Motion. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the Bankruptcy Court, empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court may authorize the Proposed Adequate Assurance requested herein because such relief is necessary for the Debtors to carry out their fiduciary duties under sections 1107(a) of the Bankruptcy Code. Under section 1107(a) of the Bankruptcy Code "the debtor in possession has the same fiduciary duties and liabilities as a Trustee. When the debtor is a corporation, corporate officers and directors are considered to be fiduciaries both to the corporate debtor in possession and to the creditors." *In re Anchorage Nautical Tours, Inc.*, 145 B.R. 637, 643 (B.A.P. 9th Cir. 1992); *see also In re Curry & Sorensen, Inc.*,

57 B.R. 824, 828 (B.A.P. 9th Cir. 1986) ("[T]he debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would a trustee for a debtor out of possession").

As set forth above, the Debtors have ample liquidity and intend to pay all valid postpetition obligations for Utility Services in a timely manner. Additionally, the Utility Providers are protected through the Adequate Assurance Deposit that will be held in a segregated account, and are afforded flexibility and an opportunity to be heard through the Adequate Assurance Procedures. Absent the approval of the Adequate Assurance Procedures, Utility Providers could discontinue service, without warning, thirty (30) days from the Petition Date, if they claim they have not yet received a "satisfactory" adequate assurance payment. Under the Adequate Assurance Procedures, however, any Utility Provider that fails to file a timely Additional Assurance Request shall be deemed to consent to the Adequate Assurance Procedures and shall be bound by the Proposed Order. The Proposed Adequate Assurance Procedures are reasonable, appropriate, and properly balance the interests of the Debtors and the Utility Providers. Accordingly, the relief requested herein should be approved.

## V. RESERVATION OF RIGHTS

Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## VI. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the Office of the California Attorney General; (vi) the California Public Utilities Commission; (vii) the Nuclear Regulatory Commission; (viii) the Federal Energy Regulatory Commission; (ix) the Office of the United States Attorney for the Northern District of California; (x)

counsel for the agent under the Debtors' proposed debtor in possession financing facilities; (xi) the Utility Providers; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 29, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Tobias S. Keller
     Tobias S. Keller

*Proposed Attorneys for Debtors and Debtors in Possession*