G. LARRY ENGEL (SBN 53484)
**ENGEL LAW, P.C.**
12116 Horseshoe Lane
Nevada City, CA 95959
Phone: 415.370.5943
Email: larry@engeladvice.com

MARK GORTON (SBN 099312)
THOMAS G. MOUZES (SBN 099446)
**BOUTIN JONES INC.**
555 Capitol Mall, Suite 1500
Sacramento, CA 95814
Phone: 916.321.4444
Fax: 916.441.7597
Email: mgorton@boutinjones.com

JESSICA R. MULLAN (SBN 263435)
General Counsel
**SONOMA CLEAN POWER AUTHORITY**
50 Santa Rosa Avenue, Fifth Floor
Santa Rosa, CA 95404
Phone: 707.890.8485
Email: jmullan@sonomacleanpower.org

*Attorneys for Creditor and Party-in-Interest*
*SONOMA CLEAN POWER AUTHORITY*

*Additional Community Choice Aggregators and their counsel are identified on the following pages.*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtor. | **Case No. 19-30089**<br>**Chapter 11** |
| In re<br><br>PG&E CORP.,<br><br>Debtor. | **Case No. 19-30088**<br>**Chapter 11**<br><br>**SONOMA CLEAN POWER AUTHORITY'S STATEMENT OF SUPPORT FOR DEBTORS' MOTION FOR POSTPETITION FINANCING AND RESERVATION OF RIGHTS**<br><br>Date: January 29, 2019<br>Time: 1:30 p.m.<br>Courtroom: 17<br>Place: 450 Golden Gate Ave., 16th Floor, San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

DENNIS HERRERA
City Attorney
THERESA L. MUELLER (SBN 172681)
Chief Energy and Telecommunications Deputy
**CITY AND COUNTY OF SAN FRANCISCO**
**OFFICE OF THE CITY ATTORNEY**
City Hall Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, CA 94102-4682
Phone: 415.554.4640
Email: Theresa.mueller@sfcityatty.com

*Attorneys for Creditor and Party-in-Interest*
*CITY AND COUNTY OF SAN FRANCISCO on behalf of*
*CleanPowerSF and San Francisco Public Utilities Commission*

LEAH S. GOLDBERG (SBN 157278)
General Counsel
**EAST BAY COMMUNITY ENERGY AUTHORITY**
1111 Broadway, 3rd Floor
Oakland, CA 94607
Telephone: 510.838.5266
Email: lgoldberg@ebce.org

*Attorney for Creditor and Party-in-Interest*
*EAST BAY COMMUNITY ENERGY AUTHORITY*

RICHARD DOYLE (SBN 88625)
City Attorney
EDMUNDO MORAN (SBN 86992)
Assistant City Attorney
LUISA F. ELKINS (SBN 286703)
Senior Deputy City Attorney
**CITY OF SAN JOSE**
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, CA 95113-1905
Telephone: 408.535.1900
Facsimile: 408.998.3131
Email: cao.main@sanjoseca.gov
ed.moran@sanjoseca.gov
luisa.elkins@ sanjoseca.gov

*Attorneys for Creditor and Party-in-Interest*
*CITY OF SAN JOSÉ*

T. PETER PIERCE (SBN 160408)
**RICHARDS, WATSON & GERSHON**
44 Montgomery Street
Suite 3800
San Francisco, CA 94014
Telephone: 415.421.8484
Email: ppierce@rwglaw.com

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 2 of 45

*Attorney for Creditor and Party-in-Interest*
*SILICON VALLEY CLEAN ENERGY AUTHORITY*

CHARLES J. MCKEE (SBN 152458)
County Counsel
ROBERT M. SHAW (SBN 243300)
Deputy County Counsel
**OFFICE OF THE COUNTY COUNSEL**
**COUNTY OF MONTEREY**
168 W. Alisal Street, Third Floor
Salinas, CA 93901-2653
Telephone: 831.755.5045
Facsimile: 831.755.5283
Email: shawrm@co.monterey.ca.us
shawr@mbcommunitypower.org

*Attorneys for Creditor and Party-in-Interest*
*MONTEREY BAY COMMUNITY POWER AUTHORITY*

CLIFFORD W. STEVENS (SBN 148918)
**NEUMILLER & BEARDSLEE**
3121 W. March Lane, Suite 100
Stockton, CA 95219
P.O. Box 20
Stockton, CA 95201
Telephone: 209.948.8200
Email: cstevens@neumiller.com

*Attorney for Creditor and Party-in-Interest*
*PIONEER COMMUNITY ENERGY*

HARRIET A. STEINER
**BEST BEST & KRIEGER LLP**
500 Capitol Mall, Suite 1700
Sacramento, CA 95814
Telephone: 916.325.4000
Email: harriet.steiner@bbklaw.com

*Attorney for Creditor and Party-in-Interest*
*VALLEY CLEAN ENERGY ALLIANCE*

# TABLE OF CONTENTS

Page

I. STATEMENT OF SUPPORT FOR CCA PROTECTIONS, AS DESCRIBED IN EXHIBIT A AND THE MOTION ........ 1

II. THE CCAS' PURPOSE AND THEIR RELATIONSHIP WITH PG&E ........ 7

A. CCAs are load serving governmental units whose CCA Customer Revenue is billed and collected by PG&E as agent and remitted to the CCA under obligations imposed by statute, regulation and CPUC-approved contract agreements and tariffs. ........ 7

B. PG&E has no ownership or beneficial interest in the CCA Customer Revenue. ........ 9

III. SCPA'S REBUTTALS TO ANY OPPOSITION TO THE PROPOSED PG&E ACCOMMODATIONS TO CCAS. ........ 12

EXHIBIT A CARVEOUT PROTECTIONS FOR CCAS ........ 17

EXHIBIT B RESERVATION OF RIGHTS ........ 19

i

SONOMA CLEAN POWER AUTHORITY'S STATEMENT OF SUPPORT FOR POSTPETITION FINANCING MOTION AND RESERVATION OF RIGHTS

991246.15

## TABLE OF AUTHORITIES

**Page**

### Cases

*Aikin v. Neilson (In re Cedar Funding, Inc.)*, No. C 09-4311 RMW, 2012 WL 1110023, at *4 (N.D. Cal. Mar. 31, 2012) .......... 13

*FCC v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293 (2003) .......... 3

*FirstEnergy Solutions Corp. v FERC*, 2018 WL 2315916 (Bankr. N.D. Ohio May 18, 2018) .......... 4

*Garland & LaChance Const. Co., Inc. v. City of Keene*, 144 B.R. 586 (D.N.H. 1991) .......... 3

*In re Bos. Generating, LLC*, No. 10 Civ. 6258, 2010 WL 4616243 (S.D.N.Y. Nov. 12, 2010) .......... 4

*In re Briarcliff*, 15 B.R. 864 (D.N.J. 1981) .......... 3

*In re Calpine Corp.*, 337 B.R. 27 (Bankr. S.D.N.Y. 2006) .......... 3, 4

*In re Chi-Feng Huang*, 23 B.R. 789 (9th Cir. B.A.P. 1983) .......... 4

*In re Cochise College Park, Inc.*, 703 F.2d 1339 (9th Cir. 1983) .......... 13

*In re Columbia Gas Systems Inc.*, 997 F.2d 1039 (3d Cir. 1993) .......... 12

*In re Friarton Estates Corp.*, 65 B.R. 586 (Bankr. S.D.N.Y. 1986) .......... 3

*In re Garden Manor Associates*, 70 B.R. 477 (Bankr. N.D. Cal. 1987) .......... 3

*In re Guy F. Atkinson & Co.*, No. C 98-4577 SL, 2000 WL 52317, at *1 (N. D. Cal. Jan. 18, 2000) .......... 13

*In re Megafoods Stores, Inc.*, 163 F.3d 1063 (9th Cir. 1998) .......... 4

*In Re NextWave Pers. Commc'ns, Inc.*, 200 F.3d 43 (2d Cir. 1999) .......... 3

*In Re Quanta Resources Corp.*, 739 F.2d 912 (3rd Cir. 1984), *aff'd sub nom*, 474 U.S. 494 (1986) .......... 3

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 5 of 45

*In re St. Mary's Hospital*, 86 B.R. 393 (Bankr. E.D. Pa. 1988) .......... 3

*In the Matter of Mirant Corp.*, 378 F.3d 511 (5th Cir. 2004) .......... 4

*Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Prot.*, 474 U.S. 494, 106 S.Ct. 755 (1986) .......... 4

*NextEra Energy, Inc. v. Pacific Gas & Electric Co.*, 166 FERC ¶ 61,049 (1/25/19) .......... 4

*Pacific Bell v. Public Utilities Com'n* (2000) 79 Cal.App.4th 269 .......... 5

*Snyder v. Southern Cal. Edison Co.*, 44 Cal.2d 793 (1955) .......... 7

*Southern California Edison Co. v. City of Victorville*, 217 Cal.App.4th 218 (2013) .......... 5

*Southern California Edison Co. v. Public Utilities Com.*, 140 Cal.App.4th 1085 (2006) .......... 7

*Stern v. Marshall*, 564 U.S. 462 (2011) .......... 6

*Tesoro Refining & Marketing Company LLC v. Pacific Gas and Electric Company*, 146 F.Supp.3d 1170 (N.D. Cal. 2015) .......... 5

*Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222 (9th Cir. 2007) .......... 3

