1  DONNA S. TAMANAHA (WI SBN 1013199)
   Assistant United States Trustee
2  LYNETTE C. KELLY (SBN 120799)
   Trial Attorney
3  MARTA E. VILLACORTA (NY SBN 4918280)
   Trial Attorney
4  United States Department of Justice
   Office of the U.S. Trustee
5  450 Golden Gate Avenue, Suite 05-0153
   San Francisco, CA  94102
6  Telephone:  (415) 705-3333
   Facsimile:   (415) 705-3379
7  Email: lynette.c.kelly@usdoj.gov;
          marta.villacorta@usdoj.gov
8
   Attorneys for James L. Snyder,
9  Acting United States Trustee for Region 12[1]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>    Debtor-in-Possession. | Case No. 19-30088 DM<br><br>Chapter 11 |
| In re<br><br>PACIFICE GAS AND ELECTRIC COMPANY,<br><br>    Debtor-in-Possession. | Case No. 19-30089 DM<br><br>Chapter 11 |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR IN POSSESSION FINANCING**

The Acting United States Trustee for Region 12 (the "United States Trustee") hereby files this preliminary objection (the "Objection") to the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503 and 507, and Fed. R. Bankr. P. 2002, 4001, 6003, 6004 and 9014 for Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured, Superpriority,*

---

[1] James L. Snyder, Acting United States Trustee for Region 12, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who has recused herself.

*Postpetition Financing, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling Final Hearing and (V) Granting Related Relief* (ECF No. 23) (the "DIP Financing Motion"). In support of the Objection, the United States Trustee respectfully states as follows:

## I. INTRODUCTION

The Debtors have not demonstrated that certain provisions in the proposed financing should be approved at this early stage of the case. It is unclear whether the $1.5 billion which the Debtors propose to borrow on an interim basis is necessary to avoid immediate and irreparable harm in accordance with Fed. R. Bankr. R. 4001. In addition, the proposed transaction fees include fees set forth in fee letters that have been filed under seal. Moreover, the proposed Interim Order contains a premature good faith finding under Section 364(e).

## II. FACTUAL BACKGROUND

1. On January 29, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtors have not filed the required Schedules and Statements. The Debtors have instead filed an application to extend their deadline to do so by 60 days. *See* ECF No. 18. If granted, the request would allow the Debtors a total of 74 days after the Petition Date to file their Schedules and Statements.

3. Although the United States Trustee has not had sufficient time to appoint an Official Committee of Unsecured Creditors, a formation meeting will be held on February 11, 2019.

4. On the Petition Date, the Debtors filed the DIP Financing Motion. As set forth in the DIP Financing Motion, the Debtors seek authorization to borrow $5.5 billion on a secured, superpriority basis. On an interim basis, the Debtors seek authorization to borrow $1.5 billion. *See*

DIP Financing Motion, at p. 2 of 42.[2]

5. As part of the credit agreement filed as Exhibit B to the DIP Financing Motion (ECF No. 23-2) (the "DIP Credit Agreement"), the Debtors have agreed to pay fees to the DIP Lenders and/or the DIP Agents: (i) a fee for unused availability under the "Revolving Credit Facility"; (ii) a fee for undrawn "Delayed Draw Term Loans"; (iii) a fronting fee for outstanding letters of credit; (iv) a letter of credit participation fee; and (v) an extension fee. *See* DIP Financing Motion, at p.18 of 42; DIP Credit Agreement, at §§ 2.4, 2.5, 3.3.

6. The Debtors also seek authorization to pay fees set forth in certain fee letters they seek to keep confidential by filing a seal motion (ECF No. 25).[3] *See* DIP Financing Motion, at p.18 of 42; *see also* proposed Interim Order on DIP Financing Motion (ECF No. 23-1) (the "Proposed Interim Order"), at p.12 of 37.

