1      UNITED STATES BANKRUPTCY COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3      (SAN FRANCISCO DIVISION)

4

5  In re:                    Case No. 19-30088

6  PG&E Corporation,         Chapter 11

7                            San Francisco, California
                             January 29, 2019
8                            1:30 p.m.
          Debtor.
9  _____/

10 PACIFIC GAS and ELECTRIC   Case No. 19-30089
   COMPANY,
11

12         Debtor.
   _____/
13

14           TRANSCRIPT OF PROCEEDINGS
                 EXPEDITED HEARING
15
        BEFORE THE HONORABLE DENNIS MONTALI
16        UNITED STATES BANKRUPTCY JUDGE

17
   APPEARANCES:
18
   For the Debtors:        KELLER & BENVENUTTI LLP
19                         BY: TOBIAS S. KELLER, ESQ.
                           650 California Street, Suite 1900
20                         San Francisco, California 94108

21                                   -and-

22                         WEIL GOTSHAL & MANGES, LLP
                           BY: STEPHEN KAROTKIN, ESQ.
23                             TED TSEKERIDES, ESQ.
                           767 Fifth Avenue
24                         New York, New York 10153

25

1   APPEARANCES (CONTINUED):

2

3   For JP Morgan Chase:    STROOK and STROOK and LAVAN LLP
                                  BY: KRISTOPHER M. HANSEN, ESQ.
                                  2029 Century Park East, 18th Floor

4                                   Los Angeles, California 90067

5

6   For the U.S. Trustee:    OFFICE OF THE U.S. TRUSTEE
                                  BY: LYNETTE KELLY, ESQ.

7                                   450 Golden Gate Avenue
                                  San Francisco, California 94102

8

9   For the Department of    MARC SACKS, ESQ.
  Justice:                  (Appearing Telephonically)

10

11

  Court Recorder:          JANE GALVANI
12                                   UNITED STATES BANKRUPTCY COURT
                                  450 Golden Gate Avenue

13                                   San Francisco, California 94102

14

  Transcription Service:    Jo McCall
15                                   Electronic Court
                                  Recording/Transcribing

16                                   2868 E. Clifton Court
                                  Gilbert, Arizona 85295

17                                   Telephone: (480)361-3790

18

19

20

21

22

23

24

25

P R O C E E D I N G S

January 29, 2019                                    1:30 p.m.

–––oOo–––

COURTROOM DEPUTY: All rise.  The court is now in session, The Honorable Dennis Montali presiding.

THE COURT: Good afternoon everyone.  Please be seated.  Welcome to the San Francisco Bankruptcy Court.

ALL COUNSEL: Thank you.

THE COURT: I'm going to call on counsel to appear, and then I've got some opening comments for everybody.  So, Mr. Keller, you have a chair, right?

MR. KELLER: Yes, I do.

THE COURT: Okay.  Well, thank you all for coming. I'm sorry we're squeezed, but we're squeezed, and for those of you in the overflow courtroom or elsewhere, I hope you can hear me.  We'll try to make it all work this afternoon.

If you don't know, I'm Judge Dennis Montali. I'll be presiding over the proceedings.  I'm going to introduce the court staff and a few other people, and then make some preliminary announcements that hopefully will be helpful for everyone.

My immediate staff here, over here and the chair over there and the desk over there is my Law Clerk, Ms. Peggy Brister.  In front of me on my left is Ms. Lorena Parada; she's my Courtroom Deputy.  To my right is Ms. Jane

1   Galvani; she's my judicial assistant.  In the back

2   somewhere is Mr. Mark Busby.  Where are you Mark?  I can't

3   see you.  There is he is.  Mr. Busby is the chief deputy

4   clerk, and he's sort of the head of the operation around

5   here, and he's going to take care of everything, except the

6   air conditioning.  (Laughter.)

7          Somewhere is Ms. Madelyn Choi.  Ms. Choi is again

8   a senior member of our court staff, but she's double duty

9   here as sort of the media liaison person.  Next to her is

10  Ms. La-Tia Sanders-Terrado; she's again a member –- a

11  senior member of the court staff, coordinator of a lot of

12  different things and helpful on most everything she needs

13  to do.

14         Most of the people that I just introduced from my

15  staff are really people that you'll just know of; you're

16  not going to be face to face with them.  Ms. Parada, my

17  Courtroom Deputy, will be in touch with counsel at various

18  times for scheduling matters, but generally I follow the

19  rule that a number of judges do.  They do not expose their

20  Law Clerks or their other staff to the responsibilities,

21  vis-a-vis the members of the Bar.  Nothing personal; it's

22  just the way we run our operation.

23         I want to repeat again something that I made

24  clear this morning.  Keep in mind for me and for most of

25  you, by my calculation, we've got –- haven't even had 14

1  hours to absorb what was filed just after midnight, and a
2  combination of reasons are such that I simply had to decide
3  to limit this hearing to the procedures that I outlined in
4  the matter that hopefully you're all aware of.  Its purpose
5  and my purpose is to schedule what's going to come next,
6  maybe as early as tomorrow or the next day or soon after
7  that.  I am not, as I said in the order, I'm not going to
8  make rulings; I'm not going to sustain positions or
9  overrule them or, frankly, as much as I'm trying to absorb
10  everything quickly, I'm not even going to listen to
11  arguments about why something should come out one way or
12  the other, and except for the counsel whom I'm going to
13  call upon to comment back and forth with me on scheduling,
14  I'm not going to have an opportunity to or invite comments
15  from the public.

16          I feel very strongly that the public in a high
17  vis case or even a low vis case should be given an
18  opportunity to have their day in court, and I will not deny
19  them that, but I have to deny it today.  And I'll try to
20  explain a little more about that.  Very shortly, I will
21  have hearings where I will allow and encourage members of
22  the public or lawyers who are not perhaps representing
23  anyone other than their own individual clients who want to
24  be heard on something, but it simply won't work today for a
25  variety of reasons.

1           Again, this should be obvious to experienced

2   counsel, but today I'm going to use the podium when we have

3   long hearings or regular type hearings.  In my courtroom, I

4   prefer a more casual thing, and I invite counsel to remain

5   at the table as long as they're near a microphone.  But

6   today, because of the number of people, the way we're

7   projecting this both in another courtroom and in another

8   room downstairs, I'm going to ask whenever counsel appear,

9   he or she appears at the center podium, and that you -- the

10  speaker speak and identify his or her name, not every time

11  you say something, but if you come to the podium and

12  prepare to be heard, please identify yourself if you leave

13  and come back for some other reason.  Once again, it's not

14  that -- I'll do my best to get to know lawyers that I don't

15  know, who are from out of the area, but for our electronic

16  record, we have to keep that clear.

17          I want to comment on the record again for some of

18  you who are not familiar with our procedure, particularly

19  non-lawyers or lawyers who are not familiar with us here,

20  it's the obvious, but we do not permit recording in any

21  fashion of our court procedures.  That means if you're

22  recording on a cell phone or a tape recorder or an Ipad or

23  a laptop, that is prohibited, and if you're found doing

24  that, you'll be asked to leave the courtroom.  The upside

25  is -- and again, I don't know how familiar you are with

1  this -- everything we say on this record and in any record,

2  during any time I preside, unless there's a sealed hearing

3  or an off-the-record hearing, will be picked up on our

4  electronic record and for virtually nothing in cost, if you

5  are a PACER account holder -- and again, the lawyers are

6  familiar with that -- you can download each day the

7  unofficial transcript of our proceedings.

