1                        UNITED STATES BANKRUPTCY COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3                           -oOo-

4  In Re:                  ) Case No. 19-30088-DM
                           ) Chapter 11

5  PG&E CORPORATION AND PACIFIC   )
    GAS AND ELECTRIC COMPANY      ) San Francisco, California

6                      ) Wednesday, February 13, 2019
                Debtor.  ) 1:00 PM

7  _____
                         MOTION OF DEBTORS PURSUANT TO

8                          11 U.S.C. SECTIONS 105(A),
                          363(B), AND 507 AND FED. R.

9                          BANKR. P. 6003 AND 6004 FOR
                          INTERIM AND FINAL AUTHORITY

10                        TO (I) PAY PRE-PETITION
                          WAGES, SALARIES, WITHHOLDING

11                        OBLIGATIONS, AND OTHER
                          COMPENSATION AND BENEFITS;

12                        (II) MAINTAIN EMPLOYEE
                          BENEFITS PROGRAMS; AND (III)

13                        PAY RELATED ADMINISTRATIVE
                          OBLIGATIONS (8)

14

15                  TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE DENNIS MONTALI

16           UNITED STATES BANKRUPTCY JUDGE

    APPEARANCES:

17  For the Debtor:         STEPHEN KAROTKIN, ESQ.
                          Weil, Gotshal & Manges LLP

18                      767 Fifth Avenue
                          New York, NY 10153

19                      (212)310-8000

20  For the Debtor:         JANE KIM, ESQ.
                          TOBIAS KELLER, ESQ.

21                      PETER J. BENVENUTTI, ESQ.
                          Keller & Benvenutti LLP

22                      650 California Street
                          Suite 1900

23                      San Francisco, CA 94108
                          (415)796-0709

24

25

eScribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
 1  For the Office of the        LYNETTE C. KELLY, ESQ.
    United States Trustee:       United States Department of
 2                               Justice
                                 Phillip J. Burton Federal Building
 3                               450 Golden Gate Avenue
                                 5th Floor
 4                               Suite #05-0153
                                 San Francisco, CA 94102
 5                               (415)252-2080

 6  For the Official             GREGORY A. BRAY, ESQ.
    Creditors' Committee:        Milbank, Tweed, Hadley & McCloy
 7                               LLP
                                 2029 Century Park East
 8                               33rd Floor
                                 Los Angeles, CA 90067
 9                               (424)386-4000

10

11

12

13

14

15

16

17  Court Recorder:              MONICA TARTAGLIA
                                 United States Bankruptcy
18                               Court
                                 450 Golden Gate Avenue
19                               16th Floor
                                 San Francisco, CA 94102
20
    Transcriber:                 SUSAN PATTERSON
21                               eScribers, LLC
                                 7227 N. 16th Street
22                               Suite #207
                                 Phoenix, AZ 85020
23                               (973)406-2250

