| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (pro hac vice)<br>(stephen.karotkin@weil.com)<br>Jessica Liou (pro hac vice)<br>(jessica.liou@weil.com)<br>Theodore Tsekerides (pro hac vice)<br>(theodore.tsekerides@weil.com)<br>Matthew Goren (pro hac vice)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | KELLER & BENVENUTTI LLP<br>Tobias S. Keller (#151445)<br>(tkeller@kellerbenvenutti.com)<br>Peter J. Benvenutti (#60566)<br>(pbenvenutti@kellerbenvenutti.com)<br>Jane Kim (#298192)<br>(jkim@kellerbenvenutti.com)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Tel: 415 496 6723<br>Fax: 650 636 9251 |

*Proposed Attorneys for Plaintiffs*
*(Debtors and Debtors in Possession)*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**,<br>    - and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>    **Debtors**.<br><br>[CAPTION CONTINUES ON NEXT PAGE] | Case Nos. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>Adv. Pro. No. 19-_____ (DM)<br><br>**DEBTORS' COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AS TO ACTIONS AGAINST NON-DEBTORS** |

COMPLAINT FOR INJUNCTIVE RELIEF

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| | |
|---|---|
| 1 | **PG&E CORPORATION, PACIFIC GAS AND ELECTRIC** |
| 2 | **COMPANY,** |
| 3 | Plaintiffs, |
| 4 | v. |
| 5 | **PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO,** |
| 6 | **STATE FARM MUTUAL AUTOMOBILE INSURANCE** |
| 7 | **COMPANY, TANFORAN INDUSTRIAL PARK, LLC, TIGER** |
| 8 | **NATURAL GAS, INC., BECKY CHRISTENSEN, LARRY CORREIA,** |
| 9 | **ROBERT CRUZ, TROY DODSON, REBECCA DODSON, JERRY** |
| 10 | **ENGELBRITE, MARTIN FARRELL-ARAQUE, BRIAN FREITAS, JAMES** |
| 11 | **GAEBE, NATE GARRISON, TIFFANY GARRISON, BRIAN GRAHLMAN,** |
| 12 | **ENRIQUE GUZMAN, RUFUS MAZIMILLON HAYWOOD,** |
| 13 | **MICHAEL HILL, CAROLYN HILL, BRANDON HILL, JUSTINE** |
| 14 | **HORNING, JOSE ORLANDO AREVALO IRAHETA, JOSEPH** |
| 15 | **JOHNSON, DWAYNE LITTLE, MICHAEL MARROQUIN, JESUS** |
| 16 | **MENDOZA, HELENA MODELL, ROBERT MODELL, MAX M.** |
| 17 | **MONTELLANO, CHERYL MONTELLANO, BILL MYERS, AMIE** |
| 18 | **MYERS, IRIS NATIVIDAD, DONATUS OKHOMINA JR.,** |
| 19 | **TIFFANY PAGTULINGAN, JIMMY PAYNE JR., LISA REIMER, BRUCE** |
| 20 | **REMINGTON, KIM ROSE, MARK SCALESE, GABRIEL SENICERO,** |
| 21 | **MARIE-CLAIRE STARR, JANETTE TAYLOR, BJ TAYLOR, ROBERT** |
| 22 | **TAYLOR, THOMAS TAYLOR, IRMA TORRES, LISA VAN NORSDALL,** |
| 23 | **MIKE WILLIAMS, and DEANNA WILLIAMS** |
| 24 | |
| 25 | Defendants. |
| 26 | |
| 27 | |
| 28 | |

COMPLAINT FOR INJUNCTIVE RELIEF

In accordance with 28 U.S.C. § 1334, 11 U.S.C. § 105, and Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") 7001(7) and 7065, PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"), and as plaintiffs in the above-captioned adversary proceeding, allege for their complaint ("**Complaint**") for preliminary and permanent injunctive relief against the above-named defendants (the "**Defendants**"), upon knowledge of their own acts and upon information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1. The Debtors are currently engaged in a complex reorganization that has only just begun and requires their full attention in order to preserve assets of the estates and work toward a successful emergence from Chapter 11. This Adversary Proceeding concerns twenty-two pending civil actions (the "**Related Actions**") that, although stayed against the Debtors, would irreparably harm the Debtors if allowed to proceed against the non-debtor co-defendants (the "**Non-Debtor Defendants**").[1]

2. This is an adversary proceeding brought pursuant to Rules 7001(7) and 7065 of the Bankruptcy Rules and section 105 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors seek to preliminarily and permanently enjoin the prosecution of the Related Actions against the Non-Debtor Defendants with the same effect and to the same extent as would be the case if section 362(a) of the Bankruptcy Code applied.

