# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | **Bankruptcy Case** |
| **PG&E CORPORATION,** | **No. 19-30088 (DM)** |
| - and - | |
| **PACIFIC GAS AND ELECTRIC** | **Chapter 11** |
| **COMPANY,** | **(Lead Case)** |
| Debtors. | **(Jointly Administered)** |

## CERTIFICATE OF PUBLICATION

I, Jesse Offenhartz, do declare and state as follows:

1.      I am employed at Prime Clerk LLC, the claims and noticing agent for the debtors in the above-referenced chapter 11 bankruptcy cases.

2.      This Certificate of Publication includes sworn statements verifying that the notice approved in the Interim Order Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Stock of, and Claims Against, the Debtors [Docket No. 212; Exhibit 4] as conformed for publication, was published in the *New York Times* and the *San Francisco Chronicle* on February 12, 2019, as described on **Exhibit A** and **Exhibit B** attached hereto.

3.      I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct and that if called upon as a witness, I could and would competently testify thereto.

Executed this 18th day of February 2019, at New York, NY.

JESSE OFFENHARTZ

SRF 30799

# Exhibit A


# PROOF OF PUBLICATION

Feb 13 _____ 2019

I, Alice Weber, in my capacity as a Principal Clerk of the Publisher of **The New York Times** a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of **The New York Times** on the following date or dates, to wit on

FEB 1 2 2019    B4  NATIONAL

_Alice Weber_

Sworn before me the

13th day of Feb, 2019

_Michelle M. Scibilia_

Notary Public

MICHELLE M. SCIBILIA
Notary Public, State of New York
Registration #01SC6281145
Qualified In Nassau County
Commission Expires May 13, 2021

**ATTENTION DIRECT AND INDIRECT HOLDERS OF, AND PROSPECTIVE HOLDERS OF, (I) STOCK ISSUED BY PG&E CORPORATION OR PACIFIC GAS & ELECTRIC COMPANY AND (II) CERTAIN CLAIMS AGAINST PG&E CORPORATION OR PACIFIC GAS & ELECTRIC COMPANY:**

Upon the motion (the "**Motion**") of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas & Electric Company ("**Utility**") (together with PG&E Corp., the "**Debtors**"), on January 31, 2019, the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"), having jurisdiction over the chapter 11 cases of the Debtors, captioned as *In re PG&E Corporation, et al.*, Case No. 19-30088 (the "**Chapter 11 Cases**"), entered an interim order establishing procedures (the "**Procedures**") with respect to direct and indirect trading and transfers of stock of the Debtors and scheduling a hearing on a final order with respect to such Procedures.

In certain circumstances, the Procedures restrict transactions involving, and require notices of the holdings of and proposed transactions by, any person or group of persons that is or, as a result of such a transaction, would become, a Substantial Stockholder of the common stock issued by PG&E Corp. (the "**Common Stock**"). For purposes of the Procedures, a "**Substantial Stockholder**" is any person or, in certain cases, group of persons that beneficially own, directly or indirectly (and/or owns options to acquire) at least 24.6 million shares of Common Stock (representing approximately 4.75% of all issued and outstanding shares of Common Stock)." *Any prohibited transfer of stock of the Debtors will be null and void ab initio and may lead to contempt, compensatory damages, punitive damages, or sanctions being imposed by the Bankruptcy Court.*

In addition, the Debtors have requested approval of additional procedures (the "**Claims Procedures**") as part of the final order that set forth (i) certain future circumstances under which any person, group of persons, or entity holding, or which as a result of a proposed transaction may hold, a substantial amount of certain claims against the Debtors may be required to file notice of its holdings of such claims and of proposed transactions, which transactions may be restricted, and (ii) certain limited circumstances thereafter under which such person(s) may be required to sell, by a specified date following the confirmation of a chapter 11 plan of the Debtors, all or a portion of any such claims acquired during the Chapter 11 Cases.

*The Procedures, as approved on an interim basis and as requested on a final basis (inclusive of the Claims Procedures), are available on the website of Prime Clerk LLC, the Debtors' Court-approved claims agent, located at https://restructuring.primeclerk.com/pge, and on the docket of the Chapter 11 Cases, Docket No. 212, which can be accessed via PACER at https://www.pacer.gov.*

A direct or indirect holder of, or prospective holder of, stock issued by the Debtors that may be or become a Substantial Stockholder or a direct or indirect holder of, or prospective holder of, a substantial amount of claims against the Debtors should consult the Procedures.

PLEASE TAKE NOTICE that the final hearing on the Motion shall be held on **February 27, 2019**, at **9:30 a.m. (Pacific Time)**, and any objections or responses to the Motion shall be in writing, filed with the Court (with a copy delivered to Chambers), and served upon (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Stephen Karotkin, Esq.; Jessica Liou, Esq.; Matthew Goren, Esq.; Kevin Bostel, Esq.), as proposed counsel to the Debtors; and (ii) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.), in each case so as to be received no later than **4:00 p.m. (Pacific Time) on February 20, 2019**.

