OREN B. HAKER (*pro hac vice*)
DAVID B. LEVANT (*pro hac vice*)
GABRIELLE GLEMANN (*pro hac vice*)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.386.7530
Facsimile: 206.386.7500
gabrielle.glemann@stoel.com

*Attorneys for Party in Interest*
*Enel Green Power North America, Inc.*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors. | Bankruptcy Case<br>No. 19 - 30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF GIOVANNI BERTOLINO IN SUPPORT OF ENEL GREEN POWER NORTH AMERICA'S (I) MOTION FOR ENTRY OF AN ORDER CONFIRMING SAFE HARBOR PROTECTION UNDER 11 U.S.C. §§ 362(b)(6) AND 556; AND (II) MOTION TO FILE UNDER SEAL** |
| ☐    Affects PG&E Corporation<br>☒    Affects Pacific Gas and Electric Company<br>☐    Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Hearing Date:    March 12, 2019<br>Time:    9:30 a.m.<br>Courtroom:    Hon. Dennis Montali<br><br>Objections Due:    March 5, 2019, 4 p.m. |

I, Giovanni Bertolino, declare as follows:

1.     I am an Associate Vice President, Business Development of Enel Green Power North America, Inc. ("Enel").  I submit this declaration (the "Declaration") on behalf of Enel in support of (i) Enel's Motion for Entry Of An Order Confirming Safe Harbor Protection Under 11 U.S.C. §§ 362(b)(6) and 556 (the "Safe Harbor Motion") and (ii) Enel's Motion Under 11 U.S.C. §§ 105(a) and 107(b) and FRBP 9018 to File Certain Contracts and Related Filings Under Seal (the "Motion to File Under Seal").  I have personal knowledge of the facts stated in this Declaration.  If called as a witness I could, and would, competently testify under oath as set forth below.

2.     Enel is one of the largest owners and operators of renewable energy plants in North America, with projects operating and under development in twenty-four U.S. states and two Canadian provinces.  In North America, Enel operates more than one hundred power plants with a total managed capacity of nearly 5 GW powered by renewable hydropower, wind, geothermal and solar energy.

3.     Cascade Energy Storage, LLC, a wholly-owned subsidiary of Enel, is party to that certain Capacity Storage Agreement dated November 8, 2017 (the "Cascade CSA"), with Pacific Gas and Electric Company ("PG&E").

4.     Sierra Energy Storage, LLC, a majority-owned subsidiary of Enel, is party to that certain Capacity Storage Agreement dated November 8, 2017 (the "Sierra CSA"), with PG&E.

5.     Kingston Energy Storage, LLC, a wholly-owned subsidiary of Enel, is party to that certain Capacity Storage Agreement dated November 8, 2017 with PG&E (the "Kingston CSA," and together with the Cascade CSA and the Sierra CSA, the "CSAs").

**The CSAs**

6.     Each CSA encompasses two phases: (i) the development of an energy storage facility, and (ii) providing resource adequacy capacity to PG&E from each facility (each a "Facility," and together, the "Facilities").

Stoel Rives LLP
Attorneys At Law
Seattle

Case: 19-30088    Doc# 484    Filed: 02/19/19    Entered: 02/19/19 17:50:52    Page 2 of 7

7.      The Cascade CSA relates specifically to the development of a Facility in Stockton, California and the provision of resource adequacy to PG&E from that Facility (the "Cascade Project").

8.      The Sierra CSA relates specifically to the development of a Facility in Jamestown, California and the provision of resource adequacy to PG&E from that Facility (the "Sierra Project").

9.      The Kingston CSA relates specifically to the development of a Facility in Madera, California and the provision of resource adequacy to PG&E from that Facility (the "Kingston Project," and together with the Cascade Project and the Sierra Project, the "Energy Storage Projects").

10.      The CSAs by their terms, unless otherwise terminated, will continue for a period of ten to twenty years from the initial delivery date, depending on the project.  At the time of execution, the expected initial delivery date under each CSA was set between December 1, 2022 and December 1, 2023, depending on the project.

11.      After development and construction of the Facilities is complete, Enel will provide resource adequacy capacity to PG&E as needed to allow PG&E to hedge against price fluctuation by providing grid stability and to comply with its regulatory commitments.

12.      The CSAs also enable PG&E to comply with the California Public Utilities Commission (the "CPUC") Decision No. 13-10-040, which requires that PG&E meet certain energy storage procurement targets. Under each CSA, the Enel subsidiary party thereto is required to post increasing amounts of collateral at various stages in the project's development. To date, Enel has already posted $▆▆▆▆▆ in collateral as security under the CSAs.

13.      Under the CSAs, PG&E is required obtain a final and non-appealable order from the CPUC approving the CSAs, including payments made thereunder, and confirming that the CSAs count toward PG&E's energy storage procurement obligations established in D.13-10-040. Once the CPUC approval becomes final and non-appealable, Enel is required under the CSAs to

Stoel Rives LLP
Attorneys At Law
Seattle

post additional security in the total amount of $███████ (the "Project Development Security") to ensure Enel's continuing performance in developing the Energy Storage Projects.

