Sander L. Esserman *(Admitted Pro Hac Vice)*
Cliff I. Taylor *(Admitted Pro Hac Vice)*
STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.
2323 Bryan Street, Suite 2200
Dallas, TX 75201-2689
Telephone: 214-969-4900
Email: esserman@sbep-law.com

Scott Summy
John Fiske (CSBN 249256)
BARON & BUDD, P.C.
3102 Oak Lawn Avenue #1100
Dallas, TX 75219
Telephone: 214-521-3605
Email: ssummy@baronbudd.com

Christopher H. Hart (CSBN 184117)
Kimberly S. Fineman (CSBN 184433)
NUTI HART LLP
411 30TH Street, Suite 408
Oakland, CA 94609-3311
Telephone: 510-506-7152
Email: kfineman@nutihart.com

Attorneys for Public Entities Impacted by the Wildfires

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088-DM. | Case No. 19-30088-DM<br><br>Chapter 11<br>Lead Case, Jointly Administered<br><br>**OBJECTION OF THE PUBLIC ENTITIES TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 362, 363, 364, 503, AND 507, AND FED. R. BANKR. P. 2002, 4001, 6003, 6004 AND 9014 FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED, SUPERPRIORITY, POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING FINAL HEARING AND (V) GRANTING RELATED RELIEF**<br><br>Date: February 27, 2019<br>Time: 9:30 a.m.<br>Place: 450 Golden Gate Avenue, Ctrm 17<br>      San Francisco, CA 94102 |

The Public Entities[1] hereby file this *Objection of The Public Entities to Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503, and 507, and Fed. R. Bankr. P. 2002, 4001, 6003, 6004 and 9014 for Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured, Superpriority, Postpetition financing, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling Final Hearing and (V) Granting Related Relief* (the "**Objection**"). In support of the Objection, the Public Entities state as follows:

## I.

## INTRODUCTION

The Public Entities consist of the representative governmental bodies of communities that were devastated by the 2017 Northern California Wildfires[2] and the 2018 Camp Fire.[3] The Public Entities have requested that the United States Trustee form an official committee of Public Entities comprised of the Public Entities.[4]

The Public Entities each hold unliquidated unsecured claims against the Debtors arising out the 2017 Northern California Wildfires and the 2018 Camp Fire. More specifically, the Public Entities have suffered significant damages to many public services, including, but not

---

[1] The Public Entities consist of the following California public entities with claims against the Debtors arising out of damages from the 2017 Northern California Wildfires and the 2018 Camp Fire: (a) Calaveras County Water District, (b) Napa County, (c) City of Napa, (d) Mendocino County, (e) Lake County, (f) City of Clearlake, (g) Nevada County, (h) Yuba County, (i) City of Santa Rosa, (j) Sonoma County, (k) Sonoma County Agricultural Preservation and Open Space District, (l) Sonoma County Community Development Commission, (m) Sonoma County Water Agency, (n) Sonoma County Sanitation District, (o) Town of Paradise, and (p) Butte County.

[2] The 2017 Northern California Wildfires began on October 8, 2017 when multiple wildfires spread through Northern California, including Napa, Sonoma, Butte, Humboldt, Mendocino, Del Norte, Lake, Nevada and Yuba Counties, as well as the area surrounding Yuba City. The Debtors acknowledge that the 2017 Northern California Wildfires consumed 245,000 acres of land, resulting in at least 44 fatalities and the destruction of an estimated 8,900 structures. *See* Declaration of Jason P. Wells in Support of First Day Motions and Related Relief, Docket No. 27 at p. 12-13.

[3] The 2018 Camp Fire began on November 8, 2018 near the city of Paradise, Butte County, California. The Debtors acknowledge that the 2018 Camp Fire consumed 153,336 acres of land, resulting in at least 86 facilities and the destruction of 13,972 residences, 528 commercial structures and 4,293 other buildings. *See id.* at p. 11-12.

[4] In the event the United States Trustee does not appoint an official committee for the Public Entities, the Public Entities intend to request such relief from this Court under 11 U.S.C. § 1102(a)(2), which provides that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders."

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

limited to, parks, roads, bridges, sidewalks, culverts, drains, storm and water systems (both damage to and contamination of such systems), traffic lights, stop signs, public landscaping, art, lost capacities in reservoirs, water storage and landfills. In addition, dead or dying trees, soil erosion, debris flows, flooding, and mudslides that resulted from the wildfires are a threat to the public welfare and safety of the communities represented by the Public Entities. In the face of this significant destruction, the Public Entities' damages have been compounded by (1) loss of revenue from property, sales, and other taxes, (2) loss of revenue-generating assets and services, (3) increased costs from workers' compensation claims and overtime, (4) increased use and need of law enforcement, emergency response personnel, and other public safety services, and (5) other damages.

