MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
221 Sansome Street, Third Floor
San Francisco, CA 94104-2323
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Creditor U.S. TELEPACIFIC CORP.
dba TPx COMMUNICATIONS

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| IN RE<br><br>PG&E CORPORATION,<br><br>           Debtor.<br><br>IN RE:<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>           Debtor. | Case Nos. 19-30088-DM<br>                  19-30089-DM<br><br>Chapter 11<br><br>OBJECTION OF U.S. TELEPACIFIC CORP. dba TPX COMMUNICATIONS TO DEBTOR'S MOTION TO PROVIDE ADQUATE ASSURANCE TO UTILITY PROVIDERS (DKT. NO. 32); DEMAND FOR ADEQUATE PROTECTION<br><br>Date: February 27, 2019<br>Time: 9:30 a.m.<br>Place: Courtroom 17, 16th Flr.<br>        450 Goldengate Avenue<br>        San Francisco, CA<br>        Hon. Dennis Montali |

     COMES NOW U.S. TelePacific Corp. dba TPx Communications ("U.S. TelePacific") and objects to the Motion of PG&E, Debtor herein, for Approval of Its Proposal for Adequate Assurance Payment to Utility Providers (Dkt. No. 32) ("Motion") and respectfully represents:

**INTRODUCTION**

     U.S. TelePacific Corp. dba TPx Communications is party to a Master Agreement dated March 11, 2015 (the "Agreement") with the PG&E to provide high quality and extensive IDM,

1

internet and related services (Neal Declaration, Ex. "A").  The average monthly billing is approximately $53,000.00 (*Id.* at 2:1).  On the Petition Date, PG&E was indebted to U.S. TelePacific in the amount of $51,711.00 (*Id.*).  Pursuant to the Agreement, and course of dealing between the parties, the average billing cycle is monthly, payable net sixty (60) days from the date of the bill, and PG&E generally pays within thirty (30) days.  Accordingly, U.S. TelePacific finds the proposed two-week adequate protection "deposit" inadequate to protect U.S. TelePacific in the event of a default at the end of the 60-day period, during which time two months' additional charges will have accrued.  U.S. TelePacific proposes that PG&E be ordered to pay within thirty (30) days, and that the amount of the "deposit" be increased to sixty (60) days' charges.  Average monthly charges are $57,000.00, a deposit of $114,000.00 (two months' charges) will protect U.S. TelePacific in the event that PG&E defaults at the end of the proposed reduced billing cycle.

Equally significant, U.S. TelePacific objects to PG&E's proposal to "deposit" a two-week payment with itself.  A commercially acceptable security deposit must be perfected in accordance with the California Commercial Code, that is, either place the deposit directly with U.S. TelePacific or place U.S. TelePacific in a position of "control" over the account.  California Commercial Code Sections 9312(b)(1), 9314, 9104(a)(2).

## ARGUMENT

### I. LACK OF EVIDENTIARY SUPPORT FOR ADEQUATE PROTECTON.

PG&E's only attempt to provide evidence to support its Motion is an oblique reference to the voluminous "Wells Declaration", which does not direct the reader to the particular part of the Wells Declaration upon which it relies. (PG&E's Motion, 6:14-18).  There is no evidence to support the contention of PG&E's "good payment history," although this is irrelevant, 11 U.S.C. §366(3)(B)(ii). (PG&E's Motion, 7:1-6).  There is no evidence to support the contention that the thirty (30) day cost of utility service will be approximately $8.6 million (PG&E's Motion, 7:6), that the appropriate Adequate Assurance Deposit is $4.8 million (PG&E's Motion, 8:16), or that PG&E has adequate funds for day-to-day expenses and post-petition amounts for utility services <u>and</u> the deposit. (PG&E's Motion, 8:4-6).  PG&E provides no information about the terms and conditions under which the deposits will be held by them, nor whether U.S. TelePacific will be freely able to enforce

2

its rights, without interference, in the event of default. Nor is there any indication that U.S. TelePacific will be able to seek modification should circumstances change. U.S. TelePacific notes that PG&E bounced its last check to it in the amount of $51,711.00 (Neal Declaration, 2:2-3).

The significance of the evidentiary gaps in PG&E's Motion is that it renders its representations regarding Adequate Protection dubious because they cannot be verified. It is for this reason that U.S. TelePacific demands that a cash deposit equal to sixty (60) days' charges be deposited with U.S. TelePacific.

