EMILY P. RICH, Bar No. 168735
TRACY L. MAINGUY, Bar No. 176928
CAITLIN GRAY, Bar No. 305118
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
Telephone (510) 337-1001
Fax (510) 337-1023
E-Mail: bankruptcycourtnotices@unioncounsel.net
 erich@unioncounsel.net
 tmainguy@unioncounsel.net
 cgray@unioncounsel.net

Attorneys for Creditor Engineers and Scientists of California, Local 20, IFPTE

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| In Re<br><br>PG&E CORPORATION,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 DM<br><br>CHAPTER 11<br><br>**EXHIBIT F TO DECLARATION OF JOSHUA SPERRY IN SUPPORT OF ESC LOCAL 20'S RESPONSE TO DEBTOR'S MOTION TO PAY PREPETITION EMPLOYEE OBLIGATIONS AND CONTINUE WAGES AND BENEFITS**<br><br>Date: February 27, 2019<br>Time: 9:30 a.m.<br>Location: U.S. Bankruptcy Court<br> Courtroom 17, 16th Floor<br> San Francisco, CA 94102 |

**DECLARATION OF JOSHUA SPERRY IN SUPPORT OF ESC LOCAL 20'S RESPONSE TO EMPLOYEE WAGES AND BENEFITS MOTION**
Case No. 19-30088 DM

# Exhibit F

# To Declaration of Joshua Sperry iso ESC Local 20's Response to Debtor's Motion to Pay Prepetition Employee Obligations and Continue Wages and Benefits



Matthew Levy  
Senior Manager  
Labor Relations  

375 N. Wiget Lane, Suite 130  
Walnut Creek, CA 94598  
925.974.4404  

**18-06-ESC**

June 5, 2018

Joshua Sperry, Senior Union Representative  
Engineers and Scientists of California, Local 20  
IFPTE (AFL-CIO & CLC)  
810 Clay Street  
Oakland, CA 94607

Dear Mr. Sperry:

Due to the recent significant changes and additional upcoming changes in tools, processes, and technologies, the Company announced its intention to consolidate and optimize Gas Mapping. The Company and Union have been meeting to discuss the effects on employees as a result of these changes. The "relocation period" in this Agreement refers to June 1, 2018 thru May 31, 2020.

In accordance with Section 21.9, the Company proposes to make the voluntary incentive offers contained in this Agreement to impacted employees in the affected headquarters as defined below.

1. **Realignment and Consolidation Locations:**

    1. Concord Service Center (1030 Detroit Avenue)
    2. Sacramento Service Center (5555 Florin-Perkins Road)
    3. Stockton Regional Office (3136 Boeing Way)
    4. San Ramon Bishop Ranch (6111 Bollinger Canyon Road)
    5. Hayward Service Center (24300 Clawiter Road)

2. **Relocation of Impacted Employees to Regional Consolidated Headquarters**

    A. For the purpose of this Agreement, "IMPACTED EMPLOYEE" refers to any regular employee working in the Gas Distribution Mapping department in a classification listed below at a location other than those listed in Section 1 above as of the effective date of this Agreement:

    | CLASSIFICATIONS | SAP Job Code | Pay Scale Group |
    | --- | --- | --- |
    | Principal Mapping Technician - Gas | 50010540 | 3227 |
    | Lead Mapping Technician - Gas | 50010542 | 3229 |
    | Senior Mapping Technician - Gas | 50010544 | 3231 |
    | Senior Mapping Technician I - Gas | 50010546 | 3233 |
    | Mapping Technician - Gas | 50010550 | 3242 |

    B. Following the execution of this Agreement, and when administratively possible, IMPACTED EMPLOYEES will be provided a list of available options in the form of a voluntary Commitment Letter. All employees who choose to enter into a Commitment Letter will have 14 calendar days

    to consider their options but must return both fully executed forms by close of business on the 15th calendar day. Although the decision to commit is entirely voluntary, once the forms are returned, the employee's selection will be binding.

C. The Commitment Letter will designate the employee's commitment to relocate and report to the specified headquarters, assigned based upon the employee's seniority and preference of available positions at the new headquarters and within the relocation periods outlined below, and the corresponding incentive payment.

    a) $20,000 in exchange for relocation and report to one of the consolidated headquarters listed in Section 1 above, made before May 31, 2019.

    b) $10,000 in exchange for relocation and report to one of the consolidated headquarters listed in Section 1 above, made before May 31, 2020.

D. The above relocation bonus payment will only be made to those IMPACTED EMPLOYEES who, by accepting the assignment under Section C above, have increased their commute by reporting to the new location and as a result have a commute in excess of either 30 miles, or 20 miles in cases where either the employee's home or new headquarters or both are within the Bay Area, defined as the following divisions: San Francisco, Peninsula, De Anza, San Jose, Mission, East Bay, Diablo and North Bay.

E. Employees will be informed if they are eligible for the relocation incentive prior to being asked to sign a Commitment Letter.

F. Assignments will be made to IMPACTED EMPLOYEES in order of seniority, first within the Bid Region and then the System. Senior Mapping Technician – Gas, Senior Mapping Technician I – Gas, and Mapping Technician – Gas will be considered the same classification for this purpose. No Senior, Lead or Principal Mapping Technician will be demoted as a result of this process.

