1  JOSEPH G. McGUINNESS - State Bar No. 115983
   JEFFREY S. FLASHMAN - State Bar No. 161186
2  MCGUINNESS & ASSOCIATES
   3858 Carson Street, Suite 301
3  Torrance, California 90503
   Telephone: (310) 792-0495
4  Facsimile:  (310) 792-0520

5  Attorneys for Creditor,
   AA/Acme Locksmiths, Inc.
6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11  | In re:                         | )  | Case Nos.   19 - 30088 (DM) |
12  | PG&E CORPORATION                | )  |             19 - 30089 (DM) |
13  | - and -                         | )  | Chapter 11 |
14  | PACIFIC GAS AND ELECTRIC        | )  | OBJECTION OF CREDITOR AA/ACME LOCKSMITHS, INC. TO FINAL ORDER |
15  | COMPANY,                        | )  | GRANTING OPERATIONAL INTEGRITY SUPPLIER MOTION |
16  | Debtors.                        | )  | |
17  |                                 | )  | Date: February 27, 2019 |
    |                                 | )  | Time: 9:30 a.m. |
18  |                                 | )  | Courtroom: |
    | ☐   Affects PG&E Corporation    | )  | |
19  | ☐   Affects Pacific Gas and Electric | ) | |
20  |        Company                  | )  | |
21  | ☒   Affects both Debtors        | )  | |
22  |                                 | )  | |
    | * ALL PAPERS SHALL BE FILED IN  | )  | |
23  | THE LEAD CASE, NO. 19-30088 (DM). | ) | |

24

25                         I. INTRODUCTION

26       AA/Acme Locksmiths, Inc. dba Acme Security Systems ("Acme") provides access

27  control to Debtors' facilities in a manner consistent with federal and state regulation that relate

28  to the facilities in question.

1   Acme objects to the entry of a final order granting the motion for the Debtors to pay

2   Operational Integrity Suppliers because Debtors have not made any progress toward

3   determining which suppliers fall within this category. Inquiries to Debtors are met with

4   responses that management does not know if a party falls within this category and a promise for

5   additional information, which is not forthcoming.

6   In sum, Debtors have asked for a significant amount of discretion because that

7   discretion is ostensibly necessary to operate its business. Debtors' lack of responsiveness and

8   lack of planning to move quickly to make the determination of whether a supplier falls within

9   the definition of an Operational Integrity Supplier demonstrates that Debtors are not in a

10  position to exercise this type of unfettered discretion.

11  Acme requests that the Court continue the hearing on this motion for a period of one

12  month to allow Debtors to take the steps promised in the initial motion – identify and establish

13  a matrix of the Operational Integrity Suppliers. Debtors should at least be in the position of

14  being able to inform suppliers whether they are considered an Operational Integrity Supplier

15  before the Court grants Debtors the virtually unfettered right to favor some creditors over other

16  similarly situated creditors.

17  ## II. FACTUAL BACKGROUND

18  When Debtors filed this motion, they made a very specific representation to the Court:

19  "As of the Petition Date, the Debtors estimate that they owe approximately $116,200,000 on

20  account of Operational Integrity Supplier Claims . . . of which approximately $30,100,000 will

21  come due in the first thirty (30) days of the Chapter 11 Cases. (Debtors' Motion to Pay Safety

22  and Reliability Providers ("Motion"), p. 7, ln. 28 - p. 8, ln. 3.) At the hearing of the interim

23  motion, the focus of many arguments were on what companies the Debtor would determine

24  were characterized as Operational Integrity Suppliers, and whether there would be any ability to

25  challenge the Debtors' determinations in this regard. Obviously, some creditors feel uneasy

26  about Debtors being granted discretion to treat some creditors differently from other creditors

27  that would otherwise be similarly situated – i.e., unsecured trade creditors.

28

Case: 19-30088   Doc# 506   Filed: 02/20/19   Entered: 02/20/19 15:07:47   Page 2 of 7
Objection to Final Order on Operational Supplier Motion

1    Based on the representations made in the motion, it certainly appeared that Debtors had
2    largely identified the Operational Integrity Suppliers, and the process of providing its suppliers
3    with that information would be expedient. Indeed, the motion went on to state: "the Debtors
4    have put into place detailed procedures for identifying and selecting Operational Integrity
5    Suppliers and ensuring that only Operational Integrity Suppliers will be paid pursuant to this
6    Motion." (Motion, p. 8, lns. 22-24.)
7    Indeed, the declaration provided in support of this motion states: "The Debtors, with the
8    assistance of their advisors, spent significant time prior to the Petition Date analyzing and
9    reviewing their operations, books and records, accounts payable systems, and prepetition
10   vendor and service provider lists to identify those vendors, suppliers, and service providers
11   that arc in fact critical to the Debtors' operations and public health and safety, the loss of which
12   could materially harm the Debtors' businesses and/or their customers and the public, in order to
13   determine the Operational Integrity Suppliers." (Wells Decl., p. 116, lns. 7 - 12.)
14   As a party that believed it was an Operational Integrity Supplier because it supplies
15   mandated access controls for nuclear and other power facilities, Acme assumed determining
16   whether it qualified would be a relatively simple task. To Acme, the determination is material
17   as to whether and how it continues to supply the Debtors, as it is under no specific contractual
18   obligation to continue to supply the Debtors.
19   All efforts to determine whether it would be considered an Operational Integrity
20   Supplier have been met with little more than a shrug of the shoulders. Counsel for the Debtors
21   have made clear the issue is to be determined by management. Acme's efforts to obtain an
22   answer from management have led to one of two responses: (1) the contact person does not
23   know; or (2) the contact person states he or she will inquire and provide a response. Acme has
24   never received any response to these inquiries, and understands that other vendors face the same
25   lack of information.
26   It appears the detailed procedures for identifying Operational Integrity Suppliers have
27   not been implemented and may not even exist.
28

