Mark D. Poniatowski, Esq. (#123405)
Kimberly F. Leding, Esq. (#233618)
Meera T. Parikh, Esq. (#217996)
PONIATOWSKI LEDING PARIKH PC
20980 Redwood Road, Suite 200
Castro Valley, California 94546
Telephone: (510) 881-8700
Facsimile: (510) 881-8702

Attorneys for Creditor
Holt of California, a California corporation

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br>_____<br><br>[ ] Affects PG&E Corporation<br>[ ] Affects Pacific Gas and Electric Company<br>[X] Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).*<br>_____ | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>EXHIBITS "A" THROUGH "B" TO THE SUPPLEMENTAL DECLARATION OF DARRELL WEIGHT IN SUPPORT OF REFILED CONDITIONAL OBJECTION OF HOLT OF CALIFORNIA TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(b)(9) AND FED. R. BANKR. P. 6003 AND 6004 FOR INTERIM AND FINAL AUTHORITY TO PAY PREPETITION OBLIGATIONS OWED TO CERTAIN SAFETY AND RELIABILITY, OUTAGE, AND NUCLEAR FACILITY SUPPLIERS<br><br>DATE: February 27, 2019<br>TIME: 9:30 a.m.<br>CTRM.: 17 |

| Exhibit | Title | Pages |
|---|---|---|
| A | Supplier FAQ | 2-7 |
| B | Letter to Supplier | 8-9 |

In re Pacific Gas and Electric Company, Chapter 11 Case No. 19-30088
EXHIBITS "A" THROUGH "B" TO THE SUPPLEMENTAL DECLARATION OF DARRELL WEIGHT IN SUPPORT OF REFILED CONDITIONAL OBJECTION OF HOLT OF CALIFORNIA TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(b)(9) AND FED. R. BANKR. P. 6003 AND 6004 FOR INTERIM AND FINAL AUTHORITY TO PAY PREPETITION OBLIGATIONS OWED

Page 1

Case: 19-30088   Doc# 508-4   Filed: 02/20/19   Entered: 02/20/19 15:19:50   Page 1 of 9

**EXHIBIT "A"**



# Supplier
## Frequently Asked Questions

1. **Why did PG&E file for Chapter 11?**
   - The devastating and unprecedented wildfires of 2017 and 2018 have had a profound impact on our customers, employees and the communities we serve.
   - Resolving our legal liabilities and financial challenges will be enormously complex and will require us to address multiple stakeholder interests, including thousands of wildfire victims and others who have already made claims and likely thousands of others we expect to make claims.
   - Chapter 11 is expected to enable the continued safe delivery of natural gas and electric service to our customers, and support the orderly, fair and expeditious resolution of PG&E's potential liabilities resulting from the Northern California wildfires.
   - This process will assure access to the financial resources necessary to support ongoing operations and enable PG&E to continue investing in our systems, infrastructure and critical safety efforts, including our Community Wildfire Safety Program, an additional precautionary safety measure implemented following the 2017 Northern California wildfires to further reduce wildfire risk.
   - This process also allows us to work with customers, civic leaders, regulators, policymakers and other key stakeholders to consider alternatives to provide for the safe delivery of natural gas and electricity and new safety solutions in an environment challenged by climate change.

2. **Will PG&E continue in business after the Chapter 11 filing?**
   - Yes. PG&E will remain in business to service its customers. The Chapter 11 filing will give PG&E an opportunity to address and resolve its financial situation while providing the ability to maintain ongoing operations.
   - As a result, PG&E will continue to require goods and services from our supplier community consistent with the past.
   - The Court granted PG&E approval to access up to $1.5 billion of its $5.5 billion in debtor-in-possession financing, which will provide sufficient liquidity to meet our post-petition obligations.
   - The DIP financing will also provide PG&E with necessary capital to ensure essential maintenance and continued investments in safety and reliability.
   - We will ask for final approval of the balance of the DIP financing and final approval of other first day motions at a hearing on February 27, 2019.
   - In accordance with the Bankruptcy Code, PG&E will continue to pay all undisputed invoices for post-petition goods and services in the ordinary course based on standard or agreed-upon terms.



3. **Will PG&E continue in business after the Chapter 11 filing?**
   - Yes. PG&E will remain in business to service its customers. The Chapter 11 filing will give PG&E an opportunity to address and resolve its financial situation while providing the ability to maintain ongoing operations.
   - As a result, PG&E will continue to require goods and services from our supplier community consistent with the past.
   - The Court granted PG&E approval to access up to $1.5 billion of its $5.5 billion in debtor-in-possession financing, which will provide sufficient liquidity to meet our post-petition obligations.
   - The DIP financing will also provide PG&E with necessary capital to ensure essential maintenance and continued investments in safety and reliability.
   - We will ask for final approval of the balance of the DIP financing and final approval of other first day motions at a hearing on February 27, 2019.
   - In accordance with the Bankruptcy Code, PG&E will continue to pay all undisputed invoices for post-petition goods and services in the ordinary course based on standard or agreed-upon terms.

