# EXHIBIT B

BIZ & TECH // BUSINESS

# Federal judge: 'Not really true' that safety is PG&E's top priority

J.D. Morris and Bob Egelko

Jan. 30, 2019 | Updated: Jan. 30, 2019 7:45 p.m.



The devastating San Bruno gas pipeline explosion in 2010 resulted in PG&E being convicted on criminal charges.
Photo: Paul Chinn / The Chronicle 2010

A federal judge cast doubt Wednesday on whether Pacific Gas and Electric Co. is upholding its duty to prevent its power lines from causing catastrophic wildfires and questioned whether the state is properly regulating the beleaguered and bankrupt utility.

U.S. District Judge William Alsup is considering imposing a series of fire-prevention requirements on PG&E, including mandates that the utility inspect and rate the safety of all its power lines in the coming months, turn off power at times of fire risk and dramatically step up its tree trimming.

Case: 19-30088    Doc# 527-2    Filed: 02/20/19    Entered: 02/20/19 21:29:31    Page 2 of 5

His scrutiny came the day after PG&E lawyers appeared in the same San Francisco courthouse to begin hashing out the details of its filing for bankruptcy protection, highlighting the legal and financial pressures the company is facing after being blamed for two seasons of deadly wildfires.

At a sometimes tense hearing to consider his proposal, which PG&E has said is infeasible, Alsup characterized the fires as an urgent crisis demanding action from PG&E.

"Will we be seeing headlines: 'PG&E has done it again'?" Alsup asked of the 2019 fire season. "Started another fire and some other town burned down because you didn't turn the power off or you didn't cut the trees?"

Alsup is overseeing PG&E's probation arising out of the 2010 San Bruno pipeline blast and has introduced the fire prevention proposal as he considers whether the utility's role in recent fires violated the terms of its probation.

Alsup opted not to rule on his sweeping fire plan, though he found the utility has already violated its probation because of a reporting issue involving a 2017 fire.

He ordered PG&E to send him a copy of a wildfire mitigation plan it has to submit to state regulators by next Wednesday.

In stark terms, the judge outlined the historic levels of death and destruction caused by 2017 fires the state has blamed on PG&E — and other fires still under investigation — and suggested the utility can be doing much more.

"Why is it PG&E says, 'Safety is our No. 1 thing' — I heard it all the time, 'safety, safety, safety,' but it's not really true," Alsup said.

The utility's legal team argued that the company is continuing to take meaningful steps to improve its fire prevention work but said progress is constrained by a number of factors, including a lack of qualified tree trimmers to do the work on the scale and fast timeline Alsup imagined.

"The people don't exist," said PG&E attorney Kevin Orsini. "There aren't enough qualified tree trimmers in the country" to condense several years of vegetation management into a few months, he said.

Orsini also appeared contrite at times, telling the judge at one point that PG&E "understands and accepts that it has a credibility problem." Later, he said "the PG&E that exists today" is different from how the company was in the years when the San Bruno blast happened and when the Wine Country fires burned in 2017. The company knows it must still "fundamentally change," Orsini said.

John Simon, the interim CEO of PG&E, told the judge that he had "listened carefully." The company said in a statement afterward that it "shares the court's commitment to safety and agrees with the urgency that we all have to work together to reduce the risk of wildfire."

One possible remedy Alsup cited was enforcement of a state law that requires electric utilities that operate in forests, brushlands or grass-covered lands to maintain a safe distance between their lines and any trees or vegetation during times of fire danger.

The law requires separation of 4 to 10 feet between trees and power lines, depending on the voltage of the line, and removal of any dead or weakened trees or limbs, or any that are "leaning toward the line … or may fall on the line."

When Orsini said the state Public Utilities Commission had not interpreted the law to require removal of all overhanging branches, the judge replied that the law is enforced not by the commission but by Cal Fire — the California Department of Forestry and Fire Protection — and said the state commission lacks "authority to water down" the statute.

Later in the hearing, Matthew Reischman, a Cal Fire assistant deputy director, indicated that the law sets different clearance requirements for low- and high-voltage lines. But he stopped short of giving a definitive interpretation of the law, and Alsup then told Cal Fire and the state attorney general's office to provide such an interpretation at a later date.

The hearing also examined the issue of preventive power shutoffs, a fire prevention tool used for years by San Diego Gas & Electric but one PG&E only began to implement after the devastating 2017 fires. The judge took great interest in San Diego's program, which was explained to him by attorney Frank Pitre, who has sued PG&E over the San Bruno blast as well as 2017 fires and the 2018 Camp Fire.

Pitre said San Diego-style power shutoffs are a necessary "stopgap" while PG&E works to address its risk-management failures, which he called the "real cancer."

"There are serious problems in the way PG&E conducts its risk-management activities," Pitre told Alsup.

California Public Utilities Commission attorney Christine Hammond also encountered skeptical questioning from Alsup, who has made it clear he believes the agency has been too lax.

"How did it happen that so many fires occurred under your regulation?" he asked Hammond. When she replied that the commission is still investigating the extent of PG&E's responsibility for the fires of 2017 and 2018, Alsup said, "We still don't know what you think about fires almost two years ago."

While putting off a decision on whether to impose stricter safety standards, Alsup said he had several options, including mandatory trimming or removal of trees and limbs at any distance above power lines, and a short-term electricity shutdown program modeled on the San Diego utility's.

"One simple thing would just be to say that PG&E shall not start another fire," the judge said. "But maybe that's too simple."

*J.D. Morris and Bob Egelko are San Francisco Chronicle staff writers. Email: jd.morris@sfchronicle.com, begelko@sfchronicle.com Twitter: @thejdmorris, @BobEgelko*

HEARST *newspapers*