Dennis F. Dunne (*pro hac vice* application pending)
Samuel A. Khalil (*pro hac vice* application pending)
MILBANK LLP (*effective* February 19, 2019)
55 Hudson Yards (*effective* February 19, 2019)
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Paul S. Aronzon (SBN 88781)
Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP (*effective* February 19, 2019)
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Proposed Counsel for the Official Committee of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Case No. SF 19-30088<br><br>Chapter 11<br><br>**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(A) AND 362 FOR INTERIM AND FINAL ORDERS ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF STOCK OF, AND CLAIMS AGAINST, THE DEBTORS** |

The Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases of PG&E Corporation and Pacific Gas and Electric Company (together, "PG&E" or the "Debtors"), by its attorneys, Milbank LLP, hereby submits this limited objection (the "Objection") to the *Motion of Debtors Pursuant to Sections 105(a) and 362 for*

*Interim and Final Orders Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Stock of, and Claims Against, the Debtors* [Dkt. No. 10] (the "Motion"), filed by the Debtors on January 29, 2019. In support of the Objection, the Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Committee agrees that the Debtors' Tax Attributes[1] may have value to the estates and, if that value is determined to be significant, the Tax Attributes may play a key role in the Debtors' reorganization. Accordingly, the Committee understands that the implementation of the Stock Procedures is necessary to preserve the potential value of the Debtors' Tax Attributes and therefore supports the granting of final relief with respect to the Stock Procedures. But the Committee objects to the relief the Debtors seek with respect to Claims. Such relief is, at best, premature.

2. First, the relief sought in the Motion may be entirely unnecessary. If, as the Debtors' market capitalization suggests, the Debtors are solvent and thus will not need to distribute equity in order to satisfy ~~all~~ Claims, the Claims held by creditors will have no effect on the Debtors' Tax Attributes at all. Yet the Motion is premised on the unsupported suggestion that Claims against the Debtors may, in certain possible (but unlikely) scenarios, prove relevant to the Debtors' Tax Attributes, and seeks meaningful relief now based upon this speculative presumption.

3. Second, even if the relief sought in the Motion becomes relevant in the future, granting it now is still premature. The Claims Procedures, which will be ordered if the Motion is granted, confer significant power upon a future Plan Proponent—which may or may not be the Debtors. The Claims Procedures enable a future Plan Proponent unilaterally to set a Determination Date after which trades of certain Claims may be prohibited, or rendered void, if made without the Plan Proponent's prior approval. The Debtors seek this relief now, less than one month into these cases and before demonstrating (or even credibly asserting) either that

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion.

Claims will be relevant to the calculation of the Debtors' Tax Attributes, or that the increased value of the Debtors' Tax Attributes associated with a 382(l)(5) Plan is significant enough to warrant the proposal of a plan utilizing Section 382(l)(5). In fact, while the Plan Proponent must explain the potential incremental tax benefits associated with a 382(l)(5) Plan in connection with proposing such a plan and establishing a Determination Date, there is no requirement that such benefits meet a certain level of value before the Plan Proponent can take action limiting trading in Claims. Nor is there any requirement that the Debtors provide an analysis of the impact on reorganized company equity of the equity trading restrictions that will need to be imposed if a 382(l)(5) Plan is implemented. The Debtors make no showing that vesting a future Plan Proponent with these significant powers *now* is necessary to the estates' reorganization—or that appropriate relief cannot be fashioned at such time in the future that these complicated tax implications actually appear on the horizon.

4. Third, in addition to ordering immediate but potentially unnecessary relief to protect against speculative (and relatively unlikely) future scenarios, the Claims Procedures further order advisory relief. The Claims Procedures establish a process for the Sell-Down of Claims that a Plan Proponent may later request the Court to order following the proposal of a 382(l)(5) Plan. In addition to being premature, as the relevance of the Claims to the Tax Attributes or the value of the Tax Attributes has yet to be determined, this relief is advisory. The Debtors acknowledge that the proposal of a 382(l)(5) Plan will only happen if, among other things, the incremental value associated with the Debtors' Tax Attributes in connection with a 382(l)(5) Plan is substantial; moreover, the Claims Procedures themselves contemplate a future hearing on the Sell-Down procedures.

