WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br>(Jointly Administered)<br><br>**REPLY OF DEBTORS TO LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND SUCCESSOR INDENTURE TRUSTEE TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(A) AND 362 FOR INTERIM AND FINAL ORDERS ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF STOCK OF, AND CLAIMS AGAINST, THE DEBTORS**<br>Date: February 27, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

1. PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), filed a motion (the "**Motion**")[1] for entry of an order (as amended for comments received, the "**Order**") authorizing the Debtors to, among other things, establish procedures to protect the full potential value of the Debtors' consolidated net operating tax loss carryforwards (the "**NOLs**") and certain other tax attributes, including certain income tax credits (together with the NOLs, the "**Tax Attributes**"). The Debtors submit that the Motion should be granted on a final basis for the reasons set forth herein and in the Motion. In response to comments received from various interested parties, certain clarifying changes have been made to the proposed Order. In further support of the Motion, and in response to (i) the limited objection of the Official Committee of Unsecured Creditors (the "**UCC**") to the Motion, filed on February 22, 2019 (the "**UCC Objection**"), and (ii) the joinder of BOKF, in its capacity as successor indenture trustee (the "**Indenture Trustee**") under the Indentures dated as of March 11, 2004 (as supplemented, amended and restated), November 29, 2017 and August 6, 2018, pursuant to which the Utility's senior notes were issued, filed on February 22, 2019 (the "**Joinder**" and together with the UCC Objection, the "**NOL Objection**"), the Debtors respectfully submit this Reply (the "**Reply**").

## I. PRELIMINARY STATEMENT

2. The Debtors commenced the Chapter 11 Cases to preserve and maximize the value of their business enterprise. Consistent with this purpose, and as is customary in many cases, the Debtors filed the Motion to preserve optionality in connection with the chapter 11 plan process by safeguarding all available restructuring paths, including the filing of a 382(l)(5) Plan (as described in the Motion) that could maximize the availability of the amount of the Debtors' Tax Attributes following a reorganization. Absent entry of the Order on a final basis, the Debtors may forever lose

---

[1] *Motion of the Debtors Pursuant to 11 U.S.C. §§ 105(a) and 362 for Interim and Final Orders Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Stock of, and Claims Against, the Debtors.* Any capitalized terms used but not defined herein have the meanings set forth in the Motion.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

DEBTORS' REPLY TO LIMITED OBJECTION OF
THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

2

Case: 19-30088    Doc# 650    Filed: 02/25/19    Entered: 02/25/19 19:11:09    Page 2 of 11

their ability to utilize billions of dollars of Tax Attributes in the manner that the Debtors determine to be optimal.

3. Despite the obvious benefits of the relief sought in the Motion, the NOL Objection was filed (without any evidentiary submission) on the basis that the relief sought as to Claims "may be . . . unnecessary" and is seeking to protect against "speculative (and relatively unlikely) future scenarios." NOL Objection at 2-3. Distilled to its essentials, the NOL Objection asks this Court to elevate the interests of Claims traders and thereby risk jeopardizing Tax Attributes that could benefit tens of thousands of other creditors and parties in interest in these Chapter 11 Cases. Indeed, one thing clearly is not speculative – in the absence of the relief requested, substantial Tax Attributes may be lost.

4. In the early weeks of these Chapter 11 Cases, no one can predict what the Debtors' chapter 11 plan will look like. As such, and as has become common practice, the Debtors have sought narrowly tailored relief to ensure that they preserve their potentially valuable Tax Attributes. As of the Petition Date, the Debtors had estimated federal NOLs of over $4 billion and tax credits of approximately $115 million. Moreover, the Debtors expect the amount of such NOLs to increase in connection with distributions to be made under a chapter 11 plan. As the cases progress, the Debtors will have to determine in consultation with their other constituencies what type of chapter 11 plan provides the most value to the Debtors' estates and their various stakeholders. The fact that the Debtors' stock continues to trade is no indication of whether a chapter 11 plan will provide for a distribution of equity to creditors. If the optimal chapter 11 plan is one that relies on section 382(l)(5) of the Tax Code ("**Section 382(l)(5)**") (described below), the relief sought in the Motion will preserve the ability to realize the benefits of the Tax Attributes.

