WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DEBTORS' STATEMENT AND OMNIBUS REPLY IN SUPPORT OF FIRST DAY AND OTHER MOTIONS SET FOR HEARING ON FEBRUARY 27, 2019** |

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this statement and omnibus reply (the "**Reply**") in support of the first day and other motions (collectively, the "**Motions**")[1] scheduled to be heard by the Court at the omnibus hearing on February 27, 2019 (the "**Hearing**").

## I. PRELIMINARY STATEMENT AND STATUS UPDATE

Since they were last before the Court, the Debtors have been working diligently with representatives of the Office of the United States Trustee (the "**U.S. Trustee**"), the Official Committee of Unsecured Creditors (the "**Creditors Committee**"), the Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**"), a number of ad hoc committees representing holders of the Debtors' debt and equity securities, and other parties in interest to address questions and to provide those parties with additional information with respect to each of the Motions to move these Chapter 11 Cases forward in an efficient and expedited manner. To that end, the Debtors and their professionals have participated in numerous diligence calls and information sessions, established data rooms, and responded to substantial document and other informational requests in an effort to work through any issues or questions these parties may have with respect to the relief requested in the Motions.

The Debtors are pleased to report to the Court that these efforts have been productive and, as a result, eight (8) of the Motions are largely uncontested (the "**Consensual Motions**"). Revised drafts of the proposed final orders for the Consensual Motions (the "**Proposed Final Orders**") reflecting changes that have been agreed to in order to resolve or address any formal or informal objections were filed with the Court on February 18, 2019 and February 25, 2019.[2] *See* Notice of Filing Proposed Final Orders on First Day and Other Motions to be Heard at February 27 Omnibus Hearing [Docket No. 491] (the "**Feb. 19 Notice**") and Notice of Filing Revised Proposed Final Orders on First Day and Other Motions to be Heard at February 27 Omnibus Hearing (the "**Feb. 25 Notice**"). Each of the Consensual

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in each of the Motions as applicable.

[2] The Debtors are continuing to work with the Creditors Committee to finalize certain language to be added to the Proposed Final Orders.

DEBTORS' OMNIBUS STATEMENT AND REPLY     2

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Motions is identified below in Section II along with a brief description of any changes that have been made to the Proposed Final Orders to address any issues or concerns raised by other parties in interest.

Although the Debtors and the other estate fiduciaries have been working diligently, the Debtors are sensitive to the fact that the Committees have only recently been appointed. In particular, the Debtors understand that the Tort Claimants Committee, which was appointed on February 15, has not yet retained a financial advisor to assist its members. Accordingly, to accommodate these parties, the Debtors have agreed to adjourn the final hearing on the following four (4) Motions (the "**Adjourned Motions**") — the DIP Financing Motion [Docket No. 23], the Customer Programs Motion [Docket No. 16], the Cash Management Motion [Docket No. 7], and the Operational Integrity Suppliers Motion [Docket No. 12].[3] Subject to the Court's availability, the Debtors have agreed to adjourn the final hearing for each of the Adjourned Motions to the omnibus hearing scheduled for **March 12, 2019 at 9:30 a.m. (Pacific Time)**. Any timely filed objections to the final relief requested in the Adjourned Motions will be preserved for that hearing and the objection deadline with respect to the Adjourned Motions for the Tort Claimants Committee and the Creditors Committee will be extended to **March 5, 2019 at 4:00 p.m. (Pacific Time)**.[4] Each of the Adjourned Motions is briefly discussed below in Section III.

Each of the remaining four (4) Motions moving forward on a contested basis (the "**Outstanding Motions**") is identified below in Section IV. The Debtors are continuing to work in advance of the Hearing to try to resolve or narrow any remaining issues with respect to the Outstanding Motions that have been raised by the U.S. Trustee, the Committees, or other parties in interest. However, to the extent such informal or formal objections cannot be resolved, the objections should be overruled for the reasons set forth below.

---

[3] With respect to the Operational Integrity Suppliers Motion, as discussed in further detail below, the Debtors have requested, and the Committees have agreed, to increase the Interim Operational Integrity Supplier Cap to $60 million pending a final hearing on the Motion and a proposed second interim order to that effect has been filed with the Court. *See* Feb. 25 Notice, at Ex. 13.

