WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>X   Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**DECLARATION OF JOHN BOKEN IN FURTHER SUPPORT OF FIRST DAY MOTIONS AND RELATED RELIEF**<br><br>Date:    February 27, 2019<br>Time:   9:30 a.m. (Pacific)<br>Place:   United States Bankruptcy Court<br>            Courtroom 17, 16th Floor<br>            San Francisco, CA 94102 |

I, John Boken, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

I am a Managing Director in the Turnaround Restructuring Services practice of AlixPartners, LLP, which is an affiliate of both AlixPartners, LLC and AP Services, LLC, ("**APS**"), which will provide interim management services, described further below, to Pacific Gas and Electric Corporation and Pacific Gas and Electric Company, as debtors and debtors-in-possession (collectively, "**PG&E**" or the "**Debtors**" and together with their non-Debtor subsidiaries, the "**Company**") in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"). I have been appointed by the PG&E Board of Directors to serve as the Deputy Chief Restructuring Officer ("**Deputy CRO**") for the Debtors and will be serving in that capacity pursuant to an engagement letter that the Company has entered into with APS, subject to Court approval.

I have more than 28 years of corporate restructuring experience. I have led over 75 restructuring projects in a wide variety of industries, including energy, construction, health care, manufacturing, homebuilding, retail, and agriculture. In doing so, I have developed expertise in resolving day-to-day operational issues, devising business turnaround strategies, formulating debt restructuring plans, and divesting of unprofitable and/or non-strategic operations and assets. I also have significant experience designing creative solutions to the complex operating and capital structure problems that exist in large restructuring cases. I have served as Chief Restructuring Officer, and in other senior management capacities, in other large, complex chapter 11 cases. I have also assisted numerous companies in restructuring situations in an advisory capacity. Examples of situations where I have had a material leadership role in the restructuring are: President and COO of NRG Energy, CEO of Entegra Power Group, CEO of TOUSA, CRO of Flying J, CRO of Homer City Generation, CEO of SolarWorld Americas, and restructuring advisor to Southern California Edison.

I hold a Bachelor of Science degree in commerce-finance from the University of Santa Clara. I am a Certified Public Accountant (inactive) and a Certified Insolvency and Restructuring Advisor. I am also a member of the Association of Insolvency and Restructuring Advisors, the American Bankruptcy

DECLARATION OF JOHN BOKEN IN
FURTHER SUPPORT OF FIRST DAY MOTIONS

2

Institute and the Turnaround Management Association. I have been a regular speaker and panelist at seminars and conferences on issues relating to financially distressed companies.

Prior to the Petition Date, AlixPartners, LLC was engaged to provide financial advisory and other restructuring related services to the Debtors, and I have worked with the Debtors since November 2018. In my capacity as proposed Deputy CRO, as well as my work with the Debtors prior to the Petition Date, I have become knowledgeable and familiar with the Debtors' day-to-day operations, business, and financial affairs. I am authorized to submit this Declaration on behalf of the Debtors. The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify to the facts set forth in this Declaration.

This Declaration is submitted in further support of the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b)(9) and Fed. R. Bankr. P. 6003 and 6004 for Interim and Final Authority to Pay Prepetition Obligations Owed to Certain Safety and Reliability, Outage, and Nuclaer Facility Suppliers* [Docket No. 12] (the "**Operational Integrity Suppliers Motion**").[1]

Pursuant to the Operational Integrity Suppliers Motion, the Debtors are seeking interim and final authority to pay the prepetition claims (the "**Operational Integrity Supplier Claims**") of certain vendors, suppliers, service providers, and other similar parties and entities that are essential to protecting the public health and maintaining the going-concern value and integrity of the Debtors' businesses and operations (the "**Operational Integrity Suppliers**"). At the first day hearing on January 31, 2019, the Court approved the Operational Integrity Suppliers Motion on an interim basis and entered an order [Docket No. 213] (the "**Interim Order**") authorizing the Debtors to, among other things, pay Operational Integrity Supplier Claims in an amount not to exceed $30,100,000 pending entry of a final order on the Motion (the "**Interim Operational Integrity Supplier Cap**"). The final hearing on the Operational Integrity Suppliers Motion was originally scheduled for February 27, 2019.

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Operational Integrity Suppliers Motion.

