1                    UNITED STATES BANKRUPTCY COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3                                -oOo-

4    In Re:                      ) Case No. 19-30088-DM
                                 ) Chapter 11
5    PG&E CORPORATION,           )
                                 ) San Francisco, California
6    -and-                       ) Tuesday, February 26, 2019
                                 ) 9:30 AM
7    PACIFIC GAS AND ELECTRIC     )
     COMPANY,                    ) MOTION FOR RELIEF FROM STAY
8                                ) BY VALERO REFINING COMPANY-
                        Debtors.  ) CALIFORNIA [DKT. NO. 315]
9    _____)

10                       TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE DENNIS MONTALI
11                   UNITED STATES BANKRUPTCY JUDGE

12
     APPEARANCES:
13   For the Debtor:            AN TRAN, ESQ.
                                Weil, Gotshal & Manges LLP
14                              201 Redwood Shores Parkway,
                                Redwood Shores, CA 94065
15                              (650)802-3000

16                              PETER J. BENVENUTTI, ESQ.
                                Keller & Benvenutti LLP
17                              650 California Street
                                Suite 1900
18                              San Francisco, CA 94108
                                (415)796-0709
19
     For Valero Refining        RICHARD A. LAPPING, ESQ.
20   Company-California:        Trodella & Lapping LLP
                                540 Pacific Avenue
21                              San Francisco, CA 94133
                                (415)399-1015
22
     For Official Committee of  THOMAS R. KRELLER, ESQ.
23   Unsecured Creditors:       Milbank, Tweed, Hadley & McCloy
                                2029 Century Park East
24                              33rd Floor
                                Los Angeles, CA 90067
25                              (424)386-4000

1  Court Recorder:            JANE GALVANI
                             United States Bankruptcy
2                            Court
                             450 Golden Gate Avenue
3                            16th Floor
                             San Francisco, CA 94102
4
   Transcriber:              SHARONA SHAPIRO
5                            eScribers, LLC
                             7227 N. 16th Street
6                            Suite #207
                             Phoenix, AZ 85020
7                            (973)406-2250

8

9

   Proceedings recorded by electronic sound recording;
10  transcript provided by transcription service.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PG&E Corporation

1    SAN FRANCISCO, CALIFORNIA, TUESDAY, FEBRUARY 26, 2019, 9:31 AM

2                           -oOo-

3       (Call to order of the Court.)

4           THE CLERK:  All rise.  Court is now in session, the

5    Honorable Dennis Montali presiding.

6           IN UNISON:  Good morning, Your Honor.

7           THE COURT:  Good morning.

8           THE CLERK:  In the matter of PG&E Corporation.

9           THE COURT:  So you're first here today, Mr.

10   Benvenutti?

11          MR. BENVENUTTI:  Your Honor, I think I'm just a pretty

12   face here, but I will introduce my colleague before we get

13   started, if I may.

14          THE COURT:  Okay.  Go ahead.

15          MR. BENVENUTTI:  Thank you.  Good morning, Your Honor.

16   Peter Benvenutti, Keller & Benvenutti, and An Tran of Weil,

17   Gotshal, appearing on behalf of PG&E.  Ms. Tran.

18          THE COURT:  Good morning.

19          Mr. Lapping, good morning.

20          MR. LAPPING:  Good morning, Your Honor.  Richard

21   Lapping, Trodella & Lapping, LLP, on behalf of Valero Refining

22   California.

23          THE COURT:  I'll tell you what.  There are a number of

24   phone appearances, but I'd like to call on people only if they

25   want to be heard when I hear this motion because I can't really

PG&E Corporation

1   tell who's just listening or who wants to be heard.

2          So are you appearing, sir?

3          MR. KRELLER:  I am, Your Honor.  Good morning.  Thomas

4   Kreller of Milbank on account of the official unsecured

5   creditors' --

6          THE COURT:  Okay.

7          MR. KRELLER:  -- committee in these cases.

8          THE COURT:  All right.  Good morning.

9          All right.  So I'm sorry, I didn't get counsel's name

10  for the -- I didn't see your name on the paper, so just give me

11  the correct spelling of your name, please.

12         MS. TRAN:  It's An Tran --

13         THE COURT:  Tran.

14         MS. TRAN:  -- with Weil, Gotshal.

15         THE COURT:  Ms. Tran, okay.  So you're presenting the

16  opposition for the debtor, right?

17         MS. TRAN:  That's correct, Your Honor.

18         THE COURT:  Okay.  So Mr. Lapping, you turned me down

19  on my tentative ruling, but all I got from you was your

20  response to the issue about the sealing motion.  But I still

21  don't have a sealing motion, so I don't know what I'm supposed

22  to do with all this back and forth.  It's not a fatal error to

23  say that the sealing issue is incomplete, but the motion is

24  incomplete.  But even if it weren't, I still have the same

25  position that I tried to explain in the tentative, and I think

PG&E Corporation

1    that the debtor and the committee operate.

2          So rather than waste our time on the sealing motion,

3    just tell me why I should grant relief, under any

4    circumstances, given what we know about the case.

5          MR. LAPPING:  Yes, Your Honor.  Yeah, I agree.  The

6    insurance issue is one of the Curtis factors, and we wanted to

7    address it.  It's a plus, but it's not critical.  There are

8    other factors that point to granting relief in the automatic

9    stay.  And we basically have a very significant claim.  It's a

10   tort claim, but it's not a wildfire claim.

11         THE COURT:  No, I know.

12         MR. LAPPING:  And it's obviously in dispute.  And --

13         THE COURT:  It's not contingent.  I think you used the

14   word "contingent" at one point, or somebody did.

15         MR. LAPPING:  Well --

16         THE COURT:  It's in dispute.

17         MR. LAPPING:  It's --

18         THE COURT:  No, but that's not a contingent, but it's

19   in dispute.  So we're in agreement there.

20         MR. LAPPING:  Okay.  And I think -- you know, the

21   cases say that the chief Curtis factor is whether the

22   litigation, if allowed to go forward, would interfere with the

23   administration of the bankruptcy case.  And I submit that it

24   simply -- causing this thing to basically stay in your court

25   and be considered periodically --

PG&E Corporation

1    THE COURT:  And maybe have to file a proof of claim in

2    this court?

3    MR. LAPPING:  Maybe have to file a proof of claim --

4    THE COURT:  Well, it's important --

5    MR. LAPPING:  -- and have it contested.

6    THE COURT:  That's important, isn't it?

7    MR. LAPPING:  It is, but it also would add to the

8    administration of the case.

9    THE COURT:  Why?  Why would it?

10   MR. LAPPING:  Well, because it would -- if we go out

11   and try this case in Sacramento in front of Judge Nunley, and

12   come back with a resolution, then the claim won't be disputed.

13   It'll be --

14   THE COURT:  Well, I know, but that's because if you

15   don't go try the case in front of him it won't be a waste of

16   your or the debtor's time, and maybe there'll be a disposition

17   of it in some other fashion.  That's all.  I mean, it may be.

18   I'm not saying it will be, but it may be.

19   MR. LAPPING:  Well --

20   THE COURT:  And look, there's a broader question, and

21   you know as well as I the broader question, and that is:  does

22   an unsecured creditor, a big one like your client, get to open

23   the door a month into a major Chapter 11.  And the answer, in

24   my view, has to be no, because the debtor and the committee and

25   the parties are just getting their act together.  And it's sort

PG&E Corporation

1    of the rule that I learned a long time ago that you just -- you

2    don't come in and ask too much too soon because you'll get

3    told:  wait awhile.  Pardon me.

4         MR. LAPPING:  Well, okay, Your Honor --

5         THE COURT:  You know that; you've seen that rule

6    played out --

7         MR. LAPPING:  I have.

8         THE COURT:  -- a hundred times.

9         MR. LAPPING:  I have.  We're in the final stages of a

10   trial.  And you know, we're not into the trial, but we have one

11   expert deposition left.

12        THE COURT:  I know.

13        MR. LAPPING:  The motion for the amended complaint was

14   under submission.  It's completed.  The debtor needs to file --

15        THE COURT:  Well, I don't mind --

16        MR. LAPPING:  -- a reply brief.

17        THE COURT:  I don't mind relief to let the judge make

18   a ruling.  But the judge may say:  why should I even bother

19   doing that if this case is going to go somewhere else?

20        MR. LAPPING:  Well --

21        THE COURT:  I mean, who's to rule out the possibility

22   of some negotiated resolution of it also?

23        MR. LAPPING:  Well, of course.  But often those happen

24   when trial is about to happen.  And --

25        THE COURT:  True.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1      MR. LAPPING:  But this does not necessarily interfere

2  with the administration of the case because of the following.

3  First of all, if the Court granted the motion, immediately

4  there'd be a two-week gap, you know, a two-week delay in it

5  taking effect, under 4001.

