1    UNITED STATES BANKRUPTCY COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    -oOo-

4  In Re:                          ) Case No. 19-30088-DM
                                   ) Chapter 11
5  PG&E CORPORATION,               )
                                   ) San Francisco, California
6  -and-                           ) Wednesday, February 27, 2019
                                   ) 9:30 AM
7  PACIFIC GAS AND ELECTRIC        )
   COMPANY,                        ) MOTION OF DEBTORS PURSUANT TO
8                                  ) 11 U.S.C. SECTIONS 105(A),
                    Debtor.        ) 362(D), 363(B), 363(C), AND
9  _____  ) 364 AND FED. BANKR. P. 4001,
                                     6003, AND 6004 FOR INTERIM
10                                   AND FINAL ORDERS (I)
                                     AUTHORIZING THE DEBTORS TO
11                                   MAINTAIN INSURANCE POLICIES,
                                     WORKERS' COMPENSATION
12                                   PROGRAM, AND SURETY BOND
                                     PROGRAM AND PAY ALL
13                                   OBLIGATIONS WITH RESPECT
                                     THERETO; AND (II) GRANTING
14                                   RELIEF FROM THE AUTOMATIC
                                     STAY WITH RESPECT TO WORKERS'
15                                   COMPENSATION CLAIMS;

16                                   MOTION OF DEBTORS PURSUANT TO
                                     11 U.S.C. SECTIONS 105, 362,
17                                   363, AND 364 AND FED. R.
                                     BANKR. P. 6003 AND 6004 TO
18                                   (A) HONOR PREPETITION
                                     OBLIGATIONS TO NATURAL GAS
19                                   AND ELECTRICITY EXCHANGE
                                     OPERATORS, (B) GRANT
20                                   ADMINISTRATIVE EXPENSE CLAIMS
                                     AND AUTHORIZE POSTING OF
21                                   POSTPETITION COLLATERAL TO
                                     EXCHANGE OPERATORS,(C) MODIFY
22                                   THE AUTOMATIC STAY, AND (D)
                                     GRANT RELATED RELIEF;
23
                                     MOTION OF DEBTORS PURSUANT TO
24                                   11 U.S.C. SECTIONS 105(A),
                                     363(B), AND 503(B) AND FED.
25                                   R. BANKR. P. 6003 AND 6004

(973) 406-2250 | operations@escribers.net | www.escribers.net

1       (I) FOR INTERIM AND FINAL
        AUTHORITY TO PAY PREPETITION
2       OBLIGATIONS OWED TO SHIPPERS,
        WAREHOUSEMEN, AND OTHER LIEN
3       CLAIMANTS, AND (II) GRANTING
        ADMINISTRATIVE EXPENSE
4       PRIORITY STATUS FOR CLAIMS
        ARISING FROM GOODS DELIVERED
5       TO THE DEBTORS POSTPETITION;

6       MOTION OF DEBTORS PURSUANT TO
        11 U.S.C. SECTIONS 105, 363,
7       507(A), AND 541(D) AND FED.
        R. BANKR. P. 6003 AND 6004
8       FOR INTERIM AND FINAL
        AUTHORITY TO PAY CERTAIN
9       PREPETITION TAXES AND
        ASSESSMENTS AND GRANTING
10      RELATED RELIEF;

11      MOTION OF DEBTORS FOR ENTRY
        OF ORDER PURSUANT TO U.S.C.
12      SECTIONS 546(C) AND 105(A)
        AND FED. R. BANKR. P. 9019
13      ESTABLISHING AND IMPLEMENTING
        EXCLUSIVE AND GLOBAL
14      PROCEDURES FOR THE TREATMENT
        OF RECLAMATION CLAIMS;
15
        MOTION OF DEBTORS PURSUANT TO
16      11 U.S.C. SECTIONS 503(B)(9)
        AND 105(A) FOR ENTRY OF AN
17      ORDER ESTABLISHING PROCEDURES
        FOR THE ASSERTION,
18      RESOLUTION, AND SATISFACTION
        OF CLAIMS ASSERTED PURSUANT
19      TO 11 U.S.C. SECTION
        503(B)(9);
20
        MOTION OF DEBTORS PURSUANT TO
21      11 U.S.C. SECTIONS 331 AND
        105(A) AND FED. R. BANKR. P.
22      2016 FOR AUTHORITY TO
        ESTABLISH PROCEDURES FOR
23      INTERIM COMPENSATION AND
        REIMBURSEMENT OF EXPENSES OF
24      PROFESSIONALS.

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE DENNIS MONTALI
 2                 UNITED STATES BANKRUPTCY JUDGE

 3    APPEARANCES:
      For the Debtor:          STEPHEN KAROTKIN, ESQ.
 4                             MATTHEW GOREN, ESQ.
                               JESSICA LIOU, ESQ.
 5                             Weil, Gotshal & Manges LLP
                               767 Fifth Avenue
 6                             New York, NY 10153
                               (212)310-8000
 7
                               JANE KIM, ESQ.
 8                             KELLER & BENVENUTTI LLP
                               650 California Street
 9                             Suite 1900
                               San Francisco, CA 94108
10                             (415)364-6793

11    For the Fire Victims:    CHRISTOPHER HAWKINS, ESQ.
                               Sullivan Hill
12                             600 B Street, 17th Floor
                               San Diego, CA 92101
13                             (619)515-3218

14    For the Official         DENNIS DUNNE, ESQ.
      Creditors' Committee:    Milbank, Tweed, Hadley & McCloy
15                             LLP
                               2029 Century Park East
16                             33rd Floor
                               Los Angeles, CA 90067
17                             (424)386-4000

18    For the Ad Hoc Group:    MICHAEL S. STAMER, ESQ.
                               Akin Gump
19                             One Bryant Park
                               Bank of America Tower
20                             New York, NY 10036
                               (212)872-1025
21
      For the Office of the    TIMOTHY S. LAFFREDI, ESQ.
22    United States Trustee:   United States Department of
                               Justice
23                             Phillip J. Burton Federal Building
                               450 Golden Gate Avenue
24                             5th Floor Suite #05-0153
                               San Francisco, CA 94102
25                             (415)252-2080
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

Court Recorder:                    JANE GALVANI
                                   United States Bankruptcy
                                   Court
                                   450 Golden Gate Avenue
                                   16th Floor
                                   San Francisco, CA 94102

Transcriber:                       AMBER MINTON
                                   eScribers, LLC
                                   7227 N. 16th Street
                                   Suite #207
                                   Phoenix, AZ 85020
                                   (973)406-2250

Proceedings recorded by electronic sound recording;
transcript provided by transcription service.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1

2

3

4       (Call to order of the Court.)

5           THE CLERK:  All rise.  Court is now in session.  The

6   Honorable Dennis Montali presiding.

7           THE COURT:  We're being watched.  Good morning,

8   everyone.  Please be seated.

9           THE CLERK:  Matter of PG&E Corporation.

10          THE COURT:  Let me make a couple of preliminary

11  announcements.  I'm going to get near the microphone here.

12  Just a reminder from those of you -- for those of you may not

13  have been here at the prior hearing, we're using the center mic

14  on the center podium today, so when you are appearing or

15  speaking, please state your name and address or affiliation and

16  representation each time you appear.

17          Secondly, as we've just discovered in the overflow

18  courtroom, those of you who can hear me in the courtroom, we at

19  the moment aren't getting the audio feed back this way.  So I

20  am told by the staff that people observing in the overflow

21  courtroom can hear us but can't speak.  That's not a bad idea.

22  I might put everybody in the overflow.  But there is a little

23  more space here in this courtroom.  And if we come to the point

24  where anyone needs to or wants to be heard and is in the

25  overflow, we'll just take a break so that person or those

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   people can come over here.

2          Unless counsel for the debtor has a different opinion,

3   I'm going to suggest that, for this morning's calendar, we go

4   in sequence in accordance with the amended agenda the debtor

5   filed.  That covers twelve different items that are going to be

6   addressed.

7          I do have a couple of other preliminary matters.  A

8   reminder again, at the end of the day, we will upload on the

9   docket in the main case the audio file, not the official

10  transcript, but an audio file.  So anyone with a PACER account

11  can download that file.  If you want to get a formal

12  transcript, you have to go through the normal procedures.

13         On the items coming up for the next hearing -- the

14  next scheduled hearing at the moment is March 12th, and Mr.

15  Karotkin, this really is addressed to you and your team.  You

16  have put over on some various papers that relate to March 12th,

17  that replies are due at 12:30 p.m. on March 11th.  I like to

18  think I'm good, but I'm not that good.  I cannot function that

19  way.  That's just not enough time for me and my staff.  So I've

20  got a couple of alternatives.  You don't have to decide it this

21  morning.  You can talk about it before we're done today.

22         One, if we move the March 12th hearings to the 13th,

23  I'm willing to accommodate that early morning filing if it's 9

24  a.m. Pacific Time on Monday.  And then for the future, I'm just

25  going to have to insist on more time.  I can't -- I mean, the

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1  volume of stuff -- I guess I'd be willing to do it on short

2  notice if everybody would agree to three pages.  But I'm

3  averaging about 5,000 pages for every motion, and I have a bad

4  habit of wanting to read them all.

5         Now, the other thing is, I complained somewhat last

6  time.  I didn't intend a real complaint, but the media called

7  it, I'm fussing or scolding you, and I didn't mean to scold

8  you.  But as I prepared for today, I had -- more often I found,

9  again, my frustration, personally, with seeing more in an order

10  than is in the motion.  And I've been reflecting on that, and

11  whether -- am I being unreasonable?  And I think of it this

12  way -- and you can disagree with me or not.  In a regular

13  motion, if there's a motion to sell blackacre, it's not

14  uncommon to have a motion that says the debtor wants to sell

15  blackacre, and an order often says the debtor can sell

16  blackacre, the debtor can execute documents, the debtor can do

17  a number of other things that are consistent with it going

18  forward.  And to the extent that we have motions today or in

19  the future, I understand that details in an order are necessary

20  not only for those reasons, but secondly, you have active

21  committees, you have United States' Trustee.  And I would be

22  negligent if I complained and said I don't want anybody working

23  out adjustments.

24         But that being said, today's calendar perhaps as the

25  best example, a complicated motion, the NOL motion.  And so I

PG&E Corporation

1  reviewed the NOL motion again yesterday.  I found so much stuff

2  in the order that it was almost impossible to know, well, why

3  is all this stuff in the order if it's not in the motion?  And

4  I understand that there may be lots of reasons.  But that

5  doesn't solve my frustration with the notion that fundamental

6  pleadings is you don't get more in an order than you ask for in

7  a moving paper.

8       Now, this -- that's the way they do it in the civil

9  litigation world, and we're the bankruptcy.  And I don't mind

10  making a difference.  But I want you to be mindful to the fact

11  that, if I have a lot of information in a motion and the same

12  information and a lot more in the order, then the question is,

13  well, why did I bother reading the motion in the first place?

14  Why not we say all motions are just one page, saying I want the

15  relief that's in the proposed order?  I can't do it twice.  And

16  I also do encourage you and your colleagues and every other

17  party in this case to work out differences.

18       So I don't need anything today.  We'll deal with the

19  matters today that we'll deal with.  I'm simply giving you a

20  heads up that, for the future, if we move to not the first-day

21  calendars or the first-month calendars, but going forward,

22  there has to be more awareness of -- at least in the case where

23  there's a lot of information that needs to be disseminated to

24  everybody.  Again, the NOL motion is an example that perhaps is

25  atypical.  But there's a lot of information in that order that

1  I think the readers would need to know.  But it wouldn't be a

2  clue, necessarily, that's in the moving papers.

3         So you don't have to respond.  Just so you've got my

4  thoughts on it.  And I won't scold you; I promise.  At least

5  not for that.  I wasn't planning to scold you for anything

6  else.

7         So and the last thing I'll tell you is that my

8  courtroom deputy, Ms. Parada, will either make available to you

9  and Ms. Kim and others, or has already, proposed dates for

10  about the next six months.  And trying to stick with what we

11  talked about originally, that we're trying to block out

12  Tuesdays and Wednesdays for you a couple times a month there,

13  there are a couple of deviations from that in a couple of the

14  coming months.  And maybe you and your colleagues can review

15  those proposed dates, and either on the 1:30 calendar or at the

16  end of the regular calendar.  Or if you prefer, separately, you

17  can tell us and tell Ms. Parada what dates are preferable.  And

18  then, just understand that we had to do -- because of other

19  reasons, we had to put something on a -- possibly on a Monday

20  or on a Thursday.  But I'm trying to stick with that Tuesday,

21  Wednesday sequence, unless you can't -- unless you file replies

22  on Monday afternoons.

23         Okay.  So unless you want to do something, respond, or

24  make some general kind of comments, I'm willing to turn to the

25  calendar.  And if you're good for it, I'd like to go in the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    sequence that I said.  But I'll take them out of order if you

2    think it would be more efficient.

3              MR. KAROTKIN:  Okay.  Good morning, Your Honor.

4    Stephen Karotkin, Weil, Gotshal & Manges, for the debtors.  As

5    to your initial remarks, moving the hearing to March 13th is

6    fine for us if that --

7              THE COURT:  Well, it's a date available.  We've --

8    you've put out a bunch of stuff that says it's the 12th.  But

9    we'll consider it a done deal.

10             MR. KAROTKIN:  Okay.

11             THE COURT:  If we'll have the, what we'll call the

12   all-purpose omnibus calendar is -- the next one will be March

13   13th at 9:30.

14             MR. KAROTKIN:  It's our hope that most of the

15   adjourned motions will be resolved prior to that hearing, in

16   any event.  But that's fine with us to move it.

17             THE COURT:  Okay.  That's fine.  Thank you.

18             MR. KAROTKIN:  And I don't mind being scolded.  I get

19   scolded at home all the time.

20             THE COURT:  I'm not a scolder.  I don't get mad; I get

21   even.

22             MR. KAROTKIN:  I'll keep that in mind, sir.  Perhaps

23   it would be easier to go to the adjourned motions first?

24             THE COURT:  Oh, okay.  Well, I mean, I didn't think

25   there was any action on them unless we -- go ahead.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1          MR. KAROTKIN:  Okay.  I mean, the only thing, I would

2    just -- I think that's on page 7.

3          THE COURT:  On the agenda -- on the amended agenda,

4    right?

5          MR. KAROTKIN:  On the amended agenda, page 7.

6          THE COURT:  Yeah.  I mean, I said in a docket text

7    that I would entertain pending objections.  But then I thought

8    from the way it was worded on the notices that everything was

9    going to go over.

10          MR. KAROTKIN:  Yeah.  I think that's true.  I think

11    that I -- just, with respect to the item number 11, just to be

12    clear for the record, on the Operational Integrity Supplier's

13    motion, we are increasing the interim cap.

14          THE COURT:  Yes.  I picked that up.

15          MR. KAROTKIN:  Okay.  That's fine.

16          THE COURT:  And I assume that the committee -- either

17    official committee or the U.S. Trustee would scream if they had

18    a problem.  Otherwise, they accept it.  So it's just going

19    over.  But --

20          MR. KAROTKIN:  Yes.  Yes.

21          THE COURT:  -- that increase takes place even before

22    then, right?

23          MR. KAROTKIN:  The increase would take place today.

24    We would submit an order effecting that increase today.

25          THE COURT:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1        MR. KAROTKIN:  For the interim period.

2        THE COURT:  That's fine.

3        MR. KAROTKIN:  Just to be clear.

4        THE COURT:  Well, I'll just take a moment.

5        Does anyone wish to be heard on what Mr. Karotkin just

6    said about the cap being increased and the Operational

7    Integrity Supplier's motion?  Nothing.

8        Go ahead.  That's fine.  So that takes care of item

9    11.  And then pending responses from various parties, they're

10   reserved --

11       MR. KAROTKIN:  Yes, sir.

12       THE COURT:  -- or maybe you've gotten resolved.

13       MR. KAROTKIN:  All right.  So I think that takes care

14   of the adjourned motions.

15       So now, as you suggested, why don't we go just

16   straight through the agenda?

17       THE COURT:  Yeah.  That's fine.  That's very helpful.

18   And I do -- other than the fact that I get a new agenda every

19   fifteen minutes.  And Ms. Kim must be going crazy.  You better

20   give her a day off some day, because she's been doing a lot of

21   work on this.

22       MR. KAROTKIN:  I don't think that's up to me.  But --

23       THE COURT:  Okay.  That's fine.  So we'll take number

24   1, the insurance motion?

25       MR. KAROTKIN:  Sure.  So I think that going through

PG&E Corporation

1    these on the consensual matters, I think all of them have

2    been -- to the extent there were any issues raised, they've

3    been resolved.  The unsecured creditors --

4        THE COURT:  Well, I have a couple of questions on a

5    couple of them.

6        MR. KAROTKIN:  Sure.

7        THE COURT:  Yeah.

8        MR. KAROTKIN:  So on the insurance motion --

9        THE COURT:  No question.  So let's -- unless you want

10   to add anything on the insurance motion?

11       MR. KAROTKIN:  No, sir.

12       THE COURT:  All right.  Is there anyone in court or on

13   the phone who wishes to be heard on the debtor's motion to

14   maintain insurance?  That's, for today's purposes, agenda item

15   number 1.  Okay.  Thanks.  That's done.  That will be granted

16   and closed out as a completed matter.  And we're on a roll.

17       Number 2?

18       MR. KAROTKIN:  Number 2 is the exchange operator's

19   motion.  Again, there's nothing outstanding as far as the

20   company's concern.

21       THE COURT:  My only question was, in that one, there

22   was previously, I think, a question from BP Energy about

23   reservation of rights.  But there would seem to be some

24   clarification about protections they wanted to resolve or

25   continue.  It might be just nothing more than that.  But is

PG&E Corporation

1    that what it amounts to, or is there anything more to it?

2              MR. KAROTKIN:  Mr. Goren's going to address that.

3              THE COURT:  Okay.

4              MR. GOREN:  Good morning, Your Honor.  Matthew Goren,

5    from Weil, Gotshal & Manges, on behalf of the debtors.

6              THE COURT:  Good morning.

7              MR. GOREN:  Your Honor, it was a simple -- as you

8    noted, a simple reservation of rights with respect to BP.

9    We've been in conversations with them.  We've added this

10   language to clarify trading counterparties.  We're not aware of

11   any further objections with respect to the motion.

12             THE COURT:  Okay.  All right.  Then I will assume that

13   BP's satisfied, and I'll make the same statement.

14             Anyone in court or on the phone who wishes to be heard

15   on the debtor's motion, that we conveniently call the exchange

16   operator's motion?

17             All right.  Then that's fine.  That's approved.

18             MR. KAROTKIN:  The next item is number three, Your

19   Honor, the lien claimant's motion.  And again, it's our

20   understanding there are no outstanding objections.

21             THE COURT:  Well, again, I have in here, just a

22   clarification, because there were several objections

23   originally.  I think four of them that came from the first day.

24   And I assume that they either have been resolved, or -- well, I

25   guess they've been resolved or withdrawn, right?

PG&E Corporation

1          MR. KAROTKIN:  Yes, sir.

2          THE COURT:  Okay.  So I won't bother stating them.

3     There was some -- yeah, okay.

4          Same question.  Anyone on the phone or in the court

5     wish to be heard on the debtor's motion, which we conveniently

6     call the lien claimant's motion?

7          All right.  None.  That's fine.  That motion -- so

8     those three are now off the table.

9          MR. KAROTKIN:  Thank you, sir.  Number four was the

10    motion with respect to the payment of certain pre-petition

11    taxes and assessments.

12         THE COURT:  All right.  Same question.  Any -- I don't

13    think you had any objection to even coming forward on that one,

14    right?

15         MR. KAROTKIN:  No.  There was one entity that asked

16    for some clarifying language that we would be paying post-

17    petition taxes.  And I think we added something to the order to

18    make that clear.

19         THE COURT:  Yeah.  I didn't think that -- I didn't see

20    that on the agenda.

21         MR. KAROTKIN:  Right.

22         THE COURT:  I have no questions.  So that's -- anyone

23    in court or on the phone want to be heard on the motion by the

24    debtor's, that we conveniently call the taxes motion?

25         Okay.  Four in a row.

PG&E Corporation

1          Number five?

2          MR. KAROTKIN:  Reclination procedures.  There were no

3    objections filed as to that, as well.

4          THE COURT:  Yeah.  The reclamation motion and the

5    503(b)(9), I just -- I have a combination of a question and a

6    clarification.

7          So on the reclamation motion, it seems to me the time

8    has already run now --

9          MR. KAROTKIN:  Right.

10         THE COURT:  -- right, so that one of the items in the

11   motion is that there must be a demand within the time.  But the

12   statute time has run, hasn't it?

13         MR. KAROTKIN:  Yes, sir.

14         THE COURT:  Now, the question is the motion also says

15   anyone asserting a reclamation claim must submit a written

16   demand -- and fine, I think that's in the statute -- which

17   shall include supporting documentation.  I'm not sure that's in

18   the statute.  I mean, if someone just says, I demand to reclaim

19   my widgets, I think that's sufficient.

20         So I'm inclined to -- I mean, it's a nonissue if

21   everybody -- if all the reclamation actions have been accounted

22   for.  And maybe you don't know they have or -- don't expect you

23   to know the answer to all of them, but I'd prefer to take that

24   supporting documentation provision out.

25         MR. KAROTKIN:  We have no objection to that.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1          THE COURT:  Okay.  And then this is a clarification

2     here.  It says, unless the seller has already submitted a

3     reclamation claim within the prior time -- that's for the pre-

4     petition ones -- it must have been received within twenty days

5     after.  Okay.  That's what I stated is the law.

6          But then debtors will file a reclamation notice

7     listing the timely submitted claims.  All right.  So I assume

8     what that means is the debtors -- and this is principally, I

9     assume, the utility; again, I won't worry about which one it

10    is, but if they haven't done it by now, they will be filing a

11    document that says these are the reclamation notices --

12         MR. KAROTKIN:  Yes, sir.

13         THE COURT:  -- right?

14         MR. KAROTKIN:  Yes.

15         THE COURT:  You know if it's been done?

16         MR. KAROTKIN:  I don't think it's been done yet.

17         THE COURT:  Okay.

18         MR. KAROTKIN:  I think we were waiting for the -- for

19    Your Honor to consider the motion.

20         THE COURT:  Okay.  So then I'm reading from a summary,

21    not from your motion itself.  But what I have summarized down

22    here is that no later than twenty days after entry of the

23    order -- I'm sorry; I'm sorry; excuse me -- you filed that

24    statement, a party that wished to object must file and serve an

25    objection.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    Well, unless I'm mistaken, if the list includes a

2    hundred reclamation claimants and number 101 is not on the

3    list, then that party's got to object.  But that's really what

4    we're talking about, right?  Someone who is on the list doesn't

5    have to do anything.  We agree with that?

6    MR. GOREN:  Again, Matthew Goren for the debtors, Your

7    Honor.

8    THE COURT:  Yeah.

9    MR. GOREN:  The point of the list is once we -- the

10   debtors have received all the reclamation demands and reviewed

11   them, some of them, again, just because somebody has --

12   THE COURT:  Right.

13   MR. GOREN:  -- made a reclamation demand, perhaps it

14   includes --

15   THE COURT:  No, I understand that.

16   MR. GOREN:  -- things for services, the notice would

17   describe the debtor's proposed treatment of that reclamation --

18   THE COURT:  Well --

19   MR. GOREN:  -- demand.

20   THE COURT:  -- and which might even mean reject,

21   right?

22   MR. GOREN:  Exactly.  So --

23   THE COURT:  Okay.

24   MR. GOREN:  -- I think the objection point is if

25   somebody -- if a vendor disagrees with the proposed treatment,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    then they need to object to that.

2            THE COURT:  But what if the -- what if the vendor

3    isn't on the list?  It seems to me that vendor has a right to

4    say, wait a minute; I'm supposed to be on that list.  I mean,

5    it could be a factual issue.  Maybe the notice got lost.  Maybe

6    it's defective and it will get bounced.  I just want to make

7    sure we're clear as to what happened.

8            So is that consistent with --

9            MR. GOREN:  Your Honor, we could consider adding

10   language to that -- to that effect for that contingency.  But

11   generally speaking, every reclamation demand that the debtors

12   would have received should be addressed in that notice.  So --

13           THE COURT:  I think --

14           MR. GOREN:  Yeah.

15           THE COURT:  -- what I'm asking is a different

16   question.  What if the person who believes they've submitted

17   the demand isn't on the list?  Perhaps the demand has been

18   misplaced, or misaddressed, or lost, or some reason.

19           MR. GOREN:  We can add language to the --

20           THE COURT:  Someone who's not on that list who thinks

21   it should be on the list should have an opportunity to say,

22   wait a minute; put me on that list.

23           MR. GOREN:  We can add language to the order

24   clarifying that somebody who believes they've timely submitted

25   a reclamation demand but it's not noticed on or put on that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1  notice, that they can --

2         THE COURT:  Yeah.  I mean --

3         MR. GOREN:  -- go back to --

4         THE COURT:  -- yeah, I don't want --

5         MR. GOREN:  -- the debtor or the Court.

6         THE COURT:  Let's not beat this to death, but --

7         MR. GOREN:  Yeah.

8         THE COURT:  -- there may be a legitimate situation

9  where a claimant is improperly let off the -- let out of the

10 list or excluded from the list.

11        MR. GOREN:  Understood.  We can --

12        THE COURT:  Okay.  Let's just take --

13        MR. GOREN:  -- add something for --

14        THE COURT:  But okay --

15        MR. GOREN:  -- to account --

16        THE COURT:  So --

17        MR. GOREN:  -- for that contingency.

18        THE COURT:  So we're deleting the necessary -- I mean,

19 the language about including supporting documentation, only

20 because it's not in the statute.  And I didn't -- I had a

21 question, but I guess you're okay.  I mean, Prime Clerk is

22 going to be the debtor's agent for purposes of processing

23 these.  And then there'll just be a clarification as to what --

24 who's on that list.

25        Well, one more thing.  If I'm on -- if XYZ is on the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    list, and it says he sought a reclamation of a million dollars,

2    and, in fact, he sought a million, two -- a million, two -- or

3    two million dollars, then that's a time for the claimant to

4    object and say, you got the number wrong.  And then --

5              MR. GOREN:  Correct.  And that's --

6              THE COURT:  -- then we have a fact question.

7              MR. GOREN:  Exactly.

8              THE COURT:  Okay.  That's fine.  Thanks.  That's good.

9    I have no other question.

10             So anyone in the Court or on the phone want to be

11   heard on the debtor's reclamation procedure?

12             Okay.  Moving right along, that will be with

13   modification.

14             MR. KAROTKIN:  Yes, sir.

15             THE COURT:  And one second.  All right.  The next one

16   is the 503(b)(9) motion.

17             MR. KAROTKIN:  Yes.

18             THE COURT:  All right.  So this one has a procedure

19   that seemed a little bit unnecessary to me.

20             So as I understand it, both the law and your

21   procedure -- you want to let him come back up again?

