Sander L. Esserman *(Admitted Pro Hac Vice)*
Cliff I. Taylor *(Admitted Pro Hac Vice)*
STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.
2323 Bryan Street, Suite 2200
Dallas, TX 75201-2689
Telephone: 214-969-4900
Email: esserman@sbep-law.com

Scott Summy
John Fiske (CSBN 249256)
BARON & BUDD, P.C.
3102 Oak Lawn Avenue #1100
Dallas, TX 75219
Telephone: 214-521-3605
Email: ssummy@baronbudd.com

Christopher H. Hart (CSBN 184117)
Kimberly S. Fineman (CSBN 184433)
NUTI HART LLP
411 30TH Street, Suite 408
Oakland, CA 94609-3311
Telephone: 510-506-7152
Email: kfineman@nutihart.com

Attorneys for Public Entities Impacted by the Wildfires

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>      and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                    Debtors.<br><br>_____<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088-DM. | Case No. 19-30088-DM<br><br>Chapter 11<br>Lead Case, Jointly Administered<br><br>**DECLARATION OF SANDER L. ESSERMAN IN SUPPORT OF *EX PARTE* MOTION TO SHORTEN TIME FOR NOTICE AND HEARING ON MOTION OF PUBLIC ENTITIES FOR APPOINTMENT OF OFFICIAL COMMITTEE OF PUBLIC ENTITIES PURSUANT TO 11 U.S.C. §§ 1102(a)(2) AND 105(a)**<br><br>[No Hearing Required]<br><br>Requested Hearing on Shortened Time:<br>Date:  March 13, 2019<br>Time:  9:30 a.m. (Pacific Time) |

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

I, Sander L. Esserman, declare:

1.     I am an attorney licensed by the State of Texas and admitted *pro hac vice* in the above captioned bankruptcy cases pursuant to the Order Granting Application for Admission of Attorney *Pro Hac Vice* for Sander L. Esserman (Dkt. No. 230).  I am counsel of record for the Public Entities[1] in the above captioned case.  Unless as otherwise indicated herein, I have personal knowledge of the facts set forth below, and if called as a witness I could and would competently testify to the matters set forth in this declaration.

2.     Attached hereto as <u>Exhibit A</u> is the Motion of Public Entities for Appointment of Official Committee of Public Entities Pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a) (the "***PE Committee Motion***"), which the Public Entities ask to be heard on shortened time.   By the motion, the Public Entities ask that the court direct the United States Trustee (the "***Trustee***") to appoint an Official Committee of Public Entities.

3.     As described more particularly in the PE Committee Motion, the Public Entities can and should serve a distinct and important role in the Debtors' bankruptcy cases given (1) the unique nature of these proceedings and the Public Entities' claims herein, (2) the scope of the effect these proceedings will have on the communities represented by the Public Entities, and (3) the distinct possibility the Debtors will seek statutory and/or regulatory concessions that could affect the Public Entities in order to effectuate a viable reorganization of the Debtors.  It is critical that the Public Entities have the opportunity to assist in the progress of this case in a centralized and independent manner at the earliest possible juncture.

4.     The Public Entities have for the past several weeks been in discussions with the Trustee regarding the appointment of an Official Committee of Public Entities.  The Trustee ultimately declined to appoint such a committee on February 20, 2019, citing grounds that are addressed by the Public Entities in the PE Committee Motion.  A true and correct copy of the

---

[1] The Public Entities consist of the following California public entities: (a) Calaveras County Water District, (b) Napa County, (c) City of Napa, (d) Mendocino County, (e) Lake County, (f) City of Clearlake, (g) Nevada County, (h) Yuba County, (i) City of Santa Rosa, (j) Sonoma County, (k) Sonoma County Agricultural Preservation and Open Space District, (l) Sonoma County Community Development Commission, (m) Sonoma County Water Agency, (n) Sonoma County Sanitation District, (o) Town of Paradise, and (p) Butte County.

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

Trustee's letter declining to appoint an Official Committee of Public Entities is attached hereto as Exhibit B. The Public Entities therefore request that the Court appoint an Official Committee of Public Entities pursuant to 11 U.S.C. §§1102(a)(2) and 105(a).

5. Because the Official Committee of Unsecured Creditors and the Official Committee of Tort Claimants have already been appointed by the Trustee and because critical early negotiations and other discussions regarding these bankruptcy cases are already underway, the Public Entities request that the PE Committee Motion be set for hearing by the Court at the Omnibus Hearing on March 13, 2019 at 9:30 a.m., or at the Court's earliest convenience, and that the deadline for filing and serving any opposition to the PE Committee Motion be set for March 11, 2019.

6. No previous time modification requests have been made related to the subject of the PE Committee Motion, either by stipulation or Court order.

7. The requested shortened notice period should have little to no impact on these cases since the party to whom the PE Committee Motion is primarily directed, namely the U.S. Trustee, has known of the relief requested by the Public Entities since January 30, 2019. Three weeks later, the U.S. Trustee relayed its decision to the Public Entities. Therefore, there is no prejudice to the parties-in-interest by shortening notice under the circumstances. Conversely, the Public Entities' interests are not represented by the committees currently appointed, although the Public Entities are a separate and substantial class of interests. Any additional delay in the Court's consideration of the PE Committee Motion may have substantial adverse impacts on the interests of all public entities in these cases.

8. On the morning of February 28, 2019, I contacted both counsel for the Debtors and the Assistant U.S. Trustee regarding this request to hear the PE Committee Motion on shortened time. Specifically, I requested that the PE Committee Motion be heard on March 13 and that the deadline for responsive pleadings be March 11. I discussed the matter by phone with Debtors' counsel and followed up by email. A true and correct copy of this confirming email is attached as Exhibit C. Debtors' counsel indicated he would consult with his clients and get back to counsel for the Public Entities. I asked for a response by close of business on

February 28th.  No further response has been received from either counsel for the Debtors or the Assistant U.S. Trustee.

I declare under penalty of perjury pursuant to the laws of the United States of America and the State of California that the foregoing is true and correct to the best of my knowledge and belief.  Executed this 1st day of March, 2019 at Dallas, Texas.

