WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case<br>No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| - and - | |
| **PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.** | **MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 503(c) FOR ENTRY OF AN ORDER (I) APPROVING SHORT-TERM INCENTIVE PLAN AND (II) GRANTING RELATED RELIEF** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | Date: March 27, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |
| ☒ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 105(a), 363, and 503(c) of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order (I) approving a short-term incentive plan applicable to eligible non-insider employees and (II) granting related relief. In support of this Motion, the Debtors respectfully submit the Declarations of Dinyar Mistry (the "**Mistry Declaration**") and Douglas J. Friske (the "**Friske Declaration**"), filed contemporaneously herewith.

A proposed form of order granting the relief requested herein is annexed hereto as **<u>Exhibit A</u>** (the "**Proposed Order**").

# **TABLE OF CONTENTS**

I.    JURISDICTION ...............................................................................................7

II.   BACKGROUND .............................................................................................7

III.  PRELIMINARY STATEMENT .....................................................................8

IV.  RELIEF REQUESTED ...................................................................................10

V.   THE 2019 STIP..............................................................................................10

     A.    Historical Short-Term and Long-Term Incentive Plans..............................10

     B.    Development of 2019 STIP ................................................................5

     C.    Summary of 2019 STIP .....................................................................6

VI.  BASIS FOR RELIEF REQUESTED ..............................................................9

     A.    The 2019 STIP Is Appropriate Under Section 363(b)(1) of the Bankruptcy Code....................................................................................................10

     B.    The 2019 STIP is Permitted Under Sections 503(c)(1) and (2) of the Bankruptcy Code ...............................................................................11

     C.    The 2019 STIP Satisfies Section 503(c)(3) of the Bankruptcy Code..........13

VII.  REQUEST FOR BANKRUPTCY RULE 6004(H) WAIVER...................151

VIII. NOTICE.........................................................................................................16

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-30088    Doc# 782    Filed: 03/06/19    Entered: 03/06/19 20:17:04    Page 3 of 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berg & Berg Enters., LLC v. Boyle*,
178 Cal. App. 4th 1020 (2009) ................................................................................. 16

*In re Borders Grp., Inc.*,
453 B.R. 459 (Bankr. S.D.N.Y. 2011) ................................................................. 18, 20

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
60 B.R. 612 (Bankr. S.D.N.Y. 1986) ....................................................................... 16

*In re Dana Corp.*
358 B.R. 567 (Bankr. S.D.N.Y. 2006) ........................................................ 17, 18, 19, 20

*F.D.I.C. v. Castetter*,
184 F.3d 1040 (9th Cir. 1999) ................................................................................. 16

*In re Ionosphere Clubs, Inc.*,
98 B.R. 174 (Bankr. S.D.N.Y. 1989) ....................................................................... 16

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,
147 B.R. 650 (S.D.N.Y. 1992) ................................................................................. 16

*In re Residential Capital, LLC*,
491 B.R. 73 (Bankr. S.D.N.Y. 2013) ....................................................................... 20

*Scouler & Co., LLC v. Schwartz*,
No. 11-CV-06377 NC, 2012 WL 1502762 (N.D. Cal. Apr. 23, 2012) ...................... 16

*In re TBR USA, Inc.*,
429 B.R. 599 (Bankr. N.D. Ind. 2010) ..................................................................... 18

*In re Velo Holdings, Inc.*,
472 B.R. 201 (Bankr. S.D.N.Y. 2012) ................................................................. 18, 19

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

4

**Statutes**

11 U.S.C. § 101(31) .................................................................................................... 17

11 U.S.C. § 105(a) ............................................................................................... 2, 9, 10

11 U.S.C. § 363 .................................................................................................... 2, 9, 15

11 U.S.C. § 363(b) ........................................................................................... 10, 14, 18

11 U.S.C. § 363(b)(1) ................................................................................................. 15

11 U.S.C. § 503 .......................................................................................................... 14

