WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| - and - | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| Debtors. | **DECLARATION OF DINYAR MISTRY IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 503(c) FOR ENTRY OF AN ORDER (I) APPROVING SHORT-TERM INCENTIVE PLAN AND (II) GRANTING RELATED RELIEF** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | |
| ☒ Affects both Debtors | Date: March 27, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

I, Dinyar Mistry, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

I am the Senior Vice President of Human Resources and Chief Diversity Officer of PG&E Corporation and Pacific Gas and Electric Company (collectively, **"PG&E"** or the "**Debtors**"), and have served in my current role since 2016. In my current capacity as Senior Vice President of Human Resources and Chief Diversity Officer, my duties include oversight of the Debtors' talent acquisition, engagement and retention, compensation programs, employee development and training, labor relations, and diversity and inclusion programs. Since joining PG&E in 1994, I have held numerous positions, including Vice President of Regulation and Rates, Vice President of Internal Audit and Compliance, and Controller. I hold a Bachelor of Commerce in accounting and financial management from Bombay University, a Master of Business Administration from Texas Christian University, and a Master of Science in taxation from Golden Gate University. I am registered as a Certified Public Accountant in the State of California. I am knowledgeable and familiar with the Debtors' day-to-day operations and, specifically, the Debtors' employee benefits and compensation programs, and the processes by which they are administered and developed. I am also generally familiar with compensation practices of the Debtors' peer companies in the utility industry. I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(c) for Entry of an Order (I) Approving Short-Term Incentive Plan and (II) Granting Related Relief* (the "**Motion**").[1] The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' other employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify to the facts set forth in this Declaration.

The Debtors have devoted substantial time and resources to investing in infrastructure and initiatives designed to further mitigate future wildfire risks and continuing to foster a strong safety culture. I believe that these objectives are critical to emerging from chapter 11 in a manner that maximizes value for all of the Debtors' economic stakeholders, including wildfire claimants, local and

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

state municipalities, the communities the Debtors serve, the Debtors' other creditors, and PG&E Corp.'s shareholders.

Over the past several weeks, the Debtors have worked with their advisors, including Willis Towers Watson ("**WTW**"), an experienced compensation consultant, to formulate necessary adjustments to the incentive-based component of their employee compensation program to address, among other things, the pending Chapter 11 Cases. As a result of this effort, the Debtors have modified, in certain respects, the historical, short-term incentive plan for the 2019 calendar year (the "**2019 STIP**"). As with prior years, the 2019 STIP is purely incentive-based, conditioning any award granted under the plan (the "**2019 STIP Awards**") on the Debtors meeting carefully designed safety, financial, and operational metrics (collectively the "**Performance Metrics**"), which are described in further detail below. Also, as with prior years, the Utility's Board of Directors (the "**Board**") retains complete discretion to determine whether to pay out the 2019 STIP Awards.

### A. Historical Short-Term and Long-Term Incentive Plans

Historically, employee compensation for a significant portion of the Debtors' employees has been comprised of two components: base salary and a discretionary, incentive-based component which includes an annual short-term incentive plan (the "**STIP**"). Compensation awards under the STIP have ranged from approximately 6% to 20% of an employee's total compensation, including equity grants. The combination of base pay and incentive-based compensation for such employees brings their compensation in-line with the market and their peers in the utility space. The incentive-based component of employee compensation, whereby annual incentive awards are linked to the Debtors' achievement of certain key performance metrics, has been available to a broad group of employees for over 30 years. These annual incentive plans have been successful in realizing key operational objectives by aligning eligible employees' interests with those of the Debtors and effectively linking cash awards under the incentive plans to the overall safety, performance, and efficiency of the Debtors' operations.

The Debtors' annual short-term incentive plan for the 2018 calendar year (the "**2018 STIP**") was structured to provide cash awards (the "**2018 STIP Awards**") to eligible employees based on the Debtors' achievement of enterprise-wide performance targets, which included metrics related to public and employee safety, customer satisfaction, and financial performance, which was adjusted for

achievement of individual goals. The STIP is part of a competitive compensation package designed to motivate and incentivize employees who are necessary for the Debtors' continued ability to deliver safe and reliable electric and gas services. By design, however, as in previous years, the 2018 STIP Awards were not guaranteed, and under the terms of the 2018 STIP, the Board retained complete discretion as to whether the Debtors' performance for the 2018 calendar year warranted payment of the 2018 STIP Awards.

The Debtors originally advised the Court that they would seek authorization to pay 2018 STIP Awards in connection with the final hearing on the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 507 and Fed. R. Bankr. P. 6003 and 6004 for Interim and Final Authority to (I) Pay Prepetition Wages, Salaries, Withholding Obligations, and Other Compensation and Benefits; (II) Maintain Employee Benefits Programs; and (III) Pay Related Administrative Obligations* [Docket No. 8]. In light of the 2018 Northern California wildfires and the material deterioration in the Debtors' financial situation, the Board of Directors adopted senior management's recommendation and exercised its discretion to forego paying to approximately 11,000 of the Debtors' employees the 2018 STIP Awards, and the Debtors withdrew their request for authority to pay such awards.

