SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
  James P. Hill, SBN 90478
  Christopher V. Hawkins, SBN 222961
600 B Street, Suite 1700
San Diego, California 92101
Tel:    (619) 233-4100
Email: hill@sullivanhill.com
       hawkins@sullivanhill.com

Gerald Singleton, SBN 208783
Amanda W. LoCurto, SBN 265420
SINGLETON LAW FIRM, APC
450 A Street, 5th Floor
San Diego, CA 92101
Tel:    (619) 771-3473
Email: gerald@slffirm.com
       amanda@slffirm.com

Attorneys for SLF Fire Victim Claimants

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>    and<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>        Debtors<br><br>Affects:<br>☐ PG&E Corporation<br>☐ Pacific Gas & Electric Company<br>☒ Both Debtors | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case–Jointly Administered)<br><br>**OBJECTION TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 362, 363, 364, 503, AND 507, AND FED. R. BANKR. P. 2002, 4001, 6003, 6004, AND 9014 FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED, SUPERPRIORITY, POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING FINAL HEARING, AND (V) GRANTING RELATED RELIEF**<br><br>Date: March 13, 2019<br>Time: 9:30 a.m. (Pacific)<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

# I.

## Introduction

On January 29, 2019, PG&E Corporation and Pacific Gas and Electric Company (collectively, "PG&E") filed for bankruptcy. PG&E's stated reason for seeking bankruptcy protection was that it was facing $30 billion in damages from the 2015 Butte Fire, the 2017 North Bay Fires (18 fires in 10 Northern California counties) and the 2018 Camp Fire.[1] Together these fires burned nearly 500,000 acres, killed over 100 people, destroyed almost 20,000 homes, and left tens of thousands of people homeless.

The Singleton Law Firm Fire Victim Claimants ("SLF Claimants") consist of over 3,500 individuals who suffered injuries or damages in fires started by PG&E and who are represented by the Singleton Law Firm, APC. The SLF Claimants consist of individuals from each of the three major fires/fire complexes involved in the bankruptcy: the 2015 Butte Fire (coordinated in Sacramento Superior Court under JCCP Number 4853), the 2017 North Bay Fires (coordinated in San Francisco Superior Court under JCCP Number 4955), and the 2018 Camp Fire (which had not been coordinated or consolidated at the time PG&E filed for bankruptcy). With respect to the 2017 North Bay Fires, SLF Claimants sustained damages in each of the 18 major fires. Accordingly, the SLF Claimants comprise a more complete representative group of fire victims than any other group.

For the reasons set forth below, the SLF Claimants object to the PG&E DIP Financing Motion [ECF No. 23] unless the Court (1) prohibits PG&E from lobbying during the period it is in bankruptcy, and (2) requires PG&E to immediately pay the 52 fire victims ("Settled-But-Not-Paid Fire Victims") whose claims were settled by PG&E prior to the petition date but which PG&E failed to pay before filing–despite paying out millions of dollars in severance during that time to the executives at the helm during the fires, including $2,500,000 to its former CEO.[2] The total amount of the settlements agreed to by PG&E for the Settled-But-Not-Paid Fire Victims is $9,473,303.00.

---

[1] "PG&E to file for Bankruptcy as Wildfire Costs hit $30 billion", *Los Angeles Times*, July 14, 2019, https://www.latimes.com/business/la-fi-pge-bankruptcy-filing-20190114-story.html. The SLF Claimants recognize that this article and the others cited are hearsay, but respectfully submits that to the extent that PG&E disputes a matter asserted in any of the articles, its fiduciary duties as a debtor-in-possession require it to investigate the matter further.

[2] The Settled-But-Not-Paid Fire Victims are identified and described in section II(B), below.

