Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP (*effective* February 19, 2019)
55 Hudson Yards (*effective* February 19, 2019)
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Paul S. Aronzon (SBN 88781)
Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP (*effective* February 19, 2019)
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Proposed Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case. No. 19-30088 (DM)* | **OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF PUBLIC ENTITIES FOR APPOINTMENT OF OFFICIAL COMMITTEE OF PUBLIC ENTITIES PURSUANT TO 11 U.S.C. §§ 1102(A)(2) AND 105(A)** |

The Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases of PG&E Corporation and Pacific Gas and Electric Company (together, "PG&E" or the "Debtors"), by its attorneys, Milbank LLP, hereby submits this opposition (the "Opposition") to the *Motion of Public Entities for Appointment of Official Committee of Public Entities Pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a)* [Dkt. No. 720] (the "Motion"), filed by the Public Entities[1] on March 1, 2019. In support of the Opposition, the Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. By their Motion, the Public Entities[2] ask this Court for extraordinary relief: not only the appointment of an additional official committee pursuant to Bankruptcy Code section 1102(a), but the appointment of the sixteen Public Entities *as* the new official committee. The relief sought is unnecessary, as the interests the new committee purportedly would protect either are already safeguarded by the two official committees already appointed in these cases or are more appropriately addressed in venues other than this Court. Under these circumstances, the additional costs that would be imposed upon the estates as a result of an additional official committee are not warranted.

2. As a threshold matter, the Public Entities have already demonstrated their ability and intent to vigorously protect their interests regardless of whether they are appointed to an official committee in these bankruptcy cases. Among other things, the Motion describes in detail the Public Entities' ongoing role in various non-bankruptcy litigation and mediation matters. In addition, a number of the Public Entities have obtained party status in various administrative proceedings regarding regulatory matters. The Motion thus is not about whether

---

[1] The Public Entities consist of the following sixteen California public entities: (a) Calaveras County Water District, (b) Napa County, (c) City of Napa, (d) Mendocino County, (e) Lake County, (f) City of Clearlake, (g) Nevada County, (h) Yuba County, (i) City of Santa Rosa, (j) Sonoma County, (k) Sonoma County Agricultural Preservation and Open Space District, (l) Sonoma County Community Development Commission, (m) Sonoma County Water Agency, (n) Sonoma County Sanitation District, (o) Town of Paradise, and (p) Butte County. *See* Motion at 5 n.1.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

the Public Entities will be able to effectively protect their interests, but rather is simply a request by the Public Entities to have their professional fees in doing so paid by the Debtors. The appointment of an official committee whose fees and costs are paid entirely by a debtor's estate is the most extreme form of fee-shifting under the Bankruptcy Code. As such, courts that have been asked to appoint such additional committees have universally emphasized that it is an "extraordinary" remedy that requires a showing that the claimants' interests are not adequately represented, not just that the claimants would like to have their fees covered by the estate.

3. The Public Entities can make no so such showing, for their interests are already adequately represented. To the extent the Public Entities assert tort claims, their interests are adequately represented by the Official Committee of Tort Claimants (the "Tort Committee"). Appointing a new official committee to represent claimants having the same type of claim as those represented by the existing Tort Committee is duplicative and therefore would impose unnecessary costs on the Debtors' estates.

4. To try to differentiate their interests from the Tort Committee's interests, the Public Entities point out that they have other interests as well, such as ensuring future safety, reporting, and regulatory matters. But those interests are also already adequately represented through the Public Entities' current formation as a functioning ad hoc committee in these bankruptcy cases, their extensive participation in non-bankruptcy litigation and mediation (as described in the Motion) and, most notably, their participation in various administrative proceedings before the California Public Utilities Commission (the "CPUC")—which indeed is the most appropriate forum for asserting their interests in safety, reporting and other regulatory matters. Indeed, a number of the Public Entities have already been granted party status in various CPUC proceedings, conferring on them the ability to comment, testify, file motions, and otherwise ensure their interests are fully and adequately considered.

5. The Public Entities' request in these cases for a separate official committee, funded by the Debtors' estates, thus is wholly unnecessary. The Court should deny the Public Entities' request for the formation of a new official committee.

