WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OBJECTION BY DEBTORS TO PUBLIC ENTITIES' MOTION FOR APPOINTMENT OF OFFICIAL COMMITTEE OF PUBLIC ENTITIES PURSUANT TO 11 U.S.C. §§ 1102(a)(2) AND 105(a)**<br><br>Date:  March 13, 2019<br>Time:  9:30 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102<br>Judge:  Hon. Dennis Montali |

1

2    PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the

3 "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-

4 captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Objection (the "**Objection**")

5 to the *Motion of Public Entities for Appointment of Official Committee of Public Entities Pursuant to 11*

6 *U.S.C. §§ 1102(a)(2) and 105(a)*, dated March 1, 2019 [Docket No. 720] (the "**Motion**").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2 **I.      PRELIMINARY STATEMENT[1]**

3          The Debtors support the Public Entities, which have suffered significant loss and damage

4 as a result of the California wildfires, having a voice in these Chapter 11 Cases.  As holders of prepetition,

5 general unsecured claims, the Public Entities hold claims similar to and are adequately represented by

6 two official committees, one specifically appointed to represent creditors that suffered similar loss and

7 damage in the wildfires.  There is no indication that these two official committees, which already are

8 very active in these cases, are not willing and able to fulfill their fiduciary duties to *all* prepetition general

9 unsecured creditors, including the Public Entities, and no evidence that the Public Entities themselves

10 need an additional official committee to participate in these cases.

11          The Public Entities assert that: (a) their claims are "truly unique and must be treated

12 separately" from other unsecured claims; and (b) they must have an official committee because of their

13 duty to ensure the "safety, reporting, regulatory or other matters affecting the future health and welfare

14 of the Public Entities' communities." Motion at pp. 6-7. The Debtors respectfully disagree with these

15 assertions.

16          First, the Public Entities' claims in these Chapter 11 Cases are the same as those of other

17 prepetition general unsecured creditors, and, in particular, other wildfire claimants.  Like the individuals,

18 business owners, and insurance subrogation parties who hold claims relating to the wildfires, the Public

19 Entities hold, among other things, direct and indirect claims for property damage to infrastructure and

20 for cleanup.  Like the many other creditors with claims that arose prepetition against the Debtors, the

21 Public Entities hold prepetition general unsecured claims of the same legal nature as all other prepetition

22 general unsecured claims.  And, although the Debtors acknowledge that the Public Entities have a

23 broader, non-pecuniary interest in maintaining public health, safety and welfare, an official creditors

24 committee is not intended to address such non-pecuniary interests, and the Public Entities themselves

25 can pursue these interests in the appropriate fora, including in the legislative process or in regulatory

26 proceedings.

27

28 [1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    Moreover, the Public Entities have demonstrated their ability to effectively participate in

2    these Chapter 11 Cases and represent their interests.  They are well-organized, have retained

3    professionals, actively participated in the prepetition state court wildfire litigation, and have coordinated

4    their activities and are participating in these cases.  The appropriate approach here is not the appointment

5    of a third official committee of creditors, but rather the ongoing existing participation of the Public

6    Entities with the other Committees and, of course, the ability of the Public Entities to file an application

7    under section 503(b) of the Bankruptcy Code.

8    For these and other reasons, the Public Entities have not met their burden to show that the

9    "extraordinary" remedy of appointing a third official creditors' committee is warranted here, and the

10    Court should deny the Motion.

11
12

**II.    THE PUBLIC ENTITIES HAVE FAILED TO SHOW THAT THE EXTRAORDINARY REMEDY OF APPOINTING A THIRD OFFICIAL COMMITTEE OF CREDITORS IS REQUIRED TO ADEQUATELY REPRESENT THEIR INTERESTS AS CREDITORS**

13    The appointment of an additional committee under section 1102(a)(2) is considered an

14    "extraordinary remedy."  *See In re National R.V. Holdings, Inc.*, 390 B.R. 690, 695 (Bankr. C.D. Cal.,

