HOLLAND & KNIGHT LLP
Leah E. Capritta (*pro hac vice* pending)
1801 California Street, Suite 5000
Denver, CO 80202
Telephone: (303) 974-6660
Facsimile: (303) 974-6659
Email: thomas.leland@hklaw.com
       leah.capritta@hklaw.com

HOLLAND & KNIGHT LLP
Vince Farhat (SBN 183794)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450
Email: vince.farhat@hklaw.com

Attorneys for Debtor
TIGER NATURAL GAS, INC.

Holland & Knight LLP
1801 California Street, Suite 5000
Denver, Colorado 80202
Tel: 303.974.6660 Fax: 303.974.6659

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>        **Debtors.** | Case No.: 19-30088(DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OPPOSITION TO DEBTORS' COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AS TO ACTIONS AGAINST NON-DEBTORS** |
| **PG&E CORPORATION, PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>        **Plaintiffs,**<br><br>v.<br><br>**PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO,** *et al.*<br><br>        **Defendants.** | Date: March 27, 2019<br>Time: 9:30 a.m.<br>Before: Hon. Dennis Montali<br>        United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        450 Golden Gate Ave.<br>        San Francisco, CA 94102 |

Case: 19-30088   Doc# 858   Filed: 03/13/19   Entered: 03/13/19 15:20:03   Page 1 of 26

Holland & Knight LLP
1801 California Street, Suite 5000
Denver, Colorado 80202
Tel: 303.974.6660 Fax: 303.974.6659

# I.    INTRODUCTION

Lumping it to together with over 20 other cases, Debtor PG&E aks the Court to enjoin the case styled *Tiger Natural Gas, Inc. v. Pacific Gas & Electric Co.*, No. 4:16-cv-06711 (JSW) (White, J.), currently pending in the Northern District of California (the "Tiger case"), largely on the basis that, absent an injunction, Debtor PG&E will "suffer an immediate, adverse and irreparable harm" if the case against the individual defendants proceeds. According to Debtor PG&E, the attention of its officers, directors, key employees and legal team will be diverted with litigating the Tiger case, thereby draining important resources away from the Chapter 11 proceeding. Further, according to PG&E, it will be necessarily be liable for the action of the individual defendants. Debtor PG&E's suppositions, however, are neither accurate nor will necessarily lead to irreparable harm. The Court, accordingly, should deny the injunction as it applies to the Tiger case.

## The Parties and Factual Background

1.    Tiger Natural Gas, Inc., is a Core Transport Agent ("CTA") registered with the California Public Utilities Commission that provides retail natural gas to residences and small businesses within Debtor Pacific Gas & Electric Company's (Debtor PG&E) territory in Northern California.

2.    By right under Gas Rule 23, Tiger elected Consolidated PG&E Billing, under which Debtor PG&E places Tiger's charges for its gas service on the customer's monthly energy statement, collects from the customer, and then remits payment to Tiger. As such, Debtor PG&E acts as Tiger's billing and collections agent. In connection with this role, Debtor PG&E sends Tiger daily and monthly electronic billing and payment reports purporting to inform Tiger about the status of its customer accounts.

3.    On November 21, 2016, Tiger filed suit for acts of on-going fraud committed by Debtor PG&E and three of its employees. Specifically, Tiger alleges that Debtor PG&E seizes and then delays payment of money paid by Debtor PG&E's and Tiger's joint customer that should be remitted to Tiger.  Tiger also alleges that Debtor PG&E presents certain credits, owed to the

Holland & Knight LLP
1801 California Street, Suite 5000
Denver, Colorado 80202
Tel: 303.974.6660 Fax: 303.974.6659

customer by Debtor PG&E, on the joint customer's energy statement such that the customer believes that no money is owed to Tiger (*i.e.*, the energy statement literally tells the customer that nothing is owed and that no payment is due), again delaying or preventing payment to Tiger. Finally, Tiger alleges that Debtor PG&E collects money owed to Tiger from disconnected joint customers and does not pay that amount to Tiger.

4. Notably, the daily and monthly reports from Debtor PG&E to Tiger show only the amount billed by Debtor PG&E and the amount that Debtor PG&E decided to allocate to Tiger, giving Tiger the intended impression that the customer simply has paid Tiger while simultaneously giving the joint customer the intended impression that she has paid in full. Debtor PG&E and the individual defendants compound this fraud by refusing to provide Tiger with any other information about Tiger's customer accounts.

5. Tiger's complaint identifies dozens of false and misleading statements contained in the billing and payment reports constituting wire fraud, which have been on-going since at least 2011, as predicate acts under the Racketeer and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. Tiger named three employees of Debtor PG&E as RICO persons: Albert Torres, William Chen, and Tanisha Robinson (now Tanisha Brown) as RICO Defendants. Tiger alleges that Debtor PG&E is vicariously liable under a theory of respondeat superior.

6. Tiger's claims directly against Debtor PG&E include violation of the Sherman Act, 15 U.S.C. § 2, breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, intentional interference with contract, intentional interference with prospective business advantage; and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.

7. None of the individual defendants are officers or executives nor are they directly involved in Debtor PG&E's bankruptcy. Mr. Torres retired from Debtor PG&E several years ago. (Capritta Decl. ¶ 2, Depo. Albert Torres at 8:6-11, Exhibit 1.) At the time of his deposition in August 2017, Mr. Chen was a principle regulatory analyst related to customer care regulatory compliance and support for general rate cases and other proceedings. (Capritta Decl. ¶ 3, Depo. William Chen at 7:25-8:9, Exhibit 2.) Ms. Brown supervises Debtor PG&E's gas billing team.

1   (Capritta Decl. ¶ 4, Depo. Tanisha Brown at 11:12-15, Exhibit 3.) That is, none of the individual

2   defendants' responsibilities require their particular attention to Debtor PG&E's Chapter 11

3   reorganization.

4        8.    Tiger's claims resemble those brought by another CTA, United Energy Trading,

5   against Debtor PG&E in a matter styled *United Energy Trading v. Pacific Gas & Electric*

6   *Company*, 3:15-cv-02383-RS (Seeborg, J.) (the "UET case"). In 2018, the UET case completed all

7   discovery, including expert discovery, and most pre-trial motions, including summary judgment and

8   motions under the *Daubert* standard, and trial was to start on March 11, 2019. (Capritta Decl. at ¶

9   5.)

10        9.    Because of the similarities between the two cases, Debtor PG&E and Tiger have

11   worked together to ensure conservation of resources by both parties. For example, the parties

12   agreed to depose each PG&E witness once (unless the testimony was particular to either UET or

13   Tiger) and have agreed to certain discovery conventions. A single magistrate judge, Magistrate

14   Judge Sallie Kim, resolved discovery disputes in both cases. (Capritta Decl. at ¶ 6.)

15        10.    The factual issues in both the Tiger case and the UET case center on Debtor PG&E's

16   billing and collections program, known as "CC&B," its programming, and changes to that

17   programming over the last decade. Magistrate Judge Kim, Judge White, and Judge Seeborg have

18   developed a high degree of knowledge into these factual issues and the positions of the parties

19   regarding the evidence in the case. (Capritta Decl. at ¶ 7.)

20        11.    In addition, Judge White (and Judge Seeborg) are well-apprised of the legal issues at

21   work, which involve an interplay between PG&E's Gas Rules, Commission Rulings and California

22   and federal law.

