WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>   - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                    **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) FOR AUTHORITY TO EMPLOY AND RETAIN AP SERVICES, LLC TO PROVIDE A CHIEF RESTRUCTURING OFFICER, DEPUTY CHIEF RESTRUCTURING OFFICER, AND ADDITIONAL PERSONNEL FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**<br>Date:  April 9, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA 94102 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Application (the "**Application**"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for authority to employ and retain AP Services, LLC ("**APS**"), *nunc pro tunc* to the Petition Date (as defined below), to provide (i) James Mesterharm to serve as the Debtors' Chief Restructuring Officer ("**CRO**"), (ii) John Boken to serve as the Debtors' Deputy Chief Restructuring Officer ("**Deputy CRO**"), and (iii) additional personnel in accordance with the terms and conditions set forth in that certain engagement letter by and among the Debtors and APS, dated as of January 25, 2019 (the "**CRO Engagement Letter**"), a copy of which is attached hereto as **Exhibit B-1**.

In support of the Application, the Debtors submit the Declaration of James Mesterharm (the "**Mesterharm Declaration**"), a Managing Director of AlixPartners LLP ("**AlixPartners**") and authorized representative of APS, filed concurrently herewith. A proposed form of order approving the relief requested in the Application is attached hereto as **Exhibit A** (the "**Proposed Order**").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. JURISDICTION**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**II. BACKGROUND**

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

**III. APS'S QUALIFICATIONS**

The Debtors seek to retain APS because of APS's wealth of experience and reputation for providing restructuring services in large and complex chapter 11 cases. Prior to the Petition Date, AlixPartners, LLC, an affiliate of APS, was engaged to provide financial advisory and other restructuring related services to the Debtors as set forth in that certain engagement letter dated December 4, 2018 (as modified and amended by that certain First Addendum dated January 7, 2019, the "**Financial Advisor**

**Engagement Letter**"), a copy of which is attached hereto as **Exhibit B-2**. The Financial Advisor Engagement Letter was superseded by the CRO Engagement Letter. As a result of the extensive pre-petition services provided to the Debtors, APS has acquired significant knowledge of the Debtors and their businesses, and familiarity with the Debtors' financial affairs, debt structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, APS's professionals have worked closely with the Debtors' management and their advisors. Accordingly, APS has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient management and other services in these Chapter 11 Cases. The Debtors submit and request that the Court find that the designation of Mr. Mesterharm as CRO and Mr. Boken as Deputy CRO and the retention of APS on the terms and conditions set forth herein are necessary and appropriate, are in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted.

As set forth in the Mesterharm Declaration, APS has a wealth of experience in providing interim management services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. Specifically, since its inception in 1981, APS, AlixPartners, their subsidiaries and affiliates, and their predecessor entities have provided restructuring or crisis management services in numerous large cases. *See, e.g.*, *In re Heritage Home Group, LLC, et al*, Case No. 18-11736 (KG) (Bankr.D. Del. Jul. 29, 2018); *In re: Video Equipment Rental, et al.,* Case No. 18-10834 (KG) (Bankr. D. Del. May 22, 2018); *In re HCR Manorcare, Inc., et al,* Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 16, 2018); *In re Velocity Holding Company, et al.,* Case No. 17-12442 (KJC) (Bankr. D. Del. Dec. 12, 2017); *In re Appvion, Inc., et al.,* Case No. 17-12082 (KJC) (Bankr. D. Del. Oct. 30, 2017); *In re The Gymboree Corporation, et al*., Case No. 17-32986 (KLP) (Bank. E.D. Va. July 26, 2017); *In re Westinghouse Electric Company, LLC, et al.*, Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. June 6, 2017); *In re Nuverra Environmental Solutions, Inc., et al.*, Case No. 17-10949 (KJC) (Bankr. D. Del. June 5, 2017); *In re BCBG Max Azria Global Holdings, et al.,* Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Eastern Outfitters, LLC, et al*., Case No. 17-10243 (LSS) (Bankr. D. Del. Mar. 9, 2017); *In re Paragon Offshore PLC*, Case No. 16-10386 (CSS) (Bankr. D. Del. Apr. 5, 2016); *In re Linn Energy*, Case No. 16-60040 (DRJ) (Bankr. S.D. Tex. June 27, 2016); *In re Walter Energy, Inc.*, Case No. 15-02741 (TOM) (Bankr. N.D. Ala. Sept. 8, 2015); *In re*

*Nautilus Holdings, Ltd.*, Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. July 14, 2014); *In re Eastman Kodak Co.,* Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 28, 2012); *In re Silicon Graphics, Inc.*, Case No. 09-11701 (MG) (Bankr. S.D.N.Y. May 31, 2009); *In re General Growth Prop. Inc.*, Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. May 26, 2009); *In re Zenith Elecs. Corp.*, Case No. 99-2911 (MFW) (Bankr. D. Del. Aug. 25, 1999); *In re Parmalat USA Corp.*, Case No. 04-11139 (RDD) (Bankr. S.D.N.Y. June 25, 2004); *In re Safety-Kleen Corp.,* Case No. 00-2303 (PJW) (Bankr. D. Del. Oct. 15, 2001).

