1  WEIL, GOTSHAL & MANGES LLP
   Stephen Karotkin (*pro hac vice*)
2  (stephen.karotkin@weil.com)
   Jessica Liou (*pro hac vice*)
3  (jessica.liou@weil.com)
   Matthew Goren (*pro hac vice*)
4  (matthew.goren@weil.com)
   767 Fifth Avenue
5  New York, NY 10153-0119
   Tel: 212 310 8000
6  Fax: 212 310 8007

7  KELLER & BENVENUTTI LLP
   Tobias S. Keller (#151445)
8  (tkeller@kellerbenvenutti.com)
   Jane Kim (#298192)
9  (jkim@kellerbenvenutti.com)
   650 California Street, Suite 1900
10 San Francisco, CA 94108
   Tel: 415 496 6723
11 Fax: 650 636 9251

12 *Proposed Attorneys for Debtors*
   *and Debtors in Possession*
13
                    UNITED STATES BANKRUPTCY COURT
14
                    NORTHERN DISTRICT OF CALIFORNIA
15
                    SAN FRANCISCO DIVISION

16 | **In re:** | Bankruptcy Case |
17 | **PG&E CORPORATION,** | No. 19 -30088 (DM) |
18 | - and - | Chapter 11 |
19 | **PACIFIC GAS AND ELECTRIC COMPANY,** | (Lead Case) |
20 | | (Jointly Administered) |
21 | **Debtors.** | **DECLARATION OF TOBIAS S. KELLER IN SUPPORT OF APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY KELLER & BENVENUTTI LLP AS ATTORNEYS FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE** |
22 | ☐  Affects PG&E Corporation | |
23 | ☐  Affects Pacific Gas and Electric Company | |
24 | ☑  Affects both Debtors | |
25 | * *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |
26 | | Date:   April 9, 2019 |
27 | | Time:  9:30 a.m. (Pacific Time) |
   | | Place:  United States Bankruptcy Court Courtroom 17, 16th Floor |
28

I, Tobias S. Keller, hereby declare pursuant 28 U.S.C. § 1746:

1. I am a partner of the firm of Keller & Benvenutti LLP (the "Firm"), a law firm with offices at 650 California Street, Suite 1900, San Francisco, California 94108.

2. I submit this Declaration in connection with the Application submitted on the date hereof (the "Application")[1] of PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), for authority to employ and retain the Firm as their attorneys, effective as of January 29, 2019 (the "Petition Date"), at its normal hourly rate in effect from time to time and in accordance with its normal reimbursement policies, in compliance with section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), and to provide the disclosure required under Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Bankruptcy Local Rules for the U.S. District Court for the Northern District of California (the "Bankruptcy Local Rules"). Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon the Firm's completion of further review, or as additional information regarding parties in interest becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented or otherwise modified information.

3. The Firm's attorneys are admitted to practice before this Court and are qualified to represent the Debtors in these proceedings by reason of their ability, integrity, and professional experience. The Firm is a boutique law firm focused on bankruptcy and restructuring. The Firm's attorneys have served as debtor's counsel in a wide range of chapter 11 cases, involving most aspects of law that may arise in these Chapter 11 Cases. In addition to their work as debtor's counsel, the Firm's attorneys have played various roles in chapter 11 cases and have extensive chapter 11 experience both within this District and across the country.

///

---

[1] Capitalized terms used but not otherwise herein defined have the meanings ascribed to such terms in the Application.

1  The Firm's Connections with the Debtors

2      4.      The Firm has rendered restructuring-related legal services to the Debtors since May

3  2018.  Since that time, the Firm has advised the Debtors in connection with refinancing and

4  restructuring strategies, with an emphasis on local practices and precedent.  Most recently, the Firm

5  has provided the necessary services to enable the Debtors to commence the Chapter 11 Cases.  The

6  Firm, working together with Weil, Gotshal & Manges LLP ("Weil"), was responsible for the

7  preparation of the chapter 11 petitions, initial motions and applications relating to these Chapter 11

8  Cases and their commencement.

9      5.      Neither I, the Firm, nor any partner of, counsel to, or associate of the Firm represents

10  any entity other than the Debtors in connection with these Chapter 11 Cases.  In addition, except as set

11  forth herein, to the best of my knowledge, after due inquiry, neither I, the Firm, nor any partner of,

12  counsel to, or associate of the Firm represents any party in interest in these Chapter 11 Cases in matters

13  related to these Chapter 11 Cases.

