

1　Marsha A. Houston (SBN 129956)
2　Christopher O. Rivas (SBN 238765)
　　REED SMITH LLP
3　355 South Grand Avenue, Suite 2900
　　Los Angeles, CA  90071-1514
4　Tel: 213.457.8000/ Fax: 213.457.8080

5　Charles S. Penner (SBN 124826)
　　CARNEY BADLEY SPELLMAN PS
6　701 5th Ave # 3600
7　Seattle, WA 98104-5017
　　Tel: 206.622.8020 / Fax: 206.467.8215

8
　　Attorneys for Defendant
9　AECOM Technical Services, Inc.

**FILED**

**MAR 01 2019**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

$ 0.00

LARS

10　　　　**UNITED STATES BANKRUPTCY COURT**

11　　　　**EASTERN DISTRICT OF CALIFORNIA**

12　　　　　　**SACRAMENTO DIVISION**

13　In re　　　　　　　　　　　MP No. ___19-00201___

14　MISCELLANEOUS PROCEEDING,

15　　　　　　　　Debtor.

16

17

18　JH KELLY, LLC, a Washington limited
　　liability company,　　　　　Adv. No. ___19-2035___

19　　　　　　　Plaintiff,　　**NOTICE OF REMOVAL OF LAWSUIT**
　　　　　　　　　　　　　　　**PENDING IN CALIFORNIA SUPERIOR**
20　　　vs.　　　　　　　　　**COURT, SHASTA COUNTY, TO**
　　　　　　　　　　　　　　**BANKRUPTCY COURT**
21　AECOM TECHNICAL SERVICES,
　　INC., a purported California corporation,
22　and DOES 1 through 10, inclusive,　*[28 U.S.C. §1452, FRBP 9027(a)]*

23　　　　　　　Defendants.

24

25

26

27

28

BY FAX

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF REMOVAL

US_ACTIVE-145412245.2-CORIVAS

**TO PLAINTIFF, DEBTOR-IN-POSSESSION PACIFIC GAS AND ELECTRIC COMPANY, AND THEIR COUNSEL OF RECORD:**

**I.    Background**

1.      Defendant AECOM Technical Services, Inc. ("AECOM"), was the prime contractor on a private construction project generally known as the "Burney K2 Replacement Project" (the "Project'), which involved the replacement of a natural gas compressor unit at the Burney Compressor Station in Burney, California (the "Burney Property") owned by Pacific Gas and Electric Company (the "Debtor" or "PG&E").   Plaintiff JH Kelly, LLC ("JH Kelly"), was a subcontractor on the construction project.

2.      The compressor station on the Burney Property is one of nine gas compressor that receive, store and move natural gas through company pipelines. The pipelines serviced by the Burney Property station, and the other eight compressor stations, provide service to customers from Bakersfield to the Oregon border and are crucial to PG&E's gas distribution system.

3.      On January 29, 2019, PG&E and its parent company, PG&E Corporation, filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the Northern District of California (the "Northern District Bankruptcy Court"), in a jointly administered case assigned Case No. 19-30088 (the "Bankruptcy Case").

**II.    The Nature of the Underlying Action and Its Relation To PG&E's Bankruptcy Case**

4.      On the same day that PG&E filed its Bankruptcy Case, January 29, 2019, JH Kelly filed this action against AECOM: *JH Kelly, LLC v. AECOM Technical Services, Inc.*, *et al.*, Case No. 19CV0172 (the "Action").

5.      JH Kelly and AECOM also have each recorded mechanic's liens against the Burney Property, which is property of PG&E's bankruptcy estate.  JH Kelly filed an action against PG&E to foreclose on its lien prior to the filing of the Bankruptcy Case.  JH Kelly's lien foreclosure action is currently pending in Shasta County Superior Court, although it has been automatically stayed as a consequence of PG&E filing its Bankruptcy Case.

- 1 -

NOTICE OF REMOVAL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

US_ACTIVE-145412245.2-CORIVAS

1     6.     There is no question that the disputes between JH Kelly and AECOM

2    involve PG&E. Indeed, JH Kelly filed a notice of related case in this Action notifying Shasta

3    County Superior Court that this Action is related to its lien foreclosure action against PG&E:

4    "[t]his case [the action against AECOM] and the case referenced above [the action JH Kelly filed

5    against PG&E] could require duplication of judicial resources because the claims in both cases

6    arise from the same construction project." JH Kelly's statement is correct. All of JH Kelly's

7    claims in both actions arise out of the same nexus of facts and circumstances related to the

8    construction of the Project. The substantial majority of JH Kelly's claims involve changes PG&E

9    directed AECOM to implement. While the question of who is ultimately responsible for the

10    changes and resulting delays will undoubtedly be disputed, what is indisputable is that all three

11    parties are necessary to adjudicate this matter.

12     7.     More specifically, and as explained further below, the Project was almost

13    immediately off track as a consequence of PG&E's late-driven design changes, including

14    needless and last minute changes to the nearly-complete electrical design package just before

15    construction was set to begin on the Project. AECOM objected to these changes as untimely and

16    unnecessary and further notified PG&E that they were certain to lead to delay and cost overruns,

17    but PG&E insisted that AECOM make the changes and push forward with the changed scope of

18    work. As detailed in the Action, the impact of these changes were far-reaching. When AECOM

19    requested that the Project be temporarily paused around September 2017, in order for AECOM

20    and JH Kelly to catch-up to the changes PG&E insisted on implementing, PG&E refused and

21    even accelerated the Project through the winter of 2017, a fact of which is addressed throughout

22    JH Kelly's complaint.

23     8.     Not only is this case "related to" the Debtor's Bankruptcy Case, PG&E is a

24    necessary and essential party to the Action. However, because of the automatic stay, AECOM

25    cannot file its third-party complaint against PG&E nor can JH Kelly pursue its claims against

26    PG&E in its state court lien foreclosure action. AECOM intends to pursue its claims against

27    PG&E in the Bankruptcy Case. To effectuate that intent, AECOM will soon file a motion to

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

- 2 -

NOTICE OF REMOVAL

US_ACTIVE-145412245.2-CORIVAS

1  transfer this Action to the Bankruptcy Case in the interests of efficiency and justice, and so that

2  this Action may be adjudicated in tandem with AECOM's claims against PG&E.  JH Kelly may

3  also pursue its own claims against PG&E in that same forum.  Without the consolidation of all of

4  these disputes in a single forum, there is a substantial risk that separate trials, in separate forums

5  will result in duplication of judicial resources, duplication of efforts by the parties, and have a

6  significant risk of inconsistent results and/or substantial prejudice to the rights of AECOM and

7  PG&E.

8                          **III.    Removal and Notice**

9          9.      Accordingly, AECOM hereby removes the Action – *JH Kelly, LLC v.*

10  *AECOM Technical Services, Inc., et al.*, Case No. 19CV0172, formerly pending in the Superior

