**8.5     Subcontractor's Right to Terminate For Cause.**

**8.5.1**   Subcontractor, in addition to any other rights and remedies afforded under the Contract Documents or at law, may terminate the Agreement for cause in accordance with Section 8.5.2 below if Design-Builder fails to cure the problems set forth in Section 8.4.1 above within thirty (30) days after Subcontractor has stopped the work.

**8.5.2**   Upon the occurrence of the event set forth in Section 8.5.1 above, Subcontractor may provide written notice to Design-Builder that it intends to terminate the Agreement unless the problem cited is cured, or commenced to be cured, within seven (7) days of Design-Builder's receipt of such notice. If Design-Builder fails to cure, or reasonably commence to cure, such problem, then Subcontractor may give a second written notice to Design-Builder of its intent to terminate within an additional seven (7) day period. If Design-Builder, within such second seven (7) day period, fails to cure, or reasonably commence to cure, such problem, then Subcontractor may declare the Agreement terminated for default by providing written notice to Design-Builder of such declaration. In such case, Subcontractor shall be entitled to recover in the same manner as if Design-Builder had terminated this Agreement for its convenience under Section 8.2 of the Agreement, plus any attorney's fees or costs incurred in defense of claims.

**8.6     Bankruptcy of Design-Builder or Subcontractor.**

**8.6.1**   If either Design-Builder or Subcontractor institutes or has instituted against it a case under the United States Bankruptcy Code (such party being referred to as the "Bankrupt Party"), such event may impair or frustrate the Bankrupt Party's ability to perform its obligations under the Contract Documents. Accordingly, should such event occur:

**8.6.1.1** The Bankrupt Party, its trustee or other successor, shall furnish, upon request of the non-Bankrupt Party, adequate assurance of the ability of the Bankrupt Party to perform all future material obligations under the Contract Documents, which assurances shall be provided within ten (10) days after receiving notice of the request; and

**8.6.1.2** The Bankrupt Party shall file an appropriate action within the bankruptcy court to seek assumption or rejection of the Agreement within sixty (60) days of the institution of the bankruptcy filing and shall diligently prosecute such action.

**8.6.1.3** If the Bankrupt Party fails to comply with its foregoing obligations, the non-Bankrupt Party shall be entitled to request the bankruptcy court to reject the Agreement, declare the Agreement terminated and pursue any other recourse available to the non-Bankrupt Party under this Article 8.

**8.6.2**   The rights and remedies under Section 8.6.1 above shall not be deemed to limit the ability of the non-Bankrupt Party to seek any other rights and remedies provided by the Contract Documents or by law, including its ability to seek relief from any automatic stays under the United States Bankruptcy Code.

## Article 9

### Representatives of the Parties

**9.1     Design-Builder's Representatives.**

**9.1.1**   Design-Builder designates the individual listed below as its Senior Representative ("Design-Builder's Senior Representative"), which individual has the authority and responsibility

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A
Page 27 of 41

for avoiding and resolving disputes under Section 13.4 of the Agreement: *(Identify individual's name, title, address and telephone numbers)*

Shawn Kelly
Vice President
300 Lakeside Drive, Suite 400
Oakland, CA 94612
(858) 775-6523

9.1.2   Design-Builder designates the individual listed below as its Design-Builder's Representative, which individual has the authority and responsibility set forth in Section 3.2 of the Agreement: *(Identify individual's name, title, address and telephone numbers)*

Steve Petto
Associate Vice President
300 Lakeside Drive, Suite 400
Oakland, CA 94612
(510) 847-5008

9.2     **Subcontractor's Representatives.**

9.2.1   Subcontractor designates the individual listed below as its Senior Representative ("Subcontractor's Senior Representative"), which individual has the authority and responsibility for avoiding and resolving disputes under Section 13.4 of the Agreement: *(Identify individual's name, title, address and telephone numbers)*

Mason Evans
President
2311 E. 1st Street
Vancouver, WA 98661
360-905-1387

9.2.2   Subcontractor designates the individual listed below as its Subcontractor's Representative, which individual has the authority and responsibility set forth in Section 2.1.2 of the Agreement: *(Identify individual's name, title, address and telephone numbers)*

Steve Lennon
Senior Project Manager
2311 E. 1st Street
Vancouver, WA 98661
360-905-1372

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A
Page 28 of 41

# Article 10

## Insurance and Bonds

**10.1    Subcontractor's Insurance Requirements.**

**10.1.1** Subcontractor is responsible for procuring and maintaining, from insurance companies authorized to do business in the state in which the Project is located, the insurance coverages set forth in the **Exhibits A, A1 and A2** to this Agreement, with the minimum ratings set forth in said Exhibits, for certain claims which may arise from or out of the performance of this Agreement and obligations under the Contract Documents.

**10.1.2** Subcontractor shall require its Sub-Subcontractors to procure and maintain, from insurance companies authorized to do business in the state in which the Project is located, the insurance coverages set forth in the Insurance Exhibit.

**10.1.3** Subcontractor's and its Sub-Subcontractors' insurance coverage set forth in the Insurance Exhibit shall specifically delete any design-build or similar exclusions that could compromise coverages because of the design-build delivery of the Project.

**10.1.4** Prior to commencing any services hereunder, Subcontractor shall provide Design-Builder with certificates evidencing that (i) all insurance obligations required by the Contract Documents are in full force and in effect and will remain in effect for the duration required by the Contract Documents and (ii) no insurance coverage will be canceled by the insurer unless at least thirty (30) days prior written notice is given to Design-Builder by the Subcontractor or its Sub-Subcontractor, except for cancellation due to non-payment of premium.

**10.1.5** Except for Workers' Compensation, Employer's Liability, and Professional Liability Insurance, the insurance policies required herein shall list Design-Builder, and any other entities required by the Contract Documents, if any, as an additional insured.

**10.1.6** If any of the foregoing coverages are required to remain in force after final payment, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment.

**10.2    Property Insurance.**

**10.2.1** In accordance with the Contract Documents, Owner or Design-Builder shall procure and maintain property insurance upon the entire Project.

**10.3    Waiver of Subrogation.**

**10.3.1** Design-Builder and Subcontractor waive against each other and Owner, Sub-Subcontractors, Design Consultants, Owner's or Design-Builder's separate contractors, agents and employees of each and all of them, all damages covered by property insurance provided herein, except such rights as they may have to the proceeds of such insurance. Design-Builder and Subcontractor shall, where appropriate, require similar waivers of subrogation from Design Consultant and Sub-Subcontractors and separate contractors of Design-Builder, and shall require each of them to include similar waivers in their contracts. These waivers of subrogation shall not contain any restriction or limitation that will impair the full and complete extent of its applicability to any person or entity unless agreed to in writing prior to the execution of this Agreement.

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A
Page 29 of 41

**10.4**     **Bonds and Other Performance Security.**

**10.4.1** Subcontractor shall provide and Design-Builder shall reimburse Subcontractor for Performance and Payment Bonds each in the amount of one hundred percent (100%) of the Contract Price ("Bonds") in the form prescribed in **Exhibit F**. The Bonds shall be delivered to Design-Builder not later than ten (10) days after award of this Agreement. Subcontractor will not be issued the notice-to-proceed until after Design-Builder receives the Bonds. Such Bonds shall be executed as surety by an entity acceptable to Design-Builder and authorized to issue surety bonds in the state where the Work is to be performed. Subcontractor is solely liable for any delays caused by its failure to provide the Bonds.

# <u>Article 11</u>

## Indemnification

**11.1**     **Patent and Copyright Infringement.**

**11.1.1** Subcontractor shall defend any action or proceeding brought against Owner or Design-Builder based on any claim that the Work, or any part thereof, or the operation or use of the Work or any part thereof, constitutes infringement of any United States patent or copyright, now or hereafter issued. Design-Builder shall give prompt written notice to Subcontractor of any such action or proceeding and will reasonably provide authority, information and assistance in the defense of same. Subcontractor shall indemnify and hold harmless Owner and Design-Builder from and against all damages and costs, including but not limited to attorneys' fees and expenses awarded against Owner or Design-Builder in any such action or proceeding. Subcontractor agrees to keep Design-Builder informed of all developments in the defense of such actions.

