**Frank Bloksberg, SBN 150809**
**142 East McKnight Way**
**Grass Valley, CA 95949**
**Tel: (530) 478-0170**
**email: frank@bloksberglaw.com**

**Attorney for Kevin Thompson and Mia Nash**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS & ELECTRIC COMPANY<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas & Electric Company<br>■ Affects both Debtors<br><br>⋆ *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | CASE NO: 19-30088-DM<br><br>Chapter 11<br><br>MOTION FOR RELIEF FROM THE AUTOMATIC STAY KEVIN THOMPSON AND MIA NASH<br><br>Date: April 9, 2019<br>Time: 9:30 am<br>Place: 450 Golden Gate Avenue, 16th Floor<br>       San Francisco, California<br>Judge: Honorable Dennis Montali |

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Kevin Thompson and Mia Nash hereby move this Court for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) (the "Motion"), to allow their California State Court action, KEVIN THOMPSON and MIA NASH v. PG&E CORPORATION, Case No. CU19-083433, in California Superior Court in Nevada County (the "State Court Action"). (A true copy of the Complaint in the State Court Action (the "Complaint") is attached to the Declaration of Kevin Thompson as Exhibit 1. )

The State Court Action is an action for declaratory relief in which Mr. Thompson and Ms. Nash do not seek damages.

This Motion is based on the accompanying Declaration of Kevin Thompson (the "Declaration") and Request for Judicial Notice, the points and authorities set forth below, and on such other and further evidence and matters that the Court may consider at the hearing of the Motion.

I. **Introduction and Summary of the Facts.**

This a non-core dispute about whether an easement exists and, if so, the extent of that easement. Even more to the point, this a non-core dispute about whether Debtors can block Mr. Thompson and Ms. Nash from building on their property.

Mr. Thompson and Ms. Nash (husband and wife) (Declaration ¶1) are the fee simple owners of a lot located at 10186 Pittsburg Road, Nevada City, CA 95959 ("the Property"). The Property is zoned for single family residences. Mr. Thompson and Ms. Nash want to build a house there. (*Id.*, at ¶3.)

PG&E Corporation and Pacific Gas & Electric Company (both referred to as "PG&E") insists that they have a 50 foot wide easement crossing the Property. (*Id.*, at ¶4.)

PG&E asserts that Mr. Thompson and Ms. Nash may not build in this purported easement. As a result, PG&E is asserting exclusive control over the purported easement space. (*Id.*, at ¶5.)

If Mr. Thompson and Ms. Nash cannot build in that space, then they cannot build on the Property at all. As a result, PG&E would have exclusive use of the Property. The Property would be useless and without value for its owners. (*Id.*, at ¶¶ 6-7.)

Mr. Thompson and Ms. Nash filed the State Court Action on January 28, 2019. (Exhibit 1.) PG&E filed its bankruptcy action the next day, January 29, 2019. Mr. Thompson and Ms. Nash are seeking declaratory relief that no easement exists or, in the alternative, the easement is not as extensive as PG&E asserts. (*Id.*)

In April, 2017, Defendant PG&E first asserted to Mr. Thompson and Ms. Nash that it had a 40 foot wide easement on the property. PG&E claimed that the easement arose out of a document from

1914 (the "1914 document"). (Declaration at ¶8.)

In November, 2018, PG&E informed Mr. Thompson and Ms. Nash that it had changed its mind. PG&E told them that the 1914 document did not apply. Rather, PG&E informed Mr. Thompson and Ms. Nash that it has a 50 foot wide easement, arising out of a document from 1909 (the "1909 document"). (A true copy of the 1909 document is attached as Exhibit A to the State Court Complaint.) (Id., at ¶9.)

