**Frank Bloksberg, SBN 150809**
**142 East McKnight Way**
**Grass Valley, CA 95949**
**Tel: (530) 478-0170**
**email: frank@bloksberglaw.com**

**Attorney for Kevin Thompson and Mia Nash**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | CASE NO: 19-30088-DM |
| PG&E CORPORATION, | Chapter 11 |
| -and- | DECLARATION OF KEVIN THOMPSON AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF HIS MOTION FOR RELIEF FROM THE AUTOMATIC STAY |
| PACIFIC GAS & ELECTRIC COMPANY | |
| Debtors. | |
| ☐ Affects PG&E Corporation | Date: April 9, 2019 |
| ☐ Affects Pacific Gas & Electric Company | Time: 9:30 am |
| ■ Affects both Debtors | Place: 450 Golden Gate Avenue, 16th Floor San Francisco, California |
| *  All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Judge: Honorable Dennis Montali |

I, Kevin Thompson, do hereby state and declare:

1.  I am over 18 years of age. Mia Nash and I are bringing the Motion for Relief from Automatic Stay. Mia Nash and I are married.

2.  On Mia Nash's and my behalf, on January 28, 2019, the California State Court action, KEVIN THOMPSON and MIA NASH v. PG&E CORPORATION, Case No. CU19-083433, was filed in California Superior Court in Nevada County (the "State Court Action)). A true copy of the Complaint in the State Court Action is attached as Exhibit 1. I request that the Court take judicial

notice of the Complaint in the State Court Action.

3. Ms. Nash and I are the fee simple owners of a lot located at 10186 Pittsburg Road, Nevada City, CA 95959 ("the Property"). The Property is zoned for single family residences. Ms. Nash and I want to build a house there.

4. PG&E Corporation and Pacific Gas & Electric Company (both referred to as "PG&E") insists to me that they have a 50 foot wide easement crossing the Property.

5. PG&E asserts that Ms. Nash and I may not build in this purported easement. As a result, PG&E is asserting exclusive control over the purported easement space.

6. The Property is in Nevada County, California. I have extensively reviewed the Nevada County building codes which require certain building set backs and set back clearances for septic systems and leach fields. Simple math establishes that if PG&E has a 50 foot wide easement on the Property and we cannot build in that easement then we cannot build a home on the Property. With the purported easement, insufficient space exists on the Property to build a home and have a septic system.

7. If we cannot build in that space, then we cannot build on the Property at all. The Property would be useless to us for building a home and have no value. I do not believe that we could sell the Property at all, if PG&E has the easement it is asserting. If PG&E can stop us from building on the Property, then we would be the owners of the property in name only, with all of the legal responsibilities of property owners and none of the benefits.

8. In April, 2017, Defendant PG&E first asserted to Ms. Nash and I that it had a 40 foot wide easement on the property. PG&E claimed that the easement arose out of a document from 1914 (the "1914 document").

9. In November, 2018, PG&E informed Ms. Nash and I that it had changed its mind. PG&E told us that the 1914 document did not apply. Rather, PG&E informed us that it has a 50 foot wide easement, arising out of a document from 1909 (the "1909 document"). (A true copy of the 1909 document is attached as Exhibit A to the State Court Complaint.)

-2-

10. PG&E claims that it has an extensive easement arising from its 1909 document. No deed between Ms. Nash, I, and PG&E exists. No recorded easement for the Property exists in PG&E's favor. No court order exists creating an easement on the Property in PG&E's favor. I am not aware of any money that PG&E owes me. Ms. Nash and I are not seeking any damages from PG&E in our State Court Action.

11. Ms. Nash and I are very motivated to have this matter resolved with PG&E resolved so that we can use our Property. If the Court grants our Motion for Relief from the Automatic Stay, we will promptly prosecute the State Court Action to its conclusion. Since a successful resolution of the State Court Action will resolve all of the easement issues, we will then be able to build on the Property. Without violating any confidentiality, I can say that Ms. Nash and I were in serious settlement discussions with PG&E when PG&E filed this chapter 11 case. That filing brought the settlement discussions to an abrupt halt. With relief from the stay, we intend to promptly renew those discussions.

12. As of this writing, PG&E has not listed its easement assertions as an asset in this matter in the bankruptcy case.

13. Litigating this matter in Nevada County is economical and appropriate. Ms. Nash and I live in Nevada County. The Property, witnesses and property owners are all in Nevada County. Being involved in this massive Chapter 11 has already increased our costs, will continue to do so, and could easily overwhelm us financially.

