1     UNITED STATES BANKRUPTCY COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3       -oOo-

4 In Re:        ) Case No. 19-30088
           ) Chapter 11
5 PG&E CORPORATION AND PACIFIC )
 GAS AND ELECTRIC COMPANY  ) San Francisco, California
6           ) Wednesday, March 13, 2019
       Debtors. ) 9:30 AM
7 _____ )
           MOTION OF DEBTORS PURSUANT TO
8          11 U.S.C. SECTIONS 105, 362,
          363, 364, 503 AND 507, AND
9          FED. R. BANKR. P. 2002, 4001,
          6003, 6004 AND 9014 FOR
10         INTERIM AND FINAL ORDERS (I)
          AUTHORIZING THE DEBTORS TO
11         OBTAIN SENIOR SECURED,
          SUPERPRIORITY, POSTPETITION
12         FINANCING, (II) GRANTING
          LIENS AND SUPERPRIORITY
13         CLAIMS, (III) MODIFYING THE
          AUTOMATIC STAY, (IV)
14         SCHEDULING FINAL HEARING AND
          (V) GRANTING RELATED RELIEF
15         [23]

16         MOTION OF DEBTORS PURSUANT TO
          11 U.S.C. SECTIONS 105(A),
17         363(B), AND 507 AND FED. R.
          BANKR. P. 6003 AND 6003 FOR
18         INTERIM AND FINAL AUTHORITY
          TO (I) (A) CONTINUE EXISTING
19         CASH MANAGEMENT SYSTEM, (B)
          HONOR CERTAIN PREPETITION
20         OBLIGATIONS RELATED TO THE
          USE THEREOF, (C) CONTINUE
21         INTERCOMPANY ARRANGEMENTS,
          (D) CONTINUE TO HONOR
22         OBLIGATIONS RELATED TO JOINT
          INFRASTRUCTURE PROJECTS, AND
23         (E) MAINTAIN EXISTING BANK
          ACCOUNTS AND BUSINESS FORMS;
24         AND (II) WAIVING THE
          REQUIREMENTS OF 11 U.S.C.
25         SECTION 345(B)[7]

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

MOTION OF DEBTORS PURSUANT TO
11 U.S.C. SECTIONS 105(A),
363(B), AND 503(B)(9) AND
FED. R. BANKR. P. 6003 AND
6004 FOR INTERIM AND FINAL
AUTHORITY TO PAY PREPETITION
OBLIGATIONS OWED TO CERTAIN
SAFETY AND RELIABILITY,
OUTAGE, AND NUCLEAR FACILITY
SUPPLIERS [12]

MOTION OF DEBTORS PURSUANT TO
11 U.S.C. SECTIONS 105(A),
363(B), AND 507, AND FED. R.
BANKR. P. 6003 AND 6004 FOR
INTERIM AND FINAL AUTHORITY
TO (I) PAY PREPETITION WAGES,
SALARIES, WITHHOLDING
OBLIGATIONS, AND OTHER
COMPENSATION AND BENEFITS,
(II) MAINTAIN EMPLOYEE
BENEFITS PROGRAMS; AND (III)
PAY RELATED ADMINISTRATIVE
OBLIGATIONS [8]

MOTION OF PUBLIC ENTITIES FOR
APPOINTMENT OF OFFICIAL
COMMITTEE OF PUBLIC ENTITIES
PURSUANT TO 11 U.S.C.
SECTIONS 1102(A)(2) AND
105(A) FILED BY PUBLIC
ENTITIES IMPACTED BY THE
WILDFIRES [720]

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:                MATTHEW P. GOREN, ESQ.
                                STEPHEN KAROTKIN, ESQ.
                                Weil, Gotshal & Manges, LLP
                                767 Fifth Avenue
                                New York, NY 10153
                                (212) 310-8440

```
 1                              PAUL H. ZUMBRO, ESQ.
                                Cravath, Swaine & Moore, LLP
 2                              Worldwide Plaza
                                825 Eighth Avenue
 3                              New York, NY 10119
                                (212) 474-1036
 4
                                JANE KIM, ESQ.
 5                              Keller Benvenutti
                                650 California Street
 6                              Suite 1900
                                San Francisco, CA 94108
 7                              (415) 364-6793

 8   For the U.S. Trustee       TIMOTHY S. LAFFREDI, AUST
                                Office of The United States
 9                              Trustee
                                280 South First Street
10                              Room 268
                                San Jose, CA 95113
11                              (408) 535-5525

12   For Creditors' Committee:  THOMAS R. KRELLER, ESQ.
                                Milbank LLP
13                              2029 Century Park East
                                33rd Floor
14                              Los Angeles, CA 90067
                                (424) 386-4463
15
     For Wilson's Utility       HOWARD M. LEVINE, ESQ.
16   Construction:              Sussman Shank LLP
                                1000 SW Broadway
17                              Suite 1400
                                Portland, OR 97205
18                              (503) 227-1111

19   For Bank of America:       M. DAVID MINNICK, ESQ.
                                Pillsbury, Winthrop, Shaw, Pittman
20                              Four Embarcadero Center
                                22nd Floor
21                              San Francisco, CA 94111
                                (415) 983-1000
22
     For the Fire Claimants:    CHRISTOPHER V. HAWKINS, ESQ.
23                              Sullivan Hill
                                600 B Street
24                              17th Floor
                                San Diego, CA 92101
25                              (619) 595-3218
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For the Official Committee   CECILY A. DUMAS, ESQ.
     of Tort Claimants:           Baker & Hostetler LLP
 2                                11601 Wilshire Boulevard
                                  Suite 1400
 3                                Los Angeles, CA 90025
                                  (310) 442-8886
 4
                                  ERIC R. GOODMAN, ESQ.
 5                                Key Tower, 127 Public Square
                                  Suite 2000
 6                                Cleveland, OH 44114
                                  (216) 621-0200
 7
     For Various Public           SANDER L. ESSERMAN, ESQ.
 8   Entities:                    Stutzman, Bromberg, Esserman &
                                  Plifka
 9                                2323 Bryan Street
                                  Suite 2200
10                                Dallas, TX 75201
                                  (214) 969-4910
11
     For DIP Lenders:             KRISTOPHER M. HANSEN
12                                JPMorgan Chase as Administrative
                                  Agent
13                                Stroock & Stroock & Lavan LLP
                                  180 Maiden Lane
14                                New York, NY 10038
                                  (212) 806-6056
15

16

17

18   Court Recorder:             JANE GALVANI
                                  United States Bankruptcy
19                                Court
                                  450 Golden Gate Avenue, 16th Floor
20                                San Francisco, CA 94102

21   Transcriber:                KANDI GAFFNEY
                                  eScribers, LLC
22                                7227 N. 16th Street
                                  Suite #207
23                                Phoenix, AZ 85020
                                  (973)406-2250
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

PG&E Corp And Pacific Gas And Electric Co

1

2                              -oOo-

3       (Call to order of the Court.)

4          THE CLERK:  All rise.  Court is now in session, the

5   Honorable Dennis Montali presiding.

6          THE COURT:  Good morning everyone.

7          IN UNISON:  Morning.

8          THE CLERK:  Matter of PG&E Corporation.

9          THE COURT:  Mr. Karotkin, how do you want to proceed

10  today?

11         MR. KAROTKIN:  Good morning, Your Honor.  Stephen

12  Karotkin, Weil, Gotshal and Manges for the debtors.  My

13  suggestion, of course subject to your guidance, would be that

14  two of the orders first --

15         THE COURT:  Two for action and two for no action,

16  right?

17         MR. KAROTKIN:  Two of the first day orders which are

18  on today for final hearing to the extent there were any

19  objections they didn't resolve, so I would suggest we proceed

20  with those first, and then the hearing on the DIP motion, and

21  then on the request for an additional committee if that's fine

22  with you.

23         THE COURT:  Okay.  I have just one, sort of, general

24  housekeeping question.  Where is the U.S. Trustee?  Is someone

25  from the U.S. Trustee's Office -- oh, I see.  So we're about

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  six weeks into the case and with today, maybe we're going to

2  get done the first wave of first day orders.  When am I going

3  to see some employment applications and whether that's going to

4  be heard or what?  I mean, if there's a short answer, I'll --

5  that's good enough for me.  I just don't want them to get

6  put --

7          MR. GOREN:  Well, we --

8          MR. LAFFREDI:  We -- go ahead.

9          MR. GOREN:  Good morning, Your Honor.  Matthew Goren

10  on behalf of the debtors.  We've been in contact with the U.S.

11  Trustee's Office and submitting drafts of the various retention

12  applications on a rolling basis.  The first wave we're

13  anticipating filing actually later today, Your Honor.

14          THE COURT:  Okay.

15          MR. GOREN:  And then we are continuing to have

16  discussions with some of the retention applications with Mr.

17  Laffredi's colleagues.

18          THE COURT:  Well, I wasn't thinking the ordinary

19  course ones.

20          MR. GOREN:  No.

21          THE COURT:  I'm thinking the principal one, your firm,

22  committee's, et cetera.

23          MR. GOREN:  We are referring to the principal, yeah.

24          THE COURT:  And Mr. Laffredi, do you anticipate

25  setting those for hearing or not?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          MR. LAFFREDI:  Well, we're -- sorry, Your Honor.

2          THE COURT:  Yeah.  It's all right.

3          MR. LAFFREDI:  We've been working through some issues

4     that have been coming up.

5          THE COURT:  Okay.  You don't have to go public with

6     it.

7          MR. LAFFREDI:  Yeah.

8          THE COURT:  But I still need to know what to do about

9     it.  That's all.

10         MR. GOREN:  Sure.  I can tell you in some of the

11    discussions with the U.S. Trustee, they've asked us to notice

12    them for a hearing, Your Honor, but whether or not one is

13    necessary, we obviously defer to you and the U.S. Trustee on

14    that, where there have been no issues raised or objections, or

15    if we've worked out all the issues with the U.S. Trustee in

16    advance.

17         THE COURT:  Well, let's see if you and the U.S.

18    Trustee work out an agreement.  I mean, obviously in simple

19    cases, the run-of-the-mill type employment applications, those

20    are usually set in this District or approved without a hearing.

21    But this case is not that case.  So let's just defer it for

22    now.  I had a sense that you all hadn't forgotten about it.

23         MR. GOREN:  Not at all, Your Honor.

24         THE COURT:  But I hadn't -- I was concerned about it

25    because we are -- and I had -- I think on the very first day I

PG&E Corp And Pacific Gas And Electric Co

1    made a point of saying I don't mind waiting for the

2    professionals because there's so much going on in the case.

3    But six weeks?  Hey.

4              MR. GOREN:  Yeah.

5              THE COURT:  We're on a role.

6              MR. GOREN:  Thank you, Your Honor.

7              THE COURT:  Okay.  So let's go back the two routine

8    motions, Mr. Karotkin.

9              MR. KAROTKIN:  Yes, sir.  The first one's the case

10   management motion.  Your Honor, since that motion was filed in

11   both the first day hearing and the second day hearing, we made

12   a number of changes to address some concerns raised by the

13   parties.  Most of those were reflected on a proposed revised

14   order that was filed on Friday.

15             THE COURT:  Right, I'm aware of that.

16             MR. KAROTKIN:  And --

17             THE COURT:  Yeah, I'm fine with both of them.  Let me

18   take both of them.  Does anyone in Court or on the phone want

19   to be heard on the cash management motion or the operational

20   integrity motion?  Mr. Laffredi?

21             MR. KAROTKIN:  I will --

22             THE COURT:  Go ahead.

23             MR. KAROTKIN:  I will note one thing, that yesterday

24   we were still in discussions with the U.S. Trustee on some of

25   the 345 matters and we did add one more modification to the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   order yesterday to address a concern raised by the U.S. Trustee

2   with respect to one of the banks that is in the process --

3          THE COURT:  Right.

4          MR. KAROTKIN:  -- of getting the required

5   authorizations --

6          THE COURT:  That one bank and that one amount of

7   money, I thought, was going to be deferred?

8          MR. KAROTKIN:  It is.

9          THE COURT:  Yeah.

10         MR. KAROTKIN:  And there's proposed language in the

11  revised order that --

12         THE COURT:  No, no.  That's fine.  I'm okay with that.

13         MR. KAROTKIN:  One other thing I would like to

14  mention, with respect to that motion, in the original motion,

15  Your Honor, we had indicated that the estimate amount of

16  accrued pre-petition payment processing fees which relate to

17  fees paid to certain of the banks for payment support and

18  processing for customers making payments by credit card, debit

19  card, ACH bank payment, was approximately 400,000 dollars.  As

20  it turned out, that estimate was incorrect.  It's closer to 1.1

21  million dollars.  I would note that the banks have setoff

22  rights as to that.

23         We would request that -- we note that the final order

24  does not have a proposed cap on that amount, but we wanted to

25  advise the Court and the parties of the error in that estimate.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    We could file a supplemental application if you would like,

2    but --

3          THE COURT:  I don't think that's necessary.  Yeah, no,

4    that's fine.

5          MR. KAROTKIN:  Okay.

6          THE COURT:  I mean, and if anybody wants to be heard

7    on this, I'll take it right now but it sounds to me like it's

8    perfectly okay to do it that way.

9          MR. KAROTKIN:  Thank you, sir.

10          THE COURT:  Okay.

11          MR. KAROTKIN:  And then on the operational

12    integrity --

13          THE COURT:  Did you want to be heard on the cash

14    management, for the gentleman in the back?

15          MR. LEVINE:  No, Your Honor.

16          THE COURT:  Oh, okay.  Sorry.

17          MR. MINNICK:  If I could just be heard really quickly?

18          THE COURT:  Mr. Minnick, good morning.

19          MR. MINNICK:  I just want to confirm that -- this is

20    Dave Minnick for Bank of America, from the Pillsbury firm --

21    that they were able to -- we were able to work out some

22    language I believe they said is included in the --

23          MR. KAROTKIN:  Yes, sir.

24          MR. MINNICK:  -- revised area with respect to the

25    banks that are authorized banks.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  Okay, that's fine.  Thank you, Mr.

2  Minnick.

3    MR. KAROTKIN:  Thank you.

4    MR. MINNICK:  All right.

5    THE COURT:  So what else?

6    MR. KAROTKIN:  Yes.

7    THE COURT:  I mean, I have one other housekeeping

8  matter that -- but I want to take care of these two orders.

9    MR. KAROTKIN:  Sure.  I mean, operational integrity

10  order, the only revisions that were made, again, they were

11  reflected in what was filed on Friday, deal with advance notice

12  to the committees and now the DIP agent with respect to

13  payments in excess of three million dollars.  And we've added

14  language clarifying some of the reporting requirements to the

15  committees and the agent.  And other than that, there are no

16  outstanding matters.

17    THE COURT:  Okay.  I'll look forward to getting those

18  two orders uploaded soon then, just in the normal course.  Now,

19  again, you -- gentleman wanted to be heard, but didn't know

20  what about.

21    MR. LEVINE:  Your Honor, good morning.  Howard Levine

22  from Sussman Shank in Portland on behalf of Wilson's Utility

23  Construction.  We did file a response to the operational

24  integrity motion which we wanted to make sure the Court was

25  aware of.  And we're very supportive of the motion, and I'm

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    pleased the Court is going to be granting it.

2            THE COURT:  No, I am aware of that.  And I had gone

3    down the list of all the people, including your client, had

4    weighed in early on and I was just on the checklist to make

5    sure they aren't forgotten.  So that's fine.  Thank you, Mr.

6    Levine.

7            MR. LEVINE:  Thank you, Your Honor.

8            THE COURT:  So we put it to bed briefly recently, the

9    case management order.  And people from your office and Ms. Kim

10   particularly was in touch with our office.  There are some fine

11   tweaks that I'm going to want to do about that.  Let me just --

12   I don't want to spend a lot of time on it.

13           But a number of counsel, including your firm, Mr.

14   Karotkin, has gotten the message.  But a number of people are

15   not yet up to speed on the process we've changed to do away

16   with the footers -- your footers on the pleadings.  That was a

17   lot of vestige going back ages, but when we went to the

18   electronic filing, the electronic footers overlap the old

19   traditional footers.  So I'm just going to ask again that

20   counsel -- and again, particularly not the lawyers who are

21   filing lots of papers in this case -- remind your staff to

22   delete those footers.  It's a simple problem.  We can't see the

23   document -- the docket information and the footer information.

24           Also, a number -- because of the size of the docket

25   and the number of things that are being filed constantly, and

PG&E Corp And Pacific Gas And Electric Co

1    to some extent the way we have to manage these hearings, I'm

2    going to prepare another modification to the case management

3    order that will require that anyone filing something that

4    relates to a hearing have the hearing date on the front page,

5    and also that there be a docket link or a docket reference so

6    that when we look at the document -- and not we only, everyone

7    looks at the document, can see it linked to the corresponding

8    docket number so that, for example, if one of you files an

9    objection to a hearing that's set for March 27th, your paper

10   that you file should show March 27th, and should show the

11   docket item that is the subject of that motion.  My short,

12   small staff here cannot keep up with all of the things that are

13   happening constantly.  So I need everyone to help on that.

14            And again, lawyers and non-lawyers who are monitoring

15   these cases on a volume basis, you need that benefit of it

16   also.  So no more -- it's not an action item.  We'll just get a

17   proposed modification to the case management order for comment

18   by your firm and the committee's counsel.

19            MR. KAROTKIN:  Sure.

20            THE COURT:  Okay?

21            MR. KAROTKIN:  Thank you, sir.

22            THE COURT:  Yeah.  Thank you.

23            MR. KAROTKIN:  Now, I believe, if we could proceed

24   with the motion to approve the DIP financing?

25            THE COURT:  And I apologize to those -- I forgot to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  include it in the docket text order about it when you'd have

2  time to be heard.  Now you will have time to be heard and

3  everybody on board with the way we did the time allocation?

4           MR. KAROTKIN:  I believe so, sir.

5           THE COURT:  I suggested that you go first with the

6  portion of 45 minutes.

7           MR. KAROTKIN:  Yes.

8           THE COURT:  Right?

9           MR. KAROTKIN:  And Mr. Zumbro will handle that on

10 behalf of the debtors.

11          THE COURT:  Here's what I'm going to probably do.  I'm

12 going to do my best to listen to the arguments of counsel, but

13 I do have some questions and comments, and perhaps even

14 disagreements with some of the things that have been filed and

15 mentioned.  So I'll either do it in the course of the

16 presentation or at the end of the arguments I'll give you my

17 views on a couple of points.

18          A couple of them are minor.  A couple of them are

19 clarifying.  And a couple of them, I think, are more

20 significant.  So with that, Mr. Zumbro, I will invite you to

21 begin and you've got the first portion of 45 minutes.  Are you

22 allocating it with the committee on --

23          MR. ZUMBRO:  Yes, sir.  It's -- per your docket order,

24 we have agreed with an allocation between ourselves, the DIP

25 lender, and the unsecured creditors' committee.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  Yeah, I forgot about the DIP lender also.

2    Okay.

3    MR. ZUMBRO:  Yep.

4    THE COURT:  So do I need to know that or are you just

5    going to do it on your own?

6    MR. ZUMBRO:  Let's keep it a mystery for now.

7    THE COURT:  Good.  You don't have to use the whole

8    time either.

9    MR. ZUMBRO:  No.  And I don't intend to.  Thank you,

10   sir.  So, good morning.  It's good to be here before you again.

11   Paul Zumbro from Cravath, Swaine and Moore on behalf of the

12   debtors.

13   So we're here to request that the Court enter the

14   proposed final order requesting the relief requested in the DIP

15   motion.  At the first day hearing, Your Honor approved the

16   proposed DIP financing on an interim basis.  Since that time, I

17   do want the Court to know that the debtors have prudently

18   managed borrowing under the DIP facility.

19   As you may recall, Your Honor, we discussed the 1.5

20   billion dollars for which we sought authorization on the first

21   day hearing.  And I told Your Honor that we were only going to

22   use as much borrowing as we needed.

23   THE COURT:  Right.

24   MR. ZUMBRO:  And I just wanted to report that as of

25   February 28th, which is when the debtors filed our 10-K, that

PG&E Corp And Pacific Gas And Electric Co

1    the utility had outstanding borrowings of 350 million dollars

2    plus thirty million dollars in letters of credit of the 1.5

3    billion authorized at the interim hearings.  I just wanted to

4    make sure the Court was aware that, although we did get

5    authorization for the higher amount, we did utilize the

6    flexibility --

7              THE COURT:  Come in under budget.  It's always a good

8    practice.

9              MR. ZUMBRO:  Under the budget, correct.

10             THE COURT:  Yeah.

11             MR. ZUMBRO:  Also as the Court's aware, since we were

12   here before Your Honor last time on the DIP motion, the

13   official committees had been formed.  The unsecured creditors'

14   committee was formed on February 12th, the tort claimants'

15   committee was formed on February 15th.  Both committees

16   subsequently retained counsel, as well as financial advisors.

17   And the debtors, and our financial advisors at Lazard and

18   AlixPartners, worked very closely with the advisors for the

19   committees to make sure they had a full opportunity to

20   diligence, both from a legal and financial perspective, the

21   proposed DIP facility financing terms.

22             We also worked with them on informal objections and

23   addressing certain of the matters that were raised.  We filed a

24   black line of the proposed order on the docket at number 709-1.

25   We filed that on February 28th to make sure everybody had

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  adequate notice to review and digest that before today's

2  hearing.

3       I think importantly, Your Honor, the unsecured

4  creditors' committee filed yesterday a statement in support of

5  the DIP facility.  We do acknowledge that the tort committee

6  and certain other wildfire claimants filed limited objections.

7  And as we stated in our reply, Your Honor, the debtors are

8  certainly mindful of some of the concerns that were raised in

9  those papers, but we just believe that those are not really

10  relevant considerations for a DIP financing.

11       THE COURT:  Well, some of them are.  I mean, some of

12  the fire victims' committee are more traditional and some are

13  not.

14       MR. ZUMBRO:  Right.

15       THE COURT:  And I mean, I'm not -- it's not all or

16  nothing as far as I take it, particularly from the fire

17  committee.

18       MR. ZUMBRO:  I understand.  I'm going to go through

19  the ones that we viewed as --

20       THE COURT:  Okay.

21       MR. ZUMBRO:  -- sort of significant, live objections

22  and, of course the Court, if you have -- you mentioned you had

23  some other concerns.  We'll be happy to address the --

24       THE COURT:  Well, somebody has to raise them, right?

25       MR. ZUMBRO:  Exactly.  But before I go through the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    objections, Your Honor, first and foremost, I think it's

2    important to note that nobody -- not even the tort committee --

3    nobody has really objected to the core principle proposed

4    financing.  Nobody has said that we don't need the funding.

5    Nobody has disputed the fact that, without the financing, the

6    debtors' ability to provide safe and reliable gas and

7    electricity service to the millions of customers who would be

8    at risk -- nobody has disputed that our business judgment was

9    properly exercised in connection with the DIP.

10        Moreover, nobody has challenged the size of the DIP

11   facility and nobody has challenged the adequacy of the debtors'

12   marketing process in respect of the DIP facility.  Those are,

13   sort of, key from our perspective.  We believe --

14        THE COURT:  On that subject, I am a fan of proper

15   foundation for making good faith findings and the DIP papers

16   talk about a good faith finding.  And I did review Mr. Kurtz's

17   declaration, and I was satisfied that if I'm persuaded to

18   approve the financing, I'll make the corresponding finding

19   because his declaration, I think, adequately lays that

20   foundation.

21        MR. ZUMBRO:  Thank you, sir.  Yes.  I do think he

22   describes the marketing process, as well as the good faith

23   negotiation with the DIP lenders.  So we appreciate that.

24        Overall, we think it's a very clean DIP financing.

25   It's favorable in terms of both pricing and other terms from

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    the debtors' perspective.  And we really do think that's the

2    key overall point.  But with that, I'd like to just briefly

3    address a few of the live objections, the ones that we thought

4    were the most significant, and how the debtors view those.

5         The first, I think, is the stay relief point, Your

6    Honor.  The tort committee objects to the, sort of, automatic

7    granting of stay relief.  They would prefer to switch the

8    burden to the DIP lenders on the stay relief point.

9         Your Honor, we did negotiate very carefully the event

10   of default triggers.  We feel very comfortable that the

11   covenants in the credit agreement are sufficiently flexible and

12   have sufficient levels of materiality built into them that the

13   debtors feel very comfortable we can operate without there

14   every being an event of default.  If, however, an event of

15   default is triggered, we understand the DIP lenders' position

16   that the burden of proof on stay relief should not be on them.

17   We agree with their view of debts and their reply that that

18   would not be market.

19        And we think at the same time, however, that doesn't

20   mean that this Court and other parties in interest won't have

21   an opportunity to weigh in on the issue.  The DIP lenders did

22   agree for a longer than market customary term for the remedies

23   notice period.  We have seven days, which is longer than is

24   typical.

25        THE COURT:  Week days.  Total days, not -- and even

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  business days?

2          MR. ZUMBRO:  Correct, seven days.

3          THE COURT:  Yeah.  I'll come back to it later.

4          MR. ZUMBRO:  Okay.

5          THE COURT:  I'll listen to the comments.

6          MR. ZUMBRO:  Okay.

7          THE COURT:  I'll say that's an issue for me, too.  So.

8          MR. ZUMBRO:  Okay.  But we do agree that that is

9  longer than is typical.  I think five or three days is probably

10 more typical in the market.  But importantly, people have the

11 opportunity.

12          And we also agreed -- through the negotiation process,

13 we wanted to make sure that everybody was aware of that.  So

14 the debtors agreed to file on the docket.  If a remedies notice

15 was put on, we were going to file on the docket within a

16 business day of that occurring so all parties in interest in

17 the case would be aware of the fact that it had been filed; not

18 just counsel to the main official committees as would be

19 typical, but every party in interest in the case will have

20 notice of that.

21          And whether termination has then occurred is obviously

22 something in that circumstance for the Court to determine.  But

23 even as this Court does determine a termination event has

24 occurred, we think paragraph 35 of the proposed order is quite

25 clear that -- makes it quite clear that CPUC's approval is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    required for any transfer of utility assets.  That was --

2         THE COURT:  You know, some of your colleagues have

3    been busy trying to persuade me and some other courts to make

4    sure that we keep exclusive decision making in the bankruptcy

5    court and not in some other entity.  That's for another day but

6    you know, that is an issue that's on people's minds, in terms

7    of the CPUC has its authority and its prerogatives but the

8    bankruptcy court does have some decision making.  Okay?

9         MR. ZUMBRO:  Absolutely.

10         THE COURT:  So.

11         MR. ZUMBRO:  It's a balance but we think we struck the

12   right balance by saying, this Court has the -- has obviously

13   under the Bankruptcy Code, it's up to this Court to decide

14   whether the stay relief should be granted.  It's up to the --

15         THE COURT:  Yeah but I don't think -- I think you've

16   taken that away.  If I read your papers correctly, the only

17   thing that I see in the DIP order, unless I've missed it, and

18   we'd come back to it later, is the Court's function is to

19   determine if there's been an event, not --

20         MR. ZUMBRO:  That's correct.

21         THE COURT:  -- not if there's relief of stay --

22         MR. ZUMBRO:  That's correct.

23         THE COURT:  -- which is a different analysis.

24         MR. ZUMBRO:  Correct.

25         THE COURT:  Okay.

PG&E Corp And Pacific Gas And Electric Co

1          MR. ZUMBRO:  So if this Court determines a termination

2     event has occurred --

3          THE COURT:  So then we just pack up our bags and go

4     home, right?

5          MR. ZUMBRO:  From the perspective --

6          THE COURT:  Go ahead.

7          MR. ZUMBRO:  -- of this Court, yes.

8          THE COURT:  Yeah.

9          MR. ZUMBRO:  But I think it's important that the CPUC

10    who's advised by a competent counsel also negotiate.  I

11    understand that there's a tension there between this Court's

12    authority and the authority of the CPUC.  But the debtor -- we

13    obviously respect this Court's authority but you have to

14    understand, we also have to be respectful of our principal

15    regulator.  And so we try to perform the balance --

16         THE COURT:  I don't mean to suggest that the

17    bankruptcy court should trump or preempt the CPUC.  The

18    question is whether there is any discretion left on this table.

19    But let's again, stick with what we -- I promised you I'd

20    listen to you and the objectors, and then I'll give you my

21    thoughts on the subject.

22         MR. ZUMBRO:  Thank you, sir.  I guess, my point was

23    that we think that their tort claimants' suggestion that the

24    CPUC's approval wouldn't be needed in addition to this Court

25    having determined that a termination event has occurred is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   misplaced, it is inconsistent with the words of the order.  I

2   think that there's sort of too clever by half dichotomy

3   between, we will seek approval, and we will obtain approval.

4   That was clearly not what's intended.  I think the wording is

5   quite clear that we would have to obtain the approval of the

6   CPUC.

7           THE COURT:  Just remind me of what paragraph that is?

8           MR. ZUMBRO:  That's paragraph 35.

9           THE COURT:  Oh, okay.  Yeah, all right.  Go ahead.  I

10  got it.

11          MR. ZUMBRO:  In terms of the next issue, is case

12  controls.  I -- we don't believe that the tort claimants'

13  committee suggests that the DIP lenders will have undue control

14  over the debtor's reorganization.  In fact, Your Honor, as we

15  sort of stressed the first day when we were before you, these

16  DIP lenders have less control in this case than is typical.

17  There's absolutely no case milestones of any kind --

18          THE COURT:  Well, there is a -- there is a drop-dead

19  date, right?

20          MR. ZUMBRO:  There's a drop-dead date for getting the

21  final approval of the DIP financing.  But it's -

22          THE COURT:  No, no.  I know that.  But I mean, the --

23          MR. ZUMBRO:  Well, there's a maturity date of the

24  facility, yes.

25          THE COURT:  2020.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          MR. ZUMBRO:  Correct.

2          THE COURT:  The end of next year, isn't it?

3          MR. ZUMBRO:  Correct.

4          THE COURT:  Okay.

5          MR. ZUMBRO:  With -- we also negotiated on that

6     point --

7          THE COURT:  I hear.

8          MR. ZUMBRO:  -- for a one-year extension.

9          THE COURT:  No, I understand.  But backup.  The

10    immediate deadline, it's the middle of next month for the

11    DIP -- okay.

12         MR. ZUMBRO:  Yes, sir.  April 15th --

13         THE COURT:  Right.

14         MR. ZUMBRO:  -- is the deadline for getting the final

15    order approved.

16         THE COURT:  Okay.

17         MR. ZUMBRO:  But other than those milestones that

18    relate specifically to the DIP financing process, there are no

19    milestones of any kind that relate to the case, in terms of

20    filing a disclosure statement, or filing a plan of

21    reorganization or any typical asset sales, any type of thing

22    you might otherwise see in a DIP order that sometimes other

23    parties complain about, zero of that here.  There's no

24    financial maintenance covenants, there's no budget --

25         THE COURT:  Right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    MR. ZUMBRO: -- there's no variance testing. We

2  negotiated a very favorable DIP in terms of -- as this Court is

3  aware, this is a very complicated case with a lot of moving

4  parts, and we wanted to make sure the financing was supporting

5  the case but not unduly directing it. So we think that the

6  tort committee objections in that regard are off base.

7    On that -- we think the acceptable plan is a bit of

8  red herring issue. All that means is that we have to repay the

9  DIP lenders. They have a super priority plan, and we couldn't

10  confirm a plan without repaying them, in full, in cash, unless

11  they consented to different treatment, which in my experience

12  is not typical for DIP lenders to agree to different treatment.

13  So all it says, that we can't file a patently unconfirmable

14  plan, Your Honor. So we don't think that is tantamount in any

15  way to an undue case control, or any case control.

16    The last sort of significant issue I wrote down was

17  the liens on avoidance action proceeds. That was an issue that

18  the Court and I discussed when I was here last in front of you.

19  We punted -- as Your Honor may recall, we punted the issue, I

20  think appropriately, on liens on avoidance action proceeds on

21  the first day hearing, pending the formation of the unsecured

22  creditors' committee, which I believe was an appropriate

23  approach to the issue. It is important, I think, that we

24  reached a compromise with the DIP lenders, and the unsecured

25  creditors' committee on this topic for a marshaling concept.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    We modified the terms of the proposed order.  This is in

2    paragraph 24 where the DIP lenders agreed to look at every

3    other type of collateral first before they would look at the

4    avoidance actions proceeds.

5         We were unsuccessful in attempting to get them to drop

6    the point, just --

7         THE COURT:  If it comes to that, we have trouble,

8    don't we?

9         MR. ZUMBRO:  We do, Your Honor, but --

10        THE COURT:  With a big cushion here?

11        MR. ZUMBRO:  I think, you know, stepping back, there's

12   sort of -- on the one hand, we have very favorable -- the DIP

13   lenders said to us, we're going to give you good terms in terms

14   of pricing, we have a very favorably priced --

15        THE COURT:  That's what I -- that's what the guy told

16   me, who was giving me a quote to fix my roof, you know.

17        MR. ZUMBRO:  I hope he didn't ask you for collateral

18   but they did say we need collateral.  Good terms but we need a

19   robust security package.  And so that was the tradeoff that we

20   felt was the best deal for the debtor, good pricing, flexible

21   terms on the one hand, and you have a robust security package

22   on the other hand.

23        That's what we agreed to and we did agree -- the DIP

24   lenders were not monolithic in their approach, Your Honor.  I

25   think it's important to note that.  For example, the CPUC was

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  concerned about certain public programs and making sure that

2  the DIP lenders' lien didn't interfere with them, and the DIP

3  lenders did, as part of the first day, agree to those types of

4  exceptions from their collateral package but they weren't

5  willing to agree to this point.

6  Your Honor, I believe the other objections relate to

7  issues that are largely parochial issues or really issues that

8  are unrelated to the DIP financing.

9  THE COURT:  What about the question of -- and maybe

10  this was as subset of marshaling -- about no enforcement on

11  utility assets until nonutility assets have been exhausted?

12  Isn't that a form of marshaling?

13  MR. ZUMBRO:  It's a form of marshaling and we

14  discussed it with the tort claimants' committee.  We discussed

15  it with the DIP lenders, and it wasn't a modification the DIP

16  lenders were willing to make.  They --

17  THE COURT:  Okay.  But there's still -- I mean, it's

18  not something like making contributions to fire victims, and it

19  is on the list of the tort claimants --

20  MR. ZUMBRO:  Correct.  The DIP lenders were not

21  prepared --

22  THE COURT:  -- list of complaints.

23  MR. ZUMBRO:  That's right.

24  THE COURT:  No, I understand.  I understand.

25  MR. ZUMBRO:  I mean, we can go through all of it if

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    you wish but those are the main ones I thought that were worth

2    discussing, but I'm happy to go through each one.

3           THE COURT:  No, I just -- you've gone through it in

4    the sense that the committee -- that committee has raised it,

5    you've said that the DIP lenders have declined the invitation.

6    So --

7           MR. ZUMBRO:  Correct.

8           THE COURT:  -- that's where we are at the moment.

9           MR. ZUMBRO:  Correct.

10          THE COURT:  I've gotcha.

11          MR. ZUMBRO:  Correct.

12          THE COURT:  I just wanted to make sure I understood

13   where we are on that.

14          MR. ZUMBRO:  Right.  So we did -- every one of the --

15   we had two or three -- we had several calls with the tort

16   committee counsel as well as the DIP lenders, and we did

17   attempt to address all of their comments but we were able to --

18   what we've able to do is what's reflected in the proposed

19   order.

20          THE COURT:  Okay.  But one of the things that they --

21   again, I say, they, meaning the tort claimants --

22          MR. ZUMBRO:  Yeah.

23          THE COURT:  -- and particularly the committee, though

24   the tort claimants' objections are rather discrete, and that is

25   repeated there more than once was, no improvement on the pre-

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  petition unsecured debt.  And so I assume it's not an issue but

2  I just wanted to see where is that on the list?

3       MR. ZUMBRO:  It's not an issue.  We had a hard time

4  with sort of even understanding the point.

5       THE COURT:  Well --

6       MR. ZUMBRO:  There was unsecured debt --

7       THE COURT:  Well, it's called a roll-up, you know what

8  means, and there's a --

9       MR. ZUMBRO:  We do.

10      THE COURT:  -- certain amount of pre-petition

11 unsecured debt.

12      MR. ZUMBRO:  Correct.

13      THE COURT:  So if somebody had a devious way of

14 rolling it into DIP collateral, guess what?

15      MR. ZUMBRO:  Even we weren't smart enough to come up

16 with any way of doing that.  There is no roll-up.  I can

17 represent to the Court.

18      THE COURT:  I know how to draft roll-up provision.  So

19 do you.  But it isn't in there, you agree?

20      MR. ZUMBRO:  There is none.  There is none.

21      THE COURT:  Okay.  So counsel for the tort committee

22 will have to tell me if they think it's still in there, if they

23 concede the point, then we will worry about it.  I won't --

24 I'll take your representation that -- and I have read, not

25 every word of every document but I've read the -- a lot of

PG&E Corp And Pacific Gas And Electric Co

1  stuff here.  So I'm -- it sounds right to me too.

2         MR. ZUMBRO:  We don't' believe there's any roll-up.

3         THE COURT:  Okay.

4         MR. ZUMBRO:  Or anything that could be considered a

5  disguised roll-up.

6         THE COURT:  Okay.

7         MR. ZUMBRO:  The -- so we talked about the automatic

8  stay, we talked about liens on avoidance actions, you know,

9  just to go through the list.  The debtors should not be

10  prohibited from using the DIP loans to investigate claims

11  against the DIP lenders.  We think that's very standard.  There

12  aren't really any investigations here because for that very

13  issue.  It was unsecured and now it's secured.  It's not like

14  we're -- we or the committee has any need to investigate the

15  lien status, or perfected status of any liens.  It just isn't

16  an issue in this case, in light of the nature of the capital

17  structure --

18         THE COURT:  Well, there's one narrow one that I'll

19  come back to when I go through the comments, after I hear from

20  them.  It's probably not a deal breaker but I'll at least raise

21  it for you to think about.

22         MR. ZUMBRO:  Okay.  But it's important to note that

23  it's also limited to their -- this protection is limited to the

24  DIP lenders in their capacity as DIP lenders.  So they're not

25  getting anything beyond an inducement to lend.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1       We talked about the acceptable plan.  This notion that

2   we aren't able to incur new indebtedness, also gives them undue

3   control.  It is, I think, again, misplaced.  We -- obviously,

4   in order to exit this bankruptcy, we're going to have incur

5   exit financing, the proceeds of which would be used to repay

6   the DIP loan.  But the notion that somehow a limitation on

7   additional indebtedness, which is the customary term of any

8   loan agreement, somehow gives the DIP lenders control over the

9   case here, I think, is also misplaced.

10      THE COURT:  Well, okay.  But let's not say it's

11  control.  Let's clarify, is there a default, if there is a

12  junior lien placed on any asset, and if so, why is that even

13  necessary?

14      MR. ZUMBRO:  There are covenants that limit the amount

15  of additional indebtedness and additional secured debt that we

16  can incur under the credit facility, if, as I mentioned

17  earlier, we think we have sufficient flexibility under those

18  covenants.  But if we were to do something that violated them,

19  yes, it would be an event of default.

20      THE COURT:  So give me a specific as to a junior

21  secured claim.  Because I couldn't -- I didn't find it

22  specifically.  Is it dealt with in the proposed order?

23      MR. ZUMBRO:  It would be in the credit agreement

24  itself I -- the covenant package that governs the financing.

25      THE COURT:  Well, then just give it to me in lay

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   terms.  In other words, what can't the debtor do at the risk of

2   being in default under the DIP if it wants to incur junior

3   secured debt?

4           MR. ZUMBRO:  There --

5           THE COURT:  Not exit financing --

6           MR. ZUMBRO:  Right.

7           THE COURT:  -- but just debt.

8           MR. ZUMBRO:  There are a number of baskets that would

9   be relevant.  For example, by way of example, there's a debt

10  basket that allows the debtor to incur capital lease

11  obligations which is a form of secured debt.

12          THE COURT:  Right.

13          MR. ZUMBRO:  Not to exceed 500 million dollars.

14  That's an example of one of the things where, yes, there's a

15  limitation but we negotiated a limitation that we thought was

16  sufficient to give us financing flexibility.  There's other

17  baskets for other unsecured indebtedness of up to fifteen --

18  excuse me, twenty-five million dollars.

19          THE COURT:  Well, that's not the one that it's in

20  there for the post-default, twenty-five million for --

21          MR. ZUMBRO:  No, no, no.  That's a different twenty-

22  five million --

23          THE COURT:  That's a different issue.

24          MR. ZUMBRO:  -- dollars.  And as a general basket of

25  other unsecured -- other indebtedness, excuse me, of up to 150

PG&E Corp And Pacific Gas And Electric Co

1    million dollars.  So there's a number of baskets that permit to

2    incur indebtedness without having to go back --

3          THE COURT:  So that would be -- I take it, that would

4    be 364(b) or (c), unsecured or junior secured debt.

5          MR. ZUMBRO:  It could be junior secured.  There are

6    also liens baskets that permit us to incur certain liens that,

7    you know, anything would have to -- any additional post-

8    petition financing would be back before Your Honor, including

9    the four billion-dollar incremental party pass-through basket,

10   we would have to get the Court's further approval.  But the

11   notion that we're somehow hamstrung on our ability to incur

12   additional debt, I think is really misplaced.  Because what we

13   really do is go to the incremental which is the most cost-

14   effective means of additional financing.

15         THE COURT:  Okay.  But I think I picked up from your

16   response --

17         MR. ZUMBRO:  Uh-huh.

18         THE COURT:  -- to the objections that the DIP lenders

19   were unwilling to extend the 503(b) and (4) protections into

20   the carve-out?

21         MR. ZUMBRO:  That's correct.

22         THE COURT:  Okay.  So let's hold that thought for a

23   minute.

24         MR. ZUMBRO:  Okay.

25         THE COURT:  What is the legal status or the legal fate

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   of a 503(b)(3) or (4) claimant who doesn't get the benefit of

2   the carve-out?

3           MR. ZUMBRO:  Well, the legal --

4           THE COURT:  In other words, suppose --

5           MR. ZUMBRO:  Yeah.

6           THE COURT:  -- somebody makes a proper demonstration

7   of entitlement to a substantial sum of money --

8           MR. ZUMBRO:  Right.

9           THE COURT:  -- under -- well, you know, (3) and (4) go

10  together, what -- how does that get resolved in the hierarchy

11  of post-petition DIP and unsecured DIP -- I mean, excuse me,

12  DIP financing and post-petition debt?

13          MR. ZUMBRO:  It would be -- to the extent that the

14  person sought a substantial contribution claim and the Court

15  granted administrative expense status for that, there would be

16  an administrative expense claim in the case.  There's nothing

17  in the Bankruptcy Code or practice that I'm aware of that

18  there's any type of claim to get a super, super priority

19  status.

20          THE COURT:  No.  I'm not asking for -- right.  And we

21  can't have someone talking on the phone here.

22          MR. ZUMBRO:  So those persons would have -- well,

23  first of all, we think it's premature.  We don't think there is

24  any market practice for a DIP lender ever agreeing to carve

25  out -- the DIP lenders are here, they can speak for themselves

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    but the carve-out --

2         THE COURT:  No.  Look, I'm conceding the point for the

3    moment --

4         MR. ZUMBRO:  Okay.

5         THE COURT:  -- about a carve-out.

6         MR. ZUMBRO:  Yes, it would be an administrative

7    expense status.

8         THE COURT:  I'm asking you, and maybe it's premature,

9    and maybe it's hard to visualize it --

10        MR. ZUMBRO:  Right.

11        THE COURT:  -- but let's go back, let's take a

12   snapshot of the DIP financing if I sign the order.

13        MR. ZUMBRO:  Yeah.

14        THE COURT:  We have the DIP facilities, up to five and

15   a half billion dollars, we have the worker's self-insurance

16   thing, we have some miscellaneous stuff, we have the capital

17   financing, and then we have just unsecured post-petition debt.

18        MR. ZUMBRO:  Correct.

19        THE COURT:  Ordinary course of business.  God forbid,

20   post-petition tort claims, and but I'm trying to get a

21   different situation.  If there is not one of these consensual

22   things like a trade debt or -- but rather somebody who is

23   entitled to administrative priority, my question really is,

24   does that trigger a default or do they just stand in line

25   behind the DIP facility --

PG&E Corp And Pacific Gas And Electric Co

1       MR. ZUMBRO:  Oh, I'm sorry.  I didn't understand your

2  question.

3       THE COURT:  -- along with all the other post-petition

4  claims?

5       MR. ZUMBRO:  Yeah.  It does not trigger a default.

6  They would just have whatever priority that the Bankruptcy Code

7  provides for them which is administrative expense

8  (indiscernible).

9       THE COURT:  Well, okay but if a lender says, I'm going

10  to loan some money to the debtor in possession --

11       MR. ZUMBRO:  Right.

12       THE COURT:  -- under 364(c) --

13       MR. ZUMBRO:  Um-hum.

14       THE COURT:  -- therefore unsecured but priority --

15       MR. ZUMBRO:  Um-hum.

16       THE COURT:  -- that also isn't -- well, it may or may

17  not trigger a default, depending upon the amount, right?

18       MR. ZUMBRO:  It mostly would not because we would --

19  it would fit within that 500-million-dollar basket or another

20  one of the baskets.  It's --

21       THE COURT:  Right.  I'm not suggesting a 503(b)(3) or

22  (4) claim will be 500 million dollars but I'm trying to

23  understand where everybody lines up in relative positions and

24  what might trigger a default?

25       MR. ZUMBRO:  Right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   THE COURT:  And that to me is the more significant

2   issue here.

3   MR. ZUMBRO:  There's no basis under any of the loan

4   agreements or the order or any other documents that I'm aware

5   of, that any substantial contribution claim could trigger a

6   default under the DIP loan.  Yes, the DIP loan would come

7   ahead, the DIP loan is in priority --

8   THE COURT:  Of course.

9   MR. ZUMBRO:  -- because it's super priority status --

10  THE COURT:  Of course.

11  MR. ZUMBRO:  -- would come ahead of that claimant, and

12  that's the issue that I think we weren't willing -- we weren't

13  able to accommodate the request but it would just be in

14  accordance of the bankruptcy priorities which they would have

15  an administrative expense.

16  THE COURT:  Okay.  But you know I didn't just make up

17  this 503 stuff.  We have at least, what, four unofficial

18  committees --

19  MR. ZUMBRO:  We do.

20  THE COURT:  -- and one committee that might be

21  official and might be unofficial, but the point is there may be

22  a number of claimants.  Again, maybe we're not going to get in

23  to the astronomical amounts --

24  MR. ZUMBRO:  Right.

25  THE COURT:  -- but you know, it adds up.  And so I --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    but importantly I needed to hear from you that it -- whether it

2    somehow might trigger some adverse consequence vis-à-vis the

3    debtors.

4            MR. ZUMBRO:  I don't -- we don't -- as we stand here

5    today, the debtors don't take a position on substantial

6    contribution.  We think it's premature.  You know, as the case

7    develops --

8            THE COURT:  Right.

9            MR. ZUMBRO:  -- and if someone else makes a

10   substantial contribution to the case, you know, I'm not arguing

11   the motion before the Court today but if someone makes -- we

12   have no issue with that as I stand here today.  I don't have a

13   view one way or the other on it.  It doesn't affect the DIP

14   financing and there's no way it could trigger a default, but

15   the DIP lenders are not allowed to say, that money comes ahead

16   of us because it's just an unknowable.

17           THE COURT:  Again, you keep repeating what I'm not

18   even asking.

19           MR. ZUMBRO:  Okay.

20           THE COURT:  I'm not asking anybody to prime the DIP

21   lenders.

22           MR. ZUMBRO:  Okay.

23           THE COURT:  There may be objectors here that think

24   that some claimants, whether they be 503(b)(3) and (4) or some

25   other category should get the benefit of carve-outs but I'm --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  that's not what I'm asking about.

2  MR. ZUMBRO:  The objectors did ask for that.  That's

3  why I just wanted to make it clear.  But yes, we understand the

4  Court's concern but there is no adverse implications for the

5  DIP facility for anybody making such a claim.

6  THE COURT:  There are, however, consequences under the

7  DIP facility to trigger a default if some huge event, like,

8  conversion of the case, you see --

9  MR. ZUMBRO:  Sure.  Sure.

10  THE COURT:  -- or material change in financial

11  condition, right?

12  MR. ZUMBRO:  There is no material change in financial

13  conditions.  They are very high thresholds.  If for example,

14  you know, the whole electricity grid were shut down for some

15  material amount of time, you would expect the DIP lenders would

16  want to, you know, have something, and that would be a trigger.

17  But other than that --

18  THE COURT:  Yeah.  But that -- Mr. Zumbro, there's an

19  elephant in the room here.

20  MR. ZUMBRO:  Okay.

21  THE COURT:  We all know there is a risk we will have

22  2019 wildfires.

23  MR. ZUMBRO:  I understand.

24  THE COURT:  And if there's a post-petition tragedy

25  such as happened in the past two years --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    MR. ZUMBRO:  Yes.

2    THE COURT:  -- there could be an astronomical claim,

3 that, at least absent some other outcome, would be

4 administrative priority --

5    MR. ZUMBRO:  Yes.

6    THE COURT:  -- and might indeed trigger a DIP default

7 because of the astronomical size of it.

8    MR. ZUMBRO:  I understand, Your Honor.  Well, let's

9 just address the elephant.  I mean, that elephant in the room

10 is the reason the DIP lenders insisted on secure status.

11    THE COURT:  I got you.  I understand.

12    MR. ZUMBRO:  Because they said, look, we are concerned

13 also that God forbid there's another wildfire during the course

14 of the case, we want to make sure that we have a lien so that

15 we -- our right to repayment is prior to that.  That is exactly

16 why there is secured --

17    THE COURT:  Yeah, Mr. Zumbro, you're -- I'm not -- I

18 haven't ever been a Wall Street finance lawyer --

19    MR. ZUMBRO:  Uh-hum.

20    THE COURT:  -- but I did -- I have been around the

21 block on DIP financing and I know that.  My question though is,

22 under some circumstances I would assume the DIP lenders could

23 declare a default because of material adverse consequences and

24 I use the horrible nightmarish example that could happen and

25 you used another one of a grid failure.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          MR. ZUMBRO:  Yeah.  I don't --

2          THE COURT:  So there are at least two potentials like

3   that.

4          MR. ZUMBRO:  Yeah.  Let me try to answer the

5   question.  It's something that we specifically thought about,

6   and I don't believe a wildfire event, we all hope it doesn't

7   happen, but if it were to happen, a post-petition wildfire

8   event would not in and of itself constitute a default under the

9   DIP, so.

10          THE COURT:  Material.  What's the definition of

11   material?  Again, you and I don't have to debate this.

12          MR. ZUMBRO:  Right.

13          THE COURT:  It's a question that I think needs -- we

14   just need to think about it, and I will -- I still have some

15   concerns about some other kinds of defaults --

16          MR. ZUMBRO:  Okay.

17          THE COURT:  -- that are not so catastrophic.

18          MR. ZUMBRO:  Okay.

19          THE COURT:  Let's go back to your presentation and --

20          MR. ZUMBRO:  Sure --

21          THE COURT:  -- unless you want to yield the floor to

22   somebody else.

23          MR. ZUMBRO:  I'm almost done.  I think we've got -- I

24   guess the other points, just to make sure that we cover

25   everything, we don't think -- we talked about the roll up.  We

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  don't think we can condition the DIP financing on the use of --

2  as we said in our objection, we are mindful of the

3  circumstances of certain of the victims of campfire, but we

4  don't think it's appropriate to sort of tie that to the DIP

5  financing as has been requested.

6  Similarly we don't -- the reason we're in Chapter 11

7  is to sort of have an orderly process for all wildfire

8  claimants.  And so I don't think we can condition the DIP

9  facility on certain settlement payments.

10  THE COURT:  Well, like the SLF fire.

11  MR. ZUMBRO:  Correct.

12  THE COURT:  Fifty-two claimants.  No, I understand.

13  MR. ZUMBRO:  Correct.  And I think we've talked about

14  the substantial contribution claims and that's really

15  everything -- oh, the lobbying.  Obviously, it's an important

16  part of this case that these debtors be able to sort of

17  interact not only with regulators but also with the

18  legislature.

19  I don't think there's any way we could sort of agree

20  to not -- I don't know whether that would constitute lobbying,

21  but we can't agree in terms the DIP financing that we can't

22  talk to governmental officials because it's clearly important

23  for the people of California that we be able to do so.

24  THE COURT:  Right.

25  MR. ZUMBRO:  And that -- those are the full list of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    items that I had --

2            THE COURT:  Okay.

3            MR. ZUMBRO:  So we do think that the DIP is the best

4    available.  We would urge the Court to overrule the objections,

5    but I'll reserve whatever additional time -- I may have gone

6    over my time, but --

7            THE COURT:  Yeah, you -- but that's okay.  And the

8    other counsel, if they want to be heard, I'm going to let them

9    do it.  So don't --

10           MR. ZUMBRO:  So let me -- I guess the way we set it

11   up, I was going to ask Mr. Hansen from the Stroock firm to come

12   next, and then after that the creditors' counsel --

13           THE COURT:  Okay.

14           MR. ZUMBRO:  -- unsecured creditors' counsel.

15           THE COURT:  That's fine.  Mr. Hansen --

16           MR. ZUMBRO:  And then we'll -- to the extent we need

17   to have any rebuttal, I'll come back to the podium.

18           THE COURT:  Thank you.

19           MR. ZUMBRO:  Thank you, sir.

20           THE COURT:  Mr. Hansen, good morning.

21           MR. HANSEN:  Good morning, Your Honor.  Kris Hansen

22   with Stroock & Stroock & Lavan on behalf of JPMorgan Chase as

23   the administrative agent for the DIP loan as well as on behalf

24   of the DIP lenders.

25           Your Honor, I don't want to go through the list of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    objections Mr. Zumbro did.  I wanted to address some of the

2    points that you raised in your discussion with Mr. Zumbro to

3    help clarify a few things if I could.  The first thing is, I

4    just want to touch upon that last discussion that you had from

5    the material adverse effect perspective.

6         Your Honor, so the definition of material adverse

7    effect in the loan or credit agreement is a change in the

8    business property, operations, or financial condition of the

9    company taken as a whole.  So we're not talking about any

10   specific aspect of it, it's taken as a whole.

11        And then you have to skip the parenthetical because

12   we except out the bankruptcy case.  They could reasonably be

13   expected to materially and adversely affect the ability of the

14   loan parties to perform their obligations on the DIP.

15        THE COURT:  What paragraph are you looking at?

16        MR. HANSEN:  Oh, I'm sorry, I'm looking at the

17   defined term material adverse effect in the --

18        THE COURT:  I have the loan agreement here.  Just

19   tell me where to go find it.

20        MR. HANSEN:  It's page 16.

21        THE COURT:  Okay.  All right.  Taken as a whole, I

22   mean, whatever that means.  Do you know what that means?

23        MR. HANSEN:  Yeah.  Taken as a whole was highly

24   negotiated.  It means the business operation as a whole, not

25   any individual aspect of it.

PG&E Corp And Pacific Gas And Electric Co

1          THE COURT:  Okay.

2          MR. HANSEN:  And when you look further through that

3    paragraph, post-parenthetical, which carves out the bankruptcy

4    proceeding --

5          THE COURT:  I've been told, without knowing it to be

6    true, that the debtor's assets are in the seventy billion

7    dollar range, but I've also been told that the campfire alone

8    might be thirty to fifty billion dollars of claims.  Now, that

9    starts to sounds like a material adverse change to me if

10   there's another one of those horrible fires.  Why wouldn't it

11   be?

12         MR. HANSEN:  It would -- well --

13         THE COURT:  I mean, again --

14         MR. HANSEN:  Let me put it this way --

15         THE COURT:  -- we don't want it to happen --

16         MR. HANSEN:  -- it has to -- it has to affect --

17         THE COURT:  -- but why wouldn't it --

18         MR. HANSEN:  It has to affect the debtors' ability to

19   repay the DIP loan.  The DIP loan has first priority liens on

20   all the debtors' assets.  So clearly if those post-petition

21   wildfire liabilities -- so post-petition.  You're postulating

22   it --

23         THE COURT:  I am, unfortunately, postulating exactly

24   that.

25         MR. HANSEN:  Yeah.  Exactly.  So you take a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    post-petition situation where they have -- we're going to

2    speculate for a moment.  I hope it never happens -- but massive

3    wildfire liabilities on a post-petition basis.  And we're going

4    to take it for a moment that they don't have an effective way

5    through the assistance of this Court or the CPUC or any other

6    body to address those payments, and they simply have to make

7    them.

8         If they don't have the revenue to make those

9    payments, obviously they can't continue to pay their employees,

10   they can't continue to move on.

11        THE COURT:  Right, right.

12        MR. HANSEN:  I guess that would be an MAA.  But the

13   reality is that they've got thirty billion dollars of potential

14   liabilities on a pre-petition basis.  Going forward, they are

15   trying to, obviously, make a --

16        THE COURT:  But those pre-petition liabilities are

17   not events of default.  They are --

18        MR. HANSEN:  Correct.

19        THE COURT:  -- they're in the books.  They're on the

20   books right now.

21        MR. HANSEN:  Absolutely, Your Honor.  Correct.

22        THE COURT:  Okay, so.

23        MR. HANSEN:  But again, as Mr. Zumbro said, right,

24   that part of the reason that the bank doesn't have and the DIP

25   lenders don't have budget testing covenants, milestones,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    financial maintenance covenants is because they have liens and

2    they're the only secured party in the capital structure --

3              THE COURT:  Right.

4              MR. HANSEN:  -- and they sit at the top.  And also

5    because of this significant overcollateralization that that

6    everybody is referring to:  seventy billion dollars of asset

7    value.

8              THE COURT:  That was a big cushion by traditional --

9              MR. HANSEN:  It is.

10             THE COURT:  -- measurements, right?

11             MR. HANSEN:  It is.  It is, Your Honor.

12             But again, I guess to step back, there was nothing

13   untoward from the lender's perspective about saying, listen,

14   I'm prepared to loan you money and we're going to put a

15   materiality qualifier in here that, in the situation that you

16   hypothesize, that we might have massive post-petition wildfire

17   liabilities that are not capable of mitigation or being dealt

18   with from a regulatory or bankruptcy court perspective, the

19   lender should have a right to a default in that situation.

20   They can't just make a loan and say, you know what, you can

21   have our money and it really never matters --

22             THE COURT:  Okay.  I --

23             MR. HANSEN:  -- what happens in the future.

24             THE COURT:  -- gotcha.

25             MR. HANSEN:  Yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  I mean, look, it's my job to figure out

2   today or whenever to accept that and take the consequences and

3   say, you got yourself a deal or not, or what to do about it.

4   So you're explaining it adequately.

5    MR. HANSEN:  Yep.

6    THE COURT:  I got it.

7    MR. HANSEN:  Understood, Your Honor.  The other one

8   was, I just wanted to touch quickly on the 503(b) claims.  I

9   know that that kind of led to the discussion of the

10  post-petition wildfire liabilities.  But obviously, to the

11  extent people make substantial contribution claims and the

12  debtor is still a going concern, and it wants to confirm a plan

13  and leave bankruptcy, it needs to pay those claims in cash.

14  Those are administrative --

15    THE COURT:  No, and I think Mr. Zumbro clarified what

16  was -- frankly, it was what I understood anyway.  And that is

17  that if somebody does hit the jackpot and get a 503(b) claim

18  they get -- they're entitled to whatever they're entitled to.

19    That shouldn't trigger a default because it doesn't

20  harm anybody, it doesn't impair.  It's not a material impact,

21  it's just another claim in the pipeline for post-petition

22  disposition, right?

23    MR. HANSEN:  That's right.  Yes, Your Honor.

24    THE COURT:  Okay.

25    MR. HANSEN:  That's right.

PG&E Corp And Pacific Gas And Electric Co

1      THE COURT:  But the point is because it was the

2  subject of some position by the fire victims and the committee

3  and from the debtor and your clients that, no, then okay.

4  That's the answer.  I'm not negotiating, I'm just making sure

5  we're clear on what the question is.

6      MR. HANSEN:  Absolutely, Your Honor.  And part of my

7  job is to help you make sure that we get all the information on

8  the table so that you know where it is and know what it says,

9  and the other part is to advocate on behalf of approval for the

10  DIP, so.

11      THE COURT:  Well, you might not be able to get them

12  all to advocate that, but you can at least -- they can be

13  heard.

14      MR. HANSEN:  With respect to -- you had raised, I

15  guess, a quick question.  You had made a comment that, what

16  about -- like the tort objection that says, please don't

17  enforce on utility assets first.  That obviously would be a

18  form of marshaling, and obviously the DIP order contains a

19  provision that is a marshaling waiver with the exception of the

20  avoidance actions proceeds which are now put second.

21      And the bank agrees with you, Your Honor.  If we're

22  in a position where the proceeds of avoidance actions are our

23  collateral of last resort and we're actually looking to them,

24  we are in a --

25      THE COURT:  Well, last time I checked, if a debtor is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    solvent, the debtor might not have any avoidance actions.

2              MR. HANSEN:  Agreed.  Agreed, Your Honor.  So with

3    respect to the enforcement of the utility assets, we -- it's

4    not -- so we have a marshaling waiver but we also have an

5    express provision in the DIP order and we've had discussions

6    with the CPUC and we understand the regulatory regime, that if

7    we ever need to exercise remedies on utility assets, we have to

8    go through the CPUC and the regulatory --

9              THE COURT:  But that's the paragraph 35 --

10             MR. HANSEN:  It is --

11             THE COURT:  -- right?

12             MR. HANSEN:  -- and it functions -- and it

13   essentially functions in some respects almost like a

14   marshaling-type of procedure because it may be a while before

15   we're granted the ability to actually exercise and foreclose on

16   that collateral.

17             Again, with the amount of oversecurity in this case,

18   I would assume if we were in a DIP default scenario, the

19   debtors would be able to refinance us with someone who might

20   ignore that --

21             THE COURT:  You think so, huh?

22             MR. HANSEN:  -- default?  You have seventy billion

23   dollars of excess collateral you would think that they would be

24   able to do it.  I would also think that the --

25             THE COURT:  Like call a hard money lender maybe, huh?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    MR. HANSEN:  Exactly.  Well, it's an interesting

2   point you raised, Judge, because when you think about hard

3   money lenders, right, this DIP loan is fairly innocuous from

4   a --

5    THE COURT:  I get these ads on my phone.  I can get

6   somebody online, I can get that second mortgage.

7    MR. HANSEN:  Me too.  I could probably get a third

8   one too.

9    But what's interesting is that there was no -- you

10  and I have both been involved in cases in the course of our

11  careers where you have pre-petition secured lenders who are

12  dictating the control of the debtors' case and effectively

13  saying, you're not going to get credit any place else.  I have

14  a lien on all your assets, you have to come through me if you

15  want new financing, and I have a preconceived notion about how

16  your case is going to proceed.

17   That's not what's happened here at all.  And so this

18  addresses a number of the objections.  There are some lenders

19  who were pre-petition revolving lenders to the debtor who are

20  in the DIP, but there are also many, many --

21   THE COURT:  But they're only in the DIP as DIP

22  lenders.

23   MR. HANSEN:  They're only in the DIP as DIP lenders,

24  and there are many, many other --

25   THE COURT:  But that cuts both ways because you --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    not you, I think someone in one of the briefs, they keep

2    reminding me that this is like -- this is normal, but it isn't

3    normal.  And what isn't normal is this enormous leverage, this

4    seventy billion or some other number of assets that are largely

5    free and clear of liens, a DIP loan, if it's approved, will be

6    less than one-tenth.

7           So on a loan to value ratio, there is a cushion as

8    big as you can imagine.  But that's exactly why some of these

9    Draconian things, like seven-day notice of relief from stay,

10   don't cut -- sit very well with me because they're not

11   necessary.

12          But I'm telling you that therefore every time people

13   like you and Mr. Zumbro tell me this is like the typical, but

14   it's not typical for a lot of reasons.  And the other one is,

15   the obvious one, are these staggering tort liabilities that

16   don't exist in the kinds of cases that everybody cites in the

17   papers, right?

18          I mean, maybe the people in the Puerto Rico disaster

19   are -- whatever -- however that's being resolved, and maybe

20   some other major tort disasters.  But I don't imagine that the

21   great big cases in other districts around the country are

22   typical of this for that reason.

23          So it's all those things you say.  It's free assets,

24   DIP lender dictating everything.  It's why we're different

25   here.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    MR. HANSEN:  True.  Precedent counts in two

2  directions, though, Your Honor.  Precedent counts from a legal

3  perspective but precedent counts from a factual kind of benefit

4  of the bargain perspective as well.

5    And when DIP lenders enter into a DIP financing

6  market, whether it has a bunch of zeros on the end of the loan

7  or fewer zeros, it's the same negotiation.  And in that

8  negotiated situation you have, what you get is an integrated

9  DIP loan at the end, right?  It's been give and take on

10  everything.

11    THE COURT:  Right.

12    MR. HANSEN:  You heard Mr. Zumbro talk about all the

13  events of default and lien baskets and the indebtedness

14  baskets, and everything that's kind of been packaged into the

15  loan.  This seven-day notice period, I will tell you I've seen

16  it as short as three regular calendar days, five regular

17  calendar days.  I haven't really ever seen it beyond that.

18    With the fact that we can't get --

19    THE COURT:  To my --

20    MR. HANSEN:  -- with the fact that we can't get to

21  utility assets until we have a discussion with the CPUC and get

22  granted relief from that perspective, the point about the seven

23  days is it gives everybody the opportunity on a notice out to

24  the world to come before Your Honor and say, this isn't right.

25  You shouldn't allow them to do this.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1        And the push and pull --

2        THE COURT:  But it would be nice if that were the way

3  it were to stay.

4        MR. HANSEN:  Yeah, but that's --

5        THE COURT:  But only thing, you know I'm going to

6  tell you this, all you are allowing the Court to do on seven

7  days' notice is determine whether there's an event, not whether

8  it was staged to be modified.

9        MR. HANSEN:  But that then forces the benefit of the

10  bargain --

11        THE COURT:  Well --

12        MR. HANSEN:  -- of the debtors -- just, Your Honor,

13  in a highly competitive process.  This wasn't JPMorgan Chase as

14  agent for the pre-petition revolver saying to the debtors, I'm

15  the lender of last resort for you.  You'll do it my way.  The

16  debtors had lots of lenders come and make proposals to them.

17        THE COURT:  Okay.

18        MR. HANSEN:  And then ours needed to be secured as

19  everyone else's did.  We would never have made this loan on an

20  unsecured basis for many of the reasons that you've stated.

21        THE COURT:  No, I understand.

22        MR. HANSEN:  And when you look at it from that

23  perspective and you say, okay, if you have a highly negotiated

24  and integrated credit agreement which gives you sufficient room

25  to maneuver with -- inside of events of default including this

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    materiality clause that we just went through, which I think is

2    fair for the lender.  It is completely unfair to say to the DIP

3    lenders in that situation, okay, we have a lot of cushion in

4    these events of default, but nevertheless we've tripped one.

5    And we have not been able to work it out with you in a way

6    where we can either refinance you, get an amendment, get a

7    waiver, get a forbearance, whatever might come.

8            We're now at the point where you have said, I need to

9    go exercise rights on my collateral, which my credit agreement

10   gives me.  The burden then shouldn't be, well, you're just an

11   ordinary lift stay party.

12           The burden at that point should be in the reverse,

13   which is come in and explain to the Court why an event of

14   default has not occurred, why the lender may be misreading it,

15   why there's a misinterpretation with respect to the provision.

16   But to say to the lender, again, who has put fresh capital into

17   the company, and I don't want to lose sight of the fact that

18   that capital, despite the fact that Mr. Zumbro says, well, you

19   know what, we did a good job.  We didn't use the full limit in

20   the interim period.

21           It's there for a purpose beyond just the ability to

22   borrow to its full amount.  It's also there for the purpose of

23   demonstrating to, candidly, California, the country, everywhere

24   else here that from a contract counterparty on so many levels,

25   that this company is stable.  It has access to financing.

PG&E Corp And Pacific Gas And Electric Co

1          So if we're in a position where we have a default and

2    the bank believes that, and the DIP lenders believe that, and

3    we have a dispute over it, we're going to bring it in front of

4    you.  It's unfair at that point to then say to the lenders,

5    well, the benefit of your bargain was the following but now you

6    have to go into an entirely new standard.

7          THE COURT:  And do what?  So what's the worst that

8    could happen if we don't have an automatic seven-day

9    argument -- whatever my word is.  At the end of seven days, the

10   bankruptcy court's out of the discussion.  What's an

11   alternative?  Let's again talk about the real world.

12         MR. HANSEN:  Yeah.

13         THE COURT:  Right upstairs we have an Article III

14   judge who feels very strongly about what this utility is up to,

15   and has publicly stated a lot of things.  Again, it's his job

16   not mine.  I do my job here.

17         What if he decides, I don't like management.  I'm

18   going to order appointment of a trustee instantly.  I'm going

19   to withdraw the reference of that crazy bankruptcy judge, and

20   I'm going to appoint a trustee.  What happens then?  No stay?

21   No relief?  No nothing?  Just seven days to determine if

22   there's an event of default?

23         Again, I'm not here to criticize my upstairs

24   colleague.  It's his job.  But it could happen.

25         MR. HANSEN:  That could happen, and --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  And that -- so why should conversion to

2  Chapter 11 trigger seven days to determine whether it's been

3  converted to chapter -- a trustee, Chapter 11 trustee's been

4  appointed, and that's -- and then we're done.  That's the only

5  inquiry.

6    MR. HANSEN:  Because that's the credit risk, Your

7  Honor.

8    THE COURT:  I know it's the credit risk.

9    MR. HANSEN:  Credit risk --

10    THE COURT:  But it shouldn't be a credit risk with

11  this eighty billion dollar cushion.

12    MR. HANSEN:  Then the pricing may need to change.

13  So --

14    THE COURT:  Maybe it would.  Maybe it --

15    MR. HANSEN:  -- from a pricing perspective, right,

16  everything is a balance from risk, right?  And so if the risk

17  that the lenders are prepared to take is that they are willing

18  to finance this management team, this infrastructure, this

19  company as it sits here today but a judge upstairs says, you

20  know what?  I'm going to change that landscape for you.  I'm

21  in -- I am effectively taking away the governance of this

22  company and I'm putting it in front --

23    THE COURT:  Well, he --

24    MR. HANSEN:  -- in the hands of a trustee.

25    THE COURT:  -- has that potential.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          MR. HANSEN:  Absolutely.

2          THE COURT:  So do I, actually, as you know.

3          MR. HANSEN:  Of course.

4          THE COURT:  I have that same option on a proper

5    showing, and I don't mean to imply that the district judge

6    wouldn't have a proper basis.

7          MR. HANSEN:  Oh, no --

8          THE COURT:  It's just that it could happen.

9          MR. HANSEN:  -- not at all.  Not at all, Your Honor.

10   And we understood that.  We took that into consideration when

11   we evaluated this, which is why we put an event of default in.

12         THE COURT:  Right.

13         MR. HANSEN:  And as you know from a lending

14   perspective, events of default allow you to have rights.

15         THE COURT:  Well, but the thing that jumped out at me

16   is the conversion.  I mean, the -- I'm sorry, the Chapter 11

17   trustee.

18         MR. HANSEN:  Uh-huh.

19         THE COURT:  I don't view the risk of this debtor

20   going to Chapter 7 to be a high risk because of all the

21   consequences.  But I can't ignore the potential and the risk of

22   Chapter 11 trustee consequence.

23         And I'll tell you what.  I don't want to take the

24   rest of the morning.  It's on my mind and I might just not be

25   willing to go along with that, and I'll let you know when I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  make a decision on it.

2  　　　　MR. HANSEN:  Enough said, Your Honor.

3  　　　　THE COURT:  I want to hear what everybody has to say

4  about it.

5  　　　　MR. HANSEN:  Absolutely --

6  　　　　THE COURT:  And this is no criticism of the lenders

7  or their good faith or anything.  It means somebody's got to do

8  a little fixing of some problem here before --

9  　　　　MR. HANSEN:  It's not taken that way, but I -- just,

10  I can't move on from the point without emphasizing that events

11  of default exist to enable people to have rights.

12  　　　　THE COURT:  Yeah.

13  　　　　MR. HANSEN:  Once they have those rights there's

14  usually a negotiation to resolve --

15  　　　　THE COURT:  That's right.

16  　　　　MR. HANSEN:  -- whatever the situation is.

17  　　　　THE COURT:  That's right.

18  　　　　MR. HANSEN:  And so that may be, at that point in

19  time when an event default occurs, a repricing of the loan --

20  　　　　THE COURT:  Well, there might be a repricing of the

21  loan if the judge isn't prepared to sign off on something as

22  drastic as -- that could happen through the vagaries of the

23  case.

24  　　　　MR. HANSEN:  Agreed, Your Honor, but I will put in

25  addition to repricing, you're now lending to somebody entirely

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    new.  And so there may be no loan.

2         And so that's another issue, which is to say if

3    there's a Chapter 11 trustee, that's a new negotiation about

4    the financing that someone would extend --

5         THE COURT:  No.  Look, you're missing the point.

6    You're missing the point.  I fully accept all the negotiation

7    you've described, and you've described it very ably.

8         The question is, I'm the bankruptcy judge who has to

9    decide this morning, maybe, whether to approve this DIP

10   financing.  I then have to decide what does that mean if

11   something -- not the catastrophic wildfire, but rather

12   something like a district judge deciding to throw management

13   out.

14        And is that the kind of risk that I think is

15   appropriate for the bankruptcy court to be incurring when maybe

16   I say to the lenders, you'll have to go back and revisit just

17   when and how that risk is materialized.  In other words, maybe

18   it's not seven days' telephonic notice, maybe it's thirty days

19   or forty-five days to have a determination on whether stay of

20   relief should be granted or something.  I don't want to

21   negotiate with you because I don't have anything to go on.

22        MR. HANSEN:  I don't have anything --

23        THE COURT:  But I also read in the paper.  I get

24   people that want the reference withdrawn so that Judge Alsup

25   will get this decision from me.  And I don't call him up and

PG&E Corp And Pacific Gas And Electric Co

1    discuss with him what I'm doing on a DIP financing motion, but

2    the fact of the matter is, if he makes a decision that has such

3    consequences, then we just need to know what does that mean.

4         MR. HANSEN:  Of course.  And I guess what I'm saying

5    to you, Your Honor, is this is a fully syndicated loan.  We

6    have more than fifty financial institutions who have syndicated

7    into the loan.

8         And so were we to change the risk that we sold the

9    loan on out to all of those institutions to be, you now have to

10   consider essentially being forced to lend to a trustee as

11   opposed to having your rights in an event of default situation.

12        THE COURT:  I don't think that's fair to say, lend to

13   a trustee.  I didn't say that they couldn't declare a default,

14   I said the question is could they get automatic relief from

15   stay and be out of --

16        MR. HANSEN:  Well, if they --

17        THE COURT:  -- no -- and be out of the bankruptcy

18   court's role, whether it be the district judge or me or anyone.

19        The way you've described it and explained it to me

20   and the way I've read the documents, if the judge decided or if

21   I decided to direct the appointment of a Chapter 11 trustee, of

22   course I don't expect your clients would have to loan any new

23   money.

24        The question is whether they'd have the right to

25   declare a default and pull the trigger on the event of your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    trigger default, whatever that word is in the loan agreement,

2    that's all.  I just have to decide and think about whether

3    that's appropriate at this point or not.

4                MR. HANSEN:  Yeah --

5                THE COURT:  That's what I'm struggling with, to be

6    honest with you.

7                MR. HANSEN:  I understand.  No, I understand, Your

8    Honor.

9                THE COURT:  Okay.

10               MR. HANSEN:  I'm not --

11               THE COURT:  I don't care about the 50(c) waivers and

12   the lien avoidance.  Those are nonissues.

13               MR. HANSEN:  I get -- I understand, Your Honor, and

14   all I'm trying to point out is that we have a, like, a very

15   broadly syndicated loan, and it's a risk issue.  And I say

16   repricing, but I also have to talk to the clients and to all

17   the syndicated members who bought the loan because they might

18   say, no, I'm not prepared to continue to be in that loan, and

19   then the risk profile increases for others --

20               THE COURT:  Okay.

21               MR. HANSEN:  -- at a point where people might say

22   they won't do the loan at all.  And that's something we would

23   have to deal with.

24               So my only point to the Court is that, for a secured

25   lender to be told, listen, you might not get access to the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  collateral in the event of default that you negotiated for when

2  something like a trustee is appointed.  That's, in essence,

3  making them a forced lender with the amounts that they've

4  already given.  So I just -- I don't mean to -- I don't mean to

5  parry with you on the point, but it's something that's very

6  important that we're going to have to take back to the lenders.

7           THE COURT:  Okay.

8           MR. HANSEN:  All right.  Thank you, Your Honor.

9           THE COURT:  All right.  So I've used up far more time

10  than I allocated, but I guess counsel for the creditors'

11  committee still wants to be heard briefly.  So let's make it

12  very brief -- or the unsecured creditors' committee, then we'll

13  go to the other side.

14          MR. KRELLER:  Good morning, Your Honor.  Thomas

15  Kreller of Milbank on behalf of the official unsecured

16  creditors' committee.  And I'm running the last leg of this

17  relay team and I will be fast to make up time for you.

18          THE COURT:  I was surprised that we didn't even hear

19  from you until yesterday, actually.  I  was amazed that I

20  didn't get anything on the merits that even expressed your view

21  on the financing until after the fact and say, we disagree with

22  the fire victims' committee on one point.  That was like, why

23  can't they tell me more about their position?

24          MR. KRELLER:  Well, Your Honor, I -- so let's back up

25  for a moment.  The final DIP approval hearing was originally

PG&E Corp And Pacific Gas And Electric Co

1    set for February 27th.  In advance of that hearing we filed a

2    reservation of rights, which essentially said --

3              THE COURT:  Right.  And I gave you an extension to

4    file until Friday, and you didn't.

5              MR. KRELLER:  Correct, Your Honor.  We didn't

6    because --

7              THE COURT:  So I'm sitting there wondering, where is

8    the committee?  One committee weighs in with a long brief, the

9    other committee doesn't say a word.  So I'm kind of wondering

10   what is going on.  So it would have been nice to know.

11             MR. KRELLER:  Your Honor, we don't oppose the DIP

12   financing.

13             THE COURT:  I know.

14             MR. KRELLER:  We spent the time -- we spent the extra

15   time when the hearing got continued for two weeks, as we had

16   hoped we would be able to, working with the debtors and their

17   advisors, conducting our legal and financial --

18             THE COURT:  You want a seven-day trigger if the judge

19   decides to direct the appointment of a Chapter 11 trustee?

20             MR. KRELLER:  Your Honor, we would be happy to see

21   that provision out.  What --

22             THE COURT:  Tell Mr. Hansen that.

23             MR. KRELLER:  I certainly will, Your Honor.  I think

24   he knows, and I'm happy for anything else that he can take out

25   of his hide.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          But what our review told us, Your Honor, and part of

2    the reason that it took the time that it did is, to your point,

3    this isn't normal.  We can say things like, these are market

4    provisions or we see these in big DIP loans.  This isn't a

5    normal situation --

6          THE COURT:  It isn't.

7          MR. KRELLER:  -- this isn't a normal DIP loan.

8          THE COURT:  Right.

9          MR. KRELLER:  And so even the review of it to some

10   degree was unusual.  We're not looking at things like lien

11   review periods and roll ups and all the things you see in these

12   kind of cases --

13         THE COURT:  Right.

14         MR. KRELLER:  -- where you have pre-petition --

15         THE COURT:  No.  I understand that that's a well --

16   important point, obviously.

17         MR. KRELLER:  And so to some degree, obviously we

18   reviewed the terms in the documents carefully.  And our role at

19   that point, we believe, was to decide whether we believe that

20   the DIP was fair and appropriate.

21         And to some degree that puts even more stress than

22   usual on the marketing process.  Because if you believe you

23   have a robust marketing process, it makes it a little bit

24   easier to reach the conclusion that the integrated financing

25   package, which this DIP represents, is fair and appropriate.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1      Are there things that -- are there things that we

2  don't like that we would try to trade off other things?  Sure,

3  and we've had some of those discussions and there have been

4  some adjustments.

5      But at the end of the day it's an integrated package

6  and you win some and you lose some, and there are trade-offs to

7  be made.  And we think that the terms ultimately of the

8  integrated package and the benefits to the estate of what we

9  view as a relatively debtor-friendly DIP loan without a lot of

10  the problematic types of provisions that you see in other

11  cases --

12      THE COURT:  I know.  I think Mr. Hansen made the

13  point there that -- I don't disagree with you on that one.

14  It's this other -- the brinkmanship of what happens if there's

15  a reason to appoint a trustee, for example.

16      MR. KRELLER:  Understood, Your Honor.  And I think --

17      THE COURT:  It sort of says to the judge, we're going

18  to paint you into a corner, or you don't have a choice here.

19  It's my way or the highway.  Some people are told don't do that

20  with judges.

21      MR. KRELLER:  Your Honor --

22      THE COURT:  I'm not taking it personally; I'm just

23  telling you that I'm not the only judge in this case at the

24  moment.

25      MR. KRELLER:  Understood.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  Okay.

2    MR. KRELLER:  And look, just to be completely frank,

3    I think one of the arguments that you or another judge would

4    face in that scenario is someone would say, you can't appoint a

5    Chapter 11 trustee because it's going to default the debt.  And

6    you're right.  That puts that issue in your lap.

7    And we don't like that, we like for that issue not to

8    be out there.  But it is part of the integrated financing

9    package --

10   THE COURT:  Well, I understand.  Yeah.

11   MR. KRELLER:  -- balance.

12   THE COURT:  Part of the integrated package, so.

13   MR. KRELLER:  And I think --

14   THE COURT:  Therefore what?

15   MR. KRELLER:  And I think if we confronted that

16   issue, as in many things in the bankruptcy world, there's a

17   negotiation to be had there.  So to some degree, I think it

18   defers that issue.  It's an issue that would be great if we

19   could take it off the table and not have that concern and

20   operate under that potential --

21   THE COURT:  But if there was a default, there would

22   be nothing to negotiate because -- unless the bank said, well,

23   we won't enforce the seven-day calendar day trigger.  I mean,

24   come on.  That's not --

25   MR. KRELLER:  Your Honor, I don't want to -- I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1 certainly don't have any desire to argue on behalf of the

2 banks, but I don't know that in this kind of a case with this

3 kind of collateral and in this environment, that that just

4 immediately flips to, we're exercising all of our remedies.  I

5 do think people come to the table in that world.

6 THE COURT:  So do I.

7 MR. KRELLER:  But you're right --

8 THE COURT:  So do I.  But you know who is no longer

9 at the table?  The bankruptcy court.  Again, not personal.

10 The bankruptcy court, because the event has occurred,

11 and I just used -- again, I don't make this up.  I wasn't

12 planning to read in the newspaper that some other people think

13 unwell of the management of the debtor.  And suddenly that

14 might happen.  And I'm not -- and it may not happen.  Hopefully

15 it won't happen, but it could happen.

16 And we're not talking about another wildfire, we're

17 talking about a legal event such as what I told you about, so.

18 MR. KRELLER:  Understood, Your Honor.

19 THE COURT:  Okay.

20 MR. KRELLER:  And I appreciate the issue, and it

21 is -- it's a concern and it's something we thought about.  And

22 as I said, it's a comprehensive financing package that came out

23 of a marketing process that we think was robust and

24 appropriate.

25 THE COURT:  Okay.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    MR. KRELLER:  And we think the package is the right

2    one for the debtors to pursue.  But to the extent that you can

3    improve it for us, I'd be happy to see that happen as well,

4    Your Honor.

5    THE COURT:  Oh, come on over to our side now.  I'm not

6    on a side.

7    MR. KRELLER:  Understood.  Thank you, Your Honor.

8    THE COURT:  I don't think we need to take a break yet.

9    I'm ready to hear from the tort committee, the tort claim

10   committee.

11   Ms. Dumas, are you making the argument today?  Or who?

12   Someone.

13   MS. DUMAS:  Your Honor, Cecily Dumas of Baker &

14   Hostetler on behalf of the official committee of tort

15   claimants.  I have conferred with the other objecting parties,

16   and with the Court's permission, I'd like to go last of

17   the three objecting parties.

18   THE COURT:  I only had two -- I only had two timely

19   objections, but we have the SLF fire victims and --

20   MS. DUMAS:  Yes, sir.  And I believe Mr. Esserman's

21   client.

22   THE COURT:  Yes.  I'm sorry, I'm the one that made the

23   mistake of forgetting him and the U.S. Trustee, and I added

24   them to the list.

25   MS. DUMAS:  Yes.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  Okay.  Mr. Laffredi, does the U.S. Trustee

2    want to be heard today, too?

3    MR. LAFFREDI:  No, Your Honor.  Any of the remaining

4    objections that were not already ruled on would be issues that

5    would be raised by the committee, so we have nothing to add.

6    THE COURT:  Okay.  See, that's why I left you out of

7    the docket text by accident.

8    Okay.  Mr. Esserman, do you want to be heard then

9    first?

10   MR. ESSERMAN:  I do, Your Honor.

11   THE COURT:  Okay.  Yes, I was preparing for the

12   hearing and it was early yesterday morning, I won't tell you

13   what time, when I decided to put the word out, and I just got

14   all finished with it and I forgot you and forgot the U.S.

15   Trustee.  I got the reminder later in the day and you got

16   invited back to the oral argument.

17   MR. ESSERMAN:  That's okay, Your Honor.  I understand

18   I'm very forgettable.

19   THE COURT:  No, you're not very forgettable, except

20   that I forgot you when I prepared that docket text.

21   MR. ESSERMAN:  No problem, no problem.  Thank you.

22   For the record, Sander Esserman on behalf of various

23   public entities.  I'll just say it once.  We've got another

24   matter coming up after this.

25   THE COURT:  I know you do.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1     MR. ESSERMAN:  On behalf of the town of Paradise,

2  Butte County, Sonoma County Sanitation District, the Sonoma

3  County Water Agency, Sonoma County Development Commission, the

4  Sonoma County Preservation Open Space District, Sonoma County

5  itself, the city of Santa Rosa, Yuba County, Nevada County,

6  city of Clear Lake, Lake County, Mendocino County, city of

7  Napa, Napa County, Calaveras County Water District, all victims

8  of the camp in the 2017 wildfire damage.

9     Your Honor, we did timely file an objection.  I think

10  we might --

11     THE COURT:  You did, that's correct.

12     MR. ESSERMAN:  -- have been the only one that timely

13  filed an objection.

14     THE COURT:  No.  I gave the Tort Committee delayed

15  time.

16     MR. ESSERMAN:  Right.

17     THE COURT:  And the U.S. Trustee filed an early one.

18     MR. ESSERMAN:  No one gave us any extra time, but

19  that's okay.  Let me --

20     THE COURT:  You want more time?

21     MR. ESSERMAN:  No, I don't need any more time.

22     THE COURT:  Do you want to go and renegotiate the DIP

23  agreement?

24     MR. ESSERMAN:  I would love to.  Let me try and focus

25  my comments specifically on the 503, because that was one of my

PG&E Corp And Pacific Gas And Electric Co

1    objections.

2              THE COURT:  The 503?

3              MR. ESSERMAN:  Yes, the 503 issue.  My objection was

4    on the carve-out.  And what the carve-out did, it preserved

5    twenty-five million dollars for U.S. Trustee's fees and,

6    basically, the debtors' professionals and the committee's

7    professionals.

8              THE COURT:  Right.

9              MR. ESSERMAN:  And what my objection was simply, and

10   you heard Mr. Zumbro say, someone can make a 503(b)

11   application -- in fact, one of the objections to my motion on

12   behalf of the Public Entities for a committee is you can always

13   make a 503(b) application.

14             THE COURT:  No, I'm aware of that.

15             MR. ESSERMAN:  So my objection as to the DIP financing

16   motion is that there's something that Your Honor is very

17   familiar with called a carve-out.  And the carve-out is twenty-

18   five million dollars for the various professionals.  It is not

19   subject -- not something that was internally negotiated as to

20   who gets that twenty-five million.

21             My point on my objection was, if someone has a 503(b)

22   application or there's a trustee and the trustee has an

23   application, they should be part of that twenty-five million

24   dollar carve-out.  Not that they're not going to get paid

25   otherwise, but what's the whole purpose of having a carve-out?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  Why do they put a carve-out in there?  There was a reason they

2  put a carve-out in there.  We all know there are reasons for

3  DIP carve-outs.

4          THE COURT:  Well, but with the go to the loan-to-value

5  ratio, is it really a necessary carve-out, a realistic one?

6          MR. ESSERMAN:  Well, then get rid of it.

7          THE COURT:  Well, no, that isn't what I asked you.  In

8  other words, if you are unsuccessful in getting an official

9  committee, and therefore, for your group you do want to try to

10  get compensated for your clients under 503(b)(3) and (4), and

11  if the Court allows that amount, is there any risk that you

12  won't get paid it, under the current numbers, if we're dealing

13  with five-and-a-half billion against seventy billion of asset

14  value?

15          MR. ESSERMAN:  I get it and understand it, but that

16  goes back to why there's a provision in the agreement in the

17  first place.

18          THE COURT:  Well, I know.

19          MR. ESSERMAN:  And that's what I'm focusing on.  As a

20  practical reality, you're probably right.  As a practical

21  reality, perhaps we out to strike through the whole twenty-five

22  million dollar carve-out because there's not a realistic

23  possibility that someone's not going to get paid on this.

24          But someone made a determination that there should be

25  a twenty-five million dollar carve-out.  And somebody, my guess

PG&E Corp And Pacific Gas And Electric Co

1   is not the DIP lender, made a decision as to who should share

2   in that twenty-five million and who should be limited and who

3   should not be in that.

4           One of the limitations was 100,000 dollars for fees, a

5   cap for fees of a trustee.  I think that that's --

6           THE COURT:  Well, that's meaningless.

7           MR. ESSERMAN:  Meaningless.

8           THE COURT:  Meaningless.

9           MR. ESSERMAN:  We all know that.

10          THE COURT:  But the Chapter 7 trustee's fees has been

11  on our guidelines for thirty years in the northern district.

12  Long before Delaware had the guidelines, we had one --

13          MR. ESSERMAN:  Right.

14          THE COURT:  -- with the carve-out for the U.S. Trustee

15  and the Chapter 7 case trustee.  So what's different here is

16  the 100,000 for the --

17          MR. ESSERMAN:  That's right.

18          THE COURT:  -- Chapter 11 trustee, which is

19  meaningless.

20          MR. ESSERMAN:  And I think it should be stricken.

21          THE COURT:  What good does it do?  I mean, you've

22  heard Mr. Hansen argue why I shouldn't mess with the delicate

23  balance of the financing.  What's the point of striking it?

24  How is it going to affect your client by one dollar?

25          MR. ESSERMAN:  This has nothing to do with the lender.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1         THE COURT:  Well, I understand, but --

2         MR. ESSERMAN:  The lenders carve out twenty-five

3    million dollars.

4         THE COURT:  How does it have anything to do with your

5    client, for the same reason?  I mean --

6         MR. ESSERMAN:  Well, they're --

7         THE COURT:  -- this is not an undersecured creditor.

8    It's a far oversecured creditor.

9         MR. ESSERMAN:  We agree with that, but it's the whole

10   purpose of why it's in there for the first place.  And if it's

11   in there for a purpose in the first place and it is in there,

12   why try and micromanage that twenty-five million dollars?

13        THE COURT:  Well, the case law has been pretty

14   supportive of the lender's decision to how the lender wants to

15   use its collateral, right?  I mean, there are lots of recent

16   cases in recent years that support the carve-outs, don't they?

17   As much as they might be offensive to people who aren't

18   carve-out beneficiaries, the caselaw does seem to support the

19   content.

20        MR. ESSERMAN:  But in this case, and this really

21   probably isn't even worth arguing because it's a micro issue,

22   but what you do have is an argument here that one order of the

23   bankruptcy court awarding fees has dignity or priority over

24   another order of the bankruptcy court awarding fees.  And

25   that's where the -- that's where the allocation within the

PG&E Corp And Pacific Gas And Electric Co

1   carve-out occurs.  And that was our point.

2           THE COURT:  Well, I think if we had a case where it

3   really made a difference, I guess I'd understand that

4   somebody's dignity is going to be impugned, but if everybody is

5   going to get paid anyway, I don't know that it matters.

6           MR. ESSERMAN:  Well, maybe we can strike that whole

7   carve-out provision and trade it for some of these other points

8   that have been discussed which we're fully supportive of.

9           So look, we understand there's a DIP loan.  We

10  understand that it's needed.  We also understand that this is a

11  highly unusual case.  I've never seen a situation where the DIP

12  loan hasn't been modified by a court in some respects, and as a

13  general rule that somehow works its way back into the magic of

14  the DIP loan.  I guess we'll find out here.

15          We are supportive of your other comments made,

16  although they were not made as an advocacy, they were made as a

17  question.  But we also did object to the issue of the Chapter 5

18  causes of action, which we think ought to be maintained for the

19  whole creditor body.

20          THE COURT:  Again, do you agree with me that it's

21  probably much ado about nothing --

22          MR. ESSERMAN:  We sure hope so.

23          THE COURT:  -- at the moment if we have a solvent

24  estate --

25          MR. ESSERMAN:  We sure --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  -- which we're told we have a solvent

2    estate.  And if the situation changes and whatever occurs that

3    makes insolvency a known commodity, a known fact, I don't know

4    that that revives some avoidance actions that might not have

5    existed on the petition date, right?

6    MR. ESSERMAN:  I agree, but it is unusual, it is

7    contrary to this Court's guidelines on DIP loans.

8    THE COURT:  It is.

9    MR. ESSERMAN:  We did note that.  This is --

10   THE COURT:  Well, it is.  I noticed it too.

11   MR. ESSERMAN:  -- an unusual case.

12   THE COURT:  I wrote those guidelines about a hundred

13   years ago, or helped write them.  But the same with 506(b)

14   waivers too, where do they go?  506(c) waivers, excuse me.

15   But anyway, let's go back to the rest of your

16   objection.

17   MR. ESSERMAN:  That was it, Your Honor.  That was it.

18   Those are the important points.

19   THE COURT:  Okay, all right.

20   MR. ESSERMAN:  Thank you.

21   THE COURT:  So is it Mr. Singleton that's going to

22   appear for the fire victims?  Is that you, Mr. Singleton?

23   MR. HAWKINS:  Mr. Singleton is in the courtroom, Your

24   Honor.  I'm Chris Hawkins from Sullivan Hill, counsel to the --

25   THE COURT:  Okay, same group.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    MR. HAWKINS:  Exactly.  Chris Hawkins of Sullivan Hill

2  on behalf of the SLF fire claimants who number approximately

3  3,500.

4    And I apologize for the late objection, Your Honor,

5  but it was inspired --

6    THE COURT:  No, I --

7    MR. HAWKINS:  -- by testimony given at the 341 last

8  week.

9    THE COURT:  No, that's okay.  I haven't complained

10  about it.

11    MR. HAWKINS:  Okay.  Your Honor, in regards to our

12  first point here about finishing paying the Butte victims who

13  date back to 2015, one of the debtors' themes in this case,

14  obviously, is alleviate the suffering on behalf of the fire

15  victims and help them get on with rebuilding their lives and

16  the communities that were destroyed.  And one way to do that

17  would be to fund those final Butte fire settlements that were

18  made by PG&E on the eve of bankruptcy and then not paid.

19    The remaining Butte victims have suffered longer than

20  any of the other groups here, and the final sort of insult

21  occurred on the eve of bankruptcy filing --

22    THE COURT:  Right, I'm sure.

23    MR. HAWKINS:  -- when they had submitted the --

24    THE COURT:  I'm sure it did.

25    MR. HAWKINS:  -- settlements they had agreed to, the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    Butte victims are sitting there waiting for their checks, and

2    instead they find out that they're not getting checks, the

3    bankruptcy has been filed, and millions of dollars in severance

4    payments had gone out the door.

5          The request to fund those final settlements, there's a

6    couple different numbers in the pleadings that range between --

7          THE COURT:  Well, it's about nine million dollars.

8          MR. HAWKINS:  Nine million and I think the high is

9    twenty.  If you picked the midpoint of that range at fifteen

10   million, Your Honor, and you measure that against the DIP

11   facility here, that's literally three-tenths of one percent of

12   the DIP facility.  If you measure it against the seventy

13   billion in total estimated liabilities --

14         THE COURT:  Well, but I think you're mixing things.  I

15   don't think -- you're not asking me to tell the DIPs they have

16   to do anything, right?

17         MR. HAWKINS:  We're asking you --

18         THE COURT:  I think what you're saying is, because I'm

19   being asked to approve the DIP facility, why don't I also

20   approve this oral -- not oral, I don't mean oral, but this

21   request by your clients to get their claims paid.

22         MR. HAWKINS:  Correct.  Condition the DIP facility on

23   finishing --

24         THE COURT:  That's an understandable request, but it

25   doesn't seem to be linkage, there's no linkage to the DIP

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  facility.  It's just the timing.

2         MR. HAWKINS:  That money is going to be used for

3  various purposes, obviously, and we maintain it could be used

4  for this purpose.

5         THE COURT:  Well, but what I'm getting at is -- were

6  you here at the prior hearings, the first day hearings?

7         MR. HAWKINS:  I was.

8         THE COURT:  Because we had a number of the other first

9  day motions, various payments to various people, and critical

10  vendors and the operational integrity and all these other

11  things.  But the debtor hasn't, to my knowledge, asked to pay

12  any pre-petition tort claims.

13         But now you're asking -- let me try it a different

14  way, Mr. Hawkins.  If there were no DIP facility, you certainly

15  would have the right to ask to have your claims paid.  The

16  question is, what is the linkage between that request and the

17  DIP facility?  And it's hard for me to see it.

18         MR. HAWKINS:  It's simply one of timing, Your Honor.

19         THE COURT:  Yes.

20         MR. HAWKINS:  You're about to approve money that's

21  going to be used for a variety of purposes, and we're asking

22  you to condition it upon the payment of these last settlements.

23         And these are unique in that they're -- the testimony

24  at the 341 last week was that PG&E had collected somewhere in

25  the neighborhood of 900 million dollars in insurance proceeds.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1        THE COURT:  That's what I understood.

2        MR. HAWKINS:  And those proceeds were intended for the

3    fire victims.  Most of them were paid out to fire victims, but

4    there's a strong constructive argument -- a constructive trust

5    argument there.

6        THE COURT:  I saw that in your papers.  I don't think

7    that's a very good bankruptcy argument.

8        MR. HAWKINS:  But these are the only -- those dollars

9    that came in from the insurance companies, the only people who

10   could access those dollars were the fire victims.  They weren't

11   available to other general unsecured creditors.

12       THE COURT:  Well, then, Mr. Hawkins, tee up the motion

13   as a separate motion and ask and make that case.  But I think

14   what I'm having trouble with is not that I'm not sympathetic to

15   your clients' situation, or all the victims, or all the

16   creditors, but I don't think I can tee it up and link it to the

17   DIP motion.

18       And if you have a viable argument under constructive

19   trust, which I don't think was fully explored, you said it, but

20   I see lots of people making constructive trust arguments.  And

21   if you have a real viable argument, make it, but don't do it as

22   part of a DIP finance -- I'm not telling you what to do.  I'm

23   telling you that I don't think I can make a decision that is

24   favorable to your client as a function of whether to decide to

25   approve the DIP agreement or not.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    You've heard extensive argument asking me to approve

2  the DIP agreement.  If I decide that I'm not yet ready to

3  approve it, it would be for the reasons that I was discussing

4  with the other counsel.  It wouldn't be because -- I mean,

5  again, at one level I'm very sympathetic to your clients, but

6  as a legal matter, I don't think I can provide them for any

7  relief or -- that's all.

8    MR. HAWKINS:  I understand your point, Your Honor, and

9  we will explore bringing it separately.  And interestingly

10 enough, the debtors have their own motion recently filed --

11   THE COURT:  I'm aware of that.

12   MR. HAWKINS:  -- to pay Butte County on pre-petition

13 settlement agreements so --

14   THE COURT:  I'm aware of that.  And you're welcome to

15 see if you can match them up together or make some -- again, I

16 don't mean procedurally on the calendar.  What I meant is maybe

17 the debtor would be willing to explore that with you.  I don't

18 know.  But that's their decision.  That's not something I can

19 deal with today.  So I'll just leave it at that.  I don't think

20 I can accommodate you for this issue.

21   And the lobbying thing, I just didn't know how to cope

22 with that.  I mean, to some extent you made such a persuasive

23 argument that you demonstrated how the lobbying has been

24 successful.  I mean, if the company has managed to reduce some

25 of its liabilities by lobbying, that's another argument for

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    lobbying.

2           MR. HAWKINS:  I understand there are two sides of that

3    coin, Your Honor.

4           THE COURT:  Yes.

5           MR. HAWKINS:  One improves the finances and the other

6    improves safety.  And we'd ask you to condition the DIP

7    financing on the side of that coin that falls to safety.

8           THE COURT:  I know.  But I think to say -- to take

9    your client or you on behalf of your clients and say would I

10   please tell this debtor it cannot engage in lobbying, it cannot

11   spend any money in lobbying, I don't know that I have the

12   authority to do that.

13          And secondly, I mean, it's ordinary course of

14   business.  Like it or not, it's true, it's a fact.  And they're

15   saying, We're making our business decisions.  If they make

16   imprudent business decisions, there are consequences.

17          So I can't sit here and say to the management of the

18   debtor, I don't think you should be paying money to lobbyists.

19   I mean, at a personal level, I might have a different opinion,

20   but as a legal matter, I don't think I can impose that on them.

21          MR. HAWKINS:  The objections on that point, Your

22   Honor, from the other parties here related to governmental

23   entities and regulators being involved in the plan and

24   negotiation process.  And that was not what we request to be

25   prohibited at all.  We were referring to the spending of money

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    to change laws.  That's what we --

2           THE COURT:  Okay.  I think that, as a general matter,

3    a debtor in possession is in charge of managing its own affairs

4    and court can't micromanage and say, any more than I can tell

5    them what to do for the various other things that they do.

6           And there's a strong sense of conduct or a conduct

7    that should be changed that a debtor needs to be reminded of,

8    that's why you have creditors' committees, so convince them

9    that they ought to alter their decisions.  But I can't say I'm

10   sympathetic to your clients, your fifty-two victims; therefore,

11   I'm going to order the debtor not to pay lobbying unless they

12   pay your fee.  I can't do it.

13          So I've got your point and I've noted it.

14          MR. HAWKINS:  Understood, Your Honor.

15          THE COURT:  And I appreciate your comments.

16          MR. HAWKINS:  Thank you.

17          THE COURT:  Okay.  So Ms. Dumas, you're last up by

18   your own makings.  And I've kind of lost track of my timing and

19   we've run a little late, but why don't I ask you to make your

20   comments and see what you do here.

21          MS. DUMAS:  Thank you, Your Honor.  Cecily Dumas,

22   Baker & Hostetler, appearing on behalf of the official

23   committee of tort claimants.  And I'm not going to take very

24   much time, at least in my opening remarks.

25          First, I want to introduce a couple of people.  My

                PG&E Corp And Pacific Gas And Electric Co

1    partner, Eric Goodman, is here with me in the courtroom.

2              THE COURT:  Mr. Goodman.

3              MS. DUMAS:  And also, in the courtroom is Karen

4    Lockhart.

5              THE COURT:  Good morning, Ms. Lockhart.

6              MS. DUMAS:  Ms. Lockhart is the chair of the tort

7    claimants' committee.  Her father died in a fire that consumed

8    her childhood home that was caused by PG&E.  Her loss is

9    similar to -- unique to her but similar in nature to the losses

10   sustained by all of the people to whom we are reporting,

11   responding, and ensuring that we're doing our utmost to protect

12   their interests in this bankruptcy case.

13             I'm a bankruptcy lawyer, not a plaintiff's tort

14   lawyer, so it's an intersection for me.  But what that

15   intersection brings me to is my own personal sense of cognitive

16   dissonance about this loan and this case.

17             On the other hand, I've done a lot of DIP loans and

18   I've negotiated a lot of DIP loans on the part of the debtor,

19   and I understand everything that JPMorgan is saying.  JPMorgan

20   even brags in its reply memorandum that it managed to put

21   together what it believes to be the largest DIP loan in U.S.

22   history, five billion.  That's quite an accomplishment.

23             And I think the financial markets are probably having,

24   frankly, quite a successful time with this case and the loan

25   facilities and the equities in this case.  It may be a five

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  billion dollar DIP loan, but I challenge anybody in the

2  courtroom to tell me the last time a DIP loan was made to a

3  company that had a ten billion dollar market cap.  So when I

4  hear what's --

5            THE COURT:  Well, you'll recall that the prior

6  bankruptcy of the debtor that you were involved with and I was

7  involved with, they had a liquidity crisis then, too.

8            MS. DUMAS:  Exactly right.

9            THE COURT:  So we've been there and done that for a

10  different reason in terms of liquidity.

11            MS. DUMAS:  On a liquidity crisis.

12            THE COURT:  So the book value didn't get the lights or

13  the operational expenses paid.  Do you remember that?

14            MS. DUMAS:  I do remember that, Your Honor.  And thank

15  you for reminding everybody in the courtroom that we're both

16  old enough to have been involved in PG&E 1.

17            But my point is that, from the perspective of the

18  financial markets, this case is -- I mean, lenders are going to

19  be trading in and out of the DIP, they're trading in and out of

20  the bonds, they're trading in and out of the equities, people

21  are making money left and right.  That's all good.  That's what

22  we're allowed to do in our financial markets.  And it reflects

23  the health of the company.

24            On the other hand, the cognitive dissonance is that

25  there are people who are still living in tents because of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   PG&E's conduct as found by its own admissions and independent

2   regulators.

3           So put aside the cognitive dissonance for the moment

4   and let's just talk about this DIP.  And I'm going to start

5   with what I hope to be, in optimism, two areas, two points in

6   which we might be able to reach agreement.  I did have numerous

7   conversations with counsel for the debtors and counsel for the

8   lenders, and at the conclusion of those, they politely told me,

9   No, we're not going to do anything.  But they had the

10  discussions and I appreciated that.

11          So the two points that I think we can get to agreement

12  on are really kind of more technical points, and that is this

13  whole point about the CPUC intervention before utility assets

14  can be foreclosed on, as I explained -- and maybe somebody did

15  better research than we did, but as I explained to the DIP

16  lenders and the debtors' counsel, when we looked at California

17  state law, we were unable to find a legal requirement, once the

18  CPUC having agreed to the granting of a lien, a legal

19  requirement that you have to go back to enforce the lien.  As a

20  matter of fact, the cases suggest that you don't have to go

21  back.  So they promised to go back, which is great.

22          I don't want to get into the verbiage of seek CPUC

23  approval or obtain.  What I'd like to see is the order simply

24  say the CPUC has had to have authorized.  Okay.

25          So let's just put it in the passive voice, not

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    seeking, because, again, I may be paranoid, but it seems to me

2    that when the debtor promises to go back to the CPUC, that's

3    not binding on the lenders, but it's --

4              THE COURT:  Are you saying it's contingent subsequent?

5              MS. DUMAS:  No, no, no.  It's that they can't enforce

6    until the CPUC --

7              THE COURT:  Yes, that's what I'm saying.

8              MS. DUMAS:  It's a language thing.

9              THE COURT:  But is it something they could get ahead

10   of time by way of a clarification now or only in the future if

11   there's a default?

12             MS. DUMAS:  However they wish to do it.

13             THE COURT:  Which are you advocating?

14             MS. DUMAS:  I'm only advocating for before they go

15   back in to actually exercise remedies against utility assets,

16   that a condition precedent to that is CPUC approval, in the

17   passive voice.  Not who has to go get it or who's bound by it,

18   but just it has to have been done.

19             THE COURT:  Using the passive voice, bad precedent.

20             MS. DUMAS:  I've been accused of that on many

21   occasions.

22             THE COURT:  Passive voice should not be used.

23             What's the other condition?

24             MS. DUMAS:  All right.  Back to the passive voice

25   because, again, I get schooled in grammar a lot, but the point

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    is, is that the lenders can't go ask the CPUC approval, only

2    the debtor can, but nothing in California law says anybody --

3    they're not bound.  That's my first point, a wording.

4          My second point is another relatively discrete point,

5    and that is Mr. Zumbro clarified, and we appreciate that, that

6    the inability to investigate or challenge the liens or claims

7    of the DIP lenders applies only to their status as DIP lenders.

8          THE COURT:  Yeah, I read that.  I mean, I think I saw

9    that in the terminology too.

10          MS. DUMAS:  Yes.  But it's not so -- the language is

11    not entirely clear.  It could be a smidgen clearer.

12          But the point is, is that a number of the DIP lenders

13    also have pre-petition unsecured loans.  The prohibition

14    against challenging the claims shouldn't extend to their status

15    quo pre-petition lenders.

16          THE COURT:  But it doesn't.  I mean, I think what he

17    said, it doesn't and --

18          MS. DUMAS:  Yes, he said it doesn't.  The language of

19    the order could be a little bit tighter, because it ties in --

20          THE COURT:  But who's going to go investigate a

21    pre-petition unsecured claim of a creditor?  Who's going to do

22    that?

23          MS. DUMAS:  We just want to make sure there's no

24    overlap.

25          THE COURT:  I understand that, but if Bank X is a DIP

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    participant but also is a pre-petition unsecured creditor,

2    who's going to waste time to investigate unless it's somebody

3    objecting to their claim?  I mean --

4         MS. DUMAS:  We just don't want any overlap.  Again, I

5    wasn't able to find any sneaky rollup.  I asked them about it.

6    They assured us there's no sneaky rollup.  I just want to make

7    sure there's not any sneaky this isn't allowed claim, the pre-

8    petition claim, just because I'm a DIP participant.  These are

9    language issues.

10        THE COURT:  So let's go back to the passive voice and

11   CPUC.  What's your take on the provision of the default

12   language about appointment of a Chapter 11 trustee?

13        MS. DUMAS:  Oh, okay.  So now we're going to get to

14   the meat of the coconut.  This is not my two technical points

15   on which we might reach agreement.  This is a big point.

16        Your Honor, let me just make a couple of examples.

17   You don't need to get to the appointment of a trustee, which,

18   as we pointed out on your papers, is actually a meaningful risk

19   in the case.  But you don't even need to get there.  You're

20   correct, and you've said a number of times, they're removing

21   your evaluation of whether a lift stay is warranted as long

22   as -- the defined term is termination event has occurred.

23        THE COURT:  Yes, termination.

24        MS. DUMAS:  So let me just show you, by way of

25   example, the actual application of two termination events in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    this long credit agreement.

2           THE COURT:  Are you looking at the credit agreement or

3    the --

4           MS. DUMAS:  The credit agreement.

5           THE COURT:  Okay, I got it.  I've got page 73 right

6    here.

7           MS. DUMAS:  So look, I'm going to make it easier for

8    you.  I'm going to take you to page 59 of the credit agreement,

9    which is the affirmative covenant to comply with laws.  Section

10   6.4 --

11          THE COURT:  Okay.

12          MS. DUMAS:  -- subsection C.  So the debtor has to

13   comply with all requirements of law except to the extent that

14   failure to comply therewith could not in the aggregate

15   reasonably be expected to have a material adverse effect.

16   Right?  Okay.  Normal, standard DIP provision.

17          However, in this case, on this day, the minute you

18   enter this order, that could be in violation.  The reason for

19   that?  Because Judge Alsup is currently, right now, conducting

20   criminal probation proceedings.  On April 2nd he's going to

21   set, either issue another OSC or set the terms of probation.

22   But there's a pending criminal proceeding.

23          I'm not suggesting that the lenders are going to

24   declare a default on that.  I'm just suggesting that they

25   could, if they decide to, because this isn't a typical debtor.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  It's not currently complying with law.  That's just one

2  example.  I mean, just switch to --

3          THE COURT:  You've gone through the fine print here

4  with --

5          MS. DUMAS:  Yes, sir, I have.

6          THE COURT:  -- with the defined terms.  I have not

7  read all these so I don't know what the defined term

8  requirement of law is, but --

9          MS. DUMAS:  Well, you would assume it's not having a

10  criminal --

11          THE COURT:  I would assume that.

12          MS. DUMAS:  -- proceeding pending.  So let me just

13  give you a second example, because I don't need to go through

14  all of them.  I don't want to belabor the point, but if you

15  switch to page 67 -- oh, and by the way, in fairness, the

16  debtor would have a thirty-day cure period for its violation of

17  laws, so it would have to run up to Judge Alsup and say, you

18  have to undo all this within thirty days or our lenders take

19  over our case.

20          THE COURT:  So paragraph 67 -- page 67.

21          MS. DUMAS:  So page 67.

22          THE COURT:  What paragraph?

23          MS. DUMAS:  Paragraph 7.5.  Mergers, consolidation,

24  sales of assets and acquisitions.  So they can't merge, et

25  cetera, et cetera, or -- hang on --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          THE COURT:  I mean, this looks pretty standard to

2    me --

3          MS. DUMAS:  Sorry, I'm looking for the -- sorry,

4    sorry, sorry, sorry.

5          THE COURT:  This is kind of innocuous to me.

6          MS. DUMAS:  I'm going for the sales or sale -- hang

7    on, hang on, let me get there.

8          THE COURT:  Well, the dispose of in one transaction

9    is --

10          MS. DUMAS:  The dispositions of assets -- you get my

11    point.

12          THE COURT:  Okay.

13          MS. DUMAS:  So -- sorry, I lost track of -- in the

14    moment, I lost track of the provision -- but the disposition of

15    assets is dispositions are generally listed -- limited to a

16    bucket -- a basket amount twenty-five million.  This debtor

17    said, when it filed the case and the media reported that the

18    debtor was considering before it filed the case, selling its

19    gas pipeline system.  So obviously, if it decides to do that as

20    part of its reorganization, it -- an event of default is going

21    to be triggered, which doesn't have a cure period.

22          THE COURT:  Well, you know, there are -- it looks like

23    there are about fifteen exceptions to this paragraph 7.5 that

24    you read me.  Are you sure that all these options don't apply?

25          MS. DUMAS:  Yes, sir, they can't sell the gas pipeline

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    system without the consent of the lenders.  So, again, I don't

2    want to take a lot of time on this point.  The only point that

3    is worth making here is the main point Your Honor has repeated,

4    which is the -- what is wrong with this credit agreement, under

5    the circumstances of this debtor, is Your Honor's relinquishing

6    control upon simply finding that one of these things happened.

7              THE COURT:  That's an event.  That's the event.

8              MS. DUMAS:  Exactly.  All you have to do is find that

9    it occurred, not whether it has a material consequence --

10             THE COURT:  So what should I do?

11             MS. DUMAS:  -- not what should happen next.

12             THE COURT:  What would you suggest that I do?

13             MS. DUMAS:  Well, let's try to put that in context.

14   So we submitted, in our papers, that the real reason behind

15   this -- and counsel confirmed -- that the real reason behind

16   all these provisions is that the lenders wanted to have undue

17   control over the reorganization.  Over the process.

18             MR. ZUMBRO:  Your Honor, I'm sorry, but I did not say

19   that.

20             MS. DUMAS:  No, counsel for JPMorgan did.

21             THE COURT:  Well, I didn't --

22             MS. DUMAS:  So what they said is that --

23             THE COURT:  Well, I didn't hear it, because I went and

24   read that definition of acceptable plan and it didn't look

25   like --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1        MS. DUMAS:  No, no, no.

2        THE COURT:  -- anywhere near what you're describing.

3        MS. DUMAS:  No, what he said was, if there is an event

4   of default, there will be a negotiation.  The point of that is

5   is that they want JPMorgan and this syndicate of lenders to

6   force the debtor to go talk to them to determine next steps.

7        THE COURT:  But that's true in most --

8        MS. DUMAS:  Not to talk to you -- determining.

9        THE COURT:  But you know and I know that's true in

10  most debtor defaults.  You go talk to the lender.  And if the

11  question is whether the Court has any role in the plan --

12       MS. DUMAS:  That's right.  So --

13       THE COURT:  So what would you -- what would like on

14  your wish list?  What you have them change?

15       MS. DUMAS:  So --

16       THE COURT:  Relief from stay?

17       MS. DUMAS:  I think that they -- the most

18  inappropriate and unsupportable term of this credit agreement,

19  which, admittedly, the lenders need -- the debtor needs this

20  facility.  We said that in our papers.

21       THE COURT:  We all agree that.  True.

22       MS. DUMAS:  The most unsupportable provision, given

23  the value of this debtor and the significance of this case to

24  the State of California and its energy markets, is the

25  relinquishment of the bankruptcy court's power to do anything

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    other than determine that a termination even has occurred.

2           THE COURT:  So what be the more --

3           MS. DUMAS:  We object to that being in the --

4           THE COURT:  What would be the more traditional thing

5    to do?

6           MS. DUMAS:  What we put in our --

7           THE COURT:  Relief from stay.

8           MS. DUMAS:  -- objection.

9           THE COURT:  Wouldn't it be just to make a motion --

10   make somebody have to --

11           MS. DUMAS:  That's exactly what we did.

12           THE COURT:  -- convince the Court for relief from

13   stay --

14           MS. DUMAS:  It was a suggestion of the tort committee

15   that the burden, in fact, be shifted to the lenders to

16   demonstrate to the bankruptcy court -- prior to going to the

17   CPUC -- but to demonstrate to the bankruptcy court that

18   whatever occurred in the bankruptcy court's judgment, is worth

19   permitting the lenders to exercise their remedies.  That's

20   exactly what we're saying.

21           THE COURT:  Well, are you saying cause for relief from

22   stay?  I mean, I want to bring it back to bankruptcy

23   terminology.  In the regular everyday case, the motion for

24   relief from stay --

25           MS. DUMAS:  I think 362(d) is appropriate.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1           THE COURT:  And I --

2           MS. DUMAS:  Because they're going to be over-

3     secured --

4           THE COURT:  Right.

5           MS. DUMAS:  -- they will -- the regular 62 findings

6     are going to be able to tell you that the property is --it's

7     necessary for the reorganization, et cetera.

8           THE COURT:  Well, let's go back to basics.  What are

9     the basic elements of reading for relief of stay?  Cause, or

10    lack of equity and no prospect of reorganization, and who's got

11    the burdens?

12          MS. DUMAS:  Exactly.

13          THE COURT:  We know who's got the burdens.  Debtors

14    got the burdens for the most part, right?

15          MS. DUMAS:  That's right.

16          THE COURT:  So what's wrong that?

17          MS. DUMAS:  The debtor here has -- the debtor here has

18    abdicated to the lenders any meaningful judgment call with

19    respect to the materiality of events which could trigger a

20    termination event, in advance of any of them occurring and the

21    circumstances that trigger -- I mean, and we could go

22    through -- I just gave you two examples, they want -- but --

23    selling the gas system --

24          THE COURT:  Well, but see, selling the gas system is

25    one of those things that would be a very complex thing in and

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   of itself.  To me, appointment of a trustee is -- it's

2   instantly done, or if a mot -- party, a committee, or a party

3   in interest, or the U.S. trustee, makes a motion to this Court

4   to replace the debtor in possession with a trustee.  That's one

5   of those things you deal with it, you make a decision, and then

6   the outcome is the outcome.  It's not like a complex sale of a

7   gas transmission line.  And if the Court determines that

8   there's cause for that kind of remedy, then what happens,

9   happens, including under the -- Mr. Hanson's explanation and

10  the document -- the financers have nothing more to do, they're

11  free to enforce their rights.  And if they have to go to the

12  CPUC, that's another story.  But they don't have the bankruptcy

13  court interfering with that decision, unless we go back and put

14  the more traditional relief from stay-type remedies in there.

15          MS. DUMAS:  Yes, sir.  I think where your -- where we

16  were differing in my argument and your questions to the other

17  parties were, I was talking about, even under the scenario of

18  the debtor doing simply what it wants to do in its

19  reorganization, the lenders have the right to trip it up.  You

20  were talking about even more scary circumstances, which is a

21  third-party event occurs in the case that nobody in this

22  bankruptcy court can control, such as withdrawal of the

23  reference and appointment of a trustee.  Some unforeseen

24  circumstances that is not intended.

25          THE COURT:  Well, but appointment of trustee can be at

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   this level too, you know that.  So what I'm getting at is --

2          MS. DUMAS:  That's true.  But --

3          THE COURT:  The point is, if I'm the presiding judge

4   and a party in interest persuades me to order the appointment

5   of trustee, then I order the appointment of trustee, period.

6   And then the question is what do I do next?  Maybe that trustee

7   comes in and says, please restrain the lenders from enforcing

8   their rights.  But I guess I'm not sure what you want me to do.

9   If you think that's the right result, to have the bankruptcy

10  court control, at least the next step for the lenders to

11  enforce their right -- their remedy.

12         MS. DUMAS:  We think that is the right result.

13         THE COURT:  Okay.

14         MS. DUMAS:  We do not think that there has been a

15  sufficient showing, under the circumstances and financial

16  condition of this debtor, to cause the bankruptcy court to make

17  an intentional decision to relinquish its power upon the

18  occurrence of a termination event.  We think that the -- that

19  should be --

20         THE COURT:  Okay.

21         MS. DUMAS:  -- circumstances pursuant to which the

22  lenders may go to the bankruptcy court for relief from

23  automatic stay.  And if, in fact -- and we trust that the Court

24  will understand how to make a determination of whether their

25  loans are impaired, their right of repayment is impaired, their

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    collateral is impaired, or any of the other considerations that

2    the Court makes.

3            THE COURT:  But you do concede, don't you, that

4    what -- of all the hundred things that make this case

5    different, one of the things is this is a post-petition loan,

6    this is a lender who wasn't forced in under use of cash

7    collateral -- it wasn't a forced loan, it was the lenders --

8    all fifty of them in the syndicate -- and their advisers have

9    chosen to make a substantial sum of money available under the

10   terms that they have declared in this lengthy document.  And so

11   if I take your suggestion -- and the other creditors' committee

12   seems to be -- welcome that outcome too, I am upsetting,

13   potentially, at least, that delicate balance of a negotiation.

14   Now, maybe it won't upset it, maybe they'll say fine, we'll

15   live with it.  I don't know; that's their call.  But I have to

16   make that decision to force them to make the next decision,

17   right?

18           MS. DUMAS:  Yeah.  I mean, so counsel already informed

19   the Court that certainly the pricing of the loan, and perhaps

20   other terms, would be implicated.

21           THE COURT:  Right.

22           MS. DUMAS:  This is a situation in which the ability

23   of Wall Street collectively to provide five billion dollars

24   dampens the prospect of the debtor having any other recourse to

25   borrowing.  So we concede that we are where we are in terms

PG&E Corp And Pacific Gas And Electric Co

1    of --

2            THE COURT:  Well, but, again, I'll make the decision,

3    that's what I'm supposed to do, but I have to accept there

4    could be consequences to it.  So do you accept that there are

5    consequences to it?  You're trying to persuade me to tell the

6    lenders I won't allow this automatic relief from stay

7    provision; you'll have to come back and get permission to

8    enforce your remedy.  And if I dismiss that one requirement,

9    then there are consequences.  Maybe they'll go out in the hall

10   and come back in five minutes and say fine, or maybe they'll go

11   back to the drawing board and maybe this entire restructuring

12   will be -- I won't say in jeopardy, but they'll be -- there

13   could be significant changes.  Does your committee want to run

14   that risk?

15           MS. DUMAS:  On behalf of the tort committee, we

16   believe that this is an inappropriate term that the Court

17   should reject.  We understand the consequences.  The lenders'

18   counsel has posed in open court there are consequences.  We

19   believe that, in the context of this case, and reading the

20   financial press as we all do about this case --

21           THE COURT:  I don't.

22           MS. DUMAS:  If you did, you would know that Wall

23   Street is very sanguine about the upshot of the proceedings to

24   equity holders.  You would read that --

25           THE COURT:  Well, I mean, I learned a long time ago,

of 205   operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   as you did, that DIP loans are good deals.  You got lots of

2   protections and lots of benefits, and DIP lenders make loans

3   for reasons.  So --

4           MS. DUMAS:  And who decided it's a DIP loan?  Because

5   we have reportedly solvent debtor, so put aside that it's a DIP

6   loan.  Let's just look at the company in the context of this

7   company provides a quasi-public utility, it provides public

8   services to millions of Californians, it is too big to fail,

9   Sacramento's not going to let it fail, the CPUC is going to

10  find a way to have these costs passed through to ratepayers or

11  taxpayers or -- this affects the whole state of California --

12          THE COURT:  Right, it does.

13          MS. DUMAS:  -- not just PG&E's customers.  It affects

14  Sempra, Southern California Edison.

15          THE COURT:  Right.

16          MS. DUMAS:  There is not a reasonable circumstance in

17  which one can conclude that this money is at risk, secured and

18  at the top of the credit stack, of a company that must come out

19  of this bankruptcy case.  So yes, we're willing to take the

20  risk that they will go ahead and decide to make the loan,

21  notwithstanding being subjected to Your Honor's evaluation of

22  whether this is the right thing for the reorganization to

23  proceed.  Yes, we are willing to take that risk.

24          THE COURT:  Okay.  Any further?

25          MS. DUMAS:  One more observation.  We, as well as Mr.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    Sullivan's clients, remarked that the use of proceeds seem a

2    little lopsided.  Yes, I am a bankruptcy lawyer.  Concededly,

3    this is not something that's an appropriate condition of a DIP

4    loan.

5            THE COURT:  Which one, on the carve-out?

6            MS. DUMAS:  No, the payment of the Butte Fire

7    settlements.

8            THE COURT:  Oh, oh, settlement.

9            MS. DUMAS:  So just -- we were simply trying to make

10   the point to the debtor that it has sought to pay, what, 60

11   million, 256 million, a 100 -- almost half a billion dollars to

12   other pre-petition creditors, and we understand, because I'm a

13   bankruptcy lawyer, that these are payments that are justified

14   because they're accretive to value of the estate going forward,

15   and a successful reorganization.

16           THE COURT:  Well, we used to call them critical

17   vendors, right?

18           MS. DUMAS:  The critical vendors are an example of

19   that.  So what I thought to myself is, how would I describe to

20   the debtor -- because that's really who we're trying to

21   convince to do some of these things -- how would I describe to

22   the debtor that it's accretive to value to provide shelter for

23   these people in Paradise, California?  Or it's accretive to

24   value to satisfy some of the claims that they've already agreed

25   to settle, rather than putting them back in the claim pool to,

PG&E Corp And Pacific Gas And Electric Co

1    perhaps, come up with a new, lower settlement formula.  It is a

2    sign that the debtor, who has come to you and said on many

3    occasions, we're sympathetic, we to do right by tort claimants.

4         I think that the -- even the capital markets would

5    appreciate the debtor making a gesture of housing and

6    sheltering these people, of satisfying these obligations, while

7    they -- you know, I've -- they paid (indiscernible) and so it's

8    not unusual.  There's 548 for that, if that was inappropriate.

9         But my point is, there is an intangible benefit to the

10   bankruptcy estate and the success of the bankruptcy estate, in

11   actually funding what may be pre-petition liabilities for

12   funding.

13        THE COURT:  But I'm going to ask you the same

14   question.

15        MS. DUMAS:  Yes.

16        THE COURT:  Same question I asked Mr. Hawkins.  I

17   mean, it's a legitimate request, and you're making a legitimate

18   request.  But I can't link it to the DIP financing, can I?

19        MS. DUMAS:  I agree.

20        THE COURT:  Yeah.

21        MS. DUMAS:  And it's really -- we were making a

22   message to the debtor.  It's not --

23        THE COURT:  No, if the debtor wants to file a motion

24   to pay one subset of victims, it can do that, and we'll see

25   what the creditors say.

PG&E Corp And Pacific Gas And Electric Co

1          MS. DUMAS:  Well, the creditors have said no.

2          THE COURT:  Well --

3          MS. DUMAS:  I mean, in their -- at their one point in

4  their papers, no, don't pay those fire victims with

5  settlements.

6          THE COURT:  Well.

7          MS. DUMAS:  But we understand, and that's the totality

8  of my observations, You Honor.  I appreciate your time.

9          THE COURT:  Mr. Zumbro, do you want to take a break,

10  or make your closing argument, or what?  Because I -- obviously

11  we're run long, but this is important, obviously, and I want

12  you to feel free to say what you want, but people might want a

13  personal convenience break.  I also probably do still have a

14  few questions left on the credit agreement, but we've covered a

15  lot of the stuff.  So you tell me what you -- your preference.

16          MR. ZUMBRO:  Whatever the Court's preference.  I'm

17  happy to answer your questions or walk through your concerns

18  now.

19          THE COURT:  Well, why don't you make whatever final

20  arguments you want to make for the debtor, and I'll --

21          MR. ZUMBRO:  Paul Zumbro from Cravath, Swaine and

22  Moore for the debtor.  Your Honor, I don't really have final

23  arguments to make, other than Ms. Dumas says they're willing to

24  take the risk.  We are not.  This is the financing we have,

25  Your Honor.  I mean, we have -- maybe it's not a perfect DIP.

PG&E Corp And Pacific Gas And Electric Co

1    We think it's as good as it gets.  We certainly are not trying

2    to paint the corner -- into any corner --

3              THE COURT:  Well --

4              MR. ZUMBRO:  And --

5              THE COURT:  It's okay.  But what are the -- what if I

6    say that?  What's going to happen from your point of view?

7              MR. ZUMBRO:  I don't know, as we stand here today.

8    But I do understand there's been a very careful balancing of

9    the risks.  I do know that during that seven-day people, people

10   can come and be heard before you.  I know there's a --

11             THE COURT:  Yeah, but, come on, you know that doesn't

12   mean anything, does it?

13             MR. ZUMBRO:  But it does.  It could mean an

14   injunction, properly crafted, is put into place where the stay

15   is lifted, but the Court has authority under 105 to craft an

16   appropriate injunction that would sort of touch on the

17   circumstances at the time.  I think we're overstating the words

18   that say, if, upon the determination -- the determination, if

19   that has occurred -- the 362 stay is lifted.  That doesn't mean

20   that this Court is dispossessing itself of jurisdiction over

21   the debtors and their assets.  I do think that parties in

22   interest could seek an appropriate injunction, if the

23   circumstances merited, and this Court were to find that they

24   satisfy the standards.  So I think there's a little bit of

25   overdramatization of the point.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    These DIP lenders want to make sure that they can

2    exercise their remedies in appropriate circumstances.  The

3    notion that the debtors have somehow abdicated anything to the

4    DIP lenders is false.  We've carefully negotiated events of

5    default, which have appropriate and high materiality

6    thresholds.  What constitutes a material adverse effect of

7    PG&E, taken as a whole, and would result in something that

8    means that we can't repay the DIP facility.  That's basically

9    what it comes down to.  If some of that occurs, it's so large

10   that we're unable to repay the DIP loan, then the DIP lenders

11   have the ability to exercise remedies.  And we think that

12   that's an appropriate balancing, a very challenging, integrated

13   set of considerations.

14        But Your Honor, I also note that, as difficult as the

15   trustee -- I understand the Court is concerned about the

16   Chapter 11 trustee.  I understand that.  Unfortunately, I also

17   understand that I don't think that there's any DIP lender who

18   would give a DIP loan that didn't have a trustee default.  So I

19   think there can be difficult circumstances that we may find

20   ourselves in down the road, but we can't --

21        THE COURT:  Again, I think you misunderstood me

22   before.  You're misunderstanding me again.

23        MR. ZUMBRO:  Okay.

24        THE COURT:  I'm not suggesting there couldn't be a

25   default; I'm suggesting, what are the consequences of the

PG&E Corp And Pacific Gas And Electric Co

1    default?

2         MR. ZUMBRO:  Well, the immediate --

3         THE COURT:  And it's instant relief from stay.  So I

4    want to go back a minute ago, to where you were a moment ago.

5         MR. ZUMBRO:  Sure.

6         THE COURT:  Paragraph 14.B of the --

7         MR. ZUMBRO:  Yes, sir.

8         THE COURT:  -- DIP order --

9         MR. ZUMBRO:  Yeah.

10        THE COURT:  -- says, unless the remedies notice --

11   unless during the remedies-notice period -- so that's seven

12   calendar days.  So if we have a three-day weekend, and I'm off

13   at a judge conference for one more day -- it's three days --

14   the court determines that a DIP-termination event has not

15   occurred, the automatic stay imposed, et cetera, et cetera, is

16   terminated.  Now you're telling me that on day six I could

17   make, I could issue an injunction?  Automatic -- free of

18   charge --

19        MR. ZUMBRO:  No.

20        THE COURT:  Can I -- can the -- no.  The answer is no,

21   because the lenders are going to insist that it be whatever the

22   standards of getting an injunction are.

23        MR. ZUMBRO:  I'm saying that I think the Court still

24   has the inherent authority to craft an appropriate remedy in

25   that circumstance.  Yes.

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1        THE COURT:  Can you be more specific?

2        MR. ZUMBRO:  I think that --

3        THE COURT:  Can I just say the stay's in effect?

4        MR. ZUMBRO:  -- the burden is not on the DIP lenders

5   to have to sort of carry a stay-lift motion.  Yes, I accept

6   that; that's true.

7        THE COURT:  Okay.

8        MR. ZUMBRO:  There's no dispute about that.

9        THE COURT:  Okay.

10       MR. ZUMBRO:  If that is what it says.  My only point

11  is during that seven-day period, there's going to be a hearing

12  before Your Honor about whether or not a default occurred.

13  Those are rarely black-and-white issues, right?  And so the

14  Court, at the end of the day --

15       THE COURT:  Well, again --

16       MR. ZUMBRO:  -- will make that determination.

17       THE COURT:  -- again, it depends on what the default

18  is.

19       MR. ZUMBRO:  Correct.

20       THE COURT:  If Ms. Dumas says, you know, they're

21  trying to sell their gas pipeline; that's a default, that's one

22  thing.

23       MR. ZUMBRO:  Right.

24       THE COURT:  If he says that the District Court has

25  just instructed the management to be locked up, or the District

escribers
(973) 406-2395 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    Court has just decided that there should be a replacement of

2    management, that sounds like a much different situation.

3         MR. ZUMBRO:  It does, but the loan agreement that we

4    have negotiated --

5         THE COURT:  I know.

6         MR. ZUMBRO:  -- that would be a default.

7         THE COURT:  I understand.

8         MR. ZUMBRO:  And I think we would have to -- we would

9    all have to be cognizant, including the Court, of the

10   consequences of that in those circumstances.  But I don't think

11   it's sufficient reason for this Court to not approve this

12   financing, which is essential for this debtor to continue.  If

13   that's what it comes down to.

14        THE COURT:  Okay.  Let me see if I have a couple

15   specific questions.

16        MR. ZUMBRO:  Yes, sir.

17        THE COURT:  I have one nonimportant one.

18        MR. ZUMBRO:  Okay.

19        THE COURT:  It's on page 4, at line 8.  There's a

20   reference to the local rules of the United States District

21   Court for the Northern District of California.

22        MR. ZUMBRO:  I'm sorry, are you on the proposed order,

23   Your Honor?

24        THE COURT:  Um-hum.  Yeah.

25        MR. ZUMBRO:  Okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1       THE COURT:  I wanted to tell you I -- some of my

2   comments are not major.  There's a reference at line 8, on page

3   4, to the local rules of the United States District Court for

4   the Northern District.  It's the local rules of the United

5   States Northern District of California; it's not the District

6   Court.

7       MR. ZUMBRO:  Okay.

8       THE COURT:  It's the Northern District of California.

9   But now going back to the substance of it.  The -- yeah, I told

10  you about I'm prepared to make the good-faith finding for Mr.

11  Kruz (ph.).  Yeah, can you explain, just explain to me

12  something.  This is not so much an action item as to make sure

13  I understand it, and that has to do with the DIP liens and the

14  specific reference to what's called the CPUC-excluded property.

15  There seems to be something called CPUC-excluded property, but

16  excluded from the exclusion is proceeds and products.  Can you

17  explain what that means and why -- what's the history of that?

18      MR. ZUMBRO:  Sure.  The excluded property itself is

19  those items which are specified on schedule A --

20      THE COURT:  Right.

21      MR. ZUMBRO:  -- to the proposed order.

22      THE COURT:  Right.  And I did -- I looked at that

23  schedule, and there's a bunch of stuff on there.  Right.

24      MR. ZUMBRO:  Correct.  And then --

25      THE COURT:  But then there's an exclusion from the

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    exclusion, right?

2        MR. ZUMBRO:  I think all that is meant to say is if

3    there was something that didn't actually fall into the category

4    of those public-use assets but somehow were proceeds that came

5    back to the debtor, it would, in itself, be excluded.  But it

6    was just a very hyper-technical point; I don't -- I think it's

7    probably unlikely --

8        THE COURT:  Okay.

9        MR. ZUMBRO:  -- in the real world that's anything --

10        THE COURT:  Well, it says the DIP collateral --

11        MR. ZUMBRO:  Which that --

12        THE COURT:  -- shall include proceeds and products of

13    the excluded property, so it seems strange.  I --

14        MR. ZUMBRO:  Right.  So if something flowed back, so

15    most of the CPUC-excluded property is stuff that the debtor

16    uses to carry out its obligations under various public

17    policies, but if something come back -- all that was to say if

18    some program were, for example, had reached to the end of its

19    term, and the property came back into the debtor's estate --

20        THE COURT:  Okay.

21        MR. ZUMBRO:  -- and we were no longer using that --

22        THE COURT:  Okay.  All right.  That's fine.

23        MR. ZUMBRO:  That's all that was meant to get at.

24        THE COURT:  Okay.  Now go to paragraph 8, on

25    limitations of use of proceeds.  Now, this is the DIP loan

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    proceeds.  So it says, none of the DIP facilities, the DIP

2    collateral, et cetera -- any portion of the carve-out, and then

3    the next words, "or any other funds".  Any other funds may be

4    used.  Well, any other funds would be, to me, funds that aren't

5    part of the DIP collateral.  So it seems like the phrase "or

6    any other funds", at line 23, shouldn't be there, but I'm open

7    to your advice on that subject.

8            MR. ZUMBRO:  I think the idea here -- this is the

9    thing that, sort of, we can't -- the debtors are not permitted

10   to go after the DIP lenders in their capacities, such that I

11   think we were talking about -- in other words, just because

12   money is fungible, the DIP collateral does encompass the

13   debtor's cash, and so I think that's all.  In line number 22,

14   where it says none of the DIP facilities, the DIP collateral,

15   the DIP loans, I think that was just belt and suspenders.  The

16   money, whether we've borrowed it or whether it's on our balance

17   sheet and it just otherwise constitutes DIP collateral, can't

18   be used to investigate the DIP lenders.

19           THE COURT:  So you think the word "funds" sweeps in

20   all cash or equivalents that is therefore treated as though it

21   fits the defined terms of DIP collateral, DIP loans, et cetera?

22           MR. ZUMBRO:  I think it's probably belt and

23   suspenders, because I think it would probably be encompassed

24   within DIP collateral, in any event.

25           THE COURT:  Okay.  I'll accept that.  That's fine.  So

PG&E Corp And Pacific Gas And Electric Co

1    now you told me -- and you commented in response to Ms. Dumas

2    about the DIP lenders are only protected here in their capacity

3    as DIP lenders, so let's look at page 18, lines 4 through 6.

4    Let's see if I got that right.  It says, yeah, it says there

5    can't be any other claims of liens by or on behalf of any of

6    the DIP agents or the DIP lenders in each case in their

7    capacities as such.  So --

8              MR. ZUMBRO:  Correct.

9              THE COURT:  -- your advice to me is that that means,

10   therefore, if bank X, who is a DIP participant, also is a pre-

11   petition loan lender, you know, in another facility, then that

12   latter is not encompassed within this phrase?

13             MR. ZUMBRO:  Yes, sir.  That's our understanding

14   that's the intent.

15             THE COURT:  And so Ms. Dumas, you made that comment.

16   It seemed to me that seemed right to me.  But going down a few

17   lines to lines 15 and 16, the DIP lenders do not want causes of

18   action under Chapter 5 --

19             MR. ZUMBRO:  Um-hum.

20             THE COURT:  -- to be used for their collateral.  But

21   then you -- paragraph B, at line 15, says, or any so-called

22   lender-liability claims or causes of action.  Well, I mean,

23   what if there's a lender-liability claim against lender A, pre-

24   petition?  That's -- they're free to deal with that, aren't

25   they?

PG&E Corp And Pacific Gas And Electric Co

1    MR. ZUMBRO:  I thought, yeah, so I thought that was

2   still encompassed, but yet, as these orders often are, it's a

3   little dense, but --

4    THE COURT:  Um-hum.

5    MR. ZUMBRO:  -- it's a -- the paragraph, the big B

6   you're looking at, any so-called lender liability --

7    THE COURT:  Yeah.  Correct.

8    MR. ZUMBRO:  -- is a sub-set of clause little c, which

9   begins on line 6, right after in each case or their capacity as

10  such, so --

11    THE COURT:  I'll tell you -- all right.

12    MR. ZUMBRO:  -- clause c says you can't investigate,

13  blah, blah, blah, and then on line 10, that all relates to the

14  DIP-secured parties.

15    THE COURT:  Okay, yeah.  I see what you're pointing

16  out, yeah, it's a little --

17    MR. ZUMBRO:  And so --

18    THE COURT:  It is a little dense.  I'll accept your --

19    MR. ZUMBRO:  Yeah.

20    THE COURT:  -- explanation.  So -- all right, now,

21  you've already told me that nobody's going to do anything with

22  the carve-out.  You heard one counsel suggest we should do away

23  with all the carve-outs.  I don't imagine you're advocating

24  that, right?

25    MR. ZUMBRO:  I would prefer not to take that approach,

of 205   operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  yes.

2      THE COURT:  Just again, walk me through, in simple

3  terms, how the carve-out trigger notice works, because I've

4  read it, and I wanted to make sure I hear it from the horse's

5  mouth.

6      MR. ZUMBRO:  Sure.

7      THE COURT:  The carve-out trigger notice, a great

8  term, right?

9      MR. ZUMBRO:  It is a good term.

10      THE COURT:  Okay.

11      MR. ZUMBRO:  And then there's an even better one, the

12  post-carve-out trigger-notice cap --

13      THE COURT:  Yeah, terrific, yeah.

14      MR. ZUMBRO:  -- which is even longer, yeah.  The way

15  it works is that fees of state professionals --

16      THE COURT:  Um-hum.

17      MR. ZUMBRO:  -- in other words, the debtors --

18      THE COURT:  I know; that's you.

19      MR. ZUMBRO:  -- in this case the official committee of

20  unsecured creditors and the official tort committee.  Those

21  fees which are incurred are allowed as part of the carve-out

22  without a limit, until the carve-out --

23      THE COURT:  Until the notice.

24      MR. ZUMBRO:  -- notice has been filed.  And so if a

25  notice is filed where the DIP lenders say, okay, an event of

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    default or a termination event has occurred, we're notifying

2    you you're basically on the clock now.  And so from and

3    after --

4              THE COURT:  Well, are you on the clock, or are you --

5    the first twenty-five million are on us?

6              MR. ZUMBRO:  The -- well --

7              THE COURT:  Where does the twenty-five million apply?

8              MR. ZUMBRO:  No.  Anything that's accrued -- anything

9    that's occurred before the carve-out termination notice is not

10   subject to the twenty-five million-dollar cap.

11             THE COURT:  Right, right.

12             MR. ZUMBRO:  But once things from and after the

13   delivery and receipt of the carve-out trigger notice, that is

14   the limit on the amount of --

15             THE COURT:  So if you're minding your own business at

16   your office some day, and you get a carve-out trigger notice in

17   the mail --

18             MR. ZUMBRO:  Yeah.

19             THE COURT:  -- it means you and your colleagues better

20   not go over the next twenty-five million dollars?

21             MR. ZUMBRO:  Correct.  Me and my colleagues and Ms.

22   Dumas and her colleagues and the other gentleman from Milbank

23   and his colleagues.

24             THE COURT:  Right.  Right.  But the point is, so okay,

25   I -- that's the way I read it, and I just wanted to make sure I

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    was reading it consistently with what you're saying.  Okay.  So

2    now go over to paragraph 11.  This is for any subsequent

3    financing.  Why is there, and what is the authority to say that

4    if there's a subsequent financing, then proceeds from that

5    credit will be immediately turned over to the DIP agents for

6    them.  Why would that have to be?  Why is that a requirement?

7    This is new money.  So.

8         MR. ZUMBRO:  I think this relates back a little bit to

9    the colloquy we had earlier, which is, if you look at lines 14

10   and 15, it just, it says -- this is a bit of a belt and

11   suspenders, too.  This says, if we do something in violation of

12   the DIP credit agreement and the DIP orders, so in other words,

13   if we were to go out -- that 500 million dollars I referred to

14   earlier --

15        THE COURT:  Um-hum.  Right.

16        MR. ZUMBRO:  If we went out and actually, instead of

17   500 million dollars we incurred 700 million dollars, then this

18   says, if you've incurred debt that you're not permitted to

19   incur, you have to use the nonpermitted debt to repay the DIP

20   loans.  It just, it's a belt and suspenders.  It's kind of a

21   way to backstop that covenant, thou shalt not incur more than

22   500 million.  If you incur 800 million, you have to use the

23   proceeds to repay the DIP loan.

24        THE COURT:  Okay.  All right.  So now go to paragraph

25   14.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1      MR. ZUMBRO:  Um-hum.

2      THE COURT:  In 14 there we have a DIP-termination

3  event.  That's the kind of stuff we were talking about, and a

4  number of things happen in those little romanettes there.

5  There can be a declaration of a termination of any further

6  commitment, a declaration if DIP obligations are due,

7  termination of the DIP loan documents.  Number 4 is freeze

8  monies or balances in the debtor's accounts.  Why is that

9  necessary?  Why -- that -- I mean, if you can -- if twenty-five

10  million dollars can be paid under this post-DIP notice

11  provision that you just described, what's -- why is it

12  necessary to freeze the accounts on the moment that there's a

13  termination?  It seems like it's inconsistent.

14      MR. ZUMBRO:  Well, two things:  I guess you're right.

15  There's a lot of little romanettes.  The first several

16  romanettes you read, the, sort of, declaring their commitments

17  terminate --

18      THE COURT:  Yeah, I didn't have any problem with them.

19      MR. ZUMBRO:  But those all happened automatically.

20  It's once you start at clause 4, which you read, the freeze

21  accounts --

22      THE COURT:  Right.

23      MR. ZUMBRO:  It's only ones that we maintain with the

24  DIP lenders themselves.  I'm not sure that that's where we

25  maintain all of our accounts, but starting from romanette 4,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   that's where you really get into the exercise of remedies,

2   which is starting from clause 4 on.  Those, if you get down to

3   line 25, is prior to their exercise of any rights in clause 4

4   through 6.  So those are the actions that they'd have to wait

5   for the seven days, wait for the judicial determination that

6   there actually has been a termination event.

7        THE COURT:  But if you freeze the account, what does

8   that do to the twenty-five million-dollar post-carve-out

9   notice?

10       MR. ZUMBRO:  They can't -- well, they're two different

11  things, but they can't actually exercise this remedy until the

12  court has said there has been a termination event.  This is the

13  one where they -- even though it says that it's a proviso, it

14  says, but you can't actually do any of these things until the

15  remedies-notice period has expired.  But it is unrelated to the

16  twenty-five million-dollar carve-out.  But starting at clause

17  4, you can't freeze money, you can't otherwise enforce rights

18  or take any other actions until the seven-calendar-day

19  remedies-notice period has expired and this Court has actually

20  found that a termination event has occurred.

21       THE COURT:  In that one week to do it.  Including

22  weekends and holidays.  On paragraph 32 of the order, there --

23       MR. ZUMBRO:  Yes, sir?

24       THE COURT:  -- is a provision that -- excuse me one

25  second.  There's a limitation on liability; there's a

PG&E Corp And Pacific Gas And Electric Co

1    determination that in determining to make the loans pursuant to

2    this order, the DIP parties will not be deemed to be in control

3    of the operations of the loan parties.  Well, how do I know

4    that?  How can I make the determination of that?  Where's the

5    fact to support that?  In other words, you know, this seems

6    like it's a get-out-of-jail-free card.  That if I approve the

7    DIP financing, I'm approving that the DIP parties cannot be in

8    control or cannot be a responsible person.  But how can I make

9    that determination?  I mean, I probably believe it to be a true

10   statement, but there's no facts to support any such finding.

11   So how would I get around that?  I mean, I -- what I'm trying

12   to tell you is I don't know how I can approve a limitation of

13   liability provision that I don't know how it operates or how

14   the underlying facts are operative.

15          MR. ZUMBRO:  Yeah.  That one, I'm just trying to think

16   of whether that's really this Court.  I'm pausing just to think

17   whether that's really this Court making a finding or whether

18   it's just really more of a statement that, you know, that --

19          THE COURT:  Well --

20          MR. ZUMBRO:  -- it's almost going back to the passive

21   voice that they're not deemed to be determined.

22          THE COURT:  Well, if I'm signing this order, I am

23   determining that they are not in control of the loan parties.

24   You know, it's like Mr. Kruz, who said -- he said, the

25   background of the loan.  And I took his word for it and said I

PG&E Corp And Pacific Gas And Electric Co

1   would approve that finding.  So he provided a foundation for a

2   finding.  It's been my practice, and other judges, to require

3   factual bases for -- particularly in a 363(m) sale, but also in

4   364 financing, to make a requisite finding.  So I don't know

5   how I can do that.  I -- you can -- this is not a deal breaker,

6   I don't think.  And it's the end of my comments, so I'm going

7   to suggest that maybe we do need to take a break.

8          Well, let me make the following statement:  You've

9   heard -- and I'm addressing this as much to your colleagues

10  from the DIP side and the unsecured creditors committee.

11  You've heard Mr. Dumas's comments; you've heard my comments.  I

12  have some hesitation about giving up the absolute kind of

13  control -- and I'm not comforted with this notion that I could

14  just throw in a temporary restraining order, free of charge.

15  And I'd be -- I'm more inclined to insist that there be some

16  sort of control by way of the relief from stay method.  I don't

17  want Mr. Hansen to reargue the case; I want to just share the

18  problem and ask, and suggest that maybe there ought to be a

19  short recess, or maybe I ought to continue this aspect of the

20  hearing for a few days, or something, for people to reflect on

21  it.  And see what the creditors committee says, see what the

22  tort committee says, see what the DIP lenders says.  Maybe

23  there's a solution that doesn't require, you know, a summit

24  conference with 50 DIP lenders.  So I want some guidance from

25  you as to what you think would be the right thing to do at this

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   point.  Because I'm not comfortable just announcing I'm going

2   to approve it at this point.  I'm not announcing that I won't;

3   I just want a further discussion on the subject.

4         MR. ZUMBRO:  Well, I think I should take the Court's

5   invitation and have a discussion with Mr. Hansen, and we

6   should -- I would prefer not to continue the hearing.  I think

7   it's important that we get this aspect of the case behind us.

8         THE COURT:  Well, what if we took a break for an

9   hour --

10        MR. ZUMBRO:  Okay.

11        THE COURT:  -- or for an hour and a half, or maybe,

12  you know, 1 o'clock, and then either I hear what you and the

13  other counsel have to say or I go to the other motion and hear

14  that and then hear what people have to say.  I mean, I haven't

15  made up my mind that I'm going to disapprove it or I'm going to

16  approve it.  Obviously, a lot to think about here.

17        MR. ZUMBRO:  Understood.

18        THE COURT:  Will that work?

19        MR. ZUMBRO:  I think that's a --

20        THE COURT:  Mr. Hansen, is that all right with you?

21        MR. HANSEN:  I just wanted to make one --

22        THE COURT:  Yes, sir.

23        MR. HANSEN:  -- point, Your Honor.  I just -- this

24  isn't a hallway conversation with JPM.  There are fifty

25  syndicate lenders, and it, as I mentioned before, it changes

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    the risk.  And so we have to go back to them and find out

2    whether or not they're prepared to continue to lend, and at

3    these prices, and whether they will stay in the loan.  That's

4    unfortunately not going to be a today issue, so.

5            THE COURT:  Well, but there is a few weeks left to go

6    on the time

7            MR. HANSEN:  There is.

8            THE COURT:  So I mean, I --

9            MR. HANSEN:  Absolutely.  There is.  You have until

10   April 15th.

11           MR. ZUMBRO:  April 15th.

12           THE COURT:  Oh, I could --

13           MR. HANSEN:  So we recognize that.  I just wanted to

14   make sure the Court -- I didn't -- I -- from an expectation

15   standpoint, I didn't want you to think we're going to go out in

16   the hallway and come back and, you know, say it was okay.

17           THE COURT:  I don't think that was likely to happen,

18   but you never know.  Because the -- well, but I also want the

19   creditors committee and the tort committee to be in the

20   colloquy --

21           MR. HANSEN:  Um-hum.

22           THE COURT:  -- in the discussion.  And you've heard

23   them.  I don't need to be in the discussion.  If at some

24   further date, whether it be at 1 o'clock today or 1 o'clock

25   next week or before the deadline, there's a resolution, fine.

PG&E Corp And Pacific Gas And Electric Co

1    If not, then I still have to make the decision.

2              MR. HANSEN:  Understood, Your Honor.

3              THE COURT:  Okay.

4              MR. HANSEN:  We understand.  I'd also just point out

5    one other thing, quickly.  Ms. Dumas said to you that the

6    requirement of law covenant was something that you needed to be

7    really worried about.  As long as the debtor complies with law,

8    there's nothing to worry about.  If the debtor is not complying

9    with law, which includes an order by a court, if they choose to

10   willingly not comply with that, that's a problem.  I don't

11   think any lender would --

12             THE COURT:  Yeah, I mean, look, I understood what she

13   was reading.  I don't know exactly what Judge Alsup's doing on

14   any particular day in the case before him, and it may be a

15   nonissue at this point in terms of triggering something like

16   that.  I've thought about all the things that I raised.  I got

17   very satisfactory explanations from you Mr. Zumbro on a number

18   of them.  And I'm down to a couple of deal points that are

19   concerning to me, and that's what I want to hear back on what

20   we should do about it.

21             MR. HANSEN:  Yeah.  I understand, Your Honor.  And the

22   lenders understand that you don't think that they are trying

23   to, like, take the assets of the company.  This is -- because

24   that -- there's somewhat of an implication around here that the

25   lenders are going to come sprinting into court, tell you you

PG&E Corp And Pacific Gas And Electric Co

1   have no authority, take the assets, and run out of here.

2   That's not happening.

3           THE COURT:  Oh, come on.  They'd love to do that.

4           MR. HANSEN:  And so -- and I know you know that, and I

5   know everyone here knows that.

6           MS. DUMAS:  Take them, please.

7           MR. HANSEN:  But I just needed to also reiterate the

8   point that it is not a hallway conversation.

9           THE COURT:  Got it.  All right.  Then for everyone

10  who's been sitting by for these last two and a half hours, I'm

11  going to convene -- or recess this matter until 1 o'clock.  Or,

12  I'll tell you what, just because there's so many people, we're

13  going to make it 1:15, and at 1:15, I'm going to take up the

14  public entity's motion, and then I've previously indicated to

15  counsel in that matter that I was going to allocate a total of

16  one hour.  And this DIP motion was obviously much more -- it's

17  not that the public entity's motion is not important, but it

18  doesn't anticipate, I don't anticipate as much time being spent

19  on it.  So my plan, then, at 1:15, will be to hear from the

20  moving parties and the opposing parties on that motion.  And

21  then I'll get a suggestion on where we go from here in terms of

22  the DIP motion.  Okay?

23          MR. ZUMBRO:  Thank you, Your Honor.

24          THE COURT:  Thank you, everyone.  We'll recess until

25  1:15.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          (Recess from 11:53 p.m., until 1:15 p.m.)

2              THE CLERK:  All rise.

3              THE COURT:  And again.  Please be seated.  Ready for

4     the public entity's motion.  Mr. Esserman, are you up on that

5     first?

6              MR. ESSERMAN:  I think so.

7              THE COURT:  And I think we've set aside thirty minutes

8     per side, right?

9              MR. ESSERMAN:  Sure, and I'd like to take --

10             THE COURT:  And I'm going to try to keep track of all

11    the invitees this time.

12             MR. ESSERMAN:  Well, and I'd like to --

13             MS. KIM:  I'm sorry.  I'm sorry.  Can I just -- good

14    afternoon, Your Honor.  I think, actually, Mr. Zumbro may have

15    an update on the DIP motion that we might be able to at least

16    clear away something before we move on to the public entity's

17    committee motion.

18             THE COURT:  Mr. Zumbro, you don't want to wait until

19    your turn?  Come on.  What have you got for me?

20             MR. ZUMBRO:  Well, Your Honor, we spent the lunch

21    break productively, and I hope we have something.  We were just

22    conferring with Ms. Dumas in the hallway, just to make sure we

23    had also consulted with the tort claimants committee as well.

24    But what we were able to work out, which we hope addresses the

25    Court's concerns, was a bifurcated approach.  One, is on Your

PG&E Corp And Pacific Gas And Electric Co

1    Honor's concern about the seven days versus seven business days

2    for all termination events.  The bank is willing to agree to

3    seven business days for that general.  And then, more

4    importantly, for the concern that Your Honor had expressed

5    about the termination event relating to the appointment of a

6    Chapter 11 trustee, the banks are willing to give us, or

7    give -- have the order reflect twenty-one business days.  So a

8    significant lengthening of the time for the one specific

9    termination event that I think would cause the most concern

10   from the Court's perspective.

11           The debtors think that that's sufficient time.

12   Twenty-one business days, you know, would be enough time to

13   figure it out in the circumstances, either by the Trustee, in

14   that circumstance, discussing further with the DIP lenders, or

15   perhaps refinancing the DIP loan with a new DIP loan, if need

16   be.  But we thought a twenty-one day -- excuse me -- twenty-one

17   business days for a Chapter 11 trustee termination event was a

18   significant accommodation on the part of the banks.  They were

19   also willing to address Ms. Dumas's concern about paragraph 35

20   to clarify that the debtors will not only seek but will seek

21   and obtain the CPUC's authority for any transfer of utility

22   assets.

23           And finally, I don't have the document in front of me,

24   Your Honor, but the Court's concern about the CIRCLA, or the

25   environmental finding, the bank was fine clarifying that that's

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net
128 of 205

PG&E Corp And Pacific Gas And Electric Co

1  not a forward-looking finding.  We're not asking you to make a

2  finding today that the banks are not control persons with

3  respect to these entities, but only that entering into the loan

4  documents, things that have actually happened today, there's

5  nothing that would indicate that the Court could make a finding

6  that they are not in control of these debtors today, but

7  nothing forward looking.  And hopefully, that would satisfy

8  Your Honor's concern.

9        THE COURT:  So let's go back to the termination event.

10       MR. ZUMBRO:  Sure.

11       THE COURT:  Let's say a court appoints a Chapter 11

12  trustee, what happens after twenty-one business days?

13       MR. ZUMBRO:  Well, under -- after twenty-one business

14  days, the stay would be lifted and the lenders would be able to

15  seek to enforce remedies, subject to CPUC's approval.

16       THE COURT:  But presumably the Trustee or other

17  parties-in-interest could seek injunctive relief?  Or not?  I

18  just need to clarify what then happens.

19       MR. ZUMBRO:  There would be no proposal to change the

20  burden on stay relief; it was just to change the termination,

21  the time period.

22       THE COURT:  Ms. Dumas, what's your response, if you've

23  had a chance to talk to your clients?

24       MS. DUMAS:  I have not, Your Honor.  We just met

25  moments ago, and the Court convened the hearing just now.  I'm

PG&E Corp And Pacific Gas And Electric Co

1  happy to do whatever we can to communicate with the clients.

2  It is a committee, however.

3         THE COURT:  What would you like to do?  Would you like

4  to try to do something today or to have a further hearing?

5         MS. DUMAS:  The --

6         THE COURT:  I mean, I've heard some concessions, but

7  you need to tell me what you think about them.  But if it needs

8  a further hearing, we'll do a further hearing.

9         MS. DUMAS:  The lenders would very much like to have

10  this resolved today.  The debtor, for very sound reasons, would

11  like to have this resolved today.  I don't know that I could

12  get my committee's consent to these conditions or to not think

13  of other added conditions that might require negotiation today.

14  I don't think it's realistic, but I do understand and respect

15  their desire --

16         THE COURT:  Well, it's progress.

17         MS. DUMAS:  -- to have this resolved today.

18         THE COURT:  It's progress.  I'm not faulting anybody.

19  Mr. Zumbro, how difficult would it be just to kick this over to

20  our next calendar, which is the 26th?  Or, if necessary, set it

21  specially, but again, I feel uncomfortable with so many people

22  being -- particular traveling such distances, but that seems to

23  fit within the time limit -- time period.

24         MR. ZUMBRO:  It's not a calendar concern that I have,

25  Your Honor, it's more of an exposure.  I don't -- you heard Mr.

PG&E Corp And Pacific Gas And Electric Co

1    Hansen, you know, mention that there's potential repricing risk

2    here.  I really don't want --

3              THE COURT:  I understand.

4              MR. ZUMBRO:  -- to expose this debtor.  We've paid

5    significant financing fees; we think we have a very good DIP

6    facility in hand.  We think it's very important to move

7    forward, so I -- with all respect, I think I'd like to get this

8    resolve today.  I just think there's too much of a risk of if

9    the lenders have more time to think about it, maybe they're

10   less inclined to give what they've offered up today.

11             THE COURT:  Well, they're not going to back down from

12   their position, are they?

13             MR. ZUMBRO:  They may not, but they may couple with

14   some kind of a --

15             THE COURT:  Well, that wouldn't be very good for them.

16             MR. ZUMBRO:  -- a repricing or other economic adverse

17   consequences for these debtors.  It think it's important to put

18   this DIP facility behind these debtors' estates and move

19   forward to the other reorganization aspects of this case.

20             THE COURT:  What's the regular committee -- where's

21   creditor's counsel?  Yeah?  What's your take on that?  You were

22   sort of interest in some resolution that work

23             MR. KRELLER:  Your Honor, Thomas Kreller.

24             THE COURT:  Yes, Mr. Kreller.

25             MR. KRELLER:  Thomas Kreller, of Milbank, on behalf of

PG&E Corp And Pacific Gas And Electric Co

1  the official unsecured creditors committee.  Your Honor, it is

2  an improvement.  It's concessions from the lenders.  We were

3  supportive before; we continue to be supportive.  I like the

4  structure.  I do think it addresses a couple of the concerns

5  that you raised that, frankly, we shared and gives a little bit

6  more room in those scenarios.

7          THE COURT:  Well, but I'm going to assume something,

8  Mr. Kreller.  I mean, I'm tired -- ask you to make a speech or

9  just to be heard and then I'm trying to talk.

10          I don't think that the lenders would have the bad

11  judgment to make this proposal and then take it off the table

12  within an hour from now.  So I could do a little bit of both.

13          I could continue this to the next date, but ask Ms.

14  Dumas if she and her clients can indicate an acceptance before

15  then.  And if she does, then chances are, I will, and we don't

16  even have to have a hearing.

17          But if she says no, and if there's any opportunity to

18  tweak it further among the parties, fine.  If not, then at the

19  continued hearing, I make a ruling, up or down.  And if it's

20  up, then it's a done deal.  And if it's down, then I don't have

21  an answer.  So I'm -- what's the down side to doing it that

22  way?

23          MR. KRELLER:  Well, Your Honor, I don't know that

24  there is a down side.  Any improvements that work to the

25  benefit of the estate are something that we would support.  I

PG&E Corp And Pacific Gas And Electric Co

1   do -- there certainly is an element of what Mr. Zumbro has

2   said, which we share, which is getting to a final order on the

3   DIP and moving past this --

4           THE COURT:  Right.  Right.

5           MR. KRELLER:  -- stage of things.  I think there is

6   value to that.  But --

7           THE COURT:  Well, but the fact is --

8           MR. KRELLER:  But --

9           THE COURT:  -- as we all agreed, that if I had called

10  in sick today, there's no drop-dead yet.  It's April something,

11  right?

12          MR. KRELLER:  Understood, Your Honor.

13          THE COURT:  Okay.

14          MR. KRELLER:  I think that's the right way to think

15  about it.

16          THE COURT:  Ms. Dumas, is there any reason why you

17  couldn't have a reasoned time, a period of time, to confer with

18  your entire committee, if necessary, talk to the creditors'

19  committee, if necessary, talk to debtor or DIP counsel.  And if

20  there is some further fine tuning that the parties can agree

21  to, then that's easy.

22          And if you indicate an acceptance of a resolution, I

23  am pretty sure that I won't second guess your call on that

24  because I also heard some concessions here.  And I don't know

25  exactly what would happen if the twenty-one days run, but I

PG&E Corp And Pacific Gas And Electric Co

1  know twenty-one business days is a lot more than seven real

2  days.  So that would give you an opportunity to talk to your

3  client and to do what you want to do and if necessary, have a

4  hearing in thirteen days.

5        MS. DUMAS:  There's no reason whatsoever why that

6  couldn't work.  My earlier comments would -- were just

7  dedicated to expressing the notion that I don't know that I

8  could get a committee meeting together today, this afternoon.

9        THE COURT:  Right.

10        MS. DUMAS:  I understand --

11        THE COURT:  Right.

12        MS. DUMAS:  -- the concern.  I don't think I could get

13  a quorum today, but certainly, what the Court has proposed is

14  acceptable to the tort claimants' committee.

15        THE COURT:  Well, let me make sure we're clear.  I

16  mean, we went through, during the oral argument, questions

17  about should there be a carve-out or should there not be.

18  We -- certainly the objections by other parties, the things

19  that were sort of extraneous to the DIP, I didn't give a

20  ruling, but I've -- certainly must have given an indication of

21  my thinking.

22        And I clearly sent the message that the seven calendar

23  days, but more importantly the consequences of something like a

24  Chapter 11 trustee, were dire, and I'm not worried that if the

25  banks agreed to this change, that there wouldn't be an

PG&E Corp And Pacific Gas And Electric Co

1    opportunity for some people to do what they had to do.

2            So what I'm really trying to say is if the tort

3    victims' committee accepts these terms and doesn't succeed in

4    getting any other concessions, but they accept these terms,

5    that's fine.  If they can persuade either the DIP folks and/or

6    the debtors to give further concessions, that's fine, too.  And

7    if there's simply no resolution, if your committee says no, we

8    don't agree to any of this, then I'll make a decision at a

9    continued hearing.

10           So Mr. Zumbro and the others, I do understand you'd

11   like some finality to it, but I can't ask a committee of tort

12   claimants, who therefore, except for their lawyer, are not

13   bankruptcy experienced professionals, to just have, on the fly,

14   make a decision like this.  They'll have to -- they have the

15   benefit of experienced counsel who can advise them.  And if we

16   can accommodate people's travel schedules and -- without

17   inconveniencing the entire DIP group -- but we can reach some

18   resolution, that's a good thing to do.

19           Mr. Karotkin, we have a couple of matters on the 26th

20   and a few more on the 27th.  So you seem to be the keeper of

21   the calendar.  27th?  Or 26th?  Or what?  What do you think?

22           MR. ZUMBRO:  Either day is fine.  I guess it is

23   important, Your Honor.  I just want to make it clear what we're

24   talking about.  I actually don't think it's really correct to

25   have the tort committee have a veto right over this, but --

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  They don't have a veto right.

2    MR. ZUMBRO:  Okay.

3    THE COURT:  They just have a right to be heard and

4    listened to at a --

5    MR. ZUMBRO:  Okay.

6    THE COURT:  You're not -- you're -- the -- they're --

7    the DIPs aren't taking it off the table, are they?

8    MR. ZUMBRO:  No, they're not --

9    THE COURT:  No.

10    MR. ZUMBRO:  -- taking off the table.

11    THE COURT:  Okay.

12    MR. ZUMBRO:  But what I'm concerned -- I just want to

13    make sure -- with respect, I don't want to open this up to more

14    issues that might be raised by Ms. Dumas.  I think we had a

15    constructive hearing today with Your Honor, and we sort of

16    narrowed it down to the core of what you're -- the Court was

17    really concerned about that.

18    THE COURT:  But you don't have to negotiate with her.

19    MR. ZUMBRO:  Okay.

20    THE COURT:  If she can ask the DIP lenders to make a

21    concession, you should be grateful.

22    MR. ZUMBRO:  Yeah.  No, I understand.

23    THE COURT:  Okay?

24    MR. ZUMBRO:  I just don't want to open this up because

25    I think we have made a lot of progress in narrowing the scope.

escribers
(973) 406-2395  operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          THE COURT:  All that you need to do is be polite and

2    say no.

3          MR. ZUMBRO:  Okay.

4          THE COURT:  But they can't be polite and say no and we

5    take back what we offered --

6          MR. ZUMBRO:  I understand.

7          THE COURT:  -- in the afternoon.  Okay?

8          MR. ZUMBRO:  I understand, Your Honor.  But I just

9    wanted to make it clear that there is no implication from the

10   Court's findings that the tort committee had a veto right.  But

11   you just told me that I misunderstood you, so that's -- that

12   makes me feel better.

13         THE COURT:  Well, I hope you misunderstood me.  I'm

14   supposed to be making the decisions --

15         MR. ZUMBRO:  I understand.

16         THE COURT:  -- and listening to the arguments.  And

17   didn't I say I would make a decision, I hadn't made up my mind?

18         MR. ZUMBRO:  Yeah.

19         THE COURT:  I haven't made up my mind.

20         MR. ZUMBRO:  I understand.

21         THE COURT:  But I try to do a little consensus

22   building.

23         MR. ZUMBRO:  Yep.  But we would like it just to be

24   clear that the scope of whatever's heard in front of you on the

25   26th is limited to the issues that we've just now narrowed it

of 205
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    down to.

2          THE COURT:  Mr. Zumbro, if Ms. Dumas or anybody else

3    can persuade them, you're -- the lender group to add fifteen

4    new concessions, that's fine.

5          MR. ZUMBRO:  The scope of dispute, I think.

6          THE COURT:  Okay?

7          MR. ZUMBRO:  Yes.  Okay.

8          THE COURT:  They can do whatever they want.  It's a

9    free country.

10         MR. ZUMBRO:  Yeah.

11         THE COURT:  But what you've said is the position

12   that's been communicated is what it is, and I accept that.

13         MR. ZUMBRO:  Yes.

14         THE COURT:  And she has to accept that.  And so it's

15   another way of saying if -- and I don't want to be in the --

16   you know, interfere with good faith negotiations, but if at the

17   next hearing, I'm told by you or DIP's counsel or anyone else

18   saying there was no further resolution, then fine.  I'm not

19   going to have -- there are no good guys and bad guys.  I'll

20   make a decision.

21         MR. ZUMBRO:  Understood.  Thank you, Your Honor.

22         THE COURT:  Mr. Hansen, did you want to add something?

23         MR. HANSEN:  I just wanted to clarify, Your Honor.

24         THE COURT:  Yeah.

25         MR. HANSEN:  Kris Hansen with Stroock on behalf of --

PG&E Corp And Pacific Gas And Electric Co

1        THE COURT:  Sure.

2        MR. HANSEN:  -- JPMorgan Chase as administrative agent

3 for the DIP loan.  I just want to clarify that, from a record

4 perspective, there's no supplemental briefing.  There aren't

5 new issues that are going to be raised in the context of the

6 DIP so that when we arrive on the 27th, you know, we find that

7 people --

8        THE COURT:  No.  No.

9        MR. HANSEN:  -- took another shot from a briefing

10 perspective, and now we're --

11        THE COURT:  I'm not inviting more briefing.

12        MR. HANSEN:  Right.

13        THE COURT:  But to collapse it to a hallway

14 conference -- I'm not opposed to counsel going out in the hall

15 and cutting a deal, either.

16        MR. HANSEN:  Oh, absolutely.

17        THE COURT:  And --

18        MR. HANSEN:  But from the lenders --

19        THE COURT:  -- if the counsel have to do it by long

20 distance telephone over days, that's fine, too.

21        MR. HANSEN:  No, we understand that.  I --

22        THE COURT:  No, the evidentiary record or the --

23 whatever -- the oral argument record is closed.

24        MR. ZUMBRO:  Okay.

25        MR. HANSEN:  Right.

(972) 494-5105  operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  And I mean, that being said, if there's no

2    agreement by the committee, I probably will listen to some more

3    argument, but I won't --

4    MR. HANSEN:  Uh-huh.

5    THE COURT:  -- reinvent the wheel here.

6    MR. HANSEN:  No, I understand, Your Honor.  It's --

7    and obviously the issue with -- we did as much as we could

8    without having to go and solicit our syndicate.  So that's

9    where we came back.  And that was --

10    THE COURT:  Oh, come on, Mr. Hansen.  What if I told

11    you I wanted twenty-four days?

12    MR. HANSEN:  No, Your Honor.  I think what the point

13    is if we're talking about -- this seems to be -- your question

14    was what happens at the end of the twenty-one business days.

15    And the answer is the same thing that would have happened at

16    the end of the seven days before we moved it to seven business

17    days.  And really what this is is an opportunity for a Chapter

18    11 trustee to transition itself from a financing perspective

19    and work out a deal, either with --

20    THE COURT:  Uh-huh.  No.

21    MR. HANSEN:  -- this incumbent lender group --

22    THE COURT:  And that's fine.

23    MR. HANSEN:  -- or someone else.

24    THE COURT:  And I promise you I can joke with you, but

25    I'm not going to come back on the next time around and say, you

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   know, I really think it should be twenty-four days.  That -- I

2   wouldn't do that.  But that being said, I'm not going to

3   disapprove any improvement that either of the committees --

4   even if the regular committee choses (sic) not to negotiate

5   further to this point.  Maybe they will choose to negotiate

6   tomorrow or the next day.

7          So again, we'll go back -- so I take it, Mr. Hansen,

8   you and Mr. Zumbro would have preferred that the matter be

9   resolved today?  I'm declining that offer.  I'm inviting Ms.

10  Dumas to talk to her entire committee and communicate with you

11  and debtors' counsel.  And if there is a -- an agreement among

12  the principals, I am not going to second guess and second guess

13  some more.  I went through the drill myself.  I didn't formally

14  say I disapprove this or that or the other thing.  But clearly

15  the colloquy was at the point where I was concerned primarily.

16  And if the tort committee is unwilling to agree to that, then

17  I'll make a decision.

18          MR. HANSEN:  No, I understand, Your Honor.

19          THE COURT:  Okay.

20          MR. HANSEN:  We just -- I understand.

21          THE COURT:  Okay.

22          MR. HANSEN:  It's a difficult position for the debtors

23  to have a DIP that may or may not be approved over the next

24  couple of weeks --

25          THE COURT:  It is.

PG&E Corp And Pacific Gas And Electric Co

1    MR. HANSEN:  -- over a single issue, but that's --

2    THE COURT:  I agree.

3    MR. HANSEN:  -- where we find ourselves.  I

4    understand.

5    THE COURT:  I agree.  And -- but just like anything

6    else, they're grownup people.  They're -- they've done this

7    before.

8    MR. HANSEN:  They do.  Okay.  Thank you, Your Honor.

9    THE COURT:  Okay.  Thanks very much.

10    MR. ZUMBRO:  Just, before you move on, sir, I was told

11    by Mr. Karotkin the 27th would be better than the 26th, if we

12    could put -- if we could calendar for the 27th, that that would

13    work.

14    THE COURT:  Okay.  So again, go back to you Mr.

15    Karotkin.  You tell me, what's best to manage with your staff?

16    Do you want me to lump everything at 1:30 -- I mean at 9:30

17    like I've done?  Or shall I try to parcel these out because you

18    might get --

19    MR. KAROTKIN:  Right.

20    THE COURT:  -- half of them resolved.  So is it

21    best --

22    MR. KAROTKIN:  I think that if we put it on for the

23    27th first thing.

24    THE COURT:  At 9:30.

25    MR. KAROTKIN:  At 9:30.  I think that hopefully they

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  won't take very much time.

2  THE COURT:  Then for the record for everyone in court,

3  every tracking on the phone, the motion -- what we're

4  conveniently calling the DIP motion -- is being continued to

5  March 27th at 9:30 Pacific Daylight Time here in this

6  courtroom.

7  And if the tort committee reaches a position where it

8  accepts what has been proposed by the DIP lenders and the

9  debtor, by way of a compromise that was stated on the record a

10  few minutes ago, I will not separately require a further

11  hearing.  I will approve an order that is consistent with

12  whatever the tort committee and the other representatives

13  reach.

14  If they do not reach such agreement, we will have a

15  hearing and I will make a decision either to grant or deny the

16  DIP motion as modified.  Okay?

17  MR. KAROTKIN:  Thank you, Your Honor.

18  THE COURT:  Everybody clear?  I don't want anyone to

19  leave here unclear on what the deal is.

20  Ms. Dumas, you're okay with that?

21  MS. DUMAS:  Yes, sir.

22  THE COURT:  Good luck.  Good luck to both sides.

23  Okay.  Mr. Esserman, you're back on duty.

24  MR. ESSERMAN:  Great.  Thank you, Your Honor.  I'd

25  like to reserve a little bit of time for --

PG&E Corp And Pacific Gas And Electric Co

1      THE COURT:  Yes, sir.

2      MR. ESSERMAN:  -- rebuttal.  I'm not so sure how long

3  I'll go for.  Hopefully, less than twenty-five.

4      THE COURT:  Well, I think we know the issues.  Both

5  sides have briefed it.

6      MR. ESSERMAN:  Exactly.

7      THE COURT:  I know what's --

8      MR. ESSERMAN:  Just for the record, Sander Esserman of

9  Stutzman, Bromberg, Esserman & Plifka firm on behalf of the

10  public entities that I previously identified.  Who I did not

11  identify, because she was in the media room, was Petra

12  Bruggisser who's at Sonoma County Counsel's Office, the

13  representative sitting in the first row --

14      THE COURT:  Thank you.  Good afternoon.

15      MR. ESSERMAN:  -- next to me.  So she's here.

16      I'd like to start off by reading from the February 20,

17  2019, letter to me from the Department of Justice.  Obviously,

18  we've got a couple of issues here.

19      THE COURT:  From the U.S. Trustee Department?

20      MR. ESSERMAN:  U.S. Trustee, yes.

21      THE COURT:  Okay.

22      MR. ESSERMAN:  From Andrew Vera (ph.).  We've got one

23  issue is, whether or not a public entities committee could even

24  be formed at all.  Is whether they have the power to appoint a

25  public entity to a creditors committee.  And the other is,

(970) 239-0132  operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    whether or not to, in fact, have a creditors committee ordered

2    to be formed in this case.

3         I think the first issue is kind of a gaining issue.

4    And it was really the issue that was focused more by the U.S.

5    Trustee.  The other issue was focused on by the objectors.

6    Basically felt that there was no need for such a committee.

7         But I'd like to start first with what I'll call the

8    gating issue.  That is whether or not the statute provides for

9    a creditors committee to be -- let me start over.  Whether or

10   not a public entity municipality can be appointed as a member

11   of the creditors committee.

12        Reading from that letter of February 20 --

13        THE COURT:  Well, not a member of the committee, but

14   as a committee.

15        MR. ESSERMAN:  As a committee or a member of a

16   committee.

17        THE COURT:  Well, I guess that's true.  It's either

18   way.

19        MR. ESSERMAN:  Yes.  I mean, it --

20        THE COURT:  Well, you know what, this -- but I think

21   1102 doesn't break it down per member.  It talks about a

22   committee and persons.  You know those are the -- key words.

23   You know what the key words are.

24        MR. ESSERMAN:  Yes.

25        THE COURT:  And we're on 101-39.  Those are the key

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    issues.

2           MR. ESSERMAN:  That's correct.  And to get back to the

3    letter, it says, "Although we do not reject or contest the

4    reasons you set forth in favor of the appointment of a public

5    entities committee, we've concluded the appointment of such a

6    committee would be outside the United States Trustees statutory

7    authority.  Specifically, the public entity noted in your

8    letter are not eligible to serve on a committee under the

9    definition of persons found in 11USC101-41."

10          THE COURT:  One of the things that I found kind of

11   hard to straighten out is the U.S. Trustee saying it's not

12   within their statutory authority.  Is it within the Court's

13   authority?

14          MR. ESSERMAN:  Well --

15          THE COURT:  I mean, isn't that the same question?

16          MR. ESSERMAN:  It --

17          THE COURT:  Do I have the discretion to do it --

18          MR. ESSERMAN:  I think I --

19          THE COURT:  -- if you want me to?

20          MR. ESSERMAN:  I think under 1102 you do.  But even

21   more interesting, I think, is that the U.S. Trustee also does.

22   I think you do and the U.S. Trustee does.  And what's

23   interesting is, yesterday or the day before, I got a call from

24   a public entity that is not represented by my crew.  And he

25   said, it's very interesting that the U.S. Trustee is taking

(973)992-7189 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  this position because they have appointed public entities

2  before.  And that is the U.S. Trustee of this district.  And I

3  said, oh, that's interesting.  I said, what case was that?  He

4  said, PG&E.

5          Evidentially -- and I pulled the petition --

6          THE COURT:  You only have one committee on that case.

7  And I dis --

8          MR. ESSERMAN:  There was only one committee.

9          THE COURT:  And I disbanded the other committee.

10         MR. ESSERMAN:  Correct.  There was only one committee

11  and the City of Palo Alto was on that creditors committee.

12         THE COURT:  But again, it's the member that's

13  distinguished from the committee itself.  You're right.  City

14  of Palo Alto was on that committee.

15         MR. ESSERMAN:  Yes, as well as the State of Tennessee.

16         THE COURT:  Well, I didn't remember that.

17         MR. ESSERMAN:  Yeah.  So there were public entities

18  actually appointed by the U.S. Trustee and their committee.

19  And of course, you've had other cases in which public entities

20  have been appointed to a committee.

21         So the question then becomes, if a public entity, in

22  fact, has been appointed by the U.S. Trustee and can serve, can

23  this Court under 1102 order such?  And once again, on request

24  of a party in interest, the court may order the appointment of

25  additional committees or creditors or of equity security

operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corp And Pacific Gas And Electric Co

1   holders if necessary to secure adequate representative of

2   creditors or of equity security holders.

3           Well, public entity are creditors.  They may not be

4   persons, but they are --

5           THE COURT:  Yeah, but -- hold it.  You can't read

6   1102(a)(2) without also reading 1102(b)(1) because (b)(1) says

7   a committee ordinarily consists of persons.  Now you want to

8   focus on the word ordinarily --

9           MR. ESSERMAN:  Correct.

10          THE COURT:  -- and read it out of the statute.

11          MR. ESSERMAN:  No.

12          THE COURT:  But -- well --

13          MR. ESSERMAN:  I want to read it in the statute.

14          THE COURT:  Well, okay.  But you agree that your

15  clients are not persons as the statute views?

16          MR. ESSERMAN:  That's correct.

17          THE COURT:  Leave aside what the U.S. Trustee thinks

18  they can or can't do.  It falls in my court now.

19          MR. ESSERMAN:  Right.

20          THE COURT:  I have to decide, do I have the statutory

21  authority to appoint a public entity as a member of a

22  committee?  Not appointed -- I'm sorry -- to appoint a

23  committee of public -- of members -- excuse me -- public

24  entities.

25          MR. ESSERMAN:  That's right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1        THE COURT:  There we go.

2        MR. ESSERMAN:  And I think ordinarily is the key focus

3    of the statute.  In this case, I'm not going to go into why

4    this is not ordinary because this case is extraordinary.

5        THE COURT:  We can all agree, it's extraordinary.

6        MR. ESSERMAN:  For many, many different reasons.  So I

7    think ordinarily you would not appoint a public entity to a

8    creditors committee.

9        But in this case, I think this is one of the most

10   unusual cases ever.  It's the sixth largest bankruptcy ever.

11   It's a case in which the public entity are uniquely affected

12   moreso than I think almost any case.  And I don't want to put

13   them above any creditor, but they're very, very significant

14   issues, which I think we all sort of know about:  the

15   destruction of a town of 26,000 --

16       THE COURT:  Of course.

17       MR. ESSERMAN:  -- a change in the culture of something

18   like the town of Paradise or in the counties or in the other.

19   And the focus of the effect and the devastating effect of the

20   PG&E wildfires in this particular case on the cities and

21   counties and special districts is so unique and so

22   extraordinary that I think it calls for a special recognition.

23       And the interesting thing is -- and this is also in

24   the motion -- is that the State Courts of California that

25   appointed representatives for the public entities --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  Oh, I know that.

2    MR. ESSERMAN:  I know they're not dealing with the

3  statute.

4    THE COURT:  Oh, I know that.  I know.

5    MR. ESSERMAN:  But those public entities have also

6  participated in some negotiations with this debtor.

7    THE COURT:  And they still can.

8    MR. ESSERMAN:  And they will.

9    THE COURT:  And 503(b)(3) is not going to be cut out

10  of the statute --

11    MR. ESSERMAN:  And I understand --

12    THE COURT:  -- or clocked out of the DIP agreement.

13    MR. ESSERMAN:  And I understand that.

14    THE COURT:  It'll be subordinate to the DIP agreement.

15    MR. ESSERMAN:  Yeah.  And I understand that that's an

16  option.

17    THE COURT:  Look, let's focus on me and not on the

18  U.S. Trustee.

19    MR. ESSERMAN:  Okay.

20    THE COURT:  I have to decide whether there's a

21  statutory basis to do it.  I am sympathetic.  I understand what

22  the creditors committee and the debtors said in their briefs,

23  but they didn't say anything about the legal analysis.  To me,

24  I have to buy your argument that, somehow, I can take the word

25  ordinarily and put in there "in extraordinary cases" and then

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    redefine the word person and do it in a way that's consistent

2    with the statute and intellectually honest.  And it has nothing

3    to do with emotions and feelings and the sympathies --

4            MR. ESSERMAN:  Of course.

5            THE COURT:  -- that I have on a personal level for

6    your client.  And it's an even tougher battle, as you can

7    imagine, since Congress changed the statute twice after that

8    and focused more specifically on who they're talking about as

9    persons.

10           So you want me to say that, in an extraordinary case,

11   I can direct a membership of a committee of people who the

12   statue says aren't persons.  And that's the possible thing to

13   do intellectually, I think.

14           MR. ESSERMAN:  Well, let me try and approach it a

15   little bit different.

16           THE COURT:  Okay.

17           MR. ESSERMAN:  Because that's how I look at it.  The

18   way I look at it is, the creditors to be appointed under the

19   section shall ordinarily -- I look at it in a positive -- so

20   ordinarily --

21           THE COURT:  Ordinarily what?  Ordinarily persons?

22           MR. ESSERMAN:  Ordinarily consists of persons.  I

23   think that that's accurate.  I do not --

24           THE COURT:  Okay.  But I'm agreeing with you in a

25   sense.  That's what the statute says.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1      MR. ESSERMAN:  Okay.

2      THE COURT:  So let's take extraordinary.  The

3 committee and creditors in an extraordinary case shall consist

4 of fill-in-the-blank.

5      MR. ESSERMAN:  Creditors.  Of creditors.

6      THE COURT:  Creditors.

7      MR. ESSERMAN:  But -- but Congress twice went back and

8 made exceptions to who they were including within the

9 definitions of persons as governmental entities.

10     I didn't do it.  You know they did it twice and for

11 reasons that have nothing to do with the legitimate arguments

12 that you're making.  And they did it to make governmental

13 entities who act like creditors to be treated like creditors.

14     You know, the SBA loan or the loan guarantees or the

15 defaulted financial thing.  But 41 does not include

16 governmental unit.  Period.

17     MR. ESSERMAN:  But in many cases, the things that you

18 just said are exactly what these public entities are.

19     THE COURT:  I know, but none of them fit this case.

20 As sad as it is -- or as good as it is, with all the horrible

21 things that though your clients have suffered, none of them

22 have lost loan guarantees or whatever these other --

23     MR. ESSERMAN:  No, they --

24     THE COURT:  -- beneficial owners of assets.

25     MR. ESSERMAN:  They've suffered devastating damages.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          THE COURT:  Correct.  I don't like what Congress made

2    the rules.  How do I avoid the rules that they made?  Plain

3    meaning.

4          MR. ESSERMAN:  Well --

5          THE COURT:  Give me a way to do it for you.

6          MR. ESSERMAN:  I think once again, ordinarily is

7    defined by Merriam-Webster as "in the ordinary course of

8    events."

9          THE COURT:  "Person" is what the change is here.

10          MR. ESSERMAN:  Except ordinarily doesn't modify

11    persons.  Ordinarily consists of the persons.

12          THE COURT:  Well, or it could be ordinarily persons

13    who hold seven largest claim.

14          MR. ESSERMAN:  Yeah.

15          THE COURT:  But they said -- I mean, if you -- if it

16    just said, creditors who are creditors who have seven largest

17    claim.  But because they talked about -- or the statute says

18    persons, and Congress twice told us more specifically, what

19    sub-class of entities are included within the definition.  And

20    then said what isn't included?  I mean, I think that's, as much

21    as anything else, when they amended 101, they said not only

22    what was included as person, but what is excluded.

23          So I can't even go to that exclusio unius -- or

24    whatever that Latin phrase is -- because it goes the other way

25    around.  Does not include governmental unit except?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1      MR. ESSERMAN:  Except in certaining.

2      THE COURT:  No, it doesn't say that.  It says, except.

3  So you want me to focus on the word ordinarily in person?

4      MR. ESSERMAN:  That's right.

5      THE COURT:  And I mean, that's an awkward sentence.  I

6  mean, why did they put in the willing to serve in there too?  I

7  think it's the 13th Amendment, you can make someone serve on a

8  committee who isn't willing to serve.  So Congress said, we're

9  going to have a committee of people willing to serve.  But we

10 move past that, and then it says -- and it's ordinarily going

11 to be the top seven.

12     But the alternative construction is that, well, what

13 if you don't have the top seven?  What if it's the next seven?

14 Can the U.S. Trustee or the court appoint creditors eight

15 through fourteen?  The answer is yes.  But ordinarily it's got

16 to be the top seven who are willing to serve.

17     Look, Mr. Esserman, I understand your point.  You just

18 got to persuade me that I can ignore the statute and the

19 language.  That's all so.

20     MR. ESSERMAN:  Well, I'm doing a bad job so far.

21     THE COURT:  No, you're not.  You're not.  You're not

22 doing a bad job.  It's just I have to be faithful to the

23 statute, you know?

24     MR. ESSERMAN:  No, and I agree with that.  And I think

25 you should be.  But I just think ordinarily is a much

PG&E Corp And Pacific Gas And Electric Co

1    broader -- can be interpreted to be much more broad and can

2    include ordinarily persons.

3            THE COURT:  Ordinarily consists of person, but in an

4    unordinary situation.  Or -- or -- go beyond --

5            MR. ESSERMAN:  No, it can include persons or

6    creditors.

7            THE COURT:  -- persons.  Non-persons.

8            MR. ESSERMAN:  It can be creditors.

9            THE COURT:  Well, but they divided the world into

10   persons and other.  Because person includes the traditional

11   individual partnership corporation which therefore means LPs

12   and LLCs and all those other guys.

13           And maybe they had completely unrelated reasons why

14   they didn't want governmental entities acting as creditors.

15   But then somebody came along, I think -- well, Lion Capital, of

16   course, they had most the people were public entities.  Right?

17   In Lion?

18           MR. ESSERMAN:  Yes.

19           THE COURT:  Well, most of the creditors were, so

20   they --

21           MR. ESSERMAN:  Yeah.

22           THE COURT:  -- had no option there.  But when you have

23   loan guarantees and governmental entities acting like

24   traditional creditors, you can see why these other folks are in

25   there.

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          Well, anyway, go ahead and make whatever additional

2    argument you want and reserve a few minutes if you want.

3          MR. ESSERMAN:  Sure.  You know, to me, this is where

4    the pivot of the issue is.  Because I don't think anyone

5    seriously doubts the different aspects of the creditor group of

6    the public entities.  The issues that are not just

7    reconstruction of damaged streets, roadways, pollution -- you

8    can go on -- schools, town, villages.  But also safety issues

9    which are very key --

10          THE COURT:  No, again, the litany is long and

11    persuasive.  The U.S. Trustee only differs with you on the

12    legal point.  The debtor and the other committee differ with

13    you on the discretionary.  Do you want to address that issue as

14    well?

15          MR. ESSERMAN:  Sure.  To me, the issue on the

16    discretionary issue is several fold.  One is, they focus on the

17    fact that the interest of the public entities are taken care of

18    by the unsecured creditors committee or the tort committee.

19          I think the focus of the public entities is completely

20    different from the tort committee or the unsecured creditors.

21    Once again, we're talking about the public entities being not-

22    for-profit people, not somebody it is looking to trade or a

23    financial aspect.  They're safety concerns as well as economic

24    concerns.  They're very concerned about their communities and

25    how to rebuild their communities.  That's a very different type

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    of analysis than a regular, unsecured creditor or even a tort

2    creditor -- an individual tort creditor who's concerned about a

3    recovery of their tort damage.

4         A city has a very, very broad-based view of how they

5    want to recover the city, the damaged goods.  They're not

6    interested necessarily in how a individual, in fact, goes about

7    recovering their damages.

8         And the cities and public entities don't have the time

9    to do that anyway.  They need to focus on the public entities.

10   We're talking about creditor groups that are -- have strained

11   resources.  Everybody knows that their tax bases are down.

12   They're very overwhelmed to --

13        THE COURT:  I know.

14        MR. ESSERMAN:  -- to try and fix this problem.  They

15   don't need to be either serving on another committee or

16   concerned with other issues.  They need to focus on strictly

17   their issues, which are very different and very unique than the

18   general creditor body.

19        So I don't think that there's any way that they feel

20   taken care of by the unsecured creditors committee or the tort

21   committee who is really focused on a much different type of

22   damage.

23        Safety is paramount for the public entities.  Recovery

24   of their claims is paramount also.  But it's a combination.

25   They're also very concerned about maintaining that safety.

PG&E Corp And Pacific Gas And Electric Co

1   They have a continuing interest in PG&E.  They don't have just

2   an economic interest in getting a claim paid and they're done

3   with it.

4           Their interest is very long lasting for the life of

5   the communities, life of the county and the lives of the

6   cities.  They're also very, very interested in getting this all

7   over with as fast as they can.  Now, I know that's probably a

8   common theme and no one's going to say they're not interested.

9           But the cities are under tremendous stress.  They're

10  under tremendous strain.  And the sooner this is over, the

11  better off they are.  So we think they're a unique entity.

12  They're different.  We think that they're eligible to serve.

13  We think that it would be beneficial that they serve.  And we

14  think you can read the statute to provide for a public entity

15  committee.

16          THE COURT:  And let me -- since I -- it was important

17  to me to make sure we're faithful to the statute, do you

18  believe the statute would permit, under 1102(a)(4), to let the

19  court direct the U.S. Trustee to change -- or to add

20  governmental units to an existing committee?

21          MR. ESSERMAN:  That --

22          THE COURT:  Because the word "person", I don't think

23  the word "person" in (b)(1), first of all it talks about

24  creditors who were appointed.  And then it talks -- that's

25  where persons are.  But I don't think the word "appointed" --

PG&E Corp And Pacific Gas And Electric Co

1    well, I beg your pardon.  The word "appointed" does -- well,

2    wait one second.  Let's try the next one.

3           Okay, the second sentence of 1102(a)(4) says the Court

4    may order the U.S. Trustee to increase the number of members of

5    a committee to -- well, that's to include a creditor of small

6    business.  That doesn't do it.  I'm looking to see if there is

7    a statutory construction that would allow a governmental entity

8    to get on a committee, even if it doesn't become a governmental

9    committee.

10          MR. ESSERMAN:  And I get where you're going --

11          THE COURT:  It may not be workable.

12          MR. ESSERMAN:  I'm not so sure that the public

13   entities, at least initially, would be interested in that,

14   regardless.  They don't want to be serving on a committee that

15   has duties that aren't strictly focused on the public entities.

16   They don't have the time to be involved in --

17          THE COURT:  No, no, I can understand that.

18          MR. ESSERMAN:  -- in certain things.  So they want to

19   focus -- that's why they want -- number one, want their own

20   committee and number two, why they don't particularly have any

21   interest in serving on a --

22          THE COURT:  Well, I think 1102(a)(2) doesn't give you

23   any wiggle room, because that is where a party -- the Court may

24   order the appointment of an additional committee.

25          MR. ESSERMAN:  Yes.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  And that's where you're sent back down to

2   (b)(1), where you get into the ordinarily consist.

3    MR. ESSERMAN:  That's right.

4    THE COURT:  And we can all agree, there's probably not

5   a person in the room that would disagree that the PG&E fires

6   and this bankruptcy is not ordinary.  But the question is, is

7   it a faithful interpretation of the statute to say "ordinarily"

8   refers to this, rather than the designees and that seven

9   largest, who are the ordinary ones?  And that's the one that

10  seems to be more consistent with the definitions.  But I -- the

11  U.S. Trustee isn't going to get ordered by me to appoint one of

12  your governmental units to the committee.

13    MR. ESSERMAN:  No.  And --

14    THE COURT:  You don't -- we don't want it anyway.

15    MR. ESSERMAN:  I was just going to say that.  It's --

16    THE COURT:  I got it.

17    MR. ESSERMAN:  It's not -- that would probably do more

18  harm than good.

19    THE COURT:  Okay.

20    MR. ESSERMAN:  All right.

21    THE COURT:  All right.  Well, let's hear from the

22  committees.  All right, Mr. Laffredi, are you going to speak up

23  on this one, too?  Are you agreed with debtors' counsel on how

24  to share this?

25    MR. LAFFREDI:  Your Honor, we had discussed this, that

PG&E Corp And Pacific Gas And Electric Co

1    debtors' counsel was going to go first, but I don't --

2            THE COURT:  Okay, well --

3            MR. KAROTKIN:  You can go.  If you want to go first --

4            MR. LAFFREDI:  Sure.  I can address the Court's

5    concerns with regard to the legal interpretation.  And the U.S.

6    Trustee is sympathetic and understands the importance that the

7    public entities play in this case, obviously.  But it really

8    does go down to an interpretation of the statute.  The statute

9    is explicit --

10           THE COURT:  Well, you laid it out very well in the

11   brief, a very nicely done brief.  I appreciate your analysis.

12           MR. LAFFREDI:  Well, thanks, Your Honor.  There's not

13   really much else to add, other than the U.S. Trustee's

14   interpretation of the use of the word "ordinarily" would be

15   that it modifies not persons, but the seven largest claims,

16   because the whole point is to ensure adequate representation.

17   And sometimes the seven largest do not -- does not cooperate.

18           THE COURT:  Well, of course.  Right, they're not

19   willing to serve.

20           MR. LAFFREDI:  Or willing to serve, exactly right.  I

21   will --

22           THE COURT:  If we appointed a committee that was

23   willing -- unwilling to serve, then you --

24           MR. LAFFREDI:  Well, that's the solicitation process.

25   You get some who say they are not willing to serve, so they may

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1   not be considered.

2          THE COURT:  Yeah, right.

3          MR. LAFFREDI:  And with regard to the Court's comments

4   on Congress speaking to this several times, it has -- it's

5   spoken to this exact issue three times.  First, when it enacted

6   the statute in '78.

7          THE COURT:  Well, when it created the statute.

8          MR. LAFFREDI:  Then, in 1984, 1994, when it amended.

9   And it could have added that municipalities were included.  It

10  could have also not explicitly excluded them.  But --

11         THE COURT:  Yeah, it's that extra excluding that sort

12  of is the kiss of death, isn't it, or this theory, as you and I

13  both seem to be sympathetic.

14         MR. LAFFREDI:  Exactly.

15         THE COURT:  You know, I am and you said you are.  So I

16  don't --

17         MR. LAFFREDI:  Unfortunately, the statute is very

18  clear, we think.  And public entities are not able to serve.

19         THE COURT:  Yeah, it's that "does not include".  Yeah,

20  I mean think about it.  The statute -- the Congress could've

21  said the term "person" includes a governmental unit that

22  acquires an asset from a person, et cetera, et cetera, be ABC,

23  but they -- the Congress added this extra including and

24  excluding.

25         MR. LAFFREDI:  Exactly.  Or Congress could have

PG&E Corp And Pacific Gas And Electric Co

1  changed 1102 and removed the word "persons" and changed -- and

2  just left it as --

3          THE COURT:  Well, no, I understand.  But I'm talking

4  about the --

5          MR. LAFFREDI:  Right.

6          THE COURT:  -- the simplest way was just a scribner's

7  (sic) error.  Who knows?  There's not a lot of legislative

8  history available on this.

9          MR. LAFFREDI:  And we tried to include what there was

10 and the legislative history is that governmental entities are

11 explicitly excluded.

12         THE COURT:  Right.  Any more?  Okay.

13         MR. LAFFREDI:  Nothing more, Your Honor.  Thank you.

14         THE COURT:  All right.  Thank you.

15         MR. KAROTKIN:  Good afternoon, Your Honor.  Stephen

16 Karotkin, Weil, Gotshal & Manges, for the debtors.  I'll try to

17 be very brief, because Your Honor, I think that we've set out

18 our arguments in our pleadings, as has the creditors'

19 committee.

20         THE COURT:  Right.

21         MR. KAROTKIN:  We think the law is very clear that

22 under the circumstances that exist here, it's not appropriate

23 to appoint yet a third committee of creditors.

24         I know Mr. Esserman indicated that this case is

25 extraordinary and I think everyone agrees.  But as to the issue

PG&E Corp And Pacific Gas And Electric Co

1   of "person", it doesn't obviously allow you to ignore the words

2   of the statute.  And I think the U.S. Trustee has addressed

3   that.  As the case law sets out, Your Honor, the appointment of

4   another committee of creditors here is an extraordinary remedy.

5           And actually, what they're seeking, and I think what

6   Mr. Esserman made clear, they're seeking the appointment of

7   fourteen or sixteen members to a committee, his clients, to

8   represent themselves and nobody else.  I think he made that

9   clear, that they want to represent themselves, sixteen people

10  who are party to this lawsuit.

11          THE COURT:  But do you think that would fly?  In other

12  words, what if we didn't have the statutory mix and I told Mr.

13  Laffredi, I think you can appoint a committee or I'll do it?

14  But I don't think it should be fourteen.  It should be six or

15  seven.  I mean, do you really think that those appointees would

16  not have a fiduciary duty to the -- any other governmental

17  entity?

18          MR. KAROTKIN:  No, I -- no, I -- clearly they would

19  have a fiduciary duty.  But we're talking about a very limited

20  universe of claimants here.  And I think that's important to

21  keep in mind.  The claims held -- again, despite what Mr.

22  Esserman said, the claims held by the public entities are not

23  unique.  They are the same nature, priority of other unsecured

24  claims in this case.

25          The tort committee represents the holders of all tort-

PG&E Corp And Pacific Gas And Electric Co

1　based claims, including his clients.  And their sole remedy --

2　what they're seeking here, and again, it's very clear from the

3　pleadings -- they're seeking to recover money just like the

4　tort claimants are seeking to recover money, just like the

5　unsecured creditors represented --

6　　　　　　THE COURT:  Right.

7　　　　　　MR. KAROTKIN:  -- by the Milbank Firm are seeking to

8　recover money.  There is nothing legally different from their

9　claims than the claims that are held by the constituents

10　represented by the already existing two committees.

11　　　　　　THE COURT:  Then why do we even have two committees?

12　Why even not just one committee?

13　　　　　　MR. KAROTKIN:  We could have had one committee.

14　　　　　　THE COURT:  Well, I mean, you -- I don't know what the

15　debtors' own view was.  The U.S. Trustee chose to appoint two

16　and no one's questioned it, to my knowledge.  So it's a done

17　deal, but --

18　　　　　　MR. KAROTKIN:  And I think even more importantly than

19　what I've already indicated, they cannot demonstrate -- and the

20　pleadings don't demonstrate -- again, there's no evidence in

21　the pleadings.  This is Mr. Esserman's application.  There's no

22　declaration supporting it.  The only declaration he filed was

23　to shorten time.  And they can't demonstrate that the public

24　entities are unable to represent their interests without the

25　status of an official committee.  And that's what the law

of 205

(973) 406-2250　operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    requires.

2            In fact, by their own admission, in their pleadings,

3    Your Honor, it's directly to the contrary.  Their pleading --

4    pleadings clearly set forth they are well-organized.  They are

5    well-coordinated.  They participated as a coordinated group in

6    the pre-petition litigation.  And they're certainly already

7    well-organized in participating in these cases.  They're well-

8    represented in these cases.  Three law firms signed this

9    motion, demonstrating they're well-represented.

10            And under these circumstances, again, Your Honor, I

11   think the law is very clear.  Look, we don't dispute that these

12   entities suffered damage and we are sympathetic to the damages

13   that they suffered as a result of the wire -- wild fires.  And

14   by no means do I mean to diminish that.

15            THE COURT:  Does this all come down to money?

16            MR. KAROTKIN:  Pardon me?

17            THE COURT:  Does this all come down to money, of where

18   Mr. Esserman will get his fees?

19            MR. KAROTKIN:  I -- to the extent he's got safety

20   concerns, again, they're well-represented.

21            THE COURT:  Well, that's what I'm getting at.  Is --

22   in your experience, what else is there to do to get official

23   committee status, but to get paid by the debtor?  Beyond that,

24   what else happens?  I mean, unofficial committees can act and

25   do a lot of these things.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          MR. KAROTKIN:  Exactly.  They -- the parties in the --

2          THE COURT:  Well, the bonds -- we have on -- what four

3    unofficial committees in this case, right?

4          MR. KAROTKIN:  Exactly.

5          THE COURT:  Yeah.

6          MR. KAROTKIN:  There are parties and interests under

7    1109.  They can appear and be heard.  They already appear and

8    be heard in these cases.  They're very well-organized, as I

9    indicated.  And the appropriate remedy here, Your Honor, is not

10   to appoint another -- yet another creditors' committee.

11         But the appropriate remedy is let them -- and I think

12   you indicated this -- let them function as an ad hoc committee.

13   Again, they're -- they've demonstrated they're perfectly

14   capable of doing that.  And at the appropriate time, they can

15   file an application under Section 503(b) and the Court can

16   consider whether the estates should pay their fees.

17         THE COURT:  Okay.

18         MR. KAROTKIN:  Thank you.

19         THE COURT:  Thank you.  Mr. Kreller, are you coming

20   back for more?

21         MR. KRELLER:  I am, Your Honor.  Hopefully just a

22   little more, Your Honor.  Thomas Kreller of Milbank, on behalf

23   of the Official Committee of Unsecured Creditors.

24         Your Honor, I'll be brief, as well.  I think -- I

25   don't have a lot to add to what's in our papers.  I think what

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1  I'd point out, Your Honor, this is -- this isn't a question of

2  whether the public entities will have an active voice in these

3  cases.  They will.  They have.  They will.  They will continue

4  to, I'm sure.  And they should.  They're obviously very

5  important stakeholders with a lot of interests in this company

6  and these cases.

7         The question on this motion is actually a much

8  narrower one.  It's not one of whether they will have a voice.

9  It's whether or not they are adequately represented in their

10  creditor capacity by the two existing committees.  Because when

11  you look at 1102, both (a)(1) and (a)(2), they talk about the

12  adequate representation of creditors or equity holders.

13         So I think implicit in that is the notion that the

14  capacity as creditor is important, when you think about what

15  does a committee do.  A committee of creditors is there to

16  represent creditors qua creditors.

17         THE COURT:  But there are different kinds of

18  creditors' committees in other cases.  There have been

19  industry-type distinctions, right?  I think back of a big case

20  one time involving a series of oil producers compared to other

21  creditors, or franchisees compared to other unsecured

22  creditors.  So there are different kinds of unsecured creditors

23  that have different interests.

24         MR. KRELLER:  There are different kinds of unsecured

25  creditors, Your Honor.  And my committee --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1          THE COURT:  I mean, you have a -- your committee

2     consists of a winery and a tree cutting service and a few other

3     people.

4          MR. KRELLER:  Your Honor, my committee, there are

5     three financial creditors.

6          THE COURT:  Right.

7          MR. KRELLER:  We have vendors.  We have parties to

8     contract, including power purchase agreements.

9          THE COURT:  Right.

10          MR. KRELLER:  We have a union; we have the PBGC.

11          THE COURT:  Right.

12          MR. KRELLER:  So those creditors are -- and that

13     committee is intended to be a cross-section that is capable of

14     adequately representing the interests of unsecured creditors.

15          THE COURT:  I guess what I'm -- what I'm-- what I'm

16     taking not issue, but I'm questioning whether your question

17     even their role as creditor.  If Paradise hadn't been burned

18     and the fire had gone a different direction, they wouldn't be

19     here seeking creditor status, even though they are a creditor

20     in a technical sense, because they provide, you know, services

21     to the utility.  But they are a creditor because Paradise

22     suffered the fire, right?  They're a creditor who came

23     involuntarily as a victim of a fire.  And this entity -- this

24     governmental entity was a victim of the fire.

25          MR. KRELLER:  Yes.

PG&E Corp And Pacific Gas And Electric Co

1          THE COURT:  Just like individuals or homeowners who

2     were victims of the fire.

3          MR. KRELLER:  Correct, Your Honor.  And I'm not

4     denying that they're creditors.

5          THE COURT:  Right, okay.

6          MR. KRELLER:  But I think where this comes into play

7     and it comes out, as Mr. Esserman argues to you, that, in fact,

8     the interests that they are seeking to protect and vindicate,

9     they have interests as creditors.  But they also have interests

10    in safety and health and welfare and regulatory issues, too.

11         Those kinds of issues aren't really creditor issues.

12    They're entirely legitimate issues, but they're not the kind of

13    creditor issues that I think 1102 contemplates.  And we've

14    seen, in Mr. Esserman's pleadings and in his argument today,

15    how actively involved they've been in administrative

16    proceedings before the CPUC and state court prepetition

17    litigation.  They represent those interests in other forums

18    without the need of an official committee in the bankruptcy

19    case.  The bankruptcy case is, at least primarily, about the

20    debtor-creditor relationships.

21         And yet, Mr. Esserman is arguing that they have other

22    interests that they want this official committee to form.  And

23    I think that actually falls outside of what 1102 is about.  But

24    again, I don't want to leave the impression that somehow they

25    don't have a voice in these cases.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1      THE COURT:  No, no, you haven't.  You haven't --

2      MR. KRELLER:  They do.

3      THE COURT:  -- said that.  I guess what I'm having

4  trouble is understanding what -- and again, we use Paradise as

5  the city that, perhaps the worst damaged victim of all, is what

6  about them isn't a creditor?  The fact that they want their

7  parks and roadways and facilities restored doesn't mean they

8  aren't a creditor for that reason.

9      And if the public -- if PG&E handed over a check and

10 said, here, fix everything, then they wouldn't be a creditor

11 anymore.  But the fact that they would have an ongoing

12 relationship doesn't mean their interests aren't unique or

13 important, but that they'd stop being a creditor, so -- right?

14     MR. KRELLER:  They would -- but Your Honor -- and Your

15 Honor, but that's -- in their -- I think that's what's in play,

16 here.  They have a creditor hat and then they have a public

17 entity hat.  And as creditors, if they were otherwise -- if

18 they were persons and creditors, they would be entitled to sit

19 on an official committee of creditors.

20     That's not really what they're seeking.  They're

21 seeking to sit on an official committee of public entities

22 because they don't believe they're public entity interests are

23 being served.  And so, they're kind of crossing the line and

24 trying to get an official committee, when I think the way 1102

25 reads and works, the official committees of creditors and

PG&E Corp And Pacific Gas And Electric Co

1  equity holders really are about the debtor-creditor

2  relationship.

3          THE COURT:  Well, I've talked about my colleague

4  upstairs and he's been in the news for wanting to have PG&E

5  change some of its wildlife -- or wildfire management risks or

6  foresting risks.  So are you a creditor if you're ordered to

7  cut down trees?  Or are you not?  In other words, your

8  constituents are creditors.  The victims, or the city of

9  Paradise, as a victim, is a creditor.  But it still has an

10  interest in something else.  But doesn't make them not a

11  creditor.

12          MR. KRELLER:  Agreed.

13          THE COURT:  So --

14          MR. KRELLER:  Agreed, Your Honor.  But as creditor,

15  I -- as creditor, they are represented, either by my committee,

16  as a general unsecured creditor matter, or by the tort

17  committee as a tort victim matter.  So I think their creditor

18  capacity is covered by the two existing official committees.

19          THE COURT:  Okay.  So what you're saying is that a

20  governmental unit that cares about the future, the parks, the

21  trees, the vegetation management, they're not wearing a

22  creditor hat in that role?

23          MR. KRELLER:  That's right --

24          THE COURT:  If the utility comes in and says we'll fix

25  all the fire damage, we'll restore all the harm you suffered,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    but as far as what it takes for the future, that's a different

2    relationship.

3            MR. KRELLER:  I think that's right, Your Honor.

4            THE COURT:  Okay.

5            MR. KRELLER:  I think that's right.  And I think you

6    can -- and when you have the public entities show up and tell

7    you that this isn't just about their creditor role, they're

8    ignoring that dichotomy.

9            THE COURT:  Okay.  I gotcha.

10           MR. KRELLER:  And I think as creditors, they are

11   represented by either my committee or Ms. Dumas' committee.

12   And Your Honor, the last point, and this is somewhat

13   duplicative of Mr. Karotkin, but I think to some degree, the

14   issue with this motion is another official committee here is

15   just the wrong tool for the job.  The remedy is a substantial

16   contribution claim.

17           If they come in in their very legitimate capacity, as

18   public entities, with all of the interests -- important

19   interests that they have and they make a substantial

20   contribution to the reorganization cases, then they'll be able

21   to prove up that case.  You'll be able to allow -- to grant

22   them a substantial contribution claim.  And they'll be

23   compensated and have their costs covered that way.

24           THE COURT:  Well, I'm not sure I agree with you there,

25   because all the people that get paid under 502 -- 503(b) --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    502(b)(3) are creditors.  Creditor files a petition, creditor

2    recovers, creditors come under defense, creditor who makes a

3    substantial contribution.  But you have to be doing it as a

4    creditor.  If somebody, just for the fun of it, says I think

5    I'll pay for something for the debtor, that's probably not a

6    creditor.

7            MR. KRELLER:  Yeah, again, Your Honor, I'm not denying

8    that they're creditors.

9            THE COURT:  Yeah, yeah.

10           MR. KRELLER:  They certainly are.  I think, though,

11   you have to recognize the dichotomy between what --

12           THE COURT:  No, no, I understand.  I'm focusing on

13   something different.  If Mr. Esserman's clients don't get a

14   committee here and they go out and they do something that they

15   think creates a substantial benefit to the utility, but their

16   question is that they didn't do it in their creditor capacity,

17   they might not have a 502(b)(3) claim, because the persons who

18   make those contributions are creditors.

19           So that I'm a creditor of XYZ Company and I go recover

20   a preference.  So I've done something for the good of the

21   creditor body, so I'm a creditor who can get paid.  Or I'm a

22   committee of an unofficial committee that proposed the plan.

23   But if I do something that is non-creditor-related, it may not

24   be compensable.  Again, we can cross that bridge some day in

25   the future.

PG&E Corp And Pacific Gas And Electric Co

1          MR. KRELLER:  Understood, Your Honor.  But I think

2     that's probably a closer fit to what would be an appropriate

3     remedy for that --

4          THE COURT:  Okay.

5          MR. KRELLER:  -- in this context --

6          THE COURT:  Okay.

7          MR. KRELLER:  -- rather than an official committee

8     where they've basically said they're not -- they've basically

9     told you we don't want to sit on an official unsecured

10    creditors committee, because we don't want to owe duties to

11    other unsecured creditors who are not like us.  And I think

12    that's -- kind of really gets to the -- of the problem.  It's a

13    bit of a contradiction, Your Honor.

14         THE COURT:  Okay.  Thank you, Mr. Kreller.

15         MR. KRELLER:  Thank you.

16         THE COURT:  Mr. Esserman, closing comment?  We've got

17    everybody.  We know -- you're alone on this one, right?

18         MR. ESSERMAN:  Yeah, I don't have a horde with me.

19    Let me just address a couple issues.  I think you heard

20    precisely why we don't want to be a member of the unsecured

21    creditors committee and why they do not represent us,

22    regardless of what they said.  They said they represented us in

23    our creditor capacity.

24         The issues of safety and being a creditor are

25    inextricably intertwined between the two -- between the two.

of 205
(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    We do not -- we cannot ignore one.  We cannot ignore the other.

2    The cities have to be -- counties have to be rebuilt, but they

3    have to be rebuilt with safety issues.

4         The debtor is very clear that they need two -- two

5    fixes to this bankruptcy.  One, they need some legislative

6    assistance and legislative help.  And two, they need to corner

7    the -- get resolved the issue -- the creditor issues: one is

8    creditor, one is legislative.  It's a legislative issue, a

9    creditor-related issue.  I would contend that it's similar to a

10   safety issue.  They are inextricably intertwined.

11        THE COURT:  Well, is it let's be -- oversimplify.

12   Something that's in the news a lot is undergrounding.  So

13   suppose Paradise suffers the damage that it suffered and its

14   managers say going forward, we want all the utilities

15   undergrounded.  Now that's not -- that's a safety issue.  But

16   it isn't fixing a creditor issue.

17        In other words, if PG&E fixes Paradise's damages

18   that -- fire losses and bridges and all the other things, but

19   then Paradise says, but we want the utilities undergrounded,

20   again, leaving aside whether PUC or anybody else would have

21   something to say and just focusing on the narrowness of the

22   agency wants its power lines underground, so there isn't

23   another fire in the future.  That, to me, is not a -- that's a

24   safety issue, but it's not a creditor issue.

25        MR. ESSERMAN:  Well, it --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    THE COURT:  And it's not something that the creditors'

2   committee or a group of creditors should be insisting that the

3   utility do something going forward.

4    MR. ESSERMAN:  Except --

5    THE COURT:  It may be a good policy, but --

6    MR. ESSERMAN:  Except for one thing, Your Honor.  If

7   this company is going to reorganize and be successful and get

8   out of bankruptcy and be a proper corporate citizen and serve

9   the communities of California, they're going to have to deal

10  with all the issues, not just paying off this or that.  They're

11  going to have to deal with the safety issues, with the --

12    THE COURT:  That's right.  I agree.

13    MR. ESSERMAN:  -- with the regulatory issues.  You're

14  going to see PG&E go before the state legislature at some time.

15    THE COURT:  Of course.

16    MR. ESSERMAN:  You're going to see them go before the

17  CPUC.  It's not going to be necessarily, well, we need this to

18  pay creditors, although it will be --

19    THE COURT:  But that's the point --

20    MR. ESSERMAN:  But they will be inextricably

21  intertwined.

22    THE COURT:  And they will go before the city council

23  of Paradise if they need a permit to do something.  But if the

24  city of Paradise says, you have to underground your utilities,

25  that's a different issue.  You're -- the city of Paradise is

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    perfectly entitled to insist on that.  The question is whether

2    it's a creditor function.

3         And I guess I'm oversimplifying.  I don't want to

4    minimize the damage to your client.  But to me, it's a

5    difference between fixing the creditor problem and fixing the

6    safety, going forward future relationship problem.  Listen, it

7    has nothing to do with what you and I are debating.  I have

8    to -- I still have to decide can you get in the door from the

9    statute and, you know, that's a different question.

10        MR. ESSERMAN:  I just wanted to correct the issue as

11   to somehow the public entities be represented in a creditor

12   capacity by the unsecured creditors committee or existing

13   committee.  We just take a very different view.

14        THE COURT:  Okay.  I understand.

15        MR. ESSERMAN:  Thank you.

16        THE COURT:  I don't -- Mr. Esserman, I'm going to make

17   a ruling here.  I probably won't surprise you.  I just -- I

18   don't think that I can ignore the amendments to Section 101

19   and, as Mr. Laffredi pointed out -- and so I'm not -- I've

20   expressed at a personal level where I think it's -- I'm sorry

21   that I can't afford you and your clients what they want here.

22        If I made the decision that I can fit the matter into

23   the statute, I'd deal with the second question of, well, do we

24   need a third committee, et cetera, et cetera?  I'm going to

25   take the narrow response, because I think it's -- my job is to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp And Pacific Gas And Electric Co

1    interpret the statute the U.S. Trustee did it, too.  And we

2    didn't rehearse.  I read his brief.  I also read the statute.

3    I read some of the other letters here on the subject.

4         I puzzled with it in my mind from -- you know, I told

5    Ms. Dumas about using the passive voice.  Now I'm having

6    discussions from my high school English class about when you

7    have consisting of an ordinarily and does "person" modify

8    largest creditors or something else?  I just can't read it the

9    way you want me to read it, unless I just pretend that I'm

10   reading something else.  And I -- 1102(b) alone, maybe I could

11   get there.  But I can't read 1101.39 out of the statute either,

12   particularly with the history.

13        So for those reasons, I am going to deny your motion.

14   I said 101.41 (sic), not 39.  I'm going to deny the motion for

15   those reasons.  That is the reason that I don't believe from

16   the statutory point of view there is any authority for the

17   Court to authorize an appointment of governmental units as a

18   separate committee.  So I appreciate your time and effort and

19   your energy on behalf of your client.  They're well-served.

20   And I appreciate all sides on their -- this argument.

21        But that'll be the end.  I guess, Mr. Laffredi, is it

22   in your bailiwick to do a simple form of order?

23        MR. LAFFREDI:  I can do that.

24        THE COURT:  And if there's an appeal, why don't we

25   just follow the traditional rules?  Serve it on Mr. Esserman

PG&E Corp And Pacific Gas And Electric Co

1  and just -- it's perfectly fine with me if you say for the

2  reasons stated on the record, the motion is denied.  Everybody

3  in the case will have the official record or the unofficial

4  record, so they know what my thinking is.  Okay?

5          MR. LAFFREDI:  Will do, Your Honor.

6          THE COURT:  Thank you very much.  All right, thank you

7  everyone, for your time.  I think we'll conclude the hearing

8  for the day.

9      (Whereupon these proceedings were concluded at 2:23 PM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                          I N D E X

2   RULINGS:                                    PAGE LINE

3   Motion Denied                               179    14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1               C E R T I F I C A T I O N

2

3    I, Kandi Gaffney, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8

9

10   _____

11   /s/ KANDI GAFFNEY

12

13   eScribers

14   7227 N. 16th Street, Suite #207

15   Phoenix, AZ 85020

16

17   Date:  March 14, 2019

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

# A

**a1 (1)**
168:11
**a2 (1)**
168:11
**ABC (1)**
162:22
**abdicated (2)**
97:18;107:3
**ability (4)**
18:6;33:11;100:22;
107:11
**able (15)**
10:21,21;28:17,18;
31:2;37:13;87:6;90:5;
97:6;127:15,24;
129:14;162:18;173:20,
21
**above (1)**
149:13
**absent (1)**
40:3
**absolute (1)**
122:12
**Absolutely (4)**
21:9;23:17;124:9;
139:16
**accept (8)**
101:3,4;109:5;
113:25;115:18;135:4;
138:12,14
**acceptable (4)**
25:7;31:1;94:24;
134:14
**acceptance (2)**
132:14;133:22
**accepts (2)**
135:3;143:8
**access (1)**
81:10
**accident (1)**
70:7
**accommodate (3)**
37:13;82:20;135:16
**accommodation (1)**
128:18
**accomplishment (1)**
85:22
**accordance (1)**
37:14
**account (1)**
120:7
**accounts (4)**
119:8,12,21,25
**accretive (3)**
103:14,22,23
**accrued (2)**
9:16;117:8
**accurate (1)**
151:23
**accused (1)**

88:20
**ACH (1)**
9:19
**acknowledge (1)**
17:5
**acquires (1)**
162:22
**acquisitions (1)**
92:24
**act (2)**
152:13;166:24
**acting (2)**
155:14,23
**action (9)**
5:15,15;13:16;25:17,
20;76:18;111:12;
114:18,22
**actions (5)**
26:4;30:8;77:4;
120:4,18
**active (1)**
168:2
**actively (1)**
170:15
**actual (1)**
90:25
**actually (17)**
6:13;88:15;90:18;
104:11;112:3;118:16;
120:6,11,14,19;127:14;
129:4;135:24;147:18;
164:5;168:7;170:23
**ad (1)**
167:12
**add (7)**
8:25;70:5;138:3,22;
158:19;161:13;167:25
**added (5)**
11:13;69:23;130:13;
162:9,23
**addition (1)**
22:24
**additional (9)**
5:21;31:7,15,15;
33:7,12,14;147:25;
156:1;159:24
**address (10)**
8:12;9:1;17:23;19:3;
28:17;40:9;128:19;
156:13;161:4;175:19
**addressed (1)**
164:2
**addresses (2)**
127:24;132:4
**addressing (2)**
16:23;122:9
**adds (1)**
37:25
**adequacy (1)**
18:11
**adequate (4)**
17:1;148:1;161:16;
168:12

**adequately (3)**
18:19;168:9;169:14
**administrative (9)**
34:15,16;35:6,23;
36:7;37:15;40:4;139:2;
170:15
**admission (1)**
166:2
**admissions (1)**
87:1
**admittedly (1)**
95:19
**ado (1)**
76:21
**advance (3)**
7:16;11:11;97:20
**adverse (6)**
38:2;39:4;40:23;
91:15;107:6;131:16
**advice (2)**
113:7;114:9
**advise (2)**
9:25;135:15
**advised (1)**
22:10
**advisers (1)**
100:8
**advisors (3)**
16:16,17,18
**advocacy (1)**
76:16
**advocating (2)**
88:13,14;115:23
**affairs (1)**
84:3
**affect (2)**
38:13;74:24
**affected (1)**
149:11
**affects (2)**
102:11,13
**affirmative (1)**
91:9
**afford (1)**
178:21
**afternoon (5)**
127:14;134:8;137:7;
144:14;163:15
**again (44)**
11:10,19;12:19,20;
13:14;15:10;22:19;
28:21;31:3;37:22;
38:17;76:20;82:5,15;
88:1,25;90:4;94:1;
101:2;107:21,22;
109:15,17;116:2;
127:3;130:21;141:7;
142:14;147:12,23;
153:6;156:10,21;
164:21;165:2,20;
166:10,20;167:13;
170:24;171:4;174:7,
24;176:20

**against (7)**
30:11;73:13;79:10,
12;88:15;89:14;114:23
**Agency (2)**
71:3;176:22
**agent (3)**
11:12,15;139:2
**agents (2)**
114:6;118:5
**ages (1)**
12:17
**aggregate (1)**
91:4
**ago (6)**
77:13;101:25;108:4,
4;129:25;143:10
**agree (25)**
19:17,22;20:8;25:12;
26:23;27:3,5;29:19;
75:9;76:20;77:6;95:21;
104:19;128:2;133:20;
135:8;141:16;142:2,5;
148:14;149:5;154:24;
160:4;173:24;177:12
**agreed (13)**
14:24;20:12,14;26:2,
23;78:25;87:18;
103:24;133:9;134:25;
160:23;172:12,14
**agreeing (1)**
34:24;151:24
**agreement (25)**
7:18;19:11;31:8,23;
71:23;73:16;81:25;
82:2;87:6,11;90:15;
91:1,2,4,8;94:4;95:18;
105:14;110:3;118:12;
140:2;141:11;143:14;
150:12,14
**agreements (3)**
37:4;82:13;169:8
**agrees (1)**
163:25
**ahead (10)**
6:8;8:22;22:6;23:9;
37:7,11;38:15;88:9;
102:20;156:1
**AlixPartners (1)**
16:18
**alleviate (1)**
78:14
**allocate (1)**
126:15
**allocating (1)**
14:22
**allocation (3)**
14:3,24;75:25
**allow (4)**
101:6;159:7;164:1;
173:21
**allowed (4)**
38:15;86:22;90:7;
116:21

**allows (2)**
32:10;73:11
**almost (3)**
103:11;121:20;
149:12
**alone (2)**
175:17;179:10
**along (2)**
36:3;155:15
**Alsup (2)**
91:19;92:17
**Alsup's (1)**
125:13
**alter (1)**
84:9
**alternative (1)**
154:12
**although (4)**
16:4;76:16;146:3;
177:18
**Alto (2)**
147:11,14
**always (2)**
16:7;72:12
**amended (2)**
153:21;162:8
**Amendment (1)**
154:7
**amendments (1)**
178:18
**America (1)**
10:20
**among (2)**
132:18;141:11
**amount (11)**
9:6,15,24;16:5;
29:10;31:14;36:17;
39:15;73:11;93:16;
117:14
**amounts (1)**
37:23
**analysis (4)**
21:23;150:23;157:1;
161:11
**and/or (1)**
135:5
**Andrew (1)**
144:22
**announcing (2)**
123:1,2
**anticipate (3)**
6:24;126:18,18
**anticipating (1)**
6:13
**anymore (1)**
171:11
**apologize (2)**
13:25;78:4
**appeal (1)**
179:24
**appear (3)**
77:22;167:7,7
**appearing (1)**

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 183
of 205

84:22
**application (8)**
10:1;72:11,13,22,23;
90:25;165:21;167:15
**applications (4)**
6:3,12,16;7:19
**applies (1)**
89:7
**apply (2)**
93:24;117:7
**appoint (10)**
144:24;148:21,22;
149:7;154:14;160:11;
163:23;164:13;165:15;
167:10
**appointed (12)**
145:10;147:1,18,20,
22;148:22;149:25;
151:18;158:24,25;
159:1;161:22
**appointees (1)**
164:15
**appointment (15)**
90:12,17;98:1,23,25;
99:4,5;128:5;146:4,5;
147:24;159:24;164:3,
6;179:17
**appoints (1)**
129:11
**appreciate (8)**
18:23;84:15;89:5;
104:5;105:8;161:11;
179:18,20
**appreciated (1)**
87:10
**approach (5)**
25:23;26:24;115:25;
127:25;151:14
**appropriate (14)**
25:22;96:25;103:3;
106:16,22;107:2,5,12;
108:24;163:22;167:9,
11,14;175:2
**appropriately (1)**
25:20
**approval (11)**
20:25;22:24;23:3,3,
5,21;33:10;87:23;
88:16;89:1;129:15
**approve (15)**
13:24;18:18;79:19,
20;80:20;81:25;82:1,3;
110:11;121:6,12;
122:1;123:2,16;143:11
**approved (4)**
7:20;15:15;24:15;
141:23
**approving (1)**
121:7
**approximately (2)**
9:19;78:2
**April (5)**
24:12;91:20;124:10,

11;133:10
**area (1)**
10:24
**areas (1)**
87:5
**argue (1)**
74:22
**argues (1)**
170:7
**arguing (3)**
38:10;75:21;170:21
**argument (20)**
69:11;70:16;75:22;
81:4,5,7,18,21;82:1,23,
25;98:16;105:10;
134:16;139:23;140:3;
150:24;156:2;170:14;
179:20
**arguments (8)**
14:12,16;81:20;
105:20,23;137:16;
152:11;163:18
**around (5)**
40:20;121:11;
125:24;140:25;153:25
**arrive (1)**
139:6
**aside (5)**
87:3;102:5;127:7;
148:17;176:20
**aspect (3)**
122:19;123:7;156:23
**aspects (2)**
131:19;156:5
**asset (4)**
24:21;31:12;73:13;
162:22
**assets (14)**
21:1;27:11,11;87:13;
88:15;92:24;93:10,15;
106:21;112:4;125:23;
126:1;128:22;152:24
**assistance (1)**
176:6
**assume (5)**
29:1;40:22;92:9,11;
132:7
**assured (1)**
90:6
**astronomical (3)**
37:23;40:2,7
**attempt (1)**
28:17
**attempting (1)**
26:5
**authority (15)**
21:7;22:12,12,13;
83:12;106:15;108:24;
118:3;126:1;128:21;
146:7,12,13;148:21;
179:16
**authorization (2)**
15:20;16:5

**authorizations (1)**
9:5
**authorize (1)**
179:17
**authorized (3)**
10:25;16:3;87:24
**automatic (6)**
19:6;30:7;99:23;
101:6;108:15,17
**automatically (1)**
119:19
**available (3)**
81:11;100:9;163:8
**avoid (1)**
153:2
**avoidance (5)**
25:17,20;26:4;30:8;
77:4
**awarding (2)**
75:23,24
**aware (13)**
8:15;11:25;12:2;
16:4,11;20:13,17;25:3;
34:17;37:4;72:14;
82:11,14
**away (4)**
12:15;21:16;115:22;
127:16
**awkward (1)**
154:5

**B**

**b1 (3)**
148:6;158:23;160:2
**back (53)**
8:7;10:14;12:17;
20:3;21:18;26:11;
30:19;33:2,8;35:11;
70:16;73:16;76:13;
77:15;78:13;87:19,21,
21;88:2,15,24;90:10;
96:22;97:8;98:13;
101:7,10,11;103:25;
108:4;111:9;112:5,14,
17,19;118:8;121:20;
124:1,16;125:19;
129:9;131:11;137:5;
140:9,25;141:7;
142:14;143:23;146:2;
152:7;160:1;167:20;
168:19
**background (1)**
121:25
**backstop (1)**
118:21
**backup (1)**
24:9
**bad (5)**
88:19;132:10;
138:19;154:20,22
**bags (1)**
22:3

**bailiwick (1)**
179:22
**Baker (2)**
69:13;84:22
**balance (6)**
21:11,12;22:15;
74:23;100:13;113:16
**balances (1)**
119:8
**balancing (2)**
106:8;107:12
**bank (7)**
9:6,19;10:20;89:25;
114:10;128:2,25
**bankruptcy (39)**
21:4,8,13;22:17;
31:4;34:17;36:6;37:14;
75:23,24;78:18,21;
79:3;81:7;85:12,13;
86:6;95:25;96:16,17,
18,22;98:12,22;99:9,
16,22;102:19;103:2,
13;104:10,10;135:13;
149:10;160:6;170:18,
19;176:5;177:8
**banks (9)**
9:2,17,21;10:25,25;
128:6,18;129:2;134:25
**base (1)**
25:6
**based (1)**
165:1
**bases (2)**
122:3;157:11
**basic (1)**
97:9
**basically (6)**
72:6;107:8;117:2;
145:6;175:8,8
**basics (1)**
97:8
**basis (5)**
6:12;13:15;15:16;
37:3;150:21
**basket (5)**
32:10,24;33:9;36:19;
93:16
**baskets (5)**
32:8,17;33:1,6;36:20
**battle (1)**
151:6
**become (1)**
159:8
**becomes (1)**
147:21
**bed (1)**
12:8
**beg (1)**
159:1
**begin (1)**
14:21
**begins (1)**
115:9

**behalf (19)**
6:10;11:22;14:10;
15:11;69:14;70:22;
71:1;72:12;78:2,14;
83:9;84:22;101:15;
114:5;131:25;138:25;
144:9;167:22;179:19
**behind (5)**
35:25;94:14,15;
123:7;131:18
**belabor (1)**
92:14
**believes (1)**
85:21
**belt (4)**
113:15,22;118:10,20
**beneficial (2)**
152:24;158:13
**beneficiaries (1)**
75:18
**benefit (7)**
13:15;34:1;38:25;
104:9;132:25;135:15;
174:15
**benefits (1)**
102:2
**best (4)**
14:12;26:20;142:15,
21
**better (6)**
87:15;116:11;
117:19;137:12;142:11;
158:11
**beyond (3)**
30:25;155:4;166:23
**bifurcated (1)**
127:25
**big (5)**
26:10;90:15;102:8;
115:5;168:19
**billion (11)**
15:20;16:3;35:15;
73:13,13;79:13;85:22;
86:1,3;100:23;103:11
**billion-dollar (1)**
33:9
**binding (1)**
88:3
**bit (10)**
25:7;89:19;106:24;
118:8,10;132:5,12;
143:25;151:15;175:13
**black (1)**
16:24
**black-and-white (1)**
109:13
**blah (3)**
115:13,13,13
**block (1)**
40:21
**board (2)**
14:3;101:11
**body (3)**

76:19;157:18;174:21
**bonds (2)**
86:20;167:2
**book (1)**
86:12
**borrowed (1)**
113:16
**borrowing (3)**
15:18,22;100:25
**borrowings (1)**
16:1
**both (12)**
8:11,17,18;16:15,20;
18:25;86:15;132:12;
143:22;144:4;162:13;
168:11
**bound (2)**
88:17;89:3
**brags (1)**
85:20
**break (7)**
69:8;105:9,13;122:7;
123:8;127:21;145:21
**breaker (2)**
30:20;122:5
**bridge (1)**
174:24
**bridges (1)**
176:18
**brief (5)**
161:11,11;163:17;
167:24;179:2
**briefed (1)**
144:5
**briefing (3)**
139:4,9,11
**briefly (1)**
12:8;19:2
**briefs (1)**
150:22
**bring (1)**
96:22
**bringing (1)**
82:9
**brings (1)**
85:15
**broad (1)**
155:1
**broad-based (1)**
157:4
**broader (1)**
155:1
**Bromberg (1)**
144:9
**Bruggisser (1)**
144:12
**bucket (1)**
93:16
**budget (3)**
16:7,9;24:24
**building (1)**
137:22
**built (1)**

19:12
**bunch (1)**
111:23
**burden (5)**
19:8,16;96:15;109:4;
129:20
**burdens (3)**
97:11,13,14
**burned (1)**
169:17
**business (19)**
18:8;20:1,16;35:19;
83:14,15,16;117:15;
128:1,3,7,12,17;
129:12,13;134:1;
140:14,16;159:6
**busy (1)**
21:3
**Butte (7)**
71:2;78:12,17,19;
79:1;82:12;103:6
**buy (1)**
150:24

# C

**Calaveras (1)**
71:7
**calendar (7)**
82:16;108:12;
130:20,24;134:22;
135:21;142:12
**CALIFORNIA (12)**
5:1;87:16;89:2;
95:24;102:11,14;
103:23;110:21;111:5,
8;149:24;177:9
**Californians (1)**
102:8
**Call (7)**
5:3;97:18;100:15;
103:16;133:23;145:7;
146:23
**called (5)**
29:7;72:17;111:14,
15;133:9
**calling (1)**
143:4
**calls (2)**
28:15;149:22
**came (6)**
81:9;112:4,19;140:9;
155:15;169:22
**camp (1)**
71:8
**can (92)**
7:10;13:7;19:13;
27:25;29:16;31:16;
34:25;69:2;72:10,12;
76:6;81:16,23;82:6,15,
18,20;83:20;84:4;
87:11,14;89:2;98:22,
25;102:17;104:18,24;

106:10;107:1,19;
108:20,20;109:1,3;
111:11,16;119:5,9,10;
121:4,8,12;122:5,5;
127:13;130:1;132:14;
133:20;135:5,15,16,17;
136:20;138:3,8;
140:24;145:10;147:22,
22;148:18;149:5;
150:7,24;151:6,11,
154:7,14,18;155:1,1,5,
8,24;156:8;158:7,14;
159:17;160:4;161:3,4;
164:13;166:24;167:7,
14,15;173:6;174:21,
24;178:8,18,22;179:23
**cap (5)**
9:24;74:5;86:3;
116:12;117:10
**capable (2)**
167:14;169:13
**capacities (2)**
113:10;114:7
**capacity (10)**
30:24;114:2;115:9;
168:10,14;172:18;
173:17;174:16;175:23;
178:12
**capital (5)**
30:16;32:10;35:16;
104:4;155:15
**card (3)**
9:18,19;121:6
**care (3)**
11:8;156:17;157:20
**careful (1)**
106:8
**carefully (2)**
19:9;107:4
**cares (1)**
172:20
**carry (2)**
109:5;112:16
**carve (2)**
34:24;75:2
**carve-out (31)**
33:20;34:2;35:1,5;
72:4,4,17,17,24,25;
73:1,2,5,22,25;74:14;
75:18;76:1,7;103:5;
113:2;115:22;116:3,7,
21,22;117:9,13,16;
120:16;134:17
**carve-outs (4)**
38:25;73:3;75:16;
115:23
**case (80)**
6:1;7:21,21;8:2,9;
12:9,21;13:2,17;20:17,
19;23:11,16,17;24:19;
25:3,5,15,15;30:16;
31:9;34:16;38:6,10;
39:8;40:14;74:15;

75:13,20;76:2,11;
77:11;78:13;81:13;
85:12,16,24,25;86:18;
90:19;91:17;92:19;
93:17,18;95:23;96:23;
98:21;100:4;101:19,
20;102:19;114:6;
115:9;116:19;122:17;
123:7;125:14;131:19;
145:2;147:3,6;149:3,4,
9,11,12,20;151:10;
152:3,19;161:7;
163:24;164:3,24;
167:3;168:19;170:19,
19;173:21;180:3
**caselaw (1)**
75:18
**cases (16)**
7:19;13:15;75:16;
87:20;147:19;149:10;
150:25;152:17;166:7,
8;167:8;168:3,6,18;
170:25;173:20
**cash (6)**
8:19;10:13;25:10;
100:6;113:13,20
**category (2)**
38:25;112:3
**cause (5)**
96:21;97:9;98:8;
99:16;128:9
**caused (1)**
85:8
**causes (3)**
76:18;114:17,22
**Cecily (2)**
69:13;84:21
**certain (7)**
9:17;16:23;17:6;
27:1;29:10;33:6;
159:18
**certaining (1)**
154:1
**certainly (10)**
17:8;80:14;100:19;
106:1;133:1;134:13,
18,20;166:6;174:10
**cetera (12)**
6:22;92:25,25;97:7;
108:15,15;113:2,21;
162:22,22;178:24,24
**chair (1)**
85:6
**challenge (2)**
86:1;89:6
**challenged (2)**
18:10,11
**challenging (2)**
89:14;107:12
**chance (1)**
129:23
**chances (1)**
132:15

**change (11)**
39:10,12;84:1;95:14;
129:19,20;134:25;
149:17;153:9;158:19;
172:5
**changed (6)**
12:15;84:7;151:7;
163:1,1
**changes (4)**
8:12;77:2;101:13;
123:25
**Chapter (12)**
74:10,15,18;76:17;
90:12;107:16;114:18;
128:6,17;129:11;
134:24;140:17
**charge (3)**
84:3;108:18;122:14
**Chase (1)**
139:2
**check (1)**
171:9
**checklist (1)**
12:4
**checks (2)**
79:1,2
**childhood (1)**
85:8
**choose (2)**
125:9;141:5
**chose (1)**
165:15
**chosen (1)**
100:9
**choses (1)**
141:4
**Chris (2)**
77:24;78:1
**CIRCLA (1)**
128:24
**circumstance (4)**
20:22;102:16;
108:25;128:14
**circumstances (15)**
40:22;94:5;97:21;
98:20,24;99:15,21;
106:17,23;107:2,19;
110:10;128:13;163:22;
166:10
**cities (5)**
149:20;157:8;158:6,
9;176:2
**citizen (1)**
177:8
**city (12)**
71:5,6,6;147:11,13;
157:4,5;171:5;172:8;
177:22,24,25
**claim (21)**
31:21;34:14,16,18;
36:22;37:5;39:5;40:2;
69:9;89:21;90:3,7,8;
103:25;114:23;153:13,

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 185
of 205

17;158:2;173:16,22;
174:17
**claimant (2)**
34:1;37:11
**claimants (13)**
17:6;27:19;28:21;
37:22;38:24;69:15;
78:2;84:23;104:3;
127:23;135:12;164:20;
165:4
**claimants' (7)**
16:14;22:23;23:12;
27:14;28:24;85:7;
134:14
**claims (19)**
30:10;35:20;36:4;
79:21;80:12,15;89:6,
14;103:24;114:5,22;
157:24;161:15;164:21,
22,24;165:1,9,9
**clarification (1)**
88:10
**clarified (1)**
89:5
**clarify (5)**
31:11;128:20;
129:18;138:23;139:3
**clarifying (3)**
11:14;14:19;128:25
**class (1)**
179:6
**clause (6)**
115:8,12;119:20;
120:2,3,16
**clean (1)**
18:24
**clear (19)**
20:25,25;23:5;39:3;
71:6;89:11;127:16;
134:15;135:23;137:9,
24;143:18;162:18;
163:21;164:6,9;165:2;
166:11;176:4
**clearer (1)**
89:11
**clearly (5)**
23:4;134:22;141:14;
164:18;166:4
**CLERK (3)**
5:4,8;127:2
**clever (1)**
23:2
**client (10)**
12:3;69:21;74:24;
75:5;81:24;83:9;134:3;
151:6;178:4;179:19
**clients (15)**
73:10;79:21;82:5;
83:9;84:10;103:1;
129:23;130:1;132:14;
148:15;152:21;164:7;
165:1;174:13;178:21
**clients' (1)**

81:15
**clock (2)**
117:2,4
**clocked (1)**
150:12
**closed (1)**
139:23
**closely (1)**
16:18
**closer (2)**
9:20;175:2
**closing (2)**
105:10;175:16
**coconut (1)**
90:14
**Code (3)**
21:13;34:17;36:6
**cognitive (3)**
85:15;86:24;87:3
**cognizant (1)**
110:9
**coin (2)**
83:3,7
**collapse (1)**
139:13
**collateral (17)**
26:3,17,18;27:4;
29:14;75:15;100:1,7;
112:10;113:2,5,12,14,
17,21,24;114:20
**colleague (1)**
172:3
**colleagues (7)**
6:17;21:2;117:19,21,
22,23;122:9
**collected (1)**
80:24
**collectively (1)**
100:23
**colloquy (3)**
118:9;124:20;141:15
**combination (1)**
157:24
**comfortable (3)**
19:10,13;123:1
**comforted (1)**
122:13
**coming (3)**
7:4;70:24;167:19
**comment (3)**
13:17;114:15;175:16
**commented (1)**
114:1
**comments (14)**
14:13;20:5;28:17;
30:19;71:25;76:15;
84:15,20;111:2;122:6,
11,11;134:6;162:3
**Commission (1)**
71:3
**commitment (1)**
119:6
**commitments (1)**

119:16
**committee (153)**
5:21;14:22,25;16:14,
15;17:4,5,12,17;18:2;
19:6;23:13;25:6,22,25;
27:14;28:4,4,16,23;
29:21;30:14;37:20;
69:9,10,14;70:5;71:14;
72:12;73:9;84:23;85:7;
96:14;98:2;100:11;
101:13,15;116:19,20;
122:10,21,22;124:19,
19;127:17,23;130:2;
131:20;132:1;133:18,
19;134:8,14;135:3,7,
11,25;137:10;140:2;
141:4,10,16;143:7,12;
144:23,25;145:1,6,9,
11,13,14,15,16,22;
146:5,6,8;147:6,8,9,10,
11,13,14,18,20;148:7,
22,23;149:8;150:22;
151:11;152:3;154:8,9;
156:12,18,18,20;
157:15,20,21;158:15,
20;159:5,8,9,14,20,24;
160:12;161:22;163:19,
23;164:4,7,13,25;
165:12,13,25;166:23;
167:10,12,23;168:15,
15,25;169:1,4,13;
170:18,22;171:19,21,
24;172:15,17;173:11,
11,14;174:14,22,22;
175:7,10,21;177:2;
178:12,13,24;179:18
**committees (19)**
11:12,15;16:13,15,
19;20:18;37:18;84:8;
141:3;147:25;160:22;
165:10,11;166:24;
167:3;168:10,18;
171:25;172:18
**committee's (4)**
6:22;13:18;72:6;
130:12
**commodity (1)**
77:3
**common (1)**
158:8
**communicate (2)**
130:1;141:10
**communicated (1)**
138:12
**communities (5)**
78:16;156:24,25;
158:5;177:9
**companies (1)**
81:9
**company (10)**
82:24;86:3,23;102:6,
7,18;125:23;168:5;
174:19;177:7

**compared (2)**
168:20,21
**compensable (1)**
174:24
**compensated (2)**
73:10;173:23
**competent (1)**
22:10
**complain (1)**
24:23
**complained (1)**
78:9
**complaints (1)**
27:22
**completely (2)**
155:13;156:19
**complex (2)**
97:25;98:6
**complicated (1)**
25:3
**complies (1)**
125:7
**comply (4)**
91:9,13,14;125:10
**complying (2)**
92:1;125:8
**compromise (2)**
25:24;143:9
**concede (3)**
29:23;100:3,25
**Concededly (1)**
103:2
**conceding (1)**
35:2
**concept (1)**
25:25
**concern (10)**
9:1;39:4;128:1,4,9,
19,24;129:8;130:24;
134:12
**concerned (11)**
7:24;27:1;40:12;
107:15;136:12,17;
141:15;156:24;157:2,
16,25
**concerning (1)**
125:19
**concerns (10)**
8:12;17:8,23;105:17;
127:25;132:4;156:23,
24;161:5;166:20
**concession (1)**
136:21
**concessions (6)**
130:6;132:2;133:24;
135:4,6;138:4
**conclude (2)**
102:17;180:7
**concluded (2)**
146:5;180:9
**conclusion (1)**
87:8
**condition (8)**

39:11;79:22;80:22;
83:6;88:16,23;99:16;
103:3
**conditions (3)**
39:13;130:12,13
**conduct (3)**
84:6,6;87:1
**conducting (1)**
91:19
**confer (1)**
133:17
**conference (3)**
108:13;122:24;
139:14
**conferred (1)**
69:15
**conferring (1)**
127:22
**confirm (2)**
10:19;25:10
**confirmed (1)**
94:15
**Congress (9)**
151:7;152:7;153:1,
18;154:8;162:4,20,23,
25
**connection (1)**
18:9
**consensual (1)**
35:21
**consensus (1)**
137:21
**consent (2)**
94:1;130:12
**consented (1)**
25:11
**consequence (2)**
38:2;94:9
**consequences (12)**
39:6;40:23;83:16;
101:4,5,9,17,18;
107:25;110:10;131:17;
134:23
**consider (1)**
167:16
**considerations (3)**
17:10;100:1;107:13
**considered (2)**
30:4;162:1
**considering (1)**
93:18
**consist (2)**
152:3;160:2
**consistent (3)**
143:11;151:1;160:10
**consistently (1)**
118:1
**consisting (1)**
179:7
**consists (5)**
148:7;151:22;
153:11;155:3;169:2
**consolidation (1)**

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 186
of 205

92:23
**constantly (2)**
12:25;13:13
**constituents (2)**
165:9;172:8
**constitutes (2)**
107:6;113:17
**Construction (3)**
11:23;154:12;159:7
**constructive (5)**
81:4,4,18,20;136:15
**consulted (1)**
127:23
**consumed (1)**
85:7
**contact (1)**
6:10
**contemplates (1)**
170:13
**contend (1)**
176:9
**content (1)**
75:19
**contest (1)**
146:3
**context (5)**
94:13;101:19;102:6;
139:5;175:5
**contingent (1)**
88:4
**continue (7)**
110:12;122:19;
123:6;124:2;132:3,13;
168:3
**continued (3)**
132:19;135:9;143:4
**continuing (2)**
6:15;158:1
**contract (1)**
169:8
**contradiction (1)**
175:13
**contrary (2)**
77:7;166:3
**contribution (8)**
34:14;37:5;38:6,10;
173:16,20,22;174:3
**contributions (2)**
27:18;174:18
**control (18)**
23:13,16;25:15,15;
31:3,8,11;94:6,17;
98:22;99:10;121:2,8,
23;122:13,16;129:2,6
**controls (1)**
23:12
**convene (1)**
126:11
**convened (1)**
129:25
**convenience (1)**
105:13
**conveniently (1)**

143:4
**conversation (2)**
123:24;126:8
**conversations (1)**
87:7
**conversion (1)**
39:8
**convince (3)**
84:8;96:12;103:21
**cooperate (1)**
161:17
**coordinated (1)**
166:5
**cope (1)**
82:21
**core (2)**
18:3;136:16
**corner (1)**
106:2,2;176:6
**corporate (1)**
177:8
**Corporation (2)**
5:8;155:11
**correctly (1)**
21:16
**corresponding (2)**
13:7;18:18
**cost- (1)**
33:13
**costs (2)**
102:10;173:23
**council (1)**
177:22
**counsel (30)**
12:13,20;13:18;
14:12;16:16;20:18;
22:10;28:16;29:21;
77:24;82:4;87:7,7,16;
94:15,20;100:18;
101:18;115:22;123:13;
126:15;131:21;133:19;
135:15;138:17;139:14,
19;141:11;160:23;
161:1
**Counsel's (1)**
144:12
**counties (3)**
149:18,21;176:2
**country (1)**
138:9
**County (15)**
71:2,2,3,3,4,4,5,5,6,6,
7,7;82:12;144:12;
158:5
**couple (15)**
14:17,18,18,19;79:6;
84:25;90:16;110:14;
125:18;131:13;132:4;
135:19;141:24;144:18;
175:19
**course (17)**
5:13;6:19;11:18;
14:15;17:22;35:19;

37:8,10;40:13;83:13;
147:19;149:16;151:4;
153:7;155:16;161:18;
177:15
**Court (654)**
5:3,4,6,9,15,23;6:14,
18,21,24;7:2,5,8,17,24;
8:5,7,15,17,18,22;9:3,
6,9,12,25;10:3,6,10,13,
16,18;11:1,5,7,17,24;
12:1,2,8;13:20,22,25;
14:5,8,11;15:1,4,7,13,
17,23;16:4,7,10;17:11,
15,20,22,24;18:14;
19:20,25;20:3,5,7,22,
23;21:2,5,8,10,12,13,
15,21,23,25;22:1,3,6,7,
8,16,17,24;23:7,9,18,
22,25;24:2,4,7,9,13,16,
25;25:2,18;26:7,10,15;
27:9,17,22,24;28:3,8,
10,12,20,23;29:5,7,10,
13,17,18,21;30:3,6,18;
31:10,20,25;32:5,7,12,
19,23;33:3,15,18,22,
25;34:4,6,9,14,20;35:2,
5,8,11,14,19;36:3,9,12,
14,16,21;37:1,8,10,16,
20,25;38:8,11,17,20,
23;39:6,10,18,21,24;
40:2,6,11,17,20;69:5,8,
18,22;70:1,6,11,19,25;
71:11,14,17,20,22;
72:2,8,14;73:4,7,11,18;
74:6,8,10,14,18,21;
75:1,4,7,13,23,24;76:2,
12,20,23;77:1,8,10,12,
19,21,25;78:6,9,22,24;
79:7,14,18,24;80:5,8,
19;81:1,6,12;82:11,14;
83:4,8;84:2,4,15,17;
85:2,5;86:5,9,12;88:4,
7,9,13,19,22;89:8,16,
20,25;90:10,23;91:2,5,
11;92:3,6,11,20,22;
93:1,5,8,12,22;94:7,10,
12,21,23;95:2,7,9,11,
13,16,21;96:2,4,7,9,12,
12,16,17,21;97:1,4,8,
13,16,24;98:3,7,13,22,
25;99:3,10,13,16,20,
22,23;100:2,3,19,21;
101:2,16,18,21,25;
102:12,15,24;103:5,8,
16;104:13,16,20,23;
105:2,6,9,19;106:3,5,
11,15,20,23;107:15,21,
24;108:3,6,8,10,14,20,
23;109:1,3,7,9,14,15,
17,20,24,24;110:1,5,7,
9,11,14,17,19,21,24;
111:1,3,6,8,20,22,25;
112:8,10,12,20,22,24;

113:19,25;114:9,15,20;
115:4,7,11,15,18,20;
116:2,7,10,13,16,18,
23;117:4,7,11,15,19,
24;118:15,24;119:2,18,
22;120:7,12,19,21,24;
121:16,17,19,22;123:8,
11,18,20,22;124:5,8,
12,14,17,22;125:3,9,
12,25;126:3,9,24;
127:3,7,10,18;129:5,9,
11,11,16,22,25;130:3,
6,16,18;131:3,11,15,
20,24;132:7;133:4,7,9,
13,16;134:9,11,13,15;
136:1,3,6,9,11,16,18,
20,23;137:1,4,7,13,16,
19,21;138:2,6,8,11,14,
22,24;139:1,8,11,13,
17,19,22;140:1,5,10,
20,22,24;141:19,21,25;
142:2,5,9,14,20,24;
143:2,2,18,22;144:1,4,
7,14,19,21;145:13,17,
20,25;146:10,15,17,19;
147:6,9,12,16,22,24;
148:5,10,12,14,17,18,
20;149:1,5,16;150:1,4,
7,9,12,14,17,20;151:5,
16,21,24;152:2,6,19,
24;153:1,5,9,12,15;
154:2,5,14,21;155:3,7,
9,19,22;156:10;
157:13;158:16,19,22;
159:3,11,17,22,23;
160:1,4,14,16,19,21;
161:2,10,18,22;162:2,
7,11,15,19;163:3,6,12,
14,20;164:11;165:6,11,
14;166:15,17,21;167:2,
5,15,17,19;168:17;
169:1,6,9,11,15;170:1,
5,16;171:1,3;172:3,13,
19,24;173:4,9,24;
174:9,12;175:4,6,14,
16;176:11;177:1,5,12,
15,19,22;178:14,16;
179:17,24;180:6
**courtroom (6)**
77:23;85:1,3;86:2,
15;143:6
**courts (2)**
21:3;149:24
**Court's (19)**
16:11;21:18;22:11,
13;33:10;39:4;69:16;
77:7;95:25;96:18;
105:16;123:4;127:25;
128:10,24;137:10;
146:12;161:4;162:3
**covenant (4)**
31:24;91:9;118:21;
125:6

**covenants (4)**
19:11;24:24;31:14,
18
**covered (3)**
105:14;172:18;
173:23
**CPUC (20)**
21:7;22:9,12,17;
23:6;26:25;87:13,18,
22,24;88:2,6,16;89:1;
90:11;96:17;98:12;
102:9;170:16;177:17
**CPUC-excluded (3)**
111:14,15;112:15
**CPUC's (4)**
20:25;22:24;128:21;
129:15
**craft (2)**
106:15;108:24
**crafted (1)**
106:14
**Cravath (2)**
15:11;105:21
**created (1)**
162:7
**creates (1)**
174:15
**credit (15)**
9:18;16:2;19:11;
31:16,23;91:1,2,4,8;
94:4;95:18;102:18;
105:14;118:5,12
**creditor (54)**
75:7,8;76:19;89:21;
90:1;149:13;156:5;
157:1,2,2,10,18;159:5;
168:10,14;169:17,19,
19,21,22;170:11,13;
171:6,8,10,13,16;
172:6,9,11,14,15,16,17,
22;173:7;174:1,1,2,4,6,
16,19,21,21;175:23,24;
176:7,8,16,24;178:2,5,
11
**creditor-related (1)**
176:9
**creditors (73)**
81:11,16;103:12;
104:25;105:1;116:20;
122:10,21;124:19;
132:1;144:25;145:1,9,
11;147:11,25;148:2,3;
149:8;150:22;151:18;
152:3,5,5,6,13,13;
153:16,16;154:14;
155:6,8,14,19,24;
156:18,20;157:20;
158:24;163:23;164:4;
165:5;167:23;168:12,
15,16,16,21,22,22,25;
169:5,12,14;170:4,9;
171:17,18,19,25;172:8;
173:10;174:1,2,8,18;

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 187
of 205

175:10,11,21;177:2,18;
178:12;179:8
**creditors' (12)**
14:25;16:13;17:4;
25:22,25;84:8;100:11;
133:18;163:18;167:10;
168:18;177:1
**creditor's (1)**
131:21
**crew (1)**
146:24
**criminal (3)**
91:20,22;92:10
**crisis (2)**
86:7,11
**critical (3)**
80:9;103:16,18
**cross (1)**
174:24
**crossing (1)**
171:23
**cross-section (1)**
169:13
**culture (1)**
149:17
**cure (2)**
92:16;93:21
**current (1)**
73:12
**currently (2)**
91:19;92:1
**cushion (1)**
26:10
**customary (2)**
19:22;31:7
**customers (3)**
9:18;18:7;102:13
**cut (2)**
150:9;172:7
**cutting (2)**
139:15;169:2

**D**

**damage (7)**
71:8;157:3,22;
166:12;172:25;176:13;
178:4
**damaged (3)**
156:7;157:5;171:5
**damages (4)**
152:25;157:7;
166:12;176:17
**dampens (1)**
100:24
**date (8)**
13:4;23:19,20,23;
77:5;78:13;124:24;
132:13
**Dave (1)**
10:20
**day (27)**
5:17;6:2;7:25;8:11,

11;15:15,21;20:16;
21:5;23:15;25:21;27:3;
70:15;80:6,9;91:17;
108:13,16;109:14;
117:16;125:14;128:16;
135:22;141:6;146:23;
174:24;180:8
**Daylight (1)**
143:5
**days (30)**
19:23,25,25;20:1,2,
9;92:18;108:12,13;
120:5;122:20;128:1,1,
3,7,12,17;129:12,14;
133:25;134:1,2,4,23;
139:20;140:11,14,16,
17;141:1
**deadline (3)**
24:10,14;124:25
**deal (16)**
11:11;26:20;30:20;
82:19;98:5;114:24;
122:5;125:18;132:20;
139:15;140:19;143:19;
165:17;177:9,11;
178:23
**dealing (2)**
73:12;150:2
**deals (1)**
102:1
**dealt (1)**
31:22
**death (1)**
162:12
**debating (1)**
178:7
**debit (1)**
9:18
**debt (15)**
29:1,6,11;31:15;
32:3,7,9,11;33:4,12;
34:12;35:17,22;
118:18,19
**debtor (56)**
22:12;26:20;32:1,10;
36:10;80:11;82:17;
83:10,18;84:3,7,11;
85:18;86:6;88:2;89:2;
91:12,25;92:16;93:16,
18;94:5;95:6,10,19,23;
97:17,17;98:4,18;
99:16;100:24;102:5;
103:10,20,22;104:2,5,
22,23;105:20,22;
110:12;112:5,15;
125:7,8;130:10;131:4;
133:19;143:9;150:6;
156:12;166:23;174:5;
176:4
**debtor-creditor (2)**
170:20;172:1
**debtors (30)**
5:12;6:10;14:10;

15:12,17,25;16:17;
17:7;19:4,13;20:14;
30:9;38:3,5;69:2;
82:10;87:7;97:13;
106:21;107:3;113:9;
116:17;128:11,20;
129:6;131:17;135:6;
141:22;150:22;163:16
**debtors' (11)**
18:6,11;19:1;72:6;
78:13;87:16;131:18;
141:11;160:23;161:1;
165:15
**debtor's (4)**
23:14;112:19;
113:13;119:8
**debts (1)**
19:17
**decide (8)**
21:13;81:24;82:2;
91:25;102:20;148:20;
150:20;178:8
**decided (3)**
70:13;102:4;110:1
**decides (1)**
93:19
**decision (20)**
21:4,8;74:1;75:14;
81:23;82:18;98:5,13;
99:17;100:16,16;
101:2;125:1;135:8,14;
137:17;138:20;141:17;
143:15;178:22
**decisions (4)**
83:15,16;84:9;
137:14
**declaration (6)**
18:17,19;119:5,6;
165:22,22
**declare (2)**
40:23;91:24
**declared (1)**
100:10
**declaring (1)**
119:16
**declined (1)**
28:5
**declining (1)**
141:9
**dedicated (1)**
134:7
**deemed (2)**
121:2,21
**default (29)**
19:10,14,15;31:11,
19;32:2;35:24;36:5,17,
24;37:6;38:14;39:7;
40:6,23;88:11;90:11;
91:24;93:20;95:4;
107:5,18,25;108:1;
109:12,17,21;110:6;
117:1
**defaulted (1)**

152:15
**defaults (1)**
95:10
**defense (1)**
174:2
**defer (2)**
7:13,21
**deferred (1)**
9:7
**defined (5)**
90:22;92:6,7;113:21;
153:7
**definition (3)**
94:24;146:9;153:19
**definitions (2)**
152:9;160:10
**degree (1)**
173:13
**Delaware (1)**
74:12
**delayed (1)**
71:14
**delete (1)**
12:22
**delicate (2)**
74:22;100:13
**delivery (1)**
117:13
**demonstrate (5)**
96:16,17;165:19,20,
23
**demonstrated (2)**
82:23;167:13
**demonstrating (1)**
166:9
**demonstration (1)**
34:6
**denied (1)**
180:2
**Dennis (1)**
5:5
**dense (2)**
115:3,18
**deny (3)**
143:15;179:13,14
**denying (2)**
170:4;174:7
**Department (2)**
144:17,19
**depending (1)**
36:17
**depends (1)**
109:17
**describe (2)**
103:19,21
**described (1)**
119:11
**describes (1)**
18:22
**describing (1)**
95:2
**designees (1)**
160:8

**desire (1)**
130:15
**despite (1)**
164:21
**destroyed (1)**
78:16
**destruction (1)**
149:15
**determination (9)**
73:24;99:24;106:18,
18;109:16;120:5;
121:1,4,9
**determine (5)**
20:22,23;21:19;95:6;
96:1
**determined (2)**
22:25;121:21
**determines (3)**
22:1;98:7;108:14
**determining (3)**
95:8;121:1,23
**devastating (2)**
149:19;152:25
**Development (1)**
71:3
**develops (1)**
38:7
**devious (1)**
29:13
**dichotomy (3)**
23:2;173:8;174:11
**died (1)**
85:7
**differ (1)**
156:12
**difference (2)**
76:3;178:5
**different (33)**
21:23;25:11,12;
32:21,23;35:21;74:15;
79:6;80:13;83:19;
86:10;100:5;110:2;
120:10;149:6;151:15;
156:5,20,25;157:17,21;
158:12;165:8;168:17;
22,23,24;169:18;
173:1;174:13;177:25;
178:9,13
**differing (1)**
98:16
**differs (1)**
156:11
**difficult (4)**
107:14,19;130:19;
141:22
**digest (1)**
17:1
**dignity (2)**
75:23;76:4
**diligence (1)**
16:20
**diminish (1)**
166:14

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) creditors' - diminish

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 188
of 205

**DIP (182)**
5:20;11:12;13:24;
14:24;15:1,14,16,18;
16:12,21;17:5,10;18:9,
10,12,15,23,24;19:8,
15,21;21:17;23:13,16,
21;24:11,18,22;25:2,9,
12,24;26:2,12,23;27:2,
2,8,15,15,20;28:5,16;
29:14;30:10,11,24,24;
31:6,8;32:2;33:18;
34:11,11,12,24,25;
35:12,14,25;37:6,6,7;
38:13,15,20;39:5,7,15;
40:6,10,21,22;71:22;
72:15;73:3;74:1;76:9,
11,14;77:7;79:10,12,
19,22,25;80:14,17;
81:17,22,25;82:2;83:6;
85:17,18,21;86:1,2,19;
87:4,15;89:7,7,12,25;
90:8;91:16;102:1,2,4,
5;103:3;104:18;
105:25;107:1,4,8,10,
10,17,18;108:8;109:4;
111:13;112:10,25;
113:1,1,5,10,12,14,14,
15,17,18,21,21,24;
114:2,3,6,6,10,17;
116:25;118:5,12,12,19,
23;119:6,7,24;121:2,7,
7;122:10,22,24;126:16,
22;127:15;128:14,15,
15;131:5,18;133:3,19;
134:19;135:5,17;
136:20;139:3,6;
141:23;143:4,8,16;
150:12,14

**DIPs (2)**
79:15;136:7

**DIP's (1)**
138:17

**DIP-secured (1)**
115:14

**DIP-termination (2)**
108:14;119:2

**dire (1)**
134:24

**direct (2)**
151:11;158:19

**directing (1)**
25:5

**direction (1)**
169:18

**directly (1)**
166:3

**dis (1)**
147:7

**disagree (1)**
160:5

**disagreements (1)**
14:14

**disapprove (3)**

123:15;141:3,14

**disbanded (1)**
147:9

**disclosure (1)**
24:20

**discrete (2)**
28:24;89:4

**discretion (2)**
22:18;146:17

**discretionary (2)**
156:13,16

**discussed (6)**
15:19;25:18;27:14,
14;76:8;160:25

**discussing (3)**
28:2;82:3;128:14

**discussion (4)**
123:3,5;124:22,23

**discussions (5)**
6:16;7:11;8:24;
87:10;179:6

**disguised (1)**
30:5

**dismiss (1)**
101:8

**dispose (1)**
93:8

**disposition (1)**
93:14

**dispositions (2)**
93:10,15

**dispossessing (1)**
106:20

**dispute (3)**
109:8;138:5;166:11

**disputed (2)**
18:5,8

**dissonance (3)**
85:16;86:24;87:3

**distance (1)**
139:20

**distances (1)**
130:22

**distinctions (1)**
168:19

**distinguished (1)**
147:13

**District (15)**
7:20;71:2,4,7;74:11;
109:24,25;110:20,21;
111:3,4,5,5,8;147:2

**districts (1)**
149:21

**divided (1)**
155:9

**docket (13)**
12:23,24;13:5,5,8,
11;14:1,23;16:24;
20:14,15;70:7,20

**document (7)**
12:23;13:6,7;29:25;
98:10;100:10;128:23

**documents (3)**

37:4;119:7;129:4

**dollar (6)**
72:24;73:22,25;
74:24;86:1,3

**dollars (29)**
9:19,21;11:13;15:20;
16:1,2;32:13,18,24;
33:1;35:15;36:22;72:5,
18;74:4;75:3,12;79:3,
7;80:25;81:8,10;
100:23;103:11;117:20;
118:13,17,17;119:10

**done (12)**
6:2;85:17;86:9;
88:18;98:2;132:20;
142:6,17;158:2;
161:11;165:16;174:20

**don't' (1)**
30:2

**door (2)**
79:4;178:8

**doubts (1)**
156:5

**down (23)**
12:3;25:16;39:14;
107:9,20;110:13;
114:16;120:2;125:18;
131:11;132:19,20,21,
24;136:16;138:1;
145:21;157:11;160:1;
161:8;166:15,17;172:7

**draft (1)**
29:18

**drafts (1)**
6:11

**drawing (1)**
101:11

**drill (1)**
141:13

**drop (1)**
26:5

**drop-dead (3)**
23:18,20;133:10

**due (1)**
119:6

**Dumas (107)**
69:11,13,13,20,25;
84:17,21,21;85:3,6;
86:8,11,14;88:5,8,12,
14,20,24;89:10,18,23;
90:4,13,24;91:4,7,12;
92:5,9,12,21,23;93:3,6,
10,13,25;94:8,11,13,
20,22;95:1,3,8,12,15,
17,22;96:3,6,8,11,14,
25;97:2,5,12,15,17;
98:15;99:2,12,14,21;
100:18,22;101:15,22;
102:4,13,16,25;103:6,
9,18;104:15,19,21;
105:1,3,7,23;109:20;
114:1,15;117:22;
125:5;126:6;127:22;

129:22,24;130:5,9,17;
132:14;133:16;134:5,
10,12;136:14;138:2;
141:10;143:20,21;
179:5

**Dumas' (1)**
173:11

**Dumas's (2)**
122:11;128:19

**duplicative (1)**
173:13

**during (5)**
40:13;106:9;108:11;
109:11;134:16

**duties (2)**
159:15;175:10

**duty (3)**
143:23;164:16,19

**E**

**earlier (4)**
31:17;118:9,14;
134:6

**early (3)**
12:4;70:12;71:17

**easier (1)**
91:7

**easy (1)**
133:21

**economic (3)**
131:16;156:23;158:2

**Edison (1)**
102:14

**effect (5)**
91:15;107:6;109:3;
149:19,19

**effective (1)**
33:14

**effort (1)**
179:18

**eight (1)**
154:14

**either (16)**
14:15;15:8;91:21;
123:12;128:13;135:5,
22;139:15;140:19;
141:3;143:15;145:17;
157:15;172:15;173:11;
179:11

**electricity (2)**
18:7;39:14

**electronic (2)**
12:18,18

**element (1)**
133:1

**elements (1)**
97:9

**elephant (3)**
39:19;40:9,9

**eligible (2)**
146:8;158:12

**else (15)**

11:5;38:9;138:2,17;
140:23;142:6;153:21;
161:13;164:8;166:22,
24;172:10;176:20;
179:8,10

**emotions (1)**
151:3

**employment (2)**
6:3;7:19

**enacted (1)**
162:5

**encompass (1)**
113:12

**encompassed (3)**
113:23;114:12;115:2

**end (8)**
14:16;24:2;109:14;
112:18;122:6;140:14,
16;179:21

**energy (2)**
95:24;179:19

**enforce (7)**
87:19;88:5;98:11;
99:11;101:8;120:17;
129:15

**enforcement (1)**
27:10

**enforcing (1)**
99:7

**engage (1)**
83:10

**English (1)**
179:6

**enough (5)**
6:5;29:15;82:10;
86:16;128:12

**ensure (1)**
161:16

**ensuring (1)**
85:11

**enter (2)**
15:13;91:18

**entering (1)**
129:3

**entire (4)**
101:11;133:18;
135:17;141:10

**entirely (2)**
89:11;170:12

**entities (40)**
70:23;72:12;83:23;
129:3;144:10,23;
146:5;147:1,17,19;
148:24;149:25;150:5;
152:9,13,18;153:19;
155:14,16,23;156:6,17,
19,21;157:8,9,23;
159:13,15;161:7;
162:18;163:10;164:22;
165:24;166:12;168:2;
171:21;173:6,18;
178:11

**entitled (3)**

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 189
of 205

35:23;171:18;178:1
**entitlement (1)**
34:7
**entity (18)**
21:5;144:25;145:10;
146:7,24;147:21;
148:3,21;149:7,11;
158:11,14;159:7;
164:17;169:23,24;
171:17,22
**entity's (4)**
126:14,17;127:4,16
**environmental (1)**
128:25
**equities (2)**
85:25;86:20
**equity (6)**
97:10;101:24;
147:25;148:2;168:12;
172:1
**equivalents (1)**
113:20
**Eric (1)**
85:1
**error (2)**
9:25;163:7
**essential (1)**
110:12
**Esserman (131)**
70:8,10,17,21,22;
71:1,12,16,18,21,24;
72:3,9,15;73:6,15,19;
74:7,9,13,17,20,25;
75:2,6,9,20;76:6,22,25;
77:6,9,11,17,20;127:4,
6,9,12;143:23,24;
144:2,6,8,8,9,15,20,22;
145:15,19,24;146:2,14,
16,18,20;147:8,10,15,
17;148:9,11,13,16,19,
25;149:2,6,17;150:2,5,
8,11,13,15,19;151:4,
14,17,22;152:1,5,7,17,
23,25;153:4,6,10,14;
154:1,4,17,20,24;
155:5,8,18,21;156:3,
15;157:14;158:21;
159:10,12,18,25;160:3,
13,15,17,20;163:24;
164:6,22;166:18;
170:7,21;175:16,18;
176:25;177:4,6,13,16,
20;178:10,15,16;
179:25
**Esserman's (4)**
69:20;165:21;
170:14;174:13
**estate (7)**
76:24;77:2;103:14;
104:10,10;112:19;
132:25
**estates (2)**
131:18;167:16

**estimate (3)**
9:15,20,25
**estimated (1)**
79:13
**et (12)**
6:22;92:24,25;97:7;
108:15,15;113:2,21;
162:22,22;178:24,24
**evaluation (2)**
90:21;102:21
**eve (2)**
78:18,21
**even (31)**
14:13;18:2;19:25;
20:23;29:4,15;31:12;
38:18;75:21;85:20;
90:19;96:1;98:17,20;
104:4;116:11,14;
120:13;132:16;141:4;
144:23;146:20;151:6;
153:23;157:1;159:8;
165:11,12,18;169:17,
19
**event (29)**
19:9,14,14;20:23;
21:19;22:2,25;31:19;
39:7;90:22;93:20;94:7,
7;95:3;97:20;98:21;
99:18;108:14;113:24;
116:25;117:1;119:3;
120:6,12,20;128:5,9,
17;129:9
**events (5)**
90:25;97:19;107:4;
128:2;153:8
**everybody (10)**
14:3;16:25;20:13;
36:23;76:4;86:15;
143:18;157:11;175:17;
180:2
**everyday (1)**
96:23
**everyone (9)**
5:6;13:6,13;126:5,9,
24;143:2;163:25;180:7
**evidence (1)**
165:20
**Evidentially (1)**
147:5
**evidentiary (1)**
139:22
**exact (1)**
162:5
**Exactly (17)**
17:25;40:15;78:1;
86:8;94:8;96:11,20;
97:12;125:13;133:25;
144:6;152:18;161:20;
162:14,25;167:1,4
**example (12)**
13:8;26:25;32:9,9,
14;39:13;40:24;90:25;
92:2,13;103:18;112:18

**examples (2)**
90:16;97:22
**exceed (1)**
32:13
**except (9)**
70:19;91:13;135:12;
153:10,25;154:1,2;
177:4,6
**exceptions (3)**
27:4;93:23;152:8
**excess (1)**
11:13
**excluded (7)**
111:16,18;112:5,13;
153:22;162:10;163:11
**excluding (2)**
162:11,24
**exclusio (1)**
153:23
**exclusion (3)**
111:16,25;112:1
**exclusive (1)**
21:4
**excuse (7)**
32:18,25;34:11;
77:14;120:24;128:16;
148:23
**exercise (7)**
88:15;96:19;107:2,
11;120:1,3,11
**exercised (1)**
18:9
**exhausted (1)**
27:11
**exist (1)**
163:22
**existed (1)**
77:5
**existing (5)**
158:20;165:10;
168:10;172:18;178:12
**exit (3)**
31:4,5;32:5
**expect (1)**
39:15
**expectation (1)**
124:14
**expected (1)**
91:15
**expense (5)**
34:15,16;35:7;36:7;
37:15
**expenses (1)**
86:13
**experience (2)**
25:11;166:22
**experienced (2)**
135:13,15
**expired (2)**
120:15,19
**explain (3)**
111:11,11,17
**explained (2)**

87:14,15
**explanation (2)**
98:9;115:20
**explanations (1)**
125:17
**explicit (1)**
161:9
**explicitly (2)**
162:10;163:11
**explore (2)**
82:9,17
**explored (1)**
81:19
**expose (1)**
131:4
**exposure (1)**
130:25
**expressed (2)**
128:4;178:20
**expressing (1)**
134:7
**extend (2)**
33:19;89:14
**extension (1)**
24:8
**extensive (1)**
82:1
**extent (7)**
5:18;13:1;34:13;
69:2;82:22;91:13;
166:19
**extra (3)**
71:18;162:11,23
**extraneous (1)**
134:19
**extraordinary (9)**
149:4,5,22;150:25;
151:10;152:2,3;
163:25;164:4

**F**

**facilities (5)**
35:14;85:25;113:1,
14;171:7
**facility (22)**
15:18;16:21;17:5;
18:11,12;23:24;31:16;
35:25;39:5,7;79:11,12,
19,22;80:1,14,17;
95:20;107:8;114:11;
131:6,18
**fact (19)**
18:5;20:17;23:14;
72:11;77:3;83:14;
87:20;96:15;99:23;
121:5;133:7;145:1;
147:22;156:17;157:6;
166:2;170:7;171:6,11
**facts (2)**
121:10,14
**factual (1)**
122:3

**fail (2)**
102:8,9
**failure (2)**
40:25;91:14
**fairness (1)**
92:15
**faith (4)**
18:15,16,22;138:16
**faithful (3)**
154:22;158:17;160:7
**fall (1)**
112:3
**falls (3)**
83:7;148:18;170:23
**false (1)**
107:4
**familiar (1)**
72:17
**fan (1)**
18:14
**far (4)**
17:16;75:8;154:20;
173:1
**fast (1)**
158:7
**fate (1)**
33:25
**father (1)**
85:7
**faulting (1)**
130:18
**favor (1)**
146:4
**favorable (4)**
18:25;25:2;26:12;
81:24
**favorably (1)**
26:14
**February (6)**
15:25;16:14,15,25;
144:16;145:12
**fee (1)**
84:12
**feel (6)**
19:10,13;105:12;
130:21;137:12;157:19
**feelings (1)**
151:3
**fees (13)**
9:16,17;72:5;74:4,5,
10;75:23,24;116:15,
21;131:5;166:18;
167:16
**felt (2)**
26:20;145:6
**few (9)**
19:3;105:14;114:16;
122:20;124:5;135:20;
143:10;156:2;169:2
**fiduciary (2)**
164:16,19
**fifteen (4)**
32:17;79:9;93:23;

138:3
**fifty (2)**
100:8;123:24
**fifty-two (1)**
84:10
**figure (1)**
128:13
**file (9)**
10:1;11:23;13:10;
20:14,15;25:13;71:9;
104:23;167:15
**filed (20)**
8:10,14;11:11;12:25;
14:14;15:25;16:23,25;
17:4,6;20:17;71:13,17;
79:3;82:10;93:17,18;
116:24,25;165:22
**files (2)**
13:8;174:1
**filing (7)**
6:13;12:18,21;13:3;
24:20,20;78:21
**fill-in-the-blank (1)**
152:4
**final (11)**
5:18;9:23;15:14;
23:21;24:14;78:17,20;
79:5;105:19,22;133:2
**finality (1)**
135:11
**finally (1)**
128:23
**finance (2)**
40:18;81:22
**financers (1)**
98:10
**finances (1)**
83:5
**financial (14)**
16:16,17,20;24:24;
39:10,12;85:23;86:18,
22;99:15;101:20;
152:15;156:23;169:5
**financing (35)**
13:24;15:16;16:21;
17:10;18:4,5,18,24;
23:21;24:18;25:4;27:8;
31:5,24;32:5,16;33:8,
14;34:12;35:12,17;
38:14;40:21;72:15;
74:23;83:7;104:18;
105:24;110:12;118:3,
4;121:7;122:4;131:5;
140:18
**find (12)**
31:21;76:14;79:2;
87:17;90:5;94:8;
102:10;106:23;107:19;
124:1;139:6;142:3
**finding (13)**
18:16,18;94:6;
111:10;121:10,17;
122:1,2,4;128:25;

129:1,2,5
**findings (3)**
18:15;97:5;137:10
**fine (24)**
5:21;8:17;9:12;10:4;
11:1;12:5,10;92:3;
100:14;101:10;112:22;
113:25;124:25;128:25;
132:18;133:20;135:5,
6,22;138:4,18;139:20;
140:22;180:1
**finished (1)**
70:14
**finishing (2)**
78:12;79:23
**fire (22)**
17:12,16;27:18;
69:19;77:22;78:2,14,
17;81:3,3,10;85:7;
103:6;105:4;169:18,
22,23,24;170:2;
172:25;176:18,23
**fires (2)**
160:5;166:13
**firm (6)**
6:21;10:20;12:13;
13:18;144:9;165:7
**firms (1)**
166:8
**first (40)**
5:14,17,20;6:2,2,12;
7:25;8:9,11;14:5,21;
15:15,20;18:1;19:5;
23:15;25:21;26:3;27:3;
34:23;70:9;73:17;
75:10,11;78:12;80:6,8;
84:25;89:3;117:5;
119:15;127:5;142:23;
144:13;145:3,7;
158:23;161:1,3;162:5
**fit (5)**
36:19;130:23;
152:19;175:2;178:22
**fits (1)**
113:21
**five (8)**
20:9;32:22;35:14;
72:18;85:22,25;
100:23;101:10
**five-and-a-half (1)**
73:13
**fix (4)**
26:16;157:14;
171:10;172:24
**fixes (2)**
176:5,17
**fixing (3)**
176:16;178:5,5
**flexibility (3)**
16:6;31:17;32:16
**flexible (2)**
19:11;26:20
**flowed (1)**

112:14
**fly (2)**
135:13;164:11
**focus (11)**
71:24;148:8;149:2,
19;150:17;154:3;
156:16,19;157:9,16;
159:19
**focused (5)**
145:4,5;151:8;
157:21;159:15
**focusing (3)**
73:19;174:12;176:21
**fold (1)**
156:16
**folks (2)**
135:5;155:24
**follow (1)**
179:25
**following (1)**
122:8
**footer (1)**
12:23
**footers (5)**
12:16,16,18,19,22
**forbid (1)**
35:19;40:13
**force (2)**
95:6;100:16
**forced (2)**
100:6,7
**foreclosed (1)**
87:14
**foremost (1)**
18:1
**foresting (1)**
172:6
**forgettable (2)**
70:18,19
**forgetting (1)**
69:23
**forgot (5)**
13:25;15:1;70:14,14,
20
**forgotten (2)**
7:22;12:5
**form (5)**
27:12,13;32:11;
170:22;179:22
**formally (1)**
141:13
**formation (1)**
25:21
**formed (5)**
16:13,14,15;144:24;
145:2
**formula (1)**
104:1
**for-profit (1)**
156:22
**forth (2)**
146:4;166:4
**forums (1)**

170:17
**forward (8)**
11:17;103:14;129:7;
131:7,19;176:14;
177:3;178:6
**forward-looking (1)**
129:1
**found (4)**
87:1;120:20;146:9,
10
**foundation (3)**
18:15,20;122:1
**four (3)**
33:9;37:17;167:2
**fourteen (3)**
154:15;164:7,14
**franchisees (1)**
168:21
**FRANCISCO (1)**
5:1
**frankly (2)**
85:24;132:5
**free (6)**
98:11;105:12;
108:17;114:24;122:14;
138:9
**freeze (5)**
119:7,12,20;120:7,
17
**Friday (2)**
8:14;11:11
**front (4)**
13:4;25:18;128:23;
137:24
**full (2)**
16:19;25:10
**fully (2)**
76:8;81:19
**fun (1)**
174:4
**function (4)**
21:18;81:24;167:12;
178:2
**fund (2)**
78:17;79:5
**funding (3)**
18:4;104:11,12
**funds (6)**
113:3,3,4,4,6,19
**fungible (1)**
113:12
**further (15)**
33:10;102:24;119:5;
123:3;124:24;128:14;
130:4,8,8;132:18;
133:20;135:6;138:18;
141:5;143:10
**future (6)**
88:10;172:20;173:1;
174:25;176:23;178:6

**G**

**gaining (1)**
145:3
**gas (7)**
18:6;93:19,25;97:23,
24;98:7;109:21
**gating (1)**
145:8
**gave (3)**
71:14,18;97:22
**general (8)**
5:23;32:24;76:13;
81:11;84:2;128:3;
157:18;172:16
**generally (1)**
93:15
**gentleman (3)**
10:14;11:19;117:22
**gesture (1)**
104:5
**get-out-of-jail-free (1)**
121:6
**gets (3)**
72:20;106:1;175:12
**given (3)**
78:7;95:22;134:20
**gives (3)**
31:2,8;132:5
**giving (2)**
26:16;122:12
**God (2)**
35:19;40:13
**goes (3)**
73:16;153:24;157:6
**Good (37)**
5:6,11;6:5,9;10:18;
11:21;15:7,10;16:7;
18:15,16,22;26:13,18,
20;74:21;81:7;85:5;
86:21;102:1;106:1;
116:9;127:13;131:5,
15;135:18;138:16,19;
143:22,22;144:14;
152:20;160:18;163:15;
174:20;177:5
**good-faith (1)**
111:10
**Goodman (2)**
85:1,2
**goods (1)**
157:5
**GOREN (10)**
6:7,9,9,15,20,23;
7:10,23;8:4,6
**gotcha (2)**
28:10;173:9
**Gotshal (2)**
5:12;163:16
**governmental (17)**
83:22;152:9,12,16;
153:25;155:14,23;
158:20;159:7,8;
160:12;162:21;163:10;
164:16;169:24;172:20;

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 191
of 205

179:17
**governs (1)**
31:24
**grammar (1)**
88:25
**grant (2)**
143:15;173:21
**granted (2)**
21:14;34:15
**granting (3)**
12:1;19:7;87:18
**grateful (1)**
136:21
**great (3)**
87:21;116:7;143:24
**grid (2)**
39:14;40:25
**group (8)**
73:9;77:25;135:17;
138:3;140:21;156:5;
166:5;177:2
**groups (2)**
78:20;157:10
**grownup (1)**
142:6
**guarantees (3)**
152:14,22;155:23
**guess (16)**
22:22;29:14;73:25;
76:3,14;99:8;119:14;
133:23;135:22;141:12,
12;145:17;169:15;
171:3;178:3;179:21
**guidance (1)**
5:13;122:24
**guidelines (4)**
74:11,12;77:7,12
**guy (1)**
26:15
**guys (3)**
138:19,19;155:12

**H**

**half (6)**
23:2;35:15;103:11;
123:11;126:10;142:20
**hall (1)**
101:9;139:14
**hallway (5)**
123:24;124:16;
126:8;127:22;139:13
**hamstrung (1)**
33:11
**hand (6)**
26:12,21,22;85:17;
86:24;131:6
**handed (1)**
171:9
**handle (1)**
14:9
**hang (3)**
92:25;93:6,7

**Hansen (40)**
74:22;122:17;123:5,
20,21,23;124:7,9,13,
21;125:2,4,21;126:4,7;
131:1;138:22,23,25,25;
139:2,9,12,16,18,21,
25;140:4,6,10,12,21,
23;141:7,18,20,22;
142:1,3,8
**Hanson's (1)**
98:9
**happen (7)**
40:24;69:3;94:11;
106:6;119:4;124:17;
133:25
**happened (5)**
39:25;94:6;119:19;
129:4;140:15
**happening (2)**
13:13;126:2
**happens (6)**
98:8,9;129:12,18;
140:14;166:24
**happy (5)**
17:23;28:2;69:3;
105:17;130:1
**hard (4)**
29:3;35:9;80:17;
146:11
**harm (2)**
160:18;172:25
**hat (3)**
171:16,17;172:22
**HAWKINS (27)**
77:23,24;78:1,1,7,11,
23,25;79:8,17,22;80:2,
7,14,18,20;81:2,8,12;
82:8,12;83:2,5,21;
84:14,16;104:16
**health (2)**
86:23;170:10
**hear (13)**
24:7;30:19;38:1;
69:9;86:4;94:23;116:4;
123:12,13,14;125:19;
126:19;160:21
**heard (28)**
6:4;8:19;10:6,13,17;
11:19;14:2,2;70:2,8;
72:10;74:22;82:1;
106:10;115:22;122:9,
11,11;124:22;130:6,
25;132:9;133:24;
136:3;137:24;167:7,8;
175:19
**hearing (31)**
5:18,20;6:25;7:12,
20;8:11,11;13:4,4,9;
15:15,21;17:2;25:21;
70:12;109:11;122:20;
123:6;129:25;130:4,8,
8;132:16,19;134:4;
135:9;136:15;138:17;

143:11,15;180:7
**hearings (4)**
13:1;16:3;80:6,6
**held (3)**
164:21,22;165:9
**help (3)**
13:13;78:15;176:6
**helped (1)**
77:13
**Here's (1)**
14:11
**herring (1)**
25:8
**hesitation (1)**
122:12
**Hey (1)**
8:3
**hierarchy (1)**
34:10
**high (4)**
39:13;79:8;107:5;
179:6
**higher (1)**
16:5
**highly (1)**
76:11
**Hill (2)**
77:24;78:1
**history (5)**
85:22;111:17;163:8,
10;179:12
**hoc (1)**
167:12
**hold (3)**
33:22;148:5;153:13
**holders (6)**
101:24;148:1,2;
164:25;168:12;172:1
**holidays (1)**
120:22
**home (2)**
22:4;85:8
**homeowners (1)**
170:1
**honest (1)**
151:2
**Honor (109)**
5:11;6:9,13;7:1,12,
23;8:6,10;9:15;10:15;
11:21;12:7;15:15,19,
21;16:12;17:3,7;18:1;
19:6,9;23:14;25:14,19;
26:9,24;27:6;33:8;
40:8;69:4,7,13;70:3,10,
17;71:9;72:16;77:17,
24;78:4,11;79:10;
80:18;82:8;83:3,22;
84:14,21;86:14;90:16;
94:3,18;105:8,22,25;
107:14;109:12;110:23;
123:23;125:2,21;
126:23;127:14,20;
128:4,24;129:24;

130:25;131:23;132:1,
23;133:12;135:23;
136:15;137:8;138:21,
23;140:6,12;141:18;
142:8;143:17,24;
160:25;161:12;163:13,
15,17;164:3;166:3,10;
167:9,21,22,24;168:1,
25;169:4;170:3;
171:14,15;172:14;
173:3,12;174:7;175:1,
13;177:6;180:5
**Honorable (1)**
5:5
**Honor's (4)**
94:5;102:21;128:1;
129:8
**hope (6)**
26:17;76:22;87:5;
127:21,24;137:13
**hopefully (4)**
129:7;142:25;144:3;
167:21
**horde (1)**
175:18
**horrible (2)**
40:24;152:20
**horse's (1)**
116:4
**Hostetler (2)**
69:14;84:22
**hour (4)**
123:9,11;126:16;
132:12
**hours (1)**
126:10
**housekeeping (2)**
5:24;11:7
**housing (1)**
104:5
**Howard (1)**
11:21
**huge (1)**
39:7
**hundred (2)**
77:12;100:4
**hyper-technical (1)**
112:6

**I**

**idea (1)**
113:8
**identified (1)**
144:10
**identify (1)**
144:11
**ignore (5)**
154:18;164:1;176:1,
1;178:18
**ignoring (1)**
173:8
**I'm- (1)**

169:15
**imagine (2)**
115:23;151:7
**immediate (2)**
24:10;108:2
**immediately (1)**
118:5
**impaired (1)**
99:25,25;100:1
**implicated (1)**
100:20
**implication (2)**
125:24;137:9
**implications (1)**
39:4
**implicit (1)**
168:13
**importance (1)**
161:6
**important (18)**
18:2;22:9;25:23;
26:25;30:22;77:18;
105:11;123:7;126:17;
131:6,17;135:23;
158:16;164:20;168:5,
14;171:13;173:18
**importantly (6)**
17:3;20:10;38:1;
128:4;134:23;165:18
**impose (1)**
83:20
**imposed (1)**
108:15
**impression (1)**
170:24
**improve (1)**
69:3
**improvement (3)**
28:25;132:2;141:3
**improvements (1)**
132:24
**improves (2)**
83:5,6
**imprudent (1)**
83:16
**impugned (1)**
76:4
**inability (1)**
89:6
**inappropriate (3)**
95:18;101:16;104:8
**inclined (1)**
122:15;131:10
**include (9)**
14:1;112:12;152:15;
153:25;155:2,5;159:5;
162:19;163:9
**included (5)**
10:22;153:19,20,22;
162:9
**includes (2)**
125:9;155:10;162:21
**including (10)**

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 192
of 205

12:3,13;33:8;98:9;
110:9;120:21;152:8;
162:23;165:1;169:8
**inconsistent (2)**
23:1;119:13
**inconveniencing (1)**
135:17
**incorrect (1)**
9:20
**increase (1)**
159:4
**incremental (2)**
33:9,13
**incumbent (1)**
140:21
**incur (11)**
31:2,4,16;32:2,10;
33:2,6,11;118:19,21,22
**incurred (3)**
116:21;118:17,18
**indebtedness (6)**
31:2,7,15;32:17,25;
33:2
**indeed (1)**
40:6
**independent (1)**
87:1
**indicate (3)**
129:5;132:14;133:22
**indicated (6)**
9:15;126:14;163:24;
165:19;167:9,12
**indication (1)**
134:20
**indiscernible (2)**
36:8;104:7
**individual (3)**
155:11;157:2,6
**individuals (1)**
170:1
**inducement (1)**
30:25
**industry-type (1)**
168:19
**inextricably (3)**
175:25;176:10;
177:20
**informal (1)**
16:22
**information (2)**
12:23,23
**informed (1)**
100:18
**inherent (1)**
108:24
**initially (1)**
159:13
**injunction (5)**
106:14,16,22;
108:17,22
**injunctive (1)**
129:17
**innocuous (1)**

93:5
**insist (3)**
108:21;122:15;178:1
**insisted (1)**
40:10
**insisting (1)**
177:2
**insolvency (1)**
77:3
**inspired (1)**
78:5
**instant (1)**
108:3
**instantly (1)**
98:2
**instead (2)**
79:2;118:16
**instructed (1)**
109:25
**insult (1)**
78:20
**insurance (2)**
80:25;81:9
**intangible (1)**
104:9
**integrated (1)**
107:12
**integrity (5)**
8:20;10:12;11:9,24;
80:10
**intellectually (2)**
151:2,13
**intend (1)**
15:9
**intended (4)**
23:4;81:2;98:24;
169:13
**intent (1)**
114:14
**intentional (1)**
99:17
**interest (14)**
19:20;20:16,19;98:3;
99:4;106:22;131:22;
147:24;156:17;158:1,
2,4;159:21;172:10
**interested (4)**
157:6;158:6,8;
159:13
**interesting (5)**
146:21,23,25;147:3;
149:23
**interestingly (1)**
82:9
**interests (15)**
85:12;165:24;167:6;
168:5,23;169:14;
170:8,9,9,17,22;
171:12,22;173:18,19
**interfere (2)**
27:2;138:16
**interfering (1)**
98:13

**interim (2)**
15:16;16:3
**internally (1)**
72:19
**interpret (1)**
179:1
**interpretation (4)**
160:7;161:5,8,14
**interpreted (1)**
155:1
**intersection (2)**
85:14,15
**intertwined (3)**
175:25;176:10;
177:21
**intervention (1)**
87:13
**into (18)**
6:1;19:12;29:14;
33:19;76:13;87:22;
106:2,14;112:3,19;
120:1;125:25;129:3;
149:3;155:9;160:2;
170:6;178:22
**introduce (1)**
84:25
**investigate (7)**
30:10,14;89:6,20;
90:2;113:18;115:12
**investigations (1)**
30:12
**invitation (2)**
28:5;123:5
**invite (1)**
14:20
**invited (1)**
70:16
**invitees (1)**
127:11
**inviting (2)**
139:11;141:9
**involuntarily (1)**
169:23
**involved (6)**
83:23;86:6,7,16;
159:16;170:15
**involving (1)**
168:20
**issue (50)**
19:21;20:7;21:6;
23:11;25:8,16,17,19,
23;29:1,3;30:13,16;
32:23;37:2,12;38:12;
72:3;75:21;76:17;
82:20;91:21;108:17;
124:4;140:7;142:1;
144:23;145:3,3,4,5,8;
156:4,13,15,16;162:5;
163:25;169:16;173:14;
176:7,8,9,10,15,16,24,
24;177:25;178:10
**issues (32)**
7:3,14,15;27:7,7,7;

70:4;90:9;109:13;
136:14;137:25;139:5;
144:4,18;146:1;
149:14;156:6,8;
157:16,17;170:10,11,
11,12,13;175:19,24;
176:3,7;177:10,11,13
**item (3)**
13:11,16;111:12
**items (1)**
111:19

**J**

**jeopardy (1)**
101:12
**job (4)**
154:20,22;173:15;
178:25
**joke (1)**
140:24
**JPM (1)**
123:24
**JPMorgan (5)**
85:19,19;94:20;95:5;
139:2
**Judge (5)**
91:19;92:17;99:3;
108:13;125:13
**judges (1)**
122:2
**judgment (4)**
18:8;96:18;97:18;
132:11
**judicial (1)**
120:5
**junior (5)**
31:12,20;32:2;33:4,5
**jurisdiction (1)**
106:20
**Justice (1)**
144:17
**justified (1)**
103:13

**K**

**Karen (1)**
85:3
**Karotkin (49)**
5:9,11,12,17;8:8,9,
16,21,23;9:4,8,10,13;
10:5,9,11,23;11:3,6,9;
12:14;13:19,21,23;
14:4,7,9;135:19;
142:11,15,19,22,25;
143:17;161:3;163:15,
16,21;164:18;165:7,13,
18;166:16,19;167:1,4,
6,18;173:13
**keep (6)**
13:12;15:6;21:4;
38:17;127:10;164:21

**keeper (1)**
135:20
**key (1)**
18:13;19:2;145:22,
23,25;149:2;156:9
**kick (1)**
130:19
**Kim (2)**
12:9;127:13
**kind (15)**
23:17;24:19;84:18;
87:12;93:5;98:8;
118:20;119:3;122:12;
131:14;145:3;146:10;
170:12;171:23;175:12
**kinds (4)**
168:17,22,24;170:11
**kiss (1)**
162:12
**knowledge (2)**
80:11;165:16
**known (2)**
77:3,3
**knows (3)**
126:5;157:11;163:7
**KRELLER (39)**
69:1,7;131:23,23,24,
25,25;132:8,23;133:5,
8,12,14;167:19,21,22;
168:24;169:4,7,10,12,
25;170:3,6;171:2,14;
172:12,14,23;173:3,5,
10;174:7,10;175:1,5,7,
14,15
**Kris (1)**
138:25
**Kruz (2)**
111:11;121:24
**Kurtz's (1)**
18:16

**L**

**lack (1)**
97:10
**LAFFREDI (27)**
6:8,24;7:1,3,7;8:20;
70:1,3;160:22,25;
161:4,12,20,24;162:3,
8,14,17,25;163:5,9,13;
164:13;178:19;179:21,
23;180:5
**Laffredi's (1)**
6:17
**laid (1)**
161:10
**Lake (2)**
71:6,6
**language (9)**
9:10;10:22;11:14;
88:8;89:10,18;90:9,12;
154:19
**large (1)**

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 193
of 205

107:9
**largely (1)**
27:7
**largest (8)**
85:21;149:10;
153:13,16;160:9;
161:15,17;179:8
**last (8)**
16:12;25:16,18;
69:16;78:7;80:22,24;
84:17;86:2;126:10;
173:12
**lasting (1)**
158:4
**late (2)**
78:4;84:19
**later (4)**
6:13;20:3;21:18;
70:15
**Latin (1)**
153:24
**latter (1)**
114:12
**law (14)**
75:13;87:17;89:2;
91:13;92:1,8;125:6,7,
9;163:21;164:3;
165:25;166:8,11
**laws (3)**
84:1;91:9;92:17
**lawsuit (1)**
164:10
**lawyer (6)**
40:18;85:13,14;
103:2,13;135:12
**lawyers (2)**
12:20;13:14
**lay (1)**
31:25
**lays (1)**
18:19
**Lazard (1)**
16:17
**learned (1)**
101:25
**lease (1)**
32:10
**least (9)**
30:20;37:17;40:3;
84:24;99:10;100:13;
127:15;159:13;170:19
**leave (4)**
82:19;143:19;
148:17;170:24
**leaving (1)**
176:20
**left (6)**
22:18;70:6;86:21;
105:14;124:5;163:2
**legal (11)**
16:20;33:25,25;34:3;
82:6;83:20;87:17,18;
150:23;156:12;161:5

**legally (1)**
165:8
**legislative (6)**
163:7,10;176:5,6,8,8
**legislature (1)**
177:14
**legitimate (5)**
104:17,17;152:11;
170:12;173:17
**lend (2)**
30:25;124:2
**lender (16)**
14:25;15:1;34:24;
36:9;74:1,25;75:14;
95:10;100:6;107:17;
114:11,23;115:6;
125:11;138:3;140:21
**lender-liability (2)**
114:22,23
**lenders (81)**
18:23;19:8,21;23:13,
16;25:9,12,24;26:2,13,
24;27:3,15,16,20;28:5,
16;30:11,24,24;31:8;
33:18;34:25;38:15,21;
39:15;40:10,22;75:2;
86:18;87:8,16;88:3;
89:1,7,7,12,15;91:23;
92:18;94:1,16;95:5,19;
96:15,19;97:18;98:19;
99:7,10,22;100:7;
101:6;102:2;107:1,4,
10;108:21;109:4;
113:10,18;114:2,3,6,
17;116:25;119:24;
122:22,24;123:25;
125:22,25;128:14;
129:14;130:9;131:9;
132:2,10;136:20;
139:18;143:8
**lenders' (3)**
19:15;27:2;101:17
**lender's (1)**
75:14
**lengthening (1)**
128:8
**lengthy (1)**
100:10
**less (3)**
23:16;131:10;144:3
**letter (4)**
144:17;145:12;
146:3,8
**letters (2)**
16:2;179:3
**level (5)**
82:5;83:19;99:1;
151:5;178:20
**levels (1)**
19:12
**LEVINE (5)**
10:15;11:21,21;12:6,
7

**liabilities (3)**
79:13;82:25;104:11
**liability (3)**
115:6;120:25;121:13
**lien (6)**
27:2;30:15;31:12;
40:14;87:18,19
**liens (9)**
25:17,20;30:8,15;
33:6,6;89:6;111:13;
114:5
**life (2)**
158:4,5
**lift (1)**
90:21
**lifted (3)**
106:15,19;129:14
**light (1)**
30:16
**lights (1)**
86:12
**likely (1)**
124:17
**limit (4)**
31:14;116:22;
117:14;130:23
**limitation (5)**
31:6;32:15,15;
120:25;121:12
**limitations (2)**
74:4;112:25
**limited (7)**
17:6;30:23,23;74:2;
93:15;137:25;164:19
**line (12)**
16:24;35:24;98:7;
110:19;111:2;113:6,
13;114:21;115:9,13;
121:3;171:23
**lines (6)**
36:23;114:3,17,17;
118:9;176:22
**link (3)**
13:5;81:16;104:18
**linkage (3)**
79:25,25;80:16
**linked (1)**
13:7
**Lion (2)**
155:15,17
**liquidity (3)**
86:7,10,11
**list (7)**
12:3;27:19,22;29:2;
30:9;69:24;95:14
**listed (1)**
93:15
**listen (5)**
14:12;20:5;22:20;
140:2;178:6
**listened (1)**
136:4
**listening (1)**

**litany (1)**
137:16
156:10
**literally (1)**
79:11
**litigation (2)**
166:6;170:17
**little (17)**
84:19;89:19;103:2;
106:24;115:3,8,16,18;
118:8;119:4,15;132:5,
12;137:21;143:25;
151:15;167:22
**live (3)**
17:21;19:3;100:15
**lives (2)**
78:15;158:5
**living (1)**
86:25
**LLCs (1)**
155:12
**loan (41)**
31:6,8;36:10;37:3,6,
6,7;76:9,12,14;85:16,
21,24;86:1,2;100:5,7,
19;102:4,6,20;103:4;
107:10,18;110:3;
112:25;114:11;118:23;
119:7;121:3,23,25;
124:3;128:15,15;
129:3;139:3;152:14,
14,22;155:23
**loans (12)**
30:10;77:7;85:17,18;
89:13;99:25;102:1,2;
113:15,21;118:20;
121:1
**loan-to-value (1)**
73:4
**lobbying (7)**
82:21,23,25;83:1,10,
11;84:11
**lobbyists (1)**
83:18
**local (3)**
110:20;111:3,4
**locked (1)**
109:25
**Lockhart (3)**
85:4,5,6
**Long (10)**
74:12;90:21;91:1;
101:25;105:11;125:7;
139:19;144:2;156:10;
158:4
**longer (6)**
19:22,23;20:9;78:19;
112:21;116:14
**look (20)**
11:17;13:6;26:2,3;
35:2;40:12;76:9;91:7;
94:24;102:6;114:3;
118:9;125:12;150:17;

137:16
**litany (1)**
156:10
**literally (1)**
79:11
151:17,18,19;154:17;
166:11;168:11
**looked (2)**
87:16;111:22
**looking (6)**
91:2;93:3;115:6;
129:7;156:22;159:6
**looks (3)**
13:7;93:1,22
**lopsided (1)**
103:2
**loss (1)**
85:8
**losses (2)**
85:9;176:18
**lost (4)**
84:18;93:13,14;
152:22
**lot (18)**
12:12,17;25:3;29:25;
85:17,18;88:25;94:2;
105:15;119:15;123:16;
134:1;136:25;163:7;
166:25;167:25;168:5;
176:12
**lots (5)**
12:21;75:15;81:20;
102:1,2
**love (2)**
71:24;126:3
**lower (1)**
104:1
**LPs (1)**
155:11
**luck (2)**
143:22,22
**lump (1)**
142:16
**lunch (1)**
127:20

**M**

**magic (1)**
76:13
**mail (1)**
117:17
**main (3)**
20:18;28:1;94:3
**maintain (3)**
80:3;119:23,25
**maintained (1)**
76:18
**maintaining (1)**
157:25
**maintenance (1)**
24:24
**major (1)**
111:2
**makes (9)**
20:25;34:6;38:9,11;
77:3;98:3;100:2;
137:12;174:2

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 194
of 205

**making (18)**
9:18;18:15;21:4,8;
27:1,18;39:5;69:11;
81:20;83:15;86:21;
94:3;104:5,17,21;
121:17;137:14;152:12
**makings (1)**
84:18
**manage (2)**
13:1;142:15
**managed (3)**
15:18;82:24;85:20
**management (11)**
8:10,19;10:14;12:9;
13:2,17;83:17;109:25;
110:2;172:5,21
**managers (1)**
176:14
**managing (1)**
84:3
**Manges (2)**
5:12;163:16
**many (7)**
88:20;104:2;126:12;
130:21;149:6,6;152:17
**MARCH (4)**
5:1;13:9,10;143:5
**market (5)**
19:18,22;20:10;
34:24;86:3
**marketing (2)**
18:12,22
**markets (5)**
85:23;86:18,22;
95:24;104:4
**marshaling (4)**
25:25;27:10,12,13
**match (1)**
82:15
**material (7)**
39:10,12,15;40:23;
91:15;94:9;107:6
**materiality (3)**
19:12;97:19;107:5
**Matter (13)**
5:8;11:8;70:24;82:6;
83:20;84:2;87:20;
126:11,15;141:8;
172:16,17;178:22
**matters (5)**
8:25;11:16;16:23;
76:5;135:19
**Matthew (1)**
6:9
**maturity (1)**
23:23
**may (26)**
15:19;25:19;36:16,
16;37:21;38:23;85:25;
88:1;99:22;104:11;
107:19;113:3;125:14;
127:14;131:13,13;
141:23,23;147:24;

148:3;159:4,11,23;
161:25;174:23;177:5
**maybe (24)**
6:1;27:9;35:8,9;
37:22;76:6;82:16;
87:14;99:6;100:14,14;
101:9,10,11;105:25;
122:7,18,19,22;123:11;
131:9;141:5;155:13;
179:10
**mean (66)**
6:4;7:18;10:6;11:7,
9;17:11,15;19:20;
22:16;23:22;27:17,25;
34:11;40:9;74:21;75:5,
15;79:20;82:4,16,22,
24;83:13,19;86:18;
89:8,16;90:3;92:2;
93:1;96:22;97:21;
100:18;101:25;104:17;
105:3,25;106:12,13,19;
114:22;119:9;121:9,
11;123:14;124:8;
125:12;130:6;132:8;
134:16;140:1;142:16;
145:19;146:15;153:15,
20;154:5,6;162:20;
164:15;165:14;166:14,
24;169:1;171:7,12
**meaning (2)**
28:21;153:3
**meaningful (2)**
90:18;97:18
**meaningless (4)**
74:6,7,8,19
**means (9)**
25:8;29:8;33:14;
107:8;111:17;114:9;
117:19;155:11;166:14
**meant (3)**
82:16;112:2,23
**measure (2)**
79:10,12
**meat (1)**
90:14
**media (2)**
93:17;144:11
**meeting (1)**
134:8
**member (7)**
145:10,13,15,21;
147:12;148:21;175:20
**members (3)**
148:23;159:4;164:7
**membership (1)**
151:11
**memorandum (1)**
85:20
**Mendocino (1)**
71:6
**mention (2)**
9:14;131:1
**mentioned (4)**

14:15;17:22;31:16;
123:25
**merge (1)**
92:24
**Mergers (1)**
92:23
**merited (1)**
106:23
**Merriam-Webster (1)**
153:7
**mess (1)**
74:22
**message (3)**
12:14;104:22;134:22
**met (1)**
129:24
**method (1)**
122:16
**micro (1)**
75:21
**micromanage (2)**
75:12;84:4
**middle (1)**
24:10
**midpoint (1)**
79:9
**might (18)**
24:22;36:24;37:20,
21;38:2;40:6;71:10;
75:17;77:4;83:19;87:6;
90:15;105:12;127:15;
130:13;136:14;142:18;
174:17
**Milbank (4)**
117:22;131:25;
165:7;167:22
**milestones (3)**
23:17;24:17,19
**million (35)**
9:21;11:13;16:1,2;
32:13,18,20,22;33:1;
36:22;72:5,18,20,23;
73:22,25;74:2;75:3,12;
79:7,8,10;80:25;93:16;
103:11,11;117:5,7,20;
118:13,17,17,22,22;
119:10
**million-dollar (3)**
117:10;120:8,16
**millions (3)**
18:7;79:3;102:8
**mind (6)**
8:1;123:15;137:17,
19;164:21;179:4
**mindful (1)**
17:8
**minding (1)**
117:15
**minds (1)**
21:6
**minimize (1)**
178:4
**MINNICK (7)**

10:17,18,19,20,24;
11:2,4
**minor (1)**
14:18
**minute (3)**
33:23;91:17;108:4
**minutes (6)**
14:6,21;101:10;
127:7;143:10;156:2
**miscellaneous (1)**
35:16
**misplaced (4)**
23:1;31:3,9;33:12
**missed (1)**
21:17
**mistake (1)**
69:23
**misunderstanding (1)**
107:22
**misunderstood (3)**
107:21;137:11,13
**mix (1)**
164:12
**mixing (1)**
79:14
**modification (4)**
8:25;13:2,17;27:15
**modified (3)**
26:1;76:12;143:16
**modifies (1)**
161:15
**modify (2)**
153:10;179:7
**moment (7)**
28:8;35:3;76:23;
87:3;93:14;108:4;
119:12
**moments (1)**
129:25
**money (21)**
9:7;34:7;36:10;
38:15;80:2,20;83:11,
18,25;86:21;100:9;
102:17;113:12,16;
118:7;120:17;165:3,4,
8;166:15,17
**monies (1)**
119:8
**monitoring (1)**
13:14
**monolithic (1)**
26:24
**Montali (1)**
5:5
**month (1)**
24:10
**Moore (2)**
15:11;105:22
**more (46)**
8:25;13:16;14:19;
17:12;20:10;28:25;
37:1;71:20,21;84:4;
87:12;96:2,4;98:10,14,

20;102:25;108:13;
109:1;118:21;121:18;
122:15;126:16;128:3;
130:25;131:9;132:6;
134:1,23;135:20;
136:13;139:11;140:2;
141:13;145:4;146:21;
151:8;153:18;155:1;
160:10,17;163:12,13;
165:18;167:20,22
**Moreover (1)**
18:10
**moreso (1)**
149:12
**morning (9)**
5:6,7,11;6:9;10:18;
11:21;15:10;70:12;
85:5
**Most (14)**
8:13;19:4;33:13;
81:3;95:7,10,17,22;
97:14;112:15;128:9;
149:9;155:16,19
**mostly (1)**
36:18
**mot (1)**
98:2
**motion (44)**
5:20;8:10,10,19,20;
9:14,14;11:24,25;
13:11,24;15:15;16:12;
38:11;72:11,16;81:12,
13,17;82:10;96:9,23;
98:3;104:23;109:5;
123:13;126:14,16,17,
20,22;127:4,15,17;
143:3,4,16;149:24;
166:9;168:7;173:14;
179:13,14;180:2
**motions (2)**
8:8;80:9
**mouth (1)**
116:5
**move (5)**
127:16;131:6,18;
142:10;154:10
**moved (1)**
140:16
**moving (3)**
25:3;126:20;133:3
**much (22)**
8:2;15:22;75:17;
76:21;84:24;110:2;
111:12;122:9;126:16,
18;130:9;131:8;140:7;
142:9;143:1;153:20;
154:25;155:1;157:21;
161:13;168:7;180:6
**municipalities (1)**
162:9
**municipality (1)**
145:10
**must (2)**

102:18;134:20
**myself (2)**
103:19;141:13
**mystery (1)**
15:6

## N

**Napa (2)**
71:7,7
**narrow (2)**
30:18;178:25
**narrowed (2)**
136:16;137:25
**narrower (1)**
168:8
**narrowing (1)**
136:25
**narrowness (1)**
176:21
**nature (1)**
30:16;85:9;164:23
**near (1)**
95:2
**necessarily (2)**
157:6;177:17
**necessary (12)**
7:13;10:3;31:13;
73:5;97:7;119:9,12;
130:20;133:18,19;
134:3;148:1
**need (31)**
7:8;13:13,15;15:4;
18:4;26:18,18;30:14;
69:8;71:21;90:17,19;
92:13;95:19;122:7;
124:23;128:15;129:18;
130:7;137:1;145:6;
157:9,15,16;170:18;
176:4,5,6;177:17,23;
178:24
**needed (6)**
15:22;22:24;38:1;
76:10;125:6;126:7
**needs (3)**
84:7;95:19;130:7
**negotiate (5)**
19:9;22:10;136:18;
141:4,5
**negotiated (7)**
24:5;25:2;32:15;
72:19;85:18;107:4;
110:4
**negotiation (6)**
18:23;20:12;83:24;
95:4;100:13;130:13
**negotiations (2)**
138:16;150:6
**neighborhood (1)**
80:25
**Nevada (1)**
71:5
**new (6)**

31:2;104:1;118:7;
128:15;138:4;139:5
**news (2)**
172:4;176:12
**next (20)**
23:11;24:2,10;94:11;
95:6;99:6,10;100:16;
113:3;117:20;124:25;
130:20;132:13;138:17;
140:25;141:6,23;
144:15;154:13;159:2
**nicely (1)**
161:11
**nightmarish (1)**
40:24
**nine (2)**
79:7,8
**nobody (9)**
18:2,3,4,5,8,10,11;
98:21;164:8
**nobody's (1)**
115:21
**non-creditor-related (1)**
174:23
**none (6)**
29:20,20;113:1,14;
152:19,21
**nonimportant (1)**
110:17
**nonissue (1)**
125:15
**non-lawyers (1)**
13:14
**nonpermitted (1)**
118:19
**Non-persons (1)**
155:7
**nonutility (1)**
27:11
**normal (2)**
11:18;91:16
**northern (5)**
74:11;110:21;111:4,
5,8
**not- (1)**
156:21
**note (8)**
8:23;9:21,23;18:2;
26:25;30:22;77:9;
107:14
**noted (2)**
84:13;146:7
**notice (17)**
7:11;11:11;17:1;
19:23;20:14,20;
108:10;116:3,7,23,24,
25;117:9,13,16;
119:10;120:9
**noticed (1)**
77:10
**notifying (1)**
117:1
**notion (7)**

31:1,6;33:11;107:3;
122:13;134:7;168:13
**notwithstanding (1)**
102:21
**number (21)**
8:12;12:13,14,24,25;
13:8;16:24;32:8;33:1;
37:22;78:2;80:8;83:7;
90:20;113:13;119:4,7;
125:17;159:4,19,20
**numbers (2)**
73:12;79:6
**numerous (1)**
87:6

## O

**object (2)**
76:17;96:3
**objected (1)**
18:3
**objecting (3)**
69:15,17;90:3
**objection (10)**
13:9;71:9,13;72:3,9,
15,21;77:16;78:4;96:8
**objections (17)**
5:19;7:14;16:22;
17:6,21;18:1;19:3;
25:6;27:6;28:24;33:18;
69:19;70:4;72:1,11;
83:21;134:18
**objectors (4)**
22:20;38:23;39:2;
145:5
**objects (1)**
19:6
**obligations (4)**
32:11;104:6;112:16;
119:6
**observation (1)**
102:25
**observations (1)**
105:8
**obtain (4)**
23:3,5;87:23;128:21
**obviously (18)**
7:13,18;20:21;21:12;
22:13;31:3;78:14;80:3;
93:19;105:10,11;
123:16;126:16;140:7;
144:17;161:7;164:1;
168:4
**occasions (2)**
88:21;104:3
**occurred (15)**
20:21,24;22:2,25;
78:21;90:22;94:9;96:1,
18;106:19;108:15;
109:12;117:1,9;120:20
**occurrence (1)**
99:18
**occurring (2)**

31:1,6;33:11;107:3;
122:13;134:7;168:13
**occurs (4)**
76:1;77:2;98:21;
107:9
**o'clock (4)**
123:12;124:24,24;
126:11
**off (8)**
25:6;108:12;132:11;
136:7,10;144:16;
158:11;177:10
**offensive (1)**
75:17
**offer (1)**
141:9
**offered (2)**
131:10;137:5
**Office (6)**
5:25;6:11;12:9,10;
117:16;144:12
**official (23)**
16:13;20:18;37:21;
69:14;73:8;84:22;
116:19,20;132:1;
165:25;166:22;167:23;
170:18,22;171:19,21,
24,25;172:18;173:14;
175:7,9;180:3
**often (1)**
115:2
**oil (1)**
168:20
**old (2)**
12:18;86:16
**once (8)**
28:25;70:23;87:17;
117:12;119:20;147:23;
153:6;156:21
**one (94)**
5:23;6:21;7:12;8:23,
25;9:2,6,6,13;11:7;
13:8;26:12,21;28:2,14,
20;30:18,18;32:14,19;
35:21;36:20;37:20;
38:13;40:25;69:2,22;
71:12,17,18,25;72:11;
73:5;74:4,12,24;75:22;
78:13,16;79:11;80:18;
82:5;83:5;92:1;93:8;
94:6;97:25;98:4;100:5;
101:8;102:17,25;
103:5;104:24;105:3;
108:13;109:21;110:17,
17;115:22;116:11;
120:13,21,24;121:15;
123:21;125:5;126:16;
127:25;128:8;144:22;
146:10;147:6,8,10;
149:9;156:16;159:2,2,
19;160:9,11,23;165:12,
13;168:8,8,20;175:17;
176:1,5,7,8;177:6
**ones (6)**

20:16;97:20
**occurs (4)**
76:1;77:2;98:21;
107:9
6:19;17:19;19:3;
28:1;119:23;160:9
**one's (3)**
8:9;158:8;165:16
**one-year (1)**
24:8
**ongoing (1)**
171:11
**only (25)**
11:10;13:6;15:21;
21:16;69:18,18;71:12;
81:8,9;88:10,14;89:1,
7;94:2;109:10;114:2;
119:23;128:20;129:3;
147:6,8,10;153:21;
156:11;165:22
**oOo- (1)**
5:2
**Open (5)**
71:4;101:18;113:6;
136:13,24
**opening (1)**
84:24
**operate (1)**
19:13
**operates (1)**
121:13
**operational (2)**
8:19;10:11;11:9,23;
80:10;86:13
**operations (1)**
121:3
**operative (1)**
121:14
**opinion (1)**
83:19
**opportunity (7)**
16:19;19:21;20:11;
132:17;134:2;135:1;
140:17
**opposed (1)**
139:14
**opposing (1)**
126:20
**optimism (1)**
87:5
**option (2)**
150:16;155:22
**options (1)**
93:24
**oral (6)**
70:16;79:20,20,20;
134:16;139:23
**order (48)**
5:3;8:14;9:1,11,23;
11:10;12:9;13:3,17;
14:1,23;15:14;16:24;
20:24;21:17;23:1;
24:15,22;26:1;28:19;
31:4,22;35:12;37:4;
75:22,24;84:11;87:23;
89:19;91:18;99:4,5;
108:8;110:22;111:21;

120:22;121:2,22;
122:14;125:9;128:7;
133:2;143:11;147:23,
24;159:4,24;179:22
**ordered (3)**
145:1;160:11;172:6
**orders (7)**
5:14,17;6:2;11:8,18;
115:2;118:12
**ordinarily (24)**
148:7,8;149:2,7;
150:25;151:19,20,21,
21,22;153:6,10,11,12;
154:3,10,15,25;155:2,
3;160:2,7;161:14;
179:7
**ordinary (7)**
6:18;35:19;83:13;
149:4;153:7;160:6,9
**original (1)**
9:14
**OSC (1)**
91:21
**others (1)**
135:10
**otherwise (5)**
24:22;72:25;113:17;
120:17;171:17
**ought (4)**
76:18;84:9;122:18,
19
**ourselves (3)**
14:24;107:20;142:3
**out (45)**
7:15,18;9:20;10:21;
34:25;70:6,13;73:21;
75:2;76:14;79:2,4;
81:3;86:19,19,20;
90:18;101:9;102:18;
112:16;115:16;118:13,
16;124:1,15;125:4;
126:1;127:24;128:13;
139:14;140:19;142:17;
146:11;148:10;150:9,
12;161:10;163:17;
164:3;168:1;170:7;
174:14;177:8;178:19;
179:11
**outcome (4)**
40:3;98:6,6;100:12
**outside (2)**
146:6;170:23
**outstanding (2)**
11:16;16:1
**over (20)**
23:14;31:8;69:5;
75:23;92:19;94:17,17;
106:20;117:20;118:2,
5;130:19;135:25;
139:20;141:23;142:1;
145:9;158:7,10;171:9
**over- (1)**
97:2

**Overall (2)**
18:24;19:2
**overdramatization (1)**
106:25
**overlap (3)**
12:18;89:24;90:4
**oversecured (1)**
75:8
**oversimplify (1)**
176:11
**oversimplifying (1)**
178:3
**overstating (1)**
106:17
**overwhelmed (1)**
157:12
**owe (1)**
175:10
**own (10)**
15:5;82:10;84:3,18;
85:15;87:1;117:15;
159:19;165:15;166:2
**owners (1)**
152:24

**P**

**Pacific (1)**
143:5
**pack (1)**
22:3
**package (5)**
26:19,21;27:4;31:24;
69:1
**page (9)**
13:4;91:5,8;92:15,
20,21;110:19;111:2;
114:3
**paid (17)**
9:17;72:24;73:12,23;
76:5;78:18;79:21;
80:15;81:3;86:13;
104:7;119:10;131:4;
158:2;166:23;173:25;
174:21
**paint (1)**
106:2
**Palo (2)**
147:11,14
**paper (1)**
13:9
**papers (10)**
12:21;17:9;18:15;
21:16;81:6;90:18;
94:14;95:20;105:4;
167:25
**Paradise (12)**
71:1;103:23;149:18;
169:17,21;171:4;
172:9;176:13,19;
177:23,24,25
**Paradise's (1)**
176:17

**paragraph (16)**
20:24;23:7,8;26:2;
92:20,22,23;93:23;
108:6;112:24;114:21;
115:5;118:2,24;
120:22;128:19
**paramount (2)**
157:23,24
**paranoid (1)**
88:1
**parcel (1)**
142:17
**pardon (2)**
159:1;166:16
**parks (2)**
171:7;172:20
**parochial (1)**
27:7
**part (9)**
27:3;72:23;81:22;
85:18;93:20;97:14;
113:5;116:21;128:18
**participant (3)**
90:1,8;114:10
**participated (2)**
150:6;166:5
**participating (1)**
166:7
**particular (3)**
125:14;130:22;
149:20
**particularly (7)**
12:10,20;17:16;
28:23;122:3;159:20;
179:12
**parties (23)**
8:13;9:25;19:20;
20:16;24:23;69:15,17;
83:22;98:17;106:21;
115:14;121:2,3,7,23;
126:20,20;132:18;
133:20;134:18;167:1,
6;169:7
**parties-in-interest (1)**
129:17
**partner (1)**
85:1
**partnership (1)**
155:11
**parts (1)**
25:4
**party (8)**
20:19;33:9;98:2,2;
99:4;147:24;159:23;
164:10
**passed (1)**
102:10
**passive (8)**
87:25;88:17,19,22,
24;90:10;121:20;179:5
**pass-through (1)**
33:9
**past (3)**

39:25;133:3;154:10
**patently (1)**
25:13
**Paul (2)**
15:11;105:21
**pausing (1)**
121:16
**pay (10)**
80:11;82:12;84:11,
12;103:10;104:24;
105:4;167:16;174:5;
177:18
**paying (3)**
78:12;83:18;177:10
**payment (5)**
9:16,17,19;80:22;
103:6
**payments (5)**
9:18;11:13;79:4;
80:9;103:13
**PBGC (1)**
169:10
**pending (3)**
25:21;91:22;92:12
**people (31)**
12:3,9,14;20:10;
75:17;80:9;81:9,20;
84:25;85:10;86:20,25;
103:23;104:6;105:12;
106:9,9;122:20;
123:14;126:12;130:21;
135:1;139:7;142:6;
151:11;154:9;155:16;
156:22;164:9;169:3;
173:25
**people's (2)**
21:6;135:16
**per (3)**
14:23;127:8;145:21
**percent (1)**
79:11
**perfect (1)**
105:25
**perfected (1)**
30:15
**perfectly (4)**
10:8;167:13;178:1;
180:1
**perform (1)**
22:15
**perhaps (6)**
14:13;73:21;100:19;
104:1;128:15;171:5
**period (7)**
19:23;92:16;93:21;
99:5;108:11;109:11;
120:15,19;129:21;
130:23;133:17;152:16
**permission (2)**
69:16;101:7
**permit (4)**
33:1,6;158:18;
177:23

**permitted (2)**
113:9;118:18
**permitting (1)**
96:19
**person (15)**
34:14;121:8;151:1;
153:9,22;154:3;155:3,
10;158:22,23;160:5;
162:21,22;164:1;179:7
**personal (5)**
83:19;85:15;105:13;
151:5;178:20
**persons (25)**
34:22;129:2;145:22;
146:9;148:4,7,15;
151:9,12,21,22;152:9;
153:11,11,12,18;155:2,
5,7,10;158:25;161:15;
163:1;171:18;174:17
**perspective (9)**
16:20;18:13;19:1;
22:5;86:17;128:10;
139:4,10;140:18
**persuade (5)**
21:3;101:5;135:5;
138:3;154:18
**persuaded (1)**
18:17
**persuades (1)**
99:4
**persuasive (2)**
82:22;156:11
**petition (5)**
29:1;33:8;77:5;90:8;
114:11,24;147:5;174:1
**Petra (1)**
144:11
**PG&E (14)**
5:8;78:18;80:24;
85:8;86:16;107:7;
147:4;149:20;158:1;
160:5;171:9;172:4;
176:17;177:14
**PG&E's (2)**
87:1;102:13
**ph (2)**
111:11;144:22
**phone (3)**
8:18;34:21;143:3
**phrase (3)**
113:5;114:12;153:24
**picked (2)**
33:15;79:9
**Pillsbury (1)**
10:20
**pipeline (3)**
93:19,25;109:21
**pivot (1)**
156:4
**place (4)**
73:17;75:10,11;
106:14
**placed (1)**

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 197
of 205

31:12
**Plain (1)**
153:2
**plaintiff's (1)**
85:13
**plan (18)**
24:20;25:7,9,10,14;
31:1;83:23;94:24;
95:11;126:19;174:22
**play (3)**
161:7;170:6;171:15
**pleading (1)**
166:3
**pleadings (9)**
12:16;79:6;163:18;
165:3,20,21;166:2,4;
170:14
**please (4)**
83:10;99:7;126:6;
127:3
**pleased (1)**
12:1
**Plifka (1)**
144:9
**plus (1)**
16:2
**pm (3)**
127:1,1;180:9
**point (58)**
8:1;19:2,5,8;22:22;
24:6;26:6;27:5;29:4,
23;35:2;37:21;72:21;
74:23;76:1;78:12;82:8;
83:21;84:13;86:17;
87:13;88:25;89:3,4,4,
12;90:15;92:14;93:11;
94:2,2,3;95:4;99:3;
103:10;104:9;105:3;
106:6,25;109:10;
112:6;117:24;123:1,2,
23;125:4,15;126:8;
140:12;141:5,15;
154:17;156:12;161:16;
168:1;173:12;177:19;
179:16
**pointed (2)**
90:18;178:19
**pointing (1)**
115:15
**points (8)**
14:17;76:7;77:18;
87:5,11,12;90:14;
125:18
**policies (1)**
112:17
**policy (1)**
177:5
**polite (2)**
137:1,4
**politely (1)**
87:8
**pollution (1)**
156:7

**pool (1)**
103:25
**portion (3)**
14:6,21;113:2
**Portland (1)**
11:22
**posed (1)**
101:18
**position (7)**
19:15;38:5;131:12;
138:11;141:22;143:7;
147:1
**positions (1)**
36:23
**positive (1)**
151:19
**possession (3)**
36:10;84:3;98:4
**possibility (1)**
73:23
**possible (1)**
151:12
**post- (1)**
33:7
**post-carve-out (2)**
116:12;120:8
**post-default (1)**
32:20
**post-DIP (1)**
119:10
**post-petition (7)**
34:11,12;35:17,20;
36:3;39:24;100:5
**potential (1)**
131:1
**potentially (1)**
100:13
**power (5)**
95:25;99:17;144:24;
169:8;176:22
**practical (1)**
73:20,20
**practice (4)**
16:8;34:17,24;122:2
**pre- (4)**
28:25;90:7;114:10,
23
**precedent (2)**
88:16,19
**precisely (1)**
175:20
**preempt (1)**
22:17
**prefer (3)**
19:7;115:25;123:6
**preference (3)**
105:15,16;174:20
**preferred (1)**
141:8
**premature (3)**
34:23;35:8;38:6
**prepare (1)**
13:2

**prepared (4)**
27:21;70:20;111:10;
124:2
**preparing (1)**
70:11
**prepetition (1)**
170:16
**pre-petition (11)**
9:16;29:10;80:12;
82:12;89:13,15,21;
90:1;103:12;104:11;
166:6
**prerogatives (1)**
21:7
**presentation (1)**
14:16
**Preservation (1)**
71:4
**preserved (1)**
72:4
**presiding (2)**
5:5;99:3
**press (1)**
101:20
**presumably (1)**
129:16
**pretend (1)**
179:9
**pretty (3)**
75:13;93:1;133:23
**previously (2)**
126:14;144:10
**priced (1)**
26:14
**prices (1)**
124:3
**pricing (4)**
18:25;26:14,20;
100:19
**primarily (2)**
141:15;170:19
**prime (1)**
38:20
**principal (3)**
6:21,23;22:14
**principals (1)**
141:12
**principle (1)**
18:3
**print (1)**
92:3
**prior (5)**
40:15;80:6;86:5;
96:16;120:3
**priorities (1)**
37:14
**priority (10)**
25:9;34:18;35:23;
36:6,14;37:7,9;40:4;
75:23;164:23
**probably (19)**
14:11;20:9;30:20;
73:20;75:21;76:21;

85:23;105:13;112:7;
113:22,23;121:9;
140:2;158:7;160:4,17;
174:5;175:2;178:17
**probation (2)**
91:20,21
**problem (10)**
12:22;70:21,21;
119:18;122:18;125:10;
157:14;175:12;178:5,6
**procedurally (1)**
82:16
**proceed (4)**
5:9,19,13:23;102:23
**proceeding (2)**
91:22;92:12
**proceedings (4)**
91:20;101:23;
170:16;180:9
**proceeds (14)**
25:17,20;26:4;31:5;
80:25;81:2;103:1;
111:16;112:4,12,25;
113:1;118:4,23
**process (9)**
9:2;12:15;18:12,22;
20:12;24:18;83:24;
94:17;161:24
**processing (2)**
9:16,18
**producers (1)**
168:20
**productively (1)**
127:21
**products (2)**
111:16;112:12
**professionals (6)**
8:2;72:6,7,18;
116:15;135:13
**program (1)**
112:18
**programs (1)**
27:1
**progress (3)**
130:16,18;136:25
**prohibited (2)**
30:10;83:25
**prohibition (1)**
89:13
**promise (1)**
140:24
**promised (2)**
22:19;87:21
**promises (1)**
88:2
**proof (1)**
19:16
**proper (3)**
18:14;34:6;177:8
**properly (2)**
18:9;106:14
**property (7)**
97:6;111:14,15,18;

112:13,15,19
**proposal (2)**
129:19;132:11
**proposed (18)**
8:13;9:10,24;13:17;
15:14,16,16;21,24;
18:3;20:24;26:1;28:18;
31:22;110:22;111:21;
134:13;143:8;174:22
**prospect (2)**
97:10;100:24
**protect (2)**
85:11;170:8
**protected (1)**
114:2
**protection (1)**
30:23
**protections (2)**
33:19;102:2
**prove (1)**
173:21
**provide (6)**
18:6;82:6;100:23;
103:22;158:14;169:20
**provided (1)**
122:1
**provides (4)**
36:7;102:7,7;145:8
**provision (11)**
29:18;73:16;76:7;
90:11;91:16;93:14;
95:22;101:7;119:11;
120:24;121:13
**provisions (1)**
94:16
**proviso (1)**
120:13
**prudently (1)**
15:17
**public (53)**
7:5;27:1;70:23;
72:12;102:7;112:16;
126:14,17;127:4,16;
144:10,23,25;145:10;
146:4,7,24;147:1,17,
19,21;148:3,21,23,23;
149:7,11,25;150:5;
152:18;155:16;156:6,
17,19,21;157:8,9,23;
158:14;159:12,15;
161:7;162:18;164:22;
165:23;168:2;171:9,
16,21,22;173:6,18;
178:11
**public-use (1)**
112:4
**PUC (1)**
176:20
**pulled (1)**
147:5
**punted (2)**
25:19,19
**purchase (1)**

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 198
of 205

169:8
**purpose (4)**
72:25;75:10,11;80:4
**purposes (2)**
80:3,21
**pursuant (1)**
99:21;121:1
**pursue (1)**
69:2
**put (20)**
6:6;12:8;20:15;
70:13;73:1,2;85:20;
87:3,25;94:13;96:6;
98:13;102:5;106:14;
131:17;142:12,22;
149:12;150:25;154:6
**putting (1)**
103:25
**puzzled (1)**
179:4

## Q

**qua (1)**
168:16
**quasi-public (1)**
102:7
**quickly (2)**
10:17;125:5
**quite (5)**
20:24,25;23:5;85:22,
24
**quo (1)**
89:15
**quorum (1)**
134:13
**quote (1)**
26:16

## R

**raise (2)**
17:24;30:20
**raised (11)**
7:14;8:12;9:1;16:23;
17:8;28:4;70:5;125:16;
132:5;136:14;139:5
**range (2)**
79:6,9
**rarely (1)**
109:13
**ratepayers (1)**
102:10
**rather (5)**
28:24;35:22;103:25;
160:8;175:7
**ratio (1)**
73:5
**reach (5)**
87:6;90:15;135:17;
143:13,14
**reached (2)**
25:24;112:18

**reaches (1)**
143:7
**read (22)**
21:16;29:24,25;89:8;
92:7;93:24;94:24;
101:24;116:4;117:25;
119:16,20;148:5,10,13;
158:14;179:2,2,3,8,9,
11
**reading (8)**
97:9;101:19;118:1;
125:13;144:16;145:12;
148:6;179:10
**reads (1)**
171:25
**ready (3)**
69:9;82:2;127:3
**real (5)**
81:21;94:14,15;
112:9;134:1
**realistic (3)**
73:5,22;130:14
**reality (2)**
73:20,21
**really (36)**
10:17;17:9;18:3;
19:1;27:7;30:12;33:12,
13;35:23;73:5;75:20;
76:3;87:12;103:20;
104:21;105:22;120:1;
121:16,17,18;125:7;
131:2;135:2,24;
136:17;140:17;141:1;
145:4;157:21;161:7,
13;164:15;170:11;
171:20;172:1;175:12
**reargue (1)**
122:17
**reason (12)**
40:10;73:1;75:5;
86:10;91:18;94:14,15;
110:11;133:16;134:5;
171:8;179:15
**reasonable (1)**
102:16
**reasonably (1)**
91:15
**reasoned (1)**
133:17
**reasons (11)**
73:2;82:3;102:3;
130:10;146:4;149:6;
152:11;155:13;179:13,
15;180:2
**rebuild (1)**
156:25
**rebuilding (1)**
78:15
**rebuilt (2)**
176:2,3
**rebuttal (1)**
144:2
**recall (3)**

15:19;25:19;86:5
**receipt (1)**
117:13
**recent (2)**
75:15,16
**recently (2)**
12:8;82:10
**recess (4)**
122:19;126:11,24;
127:1
**recognition (1)**
149:22
**recognize (2)**
124:13;174:11
**reconstruction (1)**
156:7
**record (10)**
70:22;139:3,22,23;
143:2,9;144:8;180:2,3,
4
**recourse (1)**
100:24
**recover (5)**
157:5;165:3,4,8;
174:19
**recovering (1)**
157:7
**recovers (1)**
174:2
**recovery (2)**
157:3,23
**red (1)**
25:8
**redefine (1)**
151:1
**reduce (1)**
82:24
**reference (5)**
13:5;98:23;110:20;
111:2,14
**referred (1)**
118:13
**referring (2)**
6:23;83:25
**refers (1)**
160:8
**refinancing (1)**
128:15
**reflect (2)**
122:20;128:7
**reflected (3)**
8:13;11:11;28:18
**reflects (1)**
86:22
**regard (3)**
25:6;161:5;162:3
**regardless (2)**
159:14;175:22
**regards (1)**
78:11
**regular (5)**
96:23;97:5;131:20;
141:4;157:1

**regulator (1)**
22:15
**regulators (2)**
83:23;87:2
**regulatory (2)**
170:10;177:13
**rehearse (1)**
179:2
**reinvent (1)**
140:5
**reiterate (1)**
126:7
**reject (2)**
101:17;146:3
**relate (4)**
9:16;24:18,19;27:6
**related (1)**
83:22
**relates (3)**
13:4;115:13;118:8
**relating (1)**
128:5
**relationship (4)**
171:12;172:2;173:2;
178:6
**relationships (1)**
170:20
**relative (1)**
36:23
**relatively (1)**
89:4
**relevant (2)**
17:10;32:9
**reliable (1)**
18:6
**relief (21)**
15:14;19:5,7,8,16;
21:14,21;82:7;95:16;
96:7,12,21,24;97:9;
98:14;99:22;101:6;
108:3;122:16;129:17,
20
**relinquish (1)**
99:17
**relinquishing (1)**
94:5
**relinquishment (1)**
95:25
**remaining (2)**
70:3;78:19
**remarked (1)**
103:1
**remarks (1)**
84:24
**remedies (10)**
19:22;20:14;88:15;
96:19;98:14;107:2,11;
108:10;120:1;129:15
**remedies-notice (3)**
108:11;120:15,19
**remedy (5)**
98:8;99:11;101:8;
108:24;120:11;164:4;

165:1;167:9,11;
173:15;175:3
**remember (3)**
86:13,14;147:16
**remind (2)**
12:21;23:7
**reminded (1)**
84:7
**reminder (1)**
70:15
**reminding (1)**
86:15
**removed (1)**
163:1
**removing (1)**
90:20
**renegotiate (1)**
71:22
**reorganization (11)**
23:14;24:21;93:20;
94:17;97:7,10;98:19;
102:22;103:15;131:19;
173:20
**reorganize (1)**
177:7
**repay (6)**
25:8;31:5;107:8,10;
118:19,23
**repaying (1)**
25:10
**repayment (2)**
40:15;99:25
**repeated (2)**
28:25;94:3
**repeating (1)**
38:17
**replace (1)**
98:4
**replacement (1)**
110:1
**reply (3)**
17:7;19:17;85:20
**report (1)**
15:24
**reported (1)**
93:17
**reportedly (1)**
102:5
**reporting (2)**
11:14;85:10
**represent (7)**
29:17;164:8,9;
165:24;168:16;170:17;
175:21
**representation (3)**
29:24;161:16;168:12
**representative (2)**
144:13;148:1
**representatives (2)**
143:12;149:25
**represented (9)**
146:24;165:5,10;
166:8;168:9;172:15;

173:11;175:22;178:11
**representing (1)**
  169:14
**represents (1)**
  164:25
**repricing (2)**
  131:1,16
**request (12)**
  5:21;9:23;15:13;
  37:13;79:5,21,24;
  80:16;83:24;104:17,
  18;147:23
**requested (1)**
  15:14
**requesting (1)**
  15:14
**require (5)**
  13:3;122:2,23;
  130:13;143:10
**required (2)**
  9:4;21:1
**requirement (6)**
  87:17;19;92:8;101:8;
  118:6;125:6
**requirements (2)**
  11:14;91:13
**requires (1)**
  166:1
**requisite (1)**
  122:4
**research (1)**
  87:15
**reserve (2)**
  143:25;156:2
**resolution (6)**
  124:25;131:22;
  133:22;135:7,18;
  138:18
**resolve (2)**
  5:19;131:8
**resolved (7)**
  34:10;130:10,11,17;
  141:9;142:20;176:7
**resources (1)**
  157:11
**respect (11)**
  9:2,14;10:24;11:12;
  18:12;22:13;97:19;
  129:3;130:14;131:7;
  136:13
**respectful (1)**
  22:14
**respects (1)**
  76:12
**responding (1)**
  85:11
**response (5)**
  11:23;33:16;114:1;
  129:22;178:25
**responsible (1)**
  121:8
**rest (1)**
  77:15

**restore (1)**
  172:25
**restored (1)**
  171:7
**restrain (1)**
  99:7
**restraining (1)**
  122:14
**restructuring (1)**
  101:11
**result (4)**
  99:9,12;107:7;
  166:13
**retained (1)**
  16:16
**retention (2)**
  6:11,16
**review (2)**
  17:1;18:16
**revised (3)**
  8:13;9:11;10:24
**revisions (1)**
  11:10
**revives (1)**
  77:4
**rid (1)**
  73:6
**right (137)**
  5:16;7:2;8:15;9:3;
  10:7;11:4;14:8;15:23;
  17:14,24;21:12;22:4;
  23:9,19;24:13,25;
  27:23;28:14;30:1;32:6,
  12;34:8,20;35:10;
  36:11,17,21,25;37:24;
  38:8;39:11;40:15;69:1;
  71:16;72:8;73:20;
  74:13,17;75:15;77:5,
  19;78:22;79:16;80:15;
  86:8,21;88:24;91:5,16,
  19;95:12;97:4,14,15;
  98:19;99:9,11,12,25;
  100:17,21;102:12,15,
  22;103:17;104:3;
  109:13,23;111:20,22,
  23;112:1,14,22;114:4,
  16;115:9,11,20,24;
  116:8;117:11,11,24,24;
  118:15,24;119:14,22;
  122:25;123:20;126:9;
  127:8;133:4,4,11,14;
  134:9,11;135:25;
  136:1,3;137:10;
  139:12,25;142:19;
  147:13;148:19,25;
  154:4;155:16;160:3,
  20,21,22;161:18,20;
  162:2;163:5,12,14,20;
  165:6;167:3;168:19;
  169:6,9,11,22;170:5;
  171:13;172:23;173:3,
  5;175:17;177:12;180:6
**rights (5)**

9:22;98:11;99:8;
  120:3,17
**rise (2)**
  5:4;127:2
**risk (13)**
  18:8;32:1;39:21;
  73:11;90:18;101:14;
  102:17,20,23;105:24;
  124:1;131:1,8
**risks (3)**
  106:9;172:5,6
**road (1)**
  107:20
**roadways (2)**
  156:7;171:7
**robust (2)**
  26:19,21
**role (5)**
  8:5;95:11;169:17;
  172:22;173:7
**rolling (2)**
  6:12;29:14
**rollup (2)**
  90:5,6
**roll-up (5)**
  29:7,16,18;30:2,5
**romanette (1)**
  119:25
**romanettes (3)**
  119:4,15,16
**roof (1)**
  26:16
**room (6)**
  39:19;40:9;132:6;
  144:11;159:23;160:5
**Rosa (1)**
  71:5
**routine (1)**
  8:7
**row (1)**
  144:13
**rule (1)**
  76:13
**ruled (1)**
  70:4
**rules (6)**
  110:20;111:3,4;
  153:2,2;179:25
**ruling (3)**
  132:19;134:20;
  178:17
**run (6)**
  84:19;92:17;101:13;
  105:11;126:1;133:25
**run-of-the-mill (1)**
  7:19

**S**

**Sacramento's (1)**
  102:9
**sad (1)**
  152:20

**safe (1)**
  18:6
**safety (15)**
  83:6,7;156:8,23;
  157:23,25;166:19;
  170:10;175:24;176:3,
  10,15,24;177:11;178:6
**sale (3)**
  93:6;98:6;122:3
**sales (3)**
  24:21;92:24;93:6
**same (9)**
  19:19;75:5;77:13,25;
  104:13,16;140:15;
  146:15;164:23
**SAN (1)**
  5:1
**Sander (2)**
  70:22;144:8
**sanguine (1)**
  101:23
**Sanitation (1)**
  71:2
**Santa (1)**
  71:5
**satisfactory (1)**
  125:17
**satisfied (1)**
  18:17
**satisfy (3)**
  103:24;106:24;129:7
**satisfying (1)**
  104:6
**saw (2)**
  81:6;89:8
**saying (15)**
  8:1;21:12;79:18;
  83:15;85:19;88:4,7;
  96:20,21;108:23;
  118:1;138:15,18;
  141:16;172:19
**SBA (1)**
  152:14
**scary (1)**
  98:20
**scenario (1)**
  98:17
**scenarios (1)**
  132:6
**schedule (2)**
  111:19,23
**schedules (1)**
  135:16
**school (1)**
  179:6
**schooled (1)**
  88:25
**schools (1)**
  156:8
**scope (3)**
  136:25;137:24;138:5
**scribner's (1)**
  163:6

**seated (1)**
  127:3
**second (10)**
  8:11;89:4;92:13;
  120:25;133:23;141:12,
  12;159:2,3;178:23
**secondly (1)**
  83:13
**Section (4)**
  91:9;151:19;167:15;
  178:18
**secure (1)**
  40:10;148:1
**secured (10)**
  30:13;31:15,21;32:3,
  11;33:4,5;40:16;97:3;
  102:17
**security (4)**
  26:19,21;147:25;
  148:2
**seek (7)**
  23:3;87:22;106:22;
  128:20,20;129:15,17
**seeking (11)**
  88:1;164:5,6;165:2,
  3,4,7;169:19;170:8;
  171:20,21
**seem (5)**
  75:18;79:25;103:1;
  135:20;162:13
**seemed (2)**
  114:16,16
**seems (10)**
  88:1;100:12;111:15;
  112:13;113:5;119:13;
  121:5;130:22;140:13;
  160:10
**self-insurance (1)**
  35:15
**sell (2)**
  93:25;109:21
**selling (1)**
  93:18;97:23,24
**Sempra (1)**
  102:14
**sense (2)**
  7:22;28:4;84:6;
  85:15;151:25;169:20
**sent (2)**
  134:22;160:1
**sentence (2)**
  154:5;159:3
**separate (2)**
  81:13;179:18
**separately (2)**
  82:9;143:10
**series (1)**
  168:20
**seriously (1)**
  156:5
**serve (16)**
  146:8;147:22;154:6,
  7,8,9,16;158:12,13;

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 200
of 205

161:19,20,23,25;
162:18;177:8;179:25
**served (1)**
171:23
**service (2)**
18:7;169:2
**services (2)**
102:8;169:20
**serving (3)**
157:15;159:14,21
**session (1)**
5:4
**set (10)**
7:20;13:9;91:21,21;
107:13;127:7;130:20;
146:4;163:17;166:4
**setoff (1)**
9:21
**sets (1)**
164:3
**setting (1)**
6:25
**settle (1)**
103:25
**settlement (3)**
82:13;103:8;104:1
**settlements (6)**
78:17,25;79:5;80:22;
103:7;105:5
**seven (21)**
19:23;20:2;108:11;
120:5;128:1,1,3;134:1,
22;140:16,16;153:13,
16;154:11,13,13,16;
160:8;161:15,17;
164:15
**seven-calendar-day (1)**
120:18
**seven-day (2)**
106:9;109:11
**seventy (2)**
73:13;79:12
**several (4)**
28:15;119:15;
156:16;162:4
**severance (1)**
79:3
**shall (4)**
112:12;142:17;
151:19;152:3
**shalt (1)**
118:21
**Shank (1)**
11:22
**share (4)**
74:1;122:17;133:2;
160:24
**shared (1)**
132:5
**sheet (1)**
113:17
**shelter (1)**
103:22

**sheltering (1)**
104:6
**shifted (1)**
96:15
**short (3)**
6:4;13:11;122:19
**shorten (1)**
165:23
**shot (1)**
139:9
**show (4)**
13:10,10;90:24;
173:6
**showing (1)**
99:15
**shut (1)**
39:14
**sic (3)**
141:4;163:7;179:14
**sick (1)**
133:10
**side (7)**
69:5,6;83:7;122:10;
127:8;132:21,24
**sides (4)**
83:2;143:22;144:5;
179:20
**sign (2)**
35:12;104:2
**signed (1)**
166:8
**significance (1)**
95:23
**significant (10)**
14:20;17:21;19:4;
25:16;37:1;101:13;
128:8,18;131:5;149:13
**signing (1)**
121:22
**similar (3)**
85:9,9;176:9
**simple (4)**
7:18;12:22;116:2;
179:22
**simplest (1)**
163:6
**simply (7)**
72:9;80:18;87:23;
94:6;98:18;103:9;
135:7
**single (1)**
142:1
**Singleton (3)**
77:21,22,23
**sit (4)**
83:17;171:18,21;
175:9
**sitting (3)**
79:1;126:10;144:13
**situation (7)**
35:21;76:11;77:2;
81:15;100:22;110:2;
155:4

**six (4)**
6:1;8:3;108:16;
164:14
**sixteen (2)**
164:7,9
**sixth (1)**
149:10
**size (3)**
12:24;18:10;40:7
**SLF (2)**
69:19;78:2
**small (2)**
13:12;159:5
**smart (1)**
29:15
**smidgen (1)**
89:11
**snapshot (1)**
35:12
**sneaky (3)**
90:5,6,7
**so-called (2)**
114:21;115:6
**sole (1)**
165:1
**solicit (1)**
140:8
**solicitation (1)**
161:24
**solution (1)**
122:23
**solvent (3)**
76:23;77:1;102:5
**somebody (11)**
17:24;29:13;34:6;
35:22;73:25;87:14;
90:2;96:10;155:15;
156:22;174:4
**somebody's (1)**
76:4
**somehow (10)**
31:6,8;33:11;38:2;
76:13;107:3;112:4;
150:24;170:24;178:11
**someone (10)**
5:24;34:21;38:9,11;
69:12;72:10,21;73:24;
140:23;154:7
**someone's (1)**
73:23
**sometimes (2)**
24:22;161:17
**somewhat (2)**
125:24;173:12
**somewhere (1)**
80:24
**Sonoma (6)**
71:2,2,3,4,4;144:12
**soon (1)**
11:18
**sooner (1)**
158:10
**sorry (16)**

7:1;10:16;36:1;
69:22;93:3,3,4,4,4,13;
94:18;110:22;127:13,
13;148:22;178:20
**sort (20)**
5:23;17:21;18:13;
19:6;23:2,15;25:16;
26:12;29:4;78:20;
106:16;109:5;113:9;
119:16;122:16;131:22;
134:19;136:15;149:14;
162:11
**sought (3)**
15:20;34:14;103:10
**sound (1)**
130:10
**sounds (3)**
10:7;30:1;110:2
**Southern (1)**
102:14
**Space (1)**
71:4
**speak (2)**
34:25;160:22
**speaking (1)**
162:4
**special (2)**
149:21,22
**specially (1)**
130:21
**specific (5)**
31:20;109:1;110:15;
111:14;128:8
**specifically (6)**
24:18;31:22;71:25;
146:7;151:8;153:18
**specified (1)**
111:19
**speech (1)**
132:8
**speed (1)**
12:15
**spend (2)**
12:12;83:11
**spending (1)**
83:25
**spent (2)**
126:18;127:20
**spoken (1)**
162:5
**sprinting (1)**
125:25
**stack (1)**
102:18
**staff (3)**
12:21;13:12;142:15
**stage (1)**
133:5
**stakeholders (1)**
168:5
**stand (4)**
35:24;38:4,12;106:7
**standard (3)**

30:11;91:16;93:1
**standards (2)**
106:24;108:22
**standpoint (1)**
124:15
**start (5)**
87:4;119:20;144:16;
145:7,9
**starting (3)**
119:25;120:2,16
**state (8)**
87:17;95:24;102:11;
116:15;147:15;149:24;
170:16;177:14
**stated (3)**
17:7;143:9;180:2
**statement (5)**
17:4;24:20;121:10,
18;122:8
**States (4)**
110:20;111:3,5;
146:6
**statue (1)**
151:12
**status (13)**
30:15,15;33:25;
34:15,19;35:7;37:9;
40:10;89:7,14;165:25;
166:23;169:19
**statute (29)**
145:8;148:10,13,15;
149:3;150:3,10;151:2,
7,25;153:17;154:18,
23;158:14,17,18;
160:7;161:8,8;162:6,7,
17,20;164:2;178:9,23;
179:1,2,11
**statutory (7)**
146:6,12;148:20;
150:21;159:7;164:12;
179:16
**stay (24)**
19:5,7,8,16;21:14,
21;30:8;90:21;95:16;
96:7;13,22,24;97:9;
99:23;101:6;106:14,
19;108:3,15;122:16;
124:3;129:14,20
**stay-lift (1)**
109:5
**stay's (1)**
109:3
**stay-type (1)**
98:14
**step (1)**
99:10
**Stephen (2)**
5:11;163:15
**stepping (1)**
26:11
**steps (1)**
95:6
**stick (1)**

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 201
of 205

22:19
**still (12)**
7:8;8:24;27:17;
29:22;86:25;105:13;
108:23;115:2;125:1;
150:7;172:9;178:8
**stop (1)**
171:13
**story (1)**
98:12
**straighten (1)**
146:11
**strain (1)**
158:10
**strained (1)**
157:10
**strange (1)**
112:13
**Street (3)**
40:18;100:23;101:23
**streets (1)**
156:7
**stress (1)**
158:9
**stressed (1)**
23:15
**stricken (1)**
74:20
**strictly (2)**
157:16;159:15
**strike (2)**
73:21;76:6
**striking (1)**
74:23
**strong (2)**
81:4;84:6
**Stroock (1)**
138:25
**struck (1)**
21:11
**structure (2)**
30:17;132:4
**stuff (7)**
30:1;35:16;37:17;
105:15;111:23;112:15;
119:3
**Stutzman (1)**
144:9
**sub-class (1)**
153:19
**subject (10)**
5:13;13:11;18:14;
22:21;72:19;113:7;
117:10;123:3;129:15;
179:3
**subjected (1)**
102:21
**submitted (2)**
78:23;94:14
**submitting (1)**
6:11
**subordinate (1)**
150:14

**subsection (1)**
91:12
**subsequent (3)**
88:4;118:2,4
**subsequently (1)**
16:16
**subset (2)**
27:10;104:24
**sub-set (1)**
115:8
**substance (1)**
111:9
**substantial (11)**
34:7,14;37:5;38:5,
10;100:9;173:15,19,
22;174:3,15
**succeed (1)**
135:3
**success (1)**
104:10
**successful (4)**
82:24;85:24;103:15;
177:7
**suffered (8)**
78:19;152:21,25;
166:12,13;169:22;
172:25;176:13
**suffering (1)**
78:14
**suffers (1)**
176:13
**sufficient (6)**
19:12;31:17;32:16;
99:15;110:11;128:11
**sufficiently (1)**
19:11
**suggest (7)**
5:19;22:16;87:20;
94:12;115:22;122:7,18
**suggested (1)**
14:5
**suggesting (5)**
36:21;91:23,24;
107:24,25
**suggestion (5)**
5:13;22:23;96:14;
100:11;126:21
**suggests (1)**
23:13
**Sullivan (2)**
77:24;78:1
**Sullivan's (1)**
103:1
**sum (2)**
34:7;100:9
**summit (1)**
122:23
**super (4)**
25:9;34:18,18;37:9
**supplemental (2)**
10:1;139:4
**support (7)**
9:17;17:4;75:16,18;

121:5,10;132:25
**supporting (2)**
25:4;165:22
**supportive (6)**
11:25;75:14;76:8,15;
132:3,3
**suppose (2)**
34:4;176:13
**supposed (2)**
101:3;137:14
**Sure (48)**
7:10;11:9,24;12:5;
13:19;16:4,19,25;
20:13;21:4;25:4;27:1;
28:12;39:9,9;40:14;
76:22,25;78:22,24;
89:23;90:7;93:24;99:8;
107:1;108:5;111:12,
18;116:4,6;117:25;
119:24;124:14;127:9,
22;129:10;133:23;
134:15;136:13;139:1;
144:2;156:3,15;
158:17;159:12;161:4;
168:4;173:24
**surprise (1)**
178:17
**suspenders (4)**
113:15,23;118:11,20
**Sussman (1)**
11:22
**sustained (1)**
85:10
**Swaine (2)**
15:11;105:21
**sweeps (1)**
113:19
**switch (3)**
19:7;92:2,15
**sympathetic (8)**
81:14;82:5;84:10;
104:3;150:21;161:6;
162:13;166:12
**sympathies (1)**
151:3
**syndicate (4)**
95:5;100:8;123:25;
140:8
**system (4)**
93:19;94:1;97:23,24

**T**

**table (4)**
22:18;132:11;136:7,
10
**talk (12)**
18:16;87:4;95:6,8,
10;129:23;132:9;
133:18,19;134:2;
141:10;168:11
**talked (5)**
30:7,8;31:1;153:17;

172:3
**talking (12)**
34:21;98:17,20;
113:11;119:3;135:24;
140:13;151:8;156:21;
157:10;163:3;164:19
**talks (3)**
145:21;158:23,24
**tantamount (1)**
25:14
**tax (1)**
157:11
**taxpayers (1)**
102:11
**technical (3)**
87:12;90:14;169:20
**tee (2)**
81:12,16
**telephone (1)**
139:20
**telling (3)**
81:22,23;108:16
**temporary (1)**
122:14
**ten (1)**
86:3
**Tennessee (1)**
147:15
**tension (1)**
22:11
**tents (1)**
86:25
**term (10)**
19:22;31:7;90:22;
92:7;95:18;101:16;
112:19;116:8,9;162:21
**terminate (1)**
119:17
**terminated (1)**
108:16
**termination (24)**
20:21,23;22:1,25;
90:22,23,25;96:1;
97:20;99:18;117:1,9;
119:5,7,13;120:6,12,
20;128:2,5,9,17;129:9,
20
**terminology (2)**
89:9;96:23
**terms (25)**
16:21;18:25,25;21:6;
23:11;24:19;25:2;26:1,
13,13,18,21;32:1;
86:10;91:21;92:6;
100:10,20,25;113:21;
116:3;125:15;126:21;
135:3,4
**terrific (1)**
116:13
**testimony (2)**
78:7;80:23
**testing (1)**
25:1

**Thanks (1)**
142:9;161:12
**that'll (1)**
179:21
**theme (1)**
158:8
**themes (1)**
78:13
**theory (1)**
162:12
**therefore (7)**
36:14;73:9;84:10;
113:20;114:10;135:12;
155:11
**therewith (1)**
91:14
**thinking (4)**
6:18,21;134:21;
180:4
**third (2)**
163:23;178:24
**third-party (1)**
98:21
**thirteen (1)**
134:4
**thirty (4)**
16:2;74:11;92:18;
127:7
**thirty-day (1)**
92:16
**Thomas (3)**
131:23,25;167:22
**thou (1)**
118:21
**though (7)**
28:23;40:21;113:20;
120:13;152:21;169:19;
174:10
**thought (10)**
9:7;19:3;28:1;32:15;
33:22;103:19;115:1,1;
125:16;128:16
**thoughts (1)**
22:21
**three (8)**
11:13;20:9;28:15;
69:17;108:13;162:5;
166:8;169:5
**three-day (1)**
108:12
**three-tenths (1)**
79:11
**thresholds (2)**
39:13;107:6
**throw (1)**
122:14
**ties (1)**
89:19
**tighter (1)**
89:19
**timely (2)**
69:18;71:9,12
**times (3)**

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 202
of 205

90:20;162:4,5
**timing (3)**
80:1,18;84:18
**tired (1)**
132:8
**today (29)**
5:10,18;6:1,13;38:5,
11,12;69:11;70:2;
82:19;106:7;124:4,24;
129:2,4,6;130:4,10,11,
13,17;131:8,10;
133:10;134:8,13;
136:15;141:9;170:14
**today's (1)**
17:1
**together (4)**
34:10;82:15;85:21;
134:8
**told (15)**
15:21;26:15;77:1;
87:8;111:9;114:1;
115:21;137:11;138:17;
140:10;142:10;153:18;
164:12;175:9;179:4
**tomorrow (1)**
141:6
**took (3)**
121:25;123:8;139:9
**tool (1)**
173:15
**top (4)**
102:18;154:11,13,16
**topic (1)**
25:25
**tort (47)**
16:14;17:5;18:2;
19:6;22:23;23:12;25:6;
27:14,19;28:15,21,24;
29:21;35:20;69:9,9,14;
71:14;80:12;84:23;
85:6,13;96:14;101:15;
104:3;116:20;122:22;
124:19;127:23;134:14;
135:2,11,25;137:10;
141:16;143:7,12;
156:18,20;157:1,2,3,
20;164:25;165:4;
172:16,17
**tort- (1)**
164:25
**Total (3)**
19:25;79:13;126:15
**totality (1)**
105:7
**touch (2)**
12:10;106:16
**tougher (1)**
151:6
**town (4)**
71:1;149:15,18;
156:8
**track (4)**
84:18;93:13,14;

127:10
**tracking (1)**
143:3
**trade (3)**
35:22;76:7;156:22
**tradeoff (1)**
26:19
**trading (3)**
86:19,19,20
**traditional (7)**
12:19;17:12;96:4;
98:14;155:10,24;
179:25
**tragedy (1)**
39:24
**transaction (1)**
93:8
**transfer (2)**
21:1;128:21
**transition (1)**
140:18
**transmission (1)**
98:7
**travel (1)**
135:16
**traveling (1)**
130:22
**treated (2)**
113:20;152:13
**treatment (2)**
25:11,12
**tree (1)**
169:2
**trees (2)**
172:7,21
**tremendous (2)**
158:9,10
**tried (1)**
163:9
**trigger (16)**
35:24;36:5,17,24;
37:5;38:2,14;39:7,16;
40:6;97:19,21;116:3,7;
117:13,16
**triggered (2)**
19:15;93:21
**triggering (1)**
125:15
**trigger-notice (1)**
116:12
**triggers (1)**
19:10
**trip (1)**
98:19
**trouble (3)**
26:7;81:14;171:4
**true (8)**
83:14;95:7,9,21;
99:2;109:6;121:9;
145:17
**trump (1)**
22:17
**trust (4)**

81:4,19,20;99:23
**Trustee (58)**
5:24;7:11,13,15,18;
8:24;9:1;69:23;70:1,
15;71:17;72:22,22;
74:5,14,15,18;90:12,
17;98:1,3,4,23,25;99:5,
5,6;107:15,16,18;
128:6,13,17;129:12,16;
134:24;140:18;144:19,
20;145:5;146:11,21,22,
25;147:2,18,22;
148:17;150:18;154:14;
156:11;158:19;159:4;
160:11;161:6;164:2;
165:15;179:1
**Trustees (1)**
146:6
**Trustee's (5)**
5:25;6:11;72:5;
74:10;161:13
**try (14)**
22:15;71:24;73:9;
75:12;80:13;94:13;
127:10;130:4;137:21;
142:17;151:14;157:14;
159:2;163:16
**trying (14)**
21:3;35:20;36:22;
101:5;103:9,20;106:1;
109:21;121:11,15;
125:22;132:9;135:2;
171:24
**tuning (1)**
133:20
**turn (1)**
127:19
**turned (2)**
9:20;118:5
**tweak (1)**
132:18
**tweaks (1)**
12:11
**twenty (1)**
79:9
**twenty- (2)**
32:21;72:17
**twenty-five (19)**
32:18,20;72:5,20,23;
73:21,25;74:2;75:2,12;
93:16;117:5,7,10,20;
119:9;120:8,16;144:3
**twenty-four (2)**
140:11;141:1
**twenty-one (9)**
128:7,12,16,16;
129:12,13;133:25;
134:1;140:14
**twice (4)**
151:7;152:7,10;
153:18
**two (32)**
5:14,15,15,17;8:7;

81:4,19,20;99:23
11:8,18;28:15;39:25;
69:18,18;83:2;87:5,5,
11;90:14,25;97:22;
119:14;120:10;126:10;
159:20;165:10,11,15;
168:10;172:18;175:25,
25;176:4,4,6
**type (6)**
7:19;24:21;26:3;
34:18;156:25;157:21
**types (1)**
27:3
**typical (8)**
19:24;20:9,10,19;
23:16;24:21;25:12;
91:25

**U**

**Uh-hum (1)**
40:19
**Um-hum (9)**
36:13,15;110:24;
114:19;115:4;116:16;
118:15;119:1;124:21
**unable (3)**
87:17;107:10;165:24
**unclear (1)**
143:19
**uncomfortable (1)**
130:21
**unconfirmable (1)**
25:13
**under (40)**
15:18;16:7,9;21:13;
31:16,17;32:2;34:9;
36:12;37:3,6;39:6;
40:22;73:10,12;81:18;
94:4;98:9,17;99:15;
100:6,9;106:15;
112:16;114:18;119:10;
129:13;146:8,20;
147:23;151:18;158:9,
10,18;163:22;166:10;
167:6,15;173:25;174:2
**underground (2)**
176:22;177:24
**undergrounded (2)**
176:15,19
**undergrounding (1)**
176:12
**underlying (1)**
121:14
**undersecured (1)**
75:7
**understandable (1)**
79:24
**understands (1)**
161:6
**understood (10)**
28:12;69:7;81:1;
84:14;123:17;125:2,
12;133:12;138:21;

175:1
**undo (1)**
92:18
**undue (4)**
23:13;25:15;31:2;
94:16
**unduly (1)**
25:5
**unforeseen (1)**
98:23
**Unfortunately (3)**
107:16;124:4;162:17
**union (1)**
169:10
**unique (7)**
80:23;85:9;149:21;
157:17;158:11;164:23;
171:12
**uniquely (1)**
149:11
**UNISON (1)**
5:7
**unit (4)**
152:16;153:25;
162:21;172:20
**United (4)**
110:20;111:3,4;
146:6
**units (3)**
158:20;160:12;
179:17
**unius (1)**
153:23
**universe (1)**
164:20
**unknowable (1)**
38:16
**unless (8)**
21:17;25:10;84:11;
90:2;98:13;108:10,11;
179:9
**unlikely (1)**
112:7
**unofficial (6)**
37:17,21;166:24;
167:3;174:22;180:3
**unordinary (1)**
155:4
**unrelated (3)**
27:8;120:15;155:13
**unsecured (38)**
14:25;16:13;17:3;
25:21,24;29:1,6,11;
30:13;32:17,25;33:4;
34:11;35:17;36:14;
81:11;89:13,21;90:1;
116:20;122:10;132:1;
156:18,20;157:1,20;
164:23;165:5;167:23;
168:21,22,24;169:14;
172:16;175:9,11,20;
178:12
**unsuccessful (2)**

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 203
of 205

26:5;73:8
**unsupportable (2)**
95:18,22
**unusual (5)**
76:11;77:6,11;104:8;
149:10
**unwilling (3)**
33:19;141:16;161:23
**up (37)**
7:4;12:15;13:12;
21:13,14;22:3;29:15;
32:17,25;33:15;35:14;
36:23;37:16,25;70:24;
81:12,16;82:15;84:17;
92:17;98:19;104:1;
109:25;122:12;123:15;
126:13;127:4;131:10;
132:19,20;136:13,24;
137:17,19;160:22;
173:6,21
**update (1)**
127:15
**uploaded (1)**
11:18
**upon (5)**
36:17;80:22;94:6;
99:17;106:18
**upset (1)**
100:14
**upsetting (1)**
100:12
**upshot (1)**
101:23
**upstairs (1)**
172:4
**use (17)**
15:7,22;40:24;75:15;
100:6;103:1;112:25;
118:19,22;161:14;
171:4
**used (10)**
31:5;40:25;80:2,3,
21;88:22;103:16;
113:4,18;114:20
**uses (1)**
112:16
**using (4)**
30:10;88:19;112:21;
179:5
**usually (1)**
7:20
**utilities (3)**
176:14,19;177:24
**Utility (12)**
11:22;16:1;21:1;
27:11;87:13;88:15;
102:7;128:21;169:21;
172:24;174:15;177:3
**utilize (1)**
16:5
**utmost (1)**
85:11

**V**

**value (7)**
73:14;86:12;95:23;
103:14,22,24;133:6
**variance (1)**
25:1
**variety (1)**
80:21
**various (8)**
6:11;70:22;72:18;
80:3,9,9;84:5;112:16
**vegetation (1)**
172:21
**vendors (4)**
80:10;103:17,18;
169:7
**Vera (1)**
144:22
**verbiage (1)**
87:22
**versus (1)**
128:1
**vestige (1)**
12:17
**veto (3)**
135:25;136:1;137:10
**viable (1)**
81:18,21
**victim (1)**
169:23,24;171:5;
172:9,17
**victims (17)**
27:18;69:19;71:7;
77:22;78:12,15,19;
79:1;81:3,3,10,15;
84:10;104:24;105:4;
170:2;172:8
**victims' (2)**
17:12;135:3
**view (8)**
19:4,17;38:13;106:6;
157:4;165:15;178:13;
179:16
**viewed (1)**
17:19
**views (2)**
14:17;148:15
**villages (1)**
156:8
**vindicate (1)**
170:8
**violated (1)**
31:18
**violation (3)**
91:18;92:16;118:11
**vis-à-vis (1)**
38:2
**visualize (1)**
35:9
**voice (11)**
87:25;88:17,19,22,

24;90:10;121:21;
168:2,8;170:25;179:5
**volume (1)**
13:15

**W**

**wait (4)**
120:4,5;127:18;
159:2
**waiting (2)**
8:1;79:1
**waivers (2)**
77:14,14
**walk (2)**
105:17;116:2
**Wall (3)**
40:18;100:23;101:22
**wants (6)**
10:6;32:2;75:14;
98:18;104:23;176:22
**warranted (1)**
90:21
**waste (1)**
90:2
**Water (2)**
71:3,7
**wave (2)**
6:2,12
**way (34)**
10:8;13:1;14:3;
25:15;29:13,16;32:9;
38:13,14;76:13;78:16;
80:14;88:10;90:24;
92:15;102:10;116:14;
117:25;118:21;122:16;
132:22;133:14;138:15;
143:9;145:18;151:1,
18;153:5,24;157:19;
163:6;171:24;173:23;
179:9
**wearing (1)**
172:21
**WEDNESDAY (1)**
5:1
**Week (5)**
19:25;78:8;80:24;
120:21;124:25
**weekend (1)**
108:12
**weekends (1)**
120:22
**weeks (4)**
6:1;8:3;124:5;
141:24
**weigh (1)**
19:21
**weighed (1)**
12:4
**Weil (2)**
5:12;163:16
**welcome (2)**
82:14;100:12

**welfare (1)**
170:10
**well- (1)**
166:7
**well-coordinated (1)**
166:5
**well-organized (3)**
166:4,7;167:8
**well-represented (2)**
166:9,20
**well-served (1)**
179:19
**weren't (5)**
27:4;29:15;37:12,12;
81:10
**whatever's (1)**
137:24
**what's (22)**
23:4;28:18;72:25;
74:15,23;86:4;88:23;
90:11;97:16;106:6;
111:14,17;119:11;
129:22;131:20,21;
132:21;142:15;144:7;
146:22;167:25;171:15
**whatsoever (1)**
134:5
**wheel (1)**
140:5
**Where's (2)**
121:4;131:20
**Whereupon (1)**
180:9
**whole (11)**
15:7;39:14;72:25;
73:21;75:9;76:6,19;
87:13;102:11;107:7;
161:16
**who's (10)**
22:10;88:17;89:20,
21;90:2;97:10,13;
126:10;144:12;157:2
**wiggle (1)**
159:23
**wild (1)**
166:13
**wildfire (4)**
17:6;40:13;71:8;
172:5
**wildfires (2)**
39:22;149:20
**wildlife (1)**
172:5
**willing (18)**
27:5,16;37:12;82:17;
102:19,23;105:23;
128:2,6,19;154:6,8,9,
16;161:19,20,23,25
**willingly (1)**
125:10
**Wilson's (1)**
11:22
**winery (1)**

169:2
**wire (1)**
166:13
**wish (3)**
28:1;88:12;95:14
**withdrawal (1)**
98:22
**within (12)**
20:15;36:19;75:25;
92:18;113:24;114:12;
130:23;132:12;146:12,
12;152:8;153:19
**without (12)**
7:20;18:5;19:13;
25:10;33:2;94:1;
116:22;135:16;140:8;
148:6;165:24;170:18
**word (14)**
29:25;70:13;113:19;
121:25;148:8;150:24;
151:1;154:3;158:22,
23,25;159:1;161:14;
163:1
**wording (2)**
23:4;89:3
**words (16)**
23:1;32:1;34:4;73:8;
106:17;113:3,11;
116:17;118:12;121:5;
145:22,23;164:1,12;
172:7;176:17
**work (9)**
7:18;10:21;123:18;
127:24;131:22;132:24;
134:6;140:19;142:13
**workable (1)**
159:11
**worked (3)**
7:15;16:18,22
**worker's (1)**
35:15
**working (1)**
7:3
**works (4)**
76:13;116:3,15;
171:25
**world (2)**
112:9;155:9
**worried (2)**
125:7;134:24
**worry (2)**
29:23;125:8
**worst (1)**
171:5
**worth (4)**
28:1;75:21;94:3;
96:18
**write (1)**
77:13
**wrong (3)**
94:4;97:16;173:15
**wrote (2)**
25:16;77:12

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 204
of 205

## X

**XYZ (1)**
174:19

## Y

**year (1)**
24:2
**years (4)**
39:25;74:11;75:16;
77:13
**Yep (2)**
15:3;137:23
**yesterday (5)**
8:23;9:1;17:4;70:12;
146:23
**Yuba (1)**
71:5

## Z

**zero (1)**
24:23
**Zumbro (233)**
14:9,20,23;15:3,6,9,
11,24;16:9,11;17:14,
18,21,25;18:21;20:2,4,
6,8;21:9,11,20,22,24;
22:1,5,7,9,22;23:8,11,
20,23;24:1,3,5,8,12,14,
17;25:1;26:9,11,17;
27:13,20,23,25;28:7,9,
11,14,22;29:3,6,9,12,
15,20;30:2,4,7,22;
31:14,23;32:4,6,8,13,
21,24;33:5,17,21,24;
34:3,5,8,13,22;35:4,6,
10,13,18;36:1,5,11,13,
15,18,25;37:3,9,11,19,
24;38:4,9,19,22;39:2,9,
12,18,20,23;40:1,5,8,
12,17,19;72:10;89:5;
94:18;105:9,16,21,21;
106:4,7,13;107:23;
108:2,5,7,9,19,23;
109:2,4,8,10,16,19,23;
110:3,6,8,16,18,22,25;
111:7,18,21,24;112:2,
9,11,14,21,23;113:8,
22;114:8,13,19;115:1,
5,8,12,17,19,25;116:6,
9,11,14,17,19,24;
117:6,8,12,18,21;
118:8,16;119:1,14,19,
23;120:10,23;121:15,
20;123:4,10,17,19;
124:11;125:17;126:23;
127:14,18,20;129:10,
13,19;130:19,24;131:4,
13,16;133:1;135:10,
22;136:2,5,8,10,12,19,
22,24;137:3,6,8,15,18,
20,23;138:2,5,7,10,13,
21;139:24;141:8;
142:10

## 1

**1 (5)**
86:16;123:12;
124:24,24;126:11
**1.1 (1)**
9:20
**1.5 (2)**
15:19;16:2
**1:15 (5)**
126:13,13,19,25;
127:1
**1:30 (1)**
142:16
**10 (1)**
115:13
**100 (1)**
103:11
**100,000 (2)**
74:4,16
**101 (2)**
153:21;178:18
**101.41 (1)**
179:14
**101-39 (1)**
145:25
**105 (1)**
106:15
**10-K (1)**
15:25
**11 (9)**
74:18;90:12;107:16;
118:2;128:6,17;
129:11;134:24;140:18
**11:53 (1)**
127:1
**1101.39 (1)**
179:11
**1102 (8)**
145:21;146:20;
147:23;163:1;168:11;
170:13,23;171:24
**1102a2 (2)**
148:6;159:22
**1102a4 (2)**
158:18;159:3
**1102b (1)**
179:10
**1102b1 (1)**
148:6
**1109 (1)**
167:7
**11USC101-41 (1)**
146:9
**12th (1)**
16:14
**13 (1)**
5:1

**13th (1)**
154:7
**14 (3)**
118:9,25;119:2
**14B (1)**
108:6
**15 (3)**
114:17,21;118:10
**150 (1)**
32:25
**15th (4)**
16:15;24:12;124:10,
11
**16 (1)**
114:17
**18 (1)**
114:3
**1984 (1)**
162:8
**1994 (1)**
162:8

## 2

**2:23 (1)**
180:9
**20 (2)**
144:16;145:12
**2015 (1)**
78:13
**2017 (1)**
71:8
**2019 (3)**
5:1;39:22;144:17
**2020 (1)**
23:25
**22 (1)**
113:13
**23 (1)**
113:6
**24 (1)**
26:2
**25 (1)**
120:3
**256 (1)**
103:11
**26,000 (1)**
149:15
**26th (5)**
130:20;135:19,21;
137:25;142:11
**27th (9)**
13:9,10;135:20,21;
139:6;142:11,12,23;
143:5
**28th (2)**
15:25;16:25
**2nd (1)**
91:20

## 3

**3 (1)**

**34:9**
**3,500 (1)**
78:3
**32 (1)**
120:22
**341 (2)**
78:7;80:24
**345 (1)**
8:25
**35 (3)**
20:24;23:8;128:19
**350 (1)**
16:1
**362 (1)**
106:19
**362d (1)**
96:25
**363m (1)**
122:3
**364 (1)**
122:4
**364b (1)**
33:4
**364c (1)**
36:12
**39 (1)**
179:14

## 4

**4 (15)**
33:19;34:1,9;36:22;
38:24;73:10;110:19;
111:3;114:3;119:7,20,
25;120:2,3,17
**400,000 (1)**
9:19
**41 (1)**
152:15
**45 (2)**
14:6,21

## 5

**5 (2)**
76:17;114:18
**50 (1)**
122:24
**500 (5)**
32:13;36:22;118:13,
17,22
**500-million-dollar (1)**
36:19
**502 (1)**
173:25
**502b3 (2)**
174:1,17
**503 (4)**
37:17;71:25;72:2,3
**503b (6)**
33:19;72:10,13,21;
167:15;173:25
**503b3 (5)**

**34:1;36:21;38:24;
73:10;150:9**
**506b (1)**
77:13
**506c (1)**
77:14
**548 (1)**
104:8
**59 (1)**
91:8

## 6

**6 (3)**
114:3;115:9;120:4
**6.4 (1)**
91:10
**60 (1)**
103:10
**62 (1)**
97:5
**67 (4)**
92:15,20,20,21

## 7

**7 (2)**
74:10,15
**7.5 (2)**
92:23;93:23
**700 (1)**
118:17
**709-1 (1)**
16:24
**73 (1)**
91:5
**78 (1)**
162:6

## 8

**8 (3)**
110:19;111:2;112:24
**800 (1)**
118:22

## 9

**9:30 (5)**
5:1;142:16,24,25;
143:5
**900 (1)**
80:25

Case: 19-30088    Doc# 885    Filed: 03/14/19    Entered: 03/14/19 16:25:41    Page 205
of 205