# Exhibit B

## Engagement Agreement



Prime Clerk LLC Engagement Agreement

This Agreement is entered into as of January 9, 2019 between Prime Clerk LLC ("**Prime Clerk**") and PG&E Corporation and Pacific Gas and Electric Company (together with their affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

    (a) Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").
    (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.
    (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

    (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein, and as has been modified by those certain discounts extended by Prime Clerk to the Company (the "**Rate Structure**"). The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.
    (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.
    (c) Prime Clerk will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder.
    (d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $100,000. Prime Clerk may use such advance against unpaid fees and expenses hereunder. Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

3. **Retention in Bankruptcy Case**

   (a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

   (b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

4. **Confidentiality**

   (a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

   (b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



5. **Property Rights**

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Prime Clerk for itself or for use by the Company hereunder. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

6. **Bank Accounts**

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

7. **Term and Termination**

    (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.
    (b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.
    (c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.
    (d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

8. **No Representations or Warranties**

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9. **Indemnification**

    (a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Prime Clerk's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.
    (b) Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.
    (c) The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.
    (d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder. In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. **Company Data**

    (a) The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.
    (b) The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.
    (c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk. Any such disposal shall be in a manner requested by or



acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

**12. Non-Solicitation**

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

**13. Force Majeure**

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**14. Choice of Law**

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

**15. Arbitration**

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.  Notwithstanding the foregoing, upon commencement of any chapter 11 case by the Company, any dispute related to this Agreement shall be decided by the Bankruptcy Court to the extent the Bankruptcy Court has, retains or exercises jurisdiction over the dispute.

**16. Integration; Severability; Modifications; Assignment**

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.
(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.
(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.
(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

**17. Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**18. Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

| | |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC<br>830 3rd Avenue, 9th Floor<br>New York, NY 10022<br>Attn: Shai Waisman<br>Tel: (212) 257-5450<br>Email: swaisman@primeclerk.com |
| If to the Company: | PG&E Corporation<br>77 Beale Street<br>San Francisco, California 94177<br>Attn: John R. Simon<br>Tel: 415-973-1000<br>Email: John.Simon@pge-corp.com |
| With a copy to: | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Attn: Matthew Goren<br>Tel: (212) 310-8440<br>Email: matthew.goren@weil.com |

*[Signature page follows]*

6



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

_____

By:   Shira Weiner
Title: General Counsel


**PG&E Corporation**

_____

By: John R. Simon
Title: Executive Vice President and General Counsel


**Pacific Gas and Electric Company**

_____

By: Janet Loduca
Title: Senior Vice President and Deputy General Counsel

# Rates

### Claim and Noticing Rates[1]

| Title | Hourly Rate |
|---|---|
| Analyst<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $55 |
| Technology Consultant<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $95 |
| Consultant/Senior Consultant<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Prime Clerk's Senior Consultants average over five years of experience. | $65 - $170 |
| Director<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $200 |
| Chief Operating Officer and Executive Vice President<br>Michael Frishberg, Prime Clerk's COO, and Ben Schrag, Prime Clerk's Executive Vice President, both former restructuring attorneys with collectively over twenty five years of experience, will add an additional supervisory layer to this matter at no charge. | No charge |

---

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours. Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

### Solicitation, Balloting and Tabulation Rates[2]

| | |
|---|---|
| Solicitation Consultant | $180 |
| The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | |
| Director of Solicitation | $200 |
| The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | |

### Printing and Noticing Services

| | |
|---|---|
| Printing | $0.10 per page[3] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | No charge |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

### Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

---

[2] Certain fees may be applicable to noticing, solicitation and corporate action events involving holders of public securities.

[3] Volume discounts will be applied to large mailings.

### Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

### Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.10 per image |
| Data Storage, maintenance and security | $0.10 per record per month (waived for the first two months) |
| Virtual Data Rooms | Available on request |

### On-line Claim Filing Services

| | |
|---|---|
| On-line claim filing | No charge |

### Call Center Services

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

### Disbursement Services

| | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |