WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>      **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*∗ All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**<br><br>Date: April 9, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>    Courtroom 17, 16th Floor<br>    San Francisco, CA 94102 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Application (the "**Application**"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (i) authorizing the employment and retention of Lazard Frères & Co. LLC ("**Lazard**") as investment banker for the Debtors effective as of the Petition Date (as defined below), (ii) modifying certain time-keeping requirements, and (iii) granting related relief, in accordance with the terms and conditions set forth in the engagement letter between the Debtors and Lazard dated as of January 4, 2019 (the "**Engagement Letter**," which Engagement Letter includes the terms of the related indemnification letter dated as of September 15, 2011, the "**Indemnification Letter**").

A proposed form of order approving the retention and employment of Lazard is annexed hereto as **Exhibit A** (the "**Proposed Order**"). Copies of the Engagement Letter and the Indemnification Letter are annexed hereto as **Exhibit B** and **Exhibit C**, respectively. In support of this Application, the Debtors submit the declaration of Kenneth S. Ziman, (the "**Ziman Declaration**"), filed concurrently herewith.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

## III. LAZARD'S QUALIFICATIONS

In light of the size and complexity of these Chapter 11 Cases, the Debtors require a qualified and experienced investment banker with the resources, capabilities, and experience of Lazard to assist them in pursuing the transactions that are crucial to the Debtors and these Chapter 11 Cases. An investment banker, such as Lazard, fulfills a critical role, complementing the services provided by the Debtors' other professionals. The Debtors believe, and request that the Court find, that retaining Lazard as their

investment banker is in the best interests of their estates and stakeholders because, among other things, Lazard has extensive experience in, and an excellent reputation for, providing investment banking and financial advisory services to utilities and other participants in the power and energy industry, and debtors in chapter 11 reorganizations and other restructurings.

Regarding its restructuring expertise, Lazard and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 cases. Lazard's employees have advised debtors, creditors, equity constituencies, and government agencies in many complex reorganizations. Indeed, since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $1 trillion in debtors' assets. Moreover, Lazard's professionals have been retained as investment bankers in a number of troubled company situations, including, among others, the following chapter 11 cases: *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. 2018); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. 2018); *In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D. Ohio 2018); *In re TK Holdings Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. 2017); *In re CGG Holding (U.S.) Inc.*, No. 17-11637 (MG) (Bankr. S.D.N.Y. 2017); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. 2017); *In re The Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. 2017); *In re Stone Energy Corp.*, No. 16-36390 (MI) (Bankr. S.D. Tex. 2017); *In re RCS Capital Corp.*, No. 16-10223 (MFW) (Bankr. D. Del. 2016); *In re Linn Energy, LLC*, No. 16-60040 (Bankr. S.D. Tex. 2016); *In re Peabody Energy Corp.*, No. 16-42529 (Bankr. E.D. Mo. 2016); *In re Paragon Offshore plc*, No. 16-10386 (CSS) (Bankr. D. Del. 2016); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del. 2015); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. 2015); *In re Chassix Holdings, Inc.*, No. 15-10578 (MEW) (Bankr. S.D.N.Y. 2015); *In re Dendreon Corp.*, No. 14-12515 (LSS) (Bankr. D. Del. 2014); *In re Legend Parent, Inc.*, No. 14-10701 (RG) (Bankr. S.D.N.Y. 2014); *In re AWI Delaware, Inc.*, No. 14-12092 (KJC) (Bankr. D. Del. 2014); and *In re QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del. 2014). Accordingly, Lazard has developed significant relevant experience and expertise that will enable Lazard and its professionals to provide necessary investment banking services in these Chapter 11 Cases.

With respect to the Debtors, Lazard has advised PG&E Corp. for years, with the initial engagement for advisory services starting in 2011. Since that time, Lazard has provided financial

advisory and investment banking services to PG&E Corp. with respect to a variety of matters, including without limitation: analysis of the financial condition of the company, evaluation of potential transactions that the company may pursue, assessment of financing options, and shareholder advisory services. Given Lazard's long history with PG&E, Lazard has significant familiarity and knowledge of the Debtors' business, operations, and financial challenges. Therefore, between Lazard's expertise in providing investment banking services in some of the largest chapter 11 cases in history, and Lazard's intimate knowledge of the Debtors, the Debtors believe that it is in the best interests of their restructuring and reorganization efforts to engage Lazard's services as an investment banker in these Chapter 11 Cases.

