Plaintiff Rick Bowlinger ("Plaintiff"), derivatively on behalf of PG&E Corporation and Pacific Gas & Electric Company (collectively "PG&E", "Company", or "Companies"), brings this action against Defendants Lewis Chew, Richard C. Kelly, Richard A. Meserve, Benito Minicucci, Rosendo G. Parra, Anne Shen Smith, Fred J. Fowler, Roger H. Kimmel, Forrest E. Miller, Eric D. Mullins, Barbara L. Rambo, Geisha J. Williams, Anthony F. Earley Jr., Jason P. Wells, Patrick M. Hogan, Julie M. Kane, Dinyar B. Mistry, David S. Thomason, Maryellen C. Herringer, Jeh C. Johnson, Nickolas Stavropoulos, Christopher P. Johns, and Barry Lawson Williams (collectively, "Board", "Directors", "Board of Directors", "Defendants", or "Individual Defendants"), and Does 1 through 50, inclusive, for violations of California common law and alleges the following based on investigations by Plaintiff and Plaintiff's counsel, including a review of legal and regulatory filings, press releases, and media reports about PG&E. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

## I. INTRODUCTION

1. **PG&E's Board of Directors has prioritized profits over safety. As a result, the Directors have enriched themselves—and set California ablaze.**



The Great Camp Fire of 2018

- 5 -
SHAREHOLDER DERIVATIVE COMPLAINT

Case: 19-30088    Doc# 894-2    Filed: 03/14/19    Entered: 03/14/19 18:50:30    Page 1 of 10

## II. NATURE OF THE ACTION

2. This is a stockholder derivative action against the Board of Directors and officers of PG&E for breaching their fiduciary duties to the Company by wrongfully diverting millions of dollars of corporate funds away from safety, maintenance, and operations projects, the foreseeable result of which was the occurrence of the Camp Fire and its resulting injuries—both to direct victims and to the Company's reputation and financial condition.

3. For over a decade, the Company's Directors, officers, senior executives, and upper management (collectively, "Leadership") have all knowingly failed to properly maintain transmission and distribution lines. Repeatedly rejecting and cutting the Company's own safety and maintenance budgets, PG&E's Directors created a situation in which catastrophic incidents like the 2015 Butte Wildfire, the 2017 North Bay Wildfires, and the 2018 Camp Fire would likely and foreseeably result. To operate PG&E's power lines under these conditions was reckless and represents a callous indifference to the loss of human life, tangible property, and natural habitat. In so doing, Defendants breached their fiduciary duties to PG&E, as well as their duties of loyalty and care.

4. The Individual Defendants knew about these safety deficiencies, failed to timely disclose the safety risks or remediate them, signed SEC filings falsely stating that the Company was adequately addressing safety issues, and then attempted to cover up the deficiencies in safety when news reports began to suggest that PG&E was not spending enough to ensure the safety of its power lines and transmission pipelines.

5. Instead of spending sufficient money on safety, PG&E's directors caused the Company to spend millions of dollars on "public relations" firms to try to burnish the Company's image, and on lobbyists in Sacramento to try to influence the Legislature to change the law of inverse condemnation in California. *See, e.g.,* "PG&E Spends More Than $1 Million to Lobby California Officials on Wildfire Laws," The Sacramento Bee, Aug. 1, 2018.

6. In 2017, the Defendants authorized over $9 million in compensation increases for the Company's executives and spent over $4.4 million on lobbying efforts to try to improve the Company's public image instead of spending adequate money on safety. *See* "Millions on Lobbying," Fox KTVU, April 27, 2018 (noting that "Pacific Gas & Electric spent more than $4 million on lobbying nationwide

the same year its power lines were suspected of playing a role in the most destructive wildfires in California history. Critics tell 2 Investigates they believe the money spent on improving the company's image, which include paying for full-page newspaper ads and TV commercials, is to deflect public focus away from its downed power lines.").[1] *See also* "Wildfire Liability Question Spawns Surge in Lobbying," The Enterprise Record, Aug. 12, 2018 ("Most of the money utilities and insurance companies spent on lobbying went to lobbyists, lawyers and publicity campaigns. But the total also includes every cocktail and steak the companies bought for government officials they are trying to influence — nearly $69,000 worth of goodies for the first half of this year. PG&E treated GOP Sen. Anthony Cannella of Ceres and six of his staff members to a San Francisco Giants game in May. In July, Cannella was appointed to the committee crafting wildfire legislation. He declined to comment for this story.").[2]

7. To help fund their increased compensation and lobbying efforts, in December 2017 the Boards of Directors of PG&E Corporation and the Utility forced the Company's shareholders to absorb the costs by suspending dividends on common stock of PG&E Corporation and preferred stock of the Utility.

