WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                    **Debtors.**<br><br>☒ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**SCHEDULES OF ASSETS AND LIABILITIES FOR PG&E CORPORATION** |

# GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES

On January 29, 2019 (the "**Petition Date**"), PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Norther District of California, San Francisco Division (the "**Bankruptcy Court**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only under the Lead Case No. 19-30088 (DM) (the "**Chapter 11 Cases**") pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## OVERVIEW OF GLOBAL NOTES

Each of the Debtors has herewith filed separate Schedules of Assets and Liabilities ("**Schedules**"). These *Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding Debtors' Schedules of Assets and Liabilities* (the "**Global Notes**") relate to each Debtor's Schedules and set forth the basis upon which the Schedules are presented. **These Global Notes pertain to, are incorporated by reference in, and comprise an integral part of, the Schedules and should be referred to and considered in connection with any review of the Schedules**. The Global Notes are in addition to any specific notes contained in either Debtor's Schedules. Except as otherwise expressly set forth herein, information in the Schedules is presented as of the Petition Date and on an individual Debtor-by-Debtor basis. Disclosure of information in one Schedule, exhibit, or continuation sheet, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, exhibit, or continuation sheet.

The Schedules have been prepared by the Debtors' management with the assistance of their advisors and other professionals pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007. The Schedules contain unaudited information, which is subject to further review and potential adjustment. Reasonable efforts have been made to provide accurate and complete information herein based upon information that was available at the time of preparation; however, subsequent information or discovery thereof may result in material changes to the Schedules and inadvertent errors or omissions may exist.

**The Schedules and Global Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of either of the Debtors.**

The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however cause, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

-2-

The Debtors reserve all rights to amend, modify, or supplement the Schedules from time to time, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules as to amount, liability or classification, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated." Furthermore, nothing contained in the Schedules shall constitute an admission of any claims or a waiver of either of the Debtor's rights with respect to the Chapter 11 Cases, including with respect to any issues involving causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets or avoid transfers.

The Schedules for each Debtor have been signed by David Thomason, Chief Financial Officer for the Utility and Controller for PG&E Corp. In reviewing and signing the Schedules, Mr. Thomason necessarily relied upon the efforts, statements, and representations of various personnel employed by the Debtors and their advisors and other professionals. Mr. Thomason has not (and could not have) personally verified the accuracy of each such statement and representation, including, without limitation, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses.

## **Methodology and Limitations**

1. **Basis of Presentation:** Information contained in the Schedules has been derived from the Debtors' books and records and historical financial statements. The Schedules do not purport to represent financial statements prepared in accordance with United States Generally Accepted Accounting Principles ("**GAAP**"), nor are they intended to fully reconcile with the financial statements of each Debtor.

2. **Cash Management System:** The Debtors use an integrated, centralized cash management system to streamline collection, transfer, and disbursement of funds generated by their business operations (the "**Cash Management System**"). Although the Utility and PG&E Corp. each maintain separate systems, the Cash Management System is an integrated system. The Debtors describe the Cash Management System in detail in their *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 507 and Fed. R. Bankr. P. 6003 and 6004 for Interim and Final Authority to (i) (a) Continue Using Existing Cash Management System, (b) Honor Certain Prepetition Obligations Related to the Use Thereof, (c) Continue Intercompany Arrangements, (d) Continue to Honor Obligations Related to Joint Infrastructure Projects, and (e) Maintain Existing Bank Accounts and Business Forms, and (ii) Waiving the Requirements of 11 U.S.C. § 345(b)* [Docket No. 7] (the "**Cash Management Motion**"). On March 14, 2019, the Court authorized the Debtors to continue using the Cash Management System on a final basis [Docket No. 881].

3. **Valuation:** The Debtors do not have current market valuations for all of their assets as it would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets and resources for the Debtors to obtain current market valuations of all their assets. Accordingly, unless otherwise indicated herein, assets in the Schedules reflect net book values as of January 31, 2019. Net book values may vary, sometimes materially, from market values. Certain other assets, such as investments in subsidiaries, are listed as "unknown" or "undetermined" amounts. Additionally, amounts ultimately realized may differ materially from net book value (or whatever value was ascribed). Certain depreciable assets with a net book value of zero ($0) may also be included for completeness.

