Robert A. Julian (SBN 99469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone: 628.208.6434
Facsimile: 310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.442.8875
Facsimile: 310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Proposed Counsel for Official Committee of Tort Claimants*

**IN THE UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>– and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>Case No.: 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF CECILY A. DUMAS IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO 11 U.S.C. § 1103 AND FED. R. BANKR. P. 2014 AND 5002, FOR AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF BAKER & HOSTETLER LLP, EFFECTIVE AS OF FEBRUARY 15, 2019**<br><br>Date: Tuesday, April 9, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

CECILY A. DUMAS, under penalty of perjury, declares:

1. I am a partner in the Financial Restructuring Group of Baker & Hostetler LLP ("**Baker**" or the "**Firm**"), proposed counsel to the Official Committee of Tort Claimants (the "**Committee**") of PG&E Corporation and Pacific Gas and Electric Company (collectively the "**Debtors**") in these chapter 11 cases (the "**Cases**").

2. I submit this Declaration pursuant to section 1103(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), and Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), in support of the Committee's application, dated March 17, 2019 (the "**Application**") seeking authorization for the employment and retention of Baker as counsel to the Committee, effective as of February 15, 2019.

3. Unless otherwise stated in this Declaration, I have knowledge of the facts set forth herein and, if called as a witness, I would testify thereto. Certain of the disclosures set forth herein relate to matters not within my personal knowledge, but rather within the personal knowledge of other attorneys and employees at Baker and are based on information provided by them to me.

## Background

4. On January 29, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "**Cases**") in the United States Bankruptcy Court for the Northern District of California (the "**Court**"). On January 31, 2019, the Court entered an order consolidating the Cases for joint administration [Doc. No. 207].

5. The Debtors continue to manage their assets and operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in the Cases.

6. On February 15, 2019, the Office of the United States Trustee ("**U.S. Trustee**") filed an Appointment of the Official Committee of Tort Claimants [Doc. No. 453]. Following the resignation of Richard Heffern from the original committee and the addition of Tommy Wehe, on February 21, 2019, the U.S. Trustee filed the Amended Appointment of the Official Committee of Tort Claimants [Doc. No. 530]. The members of the Committee are: (i) GER Hospitality, LLC, in its capacity as an individual claimant; (ii) Kirk Trostle; (iii) Tommy Wehe; (iv) Angelo Loo; (v)

Karen K. Gowins; (vi) Agajanian, Inc.; (vii) Susan Slocum; (viii) Samuel Maxwell; (ix) Karen Lockhart; (x) Wagner Family Wines-Caymus Vineyards; and (xi) Gregory Wilson. The Committee conducted a meeting on February 15, 2019, at which the Committee duly selected Baker as counsel to represent it during the pendency of the Cases.

### **Qualifications of Baker**

7. Baker possesses extensive knowledge and expertise in the areas of law relevant to these Cases and is amply qualified to represent the Committee. Baker has significant experience in representing creditors' committees, including committees consisting of tort victims, in significant cases under chapter 11 of the Bankruptcy Code. For example, Baker, or its attorneys, have represented (or are representing) official committees in the following chapter 11 cases of national significance, among others: Abengoa Bioenergy Biomass of Kansas, LLC; Akron Thermal Limited Partnership; Alamo National; American Day Behavioral Health Services; Baltimore Energy Services II, LLC; Card Store; Hashfast Technologies, LLC; Hillsborough Holdings Corp.; Iten Chevrolet; J.A. Jones, Inc.; Johns-Manville Corp.; Lanser Partners; LTV Steel; Sedgwick Law Firm; S-Tran Holdings, Inc.; Tristream Energy, LLC; and Workflow Management, Inc.

8. Baker also has substantial experience and familiarity with the Federal Energy Regulatory Commission (FERC), and maintains a practice in this specialty area. It also has an expert on the California Public Utilities Commission (CPUC) available for this matter.

