HOGAN LOVELLS US LLP
Erin N. Brady (CA 215038)
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

– and –

M. Hampton Foushee (*pro hac vice*)
hampton.foushee@hoganlovells.com
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

*Counsel for Party in Interest*
*esVolta, LP.*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 (Lead Case) (Jointly Administered) |
| **- and -** | |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **MOTION AND MEMORANDUM OF ESVOLTA, LP FOR ENTRY OF AN ORDER CONFIRMING SAFE HARBOR PROTECTION UNDER 11 U.S.C. §§ 362(b)(6) AND 556** |
| **Debtors.** | |

| | | |
|---|---|---|
| ☐ **Affects PG&E Corporation** | Hearing Date: | **April 10, 2019** |
| | Time: | **9:30 a.m.** |
| ☒ **Affects Pacific Gas and Electric Company** | Courtroom: | Hon. Dennis Montali 450 Golden Gate Avenue 16th Floor, Courtroom 17 San Francisco, CA 94102 |
| ☐ **Affects both Debtors** | | |
| | Objections Due: | **April 3, 2019, 4:00 p.m.** |
| ***All papers shall be filed in the Lead Case, No. 19-30088 (DM)** | | |

TABLE OF CONTENTS

Page

JURISDICTION..................................................................................................... 1

INTRODUCTION .................................................................................................. 2

FACTS .................................................................................................................... 3

LEGAL ARGUMENT ........................................................................................... 8

The Safe Harbor Protections Of Sections 362(b)(6) And 556 Apply To Allow Hummingbird to Enforce Its Contractual Rights Under The PPA Notwithstanding PG&E's Bankruptcy ..................................................................................... 8

    a.    The Forward Contract Test ....................................................................... 9

    b.    The PPA is a Forward Contract .............................................................. 11

    c.    Hummingbird and PG&E are both Forward Contract Merchants ......... 13

        i.    The Forward Contract Merchant Test ........................................ 13

        ii.    Hummingbird is a Forward Contract Merchant ......................... 14

        iii.    PG&E is a Forward Contract Merchant ..................................... 15

    d.    The PPA is Entitled to the Safe Harbor Protections of the Bankruptcy Code as a Forward Contract Executed by Forward Contract Merchants ...................... 155

NOTICE ................................................................................................................ 16

CONCLUSION ..................................................................................................... 16

Hogan Lovells US
LLP
Attorneys At Law
San Francisco, New York

i

\\NY - 049926/000001 - 9718638 v21

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Calpine Energy Servs., L.P. v. Reliant Energy Elec. Sols., L.L.C. (In re Calpine Corp.)*, No. 08-1251(BRL), 2009 WL 1578282 (Bankr. S.D.N.Y. May 7, 2009) ..................... 9

*In re Cascade Grain Prod., LLC*,
465 B.R. 570 (Bankr. D. Or. 2011) ........................................................................ 12

*Clear Peak Energy, Inc. v. S. Cal. Edison Co. (In re Clear Peak Energy, Inc.)*,
488 B.R. 647 (Bankr. D. Ariz. 2013) .............................................................. *passim*

*Commodity Futures Trading Comm'n v. My Big Coin Pay, Inc.*,
334 F. Supp. 3d 492 (D. Mass. 2018) ..................................................................... 10

*Conroy v. Andeck Res. '81 Year-End Ltd.*,
137 Ill. App. 3d 375, 484 N.E.2d 525 (1985) ......................................................... 10

*In re Borden Chemicals & Plastics Operating Ltd. P'ship*, 336 B.R. 214 (Bankr. D. Del. 2006) ............................................................................................................... 13

*In re FirstEnergy Sols. Corp.*,
No. 18-50757, 2019 WL 211807 (Bankr. N.D. Ohio Jan. 15, 2019) ....................... 12

*In re MBS Mgmt. Servs., Inc.*,
432 B.R. 570 (Bankr. E.D. La. 2010) .................................................................... 12

*In re Mirant Corp.*,
303 B.R. 319 (Bankr. N.D. Tex. 2003) .......................................................... 9, 14, 15

*In re Mirant Corp.*,
310 B.R. 548 (Bankr. N.D. Tex. 2004) .................................................................. 14

*In re National Gas Distributors, LLC*,
556 F.3d 247 (4th Cir. 2009) .................................................................................. 10

**Statutes**

7 U.S.C. § 1a(9) ............................................................................................................ 9, 11

11 U.S.C. § 101(25) ...................................................................................................... 9, 12

11 U.S.C. § 101(26) ................................................................................................ 13, 14, 15

11 U.S.C. § 362(b)(6) ............................................................................................... *passim*

11 U.S.C. § 365(e)(1) ................................................................................................. 2, 6, 9

Case: 19-30088    Doc# 977    Filed: 03/20/19    Entered: 03/20/19 13:39:21    Page 3 of 25

11 U.S.C. § 556 ..................................................................................................................*passim*

11 U.S.C. § 761(1) ........................................................................................................................9

11 U.S.C. § 761(8) ...................................................................................................................9, 11

28 U.S.C. § 157 ............................................................................................................................1

28 U.S.C. § 1334 ..........................................................................................................................1

28 U.S.C. § 1408 ..........................................................................................................................1

28 U.S.C. § 1409 ..........................................................................................................................1

**Rules**

Fed. R. Bankr. P. 2002 ................................................................................................................16

Fed. R. Bankr. P. 4001(a)(1) ........................................................................................................1

Bankr. Loc. R. 4001-1 ..................................................................................................................2

