WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO

| | |
|---|---|
| **In re:** | Bankruptcy Case |
| | No. 19-30088 (DM) |
| | Chapter 11 |
| **PG&E CORPORATION,** | (Lead Case) |
| - and - | (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** **Debtors.** | **MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 362, AND 363 AND FED. R. BANKR. P. 2002, 4001, AND 6004 FOR AN ORDER (I) AUTHORIZING DEBTORS TO (a) SELL, TRANSFER, LEASE OR OTHERWISE ENCUMBER REAL PROPERTY, (b) ENTER INTO ACQUISITION, LEASE, LICENSE, AND PERMIT AGREEMENTS RELATING TO THIRD-PARTY PROPERTY, AND (c) PURSUE AND BRING EMINENT DOMAIN PROCEEDINGS TO JUDGMENT OR ENTER INTO SETTLEMENTS IN LIEU THEREOF, SUBJECT TO CERTAIN PROCEDURES AND PARAMETERS, AND (II) GRANTING RELATED RELIEF** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | |
| ☒ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: April 10, 2019 |
| | Time: 1:30 p.m. (Pacific Time) |
| | Place: United States Bankruptcy Court |
| | Courtroom 17, 16th Floor |
| | San Francisco, CA 94102 |
| | Objection Deadline: April 3, 2019 at 4:00 p.m. (Pacific) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 105(a), 362, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for an order (I) authorizing the Debtors to (a) sell, transfer, lease, encumber or otherwise deal with real property interests, including without limitation, fee interests, leasehold interests, temporary and permanent easements, utility relocation agreements, conservation easements, land use restrictions, temporary and permanent licenses, and agreements or options to transfer or acquire the same (collectively, "**Real Property Interests**") held by the Debtors, (b) enter into agreements to acquire or otherwise deal with Real Property Interests, (c) pursue and bring eminent domain proceedings to judgment or enter into settlements in lieu thereof, (d) implement procedures for the review and approval of such transactions, each subject to certain parameters and (II) granting other related relief. In support of this Motion, the Debtors submit the *Declaration of Andrew Williams In Support of Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 362, and 363 and Fed. R. Bankr. P. 2002, 4001, and 6004 for an Order (I) Authorizing Debtors to (a) Sell, Transfer, Lease, or Otherwise Encumber Real Property, (b) Enter Into Acquisition, Lease, License, and Permit Agreements Relating to Third-Party Property, and (c) Pursue and Bring Eminent Domain Proceedings to Judgment or Enter Into Settlements In Lieu Thereof, Subject to Certain Procedures and Parameters, and (II) Granting Related Relief* (the "**Williams Declaration**") filed contemporaneously herewith.

A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

Case: 19-30088    Doc# 1004    Filed: 03/20/19    Entered: 03/20/19 19:28:57    Page 2 of 23

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF CONTENTS

I.      JURISDICTION ................................................................................. 1

II.     BACKGROUND ................................................................................. 1

III.    PRELIMINARY STATEMENT ....................................................... 2

IV.     SALE OF REAL PROPERTY INTERESTS ..................................... 3

        A.      Surplus Property Sales ......................................................... 3

        B.      Grant of Easements .............................................................. 4

        C.      Stipulations in Eminent Domain Cases Where PG&E Is Named as a
                Defendant ............................................................................. 4

V.      LEASES, LICENSES, AND PERMITS FOR USE OF PG&E PROPERTY ..................... 5

VI.     ACQUISITION, LEASE, LICENSE, AND PERMIT AGREEMENTS
        RELATING TO THIRD-PARTY PROPERTY ................................ 5

        A.      Land Rights Acquisitions ..................................................... 5

        B.      Leases, Licenses, and Permits .............................................. 6

        C.      Eminent Domain Acquisitions .............................................. 6

VII.    PROPOSED PROCEDURES FOR REVIEW AND APPROVAL OF REAL
        PROPERTY INTEREST TRANSACTIONS BETWEEN PG&E AND THIRD
        PARTIES ............................................................................................ 7

VIII.   EFFECT OF THE AUTHORIZATION SOUGHT BY THIS MOTION ON LIEN
        OR CO-OWNERSHIP INTERESTS ............................................... 9

IX.     RELIEF REQUESTED ....................................................................... 9

        A.      The Relief Requested Herein Is Appropriate Under Sections 363 and
                105(a) of the Bankruptcy Code ........................................... 10

