| | |
|---|---|
| CRAVATH, SWAINE & MOORE LLP<br>Paul H. Zumbro (*pro hac vice*)<br>(pzumbro@cravath.com)<br>Kevin J. Orsini (*pro hac vice*)<br>(korsini@cravath.com)<br>Omid H. Nasab (*pro hac vice*)<br>(onasab@cravath.com)<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212 474 1000<br>Fax: 212 474 3700 | KELLER & BENVENUTTI LLP<br>Tobias S. Keller (#151445)<br>(tkeller@kellerbenvenutti.com)<br>Jane Kim (#298192)<br>(jkim@kellerbenvenutti.com)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Tel: 415 496 6723<br>Fax: 650 636 9251 |

*Proposed Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>   - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19 - 30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**DECLARATION OF PAUL H. ZUMBRO IN SUPPORT OF APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY CRAVATH, SWAINE & MOORE LLP AS CORPORATE AND LITIGATION COUNSEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**<br><br>Date:   April 23, 2019<br>Time:  9:30 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, CA 94102<br><br>**Objection Deadline**:  April 16, 2019<br>                                    4:00 p.m. (Pacific Time) |

Pursuant to 28 U.S.C. § 1746, I, Paul H. Zumbro, hereby declare under penalty of perjury as follows:

I am a partner of the law firm of Cravath, Swaine & Moore LLP ("**Cravath**"), a New York law firm with offices at 825 Eighth Avenue, New York, New York 10019. I am admitted to practice in the State of New York and am also admitted to practice before this Court *pro hac vice*. (*See* Docket No. 122.)

I submit this Declaration in connection with the Application submitted on the date hereof (the "**Application**")[1] of PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"), for authority to employ and retain Cravath as corporate and litigation counsel, effective as of January 29, 2019 (the "**Petition Date**"), at its standard hourly rate and in accordance with its standard reimbursement policies, in compliance with section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and to provide the disclosure required under Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Bankruptcy Local Rules for the U.S. District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon Cravath's completion of further review, or as additional information regarding parties in interest becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented or otherwise modified information.

Neither I, Cravath, nor any partner or associate of the Firm represents any entity other than the Debtors in connection with the Chapter 11 Cases. In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Cravath, nor any partner or associate of the Firm represents any party in interest in the Chapter 11 Cases in matters related to the Chapter 11 Cases.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

# I. CRAVATH'S CONFLICT DISCLOSURE PROCEDURES

Cravath maintains and systematically updates its computerized conflict check system (the "**Conflict Database**") in the regular course of its business, and it is the regular practice of Cravath to enter and maintain these records. The Conflict Database maintained by Cravath includes (i) the clients by which the Firm is now or has been engaged since 1990, (ii) every active representation on which Cravath is engaged, (iii) every closed matter on which Cravath has been engaged since 1990, (iv) the identity of adverse parties in such representations, (v) the identity of any other parties involved in representations (including affiliates to the extent identifiable) and (vi) the partner(s) at Cravath responsible for each respective matter. Within the Conflict Database, Cravath also maintains confidential lists of possible future business to help identify potential conflict issues that might not be revealed by a review of past and current engagements.

It is the policy of Cravath that all requests to engage in new representations must be submitted for approval through the Firm's conflict-of-interest screening process, which begins with a search of the Conflict Database using all relevant entity information connected with the new representation request. Such information includes, but is not limited to: (i) the entity or entities to be represented, (ii) all entities to be otherwise involved in the proposed representation and (iii) the particular matters on which Cravath will be providing representation. The requesting partner or partners then review the results of the conflict check with assistance from the Firm's Office of the General Counsel to determine if there is an actual, possible or potential conflict of interest, and, if so, whether there is a full bar to representation or whether the representation may be undertaken with certain implemented procedures. All proposed representations of entities not previously represented by Cravath and other representations that may present considerable risk to Cravath are reviewed by appropriate department heads, Cravath's Office of the General Counsel and, in sensitive cases, Cravath's presiding partner. A record of this process, without regard to whether the proposed representation is approved, is entered and maintained in the Firm's central repository of conflicts of interest data.

