SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
  James P. Hill, SBN 90478
  Christopher V. Hawkins, SBN 222961
600 B Street, Suite 1700
San Diego, California 92101
Tel:    (619) 233-4100
Email: hill@sullivanhill.com
         hawkins@sullivanhill.com

Gerald Singleton, SBN 208783
Amanda W. LoCurto, SBN 265420
SINGLETON LAW FIRM, APC
450 A Street, 5th Floor
San Diego, CA 92101
Tel:    (619) 771-3473
Email: gerald@slffirm.com
         amanda@slffirm.com

Attorneys for SLF Fire Victim Claimants

Electronically Filed 03/25/2019

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

In re

PG&E CORPORATION,

and

PACIFIC GAS AND ELECTRIC COMPANY

　　　　Debtors

Affects:
☐ PG&E Corporation
☐ Pacific Gas & Electric Company
☒ Both Debtors

Case No. 19-30088 (DM)

Chapter 11

(Lead Case–Jointly Administered)

**OBJECTION TO CORRECTED MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 503(c) FOR ENTRY OF AN ORDER (I) APPROVING SHORT-TERM INCENTIVE PLAN AND (II) GRANTING RELATED RELIEF [ECF 782]**

Date: April 9, 2019
Time: 9:30 a.m. (Pacific)
Place: United States Bankruptcy Court
          Courtroom 17, 16th Floor
          San Francisco, CA 94102

**Opposition Deadline: March 28, 2019, 4 p.m.**

## I. INTRODUCTION

On January 29, 2019, PG&E Corporation and Pacific Gas and Electric Company (collectively, "PG&E") filed for bankruptcy. PG&E's stated reason for seeking bankruptcy protection was that it was facing $30 billion in damages from the 2015 Butte Fire, the 2017 North Bay Fires (18 fires in 10 Northern California counties) and the 2018 Camp Fire.[1] Together these fires burned nearly 500,000 acres, killed over 100 people, destroyed almost 20,000 homes, and left tens of thousands of people homeless.

The Singleton Law Firm Fire Victim Claimants ("SLF Claimants") consist of over 3,500 individuals who suffered injuries and damages in the fires started by PG&E and who are represented by the Singleton Law Firm, APC.[2] The SLF Claimants have victims from each of the three major fires/fire complexes involved in the bankruptcy: the 2015 Butte Fire (coordinated in Sacramento Superior Court under JCCP Number 4853), the 2017 North Bay Fires (coordinated in San Francisco Superior Court under JCCP Number 4955), and the 2018 Camp Fire (which had not been coordinated or consolidated at the time PG&E filed for bankruptcy). With respect to the 2017 North Bay Fires, SLF Claimants sustained damages in each of the 18 major fires. Accordingly, the SLF Claimants comprise a more complete representative group of fire victims than any other group.

On January 29, 2019, PG&E filed a motion to approve, among other things, $130,000,000 in bonuses for employees and executives for 2018. ECF No. 8.

On February 20, 2019, the SLF Claimants objected to the motion (ECF No. 517) on the grounds that PG&E should not be paying hundreds of millions of dollars in bonuses to its employees (including executive employees) while simultaneously claiming that it lacked sufficient assets to compensate the victims of its negligence.

Ultimately, PG&E withdrew its initial motion. PG&E's Interim CEO John Simon wrote to employees, "The more I stepped back and thought about the impacts the wildfires have had on so

---

[1] "PG&E to file for Bankruptcy as Wildfire Costs hit $30 billion", *Los Angeles Times*, July 14, 2019, https://www.latimes.com/business/la-fi-pge-bankruptcy-filing-20190114-story.html.

[2] While there are other firms involved in the representation of the SLF Claimants, because each fire has a different group of firms involved, this group is referred to as the "SLF Claimants" for ease of reference.

many people outside our company, regardless of fault, the more I came to believe paying [bonuses] in 2018 was not the right thing to do."[3]

Within weeks of withdrawing its 2018 bonus motion, however, PG&E filed a new request, this one seeking the Court's approval to pay up to $350,000,000 in employee bonuses in 2019. ECF No. 782, p. 6, ln. 25.

