TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
JASON BLUMBERG (NY SBN 4055257)
Trial Attorney
MARTA E. VILLACORTA (NY SBN 4918280)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Avenue, Suite 05-0153
San Francisco, CA  94102
Telephone:  (415) 705-3333
Facsimile:  (415) 705-3379
Email: jason.blumberg@usdoj.gov
         marta.villacorta@usdoj.gov

Attorneys for Andrew R. Vara,
Acting United States Trustee for Region 3[1]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION**, <br><br> - and - <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> **Debtors**. <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☑ Affects both Debtors <br><br> *\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 <br><br> (Lead Case) <br><br> (Jointly Administered) <br><br> Date: April 9, 2019 <br> Time: 9:30 a.m. (Pacific Time) <br> Place: United States Bankruptcy Court <br>  Courtroom 17, 16th Floor <br>  San Francisco, CA 94102 |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING SHORT-TERM INCENTIVE PLAN**

Andrew R. Vara, Acting United States Trustee for Region 3 (the "United States Trustee"), by and through his undersigned counsel, hereby files this objection (the "Objection")

---

[1] Andrew R. Vara, Acting United States Trustee for Region 3, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who has recused herself.

1

to the *Corrected Motion of the Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(c) for Entry of an Order (I) Approving Short-Term Incentive Plan and (II) Granting Related Relief* (ECF No. 806) (the "Motion").[2] This Objection is supported by the following memorandum of points and authorities and any argument the Court may permit.[3]

I. **MEMORANDUM OF POINTS AND AUTHORITIES**

    A. **Introduction**

The Debtors estimate that the cost of the 2019 STIP[4] will be approximately $235 million. The cost could be as much as $350 million. Even the $235 million amount represents an increase of $105 million (or nearly 81%) over the expected cost of the 2018 STIP.

Notwithstanding the cost, the Motion fails to provide sufficient information for the Court and parties in interest to assess whether the 2019 STIP is limited to non-insiders and primarily incentive in nature. Thus, the Debtors have not demonstrated that 11 U.S.C. § 503(c)(1) is inapplicable to the plan.

Even if the Court finds that the Motion is governed by 11 U.S.C. §§ 503(c)(3) and 363, the Debtors have failed to demonstrate that the relief is "justified by the facts and circumstances" of the case. For instance, the Motion does not address: (i) the maximum bonuses for eligible employees; (ii) the historical bonuses paid to eligible employees; or (iii) current and prior year salary information for eligible employees.

---

[2] The Motion is styled as a "corrected" version of an earlier version of the motion filed on March 6, 2019. *See* ECF No. 782. The Motion does not specify what corrections were made to the earlier version of the motion.

[3] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in these cases pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201.

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**B. Background Facts and Procedural Posture**

1. On January 29, 2019, the Debtors commenced the above-captioned cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See* ECF No. 1. No trustee has been appointed in the Debtors' cases. *See generally* Case Dockets.

2. On February 12, 2019, the United States Trustee appointed an Official Committee of Unsecured Creditors. *See* ECF No. 409. On February 15, 2019, the United States Trustee appointed an Official Committee of Tort Claimants. *See* ECF No. 453.

3. The section 341(a) meeting of creditors in these cases was called on March 4, 2019 and continued to April 29, 2019. *See* ECF Nos. 396, 736.

4. The Debtors filed their Schedules on March 14, 2019. *See* ECF Nos. 897 to 908. The Debtors have not filed their Statements of Financial Affairs. *See generally* Case Dockets.[5]

**The 2019 STIP**

5. Pursuant to the Motion, the Debtors seek approval of a short-term incentive plan for 2019 (the "2019 STIP"). *See* Motion, at 2.

6. According to the Motion, "10,000 non-insider employees" will be eligible for "STIP Awards." *See* id., at 12. The Debtors estimate that the 2019 STIP awards will total approximately $235 million. *Id.* But the aggregate payout may be as little as $0.00 or as much as $350 million. *Id.* The awards would be paid on a quarterly basis. *Id.*[6]

---

[5] By Order entered on February 1, 2019, the Debtors' deadline to file their Statements of Financial Affairs was extended to April 15, 2019. *See* ECF No. 228.

