# EXHIBIT 1

Stephen E. Hessler, P.C.
Marc Kieselstein, P.C.
Cristine Pirro Schwarzman
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
Brad Weiland (*pro hac vice* pending)
John R. Luze (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WINDSTREAM HOLDINGS, INC., *et al.,*[1] | ) | Case No. 19-22312 (RDD) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER ESTABLISHING A RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES FOR TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES

Windstream Holdings, Inc. and its debtor affiliates as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):

### Relief Requested

1.    In order to preserve the Debtors' ability to formulate a plan of reorganization that maximizes the use of their Tax Attributes (as defined below), the Debtors seek entry of an order,

---

[1]    The last four digits of Debtor Windstream Holdings, Inc.'s tax identification number are 7717.  Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/windstream.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  4001 North Rodney Parham Road, Little Rock, Arkansas 72212.

substantially in the form attached hereto as **Exhibit A** (the "Record Date Order"), establishing the

date the Bankruptcy Court (as defined below) enters as the effective date (the "Record Date") for

certain notice and sell-down procedures for trading in certain claims against the Debtors' estates.[2]

### Jurisdiction and Venue

2.        The United States Bankruptcy Court for the Southern District of New York

(the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference from the United States District Court for the*

*Southern District of New York*, dated February 1, 2012.  The Debtors confirm their consent,

pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to

the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that

it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States

Constitution.

3.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.        The bases for the relief requested herein are sections 362 and 541 of title 11 of the

United States Code (the "Bankruptcy Code").

### Background

5.        The Debtors are a leading provider of advanced network communications and

technology solutions for businesses across the United States.  The Debtors also offer broadband,

entertainment and security solutions to consumers and small businesses primarily in rural areas in

---

[2]        Contemporaneously with this Motion, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders Approving Notification and Hearing Procedures for Certain Transfers of and Declarations of Worthlessness with Respect to Common Stock and Granting Related Relief* seeking to establish notification and hearing procedures regarding the transfers of and declarations of worthlessness with respect to Beneficial Ownership (as defined therein) of the Debtors' equity securities to preserve the use of their Tax Attributes.

18 states.  Additionally, the Debtors supply core transport solutions on a local and long-haul fiber network spanning approximately 150,000 miles.  As of the date hereof, The Debtors had approximately 11,600 employees.

6.     As set forth in greater detail in the *Declaration of Tony Thomas, Chief Executive Officer and President of Windstream Holdings, Inc., (I) in Support of Debtors' Chapter 11 Petitions and First Day Motions and (II) Pursuant to Local Bankruptcy Rule 1007-2* (the "First Day Declaration"), on February 15, 2019, the United States District Court for the Southern District of New York entered a *Memorandum Decision and Order* against Debtor Windstream Services, LLC after trial in the matter styled *U.S. Bank National Association v. Windstream Services, Inc. v. Aurelius Capital Master, Ltd.*, Case No. 17-cv-7857 (JMF), that recognized an event of default under the Debtors' prepetition unsecured bond indentures, which in turn resulted in a cross-default under the Debtors' secured term loan and revolver credit facilities.  As of the date hereof, the Debtors are obligated for approximately $5.6 billion in funded debt obligations.  To avoid any precipitous action against the Debtors' assets that would have harmed the Debtors' businesses and to gain access to much-needed liquidity in the form of debtor-in-possession financing, the Debtors commenced these chapter 11 cases.

7.     On February 25, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these chapter 11 cases.  Additional information regarding the Debtors'

Case: 19-30088   Doc# 1051-1   Filed: 03/26/19   Entered: 03/26/19 14:44:26   Page 4 of 24

business, their capital structure, and the circumstances leading to these chapter 11 filings is contained in the First Day Declaration.

