Scott E. Jenny, Esq. – State Bar No. 166111
JENNY & JENNY, LLP
736 Ferry Street
Martinez, California 94553
Telephone: (925) 228-1265
Facsimile: (925) 228-2841

Attorney for Andrew M. Kleiber,
Marisa T. Mulladi-Kleiber, John L. Hansen,
Adam J. McNulty, Lucille J. McNulty,
Mario Oliveros, Jr. and Phoebe Wong-Oliveros

**FILED**

MAR 27 2019

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION, INC.,<br><br>    Debtor in Possession<br><br>Defendants. | **Bankruptcy Case Nos.: 19-30088 DM**<br>**Chapter 11**<br>**Hon. Dennis Montali**<br>**(Lead Case) (Jointly Administered)**<br><br>**JOINDER TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 362, AND 363 AND FED. R. BANKR. P. 2002, 4001, AND 6004**<br><br>Date: April 10, 2019<br>Time: 1:30 p.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102<br><br>**Objection Deadline:** April 3, 2019, 4:00 p.m. |

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PG&E MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. THESE CASES WERE FILED BY PG&E AND NOT SUBJECT TO
A STAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. THE MOTION AND RELIEF REQUESTED ARE PROPER AND
SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V. CAUSE EXISTS TO LIFT THE AUTOMATIC STAY WITH
RESPECT TO CERTAIN EMINENT DOMAIN PROCEEDINGS . . . . . . . . 7

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF CASES

**Cases**           **Page**

*Aalfs v. Wirum (In re Straightline Invs., Inc.)*
    (9th Cir. 2008) 525 F.3d 870, 879 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Certain Underwriters at Lloyds, Syndicated 2623/632 v. GACN, Inc.
(In re GACN, Inc.)*
    (Bankr. 9th Cir. 2016) 555 B.R. 684, 694 . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*
    (9th Cir. 1990) 912 F.2d 1162, 1166 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Commercial Mortg. & Fin. Co.*
    (Bankr. N.D. Ill. 2009) 414 B.R. 389, 393 . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Curtis*
    (Bankr. D. Utah 1984) 40 B.R. 795 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re First Prot., Inc.,*
    (B.A.P. 9th Cir. 2010) 440 B.R. 821, 832-33 . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Kronemyer*
    (9th Cir. BAP 209) 405 B.R. 915, 921 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Mellor*
    (9th Cir. 1984) 734 F.2d 1396, 1398 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Merrick*
    (9th Cir. BAP 1994) 175 B.R. 333, 337. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Miller*
    (9th Cir. BAP 2001) 262 B.R. 499, 507 fn 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Nellson Nutraceutical, Inc.*
    (Bankr. D. Del 2007) 369 B.R. 787, 796. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Roth Am., Inc.*
    (3rd Cir. 1992) 975 F.2d at 949, 952 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*In re Schwartz*
    (9th Cir. 1992) 954 F.2d 569, 571. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re White*
    (9th Cir. BAP 1995) 186 B.R. 700, 703-07. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re First Prot., Inc.*
    (S.D. Cal. 2003) 440 B.R. 821, 832-33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Maritime Elec. Co., Inc. v. United Jersey Bank*
    (3rd Cir.1991) 959 F.2d 1194, 1206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mataya v. Kissinger (In re Kissinger)*
    (9th Cir. 1995) 72 F.3d 107, 108-09. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*
    (2d Cir. 1997) 114 F.3d 379, 284 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Meoli v. Am. Med. Serv. Of San Diego*
    (S.D. Cal. 2003) 287 B.R. 808, 817 n.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tucker v. Sambo's Rests., Inc. (In re Sambo's Rests., Inc.)*
    (B.A.P. 9th Cir. 1984) 38 B.R. 764, 765 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Watford v. S. Cent. Farm Credit, ACA (In re Watford)*
    (M.D. Ga. 1993) 159 B.R. 597, 599. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Other Authorities**

