1    UNITED STATES BANKRUPTCY COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    -oOo-

4    In Re:                        ) Case No. 19-30088
                                    ) Chapter 11
5    PG&E CORPORATION AND PACIFIC   )
     GAS AND ELECTRIC COMPANY.      ) San Francisco, California
6                                   ) Wednesday, March 27, 2019
                        Debtors.    ) 9:30 AM
7    _____

8                                   ADV#: 19-03006
                                    PG&E CORPORATION, ET AL. v.
9                                   PUBLIC EMPLOYEES RETIREMENT
                                    ASSOCIATION OF NEW MEXICO, ET
                                    AL.
10
                                    [10] MOTION OF DEBTORS
11                                  PURSUANT TO 11 U.S.C.
                                    SECTIONS 105(A) AND 362 FOR
12                                  INTERIM AND FINAL ORDERS
                                    ESTABLISHING NOTIFICATION
13                                  PROCEDURES AND APPROVING
                                    RESTRICTIONS ON CERTAIN
14                                  TRANSFERS OF STOCK OF AND
                                    CLAIMS AGAINST THE DEBTORS.
15
                                    [23] MOTION OF DEBTORS
16                                  PURSUANT TO 11 U.S.C.
                                    SECTIONS 105, 362, 363, 364,
17                                  503, AND 507 AND FED. R.
                                    BANKR. P. 2002, 4001, 6003,
18                                  6004 AND 9014 FOR INTERIM AND
                                    FINAL ORDERS (I) AUTHORIZING
19                                  THE DEBTORS TO OBTAIN SENIOR
                                    SECURED, SUPERPRIORITY, POST-
20                                  PETITION FINANCING, (II)
                                    GRANTING LIENS AND
21                                  SUPERPRIORITY CLAIMS, (III)
                                    MODIFYING THE AUTOMATIC STAY,
22                                  (IV) SCHEDULING FINAL HEARING
                                    AND (V) GRANTING RELATED
23                                  RELIEF.

24                                  [770] CORRECTED MOTION FOR
                                    DEBTORS PURSUANT TO 11 U.S.C.
25                                  SECTIONS 363(B) AND 105(A)

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 1 of
101

1                        FOR AUTHORITY TO CONTINUE
                         PERFORMANCE UNDER PRE-

2                        PETITION SETTLEMENT AGREEMENT
                         WITH BUTTE COUNTY DISTRICT

3                        ATTORNEY'S OFFICE TO FUND
                         ENHANCED FIRE PREVENTION AND

4                        COMMUNICATIONS PROGRAM.

5                        [8] MOTION FOR DEBTORS
                         PURSUANT TO 11 U.S.C.

6                        SECTIONS 105(A), 363(B), AND
                         507 AND FED. R. BANKR. P.

7                        6003 AND 6004 FOR INTERIM AND
                         FINAL AUTHORITY TO (I) PAY

8                        PRE-PETITION WAGES, SALARIES,
                         WITHHOLDING OBLIGATIONS, AND

9                        OTHER COMPENSATION AND
                         BENEFITS; (II) MAINTAIN

10                       EMPLOYEE BENEFITS PROGRAMS;
                         AND (III) PAY RELATED

11                       ADMINISTRATIVE OBLIGATIONS.

12                       IN ADVERSARY:
                         [2] MOTION FOR PRELIMINARY

13                       INJUNCTION FILED BY PG&E
                         CORPORATION.

14                 TRANSCRIPT OF PROCEEDINGS

15            BEFORE THE HONORABLE DENNIS MONTALI
             UNITED STATES BANKRUPTCY JUDGE

16     APPEARANCES:

17     For the Debtors:          JANE KIM, ESQ.
                         Keller & Benvenutti LLP

18                       650 California Street
                      Suite 1900

19                       San Francisco, CA 94108
                      (415)364-6793

20

                      PAUL H. ZUMBRO, ESQ.

21                       Cravath, Swaine & Moore LLP
                      Worldwide Plaza

22                       825 Eighth Avenue
                      New York, NY 10019

23                       (212)474-1036

24

25

```
 1   For the Debtors:           DAVID R. SINGH, ESQ.
                                Weil, Gotshal & Manges LLP
 2                              201 Redwood Shores Parkway
                                Redwood Shores, CA 94065
 3                              (650)802-3010

 4                              STEPHEN KAROTKIN, ESQ.
                                KEVIN BOSTEL, ESQ.
 5                              KEVIN KRAMER, ESQ.
                                Weil, Gotshal & Manges LLP
 6                              767 Fifth Avenue
                                New York, NY 10153
 7                              (212)310-8350

 8   For Official Creditors'    GREGORY A. BRAY, ESQ.
     Committee:                 THOMAS R. KRELLER, ESQ.
 9                              Milbank LLP
                                2029 Century Park East
10                              33rd Floor
                                Los Angeles, CA 90067
11                              (424)386-4470

12   For Ad Hoc Committee of    MATTHEW A. FELDMAN, ESQ.
     Subrogation Claims:        Willkie Farr & Gallagher LLP
13                              787 Seventh Avenue
                                New York, NY 10019
14                              (212)728-6099

15   For JPMorgan Chase as      KRISTOPHER M. HANSEN, ESQ.
     Administrative Agent for   ALON GOLDBERGER, ESQ.
16   the DIP Lenders:           (Telephonically)
                                Stroock & Stroock & Lavan LLP
17                              180 Maiden Lane
                                New York, NY 10038
18                              (212)806-6056

19   For Official Committee of  CECILY A. DUMAS, ESQ.
     Tort Claimants:            LAUREN T. ATTARD, ESQ.
20                              (Telephonically)
                                Baker Hostetler LLP
21                              11601 Wilshire Boulevard
                                Suite 1400
22                              Los Angeles, CA 90025
                                (310)442-8886

23

24

25
```

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 3 of
101

| | | |
|---|---|---|
| 1 | For CPUC: | BRIAN S. HERMANN, ESQ. |
| | | (Telephonically) |
| 2 | | ALAN KORNBERG, ESQ. |
| | | (Telephonically) |
| 3 | | Paul, Weiss, Rifkind, Wharton & |
| | | Garrison LLP |
| 4 | | 1285 Avenue of the Americas |
| | | New York, NY 10019 |
| 5 | | (212)373-3000 |
| | | |
| 6 | For International | W. STEVEN BRYANT, ESQ. |
| | Brotherhood of Electrical | (Telephonically) |
| 7 | Workers Local Union 1245: | Locke Lord LLP |
| | | 600 Congress Avenue |
| 8 | | Suite 2200 |
| | | Austin, TX 78701 |
| 9 | | (512)305-4700 |
| | | |
| 10 | For Enrique Guzman: | SHOUNAK S. DHARAP, ESQ. |
| | | JONATHAN E. DAVIS, ESQ. |
| 11 | | (Telephonically) |
| | | The Arns Law Firm |
| 12 | | 515 Folsom Street |
| | | San Francisco, CA 94105 |
| 13 | | (415)495-7800 |
| | | |
| 14 | For Itron, Inc. & Curtiss- | MICHAEL BUSENKELL, ESQ. |
| | Wright: | (Telephonically) |
| 15 | | Gellert Scali Busenkell & Brown, |
| | | LLC |
| 16 | | 1201 North Orange Street |
| | | Suite 300 |
| 17 | | Wilmington, DE 19801 |
| | | (302)425-5812 |
| 18 | | |
| | For NextEra: | KEVIN DONALDSON, ESQ. |
| 19 | | (Telephonically) |
| | | Nicklaus & Associates, P.A. |
| 20 | | 4651 Ponce de Leon Boulevard |
| | | Suite 200 |
| 21 | | Coral Gables, FL 33146 |
| | | (305)460-9888 |
| 22 | | |
| | | |
| 23 | | |
| | | |
| 24 | | |
| | | |
| 25 | | |

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 4 of
101

```
1   For Public Utilities        SANDER L. ESSERMAN, ESQ.
    Impacted by the Wildfires:  (Telephonically)
2                               Stutzman Bromberg Esserman &
                                Plifka, PC
3                               2323 Bryan Street
                                Suite 2200
4                               Dallas, TX 75201
                                (214)969-4910
5
    For Exelon and AVSR:        RICHARD W. ESTERKIN, ESQ.
6                               (Telephonically)
                                Morgan, Lewis & Bockius LLP
7                               300 South Grand Avenue
                                22nd Floor
8                               Los Angeles, CA 90071
                                (213)612-1163
9
    For Public Employees        RANDY MICHELSON, ESQ.
10  Retirement Association of    (Telephonically)
    New Mexico:                 Michelson Law Group
11                              220 Montgomery Street
                                Suite 2100
12                              San Francisco, CA 94104
                                (415)512-8600
13
    For CSISF:                  RICHARD C. PEDONE, ESQ.
14                              (Telephonically)
                                Nixon Peabody LLP
15                              53 State Street
                                Boston, MA 02109
16                              (617)345-1305

17  For Ghost Ship Warehouse:   ESTELA O PINO, ESQ.
                                (Telephonically)
18                              Pino & Associates
                                20 Bicentennial Circle
19                              Suite 200
                                Sacramento, CA 95826
20                              (916)641-2288

21  For BOKF, N.A.:             JORDANA L. RENERT, ESQ.
                                (Telephonically)
22                              Arent Fox LLP
                                1301 Avenue of the Americas
23                              42nd Floor
                                New York, NY 10019
24                              (212)457-5476

25
```

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 5 of
101

| | | |
|---|---|---|
| 1 | For Plaintiffs, Jenna, et al.: | NICHOLAS JP WAGNER, ESQ. (Telephonically) |
| 2 | | Wagner, Jones, Kopfman & Artenian |
| | | 1111 East Herndon Avenue |
| 3 | | Suite 317 |
| | | Fresno, CA 93720 |
| 4 | | (559)449-1800 |
| 5 | For Southern Power Company: | HARRIS B. WINSBERG, ESQ. (Telephonically) |
| 6 | | Troutman Sanders LLP |
| | | 600 Peachtree Street NE |
| 7 | | Suite 3000 |
| | | Atlanta, GA 30308 |
| 8 | | (404)885-3348 |
| 9 | For Tiger Natural Gas: | THOMAS D. LELAND, ESQ. |
| | | Holland & Knight LLP |
| 10 | | 1801 California Street |
| | | Suite 5000 |
| 11 | | Denver, CO 80202 |
| | | (303)974-6643 |
| 12 | | |
| 13 | For SLF Fire Victim Claimants: | CHRISTOPHER V. HAWKINS, ESQ. |
| | | Sullivan Hill Rez & Engel |
| | | 600 B Street |
| 14 | | Suite 1700 |
| | | San Diego, CA 92101 |
| 15 | | (619) 233-4100 |
| 16 | | |
| 17 | | |
| 18 | Court Recorder: | JANE GALVANI |
| | | United States Bankruptcy Court |
| 19 | | 450 Golden Gate Avenue |
| | | 16th Floor |
| 20 | | San Francisco, CA 94102 |
| 21 | Transcriber: | PENINA WOLICKI |
| | | eScribers, LLC |
| 22 | | 7227 N. 16th Street |
| | | Suite #207 |
| 23 | | Phoenix, AZ 85020 |
| | | (973)406-2250 |
| 24 | | |
| 25 | Proceedings recorded by electronic sound recording; transcript provided by transcription service. | |

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 6 of 101

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, MARCH 27, 2019, 9:30 AM

2                              -oOo-

3       (Call to order of the Court.)

4            THE CLERK:  Matter of PG&E Corporation.

5            MS. KIM:  Good morning, Your Honor.  For the record,

6    Jane Kim, Keller & Benvenutti on behalf of the debtors.

7            THE COURT:  Good morning.

8            MS. KIM:  We filed an agenda -- a proposed agenda --

9            THE COURT:  I got it.

10           MS. KIM:  -- yesterday before Your Honor signed the --

11   entered the order that resolved issue number 1 -- matter number

12   1 on the agenda.  We --

13           THE COURT:  So that's gone.  Right.

14           MS. KIM:  We have a suggested or a proposed change to

15   the reordering of the agenda, if it would be okay, with Your

16   Honor, where we would take the adversary proceeding matter

17   first --

18           THE COURT:  Okay.

19           MS. KIM:  -- and then deal with the main case matters

20   thereafter, in the same order that they are on the agenda.

21           THE COURT:  I was going to ask one of your colleagues,

22   if he had come to the podium first, what sequences he wanted me

23   to go in, so --

24           MS. KIM:  Well, then, I'm glad that we anticipated

25   that.  So unless Your Honor has any other -- any remarks that

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 7 of
101

1  you'd like to make --

2          THE COURT:  I had a question and a comment.  So but I

3  heard from one of our staff that one of the other matters had

4  been resolved.  Is that true?

5          MR. KAROTKIN:  Yes, sir.

6          THE COURT:  Okay.

7          MR. KAROTKIN:  The NOL motion has been resolved.

8          THE COURT:  So that's going to go off?

9          MR. KAROTKIN:  Yes, we can present the agreed-to order

10  with the exhibits --

11          THE COURT:  I've got to tell you, I had a thirty-seven

12  page draft publishable opinion on tax laws carry-forwards.

13          MR. KAROTKIN:  Well, we'd still love you to share that

14  with us, Your Honor.

15          THE COURT:  I have one question and just sort of

16  announcement.  I previously have indicated about some of the

17  housekeeping things we have to deal with on these huge amounts

18  of paper coming through.  And so within a day, probably today,

19  possibly tomorrow, I'll issue an amendment to what we call the

20  case management order -- Ms. Kim, you're familiar with this.

21          The amendment would just remind filers -- and it's

22  largely people that aren't filing heavy volume filing, like the

23  debtors' counsel are -- is that any time you have a hearing

24  date that's already been set, make sure the front page shows

25  the hearing date and shows the docket number that relates to

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 8 of
101

1  it.

2          I found that as this case has gotten huger and huger,

3  these long titles to documents without docket numbers make it

4  almost impossible to keep track of it.  And if we're having

5  trouble, maybe some of you are having trouble.

6          Pardon me for that.

7          And then the other question -- really, Mr. Kartokin,

8  this is just for you and your colleagues and the committees --

9  the two official committees, and the U.S. Trustee, where we're

10  now at about -- believe it or not -- two months into this case;

11  some people might think it seems longer -- and I would like to

12  hear back from at least those groups, you and the two

13  committees and the U.S.  Trustee, whether we should tweak

14  anything procedurally, like timing or when the hearings are or

15  how they're scheduled.

16          And I would request perhaps on a just informal basis,

17  if you, or Ms. Kim, if you get the job, if somebody would just

18  have an informal conversation with the principal players and

19  feel free to send an email to my courtroom deputy or

20  something -- again, we don't have to fix -- change anything,

21  but maybe there's -- we'd be better off, and some of you would

22  have some suggestions that might make it easier for people who

23  are traveling more.

24          The only thing that I've kind of sensed in the two

25  months we've been doing this, is that they come in kind of like

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 9 of
101

1    great big waves, breaking on the shore, and then the big wave

2    comes in, and then we have a break until a hearing two weeks

3    later.  And whether we should change that timing or anything

4    that will work.

5              I'm mindful of the huge number of people who have to

6    gear up and be ready for these hearings, and I want some

7    feedback if you think it's appropriate on how we can make it

8    more user-friendly if that's so.  But I don't need anything

9    today.  Just think about it.  And I'm not excluding any other

10   involved people, but if any other counsel or parties have a

11   thought, please let the debtors' principal counsel, or Ms. Kim,

12   if she's one of the principal counsel -- if somebody has some

13   ideas, so we just get some thoughts back here.

14             So end of that.  I'm ready to do the adversary

15   proceedings.

16             MS. KIM:  Very good, thank you, Your Honor.  We'll

17   confer and we'll get back to Ms. Parada.  And with that, I'm

18   going to turn the podium over to Mr. Singh of Weil Gotshal.

19             THE COURT:  Okay.  Let me -- Mr. Singh, wait one

20   second.  I just want to look at the sign-up list here for a

21   minute.

22             Yeah, okay, good morning.

23             MR. SINGH:  Good morning, Your Honor.  David Singh,

24   Weil, Gotshal & Manges, on behalf of the defendants -- or on

25   behalf of the debtors.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 10
of 101

1          THE COURT:  You can work both sides here.  It's okay.

2          MR. SINGH:  Glad we clarified that.

3          Your Honor, this is debtors' motion for preliminary

4    injunction as to actions against nondebtor co-defendants.

5    Debtors initially brought this motion with respect to twenty-

6    two related actions --

7          THE COURT:  I'm aware of it.

8          MR. SINGH:  -- but have subsequently reached

9    stipulations as to four of them and have dismissed them from

10   the -- four defendants from this proceeding.  We are also

11   engaged in ongoing discussions with the plaintiffs in the

12   securities action and they are not at issue at the moment with

13   respect to this motion.

14         So five of the original defendants in this action are

15   no longer at issue with respect to this preliminary injunction

16   proceeding.  And we are proceeding with respect to the other

17   seventeen today.

18         THE COURT:  But you're essentially asking for a

19   default for fourteen of them, aren't you?

20         MR. SINGH:  Correct.

21         THE COURT:  Yeah, okay.

22         MR. SINGH:  With respect to fourteen defendants who

23   did not --

24         THE COURT:  Right.

25         MR. SINGH:  -- oppose the preliminary injunction

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 11
of 101

1  motion.

2          THE COURT:  I can shortcut this by telling you that I

3  want to hear the three that were defending, but as to the other

4  fourteen, I'll ask if there's anyone who wants to be heard on

5  them, and I'll listen if anybody has anything.  Otherwise, I'm

6  happy to -- I'm prepared to grant the default.  So is there any

7  party on the phone or in the court representing or in fact on

8  behalf of any of the defendants who are still in the adversary

9  proceeding other than Tiger Natural Gas, Mr. Remington, or Mr.

10  Guzman -- on behalf of any other defendant?

11          All right.  Well, Mr. Singh, I've reviewed them and

12  I'll go ahead and issue -- I'll let you upload orders.  I guess

13  since we have one adversary proceeding, there should simply be

14  one default for all of them, but make sure that the defaults

15  are matched up so they identify the matters that are stayed,

16  okay?

17          MR. SINGH:  Certainly, Your Honor.

18          THE COURT:  Okay.

19          MR. SINGH:  With that said, Your Honor, I'll focus on

20  the three oppositions that we did receive.

21          The legal standard governing whether to enjoin these

22  related actions -- these three related actions is not in

23  dispute.  It's a twofold inquiry.  The Court must:  1) decide

24  whether it has subject-matter jurisdiction --

25          THE COURT:  I do.

1      MR. SINGH:  -- and 2) -- this is getting quicker and

2   quicker -- and 2) the Court must evaluate whether the usual

3   preliminary injunction factors have been met.

4      I'll begin by discussing the Remington action.  And

5   since Your Honor agrees that you have related-to

6   jurisdiction --

7      THE COURT:  Well, let me interrupt you.  Is Mr.

8   Remington either in court or on the phone?  Mr. Remington, are

9   you on the phone?

10      All right, so okay, go ahead, Mr. Singh.  I thought,

11   in view of his opposition, I would be hearing from him, at

12   least by phone.  But --

13      MR. SINGH:  Your Honor, we agree that you have

14   related-to jurisdiction with respect to the Remington action.

15   As set forth in the supporting declaration to our motion from

16   Ms. Collier, pursuant to the articles of incorporation of the

17   debtors and board resolutions, the debtors owe broad

18   obligations to indemnify and hold harmless current and former

19   employ -- current and former officers and employees.

20      THE COURT:  Well, what is -- what's different about

21   that?  I mean, why do you think that makes a difference except

22   in the case that isn't this case, where you have a real

23   principal player who is a defendant, a chief executive officer

24   or a chief restructuring officer?

25      I mean, the fact that there is an indemnity obligation

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 13
of 101

1    doesn't mean anything to me.  It's a pre-petition claim like

2    anything else.  So if there were no injunction and a judgment

3    were taken adverse to any of those individuals, they would have

4    a right to assert a claim.  What's different about this case

5    with defendants -- and I understand the former chief executive

6    officer is herself a defendant.  But I use -- I emphasize

7    "former"; and secondly, in terms of Mr. Remington's response,

8    it doesn't sound like he really wants anything from senior

9    management.  So --

10          MR. SINGH:  Yes --

11          THE COURT:  -- why should I -- why should we take a

12   case of this relative small dimension and worry about some of

13   these broad concepts that apply in other cases.

14          MR. SINGH:  Yeah.  Focusing specifically on this case,

15   Your Honor, the plaintiffs in the underlying action named more

16   than just Geisha Williams, the former CEO, they also named the

17   interim current CEO.

18          THE COURT:  But not when you read the response.  When

19   you read Mr. Remington's response, there are two people that

20   were on the scene who he wants to put in the wire.  I'm not

21   sure who the third one is, but they're all -- I don't mean to

22   diminish their importance --

23          MR. SINGH:  Um-hum.

24          THE COURT:  -- but they are not senior executives

25   involved in the reorganization, right?

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 14
of 101

1          MR. SINGH:  Well --

2          THE COURT:  They're not.

3          MR. SINGH:  The answer to that is twofold.  First of

4     all, because there are obligations to indemnify under the

5     articles of incorporation and under the board resolutions,

6     because of those obligations --

7          THE COURT:  How about under the law --

8          MR. SINGH:  Or --

9          THE COURT:  -- under the common law?

10          MR. SINGH:  -- or under the law.

11          THE COURT:  So I mean, again, I don't want to make a

12     big deal out of this, but I don't need to know about the

13     articles of incorporation and the in-house counsel telling me

14     what the board says.  I know the law of equitable indemnity or

15     implied indemnity or respondeat superior.  Mr. Remington isn't

16     suing these people to recover money from them.  He wants his

17     wires connected.

18          MR. SINGH:  Yeah, that will -- that's exactly right.

19          THE COURT:  Period.

20          MR. SINGH:  He's actually suing the company, not the

21     individuals.

22          THE COURT:  That's right.

23          MR. SINGH:  No doubt.  And because it's the company

24     that has some skin in the game here, more so than the actual

25     individuals --

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 15
of 101

1          THE COURT:  Minimally.

2          MR. SINGH:  Pardon?

3          THE COURT:  I mean, minimally, but it's skin.  It's a

4    tiny little piece of skin here.

5          MR. SINGH:  Well, the case law --

6          THE COURT:  I mean, the man wants his wire connected.

7    For fourteen months he -- I mean, if I -- pre-bankruptcy, if I

8    called the 800 number and said I got a wire down, a little

9    truck would come out and hook it up again for me.

10         MR. SINGH:  Yeah.  If I could just address that.  So

11   he originally had his electricity cut off because he was caught

12   stealing electricity and --

13         THE COURT:  Okay.

14         MR. SINGH:  -- the company eventually, after some

15   period of time, went to go reconnect his electricity and found

16   that he had unsafe equipment.  And they were prepared to fix

17   the unsafe equipment.  And Mr. Remington said he would do it

18   himself, he didn't want to bear the cost with respect to fixing

19   the equipment.

20         The company stands ready and prepared to reconnect his

21   electricity, provided that there is safe equipment for them to

22   reconnect the electricity to.

23         THE COURT:  Well, in other words, like any ever

24   service call for any customer out of all the sixteen million of

25   them, right?

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 16
of 101

1          MR. SINGH:  Sure.

2          THE COURT:  Okay.

3          MR. SINGH:  I think the company is absolutely ready.

4    So my point with that, though, is in terms of the balance of

5    hardships and irreparable harm, there really is no hardship to

6    Mr. Remington, because the company is ready --

7          THE COURT:  Would you like to --

8          MR. SINGH:  -- to reconnect --

9          THE COURT:  -- have the power cut off at your house

10   for fourteen months?

11         MR. SINGH:  No.  But my point being that PG&E stands

12   ready and willing to reconnect as soon as there's safe

13   equipment.

14         THE COURT:  Okay.  You know what?  I got a -- I have

15   to deal with the big picture.

16         MR. SINGH:  Yeah.

17         THE COURT:  This is a small picture.  I'm not inviting

18   everybody in Northern California who has a 17,000-dollar claim

19   to file it and show up here.  But to me, this is -- the

20   attorneys' fees and the effort aren't worth it.

21         I'm prepared to simply sign an order the directs the

22   utility to complete the hookup in accordance with the normal

23   procedure, and I will allow an unsecured pre-petition claim for

24   17,500 dollars.  That's what Mr. Remington has asked for.

25         MR. SINGH:  That makes sense for us --

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 17
of 101

1      THE COURT:  Period.  And what I'll -- and this is why
2    I'm sorry that he's not on the phone.  I would have explained
3    to him that if he would simply put down his swords and drop --
4    and not prosecute suits against former or present officers, or
5    frankly against line-men who are supposed to hook up the wire,
6    then we'll move on.

7      So you sound -- you're acceptable.  And listen, if Mr.
8    Remington decides, you know, I'm on a roll here; I want a
9    seven-figure recovery, well, he's not going to get that.

10      MR. SINGH:  Um-hum.

11      THE COURT:  But I will authorize the utility to enter
12   into a very simple stip that says Mr. Remington, we'll fix your
13   wires on our equipment and you can have a 17,500-dollar
14   unsecured claim, and you have to voluntarily dismiss the state
15   court suit, period.  And if Remington is fine with that, we're
16   done.  If he doesn't want it, then I guess I'll just continue
17   it over to a further hearing and let him come and explain to me
18   why that isn't reasonable.

