Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Paul S. Aronzon (SBN 88781)
Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Proposed Counsel for the Official Committee of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors. | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered) |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | **LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CORRECTED MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(A), 363, AND 503(C) FOR ENTRY OF AN ORDER (I) APPROVING SHORT-TERM INCENTIVE PLAN AND (II) GRANTING RELATED RELIEF [DKT. NO. 806]**<br><br>Date: April 9, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of PG&E Corporation and Pacific Gas and Electric Company (together, the "Debtors"), by its proposed attorneys, Milbank LLP, hereby submits this limited objection (the "Limited Objection") to the *Corrected Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(c) for Entry of an Order (I) Approving Short-Term Incentive Plan and (II) Granting Related Relief* [Dkt. No. 806] (the "Motion").[1] In support of the Limited Objection, the Committee respectfully represents as follows:

1. On January 29, 2019, the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code.

2. On February 12, 2019, the U.S. Trustee appointed and formed the Committee.

3. The Debtors filed the Motion on March 8, 2019, seeking approval of a short-term incentive plan for 2019 (the "STIP") for approximately 10,000 rank-and-file employees. The Motion states that the target cost of the STIP is $235 million, with potential maximum cost of approximately $350 million. The STIP also appears to contain a number of significant changes from the prior year's short-term incentive plan.

4. The Committee's diligence on the STIP is ongoing. Although the Committee's proposed advisors began requesting information from the Debtors almost immediately after the Motion was filed, the Debtors' advisors did not deliver much of the information requested until very recently and did not authorize delivery of any of that information to the actual Committee members until even more recently. Accordingly, as a result of the Debtors' delay in producing the requested information, the Committee reserves the right to supplement this Limited Objection based upon further work it will continue to do, as well as any additional discussions the Committee may have with the Debtors regarding the terms of the STIP.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

5. In particular, the Committee continues to evaluate the safety performance metrics in the proposed STIP. Given the Debtors' history on various safety issues, the STIP should reflect "best in class" safety metrics designed to send a loud and clear message of the Debtors' stated intent to prioritize safety throughout its operations.

6. That said, based upon its work to date, the Committee has reached several conclusions regarding the STIP.

7. As a threshold matter, the Committee supports a market-based, employee incentive program that appropriately motivates non-insider employees to perform their responsibilities in ways that serve the best interests of the Debtors' business. In these cases, those interests include both operating performance and appropriate and effective safety programs. Maintaining a properly motivated and compensated workforce is a value-maximizing proposition that will inure to the benefit of the Debtors' estates and all of their stakeholders.

8. Thus, from the Committee's perspective, the question is not whether a short-term incentive plan should be implemented at all, but whether the STIP the Debtors have proposed is properly constructed. While the Committee does not take issue with the aggregate dollars associated with the proposed STIP, the Committee does believe that the STIP, as proposed, needs to be adjusted in a number of respects if it is to function as intended.

9. First, the Committee has concerns regarding the change to the STIP compared to prior years which provides for measuring metrics and making payments, inclusive of the value from the discontinued long-term incentive plan ("LTIP") program and Individual Performance Modifier, more frequently than annually. The incremental LTIP value included in the STIP for senior-level employees would historically have been part of the LTIP program that was granted on an *annual* basis, vested over time and payable in equity. It is not clear to the Committee that the timing of these grants should be changed in this manner, and the same is true for the timing related to the Individual Performance Modifier component of the STIP for top performers.

10. Second, another STIP change from prior years is the inclusion of specific wildfire reduction measures from the Debtors' 2019 Wildfire Safety Plan in the STIP's Public

Case: 19-30088    Doc# 1110    Filed: 03/28/19    Entered: 03/28/19 16:23:53    Page 3 of 4

1 | Safety Index, which accounts for 10% of the STIP weighting. The California Public Utilities Commission ("CPUC") has not ruled on the adoption of the measures contained in that plan. As such, should the CPUC require those measures to be more stringent, the Committee requests that the Public Safety Index reflect those changes.

11. Third, the threshold and maximum targets of the Earnings from Operations financial performance metric are 95% and 105%, respectively. The Committee continues to review the propriety of these bands, including a review of analogous metrics used by comparable companies.

12. Fourth, the payment of STIP awards currently does not provide for any notice period for the Committee to review the calculations underlying the STIP scorecard, including any adjustments for items impacting comparability. The Committee has therefore requested seven (7) business days' notice prior to the payment of any STIP award.

13. Finally, the Committee understands that the Debtors intend to implement additional key employee incentive or retention plans in the future. The Debtors have advised the Committee that they do not believe there will be any material overlap between the STIP and any other future plans, but the Committee reserves its right to review and analyze those plans at such time as they are proposed in order to ensure there is no inappropriate duplication.

14. Based on the foregoing, the Committee respectfully requests that the Court refrain from granting the relief requested in the Motion until such time that the Debtors agree to satisfactorily address the Committee's concerns. The Committee further reserves the right to supplement this Limited Objection on any grounds.

DATED: March 28, 2019      MILBANK LLP

    /s/ Dennis F. Dunne
DENNIS F. DUNNE
SAMUEL A. KHALIL
PAUL S. ARONZON
GREGORY A. BRAY
THOMAS R. KRELLER

*Proposed Counsel for the Official Committee of Unsecured Creditors*