# EXHIBIT C-11

Date of Issuance
December 14, 2018

BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA

| | |
|---|---|
| Order Instituting Investigation and Order to Show Cause on the Commission's Own Motion into the Operations and Practices of Pacific Gas and Electric Company with Respect to Locate and Mark Practices and Related Matters. | **FILED**<br>**PUBLIC UTILITIES COMMISSION**<br>**DECEMBER 13, 2018**<br>**SAN FRANCISCO**<br>**I.18-12-007** |

## ORDER INSTITUTING INVESTIGATION AND ORDER TO SHOW CAUSE

## I.  INTRODUCTION AND STATEMENT OF PURPOSE

The California Public Utilities Commission ("Commission") institutes this formal investigation to determine whether Pacific Gas and Electric Company's ("PG&E") damage prevention and locate and mark programs and practices for its natural gas system have been unsafe and in violation of any provision or provisions of the California Public Utilities Code ("Public Utilities Code"), California Government Code ("Government Code"), Commission general orders or decisions, and other state or federal laws, applicable rules or requirements.

The Respondent, PG&E, is a privately-owned public utility, subject to the safety and rate jurisdiction and regulation of this Commission, and to California law and the Commission's general orders, rules, and decisions.  The Commission enforces federal and state laws that impose on public utilities safety requirements pertaining to the locating and marking of natural gas facilities.  This Order Instituting Investigation ("OII") will assess PG&E's compliance with the law pertaining to locating and marking of natural gas distribution pipelines, and related requirements to timely and accurately inform construction personnel and private persons on the location of PG&E's underground pipes and other infrastructure related to the transporting of natural gas.

Case: 19-30088    Doc# 1112-13    Filed: 03/28/19    Entered: 03/28/19 16:34:16    Page 2
of 22

This OII provides notice that the Commission will determine whether PG&E has violated legal requirements for the utility to timely locate and mark natural gas pipelines. so as to ensure that third party construction excavation does not damage pipes and other components and thus diminish safety. This OII also directs PG&E to show cause as to why the Commission should not find violations in this matter, and why the Commission should not impose penalties, and/or any other forms of relief, if any violations are found. PG&E is directed in this order to provide a report on these matters, provide answers to certain questions, and to provide other specified information to the Commission.

The Commission has commenced this investigation because our Safety and Enforcement Division (SED) has presented a report that presents a set of clear and important safety concerns.[1] When a public utility fails to comply with any safety law, the safety of the public and the safety of PG&E's own employees is compromised. By their nature and importance, safety laws require rigorous utility compliance at all times and instances. The Commission deems utility falsification of safety-related records to be a serious violation of law, again diminishing safety, and a violation of the trust this Commission places in utilities to provide accurate, truthful, and timely information to the Commission.

SED alleges that the time-period in which gas record falsification and safety violations occurred is 2012 through 2017. This is the period immediately following the 2010 San Bruno gas explosion and fire that resulted in eight fatalities, numerous injuries and damage to property. This Commission would expect that after such a tragedy, caused by multiple proven violations of law, PG&E would have sought to vigorously enhance and increase its effectiveness in all aspects of its gas safety. If SED's contentions and

---

[1] The SED Report is a significant amount of information, and is therefore available upon request. The SED Report includes multiple attachments, including an independent auditor report (from Bates White) counting PG&E's records showing late locating and marking (known as late tickets), a report from a third-party consultant hired by PG&E (Guidepost) on its investigation of PG&E's tickets that inaccurately showed as on time, and transcripts of the Examinations Under Oath of PG&E's officers, Nick Stavropoulos and Jesus Soto, regarding the safety consequences of these matters.

Case: 19-30088     Doc# 1112-13     Filed: 03/28/19     Entered: 03/28/19 16:34:16     Page 3 of 22

evidence presented prove to be accurate, this Commission may take this into account in ordering remedies and penalties.

The Commission has not concluded that PG&E has violated the law in any instance pertaining to late tickets, locating and marking, or any matter related to either, or to any other matter raised in this Order Instituting Investigation. We do conclude that SED has presented a prima facia case, sufficient for us to issue this Order Institution Investigation.

