1   **GARY LIVAICH, SBN 084186**
    **J. RUSSELL CUNNINGHAM, SBN 130578**
2   **BRIAN MANNING, SBN 241512**
    **KRISTEN RENFRO, SBN 259162**
3   **DESMOND, NOLAN, LIVAICH & CUNNINGHAM**
    1830 15th Street
4   Sacramento, California 95811
    Telephone: (916) 443-2051
5   Facsimile: (916) 443-2651

6

7   Attorneys for DF Properties, KV Sierra Vista, LLC,
    Baseline 80 Investors, LLC, Baseline P&R, LLC, John J. Guerra Jr.,
8   Successor Trustee of the Cyril G. Barbaccia Irrevocable
9   Trust dated December 15, 1976, Joiner Limited Partnership,
    Brian T. Howe and Stephen J. Norman

10

11            **UNITED STATES BANKRUPTCY COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
12                 **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 13   In re: | Case No. 19-30088 (DM) |
| 14 | Chapter 11 |
| | (Lead Case) (Jointly Administered) |
| 15   **PG&E CORPORATION,** | |
| | **MOTION OF REAL PROPERTY** |
| 16       -and- | **OWNERS FOR AN ORDER** |
| | **CONFIRMING THE AUTOMATIC STAY** |
| 17   **PACIFIC GAS & ELECTRIC** | **DOES NOT BAR CONTINUATION OF** |
|     **COMPANY,** | **EMINENT DOMAIN ACTIONS FILED** |
| 18 | **BY THE DEBTOR PRE-PETITION AND** |
| | **GRANTING RELIEF FROM STAY FOR** |
| 19          **Debtors.** | **CAUSE TO THE EXTENT IT MIGHT** |
| | **OTHERWISE BAR ACTS RELATED TO** |
| 20   [ ]   Affects PG&E Corporation | **THE PROCEEDINGS, INCLUDING THE** |
|     [ ]   Affects Pacific Gas & Electric Company | **PAYMENT OF JUST COMPENSATION** |
| 21   [X] Affects both Debtors | |
| 22 | Date: April 23, 2019 |
| | Time: 9:30 a.m. (Pacific Time) |
| 23   *All papers shall be filed in the Lead Case,* | Place: United State Bankruptcy Court |
|     *No. 19-30088(DM)* |        Courtroom 17, 16th Floor |
| 24 |        San Francisco, CA 94102 |
| | Objection Deadline: April 16, 2019 at 4:00p.m. |
| 25 | (Pacific) |

26

27   ///

28

# Table of Contents

MOTION.................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES...................................5

I.     JURISDICTION ...............................................................................5

II.    SUMMARY OF FACTS ...................................................................5

III.   SUMMARY OF ARGUMENT............................................................9

IV.   ARGUMENT...................................................................................9

A.    The Automatic Stay Does Not Apply to Pre-Petition Actions
Commenced by the Debtor .................................................................10

B.    Relief from Stay as to Actions that Might Be Subject to the
Automatic Stay in Connection with the Eminent Domain Actions
May Be Granted for Cause in the Court's Discretion Pursuant
to 11 U.S.C. § 362(d)(1), and in Keeping with the Court's
Authority Pursuant to 11 U.S.C. § 105(a)...........................................11

C.    Relief, to the Extent Necessary, Is Appropriate Here, Where
It Is Essential to Uphold the Real Property Owners'
Constitutional Rights, and Would Fairly and Efficiently
Accommodate the Debtor and the Estate's Ability to Secure
Necessary Property Rights in the Ordinary Course, and
Without Risk to Creditors...................................................................12

V.    CONCLUSION.................................................................................20

i

# Table of Authorities

## Cases

### Federal

*Advanced Ribbons and Office Products, Inc. v. U.S. Interstate Distributing, Inc.*,
125 B.R. 259 (9th Cir. BAP 1991)......................................................10

*Blanchette v. Connecticut General Insurance Corps.*, 419 U.S. 102 (1974)............15

*Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897)..................................14

*Chugach Timber Corp. v. Northern Stevedoring & Handling Corp.*,
23 F.3d 241 (9th Cir.1994)..............................................................10

*In re A Partners, LLC*, 344 B.R. 114 (Bankr. E.D. Cal. 2006)............................12

*In re Bruce*, Case No. 00–14521DWS,
2000 WL 968777 (Bankr.E.D.Pa. July 10, 2000)....................................16

*In re Castlerock Properties*, 781 F.2d 159 (9th Cir. 1986)............................12, 15

*In re City of Detroit*, 524 B.R. 147 (Bankr. E.D. Mich. 2014)..........................9, 15

*In re Kaufman*, 98 B.R. 214, 215 (Bankr.E.D.Pa.1989)..................................16

*In re City of Stockton, California*, 909 F.3d 1256 (9th Cir. 2018)........................15

*In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984)..........................................13

*In re Indian River Estates, Inc.*, 293 B.R. 429 (Bankr.N.D.Ohio 2003)................12

*In re Judkins*, 28 F.3d 106 (9th Cir. 1994)..............................................11

*In re Kronemyer*, 405 B.R. 915 (B.A.P. 9th Cir. 2009)..................................13