**Statutes**

11 U.S.C.
Section 541(d) .......... 12

28 U.S.C.
Section 959 .......... 3, 19
Section 959(b) .......... passim

Bankruptcy Code
Section 101(27) .......... 1
Section 362(b)(4) .......... 19
Section 363 .......... 18
Section 364(c)(2) .......... 18
Section 364(c)(3) .......... 18
Section 364(d) .......... 18
Section 365 .......... 3
Section 365(g) .......... 4
Section 502(g) .......... 4
Section 541(d) .......... passim

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 6 of 45

Public Utilities Code
366.2(a)(9) ....................15

**Other Authorities**

Assembly Bill
117 in 2002 ....................4, 7, 15, 17

H.R. REP. 95-595,
368, 1978 U.S.C.C.A.N. 5963, 6324 ....................12

Legislative History for Public Utilities Code,
Section 366.2 ....................15

PG&E Electric
Rule No. 23 (also known as Reg 23) .................... passim

Senate Bill
790 (2011) .................... passim

iv

SONOMA CLEAN POWER AUTHORITY'S STATEMENT OF SUPPORT
FOR POSTPETITION FINANCING MOTION AND RESERVATION OF RIGHTS
991246.15

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 7 of 45

Sonoma Clean Power Authority, a California joint powers authority[1] and a "governmental unit" (as defined in Bankruptcy Code section 101(27)) ("SCPA"), submits this Statement of Support for the Debtors' Motion for Postpetition Financing (the "Motion") and Reservation of Rights. This Statement is joined by the additional Community Choice Aggregators ("CCAs") that are identified above and in the attached signature pages. Separate joinders in separate pleadings also may be filed by other CCAs and affiliated entities.

## I. STATEMENT OF SUPPORT FOR CCA PROTECTIONS, AS DESCRIBED IN EXHIBIT A AND THE MOTION

Representatives of SCPA and Pacific Gas and Electric Company (together with PG&E Corp., "PG&E" or "Debtor") have met and conferred prior to this filing regarding Community Choice Aggregator ("CCA") requests for certain protections for CCAs in connection with the Motion, including what is defined herein as "CCA Customer Revenue" (and constituting "public funds" of SCPA) under "PG&E's Regulated Tariffs" and other laws and regulations, that will be carved out and excluded from (a) any rights, security interests or liens the Debtors granted under their post-petition financing on any property in which Debtors have or claim any legal or equitable interest, and (b) any authorization to use cash collateral.

In response to PG&E's request, CCAs prepared and proposed a CCA consensus insert in the form of **Exhibit A** for this court's approval order. The CCA's proposal reflects CCA needs for clarity for CCA lenders, suppliers, and other constituents. CCAs provided a copy of the language set forth in **Exhibit A** to PG&E.

As defined in the Motion, excluded assets are not part of the DIP loan financing collateral. This Motion properly treats CCA Customer Revenues as excluded assets meaning they are not part of the DIP lenders' collateral. (*See*, Docket No. 23 in PG&E Corp.; Docket No. 22 in Pacific Gas and Electric Utility). PG&E has also expressly acknowledged, including in the Public Programs Motion, that CCA Revenues are not property of the Debtor's estate. This is substantially

[1] The governmental units that are members of the SCPA joint powers authority are Cloverdale, Cotati, Petaluma, Santa Rosa, Rohnert Park, Sebastopol, Sonoma, Sonoma County (unincorporated areas), Windsor, Fort Bragg, Willits, Point Arena, and Mendocino County (unincorporated areas). (Declaration of Geoffrey G. Syphers, ¶ 7.)

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 8 of 45

consistent with the CCA requests for a DIP loan carve-out for CCA Customer Revenues and other protections, as identified in **Exhibit A**.

The CCA protections set forth in **Exhibit A** and the Motion also appear to be consistent with PG&E's statements to the California Public Utilities Commission ("CPUC") on January 23, 2019[2] and with analysis included in the CPUC's decision adopted at the CPUC's emergency meeting held on January 28, 2019:

> PG&E also noted that it acts as a billing agent on behalf of Community Choice Aggregators (CCA) in its service territory and the revenue it collects is not part of the assets secured by the DIP financing. The Commission expects PG&E to continue its obligation to act as a billing agent for CCAs, Energy Service Providers, and Core Transport Agents consistent with the statements of PG&E at the PHC.[3]

For the purpose of this Statement of Support and the accompanying Declaration of Geoffrey G. Syphers, the following initial definitions shall apply:

"CCA Customer Revenue" shall mean charges applied by a CCA to its CCA customers,

---

[2] On January 23, 2019 at the CPUC prehearing conference related to PG&E's request for statutory exemptions in connection with PG&E's DIP financing, PG&E's counsel Henry Weissmann affirmed PG&E's lack of ownership in the CCA Customer Revenue:

> ALJ COOKE: Did the terms for the DIP spell out what assets are being encumbered or used for securitization?
>
> MR. WEISSMANN: It is a general statement as is typical in a DIP Loan. So it's basically assets that are owned by the utility. I do want to clarify in this regard that it only applies to assets owned by the Utility. So if there are assets, as there are, which belong to third-parties, those are not subject to the security interest under the DIP Loan. So for an example, there are CCA representatives here. *CCA Revenue is collected by the Utility as a billing agent for CCAs. So that money belongs to the CCAs and is not part of the security interest that's granted.*

Reporter's Transcript ("RT"), 80:4-21, January 23, 2019 Prehearing Conference, "Application of Pacific Gas and Electric Company to Increase Its Authority to Finance Short-Term Borrowing Needs and Procurement Related Collateral Costs by $2.0 Billion to an Aggregate Amount Not to Exceed $6.0 Billion," CPUC Docket No. A.18-10-003 (emphasis added). PG&E's request for statutory exemptions in connection with PG&E's DIP financing is also being concurrently addressed in CPUC Docket No. A.18-11-001.

[3] *Decision Granting Pacific Gas and Electric Company an Exemption From Public Utilities Code Sections 823 and 851 for the Limited Purpose of Debtor-in-Possession Financing*, issued in CPUC Docket No. A.18-10-003 at 14. (An identical analysis is included in the CPUC's final decision issued in CPUC Docket No. A.18-11-001 at p. 15.)

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 9 of 45

which charges are billed and collected by PG&E as the exclusive statutory and regulatory billing agent/servicer on behalf of a CCA for energy provided by a CCA to serve its customers, whether pre- or post-petition, and any funds collected and held by PG&E on account of such charges, as further described in PG&E Electric Rule No. 23, Section Q, Subsections 1, 3 and 4, such CPUC approved CCA Service Agreements (defined below), and other amounts recoverable from PG&E by any CCA thereunder, consistent with the rights of each CCA under Section 541(d) of the Bankruptcy Code and applicable non-bankruptcy law and regulations, including by the CCA Service Agreements implementing those laws and regulations pursuant to PG&E Regulated Tariffs.

"CCA Service Agreement" shall mean the form agreement (Standard Form 79-1029) included as part of PG&E's Regulated Tariffs that applies PG&E's rules and other tariff provisions to CCA service as a "force of law" contract.[4] PG&E's "Electric Sample Form No. 79-

---

[4] SCPA refers to the CCA Service Agreements, other CPUC approved and required contracts and CPUC tariffs as "force of law contracts," because they are distinguished from executory contracts under Bankruptcy Code § 365 and cannot and should not be rejected by PG&E. PG&E cannot reject its obligations under laws or regulations, even if they are implemented by CCA contracts that are required by such tariffs, laws or regulations. *See, e.g., Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222 (9th Cir. 2007) (barring retail purchaser from challenging anticompetitive conduct in wholesale electricity market because rates in purchase contract were the result of FERC jurisdictional tariff ); *In re Calpine Corp.*, 337 B.R. 27, 35 (Bankr. S.D.N.Y. 2006) (dismissing debtor-in-possession's motions to reject energy contracts because rejection would directly interfere with FERC jurisdiction and constitute collateral attack on filed rates); *In Re NextWave Pers. Commc'ns, Inc.*, 200 F.3d 43, 55 (2d Cir. 1999), *aff'd*, *FCC v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293, 299 (2003) (holding that bankruptcy court has jurisdiction over those transactions that "do not touch upon" a regulatory agency's authority); *Garland & LaChance Const. Co., Inc. v. City of Keene*, 144 B.R. 586, 589 (D.N.H. 1991) (rejecting, in abstention proceeding, debtor's characterization of stipulation and decree as a mere executory contract, instead finding agreement "to be intimately involved in the ongoing exercise of . . . regulatory powers"); *In re Friarton Estates Corp.*, 65 B.R. 586 (Bankr. S.D.N.Y. 1986) (finding that the right to reject executory contracts pursuant to Bankruptcy Code § 365 did not entitle debtor to reject leases to remove rent-controlled tenants and re-let apartments at higher rates) (citing *In Re Quanta Resources Corp.*, 739 F.2d 912, 919 (3rd Cir. 1984), *aff'd sub nom*, 474 U.S. 494 (1986) (stating the main principle behind 28 U.S.C. § 959(b), in that the debtor, in effecting its plan during bankruptcy, must comply with all applicable federal, state, and local laws); *In re Briarcliff*, 15 B.R. 864, 886 (D.N.J. 1981)); *In re St. Mary's Hospital*, 86 B.R. 393, 398 (Bankr. E.D. Pa. 1988) (the city could enjoin debtor's noncompliance with applicable laws pursuant to 28 U.S.C. § 959); *In re Garden Manor Associates,* 70 B.R. 477 (Bankr. N.D. Cal. 1987) (allowing enforcement by HUD of its Regulatory Agreement, implementing its statutory and regulatory authority, because it was more than a private contract, as protecting the governmental policies at issue).