### III. OBJECTION

Before approving debtor in possession financing, a court must consider whether the terms of proposed financing are fair, reasonable and adequate. *See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011) (citing *In re Crouse Group, Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987)). In this respect, courts routinely consider the following factors: (i) whether the proposed facility is an exercise of the debtor's reasonable business judgment; (ii) whether the proposed facility is in the best interests of both the estate and its creditors; (iii) whether the transaction is both (a) necessary to preserve estate assets and (b) necessary and essential for the continued operation of the debtor's business; (iv) whether the terms of the proposed transaction are

---

[2] Debtor Pacific Gas and Electric Company (the "Utility") is the borrower, while Debtor PG&E Corporation is the guarantor. *See* DIP Financing Motion, at pp. 2, 9, 11 of 42.

[3] Contemporaneously herewith, the United States Trustee is filing an objection to the motion to seal.

Page -3-

fair and reasonable given the circumstances; and (v) whether the proposed facility was negotiated in good faith and at arm's length. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

Courts recognize that debtors in possession often "enjoy little negotiating power." *See In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992). Thus, bankruptcy courts have not approved financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the sole (or primary) benefit of a post-petition lender *See, e.g., Ames Dep't Stores, Inc.*, 115 B.R. 34, 38-39 (Bankr. S.D.N.Y. 1990) (citing *In re Tenney Vill. Co.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (holding that the terms of a post-petition financing facility must not "pervert the reorganizational process from one designed to accommodate all classes of creditors . . . to one specially crafted for the benefit" of one creditor)). Moreover, at an interim hearing on less than 14 days' notice, a court "may authorize the obtaining of credit <u>only to the extent necessary to avoid immediate and irreparable harm</u> to the estate pending a final hearing." *See* Fed. R. Bankr. P. 4001(c)(2) (emphasis added).

Here, the proposed DIP financing has a number of provisions that should not be approved on shortened notice, if at all.

**A.** **The Debtors Have Not Demonstrated the Need to Borrow $1.5 Billion on an Interim Basis.**

As noted above, at an interim hearing, the authorization to obtain credit must be limited to what is necessary to avoid immediate and irreparable harm. *See* Fed. R. Bankr. P. 4001(c)(2).

Here, the Debtors seek authorization to borrow up to $1.5 billion. *See* ¶ 7, *supra*. That figure, however, assumes that a final hearing on the DIP Financing Motion will not occur until April 15, 2019. *See* DIP Financing Motion, at p. 31 of 42. A final hearing date in February is much more likely. According to the Debtors' 13-week budget, if the final hearing were to occur

on or about February 23, 2019, the Debtors would need to borrow only $750 million. *See* 13-week budget (ECF No. 23-3), at p.2. Moreover, at least one expenditures on the 13-week budget may not be immediately necessary. Specifically, Week 1 of the 13-week budget reflects a debt service payment of $57,950,000. *See id.* At any rate, the 13-week budget indicates that the Debtors would have an ending cash balance of approximately $1.6 billion on February 23, 2019. Even if this figure is reduced by $700 million for budgeted customer deposits and a working capital reserve, the Utility may not need to borrow money before a final hearing.

**B.     Parties and Interest Cannot Assess Whether the DIP Financing Fees are a Reasonable Exercise of the Debtors' Business Judgment.**

A court's "discretion to authorize incentives to postpetition lenders is not unfettered." *See In re Defender Drug Stores, Inc.*, 145 B.R. at 317. Here, the Debtors seek authorization to pay a number of fees to the DIP Lenders and/or the DIP Agents, including the fees in the fee letters. As discussed above, the fee letters have been filed under seal. *See* ¶¶ 8-10, *supra*. These fees should not be approved unless they are made available to parties in interest, including any Official Committees (when formed).

**C.     The Court Should Not Make a Good Faith Finding at a First Day Hearing without Input from an Official Committee.**

The Debtors seek a Section 364(e) finding. *See* DIP Financing Motion, at p. 38 of 42; Proposed Interim Order (ECF No. 23-1), at Findings I and J and ¶ 16 (pp. 9, 10, 25 of 37). Such a finding would all but immunize the DIP financing from appellate review. *See* 11 U.S.C. § 364(e); *In re Adams Apple, Inc.*, 829 F.2d 1484, 1488-89, 1491 & n.6 (9th Cir. 1987) (dismissing appeal of approval of cross-collateralization clause as moot pursuant to Section 364(e)). This sweeping relief should not be granted at the outset of the case, before an Official Committee of Unsecured Creditors has had the opportunity to consider the issue.