8          So even today, even my comments now and your

9  comments, those of you who are going to be participating,

10  with luck, by the end of the day, will be loaded onto our

11  public docket and when you go on our public docket on PACER

12  and you go to the date of the hearing, such as today,

13  January 29th, you should see a little logo that you click on

14  and that will allow you to have an unofficial audio

15  transcript of the hearing.  Of course if you want an

16  official record, you need to comply with our procedures for

17  obtaining an official transcript.  That normally takes a

18  little more time and it certainly involves an increased

19  cost, but if there's going to be any appeals or matters

20  called to the attention of other courts, that will be

21  necessary to have the official transcript.

22          I'm going to ask now that the principal lawyers

23  for the Debtor, and I'll say "Debtors;" I want to get a

24  clarification from counsel when you make your opening

25  comments, but in reviewing the docket, I see Mr. Keller

1 locally and counsel from New York, the Weil Gotshal firm,

2 as appearing for both Debtors, I was not aware that there

3 would be counsel for both Debtors rather than separate

4 counsel. Again, it's not my business today to speculate on

5 that, but what I would like to do is have the principal

6 counsel appearing for the firm identify him or herself and

7 introduce the principal lawyers who are going to be

8 participating.

9 I see, I think, someone from the United States

10 Trustee's Office, and I'll ask that that person do the

11 same, identify him or herself. I don't know yet if there

12 are any formal Committees, so I'll pass on that. If there

13 were an official committee of any kind appointed by the

14 United States Trustee, I would ask for representatives of

15 that Committee to just identify themselves.

16 I want to repeat again what I said; I don't mean

17 to be discourteous or to cut off people who want to be

18 heard otherwise, but I just cannot fit into the time frame

19 we're dealing with for a variety of reasons anything other

20 than what I've said a couple of time already. We're going

21 to deal with scheduling today and that's all.

22 On the subject on scheduling, I will simply

23 advise counsel that in the past for cases of this

24 magnitude -- as many of you know, I presided over the

25 earlier PG&E case -- but in other cases of some size also,

1  I have done and will do in this case, designate specific

2  days or times on my calendar for all the hearings that will

3  be coming before us, leaving aside extraordinarily lengthy

4  scheduled trial type hearings, but regular hearings will

5  not be on my regular monthly or weekly calendars, and in

6  the course of discussing scheduling with you all, I will

7  ask your views on how you want to do it.  It's my sense

8  that until this case settles down a little bit and I have a

9  better sense and some of you have as better sense of who

10  the lawyer participants are going to be, that we will set

11  aside blocks of time -- and again, I'll measure it in days

12  if that's appropriate, and it will be there on our

13  calendar.  I follow an open calendar procedure which means

14  parties wanting to appear in this case, either on a motion

15  for relief from stay or an adversary proceeding or a motion

16  or opposing a motion, will have it come up on what I'll

17  call the "designated PG&E calendar."  I will look to

18  counsel to give me suggestions on what would be the

19  sensible frequency of having that calendar, twice a month,

20  three times a month, once a week.  You know, you don't get

21  five days a week every week.  (Laughter.)

22        And I will for openers have a designated time

23  where we'll take all the matters that are PG&E related.  In

24  time, it might be appropriate to sort them out.  Again,

25  I'll make a statement for the benefit of perhaps not so

1  familiar counsel that if you file something that you want
2  the Court to hear that's PG&E related, and you go on what
3  is called my open calendar and you just pick a date, and it
4  happens to be the date we're doing Chapter 13, you won't
5  get heard, and you have to be mindful of my dedication of
6  our calendar to whatever number of days and times it must
7  be for PG&E purposes.  Again, we'll take it from there.

8         The last subject I want to cover before I turn
9  this over to the participating counsel is, I wasn't
10 kidding; these papers were filed for all of us except the
11 lawyers that filed it, minutes into this new day, and guess
12 what, some of us still try to sleep, and some of us come to
13 work.  I don't think Mr. Keller ever sleeps, this week, and
14 I didn't even get caught up with the documents, and by my
15 count, there are 17 different matters that the Debtors are
16 asking me to act on.  And I simply wouldn't and couldn't
17 act on them in this kind of a time frame because in
18 addition to trying to do all the preparations that we've
19 been doing with the staff and everyone else in the short
20 time to get to this hearing, I simply cannot get through
21 any of those 17 motions.  I know from my own experience
22 some of them are almost no brainers, but some of them are
23 big ticket items.

24         And so what I'm going to ask for when I call on
25 counsel is suggestions on how and when I should hear them.

1  Let me give you a preview and then let you be prepared to

2  respond to that.  The documents that were submitted by Mr.

3  Keller's office were very helpful and well organized, but

4  there was some mixing up of topics, and in my thinking, in

5  looking at those various motions, and again, I'll repeat, a

6  number of motions that the Debtors have filed do not call

7  for action today.  So guess what?  I'm not going to talk

8  about them today.  But the 17, by my count, do.  So there

9  are, by my count, six motions that PG&E wants -- and again,

10 I'm going to say PG&E meaning the Debtors -- want me to act

11 on.  I'll call one of them the joint administration motion,

12 another one the motion dealing with the creditor matrix,

13 another one dealing with the motion to extend the time to

14 file the schedules.

15       One of my favorites is the next one, the request

16 to file oversized briefs; what if I deny that? (Laughter.)

17 The next is to designate the responsible individual for the

18 Debtors, and the next one is to shorten time.  Well, the

19 motion to shorten time for today's hearing is essentially

20 moot because I acted on my own and issued the order.  But

21 in my mind, those five are almost routine and almost

22 automatically responded to or granted, unless someone

23 believes they shouldn't be.

24       Then the next category, there are six, as I read,

25 and I'm going to give shorthand names that seem to be

1  operational in some respect, mostly for the Utility, but

2  perhaps for the parent company, and they impact entities

3  that are in contract or in relationships with the Debtors.

4  My shorthand six names are the Exchange Operator, the

5  Operational Integrity Motion, the Lien Claimants Motion,

6  the Taxes Motion, the Customer Programs, and last but not

7  least, the Employee Wages.  And I think those should be

8  treated or lumped together in terms of how I should focus

9  on them and will do later.

10         Then a couple others are maybe routine, maybe

11  not, the Cash Management Motion, and the motion that I just

12  call Insurance.  Again, the lawyers who are putting this

13  altogether, they know what I'm referring to.  Because I

14  haven't studied them, I can't really comment or think about

15  them yet, and they may be as uncontroversial as some of the

16  first ones.  Then the Claims Agent Motion, I lumped it in

17  separately, not for any other reason that it's a topic

18  that's unique to significant sized bankruptcies, and I'm

19  mindful of a typical Claims Agent Motion, and again, how

20  many times do I have to tell you, I just haven't had a

21  chance to study that.