24  Proceedings recorded by electronic sound recording;
    transcript provided by transcription service.
25
```

PG&E Corporation

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, FEBRUARY 13, 2019,

2                              1:01 PM

3                              -oOo-

4        (Call to order of the Court.)

5            THE COURT: (Audio begins mid-sentence) -- but rather

6    I'll ask counsel to appear at the podium and identify yourself,

7    and if you come back again, please do it again for the court

8    reporter.

9            Well, look who's in the first chair.

10           MR. BENVENUTTI:  Hello, Your Honor.

11           THE COURT:  Are you appearing first today Mr.

12   Benvenutti?

13           MR. BENVENUTTI:  Actually, I'm not, Your Honor.  I

14   just happen to have this seat.

15           THE COURT:  Oh, okay.  Whose got the watch?

16           MR. KAROTKIN:  Good afternoon, Your Honor.  Stephen

17   Karotkin, Weil, Gotshal & Manges for the debtors.

18           THE COURT:  Afternoon.  Good to see you.  Sorry about

19   the rain that we've laid on you here.

20           MR. KAROTKIN:  That's okay.  We have a motion on today

21   with respect to clarifying the wage order that was --

22           THE COURT:  Yeah.

23           MR. KAROTKIN:  -- entered by the Court.

24           THE COURT:  Well, it does more than that.  Right?

25           MR. KAROTKIN:  It does a little more than that, yes.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1       THE COURT:  Yeah.

2       MR. KAROTKIN:  We are asking Your Honor -- in

3   connection with the payment of compensation to certain

4   employees, there were inadvertently thirty employees who

5   were --

6       THE COURT:  Right.

7       MR. KAROTKIN:  -- over the cap.  I think the motion is

8   fairly self-explanatory.  All but three of those employees are

9   union-represented employees, and as we set forth in both Mr.

10  Boken's declaration and in the pleading, none are officers and

11  none are insiders.

12      THE COURT:  One of the -- well, I have two sort of

13  big-ticket questions about the motion.

14      The first one is at 6 o'clock last night, finally,

15  there was some evidentiary support for the motion.  And we've

16  got to have a better understanding as to when you're going

17  to -- in this case; again, this is not a run of the mill case,

18  as you know, with the number of people involved and the number

19  of parties.  I think I'm going to insist that the debtor do a

20  better job of providing the foundation for the facts.  And even

21  this document that was filed last night by the responsible

22  person, itself, is hearsay.  I mean, I realize for a motion of

23  this nature, we don't need the name of everybody in the

24  organization who knew the facts.  But maybe one responsible

25  employee of PG&E could have said -- someone in the employment

PG&E Corporation

1    department or somewhere could say this is what happened in the

2    records.  But instead, we have a third party -- and again, I

3    don't mean any criticism of the CRO, but you need to do a

4    better job of foundation and timing.

5          MR. KAROTKIN:  Okay.

6          THE COURT:  And I didn't mind, and I certainly do not

7    mind expediting a hearing, particularly to correct something

8    that was glitched.  I mean, if some checks bounced because the

9    banks didn't honor them, that's understandable, and it's not

10   fair to the employees to get held up with that.

11         But if there's a number of other significant payments

12   that should have been disclosed, then I'm wondering why are we

13   doing it on such short notice when we have an omnibus hearing

14   coming up, we have a committee that's now been designated.  I

15   don't know if they service; maybe you know more than I, but at

16   least it seemed to me that the debtors have to give me -- the

17   debtor's counsel has to make sure there's a foundation and a

18   timing.

19         Now, that being said, I guess I should ask, are there

20   any objections?

21         MR. KAROTKIN:  Well, let me try to address a couple of

22   your points.

23         THE COURT:  Okay.

24         MR. KAROTKIN:  And I apologize for the late

25   declaration.  We really did not anticipate -- and this is not a

PG&E Corporation

1    good excuse -- that there would be any objections to this.  The

2    U.S. Trustee notified us yesterday that they have some issues.

3    So we submitted the declaration.

4         I will point out that Mr. Boken, who is the deputy

5    CRO, has been at the company for a few --

6         THE COURT:  Oh, I have no doubt about that.

7         MR. KAROTKIN:  -- a few months and does have personal

8    knowledge of all of this.

9         THE COURT:  But he didn't say that.

10        MR. KAROTKIN:  All right.

11        THE COURT:  What he said was what the debtors said.

12        MR. KAROTKIN:  Okay.

13        THE COURT:  I mean, again, I don't want to turn this

14   into Evidence 101.  But if he says what the debtor says, it's

15   hearsay.  I'm not going to deny the motion.  But why, for the

16   wage or the larger portion of the thing, why couldn't it wait

17   until the two weeks -- the omnibus hearing?

18        MR. KAROTKIN:  Let me try to address that.  There was

19   a lot of -- there were a lot of people who were completely

20   disconcerted by the fact that their checks bounced.  And these

21   are rank and file people.

22        THE COURT:  I know; that's no brainer.  Of course,

23   they should be corrected.

24        MR. KAROTKIN:  And that was the reason that we thought

25   it was appropriate to come on an emergency basis to get these

PG&E Corporation

1   people their checks.  A lot of these people have been working

2   up at the base camps where the fires were, inadvertently didn't

3   cash some old checks --

4           THE COURT:  I might have signed that order ex parte.

5           MR. KAROTKIN:  Okay.  So --

6           THE COURT:  Sure, somebody gets a check that doesn't

7   get honored because the bank or for some other reason.  But

8   that's different from saying we forgot a bunch of other

9   employees and we got a million-and-a-half or whatever the

10  figure is for relocation expenses.  Those didn't seem to be as

11  time sensitive to me.

12          MR. KAROTKIN:  Your point is well taken, sir.

13          THE COURT:  Well, I think that we had the first

14  hearing, and you and I know -- you lived through it more than I

15  did -- in a matter of hours.  Then we had a hearing in two