3. Based on the facts alleged herein, the Court's exercise of its powers under section 105 of the Bankruptcy Code to preliminarily and permanently enjoin the continued prosecution of the Related Actions against the Non-Debtor Defendants is appropriate and in the best interests of the estates.

---

[1] A list of the Related Actions is attached as **Exhibit M** to the Declaration of Elizabeth Collier in Support of the Debtors' Motion for Preliminary Injunction as to Actions Against Non-Debtors, which identifies the non-debtor co-defendants involved in each action to which the relief requested applies.

COMPLAINT FOR INJUNCTIVE RELIEF

## THE PARTIES

4. PG&E Corp. is a holding company whose primary operating subsidiary is the Utility, an electricity and natural gas utility operating in northern and central California. The Utility provides natural gas and utility services to approximately 16 million customers.

5. The Defendants in this adversary proceeding are plaintiffs in the Related Actions, who commenced suits against the Debtors and the Non-Debtor Defendants. The pleadings in each of the Related Actions, each of which also names at least one of the Debtors as a defendant, make clear that it is the Debtors' conduct—not that of the Non-Debtor Defendants—that sits at the core of the allegations. And, by board resolution, statute, or other operation of law, the Debtors owe the Non-Debtor Defendants indemnity obligations of some kind in each of the Related Actions.

## JURISDICTION AND VENUE

6. This adversary proceeding arises in and relates to the Chapter 11 Cases. The Court has jurisdiction to consider this adversary proceeding and over the claims asserted herein against the Defendants pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), Rules 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent to the entry of a final order by the Court in connection with this adversary proceeding to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

**The Chapter 11 Cases**

8. The Debtors' sought relief under Chapter 11 because it was the only viable option to resolve the potential liabilities that arose from the tragic wildfires that occurred in Northern California in 2017 and 2018, continue to deliver safe and reliable service to their 16 million customers, and remain economically viable. As noted in the Debtors' Form 8-K filed on January 14, 2019 with the United States Securities and Exchange Commission, the Debtors' potential wildfire-

related liability could exceed $30 billion, without taking into account potential punitive damages, fines and penalties or damages with respect to "future claims."

9. Chapter 11 will provide the Debtors and all parties in interest with one forum to comprehensively address and resolve the Debtors' wildfire liabilities in a fair and expeditious manner, and will assure equality of treatment among all similarly-situated creditors of the Debtors.

**The Related Actions**

10. The Related Actions against Non-Debtor Defendants that the Debtors seek to enjoin fall into four categories. The first category is a securities class action brought against the Debtors and their current and former officers (the "**Securities Action**")[2] for alleged misstatements related to the Debtors' anti-wildfire practices and procedures. The second category encompasses nineteen separate actions, each brought against the Debtors and their employees (the "**Employee Actions**").[3] One alleges complex commercial claims, twelve allege torts related to motor vehicle accidents, four allege employment law violations, and two allege breaches of contract. The third category encompasses a single negligence action against the Debtors and their contractors (the "**Contractor Action**")[4] for damages related to the 2018 Northern California wildfires. The fourth category encompasses a single negligence against the Debtors and a third party ("**Third-Party Action**")[5] for alleged damages related to the conditions on a Utility worksite (the Employee, Contractor and Third-

---

[2] *In re PG&E Corp. Securities Litig.*, 18-cv-03509 (N.D. Cal. Dec. 14, 2018).