PLEASE TAKE FURTHER NOTICE that the requirements set forth in the Procedures are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws and do not excuse non-compliance therewith.

Dated: San Francisco, California    **BY ORDER OF THE COURT**
January 31, 2019

## ECONOMY | MEDIA



MIKE BLAKE/REUTERS

Diana Ross celebrated her hits and her coming 75th birthday on Sunday night at the Grammy Awards, which drew slightly more viewers than last year.

# Grammys Show Stanches Declines in Viewership

**By JOHN KOBLIN**

Viewership for the Grammy Awards held steady on Sunday night, drawing an audience of 19.9 million people, according to Nielsen.

That was slightly better than the 19.8 million viewers who tuned in last year. The event, which returned to Los Angeles this year and was broadcast on CBS, featured performances by Lady Gaga, Jennifer Lopez and Cardi B. Alicia Keys hosted, and Michelle Obama made a cameo in the opening minutes of the ceremony.

The viewership figures will also help stop the bleeding. The Gram-

mys, which is generally the second-most-watched awards ceremony program, behind the Oscars, saw a 24 percent drop in viewers last year. Ratings declines have been the norm for awards shows in recent years, but the Grammys had proved mostly resilient.

Despite the onstage star power, several big names did not show this year, including Kendrick Lamar, Childish Gambino and Ariana Grande.

Sunday's total audience also keeps the Grammys within range of the Oscars. The Oscars telecast once seemed unassailable in its

ratings dominance, regularly exceeding the music ceremony by 20 million viewers in the 2000s. But the Oscars have seen a huge drop in viewership in the last five years. In 2014, the Oscars had nearly 44 million viewers. Last year, it drew 26.5 million viewers, a low.

ABC, which broadcasts the Oscars, and the Academy of Motion Picture Arts and Sciences have been on a mission to increase its audience. The academy briefly raised the possibility of introducing a new popular movie category to entice viewers before a backlash helped nix it. ABC has also in-

sisted that it will keep the ceremony to three hours, and that several categories will not be televised this year.

This year's ceremony will also have no host — but ABC has claimed that the lack of an M.C. has only fueled interest.

"I have found that the lack of clarity around the Oscars has kept them in the conversation," said Karey Burke, the president of entertainment at ABC, at a gathering with the news media last week. "The mystery is really compelling. People really care."

The Oscars are scheduled for Feb. 24.

# An Earnings Recession Clouds Growth Outlook

**FROM FIRST BUSINESS PAGE**

earnings would rise by 3.3 percent compared with the first quarter of 2018. And in October, before the stock markets entered a downward spiral at the end of the year, analysts had anticipated that first-quarter earnings would leap by 6.6 percent.

Corporate profits are by no means a perfect proxy for the health of the United States economy, the world's largest. But they exert heavy influence over the direction of the stock markets.

In the first nine months of last year, for example, an unexpected gusher of company earnings — up 20 percent from their previous levels — powered the S&P 500 to record highs. The fat bottom lines allowed investors to look past both the prospect of a trade war between the United States and China and a number of data points that showed large foreign economies, including Japan and Germany, losing steam.

Even in the final three months of 2018, as the United States appeared to be skidding into an economic recession, corporate profits leapt higher. Not all companies have disclosed their fourth-quarter results yet, but they are on track to be up 13.3 percent from 2017.

It isn't unusual for analysts to pare back their earnings forecasts over the course of a quarter. Corporate executives offer guidance about how their businesses are performing, and a variety of macroeconomic data helps analysts hone their profit projections. Over the past decade, analysts' profit forecasts have declined on average by 3.7 percent over the course of a full quarter.

On Dec. 31, analysts expected companies in the S&P 500 to earn, on average, $40.21 per share. Today, that estimate is $37.95 — an unusually large 5.6 percent drop, according to FactSet.

If companies' first-quarter performances turn out to be as weak as analysts expect, the United States will be on track for what the financial community calls an earnings recession, which occurs when corporate profits shrink for two straight quarters.

That looks increasingly likely to

happen in the first half of this year. Analysts expect earnings to rise by just 1.2 percent in the second quarter. That forecast is likely to fall, perhaps into negative territory, as more companies disclose their results and analysts update their forecasting models.

The S&P 500 last endured an earnings recession in 2015 and 2016. It was set off in large part by tumbling oil prices, which eroded the profits of energy companies. During that period, a six-year stock market rally stalled, and the S&P 500 twice fell by more than 10 percent.

Corporate profits this year were always going to face a difficult comparison with 2018. The combi-

---

*Corporate results are seen as likely to cool stock markets.*

---

nation of a strong United States economy and the newly reduced corporate tax rates led earnings to jump more than 20 percent.