**The Interconnection Agreements**

14.  In connection with the Cascade CSA, Cascade Energy Storage, LLC entered into that certain Large Generator Interconnection Agreement dated as of December 4, 2018, with the California Independent System Operator Corporation ("CAISO") and PG&E (the "Cascade LGIA").

15.  In connection with the Sierra CSA, Sierra Energy Storage, LLC entered into that certain Small Generator Interconnection Agreement dated as of December 3, 2018, with CAISO and PG&E (the "Sierra SGIA").

16.  In connection with the Kingston CSA, Enel filed an interconnection application in April 2018 for the CAISO Cluster 11 process. The corresponding Interconnection Agreement (the "Kingston LGIA," and together with the Cascade LGIA and the Sierra SGIA, the "Interconnection Agreements") is expected to be executed in December 2020.

17.  The Interconnection Agreements will allow Enel to connect the relevant Facility to PG&E's transmission system and to deliver the Facility's output using the available capacity of the CAISO controlled grid. The Interconnection Agreements include a schedule for posting collateral (the "Interconnection Financial Security") that covers the costs of constructing the interconnection facilities and network upgrades to ensure that each Facility will have deliverability.

18.  Under the Cascade LGIA and the Sierra SGIA, Enel has been notified by the CAISO that it is required to post Interconnection Financial Security in the amount of (i) $███████ for the Cascade LGIA by February 28,2019, and (ii) $███████ for the Sierra SGIA by March 1, 2019.

19.  As discussed at a meeting between Enel and the CAISO held February 4, 2019, the CAISO will require Enel to post Interconnection Financial Security in the amount of $███████

to $███ by April 15, 2019, in connection with the Kingston LGIA, with the final amount depending on which specific process Enel chooses for the Kingston Project.

20.     Largely due to uncertainty regarding whether the CSAs will be terminated in connection with PG&E's bankruptcy, Enel has made requests to the CAISO and PG&E to assess whether it would be possible to extend the commercial operation date on the Cascade project and the financial posting deadline on the Sierra project.  This process is currently underway and it is uncertain whether the extension will be granted.

**Additional Costs Incurred by Enel's Continuing Performance**

21.     Enel has been developing the Energy Storage Projects since the first quarter of 2016, and along with the significant internal resources that have been allocated directly to each Energy Storage Project, Enel has been incurring additional costs, including land lease option payments, interconnection application fees and financial guarantees, outside legal counsel, and additional third-party consulting services related to permitting, CAISO market analysis, and development assistance.

22.     From 2016 to 2019, Enel's accounting records show that the three Energy Storage Projects incurred $███ in direct cash expenses, and Enel has posted $███ in letters of credit for financial guarantees related to the CSAs and the Interconnection Agreements.

23.     Going forward, Enel is continuing to develop the Energy Storage Projects and to incur mounting costs.

24.     In order to retain the legal right to the land on which the Facilities will be built, Enel holds options to lease with landowners which require quarterly payments.  In connection with the Cascade and Kingston Projects, $███ will be due in July 2019 and again in October 2019.

25.     In addition, in an effort to keep the Energy Storage Projects on schedule, Enel is beginning to engage third-party engineering and environmental permitting firms to begin design, environmental studies, and permit applications for the projects.  Due to recent experience in this process (for another battery energy storage project in Southern California), Enel estimates the

Stoel Rives LLP
Attorneys At Law
Seattle

cost will be around $███ incurred in the first quarter of 2019, to conduct site surveys and prepare preliminary engineering documents to be submitted to the governing cities and counties.

26.     These costs are in addition to the significant financial obligations Enel faces in continuing to perform under the CSAs and the Interconnection Agreements.

**Motion to File Under Seal**

27.     In connection with the Safe Harbor Motion, Enel has concurrently filed a Motion to File Under Seal, requesting entry of an order authorizing the filing under seal of the CSAs and the related Interconnection Agreements, as well as unredacted versions of the Safe Harbor Motion and this Declaration. The CSAs and Interconnection Agreements contain sensitive and confidential commercial information, and Enel and PG&E have therefore agreed that these agreements not be publicly disclosed. Each of the CSAs contain a provision stating that throughout the term of the agreement, "neither party shall disclose the non-public terms or conditions of this Agreement or the Parties' bidding or negotiation process … to a third-party."

28.     Additionally, when PG&E filed the application for approval of the CSAs with the CPUC (Application 17-12-003), PG&E claimed the CSAs were confidential in their entirety, and the CSAs were filed under seal.

29.     The relief requested in the Motion to File Under Seal is necessary in order to avoid putting Enel and PG&E at a competitive disadvantage by constraining their ability to negotiate capacity storage agreements in future transactions.

1      I declare under penalty of perjury under the law of the United States and the state of

2  California that the foregoing is true and correct.

3

4      Executed this eleventh day of February, 2019 at Andover, Massachusetts.

5

6                                Giovanni Bertolino

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SEATTLE

100063274.5 0036525-00141