The Public Entities object to the relief requested by the Debtors in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503, and 507, and Fed. R. Bankr. P. 2002, 4001, 6003, 6004 and 9014 for Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured, Superpriority, Postpetition financing, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling Final Hearing and (V) Granting Related Relief* (the "***DIP Facility Motion***")[5] on the following grounds:

(1) The Debtors have failed to demonstrate that the proposed grant of a First Priority Lien on the Debtors' causes of action under Chapter 5 of the Bankruptcy Code in favor of the DIP Lenders, and to the detriment of the Debtors' unsecured creditors, is proper under the circumstances of these bankruptcy cases; and

(2) The Debtors improperly propose to exclude administrative expense claims under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) from the Carve-Out.[6]

---

[5] Capitalized terms used in this Motion and not otherwise defined shall have the meaning ascribed to them in the DIP Facility Motion.

[6] "***Carve-Out***" shall have the meaning ascribed to it in ¶10 of the Court's Interim Order Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503, and 507 and Fed. R. Bankr. P. 2002, 4001, 6004 and 9014 (I) Authorizing Debtors to Obtain Senior Secured, Superpriority, Postpetition Financing, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling Final Hearing, and (V) Granting Related Relief (Docket No. 217).

## II.

## BACKGROUND

On January 29, 2019 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

On the Petition Date, the Debtors filed the DIP Facility Motion, requesting interim and final relief with respect to a $5.5 billion credit facility on a secured, superpriority basis.

On January 31, 2019, this Court entered its Interim Order Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503, and 507, and Fed. R. Bankr. P. 2002, 4001, 6003, 6004 and 9014 (I) Authorizing the Debtors to Obtain Senior Secured, Superpriority, Postpetition Financing, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling Final Hearing and (V) Granting Related Relief (the "***Interim Order***"), which granted certain of the relief requested by the Debtors in the DIP Facility Motion on an interim basis, subject to the entry of a Final Order.

In the DIP Facility Motion, the Debtors seek a Final Order allowing the Debtors to grant to the DIP Lenders and/or the DIP Agents a perfected first priority security interest and lien on essentially all of the Debtors' unencumbered assets and property.[7] This first lien would attach to, *inter alia*, all the Debtors' causes of action under Chapter 5 of the Bankruptcy Code ("***Avoidance Actions***") (*See* DIP Facility Motion, Docket No. 23 at p. 21). The Public Entities object to any such grant of a lien on the Avoidance Actions.

In the DIP Facility Motion, the Debtors further seek a Final Order granting to the DIP Lenders and/or DIP Agents a superpriority administrative expense claim for all of the Debtors DIP Obligations under the DIP Loan Documents, which claims would only rank junior to the Carve-Out claims and have priority over all other claims against the Debtors. Notably, the Carve-Out does not include claims by unofficial committees or others seeking reimbursement on the basis of substantial contribution to the estate under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4). The Public Entities assert that the DIP Liens and DIP Superpriority Claim should

---

[7] The Debtors seek to grant to the DIP Lenders and/or the DIP Agents a junior perfected security interest and lien on the any and all of the other assets and property of the Debtors to the extent such assets are subject to valid, perfected and non-avoidable liens in favor of third parties that were in existence on the Petition Date.

rank junior to substantial contributions claims under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) and such should be included in any carve-out with the other estate professionals.

### III.

### **OBJECTION**

**A.     The Court should not approve a first priority security interest and lien on the Avoidance Actions for the benefit of the DIP Lenders and to the detriment of the Debtors' unsecured creditors.**

This Court's Guidelines for Cash Collateral and Financing Stipulations provide that the Court will not ordinarily approve the waiver of, or liens on any of the estate's rights arising under 11 U.S.C. §§ 544, 545, 547, 548, 549 or 553, or the proceeds of any such rights (Guidelines for Cash Collateral and Financing Stipulations at E.7). The Court's guidelines are consistent with the notion that Chapter 5 causes of action are to be maintained for the benefit of a debtor's entire creditor body. *See Rahl v. Bande*, 316 B.R. 127, 131 (S.D.N.Y. 2004) (recognizing that Section 544 avoidance actions are to be asserted for the benefit of all creditors the rights that any individual creditor has under applicable state law to avoid fraudulent transfers).