## II. THE PG&E MOTION DOES NOT COMPLY WITH CURRENT LAW.

In the absence of an agreement with the utility, PG&E must provide either a cash deposit, a letter of credit, a certificate of deposit, a surety bond or a pre-payment. 11 U.S.C. §366(c)(1). PG&E proposes none of those things. Indeed, PG&E did not contact U.S. TelePacific at any time prior to or after the filing of the Motion to discuss an agreement. Based on the statute, U.S. TelePacific is entitled to a cash deposit or something similar. PG&E is well familiar with this practice as it receives and holds cash deposits from new customers. (See, *PG&E's Motion Authorizing Debtors to (A) Maintain and Administer Customer Programs, Including Public Purpose Programs, and (B) Honor any Prepetition Obligations Relating Thereto; and (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* regarding customer deposits, Dkt. No. 16). Segregating the money in an interest-bearing account which PG&E holds itis not what is contemplated by a "cash deposit." To constitute a "deposit" it should be paid to and held by the party to be benefited, here, U.S. TelePacific.

Moreover, *Va. Elec. & Power Co. v. Caldor, Inc*., 117, F3d 646 (2nd Cir. 1997), is not a statement of current law, having been legislatively overruled by the enactment of Section 366(c). This case was a statement of pre-2005 amendments law and recognize the right of the Bankruptcy Court to dispense with the requirement of a deposit as adequate assurance of payment. (PG&E Motion, 11:22-25).

Section 366 was amended by the 2005 Amendments to the Bankruptcy Code, which added Section 366(c) and made a conforming amendment to 366(a). Section 366(c) created new limits on the methods by which a chapter 11 debtor may provide adequate assurance and gave utilities greater

rights in chapter 11 cases. (Pub. L. No. 109-8 (2005) effective with respect to cases filed on or after October 17, 2005.) However, as also noted by PG&E, 366(c) does not give the Bankruptcy Court discretion to modify the express requirements of 366(b).

Moreover, PG&E's reference to its alleged pre-payment history is irrelevant, as 366(c)(3)(B)(ii) prohibits the court from taking this into consideration.

### III. THE PROPOSED "DEPOSIT" IS ILLUSORY BECAUSE IT DOES NOT PROVIDE U.S. TELEPACIFIC CORP. WITH A PERFECTED SECURITY INTEREST.

A commercially acceptable security deposit must be perfected in accordance with the California Commercial Code, that is, either place the deposit directly with U.S. TelePacific or place U.S. TelePacific in a position of "control". California Commercial Code Sections 9312(b)(1), 9314, 9104(a)(2). The PG&E proposal provides that PG&E will retain custody and control of the deposit, giving neither to U.S. TelePacific. This does not comply with the California statutes with respect to perfection of a security interest, nor does it comply with the definition of "cash deposit," because PG&E is not depositing the money with anyone, simply keeping it in its possession.

There is no procedure for U.S. TelePacific to retrieve the amount of the unpaid charges and, moreover, nothing to assure that the amount of the deposit will cover the unpaid charges of the many utilities because, as indicated in the following section, the proposed deposit does not take into account additional unpaid charges that may arise during the billing cycle.

### IV. THE PROPOSED ADEQUATE PROTECTION PAYMENT IS INADEQUATE.

PG&E's proposal to make an adequate protection payment equal to a two-week charge is inadequate because, as indicated above, the average billing cycle is monthly, with payments not due for sixty (60) days. PG&E generally pays in less than thirty (30) days. Additional charges accrue in the meantime to all utilities. For this reason, it will be sixty (60) days before PG&E might default, leaving U.S. TelePacific at risk for the unpaid payment plus two additional months. At monthly billing of $57,000.00, the total exposure to U.S. TelePacific is as much as $228,000.00. (Neal Declaration). A deposit of anything less is not "adequate" for purposes of Section 366.

///

///

**CONCLUSION**

PG&E is a good customer of U.S. TelePacific and it is hoped that it continues as such. U.S. TelePacific desires what it is entitled to under Section 366, and requests the following relief:

1. That PG&E be ordered to pay invoices within thirty (30) days;

2. For a cash deposit of $114,000.00, to be held by U.S. TelePacific Corp., as security for payment of statements unpaid after thirty (30) days;

3. PG&E must timely pay all of its post-petition charges in full, when due, including the amount of the dishonored check of $51,711.00 and all charges on other post-petition Service Invoices thereafter; and

4. If PG&E does not pay all amounts due and all charges on other post-petition Service Invoices, then U.S. TelePacific Corp. may collect such amounts from the cash deposit and terminate service.

Dated: February 20, 2019         MACDONALD | FERNANDEZ LLP

                                 By:   /s/ Iain A. Macdonald
                                       Iain A. Macdonald, Attorneys for Creditor
                                       U.S. TELEPACIFIC CORP.
                                       dba TPx COMMUNICATIONS