G. Employees accepting relocation bonus payments also agree to waive any bidding rights for 24 months from the report date, with the following exceptions:

    a) Employees may still bid to higher classifications in the same Line of Progression.

    b) Utilization of the employee's already existing preferential bid rights under Section 21.2(a) or Section 21.13 (a).

    c) The above waiver of bidding rights can be modified by agreement between a Local ESC Business Representative and PG&E Labor Relations.

H. Employees reporting to new positions under this process will have preferential return rights under Section 22.3.c in filling the next vacancy in their original or successively lower classification or headquarters or both.

I. On or before the Commitment Letter relocation period ends, the employee will be required to report to the newly designated headquarters that was identified in the Commitment Letter. After the employee relocates and reports to the new headquarters, the employee will receive the appropriate relocation bonus payment as described in Sections C and D. Such bonus payments will be made in one lump sum by the Company within four pay periods after reporting to the new headquarters. If the Company postpones an employee's report date, the employee will still receive the amount of incentive based on the date in their original Commitment Letter and payment will be made within four pay periods of the original report date.

J. The Company agrees not to implement involuntary layoff under Section 22.3 of the classifications discussed in this Agreement for the relocation period.

K. The Company agrees not to implement involuntary relocations for the classifications covered by this Agreement under Section 22.9 for the relocation period except in the following circumstances:

1. Closing of a reporting headquarters/office, or

2. Relocations where the resulting commute will be shorter than the employee's current commute, or

3. Relocations where the resulting commute for the affected employee is less than 30 miles, or 20 miles in cases where either the employee's home or new headquarters or both are within the Bay Area, defined as the following divisions: San Francisco, Peninsula, De Anza, San Jose, Mission, East Bay, Diablo and North Bay.

L. No employee will be involuntarily relocated outside their bid region.

M. If an employee is involuntarily relocated and could have received an incentive for voluntarily choosing this move, they will have the option to choose a preferred location as described above, provided that opportunities are available. Lead and Principal Mapping Technicians who elect voluntary relocation and are eligible for an incentive, but are not permitted to relocate due to management requirements, including the need to retain a Lead or Principal in their original office, will still receive the incentive payment and moving allowance.

N. Only IMPACTED EMPLOYEES as defined in this Agreement will be subject to the possibility of involuntary relocation under the conditions provided for in this section.

O. Any individual employee may only be involuntarily relocated once during the relocation period, with the exception of closing of a reporting headquarters/office. An employee who accepted an incentive and relocated to a preferred location may not be involuntarily relocated again during the relocation period.

P. Moving Allowance. Employees who are eligible for the Section 22.7 Moving Allowance as a result of relocating to a position in one of the new headquarters will be eligible for an enhanced moving allowance of $5,000. Employees will not be required to relocate to be eligible for the allowance. Eligible employees will receive the allowance as a flat amount rather than as reimbursement for covered expenses as in Section 22.7.

Q. No employee will receive more than one incentive payment.

3. **Alternative Work Schedules**

In accordance with the provisions of Letter of Agreement 93-11-ESC, the Company will offer a 4/10 schedule at the locations listed in Section 1 for positions covered by this Agreement. Company will determine a consistent start time and regular days off for employees at these schedules by location; however, start times must be between the hours of 6:30 a.m. and 8:00 a.m.

4. **Oversight Committee**

Company and Union agree to establish a Joint Oversight Committee consisting of an equal number of Company and Union representatives. Committee members will be appointed by the Company and Union, respectively.

The Committee will address all unanticipated or implementation issues arising from this Agreement. This Committee will also be responsible for attempting to address and resolve disputes arising from this Agreement prior to a grievance being filed.

The Committee may consider the concept of a role for Mappers in Local headquarters to provide Quality Control (QC) checking and other functions, and the costs and benefits of a hub/satellite staffing model.

**5. Jurisdiction**

The execution of this Agreement facilitates a temporary settlement of a related issue involving the creation of specialty maps which show PG&E gas facilities and environmental or other layers on the same map. The parties agree that for the duration of the "relocation period", the Company may assign this work to both Bargaining Unit and Non-Bargaining unit employees at the Company's discretion. Company will also provide training on advanced GIS skills to Mappers selected by the Company. Section 5 of this Agreement shall not be used by either party to claim disposition of the jurisdictional issue and is made without prejudice or preference to the position of either party. It is acknowledged that this Agreement does not change Mapper work jurisdiction in any way.

If you agree, please so indicate in the space provided below and return one executed copy of this letter to the Company.

Very truly yours,

PACIFIC GAS & ELECTRIC COMPANY

By: _Brenda Hegge on behalf of_
Robert Joga
Senior Director

The Union is in agreement.

ENGINEERS AND SCIENTISTS OF CALIFORNIA
LOCAL 20, IFPTE, AFL-CIO and CLC

_____6/5_____, 2018     By: _____
Joshua Sperry
Senior Union Representative

Case: 19-30088    Doc# 503-6    Filed: 02/20/19    Entered: 02/20/19 14:36:23    Page 6 of 6