Case: 19-30088   Doc# 506   Objection to Final Order on Operational Supplier Motion   Filed: 02/20/19   Entered: 02/20/19 16:07:47   Page 3 of 7

Before the Court provides the Debtors with the right to provide priority payments to in excess of $116,000,000 in claims, the Court ought to require the promised mechanism exist. On that basis, Acme requests the Court defer ruling in a final order until Debtors have created the detailed procedures they promised, and informed suppliers whether they qualify as Operational Integrity Suppliers.

## III. LEGAL ANALYSIS

As a general rule, a debtor may not favor some creditors of a certain priority class over other creditors of that same class: "Section 507 establishes the priorities of creditors intended by Congress; and section 1123 requires that a chapter 11 plan must 'provide the same treatment for each claim or interest of a particular class.' 11 U.S.C. § 1123. There is no indication that Congress intended the courts to fashion their own rules of super-priorities within any given priority class." (*Matter of B & W Enterprises, Inc.* (9th Cir. 1983) 713 F.2d 534, 537.)

The Debtors cite to numerous cases from other circuits where courts permitted payments to certain members of a class of creditors where the business judgment of the debtor established the payments were necessary to the reorganization of the debtor. Those cases hold that a specific showing must be made before such funds are expended. For example, in the *Ionosphere Clubs, Inc.* cited by Debtors, the Court disallowed the expenditure: "This is a large and complex bankruptcy case in its early triage stage. The $200 million cash reserve that Eastern stated it had as of the filing date should be used only when it is demonstrated that it is necessary and indeed critical that such funds should be expended." (*In re Ionosphere Clubs, Inc.* (Bankr. S.D.N.Y. 1989) 98 B.R. 174, 179.)

Acme does not contest that Debtors will ultimately be able to make the appropriate showing on a case-by-case basis. Given the fact that, despite its representations, no mechanism is in place to determine what suppliers must be paid on a "necessary and critical" basis, and that Debtors are proposing to expend a vast amount of funds on a purely discretionary basis, Acme objects to the final order being granted under the present circumstance.

Instead, this hearing should be continued, and the Debtors should be required to provide the Court with the criteria for making the determination of whether a supplier qualifies as an Operational Integrity Supplier.

### IV. CONCLUSION

Based on the foregoing, Acme objects to the granting of a final order on the Operational Integrity Suppliers motion until such time as Debtors are able to articulate the criteria, and actually identify and notify its vendors of whether such vendors qualify as Operational Integrity Suppliers.

Dated: February 19, 2019

MCGUINNESS & ASSOCIATES

By _____
Joseph G. McGuinness
Jeffrey S. Flashman
Attorneys for Creditor
AA/Acme Locksmiths, Inc.

**PROOF OF SERVICE**

STATE OF CALIFORNIA - COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to the within action. My business address is McGuinness & Associates, 3858 Carson Street, Suite 301, Torrance, California 90503.

On the service date below I served the document described as:

**OBJECTION OF CREDITOR AA/ACME LOCKSMITHS, INC. TO FINAL ORDER GRANTING OPERATIONAL INTEGRITY SUPPLIER MOTION**

on the interested parties to this action addressed as follows:

**SEE ATTACHED SERVICE LIST**

_____ By first class mail by depositing a sealed envelope in the United States Mail at Torrance, California, with postage fully prepaid.

_____ Via Courier by depositing in a sealed envelope and delivering to the courier, with all charges fully prepaid.

__XX__ By overnight delivery by depositing such envelope in a box or other facility regularly maintained by an express service carrier, or delivered it to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for at Torrance, California.

__XX__ I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was executed on February 19, 2019, at Torrance, California.

_____
Patrice McDonald

# SERVICE LIST

Debtors' Counsel

Tobias S. Keller
Keller and Benvenutti LLP
650 California St., #1900
San Francisco, CA 94108

Debtors' Counsel

Stephen Karotkin
Jessica Liou
Matthew Goren
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

U.S. Trustee

Office of the U.S. Trustee
Phillip J. Burton Federal Building
450 Golden Gate Ave., 5th Floor., #05-0153
San Francisco, CA 94102

PROOF OF SERVICE