4. **Will PG&E continue to order goods and services from its suppliers?**
   - Yes. PG&E will remain in business to service its customers. The Chapter 11 filing will give PG&E an opportunity to address and resolve its financial situation while providing the ability to maintain ongoing operations.
   - In accordance with the Bankruptcy Code, PG&E will continue to pay all undisputed invoices for post-petition goods and services in the ordinary course based on standard or agreed-upon terms.

5. **Does PG&E have sufficient liquidity to meet its business obligations?**
   - The Court granted PG&E approval to access up to $1.5 billion of its $5.5 billion in debtor-in-possession financing, which will provide sufficient liquidity to meet our post-petition obligations, including to our suppliers.
   - The DIP financing will also provide PG&E with necessary capital to ensure essential maintenance and continued investments in safety and reliability.
   - We will ask for final approval of the balance of the DIP financing and final approval of other first day motions at a hearing on February 27, 2019.

6. **Am I going to be paid for invoices in the PG&E system prior to the Chapter 11 filing?**
   - The Bankruptcy Code does not permit payment for goods and services received prior to the filing date except in very limited circumstances that must be authorized by the Bankruptcy Court.
   - Any claims for such goods and services will be addressed as part of the Chapter 11 process.
   - We sincerely regret any hardship this may cause.

7. **How will my pre-petition claim be addressed? When will that be paid? Will I receive full recovery?**
   - It is too early to make any estimate on potential recoveries for creditors.
   - Suppliers should consult with legal counsel to understand their specific rights and to address initial questions about the Chapter 11 process.
   - Goods and services provided will be categorized as either pre- or post-petition claims according to the date the goods and services were received.



8. **Will suppliers be paid for goods and services provided after the filing date?**
   - Under the Bankruptcy Code, the Company will pay all undisputed invoices for goods delivered and services provided during the post-petition period (i.e., after the Chapter 11 filing date, January 29, 2019) in the ordinary course based on standard or agreed-upon terms.
   - Please reach out to your usual sourcing contact or SupplierInquiries@pge.com with additional questions.

9. **What happens to my invoices if I am not paid prior to the Chapter 11 filing date?**
   - It is too early to make any estimate on potential recoveries for creditors.
   - Suppliers should consult with legal counsel to understand their specific rights and to address initial questions about the Chapter 11 process.
   - Goods and services provided will be categorized as either pre- or post-petition claims according to the date the goods and services were received.
   - All items determined to have been provided post-petition will be paid in the ordinary course on standard or agreed upon terms.
   - PG&E's claims agent, Prime Clerk, will be providing the appropriate forms once a deadline for filing claims has been set. Proof of claims forms and other information about the claims process will be available at the following website: https://restructuring.primeclerk.com/pge or by calling the Company's claims agent, Prime Clerk, toll-free from the U.S., at 844-339-4217 or at 1-929-333-8977 for calls originating outside the U.S., or by sending an email to pgeinfo@primeclerk.com.

10. **Do I follow the normal process to submit invoices for goods delivered or services provided PRIOR to the Chapter 11 filing (e.g. work performed in January)? Will these invoices be immediately paid or sent to the Bankruptcy Court?**
    - Yes, you should follow the normal process for submitting invoices.
    - PG&E will institute a supplemental review process to determine whether or what portion of invoices submitted after the Chapter 11 filing date relate to pre-petition goods delivered or services provided.
    - All items determined to be goods and or services provided prior to the filing date will be aggregated with all other pre-petition invoices and will be addressed in the Chapter 11 process.
    - The Bankruptcy Code does not permit payment for goods and services received prior to the filing date except in very limited circumstance that must be authorized by the Bankruptcy Court.
    - All items determined to have been provided post-petition will be paid in the ordinary course on standard or agreed upon terms.
    - Goods and services provided will be categorized as either pre- or post-petition claims according to the date the goods and services were received.


11. **Do I follow the normal process to submit an invoice for goods delivered or services provided AFTER the Chapter 11 filing date? Are there special steps or approvals required for my goods or services to be paid post-petition?**
    - The process that suppliers will deploy after the Chapter 11 filing date for submitting invoices will not change from the current process.
    - PG&E will institute a supplemental review process to determine whether or what portion of invoices submitted after the Chapter 11 filing date relate to pre-petition goods delivered or services provided.
    - Goods and services provided will be categorized as either pre- or post-petition claims according to the date the goods and services were received.
    - All goods and services determined to have been provided post-petition will be paid in the ordinary course on standard or agreed upon terms.