5. In contrast to the far-ranging and forward-reaching relief requested in the Motion, the only protection relevant to the Debtors at this time with respect to Claims is to give notice that there is a possibility, however remote, that certain claimholders may be required to sell down certain Claims purchased after the Petition Date. But that notice has been given by virtue of filing the Motion. There is no reason to grant the relief requested with respect to Claims today, particularly when that relief ultimately may be unnecessary. Rather, before being

"pre-approved," as the Motion proposes, to take future actions that may well significantly impact the value of Claims, such as setting a Determination Date, the Plan Proponent should be required to come before the Court at that relevant time and explain the need for such relief based on the facts at that time—and claimholders should then be given the opportunity to object under the facts and circumstances that are then relevant (but unknown today).

## BACKGROUND

6. On January 29, 2019, the Debtors filed the Motion seeking, on a final basis, an order that would, among other things, (1) require certain claimholders to provide information relating to their Claims upon the request of a Plan Proponent in connection with the filing of a 382(l)(5) Plan, (2) establish Claims Procedures that every Proposed Claim Transferee must follow with respect to the acquisition of Claims after the Determination Date; (3) declare any transfer of Claims prohibited pursuant to the Claims Procedures null and void *ab initio*; (4) set Sell-Down procedures; (5) threaten contempt, compensatory damages, punitive damages, or sanctions on any person who does not comply with the order (Interim Publication Notice, at 1; Exhibit A ¶ 5); and (6) be effective *nunc pro tunc* to the Petition Date, January 29, 2019 (*id.* ¶ 2).

7. The Motion does not, however, indicate why the ordering of these Claims Procedures is necessary now, one month into these cases and well before a 382(l)(5) Plan has been conceived, proposed, or deemed feasible, desirable, necessary or appropriate. Notably, the Debtors admit that "there can be no assurance that" the Debtors will be able to make use of Section 382(l)(5); in fact, per the Motion, the "Debtors have not yet been able to determine whether a [382(l)(5) Plan], even if available, would yield significant benefits in the context of the Debtors' restructuring." (Motion at 20.)

## ARGUMENT

8. The requested relief with respect to Claims—entry of an order implementing the Claims Procedures—is premature and speculative. The only protection currently necessary for the Debtors is to put claimholders on notice that if the Debtors or a Plan Proponent proposes a 382(l)(5) Plan in the future, such party may move the Court for relief similar to that requested in the Claims Procedures. That notice has been given by the filing of

-4-

the Motion; all other relief with respect to Claims requested in the Motion is unnecessary and unreasonable at this time.

### A. The Requested Relief Is Premature

9. Entry of an order establishing the Claims Procedures is premature. The Debtors have made no showing that a 382(l)(5) Plan is possible or beneficial, nor that the ownership of Claims is relevant to such determination.

10. Conversely, the burdens on claimholders that the Claims Procedures impose are significant, and are unwarranted. Under the Claims Procedures, Claims will trade under the shadow of an arbitrary future Determination Date that could limit the ability to transfer claims, together with sanctions for noncompliance therewith. (Proposed Final Order ¶ 5.) The Claims Procedures enable a Plan Proponent (who need not be a Debtor) to set a Determination Date after which certain trading in claims may not be permitted without prior approval of the Plan Proponent. After the Determination Date, any acquisition involving a Proposed Claims Transferee is rendered ineffective without the Plan Proponent's approval. (Procedures at ¶ B.4(d).) The ability to set a Determination Date effectively gives a Plan Proponent the ability to limit Claims trading at some undetermined future time without requesting any further approval from the Court, and without making a clear and objective showing at that time, based on more developed facts, that such limitation is fair and equitable and maximizes the value of the Debtors' Tax Attributes while not unduly harming claimholders.

11. Further, all claimholders will be automatically subject to broad discovery obligations should a Plan Proponent seek to propose a 382(l)(5) Plan. (Procedures ¶ B.4(b)-(c).) After the Determination Date, Claims cannot be transferred unless a Proposed Claims Transferee properly files the required notices for review by the Plan Proponent, counsel to the Debtors (if not the Plan Proponent), counsel to DIP Lenders, and counsel to Official Committees. (Procedures ¶ B.4(b).) A Proposed Claims Transferee must file a Claims Acquisition Request "which describes specifically and in detail the Proposed Claims Acquisition Transaction" with the Bankruptcy Court. (Procedures ¶ B.4(c).) These requirements will unnecessarily affect the market and restrict claimholders' ability to transfer their claims freely.