5. Initially, the Debtors observe that <u>no</u> objection has been filed with respect to the proposed stock trading procedures (the "**Stock Procedures**"), which were also the subject of the Interim Order. In fact, as relates to the Stock Procedures, the UCC affirmatively supports the granting of final relief as important to preserving the potential value of the Debtors' Tax Attributes.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

6. The proposed claims trading procedures (the "**Claims Procedures**") serve this same purpose by preserving the Debtors' ability to formulate and implement a chapter 11 plan that benefits from the full potential value of the Debtors' Tax Attributes. The Claims Procedures are narrowly tailored to allow full trading of Claims while providing notice of an established set of procedures that would be implemented in the event of a proposed plan that relies on the potential utilization of Section 382(l)(5) (described below). Such procedures include (i) procedures akin to the Stock Procedures, and (ii) if necessary for the Debtors' ability to utilize Section 382(l)(5), the possibility that persons who acquired Claims on or after the Petition Date – having had notice of the proposed Order and the Order having been entered establishing the Claims Procedures – may be required to resell a specified amount of such Claims. However, any such sale would <u>only</u> be required <u>if</u> the Debtors file a <u>further</u> motion with the Court (with notice to, among others, the UCC and other relevant Substantial Claimholders and a hearing) seeking an order to require such sales, the Court enters such order, <u>and</u> the 382(l)(5) Plan is subsequently confirmed.

## II. BACKGROUND

7. A 382(l)(5) Plan may be necessary to prevent serious impairment of the Debtors' ability to use NOLs and other tax attributes to shield taxable income. In general, section 382 of the Tax Code ("**Section 382**") limits a corporation's ability to utilize its NOLs, tax credits, and certain other tax benefits to offset future income once that corporation has undergone a 50% ownership change within the meaning of Section 382 (an "**Ownership Change**").

8. However, Section 382(l)(5) provides a safe harbor (the "**Section 382(l)(5) Safe Harbor**") to the general rule whereby, if satisfied, the limitations imposed by Section 382 may be significantly less restrictive than those otherwise applicable. Under the Section 382(l)(5) Safe Harbor, as described in the Motion, a corporation is not subject to the annual limitation ordinarily imposed by Section 382 with respect to an Ownership Change, provided that (i) the Ownership Change resulted from the consummation of a chapter 11 plan or pursuant to any applicable Bankruptcy Court order, and (ii) the debtor's pre-Ownership Change shareholders and/or "qualified creditors" (as hereinafter defined) emerge from the reorganization owning at least fifty percent (50%) of the total value and voting power of the reorganized debtor's stock immediately after the Ownership

Change. Under section 382(l)(5)(E) of the Tax Code and the applicable Treasury Regulations, a creditor whose Claim is exchanged for stock of the reorganized debtor under a chapter 11 plan or pursuant to any applicable Bankruptcy Court order is, for purposes of Section 382, a "qualified creditor" (each, a "**Qualified Creditor**") if such creditor's Claim either (a) has been, or is treated as being, owned by such creditor for eighteen (18) or more months prior to Petition Date or (b) arose in the ordinary course of the debtor's business and was, or is treated as being, at all times beneficially owned by such creditor. Significantly, holders of claims may be classified as Qualified Creditors, despite purchasing their claims within 18 months prior to or during the Chapter 11 Cases, if they do not become (directly or indirectly) a 5% or greater shareholder of the reorganized Debtors.