[4] Any further replies from the Debtors will be due no later than March 11, 2019 at 12:30 p.m. (Pacific Time).

## II. THE CONSENSUAL MOTIONS

### A. Employee Wages Motion [Docket No. 8]

No objections were filed with respect to Employee Wages Motion and this Motion is proceeding on an uncontested basis. On February 22, 2019, the Debtors' Board of Directors announced that for several reasons the Debtors would not be paying any STIP Awards to Employees for the fiscal year 2018 under the Debtors' 2018 Short-Term Incentive Plan.[5] Accordingly, the Debtors have withdrawn their request from the Employee Wage Motion to pay the 2018 STIP Awards and the Proposed Final Order has been revised to reflect the withdrawal of that relief.[6] *See* Feb. 25 Notice, at Ex. 5.

### B. Insurance Motion [Docket No. 9]

No objections were filed with respect to the Insurance Motion and this Motion is proceeding on an uncontested basis. In response to a comment received from the Creditors Committee, the Debtors have revised the Proposed Final Order to indicate that the Debtors will provide advance notice to the Committees prior to purchasing any Insurance Policies with coverage that is materially inconsistent from the coverage under their existing Insurance Policies. *See* Feb. 25 Notice, at Ex. 1.

### C. Exchange Operators Motion [Docket No. 15]

No objections were filed with respect to the Exchange Operators Motion and this Motion is proceeding on an uncontested basis. In response to inquiries from a number of parties, the Debtors have included language clarifying the types of contracts and agreements to be included within the definition of Trading Counterparties and to make it clear that such parties are entitled to hold and apply cash or other collateral in connection with postpetition transactions as expressly set forth in the Exchange Operators Motion. *See* Feb. 25 Notice, Ex. 2.

---

[5] The Debtors understand that representatives of a Union that represents certain of the Debtors' Employees may take issue with the Debtors' decision to withdraw their request to pay the 2018 STIP Awards. The STIP Awards, however, are completely discretionary and the withdrawal thereof does not in any way contravene the terms of any collective bargaining agreements.

[6] The Debtors do intend, however, to seek approval to pay revised STIP Awards for the 2019 fiscal year and anticipate filing a separate Motion shortly with the Court with respect to that relief.

### D. Lien Claimants Motion [Docket No. 13]

No objections were filed with respect to the Lien Claimants Motion and this Motion is proceeding on an uncontested basis.[7] In response to a comment from the Creditors Committee, the Debtors have agreed to provide the U.S. Trustee and the Committees with bi-monthly reports of amounts paid to Lien Claimants pursuant to this Motion. *See* Feb. 25 Notice, Ex. 3.

### E. Tax Motion [Docket No. 11]

No objections were filed with respect to the Tax Motion and this Motion is proceeding on an uncontested basis. At the request of the California Department of Justice, the Debtors have agreed to include language clarifying that the *Order Suspending Order for Payment of State and Federal Taxes* [Docket No. 271] does not excuse or otherwise affect the Debtors' obligations to file tax returns or extensions of time to file such returns and pay postpetition taxes. *See* Feb. 25 Notice, Ex. 4.

### F. 503(b)(9) Claims Procedures Motion [Docket No. 31]

No objections were filed with respect to the 503(b)(9) Claims Procedures Motion and this Motion is proceeding on an uncontested basis. The Debtors have revised the Proposed Final Order to include counsel for each of the Committees as notice parties. *See* Feb. 25 Notice, Ex. 8.

### G. Reclamation Procedures Motion [Docket No. 30]

No objections were filed with respect to the Reclamation Procedures Motion and it is proceeding on an uncontested basis. The Debtors have revised the Proposed Final Order to include counsel for each of the Committees as notice parties. *See* Feb. 25 Notice, Ex. 7.

### H. Interim Compensation Procedures Motion [Docket No. 349]

No objections were filed with respect to the Interim Compensation Procedures Motion and this Motion is proceeding on an uncontested basis. The Debtors have revised the Proposed Final Order to include counsel for each of the Committees as notice parties. *See* Feb. 25 Notice, Ex. 11.

---

[7] All responses filed in opposition to the Lien Claimants Motion were received prior to and heard at the hearing on January 31, 2019. No further objections or responses were received and this matter is going forward on an uncontested basis.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## III. THE ADJOURNED MOTIONS

### A. DIP Financing Motion [Docket No. 23]

As set forth above, the Debtors have agreed to adjourn the final hearing on this Motion to March 12, 2019.