DECLARATION OF JOHN BOKEN IN FURTHER SUPPORT OF FIRST DAY MOTIONS
3

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

At the request of the Official Committee of Unsecured Creditors (the "**Creditors Committee**") and the Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**"), the Debtors have agreed to adjourn the final hearing on the Operational Integrity Suppliers Motion to March 12, 2019. However, to help safeguard against any interruptions to the Debtors' businesses and operations while the Committees continue their due diligence with respect to this Motion during the extended interim period, the Debtors have requested, and the Committees have agreed, to increase the Interim Operational Integrity Supplier Cap to $60,000,000 pending the final hearing on the Motion. Although the Debtors have not exhausted the full amount of the $30,100,000 that was previously authorized under this Motion, a number of substantial payments to Operational Integrity Suppliers have either already been, or will likely need to be, scheduled or otherwise allocated in the next two weeks which will likely account for any remaining balance of the original Interim Operational Integrity Supplier Cap. In addition, as the Debtors have held off making certain vendor and supplier payments until the appointment of the Committees and the February 27 Hearing, the further adjournment of the final hearing on the Operational Integrity Suppliers Motion will likely lead to increased pressure from the Debtors' vendor base and suppliers. Accordingly, I believe this incremental increase in the Interim Operational Integrity Supplier Cap is necessary and appropriate to minimize any disruption to the Debtors' operations.

I further understand that three statements or objections have been filed with respect to the final relief sought in the Operational Integrity Suppliers Motion [Docket Nos. 496, 506, and 508] (collectively, the "**Objections**"). Members of the Debtors' Supplier Management Committee are in discussions with the three parties that filed the Objections and hope to have any issues raised by such parties resolved prior to the March 12, 2019 Hearing. However, to the extent such issues remain unresolved at that time, I believe the Objections should be overruled and the relief should be granted on a final basis.

I understand that the Objections generally do not object to the relief requested in the Motion – rather, those parties want assurances today that they are to be included and paid as Operational Integrity Suppliers before any other parties. Since the commencement of these Chapter 11 Cases, the Debtors

DECLARATION OF JOHN BOKEN IN
FURTHER SUPPORT OF FIRST DAY MOTIONS

4

have been inundated with requests from vendors and suppliers seeking payment of their prepetition claims as Operational Integrity Supplier Claims or to have them paid pursuant to other first day orders approved by the Court, such as the Lien Claimants Motion, or to have their contracts quickly assumed and any outstanding prepetition claims cured as a part of that process.

In addition to the dozens of vendor calls and inquiries the Debtors are receiving on a daily basis, since the Petition Date, more than 670 liens have been filed or otherwise asserted against the Debtors' property by third party vendors and suppliers asserting approximately $177.4 million in potential Lien Claims.[2] To deal with these numerous inquiries, the Debtors have implemented a rigorous and disciplined process led by the members of the Supplier Management Committee to closely manage these requests. The Debtors have been, and will continue to, respond to inquiries from suppliers and vendors and requests for payment of any claims as Operational Integrity Supplier Claims in a thoughtful manner in accordance with the Payment Protocol approved by the Court pursuant to the Interim Order, to ensure that only those claims that are absolutely necessary to maintaining the Debtors' operations in a safe and reliable manner will be paid. This is a decision that is and should be within the sole purview of the Debtors because only they know and understand which goods and services are absolutely essential at any given time to maintaining their operations in a safe and reliable manner. To the extent any of the Objectors believe their claims should be paid as Operational Integrity Supplier Claims they are free to make their cases to the Debtors and each such party has already been in direct discussions with members of the Supplier Management Committee – and their ability to continue to make their cases will not be prejudiced or impacted by granting further interim or final relief with respect to the Operational Integrity Suppliers Motion.

---

[2] These potential Lien Claims may include potentially duplicative requests and do not reflect any analysis by the Debtors with respect to the validity of any such asserted claim amounts, which analysis is ongoing.

DECLARATION OF JOHN BOKEN IN
FURTHER SUPPORT OF FIRST DAY MOTIONS

5

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

For the reasons set forth in the Operational Integrity Suppliers Motion and herein, the relief requested is essential to avoid the disruption of operations and to promote the Debtors' smooth transition into chapter 11 for the benefit of all parties in interest.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct.

Dated: February 25, 2019

Respectfully submitted,

By: /s/ John Boken
    John Boken

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

DECLARATION OF JOHN BOKEN IN
FURTHER SUPPORT OF FIRST DAY MOTIONS

6