6      THE COURT:  Well --

7      MR. LAPPING:  And then the trial is not until June,

8  and so the only thing that's going to happen is that the

9  debtors' attorneys, Steptoe & Johnson, will --

10      THE COURT:  Who aren't even employed yet.

11      MR. LAPPING:  Right, but they have an ethical

12  obligation to not abandon their client.  And they --

13      THE COURT:  I'm sure they aren't going to.

14      MR. LAPPING:  And they have two weeks to get an

15  employment application in front, and it's a pretty routine

16  thing.  I cannot imagine that's going to be an impediment.

17      THE COURT:  It's completely routine, but it's the

18  principal lawyers for the debtor that have dozens of employment

19  applications to deal with, and this is just one of them.

20  That's all.  We've got on calendar tomorrow for a number of

21  routine, ordinary-course applications.  So it's not something

22  that isn't going to take place in due course.  It's going to

23  happen.  The question is whether it happens so quickly.  But --

24      MR. LAPPING:  Okay.  Well --

25      THE COURT:  Let's assume that, in a reasonably short

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   period of time, the debtors' litigation counsel in the Valero

2   fire will be employed.  That's not an --

3           MR. LAPPING:  Right, and so what's left to do?  One

4   deposition of an expert, already set, didn't happen; preparing

5   your examination; preparing your trial briefs.  It's all lawyer

6   stuff.  The company, I can't believe -- first of all, this

7   doesn't even make a footnote in the annual report.  This is not

8   a significant case as far as PG&E is concerned.  I doubt that

9   somebody from the team that is managing this bankruptcy is also

10  managing that litigation.

11          THE COURT:  Do I --

12          MR. LAPPING:  There's no indication of that --

13          THE COURT:  What do I tell the next hundred fire

14  victims who come in for a motion for relief, say, on the same

15  theory?  They're small, they're not seventy-five million;

16  they're only some smaller amount.  Take a number, right?

17          MR. LAPPING:  There are two major distinctions.

18  Number one, the fire cases involve multiple claims but with a

19  common set of facts that require some sort of management, and

20  the case makes a lot of sense from that standpoint, common

21  facts.

22          Secondly, although I can't really get into the

23  specifics, we're in a different insurance year.  We're not in

24  their insurance coverage.  We're not in the insurance coverage,

25  I don't believe, from the Butte fire that received this.  We're

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   sandwiched right in the middle.  There may be some other claims

2   out there, but --

3          THE COURT:  But am I correct, though, that even though

4   there may be -- and leave aside whether there are any other

5   claimants that would compete with Valero for an insurance fund,

6   isn't it true that a portion of the liability is still borne by

7   the debtor not covered by insurance on their self-insur --

8          MR. LAPPING:  Well, sure, if Mr. Benvenutti -- there's

9   a ten-million-dollar --

10          THE COURT:  Well --

11          MR. LAPPING:  -- of retention.  Well, in the Butte

12   fire PG&E reports that they've spent sixty-five million dollars

13   in defense of that.

14          THE COURT:  No, but I'm asking a different question.

15   If I were to grant relief from stay and the matter went to

16   litigation, trial, this is not a case where, again, what

17   happens all the time in run-of-the-mill cases where the motion

18   is brought because the moving party can look solely to

19   insurance.  Here, if you're successful, or your client, at

20   least ten million dollars is at risk from the general funds of

21   the estate, right?

22          MR. LAPPING:  Well, assuming they haven't already

23   spent a lot of that on this case and others.

24          THE COURT:  Okay.

25          MR. LAPPING:  But yes, you're right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1          THE COURT:  Okay.

2          MR. LAPPING:  Absolutely so.

3          THE COURT:  All right.  I mean, again, look, I'm not

4    trying to make the Valero situation, even if it were the only

5    creditor, or PG&E's situation like the so-called run-of-the-

6    mill case.  But I have cases every day of people who had a

7    slip-and-fall or personal injury or car crash, and they come in

8    and say we're not going to go after the debtor; we just want to

9    go after the insurance company.  And we grant those all the

10   times.  But this does seem different.

11         MR. LAPPING:  Well --

12         THE COURT:  And you can't really make the case, can

13   you, that you look only to the insurer?  You're not --

14         MR. LAPPING:  No, I cannot.  You're right, absolutely,

15   Your Honor.

16         THE COURT:  Okay.

17         MR. LAPPING:  I have no knowledge that there might not

18   be some other claim there.  But the real point is it comes down

19   to judicial economy.  And the case is ready to be decided.

20   It's not going to go away.  And if it sits here for, like, a

21   year before objections to claims come around, you're going to

22   be faced with this complex set --

23         THE COURT:  Did you read my tentative ruling?  I said

24   come back in sixty days; let's see where we are.  I didn't deny

25   your motion.  I didn't suggest I would deny it.  I said -- I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    actually -- and I was working at home on that.  I do some

2    things on the weekend.  And I was thinking ninety days, and I

3    said, no, sixty.  So for what it's worth, my tentative ruling

4    said come back in sixty days and let's see where things are.

5    And that's another way of saying to the debtor and the

6    committee and everybody else, let's make sure we move things.

7            I can't magically say that this huge reorganization is

8    going to get ramped up in, you know, two months.  But I'm

9    telling you, I was trying to tell you and Valero, you're still

10   going to be on the burner.  I'm not putting you at the back of

11   the stove.  I'm putting you maybe on the second burner to see

12   what happens in sixty days.

13           And now, I won't try to fool you; maybe I'll be

14   persuaded in sixty days to continue the stay sixty more days.

15   But I'm not -- I'm trying to send a signal to the other side

16   that they've got to at least tell me what to do about this case

17   going forward because you did file the motion.

18           MR. LAPPING:  Well, Your Honor, let me suggest this.

19   I mean, because you know, it's not easy to get a trial date in

20   district court in Sacramento.  We have one, and it is

21   administratively closed, but the judge is very aware of what's

22   going on.  And so really the question is what can we do to

23   preserve the trial date, because that's the most efficient

24   thing, from our standpoint, and we think from the estate's

25   standpoint, because Steptoe & Johnson was ready to try the

PG&E Corporation

1   case, as far as we know.  Everything was ready.

2         So Your Honor's suggesting April.  Can I make a

3   counterproposal, if you will, for four weeks, and we'll come

4   back then and see what happens?

5         THE COURT:  Negotiating.

6         MR. LAPPING:  Well, that's --

7         THE COURT:  Hey --

8         MR. LAPPING:  I really want you to grant the motion,

9   actually.

10        THE COURT:  Okay.  I'm kidding.  I was really thinking

11  of giving you ninety days, so you want to suggest forty-five

12  now?

13        Ms. Tran, do you want to speak for the debtor here?

14        MS. TRAN:  Okay.

15        THE COURT:  Mr. Lapping is negotiating.  He wants

16  thirty.

17        MS. TRAN:  Good morning, Your Honor, and I'll try to

18  keep this brief because I think your --

19        THE COURT:  That's all right.

20        MS. TRAN:  -- tentative ruling --

21        THE COURT:  That's okay.

22        MS. TRAN:  -- perfectly set forth the reasons why this

23  hearing should be continued and why it's actually premature to

24  consider Valero's motion at this time.  Valero filed the motion

25  just about a week after PG&E filed for Chapter 11 protection.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1          THE COURT:  Right.

2          MS. TRAN:  As you know, the debtors are currently

3  still in triage stage of restructuring, and as your tentative

4  ruling noted, it is just way too early for this Court and for

5  PG&E and other interested parties to consider relief from stay

6  for claims like Valero's.

7          THE COURT:  But I mean, we're not ranking them by

8  their value.  I mean, we're not saying Valero's a big company,

9  they can wait.  I mean, we're really testing it on PG&E's needs

10  here, I think.

11          MS. TRAN:  And that's right, Your Honor.  And I don't

12  want to get into the substance of Valero's motion, but Valero

13  has failed to demonstrate why their claims get priority over

14  other creditors and what's so unique --

15          THE COURT:  Well, they're not asking for priority.

16  They're asking to liquidate the claim.  And so if I understand

17  Mr. Lapping, he wants me to tell Judge Nunley, go try the case,

18  come in with a judgment.  If Valero loses, that's the end of

19  the story.  If Valero wins a judgment, they stand in line with

20  a judgment.  They've liquidated it and take away the

21  contingency -- or the -- excuse me, the disputed nature of it,

22  and -- but I didn't hear Mr. Lapping say, and by the way, then

23  we get paid.