22             UNIDENTIFIED SPEAKER:  Yeah.

23             THE COURT:  He's taking the heat.

24             UNIDENTIFIED SPEAKER:  Yeah.

25             THE COURT:  He's going to get scolded.  No, he's not.

(973) 406-2250 | operations@escribers.net | www.escribers.net

1          Mr. Goren, are you ready to answer my question?

2          MR. GOREN:  Just one moment, Your Honor.

3          THE COURT:  Okay.  So the claimant -- the 503(b)(9)

4    claimant files a form, like a proof of claim.  That's what --

5          MR. GOREN:  Correct.

6          THE COURT:  -- your own procedures say.  And then the

7    debtor has a period of time to object.  And that's fine, and

8    your proposal says seventy-five days.

9          But here's where I think there's something that's

10   unnecessary.  The vendor will then have twenty days to respond.

11   Well, the vendor has already said what his position is.  The

12   vendor has already said, I got a 503(b) notice.  The debtor

13   says, no, there's a challenge.  What's the response to do, but

14   say the same thing?

15         I would prefer it to say that if it's not be -- if the

16   debtor hasn't objected, everybody -- all the 503(b)(9)s are

17   deemed allowed, and if there's no agreement to resolve it, the

18   debtor can set the matter for hearing.

19         But I think you're just creating an unnecessary --

20         MR. GOREN:  I'm happy to --

21         THE COURT:  -- layer.

22         MR. GOREN:  -- take out -- I mean, we did --

23         THE COURT:  Well --

24         MR. GOREN:  -- it's almost the same as a contested

25   claims objection, where if there had been objection filed,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    somebody would have a chance to reply.  But I --

2                THE COURT:  But, see --

3                MR. GOREN:  -- I understand --

4                THE COURT:  But --

5                MR. GOREN:  -- Your Honor, that it --

6                THE COURT:  But that's not part of the --

7                MR. GOREN:  Yes.

8                THE COURT:  -- the culture here.

9                MR. GOREN:  Sure.

10               THE COURT:  You don't have -- you don't need a reply

11   because -- think about it.  Again, and I don't want to take

12   everyone's time on this, but the proof of claim or the proof of

13   503 is the prima facie assertion by the claimant.  So to make

14   the claimant respond by saying, I told you I had a claim; I'm

15   telling you again, dummy --

16               MR. GOREN:  We're happy to --

17               THE COURT:  Okay.

18               MR. GOREN:  -- remove that --

19               THE COURT:  Okay.  So that --

20               MR. GOREN:  -- extra step and that burden.

21               THE COURT:  Okay.  So and then -- so then the question

22   I have is this.  What is the deadline for asserting the claims?

23   Now, again, the reclamation rules are in the statute.

24           But I don't know that there is a deadline, is there,

25   for 503(b) assertion?

(973) 406-2250 | operations@escribers.net | www.escribers.net

MR. GOREN: Your Honor, there is no deadline under the Code. And what we're suggesting here is creating a deadline to allow these to be administratively done early --

THE COURT: No.

MR. GOREN: -- in the case.

THE COURT: I'm talking about asserting one. Now, I'm --

MR. GOREN: Yes.

THE COURT: -- back to the claimant, that I've got a 503(b)(9) claim, and I'm just sitting here minding my own business, and it's -- now it's February, and then it's March, and then it's April, and then it's May, and then it's June. And then I -- now I assert it. Is there no -- I'm not aware of any statute. And we don't have a claims deadline yet in this case. And I'm open to suggestion, because the debtors should have some closure on this. But I don't -- I don't know that there is one.

MR. GOREN: Your Honor, I mean, what we're proposing, again, in the procedures is that they would have fifty days after the petition date to file these 503(b)(9) claims.

THE COURT: Well, that's what I might've missed. So let me -- because I -- show me if I missed that.

MR. GOREN: So that is in paragraph 2(b) of the --

THE COURT: Of the proposed order?

MR. GOREN: -- proposed procedures in the order.

escribers (973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    THE COURT:  Yeah, of course it's in the order.  No

2  wonder I haven't found it.  Let's see.  All right.  In what

3  paragraph?

4    MR. GOREN:  2(b).  "So all proofs of 503(b)(9) claims

5  must be submitted to the debtor's proposed claims and noticing

6  agent, Prime Clerk LLC, so as to be received no later than the

7  fiftieth day after the petition date."

8    THE COURT:  Oh, okay.  Well, give me one second.  I'm

9  not finding that.  Which document is it in the tab?  I have my

10  program.  I'm sorry to be a little thick here, but I can't find

11  it in the book.  You know which one it is?  Six --

12    MR. GOREN:  The deadline, Your Honor?  Again, the

13  first sentence of --

14    THE COURT:  No.  I can't find -- no, in my great big

15  binder, I haven't found the motion itself, so -- because see

16  the -- in the sort of the binder, the numbers don't match the

17  agenda.

18    Okay.  So it's tab 12 in this great big binder that we

19  have.  Motion 503.  Okay.  So you said proposed order,

20  paragraph 2?

21    MR. GOREN:  It should be in the motion as well, but

22  it's paragraph B of the procedures, which begin "in the order"

23  at paragraph 2.

24    THE COURT:  Okay.  Sorry to take so long on this.

25    Fiftieth day after the petition date.  Okay.  All

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1  right.  But we're almost there or halfway there.  And so the

2  question is that's not statutory, so what -- why should I make

3  it so short, when the --

4        MR. GOREN:  Well --

5        THE COURT:  -- notion of proof of claim are obviously

6  different.  But 503(b)(9)s are kind of like proof of claims

7  that are given a slightly better treatment, right?

8        MR. GOREN:  Agreed, Your Honor.  And in plenty of

9  cases -- and we'd be happy to do it in this case as well if

10  Your Honor would request -- that is how -- exactly how they're

11  handled.  They're handled in accordance with the general bar

12  date.  The idea behind this procedure was to, again, give

13  vendors some assurances that they wouldn't have to be waiting

14  out there to the end of the case to find out if they had

15  allowed 503(b)(9) case.

16        THE COURT:  No, I --

17        MR. GOREN:  We're having to push out --

18        THE COURT:  No, I'm looking --

19        MR. GOREN:  -- that fiftieth --

20        THE COURT:  -- for the right -- sort of a practical --

21        MR. GOREN:  Yeah.

22        THE COURT:  -- solution because --

23        MR. GOREN:  Yeah.

24        THE COURT:  -- as I think I said to many people on the

25  first hearing we had, our rules and our tradition here is a

PG&E Corporation

1    very early claims bar date.

2            MR. GOREN:  Of course.

3            THE COURT:  But we departed from that in this case,

4    for good reason.  So we -- I mean --

5            MR. GOREN:  We're happy to make it the fiftieth day

6    after entry of this order, Your Honor, so people still have

7    time.  Again, this is mainly a procedure to give comfort to the

8    vendors and allow the company just to continue to operate and

9    do business (indiscernible).

10           THE COURT:  I certainly want the company to --

11           MR. GOREN:  Yeah.

12           THE COURT:  -- operate.  And I want timely claimants

13   to be dealt with.

14           All right.  I'll tell you what.  That seems like a

15   fair compromise in my mind, fifty days from the order or -- I

16   mean, fifty's one of those odd numbers.  Where did fifty come

17   from?  But I don't care.  I will take fifty.  And it's,

18   essentially, March and most of April, right?

19           MR. GOREN:  Correct.

20           THE COURT:  That's kind of the way it works?

21           MR. GOREN:  Yeah.

22           THE COURT:  All right.  So then with that change,

23   that's something that I think I might've overlooked in the

24   motion and wasn't in my little summary.  So I'm going to say

25   that's the change.  So fifty --

(973) 406-2250 | operations@escribers.net | www.escribers.net

1          MR. GOREN:  So we will submit a revised order that

2    makes that change to paragraph B and then removes the extra

3    step of the reply in paragraph B.

4          THE COURT:  All right.  Anyone in court or on the

5    phone want to be heard on the 503(b)(9) motion?  Okay, fine.

6          MR. GOREN:  Thank you, Your Honor.

7          THE COURT:  One second.  Okay.  That takes care of

8    that one.

9          Next on my list is the --

10          MR. KAROTKIN:  Interim compensation?

11          THE COURT:  -- interim compensation.

12          MR. KAROTKIN:  Again, this is simply procedural, Your

13    Honor, and there were no objections.

14          THE COURT:  This is the ultimate nitpick, and I'm

15    going to make it anyway.  The proposal, I believe, in paragraph

16    5(d) -- I think that's in the order -- says the deadline to

17    object is twenty days following service.  We tried to adjust

18    all of our local rules some years ago to be parallel to the

19    national rules.  And we've gone to a seven, fourteen, twenty-

20    one.

21          MR. KAROTKIN:  Sure.

22          THE COURT:  Make the twenty, twenty-one.  I'm adding

23    one more day for the professionals to wait to get paid.  And so

24    there was no -- I mean, there was no disagreement here with the

25    U.S. Trustee on those procedures, right?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1          MR. KAROTKIN:  Correct.

2          THE COURT:  All right.  Does anyone want to be heard

3    on the debtor's motion for interim compensation of

4    professionals, on the phone or in the court?

5          All right.  So there are none.  The only change, then,

6    is we're adding one more day to the objection deadline.  And

7    that'll be reflected on the proposed order.

8          MR. KAROTKIN:  Thank you.

9          THE COURT:  By my count, we now are -- we're ready to

10   pass the deferred ones to March 13th, and we go up to --

11         MR. KAROTKIN:  I think number 12.

12         THE COURT:  -- number 12, which is the employee

13   obligation?

14         MR. KAROTKIN:  Which is --

15         THE COURT:  Right?  Is that --

16         MR. KAROTKIN:  -- back to number --

17         THE COURT:  -- how you --

18         MR. KAROTKIN:  -- 12.

19         THE COURT:  Are you on that same -- you with me on

20   that?

21         MR. KAROTKIN:  Yes, sir.

22         THE COURT:  Okay.

23         MR. KAROTKIN:  Yes, page 12, number 12.

24         THE COURT:  Right.

25         MR. KAROTKIN:  With respect to the employee wage and

PG&E Corporation

1   benefit motion, we have resolved the issues with respect to A

2   and B.  I believe as to item B, the opposition of certain fire-

3   damage claimants, I believe that they've authorized us to say

4   that they've withdrawn their objection.

5           THE COURT:  All right.

6           MR. KAROTKIN:  And as to item A, we had discussions

7   with counsel for the union, and we have agreed that, with

8   respect to their assertion that we can't -- that the debtors

9   cannot unilaterally modify the 2018 stip as to those union

10  members, that we would defer that for another hearing, that

11  sole issue for another hearing.

12          THE COURT:  That's only on the 130 million dollar

13  bonus thing, or is it on the --

14          MR. KAROTKIN:  No, it's only on the 130 million --

15          THE COURT:  Yeah.

16          MR. KAROTKIN:  -- as it relates to the union.

17          THE COURT:  To that group, that --

18          MR. KAROTKIN:  Correct.

19          THE COURT:  -- finite group of people?

20          MR. KAROTKIN:  Yes, sir.  And as to the rest of the

21  motion, there are no objections.  So we would request that --

22          THE COURT:  Let me -- oh, I'm sorry.  You're --

23          MR. KAROTKIN:  We would request that that motion be

24  approved on a final basis, subject to deferring that issue.

25          THE COURT:  Okay.  Clarification.  When I saw this

(973) 406-2250 | operations@escribers.net | www.escribers.net

1   motion originally, of course, it was in there.  And then when I

2   saw the media and the press statements about the companies

3   voluntarily pulling back a portion of it, I didn't see anything

4   in our court docket that was consistent with that.

5        Did I miss something?  I don't know if --

6        MR. KAROTKIN:  I think we -- in our response that we

7   filed on Monday, I believe we indicated we were withdrawing

8   that portion of the motion.

9        THE COURT:  Okay.  That's probably true.  All right.

10  So I will take your representations, Mr. Karotkin, that the

11  fire-damage claimants are withdrawing their opposition.  And

12  I'll ask if -- I'll make sure on the record that everyone

13  agrees and that ESC Local 20's response is being deferred in

14  the sense that the so-called -- as to the members of that

15  union, there's a deferral to a later hearing date for the so-

16  called stip awards.

17       Now, does anyone in Court or on the phone want to be

18  heard in connection with that matter?

19       Yes, sir?

20       MR. HAWKINS:  Chris Hawkins of Sullivan Hill, Your

21  Honor, on behalf of approximately 3,500 of the fire victims.

22       We have withdrawn our objection, and we just wanted to

23  say we appreciate the debtor working with us on this sensitive

24  issue.

25       THE COURT:  Thank you, Mr. Hawkins.  Well, I glad you

PG&E Corporation

1    worked it out.  All right?

2            MR. HAWKINS:  Thank you.

3            THE COURT:  Anyone else?

4            Okay, Mr. Karotkin, that's fine.  Do you want to put

5    this over -- the referred -- reserved issue to that March 20 --

6    13th date or to a later date?

7            MR. KAROTKIN:  Why don't we move it to that date, and

8    we'll discuss with counsel.  If that's not convenient, we can

9    always move it to another date --

10           THE COURT:  Well, I mean --

11           MR. KAROTKIN:  -- so as a holding date, we could leave

12   it there.

13           THE COURT:  Sure.  But, I mean, you might want to

14   negotiate something or do --

15           MR. KAROTKIN:  Yes.

16           THE COURT:  -- whatever.  Okay.

17           MR. KAROTKIN:  Yes.

18           THE COURT:  So again --

19           MR. KAROTKIN:  But if we leave it there for a holding

20   date, and then we can talk with counsel.

21           THE COURT:  Now, is Ms. Rich here in court or on the

22   phone?

23           Ms. Rich, do you want to just confirm what Mr.

24   Karotkin said?

25           MS. RICH:  I'm on the phone, Your Honor.  And --

PG&E Corporation

1          MS. GRAY:  Hi.  I --

2          MS. RICH:  -- the March 13th sounds good to us.  Oh,

3    Ms. Gray is there --

4          MS. GRAY:  Also --

5          MS. RICH:  -- in the courtroom.

6          THE COURT:  Wait.  Let her finish with that.

7          Okay.  I got you, Ms. Rich.  All right.

8          You're counsel?

9          MS. GRAY:  Caitlin Gray, Weinberg Roger & Rosenfeld,

10   for ESC Local 20.

11         THE COURT:  And you're just --

12         MS. GRAY:  Yes, I can confirm --

13         THE COURT:  -- repeating what Ms. Rich said, right?

14         MS. GRAY:  Yes.

15         THE COURT:  You're just repeating what Ms. Rich said?

16   Okay.  Well, just go ahead and confirm it, if you want to.

17         MS. GRAY:  Yes.  I can confirm that we've agreed to

18   defer our objection to the failure to pay stip awards to the --

19         THE COURT:  It's for the --

20         MS. GRAY:  -- union.

21         THE COURT:  -- members of the union that you

22   represent, and there's just a reserve as to that, that you

23   obviously don't take a position on the company's withdrawal of

24   the portion of its bonus program that refers to other people.

25         MS. GRAY:  That's correct.

(973) 410-9100 | operations@escribers.net | www.escribers.net

PG&E Corporation

1       THE COURT:  Okay.  So all right, then.  We'll put that

2   on the March 13th 9:30 calendar.  And if you wish to continue

3   it later, you can do that.  That's not a problem.

4       And so I'll be doing an order, I guess, granting this

5   motion, except for that one piece, right?

6       MR. KAROTKIN:  Yeah, we'll submit a revised order to

7   reflect that.

8       THE COURT:  All right.  Anyone in court or on the

9   phone want to be heard on the balance of the debtor's motion?

10      Okay.  Figured that, thanks.

11      One second, Mr. Karotkin.

12      MR. KAROTKIN:  Sure.

13      THE COURT:  Okay.  Number 13?

14      MR. KAROTKIN:  Could I make a suggestion that we pass

15  number 13 for a minute and go to the utilities?

16      THE COURT:  For a couple of months, huh?

17      MR. KAROTKIN:  No, no, no.

18      THE COURT:  That's one of my favorite motions.  Yes,

19  okay.  We'll pass that.

20      MR. KAROTKIN:  The utilities motion has been resolved,

21  so I just wanted to address that one first.

22      THE COURT:  Okay, one second.  Let me -- okay.  That

23  was with U.S. TelePacific?

24      MR. KAROTKIN:  Yes.

25      THE COURT:  So that's withdrawn?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1          MR. KAROTKIN:  We have an agreement in principle with

2    them to resolve their objection, subject to documentation.  So

3    we would ask that -- there's really no reason to address that

4    today.  We'll --

5          THE COURT:  Okay.

6          MR. KAROTKIN:  We will submit an agreed order in the

7    next couple of days to resolve there.  Thank you.

8          THE COURT:  All right.  I have no questions or no

9    concerns with this one.

10          Is there anyone in court or on the phone wants to be

11    heard on the debtor's utility motion?

12          And is counsel for TelePacific on the phone or in

13    court?  Want to be heard?

14          Mr. Macdonald, is that yours?

15          UNIDENTIFIED SPEAKER:  Yes, Your Honor, he's in court.

16          MR. MACDONALD:  The motion has been resolved, subject

17    to resolution of the utilities motion because that determines

18    whether an order is going to be necessary.

19          THE COURT:  Okay, that's fine.  Then I approve it.

20    We'll take that one out of the way.

21          Now, Mr. Karotkin, we have three left.  You asked me

22    to pass on the NOL.  Number 15 is what we call the case

23    management, and there are a number of things in there that

24    really are more my and my staff kind of concerns with you, and

25    I don't want to take everyone else's --

PG&E Corporation

1          MR. KAROTKIN:  Sure.

2          THE COURT:  -- time.  And so if you want to deal with

3    the ordinary course professionals, I don't know every -- I

4    mean, if everyone wants to stick around while we talk about

5    some of the details, I'll be happy to do it, but maybe they

6    don't need to.  Right.  And then the NOL motion.  So --

7          MR. KAROTKIN:  Yes.

8          THE COURT:  So I'm going to suggest that number 15,

9    the case management procedures, go to the back --

10         MR. KAROTKIN:  Sure.

11         THE COURT:  -- of the bus.  So that leaves ordinary

12   course professionals --

13         MR. KAROTKIN:  And the NOL.

14         THE COURT:  -- and the NOL.  You decide which of those

15   you want to go with first.

16         MR. KAROTKIN:  Why don't we do the ordinary course

17   professionals --

18         THE COURT:  Okay.

19         MR. KAROTKIN:  -- and save the main event for last.

20         THE COURT:  Yeah.  All right.

21         Morning.

22         MS. LIOU:  Morning, Your Honor.

23         MR. GLASER:  Excuse me, Your Honor.  This is Barry

24   Glaser on behalf of Sonoma County Treasurer and Tax Collector.

25   What happened to number 10?

(973) 410-9130 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    THE COURT:  Number 10 is one that -- one of the

2    motions that's been deferred to March 13th.  That's the --

3    MR. GLASER:  March 13th at --

4    THE COURT:  That's what we call the cash --

5    MR. GLASER:  At what time, Your Honor?

6    THE COURT:  9:30.  Did you have an objection on that?

7    You did not, did you?

8    MR. GLASER:  No, I do not have an objection, but I

9    will discuss it with debtor's counsel to some questions that I

10   had.

11   THE COURT:  Yeah, okay.  That might've gotten lost in

12   the opening comments, but we had a discussion at the start of

13   the hearing that four motions were being deferred.  Mr.

14   Karotkin first said March 12th, and then we moved them over to

15   March 13th for reasons that I don't have to repeat.  And --

16   MR. GLASER:  Thank you.  Thank you, Your Honor.

17   THE COURT:  And just one other thing, cash management

18   and case management are two titles that are only one syllable

19   or one consonant different, but they're different.  There was

20   some confusion in my mind and between the cash management and

21   case management.

22   So now we're back to ordinary course professional.

23   Let me just make sure I get your appearance on the

24   record.

25   MS. LIOU:  So for the record, Jessica Liou from Weil,

1  Gotshal & Manges, here on behalf of the debtors.

2          The ordinary course professionals motion is docket

3  entry 350 and amended agenda item number 16.  The debtors have

4  been in several discussions with the United States Trustee's

5  office and filed an objection to this motion and is the only

6  party that has filed an objection to this motion.  And --

7          THE COURT:  And let me interrupt.  I have no

8  objections.  I just wanted to let the -- whatever the U.S.

9  Trustee's working on.

10          MS. LIOU:  Sure.

11          THE COURT:  I mean, I'm not overruling anything from

12  the U.S. Trustee.  I'm just not raising anything else.  Okay.

13          MS. LIOU:  Okay.

14          THE COURT:  So go ahead.

15          MS. LIOU:  That's great, Your Honor.  Well, I'd like

16  to just run through, very briefly, that I believe that some of

17  the concerns raised by the U.S. Trustee are resolved in a

18  revised proposed order that we've prepared and that we have

19  sent over to the U.S. Trustee's office for review yesterday.

20          And then the remaining issues that are not resolved, I

21  would like to address on the record.

22          THE COURT:  Well, why don't you state what's resolved

23  too, because that --

24          MS. LIOU:  Well, I believe they are resolved.  I

25  haven't yet received confirmation from the U.S. Trustee's


office, but they can confirm it if they're here.

THE COURT: Yeah, but if you would tell me so --

MS. LIOU: Sure. So they have raised issue with respect to provision in paragraph 2, little romanette viii, regarding the proposed order, that if an ordinary course professional exceeds the monthly cap, then the OCP will be required to file a notice and a fee application on account of the fees and expenses in excess of the OCP monthly cap.

They have requested that the application actually be brought for the entire month.

THE COURT: For the entire -- for the entire amount, right?

MS. LIOU: For the entire amount and for the --

THE COURT: Right.

MS. LIOU: -- entire monthly amount.

THE COURT: Right, right.

MS. LIOU: But we have revised that provision consistent with what we have typically seen done in OCP procedures, which is that the debt -- the OCP will prepare an application and submit an application for the entire amount, but the debtors will be authorized to pay amounts up to the monthly cap, but nothing over.

THE COURT: Okay. But let's just flesh it out. So if there's a OCP that seeks 100,000 dollars, but that the cap was -- for that entity was 80,000, the 80 can be paid, but the

escribers (973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   application will be for the total 100 --

2        MS. LIOU:  Correct.

3        THE COURT:  -- right?

4        MS. LIOU:  Correct.

5        THE COURT:  Okay.

6        MS. LIOU:  That's exactly right, Your Honor.

7        THE COURT:  And that's what the U.S. Trustee is

8   agreeable?

9        MS. LIOU:  Well, we believe this resolves the U.S.

10  Trustee's objection --

11       THE COURT:  Mr. Laffredi, are you --

12       MS. LIOU:  -- but I'll let them --

13       THE COURT:  -- are you --

14       MS. LIOU:  -- speak.

15       THE COURT:  -- appearing for the U.S. Trustee on that?

16  That resolved?

17       MR. LAFFREDI:  Thank you, Your Honor.  Tim Laffredi

18  for the U.S. Trustee.  Yes, that's correct, Your Honor.

19       THE COURT:  Okay.  All right.  So Ms. Liou, what -- is

20  there another one?

21       MS. LIOU:  And next --

22       THE COURT:  That sounds fine to me.  I think that

23  sounds good.

24       MS. LIOU:  The U.S. Trustee has requested that OCPs

25  disclose whether or not they are receiving payment from third-

1    party sources, other than the debtors.  We have agreed to

2    revise the OCP declaration to make that clear.  It is now a

3    question on the declaration for the particular professional to

4    disclose.  So I believe that also --

5              THE COURT:  Yeah.  You know what?

6              MS. LIOU:  -- resolves --

7              THE COURT:  Mr. Laffredi, you don't have to keep

8    popping up.  Let's see what --

9              MR. LAFFREDI:  I'll stay here, Your Honor.  That is

10   correct, Your Honor, that --

11             THE COURT:  Okay.

12             MR. LAFFREDI:  -- that addresses our concern.

13             THE COURT:  All right.  That's fine.

14             You got another one resolved?

15             MS. LIOU:  Yeah.  Well, I hope so.  So there was some

16   question raised as to a particular OCP listed on our list,

17   Eversheds Sutherland.  And the U.S. Trustee had raised that if

18   Eversheds Sutherland is an accounting firm providing accounting

19   services, they should be separately retained.  We've clarified

20   that they're actually a law firm providing tax advisory

21   services related to the Jobs Act of 2017, tax cuts, and other

22   related regulatory tax matters.  So we believe it is

23   appropriate to keep them on the OCP list.

24             THE COURT:  Any problem with that?

25             MR. LAFFREDI:  Thank you, Your Honor.  The additional

1    disclosure resolves our concerns.

2            THE COURT:  Okay, that's fine.

3            MS. LIOU:  Okay.

4            THE COURT:  Got that taken care of.  What's left?

5            MS. LIOU:  So I believe the remaining issues that are

6    contested really relate to the OCP cap itself.  The debtors

7    have proposed the 100K cap because we believe that it is

8    appropriate for a case of this size and a company of this size

9    that has many pending matters, litigation or otherwise, for

10   which it will be requiring OCP services.  And we believe that

11   that cap is very reasonable without unduly burdening many of

12   the OCPs who are smaller firms from having to file fee

13   applications or retention applications.

14           The U.S. Trustee, obviously, has proposed a much

15   smaller cap, something that is probably more typical.  But this

16   case is not typical.  And so the debtors request that the Court

17   approve the cap that we have proposed.

18           THE COURT:  So again, I don't want to go back to --

19   instead of the summary that I'm looking at, let me look at the

20   actual motion.  Just my cheat sheet to keep track of

21   everything.  One second.

22           Okay.  So I'm looking at the motion, and that's where

23   I -- sorry.  I was a little unclear because I've tried to

24   summarize some of these lengthy motions and I can't keep track

25   of each and every item.

PG&E Corporation

1          So the aggregate cap is for a professional that's a

2   million dollars.  But the -- what paragraph -- I'm not

3   seeing --

4          MS. LIOU:  So Your Honor --

5          THE COURT:  -- the lower paragraph.

6          MS. LIOU:  -- if you have the proposed order in front

7   of you --

8          THE COURT:  No, I'm look -- I made the mistake of

9   looking at the motion.

10         MS. LIOU:  Okay.  Well, I don't have the motion in

11  front of me, but they should look substantially similar, the

12  procedure's laid out in the motion --

13         THE COURT:  Yeah.

14         MS. LIOU:  -- and the order.  But if you look in the

15  procedures section, in paragraph 6, that lays out the monthly

16  cap applicable to each ordinary course professional of 100,000

17  dollars per month.

18         THE COURT:  Okay.  So Mr. Laffredi, what are you

19  suggesting?  I mean, is this just one of these numbers -- you

20  want a lower number just because it feels better?