/s/ *Sander L. Esserman*
Sander L. Esserman

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

# **EXHIBIT A**

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

Sander L. Esserman *(Admitted Pro Hac Vice)*
Cliff I. Taylor *(Admitted Pro Hac Vice)*
STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.
2323 Bryan Street, Suite 2200
Dallas, TX 75201-2689
Telephone: 214-969-4900
Email: esserman@sbep-law.com

Scott Summy
John Fiske (CSBN 249256)
BARON & BUDD, P.C.
3102 Oak Lawn Avenue #1100
Dallas, TX 75219
Telephone: 214-521-3605
Email: ssummy@baronbudd.com

Christopher H. Hart (CSBN 184117)
Kimberly S. Fineman (CSBN 184433)
NUTI HART LLP
411 30TH Street, Suite 408
Oakland, CA 94609-3311
Telephone: 510-506-7152
Email: kfineman@nutihart.com

Attorneys for Public Entities Impacted by the Wildfires

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>    and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>            Debtors.<br><br>☐Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088-DM. | Case No. 19-30088-DM<br><br>Chapter 11<br>Lead Case, Jointly Administered<br><br><br>**MOTION OF PUBLIC ENTITIES FOR APPOINTMENT OF OFFICIAL COMMITTEE OF PUBLIC ENTITIES PURSUANT TO 11 U.S.C. §§ 1102(a)(2) and 105(a)**<br><br><br><u>Hearing on Shortened Time:</u><br>Date: March 13, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: 450 Golden Gate Avenue, Ctrm 17<br>      San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 5

II.   JURISDICTION ................................................................................................ 7

III.  BACKGROUND ................................................................................................ 8

IV.   BASIS FOR RELIEF REQUESTED ............................................................... 10

    A.    The Court should order the formation of a Public Entities Committee pursuant to 11 U.S.C. §§ 1102(a)(2) and pursuant to the Court's authority under 11 U.S.C. § 105. ........................................................................ 10

    B.    Formation of a Public Entities Committee is necessary and proper to provide the Public Entities with adequate representation in these bankruptcy cases. .................................................................................... 14

        1.    *The unique interests of the Public Entities require formation of a separate Public Entities Committee* ................................................. 15

        2.    *The nature of these bankruptcy cases calls for a separate Public Entities Committee.* .......................................................................... 17

        3.    *The unique nature of the Public Entities' Wildfire Claims requires that they be represented by a separate, homogeneous committee.* ....... 18

        4.    *A Public Entities Committee would perform tasks that the UCC and Tort Committee will not fulfill.* ...................................................... 19

        5.    *Formation of a Public Entities Committee would not result in delay or unreasonable additional costs.* ...................................................... 20

V.    CONCLUSION ................................................................................................ 21

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

# TABLE OF AUTHORITIES

**Cases**

*ADT Corp. v. Advantage Pkg. Inc. (In re ADT Corp.)*,
352 F.3d 1062, 1066 (6th Cir. 2003) .................................................................. 13

*In re Am. Atomics Corp.*,
2 B.R. 526 (Bankr. D. Ariz. 1980) .................................................................. 11

*In re Baldwin-United Corp.*,
38 B.R. 802 (S.D. Ohio 1984) .................................................................. 11

*In re Beker Indus. Corp.*,
55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985) .................................................................. 14

*In re Budd Co., Inc.*,
512 B.R. 910, 912-13, 915 (Bankr. N.D. Ill. 2014) .................................................................. 15, 20

*In re City of Detroit, Mich.*,
519 B.R. 673, 679 (Bankr. E.D. Mich. 2014) .................................................................. 12, 13, 14

*In re Dana Corp.*,
344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) .................................................................. 19

*In re Gates Engineering Co., Inc.*,
104 B.R. 653 (Bankr. Del. 1989) .................................................................. 11, 12

*In re Hills Stores, Co.*,
137 B.R. 4, 6 (Bankr. S.D.N.Y. 1992) .................................................................. 20

*In re Johns-Manville Corp.*
68 B.R. 155 (S.D.N.Y. 1986) .................................................................. 14

*In re K.P. Enterprise*,
135 B.R. 174, 186 (Bankr. D. Me. 1992) .................................................................. 12

*In re Lion Capital Group*,
44 B.R. 684 (Bankr. S.D.N.Y. 1984) .................................................................. 11, 12

*In re Mansfield Ferrous Castings, Inc.*,
96 B.R. 779, 781 (Bankr. N.D. Ohio 1988) .................................................................. 14

*In re Mansfield Tire & Rubber Co.*,
39 B.R. 974 (N.D. Ohio 1983) .................................................................. 11

*In re Mehlhose*,
469 B.R. 694, 710 (Bankr. E.D. Mich. 2012) .................................................................. 12

*In re Mercury Finance Co.*,
240 B.R. 270, 277 (N.D. Ill. 1999) .................................................................. 12

*In re Pierce*,
237 B.R. 748, 753-54 (Bankr. E.D. Cal. 1999) .................................................................. 14

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

*In re Residential Capital, LLC,*
480 B.R. 550 (Bankr. S.D.N.Y. 2012) ............................................................................................ 15

**Statutes**

11 U.S.C. § 101(41) ....................................................................................................................... 9, 13

11 U.S.C. § 105 ............................................................................................................................. 10, 14

11 U.S.C. § 105(a) .................................................................................................................. 5, 12, 14, 21

11 U.S.C. § 1102 ............................................................................................................................... 13

11 U.S.C. § 1102(a) ........................................................................................................................... 14

11 U.S.C. § 1102(a)(2) ................................................................................................................... passim

11 U.S.C. § 1102(a)(4) ....................................................................................................................... 12, 14

11 U.S.C. § 1102(b) ....................................................................................................................... passim

11 U.S.C. § 1102(b)(1) ....................................................................................................................... 9, 11

11 U.S.C. § 1102(b)(2) ....................................................................................................................... 12

28 U.S.C. § 157 ................................................................................................................................. 7

28 U.S.C. § 157(b) ............................................................................................................................. 7

28 U.S.C. § 1334 ............................................................................................................................... 7

28 U.S.C. § 1408 ............................................................................................................................... 7

28 U.S.C. § 1409 ............................................................................................................................... 7

**Other Authorities**

Internal Revenue Code of 1986, § 414(d) ....................................................................................... 13

Internal Revenue Code of 1986, § 457(b) ....................................................................................... 13

**Rules**

B.L.R. 5011-1(a) ............................................................................................................................... 7

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

4

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

The Public Entities[1] hereby submit this Motion of Public Entities for Appointment of Official Committee of Public Entities Pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a) (the "***Motion***"), seeking the prompt formation of an official committee of Public Entities (a "***Public Entities Committee***") pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a). The Public Entities also request the appointment of the Public Entities to the Public Entities Committee and such other related relief as the Court may deem appropriate.