11 U.S.C. § 503(c) ............................................................................................... 2, 9, 18

11 U.S.C. § 503(c)(1) ........................................................................................... 16, 17

11 U.S.C. § 503(c)(2) ........................................................................................... 16, 17

11 U.S.C. § 503(c)(3) ........................................................................................... 18, 19

11 U.S.C. § 507 .......................................................................................................... 11

11 U.S.C. § 1107 .......................................................................................................... 7

11 U.S.C. § 1108 .......................................................................................................... 7

28 U.S.C. § 157 ............................................................................................................ 7

28 U.S.C. § 157(b) ....................................................................................................... 7

28 U.S.C. § 1334 .......................................................................................................... 7

28 U.S.C. § 1408 .......................................................................................................... 7

28 U.S.C. 1409 ............................................................................................................ 7

**Other Authorities**

B.L.R. 5011-1(a) .......................................................................................................... 7

Bankruptcy Rule 1015(b) ............................................................................................. 1

Bankruptcy Rule 2002 ................................................................................................ 22

Bankruptcy Rule 6003 ................................................................................................ 11

Bankruptcy Rule 6004 ...................................................................................... 2, 10, 11

Case: 19-30088     Doc# 782     Filed: 03/06/19     Entered: 03/06/19 20:17:04     Page 5 of
23

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Bankruptcy Rule 6004(h)..............................................................................................21, 22

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,*
    General Order 24 (N.D. Cal.)...........................................................................................7

Case: 19-30088    Doc# 782    Filed: 03/06/19    Entered: 03/06/19 20:17:04    Page 6 of
23

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District for the Northern District of California (the "**Bankruptcy Local Rules**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.   BACKGROUND

PG&E Corp. was incorporated in 1995 and is a holding company whose primary operating subsidiary is the Utility, a public utility operating in northern and central California.  *See Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").  The Utility was incorporated in 1905 and PG&E Corp. became the holding company of the Utility in 1997.  The Utility provides natural gas and utility services to roughly 16 million customers and the Debtors together employ approximately 24,000 regular employees, approximately 20 of whom are employed by PG&E Corp.  *Id.*

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court the Chapter 11 Cases.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On February 12, 2019, the Acting United States Trustee for Region 3 (the "**UST**") appointed a nine-member Official Committee of Unsecured Creditors (the "**Creditors Committee**").  On February 13, 2019, the UST appointed an eleven-member Official Committee of Tort Claimants (the "**Tort Claimants Committee**").

The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the Wells Declaration.

## III.     PRELIMINARY STATEMENT

The Debtors seek through these Chapter 11 Cases to address, among other things, the claims asserted and to be asserted against them as a consequence of the 2017 and 2018 Northern California wildfires.  No resolution of the issues confronting the Debtors would be complete without the Debtors devoting substantial time and resources to investing in infrastructure and initiatives designed to further mitigate future wildfire risks and continuing to foster a strong safety culture.  These objectives are critical to emerging from chapter 11 in a manner that maximizes value for all of the Debtors' economic stakeholders, including wildfire claimants, local and state municipalities, the communities the Debtors serve, the Debtors' other creditors, and PG&E Corp.'s shareholders.  In light of the devastating 2018 Northern California wildfires, the hardships incurred by communities and others, and PG&E's financial circumstances and need to seek relief under chapter 11, the Utility's Board of Directors (the "**Board**") adopted senior management's recommendation and exercised its discretion to forego paying the "at-risk" short-term incentive-based component of its 2018 overall compensation program (the "**2018 STIP**") to approximately 11,000 of the Debtors' employees who participated in the program.