Historically, the Debtors have also maintained an equity-based long-term incentive plan (the "**LTIP**") that covered approximately 400 more senior employees, who also participated in the annual STIP. The Debtors do not plan to issue any LTIP equity grants in 2019, but, as set forth below, have incorporated a portion of the LTIP value into the proposed 2019 STIP for certain participants who are otherwise LTIP eligible.

B. **The 2019 STIP**

Acknowledging that employee performance and motivation is critical to achieving the company's goals, the Debtors' compensation committee (the "**Compensation Committee**") comprised of four independent directors (none of whom will be participating in the 2019 STIP), with the assistance of WTW, conducted a thorough evaluation of the Debtors' existing STIP for purposes of formulating the 2019 STIP. This evaluation resulted in a modification of (i) the Performance Metrics to put a greater emphasis on safety and financial performance, and (ii) the timing and level of potential awards to address the uncertainties associated with the Chapter 11 Cases and the absence of any LTIP grants in 2019. The

2019 STIP gives substantial weight to safety performance metrics—with those metrics constituting 50% of the formula for determining a 2019 STIP Participant's incentive-based compensation eligibility. As described more fully below, certain of the Performance Metrics applicable to the 2019 STIP have been modified to reflect the current year priorities. In addition, the Debtors, in consultation with their advisors, determined that the 2019 STIP should provide for quarterly rather than annual payments, and that the 2019 STIP Awards should be adjusted in the following manner:

- To compensate for the elimination of the 2019 LTIP, 2019 STIP Awards for participants otherwise eligible for an LTIP equity grant have been adjusted to include 50% of the grant value of the LTIP award that would have been received for 2019; and
- 2019 target STIP Award opportunities for non-LTIP eligible employees have been increased by 25% over 2018 STIP Award target opportunity levels.

Although the level of potential awards changed, the 2019 STIP reduces the range of potential awards. 2019 STIP Awards can range from 0 to 150% of target levels, whereas the 2018 STIP allowed for awards to range from 0 to 200% of target (in each case, not taking into account the individual performance modifier or "IPM" referred to below).

The pool of approximately 10,000 2019 STIP Participants is largely comprised of those employees who were eligible to participate in the 2018 STIP. No "insiders," who are the Debtors' most senior leaders, are included among the 2019 STIP Participants. The 2019 STIP Participants, many of whom have specialized training and experience directly related to utility management and regulatory compliance, work across various departments within the Debtors' organization, including operations, engineering, customer organization, finance, human resources, information technology, and legal, and have developed valuable institutional knowledge regarding the Debtors' ongoing business operations.

After extensive deliberations and consultation with WTW, the Compensation Committee approved the 2019 STIP and the 2019 Performance Metrics on January 23, 2019.

C. **Summary of 2019 STIP**

The following is a summary of the key terms of the 2019 STIP:

1. **2019 STIP Participants**: Approximately 10,000 non-insider employees will be eligible to receive 2019 STIP Awards (the "**2019 STIP Participants**").

2. **Implementation and Performance Period**: To be implemented commencing in the first quarter of 2019. The Performance Metrics will be measured quarterly from January 1, 2019 through December 31, 2019. Following internal audit and certification of performance, 2019 STIP Awards will be paid out on a quarterly basis based on cumulative year-to-date results.

3. **Total Plan Costs**: The aggregate amount of potential 2019 STIP Awards at target is approximately $235 million, with a minimum payout of $0 and an aggregate maximum payout of approximately $350 million inclusive of the IPM (as defined below). Historically, the Debtors have never paid out STIP Awards at the maximum level.

4. **2019 STIP Awards**:

    a) **Award Range:** STIP Participants will receive (a) 100% of the applicable STIP Award if the Debtors achieve, but do not exceed target performance levels (the "**Target STIP Awards**") with respect to the Performance Metric, (b) 50% of the Target STIP Award if the Debtors meet but do not exceed the threshold performance levels (the "**Threshold STIP Awards**"), and (c) 150% of Target STIP Awards if the Debtors meet maximum performance levels ("**Maximum STIP Awards**"). STIP Awards between threshold and target and STIP Awards between target and maximum each will be interpolated on a linear basis. STIP Participants will not be eligible to receive STIP Awards if the Debtors do not meet threshold-level Performance Metrics. If a STIP Participant voluntarily terminates employment, all future awards are forfeited. If a STIP Participant is involuntarily terminated, other than for cause, the STIP Participant shall receive the next quarterly payment, but shall receive no future payments. The average target opportunity is approximately 15% of base salary per participant.

    b) **Individual Performance Modifier:** STIP Participants at the director level and below who substantially exceed certain individualized performance goals (limited to approximately 10% of such STIP Participants) will be eligible, on a quarterly basis, to receive an individual performance modifier ("**IPM**") that will entitle them to receive a supplement to their STIP Award equal to 25% of the total value of their STIP Award. At target, this is estimated not to exceed, in the aggregate, approximately $5.5 million.

    c) **Board Discretion:** Any payments of 2019 STIP Awards are ultimately subject to complete Board discretion, including a decision to reduce or forego payment entirely.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

5. **Performance Metrics and Weighting:**

   a) **Safety Metrics (inclusive of all safety-related Performance Metrics) (Weight: 50%):**

      (i) **Nuclear Reliability and Safety Indicator (Weight: 5%):** Measures nuclear power generation and safety. The metric scores are based on 11 industry-accepted performance indicators.