## II.
**The Court Should *Not* Approve PG&E's DIP Financing Motion Unless It Prevents PG&E from Lobbying while it is in Bankruptcy, and Should Require PG&E to Pay the "Settled-But-Not-Paid Fire Victims" Out of the DIP Financing.**

**A.    PG&E Should *Not* Be Allowed to Spend Millions Lobbying the California Legislature for Benefits Until It Compensates Its Victims.**

While PG&E claims it does not have the assets to cover its liabilities stemming from the 2017 and 2018 Northern California Fires[3], it apparently did have the assets to have spent nearly $10 million to lobby California lawmakers and the Public Utilities Commission in 2018.[4] This lobbying budget made PG&E the biggest spender *par excellence* for influencing California legislators and regulators, eclipsing the perennial top influence peddlers, Chevron and the Western States Petroleum Association.[5] In contrast, Sempra, the parent company of San Diego Gas & Electric, spent $1.56 million in lobbying last year.

PG&E directed much of its lobbying efforts to limit its liability for wildfires.[6] PG&E sought to change California law by eliminating inverse condemnation and limiting liability even when PG&E committed negligence. PG&E was partially successful in its lobbying: winning a legislative concession to allow PG&E to pass-through a portion of the damages it incurred as a result of the 2017 North Bay Fires though state-backed bonds.[7]

Limiting the liability PG&E will face for the fires it starts makes California less safe. And any lobbying which results in a reduction of safety for PG&E's 15 million customers is not a legitimate budget item for a Chapter 11 debtor. As an investor-owned utility, PG&E has a duty to maximize shareholder profits, which conflicts with maintaining safety standards. Liability laws pose some of the most powerful incentives for corporations like PG&E to adopt safe practices. If PG&E

---

[3] The majority of cases in the 2015 Butte Fire have been settled, and the remaining cases, standing alone, were not sufficient for PG&E to declare bankruptcy. Instead, PG&E's filing is based on the roughly $30 billion in estimated damages caused by the 2017 North Bay Fires and the 2018 Camp Fire.
[4] *See* www.consumerwatchdog.org/news-story/bankrupt-utility-pge-spent-10-million-lobbying-last-year-even-more-big-oil
[5] *See* http://www.capradio.org/articles/2019/02/01/pge-spent-most-for-2018-lobbying/.
[6] "As Fires Ravaged California, Utilities Lobbied Lawmakers for Protection", *New York Times,* https://www.nytimes.com/2019/01/05/business/energy-environment/california-wildfire-electric.html
[7] "Brown Signs Wildfire Safety Bill Blasted As PG&E Bailout", San Jose *Mercury News,* https://www.mercurynews.com/2018/09/21/brown-signs-bill-allowing-utilities-to-pass-costs-of-wildfire-lawsuits-onto-consumers/

continues to chip away at the laws which require them to pay for their misconduct, then Californians will continue to be at the mercy of PG&E's reckless conduct.

Moreover, fires caused by electrical lines are not the only area in which PG&E's safety record is unacceptable. On December 14, 2018, the California Public Utilities Commission formally alleged that PG&E has been willfully failing to comply with safety inspection requirements on its gas lines for years.[8] PG&E subsequently admitted that its managers pressured employees to falsify records in "tens of thousands" of inspections.[9] This longstanding pattern of misconduct comes on the heels of PG&E's six (6) felony convictions in San Francisco Federal District Court for violating safety practices in connection with the 2010 San Bruno gas pipe explosion that killed eight (8) people.[10]

United States District Court Judge Alsup is the federal judge overseeing PG&E's probation following its felony convictions for the 2010 San Bruno explosion. At a recent court hearing, he stated that PG&E should not be spending millions on lobbying the Legislature for special favors while it is failing to spend the money required to properly inspect and maintain its high-voltage power lines.[11]

While a corporation has the legal option to seek relief from certain of its debts and obligations in bankruptcy court, it is inappropriate to seek bankruptcy protection while spending lavish amounts of money to influence legislative and regulatory outcomes. When PG&E filed for bankruptcy, it ceded control of its financial operations to the Court. It is an insult to its victims for PG&E to cry poverty while pouring millions of dollars into campaign chest funds and lobbyists' coffers in an effort to reap special benefits, including limiting liability for the death and destruction it has caused. While a corporation that is not in bankruptcy may spend its money in any lawful manner it wishes, a corporation gives up the right to independently manage its finances when it seeks bankruptcy protection.