**ARGUMENT**

6.      The appointment of an additional statutory committee is an "extraordinary remedy" that courts are reluctant to grant. *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 695 (Bankr. C.D. Cal. 2008); *see also In re Residential Capital, LLC*, 480 B.R. 550, 557 (Bankr. S.D.N.Y. 2012).

7.      Section 1102(a)(1) of the Bankruptcy Code provides that an additional statutory committee may be appointed when appropriate. *See* 11 U.S.C. § 1102(a)(1). The U.S. Trustee has discretion to deny such a request. *In re Nat'l R.V. Holdings*, 390 B.R. at 694.

8.      Where the U.S. Trustee declines to appoint an additional committee, the Court, on the request of a party in interest, may exercise its discretion to order the formation of an additional committee, but only if the formation is "necessary to assure adequate representation" under the facts and circumstances of the case. *In re Nat'l R.V. Holdings*, 390 B.R. at 694.

9.      The party moving for appointment of an additional committee has the high burden of establishing that it is not adequately represented. *Id.* at 695; *see also In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002). This burden requires a showing by the moving parties that an additional committee is "absolutely required," "essential," or "indispensable," and that they are "unable to represent their interests . . . without an official committee." *See In re Residential Capital*, 480 B.R. at 558 (internal citations and quotation marks omitted).

10.     "Adequate representation" is not defined in the Bankruptcy Code, but courts addressing the issue generally consider various factors, including (1) the ability of the existing committee to function, (2) the nature of the case, (3) the standing and desires of the various constituencies, (4) the ability of creditors to participate in the case without an additional committee, (5) the delay and additional cost that would result if the court grants the motion, (6) the tasks which a separate committee is to perform, and (7) other factors relevant to the adequate representation issue. *Id.* No one factor is dispositive, and the amount of consideration given to each factor depends on the circumstances of the case. *In re Budd Co., Inc.*, 512 B.R. 910, 912-13

4

(Bankr. N.D. Ill. 2014). None of these factors militate in favor of the appointment of an additional committee here.

### A. The Public Entities' Interests Are Already Adequately Represented

11. The Public Entities have failed to demonstrate, as they must, that their interests are not adequately represented.

12. As an initial matter, the Public Entities' tort claims are already adequately represented by the Tort Committee. The Tort Committee's members are "fiduciaries representing all tort claimants without rega[r]d [sic] to any differences in the types of claims that individual employees or the members might hold against the Debtors."[3] By their own admission, the Public Entities' claims are for damages caused by wildfires, claims which "arise in tort [and] are unliquidated and unsecured." Motion at 10. The Public Entities do not allege any inability of the Tort Committee to function; instead, they argue that a Public Entities Committee would protect the particular interests of the Public Entities "in ways that the . . . Tort Committee cannot." Motion at 7.

13. While the Public Entities allege that their tort claims are "unique" in that they are "more public in nature" than the tort claims of other individuals and entities (Motion at 15), committees are almost always comprised of a broad variety of creditors whose interests are often not aligned. *See Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1317 (1st Cir. 1993) ("No two creditors have identical interests . . . and the Code implicitly recognized that fact by providing a procedural framework for handling the various divergent interests of the parties to a bankruptcy."); *In re Hills Stores Co.*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992) ("[I]nclusion of such groups within one committee may facilitate the consensual resolution of the conflicting priorities among the holders of unsecured claims and thereby facilitate the negotiation of a consensual plan."). Indeed, such varying interests among

---

[3] *Notice of Formation of Committee of Tort Claimants*, U.S. Department of Justice, United States Trustee for the Northern and Eastern Districts of California and Nevada, *In re PG&E Corp.* (Feb. 5, 2019), *available at* https://www.justice.gov/ust-regions-r17/file/notice_pge3.pdf/download.

5

committee members are common and "expected among creditors who are acting to protect" their individual interests. *Id.* at 6.

14. The Tort Committee, charged with maximizing value to all tort claimants in these cases, will adequately represent the interests of the Public Entities. *See* 7 Collier on Bankruptcy ¶ 1103.05[1][a] ("The primary purpose of a committee . . . is to maximize the return to the constituency the committee represents and all actions undertaken by the committee in the case should be with that goal in mind."). The Motion makes no argument that the Public Entities' interests are adverse to those of the Tort Committee.