15    2008); *see also In re Enron Corp.*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002), *aff'd sub nom. Mirant Ams.*

16    *Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, 2003 U.S. Dist. LEXIS

17    18149 (S.D.N.Y. Oct. 9, 2003); *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006).  The movant

18    has the burden of proving that the appointment of an additional committee is necessary to insure

19    "adequate representation" of the moving party.  *See National R.V. Holdings,* 390 B.R. at 695; *see also*

20    *Enron*, 279 B.R. at 685; *In re Dow Corning Corp.*, 194 B.R. 121 (Bankr. E.D. Mich. 1996), *rev'd on*

21    *other grounds*, 212 B.R. 258 (E.D. Mich. 1997).

22    The determinative factors in considering the adequacy of representation are:

23    (a) The ability of the existing committees to function;

24    (b) The nature of the case;

25    (c) The standing and desires of the various constituencies;

26    (d) The ability for creditors to participate in the case even without an official

27    committee and the potential to recover expenses pursuant to section 503(b);

28

(e) The delay and additional cost that would result if the Court grants the motion;

(f) The tasks that a committee or separate committee is to perform; and

(g) Other factors relevant to the adequate representation issue.

*Enron*, 279 B.R. at 685; *see also In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 601 (Bankr. D. Del. 1996); *In re McLean Indus., Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987); *In re Johns-Manville Corp.*, 68 B.R. 155 (Bankr. S.D.N.Y. 1986), *appeal dismissed sub nom. In re Johns-Manville Corp.*, 824 F.2d 176 (2d Cir. 1987). No one factor is dispositive, and the amount of due consideration given to each depends on the circumstances of the particular chapter 11 case. *See In re National R.V. Holdings, Inc.*, 390 B.R. at 695-696; *see also In re Leap Wireless Intern., Inc.*, 295 B.R. 135, 137 (Bankr. S.D. Cal., 2003); *In re Park W. Circle Realty, LLC*, No. 10-12965 (AJG), 2010 Bankr. LEXIS 2463, *9 (Bankr. S.D.N.Y. Aug. 11, 2010); *Dana*, 344 B.R. at 38; *Kalvar Microfilm*, 195 B.R. at 600-601. A Court need only focus on those factors it deems essential to the particular case.[2]

**A.      The Creditors Committee and Tort Claimants Committee Adequately Represent the Interests of General Unsecured Creditors, Including the Public Entities**

**1.      *The Creditors Committee and Tort Claimants Committee Have Fiduciary Duties to Unsecured Creditors***

Both the Creditors Committee and Tort Claimants Committee each have a fiduciary duty to represent the interests of their constituencies. *See Dana*, 344 B.R. at 38; *see also In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992) (noting "fiduciary duty extends to the class as a whole, not to its individual members."). A strong indicator of whether a committee is able to adequately represent its constituents is its ability to function. *Enron*, 279 B.R. at 686. Although members of the Creditors Committee and the Tort Claimants Committee may be creditors with different "aims and entitlement," the Public Entities have not cited an instance where the ability of the Committees to

---

[2] Some courts conduct a two-step analysis to determine whether appointment of an additional committee is warranted: first, whether the appointment of an additional committee is necessary to assure that the movants are adequately represented, and second, if the answer to the first question is yes, whether the Court should exercise its discretion and order the appointment. The factors courts consider when exercising their discretion overlap with the factors outlined above, including: (a) whether the costs of such a committee are warranted and justifiable, (b) the timing of the application, and (c) whether the movants have other avenues for participation in the case. *See Enron*, 279 B.R. at 685; *In re Wang Laboratories, Inc.*, 149 B.R. 1, 2 (Bankr. D.Mass., 1992); *In re Garden Ridge Corp.*, No. 04–10324 (DDS), 2005 WL 523129, *2 (Bankr. D.Del., Mar. 2, 2005).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

1   function has actually been or may be impaired by the differences in the interests of their constituents.