23        12.    On December 31, 2019, fact discovery largely closed in the Tiger case although the

24   Court ordered PG&E to provide an additional witness and a separate meeting of forensic examiners

25   on several issues surrounding the CC&B system (and the data provided by PG&E from that

26   system). Nevertheless, the parties completed fact discovery by the time Debtor PG&E filed for

27   Chapter 11 on January 31, 2019. (Capritta Decl. at ¶ 8.)

28

OPP. TO DEBTOR'S COMPLAINT               CASE NO. 19-30088(DM)

13. On February 11, 2019, the individual defendants served their expert report in the Tiger case. The report disclosed the exact same experts used by PG&E in the UET case, Daniel Ray and Martin Quinn, employing the same strategy and methodology as they did in UET case. That is, Mr. Ray reviewed the CC&B data for the accounts listed in the Tiger's complaint and opined that no indicia of fraud exists, as his report concluded in the UET case. Dr. Quinn provided an historical retrospective, just as he provided in his initial report in the UET case. That is, PG&E (and, by extension, the individual defendants) follow the exact same expert strategy as set forth the UET case. (Capritta Decl. at ¶ 9.)

14. On February 27, 2019, the Court stayed the Tiger case in its entirety, directing the parties to provide a status report every 180 days and reserving the right to administratively close the case based pending resolution of this bankruptcy proceeding. (Capritta Decl. ¶ 10, Order Staying Case and Requiring Joint Status Reports, Exhibit 4.)

15. The only discovery remaining in the Tiger case involves serving Tiger's expert reports, certain rebuttal reports, and expert depositions.

16. Tiger (together with UET) may move for relief from stay under 11 U.S.C. § 362(d) depending on several factors in this proceeding.

17. Debtor PG&E will not suffer immediate, adverse, and irreparable harm despite its assertions to the contrary.

18. First, the District Court has already stayed the Tiger case in its entirety and will not advance the case further until at least August 26, 2019, long after this Court determines how Debtor PG&E's Chapter 11 petition will proceed. Accordingly, Debtor PG&E's request to enjoin the Tiger case not only does not rise to the standard of "immediate, adverse and irreparable harm," Debtor PG&E's concerns about the Tiger case are, for all intents and purposes, moot.

19. Second, Debtor PG&E misplaces its apprehension that the focus of its officers, directors, key personnel and legal team will be distracted by the Tiger case. None of the individual defendants are officers, directors or key personnel—indeed, one of them retired several years ago. Further, all the legal and factual issues—including several complicated discovery matters involving

Holland & Knight LLP
1801 California Street, Suite 5000
Denver, Colorado 80202
Tel: 303.974.6660 Fax: 303.974.6659

Holland & Knight LLP
1801 California Street, Suite 5000
Denver, Colorado 80202
Tel: 303.974.6660 Fax: 303.974.6659

the CC&B system—were previously litigated in the UET case. As demonstrated by the recent expert disclosures, Debtor PG&E's and the individual defendants' legal strategy will not deviate from that employed by defendants the UET case to any remarkable degree. Accordingly, little danger exists that Debtor PG&E's legal team will be unduly distracted or consumed by the Tiger case.

20.     Further, the Tiger case is well advanced. The parties completed fact discovery in January 2019 and only expert discovery remains. These matters require little to no expenditure of employee resources since the factual record has closed. Further, as noted above, the experts will no doubt follow the same strategy from the UET case, thus requiring little oversight from Debtor PG&E's in-house legal team.

21.     Moreover, Debtor PG&E's insistence that it will be liable for the acts of the individual defendants constitutes an oversimplification. Tiger alleges that the individual defendants acted as RICO persons and that Consolidated Billing itself is a RICO enterprise. Under Ninth Circuit law, an employer may be liable for an employee's racketeering activities if: (i) the employer is distinct from the RICO enterprise; (ii) the employer benefitted from its employee's RICO violations; (iii) the employee's conduct occurred substantially within the time and space limits authorized by the employment; (iv) the employee was motivated, at least in part, by a purpose to serve the employer; and (v) the act was of a kind that the employee was hired to perform. *Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 775-76 (9th Cir. 2002). However, if the individual defendants acted outside the functions Debtor PG&E hired them to perform, then respondeat superior liability will not apply. *Id*. at 778. Notably, Debtor PG&E has not wholly ratified the acts of the individual defendants and, therefore, whether or not Debtor PG&E is the "real party in interest" under the RICO claim has not been conclusively established.

22.     Finally, Debtor PG&E's requested injunction will work a hardship on Tiger since a ruling in Debtor PG&E's favor could have the effect of precluding or prejudging any subsequent motion for relief from stay. As noted above, the Tiger case presents complicated legal and factual issues over which the District Court has garnered significant expertise. While this Court may or

1    may not find that expertise, along with other considerations, sufficient to outweigh the need to

2    maintain the stay, those issues ought to be determined in the proper context of a motion for relief

3    from stay.

4        23.    In sum, the Tiger case poses little danger of hardship to Debtor PG&E. The District

5    Court stayed the entire case on February 28, 2019 and no additional action will be necessary until

6    August 2019. Even so, discovery is largely complete, with only expert discovery remaining.

7    Further, Debtor PG&E and the individual defendants will likely employ the same strategy used in

8    the UET case, requiring little additional attention from Debtor PG&E's legal team. Finally, the

9    Tiger case presents complex legal and factual issues which may warrant relief from stay and,

10   therefore, should not be predetermined in the context of this adversary proceeding.

**COUNT ONE**

(Section 105 Preliminary and Permanent Injunction)

11

12

13      24.    Tiger repeats and realleges the allegations contained in the preceding paragraphs.

14      25.    Tiger admits that Debtors seek a preliminary and permanent injunction to stay the

15   continued prosecution of the Related Actions against the Non-Debtor Defendants under section

16   105(a) of the Bankruptcy Code until the Debtors emerge from Chapter 11, as set forth in Paragraph

17   47 of the Complaint.

18      26.    Tiger admits that this Court has the jurisdiction and authority to enjoin the Tiger case

19   under section 105(a) because the Tiger case is related to the Chapter 11 Cases as set forth in

20   Paragraph 48 of the Complaint; Tiger denies that the Tiger case would unduly interfere with the

21   Chapter 11 Cases.

22      27.    Tiger admits that a Bankruptcy Court may "issue any order, process, or judgment

23   that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code) (11 U.S.C. §

24   105(a))," as set forth in Paragraph 49 of the Complaint.

25      28.    Tiger admits that the Bankruptcy Court may issue injunctive relief provided that the

26   elements for that relief have been met. *See Solidus Networks, Inc. v. Excel Innovations, Inc. (In re*

27

28

Holland & Knight LLP
1801 California Street, Suite 5000
Denver, Colorado 80202
Tel: 303.974.6660 Fax: 303.974.6659

Holland & Knight LLP
1801 California Street, Suite 5000
Denver, Colorado 80202
Tel: 303.974.6660 Fax: 303.974.6659

1  *Excel Innovations)*, 502 F.3d 1086, 1095-96 (9th Cir. 2007). Tiger denies the remainder of

2  Paragraph 50 of the Complaint.

3    29.    Tiger lacks sufficient evidence to admit or deny the allegations of Paragraph 51 and

4  therefore denies them.

5    30.    Tiger denies that Debtor PG&E will suffer immediate, adverse and irreparable harm

6  absent the injunction, as set forth in Paragraph 52.

7    31.    Tiger denies that the balance of hardships favors an injunctions, as set forth in

8  Paragraph 53. Indeed, the balance of hardships favors denial of the injunction, for all the reasons set

9  forth above.

10    32.    Tiger denies the allegations in Paragraph 54.

11    33.    Tiger denies that the injunction is necessary and proper.

12  Pursuant to the Federal Rules of Bankruptcy Procedure 7012(b), Tiger consents to entry of

13  final orders or judgment by the Court.

14  Tiger therefore asks the Court to deny Debtor PG&E's request for a preliminary and

15  permanent injunction under section 105 of the Bankruptcy Code with regard to the Tiger case.