Mr. Mesterharm is a Managing Director at AlixPartners and the co-head of its Turnaround & Restructuring Services unit in the Americas. He has worked as a turnaround consultant for over twenty-five years, including experience in the energy sector. Mr. Mesterharm has substantial knowledge and experience in senior management positions with, or as restructuring advisor to, distressed companies and in assisting distressed companies with stabilizing their financial condition, analyzing their operations, and developing an appropriate business plan to accomplish the necessary restructuring of their operations and finances. Specifically, Mr. Mesterharm has advised or served as a senior executive for, among others, American Tire Distributors, Inc., Pacific Drilling, S.A., CRO of Gymboree Group Inc., Zenith Electronics Corp., CRO of Parmalat USA Corp., Silicon Graphics, Inc., Safety-Kleen Corp, CRO of Eastman Kodak Company, CRO of Nautilus Holdings Ltd., CRO of Hilex Poly Co., Chief Operating Officer ("**COO**") of Tekni-Plex Inc., General Growth Properties, Inc., Linn Energy, LLC, Paragon Offshore Limited, and Walter Energy, Inc.

Mr. Boken, is also a Managing Director at AlixPartners, and has twenty-eight years of corporate restructuring experience. Mr. Boken has led over 75 restructuring projects in a wide variety of industries, including energy, homebuilding, industrial construction, manufacturing, retail, health care and agriculture. Some of Mr. Boken's restructuring and reorganization assignments for chapter 11 debtors include: CRO of Flying J, Inc., President and COO of NRG Energy, Inc., CRO and CEO of TOUSA, Inc., CRO of Collins & Aikman Corporation, and CRO of Homer City Generation, L.P. Furthermore, Mr. Boken has advised or served as senior executive in restructuring situations for, among others, SolarWorld Americas, Inc., Entegra Power Group, LLC, TIC, Fleetwood Enterprises, and Southern California Edison Company. Accordingly, Mr. Boken has developed significant relevant experience and expertise that will assist him in providing effective and efficient services in these Chapter 11 Cases.

If the Application is approved, the additional APS personnel that will work on this matter (the "**APS Personnel**") all have expertise in providing advice and assistance to stakeholders in chapter 11 cases. Such personnel will work closely with the Debtors' management and other professionals throughout the reorganization process. By virtue of the expertise of its restructuring personnel, APS is uniquely well qualified to provide services to and represent the Debtors' interests in these Chapter 11 Cases.

**IV. SCOPE OF SERVICES**

Prior to the Petition Date, the Debtors and APS entered into the CRO Engagement Letter, which governs the relationship between them. The terms and conditions of the CRO Engagement Letter were negotiated between the Debtors and APS and reflect the parties' mutual agreement as to the substantial efforts that will be required under this engagement.

Generally, the CRO and Deputy CRO will lead the restructuring efforts as directed by the Debtors' senior management team and the Boards of Directors of PG&E Corp. and the Utility and shall be authorized to make certain decisions with respect to the restructuring of the Debtors. These decisions may be made in a manner that Mr. Mesterharm and Mr. Boken deem necessary or appropriate and in a manner consistent with the business judgment rule, as applied to officers, applicable state law, and the United States Bankruptcy Code. Such decisions, however, will remain subject to appropriate governance by the Boards of both PG&E Corp. and the Utility, as applicable, in accordance with the Debtors' governing documents and applicable state law. The CRO, Deputy CRO and APS Personnel shall perform activities and services to assist the Debtors throughout the chapter 11 process. Tasks may include the following, without limitation:

i. Restructuring
   a. Work with the Debtors and their team to further identify and implement both short-term and long-term liquidity generating and cost reduction initiatives.

   b. Assist the Debtors in connection with the development of their business plan, and such other related forecasts as may be required in connection with negotiations or by the Debtors for other corporate purposes.

   c. Assist the Debtors' management and their professionals specifically assigned to sourcing, negotiating and implementing any financing,

including DIP and exit financing facilities, in conjunction with the plan of reorganization and the overall restructuring.

    d. Assist the Debtors' management in the design and implementation of a restructuring strategy designed to maximize enterprise value, taking into account the unique interests of all constituencies.

    e. Work with the Debtors' senior management to negotiate and implement restructuring initiatives and evaluate strategic alternatives.

  ii. Communications with Outsiders

    a. Assist in negotiations with stakeholders and their representatives.

    b. Assist in negotiations with potential acquirers of the Debtors' assets.