14      6.      No Firm personnel or member of the household of any of the Firm's personnel holds

15  any claims against, stock of, or other interests in the Debtors.[2]  None of the foregoing individuals are

16  employed by the Debtors except through the Firm.

17      7.      The Firm received from the Debtors a document in excess of 200 pages including a

18  detailed list of the names of individuals or institutions (collectively, the "Interested Parties") in the

19  following categories, among others:

20      (a)      the Debtors;

21      (b)      the Debtors' directors and officers;

22      (c)      the Debtors' vendors and contractors through which the Debtors conduct their business

23          operations;

24      (d)      the Debtors' insurers and insurance brokers;

25

---

[2]      One or more of the firm's attorneys hold or may hold interests in publicly-available funds that
26  have small (less than 5% of such fund) holdings of stock of PG&E Corporation or debt of the Debtors.
Similarly, the Firm's attorneys may directly or indirectly have stock or debt ownership positions in
27  creditors of the Debtors.  Those attorneys have no control over such funds and the funds' interests are
*de minimis* relative to the fund size.
28

Case: 19-30088    Doc# 870    Filed: 03/13/19    Entered: 03/13/19 19:03:28    Page 3 of
10

(e)     the Debtors' secured creditors;

(f)     identified parties in litigation or arbitration with the Debtors and/or certain non-debtor affiliates;

(g)     the attorneys for the United States Trustee's Office for the Northern District of California in San Francisco; and

(h)     the bankruptcy judges for the Northern District of California.

8.     To check and clear potential conflicts of interest in these cases, as well as to identify all connections (as such term is used in Bankruptcy Rule 2014) to the Debtors, their creditors, other parties in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee, the Firm's lawyers each reviewed the list of Interested Parties to determine whether they have or had any relationships with the Interested Parties.

The Firm's Connections with Parties in Interest in Matters Unrelated to These Chapter 11 Cases

9.     I reviewed the current and former clients of the Firm, and the connections between those entities and the Debtors.  After such review, I determined that the Firm does not hold or represent an interest that is adverse to the Debtors' estates and that the Firm is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, for the reasons discussed below.

10.     The Firm or its lawyers and legal staff previously represented, currently represents, or may, in the future, represent the entities (or their affiliates) described below, in matters unrelated to the Debtors.  The Firm has not represented, does not represent, and will not represent any Interested Parties other than the Debtors in matters directly related to the Debtors or these Chapter 11 Cases:

(a)     San Mateo County Tax Collector; San Mateo County.  The Firm currently represents the County of San Mateo in connection with the Chapter 11 cases of Verity Health System of California, Inc. and affiliated entities currently pending as Case No. 2:18-bk-20151 in the United States Bankruptcy Court for the Central District of California.

///

(b) <u>Prior Representations:  Jane Kim</u>.  Jane Kim, a partner of the Firm, previously represented the below-listed parties and/or certain of their affiliates at her prior firm, Cleary Gottlieb Steen & Hamilton LLP.  Such representations were unrelated to the Debtors.  The Firm does not currently represent, and has never represented, any of the below-listed parties.  In addition, it is possible that Ms. Kim may have worked on smaller engagements while at Cleary Gottlieb involving other Interested Parties.  No such representations were related to the Debtors.

> (i)  Bank of America, N.A.
>
> (ii)  Citibank, N.A.
>
> (iii)  Goldman Sachs Bank USA
>
> (iv)  Covanta Power Pacific, Inc.
>
> (v)  Morgan Stanley, Morgan Stanley Bank, Morgan Stanley Senior Funding, Morgan Stanley Capital Group, Inc.