11  Court of California, County of Shasta – pursuant to 28 U.S.C. §1452, Federal Rule of Bankruptcy

12  Procedure 9027(a) and Local Rule 9027-1, and will give notice of such removal to each of the

13  following:

14

15  Superior Court of California, County of Shasta:
    Redding Main Courthouse
16  1500 Court Street, Room 319
    Redding, CA  96001

17  Plaintiff:
    JH Kelly, LLC
18  821 3rd Ave.
    Longview, WA, 98632
19
    Counsel for JH Kelly, LLC:
20  Stoel Rives LLP
    760 SW Ninth Avenue, Suite 3000
21  Portland, OR  97205
    Attn:  Mario R. Nicholas
22
    Debtor:
23  Pacific Gas and Electric Company
    77 Beale Street
24  PO Box 770000
    San Francisco, CA  94177
25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

- 3 -

NOTICE OF REMOVAL

US_ACTIVE-145412245.2-CORIVAS

1  Counsel for Debtor:
2  Weil, Gotshal & Manges LLP
   767 Fifth Avenue
3  New York, NY  10153-0119
   Attn: Stephen Karotkin
4  Jessica Liou
   Matthew Goren

5       and

6  Keller & Benvenutti LLP
   650 California Street, Suite 1900
7  San Francisco, CA  94108
   Attn: Tobias S. Keller
8  Jane Kim

9       10.    AECOM will serve a copy on Plaintiff at the address set forth above and

10 will promptly file a copy of this Notice of Removal with the clerk of the Superior Court of the

11 State of California, County of Shasta, as required by 28 U.S.C. §§ 9027(b) and 9027(d).

12      11.    Pursuant to 28 U.S.C. § 9027(a)(1), attached as **Exhibit A, B and C** are

13 true and correct copies of all process, pleadings, motions and orders obtained from the court's file

14 in the Action on at the time of this removal.

15      12.    Pursuant to 28 U.S.C. § 1452(a), removal of the Action is proper on the

16 grounds that the claims raised in the Action arise under title 11 of the United States Code, arise in

17 a case under title 11 United States Code, or otherwise are related to a case under title 11 of the

18 United States Code, such that federal (bankruptcy) jurisdiction exists pursuant to 28 U.S.C. §

19 1334(b).

20      13.    The Action is not a proceeding before the United States Tax Court.

21      14.    The Action is not a civil action by a government unit to enforce it police or

22 regulatory power.

23      15.    This Court has jurisdiction over the Action pursuant to 28 U.S.C. §1334(b).

24      16.    Venue is proper in this Court under 28 U.S.C. §1452(a), because this Court

25 is the Bankruptcy Court located in the District where the Action was formerly located (Shasta

26 County).

27      17.    Pursuant to General Order No. 223, entered by the United States District

28 Court for the Eastern District of California, entered on October 22, 1987, this Notice is

NOTICE OF REMOVAL

US_ACTIVE-145412245.2-CORIVAS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1    automatically referred to this Bankruptcy Court pursuant to Rule 9027 of the Federal Rules of

2    Bankruptcy Procedure and General Order No. 182, and, therefore, should be filed in this

3    Bankruptcy Court.

4         18.    Upon transfer to the Northern Bankruptcy Court, AECOM will consent to

5    entry of final orders or judgment by the Northern Bankruptcy Court.

6         **IV.    The Basis for Transfer Post-Removal**

7         19.    Once removed, AECOM intends to file a motion to transfer this Action to

8    the Bankruptcy Case. The basis for seeking a transfer from this Court to the Northern District

9    Bankruptcy Court is likewise relevant to this Removal, in that it reflects the necessity of PG&E's

10   involvement as a party, which as a practical matter should occur in the Northern District

11   Bankruptcy Court.

12        20.    AECOM entered into a contract dated February 11, 2016, with PG&E to

13   provide engineering, procurement and construction services for the Project ("EPC Agreement").

14   AECOM's bid for the Project was based on a Request for Proposals ("RFP") package issued by

15   PG&E. In its RFP, PG&E expressly represented that "[i]t is the intent of this RFP that a

16   minimum of changes be made to the existing 30% Design Deliverables." AECOM submitted its

17   lump sum bid in reliance on the foregoing representations. AECOM likewise planned the Project

18   schedule milestones, which are set out in the EPC Agreement, based on the representation by

19   PG&E's that "a minimum of changes be made to the existing design deliverables."

20        21.    It was with this understanding and representation from PG&E that

21   AECOM entered into a subcontract with JH Kelly on October 21, 2016 ("Subcontract"), pursuant

22   to which JH Kelly agreed that it **shall have the same responsibilities and obligations as to**

23   **[AECOM] as [AECOM] by the EPC Agreement has against and to [PG&E],** except as may

24   be modified herein." (Subcontract at § 1.1.1; emphasis added.) Thus, JH Kelly's obligations and

25   responsibilities mirrored those of AECOM under the EPC Agreement between AECOM and

26   PG&E.

27

28

-5-

NOTICE OF REMOVAL

US_ACTIVE-145412245.2-CORIVAS

22.     However, PG&E (not AECOM) substantially changed the scope of the Project and caused substantial delays that disrupted the Project in a manner that substantially contributed to, and gave rise to, the damages asserted by JH Kelly in this Action. JH Kelly's own complaint in this Action underscores PG&E's responsibility for the damages.

23.     JH Kelly's alleged damages include $6,839.697.89 for invoiced contract amounts, which it also alleges were wrongfully withheld, $9,562,782 for pending change order requests, and an estimated $10,000,000 for schedule and productivity impacts on the Project. [*Complaint*, ¶ 43.] JH Kelly generally alleges that these damages arise out of "egregious mismanagement and maladministration of the Project," which it claims was the fault of AECOM. [*Complaint*, ¶ 43.] However, PG&E, not AECOM, was the cause of most of the problems complained about by JH Kelly.

24.     For example, JH Kelly alleges that the Project doubled in duration from an 8-month schedule with a break for winter, to a 16-month schedule, working through wet and cold winter conditions. [*Complaint*, ¶ 43(a).] The allegation is accurate, but fails to identify that the driving delay to the Project was the late electrical design changes directed by PG&E. The Project was originally conceived to be done in two phases: Phase I Design, and Phase II Construction. The schedule originally contemplated that the design phase would be completed by October 20, 2016. However, because of PG&E's changes to the electrical design, in particular the control system (the MCC), and PG&E's failure to timely approve purchase orders of major equipment impacted by these changes, the design phase of the project was extended to January 2017. For the electrical and fire suppression design, it was extended even longer. AECOM objected to these changes as needless and preferential only, and notified PG&E of the associated risk of delays to the project and cost overruns, but PG&E insisted that AECOM make the changes and push forward with the changed scope of work.

25.     But these delays were just the start, because in February 2017, when AECOM submitted final electrical design plans to PG&E, PG&E not only rejected them, but directed a substantial last-minute redesign of the electrical system to incorporate wholly

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 6 -

NOTICE OF REMOVAL

1   preferential design changes to harden the system and make it "resilient." These additional

2   changes created a compounding effect of changes to the electrical system, electrical conduit and

3   duct banks, as well as the layout of the project civil work, all of which would ultimately have a

4   devastating impact to the critical path of the project schedule, and increased costs. As this

5   became clear in August and September 2017, AECOM asked PG&E to put the Project on

6   temporary pause to allow the parties to regroup and avoid working over the winter in Burney.