**11.1.2** If Owner is enjoined from the operation or use of the Work, or any part thereof, as the result of any patent or copyright suit, claim, or proceeding, Subcontractor shall at its sole expense take reasonable steps to procure the right to operate or use the Work. If Subcontractor cannot so procure such right within a reasonable time, Subcontractor shall promptly, at Subcontractor's option and at Subcontractor's expense, (i) modify the Work so as to avoid infringement of any patents, or copyrights, or (ii) replace said Work with Work that does not infringe or violate any such patent or copyright.

**11.1.3** Sections 11.1.1 and11.1.2 above shall not be applicable to any suit, claim or proceeding based on infringement or violation of a patent or copyright (i) relating to a particular process or product of a particular manufacturer specified by Owner or Design-Builder or (ii) arising from modifications to the Work by Owner or Design-Builder after acceptance of the Work.

**11.1.4** The obligations set forth in this Section 11.1 shall constitute the sole agreement between the parties relating to liability for infringement or violation of any patent or copyright.

**11.2**     **Intentionally Omitted.**

**11.3**     **Payment Claim Indemnification.**

**11.3.1** Providing that Design-Builder is not in breach of its contractual obligation to make payments to Subcontractor for the Work, Subcontractor shall indemnify, defend and hold harmless Owner and Design-Builder from any claims or mechanic's liens brought against Owner, Design-Builder, or against the Project as a result of the failure of Subcontractor, or those for whose acts it is responsible, to pay for any services, materials, labor, equipment, taxes or other items or obligations furnished or incurred for, or in connection with the Work. Within three (3)

Case: 19-30088     Doc# 873-2     Filed: 03/01/19     Entered: 03/14/19 10:31:43     Page 4
of 30

days of receiving written notice from Design-Builder that such a claim or mechanic's lien has been filed, Subcontractor shall commence to take the steps necessary to discharge said claim or lien, including, if necessary, the furnishing of a mechanic's lien bond. If Subcontractor fails to do so, Design-Builder will have the right to discharge the claim or lien and hold Subcontractor liable for costs and expenses incurred, including attorneys' fees.

**11.4**     **Subcontractor's General Indemnification.**

**11.4.1**   Subcontractor, to the fullest extent permitted by law, shall indemnify, hold harmless and defend Owner, Design-Builder, their officers, directors, employees and agents from and against any and all causes of action, demands, claims, losses, damages, and liabilities whatsoever, including attorneys' fees and expenses, including, but not limited to, claims for bodily injury, sickness or death, and property damage or destruction resulting from the acts, errors or omissions of Subcontractor, Sub-Subcontractors, anyone employed directly or indirectly by any of them or anyone for whose acts any of them may be liable. Subcontractor's provision of indemnification shall be limited to damages to property and personal injury and shall be limited solely to the extent of the Subcontractor's negligence.

**11.4.2**   If an employee of Subcontractor, anyone employed directly or indirectly by Subcontractor or anyone for whose acts any of them may be liable has a claim against any party indemnified pursuant to Section 11.4.1 above, Subcontractor's indemnity obligation set forth in Section 11.4.1 above shall not be limited by any limitation on the amount of damages, compensation or benefits payable by or for Subcontractor, Sub-Subcontractors, or other entity under any employee benefit acts, including workers' compensation or disability acts.

**11.4.3**   Whenever any suit or other proceeding which involves any matter with respect to which the indemnification provisions of this Section 11.4 are applicable shall be brought against Owner, Design-Builder, or any of their officers, directors, employees, and agents, Subcontractor, to the extent of its negligence, shall upon receipt of timely notice of the institution of such suit or other proceedings assume the defense thereof and defend the same at Subcontractor's own expense and pay any and all costs, charges, attorneys' fees and other expenses and any and all judgments that may be incurred by or obtained against Owner, Design-Builder, or any of their officers, directors, employees, and agents, in such suits or other proceedings, and if any judgment or other lien shall be placed upon or obtained against the property of Owner, Design-Builder, or any of their officers, directors, employees, and agents in or as a result of such suits or other proceedings, Subcontractor shall at once cause the same to be released and discharged by giving bond or otherwise. Owner and Design-Builder shall have the right to approve counsel retained by Subcontractor and to participate in and be informed of the status of any suit or other proceeding.

**11.5**     **Intentionally Omitted.**

# **Article 12**

## **Changes to the Contract Price and Time**

**12.1**     **Owner-Generated Changes.**

**12.1.1**   If Owner issues changes affecting the Work, Subcontractor agrees, if directed by Design-Builder, to meet with Design-Builder and Owner to review and discuss the changes. Subcontractor shall only be entitled to adjustments in its Contract Price and the times for

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

completion of the Work attributable to such Owner-generated changes to the extent Design-Builder actually receives such adjustments from Owner. If Subcontractor disputes the adjustment, such dispute shall be resolved pursuant to Section 13.3 of this Agreement. Notwithstanding anything to the contrary in this Article, in order to be entitled to a Change Order, Subcontractor must provide Design-Builder with sufficient details of its proposed Change Order cost breakdown allowing Design-Builder to evaluate the proposed Change Order, or as may otherwise be required or requested by Owner or as required by the EPC Agreement.

**12.2    Design-Builder Generated Changes.**

**12.2.1**  Changes to the Work issued by Design-Builder shall be governed by the provisions set forth in the following sections of this Article 12.

**12.3    Change Orders.**

**12.3.1** A Change Order is a written instrument issued after execution of the Agreement signed by Design-Builder and Subcontractor, stating their agreement upon all of the following:

**12.3.1.1**  The scope of the change in the Work;

**12.3.1.2**  The amount of the adjustment to the Contract Price;

**12.3.1.3**  The extent of the adjustment to the times for completion of the Work; and

**12.3.1.4**  Such other details, information, or items as may be required or requested by Design-Builder or Owner.

**12.3.2**  All changes in the Work authorized by applicable Change Order shall be performed under the applicable conditions of the Contract Documents. Subcontractor will comply with the change request procedures set forth in the EPC Agreement, including the provision of timely notice sufficient to allow Design-Builder to comply with the notice requirements of the EPC Agreement. Design-Builder and Subcontractor shall negotiate, in good faith and as expeditiously as possible, the appropriate adjustments for such changes.  The parties shall mutually agree upon any changes to scope of Work, schedule or price.  In the event that cumulative change orders equal or exceed ten percent (10%) of the Contract Price, Subcontractor reserves the right to recover additional general conditions and applicable overhead expense.  Subcontractor reserves all rights and remedies for damages and losses incurred by reason of delay by others.

**12.4    Work Change Directives.**

**12.4.1**  A Work Change Directive is a written order prepared and signed by Design-Builder directing a change in the Work prior to agreement on an adjustment in the Contract Price and/or the times for completion of the Work.

**12.4.2**  Design-Builder and Subcontractor shall negotiate, in good faith and as expeditiously as possible, the appropriate adjustments for the Work Change Directive. Upon reaching an agreement, the parties shall prepare and execute an appropriate Change Order reflecting the terms of the agreement.

**12.5    Minor Changes in the Work.**

**12.5.1**  Minor changes in the Work are changes that do not involve an adjustment in the Contract Price and/or times for completion of the Work and do not materially and adversely affect the

Page **27**

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A
Page 32 of 41

Work, including the design, quality, performance and workmanship required by the Contract Documents. Design-Builder may make minor changes in the Work consistent with the intent of the Contract Documents, provided, however, that Design-Builder shall promptly inform Subcontractor of any such changes.