PG&E's assertions are utterly without factual or legal basis. The 1909 document was not recorded, notarized or even signed by all of the purported grantors. It is likely invalid. The 1909 document states that for a payment of five dollars in gold, PG&E would obtain an easement for placing poles and a single electric line. The 1909 document states that Defendant PG&E would be allowed to maintain brush 25 feet on each side of the electric line. The 1909 document does not state that Defendant PG&E would have an exclusive 50 foot wide easement on the property. The 1909 document says nothing about exclusivity at all.

If Mr. Thompson and Ms. Nash cannot get a judicial determination that they can build on their property, then the Property is useless to them. They would be the owners of the property in name only, with all of the legal responsibilities of property owners and none of the benefits. (*Id.*, at ¶7.)

II. **The State Court Action is a Non-Core Matter.**

The State Court action solely concerns the parties' rights related to a purported easement. The questions about the purported easement are 100% questions of California state law and unrelated in any manner to bankruptcy law. Additionally, Mr. Thompson and Ms. Nash have not attempted to assert against PG&E any sort of affirmative claim for relief challenging any aspect of PG&E's performance of its statutory duties as a debtor in possession or otherwise implicating core bankruptcy claims procedures. (Complaint.)

The purported easement is not even an asset of the bankruptcy estate. The most PG&E has is a contingent asset. PG&E has done nothing to transform this mere continency into a real asset.

PG&E claims that it has an extensive easement arising from its fatally defective 1909 document. If that argument fails, PG&E would likely make a prescriptive easement argument. No deed between the parties exists. No court order exists creating an easement. No debt exists between the parties, within the meaning of the bankruptcy code, and Mr. Thompson and Ms. Nash do not seek any damages from PG&E. (*Id.,* at ¶9.)

III. **Legal Standards for Relief from Stay.**

A party may move for relief from automatic stay under 11 U.S.C. § 362, which provides that a bankruptcy court shall grant relief from the stay upon a showing of cause. (11 U.S.C. § 362(d)(1).) The court determines cause on a case-by-case basis. (*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citation omitted).)

A. **Cause for Lifting the Stay Exists, Because Mandatory Abstention Would Apply.**

"Where a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as to the state court trial." (*In re Tucson Estates, Inc.*, 912 F.2d at 1166.)

The elements of mandatory abstention are: (1) A timely motion; (2) a purely state law question; (3) a non-core proceeding § 157(c)(1); (4) a lack of independent federal jurisdiction absent the petition under title 11; (5) that an action is commenced in a state court; (6) the state court action may be timely adjudicated; (7) a state forum of appropriate jurisdiction exists. (*Certain Underwriters at Lloyds, Syndicates 2623/623 v. GACN, Inc. (In re GACN, Inc.)* (Bankr.9th Cir. 2016) 555 B.R. 684, 694.)

The State Court Action meets all of the elements of mandatory abstention: PG&E filed bankruptcy very recently, so an abstention motion would be timely. The State Court Action involves purely state law questions. As discussed above, the State Court Action involves non-core matters. No federal jurisdiction would apply to the State Court Action, but for the chapter 11.

The State Court action was filed before the chapter 13. The State Court Action involves only easement issues, the facts are largely undisputed, and the action will likely be resolved through a dispositive motion. Moreover, Mr. Thompson and Ms. Nash are very motivated to have the matter resolved so that they can use the Property. (Declaration ¶11.) No reasonable chance exists that this very complex chapter 11 matter will be resolved before the State Court action. The forum in which the State Court Action is filed is correct. The Property is located in Nevada County, where the State Court Action is venued. (*Id.,* at ¶13.)

Since mandatory abstention would apply, the Court should grant relief from the stay.

B. **The *Curtis* Factors Support Relief From the Stay.**

In determining whether cause exists to permit an action to proceed in a non-bankruptcy forum, courts often analyze the twelve factors set forth in *In re Curtis*. (*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).) The *Curtis* factors are:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination;

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and,

12. The impact of the stay and the balance of hurt. (*Curtis*, 40 B.R. at 799 800 (internal citations omitted); see also *In re Roger*, 539 B.R. 837, 844-45 (C.D. Cal. 2015); *In re Howrey*, 492 B.R. 19, 24 (Bankr. N.D. Cal. 2013); *Truebro, Inc. v. Plumberex Specialties Products, Inc. (In re Plumberex Specialties Products, Inc.)*, 311 B.R. 551,559 (Bankr. C.D. Cal. 2004).)