14. Ms. Nash and I would be prejudiced by delay in presenting this case if this Court denies relief from the stay. We are regular folks who work for a living. We want and intend to build a home on the Property. To say that the Property is a truly significant investment for us would be an extreme understatement. We cannot use the Property until the dispute is resolved. Our investment would sit fallow for who-knows-how-long if we are required to wait out this massive Chapter 11 case. Meanwhile, the stay does not affect PG&E in the least. PG&E goes on with business as usual on our Property.

-3-

1     I declare under penalty of perjury under the laws of the State of California that the
2 foregoing is true and correct. This declaration was executed on March 12, 2019.

3

4                                       

5                         KEVIN THOMPSON

-4-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT 1

FILED

SUPERIOR COURT OF CALIFORNIA
COUNTY OF NEVADA

JAN 28 2019

JASON B. GALKIN
EXECUTIVE OFFICER & CLERK
By: S. SKOVERSKI, Deputy Clerk

1 | Frank Bloksberg, SBN 150809
2 | 142 East McKnight Way
Grass Valley, CA 95949
3 | Tel: (530) 478-0170
Fax: (530) 478-0170
4 | email: frank@bloksberglaw.com

5 | Attorney for Plaintiffs
Kevin Thompson and Mia Nash

6

7 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 | COUNTY OF NEVADA

9 | Kevin Thompson and Mia Nash ) CASE NO: **CU19-083433**

10 | Plaintiffs, )
) **COMPLAINT**
11 | vs. )
) 1.  **Declaratory Relief: The 1909**
12 | PG&E CORPORATION, a California ) **Document Did Not Create an Easement**
Corporation, PACIFIC GAS & ) 2.  **Declaratory Relief: The 1909**
13 | ELECTRIC COMPANY, a California ) **Document Cannot Create an Easement So**
Corporation and DOES 1 - 20, inclusive, ) **Extensive As To Preclude the Property's**
14 | ) **Meaningful Use By Its Owners**
Defendants. ) 3.  **Declaratory Relief: No Prescriptive**
15 | ) **Easement Arose**
16 | )

17

18 | Plaintiffs KEVIN THOMPSON and MIA NASH complain and allege as follows:

19

20 | ## INTRODUCTION

21 |     1.     Kevin Thompson and Mia Nash are the fee simple owners of a lot located at 10186

22 | Pittsburg Road, Nevada City, CA 95959. The property is zoned for single family residences.

23 | Kevin Thompson and Mia Nash want to build a house there.

24 |     2.     Defendants PG&E Corporation and Pacific Gas & Electric Company (both

25 | referred to as "PG&E") are asserting exclusive control over what they claim is a 50 foot wide

26 | easement crossing the property. Defendant PG&E insists that Kevin Thompson and Mia Nash

27 | may not build in their purported easement.

1    3.    In April, 2017, Defendant PG&E first asserted to Kevin Thompson and Mia Nash

2 that it had a 40 foot wide easement on the property, arising out of document from 1914 (the

3 "1914 document").

4    4.    In November, 2018, Defendant PG&E informed Kevin Thompson and Mia Nash

5 that it had changed its mind. Defendant PG&E told them that the 1914 document did not

6 apply. Rather, Defendant PG&E informed Kevin Thompson and Mia Nash that it has a 50

7 foot wide easement, arising from a document from 1909 (the "1909 document"). (A true copy

8 of the 1909 document is attached as Exhibit A.)

9    5.    In reality, the document states that for a purported payment of five dollars in gold,

10 Defendant PG&E obtained an easement for placing poles and a single electric line. The 1909

11 document states that Defendant PG&E may maintain brush twenty five feet on each side of

12 the electric line. The 1909 document does *not* state that Defendant PG&E has an exclusive 50

13 foot wide easement on the property.

14    6.    Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that

15 if Defendant has a 50 foot wide easement, they cannot build a home on the property or use

16 the property in any meaningful way. Kevin Thompson and Mia Nash are informed and

17 believe, and thereon allege, that Defendant PG&E's assertion of an easement that is so

18 extensive that they cannot develop their property renders the property unuseable and without

19 value.

20    7.    In essence, Defendant PG&E is claiming exclusive use of the property and not

21 allowing Kevin Thompson and Mia Nash to develop or use their property in any meaningful

22 way.