## IV. SCOPE OF SERVICES

Lazard has agreed to provide services to the Debtors in these Chapter 11 Cases in accordance with the terms and conditions set forth in the Engagement Letter (including the terms of the Indemnification Letter). The terms of the Engagement Letter reflect the mutual agreement between the Debtors and Lazard as to the substantial efforts that may be required of Lazard throughout the course of these proceedings. The Engagement Letter provides, in consideration for the compensation contemplated thereby, that Lazard will, to the extent reasonably requested by the Debtors, render the following investment banking services (collectively, the "**Services**"):[1]

    a. Reviewing and analyzing the Debtors' business, operations and financial projections;

    b. Assisting to formulate strategic and structural alternatives in connection with any Transaction,[2] Restructuring, and/or Financing, as applicable;

    c. Evaluating the Debtors' potential debt capacity in light of its projected cash flows;

    d. Assisting in the determination of a capital structure for the Debtors;

---

[1] In the event of any inconsistency between the description of the Services as set forth herein and the Engagement Letter, the Engagement Letter shall control.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

e. Assisting in the determination of a range of values for the Debtors on a going concern basis;

f. Advising the Debtors on tactics and strategies for negotiating with their Stakeholders;

g. Rendering financial advice to the Debtors and participating in meetings or negotiations with their Stakeholders and/or rating agencies or other appropriate parties in connection with any Transaction, Restructuring, and/or Financing;

h. Advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Transaction, Restructuring, and/or Financing;

i. Advising and assisting the Debtors in evaluating any potential Financing, and, subject to Lazard's agreement to act and, if requested by Lazard, to the execution of appropriate agreements, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such Financing;

j. Assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with any Transaction and/or Restructuring;

k. Assisting the Debtors in identifying and evaluating candidates for any potential Transaction, advising the Debtors in connection with negotiations, and aiding in the consummation of any Transaction;

l. Attending meetings of the Boards of Directors of the Debtors with respect to matters on which Lazard has been engaged to advise pursuant to the Engagement Letter;

m. Providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise pursuant to the Engagement Letter in any proceeding before the Court;

n. Providing the Debtors with shareholder advisory services and advice on corporate preparedness matters; and

o. Providing the Debtors with other investment banking and financial restructuring advice.

The Services that Lazard will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that such Services will not duplicate the services that other professionals will be providing to the Debtors in the Chapter 11 Cases. Specifically, Lazard will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other

retained professionals to avoid the unnecessary duplication of services.

**V.     LAZARD'S DISINTERESTEDNESS**

To the best of the Debtors' knowledge, information, and belief, Lazard and its employees do not have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, their respective attorneys and accountants, any Bankruptcy Judge of the United States Bankruptcy Court for the Northern District of California, the U.S. Trustee, or any person employed by the office of the U.S. Trustee, except as may be set forth in the Ziman Declaration.

Based upon the Ziman Declaration, Lazard is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code. If any new relevant facts or relationships are discovered, Lazard will supplement its disclosure to the Court.

**VI.    PROFESSIONAL COMPENSATION**

Subject to Court approval, and in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Local Rules, the *United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees*, effective February 19, 2014 (the "**Local Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**"), and any further Orders of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**"), the Debtors will compensate Lazard in accordance with the terms and provisions of the Engagement Letter, which provides a compensation structure (the "**Fee and Expense Structure**") in relevant part as follows:[3]

    a.    **Monthly Fees**: A monthly fee of $300,000 (the "**Monthly Fee**"), which Monthly Fee will be payable on the first day of each month until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to the terms of the Engagement Letter. One-half of Monthly Fees paid after the Petition Date and in excess of $3,600,000 in the aggregate shall be credited (without duplication) against any Restructuring Fee (as defined below) payable to Lazard; provided, that, such credit shall

---

[3] In the event of any inconsistency between the description of the Fee and Expense Structure as set forth herein and the Engagement Letter, the Engagement Letter shall control.

only apply to the extent that the Monthly Fees and any Restructuring Fee are approved in their entirety by the Court.