8. Such conduct by directors constitutes bad faith and disloyal conduct which cannot be indemnified. As a result, the Defendants named herein face a substantial likelihood of liability and any demand on them to bring this case would be a futile and useless act. Plaintiff is therefore excused from making any demand prior to filing this complaint.

9. Directors and officers of California corporations have a fiduciary relationship to and a duty to act in the best interests of the corporation and the corporation's shareholders. *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93 (1969); *Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 850 (1965); *Daniel Orifice Fitting Co. v. Whalen*, 198 Cal. App. 2d 791, 794 (1962); *Remillard Brick Co. v. Remillard-Danhini*, 109 Cal. App. 2d 405 (1952). Here, Chew, Kelly, Meserve, Minicucci, Parra, Smith, Fowler,

---

[1] Available at http://www.ktvu.com/about-us/candice-nguyen/millions-on-lobbying-execs-meeting-lawmakers-2-investigates-pge-in-sacramento, last visited Dec. 19, 2018.

[2] Available at https://www.chicoer.com/2018/08/12/wildfire-liability-question-spawns-surge-in-lobbying/, last visited Dec. 19, 2018.

- 7 -
SHAREHOLDER DERIVATIVE COMPLAINT

1  Kimmel, Miller, Mullins, Rambo, and Williams are directors of the Company. Therefore, they and the
2  other Defendants owe a fiduciary duty to the Company and all its shareholders, including duties of care
3  and loyalty.

4    10. These duties required Defendants to ensure that PG&E invested in safety and
5  maintenance. Doing so would have protected the Company's long-term interest by reducing the risk of
6  costly incidents such as the Camp Fire. Instead, Defendants routinely cut the safety and maintenance
7  budgets requested by PG&E's own internal experts and staff, created an express policy of saving money
8  regardless of consequences, incentivized employees not to document or to minimize safety and
9  maintenance problems, ignored problems of which they were aware, and used the mirage of short-term
10 financial gains that these practices created as a basis for inflating their own compensation. Defendants
11 did all this knowing it would increase the risk of devastating fires.

12   11. This unlawful behavior has severely damaged PG&E. As a result of Defendants' conduct
13 and the raging wildfires that have resulted, the Company now faces billions of dollars in civil, criminal,
14 and regulatory penalties. PG&E also faces the still-unaddressed costs of safety and maintenance,
15 exacerbated both by Defendants' deferrals on safety spending and the Camp Fire's destruction, which
16 created additional need for investigation, repair, and remediation. Meanwhile, Defendants have lined
17 their own pockets with unjustified salaries, fees, wages, stock grants, bonuses, and perks.

18   12. As of early December 2018, PG&E's stock was down almost 47% year-to-date, almost
19 exclusively due to liabilities from the wildfires. *See* "For PG&E Stock, Wildfire Liabilities Are a Wild
20 Card," BARRON'S, Dec. 18, 2018 (noting that stock is down 47% due to wildfire liabilities).

21   13. On December 13, 2018, PG&E filed a Form 8-K with the SEC, signed by Defendant
22 David Thomason, stating that it had filed the same day its 2020 General Rate Case ("GRC") application
23 with the California Public Utilities Commission (the "CPUC"). In the SEC filing, PG&E stated that
24 "Among other things, the Utility proposes to invest a total of approximately $5 billion (including
25 approximately $3 billion for capital expenditures) between 2018 and 2022 on Community Wildfire
26 Safety Program measures. Through this program, the Utility proposes to bolster wildfire prevention,
27 risk monitoring, and emergency response efforts, add new and enhanced safety measures, increase
28 vegetation management, and harden its electric system to help further reduce wildfire risks."