4. **Liabilities:** The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on information and research that was conducted or available in connection with the preparation of the Schedules. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve all of the rights to amend, supplement, or otherwise modify the Schedules as they deem necessary or appropriate.

The liabilities listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim.

5. **Excluded Assets and Liabilities:** The Debtors have excluded the following items from their Schedules, which may be included in their GAAP financial statements: certain accrued liabilities, including, without limitation, accrued salaries, employee benefit accruals, and certain other accruals, trusts, certain prepaid and other current assets considered to have no market value, certain contingent assets such as insurance recoveries, and deferred gains.

The Utility records a regulatory balancing account asset or liability for differences between incurred costs and customer billings or authorized revenue meant to recover those costs, to the extent that these differences are probable of recovery or refund. The California Public Utilities Commission also has authorized the Utility to collect additional revenue requirements to recover costs that the Utility has been authorized to pass on to customers, including costs to purchase electricity and natural gas; and to fund public purpose, demand response, and customer energy efficiency programs. In general, the revenue recognition criteria for pass-through costs billed to customers are met at the time the costs are incurred. As these differences have no impact on net income, the Debtors have excluded balances with respect to regulatory balancing accounts and other accounts recognized for rate making purposes. Other immaterial assets and liabilities may also have been excluded.

Various electricity suppliers filed claims in the Utility's prior 2001 chapter 11 case (Case No. 01-30923 (DM)) seeking payment for energy supplied to the Utility's customers between May 2000 and June 2001. While proceedings are pending before the Federal Energy Regulatory Commission ("**FERC**") and other judicial forums, the Utility pursued settlements with electricity suppliers and entered into a number of settlement agreements with various electricity suppliers to resolve some of these disputed claims and to resolve the Utility's refund claims against these electricity suppliers. Under these settlement agreements, amounts payable by the parties, in some instances, would be subject to adjustment based on the outcome of the various refund offset and interest issues being considered by the FERC. Generally, any net refunds, claim offsets, or other credits that the Utility receives from electricity suppliers either through settlement or through the conclusion of the various FERC and judicial proceedings are refunded to customers through rates in future periods. Accordingly, such potential refund claims are not included in the Schedules.

6. **Guarantees and Other Secondary Liability Claims:** The Debtors have used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "**Guarantees**") in their executory contracts, unexpired leases, debt instruments, and other agreements. Where Guarantees have been identified, they have been included in the relevant

-4-

Schedules D, E/F, G and H for the affected Debtor. It is possible that certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted. The Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules to the extent additional Guarantees are identified.

7. **Leases:** The Debtors may lease furniture, fixtures, and equipment from certain third party lessors. Any such leases are set forth in the Schedules. The Debtors have not included in the Schedules the future obligations of any capital or operating leases. However, assets under any capital leases have been included in the Schedules. Nothing in the Schedules is, or should be construed, as an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or financing arrangement), and the Debtors reserve all rights with respect thereto.

In February 2016, the Financial Accounting Standard Board (the "**FASB**") issued ASU No. 2016-02, Leases (Topic 842), which amends the existing guidance relating to the definition of a lease, recognition of lease assets and lease liabilities on the balance sheet, and the disclosure of key information about leasing arrangements. In November, 2017, the FASB tentatively decided to amend the new leasing guidance such that entities may elect not to restate their comparative periods in the period of adoption. Under the new standard, all lessees must recognize an asset and liability on the balance sheet. Operating leases were previously not recognized on the balance sheet. The ASU was effective for PG&E Corp. and the Utility on January 1, 2019, with early adoption permitted. PG&E Corp. and the Utility plan to adopt this guidance in the first quarter of 2019. Therefore, the Schedules of assets and liabilities reflected herein do not include the asset or liability of those operating leases.