9. Baker or its attorneys have served as counsel in cases involving mass torts, including but not limited to serving as lead global restructuring counsel for AB Volvo, Peugeot, and Opel Vauxhall in the Takata bankruptcy case, serving as counsel to the Official Committee of Tort Plaintiffs of Baltimore Emergency Services II, LLC, serving as counsel to the Asbestos Litigants Committee of Johns-Manville and Hillsborough Holdings, and representing A.H. Robbins in its chapter 11 case concerning Dalkon Shield. Baker serves as counsel to the Trustee for the liquidation proceedings of Bernard L. Madoff Investment Securities, LLC, and the Chapter 7 case of Bernard L. Madoff, the largest financial fraud in history, achieving recoveries of over

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

$13 billion for victims, fully satisfying 1,688 claims, with nearly 67% of allowed customer claims recovered to date.

10. Baker has extensive expertise and experience in matters relating to the production of energy, including matters involving corporate finance, secured and unsecured lending transactions, derivatives transactions, project and structured finance, and securitizations, as well as the structuring and negotiation of commercial contracts (such as production agreements, operating agreements, pipeline agreements, infrastructure and utilities agreements, construction contracts, maintenance agreements and supply agreements) – all capabilities that may be important in determining and maximizing the assets and fixing the liabilities of the Debtors. Baker possesses significant experience with white collar and securities law practices. All of such expertise and experience will enable the Committee to react more quickly and to function more efficiently and effectively in these Cases.

## Services to Be Rendered

11. The Committee respectfully submits that it will be necessary to employ and retain Baker pursuant to section 1103 of the Bankruptcy Code to render the following services, among others, as directed by the Committee:

(a) participate in in-person and telephonic meetings of the Committee and any subcommittees formed thereby, and otherwise advise the Committee with respect to its rights, powers and duties in these Cases;

(b) assist and advise the Committee in its consultations, meetings and negotiations with the Debtors and all other parties in interest regarding the administration of these Cases;

(c) assist the Committee in analyzing the claims asserted against and interests asserted in the Debtors, and in negotiating with the holders of such claims and interests and bringing, or participating in, objections or estimation proceedings with respect to such claims or interests;

(d) assist with the Committee's review of the Debtors' schedules of assets and liabilities, statement of financial affairs and other financial reports prepared by the Debtors, and the Committee's investigation of the acts, conduct, assets, liabilities and financial condition of the Debtors and of the historic and ongoing operation of their businesses;

Case: 19-30088    Doc# 935    Filed: 03/17/19    Entered: 03/18/19 00:16:59    Page 4 of 13

(e) assist the Committee in its analysis of, and negotiations with, the Debtors or any third party related to, among other things, financings, asset disposition transactions, compromises of controversies, assumption or rejection of executory contracts and unexpired leases;

(f) assist the Committee in its analysis of, and negotiations with, the Debtors or any third party related to, the negotiation, formulation, confirmation and implementation of a chapter 11 plan or plans for the Debtors, and all documentation related thereto;

(g) assist and advise the Committee with respect to its communications with the general creditor body regarding significant matters in these Cases;

(h) respond to inquiries from individual creditors as to the status of, and developments in, the Cases;

(i) represent the Committee at all hearings and other proceedings before the Court and such other courts or tribunals, as appropriate;

(j) review and analyze all complaints, motions, applications, orders and other pleadings filed with the Court, and advise the Committee with respect to its position thereon and the filing of any response thereto;

(k) assist the Committee in preparing pleadings and applications, and pursuing or participating in adversary proceedings, contested matters and administrative proceedings as may be necessary or appropriate in furtherance of the Committee's interests and objectives; and

(l) perform such other legal services as may be necessary or as may be requested by the Committee in accordance with the Committee's powers and duties as set forth in the Bankruptcy Code.

12. Subject to Court approval of the Application, Baker is willing to serve as the Committee's counsel and to perform the services described above. Baker expects to work with the Official Committee of Unsecured Creditors and its counsel to allocate responsibility for various tasks in order to avoid duplication of effort and to move the Cases forward as quickly, harmoniously and efficiently as possible. The Committee may, from time to time, request that Baker undertake specific matters beyond the scope of the responsibilities set forth above. Baker may, in its discretion, undertake any such specific matters.