**Other Authorities**

Pub. Util. Code § 380 ...................................................................................................................2

Cal. Assemb. B. 2514 (Cal. 2010) ...............................................................................................4

Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,
General Order 24 (N.D. Cal.).......................................................................................................1

Hogan Lovells US LLP
Attorneys At Law
San Francisco, New York

\\NY - 049926/000001 - 9718638 v21

iii

esVolta, LP ("esVolta") by and through its undersigned counsel, submits this motion and memorandum of points and authorities for entry of an order confirming that (1) the Energy Storage Resource Adequacy Agreement (the "PPA,") between Hummingbird Energy Storage, LLC ("Hummingbird"), a wholly-owned subsidiary of esVolta, on the one hand, and Pacific Gas and Electric Company ("PG&E" and together with PG&E Corporation, the "Debtors"), on the other hand, is subject to the safe harbor provisions codified in Sections 362(b)(6) and 556 of title 11 of the United States Code (the "Bankruptcy Code") such that (2) the automatic stay does not apply to bar Hummingbird from exercising its contractual rights under the PPA, including its contractual right to cause the liquidation, termination or acceleration of the PPA or to offset or net out any termination value, payment amount or other transfer obligation arising under or in connection with the PPA. This motion is supported by the declaration of Randolph Mann (the "Mann Declaration") filed contemporaneously herewith and the files and records referenced herein. esVolta notes that this motion is substantially similar to the *Motion and Memorandum of Enel Green Power North America for Entry of an Order Confirming Safe Harbor Protection under 11 U.S.C. §§ 362(b)(6) and 556.* [Dkt. No. 481], which Motion concerns a substantially similar energy storage resource adequacy agreement procured by PG&E under an earlier resource adequacy procurement and seeks the same relief from the Court sought herein. esVolta respectfully represents the following in support of this motion:

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules").

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for this Motion are 11 U.S.C. §§ 362(b)(6) and 556, Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Bankruptcy Local Rule 4001-1.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

\\NY - 049926/000001 - 9718638 v21

1

Case: 19-30088   Doc# 977   Filed: 03/20/19   Entered: 03/20/19 13:39:21   Page 5 of 25

**INTRODUCTION**

5.     By this motion (the "Safe Harbor Motion"), esVolta requests an order confirming that the safe harbor protections under Sections 362(b)(6) and 556 of the Bankruptcy Code apply to allow Hummingbird to enforce its contractual rights under the PPA, including its right to terminate the PPA.

6.     Pursuant to the PPA, Hummingbird is contracted to construct a lithium ion battery energy storage facility in the Coyote Valley area of San Jose, California (the "Facility") that will provide resource adequacy capacity to PG&E.[1] Hummingbird has already posted development security upon signing the PPA and must post additional development security soon after receiving written notice from PG&E of the CPUC's approval of the PPA becoming final and non-appealable. On March 19, 2019, the CPUC issued an order indicating that its approval of the PPA had become final and non-appealable and esVolta expects to receive notice from PG&E any day now. The Facility is currently under development and Hummingbird is obligated to spend millions of dollars in development costs over the next several months to comply with its obligations under the PPA, much of which requires third party financing.

7.     Additionally, pursuant to the PPA, Hummingbird is required to enter into an interconnection agreement (the "Interconnection Agreement") with PG&E and CAISO that will allow Hummingbird to interconnect the Facility to PG&E's transmission system, controlled by CAISO, and will guarantee the ability of Hummingbird to deliver the Facility's capacity attributes to PG&E. Hummingbird has applied to CAISO for the Interconnection Agreement and CAISO is currently undertaking required interconnection studies and will later provide a draft agreement. Hummingbird has already incurred costs and expects to incur additional costs under the Interconnection Agreement in the coming months.

8.     Unfortunately, as a result of PG&E's recent Chapter 11 filing, PG&E may at any

---

[1] Public Utilities Code Section 380 requires the California Public Utilities Commission ("CPUC") to establish resource adequacy requirements for load serving entities under CPUC jurisdiction, including PG&E, in consultation with the California Independent System Operator ("CAISO"). Under the requirements of the CPUC, load serving entities must demonstrate they have procured sufficient capacity to meet resource adequacy requirements and to maintain local area reliability.

time decide that it no longer wants the Facility and may exercise its right under Section 365 of the Bankruptcy Code to reject the PPA. In recognition of these facts, esVolta's management has asked PG&E's management to commit to assuming the PPA in bankruptcy prior to expending any additional capital, but PG&E's management has responded that the company is not currently in a position to make a decision concerning assumption or rejection. Hummingbird is thus in the difficult position of continuing to expend millions of dollars in order to honor its obligations under the PPA and to build a battery storage facility that PG&E may not even want. Hummingbird's position is becoming untenable, as the threat of bankruptcy contract rejection has prevented esVolta and Hummingbird from obtaining the third party financing that is necessary to continue with the Facility's development. If development ceases, Hummingbird risks defaulting under the PPA. If Hummingbird defaults, PG&E can terminate the PPA at will, forfeiting Hummingbird's development security and all other funds expended by Hummingbird thus far.