        B.      To the Extent Applicable, the Procedures Satisfy Section 363(b) of the
                Bankruptcy Code and Bankruptcy Rule 2002 ..................... 14

        C.      Cause Exists to Lift the Automatic Stay With Respect to Certain Eminent
                Domain Proceedings ............................................................ 16

        D.      Request for Bankruptcy Rule 4001(a) and 6004(h) Waivers .................. 17

X.      NOTICE ............................................................................... **Error! Bookmark not defined.**

*Weil, Gotshal & Manges LLP*
*767 Fifth Avenue*
*New York, NY 10153-0119*

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aalfs v. Wirum (In re Straightline Invs., Inc.)*,
   525 F.3d 870 (9th Cir. 2008) ...................................................................11

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*,
   912 F.2d 1162 (9th Cir. 1990) ...................................................................16

*In re Commercial Mortg. & Fin. Co.*,
   414 B.R. 389 (Bankr. N.D. Ill. 2009) .......................................................11

*In re First Prot., Inc.*,
   440 B.R. 821 (B.A.P. 9th Cir. 2010)..........................................................10

*United States ex rel. Harrison v. Estate of Deutscher*,
   115 B.R. 592 (M.D. Tenn. 1990) ...............................................................12

*In re Johns-Manville Corp.*,
   60 B.R. 612 (Bankr. S.D.N.Y. 1986) .........................................................12

*Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.)*,
   184 B.R. 74 (B.A.P. 9th Cir. 1995)............................................................12

*Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*,
   186 B.R. 414 (N.D. Ill. 1995) ....................................................................12

*Mataya v. Kissinger (In re Kissinger)*,
   72 F.3d 107 (9th Cir. 1995) ........................................................................16

*Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*,
   114 F.3d 379 (2d Cir. 1997).......................................................................11

*Meoli v. Am. Med. Serv. of San Diego*,
   287 B.R. 808 (S.D. Cal. 2003)...................................................................10

*Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*,
   467 B.R. 694 (S.D.N.Y. 2012)...................................................................15

*In re Nellson Nutraceutical, Inc.*,
   369 B.R. 787 (Bankr. D. Del. 2007) ..........................................................11

*In re Roth Am., Inc.*,
   975 F.2d 949 (3d Cir. 1992)..................................................................10, 11

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Tucker v. Sambo's Rests., Inc. (In re Sambo's Rests., Inc.)*,
    38 B.R. 764 (B.A.P. 9th Cir. 1984)...................................................................................16

**Statutes**

11 U.S.C. § 102.............................................................................................................15, 16

11 U.S.C. § 105.................................................................................................................9, 14

11 U.S.C. § 362.................................................................................................................9, 16

11 U.S.C. § 363........................................................................................................... *passim*

11 U.S.C. § 1107...............................................................................................................1, 10

11 U.S.C. § 1108...............................................................................................................1, 10

28 U.S.C. § 157........................................................................................................................1

28 U.S.C. § 1334......................................................................................................................1

28 U.S.C. § 1408......................................................................................................................1

28 U.S.C. § 1409......................................................................................................................1

**Other Authorities**

B.L.R. 5011-1(a).....................................................................................................................1

Fed. R. Bankr. P. 1015............................................................................................................1

Fed. R. Bankr. P. 2002.............................................................................................9, 14, 15, 18

Fed. R. Bankr. P. 4001................................................................................................9, 17, 18

Fed. R. Bankr. P. 6004................................................................................................9, 17, 18

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*,
    General Order 24 (N.D. Cal.).........................................................................................1

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    JURISDICTION

3

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the

4

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24

5

(N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court

6

for the Northern District of California (the "**Bankruptcy Local Rules**").  This is a core proceeding

7

pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408

8

and 1409.

9

### II.    BACKGROUND

10

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court

11

voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their

12

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

13

1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in either of the Chapter 11

14

Cases.  The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only

15

pursuant to Bankruptcy Rule 1015(b).

16

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official

17

Committee of Unsecured Creditors (the "**Creditors Committee**").  On February 13, 2019, the U.S.

18

Trustee appointed an Official Committee of Tort Claimants (the "**Torts Claimants Committee**" and

19

together with the Creditors Committee, the "**Committees**").