## II. CRAVATH'S CONFLICT CHECKING PROCESS IN THESE CHAPTER 11 CASES

Cravath received a comprehensive list of the types of entities that may have contacts with the Debtors (the "**Retention Checklist**"), as well as a list of the names of entities that may be parties in interest in the Chapter 11 Cases (collectively the "**Potential Parties in Interest**" and each a "**Potential Party in Interest**"), both of which were developed by Weil, Gotshal & Manges LLP ("**Weil**") in consultation with the Debtors. The Retention Checklist is attached hereto as **Exhibit A**. In preparing this Declaration, I performed, or caused to be performed, the following actions:

a. Cravath staff compared the list of Potential Parties in Interest to client matters in the Conflict Database for which professional time was recorded during the two years prior to the comparison. Any matches to names in the Conflict Database generated by the comparison were compiled, together with the names of the respective Cravath attorneys responsible for the identified client matters (the "**Master Conflicts List**").

b. One or more Cravath attorneys then reviewed the Master Conflicts List and deleted obvious name coincidences and individuals or entities that were adverse to Cravath's clients in both this matter and the matter referenced on the Master Conflicts List. This information was used to create a list of Potential Parties in Interest that are current or former Cravath clients, attached hereto as **Exhibit B** (the "**Disclosure List**"). An entity is listed as a "Current Client" on the Disclosure List if Cravath has any open matters for such entity or a known subsidiary or affiliate of such entity and attorney time charges have been recorded on any such matters within the past two years. An entity is listed as a "Former Client" on the Disclosure List if Cravath represented such entity or a known subsidiary or affiliate of such entity within the past two years based on recorded attorney time charges on a matter, but all matters for such entity or any known subsidiary or affiliate of such entity have been formally closed.

c. Using information in the Conflict Database concerning entities on the Disclosure List and making general and, if applicable, specific inquires of Cravath attorneys, Cravath verified that it does not represent and has not represented any entity on the Disclosure List in connection with the Chapter 11 Cases.

d. In addition, a general inquiry was sent by electronic mail to all Cravath attorneys and legal assistants to determine whether any such individuals or any members of their households (i) own any debt or equity securities of the Debtors; (ii) hold a claim against or interest adverse to the Debtors; (iii) are or were officers, directors, or employees of the Debtors or any of the affiliates or subsidiaries; (iv) are related to or have any connections to Bankruptcy Judges in the Northern District of California; or (v) are related to or have any connections to anyone working in the Office of the United States Trustee for the Northern District of California (the "**U.S. Trustee**").

Insofar as I have been able to ascertain, neither I, nor Cravath, currently represents, or has in the past represented, a Potential Party in Interest, except as hereinafter set forth. Through the procedures set forth above, Cravath has determined that it has in the past represented, currently represents and/or may in the future represent, in matters wholly unrelated to the Debtors, the Potential Parties in Interest (or subsidiaries or affiliates thereof) set forth on Exhibit B. To the best of my knowledge and information, of the clients listed on Exhibit B, only three represented more than 1% of Cravath's annual gross revenue for the fiscal year ending on December 31, 2018: JPMorgan Chase Bank, N.A., together with certain affiliates (collectively, "**JPMorgan**"), Goldman Sachs Bank USA, together with certain affiliates, and Morgan Stanley Bank, N.A., together with certain affiliates. In any event, Cravath will not represent any of the foregoing parties in interest or any other party in interest in any facet relating to the Debtors or the Chapter 11 Cases.

Despite the efforts described herein to identify and disclose Cravath's connections with the parties in interest in the Chapter 11 Cases, because the Debtors have numerous relationships, Cravath is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, Cravath will continue to apply the conflicts procedures described above, and if any new material relevant facts or relationships are discovered or arise, Cravath will promptly file a supplemental disclosure with the Court.

### III. CRAVATH'S CONNECTIONS WITH THE DEBTORS

Cravath compiled responses to the foregoing inquiries for the purpose of preparing this Declaration. Responses to the inquiries described above indicate that, as of the Petition Date, except as disclosed below, no Cravath attorney or legal assistant, or member of the household of any Cravath attorney or legal assistant, holds any claims against, stock of, or other interests in the Debtors and that no such individuals held significant employment with the Debtors.

Two Cravath attorneys have informed the Firm that their spouses are employed at financial management firms that either own debt or equity of the Debtors directly or have other investments with respect to the Debtors' debt or equity. In addition, two Cravath attorneys have advised that they worked with Marta Villacorta, a trial attorney with the Office of the United States Trustee for Region 17, while she was employed by Cravath as a contract attorney. Out of an

abundance of caution, Cravath has instituted formal measures to screen these individuals from all aspects of Cravath's proposed representation of the Debtors.

From time to time, Cravath partners, associates and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors, often without Cravath's knowledge. Each Cravath person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Fund is generally operated as a blind pool, meaning that when the Cravath persons make an investment in the Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

Cravath has rendered, among other services, legal services in connection with litigation, transactional and corporate governance matters to the Debtors, as described more fully in the Application. Most recently, Cravath has provided certain necessary services to enable the Debtors to commence the Chapter 11 Cases, including negotiating the Debtors' debtor-in-possession financing and preparing related filings, preparing certain public disclosures and providing advice regarding corporate governance and strategic matters to the Debtors.