As set forth herein, the SLF Claimants continue to believe that paying *bonuses*–which by definition, are amounts over and above a salary–to its employees while thousands of PG&E's victims remain homeless[4] and PG&E remains in bankruptcy due to its claimed inability to pay its bills is fundamentally wrong and is not a proper exercise of PG&E's business judgment.[5]

## II. ARGUMENT

PG&E has recalibrated its bonus pitch following the SLF Claimants' objection to its first request. Less than two weeks after withdrawing the first bonus plan, PG&E set aside any purported misgivings that it might not be "right" to ask permission to pay bonuses under the circumstances and doubled down with a request to pay up to $350 million in bonuses (well over twice its initial request of $130 million). In struggling to find a decent argument as to why a bankrupt PG&E should be allowed to shower bonuses on employees as though it was a high-performing corporation, PG&E relied upon two familiar tropes: safety and fair compensation.

### A. PG&E Falsely Attempts to Equate Giving Bonuses to Its Current Employees with a Safer California

First, PG&E argues that the proposed bonuses will incentivize safety. Given that PG&E has by far the worst safety record of any California utility, it is difficult to take this argument seriously.

---

[3] "Bankrupt PG&E cancels $130 million in bonuses after barrage of protests", *San Jose Mercury News*, February 25, 2019, https://www.mercurynews.com/2019/02/25/bankrupt-pge-cancels-130-million-in-bonuses-after-barrage-of-protests/

[4] "Camp Fire victims have been through hell. As last shelter closes, where will they go?" *Sacramento Bee*, January 30, 2019, https://www.sacbee.com/news/local/homeless/article225194350.html

[5] While PG&E contends it sought bankruptcy protection due to its inability to pay its creditors in full, numerous financial analysts, including some of PG&E's largest stockholders, have disputed this assertion. While PG&E has not yet submitted its Statement of Financial Affairs, many estimates place its debts at substantially below its $70 billion in assets. Accordingly, whether the instant filing was financially necessary or was simply an attempt by PG&E to reduce the estimated $30 billion in damages it must pay to its victims remains to be seen.

403000-v3

3

As has been well documented, PG&E equipment was responsible for death and destruction in the 2010 San Bruno gas pipe explosion; the 2015 Butte Fire; the 18 fires that, together, compromise the 2017 "North Bay Fires;" and the 2018 Camp Fire, by far the most destructive fire in California history.

Moreover, PG&E's conduct has *not* improved since the deadly Camp Fire. As the Court is aware, Federal District Court Judge William H. Alsup is supervising PG&E's felony probation after it was convicted in the eight deaths caused by the San Bruno explosion.[6]

According to Judge Alsup, the central problem is PG&E's corporate culture which puts profits ahead of safety.[7] At PG&E's recent probation hearing on January 30, 2019, Judge Alsup stated: "Safety is not your No. 1 thing . . . . To my mind, there's a very clear-cut pattern here: that PG&E is starting these fires. What do we do? Does the judge just turn a blind eye and say, 'PG&E, continue your business as usual. Kill more people by starting more fires'?"

It is hard to see how rewarding PG&E's current employees with bonuses solves this fundamental problem, particularly since *this same bonus program has failed to prevent the deadly fires that PG&E has started in three of the past four years.*

In its motion, PG&E's writes, "Historically, [PG&E's bonuses] have been successful in realizing key operational objectives by aligning eligible employee' interest with those of the Debtors and effectively linking cash awards under the incentive plans to the overall safety, performance, and efficiency of the Debtors' operations." ECF No. 782, p. 4, ll. 12–16.

This assertion simply is *not* true. The incentive plan has *not* worked in the past. The bonuses were paid, and yet PG&E's safety record over the past few years is appalling. From 2015 to 2018, in

---

[6] In 2010, a PG&E gas pipeline exploded, killing 8 people and destroying 38 homes in the City of San Bruno. The California Public Utilities Commission ultimately fined PG&E $1.6 billion, and a federal jury convicted PG&E of six federal felonies, including laws related to pipeline safety and of obstructing an investigation. *See* "Judge Says PG&E Violated Its Probation In San Bruno Pipeline Explosion Case", *Capitol Public Radio*, January 30, 2019, http://www.capradio.org/articles/2019/01/30/ judge-says-pge-violated-its-probation-in-san-bruno-pipeline-explosion-case/; "PG&E Sentenced To Public Shaming, Community Service For San Bruno Explosion", *Forbes*, January 26, 2017, https://www.forbes.com/sites/williampentland/ 2017/01/26/pge-sentenced-to-public-shaming-community-service-for-san-bruno-explosion/#46b6e1dd7698.