[6] Awards for prior years were apparently paid on an annual basis. *See* Motion, at 12.

3

7. According to the Motion, the performance metrics for the 2019 STIP are weighted as follows: (i) 50% for "Safety Metrics";[7] (ii) 10% for "Customer Satisfaction"; and (iii) 40% for "Financial Performance." *Id.*, at 14.

8. The Debtors represent in the Motion that none of the participants in the 2019 STIP are "'insiders' within the purview of Section 101(31) of the Bankruptcy Code." *Id.*, at 9, 12, 18.

9. The Debtors acknowledge, however, that some participants hold titles such as "director," "manager," or "vice-president." And some participants "serve on the Boards of Directors (or similar governing bodies) and/or hold officer titles of certain of the Debtors' non-debtor affiliates." *Id.*, at 18 & n.2.

10. The Motion does not identify how many participants hold such titles. *See id.* Nor does the Motion provide information about the specific responsibilities and compensation of such individuals. *See id.*

**The 2018 STIP**

11. The Debtors represent in the Motion that the cost of the 2019 STIP is "in line with the Debtors' historical annual compensation plans when factoring in LTIP value." *See* Motion, at 17.

12. However, the Debtors' short term incentive plan for 2018 (the "2018 STIP") contemplated payments of $130 million for approximately 14,000 employees. *See* ECF No. 8, at 14.[8]

---

[7] The "Safety Metrics" consist of 5 measures: (i) "Nuclear Reliability and Safety Indicator" (weight: 5%); (ii) "Public Safety Index" (weight: 10%); (iii) "First-Time ILI Miles (weight: 10%); (iv) "Asset Records Duration Index" (weight: 10%); and (v) "Serious Injuries and Fatalities Corrective Actions Index (weight: 15%). The "Public Safety Index" is, in turn, comprised of an "Enhanced Vegetation Management" metric and a "System Hardening" metric. *See* Motion, at 14.

4

13. Thus, the expected cost of the 2019 STIP represents an increase of $105 million (or nearly 81%) over the expected cost of the 2018 STIP.[9]

### C. Statutory Framework

Section 503 governs the allowance of administrative expenses "for actual, necessary costs and expenses of preserving a debtor's bankruptcy estate." 11 U.S.C. § 503(b)(1)(A). The two general overriding policies of Section 503 of the Bankruptcy Code are: (i) to preserve the value of the estate for the benefit of its creditors; and (ii) to prevent the unjust enrichment of the insiders of the estate at the expense of its creditors. *See In re Journal Register Co.*, 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009).

Section 503(c)(1) of the Bankruptcy Code prohibits any transfer:

> made to, or an obligation incurred for the benefit, *of an insider of the debtor for the purpose of inducing such person to remain with the debtors' business,* absent a finding by the court based on evidence in the record that--
>
> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>
> (B) the services provided by the person are essential to the survival of the business; and
>
> (C) either –

---

[8] The Debtors initially sought authority to pay awards associated with the 2018 STIP in their *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a),363(b), and 507 and Fed. R. Bankr. P. 6003 and 6004 for Interim and Final Authority to (I) Pay Prepetition Wages, Salaries, Withholding Obligations, and Other Compensation and Benefits; (II) Maintain Employee Benefits Programs; and (III) Pay Related Administrative Obligations* [ECF No. 8]. The Debtors later withdrew that request. *See* Motion, at 11.

[9] The Debtors attribute the increased cost to adjustments resulting from their intention to not issue grants under their equity-based long-term incentive plan in 2019. *See* Motion, at 11-12, 17. The Motion does not address the aggregate value of these grants in previous years.