## **The Tax Attributes**

### I.    **Overview of Tax Attributes.**

8.    The Debtors have significant net operating losses ("NOLs") and general business credit carryforwards (the "Business Credits," and together with NOLs and certain other tax attributes, the "Tax Attributes").[3] The Debtors may utilize the Tax Attributes to offset their future taxable income, thereby reducing their future aggregate tax obligations. Additionally, such Tax Attributes may also be utilized by the Debtors to offset any taxable income generated by transactions consummated during these chapter 11 cases. The Debtors' ability to use their Tax Attributes may, however, be lost (or severely limited) if they experience an "ownership change" for tax purposes and are unable to take advantage of certain favorable rules that apply to ownership changes that occur pursuant to a bankruptcy plan of reorganization (as described more fully below). Thus, to protect their ability to use the Tax Attributes (and, specifically, to rely on the favorable rule described below), the Debtors may ultimately need to seek an order (a "Sell-Down Order") requiring any persons or entities that have acquired debt claims against the Debtors during these chapter 11 cases in such an amount that the holders of such claims would be entitled to receive more than 4.5 percent of the equity of the reorganized Debtors (collectively, the "Substantial Claimholders"), to sell-down their claims below this threshold amount.

9.    At this stage, it is too early to determine whether it is (or will be) necessary for the Debtors to obtain a Sell-Down Order. Accordingly, this Motion does not seek entry of a Sell-

---

[3]    The Tax Attributes include certain alternative minimum tax credits. We do not discuss those credits further because of the changes to the treatment of such credits in the recently-enacted U.S. federal income tax legislation.

4

Down Order.  Instead, this Motion merely seeks to establish the Record Date through entry of the proposed Record Date Order.  The Record Date Order will provide notice of the Record Date to persons or entities that trade claims against the Debtors that their claims ultimately may be subject to sell-down.  This notice will communicate:  (a) that, subject to further Court order, such creditor's claims may ultimately be subject to sell-down; and (b) the date after which purchased claims could be subject to sell-down (*i.e.*, on or after the Record Date).  Thus, the ***only*** purpose of the Record Date Order is to set and provide notice of the Record Date, which will serve as a placeholder should the Debtors later determine that a Sell-Down Order is necessary to preserve the Tax Attributes.  And, if the Debtors later determine that a Sell-Down Order is necessary, the Debtors will file a separate motion requesting entry of a Sell-Down Order applicable to all claims traded ***after*** the Record Date.

## II.      The Significance of the Debtors' Valuable Tax Attributes.

10.      As of January 1, 2019, the Debtors estimate that they have federal NOLs in the amount of approximately $3.4 billion[4] and Business Credits in the amount of approximately $27 million.  The Tax Attributes are potentially of significant value to the Debtors and their estates because the Debtors can carry forward certain of such NOLs and Business Credits to offset, respectively, their taxable income and tax liabilities in future years.  In addition, such Tax Attributes may be utilized by the Debtors to offset any taxable income or tax liabilities generated by transactions consummated during these chapter 11 cases.  Failure to preserve such assets could cause the Debtors' estates to suffer a significant tax liability to the detriment of stakeholder interests.

---

[4]      The Debtors have determined that approximately $1.5B of their $3.4B of gross federal NOLs are unlikely to be able to be utilized in the ordinary course of business as a result of prior ownership limitations under section 382.

5

### III.     Limitations on Use of the Tax Attributes.

11.     Sections 382 and 383 of the Internal Revenue Code of 1986, as amended (the "IRC") limit the amount of taxable income and tax liabilities, respectively, that can be offset by a corporation's tax attributes in taxable years (or portions thereof) following an "ownership change."  Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more shareholders holding 5 percent of the stock has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the three-year testing period ending on the date of the ownership change.  *See* 26 U.S.C.  § 382.

12.     Although sections 382 and 383 of the IRC impose annual limitations on a taxpayer's use of its Tax Attributes, a special provision of section 382 also provides significant relief to a debtor if an ownership change occurs in the context of a confirmed chapter 11 plan and certain requirements are satisfied.  Under section 382(*l*)(5) of the IRC, a debtor corporation is not subject to the general limitation imposed by sections 382 and 383 with respect to an ownership change if, as a result of the transactions contemplated by a bankruptcy plan, historic stockholders and/or the corporation's "qualified creditors" own at least 50 percent of the total value and voting power of the reorganized debtor's stock (the "Section 382(*l*)(5) Exception").  *See* 26 U.S.C. § 382(*l*)(5)(A).[5]