§ 105 Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

§ 363(c) (1) Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY JUDGE, DEBTOR, DEBTOR'S ATTORNEY, THE UNITED STATES TRUSTEE AND OTHER PARTIES IN INTEREST:**

## I. INTRODUCTION.

On March 20, 2019, PG&E filed a MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 362, AND 363 AND FED. R. BANKR. P. 2002, 4001, AND 6004 FOR AN ORDER (I) AUTHORIZING DEBTORS TO (a) SELL, TRANSFER, LEASE OR OTHERWISE ENCUMBER REAL PROPERTY, (b) ENTER INTO ACQUISITION, LEASE, LICENSE, AND PERMIT AGREEMENTS RELATING TO THIRD-PARTY PROPERTY, AND (c) PURSUE AND BRING EMINENT DOMAIN PROCEEDINGS TO JUDGMENT OR ENTER INTO SETTLEMENTS IN LIEU THEREOF, SUBJECT TO CERTAIN PROCEDURES AND PARAMETERS, AND (II) GRANTING RELATED RELIEF.

This firm represents seven private Property Owners (Owners) in four pending eminent domain cases filed by PG&E. PG&E obtained early possession of the properties and constructed a transmission line project on and adjacent to the property taken from these Owners. The four eminent domain cases were litigated, multiple depositions were taken, and the parties all attended a mediation session at JAMS before the Hon. Scott W. Snowden (Ret). All four cases settled at the JAMS mediation. The settlement documents have been prepared and signed by all Owners (and also necessary lenders with an interest in the properties). Before PG&E was able to sign the settlement agreements, this bankruptcy was filed.

On behalf of the seven Owners in the four cases, we file this Joinder to PG&E's Motion.

The Project for which PG&E is taking property from these four Owners is for the Moraga-Oakland 115kv electric transmission line in Shepherd Canyon. PG&E replaced two existing towers with two self-weathering tubular steel poles and relocated the new poles approximately 170 and 250 feet north of their prior locations. The scope of work includes the installation of overhead crossarms, wires and cables necessary for the transmission and distribution of electric energy, and for communication purposes.

-1-

The four cases are described as:

A. PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff, vs. ANDREW M. KLEIBER AND MARISA T. MULLADI-KLEIBER, et al., Defendants, Alameda County Superior Court No. RG17887102.

B. PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff, vs. JOHN L. HANSEN, TRUSTEE OF THE JOHN L. HANSEN REVOCABLE TRUST DATED JULY 24, 2000, et al., Defendants, Alameda County Superior Court No. RG17887206.

C. PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff, vs. ADAM J. McNULTY AND LUCILLE J. McNULTY, TRUSTEES OF THE McNULTY FAMILY LIVING TRUST, et al., Defendants, Alameda County Superior Court No. RG17887443.

D. PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff, vs. MARIO OLIVEROS JR., PHOEBE WONG-OLIVEROS, et al., Defendants Alameda County Superior Court No. RG17887360.

In the Montclair cases, PG&E made a motion for immediate possession of the properties, which was granted. The result is that PG&E has already taken the Owners' property, built the Project (including towers on the properties), yet the Owners have not received a dollar of just compensation.

Unless PG&E is permitted to proceed with the eminent domain cases, the Property Owners will continue to have lost their property without payment of just compensation.

## II. PG&E's MOTION.

After settling the four cases, PG&E's eminent domain counsel advised undersigned counsel that PG&E would be filing this Motion. PG&E filed its Motion (the "Motion") pursuant to sections 105(a), 362, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order (I) authorizing the Debtors to (a) sell, transfer, lease, encumber or otherwise deal with real property interests, including without limitation, fee interests, leasehold interests, temporary and permanent easements, utility relocation agreements, conservation easements, land use restrictions, temporary and permanent licenses, and agreements or options to transfer or acquire the same (collectively, "Real Property Interests")

-2-

held by the Debtors, (b) enter into agreements to acquire or otherwise deal with Real Property Interests, (c) pursue and bring eminent domain proceedings to judgment or enter into settlements in lieu thereof, (d) implement procedures for the review and approval of such transactions, each subject to certain parameters and (II) granting other related relief.