19      I mean, to me, that's what he asked for.  So how can
20   he complain?

21      MR. SINGH:  Yeah, no, that's obviously agreeable to
22   us, Your Honor.

23      THE COURT:  Okay.

24      MR. SINGH:  And we're happy to convey --

25      THE COURT:  On a roll.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 18
of 101

1          MR. SINGH:  So --

2          THE COURT:  So I'll take it as -- "submit it" is a

3  wrong word -- I've issued a tentative ruling.  The utility has

4  accepted it.  I'm giving Mr. Remington the opportunity to

5  accept it.  If for some reason -- I'll leave it to you, Mr.

6  Singh, to document it in some simple way.  Now, seriously, I

7  don't want a forty-page loan agreement --

8          MR. SINGH:  Sure.

9          THE COURT:  -- with Mr. Remington, okay?  I want a

10  simple -- as brief as it can be.  And if he accepts it, that's

11  the end of it.  If he doesn't, you can just put it back on the

12  calendar.  The adversary -- I mean, the automatic stay remains

13  in effect protecting the two debtors.  And I guess on a

14  temporary basis, if he -- let's simplify it this way.

15          I will give Mr. Remington ten days to respond to

16  whatever you put in writing, consistent with my ruling.  And if

17  he accepts it then we're done and nothing has to be done

18  further in this piece of the adversary proceeding.  If for some

19  reason he doesn't accept it, then I will enter the third-party

20  injunction but only because of the practicalities, not because

21  of this -- suddenly we're going to have corporate America come

22  to a halt because senior executives have been sued for a power

23  hookup, okay?

24          MR. SINGH:  Thank you, Your Honor.

25          THE COURT:  All right.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 19
of 101

1          MR. SINGH:  Turning our attention to the second of the

2    three oppositions, which is the Tiger opposition --

3          THE COURT:  Um-hum.

4          MR. SINGH:  -- that was a case alleging that PG&E

5    committed what the Tiger plaintiffs describe as an ongoing

6    fraud in fulfilling their role as Tiger's billing and

7    collection agent.

8          THE COURT:  Again, is this counsel for Tiger, is that

9    who's here?

10          MR. LELAND:  Yes, good morning, Your Honor.

11          THE COURT:  Okay.

12          MR. LELAND:  I'm Thomas Leland from Holland & Knight

13    for Tiger Natural Gas.

14          THE COURT:  Okay, Mr. Singh, go ahead.  Finish your

15    introductory comment.

16          MR. SINGH:  Well --

17          THE COURT:  But I did -- I am familiar with the

18    issues.  I just didn't know if counsel was here.

19          MR. SINGH:  Okay.  Your Honor does have related-to

20    jurisdiction with respect to the Tiger action.  Tiger admits

21    that in their March 13th opposition.  Tiger has also submitted

22    an answer on March 21st and it also admits that there's

23    jurisdiction in paragraph 26 --

24          THE COURT:  Right.  No, I agree, there is.

25          MR. SINGH:  -- of its answer.

1          With respect to the four underlying preliminary

2    injunction factors, those are easily met as well.  First of

3    all, with respect to the first factor, Tiger does not and

4    cannot dispute that debtors have demonstrated a reasonable

5    likelihood of successful reorganization.  I don't think they

6    contest that factor.

7          THE COURT:  Well, they don't want to either.

8          MR. SINGH:  With respect to the second factor, the

9    continued prosecution of the Tiger action would cause

10   irreparable injury --

11         THE COURT:  Well, but it's already on -- the district

12   court has stayed it until the fall, right?

13         MR. SINGH:  Yeah, so that's the question.  And I think

14   it depends on the intentions of the Tiger plaintiffs.  If

15   they're intending, if the court denies the injunction with

16   respect to the Tiger action, to then go back to the district

17   court, go back to Judge White and immediately ask for relief

18   from the stay, if the Court were to deny the stay motion, this

19   request for a stay -- this request for the 105 injunction, on

20   the basis that the action already is stayed, it would obviously

21   be counterintuitive, if they then turn around and ask for the

22   stay to be lifted in the district court, as for -

23         THE COURT:  Well, let me ask -- let me ask Tiger's

24   counsel to clarify his position.

25         And again, would you just state your name?

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 21
of 101

1          MR. LELAND:  Certainly, Your Honor.  Good morning.  My

2    name is Thomas Leland; I'm from the law firm of Holland &

3    Knight on --

4          THE COURT:  Oh, okay.

5          MR. LELAND:  -- behalf of Tiger Natural Gas.

6          THE COURT:  So you weren't the signer of the petition.

7          MR. LELAND:  Yeah, and I can make this real easy.  I

8    had the same thought as you.  I think the underlying issue is

9    somewhat mooted by the fact that Judge White has stayed the

10   action with respect to the nondebtor defendants.

11         THE COURT:  Well, and the -- and Congress stayed it as

12   to the debtor defendants.

13         MR. LELAND:  Well, right.

14         THE COURT:  Okay.

15         MR. LELAND:  And we've got the automatic stay, of

16   course.

17         THE COURT:  Right.

18         MR. LELAND:  So I don't really see a need to enter an

19   injunction.  As far as Tiger's intention, it is to either seek

20   to have its claim be allowed or to move for relief from stay.

21         THE COURT:  Well, one of the troubles I had with your

22   position is in reading our opposition -- and I'm not going to

23   worry about the fact that you filed one in the wrong case and

24   then changed your tune a little bit -- I'm not going to worry

25   about that.

1    But your opposition really sounded more like a motion

2    for relief from stay.  You don't really want to prosecute this

3    lawsuit against one former and two current employees, do you?

4            MR. LELAND:  Yeah, Your Honor, I --

5            THE COURT:  I mean, that's crazy.

6            MR. LELAND:  -- as I was reading it and getting ready

7    on the plane too, I was having the same thought.  Plus

8    practically, it's already -- it's already stayed.

9            THE COURT:  Well, I know.

10            MR. LELAND:  We do not -- we certainly do not intend,

11   if the injunction is denied, to run back to Judge White and say

12   look, he denied the injunction, lift the stay with respect to

13   the individuals.

14            THE COURT:  But -- and that's right.  And you'd have

15   to -- you'd be kidding to go to Judge White and say can we

16   please have a trial against these three people.

17            MR. LELAND:  Right.  Right.

18            THE COURT:  I mean --

19            MR. LELAND:  I feel as though that we had to file our

20   opposition because we need to preserve our position with --

21            THE COURT:  Well, why don't --

22            MR. LELAND:  -- to these three individuals --

23            THE COURT:  -- we do this?

24            MR. LELAND:  Okay.

25            THE COURT:  Why don't we just take you at your offer

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 23
of 101

 1  to at least wait until Judge White -- wait until August --

 2          MR. LELAND:  Yeah.

 3          THE COURT:  -- and see where we are.  I don't imagine

 4  that we're going to have a confirmed plan by then.

 5          MR. LELAND:  Right.

 6          THE COURT:  Who knows?  And I think eventually you

 7  might decide whether you really want to fight the issue to get

 8  the third party -- I mean, to let the third parties go forward.

 9          If you really can tee up a credible and believe --

10  "believable" is the wrong word -- persuasive motion for relief

11  from stay, I might grant it.

12          MR. LELAND:  Right.

13          THE COURT:  I haven't granted any yet.  Mr. Remington

14  is the first one that even comes close for 17,000 dollars --

15          MR. LELAND:  Right.  Right.

16          THE COURT:  -- and a hookup.  And that might be the

17  best thing.

18          MR. LELAND:  Okay.

19          THE COURT:  I mean, look; it looked to me, and what I

20  found a little bit confusing about your opposition, was to

21  suggest that the doctrine of respondeat superior wouldn't

22  apply.  That seemed like -- that's fine, go sue.  Go sue these

23  people that may be engaged in some wrongdoing.

24          What if we just confer -- I mean, put this over --

25          MR. LELAND:  Yeah.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 24
of 101

1       THE COURT:  -- to our August calendar.  If you want to
2  either see if the debtor is agreeable to a stipulation for
3  relief from stay or not, and if -- but I will say, I probably
4  would not grant relief from stay unless there's some important,
5  significant reason, not to -- I mean, this is a corporation.
6  It's a business.  I don't deny that your client may have
7  suffered some damages and you're entitled to have a day in
8  court, but --
9       MR. LELAND:  Okay.  Message received.
10       THE COURT:  -- are you okay with that?
11       MR. LELAND:  That's all fine with Tiger.
12       THE COURT:  So Ms. Parada, we've penciled in some
13  dates for the fall.
14       THE CLERK:  I haven't received confirmation.  We don't
15  have date confirmation.
16       THE COURT:  Oh.  We gave -- Ms. Kim, do you remember,
17  did you ever have a chance to discuss with your colleagues the
18  dates going forward?
19       MS. KIM:  We've sent over --
20       THE COURT:  I can't hear you.
21       MS. KIM:  -- we've sent over the dates -- we've sent
22  over the dates to the various counsel -- debtors' counsel, and
23  have not yet found summer dates.  But we will do so very --
24       THE COURT:  Let's not put it on a high priority.
25       Mr. Leland, I'll just take it that we will put a

 1  continued hearing on this aspect of this adversary proceeding

 2  on our regular PG&E August calendar.

 3              MR. LELAND:  Okay.

 4              THE COURT:  And you can stipulate to a later date if

 5  you want.  You certainly don't have to fly from --

 6              MR. LELAND:  Denver.

 7              THE COURT:  -- southern California or Denver -- did

 8  you fly from Denver to come here?

 9              MR. LELAND:  I did, Your Honor.  Yes.

10              THE COURT:  What's wrong with the telephone?

11              MR. LELAND:  I've got some other things going on here

12  in San Francisco.

13              THE COURT:  Okay.  So Mr. Singh, that's how we'll just

14  take care of this one.  It's just -- it's continued to a date

15  that Ms. Kim and others in your office -- actually in view of

16  my comments a few minutes ago about whether we need to tweak

17  our calendars, we'll have a phone for Mr. Leland and his client

18  here in August.

19              MR. LELAND:  Thank you, Your Honor.

20              THE COURT:  Great.  Okay, thank you.

21              MR. LELAND:  Thank you very much, Your Honor.

22              THE COURT:  Thank you, Mr. Leland.

23              MR. SINGH:  That brings us to our third and final

24  opposition, Your Honor, Guzman, which as Your Honor knows, is a

25  personal injury action --

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 26
of 101

1            THE COURT:  I do.

2            MR. SINGH:  -- with respect -- brought both against

3    the company -- the utility as well as M-Squared.

4            Guzman does deny that there's jurisdiction --

5            THE COURT:  And is Mr. Guzman's counsel here also?

6            MR. DHARAP:  Yes, Your Honor, Shounak Dharap for Mr.

7    Guzman.  And Mr. Jonathan Davis is on the phone.

8            THE COURT:  Okay, let Mr. Singh finish.  I just wanted

9    to make sure we had counsel.

10           Go ahead, Mr. Singh.  But again, I have the

11   background.

12           MR. SINGH:  Guzman does deny, as you know, Your Honor,

13   that the Court does have related-to jurisdiction, arguing that

14   because there's no contractual obligation to indemnity here,

15   there is no related-to jurisdiction.

16           THE COURT:  But why -- again, going back to the old

17   case law, I think the Robbins case is way back in the 80s when

18   we had a huge mega-case with injunctions again people who were

19   at least perceived to be critical to the organization -- I've

20   never taken that argument and applied it to another entity that

21   might be the primary wrongdoer here.

22           Why is the utility making the case for M-Squared?

23   What is the point?  I don't understand the philosophy behind

24   your strategy, because again, if M Squared has to pay the bill

25   or the other company that M Squared has tendered to, and

1  they're liable, we're done.  If they have a theory over against

2  the utility, like everybody else, they file a proof of claim.

3          What's different?

4          MR. SINGH:  Yeah.  So our view, Your Honor, is this

5  case -- because there could be legal prejudice to the company

6  if the trial proceeds with an empty seat --

7          THE COURT:  Why?

8          MR. SINGH:  -- as the PG&E --

9          THE COURT:  Why would they?

10         MR. SINGH:  First there's joint and several liability

11  with respect to economic harm.

12         THE COURT:  But didn't Mr. Guzman's counsel agree to

13  dismiss the utility --

14         MR. SINGH:  He is willing -- he has expressed a

15  willingness.

16         THE COURT:  I mean, why isn't that a simple --

17         MR. SINGH:  Beyond that, there's comparative fault.

18  With the negligence claim, there's comparative fault --

19         THE COURT:  But okay, so let -- again, let's go back

20  to the run-of-the-mill automatic stay issue.  Defendants A and

21  B are state court defendants.  A files bankruptcy.  The trial

22  judge says let's go to trial against B.  The fact that there

23  could be a claim later or a determination that A is liable,

24  doesn't mean you don't have the trial against B.

25         MR. SINGH:  Well, there is a --

1          THE COURT:  A is not --

2          MR. SINGH:  -- cross-claim.

3          THE COURT:  -- going to be hooked by any kind of

4    collateral estoppel principles or claim preclusion.

5          MR. SINGH:  There is a cross-claim, Your Honor.

6          THE COURT:  But you haven't -- nobody's asked to

7    prosecute it.

8          MR. SINGH:  There is a cross-claim seeking costs,

9    attorneys' fees, and other expenses.  Even a finding -- and

10   also, even if there's a finding of liability against M Squared,

11   that kind of -- that makes the indemnity cross-claim ripe.

12         THE COURT:  So what?

13         MR. SINGH:  The company has --

14         THE COURT:  So what?

15         MR. SINGH:  -- an interest in participating in a trial

16   in --

17         THE COURT:  Mr. Singh, this is where I'm -- there is

18   where I find this motion to be almost laughable.  I mean, I

19   don't want to sound like I'm here to chew you out, but I don't

20   understand why Pacific Gas and Electric Company would waste its

21   time defending another company that may be the primary

22   wrongdoer.  And if for some reason the utility is liable, even

23   for fifty bucks, then you tell M Squared to file a claim for

24   fifty bucks, like everybody else.

25         Why are you making a bigger deal of it?  It just -- I

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 29
of 101

1  don't buy it.

2          MR. SINGH:  Well, I mean, it's a four-million-dollar

3  claim.

4          THE COURT:  So you know what, I'm going to simplify

5  it.  I'm going to -- so Mr. Davis, are you -- do I have you --

6  the right person on the phone?  Are you prepared --

7          MR. DAVIS:  Yes, Your Honor.  Good morning.  Good

8  morning.

9          THE COURT:  Who's the principal counsel that's going

10 to make the argument, Mr. Davis or --

11         MR. DAVIS:  On the phone, Jonathan Davis, Your Honor.

12 Thank you.

13         THE COURT:  Okay.  So are you willing to dismiss the

14 utility from the -- or PG&E from the state court lawsuit

15 without prejudice?

16         MR. DAVIS:  If it is without prejudice and an

17 agreement on the tolling of the statute, then we would be --

18 that's something I could absolutely recommend to my client.

19         THE COURT:  Well, is there a tolling of the statute?

20 There's an adversary -- there's an automatic stay in effect.

21         MR. DAVIS:  Yes.  So I don't think we'd have an issue

22 there.  But it's something I'd obviously have to talk to my

23 client about, again, that they would be willing to do that in

24 order to proceed with M Squared, the nondebtor, as long as it

25 was without prejudice.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 30
of 101

1      THE COURT:  Well, Mr. Singh, tell me again, suppose
2  Mr. Guzman's counsel agreed to that, what do you want me to do
3  about this cross-claim -- the third-party complaint, rather.
4  Excuse me.
5      MR. SINGH:  Yeah, if they are --
6      THE COURT:  The cross-claim.
7      MR. SINGH:  -- agreeing to dismiss without prejudice,
8  the cross-claim?
9      THE COURT:  Um-hum.
10     MR. SINGH:  And the plaintiffs are willing to --
11 they've already submitted -- the plaintiffs in the underlying
12 action a proof of claim in this bankruptcy.
13     THE COURT:  Right.  But the cross-claim is M Squared
14 against the company, right?
15     MR. SINGH:  The cross-claim is M Squared against the
16 company.
17     THE COURT:  But it's stayed, and they can file a proof
18 of claim too.  So their claim is for indemnity.  And if there's
19 no liability, there's no -- I suspect there probably is
20 liability here, you probably know that too.
21     I mean, I guess what I'm really saying is Mr. Guzman's
22 situation is a pretty unhappy situation for him.  And it seems
23 like the last thing in the world he needs to do is to get
24 bogged down in this thing when he isn't even asserting a
25 claim -- a primary claim, if you will -- against PG&E.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 31
of 101

1        MR. SINGH:  Yeah, I mean, if there was an agreement

2   that there would be no collateral estoppel or the findings in

3   the action can't be used --

4        THE COURT:  The law will do that.

5        MR. SINGH:  -- then --

6        THE COURT:  The law will do that.

7        MR. SINGH:  Yeah.  And they're not -- and they're not

8   pursuing the --

9        THE COURT:  Do you agree --

10       MR. SINGH:  -- prospect, then we agree.

11       THE COURT:  -- that if the state court, a jury or a

12  trial judge -- if a judge finds that PG&E did X, Y, and Z, that

13  is an interesting finding, but it is not preclusive as a matter

14  of law, right?

15       MR. SINGH:  Yeah, we're not in privity with M Squared,

16  so I yeah, I agree.

17       THE COURT:  No.

18       MR. SINGH:  It would not be --

19       THE COURT:  Well, you're not in privity.

20       MR. SINGH:  Yeah.

21       THE COURT:  There's a different interest.  Obviously

22  there's a different interest --

23       MR. SINGH:  Sure.

24       THE COURT:  -- because M Squared is the cross-claim.

25  And the debtor is not a party by virtue of any dismissal.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 32
of 101

1          Okay, so Mr. Davis, I think -- may I -- look, I can

2     let you take this up with your client, if that's what you want.

3     You should have got the message, my feelings about this.  And I

4     would hope you would recommend to your client that it's time to

5     get on with trying to vindicate his rights against people who

6     maybe will be able to owe him money.  And it's not just M

7     Squared, it's the company that's taken over the defense, if not

8     the insurer.  And you should get on with it and get this case

9     back on trial.

10          It's only been what, three years since he's been

11     injured, right?  It's time to give him is day in court.

12          MR. DAVIS:  Yes, it -- yes, Your Honor.  As you may

13     know, the state court has temporarily stayed the action pending

14     this proceeding and is willing to get us back on a quick trial

15     calendar.  So we greatly appreciate --

16          THE COURT:  Okay.  So if you --

17          MR. DAVIS:  -- the --

18          THE COURT:  -- if your client takes your

19     recommendation --

20        (Alarm sounding)

21          THE COURT:  What is this?  Oh.

22          We're having a fire alarm test, folks.  We're not

23     vacating the building here yet.  It's 10 o'clock on today.

24          All right, Mr. Davis, on the assumption that your

25     client will take your recommendation, you can exchange with Mr.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 33
of 101

1  Singh a simple agreed form that dismisses the company from the

2  underlying lawsuit.  You can have -- both sides can have

3  adequate recitals and preservation of positions.  And the

4  matter -- pardon me -- the matter can go forward as you wish it

5  to, against M Squared and others.  Does that work?

6          MR. DAVIS:  Your Honor, thank you very much on behalf

7  of Mr. Guzman.  We greatly appreciate the Court's time.

8          THE COURT:  Okay.  Well, what I'm going to do for

9  calendaring purposes, other than try to stop coughing, I'm

10  going to continue this one aspect of the adversary proceeding

11  to our April 10th calendar or April 9th calendar.  And I would

12  hope that you will have it resolved by then.  Okay?

13          MR. SINGH:  A couple --

14          MR. DAVIS:  Yes, Your Honor.  Jonathan Davis.  Thank

15  you very much.

16          THE COURT:  Mr. Singh did you have another comment?

17          MR. SINGH:  Just a couple of housekeeping items

18  related.

19          THE COURT:  Yeah, sure.

20          MR. SINGH:  First we have an April 3rd deadline for

21  Rule 26(f) discovery conferences with respect to this

22  adversary.

23          THE COURT:  Well, can't we stipulate that away?

24          MR. SINGH:  I'm sorry?

25          THE COURT:  Can't that just be stipulated away?

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 34
of 101

1    MR. SINGH:  We'd love, especially for those who

2  haven't appeared or --

3    THE COURT:  No, as to this -- as to this?  You're

4  taking their default.

5    MR. SINGH:  Yeah.  So --

6    THE COURT:  I mean, there's no one left.  You've got

7  defaults --

8    MR. SINGH:  Yeah.

9    THE COURT:  -- you've got Mr. Remington out of the

10 way, and Tiger is under a stip, and Mr. Guzman's got an

11 agreement with you.

12   MR. SINGH:  Yeah, I guess it's moot.

13   THE COURT:  Now I have two cups of water.

14   MR. SINGH:  And second, we're going to have to submit

15 an updated order to you, Your Honor, which we'll get to you

16 shortly.  There have been -- even as of yesterday, we added one

17 of the additional stips, to --

18   THE COURT:  No, that's fine.

19   MR. SINGH:  And so we'll submit --

20   THE COURT:  And that's one of the problems of taking

21 twenty-three or twenty-two separate lawsuits and putting --

22   MR. SINGH:  Sure.

23   THE COURT:  -- them under one covering lawsuit.

24       Okay, so again, the poor gentleman standing here

25 hasn't had a chance to say a word, because Mr. Davis was doing

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 35
of 101

 1  all the talking, but that seems to resolve it.  And if Mr.

 2  Guzman is agreeable to this after he confers with his counsel,

 3  then we won't go forward on the 9th.  But if for some reason

 4  Mr. Guzman and his counsel want to be heard, this will go over

 5  to our April 9th, 9:30 calendar.  And it'll be just this one

 6  piece of the adversary proceeding -- our parent -- adversary

 7  proceeding 19-3006.  Right?  Okay?

 8           MR. SINGH:  Thank you, Your Honor.

 9           THE COURT:  All right.  Good luck.  Thank you.

10           MR. DAVIS:  Thank you, Your Honor.

11           THE COURT:  All right.  Sorry to do this to everybody.

12  Now I've got a cough drop.

13           Okay, one second, please.

14           Okay, Mr. Karotkin, are you back on duty or are you

15  going to give it to somebody else here?  We're down to Butte

16  County and DIP financing, right?

17           MR. KAROTKIN:  Yes.  And if you would like to just

18  quickly address the NOL, we can do that.

19           THE COURT:  Okay.

20           MR. KAROTKIN:  As you may -- should I do that first,

21  sir, the NOL?

22           THE COURT:  You know --

23           MR. KAROTKIN:  Okay.

24           THE COURT:  -- that's up to you.  You're in charge.

25           MR. KAROTKIN:  Okay, thanks.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 36
of 101

1        You may recall when we were here, I guess it was about

2   a month ago or so, we had a discussion about the NOL motion --

3            THE COURT:  Yeah.

4            MR. KAROTKIN:  -- and the committee and --

5            THE COURT:  Yeah, and I did all my homework, and I

6   read the briefs again.

7            MR. KAROTKIN:  Well, I apologize --

8            THE COURT:  Torture.

9            MR. KAROTKIN:  -- it was resolved this morning --

10   early this morning.  I apologize for it --

11            THE COURT:  No.

12            MR. KAROTKIN:  -- taking so long, but --

13            THE COURT:  Okay.

14            MR. KAROTKIN:  -- so we've had --

15            THE COURT:  It just made me know why I wanted to be a

16   bankruptcy lawyer.

17            MR. KAROTKIN:  We've worked out an agreed order as

18   well as all the exhibits to go with it.  And I'm happy to

19   provide the Court with a red-line.

20            THE COURT:  No.  I'll take your word for it.

21            MR. KAROTKIN:  Okay.

22            THE COURT:  The committee and the debtor have agreed

23   to it.

24            MR. KAROTKIN:  As well as Mr. Stamer's clients, the ad

25   hoc committee.  We've all worked out --

1          THE COURT:  Do you want to summarize it?  You don't

2     need to.

3          MR. KAROTKIN:  I would prefer not to.

4          THE COURT:  That's fine.  Does anyone want to be heard

5     on the disposition between the debtor and the committees that

6     resolves what we're, for convenience, we're calling the NOL

7     issue?

8          Hearing none, I will congratulate the parties for

9     reaching an agreement.  I will tear up my thirty-seven-page

10    draft, published opinion on tax law carry-forwards, and we'll

11    move on to whatever you have next on the agenda.

12         MR. KAROTKIN:  The Butte County settlement?

13         THE COURT:  Okay.

14         MR. KAROTKIN:  Again, Stephen Karotkin, Weil, Gotshal

15    & Manges, for the debtors.

16         It's a motion of the debtors, Your Honor, for

17    authority to continue performance under a settlement agreement

18    with the Butte County District Attorney's Office, to fund an

19    enhanced fire protection program.

20         There were two responsive pleadings filed, as I'm sure

21    you've seen, one by the Singleton Law Firm that represents

22    certain pre-petition tort claimants that entered into

23    settlement agreements with the debtors prior to the

24    commencement of the case.

25         THE COURT:  Counsel, on the phone, did you want --

1  were you saying something?

2           Go ahead, Mr. Karotkin.

3           MR. KAROTKIN:  Okay.  And there was also a response

4  filed by the tort claimants' committee after the -- I believe

5  after the deadline to file responses, but we had no objection

6  to the late-filed response.