## II. SUMMARY OF LOCATE AND MARK REQUIREMENTS

California law requires that once PG&E receives notice of an excavator's intent to excavate within its service territory, the utility has two working days (not including the day of the call) to locate and mark its underground facilities, including gas pipelines, valves and other such infrastructure, and to mark the ground directly above them, as a way to show the existence of those facilities. Alternatively, the excavator can specify a later deadline, up to 14 days, by which PG&E has to locate and mark its facilities.[2] Also, PG&E can locate and mark by a later deadline than initially set, but only if the excavator agrees to extend that deadline. SED contends that this is done, and is required by law, so that the excavators do not commence digging or other excavation before marking. (SED Report, pp. 5-6). SED further contends that these requirements protect against excavators mistakenly damaging PG&E facilities.[3] Excavators provide notice of the need for PG&E to locate and mark its underground natural gas facilities by either calling the appropriate regional call center at "811" or on the regional notification center website.[4] In instances where the utility does not perform the locate and mark function within the required period, the operator's locate and mark is considered "late". California Government Code Section 4216.3 requires a utility to locate and mark within the area delineated for excavation, where subsurface installations exist. In any of these instances, we understand

---

[2] SED Report, p. 13, footnote 78, citing California Government Code Section 4216.

[3] See for example, SED Report, Section VII.A.

[4] See for example, California Government Code Section 4216.10(d), which allows excavators to renew tickets by accessing the regional notification center's website or by calling 811.

Case: 19-30088 Doc# 1112-13 Filed: 03/28/19 Entered: 03/28/19 16:34:16 Page 4 of 22

that a knowledgeable PG&E employee or agent must physically arrive at the scene of the construction and locate and mark underground pipe and other components before a prescribed deadline, and that construction is required to wait until locating and marking is complete.

## III.   SED'S REPORT CONCLUDES THAT PG&E'S PRACTICES RELATED TO LOCATING AND MARKING OF ITS NATURAL GAS FACILITIES HAVE VIOLATED THE LAW

SED's report, entitled "Investigative Report Into the Operations and Practices of Pacific Gas and Electric Company's Damage Prevention and locate and mark Program", issued on December 6, 2018, concludes and contends that PG&E violated the law pertaining to the locating and marking of its gas facilities.  SED's Investigative Report is attached as Appendix A of this OII.  Based on the law and SED's contentions of facts, we find sufficient and ample reason to commence and support this Order Instituting Investigation.

The Commission will ascertain in this investigation whether PG&E violated the following requirements with respect to its locate and mark related activities:

- Title 49 Code of Federal Regulations (49 CFR) Sections 192.13(c), 601-631, and 1007(c);
- California Public Utilities Code Section 451;
- California Government Code Section 4216;
- Commission General Order 112-F;
- Other Federal, State, and Commission requirements.

### A.   SED's Investigation Determined that PG&E Falsified Multiple Locate and Mark Tickets as "On-Time" to Avoid Them Appearing as Late and In Violation of the Law

On April 28, 2016, the Pipeline and Hazardous Materials Safety Administration (PHMSA), notified SED that PG&E had possibly falsified many of its locate and mark records.[5]  As a result, SED conducted a pre-formal investigation, which included

---

[5] SED Report, p. 162, Table 3.

Case: 19-30088    Doc# 1112-13    Filed: 03/28/19    Entered: 03/28/19 16:34:16    Page 5 of 22

Examinations Under Oath, data requests, extensive communications with PG&E, and review of PG&E internal reports.

On May 2, 2018, PG&E sent a letter (May 2 letter) to SED's Director attaching an investigative report written by a consultant retained by PG&E. (Guidepost Report). The May 2 letter and the attached Guidepost Report are provided as attachments to the SED Report. The Guidepost Report included certain facts and conclusions about the extent of inaccuracies in PG&E's late tickets and the reasons for the inaccuracies. PG&E then shared the Guidepost Report with SED. The Guidepost Report provides the following conclusions related to PG&E's falsification of tickets so that they would not appear as late:

   i. PG&E lacked sufficient locate and mark staffing to timely complete locate and mark work.[6]
   ii. PG&E placed inherent pressure on locators to complete the work.[7]
   iii. It was common knowledge among supervisors that locators entered false notes to avoid tickets from going late.[8]
   iv. PG&E received input from external parties that there were "discrepancies in its late ticket reporting."[9]
   v. PG&E management added pressure to avoid late tickets.[10]
   vi. Supervisors and locators felt pressure to falsify tickets so they would not appear as late.[11]

Related to these Guidepost Report conclusions, a PG&E manager told SED that PG&E partly evaluated his job performance based upon whether he achieved a goal of zero late tickets.[12]

---

[6] Guidepost Report, p. 7.