*In re Lehigh Valley Properties, Inc.* 482 B.R. 127 (Bankr. E.D. Pa. 2012)..............16

*In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985)................................11, 12

*In re Merrick*, 175 B.R. 333 (B.A.P. 9th Cir. 1994) ..................................10, 11

*In re Miller*, 262 B.R. 499 (B.A.P. 9th Cir. 2001)......................................10

ii

*In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551 (Bankr. C.D. Cal. 2004)..........13

*In re Robbins*, 964 F.2d 342 (4th Cir. 1992)...............................................11, 15

*In re Schwartz*, 954 F.2d 569 (9th Cir. 1992)....................................................12

*In re The SCO Group. Inc.*, 395 B.R. 852 (Bankr.D.Del.2007)............................16

*In re Universal Life Church, Inc.*, 127 B.R. 453 (E.D. Cal. 1991),
    aff'd sub nom. *Universal Life Church, Inc. v. United States*,
    965 F.2d 777 (9th Cir. 1992).................................................................16

*Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935).....................15

*Monongahela Nav. Co. v. U.S.*, 148 U.S. 312 (1893)........................................14

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001)........................................13, 14

*Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12 (N.D. Cal. 1989)........10

*Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299 (1923) ....................4, 14

*United States v. Miller*, 317 U.S. 369 (1943).................................................14

*United States v. New River Collieries Co.*, 262 U.S. 341 (1923)............................14

*United States v. Reynolds*, 397 U.S. 14 (1970)................................................14

California

*Goebel v. City of Santa Barbara*, 92 Cal. App. 4th 549 (2001) ............................4

*Heimann v. City of Los Angeles*, 30 Cal. 2d 746 (1947) .......................................4

*San Francisco v. Collins*, 98 Cal. 259 (1893) ....................................................4

*Shah v. Glendale Federal Bank*, 44 Cal.App.4th 1371 (1996)............................10

United States Constitutional Provisions

Takings clause of the Fifth Amendment to the United States Constitution.....1, 2, 14

iii

<u>California Constitutional Provisions</u>

Article I, section 19 of the California Constitution.........................................1, 2, 14

<u>Statutes</u>

Federal

11 U.S.C. § 105(a) ...........................................................................1, 2, 11

11 U.S.C. § 362(a)(1) ...................................................................................1, 2

11 U.S.C. § 362(d)(1) ...........................................................................passim

28 U.S.C. § 157 ..........................................................................................5

28 U.S.C. § 1334...............................................................................5, 13, 15

California

CCP § 1250.410..............................................................................................3

CCP § 1255.010, et seq..................................................................................3

CCP § 1255.210, et seq..................................................................................3

CCP § 1255.440..............................................................................................3

CCP § 1258.210, et seq..................................................................................3

CCP § 1263.310, et seq..................................................................................4

CCP § 1263.410, et seq..................................................................................4

CCP § 1268.510..............................................................................................3

CCP § 1268.510(a) ...............................................................................3, 4, 17

CCP § 1268.010, et seq. ................................................................................4

CCP § 1268.020..............................................................................................4

CCP § 1268.110, et seq. ................................................................................4

iv

CCP § 1268.610...........................................................................................4

CCP § 1268.620...........................................................................................4

CCP § 1268.710...........................................................................................4

CCP § 1268.720...........................................................................................4

California Public Utilities Code § 613..............................................................13

<u>Legislative Materials</u>

S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978),
    reprinted in 1978 U.S.C.C.A.N. 5787..............................................15, 16

H.R. No. 595, 95th Cong., 1st sess. 343,
    1977 U.S.Code Cong. & Admin. News 5787.............................................16

<u>Treatises</u>

2 Collier on Bankruptcy § 362.07[3] (15th ed. 1991)..........................................16

<u>Local Rules and Orders</u>

Local Rule 4001-1(a)......................................................................................1

Local Rule 5011-1(a)......................................................................................5

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,*
General Order 24 (N.D.Cal.).............................................................................5

v

## MOTION

Moving parties DF Properties, a California corporation, ("**DF**"), KV Sierra Vista, LLC, a California limited liability company, ("**KV**"), Baseline 80 Investors, LLC, a California limited liability company, and Baseline P&R, LLC, a California limited liability company, (collectively, "**Baseline Entities**"), John J. Guerra Jr., Successor Trustee of the Cyril G. Barbaccia Irrevocable Trust dated December 15, 1976 ("**CGB**"), Joiner Limited Partnership ("**Joiner**"), and Brian T. Howe and Stephen J. Norman ("**Howe** and **Norman**") (hereinafter, collectively "**Real Property Owners**"), hereby move the Court, pursuant to 11 U.S.C. §§ 105(a), 362(a)(1), and 362(d)(1), and the Takings clause of the Fifth Amendment to the United States Constitution and Article I, section 19 of the California Constitution, and in conformity with the procedural requirements of Bankruptcy Local Rule 4001-1(a), for an order confirming no stay is in effect as to direct condemnation actions (hereinafter, collectively "**Eminent Domain Actions**") filed by Pacific Gas & Electric Company (referred to herein, in conjunction with PG&E Corporation, collectively, as the "**Debtor**") pre-petition, and granting relief from the automatic stay for all purposes with respect to the **Eminent Domain Actions** and the property interests subject thereto, so that the **Real Property Owners** may take any acts they deem necessary or appropriate to exercise, safeguard, or otherwise preserve their constitutional rights to the extent authorized by the Eminent Domain Law of California[1], the **Debtor** may meet its constitutional and statutory

---

[1] Commonly referred to as the Eminent Domain Law, Title 7 of Part 3 of the California Code of Civil Procedure ("CCP"), CCP 1230.010, et seq., is the

obligations, and the superior courts in which the **Eminent Domain Actions** are pending may make and enforce without limitation all appropriate orders and enter judgments.