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 10 of 45

1029," states:

> 1.2 The form of this Agreement has been developed as part of the CPUC regulatory process to implement Assembly Bill 117, was intended to conform to CPUC directions, was filed and approved by the CPUC for use between PG&E and CCAs and may not be waived, altered, amended or modified, except as provided herein or in the applicable community choice aggregation tariff, or as may otherwise be authorized by the CPUC.

The CCA Service Agreement, based on the sample form, is required to conform to CPUC

---

Although CCA issues are distinguishable in some ways from those that are currently the subject of FERC proceedings and court decisions regarding the bankruptcy rejection of FERC filed rate power contracts, FERC and other authorities have also supported force of law arguments like those advanced by CCAs here. CCAs direct this court's attention to the very recent FERC decision in the *NextEra Energy, Inc. v. Pacific Gas & Electric Co., 166 FERC ¶ 61,049 (1/25/19)*("We conclude that this Commission and the bankruptcy courts have concurrent jurisdiction to review and address the disposition of wholesale power contracts sought to be rejected through bankruptcy."). In that decision FERC considered all the arguments of the parties and noted the "unsettled state of the law" by contrasting *In the Matter of Mirant Corp*., 378 F.3d 511 (5th Cir. 2004) and *FirstEnergy Solutions Corp. v FERC*, 2018 WL 2315916 (Bankr. N.D. Ohio May 18, 2018) (now on appeal in the Sixth Circuit, Case Nos. 18-3787, 18-3788, 18-4095, 18-4097, 18-4107, 18-4110) with *In re Calpine Corp*., 337 B.R. 27 (S.D.N.Y. 2006) and *In re Bos. Generating, LLC*, No. 10 Civ. 6258, 2010 WL 4616243 (S.D.N.Y. Nov. 12, 2010). CCAs reserve the issue today, given the specific nature of the relief requested by CCAs herein, since SCPA and other CCAs' ownership of the CCA Customer Revenue does not depend on the CCA Service Agreements, but instead arises from applicable law and regulations that create a whole regulated industry that must endure and compel compliance regardless of the fate of the contracts that implement and embody such laws and regulations (*e.g.*, AB 117 (2002), SB 790 (2011), Rule 23). Among other things, even if those CCA contracts somehow could be rejected in theory, that would still result in PG&E causing a statutory breach of the contract, while still being fully obligated and accountable, in accordance with 28 U.S.C. § 959(b) and otherwise under the laws and regulations implemented in part through CCA contracts. *See* 28 U.S.C. § 959(b); *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Prot*., 474 U.S. 494, 505-507, 106 S.Ct. 755, 761-762 (1986) (holding trustee may not abandon property in violation of state environmental laws); *see also In re Megafoods Stores, Inc*., 163 F.3d 1063, 1069 (9th Cir. 1998) (discussing how debtors in bankruptcy are subject to state tax laws).

CPUC-approved CCA Service Agreements are part of tariffs and equivalent to the "filed rate" that cannot be rejected or modified. *See, e.g., In re Calpine Corp., supra*, 337 B.R. 27 and our recollection of Judge Montali's tentative ruling in the Qualifying Facilities ("QF") contract disputes in the previous PG&E Chapter 11. Not only would PG&E have failed to escape its burden by rejecting the contract, but it would be worse off, i.e., both (i) subject to the legal, regulatory, and political consequences of noncompliance with the laws and regulations that remain applicable despite rejection, and (ii) liable for damages under Sections 365(g) and 502(g) and under some circumstances administrative claims and other consequences for post-petition wrongdoing, especially if there were any conversion of CCA public funds. Moreover, even if the business judgment standard were applied to PG&E's decision (as opposed to the heightened standard of *In re Mirant Corp., supra*, 378 F.3d at 524-525), there is no rational basis for trying to reject such a force of law contract and tariff, especially if PG&E is solvent and still must comply with the laws and regulations that continue to empower the CCAs and obligate PG&E. *See In re Chi-Feng Huang*, 23 B.R. 789 (B.A.P. 9th Cir. 1983) (denying windfalls to equity holders from rejecting executory contracts in Chapter 11 cases where creditors are paid in full).

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 11 of 45

decisions, contain required elements, and is filed with proposed tariffs. CCAs are required to have the Service Agreement in place and include it with their registration with the CPUC. The specific CCA Service Agreement applicable to SCPA was approved by the CPUC in Resolution E-4624 on November 14, 2013, as a PG&E Regulated Tariff. (Declaration of Geoffrey G. Syphers, ¶ 17.)

"PG&E's Regulated Tariffs" shall mean electric service tariff provisions that have been approved and made enforceable by the CPUC, as regulator over PG&E's operations, and therefore have the force of law[5] with respect to CCA Customer Revenue, including but not limited to PG&E Electric Rule No. 23 (also known as "Rule 23"), Section Q, Subsections 1, 3 and 4, as applied to PG&E pursuant to the CCA Service Agreement, consistent with the rights of a CCA under Section 541(d) of the Bankruptcy Code and applicable non-bankruptcy law and regulations. The CPUC's General Order ("GO") 96-B describes "tariffs" as the following:

> 3.15 Tariffs
> "Tariffs" refer collectively to the sheets that a utility must file, maintain, and publish as directed by the Commission, and that set forth the terms and conditions of the utility's services to its customers; "tariffs" may also refer to the individual rates, tolls, rentals, charges, classifications, special conditions, and rules of a utility.

Similar to that limited interest claimed by a mortgage servicer as referenced in Bankruptcy Code section 541(d), there clearly is no equitable or beneficial interest of PG&E in CCA

---

[5] Several California opinions have concluded that utility tariffs when approved by the CPUC have the force of law:

> Section 489, subdivision (a), requires every public utility to file with the PUC a tariff—a schedule "showing all rates, tolls, rentals, charges, and classifications ... together with all rules, contracts, privileges, and facilities which in any manner affect or relate to rates, tolls, rentals, classifications, or service." *Such a tariff, when approved by the PUC, has the force of law*. (*Trammell v. Western Union Tel. Co.* (1976) 57 Cal.App.3d 538, 549–550, 129 Cal.Rptr. 361.) Only by following procedures specified in or developed under section 454 may the utility then change its published tariff. *Wood v. Public Utilities Commission* (1971) 4 Cal.3d 288, 292–293, 93 Cal.Rptr. 455, 481 P.2d 823

*Pacific Bell v. Public Utilities Com'n* 79 Cal.App.4th 269, 273–274 (2000) (emphasis added.); *see also Southern California Edison Co. v. City of Victorville,* 217 Cal.App.4th 218, 228 (2013); *see also Tesoro Refining & Marketing Company LLC v. Pacific Gas and Electric Company,* 146 F.Supp.3d 1170, 1182 (N.D. Cal. 2015) (acknowledging tariffs approved by the CPUC have the force of law).

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 12 of 45

Customer Revenue for reasons stated herein. PG&E repeatedly acknowledges this fact. For example, PG&E provides the following response on its website to a frequently asked question:

> How will I be billed for CCA service?
>
> Customers who receive their electric supply from a CCA receive a consolidated bill issued by PG&E that includes charges from both parties. This is not a double bill or charge. *PG&E collects payments on behalf of the CCA*, and these payments are then sent to the CCA.

https://www.pge.com/en_US/residential/customer-service/other-services/alternative-energy-providers/community-choice-aggregation/faq.page, last visited on January 17, 2019 (emphasis added).

PG&E has further proposed CCA protections in the Motion to continue to timely remit the CCA Customer Revenue to SCPA and other CCAs in the ordinary course of business consistent with applicable state law, PG&E's Regulated Tariffs and other laws, regulations and tariffs.[6] In addition, the CCAs are requesting similar protections in connection with PG&E's Public Programs Motion to allow for CCA Customer Revenue to continue being timely remitted to SCPA and other CCAs in the ordinary course of business. See SCPA's Statement of Support for Debtor's Public Programs Motion and Reservation of Rights, which is substantially similar to this Statement and filed contemporaneously herewith.

Based on the CCA protections proposed in **Exhibit A** and the Motion, and SCPA's hopes for further progress in its constructive discussions with PG&E over remaining issues, SCPA supports the Motion, requesting inclusion of CCA protections in the Court's order, while reserving all other rights and interests as provided in **Exhibit B**. SCPA consents to entry of the final order on the Motion by the bankruptcy judge as to such **Exhibit A** protections for CCAs, to the extent that can be done without prejudice to the generally reserved *Stern*[7] and related objections for other disputes and matters, as described in **Exhibit B**. The comprehensive rights, governmental powers,

---

[6] In the context of the Motion, PG&E refers to these funds and remittances as TPP Funds and TPP Costs, with the former pertaining to collected amounts from Customers and the latter pertaining to remittances to, among others, the CCAs. SCPA believes that these terms include what SCPA has described as CCA Customer Revenues, and are part of PG&Es Customer Program Obligations (see pp. 12 and 26 of the Public Programs Motion).

[7] *Stern v. Marshall*, 564 U.S. 462 (2011).

claims, and interests of SCPA and other CCAs, fully reserved, are beyond the scope of this filing, but are more complex than usual for this topic, considering (i) the regulated nature of PG&E by the CPUC and the Federal Energy Regulatory Commission ("FERC"), (ii) the California statutory and regulatory regime imposed on PG&E still applicable under 28 U.S.C. § 959(b), and (iii) the governmental unit character of SCPA and other CCAs with special protections under Senate Bill ("SB") 790 (2011) and Rule 23. The regulatory power of the CPUC also has the force of law.