Case: 19-30088    Doc# 168    Filed: 01/31/19    Entered: 01/31/19 07:31:00    Page 5 of 7

### D. The Court Should Not Approve a Lien on Avoidance Actions.

As part of the DIP financing, the Debtors seek to grant the DIP Lenders and/or the DIP Agents a lien on causes of action under Chapter 5 of the Bankruptcy Code ("Avoidance Actions"). *See* Proposed Interim Order, at ¶ 3 (p.14 of 37); *see also* DIP Financing Motion, at p. 21 of 42.[4] The Avoidance Actions should be maintained for the benefit of unsecured creditors. *Cf. Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000) ("When recovery is sought under section 544(b) of the Bankruptcy Code, any recovery is for the benefit of all unsecured creditors …."); *see also* Court's *Guidelines for Cash Collateral and Financing Stipulations*, at ¶ E.7.

### E. The Court Should Not Approve Waivers regarding Section 506(c) and Marshalling.

The relief requested in the DIP Financing Motion includes waivers of the Debtors' rights under section 506(c) and marshalling. *See* DIP Financing Motion, at p. 22 of 42; Interim Order, at ¶¶ 23-24 (pp. 26-27 of 37). These waivers should not be approved at this stage of the case. *See* Court's *Guidelines for Cash Collateral and Financing Stipulations*, at ¶ E.4.

### F. The Court Should Not Approve Financing Terms that Divest the Debtors of Discretion in Formulating a Plan and Administration of the Case.

Events of default under the DIP Credit Agreement include the Debtors' filing of (i) a plan that is not an "Acceptable Plan"[5] or (ii) a motion to dismiss or convert the case or for

---

[4] This relief would be "subject to the approval of the Court in the Final Order." *See* Interim Order, at ¶ 3 (p.14 of 37).

[5] An "Acceptable Plan" is defined as "a Chapter 11 Plan that, unless otherwise consented to in advance in writing by the Administrative Agent, provides for the termination of the Commitments, the indefeasible payment in full in cash of the Obligations (other than contingent Obligations not yet due and payable) and the expiration or termination of all outstanding Letters of Credit (or, with respect to any undrawn Letters of Credit, the establishment of a "backstop" letter of credit or other Cash Collateralization thereof as required herein), in each case on the effective date of such Chapter 11 Plan in accordance with the terms of this Agreement." *See* DIP Credit Agreement, at § 1.1 (p. 9 of 113).

Case: 19-30088    Doc# 168    Filed: 01/31/19    Entered: 01/31/19 07:31:00    Page 6 of 7

the appointment of a trustee. *See* DIP Credit Agreement, at § 8(i), (n) (at pp. 79, 81 of 113). These provisions may improperly divest the Debtors of discretion in formulating a plan and the administration of the case and should not be approved. *See* Court's *Guidelines for Cash Collateral and Financing Stipulations*, at ¶ E.5.

**G.   Findings of Fact and Limitations of Liability Should be Subject to Review at the Final Hearing**

The Proposed Interim Order contains extensive findings of fact, as well as a limitation of liability. *See, e.g.*, Proposed Interim Order, at Findings F, G, and H and ¶ 32. Given the limited record before the Court and the short notice, any such findings and limitations should be subject to review at the final hearing.

## IV.   RESERVATION OF RIGHTS

The United States Trustee reserves his right to supplement this Objection on any and all grounds prior to the final hearing on the DIP Financing Motion.

## V.   CONCLUSION

WHEREFORE, the United States Trustee requests that the DIP Financing Motion in its current form be denied, and for such other and further relief as the Court deems just and proper.

Dated: January 31, 2019                James L. Snyder
                                       Acting United States Trustee, Region 12

                                       /s/ Lynette C. Kelly
                                       Trial Attorney