22         And then the final one, or two together, the DIP

23  Motion, which of course I would consider a big ticket item,

24  and the related motion to seal.  Again, for those of you

25  unfamiliar with our procedure, parties such as the Debtors

1  here have the right to ask permission to seal documents.

2  The documents are sealed when they ask permission to seal.

3  We don't invite people to file documents on the public

4  record and then ask to seal them.  But when I have an

5  opportunity to consider the request and consider any

6  opposition to the motion to seal, if I'm satisfied, I will

7  then grant the motion, and that will leave the document

8  that has been tendered under seal and cannot be examined by

9  the public or parties in interest unless there's a proper

10 procedure.  So here's my thinking on this, and again, I

11 will move to a different approach if I'm persuaded that I

12 should.

13         I know from my own experience lawyers who file

14 first-day motions -- I know them well -- and expect them to

15 be granted instantly.  I don't do it that way, and these

16 motions were filed as I told you 14 hours ago, and I'm not

17 going to act on them instantly.  And so my tentative

18 thinking is to schedule a hearing perhaps two days from now

19 on Thursday, and I would give any party who wants to be

20 heard the opportunity to just simply file an objection

21 prior to the hearing on the following categories, the

22 Administrative Motion, the Cash Management Motions --

23 excuse me -- the Administrative Style Motions, the Cash

24 Management Motions, the Insurance Motion and the Claims

25 Agent Motion.  And if I have no objections at the hearing

1  that I would have on Thursday, I would grant them without a
2  whole lot of discussion, unless I have any independent
3  question that I would ask.

4          For the remaining ones, and in particular, what I
5  call the Operational Motions and the DIP Motion, which of
6  course is for financing, and the Motion to Seal, I would
7  require a party who objects, no later than the early
8  morning of the hearing to file a written objection so that
9  at least I and the Debtors' counsel can have a heads up on
10  that, and then at the hearing, I would either listen to
11  arguments and rule, or I would continue the matter if it
12  was necessary for further hearing or take the matter under
13  submission, or deal with it in some way.  Now that is my
14  way of kind of compromising the process that has to happen
15  quickly and early in a case of this magnitude, at the same
16  time, giving parties who are brand new to the case or those
17  who haven't even had a chance to prepare for this case.
18  Again, there may be somebody who is at the dentist this
19  morning until this afternoon to find out that he or she had
20  to represent a client's interest in an important matter in
21  this case.  And I am not prepared to shortcut at least a
22  little bit, you know, make due process mean something
23  rather than just sign a bunch of orders.

24          So that's a very long way of saying how I am
25  inclined to deal with these various motions and the other

1  motions.  The Debtors identified at least three in their

2  binder of papers, but said they are not for purposes of

3  today's hearing, so I'll just assume that Debtors' counsel

4  will be setting those on some sort of a schedule.  And of

5  course, there already is an adversary proceeding on file,

6  and there may be others.  Those will just come on before me

7  on the regular schedule.

8       So with that, I guess I'm ready to listen for a

9  while, and I'll call on the principal Debtors' counsel to

10  first introduce him or herself and co-counsel, and then

11  I'll hear from the U.S. Trustee, and as I say, if there is

12  a formal Committee in place, I'll call on that entity and

13  then I will hear what people have to say about my proposed

14  scheduling for dealing with these matters.  I've warned

15  everybody that I'm going to be required to conclude this

16  hearing by 3:30, so we've got plenty of time.  Mr. Keller,

17  do you have the nod here as local counsel?

18       MR. KELLER: Yes, Your Honor.

19       THE COURT: You're a multi-person player here.

20       MR. KELLER: I am the front end of a very big and

21  impressive team.

22       THE COURT: I couldn't agree more.

23       MR. KELLER:  Your Honor, my name is Tobias

24  Keller.  I'm with Keller and Benvenutti.  We're local

25  counsel to both, as Your Honor noted, PG&E Corporation and

1   Pacific Gas and Electric Company.  In the courtroom with us

2   today is general counsel with PG&E, Janet Loduca.

3          MS. LODUCA: Good afternoon, Your Honor.

4          THE COURT: Good afternoon.  Thank you for coming.

5   I don't need -- I mean I'd like you to identify them, but I

6   don't need the waves.  I don't know her, but I will try to

7   be polite, but we would like to move forward, or it'll be

8   3:30 before we're finished.

9       (Laughter.)

10         MR. KELLER: Jason Wells who's also identified as

11  designated responsible individual.  He's our CFO.  With me

12  in the courtroom today are two law firms who have been

13  assisting the Debtors through this complex endeavor.  We

14  have filed a pro hac vice application for the District

15  Court --

16         THE COURT: Let me make a statement about that.

17  We are about in the 19th Century on how that works, and it's

18  a slow process, and so I will take any lawyer's word that

19  he or she has submitted the process for a pro hac vice.  So

20  you know, we don't have the ability to handle your money

21  for those things, and pro hac vice applications have to get

22  processed by the District Court Clerk's Office.  We

23  unfortunately have to do it the old fashioned way in paper

24  once we get the payment.  So it might be days before a

25  particular lawyer is cleared through that way, but you're

1  clear once you are on the deck here.  And we do thank you

2  for all the pro hac vice fees that come in to our

3  beleaguered fiscal program here, thanks to the shutdown.

4  (Laughter.)

5          MR. KELLER: We are familiar with the process.  We

6  have filed them in the District Court, and they should be

7  making their way down to Your Honor in due course.

8          THE COURT: Well, there will be lots more.

9          MR. KELLER: Okay.  In the courtroom today with us

10  from Weil Gotshal is lead Debtors' counsel, Steve Karotkin.

11  He will be addressing the --

12          MR. KAROTKIN: Good afternoon, Your Honor.

13          THE COURT: Good afternoon.  Thank you.

14          MR. KELLER: Also, Jessica Liou, Matt Goren, Ray

15  Schrock, Ted Tsekerides, and Stuart Goldring.

16          THE COURT: Thank you.  Welcome.

17          MR. KELLER: Also with us today from the law firm

18  of Cravath Swaine & Moore, are Paul Zumbro --

19          MR. ZUMBRO: Good afternoon, Your Honor.

20          THE COURT: Good afternoon, Mr. Zumbro.

21          MR. KELLER: -- and Kevin Orsini.

22          THE COURT: Good afternoon, Mr. Orsini.

23          MR. ORSINI: Good afternoon, Your Honor,

24          MR. KELLER: Your Honor, if I understood the order

25  of proceedings, I think I will stop at that point.  At the

1 point in which Your Honor is interested in having some

2 conversation about how we handle scheduling --

3         THE COURT: Sure.  I just wanted to make sure I

4 get the players who are likely to be heard today.  Again,

5 it will sound like I'm excluding people who I don't want to

6 hear from, but if the U.S. Trustee is going to take a

7 position here, I need input, and if there are any official

8 committees.  So is there someone from the U.S. Trustee?

9         MR. KELLER: Your Honor, before I cede the podium,

10 the point that I was going to make is before we get to the

11 scheduling, it might be helpful to take a brief break just

12 so that we can collect comments and then be more efficient.

13         THE COURT: Okay.  Sure.  Oh, someone I recognize.

14 Ms. Kelly.

15         MS. KELLY: Good afternoon, Your Honor, Lynette

16 Kelly on behalf of the U.S. Trustee.  Your Honor, as far as

17 the Committees Your Honor mentioned, of course, the U.S.