16  days, and then we had radio silence, and then all of a sudden

17  this motion comes in that corrects and fixes a necessary fix

18  for people who were victims of a mix-up on checks.  So as I

19  say, I'm not kidding; I would have corrected that if I could

20  have on my own.

21          But then we get this other thing with a combination of

22  setting the hearing on two or three days' notice, but then no

23  support for it until last night.  And I'm not -- let's not have

24  that happen again, that's all.

25          MR. KAROTKIN:  Yes, sir.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    THE COURT:  Now, is there anyone in court or on the

2  phone in the case that wants to be heard in opposition to what

3  we're calling the emergency motion or expedited motion that Mr.

4  Karotkin has summarized.

5    MR. KAROTKIN:  And just one thing.

6    THE COURT:  Yup, okay.

7    MR. KAROTKIN:  If you have any questions for Mr.

8  Boken --

9    THE COURT:  No, I don't.

10    MR. KAROTKIN:  -- he's in court, and he can address

11  that.

12    THE COURT:  I don't.  I understand the whole point.

13    MR. KAROTKIN:  Okay.

14    THE COURT:  And I'm not your opponent here.

15    MR. KAROTKIN:  Okay.  Thank you, sir.

16    THE COURT:  But make sure we get it -- if there're any

17  motions -- well, I understand -- my clerk told me an order for

18  shortened time came in today on something.  Are you aware of

19  that?

20    MR. KAROTKIN:  I'm not.

21    THE COURT:  Okay.  Well, check your inbox.

22  Something --

23    MR. KAROTKIN:  Maybe I should come here more often to

24  find out what's going on in the case.

25    THE COURT:  I want to raise one other thing with you,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1  Mr. Karotkin, and that's again something that happened at the

2  first day hearing.  And it didn't happen today, but I want to

3  make sure it doesn't happen again as we go forward in this

4  case.  And that is I don't want to get presented an order that

5  grants more relief than the motion asks for.  And that's

6  fundamental pleading.  If you sue somebody for a million

7  dollars, you can't get a default judgment for a million and one

8  dollar.  So in my mind, in a case like this, if the debtor says

9  I'd like to do the following things on an expedited basis, A,

10  B, and C, and we all go, fine, and then I'm told, well, E and F

11  are in the order, that's not okay.

12          MR. KAROTKIN:  No, of course not.

13          THE COURT:  But it happened; it happened last time.

14  And I signed an order.  I forget which one it was, and I

15  remember -- maybe, well, I don't remember what specifically it

16  was.  And I don't mind the proposed orders.  I think that's a

17  good practice that you're giving me and everybody else.  Again,

18  it's not just me; it's everyone else whose watching this case.

19  And so let's try to make sure that in the future that proposed

20  orders don't ask for more than the moving papers asked for.  So

21  we have --

22          MR. KAROTKIN:  I apologize for that.  I certainly was

23  not aware of that, and I apologize then.

24          THE COURT:  Don't apologize.  Let's just make sure it

25  doesn't happen again.

PG&E Corporation

1          MR. KAROTKIN:  Yes, sir.

2          THE COURT:  Okay.  So I don't hear any -- well, maybe

3    I do from the U.S. Trustee.  There's an issue on this -- what

4    did we call this -- confirming and correcting order?  Ms.

5    Kelly.

6          MS. KELLY:  Just briefly, Your Honor.  Your Honor,

7    obviously the motion does ask for some additional relief and is

8    not simply the final order on the prior motion.  We had spoken

9    with debtors' counsel yesterday and pointed out the lack of

10   evidence and asked for additional evidence, and the

11   declaration, as Your Honor notes has been filed.

12         We had asked for a list of the employees.  What is

13   attached to the declaration is a list of employee titles --

14         THE COURT:  Yeah, I saw that.

15         MS. KELLY:  -- without names of employees.  Now,

16   debtors' counsel said, well, there's a PII sort of issue of

17   personally identifiable information about people, but the thing

18   is, these are creditors.  If they're not on the creditors

19   matrix, they should be added to the creditors matrix.  These

20   are creditors, and they're asking to pay these pre-petition

21   creditors.  Okay, that's what the motion's about.  But they're

22   asking, for some reason, to pay them without saying who they

23   are.

24         I mean, there are several different people of the same

25   title on here.  There are several lineman; there are several of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    various different things.  Nobody knows which ones which.

2    Counsel may think they know which person's which.  They may

3    think they know that everybody agrees to these --

4            THE COURT:  Oh, I doubt that -- I doubt that the

5    principal counsel know, but somebody in the company must know.

6            MS. KELLY:  Well, somebody in the company may know who

7    they all are and have some basis for coming up with these

8    amounts, but this doesn't even really give notice to the

9    particular people:  here you are, you're on this motion, we're

10   proposing to pay you X amount.  I mean, they may think they are

11   owed some different amount.

12           There really isn't any reason for this nondisclosure,

13   and we've argued at the last hearing about what needs to be

14   disclosed and what doesn't.  But we just don't see why the

15   names of creditors need to be withheld from this and just the

16   titles given.  And so that is the one point.

17           The rest of it, they have addressed.  They filed the

18   declaration.  They've provided some evidence about it.  But we

19   think that is needlessly withheld here.

20           THE COURT:  Well, what do you think I should do about

21   it now?  I mean, after the fact, the names of each and every

22   one of these people?

23           MS. KELLY:  Well, Your Honor, I think it could be

24   supplemented so that it's clear who exactly is being paid here.

25   How do we know -- if there's another motion and they say, oh,

PG&E Corporation

1    we forgot a few backhoe operators and here's three more, how

2    can anyone distinguish who's who?  Who is being paid here?

3    It's just -- they're all being referred to in some way that

4    doesn't specifically identify anybody.

5              So I think for that reason, we would request a further