[3] *Tiger Natural Gas, Inc. v. Pac. Gas & Elec. Comp., et al.*, No. 4:16-cv-06711-JSW (N.D. Cal. Nov. 18, 2016); *Van Norsdall v. Pac. Gas & Elec. Comp., et al.*, No. C17-00500 (Contra Costa Super. Ct. Mar. 10, 2017); *Mendoza v. Uprettee Elude Hubbard, et al.*, No. STK-CV-UAT-2017-0009560 (San Joaquin Super. Ct. Sept. 11, 2017); *Tanforan Indus. Park, LLC v. Pac. Gas & Elec. Comp., et al.*, No. CIV-1703383 (San Mateo Super. Ct. Sept. 14, 2017); *Freitas v. Pac. Gas & Elec. Comp., et al.*, No. 17-cv-03528 (Merced Super. Ct. Oct. 18, 2017); *Montellano v. Pac. Gas & Elec. Comp., et al.*, No. 17CVP-0290 (San Luis Obispo Super. Ct. Oct. 18, 2017); *Marroquin v. Pac. Gas & Elec. Comp., et al.*, No. BCV-18-100020 TSC (Kern Super. Ct. Jan. 4, 2018); *Farrell-Araque v. Contreras, et al.*, No. CGC-18-563730 (S.F. Super. Ct. Jan. 18, 2018); *Pagtuligan v. Pac. Gas & Elec. Comp., et al.*, No. CGC-18-564604 (S.F. Super. Ct. Feb. 26, 2018); *Senicero v. Borgan, et al.*, No. CGC-18-564790 (S.F. Super. Ct. Mar. 5, 2018); *Torres v. Pac. Gas & Elec. Comp., et al.*, No. CGC-18-564986 (S.F. Super. Ct. Mar. 13, 2018); *Iraheta v. Pac. Gas & Elec. Comp., et al.*, No. 18-CECG01035 (Fresno Super. Ct. Mar. 26, 2018); *Cruz v. Webb, et al.*, No. BCV-18-101137 (Kern Super. Ct. May 16, 2018); *Haywood v. Cordeiro, et al.*, No. BCV-18-101444 (Kern Super. Ct. June 18, 2018); *Remington v. Pac. Gas & Elec. Comp., et al.*, No. DR180635 (Humboldt Super. Ct. Sept. 4, 2018); *Payne v. Ogans, et al.*, No. RG18922651 (Alameda Super. Ct. Sept. 28, 2018); *Little v. PG&E Corp., et al.*, No. CV18-2183 (Yolo Super. Ct. Nov. 21, 2018); *State Farm Mutual Auto. Ins. Comp. v. Robert Parks, et al.*, No. CGC-18-572315 (S.F. Super. Ct. Dec. 24, 2018); *Okhomina v. Pac. Gas & Elec. Comp., et al.*, No. CGC-19-573060 (S.F. Super. Ct. Jan. 23, 2019).

[4] *Christensen, et al., v. PG&E Corp., et al.*, No. 18CV03838 (Butte Super. Ct. Nov. 28, 2018).

[5] *Guzman, v. Pac. Gas & Elec. Comp., et al.*, No. CGC-16-554005 (S.F. Super. Ct. Sept. 1, 2018).

Party Actions, collectively, the "**Remaining Actions**"). At least one Debtor is named as a co-defendant in each of the Related Actions.

11. Although all of the claims against the Debtors in the Related Actions are currently stayed pursuant to section 362 of the Bankruptcy Code, the Debtors are the real parties in interest, and any finding against the Non-Debtor Defendants would, in essence, constitute a finding against the Debtors without affording them an opportunity to mount their own defense. Given both their indemnity obligations and the identity of interest with the Non-Debtor Defendants, the litigation of the Related Actions would require key personnel of the Debtors to divert their time and energy from the reorganization, otherwise drain the estates' resources, and potentially subject the Debtors to the preclusive effects of collateral estoppel and record taint—especially with respect to those claims related to the 2017 and 2018 Northern California wildfires. At this critical stage in the Chapter 11 Cases, and as is contemplated by the Bankruptcy Code, the focus of the Debtors', directors, officers, and legal team should be devoted to maintaining operations, advancing safety initiatives, and working with the various stakeholders to develop a Chapter 11 plan that will be fair and acceptable to the Debtors' creditors as a whole—not defending prepetition claims of individual litigants. Enjoining the Related Actions is necessary to avoid such irreparable harm.

*The Securities Action*

12. In the Securities Action, *In re PG&E Corp. Sec. Litig.*, 18-cv-03509 (N.D. Cal. Dec. 14, 2018), plaintiff Public Employees Retirement Association of New Mexico ("**PERA**"), individually and on behalf of all other persons similarly situated, alleges that the Debtors and six of their current and former officers (collectively, the "**Securities Action Defendants**") committed securities fraud. The Securities Action concerns the exact same events—the 2017 and 2018 Northern California wildfires—that precipitated the Debtors' decision to seek protection under Chapter 11. Specifically, PERA alleges that, from April 29, 2015, through November 15, 2018, the Securities Action Defendants made false and misleading statements regarding the Debtors' wildfire safety practices, including numerous and widespread violations of California safety regulations related to power lines. PERA further alleges that the Debtors' wildfire safety practices caused the 2017 and 2018 Northern California wildfires, which, in turn, caused significant financial losses to the Debtors'

COMPLAINT FOR INJUNCTIVE RELIEF 4

security holders. PERA concludes by seeking damages, pre- and post-judgment interest, and attorneys' fees and costs. In order to prove their claims, PERA will surely seek extensive discovery against the Debtors' directors and officers, and that will necessarily distract the Debtors' key personnel from administering the estates.

13. Pursuant to certain resolutions of the Debtors' board of directors (the "**Resolutions**"), the Debtors are obligated to indemnify and hold harmless "to the fullest extent permissible under California law and the Corporation's Articles of Incorporation," each of the Non-Debtor Defendants in the Securities Action. Specifically, the Debtors are obligated to indemnify and hold harmless these Non-Debtor Defendants for, *inter alia*, any "costs, charges, expenses, liabilities, and losses (including, without limitation, attorneys' fees)" that the Non-Debtor Defendants have incurred and will incur in response to the Securities Action. In other words, the Debtors' obligations to indemnify the Non-Debtor Defendants in the Securities Action arose upon the filing of the operative complaint.