But profits are now under pressure on multiple fronts, and there are no new tax cuts to cushion the blow — an ill omen for the stock market, if not the broader economy. Rising costs and a slowing global economy, in particular in China, have caused many S&P 500 companies to reduce their profit outlooks for 2019.

That is especially true among technology companies. Analysts expect them to report a nearly 10 percent decline in profits in the first quarter, the biggest decline of any sector in the S&P 500.

Much of the blame for the tech sector's declining fortunes rests with Apple. The company warned in early January that it was seeing diminished demand for new iPhones in China. When it reported earnings, Apple said it expected sales of $55 billion to $59 billion in the current quarter, below analysts' expectations for $59 billion.

Since the end of last year, analysts have cut by nearly 19 percent their estimates for how much Apple will earn in the first three months of the year.

## Falling Expectations

Projections for first-quarter growth have steadily declined in the last four months.

Note: Projections are based on consensus analysts estimates.

Source: FactSet

THE NEW YORK TIMES

**ATTENTION DIRECT AND INDIRECT HOLDERS OF, AND PROSPECTIVE HOLDERS OF, (I) STOCK ISSUED BY PG&E CORPORATION OR PACIFIC GAS & ELECTRIC COMPANY AND (II) CERTAIN CLAIMS AGAINST PG&E CORPORATION OR PACIFIC GAS & ELECTRIC COMPANY:**

Upon the motion (the "**Motion**") of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas & Electric Company ("**Utility**") (together with PG&E Corp., the "**Debtors**"), on January 31, 2019, the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"), having jurisdiction over the chapter 11 cases of the Debtors, captioned as *In re PG&E Corporation, et al.*, Case No. 19-30088 (the "**Chapter 11 Cases**"), entered an interim order establishing procedures (the "**Procedures**") with respect to direct and indirect trading and transfers of stock of the Debtors and scheduling a hearing on a final order with respect to such Procedures.

In certain circumstances, the Procedures restrict transactions involving, and require notices of the holdings of and proposed transactions by, any person or group of persons that is or, as a result of such a transaction, would become, a Substantial Stockholder of the common stock issued by PG&E Corp. (the "**Common Stock**"). For purposes of the Procedures, a "**Substantial Stockholder**" is any person or, in certain cases, group of persons that beneficially own, directly or indirectly (and/or owns options to acquire) at least 24.6 million shares of Common Stock (representing approximately 4.75% of all issued and outstanding shares of Common Stock).* *Any prohibited transfer of stock of the Debtors will be null and void ab initio and may lead to contempt, compensatory damages, punitive damages, or sanctions being imposed by the Bankruptcy Court.*

In addition, the Debtors have requested approval of additional procedures (the "**Claims Procedures**") as part of the final order that set forth (i) certain future circumstances under which any person, group of persons, or entity holding, or which as a result of a proposed transaction may hold, a substantial amount of certain claims against the Debtors may be required to file notice of its holdings of such claims and of proposed transactions, which transactions may be restricted, and (ii) certain limited circumstances thereafter under which such person(s) may be required to sell, by a specified date following the confirmation of a chapter 11 plan of the Debtors, all or a portion of any such claims acquired during the Chapter 11 Cases.

*The Procedures, as approved on an interim basis and as requested on a final basis (inclusive of the Claims Procedures), are available on the website of Prime Clerk LLC, the Debtors' Court-approved claims agent, located at https://restructuring.primeclerk.com/pge, and on the docket of the Chapter 11 Cases, Docket No. 212, which can be accessed via PACER at https://www.pacer.gov.*

A direct or indirect holder of, or prospective holder of, stock issued by the Debtors that may be or become a Substantial Stockholder or a direct or indirect holder of, or prospective holder of, a substantial amount of claims against the Debtors should consult the Procedures.

PLEASE TAKE NOTICE that the final hearing on the Motion shall be held on **February 27, 2019**, at **9:30 a.m. (Pacific Time)**, and any objections or responses to the Motion shall be in writing, filed with the Court (with a copy delivered to Chambers), and served upon (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Stephen Karotkin, Esq.; Jessica Liou, Esq.; Matthew Goren, Esq.; Kevin Bostel, Esq.), as proposed counsel to the Debtors, and (ii) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.), in each case so as to be received no later than **4:00 p.m.(Pacific Time)on February 20,2019.**

PLEASE TAKE FURTHER NOTICE that the requirements set forth in the Procedures are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws and do not excuse non-compliance therewith.