In light of the Court's general disapprobation of the granting of liens to the DIP Lenders on the Avoidance Actions (or the proceeds thereof), the Debtors must show some extenuating circumstances that would warrant the Court's deviation from its guidelines. The Debtors have failed to do so. Instead, the Debtors merely claim that "the DIP Lenders were unwilling to extend $5.5 billion in credit without such terms" and "the terms of the DIP Facilities are otherwise favorable to the Debtors and their estates" (DIP Facility Motion, Docket No. 23 at p. 35). If the Debtors' perfunctory rationale was sufficient for this Court to deviate from its own guidelines, the guidelines would be rendered meaningless.

A proposed financing should not be approved where the purpose of the financing is to benefit only certain creditors rather than the estate or where the arrangement would skew the conduct of the bankruptcy case. *See In re Ames Dept. Stores, Inc.,* 115 B.R. 34, 38-39 (Bankr. S.D.N.Y. 1990) (reviewing case law and concluding that the "cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business

judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest"). Here, the request by the Debtors for approval of a Final Order that would allow for the pledge of the estates' interests in the Avoidance Actions as security for the DIP Loan benefits only the DIP Lenders to the detriment of all the other creditors in these bankruptcy cases. The Debtors' DIP Facility Motion should be denied to the extent that it provides for such a prejudicial lien.

**B.  The Debtors improperly propose to exclude administrative expense claims under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) from the Carve-Out.**

The Debtors propose that the DIP Liens and DIP Superpriority Claim be granted priority over all other claims in this bankruptcy, except for the Carve-Out administrative claims, which receive priority up to $25 million but are limited to (a) U.S. Trustee fees and Clerk of Court fees, (b) fees and expenses (not to exceed $100,000) of a trustee under 11 U.S.C. § 726(b),[8] and (c) fees and expenses of the Debtors' professionals and the professionals of the official committees formed in these cases. Conspicuously missing from the list of Carve-Out claims are claims for substantial contribution to the estate under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4). There is no reason why administrative expense claims approved by this Court under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) should not have the same priority of payment under the Carve-Out as claims for professionals of the Debtors or the official committees.

Where a creditor or others makes a substantial contribution to a bankruptcy reorganization and is awarded its actual, necessary expenses under 11 U.S.C. 503(b)(3)(D) or its counsel is awarded compensation under 11 U.S.C. 503(b)(4), those administrative claims have the same priority under 11 U.S.C. § 507(a)(2) as do the administrative claims of the debtor

---

[8] The Public Entities object to the Debtors' proposed cap of $100,000 for the fees and expenses of a trustee under 11 U.S.C. § 726(b). The proposed cap is inadequate. Any relief granted the Debtors in the Final Order should provide for a reasonable amount to be allocated for the fees and expenses of a trustee.

*…Continued*

6
Case: 19-30088    Doc# 494    Filed: 02/20/19    Entered: 02/20/19 11:18:51    Page 6 of 7
OBJECTION TO MOTION RE POSTPETITION FINANCING

or an official committee.[9] To exclude such claims from the Carve-Out would not only be unduly prejudicial, it could discourage creditors and others from potentially contributing to the estate.[10]

**C.   The Public Entities reserve their right to further object.**

The Public Entities reserve their right to adopt any other objection filed in these bankruptcy cases pertaining to the relief requested by the Debtors in the DIP Facility Motion.

## IV.

## CONCLUSION

WHEREFORE, the Public Entities respectfully request that (a) their objection be granted, (b) the proposed Final Order be amended consistent with these objections, and (c) the Public Entities be granted such other and further relief as the Court deems just and proper.

Dated:  February 20, 2019            STUTZMAN, BROMBERG, ESSERMAN &
                                     PLIFKA, P.C.


                                     By:  */s/ Sander L. Esserman*
                                          Sander L. Esserman
                                          Attorneys for Public Entities Impacted by the Wildfires

Dated:  February 20, 2019            BARON & BUDD, P.C.


                                     By:  */s/ Scott Summy*
                                          Scott Summy
                                          Attorneys for Public Entities Impacted by the Wildfires

Dated:  February 20, 2019            NUTI HART LLP


                                     By:  */s/ Kimberly S. Fineman*
                                          Kimberly S. Fineman
                                          Attorneys for Public Entities Impacted by the Wildfires

---

[9] Section 507(a)(2) provides that all Section 503(b) claims are to receive the same priority of payment. Administrative claims for compensation and reimbursement to the Debtors and the official committees is provided for in Section 503(b)(2) by reference to 11 U.S.C. § 330(a).

[10] Notably, the DIP Lenders would be provided an opportunity to object to an application for allowance of an administrative expense claims made under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) if they believed such an award to be unwarranted.

Case: 19-30088    Doc# 494    Filed: 02/20/19    Entered: 02/20/19 11:18:51    Page 7 of 7