12. **What happens if my work started pre-petition and carried over into post-petition, do I need to send two bills?**
    - Yes, you can send two separate invoices – one for the pre-petition period and the second for the post-petition period. Submitting separate invoices for pre- and post-petition claims will assist in expediting the review process.
    - Alternatively, if only one invoice is submitted, please clearly identify the date of goods or services received.
    - All items determined to be goods and or services provided prior to the filing date will be aggregated with all other pre-petition invoices and will be addressed in the Chapter 11 process.
    - All items determined to have been provided post-petition will be paid in the ordinary course on standard or agreed upon terms.
    - Goods and services provided will be categorized as either pre- or post-petition claims according to the date the goods and services were received.
    - You should consult with legal counsel as to your specific rights, based on your unique relationship with PG&E and the nature of the goods and services that you have provided.

13. **Can I use my existing contract and purchase order, or do I need new contracts and purchase orders for post-petition work?**
    - Yes – the process that suppliers will deploy after the Chapter 11 filing date for submitting invoices will not change from the current process.
    - PG&E will institute a supplemental review process to determine whether or what portion of invoices submitted after the Chapter 11 filing date relate to pre-petition goods delivered or services provided.
    - All items determined to be goods and or services provided prior to the filing date will be aggregated with all other pre-petition invoices and will be addressed in the Chapter 11 process.
    - All items determined to have been provided post-petition will be paid in the ordinary course on standard or agreed upon terms.
    - Goods and services provided will be categorized as either pre- or post-petition claims according to the date the goods and services were received.



14. **To the extent a vendor doesn't get relief under a First Day Motion, when will they eventually be paid for amounts owed for goods or services provided prior to the filing date?**
    - Amounts owed for goods or services provided prior to the January 29 filing date will be addressed during the Chapter 11 process or under the Plan of Reorganization. The Plan of Reorganization will address all amounts owed.
    - Please reach out to your usual sourcing contact or SupplierInquiries@pge.com with additional questions.
    - Suppliers should also consult with legal counsel to understand their specific rights and to address initial questions about the Chapter 11 process.

15. **Will there be a critical vendor motion? I have heard about other bankruptcy cases where "critical vendors" are allowed to be paid for pre-petition claims. How will I know if I am included in the motion?**
    - There is no critical vendor motion. However, PG&E has received Court approval on an interim basis of an "Operational Integrity Supplier Motion," requesting authority to honor the pre-petition claims of certain critical goods and services providers.
    - We will coordinate with suppliers via normal channels to discuss eligibility within this motion.
    - Please reach out to your usual sourcing contact or SupplierInquiries@pge.com with additional questions.

16. **How do I file a proof of claim?**
    - PG&E's claims agent, Prime Clerk, will be providing the appropriate forms once a deadline for filing claims has been set. Proof of claims forms and other information about the claims process will be available at the following website: https://restructuring.primeclerk.com/pge or by calling the Company's claims agent, Prime Clerk, toll-free from the U.S., at 844-339-4217 or at 1-929-333-8977 for calls originating outside the U.S., or by sending an email to pgeinfo@primeclerk.com.
    - Additional information is also available at www.pge.com/reorganization.

17. **Who do I contact for more information?**
    - Please reach out to your usual sourcing contact or SupplierInquiries@pge.com with additional questions.

**EXHIBIT "B"**

To Our Valued Supplier Partner,

We value our relationship with you and the important role you play in our ability to serve our customers safely.

We are reaching out to let you know that PG&E has taken the expected next step in its reorganization process. Today, we filed for reorganization under Chapter 11 in the U.S. Bankruptcy Court for the Northern District of California.

Here are the most important things you need to know about this process:

- **We intend to pay vendors and suppliers under normal terms for goods and services provided on or after the filing date of January 29, 2019.** In addition, in conjunction with the filing, we filed a motion seeking interim and final approval of the Court to enter into an agreement for $5.5 billion in new financing that we expect will allow us to meet our obligations during the Chapter 11 process.

- **Our operations are continuing as normal.** We do not expect any impact to electric or natural gas service for our customers, and we plan to continue to make investments to upgrade our systems, infrastructure and critical safety efforts.

- **We and our customers are relying on you to continue providing the products and services we need.** We recognize the important role you play in enabling PG&E to deliver safe and reliable service to our customers.

You also should know that the Bankruptcy Code does not permit payment for goods and services received prior to the filing date except pursuant to an order of the Bankruptcy Court. Any claims for such goods and services will be addressed in the Chapter 11 case. We sincerely regret any hardship this may cause.

We are committed to being transparent and to working closely with you throughout this process, and we will continue to keep you informed as we move forward. If you have questions, please reach out to your usual sourcing contact or email our dedicated supplier outreach address at SupplierInquiries@pge.com.

Additional information is available at PG&E's restructuring website at www.pge.com/reorganization, by calling our Restructuring Hotline at 844-339-4217 (for calls originating outside of the U.S. please dial 1-929-333-8977) or by emailing pgeinfo@primeclerk.com. Court filings and other documents related to the court-supervised process are available on a separate website administered by our claims agent, at https://restructuring.primeclerk.com/pge.

Thank you for your continued support, and we look forward to continuing to work closely with you as we work through this process.

Sincerely,

Gun S. Shim
VP Supply Chain and Chief Procurement Officer
Pacific Gas and Electric Company (PG&E)