12. Beyond these unnecessary, immediate restrictions, certain of the relief requested through the Claims Procedures—the Sell-Down procedures—requires the Court to render an advisory opinion. Federal courts, including bankruptcy courts, are barred from giving "opinions advising what the law would be upon a hypothetical state of facts." In re *Cubic Energy, Inc.*, 587 B.R. 849, 855 (Bankr. D. Del. 2018); *see also* In re *Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)) (internal quotations omitted). The requested Sell-Down procedures are premature and contingent upon a hypothetical series of events, none of which have yet been, and may never be, considered—and even if these events come to pass, the Claims Procedures contemplate a *future* hearing at which the Sell-Down procedures will be considered. In other words, ordering the Sell-Down procedures at this stage would impermissibly indulge in appraising a "hypothetical set of facts." *Cubic Energy*, 587 B.R. at 857; *see also Lazy–Day*, 724 F.3d at 421 (citing *Chafin*, 568 U.S. at 172); In re *Heyden*, 570 B.R. 489, 493 (Bankr. W.D. Pa. 2017) (citing In re *Olson*, 557 B.R. 851, 855 (Bankr. W.D. Pa. 2016)).

13. The Debtors' justification for prematurely seeking the Sell-Down procedures with respect to Claims is that a Plan Proponent *may* put forth a chapter 11 plan that merely *contemplates* the utilization of the Section 382(l)(5) Safe Harbor. In other words, the Debtors are seeking certain rights for a Plan Proponent now, which may include the right to limit Claims transfers in the future without Court oversight or a right to object, based upon numerous hypothetical conditions, while acknowledging that there has been no work done to determine if any benefit will be realized from the relief. As the Debtors have provided no proof of the value or availability of a 382(l)(5) Plan, the Debtors' request that the Court determine ~~that~~ the Sell-Down procedures with respect to Claims is advisory.

14. Seeking this relief now raises due process concerns. Moving to order the Claim Procedures shifts the burden to the claimholders, who have no ability to discover whether they will or will not be affected by the Claims Procedures in the future. It violates due process to require claimholders to object *now* to Claims Procedures appurtenant to a hypothetical 382(l)(5) Plan that may or may not be proposed in the future. If and when such relief becomes ripe for

adjudication, the Debtors should then move for implementation of the Claims Procedures, and allow parties to object at that time.

### B. Notice Has Been Given; All Other Relief Is Premature

15. While it is proper to put claimholders on notice that the Debtors may in the future seek an order requesting information, potentially limiting certain trading in Claims after a specified date when it is more certain that a 382(l)(5) Plan may be valuable, and requiring the imposition of the Sell-Down procedures, it is not necessary or proper at this time for the Court to enter an order that would cause the automatic implementation of such procedures without now demonstrating the intent to pursue a 382(l)(5) Plan.

16. The Debtors have provided no proof of the value or availability of a 382(l)(5) Plan, nor have they made any showing that any claimholder, or any party whatever, presently has the power or intention to irreparably damage its Tax Attributes. Further, the protections that the Debtors seek are already sufficiently addressed through the notice of potential Sell-Down given in connection with the filing of the Motion. The ability to request information regarding Claims ownership and the right to halt certain trading in Claims after the Determination Date constitute relief that the Debtors, or Plan Proponent, can request of the Court if and when a 382(l)(5) Plan is actually proposed without any undue hardship to the Debtors. Thus, the Debtors are not prejudiced by the Court denying the Claims Procedures at this time.

17. The filing of the Motion is sufficient to put claimholders on notice at this time: no further relief is necessary unless and until a 382(l)(5) Plan is proposed, at which time the Debtors will have the option to move for the requested relief. There is no identified (nor identifiable) reason to approve these Claims Procedures now, when they are contingent upon future circumstances which may or may not materialize.

### CONCLUSION

18. The requested relief is premature and currently unnecessary. Even if all of the hypothetical circumstances do eventually occur, at this time, the necessary relief has been effected: claimholders are on notice that the Debtors may in the future request the relief sought in the Motion. No basis or reason currently exists to justify the requested relief. The Committee

respectfully requests that the Court deny the Motion to the extent it approves the Claims Procedures at this early date.

DATED: February 22, 2019      MILBANK LLP

                                            */s/ Dennis F. Dunne*
                                            DENNIS F. DUNNE
                                            SAMUEL A. KHALIL
                                            PAUL S. ARONZON
                                            GREGORY A. BRAY
                                            THOMAS R. KRELLER

                                            *Proposed Counsel for the Official Committee of Unsecured Creditors*