9. The requested relief will ensure that the Debtors will have flexibility, if the Debtors, in consultation with the UCC and other interested parties, determine it to be desirable, to structure a chapter 11 plan or other distributions to comply with the requirements of the Section 382(l)(5) Safe Harbor and thus to preserve the value of the Debtors' Tax Attributes to the fullest extent possible. The Debtors are not currently seeking to enjoin any creditor from taking any action with respect to its Claims, including the trading of its Claims, but rather are merely giving notice that certain procedures can be invoked if the Debtors determine to file a 382(l)(5) Plan. Upon the filing of a 382(l)(5) Plan, the Claims Procedures would impose a process similar to the Stock Procedures, since at that point, to the extent claimholders would receive equity under the proposed plan, the accumulation of Claims could (similar to the existing accumulation of stock) impair the future value of the Debtors' Tax Attributes. As indicated, no required sell down of any Claims acquired by a holder during the Chapter 11 Cases would occur without a further order of the Court. However, granting the relief requested in the Motion will put each holder on <u>official notice from the Court</u> that such a sell down could occur.

10. At this stage, it would be irresponsible for the Debtors to forgo the ability to protect the utilization of valuable assets of the Debtors' estates. The Debtors respectfully request that the Court reject the argument that the relief sought is premature and currently unnecessary, and approve the Order in full, including the Claims Procedures.

## III. ARGUMENT

### A. The Claims Procedures are Necessary Now, and Narrowly Tailored to Avoid an Undue Impact on Trading

11. The UCC and Indenture Trustee assert that the Claims Procedures are premature (UCC Objection at ¶¶9-16; Joinder), that the filing of the Motion was itself sufficient to put claimholders on notice of the procedures (UCC Objection at ¶17), and therefore the Debtors should wait until a 382(l)(5) Plan is actually proposed to seek the Claims Procedures (UCC Objection at ¶¶14, 15 and 18; Joinder). However, the UCC Objection mischaracterizes the relief sought and its import.

12. It is not the Motion that provides notice to potential acquirors of Claims, but rather the Court's Order itself. Indeed, without the Order and the imprimatur of the Court, the Motion may be completely ineffective. Granting the relief requested in the Motion will not impose a single trading restriction on any creditor today, but rather will officially notify claimholders and potential acquirors of Claims of the Claims Procedures that would be implemented in the event of a proposed 382(l)(5) Plan.

13. The UCC asserts that if the relief is granted as to Claims, Claims would trade under the shadow of an arbitrary future Determination Date (UCC Objection at ¶10), and would subject claimholders to the burden of broad discovery (UCC Objection at ¶11). Notably, the procedures that would become operative at such point – with necessary notice being given in the proposed disclosure statement accompanying the proposed 382(l)(5) Plan – are <u>akin to the Stock Procedures</u> that the UCC affirmatively supports. Such procedures would, among other things, require notice of Claim ownership by then Substantial Claimholders and require advance approval of any subsequent acquisition of Claims by any person that is or would become (as a result of such acquisition) a Substantial Claimholder.

14. Moreover, one aspect of the Claims Procedures is the potential that the Debtors would <u>subsequently</u> seek an order requiring that a Substantial Claimholder that acquired Claims during the Chapter 11 cases resell all or a portion of the Claims so acquired. Although any such required sale would require a further order of the Court, it is important that any acquiror of Claims

during the Chapter 11 Cases that is or could become a Substantial Claimholder be <u>on notice now officially by a Court Order</u> that such acquisition could at a future time be subject to resale. Otherwise, such later motion for relief could be subject to attacks of due process or objected to on other equitable grounds, thereby impairing the Debtors' ability to protect the potential value of their Tax Attributes. Thus, contrary to the UCC's assertion that obtaining the requested relief now raises due process concerns (UCC Objection at ¶14), the requested Order in fact does the exact opposite, by ensuring that potential acquirors of Claims have formal advance notice of the Claims Procedures.