### B. Cash Management Motion [Docket No. 7]

As set forth above, the Debtors have agreed to adjourn the final hearing on this Motion to March 12, 2019.

### C. Customer Programs Motion [Docket No. 16][8]

As set forth above, the Debtors have agreed to adjourn the final hearing on this Motion to March 12, 2019.

### D. Operational Integrity Supplier Motion [Docket No. 12][9]

As set forth above, the Debtors have agreed to adjourn the final hearing on this Motion to March 12, 2019. However, to prevent any interruptions to the Debtors' businesses and operations while the Committees continue their due diligence with respect to this Motion during the extended

---

[8] The Debtors received one objection to the Customer Programs Motions (the "**CP Objection**") [Docket No. 527], which asserts, *inter alia*, that in order to comply with the programs and other obligations set forth in the Customer Programs Motion, the Debtors should be required to assume contracts with certain homeowners regarding environmental contamination investigation and potential remediation. The CP Objection is preserved for the final hearing as described above. The Debtors are not aware of any valid basis to assume or reject these agreements at these early stages in the Chapter 11 Cases, nor have the objectors provided one. Any decision regarding assumption or rejection will be made by the Debtors in accordance with the time afforded them under the Bankruptcy Code. To be clear, the Debtors have been and are prepared at this time to continue to honor their postpetition obligations to homeowners under these contracts, notwithstanding that certain of the objecting parties have blocked access to the land at issue in breach of the terms of their agreements with the Debtors.

[9] The Debtors are in discussions with the three parties that filed statements or objections to the Operational Integrity Supplier Motion [Docket Nos. 496, 506, and 508] and hope to have any issues raised by such parties resolved prior to the March 12, 2019 Hearing. The Debtors understand that at least one of these parties, Holt of California, is withdrawing its objection without prejudice. To the extent any issues remain unresolved at the March 12, hearing, the remaining objections should be overruled. Similar to those objections that were heard by the Court at the first day hearing on January 31, 2019, the objectors do not object to the relief requested in the Motion – rather, they want assurances today that they are to be included and paid as Operational Integrity Suppliers. This is a decision that is and should be within the sole purview of the Debtors because only they know and understand which goods and services are absolutely essential at any given time to maintaining their operations in a safe and reliable manner. To the extent any of the objectors believe their claims should be paid as Operational Integrity Supplier Claims they are free to make their cases to the Debtors and each such party has already been in direct discussions with members of the Debtors' Supplier Management Committee – and their ability to continue to make their cases will not be prejudiced or impacted by granting further interim or final relief with respect to this Motion.

interim period, the Debtors have requested, and the Committees have agreed, to increase the Interim Operational Integrity Supplier Cap to $60 million pending the final hearing on the Motion. Although the Debtors have not exhausted the full amount of the $30.1 million that was previously authorized under this Motion, the Debtors believe this incremental relief is necessary as a number of substantial payments to Operational Integrity Suppliers have either already been, or will likely need to be, scheduled or otherwise allocated in the next two weeks. Contemporaneously herewith, the Debtors are filing a declaration in further support of the relief requested in the Operational Integrity Supplier Motion, including the necessity and appropriateness of the increased interim cap. A form of proposed second interim order reflecting this incremental relief has been filed with the Court. *See* Feb. 25 Notice, Ex. 13.

## IV. OUTSTANDING MOTIONS

### A. NOL Motion [Docket No. 10]

The Debtors are filing a separate stand-alone reply contemporaneously herewith in response to the limited oppositions filed with respect to the NOL Motion.