24          MS. TRAN:  That's correct, Your Honor.  But what they

25  are asking is for this Court to decide on its motion for relief

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   from stay based on the order in which it rushed into the

2   courthouse to file the motion.  And there needs to be more time

3   for PG&E and this Court and interested parties to consider a

4   much more systematic and organized and fair process to handle

5   these relief -- these requests for relief from --

6          THE COURT:  Well, is it --

7          MS. TRAN:  -- claim.

8          THE COURT:  -- is it reasonable to assume that sixty

9   days from now, there'll be some movement towards that thing?

10  Again, I'm not trying to treat Valero any way other than its

11  merits.  But we also know there are thousands of other claims

12  in the queue somewhere.  They just haven't filed yet.  And I'm

13  not asking you, today, a month into the case, to tell me what's

14  the game plan to deal with thousands of claims.  But what is

15  likely to happen in sixty days or so, is there any reason to

16  believe there'll be some progress towards some disposition of

17  either this claim or other claims?

18         MS. TRAN:  And we would be -- and we would ask that

19  Your Honor adopt your tentative, which is allow for a sixty-day

20  continuance of this hearing and see where we are at that point.

21         THE COURT:  Well, I guess what I'm trying to do is

22  give you -- is pretend that it's now the end of April, and we

23  have that contingent hearing.  And I don't want you really to

24  answer, because I'm sure you don't know the answer.  But that's

25  the rhetorical question.  I have to say, well, what are they,

PG&E Corporation

1    the debtors -- what are they going to tell me at the end of

2    April that they can't tell me in the end of February?  And I

3    accept the obvious.  You used the term triage.  It's triage all

4    right.  I only got twenty motions to deal with for tomorrow.

5    But I guess what I'm trying to ask you to help me with is what

6    do I tell Mr. Lapping to tell his client about what's next?

7           MS. TRAN:  Well, and I think the insurance issue, even

8    though it's really a distraction to the request, but I think

9    that's a perfect example of one factor, one consideration that

10   would need -- that the debtors need to evaluate in a holistic

11   and systematic basis because we -- it wouldn't be efficient,

12   and it wouldn't work, if we were to decide on how to evaluate

13   certain insurance policies, how to disclose them on an ad hoc

14   basis.  So that would just be an example.  But just from trying

15   to coordinate all of these various requests for relief from

16   claims in a systematic and organized way.

17          THE COURT:  Okay.  All right.  So you would like me to

18   stick with the tentative and recognize that, sixty days from

19   now, I might be having the same conversation, and if we're --

20   and I might be persuaded to tell Mr. Lapping, go ahead.

21          MS. TRAN:  Well, we would love it if you kept your

22   original ninety day, but I don't want to ask too much too soon.

23   So --

24          THE COURT:  Well, I know if I said 120, you'd say,

25   that's more than -- that's way too short.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    So Mr. Kreller, what's the committee weigh-in on this?

2  I mean, I know you did say you supported the opposition, if I'm

3  not mistaken.  But it's largely the same question, right, about

4  it's too early?  But beyond that, what do we do?

5    MR. KRELLER:  Your Honor, it is, and we join the

6  debtors' position on this.  I read your tentative to say let's

7  pump the brakes here for a period of time.  And I think,

8  certainly, from the committee's perspective, given how recently

9  we've been involved, and we've been drinking out of a fire hose

10 since we got started.  More --

11   THE COURT:  That's a bad metaphor in this case.

12   MR. KRELLER:  It is, Your Honor.  I apologize for

13 that.  But I think that, to your question of what will be

14 different sixty days from now, I think the answer may be

15 nothing.  The answer may be, we'll see if there are other

16 motions for relief from stay like this that come forward so

17 that we'll better understand the possible universe of these

18 types of claims or these types of requests.  And if there's

19 then a systematic approach to bring to those, I think we'll be

20 in a position, certainly as a committee, and I think the

21 debtors will as well, to speak in a more educated way in terms

22 of how those requests should be processed and dealt with and

23 what sort of a system can be set up.

24   THE COURT:  Well, I didn't know the particulars of

25 Valero.  I mean, I recognize the name, but I didn't know that

(973) 406-2250 | operations@escribers.net | www.escribers.net

1    Valero was a tort claimant back when this case was filed and

2    assigned to me.  I assumed by now there would be a line of fire

3    victims seeking relief from stay.  And to my surprise, there

4    are none yet.  And there's one fire victim of a different fire

5    in a different circumstance; that's Valero.  And again, that

6    doesn't mean I'm faulting their counsel; I'm just saying, well,

7    you never know how these things are going to predict and play

8    out.

9        MR. KRELLER:  That's exactly right, Your Honor.  And I

10   think that's why a pause in time -- if that's how this

11   continues to go and there are relatively few of these, maybe

12   it's less of an issue to think about some big systematic need,

13   and you can deal with them on a one-off basis.  I suspect that

14   won't be the case, but I, like you, would have expected we

15   would see more by now.  And so I think to take an amount of

16   time, whether it's forty-five days or sixty days, to see what

17   hits the docket, how many of these are out there, and think

18   about what is -- it kind of would allow everyone to size the

19   issue here.  And that's why we thought your tentative made a

20   lot of sense to give us the opportunity --

21       THE COURT:  Well, I'm thinking out loud.  I mean, this

22   is really a comment, not just to you, it's to the debtors'

23   counsel and to Mr. Lapping, too.  Is this case has a first --

24   unlike the prior bankruptcy -- it has a fire victims'

25   committee.  I don't imagine the fire victims' committee is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   particularly sympathetic to a refining company that also

2   happens to be the victim of a fire or at least disputed.  And

3   maybe the fire victims' committee will be working with the

4   debtor and the general committee to come up with a overall

5   approach.  But that's no comfort to Valero.  I mean, I can't

6   imagine -- I shouldn't say -- but I mean, I don't imagine

7   Valero is going to be at the table with the fire victims; maybe

8   they are.  That's again, not something I'm going to worry

9   about.

10         MR. LAPPING:  Your Honor, if I may?

11         THE COURT:  Yeah.

12         MR. LAPPING:  We're not -- it's not a fire.  The

13   electricity went out, and our plant stopped --

14         THE COURT:  Oh, I'm sorry.  You're correct.  But there

15   was a fire, right?

16         MR. LAPPING:  Yeah, there was spewing of gas.  And it

17   happens when the refineries go out.

18         THE COURT:  You're correct.  So it's not the

19   traditional fire, like so often happens.  So my error on that

20   subject.

21         Okay.  So power outage victim.

22         MR. LAPPING:  Just like old times.

23         THE COURT:  Yeah.  Right.  Okay.

24         Well, all right.  I've got you, Mr. Kreller.

25         MR. KRELLER:  Thank you.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    THE COURT:  Now, does anyone on the phone or in court

2  wish to be heard on this motion?  I really don't want to -- I

3  don't need a me too from anybody, but there are a number of

4  people monitoring the case, and I'll let anyone here -- let's

5  start with the courtroom.

6    Anyone in the courtroom want to be heard?

7    (No response)

8    All right.  Anyone on the phone want to be heard?

9    (No response)

10    Okay.  Mr. Lapping, this will come as no surprise.

11  I'm going to stick --

12    MR. LAPPING:  Can I make a closing remark, Your Honor?

13    THE COURT:  Yeah, and actually, I do have a question

14  for you, too.  Go ahead.

15    MR. LAPPING:  Here's what I would suggest and why.  So

16  you've posed a very interesting question that no one was

17  prepared, or could be prepared to answer, which is where are we

18  going to be in sixty days on an issue like this?  Is there

19  going to be any change?  I would propose that four weeks is

20  enough time for all of the interested parties to figure whether

21  or not there is some difference that Valero is somehow doing

22  something adverse to the other plans that they have -- with

23  toward -- I just don't know.  And if we come back in four weeks

24  and the answer is, well, let's go forward to the final hearing

25  and then schedule that for four weeks out.  That's what I would

PG&E Corporation

1  propose we do.

2          THE COURT:  And again, what do you perceive as the

3  difference between a preliminary hearing and a final hearing on

4  this motion?

5          MR. LAPPING:  Well, Your Honor, I think you could

6  decide it after a preliminary hear -- upon a preliminary

7  hearing.  I don't think you need to wait.

8          THE COURT:  But that's what getting -- that's what I'm

9  saying.  If I said to you, your motion is denied.  We'll have a

10  final hearing -- or I'm not going to grant relief today; we'll

11  have a final hearing in four weeks, six weeks, eight weeks,

12  what do you think would happen at the final hearing?  Wouldn't

13  it be just the same argument?  I mean, do you think it's an

14  evidentiary hearing --

15          MR. LAPPING:  Well, Your Honor, the debtor wanted to

16  put in some declarations. I would assume they would

17  substantiate their point that somebody involved in this

18  litigation for the company is somehow involved in bankruptcy

19  planning in some way, shape, or form. Secondly, I think it

20  would be helpful to address the insurance question in the

21  meantime as well.  I mean, I was sort of astounded that PG&E

22  did not want the bankruptcy judge, with jurisdiction over its

23  case, to be able to review the insurance policies in camera.