21         MR. LAFFREDI:  Well, Your Honor, the concern was that

22  there would be too many fees (break in audio) amounts without

23  sufficient oversight.  So the U.S. Trustee recommended fifty

24  percent of what was being proposed by the debtor.  So 50,000

25  per month and then 500,000 dollars per --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    THE COURT:  Let's just pick one large billing regular

2  professional.  The professional -- if there's a 50,000 cap, but

3  that professional typically is billing 80,000 dollars, there's

4  just an extra effort to have to review it.  It's -- the same

5  analysis occurs, it's just a question of how many times you

6  have to slice and dice it, right?

7    MR. LAFFREDI:  Right, well --

8    THE COURT:  So it seems almost -- I mean, I realize

9  that you'd like to keep the numbers smaller, but it seems like

10 an invitation for more effort on your part and perhaps my part

11 and perhaps the debtor and perhaps the professional.  And

12 again, there's nothing wrong with that in theory, but in

13 practice, it seems like it's not effective.  So tell me, other

14 than it just feels better, why --

15   MR. LAFFREDI:  Well, it would also --

16   THE COURT:  -- is it better?

17   MR. LAFFREDI:  It would also provide, not just for our

18 office and the Court and the committees, but also other

19 creditors who may want to review the application that's been

20 filed.

21   THE COURT:  Yeah, but what I'm getting at is they have

22 the right.  Anybody who wants to challenge it -- you, I, third

23 parties -- can challenge all the money.  And all we're really

24 talking about is the increments.

25   I'll tell you what.  This is not rocket science, but

PG&E Corporation

1    I'll stick with the default number of 100,000.  So that piece

2    of your objection will be overruled.

3              MR. LAFFREDI:  Thank you, Your Honor.

4              THE COURT:  But is there still an issue about

5    disclosure of disinterested parties?  I mean, did I -- didn't

6    the U.S. Trustee want --

7              MS. LIOU:  Yes, that's --

8              THE COURT:  -- to deal with --

9              MS. LIOU:  It's a separate issue, which I can address

10   in a minute.

11             THE COURT:  Yeah.  Okay.

12             MS. LIOU:  I just want to clarify.  So there is the

13   monthly cap of 100K per month, and then there is the annual

14   cap -- the twelve-month cap -- of one million.

15             THE COURT:  Oh, a million.

16             MS. LIOU:  So I just wanted to make sure that Your

17   Honor's ruling also applies to sticking with the one million

18   annual cap as well.

19             THE COURT:  Well, if you -- if some professional

20   decides he wants a 100,000 a month for twelve months, he's

21   going to be over the cap --

22             MS. LIOU:  Yes.

23             THE COURT:  -- of a million.

24             MS. LIOU:  That's correct.  That's correct.

25             THE COURT:  It's like --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1          MS. LIOU:  We don't anticipate every single

2     professional on this list will hit that 100K cap.  That's not

3     our expectations, but yes.

4          THE COURT:  You sure?

5          MS. LIOU:  That's right, Your Honor.

6          THE COURT:  You promise?

7          MS. LIOU:  I'll do my best to keep them in line.

8          THE COURT:  We have an ATM machine installed outside

9     the courtroom now, you know.

10         MS. LIOU:  Yes.  So moving on to the issue that you

11    identified, Your Honor.  I think that relates to what I believe

12    is the next open issue, which is the U.S. Trustee has requested

13    that every OCP waive any pre-petition claim that they have.

14    And here it's the debtor's position that that's not necessary

15    at all.  Not only is it completely atypical, but these OCPs are

16    being retained pursuant to Section 327(e), which doesn't have

17    disinterestedness as a requirement for retention.

18         THE COURT:  Well, that's really a broader question,

19    because whether you have -- if you had two professionals and

20    one of them was owed pre-petition 10,000 dollars and one

21    wasn't, the question is, does either of them qualify as a

22    retained professional, not does one have to waive a fee.

23    Because if you are disinterested and you want to stay in and

24    you're the 100,000 -- the 10,000-dollar creditor, you have to

25    waive it, but you still might be -- you still may have a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    disinterested quality.

2            And it seems to me that's the point, that, as I

3    understand the law, it doesn't apply to your firm as general

4    counsel, doesn't apply to the committee's counsel.  It applies

5    to those kinds of professionals that would have been

6    employed, and you and I never would have known about it if

7    there hadn't been a bankruptcy; isn't that right?  And so PG&E

8    and the parent, if they were not in bankruptcy, they would be

9    hiring lawyers and professionals and accountants in the

10   ordinary course of business.

11           MS. LIOU:  Right.

12           THE COURT:  Doesn't matter whether it's collection or

13   eviction or eminent domain or FERC or pick a thousand

14   different -- tort defense; all this run-of-the-mill stuff that

15   was there whether or not there'd been a bankruptcy, agreed?  Is

16   that not the concept?

17           MS. LIOU:  Yes.  That's the concept of the OCP

18   retention procedures.  I'm not sure I follow --

19           THE COURT:  But isn't that the concept that says they

20   don't have to be disinterested as long as --

21           MS. LIOU:  No, that's correct.  Absolutely.

22           THE COURT:  As long as they --

23           MS. LIOU:  Yes.

24           THE COURT:  -- are not -- they are not representing an

25   interest that's adverse.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1      MS. LIOU:  Correct.

2      THE COURT:  Okay.  So --

3      MS. LIOU:  That's exactly -- we completely agree with

4 Your Honor.

5      THE COURT:  So Mr. Laffredi, I guess the question for

6 you is, we've got to have a stipulation in this case that this

7 case is not typical.  But in a typical case, if a trustee or a

8 DIP hires general counsel, we know the rules.  If the debtor or

9 the trustee hires collection counsel or eminent domain counsel

10 or all the other specialists, we don't have a disinterested

11 requirement.  So why should we have one now?

12      MR. LAFFREDI:  Well, Your Honor, to the extent that

13 any professional would be employed under 327(e), obviously that

14 wouldn't be an issue.

15      THE COURT:  But isn't that what we're talking about

16 here?

17      MR. LAFFREDI:  Well, to the -- our concern is that to

18 the extent that an employee -- a professional would be employed

19 under 327(a), which does include the disinterestedness

20 requirement.

21      THE COURT:  Well, it does, yes.

22      MR. LAFFREDI:  That's where we have a problem.

23      THE COURT:  And we're using -- we're using the Weil

24 Gotshal firm as the test case here.  It's a prominent firm,

25 happens to reside primarily out of our district, but they're

(973) 406-2250 | operations@escribers.net | www.escribers.net

1    welcome here.  But they're here because the debtors needed them

2    to file a bankruptcy.  Now, they may have hired the firm for

3    other reasons unrelated to that, and they don't get this kind

4    of treatment.  They are subject, as are many of the others, to

5    the strict rules of 327(a).  But why would I impose upon all

6    those other professionals in this case the kind of restrictions

7    that are not imposed in the ordinary kind of case?

8         MR. LAFFREDI:  The restrictions that are imposed for

9    the purpose of preventing adverse interest problems, conflicts

10   of interest, those -- we do think those should apply in this

11   case.

12        THE COURT:  And those -- nobody's waiving that, right?

13        MR. LAFFREDI:  Right.  And the other issue with

14   disclosure is that we think whether or not there's a claim,

15   whether or not there's a conflict, whether or not there's an

16   adverse interest, that should be disclosed in any event.

17        THE COURT:  But the statute -- Congress, in its

18   wisdom, decided that if you're owned one dollar pre-petition,

19   you are not disinterested.

20        MR. LAFFREDI:  Right.

21        THE COURT:  But it doesn't mean you have a conflict.

22        MR. LAFFREDI:  Right.

23        THE COURT:  And if you aren't owed anything but you're

24   working against the debtor's interest, you do have a conflict.

25   So there are two different sets --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1          MR. LAFFREDI:  Right.

2          THE COURT:  -- of rules here.  So Ms. Liou isn't

3    arguing that any of the OCPs have a free get of jail --

4          MR. LAFFREDI:  Right.

5          THE COURT:  -- free card for conflicts.

6          MR. LAFFREDI:  Right.

7          THE COURT:  Right?

8          MR. LAFFREDI:  Right.

9          THE COURT:  And if any one of them works adverse to

10   their client in this case, they got some consequences.

11         MR. LAFFREDI:  Right.

12         THE COURT:  So I guess I don't understand what it is

13   you believe is the reason that ought to -- I ought to say,

14   well, you'll have to waive your fees and you'll have to be

15   disinterested --

16         MR. LAFFREDI:  Well, it --

17         THE COURT:  -- when you don't have to be.

18         MR. LAFFREDI:  The main concern that we have is the

19   disclosure of any of these issues, whether it's right now or

20   further down the case, in the event that there's a problem --

21         THE COURT:  But disclosure and waiver are not the

22   same.

23         MR. LAFFREDI:  Right.  True.

24         THE COURT:  And so if special counsel -- let's take a

25   large special counsel with -- one of the heavy-duty ones.  If

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   the person says, yes, I'm owed money pre-petition, fine.

2           MS. LIOU:  Which, by the way, is a required

3   disclosure --

4           THE COURT:  Yeah.  Right.

5           MS. LIOU:  -- in the affidavits.

6           THE COURT:  So I mean, it's probably a -- prior -- I

7   mean, prior required disclosure just in the attorney-client

8   relationship.  It may not apply to some other professionals,

9   but a lawyer sure has to tell the client to be -- by the way,

10  you owe me money.

11          MR. LAFFREDI:  Right.

12          THE COURT:  But doesn't mean you have to waive it, so

13  I guess because these rules are designed to fit all cases, I

14  don't see why I should depart from it, and particularly, if the

15  debtor's response -- correctly so -- is just get the disclosure

16  out there.

17          MR. LAFFREDI:  And if that's the Court's inclination,

18  then that's my -- our main concern was with disclosure and --

19          THE COURT:  I'm not going to lecture professionals who

20  are professionals that they have to disclose things correctly

21  and they can't work adverse to their clients --

22          MR. LAFFREDI:  Right.

23          THE COURT:  -- under the normal rules that apply.  And

24  they're no different for bankruptcy.

25          Okay.  Well, then to the extent that the U.S. Trustee

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    has adhered to an objection, I'll overrule those.  I think --

2    excuse me.  I think the solution -- I mean, Ms. Liou, you've

3    explained, and the proposed procedures do lay out the -- what

4    the ground rules are for the professionals.

5              MR. LAFFREDI:  Thank you, Your Honor.

6              THE COURT:  Now, again, does anyone in court or on the

7    phone want to be heard on the ordinary course motion, other

8    than what we've just discussed here with counsel?

9              All right.  Then I -- Ms. Liou, why don't you make

10   sure that Mr. Laffredi signs off on the form of order.  You

11   probably have already -- oh, you said you've already -- that's

12   already in the pipeline, but I'll assume --

13             MS. LIOU:  Yes.

14             THE COURT:  -- that his comments on the record are

15   part -- that's the deal, and we'll proceed.

16             MS. LIOU:  Excellent.  All right.

17             THE COURT:  Okay.

18             MS. LIOU:  Thank you very much, Your Honor.

19             THE COURT:  So I realize I had one other kind of

20   general question, but this is for the committee.  So is Mr.

21   Dunne or Mr. Bray or -- who's here for the committee?  Just --

22   I just have a question.

23             MR. DUNNE:  Yes.  Yeah.

24             THE COURT:  So you filed a statement on reservation of

25   rights regarding all the motions, but I didn't see a position

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   on the case management motion, which is fine.  You don't need

2   one, but was that an oversight or --

3            MR. DUNNE:  We're fine with the case management --

4            THE COURT:  Okay.

5            MR. DUNNE:  -- in the order, Your Honor.

6            THE COURT:  Okay.

7            MR. DUNNE:  And for the record, Dennis Dunne from

8   Milbank.

9            THE COURT:  Okay.  Thanks, Mr. Dunne.  All right.  So

10  Mr. Karotkin, are you -- we're down to two.

11           MR. KAROTKIN:  Yes.

12           THE COURT:  I'm telling you, we've gotten -- in one

13  hour, we've knocked off all the big ones.  Now we just have the

14  little ones left over, right?

15           MR. KAROTKIN:  Yes.  So --

16           THE COURT:  Yeah, right.

17           MR. KAROTKIN:  Again, Stephen Karotkin, Weil, Gotshal

18  for the debtors.  I think we'll hold the case management to the

19  end so people don't have to stick around if they don't want to.

20           THE COURT:  So you mean, they're all going to stay

21  here for the NOL motion?

22           MR. KAROTKIN:  That's up to them.

23           THE COURT:  I have to tell you, this is -- and I'm not

24  fussing about my comment on the form of the order because I've

25  already fussed at you about that, but at 7:11 p.m. on Monday, I

PG&E Corporation

1    got the reply.  And it's tough going.  I mean, I'm not a tax

2    lawyer or never was one, never hoped to be one.  And the motion

3    and the reply was very informative, but there's a lot to

4    digest.  And the thought of acting on it today is -- it's a

5    little bit terrifying to know the right thing.

6           So I guess I'm -- what I was really asking is what the

7    debtor wants and the committee think is the right way to

8    address it.  You want to take a minute?  I'll -- I'm not

9    suggesting that I need a continuance.  The question is, how am

10   I supposed to go about deciding this.  Do I hear argument?  Do

11   I get -- do I have a mini hearing on these rules?  I'm up to

12   hear your views.

13          Mr. Dunne, if you know -- and if you guys have worked

14   it out, fine.

15          MR. DUNNE:  I would propose, Your Honor, that we'd

16   adjourn it to the 12th or 13th when we're back in front of you

17   again, and to the extent that you need an order on the equity

18   side today, that's fine as well.  Yeah.

19          THE COURT:  Yeah.  I have no problem -- well, I'll do

20   my usual, does anybody else want to be heard.  But let me make

21   sure you're clear on this thing.  I mean, this is tough stuff.

22   Maybe it isn't for the tax gurus.  But it's also a big-ticket

23   question, and so I don't want to make the wrong decision.  And

24   it's easy to say, well, I just grant it and overrule the

25   committee or sustain the committee; we wait.  But what I need

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    both of you to tell me is how -- each of you would like to

2    prevail.  How do you want me to go about doing it?  Do we have

3    just further oral argument?  Do we get tax experts to come in?

4    I -- maybe both of you are knowledgeable on these, but if

5    you -- welcome to the club.

6              MR. KAROTKIN:  I don't --

7              THE COURT:  What -- how do you think you would want --

8    well, of course, you'd want me to overrule their objection.

9    But help me know what's the best thing to do on how to decide

10   this?  Not -- and so the date isn't important; it's what do we

11   do in order to help me make that decision.  What do you think?

12             MR. KAROTKIN:  I don't think there's need for evidence

13   on this.  I think -- I don't want to say it's relatively

14   straightforward, but it's relatively straightforward.  I think

15   the issue is a 382(l)(5) plan, too speculative --

16             THE COURT:  Yeah.  No, I know.

17             MR. KAROTKIN:  -- to grant relief today, even though

18   we're really talking about prophylactic relief.

19             THE COURT:  Well, yes, I understand that, and again,

20   you gentlemen did a good job laying it out, but that's my

21   problem.  And so -- you did even cite a case that I authored.

22   That's good enough for me, right?  Especially since the --

23             MR. DUNNE:  We're happy to have you rule right now,

24   Your Honor.

25             THE COURT:  Especially since my decision was affirmed

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    on appeal.  But my point is this.  The committee says don't

2    chill claims trading; the debtor says, we got to close this

3    loop even though it may never come to be.  And I really don't

4    know how to learn from the experts how I should analyze that.

5    So you're right; I guess I don't want an evidentiary hearing.

6    But do I get tax partners from your firms to make the argument?

7    Do you, as lawyers, make the argument?  I mean, I'm open to

8    most anything you think is constructive.

9            MR. DUNNE:  To the extent, Your Honor, you want to

10   discuss the tax aspects of it, two things.  A, it's not a

11   dispute between Weil and Milbank.  We kind of know what those

12   rules are.  But if it's helpful to you to have that presented

13   in any form that is best, whether that's having one of our tax

14   lawyers walk through it in court or have an affidavit or

15   declaration submitted before the 13th, whatever the Court needs

16   to help with that.  But there's not a dispute on what the tax

17   law is.

18           THE COURT:  No, I understand.

19           MR. KAROTKIN:  I think, Your Honor, the issue really

20   is, is there a chill -- would implementing this today prejudice

21   people who want to trade claims?  I think that's the

22   fundamental issue.  Okay?

23           THE COURT:  Well, but your colleague says it might.

24   And so you're advocating that we do it.  So what I'm hearing

25   from you is that you want me to do something that might chill

PG&E Corporation

1  claims trade.

2         MR. KAROTKIN:  No, no.  I don't -- because I don't

3  think there is a chill at all.

4         THE COURT:  Okay.

5         MR. KAROTKIN:  I think this is a sophisticated market.

6  The claims traders know what's going on.  They're the ones who

7  say, Your Honor, that there's not going to be a 382(l)(5) plan,

8  that is totally speculative.  If that's the case, then these

9  are sophisticated traders.  It's not going to chill the market.

10 Everyone will understand that.

11        If, on the other hand, Your Honor, there is going to

12 be a 382(l)(5) plan, then that fundamentally says you should

13 grant the relief now.  And they really can't contest that.

14        MR. DUNNE:  Your Honor, now we're getting to argument.

15 But --

16        THE COURT:  But that's all right.  That's all right.

17 No, you are.  You are.  But keep in mind that this brain

18 thirty-six hours ago read a long brief that, again, I do know

19 the basic concepts.  I mean, when you file a brief that has

20 twenty-seven cites of decisions all made from Delaware and New

21 York in the last six weeks, what do I know?  But I'm in

22 California and we don't have these things every day.

23        So I need to know -- so Mr. Dunne what do you think I

24 need to do to sustain your view?

25        MR. DUNNE:  Our position, Your Honor, is that it's not

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    urgent today for you to enter it with respect to the claim.

2    Why?  This is different than almost all the cases that are

3    cited, for a number of reasons.  One of which is the market

4    capitalization of PG&E today is such that we may be dealing

5    with a solvent debtor.

6            THE COURT:  We may not be also.

7            MR. DUNNE:  We may not be.

8            THE COURT:  We may not be.

9            MR. DUNNE:  And that's the point is that we're not

10   here representing just debt for borrowed money claims trading.

11   We're concerned about the creditors who don't know yet that

12   they have claims.  And they find out --

13           THE COURT:  Well, that's hard to imagine.

14           MR. DUNNE:  -- after rejection and after allowance of

15   claims that they wish they were here today arguing about the

16   relief that was being granted.

17           There is a point that Mr. Karotkin makes that I'm

18   sympathetic to, which is that were you to grant our objection,

19   Your Honor, I am not saying that somebody a year from now,

20   let's say, there's a plan filed by Weil Gotshal that's an

21   (l)(5) plan.  I don't think that somebody should be able to say

22   you know you slept on your rights.  You know, you should have

23   done this on the petition date.  I don't think that you can

24   have that type of laches or estoppel argument.  But look what

25   they did on the equity side of the ledger which is exactly what

PG&E Corporation

1   you want.  Clear urgency.  Trading today can impair the NOLs on

2   the equity side.

3           THE COURT:  Right.

4           MR. DUNNE:  Not true on the creditor side.  And they

5   also gave a sense of the shape of the table.  They have, I

6   think very specifically, 24.6 million shares --

7           THE COURT:  Right.

8           MR. DUNNE:  -- is the magic number.  None of that's

9   knowable right now on the claims side.  We have an -- and all

10  we're saying is --

11          THE COURT:  Well, that's right.  It could change

12  tomorrow, right?

13          MR. DUNNE:  It can change.  We don't know what's going

14  to -- if they're going to have to give equity to the creditors,

15  it will all -- if so, how much will one amount of claims get in

16  terms of new equity.  And we can all do this at a future date

17  when that's known, provided he's not subject to the kind of

18  laches or estoppel argument.  And, your Honor, we want to

19  preserve the NOL as well.

20          THE COURT:  But you're not -- you are advocating, Mr.

21  Dunne, that I defer this more than two weeks.  In other words,

22  you're saying that it's so amorphous and so uncertain it's got

23  to be pinned down some day in the future, but we don't know

24  when that future is.

25          MR. DUNNE:  That will in part be the argument on the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    13th.

2              THE COURT:  So I break claims in our plan exclusivity

3    at the same time?

4              MR. DUNNE:  And also go through the case law.  And,

5    for instance, I was at the Windstream -- I'd love to submit the

6    Windstream NOL order that was entered yesterday.  And all it

7    did was say you're on notice that the petition date is the date

8    that everything will relate back to and we'll get through the

9    weeds later.  And so we'd like an opportunity to go through

10   that at a pace that makes sense for Your Honor.  And there's

11   certainly no urgency or distinction between February 27th and

12   March 12th or 13th.

13             THE COURT:  No.  To me the difference between today

14   and two weeks now is that I just go back and reread the briefs

15   more carefully.  And it's that I really am not completely a

16   neophyte on some of the tax issues.  But I don't -- I don't

17   have any occasion to kind of put it in the context of what

18   we're up against.

19             And also, from my point of view, it's -- I have to

20   decide whether there are significant consequences to whatever

21   ruling I make.  And that's what I need to know.  So I think

22   whether it's 13th or some other day, the lawyer at the podium

23   has to persuade me why there are consequences to do what the

24   other side wants me to do.  In this case, for example, Mr.

25   Karotkin wants me to say here that's the deal.  This is the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    rule for claims and the committee doesn't want me to do that.

2    So that's what I'm unclear about.

3            So I understand that you guys are -- you in agreement

4    on the legal principles.  It's how you apply them.  And I don't

5    know where the variables are.  I mean, the question -- the

6    question you sent me a minute ago, you want me to break that

7    exclusivity.  Well, obviously you don't want me to, and debtor

8    doesn't want me to do it.  But the point is that could tip the

9    table also, right?  Well, the gentleman behind you who is --

10           MR. KAROTKIN:  Your Honor, let me just mention one

11   thing.

12           THE COURT:  Yeah.

13           MR. KAROTKIN:  No one is saying to Mr. Dunne's clients

14   or to anyone else that they can't trade claims.

15           THE COURT:  No, I know that.

16           MR. KAROTKIN:  Not at all.

17           THE COURT:  I know that.

18           MR. KAROTKIN:  All we're saying is that there will be

19   these rules imposed if there's an (l)(5) plan and we're also

20   saying, and if at that time there's a restriction on

21   accumulating claims, they can come back to this Court and say

22   they shouldn't be subject to those restrictions.

23           THE COURT:  Yeah, but I can't unring the bell, can I?

24           MR. KAROTKIN:  Yes, you can unring the bell.  You can

25   say at that time, yes, I don't believe there is a legitimate

PG&E Corporation

1    basis to restrict you from trading claims based on the facts

2    before me and whatever plan is before the Court at that time.

3    In addition to the extent we would require a sell down, that

4    sell down cannot occur absent a further order of the Court.

5           THE COURT:  Well, I know.  I know.

6           MR. KAROTKIN:  So the only issue here is, is there

7    some cloud that's going to hang over these claims traders

8    during the interim period before we get to plan time.  And what

9    we're saying is, number one, there is no evidence of any cloud.

10          THE COURT:  Well, there's no evidence either way.

11          MR. KAROTKIN:  Right.

12          THE COURT:  There's very carefully thought out legal

13   arguments on both sides.  So this no evidence issue is a toss-

14   up.

15          MR. KAROTKIN:  But, again, what they're saying is,

16   Your Honor, we should protect the claim traders at the risk of

17   all other creditors in these cases.  And the debtor as a

18   fiduciary is not prepared to do that.

19          THE COURT:  No, I know that.  We're back to the merits

20   argument.  And the gentleman caught in the middle, I don't

21   recognize you.

22          MR. KAROTKIN:  He doesn't need to talk.

23          THE COURT:  You're not going to let him speak?  Mr.

24   Karotkin, if I were -- if this is the oral argument, which I

25   don't want it to be, one of my questions to you is, what is the

(973) 406-2250 | operations@escribers.net | www.escribers.net

1    downside to waiting?  If not a year, at least a month or two or

2    seriously when we get up to exclusivity.  I know you will be

3    here if you haven't got a plan asking me to extend exclusivity.

4              MR. KAROTKIN:  The downside is --

5              THE COURT:  It always happens.  But sometimes I don't

6    grant those requests.

7              MR. KAROTKIN:  I know.

8              THE COURT:  Okay.  It happened in another case here.

9              MR. KAROTKIN:  The downside, Your Honor, is the due

10   process argument is that this will come up later.  No one has

11   been given formal notice because whatever notice they claim our

12   motion gives doesn't have the imprimatur of the Court.  It

13   doesn't.

14             THE COURT:  But you know in a sense, if I defer this,

15   if there is people are paying attention, what they'll learn is

16   well, the judge didn't make a ruling today.  It -- is there a

17   consequence?  If I have a hearing on March 13th, is there

18   someone out there in the marketplace that will make decisions

19   between February 27th and March 13th?  I don't know.  I can't

20   worry about that.  I have to just do what I think is the right

21   thing to do.

22             So I'm back to asking myself or asking you both what

23   are the consequences to my granting the motion or denying the

24   motion?

25             Are you going to let this stranger speak?  I don't

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    know who he is.

2              MR. KAROTKIN:  I'd rather not.

3              MR. STAMER:  I am a stranger to most, actually, Your

4    Honor.

5              THE COURT:  I didn't get your name, sir.

6              MR. STAMER:  Mike Stamer from Akin Gump.

7              THE COURT:  Yes, sir.

8              MR. STAMER:  I'm here on behalf of an ad hoc group of

9    senior noteholders.  Your Honor, as you might imagine, we have

10   a vested interest in the motion.

11             THE COURT:  I suspect so.

12             MR. STAMER:  And we filed a joinder in support of the

13   Committee's objection.

14             THE COURT:  Yes, you did.  I got that.

15             MR. STAMER:  Thank you, Your Honor.  Your Honor, just

16   very briefly, and we're not going to get into the merits.  I

17   think the Court hit the nail on the head with respect to not

18   doing this today, and not doing it in a week.  As Your Honor as

19   recognized a number of times, this case is in its infancy.  And

20   the good news is, the word out of Sacramento and Governor

21   Newsom is he's going to try to do something quickly.  I think

22   his State of the State speech --

23             THE COURT:  I'm waiting to hear from him.

24             MR. STAMER:  As is everyone in the courtroom.  He said

25   in the State of the State address is that he hopes to have a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    comprehensive proposal for dealing with PG&E within sixty days.

2    Mr. Dunne, when he alluded to the trading value with the

3    equity, Your Honor, the market cap -- the equity currently

4    trades at north of eighteen dollars a share.  And the market

5    cap of the equity is north of ten billion dollars.  So although

6    we will acknowledge that these types of orders are routinely

7    entered, they are not routinely entered as it relates to a

8    company that looks like this.  The debtor cited --

9              THE COURT:  Well, I'm aware of that.  I mean, I

10   entered one in Blue Earth (phonetic) and I'm aware of some of

11   the earlier cases.  The newer cases are just too fresh on my

12   mind.  But I am aware of that.