The Motion is supported by the points and authorities set forth below, the concurrently-filed notice and supporting declaration of Sander L. Esserman ("***Esserman Declaration***"), and all other pleadings and documents on file in this matter.

# I.
## INTRODUCTION

The Public Entities are the representative governmental bodies of communities that were devastated by the 2017 Northern California Wildfires[2] and the 2018 Camp Fire[3] (collectively, the "***Wildfires***"). The Public Entities' tort claims against the Debtors arising out of the Wildfires (the "***PE Wildfire Claims***") are different, not only from the claims of individual tort claimants, but also from the claims of other governmental units who hold priority tax claims and other claims more traditionally asserted by governmental units. Indeed, there have been few (if any)

---

[1] The Public Entities consist of the following California public entities: (a) Calaveras County Water District, (b) Napa County, (c) City of Napa, (d) Mendocino County, (e) Lake County, (f) City of Clearlake, (g) Nevada County, (h) Yuba County, (i) City of Santa Rosa, (j) Sonoma County, (k) Sonoma County Agricultural Preservation and Open Space District, (l) Sonoma County Community Development Commission, (m) Sonoma County Water Agency, (n) Sonoma County Sanitation District, (o) Town of Paradise, and (p) Butte County. Notably, not all of the public entities with claims against the Debtors arising out of the Wildfires are represented or have even made an appearance in these bankruptcies yet. There could be other public entities that would want to serve on a Public Entities Committee.

[2] The 2017 Northern California Wildfires began on October 8, 2017 when multiple wildfires spread through Northern California, including Napa, Sonoma, Butte, Humboldt, Mendocino, Del Norte, Lake, Nevada and Yuba Counties, as well as the area surrounding Yuba City. The Debtors acknowledge that the 2017 Northern California Wildfires consumed 245,000 acres of land, resulting in at least 44 fatalities and the destruction of an estimated 8,900 structures. *See* Declaration of Jason P. Wells in Support of First Day Motions and Related Relief, Dkt. No. 27 at p. 12-13.

[3] The 2018 Camp Fire began on November 8, 2018 near the city of Paradise, Butte County, California. The Debtors acknowledge that the 2018 Camp Fire consumed 153,336 acres of land, resulting in at least 86 facilities and the destruction of 13,972 residences, 528 commercial structures and 4,293 other buildings. *See id.* at p. 11-12.

Case: 19-30088    Doc# 716    Filed: 03/01/19    Entered: 03/01/19 08:15:44    Page 10 of 32

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

bankruptcy cases where governmental units have been impacted in the manner or to the degree as the Public Entities have been impacted here. The PE Wildfire Claims are, therefore, truly unique, and must be treated separately from the claims of other creditors in this bankruptcy.

Because of their unique interests and claims, the Public Entities have requested that the United States Trustee (the "**_Trustee_**") form an official committee comprised solely of the Public Entities with respect to the PE Wildfire Claims. Such a committee would represent the Public Entities solely with respect to the PE Wildfire Claims and not any other claims that the Public Entities may assert in these bankruptcy cases, such as tax claims or other priority claims more typical of claims by governmental units. The Trustee has not contested the need for a Public Entities Committee. Instead, the Trustee has stated that "[a]lthough we do not reject or contest the reasons you set forth in favor of the appointment of a Public Entities Committee, we have concluded that appointment of such a committee would be outside the United States Trustee's statutory authority." Esserman Declaration, ¶ 8 and Exhibit C. More specifically, the Trustee interprets 11 U.S.C. § 1102(b) to provide that only "persons" may serve on an official committee, and that the Public Entities do not fall under the definition of "persons" under the Bankruptcy Code.

The issue raised by the Trustee is one of first impression for this Circuit. The Public Entities assert that the United States Trustee's interpretation of Section 1102(b) is overly constrictive and is inconsistent with the decisions of other courts who have recognized their authority to order the formation of an official committee comprised of governmental units.

The necessity of a Public Entities Committee cannot be overstated. The substantial amount of the PE Wildfire Claims (such aggregate amount could be in excess of $2.5 billion), the unique nature of those claims, and the importance of the claims to communities affected by the Wildfires mandate that the Public Entities have official committee representation in order to assure adequate representation of the Public Entities and their constituencies. The Public Entities have not been appointed to serve on either of the two existing committees formed by the Trustee:

6

the Official Committee of Unsecured Creditors (the "*UCC*")[4] and the Official Committee of Tort Claimants (the "*Tort Committee*").[5]  It is, therefore, imperative that this Court order the formation of a Public Entities Committee.

An official Public Entities Committee can (and should) serve a unique and significant role in the Debtors' bankruptcy.  Unlike the creditors represented by the UCC and the Tort Committee, the Public Entities cannot limit their concerns in these bankruptcies to simply recovery of their damages.  The Public Entities owe a duty to their respective constituencies to ensure that the Debtors do not compromise safety, reporting, regulatory or other matters affecting the future health and welfare of the Public Entities' communities in order to confirm a plan of reorganization.  A separate Public Entity Committee can protect these interests in ways that the UCC or Tort Committee cannot.  It would also allow them to more efficiently play their necessary role in the Debtors' the proceedings going forward.

For these reasons, as will be set forth in more detail below, the Public Entities ask that the Court order the Trustee to form a Public Entities Committee.