Historically, employee compensation for a significant portion of the Debtors' employees has been comprised of two components: base salary and a discretionary, incentive-based component which includes an annual short-term incentive plan (the "**STIP**").  Compensation awards under the STIP have ranged from approximately 6% to 20% of an employee's total compensation, including equity grants.  The combination of base pay and incentive-based compensation for such employees brings their compensation in-line with the market and their peers in the utility space.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Over the past several weeks the Debtors have worked with their advisors, including Willis Towers Watson PLC ("**WTW**"), an experienced compensation consultant, to formulate necessary adjustments to the incentive-based component of their employee compensation program to address, among other things, the pending Chapter 11 Cases.  As a result of this effort, the Debtors have modified, in certain respects, the STIP for the 2019 fiscal year (the "**2019 STIP**").  As with prior years, the 2019 STIP is purely incentive-based, conditioning any award granted under the plan (the "**2019 STIP Awards**") on the Debtors meeting carefully designed safety, financial, and operational metrics (collectively the "**Performance Metrics**"), which are described in further detail below.  Also, as with prior years, the Board retains complete discretion to determine whether to pay out the 2019 STIP Awards.

The 2019 STIP gives substantial weight to safety performance metrics—with those metrics constituting 50% of the formula for determining a 2019 STIP Participant's incentive-based compensation eligibility.  In deliberately designing the plan this way, the Debtors are sending a clear message to their workforce that the safety of the communities the Debtors serve and of their employees is of paramount concern during the restructuring process and into the future.

The 2019 STIP was formulated to provide continued market-based compensation and appropriate incentives for non-insider employees.  Company "insiders" who are the company's most senior leaders are not eligible to participate in the 2019 STIP. [1]  The Debtors believe that the 2019 STIP is important to maintaining and appropriately incentivizing their work force, is reasonable, and that adoption and implementation of the 2019 STIP is a sound exercise of the Debtors' business judgment.  Further, the Debtors believe that implementation of the 2019 STIP will enhance enterprise value for the benefit of

---

[1] The Debtors are currently considering proposing an incentive-based compensation plan for their most senior employees and a retention-based compensation plan for certain key, non-insider employees.  Any such plans will, of course, be subject to this Court's approval.

Case: 19-30088    Doc# 782    Filed: 03/06/19    Entered: 03/06/19 20:17:04    Page 9 of 23

all the Debtors' stakeholders, and promote a successful reorganization consistent with the intent and purpose of chapter 11.

## IV.    RELIEF REQUESTED

By this Motion, pursuant to sections 105(a), 363, and 503(c) of the Bankruptcy Code and Bankruptcy Rule 6004, the Debtors seek entry of an order approving the 2019 STIP.

## V.    THE 2019 STIP

### A.    Historical Short-Term and Long-Term Incentive Plans

For over 30 years, the Debtors have offered an annual incentive compensation plan to a broad group of their employees whereby annual incentive awards are linked to the Debtors' achievement of certain key performance metrics. This provides a clear direction and incentive to participants to promote important objectives of the Debtors. Historically, these annual incentive plans have been successful in realizing key operational objectives by aligning eligible employees' interests with those of the Debtors and effectively linking cash awards under the incentive plans to the overall safety, performance, and efficiency of the Debtors' operations. Notably, the STIP component of compensation is an important part of each participant's total compensation and is comparable to the incentive-based pay components of the Debtors' industry peers.

The Debtors' annual short-term incentive plan or "STIP" for the 2018 calendar year was structured to provide cash awards (the "**2018 STIP Awards**") to eligible employees based on the Debtors' achievement of enterprise-wide performance targets, which included metrics related to public and employee safety, customer satisfaction, and financial performance, which was adjusted for achievement of individual goals. The STIP is part of a competitive compensation package designed to motivate and incentivize employees who are necessary for the Debtors' continued ability to deliver safe and reliable electric and gas services. By design, however, as in previous years, the 2018 STIP Awards

4

were not guaranteed, and under the terms of the 2018 STIP, the Board retained complete discretion as to whether the Debtors' performance for the 2018 fiscal year warranted payment of the 2018 STIP Awards.