      (ii) **Public Safety Index (Weight: 10%):** This metric has been revised to include two new equally weighted sub-metrics:

       - **Enhanced Vegetation Management ("EVM"):** EVM measures how many circuit miles of vegetation have been cleared under the EVM program within high-fire risk areas to reduce wildfire risk.

       - **System Hardening:** System Hardening measures completed circuit miles of fire design applications within high-fire risk areas.

      (iii) **First-Time ILI Miles (Weight: 10%):** This metric measures and sets targets for completion of first-time inspections of natural gas pipelines following the introduction of in-line inspection tools.

      (iv) **Asset Records Duration Index (Weight: 10%):** Weighted evenly between natural gas and electricity jobs. This metric tracks and sets targets for the average number of days required to complete the as-built process of capital and expense jobs.

      (v) **Serious Injuries and Fatalities Corrective Actions Index (15%):** Weighted evenly between natural gas and electricity transmission jobs. This metric tracks and sets targets for the average number of days required to complete the as-built process of capital and expense jobs.

   b) **Customer Satisfaction (Weight: 10%):** Measures and sets targets for the number of customer complaints escalated to the CPUC. This is a new metric.

   c) **Financial Performance (Weight: 40%):** Earnings from Operations ("**EFO**"): Measures financial performance from core operations calculated as net income adjusted for income or expenses associated with events or circumstances outside of ongoing core operations. Company-wide EFO results are publicly disclosed on a quarterly basis through SEC filings.

I believe, the 2019 STIP Participants are critical to ongoing operations and to preserving and enhancing enterprise value, and it is imperative that the Debtors provide appropriate, market-based compensation and incentives to ensure the success of the Debtors' restructuring efforts and business operations. The 2019 STIP was carefully tailored to (a) drive performance to achieve critical safety, operational, and financial objectives and (b) provide competitive compensation that motivates employees to achieve the Performance Metrics that will promote safety and maximize enterprise value. Thus, I believe implementation of the 2019 STIP is a proper exercise of the Debtors' business judgment and is in the best interests of the Debtors and their stakeholders.

Furthermore, I believe the 2019 STIP largely continues the Debtors' historical incentive compensation practices, with certain modifications to the Performance Metrics to further emphasize safety and financial performance and certain modifications to award levels and timing of payment to address the circumstances attendant to the pending Chapter 11 Cases, and is designed to provide customary, incentive-based compensation. The 2019 STIP closely resembles historical STIPs in many respects, including (a) remaining an "at-risk" plan with no guarantee of payment, (b) providing for quarterly measurements, and (c) providing for a merit-based IPM adjustment for a limited number of participants. In addition, the 2019 STIP is available to a group of approximately 10,000 of the Debtors' employees, including certain union-represented employees, and is consistent with past practice as to scope and participation. Moreover, the costs associated with the 2019 STIP are in line with the Debtors' historical annual compensation plans when factoring in the LTIP value. Just as with the 2018 STIP and previous STIPs, the Compensation Committee and the Board undertook a rigorous process to ensure that the 2019 STIP is designed with the near-term operational and financial objectives of the Debtors in mind—which resulted in the development of new, targeted metrics and refinements to existing metrics. Employees can earn payments if—and only if—the Debtors meet the Performance Metrics under the 2019 STIP and the Board acts to approve the payments.

Additionally, the 2019 STIP is the product of due diligence with the input of the Debtors' professional advisors, including WTW. I believe the 2019 STIP falls within the range of competitive practice and design relative to company size of peer companies' incentive plans and is reasonable in light of the size of the Debtors' business enterprise, the number of participants in the plan, as well as the

incentive-based nature of the 2019 STIP and the need to maintain competitive market compensation, particularly in the circumstances of these Chapter 11 Cases.

Lastly, although certain of the 2019 STIP Participants hold titles such as "director," "manager," or "vice-president," no 2019 STIP Participants (a) report directly to the Boards of Directors of the Debtors, (b) are appointed directly by the Board, (c) direct the Debtors' overall corporate governance, (d) control the Debtors' company policy, (e) exercises managerial control over the Debtors' operations as a whole, or (f) have the ability to determine their own compensation. Consistent with the aforementioned limitations on authority, none of the 2019 STIP Participants has discretionary control over substantial budgetary amounts. In each case, a 2019 STIP Participant must receive direction or consent from a senior company officer before such 2019 STIP Participant can take any significant action with respect to the Debtors' corporate policies, the disposition of significant assets, or any other action with material economic consequences.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct.

Dated: March 6, 2019

San Francisco, California

*Dinyar B. Mistry*

Dinyar Mistry
Senior Vice President of Human Resources
and Chief Diversity Officer
PG&E Corporation and Pacific Gas and
Electric Company