///

---

[8] *See* http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M246/K120/246120841.PDF
[9] *See* https://www.nbcbayarea.com/investigations/PGE-Shakes-Up-Management-After-Regulators-Accuse-Utility-of-Falsifying-Safety-Inspections-502988162.html.
[10] *See* https://www.mercurynews.com/2017/01/26/pge-gets-maximum-sentence-for-san-bruno-crimes/; https://www.justice.gov/usao-ndca/pr/pge-ordered-develop-compliance-and-ethics-program-part-its-sentence-engaging-criminal.)
[11] *See* https://www.sfchronicle.com/politics/article/PG-E-lobbying-spending-in-California-soars-after-13575166.php

Given PG&E's appalling safety record, and its repeated efforts to buy special favors from the Legislature, the SLF Claimants respectfully request that the Court order PG&E to refrain from spending any funds for the purpose of influencing legislators and/or regulators while under the jurisdiction of this Court. Pursuant to 11 U.S.C. § 105(a), this Court is vested with the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code and may, upon its own motion, take "any action or [make] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). Further, "[it] is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.'" *In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 680 (2d Cir. 2003) (*quoting In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir.1994)). *See also In re Bonham*, 229 F.3d 750, 763 (9th Cir. 2000) ("[F]or many purposes, courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity.") (*quoting Pepper v. Litton*, 308 U.S. 295, 304 (1939)); *In re Grimland, Inc.*, 243 F.3d 228, 234 (5th Cir. 2001) ("the bankruptcy court is a court of equity and it must undertake an analysis of equitable considerations"). Here, in the interest of fairness and justice in this reorganization, and consistent with PG&E's statement that filing bankruptcy was "not a strategy of attempt to avoid PG&E's responsibility for the heartbreaking and tragic loss of life, devastating damage and destruction to homes and businesses, and harm to the communities" incurred as a result of wildfires for which PG&S is responsible (*see* the Declaration of Jason P. Wells ISO First Day Motions ("Wells Decl."), ECF No. 28, p. 4:7-10), it is appropriate for this Court to condition approval of the DIP Financing Motion on PG&E refraining from spending any of its DIP financing proceeds during the bankruptcy on lobbying.

**B.** **PG&E Should be Required to Immediately Pay the Settlements it Reached Prior to Filing Bankruptcy with the 52 Settled-But-Not-Paid Fire Victims as a Condition for Approval of the DIP Financing.**

    **1.** **Most Butte Fire Victims Have Been Compensated**

As stated above, the majority of cases stemming from the 2015 Butte Fire have been settled. Prior to PG&E filing bankruptcy in January 2019, PG&E was settling on average of 40-60 cases per month with the Butte Fire victims. In December 2018 and January 2019, PG&E agreed to settle

approximately 52 cases on behalf of Butte Fire victims. This included 30 Butte Fire cases represented by Singleton Law Firm[12] in the combined amount of $5,513,303, and 22 represented by the Corey/Danko firms[13] in the combined amount of $3,960,000, for an aggregate of $9,473,303.00.[14] In each of these cases, PG&E and the Settled-But-Not-Paid Fire Victims agreed to a specific settlement amount. PG&E then drafted the settlement agreements, and the settlement agreements were signed by the Settled-But-Not-Paid Fire Victims and returned to PG&E. Thus, the Settled-But-Not-Paid Fire Victims complied with all of their duties and obligations under the settlement agreements. PG&E could have paid the settlement funds before filing bankruptcy, but it chose not to. It did, however, during that same time period, choose to pay out millions of dollars in severance packages to departing executives on the eve of bankruptcy, including $2,500,000 to its former CEO. The few remaining victims of the Butte fire have been waiting for more than four years, their lives forever altered, many of them still homeless. They deserve to be paid now. *See* the Singleton Declaration, ¶ 2.