15. As such, the "mere presence of a conflict of interest does not necessitate an additional committee," *In re Residential Capital*, 480 B.R. at 558, particularly in large and complex cases such as these where the addition of a separate committee of an already adequately-represented constituency will cause more problems—additional costs, expenses, and delays—than it solves. *See In re Enron Corp.*, 279 B.R. at 688 (declining to appoint any additional official creditors' committees in complex, jointly administered chapter 11 cases given lack of evidence of inadequate representation by existing creditors' committee). The mere size of these cases is similarly not determinative of whether an additional committee should be appointed. *See In re Residential Capital*, 480 B.R. at 558; *In re Enron Corp.*, 279 B.R. at 688 (noting that the court, in "among the largest bankruptcy cases ever filed," was "disinclined to add committees to satisfy one group of creditors").

16. Even if the Public Entities could reasonably prove that their claims are "unique"—which they cannot—the homogeneity of the sixteen Public Entities the Motion asks be appointed to the new committee cuts against the argument for the committee's formation. Official committees are defined by compromise. The Public Entities' request that they be appointed to their own committee, however, would only serve to advance the Public Entities' interests. Such preferential treatment is inappropriate. *See In re Residential Capital*, 480 B.R. at 558-59 (finding that forming an official borrowers committee "solely to advance individual borrowers' claims is not appropriate"); *Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02-civ-6274, 2003 WL 22327118, at *6 (S.D.N.Y.

6

Oct. 10, 2003) ("The principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to 'strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished.'") (citing *In re Hills Stores*, 137 B.R. at 7).

17. The Public Entities' other proffered "unique" interests—ensuring that PG&E does not "compromise safety, reporting, regulatory or other matters affecting the future health and welfare of the Public Entities' communities" (Motion at 7)—are also already adequately represented.

18. These "unique" interests are already the subject of numerous proceedings before the CPUC, the state agency charged with regulating privately owned utilities including PG&E. The CPUC "may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." Cal. Pub. Util. Code § 701. The CPUC's wide-ranging responsibilities include rate-setting, implementation of legislation, and broad oversight of the utilities' safety, reporting, and operations. In addition to its regulatory role, the CPUC serves an administrative law function in which administrative law judges preside over proceedings initiated by the CPUC and others. The CPUC has a number of ongoing proceedings relating both directly and indirectly to PG&E—including a rate-setting case, a de-energization proceeding, a wildfire prevention plan rulemaking, and a wildfire cost recovery proceeding—which will consider and determine, among other things, the reasonableness of PG&E's safety requirements, wildfire prevention and mitigation plan, and rates charged to consumers.

19. A number of the Public Entities have already been granted party status in these proceedings,[4] which confers the ability to comment, testify, file motions, and otherwise

---

[4] Sonoma County, Napa County, and Mendocino County are all parties to the CPUC Wildfire Cost Recovery Methodology proceeding (R1901006), the CPUC PG&E Test Year 2020 General Rate Case (A1812009), the CPUC De-Energization Proceeding (R1812005), and the CPUC SB901 Wildfire Prevention Plan Rulemaking (R1810007). Lake County, Yuba County, Nevada County, the City of Santa Rosa, and the City of Clearlake all receive information from the CPUC regarding the CPUC SB901 Wildfire Prevention Plan Rulemaking (R1810007).

7

take actions to protect the broader group of Public Entities' asserted interests. And the CPUC provides compensation for "reasonable advocate's fees, reasonable expert witness fees, and other reasonable costs . . . of participation or intervention in any proceeding of the commission" where the participator or intervenor is an eligible local government entity[5] whose involvement in the proceeding "[is] germane to the material loss suffered by its residents." Cal. Pub. Util. Code §§ 1801, 1802, 1802.4. Hence, the Public Entities are already parties to the appropriate forum to protect their proffered additional "unique" interests. These interests are thus adequately represented and also provide the Public Entities with an opportunity to recover the very costs that the Public Entities would seek to impose on the estates if they were appointed to an official committee.