2   *See id*.

3   To the contrary, both the Creditors Committee and the Tort Claimants Committee have

4   taken active roles in these Chapter 11 Cases since their formation.  Each of the Committees is represented

5   by respected and experienced restructuring counsel and financial advisors.  Both Committees have been

6   in regular discussions with the Debtors' advisors regarding diligence and other matters, and have actively

7   engaged with the Debtors with respect to all of the matters that have been brought before the Court.  The

8   Committees also have filed multiple pleadings in these Chapter 11 Cases and made appearances before

9   this Court to advance positions on behalf of their respective constituencies.

10   By all accounts, the Creditors Committee and Tort Claimants Committee, and their

11   respective professionals, have more than adequately represented and will continue to adequately

12   represent the interests of general unsecured creditors, including all wildfire claimants. Indeed, the

13   acknowledgement by the Public Entities of their potential ability to utilize professionals retained by the

14   other official committees is not only indicative of their comfort with the functioning of the two official

15   committees, but of the identity of their interests and claims as well.  Motion at p. 20.

16   **2.   *There Is No Significant Distinction Between the General Unsecured Claims of the Public Entities and Those of Other General Unsecured Creditors***

17

18   The similar legal, factual nature, equal priority, and status of the claims of the Public

    Entities and the other prepetition claimants, particularly by other wildfire claimants, demonstrate there

19   is no need, nor basis in law, for the formation of a separate official committee for the adequate

20   representation of the Public Entities. The Public Entities argue that the nature of their claims are

21   sufficiently distinct from the other claims represented by the Committees such that the Committees

22   cannot adequately address the Public Entities' interests.  The members of the Creditors Committee and

23   the Tort Claimants Committee, however, do not need to be an exact replica of the creditor body and their

24   distinct claims to adequately represent the interests of all general unsecured creditors.  *See In re Hills*

25   *Stores, Co.*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992) ("Nowhere does the Code mandate a committee must

26   faithfully reproduce the exact complexion of the creditor body.").

27   Although the specifics of the claims of the Public Entities may differ from those of other

28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

1    wildfire claimants, the fundamentals do not—the claims are for both direct and incidental damage to real

2    and personal property, loss of income, and other costs incurred to mitigate and repair damage to

3    property.[3]  *See* Motion at 15 (summarizing claims for "infrastructure damages, fire suppression costs,

4    debris cleanup and loss of tax revenue").

5              Moreover, under the Bankruptcy Code, the claims of all wildfire claimants, whether

6    individuals, business owners, subrogation parties, or governmental units, are all treated as general

7    unsecured claims. Despite the Public Entities' assertion (Motion at p. 16), there is no evidence of a

8    divergence of interests among claimants and, as stated, no recognition that their claims must be treated

9    differently.

10             Lastly, the Public Entities cite *In re Lion Capital Group,* 44 B.R. 684 (Bankr. S.D.N.Y.

11   1984), an easily distinguishable, non-binding case that is over 30 years old as their primary authority to

12   support the formation of a Public Entities committee. In *Lion Capital*, no general unsecured creditors

13   were interested in serving on an official committee.  *Lion Capital,* 44 B.R. at 686.  This left the

14   governmental units holding over 90% of the debtor's general unsecured claims without an official

15   committee of unsecured creditors to represent their interests.  *Id.*  Accordingly, the Court authorized the

16   formation of a special committee to which the governmental units were appointed.  *Id*.    These

17   circumstances do not exist here. There is no need for a special committee to cure a complete lack of

18   representation of general unsecured creditors.  *See In re VTN, Inc.,* 65 B.R. 278, 280 (Bankr. S.D. Fla.,

19   1986) (recognizing that the circumstances of *Lion Capital* were unique and the principles are not

20   generally applicable in cases where there is no impediment to the formation of official creditors

21   committees).