16

17  Dated: March 13, 2019.                    HOLLAND & KNIGHT LLP

18                                            By:    */s/Vince Farhat*
                                                     Vince Farhat
19

20                                            *Attorney for Creditor,*
                                              *Tiger Natural Gas, Inc.*

21

22

23

24

25

26

27

28

OPP. TO DEBTOR'S COMPLAINT                          CASE NO.  19-30088(DM)

# EXHIBIT 1

## Page 1

```
1              UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3                 SAN FRANCISCO DIVISION
4
   UNITED ENERGY TRADING, LLC,
5
          Plaintiff,
6                                   Case No.
                                    3:15-CV-2383-RS
7      v.
8  PACIFIC GAS AND ELECTRIC COMPANY,
   a California corporation; ALBERT
9  TORRES, an individual; BILL CHEN,
   an individual; TANISHA ROBINSON,
10 an individual,
11          Defendants.
   _____
12
13    HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14         VIDEOTAPED DEPOSITION OF
15              ALBERT TORRES
16            August 30, 2017
17               8:59 A.M.
18
19        50 California Street, Suite 2800
20           San Francisco, California
21
22
23
24  REPORTED BY:  INGRID SKOROBOHATY, CSR NO. 11669
25          Job No. J0625021
```

## Page 2

```
1  APPEARANCES:
2
3  For the Plaintiff:
4      HOLLAND & KNIGHT
       BY:  LEAH CAPRITTA, ATTORNEY AT LAW
5      1801 California Street, Suite 5000
       Denver, CO 80202
6      303.974.6646
       leah.capritta@hklaw.com
7
8
   For the Defendants:
9
       STEPTOE & JOHNSON LLP
10     BY:  LAURIE EDELSTEIN, ATTORNEY AT LAW
       1891 Page Mill Road, Suite 200
11     Palo Alto, CA 94304
       650.687.9570
12     ledelstein@steptoe.com
13
14
15 Also Present:
16     MARISA RAMOS, Videographer
17
18
19
20
21
22
23
24
25
```

## Page 3

```
1              INDEX OF EXAMINATION
2
3  WITNESS:  ALBERT TORRES
4  EXAMINATION                           PAGE
5    By Ms. Capritta                       7
6
7
8              --oOo--
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 4