    c. Assist in communication and/or negotiation with outside constituents including the lenders, committees, stakeholders and their advisors.

  iii. Bankruptcy Case Management

    a. Assist in managing the "working group" professionals who are assisting the Debtors in the reorganization process or who are working for the Debtors' various stakeholders to improve coordination of their effort and individual work product to be consistent with the Debtors' overall restructuring goals.

    b. Assist in obtaining and presenting information required by parties in interest in the Debtors' chapter 11 process, including official committees and the Court itself.

    c. Assist the Debtors in other business and financial aspects of the Chapter 11 Cases, including, but not limited to, development of a disclosure statement and plan of reorganization.

    d. Assist with the preparation of the Debtors' statements of affairs, schedules of assets and liabilities, and other regular reports required in the Chapter 11 Cases as well as providing assistance in such areas as testimony before the Court on matters that are within APS's areas of expertise.

    e. Assist, as requested, in managing any litigation that may be brought against the Debtors in the Court.

    f. Assist as requested in analyzing preferences and other avoidance actions.

    g. Manage the claims reconciliation processes.

    h. Assist the Debtors with electronic data collection.

  iv. Finance and Cash Management

Case: 19-30088  Doc# 867  Filed: 03/13/19  Entered: 03/13/19 18:54:25  Page 7 of 14

a. Assist the Debtors and their management in developing and maintaining a short-term cash flow forecasting tool and related methodologies and to assist with planning for alternatives as requested by the Debtors.

b. Assist the Debtors in developing an actual to forecast variance reporting mechanism including written explanations of key differences.

v. Miscellaneous
   a. Assist with such other matters as may be requested that fall within APS's expertise and that are mutually agreeable.

## V. PROFESSIONAL COMPENSATION

APS's decision to accept this engagement is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in **Schedule 1** of the CRO Engagement Letter (the "**Fee and Expense Structure**").

**Hourly Fees.** APS's current standard hourly rates for 2019, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $990 - $1,165 |
| Director | $775 - $945 |
| Senior Vice President | $615 - $725 |
| Vice President | $440 - $600 |
| Consultant | $160 - $435 |
| Paraprofessional | $285 - $305 |

In the normal course of business, APS may periodically adjust its billing rates. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

**Success Fees.** In these Chapter 11 Cases, in addition to hourly fees, APS will be compensated for its efforts by a contingent incentive compensation (the "**Success Fee**"). Subject to Court approval, the Debtors will pay APS the Success Fee in the amount of $8,000,000 upon the occurrence of a "Transaction." For purposes of the CRO Engagement Letter, a "Transaction" shall mean (i) completion of a restructuring through confirmation of a chapter 11 plan of reorganization, (ii) the consummation of any material recapitalization or debt restructuring of the Debtors, or (iii) consummation of one or more

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

transactions, in any form, that effectively transfers a significant portion of the business as a going concern to another entity or entities or that results in a change in structure of the Board Of Directors of PG&E Corp.

Notwithstanding the foregoing, should a Transaction first occur after 18 months from the Petition Date (the "**Target Date**"), the Success Fee shall be reduced by 10% of the monthly fees earned for each whole calendar month between the Target Date and the actual date of the Transaction. However, after applying the reduction, the Success Fee will in no event be less than $4,000,000. The Success Fee shall be due and payable immediately upon the occurrence of a Transaction. APS understands and agrees that the Success Fee is not being pre-approved and remains subject to Court approval. While APS is not seeking pre-approval of the Success Fee, APS wishes to advise the Court at this time that the Success Fee was negotiated as part of the overall agreement for compensation in connection with the services to be provided to the Debtors in these Chapter 11 Cases. The Debtors understand and acknowledge that the Success Fee is an integral part of APS's compensation for the engagement and that the structure and amount of the Success Fee is reasonable.

**Expense Reimbursement.** In addition to compensation for professional services rendered by APS Personnel, APS will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 Cases, including transportation costs, lodging, and meals.

**Retainer**. Prior to the Petition Date, APS and its affiliates received an unapplied advance payment from the Debtors in the amount of $750,000.00 (the "**Retainer**"). The Retainer was further supplemented by $1,750,000.00 for an aggregate Retainer amount of $2,500,000.00 as set forth in the Financial Advisor Engagement Letter. According to APS's books and records, during the 90-day period prior to the Petition Date, the Debtors paid APS and its affiliates $8,978,334.53 in the aggregate for professional services performed and expenses incurred, including the Retainer.

The Debtors and APS have agreed that any portion of the Retainer not used to compensate APS and its affiliates for its prepetition services and reasonable and documented out-of-pocket expenses will be held, applied against APS's post-petition invoices, and will not be placed in a separate account.

Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to the Petition Date, APS may have incurred, but not billed, fees and

reimbursable expenses that relate to the prepetition period. Approval is sought from this Court for APS to apply the Retainer to these amounts. Upon entry of an Order approving the relief requested herein, the Debtors will not owe APS any sums for prepetition services.