(c) <u>Prior Representations:  Tobias Keller</u>.  I represented Morgan Stanley, Morgan Stanley Capital Group or one of their affiliates in certain matters when I was a partner at Jones Day during the period from 2006 to 2013.  None were related to the Debtors.  The Firm does not currently represent, and has never represented, these parties or their affiliates.

(d) <u>Prior Representations:  Tobias Keller and Peter Benvenutti.</u>  It is possible that my partner, Peter Benvenutti, or I may have worked on smaller engagements while at Jones Day involving other Interested Parties.  No such representations were related to the Debtors.

(e) <u>Prior Representation: Stacey Oborne</u>. Stacey Oborne, a paralegal formerly employed at the Firm, conducted a review of certain internal e-mails that related to the Butte wildfire while working for the law firm of Carlson Calladine & Peterson.  The materials that she reviewed may be related to matters that have given rise to claims or potential claims against the Debtors.  The Firm does not currently represent, and has never represented, any of the clients for whom Ms. Oborne did work at Carlson Calladine & Peterson.

1    (f)    Juniper Energy, LLC.  Juniper is a solar power company for which Keith McDaniels, an

2           attorney with the Firm, is a principal.  Juniper has a business relationship with Sonoma

3           Clean Power Authority, a creditor of the Debtors.

4    11.    Keith McDaniels, of counsel to the Firm, was a partner at Winston & Strawn LLP from

5    2005 to 2009 and an associate from 2003 to 2005, where at one time he was a colleague of the

6    Honorable Hannah L. Blumenstiel and the Honorable M. Elaine Hammond, current bankruptcy judges

7    in the Northern District of California.

8    12.    Other than as described in the foregoing, after diligent inquiry, I have ascertained no

9    connection, as such term is used in section 101(14)(C) of the Bankruptcy Code, as modified by section

10   1107(b) and Bankruptcy Rule 2014(a), between the Firm and (i) the U.S. Trustee or any person

11   employed by the U.S. Trustee, (ii) any attorneys, accountants, or financial consultants in these Chapter

12   11 Cases, or (iii) any investment bankers who represent or may represent the Debtors, claimants, or

13   other parties in interest in these Chapter 11 Cases, except as set forth herein.

14   13.    As part of its practice, the Firm appears in cases, proceedings, and transactions

15   involving many different attorneys, accountants, financial consultants, and investment bankers, some

16   of whom now, or may in the future, represent claimants and other parties in interest in these cases.

17   The Firm has not represented, and will not represent, any such parties in relation to the Debtors or

18   their Chapter 11 Cases.  The Firm does not have any relationship with any such attorneys, accountants,

19   financial consultants, or investment bankers that would be adverse to the Debtors or their estates.

20   14.    Despite the efforts described herein to identify and disclose the Firm's connections with

21   the parties in interest in these Chapter 11 Cases, and because the Debtors have numerous relationships,

22   the Firm is unable to state with certainty that every client relationship or other connection has been

23   disclosed.  If any new material, relevant facts, or relationships are discovered or arise, the Firm will

24   promptly file a supplemental disclosure with the Court.

25   15.    Based on the foregoing, insofar as I have been able to ascertain after diligent inquiry, I

26   believe the Firm does not hold or represent an interest adverse to the Debtors' estates in the matters

27

28

1  upon which the Firm is to be employed, and that the Firm is "disinterested" as such term is defined in

2  section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

3  <u>The Firm's Relationship with the Debtors (Ruel 2016 Disclosures)</u>

4  16. The Firm is not a creditor of the Debtors. During the ninety (90) day period prior to the

5  Petition Date, the Firm received payments and advances in the aggregate amount of $363,635.00 for

6  professional services performed and to be performed, and expenses incurred, including in connection

7  with the commencement and prosecution of these Chapter 11 Cases. An analysis of funds held by the

8  Firm during this period, with adjustments for invoices issued and additional amounts provided, is

9  attached hereto as <u>Exhibit A</u>. As of the Petition Date, the Firm had a remaining credit balance in favor

10  of the Debtors for professional services performed and to be performed, and expenses incurred and to