7   PG&E refused these requests and directed AECOM (and JH Kelly) to increase the workforce and

8   work through the winter to try to accelerate the ultimate completion of the Project.

9          26.     JH Kelly asserts that these compounding changes resulted in a 238%

10  increase in project costs and the use of over 35,000 in overtime hours. [*Complaint*, ¶ 43(c), (d).]

11  Specifically, JH Kelly alleges that the construction schedule was accelerated in September 2017

12  for a February 2018 completion date, including substantial overtime and work through the winter.

13  [*Complaint*, ¶ 36.] These schedule changes were dictated by PG&E, not AECOM, and forced

14  AECOM and its subcontractors, including JH Kelly to incur these costs.

15         27.     Critically, the Subcontract between AECOM and JH Kelly plainly

16  contemplates that PG&E-related disputes will be resolved with participation of PG&E. As

17  illustration, Article 13.3 of the Subcontract provides that JH Kelly's rights to additional

18  compensation or an extension of time is determined by the corresponding compensation or time

19  extension that AECOM obtains from the Debtor for such owner-related claims. [RJN, Ex. 1.]

20  Specifically, Article 13.3 provides that:

> **13.3.1** To the extent a claim, dispute or controversy arises out of, or relates to, problems caused by [PG&E] or for which [PG&E] is responsible ("[PG&E] Disputes"), such [PG&E] Disputes shall be resolved pursuant to the dispute resolution clause set forth in the EPC Agreement. ***Both [AECOM] and [JH Kelly] agree to cooperate in the presentation and prosecution or defense of [PG&E] Disputes.*** If, after a request for an extension of time or additional compensation from [JH Kelly], [AECOM] believes that the event causing the delay or additional compensation is the responsibility of [PG&E], then [AECOM] will cooperate with and assist [JH Kelly] in presenting a request for an extension of time or additional compensation to [PG&E]. Notwithstanding the above, [AECOM] reserves the right not to submit a claim to [PG&E]. In such cases, the claim shall be resolved pursuant to Section 13.4.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 7 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware.

1

2

3

4

*13.3.2 Notwithstanding any other provisions herein to the contrary, [AECOM] and [PG&E] each agree to accept the relief as to a time extension or additional compensation obtained from [PG&E], if any, as well as all other aspects of the final decision following appeal or the expiration of the time for appeal, as full and final resolution of any [PG&E].*

5   [*Complaint*, Exhibit A, § 13.3.1, 13.3.2 (emphasis added).]

6          28.    These provisions evidence JH Kelly's and AECOM's intent to avoid

7   duplicative litigation and inconsistent results regarding these Debtor-related claims.  However,

8   these problems are precisely what will occur here if JH Kelly's claims are not resolved in

9   accordance with the disputes resolution procedures contained in the Subcontract, which expressly

10  requires that JH Kelly and AECOM jointly present and prosecute such claims against the Debtor.

11  In fact, JH Kelly appears to understand this fact based upon its Notice of Related Cases, which

12  absent the Debtor's filing of the Bankruptcy Case, would normally have caused the actions to be

13  litigated in tandem.

14         29.    The other facts and factors supporting the transfer of venue will be

15  described in more detail in AECOM's motion to transfer venue, which will promptly be filed in

16  this Action upon removal.

17

18  DATED:  March 1, 2019.                     REED SMITH LLP

19

20                                            By
                                                 Marsha A. Houston
21                                               Christopher O. Rivas

22                                               and

23                                               CARNEY BADLEY SPELLMAN PS
                                                 Charles S. Penner
24                                               701 5th Ave # 3600
                                                 Seattle, WA 98104-5017
25
                                                 Attorneys for Defendant
26                                               AECOM Technical Services, Inc.

27

28

- 8 -

NOTICE OF REMOVAL

US_ACTIVE-145412245.2-CORIVAS

# EXHIBIT A

BY FAX

1/31/19 @ 9:35

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AECOM TECHNICAL SERVICES, INC., a purported California
corporation; and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JH KELLY, LLC, a Washington limited liability company

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**

JAN 29 2019

CLERK OF THE SUPERIOR COURT
BY: S. MURILLO, DEPUTY CLERK

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Shasta County Superior Court<br><br>Redding Main Courthouse, 1500 Court Street, Room 319, Redding, CA 96001 | CASE NUMBER:<br>*(Número del Caso):*<br>**19CV0172** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mario R. Nicholas, Stoel Rives LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205 (503) 294-9510

| DATE: **JAN 29 2019**<br>*(Fecha)* | Clerk, by **S. MURILLO** | , Deputy |
|---|---|---|
| | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Aecom Technical Services Inc., a purported California Corporation.

   under: ☑ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 1/31/19

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

**FILED**

JAN 2 9 2019

CLERK OF THE SUPERIOR COURT
BY: S. MURILLO, DEPUTY CLERK

1  MARIO R. NICHOLAS (SB #273122)
   mario.nicholas@stoel.com
2  STOEL RIVES LLP
   760 SW Ninth Avenue, Suite 3000
3  Portland, OR. 97205
   Telephone:  503.224.3380
4  Facsimile:  503.220.2480

5  Attorneys for Plaintiff
   JH Kelly, LLC

6

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF SHASTA

10  JH KELLY, LLC, a Washington limited        CASE NO.  **19CV0172**
    liability company,
11                                             **COMPLAINT FOR:**
              Plaintiff,
12                                             1. Breach of Contract;
        v.                                     2. Breach of Contract/Total Cost or
13                                                Modified Total Cost;
    AECOM TECHNICAL SERVICES, INC., a          3. Breach of Implied Warranty (Adequacy
14  purported California corporation; and         of Plans and Specifications);
    DOES 1 through 10, inclusive,              4. Breach of the Implied Covenant of
15                                                Good Faith and Fair Dealing;
              Defendants.                      5. *Quantum Meruit*/Abandonment;
16                                             6. Violation of Prompt Payment Laws;
                                                  and
17                                             7. *Quantum Meruit*/Reasonable Value
18                                             Unlimited Jurisdiction
19
20
21      For its Complaint, Plaintiff JH Kelly, LLC ("JH Kelly") alleges as follows:
22                              **THE PARTIES**
23      1.      Plaintiff JH Kelly is a Washington limited liability company.  JH Kelly is duly
24  qualified to do business in the State of California as a contractor under Contractors State License
25  Board License No. 991732.
26      2.      On information and belief, defendant AECOM Technical Services, Inc.
27  ("AECOM") is now, and all relevant times was, a California corporation headquartered in Los
28  Angeles, California.  On information and belief, defendant AECOM is a subsidiary of AECOM, a

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

-1-
COMPLAINT

99802670.8 0054592- 00012

1   Delaware corporation, which has 77 offices in the State of California, and domestic main offices

2   in Los Angeles, California and New York, New York, and international main offices in London,

3   England; Moscow, Russia; Hong Kong Sha Tin, China; Abu Dhabi, United Arab Emirates; and

4   Brisbane, Australia.

5        3.     JH Kelly is ignorant of the true names and capacities of defendants sued herein as

6   Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. JH

7   Kelly will amend this Complaint to allege true names and capacities when ascertained. JH Kelly

8   is informed and believes and therefore alleges that each of the fictitiously named defendants are

9   responsible in some manner for the occurrences herein alleged and for JH Kelly's damages.