**12.6     Contract Price Adjustment.**

**12.6.1**  The increase or decrease in Contract Price resulting from a change in the Work shall be determined by one or more of the following methods:

**12.6.1.1**  Unit prices set forth in the Agreement or as subsequently agreed between the parties;

**12.6.1.2**  A mutually accepted, lump sum, properly itemized and supported by sufficient substantiating data to permit evaluation by Design-Builder;

**12.6.1.3**  Costs, fees and any other markups set forth in the Agreement; and

**12.6.1.4**  If an increase or decrease cannot be agreed to as set forth in items 12.6.1.1 through 12.6.1.3 above and Design-Builder issues a Work Change Directive, the cost of the change of the Work shall be determined by the reasonable expense and savings in the performance of the Work resulting from the change, including a reasonable overhead and profit, as may be set forth in this Agreement. If the net result of both additions and deletions to the Work is an increase in the Contract Price, reasonable overhead and profit shall be calculated on the basis of the net increase to the Contract Price. Subcontractor shall maintain a documented, itemized accounting evidencing the expenses and savings associated with such changes.

**12.6.2**  If unit prices are set forth in the Contract Documents or are subsequently agreed to by the parties, but application of such unit prices will cause substantial inequity to Design-Builder or Subcontractor because of differences in the character or quantity of such unit items as originally contemplated, such unit prices shall be equitably adjusted solely in accordance with the EPC Agreement.

**12.6.3**  If Design-Builder and Subcontractor disagree upon whether Subcontractor is entitled to be paid for any services required by Design-Builder, or if there are any other disagreements over the scope of Work or proposed changes to the Work or the times for completion of the Work, Design-Builder and Subcontractor shall resolve the disagreement pursuant to Article 13 hereof. As part of the negotiation process, Subcontractor shall furnish Design-Builder with a good faith estimate of the costs to perform the disputed services and the increase or decrease in the time to complete the changes to the Work in accordance with Design-Builder's interpretations. If the parties are unable to agree and Design-Builder expects Subcontractor to perform the services in accordance with Design-Builder's interpretations, Subcontractor shall proceed to perform the disputed services, conditioned upon Design-Builder issuing a written order to Subcontractor (i) directing Subcontractor to proceed and (ii) specifying Design-Builder's interpretation of the services that are to be performed.

**12.7     Emergencies.**

**12.7.1**  In any emergency affecting the safety of persons and/or property, Subcontractor shall act, at its discretion, to prevent threatened damage, injury or loss. Any change in the Contract

Price and/or times for completion of the Work on account of emergency work shall be determined as provided in this Article 12.


# Article 13

## Contract Adjustments and Disputes

**13.1　　Requests for Contract Adjustments and Relief.**

**13.1.1** If either Subcontractor or Design-Builder believes that it is entitled to relief against the other for any event arising out of or related to the Work or the Project, such party shall provide written notice to the other party of the basis for its claim for relief. Such notice shall be in accordance with specific notice requirements contained in applicable sections of the Contract Documents and, if possible, be made prior to incurring any cost or expense. Subcontractor shall provide Design-Builder written notice of claims for which Owner or the Design-Builder may be responsible in sufficient time for Design-Builder to meet its notice requirements to Owner set forth in the Contract Documents. In the absence of any specific notice requirement, written notice shall be given within a reasonable time, not to exceed ten (10) days, after the occurrence giving rise to the claim for relief or after the claiming party reasonably should have recognized the event or condition giving rise to the request, whichever is later. Such notice shall be in accordance with the Contract Documents and shall include sufficient information to advise the other party of the circumstances giving rise to the claim for relief, the specific contractual adjustment or relief requested and the basis of such request. Subcontractor shall comply with all documentation requirements set forth in the EPC Agreement when submitting its claim to Design-Builder.

**13.2　　Dispute Avoidance and Resolution.**

**13.2.1** The parties are fully committed to working with each other throughout the Project and agree to communicate regularly with each other at all times so as to avoid or minimize disputes or disagreements. If disputes or disagreements do arise, Subcontractor and Design-Builder each commit to resolving such disputes or disagreements in an amicable, professional and expeditious manner so as to avoid unnecessary losses, delays and disruptions to the Work.

**13.3　　Disputes Involving Owner.**

**13.3.1** To the extent a claim, dispute or controversy arises out of, or relates to, problems caused by Owner or for which Owner is responsible ("Owner Disputes"), such Owner Disputes shall be resolved pursuant to the dispute resolution clause set forth in the EPC Agreement. Both Design-Builder and Subcontractor agree to cooperate in the presentation and prosecution or defense of Owner Disputes. If, after a request for an extension of time or additional compensation from Subcontractor, Design-Builder believes that the event causing the delay or additional compensation is the responsibility of Owner, then Design-Builder will cooperate with and assist Subcontractor in presenting a request for an extension of time or additional compensation to Owner. Notwithstanding the above, Design-Builder reserves the right not to submit a claim to Owner. In such cases, the claim shall be resolved pursuant to Section 13.4.

**13.3.2** Notwithstanding any other provisions herein to the contrary, Design-Builder and Subcontractor each agree to accept the relief as to a time extension or additional compensation

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

obtained from Owner, if any, as well as all other aspects of the final decision following appeal or the expiration of the time for appeal, as full and final resolution of any Owner Dispute.

**13.3.3** If Design-Builder asserts a claim against Owner involving Subcontractor, each party shall bear its own costs for outside counsel and third-party consultants retained to prosecute claims against Owner and for any other litigation costs. Each party shall present its portion of the claim to Owner.

**13.4    Disputes Not Involving Owner.**

**13.4.1** For any claim, dispute or controversy not arising out of, or relating to, problems caused by Owner or for which Owner is responsible, Subcontractor and Design-Builder will first attempt to resolve such claim, dispute or controversy at the field level through discussions between Design-Builder's Representative and Subcontractor's Representative.

**13.4.2** If a claim, dispute or controversy cannot be resolved through Section 13.4.1, Design-Builder's Senior Representative and Subcontractor's Senior Representative, upon the request of either party, shall meet as soon as conveniently possible, but in no case later than thirty (30) days after such a request is made, to attempt to resolve such claim, dispute or controversy. Five (5) days prior to any meetings between the Senior Representatives, the parties will exchange relevant information that will assist the parties in resolving the claim, dispute or controversy.

**13.4.3** If after meeting the Senior Representatives determine that the claim, dispute or controversy cannot be resolved on terms satisfactory to both parties, the parties shall submit within thirty (30) days of the conclusion of the meeting by the Senior Representatives the claim, dispute or controversy to non-binding mediation. The mediation shall be conducted by a mutually agreeable impartial mediator, or if the parties cannot so agree, a mediator designated by the American Arbitration Association ("AAA") pursuant to its Construction Industry Mediation Rules. The mediation will be governed by and conducted pursuant to a mediation agreement negotiated by the parties or, if the parties cannot so agree, by procedures established by the mediator. Unless otherwise mutually agreed by Design-Builder and Subcontractor and consistent with the mediator's schedule, the mediation shall commence within ninety (90) days of the submission of the dispute for mediation. Persons with authority to resolve the dispute shall be present at the mediation.

**13.6    Duty to Continue Performance.**

**13.6.1** Unless provided to the contrary in the Contract Documents, Subcontractor shall continue to perform the Work and Design-Builder shall continue to satisfy its undisputed payment obligations to Subcontractor, pending the final resolution of any dispute or disagreement between Design-Builder and Subcontractor.

**13.7    CONSEQUENTIAL DAMAGES.**

**13.7.1** NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NEITHER DESIGN-BUILDER NOR SUBCONTRACTOR SHALL BE LIABLE TO THE OTHER FOR ANY CONSEQUENTIAL LOSSES OR DAMAGES, WHETHER ARISING IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO LOSSES OF USE, PROFITS, BUSINESS, REPUTATION OR FINANCING.