The Ninth Circuit has recognized that "the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." (*In re Kronemyer*, 405 B.R. 915, 921 (9th Cir. BAP 2009).) While the *Curtis* factors are widely used to determine the existence of cause, not all of the factors are relevant in every case, nor is a court required to give each factor equal weight. (*Plumberex*, 311 B.R. at 560.)

"The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." (*Roger*, 539 B.R. at 846, citing *Curtis*, 40 B.R. at 806.)

C. **All of the Applicable *Curtis* Factors Support Relief From the Stay.**

Factors 3, 5, 6, 8, and 9 are inapplicable to this matter.

**Factor 1: Whether the relief will result in a partial or complete resolution of the issues**

In the context of this bankruptcy case, the easement PG&E claims is a contingent asset that is disputed by Mr. Thompson and Ms. Nash. As of this writing, and to our knowledge, PG&E has not listed its assertions in this matter as an asset in the bankruptcy case. The State Court Action will

-6-

completely resolve the easement issues.

This factor favors relief from stay.

**Factor 2: The lack of any connection with or interference with the bankruptcy case**

As noted above, interference with the bankruptcy case is the most important factor. (*Roger*, 539 B.R. at 846.) Here, resolution of the State Court Action will not interfere with the bankruptcy case. The State Court Action did not cause this bankruptcy and is an utterly insignificant matter in the bankruptcy case. (See *In re Pac. Gas & Elec. Co.*, 279 B.R. 561 571 (Bankr. N.D. Cal. 2002); (analyzing abstention factors).)

In the context of this bankruptcy case, the easement PG&E claims is a contingent asset that is disputed by Mr. Thompson and Ms. Nash.

PG&E will need to commit resources to resolve this dispute at some point. The resources PG&E will need to commit are *de minimis* in relation to this bankruptcy. Since the facts of the State Court matter are largely undisputed, chances are that it will be resolved by a dispositive motion. Other than the relatively small expense of concluding the litigation, there is no interference with the chapter 11 case.

The litigation expense itself is "irrelevant to this *Curtis* factor" and has been repeatedly held to be legally impermissible as a basis for denying stay relief. (*Roger*, 539 B.R. at 847-848, citing and quoting *Santa Clara Cty. Fair Ass'n v. Sanders (In re Santa Clara Cty. Fair Ass'n)*, 180 B.R. 564, 566-67 (9th Cir. BAP 1995).) In *Roger*, the district court reversed a bankruptcy court decision denying relief from stay on, among other grounds, "the lack of any evidence regarding the costs of litigating the State Court Action versus the Roger Bankruptcy . . ." (*Roger*, 539 B.R. at 851.)

Equally impermissible as a factor is any consideration of whether PG&E might hope in vain to obtain a more favorable outcome in bankruptcy court. As observed by the district court in *Roger*, to the extent the Bankruptcy Court's decision rested on such an assumption, the Bankruptcy Court committed legal error. (*Roger*, 539 B.R. at 848, n. 5. Also see *Tucson Estates*, 912 F.2d at 1167; "An

-7-

underlying assumption made by the bankruptcy court was that its decision on this issue and the misappropriation damages claim might be different from the state court's. Yet state law governs both issues, so both courts should reach the same result.")

This factor supports granting relief from the stay.

**Factor 4: Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases**

Although the State Court is not a specialized tribunal in any strict sense, that Court has direct and detailed knowledge of real property issues in Nevada County and the application of California law to those issues.

This factor leans toward granting relief from the stay.