23

24                   **PARTIES**

25    8.    Kevin Thompson and Mia Nash are the fee simple owners of a lot located at 10186

26 Pittsburg Road, Nevada City, CA 95959.

27

-2-

1    9.    Defendant PG&E Corporation is an energy-based holding company headquartered

2    in San Francisco, California. It is the parent company of Defendant Pacific Gas & Electric

3    Company.

4    10.    Defendant Pacific Gas & Electric Company is incorporated in California and is

5    headquartered in San Francisco, California. Defendant Pacific Gas & Electric Company

6    provides public utility services that include the transmission and distribution of natural gas,

7    and the generation, transmission, and distribution of electricity to millions of customers in

8    Northern and Central California, including the residents of Nevada County.

9    11.    The PG&E Defendants are jointly and severally liable for each other's negligence,

10   misconduct, and wrongdoing as alleged herein, in that:

11        a.    The PG&E Defendants operate as a single business enterprise operating

12   out of the same building located at 77 Beale Street, San Francisco, California, for the purpose

13   of effectuating and carrying out PG&E Corporation's business and operations and/or for the

14   benefit of PG&E Corporation;

15        b.    The PG&E Defendants do not operate as completely separate entities,

16   but rather, integrate their resources to achieve a common business purpose;

17        c.    Defendant Pacific Gas & Electric Company is so organized and

18   controlled, and its decisions, affairs, and business are so conducted as to make it a mere

19   instrumentality, agent, conduit, or adjunct of PG&E Corporation;

20        d.    Defendant Pacific Gas & Electric Company's income results from

21   function integration, centralization of management, and economies of scale with PG&E

22   Corporation;

23        e.    The PG&E Defendants' officers and management are intertwined and do

24   not act completely independently of one another;

25        f.    The PG&E Defendants' officers and managers act in the interest of

26   PG&E Corporation as a single enterprise;

27                                                  -3-

1    g.    Defendant PG&E Corporation has control and authority to choose and
2  appoint Pacific Gas & Electric Company's board members as well as its other top officers
3  and managers;
4    h.    The PG&E Defendants do not compete with one another, but have been
5  structured and organized and their business effectuated so as to create a synergistic,
6  integrated single enterprise where various components operate in concert one with another;
7    i.    Defendant PG&E Corporation maintains unified administrative control
8  over Pacific Gas & Electric Company;
9    j.    The PG&E Defendants are insured by the same carriers and provide
10  uniform or similar pension, health, life, and disability insurance plans for employees;
11    k.    The PG&E Defendants have unified 401(k) Plans, pension and
12  investment plans, bonus programs, vacation policies, and paid time off from work schedules
13  and policies;
14    l.    The PG&E Defendants invest funds from their programs and plans by a
15  consolidated and/or coordinated Benefits Committee controlled by PG&E Corporation and
16  administered by common trustees and administrators;
17    m.    The PG&E Defendants have unified personnel policies and practices
18  and/or a consolidated personnel organization or structure;
19    n.    The PG&E Defendants have unified accounting policies and practices
20  dictated by PG&E Corporation and/or common or integrated accounting organizations or
21  personnel;
22    o.    The PG&E Defendants are represented by common legal counsel;
23    p.    Defendant PG&E Corporation's officers, directors, and other
24  management make policies and decisions to be effectuated by Pacific Gas & Electric
25  Company and/or otherwise play roles in providing directions and making decisions for
26  Pacific Gas & Electric Company;
27                                    -4-

1    q.        Defendant PG&E Corporation's officers, directors, and other
2 management direct certain financial decisions for Pacific Gas & Electric Company including
3 the amount and nature of capital outlays;

4    r.        Defendant PG&E Corporation's written guidelines, policies, and
5 procedures control Pacific Gas & Electric Company's employees, policies, and practices;

6    s.        Defendant PG&E Corporation files consolidated earnings statements
7 factoring in all revenue and losses from Pacific Gas & Electric Company, as well as
8 consolidated tax returns, including those seeking tax relief; and/or, without limitation;

9    t.        Defendant PG&E Corporation generally directs and controls Pacific Gas
10 & Electric Company's relationship with, requests to, and responses to inquiries from, the
11 CPUC and uses such direction and control for the benefit of PG&E Corporation.