b. **Transaction Fee**: If, whether in connection with the consummation of a Restructuring or otherwise, any Transaction[4] is consummated, Lazard shall be paid a fee (each, a "**Transaction Fee**") equal to the applicable percentage of Transaction Value as defined and set forth on Exhibit A to the Engagement Letter. The Transaction Fee for any individual Transaction shall not exceed $35 million (the "**Transaction Fee Cap**"). In the event that another investment banking advisor (the "**Other Advisor**") is retained by the Debtors in connection with a Transaction, the Transaction Fee paid to Lazard with respect to such Transaction will be reduced by an amount equal to 25% of the Transaction Fee payable pursuant to the Engagement Letter. One-half of any Transaction Fee paid shall be credited (without duplication) against any Restructuring Fee subsequently payable; provided that, such credit shall only apply to the extent that such fees are approved in their entirety by the Court. In addition, $750,000 of fee payments made to Lazard under prior engagements, and the financial advisory fee of $500,000 paid to Lazard in 2015, will be credited (without duplication) against any Transaction Fee. Any Transaction Fee shall be payable upon consummation of the applicable Transaction.

c. **Restructuring Fee**: A fee equal to $25,000,000, payable upon the consummation of any Restructuring[5] (the "**Restructuring Fee**").

d. **Financing Fee**: A fee, payable upon consummation of any

---

[4] "**Transaction**" means, collectively, any possible direct or indirect sale of the Debtors or an interest in a portion of the Debtors or a sale or other separation of all or a portion of a subsidiary or division of the Debtors, in one or more transactions which may take the form, without limitation, of a merger, a sale of assets, equity securities or other interests, a spin-off, joint venture or a recapitalization, and, subject to Lazard's agreement to advise the Debtors with respect thereto, any possible business combination pursuant to which all or a majority of the business or assets of the Debtors or a subsidiary or division of the Debtors are combined with or into another entity.

[5] "**Restructuring**" means, collectively, any restructuring, reorganization (whether or not pursuant to chapter 11 of the Bankruptcy Code) and/or recapitalization of all or a significant portion of the outstanding indebtedness of the Debtors (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), asbestos, wildfire and other litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "**Existing Obligations**") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "**Stakeholders**"); rescheduling of maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions.

Financing[6] (each, a "**Financing Fee**"), equal to the applicable percentage of the total gross proceeds as set forth on Exhibit B to the Engagement Letter; provided, however, that for any proposed "debtor-in-possession" Financing, the Financing Fee shall be earned and shall be payable upon the earlier of execution of a commitment letter or definitive agreement with respect to the Financing. To the extent that Lazard is paid a fee in connection with a proposed "debtor-in-possession" Financing and the Court does not provide any required approval with respect thereto, Lazard shall return such fee to the Debtors (less any Monthly Fees that have accrued). One-half of any Financing Fee paid (and not returned pursuant to the preceding sentence) in connection with "debtor-in-possession" Financing and equity Financing shall be credited (without duplication) against any Restructuring Fee subsequently payable; provided that such credit shall only apply to the extent that such fees are approved in their entirety by the Court.

e. In addition, $1.5 million of monthly fees paid to Lazard prior to the execution of the Engagement Letter shall be credited (without duplication) against any Restructuring Fee or Financing Fee payable in connection with secured, unsecured or "debtor-in-possession" Financing (without duplication); provided that such credit shall only apply to the extent that any such Restructuring Fee or Financing Fee is approved in its entirety by the Court.[7]

f. For the avoidance of any doubt, it is understood that fees may be payable pursuant to each of clauses (a), (b), (c) and (d) above and more than one fee may be payable pursuant to each of clauses (a), (b), and (d) above. In addition, notwithstanding anything to the contrary set forth above, in no event shall the cumulative level of fee crediting pursuant to clauses (a), (b), (d), and (e) exceed $18,750,000.

g. In addition to any fees that may be payable to Lazard and, regardless of whether any Transaction, Financing or Restructuring occurs, the Debtors shall promptly reimburse Lazard for all reasonable expenses incurred by Lazard (including travel and lodging, data processing and communications charges, courier services and other expenditures) and the reasonable fees and expenses of outside

---

[6] "**Financing**" means any transaction or series of transactions involving the public or private issuance, sale, or placement of newly-issued (including securities held in treasury) equity, equity-linked or debt securities, instruments, or obligations of the Debtors, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code. Furthermore, Financing shall exclude any transaction or series of transactions to the extent involving utility securitization or the issuance of securities to creditors in resolution of their pre-petition claims.