- 8 -
SHAREHOLDER DERIVATIVE COMPLAINT

14. In the December 13, 2018 SEC filing, PG&E stated that *"weakened credit conditions following the November 8, 2018 Camp Fire may impair the Utility's ability to raise new debt and equity*, which could impact the amount of work the Utility can commit to financing and require a change to the scope of work that the Utility proposes to accomplish in the 2020 GRC period."

15. This after-the-fact attempt to increase spending in the future on wildfire prevention efforts came too little, too late. By this point, billions in dollars in damages had already been done to California residents and the Company and its shareholders. PG&E's directors knew years ago that substantial additional expenditures were necessary to prevent devastating wildfires, yet consciously chose to refrain from making these needed billion-dollar plus expenditures. In thus choosing profits and payments to themselves over the prudent operation of PG&E, the Defendants acted in bad faith and breached their fiduciary duties.

16. On December 14, 2018, PG&E's stock declined further in response to news articles that the PUC had re-opened an investigation into the Company because PG&E had falsified pipeline inspection data. The following week, PG&E announced that unnamed personnel had been fired due to these new allegations. *See* "PG&E Links Executive Departures to 'Corrective Actions' Over Safety Charges," THE SAN FRANCISCO CHRONICLE, Dec. 18, 2018 (noting that Defendant Stavropoulos "was one of the PG&E officers examined under oath as part of the commission's staff investigation, according to Friday's order opening the case against the utility" and that "a few other PG&E executives with potentially relevant roles left the company in the last six months, including a vice president of safety and health and a senior vice president and chief information officer. PG&E declined to comment on any specific departures."). News articles also quoted Steven Weissman, a former administrative law judge for the PUC, as stating "The suggestion that a utility might falsely tell its customers that it's safe to dig in a certain place when it doesn't know if it's safe to dig there is just absolutely astounding."

17. For these reasons and as set forth more fully herein, Plaintiff seeks to enjoin Defendants' wrongdoing and to force the Company to enact such governance changes as are necessary to ensure that PG&E fully addresses safety and maintenance issues. Plaintiff, on behalf of PG&E, also seeks money damages from the Individual Defendants, who breached their fiduciary duties and should now be held accountable for the financial and reputational harm they caused to PG&E and its shareholders.

## III. JURISDICTION AND VENUE

18. This Court has jurisdiction over this dispute. The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of this Court. This case involves a California corporation that conducts substantial operations in this jurisdiction. The major incident that gave rise to this action was the Camp Fire, which caused substantial downwind health, property, and economic damages in this jurisdiction. As the primary provider of power and energy to the majority of individuals, businesses, and entities in northern and central California, PG&E has and will continue to have a substantial impact on the California economy. Each Defendant has sufficient contacts with California as a director and/or officer of PG&E to make proper this Court's exercise of personal jurisdiction over them.

19. Venue is proper in this Court. A substantial part of the events or omissions giving rise to the claims alleged occurred in San Francisco, California, which is located within this jurisdiction. Because a significant amount of the harm, as well as important evidence, is located within this jurisdiction, this is the best venue for this action. Each Defendant has sufficient contacts with this jurisdiction that venue in this jurisdiction is appropriate. Several Defendants reside within the County of San Francisco such that the exercise of jurisdiction by this Court is appropriate.

## IV. THE PARTIES

### A. Plaintiff

20. Plaintiff Rick Bowlinger is a stockholder of PG&E Corporation, has been a stockholder of PG&E since the 1990s, and has continuously owned those shares at all times since he acquired the shares to the present.

### B. Nominal Defendants

21. *Nominal Defendants* PG&E Corporation and Pacific Gas & Electric Company are California corporations sharing many of the same directors and officers and a corporate headquarters at 77 Beale Street, San Francisco, California. According to its 2017 Annual Report, PG&E Corporation, incorporated in California in 1995, is a holding company that conducts its business through its wholly owned subsidiary, Pacific Gas & Electric Company, a public utility that (i) provides power and energy services throughout the State of California, (ii) is the primary provider of power and energy to northern