8. **Intellectual Property Rights:** Exclusion of certain intellectual property shall not be construed to be an admission that those intellectual property rights have been sold, abandoned, terminated, assigned, transferred, or otherwise have expired by their terms. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that those intellectual property rights have not been sold, abandoned, terminated, assigned, transferred, or otherwise have not expired by their terms. Accordingly, the Debtors reserve all of their rights as to the legal status of all intellectual property rights.

9. **Currency:** Unless otherwise indicated, all amounts are reflected in U.S. dollars.

10. **Property and Equipment:** Unless otherwise indicated, owned property and equipment are stated at net book value.

11. **Intercompany Payables and Receivables:** Prior to the Petition Date, the Debtors routinely engaged in intercompany transactions resulting in intercompany accounts payable and receivable. The intercompany transactions are described in the Cash Management Motion. The intercompany accounts payable and receivable are reported on each of the Debtor's respective Schedules A/B or E/F as the net due-to or due-from based on invoiced intercompany charges assessed pursuant to various continuing services agreements. All intercompany assets and liabilities on Schedule A/B and elsewhere (if applicable) are reported as of January 31, 2019.

The listing by the Debtors of any account between the Debtors or between a Debtor and a non-Debtor affiliate is a statement of what appears in a particular Debtor's books and records and does not reflect

-5-

any admission or conclusion of the Debtors regarding the allowance, classification, characterization, validity, or priority of such account. The Debtors take no position in these Schedules as to whether such accounts would be allowed as claims, interests, or not allowed at all.

12. **Causes of Action:** The Debtors have not yet listed any causes of action or potential causes of action against third parties as assets in their Schedules, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets. The Debtors reserve all of their rights for any claims, causes of action, or avoidance actions they may have, and neither these Global Notes nor the Schedules shall be deemed a waiver of any such claims, causes of actions, or avoidance actions or in any way prejudice or impair the assertion of such claims.

13. **Classification:** The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate assets, liabilities, executory contracts, unexpired leases, and other items reported in the Schedules. However, due to the complexity and size of the Debtors' businesses and operations, the Debtors may have improperly characterized, classified, categorized, or designated certain items. The Debtors reserve all of their rights to re-characterize, reclassify, re-categorize, or re-designate items reported in the Schedules as necessary or appropriate as additional information becomes available.

14. **Claim Description:** Any failure to designate a claim in the Schedules as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that the claim or amount is not "contingent," "unliquidated," or "disputed." The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim reflected on their Schedules on any grounds, including, without limitation, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed." Listing a claim on the Schedules as "secured" does not constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' rights to reclassify such claim or contract. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken. The Debtors reserve all of their rights to amend, supplement, or otherwise modify their Schedules as necessary and appropriate, including, modifying claim descriptions and designations.

15. **Executory Contracts and Unexpired Leases:** The placing of a contract or lease onto the Schedules shall not be deemed an admission that such contract is an executory contract or unexpired lease, or that it is necessarily a binding, valid, and enforceable agreement. The Debtors hereby expressly reserve the right to assert that any contract or lease listed on the Debtors' Schedules does not constitute an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code.

16. **Undetermined Amounts:** Claim amounts that could not readily be quantified by the Debtors are scheduled as "undetermined." The description of an amount as "undetermined" is not intended to reflect upon the materiality of the amount.

17. **Payment of Prepetition Claims Pursuant to First Day Orders:** On or about January 31, 2019, the Bankruptcy Court entered orders (the "**First-Day Orders**") authorizing, but not directing, the Debtors to, among other things, pay certain prepetition claims relating to (a) certain safety,

reliability, outage, and nuclear facility suppliers; (b) shippers, warehousemen, and other lien claimants; (c) taxes; (d) employee wages, salaries, and other compensation and benefits; (e) customer programs, including public purpose programs; and (f) the continued use of the Debtors' Cash Management System. Where the Schedules list creditors and set forth the amounts attributable to such claims, such scheduled amounts reflect balances owed as of the Petition Date. To the extent any adjustments are necessary to reflect any payments made on account of such claims following the commencement of these Chapter 11 Cases pursuant to the authority granted to the Debtors by the Bankruptcy Court under the First Day Orders, such adjustments have been included in the Schedules unless otherwise noted on the applicable Schedule. The Debtors reserve the right to update the Schedules to reflect payments made pursuant to the First-Day Orders.