## Baker's Disinterestedness

13. To the best of my knowledge and except as otherwise set forth herein, the partners, counsel, associates and employees of Baker: (i) do not have any connection with the Debtors, their

- 5 -
Case: 19-30088    Doc# 935    Filed: 03/17/19    Entered: 03/18/19 00:16:59    Page 5 of 13

known creditors, other known or potential parties in interest, their respective attorneys or accountants or other professionals, the U.S. Trustee for Region 17 or any person employed in the San Francisco office of the U.S. Trustee, or any United States Bankruptcy Judge for the Northern District of California; and (ii) do not represent any other entity having an adverse interest in connection with these Cases.

14. In connection with its proposed retention by the Committee in these Cases, Baker searched its conflict database and its client database ("**Firm Databases**") to determine whether it had any relationships with the following entities which, to the knowledge of Baker based upon information provided to Baker by the Debtors, are, or may be, parties in interest in these Cases:

(a) Debtors;

(b) Debtors' Affiliates and Subsidiaries;

(c) Banks at which the Debtors hold accounts;

(d) Debtors' current Officers and Directors;

(e) Bankruptcy Judges and Staff of the Bankruptcy Court for the Northern District of California;

(f) Debtors' Term and Revolving Loan Lenders and Administrative Agents;

(g) Debtors' Contract Counterparties (includes, PPAs, patents and IP);

(h) Debtors' Professionals (law firms, accountants and other professionals);

(i) Debtors' Former Officers and Directors (since 2008);

(j) Affiliations of the Debtors' Former Officers and Directors;

(k) Debtors' Insurance/Insurance Provider/Surety Bonds;

(l) Landlords and parties to leases involving the Debtors;

(m) Debtors' Lenders (Prepetition and Proposed Postpetition to the extent not already listed);

(n) Litigation Counterparties/Litigation Pending Lawsuits – includes threatened litigation against the Debtors

(o) Debtors' prepetition and postpetition secured bank lenders, advisors and counsel;

(p) Litigation Parties (in adversary 19-03003)

(q) Ad Hoc Committee of Unsecured Tort Claimant Creditors;

(r) Non-Debtors Professionals;

(s) Debtors' Ordinary Course Professionals;

(t) Letters of Credit;

(u) Regulatory and Government (Federal, State and Local);

(v) Debtors' DIP Lenders;

(w) Debtors' Significant Competitors;

(x) Debtors' Significant Shareholders (more than 5% of equity);

(y) Debtors Significant Holders of Voting Securities;

(z) Debtors' Taxing Authorities (Federal, State, and Local; trust fund, use property, franchise, sales);

(aa) Top Unsecured Creditors;

(bb) Unsecured Notes;

(cc) UCC Lien Holders;

(dd) Unions;

(ee) Office of the United States Trustee for Region 17;

(ff) Utility Providers;

(gg) Vendors/Suppliers (critical, foreign, common carrier, shippers, warehousemen, customs duties, brokers charges, facilities provider and third party);

(hh) Interested Parties / Notice of Appearance Parties.

15. Specifically, Baker searched each name in the Debtors' "Retention Checklist" as affixed hereto as **Schedule 1** ("**Debtors' Interested Party List**") in the Firm Databases. To the extent the searches indicated that Baker presently has, or previously had, a relationship with any party ("**Interested Party**") named on the Debtors' Interested Party List within the last two years, the identity of such Interested Party and Baker's relationship therewith are set forth on **Schedule 2** affixed hereto and incorporated herein. Additionally, where a search of the Firm Database *did*

*not* produce a name identical to a name identified on the Interested Party list, but *did* produce a name that could potentially be an affiliate of an Interested Party or associated with an Interested Party by virtue of name similarity, Baker also identified and disclosed relationships with any such potentially Interested Party.

16. Searches of the Firm Database did not reveal present client relationships or client relationships within two years prior to the Petition Date for any name disclosed on the Debtors' Party in Interest List in the following categories and as reflected in paragraph 12, sections (a) through (gg) above: (a) the Debtors; (b) the Debtors' Affiliates and Subsidiaries; (e) Bankruptcy Judges and Staff of the Bankruptcy Court for the Northern District of California, (p) Litigation Parties (in adversary 19-03003), and (w) Significant Competitors. As such, to the best of my knowledge, Baker does not presently represent and has not, during the two-year period prior to the Petition Date, represented any of the foregoing Interested Parties disclosed by the Debtors in those categories.