9.      Although esVolta wants to – and for now intends to – keep the PPA in place and complete development of the Facility, esVolta also wishes to confirm Hummingbird's right under the Bankruptcy Code safe harbor protections to terminate the PPA in the event that financial circumstances require it to do so. esVolta respectfully represents that an order from this Court that the PPA is entitled to the safe harbor protections codified in Sections 362(b)(6) and 556 of the Bankruptcy Code is necessary to provide clarity on whether Hummingbird may exercise its contractual rights to terminate the PPA without violating the automatic stay. Accordingly, esVolta respectfully requests that the Court enter an order in the form of the proposed order filed herewith that confirms (i) the PPA is entitled to the statutory safe harbor protections codified in Sections 362(b)(6) and 556 of the Bankruptcy Code; and (ii) the automatic stay does not apply to Hummingbird, in its capacity as counterparty to the PPA, from exercising its contractual rights thereunder.

**FACTS**

10.      esVolta, headquartered in Aliso Viejo, California, is a leading developer, owner and operator of utility-scale energy storage projects in North America.

11.      PG&E and Hummingbird, a wholly-owned subsidiary of esVolta, are each

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

3

\\NY - 049926/000001 - 9718638 v21

Case: 19-30088    Doc# 977    Filed: 03/20/19    Entered: 03/20/19 13:39:21    Page 7 of
25

currently party to the PPA.

12.     The PPA was executed on June 1, 2018, and by its terms, unless otherwise terminated, will continue for a period fifteen years from the initial delivery date, during which time PG&E will purchase resource adequacy capacity from Hummingbird. At the time of execution, the expected initial delivery date was December 1, 2020.

13.     The PPA encompasses two phases: (i) development of the Facility, and (ii) a fifteen year delivery term, during which the Facility provides resource adequacy capacity to PG&E ((i) and (ii) together, the "Energy Storage Project"). Hummingbird is a special-purpose entity that is wholly controlled by esVolta and created for the purpose of entering into the PPA and other contracts in relation to the Energy Storage Project.

14.     Under the PPA, after development and construction of the Facility is complete, esVolta is contracted to provide all resource adequacy capacity to PG&E from the Facility to allow PG&E to comply with its regulatory obligations and to provide grid reliability in its territory and local area.

15.     Energy utilities purchase resource adequacy capacity in order to ensure that the utility is able to meet future electricity demand from consumers as required by energy regulators.

16.     The PPA specifies a minimum quantity of resource adequacy capacity to be supplied over the set period of time.[2]

17.     As the PPA contains confidential commercial information, esVolta has filed concurrently herewith a motion requesting permission to file the PPA, as well as unredacted versions of this Safe Harbor Motion and the Mann Declaration, under seal.

18.     The PPA is the outcome of a competitive procurement process by which PG&E ensures compliance with CPUC Decision ("D.") 13-10-040 implementing California Assembly Bill 2514, which requires that PG&E meet certain energy storage procurement targets, and CPUC Resolution E-4909, directing PG&E to hold a competitive solicitation for energy storage and/or preferred resources to meet local reliability needs in three local sub-areas in northern California.

---

[2]     The PPA defines a specific Resource Adequacy Attributes capacity and Flexible Resource Adequacy Attributes capacity, in MW, and the PPA guarantees a minimum percentage of these capacity numbers.

19.     Hummingbird was required to post ▮▮▮▮▮▮ of development security in favor of PG&E upon signing the PPA.

20.     On June 29, 2018, PG&E filed Advice Letter 5322-E with the CPUC requesting approval of the PPA (along with three other contracts with Dynegy Marketing and Trade, LLC, Micronoc Inc. and Tesla Inc). On November 8, 2018, the CPUC issued Resolution E-4949, approving the PPA and the other three contracts. In approving the contracts, the CPUC found that PG&E's execution of the agreements is consistent with the objectives and directives of CPUC Resolution E-4909, as well as the Energy Storage Procurement Framework and Design Program, approved by the CPUC in D. 13-10-040. The CPUC further found that the agreements were reasonably priced and the related costs to PG&E were fully recoverable in the rates over the life of the PPA. On December 10, 2018, the Public Advocates Office at the CPUC ("Cal Advocates") filed an Application for Rehearing of Resolution E-4949, claiming the Resolution committed a legal error.

21.     Under the PPA, on or before February 24, 2019, PG&E was required to obtain a final and non-appealable order from the CPUC approving the PPA, including payments made thereunder, and confirming that the PPA counts toward PG&E's energy storage procurement obligations established in D.13-10-040. While this approval was not obtained by February 24, 2019, on March 19, 2019, we understand that the CPUC issued an order indicating that Cal Advocates' Application for Rehearing was denied, presumably rendering the CPUC's approval of the PPA final and non-appealable. Once esVolta receives written notice from PG&E that the CPUC's approval of the PPA has become final and non-appealable, Hummingbird will be required to post an additional ▮▮▮▮▮ of project development security within five business days. As of filing, PG&E had not provided such written notice. In the interim, Hummingbird continues to incur mounting development costs associated with the PPA project.

22.     Pursuant to the PPA, Hummingbird is required to enter into the Interconnection Agreement with PG&E and CAISO and has already made an initial payment as part of the application. In the coming months, Hummingbird will incur additional costs under the interconnection application and study process, as well as under the Interconnection Agreement,

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

\\NY - 049926/000001 - 9718638 v21

once signed.

23.    In addition, esVolta and Hummingbird have invested █████ in unrecoverable development expenses for site control and land payments, interconnection studies, permit applications (and related consulting costs including engineering, environmental, entitlements and architecture), plus travel and legal fees.  In addition to its investments to date, and the project development security and Interconnection Agreement security discussed above, esVolta and Hummingbird face significant near-term cash requirements to continue the development of the Facility in order to maintain the schedule required to ensure that Hummingbird does not trigger an "Event of Default" under the PPA.  These near-term cash requirements include: (a) a ████ down payment to reserve battery cell manufacturing capacity, (b) roughly █████ to begin the early engineering and procurement of the interconnection and generation tie-line, (c) approximately ██████ of ongoing project development costs including for expert consultants and (d) an estimated █████ of additional interconnection early engineering and procurement costs in the coming months.