20

Additional information regarding the circumstances leading to the commencement of the

21

Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth

22

in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief*

23

[Docket No. 263] (the "**Wells Declaration**").

24

25

26

27

28

## III. PRELIMINARY STATEMENT

In the ordinary course of its business operations, PG&E routinely enters into various transactions involving real property, including, among others, selling or purchasing property, leasing and licensing properties to and from third parties, selling surplus property with little or no useful value to PG&E, and pursuing and settling eminent domain actions. Many of these transactions are integral to PG&E's ability to deliver utility services to its customers and some are ancillary to PG&E's utility business and provide additional sources of revenue for PG&E. In entering into these transactions, the Debtors carefully exercise their business judgment by tailoring the terms of such transactions to the current needs of the business.

Based on PG&E's experience over the last several years, PG&E estimates that on an annual basis, in the ordinary course of business, it typically receives less than $6.5 million in gross revenue from the transfer of Real Property Interests and typically expends less than $13.3 million on the acquisition of Real Property Interests (exclusive of office leases).

By this Motion, PG&E seeks an order of the Court authorizing PG&E to continue past business practices by allowing it to engage in certain commercial transactions that PG&E deems, in its business judgment, necessary to the day to day operation of its business. Specifically, the Debtors seek authority to (a) sell, transfer, lease, encumber or otherwise deal with Real Property Interests, (b) enter into agreements to acquire or otherwise deal with Real Property Interests, (c) pursue and bring eminent domain proceedings to judgment or enter into settlements in lieu thereof, and (d) implement procedures for the review and approval by the Committees and the Court of such transactions. Furthermore, PG&E requests that any currently pending transactions, settlements, or eminent domain proceedings involving Real Property Interests be subject to the same criteria and review procedures as new transactions. In addition, as discussed more fully in Part VIII

below, PG&E does not by this Motion seek to circumscribe or affect any specific protections afforded any lienholder, co-interest owner or the like under section 363 of the Bankruptcy Code.

The authority sought by this Motion will benefit the Debtors' estates by allowing PG&E to continue its ordinary business practices for handling Real Property Interests. Additionally, the authority sought by this Motion will facilitate PG&E's ability to access third-party property necessary for the safe and reliable delivery of services to PG&E customers. Subject to the procedures and parameters set forth herein, PG&E will be able to enter into routine real property transactions without unnecessarily burdening this Court or incurring the costs and expenses attendant to individual requests for approval of each of these transactions, most of which are routine, ordinary course transactions.

## IV. SALE OF REAL PROPERTY INTERESTS

The Debtors seek authority to sell, transfer, lease, encumber and otherwise deal with Real Property Interests as business circumstances and their needs may require, as more fully set forth below.

### A. Surplus Property Sales

Each year, PG&E sells utility owned property it identifies as surplus property that is not necessary or useful for utility purposes. Most of these properties are vacant lands on which PG&E facilities have been decommissioned. The sale of surplus property allows PG&E to avoid the carrying costs associated with maintaining land and buildings that PG&E no longer needs to own, including property taxes, maintenance costs, insurance payments, and other liabilities related to the respective properties. The surplus property is typically conveyed in fee, and in some cases the property is conveyed subject to PG&E reserving an easement to allow continued use of some portion of the property. For example, PG&E may determine that it is no longer necessary to retain a fee interest in a particular parcel of land, but the parcel may contain underground gas lines that remain in

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

public service and for which PG&E must retain a land right to operate and maintain for utility purposes. In such instances, PG&E will convey the fee interest in the property and reserve an easement for the underground gas line. Because PG&E retains the necessary land rights, utility operations are not affected by the sale of surplus property. PG&E's average annual revenue received from its surplus properties sales activities for the three-year period between 2016 and 2018 was approximately $4 million per year.

## B. Grant of Easements

The grant of easements is similar to the sale of surplus properties discussed above; however, such arrangements do not involve the transfer of PG&E's fee interest in the property. PG&E conveys easements to third parties for a variety of purposes, including for general ingress and egress to adjoining parcels, the development of roads, and for public or private utility facilities, such as communication, water, and sewer line infrastructure. In some instances, the conveyances are made because the purchasing party's use of the easement will facilitate or otherwise benefit some aspect of PG&E's business operations, sometimes they are made because there are legal issues surrounding the purchaser's right to an easement under eminent domain or real property law doctrines, and sometimes they are made simply because the easement to be granted does not interfere with PG&E's use of property. PG&E estimates that in 2018, it generated gross revenue of less than $8,500 from the grant of easements.