### IV. CRAVATH'S CONNECTIONS WITH PARTIES IN INTEREST IN MATTERS UNRELATED TO THESE CHAPTER 11 CASES

Either I, or an attorney working under my supervision, reviewed the connections between Cravath and the clients identified on the Master Conflicts List, and the connections between those entities and the Debtors. After such review, either I, or an attorney working under my supervision, determined, in each case, that Cravath does not hold or represent an interest that is adverse to the Debtors' estates and that Cravath is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, for the reasons discussed below.

Cravath maintains a large and diversified legal practice, pursuant to which it represents many commercial corporations, financial institutions and other persons and entities. Cravath has formerly represented, currently represents, and may, in the future, represent entities that are claimants or interest holders of the Debtors in matters unrelated to these Chapter 11 Cases. Some of those entities are, or may consider themselves to be, creditors or parties in interest in these Chapter 11 Cases or otherwise have interests in these cases. More specifically, as disclosed in Exhibit B, Cravath currently represents, and formerly has represented, JPMorgan in a variety of corporate and litigation matters. JPMorgan is a pre-petition lender to the Debtors, as co-syndication agent and joint lead arranger bookrunner with respect to both PG&E Corp.'s and the Utility's pre-petition revolving credit facilities. In addition, JPMorgan serves as administrative agent for the Debtors' debtor-in-possession financing facilities. Aggregate fees paid to Cravath by JPMorgan during the fiscal year ending on December 31, 2018 equaled approximately 2.5% of Cravath's annual gross revenues. Cravath's former and current representations of JPMorgan have been and are unrelated to the Debtors or these Chapter 11 Cases. I do not believe that Cravath's representation of JPMorgan precludes Cravath from meeting the disinterestedness standard under the Bankruptcy Code, but I have disclosed this connection out of an abundance of caution.

In addition, as part of its practice, Cravath appears in cases, proceedings and transactions involving many different attorneys, counsel, accountants, financial consultants and investment bankers, some of which now or may in the future represent claimants and parties in interest in the Chapter 11 Cases. Cravath has not represented and will not represent any such entities in relation to the Debtors and the Chapter 11 Cases. Cravath does not have any relationship with any such attorneys, accountants, financial consultants or investment bankers that would be adverse to the Debtors or their estates.

In the event that there is any dispute between the Debtors and any entity listed on the Disclosure List, Cravath will not represent the Debtors in any matter adverse to such organizations. Any and all such matters will be handled by separate counsel.

To the best of my knowledge, information and belief and in accordance with Bankruptcy Rule 5002, no attorney, including any partner, counsel or associate of Cravath has a

connection with any United States Bankruptcy Judge in the Northern District of California or the U.S. Trustee that would render Cravath's retention in the Chapter 11 Cases improper.

V. **CRAVATH'S RETAINER, RATES, AND BILLING PRACTICES**

Cravath is not a creditor of the Debtors. During the 90-day period prior to the Petition Date (the "**Specified Period**"), Cravath received payments in the amount of $45,168,152, comprising payments for services performed and expenses incurred primarily between June 2018 and the Petition Date, including in preparation for the commencement of the Chapter 11 Cases. In addition, Cravath received the Retainer totaling $10,000,000 on December 27, 2018, which Retainer was drawn by Cravath in the amount of $3,026,871 and applied to additional invoices.

For the one-year period prior to the Petition Date, Cravath received payments and advances in the aggregate amount of $75,729,004 (comprised of (i) the above-described $55,168,152 received during the Specified Period, and (ii) $20,560,852 of payments received during such one-year period but prior to the Specified Period). As of the Petition Date, Cravath has a remaining credit balance in favor of the Debtors for professional services performed and to be performed, and expenses incurred and to be incurred, in connection with these Chapter 11 Cases in the amount of $6,973,129 (the "**Retainer Balance**"). Cravath intends to apply the Retainer to any outstanding amounts relating to the period prior to the Petition Date that were not processed through Cravath's billing system as of the Petition Date. Such amounts do not exceed the Retainer Balance. Cravath intends to apply any remaining balance of the Retainer as a credit toward services rendered and expenses incurred subsequent to the Petition Date.