[7] "Federal Judge Blasts PG&E's Commitment to California Wildfire Safety", *NPR*, January 30, 2019, https://www.npr.org/2019/ 01/30/690196239/federal-judge-blasts-pg-es-commitment-to-california-wildfire-safety.

only one year (2016) did PG&E not start at least one fire that killed multiple people and burned tens of thousands of acres.

Moreover, as noted in a recent article in the New York Times, "How PG&E Ignored Fire Risks in Favor of Profits," "five of the ten most destructive fires in California since 2015 have been linked to PG&E's electrical network."[8] The Camp Fire, the deadliest and most destructive in California's history, started when "a live wire broke free of a tower that was a quarter-century past what PG&E considers its 'useful life'." *Id.*

In addressing PG&E's safety problems, Judge Alsup recommended that PG&E hire *additional* inspectors and tree-trimmers; nowhere does he, or any other neutral party, state that the solution to PG&E's failures is to give their current employees more money. If PG&E is serious about safety, it should take the hundreds of millions is proposes to distribute in bonuses and hire *additional* qualified inspectors, tree trimmers, and others focused on prevention and safety.

While the SLF Claimants are *not* requesting that the Court lower the current salaries of PG&E's employees, rewarding the very people whose failure to comply with basic safety practices killed scores of people and destroyed nearly 20,000 homes in Northern California over the past four years adds insult to injury for the victims. By rewarding the people who caused these catastrophes, it also sends the wrong message to the executives of other utilities.

The implicit message in PG&E's bonus request is that if it is not permitted to pay bonuses, then PG&E will not be as safe as it could be: *i.e.*, more money for PG&E's employees equals a safer California. More bonus money equals less fire, less death, fewer homes burned. PG&E attempts to hold its customers hostage with the implied threat that they will be less safe if the Court does not permit the bonuses. The SLF Claimants respectfully submit that this is *not* a proper exercise of PG&E's business judgment.

The first element PG&E must demonstrate to satisfy the Dana standard is that "there [is] a reasonable relationship between the plan proposed and the results to be obtained." *In re Dana Corp.*,

---

[8] "How PG&E Ignored Fire Risks in Favor of Profits", *New York Times*, March 18, 2019, https://www.nytimes.com/interactive/2019/03/18/business/pge-california-wildfires.html.

403000-v3

5

358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006). Here, one of the purported purposes of the bonus plan is a safer PG&E. Given its track record, how can PG&E possibly satisfy this element?

### B. Bonuses Would Not Be Fair at This Time

Next, PG&E also argues that bonuses would simply bring its compensation of more than 10,000 employees in line with market rates.[9] To be clear, the SLF Claimants–and, presumably, all fire victims–support and respect the majority of PG&E's regular employees. Relatively few of them were directly involved in the actions and decisions that led to the fires. Unlike PG&E's executives, who created a culture in which–as Judge Alsup noted–safety is decidedly not the top priority, the ordinary employees are not responsible for the decisions which lead to the multiple deadly disasters caused by PG&E over the past decade.[10]

However, when a bankruptcy occurs, it is necessary for the Court to balance the interests of the various parties. Clearly, PG&E's employees deserve a fair salary that is in accord with market rates. But losing out on bonuses of between 6 and 20 percent of their salaries pales in comparison to what the fire victims have lost here.

Notably, however, PG&E offers no facts to support its contention that its compensation is below market rates. Either PG&E misleads the Court and the creditors when it claims that it pays under market, or it is true, and PG&E has outed itself as undervaluing its non-insider employees by paying subpar wages. There is certainly evidence that PG&E historically has lavishly compensated its senior executives, even those who caused the tragedies that led directly to the bankruptcy. Indeed, one need look no further than outgoing CEO Geisha Williams, who received a $2.5 million severance when she left PG&E in January 2019, immediately before PG&E announced that it would declare bankruptcy.[11]

//

---

[9] ECF 782, p. 3, lines 25-26; p. 3, lines 17-18; p. 9, lines 18-20; p. 10, lines 25-28, p. 11, line 1.