5

  (i)  the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

  (ii)  if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

11 U.S.C. § 503(c)(1) (emphasis added).

  A transfer to an insider to induce the insider to remain with the debtor's business must satisfy the requirements under subdivisions (A), (B), and (C) of Section 503(c)(1) of the Bankruptcy Code to be subject to this subdivision's exception. 4 *Collier on Bankruptcy* ¶ 503.17 (15th ed. rev. 2007); *see also In re Dana Corp.,* 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2006) ("*Dana II*") (summarizing the requirements under Section 503(c)(1) of the Bankruptcy Code).

  Attempts to characterize what are essentially prohibited retention programs as "incentive" programs to bypass the requirements of Section 503(c)(1) of the Bankruptcy Code are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages, when determining whether the compensation programs are subject to section 503(c)(1) of the Bankruptcy Code. *See In re Mesa Air Group, Inc.*, 2010 WL 3810899, at *2 (Bankr. S.D.N.Y. Sept. 24, 2010) (citing *In re Dana Corp.*, 351 B.R. 96, 102 n.3 (Bankr. S.D.N.Y. 2006) ("*Dana I*") (stating that if a bonus proposal "walks like a duck (KERP), and quacks like a duck (KERP), it's a duck (KERP).")).

  Section 503(c) of the Bankruptcy Code, added in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), was intended to curtail payments of

Case: 19-30088  Doc# 1044  Filed: 03/26/19  Entered: 03/26/19 09:44:18  Page 6 of 13

retention incentives to insiders, including bonuses granted to other employees without factual and circumstantial justification. *See Journal Register*; 407 B.R. at 536; *see also In re Pilgrim's Pride Corp.*, 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009) ("Section 503(c) was enacted to limit a debtor's ability to favor powerful insiders economically and at estate expense during a chapter 11 case."); *In re Global Home Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (the amendments were added to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process."); *see also In re Maust Transp., Inc.*, 589 B.R. 887, 893 (Bankr. W.D. Wash. 2018) ("[T]he 2005 amendments to § 503, which specifically prohibit certain insider retention bonus administrative claims, make it clear that Congress can and has removed the broad discretion granted to courts in § 503 where it deems the exercise of such discretion improper as to certain specific categories of administrative claims.").

This section establishes specific evidentiary standards that must be met before a bankruptcy court may authorize payments made to an insider for the purpose of inducing such person to remain with a debtor's business. *See Dana I*, 351 B.R. at 100; 11 U.S.C. § 503(c)(1).

The BAPCPA amendments make it abundantly clear that if a proposed transfer falls within Section 503(c)(1), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. *Id.* at 101; *see also In re Siliken Mfg. USA, Inc.*, 2013 WL 5330481, at *7 (Bankr. S.D. Cal. Sept. 19, 2013) ("[T]he Code often subjects insider dealings to heightened scrutiny in recognition that even ostensibly arm's length transactions between insiders have an inherently coercive element to them.").

The effect of Section 503(c) of the Bankruptcy Code was to put in place "a set of challenging standards" and "high hurdles" for debtors to overcome before retention bonuses

could be paid. *See Mesa Air Group,* 2010 WL 3810899, at *2 (citing *Global Home Prods.*, 369 B.R. at 785).

## ARGUMENT

### I. The Debtors Have Not Established that Section 503(c)(1) is Inapplicable to the 2019 STIP.

To avoid the requirements of section 503(c)(1), a debtor must show that "the proposed transfers *are not to insiders of a debtor* or, if the recipients of the proposed transfers are insiders, that the transfers are not being made *for the purpose of retaining those insiders*." *See In re Residential Capital, LLC*, 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012) (emphasis added) ("*Rescap*").

Here, the Debtors contend that Section 503(c)(1) is inapplicable to the relief requested in the Motion, because the 2019 STIP is an incentive plan and the participants are not insiders. *See* Motion, at 18. Consequently, the Motion does not address the 2019 STIP's compliance with the strict requirements of subdivisions (A), (B), and (C) of Section 503(c)(1).

As discussed below, however, the Motion fails to provide sufficient information for the Court and parties in interest to assess whether the 2019 STIP is, in fact, limited to non-insiders and primarily incentive in nature.[10]

#### A. The Debtors Have Failed to Satisfy their Burden of Demonstrating that the 2019 STIP Applies Only to Non-Insiders.