13.     To qualify for the Section 382(*l*)(5) Exception, "qualified creditors" (together with historic stockholders) must hold at least 50 percent of the reorganized debtor's stock immediately

---

[5]     A "qualified creditor" is generally one who (a) has held its claim continuously since at least 18 months prior to the petition date or (b) has held a claim incurred in the ordinary course of the debtor's business since the claim was incurred.  *See* 26 U.S.C.  § 382(*l*)(5)(E);  Treas. Reg.  § 1.382-9(d).  For these purposes Treas. Reg. § 1.382-9(d)(3) permits taxpayers to treat any claim holder as *always* having held such claim if such claim holder owns less than 5 percent of the corporation's stock immediately following the ownership change.

6

after emergence to preserve the majority of the Tax Attributes.  A key aspect of the "qualified creditor" analysis is the length of time that creditors have held their claims, together with a favorable presumption regarding that holding period that applies to creditors who receive less than 5 percent of the stock of a reorganized company.  The Record Date Order is designed to ensure that the Debtors preserve their ability to request Sell-Down Procedures if doing so is necessary and sufficient to satisfy this "qualified creditor" rule to preserve the Tax Attributes.

14.    If an ownership change occurred in the context of a confirmed chapter 11 plan and the Debtors were unable to take advantage of the Section 382($l$)(5) Exception, sections 382 and 383 and of the IRC would potentially significantly limit the amount of taxable income and tax liabilities, respectively, that the Debtors could offset by their "pre-change losses" and "excess credits" in taxable years (or a portion thereof).  *See* 26 U.S.C. § 382(b).  The Debtors' "pre-change losses" and "excess credits" would include the NOLs and the Business Credits.

### Notice and Summary of Potential Sell-Down Procedures

15.    The Debtors anticipate that they may need to seek entry of a Sell-Down Order that will enable them to (a) determine whether the Debtors will qualify for the Section 382($l$)(5) Exception and, if necessary, (b) require certain Substantial Claimholders to "sell-down" claims to the extent necessary to allow the Debtors to qualify for the Section 382($l$)(5) Exception (the "Sell-Down Procedures").

16.    Any potential Sell-Down Procedures would require a person or entity holding an amount of claims entitling that holder to receive more than 4.5 percent of the equity of the reorganized Debtors (the "Threshold Amount") to provide the Debtors with limited information such as the size of those holdings and the date those holdings were acquired.  The amount of claims held by a claimholder as of the Record Date would constitute the "Protected Amount."  Claimholders would never be required to sell down their claims below the Threshold Amount or

7

the Protected Amount, whichever is greater.  In other words, the Sell-Down Order (if sought by the Debtors and entered by the Bankruptcy Court) would apply only to entities that acquire claims in excess of the Threshold Amount *after* entry of the proposed Record Date Order and with full notice of the possibility that the claims they acquire could be subject to sell-down *if* the Debtors later determine that the Sell-Down Procedures are necessary.

17.     If the Sell-Down Procedures prove to be necessary, the Debtors would seek to require claimholders with claims greater than the Threshold Amount to provide updated holdings information shortly after the date on which the Bankruptcy Court approves a disclosure statement for a plan of reorganization that endeavors to utilize the Section 382($l$)(5) Exception.  Based on the updated holdings information, the Debtors would then determine whether it would be necessary to require claimholders holding claims in excess of the Threshold Amount and their respective Protected Amounts to sell down a portion of their holdings to preserve the Tax Attributes.  The Debtors would only require a sell-down if it were deemed necessary for the Debtors to qualify for the Section 382($l$)(5) Exception, and in no event would the Debtors seek to require a claimholder to sell-down claims below its Protected Amount.  In the event that the Debtors seek entry of a Sell-Down Order, the Debtors would seek to provide adequate notice and opportunity for claimholders to sell down their claims without triggering an unreasonable adverse impact on the value of such claims.