As an initial matter, the automatic stays on these four cases were improper as the four cases were instituted by PG&E (argued further below).

As it relates to these four eminent domain cases, PG&E correctly states that in certain circumstances where PG&E is unable to reach an agreement for the acquisition of land rights, PG&E is permitted to commence an eminent domain action to condemn property that is required for the provision of its utility service. These actions either result in a court ruling or settlement with the third-party property owner that requires PG&E to provide just compensation for the property being condemned. That is exactly what occurred in our four cases.

If its Motion is granted, PG&E would be permitted to enter into or consummate the following ordinary course transactions without review or approval by the Committees or the Court:

> A. Any transaction involving an individual Real Property Interest where the consideration in question is below $5 million;
>
> B. Any sale of an individual Real Property Interest pursuant to the exercise of an eminent domain action or settlement in lieu thereof, and any stipulation to lift the automatic stay to allow the applicable condemning authority to pursue any such eminent domain proceeding, where the consideration in question is below $1 million;
>
> C. Any lease or license of a Real Property Interest by PG&E where the initial annual rental obligation or license fee is below $500,000 (with the annual rental obligation or license fee in subsequent years subject to commercially reasonable escalations); and
>
> D. Any acquisition of a Real Property Interest by PG&E's exercise of eminent domain or a settlement in lieu thereof where the consideration in question is below $2 million.

As set forth in theDeclarations of Property Owners Adam McNulty, John Hansen, Mario Oliveros and Andy Kleiber (all filed and served herewith) each of the four eminent domain cases herein described is far below $1,000,000.00 (with settlements of $200,000.00, $140,000.00, $130,000.00 and $100,000.00) and therefore would be able to be resolved if this Motion is granted.

### III. THESE CASES WERE FILED BY PG&E AND NOT SUBJECT TO A STAY.

As an initial matter, in these eminent domain cases, PG&E took affirmative, intentional action to take private property belonging to these property owners. The property owners did not engage in contracts with PG&E, did not invest in PG&E, and did not voluntarily engage in any actions with PG&E whatsoever. Nor are these cases the result of any allegations of negligence on the part of PG&E. PG&E filed these cases with the express intent of taking private property for PG&E projects. While this is not nefarious, it distinguishes eminent domain cases from all other "creditors" in the bankruptcy proceeding.

These eminent domain cases are not subject to automatic stays in bankruptcy. As soon as a bankruptcy petition is filed, an *automatic stay* goes into effect and generally prevents creditors (and other parties) from taking most actions against property of the bankruptcy estate, the debtor, or the debtor's property. 11 U.S.C. § 362. One of the primary purposes of the stay is to stop creditors from harassing a debtor with lawsuits or other collection attempts that may further dissipate the debtor's energy and financial resources. It also prevents creditors (especially secured creditors) from carrying off assets that are necessary to the debtor's livelihood or business. *In re Schwartz* (9th Cir. 1992) 954 F.2d 569, 571.

To further this purpose, the stay generally prohibits any act to enforce pre-petition claims against the debtor, the debtor's property, or the property of the bankruptcy estate. 11 U.S.C. § 362, subd. (a)(1) – (8). The stay also protects estate property from various post-petition claims. 11 U.S.C. § 362, subd. (a)(4). Further, the stay generally applies to suspend any non-bankruptcy court's authority to continue judicial proceedings pending *against* the

-4-

debtor. *Maritime Elec. Co., Inc. v. United Jersey Bank* (3rd Cir. 1991) 959 F.2d 1194, 1206. The stay continues until a court order lifting the stay has been entered or the stay expires. 11 U.S.C. §362; *In re Mellor* (9th Cir. 1984) 734 F.2d 1396, 1398.