7           We filed a reply, Your Honor, to the objection filed

8  by the Singleton Law Firm, I believe either Sunday or Monday.

9  And I would note, Your Honor, that neither responsive pleading,

10 either the one filed by the Singleton Law Firm, nor the one

11 filed by the tort claimants' committee, objects to the relief

12 being requested in the motion, and no other objections or

13 responsive pleadings have been filed.

14          THE COURT:  I noticed in the tort committee response

15 they at least suggest that maybe the debtor would want to defer

16 this until the district court conducts the next scheduled

17 hearing, which is next week.  Is that a reasonable suggestion,

18 or do you not want to do that?

19          MR. KAROTKIN:  Well, we would prefer not to, Your

20 Honor.  It's not a mystery to anybody that this settlement

21 agreement was entered into.  There was a public announcement of

22 it by Butte County.

23          THE COURT:  Um-hum.

24          MR. KAROTKIN:  We understand that this is not the

25 subject of -- the settlement agreement itself is not the

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 39
of 101

1 subject of the matter before Judge Alsup.

2          THE COURT:  No, I realize that.

3          MR. KAROTKIN:  And --

4          THE COURT:  But what I gleaned from the committee's

5 papers is that maybe Judge Alsup will make rulings that would

6 impact the company generally or impact indirectly, perhaps, its

7 situation vis-a-vis Butte County.  I have no way of knowing one

8 way or the other what might happen and maybe you don't either.

9 But if your position is your client wants to go forward today,

10 we'll go forward today and I'll listen to the arguments.

11          MR. KAROTKIN:  Yes.  We would prefer to go forward

12 today.  We think that it's important to move forward.  There is

13 a payment due -- the next payment is due on April 2nd.  And

14 again, we don't think the matter before Judge Alsup has

15 anything to do with the settlement agreement itself.

16          He made his finding with respect to the allegations of

17 the parole officer.

18          THE COURT:  Um-hum.

19          MR. KAROTKIN:  And again, it had to do with the

20 investigation, it didn't have to do with the settlement, which

21 was already out there.  So we think that our pleadings are

22 clear.  The reasons why the debtor wants to move forward, we

23 think this an appropriate exercise of business judgment and --

24          THE COURT:  The committee also suggests there's a typo

25 in the settlement agreement?

1          MR. KAROTKIN:  Well --

2          THE COURT:  Do you think that's --

3          MR. KAROTKIN:  -- again, I'm not sure --

4          THE COURT:  -- a legitimate --

5          MR. KAROTKIN:  -- I really understand that.

6          THE COURT:  I don't either.  I read the agreement, and

7     I looked for the typo.

8          MR. KAROTKIN:  I think what -- I think what counsel is

9     saying, and I don't want to speak for Ms. Dumas -- I think what

10    she is saying, if I understood correctly, that the defined

11    terms in the matters that the Butte County DA was agreeing not

12    to prosecute or release didn't have capitalized terms.

13         THE COURT:  But the Butte County District Attorney

14    can't prosecute a crime committed in another county, can it?

15         MR. KAROTKIN:  Nor can he release claims that he

16    doesn't have.

17         THE COURT:  Right.

18         MR. KAROTKIN:  So we think it's clear.  And the

19    agreement doesn't need to be modified at all.  And again, no

20    one objected to the relief requested, so we would ask --

21         THE COURT:  Well, Ms. Dumas, I see in court.  Let me

22    ask first if the counsel for the Singleton Law Firm is here

23    today and wants to be heard?  I know you were heard before, and

24    there's -- much of the Singleton response is somewhat similar

25    to what it was responding on the earlier motions.  But do you

1  want to be heard on that, counsel?

2            MR. HAWKINS:  Yes, sir.

3            MR. KAROTKIN:  Let me just -- if I could just --

4            THE COURT:  Oh, yeah.

5            MR. KAROTKIN:  -- mention one -- I'm sorry.

6            THE COURT:  Sure.  Yes.

7            MR. KAROTKIN:  Again, as we stated in our response

8  with respect to the Singleton Law Firm's objection, the same

9  issue was raised with respect to the DIP motion, and I think

10 counsel for the tort claimants' committee agrees, if they think

11 there is a basis or authority to pay the settlement claims,

12 they should file an appropriate motion with the Court.

13            THE COURT:  Right.

14            MR. KAROTKIN:  If they think there are constructive

15 trust theories, everybody should have an opportunity to address

16 that in a proper motion, on notice, with everyone's right to

17 respond and address those issues.

18            THE COURT:  Okay.  And it's Mr. Hawkins, right?

19            MR. HAWKINS:  Your Honor, yes.

20            THE COURT:  Yes.

21            MR. HAWKINS:  Chris Hawkins on behalf of the Singleton

22 fire claimants.  And Your Honor, I don't want to waste the

23 Court's time.  If you know that you're going to insist on a

24 separate motion for the relief we're requesting --

25            THE COURT:  Well, first of all --

1            MR. HAWKINS:  -- we'll get to it --

2            THE COURT:  -- don't apologize for wasting time.  I'm

3    here for a reason, and we'll take whatever time is necessary.

4    And you're entitled to renew positions, and I'm not faulting

5    you for it.

6            But it's largely the same position you've advocated in

7    other motions, right?

8            MR. HAWKINS:  Correct.  In our opinion, it's much more

9    directly related to the motion before the Court today.

10           THE COURT:  Well, it is.  I mean, it's the location,

11    it's the area, it's arising out of --

12           MR. HAWKINS:  Pre-petition settlement agreements.

13           THE COURT:  -- the fire.  I mean, I understand that.

14    But it is a standalone motion.  And you don't really oppose the

15    motion.

16           MR. HAWKINS:  Correct.  So if you want it as

17    standalone motion --

18           THE COURT:  And I'm sure, like everything else, if the

19    debtor stood up and said we'd like to move for authority to pay

20    your clients, you wouldn't oppose that any more than -- nor

21    this motion.

22           MR. HAWKINS:  Correct.  Okay.

23           THE COURT:  So your position is noted and

24    acknowledged, and I will overrule it as a formality.  But

25    again, the invitation is there to do --

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 43
of 101

1          MR. HAWKINS:  Well we'll start on the motion.

2          THE COURT:  -- what you need to do.

3          MR. HAWKINS:  Thank you, Your Honor.

4          THE COURT:  Okay.  So Ms. Dumas, do you want to be

5    heard, or do you want to just move on with the issue of -- I

6    mean, again, I can't -- I don't think I can impose upon the

7    debtor a continuance for a hearing to happen in another court

8    next week that may be legally unrelated to this motion, so --

9          MS. DUMAS:  Oh, yes, sir.  Cecily Dumas of Baker

10   Hostetler on behalf of the official committee of tort

11   claimants.

12         We appreciate counsel's recitation for the record.

13   The concerns were twofold, and counsel addressed both.  The

14   first concern -- the typo concern was more a potential reading

15   of the scope of the releases that might affect other

16   proceedings.

17         THE COURT:  But it really comes down to just the use

18   of a capitalized term in one paragraph and not another, right?

19         MS. DUMAS:  That's correct, Your Honor.

20         THE COURT:  I mean, it wasn't really a typo.

21         MS. DUMAS:  No, I -- and I --

22         THE COURT:  No misuse of the --

23         MS. DUMAS:  -- I wouldn't --

24         THE COURT:  -- passive voice either.

25         MS. DUMAS:  I wouldn't have characterized it -- I

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 44
of 101

1  specialize in the passive voice.  I wouldn't have called this a

2  typo.  But in either event, counsel has clarified that this is

3  intended to address claims that the Butte County District

4  Attorney's Office would be able to bring, not civil claims,

5  not --

6          THE COURT:  Right.

7          MS. DUMAS:  -- potential actions of the federal

8  district court and other proceedings.

9          THE COURT:  Well, that's how I read it too.  And so I

10 mean, I can kid with you about whether it's a typo or not, but

11 it did seem to me that although you or I both might have

12 drafted it a little differently, at the end of the day there is

13 a clear indication by Butte County what they are releasing, and

14 we all know --

15         MS. DUMAS:  Yes, sir.

16         THE COURT:  -- they can't release something that they

17 don't have to release.

18         MS. DUMAS:  Yes, sir.

19         THE COURT:  Right?

20         MS. DUMAS:  Yes.

21         THE COURT:  So it seems to me it falls into those

22 definition sections of 3.13 and 3.14 that narrows the range of

23 what Butte County has bargained for.  Right?

24         MS. DUMAS:  Yes, sir.  Agreed.  And the second point

25 is simply that the -- it is true, this settlement, as counsel

1    indicated, is not -- it was actually the failure to report the

2    pending criminal investigation by Butte County that was a

3    probation violation, according to the district court.  And

4    Judge Alsup has not determined what --

5            THE COURT:  Well, but if he --

6            MS. DUMAS:  -- sentence, if any, to impose.

7            THE COURT:  -- but if he determines it and decides

8    that there should be some consequence, then there are.  But I

9    think I read something else here too.  I'm not ordering the

10   utility to do anything.  I'm authorizing them to move to the

11   next step of this settlement.  And if something goes amiss in

12   Judge Alsup's court, PG&E has a right to breach its agreement

13   with Butte County, right?  But I'm only authorizing it to carry

14   out the terms of its agreement if it wishes to.

15           MS. DUMAS:  Okay.

16           THE COURT:  Right?

17           MS. DUMAS:  Absolutely.

18           THE COURT:  And there are consequences, obviously,

19   if -- leave aside Judge Alsup's issue -- if the utility says,

20   you know, we decided we don't want to do the settlement with

21   Butte County, then there are consequences.  And there's nothing

22   you or I can do about that.

23           MS. DUMAS:  Agreed, Your Honor.

24           THE COURT:  Okay.

25           MS. DUMAS:  All right, the tort committee is satisfied

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 46
of 101

1  with the explanation of counsel and concurs with the Court's
2  remarks.

3          THE COURT:  Okay.  Well, with that, does anyone --
4  anyone else in court or on the phone want to be heard on the
5  Butte County matter?

6          Yes?

7          MR. FELDMAN:  Thank you, Your Honor.  For the record,
8  Matthew Feldman, Willkie Farr & Gallagher, on behalf of the ad
9  hoc committee of subrogation claims.

10          Your Honor, we chose not to say in 5,000 words what I
11  think we can say in 500 words.  We do support the relief
12  requested by the company today --

13          THE COURT:  Let me count the words here.  I've got my
14  word counter on.

15          MR. FELDMAN:  I think I'm going to be okay.  I think
16  I'll bring it in in under 500.

17          THE COURT:  Okay.

18          MR. FELDMAN:  We do support the relief sought by the
19  company today, but we would urge Your Honor, the company, as
20  was put in some of the pleadings, to actually be the party to
21  consider moving to address the pre-petition settlements.  These
22  are not unliquidated claims.  These are claims that are known.
23  Many of them, frankly, relate to the 2015 fires.

24          The individual plaintiffs, who we do not represent,
25  are clearly being harmed by the delay.  And if this is, in

1  fact, a solvent-company case, which we don't know definitively,

2  but certainly the debtors have asserted, we would like to see

3  the debtors thoughtfully put together a motion.  They have

4  standing with respect to all of these executed settlement

5  agreements, whereas those of us scattered around the courtroom

6  would only have standing with respect to a subset of the --

7          THE COURT:  Yeah.

8          MR. FELDMAN:  -- of the executed settlements.  So we

9  urge the company -- and we'll work with them -- to consider

10 bringing a motion to authorize them to continue to honor pre-

11 petition executed settlement agreements, Your Honor, and not

12 force everyone --

13         THE COURT:  I guess --

14         MR. FELDMAN:  -- to wait.

15         THE COURT:  -- the debtor, its lawyers, its counsel --

16 I mean, its management, both official committees, they're going

17 to have to decide, at some point, whether we're going to have

18 sort of creeping confirmation.  I made my speech about the

19 gentleman who wants 17,000 dollars to have his power hookup.

20 I'm not comparing his situation to all these victims.  But

21 similarly, the trade creditors who are owed tens of thousands,

22 if not tens of millions of dollars, have their rights too.

23         And I guess the two official committees, the

24 unofficial committees, the debtor, if they are in unanimous

25 agreement on how to proceed, somebody will bring it before me

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 48
of 101

1    and we'll figure out a way, whether there's a proper way.

2           The lawyers -- the bankruptcy lawyers in the room know

3    where the priority schemes work. The human beings in the room

4    understand the emotions and the tragedies that don't apply to

5    trade creditors to the way they apply to fire victims.

6           But so I --

7           MR. FELDMAN: I guess I'm embarrassed to say, Your

8    Honor, I'm one of those bankruptcy lawyers, not one of the

9    plaintiffs' lawyers, so --

10          THE COURT: And all of us who are bankruptcy lawyers

11   would prefer to be bankruptcy lawyers, and not fire victims.

12   So --

13          MR. FELDMAN: I'm not going to argue it now, Your

14   Honor, but there is -- I don't believe this would be creeping

15   confirmation issues, because settlement agreements are

16   executory contracts, and certainly it's within the purview --

17          THE COURT: We can debate that.

18          MR. FELDMAN: -- of the -- well, we may have to. But

19   certainly it's within the purview of the company if they choose

20   to try to bring a motion, to bring that motion.

21          THE COURT: Well, Mr. Feldman, if the committee -- if

22   the company with or without the support of the tort committee

23   makes a motion to pay some subset -- some subset of tort

24   victims, we'll see what the other committee says and what the

25   creditor body generally says. And if they don't oppose it,

1  then I guess it'll be up to me to make a decision.  Then I'll

2  make a decision.

3          MR. FELDMAN:  Understood, Your Honor.

4          THE COURT:  Okay.

5          MR. FELDMAN:  Thank you.

6          THE COURT:  All right.  So unless anyone else has a

7  comment, I will go ahead and authorize the debtor to carry out

8  the settlement with Butte County on the terms stated.  And

9  again, Mr. Karotkin, if the order needs to be tweaked, just to

10  be consistent with the appearances, that's fine.  I'll treat it

11  as a done deal and put that to bed.

12          MR. KAROTKIN:  Thank you, sir.

13          THE COURT:  Thank you very much.

14          THE COURT:  Okay, I guess we're down to the DIP

15  motion, hmm?

16          MR. ZUMBRO:  Good morning, Your Honor.  Paul Zumbro

17  from Cravath, Swaine & Moore, on behalf of the debtors.

18          THE COURT:  Mr. Zumbro.  Nice to see you back.

19          MR. ZUMBRO:  Thank you, sir,  Nice to be in front of

20  you again.

21          At the last hearing, I think we had a very productive

22  hearing.  We went through a lot of the concerns expressed by

23  the Court and by other parties-in-interest on the DIP

24  financing, particularly with respect to the Court about the

25  short timing of certain of the remedies notice periods; and I

1  think the Court was particularly focused on what the situation
2  would be if a Chapter 11 trustee was appointed.
3          As you may recall, Your Honor, after we had a break at
4  the last hearing --
5          THE COURT:  Um-hum.
6          MR. ZUMBRO:  -- we came back and reported to you that
7  the DIP lenders had agreed to change the timing for that
8  particular default from seven regular days to twenty-one
9  business days.
10         THE COURT:  Yeah, I've looked -- by the way, not to
11 cut you off -- I've looked at the black-line edits, and they
12 are consistent with the conversation we had.
13         I want to wait to see from Ms. Dumas what she has to
14 say about it, but --
15         MR. ZUMBRO:  Sure.
16         THE COURT:  -- they're certainly consistent with what
17 my discussion with the --
18         MR. ZUMBRO:  Thank you, sir.  And the only other thing
19 that we did add in the interim period, there was one other
20 change that was made to paragraph 35, which we spent a bit of
21 time on last time.  We added one additional change to paragraph
22 35, as pursuant to the discussions between Ms. Dumas and Mr.
23 Hansen, where the DIP lenders agreed that there would be no
24 transfer of any utility assets for twenty-one business days
25 following the delivery of a remedies default for any default.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 51
of 101

1  So that was one additional incremental --

2          THE COURT:  Yeah, that's right.

3          MR. ZUMBRO:  -- concession --

4          THE COURT:  That's right.  I did -- I saw that in

5  there.

6          MR. ZUMBRO:  -- that was made.

7          THE COURT:  And there was also an edit having to do

8  with the terminology of what the lenders are doing, right, vis-

9  a-vis the Public Utilities Commission?  Wasn't there another

10  slight change on that?

11          MR. ZUMBRO:  Yeah, so we made the change that Ms.

12  Dumas wanted to make it clear that we had to both seek and

13  obtain --

14          THE COURT:  Right.

15          MR. ZUMBRO:  -- the authorization for the CPUC under

16  paragraph --

17          THE COURT:  Right.

18          MR. ZUMBRO:  -- 35.  So I won't reargue the points

19  that we discussed at the last hearing, but there are just a few

20  couple points that I'd like to make.

21          Mr. Hansen, at the last hearing, I think, correctly

22  talked about pricing and risk.  Ms. Dumas, on behalf of the

23  tort committee, talked about her view that this is a money-good

24  loan, so the lender shouldn't care so much about what the terms

25  are.  Mr. Kreller, on behalf of the unsecured creditors'

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 52
of 101

1    committee, said well, the market has really decided what the
2    balance is between pricing, risk, and terms. And I think the
3    Court had noted that you were prepared to enter the good-faith
4    finding, because you were satisfied of the evidence that we had
5    presented about the marketing process that we did undertake.

6          Ms. Dumas said --

7          THE COURT: Well, I would clarify it. There was, in
8    my mind, the proponent in the supporting declaration, made the
9    case for good faith. And it made the case for all the
10   predicates about alternatives and so on. It doesn't deal with
11   the question of whether I ultimately approve it or not, but
12   that's --

13         MR. ZUMBRO: No, I understand. I just was making the
14   point that we did engage in a robust marketing process for this
15   DIP facility.

16         THE COURT: Yes. And that's established, and I don't
17   think it's been challenged, really.

18         MR. ZUMBRO: Correct. Thank you, sir.

19         So I guess cutting through it, Ms. Dumas said well,
20   let's just take out this one particular term we don't like and
21   see if the market blinks. And the Court said you've got a
22   little bit of time, appropriately, let's see what we can do.

23         And we did have discussions with the DIP lenders. The
24   market was not willing to accept any further modifications to
25   the remedies period --

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 53
of 101

1       THE COURT: Well, I don't want to get into specifics

2    on what conversations occurred. If you tell me that there were

3    attempts to see if there was an agreement, and they weren't

4    successful, that's all I want to know, at that point.

5       MR. ZUMBRO: That's correct, sir.

6       THE COURT: Yeah.

7       MR. ZUMBRO: So there was not an -- I mean, we filed

8    the notice which was everything that we -- it's the integrated

9    financing packaging that we're asking the Court to approve

10   today. We think we did as best as we could to address the

11   Court's concerns on the timing.

12      I don't know what exactly is going to happen if a

13   Chapter 11 trustee is appointed, but I do know that we now have

14   a month to figure it out, which is a lot better than seven

15   days --

16      THE COURT: You don't have an automatic stay.

17      MR. ZUMBRO: -- to figure it out.

18      THE COURT: Well, Mr. Zumbro, if there's a trustee

19   appointed, you're out of a job.

20      MR. ZUMBRO: Understood. Understood.

21      THE COURT: You represent the debtor.

22      MR. ZUMBRO: Somebody else can figure it out in that

23   month. But we do have --

24      THE COURT: Right.

25      MR. ZUMBRO: -- a significant period of time that we

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 54
of 101

1  didn't previously have.  And so Your Honor, I'm not belaboring

2  the point.  I just -- the Court at the last hearing said it

3  would decide today on an up or down basis.  And all I'm here to

4  say is we respectfully urge you to choose "up".

5         We think it's important that this financing be

6  approved so these debtors can move on to the other aspects of

7  their case.  We do think we've established our -- met our

8  burdens.  It's the good-faith business judgment of these

9  debtors that this is the best financing package available in

10  the circumstances.

11         I'd note that the unsecured creditors' committee

12  supports it.  The CPUC supports it.  No party, including Ms.

13  Dumas, on behalf of the tort claimants, has asserted that we

14  don't need this financing.  And so we would urge you to accept

15  that this is the best integrated package we have, and I would

16  ask you to enter the order today.

17         THE COURT:  Okay.  Thank you.

18         MR. ZUMBRO:  Thank you, sir.

19         THE COURT:  Ms. Dumas, you're it.

20         MS. DUMAS:  Good morning, Your Honor.  Cecily Dumas,

21  Baker Hostetler, on behalf of the official committee of tort

22  claimants.

23         We were unable to reach agreement.  In so reporting, I

24  want to express to the Court, in particular, my appreciation

25  for the efforts of counsel for the lenders, who I believe made

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 55
of 101

1  good-faith efforts to bridge the gap.

2          It's our primary concern, as the Court's aware, that

3  the financing, essentially, the way it's set up, once the Court

4  has found that a termination event, as defined in the

5  agreement, has occurred, the Court has no further role.

6          THE COURT:  Well, no, I think the debtors' counsel or

7  Mr. Hansen, for the DIP, didn't say there couldn't be

8  injunctive relief.  Well --

9          MS. DUMAS:  It's -- right.  There could be a motion

10  for injunctive relief.  I mean, and --

11          THE COURT:  But I mean, you might think that's not

12  much remedy, but imagine the horrible of horribles if you were

13  minding your own business and you got a call from someone

14  saying I just got appointed the Chapter 11 trustee and I've got

15  a month to do something about it, what do I do?  And the first

16  thing you might do, after you take two aspirin, would be to

17  think about getting an injunction if the lenders were playing

18  hardball, right?

19          MS. DUMAS:  It was, in our view, a sensible decision

20  on the part of the lenders to agree to change the time frame

21  from seven days to twenty-one business days; the Court may

22  still, under any circumstance.  But bear in mind, Your Honor,

23  that our research, both before and after the initial hearing,

24  confirmed that this was an extremely attractive loan for the

25  lenders to make, and we've been told by more than one source

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 56
of 101

1   that it would be easy for the debtors to replace the loan

2   within twenty-one business days.  So --

3             THE COURT:  Um-hum.

4             MS. DUMAS:  -- the alternative of taking the loan out

5   and replacing it is doable.

6             THE COURT:  Well, that's good news, isn't it?

7             MS. DUMAS:  It is good news.

8             THE COURT:  Yeah.

9             MS. DUMAS:  However, any other event of default, other

10   than the appointment of a Chapter 11 trustee, is still subject

11   to the seven-day rule.

12             THE COURT:  But it's not -- but I didn't hear that the

13   injunctive relief has been cut out of the federal rules or the

14   bankruptcy rules.

15             MS. DUMAS:  No.  No, sir, it hasn't.

16             THE COURT:  So --

17             MS. DUMAS:  And I would expect that, at a minimum,

18   should that situation occur, where the lenders give us seven-

19   day notice, Your Honor finds that the termination event has

20   occurred, and therefore you have no further ability to do

21   anything --

22             THE COURT:  Yeah, but again --

23             MS. DUMAS:  -- under this order --

24             THE COURT:  Under this order, but --

25             MS. DUMAS:  Under this order.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 57
of 101

 1           THE COURT:  But if the next sentence out of counsel's
 2    mouth is could you now please hear our motion for a preliminary
 3    injunction --
 4           MS. DUMAS:  I --
 5           THE COURT:  -- or a temporary restraining order --
 6           MS. DUMAS:  I certainly think that, at a minimum, the
 7    Public Utilities Commission, the State of California, any one
 8    of a number of entities, would be racing in to stop a lender
 9    group on seven days', calendar days, notice from taking action
10    against this utility.
11           THE COURT:  And maybe the lender group would be --
12           MS. DUMAS:  I absolutely believe that.
13           THE COURT:  -- would be well advised not to take any
14    precipitous foreclosure type action.
15           MS. DUMAS:  I agree.
16           THE COURT:  Can you imagine --
17           MS. DUMAS:  I think that there is --
18           THE COURT:  -- the nightmare of trying to orchestrate
19    a nonjudicial, noncourt-supervised disposition?
20           MS. DUMAS:  I --
21           THE COURT:  I don't mean liquidation --
22           MS. DUMAS:  We see --
23           THE COURT:  -- I mean disposition.
24           MS. DUMAS:  Yes, Your Honor.  We see no reason why, in
25    an orderly Chapter 11, in a reportedly solvent case, with a 10x

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 58
of 101

1   collateral cushion, we should be in the place where the State

2   of California has to rush in to save what's a quasi-public

3   service.  What we suggested and was rejected is that the

4   twenty-one-business-day offer apply to all events of default

5   because, under any circumstance that we believe is commercially

6   reasonable, this debtor would be able to replace this loan and

7   that in fact many, if not all, the same lenders would want to

8   get back in.

9           So we don't like that as a solution to what should be

10  an orderly process of administering a bankruptcy case that, on

11  seven days, when the Court has said, you know, yes, you're

12  trying to sell an asset that's 250 million dollars plus one,

13  and I can't do anything, the lenders give their seven-day

14  notice --

15          THE COURT:  But you know --

16          MS. DUMAS:  Understood.

17          THE COURT:  -- again, I don't want to get into the bad

18  habit of equating this case to everyday cases, but every day we

19  have, on the relief-from-stay calendar, drop-dead dates

20  expiring and lenders itching to foreclose on single-family

21  residences in South San Francisco, and debtor's lawyers saying

22  just give me an injunction while I line up my refinancing.