[7] Guidepost Report, pp. 7-8.

[8] Guidepost Report, p. 33.

[9] Guidepost Report, p. 38.

[10] Guidepost Report, pp. 7-8.

[11] Guidepost Report, p. 40.

[12] Examination Under Oath Transcript of Joel Dickson, page 52, line 26 through page 53, line 7.

Based on the Guidepost Report, and SED's own investigation, SED contends that PG&E falsified locate and mark tickets so that they would not appear "late".[13]  In light of the SED Report, we will consider whether PG&E falsified any of its locate and mark tickets, and if so, whether doing so violated any safety requirements of the law enforced by this Commission.

### B.     SED Contends that PG&E Has Accepted the Bates White Report Facts as True

Bates White was retained by PG&E to determine, based on information available in a repository of information called "irth Utilisphere", the number of times PG&E responded late to "call before you dig" requests made through 811 call centers.  Bates White states that it specializes in advanced economic, financial, and econometric analysis and excels at complex matters that requires sophisticated problem solving and deep empirical analysis.[14]  SED contends that PG&E has accepted as true the facts in the report of its own hired consultant, Bates White.[15]  As noted in the SED Report, the Bates White report provided upward revisions to PG&E's late ticket counts, and identification of associated dig-ins.[16]  SED concludes this suggests that PG&E violated safety requirements, such as California Government Code Section 4216, by undercounting, and other safety requirements if such undercounting caused or was a contributing factor to dig-ins.[17]  As PG&E has not accepted the facts and conclusions of the Guidepost Report as true at this time, they will be required to state in their report whether they dispute anything in that Report.

---

[13] See SED Report, Sections VI and VII.

[14] See SED Report Attachment 4, May 2 Letter from PG&E to SED, pdf, p. 45 of 54.

[15] SED Report, p. 167.

[16] SED Report, p. 4, Table 1, and p. 88.

[17] See for example, SED Report, Sections I and II.

### C. SED Investigated Whether PG&E's Falsification of Its Locate and Mark Records Resulted in PG&E's Undercounting

SED contends that PG&E's failure to properly address the practice of falsifying its locate and mark records resulted in PG&E undercounting its late tickets each year between 2012 and 2016 on the order of tens of thousands. SED notes that PG&E also undercounted at least 5,000 late tickets for the first two months of 2017.[18] As discussed in the SED Report, each failure of PG&E to respond to an Underground Storage Alert (USA) request in a timely fashion increased the risk of another catastrophic gas incident, regardless of whether there was an actual hit or "dig-in"[19] on PG&E's infrastructure, or not.[20] SED asserts this would be a violation of Government Code Section 4216 and PG&E's own damage prevention procedures.[21]

### D. SED Recommends Investigating Whether PG&E Management Caused, Encouraged, Knew or Should Have Known of Falsification of Tickets So That They Would Not Appear as Late

SED has reviewed the Guidepost Report and conducted Examinations Under Oath of PG&E current and former employees, supervisors, and senior management, including senior officers. Based on this information, SED recommends investigating whether PG&E management participated directly or had knowledge of PG&E's falsification of tickets so that they would not appear late. We agree this issue should be included in the OII.

---

[18] SED Report, Table 1.

[19] PG&E defines a gas dig-in as follows: "A gas dig-in refers to any damage (impact or exposure) that results in a need to repair or replace an underground gas facility due to an excavation. A third party dig-in is damage caused by an entity other than PG&E or a PG&E contractor." (Response to SED Data Request Question 12581.14, Data Request 12581, dated 10-26-2018.

[20] SED Report, p. 3.

[21] SED Report, p. 2.