The motion is made on the following grounds:

(1)     Pursuant to 11 U.S.C. § 362(a)(1), only those actions or proceedings commenced or continued *against* the **Debtor** that were or could have been commenced before the commencement of the case to recover a claim against the debtor that arose before the commencement of the case are subject to operation of the automatic stay. Because the **Eminent Domain Actions** were commenced by the **Debtor**, and not the Real Property Owners, the automatic stay does not bar their continuation by the **Debtor** against the **Real Property Owners**;

(2)     Pursuant to the Takings clause of the Fifth Amendment to the United States Constitution, Article I, section 19 of the California Constitution, 11 U.S.C. §105(a), and 11 U.S.C. § 362(d)(1), to the extent the automatic stay might operate to bar any actions by the **Real Property Owners** in their defense of the **Eminent Domain Actions**, would preclude their efforts to enforce terms of settlement agreements or judgments entered in the **Eminent Domain Actions**, or to otherwise obtain a determination of and be paid the just compensation to which they are constitutionally entitled, the Court should terminate the stay for cause;

The requested order of confirmation and relief sought by this motion would authorize each of the following potential actions by the **Real Property Owners**,

_____

comprehensive body of procedural rules that govern condemnation actions in California.

2

the **Debtor**, and the superior courts in which the **Eminent Domain Actions** are now pending:

- Continued prosecution of the **Eminent Domain Actions** in the superior courts of the State of California in which they are now pending;

- The filing, amendment, and supplementing of pleadings as permitted by California law, and entry of related orders;

- The filing, amendment, and supplementing of motions authorized by California law, and entry of related orders;

- Full engagement of the **Real Property Owners** and the **Debtor** in all discovery permitted, and the enforcement of discovery obligations, as permitted under California law;

- The serving of demands for exchange, and exchange of lists of expert witness and statements of valuation data pursuant to CCP § 1258.210, et seq.;

- The exchange of final offers and demands pursuant to CCP § 1250.410;

- Participation of the **Real Property Owners** and the **Debtor** in mediations, settlement conferences, and any other formal or informal alternative dispute resolution processes as may be deemed desirable by the parties;

- The depositing and increasing of amounts of probable just compensation by the **Debtor**; stipulations to, and unilateral applications for, withdrawal of deposits; and orders authorizing withdrawals pursuant to the provisions of CCP §§ 1255.010, et seq. and 1255.210, et seq.;

- The filing of motions to vacate orders of possession, and the entry of such orders pursuant to CCP § 1255.440;

- Abandonment of the **Eminent Domain Actions** pursuant to CCP § 1268.510[2];

- Dismissals and entry of judgments as warranted under California law, and orders for redelivery of possession and for damages proximately caused by the

---

[2] This differs from the concept of abandonment of property of the estate by either operation of law upon the close of a bankruptcy case or by order on the basis of burden or inconsequential value. What is referred to here is abandonment of the condemnation proceedings. This option, albeit infrequently utilized and unlikely to be exercised by the **Debtor** in relation to any of the **Eminent Domain Actions**, that is available "any time after the filing of the complaint and before the expiration of 30 days after final judgment." CCP § 1268.510(a).

proceedings and dismissals pursuant to CCP § 1268.620, and for awards of litigation expenses pursuant to CCP § 1268.610 to the extent applicable;

- Trial to assess and finally determine just compensation, pursuant to California law, including the provisions of CCP §§ 1263.310, et seq, 1263.410, et seq. defining the governing valuation standards, fair market value for property taken, and compensatory damage for injury to remainder property;

- Payment of just compensation[3], including costs to cure or mitigate severance damages, pursuant to settlement agreements and judgments entered, and acts to enforce judgments obtained, whether before or after the commencement of the bankruptcy case, against the **Debtor** and property of the estate, through all available means under California law;

- Motions pursuant to CCP § 1268.020 to dismiss the **Eminent Domain Actions** in the event of the **Debtor**'s failure to timely pay the full amount required by settlement agreements executed and judgments entered pursuant to the provisions of CCP § 1268.010, et seq., and the entry of judgments of dismissal pursuant thereto;

- Deposits and withdrawals pursuant to CCP § 1268.110, et seq.; and

- The filing and participation in appellate proceedings that may arise out of the **Eminent Domain Actions**.