> The PUC adopted its Rules of Practice and Procedure pursuant to its rulemaking authority (Cal. Const., art. XII, § 2; Pub. Util.Code, § 701). A regulation adopted by an administrative agency under its rulemaking authority has the force and effect of law. (Citations omitted.)

*Southern California Edison Co. v. Public Utilities Com'n*., 140 Cal.App.4th 1085, 1092 (2006).

> Contrary to defendant's contention the statutes and rules of the commission do impose a direct and positive duty on the operator of a utility. This is evident from the regulations heretofore quoted. The rules were promulgated for the safety of workmen as well as the public and civil penalties are imposed on the utility for failure to comply with them and criminal penalties are imposed on the officers and employees of the utility. Utilities may not operate except by permission of the commission which imposes the duties heretofore set forth together with other regulations pertinent to the operation of such organizations.

*Snyder v. Southern Cal. Edison Co*., 44 Cal.2d 793, 801 (1955).

## II. THE CCAS' PURPOSE AND THEIR RELATIONSHIP WITH PG&E

### A. CCAS ARE LOAD SERVING GOVERNMENTAL UNITS WHOSE CCA CUSTOMER REVENUE IS BILLED AND COLLECTED BY PG&E AS AGENT AND REMITTED TO THE CCA UNDER OBLIGATIONS IMPOSED BY STATUTE, REGULATION AND CPUC-APPROVED CONTRACT AGREEMENTS AND TARIFFS.

SCPA is a CCA, established pursuant to Assembly Bill ("AB") 117 adopted in 2002, following the 2001-2002 California Energy Crisis. In response to the California Energy Crisis, the California Legislature created CCAs as an alternative, and an exception, to the investor-owned utility ("IOUs") monopoly over electricity sales to customers. The specific, distinct and important role of CCAs as an IOU alternative in California's energy markets and renewable energy future and the requirement that IOUs co-exist alongside CCAs was further reinforced with passage by

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 14 of 45

the California Legislature of SB 790 in 2011.[8]

CCA programs are delivered to CCA customers by governmental units enabled under California law to purchase and aggregate energy on behalf of their community members. CCA programs are administered by local governments (at present as joint power authorities created by various cities and counties, such as SCPA, or as an enterprise fund within a single city or county) with a mission to provide competitive clean energy alternatives to IOU sources, such as PG&E. When a city, county or joint powers agency implements or joins a CCA program, all PG&E residential customers within the CCA program's service area automatically become customers of the CCA, unless they choose to opt out. CCAs provide reliable service, a power mix with more renewable and/or greenhouse gas-free energy than required by law at competitive rates, and innovative programs that benefit people, the environment, and the economy in communities in PG&E's territory and across California. (Declaration of Geoffrey G. Syphers, ¶¶ 8, 9, 12.)

Statewide, 19 CCAs, including SCPA, independently procure energy and provide a wide array of services directly to over **8 million CCA customers (more than 2.5 million customer accounts).** CCAs are an essential and growing part of the State's clean energy mandates. In the PG&E territory, approximately **41%** of the load will be served by CCAs in 2019, absent any disruption by this case which SCPA is constructively working with PG&E to avoid. As of August 2018, the 11 Northern California CCAs in PG&E territory have executed contracts totaling **1,239 megawatts ("MW") of renewable energy from new California facilities** with commercial operation dates between 2018 and 2021. (Declaration of Geoffrey G. Syphers, ¶¶ 25-26.)

Pursuant to applicable state law, PG&E's Regulated Tariffs and other laws, regulations and tariffs, PG&E is mandated to provide both (i) transmission and distribution services to deliver energy procured by CCAs for their customers, as well as (ii) billing and collection services for CCAs' benefit as to CCA customers using CCA energy. CCA customers receive their energy from

[8] *See, e.g.*, SB 790; Sec. 2(d) ("The Public Utilities Commission has found that conduct by electrical corporations to oppose community choice aggregation programs has had the effect of causing community choice aggregation programs to be abandoned.") and Sec. 2(g) ("California has a substantial governmental interest in ensuring that conduct by electrical corporations does not threaten the consideration, development, and implementation of community choice aggregation programs").


Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 15 of 45

the CCA rather than the IOU, unless they opt out. As a result, CCAs are load-serving governmental units responsible for securing sufficient electricity supplies to meet the needs of their customers. (Declaration of Geoffrey G. Syphers, ¶¶ 27, 28.)

The CCAs are mandated by state law to use the IOUs, like PG&E, as their exclusive billing and collection agents. There is no provision for a "back-up" billing and collection agent – the CCAs have no choice other than the IOUs.

Expansion of CCA programs did not change the consolidated billing practices of the IOUs. The bills sent by PG&E to CCA customers break out CCA charges from PG&E's own charges, so that CCA customers always know how much they are paying to their CCA for energy. However, the separate CCA charges and PG&E charges still are delivered through a single, consolidated bill. (Declaration of Geoffrey G. Syphers, ¶ 18.)

In light of this consolidated billing arrangement, disruption of CCA Customer Revenue timely being paid to CCAs would materially interfere with energy supplies, causing serious adverse consequences. SCPA alone received $173.1 million in 2018 revenue from more than 223,000 CCA customers, all of which was CCA Customer Revenue. (Declaration of Geoffrey G. Syphers, ¶ 13.)

**B. PG&E HAS NO OWNERSHIP OR BENEFICIAL INTEREST IN THE CCA CUSTOMER REVENUE.**

As further described below, in fulfilling its statutorily and regulatorily mandated billing and collection agent role for CCAs, PG&E functions like the mortgage servicer referenced in Bankruptcy Code section 541(d), except that CCAs' ownership of those public funds is not just protected by PG&E's Regulated Tariffs, including the CPUC-approved force of law CCA Service Agreements, and other laws, regulations and tariffs, but also directly by the obligation of PG&E as a chapter 11 debtor in possession to abide by those laws, regulations and tariffs under 28 U.S.C. § 959(b) and otherwise, consistent with its fiduciary duties to CCAs.

Again, as noted above, PG&E's lack of ownership of the CCA Customer Revenue and its billing service responsibility has been recently confirmed in the CPUC's decision adopted at the CPUC's emergency meeting held on January 28, 2019:

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 16 of 45

PG&E also noted that it acts as a billing agent on behalf of Community Choice Aggregators (CCA) in its service territory and the revenue it collects is not part of the assets secured by the DIP financing. The Commission expects PG&E to continue its obligation to act as a billing agent for CCAs, Energy Service Providers, and Core Transport Agents consistent with the statements of PG&E and the PHC.

*See* footnote 3, *supra*. Likewise, PG&E's own documents regarding the fees associated with consolidated billing on behalf of CCAs repeatedly delineate between fees owing to PG&E and fees owing to CCAs.[9]

---

[9] PG&E's own documents supporting CCAs' position include:

(a) *Electric Schedule E-CCA Services to Community Choice Aggregators*: In laying out the fees associated with consolidated billing, PG&E provided the following description of services:

Composite Bill-Ready Billing Fee

This fee covers the cost to present the CCA's energy and customer charges. It also includes cost to process the CCA's energy charges and customer payments.

. . . .

Composite Rate-Ready Billing Fee

This fee covers the cost to present the CCA's energy and customer charges on an additional bill page. It also includes cost to process the CCA's energy charges and customer payments, and respond to CCA calls regarding billing issues. (Section 7, a. & 8, a.)

(b) *Electric Rule 23 Community Choice Aggregation Service*

Section P. Billing Service Obligations:

(a) Description

PG&E shall provide two options for Consolidated PG&E Billing:

(1) Rate Ready – The customer's CCA shall send its rates to PG&E. PG&E shall in turn send a consolidated bill, containing both PG&E *and CCA charges to the customer.*

(2) Bill Ready – The customer's CCA shall *send its bill to PG&E.* PG&E shall in turn send a consolidated bill, containing both PG&E and CCA charges, to the customer.

2. Billing Information and Inserts

(a) Identify PG&E and CCA Charges

The normal and uninterrupted billing of customers and remittance of CCA Customer Revenue through PG&E to CCAs (as CCA owned proceeds and public funds) is of the ***utmost*** importance in order for CCAs to meet their own obligations to their customers, suppliers, contractors, and lenders. This is critical, because, as described above, PG&E is identified in the statute as the *exclusive billing agent*, and CCAs presently have *no option to utilize another billing agent* for their billing and collection. Any interruption in this billing process would have serious adverse consequences for all parties and create significant risk and volatility to the State's energy market.

---

> The consolidated PG&E bill, at a minimum, shall identify utility charges as specified by the Commission or its codes and when CCA charges are received shall identify, at a minimum, two sets of charges: *one for PG&E services and another for CCA energy services*.
>
> Section Q. Payment and Collection Terms
>
> 1. PG&E shall pay the CCA the amounts paid to the utility for CCA charges only after the payment is received from the customer. Payments shall be transferred to the CCA electronically specifying the amount paid by each specific customer account or group of customer accounts if the customer is Summary Billed.
>
> 2. …
>
> 3. PG&E shall remit payments to the CCA only for the amounts paid by the CCA customer for payment of CCA charges. Payments are due on or before the later of:
>
>    (a) Seventeen (17) calendar days after the bill was rendered to the customer, or
>
>    (b) The next business day after the payment is received from the customer.
>
> 4. PG&E shall process payments, post utility charges paid to customer accounts, and transfer funds owed the CCA to the CCA. PG&E shall debit to the CCA any amounts resulting from returned payments and assess returned payment charges (i.e., a charge for each returned payment) to the appropriate customers.
>
> 5. …
>
> 6. The customer is obligated to pay PG&E for all utility and CCA charges consistent with existing tariffs.