18 Trustee will be sending out packets, solicitation packets,

19 to creditors and also setting a formation meeting.

20         THE COURT: Well, that's normal, yeah, I

21 understand.  So you don't have a Committee that's surfaced

22 and identified itself, at least informally yet.

23         MS. KELLY: Not at the moment.  So that remains to

24 be seen.  As the Court mentioned, this was only filed in

25 the early hours of this morning, so anyone wishing to

1  contact the U.S. Trustee's Office may reach out to me, and
2  in the meantime, we will be proceeding as usual to solicit
3  interest from creditors and --

4        THE COURT: But I take it, Ms. Kelly, you are in a
5  position, if not today, shortly, to comment if necessary on
6  any of these other motions that have been brought.

7        MS. KELLY: Yes, Your Honor.  We are looking at
8  the motions now, so we're prepared to proceed on the
9  schedule Your Honor sets.

10        THE COURT: Well, but I want you to respond also
11  if the Debtors' representatives, you know, don't like my
12  schedule.  I'll make a decision, but I want to hear both
13  sides, and I guess there's no other side except to the
14  extent that an individual or a lawyer representing some
15  smaller group but not an official group doesn't like
16  something.  But again, it's just the scheduling issue, and
17  I'm scheduling it, I hope, principally in response to the
18  Debtors' motions.

19        MS. KELLY: Yes, Your Honor.

20        THE COURT: Okay.

21        MS. KELLY: The U.S. Trustee is likely to have
22  some positions on the substance of the matters and we'll
23  present those on the schedule that is set today.

24        THE COURT: Well, the point I was trying to make,
25  and I guess you got the message, it's on a very compressed

time, but if, under my time, if we come to what I call
Operational Motion No. 3, and you think it's an outrage or
a miscarriage of justice, you won't have had time to file a
25-page brief, but you certainly will have time to express
yourself and to say why, and I'll listen to your arguments,
and if I'm able to make a ruling, I'll make a ruling.  If I
need more help, I will do that.  Okay?

MS. KELLY: Yes, Your Honor.  And just to be
clear, the U.S. Trustee may have some positions within the
particular motions.  For example, Your Honor may set a
motion to be heard in two days.  There may be certain parts
of it that we might argue should be left until a later
time, so we want to reserve the right to make that part of
our objection, if we make one.

THE COURT: Of course.  And if time permits
between now and whenever, I hope you'll have an opportunity
to talk to the Debtors' representatives and see if there's
any way to, you know, parse out the non-controversial
portions and reserve the contentious or controversial ones.

MS. KELLY: Certainly, Your Honor.  Yes.  Thank
you.

THE COURT: Okay.  So Mr. Keller, you asked to
take a break.  I'm not sure we want to take too much of a
break.  You're talking about just take a pause or literally
old fashioned convenience break, because we have so many

1  people in two different rooms.

2  MR. KELLER: Just five minutes, Your Honor, to
3  collect the various attorneys.  That would be helpful, Your
4  Honor.

5  THE COURT: Okay.  I will go off the record and
6  leave the bench, and that means they're all free to talk
7  and yell at me and say whatever you want, and I'll be back
8  in about five minutes and we'll proceed from there.  Thank
9  you very much.

10  (Whereupon, a recess is taken at 1:59 p.m., and the
11  court is reconvened at 2:07 p.m.)

12  THE COURT: Please be seated.  I'll try to stay
13  closer to the microphone.  I've been warned that I was
14  going out of focus here for a moment, but I'll do my best.
15  All right.  Who's up?

16  MR. KAROTKIN: Good afternoon, Your Honor, Stephen
17  Karotkin, Weil Gotshal & Manges for the Debtors, and we
18  certainly appreciate your seeing us this afternoon.

19  THE COURT: My pleasure.  I wouldn't think of
20  turning you away. (Laughter) I have nothing else to do this
21  afternoon.

22  MR. KAROTKIN: Neither do we, for that matter.  I
23  just want to make sure that we understand what you're
24  suggesting, and I think that you neglected to mention one
25  of the motions, which was the NOL.

1  THE COURT: Oh.  You know, I think I just gave it
2  a different name, because I counted them.  But what -- no,
3  you think I left it off, but I put it back on.
4  MR. KAROTKIN: Okay.
5  THE COURT: I think I have that down on sort of
6  what I call the Operational category.  This not a perfect
7  calculation, but --
8  MR. KAROTKIN: Okay.  All right.
9  THE COURT: I mean it's the one -- is that the one
10 where you want to get a ruling to limit the --
11 MR. KAROTKIN: The trading.
12 THE COURT:  -- the trading, yeah.
13 MR. KAROTKIN: Yes, sir.
14 THE COURT: Okay.  Yeah, I thought -- well, I got
15 it.
16 MR. KAROTKIN: Okay.  Thank you.  So just to make
17 sure we understand what you're suggesting, is that you
18 would -- your proposal was to hear everything on Thursday
19 just with different objections.
20 THE COURT: Well, let's take a simple one.  I mean
21 if somebody has an objection to joint administration or to
22 an oversized brief -- well, maybe I'd sustain the objection
23 to the oversized brief -- (Laughter), but we don't need
24 anything more than somebody to say it and somebody to say
25 it on the other side and go.  But if somebody has a

substantive objection to what I think is more substantive
or operational, I mean let's take the elephant in the room.
If somebody wants to object to the DIP motion, I mean I
can't -- I've got to give them an opportunity, I think, to
act, so I was just trying to break the universe down into
the typical administrative, the things that affect real
people, like employees, and I don't know enough about some
of the other terminology, but in reading just the
descriptions, they seem to be like that.  That's what I had
in mind.

          MR. KAROTKIN: But at the very least, everything
would be heard by Thursday.

          THE COURT: Yes, sir.

          MR. KAROTKIN: Okay.  I think with two exceptions,
that would be acceptable to the Debtors, and the two we're
concerned about, Your Honor, is the Cash Management Motion
because it's vitally important for the Cash Management
System to remain in place and to continue to operate
because we're afraid the banks won't honor checks or they
won't continue to process all of the funds and revenues
that come through the system, and I think that even as you
indicated, that's a fairly straightforward motion.  So
perhaps what might be acceptable to you, Your Honor, would
be to enter a bridge order approving that until Thursday's
hearing.

1    THE COURT: Okay.  Go ahead.  Ms. Kelly, you've

2  approved a lot of cash management orders that are somewhat

3  smaller in scope.  It's certainly standard stuff, though,

4  right?

5    MS. KELLY: Well, Your Honor, we do have certain

6  issues with the cash management order such as the -- using

7  certain depositories that are not the authorized

8  depositories.  There are issues in there about departure

9  from the investment rules under the Code.  There are

10  substantive issues in there that the U.S. Trustee needs to

11  speak to counsel about and perhaps object to and be heard

12  on.  So --

13    THE COURT: But a bridge order would maintain --

14  would allow the daily things to go forward, right?

15    MR. KAROTKIN: Yes.

16    THE COURT: Yeah, okay.  Again, that sounds okay

17  to me.  And what's the other one?