6    supplement, to the extent that there can be names added to the

7    chart.  And that would be the extent of it.

8              THE COURT:  Mr. Karotkin, what's your take on that?

9    You only have 24,000 employees.  You've got a list of them all.

10             MR. KAROTKIN:  My take on it is, I don't understand

11   why providing the names is relevant to the relief we're

12   seeking, nor do I think it's appropriate to have the names

13   filed in the courthouse reflecting how many --

14             THE COURT:  How do you feel about making the names

15   available to the U.S. Trustee?

16             MR. KAROTKIN:  On a confidential basis?

17             THE COURT:  Or perhaps to a creditors' committee.

18   Again, I don't think anybody cares about a lineman or a

19   troubleman or anyone else on this list not getting paid.  The

20   question is whether it's appropriate to publicize in any way,

21   you know, Joe Smith is being paid 2,000 for this.  I mean, I

22   would think that the U.S. Trustee or the creditors' committee

23   could have that information if they wanted it.

24             MR. KAROTKIN:  We're happy to provide it.  First of

25   all, the creditors' committee's counsel is here and they --

PG&E Corporation

1    THE COURT: Again, I don't know who the committee's

2 counsel is yet, so.

3    MR. KAROTKIN: Yeah, I doubt that they want it, but if

4 they want it, we're happy to provide it to them on a

5 confidential basis. And if the U.S. Trustee thinks it's so

6 critical to her analysis of this motion to have the names of

7 these people, we will provide it to her on a confidential

8 basis.

9    THE COURT: Well, let's try a different approach. At

10 some point, the company has to -- the utility, and -- well, no,

11 I guess both debtors -- have to complete their schedules, and

12 the schedules will name the creditors, won't they?

13    MR. KAROTKIN: It will not name these people if you

14 grant the relief, because they will have been paid.

15    THE COURT: Yeah, but the petition speaks as of the

16 petition date. So if on the petition date someone is owed a

17 hundred dollars or a million dollars, don't you think it should

18 be scheduled? You take the view that a post-petition payment

19 means the person isn't scheduled?

20    MR. KAROTKIN: Your Honor, I'm not accustomed to

21 listing 24,000 employees on schedules with respect to pre-

22 petition wages. But if that's required, then it will be

23 required.

24    THE COURT: Well, I'm just having a discussion --

25    MR. KAROTKIN: Yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1          THE COURT:  -- to see what people think on it.  I

2     mean, you don't disagree in a run of the mill case --

3          MR. KAROTKIN:  No, I don't at all.

4          THE COURT:  -- where there isn't a first day order.

5     And creditors have a right to be paid.  We obviously follow a

6     procedure here in this case and in lots of cases of paying the

7     priority and frequently finding more than the priority of

8     individuals.  You know, individuals.

9          MR. KAROTKIN:  Yes, for sure.

10          THE COURT:  We're not dealing with corporations, or

11     third parties, or anything else.  Well, Ms. Kelly --

12          MR. KAROTKIN:  No, you're absolutely right that the

13     schedule should speak as of the petition date.  You're

14     absolutely correct.

15          THE COURT:  Yeah, again, I mean, the thought of having

16     to look at a list of schedules of 24,000 people is a little bit

17     daunting, but what if the company is wrong, and they underpay

18     somebody, and that person believes that he or she is owed

19     10,000 dollars and they only get paid 4,000 dollars.  The

20     schedules are presumptively allowed --

21          MR. KAROTKIN:  Um-hum.

22          THE COURT:  -- or they -- alternatively, the person is

23     going to have to file for the claim.

24          MR. KAROTKIN:  Yes.  And of course we would --

25          THE COURT:  So one way or the other, it's got to get

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   resolved.

2          MR. KAROTKIN:  And of course, we would give notice to

3   all the employees to make sure that they have the opportunity

4   to file a claim, and to the extent, Your Honor, that the

5   schedules require that, we will comply -- certainly comply.

6          THE COURT:  Well, Ms. Kelly, that -- I mean, if they

7   comply with the schedules, then it seems to me that -- again,

8   let's use our hypothetical.  If the schedule says that Mr. X is

9   a creditor for 10,000 dollars, and post-petition, Mr. X was

10  paid 10,000 dollars pursuant to a first day order, both of

11  those facts are true, right?  And if Mr. X really believes that

12  he's owed 20,000 dollars, he has a remedy, that thing called

13  proof of claim.

14         MS. KELLY:  That's right, Your Honor.  The point is

15  really that -- just that, that they are creditors in the case

16  and that's really the part that was troubling.  They are

17  creditors in the case.  Their names are going to be disclosed;

18  they need to be in the schedules.  It seemed that the debtor

19  was not contemplating doing that, and so that is really the

20  U.S. Trustee's point now.  Yes, we'd like to see them on here

21  on this chart, as well.  If Your Honor is not inclined to grant

22  that, they at least need to be in the schedules.

23         THE COURT:  Well, I think there seems to be a

24  consensus there that they agreed they need to be in the

25  schedules.  Going back to the second question, what else do we

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    need at this point?  Do you care -- in other words, let's stick

2    with our hypothetical employee, Mr. X; in the schedules on page

3    318, he's the 21,000th creditor; he's listed as 10,000 dollars.

4    If subsequent to then, X has been paid that 10,000 dollars,

5    he's happy and that is a fact that is known.  And the third

6    fact or the third issue is that if Mr. X is actually owed

7    20,000 dollars, he can file a proof of claim.  You will see the

8    schedules, and everybody else will see them when they're filed.

9    Are you satisfied with that or do you need to know Mr. X's name

10   today matched up against his title?  I'd be inclined to say if

11   you need to know it, then I'd take the suggestion that it be

12   made confidentially to you to do with.  The question is, do you

13   want it?  Does that provide some administrative remedy that you