14. The Debtors maintain directors and officers liability insurance policies. Under the policies implicated by the Non-Debtor Defendants in *In re PG&E Corp. Securities Litig.*, No. 18-cv-03509 (N.D. Cal. Dec. 14, 2018) (the "**D&O Policies**"), the Debtors are co-insureds with their directors and officers. The Debtors are entitled to reimbursement under the D&O Policies of losses incurred due to third-party claims made directly against them, as well as for losses arising from the indemnification obligations to their directors and officers. The potential exposure in the Securities Action alone far exceeds the limits of the D&O Policies.

15. Additionally, the Debtors, and their estates, are the true targets of the Securities Action. The alleged misstatements by the Securities Action Officer Defendants are indistinguishable from those allegedly made by the Debtors. To succeed on its claim, PERA must show that misstatements regarding the Debtors' wildfire safety measures caused a drop in PG&E Corp.'s share price. If the Debtors did not cause the wildfires, then the Debtors' safety measures (or alleged misstatements regarding those safety measures) could have no plausible effect on PG&E Corp.'s share price. Accordingly, the complaint thus rests entirely on the contested premise that the Debtors' allegedly inadequate wildfire safety measures caused the 2017 and 2018 Northern California

wildfires. Thus, the Debtors' conduct and operations are at the core of the issues raised not only in the Securities Action.

16. The facts necessary to prove PERA's claims against both the Debtors and their officers are so inextricably interwoven that discovery and proof on these issues will go straight to a number of matters confronting the Debtor in, and critical to the resolution of, the Chapter 11 Cases. Worse yet, if the Securities Action is permitted to proceed against the Non-Debtor Defendants, the Debtors could later be bound by critical factual and legal issues determined in those proceedings by operation of collateral estoppel. Those factual and legal findings are directly pertinent to the wildfire victims' and indemnitees' claims against the estates, and the availability of insurance proceeds to satisfy those claims.

*The Employee Actions*

17. In the nineteen Employee Actions, various plaintiffs allege that the Debtors and their employees engaged in various wrongdoing, culminating in claims of, for example, breach of contract and personal injury. Although the Employee Actions name the Debtors' employees as co-defendants, the real targets of these lawsuits are the Debtors. For example, in *Tiger Natural Gas, Inc. v. Pac. Gas & Elec.*, et al., No. 4:16-cv-06711-JSW (N.D. Cal. Nov. 18, 2016), the plaintiff alleges that the Utility improperly performed in its capacity as a billing and collections agent acting on behalf of those (such as Tiger) who provide retail natural gas to end-user residential and commercial customers. The plaintiff's complaint alleges nine causes of action, only three of which name Non-Debtor Defendants. Moreover, in one of those three counts, the plaintiff only names the Utility's employees in order to recover from the Utility under a theory of respondeat superior. Specifically, that count alleges:

> The Individual Defendants committed the [challenged] activities within the time and space limits of their employment with [the Utility]. That is, the Individual Defendants committed the [challenged] activities while they were working in [the Utility's offices and with [the Utility's] systems. On information and belief, the Individual Defendants were motivated to commit the [challenged] activities for the purpose of benefiting [the Utility] financially through increased profit and market share, and thereby benefiting themselves as the employees responsible.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

For all of these grievances, the plaintiff in *Tiger* seeks compensatory damages (trebled as to counts one, two, and three), punitive damages, and attorneys' fees and costs.

18. In *Okhomina v. Pac. Gas & Elec. Comp., et al.*, No. CGC-19-573060 (S.F. Super. Ct. Jan. 23, 2019), the plaintiff brings seven causes of action related to employment law, six against the Utility, and one against the Utility and one of the Utility's employees. In terms of relief, the plaintiff seeks compensatory damages, punitive damages, attorneys' fees and costs, and a "preliminary and/or permanent injunction enjoining and/or prohibiting [the Utility] from continuing the unfair and illegal business policy and practice of interfering with Plaintiff's and other former employees' employment with third parties." This final request, in addition to the employee's absence from all but one cause of action, make clear that the Utility is the real target of *Okhomina*.