Dated:  San Francisco, California
           January 31,2019

**BY ORDER OF THE COURT**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re: MAMMOET-STARNETH LLC,  ) Chapter 11
                                                    )
                          Debtor.¹  ) Case No. 17-12925 (LSS)

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

**APPROVAL OF DISCLOSURE STATEMENT:** By Order, dated February 8, 2019 [D.I. 604] (the "Disclosure Statement Order"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (a) approved the *Disclosure Statement for the Second Amended Chapter 11 Plan of Liquidation of Mammoet-Starneth LLC* [D.I. 599] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") filed by Mammoet-Starneth LLC as debtor and debtor in possession (the "Debtor") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and (b) authorized the Debtor to solicit votes to accept or reject the *Second Amended Chapter 11 Plan of Liquidation of Mammoet-Starneth LLC* [D.I. 597] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan"), annexed as Exhibit A to the Disclosure Statement. All capitalized terms used, but not defined, herein shall have the same meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**CONFIRMATION HEARING.** On **March 22, 2019 starting at 10:00 a.m. (Eastern Daylight Time)**, or as soon thereafter as counsel may be heard, a hearing (the "Confirmation Hearing") will be held before The Honorable Laurie Selber Silverstein in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom No. 2, Wilmington, Delaware 19801 to consider confirmation of the Plan, as the same may be amended or modified. The Confirmation Hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by an announcement of such an adjournment in open court at the Confirmation Hearing or any adjournment thereof or an appropriate filing with the Bankruptcy Court. The Plan may be modified in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing. Parties entitled to vote to accept or reject the Plan must return their applicable ballots by U.S. Postal Service mail, overnight delivery, or personal delivery by hand to Mammoet-Starneth LLC Balloting c/o Rust Consulting/Omni Bankruptcy Attn: Paul Deutsch, Esq., 1120 Avenue of the Americas, 4th Floor, New York, New York 10036 so as actually received on or before **March 15,2019 at 4:00 p.m.(Eastern Daylight Time).**

**DEADLINE FOR OBJECTIONS TO CONFIRMATION OF THE PLAN.** Objections, if any, to confirmation of the Plan, including any supporting memoranda, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the name of the objector and the nature and amount of any Claim or Equity Interest asserted by the objector against or in the Debtor; (d) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection; and (e) be Filed with the Bankruptcy Court, together with proof of service, and served so that they are actually received by the following no later than **March 15, 2019 at 4:00 p.m. (Eastern Daylight Time)** which deadline may be extended by the Debtor in its sole discretion: (i) counsel to the Debtor, Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, NJ 07102, Attn: Andrew H. Sherman and Boris I. Mankovetskiy, with copy to Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Jason M. Madron; (ii) counsel to MUSA, Dentons US LLP, 101 JFK Parkway, Short Hills, NJ 07078, Attn: Philip R. White, with a copy to Bayard, P.A., 600 N. King Street, Suite 400, P.O. Box 25130, Wilmington, DE 19899, Attn: Justin Alberto; (iii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, Room 2207, 844 North King Street, Wilmington, DE 19801, Attn: Hannah McCollum; and (iv) all parties that have requested notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).

**ACCESS TO DOCUMENTS AND OTHER QUESTIONS.** Copies of the Disclosure Statement Order, the Plan, and the Disclosure Statement are available for inspection on the Bankruptcy Court's website at https://ecf.deb.uscourts.gov. A login and password to the Bankruptcy Court's Public Access to Electronic Court Records ("PACER") website are required to access this information and can be obtained through the PACER Service Center at https://www.pacer.psc.uscourts.gov. Copies of the Plan and Disclosure Statement are available for inspection during regular business hours, Monday through Friday 8:00 a.m. to 4:00 p.m., excluding federal holidays, at the office of the Clerk of the Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801. In addition, copies of the Disclosure Statement Order, the Plan, and the Disclosure Statement may be obtained free of charge by writing to the Debtor's balloting agent, Rust Omni, at the following address or email address: Mammoet-Starneth LLC Balloting c/o Rust Consulting/Omni Bankruptcy, Attn: Paul Deutsch, Esq., 1120 Avenue of the Americas, 4th Floor, New York, New York 10036 or paul@omnimgt.com (and reference "Mammoet-Starneth LLC" in the subject line).

¹ The last four digits of the Debtor's federal tax identification number are 4518. The Debtor's address is 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

**COMMERCIAL
REAL ESTATE
BUSINESS
OPPORTUNITIES**

**BUSINESS /
FRANCHISE
OPPORTUNITIES**

| Capital Wanted | 3402 |
| --- | --- |

MEDICAL MANAGEMENT COMPANY SEEKS INVESTORS
Unique investment opp'ty for passive ownership in start up Functional Medical Clinics. Proven methodology. 5 year case study performed. MD owned & supervised. Strong projected cash flow with profits paid monthly. Incredible supplemental income potential. Tax free distributions if invested from allowable retirement accounts. Offered only to accredited investors. 50k min. Serious inquiries call 1-866-663-9131

| Stores Miscellaneous | 3438 |
| --- | --- |

Bicycle Retail Store
NY Capital District area. Top brands, great staff, great customers in a beautiful town.
$1.4M plus gross sales. Long term lease available. Owner is retiring. ridemysuperrecord@gmail.com