15. Accordingly, the Claims Procedures are narrowly tailored to preserve the value and liquidity of all creditor Claims, while at the same time ensuring that the Debtors have the ability to maximize value for all economic stakeholders in these Chapter 11 Cases. It is important to put the Claims Procedures into proper perspective:

(i) The Claims Procedures do not prohibit or restrict the sale of Claims in any way, at any time;

(ii) If and when the procedures become operative, certain notifications would be imposed on then Substantial Claimholders and any persons that propose to make an acquisition by which they would become a Substantial Claimholder. As indicated, such notification requirements are akin to the Stock Procedures, and do not impose any burden more or less than that imposed on existing stockholders, which the UCC affirmatively supports;

(iii) The Claims Procedures provide necessary notice of the sell-down procedures should they ever be needed;

(iv) The sell-down component of the Claims Procedures only becomes operative <u>if</u> the Court approves such sell-down upon subsequent motion <u>and</u>, then, <u>only if</u> the 382(l)(5) Plan is subsequently confirmed. *See* Motion, Exhibit 1 to Final Order, at 13-14 (providing that the sell-down is to occur by the later of "(i) five (5) business days after the entry of an order confirming the 382(l)(5) Plan and (ii) such other date specified in the Sell-Down Notice, as applicable, but before the effective date of the 382(l)(5)

Plan"). In addition, any sell-down would only be to the extent necessary to comply with Section 382(l)(5); and

(v) The Claims Procedures do not require any holder to sell-down any Claims it acquired prior to the date of the filing of the Motion (*i.e.*, the Petition Date) under any circumstances.

16. In short, consistent with similar motions, the Claims Procedures are narrowly tailored to minimize any potential harm or prejudice to Claims traders. Rather than having certainty and formal Court-approved notice of the procedures now, the UCC proposes that the Debtors wait and seek such procedures in conjunction with proposing a 382(l)(5) Plan, when it may be too late to establish restrictions to qualify for the requirements of the Section 382(l)(5) Safe Harbor.

17. The objecting parties' assertion that the relief requested will create an inappropriate overhang on the Claims trading market rings hollow. As they state, they believe the Debtors are seeking to protect against "speculative (and relatively unlikely) future scenarios." UCC Objection at ¶ 4. Under these circumstances, either the objecting parties are correct and a 382(l)(5) Plan will not be filed in a manner that impacts them, in which case there should be no impact on the market and no adverse impact resulting from granting the relief requested in the Motion – or the objectors are wrong and, therefore, there is considerable value to preserve in the Tax Attribute that they seek to jeopardize to preserve their optionality at the expense of all other parties in interest.

18. Accordingly, whereas significant harm could potentially befall the Debtors, their estates and all of their economic stakeholders if the Order is not entered in that the Debtors may be foreclosed from utilizing the 382(l)(5) Safe Harbor, no cognizable prejudice would befall any claimholder (including any Substantial Claimholder) if the Order is entered at this time.

19. If, in connection with formulating a plan of reorganization, the Debtors determine that a 382(l)(5) Plan would be beneficial, the Claims Procedures through the notification requirements allow the Debtors to obtain the necessary information to confirm that the Section 382(l)(5) Safe Harbor is indeed available based on the then holdings of Claims. If the information shows that the Section 382(l)(5) Safe Harbor is not available solely as a result of certain creditors who would own 4.75% or more of the equity of the reorganized Debtors after the plan goes effective

due to those creditors acquiring additional Claims during the Chapter 11 Case, the Debtors could seek authority from the Court to implement the sell-down procedures. Any affected Substantial Claimholder would, at such time, have an opportunity to object to the sell-down relief requested by the Debtors. Moreover, the Order provides that "[n]othing herein shall preclude any person (including any Entity) or Acquiring Group desirous of purchasing or transferring any interest in, or Claims against, the Debtors from requesting relief from this Order from this Court, subject to the Debtors' rights to oppose such relief." *See* Motion, Final Order, at 3. The issuance of the Order thus merely puts all creditors on sufficient notice that the Debtors may seek appropriate relief for any postpetition actions that reduce the value of the Debtors' assets, and provides certainty as to the procedures that would apply.