### B. Utilities Motion [Docket No. 32]

The Debtors believe they have an agreement in principal to resolve the one objection filed to the Utility Motion [Docket No. 499] (the "**Utility Objection**") and are working to document that resolution prior to the hearing. However, to the extent the Utility Objection remains outstanding and unresolved, it should be overruled as the substance of the objection is without merit and has previously been overruled by numerous courts. The same or similar procedures have been approved by countless courts since the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *See, e.g.*, *In re NewZoom, Inc.*, Case No. 15-31141 (HB) (Bankr. N.D. Cal. Oct. 15, 2015) (Docket No. 149); *In re Checkout Holding Corp., et al.*, Case No. 18-12794 (KG) (Bankr. D. Del. Jan. 10, 2019) (Docket No. 186); *In re Sears Holdings Corporation, et al.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 2, 2018) (Docket No. 431); *In re TOPs Holding II Corporation, et al.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. Mar. 13, 2018) (Docket No. 139); *In re Fieldwood Energy LLC*, Case No. 18-30648 (DRJ) (Bankr. S.D. Tex. Feb. 16, 2018) (Docket No. 69); *In re Angelica Corporation, et al.*, Case No. 17-10870 (JLG) (Bankr. S.D.N.Y. May 1, 2017) (Docket No. 140); *In re Westinghouse Electric Company, et al.*, Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. Apr. 26, 2017) (Docket No. 369). Moreover, courts have

previously held that adequate assurance in the form of a two-week deposit satisfies the requirements of section 366 of the Bankruptcy Code. *See In re Great Atlantic &Pacific Tea Co.,* Case No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (affirming the bankruptcy court's finding that a two-week deposit was sufficient adequate assurance); Hr'g Tr. at 54, *In re AMR Corporation, et al.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Jan. 27, 2012) (Docket No. 2164) (the court finding that a two-week deposit was sufficient adequate assurance). As set forth in the Wells Declaration, the Debtors have substantial liquidity in the form of cash on hand and their proposed $5.5 billion debtor-in-possession financing, which will provide them with sufficient liquidity to timely pay all of their postpetition obligations to Utility Companies. Accordingly, the Proposed Adequate Assurance is sufficient and, to the extent the Utility Objection remains outstanding, it should be overruled.

### C. Case Management Procedures Motion [Docket No. 352]

The Debtors are working with the U.S. Trustee to address the issues raised in its objection to the Case Management Procedures Order.

### D. Ordinary Course Professionals Motion [Docket No. 350]

The Debtors are working with the U.S. Trustee to address the issues raised in its objection (the "**OCP Objection**") [Docket No. 602]. The Debtors have had several discussion with the U.S. Trustee regarding the Ordinary Course Professionals Motion; however, the OCP Objection was the first time the U.S. Trustee raised any issue with the proposed monthly or case cap amounts. Given the vast size and the complexity of their operations, the Debtors have a significant need for the legal services provided by the Ordinary Course Professionals with respect to their day-to-day operations, including with respect to various regulatory guidelines. The Debtors believe the proposed caps are reasonable and appropriate in light of the size and complexity of these Chapter 11 Cases and submit that similar procedures have been used in many other cases. *See e.g.*, *In re Westinghouse*, Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. May, 24, 2017) (Docket No. 543) (court approved compensation procedures which included monthly caps of $100,000, $125,000, and $150,000 and case caps of $900,000, $1.125 million, and $1.35 million for certain ordinary course professionals); *In re Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 5, 2008) (Docket No. 1394) (court approved compensation procedures which included a monthly cap of $150,000 and a case cap of $1

million for ordinary course professionals). Decreasing the proposed caps would increase, potentially substantially, the number of firms that would need to file full retention applications or fee applications, many of which are smaller firms that perform discrete regulatory services. Additionally, while Ordinary Course Professionals would be required to disclose any prepetition amounts owed under the proposed procedures, the Debtors do not see any basis for the U.S. Trustee's request that Ordinary Course Professionals waive such claims.

The U.S. Trustee also raises concern with the number of professionals doing Federal Energy Regulatory Commission ("**FERC**") and personal injury-related work. However, each firm listed does discrete work and, given the size and scope of the Debtors' operations, one single firm cannot cover all of the work required. FERC has a broad mandate covering a wide range of matters, which requires the Debtors employ a number of firms that specialize in certain of these areas, such as hydroelectric licensing and transmission ratemaking. Accordingly, the services of these firms are necessary to maintain the ongoing legal compliance of the Debtors' day to day operations.

## V. CONCLUSION

The Debtors have been, and will continue to, work with the U.S. Trustee, the Committees, and the other parties to address the issues that remain outstanding on the Motions in hopes of narrowing or resolving the issues before the Court. However, to the extent any Objections remain outstanding they should be overruled for the reasons set forth above.

Dated: February 25, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Jane Kim
     Jane Kim

*Proposed Attorneys for Debtors
and Debtors in Possession*