24  But I get it; decision making is slow and careful.  But it

25  seems to me that we could use the four weeks between now and

(973) 406-2250 | operations@escribers.net | www.escribers.net

1    the next hearing to some advantage.

2          THE COURT:  Well, I want you to understand what goes

3    on in my head, okay?  So I get the motion for relief from stay.

4    Again, I say I don't know the specifics of Valero, but I know

5    Valero like I know other gasoline producers or providers in

6    California.  I probably have filled my car in a Valero station.

7    But I didn't know anything more about it.  So in comes the

8    motion, and the motion is supported by a bunch of redacted and

9    sealed documents.  So I didn't know what was going on in

10   District Court.  I don't know anything about a sealing order or

11   protective order.  I'm wondering -- and you, obviously, an

12   experienced regular practitioner in this Court, I thought to

13   myself, well, why did you file a motion and redact some of it?

14   We have a simple redaction procedure in place.  So you then

15   filed the declaration just at the last minute that explains

16   something, but it's still not -- I still don't have it.  Now,

17   do I spend my time reading insurance policies?  Not really, but

18   I need you to have a complete record.  Now, I'll finish.  I

19   don't want you to violate some other order of another court --

20          MR. LAPPING:  Uh-huh.

21          THE COURT:  -- and that explains it.  But I didn't

22   quite explain it beyond that.  So what is it that I need to

23   know to make an informed decision on your motion, and is there

24   something that you think that I need to know that you can't

25   produce because you're under an order elsewhere?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1        MR. LAPPING:  Yes --

2        THE COURT:  That's what I'm unclear about.

3        MR. LAPPING:  Right.  And let me -- at the start, we

4   did produce -- there's a lot of things that are not sealed in

5   the litigation.  We've produced the complaint and --

6        THE COURT:  Yeah --

7        MR. LAPPING:  -- the protective order.

8        THE COURT:  Well, that's pretty obvious.

9        MR. LAPPING:  So we're stuck.  The protective order

10  doesn't allow us to even submit something in camera.  So we

11  needed to get PG&E to release it.  They're slow to act.  But

12  the evidence that was in there, where the specific policy is,

13  what the coverage was, and what the coverage limits were, and

14  how that all worked.  And the provisions that provide,

15  essentially, that the bankruptcy doesn't change anything, not

16  anything too much more complicated than that.  However, if we

17  got a formal response from PG&E that, number one, resolved the

18  insurance disclosure, at least in camera; and secondly, stated

19  whether or not there are other claims that they know about,

20  because this is from 2017, that are subject to this policy

21  potentially; and thirdly, what is the status of the SIR?  Where

22  are we on that process?  And that I think would help the Court.

23        THE COURT:  But don't you think, again, whether it's

24  four weeks or eight weeks or eight months, don't you think

25  that's the kind of thing you could do either informally or

PG&E Corporation

1   formally by discovery on PG&E?  In other words, if you said to

2   them in a formal discovery, I'd rather think you could do it

3   informally, but if you said, are there other insurance claims?

4   That's a question that could be answered; couldn't it?

5           MR. LAPPING:  Your Honor, I just did.  Okay?  And

6   we'll have that discussion.  That's not a problem.  We could do

7   it that way.  My concern is that we use the period of time

8   between now and the next hearing productively, and secondly, I

9   would like to get as short of period as possible because I'm

10  trying not to lose my trial date in Sacramento.

11          THE COURT:  Well, I understand that, but again, there

12  are lot of people that want trial dates.  And you don't -- if

13  you told me that Judge Nunley was going to be on a two-year

14  leave of absence after June, that's one thing.  But do you have

15  any reason to believe that he couldn't set this for trial a

16  little bit down the road?  You don't know one way or the other,

17  do you?

18          MR. LAPPING:  All I know -- Your Honor, I do not know.

19  All I know is what I have in hand.

20          THE COURT:  Well, I understand that.  And I do know

21  it's well documented that the district judges in the Eastern

22  District are up to their ears in backlog because they don't

23  have -- they have a bunch of vacancies and retirements and so

24  on.  So to some extent, maybe he's glad there's a stay.  I

25  don't know.  It's not my place to ask him.

PG&E Corporation

1          What I'm getting at is that there may be a way to

2    determine that.  And if you told me that it can't go to trial

3    for some lengthy period of time, and it was established and

4    couldn't be contested, then maybe that would be something else.

5    I'm sorry to tell you, I'm still going to stick with the sixty

6    days, not because I'm unsympathetic to your argument, but

7    because the bigger picture, the committee, the other committee,

8    the debtor, the organization, the triage.  If the triage that

9    Ms. Tran referred to, kind of, comes down a little bit, then I

10   can breathe a little deeper, and all the principal lawyers that

11   are working so hard on this can take it and your client's just

12   going to have to wait for the time being.

13          So we have a regular PG&E calendar.  Ms. Parada, I

14   believe that that would make --

15          MS. PARADA:  April --

16          THE COURT:  Valero would be available in April --

17          MS. PARADA:  24th?

18          THE COURT:  24th.

19          MS. PARADA:  At 9:30.

20          THE COURT:  Is that date convenient for you both or

21   all?

22          MR. LAPPING:  Your Honor, could we have the Tuesday

23   date, the April 23rd?

24          THE COURT:  Yeah, actually, we have been putting -- I

25   mean, we originally -- Ms. Parada, didn't we think about

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1  putting the relief from stays on the first of the days?

2          MS. PARADA:  I don't think we --

3          THE COURT:  Well, we did it for this case, and that's

4  why we only have one motion on today, but tomorrow we have all

5  the other stuff, so.

6          MR. LAPPING:  Your tentative says April 23rd.

7          THE COURT:  Well, there's another reason.  Stick with

8  the tentative.

9          MR. BENVENUTTI:  23rd works for us, too, Your Honor,

10  if that works for the Court.

11          THE COURT:  Okay.  9:30 okay, or do you want it -- I

12  mean, whether you're the only one or there are fifty of them,

13  I'm trying to stick with a routine for the benefit of

14  everybody, for our staff, the principal lawyers, the lawyers

15  who are only involved in a lesser degree, everybody else.

16  Okay.  So we're going to put -- we're going to continue the

17  preliminary hearing on Valero's motion to April 23rd at 9:30.

18  Okay.

19          MR. LAPPING:  Your Honor, I assume that we can file

20  something in the District Court with the ruling so that the

21  District Court is aware of the progress?

22          THE COURT:  Ms. Tran, any problem with that?

23          MS. TRAN:  We have no problem with that.

24          THE COURT:  Yeah.  Okay.  I mean, just don't get on

25  this --

PG&E Corporation

1          MR. LAPPING:  No argument, just a copy of the --

2          THE COURT:  Don't get on the receiving end of a motion

3    for contempt, Mr. Lapping.  I won't bail you out.

4          MR. LAPPING:  Okay.

5          THE COURT:  All right.  Thank you for your time.  I

6    appreciate --

7          MR. LAPPING:  Thank you, Your Honor.

8          THE COURT:  -- the way you presented the case.

9          MS. TRAN:  Thank you, Your Honor.

10         THE COURT:  Thank you, Ms. Tran.  Thank you, all the

11   other counsel.  So now we're off.  That concludes this

12   morning's calendar.

13         (Whereupon these proceedings were concluded at 10:02

14   A.M.)

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    C E R T I F I C A T I O N

2

3    I, Sharona Shapiro, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7    *[signature: Sharona Shapiro]*

8

9

10   _____

11   /s/ SHARONA SHAPIRO, CET-492

12

13

14   eScribers

15   7227 N. 16th Street, Suite #207

16   Phoenix, AZ 85020

17

18   Date:  February 27, 2019

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

**#**

**#207 (1)**
28:17

**/**

**/s/ (2)**
28:10,14

**A**

**abandon (1)**
8:12
**able (1)**
21:23
**absence (1)**
24:14
**Absolutely (2)**
11:2,14
**accept (1)**
16:3
**account (1)**
4:4
**accurate (1)**
28:4
**act (2)**
6:25;23:11
**actually (5)**
12:1;13:9,23;20:13;
25:24
**ad (1)**
16:13
**add (1)**
6:7
**address (2)**
5:7;21:20
**administration (3)**
5:23;6:8;8:2
**administratively (1)**
12:21
**adopt (1)**
15:19
**advantage (1)**
22:1
**adverse (1)**
20:22
**again (9)**
10:16;11:3;15:10;
18:5;19:8;21:2;22:4;
23:23;24:11
**ago (1)**
7:1
**agree (1)**
5:5
**agreement (1)**
5:19
**ahead (3)**
3:14;16:20;20:14
**allow (3)**
15:19;18:18;23:10
**allowed (1)**