13             MR. STAMER:  We actually had some people spending time

14   over the past twenty-fours, thirty-six hours -- the eleven

15   cases cited by the debtors look nothing like PG&E.  They are

16   either all insolvent or they specifically acknowledge that

17   there will likely be material equity going to pay off

18   creditors.

19             Here, Your Honor -- and I'm not sure if ad hoc equity

20   committee counsel's in the room.  My assumption is they will do

21   everything in their power to make sure that doesn't happen.

22   What we would propose is that instead of putting this off for a

23   week or two, that you put it off for sixty or ninety days and

24   we actually get -- we can come back in.  We can get the benefit

25   of kind of where things stand from Sacramento's perspective.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   And then you will be able to rule on a request to have an order

2   applied nunc pro tunc together with kind of the merits of the

3   underlying motion.

4           THE COURT:  Well, but I mean I guess there's in

5   between.  I can have a hearing on a shorter schedule and then

6   either take the matter under advisement or say that I will make

7   a decision at a later date, can't I?  I mean, I don't -- I

8   don't think my role and my job is to defer decisions.  But --

9   and I don't particularly care for judges who are indecisive.  I

10  try not to be.  But one thing a judge can do is be decisive

11  with something to happen in the future.  But this gets back to

12  why I need some help from experts to tell me what are the

13  consequences, like you're all doing.

14          And I -- so it may be true what you're telling me that

15  these recent cases that are in the news that I haven't read.  I

16  mean, how could I possibly read all these decisions from my

17  colleagues in the last few weeks?  I can't.  And I can't absorb

18  them.  I'm trying to understand this case.  And this case, the

19  first time I had it from day one, some of you in the room were

20  here with me, we knew the debtor was solvent.  There was never

21  the slightest doubt.  But there are some issues that aren't the

22  same anymore in this case.

23          And so there's that.  There's the political issue,

24  whether it's the governor or somebody else.  There are the

25  consequences.  Again, back to my comment about I don't know yet

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    what are the consequences of either -- ruling either way on

2    this.  And I need somebody to give me a better sense of that.

3            MR. KAROTKIN:  Your Honor, we're not -- I mean, it's

4    easy for Mr. Stamer to say there's never going to be an (l)(5)

5    plan.  There's never going --

6            THE COURT:  Right.

7            MR. KAROTKIN:  I mean, in his papers, he doesn't even

8    say that.  He says there may not be.

9            THE COURT:  No, I know that.

10           MR. KAROTKIN:  There may not be.

11           THE COURT:  I know.

12           MR. KAROTKIN:  So it's easier for him to say well

13   let's delay, let's delay, let's delay because that's, in

14   effect, granting the objection.

15           THE COURT:  No, I know.

16           MR. KAROTKIN:  Okay?

17           THE COURT:  I know what it is.

18           MR. KAROTKIN:  So we're prepared to --

19           THE COURT:  I'm not going to let him get away with

20   that yet.

21           MR. KAROTKIN:  We're prepared to -- actually, can we

22   have a five-minute recess to discuss this?

23           THE COURT:  Sure.  Why don't we just take a personal

24   break.  And for everyone's information, just so you're keeping

25   track, after this, and you might get the clue that I'm probably

PG&E Corporation

1   not going to make a ruling today, the only thing left on our

2   agenda is what we call the case management procedure.  And it

3   really isn't terribly substantive.  You're welcome to be here.

4          And then at 1:30, of course, we have a hearing on the

5   adversarial proceedings.  So why don't we take a longer break.

6   Maybe fifteen minutes so everyone can have just a personal

7   convenience break.

8          I'll resume at 11 o'clock by that clock.

9          MR. KAROTKIN:  Thank you.

10      (Recess from 10:46 a.m., until 11:02 a.m.)

11          THE CLERK:  All rise.

12          THE COURT:  Please remain seated.  You have the case

13  settled, Mr. Karotkin?

14          MR. KAROTKIN:  Not settled but adjourned.  How about

15  that?

16          If it is convenient to the Court, we would request

17  that we put the NOL motion over to, I think it's March 27th.

18          THE COURT:  That's one of our days, right?

19          MR. KAROTKIN:  Yes, it is.  At 9:30, I think?

20          THE COURT:  Again, if you want to stick with that,

21  that's the Wednesday, right?  Okay.  So March 27th at 9:30.  Am

22  I going to have -- I mean, I -- well, what do you expect?  Just

23  what he says?

24          MR. KAROTKIN:  Well, we're going to see if we can

25  resolve it in the meantime.  If not, we may ask you to rule on

(973) 406-2250 | operations@escribers.net | www.escribers.net

1    something.  But we can report back before then as to where we

2    are.

3              THE COURT:  Okay.  Well, let's conclude it this way

4    then.  At the continued hearing, if it isn't resolved, I'll --

5    I won't have testimony.  I'll listen to argument and I won't

6    have a fixed rule about timing.  But -- and I don't know who

7    makes the speech, but you know what I'm looking for --

8              MR. KAROTKIN:  Sure.

9              THE COURT:  -- for help.  Okay.

10             MR. KAROTKIN:  So I think with that, we're left with

11   the case management motion.

12             THE COURT:  The case management motion.

13             MR. KAROTKIN:  Not the cash management motion.

14             THE COURT:  Well, it's funny, in preparing the case

15   management motion, I and my law clerk were looking at things

16   and we found reference to something that was filed on your side

17   that made reference to Mr. Wells' (ph.) declaration in support

18   of the case management motion.  And of course it turns out it

19   was the cash management motion.  So -- because we've scurried

20   around to find, when did Mr. Wells comment on the case

21   management motion.  Well, he didn't.

22             MR. KAROTKIN:  He didn't.  That was a mistake.

23             THE COURT:  That's okay, not a big deal.

24             MR. KAROTKIN:  Ms. Liou will handle that motion with

25   you.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    THE COURT:  Okay.  Ms. Liou.  They're not leaving us,

2  Mr. Karotkin; we're keeping the crowd very occupied by this

3  exciting subject.

4    MS. LIOU:  For the record, again, Jessica Liou, from

5  Weil, Gotshal & Manges, Your Honor.  Docket entry number 522,

6  the case management motion, agenda item number 15.

7    Only one party has filed an objection to this motion;

8  that's the United States Trustee.

9    THE COURT:  And some of the U.S. Trustee's comments

10  are consistent with some of mine.  Have you worked out a

11  resolution at all with the U.S. Trustee?

12    MS. LIOU:  Yeah, we've made some changes to the case

13  management order that I believe will resolve at least two of

14  the U.S. Trustee's concerns, and the other two remain

15  contested.

16    THE COURT:  Why don't you tell me the changes that you

17  made, and again, in general reference to them.

18    MS. LIOU:  Okay.  Paragraph 5 of the case management

19  order, the U.S. Trustee had asked to be added to the list of

20  standard parties.  We were more than happy to add them.

21    THE COURT:  Okay.  That's easy.

22    MS. LIOU:  And then with respect to paragraph 14 of

23  the case management order, the U.S. Trustee argued that deemed

24  consent to ECF service was impermissible.  We just modified the

25  language as, you probably would have seen, with the proposed

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1  order we filed to allow a party to opt out.

2          THE COURT:  Yes.  I'm aware of that and that's one of

3  the things on our list.  And I think Ms. Kim notified us of

4  some of those changes.

5          Let me run through mine that -- some of them are in

6  the category of nits and some of them are really things that I

7  don't feel comfortable leaving in this order.  I know we can

8  talk about it.

9          The first one is a very unusual -- but I'm going to

10  tell you anyway.  For as long as I can remember, before ECF and

11  then even for a while when we went to ECF, our court and the

12  district court here and courts in other parts of the world have

13  used FERS.  Yet most of everything you affirm is filed has got

14  a footer.  So that, for example, the proposed order

15  implementing the case management procedures has a footer

16  entitled Order Approving Case Management Procedures.  What

17  we've come to learn in ECF world is that footer gets

18  overwritten by the case ECF footer.

19          MS. LIOU:  Right.

20          THE COURT:  And our district court has its footers at

21  the top and we do not.  So we have a -- we made a change to our

22  ECF procedure, and believe it or not, it's going to be change

23  in the local rule eventually, doing away with the footers that

24  are on the front of the pleadings that are filed because we

25  don't have -- we haven't figured out a way to have a footer be

PG&E Corporation

1   the header.  And it is useful to have the footer be the ECF

2   thing.

3            So it's not a big deal.  I don't expect you to change

4   everything overnight.  We'll kind of bug all the lawyers,

5   particularly the regular practitioners -- a number of the local

6   firms have already changed, so just make that change and

7   throw -- the proposed order, paragraph 4, should have a

8   statement, which I can have my law clerk send you if you want,

9   but basically -- well, why don't we do that?  We'll send it to

10  you --

11           MS. LIOU:  So --

12           THE COURT:  -- but the essence of it will be,

13  notwithstanding the civil local rule, such and such documents

14  filed in this case shall not contain the footer identifying the

15  information.  Now, it's not going to be treated as a felony.

16  You won't get sanctioned or sent to jail for doing it, but we

17  want everybody to try to do it.  So we'll be in touch with you

18  or someone in your office on that.

19           MS. LIOU:  Thank you, Your Honor.  That sounds good.

20           THE COURT:  And then paragraph 9, I think that also is

21  where there's reference to ECF and the opt-out.  So I hope that

22  your suggested changes that you discussed with the UST -- you

23  mentioned a later paragraph, but I think paragraph 9 is the

24  same thing.  So just double check that.  Do you follow me?

25           MS. LIOU:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1        THE COURT:  I mean, you --

2        MS. LIOU:  Yes, I see.

3        THE COURT:  And then --

4        MS. LIOU:  I'll take another look at that language.

5        THE COURT:  And I think that on page 6 of that same

6   order there is the same reference.  It's got to be consistent

7   with the opt outs and I don't -- I'm not going to worry about

8   the details.  It might be, for this case, because this involves

9   so much of our chambers and law clerks and staff, for this one

10  I think what I'd like you to do is to keep track of all these

11  things we're talking about and then send over unfiled form to

12  see if we were on the same page.  Okay?

13       MS. LIOU:  Sure.  We will do that.

14       THE COURT:  And then on that same subject, on the opt-

15  out for the -- for those few people that want to opt out in

16  terms of ECF, it should be -- I think it should state

17  specifically that tells what your terminology calls the Rule

18  2002 parties who opt out of email notification will receive

19  notice by U.S. Mail of overnight delivery, just the statement.

20  And hopefully -- well, perhaps that should be posted by Prime

21  Clerk on its side.  We'll probably think about putting

22  something on our court's website.  Again, this is not major

23  duty stuff.

24       Paragraph 12 refers to -- one second, excuse me.

25  Yeah, you won't be serving things on parties that they're not

PG&E Corporation

1    entitled to it.  If you have a lengthy document -- here's a

2    suggestion -- when you have a very lengthy document, should

3    you -- do you think it would be appropriate to have the order

4    direct that it's service by mail on those copies?  In other

5    words, the order -- the way the order reads now, if service is

6    authorized by email, paper copy shall not be required by any

7    other method.  But then the question is, when you have lengthy

8    documents, shouldn't people have a right to get paper copies of

9    that?  Is that a problem?

10            MS. LIOU:  I think they can always request them.  The

11   concern there is in the interest of economy when you've got

12   very large documents that need to be served on many parties,

13   you could actually substantially increase the service costs of

14   long documents.

15            THE COURT:  A lot, yes.

16            MS. LIOU:  By a lot.

17            THE COURT:  Yes.

18            MS. LIOU:  So that was why --

19            THE COURT:  Well, let's avoid that.

20            MS. LIOU:  -- that provision was drafted that way.

21            THE COURT:  Let's avoid that.  But a one-on-one

22   specific comment there, request for copy, I think should be

23   accommodated.

24            MS. LIOU:  Sure.

25            THE COURT:  Okay.  Maybe this is already picked up in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    the paragraphs that you discussed with the U.S. Trustee, but

2    paragraph 15 near the end says that -- and this is consistent

3    with what we were talking about -- that if a document cannot be

4    included in an email because of its size, your language reads

5    "The party serving the document may, in its sole discretion,

6    serve the entire document by mail."  But I think I'd like to

7    take that sole discretion out, so it's required in one of these

8    things where -- when it's required to be served.

9            In other words, following up on what you've said, I'm

10   not asking you to send lengthy documents to the entire service

11   list, but if there is a document that's lengthy that needs to

12   be served, let's say on a counterparty or, you know, a party to

13   a contract that's being rejected or something like that, then I

14   think the order should say that you can't use your discretion

15   to send it that way; you have to send it to -- again, you

16   follow me?

17           MS. LIOU:  Yes.

18           THE COURT:  Okay.  On paragraph 17, there is a

19   provision about making the email address known.  Again, in this

20   day and age, you wonder does everybody have an email address,

21   but I don't think we can require people to disclose their email

22   address if they're opting out to a mail service.  So I think to

23   the extent that the Federal Rule of Bankruptcy 2002 does not

24   require disclosure of an email.  You and I know that in this

25   modern age most people want to use email, but there are some

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    who don't want to.  So I want to make sure that the email

2    address is not required in the context of the person who is

3    opting out of any kind of email --

4         MS. LIOU:  Sure.

5         THE COURT:  -- address.  Okay?  Okay, one second here.

6    I'm sorry, I need to take a second here.  Oh, yeah.  I think

7    the order 8 -- paragraph 18 says, "If you're a party who is not

8    using email, your notice of appearance must have a

9    certification to that effect."  The question is then, well, how

10   do we monitor these certifications?  How will somebody filing

11   the 2002 notice know about the certification requirement?  You

12   follow me?  Is that question -- am I confusing the question

13   here?

14        MS. LIOU:  No, I understand the question.  I would

15   presume that by the filing of this -- or the entry of this

16   order, they should be on notice that they would have to follow

17   these procedures.  We can certainly make that more notable by

18   including additional -- a note on the debtor's website about

19   the entry of this order and needing to comply with these

20   procedures.

21        THE COURT:  Well, let's -- I mean, look, we can only

22   do so much.  Make sure that this order recites that if you file

23   a -- if you're taking -- if you're opting out of email, that

24   you must include a certification that you're not to be sent by

25   email.  You're not -- that you're not to get the stuff by

escribers
(973) 4l0-9l00 | operations@escribers.net | www.escribers.net

PG&E Corporation

1     email.  And then the question is -- I presume the noticing

2     agent has the ability to know -- to keep track of --

3              MS. LIOU:  Yes.

4              THE COURT:  -- that situation --

5              MS. LIOU:  Yes, that's right.

6              THE COURT:  -- so that there's proper service.

7              MS. LIOU:  Yes, that's correct.

8              THE COURT:  And we don't want to --

9              MS. LIOU:  The noticing agent will do that.

10             THE COURT:  -- screw up the service if somebody has

11    opted out and then they don't get served correctly.

12             MS. LIOU:  No, that's absolutely right.

13             THE COURT:  Okay.

14             MS. LIOU:  Prime Clerk will be monitoring that.

15             THE COURT:  Okay.  All right.  And I'll leave the --

16    okay.  On paragraph 24 -- 24 has to do with emergency and

17    expedited relief.  I'd like to just take the language at the

18    beginning, at line 15, after the words "expedited relief

19    procedures", there's a provision about if the debtor disagrees

20    with the movant et cetera, they -- inform the Court and et

21    cetera, just take out that language from line 15 down to line

22    20, and we have the provision in there to make sure the parties

23    are aware of my published procedures.  So my published

24    procedures make it clear we'll have all --

25             MS. LIOU:  Okay.  So Your Honor, sorry -- let me just

(973) 410-9130 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    clarify, because I may be looking at a slightly different

2    version of the proposed order than you.

3            THE COURT:  Well, okay.  Do you see paragraph 24?

4            MS. LIOU:  Yes.  I think it might be my paragraph 23.

5    I'm looking at the version of the order we filed on February

6    25th.

7            THE COURT:  Sorry.  Well, I'm looking at the paragraph

8    that begins "if a movant or applicant other than the

9    debtors" --

10            MS. LIOU:  Right.  Okay.  I'm there with you.

11            THE COURT:  And that gets down to the phrase,

12   expedited relief procedures.  I just want to take the next

13   sentence out.

14            MS. LIOU:  The one that begins "If the debtors

15   disagree"?

16            THE COURT:  Yes.

17            MS. LIOU:  Okay.

18            THE COURT:  Because we have procedures that I have

19   posted.  And I would then add something like this -- and again,

20   I'll have my law clerk be in touch with you to make sure we're

21   clear on the language, or review what you said -- that we want

22   to amend that paragraph 24 that says, "Any party" and that

23   includes the debtors, "requiring emergency or expedited relief

24   shall file a motion for an OST and comply with LR 906."  So

25   that's the procedure that says you notified the other side, et

PG&E Corporation

1   cetera, and then you upload a proposed order shortening time.

2           We will then take it from there.  In other words, if

3   you -- let's say you file a certification, I contacted counsel

4   for the debtor's committee and he told me he won't agree, and

5   here's my request for shortened time.  You just upload your

6   order shortened time, and if that -- if you have done the

7   proper certification, and we believe that you've properly

8   certified, we'll act on it.  So we don't -- and we'll say so.

9   So we don't -- and if we need a conference, we'll do so.

10          MS. LIOU:  And the parties can request a conference

11  with the judge?

12          THE COURT:  Well, no.  No, that's what I'm saying, in

13  that case you -- no, we have in the procedures the discovery

14  conference.  If there's a dispute on discovery, you meet and

15  confer and see if you can work it out.  Then either side can

16  ask that we have a conference.  If you want some other kind of

17  expedited relief, 9006 is the local rule that says, I've

18  requested the other side to agree, they haven't agreed, and I

19  want shortened time for the following reason.  And then you

20  upload your order.  We look at the order, and if we're

21  satisfied, we'll issue the order.  I mean, in a -- look, you

22  should know; in an appropriate case where there's no other way

23  to deal with it and it has to be done quickly, we'll notify all

24  sides and have a conference, phone conference.

25          MS. LIOU:  Okay.

PG&E Corporation

1      THE COURT:  Okay?  Okay.  Paragraph 27 seems to be

2  consenting to the extension of the automatic stay.  Again,

3  there are -- we all know how to deal with that, but I think

4  that the paragraph that -- and the last sentence in paragraph

5  27 says that this improperly grants substantive relief, in

6  other words, it automatically constitutes a waiver, and I would

7  rather that we let the waiver occur naturally.

8      If you -- in the rare case when you are worried or

9  someone on your side is worried that the stay relief might

10  happen accidentally, you just ask that it be a stipulation to

11  continue it or that the Court enter -- grant some sort of

12  appropriate relief.  In other words, what I'm trying to say is

13  that if someone schedules a hearing and it's automatically past

14  the extension of time, then you don't need an order saying it's

15  deemed consent, because you, in fact, have consented.

16      MS. LIOU:  Right.

17      THE COURT:  Okay?  And that's what happens most of the

18  time.  Okay.

19      MS. LIOU:  So at least with respect to that paragraph,

20  will there be a proposed mark from your chambers, or should we

21  just strike some of the language at the end of that paragraph?

22      THE COURT:  I think just strike it.

23      MS. LIOU:  Okay.

24      THE COURT:  Just strike it.  Give me one more second

25  here.  Yeah, okay.  I'm just telling you something.  You

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    probably know it; you and your colleagues have certainly done

2    your homework on how we do things here.  But we're one of the

3    only districts in the country that doesn't require responses to

4    motions for relief from stay.  So in paragraph 28, you indicate

5    that there's an objection for -- unless otherwise ordered --

6             MS. LIOU:  Um-hum.

7             THE COURT:  -- there's an objection with respect to

8    the motion for relief from stay, but our -- we don't require

9    it.  So -- and we don't care if people want to file responses,

10   but they don't have to.

11            MS. LIOU:  Okay.

12            THE COURT:  See -- I don't want to confuse you.  What

13   that paragraph 28 says, "Stay relief motion shall be noticed

14   for consideration on the omnibus hearing date at least 21 days

15   after the motion is filed."  Then the sentence goes on, "Unless

16   otherwise ordered by the Court, the objection deadline with

17   respect thereto shall be 4 p.m. on the day 27 prior."  But

18   there is no objection deadline.  That's what I'm trying to say.

19            MS. LIOU:  Okay.  But to the extent that folks would

20   like to file an objection to the motion, are you comfortable

21   leaving this in so that they have some clarity as to when the

22   deadline --

23            THE COURT:  They won't do it anyway.

24            MS. LIOU:  -- for that would be?

25            THE COURT:  I mean, no, I think I'd rather take my

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    chances.

2           MS. LIOU:  Okay.

3           THE COURT:  And when I get a 27-page brief two hours

4    before the hearing, I'll fuss about it and scold people and

5    then I'll read it.

6           MS. LIOU:  Okay.

7           THE COURT:  Okay.  Okay.  So on paragraph 29, once

8    again, we've got this reply deadline of two business days prior

9    to the hearing.  I'd rather stick with the twenty-

10   eight/fourteen/seven sequence and not earlier.  I've said

11   earlier today that I can't deal with these last-minute

12   deadlines that we specially set, but for the normal motions, we

13   just want to stick with the 24 -- excuse me, the twenty-

14   eight/fourteen/seven.

15          MS. LIOU:  But this is the reply deadline.  So after

16   an objection is filed.

17          THE COURT:  Well, it's just the -- yes, that's

18   correct.

19          MS. LIOU:  Right.

20          THE COURT:  Correct.  You're here --

21          MS. LIOU:  Are you comfortable then leaving that at

22   two business days?

23          THE COURT:  What, say that again.  What?

24          MS. LIOU:  Sorry.  Are you comfortable then leaving

25   the reply deadline at two business days?

PG&E Corporation

1   THE COURT:  Well, no -- no, we want it at seven.  For

2   the normal motion.  In other words --

3       (Pause.)

4       MS. LIOU:  So Your Honor, just to clarify -- thank

5   you.  When we have a regular motion that's being noticed on 21

6   days, I hear your court's concern about, you know, 21 days'

7   notice, then 7 days -- 7 calendar days before the applicable

8   hearing for the objection deadline.  And then I think what

9   we're proposing is that the reply deadline would be two

10  business days before the hearing.

11      THE COURT:  I think what we're getting at cross

12  purposes -- lots of our motions are on a twenty-eight-day

13  cycle.

14      MS. LIOU:  Right.  Exactly.  I was just about to head

15  there.

16      THE COURT:  So that's the twenty-eight/fourteen/seven

17  sequence.

18      MS. LIOU:  Right.  Exactly.  So --

19      THE COURT:  That's where you have a designated

20  response.  A respondent, like a motion to reject a contract, or

21  a motion for summary judgment in an adversary setting.  But

22  then you have the general relief, like the motion to sell Black

23  Acre (ph.), that's typically twenty-one days.  And I think our

24  rules require seven days.  But that doesn't have the three in

25  it, that's the two.  You file your motion and you file your

PG&E Corporation

1    opposition.

2           MS. LIOU:  Okay.  All right.  So I think we're on the

3    same page then.  It's the twenty-eight/fourteen and seven for

4    certain specific motions, and then for the generalized motions,

5    twenty-one/seven, and you're saying we would just file our

6    reply in --

7           THE COURT:  No reply.

8           MS. LIOU:  -- court.  Okay.

9           THE COURT:  No reply.

10          MS. LIOU:  No reply.

11          THE COURT:  Okay.  I don't -- listen, in an

12   appropriate case, I'm willing to go with a reply, but in the --

13   let's have a standard rule that doesn't include a reply,

14   because if you're the moving party, you're seeking relief

15   generally.  And then when somebody comes in and says they don't

16   want -- they don't want you to have that relief, then the

17   battle's joined.  We don't have to have a reply about it.  We

18   just act on it.  So the point is I'm saying it's a twenty-

19   one/seven works for that kind of procedure, because you don't

20   have a known respondent.  The twenty-eight/fourteen/seven works

21   when you have a respondent.  Okay?

22          MS. LIOU:  Okay.

23          THE COURT:  All right.  Okay.  All right.  Let's go

24   over to -- let's go over to paragraph 35.  35 is when you have

25   a settlement and the language reads, "In the event the Court

PG&E Corporation

1  determines that notice of the dispute and the hearing is

2  adequate, notice of a settlement, et cetera, the Court may

3  approve the settlement at the hearing."  That's true, but I

4  want you to understand, and perhaps the rule needs to say, this

5  is the exception, not the rule; that in general we expect fully

6  noticed motions for approval of compromises under FRP -- BP

7  9019, in Martin v. Kane, A & C Properties, the 9th Circuit law

8  on the subject of the settlements.  And that's the procedure

9  we'd like to follow.

10       We also follow -- on the scream or die basis as well.

11  So it's fully noticed; doesn't have to have a response.  It's

12  just -- we stick -- we don't want to have -- we don't mind -- I

13  don't mind a settlement, and we'll do it on the fly if we have

14  to, but I -- the default rule is that it's noticed now so

15  people have a chance to be heard on it.  Okay?

16       MS. LIOU:  Okay.  That's fine with us.

17       THE COURT:  Just about done.  Okay.  Now, go all the

18  way over to paragraph 41.  I'd really like to do away with

19  paragraphs 41 and 42.  I don't want to have a rule that talks

20  about how we're going to conduct evidentiary proceedings.  I'm

21  not a fan of doing everything by declaration.  But I'd rather

22  do it on an individual case basis.

23       If we end up with a lot of stuff in this case and if

24  we have a huge volume, then I might have to revisit that.  But

25  I'm better off just making sure people understand, and you

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    understand, that I've published for years a standard trial

2    scheduling order that works for APs.  It works for claims

3    objections.  It works for lien avoidances, or those kinds of

4    motions.  And I generally do prefer live testimony.  I'm not a

5    fan of the written direct, but I'll do it by stipulation.  So

6    it is preferable to me that we deal with it on a case-by-case

7    basis.  So 41 and 42 in my view should just go out.

8              MS. LIOU:  Sure, Your Honor, we'll strike those.

9              THE COURT:  And then I guess the very second to last

10   one, I think it's 49 on my draft, is there's just one of these

11   boilerplates that says, "If the case management procedures

12   conflict with the national rules, the case management

13   procedures shall govern."  Well, good luck.  I don't think I

14   can overrule state and national rules.  So why don't we just

15   delete that entire paragraph and make sure we comply with the

16   national rules?

17             MS. LIOU:  Sure.  We can do that.

18             THE COURT:  I mean, look, I'm saying this in part

19   facetiously.  If the national rules allow, unless otherwise

20   ordered, then I'm happy to make it work.

21             MS. LIOU:  Right.

22             THE COURT:  But I just don't want this to fall in

23   procedure.  But these are not earthshaking changes.  I hope

24   they're all things you can live with.

25             Anyone want to be heard in court or on the phone on

PG&E Corporation

1   the case management procedure order?