## II.
## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "*Bankruptcy Local Rules*").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[4] On February 12, 2019, the Trustee formed the UCC.  The Public Entities did not apply to be appointed to the committee and no Public Entities were appointed to the committee. [Dkt. No. 409]

[5] On February 15, 2019, the Trustee formed the Tort Committee.  The Public Entities did not apply to be appointed to the committee and no Public Entities were appointed to the committee. [Dkt. No. 453]

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

Each of the Public Entities suffered, to varying degrees, damages to one or more of the following public services: roads, bridges, sidewalks, culverts, drains, storm and water systems (both damage to and contamination of such systems), traffic lights, stop signs, public landscaping, art, lost capacities in reservoirs, water storage and landfills. In addition, dead or dying trees, soil erosion, debris flows, flooding, and mudslides that resulted from the wildfires are a threat to the public welfare and safety of the communities represented by the Public Entities. In the face of this massive destruction, the Public Entities' damages have been compounded by (1) loss of revenue from property, sales, and other taxes, (2) loss of revenue-generating assets and services, (3) increased costs from workers' compensation claims and overtime, (4) increased use and need of law enforcement, emergency response personnel, and other public safety services, and (5) other factors. The Public Entities' claims are unique and unlike the claims represented by a UCC or generalized Tort Committee. The Public Entities do not seek recovery on behalf of individuals or businesses affected by the wildfires. Instead, the Public Entities' interests encompass the very fabric of their constituent communities. The PE Wildfire Claims are vital to the health and welfare of their respective communities and can only be brought by the Public Entities.

On January 30, 2019, the Public Entities delivered a letter to the Trustee requesting that the Trustee appoint an official committee of Public Entities. Esserman Declaration, ¶ 4 and Exhibit A. The Public Entities supplemented their January 30, 2019 letter to the Trustee with a February 6, 2019 letter that highlighted the unique and particularized nature of the Public Entities' claims, described the difficulties the Public Entities would have serving on a more generalized committee, and again requested formation of a Public Entities official committee. Esserman Declaration, ¶ 5 and Exhibit B.

On February 14, 2019, counsel for the Public Entities spoke with the Trustee regarding the Public Entities' request for a separate official committee. During the conversation, the Trustee indicated that the Public Entities' request for an official committee was still being

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

considered, and that he would not appoint a Public Entity to the Tort Committee because they were excluded from the definition of "person" in the Bankruptcy Code. Esserman Declaration, ¶ 6. On February 19, 2019, counsel for the Public Entities received an email correspondence from the Trustee's office stating that the Public Entities' request for a separate official committee was still being considered. Esserman Declaration, ¶ 7.

On February 20, 2019, the Trustee's office provided notice to the Public Entities, through their counsel, stating that the Trustee would not form a Public Entities Committee, because the Trustee concluded that he lacked statutory authority to form such a committee. Esserman Declaration, ¶ 8. More specifically, the Trustee stated as follows:

> Although we do not reject or contest the reasons you set forth in favor of the appointment of a Public Entities Committee, we have concluded that appointment of such a committee would be outside the United States Trustee's statutory authority. Specifically, the public entities noted in your letter are not eligible to serve on a committee under the definition of "person" found in 11 U.S.C. § 101(41).

> 11 U.S.C. § 1102(b) governs committee appointments and composition. Section 1102(b)(1) requires that the United States Trustee appoint "persons" to serve on official committees. Under 11 U.S.C. § 101(41), "[t]he term 'person' includes individual, partnership, and corporation, but does not include governmental unit . . ." 11 U.S.C. § 101(41).

Esserman Declaration, Exhibit C.

The Public Entities assert that the Trustee's interpretation of 11 U.S.C. § 1102(b) is overly constrictive and inconsistent with decisions of other courts recognizing the authority of bankruptcy courts to order the formation of a committee of governmental units. Therefore, the Public Entities seek an order of this Court for the formation of a separate official committee of Public Entities.

//

//

//

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

# IV.
## BASIS FOR RELIEF REQUESTED

**A.  The Court should order the formation of a Public Entities Committee pursuant to 11 U.S.C. §§ 1102(a)(2) and pursuant to the Court's authority under 11 U.S.C. § 105.**

Pursuant to 11 U.S.C. § 1102(a)(2), "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary, to assure adequate representation of creditors or of equity security holders."  Section 1102(b) addresses the composition of any such committee of creditors as follows:

> (b)(1) A committee of creditors appointed under subsection (a) of this section *shall ordinarily consist* of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

11 U.S.C. § 1102(b) (emphasis supplied).

The Trustee has not contested the Public Entities' grounds for formation of a Public Entities Committee in these bankruptcy cases.  Instead, the Trustee incorrectly interprets 11 U.S.C. § 1102(b) to prohibit any creditors other than "persons" from serving on a committee.  However, the plain language of 11 U.S.C. § 1102(b) provides for no such prohibition.  Section 1102(b) only provides an example of what a committee of creditors shall *ordinarily* consist of. A committee will ordinarily not consist of governmental units, because in most bankruptcy cases those creditors hold liquidated priority claims that may also be secured, such as tax claims, which do not require committee representation.  However, as noted above, this is no ordinary bankruptcy and the PE Wildfire Claims are no ordinary claims.  The PE Wildfire Claims (which could exceed $2.5 billion) arise in tort, are unliquidated and unsecured, and will raise unique issues of valuation and treatment under any plan of reorganization proposed by the Debtors.  As discussed in depth below, these factors mandate separate committee representation for the Public Entities.

Case: 19-30088   Doc# 716   Filed: 03/01/19   Entered: 03/01/19 08:15:44   Page 15 of 32

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

At least two other courts have interpreted 11 U.S.C. § 1102(b) to permit the formation of an official committee comprised of governmental units.[6] In *In re Lion Capital Group*, 44 B.R. 684 (Bankr. S.D.N.Y. 1984), the bankruptcy court heard a motion by the Greenburg Central School District No. 7, requesting the formation of a special committee of creditors pursuant to Section 1102(a)(2). The court held that "the municipalities and school districts claimants in this case could so serve because, *inter alia*, the provision of § 1102(b)(1) that only 'persons' could 'ordinarily' serve on a committee was not an absolute bar and because the claims of municipalities and school districts were not tax claims entitled to priority." *In re Lion Capital Group*, 44 B.R. at 685. The court later ordered the formation of an official special committee to which the acting United States Trustee appointed only governmental units. Notably, as recognized by the court, the claims of the governmental units in *Lion Capital* were not for priority claims traditionally asserted by governmental units but were instead related to the sale of United States Treasury obligations most, if not all, of which were subject to pre-petition open repurchase transactions between the debtor and the governmental units. *Id*. at 685.