The Debtors originally advised the Court that they would seek authorization to pay 2018 STIP Awards in connection with the final hearing on the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 507 and Fed. R. Bankr. P. 6003 and 6004 for Interim and Final Authority to (I) Pay Prepetition Wages, Salaries, Withholding Obligations, and Other Compensation and Benefits; (II) Maintain Employee Benefits Programs; and (III) Pay Related Administrative Obligations* [Docket No. 8]. As stated, however, given the 2018 Northern California wildfires and the material deterioration in the Debtors' financial situation, the Board adopted senior management's recommendation and exercised its discretion to forego payment of the 2018 STIP Awards, and the Debtors withdrew their request for authority to pay such awards.

Historically, the Debtors have also maintained an equity-based long-term incentive plan (the "**LTIP**") that covered approximately 400 more senior employees, who also participated in the annual STIP. As set forth below, the Debtors do not plan to issue any LTIP equity grants in 2019, but have incorporated a portion of the LTIP value into the proposed 2019 STIP for certain participants who are otherwise LTIP eligible.

### B. Development of 2019 STIP

Acknowledging that employee performance and motivation is critical to achieving the company's goals, the Debtors' compensation committee (the "**Compensation Committee**") comprised of four independent directors (none of whom will be participating in the 2019 STIP), with the assistance of WTW, conducted a thorough evaluation of the Debtors' existing STIP for purposes of formulating the 2019 STIP. This evaluation resulted in a modification of (i) the Performance Metrics to put a greater emphasis on safety and financial performance, and (ii) the timing and level of potential awards to address the uncertainties associated with the Chapter 11 Cases and the absence of any LTIP grants in 2019.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

As described more fully below, certain of the Performance Metrics applicable to the 2019 STIP have been modified to reflect the current year priorities. In addition, the Debtors, in consultation with their advisors, determined that the 2019 STIP should provide for quarterly rather than annual payments, and that the 2019 STIP Awards should be adjusted in the following manner:

- To compensate for the elimination of the 2019 LTIP, 2019 STIP Awards for participants otherwise eligible for an LTIP equity grant have been adjusted to include 50% of the grant value of the LTIP award that would have been received for 2019; and

- 2019 target STIP opportunities for non-LTIP eligible employees have been increased by 25% over 2018 STIP target opportunity levels.

Although the level of potential awards changed, the 2019 STIP reduces the range of potential awards. 2019 STIP Awards can range from 0 to 150% of target levels, whereas the 2018 STIP allowed for awards to range from 0 to 200% of target (in each case, not taking into account the individual performance modifier or "IPM" referred to below).

After extensive deliberations and consultation with WTW, the Compensation Committee approved the 2019 STIP and the 2019 Performance Metrics on January 23, 2019.

**C.      Summary of 2019 STIP**

The following is a summary of the key terms of the 2019 STIP:

1. **2019 STIP Participants**: Approximately 10,000 non-insider employees will be eligible to receive 2019 STIP Awards (the "**2019 STIP Participants**").

2. **Implementation and Performance Period**: To be implemented commencing in the first quarter of 2019. The Performance Metrics will be measured quarterly from January 1, 2019 through December 31, 2019. Following internal audit and certification of performance, 2019 STIP Awards will be paid out on a quarterly basis based on cumulative year-to-date results.

3. **Total Plan Costs**: The aggregate amount of potential 2019 STIP Awards at target is approximately $235 million, with a minimum payout of $0 and an aggregate maximum payout of approximately $350 million inclusive of the IPM (as defined below). Historically, the Debtors have never paid out STIP Awards at the maximum level.