### 2. No Liquidation is Required of the Few Remaining Claims

PG&E asserts that the primary objective of its bankruptcy filing was to resolve the fire victims' claims "fairly and expeditiously–indeed, more quickly and more equitably than those liabilities could be addressed and resolved in the state court system . . ." *See* the Wells Decl., p. 4:14-16.

If PG&E truly means this (something which it has repeatedly said both to the media and in sworn declarations), then it should be ready and willing to pay the agreed upon settlements on behalf of the 30 Butte Fire victims with settlements agreed to by PG&E prior to it filing for bankruptcy. It is

---

[12] The 30 SLF Claimants in this group are Suzette Baldwin; Malinda Bissell; Judy Brown; Steven Contreras; Stephanie Dewey; Kurt Dunajski; Cari Duvall; Kimberly Hie-Kosta; Emilie Houle; Darren Johnson; Dean Kelaita; Karen Klith; Douglas Lemos; Robert Lock; Randall Lorenzi; James Martin; James Marvin; Patrick Miller; David Newell; Richard Moldovan; Brock Montgomery; Bryan Montgomery; Gerald Munson; Mark Peterson; Candace Rummerfield; Ronnie L. Rummerfield, Sr.; Christian Siefert; Vera Pearson; and Christopher Wilson.

[13] The names of the 22 Settled-But-Not-Paid Fire Victims represented by the Corey/Danko firms are set forth in their Objection, Doc. No. 178. For the Court's convenience, these names are: Dawnielle Burich, Philip Charvet, Diana Eriksen, Stein Eriksen (and the two minor Eriksen children), Deborah Guyton, Nancy Kuchins, Carl Madeiros, Brian Ottinger, Jack Rodgers, Thomas Rodgers, Jillian Sandbothe, Richard Segovia, Abril Shouse, William Shouse, Hilde Solliday, Mark Wiebens, Nicole Wiebens, Peter Wiebens, Gerhard Ziemer, and Jerry Ziller.

[14] The specific amount of each settlement is not set forth herein due to the confidential nature of the mediation process.

not possible to resolve the claims of the 52 fire victims more "fairly and expeditiously" than for PG&E to honor the settlement agreements that they made with these individuals. Unlike most other fire victims, as to these 52, no liquidation or further process is required.

### 3. No Prejudice Will Result

The standard arguments for a creditor not to pay under these circumstances include (1) the amount of the claim has not been determined, (2) the debtor does not have the funds, and/or (3) the payment would unfairly deplete the funds available to pay other creditors. Here, these arguments are unavailing. After PG&E's counsel and experts reviewed the Settled-But-Not-Paid Fire Victims' claims, PG&E's counsel negotiated a settlement with the victims' counsel which both sides agreed was fair. The DIP financing, which is over $5 billion, clearly gives PG&E the funds to pay the Settled-But-Not-Paid Fire Victims' claims. Finally, the amount sought, $9,473,303.00, is *de minimus* compared to the $30 billion in damages PG&E claims it owns, and no reasonable person could argue that this amount would substantially impact PG&E's ability to pay its other creditors. Indeed, PG&E recently asked for over 13 times this amount ($130 million) in bonuses to its executives and other employees. ECF No. 8.

The current trading price of PG&E's stock was $19.07 per share at the close of market on March 7, 2019. *See* RFJN, Ex. A. At that stock price, the Debtor has a market capitalization of nearly $10,000,000,000, strongly suggesting that creditors in the bankruptcy will be paid in full. Accordingly, no prejudice will result from paying the few remaining claims in the Butte fire, while substantial suffering will be alleviated from a small group of people who have already suffered way too much.

### 4. Constructive Trust

At the section 341(a) meeting of creditors conducted on March 4, 2019, the Debtor's Senior Vice President and Chief Financial Officer Jason Wells testified that PG&E had recovered $920,000,000 in insurance proceeds in connection with the Butte fire. *See* the Singleton Declaration, ¶ 3. The Debtor's most recent Form 10k shows this figure to be $922,000,000. *See* RFJN, Ex. B, p. 157. In addition, Mr. Wells testified that the Debtor also recovered an additional $75,000,000 in claim settlement payments from two of its contractors (or their insurers) involved in the Butte fire.