20. What is more, the Public Entities have already been, and continue to be, active in various non-bankruptcy litigation and mediation matters, including a pre-petition wildfire litigation in the Superior Court of California (in which the court appointed separate lead counsel for the Public Entities), and a pre-petition wildfire mediation in which a mediator—who has been paid, in part, by the Debtors—was appointed to "deal solely with the Public Entities' claims." Motion at 15-16. The Public Entities further note that this separate mediation of the Public Entities' claims with the Debtors is ongoing and will continue for the foreseeable future. As such, the Public Entities have demonstrated their ability and intent to adequately represent their interests without the appointment of an official committee.

**B.  The Costs of a Public Entities Committee Cannot Be Justified**

21. The appointment of a Public Entities Committee will burden the Debtors' estates with further costs and expenses and cause unnecessary delay in these cases.

22. Because the appointment of an additional committee is discretionary, the Court should also consider additional factors, including the costs associated with appointment, the potential for added complexity, and the presence of other avenues for creditor participation.

---

[5] An "eligible local government entity" includes any city, county, or city and county that is not a publicly owned public utility that participates in a proceeding "for the purpose of protecting the health and safety of the residents within the entity's jurisdiction following a catastrophic material loss suffered by its residents . . . as a direct result of public utility infrastructure." Cal. Pub. Util. Code §§ 1802(d), 1802.4.

*See Ad Hoc Bondholders Grp. v. Interco Inc. (In re Interco Inc.)*, 141 B.R. 422, 424 (Bankr. E.D. Mo. 1992); *Albero v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 68 B.R. 155, 163 (S.D.N.Y. 1986). A Public Entities Committee would add yet another layer of complexity and expenses to these Cases but would provide little, if any, benefit corresponding to the cost.

23. The appointment of a Public Entities Committee undoubtedly will carry significant cost and expense. An official committee may hire professionals, including attorneys, investment bankers, and accountants, to assist in fulfilling the committees' responsibilities "with the court's approval." 11 U.S.C. § 1103; *see also In re Interco Inc.*, 141 B.R. at 424 ("[T]he appointment of additional committees is closely followed by applications to retain attorneys and accountants.") (internal citation and quotation marks omitted). These professionals are entitled to first priority payment under sections 503(a) and 507(a) of the Bankruptcy Code ahead of general unsecured creditors. Where, as here, the Public Entities' interests are already adequately represented and accounted for, the Debtors' estates and other parties in interest should not be compelled to bear those consequences.

24. The Public Entities attempt to preempt the fact that their appointment to a new committee will result in increased costs by arguing that they "may not" engage some of these professionals (other than attorneys) if they can "rely on the accountants engaged by the other official committees for information and analysis relevant to the Public Entities." Motion at 20. Such an argument does not carry weight where the Public Entities' request for appointment of an additional committee rests entirely on the premise that their interests are so divergent from those of the Committee and the Tort Committee that they require their own official representation. Generally, official committees hire separate professionals because the committees serve different interests: the work product of one set of professionals is calibrated toward the interests of its committee's members. If the Public Entities intend to rely on the professional work product of the other official committees, this indicates that the Public Entities' interests are sufficiently aligned with those of the other committees, and there is therefore no need for appointment of an additional committee. If, on the other hand, the Public Entities' interests are so "unique" and distinct that they warrant formation of an entirely separate

9

committee, it is unlikely any work product produced by advisors to the Committee or the Tort Committee would prove useful to the Public Entities Committee, thus requiring the engagement—and costs—of additional professionals. As such, the Public Entities' argument that the new committee would "not result in appreciable additional costs to the Debtors' estates" (Motion at 20) is highly suspect.

## **CONCLUSION**

25. The Public Entities have failed to meet their burden for the extraordinary relief they seek. The Public Entities' interests are already adequately represented in these chapter 11 cases and the costs of appointment of a Public Entities Committee are not justified. The Committee respectfully requests the Court deny the Motion.

DATED: March 11, 2019        MILBANK LLP

                                               */s/ Dennis F. Dunne*
                                               DENNIS F. DUNNE
                                               SAMUEL A. KHALIL
                                               PAUL S. ARONZON
                                               GREGORY A. BRAY
                                               THOMAS R. KRELLER

                                               *Proposed Counsel for the Official Committee of Unsecured Creditors*