22       **B.**      **The Public Entities Can Address Their Non-Pecuniary Interests in Public Health,
                     Welfare and Safety**

23

24             The Debtors recognize the interests of the Public Entities in the health, welfare and safety

25   of their communities, and share that concern. The Public Entities certainly are capable of addressing

26   those concerns in the appropriate fora, including in the appropriate legislative and regulatory bodies.

27   _____

28   [3] The fact that there are personal injury claims and wrongful death claims as well, does not change the
     analysis as to whether there should be a separate official Public Entities committee.

1   That is not the role of an official committee of creditors in a chapter 11 case.

2         As this Court stated in *In re Pacific Gas & Electric Company*, Ch. 11. No. 01-30923DM

3   (Bankr. N.D. Cal. May 18, 2001) "the Bankruptcy Code, and the bankruptcy court, were designed to

4   resolve debtor-creditor problems…In its wisdom, Congress was correct: the estate should pay for dealing

5   with those debtor-creditor issues in bankruptcy. It should not be burdened with matters likely to be

6   resolved elsewhere." Certainly, it would not be appropriate to appoint an official committee of creditors

7   for the purpose of addressing these issues.

8       **C.     The Public Entities Are Sophisticated Entities Capable of Adequately Representing Themselves**

9

10         Courts have long recognized that all creditors are able to participate in a chapter 11 case

11   through section 1109(b) of the Bankruptcy Code and, if warranted, can recover their expenses through a

12   "substantial contribution" application under section 503(b) of the Bankruptcy Code. *In re Drexel*

13   *Burnham Lambert Group, Inc.*, 118 B.R. 209, 212 (Bankr. S.D.N.Y. 1990)*; Hills Stores* 137 B.R. at 8.

14         As claimants and parties in interest, the Public Entities have the right to participate and

15   be heard in these cases, and, as stated, have coordinated their activities and retained professionals and

16   already are doing so. *See Drexel Burnham Lambert Group, Inc.*, 118 B.R. at 212; *Dow Corning Corp.,*

17   194 B.R. at 141; *Enron*, 279 B.R. at 685 (when deciding whether to appoint a separate committee, courts

18   consider that all creditors are able to participate through section 1109(b) and have the potential to recover

19   expenses through section 503(b)).

20         The Public Entities are sophisticated governmental entities with access to resources that

21   have extensive experience advocating for their own interests in various public proceedings; these chapter

22   11 cases should be no different.  Their Motion confirms that they are well-organized and have been for

23   some time, and that they already "provide a centralized point of contact for the Debtors".  Motion at 16-

24   18.  Additionally, the Public Entities have retained bankruptcy counsel in these Chapter 11 Cases,

25

26

27

28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

advanced their positions directly with the U.S. Trustee, and prepared and filed pleadings with this Court.[4] It is clear that the Public Entities are capable of effectively participating in these Chapter 11 Cases without the need for official committee status.

### III.  CONCLUSION

The Public Entities have not sustained their burden for the appointment of another official creditors committee and the costs and expenses attendant thereto. Simply stated, their claims are not unique and the existing Committees are more than capable of representing their interests. Further, the Public Entities have demonstrated their clear ability to represent their interests in these cases and are entitled to file an application under section 503(b) of the Bankruptcy Code, if warranted.

WHEREFORE the Debtors request that the Court deny the Motion and grant such other and further relief as the Court may deem just and appropriate.

Dated: March 11, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By:  /s/ *Jane Kim*
        Jane Kim

*Proposed Attorneys for Debtors
and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

---

[4] In addition to the Motion, the Public Entities filed an objection to the Debtors' DIP Motion on February 20, 2019. *Objection of the Public Entities to the Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503, and 507, and Fed. R. Bankr. P. 2002, 4001, 6003, 6004 and 9014 for Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured, Superpriority, Postpetition financing, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling Final Hearing and (V) Granting Related Relief* [Docket No. 494].