```
1              INDEX OF EXHIBITS
                                          PAGE
2
   Exhibit 375 - One page headed "Customer    68
3      Services Communication"
4  Exhibit 376 - Multipage document headed    74
       "Master CTA"
5
   Exhibit 377 - Multipage document headed    77
6      "CTA Billing"
7  Exhibit 378 - Multipage document headed    97
       "Questions about Payment
8      Allocations and
       Cancellations"
9
   Exhibit 379 - Multipage document headed   101
10     "Reallocation of Funds"
11 Exhibit 380 - Printout of e-mail          124
       correspondence with
12     attachments
13 Exhibit 381 - Printout of e-mail          125
       correspondence
14
   Exhibit 382 - Printout of e-mail          126
15     correspondence with
       attachments
16
   Exhibit 383 - Printout of e-mail          130
17     correspondence
18 Exhibit 384 - Printout of e-mail          131
       correspondence
19
   Exhibit 385 - Printout of e-mail          145
20     correspondence
21 Exhibit 386 - Printout of e-mail          157
       correspondence
22
   Exhibit 387 - Printout of e-mail          159
23     correspondence
24 Exhibit 388 - Printout of e-mail          161
       correspondence with
25     attachment
```

Case: 19-30088   Doc# 859   Filed: 03/13/19   Entered: 03/13/19 15:20:07   Page 10 of 26

Page 5

1                 INDEX OF EXHIBITS (Continued)

                                                        PAGE
2

    Exhibit 389 - Printout of e-mail              163
3                  correspondence

4   Exhibit 390 - Printout of e-mail              165
                   correspondence with
5                  attachments

6   Exhibit 391 - Printout of e-mail              173
                   correspondence
7

    Exhibit 392 - Printout of e-mail              181
8                  correspondence with
                   attachments
9

    Exhibit 393 - Printout of e-mail              185
10                 correspondence

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 6

1              SAN FRANCISCO, CALIFORNIA
2       WEDNESDAY, AUGUST 30, 2017, 8:59 A.M.
3
4         THE VIDEOGRAPHER:  Good morning.  This
5   begins number -- Video No. 1, Volume I, in the
6   deposition of Al Torres in the matter of United
7   Energy Trading versus Pacific Gas & Electric,
8   et al., in the United States District Court,
9   Northern District of California, San Francisco
10  Division, the case number of which is 3:15-CV-02383.
11       Today's date is August 30th, 2017, and the
12  time on the video monitor is 9:00 o'clock a.m.
13       The deposition is being taken at 50
14  California Street, San Francisco, California, and
15  was made at the request of the defendant [sic].
16       The court reporter producing the official
17  transcript for today's testimony is Ingrid
18  Skorobohaty of Esquire Deposition Solutions.
19       The videographer is Marisa Ramos of
20  Esquire Deposition Solutions.
21       Will counsel please identify yourselves
22  and state whom you represent.
23       MS. CAPRITTA:  You know, can -- my name is
24  Leah Capritta on behalf of Holland & Knight, and if
25  I could just correct what the videographer said a

Page 7

1   moment ago.  The deposition is actually being taken
2   at the request of my client, the plaintiff, United
3   Energy Trading LLC.
4        THE VIDEOGRAPHER:  Oh, yes.  My mistake.
5   Request of the plaintiff.
6        MS. CAPRITTA:  That's right.
7        MS. EDELSTEIN:  Laurie Edelstein, from
8   Steptoe & Johnson, for Defendant Pacific Gas &
9   Electric Company and the individual defendants
10  Albert Torres, William Chen, and Tanisha Robinson.
11       THE VIDEOGRAPHER:  Thank you.
12       Will the court reporter please swear in
13  the witness.
14
15            ALBERT TORRES,
16  having been first duly sworn, testified as follows:
17
18            EXAMINATION
19       MS. CAPRITTA:  Good morning, Mr. Torres.
20       THE WITNESS:  Good morning.
21  BY MS. CAPRITTA:
22       Q.  You just heard that my name is Leah
23  Capritta, and, as I just said, I represent the
24  plaintiff in this action, United Energy Trading LLC.
25       Would you please state your name for the

Page 8

1   record?
2        A.  Albert Torres.
3        Q.  Where do you live, Mr. Torres?
4        A.  8253 Trevi Way, El Dorado Hills,
5   California.
6        Q.  Where do you work, Mr. Torres?
7        A.  I am retired.
8        Q.  When did you retire?
9        A.  February 1st of this year.
10       Q.  Where did you work before you retired?
11       A.  Pacific Gas & Electric Company.
12       Q.  What was your last position at Pacific Gas
13  & Electric?
14       A.  Vice president, customer operations.
15       Q.  I'm sure that your attorney has already
16  gone over sort of some of the guidelines for having
17  your deposition taken with you, but I will do so
18  here as well.
19       Sort of the first guideline is that we
20  answer one at a time, so I'm going to ask that you
21  wait until I finish.  Oh, I see you smiling.  I
22  think maybe Ms. Edelstein has said something about
23  this.  If you would wait until I finish my question
24  and give yourself a little pause to think about my
25  question and then answer it, I would appreciate

Page 9

1  that.  This not only has the purpose of giving me
2  your best testimony, but it also ensures that we
3  don't speak over each other, which is a benefit to
4  the court reporter, who is taking down everything we
5  say.
6         You'll notice that there is a videographer
7  and a court reporter, and although they both serve
8  their individual functions, the official record is
9  actually what the court reporter is taking down
10  right now.
11         So will you remember to give me a little
12  pause after my question, please?
13    A.  Sure.
14    Q.  Thank you.
15         The second guideline is that I'm going to
16  ask you to provide me with oral answers today.  If
17  you nod your head or shake your head or shrug your
18  shoulders, I'll know what you're talking about,
19  it'll be captured on the video, but again, the court
20  reporter will have difficulty taking that down,
21  okay?
22    A.  Okay.
23    Q.  And finally, if you need a break at any
24  point, go ahead and ask me for a break, and we'll
25  take it.  I will ask, however, that, if I have posed

Page 10

1  a question to you, that you answer it before we take
2  our break, okay?
3    A.  Okay.
4      MS. CAPRITTA:  All right.
5      MS. EDELSTEIN:  And the only exception to
6  that is if there is a question that you think might
7  reveal attorney-client information, then you would
8  have an opportunity to consult with me before
9  answering.
10  BY MS. CAPRITTA:
11    Q.  So you stated that you were the vice
12  president of customer operations.  For how long were
13  you the vice president of customer operations?
14    A.  About nine years.
15    Q.  So you began in that position in 2008?
16    A.  Yes.
17    Q.  What -- were you at Pacific Gas & Electric
18  before 2008?
19    A.  I was.
20    Q.  For how long in total did you work for --
21  and if I call them "PG&E," will you know --
22    A.  Yes.
23    Q.  Okay.
24         For how long did you work for PG&E?
25    A.  38 years.

Page 11

1    Q.  So what did you do before 2008?
2    A.  I held a variety of positions, ranging
3  from field engineer to supervisor, leading
4  everything from regulatory to customer service to
5  engineering to marketing, product development,
6  ultimately ending up as -- in the
7  customer-operations function.
8    Q.  Well, what was your job immediately before
9  becoming vice president of customer operations?
10    A.  I was senior director of customer
11  operations.  At that time, I believe it was called
12  credit and records.
13    Q.  Was there a reorganization in 2008, or did
14  the name just change?
15    A.  In 2008, the name just changed, and I
16  became an officer because of my expanded duties.
17    Q.  How did your duties expand?
18    A.  There were some departures at PG&E.  I was
19  assigned to take over responsibility, in addition to
20  my other duties, the deployment of SmartMeters, and
21  that added to my workload and my scope, and I became
22  vice president at that point.
23    Q.  What groups or divisions reported to you
24  as vice president of customer operations?
25    A.  It was the full process starting with the

Page 12

1  specification, purchase, installation of meters, the
2  maintenance on meters, the reading of the meters;
3  the delivery of that information to the billing
4  system; and then the management of customer records
5  and billing records within the system; the
6  production of bills; the processing of payments by
7  customers, ranging from paper payments, electronic
8  payments, to the processing of payments into our
9  accounting system and ultimately our credit and
10  collections organization to pursue delinquent
11  account collections as well.
12    Q.  So you testified about the delivery of the
13  information from the meters to the billing system.
14  How is that accomplished?
15    A.  It's accomplished in various ways.
16         Traditionally, a meter reader would read a
17  meter and take the reading into an electronic
18  handheld device.  That device is downloaded --
19  uploaded daily to our IT system, and then the IT
20  system then does the math and calculates the bill.
21         With the advent of SmartMeter, the
22  meter-reader function is eliminated and replaced
23  with a electronic -- an electronic communication
24  from the meter to a network infrastructure, and then
25  that network infrastructure is tied into our billing

Case: 19-30088    Doc# 859    Filed: 03/13/19    Entered: 03/13/19 15:20:07    Page 12 of
26

Page 189

1    Q.   And I'm not really talking about
2  reconciliation.  And it's more of a -- it's almost
3  like a physical thing, you know, where the money is
4  affirmatively handed over to the CTAs.  Is that
5  something that your organization handled?
6    A.   No.  No.
7    Q.   Whose organization was responsible for
8  that?
9    A.   I'm not sure.  If I had to think about it,
10 maybe accounts payable.  I'm not sure.
11      MS. CAPRITTA:  Okay.  I do not think I
12 have any more questions for Mr. Torres today.
13      MS. EDELSTEIN:  If we can mark the
14 deposition highly confidential.  I believe that
15 there was documents marked highly confidential,
16 attorneys' eyes only shown to Mr. Torres.  As well
17 as I'd like to request, on behalf of Mr. Torres, an
18 opportunity to review the transcript when it's
19 available and make any corrections necessary.
20      THE VIDEOGRAPHER:  This concludes today's
21 proceedings in the deposition of Al Torres.  The
22 number of disks used is four.  We are now going off
23 the record.  The time is 3:41.
24      (Proceedings concluded at 3:41 p.m.)
25

Page 190

1              REPORTER'S CERTIFICATION
2
3        I, INGRID SKOROBOHATY, a Certified
4  Shorthand Reporter, hereby certify that the witness
5  in the foregoing deposition was by me duly sworn to
6  tell the truth, the whole truth and nothing but the
7  truth in the within-entitled cause;
8        That said deposition was taken down in
9  shorthand by me, a disinterested person, at the time
10 and place therein stated, and that the testimony of
11 the said witness was thereafter reduced to
12 typewriting, by computer, under my direction and
13 supervision, and that the witness has requested a
14 review pursuant to Rule 30(e)(2).
15        I further certify that I am not of counsel
16 or attorney for either or any of the parties to the
17 said deposition, nor in any way interested in the
18 event of this cause, and that I am not related to
19 any of the parties thereto.
20
21      DATED:  September 6, 2017
22
23      _Skorobohaty_
24 INGRID SKOROBOHATY, C.S.R. No. 11669
25

Page 191

1              DEPOSITION ERRATA SHEET
2  Assignment No.:  J0625021
3  Case Caption:  United Energy Trading, LLC v. Pacific
                   Gas and Electric Company, et al.
4
5
6        DECLARATION UNDER PENALTY OF PERJURY
7        I declare under penalty of perjury that I
8  have read the entire transcript of my deposition
9  taken in the captioned matter or the same has been
10 read to me, and the same is true and accurate, save
11 and except for changes and/or corrections, if any,
12 as indicated by me on the DEPOSITION ERRATA SHEET
13 hereof, with the understanding that I offer these
14 changes as if still under oath.
15        Signed on the _____ day of _____,
16 20____.
17
18                    _____
                       ALBERT TORRES
19
20
21
22
23
24
25

Page 192

1              DEPOSITION ERRATA SHEET
2  Page No.___ Line No.___ Change to:_____
3  _____
4  Reason for change:_____
5  Page No.___ Line No.___ Change to:_____
6  _____
7  Reason for change:_____
8  Page No.___ Line No.___ Change to:_____
9  _____
10 Reason for change:_____
11 Page No.___ Line No.___ Change to:_____
12 _____
13 Reason for change:_____
14 Page No.___ Line No.___ Change to:_____
15 _____
16 Reason for change:_____
17 Page No.___ Line No.___ Change to:_____
18 _____
19 Reason for change:_____
20 Page No.___ Line No.___ Change to:_____
21 _____
22 Reason for change:_____
23 _____
24 SIGNATURE:_____ DATE:_____
25              ALBERT TORRES

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com
Case: 19-30088   Doc# 859   Filed: 03/13/19   Entered: 03/13/19 15:20:07   Page 13 of
26

# EXHIBIT 2

**Page 1**

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3               SAN FRANCISCO DIVISION
 4
    UNITED ENERGY TRADING, LLC,
 5
           Plaintiff,
 6                              Case No.
                                3:15-CV-2383-RS
 7      v.
 8  PACIFIC GAS AND ELECTRIC COMPANY,
    a California corporation; ALBERT
 9  TORRES, an individual; BILL CHEN,
    an individual; TANISHA ROBINSON,
10  an individual,
11           Defendants.
    _____
12
13    HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14        VIDEOTAPED DEPOSITION OF
15             WILLIAM H. CHEN
16            August 22, 2017
17               8:57 A.M.
18
19       50 California Street, Suite 2800
20          San Francisco, California
21
22
23
24  REPORTED BY:  INGRID SKOROBOHATY, CSR NO. 11669
25          Job No. J0625020
```