The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by APS and other comparable firms that render similar services under similar circumstances. The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate APS fairly for its work and to cover fixed and routine overhead expenses.

To the extent APS uses the services of independent contractors (the "**Contractors**") in these Chapter 11 Cases, APS shall (a) pass through the cost of such Contractors to the Debtors at the same rate that APS pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for APS; and (d) file with the Court a schedule of the results of such conflict checks.

To the extent APS requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

**Compensation and Staffing Reports.** APS will submit monthly invoices to the Debtors, and the Debtors request authority to pay, in the ordinary-course of business, all reasonable and undisputed amounts invoiced by APS for fees and expenses incurred during the Chapter 11 Cases. Upon approval of the relief requested, APS will not be employed by the Debtors as a professional under section 327 of the Bankruptcy Code, and will not file or submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. APS will, however, file with the Court, and provide reports of compensation earned and expenses incurred on a monthly basis ("**Compensation Reports**") to the Office of the United States Trustee for Region 17 (the "**U.S. Trustee**") and counsel to any statutory committees appointed in these Chapter 11 Cases (the "**Notice Parties**"). APS will file and submit Compensation Reports within 30 days of the end of each monthly period. Such reports shall summarize the services provided and identify the compensation earned and expenses incurred by APS Personnel. The Notice Parties shall have 21 days after the date each Compensation Report is served upon them to object. Such compensation and expenses will be subject to Court review in the event an objection is filed.

APS may from time to time add or remove staff, and APS will file monthly staffing reports that

will reflect the APS Personnel that provided services during the prior month ("**Staffing Reports**"). Staffing Reports will include the names of all full- and part-time APS Personnel involved in these Chapter 11 Cases and each individual's hourly billing rate. APS will file and submit Staffing Reports within 30 days of the end of each monthly period. The Notice Parties shall have 21 days after the date each Staffing Report is served upon them to object. The Staffing Reports and APS's staffing decisions will be subject to review by the Court in the event an objection is filed.

**Indemnification.** The Debtors and APS acknowledge that, for the duration of these Chapter 11 Cases, there shall be no indemnification of APS, its affiliates, or the APS Personnel. Debtors shall indemnify Mr. Mesterharm and Mr. Boken in their capacity as corporate officers on the same terms provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy.

## VI. EFFORTS TO AVOID DUPLICATION OF SERVICES

The services provided by APS will complement, and not duplicate, the services to be rendered by other professionals retained in these Chapter 11 Cases.

## VII. APS'S DISINTERESTEDNESS

To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Mesterharm Declaration: (a) APS has no connection with the Debtors, their creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in by the U.S. Trustee; and (b) does not hold any interest adverse to the Debtors' estates.

Although the Debtors respectfully submit that the retention of APS is not governed by section 327 of the Bankruptcy Code, the Mesterharm Declaration discloses certain connections with creditors, equity security holders, and other parties-in-interest in these Chapter 11 Cases. APS does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases. Thereby, the Debtors submit that APS is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of APS's retention are discovered or arise, Debtors submit that APS will use reasonable efforts to file promptly a supplemental declaration.

## VIII. BASIS FOR THE RELIEF REQUESTED

The Debtors seek to employ and retain APS, appoint Mr. Mesterharm to serve as CRO, and appoint Mr. Boken to serve as Deputy CRO, pursuant to section 363(b) and 105(a) of the Bankruptcy Code, *nunc pro tunc* to the Petition Date. Under applicable case law, if the Debtors' proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable exercise of the debtor's business judgment, such use should be approved. *See e.g. Walter v. Sunwest Bank* (*In re Walter*), 83 B.R. 14, 19-20 (9th Cir. BAP 1988) (citing *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *United Retired Pilots Benefit Protection Ass'n v. United Airlines, Inc. (In re UAL Corp.)*, 443 F.3d 565, 571 (7th Cir. 2006); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").

The decision to employ and retain APS, appoint Mr. Mesterharm to serve as the Debtors' CRO, and appoint Mr. Boken to serve as the Debtors' Deputy CRO constitute a sound exercise of the Debtors' business judgment. As set forth above, Mr. Mesterharm, and Mr. Boken have extensive experience as a senior officers and advisors for many companies undertaking restructuring efforts, and the APS Personnel are well qualified and equipped to assist. APS, Mr. Mesterharm, and Mr. Boken will provide services that are in the best interests of all parties in interest in these Chapter 11 Cases and, therefore, the Application should be approved.

## IX. NOTICE

Notice of this Application will be provided to (i) the Office of the United States Trustee for

Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 13, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Jane Kim
      Jane Kim

*Proposed Attorneys for Debtors
and Debtors in Possession*