11  be incurred, in connection with these Chapter 11 Cases in the amount of $111,105.20 (the "<u>Fee</u>

12  <u>Advance</u>").[3]

13  17. The Firm intends to charge the Debtors for services rendered in these Chapter 11 Cases

14  at the Firm's normal hourly rates in effect at the time the services are rendered. The Firm's current

15  customary hourly rates, subject to change from time to time, are $600 to $800 for partners and

16  counsel, $400 to $550 for associates, and $225 for paraprofessionals. The Firm also intends to seek

17  reimbursement for expenses incurred in connection with its representation of the Debtors in

18  accordance with the Firm's normal reimbursement policies, all as more fully set forth in the Firm's

19  retention agreement with the Debtors attached hereto as <u>Exhibit A</u> (the "<u>Retention Agreement</u>").

20  18. The Debtors' obligations under the Retention Agreement are subject to any

21  modifications to such policies that the Firm may be required to make to comply with orders of this

22  Court, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the United States

23  Bankruptcy Court Northern District of California Guidelines for Compensation and Expense

24

25  [3]  The Firm drew down funds in its trust account immediately prior to the Petition Date in an
26  amount sufficient to cover its outstanding fees and expenses at the time. On February 9, 2019, the
     Firm completed its reconciliation of fees and expenses incurred prior to the Petition Date and
27  determined that it drew down, prior to the filing, $21,105.20 more than necessary to cover the Firm's
     outstanding fees and expenses. That sum has been returned to the Firm's trust fund for the benefit of
28  the Debtors.

Reimbursement of Professionals and Trustees effective February 19, 2014, the United States Trustee Guidelines Region 17 updated December 16, 2016 (the "Local Guidelines"), the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases effective November 1, 2013 (the "U.S. Trustee Guidelines," and together with the Local Guidelines, the "Fee Guidelines"), and any further orders of the Court (the "Orders").

19.     No promises have been received by the Firm, or any partner, counsel, or associate of the Firm, as to payment or compensation in connection with these Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Fee Guidelines.  Furthermore, the Firm has no agreement with any other entity to share compensation received by the Firm or by such entity.

20.     The Application requests approval of the Firm's retention on rates, terms, and conditions consistent with what the Firm charges non-chapter 11 debtors, namely, prompt payment of the Firm's hourly rates, as adjusted from time to time, and reimbursement of out-of-pocket disbursements at cost or based on formulas that approximate the actual cost where the actual cost is not easily ascertainable.  Subject to these terms and conditions, the Firm intends to apply for allowance of compensation for professional services rendered in these Chapter 11 Cases and for reimbursement of actual and necessary expenses relating thereto, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Fee Guidelines.

///

///

///

///

///

///

///

1 **ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES**

2     The following is provided in response to the request for additional information set forth in

3 Paragraph D.1 of the U.S. Trustee Fee Guidelines.

4     **Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

5

6     **Response:** No.

7     **Question:** Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

8

9     **Response:** No.

10     **Question:** If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments

11     during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain

12     the difference and the reasons for the difference.

13     **Response:** The Firm represented the Debtors for approximately eight months prior to the Petition Date. The Firm's customary hourly rates

14     were $600 to $800 for partners and counsel, $400 to $550 for associates, and $225 for paraprofessionals. The Firm's billing

15     rates and material financial terms with respect to this matter have not changed postpetition.

16

17     **Question**: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

18     **Response**: The Firm is developing a prospective budget and staffing plan for these Chapter 11 Cases. The Firm and the Debtors will review

19     such budget following the close of the budget period to determine a budget for the following period.

20

21 The foregoing constitutes the statement of the Firm pursuant to section 327(a) of the Bankruptcy Code

22 and Bankruptcy Rules 2014(a) and 2016.

23 ///

24 ///

25 ///

26 ////

27 ///

28

1    I declare under penalty of perjury that, to the best of my knowledge and after reasonable

2  inquiry, the foregoing is true and correct and that this declaration was executed at San Francisco,

3  California, on March 13, 2019.

4

5                                              /s/ Tobias S. Keller
                                               Tobias S. Keller

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28