10        4.     At all times mentioned herein, defendants, and each of them, were the agents,

11   servants, and employees of each of the remaining defendants and were, in doing the things

12   complained of, acting within the scope of their agency and/or employment, and acting with the

13   full knowledge or subsequent ratification of their principals or employers.

14       **FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15        5.     This lawsuit arises out of the pervasive design, procurement, permitting,

16   construction management, construction administration, and related performance errors and

17   contract breaches committed by AECOM and Does 1-10 (the "AECOM Defendants"). The

18   AECOM Defendants are the prime contractor on a private construction project generally known

19   as the Burney K2 Replacement Project, owned by Pacific Gas and Electric Company ("PG&E"),

20   and located near the City of Burney, Shasta County, California (the "Project"). As set forth in

21   more detail below, the AECOM Defendants' egregious mismanagement and maladministration of

22   the Project, and unconscionable treatment of JH Kelly, a subcontractor, is underscored by the

23   following nonexhaustive list of facts:

24        a.    JH Kelly's work on the Project doubled in duration from an eight-month

25            construction schedule, with a break for winter, to a 16-month construction

26            schedule, working through wet and cold winter conditions;

27        b.    JH Kelly's scope of work on the Project doubled from $14,341,281 to

28            $27,871,284 (excluding schedule and productivity impact delays);

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

COMPLAINT

99802670.8 0034592- 00012

c.  JH Kelly experienced a 238% increase in Project costs;

d.  JH Kelly planned to work zero overtime hours, and ended up working 35,039 overtime hours;

e.  After terminating its own onsite Project team, the AECOM Defendants brought in a mostly new, modified Project team that directed JH Kelly to accelerate its schedule and failed and refused to pay JH Kelly for its additional costs;

f.  The AECOM Defendants' new Project team unilaterally ceased payment under the contractual payment schedule agreed to in the Subcontract (defined below);

g.  JH Kelly began work in or around October 2016, and demobilized from the site on or about June 28, 2018, but has not received any payment for 197 days (since on or about July 5, 2018);

h.  JH Kelly has not been paid for any work performed after March 25, 2018 (the AECOM Defendants last made payment to JH Kelly on or about July 5, 2018 for work performed through March 25, 2018);

i.  The AECOM Defendants failed to process 143 pending change order requests ("CORs" or, if singular, "COR") totaling $9,562,782, the oldest of which was submitted on or about April 28, 2017;

j.  JH Kelly has been paid only 62% of the base contract and approved change order amounts;

k.  JH Kelly has been paid only 34% of its total costs incurred; and

l.  Notwithstanding the foregoing, (i) JH Kelly paid all of its subcontractors, employees, and vendors, (ii) no subcontractors or vendors filed liens against the Project, (iii) no employees filed payment claims regarding the Project, (iv) JH Kelly finished the job with zero recordable injuries; and (v) despite lack of payment, JH Kelly continued to diligently and successfully execute the work until completion in June 2018—which is consistent with JH Kelly's history of never abandoning a project.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

-3-

COMPLAINT

99802670.8 0034592- 00012

6.     On or about July 14, 2015, the AECOM Defendants first contacted JH Kelly to inquire regarding its availability to work on the Project.

7.     The Project generally involved the replacement of a natural gas compressor unit at the Burney Compressor Station in Burney, California; the performance of various upgrades to the Burney Compressor Station; and the limited demolition of existing equipment and facilities at the Project site. The Burney Compressor Station is a facility located along PG&E's natural gas pipelines that compresses gas to a specified pressure, thereby allowing it to continue traveling along the pipelines from the State of Oregon to its intended recipients in the State of California. It supplies natural gas to the City of Burney and its neighboring communities, and is a part of PG&E's natural gas distribution system that provides service to around 4.2 million customers from Bakersfield, California to the southern border of the State of Oregon.

8.     On or about August 12, 2015, the AECOM Defendants provided JH Kelly with a request for proposal from PG&E for the Project.

9.     On or about August 25, 2015, JH Kelly attended a pre-bid job walk at the Project site in Burney, California.

10.     On or about August 26, 2015, Steven R. Petto, Associate Vice President of Power & Industrial for the AECOM Defendants ("Mr. Petto"), represented to JH Kelly that the AECOM Defendants had rebuilt the Gerber Compressor Station (the "Gerber Project") about 50 miles south of Burney, California; that the Gerber Project was "very similar to what we have now at Burney"; and that the AECOM Defendants had "rebuilt the [Gerber Project] site in 5 months."

11.     On or about October 7, 2015, JH Kelly submitted a bid package, JH Kelly Proposal No. 15000.77.505 ("Proposal"), to the AECOM Defendants to perform certain civil, structural, mechanical, electrical, and related construction work on the Project for a lump-sum price of $14,341,281.

12.     In preparing its Proposal, including its scope of work and draft schedule narrative, JH Kelly reviewed and relied upon the bid documents provided by the AECOM Defendants, including, but not limited to, the plans, details, material quantities, drawings, specifications, information regarding the Gerber Project, and other information provided by the AECOM

-4-

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

COMPLAINT

99802670.8 0034592- 00012

1　Defendants. Included among the documents relied upon by JH Kelly was a batch of roughly 270

2　pages of emails and material take off ("MTO") information, which JH Kelly relied upon, and

3　which AECOM directed JH Kelly to rely upon, to generate its pricing for the assumed fixed

4　quantities of materials and equipment necessary for JH Kelly's scope of work (these emails and

5　MTO information were ultimately attached to the Subcontract (defined below) as Exhibit B2A).

6　JH Kelly expressly reserved the right to seek additional compensation for changes to the

7　quantities of material and equipment included in its Proposal through change orders. JH Kelly's

8　pricing also excluded winter work and overtime work.

9　　　　13.　　JH Kelly's Proposal included a draft schedule narrative for the Project ("JH

10　Kelly's Proposed Construction Schedule"), which JH Kelly prepared based on its pre-bid

11　planning with the AECOM Defendants and review of the Project documents. JH Kelly's

12　Proposed Construction Schedule contemplated JH Kelly's scope of work being complete in one

13　year, with no onsite work during the winter months, and provided, among other things, as

14　follows:

15　　　　　　a.　Mobilization to begin in October 2016;

16　　　　　　b.　Demobilization would occur in November 2016 to leave the Project for the

17　　　　　　　　winter period, which was November 2016 through February 2017 (the "2016-

18　　　　　　　　2017 Winter Period");

19　　　　　　c.　JH Kelly would perform detailing and fabrication of electrical and piping

20　　　　　　　　materials offsite during the 2016-2017 Winter Period;

21　　　　　　d.　Re-mobilization and construction work at the Project would occur from March

22　　　　　　　　2017 through September 2017; and

23　　　　　　e.　Final demobilization for JH Kelly would occur in October 2017.