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

# Article 14

## Miscellaneous

**14.1    Assignment.**

**14.1.1** Neither Subcontractor nor Design-Builder shall, without the written consent of the other, assign, transfer or sublet any portion or part of the Work or the obligations required by the Contract Documents.

**14.2 ,  Successorship.**

**14.2.1** Design-Builder and Subcontractor intend that the provisions of the Contract Documents are binding upon the parties, their employees, agents, heirs, successors and assigns.

**14.3    Governing Law.**

**14.3.1** The Agreement and all Contract Documents shall be governed by the laws of the place of the Project, without giving effect to its conflict of law principles.

**14.4    Severability.**

**14.4.1** If any provision or any part of a provision of the Contract Documents shall be finally determined to be superseded, invalid, illegal, or otherwise unenforceable pursuant to any applicable Legal Requirements or court order, such determination shall not impair or otherwise affect the validity, legality, or enforceability of the remaining provision or parts of the provision of the Contract Documents, which shall remain in full force and effect as if the unenforceable provision or part were deleted.

**14.5    No Waiver.**

**14.5.1** The failure of either Design-Builder or Subcontractor to insist, in any one or more instances, on the performance of any of the obligations required by the other under the Contract Documents shall not be construed as a waiver or relinquishment of such obligation or right with respect to future performance.

**14.6    Headings.**

**14.6.1** The headings used in this Agreement, or any other Contract Document, are for ease of reference only and shall not in any way be construed to limit or alter the meaning of any provision.

**14.7    Notice.**

**14.7.1** Whenever the Contract Documents require that notice be provided to the other party, notice will be deemed to have been validly given (i) if delivered in person to the individual intended to receive such notice, (ii) four (4) days after being sent by registered or certified mail, postage prepaid to the address indicated in the Agreement, or (iii) if transmitted by facsimile, by the time stated in a machine generated confirmation that notice was received at the number of the intended recipient.

Page 31

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A
Page 36 of 41

**14.8 Amendments.**

**14.8.1** The Contract Documents may not be changed, altered, or amended in any way except in writing signed by a duly authorized representative of each party.

**14.9 Survival.**

**14.9.1** Subcontractor's obligations under this Agreement shall not be released and shall specifically survive the completion of all services hereunder by Subcontractor, final payment to Subcontractor, and the termination of this Agreement for any reason.

**14.10 Anti-Bribery**

**14.10.1** Subcontractor agrees to strictly abide by Design-Builder's Anti-Bribery Policy and Procedure, a copy of which is available to Subcontractor upon request, and which is incorporated herein as if set forth in full. Specifically, Subcontractor shall at all times comply with the U.S. Foreign Corrupt Practices Act, the U.K. Bribery Act and any local anti-bribery (or anti-corruption) laws (collectively the "Anti-Bribery Laws"). In accordance with the Anti-Bribery Laws, Subcontractor will not, with the intent to obtain or retain business or any commercial advantage, offer, pay, promise to pay or authorize another to pay any money, make any gift or provide anything of value on behalf of Design-Builder to any foreign official; any foreign political party or official thereof or any candidate for foreign political office; or any person acting in a commercial capacity.

**14.11 Equal Opportunity and Affirmative Action**

**14.11.1** Subcontractor shall comply with all equal employment opportunity and affirmative action requirements promulgated by any governmental authority, including, without limitation, the requirements of the Civil Rights Act of 1964. The provisions of the Equal Opportunity Clauses of Executive Order 11246, (41 CFR 60-1.4), Section 503 of the Rehabilitation Act of 1973, (41 CFR 60-741.5(a)), Section 402 of the Vietnam Era Veterans Readjustment Act of 1974, (41 CFR 60-250.5(a)), and, the Jobs for Veterans Act of 2003, (41 CFR 60-300.5(a)), are hereby incorporated by reference and made a part of this Agreement.

**14.12 Export Regulations**

**14.12.1** The Parties are subject to the export regulations of the United States regarding export and re-export of controlled items, services or technical data from the United States. As part of the express consideration received under this Agreement for access to and/or delivery of any goods, knowledge, information, technical data and/or services from Design-Builder to Subcontractor, Subcontractor agrees that it will not in violation of, or so as to cause any penalty or other liability to Design-Builder under, any applicable U.S. law or regulation export, re-export or otherwise transfer, directly or indirectly, any of Design-Builder's knowledge, information, technical data or other property to which such Subcontractor gains access in connection with this Agreement to any country or person in contravention of the said export regulations, or make any other use of such information or data which, would violate the laws of the United States. Subcontractor shall notify Design-Builder in writing before disclosing to Design-Builder any technical information or data subject to laws restricting export outside the United States. Such notice shall provide a detailed description of the information and identify the applicable laws restricting export.

Page **32**

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A
Page 37 of 41

Case: 19-30088    Doc# 873-2    Filed: 03/01/19    Entered: 03/14/19 10:31:43    Page 11 of 30

**14.13   Financial Assurances**

**14.13.1** If requested by Design-Builder, Subcontractor shall within ten (10) calendar days provide Design-Builder with copies of its most recent annual and quarterly financial statements prepared in accordance with generally accepted accounting principles. Subcontractor will notify Design-Builder immediately of any material adverse change in its financial condition.

**14.14   Independent Contractor**

**14.14.1** Subcontractor represents that it is fully experienced and properly qualified to perform the class of work provided for herein, and that it is properly licensed, equipped, organized, and financed to perform such work. Subcontractor shall act as an independent contractor and not as the agent of Design-Builder in performing the Work, maintaining complete control over and responsibility for its own employees and operations and those of its Sub-Subcontractors.

**14.14.2** No provisions of this Subcontract or any lower-tier subcontract awarded by Subcontractor shall be construed to create any contractual relationship between any such Sub-Subcontractor and Design-Builder, or obligate Design-Builder to pay or be responsible for the payment of any monies to any Sub-Subcontractor.

## Article 15

### Electronic Data

**15.1   Electronic Data.**

**15.1.1** The parties recognize that Contract Documents, including drawings, specifications and three-dimensional modeling (such as Building Information Models) and other Work Product may be transmitted among Design-Builder, Subcontractor and others in electronic media as an alternative to paper hard copies (collectively "Electronic Data"). However, Design-Builder reserves the right to determine and direct the extent to which Electronic Data, if at all, may be used as an alternative to paper hard copies in connection with the Project.

**15.2   Transmission of Electronic Data.**

**15.2.1** Design-Builder shall determine, after consultation with Subcontractor, the software and the format for the transmission of Electronic Data. Each party shall be responsible for securing the legal rights to access the agreed-upon format, including, if necessary, obtaining appropriately licensed copies of the applicable software or electronic program to display, interpret and/or generate the Electronic Data.

**15.2.2** Neither party makes any representations or warranties to the other with respect to the functionality of the software or computer program associated with the electronic transmission of Work Product. Unless specifically set forth in the Agreement, ownership of the Electronic Data does not include ownership of the software or computer program with which it is associated, transmitted, generated or interpreted.

**15.2.3** By transmitting Work Product in electronic form, the transmitting party does not transfer or assign its rights in the Work Product. The rights in the Electronic Data shall be as set forth in Article 4 of the Agreement. Under no circumstances shall the transfer of ownership of Electronic Data be deemed to be a sale by the transmitting party of tangible goods.

**15.3   Electronic Data Protocol.**

---

Page 33

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A
Page 38 of 41

**15.3.1** –The parties acknowledge that Electronic Data may be altered or corrupted, intentionally or otherwise, due to occurrences beyond their reasonable control or knowledge, including but not limited to compatibility issues with user software, manipulation by the recipient, errors in transcription or transmission, machine error, environmental factors, and operator error. Consequently, the parties understand that there is some level of increased risk in the use of Electronic Data for the communication of design and construction information and, in consideration of this, agree, and shall require their independent contractors, Subcontractors and Design Consultants to agree, to the following protocols, terms and conditions set forth in this Section 15.3.