**Factor 7: Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties**

The State Court Action is a two-party dispute between a married couple, who own a piece of property, and PG&E. Resolving the dispute in their favor will result in Mr. Thompson and Ms. Nash being able to build on their property. The worst possible resolution for PG&E would be that the State Court would order it to move a single pole line a short distance to an easement it actually holds. Nothing in this matter would affect anyone else.

This factor favors relief from stay.

**Factor 10: The interests of judicial economy and the expeditious and economical determination of litigation for the parties**

Judicial economy would be well served by granting relief from stay. The State Court Action involves issues of state law, not bankruptcy issues. The bankruptcy docket is already addressing myriad bankruptcy issues resulting from the largest utility in California commencing a chapter 11

-8-

case; no reason exists to add to this Court's burden with this tangential matter.

Litigating this matter in Nevada County, where Mr. Thompson, Ms. Nash, and the Property all are   is economical and appropriate   rather than far-off San Francisco. Indeed, under California law, Nevada County is the only proper venue for the action.

No prejudice to the bankruptcy estate would occur from this Court lifting the stay.

This factor favors relief from stay.

**Factor 11: Whether the foreign proceedings have progressed to the point where the parties are prepared for trial**

The State Court Action is newly filed. PG&E has not appeared and no litigation has taken place. That being said, the parties were seriously involved in settlement discussions when PG&E filed this chapter 11 case. That filing brought the settlement discussions to an abrupt halt. With relief from the stay, the parties could promptly renew discussions and, hopefully, resolve this dispute. Or, given tha the facts are largely not in dispute, the matter can quickly move toward a dispositive motion.

Considered in this manner, this factor favors relief from stay.

**Factor 12: The impact of the stay and the balance of hurt**

Mr. Thompson and Ms. Nash will be prejudiced by delay in presenting this case if this Court denies relief from the stay.

Mr. Thompson and Ms. Nash are regular folks who work for a living. The Property is where they want to build a home. To say that the Property is a truly significant investment for them would be an extreme understatement. They cannot use their property until the dispute is resolved. Their investment would sit fallow for who-knows-how-long if they are required to wait out this massive Chapter 11 case. Meanwhile, the stay does not affect PG&E in the least. PG&E goes on with business as usual. (Declaration, ¶14.)

The San Francisco bankruptcy is a far, expensive venue for Mr. Thompson and Ms. Nash.

-9-

Case: 19-30088    Doc# 876    Filed: 03/14/19    Entered: 03/14/19 12:15:48    Page 9 of 10

Unnecessarily litigating in San Francisco would significantly increase their costs for no benefit to PG&E. The property, witnesses and property owners are all in Nevada County. (*Id.,* at 13-14.)

Lastly, rather than quickly resolving this matter in State Court by early settlement or dispositive motion, Mr. Thompson and Ms. Nash are caught in a massive Chapter 11 with costs that could easily spiral out of control. (*Id.*)

Likewise, the costs associated with a pencils-down freeze and a later revival at some indefinite point in the future would undoubtedly result in increasing Mr. Thompson and Ms. Nash's litigation and other costs. On the contrary, proceeding with the State Court action now, and opening the matter to possible quick resolution, will not increase PG&E's costs -- litigation or otherwise.

The impact of the stay, without relief, significantly prejudices Mr. Thompson and Ms. Nash.

The balance of the hurt strongly favors Mr. Thompson and Ms. Nash's motion to lift the stay.

IV. **Conclusion**

If PG&E were bringing an adversarial action, abstention would be mandatory. The relevant *Curtis* factors all point to relief from stay. The cost of litigating in the Bankruptcy court could be crushing to Mr. Thompson and Ms. Nash, to no legitimate benefit for anyone.

Based on all of the foregoing, the Court should grant the Motion.

DATED: March 13, 2019                     FRANK BLOKSBERG

BY: _____/s/ Frank Bloksberg_____
Frank Bloksberg
Attorney for Kevin Thompson and Mia Nash