12    12.    At all relevant times, each of the Defendants were the partners, principals, agents,
13 employees, servants, and joint venturers of each other, and in doing the things alleged in this
14 Complaint were acting within the course and scope of their authority and relationship as
15 partners, principals, agents, employees, servants and joint venturers with the permission,
16 knowledge, and consent of each other.

17    13.    The true names and capacities, whether individual, corporate, associate or
18 otherwise of Does 1 through 20, are unknown to Kevin Thompson and Mia Nash who, under
19 Code of Civil Procedure § 474, sue these Doe Defendants under fictitious names. Kevin
20 Thompson and Mia Nash will amend this complaint to show their true names and capacities
21 when they are ascertained. Each of the Doe Defendants is in some manner legally responsible
22 for the wrongful conduct alleged in this Complaint.

23

24                         **JURISDICTION AND VENUE**

25    14.    Venue is proper in this judicial district, pursuant to California Code of Civil
26 Procedure § 395(a). Defendants reside and/or transact business in Nevada County and

27                                         -5-

1   are within the jurisdiction of this Court for purposes of service of process.

2

3                   **FACTUAL BACKGROUND**

4      15.     Defendant PG&E asserts that it has an 50 foot wide easement on Kevin Thompson

5 and Mia Nash's property located at 10186 Pittsburg Road, Nevada City, CA 95959. Defendant

6 PG&E further asserts that, without regard to how extensive its claimed easement is, Kevin

7 Thompson and Mia Nash cannot build any structures (including a home) inside its purported

8 easement.

9      16.     Defendant PG&E provided to Kevin Thompson and Mia Nash a copy of the 1909

10 document upon which it relies. Kevin Thompson and Mia Nash are informed and believe, and

11 thereon allege, that Defendant PG&E is the sole drafter of the 1909 document.

12      17.     The 1909 document states, in pertinent part, the following:

13          "This Indenture made by and between Ella M. Coombs . . . and J. M. Kitts . . .

14          the parties of the first part, and Pacific Gas and Electric Company . . . the party of the

15          second part . . . ."

16      18.     Plaintiffs Kevin Thompson and Mia Nash have not been able to find any

17 documents purporting to convey ownership of the property to Ella M. Coombs and/or J. M.

18 Kitts. Further, Defendant PG&E has not provided any documents purporting to convey

19 ownership of the property to Ella M. Coombs and/or J. M. Kitts. Therefore, Kevin Thompson

20 and Mia Nash are informed and believe, and thereon allege, that neither Ella M. Coombs or J.

21 M. Kitts owned the property at the time of the deed and no valid easement arose from the

22 document.

23      19.     The 1909 document is signed "Ella M. Coombs." The 1909 document is not signed

24 by J. M. Kitts. The 1909 document is not notarized. Kevin Thompson and Mia Nash are

25 informed and believe, and thereon allege, that the document was not recorded.

26      20.     Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that

27                         -6-

since the 1909 document was not signed by both Ella M. Coombs and J.M. Kitts "the parties of the first part" no valid easement arose from the document.

## **FIRST CAUSE OF ACTION**

**Declaratory Relief: The 1909 Document Did Not Create an Easement**

**(Against All Defendants)**

21.     Kevin Thompson and Mia Nash hereby incorporate by reference Paragraphs 1 through 20 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

22.     An actual controversy has arisen and now exists between Kevin Thompson and Mia Nash and Defendant PG&E concerning their respective rights and duties.

23.     Kevin Thompson and Mia Nash contend that Defendant PG&E's wrongful claim effectively stops them from being able to develop their property or use it in any meaningful way. Defendant PG&E's wrongful easement claim renders the property essentially worthless to Kevin Thompson and Mia Nash.

24.     Kevin Thompson and Mia Nash seek a judicial determination of their rights and duties, and a declaration as to whether the 1909 document creates a valid easement.

25.     Kevin Thompson and Mia Nash are informed and believe, and thereon further allege, that Defendant PG&E wrongfully placed North South traveling underground and overhead lines for which it has no possible easement rights. Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that Defendant placed the lines without permission of the property owner at the time.

26.     Defendant PG&E also claims that even if it has no easement rights on the property, Electric Rule 15 would require Kevin Thompson and Mia Nash to pay for moving Defendant PG&E's illegally placed electric poles and lines.

27.     Kevin Thompson and Mia Nash are informed and believe, and thereon further

-7-

allege, that Electric Rule 15 does not apply because that rule does not apply to property disputes between PG&E and property owners.