[7] In accordance with this provision of the Engagement Letter, $1.5 million was credited against the amount owed to Lazard as a Financing Fee in connection with the Debtors' pre-petition bridge financing and debtor-in-possession financing.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

counsel, if any, retained by Lazard; provided that such outside counsel was retained with the prior written consent of the Debtors (which shall not be unreasonably withheld).

h.  As part of the compensation payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed that the Indemnification Letter shall apply to Lazard's Services provided pursuant to the Engagement Letter, and each reference in the Indemnification Letter to "PG&E Corporation" or "you" shall be deemed to be a reference to the Debtors.

The Fee and Expense Structure described above was negotiated at arms' length, and the Debtors believe that it constitutes fair and reasonable terms and conditions for the retention by the Debtors of Lazard as their investment banker in accordance with sections 327(a) and 328(a) of the Bankruptcy Code. The Debtors believe that the Fee and Expense Structure is comparable to compensation generally charged by other firms of similar stature to Lazard for comparable engagements, both in and out of bankruptcy. The Debtors also understand that the Fee and Expense Structure is consistent with Lazard's normal and customary billing practices for cases of this size and complexity, which require the level and scope of services outlined. Additionally, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Lazard expects to undertake. The Debtors thus believe that the Fee and Expense Structure is reasonable.

In determining the level of compensation to be paid to Lazard and its reasonableness, the Debtors compared Lazard's proposed fees with the range of investment banking fees in other large and complex chapter 11 cases. The Fee and Expense Structure was agreed upon by the parties in anticipation that a substantial commitment of professional time and effort would be required of Lazard and its professionals, that such commitment may foreclose other opportunities for Lazard, and that the actual time and commitment required of Lazard and its professionals to perform the services set forth in the Engagement Letter may vary substantially from week to week or month to month.

The Debtors also submit that Lazard has obtained valuable institutional knowledge of the Debtors' business, financial affairs, and creditors as a result of its providing services to the Debtors before the Petition Date. Therefore, Lazard is not only well qualified, but also uniquely able to perform these Services and assist the Debtors in these Chapter 11 Cases. Moreover, the Debtors believe that Lazard's Services will assist the Debtors in achieving a successful outcome of these Chapter 11 Cases.

Lazard's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement, were important factors in determining the Fee and Expense Structure. Indeed, the Debtors believe that the ultimate benefit of Lazard's Services cannot be measured by reference to the number of hours to be expended by Lazard's professionals in the performance of such Services.

The Debtors have been advised by Lazard that it is not the general practice of investment banking and financial services firms to keep detailed time records similar to those customarily kept by attorneys, nor do such investment banking and financial services firms keep time records on a "project category" basis. Notwithstanding the foregoing, Lazard will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and the Orders for all professional services performed and expenses incurred after the Petition Date.

Such applications will include time records setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. However, because Lazard does not ordinarily maintain contemporaneous time records in one-tenth-hour (.1) increments or provide or conform to a schedule of hourly rates for its professionals, Lazard intends to file time records in half-hour (.5) increments and will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the Services. Lazard's applications for compensation and expenses will be paid by the Debtors upon approval by this Court.

**VII. INDEMNIFICATION PROVISIONS**

As part of the overall compensation payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, exculpation, contribution, reimbursement and other obligations as described in the Indemnification Letter. Generally, these provisions provide that the Debtors will, among other things, indemnify, hold harmless, and provide contribution and

reimbursement to Lazard and its affiliates, and the respective directors, officers, members, employees, agents or controlling persons of each of the foregoing under certain circumstances.[8]

The Debtors believe that these indemnification and related provisions, as modified by the Proposed Order, are customary and reasonable for financial advisory and investment banking engagements, both in- and out-of-court, and reflect customary qualifications and limitations on indemnification provisions.