- 10 -
SHAREHOLDER DERIVATIVE COMPLAINT

Case: 19-30088    Doc# 894-2    Filed: 03/14/19    Entered: 03/14/19 18:50:30    Page 6 of 10

and central California, and (iii) is governed by the CPUC. According to its 2017 Annual Report, PG&E Corporation, without factoring in Pacific Gas & Electronic Company, has negative revenue, while PG&E Corporation, including the revenues of Pacific Gas & Electric Company has positive revenues of $17.138 billion. Both Pacific Gas & Electric Company and PG&E Corporation will be referred to as "PG&E" or the "Companies" except where distinction is necessary. PG&E Corporation is named in this Complaint as a nominal defendant in its derivative capacity, and this shareholder's derivative action is brought on its behalf.

C. **Individual Defendants**

22. *Individual Defendant Lewis Chew* ("Chew") is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since 2009.

23. *Individual Defendant Richard C. Kelly* ("Kelly") is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since 2013. Kelly is the independent non-executive Chair of the Board of PG&E Corporation.

24. *Individual Defendant Richard A. Meserve* ("Meserve") is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since 2006.

25. *Individual Defendant Benito (Ben) Minicucci* ("Minicucci") is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since July 2018.

26. *Individual Defendant Rosendo (Ro) G. Parra* ("Parra") is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since 2009.

27. *Individual Defendant Anne Shen Smith* ("Smith") is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since 2015.

28. Individual Defendant *Fred J. Fowler* ("Fowler") is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since 2012.

29. *Individual Defendant Roger H. Kimmel* ("Kimmel") is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since 2009.

30. *Individual Defendant Forrest E. Miller* ("Miller") is the independent non-executive Chair of the Board of Pacific Gas & Electric Company. Mr. Miller is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since 2009.

31. *Individual Defendant Eric D. Mullins* ("Mullins") is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since 2016.

32. *Individual Defendant Barbara L. Rambo* ("Rambo") is and has been a director of PG&E Corporation and Pacific Gas & Electric Company since 2005.

33. *Individual Defendant Geisha J. Williams* ("Williams") is Chief Executive Officer and President of PG&E Corporation and is also a director of Pacific Gas & Electric Company. She joined the company in 2007.

34. *Individual Defendant Anthony F. Early Jr.* ("Earley") was PG&E's President, CEO, and Chairman of the Board from 2011 until March 1, 2017, after which he served as PG&E's Executive Chairman of the Board until his retirement from PG&E on December 15, 2017. He also served as a director of Pacific Gas & Electric Company from 2012 to December 15, 2017.

35. *Individual Defendant Jason P. Wells* ("Wells") has served as PG&E Corp.'s CFO and Senior Vice President since January 2016. Prior to becoming PG&E Corp.'s CFO, Defendant Wells served in various roles at Pacific Gas & Electric Company from 2007 to 2015, including as its Vice President—Business Finance from 2013 to December 2016.

36. *Individual Defendant Patrick M. Hogan* ("Hogan") has served as Pacific Gas & Electric Company's Senior Vice President of Electric Operations since March 2016, before which he served as its Vice President of Electric Operations Asset Management, starting in 2013.

37. *Individual Defendant Julie M. Kane* ("Kane") has served as Senior Vice President, Chief Ethics and Compliance Officer, and Deputy General Counsel of PG&E since May 2015.

38. *Individual Defendant Dinyar B. Mistry* ("Mistry") is Senior Vice President for Human Resources and its Chief Diversity Officer for the Companies.

39. *Individual Defendant David S. Thomason* ("Thomason") has since June 1, 2016, served as PG&E Corp.'s Vice President and Controller and as Pacific Gas & Electric Company's Vice President, CFO, and Controller.

40. *Individual Defendant Maryellen C. Herringer* ("Herringer") served as a PG&E Corp. director and as a Pacific Gas & Electric Company director from 2005 to May 30, 2017, and was a member of the Audit Committee of both boards.

41.    *Individual Defendant Jeh C. Johnson* ("Johnson") served as a PG&E Corp. director from March 30, 2017 to March 22, 2018, and as a director of Pacific Gas & Electric Company from March 30, 2017, to December 2017. He served as a member of the Safety and Nuclear Oversight Committee of both Boards and PG&E Corp.'s Compliance and Public Policy Committee.