18. **Confidentiality:** There may be instances in the Schedules where the Debtors have deemed it necessary and appropriate to redact or withhold from the public record information such as names, addresses, or amounts. Typically, the Debtors have used this approach because of an agreement between the Debtors and a third party, concerns of confidentiality, or concerns for the privacy of an individual. In addition, certain agreements may not have been included on the Schedules because publicly disclosing such agreements may violate the terms set forth therein.

19. **Totals:** All totals that are included in the Schedules represent totals of all the known amounts included in the Schedules and exclude items identified as "unknown" or "undetermined." If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.

## Specific Notes with Respect to the Debtors' Schedules

a. **Schedule A/B – Real and Personal Property:**

   (i) **Schedule A/B.3:** The bank account balances listed are as of the Petition Date.

   (ii) **Schedule A/B.11:** Credit is regularly extended to customers for utility service and made in the ordinary course of business based upon the Debtors' assessment of creditworthiness. Accordingly, there is a significant amount of accounts receivable owed to the Debtors as of the Petition Date which will be recouped or reimbursed in the ordinary course of business. Receivables are reported as of January 31, 2019.

   As part of the Debtors' normal accounting practices, PG&E Corp. and the Utility recognize an allowance for doubtful accounts to record uncollectable customer accounts receivable at estimated net realizable value, including customer credits. The allowance is determined based upon a variety of factors, including historical write-off experience, aging of receivables, current economic conditions, and assessment of customer collectability.

   (iii) **Schedule A/B.15:** Equity interests in subsidiaries and affiliates primarily arise from common stock ownership or member or partnership and joint venture interests. The Debtors do not have current market valuations for all of their assets, including the equity interests of all their subsidiaries and affiliates, as it would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets and resources for the Debtors to obtain current market valuations of all their assets. Accordingly, **f**or

-7-

purposes of these Schedules, the Debtors have listed the equity interests of all of their subsidiaries and affiliates as "unknown" or "undetermined" amounts.

(iv) **Schedule A/B; Part 5**: Inventories are carried at weighted-average cost and include natural gas stored underground, nuclear fuel as well as materials and supplies. Stored natural gas and nuclear fuel is recorded to inventory and then expensed as the gas is withdrawn for distribution to customers or to be used as fuel for electric generation. Materials and supplies are recorded to inventory when purchased and expensed or capitalized to plant, as appropriate, when consumed or installed.

(v) **Schedule A/B; Part 7, 8 and 9:** Property, plant, and equipment are reported at historical cost less accumulated depreciation. Historical costs include labor and materials, construction overhead, and AFUDC. AFUDC represents the estimated costs of debt (i.e., interest) and equity funds used to finance regulated plant additions before they go into service and is capitalized as part of the cost of construction. The Debtors depreciate property, plant, and equipment using the composite, or group, method of depreciation, in which a single depreciation rate is applied to the gross investment balance in a particular class of property. This method approximates the straight-line method of depreciation over the useful lives of property, plant, and equipment. Depreciation expense includes a component for the original cost of assets and a component for estimated cost of future removal, net of any salvage value at retirement. Upon retirement, the original cost of the retired assets, net of salvage value, is charged against accumulated depreciation. The cost of repairs and maintenance, including planned major maintenance activities and minor replacements of property, is charged to operating and maintenance expense as incurred.

The Schedules do not include asset retirement obligations ("**AROs**"). The Debtors account for an ARO at fair value in the period during which the legal obligation is incurred if a reasonable estimate of fair value and its settlement date can be made. At the time of recording an ARO, the associated asset retirement costs are capitalized as part of the carrying amount of the related long-lived asset. To estimate its liability, the Utility uses a discounted cash flow model based upon significant estimates and assumptions about future decommissioning costs, inflation rates, and the estimated date of decommissioning. The estimated future cash flows are discounted using a credit-adjusted risk-free rate that reflects the risk associated with the decommissioning obligation.