17. In several instances, the names on the Debtor's Interested Party List were very generic. For example, the name Scott appears on the Debtor's Interested Party List and yielded 11,901 matches in searches of the Firm Databases. As such, it was not possible to identify with certainty whether Baker has any client relationship to disclose. Instead, Baker has identified each generic name on **Schedule 3** affixed hereto and incorporated herein and has identified the number of matches resulting from the searches of the Client Databases.

18. Baker also made a general inquiry to all attorneys and employees of the firm requesting disclosure of relationships with any (a) past or present officer or director of the Debtors; (b) Bankruptcy Judge in the Northern District of California; or (c) persons employed with the Office of the United States Trustee for Region 17, San Francisco Division. Additionally, Baker requested disclosure by all attorneys and employees, to the best of their knowledge, of any claims held against, or equity interest in, any of the Debtors. In response to the inquiry, a partner of the Firm is a panel trustee for the Northern District of Ohio and interacts with Mr. Vara on occasion due to Mr. Vara's role as United States Trustee for the Cleveland office.

19. Presently, a Baker partner serves as an expert witness for the beneficial interests of

Baker & Hostetler LLP
Attorneys at Law
San Francisco, CA

Community Development District Bonds (the "**Community**") regarding the reasonableness of fees charged by a law firm with respect to the Community's interests, where U.S. Bank NA serves as a trustee for the Community. Baker does not represent U.S. Bank NA or U.S. Bank NA's interests. Baker does not, and will not, represent U.S. Bank, NA in any capacity in the Cases.

20. The Debtors identify the Bank of New York Mellon as an Interested Party in these Cases. A Baker partner presently represents a subsidiary of the Bank of New York Mellon, BNY Corporate Trustee Services Limited, solely in its capacity as trustee of an irrevocable trust. BNY Corporate Trustee Services Limited is not identified on the Debtor's Interested Party List. Baker does not represent the Bank of New York Mellon and does not and will not represent BNY Corporate Trustee Services Limited in any matters related to the Debtors' Cases.

21. The Debtors identify Deutsche Bank as an Interested Party in these Cases. A Baker partner presently represents an affiliate of Deutsche Bank, Deutsche Bank Securities, in matters unrelated to the Debtors' Cases. Deutsche Bank Securities is not identified on the Debtor's Interested Party List. Baker does not and will not represent Deutsche Bank Securities in any matters related to the Debtors' Cases.

22. The Debtors identify John R. Simon as a current officer and director. Upon information and belief, Mr. Simon became involved with the Debtors in 2007. Prior to his involvement with the Debtors, Mr. Simon was an officer of Teletech Holdings Inc. ("Teletech"). Teletech is a present client of Baker in matters unrelated to the Debtors' Cases. To Baker's knowledge, Mr. Simon is no longer an officer of Teletech.

23. One category on the Debtors' Interested Party List, the category of "Litigation Counterparties/Litigation Pending Lawsuits – includes threatened litigation against the Debtors" mostly by individuals ("**Remaining Category**"). Baker's searches of its Firm Databases for current client relationships and for relationships dating back two years are complete, and I believe all disclosures required are contained within this Declaration or are identified on Schedules 2 and 3 affixed hereto. As to Schedule 3, many names are included in the Remaining Category and the results are inconclusive because generic names such as "Davis" have over 7,400 hits and it is almost impossible to identify whether the hit is an actual Interested Party or a mis-hit.

24. From time to time, Baker interacts with certain of the professional firms that have been or are proposed to be employed by the Debtors or other parties in these Cases and that may be rendering advice to other parties in interest in these Cases. Except as may be set forth on Schedule 2 attached hereto, to the best of my knowledge, Baker has not represented any of the law firms set forth on Schedule 1 during the two-year period prior to the date hereof.

25. In connection with unrelated matters, certain of the financial advisors and investment bankers who are or are proposed to be retained in these Cases have been retained by Baker or Baker's clients or may have been involved in matters where Baker represented a constituent, either aligned or adverse.