24.    These costs are highly material to esVolta and its investors and require funding assistance from third-party investors.  To help meet these costs, esVolta recently secured a financial commitment from a third-party energy investor to provide capital funding for a portion of the expected development costs.  However, further funding by this investor (and likely any other investor) is contingent on the PPA being assumed by PG&E pursuant to Section 365 of the Bankruptcy Code.

25.    esVolta and Hummingbird thus now find themselves in a difficult dilemma, as they must obtain third-party investment in order to continue to fulfill Hummingbird's obligations under the PPA, but they cannot obtain such funding so long as PG&E does not assume the PPA in bankruptcy.  Under the PPA, if Hummingbird fails to satisfy its collateral posting requirements[3] or fails to construct the Facility in time to meet the delivery date requirements[4], Hummingbird

---

[3]    Energy Storage Resource Adequacy Agreement between Pacific Gas and Electric Company (as Buyer) and Hummingbird Energy Storage, LLC (as Seller), executed June 1, 2018, Article 7.1(a)(ii).

[4]    *Id*. at 7.1(a)(v).

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

6

\\NY - 049926/000001 - 9718638 v21

will trigger an Event of Default under section 7.1 of the PPA, which in turn will grant PG&E a termination right under section 7.2 whereby PG&E may terminate the contract and keep the project development security that has been posted.[5]

26.     In sum, Hummingbird risks breaching its obligations under the PPA – at which point it will lose all of its investments made up to the time of the breach – unless it can receive assurances from PG&E that the PPA will be assumed and that PG&E will perform under the contract as contemplated when the contract was originally signed.

27.     Hoping to resolve this dilemma, esVolta has been in discussions with PG&E's management in an effort to reach a consensual solution that is fair to all parties. Unfortunately, given the early stage of the bankruptcy proceedings, PG&E has indicated that it is not currently in a position to assume the PPA, and needs more time before making a decision one way or the other. While it is esVolta's first preference for PG&E to simply assume the PPA in short order, esVolta seeks the relief specified herein in order to ensure that Hummingbird is not left in the impossible position of having to default under the PPA because it cannot obtain assurances from PG&E that it will indeed assume the PPA – assurances that are necessary in order to finance esVolta's continued performance under the PPA.

28.     By contrast, if the Court concludes that the safe harbor provisions apply, Hummingbird will have the option of terminating the PPA due to a default by PG&E under section 7.1(b)(i) of the PPA.[6] Upon termination, as the non-defaulting party, Hummingbird will be eligible under Section 7.2 of the PPA to collect a Termination Payment (as defined in the PPA), which includes, among other things, third party transaction costs and economic losses resulting from termination of the PPA. Hummingbird will also have the option of proceeding with the development for now with the comfort that, should it run out of funds in the future due to delays in PG&E's assumption of the PPA that inhibit third party funding, it may recoup at least a

---

[5] *See id.* at 7.2(b). The PPA states that if the Seller (Hummingbird) is the Defaulting Party prior to the Initial Delivery Date (as is relevant here), then the Non-Defaulting Party (PG&E) is entitled to a Damage Payment Amount, which is defined as the amount required to be posted as project development security less delay damages (which are not relevant until after December 1, 2020).

[6] *See id.* at 7.1(b)(i). The PPA states that the "initiation of a bankruptcy, reorganization, debt arrangement, moratorium or any other proceeding under bankruptcy laws" constitutes an event of default.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

7

\\NY - 049926/000001 - 9718638 v21

Case: 19-30088    Doc# 977    Filed: 03/20/19    Entered: 03/20/19 13:39:21    Page 11 of 25

portion of its losses and will not be forced to pay damages to PG&E.

## LEGAL ARGUMENT

29. esVolta submits that based upon the foregoing facts, and under applicable law as set forth below, the relief requested herein should be granted, and the Court should confirm that the PPA is protected by the safe harbor provisions of Sections 362(b)(6) and 556 of the Bankruptcy Code, and that the automatic stay does not apply to bar Hummingbird from exercising its contractual rights thereunder.

### The Safe Harbor Protections Of Sections 362(b)(6) And 556 Apply To Allow Hummingbird to Enforce Its Contractual Rights Under The PPA Notwithstanding PG&E's Bankruptcy

30. esVolta seeks an Order of this Court confirming that the safe harbor provisions of Sections 362(b)(6) and 556 of the Bankruptcy Code apply to the PPA and that the automatic stay does not prevent Hummingbird from enforcing its contractual rights under the PPA, including any contractual right to cause the liquidation, termination or acceleration of the PPA or to offset or net out any termination value, payment amount or other transfer obligation arising under or in connection with the PPA.

31. Section 362(b)(6) of the Bankruptcy Code provides that the automatic stay does not bar a forward contract merchant from exercising its contractual rights under any forward contract with the debtor entity.[7]

32. Section 556 of the Bankruptcy Code further defines the contractual rights that may be enforced under this safe harbor exception to the automatic stay, specifically allowing a forward contract merchant to enforce its contractual right to "liquidate, terminate, or accelerate" a forward contract with the debtor according to the provisions in the contract that allow termination, liquidation, or acceleration based on (i) the counterparty becoming insolvent or (ii) the counterparty filing for bankruptcy under Chapter 11.[8]

---

[7] 11 U.S.C. § 362(b)(6).