## C. Stipulations in Eminent Domain Cases Where PG&E Is Named as a Defendant

On occasion, PG&E is named as a defendant in eminent domain actions commenced by governmental entities. These condemnation actions are the result of government projects on parcels of land that are either owned in fee by PG&E or contain easements owned by PG&E. For parcels of land that are not owned in fee by PG&E, PG&E typically ensures that no PG&E facilities or

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

easements will be affected as a result of the contemplated condemnation. For condemnation of a parcel of land owned by PG&E in fee, PG&E typically files a stipulated judgment agreeing to accept just compensation (generally, fair market value based on appraisal) for the property that is being condemned. On average, less than five (5) properties owned by PG&E in fee involving consideration of less than $500,000 in the aggregate are condemned annually.

## V. LEASES, LICENSES, AND PERMITS FOR USE OF PG&E PROPERTY

PG&E enters into lease agreements and license agreements, and issues permits, for use by third parties of PG&E-owned land and other property when the intended use is a compatible secondary use of the property which does not interfere with utility operations. This activity may be required due to regulatory requirements, generates revenue, and helps to reduce the maintenance costs associated with such properties. PG&E is the lessor, licensor, or permittor under approximately 1,800 agreements, including agriculture and grazing agreements, parking and storage agreements, day-use training permits, commercial agreements, and recreation agreements. In 2018, PG&E received less than $3 million in revenues from its leasing, licensing, and permitting activities.

## VI. ACQUISITION, LEASE, LICENSE, AND PERMIT AGREEMENTS RELATING TO THIRD-PARTY PROPERTY

### A. Land Rights Acquisitions

PG&E has a group of land acquisition agents that support the electric and gas businesses by acquiring the land rights necessary for these facilities. The land acquisition agents negotiate and acquire land rights in the form of both easements and fee title, depending on the business need. In circumstances where only temporary rights are required—often in connection with construction of new facilities or re-construction of existing facilities—the land rights take the form of a temporary construction easement or license. In 2018, PG&E acquired approximately 500 temporary land rights for approximately $2.5 million and 240 permanent land rights for approximately $4.5 million.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**B.     Leases, Licenses, and Permits**

In addition to land rights acquisitions, the operation of PG&E's utility business requires that PG&E enter into agreements for the use of property owned by third parties, including both government and private land.  In the ordinary course of its business, PG&E regularly enters into lease and license agreements for the use of land and buildings owned by third parties to support the utility business and provide adequate gas and electric service to PG&E customers.  The leases and licenses generally fit within one of the following four categories: office, utility, telecommunications, or parking and storage.  In 2018, PG&E entered into approximately 350 lease and license agreements for electric and gas facilities on lands of governmental agencies (such as the California State Lands Commission) and made approximately $3.1 million in payments on account of such agreements.    In 2018, PG&E entered into approximately 250 agreements for electric and gas facilities on private property and made approximately $3.8 million in payments on account of such agreements.

PG&E is also currently the lessee pursuant to over 100 leases for, among other things, offices, warehouses, parking and storage yards, and data centers.  In the ordinary course, leases for these properties expire at various times throughout the year.  PG&E evaluates the disposition of these leases individually as notices are required to be made and/or the leases come due.  Annually, the rental obligation associated with the portfolio of these leased properties is approximately $45 million, and the square footage of properties ranges from 200 square feet to approximately 250,000 square feet.

**C.     Eminent Domain Acquisitions**

In certain circumstances where PG&E is unable to reach an agreement for the acquisition of land rights, PG&E is permitted to commence an eminent domain action to condemn property that is required for the provision of its utility service.  These actions either result in a court ruling or

settlement with the third-party property owner that requires PG&E to provide just compensation for the property being condemned. On average, PG&E acquires fewer than fifty (50) properties per year through eminent domain proceedings.[1]

## VII. PROPOSED PROCEDURES FOR REVIEW AND APPROVAL OF REAL PROPERTY INTEREST TRANSACTIONS BETWEEN PG&E AND THIRD PARTIES

Although PG&E's transactions described above with respect to Real Property Interests involve transactions in the ordinary course of its business, PG&E recognizes that unusually large transactions which involve substantial dollars in the context of these cases may warrant additional scrutiny. PG&E proposes to address this by adopting a procedure for determining when transactions involving Real Property Interests must be reviewed by the Committees and when such transactions must be approved by the Court.