Cravath intends to charge the Debtors for services rendered in these Chapter 11 Cases at Cravath's standard hourly rates in effect at the time the services are rendered. Cravath's current standard hourly rates are $1,100 to $1,500 for partners, $415 to $1,090 for associates, and $290 to $360 for paraprofessionals. Cravath's hourly rates are set at a level designed to compensate Cravath fairly for the work of its attorneys and paraprofessionals. These hourly rates vary with the seniority

of the individuals assigned and are subject to periodic adjustments to reflect economic and other conditions.[2]

Cravath also intends to seek reimbursement of actual, necessary expenses and other charges incurred by Cravath according to its customary reimbursement policies, subject to any modifications to such policies that Cravath may be required to make to comply with orders of this Court, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013, the United States Bankruptcy Court for the Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees, effective February 19, 2014, and the United States Trustee Guidelines Region 17, updated December 16, 2016 (collectively, the "**Fee Guidelines**").

No promises have been received by Cravath, or any partner, counsel, or associate of Cravath, as to payment or compensation in connection with the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Fee Guidelines. Furthermore, Cravath has no agreement with any other entity to share compensation received by Cravath or by such entity.

The Application requests approval of Cravath's retention on rates, terms, and conditions consistent with what Cravath charges non-Chapter 11 debtors, namely, prompt payment of Cravath's hourly rates and reimbursement of out-of-pocket disbursements at cost or based on formulas that approximate the actual cost where the actual cost is not easily ascertainable. Subject to these terms and conditions, Cravath intends to apply for allowance of compensation for professional services rendered in the Chapter 11 Cases and for reimbursement of actual and necessary expenses relating thereto, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Fee Guidelines.

---

[2] Cravath typically increases the hourly billing rate of certain attorneys and paraprofessionals once a year in the form of step increases awarded in the ordinary course on the basis of advancing seniority and promotion. These step increases do not constitute "rate increases" (as the term is used in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013).

## VI. CRAVATH IS DISINTERESTED

Except as set forth herein, and based upon the information available to me, neither I, Cravath nor any attorney employed by Cravath, including any member or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates. In addition, Cravath is not a creditor of the Debtors, as described above. Therefore, based upon the information available to me, I believe that Cravath is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

## VII. COORDINATION WITH OTHER PROFESSIONALS FOR THE DEBTORS

Cravath is aware that the Debtors have submitted, or intend to submit, separate applications to retain, among others: (i) Weil, as primary bankruptcy counsel, (ii) Keller & Benvenutti LLP ("**K&B**"), as co-counsel, (iii) Munger, Tolles & Olson LLP, as regulatory counsel, (iv) Lazard Frères & Co. LLC, as investment banker, (v) AP Services LLP, as financial advisor, and (vi) Prime Clerk, LLC, as claims and noticing agent. The Debtors may also file applications to employ additional professionals. Cravath will work with Weil and the Debtors' management to coordinate its efforts with those of the other professionals retained by the Debtors in these Chapter 11 Cases so as to prevent duplication of services whenever possible.

## VIII. ATTORNEY STATEMENT PURSUANT TO FEE GUIDELINES

The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013.

**Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?
**Response**: No.

**Question**: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?
**Response**: No.

**Question**: If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial

terms have changed postpetition, explain the difference and the reasons for the difference.

**Response**: Cravath represented the Debtors throughout the twelve months prior to the Petition Date. Cravath's 2018 rates for PG&E matters were as follows:

| | |
|---|---|
| Partners: | $968–$1,610 |
| Associates: | $351–$1,040 |
| Paraprofessionals: | $243–$360 |

In January 2019, Cravath adjusted its billing rates for PG&E matters in the ordinary course, as follows:

| | |
|---|---|
| Partners: | $1,215–$1,725 |
| Associates: | $374–$1,255 |
| Paraprofessionals: | $261–$415 |

The ranges specified above include both discounts (below) and premiums (above) applicable standard rates, based on specific categories of work as agreed with PG&E. In consultation with PG&E, it was determined that it would be appropriate to revert to standard rates for all categories of work in connection with the commencement of the Chapter 11 Cases. Accordingly, all postpetition work will be billed at Cravath's standard rates, which for 2019 are as follows:

| | |
|---|---|
| Partners: | $1,100–$1,500 |
| Associates: | $415–$1,090 |
| Paraprofessionals: | $290–$360 |

**Question**: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Response**: Cravath is developing a prospective budget and staffing plan for the Chapter 11 Cases. Cravath and the Debtors will review such budget following the close of the budget period to determine a budget for the following period.

////
////
////
////
////
////
////
////
////

The foregoing constitutes the verified statement of Cravath pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated March 22, 2019

/s/ *Paul H. Zumbro*
Paul H. Zumbro
Partner, Cravath, Swaine & Moore LLP