[10] *See* https://www.npr.org/2019/01/30/690196239/federal-judge-blasts-pg-es-commitment-to-california-wildfire-safety

[11] "Former PG&E CEO Geisha Williams lands $2.5 million in cash for severance pay despite being in charge during lethal wildfires of 2017 and 2018", *San Jose Mercury News*, January 14, 2019, https://www.mercurynews.com/2019/01/14/pge-ex-ceo-gets-2-5-million-severance-amid-wildfire-woes-customer-bills-may-rise-after-bankruptcy/

Moreover, PG&E's largess to former CEO Williams is not an isolated event. According to retired PG&E Manager of Human Resources Planning and Development, James Eaneman, Sr., PG&E historically gave its leadership "significant increases in both their salaries and incentive plans" during a time when PG&E "slashed" pension benefits for retired officers. ECF 866. Mr. Eaneman filed a letter with the Court asking that the Court deny the bonuses as "a matter of basic decency," citing the company's performance and the customers who have "suffered or died" as a result of PG&E's strategic and tactical decisions. *Id.*

Thus, if PG&E is telling the truth about its regular workers being underpaid, then the appropriate remedy is for the salaries of the executives who caused these disasters to be cut in order to bring the regular workers' total salaries in line with market value. For fire victims (many of whom are still homeless) to watch employees receive bonuses while the company is in bankruptcy is patently unjust.

Moreover, given PG&E's past (including slashing pension benefits while paying executive bonuses), it is difficult to take PG&E's assertion at face value that it simply wants to bring its employees' pay packages in line with the industry norm. Given PG&E's history, the more likely reason is less eleemosynary and more craven: bonuses encourage employee loyalty.

For example, when PG&E lobbied to limit its liability for causing the catastrophic 2017 North Bay Fires, it did not send its executives to the front lines at the State Capitol to speak at public meetings. It sent its rank and file lineman, dozens of whom appeared before the Legislature and to urge lawmakers to limit PG&E's liability for future fires in the name of "safety." Employees who receive bonuses are much more likely to return at the behest of the PG&E executives to lobby on behalf of their employers' interests than those who do not.

Again, the SLF Claimants respectfully submit that bonusing employees at this time is not a proper exercise of PG&E's business judgment.

### C. Balancing the Interests

The SLF Claimants understand employees' desires for bonuses, and the Debtors' desire to retain staff. But the SLF Claimants respectfully submit that at this point, the fire victims should be the top priority. The vast majority of the fire victims have not been compensated and are still living

in very difficult circumstances. Many are still in temporary housing. A significant number are homeless. PG&E should not be able to give its employees bonuses <u>until</u> it compensates its victims and emerges from bankruptcy.

Safety is <u>not</u> the only category in which PG&E's performance has fallen short. It has failed economically. In just the past year, its stock has lost over 60 percent of its value, costing its shareholders billions of dollars. Under what economic theory should a company that lost billions of dollars be paying out up to $350,000,000 in bonuses?

Given PG&E's poor record in both safety and business, bonuses at this time simply are not appropriate. This money would be much better spent being used to compensate PG&E's victims.

As the Court is aware, Judge Alsup is overseeing PG&E's probation for a felony conviction stemming from a 2010 natural gas pipeline explosion. In that case, on March 5, 2019, Judge Alsup wrote:

> [The utility] previously paid out immense sums in dividends–$798 million and $925 million in 2017 and 2016, respectively, with the vast majority paid to PG&E Corporation, PG&E's holding company and the owner of the entirety of PG&E's outstanding common stock. PG&E Corporation common stock, in turn, is listed on the New York Stock Exchange and dividends paid to common shareholders by PG&E Corporation during 2017 and 2016 amounted to one billion dollars and $921 million, respectively…. Yet, during this same period, PG&E knowingly failed to trim or remove thousands of trees it had already identified as posing a hazard. Put differently, some of these dividends could and should have been kept and used to bring PG&E into compliance with state and federal law with respect to what has become the number one cause of PG&E induced wildfires.

*See* ECF No. 1027 in Case No. CR 14-0175 WHA, attached as Exhibit "A" hereto.