The 2019 STIP participants include directors, managers and vice-presidents. *See* Motion, at 18 & n.2. Pursuant to the Section 101(31) of the Bankruptcy Code, if a debtor is a corporation, the term "insider" includes an officer of the debtor. 11 U.S.C. § 101(31)(B)(ii). A vice president, as an officer, is presumptively an insider. *See In re Foothills Texas, Inc.*, 408 B.R.

---

[10] The United States Trustee reserves his right to conduct discovery on these issues and any matter relevant to the Motion.

8

573, 574, 579 (Bankr. D. Del. 2009); *see also In re The Village at Lakeridge, LLC*, 814 F.3d 993, 999 (9th Cir. 2016) ("Statutory insiders, also known as '*per se* insiders,' are persons explicitly described in 11 U.S.C. § 101(31) …. As a matter of law, a statutory insider has a sufficiently close relationship with a debtor to warrant special treatment.").

Accordingly, in the absence of additional information about the identities of the directors, managers and vice-presidents who are 2019 STIP participants, together with a statement as to their job descriptions and to whom they report, the participating directors, managers and vice-presidents should be presumed to be insiders. *See Foothills Texas, Inc.*, 408 B.R. at 584.

Moreover, regardless of title, a person with broad responsibilities over significant aspects of a debtor's business is considered an insider, even if he or she is not a member of senior management. *Id*. at 584 (finding vice presidents who were not members of senior management, but who had broad responsibilities over significant aspects of debtor's business, to be insiders); *see also In re The Village at Lakeridge, LLC*, 814 F.3d at 1001 ("Having – or being subject to – some degree of control is one of many indications that a creditor may be a non-statutory insider, but actual control is not required to find non-statutory insider status."); *Borders Group*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011) ("[i]nsider status can also be determined on a case by-case basis based on the totality of the circumstances, including the degree of an individual's involvement in a debtor's affairs").

Thus, some 2019 STIP participants may be insiders even if they do not hold officer or director titles.

**B.   The Debtors Have Failed to Satisfy their Burden of Demonstrating that the 2019 STIP is an Incentive Plan.**

As discussed above, retention plans implicate Section 503(c)(1). Retention plans usually are intended "to encourage certain crucial employees to remain with the company through a

9

critical, transitional time period when the exact future of the company is unclear and when those employees would be most likely to search for other employment." *See In re Georgetown Steel Co., LLC*, 306 B.R. 549, 556 (Bankr. D.S.C. 2004). In contrast, incentive plans are designed to motivate employees to achieve performance goals. *See Mesa Air Group, Inc.*, 2010 WL 3810899, at *4.

The Debtors bear the burden of establishing by a preponderance of the evidence that the 2019 STIP is primarily incentivizing, rather than primarily retentive. *See Rescap*, 478 B.R. at 170; *see also In re Hawker Beechcraft*, 479 B.R. 308, 312-13 (Bankr. S.D.N.Y. 2012). In other words, the Debtors must demonstrate that the 2019 STIP is not retention-based, but rather that it presents significant hurdles which are difficult to achieve. *See Rescap*, 478 B.R. at 157-58, 164, 169, 173; *Dana I*, 358 B.R. at 583; *In re Velo Holdings Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012); *Global Home*, 369 B.R. at 784; *see also Dana II*, 358 B.R. at 583 (benchmarks for the debtors' long-term KEIP "are difficult targets to reach and are clearly not 'lay-ups'").[11]

The Debtors have not satisfied this burden. While the Debtors represent that the 2019 STIP is an incentive plan, it is the substance of how and why the proposed payments are made -- not the label put on the plan -- that is determinative. *See, e.g., Mesa Air Group, Inc.*, 2010 WL 3810899, at *2, 4 (incentive plans are designed to motivate employees to achieve performance goals).

---

[11] The purpose of the 2019 STIP appears to be at least partly retentive. *See* Motion, at 9 ("The Debtors believe that the 2019 STIP is important to *maintaining* and appropriately incentivizing their work force ….") (emphasis added). The shift from annual payments to quarterly payments may also be suggestive of a retentive purpose.