18.     The Debtors will provide notice, substantially in the form annexed as **<u>Exhibit 1</u>** to **<u>Exhibit A</u>** attached hereto, of the entry of the proposed Record Date Order to each of the Debtors' creditors (the "<u>Record Date Order Notice</u>"), and will supplement such notice if and when new creditors make themselves known to the Debtors by requesting service pursuant to Bankruptcy Rule 2002 or filing a proof of claim.  The Record Date Order Notice will be provided within five

business days of the Record Date Order.  Thus, entry of the proposed Record Date Order at the early stages of these chapter 11 cases will provide all claimants with advance notice prior to any opportunity to trade in claims that any claims against the Debtors purchased after entry of the Record Date Order may ultimately be subject to the Sell-Down Procedures.  As a result, if a claimholder were required to sell down its holdings, the claimholder would have adequate notice and opportunity to effectuate the sell-down until shortly before the Debtors consummate a plan of reorganization.

### The Proposed Record Date Order Is Narrowly Tailored

19.    Approval of the proposed Record Date Order does not constitute approval of any Sell-Down Procedures, or even endorse the notion of Sell-Down Procedures.  Moreover, the Record Date Order will not impose a burden on any party since the Record Date Order alone— without a Sell-Down Order—will not affect the rights of any party.  As stated above, the Record Date Order merely establishes the Record Date as the effective date for any Sell-Down Procedures established in the future, and provides notice to claimholders and claims traders that if the Debtors eventually request and the Bankruptcy Court ultimately approves the Sell-Down Procedures, the Protected Amounts will be measured as of the Record Date and the claimholders may be subject to a required sell-down of any claims purchased after the Record Date.

20.    The relief requested herein is similar to relief granted in this and other jurisdictions. *See, e.g.*, *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. May 12, 2016) (establishing a record date for notice and sell-down procedures); *In re NII Holdings, Inc.*, Case No. 14-12611 (SCC) (Bankr. S.D.N.Y. Oct. 22, 2014) (same); *In re Hawker Beechcraft, Inc.*, Case No. 12-117873 (SMB) (Bankr. S.D.N.Y. May 30, 2012) (same); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. Jun. 16, 2017) (same); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. May 18, 2016) (same); *In re Penn Va. Corp.*, No. 16-32395 (KLP)

9

(Bankr. E.D. Va. May 13, 2016) (same).[6]  For the avoidance of doubt, entry of the Record Date
Order would in no way be deemed a determination of any kind that entry of a Sell-Down Order is
necessary or warranted in these chapter 11 cases and the Bankruptcy Court's review of any request
for entry of a Sell-Down Order would stand on its own merits notwithstanding the Bankruptcy
Court's entry of the Record Date Order as requested herein.

**Basis for Relief**

I.       **The Tax Attributes are Property of the Debtor's Estate.**

21.      Section 541 of the Bankruptcy Code provides that property of the estate comprises,
among other things, "all legal or equitable interests of the debtor in property as of the
commencement of the case." 11 U.S.C. § 541.  The Tax Attributes are property of the Debtors'
estates. *See, e.g.*, *Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential
Lines, Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991) ("We hold that the right to a carryforward
attributable to its . . . NOL was property of [the debtor's] bankruptcy estate."), *cert. denied*, 502
U.S. 821 (1991); *In re Delta Air Lines, Inc.*, No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005)
(finding that NOLs are property of the debtors' estates); *In re Forman Enters., Inc.*, 273 B.R. 408,
416 (Bankr. W.D. Pa. 2002) (same); *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417,
424 (Bankr. S.D.N.Y. 1998) (same).  Section 362(a)(3) of the Bankruptcy Code, moreover, stays
"any act [of an entity] to obtain possession of property of the estate or of property from the estate
or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  Because the Tax
Attributes are property of the Debtors' estates, the Debtors have a duty to take steps to preserve
them, and this Court has the authority under section 362 of the Bankruptcy Code to enforce the

---

6    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.
     Copies of these orders are available upon request of the Debtors' proposed counsel.

10

automatic stay by taking steps to restrict the transfer of claims that could jeopardize the existence of these valuable assets.