Notwithstanding the above, the automatic stay does not limit the *debtor's* ability to act. Indeed, since the primary purpose of the automatic stay is to *protect a debtor* from action by a creditor, the stay does *not apply* to actions taken *by* the debtor. *In re Merrick* (9th Cir. BAP 1994) 175 B.R. 333, 337. As a result, defendants in an action commenced *by* the debtor as a plaintiff are *not stayed* from answering the complaint or defending an action. *Id.* at 338 ("[a]n equitable principle of fairness requires a defendant to be allowed to defend himself . . ."); *see In re White* (9th Cir. BAP 1995) 186 B.R. 700, 703 – 07 (the defendant's demurrers to debtor plaintiff's suit not stayed); *see In re Miller* (9th Cir. BAP 2001) 262 B.R. 499, 507, fn. 11 (defense of action initiated by debtor not stayed). The language of the statute that prescribes the automatic stay is in conformity with this case law. 11 U.S.C. § 362, subd. (a)(1) (staying actions "against the debtor").

Since the eminent domain cases were clearly commenced by PG&E, the bankruptcy debtor, it is not affected by PG&E's bankruptcy filing. Thus, this Court should permit the Owners' cases to proceed.

## IV. THE MOTION AND RELIEF REQUESTED ARE PROPER AND SHOULD BE GRANTED

The relief requested herein is appropriate under sections 363 and 105(a) of the Bankruptcy Code. As stated by PG&E, Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of this section is to provide a debtor with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the Court. *Meoli v. Am. Med. Serv. of San Diego*, 287 B.R. 808, 817 n.3 (S.D. Cal. 2003) (stating that 363(c)(1) is designed to provide "wide-ranging management authority over the debtor"); see also *In re First Prot., Inc.*, 440 B.R. 821, 832–33

-5-

(B.A.P. 9th Cir. 2010) (a debtor may "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and to use property of the estate in the ordinary course of business without notice or a hearing" when the debtor's business is being operated under sections 1107 and 1108 of the Bankruptcy Code); *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue "routine transactions." See *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's "making of routine, day-to-day business decisions") (citations omitted). The Bankruptcy Code does not define "ordinary course of business." *In re Commercial Mortg. & Fin. Co.*, 414 B.R. 389, 393 (Bankr. N.D. Ill. 2009). "Two tests have emerged for determining whether a transaction is within the ordinary course of business for purposes of § 363(c) – the vertical dimension, or creditor's expectation, test, and the horizontal dimension test. If both tests are satisfied, the court must conclude that the challenged transaction occurred in the debtor's ordinary course of business." *Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 879 (9th Cir. 2008). "The vertical dimension, or creditor's expectation test, views the disputed transaction from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit." Id. (internal quotations and citations omitted). "Under the horizontal dimension test, the question is whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." Id. at 880–81 (internal quotations and citations omitted). Under both the horizontal test and the vertical test, PG&E's Real Property Interest transactions discussed above are in the ordinary course of PG&E's businesses. See *Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (finding that "ordinary course of business" is meant "to embrace the reasonable

-6-

expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business.") (quoting *Watford v. S. Cent. Farm Credit, ACA* (*In re Watford*), 159 B.R. 597, 599 (M.D. Ga. 1993)); *In re Roth Am., Inc.*, 975 F.2d at 952 (stating that section 363 of the Bankruptcy Code is designed to allow a debtor in possession "flexibility to engage in ordinary transactions without unnecessary . . . oversight"). Under the horizontal test, transactions involving the acquisition and disposition of Real Property Interests are typical among utilities and critical to ensure that a utility can provide services to its customers. Utilities routinely enter into Real Property Interest transactions similar to those covered by the procedures proposed herein.

The Owners agree and believe the transactions addressed in this Motion are ordinary course and authorized pursuant to section 363(c) of the Bankruptcy Code.

As stated by PG&E's Motion, the Court has authority under sections 363(c) and 105(a) of the Bankruptcy Code to grant this Motion. Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." For the reasons discussed herein, the authorizations sought by this Motion plainly will facilitate the efficient and economical administration of the Debtors' estates for the benefit of all parties in interest. Accordingly, pursuant to this Court's authority and discretion under section 105(a), the Court should authorize PG&E to continue its past practices and freely enter into these Real Property Interest transactions, subject to the procedures and parameters set forth above.