23          You know, don't you think that I'd remember or some

24  other judge would remember that we can do the same thing in a

25  seventy-billion dollar debt, that if there really is an ability

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 59
of 101

1    to refinance on an expedited basis, whether it be a six-

2    million -- billion-dollar DIP loan, or a 500,000-dollar home

3    loan, an injunction works in order to get the refinancing.  So

4    why would this be different, particularly if you are optimistic

5    that there is time to line up replacement lenders?  What's

6    different?

7            MS. DUMAS:  Your Honor, I think that --

8            THE COURT:  I mean, look, I'm not trying to play --

9            MS. DUMAS:  No, no, no, it's just --

10           THE COURT:  -- compete with you.

11           MS. DUMAS:  We appreciate --

12           THE COURT:  I'm trying to figure out --

13           MS. DUMAS:  We appreciate the Court's engagement.

14           THE COURT:  But I'm trying to figure out what are the

15   alternatives because I know you want me to disapprove it.  I

16   can't pretend that I was at the conference table negotiating,

17   or you were.  We weren't there negotiating the DIP loan.  And

18   so the DIP loan and lenders and lawyers for the company and

19   advisors for the company put together a deal that you might

20   think is very profitable for the lenders.  That may be true.  I

21   don't think they're lending money here to lose it.  But I'm

22   trying to look to a solution if there is an easy way around

23   disapproving it.  And I don't see that that's a good

24   alternative, particularly that you are somewhat optimistic that

25   there could be refinancing.

1          And I guess let's try it a different way.  I don't

2    know if this will happen, and I hope that it doesn't happen,

3    that I am asked to enter an injunction to hold up the DIP

4    lenders to try to make a refinancing.  But I wouldn't be

5    bashful about doing it if I had to.  I wouldn't be -- I

6    wouldn't say, you know, so what if the loan said seven days; I

7    have the ability to enjoin under the right set of facts.  And

8    if the right set of facts are this trustee, who just got

9    created, can line up a replacement financer and close the deal

10   in twenty-one days, who could complain about that?  And you

11   know what?  The lenders would love it, and you know they'd love

12   it as well as I do.

13             MS. DUMAS:  Absolutely.  Your Honor --

14             THE COURT:  Right.

15             MS. DUMAS:  -- I'm trying to communicate something

16   different --

17             THE COURT:  Okay.

18             MS. DUMAS:  -- which is I think the lenders have been

19   reasonable.  I think, with a little bit more time to study the

20   situation, we might actually have been able to reach an

21   agreement.  Where we ran into a stone wall, shockingly, is

22   the --

23             THE COURT:  Well, don't disclose confidential

24   negotiations.

25             MS. DUMAS:  Yeah, I'm not -- was the debtors'

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 61
of 101

1  unwillingness to have any interference in its program.  So I

2  understand that the Court will grant this motion over the tort

3  committee's objection.  I wanted to compliment lenders and

4  lender's counsel for trying to actually respond to some of the

5  concerns of the tort committee which I think were completely

6  disregarded by the debtor.

7          THE COURT:  Okay.

8          MS. DUMAS:  It may be because they have two strong-

9  willed firms both acting as bankruptcy counsel with respect to

10 this particular aspect of the case.  I do not know.  But the

11 frustrating element here was the absolute unwillingness of the

12 debtor to try to improve the terms of the loan.  And I've been

13 told and I understand that you will grant this.

14         THE COURT:  Well, I didn't say I would grant it.  I

15 said I would listen --

16         MS. DUMAS:  I've been told.

17         THE COURT:   -- to the argument.

18         MS. DUMAS:  I have been told that you will grant this,

19 and I should --

20         THE COURT:  Did anybody see a tentative ruling?

21         MS. DUMAS:  -- sit down and shut up.  That's fine.

22         THE COURT:  Ms. Dumas, you've known me for a while.

23 I --

24         MS. DUMAS:  Yeah, and I --

25         THE COURT:  -- don't always tip my hand.  I haven't

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 62
of 101

1  said how I'm going to rule.

2        MS. DUMAS:  I warrant that I think that's a likelihood

3  for all of the reasons that you've described.

4        THE COURT:  Well --

5        MS. DUMAS:  It's a shame to the tort committee that we

6  have to get to the grounds for an injunction to keep a utility

7  going, when the lenders are willing to compromise, and the

8  debtor is saying, sorry, we don't need your interference.  That

9  is wrong --

10        THE COURT:  Okay.

11        MS. DUMAS:  -- and unusual.  That's my point.

12        THE COURT:  Well, I understand your point.  And it

13  took a while for me to get the message, and I hear you.  What

14  are my choices?  In other words, you've now predicted that I'm

15  going to grant the motion.  But what if I told you I'm still

16  looking for alternatives?  What's my alternative --

17        MS. DUMAS:  My --

18        THE COURT:  -- to just say continue it another month

19  and go negotiate for another month?

20        MS. DUMAS:  My --

21        THE COURT:  That won't work.

22        MS. DUMAS:  My official request today is to give us

23  more time to try to work out a deal because I haven't been

24  taken seriously by the debtor.  I have been taken seriously by

25  the lenders.  Surprising, but that's the case.

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 63
of 101

1          THE COURT:  No, but --

2          MS. DUMAS:  They --

3          THE COURT:  But the deadline is April 15th, right?

4          MS. DUMAS:  That's correct.

5          THE COURT:  So again, I don't want to know what

6     private conversations occurred, but I suppose, if the DIP

7     lenders were willing to extend that date, then extension of a

8     short time to try to negotiate is not harmful because, last I

9     understand, Mr. Zumbro would give me an update if I asked --

10    they probably haven't even drawn the one-and-a-half billion

11    that's been authorized yet.  So it's not as though someone's

12    going to get a check for five-and-a-half billion dollars --

13         MS. DUMAS:  I wouldn't be surprised --

14         THE COURT:  -- the way some people want to have happen

15    in other forums.

16         MS. DUMAS:  I wouldn't' be surprised, Your Honor, if

17    progress could be made in advance of the next reserved dates of

18    April 8th and April 9th, which would be before the April 15th

19    deadline.

20         THE COURT:  9th and 10th.

21         MS. DUMAS:  I'm sorry, 9th and 10th.

22         THE COURT:  Well, I mean, look, if I thought that

23    there was a chance, and even if Mr. Zumbro said, no, we want it

24    today, I might say: what's the harm; why not wait till April

25    10th?  But again, the question is what's going to happen?  I

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 64
of 101

1    don't know.  If something happens, something might happen.

2    That's not a bad thing.

3              MS. DUMAS:  I remain hopeful that something can

4    happen, and that's my honest belief.  And yes, Your Honor, you

5    have known me for a long time, and if I have an honest belief

6    I'll communicate that to you.

7              I don't know that the other parties are willing to

8    engage in any meaningful discussions.  And by that I don't mean

9    the lenders, as I've said several times now.

10             THE COURT:  Well, you've made it clear that you're

11   critical of either the debtor or the debtors' advisors.  And I

12   don't need to personalize it.  You --

13             MS. DUMAS:  I don't mean to personalize it either.

14             THE COURT:  You've said what you've said.  They may

15   have a different point of view.

16             Does the official unsecured creditors' committee have

17   a recommendation on this?

18             MR. BRAY:  Yes, Your Honor.

19             MS. DUMAS:  Your Honor, unless you have anything else

20   for me, I'm going to --

21             THE COURT:  No, I'll come back to you --

22   then.

23             THE COURT:  -- because we've got counsel for the

24   committee here.

25             I mean, again, I'm trying to -- got some advice, got

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 65
of 101

 1   some good free advice for me?

 2          MR. BRAY:  Gregory Bray, Your Honor, Milbank LLP,

 3   counsel for the -- proposed creditors' committee counsel.

 4          I don't know if it's good or free advice.  The

 5   committee remains supportive of the Court's approval of the DIP

 6   today.  We believe it's in the interests of all unsecured

 7   creditors that it's very important for this company to have a

 8   stable source of liquidity.  It's important to counterparties,

 9   it's important to vendors, it's important to suppliers.  It's

10   important for maintaining value of the company and perhaps even

11   enhancing value.  That's the value that's going to be available

12   to pay the claims of all unsecured creditors.

13          THE COURT:  Well, but it's not going to go away

14   between now and April 10th, though.

15          MR. BRAY:  It's not going to go away, but the longer

16   it drags -- a couple things.  First, we've already had a two-

17   week delay.  And the process has gone as far as it can go.

18          THE COURT:  But is it --

19          MR. BRAY:  There's no reason --

20          THE COURT:  But is it really a delay, when you think

21   about it?  The first million-and-a-half hasn't been drawn,

22   right, and the deadline that -- the drop-dead deadline hasn't

23   expired.  So what has been a delay, other than the running of

24   the clock?

25          MR. BRAY:  There's simply a disagreement over the

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 66
of 101

1  terms.

2            THE COURT:  Right.  Right.

3            MR. BRAY:  I don't think another week or two is going

4  to solve that. I don't think it'll change anything short of the

5  Court sitting the parties down and making a ruling.  I think

6  the issues are joined at this point, and we would,

7  respectfully, urge the Court to rule and to approve the DIP.

8  Every DIP has an element of risk to it.  There's just --

9  there's no getting around that.

10            THE COURT:  No, I understand, of course.  But there's

11  not a lot of risk here.

12            MR. BRAY:  There's not a lot of risk.  In fact, the

13  risk is mitigated by some of the comments you've heard today,

14  by Your Honor's comments, by the approval process, the

15  regulatory process involved.

16            THE COURT:  Mr. Bray, what is the risk of giving Ms.

17  Dumas and her clients two more weeks to try to persuade the

18  people that she can't yet persuade?

19            MR. BRAY:  The risk is nothing will happen, the

20  process will continue to drag itself out.

21            THE COURT:  But why is that a risk?

22            MR. BRAY:  It's a risk because I think you've heard

23  from the lenders and from the company that there's nothing more

24  to give on this.  And if we continue to push --

25            THE COURT:  No, I've heard from the committee's

1  counsel that the debtor hasn't given --

2        MR. BRAY:  I don't want to speak for Mr. Hansen.

3        THE COURT:  I understand.

4        MR. BRAY:  He'll speak for himself.

5        THE COURT:  No.

6        MR. BRAY:  My experience is that the lenders have gone

7  as far as they can go and that if we push any further in this

8  process we're going to see potential resyndication and an

9  increase in pricing.

10        THE COURT:  But there's no --

11        MR. BRAY:  It's a question of risk allocation.

12        THE COURT:  But seriously, Mr. Bray, if I just called

13  in sick today and said, you know, I'm going to have to continue

14  this till April 10th, the lenders wouldn't have been able to

15  pull the plug; they're contractually committed to do this deal

16  if the Court approves it by April 15th, right?  They've made a

17  loan commitment.

18        MR. BRAY:  Agreed.

19        THE COURT:  Like any other lender with a loan

20  commitment, they're committed.  And there are tradeoffs.  If I

21  say I disapprove it then there are consequences.  If I say I

22  approve it there are -- it would put it to bed.  But you

23  haven't told me what is the downside in at least asking one --

24  not just one lawyer, but a lawyer representing a serious

25  important component, and you representing another serious

 1    component.  They have a different view.  But I'm not hearing

 2    any risk other than the professional fees that are incurred if

 3    we have another hearing in two weeks.

 4              MR. BRAY:  My --

 5              THE COURT:  And you know, that's not insignificant,

 6    but --

 7              MR. BRAY:  I think the risk is the wrong -- maybe

 8    that's not the right word.

 9              THE COURT:  Okay.

10              MR. BRAY:  It's highly unlikely -- we've had two

11    weeks --

12              THE COURT:  Okay.

13              MR. BRAY:  -- in another two weeks we'll get anything

14    done.

15              THE COURT:  Highly unlikely is fair.  Fair enough.

16              MR. BRAY:  I think we would, at this point in time --

17    I know I'm repeating myself -- I think the issues are probably

18    joined, and we would urge the Court to make a ruling and to

19    approve the DIP.

20              The risk may be -- you know, it may not be

21    quantifiable; maybe it is, but it is highly unusual to have a

22    DIP process continue to play out for as long as this one has

23    played.  Now, I understand the Court's view and understand that

24    this was an unusual case and the Court wants to be prudent and

25    careful.  At the same time --

1    THE COURT:  No, I want the parties -- the principal

2    players to cast their own fate, as much as they can, without --

3    I don't want to be smarter than everybody else and figure I

4    know the best thing to do because I might have some more

5    changes to the DIP agreement that I personally might favor, but

6    I don't believe that's my role.  My role is to -- I think it's

7    here-- I mean, obviously to try to persuade people to do

8    things, but here I think it would be wonderful if there is an

9    agreement.

10    It's pretty clear, Ms. Dumas has virtually predicted,

11    and I probably -- she's probably right; I probably will approve

12    the agreement.  But I don't know why there's a down side or a

13    risk to deferring it by two more weeks.  But anyway, you made

14    your point.

15    MR. BRAY:  Thank you, Your Honor.

16    THE COURT:  Okay.  Mr. Zumbro, do you want to be

17    heard, or does Mr. Hansen -- are you here today, Mr. Hansen?

18    Do you want to be heard?

19    MR. ZUMBRO:  I'd like to say one thing real quick --

20    THE COURT:  Okay.

21    MR. ZUMBRO:  -- before Mr. Hansen takes the --

22    THE COURT:  Yep.

23    MR. ZUMBRO:  -- podium, please, sir.  One thing -- I'm

24    not going to disclose the settlement discussions.

25    THE COURT:  Right.

1        MR. ZUMBRO:  I would like to say I do feel the need to

2   just address the record in terms of our interactions with Ms.

3   Dumas.  I think we were constructive.  I'm not going to tell

4   you about confidential settlement discussions.

5        THE COURT:  No, and I don't want you to.

6        MR. ZUMBRO:  But I will say I do feel the need to

7   defend ourselves by saying the only issue, Your Honor, that Ms.

8   Dumas ever raised with me was wholly unrelated to the DIP

9   facility.  So I find her allegations to be misguided, and I'd

10  like the record to just reflect that.

11       THE COURT:  Okay.  But you're the principal lawyer for

12  this aspect of the case.

13       MR. ZUMBRO:  Yes.

14       THE COURT:  What is the downside to your client and

15  you just to go two more weeks --

16       MR. ZUMBRO:  Well --

17       THE COURT:  -- and see what happens.

18       MR. ZUMBRO:  There's economic costs.  There's what's

19  called the ticking fee for the term loan component of the DIP

20  loan which keeps accruing additional commitment fees to the

21  lenders until it's funded.

22       THE COURT:  Does it change between --

23       MR. ZUMBRO:  It keeps getting --

24       THE COURT:  -- March 27th and April 10th?

25       MR. ZUMBRO:  It's on a day-by-day basis.  It's an

1    economic cost to the lenders.  I think as counsel to the

2    unsecured creditors' committee --

3            THE COURT:  Well, but if the DIP is approved today,

4    does that cost change?

5            MR. ZUMBRO:  It does.  It flips into a funded term

6    loan once it's funded because the term loan gets funded upon

7    the entry of a final order.

8            THE COURT:  By the entry, not the finality date of it?

9            MR. ZUMBRO:  The entry of the final order, correct.

10           THE COURT:  And the price goes up or it goes down?

11           MR. ZUMBRO:  The price -- it's a fee that no longer

12   accrues.  It gets turned into a final term loan.

13           THE COURT:  So in other words, there is an economic --

14           MR. ZUMBRO:  Yes, sir.

15           THE COURT:  -- benefit to approving it today rather

16   than two weeks from today?

17           MR. ZUMBRO:  Yes, sir, in addition to professional

18   costs.  And we also -- the market, it's very -- you know, our

19   suppliers and vendors and stuff, I think there needs to be --

20   this process has costs to this debtor of instability in its

21   operations.  We need to put that down.

22           THE COURT:  Well, but you didn't answer the question

23   that I pressed you to answer.  In terms of just availability of

24   committed funds, the debtor hasn't drawn the billion and a

25   half?

1           MR. ZUMBRO:  Not the full.

2           THE COURT:  Right.

3           MR. ZUMBRO:  We've drawn -- since we were last before

4  you, we have 350 million drawn --

5           THE COURT:  Right.

6           MR. ZUMBRO:  -- plus up to -- we've drawn 100 million

7  dollars of additional letters of credit.

8           THE COURT:  But if I said I think I'll wait two weeks,

9  you still wouldn't draw down the full 1.5 facility, right?

10          MR. ZUMBRO:  That's not the -- that's correct.

11          THE COURT:  All right.

12          MR. ZUMBRO:  That's not what's driving it.  But there

13  are direct economic costs --

14          THE COURT:  No, I understand.

15          MR. ZUMBRO:  -- and indirect costs.  And I'll let Mr.

16  Hansen speak.  Thank you, sir.

17          THE COURT:  Okay.  Mr. Hansen, you've been

18  complimented by Ms. Dumas.  Do you want to rest on your laurels

19  here?

20          MR. HANSEN:  Thank you, Your Honor.  Good morning.

21  Kris Hansen with Stroock & Stroock & Lavan on behalf of

22  JPMorgan Chase as administrative agent for the DIP loan.

23          I do appreciate Ms. Dumas' comments, and we were

24  trying to be accommodating, Your Honor.  And this isn't just,

25  you know, will a little more time make any further changes.  We

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 73
of 101

1  had to go out to our lender group.  That's a syndicated loan,

2  as I mentioned to you --

3         THE COURT:  Yeah, you made that clear last time.

4         MR. HANSEN:  Yeah, as I mentioned to you last time,

5  that's not an easy thing to do.  And without getting into our

6  settlement discussions, we couldn't meet the demands from the

7  tort committee, but we came back with what we thought was a

8  compromise, and so that's what you see reflected within the

9  document provided to you.  That was a conversation with the

10  syndicate lender group.  That takes time.  That's not an easy

11  thing to do.  And obviously we talked about other alternatives

12  with them when we spoke to them.  And this is where they

13  landed.  So more time is not going to allow this group to

14  change its mind with respect to anything else that's inured.

15  That's --

16         THE COURT:  Well, let's assume that you've drawn a

17  line in the sand.  The question that I -- and I'm not asking

18  you really to answer this.  I have to decide whether Ms. Dumas

19  and her clients might persuade the debtor group to change

20  position that maybe they haven't yielded on that.  And again,

21  I'd leave it at that.

22         MR. HANSEN:  Your Honor, you asked the question

23  related to risks.  So from a financial perspective, Mr. Zumbro

24  just pointed out to you that there is a ticking fee.  So a

25  ticking fee is effectively when you're -- in order to syndicate

1 the loan --

2 THE COURT: No, I know what it is. I mean, I wasn't

3 familiar with the terminology in this loan, but I know what

4 we're talking about.

5 MR. HANSEN: Sure. It's a commitment fee for people

6 sitting around waiting to see whether or not their loan is

7 going to be drawn, right? The only way you can get somebody to

8 say I'll commit to give you this amount of capital at a future

9 point it time is if you pay them a commitment fee and if

10 they're sitting around so long --

11 THE COURT: And I presume that's one of those amounts

12 that's in the confidential information that I --

13 MR. HANSEN: It is, and it increases over time.

14 THE COURT: No, I understand, and I agreed to keep

15 that document confidential --

16 MR. HANSEN: Yes.

17 THE COURT: -- and I'm not going to break my word to

18 you. So I don't --

19 MR. HANSEN: Right.

20 THE COURT: I'll take your word for it.

21 MR. HANSEN: Right. And so we have an economic

22 consequence there.

23 But I want to echo Mr. Bray's sentiment. So yes, PG&E

24 is a unique case. However, this company operates in the

25 ordinary course of business. They have trading counterparties,

1     from a natural gas perspective, from --

2              THE COURT:  Oh, I know.

3              MR. HANSEN:  -- a power production perspective.  They

4     have customers.  They have regulators.  Everyone expects --

5     obviously we have a viewpoint; everyone has a viewpoint of how

6     the bankruptcy case will go.  But by the way, the lenders do

7     too, those who made the commitment to fund this loan.

8              So now we are on the third attempt to get the DIP

9     approved.  Each time we come we hear about threats of Chapter

10    11 trustees, we hear of post-petition wildfire liabilities.  We

11    are in a situation where we're deviating, potentially, from --

12             THE COURT:  But those are real --

13             MR. HANSEN:  They are.

14             THE COURT:  -- real possibilities.

15             MR. HANSEN:  Well --

16             THE COURT:  Unfortunately.  I mean, I'm not saying

17    you're --

18             MR. HANSEN:  Understood, Your Honor.

19             THE COURT:  -- going to get a trustee next week.

20             MR. HANSEN:  But I'm just saying that when you think

21    about risk allocations, and for this company, right, whether or

22    not they've used the financing that's been offered to them to

23    date really isn't the issue.  The issue is ensuring everyone

24    who deals with PG&E -- that's a huge marketplace -- that they

25    have committed financing and they're on stable grounds.  If

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 76
of 101

1  that financing, in someone else's mind, is a little shaky,
2  someone might say to the debtors after this hearing today, if
3  you choose to delay it, you know what, I'm going to need more
4  collateral posted in connection with the trading agreement that
5  we have.  I'm sorry, but this is just getting -- the risk is
6  getting too much for me.  I'm obviously speculating, okay, but
7  there have -- the debtor told you on the first day, and again
8  at the second day, that they've had to post a lot of collateral
9  here, but they were able to get some credit back as a result of
10 getting the DIP approved on an interim basis.

11          So the more that this process plays itself out, in
12 terms of the uncertainty with respect to either the approval of
13 the DIP or its approval on different terms which then might
14 make it smaller, might make it more expensive, or might make it
15 go away in its entirety, and then they have to start to find an
16 alternative DIP, it injects risk into the debtors' operations
17 and its dealings with all of its counterparties.

18          So beyond the basic economic risk of potentially an
19 increased fee that's payable, which they've already agreed to
20 and you've approved, you have those existential risks to the
21 business that exist as a result of:  is it going to get a DIP
22 or not, and what's really going on here with respect to the
23 tort claimants committee?

24          And so questions are being injected in people's minds.
25 If we have to go back to the lender group now because Your

 1  Honor might say, well, I think this change is the only way that
 2  I'll approve this order -- I'm not saying you'll do that, but
 3  if you did, I can guarantee you that the lender group's
 4  perspective on risk associated with this loan is very different
 5  from --
 6          THE COURT:  No, I --
 7          MR. HANSEN:  -- the day that they entered into it.
 8          THE COURT:  I mean, you're preaching to the choir on
 9  that.  I am not sitting here on my own showing you my
10  alternative term sheet.  I'm trying to -- well, I'm trying to
11  do something a little different, but I understand your point.
12          MR. HANSEN:  And Your Honor, the other point is if we
13  keep moving it out and getting closer and closer to that April
14  15th date, just so you understand, the way that the documents
15  work, were that date to be sought to be extended, that's each
16  affected lender.  We have to get a hundred percent --
17          THE COURT:  No, I know.
18          MR. HANSEN:  -- of the lenders committed to extend
19  that date.
20          THE COURT:  You made that clear before.  I understood
21  it.
22          MR. HANSEN:  Yeah.  And that we might not get.  That
23  also creates -- I'm sure there'll be an expense associated with
24  it, if people are even willing to do it.
25          So there's that, but there's also a question of if we

 1  get right up into that date and we find ourselves yet again in
 2  a position where the answer is we don't have an answer, we
 3  don't know what to do, you're again putting the debtor in
 4  jeopardy in a place where, yes, the case is not your ordinary
 5  garden variety Chapter 11, but on certain parts of it the
 6  market expects that it should be.

 7          If it asks, after running a process for the approval
 8  of DIP financing, and you've got evidence that it was conducted
 9  in good faith, it was competitive, there were lots of lenders
10  and this is the best loan available, well, the marketplace
11  expects that that should be approved because the debtors should
12  have access to that financing.  There are aspects of this case
13  that are unique and are not the norm.

14          THE COURT:  Um-hum.  Right.

15          MR. HANSEN:  And we completely agree with you.  But on
16  the front of financing, that should be normal because they
17  should be able to front all of their counterparties, including
18  their customers and their regulators, and say we're secure,
19  from a financing perspective, and we, in our business judgment,
20  believe that that's important.

21          And so we respectfully ask the Court to defer to the
22  debtors' business judgment, the record that's been made, the
23  attempts, candidly, by all parties to reach consensus, and the
24  concessions that have been made by the lenders which are not in
25  significant because they do deviate substantially from the

1  normal form of order that they entered into.

2          And Your Honor, just one point also, earlier there was

3  this, kind of, colloquy about a potential injunction in the

4  future.  Obviously that would be in the face of what's in the

5  order.  And obviously, to the extent that that was brought up

6  with the Court at that point in time, we certainly would hear

7  the lenders say we have a DIP order, we're entitled to rely on

8  it.

9          THE COURT:  Right.

10          MR. HANSEN:  I couldn't let the hearing end without

11  making that remark.

12          THE COURT:  No.

13          MR. HANSEN:  Obviously, you know --

14          THE COURT:  But you know that that could happen.

15          MR. HANSEN:  If someone makes a motion --

16          THE COURT:  Right.

17          MR. HANSEN:  -- obviously we'll be -- if we believe

18  that it's reasonable -- maybe the motion doesn't even get made,

19  but if we believe that the circumstance is not reasonable, then

20  maybe we'll be here saying, you know, they made their motion,

21  but by the way, reasonable or not, this is what the order says

22  and this is what you're bound by.  And so I just thought that

23  was an important point to.