Case: 19-30088    Doc# 1112-13    Filed: 03/28/19    Entered: 03/28/19 16:34:16    Page 8 of 22

F.    **Safety-Related Consequences of Undercounting Late
      Tickets and/or Falsifying Tickets So That They Would
      Not Appear As Late**

The SED Report identified multiple potential safety related consequences if PG&E undercounted late tickets, and/or falsified them so that late tickets would not appear to be late. These safety concerns raise a question as to whether there are any other safety related consequences that would result from undercounting or falsification of late tickets. At a high level, the safety related consequences contended in the SED Report include:

- For excavators who dig before a late marking, PG&E's could not prevent, or properly mitigate dig-ins.[22]

- PG&E would not properly staff locators due to undercounting of late tickets.[23]

- PG&E would not properly identify who is at fault, or the percentage of fault shared for dig-ins related to late tickets.[24]

- PG&E inaccurately reporting locate and mark related data to SED.[25]

- Certain specific dig-ins may have been related to PG&E late and/or falsified tickets.[26]

## IV.   IDENTIFICATION OF SED'S SOURCES OF INFORMATION IN SED'S PRE-FORMAL INVESTIGATION

SED's preliminary investigation consisted of the following:

- Review of PG&E's May 2, 2018 Letter to SED with Attachments

- Review of Federal and State pipeline regulations

- Review and Analysis of PG&E's internal standards

- Submittal of Data Requests

- Review of PG&E's Records

- Examinations Under Oath of certain PG&E current and former employees.

---

[22] SED Report, p. 173.

[23] SED Report, p. 173.

[24] SED Report, p. 173.

[25] SED Report, p. 173.

[26] SED Report, pp. 32-76.

246120841

## V.    INITIATION OF INVESTIGATION

The findings in SED's Investigative Report raise serious safety concerns. Excavators, including construction crews, rely on PG&E to inform them exactly where PG&E's underground natural gas infrastructure is located, and for PG&E to mark it. The law recognizes this and establishes a schedule and procedures to accomplish timely utility location and marking of underground infrastructure, including gas pipes during construction.

We understand that construction crews are on a tight schedule, subject to costly delays if they do not commence digging on time. If PG&E fails to meet its legally imposed responsibilities to locate and mark the required deadline of the excavating contractor's request, a contractor may simply commence digging despite the danger. This may result in damage to underground natural gas infrastructure, including pipes and other components, sometimes in a fashion that does not manifest itself for years, but remains a serious danger nevertheless.

SED has completed a pre-formal investigation, and provided an Investigative Report and Attachments, including the Bates White Report, Guidepost Report, Common Ground Alliance DIRT Report, Examinations Under Oath of Messrs. Nick Stavropoulos and Jesus Soto, and PG&E Data Responses. The report and attachments are contained in Appendix 1 of this OII. The totality of these documents presents us with a strong showing that PG&E may have violated applicable safety laws related to locating and marking, by undercounting its own late tickets on the order of tens of thousands so that they did not record as late. Therefore, we find sufficient evidence and good cause to commence a formal investigation to ascertain whether such violations have occurred, and if so, to consider the proper penalties and remedies for these violations.

The Commission institutes this formal proceeding pursuant to Rule 5.1 of the Commission's Rules of Practice and Procedure ("Rules")[27] to consider the allegations in the SED's Investigative Report, and potentially responsive information from PG&E, in

---

[27] All citations to Rules refer to the Commission's Rules of Practice and Procedure, which are codified at Chapter 1, Division 1 of Title 20 of the California Code of Regulations.

246120841
Case: 19-30088    Doc# 1112-13    Filed: 03/28/19    Entered: 03/28/19 16:34:16    Page
10 of 22

order to determine whether PG&E's locate and mark practices violated Section 451 of the Public Utilities Code, Section 4216 of the Government Code, as well as other laws and regulations. We also note that if PG&E has violated its own safety rules and requirements on locating and marking, as SED has contended is the case,[28] the Commission will consider whether such violations may also violate Section 451 of the Public Utilities Code and 49 CFR Part 192.

We also expect this proceeding to ascertain the extent to which PG&E's practices with regard to locate and mark may have diminished system safety. Concerns regarding diminished safety arise from SED's Report, which discusses examples of safety consequences of late tickets and falsification of locate and mark records.[29] We need to understand the extent to which any PG&E failure to locate and mark may have damaged pipes or other equipment in ways that manifested itself in component failure, injury, or death, or in damage that may not be manifested for years but may be present nevertheless.

Further, if such violations are found, we will specifically consider what monetary fines and other remedies are appropriate in order to prevent PG&E's locating and marking practices from endangering the public. We will also review the duration of violations per Public Utilities Code Section 2108. If supported by the evidence, the Commission will consider ordering daily fines. The Commission also invites interested parties to actively participate in this proceeding as it involves important safety and other policy matters that may benefit from the expertise, participation, and evidence of other parties.