The motion is supported by the points and authorities herein, the requisite

Relief From Stay Cover Sheet and Declaration of Kristen Renfro in support of

Motion of Real Property Owners for an Order Confirming the Automatic Stay Does

Not Bar Continuation of Eminent Domain Actions Filed By the Debtor Pre-Petition

---

[3] In California, just compensation has been deemed to include recoverable court costs pursuant to CCP §§ 1268.710 and 1268.720, and litigation expenses awarded as costs pursuant to CCP §§ 1250.410. See *Goebel v. City of Santa Barbara*, 92 Cal. App. 4th 549, 559 (2001) ("An award of costs against a party whose property has been taken or damaged by a governmental entity would reduce the just compensation mandated by the state Constitution.") and *Heimann v. City of Los Angeles*, 30 Cal. 2d 746, 752 (1947), overruled in part by *Los Angeles Cty. v. Faus*, 48 Cal. 2d 672 (1957) (Requiring property owner "'to pay any portion of their costs necessarily incidental to the trial of the issues on their part, or any part of the costs of the plaintiff would reduce the just compensation awarded by the jury, by a sum equal to that paid by them for such costs.'") (quoting *San Francisco v. Collins*, 98 Cal. 259, 262 (1893)). It further includes interest or its equivalent. *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306 (1923) ("*Seaboard*").

And Granting Relief From Stay for Cause to the Extent It Might Otherwise Bar Acts Related to the Proceedings, Including the Payment of Just Compensation (hereinafter "Renfro Decl.") filed herewith, all relevant pleadings and papers on file with the Court, and such oral argument as may be presented at hearing on the matter. A copy of the form of order proposed by the **Real Property Owners** is filed herewith as **Exhibit A** to the Renfro Decl.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D.Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

### II. SUMMARY OF FACTS

The **Real Property Owners** are the fee title owners of the following parcels of real property (hereinafter, collectively, "**Subject Properties**"), in which the **Debtor** seeks to take and/or has taken property interests for which it owes just compensation:

- APNs 498-010-020, 498-010-019, 498-010-015 (formerly 017-151-027), 017-151-029, located at 5000 Baseline and 5501 Market Street, Roseville, California in Placer County (**DF**)
- APNs 499-010-014, 499-010-017, 499-010-018, 499-010-032 (formerly 017-151-044 and 017-151-046) (**KV**)
- APN 498-010-012, 498-010-013 (formerly 017-151-026) (**CGB**)
- APN 017-151-035 and APNs 017-151-044, 017-151-045, 017-151-046 (formerly 017-150-082, 017-150-087, 017-150-088) (**Baseline Entities**)
- APN 010-010-008, 010-010-009, 030-140-004 (**Howe** and **Norman**)

- APN 021-310-097 (**Joiner**)

See Renfro Decl., ¶4, p.2, lines 18-28.

Pre-petition, the **Debtor** filed the **Eminent Domain Actions** to take by its power of eminent domain, certain interests in each of the **Subject Properties**.[4] The **Debtor** seeks in four of the **Eminent Domain Actions** to take permanent and temporary easement interests for the purposes of construction, maintenance, and operation of a 30-inch high pressure natural gas transmission line, known as Line 406/407 (hereinafter "Line 406/407 Project", which the **Debtor** has alleged is being constructed for the purpose of bringing gas from Canada to service the Sacramento Valley region. According to the **Debtor**, the Line 406/407 Project spans over forty miles and traverses four counties. In the actions affecting the **Howe** and **Norman** property and the **Joiner** property, the **Debtor** has alleged it is seeking permanent and temporary interests to facilitate the installation of valve stations, In-Line Inspection facilities, and a valve automation line regulator station to improve the safety of existing gas transmission lines through the installation of remotely controllable and automated valves to identify operational issues and prevent pipeline ruptures. The projects are identified by the **Debtor**, respectively as the V-234 Valve Automation Line 173 Rocklin Regulator Station Project and the V-252 L-

---

[4] Attached to the Renfro Decl. as **Exhibits B** through **H** are true and correct copies of the operative complaints filed by the **Debtor** in each of the Eminent Domain Actions affecting the **Subject Properties**. Each of the complaints includes a detailed description of the specific property interests sought relative to each of the **Subject Properties**.

6

123 MP 13.57 Lincoln Junction. See Renfro Decl., ¶¶7-8, p.3, lines 9-28, and **Exhibits B - H** thereto.

The complaints filed by the **Debtor** in each of the **Eminent Domain Actions** pray, in pertinent part, that (1) the real property interests sought to be taken be condemned to the **Debtor**; (2) the **Real Property Owners** be required to assert their interests and claims, and the court determine and condemn such interests; and (3) just compensation for the **Debtor's** taking, including any damages or benefits incidental thereto, be ascertained, assessed, and awarded. Disputed in each of the **Eminent Domain Actions** is the amount of just compensation due each of the respective **Real Property Owners**. See Renfro Decl., ¶9, p.4, lines 1-9, and **Exhibits B - H** thereto.

The **Debtor** has alleged in each of the **Eminent Domain Actions** that the public interest and necessity require construction and operation of its projects, that the projects are planned and located in the manner that will be most compatible with the greatest public good and least private injury, and that the property interests sought to be taken are necessary for the projects. In the majority of the **Eminent Domain Actions**, the **Debtor** has obtained an order of prejudgment possession (or has obtained an agreement for same), for which it was statutorily and constitutionally required to deposit an amount determined to be the probable amount of just compensation, for the benefit, and subject to withdrawal by, the owners of the interests in the real property sought to be taken by the **Debtor** by means of the **Eminent Domain Actions**. See Renfro Decl., ¶¶10-11, p.4, lines 10-23, and **Exhibits B - H** thereto.