The CCA protections proposed in **Exhibit A** and the Motion is what is expected of PG&E under CCA Service Agreements, applicable state law, PG&E's Regulated Tariffs and other laws, regulations and tariffs. SCPA appreciates that PG&E acknowledges its role as collecting "payments on behalf of the CCA." *See* footnote 2, *supra*. However, additional assurances in the early stages of this Chapter 11 case, such as those in **Exhibit A**, are necessary and appropriate to avoid conflicts with DIP lenders or others who might misunderstand the situation, resulting in adverse consequences for all parties in interest in the event of any noncompliance by PG&E or any DIP lenders' interference with CCAs' public funds through any overbroad DIP Loan arrangements.

## III. SCPA'S REBUTTALS TO ANY OPPOSITION TO THE PROPOSED PG&E ACCOMMODATIONS TO CCAS.

Because these issues are raised in First Day Motions, where it is not possible to anticipate all oppositions to the proposed CCA protections in **Exhibit A** and the Motion, SCPA offers these comments to dispel any unfounded concerns or objections that may be raised at the hearing, particularly by creditors who do not understand how CCAs operate and their importance in the California energy system. SCPA welcomes the opportunity to explain why the CCA protections in **Exhibit A** and the Motion is necessary and in the best interest of all parties-in-interest. Any battle with any other party-in-interest over CCA Customer Revenue or other rights, assets or claims would have serious adverse effects on the Chapter 11 estate and the provision of electricity within the territory of PG&E. That is why PG&E is now doing the right thing, consistent with its fiduciary duties as a debtor in possession and its stated statutory, regulatory and tariff duties to CCAs.

As set forth in footnote 4, *supra,* the relief described in **Exhibit A** and the Motion is necessary to ensure PG&E continues, as required by 28 U.S.C. §959(b) to comply with applicable law, regulations, and tariffs. It does not expand the rights of CCAs. *See, e.g.*, 11 U.S.C. § 541(d); H.R. REP. 95-595, 368, 1978 U.S.C.C.A.N. 5963, 6324; PG&E Electric Rule No. 23 (especially Section Q); *In re Columbia Gas Systems Inc*., 997 F.2d 1039, 1061 (3d Cir. 1993) (where refunds were being provided from gas suppliers through a utility to customers, and where a party acts as a

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 19 of 45

"mere conduit" for funds, such party does not hold an equitable interest). Cases in the Northern District of California have also found a "resulting" trust in similar situations. *See, e.g., Aikin v. Neilson (In re Cedar Funding, Inc.)*, No. C 09-4311 RMW, 2012 WL 1110023, at *4 (N.D. Cal. Mar. 31, 2012); *In re Guy F. Atkinson & Co.*, No. C 98-4577 SL, 2000 WL 52317, at *1 (N. D. Cal. Jan. 18, 2000) (concerning partial summary judgment granted by Judge Carlson imposing a resulting trust in favor of Yale University for funds transferred to a division of Debtor that were commingled in the Debtor's contractor deposit account and claimed by bank as collateral under its security agreement with Debtor.)

No one should interfere with PG&E performing for CCAs its fiduciary duties as described in *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1356-57 (9th Cir. 1983) and other precedents, especially as to governmental units the Legislature has directed to operate on par with PG&E. Wisely, PG&E is mindful of the need for cooperation in timely doing the right thing to maintain the ordinary course of business and the *status quo* and accommodate SCPA and the other CCAs in promptly resolving these issues.

Clearly, choosing to comply with its existing obligations under applicable laws and regulations is a valid exercise of PG&E's business judgment. Such an exercise of its business judgment is particularly appropriate in light of the fact that PG&E is heavily regulated by the State of California, which has enhanced CCA protections in recognition of the need to protect CCAs in order to further the State's renewable energy and greenhouse gas reduction goals. The legislative findings in support of the enhanced protections for CCAs in SB 790 include the following illustrations and more:[10]

---

[10] Also note the following CPUC Decisions:

*D.05-12-04.*In discussing "Customer Deposits, Partial Payments and Termination Service" the CPUC determined that IOUs and CCAs should collect their own deposits. The CPUC stated the following:

> We adopt the utilities' proposal that each entity collect its own deposits (although the CCA may collect the deposits using the utility's billing services). While this policy may require some customers to pay two deposits, we have consistently treated CCAs as stand-alone operations with ratemaking discretion.

(p. 42.)

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 20 of 45

SEC. 2. The Legislature finds and declares all of the following:

(a) It is the policy of the state to provide for the consideration, formation, and implementation of community choice aggregation programs authorized in Section 366.2 of the Public Utilities Code.

(b) Since community choice aggregation programs were first authorized in 2002, only one community choice aggregation program has been implemented.

(c) Electrical corporations [e.g., PG&E] have inherent market power derived from, among other things, name recognition among customers, longstanding relationships with customers, joint control over regulated operations and competitive generation services, access to competitive customer information, and the potential to cross-subsidize competitive generation services.

(d) The Public Utilities Commission has found that conduct by electrical corporations to oppose community choice aggregation programs has had the effect of causing community choice aggregation programs to be abandoned.

(e) The Public Utilities Commission has made considerable progress in identifying and addressing the conduct that has hindered the creation of community choice aggregation programs, and it is now appropriate to further address these issues in statute.

(f) The exercise of market power by electrical corporations [e.g., PG&E] is a deterrent to the consideration, development, and implementation of community choice aggregation programs.

(g) California has a substantial governmental interest in ensuring that conduct by electrical corporations does not threaten the consideration, development, and implementation of community choice aggregation programs.

(h) It is therefore necessary to establish a code of conduct, associated rules, and enforcement procedures, applicable to electrical corporations [e.g., PG&E] in

---

*D.04-12-046*. "SCE and SDG&E state they will have incremental billing costs because they will have to receive usage and other information from the CCA, then bill the customer on a separate page from the utility's bill, then remit the payments to the CCA." (p. 16-17.) The CPUC then determined that incremental billing costs should be allocated to the CCAs, and that the IOUs' billing processing fees should be unbundled.

*D.15-09-013*. As a CCA, LCE will offer generation procurement service to its residents and businesses while SCE will continue to provide transmission and distribution service to those customers plus metering, billing and other services on behalf of LCE. These metering, billing and other services are detailed in SCE's principal CCA fee schedule, tariff Schedule CCA-SF (Community Choice Aggregation Service Fees). (p. 1.)

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 21 of 45

> order to facilitate the consideration, development, and implementation of community choice aggregation programs, to foster fair competition, and to protect against cross-subsidization by ratepayers.

(brackets added.)

Public Utilities Code, 366.2(a)(9) states in part:

> … Electrical corporations [e.g., PG&E] shall continue to provide all metering, *billing*, collection, and customer service to retail customers that participate in community choice aggregation programs. *Bills sent by the electrical corporation to retail customers shall identify the community choice aggregator as providing the electrical energy component of the bill.* The commission shall determine the terms and conditions under which the electrical corporation [e.g., PG&E] provides services to community choice aggregators and retail customers.

(brackets and italics added). Consider also the *Legislative History for Public Utilities Code, 366.2:*

> COMMENTS: Community aggregation is direct access on a large scale, similar to formation of a municipal utility, except that a municipal utility is self-governing, must purchase power or build plants and transmission lines, assume responsibility for distribution, billing, and meter-reading. Under aggregation, most of the responsibilities remain with the electrical corporation. The aggregator procures electricity on the wholesale market, to be delivered through the electrical corporation's infrastructure. Under this bill the CPUC would oversee and sanction these transactions.[11]

In the view of SCPA and its allied CCAs, the foregoing statements demonstrate that the CCA protections in **Exhibit A** and the Motion are what is required by law. SCPA and its allied CCAs simply will obtain undisturbed and continuous collection and remittance of CCA Customer Revenue from CCA energy deliveries, program, service and other offerings for CCA customers in accordance with CCA Service Agreements, applicable state law, PG&E's Regulated Tariffs and other laws, regulations and tariffs, free from any claim of lien or security interest thereon by the DIP Lenders.

Accordingly, CCA protections are consistent with both the ownership interests of SCPA and its allied CCAs under Section 541(d) and the obligations of PG&E to comply with applicable law under 28 U.S.C. § 959(b), and to fulfill its assurances to the CPUC cited above concerning the

[11] *See* California Bill Analysis, A.B. 117 Assembly Floor (1/09/2002). Other bill summaries describe a CCA as a "purchasing agent" on behalf of its residents. *See* California Bill Analysis, A.B. 117 Senate Rules Committee (8/27/2002).

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 22 of 45

CCA Customer Revenue.

DATED: January 29, 2019.

RESPECTFULLY SUBMITTED,

ENGEL LAW, P.C.

By: */s/ G. Larry Engel*
G. Larry Engel

-and-

BOUTIN JONES INC.
Mark Gorton

-and-

SONOMA CLEAN POWER AUTHORITY
Jessica R. Mullan, General Counsel

*Attorneys for Creditor and Party-in-Interest, SONOMA CLEAN POWER AUTHORITY*

*Additional CCAs joining this Statement and the signatures of their counsel are on the following pages.*

16

SONOMA CLEAN POWER AUTHORITY'S STATEMENT OF SUPPORT FOR POSTPETITION FINANCING MOTION AND RESERVATION OF RIGHTS
991246.15

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 23 of 45

City and County of San Francisco, on behalf of CleanPowerSF, a program of the San Francisco Public Utilities Commission, a "governmental unit" (as defined in Bankruptcy Code section 101), joins the Statement of Support for the Debtors' Motion for Postpetition Financing and Reservation of Rights.