18    MR. KAROTKIN: The other one is the Exchange

19  Operators.

20    THE COURT: Okay.  See, that's one of those ones

21  where I don't know enough about it, and Mr. Keller's

22  binders were helpful, but the numbers on the binder don't

23  match exactly the numbers on the docket, and I was a little

24  confused because the dockets of the two Debtors, I think

25  the numbers are off a little bit.  So in my --

1    MR. KAROTKIN: I have it listed as Docket 15 on --

2    THE COURT: Well, give me the binder number it is.

3  It's 6; isn't it, the Exchange Operator Motion?

4    MR. KAROTKIN: Yes, sir.

5    THE COURT: Yeah.  And what do you want to do

6  about that?

7    MR. KAROTKIN: The people with whom we transact

8  who are reflected in that motion basically supply a very,

9  very substantial portion of the gas and electricity used to

10 operate the system, and we really can't afford to disrupt

11 that.

12   THE COURT: We can't let the Bankruptcy Court

13 lights go out.

14   MR. KAROTKIN: Even with the air conditioning the

15 way it is here, we can't afford to disrupt that, so we

16 would --

17   THE COURT: This is a negotiating tactic.

18 (Laughter.)  Turn up the heat and get some more

19 reasonable --

20   MR. KAROTKIN: Well, you brought it up, sir,

21 before I could.  We would ask again if you could enter a

22 bridge order for that as well.  That would be -- we would

23 appreciate that.

24   THE COURT: So a bridge order would mean that the

25 people that are doing business -- I mean this to me is -- I

1  guess I was right by calling it an Operational Motion.

2          MR. KAROTKIN: Totally.

3          THE COURT: It's operational.  Well, I think I had

4  a little recollection from what we call PG&E One.  So a

5  bridge order would mean business as usual.  If the U.S.

6  Trustee or somebody else has some problem, we can zero in

7  on something.

8          MR. KAROTKIN: We can raise it on Thursday.

9          THE COURT: Yeah, okay.  Well, I'm certainly --

10  Ms. Kelly, are you familiar with that enough to have a

11  concern?

12          MS. KELLY: Your Honor, I really can't comment on

13  that one at the moment, but if it's a bridge order until

14  Thursday, we'll be prepared by Thursday with our position.

15          THE COURT: Okay.  I will depart from my prior

16  order by at least looking in the courtroom, and I realize

17  there are people next-door, but I'll deal with that.  Is

18  there anyone in the courtroom that would oppose to even a

19  bridge order for the Cash Management Motion and the

20  Exchange Operator Motion?  Yes, sir.  Just come over and be

21  near a microphone.  Thank you.  And we need to get your

22  name.

23          MR. HANSEN: Yes, Your Honor.  Kris Hansen with

24  Strook and Strook and Lavan on behalf of JP Morgan Chase as

25  proposed administrative agent with respect to the DIP loan.

1  I just wanted to point out that with respect to cash

2  management and the Exchange Motion, both of them cross

3  effectively with the DIP motion because there are requests

4  from both that deal with the imposition of liens either on

5  a pari or carved out basis from the DIP liens.  So I just,

6  from a reservation of rights perspective –- obviously

7  you'll take that up in the context of the DIP motion, but I

8  didn't want it to go without saying.  We of course want the

9  Debtors to continue operations on a business-as-usual

10 basis, and the agent doesn't interfere from any

11 perspective.  But –-

12         THE COURT: Yeah, okay.

13         MR. HANSEN:  –- we just wanted to make the Court

14 aware of that issue.

15         THE COURT: Yeah.  And again, because I didn't

16 have a chance to drill down on the motion, just looking at

17 the title, I didn't see something that jumped out as a DIP

18 loan type thing, except there is a 364 in the title but –-

19 okay.  Well, you're just reserving your rights.  So that's

20 fine.  Mr. Karotkin, unless somebody wants to complain and

21 they're over in the other courtroom, I'll tell you I'll

22 approve the, you know, the bridge provision for the two

23 that you described.  I don't know that we need a formal

24 order unless you think we do.

25         MR. KAROTKIN: I think you can so order it on the

1    record.

2              THE COURT: Yeah.

3              MR. KAROTKIN: That should be fine.

4              THE COURT: I mean, again, you're not familiar

5    with our procedures, but --

6              MR. KAROTKIN: I'm being overruled.

7              THE COURT: (Laughing) I want to explain something

8    so you know about our procedures.  My Courtroom Deputy

9    typically does record something on the docket, so --

10             MR. KAROTKIN: I'm sorry to interrupt.  I think we

11   would need on the Cash Management Motion something to be

12   able to deliver to the banks.

13             THE COURT: A real order to give to a lender?

14             MR. KAROTKIN: Yes.

15             THE COURT: Okay.  Well, I'll finish my speech,

16   but I'll give you your order.  (Laughter.)  When I approve

17   things that aren't that critical, I frequently just have my

18   Courtroom Deputy make it reflected on the docket that it

19   was ordered or approved and then again, I'm sure you do

20   that in other courts.  So it's on the public docket and

21   it's simply on the audio docket also.  So I will orally

22   approve the bridge order concept for the Cash Management

23   Motion and the Exchange Operator Motion, but I'll also

24   expect you to upload an order today that memorializes the

25   bridge order for the Cash Management one.  That will be

signed, you know, some time today.  I think we'll probably

get it docketed today, but at least signed.  And once it's

docketed, you'll get your copy and your counsel on the

Notice of Electronic Filing.

MR. KAROTKIN: Thank you, sir.

THE COURT: Okay.

MR. KAROTKIN: And with that, we're happy with

your scheduling.

THE COURT: Well, okay.  So let's talk about

scheduling for now and for the future.  I've said to

others, I don't punish out of town counsel, so if you're

here from New York, I'm not going to set hearings at 4:00

o'clock on a Friday -- routinely.

MR. KAROTKIN: We appreciate that, sir.

THE COURT: You know, or maybe some other time on

a Monday morning right after the Super Bowl, but what do

you want -- and again, I'm focusing on you, but I suspect a

number of your brothers and sisters will be carrying some

of the water here too.  Am I to assume there is not going

to be separate counsel, at least for now for the Utility?

MR. KAROTKIN: That's correct.

THE COURT: Okay.

MR. KAROTKIN: The parent company is a holding

company and its asset is just --

THE COURT: No, I know.  I know it is, but they

1  had separate counsel in the prior case, but they went into

2  bankruptcy --

3          MR. KAROTKIN: Back then it was a different

4  operation.

5          THE COURT: Well, they weren't in bankruptcy

6  either, the parent.  That might have made a difference too.

7          MR. KAROTKIN: Yes.

8          THE COURT: So when would you like to sort of

9  be -- forget -- don't worry about -- I mean let's not talk

10  about two days from now.  Let's talk about two weeks from

11  now or two months from now, and it's not in concrete.  We

12  can change it, but I have no way of measuring what --

13  particularly with the fire claims, you know, whether we're

14  going to have two adversary proceedings -- I mean, two

15  motions for relief from stay a week or 20 a week or 50 a

16  week.  And so therefore whatever I do, you know, it's

17  subject to change.  So you tell me.

18          MR. KAROTKIN: I would suggest at the outset if we

19  could get two days a month like two weeks apart to start.