14   think is useful or not?

15           MS. KELLY:  The U.S. Trustee's point was really that

16   it should be part of the evidence in support of this motion,

17   that is should be part of the filed document.  And that was

18   what I came here today to say.

19           THE COURT:  Okay.

20           MS. KELLY:  Yes --

21           THE COURT:  Then I'm going to overrule that piece of

22   it because I don't think it's useful in a broad sense.  And if

23   you want to have it so that it's truthful -- I mean, that

24   sounds wrong; I'm assuming it's truthful to begin with.  If you

25   want to have it for some other reason to match it up and to see

PG&E Corporation

1    that the post-petition filing, such as today's motion, can be

2    verified, I think the debtor should make that available to you

3    on a confidential basis or to your office.  And if

4    hypothetically -- or not hypothetically -- if, in fact, the

5    creditors' committee wanted that information, they would be

6    entitled to it.  I would probably agree with Mr. Karotkin; they

7    probably don't want it.  But that's for another day.

8            And I guess the final thing, Mr. Karotkin, is whether

9    it's 24,000 creditors or 10 creditors, if the schedule shows

10   that they are petition-day creditors but then subsequent to the

11   petition they were paid, that ought to be established some way.

12           MR. KAROTKIN:  Yes, sir.

13           THE COURT:  Whether it's a schedule or a supplement to

14   the schedule or something.

15           MR. KAROTKIN:  Um-hum.  Yup, yes, sir.

16           THE COURT:  I'll leave that for another day, too.

17   Okay?

18           MR. KAROTKIN:  And I'll renew my offer.  If counsel

19   wants it on a confidential basis, we're more than happy to give

20   it to --

21           THE COURT:  Okay.

22           MR. KAROTKIN:  -- to counsel or to the committee.  And

23   again, we will be very careful to make sure the schedules

24   comply in all respects with what's required.

25           THE COURT:  Okay.

PG&E Corporation

1        MR. KAROTKIN:  And I apologize if I was suggesting

2   otherwise.  But no, we will surely do that.

3        THE COURT:  You don't have to apologize any more.

4        MR. KAROTKIN:  Okay.  Thank you, sir.

5        THE COURT:  Now, is there anything else we need to

6   address on the 1 o'clock calendar?

7        MR. BRAY:  Your Honor, it might be helpful for me to

8   make my appearance.  Gregory Bray, Milbank LLP; we're proposed

9   counsel for the official creditors' committee.

10        THE COURT:  My pleasure.

11        MR. BRAY:  Since there was reference to us, I thought

12   I should speak up.

13        THE COURT:  Can you just state your name again?

14        MR. BRAY:  Gregory Bray, B-R-A-Y, Your Honor.

15        THE COURT:  Okay.  Mr. Bray, welcome to the Court.

16        MR. BRAY:  Thank you.

17        THE COURT:  And you don't have a position on what you

18   just heard?

19        MR. BRAY:  We're happy -- if it will help with the

20   process, we're happy -- FTI was also -- has been hired as the

21   committee's financial advisor.  We can take a look at the names

22   if that will help.  We didn't see anything out of the ordinary

23   course with the motion.  But if that would help the situation,

24   we can certainly do that quickly.

25        THE COURT:  Is that our phone making a beep?  Okay.

PG&E Corporation

1          Thank you, Mr. Bray.

2          What else?  So I'll be getting papers for you for

3   appointment?

4          MR. BRAY:  Yes, Your Honor.  We should have filed a

5   notice of appearance --

6          THE COURT:  Well, you haven't had much time.

7          MR. BRAY:  It's true.  I believe the U.S. Trustee

8   filed the notice of appointment of the committee --

9          THE COURT:  It did.

10          MR. BRAY:  -- and the committee members --

11          THE COURT:  It did.

12          MR. BRAY:  -- and you've probably seen that.

13          THE COURT:  Of course.

14          MR. BRAY:  So I won't waste your time, then, going

15   through that.

16          THE COURT:  I've seen it.  I read the docket instantly

17   real time.

18          MR. BRAY:  Of course.

19          THE COURT:  24-7.  I can name all the members of the

20   committee.

21          MR. BRAY:  Thank you, Your Honor.

22          THE COURT:  And their counsel.  But you haven't

23   appeared.

24          All right.  So one other question, then, Mr. Karotkin.

25   We have noticed the follow-up on ten motions that are

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1  carryovers on the 27th, and you've made plus six more.  And are

2  those all going to be filed?  They're not filed yet, are they?

3  The new six, the six?  I got the notice.  I'm just -- I want to

4  get a preview of coming attractions between now and two weeks

5  from now.  Maybe Ms. Kim knows.

6          MR. KAROTKIN:  I don't think anything new was filed.

7  I think this is --

8          THE COURT:  Well, the agenda that Ms. Kim provided for

9  us said that there's six new items.  I just don't know what the

10  underlying --

11          MS. KIM:  I'm not sure about six.  I know that there

12  were three motions that were filed on the first day.

13          THE COURT:  Yeah, but they're not on your agenda for

14  the 27th.

15          MS. KIM:  They were on the agenda --

16          THE COURT:  Well, you've got -- look, I can't remember

17  if the six exactly.  But one of them is an ordinary course of

18  payments to professionals -- employment of professionals.  One

19  of them is --

20          MS. KIM:  Yes.

21          THE COURT:  -- retention of counsel.  One of them is

22  utilities -- well, I think it's a different utility motion.

23          MS. KIM:  The utilities, payments --

24          THE COURT:  Okay.

25          MS. KIM:  -- the reclamation procedures, 503(b)(9)

PG&E Corporation

1    procedures.

2            THE COURT:  Right.

3            MS. KIM:  The ordinary course professionals' interim

4    compensation, and I can't remember what the sixth one is.

5            MR. KAROTKIN:  The case management.

6            THE COURT:  Yeah.  Yeah, so --

7            MS. KIM:  Those have all been filed.

8            MR. KAROTKIN:  The case management.

9            MS. KIM:  Oh, the case management procedures --

10           THE COURT:  Well --

11           MS. KIM:  -- motion, those have all been filed.

12           THE COURT:  Well, that's what I'm not clear on.  Were

13   some of them just filed, though?

14           MS. KIM:  So --