19. In *Senicero v. Borgan, et al.*, No. CGC-18-564790 (S.F. Super. Ct. Mar. 5, 2018), the plaintiff alleges personal injury and property damage stemming from an automobile accident allegedly caused by an employee of the Debtors, driving a vehicle owned by the Debtors, within the course and scope of his employment with the Debtors. The plaintiff seeks compensatory damages (and prejudgment interest on those damages) for, among other things, wage loss, loss of use of property, hospital and medical expenses, and loss of earning capacity. Like in *Okhomina*, although the plaintiff in *Senicero* names one of the Debtors' employees as a defendant, the ultimate goal is to recover from the Debtors.

20. Because the Debtors are self-insured for claims against their employees up to $10 million, a judgment against a Non-Debtor Defendant in the Employee Actions would have a direct impact on the claims against the estates. The Debtors are the real targets of the Employee Actions and an injunction is necessary to protect the estates and give meaning to the automatic stay.

21. Pursuant to the Resolutions, the Debtors must indemnify and hold harmless, "to the fullest extent permissible under California law and the Corporation's Articles of Incorporation," the majority of the Non-Debtor Defendants in the Employee Actions. This obligation includes, *inter alia*, any "costs, charges, expenses, liabilities, and losses (including, without limitation, attorneys' fees)" that the Non-Debtor Defendants have incurred and will incur in response to the Employee Actions.

22. Additionally, the Debtors must indemnify the Non-Debtor Defendants in the Employee Actions as a matter of law under section 2802 of the California Labor Code. Pursuant to that California statute, the Debtors have a nonwaivable legal duty to indemnify their employees for "all necessary expenditures or losses" incurred as a "direct consequence" of their decision to discharge their duties or adhere "to the directions" of their employer. *See* Cal. Labor Code § 2802(a). This nonwaivable duty exists even if an employee is ultimately found to have acted unlawfully, so long as that employee did not believe that he was acting unlawfully at the time of the challenged action. *See* Cal. Labor Code § 2802(a). In each of the Employee Actions, either the Debtors have concluded that Non-Debtor Defendants have been named as a defendant as a direct consequence of actions or inactions arising from the discharge of his or her duties as an employee of the Debtors, or plaintiffs have alleged as much, and the Debtors have no basis to believe that is not the case. Moreover, the Debtors have no basis to believe that any of their employees took any action that they believed to be unlawful at the time. Accordingly, under the circumstances, the Debtors have a nonwaivable legal duty to defend and indemnify the Non-Debtor Defendants in the Employee Actions for any costs and expenses (including attorneys' fees) that they have incurred and will incur as a result of the Employee Actions.

*The Contractor Action*

23. In the Contractor Action, *Christensen, et al., v. PG&E Corp.*, et al., 18-cv-03838 (Butte Super. Ct. Nov. 28, 2018), numerous plaintiffs allege that the Debtors, two of their contractors (Trees, Inc. and ACRT, Inc.), and 1-100 unnamed Doe defendants negligently maintained, repaired, operated, or inspected the Utility's power lines. The plaintiffs further allege that the fire near Pulga, California, that began on November 8, 2018, was a result of these alleged acts or omissions. The plaintiffs' complaint identifies eight causes of action (all name the Debtors, only three name the Debtors' contractors, and all are based on the same operative facts), and in terms of remedies, the plaintiffs seek compensatory damages (trebled or doubled for "injuries to timber, trees, or underwood on Plaintiffs' property"), punitive damages, and attorneys' fees and costs.

24. Plaintiffs in Contractor Action have alleged that the Debtors' and their contractors "negligently installed, constructed, maintained, operated, inspected, and/or repaired the [the Utility's

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

power] line and as a direct, proximate and legal result, the line caused a fire and Plaintiffs' damages." The Debtors, like all California utilities, have a non-delegable duty to maintain the safety of their electric utility systems. This means that the Debtors may be held vicariously liable for compensatory damages arising from the contractors' negligence, irrespective of fault.

25.  As is the case with the Securities Action, given that the contentions at issue in the Contractor Action cut to the heart of the potential liability arising out of the 2017 and 2018 Northern California wildfires, and allowing any claims against the Non-Debtor Defendants to proceed would force the Debtors' key personnel to divert their attention away from the reorganization and seriously undermine the Debtors' efforts to address the substantial issues impacting the estates from those wildfires in this Court, to the detriment of all stakeholders. Moreover, if the cases related to the 2017 and 2018 Northern California wildfires are allowed to proceed, any factual determination made in these cases would necessarily impact the resolution of the wildfire claims that led the Debtors to seek Chapter 11 relief in the first place.