**TimesTalks**

**Know What's Now.**
*KNOW WHAT'S NEXT.*

TimesTalks.com/Newsletter

GET 50% OFF

**The New York Times**

GIVE A DIGITAL SUBSCRIPTION TO A STUDENT AT THE EDUCATION RATE

Subscribe by visiting
**NYTIMES.COM/EDUGIFT**

**T|Store**
FROM THE NEW YORK TIMES

**Page Reprints.**
store.nytimes.com
800.671.4332

**The New York Times**

# Where do you see yourself in five years?

**FULL TIME**
Postdoctoral Researcher, Outer Planetary Science

Take your passion and turn it into a position. Our jobs site offers a remarkable array of career opportunities with unprecedented reach through the power of The Times and Times Talent Reach, a network of over 1,300 sites. Employers have their opportunities campaigned, targeted and optimized across the Internet, while recruiters and job seekers benefit from automatic candidate matching, scoring and ranking.

So save time, effort and expense by putting T Jobs to work for you.

**T|Jobs**

Find a good fit. Visit nytimes.com/jobs.

## **Exhibit B**

Case: 19-30088    Doc# 472    Filed: 02/18/19    Entered: 02/18/19 17:07:48    Page 5 of 7

# DECLARATION OF PUBLICATION OF
SAN FRANCISCO CHRONICLE

**ATTENTION DIRECT AND INDIRECT HOLDERS OF, AND PROSPECTIVE HOLDERS OF, (i) STOCK ISSUED BY PG&E CORPORATION OR PACIFIC GAS & ELECTRIC COMPANY AND (ii) CERTAIN CLAIMS AGAINST PG&E CORPORATION OR PACIFIC GAS & ELECTRIC COMPANY:**

Upon the motion (the "**Motion**") of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas & Electric Company ("**Utility**") (together with PG&E Corp., the "**Debtors**"), on January 31, 2019, the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"), having jurisdiction over the chapter 11 cases of the Debtors, captioned as *In re PG&E Corporation, et al.*, Case No. 19-30088 (the "**Chapter 11 Cases**"), entered an interim order establishing procedures (the "**Procedures**") with respect to direct and indirect trading and transfers of stock of the Debtors and scheduling a hearing on a final order with respect to such Procedures.

In certain circumstances; the Procedures restrict transactions involving, and require notices of the holdings of and proposed transactions by, any person or group of persons that is or, as a result of such a transaction, would become, a Substantial Stockholder of the common stock issued by PG&E Corp. (the "**Common Stock**"). For purposes of the Procedures, a "**Substantial Stockholder**" is any person or, in certain cases, group of persons that beneficially own, directly or indirectly (and/or owns options to acquire) at least 24.6 million shares of Common Stock (representing approximately 4.75% of all issued and outstanding shares of Common Stock)." *Any prohibited transfer of stock of the Debtors will be null and void ab initio and may lead to contempt, compensatory damages, punitive damages, or sanctions being imposed by the Bankruptcy Court.*

In addition, the Debtors have requested approval of additional procedures (the "**Claims Procedures**") as part of the final order that set forth (i) certain future circumstances under which any person, group of persons, or entity holding, or which as a result of a proposed transaction may hold, a substantial amount of certain claims against the Debtors may be required to file notice of its holdings of such claims and of proposed transactions, which transactions may be restricted, and (ii) certain limited circumstances thereafter under which such person(s) may be required to sell, by a specified date following the confirmation of a chapter 11 plan of the Debtors, all or a portion of any such claims acquired during the Chapter 11 Cases. *The Procedures, as approved on an interim basis and as requested on a final basis (inclusive of the Claims Procedures), are available on the website of Prime Clerk LLC, the Debtors' Court-approved claims agent, located at https:// restructuring.primeclerk.com/pge, and on the docket of the Chapter 11 Cases, Docket No. 212, which can be accessed via PACER at https://www.pacer.gov.*

A direct or indirect holder of, or prospective holder of, stock issued by the Debtors that may be or become a Substantial Stockholder or a direct or indirect holder of, or prospective holder of, a substantial amount of claims against the Debtors should consult the Procedures. PLEASE TAKE NOTICE that the final hearing on the Motion shall be held on **February 27, 2019, at 9:30 a.m. (Pacific Time)**, and any objections or responses to the Motion shall be in writing, filed with the Court (with a copy delivered to Chambers), and served upon (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Stephen Karotkin, Esq.; Jessica Liou, Esq.; Matthew Goren, Esq.; Kevin Bostel, Esq.), as proposed counsel to the Debtors, and (ii) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.), in each case so as to be received no later than **4:00 p.m. (Pacific Time) on February 20, 2019.** PLEASE TAKE FURTHER NOTICE that the requirements set forth in the Procedures are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws and do not excuse non-compliance therewith.