### B. The Court Should Enter the Requested Order in Furtherance of the Automatic Stay

20. The relief requested in the Motion is an action in furtherance of the automatic stay provisions of section 362 of the Bankruptcy Code with respect to the Debtors' NOLs, and pursuant to section 105 of the Bankruptcy Code. "The key elements for a stay under 11 U.S.C. § 362(a)(3) are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate." *In re Golden Distribs.*, Ltd., 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990). The Motion satisfies these elements. The UCC characterizes the relief sought in the Motion as requiring the Court to render an advisory opinion, and asserts that the relief requested raises due process concerns (UCC Objection at ¶ 12, 14). Such characterization ignores the purpose and function of the procedures as discussed above, and the weight of authority granting claims trading procedures to protect the potential value of a debtor's tax attributes.

21. Claims trading procedures of the type sought here are routinely granted by Bankruptcy Courts in furtherance of the automatic stay and pursuant to the Bankruptcy Court's equitable powers. *See*, *e.g.*, *In re Sears Holdings Corporation*, No. 18-23538 (RDD) (approving notification and sell-down procedures for transfers of both secured and unsecured claims) (Bankr. S.D.N.Y. Nov. 16, 2018); *In re Endeavour Operating Corp.*, Ch. 11 Case No. 14–12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (same); *In re LightSquared*, No. 12-12080 (SCC) (Bankr. S.D.N.Y.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

June 4, 2012) (same); *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Jan. 27, 2012) (approving notification and sell-down procedures for transfers of unsecured claims); *Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Mar. 25, 2010) (approving notification and sell-down procedures for transfers of both secured and unsecured claims); *In re US Shipping Partners L.P.*, No. 09-12711 (RDD) (Bankr. S.D.N.Y. May 22, 2009) (approving claims trading procedures for transfers of senior secured claims and second lien notes); *In re Washington Mutual, Inc.*, No. 08-12229 (MFW) (Bankr. D. Del. Nov. 19, 2008) (approving the claims trading procedures sought by holders of certain guarantee claims despite objection from the debtors); *In re Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y. Aug. 9, 2006) (approving notification and sell-down procedures for both secured and unsecured claims); *In re In re Delphi Corp.*, No. 05-44481 (RDD) (Bankr. S.D.N.Y. Jan. 9, 2006) (approving notification and sell-down procedures for transfers of certain claims); *In re Delta Air Lines*, No. 05-17923 (PCB) (Bankr. S.D.N.Y. Dec. 20 2005) (same); *In re Mirant Corp.*, No. 03-46590 (DML) (Bankr. N.D. Tex. Sept. 9, 2003) (approving notification and sell-down procedures for debt claims).[2]

22. It is clear that the Debtors' NOLs are property of their estates. *See United States v. Towers (In re Feiler)*, 230 B.R. 164, 168 (B.A.P. 9th Cir. 1999) ("An NOL is a tax attribute of the debtor that is part of the bankruptcy estate"); *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991), *cert. denied*, 502 U.S. 821 (1991) ("Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention 'to bring anything of value that the debtors have into the estate.'"); *see also In re Cumberland Farms, Inc.*, 162 B.R. 62, 67 (Bankr. D. Mass. 1993) (analyzing a contingent tax benefit to an S-Corporation and holding that "[t]he possibility that these contingencies will or will not occur is relevant only to the value of the Debtor's benefit . . . the benefit, however contingent or intangible, is property of the estate . . . . An analogous benefit is derived by a Sub-chapter C debtor from its own net operating loss carryforward."). The limited effect that the Claims Procedures might have on the

---

[2] Due the voluminous nature of the orders cited herein, they are not attached to this Reply, but they will be made available upon request of the undersigned counsel.

trading of Claims, if any, does not constitute cause to deny the Debtors and their economic stakeholders the potential benefit of the Debtors' significant Tax Attributes.

## IV. CONCLUSION

23. Based on the reasons set forth above, the Debtors respectfully request that the Court grant the relief requested in the Motion on a final basis and grant such other relief as is just and proper under the circumstances.

Dated: February 25, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

/s/ Jane Kim
      Jane Kim

*Proposed Attorneys for Debtors
and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119