5:22
**although (1)**
9:22
**amended (1)**
7:13
**amount (2)**
9:16;18:15
**annual (1)**
9:7
**answered (1)**
24:4
**apologize (1)**
17:12
**appearances (1)**
3:24
**appearing (2)**
3:17;4:2
**application (1)**
8:15
**applications (2)**
8:19,21
**appreciate (1)**
27:6
**approach (2)**
17:19;19:5
**April (8)**
13:2;15:22;16:2;
25:15,16,23;26:6,17
**argument (1)**
21:13;25:6;27:1
**around (1)**
11:21
**aside (1)**
10:4
**assigned (1)**
18:2
**assume (4)**
8:25;15:8;21:16;
26:19
**assumed (1)**
18:2
**assuming (1)**
10:22
**astounded (1)**
21:21
**attorneys (1)**
8:9
**automatic (1)**
5:8
**available (1)**
25:16
**aware (2)**
12:21;26:21
**away (2)**
11:20;14:20
**awhile (1)**
7:3
**AZ (1)**
28:18

**B**

**back (8)**

4:22;6:12;11:24;
12:4,10;13:4;18:1;
20:23
**backlog (1)**
24:22
**bad (1)**
17:11
**bail (1)**
27:3
**bankruptcy (6)**
5:23;9:9;18:24;
21:18,22;23:15
**based (1)**
15:1
**basically (2)**
5:9,24
**basis (3)**
16:11,14;18:13
**behalf (2)**
3:17,21
**benefit (1)**
26:13
**Benvenutti (7)**
3:10,11,15,16,16;
10:8;26:9
**better (1)**
17:17
**beyond (1)**
17:4;22:22
**big (3)**
6:22;14:8;18:12
**bigger (1)**
25:7
**bit (2)**
24:16;25:9
**borne (1)**
10:6
**both (1)**
25:20
**bother (1)**
7:18
**brakes (1)**
17:7
**breathe (1)**
25:10
**brief (2)**
7:16;13:18
**briefs (1)**
9:5
**bring (1)**
17:19
**broader (2)**
6:20,21
**brought (1)**
10:18
**bunch (1)**
22:8;24:23
**burner (2)**
12:10,11
**Butte (2)**
9:25;10:11

**C**

**calendar (3)**
8:20;25:13;27:12
**CALIFORNIA (3)**
3:1,22;22:6
**Call (2)**
3:3,24
**camera (3)**
21:23;23:10,18
**can (11)**
10:18;11:12;12:22;
13:2;14:9;17:23;18:13;
20:12;25:10,11;26:19
**car (2)**
11:7;22:6
**careful (1)**
21:24
**case (26)**
5:4,23;6:8,11,15;
7:19;8:2;9:8,20;10:16,
23;11:6,12,19;12:16;
13:1;14:17;15:13;
17:11;18:1,14,23;20:4;
21:23;26:3;27:8
**cases (5)**
4:7;5:21;9:18;10:17;
11:6
**causing (1)**
5:24
**certain (1)**
16:13
**certainly (2)**
17:8,20
**certify (1)**
28:3
**CET-492 (1)**
28:10
**CET-884 (1)**
28:14
**change (2)**
20:19;23:15
**Chapter (2)**
6:23;13:25
**chief (1)**
5:21
**circumstance (1)**
18:5
**circumstances (1)**
5:4
**claim (10)**
5:9,10,10;6:1,3,12;
11:18;14:16;15:7,17
**claimant (1)**
18:1
**claimants (1)**
10:5
**claims (12)**
9:18;10:1;11:21;
14:6,13;15:11,14,17;
16:16;17:18;23:19;
24:3

**CLERK (2)**
3:4,8
**client (4)**
6:22;8:12;10:19;
16:6
**client's (1)**
25:11
**closed (1)**
12:21
**closing (1)**
20:12
**colleague (1)**
3:12
**comfort (1)**
19:5
**comment (1)**
18:22
**committee (12)**
4:7;5:1;6:24;12:6;
17:1,20;18:25,25;19:3,
4;25:7,7
**committee's (1)**
17:8
**common (2)**
9:19,20
**company (5)**
9:6;11:9;14:8;19:1;
21:18
**compete (1)**
10:5
**complaint (2)**
7:13;23:5
**complete (1)**
22:18
**completed (1)**
7:14
**completely (1)**
8:17
**complex (1)**
11:22
**complicated (1)**
23:16
**concern (1)**
24:7
**concerned (1)**
9:8
**concluded (1)**
27:13
**concludes (1)**
27:11
**consider (3)**
13:24;14:5;15:3
**consideration (1)**
16:9
**considered (1)**
5:25
**contempt (1)**
27:3
**contested (2)**
6:5;25:4
**contingency (1)**
14:21
**contingent (4)**

5:13,14,18;15:23
**continuance (1)**
15:20
**continue (2)**
12:14;26:16
**continued (1)**
13:23
**continues (1)**
18:11
**convenient (1)**
25:20
**conversation (1)**
16:19
**coordinate (1)**
16:15
**copy (1)**
27:1
**Corporation (1)**
3:8
**counsel (4)**
9:1;18:6,23;27:11
**counsel's (1)**
4:9
**counterproposal (1)**
13:3
**course (2)**
7:23;8:22
**Court (106)**
3:3,4,7,9,14,18,23;
4:6,8,13,15,18;5:11,13,
16,18,24;6:1,2,4,6,9,14,
20;7:5,8,12,15,17,21,
25;8:3,6,10,13,17,25;
9:11,13;10:3,10,14,24;
11:1,3,12,16,23;12:20;
13:5,7,10,15,19,21;
14:1,4,7,15,25;15:3,6,
8,21;16:17,24;17:11,
24;18:21;19:11,14,18,
23;20:1,1,13;21:2,8;
22:2,10,12,19,21;23:2,
6,8,22,23;24:11,20;
25:16,18,20,24;26:3,7,
10,11,20,21,22,24;
27:2,5,8,10
**courthouse (1)**
15:2
**courtroom (2)**
20:5,6
**coverage (4)**
9:24,24;23:13,13
**covered (1)**
10:7
**crash (1)**
11:7
**creditor (2)**
6:22;11:5
**creditors (1)**
14:14
**creditors' (1)**
4:5
**critical (1)**
5:7

**currently (1)**
14:2
**Curtis (2)**
5:6,21

**D**

**date (6)**
12:19,23;24:10;
25:20,23;28:20
**dates (1)**
24:12
**day (2)**
11:6;16:22
**days (16)**
11:24;12:2,4,12,14,
14;13:11;15:9,15;
16:18;17:14;18:16,16;
20:18;25:6;26:1
**deal (4)**
8:19;15:14;16:4;
18:13
**dealt (1)**
17:22
**debtor (12)**
4:16;5:1;6:24;7:14;
8:18;10:7;11:8;12:5;
13:13;19:4;21:15;25:8
**debtors (4)**
14:2;16:1,10;17:21
**debtors' (4)**
8:9;9:1;17:6;18:22
**debtor's (1)**
6:16
**decide (3)**
14:25;16:12;21:6
**decided (1)**
11:19
**decision (2)**
21:24;22:23
**declaration (1)**
22:15
**declarations (1)**
21:16
**deeper (1)**
25:10
**defense (1)**
10:13
**degree (1)**
26:15
**delay (1)**
8:4
**demonstrate (1)**
14:13
**denied (1)**
21:9
**Dennis (1)**
3:5
**deny (2)**
11:24,25
**deposition (2)**
7:11;9:4
**determine (1)**

25:2
**difference (2)**
20:21;21:3
**different (6)**
9:23;10:14;11:10;
17:14;18:4,5
**disclose (1)**
16:13
**disclosure (1)**
23:18
**discovery (2)**
24:1,2
**discussion (1)**
24:6
**disposition (2)**
6:16;15:16
**dispute (3)**
5:12,16,19
**disputed (3)**
6:12;14:21;19:2
**distinctions (1)**
9:17
**distraction (1)**
16:8
**district (6)**
12:20;22:10;24:21,
22;26:20,21
**docket (1)**
18:17
**documented (1)**
24:21
**documents (1)**
22:9
**dollars (2)**
10:12,20
**door (1)**
6:23
**doubt (1)**
9:8
**down (4)**
4:18;11:18;24:16;
25:9
**dozens (1)**
8:18
**drinking (1)**
17:9
**due (1)**
8:22

**E**

**early (2)**
14:4;17:4
**ears (1)**
24:22
**Eastern (1)**
24:21
**easy (1)**
12:19
**economy (1)**
11:19
**educated (1)**
17:21