2       Mr. Laffredi.

3       MR. LAFFREDI:  Thank you, Your Honor.  Tim Laffredi

4   for the U.S. Trustee.  The only remaining issues that we had

5   were with respect to opting out for the electronic service, the

6   emergency relief procedures, and the evidentiary hearing

7   procedures, which the Court has resolved for us.  So we

8   appreciate that.

9       THE COURT:  Okay.  Well, I appreciate your reviewing

10  it.  Okay.  So no one else has a comment, so Ms. Liou, what I

11  will expect from you, just send an email to my courtroom

12  deputy, Ms. Parada, with a word version of whatever you think

13  is the right order and we'll review it and my -- I'll let her

14  be the person -- I mean, my law clerk, Ms. Brister (ph.), has

15  been in touch with Ms. Kim on some matters, but Ms. Parada can

16  be the recipient of the thing.  I don't anticipate any

17  difficulty here.  We'll get all done and -- so that order

18  should get -- we'll be slightly behind some of the orders we're

19  dealing with today, but I think we're good to go and it's very

20  helpful.  Thanks for doing this.

21      MS. LIOU:  Great.  Thank you for working with us, Your

22  Honor.

23      THE COURT:  Okay.  All right.  Anyone want to raise

24  anything before we adjourn?

25      MR. GROSS:  My apologies, Your Honor.  Stuart Gross of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1   Gross & Klein.  I represent certain objectors to motion number

2   16, the customer programs motion.

3              THE COURT:  It's not on today.

4              MR. GROSS:  I understand, Your Honor.  This is just a

5   housekeeping issue.  I actually have a hearing on the 13th and

6   I'd like to be heard.  If we could move that to March 27th,

7   which I understand another motion -- or the 12th.  I mean, I

8   can do it on the 12th.  But I understood Your Honor had an

9   issue with the 12th.

10             THE COURT:  Well, I had the issue of the 12th when I

11  had to get a reply twelve hours prior.  Well, I mean --

12             MR. GROSS:  What would you like to do?

13             THE COURT:  Can you --

14             MR. GROSS:  Either one works for me.

15             THE COURT:   Mr. Gross, can you appear by phone on the

16  13th?

17             MR. GROSS:  I cannot.  I have a hearing at 9 a.m. at

18  San Mateo Superior on the 13th.

19             THE COURT:  Well, what do you want to do?  You want

20  this --

21             MR. GROSS:  On the 12th I'm fine.

22             THE COURT:  The 12th?

23             MR. KAROTKIN:  The 12th is fine with us.

24             THE COURT:  As long as I don't have a last-minute

25  filing.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    MR. KAROTKIN:  No.  I think we'll probably work it out

2  anyway.

3    MR. GROSS:  Okay.  That's fine, Your Honor.

4    THE COURT:  Okay.  So do we -- Ms. Parada, you have

5  the particular -- you know the motion we're talking about;

6  we're going to do that on the 12th at 9:30 rather than the

7  13th?  Okay.

8    MS. KIM:  Just a housekeeping matter, Your Honor.

9  Jane Kim on behalf of the debtors.  So as far as I have noted

10  down for today, the revised -- we're going to have to submit

11  some revised proposed -- or the orders that we'll be uploading

12  later today will be revised in some respects.  The reclamation

13  procedures motion and the 503(b)(9) procedures motion have

14  orders that will be revised per Your Honor's --

15    THE COURT:  Right.

16    MS. KIM:  -- comments.  Just to clarify, we can upload

17  those without noticing --

18    THE COURT:  Yes.

19    MS. KIM:  -- since they haven't had any objections?

20    THE COURT:  Absolutely.

21    MS. KIM:  We will get the employee wage -- the union

22  to sign off on the employee wage order, the U.S. Trustee to

23  sign off on the OCP order, and the utility that objected to the

24  utilities order.  And then I don't remember if Mr. Karotkin

25  said it earlier in the hearing, but there is one slight change

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1  to the insurance exchange operator -- operational integrity

2  suppliers and lien claimants' orders, to add the DIP agents

3  counsel as a noticed party.

4          THE COURT:  That's not a problem.

5          MS. KIM:  Okay.  Thank you, Your Honor.

6          THE COURT:  So Ms. Kim, did you hear my comment?  I

7  told Mr. Karotkin to give you a break.  You were doing all this

8  extra work.

9          MS. KIM:  I appreciate Your Honor's sentiment.

10          THE COURT:  So tell him to quit.

11          MS. KIM:  I'm okay, thank you.

12          THE COURT:  Mr. Laffredi?

13          MR. LAFFREDI:  Thank you, Your Honor.  Just a few

14  final comments from the U.S. Trustee.  I just wanted to inform

15  the Court that the initial debtor (ph.) interview was conducted

16  this week on the 26th.  The 341 meeting is scheduled to be held

17  on Monday, March 4th at 10 o'clock on the second floor in this

18  building.

19          THE COURT:  Do you got enough room?

20          MR. LAFFREDI:  We hope so, Your Honor.

21          THE COURT:  We were going to get Candlestick Park for

22  you, but they tore it down.  So how about at --

23          MR. LAFFREDI:  Well, we hope we have enough room.

24          THE COURT:  -- Oracle Arena?

25          MR. LAFFREDI:  One issue that we did want to bring to

PG&E Corporation

1    the Court's attention that arose at the last hearing on the

2    supplemental wage motion.  At that hearing, debtors indicated

3    that some of the creditors, namely the wage claimants, were not

4    listed on the creditor matrix and may not be listed in the

5    bankruptcy schedules.  And so the U.S. Trustee was concerned

6    that certain creditors did not receive notice of the 341

7    meeting.  And it turns out earlier this week that that indeed

8    is the case.  So I just wanted to flag this for the Court's

9    attention, because this may need to be dealt with.

10          THE COURT:  What do you mean?  Is it realistic to have

11   a continued 341?

12          MR. LAFFREDI:  Well, at this point, Your Honor, we

13   don't have the schedules anyway, so the meeting will have to be

14   continued.

15          THE COURT:  Right.

16          MR. LAFFREDI:  But hopefully the debtor -- we can work

17   with the debtor on making sure that notice goes out

18   appropriately.

19          THE COURT:  Has there been a discussion yet on a

20   claims parte (ph.) or is that still open, Mr. Karotkin; do you

21   know?  Is that still up in the air with everyone?  I don't

22   care, I just want to know -- I don't want to get forgotten.

23          MR. KAROTKIN:  We haven't had any formal discussions

24   yet, but we intend to do so pretty soon.

25          THE COURT:  Okay.  Well --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1    MR. KAROTKIN:  We were waiting for the -- he

2    committees to be formed so we could discuss it with them.

3    THE COURT:  Do you expect any more committees, Mr.

4    Laffredi?

5    MR. LAFFREDI:  At this point, Your Honor, I can't say.

6    I'm not sure at this point.

7    THE COURT:  Okay.

8    MR. LAFFREDI:  And what --

9    THE COURT:  Well -- all right.  So we know -- I mean,

10   at some point we've got to get a claims parte, but I'm not in a

11   rush for it.  So all right.

12   MR. LAFFREDI:  One final note, Your Honor, with regard

13   to ad hoc committees, since I understand there are ad hoc

14   committees involved in this case, we will just endeavor to

15   ensure that those committees comply with Rule 2019(b)

16   disclosure.

17   THE COURT:  Well, sure.  They know how to do that.

18   All right.  Last call.  Anyone want to be heard on any subject

19   related to this case?  And those of you that are following the

20   adversary proceeding, we'll see you at 1:30.  All right?  Thank

21   you everyone.

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                          I N D E X

2    RULINGS:                                    PAGE LINE

3    Motion granted                               13     15

4    Motion granted                               14     17

5    Motion granted                               15      7

6    Motion granted                               15     25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 410-9350 | operations@escribers.net | www.escribers.net

1          C E R T I F I C A T I O N

2

3    I, Amber Minton, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8

9

10   _____

11   /s/ AMBER MINTON

12

13   eScribers

14   7227 N. 16th Street, Suite #207

15   Phoenix, AZ 85020

16

17   Date:  February 28, 2019

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

# A

**ability (1)**
77:2
**able (2)**
58:21;66:1
**absent (1)**
62:4
**Absolutely (3)**
47:21;77:12;89:20
**absorb (1)**
66:17
**accept (1)**
11:18
**accidentally (1)**
80:10
**accommodate (1)**
6:23
**accommodated (1)**
74:23
**accordance (2)**
6:4;26:11
**account (3)**
6:10;20:15;39:7
**accountants (1)**
47:9
**accounted (1)**
16:21
**accounting (2)**
41:18,18
**accumulating (1)**
61:21
**acknowledge (2)**
65:6,16
**Acre (1)**
83:23
**Act (3)**
41:21;79:8;84:18
**acting (1)**
54:4
**action (1)**
10:25
**actions (1)**
16:21
**active (1)**
7:20
**actual (1)**
42:20
**actually (8)**
39:9;41:20;64:3;
65:13,24;67:21;74:13;
88:5
**ad (4)**
64:8;65:19;92:13,13
**add (7)**
13:10;19:19,23;
20:13;70:20;78:19;
90:2
**added (3)**
14:9;15:17;70:19
**adding (5)**
19:9;28:22;29:6

**addition (1)**
62:3
**additional (2)**
41:25;76:18
**address (13)**
5:15;14:2;34:21;
35:3;38:21;45:9;54:8;
64:25;75:19,20,22;
76:2,5
**addressed (3)**
6:6,15;19:12
**addresses (1)**
41:12
**adequate (1)**
85:2
**adhered (1)**
52:1
**adjourn (2)**
54:16;87:24
**adjourned (4)**
10:15,23;12:14;
68:14
**adjust (1)**
28:17
**adjustments (1)**
7:23
**administratively (1)**
24:3
**adversarial (1)**
68:5
**adversary (2)**
83:21;92:20
**adverse (5)**
47:25;49:9,16;50:9;
51:21
**advisement (1)**
66:6
**advisory (1)**
41:20
**advocating (2)**
56:24;59:20
**affidavit (1)**
56:14
**affidavits (1)**
51:5
**affiliation (1)**
5:15
**affirm (1)**
71:13
**affirmed (1)**
55:25
**afternoons (1)**
9:22
**again (39)**
6:8;7:9;8:1,24;
13:19;14:19,21;17:9;
18:6,11;21:21;23:11,
15,23;24:19;25:12;
26:12;27:7;28:12;
32:18;42:18;44:12;
52:6;53:17;54:17;
55:19;57:18;62:15;
66:25;68:20;70:4,17;

73:22;75:15,19;78:19;
80:2;82:8,23
**against (2)**
49:24;60:18
**age (2)**
75:20,25
**agenda (12)**
6:4;11:3,3,5;12:16,
18;13:14;15:20;25:17;
38:3;68:2;70:6
**agent (4)**
20:22;25:6;77:2,9
**agents (1)**
90:2
**aggregate (1)**
43:1
**ago (3)**
28:18;57:18;61:6
**agree (5)**
7:2;18:5;48:3;79:4,
18
**agreeable (1)**
40:8
**Agreed (7)**
26:8;30:7;33:17;
35:6;41:1;47:15;79:18
**agreement (3)**
22:17;35:1;61:3
**agrees (1)**
31:13
**ahead (4)**
10:25;12:8;33:16;
38:14
**air (1)**
91:21
**Akin (1)**
64:6
**allow (4)**
24:3;27:8;71:1;
86:19
**allowance (1)**
58:14
**allowed (2)**
22:17;26:15
**all-purpose (1)**
10:12
**alluded (1)**
65:2
**almost (5)**
8:2;22:24;26:1;44:8;
58:2
**along (1)**
21:12
**alternatives (1)**
6:20
**although (1)**
65:5
**always (3)**
32:9;63:5;74:10
**amend (1)**
78:22
**amended (4)**
6:4;11:3,5;38:3

**amorphous (1)**
59:22
**amount (5)**
39:11,13,15,20;
59:15
**amounts (3)**
14:1;39:21;43:22
**analysis (1)**
44:5
**analyze (1)**
56:4
**announcements (1)**
5:11
**annual (2)**
45:13,18
**anticipate (2)**
46:1;87:16
**anymore (1)**
66:22
**apologies (1)**
87:25
**appeal (1)**
56:1
**appear (2)**
5:16;88:15
**appearance (2)**
37:23;76:8
**appearing (2)**
5:14;40:15
**applicable (2)**
43:16;83:7
**applicant (1)**
78:8
**application (6)**
39:7,9,20,20;40:1;
44:19
**applications (2)**
42:13,13
**applied (1)**
66:2
**applies (2)**
45:17;47:4
**apply (6)**
47:3,4;49:10;51:8,
23;61:4
**appreciate (4)**
31:23;87:8,9;90:9
**appropriate (6)**
41:23;42:8;74:3;
79:22;80:12;84:12
**appropriately (1)**
91:18
**approval (1)**
85:6
**approve (3)**
35:19;42:17;85:3
**approved (2)**
14:17;30:24
**Approving (1)**
71:16
**approximately (1)**
31:21
**April (2)**

24:12;27:18
**APs (1)**
86:2
**Arena (1)**
90:24
**argued (1)**
70:23
**arguing (2)**
50:3;58:15
**argument (12)**
54:10;55:3;56:6,7;
57:14;58:24;59:18,25;
62:20,24;63:10;69:5
**arguments (1)**
62:13
**arose (1)**
91:1
**around (3)**
36:4;53:19;69:20
**aspects (1)**
56:10
**assert (1)**
24:13
**asserting (3)**
16:15;23:22;24:6
**assertion (2)**
23:13,25;30:8
**assessments (1)**
15:11
**assume (6)**
11:16;14:12,24;17:7,
9;52:12
**assumption (1)**
65:20
**assurances (1)**
26:13
**ATM (1)**
46:8
**attention (3)**
63:15;91:1,9
**attorney-client (1)**
51:7
**atypical (2)**
8:25;46:15
**audio (4)**
5:19;6:9,10;43:22
**authored (1)**
55:21
**authorized (3)**
30:3;39:21;74:6
**automatic (1)**
80:2
**automatically (2)**
80:6,13
**available (2)**
9:8;10:7
**averaging (1)**
7:3
**avoid (2)**
74:19,21
**avoidances (1)**
86:3
**awards (2)**

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 95 of 109

31:16;33:18
**aware (7)**
    14:10;24:13;65:9,10,
    12;71:2;77:23
**awareness (1)**
    8:22
**away (3)**
    67:19;71:23;85:18

## B

**back (19)**
    5:19;20:3;21:21;
    24:9;29:16;31:3;36:9;
    37:22;42:18;54:16;
    60:8,14;61:21;62:19;
    63:22;65:24;66:11,25;
    69:1
**bad (2)**
    5:21;7:3
**balance (1)**
    34:9
**bankruptcy (8)**
    8:9;47:7,8,15;49:2;
    51:24;75:23;91:5
**bar (2)**
    26:11;27:1
**Barry (1)**
    36:23
**based (1)**
    62:1
**basic (1)**
    57:19
**basically (1)**
    72:9
**basis (5)**
    30:24;62:1;85:10,22;
    86:7
**battle's (1)**
    84:17
**beat (1)**
    20:6
**begin (1)**
    25:22
**beginning (1)**
    77:18
**begins (2)**
    78:8,14
**behalf (6)**
    14:5;31:21;36:24;
    38:1;64:8;89:9
**behind (3)**
    26:12;61:9;87:18
**believes (2)**
    19:16,24
**bell (2)**
    61:23,24
**benefit (2)**
    30:1;65:24
**best (4)**
    7:25;46:7;55:9;
    56:13
**better (7)**

12:19;26:7;43:20;
    44:14,16;67:2;85:25
**big (5)**
    25:14,18;53:13;
    69:23;72:3
**big-ticket (1)**
    54:22
**billing (2)**
    44:1,3
**billion (1)**
    65:5
**binder (3)**
    25:15,16,18
**bit (2)**
    21:19;54:5
**Black (1)**
    83:22
**blackacre (3)**
    7:13,15,16
**block (1)**
    9:11
**Blue (1)**
    65:10
**boilerplates (1)**
    86:11
**bonus (2)**
    30:13;33:24
**book (1)**
    25:11
**borrowed (1)**
    58:10
**both (5)**
    21:20;55:1,4;62:13;
    63:22
**bother (2)**
    8:13;15:2
**bounced (1)**
    19:6
**BP (3)**
    13:22;14:8;85:6
**BP's (1)**
    14:13
**brain (1)**
    57:17
**Bray (1)**
    52:21
**break (8)**
    5:25;43:22;60:2;
    61:6;67:24;68:5,7;90:7
**brief (3)**
    57:18,19;82:3
**briefly (2)**
    38:16;64:16
**briefs (1)**
    60:14
**bring (1)**
    90:25
**Brister (1)**
    87:14
**broader (1)**
    46:18
**brought (1)**
    39:10

**bug (1)**
    72:4
**building (1)**
    90:18
**bunch (1)**
    10:8
**burden (1)**
    23:20
**burdening (1)**
    42:11
**bus (1)**
    36:11
**business (7)**
    24:11;27:9;47:10;
    82:8,22,25;83:10

## C

**Caitlin (1)**
    33:9
**calendar (8)**
    6:3;7:24;9:15,16,25;
    10:12;34:2;83:7
**calendars (2)**
    8:21,21
**CALIFORNIA (2)**
    5:1;57:22
**Call (9)**
    5:4;10:11;14:15;
    15:6,24;35:22;37:4;
    68:2;92:18
**called (2)**
    7:6;31:16
**calls (1)**
    73:17
**came (1)**
    14:23
**can (60)**
    5:18;21;6:1,11,21;
    7:12,15,16,16;9:14,17;
    19:19,23;20:1,11;
    22:18;32:8,20;33:12,
    17;34:3;39:1,25;44:23;
    45:9;58:23;59:1,13,16;
    61:21,23,24,24;65:24,
    24;66:5,10;67:21;68:6,
    24;69:1;71:7,10;72:8;
    74:10;75:21;76:17,21;
    79:10,15,15;86:14,17,
    24;87:15;88:8,13,15;
    89:16;91:16
**Candlestick (1)**
    90:21
**cap (22)**
    11:13;12:6;39:6,8,
    22,24;42:6,7,15,17;
    43:1,16;44:2;45:13,14,
    14,18,21;46:2;65:3,5
**capitalization (1)**
    58:4
**card (1)**
    50:5
**care (8)**

12:8,13;27:17;28:7;
    42:4;66:9;81:9;91:22
**carefully (2)**
    60:15;62:12
**case (64)**
    6:9;8:17,22;24:5,15;
    26:9,14,15;27:3;35:22;
    36:9;37:18,21;42:8,16;
    48:6,7,7,24;49:6,7,11;
    50:10,20;53:1,3,18;
    55:21;57:8;60:4,24;
    63:8;64:19;66:18,18,
    22;68:2,12;69:11,12,
    14,18,20;70:6,12,18,
    23;71:15,16,18;72:14;
    73:8;79:13,22;80:8;
    84:12;85:22,23;86:11,
    12;87:1;91:8;92:14,19
**case-by-case (1)**
    86:6
**cases (8)**
    26:9;51:13;58:2;
    62:17;65:11,11,15;
    66:15
**cash (5)**
    37:4,17,20;69:13,19
**category (1)**
    71:6
**caught (1)**
    62:20
**center (2)**
    5:13,14
**certain (5)**
    15:10;30:2;84:4;
    88:1;91:6
**certainly (4)**
    27:10;60:11;76:17;
    81:1
**certification (5)**
    76:9,11,24;79:3,7
**certifications (1)**
    76:10
**certified (1)**
    79:8
**cetera (4)**
    77:20,21;79:1;85:2
**challenge (3)**
    22:13;44:22,23
**chambers (2)**
    73:9;80:20
**chance (2)**
    23:1;85:15
**chances (1)**
    82:1
**change (11)**
    27:22,25;28:2;29:5;
    59:11,13;71:21,22;
    72:3,6;89:25
**changed (1)**
    72:6
**changes (5)**
    70:12,16;71:4;72:22;
    86:23

**cheat (1)**
    42:20
**check (1)**
    72:24
**chill (5)**
    56:2,20,25;57:3,9
**Chris (1)**
    31:20
**Circuit (1)**
    85:7
**cite (1)**
    55:21
**cited (3)**
    58:3;65:8,15
**cites (1)**
    57:20
**civil (2)**
    8:8;72:13
**claim (12)**
    16:15;17:3;22:4;
    23:12,14;24:10;26:5;
    46:13;49:14;58:1;
    62:16;63:11
**claimant (7)**
    20:9;21:3;22:3,4;
    23:13,14;24:9
**claimants (5)**
    18:2;27:12;30:3;
    31:11;91:3
**claimants' (1)**
    90:2
**claimant's (2)**
    14:19;15:6
**claims (27)**
    17:7;22:25;23:22;
    24:14,20;25:4,5;26:6;
    27:1;56:2,21;57:1,6;
    58:10,12,15;59:9,15;
    60:2;61:1,14,21;62:1,
    7;86:2;91:20;92:10
**clarification (6)**
    13:24;14:22;16:6;
    17:1;20:23;30:25
**clarified (1)**
    41:19
**clarify (5)**
    14:10;45:12;78:1;
    83:4;89:16
**clarifying (2)**
    15:16;19:24
**clarity (1)**
    81:21
**clear (9)**
    11:12;12:3;15:18;
    19:7;41:2;54:21;59:1;
    77:24;78:21
**CLERK (11)**
    5:5,9;20:21;25:6;
    68:11;69:15;72:8;
    73:21;77:14;78:20;
    87:14
**clerks (1)**
    73:9

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 96 of
109

**client (2)**
50:10;51:9
**clients (2)**
51:21;61:13
**clock (1)**
68:8
**close (1)**
56:2
**closed (1)**
13:16
**closure (1)**
24:16
**cloud (2)**
62:7,9
**club (1)**
55:5
**clue (2)**
9:2;67:25
**Code (1)**
24:2
**colleague (1)**
56:23
**colleagues (4)**
8:16;9:14;66:17;
81:1
**collection (2)**
47:12;48:9
**Collector (1)**
36:24
**combination (1)**
16:5
**comfort (1)**
27:7
**comfortable (4)**
71:7;81:20;82:21,24
**coming (3)**
6:13;9:14;15:13
**comment (6)**
53:24;66:25;69:20;
74:22;87:10;90:6
**comments (6)**
9:24;37:12;52:14;
70:9;89:16;90:14
**committee (11)**
11:16,17;52:20,21;
54:7,25,25;56:1;61:1;
65:20;79:4
**committees (7)**
7:21;44:18;92:2,3,
13,14,15
**committee's (2)**
47:4;64:13
**companies (1)**
31:2
**company (4)**
27:8,10;42:8;65:8
**company's (1)**
13:20;33:23
**compensation (3)**
28:10,11;29:3
**complained (2)**
7:5,22
**complaint (1)**

7:6
**completed (1)**
13:16
**completely (3)**
46:15;48:3;60:15
**complicated (1)**
7:25
**comply (4)**
76:19;78:24;86:15;
92:15
**comprehensive (1)**
65:1
**compromise (1)**
27:15
**compromises (1)**
85:6
**concept (3)**
47:16,17,19
**concepts (1)**
57:19
**concern (8)**
13:20;41:12;43:21;
48:17;50:18;51:18;
74:11;83:6
**concerned (2)**
58:11;91:5
**concerns (5)**
35:9,24;38:17;42:1;
70:14
**conclude (1)**
69:3
**conduct (1)**
85:20
**conducted (1)**
90:15
**confer (1)**
79:15
**conference (5)**
79:9,10,14,16,24,24
**confirm (5)**
32:23;33:12,16,17;
39:1
**confirmation (1)**
38:25
**conflict (4)**
49:15,21,24;86:12
**conflicts (1)**
49:9;50:5
**confuse (1)**
81:12
**confusing (1)**
76:12
**confusion (1)**
37:20
**Congress (1)**
49:17
**connection (1)**
31:18
**consensual (1)**
13:1
**consent (2)**
70:24;80:15
**consented (1)**

80:15
**consenting (1)**
80:2
**consequence (1)**
63:17
**consequences (7)**
50:10;60:20,23;
63:23;66:13,25;67:1
**consider (3)**
10:9;17:19;19:9
**consideration (1)**
81:14
**consistent (7)**
7:17;19:8;31:4;
39:18;70:10;73:6;75:2
**consonant (1)**
37:19
**constitutes (1)**
80:6
**constructive (1)**
56:8
**contacted (1)**
79:3
**contain (1)**
72:14
**contest (1)**
57:13
**contested (1)**
22:24;42:6;70:15
**context (2)**
60:17;76:2
**contingency (2)**
19:10;20:17
**continuance (1)**
54:9
**continue (4)**
13:25;27:8;34:2;
80:11
**continued (3)**
69:4;91:11,14
**contract (2)**
75:13;83:20
**convenience (1)**
68:7
**convenient (2)**
32:8;68:16
**conveniently (3)**
14:15;15:5,24
**conversations (1)**
14:9
**copies (2)**
74:4,8
**copy (2)**
74:6,22
**Corporation (1)**
5:9
**correctly (3)**
51:15,20;77:11
**costs (1)**
74:13
**counsel (17)**
6:2;30:7;32:8,20;
33:8;35:12;37:9;47:4,

4;48:8,9,9;50:24,25;
52:8;79:3;90:3
**counsel's (1)**
65:20
**count (1)**
29:9
**counterparties (1)**
14:10
**counterparty (1)**
75:12
**country (1)**
81:3
**County (1)**
36:24
**couple (10)**
5:10;6:7,20;9:12,13,
13;13:4,5;34:16;35:7
**course (15)**
25:1;27:2;31:1;36:3,
12,16;37:22;38:2;39:5;
43:16;47:10;52:7;55:8;
68:4;69:18
**Court (409)**
5:4,5,7,10;10:7,11,
17,20,24;11:3,6,14,16,
21,25;12:2,4,12,17,23;
13:4,7,9,12,12,21;14:3,
6,12,14,21;15:2,4,12,
19,22,23;16:4,10,14;
17:1,13,15,17,20;18:8,
12,15,18,20,23;19:2,
13,15,20;20:2,4,5,6,8,
12,14,16,18;21:6,8,10,
15,18,23,25;22:3,6,21,
23;23:2,4,6,8,10,17,19,
21,24:4,6,9,21,24;25:1,
8,14,24;26:5,16,18,20,
22,24;27:3,10,12,20,
22;28:4,4,7,11,14,22;
29:2,4,9,12,15,17,19,
22,24;30:5,12,15,17,
19,22,25;31:4,9,17,25;
32:3,10,13,16,18,21,
21;33:6,11,13,15,19,
21;34:1,8,8,13,16,18,
22,25;35:5,8,10,13,15,
19;36:2,8,11,14,18,20;
37:1,4,6,11,17;38:7,11,
14,22;39:2,11,14,16,
23;40:3,5,7,11,13,15,
19,22;41:5,7,11,13,24;
42:2,4,16,18;43:5,8,13,
18;44:1,8,16,18,21;
45:4,8,11,15,19,23,25;
46:4,6,8,18;47:12,19,
22,24;48:2,5,15,21,23;
49:12,17,21,23;50:2,5,
7,9,12,17,21,24;51:4,6,
12,19,23;52:6,6,14,17,
19,24;53:4,6,9,12,16,
20,23;54:19;55:7,16,
19,25;56:14,15,18,23;
57:4,16;58:6,8,13;59:3,