Similarly, in *In re Gates Engineering Co., Inc.*, 104 B.R. 653 (Bankr. Del. 1989), the State of Tennessee asked the court to permit governmental units to serve on a Warranty Claims Committee formed in that bankruptcy case and, in the alternative, the formation of a separate governmental entities committee. The court recognized that, because of the nature of Tennessee's claims, it was not functioning as a governmental unit when asserting those claims, but instead had the same interests as other members of the Warranty Claims Committee. However, the court determined that it did not have authority over the composition of committees

---

[6] In *In re Am. Atomics Corp.*, 2 B.R. 526 (Bankr. D. Ariz. 1980), *In re Baldwin-United Corp.*, 38 B.R. 802 (S.D. Ohio 1984), and *In re Mansfield Tire & Rubber Co*., 39 B.R. 974 (N.D. Ohio 1983), the courts ruled that governmental units could not serve on an unsecured creditors committee because the governmental units were not "persons" as defined by the Bankruptcy Code. However, these cases are not binding on this Court. Furthermore, they are distinguishable from the case at bar, because the Public Entities are not seeking to serve on the UCC but are instead requesting a separate Public Entities Committee comprised solely of the Public Entities.

*...Continued*

appointed by the U.S. Trustee,[7] and therefore, could not dictate to the Trustee who was to serve on the Warranty Claims Committee.  The court then turned to Tennessee's request for alternative relief.  The court determined that it had authority to order the formation of a governmental unit committee, stating "[t]he alternative request for a governmental entities committee is one upon which the court has authority to act under § 1102(b)(2).[8]  While the *Gates Engineering* court did not find that such a committee of governmental units was warranted under the circumstances of that case, it clearly recognized the authority of bankruptcy courts to form such committees.

Here, as in *Lion Capital*, the Public Entities claims are not the types of claims traditionally brought by governmental units in bankruptcies and the need for committee representation for the Public Entities is paramount.

Even if Section 1102(b) does not provide explicit authority for this Court to order the formation of a Public Entities committee (which, the Public Entities contend that it does), this Court may, and should, exercise its authority under 11 U.S.C. § 105(a) to order the formation of a Public Entities Committee.  Section 105(a) gives the bankruptcy courts the power to issue orders it deems appropriate to carry out the provisions in Title 11.[9]  *In re Mercury Finance Co.*, 240 B.R. 270, 277 (N.D. Ill. 1999) (citing *In re K.P. Enterprise*, 135 B.R. 174, 186 (Bankr. D. Me. 1992).  "This authority 'exceeds the equitable authority available under 'tradition equity jurisprudence.'"  *In re City of Detroit, Mich.*, 519 B.R. 673, 679 (Bankr. E.D. Mich. 2014) (*quoting In re Mehlhose*, 469 B.R. 694, 710 (Bankr. E.D. Mich. 2012)).  These broad equitable

---

[7] In 2005, Congress restored the explicit statutory authority of bankruptcy courts to order changes to the membership of creditors' committees with the inclusion of 11 U.S.C. § 1102(a)(4).  *In re ShoreBank Corp.*, 467 B.R. 156, 160 (Bankr. N.D. Ill. 2012).

[8] The court's reference to the Bankruptcy Code, Section 1102(b)(2) appears to be a typographical error.  Section 1102(b)(2) pertains to the composition of a committee of equity security holders.  The court's reference should have been to 11 U.S.C. § 1102(a)(2), which pertains to the appointment of additional committees.

[9] More specifically, 11 U.S.C. § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

powers are, however, constrained to actions or determinations that are not inconsistent with the Bankruptcy Code. *City of Detroit, Mich.* at 680 (*citing ADT Corp. v. Advantage Pkg. Inc. (In re ADT Corp.)*, 352 F.3d 1062, 1066 (6th Cir. 2003)).

Here, formation of a Public Entities Committee is not inconsistent with the Bankruptcy Code. Nowhere does the Bankruptcy Code expressly prohibit this Court from ordering the formation of a separate committee for the Public Entities. The Public Entities must have a unified voice and the Debtors must have one point of contact when dealing with the Public Entities, not only for resolution of the PE Wildfire Claims, but also any regulatory or legislative relief for which the Debtors may require the support or acquiescence of the Public Entities. To preclude committee representation to the Public Entities under such circumstances cannot have been the intent of Congress when drafting 11 U.S.C. § 1102(b).

Indeed, the 1994 amendment to 11 U.S.C. § 101(41)'s definition of "person" to include certain governmental units for purposes of Section 1102 evidences Congress' acknowledgment that there should not be an absolute bar of committee representation for governmental units.[10] While, the 1994 amendment to the definition of "person" does not expressly contemplate the PE

---

[10] In 1994, Congress amended the Bankruptcy Code to include the following types of governmental units within the definition of "person" for purposes of Section 1102 as follows:

. . . a governmental unit that—

(A) acquires an asset from a person—

(i) as a result of the operation of a loan guarantee agreement; or

(ii) as receiver or liquidating agent of a person;

(B) is a guarantor of a pension benefit payable by or on behalf of the debtor or an affiliate of the debtor; or

(C) is the legal or beneficial owner of an asset of—

(i) an employee pension benefit plan that is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986; or

(ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986;

shall be considered, for purposes of section 1102 of this title, to be a person with respect to such asset or such benefit.

13

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

Wildfire Claims, neither Congress nor anyone else could have foreseen the mass devastation that has given rise to the PE Wildfire Claims. Without an express prohibition in the Bankruptcy Code against governmental units serving on a committee in the Bankruptcy Code, Congress' identification of certain types of claims that may ***ordinarily*** permit a governmental unit to serve on a general creditors committee should not be interpreted to bar the formation of a separate Public Entities Committee where, as here, the circumstances demand it. *See In re City of Detroit, Mich.*, 519 B.R. 673, 680 (Bankr. E.D. Mich. 2014) (holding that vacating the appointment of a committee is not inconsistent with the bankruptcy code where the bankruptcy code does not explicitly prohibit the bankruptcy court from doing so); *In re Pierce*, 237 B.R. 748, 753-54 (Bankr. E.D. Cal. 1999) (holding that section 105 could be utilized by bankruptcy courts to review the United States Trustee's committee appointment prior to the addition of Section 1102(a)(4) to the Bankruptcy Code, where "the court does not believe that Congress intended to grant the UST wholly unfettered discretion in appointing committee members"). Where, as here, the governing authority (i.e., 11 U.S.C. § 1102(b)) does not expressly prohibit this Court from taking action, the Court may use its powers under 11 U.S.C. § 105(a) to take such action if the Court, exercising its discretion, determines that doing so is necessary or appropriate to carry out the provisions of title 11.