4. **2019 STIP Awards**:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

6

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

a)     **Award Range:** STIP Participants will receive (a) 100% of the applicable STIP Award if the Debtors achieve, but do not exceed target performance levels (the "**Target STIP Awards**") with respect to the Performance Metric, (b) 50% of the Target STIP Award if the Debtors meet but do not exceed the threshold performance levels (the "**Threshold STIP Awards**"), and (c) 150% of Target STIP Awards if the Debtors meet maximum performance levels ("**Maximum STIP Awards**"). STIP Awards between threshold and target and STIP Awards between target and maximum each will be interpolated on a linear basis. STIP Participants will not be eligible to receive STIP Awards if the Debtors do not meet threshold-level Performance Metrics. If a STIP Participant voluntarily terminates employment, all future awards are forfeited. If a STIP Participant is involuntarily terminated, other than for cause, the STIP Participant shall receive the next quarterly payment, but shall receive no future payments. The average target opportunity is approximately 15% of base salary per participant.

b)     **Individual Performance Modifier:** STIP Participants at the director level and below who substantially exceed certain individualized performance goals (limited to approximately 10% of such STIP Participants) will be eligible, on a quarterly basis, to receive an individual performance modifier ("**IPM**") that will entitle them to receive a supplement to their STIP Award equal to 25% of the total value of their STIP Award. At target, this is estimated not to exceed, in the aggregate, approximately $5.5 million.

c)     **Board Discretion:** Any payments of 2019 STIP Awards are ultimately subject to complete Board discretion, including a decision to reduce or forego payment entirely.

As noted above, (i) 2019 STIP Awards for LTIP eligible 2019 STIP Participants have been adjusted to include 50% of the value of any LTIP award such employees would have received but for the suspension of the LTIP, and (ii) 2019 STIP Participants not eligible for LTIP awards will receive a 25% increase over the 2018 STIP Award levels.

Case: 19-30088   Doc# 782   Filed: 03/06/19   Entered: 03/06/19 20:17:04   Page 13 of 23

5. **Performance Metrics and Weighting:**

    a)     **Safety Metrics (inclusive of all safety-related Performance Metrics) (Weight: 50%):**

        (i)     **Nuclear Reliability and Safety Indicator (Weight: 5%):** Measures nuclear power generation and safety. The metric scores are based on 11 industry-accepted performance indicators.

        (ii)     **Public Safety Index (Weight: 10%):** This metric has been revised to include two new equally weighted sub-metrics:

            o   **Enhanced Vegetation Management ("EVM"):** EVM measures how many circuit miles of vegetation have been cleared under the EVM program within high-fire risk areas to reduce wildfire risk.

            o   **System Hardening:** System Hardening measures completed circuit miles of fire design applications within high-fire risk areas.

        (iii)     **First-Time ILI Miles (Weight: 10%):** This metric measures and sets targets for completion of first-time inspections of natural gas pipelines following the introduction of in-line inspection tools.

        (iv)     **Asset Records Duration Index (Weight: 10%):** Weighted evenly between natural gas and electricity jobs. This metric tracks and sets targets for the average number of days required to complete the as-built process of capital and expense jobs.

        (v)     **Serious Injuries and Fatalities Corrective Actions Index (15%):** Weighted evenly between natural gas and electricity transmission jobs. This metric tracks and sets targets for the average number of days required to complete the as-built process of capital and expense jobs.

    b)     **Customer Satisfaction (Weight: 10%):** Measures and sets targets for the number of customer complaints escalated to the CPUC. This is a new metric.

    c)     **Financial Performance (Weight: 40%):** Earnings from Operations ("**EFO**"): Measures financial performance from core operations calculated as net income adjusted for income or expenses associated with events or circumstances outside of ongoing core operations. Company-wide EFO results are publicly disclosed on a quarterly basis through SEC filings.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The pool of approximately 10,000 2019 STIP Participants is largely comprised of those employees who were eligible to participate in the 2018 STIP. As stated, no "insiders," who are the Debtors' most senior leaders, are included among the 2019 STIP Participants. The 2019 STIP Participants, many of whom have specialized training and experience directly related to utility management and regulatory compliance, work across various departments within the Debtors' organization, including operations, engineering, customer organization, finance, human resources, information technology, and legal, and have developed valuable institutional knowledge regarding the Debtors' ongoing business operations.