Mr. Wells testified that PG&E had paid out approximately $800,000,000 in settlements to victims of the Butte fire, leaving a surplus of approximately $200,000,000. Mr. Wells testified that some of this $200,000,000 had been used to pay legal fees and other expenses connected with the Butte Fire litigation, but he was not able to provide an estimate as to exact amount. Finally, Mr. Wells testified that on the petition date, the Debtor had approximately $240,000,000 in cash on hand. *See* the Singleton Declaration, ¶ 4.

The SLF Claimants respectfully request that the Court impose a constructive trust on $9,473,303 of the Debtor's funds as a condition to approval of its post-petition borrowing motion and its proposal grant of super-priority liens, and further order such sums to be paid immediately to the Settled-But-Not-Paid Fire Victims as its beneficiaries. Property held in trust by a debtor for another is not estate property. *See* 11 U.S.C. § 541(d); *In re Advent Mgmt. Corp.*, 104 F.3d 293, 295 (9th Cir. 1997); *In re Unicom Computer Corp.*, 13 F.3d 321, 324 (9th Cir. 1994). In order to determine whether a debtor holds property in trust for another, the court must first look to applicable state law to see whether or not an enforceable trust exists. *In re Bullion Reserve of N. Am.*, 836 F2d 1214, 1218 (9th Cir. 1988) (*citing In re Esgro, Inc.*, 645 F.2d 794, 797 (9th Cir. 1981). One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it. Cal. Civ. Code § 2224. Whether one calls it an accident, mistake, violation of trust, or other wrongful act, PG&E is holding $9,473,303 that rightfully belongs to the Settled-But-Not-Paid Fire Victims, and should be paid over immediately, to end their long difficult suffering.

**5.** **PG&E's Own Motion to Perform Prepetition Settlement With Butte County**

Finally, PG&E itself has filed a motion requesting Court authority to perform under a pre-petition settlement agreement with Butte County, including paying Butte County $1,000,000. ECF No. 770. While the SLF Claimants support PG&E performing its pre-petition settlement agreement with Butte County, the SLF Claimants respectfully submit that, given the devastation wrought on their lives and community, a more compelling argument exists for PG&E to perform its one-and-only obligation under its pre-petition settlement agreements with the Settled-But-Not-Paid Fire Victims.

**6.     Requested Relief**

As described above, pursuant to 11 U.S.C. § 105(a), this Court is vested with the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code and may, upon its own motion, take "any action or [make] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). Accordingly, given the unique circumstances faced by these 52 claimants, the SLF Claimants respectfully request that the Court exercise its equitable powers under section 105 and require PG&E to pay the Settled-But-Not-Paid Fire Victims their $9,473,303.00 in settlements as a condition of approving PG&E's DIP financing request.

## III.

## Conclusion

Based on the foregoing, the SLF Claimants respectfully request that the Court:

(1) Condition approval of the DIP financing on a prohibition of lobbying during the bankruptcy;

(2) Impose a constructive trust on $9,473,303 of the Debtor's cash on hand for the benefit of the Settled-But-Not-Paid Fire Victims as a condition to approval of the DIP financing motion and its requested grant of super-priority liens;

(3) Order the Debtor to pay immediately the settled, liquidated, agreed upon claims of the Settled-But-Not-Paid Fire Victims in the aggregate amount of $9,473,303 from funds determined to be held in constructive trust for such fire victims; and

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

(4) Grant such other relief as the Court may find just and proper.

Respectfully submitted,

Dated: March 8, 2019          SINGLETON LAW FIRM, APC

By: _____
    Gerald Singleton
    Amanda W. LoCurto

Dated: March 8, 2019          SULLIVAN HILL REZ & ENGEL
                              A Professional Law Corporation

By: */s/ Christopher V. Hawkins*
    James P. Hill
    Christopher V. Hawkins

Attorneys for the Singleton Law Firm
Fire Victim Claimants