**Page 2**

```
 1  APPEARANCES:
 2
 3  For the Plaintiff:
 4      HOLLAND & KNIGHT
        BY:  LEAH CAPRITTA, ATTORNEY AT LAW
 5      1801 California Street, Suite 5000
        Denver, CO 80202
 6      303.974.6646
        leah.capritta@hklaw.com
 7
 8
    For the Defendants:
 9
        STEPTOE & JOHNSON LLP
10      BY:  LAURIE EDELSTEIN, ATTORNEY AT LAW
        1891 Page Mill Road, Suite 200
11      Palo Alto, CA 94304
        650.687.9570
12      ledelstein@steptoe.com
13
14
15  Also Present:
16      MARISA RAMOS, Videographer
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1              INDEX OF EXAMINATION
 2
 3  WITNESS:  WILLIAM H. CHEN
 4  EXAMINATION                              PAGE
 5     By Ms. Capritta                         7
 6
 7
 8              --oOo--
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
 1              INDEX OF EXHIBITS
                                            PAGE
 2
 3  Exhibit 286 - Printout of e-mail          68
                correspondence with
 4              attachments
 5  Exhibit 287 - Printout of e-mail          72
                correspondence with
 6              attachments
 7  Exhibit 288 - Printout of e-mail          78
                correspondence with
 8              attachments
 9  Exhibit 289 - Printout of e-mail          82
                correspondence with
10              attachments
11  Exhibit 290 - Printout of e-mail          90
                correspondence with
12              attachments
13  Exhibit 291 - Printout of e-mail          96
                correspondence with
14              attachments
15  Exhibit 292 - Printout of e-mail         101
                correspondence
16  Exhibit 293 - Printout of e-mail         123
                correspondence with
17              attachments
18  Exhibit 294 - Printout of e-mail         129
                correspondence
19
20  Exhibit 295 - Printout of e-mail         132
                correspondence
21  Exhibit 296 - Printout of e-mail         144
                correspondence
22
23  Exhibit 297 - Printout of e-mail         147
                correspondence
24  Exhibit 298 - Printout of e-mail         147
                correspondence with
25              attachments
```

Case: 19-30088    Doc# 859    Filed: 03/13/19    Entered: 03/13/19 15:20:07    Page 15 of
26

Page 5

INDEX OF EXHIBITS (Continued)

PAGE

Exhibit 299 - Printout of e-mail          154
              correspondence with
              attachments

Exhibit 300 - Printout of e-mail          154
              correspondence
Exhibit 301 - Printout of e-mail          160
              correspondence

Exhibit 302 - Printout of e-mail          188
              correspondence
Exhibit 303 - Multipage document, first   199
              page labeled "Core Transport
              Agent (CTA) Escalated
              Complaints Increase"

Exhibit 304 - Printout of e-mail          211
              correspondence
Exhibit 305 - Printout of e-mail          223
              correspondence

Exhibit 306 - Printout of e-mail          225
              correspondence
Exhibit 307 - Printout of e-mail          228
              correspondence

Exhibit 308 - Printout of e-mail          232
              correspondence
Exhibit 309 - Printout of e-mail          235
              correspondence

Exhibit 310 - Printout of e-mail          246
              correspondence

Page 6

1       SAN FRANCISCO, CALIFORNIA
2    TUESDAY, AUGUST 22, 2017, 8:57 A.M.
3
4       THE VIDEOGRAPHER:  Good morning.  This
5    begins Video No. 1, Volume I, in the deposition of
6    Bill Chen in the matter of United Energy Trading
7    versus Pacific Gas & Electric, et al., in the United
8    States District Court, Northern District of
9    California, San Francisco Division, the case number
10   of which is 3:15-CV-02383-RS.
11      Today's date is August 22nd, 2017, and the
12   time on the monitor is 8:57.
13      The deposition is being taken at 50
14   California Street, San Francisco, California, and
15   was made at the request of the plaintiff.
16      The court reporter producing the official
17   transcript for today's testimony is Ingrid
18   Skorobohaty of Esquire Deposition Solutions, and
19   Marisa Ramos of Esquire Deposition Solutions.
20      Will counsel please identify yourselves
21   and state whom you represent.
22      MS. CAPRITTA:  This is Leah Capritta of
23   Holland & Knight on behalf of the plaintiff, United
24   Energy Trading, LLC.
25      MS. EDELSTEIN:  Laurie Edelstein, from

Page 7

1    Steptoe & Johnson, on behalf of the Defendants
2    Pacific Gas & Electric Company, Albert Torres,
3    William Chen, and Tanisha Robinson.
4       THE VIDEOGRAPHER:  Thank you.
5       Will the court reporter please swear in
6    the witness.
7
8          WILLIAM H. CHEN,
9    having been first duly sworn, testified as follows:
10
11           EXAMINATION
12      MS. CAPRITTA:  Good morning, Mr. Chen.
13      THE WITNESS:  Good morning.
14   BY MS. CAPRITTA:
15      Q.   Could you please state your name formally
16   for the record?
17      A.   William H. Chen.
18      Q.   And Mr. Chen, where do you live?
19      A.   I live in San Ramon, California.
20      Q.   Have you ever had your deposition taken
21   before?
22      A.   No.
23      Q.   For whom do you work, Mr. Chen?
24      A.   Pacific Gas & Electric Company.
25      Q.   And what is your current title?

Page 8

1       A.   Current title is principal regulatory
2    analyst.
3       Q.   What do you do as a principal regulatory
4    analyst?
5       A.   I work within the customer care regulatory
6    compliance and policy department, and I provide
7    support for our general rate cases and also other
8    proceedings that pertain to our customer care
9    organization before the Public Utilities Commission.
10      Q.   What is customer care?
11      A.   Customer care is a department within PG&E.
12      Q.   Okay.
13      Well, what does it do?  What does the
14   customer care department do?
15      A.   Customer care is a very large
16   organization.  There are many different -- I guess
17   you call them maybe sub lines of businesses.
18      Q.   Such as what?  What sub lines of
19   businesses are there?
20      A.   So there are -- there's customer service,
21   there's customer operations, and there is the
22   customer energy solutions sub line of business.
23      Q.   So I'm going to back up a little bit and
24   give you a couple guidelines for your deposition
25   here today.

Case: 19-30088    Doc# 859    Filed: 03/13/19    Entered: 03/13/19 15:20:07    Page 16 of
26

Page 9

1       The first is that I'm going to ask that we
2  only speak one at a time during the deposition.  You
3  will have an impulse, I think, to anticipate what my
4  question is by the beginning of the question and
5  then want to answer it before I finish asking the
6  question, but if you would please just wait until I
7  finish answering [sic] the question, give yourself a
8  moment to think about your answer, and then provide
9  me with that answer.  And the reason for that is
10  really kind of a practical one.  The court reporter
11  is here taking down everything we say, and if we
12  talk over each other, it's going to be difficult for
13  her to take -- to take that down.
14       So can you do that for me?
15  A.  I -- yes.  I understand.
16  Q.  Okay.
17       The second thing is that I'm going to ask
18  that you provide me with oral answers today, so, you
19  know, if you nod your head or shake your head or
20  shrug your shoulders, I might know what you're
21  saying because I'm right here -- and of course the
22  video is taking it down -- but again, that's
23  something that's difficult for the reporter to take
24  down, and she really is providing the official
25  record here.