24　　　　14.　　JH Kelly's plan to demobilize during the 2016-2017 Winter Period was consistent

25　with the Project documents provided by the AECOM Defendants, which provided that "[d]ue to

26　the relatively harsh winters, construction [is] recommended to be scheduled from April to

27　October."

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

-5-

COMPLAINT

99802670.8 0034592- 00012

15.     On or about February 11, 2016, on information and belief, the AECOM Defendants entered into an Engineering, Procurement, and Construction of Natural Gas & Electric Transmission and Distribution Facilities Agreement (the "EPC Agreement") with PG&E for the Project, with the contract price $40,510,262 under which the AECOM Defendants agreed to act as the design-builder and prime contractor for the Project.

16.     Under the EPC Agreement, the AECOM Defendants were responsible for designing the Project, procurement of all large and long-lead materials for the Project, building the Project, and construction management and administration of the Project. The AECOM Defendants were also responsible for, among other things, developing, maintaining, updating, and achieving the Project schedule per the deadlines in the EPC Agreement, and timely obtaining all building permits.

17.     On or about October 12, 2016, the AECOM Defendants requested that JH Kelly provide a detailed construction schedule for the Project in order for the AECOM Defendants to incorporate into the overall Project schedule. JH Kelly sent the AECOM Defendants the requested detailed construction schedule on or about October 14, 2016.

18.     On or about October 19, 2016, the AECOM Defendants issued an overall Project schedule (the "Project Schedule"). Consistent with JH Kelly's Proposed Construction Schedule, the Project Schedule provided, among other things, as follows:

     a.  Mobilization to begin in October 2016 to early November 2017, along with clearing, grubbing, and other site preparation work;

     b.  Winter demobilization would occur during the 2016-2017 Winter Period (except for the commencement of some limited work in late February 2017);

     c.  The AECOM Defendants would complete all permitting work by October 4, 2016 (which would allow the immediate commencement of construction after the 2016-2017 Winter Period);

     d.  The AECOM Defendants would complete the Issued for Construction ("IFC") drawings by December 1, 2016 (which would allow JH Kelly to perform

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

-6-

COMPLAINT

99802670.8 0034592- 00012

Case: 19-30088    Doc# 873    Filed: 03/01/19    Entered: 03/14/19 10:31:43    Page 17 of 30

1  detailing and fabrication of the necessary piping and electrical materials during

2  the 2016-2017 Winter Period);

3      e.  Re-mobilization and construction work would occur from March 2017 through

4  September 2017; and

5      f.  JH Kelly would complete its scope of work in October 2017.

6      19.  On or about October 14, 2016, Mr. Petto, on behalf of the AECOM Defendants,

7  represented that JH Kelly would be entitled to addition compensation for changes to the quantities

8  of materials and equipment set forth in JH Kelly's Proposal as follows:

9        "In hindsight if we weren't scrambling so hard to get
everything included before Power Advocate shut the window on

10  proposal entries we might have had a more formal transmittal
process to better track the latest quantities; a lessons learned for the

11  next proposal, but for now this is what we've got.  If later we find
material quantity changes I missed, AECOM will negotiate in good

12  faith to resolve any discrepancies."

13

14      20.  JH Kelly believed and relied upon Mr. Petto's representation that "AECOM will

15  negotiate in good faith to resolve any discrepancies" regarding the quantities of materials and

16  equipment in entering into the Subcontract (defined below) with the AECOM Defendants.

17      21.  On or about October 21, 2016, the AECOM Defendants and JH Kelly entered into

18  the Agreement Between Design-Builder and Subcontractor (Where Subcontractor Does Not

19  Provide Design Services), Subcontract No. 60482831-SC-001 (the "Subcontract"), with a contract

20  price of $14,341,281—the same amount included in JH Kelly's Proposal.  A copy of the

21  Subcontract, excluding exhibits (which consist of approximately 2,218 pages), is attached hereto

22  as **Exhibit A** and incorporated herein.

23      22.  The Subcontract incorporated as Exhibit H the JH Kelly Construction Schedule

24  (the "Subcontract Ex. H Schedule"), which, consistent with JH Kelly's Proposed Construction

25  Schedule and the Project Schedule, provided that:

26      a.  Mobilization to begin in October and November 2016;

27      b.  Winter demobilization would occur in November 2016 for the 2016-2017

28  Winter Period;

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

-7-

COMPLAINT

99802670.8 0034592- 00012

c.  JH Kelly would perform off-site detailing and fabrication of the necessary
    piping and electrical materials during the 2016-2017 Winter Period;

d.  Re-mobilization and construction work would occur from March 2017 through
    September 2017; and

e.  Final demobilization for JH Kelly would occur in October 2017.

23.  The Subcontract incorporated as Exhibit A2 a modified major milestone schedule, provided by AECOM, which, consistent with JH Kelly's Proposed Construction Schedule, the Project Schedule, and the Subcontract Ex. H Schedule, provided, among other things, as follows:

a.  Mobilization to begin on October 17, 2016;

b.  Winter demobilization would occur in November 2016 for the 2016-2017
    Winter Period;

c.  The AECOM Defendants would complete all IFC drawings by December 1,
    2016 (which, as set forth above, would allow JH Kelly to perform its detailing
    and fabrication for the necessary piping and electrical materials during the
    2016-2017 Winter Period);

d.  The AECOM Defendants would complete all engineering by January 16, 2016
    (which would allow JH Kelly to commence construction immediately after the
    2016-2017 Winter Period);

e.  Re-mobilization and construction work would occur from March 2017 through
    November 2017;

f.  Substantial completion of the overall Project would occur on November 17,
    2017; and

g.  Project final completion and demobilization would occur on December 1,
    2017.

24.  As set forth above, at the time JH Kelly entered into the Subcontract, JH Kelly planned (i) to work on the Project in two phases, commencing in or around October 2016, (ii) to not work onsite during the 2016-2017 Winter Period, during which time JH Kelly planned to perform off-site detailing, fabrication, and related work to prepare for the start of construction in

-8-

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

COMPLAINT

99802670.8 0034592- 00012

1  or around March 2017, (iii) to follow a standard sequence of construction, and (iv) to complete its

2  work in or around October 2017.

3       25.   From the outset, for reasons unknown to JH Kelly and not the fault of JH Kelly,

4  the AECOM Defendants fell behind on their engineering, procurement, and permitting

5  obligations.