**15.3.2** Electronic Data will be transmitted in the format determined in Section 15.2.1 above, including file conventions and document properties, unless prior arrangements are made in advance in writing.

**15.3.3** The Electronic Data represents the information at a particular point in time and is subject to change. Therefore, the parties shall agree upon protocols for notification by the author to the recipient of any changes which may thereafter be made to the Electronic Data, which protocol shall also address the duty, if any, to update such information if such information changes prior to Final Completion of the Project.

**15.3.4** The transmitting party specifically disclaims all warranties, expressed or implied, including, but not limited to, implied warranties of merchantability and fitness for a particular purpose, with respect to the media transmitting the Electronic Data. However, transmission of the Electronic Data via electronic means shall not invalidate or negate any duties pursuant to the applicable standard of care with respect to the creation of the Electronic Data, unless such data is materially changed or altered after it is transmitted to the receiving party, and the transmitting party did not participate in such change or alteration.

**15.4**   In the event the EPC Agreement contains a provision governing Electronic Data, and there is a conflict between the provision in the Design-Build Agreement and this Article 15, the provision in the EPC Agreement takes precedence.

# Article 16

## Confidential Information

**16.1**   **Confidential and/or Proprietary Information.**

**16.1.1** Confidential Information is defined as information which is determined by the transmitting party to be of a confidential or proprietary nature and: (i) the transmitting party identifies as either confidential or proprietary; (ii) the transmitting party takes steps to maintain the confidential or proprietary nature of the information; and (iii) the document is not otherwise available in or considered to be in the public domain. The receiving party agrees to maintain the confidentiality of the Confidential Information and agrees to use the Confidential Information solely in connection with the Project.

**16.1.2** Subcontractor may receive information from Design-Builder that is either confidential or proprietary to either Design-Builder or to Owner. Such information shall be labeled as confidential and/or proprietary. Subcontractor agrees to maintain the confidential nature of such information and to execute any such additional agreements as may be required by Owner or Design-Builder with respect to such information.

**16.1.3** In the event the EPC Agreement contains a provision governing Confidential Information, and there is a conflict between the provision in the Design-Build Agreement and this Article 16, the provision in the EPC Agreement takes precedence.

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

## Article 17

### Other Provisions

**17.1    Other provisions, if any, are as follows:**
*(Insert any additional provisions, including those that relate to options that might have been selected by Design-Builder and Owner in the Design-Build Agreement related to Warranty Reserves, alternatives to Liquidated Damages, etc. as the parties may deem commercially appropriate.)*

☒      Any claims, disputes, or controversies between the parties arising out of or related to the Agreement, or the breach thereof which have not been resolved in accordance with the procedures set forth in Section 13.4 herein shall be resolved in a court of competent jurisdiction in the state in which the Project is located.

*[remainder of page intentionally left blank – signature page follows]*

---

**Agreement Between Design-Builder and Subcontractor**
**(Where Subcontractor Does Not Provide Design Services)**

Exhibit A
Page 40 of 41

In executing this Agreement, Design-Builder and Subcontractor each individually represents that it has the necessary financial resources to fulfill its obligations under this Agreement, and each has the necessary corporate approvals to execute this Agreement, and perform the Work described herein.

**DESIGN-BUILDER:**                              **SUBCONTRACTOR:**

_AECOM_                                          _JH Kelly LLC_
(Name of Design-Builder)                         (Name of Subcontractor)

_(signature)_                                    _Paul Furth_
(Signature)                                      (Signature)

Printed Name: _SHAWN KELLY_                       Printed Name: _Paul Furth_

Title: _VICE PRESIDENT_                           Title: _CFO, VP_

Date: _10/21/16_                                  Date: _10/21/16_

Agreement Between Design-Builder and Subcontractor
(Where Subcontractor Does Not Provide Design Services)

Exhibit A
Page 41 of 41

# EXHIBIT B

## EXHIBIT B

### Pending Change Order Requests

| COR# | Description | Amount |
|---|---|---|
| 2 | Smart MCCs | ($1,913) |
| 3 | High Resistance Ground Units | $7,987 |
| 4 | N3R Metering Enclosure | $28,380 |
| 5 | Capacitor Bank | $29,510 |
| 12 | Yard Lighting Additions REV1 | $85,753 |
| 14 | Coating of Fittings and Pipe (Fab Shop Only) | $198,954 |
| 24 | RFI 58 response Valve House #2 | $4,716 |
| 31 | Provide electrical support to Tetrad for Fin Fan Work | $6,018 |
| 32 | Purchase Missing AECOM Material | $27,585 |
| 36 | Load and unload damaged MCC | $1,192 |
| 40 | Anode Installation - Cancelled | ($10,537) |
| 44 | Re-work for USSI - G101 piece | $2,789 |
| 45 | Disconnect Security camera and pole removal | $645 |
| 48 | Rework Platform on south side of Turbine | $64,994 |
| 49 | Notch steel and demo and install new piers | $61,852 |
| 53 | Remove and replace siding base trim | $4,390 |
| 55 | SISCORP Auxiliary - Section X Welding at columns | $2,723 |
| 56 | SISCORP Auxiliary Building Rework Cut | $654 |
| 57 | Silencer Base Plate Modifications | $1,591 |
| 58 | Re drill roof Purlin for Aux Building Drawing Revisions | $3,040 |
| 59 | Re-drill canopy steel Aux Building | $1,212 |
| 60 | SISCORP - Aux. Bldg - Notching Canopy A eve strut | $1,969 |
| 61 | SISCORP - Aux. Bldg. - Redrilling Canopy A clip 26CL1 | $1,219 |
| 62 | SISCORP - Aux. Bldg. - Redrill Holes Col. F Girt 101 | $564 |
| 64 | Relocate Existing Silencer Ground Cable | $620 |
| 65 | AECOM New Drawings Issue 8-24-2017 Rework | $87,596 |
| 66 | Time to install temp hangers and build temp spools | $7,010 |
| 67 | Backfill Valve Nesting | $46,057 |
| 68 | SISCORP - Modify window per rep. instructions | $558 |
| 69 | SISCORP - Modify girts at door jams - BC Line | $1,926 |
| 70 | Electrical IFC Reconciliation | $1,196,762 |

99864075.5 0034592-00012

Exhibit B
Page 1 of 6

| 73 | Increase September Outage Support to Actuals | $142,324 |
| 74 | Valve Shelters Reconciliation | $84,710 |
| 75 | Rework Auxiliary Building door frames | $3,066 |
| 76 | Make Opening at Breeze Way | $1,921 |
| 77 | Provide water tanks and transfer pumps for Hydro Water | $84,137 |
| 78 | SISCORP Fuel Gas Building cut/weld clip | $673 |
| 79 | Set Generator in Aux Building | $5,656 |
| 80 | Station Shutdown Over Excavation - Cancelled | ($94,256) |
| 83 | Gas Cooler Conduit Re-Route | $113,006 |
| 84 | Field Sandblast and Coat AECOM supplied pipe fittings, valves | $740,710 |
| 86 | Replace Cathodic Cable and Grounding Revisions Received 9-19 | $13,632 |
| 89 | Seal Gas Filter Drain Valve | $2,080 |
| 93 | Manufactured Building Canopy Revisions (RFI 0352) | $3,644 |
| 100 | Piping - Hanger Revisions; Multiple RFI Responses (327-431) | $168,874 |
| 103 | Winterization of Site | $102,476 |
| 105 | Revised Fire Water Pump House and Fire Tank Ringwall | $76,835 |
| 107 | Access Pads for XFMR and Metering Switch | $2,548 |
| 108 | USSI - Compressor Building - Cut/Weld ladder brackets | $2,217 |
| 109 | Revised Compressor Pendant Light Detail | $44,217 |
| 110 | Pipeline Shutdown Support | $291,746 |
| 111 | Fireproof Blockouts in Auxiliary Building | $39,470 |
| 112 | Cameron Valve Support | $29,406 |
| 121 | RFI 0344 Fuel Gas Building Piping Reroute. | $124,010 |
| 125 | Excavator Stand By Time | $18,274 |
| 127 | VMV7L Photocell Mounting | $8,422 |
| 128 | RSCP*5 Housekeeping Pads | $2,411 |
| 129 | Valve House 1-2 Fixture Substitution | $7,428 |
| 130 | Firewater Pump House Water Tank Heater | $13,656 |
| 131 | Firewater Pipe Heat Trace | $14,306 |
| 132 | Well Pump Electrical | $22,162 |
| 133 | Gas Tube CO-AXIAL Surge Protection Antenna | $11,451 |
| 134 | 24VDC Battery Stand | $1,488 |
| 139 | Instrument Calibration | $34,936 |
| 141 | Valve House 1 & 2 Steel modifications. | $2,620 |
| 144 | Remove and Replace Valves per request from AECOM | $41,567 |