28.    A judicial declaration is necessary and appropriate at this time so that Kevin Thompson and Mia Nash may put their property to use.  Kevin Thompson and Mia Nash want to develop their property, but cannot safely proceed without knowing whether Defendant PG&E has the easement it claims and whether Electric Rule 15 applies.

29.    Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that Defendant PG&E has attempted, and continues to attempt, to deceive them into believing that Defendant PG&E has an easement so extensive that it renders their property essentially useless and worthless and grants Defendant PG&E essentially exclusive use of the property. Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that Defendant PG&E has made, and continues to make, these assertions without any support in the facts or law.

**SECOND CAUSE OF ACTION**

**Declaratory Relief:**

**The 1909 Document Cannot Create an Easement So Extensive**

**As To Preclude the Property's Meaningful Use By Its Owners**

**(Against All Defendants)**

30.    Kevin Thompson and Mia Nash hereby incorporate by reference Paragraphs 1 through 20, and 22 through 29 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

31.    An actual controversy has arisen and now exists between Kevin Thompson and Mia Nash and Defendant PG&E concerning their respective rights and duties.

32.    In the alternative, Kevin Thompson and Mia Nash seek a judicial determination of their rights and duties, and a declaration that if the 1909 document gave rise to a valid

-8-

easement, it could not create an easement so extensive as to render the property functionally useless and worthless for Kevin Thompson and Mia Nash.

        a.      The 1909 document states, in pertinent part:

"Witnesseth, that the parties of the first part, for and in consideration of the sum of five dollars in gold coin of the United States of America . . . the right of erecting, constructing, reconstructing, replacing, repairing, maintaining, and using for the transmission and distribution of electricity a single line of poles and wires . . . ."

33.    Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that Defendant PG&E have, and continue to, deliberately misstate the terms of the 1909 document so as to control as much of the property as possible.

34.    Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that since the 1909 document does not provide for such an extensive easement, it cannot give rise to one.

35.    When PG&E drafted the 1909 document, the land which Kevin Thompson and Mia Nash own was a small part of a large parcel of land. As the large parcel was subdivided, until Kevin Thompson's and Mia Nash's parcel was created, the burden created by such an easement went from small (and worth $5.00) to essentially engulfing the entire use and value of the property. This overwhelming change in circumstances renders Defendant PG&E's claimed easement an intolerable burden. Such an easement, if one exists, must be extinguished.

36.    Indeed, an easement extensive enough to essentially eliminate Kevin Thompson's and Mia Nash's property rights violate the terms of the 1909 document:

"The party of the second part in the enjoyment of the rights hereby granted shall avoid, so far as it reasonably can, interfering with the use by the parties of the first part of such lands for mining, agricultural and other purposes."

-9-

37.     Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that at no time has Defendant PG&E needed to use, or used, a portion of the property so extensive as to essentially give Defendant PG&E exclusive control of the property. As such, claiming an easement so extensive that it precludes Kevin Thompson and Mia Nash from using their property is unreasonable. Accordingly, any easement unreasonably burdening Kevin Thompson and Mia Nash's use of their property must be extinguished.

38.     A judicial declaration is necessary and appropriate at this time so that Kevin Thompson and Mia Nash may put their property to use.  Kevin Thompson and Mia Nash want to develop their property or otherwise meaningfully use it, but cannot safely proceed without knowing whether Defendant PG&E has the easement it claims.

39.     Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that Defendant PG&E has attempted, and continues to attempt, to deceive them into believing that Defendant PG&E has an easement so extensive that it renders their property essentially useless and worthless and grants Defendant PG&E essentially exclusive use of the property. Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that Defendant PG&E has made, and continues to make, these assertions without any support in the facts or law.

## THIRD CAUSE OF ACTION

### Declaratory Relief: No Prescriptive Easement Arose

### (Against All Defendants)

40.     Kevin Thompson and Mia Nash hereby incorporate by reference Paragraphs 1 through 20, 22 through 29 and 31 through 39 of this Complaint as if fully set forth herein and for a cause of action alleges as follows:

41.     An actual controversy has arisen and now exists between Kevin Thompson and Mia Nash and Defendant PG&E concerning their respective rights and duties.

-10-

1     42.    Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that

2 if Defendant PG&E fails to establish that the 1909 document creates an easement on the

3 property, then Defendant PG&E will assert that it is entitled to a prescriptive easement on the

4 property.