## VIII. RELIEF REQUESTED SHOULD BE GRANTED

The Debtors seek authority to employ and retain Lazard as their investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code as those sections relate to cases under chapter 11 of the Bankruptcy Code, providing that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

The Debtors also seek approval of the Fee and Expense Structure, the Engagement Letter, and the Indemnification Letter pursuant to section 328(a) of the Bankruptcy Code, which provides that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on flexible terms that reflect the nature of their services and market conditions.

Section 328 is a significant departure from prior bankruptcy practice relating to the compensation of professionals. Indeed, as the United States Court of Appeals for the Fifth Circuit recognized in

---

[8] To the extent there is any inconsistency between this Application's summary of the Indemnification Letter provisions and the actual terms of the Indemnification Letter, the terms of the Indemnification Letter shall control.

*Donaldson Lufkin & Jenrette Sec. Corp. v. National Gypsum (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* (internal citations omitted).

Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee basis*, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). These changes make clear that the Debtors may retain, with Court approval, a professional on a fixed or percentage fee basis such as the Fee and Expense Structure provided for in the Engagement Letter.

Further, as part of the overall compensation payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, exculpation, contribution and reimbursement obligations as described in the Indemnification Letter. More specifically, the Indemnification Letter provides that the Debtors will, among other things, indemnify, hold harmless and provide contribution and reimbursement to Lazard and its affiliates, and the respective directors, officers, members, employees, agents or controlling persons of each of the foregoing except for claims arising from Lazard's gross negligence, bad faith, or willful misconduct.

The Debtors and Lazard believe that the provisions of the Indemnification Letter are customary and reasonable for financial advisory and investment banking engagements, both in and out-of-court, and reflect the qualifications and limitations on indemnification provisions that are customary for such

engagements. *See United Artists Theatre Co. v. Walton*, 315 F.3d 217, 229 (3d Cir. 2003) ("Indemnification of financial advisors against their own negligent conduct is becoming a common market occurrence."); *see*, *e.g.*, *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 9, 2018) [Docket No. 606] (approving retention of investment banker for the debtors in accordance with letter, which provided indemnification except in cases of bad faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct); *In re J & M Sales Inc.*, No. 18-11801 (LSS) (Bankr. D. Del. Sept. 17, 2018) [Docket No. 410] (same); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Oct. 25, 2017) [Docket No. 732] (same); *In re Payless Holdings LLC*, No. 17-42267-659 (Bankr. E.D. Mo. May 9, 2017) [Docket No. 645] (same); *In re Caesars Entm't Operating Co.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. Mar. 26, 2015) [Docket No. 991] (same); *In re Crumbs Bake Shop, Inc.*, No. 14-24287 (MBK) (Bankr. D. N.J. Aug. 4, 2014) [Docket No. 97] (same); *In re Aloha Airlines, Inc.*, No. 08-00337 (LK) (Bankr. D. Haw. Apr. 8, 2008) [Docket No. 203] (same); *In re Metabolife Int'l, Inc.*, No. 05-06040-PB11 (JJH) (Bankr. S.D. Cal. Aug. 5, 2005) [Docket No. 128] (same).

The Debtors believe that, given the size and complexity of these Chapter 11 Cases and the market indemnification terms for investment bankers of comparable size, quality and expertise to Lazard providing similar services, it is reasonable and in the best interests of the Debtors' estates to provide Lazard with the protections afforded by the Indemnification Letter. Accordingly, as part of this Application, the Debtors request that this Court approve the terms of the Indemnification Letter.

The Debtors believe the Fee and Expense Structure set forth in the Engagement Letter contains reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure adequately reflects (a) the nature of the services to be provided by Lazard and (b) fee and expense structures and indemnification provisions typically utilized by Lazard and other leading investment banking firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis. In particular, the Debtors believe the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees based on the successful raises of new capital and the overall success of these Chapter 11 Cases. Moreover, Lazard's substantial experience with respect to investment banking services, coupled with the nature and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

scope of work already performed by Lazard before the Petition Date, further supports the reasonableness of the Fee and Expense Structure.

## IX. NOTICE

Notice of this Application will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order (i) granting the relief requested herein as a sound exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, creditors, shareholders, and all parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: March 14, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Jane Kim  
      Jane Kim

*Proposed Attorneys for Debtors and Debtors in Possession*