42.    *Individual Defendant Nickolas Stavropoulos* ("Stavropoulos") served as a director of Pacific Gas & Electric Company beginning in 2015 and served as the President and Chief Operating Officer of Pacific Gas & Electric Company beginning on March 1, 2017. He retired from his executive and board positions at Pacific Gas & Electric Company effective September 1, 2018. In July 2018, the utility announced that Stavropoulos would retire at the end of September 2018. Stavropoulos, 60, had been hired by PG&E in 2011 to lead the reform of the utility's natural gas operations following the San Bruno gas pipeline explosion in 2010 that killed eight people and destroyed 38 homes. Stavropoulos was one of the PG&E officers examined under oath as part of the PUC's staff investigation, according to a December 14, 2018 order opening the case against the utility due to the discovery of new information about the Company's falsifying of inspection data for the Company's pipelines.

43.    *Individual Defendant Christopher P. Johns* ("Johns") served as the President of Pacific Gas & Electric Company from August 1, 2009 to August 17, 2015.

44.    *Individual Defendant Barry Lawson Williams* ("B.L. Williams") served as a PG&E Corp. director from 1996 to May 30, 2017, and was a member of the Audit Committee of both boards. He served as the lead director of PG&E Corp. from 2014 until his retirement in 2017. He also served as a Pacific Gas & Electric Company director from 1990 to May 2017.

45.    Every Individual Defendant is liable for the same wrongdoing and cannot fairly adjudicate any demand against any other Individual Defendant because any allegation made against one Individual Defendant implicates them all. Further, every Individual Defendant is compromised in his or her ability to fairly adjudicate any demand against any other Individual Defendant for additional reasons set forth in Part VI (Demand Allegations) below.

**D.    Doe Allegations**

46.    Except as described herein, Plaintiff is ignorant of the true names of defendants sued as Does 1 through 50, inclusive, and, therefore, Plaintiff sues these defendants by such fictitious names.

- 13 -
SHAREHOLDER DERIVATIVE COMPLAINT

1  Following further investigation and discovery, Plaintiff will seek leave of this Court to amend this
2  Complaint to allege their true names and capacities when ascertained. These fictitiously named
3  defendants are the Company's officers, other members of management, employees and/or consultants
4  who were involved in the wrongdoing detailed herein. These defendants aided and abetted and/or
5  conspired with the named defendants in the wrongful acts and course of conduct or otherwise caused
6  the damages and injuries claimed herein, and are responsible in some manner for the acts, occurrences
7  and events alleged in this Complaint.

**E.   Unnamed Participants**

47.   Numerous individuals and entities participated actively during the course of and in furtherance of the wrongdoing described herein. The individuals and entities acted in concert by joint ventures and by acting as agents for principals, in order to advance the objectives of the scheme in order to benefit Defendants and themselves to the detriment of PG&E.

## IV.   STATEMENT OF FACTS

### A.   PG&E Is the Primary Energy Provider In Northern and Central California

48.   PG&E is one of the largest combination natural gas and electric utilities in the United States. It provides natural gas and electric services to approximately 16 million people throughout a 70,000-square mile service area in northern and central California. PG&E CORPORATION, COMPANY PROFILE, https://www.pge.com/en_US/about-pge/company-information/profile/profile.page. PG&E is one of the major providers of natural gas, electricity and power in the State of California and is the principal provider of such services in northern and central California.

49.   As a utility, PG&E is subject to extensive regulation and regulatory oversight from both the federal government and from the State of California.

50.   PG&E is regulated by the CPUC. The CPUC's mission is to ensure safe, reliable utility service at reasonable rates. It has jurisdiction to set the rates, terms and conditions of service for PG&E. Based on information and representations made to it by PG&E, the CPUC sets the fees or rates that it may charge to California customers. Every three years, PG&E presents to the CPUC how much revenue it needs to provide safe and reliable utility service, which includes how much it will likely receive in revenue from its assets such as gas storage. The CPUC adopts an expected revenue

- 14 -
SHAREHOLDER DERIVATIVE COMPLAINT
Case: 19-30088   Doc# 894-2   Filed: 03/14/19   Entered: 03/14/19 18:50:30   Page 10 of 10