(vi) **Schedule A/B.60, 61:** The Debtors have not attempted to assign values to all of their various intellectual property rights and licenses because doing so would be unduly burdensome, and as a result, they are not included in Schedules.

(vii) **Schedule A/B.74**: Various electricity suppliers filed claims in the Utility's prior 2001 chapter 11 case (Case No. 01-30923 (DM)) seeking payment for energy supplied to the Utility's customers between May 2000 and June 2001. While proceedings are pending before FERC and other judicial forums, the Utility pursued settlements with electricity suppliers and entered into a number of settlement agreements with various electricity suppliers to resolve some of these disputed claims and to resolve the Utility's refund

-8-

claims against these electricity suppliers. Under these settlement agreements, amounts payable by the parties, in some instances, would be subject to adjustment based on the outcome of the various refund offset and interest issues being considered by the FERC. Generally, any net refunds, claim offsets, or other credits that the Utility receives from electricity suppliers either through settlement or through the conclusion of the various FERC and judicial proceedings are refunded to customers through rates in future periods. Accordingly, such potential refund claims are not included in the Schedules.

(viii) **Schedule A/B.75**: In the ordinary course of business, the Debtors may have accrued, or may in the future accrue, certain rights to counter-claims, cross-claims, setoffs, and/or refunds with Debtors' customers and suppliers, or potential warranty claims against their suppliers. Additionally, either of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant. Because such claims are unknown to the Debtors and not quantifiable as of the Petition Date, they are not listed on Schedule A/B.75.

(ix) **Schedule A/B.77**: The Utility uses both derivative and non-derivative contracts to manage volatility in customer rates due to fluctuating commodity prices. Derivatives include contracts, such as power purchase agreements, forwards, futures, swaps, options, and congestion revenue rights. Derivatives are recorded at fair value and on a net basis in accordance with master netting arrangements for each counterparty. The fair value of derivative instruments is further offset by cash collateral paid or received where the right of offset and the intention to offset exist. The Utility elects the normal purchase and sale exception for eligible derivatives. Eligible derivatives are those that require physical delivery in quantities that are expected to be used by the Utility over a reasonable period in the normal course of business, and do not contain pricing provisions unrelated to the commodity delivered. These items are not reflected in the assets or liabilities at fair value. Eligible derivatives are accounted for under the accrual method of accounting.

PG&E Corp. and the Utility record a receivable for insurance recoveries when it is deemed probable that recovery of a recorded loss will occur. Through December 31, 2018, PG&E Corp. and the Utility recorded $1.38 billion for probable insurance recoveries in connection with the 2018 Camp fire and $842 million for probable insurance recoveries in connection with the 2017 Northern California wildfires. The amount of the receivable is subject to change based on additional information.

b. **Schedule D – Creditors Holding Secured Claims:** The claims listed on Schedule D arose and were incurred on various dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all such dates are included for each claim. Except as otherwise agreed pursuant to a stipulation, agreed order, or general order entered by the Bankruptcy Court, the Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of either Debtor. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such claim or the

-9-

characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such claim. The descriptions provided on Schedule D only are intended to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor for a scheduled claim of another Debtor, and no claim on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. Except as specifically stated herein, real property lessors, utility companies, and other parties that may hold security deposits have not been listed on Schedule D. Moreover, certain contracts listed on Schedule G may be secured by assets of the Debtors. The Debtors believe it would be unduly burdensome and costly to attempt to identify and list all such agreements on Schedule D.

c. **Schedule E/F – Creditors Holding Unsecured Claims:** Reasonable efforts have been made to list all liabilities on Schedule E/F for both Debtors. Claims listed on Schedule E/F arose or were incurred on various dates. Although reasonable efforts have been made to list the date that each claim arose, determination of each date upon which such claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F.