26. The Debtors have numerous relationships and creditors. Consequently, although every reasonable effort has been made to discover and eliminate the possibility of any connection or conflict, including the efforts outlined above, Baker is unable to state with certainty which of its clients or such clients' affiliated entities hold claims or otherwise are parties in interest in these Cases, particularly if not appearing on the Retention Checklist. If Baker discovers any information that is contrary to or pertinent to the statements made herein, Baker will promptly disclose such information to the Court on notice to such creditors and to the U.S. Trustee and such other creditors or other parties in interest as may be required under noticing procedures applicable in these Cases.

## Professional Compensation

27. As of the date of this Declaration, Baker has received no compensation for its work on behalf of the Committee.

28. Subject to the Court's approval, Baker will be compensated at its standard hourly rates, which are based on the professionals' level of experience, for its services to the Committee. At present, the standard hourly rates for Baker's attorneys range from $335 to $1195. These rates are subject to annual firmwide adjustments in the ordinary course of Baker's business, notice of which will be provided to the Debtors and the United States Trustee. Baker will maintain detailed, contemporaneous records of time and any necessary costs and expenses incurred in connection with the rendering of the legal services described above, and will be reimbursed for such costs and expenses in conformity with the Guidelines promulgated by the United States Trustee as in effect

Case: 19-30088    Doc# 935    Filed: 03/17/19    Entered: 03/18/19 00:16:59    Page 10 of 13

in this District.

29. The hourly rates set forth herein are Baker's standard hourly rates for work of this nature. These rates are set at a level designed to compensate Baker for the work of its attorneys and legal assistants and to cover fixed and routine overhead expenses. It is Baker's policy to charge its clients for all disbursements and expenses incurred in the rendition of services. These disbursements and expenses include, among other things, costs for telephone and facsimile charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.

30. Baker intends to apply to the Court for payment of compensation and reimbursement of expenses incurred as counsel to the Committee in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines promulgated by the United States Trustee currently in effect for this District, and the orders of this Court, and pursuant to any additional procedures that may be established by the Court in these Cases.

31. Other than as set forth above, there is no proposed arrangement between the Committee and Baker for compensation to be paid in these Cases. Baker has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code. For the avoidance of doubt, one of the attorneys active on this matter (Jerry Bloom) is a contract attorney paid on an hourly basis but is neither a partner or associate of the Firm. Mr. Bloom may have represented some of the contract counterparties when he worked at other law firms, but not at Baker. Any representation he may have had did not continue at Baker.

32. The proposed employment of Baker is not prohibited by or improper under Bankruptcy Rule 5002. To the best of my knowledge, no attorney or employee at the firm is related to any United States Bankruptcy Judge in the Northern District of California or to the United States Trustee for such district or any employee in the office thereof.

33. Baker is carrying on further inquiries of its partners, counsel and associates with respect to the matters contained herein. Baker will file supplemental declarations regarding this

retention as and if any additional relevant information comes to its attention.

**Statement Regarding U.S. Trustee Guidelines**

34. The following information is provided in response to the request for additional information set forth in Paragraph D.1. of the Appendix B—Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the "Revised UST Guidelines"):

| | |
|---|---|
| Question: | Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? |
| Response: | No. |
| Question: | Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? |
| Response: | No. |
| Question: | If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference. |
| Response: | Baker did not represent the Committee prior to the commencement of the Debtors' chapter 11 cases. |
| Question: | Has your client approved your prospective budget and staffing plan, and, if so for what budget period? |
| Response: | Baker is in the process of developing a staffing plan for the Committee's review and approval. Furthermore, Baker understands that the Committee, along with the Debtors and the U.S. Trustee, will maintain active oversight of Baker's billing practices. |

Case: 19-30088   Doc# 935   Filed: 03/17/19   Entered: 03/18/19 00:16:59   Page 12 of 13

35. Baker will use reasonable efforts to comply with the Revised UST Guidelines.

*Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.*

Executed on March 17, 2019

                                          */s/ Cecily A. Dumas*
                                          By: Cecily A. Dumas

- 13 -
Case: 19-30088   Doc# 935   Filed: 03/17/19   Entered: 03/18/19 00:16:59   Page 13 of 13