[8] 11 U.S.C. §§ 556, 365(e)(1); *see also Calpine Energy Servs., L.P. v. Reliant Energy Elec. Sols., L.L.C. (In re Calpine Corp.),* No. 08-1251(BRL), 2009 WL 1578282, at *7 (Bankr. S.D.N.Y. May 7, 2009) (holding that Section 556, by its terms, limits its reach to those clauses that trigger termination upon the occurrence of a condition specified in Section 365(e)(1)).

33.     In other words, under the Bankruptcy Code, a party may act on a contractual *ipso facto* clause to terminate contracts with the debtor if the party can demonstrate that it falls under one of the safe harbor exceptions to the automatic stay.[9] A party seeking to establish its qualification for the forward contract safe harbor is required to show that (i) the contract satisfies the requirements of a "forward contract," and (ii) a party to the contract falls under the definition of a "forward contract merchant" under the Bankruptcy Code.[10]

### a.     The Forward Contract Test

34.     Section 101(25) of the Bankruptcy Code defines a "forward contract" as a contract for the purchase, sale, or transfer of a commodity (as defined in Section 761(8)) or any similar good, service, article, right, or interest, which is presently or in the future becomes the subject of dealing in the forward contract trade, with a maturity date more than two days after the date the contract is entered into, including a repurchase or reverse repurchase transaction, consignment, lease, swap, hedge transaction, deposit, loan, option or any other similar agreement.[11]

35.     Section 761(8) of the Bankruptcy Code adopts the definition of "commodity" found in the Commodity Exchange Act ("CEA").[12] Section 1a(9) of the CEA defines "commodity" to include "all services, rights, and interests . . . in which contracts for future delivery are presently or in the future dealt in."[13] The term "commodity" is expansive, and the 1974 amendments to the CEA further enlarged the term to cover non-traditional goods and services.[14]

36.     Relatively few cases in the Ninth Circuit have addressed the issue of whether a

---

[9] *See In re Mirant Corp.,* 303 B.R. 319, 327 (Bankr. N.D. Tex. 2003) (holding that even if a contract contains a valid *ipso facto* clause, the automatic stay still applies to prevent unilateral termination of the contract, and the counterparty must seek court's approval to modify the stay before the *ipso facto* clause may be invoked).

[10] *See Clear Peak Energy, Inc. v. S. Cal. Edison Co. (In re Clear Peak Energy, Inc.),* 488 B.R. 647, 661 (Bankr. D. Ariz. 2013).

[11] 11 U.S.C. § 101(25).

[12] 11 U.S.C. § 761(1), (8).

[13] 7 U.S.C. § 1a(9).

[14] *See Conroy v. Andeck Res. '81 Year-End Ltd.,* 137 Ill. App. 3d 375, 380, 484 N.E.2d 525, 530 (1985); *see also Commodity Futures Trading Comm'n v. My Big Coin Pay, Inc.,* 334 F. Supp. 3d 492, 497 (D. Mass. 2018) (noting that Congress sought an expansive definition of commodity in the CEA).

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

9

\\NY - 049926/000001 - 9718638 v21

contract qualifies as a forward contract for the purposes of the safe harbor provisions. In the primary decision on point within the Ninth Circuit, the Bankruptcy Court for the District of Arizona determined that a renewable power purchase and sales agreement for electricity produced by a solar generating facility (the "SCE PPA") between an electric power company (Southern California Edison, "SCE") and a chapter 11 debtor qualified as a forward contract.[15] In *Clear Peak,* the Bankruptcy Court looked to four factors in its determination, namely whether: (i) the subject of the contract was a commodity, with substantially all costs of performance attributable to the costs of the underlying commodity; (ii) the contract had a maturity date more than two days after the contracting date; (iii) the quantity and time elements were fixed at the time of contracting; and (iv) the contract had a relationship to the financial markets.[16]

37. Applying these four factors, the court in *Clear Peak* found that the SCE PPA qualified as a forward contract for purpose of the safe harbor provisions. The court disposed of the first three factors easily, finding that the subject of the SCE PPA was a commodity (electricity), the timeline manifested a maturity date more than two days after the execution date, and the PPA specified a minimum amount of power to be supplied over a specific period of time.[17]

38. On the fourth factor, the *Clear Peak* court found that a substantial relationship to the financial market existed where the principal purpose of the SCE PPA was to hedge the price SCE had to pay over the long term, even though the SCE PPA also served the purpose of complying with a state law requirement that 33% of California's energy be sourced from renewable resources by 2020.[18] The court determined that the SCE PPA is part of a broader price-hedging scheme, whereby SCE acquires 98% of its power through short- and long-term wholesale power purchase agreements with both renewable and conventional resources.[19] The

---

[15] *See Clear Peak,* 488 B.R. at 663.

[16] *Id.* at 657. The *Clear Peak* court followed the test set by the Fourth Circuit Court of Appeals in *In re National Gas Distributors, LLC,* 556 F.3d 247 (4th Cir. 2009).

[17] *Id.* at 659.

[18] *Id.*

[19] *Id.* at 660.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

10

\\NY - 049926/000001 - 9718638 v21

Court also noted that all of SCE's wholesale power purchase agreements required CPUC approval, and one of the factors the CPUC considers is the reasonableness of the price.[20] The court concluded that, based on the complex mechanism SCE had created to evaluate the contracts that supply power to its customers, the primary purpose of the SCE PPA was to allow SCE to hedge the price over the long term, thereby satisfying the fourth prong of the forward contract test.[21]

### b. The PPA is a Forward Contract

39. The PPA qualifies as a forward contract. In fact, the PPA itself explicitly acknowledges that it is a forward contract within the meaning of the Bankruptcy Code.[22] The parties' intent is indisputable.