PG&E proposes to submit to the advisors for each of the Committees for review the following Real Property Interest transactions described above:

- Any transaction involving an individual Real Property Interest where the consideration in question is between $5 million and $10 million;

- Any sale of an individual Real Property Interest pursuant to the exercise of an eminent domain action or settlement in lieu thereof, and any stipulation to lift the automatic stay to allow the applicable condemning authority to pursue any such eminent domain proceeding, where the consideration in question is between $1 million and $5 million;

- Any lease or license of a Real Property Interest by PG&E where the initial annual rental obligation or license fee is between $500,000 and $1 million (with the annual rental obligation or license fee in subsequent years subject to commercially reasonable escalations);

- Any acquisition of a Real Property Interest by PG&E's exercise of eminent domain or a settlement in lieu thereof where the consideration in question is between $2 million and $5 million; and

---

[1] In 2018, PG&E settled all actions where PG&E was seeking to acquire land by way of eminent domain and all amounts paid on account of such settlements are included in the $4.5 million amount set forth in section VI.A above.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- Any of the foregoing transactions that is pending at the time an order on this Motion is granted will be subject to this Motion and will be subject to the same review and approval procedure described herein as if such transaction were proposed to be entered into after an order on this Motion is granted.

Under the proposed procedure, the Committees would have five (5) business days to review transactions submitted by PG&E. If the Committees do not object to the transaction within such period, no court order would be required for PG&E to enter into or consummate the transaction and any third-party may rely on the representations of the Debtors that these procedures have been complied with and that no objections have been received. If, on the other hand, a Committee objects to the transaction within such 5-day period, the transaction may not be pursued absent an order of the Court or the resolution or withdrawal of the Committee's objection. A motion to consider the same may be heard on an expedited basis, and must be served on the Committees and the U.S. Trustee on no less than ten (10) days' notice.

Review and non-objection by the Committees would not be sufficient, and Court approval would be required, for the following transactions:

- Any sale or other transaction involving an individual Real Property Interest where the consideration in question exceeds $10 million;

- Any sale of an individual Real Property Interest pursuant to the exercise of an eminent domain action or settlement in lieu thereof, and any stipulation to lift the automatic stay to allow the applicable condemning authority to pursue any such eminent domain proceeding, where the consideration in question exceeds $5 million;

- Any lease or license of a Real Property Interest by PG&E where the initial annual rental obligation or license fee exceeds $1 million (with annual rental obligation or license fee in subsequent years subject to commercially reasonable escalations); and

- Any acquisition of a Real Property Interest by PG&E's exercise of eminent domain or a settlement in lieu thereof where the consideration in question exceeds $5 million.

Court approval would be sought on an expedited basis by a motion noticed and served upon the Committees and the U.S. Trustee no less than ten (10) days prior to the scheduled hearing on the motion.

Finally, based on the foregoing thresholds for triggering review by the Committees or Court approval, PG&E would be permitted to enter into or consummate the following ordinary course transactions without review or approval by the Committees or the Court:

- Any transaction involving an individual Real Property Interest where the consideration in question is below $5 million;

- Any sale of an individual Real Property Interest pursuant to the exercise of an eminent domain action or settlement in lieu thereof, and any stipulation to lift the automatic stay to allow the applicable condemning authority to pursue any such eminent domain proceeding, where the consideration in question is below $1 million;

- Any lease or license of a Real Property Interest by PG&E where the initial annual rental obligation or license fee is below $500,000 (with the annual rental obligation or license fee in subsequent years subject to commercially reasonable escalations); and

- Any acquisition of a Real Property Interest by PG&E's exercise of eminent domain or a settlement in lieu thereof where the consideration in question is below $2 million.

## VIII. EFFECT OF THE AUTHORIZATION SOUGHT BY THIS MOTION ON LIEN OR CO-OWNERSHIP INTERESTS

This Motion does not seek to circumscribe or affect any specific protections afforded any lienholder, co-interest owner, or similarly situated party that may be applicable under section 363 with respect to any specific property PG&E might seek to sell or transfer. Accordingly, with respect to any transaction addressed by this Motion, if there were a lien on such property and PG&E sought to sell the property free and clear of the lien, section 363(f) and any relevant Federal or local Bankruptcy Rule would remain fully applicable, and PG&E would be required to comply therewith.