The SLF Claimants submit that the bonuses proposed in the motion represent a similar poor use of the Debtors' funds, and sends exactly the wrong message to the utility industry, the victims, and the public. The money would be better spent compensating the victims who have suffered enormously here. Accordingly, PG&E cannot meet its burden of satisfying the business judgment test here.

**D.  Relevant Authority**

PG&E argues that the "facts and circumstances" test under section 503(c)(3) is identical to the lower-threshold "business judgment" test that courts apply in deciding whether to approve a debtor's transactions outside of the ordinary course of business. Some courts have applied that standard. *See*,

e.g., *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011). Other courts have rejected this approach and held debtors to a more stringent standard. *See In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236–37 (Bankr. N.D. Tex. 2009) (standard for approval under section 503(c)(3) is higher than the business judgment test; if payments to employees outside the ordinary course were only subject to the business judgment test, then the language of section 503(c)(3) would be rendered meaningless) (*citing In re CEP Holdings, LLC*, 2006 WL 3422665 *2–3 (Bankr. N.D. Ohio 2006); *In re Dura Auto Sys. Inc.*, 06-11202, Doc. No. 1369 (Bankr. D. Del. June 29, 2007) and *In re Supplements LT, Inc.*, 08-10446 (KJC), Doc. No. 277 (Bankr. D. Del. Apr. 14, 2008)). *See Pilgrim's Pride* at 237 ("[E]ven if a good business reason can be articulated for a transaction, the court must still determine that the proposed transfer or obligation is justified in the case before it. The court . . . must make its own determination that the transaction will serve the interests of creditors and the debtor's estate."); and *In re GT Advanced Techs., Inc.*, No. 14-11916-HJB, 2015 WL 5737181 (Bankr. D.N.H. Sept. 30, 2015) ("The higher scrutiny to be applied when analyzing a non-insider retention plan under § 503(c)(3) requires this Court to determine whether the KERP is justified in this case and "will serve the interests of creditors and the debtor's estate," regardless of whether the Debtors have articulated a good business reason for the KERP.")

The SLF Claimants submit that, given the facts and circumstances of this case, the Court should hold PG&E to a higher standard.

E. **Joinder in Various Objections**

On March 12, 2019, the Official Committee of Tort Claimants filed its objection to the motion. ECF 847.

On March 20, 2019, the City and County of San Francisco filed its own brief in opposition to the motion, joining in the objection of the Official Committee of Tort Claimants, and raising additional points regarding the lack of information about the bonuses to be paid. ECF 968.

For an example of the detailed level of information needed to evaluate proposed bonuses, see *In re Residential Capital, LLC*, 478 B.R. 154, 167 (Bankr. S.D.N.Y. 2012) ("Moreover, an examination of the spreadsheet supplied by the Debtors shows that for each of the seventeen KEIP Participants, his or her total compensation projected for 2012 based solely on base salary and

projected KEIP Awards would be less (in some cases substantially less) than the total compensation received by the individuals in 2010 and 2011. But if the discretionary variable pay under pre-petition plans is added to the 2012 base salary plus projected KEIP Award, the potential compensation for each of the seventeen KEIP Participants is substantially more (approximately 30% more) than the total compensation each person received in 2010 and 2011.")

The SLF Claimants believe the arguments raised in the two objections described above are well-founded. Accordingly, the SLF Claimants hereby join in both of the foregoing objections.

### III. CONCLUSION

At the 341(a) meetings of creditors held March 5, 2019, Jason Wells, the Debtors' representative, repeatedly testified that he could not guarantee that PG&E's victims would be fully compensated for their losses. Until PG&E commits to fully compensate its victims, it is outrageous for it to seek to give its employees bonuses (and *not* a proper exercise of PG&E's business judgment). Bankruptcies always involve sacrifice on the part of different constituencies. No one has lost more here than the fire victims. Accordingly, the SLF Claimants respectfully submit that a year without bonuses for employees is a relatively small sacrifice compared to what others have lost. The motion should be denied.

Respectfully submitted,

Dated: March 25, 2019

SINGLETON LAW FIRM, APC

By: _____
Gerald Singleton
Amanda W. LoCurto

Dated: March 25, 2019

SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

By: */s/ Christopher V. Hawkins*
James P. Hill
Christopher V. Hawkins

Attorneys for the Singleton Law Firm
Fire Victim Claimants