The Debtors' Motion broadly identifies the Performance Metrics that underpin the 2019 STIP. However, the Motion stops short of identifying the specific targets for each metric or how those targets can be achieved.

For instance, the Motion states that the "Financial Performance" metric is linked to Earnings from Operations. But there is no disclosure of the target amount of Earnings from Operations. Similarly, the Motion states that the "Enhanced Vegetation Management" metric is based on "how many circuit miles of vegetation have been cleared." Again, though, there is no disclosure of the specific target for miles of vegetation cleared. *See* Motion, at 14.[12]

Without more specific information, the Court and parties in interest cannot assess whether the Performance Metrics present difficult targets and are not "lay-ups."

## II. Even if the 2019 STIP is Governed by Sections 503(c)(3) and 363, the 2019 STIP Does not Satisfy these Statutory Provisions.

Should the Court find that Section 503(c)(1) does not apply, to grant the Motion the Court must find that it passes the test of Section 503(c)(3) – that it is necessary to preserve the value of the Debtor's estate, and is "justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3); *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir. 1988) ("Any claim for administrative expenses and costs must be the actual and necessary costs of preserving the estate for the benefit of its creditors."), *superseded by statute on other grounds*, 11 U.S.C. § 365(d)(3); *see also In re Regensteiner Printing Co.*, 122 B.R. 323, 326 (N.D. Ill. 1990)

---

[12] The District Court in the pending criminal action recently issued a *Second Order To Show Cause Why PG&E's Conditions Of Probation Should Not Be Modified*, ECF No. 1027, Case No. 3:14-cr-00175-WHA (N.D. Cal.) (the "OSC"). One condition proposed in the OSC is that "PG&E must fully comply with the specific targets and metrics set forth in its amended 2019 wildfire mitigation plan (Dkt. No. 1014-2), including with respect to enhanced vegetation management." *See* OSC, at 6. If these targets are the same as those under the 2019 STIP, then the Debtors must comply with them anyway. Accordingly, it does not make sense why employees would be entitled to a bonus for simply complying with the terms of the Debtors' probation.

11

(reversing approval of severance agreements for key employees, because debtors presented no evidence that severance payments were necessary to preserve bankruptcy estate); *In re Pacific Gas and Electric Co.*, 2001 WL 34133840, at *2 n.4 (Bankr. N.D. Cal. July 13, 2001) (initial declaration "'on information and belief'" was "insufficient" basis to grant KERP motion).

The Debtors have not established that the 2019 STIP is justified by the facts and circumstances of this case. Even under the less rigorous standards of Sections 503(c)(3) and 363, the benchmarks for the payment of bonuses must be "difficult targets to reach," and the bonuses must be reasonable. *Dana II*, 358 B.R. at 583-84.

Notably, the Motion fails to identify the specific targets for each Performance Metric. Accordingly, it is unclear whether these targets are difficult to meet. Moreover, the Motion fails to provide other relevant information, such as (i) the maximum bonuses for eligible employees by name, title, department, and function,[13] (ii) the historical bonuses paid to eligible employees by name, title, department and function, (iii) current and prior year salary information for eligible employees by name, title, department, and function, and (iv) the correlation between the responsibilities of eligible employees and the satisfaction of the Performance Metrics.

In short, the Debtors have not provided sufficient information for the Court to approve awards that may exceed $235 million.

///

///

///

---

[13] For the 2018 STIP, the maximum expected award appears to have been $90,000. *See* ECF No. 28, at 49 (Wells Declaration); ECF No. 263, at 49 (Amended Wells Declaration).

## CONCLUSION

The United States Trustee respectfully requests that the Court deny the approval of the Motion and grant such other relief as the Court deems fair and just.

Dated: March 26, 2019

Andrew R. Vara
Acting United States Trustee, Region 3

By: /s/ Jason Blumberg
Jason Blumberg
Trial Attorney for United States Trustee