## II. The Requested Relief Is Necessary to Avoid Immediate and Irreparable Harm to the Debtors.

22.     Entry of the Record Date Order will not affect the rights of any party in interest; instead, it will set and preserve the Record Date should Sell-Down Procedures eventually become necessary to avoid the imposition of an irrevocable limitation on the Debtors' utilization of the Tax Attributes.   Whether or not the Debtors request—and the Bankruptcy Court ultimately implements—the Sell-Down Procedures, entry of the Record Date Order protects the Debtors' option to choose to preserve the Tax Attributes without prejudicing any party in interest.   To preserve their ability to request and implement the Sell-Down Procedures, the Debtors seek to notify claims traders prospectively that claims acquired after the Record Date may be subject to sell-down.   Entry of the Record Date Order will preserve the Debtors' flexibility to seek to implement the Sell-Down Procedures if they determine that proposing a plan of reorganization that would take advantage of the Section $382(l)(5)$ Exception is in the best interest of their estates. Without the Record Date Order fixing the Record Date on or about the commencement of these chapter 11 cases, it is unlikely that the Debtors would ever be able to implement the Sell-Down Procedures and thereby avoid limitations on, and possibly the loss of, the Tax Attributes.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

23.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors operations and cause irreparable harm.   Furthermore, the failure to receive

the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

24.    To successfully implement the foregoing, the Debtors request that the Bankruptcy Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

25.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Bankruptcy Court grants the relief sought herein, any payment made pursuant to the Bankruptcy Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

12

## Motion Practice

26.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of its application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## Notice

27.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agent under the proposed postpetition debtor in possession financing facility; (d) the administrative agents and indenture trustees under the Debtors' prepetition credit agreement and note indentures; (e) Milbank LLP, counsel to an *ad hoc* group of second lien noteholders; (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel to an *ad hoc* group of first lien term lenders; (g) Shearman & Sterling LLP, counsel to the Midwest noteholders; (h) the Pension Benefit Guaranty Corporation; (i) the United States Attorney's Office for the Southern District of New York; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the attorneys general in the states where the Debtors conduct their business operations; (m) the Federal Communications Commission; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

28.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

13

WHEREFORE, the Debtors respectfully requests that the Bankruptcy Court enter the

Record Date Order granting the relief requested herein and such other relief as the Bankruptcy

Court deems appropriate under the circumstances.

Dated:  February 25, 2019
New York, New York

/s/ Stephen E. Hessler
Stephen E. Hessler, P.C.
Marc Kieselstein, P.C.
Cristine Pirro Schwarzman
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
Brad Weiland (*pro hac vice* pending)
John R. Luze (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WINDSTREAM HOLDINGS, INC., *et al.,*[1] | ) | Case No. 19-22312 (RDD) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### ORDER ESTABLISHING A RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES FOR TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Record Date Order"), establishing an effective date for notification and sell-down procedures for trading in claims against the Debtors' estates, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this

---

[1]    The last four digits of Debtor Windstream Holdings, Inc.'s tax identification number are 7717.  Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/windstream.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  4001 North Rodney Parham Road, Little Rock, Arkansas 72212.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Within five business days after the entry of this Record Date Order, the Debtors shall provide notice, substantially in the form attached hereto as **Exhibit 1**, to each of the Debtors' known creditors of the terms of this Record Date Order.

3.      The Record Date Order Notice is deemed adequate and sufficient so that, if the Bankruptcy Court ultimately approves a Sell-Down Order, claimholders that acquire claims after the date of this Record Date Order, namely the Record Date, in an amount that would entitle them to receive more than 4.5 percent of the stock of the reorganized Debtors, may be subject to a required sell-down of any claims purchased after the Record Date to the extent authorized by the Bankruptcy Court after appropriate opportunity for notice and a hearing.

4.      Entry of this Record Date Order shall in no way be deemed a determination of any kind that entry of a Sell-Down Order is necessary or warranted in these cases and this Court's review of any request for entry of a Sell-Down Order shall be without regard to entry of this Record Date Order.

5.      The entry of this Record Date Order shall in no way prejudice the rights of any party to oppose the entry of a Sell-Down Order, on any grounds, and all parties' rights are expressly preserved hereby.

6.      The requirements set forth in this Record Date Order are in addition to the requirements of applicable law and do not excuse compliance therewith.