To the extent applicable, the procedures satisfy Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 2002.

### V. CAUSE EXISTS TO LIFT THE AUTOMATIC STAY WITH RESPECT TO CERTAIN EMINENT DOMAIN PROCEEDINGS

PG&E's proposed procedures provide that stipulations to lift the automatic stay with respect to certain eminent domain proceedings should not require any further order by the Court. PG&E submits that, to the extent that the automatic stay is applicable to these actions,

-7-

cause exists under section 362(d)(1) of the Bankruptcy Code to lift the stay. Pursuant to section 362(d)(1) of the Bankruptcy Code, courts shall grant relief from the automatic stay for "cause." 11 U.S.C. § 362(d)(1). "Such relief may include 'terminating, annulling, modifying, or conditioning such stay.'" *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108–09 (9th Cir. 1995) (quoting 11 U.S.C. § 362(d)). Whether "cause" exists is determined on a case-by-case basis, *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citation omitted), and is left to the discretion of the judge. *Tucker v. Sambo's Rests., Inc. (In re Sambo's Rests., Inc.)*, 38 B.R. 764, 765 (B.A.P. 9th Cir. 1984) (citation omitted).

Here, the Owners ask that the automatic stays be lifted as improperly filed. Owners do not believe a stipulation to lift the stays is necessary. The stays should be lifted by this Court at least to the four eminent domain cases addressed herein.

PG&E filed eminent domain lawsuits in the Alameda County Superior Court in each of the four cases at issue in this matter to take property from the Property Owners and pay just compensation as required by the California Constitution. These State Court actions solely concern the rights of PG&E to take the property and to pay the required just compensation. The taking of the property, which has already taken place, and the just compensation, which was agreed upon at mediation, are 100% questions of California state law and unrelated in any manner to bankruptcy law. As such, these matters are non-core matters as they have been brought in another court (the Alameda County Superior Court).

A party may move for relief from an automatic stay under 11 U.S. C. §362, which provides that a bankruptcy court shall grant relief from a stay upon a showing of cause. (11 U.S.C. §362 (d)(1).) The court determines the issue of cause on a case-by-case basis. (*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990).

The Court in *In re Tucson Estates, Inc.* stated that "[w]here a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for lifting the stay as the state court trial" (*Id.* at 1166). The elements of

-8-

mandatory abstention are: (1) A timely motion; (2) a purely state law question; (3) a non-core proceeding; (4) a lack of independent federal jurisdiction absent the petition under title 11; (5) that an action is commenced in a state court; (6) the state court action may be timely adjudicated: (7) a state forum of appropriate jurisdiction exists. (*Certain Underwriters at Lloyds, Syndicates 2623/632 v. GACN, Inc.* (*In re GACN, Inc.*) (Bankr.9th Cir. 2016) 555 B.R. 684, 694.

The elements are satisfied in the four State Court Actions that PG&E filed against the defendants herein. PG&E recently filed for bankruptcy, the State Court actions involve purely state court questions regarding eminent domain and just compensation. The State Court Actions were filed by PG&E and involve only issues of just compensation, which was agreed upon at a successful mediation. As such, the four State Court Actions will be resolve through payment of the agreed upon just compensation and the filing of a Judgment in Condemnation.

Moreover, the defendants in these actions have to look at the PG&E towers daily, and once just compensation is paid and the cases dismissed, they can go on with their lives. No reasonable chance exists that the complex PG&E bankruptcy will be resolved before the State Court Actions are dismissed.

The next issue to be discussed in determining whether cause exists to permit an action to proceed in a non-bankruptcy forum are the twelve factors set forth in *In re Curtis*. (*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).) The *Curtis* factor are:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

-9-

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f)10;

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

12. The impact of the stay on the parties and the "balance of hurt."

The Ninth Circuit has recognized that "the Curtis factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." (*In re Kronemyer,* 405 B.R. 915, 921 (9th Cir. BAP 2009).) While the *Curtis* factors are used to determine the existence of cause, not all of the factors will be relevant in all cases, nor is a court required to give each of the twelve factors equal weight. (*Plumberex*, 311 B.R. at 560).