24          But I think the bigger point is, Your Honor, that the

25  debtor needs the financing.  It needs it because it secures its

1  business and its interactions with every party that it

2  interacts with in its marketplace, including its customers.

3  And we think, on those reasons alone, the Court should approve

4  the DIP today.

5          You, Your Honor, said the last time we were here, if

6  you can't reach agreement come back and I'll rule up or down.

7  We're asking you to rule up.  And also I don't believe, Your

8  Honor, that any more time is going to resolve anything further

9  with respect to the DIP itself.  There may be other collateral

10 issues going on between the debtors and the tort committee.

11 That's not our issue.

12         THE COURT:  Right.

13         MR. HANSEN:  Our issue, from the lender's perspective,

14 is we, in good faith, made this commitment; we would like a

15 loan to be approved.

16         THE COURT:  Okay.  Thank you, Mr. Hansen.

17         MR. HANSEN:  Thank you.

18         THE COURT:  Does anyone else want to be heard, not the

19 tort committee, any other party want to be heard on the matters

20 pending?

21         Ms. Dumas, any closing comments?

22         MS. DUMAS:  No, Your Honor.

23         THE COURT:  I'm persuaded by the last argument, Mr.

24 Hansen's argument, and the creditors' committee -- the other

25 creditors' committee.  What I might, in a perfect world, think

1   maybe might happen is not the same, and I think Mr. Hansen made
2   some points that are irrefutable.  And I'm not taking sides
3   here and saying to Ms. Dumas, these guys have treated your
4   wrongly, and nor am I criticizing Mr. Zumbro or any of the
5   lawyers or any of the people on the debtors' side.  I'm just
6   listening to the arguments.

7         And I think, on balance, as much as one party says
8   what's -- as I said to counsel, what's the downside of a short
9   delay, I've certainly -- I tend to ask that often on countless
10  questions that come before me in any setting.  But I'm
11  satisfied in Mr. Hansen's explanation, and the other counsel,
12  both for the unsecured committee and the debtor, have persuaded
13  me that the better thing to do here is to go ahead and grant
14  the motion.

15        So I will do it, and I will overrule the tort
16  committee's objections and the proposed findings -- the
17  proposed order, rather.  I've reviewed it carefully, and I
18  don't need to restate what has been indicated previously about
19  the good faith and certainly all the other predicates of the
20  traditional elements of 364 financing in terms of alternatives
21  and opportunities and so on.  And I think I'll just leave it at
22  that.  And so I will conclude the matter by granting the DIP
23  motion on a final basis consistent with everything we said
24  before.

25        And I believe that concludes our morning calendar,

1  unless someone thinks there's anything else we've overlooked

2  today.  Anything?

3          MR. ZUMBRO:  No.

4          IN UNISON:  Thank you, Your Honor.

5          MS. DUMAS:  I have one housekeeping matter.

6          THE COURT:  Yes, Ms. Dumas.

7          MS. DUMAS:  The debtor has a motion on file, I believe

8  for the 9th.  It is for approval of a short-term incentive

9  plan.

10          THE COURT:  Right.

11          MS. DUMAS:  And the response of the tort committee is

12  due tomorrow.  I'm told that Your Honor has an application to

13  file an oversized brief.  I wanted to let you know that in

14  advance since the brief is due tomorrow.

15          THE COURT:  Look, you guys have to bear with me.  I am

16  one judge with a small staff.  And I don't mind reading a

17  forty-five page brief instead of a forty-page brief.  What I

18  can't do is get briefs and reply briefs and counterreply briefs

19  twenty-four hours before a hearing or thirty-six hours before a

20  hearing.  I take some pride in preparing, but I'm only human.

21  And so I don't care, if you want an oversized brief, you can

22  have one.  Just remember I can only read so much, and I'm

23  reading lots of stuff.

24          So what I'm asking is to be reasonable in those

25  requests, but don't submit last-minute motions to me to delay

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 83
of 101

1  the deadlines if the hearings aren't getting delayed.  So I
2  know that both committees did it before and it might happen
3  again, and the last thing in the world I want to do is to send
4  a message out to dozens and dozens of professionals who are
5  working hard for their client to say the hearing's going to be
6  continued by a week or two because, by the way, the judge
7  hasn't had a chance to read the reply briefs.  So that's my
8  pitch, folks.  Longer briefs are not difficult.  Late briefs
9  are very difficult.

10          MS. DUMAS:  Thank you.  This will be timely and I
11  think only a few pages over the twenty-five page limit.  Thank
12  you, Your Honor.

13          THE COURT:  A few; I'll hold you to that.

14          Thank you, everyone.

15          IN UNISON:  Thank you, Your Honor.

16          THE COURT:  See you on April 9th.  And I will look
17  forward to hearing from Ms. Kim or others from the debtor if
18  somebody has some constructive suggestions on how to change the
19  procedure that we're following for these hearings.

20          MS. KIM:  Yes, Your Honor.

21          THE COURT:  Thank you to the staff.  Thank you for
22  getting me my water.

23      (Whereupon these proceedings were concluded at 10:56 AM)

24

25

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 84
of 101

1                           I N D E X

2    RULINGS:                                    PAGE LINE

3    In adversary, default is entered for the     12   11

4    fourteen defendants who did not respond, as

5    to motion for preliminary injunction.

6    The Court provided a tentative ruling        19   2

7    regarding Mr. Remington.  If Mr. Remington

8    accepts the stipulation outlined on the

9    record, the tentative ruling will become

10   final.

11   NOL motion is resolved by stipulation of the 38   8

12   parties.

13   Debtors' motion to for authority to continue 50   6

14   performance under settlement with Butte

15   County, granted.

16   DIP financing is approved on a final basis.  82   22

17

18

19

20

21

22

23

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

1     C E R T I F I C A T I O N

2

3 I, Penina Wolicki, certify that the foregoing transcript is a

4 true and accurate record of the proceedings.

5

6 *Penina Wolicki*

7

8 _____

9 /s/ PENINA WOLICKI, CET-569

10

11 eScribers

12 7227 N. 16th Street, Suite #207

13 Phoenix, AZ 85020

14

15 Date:  March 28, 2019

16

17

18

19

20

21

22

23

24

25

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 86 of 101

## A

**ability (3)**
57:20;59:25;61:7
**able (7)**
33:6;45:4;59:6;
61:20;68:14;77:9;
79:17
**absolute (1)**
62:11
**absolutely (5)**
17:3;30:18;46:17;
58:12;61:13
**accept (4)**
19:5,19;53:24;
55:14
**acceptable (1)**
18:7
**accepted (1)**
19:4
**accepts (2)**
19:10,17
**access (1)**
79:12
**accommodating (1)**
73:24
**accordance (1)**
17:22
**according (1)**
46:3
**accrues (1)**
72:12
**accruing (1)**
71:20
**acknowledged (1)**
43:24
**acting (1)**
62:9
**action (16)**
11:12,14;13:4,14;
14:15;20:20;21:9,16,
20;22:10;26:25;
31:12;32:3;33:13;
58:9,14
**actions (5)**
11:4,6;12:22,22;
45:7
**actual (1)**
15:24
**actually (6)**
15:20;26:15;46:1;
47:20;61:20;62:4
**ad (2)**
37:24;47:8
**add (1)**
51:19
**added (2)**
35:16;51:21
**addition (1)**
72:17
**additional (5)**
35:17;51:21;52:1;

**71:20;73:7**
**address (8)**
16:10;36:18;
42:15,17;45:3;
47:21;54:10;71:2
**addressed (1)**
44:13
**adequate (1)**
34:3
**administering (1)**
59:10
**administrative (1)**
73:22
**admits (2)**
20:20,22
**advance (2)**
64:17;83:14
**adversary (12)**
7:16;10:14;12:8,
13;19:12,18;26:1;
30:20;34:10,22;36:6,
6
**adverse (1)**
14:3
**advice (3)**
65:25;66:1,4
**advised (1)**
58:13
**advisors (2)**
60:19;65:11
**advocated (1)**
43:6
**affect (1)**
44:15
**affected (1)**
78:16
**again (34)**
9:20;15:11;16:9;
20:8;21:25;27:10,16,
18,24;28:19;30:23;
31:1;35:24;37:6;
38:14;40:14,19;41:3,
19;42:7;43:25;44:6;
50:9,20;57:22;
59:17;64:5,25;
65:25;74:20;77:7;
79:1,3;84:3
**against (16)**
11:4;18:4,5;23:3,
16;27:2;28:1,22,24;
29:10;31:14,15,25;
33:5;34:5;58:10
**agenda (6)**
7:8,8,12,15,20;
38:11
**agent (2)**
20:7;73:22
**ago (2)**
26:16;37:2
**agree (9)**
13:13;20:24;
28:12;32:9,10,16;
56:20;58:15;79:15

**agreeable (3)**
18:21;25:2;36:2
**agreed (11)**
31:2;34:1;37:17,
22;45:24;46:23;
51:7,23;68:18;
75:14;77:19
**agreed-to (1)**
8:9
**agreeing (2)**
31:7;41:11
**agreement (24)**
19:7;30:17;32:1;
35:11;38:9;17;39:21,
25;40:15,25;41:6,19;
46:12,14;48:25;
54:3;55:23;56:5;
61:21;70:5,9,12;
77:4;81:6
**agreements (5)**
38:23;43:12;48:5,
11;49:15
**agrees (2)**
13:5;42:10
**ahead (7)**
12:12;13:10;
20:14;27:10;39:2;
50:7;82:13
**Alarm (2)**
33:20,22
**allegations (2)**
40:16;71:9
**alleging (1)**
20:4
**allocation (1)**
68:11
**allocations (1)**
76:21
**allow (2)**
17:23;74:13
**allowed (1)**
22:20
**almost (2)**
9:4;29:18
**alone (1)**
81:3
**Alsup (4)**
40:1,5,14;46:4
**Alsup's (2)**
46:12,19
**alternative (5)**
57:4;60:24;63:16;
77:16;78:10
**alternatives (5)**
53:10;60:15;
63:16;74:11;82:20
**although (1)**
45:11
**always (1)**
62:25
**amendment (2)**
8:19,21
**America (1)**

**19:21**
**amiss (1)**
46:11
**amount (1)**
75:8
**amounts (2)**
8:17;75:11
**announcement (2)**
8:16;39:21
**anticipated (1)**
7:24
**apologize (3)**
37:7,10;43:2
**appearances (1)**
50:10
**appeared (1)**
35:2
**application (1)**
83:12
**applied (1)**
27:20
**apply (5)**
14:13;24:22;49:4,
5;59:4
**appointed (4)**
51:2;54:13,19;
56:14
**appointment (1)**
57:10
**appreciate (6)**
33:15;34:7;44:12;
60:11,13;73:23
**appreciation (1)**
55:24
**appropriate (3)**
10:7;40:23;42:12
**appropriately (1)**
53:22
**approval (6)**
66:5;67:14;77:12,
13;79:7;83:8
**approve (8)**
53:11;54:9;67:7;
68:22;69:19;70:11;
78:2;81:3
**approved (7)**
55:6;72:3;76:9;
77:10,20;79:11;
81:15
**approves (1)**
68:16
**approving (1)**
72:15
**April (16)**
34:11,11,20;36:5;
40:13;64:3,18,18,18,
24;66:14;68:14,16;
71:24;78:13;84:16
**area (1)**
43:11
**argue (1)**
49:13
**arguing (1)**

**27:13**
**argument (5)**
27:20;30:10;
62:17;81:23,24
**arguments (2)**
40:10;82:6
**arising (1)**
43:11
**around (6)**
21:21;48:5;60:22;
67:9;75:6,10
**articles (3)**
13:16;15:5,13
**aside (1)**
46:19
**aspect (4)**
26:1;34:10;62:10;
71:12
**aspects (2)**
55:6;79:12
**aspirin (1)**
56:16
**assert (1)**
14:4
**asserted (2)**
48:2;55:13
**asserting (1)**
31:24
**asset (1)**
59:12
**assets (1)**
51:24
**associated (2)**
78:4,23
**assume (1)**
74:16
**assumption (1)**
33:24
**attempt (1)**
76:8
**attempts (2)**
54:3;79:23
**attention (1)**
20:1
**Attorney (1)**
41:13
**attorneys' (2)**
17:20;29:9
**Attorney's (2)**
38:18;45:4
**attractive (1)**
56:24
**August (4)**
24:1;25:1;26:2,18
**authority (3)**
38:17;42:11;43:19
**authorization (1)**
52:15
**authorize (3)**
18:11;48:10;50:7
**authorized (1)**
64:11
**authorizing (2)**

Case: 19-30088    Doc# 1097    Filed: 03/28/19    Entered: 03/28/19 06:16:17    Page 87
of 101

46:10,13
**automatic (5)**
19:12;22:15;
28:20;30:20;54:16
**availability (1)**
72:23
**available (3)**
55:9;66:11;79:10
**a-vis (1)**
52:9
**aware (2)**
11:7;56:2
**away (5)**
34:23,25;66:13,
15;77:15

**B**

**back (21)**
9:12;10:13,17;
19:11;21:16,17;
23:11;27:16,17;
28:19;33:9,14;
36:14;50:18;51:6;
59:8;65:21;74:7;
77:9,25;81:6
**background (1)**
27:11
**bad (2)**
59:17;65:2
**Baker (2)**
44:9;55:21
**balance (3)**
17:4;53:2;82:7
**bankruptcy (11)**
28:21;31:12;
37:16;49:2,8,10,11;
57:14;59:10;62:9;
76:6
**bargained (1)**
45:23
**bashful (1)**
61:5
**basic (1)**
77:18
**basis (9)**
9:16;19:14;21:20;
42:11;55:3;60:1;
71:25;77:10;82:23
**bear (3)**
16:18;56:22;83:15
**bed (2)**
50:11;68:22
**begin (1)**
13:4
**behalf (16)**
7:6;10:24,25;12:8,
10;22:5;34:6;42:21;
44:10;47:8;50:17;
52:22,25;55:13,21;
73:21
**behind (1)**
27:23

**beings (1)**
49:3
**belaboring (1)**
55:1
**belief (2)**
65:4,5
**believable (1)**
24:10
**benefit (1)**
72:15
**Benvenutti (1)**
7:6
**best (5)**
24:17;54:10;55:9,
15;70:4;79:10
**better (3)**
9:21;54:14;82:13
**Beyond (2)**
28:17;77:18
**big (4)**
10:1,1;15:12;
17:15
**bigger (2)**
29:25;80:24
**bill (1)**
27:24
**billing (1)**
20:6
**billion (3)**
64:10,12;72:24
**billion-dollar (1)**
60:2
**bit (5)**
22:24;24:20;
51:20;53:22;61:19
**black-line (1)**
51:11
**blinks (1)**
53:21
**board (3)**
13:17;15:5,14
**body (1)**
49:25
**bogged (1)**
31:24
**both (11)**
11:1;27:2;34:2;
44:13;45:11;48:16;
52:12;56:23;62:9;
82:12;84:2
**bound (1)**
80:22
**BRAY (23)**
65:18;66:2,2,15,
19,25;67:3,12,16,19,
22;68:2,4,6,11,12,
18;69:4,7,10,13,16;
70:15
**Bray's (1)**
75:23
**breach (1)**
46:12
**break (3)**

10:2;51:3;75:17
**breaking (1)**
10:1
**bridge (1)**
56:1
**brief (6)**
19:10;83:13,14,17,
17,21
**briefs (7)**
37:6;83:18,18,18;
84:7,8,8
**bring (5)**
45:4;47:16;48:25;
49:20,20
**bringing (1)**
48:10
**brings (1)**
26:23
**broad (2)**
13:17;14:13
**brought (3)**
11:5;27:2;80:5
**bucks (2)**
29:23,24
**building (1)**
33:23
**burdens (1)**
55:8
**business (13)**
25:6;40:23;51:9,
24;55:8;56:13,21;
57:2;75:25;77:21;
79:19,22;81:1
**Butte (15)**
36:15;38:12,18;
39:22;40:7;41:11,
13;45:3,13,23;46:2,
13,21;47:5;50:8
**buy (1)**
30:1

**C**

**calendar (10)**
19:12;25:1;26:2;
33:15;34:11,11;
36:5;58:9;59:19;
82:25
**calendaring (1)**
34:9
**calendars (1)**
26:17
**CALIFORNIA (5)**
7:1;17:18;26:7;
58:7;59:2
**Call (4)**
7:3;8:19;16:24;
56:13
**called (4)**
16:8;45:1;68:12;
71:19
**calling (1)**
38:6

10:2;51:3;75:17
came (2)
51:6;74:7
can (40)
8:9;10:7;11:1;
12:2;18:13,19;19:10,
11;22:7;23:15;24:9;
26:4;31:17;33:1,25;
34:2,2,4;36:18;
41:14,15;44:6;
45:10;46:22;47:11;
49:17;53:22;54:22;
55:6;58:16;59:24;
61:9;65:3;66:17;
68:7;70:2;75:7;78:3;
83:21,22
**candidly (1)**
79:23
**capital (1)**
75:8
**capitalized (2)**
41:12;44:18
**care (3)**
26:14;52:24;83:21
**careful (1)**
69:25
**carefully (1)**
82:17
**carry (2)**
46:13;50:7
**carry-forwards (2)**
8:12;38:10
**case (33)**
7:19;8:20;9:2,10;
13:22,22;14:4,12,14;
16:5;20:4;22:23;
27:17,17,22;28:5;
33:8;38:24;48:1;
53:9,9;55:7;58:25;
59:10,18;62:10;
63:25;69:24;71:12;
75:24;76:6;79:4,12
**cases (2)**
14:13;59:18
**cast (1)**
70:2
**caught (1)**
16:11
**cause (1)**
21:9
**Cecily (2)**
44:9;55:20
**CEO (2)**
14:16,17
**certain (3)**
38:22;50:25;79:5
**Certainly (12)**
12:17;22:1;23:10;
26:5;48:2;49:16,19;
51:16;58:6;80:6;
82:9,19
**challenged (1)**
53:17
**chance (4)**

25:17;35:25;
64:23;84:7
**change (16)**
7:14;9:20;10:3;
51:7,20,21;52:10,11;
56:20;67:4;71:22;
72:4;74:14,19;78:1;
84:18
**changed (1)**
22:24
**changes (2)**
70:5;73:25
**Chapter (7)**
51:2;54:13;56:14;
57:10;58:25;76:9;
79:5
**characterized (1)**
44:25
**charge (1)**
36:24
**Chase (1)**
73:22
**check (1)**
64:12
**chew (1)**
29:19
**chief (3)**
13:23,24;14:5
**choices (1)**
63:14
**choir (1)**
78:8
**choose (3)**
49:19;55:4;77:3
**chose (1)**
47:10
**Chris (1)**
42:21
**circumstance (3)**
56:22;59:5;80:19
**circumstances (1)**
55:10
**civil (1)**
45:4
**claim (17)**
14:1,4;17:18,23;
18:14;22:20;28:2,18,
23;29:4,23;30:3;
31:12,18,18,25,25
**claimants (6)**
38:22;42:22;
44:11;55:13,22;
77:23
**claimants' (3)**
39:4,11;42:10
**claims (8)**
41:15;42:11;45:3,
4;47:9,22,22;66:12
**clarified (2)**
11:2;45:2
**clarify (2)**
21:24;53:7
**clear (8)**

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 88
of 101

40:22;41:18;
45:13;52:12;65:10;
70:10;74:3;78:20
**clearly (1)**
47:25
**CLERK (2)**
7:4;25:14
**client (11)**
25:6;26:17;30:18,
23;33:2,4,18,25;
40:9;71:14;84:5
**clients (4)**
37:24;43:20;
67:17;74:19
**clock (1)**
66:24
**close (2)**
24:14;61:9
**closer (2)**
78:13,13
**closing (1)**
81:21
**co-defendants (1)**
11:4
**collateral (6)**
29:4;32:2;59:1;
77:4,8;81:9
**colleagues (3)**
7:21;9:8;25:17
**collection (1)**
20:7
**Collier (1)**
13:16
**colloquy (1)**
80:3
**coming (1)**
8:18
**commencement (1)**
38:24
**comment (4)**
8:2;20:15;34:16;
50:7
**comments (5)**
26:16;67:13,14;
73:23;81:21
**commercially (1)**
59:5
**Commission (2)**
52:9;58:7
**commit (1)**
75:8
**commitment (7)**
68:17,20;71:20;
75:5,9;76:7;81:14
**committed (7)**
20:5;41:14;68:15,
20;72:24;76:25;
78:18
**committee (33)**
37:4,22,25;39:4,
11,14;40:24;42:10;
44:10;46:25;47:9;
49:21,22,24;52:23;

53:1;55:11,21;62:5;
63:5;65:16,24;66:3,
5;72:2;74:7;77:23;
81:10,19,24,25;
82:12;83:11
**committees (8)**
9:8,9,13;38:5;
48:16,23,24;84:2
**committee's (4)**
40:4;62:3;67:25;
82:16
**common (1)**
15:9
**communicate (2)**
61:15;65:6
**company (30)**
15:20,23;16:14,
20;17:3,6;27:3,25;
28:5;29:13,20,21;
31:14,16;33:7;34:1;
40:6;47:12,19,19;
48:9;49:19,22;60:18,
19;66:7,10;67:23;
75:24;76:21
**comparative (2)**
28:17,18
**comparing (1)**
48:20
**compete (1)**
60:10
**competitive (1)**
79:9
**complain (2)**
18:20;61:10
**complaint (1)**
31:3
**complete (1)**
17:22
**completely (2)**
62:5;79:15
**compliment (1)**
62:3
**complimented (1)**
73:18
**component (3)**
68:25;69:1;71:19
**compromise (2)**
63:7;74:8
**concepts (1)**
14:13
**concern (3)**
44:14,14;56:2
**concerns (4)**
44:13;50:22;
54:11;62:5
**concession (1)**
52:3
**concessions (1)**
79:24
**conclude (1)**
82:22
**concluded (1)**
84:23

**concludes (1)**
82:25
**concurs (1)**
47:1
**conducted (1)**
79:8
**conducts (1)**
39:16
**confer (2)**
10:17;24:24
**conference (1)**
60:16
**conferences (1)**
34:21
**confers (1)**
36:2
**confidential (4)**
61:23;71:4;75:12,
15
**confirmation (4)**
25:14,15;48:18;
49:15
**confirmed (2)**
24:4;56:24
**confusing (1)**
14:20
**congratulate (1)**
38:8
**Congress (1)**
22:11
**connected (2)**
15:17;16:6
**connection (1)**
77:4
**consensus (1)**
79:23
**consequence (2)**
46:8;75:22
**consequences (3)**
46:18,21;68:21
**consider (2)**
47:21;48:9
**consistent (5)**
19:16;50:10;
51:12,16;82:23
**constructive (3)**
42:14;71:3;84:18
**contest (1)**
21:6
**continuance (1)**
44:7
**continue (9)**
18:16;34:10;
38:17;48:10;63:18;
67:20,24;68:13;
69:22
**continued (4)**
21:9;26:1,14;84:6
**contracts (1)**
49:16
**contractual (1)**
27:14
**contractually (1)**

68:15
**convenience (1)**
38:6
**conversation (3)**
9:18;51:12;74:9
**conversations (2)**
54:2;64:6
**convey (1)**
18:24
**corporate (1)**
19:21
**Corporation (2)**
7:4;25:5
**correctly (2)**
41:10;52:21
**cost (3)**
16:18;72:1,4
**costs (6)**
29:8;71:18;72:18,
20;73:13,15
**cough (1)**
36:12
**coughing (1)**
34:9
**counsel (38)**
8:23;10:10,11,12;
15:13;20:8,18;
21:24;25:22,22;27:5,
9;28:12;30:9;31:2;
36:2,4;38:25;41:8,
22;42:1,10;44:13;
45:2,25;47:1;48:15;
55:25;56:6;62:4,9;
65:23;66:3,3;68:1;
72:1;82:8,11
**counsel's (2)**
44:12;58:1
**count (1)**
47:13
**counter (1)**
47:14
**counterintuitive (1)**
21:21
**counterparties (4)**
66:8;75:25;77:17;
79:17
**counterreply (1)**
83:18
**countless (1)**
82:9
**County (16)**
36:16;38:12,18;
39:22;40:7;41:11,13,
14;45:3,13,23;46:2,
13,21;47:5;50:8
**couple (4)**
34:13,17;52:20;
66:16
**course (3)**
22:16;67:10;75:25
**Court (388)**
7:3,7,9,13,18,21;
8:2,6,8,11,15;10:19;