### A.    SED and Other Attached Reports

The SED Investigative Report, SED pre-formal investigation, Bates White Report, Guidepost Report, and other evidence provide us with reason to commence this investigation and to ascertain whether PG&E has violated the law. Thus, we provide

---

[28] See SED Report, Section IX, "PG&E's Failure to Comply with Locate and Mark Requirements."

[29] See SED Report, Section X.

Respondent PG&E an opportunity to contest any facts asserted in the SED Investigative Report and attached documents. Further, the Commission directs PG&E to provide its factual and legal contentions, with evidence and citation to law supporting them, to the extent that PG&E disagrees with any SED contention of fact or law.

## B. PG&E Report

PG&E is directed to prepare and file a report, within 90 days of the issuance of this OII, to identify all reasons of law and fact known to PG&E to support the possibility that the company has committed no violation of law with respect to its locate and mark practices. Thus, PG&E is directed to file and serve a report on all known parties, which responds to the following directives:

1. List each factual contention stated, and conclusion reached, by the SED Report, regarding PG&E's locate and mark practices, that PG&E contends is incorrect, and provide support for PG&E's position.

2. List each factual statement made by the Guidepost Report, that PG&E contends is incorrect, and provide support for PG&E's position.

3. List each finding and conclusion made by the Guidepost Report with which PG&E disagrees, and provide support for PG&E's position.

4. List each factual statement made by the Bates White Report that PG&E contends is incorrect, and provide support for PG&E's position.

5. Provide all company and employee performance and pay metrics and expectations, in place from 2012 through 2017, related to locate and mark late tickets. Provide this both on a company basis and for each local office or district.

6. Provide all company and employee performance and pay metrics and expectations, in place from 2012 through 2017, related to employees failing to go to a site timely before excavation to locate and mark.

7. What explanation does PG&E offer for each locate and mark problem claimed in the SED investigation, Guidepost, and Bates White reports?

8. What corrective actions has PG&E already taken in response to the locate and mark related problems identified in the SED investigation reports?

9. Provide the names (and titles if employee or agent) of all witnesses to the responses and information in the Guidepost Report. Provide the name of each such witness with respect to specified portions of the PG&E report.

The ordered report shall be based on information in PG&E's possession. No discovery on the Commission or its staff is warranted for PG&E to complete this report. As noted below, a moratorium on discovery conducted by PG&E on the Commission and its staff shall be in place until otherwise directed by a Ruling in this proceeding.

## VI. PRELIMINARY SCOPING MEMO

Rule 7.1(c) provides that an order instituting an investigation (OII) shall attach a preliminary scoping memo. The following discussion meets this requirement.

### A. Issues Presented

The Commission is charged with responsibilities under Public Utilities Code Section 451, 701, 761, 768, and federal pipeline standards, including Title 49 of the Code of Federal Regulations Part 192[30] that we are certificated and authorized by the federal government to enforce.[31] The Commission also bears the responsibility, pursuant to 49 USC Section 60105 and 49 CFR Part 192, of enforcing PG&E's own safety procedures when PG&E violates them. SED contends that, in addition to violations of state and federal statutes, regulations and orders, PG&E has violated its own gas rules.[32]

The Commission bears a responsibility both to enforce laws utilities may have violated in the past, and to prevent future unsafe utility practices. If the Commission determines that PG&E violated safety standards with respect to its gas system recordkeeping, the Commission will determine whether penalties pursuant to Public

---

[30] See 49 CFR Part 192.

[31] These include 49 U.S.C. Section 60105, and General Order 112-F.

[32] See SED Report, Table 2, which identifies PG&E procedures PG&E WP4412-03, TD-4412P-03, TD-4412P-03, PG&E procedure TD-5811P-102 and PG&E's TD-5811P-105.

Utilities Code Sections 2107 and 2108 and Government Code Section 4216 are warranted, and if so the amount appropriate to the facts and the law.

To determine whether PG&E is in violation of any of the requirements stated in this section, or any other federal, state or Commission requirements, we preliminarily determine the scope of the proceeding to address the following:

(1) Has PG&E violated any provisions of the Public Utilities Code, Government Code, general orders, Commission decisions, federal gas safety regulations and laws that the federal government has authorized the Commission to enforce in California, and/or other state or federal law, regarding PG&E's locating and marking practices?