In order to permanently secure the interim rights it presently enjoys by means of orders of prejudgment possession, the **Debtor** will be required to pay the amount determined to be just compensation for the its taking, however ascertained, assessed, or awarded.[5]

Pre-petition, the **Debtor** entered into identical Right to Take Settlement Agreements in February of 2016 with **DF**, **KV**, **CGB**, and the **Baseline Entities**, which resolved a portion of just compensation, including reimbursements for the reasonable cost of certain landscaping, increased costs of construction of public facilities due to the location of the Line 407 pipeline, and certain grading work, as well as a subsequent Grading Work Agreement and a First Amendment to Grading Work Agreement in 2017 with **DF**. Further, the **Debtor** has already otherwise fully resolved and paid the amount of just compensation due the **Baseline Entities** pursuant to a settlement agreement executed in December of 2017, has resolved the amount of just compensation to be paid **CGB** pursuant to a Stipulation for Entry of Judgment in Condemnation executed in January of 2019, and has resolved the amount of just compensation to be paid **Howe** and **Norman** pursuant to a

_____

[5] For purposes of early possession, a court's "determination of the plaintiff's right to take the property by eminent domain is preliminary only." (Legislative Committee Comments—Assembly, 1975 Addition, to CCP § 1255.410.) "The granting of an order for possession does not prejudice the defendant's right to demur to the complaint or to contest the taking." *Id.* And a final order of condemnation which effects a transfer of formal title to the rights to be acquired will be made only upon payment of just compensation. See CCP § 1268.030 ("Upon application of any party, the court shall make a final order of condemnation if the full amount of the judgment has been paid as required by Section 1268.010 or satisfied pursuant to Section 1268.020.")

Mediation Settlement Agreement and Release of Claims executed in January of 2019. See Renfro Decl., ¶12, p.4, line 24 - p.5, line 10.[6]

### III. SUMMARY OF ARGUMENT

With respect to pending litigation upon the filing of bankruptcy by a debtor, the automatic stay operates as a bar only to "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against* the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1) (emphasis added). Further, 11 U.S.C. § 105(a) provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 362(d)(1) provides that relief from the automatic stay may be granted for "cause." And the Takings clause of the Fifth Amendment of the United States Constitution and Article I, section 19 of the California Constitution provide a fundamental substantive constitutional right to just compensation that cannot be reduced or denied by bankruptcy laws. See *In re City of Detroit*, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014) ("The Supreme Court has consistently held that bankruptcy laws are subject

---

[6] True and correct copies of the referenced agreements are filed herewith as **Exhibits I - M** to the Renfro Decl.; with the exceptions that only one of the identical Right to Take Settlement Agreements is attached – the Right to Take Settlement Agreement entered into with **DF** – and the **Baseline Entities** settlement agreement is not provided given that the compensation provided for therein has been paid. The Increased Cost Agreement requires the **Debtor** to fund an escrow agreement in the amount of $1 million, for the benefit of the **DF**, **KV**, **CGB**, and the **Baseline Entities**, to be drawn upon for reimbursement if and when any of owners incurs increased costs as a result of the presence of the Line 407 pipeline.

to the prohibition against governmental taking of private property without just compensation.") In order to ensure that the **Real Property Owners** are not denied just compensation, and that claims of just compensation are ascertained and paid through the most fair, efficient, and least burdensome means, the Court should grant relief for all purposes from the automatic stay, to the extent it would otherwise bar proceedings in state courts, to allow such claims to be resolved and promptly paid and enforced pursuant to provisions of the Eminent Domain Law.

## IV. ARGUMENT

### A. The Automatic Stay Does Not Apply to Pre-Petition Actions Commenced by the Debtor.

The automatic stay does not bar the **Debtor** "from continuing to prosecute a pre-bankruptcy lawsuit" it instituted. *In re Merrick*, 175 B.R. 333, 337 (B.A.P. 9th Cir. 1994) (citing several circuits in accord); accord *In re Miller*, 262 B.R. 499, 503 (B.A.P. 9th Cir. 2001) (citing *Chugach Timber Corp. v. Northern Stevedoring & Handling Corp.*, 23 F.3d 241, 246 (9th Cir.1994), quoting *Advanced Ribbons and Office Products, Inc. v. U.S. Interstate Distributing, Inc.*, 125 B.R. 259, 263 (9th Cir. BAP 1991) ("[The automatic stay] does not protect non-debtor parties or their property."); *Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12, 15 (N.D. Cal. 1989) ("There is simply no language in Section 362(a) designed to stay actions initiated by the debtor."); and *Shah v. Glendale Federal Bank*, 44 Cal.App.4th 1371, 1375 (1996) ("California decisional authority holds, based on the plain language of section 362(a)(1), the automatic stay is inapplicable to superior court actions initiated by the debtor.") Further, "[g]iven this freedom for the debtor . . . to prosecute [its] claims, an equitable principle of fairness" likewise "requires a

defendant to be allowed to defend himself from the attack without imposing on him a gratuitous impediment in dealing with an adversary who suffers no correlative constraint." *In re Merrick*, 175 B.R. at 338.