DATED: January ____, 2019.

RESPECTFULLY SUBMITTED,

DENNIS J. HERRERA
City Attorney
THERESA L. MUELLER
Chief Energy and Telecommunications Deputy

Attorneys for
CITY AND COUNTY OF SAN FRANCISCO
City Hall Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-4640
E-Mail: theresa.mueller@sfcityatty.org

By: Theresa Mueller (by ...)
Theresa L. Mueller

*Attorneys for Creditor and Party-in-Interest CITY AND COUNTY OF SAN FRANCISCO on behalf of CLEANPOWERSF and SAN FRANCISCO PUBLIC UTILITIES COMMISSION*

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 24 of 45

*EAST BAY COMMUNITY ENERGY, a Joint Powers Authority* and a "governmental unit" (as defined in Bankruptcy Code section 101), joins this Statement of Support and Reservation of Rights.

DATED: January 29, 2019.

RESPECTFULLY SUBMITTED,

EAST BAY COMMUNITY ENERGY
Leah S. Goldberg, General Counsel

By: [signature]
Leah S. Goldberg
General Counsel

*Attorneys for Creditor, EAST BAY COMMUNITY ENERGY AUTHORITY*

SONOMA CLEAN POWER'S STATEMENT OF SUPPORT AND RESERVATION OF RIGHTS

*City of San José,* a California Charter City (San José Clean Energy), and a "governmental unit" (as defined in Bankruptcy Code section 101), joins this Statement of Support and Reservation of Rights.

DATED: January 28, 2019.

Very truly yours,

City of San José

RICHARD DOYLE
City Attorney

*Attorneys for Creditor and Party-in-Interest*
*City of San José*

SONOMA CLEAN POWER'S STATEMENT OF SUPPORT
AND RESERVATION OF RIGHTS

Silicon Valley Clean Energy Authority, a California joint powers authority and a "governmental unit" (as defined in Bankruptcy Code section 101), joins this Statement of Support and Reservation of Rights.

DATED: January ____, 2019.

RESPECTFULLY SUBMITTED,

SILICON VALLEY CLEAN ENERGY AUTHORITY
T. Peter Pierce, Assistant General Counsel

By:______________________
T. Peter Pierce
Assistant General Counsel

*Attorneys for Creditor, SILICON CLEAN ENERGY AUTHORITY*

SONOMA CLEAN POWER'S STATEMENT OF SUPPORT
AND RESERVATION OF RIGHTS

Monterey Bay Community Power Authority, a California joint powers authority[1] and a "governmental unit" (as defined in Bankruptcy Code section 101), joins this Statement of Support and Reservation of Rights.

DATED: January 28, 2019.

RESPECTFULLY SUBMITTED,

COUNTY OF MONTEREY
Charles J. McKee, County Counsel

By: ______________________
Robert M. Shaw
Deputy County Counsel

Attorneys for Creditor, MONTEREY BAY COMMUNITY POWER AUTHORITY

---

[1] The governmental units that are members of Monterey Community Power Authority joint powers agreement are the cities of Santa Cruz, Watsonville, Capitola, Scotts Valley, Salinas, Monterey, Pacific Grove, Carmel, Seaside, Marina, Sand City, Soledad, Greenfield, Gonzales, Hollister, San Juan Bautista, San Luis Obispo, Morro Bay, and the unincorporated areas of Monterey, Santa Cruz and, San Benito Counties

Valley Clean Energy Alliance, a California joint powers authority[1] and a "governmental unit" (as defined in Bankruptcy Code section 101), joins this Statement of Support and Reservation of Rights.

DATED: January 29, 2019.

RESPECTFULLY SUBMITTED,

BEST BEST & KRIEGER LLP

By: Harriet Steiner
Harriet A. Steiner

*Attorneys for Creditor, VALLEY CLEAN ENERGY ALLIANCE*

---

[1] County of Yolo, City of Davis and City of Woodland.

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 29 of 45

PIONEER COMMUNITY ENERGY, a California joint powers authority[1] and a "governmental unit" (as defined in Bankruptcy Code section 101), joins this Statement of Support and Reservation of Rights.

DATED: January 28, 2019.

RESPECTFULLY SUBMITTED,

NEUMILLER & BEARDSLEE
A PROFESSIONAL COPROATION

By: ______________________
CLIFFORD W. STEVENS
Bankruptcy Counsel

*Attorneys for Creditor,*
*PIONEER COMMUNITY ENERGY*

[1] *The governmental units that are members of the Pioneer Community Energy joint powers authority are Placer County (unincorporated areas), Auburn, Colfax, Lincoln, Loomis, and Rocklin*

PIONEER COMMUNITY ENERGY'S STATEMENT OF SUPPORT
AND RESERVATION OF RIGHTS

# EXHIBIT A

**EXHIBIT A**

*CARVEOUT PROTECTIONS FOR CCAs*

*Following discussion of agreed principles, this language has been proposed to Debtors:*

Because PG&E is a utility regulated by the California Public Utilities Commission ("CPUC") pursuant to California State law, this Court only intends to approve preemption of those laws and regulations when it does so expressly, and not by implication by any general order approving post-petition financing and the documents underlying such financing ("DIP Loan Documents") where they conflict with such laws and regulations. The Court also wishes to avoid PG&E suffering under any inconsistent obligations implied from this Order and any such DIP Loan Documents, on the one hand, and such applicable laws and regulations, on the other hand. Therefore, without limiting the generality of those declarations, or limiting the rights or remedies of the CCAs (as defined below) under applicable law and regulation, and notwithstanding any other provisions of the DIP Loan Documents or this Order to the contrary:

1. PG&E is hereby authorized (a) to perform timely its obligations to the "community choice aggregators" ("CCAs") as defined in those applicable California laws and regulations, including without limitation Assembly Bill 117 (2002) and Senate Bill 790 (2011) and PG&E Electric Rule 23, including those CCAs appearing in this matter, and (b) to comply timely in accordance with those laws and regulations, including as implemented in the CPUC required and approved CCA Service Agreement (PG&E Electric Sample Form No. 79-1029) between each CCA and PG&E (each a "Service Agreement") that incorporates and embodies those laws and regulations with the force of law (collectively, the "CCA Obligations").

2. The Court hereby finds and determines that PG&E is the statutorily- and regulatorily-mandated pass through conduit and servicer (as described in Bankruptcy Code section 541(d)) of the "CCA Customer Revenue." For these purposes, "CCA Customer Revenue" shall mean charges applied by a CCA to its CCA customers, which charges are billed and collected by PG&E as the exclusive statutory and regulatory billing agent/servicer on behalf of a CCA for energy provided by a CCA to serve its customers, whether pre- or postpetition, and any funds collected and held by PG&E on account of such charges, as further described in PG&E Electric

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 32 of 45

Rule No. 23, Section Q, Subsections 1, 3 and 4, such CPUC approved CCA Service Agreements, and other amounts recoverable from PG&E by any CCA thereunder, consistent with the rights of each CCA under Section 541(d) of the Bankruptcy Code and applicable non-bankruptcy law and regulations, including by the force of law Service Agreements implementing those laws and regulations.

3. Therefore, nothing in this Order shall be deemed to suffer or permit the exercise of any right or remedy of any lender or loan participant under any of the DIP Loan Documents (separately and collectively, the "DIP Lenders") that would or could directly or indirectly interfere with, impair or otherwise adversely affect the CCA Obligations and/or the rights of the CCAs under Section 541(d) of the Bankruptcy Code and applicable non-bankruptcy law and regulations, including the Service Agreements. Without limiting the generality of the foregoing, the CCA Customer Revenue shall not constitute part of the DIP Loan Collateral, nor shall it be available to the DIP Lenders or others, since, among other things, such CCA Customer Revenue pertains to CCA energy supplied to CCA customers and is "public funds" of such CCA governmental units.

4. In particular, under this Order, CCA Customer Revenue shall be carved out and excluded from:

(A) the collateral encumbered by any security interest and/or lien upon property of the Debtors granted pursuant to Section 364(c)(2), (3) and/or (d) of the Bankruptcy Code or under any other authority, including the DIP Loan Documents, and

(B) any authorization to use cash collateral under Section 363 of the Bankruptcy Code or otherwise, except that PG&E shall not be prevented from complying with its legal and regulatory obligations to remit timely the CCA Customer Revenue to the applicable CCA in the ordinary course of business, consistent with such applicable laws, regulations and the Service Agreements.

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 33 of 45

EXHIBIT B

**EXHIBIT B**

*RESERVATION OF RIGHTS*

Except as provided above, nothing herein nor in any other appearance, pleading, claim, proof of claim, suit, motion or any other writing or conduct shall constitute a waiver by SCPA of any procedural or substantive rights, remedies, claims, or defenses including, without limitation: (a) the right to have all matters, except monetary "damages claims," probation violations, and criminal complaints, heard and resolved by the California Public Utilities Commission; (b) the right to have any and all final orders in any and all matters entered only after de novo review by a United States District Court Judge; (c) the right to have any matter heard and tried before an Article III court or, in the event of any applicable Chapter 9 case, such other bankruptcy court; (d) the right to trial by jury in any proceeding as to any and all matters so triable therein, whether or not the same be designated legal or private rights, or in any case, controversy or proceeding related hereto, whether or not such jury trial right is pursuant to statute or the United States Constitution, as well as the rights of State governmental units as such for sovereign immunity or under applicable laws, including the Fifth and Tenth Amendments; (e) the right to have the reference of this matter withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal; (f) other rights, claims, actions, remedies, defenses, setoffs, recoupments or other matters to which SCPA is entitled under any agreements or at law or in equity or under the United States Constitution, including those protecting public funds or which may be enforced as police or regulatory powers under Section 362(b)(4) or under 28 U.S.C. § 959; and (g) the right to be served directly with pleadings commencing an adversary proceeding, contested matter or other proceeding or action.