20          THE COURT: Okay.

21          MR. KAROTKIN: Every two weeks.

22          THE COURT: Every two weeks.

23          MR. KAROTKIN: Yes, sir.

24          THE COURT: Just block out two days, and what days

25  would you like?

1    MR. KAROTKIN: Tuesdays and Wednesdays.

2    (Laughter)

3    THE COURT: I think we might have to tweak it a

4    little bit on some Wednesdays, but I don't know why I can't

5    accommodate you, and then --

6    MR. KAROTKIN: Your Honor, we're more than happy

7    to accommodate your schedule.

8    THE COURT: Well, look, there are a lot of people

9    in the room and elsewhere.  There's just one me and my

10   staff, and we live here.  So let me do this.  The real

11   mystery here is when should we start, and, you know, if

12   your prediction for the cash motion -- I mean the other

13   first-day motions is good and we get them all pinned down

14   in two days, maybe we should start somewhere around

15   February 12th, like the second and the fourth Tuesday and

16   Wednesday?

17   MR. KAROTKIN: That sounds good.

18   THE COURT: And what we'll do, Ms. Parada, do you

19   see any -- you know, just based upon our maintaining the

20   calendars, is there anything -- (the Court and Courtroom

21   Deputy converse) but the calendar there -- no, but that was

22   on the other one.  Oh, yeah, but I may be passing that off

23   on someone else.  So let's give them say a tentative, like

24   the dates for all three months.  So February would be 12th

25   and 26th?   No, see, the Chapter 13 is on the -- oh, that's

1 right. He said Wednesday. Excuse me. Okay. So 12-13 and

2 26-27, right?

3         COURTROOM DEPUTY: Yes, Your Honor.

4         THE COURT: And let's go with –- give me the same

5 dates on your calendar for March and then April.

6         COURTROOM DEPUTY: Yes, the 12th and the 13th and

7 the 26th and 27th.

8         THE COURT: Oh, the same dates. Of course,

9 February and March; they always do that. And how about for

10 April?

11         COURTROOM DEPUTY: The 9th and the 10th, and 23rd and

12 24th.

13         THE COURT: Okay. So Mr. Karotkin, you're the

14 point man here. Do those sound right for you?

15         MR. KAROTKIN: They do, Your Honor, and actually

16 I'm hopeful as we move into this case, perhaps we can have

17 fewer hearings.

18         THE COURT: Well, and again, we don't need six

19 lawyers to come out from New York.

20         MR. KAROTKIN: That's for sure.

21         THE COURT: I invite telephonic appearances for

22 lots of things. And so I don't know what your experience

23 is in other courts. I'm a great fan of telephonic

24 appearance. We don't have the ability for too much video,

25 unless we send you to Santa Rosa. You can go to Santa Rosa

1  and we can video you back in here.  Okay.  Then what we

2  will post on the Court's website for calendars is that

3  those days -- I'll repeat them -- February 12 and 13, 26,

4  27; March, the same dates, 12 and 13, and 26 and 27; and

5  April 9, 10, and -- what did I day --

6           MR. KAROTKIN: 23-24.

7           THE COURT: -- 23-24.  Those are going to be

8  designated PG&E days, and if anybody files a motion,

9  whether it be an emergency motion or an open calendar

10 regular motion, counsel should be expected to pick those

11 dates.  Now obviously if somebody wants to be heard

12 quickly, you know, on February 12th, it might require an

13 order shortening time.  But again, I don't want to get down

14 into the details.  Experienced lawyers know how to do that,

15 and inexperienced lawyers will -- we'll work them over.

16 (Laughter.)

17          And then maybe in a couple of hearings, I'll have

18 a conversation with you or whoever has got the watch for

19 moving the dates out.  Again, nothing is in concrete, and

20 if there's something that has to be heard at some other

21 time, on an emergency basis, we'll do it from there.  So

22 now let's go back to this week.  Yeah, Mr. Karotkin, we

23 should probably reserve the day.

24          MR. KAROTKIN: Yes, sir.

25          THE COURT: So my typical day starts with a 9:30

1   calendar, but I can make it a little later, and –-

2          MR. KAROTKIN: 9:30 is fine with us, Your Honor.

3          THE COURT: Okay.  Then what we'll probably do is

4   on all of those days we'll start at 9:30 and we'll

5   anticipate a break.  Typically I like to break at 12:30 to

6   1:30, and we have gourmet dining on the second floor in

7   this building, and if you venture outside, we have gourmet

8   dining elsewhere. (Laughter) So we will post that those are

9   the dates and times, and I'll work with my Courtroom

10  Deputy.  We'll figure out whether we're going to pencil in

11  the specifics, but what you need to understand is that if a

12  lawyer wants to file a motion for relief from stay or a

13  motion to compel assumption or rejection or, you know, any

14  of a gazillion other options, the lawyer will be told that

15  our rules have dates and times.  Pick the date and set it

16  for hearing, and off you go.

17         MR. KAROTKIN: Very good.

18         THE COURT: Okay.  All right.  So let's get back

19  to two days from now.  I don't know, and I don't pretend to

20  know how many or what of the motions are going to be at all

21  controversial.  Ms. Kelly expressed some concerns about a

22  couple of things I can anticipate.  DIP motions tend to be

23  controversial, right?  But beyond that, do you have any

24  clue as to which of these might attract some attention from

25  your opposition?

1          MR. KAROTKIN: I actually do, Your Honor.

2          THE COURT: Okay.

3          MR. KAROTKIN: And first of all, there are various

4     ad hoc groups that have already formed, and of course, Mr.

5     Kornberg from the CPUC is here today.

6          THE COURT: I didn't see him.  Another veteran.

7     We're going to have a reunion of the veterans.

8          MR. KAROTKIN: And I think it's fair to say

9     that -- and I think you noted that the motions to be filed

10    are fairly conventional, not different from what's been

11    filed in other cases.  Obviously the numbers are bigger.

12         THE COURT: A little larger.

13         MR. KAROTKIN: A lot larger, but again, to be

14    expected with a company with 24,000 employees, 16 million

15    customers.  So there are reasons for the numbers --

16         THE COURT: I understand.

17         MR. KAROTKIN: -- and I think that counsel for

18    some of the parties who have seen the motions will stand up

19    here today and say they have reviewed them, and they have

20    no objection.  I think we tried to be extremely careful to

21    tailor the relief we were seeking to what was needed to

22    facilitate a smooth transition into Chapter 11 and to

23    maintain the integrity of the system and make sure that

24    utility service was being provided to all the customers.

25    So I'm confident that you will not see anything in these

1  motions unusual, other than the numbers.

2  THE COURT: Promise?  No general releases?  No

3  Indemnity Agreements?

4  (Laughter.)

5  MR. KAROTKIN: No indemnity, no general –- and I

6  will point out –-

7  THE COURT: No waiver of all attorney's fee

8  objections?

9  MR. KAROTKIN: No, sir.  And I will point out,

10  Your Honor, that there is no request to pay supplemental

11  pension benefits to retired employees –-

12  THE COURT: Yeah, I saw that.

13  MR. KAROTKIN: –- and no request to pay deferred

14  compensation to retired employees, no keep.  As I say, we

15  tried to be pretty conservative.