15           THE COURT:  Because some of the -- three of them were

16   filed with the original --

17           MS. KIM:  Correct.  Three of them were filed on the

18   first day; three of them were filed on the 12th.  Wait, no,

19   sorry.

20           THE COURT:  Well, the 12th was yesterday.

21           MS. KIM:  The 6th -- February 6th.

22           THE COURT:  What did you say?

23           MS. KIM:  February 6th.

24           THE COURT:  Okay.  Well, I -- maybe I didn't see them

25   in the docket.  I just want to make sure they're there.  Again,

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1   it's not just for me; you and your staff have been very helpful

2   to us.  I'm talking about everybody else.  So whether it's the

3   formal committee or any other group, I just want to make sure

4   that -- and you're saying so -- that in the court docket, as of

5   now, that the matters that will be on for the 27th are there.

6           MS. KIM:  Yes, and the notice of hearing should have

7   put in their docket numbers.  So -- okay.

8           THE COURT:  Maybe it did.  I just haven't -- I really

9   haven't memorized --

10          MS. KIM:  Yup, um-hum.

11          THE COURT:  -- all those things.  But I --

12          MS. KIM:  Every matter that we have put in that notice

13  has been filed.

14          THE COURT:  What I did is I looked over your agenda,

15  and the agenda broke it down to the ten that carry over and the

16  six that are new.

17          MS. KIM:  Um-hum.

18          THE COURT:  And you clarified what I wasn't sure of as

19  to whether all six have been now filed, and you said yes.

20          MS. KIM:  Yes.

21          THE COURT:  That's good enough for me.  That's what I

22  needed to know.

23          MS. KIM:  Okay.

24          THE COURT:  Okay.  Then we'll take a five-minute break

25  until we go to the 1:30 calendar.  So you're welcome to, all of

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1  you here, to stay here or take a break, go out in the hall.

2  I'll be back in five minutes.

3          (Whereupon these proceedings were concluded at 1:25 PM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
1                    C E R T I F I C A T I O N

2

3    I, Susan Patterson, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ SUSAN PATTERSON, CDLT-174

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  February 14, 2019

16

17

18

19

20

21

22

23

24

25
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**absolutely (2)**
14:12,14
**accustomed (1)**
13:20
**Actually (2)**
3:13;16:6
**added (2)**
10:19;12:6
**additional (1)**
10:7,10
**address (4)**
5:21;6:18;8:10;18:6
**addressed (1)**
11:17
**administrative (1)**
16:13
**advisor (1)**
18:21
**afternoon (1)**
3:16,18
**again (1)**
3:7,7;4:17;5:2;6:13;
7:24;9:1,3,17,25;
12:18;13:1;14:15;15:7;
17:23;18:13;21:25
**against (1)**
16:10
**agenda (1)**
20:8,13,15;22:14,15
**agree (1)**
17:6
**agreed (1)**
15:24
**agrees (1)**
11:3
**allowed (1)**
14:20
**alternatively (1)**
14:22
**amount (2)**
11:10,11
**amounts (1)**
11:8
**analysis (1)**
13:6
**anticipate (1)**
5:25
**apologize (6)**
5:24;9:22,23,24;
18:1,3
**appear (1)**
3:6
**appearance (2)**
18:8;19:5
**appeared (1)**
19:23
**appearing (1)**
3:11
**appointment (2)**
19:3,8

**approach (1)**
13:9
**appropriate (3)**
6:25;12:12,20
**argued (1)**
11:13
**assuming (1)**
16:24
**attached (1)**
10:13
**attractions (1)**
20:4
**Audio (1)**
3:5
**available (2)**
12:15;17:2
**aware (2)**
8:18;9:23

## B

**back (3)**
3:7;15:25;23:2
**backhoe (1)**
12:1
**bank (1)**
7:7
**banks (1)**
5:9
**base (1)**
7:2
**basis (8)**
6:25;9:9;11:7;12:16;
13:5,8;17:3,19
**beep (1)**
18:25
**begin (1)**
16:24
**begins (1)**
3:5
**believes (2)**
14:18;15:11
**BENVENUTTI (3)**
3:10,12,13
**better (3)**
4:16,20;5:4
**big-ticket (1)**
4:13
**bit (1)**
14:16
**Boken (2)**
6:4;8:8
**Boken's (1)**
4:10
**both (3)**
4:9;13:11;15:10
**bounced (2)**
5:8;6:20
**brainer (1)**
6:22
**BRAY (16)**
18:7,8,11,14,14,15,
16,19;19:1,4,7,10,12,

14,18,21
**B-R-A-Y (1)**
18:14
**break (2)**
22:24;23:1
**briefly (1)**
10:6
**broad (1)**
16:22
**broke (1)**
22:15
**bunch (1)**
7:8

## C

**calendar (2)**
18:6;22:25
**CALIFORNIA (1)**
3:1
**Call (2)**
3:4;10:4
**called (1)**
15:12
**calling (1)**
8:3
**came (2)**
8:18;16:18
**camps (1)**
7:2
**can (9)**
8:10;12:2,6;16:7;
17:1;18:13,21,24;
19:19
**cap (1)**
4:7
**care (1)**
16:1
**careful (1)**
17:23
**cares (1)**
12:18
**carry (1)**
22:15
**carryovers (1)**
20:1
**case (14)**
4:17,17;8:2,24;9:4,8,
18;14:2,6;15:15,17;
21:5,8,9
**cases (1)**
14:6
**cash (1)**
7:3
**certain (1)**
4:3
**certainly (4)**
5:6;9:22;15:5;18:24
**chair (1)**
3:9
**chart (2)**
12:7;15:21
**check (2)**

7:6;8:21
**checks (5)**
5:8;6:20;7:1,3,18
**claim (4)**
14:23;15:4,13;16:7
**clarified (1)**
22:18
**clarifying (1)**
3:21
**clear (2)**
11:24;21:12
**clerk (1)**
8:17
**combination (1)**
7:21
**coming (3)**
5:14;11:7;20:4
**committee (10)**
5:14;12:17,22;17:5,
22;18:9;19:8,10,20;
22:3
**committee's (3)**
12:25;13:1;18:21
**company (5)**
6:5;11:5,6;13:10;
14:17
**compensation (2)**
4:3;21:4
**complete (1)**
13:11
**completely (1)**
6:19
**comply (4)**
15:5,5,7;17:24
**concluded (1)**
23:3
**confidential (5)**
12:16;13:5,7;17:3,19
**confidentially (1)**
16:12
**confirming (1)**
10:4
**connection (1)**
4:3
**consensus (1)**
15:24
**contemplating (1)**
15:19
**corporations (1)**
14:10
**corrected (2)**
6:23;7:19
**correcting (1)**
10:4
**corrects (1)**
7:17
**counsel (13)**
3:6;5:17;10:9,16;
11:2,5;12:25;13:2;
17:18,22;18:9;19:22;
20:21
**couple (1)**
5:21

**course (9)**
6:22;9:12;14:24;
15:2;18:23;19:13,18;
20:17;21:3
**Court (94)**
3:4,5,7,11,15,18,22,
23,24;4:1,6,12;5:6,23;
6:6,9,11,13,22;7:4,6,
13;8:1,1,6,9,10,12,14,
16,21,25;9:13,24;10:2,
14;11:4,20;12:8,14,17;
13:1,9,15,24;14:1,4,10,
15,22,25;15:6,23;
16:19,21;17:13,16,21,
25;18:3,5,10,13,15,15,
17,25;19:6,9,11,13,16,
19,22;20:8,13,16,21,
24;21:2,6,10,12,15,20,
22,24;22:4,8,11,14,18,
21,24
**courthouse (1)**
12:13
**creditor (2)**
15:9;16:3
**creditors (13)**
10:18,18,19,20,21;
11:15;13:12;14:5;
15:15,17;17:9,9,10
**creditors' (5)**
12:17,22,25;17:5;
18:9
**critical (1)**
13:6
**criticism (1)**
5:3
**CRO (2)**
5:3;6:5

## D

**date (3)**
13:16,16;14:13
**daunting (1)**
14:17
**day (7)**
9:2;14:4;15:10;17:7,
16;20:12;21:18
**days (1)**
7:16
**days' (1)**
7:22
**dealing (1)**
14:10
**debtor (5)**
4:19;6:14;9:8;15:18;
17:2
**debtors (4)**
3:17;5:16;6:11;
13:11
**debtors' (2)**
10:9,16
**debtor's (1)**
5:17

Case: 19-30088   Doc# 450   Filed: 02/14/19   Entered: 02/14/19 17:21:46   Page 25 of
29

**declaration (6)**
4:10;5:25;6:3;10:11,