*The Third-Party Action*

26.  In the Third-Party Action, *Guzman v. Pac. Gas & Elec. Comp., et al.*, No. CGC-16-554005 (S.F. Super. Ct. Sept. 1, 2016), the plaintiff alleges that the Utility and M Squared Construction, Inc. ("**M Squared**") violated the California Labor Code, the California Public Utilities Code, and various California regulations by negligently failing to maintain a safe and proper worksite. The plaintiff alleges that while working on the worksite, he unintentionally engaged an unmarked Utility power line, which caused him physical injuries. For these injuries, the plaintiff seeks damages, attorneys' fees, and costs from the Utility and M Squared, even though he did not work for the Utility or M Squared. While there is no legal relationship between the Utility and M Squared, M Squared filed claims against the Utility for indemnity and contribution, which are of course stayed under section 362 of the Bankruptcy Code. The Utility, in turn, filed claims against M Squared for negligence, indemnity, and contribution, which were not automatically stayed.

27.  The Debtors, like all California utilities, have a non-delegable duty to maintain the safety of their electric utility systems. This means that the Debtors may be held vicariously liable for compensatory damages arising from the contractors' negligence, irrespective of fault.

COMPLAINT FOR INJUNCTIVE RELIEF                 9

**Enjoining the Related Actions is Warranted in the Interest of Justice**

28. This Court may exercise related-to subject matter jurisdiction over the Related Actions because allowing them to proceed would have a direct impact on the Debtors' estates. That impact is not merely conceivable, but real and immediate because, at bottom, all of the Related Actions are lawsuits *against the Debtors* that seek to recover *from the Debtors*.

29. For example, this Court has jurisdiction to enjoin any action that raises even the potential for indemnification on the part of the Debtors. As described above, pursuant to resolutions of the Debtors' boards of directors, the Debtors are obligated to indemnify and hold harmless each Non-Debtor Defendant in the Securities Action and the Employee Actions. The Debtors are further obligated to indemnify their employees as a matter of law, specifically section 2802 of the California Labor Code. As to the Contractor and Third-Party Actions, the Debtors have a non-delegable duty to maintain the safety of their electric utility systems. Should the underlying plaintiffs prevail in those actions, the Non-Debtor Defendants would seek to hold the Debtors vicariously liable.

30. Moreover, the claims against the Non-Debtor Defendants in the Related Actions derive from the same common nucleus of operative fact as the claims against the Debtors. In essence, these are suits against the Debtors and will deplete the assets of the estates. The Securities and Contractor Actions arise out of the 2017 and 2018 Northern California wildfires. Those events will be front and center in the reorganization process before this Court. The Third-Party Action arises out of injuries the plaintiff alleges he suffered after coming into contact with the Utility's unmarked power lines. And the plaintiffs in the Employee Actions name as Non-Debtor Defendants individuals who were acting within the course and scope of their employment. The Debtors' conduct and operations are at the core of the issues raised in each of the Related Actions. Allowing the Related Actions to proceed against the Non-Debtor Defendants risks prejudicing the Debtors with the adverse consequences associated with collateral estoppel and record taint.

31. The factors necessary to issue an injunction under section 105 of the Bankruptcy Code are met here.

32. *First*, the Debtors are reasonably likely to successfully reorganize. Although the Debtors' Chapter 11 Cases are newly filed, they have already made tangible progress towards

reorganization. For example, the Debtors have secured $5.5 billion in DIP financing that will allow them to continue to operate as they reorganize, and the Debtors will continue to receive substantial cash flow from a customer base that relies upon the Debtors for critical services, such as electricity and natural gas. Indeed, in view of the importance of the services provided by the Debtors to both the community and the people that they serve, there can be little doubt that the Debtors will successfully reorganize.

33. Additionally, on January 31, 2019, this Court held a hearing to consider the "first day" relief requested by the Debtors. The Debtors' "first day" motions sought to stabilize the Debtors' business by, among other things, requesting interim approval of the previously mentioned $5.5 billion debtor-in-possession financing facility, requesting authorization to continue utilizing their existing cash management system, and requesting permission to pay certain prepetition wages, taxes, lien claimants, and other vendors that are necessary to preserve and maintain the Debtors' operations in a safe and reliable manner. This Court granted each of the Debtors' "first day" motions—many of which were uncontested—on an interim basis. Enjoining the Related Actions would allow the Debtors to maintain the momentum necessary to formulate a Chapter 11 plan that will allow the Debtors to continue supplying electricity and natural gas to their 16 million customers.