Dated:    San Francisco, California
**BY ORDER OF THE COURT**
          January 31, 2019

Lori Gomez

Declares that:
The annexed advertisement has been regularly published
In the

SAN FRANCISCO CHRONICLE

Which is an was at all times herein mentioned
established as newspaper of general circulation in the
City and County of San Francisco, State of California, as
the term is defined by Section 6000 of the Government
Code

SAN FRANCISCO CHRONICLE

(Name of Newspaper)

901 Mission Street

San Francisco, CA 94103

From _____ 2/12/19

To _____ 2/12/19

Namely on _____ 2/12/19

(Dates of Publication)

I declare under penalty of perjury that the foregoing is
true and correct.

Executed on _____ 2/12/19

At San Francisco, California

**BUSINESS**

# PG&E set to replace half of its board of directors

PG&E from page D1

beyond the company's statement that was filed with the Securities and Exchange Commission.

At the conclusion of the shareholders' meeting, which is scheduled for May 21, PG&E intends to have 11 independent directors, a majority of whom will be new to their roles, according to the company's statement.

One PG&E board member already left after the company announced its intent to reorganize under Chapter 11 of the U.S. Bankruptcy Code largely because of billions of dollars in potential liability it faces from the devastating 2017 and 2018 Northern California wildfires. The departure of that former board member, Roger Kimmel, came just after the abrupt exit of CEO Geisha Williams, who also resigned from her board seat.

In its statement, the PG&E board said it recognizes that the company must "re-earn trust and credibility with its customers, regulators, the communities it serves and all of its stakehold-

ers" and is "continuing to make changes that reinforce PG&E's commitment to safety and improvement."

"We recognize the importance of adding fresh perspectives to the Board to help address the serious challenges the business faces now and in the future," the statement said. "We have been working diligently to identify respected professionals with relevant experience in safety, operations and other critical areas, and we have identified a number of strong candidates."

The composition of PG&E's board had been publicly criticized by lawmakers including state Sen. Bill Dodd, D-Napa, who authored key legislation that will help the company handle 2017 wildfire costs. Dodd called for "systematic change" in PG&E's management and board after recent allegations from state regulatory staff that the company repeatedly falsified certain internal gas-safety records for several years.

In a statement Monday, Dodd said he supported PG&E's an-

nouncement but was critical of the timeline.

"While the change in the board is welcome, it's still taken way too long," he said. "And it doesn't make sense to wait another day on these changes with another



Paul Morigi / Getty Images 2017

Geisha Williams, seen here in 2017, abruptly resigned from her position on PG&E's board and as CEO last month shortly before the utility announced plans to file for bankruptcy protection.

fire season on the horizon. Time will tell if this new leadership instills the badly needed culture of safety at PG&E."

The New York hedge fund BlueMountain Capital Management, which has been critical of

PG&E's decision to seek bankruptcy protection, has also criticized the board composition. BlueMountain, which manages funds that own millions of PG&E shares, called on stockholders to replace the entire board

and said it plans to announce its own slate of candidates by Feb. 21.

*J.D. Morris is a San Francisco Chronicle staff writer. Email: jd.morris @sfchronicle.com Twitter: @thejdmorris*

---

# Is vaping to blame for youth smoking?

Vaping from page D1

products in the previous month. Some of the findings had been released before, including the boom in vaping.

Experts attribute the vaping increase to the exploding popularity of newer versions of e-cigarettes, like those by Juul Labs of San Francisco. The products resemble computer flash drives, can be recharged in USB ports and can be used discreetly — including in school bathrooms and even in classrooms.

Juul executives have said they are working to make it harder for underage teens to buy flavored Juul products. In November, under pressure from federal regulators, the company announced it would stop selling flavored nicotine pods in stores and implement new age verifica-

tion protocols on its website.

According to the new CDC data, about 8 percent of high schoolers said they had recently smoked cigarettes in 2018, and about 2 percent of middle schoolers did. Those findings were about the same seen in similar surveys in 2016 and 2017.

It also found that about 2 in 5 high school students who used a vaping or tobacco product used more than one kind, and that the most common combination was e-cigarettes and cigarettes. Also, about 28 percent of high school e-cigarette users said they vaped 20 or more days in the previous month — nearly a 40 percent jump from the previous year.

Smoking, the nation's leading cause of preventable illness, is responsible for more than




Thad Allender / Lawrence (Kan.) Journal-World 2002

The youth smoking rate has been flat for three years, after a steady decline.

480,000 deaths each year. The U.S. Food and Drug Administration bans the sale of e-cigarettes and tobacco products to those under 18.