**effect (1)**
8:5
**efficient (2)**
12:23;16:11
**eight (3)**
21:11;23:24,24
**either (2)**
15:17;23:25
**electricity (1)**
19:13
**else (4)**
7:19;12:6;25:4;
26:15
**elsewhere (1)**
22:25
**employed (2)**
8:10;9:2
**employment (2)**
8:15,18
**end (5)**
14:18;15:22;16:1,2;
27:2
**enough (1)**
20:20
**error (2)**
4:22;19:19
**eScribers (1)**
28:16
**essentially (1)**
23:15
**established (1)**
25:3
**estate (1)**
10:21
**estate's (1)**
12:24
**ethical (1)**
8:11
**evaluate (2)**
16:10,12
**even (8)**
4:24;7:18;8:10;9:7;
10:3;11:4;16:7;23:10
**everybody (3)**
12:6;26:14,15
**everyone (1)**
18:18
**evidence (1)**
23:12
**evidentiary (1)**
21:14
**exactly (1)**
18:9
**examination (1)**
9:5
**example (2)**
16:9,14
**excuse (1)**
14:21
**expected (1)**
18:14
**experienced (1)**
22:12

**expert (2)**
7:11;9:4
**explain (2)**
4:25;22:22
**explains (2)**
22:15,21
**extent (1)**
24:24

**F**

**face (1)**
3:12
**faced (1)**
11:22
**factor (2)**
5:21;16:9
**factors (2)**
5:6,8
**facts (2)**
9:19,21
**failed (1)**
14:13
**fair (1)**
15:4
**far (2)**
9:8;13:1
**fashion (1)**
6:17
**fatal (1)**
4:22
**faulting (1)**
18:6
**FEBRUARY (3)**
3:1;16:2;28:20
**few (1)**
18:11
**fifty (1)**
26:12
**figure (1)**
20:20
**file (7)**
6:1,3;7:14;12:17;
15:2;22:13;26:19
**filed (5)**
13:24,25;15:12;18:1;
22:15
**filled (1)**
22:6
**final (6)**
7:9;20:24;21:3,10,
11,12
**finish (1)**
22:18
**fire (17)**
9:2,13,18,25;10:12;
17:9;18:2,4,4,24,25;
19:2,3,7,12,15,19
**first (5)**
3:9;8:3;9:6;18:23;
26:1
**following (1)**
8:2

Case: 19-30088    Doc# 687    Filed: 02/27/19    Entered: 02/27/19 15:15:38    Page 30 of
34

**fool (1)**
12:13
**footnote (1)**
9:7
**foregoing (1)**
28:4
**form (1)**
21:19
**formal (2)**
23:17;24:2
**formally (1)**
24:1
**forth (2)**
4:22;13:22
**forty-five (2)**
13:11;18:16
**forward (4)**
5:22;12:17;17:16;
20:24
**four (7)**
13:3;20:19,23,25;
21:11,25;23:24
**FRANCISCO (1)**
3:1
**front (3)**
6:11,15;8:15
**fund (1)**
10:5
**funds (1)**
10:20

**G**

**game (1)**
15:14
**gap (1)**
8:4
**gas (1)**
19:16
**gasoline (1)**
22:5
**general (2)**
10:20;19:4
**given (2)**
5:4;17:8
**giving (1)**
13:11
**glad (1)**
24:24
**goes (1)**
22:2
**Good (9)**
3:6,7,15,18,19,20;
4:3,8;13:17
**Gotshal (2)**
3:17;4:14
**grant (5)**
5:3;10:15;11:9;13:8;
21:10
**granted (1)**
8:3
**granting (1)**
5:8

**guess (2)**
15:21;16:5

**H**

**hand (1)**
24:19
**handle (1)**
15:4
**happen (7)**
7:23,24;8:23;9:4;
15:15;21:12
**happens (7)**
8:23;10:17;12:12;
13:4;19:2,17,19
**hard (1)**
25:11
**head (1)**
22:3
**hear (3)**
3:25;14:22;21:6
**heard (5)**
3:25;4:1;20:2,6,8
**hearing (14)**
13:23;15:20,23;
20:24;21:3,3,7,10,11,
12,14;22:1;24:8;26:17
**help (2)**
16:5;23:22
**helpful (1)**
21:20
**Here's (1)**
20:15
**Hey (1)**
13:7
**hits (1)**
18:17
**hoc (1)**
16:13
**holistic (1)**
16:10
**home (1)**
12:1
**Honor (28)**
3:6,11,15,20;4:3,17;
5:5;7:4;11:15,18;
13:17;14:11,24;15:19;
17:5,12;18:9;19:10;
20:12;21:5,15;24:5,18;
25:22;26:9,19;27:7,9
**Honorable (1)**
3:5
**Honor's (1)**
13:2
**hose (1)**
17:9
**huge (1)**
12:7
**hundred (2)**
7:8;9:13

**I**

**imagine (4)**
8:16;18:25;19:6,6
**immediately (1)**
8:3
**impediment (1)**
8:16
**important (2)**
6:4,6
**incomplete (2)**
4:23,24
**indication (1)**
9:12
**informally (2)**
23:25;24:3
**informed (1)**
22:23
**injury (1)**
11:7
**insurance (15)**
5:6;9:23,24,24;10:5,
7,19;11:9;16:7,13;
21:20,23;22:17;23:18;
24:3
**insurer (1)**
11:13
**interested (3)**
14:5;15:3;20:20
**interesting (1)**
20:16
**interfere (2)**
5:22;8:1
**into (6)**
6:23;7:10;9:22;
14:12;15:1,13
**introduce (1)**
3:12
**involve (1)**
9:18
**involved (4)**
17:9;21:17,18;26:15
**issue (7)**
4:20,23;5:6;16:7;
18:12,19;20:18

**J**

**Johnson (2)**
8:9;12:25
**join (1)**
17:5
**Judge (7)**
6:11;7:17,18;12:21;
14:17;21:22;24:13
**judges (1)**
24:21
**judgment (3)**
14:18,19,20
**judicial (1)**
11:19
**June (2)**
8:7;24:14
**jurisdiction (1)**
21:22

**K**

**keep (1)**
13:18
**Keller (1)**
3:16
**kept (1)**
16:21
**kidding (1)**
13:10
**kind (3)**
18:18;23:25;25:9
**knowledge (1)**
11:17
**KRELLER (9)**
4:3,4,7;17:1,5,12;
18:9;19:24,25

**L**

**Lapping (70)**
3:19,20,21,21;4:18;
5:5,12,15,17,20;6:3,5,
7,10,19;7:4,7,9,13,16,
20,23;8:1,7,11,14,24;
9:3,12,17;10:8,11,22,
25;11:2,11,14,17;
12:18;13:6,8,15;14:17,
22;16:6,20;18:23;
19:10,12,16,22;20:10,
12,15;21:5,15;22:20;
23:1,3,7,9;24:5,18;
25:22;26:6,19;27:1,3,4,
7
**largely (1)**
17:3
**last (1)**
22:15
**lawyer (1)**
9:5
**lawyers (4)**
8:18;25:10;26:14,14
**learned (1)**
7:1
**least (4)**
10:20;12:16;19:2;
23:18
**leave (1)**
10:4;24:14
**left (2)**
7:11;9:3
**lengthy (1)**
25:3
**less (1)**
18:12
**lesser (1)**
26:15
**liability (1)**
10:6
**likely (1)**
15:15
**limits (1)**

23:13
**line (2)**
14:19;18:2
**liquidate (1)**
14:16
**liquidated (1)**
14:20
**listening (1)**
4:1
**litigation (6)**
5:22;9:1,10;10:16;
21:18;23:5
**little (3)**
24:16;25:9,10
**LLP (1)**
3:21
**long (1)**
7:1
**look (4)**
6:20;10:18;11:3,13
**lose (1)**
24:10
**loses (1)**
14:18
**lot (5)**
9:20;10:23;18:20;
23:4;24:12
**loud (1)**
18:21
**love (1)**
16:21

**M**

**magically (1)**
12:7
**major (2)**
6:23;9:17
**makes (1)**
9:20
**making (1)**
21:24
**management (1)**
9:19
**managing (2)**
9:9,10
**many (1)**
18:17
**matter (2)**
3:8;10:15
**may (10)**
3:13;6:17,18;7:18;
10:1,4;17:14,15;19:10;
25:1
**maybe (10)**
6:1,3,16;12:11,13;
18:11;19:3;7;24:24;
25:4
**mean (18)**
6:17;7:21;11:3;
12:19;14:7,8,9;17:2,
25;18:6,21;19:5,6;
21:13,21;25:25;26:12,