7,11,20;60:2,13;61:12,
15,17,21,23;62:2,4,5,
10,12,19,23;63:5,8,12,
14;64:5,7,11,14,17,23;
65:9;66:4;67:6,9,11,15,
17,19,23;68:12,16,18,
20;69:3,9,12,14,23;
70:1,9,16,21;71:2,11,
12,20,20;72:12,20;
73:1,3,5,14;74:15,17,
19,21,25;75:18;76:5,
21;77:4,6,8,10,13,15,
20;78:3,7,11,16,18;
79:12;80:1,11,17,22,
24;81:7,12,16,23,25;
82:3,7,17,20,23;83:1,
11,16,19;84:7,8,9,11,
23,25;85:2,17;86:9,18,
22,25;87:7,9,23;88:3,
10,13,15,19,22,24;
89:4,15,18,20;90:4,6,
10,12,15,19,21,24;
91:10,15,19,25;92:3,7,
9,17
**courtroom (9)**
5:18,18,21,23;9:8;
33:5;46:9;64:24;87:11
**courts (1)**
71:12
**Court's (5)**
51:17;73:22;83:6;
91:1,8
**covers (1)**
6:5
**crazy (1)**
12:19
**creating (2)**
22:19;24:2
**creditor (3)**
46:24;59:4;91:4
**creditors (8)**
13:3;44:19;58:11;
59:14;62:17;65:18;
91:3,6
**cross (1)**
83:11
**crowd (1)**
70:2
**culture (1)**
23:8
**currently (1)**
65:3
**customer (1)**
88:2
**cuts (1)**
41:21
**cycle (1)**
83:13

---

**D**

**damage (1)**
30:3

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 97 of
109

**date (20)**
 10:7;24:20;25:7,25;
 26:12;27:1;31:15;32:6,
 6,7,9,11,20;55:10;
 58:23;59:16;60:7,7;
 66:7;81:14
**dates (3)**
 9:9,15,17
**day (15)**
 6:8;12:20,20;14:23;
 25:7,25;27:5;28:23;
 29:6;57:22;59:23;
 60:22;66:19;75:20;
 81:17
**days (21)**
 17:4,22;22:8,10;
 24:19;27:15;28:17;
 35:7;65:1,23;68:18;
 81:14;82:8,22,25;83:6,
 7,7,10,23,24
**days' (1)**
 83:6
**deadline (16)**
 23:22,24;24:1,2,14;
 25:12;28:16;29:6;
 81:16,18,22;82:8,15,
 25;83:8,9
**deadlines (1)**
 82:12
**deal (13)**
 8:18,19;10:9;36:2;
 45:8;52:15;60:25;
 69:23;72:3;79:23;80:3;
 82:11;86:6
**dealing (3)**
 58:4;65:1;87:19
**dealt (2)**
 27:13;91:9
**death (1)**
 20:6
**debt (2)**
 39:19;58:10
**debtor (26)**
 6:2,4;7:14,15,16,16;
 20:5;22:7,12,16,18;
 31:23;43:24;44:11;
 48:8;54:7;56:2;58:5;
 61:7;62:17;65:8;66:20;
 77:19;90:15;91:16,17
**debtors (23)**
 10:4;14:5;17:6,8;
 18:6,10;19:11;24:15;
 30:8;38:1,3;39:21;
 41:1;42:6,16;49:1;
 53:18;65:15;78:9,14,
 23;89:9;91:2
**debtor's (17)**
 13:13;14:15;15:5,24;
 18:17;20:22;21:11;
 25:5;29:3;34:9;35:11;
 37:9;46:14;49:24;
 51:15;76:18;79:4
**decide (4)**

 6:20;36:14;55:9;
 60:20
**decided (1)**
 49:18
**decides (1)**
 45:20
**deciding (1)**
 54:10
**decision (4)**
 54:23;55:11,25;66:7
**decisions (4)**
 57:20;63:18;66:8,16
**decisive (1)**
 66:10
**declaration (5)**
 41:2,3;56:15;69:17;
 85:21
**deemed (3)**
 22:17;70:23;80:15
**default (2)**
 45:1;85:14
**defective (1)**
 19:6
**defense (1)**
 47:14
**defer (5)**
 30:10;33:18;59:21;
 63:14;66:8
**deferral (1)**
 31:15
**deferred (4)**
 29:10;31:13;37:2,13
**deferring (1)**
 30:24
**Delaware (1)**
 57:20
**delay (3)**
 67:13,13,13
**delete (1)**
 86:15
**deleting (1)**
 20:18
**delivery (1)**
 73:19
**demand (9)**
 16:11,16,18;18:13,
 19;19:11,17,17,25
**demands (1)**
 18:10
**Dennis (2)**
 5:6;53:7
**denying (1)**
 63:23
**depart (1)**
 51:14
**departed (1)**
 27:3
**deputy (2)**
 9:8;87:12
**describe (1)**
 18:17
**designated (1)**
 83:19

**designed (1)**
 51:13
**details (3)**
 7:19;36:5;73:8
**determines (2)**
 35:17;85:1
**deviations (1)**
 9:13
**dice (1)**
 44:6
**die (1)**
 85:10
**difference (2)**
 8:10;60:13
**differences (1)**
 8:17
**different (11)**
 6:2,5;19:15;26:6;
 37:19,19;47:14;49:25;
 51:24;58:2;78:1
**difficulty (1)**
 87:17
**digest (1)**
 54:4
**DIP (2)**
 48:8;90:2
**direct (2)**
 74:4;86:5
**disagree (2)**
 7:12;78:15
**disagreement (1)**
 28:24
**disagrees (2)**
 18:25;77:19
**disclose (4)**
 40:25;41:4;51:20;
 75:21
**disclosed (1)**
 49:16
**disclosure (11)**
 42:1;45:5;49:14;
 50:19,21;51:3,7,15,18;
 75:24;92:16
**discovered (1)**
 5:17
**discovery (2)**
 79:13,14
**discretion (3)**
 75:5,7,14
**discuss (5)**
 32:8;37:9;56:10;
 67:22;92:2
**discussed (3)**
 52:8;72:22;75:1
**discussion (2)**
 37:12;91:19
**discussions (3)**
 30:6;38:4;91:23
**disinterested (7)**
 45:5;46:23;47:1,20;
 48:10;49:19;50:15
**disinterestedness (2)**
 46:17;48:19

**dispute (4)**
 56:11,16;79:14;85:1
**disseminated (1)**
 8:23
**distinction (1)**
 60:11
**district (3)**
 48:25;71:12,20
**districts (1)**
 81:3
**docket (5)**
 6:9;11:6;31:4;38:2;
 70:5
**document (8)**
 17:11;25:9;74:1,2;
 75:3,5,6,11
**documentation (4)**
 16:17,24;20:19;35:2
**documents (6)**
 7:16;72:13;74:8,12,
 14;75:10
**dollar (2)**
 30:12;49:18
**dollars (10)**
 21:1,3;39:24;43:2,
 17,25;44:3;46:20;65:4,
 5
**domain (2)**
 47:13;48:9
**done (14)**
 6:21;10:9;13:15;
 17:10,15,16;24:3;
 39:18;58:23;79:6,23;
 81:1;85:17;87:17
**double (1)**
 72:24
**doubt (1)**
 66:21
**down (10)**
 17:21;50:20;53:10;
 59:23;62:3,4;77:21;
 78:11;89:10;90:22
**download (1)**
 6:11
**downside (3)**
 63:1,4,9
**draft (1)**
 86:10
**drafted (1)**
 74:20
**due (2)**
 6:17;63:9
**dummy (1)**
 23:15
**Dunne (24)**
 52:21,23;53:3,5,7,7,
 9;54:13,15;55:23;56:9;
 57:14,23,25;58:7,9,14;
 59:4,8,13,21,25;60:4;
 65:2
**Dunne's (1)**
 61:13
**during (1)**

 62:8
**duty (1)**
 73:23

**E**

**earlier (5)**
 65:11;82:10,11;
 89:25;91:7
**early (3)**
 6:23;24:3;27:1
**Earth (1)**
 65:10
**earthshaking (1)**
 86:23
**easier (2)**
 10:23;67:12
**easy (3)**
 54:24;67:4;70:21
**ECF (9)**
 70:24;71:10,11,17,
 18,22;72:1,21;73:16
**economy (1)**
 74:11
**effect (3)**
 19:10;67:14;76:9
**effecting (1)**
 11:24
**effective (1)**
 44:13
**efficient (1)**
 10:2
**effort (2)**
 44:4,10
**eight/fourteen/seven (2)**
 82:10,14
**eighteen (1)**
 65:4
**either (12)**
 9:8,15;11:16;14:24;
 46:21;62:10;65:16;
 66:6;67:1,1;79:15;
 88:14
**electronic (1)**
 87:5
**eleven (1)**
 65:14
**else (7)**
 9:6;32:3;38:12;
 54:20;61:14;66:24;
 87:10
**else's (1)**
 35:25
**email (15)**
 73:18;74:6;75:4,19,
 20,21,24,25;76:1,3,8,
 23,25;77:1;87:11
**emergency (3)**
 77:16;78:23;87:6
**eminent (1)**
 47:13;48:9
**employed (3)**
 47:6;48:13,18

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 98 of
109

**employee (5)**
29:12,25;48:18;
89:21,22
**encourage (1)**
8:16
**end (7)**
6:8;9:16;26:14;
53:19;75:2;80:21;
85:23
**endeavor (1)**
92:14
**Energy (1)**
13:22
**enough (4)**
6:19;55:22;90:19,23
**ensure (1)**
92:15
**enter (2)**
58:1;80:11
**entered (4)**
60:6;65:7,7,10
**entertain (1)**
11:7
**entire (9)**
39:10,11,11,13,15,
20;75:6,10;86:15
**entitled (2)**
71:16;74:1
**entity (2)**
15:15;39:25
**entry (6)**
17:22;27:6;38:3;
70:5;76:15,19
**equity (10)**
54:17;58:25;59:2,14,
16;65:3,3,5,17,19
**ESC (2)**
31:13;33:10
**Especially (2)**
55:22,25
**essence (1)**
72:12
**essentially (1)**
27:18
**estoppel (2)**
58:24;59:18
**et (4)**
77:20,20;78:25;85:2
**even (9)**
10:21;11:21;15:13;
18:20;55:17,21;56:3;
67:7;71:11
**event (5)**
10:16;36:19;49:16;
50:20;84:25
**eventually (1)**
71:23
**Eversheds (2)**
41:17,18
**everybody (7)**
5:22;7:2;8:24;16:21;
22:16;72:17;75:20
**everyone (9)**

5:8;31:12;35:25;
36:4;57:10;64:24;68:6;
91:21;92:21
**everyone's (2)**
23:12;67:24
**eviction (1)**
47:13
**evidence (4)**
55:12;62:9,10,13
**evidentiary (3)**
56:5;85:20;87:6
**Exactly (8)**
18:22;21:7;26:10;
40:6;48:3;58:25;83:14,
18
**example (4)**
7:25;8:24;60:24;
71:14
**exceeds (1)**
39:6
**Excellent (1)**
52:16
**except (1)**
34:5
**exception (1)**
85:5
**excess (1)**
39:8
**exchange (3)**
13:18;14:15;90:1
**exciting (1)**
70:3
**excluded (1)**
20:10
**exclusivity (4)**
60:2;61:7;63:2,3
**excuse (5)**
17:23;36:23;52:2;
73:24;82:13
**execute (1)**
7:16
**expect (6)**
16:22;68:22;72:3;
85:5;87:11;92:3
**expectations (1)**
46:3
**expedited (5)**
77:17,18;78:12,23;
79:17
**expenses (1)**
39:8
**experts (3)**
55:3;56:4;66:12
**explained (1)**
52:3
**extend (1)**
63:3
**extension (2)**
80:2,14
**extent (10)**
7:18;13:2;48:12,18;
51:25;54:17;56:9;62:3;
75:23;81:19

**extra (4)**
23:20;28:2;44:4;
90:8

# F

**facetiously (1)**
86:19
**facie (1)**
23:13
**fact (5)**
8:10;12:18;21:2,6;
80:15
**facts (1)**
62:1
**factual (1)**
19:5
**failure (1)**
33:18
**fair (1)**
27:15
**fall (1)**
86:22
**fan (2)**
85:21;86:5
**far (2)**
13:19;89:9
**favorite (1)**
34:18
**FEBRUARY (5)**
5:1;24:11;60:11;
63:19;78:5
**Federal (1)**
75:23
**fee (3)**
39:7;42:12;46:22
**feed (1)**
5:19
**feel (1)**
71:7
**feels (2)**
43:20;44:14
**fees (3)**
39:8;43:22;50:14
**felony (1)**
72:15
**FERC (1)**
47:13
**FERS (1)**
71:13
**few (3)**
66:17;73:15;90:13
**fiduciary (1)**
62:18
**fifteen (2)**
12:19;68:6
**fiftieth (4)**
25:7,25;26:19;27:5
**fifty (6)**
24:19;27:15,16,17,
25;43:23
**fifty's (1)**
27:16

**Figured (2)**
34:10;71:25
**file (19)**
6:9,10,11;9:21;17:6,
24;24:20;39:7;42:12;
49:2;57:19;76:22;
78:24;79:3;81:9,20;
83:25,25;84:5
**filed (20)**
6:5;16:3;17:23;
22:25;31:7;38:5,6;
44:20;52:24;58:20;
64:12;69:16;70:7;71:1,
13,24;72:14;78:5;
81:15;82:16
**files (1)**
22:4
**filing (5)**
6:23;17:10;76:10,15;
88:25
**final (3)**
30:24;90:14;92:12
**find (5)**
25:10,14;26:14;
58:12;69:20
**finding (1)**
25:9
**fine (28)**
10:6,16,17;11:15;
12:2,8,17,23;14:17;
15:7;16:16;21:8;22:7;
28:5;32:4;35:19;40:22;
41:13;42:2;51:1;53:1,
3;54:14,18;85:16;
88:21,23;89:3
**finish (1)**
33:6
**finite (1)**
30:19
**fire (1)**
31:21
**fire- (1)**
30:2
**fire-damage (1)**
31:11
**firm (6)**
41:18,20;47:3;48:24,
24;49:2
**firms (3)**
42:12;56:6;72:6
**first (10)**
8:13;10:23;14:23;
25:13;26:25;34:21;
36:15;37:14;66:19;
71:9
**first-day (1)**
8:20
**first-month (1)**
8:21
**fit (1)**
51:13
**five (1)**
16:1

**five-minute (1)**
67:22
**fixed (1)**
69:6
**flag (1)**
91:8
**flesh (1)**
39:23
**floor (1)**
90:17
**fly (1)**
85:13
**folks (1)**
81:19
**follow (7)**
47:18;72:24;75:16;
76:12,16;85:9,10
**following (4)**
28:17;75:9;79:19;
92:19
**footer (7)**
71:14,15,17,18,25;
72:1,14
**footers (2)**
71:20,23
**forgotten (1)**
91:22
**form (5)**
22:4;52:10;53:24;
56:13;73:11
**formal (3)**
6:11;63:11;91:23
**formed (1)**
92:2
**forward (3)**
7:18;8:21;15:13
**found (5)**
7:8;8:1;25:2,15;
89:16
**four (4)**
14:23;15:9,25;37:13
**fourteen (1)**
28:19
**FRANCISCO (1)**
5:1
**free (2)**
50:3,5
**fresh (1)**
65:11
**front (4)**
43:6,11;54:16;71:24
**FRP (1)**
85:6
**frustration (2)**
7:9;8:5
**fully (2)**
85:5,11
**function (1)**
6:18
**fundamental (2)**
8:5;56:22
**fundamentally (1)**
57:12

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 99 of
109

**funny (1)**
69:14
**further (4)**
14:11;50:20;55:3;
62:4
**fuss (1)**
82:4
**fussed (1)**
53:25
**fussing (2)**
7:7;53:24
**future (7)**
6:24;7:19;8:20;
59:16,23,24;66:11

**G**

**gave (1)**
59:5
**general (8)**
9:24;26:11;47:3;
48:8;52:20;70:17;
83:22;85:5
**generalized (1)**
84:4
**generally (3)**
19:11;84:15;86:4
**gentleman (2)**
61:9;62:20
**gentlemen (1)**
55:20
**gets (3)**
66:11;71:17;78:11
**given (2)**
26:7;63:11
**gives (1)**
63:12
**giving (1)**
8:19
**glad (1)**
31:25
**GLASER (6)**
36:23,24;37:3,5,8,16
**goes (2)**
81:15;91:17
**Good (17)**
5:7;6:18,18;9:25;
10:3;14:4,6;21:8;27:4;
33:2;40:23;55:20,22;
64:20;72:19;86:13;
87:19
**Goren (59)**
14:4,4,7;18:6,6,9,13,
16,19,22,24;19:9,14,
19,23;20:3,5,7,11,13,
15,17;21:5,7;22:1,2,5,
20,22,24;23:3,5,7,9,16,
18,20;24:1,5,8,18,23,
25;25:4,12,21;26:4,8,
17,19,21,23;27:2,5,11,
19,21;28:1,6,9
**Goren's (1)**
14:2

**Gotshal (7)**
10:4;14:5;38:1;
48:24;53:17;58:20;
70:5
**govern (1)**
86:13
**Governor (2)**
64:20;66:24
**grant (6)**
54:24;55:17;57:13;
58:18;63:6;80:11
**granted (2)**
13:15;58:16
**granting (1)**
34:4;63:23;67:14
**grants (1)**
80:5
**GRAY (10)**
33:1,3,4,9,9,12,14,
17,20,25
**great (4)**
25:14,18;38:15;
87:21
**Gross (10)**
87:25,25;88:1,4,12,
14,15,17,21;89:3
**ground (1)**
52:4
**group (3)**
30:17,19;64:8
**guess (11)**
7:1;14:25;20:21;
34:4;48:5;50:12;51:13;
54:6;56:5;66:4;86:9
**Gump (1)**
64:6
**gurus (1)**
54:22
**guys (2)**
54:13;61:3

**H**

**habit (1)**
7:4
**halfway (1)**
26:1
**hand (1)**
57:11
**handle (1)**
69:24
**handled (2)**
26:11,11
**hang (1)**
62:7
**happen (3)**
65:21;66:11;80:10
**happened (3)**
19:7;36:25;63:8
**happens (3)**
48:25;63:5;80:17
**happy (8)**
22:20;23:16;26:9;

27:5;36:5;55:23;70:20;
86:20
**hard (1)**
58:13
**Hawkins (4)**
31:20,20,25;32:2
**head (2)**
64:17;83:14
**header (1)**
72:1
**heads (1)**
8:20
**hear (2)**
5:18,21;54:10,12;
64:23;83:6;90:6
**heard (19)**
5:24;12:5;13:13;
14:14;15:5,23;21:11;
28:5;29:2;31:18;34:9;
35:11,13;52:7;54:20;
85:15;86:25;88:6;
92:18
**hearing (32)**
5:13;6:13,14;10:5,
15;22:18;26:25;30:10,
11;31:15;37:13;54:11;
56:5,24;63:17;66:5;
68:4;69:4;80:13;81:14;
82:4,9;83:8,10;85:1,3;
87:6;88:5,17;89:25;
91:1,2
**hearings (1)**
6:22
**heat (1)**
21:23
**heavy-duty (1)**
50:25
**held (1)**
90:16
**help (5)**
55:9,11;56:16;66:12;
69:9
**helpful (3)**
12:17;56:12;87:20
**here's (3)**
22:9;74:1;79:5
**Hi (1)**
33:1
**Hill (1)**
31:20
**hired (1)**
49:2
**hires (2)**
48:8,9
**hiring (1)**
47:9
**hit (2)**
46:2;64:17
**hoc (4)**
64:8;65:19;92:13,13
**hold (1)**
53:18
**holding (2)**

32:11,19
**home (1)**
10:19
**homework (1)**
81:2
**Honor (81)**
10:3;14:4,7,19;
17:19;18:7;19:9;22:2;
23:5;24:1,18;25:12;
26:8,10;27:6;28:6,13;
31:21;32:25;35:15;
36:22,23;37:5,16;
38:15;40:6,17,18;41:9,
10,25;43:4,21;45:3;
46:5,11;48:4,12;52:5,
18;53:5;54:15;55:24;
56:9,19;57:7,11,14,25;
58:19;59:18;60:10;
61:10;62:16;63:9;64:4,
9,15,15,18;65:3,19;
67:3;70:5;72:19;77:25;
83:4;86:8;87:3,22,25;
88:4,8;89:3,8;90:5,13,
20;91:12;92:5,12
**Honorable (1)**
5:6
**Honor's (3)**
45:17;89:14;90:9
**hope (6)**
10:14;41:15;72:21;
86:23;90:20,23
**hoped (1)**
54:2
**hopefully (2)**
73:20;91:16
**hopes (1)**
64:25
**hour (1)**
53:13
**hours (4)**
57:18;65:14;82:3;
88:11
**housekeeping (2)**
88:5;89:8
**huge (1)**
85:24
**huh (1)**
34:16
**hundred (1)**
18:2

**I**

**idea (2)**
5:21;26:12
**identified (1)**
46:11
**identifying (1)**
72:14
**imagine (2)**
58:13;64:9
**impair (1)**
59:1

**impermissible (1)**
70:24
**implementing (2)**
56:20;71:15
**important (1)**
55:10
**impose (1)**
49:5
**imposed (3)**
49:7,8;61:19
**impossible (1)**
8:2
**imprimatur (1)**
63:12
**improperly (2)**
20:9;80:5
**inclination (1)**
51:17
**inclined (1)**
16:20
**include (4)**
16:17;48:19;76:24;
84:13
**included (1)**
75:4
**includes (3)**
18:1;14;78:23
**including (2)**
20:19;76:18
**increase (4)**
11:21,23,24;74:13
**increased (1)**
12:6
**increasing (1)**
11:13
**increments (1)**
44:24
**indecisive (1)**
66:9
**indeed (1)**
91:7
**indicate (1)**
81:4
**indicated (2)**
31:7;91:2
**indiscernible (1)**
27:9
**individual (1)**
85:22
**infancy (1)**
64:19
**inform (2)**
77:20;90:14
**information (6)**
8:11,12,23,25;67:24;
72:15
**informative (1)**
54:3
**initial (2)**
10:5;90:15
**insist (1)**
6:25
**insolvent (1)**

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 100
of 109

65:16
**installed (1)**
46:8
**instance (1)**
60:5
**instead (2)**
42:19;65:22
**insurance (5)**
12:24;13:8,10,14;
90:1
**Integrity (3)**
11:12;12:7;90:1
**intend (2)**
7:6;91:24
**interest (7)**
47:25;49:9,10,16,24;
64:10;74:11
**interim (6)**
11:13;12:1;28:10,11;
29:3;62:8
**interrupt (1)**
38:7
**interview (1)**
90:15
**into (1)**
64:16
**invitation (1)**
44:10
**involved (1)**
92:14
**involves (1)**
73:8
**issue (23)**
19:5;30:11,24;31:24;
32:5;39:3;45:4,9;
46:10,12;48:14;49:13;
55:15;56:19,22;62:6,
13;66:23;79:21;88:5,9,
10;90:25
**issues (8)**
13:2;30:1;38:20;
42:5;50:19;60:16;
66:21;87:4
**item (9)**
11:11;12:8;13:14;
14:18;30:2,6;38:3;
42:25;70:6
**items (3)**
6:5,13;16:10

**J**

**jail (2)**
50:3;72:16
**Jane (1)**
89:9
**Jessica (2)**
37:25;70:4
**job (2)**
55:20;66:8
**Jobs (1)**
41:21
**joinder (1)**

64:12
**joined (1)**
84:17
**judge (3)**
63:16;66:10;79:11
**judges (1)**
66:9
**judgment (1)**
83:21
**June (1)**
24:12

**K**

**Kane (1)**
85:7
**Karotkin (137)**
6:15;10:3,4,10,14,18,
22;11:1,5,10,15,20,23;
12:1,3,5,11,13,22,25;
13:6,8,11,18;14:2,18;
15:1,9,15,21;16:2,9,13,
25;17:12,14,16,18;
21:14,17;28:10,12,21;
29:1,8,11,14,16,18,21,
23,25;30:6,14,16,18,
20,23;31:6,10;32:4,7,
11,15,17,19,24;34:6,
11,12,14,17,20,24;
35:1,6,21;36:1,7,10,13,
16,19;37:14;53:10,11,
15,17,17,22;55:6,12,
17;56:19;57:2,5;58:17;
60:25;61:10,13,16,18,
24;62:6,11,15,22,24;
63:4,7,9;64:2;67:3,7,
10,12,16,18,21;68:9,
13,14,19,24;69:8,10,
13,22,24;70:2;88:23;
89:1,24;90:7;91:20,23;
92:1
**keep (10)**
10:22;41:7,23;42:20,
24;44:9;46:7;57:17;
73:10;77:2
**keeping (2)**
67:24;70:2
**Kim (13)**
9:9;12:19;71:3;
87:15;89:8,9,16,19,21;
90:5,6,9,11
**kind (17)**
9:24;26:6;27:20;
35:24;49:3,6,7;52:19;
56:11;59:17;60:17;
65:25;66:2;72:4;76:3;
79:16;84:19
**kinds (2)**
47:5;86:3
**Klein (1)**
88:1
**knew (1)**
66:20

knocked (1)
53:13
**knowable (1)**
59:9
**knowledgeable (1)**
55:4
**known (4)**
47:6;59:17;75:19;
84:20

**L**

**l5 (3)**
58:21;61:19;67:4
**laches (2)**
58:24;59:18
**Laffredi (48)**
40:11,17,17;41:7,9,
12,25;43:18,21;44:7,
15,17;45:3;48:5,12,17,
22;49:8,13,20,22;50:1,
4,6,8,11,16,18,23;
51:11,17,22;52:5,10;
87:2,3,3;90:13,20,
23,25;91:12,16;92:4,5,
8,12
**laid (1)**
43:12
**language (14)**
14:10;15:16;19:10,
19,23;20:19;70:25;
73:4;75:4;77:17,21;
78:21;80:21;84:25
**large (3)**
44:1;50:25;74:12
**last (9)**
7:5;9:7;36:19;57:21;
66:17;80:4;86:9;91:1;
92:18
**last-minute (2)**
82:11;88:24
**later (10)**
17:22;25:6;31:15;
32:6;34:3;60:9;63:10;
66:7;72:23;89:12
**law (12)**
17:5;21:20;41:20;
47:3;56:17;60:4;69:15;
72:8;73:9;78:20;85:7;
87:14
**lawyer (3)**
51:9;54:2;60:22
**lawyers (4)**
47:9;56:7,14;72:4
**lay (1)**
52:3
**layer (1)**
22:21
**laying (1)**
55:20
**lays (1)**
43:15
**learn (3)**