**B. Formation of a Public Entities Committee is necessary and proper to provide the Public Entities with adequate representation in these bankruptcy cases.**

The Public Entities need committee representation in order to be adequately represented in these bankruptcy proceedings. Bankruptcy Code, Section 1102(a) "affords no test of adequate representation leaving the bankruptcy courts with discretion to examine the facts of each case to determine if additional committees are warranted." *In re Mansfield Ferrous Castings, Inc.*, 96 B.R. 779, 781 (Bankr. N.D. Ohio 1988) (*citing In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985) and *In re Johns-Manville Corp.* 68 B.R. 155 (S.D.N.Y. 1986)). "In deciding whether appointment of additional creditors' committee is necessary to ensure adequate representation, courts have considered many and diverse factors, including (1) ability of existing committee to function; (2) nature of Chapter 11 case; (3) standing and desires

14

of the various constituencies; (4) ability of creditors to participate in case without an additional committee; (5) delay and additional cost that would result if appointment were granted; (6) tasks that the separate committee would perform; and (7) other factors relevant to adequate representation issue." *In re Budd Co., Inc*., 512 B.R. 910, 912-13 (Bankr. N.D. Ill. 2014) (*citing In re Residential Capital, LLC*, 480 B.R. 550 (Bankr. S.D.N.Y. 2012)). No one factor is dispositive, and the amount of due consideration given to each depends on the circumstances of the particular chapter 11 case. *In re Budd*, 512 B.R. at 913. As discussed below, application of these factors dictates that a separate Public Entities Committee be formed in these bankruptcy cases for purposes of adequately representing the interests of the Public Entities.

> **1.** ***The unique interests of the Public Entities require formation of a separate Public Entities Committee***

The PE Wildfire Claims are unique and differ substantially from the claims of other creditors in these bankruptcy cases. While the general unsecured creditors and the tort claimants seek damages owed to them as individuals or entities related to contract claims, vendor debt, personal injury, property damage, and related claims, the Public Entities have suffered damages more public in nature, such as infrastructure damages, fire suppression costs, debris cleanup, and loss of tax revenue. The unique nature of the PE Wildfire Claims has consistently been recognized by the Debtors as requiring that those claims be treated separately and distinctly from other claims against the Debtors.

From the first day of these bankruptcy cases, the Debtors have recognized that the PE Wildfire Claims are separate and distinct from other wildfire claims, let alone general unsecured claims or non-wildfire related tort claims.[11] This separate treatment of the Public Entities' claims in these bankruptcy cases is consistent with how the PE Wildfire Claims were dealt with in the tort system. In the pre-petition wildfire litigation, the Superior Court of California, County of San Francisco identified four distinct classes of wildfire claimants and recognized the need to

---

[11] *See* Declaration of Jason P. Wells in Support of First Day Motions and Related Relief, Bankr. N.D. Cal. Docket No. 27 at p. 14-16.

*…Continued*

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

treat each class of wildfire claimant separately.[12] The Superior Court of California appointed separate lead counsel for the Public Entities in that litigation[13] and required that each class of claimants (including the Public Entities) submit separate complaints to the Court.[14] The Superior Court of California recognized that the Public Entities, individual claimants, and the subrogation claimants each have separate interests and determined that it is appropriate to address each class of claims separately. Similarly, in the pre-petition wildfire litigation, the *Hon. Jay* C. *Gandhi (Ret.)* was appointed as mediator (the "***Public Entities Mediator***") to deal solely with the Public Entities' claims. The cost of the Public Entities Mediator has been paid, in part, by the Debtors. The mediation of the Public Entities' claims has been conducted separate and apart from the mediation of the individual claimants' claims and the subrogation claimants' claims. Notably, the Debtors have attended several mediation sessions with the Public Entities after the Debtors' bankruptcy petition date, and the Public Entities Mediator has continued to serve in his role as the separate mediator for just the Public Entities' claims. It is contemplated that the separate mediation of the Public Entities' claims will continue, as will the Public Entities Mediator's role therein.

The Public Entities have separate and distinct interests, different types of damages, and the bases of the PE Wildfire Claims differ from the general unsecured creditors and other tort claimants. In light of the discrete nature of the PE Wildfire Claims, there will likely be numerous issues and matters that arise during these bankruptcy proceedings where the interests of the Public Entities will diverge and are quite different from those of the general unsecured creditors or other tort claimants. Both the Debtors and the pre-petition litigation court have recognized the separate interests of Public Entities and have determined that it is appropriate to address the

---

[12] *See* Case Management Order No. 1, Coordination Proceeding Special Title [Rule 3.550] *California North Bay Fire Cases* attached as Exhibit D to the Esserman Declaration. The Superior Court of California separated wildfire claimants into the following categories: (1) the individual plaintiffs (individuals and businesses damaged by the fires), (2) the public entities, (3) class action plaintiffs, and (4) the insurer subrogation claimants.

[13] *See id.* at p. 6.

[14] *See id.* at p. 11.

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

Public Entities' claims separately. For the same reasons, a separate Public Entities Committee is proper in these proceedings.

    **2.**     ***The nature of these bankruptcy cases calls for a separate Public Entities Committee.***

In bankruptcy proceedings of this magnitude, it is not only common, but crucial to fair and orderly proceedings, to form multiple committees in order to ensure that discrete classes of claimants with substantial claims (here, the Public Entities have aggregate claims against the Debtors which could be in excess of $2.5 billion) are provided adequate representation and recognition. As noted, the Trustee has already formed committees for unsecured creditors and for tort claimants.

Given the size of the Public Entities' claims, it is evident that the Debtors cannot have a meaningful reorganization without providing for a meaningful recovery by the Public Entities. It is not an option for the Debtors to simply allow the PE Wildfire Claims (which could be in excess of $2.5 billion) to simply "pass through" the bankruptcy. Due to the public nature of the Public Entities claims, and the exigencies of the safety and welfare of thousands of citizens associated with those claims, a Public Entities Committee is necessary to provide a centralized point of contact for the Debtors when negotiating a viable plan of reorganization that adequately provides for the Public Entities and the communities for whom they are responsible.