WTW has reviewed the terms and provisions of the 2019 STIP and believes that the structure, Performance Metrics, design and range of potential 2019 STIP Awards are consistent with the Debtors' industry, with the only material difference in design being quarterly payments, which, however, are very common in companies undergoing a restructuring. *See* Friske Declaration at 8.

## VI.  BASIS FOR RELIEF REQUESTED

The relief requested in this Motion should be approved for several reasons. First, the 2019 STIP largely represents the ordinary course continuation of prepetition compensation practices and constitutes a sound exercise of the Debtors' business judgment. The program is reasonable in view of the need to maintain competitive market compensation, particularly in the circumstances of these Chapter 11 Cases, and in view of the incentive-based nature of the 2019 STIP. Further, the 2019 STIP fully complies with the requirements of sections 363(b) and 503 of the Bankruptcy Code. The 2019 STIP does not include any insiders and, in any event, is incentive-based, and is consistent with industry metrics. Further, the 2019 STIP clearly is justified by the facts and circumstances of these Chapter 11 Cases, and aligns the participants' compensation with appropriate performance goals that will preserve and maximize value for the all parties in interest.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

9

### A. The 2019 STIP Is Appropriate Under Section 363(b)(1) of the Bankruptcy Code

Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a Court may authorize a debtor to enter into transactions outside the ordinary course of business where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *See, e.g.*, *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also F.D.I.C. v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999) (the business judgment rule "requires directors to perform their duties in good faith and as an ordinarily prudent person in a like circumstance would"). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts construing California corporate law have consistently declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions were made in good faith. *Scouler & Co., LLC v. Schwartz*, No. 11-CV-06377 NC, 2012 WL 1502762, at *4 (N.D. Cal. Apr. 23, 2012); *Berg & Berg Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020, 1046 (2009).

Here, implementation of the 2019 STIP is a proper exercise of the Debtors' business judgment and is in the best interests of the Debtors and their stakeholders. The 2019 STIP Participants are critical to ongoing operations and to preserving and enhancing enterprise value, and it is imperative that the Debtors provide appropriate, market-based compensation and incentives to ensure the success of the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Debtors' restructuring efforts. As stated above, the 2019 STIP largely continues the Debtors' historical incentive compensation practices, with certain modifications to the Performance Metrics to further emphasize safety and financial performance and certain modifications to award levels and timing of payment to address the circumstances attendant to the pending Chapter 11 Cases. *See In re Dana Corp.*, 358 B.R. 567, 579 (Bankr. S.D.N.Y. 2006) (finding that because a debtor's pospetition incentive plan was a "refinement" of historical practices, the proposed plan was within the ordinary course).

Just as with the 2018 STIP and previous STIPs, the Compensation Committee and the Board undertook a rigorous process to ensure that the 2019 STIP is designed with the near-term operational and financial objectives of the Debtors in mind—which resulted in the development of new, targeted metrics and refinements to existing metrics. Notably, employees can earn payments if—and only if— the Debtors meet the Performance Metrics under the 2019 STIP and the Board acts to approve the payments.

Additionally, the 2019 STIP closely resembles historical STIPs in many respects, including (a) remaining an "at-risk" plan with no guarantee of payment, (b) providing for quarterly measurements, and (c) providing for a merit-based IPM adjustment for a limited number of participants. Moreover, the costs associated with the 2019 STIP are in line with the Debtors' historical annual compensation plans when factoring in the LTIP value.