Page 10

1       Okay?
2  A.  Yes.
3  Q.  All right.
4       And finally, if it -- if you need a break
5  at any time, go ahead and ask me to do that.  And
6  you'll find that we do take breaks fairly regularly,
7  about once an hour, depending on how the questions
8  are going, but if for some reason you do need to
9  take a break in the middle or before we take our
10  next break, you can ask me to do that, and we'll
11  take one.  The only thing that I'll ask is that you
12  answer any question that I have posed, and then we
13  can take our break.
14       Okay?
15  A.  That sounds good.
16  Q.  All righty.
17       So we were talking about the different --
18  I think you called them sub lines of businesses
19  within the customer care organization, and one of
20  which is customer service.  Describe for me what
21  customer service is responsible for.
22  A.  The customer service organization is
23  responsible for basically being the company's, you
24  know, primary, you know, relationship -- you know,
25  managing our relationships with our customers.

Page 11

1       We have -- we have an organization that,
2  you know, primarily fields calls and service
3  inquiries from our residential customers and also
4  for our business customers that's done through our
5  customer contact centers or through our local
6  customer service offices, and then we also have a
7  department that manages relationships with our
8  commercial, industrial, and agricultural customers.
9  Q.  Okay.
10       So you said that you have an organization
11  that fields calls and service inquiries from
12  residential customers and for business customers,
13  and so are -- are those generally referred to as
14  core customers?
15       MS. EDELSTEIN:  Objection to form.
16  BY MS. CAPRITTA:
17  Q.  You'll find, from time to time, that your
18  counsel may interpose objections, and that's her
19  job, but unless she instructs you not to answer, if
20  you could go ahead and answer the question, please.
21  A.  We don't typically refer to them as core
22  customers in -- in that context.
23  Q.  Okay.
24       Well, do you understand what the term
25  "core customer" means?

Page 12

1  A.  Core customers, yes.  Yes, I do.
2  Q.  Okay.
3       And what is that?
4  A.  "Core customers" is typically a term that
5  we use in the -- on the gas side of the business for
6  residential customers.  It can be small business
7  customers as well.
8  Q.  What distinguishes a core customer that
9  would be a business from a -- a different commercial
10  customer?
11  A.  Usage.
12  Q.  Do you know what the usage cutoff is --
13  A.  I --
14  Q.  -- for that?
15  A.  I don't recall.
16  Q.  Gotta wait till I finish.
17       Go ahead, though.
18  A.  I -- I don't recall the threshold.
19  Q.  So we were talking about the customer
20  service, which you stated was a -- an area of
21  responsibility was the relationship with customers
22  and you do that through customer contact centers.
23  What is a customer contact center?
24  A.  A customer contact center is -- you know,
25  primarily we have phone-based employees who take

Case: 19-30088    Doc# 859    Filed: 03/13/19    Entered: 03/13/19 15:20:07    Page 17 of
26

**Page 249**

1  (Proceedings concluded at 5:39 p.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 251**

1                    DEPOSITION ERRATA SHEET
2  Assignment No.:  J0625020
3  Case Caption:  United Energy Trading, LLC v. Pacific
                  Gas and Electric Company, et al.
4
5
6         DECLARATION UNDER PENALTY OF PERJURY
7         I declare under penalty of perjury that I
8  have read the entire transcript of my deposition
9  taken in the captioned matter or the same has been
10  read to me, and the same is true and accurate, save
11  and except for changes and/or corrections, if any,
12  as indicated by me on the DEPOSITION ERRATA SHEET
13  hereof, with the understanding that I offer these
14  changes as if still under oath.
15         Signed on the _____ day of _____,
16  20_____.
17
                  _____
18                    WILLIAM H. CHEN
19
20
21
22
23
24
25

**Page 250**

1              REPORTER'S CERTIFICATION
2
3         I, INGRID SKOROBOHATY, a Certified
4  Shorthand Reporter, hereby certify that the witness
5  in the foregoing deposition was by me duly sworn to
6  tell the truth, the whole truth and nothing but the
7  truth in the within-entitled cause;
8         That said deposition was taken down in
9  shorthand by me, a disinterested person, at the time
10  and place therein stated, and that the testimony of
11  the said witness was thereafter reduced to
12  typewriting, by computer, under my direction and
13  supervision, and that the witness has not requested
14  a review pursuant to Rule 30(e)(2).
15         I further certify that I am not of counsel
16  or attorney for either or any of the parties to the
17  said deposition, nor in any way interested in the
18  event of this cause, and that I am not related to
19  any of the parties thereto.
20
21         DATED:  August 29, 2017
22
23         _Skorobohaty_
24         _____
         INGRID SKOROBOHATY, C.S.R. NO. 11669
25

**Page 252**

1                    DEPOSITION ERRATA SHEET
2  Page No.___ Line No.___ Change to:_____
3  _____
4  Reason for change:_____
5  Page No.___ Line No.___ Change to:_____
6  _____
7  Reason for change:_____
8  Page No.___ Line No.___ Change to:_____
9  _____
10  Reason for change:_____
11  Page No.___ Line No.___ Change to:_____
12  _____
13  Reason for change:_____
14  Page No.___ Line No.___ Change to:_____
15  _____
16  Reason for change:_____
17  Page No.___ Line No.___ Change to:_____
18  _____
19  Reason for change:_____
20  Page No.___ Line No.___ Change to:_____
21  _____
22  Reason for change:_____
23
24  SIGNATURE:_____ DATE:_____
25                  WILLIAM H. CHEN

# EXHIBIT 3

## Page 1

```
 1            UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3             SAN FRANCISCO DIVISION
 4
   UNITED ENERGY TRADING, LLC,
 5
           Plaintiff,
 6                              Case No.
                                3:15-CV-2383-RS
 7     v.
 8 PACIFIC GAS AND ELECTRIC COMPANY,
   a California corporation; ALBERT
 9 TORRES, an individual; BILL CHEN,
   an individual; TANISHA ROBINSON,
10 an individual,
11          Defendants.
   _____
12
13     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14         VIDEOTAPED DEPOSITION OF
15          TANISHA ROBINSON-BROWN
16            August 16, 2017
17              9:03 A.M.
18
19       50 California Street, Suite 2800
20          San Francisco, California
21
22
23
24 REPORTED BY:  INGRID SKOROBOHATY, CSR NO. 11669
25          Job No. J0625018
```

## Page 2

```
 1 APPEARANCES:
 2
 3 For the Plaintiff:
 4      HOLLAND & KNIGHT
        BY:   LEAH CAPRITTA, ATTORNEY AT LAW
 5      1801 California Street, Suite 5000
        Denver, CO 80202
 6      303.974.6646
        leah.capritta@hklaw.com
 7
 8
   For the Defendants and the Witness:
 9
        STEPTOE & JOHNSON LLP
10      BY:   LAURIE EDELSTEIN, ATTORNEY AT LAW
        1891 Page Mill Road, Suite 200
11      Palo Alto, CA 94304
        650.687.9570
12      ledelstein@steptoe.com
13
14
15 Also Present:
16      CUTLER ANDRUS, Videographer
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1            INDEX OF EXAMINATION
 2
 3 WITNESS:  TANISHA ROBINSON-BROWN
 4 EXAMINATION                          PAGE
 5    By Ms. Capritta                      8
 6
 7
 8            --oOo--
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 4