6       26.      After executing the Subcontract, the AECOM Defendants advised JH Kelly that

7  they would not meet the December 1, 2016 deadline to issue the IFC electrical drawings (the

8  "IFC Electrical"), and that JH Kelly should expect to receive the unstamped IFC Electrical by

9  December 15, 2016, and the stamped IFC Electrical shortly thereafter.

10       27.      On or about January 4, 2017, having not received the IFC Electrical by the

11  December 15, 2016 deadline, JH Kelly contacted the AECOM Defendants to request an update

12  on the status of the IFC Electrical. That same day, the AECOM Defendants responded that the

13  IFC Electrical would not be released until February 24, 2017. JH Kelly further learned the IFC

14  Electrical was going to include electrical re-design and added electrical scope.

15       28.      The AECOM Defendants' message on January 4, 2017 was the first time that the

16  AECOM Defendants notified JH Kelly that the IFC Electrical would not be issued until February

17  24, 2017—nearly three months later than planned. This delay significantly concerned JH Kelly

18  because material procurement and off-site detailing and fabrication, among other services, could

19  not begin without the IFC Electrical. JH Kelly had arranged a team of electrical detailers to start

20  work on December 1, 2016 based on the previously scheduled issue date for the IFC Electrical.

21  JH Kelly later moved its start date to December 15, 2016 upon learning of AECOM's delay in

22  providing the IFC Electrical. JH Kelly would now need to move the detailing and fabrication

23  work out further based on the AECOM Defendants' notice of delay to February 24, 2017.

24       29.      On or about January 4, 2017, JH Kelly notified the AECOM Defendants that it

25  requested an adjustment under the Subcontract to account for the schedule compression,

26  additional work, loss of productivity, and other issues that flowed from the late issuance of the

27  IFC Electrical, the electrical re-design, added electrical scope, and the AECOM Defendants'

28  failure to manage the sequencing and flow of work. The AECOM Defendants expressly

-9-

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

COMPLAINT

99802670.8 0034592- 00012

1   acknowledged receipt of JH Kelly's January 4, 2017 request for adjustment and relief under the

2   Subcontract.

3       30.     On or about January 24, 2017, JH Kelly again advised the AECOM Defendants of

4   the substantial impact on the construction schedule and Project costs as a result of the late

5   issuance of the IFC Electrical and added electrical scope.  That same day the AECOM

6   Defendants expressly acknowledged that the late issuance of the IFC Electrical impacted the

7   Project Schedule.

8       31.     The AECOM Defendants did not issue the stamped IFC Electrical on February 24,

9   2017 as they represented they would.

10      32.     Over the course of the following nine months, in a disjointed and disorganized

11  manner, the AECOM Defendants modified, corrected, and updated the IFC Electrical.

12      33.     The AECOM Defendants issued the final update to the IFC Electrical on or about

13  November 15, 2017, over 11 months later than planned.

14      34.     The AECOM Defendants' 11-month delay in issuing the IFC Electrical, and the

15  extensive changes to the IFC Electrical, fundamentally changed the timing, sequencing, and scope

16  of JH Kelly's work on the Project.

17      35.     On or about September 12, 2017, JH Kelly submitted COR #70 for compensation

18  for the myriad of changes caused by the IFC Electrical.

19      36.     On or about September 12, 2017—the same day that JH Kelly formally submitted

20  COR #70—the AECOM Defendants requested that JH Kelly implement an accelerated schedule

21  (the "Accelerated Schedule") to compensate for the delays to the Project.  The Accelerated

22  Schedule contemplated a revised substantial completion date of February 28, 2018 by making the

23  following primary changes to JH Kelly's work on the Project:

24          a.  The initiation of overtime for all labor by shifting from a "4-10s" schedule

25              (four consecutive days at 10 hours per day) to a "6-10s" schedule (six

26              consecutive days at 10 hours per day);

27          b.  The requirement that JH Kelly to work through the cold and wet winter period

28              from November 2017 through February 2018; and

-10-

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

COMPLAINT

99802670.8 0034592- 00012

c.   The addition of nightshifts for electricians.

37.   On or about November 9, 2017, the AECOM Defendants directed JH Kelly to implement the Accelerated Schedule.  JH Kelly implemented the Accelerated Schedule at the specific instance and request of the AECOM Defendants, and based on the understanding that it would be compensated for its additional costs.

38.   In addition to the delayed delivery of the IFC Electrical, and other IFC drawings, the substantial changes in the IFC Electrical, and other IFC drawings, and the implementation of the Accelerated Schedule, JH Kelly's work on the Project was severely impacted as a result of, without limitation, the following issues (for which numerous notices were provided to the AECOM Defendants):

a.   Late and Incomplete Permits: The AECOM Defendants failed to timely procure building permits prior to the start of construction, which directly impacted the progress, sequence, and cost of construction on the Project.  The final building permit was applied for on or about August 28, 2017, which was six months after the start of construction and nearly three months prior to the planned substantial completion date of November 17, 2017.  JH Kelly was significantly limited from commencing work without the permits, and nearly all aspects of the Project experienced a material permitting delay;

b.   Late Procurement: The AECOM Defendants were responsible for the majority of procurement for the Project, including, without limitation, procurement of all large and long-lead materials, including all two-inch and larger piping materials, and they failed to timely procure the materials, which directly impacted the progress, sequence, and cost of construction;

c.   Defective Coating Procurement: The AECOM Defendants procured piping that did not meet the coating standard defined in the EPC Agreement, and that failed the "jeep" tests in the field, requiring removal of the defective coating and reapplication of the coating to the proper standard in the field, which directly impacted the progress, sequence, and cost of construction;

-11-

d. <u>Delayed and/or Defective Mechanical Material</u>: Mechanical materials furnished by the AECOM Defendants and/or third parties under their control were delivered late, were missing item(s), and contained errors in fabrication, which directly impacted the progress, sequence, and cost of construction;

e. <u>Delayed and/or Defective Steel Building Material</u>: Steel materials furnished by the AECOM Defendants and/or third parties under their control were delivered late, were missing item(s), and contained errors in fabrication, which directly impacted the progress, sequence, and cost of construction;

f. <u>Delayed and/or Defective Shop Fabrication Material</u>: Materials furnished by the AECOM Defendants and/or third parties under their control were delivered late, were missing item(s), and contained errors in fabrication, which directly impacted the progress, sequence, and cost of construction;

g. <u>Contract Maladministration</u>: During the AECOM Defendants' management and administration of the Project, the AECOM Defendants failed to coordinate and manage the sequencing and flow of work, resulting in extensive delays, work stoppages, and inefficiencies, which forced JH Kelly to perform additional work to resolve the conflicts and changed conditions;

h. <u>Differing Site Conditions</u>: The presence of large rocks and boulders disrupted JH Kelly's foundation work and progress on JH Kelly's underground work at the compressor building, in addition to its underground piping and electrical site utility work, which directly impacted the progress, sequence, and cost of construction;

i. <u>Hydro Vacuum Requirements</u>: Contrary to the AECOM Defendants' instructions at the time JH Kelly submitted its Proposal, JH Kelly was directed to use hydro vacuum excavation in place of mechanical excavation, which directly impacted the progress, sequence, and cost of construction;

j. <u>Base and Corner Trim and Flashing Fabrication Errors</u>: The AECOM Defendants and/or third parties under their control defectively fabricated the