99864075.5 0034592-00012          2

Exhibit B
Page 2 of 6

| 145 | Silencer Piping Modification | $7,805 |
| 149 | Blast & Paint Valve House 1 & 2 Columns - Added 3 HR Wall | $213,705 |
| 150 | Stand-by Generator Fuel Gas Revisions | $13,071 |
| 152 | Existing Rectifier Electrical | $6,898 |
| 153 | PCI's Over Time Charges For W/E 10.8.17 - 11.5.17 | $4,965 |
| 156 | 8P-6 8P-7 Panel Stand Modification | $1,629 |
| 159 | Burney Tap L-401 Excavation - Piping - Coating | $58,010 |
| 160 | RFI 475 & 479 Piping Modifications | $3,132 |
| 163 | Boulders Removal from 08.30.17 thru 09.08.17 | $20,430 |
| 178 | Additional Grounding Test Wells | $15,112 |
| 182 | PB-38 Demo and Conduit Re-Route | $21,254 |
| 183 | Fire Detection - Existing Control Room | $9,221 |
| 184 | HVAC Disconnects, Smoke Dampers and Thermostats | $14,570 |
| 185 | Add shoring to existing slope excavation per PGE | $81,190 |
| 187 | Compressor Roll-up Door Control Conduits | $4,337 |
| 188 | Disconnect Switch for Panel B | $4,137 |
| 189 | Install SOV-199 Line LPFG-157-C-1" | $9,357 |
| 191 | Compressor Drain Extensions | $8,864 |
| 192 | AK-4, AK-5 Access Panel Conduit Re-route | $3,631 |
| 193 | Modify Exhaust Platform | $4,076 |
| 196 | Rev 1C Cable Schedule Changes | $53,320 |
| 197 | 3rd Party Time Impact Analysis for Electrical IFC Reconcile | $25,609 |
| 199 | Modify Foam Generator Platform | $7,253 |
| 200 | Added Generator Conduit and Fuel Train Connection | $9,167 |
| 202 | Existing Control Room Trench Fill | $9,075 |
| 203 | New Gas Cooler Contact Blocks | $1,770 |
| 204 | Commissioning Support | $357,988 |
| 206 | Added Conduit For P-DC-01 | $2,269 |
| 207 | Added Conduit Seals at Gas Cooler Pull Boxes | $14,096 |
| 208 | Grounding Grid Revisions | $8,393 |
| 209 | P-LV-01 Ethernet Cable and Wireway | $9,663 |
| 210 | Solid Rock Excavation | $147,581 |
| 211 | Screen Back Fill Material | $58,826 |
| 212 | Hydro Vac vs Mechanical Excavation | $971,407 |
| 213 | Added Fiber Patch Panels to Solar Equipment | $3,144 |

99864075.5 0034592-00012                              3

Exhibit B
Page 3 of 6

| 215 | Revised 8P-4 Feeder Cable | $3,249 |
|-----|---------------------------|--------|
| 217 | Re-route Existing Conduits at Flowmeter Vaults | $9,319 |
| 220 | Taping and Painting of Fire Walls on Valve Houses 1 & 2 | $22,686 |
| 221 | Fiber Optic Patch Panel Mounting | $5,399 |
| 222 | CWX Vent Gas Piping Revisions 1.18.18 | $52,966 |
| 223 | Valve House 1 & 2 Upstairs Door Clearance Issues | $2,606 |
| 226 | Add Grating Support Between VH 1 & 2 | $2,481 |
| 232 | Rock Chipping at Ultrasonic Vault | $120,903 |
| 233 | Valve House Concrete Existing Floor Demo | $13,200 |
| 235 | Fire Water Bladder Tank Grounding | $3,753 |
| 236 | Replace Pushbutton Switches at Gas Coolers | $1,378 |
| 237 | PB-28 Conduit Sealing & Drain Installation | $1,750 |
| 238 | Storage Building Electrical Work | $225,977 |
| 239 | Storage Building IFC Electrical Changes | $111,888 |
| 240 | Firewater Building Fire Alarm Work (RFI 0611) | $10,334 |
| 241 | Storage Building - Modify concrete floor for roll up doors | $2,078 |
| 242 | Relocate Instruments off Compressor Skid | $10,132 |
| 243 | Modify steel and grating at Valve House 1 | $1,965 |
| 244 | Modify door frames - grating too high | $6,072 |
| 245 | Modify handrail at Compressor platform - IFC 02.05.18 | $7,280 |
| 246 | Additional concrete for Electrical and Inst. supports | $140,240 |
| 247 | Storage Building Modify ramps' concrete | $2,749 |
| 248 | Additional concrete for pipe supports RFI 0464 | $6,449 |
| 249 | Exhaust Duct Ladder Pad | $1,784 |
| 250 | Light Poles different anchor bolt size | $1,484 |
| 251 | JBS-9 drill and epoxy # 5 bars RFI 0541 | $1,048 |
| 254 | Revised Wire Labels | $5,017 |
| 255 | Replace ATS Disconnect Enclosure | $4,859 |
| 256 | Valve Houses 1 and 2 New Access Doors at West Side | $14,772 |
| 258 | Oldcastle PreCast Backcharge | $2,490 |
| 259 | Redundant UPS - Original Scope | $33,991 |
| 260 | SMART MCCS - COR 02 Update to IFC | $6,921 |
| 261 | LPFG PIPING CHANGES AT AUX BLDG | $15,644 |
| 262 | BURNEY TAP FINAL CHANGES | $23,764 |
| 266 | Add Duct Seal to Conduits | $4,618 |