5     43.    Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that

6 Defendant has never made a claim of a prescriptive easement on the property.[1] Indeed, the

7 sole basis upon which Defendant PG&E informed Kevin Thompson and Mia Nash of its

8 claimed easement was arising out of either the 1914 or 1909 documents.

9     44.    Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that

10 Defendant PG&E cannot establish the elements of a prescriptive easement. The elements of a

11 prescriptive easement are: (1) use of the property over which the easement is claimed for at

12 least five years; and (2) the use has, during all of that time, been open, notorious, adverse,

13 continuous, and uninterrupted.

14     45.    Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that

15 Defendant PG&E's use has not been "adverse." A use is "adverse" if it is *not* (1) made in

16 subordination to the owner's rights or (2) with the permission of the owner of the property.

17     46.    Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that

18 Defendant PG&E's exclusive reliance on a deed to establish an easement is, by definition, in

19 subordination of their, and all of the previous property owners', rights. In other words,

20 Defendant PG&E's reliance on a deed is Defendant PG&E asserting that it has the property

21 owners' permission to be on the property. Kevin Thompson and Mia Nash are informed and

22 believe, and thereon allege, that the fact that the 1909 document does not create an easement

23 does not change the fact that Defendant PG&E has exclusively relied on permission to be on

24

25     [1]The parties have had discussions the substance of which are not properly

26 part of this Complaint. (Evidence Code § 1152.)

27                -11-

the property. A prescriptive easement cannot arise when a claimant has permission or relies on permission.

47.     In the alternative, even if Defendant PG&E were entitled to a prescriptive easement, the easement could not be so extensive as to render the property essentially useless and worthless. Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that a prescriptive easement that would provide all meaningful use to Defendant PG&E and preclude any meaningful use for themselves, would not be an easement. It would be the practical equivalent of an estate and, thus, cannot arise. Further, even if a prescriptive easement could have arisen sometime in the past, the overwhelming change in circumstances in the property size would transform Defendant PG&E's claimed easement into an intolerable burden. Such an easement, if one could arise, must be extinguished.

48.     A judicial declaration is necessary and appropriate at this time so that Kevin Thompson and Mia Nash may put their property to use.  Kevin Thompson and Mia Nash want to build on their property, but cannot safely proceed without knowing whether Defendant PG&E is entitled to a prescriptive easement and the extent of that easement.

49.     Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that Defendant PG&E has attempted, and continues to attempt, to deceive them into believing that Defendant PG&E has an easement so extensive that it renders their property essentially useless and worthless and grants Defendant PG&E essentially exclusive use of the property. Kevin Thompson and Mia Nash are informed and believe, and thereon allege, that Defendant PG&E has made, and continues to make, these assertions without any support in the facts or law.

/ / /

-12-

## PRAYER FOR RELIEF

Wherefore, Kevin Thompson and Mia Nash, request relief as follows:

### For the First Cause of Action.

1. For a judgment that their property is not burdened by an easement in Defendant PG&E's favor arising out of the 1909 document;

2. For a judgment that Electric Rule 15 does not apply to this matter;

3. For a judgment ejecting Defendant PG&E from the property, including a judgment ordering Defendant PG&E to remove all its poles and any line or equipment attached to the poles at its sole expense;

4. For a judgment ordering Defendant PG&E to remove the North South underground and overhead lines at its sole expense.

### For the Second Cause of Action.

1. In the alternative that the Court determines that the 1909 document created an easement, for a judgment that the easement is extinguished;

2. In the alternative that if the Court determines that the 1909 document created an easement, and the easement should not be extinguished, for a judgment limiting the easement such that Kevin Thompson and Mia Nash can meaningfully develop their property in a manner to be proved at trial.

### For the Third Cause of Action

1. For a judgment that the property is not burdened by a prescriptive easement in Defendant PG&E's favor;

2. In the alternative that if the Court determines that Defendant PG&E is entitled to a prescriptive easement, for a judgment that the easement is limited such that Kevin Thompson

-13-

1   and Mia Nash can meaningfully develop their property in a manner to be proved at trial.

2                               **For All Causes of Action**

3     1.     For attorneys' fees as provided by law;

4     2.     For costs of suit incurred herein; and

5     3.     For such other and further relief as the Court may deem equitable and appropriate.