As discussed above, the Bankruptcy Court entered a number of First-Day Orders granting authority to pay certain prepetition claims. Claims against the Debtors for prepetition amounts that have not been paid but for which authority has been received may be included in Schedule E/F. Accordingly, the Debtors reserve their rights to object to any listed claims on the ground that, among other things, they have already been satisfied. Listing a claim on Schedule E/F as priority does not constitute an admission by the Debtors of the claimant's legal rights or a waiver of the Debtors' right to recharacterize or reclassify the claim or contract.

The Debtors believe that most of the employee prepetition claims entitled to priority under the Bankruptcy Code have been or will be paid pursuant to certain First-Day Orders that authorized the payment of such claims. Accordingly, except as otherwise noted therein, employee claims have been scheduled as "Undetermined" on Schedule E/F for each Debtor; however, for the avoidance of doubt, the Debtors have used reasonable efforts to include all employees on Schedule E/F that had prepetition claims as of the Petition Date.

In the ordinary course of business, the Utility will require deposits from customers if they have had service discontinued in the past due to non-payment or if a customer has no previous service history with the Utility. The majority of these deposits would qualify as priority unsecured deposits under section 507(a)(7) of the Bankruptcy Code. The Debtors have received final authority pursuant to the order approving their *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 507(a)(7) and Fed. R. Bankr. P. 6003 and 6004 for Interim and Final Orders (i) Authorizing Debtors to (a) Maintain and Administer Customer Programs, Including Public Purpose Programs, and (b) Honor any Prepetition Obligations Relating Thereto,; and (ii) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* [Docket No. 16] (the "**Customer Programs Motion**") to continue to refund or offer service credits to

-10-

customers with these deposits when the customer meets the appropriate credit worthiness criteria. Due to the number of customers with deposits, the relief granted in connection with the Customer Programs Motion, and the confidential nature of these deposits, the Debtors have not listed these customers on Schedule E/F – Priority Unsecured Claims.

Certain claims listed on Schedule E/F are claims owing to various taxing authorities to which the Debtors may potentially be liable. These claims may be the subject of ongoing audits and the Debtors may be unable to determine with certainty the amount of many, if not all, of the claims listed on Schedule E/F. Therefore, the Debtors listed all such claim amounts as "Undetermined" in amount, pending final resolution of ongoing audits or other outstanding issues.

Schedule E/F contains information regarding pending litigation involving the Debtors. In certain instances, the identity of the Debtors that are the subject of the litigation is unclear or undetermined. However, if litigation involving a particular Debtor has been identified, that information is contained in the Schedule for that Debtor. The inclusion of any litigation in these Schedules does not constitute an admission by the Debtors of liability, the validity of any action, the availability of insurance coverage, or the amount or treatment of any claims, defenses, counterclaims, or cross-claims or the amount or treatment of any potential claim resulting from any current or future litigation. For the avoidance of doubt, the Debtors preserve all defenses with respect to any lawsuit listed on Schedule E/F, including, but not limited to, the right to dispute that any of the lawsuits listed were not properly filed or that Debtors were not properly served a complaint in accordance with applicable state or federal laws. The Debtors have generally excluded internal grievance claims to protect the privacy interests of the grieving party and because the majority of such claims generally will not result in actual litigation. In addition, certain litigation or claims covered by insurance policies maintained by the Debtors may be excluded from Schedule E/F.

As set forth in the Debtors' Form 10-K for the fiscal year ended December 31, 2018, PG&E Corp. and the Utility face several uncertainties in connection with the 2018 Camp fire and 2017 Northern California wildfires, related to: the amount of possible loss related to third-party claims (in 2018, the Utility recorded total charges of $13.4 billion, which reflects the low end of the range of reasonably estimated losses and is subject to change based on additional information), which aggregate possible losses, if the Utility were found liable for certain or all of the costs, expenses and other losses in connection with the 2018 Camp fire and 2017 Northern California wildfires (other than potential punitive damages, fines and penalties or damages related to future claims), could exceed $30 billion. The Debtors have not attributed these charges to the holder of any particular wildfire claim. Accordingly, the Debtors have listed the claim amounts as "Undetermined" in Schedule E/F.