40. The parties' intent aside, the PPA qualifies as a forward contract under the *Clear Peak* test. To begin, the primary subject of the PPA – resource adequacy capacity – is a commodity for purposes of Section 761(8) of the Bankruptcy Code. Resource adequacy capacity is the right to receive electric capacity in the future that a utility company (such as PG&E) purchases from an energy provider (such as esVolta) to ensure that the utility is able to meet future electricity demand from consumers. The PPA thus grants PG&E a "right" to "future delivery" of electricity capacity over the 15-year delivery term and resource adequacy capacity therefore falls squarely within the Commodity Exchange Act's definition of "commodity".[23]

41. Even if the Court finds resource adequacy capacity does not itself qualify as a commodity within the definition of a forward contract under the Bankruptcy Code, the underlying commodity being stored and offered on demand in the future is electricity, which numerous courts have held to be a "commodity" for forward contract purposes.[24] As the definition of

---

[20] *Id.*

[21] *Id.*

[22] Energy Storage Resource Adequacy Agreement, Article 20.1.

[23] 7 U.S.C. § 1a(9).

[24] *See In re MBS Mgmt. Servs., Inc.,* 432 B.R. 570, 574 (Bankr. E.D. La. 2010) (holding that contract which required company to "supply the full requirements" of electricity to debtor was a "forward contract," where the contract involved the sale of electricity, a commodity); *see also In re FirstEnergy Sols. Corp.,* No. 18-50757, 2019 WL 211807 (Bankr. N.D. Ohio Jan. 15, 2019) (in which both parties specifically stipulated that electricity is a commodity under the Bankruptcy Code, and the court agreed).

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

11

WNY - 049926/000001 - 9718638 v21

forward contract under the Bankruptcy Code includes not only a contract for the purchase, sale or transfer of a commodity, but also any "product or byproduct thereof,"[25] a contract for providing resource adequacy of electricity, which is indisputably a commodity, clearly qualifies. Thus, the first prong of the test is satisfied.

42. The PPA also satisfies the second and third prongs of *Clear Peak*, as the PPA's maturity date – December 1, 2035 – is more than two days after the contracting date, and the quantity and time elements of the PPA – guaranteeing that Hummingbird will supply a minimum[26] amount of capacity over the course of a 15 year term – were fixed at the time of its execution.[27] Additionally, the price is set, as payment is made over the fifteen years of the contract term using an escalating schedule, priced per kW.

43. Finally, the PPA also satisfies the fourth factor, in that the PPA has a relationship to the financial markets. The PPA was procured in order to both comply with its statutory obligations regarding resource adequacy and local area reliability and, more importantly, to make new cost-effective storage capacity viable and available for future capacity needs.[28] PG&E's long-term approach is fundamental to its strategy to hedge prices in its procurement of resource adequacy capacity. The PPA plays an integral part in PG&E's broad price-hedging scheme and thus has a direct relationship to the financial markets. Like SCE in *Clear Peak*, PG&E has created a complex network of supply and capacity agreements, utilizing tools like resource adequacy in order to continuously provide power to its customers at stable rates.[29] The PPA was

---

[25] 11 U.S.C. § 101(25).

[26] *See Clear Peak*, 88 B.R. at 658-659 (finding that the fixed quantity requirement is satisfied so long as the contract anticipates the generation of a minimum quantity of power over a specific period of time).

[27] The PPA was executed on June 1, 2018, with the initial delivery date set for December 1, 2020 and a fifteen year supply period to begin on the initial delivery date. Ninth Circuit case law holds that "maturity date" as used in the definition of forward contract "means the future date at which the commodity must be bought or sold". *See In re Cascade Grain Prod., LLC,* 465 B.R. 570, 575 (Bankr. D. Or. 2011).

[28] *See* PG&E Opening Brief, Application of PG&E Company for Approval of its 2018 Energy Storage Procurement and Investment Plan (U39E), California Public Utilities Commission Docket A.18-03-001, requesting approval of its 2018 energy storage procurement and investment plan, stating also that "PG&E's 2018 ES RFO builds off of its earlier ES RFO cycles." At 13. Just as with the PPA in *Clear Peak*, this PPA must also be approved by the CPUC, and the primary factor in obtaining regulatory approval is that the PPA provides reasonable terms and conditions, including price.

[29] *See* PG&E Corp. and Pacific Gas and Electric Co., Annual Report (form 10-K), at 129 (Feb. 28, 2019), noting PG&E's use of derivative contracts such as power purchase agreements to manage volatility in customer rates.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

12

\\NY - 049926/000001 - 9718638 v21

executed as an essential component of that hedging network to ensure availability of resources during times of peak demand and to reduce the need to purchase higher priced backstop capacity. Therefore, the PPA has a substantial connection to the financial markets and satisfies the fourth prong of the forward contract test.[30]

44.     For all of the foregoing reasons, the PPA satisfies each of the four factors of the forward contract test identified by the court in *Clear Peak,* and qualifies for protection under Sections 362(b)(6) and 556 of the Bankruptcy Code so as to avoid a negative impact on the financial markets due to the imposition of the automatic stay.