## IX. RELIEF REQUESTED

By this Motion, pursuant to sections 105(a), 362, and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 6004, the Debtors seek entry of an order authorizing the Debtors

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

to (a) sell, transfer, lease, encumber or otherwise deal with Real Property Interests held by the Debtors, (b) enter into agreements to acquire or otherwise deal with Real Property Interests, (c) pursue and bring eminent domain proceedings to judgments or enter into settlements in lieu thereof, (d) implement procedures for the review and approval of such transactions as described, and (e) obtain other related relief.

## A. The Relief Requested Herein Is Appropriate Under Sections 363 and 105(a) of the Bankruptcy Code

As demonstrated above and in the supporting Williams Declaration, the Debtors seek authority to pursue transactions that typically arise, are entered into, and are consummated in the ordinary course of PG&E's business, without requiring further orders from the Court.

Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of this section is to provide a debtor with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the Court. *Meoli v. Am. Med. Serv. of San Diego*, 287 B.R. 808, 817 n.3 (S.D. Cal. 2003) (stating that 363(c)(1) is designed to provide "wide-ranging management authority over the debtor"); *see also In re First Prot., Inc.*, 440 B.R. 821, 832–33 (B.A.P. 9th Cir. 2010) (a debtor may "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and to use property of the estate in the ordinary course of business without notice or a hearing" when the debtor's business is being operated under sections 1107 and 1108 of the Bankruptcy Code); *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted). Included within the purview of section 363(c) of the Bankruptcy Code

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

is a debtor's ability to continue "routine transactions." *See In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's "making of routine, day-to-day business decisions") (citations omitted).

The Bankruptcy Code does not define "ordinary course of business." *In re Commercial Mortg. & Fin. Co.*, 414 B.R. 389, 393 (Bankr. N.D. Ill. 2009). "Two tests have emerged for determining whether a transaction is within the ordinary course of business for purposes of § 363(c) – the vertical dimension, or creditor's expectation, test, and the horizontal dimension test. If both tests are satisfied, the court must conclude that the challenged transaction occurred in the debtor's ordinary course of business." *Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 879 (9th Cir. 2008). "The vertical dimension, or creditor's expectation test, views the disputed transaction from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit." *Id.* (internal quotations and citations omitted). "Under the horizontal dimension test, the question is whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." *Id.* at 880–81 (internal quotations and citations omitted).

Under both the horizontal test and the vertical test, PG&E's Real Property Interest transactions discussed above are in the ordinary course of PG&E's businesses. *See Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (finding that "ordinary course of business" is meant "to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business.") (quoting *Watford v. S. Cent. Farm Credit, ACA (In re Watford)*, 159 B.R. 597, 599 (M.D. Ga. 1993)); *In re Roth Am., Inc.*, 975 F.2d at 952 (stating that section 363 of the Bankruptcy Code is designed to allow a debtor in possession "flexibility to engage in ordinary transactions

without unnecessary . . . oversight"). Under the horizontal test, transactions involving the acquisition and disposition of Real Property Interests are typical among utilities and critical to ensure that a utility can provide services to its customers. Utilities routinely enter into Real Property Interest transactions similar to those covered by the procedures proposed herein.

Under the vertical test, creditors' reasonable expectations of a debtor's "ordinary course of business" are based on the "debtor's specific pre-petition business practices and norms and the expectation that the debtor will conform to those practices and norms while operating as a debtor-in-possession." *Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 425 (N.D. Ill. 1995). Thus, a fundamental characteristic of an "ordinary" postpetition business transaction is its similarity to a prepetition business practice. *Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.)*, 184 B.R. 74, 79 (B.A.P. 9th Cir. 1995). The size, nature and type of business, and the size and nature of the transactions in question, are all relevant to determining whether the transactions at issue are ordinary. *United States ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592, 598 (M.D. Tenn. 1990); *In re Johns-Manville Corp.*, 60 B.R. 612, 617 (Bankr. S.D.N.Y. 1986). "Accordingly, a post-petition transaction undertaken by the debtor that is similar in size and nature to pre-petition transactions undertaken by the debtor would be within the ordinary course of business." *Garofalo's*, 186 B.R. at 426. As set forth above, PG&E has regularly and routinely entered into Real Property Interest transactions in connection with its daily operations.