7.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

8.      All time periods set forth in this Record Date Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

9.      Notwithstanding anything to the contrary, the terms and conditions of this Record Date Order are immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Record Date Order in accordance with the Motion.

11.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Record Date Order.

White Plains, New York
Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Proposed Record Date Order Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| WINDSTREAM HOLDINGS, INC., *et al.*,[1] | ) | Case No. 19-22312 (RDD) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE OF ENTRY OF AN ORDER ESTABLISHING A
RECORD DATE FOR NOTICE AND SELL-DOWN PROCEDURES
FOR TRADING IN CERTAIN CLAIMS AGAINST THE DEBTORS' ESTATES**

**TO:  ALL ENTITIES (AS DEFINED BY SECTION 101(15) OF THE BANKRUPTCY
CODE) THAT HOLD CLAIMS AGAINST THE DEBTORS:**

**PLEASE TAKE NOTICE THAT** on February 25, 2019 (the "Petition Date"), the

above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a petition

with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Subject

to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain

possession of property of the Debtors' estate or property from the Debtors' estate or to exercise

control over property of the Debtors' estate.

**PLEASE TAKE FURTHER NOTICE THAT** on the Petition Date, the Debtors filed the

*Debtors' Motion for Entry of an Order Establishing a Record Date for Notice and Sell-Down*

*Procedures for Trading in Certain Claims Against the Debtors' Estates* [Docket No. __]

(the "Motion").

---

[1]   The last four digits of Debtor Windstream Holdings, Inc.'s tax identification number are 7717.  Due to the large
number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a
complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided
herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and
noticing agent at http://www.kccllc.net/windstream.  The location of the Debtors' service address for purposes of
these chapter 11 cases is:  4001 North Rodney Parham Road, Little Rock, Arkansas 72212.

**PLEASE TAKE FURTHER NOTICE THAT** on _____, 2019, the Bankruptcy Court entered the *Order Establishing a Record Date for Notice and Sell-Down Procedures for Trading in Certain Claims Against the Debtors' Estates* [Docket No. __] (the "Record Date Order") establishing an effective date for notice and the Sell-Down Procedures (as defined in the Motion) for trading in claims against the Debtors' estates.  The "Record Date" is the date the Record Date Order was entered, namely _____, 2019.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Record Date Order, claimholders and potential purchasers of claims against the Debtors are hereby notified that, if the Bankruptcy Court ultimately approves a Sell-Down Order, claimholders that acquire claims after the Record Date in an amount that would entitle them to receive more than 4.5 percent of the stock of the reorganized Debtors under the Debtors' plan of reorganization may be subject to a required sell-down of any claims purchased after the Record Date.

**PLEASE TAKE FURTHER NOTICE THAT** all persons or entities that acquired debt claims against the Debtors after the Record Date and currently hold such claims in such an amount that the persons or entities holding such claims would be entitled to receive more than 4.5 percent of the equity of the reorganized Debtors under the Debtors' plan of reorganization shall be required to identify themselves to the Debtors after the Bankruptcy Court's approval of the disclosure statement which identifies potential recoveries for creditors.

**PLEASE TAKE FURTHER NOTICE THAT** complete copies of the Motion and Record Date Order, with additional information about the Record Date and possible Sell-Down Order, are available via PACER on the Bankruptcy Court's website at https://ecf.nysb.uscourts.gov for a fee, or free of charge by accessing the Debtors' restructuring website at http://www.kccllc.net/windstream.

**PLEASE TAKE FURTHER NOTICE THAT**, the entry of the Record Date Order shall in no way prejudice the rights of any party to oppose the entry of a Sell-Down Order, on any grounds, and that all parties' rights are expressly preserved hereby.

**PLEASE TAKE FURTHER NOTICE THAT** the requirements set forth in this notice are in addition to the requirements of applicable law and do not excuse compliance therewith.

[*Remainder of page intentionally left blank*]

3

Dated: _____, 2019
New York, New York

/s/ _____

Stephen E. Hessler, P.C.
Marc Kieselstein, P.C.
Cristine Pirro Schwarzman
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
Brad Weiland (*pro hac vice* pending)
John R. Luze (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*