With regard to the four State Court Actions, Factors 3, 4, 5, 6, 8, and 9 are inapplicable. The remaining Factors support relief from the stay in this action:

Factor 1: Whether the relief will result in a partial or complete resolution of the issues. The four State Court Actions were all settled at a mediation. All that remains is for settlement documents to be signed and payment to be made to the Owners, and for PG&E's counsel to prepare the final judgment paperwork, which will then result in a complete resolution of the issues. This factor thus favors relief from stay.

-10-

Factor 2: The lack of any connection with or interference with the bankruptcy case. Resolution of the four State Court Actions will not interfere with the bankruptcy case. The State Court Actions did not cause the bankruptcy and are insignificant matters to the bankruptcy, which was caused by and is driven by liability for the California fires. This factor favors relief from stay.

Factor 7: Whether the litigation in another forum would prejudice the interest of other creditors, the creditor's committee and other interested parties. These State Court matters were initiated, filed, and litigated by PG&E, and ultimately settled prior to the filing of the bankruptcy. This factor favors relief from stay.

Factor 10: The interests of judicial economy and the expeditious and economical determination of litigation for the parties. Judicial economy would be well served by granting relief from stay for these 4 State Court Actions, which involve issues of easement and just compensation, not bankruptcy issues. The bankruptcy docket is now over 1,000 entries and there is no reason to add to the Court's burden with these already settled matters. This factor favors relief from stay.

Factor 11: Whether the foreign proceedings have progressed to the point where the parties are prepared for trial. There will be in fact no need for a trial as, again, these cases have settled at mediation. All that needs to be done is payment from PG&E and the preparation and filing of final judgment paperwork. This factor favors relief from stay.

Factor 12: The impact of the stay and the balance of hurt. The defendants in these four actions are hard working Property Owners. They have had their property taken by PG&E, and have to look at enormous electrical towers and lines every day. The value of their properties has been diminished by the building of said towers and lines. Their homes are their largest investments and the California Constitution states they should be paid just compensation for their loss, and eminent domain actions are given preference in State Court Actions due to the formidable power being used by the government (PG&E in these cases). This factor favors relief from stay. The defendants settled their cases at mediation, which stopped all costs and

-11-

expenses necessary for the litigation. To force them to litigate in the bankruptcy court would significantly increase their costs. Rather than be caught in a massive Chapter 11 bankruptcy court case, relief from stay would allow the four cases to resolve quickly. The stay, without relief, would significantly prejudice the Property Owners in these cases. The impact of the stay and the balance of hurt strongly favors the defendant Property Owners in these cases.

**VI.    CONCLUSION.**

Owners hereby Join PG&E's Motion to the extent it requests the following relief (as to other issues, Owners offer no position):

> PG&E would be permitted to enter into or consummate the following ordinary course transactions without review or approval by the Committees or the Court:
>
> A.    Any transaction involving an individual Real Property Interest where the consideration in question is below $5 million;
>
> B.    Any sale of an individual Real Property Interest pursuant to the exercise of an eminent domain action or settlement in lieu thereof, and any stipulation to lift the automatic stay to allow the applicable condemning authority to pursue any such eminent domain proceeding, where the consideration in question is below $1 million;
>
> C.    Any lease or license of a Real Property Interest by PG&E where the initial annual rental obligation or license fee is below $500,000 (with the annual rental obligation or license fee in subsequent years subject to commercially reasonable escalations); and
>
> D.    Any acquisition of a Real Property Interest by PG&E's exercise of eminent domain or a settlement in lieu thereof where the consideration in question is below $2 million.

As stated above, the only addition/change is that Owners request that the automatic stays be lifted as to these four eminent domain cases without need of stipulation.

DATED: 3/26, 2019         JENNY & JENNY, LLP

By: _____
SCOTT E. JENNY, ESQ.
ATTORNEY FOR PROPERTY OWNERS

-12-