11:1,7,18,21,24;
12:2,7,18,23,25;
13:2,7,8,20;14:11,
18,24;15:2,7,9,11,19,
22;16:1,3,6,13,23;
17:2,7,9,14,17;18:1,
11,15,23,25;19:2,9,
25;20:3,8,11,14,17;
24:21:7,11,12,15,17,
18,22,23;22:4,6,11,
14,17,21;23:5,9,14,
18,21,23,25;24:3,6,
13,16,19;25:1,8,10,
12,16,20,22;26:4,7,
10,13,20,22;27:1,5,8,
13,16;28:7,9,12,16,
19,21;29:1,3,6,12,14,
17;30:4,9,13,14,19;
31:1,6,9,13,17;32:4,
6,9,11,11,17,19,21,
24;33:11,13,16,18,
21;34:8,16,19,23,25;
35:3,6,9,13,18,20,23;
36:9,11,19,22,24;
37:3,5,8,11,13,15,19,
20,22;38:1,4,13,25;
39:14,16,23;40:2,4,
18,24;41:2,4,6,13,17,
21,21;42:4,6,12,13,
18,20,25;43:2,9,10,
13,18,23;44:2,4,7,17,
20,22,24;45:6,8,9,16,
19,21;46:3,5,7,12,16,
18,24;47:3,4,13,17;
48:7,13,15;49:10,17,
21;50:4,6,13,14,18,
23,24;51:1,5,10,16;
52:2,4,7,14,17;53:3,
7,16,21;54:1,6,9,16,
18,21,24;55:2,17,19,
24;56:3,5,6,11,21;
57:3,6,8,12,16,22,24;
58:1,5,11,13,16,18,
21,23;59:11,15,17;
60:8,10,12,14;61:14,
17,23;62:2,7,14,17,
20,22,25;63:4,10,12,
18,21;64:1,3,5,14,20,
22;65:10,14,21,23;
66:13,18,20;67:2,5,
7,10,16,21,25;68:3,5,
10,12,16,19;69:5,9,
12,15,18,24;70:1,16,
20,22,25;71:5,11,14,
17,22,24;72:3,8,10,
13,15,22;73:2,5,8,11,
14,17;74:3,16;75:2,
11,14,17,20;76:2,12,
14,16,19;78:6,8,17,
20;79:14,21;80:6,9,
12,14,16;81:3,12,16,
18,23;83:6,10,15;
84:13,16,21

Case: 19-30088    Doc# 1097    Filed: 03/28/19    Entered: 03/28/19 06:16:17    Page 89
of 101

**courtroom (2)**
9:19;48:5
**Court's (8)**
34:7;42:23;47:1;
54:11;56:2;60:13;
66:5;69:23
**covering (1)**
35:23
**CPUC (2)**
52:15;55:12
**Cravath (1)**
50:17
**crazy (1)**
23:5
**created (1)**
61:9
**creates (1)**
78:23
**credible (1)**
24:9
**credit (2)**
73:7;77:9
**creditor (1)**
49:25
**creditors (4)**
48:21;49:5;66:7,
12
**creditors' (7)**
52:25;55:11;
65:16;66:3;72:2;
81:24,25
**creeping (2)**
48:18;49:14
**crime (1)**
41:14
**criminal (1)**
46:2
**critical (2)**
27:19;65:11
**criticizing (1)**
82:4
**cross-claim (10)**
29:2,5,8,11;31:3,6,
8,13,15;32:24
**cups (1)**
35:13
**current (4)**
13:18,19;14:17;
23:3
**cushion (1)**
59:1
**customer (1)**
16:24
**customers (3)**
76:4;79:18;81:2
**cut (4)**
16:11;17:9;51:11;
57:13
**cutting (1)**
53:19

**D**

**DA (1)**
41:11
**damages (1)**
25:7
**date (12)**
8:24,25;25:15;
26:4,14;64:7;72:8;
76:23;78:14,15,19;
79:1
**dates (7)**
25:13,18,21,22,23;
59:19;64:17
**David (1)**
10:23
**Davis (17)**
27:7;30:5,7,10,11,
11,16,21;33:1,12,17,
24;34:6,14,14;35:25;
36:10
**day (9)**
8:18;25:7;33:11;
45:12;57:19;59:18;
77:7,8;78:7
**day-by-day (1)**
71:25
**days (12)**
19:15;51:8,9,24;
54:15;56:21,21;
57:2;58:9;59:11;
61:6,10
**days' (1)**
58:9
**deadline (6)**
34:20;39:5;64:3,
19;66:22,22
**deadlines (1)**
84:1
**deal (11)**
7:19;8:17;15:12;
17:15;29:25;50:11;
53:10;60:19;61:9;
63:23;68:15
**dealings (1)**
77:17
**deals (1)**
76:24
**debate (1)**
49:17
**debt (1)**
59:25
**debtor (29)**
22:12;25:2;32:25;
37:22;38:5;39:15;
40:22;43:19;44:7;
48:15,24;50:7;
54:21;59:6;62:6,12;
63:8,24;65:11;68:1;
72:20,24;74:19;
77:7;79:3;80:25;
82:12;83:7;84:17
**debtors (19)**
7:6;10:25;11:5;
13:17,17;19:13;

21:4;38:15,16,23;
48:2,3;50:17;55:6,9;
57:1;77:2;79:11;
81:10
**debtors' (10)**
8:23;10:11;11:3;
25:22;56:6;61:25;
65:11;77:16;79:22;
82:5
**debtor's (1)**
59:21
**decide (5)**
12:23;24:7;48:17;
55:3;74:18
**decided (2)**
46:20;53:1
**decides (2)**
18:8;46:7
**decision (3)**
50:1,2;56:19
**declaration (2)**
13:15;53:8
**default (9)**
11:19;12:6,14;
35:4;51:8,25,25;
57:9;59:4
**defaults (2)**
12:14;35:7
**defend (1)**
71:7
**defendant (3)**
12:10;13:23;14:6
**defendants (10)**
10:24;11:10,14,
22;12:8;14:5;22:10,
12;28:20,21
**defending (2)**
12:3;29:21
**defense (1)**
33:7
**defer (2)**
39:15;79:21
**deferring (1)**
70:13
**defined (2)**
41:10;56:4
**definition (1)**
45:22
**definitively (1)**
48:1
**delay (7)**
47:25;66:17,20,
23;77:3;82:9;83:25
**delayed (1)**
84:1
**delivery (1)**
51:25
**demands (1)**
74:6
**demonstrated (1)**
21:4
**denied (2)**
23:11,12

**denies (1)**
21:15
**Denver (3)**
26:6,7,8
**deny (4)**
21:18;25:6;27:4,
12
**depends (1)**
21:14
**deputy (1)**
9:19
**describe (1)**
20:5
**described (1)**
63:3
**determination (1)**
28:23
**determined (1)**
46:4
**determines (1)**
46:7
**deviate (1)**
79:25
**deviating (1)**
76:11
**Dharap (2)**
27:6,6
**difference (1)**
13:21
**different (14)**
13:20;14:4;28:3;
32:21,22;60:4,6;
61:1,16;65:15;69:1;
77:13;78:4,11
**differently (1)**
45:12
**difficult (2)**
84:8,9
**dimension (1)**
14:12
**diminish (1)**
14:22
**DIP (34)**
36:16;42:9;50:14,
23;51:7,23;53:15,23;
56:7;60:2,17,18;
61:3;64:6;66:5;67:7,
8;69:19,22;70:5;
71:8,19;72:3;73:22;
76:8;77:10,13,16,21;
79:8;80:7;81:4,9;
82:22
**direct (1)**
73:13
**directly (1)**
43:9
**directs (1)**
17:21
**disagreement (1)**
66:25
**disapprove (2)**
60:15;68:21
**disapproving (1)**

60:23
**disclose (2)**
61:23;70:24
**discovery (1)**
34:21
**discuss (1)**
25:17
**discussed (1)**
52:19
**discussing (1)**
13:4
**discussion (2)**
37:2;51:17
**discussions (7)**
11:11;51:22;
53:23;65:8;70:24;
71:4;74:6
**dismiss (3)**
18:14;28:13;
30:13;31:7
**dismissal (1)**
32:25
**dismissed (1)**
11:9
**dismisses (1)**
34:1
**disposition (3)**
38:5;58:19,23
**dispute (2)**
12:23;21:4
**disregarded (1)**
62:6
**district (5)**
21:11,16,22;
38:18;39:16;41:13;
45:3,8;46:3
**doable (1)**
57:5
**docket (2)**
8:25;9:3
**doctrine (1)**
24:21
**document (3)**
19:6;74:9;75:15
**documents (2)**
9:3;78:14
**dollar (1)**
59:25
**dollars (7)**
17:24;24:14;
48:19,22;59:12;
64:12;73:7
**done (6)**
18:16;19:17,17;
28:1;50:11;69:14
**doubt (1)**
15:23
**down (14)**
16:8;18:3;31:24;
36:15;44:17;50:14;
55:3;62:21;67:5;
70:12;72:10,21;
73:9;81:6

Case: 19-30088    Doc# 1097    Filed: 03/28/19    Entered: 03/28/19 06:16:17    Page 90
of 101

**downside (3)**
68:23;71:14;82:8
**dozens (2)**
84:4,4
**draft (2)**
8:12;38:10
**drafted (1)**
45:12
**drag (1)**
67:20
**drags (1)**
66:16
**draw (1)**
73:9
**drawn (8)**
64:10;66:21;
72:24;73:3,4,6;
74:16;75:7
**driving (1)**
73:12
**drop (2)**
18:3;36:12
**drop-dead (2)**
59:19;66:22
**due (4)**
40:13,13;83:12,14
**Dumas (89)**
41:9,21;44:4,9,9,
19,21,23,25;45:7,15,
18,20,24;46:6,15,17,
23,25;51:13,22;
52:12,22;53:6,19;
55:13,19,20,20;56:9,
19;57:4,7,9,15,17,23,
25;58:4,6,12,15,17,
20,22,24;59:16;60:7,
9,11,13;61:13,15,18,
25;62:8,16,18,21,22,
24;63:2,5,11,17,20,
22;64:2,4,13,16,21;
65:3,13,19;67:17;
70:10;71:3,8;73:18;
74:18;81:21,22;
82:3;83:5,6,7,11;
84:10
**Dumas' (1)**
73:23
**duty (1)**
36:14

**E**

**earlier (2)**
41:25;80:2
**early (1)**
37:10
**easier (1)**
9:22
**easily (1)**
21:2
**easy (5)**
22:7;57:1;60:22;
74:5,10

**echo (1)**
75:23
**economic (7)**
28:11;71:18;72:1,
13;73:13;75:21;
77:18
**edit (1)**
52:7
**edits (1)**
51:11
**effect (2)**
19:13;30:20
**effectively (1)**
74:25
**effort (1)**
17:20
**efforts (2)**
55:25;56:1
**either (13)**
13:8;21:7;22:19;
25:2;39:8,10;40:8;
41:6;44:24;45:2;
65:11,13;77:12
**Electric (1)**
29:20
**electricity (5)**
16:11,12,15,21,22
**element (2)**
62:11;67:8
**elements (1)**
82:20
**else (14)**
14:2;28:2;29:24;
36:15;43:18;46:9;
47:4;50:6;54:22;
65:19;70:3;74:14;
81:18;83:1
**else's (1)**
77:1
**email (1)**
9:19
**embarrassed (1)**
49:7
**emotions (1)**
49:4
**emphasize (1)**
14:6
**employ (1)**
13:19
**employees (2)**
13:19;23:3
**empty (1)**
28:6
**end (4)**
10:14;19:11;
45:12;80:10
**engage (2)**
53:14;65:8
**engaged (2)**
11:11;24:23
**engagement (1)**
60:13
**enhanced (1)**

38:19
**enhancing (1)**
66:11
**enjoin (2)**
12:21;61:7
**enough (1)**
69:15
**ensuring (1)**
76:23
**enter (6)**
18:11;19:19;
22:18;53:3;55:16;
61:3
**entered (5)**
7:11;38:22;39:21;
78:7;80:1
**entirety (1)**
77:15
**entities (1)**
58:8
**entitled (3)**
25:7:43:4;80:7
**entity (1)**
27:20
**entry (3)**
72:7,8,9
**equating (1)**
59:18
**equipment (6)**
16:16,17,19,21;
17:13;18:13
**equitable (1)**
15:14
**especially (1)**
35:1
**essentially (2)**
11:18;56:3
**established (2)**
53:16;55:7
**estoppel (2)**
29:4;32:2
**evaluate (1)**
13:2
**even (11)**
24:14;29:9,10,22;
31:24;35:16;64:10,
23;66:10;78:24;
80:18
**event (4)**
45:2;56:4;57:9,19
**events (1)**
59:4
**eventually (2)**
16:14;24:6
**everybody (6)**
17:18;28:2;29:24;
36:11;42:15;70:3
**everyday (1)**
59:18
**everyone (5)**
48:12;76:4,5,23;
84:14
**everyone's (1)**

42:16
**evidence (2)**
53:4;79:8
**exactly (2)**
15:18;54:12
**except (1)**
13:21
**exchange (1)**
33:25
**excluding (1)**
10:9
**Excuse (1)**
31:4
**executed (3)**
48:4,8,11
**executive (2)**
13:23;14:5
**executives (2)**
14:24;19:22
**executory (1)**
49:16
**exercise (1)**
40:23
**exhibits (2)**
8:10;37:18
**exist (1)**
77:21
**existential (1)**
77:20
**expect (1)**
57:17
**expects (3)**
76:4;79:6,11
**expedited (1)**
60:1
**expense (1)**
78:23
**expenses (1)**
29:9
**expensive (1)**
77:14
**experience (1)**
68:6
**expired (1)**
66:23
**expiring (1)**
59:20
**explain (1)**
18:17
**explained (1)**
18:2
**explanation (2)**
47:1;82:11
**express (1)**
55:24
**expressed (2)**
28:14;50:22
**extend (2)**
64:7;78:18
**extended (1)**
78:15
**extension (1)**
64:7

**extent (1)**
80:5
**extremely (1)**
56:24

**F**

**face (1)**
80:4
**facility (3)**
53:15;71:9;73:9
**fact (8)**
12:7;13:25;22:9,
23;28:22;48:1;59:7;
67:12
**factor (3)**
21:3,6,8
**factors (2)**
13:3;21:2
**facts (2)**
61:7,8
**failure (1)**
46:1
**Fair (2)**
69:15,15
**faith (4)**
53:9;79:9;81:14;
82:19
**fall (2)**
21:12;25:13
**falls (1)**
45:21
**familiar (3)**
8:20;20:17;75:3
**far (3)**
22:19;66:17;68:7
**Farr (1)**
47:8
**fate (1)**
70:2
**fault (2)**
28:17,18
**faulting (1)**
43:4
**favor (1)**
70:5
**federal (2)**
45:7;57:13
**fee (7)**
71:19;72:11;
74:24,25;75:5,9;
77:19
**feedback (1)**
10:7
**feel (4)**
9:19;23:19;71:1,6
**feelings (1)**
33:3
**fees (4)**
17:20;29:9;69:2;
71:20
**FELDMAN (12)**
47:7,8,15,18;48:8,

Case: 19-30088    Doc# 1097    Filed: 03/28/19    Entered: 03/28/19 06:16:17    Page 91
of 101

14;49:7,13,18,21;
50:3,5
**few (4)**
26:16;52:19;
84:11,13
**fifty (2)**
29:23,24
**fight (1)**
24:7
**figure (7)**
49:1;54:14,17,22;
60:12,14;70:3
**file (9)**
17:19;23:19;28:2;
29:23;31:17;39:5;
42:12;83:7,13
**filed (10)**
7:8;22:23;38:20;
39:4,7,7,10,11,13;
54:7
**filers (1)**
8:21
**files (1)**
28:21
**filing (2)**
8:22,22
**final (5)**
26:23;72:7,9,12;
82:23
**finality (1)**
72:8
**financer (1)**
61:9
**financial (1)**
74:23
**financing (16)**
36:16;50:24;54:9;
55:5,9,14;56:3;
76:22,25;77:1;79:8,
12,16,19;80:25;
82:20
**find (4)**
29:18;71:9;77:15;
79:1
**finding (5)**
29:9,10;32:13;
40:16;53:4
**findings (2)**
32:2;82:16
**finds (2)**
32:12;57:19
**fine (7)**
18:15;24:22;
25:11;35:18;38:4;
50:10;62:21
**Finish (2)**
20:14;27:8
**fire (6)**
33:22;38:19;
42:22;43:13;49:5,11
**fires (1)**
47:23
**firm (5)**

22:2;38:21;39:8,
10;41:22
**firms (1)**
62:9
**Firm's (1)**
42:8
**first (16)**
7:17,22;15:3;21:2,
3;24:14;28:10;
34:20;36:20;41:22;
42:25;44:14;56:15;
66:16,21;77:7
**five (1)**
11:14
**five-and-a-half (1)**
64:12
**fix (3)**
9:20;16:16;18:12
**fixing (1)**
16:18
**flips (1)**
72:5
**fly (2)**
26:5,8
**focus (1)**
12:19
**focused (1)**
51:1
**Focusing (1)**
14:14
**folks (1)**
33:22;84:8
**following (2)**
51:25;84:19
**force (1)**
48:12
**foreclose (1)**
59:20
**foreclosure (1)**
58:14
**form (2)**
34:1;80:1
**formality (1)**
43:24
**former (7)**
13:18,19;14:5,7,
16;18:4;23:3
**forth (1)**
13:15
**forty-five (1)**
83:17
**forty-page (2)**
19:7;83:17
**forums (1)**
64:15
**forward (10)**
24:8;25:18;34:4;
36:3;40:9,10,11,12,
22;84:17
**found (5)**
9:2;16:15;24:20;
25:23;56:4
**four (3)**

11:9,10;21:1
**four-million-dollar (1)**
30:2
**fourteen (5)**
11:19,22;12:4;
16:7;17:10
**frame (1)**
56:20
**FRANCISCO (3)**
7:1;26:12;59:21
**frankly (2)**
18:5;47:23
**fraud (1)**
20:6
**free (3)**
9:19;66:1,4
**front (4)**
8:24;50:19;79:16,
17
**frustrating (1)**
62:11
**fulfilling (1)**
20:6
**full (2)**
73:1,9
**fund (2)**
38:18;76:7
**funded (4)**
71:21;72:5,6,6
**funds (1)**
72:24
**further (8)**
18:17;19:18;
53:24;56:5;57:20;
68:7;73:25;81:8
**future (2)**
75:8;80:4

## G

**Gallagher (1)**
47:8
**game (1)**
15:24
**gap (1)**
56:1
**garden (1)**
79:5
**Gas (5)**
12:9;20:13;22:5;
29:20;76:1
**gave (1)**
25:16
**gear (1)**
10:6
**Geisha (1)**
14:16
**generally (2)**
40:6;49:25
**gentleman (2)**
35:24;48:19
**gets (2)**
72:6,12

**given (1)**
68:1
**giving (2)**
19:4;67:16
**glad (2)**
7:24;11:2
**gleaned (1)**
40:4
**goes (2)**
46:11;72:10,10
**Good (22)**
7:5,7;10:16,22,23;
20:10;22:1;30:7,7;
36:9;50:16;53:9;
55:20;57:6,7;60:23;
66:1,4;73:20;79:9;
81:14;82:19
**good-faith (3)**
53:3;55:8;56:1
**Gotshal (3)**
10:18,24;38:14
**governing (1)**
12:21
**grant (9)**
12:6;24:11;25:4;
62:2,13,14,18;63:15;
82:13
**granted (1)**
24:13
**granting (1)**
82:22
**great (2)**
10:1;26:20
**greatly (2)**
33:15;34:7
**Gregory (1)**
66:2
**grounds (2)**
63:6;76:25
**group (7)**
58:9,11;74:1,10,
13,19;77:25
**groups (1)**
9:12
**group's (1)**
78:3
**guarantee (1)**
78:3
**guess (13)**
12:12;18:16;
19:13;31:21;35:12;
37:1;48:13,23;49:7;
50:1,14;53:19;61:1
**guys (2)**
82:3;83:15
**Guzman (8)**
12:10;26:24;27:4,
7,12;34:7;36:2,4
**Guzman's (5)**
27:5;28:12;31:2,
21;35:10

## H

**habit (1)**
59:18
**half (1)**
72:25
**halt (1)**
19:22
**hand (1)**
62:25
**Hansen (36)**
51:23;52:21;56:7;
68:2;70:17,17,21;
73:16,17,20,21;74:4,
22;75:5,13,16,19,21;
76:3,13,15,18,20;
78:7,12,18,22;79:15;
80:10,13,15,17;
81:13,16,17;82:1
**Hansen's (2)**
81:24;82:11
**happen (13)**
40:8;44:7;54:12;
61:2,2;64:14,25;
65:1,4;67:19;80:14;
82:1;84:2
**happens (2)**
65:1;71:17
**happy (3)**
12:6;18:24;37:18
**hard (1)**
84:5
**hardball (1)**
56:18
**hardship (1)**
17:5
**hardships (1)**
17:5
**harm (3)**
17:5;28:11;64:24
**harmed (1)**
47:25
**harmful (1)**
64:8
**harmless (1)**
13:18
**HAWKINS (12)**
42:2,18,19,21,21;
43:1,8,12,16,22;
44:1,3
**hear (9)**
9:12;12:3;25:20;
57:12;58:2;63:13;
76:9,10;80:6
**heard (16)**
8:3;12:4;36:4;
38:4;41:23,23;42:1;
44:5;47:4;67:13,22,
25;70:17,18;81:18,
19
**hearing (23)**
8:23,25;10:2;

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 92
of 101

13:11;18:17;26:1;
38:8;39:17;44:7;
50:21,22;51:4;52:19,
21;55:2;56:23;69:1,
3;77:2;80:10;83:19,
20;84:17
**hearings (4)**
9:14;10:6;84:1,19
**hearing's (1)**
84:5
**heavy (1)**
8:22
**here- (1)**
70:7
**herself (1)**
14:6
**high (1)**
25:24
**highly (3)**
69:10,15,21
**himself (2)**
16:18;68:4
**hmm (1)**
50:15
**hoc (2)**
37:25;47:9
**hold (3)**
13:18;61:3;84:13
**Holland (1)**
20:12;22:2
**home (1)**
60:2
**homework (1)**
37:5
**honest (2)**
65:4,5
**Honor (85)**
7:5,10,16,25;8:14;
10:16,23;11:3;12:17,
19;13:5,13;14:15;
18:22;19:24;20:10,
19;22:1;23:4;26:9,
19,21,24,24;27:6,12;
28:4;29:5;30:7,11;
33:12;34:6,14;
35:15;36:8,10;
38:16;39:7,9,20;
42:19,22;44:3,19;
46:23;47:7,10,19;
48:10,11;49:8,14;
50:3,16;51:3;55:1,
20;56:22;57:19;
58:24;60:7;61:13;
64:16;65:4,18,19;
66:2;70:15;71:7;
73:20,24;74:22;
76:18;78:1,12;80:2,
24;81:5,8,22;83:4,
12;84:12,15,20
**Honor's (1)**
67:14
**hook (2)**
16:9;18:5

**hooked (1)**
29:3
**hookup (4)**
17:22;19:23;
24:16;48:19
**hope (3)**
33:4;34:12;61:2
**hopeful (1)**
65:3
**horrible (1)**
56:12
**horribles (1)**
56:12
**Hostetler (2)**
44:10;55:21
**hours (2)**
83:19,19
**house (1)**
17:9
**housekeeping (3)**
8:17;34:17;83:5
**huge (4)**
8:17;10:5;27:18;
76:24
**huger (2)**
9:2,2
**human (2)**
49:3;83:20
**hundred (1)**
78:16

**I**

**ideas (1)**
10:13
**identify (1)**
12:15
**imagine (3)**
24:3;56:12;58:16
**immediately (1)**
21:17
**impact (2)**
40:6,6
**implied (1)**
15:15
**importance (1)**
14:22
**important (11)**
25:4;40:12;55:5;
66:7,8,9,9,10;68:25;
79:20;80:23
**impose (2)**
44:6;46:6
**impossible (1)**
9:4
**improve (1)**
62:12
**incentive (1)**
83:8
**including (3)**
55:12;79:17;81:2
**incorporation (3)**
13:16;15:5,13

**increase (1)**
68:9
**increased (1)**
77:19
**increases (1)**
75:13
**incremental (1)**
52:1
**incurred (1)**
69:2
**indemnify (2)**
13:18;15:4
**indemnity (6)**
13:25;15:14,15;
27:14;29:11;31:18
**indicated (3)**
8:16;46:1;82:18
**indication (1)**
45:13
**indirect (1)**
73:15
**indirectly (1)**
40:6
**individual (1)**
47:24
**individuals (5)**
14:3;15:21,25;
23:13,22
**informal (2)**
9:16,18
**information (1)**
75:12
**in-house (1)**
15:13
**initial (1)**
56:23
**initially (1)**
11:5
**injected (1)**
77:24
**injects (1)**
77:16
**injunction (19)**
11:4,15,25;13:3;
14:2;19:20;21:2,15,
19;22:19;23:11,12;
56:17;58:3;59:22;
60:3;61:3;63:6;80:3
**injunctions (1)**
27:18
**injunctive (3)**
56:8,10;57:13
**injured (1)**
33:11
**injury (2)**
21:10;26:25
**inquiry (1)**
12:23
**insignificant (1)**
69:5
**insist (1)**
42:23
**instability (1)**

72:20
**instead (1)**
83:17
**insurer (1)**
33:8
**integrated (2)**
54:8;55:15
**intend (1)**
23:10
**intended (1)**
45:3
**intending (1)**
21:15
**intention (1)**
22:19
**intentions (1)**
21:14
**interactions (2)**
71:2;81:1
**interacts (1)**
81:2
**interest (3)**
29:15;32:21,22
**interesting (1)**
32:13
**interests (1)**
66:6
**interference (2)**
62:1;63:8
**interim (3)**
14:17;51:19;77:10
**interrupt (1)**
13:7
**into (15)**
9:10;18:12;38:22;
39:21;45:21;54:1;
59:17;61:21;72:5,
12;74:5;77:16;78:7;
79:1;80:1
**introductory (1)**
20:15
**inured (1)**
74:14
**investigation (2)**
40:20;46:2
**invitation (1)**
43:25
**inviting (1)**
17:17
**involved (3)**
10:10;14:25;67:15
**irrefutable (1)**
82:2
**irreparable (2)**
17:5;21:10
**issue (18)**
7:11;8:19;11:12,
15;12:12;22:8;24:7;
28:20;30:21;38:7;
42:9;44:5;46:19;
71:7;76:23,23;81:11,
13
**issued (1)**