(2) Has PG&E violated other rules, or requirements, regarding PG&E's locate and mark procedures, training, and supervision and practice within PG&E's service territory?

(3) Did PG&E properly log and record each legitimate 811 request, and for each such request did an employee or agent go to the construction site and locate and mark underground facilities in a timely fashion, or at all?

(4) To what extent are dig-ins in PG&E's service territory attributable to improper locate and mark efforts or falsified records?

(5) Did PG&E's undercounting of late tickets or failure to provide correct statistics and notations related to its locating and marking program diminish safety and violate safety law?

(6) Did PG&E violate Commission Rule of Practice and Procedure Rule 1.1 by underreporting its late ticket count to the Commission's Safety and Enforcement Division?

(7) Did PG&E management provide performance or pay signals to its employees which would have encouraged them to falsify locate and mark information or otherwise reduce safety?

(8) What should be the appropriate fine or penalty for any proven violation, in compliance with the facts and the law?

(9) Should PG&E shareholders or ratepayers bear the costs of this investigation, and the included SED investigations?

Case: 19-30088    Doc# 1112-13    Filed: 03/28/19    Entered: 03/28/19 16:34:16    Page
14 of 22

**B. Categorization of Proceeding**

This proceeding is categorized as adjudicatory. Pursuant to Rule 8.2(b), *ex parte* communications are prohibited. The determination as to category is appealable under Rule 7.6.

**C. Need for Hearings and Schedule of Proceeding**

The Commission notifies PG&E that hearings will be set to review the issues raised in this matter. The Commission intends to set a prehearing conference to consider and adopt a hearing schedule and schedule other matters for this proceeding.

Pursuant to Rule 7.6(a), appeals of the categorization of this investigation, if any, are to be filed and served within 10 days of the date this OII is issued. Responses on this preliminary scoping memo may also be filed and served within 30 days of the date this OII is issued. Replies to responses may be filed and served within 30 days of the due date for responses.

A prehearing conference ("PHC") shall be scheduled after receipt of comments on the preliminary scoping memo. This OII shall be focused on gas locating and marking practices and related matters, including those related to the issues presented in the preliminary scoping memo. Further, the Presiding Officer may refine the issues to be addressed and determine the schedule and applicable procedures for this OII.

| Appeal of categorization | 10 days after issuance of this OII |
|---|---|
| PG&E's Proposed Redactions and Legal Basis for Making Them | 10 days after issuance of this OII |
| Parties Responses to PG&E's Proposed Redactions and Legal Basis for Making Them | 5 days after deadline for PG&E's Proposed Redactions |
| Responses on scope and issues in OII | 30 days after issuance of this OII |
| PG&E Report due | 90 days after issuance of this OII |

Case: 19-30088    Doc# 1112-13    Filed: 03/28/19    Entered: 03/28/19 16:34:16    Page 15 of 22

| Subsequent Deadlines and Case Submission | To be Determined |
|---|---|

A moratorium on discovery conducted by PG&E on the Commission and its staff shall be in place unless and until otherwise directed by a Ruling in this proceeding. In contrast, pursuant to Public Utilities Code Section 314(a), the Commission and its staff may seek information from PG&E at any time. Thus, there shall be no moratorium on discovery conducted by the Commission and its staff on PG&E, at any time in this proceeding, unless otherwise directed by a Commission Decision. Further, even without the compulsion of a subpoena, the Commission hereby confirms that under Public Utilities Code Sections 313, 314, 314.5, 315, 581, 582, 584, 701, 702, 771, 1794, and 1795, the Commission staff may obtain information from utilities and is already deemed to have the general investigatory authority of the Commission.

### D.    Comments

We invite parties to comment on the range of issues identified above. In their comments, parties may state any objections to the order regarding the need for hearing, issues to be considered, or the proposed schedule. In the event that parties are not Commission staff participate in this proceeding and request confidential information from PG&E, PG&E shall provide a non-disclosure agreement for those parties to sign. All filings in this proceeding may be made electronically in accordance with Rule 1.14 and served in a fashion consistent with Rule 1.10.

### E.    Parties and Service List

PG&E is named as a Respondent to this investigation. SED is named as a party to this proceeding. The service list may be updated with additional parties.