Despite the clear inapplicability of the automatic stay to debtor-initiate actions, the **Debtor** has filed notices of stay in the **Eminent Domain Actions**, and it has maintained that the automatic stay currently bars the proceedings from moving forward. Therefore, the Court should confirm that the automatic stay does not so operate, so that the courts in which the **Eminent Domain Actions** are pending, the **Real Property Owners**, and the **Debtor** may proceed with clarity and certainty, and without further undue delay.

**B.** **Relief from Stay as to Actions that Might Be Subject to the Automatic Stay in Connection with the Eminent Domain Actions May Be Granted for Cause in the Court's Discretion Pursuant to 11 U.S.C. § 362(d)(1), and in Keeping with the Court's Authority Pursuant to 11 U.S.C. § 105(a).**

"The Section 362 automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations." *In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985). "While Congress intended the automatic stay to have broad application, the legislative history to section 362 clearly indicates Congress' recognition that the stay should be lifted in appropriate circumstances." *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992), as amended (May 27, 1992).

"On request of a party in interest and after notice and a hearing, the bankruptcy court may grant relief from the automatic stay for cause." *In re Judkins*, 28 F.3d 106 (9th Cir. 1994) (citing 11 U.S.C. § 362(d)(1)); see also 11 U.S.C. § 105(a)

("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.") "A decision to lift the automatic stay under 11 U.S.C. § 362 is within the discretion of the bankruptcy judge and reviewed for an abuse of discretion." *In re Mac Donald*, 755 F.2d at 716.

"The term 'cause' as used in § 362(d)(1) 'is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations.'" *In re A Partners, LLC*, 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006) (quoting *In re Indian River Estates, Inc.*, 293 B.R. 429, 433 (Bankr.N.D.Ohio 2003)). "'Because there is no clear definition of what constitutes "cause," discretionary relief from the stay must be determined on a case by case basis.'" *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986) ("*Castlerock*") (quoting *In re Mac Donald*, 755 F.2d at 717). "Thus, section 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay." *In re Schwartz*, 954 F.2d 569, 572 (9th Cir. 1992).

C. **Relief, to the Extent Necessary, Is Appropriate Here, Where It Is Essential to Uphold the Real Property Owners' Constitutional Rights, and Would Fairly and Efficiently Accommodate the Debtor and the Estate's Ability to Secure Necessary Property Rights in the Ordinary Course, and Without Risk to Creditors.**

"Factors to consider in determining whether the automatic stay should be modified for cause include: (1) an interference with the bankruptcy; (2) good or bad faith of the debtor, (3) injury to the debtor and other creditors if the stay is modified; (4) *injury to the movant if the stay is not modified*; and (5) the *relative proptionality [sic] of the harms from modifying or continuing the stay*." *In re A Partners, LLC*, 344 B.R. at 127 (emphasis added).

Further, additional non-exclusive factors have been accepted as relevant, and as applicable, to the determination of "whether to lift the stay to permit pending litigation to continue in another forum," which "closely relate to those that a bankruptcy court must consider in deciding whether to exercise permissive abstention under 28 U.S.C. § 1334(c)(1)." *In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 558–59 (Bankr. C.D. Cal. 2004) (referring to so-called "*Curtis* factors," articulated in *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984)). Applicable non-duplicative factors include: (1) "[w]hether the relief will result in a partial or complete resolution of the issues," (2) "lack of any connection with or interference with the bankruptcy case," (3) "interests of judicial economy and the expeditious and economical determination of litigation for the parties," (4) and "[w]hether the foreign proceedings have progressed to the point where the parties are prepared for trial."

Finally, also relevant here is "expertise of the state court" with respect to the subject matter of the **Eminent Domain Actions**. *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009).

In the **Eminent Domain Actions**, the constitutional guarantee of just compensation is at issue, and the right of just compensation is exceptional. "The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, . . . prohibits the government from taking private property for public use without just compensation."[7] *Palazzolo v. Rhode Island*, 533 U.S. 606,

_____

[7] The **Debtor** is empowered to take property pursuant to California Public Utilities Code section 613, subject to compliance with requirements of the Eminent Domain Law.

617 (2001) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897); U.S. Const. amend. V. (private property may not "be taken for public use, without just compensation."); Cal. Const. art. I, § 19 ("Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."). "[N]o private property shall be appropriated to public uses unless a full and exact equivalent for it be returned to the owner." *Monongahela Nav. Co. v. U.S.*, 148 U.S. 312, 326 (1893) ("*Monongahela*"). As has been stated time and again by the United States Supreme Court, just compensation "must be a full and perfect equivalent for the property taken." *Monongahela* at 326; accord *Seaboard*, 261 U.S. at 304, *United States v. Miller*, 317 U.S. 369, 373 (1943), and *United States v. Reynolds*, 397 U.S. 14, 16 (1970) ("*Reynolds*"). An injured owner must "be put in as good position pecuniarily as he would have been if his property had not been taken." *Seaboard* at 304; *Reynolds* at 16.