All of the above rights, claims, defenses, and remedies are hereby expressly reserved. The filing of this Statement and participating in these bankruptcy cases, or any of them, shall not be deemed to constitute a concession or admission of jurisdiction in the case or cases or before this court or any other court. SCPA does not consent to the bankruptcy court's jurisdiction or the jurisdiction of any other court. SCPA does not consent to the entry of final judgments, orders and/or decrees by the bankruptcy judge/bankruptcy court. At all times, SCPA demands a jury trial.

SCPA does not consent to the bankruptcy court/bankruptcy judge conducting any jury trial.

20

SONOMA CLEAN POWER AUTHORITY'S STATEMENT OF SUPPORT FOR POSTPETITION FINANCING MOTION AND RESERVATION OF RIGHTS
991246.15

**PROOF OF SERVICE**

I am employed in the County of Sacramento; my business address is 555 Capitol Mall, Suite 1500, Sacramento, California 95814. I am over the age of eighteen years and not a party to the foregoing action.

On January 29, 2019, I served the within:

**(1) SONOMA CLEAN POWER AUTHORITY'S STATEMENT OF SUPPORT FOR DEBTORS' MOTION FOR POSTPETITION FINANCING AND RESERVATION OF RIGHTS**

**(2) SONOMA CLEAN POWER AUTHORITY'S STATEMENT OF SUPPORT FOR DEBTORS' PUBLIC PROGRAMS MOTION AND RESERVATION OF RIGHTS**

**(3) DECLARATION OF GEOFFREY G. SYPHERS IN SUPPORT OF SONOMA CLEAN POWER AUTHORITY'S STATEMENT OF SUPPORT FOR DEBTORS' MOTION FOR POSTPETITION FINANCING AND PUBLIC PROGRAMS MOTION AND RESERVATION OF RIGHTS**

[X] **(by mail)** on all parties in said action by regular, first class United States mail, postage fully pre-paid, by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below. At Boutin Jones Inc., mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Sacramento, California.

[ ] **(by personal delivery)** by personally delivering a true copy thereof to the person(s) and at the address(es) set forth below.

[ ] **(by overnight delivery)** on the following party(ies) in said action by placing a true copy thereof enclosed in a sealed envelope, with delivery fees paid or provided for, in a designated area for outgoing overnight mail, addressed as set forth below. In the ordinary course of business at Boutin Jones Inc., mail placed in that designated area is picked up that same day for delivery the following business day.

[ ] **(by facsimile)** by transmitting a true copy thereof to the persons at the following telecopier numbers and obtaining electronic confirmation that the transmissions have been received.

PG&E Corporation
77 Beale Street
PO Box 770000
San Francisco, CA 94177

*Debtor*

Tobias S. Keller
Keller and Benvenutti LLP
650 California St. #1900
San Francisco, CA 94108

*Attorneys to Debtor*

*[x] Service list continued on following page*

| | |
|---|---|
| U.S. Trustee<br>Office of the U.S. Trustee / SF<br>Phillip J. Burton Federal Building<br>450 Golden Gate Ave. 5th Fl., #05-0153<br>San Francisco, CA 94102 | ***U.S. Trustee*** |
| Lynette C. Kelly<br>Office of the United States Trustee<br>Phillip J. Burton Federal Building<br>450 Golden Gate Ave. 5th Fl., #05-0153<br>San Francisco, CA 94102 | ***Attorneys for U.S. Trustee*** |
| Marta Villacorta<br>Office of the United States Trustee<br>Phillip J. Burton Federal Building<br>450 Golden Gate Ave. 5th Fl., #05-0153<br>San Francisco, CA 94102 | ***Attorneys for U.S. Trustee*** |
| Michael St. James, Esq.<br>ST. JAMES LAW, P.C.<br>22 Battery Street, Suite 888<br>San Francisco, California 94111 | ***Request for Special Notice***<br>Attorneys for Garcia and Associates |
| Valerie Bantner Peo, Esq.<br>Shawn M. Christianson, Esq.<br>Buchalter, A Professional Corporation<br>55 Second Street, 17th Floor<br>San Francisco, California 94105-3493 | ***Request for Special Notice***<br>Attorneys for CALIFORNIA COMMUNITY CHOICE ASSOCIATION |
| Kenneth N. Klee<br>David M. Stern<br>Samuel M. Kidder<br>KLEE, TUCHIN, BOGDANOFF & STERN LLP<br>1999 Avenue of the Stars, Thirty-Ninth Floor<br>Los Angeles, California 90067 | ***Request for Special Notice***<br>Attorneys for NextEra Energy Inc. et al |
| PACHULSKI STANG ZIEHL & JONES LLP<br>Isaac M. Pachulski<br>Debra I. Grassgreen<br>Gabriel I. Glazer<br>John W. Lucas<br>150 California Street, 15th Floor<br>San Francisco, CA 94111 | ***Request for Special Notice***<br>Attorneys for The Baupost Group, L.L.C. |
| Debra Grassgreen<br>Karl Knight<br>1339 Pearl Street, Suite 201<br>Napa, CA 94558 | ***Request for Special Notice*** |

***[x] Service list continued on following page***

Thomas J. Brandi, Esq.
Law Offices of Thomas J. Brandi
345 Pine Street, 3rd Floor
San Francisco, CA 94104

***Request for Special Notice***

Gregory A. Rougeau
BRUNETTI ROUGEAU LLP
235 Montgomery Street, Suite 410
San Francisco, CA 94104

***Request for Special Notice***
Attorneys for KORTICK MANUFACTURING COMPANY

Meagan S. Tom
LOCKE LORD LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
Telephone: (415) 318-8810
Fax: (415) 676-5816
meagan.tom@lockelord.com

***Request for Special Notice***
Attorneys for International Brotherhood of Electrical Workers Local Union 1245

Sally J. Elkington
James A. Shepherd
ELKINGTON SHEPHERD LLP
409 - 13th Street, 10th Floor
Oakland, CA 94612

***Request for Special Notice***
Attorneys for W. BRADLEY ELECTRIC, INC.

John A. Vos, Esq.
1430 Lincoln Avenue
San Rafael, CA 94901

***Request for Special Notice***

R. Alexander Pilmer
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

***Request for Special Notice***
Attorneys for FEDERAL MONITOR

Stephen E. Hessler, P.C. (pro hac vice forthcoming)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

***Request for Special Notice***
Attorneys for FEDERAL MONITOR

Marc Kieselstein, P.C. (pro hac vice forthcoming)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

***Request for Special Notice***
Attorneys for FEDERAL MONITOR

John D. Fiero
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500

***Request for Special Notice***
Attorneys for TRC Companies, Inc.

***[x] Service list continued on following page***

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 39 of 45

David L. Neale, Esq.
Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067

***Request for Special Notice***
Attorneys for California Independent System Operator

Keith J. Cunningham
Pierce Atwood LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101

***Request for Special Notice***
Attorneys for California Independent System Operator

Shawn M. Christianson, Esq.
Valerie Bantner Peo, Esq.
Buchalter, A Professional Corporation
55 Second Street, 17th Floor
San Francisco, California 94105-3493

***Request for Special Notice***
Attorneys for ORACLE AMERICA, INC.

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 1/29/19, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:**

Peter J. Benvenutti pbenvenutti@kellerbenvenutti.com
Shawn M. Christianson schristianson@buchalter.com
David V. Duperrault dvd@svlg.com, edn@svlg.com
Michael P. Esser michael.esser@kirkland.com
John D. Fiero jfiero@pszjlaw.com, ocarpio@pszjlaw.com
Debra I. Grassgreen dgrassgreen@pszjlaw.com, hphan@pszjlaw.com
Roberto J. Kampfner rkampfner@whitecase.com
Tobias S. Keller tkeller@kellerbenvenutti.com, pbenvenutti@kellerbenvenutti.com
Lynette C. Kelly lynette.c.kelly@usdoj.gov, ustpregion17.oa.ecf@usdoj.gov
Samuel M. Kidder skidder@ktbslaw.com
Richard A. Lapping rich@trodellalapping.com
John William Lucas jlucas@pszjlaw.com, ocarpio@pszjlaw.com
Kerri Lyman klyman@irell.com, lgauthier@irell.com
David L. Neale dln@lnbrb.com
Gregory C. Nuti gnuti@nutihart.com, nwhite@nutihart.com
Office of the U.S. Trustee / SF USTPRegion17.SF.ECF@usdoj.gov
Valerie Bantner Peo vbantnerpeo@buchalter.com
R. Alexander Pilmer alexander.pilmer@kirkland.com, keith.catuara@kirkland.com
M. Ryan Pinkston rpinkston@seyfarth.com, jwoods@seyfarth.com
Douglas B. Provencher dbp@provlaw.com
Lary Alan Rappaport lrappaport@proskauer.com, PHays@proskauer.com
Gregory A. Rougeau grougeau@brlawsf.com
James A. Shepherd jim@elkshep.com, ecf@elkshep.com

Michael St. James ecf@stjames-law.com
Meagan S. Tom Meagan.tom@lockelord.com, autodocket@lockelord.com
Edward Tredinnick etredinnick@grmslaw.com
Marta Villacorta marta.villacorta@usdoj.gov
John A. Vos InvalidEMailECFonly@gmail.com, PrivateECFNotice@gmail.com

***[x] See attached mailing matrix for additional parties served by first class mail***

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 29, 2019, at Sacramento, California.