16  THE COURT: Well, look, but I think in fairness to

17  you, you and I –- again, I haven't met you before, but

18  you're not here on your first case, nor am I, and I doubt

19  we're going to attract a lot of attention on a motion to

20  file an oversized brief.  However, whether it be, you know,

21  a DIP motion or something else, if we have a serious

22  objection, I am not going to do it on the fly, and so we

23  might very well have to have a continued hearing or, you

24  know, something.  We might go to Friday.  We might do

25  whatever we have to do, and I want to make sure that the

opposing counsel of opposing people understand this is a --
the Court is not a, you know -- what's the word I want -- I
mean it's not just set up for you and your clients. We're
going to make --

MR. KAROTKIN: Absolutely.

THE COURT: -- it the way we have to do it. And
I didn't mean to imply that you assumed otherwise. So I
think what we ought to do then is have -- well, I said, my
suggestion would be if somebody shows up on Thursday
morning, they at least would have to have filed an
objection to one of these administrative things or the
other ones I named, and I'll make sure we're clear; there
was the administrative, what I call the category of the
administrative ones, the cash management one, the insurance
one, and the claims agent. Anything else, and more
particularly those six categories that I called operational
and the DIP motion and the motion to seal, they have to at
least file -- I said tomorrow right, or did I say Thursday
morning?

MR. KAROTKIN: Thursday morning, Your Honor.

THE COURT: Thursday morning. They have to file a
brief that lays out what it is. Again, I don't need a 25-
page brief, but I've got to have an explanation of why the
objecting party believes that it's wrong or improper or
whatever and gives you at least a chance orally to respond.

1  Please don't get a brief at 8:00 o'clock from your opponent

2  and file a written brief at 11:00 o'clock. I can't do it

3  all at once. So should we try it again at 1:30 or do you

4  want me to try something in the late morning and maybe take

5  a break if we have to. It's up to you. You tell me -- you

6  know better about the --

7         MR. KAROTKIN: I think that we will be prepared to

8  proceed at 9:30 on Thursday morning.

9         THE COURT: Okay. 9:30. All right. Then that

10 will be the plan. We will reconvene and invite anyone to

11 follow the same procedure. Unfortunately, we don't have

12 that ability to do otherwise. You should know, we

13 considered trying to move this whole operation to one of

14 the big courts upstairs that the District Court operates

15 in. For other reasons, it was not going to work. So we

16 we'll do this again here. If we have overflow, it'll be in

17 Judge Blumenstiel's courtroom next-door on the video, and I

18 will -- well, I'd like to do one other thing when we start

19 on Thursday. I'd like the equivalent of an opening

20 statement from your side.

21        MR. KAROTKIN: Sure.

22        THE COURT: Tell me, but tell the audience what is

23 the -- not the details, but I mean in a short summary, the

24 game plan that the Debtors can be public about and explain

25 what they're up to. You will get your time outside the

1  courtroom to deal with them in the press room or the media

2  or otherwise, and I will also give members of the public or

3  counsel who are not operating for their own clients or

4  groups an opportunity just to be heard.  It doesn't have to

5  be, you know, specifically in response to the motion; it

6  will just be an opportunity to get stuff off their chests.

7  I can't solve all their problems, but I can listen to them.

8  Okay?

9  MR. KAROTKIN: Sure. My colleague, Mr. Tsekerides

10  wants to address the adversary proceeding --

11  THE COURT: Yes, sir.  Oh, I didn't know there was

12  any action on the adversary proceeding.

13  MR. TSEKERIDES: Good afternoon, Your Honor, Ted

14  Tsekerides from Weil Gotshal on behalf of the Debtors.  At

15  this point, it's still a scheduling issue.  We had to call

16  it for today.  So this is the adversary proceeding against

17  FERC.

18  THE COURT: Yeah, I know you filed it, but I

19  didn't -- you didn't ask for a temporary injunction.

20  MR. TSEKERIDES: We didn't ask for a TRO, but we

21  did file a PI.

22  THE COURT: Yeah, I know that.

23  MR. TSEKERIDES: And so we were trying to work out

24  a schedule this morning, and one of the issues is FERC

25  issued an order prior to -- pre-petition -- and I'm not a

1 FERC lawyer, but from what I understand, under the FERC

2 rules, they claim that we have to file a notice of re-

3 hearing by the 25th of February.  Now we don't think we need

4 to be there; we think we need to be here.

5 　　　　　THE COURT: Doesn't the Bankruptcy Code give you

6 any break then?

7 　　　　　MR. TSEKERIDES: We think the Bankruptcy Code

8 under 108 gives us that break but they didn't seem to agree

9 with us, so we have some options.  We don't need to discuss

10 them in detail today, but I did want to mention this.  We

11 may need to file something tomorrow, but I'd like to bring

12 this up on Thursday if we could, because we either need to

13 have that PI heard by the 25th or some relief from the Court

14 finding that 108 gives us some more time to do a more

15 reasonable schedule.

16 　　　　　THE COURT: Well, I mean -- of course, I don't

17 know the underlying merits here, but if we have an

18 adversary proceeding, I tend to follow the strict rules,

19 like a TRO type of thing, and a preliminary injunction, you

20 know, we're dealing with more time.  So tell me again when

21 you think the FERC deadline runs?

22 　　　　　MR. TSEKERIDES: Well, from what I understand,

23 it's February 25th.

24 　　　　　THE COURT: Oh, February, okay.

25 　　　　　MR. TSEKERIDES: Yeah.  And the Local Rules, from

1 what I understand from conferring with counsel, that we

2 would have on a motion for PI 28 days which would put us

3 just past the 25th.

4     THE COURT: Yeah, but I'm also amenable to

5 shortening those times too, and maybe FERC would be willing

6 to -- is the deadline for FERC statutory or is it something

7 that they can play with --

8     MR. TSEKERIDES: Well, they say it's statutory,

9 but --

10     THE COURT: Okay.

11     MR. TSEKERIDES: -- we don't have to get into

12 that. I think 108 still applies; we don't need to get into

13 that, but they claim that --

14     THE COURT: Well, I think what I would say is that

15 you need to make a call on whether you need to go by way of

16 a preliminary injunction if -- or you can try a preliminary

17 injunction, but you're going to have to request shortening

18 time. And again, we -- you know, I've got to play by the

19 rules, and so if they won't shorten time, well I can be

20 asked to, but under our Local Rules, you've got to ask to

21 shorten time. They've got to tell you why they won't, and

22 if it sounds like they're just shortening it a little bit,

23 then so be it. Now let me just look back at my schedule.

24 So the schedule that we just outlined --

25     MR. TSEKERIDES: Right, the dates don't work

1  there.

2      THE COURT: The days don't work, right. So you

3  need to do it some other way.

4      MR. SACKS: Your Honor, I don't know if you can

5  hear me. This is Marc Sacks from the Department of

6  Justice. We're representing FERC in this matter. Can I be

7  heard briefly?