13;11:18
**default (1)**
9:7
**deny (1)**
6:15
**department (1)**
5:1
**deputy (1)**
6:4
**designated (1)**
5:14
**different (6)**
7:8;10:24;11:1,11;
13:9;20:22
**disagree (1)**
14:2
**disclosed (3)**
5:12;11:14;15:17
**disconcerted (1)**
6:20
**discussion (1)**
13:24
**distinguish (1)**
12:2
**docket (4)**
19:16;21:25;22:4,7
**document (2)**
4:21;16:17
**dollar (1)**
9:8
**dollars (11)**
9:7;13:17,17;14:19,
19;15:9,10,12;16:3,4,7
**doubt (4)**
6:6;11:4,4;13:3
**down (1)**
22:15

**E**

**else (9)**
9:17,18;12:19;14:11;
15:25;16:8;18:5;19:2;
22:2
**emergency (2)**
6:25;8:3
**employee (3)**
4:25;10:13;16:2
**employees (11)**
4:4,4,8,9;5:10;7:9;
10:12,15;12:9;13:21;
15:3
**employment (2)**
4:25;20:18
**enough (1)**
22:21
**entered (1)**
3:23
**entitled (1)**
17:6
**established (1)**

**17:11**
**even (2)**
4:20;11:8
**everybody (5)**
4:23;9:17;11:3;16:8;
22:2
**everyone (1)**
9:18
**Evidence (5)**
6:14;10:10,10;11:18;
16:16
**evidentiary (1)**
4:15
**ex (1)**
7:4
**exactly (2)**
11:24;20:17
**excuse (1)**
6:1
**expedited (2)**
8:3;9:9
**expediting (1)**
5:7
**expenses (1)**
7:10
**extent (3)**
12:6,7;15:4

**F**

**fact (5)**
6:20;11:21;16:5,6;
17:4
**facts (3)**
4:20,24;15:11
**fair (1)**
5:10
**fairly (1)**
4:8
**FEBRUARY (3)**
3:1;21:21,23
**feel (1)**
12:14
**few (3)**
6:5,7;12:1
**figure (1)**
7:10
**file (4)**
6:21;14:23;15:4;
16:7
**filed (20)**
4:21;10:11;11:17;
12:13;16:8,17;19:4,8;
20:2,2,6,12;21:7,11,13,
16,17,18;22:13,19
**filing (1)**
17:1
**final (2)**
10:8;17:8
**finally (1)**
4:14
**financial (1)**
18:21

**find (1)**
8:24
**finding (1)**
14:7
**fine (1)**
9:10
**fires (1)**
7:2
**first (10)**
3:9,11;4:14;7:13;
9:2;12:24;14:4;15:10;
20:12;21:18
**five (1)**
23:2
**five-minute (1)**
22:24
**fix (1)**
7:17
**fixes (1)**
7:17
**follow (1)**
14:5
**following (1)**
9:9
**follow-up (1)**
19:25
**forget (1)**
9:14
**forgot (2)**
7:8;12:1
**formal (1)**
22:3
**forth (1)**
4:9
**forward (1)**
9:3
**foundation (3)**
4:20;5:4,17
**FRANCISCO (1)**
3:1
**frequently (1)**
14:7
**FTI (1)**
18:20
**fundamental (1)**
9:6
**further (1)**
12:5
**future (1)**
9:19

**G**

**gets (1)**
7:6
**given (1)**
11:16
**giving (1)**
9:17
**glitched (1)**
5:8
**Good (5)**
3:16,18;6:1;9:17;

22:21
**Gotshal (1)**
3:17
**grant (2)**
13:14;15:21
**grants (1)**
9:5
**Gregory (2)**
18:8,14
**group (1)**
22:3
**guess (3)**
5:19;13:11;17:8

**H**

**hall (1)**
23:1
**happen (5)**
3:14;7:24;9:2,3,25
**happened (4)**
5:1;9:1,13,13
**happy (6)**
12:24;13:4;16:5;
17:19;18:19,20
**hear (1)**
10:2
**heard (2)**
8:2;18:18
**hearing (9)**
5:7,13;6:17;7:14,15,
22;9:2;11:13;22:6
**hearsay (2)**
4:22;6:15
**held (1)**
5:10
**Hello (1)**
3:10
**help (3)**
18:19,22,23
**helpful (2)**
18:7;22:1
**here's (1)**
12:1
**hired (1)**
18:20
**Honor (17)**
3:10,13,16;4:2;5:9;
10:6,6,11;11:23;13:20;
15:4,14,21;18:7,14;
19:4,21
**honored (1)**
7:7
**hours (1)**
7:15
**hundred (1)**
13:17
**hypothetical (2)**
15:8;16:2
**hypothetically (2)**
17:4,4

**I**

**identifiable (1)**
10:17
**identify (2)**
3:6;12:4
**inadvertently (2)**
4:4;7:2
**inbox (1)**
8:21
**inclined (2)**
15:21;16:10
**individuals (2)**
14:8,8
**information (1)**
10:17;12:23;17:5
**insiders (1)**
4:11
**insist (1)**
4:19
**instantly (1)**
19:16
**instead (1)**
5:2
**interim (1)**
21:3
**into (1)**
6:14
**involved (1)**
4:18
**issue (3)**
10:3,16;16:6
**issues (1)**
6:2
**items (1)**
20:9

**J**

**job (2)**
4:20;5:4
**Joe (1)**
12:21
**judgment (1)**
9:7

**K**

**KAROTKIN (56)**
3:16,17,20,23,25;4:2,
7;5:5,21,24;6:7,10,12,
18,24;7:5,12,25;8:4,5,
7,10,13,15,20,23;9:1,
12,22;10:1;12:8,10,16,
24;13:3,13,20,25;14:3,
9,12,21,24;15:2;17:6,8,
12,15,18,22;18:1,4;
19:24;20:6;21:5,8
**Kelly (10)**
10:5,6,15;11:6,23;
14:11;15:6,14;16:15,
20

Case: 19-30088    Doc# 450    Filed: 02/14/19    Entered: 02/14/19 17:21:46    Page 26 of
29

**kidding (1)**
7:19
**Kim (21)**
20:5,8,11,15,20,23,
25;21:3,7,9,11,14,17,
21,23;22:6,10,12,17,
20,23
**knew (1)**
4:24
**knowledge (1)**
6:8
**known (1)**
16:5
**knows (2)**
11:1;20:5

## L

**lack (1)**
10:9
**laid (1)**
3:19
**larger (1)**
6:16
**last (5)**
4:14,21;7:23;9:13;
11:13
**late (1)**
5:24
**least (2)**
5:16;15:22
**leave (1)**
17:16
**lineman (2)**
10:25;12:18
**list (5)**
10:12,13;12:9,19;
14:16
**listed (1)**
16:3
**listing (1)**
13:21
**little (2)**
3:25;14:16
**lived (1)**
7:14
**LLP (1)**
18:8
**look (4)**
3:9;14:16;18:21;
20:16
**looked (1)**
22:14
**lot (3)**
6:19,19;7:1
**lots (1)**
14:6

## M

**making (2)**
12:14;18:25
**management (3)**

21:5,8,9
**Manges (1)**
3:17
**many (1)**
12:13
**match (1)**
16:25
**matched (1)**
16:10
**matrix (2)**
10:19,19
**matter (2)**
7:15;22:12
**matters (1)**
22:5
**may (4)**
11:2,2,6,10
**maybe (8)**
4:24;5:15;8:23;9:15;
10:2;20:5;21:24;22:8
**mean (12)**
4:22;5:3,8;6:13;
10:24;11:10,21;12:21;
14:2,15;15:6;16:23
**means (1)**
13:19
**members (2)**
19:10,19
**memorized (1)**
22:9
**mid-sentence (1)**
3:5
**might (2)**
7:4;18:7
**Milbank (1)**
18:8
**mill (2)**
4:17;14:2
**million (3)**
9:6,7;13:17
**million-and-a-half (1)**
7:9
**mind (4)**
5:6,7;9:8,16
**minutes (1)**
23:2
**mix-up (1)**
7:18
**months (1)**
6:7
**more (12)**
3:24,25;5:15;7:14;
8:23;9:5,20;12:1;14:7;
17:19;18:3;20:1
**motion (20)**
3:20;4:7,13,15,22;
6:15;7:17;8:3,3;9:5;
10:7,8;11:9,25;13:6;
16:16;17:1;18:23;
20:22;21:11
**motions (3)**
8:17;19:25;20:12
**motion's (1)**

10:21
**moving (1)**
9:20
**much (1)**
19:6
**must (1)**
11:5

## N

**name (6)**
4:23;13:12,13;16:9;
18:13;19:19
**names (10)**
10:15;11:15,21;12:6,
11,12,14;13:6;15:17;
18:21
**nature (1)**
4:23
**necessary (1)**
7:17
**need (10)**
4:23;5:3;11:15;
15:18,22,24;16:1,9,11;
18:5
**needed (1)**
22:22
**needlessly (1)**
11:19
**needs (1)**
11:13
**new (4)**
20:3,6,9;22:16
**night (3)**
4:14,21;7:23
**Nobody (1)**
11:1
**nondisclosure (1)**
11:12
**none (2)**
4:10,11
**nor (1)**
12:12
**notes (1)**
10:11
**notice (9)**
5:13;7:22;11:8;15:2;
19:5,8;20:3;22:6,12
**noticed (1)**
19:25
**notified (1)**
6:2
**number (3)**
4:18,18;5:11
**numbers (1)**
22:7

## O

**objections (2)**
5:20;6:1
**obviously (2)**
10:7;14:5

**o'clock (2)**
4:14;18:6
**offer (1)**
17:18
**office (1)**
17:3
**officers (1)**
4:10
**official (1)**
18:9
**often (1)**
8:23
**old (1)**
7:3
**omnibus (2)**
5:13;6:17
**One (15)**
4:12,14,24;8:5,25;
9:7,14;11:16,22;14:25;
19:24;20:17,18,21;
21:4
**ones (1)**
11:1
**only (2)**
12:9;14:19
**oOo- (1)**
3:3
**operators (1)**
12:1
**opponent (1)**
8:14
**opportunity (1)**
15:3
**opposition (1)**
8:2
**order (11)**
3:4,21;7:4;8:17;9:4,
11,14;10:4,8;14:4;
15:10
**orders (2)**
9:16,20
**ordinary (3)**
18:22;20:17;21:3
**organization (1)**
4:24
**original (1)**
21:16
**otherwise (1)**
18:2
**ought (1)**
17:11