34. *Second*, absent the injunctive relief sought herein, the Debtors will suffer irreparable harm. The Debtors' directors, officers, and legal personnel are integral to and key participants in the Debtors' reorganization efforts. The responsibilities of the Debtors' directors, officers, and/or legal personnel in connection with the Chapter 11 Cases include, but are not limited to: (i) stabilizing the Debtors' businesses post-filing of the Chapter 11 Cases, which requires managing relationships with and responding to innumerable inquiries from employees, vendors, regulators, and other key parties, as well as conducting their day-to-day ordinary course activities during a particularly sensitive time for the Debtors' businesses; (ii) addressing requests from multiple official and unofficial committees to conduct in-person and telephonic meetings and to provide diligence about the Debtors' businesses; (iii) assisting the Debtors' advisors in preparing for bi-weekly hearings, some of which will likely be contested, (iv) overseeing and reviewing, on expedited timeframes, multiple documents drafted for filing with the Court, including lengthy and complicated pleadings, briefs,

applications, and potentially voluminous reports such as the Debtors' schedules and statements, both in connection with the Chapter 11 Cases and related adversary proceedings; and (v) conducting ongoing negotiations with multiple constituencies possessing potentially divergent and competing interests regarding a potential framework under which the Debtors will be able to successfully reorganize and ultimately exit Chapter 11. At this early stage of the reorganization, the Debtors' directors, officers, legal team—and other key personnel—should be focused on these reorganization-related tasks, not on separate individual litigations.

35. Here, the Securities Action implicates six of the Debtors' current and former officers for alleged misstatements and omissions and also alleges that the Debtors' wildfire safety measures proximately caused the 2017 and 2018 Northern California wildfires—the same wildfires that precipitated the Chapter 11 Cases. Litigation of this nature, if permitted to proceed, will likely force key participants in the Debtors' reorganization efforts, including but not limited to the Debtors' directors, officers, and/or legal personnel to engage in time-consuming discovery that will divert their attention away from their duties associated with administering the Chapter 11 Cases, undermine the Debtors' reorganization efforts, and irreparably harm the Debtors.

36. Moreover, given the Debtors' indemnification obligations, and because plaintiffs' claims in the Securities Action are ultimately directed at the Debtors, the Debtors' in-house legal team manages the defense of those Non-Debtor Defendants. The fact that the Securities Action has been ongoing as against the Non-Debtor Defendants has significantly diverted the attention of the Debtors' legal personnel, and other personnel integral to the reorganization process, away from the Chapter 11 Cases. Forcing the Debtors' legal team to continue to manage the Securities Action would require the continuing attention and coordination of the Debtors' directors, officers, and legal personnel, thus re-directing their time and energies away from the Debtors' reorganization efforts, and thereby inflicting irreparable harm upon the Debtors. In addition, the Debtors and their non-debtor current and former officers are co-insured under the D&O Policies. Those policies insure the Debtors not only against liability for claims brought against them, but for indemnification claims brought against the Debtors by their officers. Any potential settlement between the putative class in

the Securities Action and the Debtors' officers is likely to exhaust the available insurance coverage, and therefore likely to deplete the assets of the Debtors' estates.

37. The Debtors also share an identity of interest with their officers in the Securities Action, which creates an obvious and substantial risk of irreparable harm to the Debtors. Absent an injunction, the Debtors will likely, as a practical matter, be forced to engage. After all, because the Debtors are in privity with their officers, which therefore creates a substantial risk that in subsequent suits the Debtors could be bound to critical factual and legal issues determined in the Securities Action by operation of collateral estoppel. Uncontroverted evidence, witness testimony, or rulings may result in admissions or findings that severely prejudice the Debtors in matters directly relevant to the administration and resolution of the Chapter 11 Cases.

38. Similarly, the Remaining Actions pose a similar threat of irreparable harm to the Debtors. Allowing any continuation of litigation in which the Debtors are named a party and possess critical relevant information will expose the Debtors' directors, officers, and/or legal personnel, each of which are key participants in the Chapter 11 Cases, to time-consuming discovery that will necessarily divert their attention away from their duties associated with administering the Chapter 11 Cases, undermine the Debtors' reorganization efforts, and irreparably harm the Debtors. Moreover, all the Remaining Actions already have and will, if permitted to proceed, force the Debtors' legal personnel to manage the defense of the Non-Debtor Defendants in the Employee Actions, as well as continue closely monitoring developments in the other Remaining Actions, thus re-directing their time and energies away from the reorganization efforts, and inflicting irreparable harm upon the Debtors.

39. The Debtors are also the real party in interest in all of the Remaining Actions—whether through claims of indemnification (Employee, Contractor, and Third-Party Actions), duties arising out of statutory obligation (Employee Actions), claims of vicarious liability (Contractor Action), or claims of respondeat superior (Employee Actions). Thus, all of the Remaining Actions implicate the Debtors' conduct, and the Debtors cannot risk being bound to critical facts and legal issues determined in those proceedings by operation of collateral estoppel.

40. The Remaining Actions, like the Securities Action, pose a real and substantial threat of irreparable harm. Thus, this Court should thus enjoin the Remaining Actions rather than force the Debtors to choose between litigation, collateral estoppel risk, and prospects for reorganization.