E-cigarettes are generally considered better

than cigarettes for adults who are already addicted to nicotine. But health officials have worried for years that electronic cigarettes could lead kids to switch to smoking traditional cigarettes.

"I think the writing is on the wall," with research increasingly suggesting e-cigarettes are becoming a gateway to regular cigarettes, said Megan Roberts, an Ohio State University re-

searcher.

There is, however, some split of opinion among health researchers. Some had linked e-cigarettes to an unusually large drop in teen smoking a few years ago, and they say it's not clear to what extent the decline in smoking has stalled or to what degree vaping is to blame.

Cigarette smoking is still declining in some states. And another large survey found that smoking has continued to drop among 12th-graders, though not in younger school kids.

"It's not clear yet what's going on and it's best to not jump to any conclusions," said David Levy, a Georgetown University researcher.

*Chronicle staff writer Catherine Ho contributed to this report.*

*Mike Stobbe is an Associated Press writer.*

---

# 'Bond King' Gross ready to retire, his star dimmed

ASSOCIATED PRESS

Bill Gross, the famed and colorful bond investor who once controlled the world's largest mutual fund, is closing his professional career of more than 40 years and retiring to focus on managing his personal assets and private charitable foundation.

Gross, 74, was nicknamed the "Bond King" after co-founding investment firm Pimco in 1971 and delivering returns that were the envy of the fixed-income market. His predictions were closely followed by investors around the world as he made billions of dollars for investors of the Pimco Total Return mutual fund that he ran. But his star dimmed in recent years as his returns fell short of competitors.

Gross left Pimco for Janus in 2014 in a split that surprised investors, one that Gross has described as an internal power struggle. The Janus Henderson Global Unconstrained Bond fund that Gross now runs lost


Bill Gross co-founded investment firm Pimco in 1971.

3.9 percent last year, and it ranks in the bottom 6 percent of all nontraditional bond funds for returns over the last three years, according to Morningstar.

The investment strategy run by Gross has also fallen short of its benchmark, a three-month interest rate known as Libor, since late 2014. Recently, Gross' performance was hurt by trades that would have benefited from weaker prices for German government bonds.

The struggles are a sharp turnaround from earlier in Gross' career. When Morningstar named him its "manager of the decade" for fixed income in 2010, it said Gross made the right calls at the right times and made investors of the Pimco Total Return fund

during the previous 10 years.

Besides his strong performance, Gross also gained attention for the colorful commentaries he gave on the market's prospects. In March, for example, he cited everyone from Pol Pot to Moses as he gave his outlook for global financial markets, including a prediction that the yield on the 10-year Treasury would fluctuate around 3 percent for most of the year. It ended up getting as high as 3.26 percent in October before closing 2018 at 2.68 percent.

"Still, in my mind, this is a hibernating global bear bond market, not a beast," he wrote in the commentary. "That may come later, much like our programmable robots that may control future society."

Janus Henderson said that Nick Maroutsos, co-head of global bonds, will become portfolio manager of the Global Unconstrained Bond fund, effective Friday. Gross' departure is scheduled for March 1.

---

# LEGAL NOTICES
VISIT **SFGATE.COM/LEGALNOTICES**

**PUBLIC NOTICES (NON-GOVERNMENT)**

THAT pursuant to sections 3051 and 3052 of the civil code of the state of California And pursuant to the business and professions Code section 21700-21716, the undersigned will sell at Public sale by competitive bidding on Thursday the 21st day of February, 2019 at 10:00 AM, at lockerfox.com the following liened property. iStorage Ingleside Heights, 4050 19th Avenue, San Francisco, CA, 94132 San Francisco County
Ruiz, Annette D11111 FAN, BASKET, LAMP, TOTES, BOXES, BAGS, COMFORTER, DRAWERS, BOOTS.
6406 STROLLER, BOXES, SUITCASES, DOG HOUSE, CHAIRS, ICECHEST, DRAWERS, TOTES, BAGS.
Pitts, William E19022 BOXES, DUFFEL BAGS, BASKET, TOOL CASE, BACKPACK, FOLDING CHAIR, BAGS.
Pangaea Global B14071 BOXES, TOTE.
Thompson, Tanya D11206 SHOE BOXES, BAGS
Purchases must be paid for at the time of sales in cash only. All purchased items are sold as is.