24
**meantime (1)**
21:21
**merits (1)**
15:11
**metaphor (1)**
17:11
**middle (1)**
10:1
**might (3)**
11:17;16:19,20
**Milbank (1)**
4:4
**mill (1)**
11:6
**million (3)**
9:15;10:12,20
**mind (2)**
7:15,17
**minute (1)**
22:15
**mistaken (1)**
17:3
**monitoring (1)**
20:4
**Montali (1)**
3:5
**month (2)**
6:23;15:13
**months (2)**
12:8;23:24
**more (9)**
12:14;15:2,4;16:25;
17:10,21;18:15;22:7;
23:16
**morning (9)**
3:6,7,15,18,19,20;
4:3,8;13:17
**morning's (1)**
27:12
**most (1)**
12:23
**motion (28)**
3:25;4:20,21,23;5:2;
7:13;8:3;9:14;10:17;
11:25;12:17;13:8,24,
24;14:12,25;15:2;20:2;
21:4,9;22:3,8,8,13,23;
26:4,17;27:2
**motions (2)**
16:4;17:16
**move (1)**
12:6
**movement (1)**
15:9
**moving (1)**
10:18
**much (4)**
7:2;15:4;16:22;
23:16
**multiple (1)**
9:18
**myself (1)**

22:13

# N

**name (4)**
4:9,10,11;17:25
**nature (1)**
14:21
**necessarily (1)**
8:1
**need (8)**
16:10,10;18:12;20:3;
21:7;22:18,22,24
**needed (1)**
23:11
**needs (2)**
7:14;14:9;15:2
**negotiated (1)**
7:22
**Negotiating (2)**
13:5,15
**next (4)**
9:13;16:6;22:1;24:8
**ninety (1)**
12:2;13:11;16:22
**none (1)**
18:4
**noted (1)**
14:4
**number (6)**
3:23;8:20;9:16,18;
20:3;23:17
**Nunley (3)**
6:11;14:17;24:13

# O

**objections (1)**
11:21
**obligation (1)**
8:12
**obvious (2)**
16:3;23:8
**obviously (2)**
5:12;22:11
**off (1)**
27:11
**official (1)**
4:4
**often (2)**
7:23;19:19
**old (1)**
19:22
**one (17)**
5:6,14;6:22;7:10;
8:19;9:3,18;12:20;
16:9;9;18:4;20:16;
23:17;24:14,16;26:4,
12
**one-off (1)**
18:13
**only (9)**
3:24;8:8;9:16;11:4,

13;16:4;26:4,12,15
**oOo- (1)**
3:2
**open (1)**
6:22
**operate (1)**
5:1
**opportunity (1)**
18:20
**opposition (2)**
4:16;17:2
**order (8)**
3:3;15:1;22:10,11,
19,25;23:7,9
**ordinary-course (1)**
8:21
**organization (1)**
25:8
**organized (2)**
15:4;16:16
**original (1)**
16:22
**originally (1)**
25:25
**others (1)**
10:23
**out (12)**
6:10;7:6,21;10:2;
17:9;18:8,17,21;19:13,
17;20:25;27:3
**outage (1)**
19:21
**over (2)**
14:13;21:22
**overall (1)**
19:4

# P

**paid (1)**
14:23
**paper (1)**
4:10
**Parada (6)**
25:13,15,17,19,25;
26:2
**Pardon (1)**
7:3
**particularly (1)**
19:1
**particulars (1)**
17:24
**parties (4)**
6:25;14:5;15:3;
20:20
**party (1)**
10:18
**pause (1)**
18:10
**people (4)**
3:24;11:6;20:4;
24:12
**perceive (1)**

21:2
**perfect (1)**
16:9
**perfectly (1)**
13:22
**period (5)**
9:1;17:7;24:7,9;25:3
**periodically (1)**
5:25
**personal (1)**
11:7
**perspective (1)**
17:8
**persuaded (2)**
12:14;16:20
**Peter (1)**
3:16
**PG&E (12)**
3:8,17;9:8;10:12;
13:25;14:5;15:3;21:21;
23:11,17;24:1;25:13
**PG&E's (2)**
11:5;14:9
**Phoenix (1)**
28:18
**phone (3)**
3:24;20:1,8
**picture (1)**
25:7
**place (3)**
8:22;22:14;24:25
**plan (1)**
15:14
**planning (1)**
21:19
**plans (1)**
20:22
**plant (1)**
19:13
**play (1)**
18:7
**played (1)**
7:6
**please (1)**
4:11
**plus (1)**
5:7
**point (5)**
5:8,14;11:18;15:20;
21:17
**policies (1)**
16:13;21:23;22:17
**policy (2)**
23:12,20
**portion (1)**
10:6
**posed (1)**
20:16
**position (3)**
4:25;17:6,20
**possibility (1)**
7:21
**possible (2)**

17:17;24:9
**potentially (1)**
23:21
**power (1)**
19:21
**practitioner (1)**
22:12
**predict (1)**
18:7
**preliminary (4)**
21:3,6,6;26:17
**premature (1)**
13:23
**prepared (2)**
20:17,17
**preparing (2)**
9:4,5
**presented (1)**
27:8
**presenting (1)**
4:15
**preserve (1)**
12:23
**presiding (1)**
3:5
**pretend (1)**
15:22
**pretty (3)**
3:11;8:15;23:8
**principal (3)**
8:18;25:10;26:14
**prior (1)**
18:24
**priority (2)**
14:13,15
**probably (1)**
22:6
**problem (3)**
24:6;26:22,23
**procedure (1)**
22:14
**proceedings (2)**
27:13;28:5
**process (2)**
15:4;23:22
**processed (1)**
17:22
**produce (2)**
22:25;23:4
**produced (1)**
23:5
**producers (1)**
22:5
**productively (1)**
24:8
**progress (2)**
15:16;26:21
**proof (2)**
6:1,3
**propose (2)**
20:19;21:1
**protection (1)**
13:25

Case: 19-30088    Doc# 687    Filed: 02/27/19    Entered: 02/27/19 15:15:38    Page 32 of
34

**protective (3)**
22:11;23:7,9
**provide (1)**
23:14
**providers (1)**
22:5
**provisions (1)**
23:14
**pump (1)**
17:7
**put (2)**
21:16;26:16
**putting (4)**
12:10,11;25:24;26:1

**Q**

**queue (1)**
15:12
**quickly (1)**
8:23
**quite (1)**
22:22

**R**

**ramped (1)**
12:8
**ranking (1)**
14:7
**rather (2)**
5:2;24:2
**read (2)**
11:23;17:6
**reading (1)**
22:17
**ready (3)**
11:19;12:25;13:1
**real (1)**
11:18
**really (12)**
3:25;9:22;11:12;
12:22;13:8,10;14:9;
15:23;16:8;18:22;20:2;
22:17
**reason (3)**
15:15;24:15;26:7
**reasonable (1)**
15:8
**reasonably (1)**
8:25
**reasons (1)**
13:22
**received (1)**
9:25
**receiving (1)**
27:2
**recently (1)**
17:8
**recognize (2)**
16:18;17:25
**record (2)**
22:18;28:4

**redact (1)**
22:13
**redacted (1)**
22:8
**redaction (1)**
22:14
**referred (1)**
25:9
**refineries (1)**
19:17
**Refining (2)**
3:21;19:1
**regular (2)**
22:12;25:13
**relatively (1)**
18:11
**release (1)**
23:11
**relief (15)**
5:3,8;7:17;9:14;
10:15;14:5,25;15:5,5;
16:15;17:16;18:3;
21:10;22:3;26:1
**remark (1)**
20:12
**reorganization (1)**
12:7
**reply (1)**
7:16
**report (1)**
9:7
**reports (1)**
10:12
**request (1)**
16:8
**requests (4)**
15:5;16:15;17:18,22
**require (1)**
9:19
**resolution (2)**
6:12;7:22
**resolved (1)**
23:17
**response (4)**
4:20;20:7,9;23:17
**restructuring (1)**
14:3
**retention (1)**
10:11
**retirements (1)**
24:23
**review (1)**
21:23
**rhetorical (1)**
15:25
**Richard (1)**
3:20
**right (24)**
4:8,9,16;8:11;9:3,16;
10:1,21,25;11:3,14;
13:19;14:1,11;16:4,17;
17:3;18:9;19:15,23,24;
20:8;23:3;27:5

**rise (1)**
3:4
**risk (1)**
10:20
**road (1)**
24:16
**routine (4)**
8:15,17,21;26:13
**rule (3)**
7:1,5,21
**ruling (7)**
4:19;7:18;11:23;
12:3;13:20;14:4;26:20
**run-of-the- (1)**
11:5
**run-of-the-mill (1)**
10:17
**rushed (1)**
15:1