56:4;63:15;71:17
**least (6)**
8:22;9:4;63:1;70:13;
80:19;81:14
**leave (3)**
32:11,19;77:15
**leaves (1)**
36:11
**leaving (5)**
70:1;71:7;81:21;
82:21,24
**lecture (1)**
51:19
**ledger (1)**
58:25
**left (5)**
35:21;42:4;53:14;
68:1;69:10
**legal (2)**
61:4;62:12
**legitimate (2)**
20:8;61:25
**lengthy (6)**
42:24;74:1,2,7;
75:10,11
**lien (4)**
14:19;15:6;86:3;
90:2
**likely (1)**
65:17
**line (4)**
46:7;77:18,21,21
**LIOU (113)**
36:22;37:25,25;
38:10,13,15,24;39:3,
13,15,17;40:2,4,6,9,12,
14,19,21,24;41:6,15;
42:3,5;43:4,6,10,14;
45:7,9,12,16,22,24;
46:1,5,7,10;47:11,17,
21,23;48:1,3;50:2;
51:2,5;52:2,9,13,16,18;
69:24;70:1,4,4,12,18,
22;71:19;72:11,19,25;
73:2,4,13;74:10,16,18,
20,24;75:17;76:4,14;
77:3,5,7,9,12,14,25;
78:4,10,14,17;79:10,
25;80:16,19,23;81:6,
11,19,24;82:2,6,15,19,
21,24;83:4,14,18;84:2,
8,10,22;85:16;86:8,17,
21;87:10,21
**list (21)**
18:1,3,4,9;19:3,4,17,
20,21,22;20:10,10,24;
21:1;28:9;41:16,23;
46:2;70:19;71:3;75:11
**listed (3)**
41:16;91:4,4
**listen (2)**
69:5;84:11
**listing (1)**

17:7
**litigation (2)**
8:9;42:9
**little (8)**
5:22;21:19;25:10;
27:24;39:4;42:23;
53:14;54:5
**live (2)**
86:4,24
**LLC (1)**
25:6
**local (7)**
28:18;31:13;33:10;
71:23;72:5,13;79:17
**long (7)**
25:24;47:20,22;
57:18;71:10;74:14;
88:24
**longer (1)**
68:5
**look (11)**
42:19;43:8,11,14;
58:24;65:15;73:4;
76:21;79:20,21;86:18
**looking (9)**
26:18;42:19,22;43:9;
69:7,15;78:1,5,7
**looks (1)**
65:8
**loop (1)**
56:3
**lost (3)**
19:5;18;37:11
**lot (9)**
8:11,12,23,25;12:20;
54:3;74:15,16;85:23
**lots (2)**
8:4;83:12
**love (1)**
60:5
**lower (2)**
43:5,20
**LR (1)**
78:24
**luck (1)**
86:13

**M**

**Macdonald (2)**
35:14,16
**machine (1)**
46:8
**mad (1)**
10:20
**magic (1)**
59:8
**Mail (4)**
73:19;74:4;75:6,22
**main (4)**
6:9;36:19;50:18;
51:18
**mainly (1)**

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 101
of 109

27:7

**maintain (1)**
13:14

**major (1)**
73:22

**makes (4)**
28:2;58:17;60:10;
69:7

**making (4)**
8:10;75:19;85:25;
91:17

**management (26)**
35:23;36:9;37:17,18,
20,21;53:1,3,18;68:2;
69:11,12,13,15,18,19,
21;70:6,13,18,23;
71:15,16;86:11,12;
87:1

**Manges (4)**
10:4;14:5;38:1;70:5

**many (7)**
26:24;42:9,11;43:22;
44:5;49:4;74:12

**March (23)**
6:14,16,17,22;10:5,
12;24:11;27:18;29:10;
32:5;33:2;34:2;37:2,3,
14,15;60:12;63:17,19;
68:17,21;88:6;90:17

**mark (1)**
80:20

**market (5)**
57:5,9;58:3;65:3,4

**marketplace (1)**
63:18

**Martin (1)**
85:7

**match (1)**
25:16

**Mateo (1)**
88:18

**material (1)**
65:17

**matrix (1)**
91:4

**Matter (7)**
5:9;13:16;22:18;
31:18;47:12;66:6;89:8

**matters (6)**
6:7;8:19;13:1;41:22;
42:9;87:15

**Matthew (2)**
14:4;18:6

**may (22)**
5:12;8:4;20:8;24:12;
44:19;46:25;49:2;51:8;
56:3;58:4,6,7,8;66:14;
67:8,10;68:25;75:5;
78:1;85:2;91:4,9

**maybe (10)**
9:14;12:12;16:22;
19:5,5;36:5;54:22;
55:4;68:6;74:25

**mean (52)**
6:25;7:7;10:24;11:1,
6;16:18,20;18:20;19:4;
20:2,18,21;22:22;
24:18;27:4,16;28:24;
32:10,13;36:4;38:11;
43:19;44:8;45:5;49:21;
51:6,7,12;52:2;53:20;
54:1,21;56:7;57:19;
61:5;65:9;66:4,7,16;
67:3,7;68:22;73:1;
76:21;79:21;81:25;
86:18;87:14;88:7,11;
91:10;92:9

**means (1)**
17:8

**meantime (1)**
68:25

**media (2)**
7:6;31:2

**meet (1)**
79:14

**meeting (3)**
90:16;91:7,13

**members (3)**
30:10;31:14;33:21

**mention (1)**
61:10

**mentioned (1)**
72:23

**merits (3)**
62:19;64:16;66:2

**method (1)**
74:7

**mic (1)**
5:13

**microphone (1)**
5:11

**middle (1)**
62:20

**might (13)**
5:22;13:25;18:20;
32:13;46:25;56:23,25;
64:9;67:25;73:8;78:4;
80:9;85:24

**might've (3)**
24:21;27:23;37:11

**Mike (1)**
64:6

**Milbank (2)**
53:8;56:11

**million (12)**
21:1,2,2,3;30:12,14;
43:2;45:14,15,17,23;
59:6

**mind (9)**
8:9;10:18,22;27:15;
37:20;57:17;65:12;
85:12,13

**mindful (1)**
8:10

**minding (1)**
24:10

**mine (2)**
70:10;71:5

**mini (1)**
54:11

**minute (6)**
19:4,22;34:15;45:10;
54:8;61:6

**minutes (2)**
12:19;68:6

**misaddressed (1)**
19:18

**misplaced (1)**
19:18

**miss (1)**
31:5

**missed (2)**
24:21,22

**mistake (2)**
43:8;69:22

**mistaken (1)**
18:1

**modern (1)**
75:25

**modification (1)**
21:13

**modified (1)**
70:24

**modify (1)**
30:9

**moment (4)**
5:19;6:14;12:4;22:2

**Monday (6)**
6:24;9:19,22;31:7;
53:25;90:17

**money (4)**
44:23;51:1,10;58:10

**monitor (1)**
76:10

**monitoring (1)**
77:14

**Montali (1)**
5:6

**month (7)**
9:12;39:10;43:17,25;
45:13,20;63:1

**monthly (6)**
39:6,8,15,22;43:15;
45:13

**months (4)**
9:10,14;34:16;45:20

**more (22)**
5:23;6:25;7:8,9;8:6,
12,22;10:2;13:25;14:1;
20:25;28:23;29:6;
35:24;42:15;44:10;
59:21;60:15;70:20;
76:17;80:24;92:3

**morning (8)**
5:7;6:21,23;10:3;
14:4,6;36:21,22

**morning's (1)**
6:3

**most (7)**

10:14;27:18;56:8;
64:3;71:13;75:25;
80:17

**motion (100)**
7:3,10,13,13,14,25,
25;8:1,3,11,13,24;
11:13;12:7,24;13:8,10,
13,19;14:11,15,16,19;
15:5,6,7,10,23,24;16:4,
7,11,14;17:19,21;
21:16;25:15,19,21;
27:24;28:5;29:3;30:1,
1,21,23;31:1,8;34:5,9,20;
35:11,16,17;36:6;38:2,
5,6;42:20,22;43:9,10,
12;52:7;53:1,21;54:2;
63:12,23,24;64:10;
66:3;68:17;69:11,12,
13,15,18,19,21,24;
70:6,7;78:24;81:8,13,
15,20;83:2,5,20,21,22,
25;88:1,2,7;89:5,13,13;
91:2

**motions (17)**
7:18;8:14;10:15,23;
12:14;34:18;37:2,13;
42:24;52:25;81:4;
82:12;83:12;84:4,4;
85:6;86:4

**movant (2)**
77:20;78:8

**move (6)**
6:22;8:20;10:16;
32:7,9;88:6

**moved (1)**
37:14

**moving (6)**
8:7;9:2;10:5;21:12;
46:10;84:14

**much (6)**
8:1;42:14;52:18;
59:15;73:9;76:22

**must (8)**
12:19;16:11,15;17:4,
24;25:5;76:8,24

**myself (1)**
63:22

**N**

**nail (1)**
64:17

**name (2)**
5:15;64:5

**namely (1)**
91:3

**national (5)**
28:19;86:12,14,16,
19

**naturally (1)**
80:7

**near (2)**
5:11;75:2

**necessarily (1)**
9:2

**necessary (4)**
7:19;20:18;35:18;
46:14

**need (21)**
8:18;9:1;19:1;23:10;
36:6;53:1;54:9,17,25;
55:12;57:23,24;60:21;
62:22;66:12;67:2;
74:12;76:6;79:9;80:14;
91:9

**needed (1)**
49:1

**needing (1)**
76:19

**needs (5)**
5:24;8:23;56:15;
75:11;85:4

**negligent (1)**
7:22

**negotiate (1)**
32:14

**neophyte (1)**
60:16

**new (3)**
12:18;57:20;59:16

**newer (1)**
65:11

**news (2)**
64:20;66:15

**Newsom (1)**
64:21

**next (11)**
6:13;14:9;10:10;12;
14:18;21:15;28:9;35:7;
40:21;46:12;78:12

**ninety (1)**
65:23

**nitpick (1)**
28:14

**nits (1)**
71:6

**nobody's (1)**
49:12

**NOL (11)**
7:25;8:1;24;35:22;
36:6,13,14;53:21;
59:19;60:6;68:17

**NOLs (1)**
59:1

**None (3)**
15:7;29:5;59:8

**nonissue (1)**
16:20

**normal (4)**
6:12;51:23;82:12;
83:2

**north (2)**
65:4,5

**notable (1)**
76:17

**note (2)**

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 102
of 109

76:18;92:12
**noted (2)**
14:8;89:9
**noteholders (1)**
64:9
**notice (20)**
7:2;17:6;18:16;19:5,
12;20:1;22:12;39:7;
60:7;63:11,11;73:19;
76:8,11,16;83:7;85:1,
2;91:6,17
**noticed (7)**
19:25;81:13;83:5;
85:6,11,14;90:3
**notices (2)**
11:8;17:11
**noticing (4)**
25:5;77:1,9;89:17
**notification (1)**
73:18
**notified (2)**
71:3;78:25
**notify (1)**
79:23
**notion (2)**
8:5;26:5
**notwithstanding (1)**
72:13
**number (33)**
7:17;11:11;12:23;
13:15,17,18;14:18;
15:9;16:1;18:2;21:4;
29:11,12,16,23;34:13,
15;35:22,23;36:8,25;
37:1;38:3;43:20;45:1;
58:3;59:8;62:9;64:19;
70:5,6;72:5;88:1
**numbers (4)**
25:16;27:16;43:19;
44:9
**nunc (1)**
66:2

## O

**object (6)**
17:24;18:3;19:1;
21:4;22:7;28:17
**objected (2)**
22:16;89:23
**objection (30)**
15:13;16:25;17:25;
18:24;22:25,25;29:6;
30:4;31:22;33:18;35:2;
37:6,8;38:5,6;40:10;
45:2;52:1;55:8;58:18;
64:13;67:14;70:7;81:5,
7,16,18,20;82:16;83:8
**objections (10)**
11:7;14:11,20,22;
16:3;28:13;30:21;38:8;
86:3;89:19
**objectors (1)**

88:1
**obligation (1)**
29:13
**observing (1)**
5:20
**obviously (5)**
26:5;33:23;42:14;
48:13;61:7
**occasion (1)**
60:17
**occupied (1)**
70:2
**occur (2)**
62:4;80:7
**occurs (1)**
44:5
**o'clock (2)**
68:8;90:17
**OCP (13)**
39:6,8,18,19,24;41:2,
16,23;42:6,10;46:13;
47:17;89:23
**OCPs (4)**
40:24;42:12;46:15;
50:3
**odd (1)**
27:16
**off (11)**
12:20;15:8;20:9;
52:10;53:13;65:17,22,
23;85:25;89:22,23
**office (5)**
38:5,19;39:1;44:18;
72:18
**official (2)**
6:9;11:17
**often (2)**
7:8,15
**omnibus (2)**
10:12;81:14
**once (2)**
18:9;82:7
**One (83)**
6:22;8:14;10:12;
13:21;15:13,15;16:10;
17:9;20:25;11:5,15,
18;22:2;24:6,17;25:8,
11;27:16;28:7,8,20,23;
29:6;34:5,11,18,21,22;
35:9,20;37:1,1,17,18,
19;40:20;41:14;42:21;
43:19;44:1;45:14,17;
46:20,20,22;48:11;
49:18;50:9,25;52:19;
53:2,12;54:2,2;56:13;
58:3;59:15;61:10,13;
62:9;25;63:10;65:10;
66:10,19;68:18;70:7;
71:2,9;73:9,24;75:7;
76:5;78:14;80:24;81:2;
86:10,10;87:10;88:14;
89:25;90:25;92:12
**one/seven (1)**

84:19
**one-on-one (1)**
74:21
**ones (6)**
17:4;29:10;50:25;
53:13,14;57:6
**only (16)**
7:20;11:1;13:21;
20:19;29:5;30:12,14;
37:18;38:5;46:15;62:6;
68:1;70:7;76:21;81:3;
87:4
**oOo- (1)**
5:3
**open (4)**
24:15;46:12;56:7;
91:20
**opening (1)**
37:12
**operate (2)**
27:8,12
**Operational (3)**
11:12;12:6;90:1
**operator (1)**
90:1
**operator's (2)**
13:18;14:16
**opinion (1)**
6:2
**opportunity (2)**
19:21;60:9
**opposition (3)**
30:2;31:11;84:1
**opt (4)**
71:1;73:7,15,18
**opt- (1)**
73:14
**opted (1)**
77:11
**opting (4)**
75:22;76:3,23;87:5
**opt-out (1)**
72:21
**Oracle (1)**
90:24
**oral (2)**
55:3;62:24
**order (73)**
5:4;7:9,15,19;8:2,3,
6,12,15,25;10:1;11:24;
15:17;17:23;19:23;
24:24,25;25:1,19,22;
27:6,15;28:1,16;29:7;
34:4,6;35:6,18;38:18;
39:5;43:6,14;52:10;
53:5,24;54:17;55:11;
60:6;62:4;66:1;70:13,
19,23;71:1,7,14,16;
72:7;73:6;74:3,5,5;
75:14;76:7,16,19,22;
78:2,5;79:1,6,20,20,21;
80:14;86:2;87:1,13,17;
89:22,23,24

**ordered (3)**
81:5,16;86:20
**orders (5)**
65:6;87:18;89:11,14;
90:2
**ordinary (10)**
36:3,11,16;37:22;
38:2;39:5;43:16;47:10;
49:7;52:7
**originally (3)**
9:11;14:23;31:1
**OST (1)**
78:24
**others (2)**
9:9;49:4
**Otherwise (5)**
11:18;42:9;81:5,16;
86:19
**ought (2)**
50:13,13
**out (46)**
7:23;8:17;9:11;10:1,
8;13:16;16:24;20:9;
22:22;26:14,14,17;
32:1;35:20;39:23;
43:12,15;48:25;51:16;
52:3;54:14;55:20;
58:12;62:12;63:18;
64:20;69:18;70:10;
71:1,25;73:15,15,18;
75:7,22;76:3,23;77:11,
21;78:13;79:15;86:7;
87:5;89:1;91:7,17
**outs (1)**
73:7
**outside (1)**
46:8
**outstanding (2)**
13:19;14:20
**over (17)**
6:1,16;11:9,19;32:5;
37:14;38:19;39:22;
45:21;53:14;62:7;
65:14;68:17;73:11;
84:24,24;85:18
**overflow (4)**
5:17,20,22,25
**overlooked (1)**
27:23
**overnight (2)**
72:4;73:19
**overrule (4)**
52:1;54:24;55:8;
86:14
**overruled (1)**
45:2
**overruling (1)**
38:11
**oversight (2)**
43:23;53:2
**overwritten (1)**
71:18
**owe (1)**

51:10
**owed (3)**
46:20;49:23;51:1
**own (2)**
22:6;24:10
**owned (1)**
49:18

## P

**pace (1)**
60:10
**PACER (1)**
6:10
**Pacific (1)**
6:24
**page (7)**
8:14;11:2,5;29:23;
73:5,12;84:3
**pages (2)**
7:2,3
**paid (2)**
28:23;39:25
**paper (3)**
8:7;74:6,8
**papers (3)**
6:16;9:2;67:7
**Parada (5)**
9:8,17;87:12,15;89:4
**paragraph (38)**
24:23;25:3,20,22,23;
28:2,3,15;39:4;43:2,5,
15;70:18,22;72:7,20,
23,23;73:24;75:2,18;
76:7;77:16;78:3,4,7,
22;80:1,4,4,19,21;81:4,
13;82:7;84:24;85:18;
86:15
**paragraphs (2)**
75:1;85:19
**parallel (1)**
28:18
**parent (1)**
47:8
**Park (1)**
90:21
**part (6)**
23:6;44:10,10;52:15;
59:25;86:18
**parte (2)**
91:20;92:10
**particular (3)**
41:3,16;89:5
**particularly (3)**
51:14;66:9;72:5
**parties (9)**
12:9;44:23;45:5;
70:20;73:18,25;74:12;
77:22;79:10
**partners (1)**
56:6
**parts (1)**
71:12

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 103
of 109

**party (12)**
8:17;17:24;38:6;
41:1;70:7;71:1;75:5,
12;76:7;78:22;84:14;
90:3
**party's (1)**
18:3
**pass (4)**
29:10;34:14,19;
35:22
**past (2)**
65:14;80:13
**Pause (1)**
83:3
**pay (3)**
33:18;39:21;65:17
**paying (2)**
15:16;63:15
**payment (2)**
15:10;40:25
**pending (3)**
11:7;12:9;42:9
**people (18)**
5:20;6:1;26:24;27:6;
30:19;33:24;53:19;
56:21;63:15;65:13;
73:15;74:8;75:21,25;
81:9;82:4;85:15,25
**per (5)**
43:17,25,25;45:13;
89:14
**percent (1)**
43:24
**perhaps (10)**
7:24;8:24;10:22;
18:13;19:17;44:10,11,
11;73:20;85:4
**period (3)**
12:1;22:7;62:8
**person (5)**
5:25;19:16;51:1;
76:2;87:14
**personal (2)**
67:23;68:6
**personally (1)**
7:9
**perspective (1)**
65:25
**persuade (1)**
60:23
**petition (7)**
15:17;17:4;24:20;
25:7,25;58:23;60:7
**PG&E (5)**
5:9;47:7;58:4;65:1,
15
**ph (5)**
69:17;83:23;87:14;
90:15;91:20
**phone (17)**
13:13;14:14;15:4,23;
21:10;28:5;29:4;31:17;
32:22,25;34:9;35:10,

12;52:7;79:24;86:25;
88:15
**phonetic (1)**
65:10
**phrase (1)**
78:11
**pick (2)**
44:1;47:13
**picked (2)**
11:14;74:25
**piece (2)**
34:5;45:1
**pinned (1)**
59:23
**pipeline (1)**
52:12
**place (3)**
8:13;11:21,23
**plan (11)**
55:15;57:7,12;58:20,
21;60:2;61:19;62:2,8;
63:3;67:5
**planning (1)**
9:5
**pleadings (2)**
8:6;71:24
**Please (1)**
5:8,15;68:12
**plenty (1)**
26:8
**pm (3)**
6:17;53:25;81:17
**podium (2)**
5:14;60:22
**point (14)**
5:23;18:9,24;47:2;
56:1;58:9,17;60:19;
61:8;84:18;91:12;92:5,
6,10
**political (1)**
66:23
**popping (1)**
41:8
**portion (3)**
31:3,8;33:24
**position (5)**
22:11;33:23;46:14;
52:25;57:25
**possibly (2)**
9:19;66:16
**post- (1)**
15:16
**posted (2)**
73:20;78:19
**power (1)**
65:21
**practical (1)**
26:20
**practice (1)**
44:13
**practitioners (1)**
72:5
**pre- (1)**

17:3
**prefer (4)**
9:16;16:23;22:15;
86:4
**preferable (2)**
9:17;86:6
**prejudice (1)**
56:20
**preliminary (2)**
5:10;6:7
**prepare (1)**
39:19
**prepared (5)**
7:8;38:18;62:18;
67:18,21
**preparing (1)**
69:14
**pre-petition (5)**
15:10;46:13,20;
49:18;51:1
**presented (1)**
56:12
**preserve (1)**
59:19
**presiding (1)**
5:6
**press (1)**
31:2
**presume (2)**
76:15;77:1
**pretty (1)**
91:24
**prevail (1)**
55:2
**preventing (1)**
49:9
**previously (1)**
13:22
**prima (1)**
23:13
**primarily (1)**
48:25
**Prime (4)**
20:21;25:6;73:20;
77:14
**principally (1)**
17:8
**principle (1)**
35:1
**principles (1)**
61:4
**prior (8)**
5:13;10:15;17:3;
51:6,7;81:17;82:8;
88:11
**pro (1)**
66:2
**probably (9)**
31:9;42:15;51:6;
52:11;67:25;70:25;
73:21;81:1;89:1
**problem (9)**
11:18;34:3;41:24;

48:22;50:20;54:19;
55:21;74:9;90:4
**problems (1)**
49:9
**procedural (1)**
28:12
**procedure (12)**
21:11,18,21;26:12;
27:7;68:2;71:22;78:25;
84:19;85:8;86:23;87:1
**procedures (28)**
6:12;16:2;22:6;
24:19,25;25:22;28:25;
36:9;39:19;43:15;
47:18;52:3;71:15,16;
76:17,20;77:19,23,24;
78:12,18;79:13;86:11,
13;87:6,7;89:13,13
**procedure's (1)**
43:12
**proceed (1)**
52:15
**proceeding (1)**
92:20
**proceedings (2)**
68:5;85:20
**process (1)**
63:10
**processing (1)**
20:22
**professional (14)**
37:22;39:6;41:3;
43:1,16;44:2,2,3,11;
45:19;46:2,22;48:13,
18
**professionals (14)**
28:23;29:4;36:3,12,
17;38:2;46:19;47:5,9;
49:6;51:8,19,20;52:4
**program (2)**
25:10;33:24
**programs (1)**
88:2
**prominent (1)**
48:24
**promise (2)**
9:4;46:6
**proof (5)**
22:4;23:12,12;26:5,6
**proofs (1)**
25:4
**proper (2)**
77:6;79:7
**properly (1)**
79:7
**Properties (1)**
85:7
**prophylactic (1)**
55:18
**proposal (3)**
22:8;28:15;65:1
**propose (2)**
54:15;65:22

**proposed (25)**
8:15;9:9,15;18:17,
25;24:24,25;25:5,19;
29:7;38:18;39:5;42:7,
14,17;43:6,24;52:3;
70:25;71:14;72:7;78:2;
79:1;80:20;89:11
**proposing (2)**
24:18;83:9
**protect (1)**
62:16
**protections (1)**
13:24
**provide (1)**
44:17
**provided (1)**
59:17
**providing (2)**
41:18,20
**provision (7)**
16:24;39:4,17;74:20;
75:19;77:19,22
**published (3)**
77:23,23;86:1
**pulling (1)**
31:3
**purpose (1)**
49:9
**purposes (3)**
13:14;20:22;83:12
**pursuant (1)**
46:16
**push (1)**
26:17
**put (11)**
5:22;6:16;9:19;10:8;
19:22,25;32:4;34:1;
60:17;65:23;68:17
**putting (2)**
65:22;73:21

**Q**

**qualify (1)**
46:21
**quality (1)**
47:1
**quickly (2)**
64:21;79:23
**quit (1)**
90:10

**R**

**raise (1)**
87:23
**raised (5)**
13:2;38:17;39:3;
41:16,17
**raising (1)**
38:12
**rare (1)**
80:8

Case: 19-30088   Doc# 713   Filed: 02/28/19   Entered: 02/28/19 16:16:33   Page 104
of 109

**rather (6)**
64:2;80:7;81:25;
82:9;85:21;89:6
**read (5)**
7:4;57:18;66:15,16;
82:5
**readers (1)**
9:1
**reading (2)**
8:13;17:20
**reads (3)**
74:5;75:4;84:25
**ready (2)**
22:1;29:9
**real (1)**
7:6
**realistic (1)**
91:10
**realize (2)**
44:8;52:19
**really (16)**
6:15;18:3;35:3,24;
42:6;44:23;46:18;54:6;
55:18;56:3,19;57:13;
60:15;68:3;71:6;85:18
**reason (5)**
19:18;27:4;35:3;
50:13;79:19
**reasonable (1)**
42:11
**reasons (5)**
7:20;8:4;9:19;37:15;
49:3;58:3
**receive (2)**
73:18;91:6
**received (5)**
17:4;18:10;19:12;
25:6;38:25
**receiving (1)**
40:25
**recent (1)**
66:15
**recess (2)**
67:22;68:10
**recipient (1)**
87:16
**recites (1)**
76:22
**reclaim (1)**
16:18
**reclamation (17)**
16:4,7,15,21;17:3,6,
11;18:2,10,13,17;
19:11,25;21:1,11;
23:23;89:12
**Reclination (1)**
16:2
**recognize (1)**
62:21
**recognized (1)**
64:19
**recommended (1)**
43:23

**record (8)**
11:12;31:12;37:24,
25;38:21;52:14;53:7;
70:4
**reference (5)**
69:16,17;70:17;
72:21;73:6
**referred (1)**
32:5
**refers (2)**
33:24;73:24
**reflect (1)**
34:7
**reflected (1)**
29:7
**reflecting (1)**
7:10
**regard (1)**
92:12
**regarding (2)**
39:5;52:25
**regular (5)**
7:12;9:16;44:1;72:5;
83:5
**regulatory (1)**
41:22
**reject (2)**
18:20;83:20
**rejected (1)**
75:13
**rejection (1)**
58:14
**relate (3)**
6:16;42:6;60:8
**related (3)**
41:21,22;92:19
**relates (3)**
30:16;46:11;65:7
**relationship (1)**
51:8
**relatively (2)**
55:13,14
**relief (20)**
8:15;55:17,18;57:13;
58:16;77:17,18;78:12,
23;79:17;80:5,9,12;
81:4,8,13;83:22;84:14,
16;87:6
**remain (2)**
68:12;70:14
**remaining (3)**
38:20;42:5;87:4
**remarks (1)**
10:5
**remember (2)**
71:10;89:24
**reminder (2)**
5:12;6:8
**remove (1)**
23:18
**removes (1)**
28:2
**repeat (1)**