Furthermore, the Debtors' reorganization plans contemplate negotiating with regulators and policymakers (*i.e.*, legislatures) to implement extraordinary measures to stabilize the Debtors' financial condition.[15] The Debtors will almost certainly request the support of the Public Entities on any attempts by the Debtors to obtain legislative or regulatory relief as part of the plan process. The Debtors could need the support of the Public Entities both for purposes

---

[15] In the Debtors January 13, 2019 Form 8-K, the Debtors state that one consideration going into this bankruptcy was "the likelihood that regulators and policy makers were willing and able to timely implement extraordinary measures to stabilize PG&E's financial condition" and "the unique nature of California's doctrine of inverse condemnation and whether it is possible for PG&E to continue to own and operate all of its current assets as an investor-owned utility subject to that doctrine." (PG&E Jan. 12, 2019 Form 8-K). Similarly, the Debtors have indicated that one of its principal objects of this bankruptcy is to work collaboratively with State regulators and policy makers to address PG&E's liability and future operations.

Case: 19-30088    Doc# 716    Filed: 03/01/19    Entered: 03/01/19 08:15:44    Page 22 of 32

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

of obtaining support for new legislation in the legislature and to obtain public support for any legislative measures pursued by the Debtors. It is incumbent upon each Public Entity to represent the interests of its community with respect to any position taken on new or existing legislation proposed or sought by the Debtors. Under no circumstances may the Public Entities have a position on legislative acts imposed on them merely because they were out-voted by UCC members or Tort Committee members representing the interests of individual claimants. Similarly, the Public Entities cannot be placed in a position where they are deemed (by UCC or Tort Committee action) to have approved or supported any position taken by the Debtors with respect to any regulatory commissions. For the Public Entities to consider any such measures by the Debtors, the Public Entities should act as a centralized and independent body. A Public Entities Committee will provide the needed centralization and independence.

   3.    *The unique nature of the Public Entities' Wildfire Claims requires that they be represented by a separate, homogeneous committee.*

Creditors appointed to a committee hold a fiduciary duty to the respective constituencies represented by the applicable committee. While a typical tort claimant is interested primarily, if not solely, in recovering its individual financial damages, the Public Entities have broader concerns, including providing for the public safety and welfare of all of their citizens. Those concerns encompass not only adequate funding for rebuilding public works, but also consideration of the reorganized debtors' ability and willingness to provide services in a safe and responsible manner going forward.

The Public Entities cannot disregard or dilute the existing duties owed to their communities in order to act on behalf of a broader constituency of individual and business claimants whose interests may not always be aligned with those of the public welfare. Participation of the Public Entities on a committee comprised of anything but the Public Entities could present circumstances where the interests of the Public Entities' communities diverge from the interests of the committee's constituents. Where those interests cannot be reconciled, the Public Entities could be placed in a difficult situation.

The ability of the existing committees to function properly is a factor in the determination of whether a court should order the appointment of another committee. *See In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (recognizing that "[t]he ability of an official committee to function is a significant factor in the determination of whether a court should order the appointment of another committee"). Here, any committee that will require the Public Entities to divide their duties among differing constituencies will be problematic from the outset. These bankruptcy proceedings require committee representation for the Public Entities. That representation must be in the form of a committee comprised solely of Public Entities.

### 4. *A Public Entities Committee would perform tasks that the UCC and Tort Committee will not fulfill.*

To the Public Entities, resolution of the Debtors' liability for the wildfires is not simply an exercise of estimating aggregate damages and determining a fair allocation of the monies available to compensate victims. The Public Entities have the unique interest of also ensuring that the Debtors do not compromise future safety, reporting, operational or other matters in these bankruptcies in order to confirm a plan of reorganization. The Public Entities are charged with protecting the interests of all their existing and future citizens. They cannot sacrifice future concerns for other consideration. This interest in the future safety and welfare of the Public Entities' communities can be juxtaposed to limited interests of other creditors in these bankruptcies who may be solely concerned with recovery of as much of their claims as possible. While a UCC or Tort Committee may take positions on issues without regard to the effect on the Debtors' future operations and safety measures, the Public Entities cannot. A separate Public Entity Committee, therefore, can protect the interest of the future safety and welfare of the communities served by the Debtors in ways that a UCC or Tort Committee will not.

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

19

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

**5.** ***Formation of a Public Entities Committee would not result in delay or unreasonable additional costs.***

Formation of a Public Entities Committee will not result in any delay in the bankruptcy proceedings. These bankruptcy cases are approximately a month old, and the UCC and Tort Committees were formed less than two weeks ago. Furthermore, while "[t]he potential added cost is not sufficient in itself to deprive the creditors of the formation of an additional committee if one is otherwise appropriate,"[16] it is worth noting that a Public Entities Committee will likely not result in appreciable additional costs to the Debtors' estates. Given the focus of the Public Entities, a Public Entities Committee may not need to engage investment bankers or accountants, if it could rely on the accountants engaged by the other official committees for information and analysis relevant to the Public Entities in some equal sharing arrangement. A Public Entities Committee could share certain professionals such as accountants, investment bankers and the like and need not engage separate professionals (except for lawyers) at this time, unless the Bankruptcy Court agrees to such relief.[17] Finally, the appointment of an Official Committee of Public Entities may very well expedite resolution of key issues in these bankruptcy cases, which would save considerable administrative costs for Debtors.

//

//

//

---

[16] *In re Hills Stores, Co.*, 137 B.R. 4, 6 (Bankr. S.D.N.Y. 1992); *see also In re Budd*, 512 B.R. at 915.

[17] An Official Committee of Public Entities would only need to engage its own accountants or financial advisors in the event there is a dispute with the other committees or issues arise regarding the sharing of information among the committees, assuming equal sharing of and access to such professionals.

20

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

# V.
## CONCLUSION

For the reasons set forth above, the Public Entities respectfully request that this Court enter an order, pursuant to 11 U.S.C. § 1102(a)(2) and/or § 105(a), directing the United States Trustee to promptly appoint an Official Committee of Public Entities consisting of the members of the Public Entities, and for such other and further relief as the Court deems appropriate.

Dated: March 1, 2019

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

By: _/s/ Sander L. Esserman_
Sander L. Esserman

Counsel for Creditors
Public Entities Impacted by the Wildfires

Dated: March 1, 2019

BARON & BUDD, P.C.