### B. The 2019 STIP is Permitted Under Sections 503(c)(1) and (2) of the Bankruptcy Code

The 2019 STIP is permissible under section 503(c)(1) and (2) of the Bankruptcy Code. Specifically, section 503(c)(1) of the Bankruptcy Code restricts payments made to "insider[s] of the debtor for the purpose of inducing such person to remain with the debtor's business"—*i.e.*, those insider plans that are essentially "pay to stay" plans—and section 503(c)(2) of the Bankruptcy Code restricts severance payments to insiders. *In re Velo Holdings Inc.*, 472 B.R. 201, 209–10 (Bankr. S.D.N.Y. 2012);

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*In re Borders Grp., Inc.*, 453 B.R. 459, 471 (Bankr. S.D.N.Y. 2011) (quoting *In re Dana Corp.*, 358 B.R. at 571). Simply put, because the 2019 STIP does not contemplate any payments to insiders, and, in any event, because the 2019 STIP is incentive based, sections 503(c)(1)–(2) of the Bankruptcy Code are not applicable to the relief requested in this Motion.

And, even if a consideration of the issue of "insiders" were at all relevant, which plainly it is not, as stated, no insiders are eligible to participate in the 2019 STIP. The Bankruptcy Code defines an "insider" to include an "officer of the debtor" and a "person in control of the debtor," (11 U.S.C. § 101(31)). It is well-established, however, that an employee's job title, alone, does not make such employee an "insider" as defined by the Bankruptcy Code. *See In re Borders Grp., Inc.*, 453 B.R. at 469 (noting that "[c]ompanies often give employees the title 'director' or 'director-level,' but do not give them decision-making authority akin to an executive" and concluding that certain "director level" employees in that case were not insiders). "Insider" status under the Bankruptcy Code turns on the degree to which a purported "insider" controls the Debtor. *See, e.g., id.* at 469 ("[I]nsiders must have at least a controlling interest in the debtor or . . . exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets.") (citations omitted); *In re TBR USA, Inc.*, 429 B.R. 599, 624–25 (Bankr. N.D. Ind. 2010) ("Control means the actual exercise of managerial discretion," or "usurping the power of the debtor's directors and officers to make business decisions.") (internal quotation marks and citations omitted).

Although certain of the 2019 STIP Participants hold titles such as "director," "manager," or "vice-president," none exercise a level of control commensurate with that of an "insider" within the purview of section 101(31) of the Bankruptcy Code. No 2019 STIP Participants (a) report directly to the Board, (b) are appointed directly by the Board, (c) direct the Debtors' overall corporate governance, (d) control the Debtors' company policy, (e) exercise managerial control over the Debtors' operations

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-30088    Doc# 782    Filed: 03/06/19    Entered: 03/06/19 20:17:04    Page 18 of 23

as a whole, or (f) have the ability to determine their own compensation. Consistent with the aforementioned limitations on authority, none of the 2019 STIP Participants has discretionary control over substantial budgetary amounts. In each case, a 2019 STIP Participant must receive direction or consent from a senior company officer before such 2019 STIP Participant can take any significant action with respect to the Debtors' corporate policies, the disposition of significant assets, or any other action with material economic consequences. Thus, no 2019 STIP Participant's role or responsibility in the Debtors' business warrants treating him or her as an "insider" within the purview of section 503(c) of the Bankruptcy Code. Moreover, as stated above, because the 2019 STIP is incentive based, the issue of whether there is any insider participation is irrelevant.

### C. The 2019 STIP Satisfies Section 503(c)(3) of the Bankruptcy Code

Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). Courts have concluded that whether payments to employees are justified by the "facts and circumstances" of a case is to be determined by application of the same business judgment standard utilized under section 363(b) of the Bankruptcy Code. *See In re Velo Holdings Inc.*, 472 B.R. at 209 (Bankr. S.D.N.Y. 2012) ("[The] 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)."); *In re Dana Corp.*, 358 B.R. at 576–77 (describing six factors that courts may consider when determining whether the structure of a compensation proposal meets the "sound business judgment test" in accordance with section 503(c)(3) of the Bankruptcy Code). Accordingly, the determination of whether the 2019 STIP is justified by the facts and circumstances of the case and the analysis of whether the approval of such plan is a sound exercise of the debtor's business judgment under section 363(b) are the same.