```
 1            INDEX OF EXHIBITS
                                         PAGE
 2
   Exhibit 176 - Gas Rule No. 23          48
 3
   Exhibit 177 - Printout of e-mail       52
 4      correspondence with
        attachments
 5
   Exhibit 178 - Printout of e-mail       62
 6      correspondence
 7 Exhibit 179 - Printout of e-mail       70
        correspondence
 8
   Exhibit 180 - Printout of e-mail       73
 9      correspondence
10 Exhibit 181 - Printout of e-mail       74
        correspondence
11
   Exhibit 182 - Printout of e-mail       75
12      correspondence
13 Exhibit 183 - Printout of e-mail       81
        correspondence
14
   Exhibit 184 - Printout of e-mail       83
15      correspondence
16 Exhibit 185 - Printout of e-mail       85
        correspondence
17
   Exhibit 186 - Printout of e-mail       94
18      correspondence
19 Exhibit 187 - Printout of e-mail       98
        correspondence
20
   Exhibit 188 - Printout of e-mail      100
21      correspondence
22 Exhibit 189 - Printout of e-mail      101
        correspondence with
23      attachments
24 Exhibit 190 - Printout of e-mail      115
        correspondence
25
```

Case: 19-30088   Doc# 859   Filed: 03/13/19   Entered: 03/13/19 15:20:07   Page 20 of 26

Page 5

1          INDEX OF EXHIBITS (Continued)
                                                    PAGE
2
      Exhibit 191 - Printout of e-mail            120
3                   correspondence
4     Exhibit 192 - Printout of e-mail            121
                    correspondence
5
      Exhibit 193 - Printout of e-mail            125
6                   correspondence
7     Exhibit 194 - Printout of e-mail            128
                    correspondence
8
      Exhibit 195 - Printout of e-mail            131
9                   correspondence
10    Exhibit 196 - Printout of e-mail            142
                    correspondence with
11                  attachments
12    Exhibit 197 - Printout of e-mail            152
                    correspondence with
13                  attachments
14    Exhibit 198 - Printout of e-mail            155
                    correspondence
15
      Exhibit 199 - Printout of e-mail            162
16                  correspondence
17    Exhibit 200 - Printout of e-mail            168
                    correspondence with
18                  attachments
19    Exhibit 201 - Printout of e-mail            173
                    correspondence
20
      Exhibit 202 - Printout of e-mail            179
21                  correspondence
22    Exhibit 203 - Printout of e-mail            188
                    correspondence with
23                  attachments
24    Exhibit 204 - Printout of e-mail            191
                    correspondence
25

Page 6

1          INDEX OF EXHIBITS (Continued)
                                                    PAGE
2
      Exhibit 205 - Printout of e-mail            194
3                   correspondence
4     Exhibit 206 - Printout of e-mail            195
                    correspondence with
5                   attachments
6     Exhibit 207 - Printout of e-mail            220
                    correspondence with
7                   attachments
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 7

1          SAN FRANCISCO, CALIFORNIA
2      WEDNESDAY, AUGUST 16, 2017, 9:03 A.M.
3
4          THE VIDEOGRAPHER:  This begins Video No. 1
5    in the deposition of Tanisha Robinson-Brown in the
6    matter of United Energy Trading versus Pacific Gas &
7    Electric Company in the United States District Court
8    for the Northern District of California, the case
9    number of which is 3:15-CV-2383.
10         Today's date is August 16th, 2017, and the
11   time on the video monitor is 9:03 a.m.
12         We are located at 50 California Street in
13   San Francisco, California.
14         The court reporter producing the official
15   transcript of today's testimony is Ingrid
16   Skorobohaty of Esquire Deposition Solutions.
17         The videographer is Cutler Andrus of
18   Esquire Deposition Solutions.
19         Will counsel please identify yourselves
20   and state whom you represent.
21         MS. CAPRITTA:  This is Leah Capritta of
22   Holland & Knight, representing the plaintiff, United
23   Energy Trading, LLC.
24         MS. EDELSTEIN:  Laurie Edelstein from
25   Steptoe & Johnson representing the Defendant Pacific

Page 8

1    Gas & Electric Company and the individual Defendants
2    Albert Torres, William Chen, and Tanisha Robinson.
3          THE VIDEOGRAPHER:  Will the court reporter
4    please swear in the witness.
5
6          TANISHA ROBINSON-BROWN,
7    having been first duly sworn, testified as follows:
8
9               EXAMINATION
10         MS. CAPRITTA:  Good morning, Ms. Robinson.
11         THE WITNESS:  Good morning.
12   BY MS. CAPRITTA:
13     Q.  I think you just heard that my name is
14   Leah Capritta and I represent the plaintiff in this
15   matter and I think you and I met --
16     A.  Yes.
17     Q.  -- maybe about a year or so --
18     A.  Mm-hmm.
19     Q.  -- ago.
20         So thank you for coming to appear today.
21         Would you please formally state your name
22   for the record?
23     A.  Tanisha Robinson-Brown.
24     Q.  And do you prefer "Ms. Brown" or
25   "Ms. Robinson-Brown"?

Case: 19-30088    Doc# 859    Filed: 03/13/19    Entered: 03/13/19 15:20:07    Page 21 of
                                      26

Page 9

1    A.  "Ms. Brown" is fine.
2    Q.  Okay.
3        And where do you live, Ms. Brown?
4    A.  I live in Suisun City, California.
5        Would you like the spelling?
6    Q.  Like Sin City, California?
7    A.  No.  Suisun.
8    Q.  Suisun.  Okay.
9    A.  It's S-U-I-S-U-N City.
10   Q.  Okay.
11       And where do you work?
12   A.  I work for Pacific Gas & Electric Company.
13   Q.  And if I refer to Pacific Gas & Electric
14   Company as "PG&E," will you know what I'm --
15   A.  Yes.
16   Q.  -- who I'm talking about?
17       So I usually start off depositions just by
18   giving the deponent some guidelines.
19   A.  Okay.
20   Q.  The first guideline is that -- well, first
21   of all, we should please have care that we don't
22   talk over each other.  If you would just wait until
23   I finish my question, maybe even give yourself a
24   couple of seconds to think about the question,
25   before giving an answer, that'll not only give the

Page 10

1    court reporter a chance to take down everything
2    that's said, but it'll also give your counsel a
3    chance to object just in case she needs to.
4        If she does object, please go ahead and
5    answer my question unless she gives you an
6    opportunity -- unless she instructs you not to do
7    so.  She makes objections -- and that's part of her
8    job -- in order to preserve an objection for trial.
9        Okay?
10   A.  (Nods head.)
11   Q.  The second thing that I'm going to ask you
12   to do is to give me oral answers today.  If you nod
13   your head or shake your head or even if you say
14   "uh-huh" or "uh-uh," that kind of thing, granted we
15   have a videographer here, taking that down, but the
16   real record is the court reporter, and it's going to
17   be hard for her to transcribe if you give me
18   those --
19   A.  Gestures.
20   Q.  -- non-oral answers.
21       Yeah.
22       And finally, you know, we can take a break
23   any time you like.
24   A.  Okay.
25   Q.  And I will try to remember to take one

Page 11

1    about once an hour.  If you do want a break that's
2    not, you know, one of our scheduled breaks, you --
3    please just ask me, and we can go ahead and take a
4    break.  I will ask, though, that you answer any
5    question that I have posed before we take our break,
6    okay?
7    A.  Okay.
8    Q.  And so you testified just now that you
9    work for Pacific Gas & Electric.  For how long have
10   you worked for PG&E?
11   A.  22 years.
12   Q.  And what is your current position?
13   A.  I currently supervise the gas billing
14   solutions team, which also includes EDI support team
15   and ESP support team.
16   Q.  Approximately how many people work under
17   you?
18   A.  Ten.
19   Q.  How long have you held this position?
20   A.  I've been supervising this team for six
21   years.
22   Q.  So since about 2011?
23   A.  Yes.
24   Q.  What did you do before you were the
25   supervisor for the gas billing solutions team?

Page 12

1    A.  Before supervising the gas billing
2    solutions team I supervised NEM billing team -- net
3    energy metering.
4    Q.  The net energy --
5    A.  Metering.
6    Q.  Metering.
7        And how long were you the supervisor for
8    the net energy metering team?
9    A.  Approximately for two years, two to three
10   years.
11   Q.  Since you've been at PG&E, have you always
12   worked in some capacity with metering or with
13   billing?
14   A.  No, not the entire time.
15   Q.  Okay.
16       How long have you worked sort of in that
17   general area?
18   A.  I don't work with metering at all, but
19   billing.
20   Q.  Okay.
21   A.  I worked dealing with billing for the last
22   17 years.
23   Q.  So nearly your entire career at PG&E?
24   A.  Yes.
25   Q.  So you testified you were the supervisor

Case: 19-30088   Doc# 859   Filed: 03/13/19   Entered: 03/13/19 15:20:07   Page 22 of
26

Page 237

1       MS. EDELSTEIN:  Again, are you asking in
2   the context of this document?
3       THE WITNESS:  In the context of billing, I
4   have seen this, but I can't say what it -- the FT
5   stands for.
6   BY MS. CAPRITTA:
7   Q.   How about ADJ, underscore, type DESCR?
8   A.   In the context of billing, it's an
9   adjustment type.
10  Q.   And so down -- if you look down,
11  there's -- on that first page, it says "ERRA bill
12  credit."  Do you know what that means?
13  A.   No.
14  Q.   And it says ER -- ERES.  Do you know what
15  that means?
16  A.   Electric residential.
17  Q.   So there's some type of residential
18  electricity bill credit?
19      MS. EDELSTEIN:  Objection to form.
20      Ms. Robinson testified that she's not
21  familiar with this document.
22      THE WITNESS:  I don't know.
23  BY MS. CAPRITTA:
24  Q.   And then CUR, underscore, AMT.
25      MS. EDELSTEIN:  Is there a question?

Page 238

1   BY MS. CAPRITTA:
2   Q.   Do you know what that means?
3       MS. EDELSTEIN:  In the context of this
4   document?
5       THE WITNESS:  In the context of billing,
6   it means current amount.
7   BY MS. CAPRITTA:
8   Q.   And with regard to SA balance, what does
9   that mean?
10  A.   The balance that is owed at the SA level.
11      MS. CAPRITTA:  Okay.  All right.  I have
12  no more questions for you, Ms. Robinson.  Thank you
13  for your time today.
14      THE WITNESS:  Thank you.
15      MS. EDELSTEIN:  Before we go off the
16  record, if we can, I'd like to request the
17  opportunity to review Ms. Robinson's -- actually,
18  request on her behalf the opportunity to review the
19  transcript when it's available.  And also, given
20  that exhibits have been marked highly confidential,
21  attorneys' eyes only, I'd request that the
22  transcript be designated as such as well.
23      THE VIDEOGRAPHER:  This concludes today's
24  proceeding in the deposition of Tanisha
25  Robinson-Brown.  The number of videos used is five.

Page 239

1   We are now going off the record.  The time is 5:20.
2       (Proceedings concluded at 5:20 p.m.)

Page 240

1                    REPORTER'S CERTIFICATION
2
3           I, INGRID SKOROBOHATY, a Certified
4   Shorthand Reporter, hereby certify that the witness
5   in the foregoing deposition was by me duly sworn to
6   tell the truth, the whole truth and nothing but the
7   truth in the within-entitled cause;
8           That said deposition was taken down in
9   shorthand by me, a disinterested person, at the time
10  and place therein stated, and that the testimony of
11  the said witness was thereafter reduced to
12  typewriting, by computer, under my direction and
13  supervision, and that the witness has requested a
14  review pursuant to Rule 30(e)(2).
15          I further certify that I am not of counsel
16  or attorney for either or any of the parties to the
17  said deposition, nor in any way interested in the
18  event of this cause, and that I am not related to
19  any of the parties thereto.
20
21          DATED:  August 24, 2017
22
23          _Skorobohaty_
24          INGRID SKOROBOHATY, C.S.R. NO. 11669
25

## Page 241