-12-

COMPLAINT

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

99802670.8 0034592- 00012

1     base permitted flashing at several buildings, which directly impacted the

2     progress, sequence, and cost of construction;

3     k.   Missing Fire Coating/Fireproofing to Materials: The AECOM Defendants

4          and/or third parties under their control did not provide the required fire coating

5          on the building steel of Valve Houses 1 and 2, which directly impacted the

6          progress and cost of construction;

7     l.   Door and Frame Location Conflicts: The AECOM Defendants did not properly

8          specify all door and frame locations at the Project, which directly impacted the

9          progress and cost of construction;

10    m.   Late Delivery of the Generator: The AECOM Defendants delivered and set a

11         generator and associated components on or about September 12, 2017, six

12         months later than the planned date of March 8, 2017, which directly impacted

13         the progress and cost of construction;

14    n.   Removal of Security and Communications Conduit: JH Kelly encountered

15         several instances where existing security or communication conduits had to be

16         removed, which directly impacted the progress and cost of construction;

17    o.   Delayed Water Tank Installation: The AECOM Defendants and/or third parties

18         under their control were late in delivering a water tank for installation at the

19         fire water pump building, which directly impacted the progress and cost of

20         construction;

21    p.   Delayed Design for Rebar and Anchor Bolt Procurement: The AECOM

22         Defendants and/or third parties under their control were late in delivering rebar

23         and anchor bolt design for installation at the fire water pump building, which

24         directly impacted the progress and cost of construction; and

25    q.   Disjointed Construction Management: The AECOM Defendants switched

26         construction managers midstream, on or about July 30, 2017, and replaced

27         their entire Project team throughout the course of the Project, which resulted in

28         JH Kelly being forced to re-answer the same questions, re-submit the same

-13-

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

COMPLAINT

99802670.8 0034592- 00012

1  documentation, and adjust to a new team and new approach, all of which

2  impacted the progress and cost of construction, and largely stopped the

3  approval of pending change orders.

4      39.    As a result of the AECOM Defendants' delayed and fragmented issuance of the

5  IFC Electrical and other IFC drawings, mismanagement and maladministration of the Project,

6  lack of transparency, late and incomplete procurement of permits, late procurement of materials,

7  and procurement of defective materials, and the multitude of other issues with the Project, as set

8  forth herein, JH Kelly was forced to perform massive additional work over a far longer period

9  than planned, and incurred substantial damages.

10      40.    JH Kelly timely submitted CORs for all of the foregoing additional work, changed

11  work, and resulting damages. JH Kelly also prepared, at the direction of the AECOM

12  Defendants, Time Impact Analysis ("TIA") reports to support many of its claims, including TIA

13  reports regarding (i) the IFC Electrical, (ii) the AECOM Defendants' late permitting, (iii) the

14  AECOM Defendants' late and defective procurement of piping, valves, and fittings, (iv) the

15  AECOM Defendants' defective coating procurement, (v) the directive that JH Kelly use hydro

16  vacuum excavation, and (vi) JH Kelly's additional electrical excavation. Despite repeated

17  requests, the AECOM Defendants have failed and refused to compensate JH Kelly for its work on

18  the Project, including original contract amounts owed, CORs, retention, schedule, and

19  productivity impacts.

20      41.    The AECOM Defendants are also wrongfully withholding contract funds from JH

21  Kelly's December 2017 and January 2018 invoices, and seeking offsets through bogus

22  backcharges with funds that are lawfully due and owing to JH Kelly on the Project. Specifically,

23  the AECOM Defendants are wrongfully withholding (i) $750,000 from JH Kelly based on

24  PG&E's assessment of $1,500,000 in liquidated damages against the AECOM Defendants for the

25  AECOM Defendants' failure to meet the Project substantial completion deadline, (ii) $1,414,500

26  from JH Kelly based on delay damages allegedly attributable to JH Kelly, (iii) $813,259 from JH

27  Kelly based on the "Valve Strike" event for which a third party is wholly responsible, and (iv)

28  $300,000 for extra work performed by JH Kelly to paint existing aboveground piping and

-14-

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

COMPLAINT

99802670.8 0034592- 00012

1    buildings. The AECOM Defendants' withholdings are improper because, among other things, the

2    delays at issue are entirely attributable to the AECOM Defendants, the withholding contradicts

3    their prior admissions that JH Kelly is not responsible for the delays to the Project Schedule, and

4    the AECOM Defendants did not provide adequate evidence or other information to support the

5    basis for the withholdings.

6        42.    At all times, JH Kelly proactively, diligently, and in good faith did everything

7    reasonably within its power to work with the AECOM Defendants to resolve the myriad of design

8    issues and changes, the late and improper procurement, and the late permits, and to keep the

9    Project moving towards completion. The AECOM Defendants, by contrast, did not act in good

10    faith, failed and refused to promptly respond to CORs, declined to accept responsibility for the

11    delays and cost increases, declined to agree to payment for the indisputably changed work and

12    massive extra work, and ignored JH Kelly's multiple requests for approval of the extra work.

13        43.    In light of the foregoing, including many months of non-payment, JH Kelly would

14    have been justified in suspending work and/or terminating the Subcontract for cause. However,

15    because JH Kelly has never abandoned a project or had a claim made against its performance

16    bond, and because JH Kelly wanted to complete its scope of work, JH Kelly continued to work

17    towards completing the Project, including the full payment of all subcontractors, vendors and

18    employees, to the significant benefit of the AECOM Defendants. JH Kelly is currently owed

19    approximately $26,402,479.89 (plus interest, costs, attorneys' fees, and penalties), as follows:

20        a.   The AECOM Defendants owe JH Kelly $6,839,697.89 for invoiced contract

21             amounts, including amounts wrongfully withheld, as follows:

22              i.    JH Kelly Invoice No. MD 200101 in the amount of $1,587,483.56;

23             ii.    JH Kelly Invoice No. MD 202353 in the amount of $1,690,275.55;

24            iii.    JH Kelly Invoice No. MD 204418 in the amount of $2,053,311.95;

25            iv.    JH Kelly Invoice No. MD 205983 in the amount of $506,321.50;

26             v.    JH Kelly Invoice No. MD 208892 in the amount of $86,880.35;

27            vi.    Release of retention withheld in the amount of $915,424.98;

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

99802670.8 0034592- 00012

-15-

COMPLAINT

Case: 19-30088    Doc# 873    Filed: 03/01/19    Entered: 03/14/19 10:31:43    Page 26 of 30

b. The AECOM Defendants owe JH Kelly $9,562,782 for pending CORs, as set forth in more detail in **Exhibit B**; and

c. The AECOM Defendants owe JH Kelly an amount currently estimated at $10,000,000, to be proven at trial, for schedule and productivity impacts on the Project.