Exhibit B
Page 4 of 6

| 267 | High Resistance Ground Units - COR 03 Update to IFC | $23,282 |
| 268 | Yard Lighting - COR 012 Update to IFC | $30,583 |
| 271 | New Compressed and Instrument Air Drawings | $50,328 |
| 273 | G-30 Additional Tie In Transition Pipe | $38,613 |
| 274 | Control Valve Tubing Modifications | $5,936 |
| 275 | Ultrasonic Meter Vault-Additional coating on existing pipes | $22,400 |
| 276 | Added Smoke Detectors in Auxiliary Building | $15,494 |
| 277 | Revised Blue Lights Compressor Building | $21,013 |
| 278 | Internal Wiring Panel Changes | $3,182 |
| 279 | Auxiliary Building Size Increase - COR 08 Electrical Only | $28,702 |
| 280 | Rework and Install SOV 199 | $3,003 |
| 281 | Install rubber at pipe supports | $17,778 |
| 283 | New AECOM issued Drawings As-Found Conditions | $12,037 |
| 284 | Add Seal Offs in Existing Instrument Buildings (RFI 0665) | $3,535 |
| 285 | Added Circuit For AHU-2 (RFI 0655) | $3,207 |
| 286 | Add Missing Solar Circuits (RFI 0662) | $2,282 |
| 287 | Replace Light Switches in Compressor Building | $3,523 |
| 288 | Relocate Compressor Building Temp Transmitter | $4,360 |
| 289 | Revise Existing Underground Conduits at KTB-7 | $14,540 |
| 290 | Heat Trace Adds (RFI 0634) | $4,381 |
| 291 | Add UPS Battery Charger Temp Transmitters (RFI 0652) | $2,419 |
| 293 | Rev D Cable Schedule Adds | $27,300 |
| 296 | Add Power Earth Ground to Solar Equipment | $10,175 |
| 299 | Additional Electrical Excavation Costs | $823,741 |
| 300 | PG&E Legacy pipe coating repairs | $231,814 |
| 301 | Added Cat6 Cables For Commissioning | $4,438 |
| 302 | Supply of V-77 and V-75 Vault | $19,919 |
| 303 | Install V-77 and V-75 Precast Vault | $20,197 |
| 304 | Relief Vents On Actuator Supply tubing | $14,714 |
| 305 | Reroute existing vent lines at vault near Inst. Bldg 3 | $1,681 |
| 306 | OT Premium week ending 3-18-18 | $13,164 |
| 307 | OT Premium week ending 3-25-18 | $30,177 |
| 308 | OT Premium week ending 4-1-18 | $5,849 |
| 313 | Replace broken Rollers for PS-4 | $4,114 |
| 314 | Slot holes on compressor exhaust duct | $9,145 |

99864075.5 0034592-00012                    5

Exhibit B
Page 5 of 6

| 316 | Replace Existing Vibration Switches at Gas Cooler Fans | $6,615 |
| 318 | Replace Existing Light Pole #4 | $6,103 |
| 319 | Lighting and Power for AHU 1-2 Maintenance | $5,864 |
| 321 | Supply and Install Eye Wash Stations (3 each) | $4,818 |
| 322 | Existing Control Building Fire Alarm Updates | $6,570 |
| 323 | Relocate Fire Alarm Beacon Compressor Building | $2,636 |
| 326 | Storage Building - Portable Fire Extinguishers | $1,252 |
| 327 | FE-FG-54 Revisions | $10,869 |
| 328 | Overtime premium paid for week ending 4-8-18 | $12,134 |
| 329 | Overtime premium paid for week ending 4-15-18 | $9,994 |
| 330 | Overtime premium paid for week ending 4-22-18 | $8,174 |
| 331 | Overtime premium paid for week ending 4-29-18 | $2,742 |
| 332 | Machine flanges at MG strainer removable spool | $16,406 |
| 333 | 4 EA. 1-1/2" Valves for LPFG Reg Station | $2,135 |
| 337 | OT Premium Paid for week ending 5-6-18 | $9,102 |
| 339 | Station Electric Gate Control Wiring | $18,603 |
| 341 | Overtime Premium paid for week ending 5-13-18 | $2,298 |
| 342 | Overtime Premium paid for week ending 5-20-18 | $2,684 |
| 343 | Overtime Premium paid for week ending 5-27-18 | $1,183 |
| 344 | Pipeline Liquid Tank Concrete Pad | $12,084 |
| 345 | Asphalt and Drainage Modifications | $132,195 |
| 346 | Added Vent lines at Control valves | $29,181 |
| 347 | Deduct for Installation of Asphalt | ($219,793) |
| 348 | OT Premium paid for week ending 6-3-2018 | $3,060 |
| 349 | OT Premium paid for week ending 6-10-18 | $5,055 |
| 350 | OT Premium Paid for week ending 6/17/18 | $4,343 |
| 351 | Incentive to Retain Ironworkers (4-1-18 thru 7-1-18) | $24,567 |
| 352 | Incentive to Retain Electricians (4-1-18 thru 7-1-18) | $39,506 |
| 353 | Incentive to Retain Pipefitters ( 4-1-18 thru 7-1-18) | $20,533 |
| 354 | Incentive to Retain Carpenter - Laborer (4-1-18 thru 7-1-18) | $64,570 |
| 357 | OT Premium paid for week ending 6-23-2018 | $11,770 |
| 358 | Rev ID Cable Schedule Holds As-Built | $5,927 |
| 359 | Field Coating Repairs - AECOM Coatings Wrong Spec E-35.4 | $678,736 |
| | Total: | $9,562,782 |

99864075.5 0034592-00012                          6

Exhibit B
Page 6 of 6

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>— Mario R. Nicholas (SB #273122)<br>Stoel Rives LLP<br>760 SW Ninth Avenue, Suite 3000<br>Portland, OR 97205<br>TELEPHONE NO.: 503-224-3380    FAX NO.: 503-220-2480<br>ATTORNEY FOR *(Name):* Plaintiff JH Kelly, LLC | **FOR COURT USE ONLY**<br><br>**FILED**<br><br>JAN 2 9 2019<br><br>CLERK OF THE SUPERIOR COURT<br>BY: S. Murillo, DEPUTY CLERK |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SHASTA
STREET ADDRESS: 1500 Court Street Room 319
MAILING ADDRESS: 1500 Court Street Room 319
CITY AND ZIP CODE: Redding 96001
BRANCH NAME: Redding Main Courthouse

**CASE NAME:**
JH KELLY, LLC v. AECOM TECHNICAL SERVICES, INC.; and DOES 1 through 10

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: **19CV0172** |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [✓] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | [ ] Other collections (09)<br>[ ] Insurance coverage (18) | [ ] Mass tort (40)<br>[ ] Securities litigation (28) |
| [ ] Asbestos (04)<br>[ ] Product liability (24) | [ ] Other contract (37)<br>**Real Property** | [ ] Environmental/Toxic tort (30)<br>[ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | above listed provisionally complex case<br>types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08) | [ ] Other real property (26)<br>**Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13)<br>[ ] Fraud (16) | [ ] Commercial (31)<br>[ ] Residential (32) | **Miscellaneous Civil Complaint**<br>[ ] RICO (27) |
| [ ] Intellectual property (19)<br>[ ] Professional negligence (25) | [ ] Drugs (38)<br>**Judicial Review** | [ ] Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35)<br>**Employment** | [ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11) | [ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | |

**2.** This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought *(check all that apply):* a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
**4.** Number of causes of action *(specify):* 7
**5.** This case [ ] is [✓] is not a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 01-29-2019

— Mario R. Nicholas
     (TYPE OR PRINT NAME)                   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

                                                   Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

By Fax

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SHASTA

CASE NO.: **19CV0172**

NOTICE OF 1) ALL PURPOSE ASSIGNMENT,
2) MANDATORY SETTLEMENT
CONFERENCE AND 3) TRIAL

## INSTRUCTIONS – READ IMMEDIATELY!

### ORDER OF ASSIGNMENT

This action is assigned to the ☐ Hon. Stephen H. Baker / ☐ Hon. Tamara L. Wood for all purposes pursuant to Local Rule 3.02 of the Shasta County Superior Court.

### MANDATORY SETTLEMENT CONFERENCE DATE

A Mandatory Settlement Conference will be conducted in this action on Monday/Tuesday  9 30 19    at 1:30 p.m. in Department ☐ 3 / ☐ 8, located at 1500 Court Street, Redding, California 96001. All parties to this action are required to appear at the Settlement Conference.

The parties are ordered to comply with California Rules of Court, Rule 3.1380 relating to settlement conferences. Pursuant to Rule 3.1380(b), this court finds good cause is deemed to have been shown to excuse from attendance at settlement conference claims persons whose offices are more than 100 miles from the courthouse.

### TRIAL DATE

This matter is set for Trial on Tuesday/Wednesday, 12 31 19    at 8:45 a.m. in Department ☐ 3 / ☐ 8, located at 1500 Court Street, Redding, CA 96001.