6

7   DATED:  1/28/19                     FRANK BLOKSBERG

8

9

10                               BY:  _____

11                                     Frank Bloksberg
                                      Attorney for Plaintiffs

12                                       KEVIN THOMPSON and
                                      MIA NASH

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                               -14-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT A

# GRANT OF RIGHT OF WAY

## FOR

2116-08-0037

## Electric Transmission Line

**This Indenture** made by and between ELLA M. COOMBS of
the City and County of San Francisco, State of California, and J.
M. PITTS of the County of Nevada, State of California,

the part____ of the first part, and **PACIFIC GAS AND ELECTRIC COMPANY,**

a corporation duly organized and existing under and by virtue of the laws of the State of
**California** _____, the party of the second part.

**Witnesseth,** that the part____ of the first part, for and in consideration of the sum of five
dollars ($5.00) in gold coin of the United States of America, to_____ in hand paid by the
said party of the second part, the receipt whereof is hereby acknowledged, do_____ hereby
grant unto the said party of the second part, its successors and assigns, the right of erect-
ing, constructing, reconstructing, replacing, repairing, maintaining, and using for the trans-
mission and distribution of electricity_____ a single
line___ of poles and wires suspended thereon and supported thereby, and wires for telephone
and telegraph purposes, and all necessary and proper cross-arms, braces, connections, fas-
tenings and other appliances and fixtures for use in connection therewith, and also a right
of way along the same of a uniform width of ____ feet, lying equally on each side of
the line hereinafter described, together with the right of ingress thereto and egress there-
from, upon, over and across the lands of the part____ of the first part, situate in the County
of **Nevada** _____, State of California, and more particularly described as fol-
lows, viz.:

Fractional North half (N½) of the Northwest
quarter (NW¼) of the Northwest quarter (NW¼) and fractional North
half (N½) of the North half (N½) of Northwest quarter (NW¼) of
Northeast quarter (NE¼) of Section Twenty-four (24), Township Six-
teen (16) North, Range Eight (8) East, Mount Diablo Base and Meridian.

The center line of the said right of way where the same crosses the said lands has been
located and marked upon the ground by stakes driven therein by the Engineers of the party
of the second part and approved by the part____ of the first part, and is more particularly
described as follows, viz.:

Beginning at a point from which the quarter
section corner common to Sections Thirteen (13) and Twenty-four (24),
Township Sixteen (16) North, Range Eight (8) East, M. D. B. & M. bears
North Seventy-seven degrees (77°) and five minutes (5') West Six

Case: 19-30088   Doc# 879   Filed: 03/14/19   Entered: 03/14/19 12:46:24   Page 21 of
23

hundred and Nineteen (619) feet, and running thence South Eighty-four degrees (84°) West One Thousand Nine Hundred and Eighty (1,980) feet more or less to the road marking the boundary between the lands of the Glenwood Land Co. and the party of the first part, all as shown and indicated by a red line on the blue print herewith attached and made a part hereof.

The parties of the first part also grant to the party of the second part the right of patrolling said line of poles and wires and of erecting, maintaining and using gates in all fences which cross or hereafter shall cross said right of way.

The party of the second part in the enjoyment of the rights hereby granted shall avoid, so far as it reasonably can, interfering with the use by the parties of the first part of such lands for mining, agricultural and other purposes.

The party of the second part, its successors and assigns, shall have full right and liberty of using such right of way for all purposes connected with the construction, maintenance and use of such line of poles and wires, and shall also have full right and liberty of cutting and clearing away all trees and brush within 25 feet on either side of said center line whenever necessary or proper for the convenient use and enjoyment of the said line of poles and wires and right of way; provided, however, that all trees which the party of the second part is hereby authorized to cut and remove shall, if valuable for either timber or wood, continue to be the property of the parties of the first part, but all tops, lops, brush and refuse wood or timber shall be burned by the party of the second part.

In Witness Whereof, the parties of the first part have executed these presents this _____ 29ᵗʰ _____ day of _____ April _____, 19 09

Ella M. Coombs.

Executed in the presence of

A M° Rand
WITNESS.

APPROVED AS TO DESCRIPTION
G. Neuley
Mass. Loan Co.

# GRANT OF RIGHT OF WAY

FOR

## Electric Transmission Line

ELLA M. COOMBS, et al

TO

PACIFIC GAS & ELECTRIC COMPANY

Dated _____ 190____