In the ordinary course of business, the Debtors generally receive invoices for goods and services after the delivery of such goods or services. As of the filing of the Schedules, the Debtors had not received all invoices for payables, expenses, or liabilities that may have accrued before the Petition Date. Accordingly, the information contained in Schedules E/F may be incomplete. The Debtors reserve the right to amend, modify, or supplement Schedules E/F in the event they receive such invoices. The claims of individual creditors are generally listed at the amounts recorded on the Debtors' books and records and may not reflect credits or allowances due from the creditor. The Debtors reserve all of their rights concerning credits or allowances.

-11-

d. **Schedule G – Executory Contracts:** The business of the Debtors is large and complex. Although reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or overinclusion may have occurred. Nothing herein shall be construed as a concession or evidence that any of the contracts, agreements, and leases identified on Schedule G: (i) constitute an executory contract within the meaning of section 365 of the Bankruptcy Code and other applicable law; or (ii) have not expired or been terminated or otherwise are not currently in full force and effect. Moreover, omission of a contract or lease from Schedule G does not constitute an admission that the contract or lease is not an executory contract or unexpired lease. The Debtors reserve all of their rights, including their right to seek a later determination of these issues and their right to dispute the validity, status, characterization, or enforceability of any contract or lease in Schedule G.

Certain of these contracts or leases may have been modified, amended, or supplemented by various amendments, restatements, statement of works, waivers, estoppel certificates, letters, improvement initiatives, notices to proceed, field directives, side letters, commitment letters, and other documents, instruments, and agreements that may not be listed, but are nonetheless incorporated by this reference. Certain of the contracts and leases listed on Schedule G may have been entered into by more than one of the Debtors. In addition, certain of the contracts and leases listed on Schedule G may not have been memorialized or fully executed and could be subject to dispute.

In some cases, the same supplier or provider appears multiple times in Schedule G. This multiple listing may reflect distinct agreements between the applicable Debtor and the supplier or provider. Multiple purchase orders, repair orders, or agreements with the same supplier or provider may be summarized and may not be listed on Schedule G individually.

The Debtors may have entered into various agreements in the ordinary course of their business, such as easements, rights of way, subordinations, nondisturbance and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements, non-disclosure agreements, confidentiality agreements, and similar such agreements. These documents also may not be listed on Schedule G.

Terms and conditions governing purchase orders, sales orders, and similar agreements may be referenced in an ancillary master services agreement ("**MSA**") or other governing document. Schedule G includes certain of such MSAs or other governing documents. By their inclusion in this Schedule, the Debtors do not submit that any MSA is an executory contract and such MSAs have been included in the Schedule out of an abundance of caution. The Debtors reserve all rights with respect to such master service agreements, including the right to argue that they are executory contracts.

e. **Schedule H – Co-Debtors:** Although the Debtors have made every effort to ensure the accuracy of Schedule H, inadvertent errors, omissions, or inclusions may have occurred. The Debtors hereby reserve all rights to dispute the validity, status, and enforceability of any obligations set forth on Schedule H and to further amend or supplement such Schedule as necessary.

The Debtors further reserve all rights, claims, and causes of action with respect to the obligations listed on Schedule H, including the right to dispute or challenge the characterization or the structure

-12-

of any transaction, document, or instrument related to a creditor's claim. The listing of a contract, guarantee, or other obligation on Schedule H shall not be deemed an admission that such obligation is binding, valid, or enforceable.

In the ordinary course of their business, the Debtors are involved in pending or threatened litigation, environmental matters and claims arising out of the conduct of their business. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counterclaims against other parties. Because such claims are listed elsewhere in the Statements and Schedules, they have not been set forth individually on Schedule H.

The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, debt instruments, and other such agreements. The Debtors reserve their right, but shall not be required, to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or are unenforceable.