### c.    Hummingbird and PG&E are both Forward Contract Merchants

#### i.    The Forward Contract Merchant Test

45.     Section 101(26) of the Bankruptcy Code defines a forward contract merchant as an entity in the business of[31] entering into forward contracts as a merchant (or with a merchant) in a commodity or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade.

46.     In *Clear Peak,* the court found that SCE qualified as a forward contact merchant because it entered into contracts with short- and long-term maturity dates for the future delivery of electricity for hedging purposes.[32]

47.     The *Clear Peak* court reasoned that the language of Section 101(26) requires only one party to the contract to be a merchant, and that only contracts to which neither counterparty is a merchant would fail to satisfy the statutory requirement in the definition of a forward contract merchant.[33] Finding that SCE qualified as a forward contract merchant, the *Clear Peak* court held this factor under the 362(b)(6) safe harbor satisfied.[34]

---

[30]   Additionally, the PPA contains a provision stating that the parties acknowledge that the agreement is a forward contract within the meaning of the Bankruptcy Code.

[31]   *See in re Borden Chemicals & Plastics Operating Ltd. P'ship,* 336 B.R. 214, 225-226 (Bankr. D. Del. 2006) (noting that an entity can qualify as a forward contract merchant for purposes of the safe harbor even if its business is only partially comprised of entering into forward contracts in a commodity).

[32]   *See Clear Peak,* 488 B.R. at 661.

[33]   *Id.*

[34]   *Id.*

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

13

Case: 19-30088    Doc# 977    Filed: 03/20/19    Entered: 03/20/19 13:39:21    Page 17 of
25

48.     Faced with a similar issue in *In re Mirant Corp.,* the Bankruptcy Court for the Northern District of Texas looked to whether a customer who had entered into natural gas supply agreements with the Chapter 11 debtor sought to profit in the forward contract trade in determining whether the customer qualified as a forward merchant.[35]  In its analysis, the court placed particular emphasis on the terms "business" and "merchant," stating that without these references, the definition of "forward contract merchant" could easily be applied to encompass anyone who enters into forward contracts.[36]  The court concluded that a "merchant" is a person that buys, sells or trades in a market, but not a person who acts merely as an end-user or a producer.[37]  The court further held that to be "in the business" of a particular trade means something one engages in to generate a profit.[38]  Therefore, the court held that a forward contract merchant is a person that, in order to make a profit, engages in the forward contract trade as a merchant or with merchants.[39]

ii.     Hummingbird is a Forward Contract Merchant

49.     The PPA contains a provision expressly stating that "[e]ach Party represents and warrants to the other Party that as of the Execution Date ... it is a "forward contract merchant" within the meaning of the United States Bankruptcy Code[.]"[40]  The inclusion of this language in the PPA operates as an acknowledgement on behalf of the parties that both PG&E and Hummingbird operate as merchants in the business of the forward contract trade.

50.     Hummingbird further meets the definition of a forward contract merchant because it entered into the PPA for the purpose of making a profit.  In addition to the Facility, esVolta, through other subsidiaries, operates other lithium ion battery storage facilities. These esVolta subsidiaries are party to several other power purchase and capacity storage agreements with

---

[35]  *In re Mirant Corp.,* 310 B.R. 548, 567 (Bankr. N.D. Tex. 2004).

[36]  *Id.*

[37]  *Id.*

[38]  *Id.*

[39]  *Id.* at 569.

[40]  Energy Storage Resource Adequacy Agreement, Article 14.1(i).

utility companies in California that rely upon esVolta's existing or under development facilities to maintain stability through price hedging. The PPA and esVolta's other power purchase and capacity storage agreements are the company's main source of revenue and are means by which esVolta, Hummingbird and the other subsidiaries attempt to make a profit. esVolta is clearly "in the business" of regularly entering into forward contracts through subsidiaries such as Hummingbird, for profit, with utility companies acting as merchants, who buy, sell, or trade the energy supplied and stored by esVolta's facilities. Therefore, both esVolta and Hummingbird fit squarely within both the statutory definition of a "forward contract merchant" under Section 101(26) and *Mirant's* test that a forward contract merchant engage in the forward contract trade as a merchant or with merchants, in order to generate a profit.

iii.    <u>PG&E is a Forward Contract Merchant</u>

51.    Even if this Court were to conclude that Hummingbird is not a forward contract merchant, Section 101(26) only requires that one party to the contract be so designated[41] and PG&E is indisputably a forward contract merchant. Just as the *Clear Peak* court found SCE to be a forward contract merchant for safe harbor purposes, PG&E is also a utility company that is in the business of entering into forward contracts to hedge against price fluctuations in the energy market, and fits the statutory definition of a forward contract merchant under Section 101(26) and the *Mirant* test.[42]

**d.    <u>The PPA is Entitled to the Safe Harbor Protections of the Bankruptcy Code as a Forward Contract Executed by Forward Contract Merchants</u>**

52.    Because (i) the PPA is a forward contract, and (ii) Hummingbird and PG&E are forward contract merchants, esVolta respectfully requests that the Safe Harbor Motion be granted and the Court enter an order in the form attached hereto that finds the PPA is protected by the safe harbor provisions codified in Sections 362(b)(6) and 556 of the Bankruptcy Code and determine

---

[41] *See Clear Peak,* 488 B.R. at 661 (concluding that because at least one of the parties to the PPA is clearly a Forward Contract Merchant (SCE), the requirement under Section 362(b)(6) had been met and the safe harbor applied).