Accordingly, the Debtors believe the transactions addressed in this Motion are ordinary course and authorized pursuant to section 363(c) of the Bankruptcy Code. The Debtors, however, propose the streamlined procedures for the review and approval of certain pending and future transactions to establish a clear protocol by which they, the Committees, and this

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Court can make determinations regarding whether to move forward with such transactions absent an order of the Court.

Moreover, in areas where subjective judgments are required on a case-by-case basis to determine what may be in the "ordinary course of business," PG&E should not have to guess as to what the Committees might later question or find objectionable and what the Court may authorize. Thus, without the reasonable parameters and authorization sought by this Motion, substantially more judicial and Committee resources likely would have to be devoted to a large volume of routine transactions for the Debtors to ensure that any transactions they enter into will not be challenged after the fact and to give comfort to the counterparties to the transactions.

Additionally, it is widely known that many non-debtor counterparties to certain sale, lease, and license transactions will insist on a Court order approving a proposed transaction with a debtor in possession as a condition to such transaction becoming effective, even if such transaction is in the ordinary course of the debtor's business and does not require any approval or notice and hearing pursuant to section 363(c). Simply stated, counterparties in certain purchase, sale, and lease transactions, and, perhaps even more importantly, title companies in purchase and sale transactions, do not want to guess about what is in the ordinary course of a debtor's business, and often insist on "comfort" orders as a condition of closing a transaction with a debtor in possession.

Although PG&E cannot ensure that all counterparties and title companies will be willing to rely on an order granting this Motion and will not demand any further order as a condition of consummating its particular transaction, PG&E believes that an order on this Motion will satisfy most counterparties and title companies, thus greatly minimizing the need to seek individual "comfort" orders from the Court, which would be a costly and time-consuming endeavor. For those transactions covered by this Motion that are under the dollar threshold triggering Committee review,

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

the counterparty (and, if one is involved, the title company) will be able to confirm objectively that the transaction is covered by the procedures set forth herein. For those transactions covered by this Motion that are over the dollar threshold triggering Committee review but under the dollar threshold requiring Court approval, PG&E anticipates that the counterparty (and, if one is involved, the title company) will accept a certificate from PG&E and/or the Committees stating that the transaction has been reviewed by the Committees under the procedure specified herein and that the Committees have not objected to the transaction, and therefore the transaction is authorized pursuant to the order granting the relief requested herein.

The Court has authority under sections 363(c) and 105(a) of the Bankruptcy Code to grant this Motion. Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." For the reasons discussed herein, the authorizations sought by this Motion plainly will facilitate the efficient and economical administration of the Debtors' estates for the benefit of all parties in interest. Accordingly, pursuant to this Court's authority and discretion under section 105(a), the Court should authorize PG&E to continue its past practices and freely enter into these Real Property Interest transactions, subject to the procedures and parameters set forth above.

### B. To the Extent Applicable, the Procedures Satisfy Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 2002

As stated above, the Debtors believe that all of the transactions covered by the procedures set forth herein are ordinary course and subject only to section 363(c) of the Bankruptcy Code. If, however, a particular transaction covered by the procedures is considered to be outside of the ordinary course of business and section 363(b) of the Bankruptcy Code is applicable, the Debtors submit that the shortened notice and hearing requirements set forth in the procedures are adequate

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

and comply with the Bankruptcy Code and Bankruptcy Rules, and sufficient cause exists to shorten the notice requirements.

The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if, in light of the particular circumstances of a proposed transaction, appropriate notice and an opportunity for a hearing are given. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances"). Courts have noted that "the notice requirements of bankruptcy law are 'founded in fundamental notions of procedural due process.'" *Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*, 467 B.R. 694, 706 (S.D.N.Y. 2012) (quoting *In re Savage Indus., Inc.*, 43 F.3d 714, 721 (1st Cir. 1994)). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 706–07 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty-one (21) days' notice of the proposed sale of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees," and the Committee unless a debtor shows "cause." *See* Fed. R. Bankr. P. 2002(a)(2), (i). Once the debtor shows "cause," however, Bankruptcy Rule 2002(a)(2) authorizes this Court to shorten the generally applicable twenty-one-day notice period and to direct a method of notice other than mail. *See* Fed. R. Bankr. P. 2002(a)(2). Moreover, this Court is authorized to limit, even without a prior showing of cause, notice of asset sales outside the ordinary course of a debtor's business to certain official committees. *See* Fed. R. Bankr. P. 2002(i).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Moreover, the sale or transfer of property outside the ordinary course of business may be authorized without an actual hearing if no party in interest timely requests such a hearing. *See* 11 U.S.C. § 102(1)(B)(i) (authorizing "an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest," notwithstanding the statutory requirement for "notice and a hearing").