19:3
**issues (6)**
20:18;42:17;
49:15;67:6;69:17;
81:10
**itching (1)**
59:20
**items (1)**
34:17

**J**

**Jane (1)**
7:6
**jeopardy (1)**
79:4
**job (2)**
9:17;54:19
**joined (2)**
67:6;69:18
**joint (1)**
28:10
**Jonathan (3)**
27:7;30:11;34:14
**JPMorgan (1)**
73:22
**Judge (17)**
21:17;22:9;23:11,
15;24:1;28:22;
32:12,12;40:1,5,14;
46:4,12,19;59:24;
83:16;84:6
**judgment (5)**
14:2;40:23;55:8;
79:19,22
**jurisdiction (8)**
12:24;13:6,14;
20:20,23;27:4,13,15
**jury (1)**
32:11

**K**

**KAROTKIN (40)**
8:5,7,9,13;36:14,
17,20,23,25;37:4,7,9,
12,14,17,21,24;38:3,
12,14,14;39:2,3,19,
24;40:3,11,19;41:1,
3,5,8,15,18;42:3,5,7,
14;50:9,12
**Kartokin (1)**
9:7
**keep (4)**
9:4;63:6;75:14;
78:13
**keeps (2)**
71:20,23
**Keller (1)**
7:6
**kid (1)**
45:10
**kidding (1)**

Min-U-Script®

23:15
**KIM (17)**
7:5,6,8,10,14,19,
24;8:20;9:17;10:11,
16;25:16,19,21;
26:15;84:17,20
**kind (5)**
9:24,25;29:3,11;
80:3
**Knight (2)**
20:12;22:3
**knowing (1)**
40:7
**known (3)**
47:22;62:22;65:5
**knows (2)**
24:6;26:24
**Kreller (1)**
52:25
**Kris (1)**
73:21

**L**

**landed (1)**
74:13
**largely (2)**
8:22;43:6
**last (14)**
31:23;50:21;51:4,
21;52:19,21;55:2;
64:8;73:3;74:3,4;
81:5,23;84:3
**last-minute (1)**
83:25
**Late (1)**
84:8
**late-filed (1)**
39:6
**later (3)**
10:3;26:4;28:23
**laughable (1)**
29:18
**laurels (1)**
73:18
**Lavan (1)**
73:21
**law (16)**
15:7,9,10,14;16:5;
22:2;27:17;32:4,6,
14;38:10,21;39:8,10;
41:22;42:8
**laws (1)**
8:12
**lawsuit (4)**
23:3;30:14;34:2;
35:23
**lawsuits (1)**
35:21
**lawyer (4)**
37:16;68:24,24;
71:11
**lawyers (10)**

48:15;49:2,2,8,9,
10,11;59:21;60:18;
82:5
**least (6)**
9:12;13:12;24:1;
27:19;39:15;68:23
**leave (4)**
19:5;46:19;74:21;
82:21
**left (1)**
35:6
**legal (2)**
12:21;28:5
**legally (1)**
44:8
**legitimate (1)**
41:4
**LELAND (34)**
20:10,12,12;22:1,
2,5,7,13,15,18;23:4,
6,10,17,19,22,24;
24:2,5,12,15,18,25;
25:9,11,25;26:3,6,9,
11,17,19,21,22
**lender (9)**
52:24;58:8,11;
68:19;74:1,10;
77:25;78:3,16
**lenders (33)**
51:7,23;52:8;
53:23;55:25;56:17,
20,25;57:18;59:7,13,
20;60:5,18,20;61:4,
11,18;62:3;63:7,25;
64:7;65:9;67:23;
68:6,14;71:21;72:1;
76:6;78:18;79:9,24;
80:7
**lender's (2)**
62:4;81:13
**lending (1)**
60:21
**letters (1)**
73:7
**liabilities (1)**
76:10
**liability (4)**
28:10;29:10;
31:19,20
**liable (3)**
28:1,23;29:22
**lift (1)**
23:12
**lifted (1)**
21:22
**likelihood (2)**
21:5;63:2
**limit (1)**
84:11
**line (4)**
59:22;60:5;61:9;
74:17
**line-men (1)**

18:5
**liquidation (1)**
58:21
**liquidity (1)**
66:8
**list (1)**
10:20
**listen (4)**
12:5;18:7;40:10;
62:15
**listening (1)**
82:6
**little (10)**
16:4,8;22:24;
24:20;45:12;53:22;
61:19;73:25;77:1;
78:11
**LLP (1)**
66:2
**loan (28)**
19:7;52:24;56:24;
57:1,4;59:6;60:2,3,
17,18;61:6;62:12;
68:17,19;71:19,20;
72:6,6,12;73:22;
74:1;75:1,3,6;76:7;
78:4;79:10;81:15
**location (1)**
43:10
**long (6)**
9:3;30:24;37:12;
65:5;69:22;75:10
**longer (5)**
9:11;11:15;66:15;
72:11;84:8
**look (9)**
10:20;23:12;
24:19;33:1;60:8,22;
64:22;83:15;84:16
**looked (4)**
24:19;41:7;51:10,
11
**looking (1)**
63:16
**lose (1)**
60:21
**lot (5)**
50:22;54:14;
67:11,12;77:8
**lots (2)**
79:9;83:23
**love (4)**
8:13;35:1;61:11,
11
**luck (1)**
36:9

**M**

**main (1)**
7:19
**maintaining (1)**
66:10

**makes (5)**
13:21;17:25;
29:11;49:23;80:15
**making (5)**
27:22;29:25;
53:13;67:5;80:11
**man (1)**
16:6
**management (3)**
8:20;14:9;48:16
**Manges (2)**
10:24;38:15
**Many (2)**
47:23;59:7
**MARCH (4)**
7:1;20:21,22;
71:24
**market (3)**
53:1,21,24;72:18;
79:6
**marketing (2)**
53:5,14
**marketplace (3)**
76:24;79:10;81:2
**matched (1)**
12:15
**Matter (11)**
7:4,11,16;32:13;
34:4,4;40:1,14;47:5;
82:22;83:5
**matters (5)**
7:19;8:3;12:15;
41:11;81:19
**Matthew (1)**
47:8
**may (17)**
24:23;25:6;29:21;
33:1,12;36:20;37:1;
44:8;49:18;51:3;
56:21;60:20;62:8;
65:14;69:20,20;81:9
**maybe (13)**
9:5,21;33:6;39:15;
40:5,8;58:11;69:7,
21;74:20;80:18,20;
82:1
**mean (43)**
13:21,25;14:1,21;
15:11;16:3,6,7;
18:19;19:12;23:5,
18;24:8,19,24;25:5;
28:16,24;29:18;
30:2;31:21;32:1;
35:6;43:10,13;44:6,
20;45:10;48:16;
54:7;56:10,11;58:21,
23;60:8;64:22;65:8,
13,25;70:7;75:2;
76:16;78:8
**meaningful (1)**
65:8
**meet (1)**
74:6

**mega-case (1)**
27:18
**mention (1)**
42:5
**mentioned (2)**
74:2,4
**Message (4)**
25:9;33:3;63:13;
84:4
**met (3)**
13:3;21:2;55:7
**might (27)**
9:11,22;24:7,11,
16;27:21;40:8;
44:15;45:11;56:11,
16;60:19;61:20;
64:24;65:1;70:4,5;
74:19;77:2,13,14,14;
78:1,22;81:25;82:1;
84:2
**Milbank (1)**
66:2
**million (5)**
16:24;59:12;60:2;
73:4,6
**million-and-a-half (1)**
66:21
**millions (1)**
48:22
**mind (5)**
53:8;56:22;74:14;
77:1;83:16
**mindful (1)**
10:5
**minding (1)**
56:13
**minds (1)**
77:24
**Minimally (2)**
16:1,3
**minimum (2)**
57:17;58:6
**minute (1)**
10:21
**minutes (1)**
26:16
**misguided (1)**
71:9
**misuse (1)**
44:22
**mitigated (1)**
67:13
**modifications (1)**
53:24
**modified (1)**
41:19
**moment (1)**
11:12
**Monday (1)**
39:8
**money (3)**
15:16;33:6;60:21
**money-good (1)**

Case: 19-30088    Doc# 1097    Filed: 03/28/19    Entered: 03/28/19 06:16:17    Page 94
of 101

52:23
**month (6)**
  37:2;54:14,23;
  56:15;63:18,19
**months (4)**
  9:10,25;16:7;
  17:10
**Moore (1)**
  50:17
**moot (1)**
  35:12
**mooted (1)**
  22:9
**more (22)**
  9:23;10:8;14:15;
  15:24;23:1;43:8,20;
  44:14;56:25;61:19;
  63:23;67:17,23;70:4,
  13;71:15;73:25;
  74:13;77:3,11,14;
  81:8
**morning (14)**
  7:5,7;10:22,23;
  20:10;22:1;30:7,8;
  37:9,10;50:16;
  55:20;73:20;82:25
**motion (40)**
  8:7;11:3,5,13;
  12:1;13:15;21:18;
  23:1;24:10;29:18;
  37:2;38:16;39:12;
  42:9,12,16,24;43:9,
  14,15,17,21;44:1,8;
  48:3,10;49:20,20,23;
  50:15;56:9;58:2;
  62:2;63:15;80:15,18,
  20;82:14,23;83:7
**motions (3)**
  41:25;43:7;83:25
**mouth (1)**
  58:2
**move (9)**
  18:6;22:20;38:11;
  40:12,22;43:19;
  44:5;46:10;55:6
**moving (2)**
  47:21;78:13
**M-Squared (2)**
  27:3,22
**much (12)**
  26:21;34:6,15;
  41:24;43:8;50:13;
  52:24;56:12;70:2;
  77:6;82:7;83:22
**must (2)**
  12:23;13:2
**myself (1)**
  69:17
**mystery (1)**
  39:20

**N**

**name (2)**
  21:25;22:2
**named (2)**
  14:15,16
**narrows (1)**
  45:22
**Natural (4)**
  12:9;20:13;22:5;
  76:1
**necessary (1)**
  43:3
**need (16)**
  10:8;15:12;22:18;
  23:20;26:16;38:2;
  41:19;44:2;55:14;
  63:8;65:12;71:1,6;
  72:21;77:3;82:18
**needs (5)**
  31:23;50:9;72:19;
  80:25,25
**negligence (1)**
  28:18
**negotiate (2)**
  63:19;64:8
**negotiating (2)**
  60:16,17
**negotiations (1)**
  61:24
**neither (1)**
  39:9
**news (2)**
  57:6,7
**next (9)**
  38:11;39:16,17;
  40:13;44:8;46:11;
  58:1;64:17;76:19
**Nice (2)**
  50:18,19
**nightmare (1)**
  58:18
**nobody's (1)**
  29:6
**NOL (5)**
  8:7;36:18,21;37:2;
  38:6
**noncourt-supervised (1)**
  58:19
**nondebtor (3)**
  11:4;22:10;30:24
**none (1)**
  38:8
**nonjudicial (1)**
  58:19
**nor (4)**
  39:10;41:15;
  43:20;82:4
**norm (1)**
  79:13
**normal (3)**
  17:22;79:16;80:1
**Northern (1)**
  17:18
**note (2)**

39:9;55:11
**noted (2)**
  43:23;53:3
**notice (6)**
  42:16;50:25;54:8;
  57:19;58:9;59:14
**noticed (1)**
  39:14
**number (6)**
  7:11,11;8:25;10:5;
  16:8;58:8
**numbers (1)**
  9:3

**O**

**objected (1)**
  41:20
**objection (4)**
  39:5,7;42:8;62:3
**objections (2)**
  39:12;82:16
**objects (1)**
  39:11
**obligation (2)**
  13:25;27:14
**obligations (3)**
  13:18;15:4,6
**obtain (1)**
  52:13
**obviously (13)**
  18:21;21:20;
  30:22;32:21;46:18;
  70:7;74:11;76:5;
  77:6;80:4,5,13,17
**occur (1)**
  57:18
**occurred (4)**
  54:2;56:5;57:20;
  64:6
**o'clock (1)**
  33:23
**off (5)**
  8:8;9:21;16:11;
  17:9;51:11
**offer (2)**
  23:25;59:4
**offered (1)**
  76:22
**office (3)**
  26:15;38:18;45:4
**officer (4)**
  13:23,24;14:6;
  40:17
**officers (2)**
  13:19;18:4
**official (7)**
  9:9;44:10;48:16,
  23;55:21;63:22;
  65:16
**often (1)**
  82:9
**old (1)**

27:16
**once (2)**
  56:3;72:6
**one (48)**
  7:21;8:3,3,15;
  10:12,19;12:13,14;
  14:21;22:21,23;
  23:3;24:14;26:14;
  34:10;35:6,16,20,23;
  36:5,13;38:21;39:10,
  10;40:7;41:20;42:5;
  44:18;49:8,8;51:19,
  21;52:1;53:20;
  56:25;58:7;59:12;
  68:23,24;69:22;
  70:19,23;75:11;
  80:2;82:7;83:5,16,22
**one-and-a-half (1)**
  64:10
**ongoing (2)**
  11:11;20:5
**only (12)**
  9:24;19:20;33:10;
  46:13;48:6;51:18;
  71:7;75:7;78:1;
  83:20,22;84:11
**oOo- (1)**
  7:2
**operates (1)**
  75:24
**operations (2)**
  72:21;77:16
**opinion (3)**
  8:12;38:10;43:8
**opportunities (1)**
  82:21
**opportunity (2)**
  19:4;42:15
**oppose (4)**
  11:25;43:14,20;
  49:25
**opposition (8)**
  13:11;20:2,21;
  22:22;23:1,20;
  24:20;26:24
**oppositions (2)**
  12:20;20:2
**optimistic (2)**
  60:4,24
**orchestrate (1)**
  58:18
**order (25)**
  7:3,11,20;8:9,20;
  17:21;30:24;35:15;
  37:17;50:9;55:16;
  57:23,24,25;58:5;
  60:3;72:7,9;74:25;
  78:2;80:1,5,7,21;
  82:17
**ordering (1)**
  46:9
**orderly (2)**
  58:25;59:10

**orders (1)**
  12:12
**ordinary (2)**
  75:25;79:4
**organization (1)**
  27:19
**original (1)**
  11:14
**originally (1)**
  16:11
**others (3)**
  26:15;34:5;84:17
**Otherwise (1)**
  12:5
**ourselves (2)**
  71:7;79:1
**out (30)**
  15:12;16:9,24;
  29:19;35:9;37:17,
  25;40:21;43:11;
  46:14;49:1;50:7;
  53:20;54:14,17,19,
  22;57:4,13;58:1;
  60:12,14;63:23;
  67:20;69:22;74:1,
  24;77:11;78:13;84:4
**over (13)**
  10:18;18:17;
  24:24;25:19,21,22;
  28:1;33:7;36:4;62:2;
  66:25;75:13;84:11
**overlooked (1)**
  83:1
**overrule (2)**
  43:24;82:15
**oversized (2)**
  83:13,21
**owe (2)**
  13:17;33:6
**owed (1)**
  48:21
**own (3)**
  56:13;70:2;78:9

**P**

**Pacific (1)**
  29:20
**package (2)**
  55:9,15
**packaging (1)**
  54:9
**page (4)**
  8:12,24;83:17;
  84:11
**pages (1)**
  84:11
**paper (1)**
  8:18
**papers (1)**
  40:5
**Parada (2)**
  10:17;25:12

Case: 19-30088    Doc# 1097    Filed: 03/28/19    Entered: 03/28/19 06:16:17    Page 95
of 101

**paragraph (5)**
20:23;44:18;
51:20,21;52:16
**Pardon (3)**
9:6;16:2;34:4
**parent (1)**
36:6
**parole (1)**
40:17
**part (1)**
56:20
**participating (1)**
29:15
**particular (4)**
51:8;53:20;55:24;
62:10
**particularly (4)**
50:24;51:1;60:4,
24
**parties (7)**
10:10;24:8;38:8;
65:7;67:5;70:1;
79:23
**parties-in-interest (1)**
50:23
**parts (1)**
79:5
**party (8)**
12:7;24:8;32:25;
47:20;55:12;81:1,
19;82:7
**passive (2)**
44:24;45:1
**Paul (1)**
50:16
**pay (6)**
27:24;42:11;
43:19;49:23;66:12;
75:9
**payable (1)**
77:19
**payment (2)**
40:13,13
**penciled (1)**
25:12
**pending (3)**
33:13;46:2;81:20
**people (17)**
8:22;9:11,22;10:5,
10;14:19;15:16;
23:16;24:23;27:18;
33:5;64:14;67:18;
70:7;75:5;78:24;
82:5
**people's (1)**
77:24
**perceived (1)**
27:19
**percent (1)**
78:16
**perfect (1)**
81:25
**performance (1)**

38:17
**perhaps (3)**
9:16;40:6;66:10
**Period (7)**
15:19;16:15;18:1,
15;51:19;53:25;
54:25
**periods (1)**
50:25
**person (1)**
30:6
**personal (1)**
26:25
**personalize (2)**
65:12,13
**personally (1)**
70:5
**perspective (6)**
74:23;76:1,3;78:4;
79:19;81:13
**persuade (1)**
67:17,18;70:7;
74:19
**persuaded (2)**
81:23;82:12
**persuasive (1)**
24:10
**petition (2)**
22:6;48:11
**PG&E (11)**
7:4;17:11;20:4;
26:2;28:8;30:14;
31:25;32:12;46:12;
75:23;76:24
**philosophy (1)**
27:23
**phone (11)**
12:7;13:8,9,12;
18:2;26:17;27:7;
30:6,11;38:25;47:4
**picture (2)**
17:15,17
**piece (3)**
16:4;19:18;36:6
**pitch (1)**
84:8
**place (2)**
59:1;79:4
**plaintiffs (7)**
11:11;14:15;20:5;
21:14;31:10,11;
47:24
**plaintiffs' (1)**
49:9
**plan (2)**
24:4;83:9
**plane (1)**
23:7
**play (2)**
60:8;69:22
**played (1)**
69:23
**player (1)**

13:23
**players (2)**
9:18;70:2
**playing (1)**
56:17
**plays (1)**
77:11
**pleading (1)**
39:9
**pleadings (4)**
38:20;39:13;
40:21;47:20
**please (5)**
10:11;23:16;
36:13;58:2;70:23
**plug (1)**
68:15
**Plus (3)**
23:7;59:12;73:6
**podium (3)**
7:22;10:18;70:23
**point (21)**
17:4,11;27:23;
45:24;48:17;53:14;
54:4;55:2;63:11,12;
65:15;67:6;69:16;
70:14;75:9;78:11,
12;80:2,6,23,24
**pointed (1)**
74:24
**points (3)**
52:18,20;82:2
**poor (1)**
35:24
**position (8)**
21:24;22:22;
23:20;40:9;43:6,23;
74:20;79:2
**positions (2)**
34:3;43:4
**possibilities (1)**
76:14
**possibly (1)**
8:19
**post (1)**
77:8
**posted (1)**
77:4
**post-petition (1)**
76:10
**potential (4)**
44:14;45:7;68:8;
80:3
**potentially (2)**
76:11;77:18
**power (4)**
17:9;19:22;48:19;
76:3
**practicalities (1)**
19:20
**practically (1)**
23:8
**pre- (1)**

48:10
**preaching (1)**
78:8
**pre-bankruptcy (1)**
16:7
**precipitous (1)**
58:14
**preclusion (1)**
29:4
**preclusive (1)**
32:13
**predicates (2)**
53:10;82:19
**predicted (2)**
63:14;70:10
**prefer (4)**
38:3;39:19;40:11;
49:11
**prejudice (5)**
28:5;30:15,16,25;
31:7
**preliminary (6)**
11:3,15,25;13:3;
21:1;58:2
**prepared (6)**
12:6;16:16,20;
17:21;30:6;53:3
**preparing (1)**
83:20
**pre-petition (5)**
14:1;17:23;38:22;
43:12;47:21
**present (2)**
8:9;18:4
**presented (1)**
53:5
**preservation (1)**
34:3
**preserve (1)**
23:20
**pressed (1)**
72:23
**presume (1)**
75:11
**pretend (1)**
60:16
**pretty (2)**
31:22;70:10
**previously (3)**
8:16;55:1;82:18
**price (2)**
72:10,11
**pricing (3)**
52:22;53:2;68:9
**pride (1)**
83:20
**primary (4)**
27:21;29:21;
31:25;56:2
**principal (7)**
9:18;10:11,12;
13:23;30:9;70:1;
71:11

**principles (1)**
29:4
**prior (1)**
38:23
**priority (2)**
25:24;49:3
**private (1)**
64:6
**privity (2)**
32:15,19
**probably (9)**
8:18;25:3;31:19,
20;64:10;69:17;
70:11,11,11
**probation (1)**
46:3
**problems (1)**
35:20
**procedurally (1)**
9:14
**procedure (2)**
17:23;84:19
**proceed (2)**
30:24;48:25
**proceeding (12)**
7:16;11:10,16,16;
12:9,13;19:18;26:1;
33:14;34:10;36:6,7
**proceedings (4)**
10:15;44:16;45:8;
84:23
**proceeds (1)**
28:6
**process (12)**
53:5,14;59:10;
66:17;67:14,15,20;
68:8;69:22;72:20;
77:11;79:7
**production (1)**
76:3
**productive (1)**
50:21
**professional (2)**
69:2;72:17
**professionals (1)**
84:4
**profitable (1)**
60:20
**program (2)**
38:19;62:1
**progress (1)**
64:17
**proof (3)**
28:2;31:12,17
**proper (2)**
42:16;49:1
**proponent (1)**
53:8
**proposed (5)**
7:8,14;66:3;82:16,
17
**prosecute (5)**
18:4;23:2;29:7;

Case: 19-30088    Doc# 1097    Filed: 03/28/19    Entered: 03/28/19 06:16:17    Page 96
of 101

41:12,14
**prosecution (1)**
21:9
**prospect (1)**
32:10
**protecting (1)**
19:13
**protection (1)**
38:19
**provide (1)**
37:19
**provided (2)**
16:21;74:9
**prudent (1)**
69:24
**public (3)**
39:21;52:9;58:7
**publishable (1)**
8:12
**published (1)**
38:10
**pull (1)**
68:15
**purposes (1)**
34:9
**pursuant (2)**
13:16;51:22
**pursuing (1)**
32:8
**purview (2)**
49:16,19
**push (2)**
67:24;68:7
**put (13)**
14:20;18:3;19:11,
16;24:24;25:24,25;
47:20;48:3;50:11;
60:19;68:22;72:21
**putting (2)**
35:21;79:3

**Q**

**quantifiable (1)**
69:21
**quasi-public (1)**
59:2
**quick (2)**
33:14;70:19
**quicker (2)**
13:1,2
**quickly (1)**
36:18

**R**

**racing (1)**
58:8
**raised (2)**
42:9;71:8
**ran (1)**
61:21
**range (1)**

45:22
**rather (3)**
31:3;72:15;82:17
**reach (4)**
55:23;61:20;
79:23;81:6
**reached (1)**
11:8
**reaching (1)**
38:9
**read (8)**
14:18,19;37:6;
41:6;45:9;46:9;
83:22;84:7
**reading (5)**
22:22;23:6;44:14;
83:16,23
**ready (7)**
10:6,14;16:20;
17:3,6,12;23:6
**real (5)**
13:22;22:7;70:19;
76:12,14
**realize (1)**
40:2
**really (20)**
9:7;14:8;17:5;
22:18;23:1,2;24:7,9;
31:21;41:5;43:14;
44:17,20;53:1,17;
59:25;66:20;74:18;
76:23;77:22
**reargue (1)**
52:18
**reason (8)**
19:5,19;25:5;
29:22;36:3;43:3;
58:24;66:19
**reasonable (9)**
18:18;21:4;39:17;
59:6;61:19;80:18,19,
21;83:24
**reasons (3)**
40:22;63:3;81:3
**recall (2)**
37:1;51:3
**receive (1)**
12:20
**received (2)**
25:9,14
**recitals (1)**
34:3
**recitation (1)**
44:12
**recommend (2)**
30:18;33:4
**recommendation (3)**
33:19,25;65:17
**reconnect (5)**
16:15,20,22;17:8,
12
**record (6)**
7:5;44:12;47:7;

71:2,10;79:22
**recover (1)**
15:16
**recovery (1)**
18:9
**red-line (1)**
37:19
**refinance (1)**
60:1
**refinancing (4)**
59:22;60:3,25;
61:4
**reflect (1)**
71:10
**reflected (1)**
74:8
**regular (2)**
26:2;51:8
**regulators (2)**
76:4;79:18
**regulatory (1)**
67:15
**rejected (1)**
59:3
**relate (1)**
47:23
**related (6)**
11:6;12:22,22;
34:18;43:9;74:23
**related-to (5)**
13:5,14;20:19;
27:13,15
**relates (1)**
8:25
**relative (1)**
14:12
**release (4)**
41:12,15;45:16,17
**releases (1)**
44:15
**releasing (1)**
45:13
**relief (14)**
21:17;22:20;23:2;
24:10;25:3,4;39:11;
41:20;42:24;47:11,
18;56:8,10;57:13
**relief-from-stay (1)**
59:19
**rely (1)**
80:7
**remain (1)**
65:3
**remains (2)**
19:12;66:5
**remark (1)**
80:11
**remarks (2)**
7:25;47:2
**remedies (3)**
50:25;51:25;53:25
**remedy (1)**
56:12