## VII.    SED INVESTIGATION REPORTS PUBLICALLY RELEASED

Fundamentally, the public has the constitutional right to scrutinize Commission business,[33] which is undertaken on behalf of the public. In that vein, the Commission has

---

[33] See Cal. Const. Art 1, Section 3(b)(1).

the discretion to disclose investigation records under Section 583 of the Public Utilities Code.

The public interest in transparency in this matter of critical public safety significance outweighs PG&E's interest in maintaining the confidentiality of the investigation records, unless PG&E can provide a valid legal reason for maintaining confidentiality of such records. The one exception to this is names of witnesses and residence addresses. Those items shall be redacted as a matter of course. We also provided some minimal general information in this order that we find should be made public, such as the names of PG&E consultants and their general findings.

The Commission expects to release SED's report and all supporting attachments publicly after PG&E has provided any objections it has to specific material in the report that it contends merits confidentiality under the law and therefore should be redacted. PG&E's proposed redactions, supporting objections and declarations shall be due 10 days from the date this OII is issued. Parties to the proceeding shall have 5 days to respond to PG&E's proposed redactions, supporting objections and declarations.

## VIII. IMMEDIATE CORRECTIVE ACTIONS

PG&E shall immediately take necessary corrective action to ensure safe locate and mark programming. In addition to the information to be provided in the PG&E Report in response to Section II.B, PG&E shall provide the following information within 30 days of the issuance of this OII:

- A report of its activity to the Safety Monitor, appointed by Judge Alsup in federal court litigation, assigned as a condition of its probation, if it has not done so already;

- A list of all management, including senior officers, responsible for the matters identified in the Safety and Enforcement Division report, for the period identified in the SED report;

- Personnel actions that have been or will be taken to address the issues identified immediately above; and

- A list of all current corrective actions going on at PG&E, and the officers, managers, and staff responsible for these corrective actions.

PG&E shall prepare an affidavit, under penalty of perjury, that confirms it is conducting locate and mark efforts and programs in a safe manner. Copies of all documentation required above shall be provided to the Director of Safety and Enforcement Division.

## IX. PUBLIC ADVISOR

Any person or entity interested in participating in this investigation who is unfamiliar with the Commission's procedures should contact the Commission's Public Advisor's Office in San Francisco at (415) 703-2074, (866) 849-8390, or email public.advisor@cpuc.ca.gov; or in Los Angeles at (866) 849-8391, or email public.advisor.la@cpuc.ca.gov. The TTY number is (866) 836-7825. Written communication may be sent to the Public Advisor, California Public Utilities Commission, 505 Van Ness Avenue, San Francisco, CA 94102.

## X. INTERVENOR COMPENSATION

A party that expects to request intervenor compensation for its participation in this Investigation shall file its notice of intent to claim intervenor compensation in accordance with Rule 17.1.

Therefore, **IT IS ORDERED** that:

1. An investigation is instituted on the Commission's own motion to determine whether Pacific Gas and Electric Company violated any provision of the Public Utilities Code, general orders, federal law adopted by California, other rules, or requirements, and/or other state or federal law, by its locate and mark policies, practices, and related issues, including those identified in the preliminary scoping memo provided in this OII.

2. Pacific Gas and Electric Company is named as Respondent to this investigation.

3. The Commission's Safety and Enforcement Division is named as a party to this proceeding.

4.　　Respondent Pacific Gas and Electric Company (PG&E) is directed to show at hearings why the Commission should not find it in violation of provisions of the Public Utilities Code, general orders, decisions, other rules, or requirements identified in this Order, and/or engaging in unreasonable and/or imprudent practices related to these matters, and why the Commission should not impose penalties. If any violation by PG&E is found, PG&E is directed to show why penalties and/or any other form of relief should not be applied.

5.　　Pacific Gas and Electric Company is directed to file a report as required in Section V.B of this Order no later than 60 days after the issuance of this OII.

6.　　Pacific Gas and Electric Company is hereby given notice that fines may be imposed in this matter pursuant to Public Utilities Code Sections 2108, as well as Government Code Section 4216.

7.　　Pacific Gas and Electric Company is hereby given notice that the Commission may order PG&E to implement measures designed to prevent future locate and mark related failures pursuant to Public Utilities Code Sections 451, 701, 761, and 768.