The constitutional right to just compensation "cannot be taken away by statute." *Seaboard* at 304. Congress lacks the right to alter the measure of compensation for property taken by the power of eminent domain. See *Monongahela* at 327 (ascertainment of just compensation "is a judicial inquiry"); accord *Seaboard* at 304 and *United States v. New River Collieries Co.*, 262 U.S. 341, 343-344 (1923) ("The ascertainment of compensation is a judicial function, and no power exists in any other department of the government to declare what the compensation shall be or to prescribe any binding rule in that regard."). Therefore, it is clear that no provisions of the Bankruptcy Code may constitutionally be applied in a manner that

would deny or reduce just compensation. Discharging, or reducing, any claim of just compensation against the **Debtor** would result in a clear constitutional violation: no plan may constitutionally be confirmed that would deny just compensation for private property taken or damaged by the **Debtor**. *In re City of Detroit*, 524 B.R. 147, 268-270 (Bankr. E.D. Mich. 2014) (citing *Blanchette v. Connecticut General Insurance Corps.*, 419 U.S. 102 (1974) and *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935)).[8]

Further, "A clear congressional policy exists to give state law claimants a right to have claims heard in state court." *Castlerock*, 781 F.2d at 163 (citing 28 U.S.C. § 1334(c)). "The Senate Report accompanying the Bankruptcy Reform Act of 1978 stated that: '[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.'" *In re Robbins*, 964 F.2d at 345 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in

---

[8] The **Real Property Owners** note that the Ninth Circuit has recently offered commentary related to the issue of the treatment of claims for just compensation in bankruptcy in the case of *In re City of Stockton, California*, 909 F.3d 1256 (9th Cir. 2018) ("*Cobb*"). However, *Cobb* is so anomalous and distinguishable in terms of critical facts that it offers little useful direction. Unlike *Cobb*, which was decided on equitable mootness grounds, the **Real Property Owners** undoubtedly enjoy "actual property rights" in the **Subject Properties** and "'in rem right[s] under nonbankruptcy law'" pursuant to the Eminent Domain Law by virtue of their status that justifies priority of their recovery over that of general unsecured creditor of the **Debtor**. See *id.* at 1266. They do not hold "just a contractual or statutory right for monetary relief" that "can be adjusted in bankruptcy." *Id.* The **Real Property Owners** have not classified their claims as unsecured monetary claims – nor has the **Debtor** yet purported to characterize any of the claims. Nothing would preclude their interests being adjudicated in the superior courts in which the **Debtor** filed the **Eminent Domain Actions**. They have waived nothing. And they bring this motion at the earliest practicable time.

1978 U.S.C.C.A.N. 5787, 5836 and citing 2 Collier on Bankruptcy § 362.07[3], at 362-71 (15th ed. 1991) ("the liquidation of a claim may be more conveniently and speedily determined in another forum")); accord *In re Universal Life Church, Inc.*, 127 B.R. 453, 455 (E.D. Cal. 1991), aff'd sub nom. *Universal Life Church, Inc. v. United States*, 965 F.2d 777 (9th Cir. 1992) (quoting H.R. No. 595, 95th Cong., 1st sess. 343, 1977 U.S.Code Cong. & Admin. News 5787, 6300) ("The legislative history of § 362(d)(1) states that 'a desire to permit an action to proceed to completion in another tribunal may provide [ ] cause' for relief from a stay.") And, it bears note that in the more often-encountered cases in which the debtor in bankruptcy is a property owner whose property is subject to condemnation proceedings, other courts have deemed granting relief from the automatic stay for cause appropriate in the absence of great prejudice to the estate. See, e.g. *In re Lehigh Valley Properties, Inc.* 482 B.R. 127, 132 (Bankr. E.D. Pa. 2012) (citing *In re The SCO Group. Inc.*, 395 B.R. 852, 856–57 (Bankr.D.Del.2007); *In re Bruce*, Case No. 00–14521DWS, 2000 WL 968777, at *3 (Bankr.E.D.Pa. July 10, 2000); and *In re Kaufman*, 98 B.R. 214, 215 (Bankr.E.D.Pa.1989)).

These facts dictate that granting relief from the automatic stay to the fullest extent possible, so that just compensation may be determined in the normal course in the state courts in which they were filed, and under the Eminent Domain Law that is tailored to ensure their most effective administration, is the appropriate course. Such relief will result in no interference with the bankruptcy and will work no injury to the **Debtor** or creditors. The **Debtor** will simply continue conducting business in the normal course, continue to pursue the acquisition of property rights

it needs for vital infrastructure to serve its operations, and continue to prosecute suits filed well before the bankruptcy. The **Eminent Domain Actions** would proceed just as they did prior to the bankruptcy. The **Debtor** has itself asserted by separate motion in the case that it routinely pursues, and often settles, eminent domain actions, and that such proceedings are integral to its ability to deliver utility services. The **Debtor** further agrees that it would represent no more than a continuation of past business practices for it to maintain the **Eminent Domain Actions**, and to obtain and pay just compensation, whether upon the entry of judgment based on jury award or stipulation, or pursuant to settlement agreements; and that pending proceedings should be treated the same as newly filed actions.