CARMELIA V. DOMINGO

Case: 19-30088 Doc# 65 Filed: 01/29/19 Entered: 01/29/19 14:08:09 Page 41 of 45

Label Matrix for local noticing
0971-3
Case 19-30088
Northern District of California
San Francisco
Tue Jan 29 13:28:21 PST 2019

Arocles Aguilar
California Public Utilities Commission
505 Van Ness Ave.
San Francisco, CA 94102-3298

CA Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

CA Franchise Tax Board
Special Procedures Bankruptcy Unit
P.O. Box 2952
Sacramento, CA 95812-2952

California Community Choice Association
Buchalter, A Professional Corporation
c/o Valerie Bantner Peo
55 2nd St. 17th Fl.
San Francisco, CA 94105-3493

Chief Tax Collection Section
Employment Development Section
P.O. Box 826203
Sacramento, CA 94230-0001

Shawn M. Christianson
Buchalter, Nemer, Fields and Younger
55 2nd. St. 17th Floor
San Francisco, CA 94105-3493

City and County of San Francisco
City Attorney
City Hall Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, CA 94102-4682

David V. Duperrault
Silicon Valley Law Group
50 W San Fernando St. #750
San Jose, CA 95113-2450

Elizabeth J. Cabraser, Richard M. Heimann, L
275 Battery Street, 29th Floor
SEE ATTACHMENT FOR ADDITIONAL ADDRESS
San Francisco, CA 94111-3305

Elizabeth J. Cabraser, Richard M. Heimann, L
275 Battery Street, 29th Floor
San Francisco, CA 94111-3305

Michael P. Esser
Kirkland & Ellis LLP
555 California St, 27th Fl
San Francisco, CA 94104-1603

John D. Fiero
Pachulski, Stang, Ziehl, and Jones
150 California St. 15th Fl.
San Francisco, CA 94111-4554

Gregory Frase Enterprises, Inc. dba Kortick
c/o Gregory A. Rougeau, Esq.
Brunetti Rougeau LLP
235 Montgomery St., Ste. 410
San Francisco, CA 94104-2907

Mark Gorton
Boutin Jones, Inc.
555 Capitol Mall, Suite 1500
Sacramento, CA 95814-4603

Mark A. Gorton
McDonough, Holland and Allen
500 Capitol Mall18th Fl
Sacramento, CA 95814

Debra Grassgreen
1339 Pearl Street
Suite 201
Napa, CA 94559-2556

Debra I. Grassgreen
Pachulski, Stang, Ziehl, and Jones LLP
150 California St. 15th Fl.
San Francisco, CA 94111-4554

IRS
P.O. Box 7346
Philadelphia, PA 19101-7346

J. Christopher Shore
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1016

KEVIN BURNETT; LESLIE MOORE; DARWIN CRABTREE
275 Battery Street, 29th Floor
San Francisco, CA 94111-3305

Roberto J. Kampfner
Law Offices of White and Case
633 W 5th St. #1900
Los Angeles, CA 90071-2087

Tobias S. Keller
Keller and Benvenutti LLP
650 California St. #1900
San Francisco, CA 94108-2736

Lynette C. Kelly
Office of the United States Trustee
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102-3661

Samuel M. Kidder
Klee, Tuchin, Bogdanoff and Stern LLP
1999 Ave. of the Stars, 39th Fl.
Los Angeles, CA 90067-6049

LORE OLDS, dba SKY VINEY ARDS SKYLA OLDS et
275 Battery Street, 29th Floor
San Francisco, CA 94111-3305

Richard A. Lapping
Trodella & Lapping LLP
540 Pacific Ave.
San Francisco, CA 94133-4608

John William Lucas
Pachulski Stang Ziehl and Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4554

Kerri Lyman
Irell and Manella LLP
840 Newport Center Dr. #400
Newport Beach, CA 92660-6396

Matthew C. Brown
WHITE & CASE LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131-2352

Jessica Mullan
Sonoma Clean Power Authority
50 Santa Rosa Avenue, Fifth Floor
Santa Rosa, CA 95404-4908

David L. Neale
Levene, Neale, Bender, Rankin and Brill
1801 Ave. of the Stars #1120
Los Angeles, CA 90067

NextEra Energy Inc., et al.
700 Universe Boulevard
Juno Beach, FL 33408-2657

Gregory C. Nuti
Nuti Hart LLP
411 30th St. #408
Oakland, CA 94609-3311

Office of the U.S. Trustee / SF
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102-3661

Oracle America, Inc.
Buchalter
c/o Shawn Christianson
55 Second Street, 17th Floor
San Francisco, ca 94105-3493

PG&E Corporation
77 Beale Street
PO Box 770000
San Francisco, CA 94177-0001

Paul Weiss, Rifkind,
Wharton & Garrison LLP
Alan W. Kornberg
1285 Avenue of the Americas
New York, New York 10019-6031

Paul Weiss, Rifkind,
Wharton & Garrison LLP
Brian S. Hermann
1285 Avenue of the Americas
New York, New York 10019-6031

Paul Weiss, Rifkind,
Wharton & Garrison LLP
Neal P. Donnelly
1285 Avenue of the Americas
New York, New York 10019-6031

Paul Weiss, Rifkind,
Wharton & Garrison LLP
Sean A. Mitchell
1285 Avenue of the Americas
New York, New York 10019-6031

Paul Weiss, Rifkind,
Wharton & Garrison LLP
Walter R. Rieman
1285 Avenue of the Americas
New York, New York 10019-6031

Valerie Bantner Peo
Buchalter Nemer, A Professional Corp.
55 Second St. 17th Fl
San Francisco, CA 94105-3493

R. Alexander Pilmer
Kirkland and Ellis LLP
333 South Hope St.
Los Angeles, CA 90071-1406

M. Ryan Pinkston
Seyfarth Shaw LLP
131 S Dearborn St. #2400
Chicago, IL 60603-5577

Douglas B. Provencher
Law Offices of Provencher and Flatt
823 Sonoma Ave.
Santa Rosa, CA 95404-4714

Lary Alan Rappaport
Proskauer Rose LLP
2029 Century Park E #2400
Los Angeles, CA 90067-3010

Roberto J. Kampfner
WHITE & CASE LLP
555 South Flower Street,
Suite 2700
Los Angeles, CA 90071-2433

Gregory A. Rougeau
Brunetti Rougeau LLP
400 Montgomery St. #1000
San Francisco, CA 94104-1224

San Diego Gas & Electric Company
8326 Century Park Court
San Diego, CA 92123-1576

Sempra Energy
488 8th Avenue
San Diego, CA 92101-7123

James A. Shepherd
Elkington Shepherd LLP
409 13th St. 10th Fl.
Oakland, CA 94612-2607

Southern California Gas Company
555 West Fifth Street
Los Angeles, CA 90013-1011

Michael St. James
St. James Law
22 Battery St. #888
San Francisco, CA 94111-5522

The Baupost Group, L.L.C.
c/o Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4554

Thomas E Lauria
WHITE & CASE LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131-2352

Meagan S. Tom
Locke Lord LLP
44 Montgomery St. #4100
San Francisco, CA 94104-4815

Edward Tredinnick
Greene, Radovsky, Maloney and Share
4 Embarcadero Center #4000
San Francisco, CA 94111-4101

Turner Construction Company
311 California Street
Suite 450
San Francisco, CA 94104-2616

U.S. Attorney
Civil Division
450 Golden Gate Ave.
San Francisco, CA 94102-3661

Marta Villacorta
Office of the United States Trustee
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102-3661

John A. Vos
Law Offices of John A. Vos
1430 Lincoln Ave.
San Rafael, CA 94901-2021

John A. Vos A
1430 Lincoln Ave.
San Rafael, CA 94901-2021

W. Bradley Electric, Inc.
c/o Elkington Shepherd LLP
409 13th Street
10th Floor
Oakland, CA 94612-2607

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Ad Hoc Group of Institutional Bondholders

(u)Ad Hoc Group of Institutional Par Bondhold

(u)BlueMountain Capital Management, LLC

(u)Butte County

(u)Calaveras County Water District

(u)California Independent System Operator

(u)California Public Utilites Commision

(u)Calpine Corporation

(u)City of Clearlake

(u)City of Napa

(u)City of Santa Rosa

(u)Federal Monitor

(u)Garcia and Associates

(u)International Brotherhood of Electrical Wo

(u)Lake County

(u)Mendocino County

(u)Napa County

(u)Nevada County

(u)Provencher & Flatt

(u)Sonoma County

(u)Sonoma County Agricultural Preservation an

| | | |
|---|---|---|
| (u)Sonoma County Community Development Commis | (u)Sonoma County Water Agency | (u)Sonoma Valley County Sanitation District |
| (u)TRC Companies, Inc. | (u)TURN-The Utility Reform Network | (u)Town of Paradise |
| (u)Valero Refining Company-California | (u)Yuba County | End of Label Matrix<br>Mailable recipients 63<br>Bypassed recipients 29<br>Total 92 |