8      THE COURT: Yes, sir.

9      MR. SACKS: Thank you, Your Honor. The deadline

10 for seeking a hearing from FERC is 30 days. It is

11 statutory, 16 USC 825(L), subsection (a). And really the

12 proceeding there is entirely unrelated to what happens in

13 the adversary proceeding. I don't want to argue the point

14 now; we'll have time to talk about it later, but FERC

15 issued an order on its own jurisdiction, and if PG&E wants

16 to challenge that, there's a statutory procedure for doing

17 so which would end up in Circuit Court. Nothing this Court

18 could do in an adversary proceeding, injunction or

19 otherwise, could change or alter the obligation of PG&E if

20 they want to, to follow that judicial review process. So

21 the fact that there really is no urgency or exigent need

22 for any ruling of this Court before that February 25th

23 deadline, nothing this Court can do can change the

24 statutory obligation of PG&E to either make the revision

25 for a hearing or forego their appellate rights.

1           THE COURT: Well, but you heard counsel talk about

2 108.  I mean you're saying 108 doesn't work?

3           MR. SACKS: If they believe 108 gives them more

4 time, then they have every right to seek that guidance from

5 the Court or rely upon it themselves.  But we can't opine

6 as to whether or not 108 tolls or extends the statutory

7 deadline to a hearing.

8           THE COURT: Well, I think I'm going to have to let

9 the Debtor make a call as to how you want to proceed, and

10 if you believe a TRO would be better, then let's do it that

11 way.

12           MR. TSEKERIDES: And from what I understand, Your

13 Honor, if we made a motion to shorten time, that's another

14 option.  We can talk about it with local counsel, but the

15 motion to shorten time on the preliminary injunction seems

16 to also be a way to go.

17           THE COURT: Right.

18           MR. TSEKERIDES: And I just want to note for the

19 record, we do disagree with what counsel just said for

20 FERC.  We do think --

21           THE COURT: Yeah.  The only thing I would just

22 give you a heads up about is, if we shorten time a few days

23 and I hear -- you know, I set aside a couple of hours for,

24 you know, experienced, knowledgeable counsel to argue

25 something that I'm not every day familiar with, I may not

1  be able to make a ruling until your deadline runs anyway,

2  and so again, I don't want to give you advice, but I don't

3  want to fool you either.  I mean if I have to process the

4  arguments and figure out what to do and, you know,

5  meanwhile this deadline runs on you -- you know what to do.

6          MR. TSEKERIDES: Well, we'll pick dates that fit

7  that then.

8          THE COURT: You'll figure what to do.  Okay.

9          MR. TSEKERIDES: Okay, thank you, Your Honor.

10          THE COURT: I'll just assume something is going to

11  happen in the adversary proceeding that you filed but has

12  not been set on in some procedure.  You and counsel will

13  follow our procedure to get it --

14          MR. TSEKERIDES: The only point I wanted to make

15  is, if we did file a motion to shorten time, is that

16  something that could -- we would like that to be put on, on

17  Thursday if we could, so that at the end of the day when

18  you're doing with the first-day motions on the case in

19  chief --

20          THE COURT: Yeah, if your opponent agrees to it.

21  But we could do it by telephone, you know, Monday or

22  Tuesday or something like that.  That's the kind of thing

23  that I'm used to just doing quickly on the telephone

24  without making everybody come.

25          MR. TSEKERIDES: Okay.  That would be great.

1      THE COURT: Okay.

2      MR. TSEKERIDES: Very good.  Thank you, Your

3  Honor.

4      THE COURT: Okay.

5      COURTROOM DEPUTY: Excuse me, Your Honor.  Should

6  the Clerk's Office issue a summons for a meeting or –-

7      THE COURT: Oh, okay.  Well, yeah, we probably

8  should.  So again, I was just conferring with Ms. Parada,

9  when an adversary proceeding is filed, we typically have a

10  summons issued on a regular day.  We'll just have it set on

11  one of our PG&E dates.  But you won't be dealing with the

12  deadline for the summons; you'll be dealing with the

13  earlier deadline.

14      MR. TSEKERIDES: Okay.  Thank you.

15      THE COURT: All right.  Are we ready to call it a

16  night?

17      MR. KAROTKIN: Just one last thing, sir, Stephen

18  Karotkin again for the Debtors.

19      THE COURT: Yes, Mr. Karotkin.

20      MR. KAROTKIN: In order to give appropriate notice

21  of the hearing for Thursday, is it going to be at 9:30?

22      THE COURT: Oh, well, that's what you asked for,

23  right?

24      MR. KAROTKIN Yes, I just didn't –- I just wanted

25  to confirm for notice purposes so we can let people know.

1  THE COURT: Yeah, I'm just thinking for a minute.

2  Let me just think about this for a minute. What do you

3  intend to do as far as notice, except the electronic

4  notice. I mean who have you given notice to generally

5  already? You haven't given notice to the entire creditors'

6  list.

7  MR. KAROTKIN: No. No. But we've posted the

8  notice on the website, and we have our own --

9  THE COURT: Right. So all you do is -- but you

10  will also -- it'll also go electronically, so every

11  electronic registered user will get it.

12  MR. KAROTKIN: Yes.

13  THE COURT: And -- okay. So you'll post the

14  notice. You'll file the notice. It's just the notice of

15  continued hearing.

16  MR. KAROTKIN: And any objection -- is there an

17  objection deadline for Thursday, a written objection? It's

18  up to you, sir.

19  THE COURT: 5:00 p.m.

20  MR. KAROTKIN: Well, no. Thursday, the hearing is

21  in the morning.

22  THE COURT: You're right.

23  MR. KAROTKIN: But we'll go with objections

24  afterwards if it's okay with you.

25  (Laughter.)

1        THE COURT: Well, what if I rule against you?

2 Then you might have to object to my hearing. Hmm. Let me

3 think about that. Well, I mean you tell me, if we have a

4 hearing on Thursday; that's the 31st, and we do it at 9:30,

5 if I tell your opponent to file an objection before the

6 hearing, that's not going to give you much break. On the

7 other hand, I really can't do much -- I'd have to give

8 them -- essentially they have 24 hours to file their

9 notice, right?

10        MR. KAROTKIN: May I make a suggestion?

11        THE COURT: Yeah.

12        MR. KAROTKIN: How about if we move the hearing to

13 10:00 a.m. and objections are due by 8:00 a.m.

14        THE COURT: (Laughing). Only if I get chambers

15 copies and get to read them all, right? I'm only kidding.

16 Okay. The objections will be -- to be filed electronically

17 at 8:00 o'clock in the morning, California time, and the

18 hearing will be at 10:00 o'clock.

19        MR. KAROTKIN: Very good.

20        THE COURT: And we'll take it in the order that

21 we've talked about, and, you know, it might say, does

22 anybody have any objections and read off the admin list and

23 if I have any on my own, I'll let you know. Okay?

24        MR. KAROTKIN: Thank you, sir.

25        THE COURT: All right. Thank you everyone for

1  your time.  I look forward to seeing some of you on

2  Thursday.

3          (Whereupon, the proceedings are concluded at 2:40

4  p.m.)

5

6

7                    CERTIFICATE OF TRANSCRIBER

8

9          I certify that the foregoing is a correct

10 transcript from the digital sound recording of the

11 proceedings in the above-entitled matter.

12

13 DATED: February 1, 2019

14

15                    By:    /s/ Jo McCall_____

16

17

18

19

20

21

22

23

24

25