**out (5)**
6:4;8:24;10:9;18:22;
23:1
**over (3)**
4:7;22:14,15
**overrule (1)**
16:21
**owed (5)**
11:11;13:16;14:18;
15:12;16:6
**own (1)**
7:20

**o'clock** ...

page (1)
16:2
**paid (10)**
11:24;12:2,19,21;
13:14;14:5,19;15:10;
16:4;17:11
**papers (2)**
9:20;19:2
**part (3)**
15:16;16:16,17
**parte (1)**
7:4
**particular (1)**
11:9
**particularly (1)**
5:7
**parties (2)**
4:19;14:11
**party (1)**
5:2
**pay (3)**
10:20,22;11:10
**paying (1)**
14:6
**payment (2)**
4:3;13:18
**payments (3)**
5:11;20:18,23
**people (14)**
4:18;6:19,21;7:1,1,
18;10:17,24;11:9,22;
13:7,13;14:1,16
**perhaps (1)**
12:17
**person (4)**
4:22;13:19;14:18,22
**personal (1)**
6:7
**personally (1)**
10:17
**person's (1)**
11:2
**petition (6)**
13:15,16,16,22;
14:13;17:11
**petition-day (1)**
17:10
**PG&E (1)**
4:25
**phone (2)**
8:2;18:25
**piece (1)**
16:21
**PII (1)**
10:16
**pleading (2)**
4:10;9:6
**please (1)**
3:7
**pleasure (1)**

Case: 19-30088   Doc# 450   Filed: 02/14/19   Entered: 02/14/19 17:21:46   Page 27 of
29

18:10
plus (1)
    20:1
PM (2)
    3:2;23:3
podium (1)
    3:6
point (9)
    6:4;7:12;8:12;11:16;
    13:10;15:14,20;16:1,
    15
pointed (1)
    10:9
points (1)
    5:22
portion (1)
    6:16
position (1)
    18:17
post-petition (3)
    13:18;15:9;17:1
practice (1)
    9:17
pre- (1)
    13:21
pre-petition (1)
    10:20
presented (1)
    9:4
presumptively (1)
    14:20
preview (1)
    20:4
principal (1)
    11:5
prior (1)
    10:8
priority (2)
    14:7,7
probably (3)
    17:6,7;19:12
procedure (1)
    14:6
procedures (3)
    20:25;21:1,9
proceedings (1)
    23:3
process (1)
    18:20
professionals (2)
    20:18,18
professionals' (1)
    21:3
proof (2)
    15:13;16:7
proposed (3)
    9:16,19;18:8
proposing (1)
    11:10
provide (4)
    12:24;13:4,7;16:13
provided (2)
    11:18;20:8

providing (2)
    4:20;12:11
publicize (1)
    12:20
pursuant (1)
    15:10
put (2)
    22:7,12

Q

quickly (1)
    18:24

R

radio (1)
    7:16
rain (1)
    3:19
raise (1)
    8:25
rank (1)
    6:21
rather (1)
    3:5
read (1)
    19:16
real (1)
    19:17
realize (1)
    4:22
really (9)
    5:25;11:8,12;15:11,
    15,16,19;16:15;22:8
reason (6)
    6:24;7:7;10:22;
    11:12;12:5;16:25
reclamation (1)
    20:25
records (1)
    5:2
reference (1)
    18:11
referred (1)
    12:3
reflecting (1)
    12:13
relevant (1)
    12:11
relief (4)
    9:5;10:7;12:11;
    13:14
relocation (1)
    7:10
remedy (2)
    15:12;16:13
remember (4)
    9:15,15;20:16;21:4
renew (1)
    17:18
reporter (1)
    3:8

request (1)
    12:5
require (1)
    15:5
required (3)
    13:22,23;17:24
resolved (1)
    15:1
respect (2)
    3:21;13:21
respects (1)
    17:24
responsible (2)
    4:21,24
rest (1)
    11:17
retention (1)
    20:21
Right (9)
    3:24;4:6;6:10;14:5,
    12;15:11,14;19:24;
    21:2
run (2)
    4:17;14:2

S

same (1)
    10:24
SAN (1)
    3:1
satisfied (1)
    16:9
saw (1)
    10:14
saying (3)
    7:8;10:22;22:4
schedule (5)
    14:13;15:8;17:9,13,
    14
scheduled (2)
    13:18,19
schedules (13)
    13:11,12,21;14:16,
    20;15:5,7,18,22,25;
    16:2,8;17:23
seat (1)
    3:14
second (1)
    15:25
seeking (1)
    12:12
seem (1)
    7:10
seemed (2)
    5:16;15:18
seems (2)
    15:7,23
self-explanatory (1)
    4:8
sense (1)
    16:22
sensitive (1)

7:11
service (1)
    5:15
set (1)
    4:9
setting (1)
    7:22
several (3)
    10:24,25,25
short (1)
    5:13
shortened (1)
    8:18
shows (1)
    17:9
signed (2)
    7:4;9:14
significant (1)
    5:11
silence (1)
    7:16
simply (1)
    10:8
situation (1)
    18:23
six (8)
    20:1,3,3,9,11,17;
    22:16,19
sixth (1)
    21:4
Smith (1)
    12:21
somebody (5)
    7:6;9:6;11:5,6;14:18
someone (2)
    4:25;13:16
somewhere (1)
    5:1
Sorry (2)
    3:18;21:19
sort (2)
    4:12;10:16
sounds (1)
    16:24
speak (2)
    14:13;18:12
speaks (1)
    13:15
specifically (2)
    9:15;12:4
spoken (1)
    10:8
staff (1)
    22:1
state (1)
    18:13
stay (1)
    23:1
Stephen (1)
    3:16
stick (1)
    16:1
submitted (1)

6:3
subsequent (2)
    16:4;17:10
sudden (1)
    7:16
sue (1)
    9:6
suggesting (1)
    18:1
suggestion (1)
    16:11
summarized (1)
    8:4
supplement (2)
    12:6;17:13
supplemented (1)
    11:24
support (3)
    4:15;7:23;16:16
sure (13)
    5:17;7:6;8:16;9:3,19,
    24;14:9;15:3;17:23;
    20:11;21:25;22:3,18
surely (1)
    18:2

T

talking (1)
    22:2
ten (2)
    19:25;22:15
there're (1)
    8:16
third (4)
    5:2;14:11;16:5,6
thirty (1)
    4:4
though (1)
    21:13
thought (3)
    6:24;14:15;18:11
three (7)
    4:8;7:22;12:1;20:12;
    21:15,17,18
timing (2)
    5:4,18
title (2)
    10:25;16:10
titles (2)
    10:13;11:16
today (6)
    3:11,20;8:18;9:2;
    16:10,18
today's (1)
    17:1
told (2)
    8:17;9:10
troubleman (1)
    12:19
troubling (1)
    15:16
true (2)

15:11;19:7
**Trustee (6)**
  6:2;10:3;12:15,22;
  13:5;19:7
**Trustee's (2)**
  15:20;16:15
**truthful (2)**
  16:23,24
**try (4)**
  5:21;6:18;9:19;13:9
**turn (1)**
  6:13
**two (5)**
  4:12;6:17;7:15,22;
  20:4

**U**

**Um-hum (4)**
  14:21;17:15;22:10,
  17
**underlying (1)**
  20:10
**underpay (1)**
  14:17
**understandable (1)**
  5:9
**union-represented (1)**
  4:9
**up (7)**
  5:10,14;7:2;11:7;
  16:10,25;18:12
**use (1)**
  15:8
**useful (2)**
  16:14,22
**utilities (2)**
  20:22,23
**utility (2)**
  13:10;20:22

**V**

**various (1)**
  11:1
**verified (1)**
  17:2
**victims (1)**
  7:18
**view (1)**
  13:18

**W**

**wage (2)**
  3:21;6:16
**wages (1)**
  13:22
**wait (2)**
  6:16;21:18
**wants (2)**
  8:2;17:19
**waste (1)**

19:14
**watch (1)**
  3:15
**watching (1)**
  9:18
**way (4)**
  12:3,20;14:25;17:11
**WEDNESDAY (1)**
  3:1
**weeks (2)**
  6:17;20:4
**Weil (1)**
  3:17
**welcome (2)**
  18:15;22:25
**what's (3)**
  8:24;12:8;17:24
**Whereupon (1)**
  23:3
**whole (1)**
  8:12
**who's (2)**
  3:9;12:2
**Whose (2)**
  3:15;9:18
**withheld (2)**
  11:15,19
**without (2)**
  10:15,22
**wondering (1)**
  5:12
**words (1)**
  16:1
**working (1)**
  7:1
**wrong (2)**
  14:17;16:24

**X**

**X's (1)**
  16:9

**Y**

**yesterday (3)**
  6:2;10:9;21:20
**Yup (3)**
  8:6;17:15;22:10

**1**

**1 (1)**
  18:6
**1:01 (1)**
  3:2
**1:25 (1)**
  23:3
**1:30 (1)**
  22:25
**10 (1)**
  17:9
**10,000 (5)**

14:19;15:9,10;16:3,4
**101 (1)**
  6:14
**12th (2)**
  21:18,20
**13 (1)**
  3:1

**2**

**2,000 (1)**
  12:21
**20,000 (2)**
  15:12;16:7
**2019 (1)**
  3:1
**21,000th (1)**
  16:3
**24,000 (4)**
  12:9;13:21;14:16;
  17:9
**24-7 (1)**
  19:19
**27th (3)**
  20:1,14;22:5

**3**

**318 (1)**
  16:3

**4**

**4,000 (1)**
  14:19

**5**

**503b9 (1)**
  20:25

**6**

**6 (1)**
  4:14
**6th (3)**
  21:21,21,23

Case: 19-30088   Doc# 450   Filed: 02/14/19   Entered: 02/14/19 17:21:46   Page 29 of
29