41. *Third*, the issuance of a preliminary injunction here does not pose a threat to any of the plaintiffs in the Related Actions (the Defendants in this Adversary Proceeding). An injunction will not alter the substantive rights of any of the Defendants in this Adversary Proceeding. In many of the Related Actions, like the Securities Action, the parties have not yet commenced discovery. Other Related Actions are, by contrast, more developed, meaning that significant discoverable materials have already been produced and are in the custody of third parties.

42. Because the automatic stay operates to stay all claims against the Debtor in the Related Actions, and the Debtors are the real parties in interest, to stay the claims against the Non-Debtor Defendants in the Related Actions would merely give meaning to one of the most fundamental debtor protections provided by the bankruptcy laws. Any other result effectively renders the Debtors' automatic stay hollow by authorizing the plaintiffs in the Related Actions to operate an end-run around the same.

43. The plaintiffs in the Related Actions can file proofs of claim in the Chapter 11 Cases in order to seek to recovery against the Debtors on their asserted causes of action. What those plaintiffs should not be permitted to do is use the Related Actions to continue to pursue claims against Non-Debtor Defendants who the Debtors may ultimately be required to compensate as a result of various indemnity obligations. Rather, in keeping with basic bankruptcy principles, all of these claims should be addressed by this Court given that the issues involved are inextricably intertwined with those being addressed in the Chapter 11 Cases.

44. *Finally*, it is in the best interest of the public to enjoin the Related Actions. The Debtors are a utility that provides electricity and natural gas to approximately 16 million customers. The Debtors also employ over 24,000 employees and provide work for countless contractors.

45. The Debtors are currently engaged in a complex reorganization that has only just begun and requires their full attention in order to preserve and maximize the assets of the estates and achieve a successful emergence from Chapter 11. As such, enjoining the Related Actions will afford

the Debtors the full benefit of the "breathing spell" afforded to them under Chapter 11. Post-enjoinment, the Debtors will be able to dedicate all of their time and energies to stabilize their businesses, meeting and conferring with their key creditor and shareholder constituencies, and formulating a Chapter 11 plan that will allow them to successfully emerge from Chapter 11 and assure the ongoing supply of electricity and natural gas to their 16 million customers. Allowing the Related Actions to proceed will only frustrate this greater and more urgent purpose.

## COUNT ONE

### (Section 105 Preliminary and Permanent Injunction)

46. The Debtors repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

47. The Debtors seek a preliminary and permanent injunction to stay the continued prosecution of the Related Actions against the Non-Debtor Defendants under section 105(a) of the Bankruptcy Code until the Debtors emerge from Chapter 11.

48. This Court has the jurisdiction and authority to enjoin the Related Actions against the Non-Debtor Defendants under section 105(a) because the Related Actions are related to, and the continuation of the Related Actions against the Non-Debtor Defendants would unduly interfere with, the Chapter 11 Cases.

49. A Bankruptcy Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

50. A Bankruptcy Court may, therefore, in its discretion, issue injunctive relief under section 105 of the Bankruptcy Code in order to restrain activities that threaten the reorganization process or impair the court's jurisdiction with respect to the case before it.

51. The Debtors are reasonably likely to reorganize successfully.

52. Continued prosecution of the Related Actions against the Non-Debtor Defendants will have an immediate, adverse, and irreparable impact on the Debtors' estates. Allowing those claims to proceed would endanger the reorganization by diverting resources away from the bankruptcy proceedings.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

COMPLAINT FOR INJUNCTIVE RELIEF 15
Case: 19-30088 Doc# 470 Filed: 02/15/19 Entered: 02/15/19 20:31:25 Page 17 of 18

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

53. The balance of hardships favors an injunction as the irreparable harm to the Debtors outweighs any potential harm to the Defendants.

54. The requested injunctive relief will serve the public interest by allowing this Court to retain its exclusive jurisdiction over the Chapter 11 Cases and the Debtors' estates, facilitate the Debtors' successful reorganization, and by treating all general unsecured creditors equally.

55. Preliminary and permanent injunctive relief pursuant to section 105 of the Bankruptcy Code enjoining all the Related Actions is therefore necessary and appropriate.

WHEREFORE, the Debtors respectfully request relief as follows:

    a. That this Court exercise its powers under section 105 of the Bankruptcy Code to preliminarily and permanently enjoin the prosecution of the Related Actions against the Non-Debtor Defendants with the same effect and to the same extent as would be the case if section 362(a) of the Bankruptcy Code applied.

Dated: February 15, 2019

    **WEIL, GOTSHAL & MANGES LLP**

    **KELLER & BENVENUTTI LLP**

    By: */s/ Peter J. Benvenutti*
          Peter J. Benvenutti

    *Proposed Attorneys for Plaintiffs*
    *(Debtors and Debtors in Possession)*