ATTENTION DIRECT AND INDIRECT HOLDERS OF, AND PROSPECTIVE HOLDERS OF, (i) STOCK ISSUED BY PG&E CORPORATION OR PACIFIC GAS & ELECTRIC COMPANY AND (II) CERTAIN CLAIMS AGAINST PG&E CORPORATION OR PACIFIC GAS & ELECTRIC COMPANY:
Upon the motion (the "Motion") of PG&E Corporation ("PG&E Corp.") and Pacific Gas & Electric Company ("Utility") (together with PG&E Corp., the "Debtors"), on January 31, 2019, the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), having jurisdiction over the chapter 11 cases of the Debtors, captioned as In re PG&E Corporation, et al., Case No. 19-30088 (the "Chapter 11 Cases"), entered an interim order establishing procedures (the "Procedures") with respect to direct and indirect trading and transfers of stock of the Debtors and scheduling a hearing on a final order with respect to such Procedures.
In certain circumstances, the Procedures restrict transactions involving, and require notices of the holdings of and proposed transactions by, any person or group of persons that is or, as a result of such a transaction, would become, a Substantial Stockholder of the common stock issued by PG&E Corp. (the "Common Stock"). For purposes of the Procedures, a "Substantial Stockholder" is any person or, in certain cases, group of persons that beneficially own, directly or indirectly (and/or owns options to acquire) at least 24.6 million shares of Common Stock (representing approximately 4.75% of all issued and outstanding shares of Common

**PUBLIC NOTICES (NON-GOVERNMENT)**

Stock)." Any prohibited transfer of stock of the Debtors will be null and void ab initio and may lead to contempt, compensatory damages, punitive damages, or sanctions being imposed by the Bankruptcy Court.
In addition, the Debtors have requested approval of additional procedures (the "Claims Procedures") as part of the final order that set forth (i) certain future circumstances under which any person, group of persons, or entity holding, or which as a result of a proposed transaction may hold, a substantial amount of certain claims against the Debtors may be required to file notice of its holdings of such claims and of proposed transactions, which transactions may be restricted, and (ii) certain limited circumstances thereafter under which such person(s) may be required to sell, by a specified date following the confirmation of a chapter 11 plan of the Debtors, all or a portion of any such claims acquired during the Chapter 11 Cases.
The Procedures, as approved on an interim basis and as requested on a final basis (inclusive of the Claims Procedures), are available on the website of Prime Clerk LLC, the Debtors' Court-approved claims agent, located at https://restructuring.primeclerk.com/pge, and on the docket of the Chapter 11 Cases, Docket No. 212, which can be accessed via PACER at https://www.pacer.gov.
A direct or indirect holder of, or prospective holder of, stock issued by the Debtors that may be or become a Substantial Stockholder or a direct or indirect holder of, or prospective holder of, a substantial amount of claims against the Debtors should consult the Procedures.
PLEASE TAKE NOTICE that the final hearing on the Motion shall be held on February 27, 2019, at 9:30 a.m. (Pacific Time), and any objections or responses to the Motion shall be in writing, filed with the Court (with a copy delivered to Chambers), and served upon (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Stephen Karotkin, Esq.; Jessica Liou, Esq.; Matthew Goren, Esq.; Kevin Bostel, Esq.), as proposed counsel to the Debtors, and (ii) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.), in each case so as to be received no later than 4:00 p.m. (Pacific Time) on February 20, 2019.
PLEASE TAKE FURTHER NOTICE that the requirements set forth in the Procedures are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws, and do not

**PUBLIC NOTICES (NON-GOVERNMENT)**

excuse non-compliance therewith.

Dated: San Francisco, California
BY ORDER OF THE COURT
January 31, 2019

JENNIFER CRETCHER-MCCOY,
DEPUTY COUNTY COUNSEL -
SMB#187116
625 COURT STREET, ROOM 201
WOODLAND, CALIFORNIA 95695
TELEPHONE: (530) 666-8172

Attorneys for Yolo County Health and Human Services Agency

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COURT OF YOLO JUVENILE DIVISION

In the Matter(s) of
ANDRE RAY HENDRIX, JR.
Dependent(s)

NO: JV-15-244
CITATION

To: Unique V. Johnson
YOU ARE HEREBY CITED AND REQUIRED TO APPEAR at a hearing in Yolo County Juvenile Court, located at 1000 Main Street, Woodland, California 95695, on 3-27-19 at 9:00 a.m. in Department 6. At the hearing, the Court will decide whether to permanently terminate your parental rights over the above-named minor child born to you on November 3, 2008. If you wish to be represented by an attorney and are unable to afford one, the Court will appoint an attorney to represent you.

(SEAL)
DATED 12-12-2018

/S/
Judge of the Juvenile Court

**FICTITIOUS BUSINESS NAMES**

FICTITIOUS BUSINESS NAME STATEMENT
FILE NO. A-0385196-00
The following person is doing business as #1. Cartel Garage 3841 Judah St. SF CA 94122. Registrant(s) #1. Abraham Dabis 3841 Judah St. SF CA 94122. This business is conducted by an individual.
The registrant commenced to transact business under the above-listed fictitious business name on: 07/01/18
This statement was filed with the County Clerk of San Francisco on Feb 11, 2019
Published on:
Feb. 12, 19, 26 March 5 2019.