**S**

**Sacramento (3)**
6:11;12:20;24:10
**same (5)**
4:24;9:14;16:19;
17:3;21:13
**SAN (1)**
3:1
**sandwiched (1)**
10:1
**saying (5)**
6:18;12:5;14:8;18:6;
21:9
**schedule (1)**
20:25
**sealed (2)**
22:9;23:4
**sealing (5)**
4:20,21,23;5:2;22:10
**second (1)**
12:11
**Secondly (4)**
9:22;21:19;23:18;
24:8
**seeking (1)**
18:3
**seem (1)**
11:10
**seems (1)**
21:25
**self-insur (1)**
10:7
**send (1)**
12:15
**sense (1)**
9:20;18:20
**session (1)**
3:4
**set (6)**
9:4,19;11:22;13:22;
17:23;24:15
**seventy-five (1)**

9:15
**shape (1)**
21:19
**Shapiro (2)**
28:3,10
**Sharona (2)**
28:3,10
**short (3)**
8:25;16:25;24:9
**side (1)**
12:15
**signal (1)**
12:15
**significant (2)**
5:9;9:8
**simple (1)**
22:14
**simply (1)**
5:24
**sits (1)**
11:20
**situation (2)**
11:4,5
**six (1)**
21:11
**sixty (13)**
11:24;12:3,4,12,14;
14:15;8,15;16:18;
17:14;18:16;20:18;
25:5
**sixty-day (1)**
15:19
**sixty-five (1)**
10:12
**size (1)**
18:18
**slip-and-fall (1)**
11:7
**slow (2)**
21:24;23:11
**small (1)**
9:15
**smaller (1)**
9:16
**so-called (1)**
11:5
**solely (1)**
10:18
**somebody (3)**
5:14;9:9;21:17
**somehow (2)**
20:21;21:18
**somewhere (2)**
7:19;15:12
**soon (2)**
7:2;16:22
**sorry (3)**
4:9;19:14;25:5
**sort (4)**
6:25;9:19;17:23;
21:21
**speak (2)**
13:13;17:21

**specific (1)**
23:12
**specifics (2)**
9:23;22:4
**spelling (1)**
4:11
**spend (1)**
22:17
**spent (2)**
10:12,23
**spewing (1)**
19:16
**Stacy (1)**
28:3,14
**staff (1)**
26:14
**stage (1)**
14:3
**stages (1)**
7:9
**stand (1)**
14:19
**standpoint (3)**
9:20;12:24,25
**start (2)**
20:5;23:3
**started (2)**
3:13;17:10
**stated (1)**
23:18
**station (1)**
22:6
**status (1)**
23:21
**stay (10)**
5:9,24;10:15;12:14;
14:5;15:1;17:16;18:3;
22:3;24:24
**stays (1)**
26:1
**Steptoe (2)**
8:9;12:25
**Stewart (2)**
28:3,14
**stick (5)**
16:18;20:11;25:5;
26:7,13
**still (8)**
4:20,24;10:6;12:9;
14:3;22:16,16;25:5
**stopped (1)**
19:13
**story (1)**
14:19
**stove (1)**
12:11
**Street (1)**
28:17
**stuck (1)**
23:9
**stuff (2)**
9:6;26:5
**subject (2)**

19:20;23:20
**submission (1)**
  7:14
**submit (2)**
  5:23;23:10
**substance (1)**
  14:12
**substantiate (1)**
  21:17
**successful (1)**
  10:19
**suggest (4)**
  11:25;12:18;13:11;
  20:15
**suggesting (1)**
  13:2
**Suite (1)**
  28:17
**supported (2)**
  17:2;22:8
**supposed (1)**
  4:21
**sure (4)**
  8:13;10:8;12:6;
  15:24
**surprise (2)**
  18:3;20:10
**suspect (1)**
  18:13
**sympathetic (1)**
  19:1
**system (1)**
  17:23
**systematic (5)**
  15:4;16:11,16;17:19;
  18:12

**T**

**table (1)**
  19:7
**team (1)**
  9:9
**telling (1)**
  12:9
**ten (1)**
  10:20
**ten-million-dollar (1)**
  10:9
**tentative (12)**
  4:19,25;11:23;12:3;
  13:20;14:3;15:19;
  16:18;17:6;18:19;26:6,
  8
**term (1)**
  16:3
**terms (1)**
  17:21
**testing (1)**
  14:9
**theory (1)**
  9:15
**there'd (1)**

8:4
**there'll (3)**
  6:16;15:9,16
**thinking (3)**
  12:2;13:10;18:21
**thirdly (1)**
  23:21
**thirty (1)**
  13:16
**Thomas (1)**
  4:3
**though (3)**
  10:3,3;16:8
**thought (2)**
  18:19;22:12
**thousands (2)**
  15:11,14
**times (3)**
  7:8;11:10;19:22
**today (4)**
  3:9;15:13;21:10;
  26:4
**together (1)**
  6:25
**told (3)**
  7:3;24:13;25:2
**tomorrow (3)**
  8:20;16:4;26:4
**tort (2)**
  5:10;18:1
**toward (1)**
  20:23
**towards (2)**
  15:9,16
**traditional (1)**
  19:19
**Tran (25)**
  3:16,17;4:12,12,13,
  14,15,17;13:13,14,17,
  20,22;14:2,11,24;15:7,
  18;16:7,21;25:9;26:22,
  23;27:9,10
**transcript (1)**
  28:4
**treat (1)**
  15:10
**triage (5)**
  14:3;16:3,3;25:8,8
**trial (12)**
  7:10,10,24;8:7;9:5;
  10:16;12:19,23;24:10,
  12,15;25:2
**tried (1)**
  4:25
**Trodella (1)**
  3:21
**True (3)**
  7:25;10:6;28:4
**try (6)**
  6:11,15;12:13,25;
  13:17;14:17
**trying (9)**
  11:4;12:9,15;15:10,

21;16:5,14;24:10;
26:13
**TUESDAY (2)**
  3:1;25:22
**turned (1)**
  4:18
**twenty (1)**
  16:4
**two (3)**
  8:14;9:17;12:8
**two-week (2)**
  8:4,4
**two-year (1)**
  24:13
**types (2)**
  17:18,18

**U**

**unclear (1)**
  23:2
**under (4)**
  5:3;7:14;8:5;22:25
**unique (1)**
  14:14
**UNISON (1)**
  3:6
**universe (1)**
  17:17
**unlike (1)**
  18:24
**unsecured (2)**
  4:4;6:22
**unsympathetic (1)**
  25:6
**up (4)**
  12:8;17:23;19:4;
  24:22
**upon (1)**
  21:6
**use (2)**
  21:25;24:7
**used (2)**
  5:13;16:3

**V**

**vacancies (1)**
  24:23
**Valero (20)**
  3:21;9:1;10:5;11:4;
  12:9;13:24;14:12,18,
  19;15:10;17:25;18:1,5;
  19:5,7;20:21;22:4,5,6;
  25:16
**Valero's (5)**
  13:24;14:6,8,12;
  26:17
**value (1)**
  14:8
**various (1)**
  16:15
**victim (3)**

18:4;19:2,21
**victims (3)**
  9:14;18:3;19:7
**victims' (3)**
  18:24,25;19:3
**view (1)**
  6:24
**violate (1)**
  22:19

**W**

**wait (4)**
  7:3;14:9;21:7;25:12
**wants (3)**
  4:1;13:15;14:17
**waste (2)**
  5:2;6:15
**way (12)**
  12:5;14:4,22;15:10;
  16:16,25;17:21;21:19;
  24:7,16;25:1;27:8
**week (1)**
  13:25
**weekend (1)**
  12:2
**weeks (11)**
  8:14;13:3;20:19,23,
  25;21:11,11,11,25;
  23:24,24
**weigh-in (1)**
  17:1
**Weil (2)**
  3:16;4:14
**weren't (1)**
  4:24
**what's (6)**
  9:3;12:21;14:14;
  15:13;16:6;17:1
**Whereupon (1)**
  27:13
**who's (2)**
  4:1;7:21
**wildfire (1)**
  5:10
**wins (1)**
  14:19
**wish (1)**
  20:2
**wondering (1)**
  22:11
**word (1)**
  5:14
**words (1)**
  24:1
**work (1)**
  16:12
**worked (1)**
  23:14
**working (3)**
  12:1;19:3;25:11
**works (2)**
  26:9,10

**worry (1)**
  19:8
**worth (1)**
  12:3

**Y**

**year (2)**
  9:23;11:21

**1**

**11 (2)**
  6:23;13:25
**120 (1)**
  16:24
**16th (1)**
  28:17

**2**

**2017 (1)**
  23:20
**2019 (2)**
  3:1;28:20
**23rd (4)**
  25:23;26:6,9,17
**24th (2)**
  25:17,18
**26 (1)**
  3:1
**27 (1)**
  28:20

**4**

**4001 (1)**
  8:5

**7**

**7227 (1)**
  28:17

**8**

**85020 (1)**
  28:18

**9**

**9:30 (3)**
  25:19;26:11,17
**9:31 (1)**
  3:1