37:15
**repeating (2)**
33:13,15
**replies (2)**
6:17;9:21
**reply (17)**
23:1,10;28:3;54:1,3;
82:8,15,25;83:9;84:6,7,
9,10,12,13,17;88:11
**report (1)**
69:1
**represent (2)**
33:22;88:1
**representation (1)**
5:16
**representations (1)**
31:10
**representing (2)**
47:24;58:10
**request (10)**
26:10;30:21,23;
42:16;66:1;68:16;
74:10,22;79:5,10
**requested (4)**
39:9;40:24;46:12;
79:18
**requests (1)**
63:6
**require (6)**
62:3;75:21,24;81:3,
8;83:24
**required (7)**
39:7;51:2,7;74:6;
75:7,8;76:2
**requirement (4)**
46:17;48:11,20;
76:11
**requiring (2)**
42:10;78:23
**reread (1)**
60:14
**reservation (3)**
13:23;14:8;52:24
**reserve (1)**
33:22
**reserved (2)**
12:10;32:5
**reside (1)**
48:25
**resolution (2)**
35:17;70:11
**resolve (6)**
13:24;22:17;35:2,7;
68:25;70:13
**resolved (16)**
10:15;12:12;13:3;
14:24,25;30:1;34:20;
35:16;38:17,20,22,24;
40:16;41:14;69:4;87:7
**resolves (3)**
40:9;41:6;42:1
**respect (15)**
11:11;14:8,11;15:10;

29:25;30:1,8;39:4;
58:1;64:17;70:22;
80:19;81:7,17;87:5
**respects (1)**
89:12
**respond (4)**
9:3,23;22:10;23:14
**respondent (3)**
83:20;84:20,21
**response (6)**
22:13;31:6,13;51:15;
83:20;85:11
**responses (3)**
12:9;81:3,9
**rest (1)**
30:20
**restrict (1)**
62:1
**restriction (1)**
61:20
**restrictions (3)**
49:6,8;61:22
**resume (1)**
68:8
**retained (3)**
41:19;46:16,22
**retention (3)**
42:13;46:17;47:18
**review (6)**
9:14;38:19;44:4,19;
78:21;87:13
**reviewed (2)**
8:1;18:10
**reviewing (1)**
87:9
**revise (1)**
41:2
**revised (8)**
28:1;34:6;38:18;
39:17;89:10,11,12,14
**revisit (1)**
85:24
**Rich (8)**
32:21,23,25;33:2,5,7,
13,15
**right (120)**
11:4,22;12:13;13:12;
14:12,17,25;15:7,12,
14,21;16:9,10;17:7,13;
18:4,12,21;19:3;21:12,
15,18;25:2;26:1,7,20;
27:14,18,22;28:4,25;
29:2,5,15,24;30:5;
31:9;32:1;33:7,13;
34:1,5,8;35:8;36:6,20;
39:12,14,16,16;40:3,6,
19;41:13;44:6,7,22;
46:5;47:7,11;49:12,13,
20,22;50:1,4,6,7,8,11,
19,23;51:4,11,22;52:9,
16;53:9,14,16;54:5,7;
55:22,23;56:5;57:16,
16;59:3,7,9,11,12;61:9;

62:11;63:20;67:6;
68:18,21;71:19;74:8;
77:5,12,15;78:10;
80:16;82:19;83:14,18;
84:2,23,23;86:21;
87:13,23;89:15;91:15;
92:9,11,18,20
**rights (4)**
13:23;14:8;52:25;
58:22
**rise (2)**
5:5;68:11
**risk (1)**
62:16
**rocket (1)**
44:25
**Roger (1)**
33:9
**role (1)**
66:8
**roll (1)**
13:16
**romanette (1)**
39:4
**room (4)**
65:20;66:19;90:19,
23
**Rosenfeld (1)**
33:9
**routinely (2)**
65:6,7
**row (1)**
15:25
**rule (16)**
55:23;61:1;66:1;
68:25;69:6;71:23;
72:13;73:17;75:23;
79:17;84:13;85:4,5,14,
19;92:15
**rules (18)**
23:23;26:25;28:18,
19;48:8;49:5;50:2;
51:13,23;52:4;54:11;
56:12;61:19;83:24;
86:12,14,16,19
**ruling (5)**
45:17;60:21;63:16;
67:1;68:1
**run (4)**
16:8,12;38:16;71:5
**run-of-the-mill (1)**
47:14
**rush (1)**
92:11

**S**

**Sacramento (1)**
64:20
**Sacramento's (1)**
65:25
**same (17)**
8:11;14:13;15:4,12;

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 105
of 109

22:14,24;29:19;44:4;
  50:22;60:3;66:22;
  72:24;73:5,6,12,14;
  84:3
**SAN (2)**
  5:1;88:18
**sanctioned (1)**
  72:16
**satisfied (2)**
  14:13;79:21
**save (1)**
  36:19
**saw (2)**
  30:25;31:2
**saying (15)**
  8:14;23:14;58:19;
  59:10,22;61:13,18,20;
  62:9,15;79:12;80:14;
  84:5,18;86:18
**schedule (1)**
  66:5
**scheduled (2)**
  6:14;90:16
**schedules (3)**
  80:13;91:5,13
**scheduling (1)**
  86:2
**science (1)**
  44:25
**scold (4)**
  7:7;9:4,5;82:4
**scolded (3)**
  10:18,19;21:25
**scolder (1)**
  10:20
**scolding (1)**
  7:7
**scream (2)**
  11:17;85:10
**screw (1)**
  77:10
**scurried (1)**
  69:19
**seated (2)**
  5:8;68:12
**second (12)**
  21:15;25:8;28:7;
  34:11,22;42:21;73:24;
  76:5,6;80:24;86:9;
  90:17
**Secondly (2)**
  5:17;7:20
**section (2)**
  43:15;46:16
**seeing (2)**
  7:9;43:3
**seeking (1)**
  84:14
**seeks (1)**
  39:24
**seem (1)**
  13:23
**seemed (1)**

21:19
**seems (8)**
  16:7;19:3;27:14;
  44:8,9,13;47:2;80:1
**sell (6)**
  7:13,14,15;62:3,4;
  83:22
**seller (1)**
  17:2
**send (7)**
  72:8,9;73:11;75:10,
  15,15;87:11
**senior (1)**
  64:9
**sense (5)**
  31:14;59:5;60:10;
  63:14;67:2
**sensitive (1)**
  31:23
**sent (4)**
  38:19;61:6;72:16;
  76:24
**sentence (4)**
  25:13;78:13;80:4;
  81:15
**sentiment (1)**
  90:9
**separate (1)**
  45:9
**separately (2)**
  9:16;41:19
**sequence (5)**
  6:4;9:21;10:1;82:10;
  83:17
**seriously (1)**
  63:2
**serve (2)**
  17:24;75:6
**served (4)**
  74:12;75:8,12;77:11
**service (10)**
  28:17;70:24;74:4,5,
  13;75:10,22;77:6,10;
  87:5
**services (4)**
  18:16;41:19,21;
  42:10
**serving (2)**
  73:25;75:5
**session (1)**
  5:5
**set (2)**
  22:18;82:12
**sets (1)**
  49:25
**setting (1)**
  83:21
**settled (2)**
  68:13,14
**settlement (4)**
  84:25;85:2,3,13
**settlements (1)**
  85:8

seven (4)
  28:19;83:1,24;84:3
**seventy-five (1)**
  22:8
**several (2)**
  14:22;38:4
**shall (7)**
  16:17;72:14;74:6;
  78:24;81:13,17;86:13
**shape (1)**
  59:5
**share (1)**
  65:4
**shares (1)**
  59:6
**sheet (1)**
  42:20
**short (2)**
  7:1;26:3
**shortened (3)**
  79:5,6,19
**shortening (1)**
  79:1
**shorter (1)**
  66:5
**show (1)**
  24:22
**side (12)**
  54:18;58:25;59:2,4,
  9;60:24;69:16;73:21;
  78:25;79:15,18;80:9
**sides (2)**
  62:13;79:24
**sign (2)**
  89:22,23
**significant (1)**
  60:20
**signs (1)**
  52:10
**similar (1)**
  43:11
**simple (2)**
  14:7,8
**simply (2)**
  8:19;28:12
**single (1)**
  46:1
**sitting (1)**
  24:10
**situation (2)**
  20:8;77:4
**six (3)**
  9:10;25:11;57:21
**sixty (2)**
  65:1,23
**size (3)**
  42:8,8;75:4
**slept (1)**
  58:22
**slice (1)**
  44:6
**slight (1)**
  89:25

slightest (1)
  66:21
**slightly (3)**
  26:7;78:1;87:18
**smaller (3)**
  42:12,15;44:9
**so- (1)**
  31:15
**so-called (1)**
  31:14
**sole (3)**
  30:11;75:5,7
**solution (2)**
  26:22;52:2
**solve (1)**
  8:5
**solvent (2)**
  58:5;66:20
**somebody (11)**
  18:11,25;19:24;23:1;
  58:19,21;66:24;67:2;
  76:10;77:10;84:15
**someone (7)**
  16:18;18:4;19:20;
  63:18;72:18;80:9,13
**sometimes (1)**
  63:5
**somewhat (1)**
  7:5
**Sonoma (1)**
  36:24
**soon (1)**
  91:24
**sophisticated (2)**
  57:5,9
**sorry (10)**
  17:23,23;25:10,24;
  30:22;42:23;76:6;
  77:25;78:7;82:24
**sort (3)**
  25:16;26:20;80:11
**sought (2)**
  21:1,2
**sounds (4)**
  33:2;40:22,23;72:19
**sources (1)**
  41:1
**space (1)**
  5:23
**speak (4)**
  5:21;40:14;62:23;
  63:25
**SPEAKER (3)**
  21:22,24;35:15
**speaking (2)**
  5:15;19:11
**special (2)**
  50:24,25
**specialists (1)**
  48:10
**specially (1)**
  82:12
**specific (2)**

74:22;84:4
**specifically (3)**
  59:6;65:16;73:17
**speculative (2)**
  55:15;57:8
**speech (2)**
  64:22;69:7
**spending (1)**
  65:13
**staff (4)**
  5:20;6:19;35:24;
  73:9
**STAMER (9)**
  64:3,6,6,8,12,15,24;
  65:13;67:4
**stand (1)**
  65:25
**standard (3)**
  70:20;84:13;86:1
**start (1)**
  37:12
**state (8)**
  5:15;38:22;64:22,22,
  25,25;73:16;86:14
**stated (1)**
  17:5
**statement (5)**
  14:13;17:24;52:24;
  72:8;73:19
**statements (1)**
  31:2
**States (2)**
  38:4;70:8
**States' (1)**
  7:21
**stating (1)**
  15:2
**statute (7)**
  16:12,16,18;20:20;
  23:23;24:14;49:17
**statutory (1)**
  26:2
**stay (8)**
  41:9;46:23;53:20;
  80:2,9;81:4,8,13
**step (2)**
  23:20;28:3
**Stephen (2)**
  10:4;53:17
**stick (9)**
  9:10,20;36:4;45:1;
  53:19;68:20;82:9,13;
  85:12
**sticking (1)**
  45:17
**still (6)**
  27:6;45:4;46:25,25;
  91:20,21
**stip (3)**
  30:9;31:16;33:18
**stipulation (3)**
  48:6;80:10;86:5
**straight (1)**

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 106
of 109

12:16
**straightforward (2)**
55:14,14
**stranger (2)**
63:25;64:3
**strict (1)**
49:5
**strike (2)**
80:21,22,24;86:8
**Stuart (1)**
87:25
**stuff (9)**
7:1;8:1,3;10:8;
47:14;54:21;73:23;
76:25;85:23
**subject (10)**
30:24;35:2,16;49:4;
59:17;61:22;70:3;
73:14;85:8;92:18
**submit (8)**
11:24;16:15;28:1;
34:6;35:6;39:20;60:5;
89:10
**submitted (6)**
17:2,7;19:16,24;
25:5;56:15
**substantially (2)**
43:11;74:13
**substantive (2)**
68:3;80:5
**sufficient (2)**
16:19;43:23
**suggest (2)**
6:3;36:8
**suggested (2)**
12:15;72:22
**suggesting (3)**
24:2;43:19;54:9
**suggestion (3)**
24:15;34:14;74:2
**Sullivan (1)**
31:20
**summarize (1)**
42:24
**summarized (1)**
17:21
**summary (4)**
17:20;27:24;42:19;
83:21
**Superior (1)**
88:18
**supplemental (1)**
91:2
**suppliers (1)**
90:2
**Supplier's (2)**
11:12;12:7
**support (2)**
64:12;69:17
**supporting (3)**
16:17,24;20:19
**supposed (2)**
19:4;54:10

**Sure (38)**
12:25;13:6;16:17;
19:7;23:9;28:21;31:12;
32:13;34:12;36:1,10;
37:23;38:10;39:3;
45:16;46:4;47:18;51:9;
52:10;54:21;65:19,21;
67:23;69:8;73:13;
74:24;76:1,4,22;77:22;
78:20;85:25;86:8,15,
17;91:17;92:6,17
**suspect (1)**
64:11
**sustain (2)**
54:25;57:24
**Sutherland (2)**
41:17,18
**syllable (1)**
37:18
**sympathetic (1)**
58:18

**T**

**tab (2)**
25:9,18
**table (3)**
15:8;59:5;61:9
**talk (5)**
6:21;32:20;36:4;
62:22;71:8
**talked (1)**
9:11
**talking (8)**
18:4;24:6;44:24;
48:15;55:18;73:11;
75:3;89:5
**talks (1)**
85:19
**Tax (12)**
36:24;41:20,21,22;
54:1,22;55:3;56:6,10,
13,16;60:16
**taxes (3)**
15:11,17,24
**team (1)**
6:15
**TelePacific (2)**
34:23;35:12
**telling (4)**
23:15;53:12;66:14;
80:25
**tells (1)**
73:17
**ten (1)**
65:5
**terminology (1)**
73:17
**terms (2)**
59:16;73:16
**terribly (1)**
68:3
**terrifying (1)**

**54:5**
**test (1)**
48:24
**testimony (2)**
69:5;86:4
**Thanks (5)**
13:15;21:8;34:10;
53:9;87:20
**that'll (1)**
29:7
**theory (1)**
44:12
**there'd (1)**
47:15
**there'll (1)**
20:23
**thereto (1)**
81:17
**thick (1)**
25:10
**third (1)**
44:22
**third- (1)**
40:25
**thirty-six (2)**
57:18;65:14
**though (2)**
55:17;56:3
**thought (3)**
11:7;54:4;62:12
**thoughts (1)**
9:4
**thousand (1)**
47:13
**three (5)**
7:2;14:18;15:8;
35:21;83:24
**throw (1)**
72:7
**Thursday (1)**
9:20
**Tim (2)**
40:17;87:3
**timely (3)**
17:7;19:24;27:12
**times (3)**
9:12;44:5;64:19
**timing (1)**
69:6
**tip (1)**
61:8
**titles (1)**
37:18
**today (26)**
5:14;6:21;7:8,18;
8:18,19;11:23,24;35:4;
54:4,18;55:17;56:20;
58:1,4,15;59:1;60:13;
63:16;64:18;68:1;
82:11;87:19;88:3;
89:10,12
**today's (2)**
7:24;13:14

**together (1)**
66:2
**told (4)**
5:20;23:14;79:4;
90:7
**tomorrow (1)**
59:12
**top (1)**
71:21
**tore (1)**
90:22
**tort (1)**
47:14
**toss- (1)**
62:13
**total (1)**
40:1
**totally (1)**
57:8
**touch (3)**
72:17;78:20;87:15
**tough (2)**
54:1,21
**track (5)**
42:20,24;67:25;
73:10;77:2
**trade (3)**
56:21;57:1;61:14
**traders (4)**
57:6,9;62:7,16
**trades (1)**
65:4
**trading (5)**
14:10;56:2;58:10;
59:1;62:1;65:2
**tradition (1)**
26:25
**transcript (2)**
6:10,12
**Treasurer (1)**
36:24
**treated (1)**
72:15
**treatment (4)**
18:17,25;26:7;49:4
**trial (1)**
86:1
**tried (2)**
28:17;42:23
**true (6)**
11:10;31:9;50:23;
59:4;66:14;85:3
**Trustee (26)**
7:21;11:17;28:25;
38:12,17;40:7,15,18,
24;41:17;42:14;43:23;
45:6;46:12;48:7,9;
51:25;70:8,11,19,23;
75:1;87:4;89:22;90:14;
91:5
**Trustee's (7)**
38:4,9,19,25;40:10;
70:9,14

**try (3)**
64:21;66:10;72:17
**trying (6)**
9:10,11,20;66:18;
80:12;81:18
**Tuesday (1)**
9:20
**Tuesdays (1)**
9:12
**tunc (1)**
66:2
**turn (1)**
9:24
**turns (2)**
69:18;91:7
**twelve (3)**
6:5;45:20;88:11
**twelve-month (1)**
45:14
**twenty (5)**
17:4,22;22:10;28:17,
22
**twenty- (4)**
28:19;82:9,13;84:14
**twenty-eight/fourteen (1)**
84:3
twenty-eight/fourteen/seven (2)
83:16;84:20
**twenty-eight-day (1)**
83:12
**twenty-fours (1)**
65:14
**twenty-one (2)**
28:22;83:23
**twenty-one/seven (1)**
84:5
**twenty-seven (1)**
57:20
**twice (1)**
8:15
**two (20)**
21:2,2,3;37:18;
46:19;49:25;53:10;
56:10;59:21;60:14;
63:1;65:23;70:13,14;
82:3,8,22,25;83:9,25
**type (1)**
58:24
**types (1)**
65:6
**typical (4)**
42:15,16;48:7,7
**typically (3)**
39:18;44:3;83:23

**U**

**ultimate (1)**
28:14
**Um-hum (1)**
81:6
**uncertain (1)**
59:22

Case: 19-30088   Doc# 713   Filed: 02/28/19   Entered: 02/28/19 16:16:33   Page 107
of 109

**unclear** (2)
42:23;61:2
**uncommon** (1)
7:14
**under** (6)
24:1;48:13,19;51:23;
66:6;85:6
**underlying** (1)
66:3
**Understood** (2)
20:11;88:8
**unduly** (1)
42:11
**unfiled** (1)
73:11
**UNIDENTIFIED** (3)
21:22,24;35:15
**unilaterally** (1)
30:9
**union** (7)
30:7,9,16;31:15;
33:20,21;89:21
**United** (3)
7:21;38:4;70:8
**Unless** (11)
6:2;9:21,21,23;
10:25;13:9;17:2;18:1;
81:5,15;86:19
**unnecessary** (3)
21:19;22:10,19
**unreasonable** (1)
7:11
**unrelated** (1)
49:3
**unring** (2)
61:23,24
**unsecured** (1)
13:3
**unusual** (1)
71:9
**up** (19)
6:13;8:20;11:14;
12:22;21:21;29:10;
39:21;41:8;53:22;
54:11;60:18;62:14;
63:2,10;74:25;75:9;
77:10;85:23;91:21
**upload** (5)
6:8;79:1,5,20;89:16
**uploading** (1)
89:11
**upon** (1)
49:5
**urgency** (2)
59:1;60:11
**urgent** (1)
58:1
**use** (2)
75:14,25
**used** (1)
71:13
**useful** (1)
72:1

**using** (4)
5:13;48:23,23;76:8
**UST** (1)
72:22
**usual** (1)
54:20
**utilities** (4)
34:15,20;35:17;
89:24
**utility** (3)
17:9;35:11;89:23

**V**

**value** (1)
65:2
**variables** (1)
61:5
**various** (2)
6:16;12:9
**vendor** (6)
18:25;19:2,3;22:10,
11,12
**vendors** (2)
26:13;27:8
**version** (3)
78:2,5;87:12
**vested** (1)
64:10
**victims** (1)
31:21
**view** (3)
57:24;60:19;86:7
**views** (1)
54:12
**viii** (1)
39:4
**volume** (2)
7:1;85:24
**voluntarily** (1)
31:3

**W**

**wage** (5)
29:25;89:21,22;91:2,
3
**wait** (5)
19:4,22;28:23;33:6;
54:25
**waiting** (5)
17:18;26:13;63:1;
64:23;92:1
**waive** (5)
46:13,22,25;50:14;
51:12
**waiver** (3)
50:21;80:6,7
**waiving** (1)
49:12
**walk** (1)
56:14
**wants** (9)

5:24;7:14;35:10;
36:4;44:22;45:20;54:7;
60:24,25
**watched** (1)
5:7
**way** (19)
5:19;6:19;7:12;8:8;
11:8;27:20;35:20;51:2,
9;54:7;62:10;67:1;
69:3;71:25;74:5,20;
75:15;79:22;85:18
**website** (2)
73:22;76:18
**WEDNESDAY** (3)
5:1;9:21;68:21
**Wednesdays** (1)
9:12
**weeds** (1)
60:9
**week** (4)
64:18;65:23;90:16;
91:7
**weeks** (4)
57:21;59:21;60:14;
66:17
**Weil** (8)
10:4;14:5;37:25;
48:23;53:17;56:11;
58:20;70:5
**Weinberg** (1)
33:9
**welcome** (3)
49:1;55:5;68:3
**Wells** (1)
69:20
**Wells'** (1)
69:17
**What's** (6)
22:13;38:22;42:4;
55:9;57:6;59:13
**who's** (3)
19:20;20:24;52:21
**widgets** (1)
16:19
**willing** (4)
6:23;7:1;9:24;84:12
**Windstream** (2)
60:5,6
**wisdom** (1)
49:18
**wish** (4)
12:5;15:5;34:2;
58:15
**wished** (1)
17:24
**wishes** (2)
13:13;14:14
**withdrawal** (1)
33:23
**withdrawing** (2)
31:7,11
**withdrawn** (4)
14:25;30:4;31:22;

34:25
**within** (4)
16:11;17:3,4;65:1
**without** (3)
42:11;43:22;89:17
**wonder** (2)
25:2;75:20
**word** (2)
64:20;87:12
**worded** (1)
11:8
**words** (8)
59:21;74:5;75:9;
77:18;79:2;80:6,12;
83:2
**work** (8)
8:17;12:21;51:21;
79:15;86:20;89:1;90:8;
91:16
**worked** (3)
32:1;54:13;70:10
**working** (5)
7:22;31:23;38:9;
49:24;87:21
**works** (8)
27:20;50:9;84:19,20;
86:2,2,3;88:14
**world** (3)
8:9;71:12,17
**worried** (2)
80:8,9
**worry** (3)
17:9;63:20;73:7
**written** (2)
16:15;86:5
**wrong** (3)
21:4;44:12;54:23

**X**

**XYZ** (1)
20:25

**Y**

**year** (2)
58:19;63:1
**years** (2)
28:18;86:1
**yesterday** (3)
8:1;38:19;60:6
**York** (1)
57:21

**1**

**1** (2)
12:24;13:15
**1:30** (3)
9:15;68:4;92:20
**10** (3)
36:25;37:1;90:17
**10,000** (1)

46:20
**10,000-dollar** (1)
46:24
**10:46** (1)
68:10
**100** (1)
40:1
**100,000** (3)
39:24;43:16;45:1,20;
46:24
**100K** (3)
42:7;45:13;46:2
**101** (1)
18:2
**11** (3)
11:11;12:9;68:8
**11:02** (1)
68:10
**11th** (1)
6:17
**12** (7)
25:18;29:11,12,18,
23,23;73:24
**12:30** (1)
6:17
**12th** (15)
6:14,16,22;10:8;
37:14;54:16;60:12;
88:7,8,9,10,21,22,23;
89:6
**13** (2)
34:13,15
**130** (2)
30:12,14
**13th** (21)
6:22;10:5,13;29:10;
32:6;33:2;34:2;37:2,3,
15;54:16;56:15;60:1,
12,22;63:17,19;88:5,
16,18;89:7
**14** (1)
70:22
**15** (6)
35:22;36:8;70:6;
75:2;77:18,21
**16** (2)
38:3;88:2
**17** (1)
75:18
**18** (1)
76:7

**2**

**2** (5)
13:17,18;25:20,23;
39:4
**20** (3)
32:5;33:10;77:22
**2002** (3)
73:18;75:23;76:11
**2017** (1)
41:21

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 108
of 109

**2018 (1)**
  30:9
**2019 (1)**
  5:1
**2019b (1)**
  92:15
**20's (1)**
  31:13
**21 (3)**
  81:14;83:5,6
**23 (1)**
  78:4
**24 (5)**
  77:16,16;78:3,22;
  82:13
**24.6 (1)**
  59:6
**25th (1)**
  78:6
**26th (1)**
  90:16
**27 (4)**
  5:1;80:1,5;81:17
**27-page (1)**
  82:3
**27th (5)**
  60:11;63:19;68:17,
  21;88:6
**28 (2)**
  81:4,13
**29 (1)**
  82:7
**2b (2)**
  24:23;25:4

**3**

**3,500 (1)**
  31:21
**327a (2)**
  48:19;49:5
**327e (2)**
  46:16;48:13
**341 (3)**
  90:16;91:6,11
**35 (2)**
  84:24,24
**350 (1)**
  38:3
**382l5 (3)**
  55:15;57:7,12

**4**

**4 (2)**
  72:7;81:17
**41 (3)**
  85:18,19;86:7
**42 (2)**
  85:19;86:7
**49 (1)**
  86:10
**4th (1)**

90:17

**5**

**5 (1)**
  70:18
**5,000 (1)**
  7:3
**50,000 (2)**
  43:24;44:2
**500,000 (1)**
  43:25
**503 (2)**
  23:13;25:19
**503b (2)**
  22:12;23:25
**503b9 (9)**
  16:5;21:16;22:3;
  24:10,20;25:4;26:15;
  28:5;89:13
**503b9s (2)**
  22:16;26:6
**522 (1)**
  70:5
**5d (1)**
  28:16

**6**

**6 (2)**
  43:15;73:5

**7**

**7 (4)**
  11:2,5;83:7,7
**7:11 (1)**
  53:25

**8**

**8 (1)**
  76:7
**80 (1)**
  39:25
**80,000 (2)**
  39:25;44:3

**9**

**9 (4)**
  6:23;72:20,23;88:17
**9:30 (6)**
  10:13;34:2;37:6;
  68:19,21;89:6
**9:32 (1)**
  5:2
**9006 (1)**
  79:17
**9019 (1)**
  85:7
**906 (1)**
  78:24

**9th (1)**
  85:7

Case: 19-30088    Doc# 713    Filed: 02/28/19    Entered: 02/28/19 16:16:33    Page 109
of 109