By: _/s/ Scott Summy_
Scott Summy

Counsel for Creditors
Public Entities Impacted by the Wildfires

Dated: March 1, 2019

NUTI HART LLP

By: _/s/ Kimberly S. Fineman_
Kimberly S. Fineman

Counsel for Creditors
Public Entities Impacted by the Wildfires

**EXHIBIT B**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**U.S. Department of Justice**

*United States Trustee*
*Northern and Eastern*
*Districts of California and Nevada*

| | |
|---|---|
| *Regional Office* | *415-705-3300* |
| *450 Golden Gate Avenue, Suite 05-0153* | *FAX 415-705-3367* |
| *San Francisco, California 94102* | |

*Website address: www.usdoj.gov/ust/r17*

February 20, 2019

Sander L. Esserman
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street
Suite 2200
Dallas, TX 75201-2689

> Re:     PG&E, Case No. 19-30088
>          Request for Public Entities Committee

Dear Mr. Esserman:

Thank you for your letter of February 6, 2019, in which you ask the United States Trustee to consider appointing an Official Committee of Public Entities ("Public Entities Committee") in PG&E's jointly administered chapter 11 case.

Although we do not reject or contest the reasons you set forth in favor of the appointment of a Public Entities Committee, we have concluded that appointment of such a committee would be outside the United States Trustee's statutory authority. Specifically, the public entities noted in your letter are not eligible to serve on a committee under the definition of "person" found in 11 U.S.C. § 101(41).

11 U.S.C. § 1102(b) governs committee appointments and composition. Section 1102(b)(1) requires that the United States Trustee appoint "persons" to serve on official committees. Under 11 U.S.C. § 101(41), "[t]he term 'person' includes individual, partnership, and corporation, but does not include governmental unit. . . ." 11 U.S.C. § 101(41). Before 1994, the Bankruptcy Code's definition of "person" excluded all governmental units. In 1994 Congress amended the Bankruptcy Code to include a very limited subset of governmental units (not applicable here) within the definition of "person" for purposes of § 1102. *Id.* Had Congress intended for all governmental units to be eligible for committee service, the amendment would not have been so narrowly and specifically tailored.

Moreover, the change was adopted in § 106 of the Bankruptcy Reform Act of 1994, Pub.L.No. 103-394 (1994), which was entitled "Definition Relating to Eligibility to Serve on Chapter 11 Committees." Although the title of the section of the bill is not technically part of the legislation, it clearly indicates Congressional intent. Only governmental units holding the defined types of claims are "persons" eligible to serve on committees. Other governmental units are not eligible for committee membership. The public entities identified in your correspondence are governmental units of the type excluded from appointment to a committee pursuant to 11 U.S.C. § 1102(b)(1). As such, the United States Trustee lacks the statutory authority to form the requested committee.

Thank you for raising this issue and please let me know if you want to discuss this matter further.

Respectfully,

*Andrew R. Vara*
Andrew Vara
Acting United States Trustee

James Snyder
Acting United States Trustee

cc:    Donna S. Tamanaha, Assistant United States Trustee for Region 17 (415-705-3300)
       Timothy Laffredi, Assistant United States Trustee for Region 17 (408-535-5525 x229)

# **EXHIBIT C**

STUTZMAN BROMBERG ESSERMAN & PLIFKA, P.C.
2323 BRYAN STREET, SUITE 2200
DALLAS, TX 75201-2689
TELEPHONE: 214-969-4900

7

**From:** Sander L. Esserman
**Sent:** Thursday, February 28, 2019 12:52 PM
**To:** stephen.karotkin@weil.com
**Cc:** matthew.goren@weil.com; Cliff I. Taylor <taylor@sbep-law.com>
**Subject:** PGE

Steve—thank you for the time this morning to discuss the motion for a Public Entities Committee.  We request that this matter be set on the docket for March 13th, with a response date of March 11th. I would hope you would agree to those dates, if not, we will submit it to the Court to place on the agenda for that date and the Court will either do so or place it on another date as he sees appropriate.   As I mentioned, the position of the U.S. Trustee is—they think there might be merit to a Public Entities Committee, but believe the U.S. Trustee lacks statutory authority to appoint any public entity to any committee (or to form a Public Entities Committee) because the definition of "persons" under the bankruptcy code does not include a"governmental until" except in limited inapplicable circumstances.  Section 101 (41).  I think they are mistaken and there is case law to the contrary as well as the statute itself as we explain in the moving papers.  These issues have been pending and have been discussed with the U.S. Trustee during much of February.

I think a Public Entities Committee should be formed for the following reasons (among others):

- Not all public entities are represented or have even made an appearance in the bankruptcy yet.  There could be other public entities that would want to serve on a Public Entities Committee.

- The public entities should have a unified voice, and the Debtors should have one point of contact when dealing with the public entities and negotiating a plan of reorganization.

- The public entities will need a forum to consider and take unified action on any regulatory or legislative relief for which the Debtors may seek the support or acquiescence of the public entities.

- The public entities have separate and distinct interests, different types of damages, and the bases of their claims differ from the general unsecured creditors and other tort claimants.

- There will likely be numerous issues and matters that arise during these bankruptcy proceedings where the interests of the public entities will diverge from those of the other creditors and the public entities should be provided a mechanism to act as a group.


We would further request as part of our motion to share certain financial professionals with the Tort Committee or Unsecured Committee should they so consent such that a Public Entities Committee could have access to and direct inquires to a financial professional.  I would hope this would save the Debtor the expense of having separate financial advisors for the proposed, but such arrangement is in large part dependent on the view of others.

I look forward to your response, hopefully by the close of business today.

Thanks,

Sandy

Sander Esserman
Stutzman, Bromberg, Esserman & Plifka,
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201-2689
Telephone: (214) 969-4910
Facsimile: (214) 969-4999
Email: esserman@sbep-law.com


This e-mail message, including any attachments, is intended only for the confidential use of the recipient(s) named above and, if intended as an attorney-client communication and/or work product, should be considered privileged and confidential. If you have received this message in error, please notify us by reply e-mail and then delete the original message. Nothing contained in this email message nor any attachment shall satisfy the requirements for a writing nor constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, Uniform Electronic Transactions Act nor any other law, rule or regulation, now or hereafter in effect, governing electronic transactions.