Courts have generally utilized the *Dana* factors when determining if the structure of a compensation proposal and the process for its development meet the business judgment test. *See, e.g.*,

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

13

*In re Residential Capital, LLC*, 491 B.R. 73, 84–85 (Bankr. S.D.N.Y. 2013) (applying the *Dana* factors to the debtors' retention plan for non-insiders and approving the plan as an exercise of sound business judgment); *In re Borders Grp., Inc.*, 453 B.R. at 473–74 (same). In *Dana*, the Bankruptcy Court set forth the following factors for evaluating whether a debtor has satisfied the "sound business judgment" test for purposes of the approval of a compensation plan under section 503(c)(3) of the Bankruptcy Code:

- Is there a reasonable relationship between the plan proposed and the results to be obtained, *i.e.*, will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?

- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

- Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

- Is the plan or proposal consistent with industry standards?

- What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*In re Dana Corp.*, 358 B.R. at 576–77. As set forth below, to the extent applicable, all of these factors are satisfied as to the 2019 STIP.

     *First*, in light of the Debtors' current circumstances, the 2019 STIP was carefully tailored to (a) drive performance to achieve critical safety, operational, and financial objectives, and (b) provide competitive compensation that motivates employees to achieve the Performance Metrics that will promote safety and maximize enterprise value.

     *Second*, the 2019 STIP falls within the range of competitive practice relative to company size and incentive structure and design of peer companies. Further, the cost of the 2019 STIP is consistent

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

14

with the Debtors' ordinary course, historical incentive compensation structure, and certainly reasonable in light of the size of the Debtors' business enterprise and the number of participants in the plan.

*Third*, the 2019 STIP is available to a broad group of approximately 10,000 of the Debtors' employees, including certain union-represented employees. The 2019 STIP is consistent with past practice as to scope and participation and is designed to provide customary, incentive-based compensation.

*Fourth*, as stated above, and in the Friske Declaration, the 2019 STIP is consistent with industry standards in terms of scope, design, and metrics. Indeed, a fundamental purpose of the 2019 STIP is to provide the participants with competitive compensation in a manner that aligns their interests with the interests of the Debtors' business and the maximization of value for the benefit of the Debtors' economic stakeholders.

Lastly, again, as referenced above, the 2019 STIP is the product of due diligence with the input of the Debtors' professional advisors. WTW has reviewed the Performance Metrics and the plan design and believes that it comports with plans adopted by peers in the Debtors' industry.

Accordingly, the Debtors request that the Court find that adoption of the 2019 STIP is a sound exercise of the Debtors' business judgment and the facts and circumstances of the Chapter 11 Cases warrant approval of the 2019 STIP.

## VII. Request for Bankruptcy Rule 6004(h) Waiver

It is important for employee morale and the establishment of appropriate incentives that the 2019 STIP become effective promptly. Thus, the Debtors request a waiver of the 14-day stay (to the extent such stay applies) of an order authorizing the use, sale, or lease of property outside the ordinary course of business under Bankruptcy Rule 6004(h). Accordingly, the Debtors request that the Court find that ample cause exists to grant a waiver of Bankruptcy Rule 6004(h) and waive the stay to the extent it applies.

## VIII. Notice

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Tort Claimants Committee; (iv) Counsel to the Engineers and Scientists of California Local 20;  (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) the Office of the California Attorney General; (viii) the California Public Utilities Commission; (ix) the Nuclear Regulatory Commission; (x) the Federal Energy Regulatory Commission; (xi) the Office of the United States Attorney for the Northern District of California; (xii) counsel for the agent under the Debtors' debtor in possession financing facility; and (xiii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

[*Remainder of page intentionally left blank*]

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties interests, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: March 6, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By:  /s/ *Tobias S. Keller*

Tobias S. Keller

*Proposed Attorneys for Debtors
and Debtors in Possession*

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119