```
1              DEPOSITION ERRATA SHEET

2    Assignment No.:  J0625018

3    Case Caption:  United Energy Trading, LLC v. Pacific
                     Gas and Electric Company, et al.
4

5

6         DECLARATION UNDER PENALTY OF PERJURY

7           I declare under penalty of perjury that I

8    have read the entire transcript of my deposition

9    taken in the captioned matter or the same has been

10   read to me, and the same is true and accurate, save

11   and except for changes and/or corrections, if any,

12   as indicated by me on the DEPOSITION ERRATA SHEET

13   hereof, with the understanding that I offer these

14   changes as if still under oath.

15          Signed on the _____ day of _____,

16   20_____.

17

                     _____
18                   TANISHA ROBINSON-BROWN

19

20

21

22

23

24

25
```

## Page 242

```
1              DEPOSITION ERRATA SHEET

2    Page No.___ Line No.___ Change to:_____

3    _____

4    Reason for change:_____

5    Page No.___ Line No.___ Change to:_____

6    _____

7    Reason for change:_____

8    Page No.___ Line No.___ Change to:_____

9    _____

10   Reason for change:_____

11   Page No.___ Line No.___ Change to:_____

12   _____

13   Reason for change:_____

14   Page No.___ Line No.___ Change to:_____

15   _____

16   Reason for change:_____

17   Page No.___ Line No.___ Change to:_____

18   _____

19   Reason for change:_____

20   Page No.___ Line No.___ Change to:_____

21   _____

22   Reason for change:_____

23

24   SIGNATURE:_____ DATE:_____

25          TANISHA ROBINSON-BROWN
```

## Page 243

```
1              DEPOSITION ERRATA SHEET

2    Page No.___ Line No.___ Change to:_____

3    _____

4    Reason for change:_____

5    Page No.___ Line No.___ Change to:_____

6    _____

7    Reason for change:_____

8    Page No.___ Line No.___ Change to:_____

9    _____

10   Reason for change:_____

11   Page No.___ Line No.___ Change to:_____

12   _____

13   Reason for change:_____

14   Page No.___ Line No.___ Change to:_____

15   _____

16   Reason for change:_____

17   Page No.___ Line No.___ Change to:_____

18   _____

19   Reason for change:_____

20   Page No.___ Line No.___ Change to:_____

21   _____

22   Reason for change:_____

23

24   SIGNATURE:_____ DATE:_____

25          TANISHA ROBINSON-BROWN
```

# EXHIBIT 4

1
2
3
4                      UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6

7    TIGER NATURAL GAS, INC.,                Case No.  16-cv-06711-JSW

8                   Plaintiff,
                                             **ORDER STAYING CASE AND**
9           v.                               **REQUIRING JOINT STATUS**
                                             **REPORTS**
10   PACIFIC GAS AND ELECTRIC
     COMPANY, et al.,                        Re: Dkt. No. 122

11                  Defendants.

12

13          On February 4, 2019, Defendant filed a Notice of Bankruptcy.  Pursuant to 11 U.S.C.

14   section 362(a), the Court HEREBY STAYS this matter.  The parties shall file a joint status report

15   every 180 days advising the Court of the status of the bankruptcy proceedings.  The parties' first

16   report shall be due on August 26, 2019.  The Court also reserves the right to administratively close

17   this case pending resolution of the bankruptcy proceedings.

18          **IT IS SO ORDERED.**

19   Dated: February 27, 2019

20          _____

21   JEFFREY S. WHITE
     United States District Judge

22
23
24
25
26
27
28

United States District Court
Northern District of California