44. On or about June 28, 2018, JH Kelly demobilized from the Project site after successfully completing its scope of work on the Project.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

45. JH Kelly realleges and incorporates by this reference, as if set forth in full herein, the allegations in paragraphs 1 through 44 above.

46. JH Kelly has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Subcontract.

47. The AECOM Defendants failed to pay their obligations under the Subcontract.

48. The AECOM Defendants are in breach of the Subcontract and have caused damages to JH Kelly in the amounts set forth in paragraph 43 above, or an amount to be proven at the time of trial, plus interest, penalties, and attorneys' fees and costs to the extent allowable by law.

Wherefore, JH Kelly seeks relief as set forth in the Prayer for Relief.

## SECOND CAUSE OF ACTION

### (Breach of Contract/Total Cost or Modified Total Cost Recovery)

49. JH Kelly realleges and incorporates by this reference, as if set forth in full herein, the allegations in paragraphs 1 through 48 above.

50. JH Kelly's scope of work under the Subcontract has been altered by the AECOM Defendants' changes so significantly that the final Project was significantly different from the original Project.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

-16-

COMPLAINT

99802670.8 0034592- 00012

51.    As a result of the AECOM Defendants' changes to the Project, it is not practical to prove the actual additional costs caused by each individual change demanded by the AECOM Defendants.

52.    JH Kelly's original Proposal that was accepted by the AECOM Defendants was reasonable.

53.    JH Kelly's actual costs on the Project were reasonable.

54.    JH Kelly was not responsible for incurring the additional costs on the Project without compensation from the AECOM Defendants.

55.    As a result of the substantial changes to JH Kelly's scope of work on the Project, JH Kelly is entitled to recover its total costs or modified total costs for its performance of work on the Project, minus Subcontract amounts paid, in the amounts set forth in paragraph 43 above, or an amount to be proven at the time of trial, plus interest, penalties, and attorneys' fees and costs to the extent allowable by law.

Wherefore, JH Kelly seeks relief as set forth in the Prayer for Relief.

### THIRD CAUSE OF ACTION

**(Breach of Implied Warranty (Adequacy of Plans and Specifications))**

56.    JH Kelly realleges and incorporates by this reference, as if set forth in full herein, the allegations in paragraphs 1 through 55 above.

57.    Under the Subcontract, the AECOM Defendants were solely responsible for design and engineering activities, and JH Kelly had no responsibility for design. As a matter of law, the AECOM Defendants had the obligation to provide plans and specifications that were timely, adequate, complete, and sufficient to allow JH Kelly to construct the Project as intended when the Project was bid and the Subcontract was executed. At the time the AECOM Defendants accepted JH Kelly's Proposal and awarded the Subcontract to JH Kelly, the AECOM Defendants impliedly warranted the adequacy, sufficiency, and completeness of the plans and specifications for purposes of bidding and performing construction of the Project.

58.    The plans, specifications, drawings, and other design and Project documents upon which JH Kelly bid were, in fact, late, inadequate, inaccurate, and incomplete. Moreover, the

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

COMPLAINT

99802670.8 0034592- 00012

1  AECOM Defendants failed to timely remedy the defective plans and specifications and failed to

2  timely deliver the corrected IFC drawings, all of which constitute material and substantial

3  breaches of the implied warranty of the adequacy of plans and specifications.

4       59.     As a direct, proximate, and foreseeable result of the AECOM Defendants' breach

5  of the implied warranty of the adequacy of the plans and specifications, JH Kelly incurred

6  significant extra and unanticipated costs and damages, including, but not limited to, disruption

7  and delay in completion of its work. JH Kelly has been damaged in an amount to be proven at the

8  time of trial, which is a portion of the amounts set forth in paragraph 43 above, plus interest,

9  penalties, and attorneys' fees and costs to the extent allowable by law.

10       Wherefore, JH Kelly seeks relief as set forth in the Prayer for Relief.

11                          **FOURTH CAUSE OF ACTION**

12         **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

13       60.     JH Kelly realleges and incorporates by this reference, as if set forth in full herein,

14  the allegations in paragraphs 1 through 59 above.

15       61.     Implied in the Subcontract is a covenant of good faith and fair dealing to which the

16  AECOM Defendants are bound. The covenant requires the AECOM Defendants to refrain from

17  any action that would impair the benefits that JH Kelly has a right to expect from the Subcontract.

18       62.     As alleged herein, the AECOM Defendants breached the covenant of good faith

19  and fair dealing by, among other things, their failure and refusal to timely and properly manage

20  and administer the Project; their failure to address and respond to design issues; their refusal to

21  properly and timely respond to CORs; their refusal to pay JH Kelly for both its original and extra

22  work that was directed by the AECOM Defendants; their refusal to provide JH Kelly with timely

23  updates regarding changes to the Project Schedule, including, but not limited to, changes to the

24  delivery dates for the IFC drawings, and the delivery dates for materials; their failure to pay even

25  undisputed amounts owing to JH Kelly in an effort to financially burden JH Kelly and in an

26  attempt to interfere with JH Kelly's relationships with its subcontractors; and their general failure

27  and refusal to negotiate or deal in good faith with JH Kelly.

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

99802670.8 0034592- 00012

-18-

COMPLAINT

63.     As a proximate result of the AECOM Defendants' breaches, JH Kelly has been damaged in an amount to be proven at the time of trial, which is a portion of the amounts set forth in paragraph 43 above,, plus interest, penalties, and attorneys' fees and costs to the extent allowable by statute.

Wherefore, JH Kelly seeks relief as set forth in the Prayer for Relief.

## FIFTH CAUSE OF ACTION

### (*Quantum Meruit*/Abandonment of Contract)

64.     JH Kelly realleges and incorporates by this reference, as if set forth in full herein, the allegations in paragraphs 1 through 63 above.

65.     The AECOM Defendants imposed upon JH Kelly an excessive number of changes such that it can fairly be said that JH Kelly's scope of work under the Subcontract was drastically and cardinally altered.

66.     The changes imposed upon JH Kelly materially increased JH Kelly's costs and caused performance of the work on the Project to be done under disadvantageous circumstances.

67.     The scope of work undertaken by JH Kelly greatly exceeded that called for under the Subcontract, and the final Project was materially different from the contracted work.

68.     As a result of the substantial changes to JH Kelly's scope of work on the Project, the AECOM Defendants have abandoned the Subcontract, and JH Kelly is entitled to recover the reasonable value of the labor, services, and materials supplied on the Project, in an amount to be proven at the time of trial, but estimated at $26,000,000, plus interest, penalties, and costs to the extent allowable by law.

Wherefore, JH Kelly seeks relief as set forth in the Prayer for Relief.

## SIXTH CAUSE OF ACTION

### (Violation of Prompt Payment Laws [Business and Professions Code § 7108.5 and/or Other Applicable Code Section(s)])

69.     JH Kelly realleges and incorporates by this reference, as if set forth in full herein, the allegations in paragraphs 1 through 68 above.

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

COMPLAINT

99802670.8 0034592- 00012