### REQUIREMENT FOR SERVING THIS NOTICE

Plaintiff shall serve this notice on each defendant at the time of service of the complaint and on all intervenors and interpleaders within 10 days of service on plaintiff of complaints in intervention or interpleader. All cross-complainants shall serve this notice on each cross-defendant at the time of service of the cross-complaint.

IF YOU ARE A DEFENDANT OR CROSS-DEFENDANT, YOU HAVE BEEN SERVED WITH OTHER DOCUMENTS ALONG WITH THIS NOTICE. UNDER THE LAW, THOSE OTHER DOCUMENTS REQUIRE YOU TO TAKE ACTION PROMPTLY TO PRESERVE YOUR RIGHTS. PLEASE REVIEW THOSE MATERIALS IMMEDIATELY. THE REQUIREMENTS SET FORTH IN THIS NOTICE AND THE SETTLEMENT CONFERENCE AND TRIAL DATE SCHEDULED IN THIS NOTICE ARE SEPARATE AND ARE IN ADDITION TO THOSE CONTAINED IN THE OTHER DOCUMENTS WHICH YOU HAVE RECEIVED.

Dated: January 1, 2019

DANIEL E. FLYNN, Presiding Judge

I CERTIFY THAT A COPY OF THIS DOCUMENT WAS PROVIDED TO THE PLAINTIFF ON
_____ _____ BY: SMUCULO . DEPUTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SHASTA
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. Private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. You can read more information about these ADR processes and watch videos that demonstrate them at http://www.courts.ca.gov/programs-adr.htm . If the parties agree to an ADR program, the parties may file the agreement with the court for the purpose of assisting the court in determining how to proceed at the case management conference.

### Potential Advantages and Disadvantages

ADR may have a variety of advantages and disadvantages over a trial, depending on the type of ADR process used and the particular case.

**Potential Advantages**
- Saves time
- Saves money
- Gives parties more control over the dispute resolution process and outcome
- Preserves or improves relationships

**Potential Disadvantages**
- May take more time and money if ADR does not resolve the dispute
- Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable.

### Most Common Types of ADR

**Mediation** – A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners.

**Settlement Conferences** – A judge helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Neutral Evaluation** – The parties briefly and informally present their facts and arguments to a neutral person called an "evaluator", who is often an expert in the subject matter of the dispute. The evaluator does not decide the outcome of the dispute, but helps the parties to do so by giving them a non-binding opinion about the strengths, weaknesses, and likely outcome of their case. Depending on the neutral evaluation program and the parties' wishes, the evaluator may then help the parties try to negotiate a settlement. Neutral evaluation may be appropriate if the parties want a neutral person's opinion about how

Information Sheet
Shasta County Superior Court
LF-CIV-103 [rev March 28, 2013]

ALTERNATIVE DISPUTE RESOLUTION
(ADR) INFORMATION PACKAGE

Page 1 of 2

Case: 19-30088    Doc# 873-2    Filed: 03/01/19    Entered: 03/14/19 10:31:43    Page 25
of 30

the case might be resolved, if the primary dispute is the amount of damages, or if there are technical issues that the parties would like a neutral expert to help resolve.

**Arbitration** – The parties present evidence and arguments to a neutral person called an "arbitrator" who then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to *binding arbitration*, they waive their right to a trial and agree to accept the arbitrator's decision as final. With *nonbinding arbitration*, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time and expense of a trial, or want an expert in the subject matter of the dispute to make the decision.

## Selecting an ADR Program and Neutral

Selecting an ADR program and neutral are important decisions. Be sure to learn about the rules of any program and the qualifications of any neutral you are considering, and about their fees.

## Shasta County Superior Court ADR Programs

When a civil case is set for trial the judge also will set a settlement conference date approximately six weeks before the trial date. The judge assigned to the case will assist the parties in attempting to arrive at a negotiated resolution.

Shasta County Superior Court does not offer mediation, neutral evaluations, or arbitrations.

**Private ADR Providers** – To find a private ADR program or neutral evaluator, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or the Shasta-Trinity Counties Bar Association may assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California Courts website at http://courts.ca.gov/selfhelp.htm .

Information Sheet
Shasta County Superior Court
LF-CIV-103 [rev March 28, 2013]
        ALTERNATIVE DISPUTE RESOLUTION
        (ADR) INFORMATION PACKAGE
                Page 2 of 2

Case: 19-30088    Doc# 873-2    Filed: 03/01/19    Entered: 03/14/19 10:31:43    Page 26 of 30

# EXHIBIT B

BY FAX

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Mario R. Nicholas (SB #273122)<br>Stoel Rives LLP<br>760 SW Ninth Avenue, Suite 3000<br>Portland, OR 97205<br>TELEPHONE NO.: 503-224-3380    FAX NO. *(Optional):* 503-220-2480<br>E-MAIL ADDRESS *(Optional):* mario.nicholas@stoel.com<br>ATTORNEY FOR *(Name):* Plaintiff JH Kelly, LLC | FOR COURT USE ONLY |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SHASTA |
|---|
| STREET ADDRESS: 1500 Court Street Room 319 |
| MAILING ADDRESS: 1500 Court Street Room 319 |
| CITY AND ZIP CODE: Redding 96001 |
| BRANCH NAME: Redding Main Courthouse |

| PLAINTIFF/PETITIONER: JH KELLY, LLC | CASE NUMBER:<br>19cv0172 |
|---|---|
| DEFENDANT/RESPONDENT: AECOM TECHNICAL SERVICES, INC., et al. | JUDICIAL OFFICER:<br>Tamara L. Wood |
| **NOTICE OF RELATED CASE** | DEPT.:<br>8 |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: JH KELLY, LLC V. PACIFIC GAS AND ELECTRIC COMPANY, ET AL.

   b. Case number: 191759

   c. Court: ☑ same as above

       ☐ other state or federal court *(name and address):*

   d. Department: 3

   e. Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date: 01-25-2019

   g. Has this case been designated or determined as "complex?" ☐ Yes ☑ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

       ☐ involves the same parties and is based on the same or similar claims.

       ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

       ☐ involves claims against, title to, possession of, or damages to the same property.

       ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         ☑ Additional explanation is attached in attachment 1h

   i. Status of case:

       ☑ pending

       ☐ dismissed ☐ with ☐ without prejudice

       ☐ disposed of by judgment

2. a. Title:

   b. Case number:

   c. Court: ☐ same as above

       ☐ other state or federal court *(name and address):*

   d. Department:

Page 1 of 3

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov |
|---|---|---|

CM-015

| PLAINTIFF/PETITIONER: JH KELLY, LLC | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: AECOM TECHNICAL SERVICES, INC., et al. | 19cv0172 |

2. *(continued)*

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 2h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

3.  a. Title:

    b. Case number:

    c. Court: ☐ same as above

        ☐ other state or federal court *(name and address):*

    d. Department:

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 3h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: 01-31-2019

Mario R. Nicholas
    (TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _(signature)_
    (SIGNATURE OF PARTY OR ATTORNEY)

| CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Page 2 of 3 |
|---|---|---|

CM-015

| PLAINTIFF/PETITIONER: JH KELLY, LLC | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: AECOM TECHNICAL SERVICES, INC., et al. | 19cv0172 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case **if you are a party in the action**. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action**. I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

   760 SW Ninth Avenue, Suite 3000
   Portland, OR 97205

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☑ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):* 01-31-2019

   b. from *(city and state):* Portland, Oregon

4. The envelope was addressed and mailed as follows:

   a. Name of person served:          c. Name of person served:

      Street address:                    Street address:
      City:                              City:
      State and zip code:                State and zip code:

   b. Name of person served:          d. Name of person served:

      Street address:                    Street address:
      City:                              City:
      State and zip code:                State and zip code:

☑ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 01-31-2019

Mario R. Nicholas
(TYPE OR PRINT NAME OF DECLARANT)          ▶ _____ (SIGNATURE OF DECLARANT)

| CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Page 3 of 3 |