[42] Furthermore, by hedging against price fluctuations, PG&E is able to minimize the costs of its inputs and thus maximize profits.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

\\NY - 049926/000001 - 9718638 v21

that the automatic stay does not apply to the PPA or to Hummingbird as counterparty to the PPA.

**NOTICE**

Notice of the Safe Harbor Motion will be provided to (i) the Debtors and counsel to the Debtors; (ii) counsel to the Office of the United States Trustee for Region 17; (iii) counsel to the administrative agent under the Debtors' debtor-in-possession financing facility; (iv) counsel to the collateral agent under the Debtors' debtor-in-possession financing facility; (v) counsel to the CPUC; (vi) the U.S. Nuclear Regulatory Commission; (vii) the U.S. Department of Justice, as counsel for the United States on behalf of the Federal Energy Regulatory Commission; (viii) counsel for the Official Committee of Unsecured Creditors, Milbank, LLP, 55 Hudson Yards, New York, NY 10001-2163, Attn: Dennis F. Dunne and Samuel A. Khalil, and, Milbank, LLP, 2029 Century Park East, 33rd Floor, Los Angeles, CA 90067, Attn: Paul S. Aronzon, Gregory A. Bray, Thomas R. Kreller; (ix) proposed counsel for Official Committee of Tort Claimants, Baker & Hostetler, LLP, 11601 Wilshire Blvd., Suite 1400, Los Angeles, CA 90025-0509, Attn: Eric. E. Sagerman and Lauren T. Attard, and Baker & Hostetler, LLP, 1160 Battery Street, Suite 100, San Francisco, CA 94111, Attn: Robert A. Julian, Cecily A. Dumas; and (x) those parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. esVolta respectfully submits that no further notice is required.

**CONCLUSION**

For the foregoing reasons, the Court should issue an order confirming that the PPA is protected by the safe harbor provisions codified in Sections 362(b)(6) and 556 of the Bankruptcy Code and that the automatic stay does not apply to bar esVolta from exercising its rights under the PPA and for such other and further relief as the Court may deem just and appropriate.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

16

\\NY - 049926/000001 - 9718638 v21

Dated: March 20, 2019

HOGAN LOVELLS US LLP

By: */s/ Erin N. Brady*
    Erin N. Brady (CA 215038)
    erin.brady@hoganlovells.com
    1999 Avenue of the Stars, Suite 1400
    Los Angeles, California 90067
    Telephone: (310) 785-4600
    Facsimile: (310) 785-4601

    – and –

    M. Hampton Foushee (*pro hac vice*)
    hampton.foushee@hoganlovells.com
    875 Third Avenue
    New York, New York 10022
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100

    **COUNSEL FOR PARTY IN INTEREST
    ESVOLTA, LP**

Hogan Lovells US
LLP
Attorneys At Law
San Francisco, New York

\\NY - 049926/000001 - 9718638 v21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A**

**Proposed Order**

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

\\NY - 049926/000001 - 9718638 v21

HOGAN LOVELLS US LLP
Erin N. Brady (CA 215038)
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

– and –

M. Hampton Foushee (*pro hac vice*)
hampton.foushee@hoganlovells.com
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

*Counsel for Party in Interest
esVolta, LP.*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Case No.  19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| - and - | (Lead Case)<br>(Jointly Administered) |
| **PACIFIC GAS AND<br>ELECTRIC COMPANY,** | **[PROPOSED] ORDER CONFIRMING<br>SAFE HARBOR PROTECTION UNDER 11<br>U.S.C. §§ 362(b)(6) AND 556** |
| **Debtors.** | |

| | | |
|---|---|---|
| ☐ **Affects PG&E Corporation** | Hearing Date: | **April 10,  2019** |
| ☒ **Affects Pacific Gas and Electric<br>Company** | Time:<br>Courtroom: | **9:30 a.m.**<br>Hon. Dennis Montali<br>450 Golden Gate Avenue<br>16th Floor, Courtroom 17<br>San Francisco, CA 94102 |
| ☐ **Affects both Debtors** | | |
| **\*All papers shall be filed in the Lead<br>Case, No. 19-30088 (DM)** | Objections Due: | **April 3, 2019, 4:00 p.m.** |

Upon the Motion, dated March 20, 2019, of esVolta, LP ("esVolta"), for Entry of an Order Confirming Safe Harbor Protection Under 11 U.S.C. §§ 362(b)(6) and 556 (the "Safe Harbor Motion," Dkt. [___]);

[1]and this Court having jurisdiction to consider the Safe Harbor Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.) and Bankruptcy Local Rule 5011-1(a); and consideration of the Safe Harbor Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Safe Harbor Motion as provided to the parties listed therein is reasonable and sufficient under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Safe Harbor Motion and the Mann Declaration; and this Court having determined that Hummingbird is a forward contract merchant and the PPA is a forward contract, as required under 11 U.S.C. §§ 362(b)(6) and 556 and that the forward contract safe harbor protection applies to except the PPA and Hummingbird as counterparty thereto from the imposition of the automatic stay; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Safe Harbor Motion is granted.

2. Hummingbird is hereby authorized, but not directed, to exercise any of it contractual rights at any time pursuant to, in connection with and in accordance with the PPA and 11 U.S.C. § 556.

3. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**\*\*END OF ORDER\*\***

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Safe Harbor Motion.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO, NEW YORK

\\NY - 049926/000001 - 9718638 v21

1

**EXHIBIT B**

**The PPA**
**[redacted in full]**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hogan Lovells US
LLP
Attorneys At Law
San Francisco, New York

1

\\NY - 049926/000001 - 9718638 v21