In the event that a transaction may be outside the ordinary course, the proposed procedures comply with the hearing requirements of the Bankruptcy Code, as well as due process, by providing the Committees with an opportunity to present objections as to each transaction valued above a certain threshold and to request a hearing. Based on the foregoing, the Debtors submit that sufficient cause exists to implement the proposed procedures and that such procedures will facilitate an efficient use of the Debtors' resources in dealing with Real Property Interests.

## C. Cause Exists to Lift the Automatic Stay With Respect to Certain Eminent Domain Proceedings

As set forth above, the Debtors' proposed procedures provide that stipulations to lift the automatic stay with respect to certain eminent domain proceedings shall not require any further order by the Court. The Debtors submit that, to the extent that the automatic stay is applicable to these actions, cause exists under section 362(d)(1) of the Bankruptcy Code to lift the stay.

Pursuant to section 362(d)(1) of the Bankruptcy Code, courts shall grant relief from the automatic stay for "cause." 11 U.S.C. § 362(d)(1). "Such relief may include 'terminating, annulling, modifying, or conditioning such stay.'" *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108–09 (9th Cir. 1995) (quoting 11 U.S.C. § 362(d)). Whether "cause" exists is determined on a case-by-case basis, *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citation omitted), and is left to the discretion of the judge. *Tucker v. Sambo's Rests., Inc. (In re Sambo's Rests., Inc.)*, 38 B.R. 764, 765 (B.A.P. 9th Cir. 1984) (citation omitted).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Cause exists to lift the automatic stay in the limited circumstances where PG&E is a defendant in an eminent domain proceeding and PG&E has stipulated with the counterparty to lift the stay to allow the action to proceed. PG&E has an interest in cooperating with governmental authorities and resolving these ordinary course actions in the most expeditious and economical manner, which PG&E believes is best accomplished by allowing these actions to proceed without further order from the Court. Moreover, in instances where the Debtors agree with the governmental authorities that an eminent domain action should proceed, the Debtors' estates will not suffer harm as the Debtors will receive just compensation for any property that is subject to condemnation. Allowing the parties in such situations to proceed without a Court order saves the Debtors time and money, which inures to the benefit of the estates. Accordingly, the Debtors believe that cause exists for the limited purpose of lifting the stay to allow ordinary course eminent domain proceedings to proceed to resolution only if PG&E stipulates to lift the stay.

### D. Request for Bankruptcy Rule 4001(a) and 6004(h) Waivers

To ensure the uninterrupted operation of their businesses, the Debtors need clarity and authorization to move forward with their ordinary course Real Property Interest transactions, some of which have been pending since the Petition Date. Thus, the Debtors request a waiver of the 14-day stay (to the extent such stay applies) of an order authorizing the use, sale, or lease of property outside the ordinary course of business under Bankruptcy Rule 6004(h). The Debtors also request a waiver of the 14-day stay (to the extent such stay applies) to any stipulations to lift the automatic stay with respect to certain eminent domain transactions under Bankruptcy Rule 4001(a)(3). Accordingly, the Debtors request the Court find that ample cause exists to grant a waiver of Bankruptcy Rules 4001(a)(3) and 6004(h) and waive the stay to the extent it applies.

**X.     NOTICE**

Notice of this Motion will be provided to (i) the U.S. Trustee (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002.  Based on the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required and the requirements of Bankruptcy Rules 4001(d) and 6004(a) have been satisfied.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated:  March 20, 2019
      San Francisco, California

                  **WEIL, GOTSHAL & MANGES LLP**

                  **KELLER & BENVENUTTI LLP**

                  By:  _/s/ *Jane Kim*_
                      Jane Kim

                  *Proposed Attorneys for Debtors*
                  *and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119