**remember (4)**
25:16;59:23,24;
83:22
**remind (1)**
8:21
**Remington (17)**
12:9;13:4,8,8,14;
15:15;16:17;17:6,
24;18:8,12,15;19:4,
9,15;24:13;35:9
**Remington's (2)**
14:7,19
**renew (1)**
43:4
**reordering (1)**
7:15
**reorganization (2)**
14:25;21:5
**repeating (1)**
69:17
**replace (2)**
57:1;59:6
**replacement (2)**
60:5;61:9
**replacing (1)**
57:5
**reply (3)**
39:7;83:18;84:7
**report (1)**
46:1
**reported (1)**
51:6
**reportedly (1)**
58:25
**reporting (1)**
55:23
**represent (2)**
47:24;54:21
**representing (3)**
12:7;68:24,25
**represents (1)**
38:21
**request (4)**
9:16;21:19,19;
63:22
**requested (3)**
39:12;41:20;47:12
**requesting (1)**
42:24
**requests (1)**
83:25
**research (1)**
56:23
**reserved (1)**
64:17
**residences (1)**
59:21
**resolutions (2)**
13:17;15:5
**resolve (2)**
36:1;81:8
**resolved (5)**
7:11;8:4,7;34:12;

37:9
**resolves (1)**
38:6
**respect (28)**
11:5,13,15,16,22;
13:14;16:18;20:20;
21:1,3,8,16;22:10;
23:12;27:2;28:11;
34:21;40:16;42:8,9;
48:4,6;50:24;62:9;
74:14;77:12,22;81:9
**respectfully (3)**
55:4;67:7;79:21
**respond (3)**
19:15;42:17;62:4
**respondeat (2)**
15:15;24:21
**responding (1)**
41:25
**response (9)**
14:7,18,19;39:3,6,
14;41:24;42:7;83:11
**responses (1)**
39:5
**responsive (3)**
38:20;39:9,13
**rest (1)**
73:18
**restate (1)**
82:18
**restraining (1)**
58:5
**restructuring (1)**
13:24
**result (2)**
77:9,21
**resyndication (1)**
68:8
**reviewed (2)**
12:11;82:17
**Right (78)**
7:13;11:24;12:11;
13:10;14:4,25;15:18,
22;16:25;19:25;
20:24;21:12;22:13,
17;23:14,17,17;24:5,
12,15,15;30:6;31:13,
14;32:14;33:11,24;
36:7,9,11,16;41:17;
42:13,16,18;43:7;
44:18;45:6,19,23;
46:12,13,16,25;50:6;
52:2,4,8,14,17;
54:24;56:9,18;61:7,
8,14;64:3;66:22;
67:2,2;68:16;69:8;
70:11,25;73:2,5,9,
11;75:7,19,21;76:21;
79:1,14;80:9,16;
81:12;83:10
**rights (2)**
33:5;48:22
**ripe (1)**

Case: 19-30088    Doc# 1097    Filed: 03/28/19    Entered: 03/28/19 06:16:17    Page 97
of 101

29:11
**risk (20)**
52:22;53:2;67:8,
11,12,13,16,19,21,
22;68:11;69:2,7,20;
70:13;76:21;77:5,16,
18;78:4
**risks (2)**
74:23;77:20
**Robbins (1)**
27:17
**robust (1)**
53:14
**role (4)**
20:6;56:5;70:6,6
**roll (2)**
18:8,25
**room (2)**
49:2,3
**Rule (6)**
34:21;57:11;63:1;
67:7;81:6,7
**rules (2)**
57:13,14
**ruling (5)**
19:3,16;62:20;
67:5;69:18
**rulings (1)**
40:5
**run (1)**
23:11
**running (2)**
66:23;79:7
**run-of-the-mill (1)**
28:20
**rush (1)**
59:2

**S**

**safe (2)**
16:21;17:12
**same (9)**
7:20;22:8;23:7;
42:8;43:6;59:7,24;
69:25;82:1
**SAN (3)**
7:1;26:12;59:21
**sand (1)**
74:17
**satisfied (3)**
46:25;53:4;82:11
**save (1)**
59:2
**saw (1)**
52:4
**saying (13)**
31:21;39:1;41:9,
10;56:14;59:21;
63:8;71:7;76:16,20;
78:2;80:20;82:3
**scattered (1)**
48:5

**scene (1)**
14:20
**scheduled (2)**
9:15;39:16
**schemes (1)**
49:3
**scope (1)**
44:15
**seat (1)**
28:6
**second (7)**
10:20;20:1;21:8;
35:14;36:13;45:24;
77:8
**secondly (1)**
14:7
**sections (1)**
45:22
**secure (1)**
79:18
**secures (1)**
80:25
**securities (1)**
11:12
**seek (2)**
22:19;52:12
**seeking (1)**
29:8
**seem (1)**
45:11
**seemed (1)**
24:22
**seems (4)**
9:11;31:22;36:1;
45:21
**sell (1)**
59:12
**send (2)**
9:19;84:3
**senior (3)**
14:8,24;19:22
**sense (1)**
17:25
**sensed (1)**
9:24
**sensible (1)**
56:19
**sent (1)**
25:19,21,21
**sentence (2)**
46:6;58:1
**sentiment (1)**
75:23
**separate (2)**
35:21;42:24
**sequences (1)**
7:22
**serious (2)**
68:24,25
**seriously (4)**
19:6;63:24,24;
68:12
**service (2)**

16:24;59:3
**set (5)**
8:24;13:15;56:3;
61:7,8
**setting (1)**
82:10
**settlement (20)**
38:12,17,23;39:20,
25;40:15,20,25;
42:11;43:12;45:25;
46:11,20;48:4,11;
49:15;50:8;70:24;
71:4;74:6
**settlements (2)**
47:21;48:8
**seven (6)**
51:8;54:14;56:21;
58:9;59:11;61:6
**seven- (1)**
57:18
**seven-day (2)**
57:11;59:13
**seven-figure (1)**
18:9
**seventeen (1)**
11:17
**seventy-billion (1)**
59:25
**several (2)**
28:10;65:9
**shaky (1)**
77:1
**shame (1)**
63:5
**share (1)**
8:13
**sheet (1)**
78:10
**shockingly (1)**
61:21
**shore (1)**
10:1
**short (4)**
50:25;64:8;67:4;
82:8
**shortcut (1)**
12:2
**shortly (1)**
35:16
**short-term (1)**
83:8
**Shounak (1)**
27:6
**show (1)**
17:19
**showing (1)**
78:9
**shows (2)**
8:24,25
**shut (1)**
62:21
**sick (1)**
68:13

**side (2)**
70:12;82:5
**sides (3)**
11:1;34:2;82:2
**sign (1)**
17:21
**signed (1)**
7:10
**signer (1)**
22:6
**significant (3)**
25:5;54:25;79:25
**sign-up (1)**
10:20
**similar (1)**
41:24
**similarly (1)**
48:21
**simple (5)**
18:12;19:6,10;
28:16;34:1
**simplify (2)**
19:14;30:4
**simply (5)**
12:13;17:21;18:3;
45:25;66:25
**Singh (96)**
10:18,19,23,23;
11:2,8,20,22,25;
12:11,17,19;13:1,10,
13;14:10,14,23;15:1,
3,8,10,18,20,23;16:2,
5,10,14;17:1,3,8,11,
16,25;18:10,21,24;
19:1,6,8,24;20:1,4,
14,16,19,25;21:8,13;
26:13,23;27:2,8,10,
12;28:4,8,10,14,17,
25;29:2,5,8,13,15,
17;30:2;31:1,5,7,10,
15;32:1,5,7,10,15,18,
20,23;34:1,13,16,17,
20,24;35:1,5,8,12,14,
19,22;36:8
**single-family (1)**
59:20
**Singleton (7)**
38:21;39:8,10;
41:22,24;42:8,21
**sit (1)**
62:21
**sitting (4)**
67:5;75:6,10;78:9
**situation (8)**
31:22,22;40:7;
48:20;51:1;57:18;
61:20;76:11
**six- (1)**
60:1
**sixteen (1)**
16:24
**skin (3)**
15:24;16:3,4

**slight (1)**
52:10
**small (3)**
14:12;17:17;83:16
**smaller (1)**
77:14
**smarter (1)**
70:3
**solution (2)**
59:9;60:22
**solve (1)**
67:4
**solvent (1)**
58:25
**solvent-company (1)**
48:1
**somebody (7)**
9:17;10:12;36:15;
48:25;54:22;75:7;
84:18
**someone (7)**
56:13;77:1,2;
80:15;83:1
**someone's (1)**
64:11
**somewhat (3)**
22:9;41:24;60:24
**soon (1)**
17:12
**sorry (7)**
18:2;34:24;36:11;
42:5;63:8;64:21;
77:5
**sort (2)**
8:15;48:18
**sought (2)**
47:18;78:15
**sound (3)**
14:8;18:7;29:19
**sounded (1)**
23:1
**sounding (1)**
33:20
**source (2)**
56:25;66:8
**South (1)**
59:21
**southern (1)**
26:7
**speak (4)**
41:9;68:2,4;73:16
**specialize (1)**
45:1
**specifically (1)**
14:14
**specifics (1)**
54:1
**speculating (1)**
77:6
**speech (1)**
48:18
**spent (1)**
51:20

Case: 19-30088    Doc# 1097    Filed: 03/28/19    Entered: 03/28/19 06:16:17    Page 98
of 101

**spoke (1)**
74:12
**Squared (11)**
27:24,25;29:10,
23;30:24;31:13,15;
32:15,24;33:7;34:5
**stable (2)**
66:8;76:25
**staff (3)**
8:3;83:16;84:21
**Stamer's (1)**
37:24
**standalone (2)**
43:14,17
**standard (1)**
12:21
**standing (3)**
35:24;48:4,6
**stands (2)**
16:20;17:11
**start (2)**
44:1;77:15
**state (8)**
18:14;21:25;
28:21;30:14;32:11;
33:13;58:7;59:1
**stated (2)**
42:7;50:8
**statute (2)**
30:17,19
**stay (15)**
19:12;21:18,18,19,
22;22:15,20;23:2,12;
24:11;25:3,4;28:20;
30:20;54:16
**stayed (8)**
12:15;21:12,20;
22:9,11;23:8;31:17;
33:13
**stealing (1)**
16:12
**step (1)**
46:11
**Stephen (1)**
38:14
**still (6)**
8:13;12:8;56:22;
57:10;63:15;73:9
**stip (2)**
18:12;35:10
**stips (1)**
35:17
**stipulate (2)**
26:4;34:23
**stipulated (1)**
34:25
**stipulation (1)**
25:2
**stipulations (1)**
11:9
**stone (1)**
61:21
**stood (1)**

**43:19**
**stop (2)**
34:9;58:8
**strategy (1)**
27:24
**strong- (1)**
62:8
**Stroock (2)**
73:21,21
**study (1)**
61:19
**stuff (2)**
72:19;83:23
**subject (3)**
39:25;40:1;57:10
**subject-matter (1)**
12:24
**submit (4)**
19:2;35:14,19;
83:25
**submitted (2)**
20:21;31:11
**subrogation (1)**
47:9
**subsequently (1)**
11:8
**subset (3)**
48:6;49:23,23
**substantially (1)**
79:25
**successful (2)**
21:5;54:4
**suddenly (1)**
19:21
**sue (2)**
24:22,22
**sued (1)**
19:22
**suffered (1)**
25:7
**suggest (2)**
24:21;39:15
**suggested (2)**
7:14;59:3
**suggestion (1)**
39:17
**suggestions (2)**
9:22;84:18
**suggests (1)**
40:24
**suing (2)**
15:16,20
**suit (1)**
18:15
**suits (1)**
18:4
**summarize (1)**
38:1
**summer (1)**
25:23
**Sunday (1)**
39:8
**superior (2)**

**15:15;24:21**
**suppliers (2)**
66:9;72:19
**support (3)**
47:11,18;49:22
**supporting (2)**
13:15;53:8
**supportive (1)**
66:5
**supports (2)**
55:12,12
**suppose (2)**
31:1;64:6
**supposed (1)**
18:5
**sure (16)**
8:24;12:14;14:21;
17:1;19:8;27:9;
32:23;34:19;35:22;
38:20;41:3;42:6;
43:18;51:15;75:5;
78:23
**surprised (2)**
64:13,16
**Surprising (1)**
63:25
**suspect (1)**
31:19
**Swaine (1)**
50:17
**swords (1)**
18:3
**syndicate (2)**
74:10,25
**syndicated (1)**
74:1

# T

**table (1)**
60:16
**talk (1)**
30:22
**talked (3)**
52:22,23;74:11
**talking (2)**
36:1;75:4
**tax (2)**
8:12;38:10
**tear (1)**
38:9
**tee (1)**
24:9
**telephone (1)**
26:10
**telling (2)**
12:2;15:13
**temporarily (1)**
33:13
**temporary (2)**
19:14;58:5
**ten (1)**
19:15

**tend (1)**
82:9
**tendered (1)**
27:25
**tens (2)**
48:21,22
**tentative (2)**
19:3;62:20
**term (7)**
44:18;53:20;
71:19;72:5,6,12;
78:10
**termination (2)**
56:4;57:19
**terminology (2)**
52:8;75:3
**terms (15)**
14:7;17:4;41:11,
12;46:14;50:8;
52:24;53:2;62:12;
67:1;71:2;72:23;
77:12,13;82:20
**test (1)**
33:22
**thanks (1)**
36:25
**theories (1)**
42:15
**theory (1)**
28:1
**thereafter (1)**
7:20
**therefore (1)**
57:20
**there'll (1)**
78:23
**third (5)**
14:21;24:8,8;
26:23;76:8
**third-party (2)**
19:19;31:3
**thirty-seven (1)**
8:11
**thirty-seven-page (1)**
38:9
**thirty-six (1)**
83:19
**Thomas (2)**
20:12;22:2
**though (4)**
17:4;23:19;64:11;
66:14
**thought (7)**
10:11;13:10;22:8;
23:7;64:22;74:7;
80:22
**thoughtfully (1)**
48:3
**thoughts (1)**
10:13
**thousands (1)**
48:21
**threats (1)**

**76:9**
**three (7)**
12:3,20,22;20:2;
23:16,22;33:10
**ticking (3)**
71:19;74:24,25
**Tiger (15)**
12:9;20:2,5,8,13,
20,20,21;21:3,9,14,
16;22:5;25:11;35:10
**Tiger's (3)**
20:6;21:23;22:19
**till (2)**
64:24;68:14
**timely (1)**
84:10
**times (1)**
65:9
**timing (5)**
9:14;10:3;50:25;
51:7;54:11
**tiny (1)**
16:4
**tip (1)**
62:25
**titles (1)**
9:3
**today (26)**
8:18;10:9;11:17;
33:23;40:9,10,12;
41:23;43:9;47:12,
19;54:10;55:3,16;
63:22;64:24;66:6;
67:13;68:13;70:17;
72:3,15,16;77:2;
81:4;83:2
**together (2)**
48:3;60:19
**told (8)**
56:25;62:13,16,
18;63:15;68:23;
77:7;83:12
**tolling (2)**
30:17,19
**tomorrow (3)**
8:19;83:12,14
**took (1)**
63:13
**tort (21)**
38:22;39:4,11,14;
42:10;44:10;46:25;
49:22,23;52:23;
55:13,21;62:2,5;
63:5;74:7;77:23;
81:10,19;82:15;
83:11
**Torture (1)**
37:8
**track (1)**
9:4
**trade (2)**
48:21;49:5
**tradeoffs (1)**

Case: 19-30088    Doc# 1097    Filed: 03/28/19    Entered: 03/28/19 06:16:17
of 101

68:20
**trading (2)**
75:25;77:4
**traditional (1)**
82:20
**tragedies (1)**
49:4
**transfer (1)**
51:24
**traveling (1)**
9:23
**treat (1)**
50:10
**treated (1)**
82:3
**trial (9)**
23:16;28:6,21,22,
24;29:15;32:12;
33:9,14
**trouble (2)**
9:5,5
**troubles (1)**
22:21
**truck (1)**
16:9
**true (3)**
8:4;45:25;60:20
**trust (1)**
42:15
**Trustee (9)**
9:9,13;51:2;54:13,
18;56:14;57:10;
61:8;76:19
**trustees (1)**
76:10
**try (9)**
34:9;49:20;61:1,4;
62:12;63:23;64:8;
67:17;70:7
**trying (13)**
33:5;58:18;59:12;
60:8,12,14,22;61:15;
62:4;65:25;73:24;
78:10,10
**tune (1)**
22:24
**turn (2)**
10:18;21:21
**turned (1)**
72:12
**Turning (1)**
20:1
**tweak (2)**
9:13;26:16
**tweaked (1)**
50:9
**twenty- (1)**
11:5
**twenty-five (1)**
84:11
**twenty-four (1)**
83:19
**twenty-one (5)**

51:8,24;56:21;
57:2;61:10
**twenty-one-business-day (1)**
59:4
**twenty-three (1)**
35:21
**twenty-two (1)**
35:21
**two (24)**
9:9,10,12,24;10:2;
11:6;14:19;19:13;
23:3;35:13;38:20;
48:23;56:16;62:8;
67:3,17;69:3,10,13;
70:13;71:15;72:16;
73:8;84:6
**two- (1)**
66:16
**twofold (3)**
12:23;15:3;44:13
**type (1)**
58:14
**typo (4)**
40:24;41:7;44:14,
20;45:2,10

### U

**ultimately (1)**
53:11
**Um-hum (9)**
14:23;18:10;20:3;
31:9;39:23;40:18;
51:5;57:3;79:14
**unable (1)**
55:23
**unanimous (1)**
48:24
**uncertainty (1)**
77:12
**under (16)**
15:4,5,7,9,10;
35:10,23;38:17;
47:16;52:15;56:22;
57:23,24,25;59:5;
61:7
**underlying (5)**
14:15;21:1;22:8;
31:11;34:2
**understood (7)**
41:10;50:3;54:20,
20;59:16;76:18;
78:20
**undertake (1)**
53:5
**Unfortunately (1)**
76:16
**unhappy (1)**
31:22
**unique (2)**
75:24;79:13
**UNISON (2)**
83:4;84:15

**unless (5)**
7:25;25:4;50:6;
65:19;83:1
**unlikely (2)**
69:10,15
**unliquidated (1)**
47:22
**unofficial (1)**
48:24
**unrelated (2)**
44:8;71:8
**unsafe (2)**
16:16,17
**unsecured (9)**
17:23;18:14;
52:25;55:11;65:16;
66:6,12;72:2;82:12
**unusual (3)**
63:11;69:21,24
**unwillingness (2)**
62:1,11
**up (25)**
10:6;12:15;16:9;
17:19;18:5;24:9;
33:2;36:24;38:9;
43:19;50:1;55:3,4;
56:3;59:22;60:5;
61:3,9;62:21;72:10;
73:6;79:1;80:5;81:6,
7
**update (1)**
64:9
**updated (1)**
35:15
**upload (1)**
12:12
**upon (2)**
44:6;72:6
**urge (4)**
47:19;48:9;55:4,
14;67:7;69:18
**use (2)**
14:6;44:17
**used (2)**
32:3;76:22
**user-friendly (1)**
10:8
**usual (1)**
13:2
**Utilities (2)**
52:9;58:7
**utility (14)**
17:22;18:11;19:3;
27:3,22;28:2,13;
29:22;30:14;46:10,
19;51:24;58:10;63:6

### V

**vacating (1)**
33:23
**value (3)**
66:10,11,11

**variety (1)**
79:5
**various (1)**
25:22
**vendors (2)**
66:9;72:19
**victims (4)**
48:20;49:5,11,24
**view (8)**
13:11;26:15;28:4;
52:23;56:19;65:15;
69:1,23
**viewpoint (2)**
76:5,5
**vindicate (1)**
33:5
**violation (1)**
46:3
**virtually (1)**
70:10
**virtue (1)**
32:25
**vis- (1)**
52:8
**vis-a-vis (1)**
40:7
**voice (2)**
44:24;45:1
**volume (1)**
8:22
**voluntarily (1)**
18:14

### W

**wait (7)**
10:19;24:1,1;
48:14;51:13;64:24;
73:8
**waiting (1)**
75:6
**wall (1)**
61:21
**wants (10)**
12:4;14:8,20;
15:16;16:6;40:9,22;
41:23;48:19;69:24
**warrant (1)**
63:2
**waste (2)**
29:20;42:22
**wasting (1)**
43:2
**water (2)**
35:13;84:22
**wave (1)**
10:1
**waves (1)**
10:1
**way (20)**
19:6,14;27:17;
35:10;40:7,8;49:1,1,
5;51:10;56:3;60:22;

61:1;64:14;75:7;
76:6;78:1,14;80:21;
84:6
**WEDNESDAY (1)**
7:1
**week (6)**
39:17;44:8;66:17;
67:3;76:19;84:6
**weeks (9)**
10:2;67:17;69:3,
11,13;70:13;71:15;
72:16;73:8
**Weil (3)**
10:18,24;38:14
**weren't (3)**
22:6;54:3;60:17
**what's (15)**
13:20;14:4;26:10;
28:3;59:2;60:5;
63:16;64:24,25;
71:18;73:12;77:22;
80:4;82:8,8
**whereas (1)**
48:5
**Whereupon (1)**
84:23
**White (5)**
21:17;22:9;23:11,
15;24:1
**wholly (1)**
71:8
**who's (2)**
20:9;30:9
**wildfire (1)**
76:10
**willed (1)**
62:9
**Williams (1)**
14:16
**willing (11)**
17:12;28:14;
30:13,23;31:10;
33:14;53:24;63:7;
64:7;65:7;78:24
**willingness (1)**
28:15
**Willkie (1)**
47:8
**wire (4)**
14:20;16:6,8;18:5
**wires (2)**
15:17;18:13
**wish (1)**
34:4
**wishes (1)**
46:14
**within (5)**
8:18;49:16,19;
57:2;74:8
**without (9)**
9:3;30:15,16,25;
31:7;49:22;70:2;
74:5;80:10

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 100
of 101

**wonderful (1)**
70:8
**word (8)**
19:3;24:10;35:25;
37:20;47:14;69:8;
75:17,20
**words (6)**
16:23;47:10,11,
13;63:14;72:13
**work (8)**
10:4;11:1;34:5;
48:9;49:3;63:21,23;
78:15
**worked (2)**
37:17,25
**working (1)**
84:5
**works (1)**
60:3
**world (3)**
31:23;81:25;84:3
**worry (3)**
14:12;22:23,24
**worth (1)**
17:20
**wouldn't' (1)**
64:16
**writing (1)**
19:16
**wrong (6)**
19:3;22:23;24:10;
26:10;63:9;69:7
**wrongdoer (2)**
27:21;29:22
**wrongdoing (1)**
24:23
**wrongly (1)**
82:4

## Y

**years (1)**
33:10
**Yep (1)**
70:22
**yesterday (2)**
7:10;35:16
**yielded (1)**
74:20

## Z

**Zumbro (49)**
50:16,16,18,19;
51:6,15,18;52:3,6,
11,15,18;53:13,18;
54:5,7,17,18,20,22,
25;55:18;64:9,23;
70:16,19,21,23;71:1,
6,13,16,18,23,25;
72:5,9,11,14,17;
73:1,3,6,10,12,15;
74:23;82:4;83:3

## 1

**1 (3)**
7:11,12;12:23
**1.5 (1)**
73:9
**10 (1)**
33:23
**10:56 (1)**
84:23
**100 (1)**
73:6
**105 (1)**
21:19
**10th (7)**
34:11;64:20,21,
25;66:14;68:14;
71:24
**10x (1)**
58:25
**11 (7)**
51:2;54:13;56:14;
57:10;58:25;76:10;
79:5
**13th (1)**
20:21
**15th (4)**
64:3,18;68:16;
78:14
**17,000 (2)**
24:14;48:19
**17,000-dollar (1)**
17:18
**17,500 (1)**
17:24
**17,500-dollar (1)**
18:13
**19-3006 (1)**
36:7

## 2

**2 (2)**
13:1,2
**2015 (1)**
47:23
**2019 (1)**
7:1
**21st (1)**
20:22
**250 (1)**
59:12
**26 (1)**
20:23
**26f (1)**
34:21
**27 (1)**
7:1
**27th (1)**
71:24
**2nd (1)**
40:13

## 3

**3.13 (1)**
45:22
**3.14 (1)**
45:22
**35 (3)**
51:20,22;52:18
**350 (1)**
73:4
**364 (1)**
82:20
**3rd (1)**
34:20

## 5

**5,000 (1)**
47:10
**500 (2)**
47:11,16
**500,000-dollar (1)**
60:2

## 8

**800 (1)**
16:8
**80s (1)**
27:17
**8th (1)**
64:18

## 9

**9:30 (2)**
7:1;36:5
**9th (8)**
34:11;36:3,5;
64:18,20,21;83:8;
84:16

Case: 19-30088   Doc# 1097   Filed: 03/28/19   Entered: 03/28/19 06:16:17   Page 101
of 101