8.　　This Order includes a preliminary scoping memo.

9.　　Pursuant to Rule 7.1(c) of the Commission's Rules of Practice and Procedure, this proceeding is categorized as adjudicatory and deemed to require hearings.

10.　　Ex parte communications are prohibited in this proceeding.

11.　　A prehearing conference shall be convened before an Administrative Law Judge for the purpose of establishing a schedule in this matter, including the date, time, and location of an evidentiary hearing.

12.　　A moratorium on discovery conducted by Pacific Gas and Electric Company on the Commission and its staff shall be in place until otherwise directed by a subsequent Ruling.

13.　　There shall be no moratorium on discovery conducted by the Commission and its staff on Pacific Gas and Electric Company, at any time in this proceeding, unless otherwise directed by a Commission Decision.

Case: 19-30088    Doc# 1112-13    Filed: 03/28/19    Entered: 03/28/19 16:34:16    Page 19 of 22

14.     Pacific Gas and Electric Company (PG&E) shall file any proposed redactions, supporting objections and declarations to publicly releasing the SED Investigation Report and all supporting documents no later than 10 days after the date this OII is issued.  Parties to the proceeding shall file any response no later than 5 days after PG&E files its objections.  Parties will have an opportunity to re-visit this issue and make appropriate motions as necessary.

15.     A copy of SED's confidential report, pursuant to General Order 66D and Decision 16-08-024, entitled "Investigative Report Into The Operations and Practices of Pacific Gas & Electric Company's Damage Prevention and Locate & Mark Programs", including supporting attachments, will be made exhibits in this proceeding.  The Executive Director shall cause a copy of this confidential report to be served by certified mail on respondent Pacific Gas and Electric Company.  Safety and Enforcement Division shall file and serve a public version of this report and supporting attachments in this proceeding, with confidential information redacted as needed, within 14 days after PG&E's deadline to propose redactions to these documents, as provided in Ordering Paragraph 14.  If it later becomes necessary to remove additional redactions proposed by PG&E, SED shall update the public version of the report and supporting attachments, and file and serve them.

16.     Effective immediately, PG&E shall take necessary corrective action to ensure safe locate and mark programming, and provide any documentation not specified in the ordering paragraphs below related to PG&E's locate and mark program.

17.     Pacific Gas and Electric Company shall provide the following information within 30 days of the issuance of this Order Instituting Investigation to the Director of the Safety and Enforcement Division.

- A report of its activity to the Safety Monitor, appointed by Judge Alsup in federal court litigation, assigned as a condition of its probation, if it has not done so already;

- A list of all management, including senior officers, related to gas operations, responsible for the locate and mark matters

identified in the Safety and Enforcement Division Report, for the period identified in the report;

- Personnel actions that have been or will be taken to address the issues identified immediately above; and

- A list of all current corrective actions going on at PG&E, and the officers, managers, and staff responsible for these corrective actions.

18.      Pacific Gas and Electric Company shall file and serve an affidavit within 30 days of the issuance of this Order Instituting Investigation, under penalty of perjury, that confirms it is conducting locate and mark programs in a safe manner.

19.      This OII shall be served upon the service list of each of the following proceedings: Application (A.) 15-09-001, A.17-11-009, A.17-09-006, Investigation (I.) 15-11-015, I.12-01-007, I.11-02-016, and Rulemaking (R.) 11-02-019.

20.      The Executive Director shall cause a copy of this Order to be served electronically and by certified mail on the Respondent, Pacific Gas and Electric Company, at:


Geisha Williams, CEO
Pacific Gas and Electric Company
77 Beale Street
San Francisco, CA 94105

Jonathan Pendleton, Law Department
Pacific Gas & Electric Company
77 Beale Street
San Francisco, CA 94105
J1Pc@pge.com

Case: 19-30088    Doc# 1112-13    Filed: 03/28/19    Entered: 03/28/19 16:34:16    Page 21 of 22

This order is effective today.

Dated December 13, 2018, at San Francisco, California

MICHAEL PICKER
President
CARLA J. PETERMAN
LIANE M. RANDOLPH
MARTHA GUZMAN ACEVES
CLIFFORD RECHTSCHAFFEN
Commissioners

Case: 19-30088    Doc# 1112-13    Filed: 03/28/19    Entered: 03/28/19 16:34:16    Page
22 of 22