There would be no injury to the **Debtor** or other creditors. To the contrary, the requested relief would fairly and efficiently accommodate the **Debtor** and the estate's ability to secure necessary property rights in furtherance of the safe and effective operation of its business. Further, the mandate of just compensation requires the **Real Property Owners** be paid no less, but also no more than the value of what is taken from them, ensuring that the estate is not diminished to the detriment of the **Debtor** or any other creditors. The **Debtor** and the estate will incur no greater expense to pay the just compensation determined in the **Eminent Domain Actions** than the value of the interests it acquires, which the **Debtor** needs. And it will retain the option of abandonment in the unlikely even that its needs change.

Allowing the **Eminent Domain Actions** to proceed were they are pending in state court will further permit the most expeditious and economical resolution of the

actions, which are all well advanced in their posture, and for all concerned. No gain is had by disrupting such proceedings, or hindering or delaying the proceedings or payment of just compensation as judgments are entered by requiring intervention of the bankruptcy court to approve routine actions and constitutionally mandated payments. The state courts that regularly handle special proceedings under provisions of the Eminent Domain Law are in the best position to shepherd the **Eminent Domain Actions** to their conclusion accommodate jury trials as necessary and enforce the laws unique to California's substantive and procedural rules. The trial judges who have overseen the progress of the **Eminent Domain Actions** prior to the Debtor's bankruptcy filing are knowledgeable not only of the relevant legal rules and principles, but also of the facts of the cases.

What is plain is the grave injury the **Real Property Owners** would suffer if relief is not granted, which clearly outweighs the non-existent harm of doing so. To the extent the Court may receive complaint that the requested relief confers priority upon the **Real Property Owners**' claims, that priority is justified in light of the constitutional provision for just compensation, which would be unduly impinged upon if the requested relief is not granted. Avoiding the violation of the **Real Property Owners**' constitutional rights undoubtedly outweighs whatever harm may result to other creditors of the **Debtor**.

The **Debtor** is not compelled to follow through with any of the acquisitions it has initiated. Even post-judgment, the **Debtor** retains, pursuant to the Eminent Domain Law, the right to abandon, however unlikely that course may be. CCP § 1268.510(a). However, if the **Debtor** is to proceed in securing title to valuable

interests in the **Subject Properties**, it is hard to conceive of a persuasive argument against the **Real Property Owners** receiving payment of just compensation, which is based on a fair market value standard, from an equitable standpoint. Were the **Debtor** to file the same actions today, it would be obligated to do so. Were the **Debtor** to seek out and enter into a transaction to purchase real property tomorrow in order to further reasonable business objectives, whether in the ordinary course or pursuant to the Court's prior approval, there would be no question that the **Debtor** should pay the fair market value for such property. It would be manifestly unjust for the **Real Property Owners** to be denied their compensation, which is expressly guaranteed in both the federal and state constitutions.

Similarly, were the **Real Property Owners** and the **Debtor** parties to an executory contract, or were the **Debtor** in possession of the **Subject Properties** pursuant to a lease, it would be incumbent upon the **Debtor** to affirm or reject in either circumstance, making a determination to accept ongoing benefits of the particular arrangement or to forgo them and be relieved of its contractual obligations.

It would be patently unjust if the **Real Property Owners**, whose rights are constitutionally derived, not merely contractual, were to be afforded less protection than a landlord or freely contracting party who has assumed a degree of risk in dealing with the **Debtor**. The **Real Property Owners** did not contract with the **Debtor**. They had no control whatsoever over the **Debtor**'s pursuit of interests in

Case: 19-30088   Doc# 1174   Filed: 04/02/19   Entered: 04/02/19 10:59:02   Page 25 of 26

the **Subject Properties**. They did not file the **Eminent Domain Actions** or willingly grant the **Debtor** interim possessory rights.

The **Debtor** is currently benefitting from the pre-judgment possession it enjoys, contingent upon deposits of probable just compensation and requirement that it pay the ultimate amount of just compensation finally determined in full. In each of the **Eminent Domain Actions**, it has proceeded to construct its project improvements and avoid delay that might have proved costly or detrimental to the **Debtor's** delivery of services to its customers. The estate has reaped, and continues to reap, the benefit. But this benefit has a price, and is subject to a process. Granting the requested relief will allow the **Debtor** to secure needed final orders of condemnation and ensure the **Real Property Owners** are paid the just compensation to which they are constitutionally entitled, in a timely manner, and in the most appropriate forum it is the only appropriate option to serve the best interests of all concerned.

## V.    CONCLUSION

For all of the reasons cited herein, the **Real Property Owners** respectfully request the Court grant the relief requested.

Date: April 2, 2019          **DESMOND, NOLAN, LIVAICH & CUNNINGHAM**


By: /s/ KRISTEN RENFRO
    **KRISTEN RENFRO**
    Attorneys for DF Properties, KV Sierra Vista, LLC,
    Baseline 80 Investors, LLC, Baseline P&R, LLC,
    John J. Guerra Jr., Successor Trustee of the Cyril
    G. Barbaccia Irrevocable
    Trust dated December 15, 1976, Joiner Limited
    Partnership, Brian T. Howe and Stephen J.
    Norman

20