Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*and*

Paul S. Aronzon (SBN 88781)
Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Proposed Counsel for the Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **-and-** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |

| | |
|---|---|
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case. No. 19-30088 (DM)* | **APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AUTHORITY TO RETAIN AND EMPLOY CENTERVIEW PARTNERS LLC AS INVESTMENT BANKER, EFFECTIVE AS OF FEBRUARY 15, 2019**<br><br>Date: April 24, 2019<br>Time: 9:30 AM Pacific Time<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

The Official Committee of Unsecured Creditors (the "Committee") appointed in the jointly administered cases of the above-captioned debtors in possession (the "Debtors"), hereby submits this application (the "Application") for entry of an order, pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), Rules 2014, 2016 and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), substantially in the form attached hereto as **Exhibit A**, authorizing the Committee to retain and employ Centerview Partners LLC ("Centerview") as investment banker, effective as of February 15, 2019. In support of the Application, the Committee submits the declaration of Samuel M. Greene, a Partner and the Co-Head of the Debt Advisory and Restructuring Practice at Centerview, attached hereto as **Exhibit B** (the "Greene Declaration"), which is filed concurrently herewith and is incorporated herein by this reference. In further support of the Application, the Committee respectfully states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24* (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Local Bankruptcy Rules"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2. On January 29, 2019, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On January 31, 2019 [Docket No. 207], the Court ordered the joint administration of the Debtors' chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b). The Debtors continue to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

3. On February 12, 2019, pursuant to section 1102(a)(1) of the Bankruptcy Code, the United States Trustee for the Northern District of California (the "U.S. Trustee") appointed the Committee, which currently consists of: (i) BOKF, N.A., as indenture trustee under unsecured bond indentures; (ii) The Davey Tree Expert Company, Davey Tree Surgery Company, and DRG, Inc.; (iii) Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as indenture trustee; (iv) G4S Secure Solutions (USA) Inc. and G4S Secure Integration LLC; (v) International Brotherhood of Electrical Workers, Local 1245; (vi) Mizuho Bank, Ltd. (vii) NextEra Energy, Inc.; (viii) Pension Benefit Guaranty Corporation; and (ix) Roebbelen Contracting, Inc.

4. On February 15, 2019, the Committee selected Centerview to serve as its investment banker.[1] On the same day, Centerview began providing services to the Committee. The Committee wishes to retain Centerview on the terms set forth in the engagement letter, dated as of February 15, 2019 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit C**.

### **RELIEF REQUESTED**

5. By this Application, the Committee respectfully requests entry of an order, pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, substantially in the form attached hereto as **Exhibit A**, authorizing the Committee to retain Centerview as its investment banker, in accordance with the terms and conditions of the Engagement Letter, effective as of February 15, 2019.

---

[1] The Committee also determined to retain FTI Consulting, Inc. to serve as its financial advisor. It is not uncommon in cases of this size and complexity for a creditors' committee to retain both a financial advisor and an investment banker, as the two roles are complimentary but not overlapping.

## **PROPOSED RETENTION**

**A.     Centerview's Qualifications**

6.     In light of the size and complexity of these reorganization cases, the Committee requires a qualified and experienced investment banker with Centerview's resources and capabilities. Centerview, as investment banker, will fulfill a critical service to the Committee that compliments the services provided by the Committee's other professionals. The Committee believes that retaining Centerview as their investment banker is in the best interests of the Committee and the Debtors' unsecured creditors because Centerview has extensive experience providing investment banking services to creditors' committees and other parties in interest in large bankruptcy cases.

7.     The Committee selected Centerview as its investment banker based upon, among other things: (i) the need to retain a skilled investment banking firm to provide analysis and advice with respect to the Debtors' restructuring; (ii) Centerview's extensive experience and excellent reputation in providing investment banking services in complex chapter 11 cases such as these; and (iii) Centerview's extensive knowledge of the power and energy industries, among others.

8.     As detailed in the Greene Declaration, Centerview's restructuring professionals are some of the industry's leading advisors, with extensive experience advising both financially troubled companies and creditors in a variety of complex restructurings and bankruptcies.

9.     Centerview has assisted and advised debtors, creditors' committees and other constituencies in numerous chapter 11 cases, including: In re Acterna Corp., Case No. 03-12837 (BRL) (Bankr. S.D.N.Y.); In re Amtrol Holdings, Inc., Case No. 06-11446 (KG) (Bankr. D. Del.); In re Avaya Inc., et al., Case No. 17-10089 (SMB) (Bankr. S.D.N.Y.); In re AT&T Latin Am. Corp., et al., Case No. 03-13538-BKC-RAM (Bankr. S.D. Fla.); In re Birch Telecom, Inc., et al., Case No. 05-12237 (PJW) (Bankr. D. Del.); In re Bruno's Inc., Case No. 98-212 (SLR) (Bankr.

N.D. Ala.); In re Caesars Entm't Operating Co., Inc., et al., Case No. 15-10047 (KG) (Bankr. D. Del.); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y.); In re Charter Commc'ns, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y.); In re Citation Corp., et al., Case No. 04-08130-TOM-11 (Bankr. N.D. Ala.); In re CommerceConnect Media Holdings, Inc., et al., Case No. 09-12765 (BLS) (Bankr. D. Del.); In re CTC Commc'ns Grp., Inc., Case No. 02-12873 (PJW) (Bankr. D. Del.); In re CTI Foods, LLC, et al., Case No. 19-10497 (CSS) (Bankr. D. Del.); Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y.); In re Dendreon Corp., et al., Case No. 14-12515 (LSS) (Bankr. D. Del.); In re Dura Auto. Sys., Inc., Case No. 06-11202 (KJC) (Bankr. D. Del.); In re EaglePicher Holdings, Inc., et al., Case No. 05-12601 (VA) (Bankr. S.D. Oh.); In re Edison Mission Energy, et al., Case No. 12-49219 (JPC) (Bankr. N.D. Ill.); In re Endeavour Operating Corp., et al., Case No. 14-12308 (KJC) (Bankr. D. Del.); In re Energy Future Holdings Corp., Case No. 14-10979 (CSS) (Bankr. D. Del.); In re Fairpoint Commc'n Inc., Case No. 09-16335 (BRL) (Bankr. S.D.N.Y.); In re Favorite Brands Int'l Holding Co., Case No. 99-00726 (PJW) (Bankr. D. Del.); In re FLYi, Inc., et al., Case No. 05-20011 (MFW) (Bankr. D. Del.); In re Gen. Growth Props., Inc., Case No. 09-11977 (ALG) (Bankr. S.D.N.Y.); In re GW Limited 51, Inc., f/k/a GWLS Holdings, Inc., et al., Case No. 08-12430 (PJW) (Bankr. D. Del.); In re Hilex Poly Co. LLC, et al., Case No. 08-10890 (KJC) (Bankr. D. Del.); In re Interstate Bakeries Corp., Case No. 04-45814 (JWV) (Bankr. W.D. Mo.); In re Lear Corp., Case No. 09-14326 (ALG) (Bankr. S.D.N.Y.); In re Lenox Grp., Inc., Case No. 08-14680-ALG (Bankr. S.D.N.Y.); MACH Gen LLC, et al., Case No. 14-10461 (MFW) (Bankr. D. Del.); In re Magna Entm't Corp., Case No. 09-10720 (MFW) (Bankr. D. Del.); In re MagnaChip Semiconductor Fin. Co., et al., Case No. 09-12008 (PJW) (Bankr. D. Del.); In re McLeodUSA Inc., Case No. 05-63230 (JHS) (Bankr. D. Del.); In re Mirant Corp., Case No. 03-46590 (DML) (Bankr. N.D. Tex.); In re Oakwood Homes Corp., Case No. 02-13396 (PJW) (Bankr. D. Del.); In re Old BPSUSH Inc., Case No. 16-12373 (KJC) (Bankr. D. Del.); In re Pac.

Crossing Ltd., Case No. 02-12088 (PJW) (Bankr. D. Del.); In re Patriot Coal Corp., Case No. 15-32450 (KLP) (Bankr. E.D.V.A.); In re Peabody Energy Corp., Case No. 16-42529 (BSS) (Bankr. E.D. Mo.); In re Pegasus Satellite Television, Inc., Case No. 04-20878 (JBH) (Bankr. D. Me.); In re Polaroid Corp., Case No. 01-10864 (PJW) (Bankr. D. Del.); In re PSI Net Inc., 01-13213 (REG) (Bankr. S.D.N.Y.); In re Residential Capital, LLC, et al., Case No. 12-12020 (MG) (Bankr. S.D.N.Y.); In re Simmons Bedding Co., Case No. 09-14037 (MFW) (Bankr. D. Del.); In re SLI, Inc., Case No. 02-12608 (CSS) (Bankr. D. Del.); In re Spiegel, Inc., Case No. 03-11540 (BRL) (Bankr. S.D.N.Y.); In re Stallion Oilfield Servs. Ltd., Case No. 09-13562 (BLS) (Bankr. D. Del.); In re Station Casinos, Inc., Case No. BK-09-52477 (Bankr. D. Nev.); In re Sunbeam Corp., Case No. 01-40291 (AJG) (Bankr. S.D.N.Y.); In re The Reader's Digest Ass'n, Inc., Case No. 09-23529 (RDD) (Bankr. S.D.N.Y.); In re THQ Inc., et al., Case No. 12-13398 (MFW) (Bankr. D. Del.); In re United Australia/Pacific, Inc., Case No. 02-11467 (REG) (Bankr. S.D.N.Y.); In re US Office Prods. Co., Case No. 01-00646 (JKF) (Bankr. D. Del.); In re Glob. Brokerage Inc., Case No. 17-13532 (MEW) (Bankr. S.D.N.Y.); In re Vanguard Natural Res., LLC, Case No. 17-30560 (MI) (Bankr. S.D.T.X.); In re SandRidge Energy, Inc., Case No. 16-32488 (DRJ) (Bankr. S.D.T.X.); In re Midstates Petrol. Co., Inc., Case No. 16-32237 (DRJ) (Bankr. S.D.T.X.); In re Molycorp, Inc., Case No. 15-11357 (CSS) (Bankr. D. Del.); In re Magnum Hunter Res. Corp., Case No. 15-12533 (KG) (Bankr. D. Del.); In re Atlas Res. Partners, LP, Case No. 16-12149 (SHL) (Bankr. D. Del.); In re Aspect Software, Inc., Case No. 16-10597 (MFW) (Bankr. D. Del.); In re Seventy Seven Energy Inc., Case No. 16-11410 (LSS) (Bankr. D. Del.); In re SunEdison, Inc., Case No. 16-10992(SMB) (Bankr. S.D.N.Y.); In re Toys "R" Us, Inc., Case No. 17-34665 (KLP) (Bankr. E.D.V.A.); In re Westmoreland Coal Company, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex.); and In re Checkout Holding Corp., Case No. 18-12794 (KG) (Bankr. D. Del.).

10. Centerview's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including: Anchor Danly; Autocam Corporation; Broder Bros Co.; Caesars Entertainment Corporation; Chicago Bridge & Iron Company; CDX Gas; Cloud Peak Energy, Inc.; CMS Energy; CNL Hotels & Resorts; Culligan; DS Waters of America, Inc.; Gate Gourmet, Inc.; Grupo TMM, S.A.; Huntsman Corporation; Ion Media Networks; Isola Group Ltd.; Keystone Automotive Operations, Inc.; Mashantucket Pequot Gaming Enterprise / Foxwoods; OSI Restaurant Partners, LLC; Palisades Center; PlayPower; Progressive Moulded Products; R.J. O'Brien; SI Corporation; Stolt-Nielsen, S.A.; Targus Group International; Tronox Inc.; Ultra Petroleum Corp.; and Vonage Holdings Corporation.

**B.    Centerview's Proposed Services**

11.    Subject to entry of the proposed Order, and any further orders of this Court, and consistent with the Engagement Letter,[2] the Committee proposes to retain Centerview to render investment banking services to the Committee (the "Restructuring Services"), including, among others, the following:

a.    familiarize itself with the business, operations, properties, financial condition and prospects of the Debtors;

b.    analyze the Debtors' financial projections and forecasts;

c.    advise and assist the Committee in evaluating a range of strategic alternatives and advise and assist in formulating alternative restructuring plans for the Debtors in connection with a Transaction,[3] if requested by the Committee;

[2]    The summary of the terms of the Engagement Letter in this Application, including the Fee Structure (as defined below), is qualified in its entirety by the provisions of the Engagement Letter itself.  In the event of any inconsistency between the summary provided herein and the terms set forth in the Engagement Letter, the Engagement Letter shall control.

[3]    As used in the Engagement Letter and this Application, the term "Transaction" shall mean (i) any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement, refinancing, purchase or repurchase, reinstatement and/or a material modification or amendment to the terms, conditions or covenants thereof) of substantially all of the Debtors' preferred equity, debt securities, bank or other credit facilities and other indebtedness, obligations and liabilities

7

d.     advise and assist the Committee in structuring, negotiating, implementing and otherwise responding to the financial aspects of a Transaction, in each case on behalf of the Committee and subject to the terms and conditions of the Engagement Letter;

e.     in connection with any Transaction, provide financial advice and assistance in structuring any new securities to be issued pursuant to the Transaction;

f.     attend meetings of the Committee as well as meetings with the Debtors or other third parties as appropriate in connection with the matters set forth herein;

g.     participate in negotiations among the Committee, the Debtors and the Debtors' creditors and other interested parties with respect to any Transaction;

h.     provide financial analysis of the consideration offered by the Debtors to the Committee in any Transaction;

i.     participate in hearings before the bankruptcy court with respect to the matters upon which Centerview has provided advice, including, as relevant, coordinating with the Committee and its legal advisor, Milbank LLP, with respect to testimony in connection therewith; and

j.     provide such other financial advisory services as may from time to time be specifically agreed upon in writing by Centerview and the Committee.

12.     The Restructuring Services are necessary to enable the Committee to carry out its duties to its constituency. Centerview has indicated a willingness to act on behalf of the Committee, on the terms and conditions described herein and in the Engagement Letter, and to subject itself to the jurisdiction of the Court. If the Committee requests that Centerview perform services not specifically contemplated by the Engagement Letter, Centerview and the Committee will agree, in writing, on the terms for such services and request the Court's approval thereof.

---

(including, without limitation, partnership interests, lease obligations, trade credit facilities and/or contract, tort and contingent obligations), including pursuant to a repurchase or an exchange transaction or a solicitation of consents, waivers, acceptances or authorizations or (ii) any transaction or series of related transactions involving an acquisition, merger, consolidation, or any other business combination pursuant to which a majority of the business, equity or assets of the Debtors are, directly or indirectly, sold, purchased or combined with another entity or company.

Additionally, Centerview has represented to the Committee that it will endeavor to coordinate with other professionals retained by the Committee to minimize duplication or overlap of work.

**C.      Proposed Compensation**

13.     The terms and conditions of Centerview's proposed retention are detailed in the Engagement Letter, which is the product of arm's-length negotiations between Centerview and the Committee.  As such, the Engagement Letter reflects the parties' mutual agreement as to the terms on which Centerview has agreed to provide the Committee with its services that are necessary to enable the Committee to comply with its duties to the Debtors' unsecured creditors.

14.     Subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, the United States Trustee Fee Guidelines (the "U.S. Trustee Guidelines"), *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (the "Interim Compensation Order") [Docket No. 701], and any other applicable orders and procedures of the Court, Centerview will be compensated in accordance with the terms and conditions of the Engagement Letter, subject to section 328(a) and not section 330 of the Bankruptcy Code.  The Engagement Letter provides for the following compensation structure (the "Fee Structure"):

a.      **Monthly Advisory Fee.**  A monthly financial advisory fee of $250,000 (the "Monthly Advisory Fee"), the first of which shall be earned upon execution of the Engagement Letter and shall be paid by the Debtors upon Bankruptcy Court approval of Centerview's retention and employment.  Each subsequent Monthly Advisory Fee shall be due on each monthly anniversary of execution of the Engagement Letter during the term of the engagement.  Fifty percent (50%) of all Monthly Advisory Fees earned after the first twelve (12) months of the term this engagement will be credited (but only once) against any Transaction Fee (as defined below) payable to Centerview pursuant to subparagraph 2(b) hereof.

b.      **Transaction Fee.**  If any Transaction is consummated, Centerview shall be entitled to receive a transaction fee (a "Transaction Fee"), contingent upon the consummation of such Transaction and payable in cash by the Debtors at the closing thereof, equal to $12,000,000.

Case: 19-30088    Doc# 1213    Filed: 04/03/19    Entered: 04/03/19 17:59:58    Page 9 of 61

c.   **Additional Fee.**  If at any time during the term of this engagement, the Debtors consummate a Transaction, a discretionary fee (at the sole discretion of the Committee and to be defined in a separate agreement) may be paid to Centerview (an "Additional Fee"), provided, however, that such fee shall be subject to Court approval.

d.   **Reimbursement of Expenses.**  In addition to the fees payable by the Debtors to Centerview, the Debtors shall, whether or not any Transaction shall be proposed or consummated, reimburse Centerview on a periodic basis for its reasonable documented travel and other reasonable documented out-of-pocket expenses (including all fees, disbursements and other charges of one legal counsel to be retained by Centerview, and of other consultants and advisors retained by Centerview with the Company's and the Committee's consent), incurred during the term of the engagement in connection with, or arising out of Centerview's activities under or contemplated by the engagement.  Such reimbursements shall be made promptly upon submission by Centerview of statements for such expenses.

15.   Except in the event Centerview terminates the Engagement Letter or Centerview is terminated by the Committee for cause, Centerview shall be entitled to the Transaction Fee in the event that a Transaction (as defined in the Engagement Letter) is consummated at any time prior to the date that is 12 months following the termination of the Engagement Letter.

16.   The Committee understands that it is not the general practice of investment banking and financial services firms to keep detailed records similar to those customarily kept by attorneys. Notwithstanding the foregoing, Centerview intends to file interim and final fee applications for the allowance of compensation for services rendered and the reimbursement of expenses incurred in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, the U.S. Trustee Guidelines, the Interim Compensation Order, and any other applicable orders and procedures of the Court.  Such applications will include time records setting forth, in summary form, a description of the services rendered by each Centerview professional and the amount of time spent on each date by each such individual in rendering services to the Committee.

17.   Because Centerview does not ordinarily maintain contemporaneous time records in one-tenth hour (.1) increments or provide or conform to a schedule of hourly rates for its professionals, the Committee respectfully requests that (i) Centerview be allowed to keep its time

records in one-half (.5) hour increments, (ii) Centerview's restructuring professionals not be required to keep time records on a "project category" basis, (iii) Centerview's non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and (iv) Centerview not be required to provide or conform to any schedule of hourly rates. To the extent that Centerview's time-keeping process as described herein deviates from what would otherwise be required, the Committee respectfully requests that this Court allow such deviations and waive any requirements to the contrary.

18. The Committee understands that Centerview will maintain records in support of its actual, necessary costs and expenses incurred in connection with rendering services to the Committee in compliance with the Local Bankruptcy Rules, the Interim Compensation Order, or other applicable orders and procedures of this Court. In addition, Centerview has employed and may in the future employ its own legal counsel in connection with Centerview's retention, compensation and other matters related to its employment by the Committee (e.g., to provide counsel in connection with responding to any discovery to which Centerview may be subject) and Centerview will seek reimbursement for the costs incurred in connection with such retention from the Debtors. Centerview does not need to obtain Court approval of any such retention, but Centerview will submit invoices received from its counsel as part of Centerview's fee applications filed with the Court, redacted in order to protect attorney-client privileged material.

19. Amounts sought in Centerview's applications for compensation and expenses will be paid by the Debtors upon approval by this Court or as otherwise provided in the Interim Compensation Order.

20. The Committee believes the Fee Structure is consistent with, and typical of, compensation arrangements entered into by Centerview and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy.

The Committee also believes that the Fee Structure reflects a balance between a fixed monthly fee and a contingency amount tied to the consummation of transactions contemplated in the Engagement Letter. In analyzing the reasonableness of the Fee Structure, the Committee compared Centerview's proposal to comparable precedents. Based on such comparison, followed by arm's-length negotiations, the Committee believes that the Fee Structure is in fact reasonable, market-based, and designed to compensate Centerview fairly for its work.

21. Centerview's strategic, financial, and restructuring expertise were important factors to the Committee in determining the Fee Structure. The Committee believes that the ultimate benefits of Centerview's services cannot be measured by reference to the number of hours to be expended by Centerview's professionals in the performance of such services. The Committee and Centerview agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort would be required of Centerview and in light of the fact that: (i) such commitment could foreclose other opportunities for Centerview; and (ii) the actual time and commitment required of Centerview and its professionals to perform the Restructuring Services may vary substantially from week to week and month to month, creating "peak load" issues for Centerview.

**D.     Indemnification Agreement**

22. As part of the overall compensation payable to Centerview under the terms of the Engagement Letter, Centerview is entitled to certain indemnification, contribution, and reimbursement obligations set forth in <u>Annex A</u> to the Engagement Letter (the "<u>Indemnification Agreement</u>"). The Indemnification Agreement provides that the Debtors will indemnify and hold harmless Centerview and each of its affiliates, their respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns (collectively, the "<u>Indemnified Persons</u>" and each individually, an "<u>Indemnified Person</u>") from

and against any and all losses, claims, damages, demands and liabilities, joint or several, or actions or proceedings in respect thereof, brought by or against any person (collectively, "Losses"), which are related to or arise out of the Engagement or any matter or transaction contemplated thereby. Notwithstanding the foregoing, the Debtors shall have no obligation to indemnify and hold harmless or reimburse any Indemnified Person under this letter agreement in respect of any Losses to the extent that such Losses are finally judicially determined to have resulted directly from the willful misconduct, gross negligence, or bad faith of such Indemnified Person.

23.     The Indemnification Agreement was fully negotiated by the Committee and Centerview at arm's-length and in good faith. The Committee believes that the terms of the Indemnification Agreement are appropriate and reasonable for investment banking engagements both out of court and in chapter 11 cases, and contain customary qualifications and limitations.

**E.     Centerview's Disinterestedness**

24.     The Committee understands that Centerview has performed a review with respect to all persons identified on the Debtors' list of potential parties in interest (the "Debtors' Interested Party List"), which is summarized on Schedule 1 (the "Retention Checklist") to the *Declaration of Stephen Karotkin in Support of Application of Debtors Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for the Debtors Effective as of the Petition Date* [Docket No. 865]. According to Centerview, except as disclosed herein or in the Greene Declaration, Centerview: (i) has no connections to the Debtors, their creditors, or other parties in interest, and (ii) during the term of its engagement will not represent any other entity having an adverse interest in connection with the Debtors' cases. To the best of the Committee's knowledge, Centerview is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

25.     Given the large number of parties in interest in these chapter 11 cases, and despite the efforts to identify and disclose Centerview's relationships with such parties in interest,

Centerview is unable to state with certainty that every client relationship or other connection has been disclosed in the Greene Declaration. To the extent that any new material facts or relationships bearing on the matters described herein during the period of Centerview's retention are discovered or arise, Centerview will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

26. The Committee has been informed that Centerview will not share any compensation received in connection with services rendered in accordance with this Application with any other person, other than principals and employees of Centerview.

**F.    Effective Date of Retention**

27. The Committee requests that Centerview's retention be approved effective as of February 15, 2019, as that was the date that Centerview was selected as the Committee's investment banker and began substantive work on the Committee's behalf. The Committee believes retention as of that date is appropriate in light of the nature of these chapter 11 cases and the Committee's immediate and urgent need for the provision of Centerview's services upon its selection as investment banker.

**G.    No Duplication of Services**

28. The Committee does not believe that the services to be rendered by Centerview will be duplicative of the services performed by any other professionals. In any case, Centerview has committed to use its reasonable best efforts to coordinate with the other professionals retained by the Committee to minimize any duplication of services.

**<u>BASIS FOR RELIEF</u>**

29. The Committee seeks approval to retain and employ Centerview, including the Fee Structure and Indemnification Agreement, pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code. Section 1103(a) of the Bankruptcy Code provides, in relevant part, that a

committee may "with the court's approval . . . select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to [] perform services for such committee." Id. § 1103(b). Section 328(a) of the Bankruptcy Code, in turn, provides, in relevant part, that a committee "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

30.     Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval for compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (footnote omitted).

31.     The Committee submits that approval of Centerview's retention in accordance with the terms and conditions of the Engagement Letter is warranted.  As discussed above and in the Greene Declaration, Centerview satisfies the standard set forth in section 1103(b) of the Bankruptcy Code.

32.     Additionally, in view of Centerview's commitment to the variable level of time and effort necessary to address the numerous issues it will be dealing with as they arise, and the market prices for Centerview's services for engagements of this nature, the Committee believes that the

terms and conditions of the Engagement Letter, including the Indemnification Agreement, are fair, reasonable, and market-based.  See, e.g., United Artists Theatre Co. v. Walton, 315 F.3d 217, 230 (3d Cir. 2003); In re Aloha Airgroup, Inc., 2005 WL 1156092, at *2 (Bankr. D. Haw. Feb. 24, 2005); In re Joan & David Halpern Inc., 248 B.R. 43, 47 (Bankr. S.D.N.Y. 2000), aff'd sub nom. In re Joan & David Helpern, Inc., 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000).

## NOTICE

33.     Notice of this Application will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Debtors; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice is required.

34.     No previous request for the relief sought herein has been made by the Committee to this or any other Court.

[*Remainder of Page Intentionally Left Blank*]

1

WHEREFORE, the Committee respectfully requests that the Court enter an order,

2

substantially in the form attached hereto as **Exhibit A**: (i) granting the Application and authorizing

3

and approving the Committee's retention and employment of Centerview as its investment banker

4

effective as of February 15, 2019, pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code

5

and on the terms set forth in the Engagement Letter; and (ii) granting such other and further relief

6

as the Court may deem proper.

7

8

9

10

Dated:  April 3, 2019                    Respectfully submitted,

11

12                                       OFFICIAL COMMITTEE OF UNSECURED
                                         CREDITORS OF PG&E CORPORATION
13                                       AND PACIFIC GAS AND ELECTRIC
                                         COMPANY
14

15

16                                       By:
                                         Name: Cynthia Wong
17                                               Corporate Finance & Restructuring
                                               Pension Benefit Guaranty Corporation
18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **EXHIBIT A**

**[Proposed] Order**

1   Dennis F. Dunne (admitted *pro hac vice*)
    Samuel A. Khalil (admitted *pro hac vice*)
2   MILBANK LLP
    55 Hudson Yards
3   New York, New York 10001-2163
    Telephone: (212) 530-5000
4   Facsimile: (212) 530-5219

5   *and*

6   Paul S. Aronzon (SBN 88781)
    Gregory A. Bray (SBN 115367)
7   Thomas R. Kreller (SBN 161922)
    MILBANK LLP
8   2029 Century Park East, 33rd Floor
    Los Angeles, CA 90067
9   Telephone:  (424) 386-4000
    Facsimile:  (213) 629-5063

10
    *Proposed Counsel for the Official Committee*
11  *of Unsecured Creditors*

12

13                  **UNITED STATES BANKRUPTCY COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
14                      **SAN FRANCISCO DIVISION**

15

16  **In re:**                              Case No. 19-30088 (DM)

17  **PG&E CORPORATION**                     Chapter 11

18         **-and-**                          (Lead Case)

19  **PACIFIC GAS AND ELECTRIC**             (Jointly Administered)
    **COMPANY,**
20
                          **Debtors.**
21

22                                           **[PROPOSED] ORDER AUTHORIZING**
        Affects PG&E Corporation             **THE OFFICIAL COMMITTEE OF**
23      Affects Pacific Gas and Electric Company  **UNSECURED CREDITORS TO EMPLOY**
                                             **AND RETAIN CENTERVIEW PARTNERS**
24   ■  Affects both Debtors                 **LP AS ITS INVESTMENT BANKER,**
                                             **EFFECTIVE AS OF FEBRUARY 15, 2019**
25   *All papers shall be filed in the Lead Case.*
     *No. 19-30088 (DM)*                     Date: April 24, 2019
26                                           Time: 9:30 AM Pacific Time
                                             Place:  United States Bankruptcy Court
27                                           Courtroom 17, 16th Floor
                                             San Francisco, CA 94102
28

Upon the application (the "Application")[4] of the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors in possession (the "Debtors") for entry of an order (this "Order") authorizing the Committee to employ and retain Centerview Partners LLC ("Centerview") as investment banker to the Committee, effective as of February 15, 2019; and the Court having reviewed the Application and the accompanying Declaration of Samuel M. Greene (the "Greene Declaration"); and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and no other or further notice being required; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and the Court having found that (i) good and sufficient cause exists for granting the Application, (ii) Centerview does not represent any entity having an adverse interest in connection with these chapter 11 cases, and (iii) Centerview is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and any objections to the relief requested by the Application having been overruled, resolved, or withdrawn; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Application is granted as set forth herein.

2.     The Committee is authorized to employ and retain Centerview as its investment banker, effective as of February 15, 2019, on the terms set forth in the Engagement Letter.

---

[4]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

3.	Centerview shall use its reasonable best efforts to avoid any duplication of the services to be provided by any of the Committee's other retained professionals.

4.	Except to the extent set forth herein, the Engagement Letter, together with all attachments and schedules thereto, including, without limitation, the Fee Structure and the Indemnification Agreement, is approved pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code.  Except as otherwise provided herein, all compensation, indemnification, reimbursement, and contribution obligations owed to Centerview and any Indemnified Person (as defined in the Engagement Letter) under the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review, including, but not limited to, that set forth in section 330 of the Bankruptcy Code, except that the U.S. Trustee shall have review for reasonableness pursuant to section 330 of the Bankruptcy Code.

5.	Centerview shall file monthly, interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders or procedures of this Court, and the Fee Guidelines; provided that Centerview shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code, and Centerview's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code, except that the U.S. Trustee shall have review for reasonableness pursuant to section 330 of the Bankruptcy Code.  Subject to compliance with the foregoing, and subject to approval by the Court, the Debtors shall pay Centerview's fees and reimburse Centerview for its reasonable and necessary costs and expenses as provided in the Engagement Letter.

6. Notwithstanding anything to the contrary herein, the requirements of the Interim Compensation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other orders or procedures of this Court, to the extent applicable, are hereby modified such that Centerview's professionals shall only be required to maintain summary records in one-half (.5) hour increments; *provided further* that (a) Centerview shall not be required to obtain Court approval of any counsel it employs in connection with these chapter 11 cases; however, if Centerview seeks reimbursement for attorney's fees pursuant to the terms of the Engagement Letter or the Indemnification Agreement (except for fees incurred in defense of fee applications), the invoices and supporting time records from such attorneys shall be included in Centerview's own application and such invoices and time records shall be subject to (i) the guidelines promulgated by the U.S. Trustee for compensation and reimbursement of expenses and (ii) approval by the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code. Notwithstanding the foregoing, Centerview shall only be reimbursed for any legal fees incurred in connection with these chapter 11 cases to the extent permitted under applicable law. For the avoidance of doubt, under no circumstances shall any of the compensation or expense reimbursement obligations approved by the Court be an obligation of, or paid by, the Committee or any of its members.

7. Subject to the Court's approval, Centerview shall be compensated in accordance with the terms of the Engagement Letter and in particular, the Fee Structure. Notwithstanding anything to the contrary herein, the fees and expenses payable to Centerview pursuant to the Engagement Letter shall be subject to review pursuant to the standard of review set forth in section 330 of the Bankruptcy Code only by the U.S. Trustee. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Centerview's compensation and expense

reimbursements under section 330 of the Bankruptcy Code. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Centerview's compensation.

8. The indemnification and related provisions set forth in the Engagement Letter and the Indemnification Agreement are approved, subject during the pendency of these chapter 11 cases to the following:

a. each Indemnified Person (as that term is defined in the Indemnification Agreement) shall be entitled to indemnification, contribution or reimbursement pursuant to the Indemnification Agreement only in respect of Losses (as defined in the Indemnification Agreement) in connection with any matters in any way relating to or referred to in the Engagement Letter (as may be modified by this Court pursuant to this Order or any further order);

b. subject to the provisions of subparagraphs (c) and (d) of this paragraph 8, the Debtors are authorized to indemnify, and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, the Indemnified Persons (as defined in the Indemnification Agreement) in accordance with the Indemnification Agreement for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter;

c. notwithstanding subparagraph (b) of this paragraph 8 or any provisions of the Engagement Letter or Indemnification Agreement to the contrary, the Debtors shall have no obligation to indemnify an Indemnified Person or provide contribution or reimbursement to an Indemnified Person (i) for any claim or expense that is judicially determined (the determination having become final) to have resulted directly from the willful misconduct, gross negligence, or bad faith of such Indemnified Person, (ii) for a contractual dispute alleging the breach of Centerview's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible, or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (d) *infra*, to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter and Indemnification Agreement, as modified by this Order;

d. if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Debtors' cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Debtors' chapter 11 cases, Centerview believes that it is entitled to the payment of any

amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Indemnification Agreement, as modified by this Order, including without limitation the advancement of defense costs, Centerview must file an application therefore in this Court, and the Debtors may not pay any such amounts to Centerview before the entry of an order by this Court approving such payment. This subparagraph (d) is intended only to specify the period during which the Court shall have jurisdiction over any request by Centerview for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify; and

e.    if, during the pendency of the Debtors' Chapter 11 Cases, the indemnification is held unenforceable by reason of the exclusions set forth in subparagraph c. above (i.e., bad faith, gross negligence, willful misconduct, or for a contractual dispute in which the Debtors allege the breach of Centerview's contractual obligations if the Court determines that indemnification would not be permissible) and Centerview makes a claim for the payment of any amounts by the Debtors on account of the Debtor's contribution obligations, then the proviso set forth in the first sentence in paragraph 5 of the Indemnification Agreement attached to the Engagement Letter shall not apply.

9.    The Committee and Centerview are authorized to take all actions each of them deems necessary and appropriate to effectuate the relief granted in this Order.

10.    Notwithstanding anything to the contrary in the Application or the Engagement Letter, Centerview shall have whatever duties, fiduciary or otherwise, that are imposed upon it by applicable law.

11.    This Order shall be immediately effective and enforceable upon its entry.

12.    In the event of any inconsistency between the Engagement Letter, the Application, and this Order, this Order shall govern.

13.    Notwithstanding any term in the Engagement Letter to the contrary, this Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

** END OF ORDER **

| | |
|---|---|
| 1 | **EXHIBIT B** |
| 2 | **Declaration of Samuel M. Greene** |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1  Dennis F. Dunne (admitted *pro hac vice*)
   Samuel A. Khalil (admitted *pro hac vice*)
2  MILBANK LLP
   55 Hudson Yards
3  New York, New York 10001-2163
   Telephone: (212) 530-5000
4  Facsimile: (212) 530-5219

5  *and*

6  Paul S. Aronzon (SBN 88781)
   Gregory A. Bray (SBN 115367)
7  Thomas R. Kreller (SBN 161922)
   MILBANK LLP
8  2029 Century Park East, 33rd Floor
   Los Angeles, CA 90067
9  Telephone:  (424) 386-4000
   Facsimile:  (213) 629-5063

10
   *Proposed Counsel for the Official Committee*
11 *of Unsecured Creditors*

12
                    **UNITED STATES BANKRUPTCY COURT**
13                  **NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN FRANCISCO DIVISION**
14

15
   **In re:**                              Case No. 19-30088 (DM)
16
   **PG&E CORPORATION**                     Chapter 11
17
        **-and-**                           (Lead Case)
18
   **PACIFIC GAS AND ELECTRIC**             (Jointly Administered)
19 **COMPANY,**
20
                    **Debtors.**
21 _____   **DECLARATION OF SAMUEL M. GREENE IN**
                                      **SUPPORT OF APPLICATION OF THE**
22     Affects PG&E Corporation       **OFFICIAL COMMITTEE OF UNSECURED**
       Affects Pacific Gas and Electric Company   **CREDITORS FOR AUTHORITY TO RETAIN**
23 ■   Affects both Debtors           **AND EMPLOY CENTERVIEW PARTNERS**
                                      **LLC AS INVESTMENT BANKER,**
24 *\* All papers shall be filed in the Lead Case.*   **EFFECTIVE AS OF FEBRUARY 15, 2019**
   *No. 19-30088 (DM)*
25                                    Date: April 24, 2019
                                      Time: 9:30 AM Pacific Time
26                                    Place: United States Bankruptcy Court
                                      Courtroom 17, 16th Floor
27                                    San Francisco, CA 94102

28

I, Samuel M. Greene, being duly sworn, state the following under the penalty of perjury:

1.      I am a Partner and the Co-Head of the Debt Advisory and Restructuring Practice of Centerview Partners LLC ("Centerview"), which has its principal office at 31 West 52nd Street, New York, New York, 10019.  I am duly authorized to make this declaration (the "Declaration") on behalf of Centerview.  Unless otherwise indicated herein, the statements in this Declaration are based on my personal knowledge, my discussions with other employees of Centerview, my discussions with other advisors to the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases"), my review of relevant documents and/or my opinion based upon my experience.

2.      This Declaration is being submitted in connection with the proposed retention of Centerview as investment banker to the Committee in these Chapter 11 Cases to perform services as set forth in the application seeking to retain Centerview (the "Application").  The Committee's retention of Centerview is governed by an engagement letter, dated as of February 15, 2019 (the "Engagement Letter"), a copy of which is attached to the Application as Exhibit C.[5]

3.      I am familiar with the matters set forth herein and, if called as a witness, I would testify thereto.

**Centerview's Qualifications**

4.      I believe that Centerview and the professionals it employs are uniquely qualified to advise the Committee in the matters for which Centerview is proposed to be employed.

5.      Established in 2006, Centerview is an independent investment banking firm providing financial advisory services, including mergers and acquisitions and restructuring advice, across a broad range of industries. Centerview serves a diverse set of clients around the world from

---

[5]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application or the Engagement Letter, as applicable.

its offices in New York, Los Angeles, San Francisco, London and Palo Alto. Centerview's Debt Advisory and Restructuring Group, which was founded in 2011, has expertise in designing and managing complex restructuring processes involving a wide range of stakeholders, and has a demonstrated track record of designing, negotiating and implementing amendments, exchange offers, financings, distressed merger and acquisition transactions and out-of-court and in-court restructurings. Centerview and its principals have advised debtors, lenders, committees and acquirers in many complex financial reorganizations and Centerview's professionals have been involved in transactions representing over $200 billion in restructured debt.

6. Centerview's professionals, including while employed at other firms, have provided, or are currently providing, financial advisory, investment banking and other services in connection with the in-court restructuring of numerous companies in this jurisdiction and others, including: In re Acterna Corp., Case No. 03-12837 (BRL) (Bankr. S.D.N.Y.); In re Amtrol Holdings, Inc., Case No. 06-11446 (KG) (Bankr. D. Del.); In re Avaya Inc., et al., Case No. 17-10089 (SMB) (Bankr. S.D.N.Y.); In re AT&T Latin Am. Corp., et al., Case No. 03-13538-BKC-RAM (Bankr. S.D. Fla.); In re Birch Telecom, Inc., et al., Case No. 05-12237 (PJW) (Bankr. D. Del.); In re Bruno's Inc., Case No. 98-212 (SLR) (Bankr. N.D. Ala.); In re Caesars Entm't Operating Co., Inc., et al., Case No. 15-10047 (KG) (Bankr. D. Del.); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y.); In re Charter Commc'ns, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y.); In re Citation Corp., et al., Case No. 04-08130-TOM-11 (Bankr. N.D. Ala.); In re CommerceConnect Media Holdings, Inc., et al., Case No. 09-12765 (BLS) (Bankr. D. Del.); In re CTC Commc'ns Grp., Inc., Case No. 02-12873 (PJW) (Bankr. D. Del.); In re CTI Foods, LLC, et al., Case No. 19-10497 (CSS) (Bankr. D. Del.); Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y.); In re Dendreon Corp., et al., Case No. 14-12515 (LSS) (Bankr. D. Del.); In re Dura Auto. Sys., Inc., Case No. 06-11202 (KJC) (Bankr. D. Del.); In re EaglePicher Holdings,

Inc., et al., Case No. 05-12601 (VA) (Bankr. S.D. Oh.); In re Edison Mission Energy, et al., Case No. 12-49219 (JPC) (Bankr. N.D. Ill.); In re Endeavour Operating Corp., et al., Case No. 14-12308 (KJC) (Bankr. D. Del.); In re Energy Future Holdings Corp., Case No. 14-10979 (CSS) (Bankr. D. Del.); In re Fairpoint Commc'n Inc., Case No. 09-16335 (BRL) (Bankr. S.D.N.Y.); In re Favorite Brands Int'l Holding Co., Case No. 99-00726 (PJW) (Bankr. D. Del.); In re FLYi, Inc., et al., Case No. 05-20011 (MFW) (Bankr. D. Del.); In re Gen. Growth Props., Inc., Case No. 09-11977 (ALG) (Bankr. S.D.N.Y.); In re GW Limited 51, Inc., f/k/a GWLS Holdings, Inc., et al., Case No. 08-12430 (PJW) (Bankr. D. Del.); In re Hilex Poly Co. LLC, et al., Case No. 08-10890 (KJC) (Bankr. D. Del.); In re Interstate Bakeries Corp., Case No. 04-45814 (JWV) (Bankr. W.D. Mo.); In re Lear Corp., Case No. 09-14326 (ALG) (Bankr. S.D.N.Y.); In re Lenox Grp., Inc., Case No. 08-14680-ALG (Bankr. S.D.N.Y.); MACH Gen LLC, et al., Case No. 14-10461 (MFW) (Bankr. D. Del.); In re Magna Entm't Corp., Case No. 09-10720 (MFW) (Bankr. D. Del.); In re MagnaChip Semiconductor Fin. Co., et al., Case No. 09-12008 (PJW) (Bankr. D. Del.); In re McLeodUSA Inc., Case No. 05-63230 (JHS) (Bankr. D. Del.); In re Mirant Corp., Case No. 03-46590 (DML) (Bankr. N.D. Tex.); In re Oakwood Homes Corp., Case No. 02-13396 (PJW) (Bankr. D. Del.); In re Old BPSUSH Inc., Case No. 16-12373 (KJC) (Bankr. D. Del.); In re Pac. Crossing Ltd., Case No. 02-12088 (PJW) (Bankr. D. Del.); In re Patriot Coal Corp., Case No. 15-32450 (KLP) (Bankr. E.D.V.A.); In re Peabody Energy Corp., Case No. 16-42529 (BSS) (Bankr. E.D. Mo.); In re Pegasus Satellite Television, Inc., Case No. 04-20878 (JBH) (Bankr. D. Me.); In re Polaroid Corp., Case No. 01-10864 (PJW) (Bankr. D. Del.); In re PSI Net Inc., 01-13213 (REG) (Bankr. S.D.N.Y.); In re Residential Capital, LLC, et al., Case No. 12-12020 (MG) (Bankr. S.D.N.Y.); In re Simmons Bedding Co., Case No. 09-14037 (MFW) (Bankr. D. Del.); In re SLI, Inc., Case No. 02-12608 (CSS) (Bankr. D. Del.); In re Spiegel, Inc., Case No. 03-11540 (BRL) (Bankr. S.D.N.Y.); In re Stallion Oilfield Servs. Ltd., Case No. 09-13562 (BLS) (Bankr. D. Del.);

In re Station Casinos, Inc., Case No. BK-09-52477 (Bankr. D. Nev.); In re Sunbeam Corp., Case No. 01-40291 (AJG) (Bankr. S.D.N.Y.); In re The Reader's Digest Ass'n, Inc., Case No. 09-23529 (RDD) (Bankr. S.D.N.Y.); In re THQ Inc., et al., Case No. 12-13398 (MFW) (Bankr. D. Del.); In re United Australia/Pacific, Inc., Case No. 02-11467 (REG) (Bankr. S.D.N.Y.); In re US Office Prods. Co., Case No. 01-00646 (JKF) (Bankr. D. Del.); In re Glob. Brokerage Inc., Case No. 17-13532 (MEW) (Bankr. S.D.N.Y.); In re Vanguard Natural Res., LLC, Case No. 17-30560 (MI) (Bankr. S.D.T.X.); In re SandRidge Energy, Inc., Case No. 16-32488 (DRJ) (Bankr. S.D.T.X.); In re Midstates Petrol. Co., Inc., Case No. 16-32237 (DRJ) (Bankr. S.D.T.X.); In re Molycorp, Inc., Case No. 15-11357 (CSS) (Bankr. D. Del.); In re Magnum Hunter Res. Corp., Case No. 15-12533 (KG) (Bankr. D. Del.); In re Atlas Res. Partners, LP, Case No. 16-12149 (SHL) (Bankr. D. Del.); In re Aspect Software, Inc., Case No. 16-10597 (MFW) (Bankr. D. Del.); In re Seventy Seven Energy Inc., Case No. 16-11410 (LSS) (Bankr. D. Del.); In re SunEdison, Inc., Case No. 16-10992(SMB) (Bankr. S.D.N.Y.); In re Toys "R" Us, Inc., Case No. 17-34665 (KLP) (Bankr. E.D.V.A.); In re Westmoreland Coal Company, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex.); and In re Checkout Holding Corp., Case No. 18-12794 (KG) (Bankr. D. Del.).

7.      Centerview's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including: Anchor Danly; Autocam Corporation; Broder Bros Co.; Caesars Entertainment Corporation; Chicago Bridge & Iron Company; CDX Gas; Cloud Peak Energy, Inc.; CMS Energy; CNL Hotels & Resorts; Culligan; DS Waters of America, Inc.; Gate Gourmet, Inc.; Grupo TMM, S.A.; Huntsman Corporation; Ion Media Networks; Isola Group Ltd.; Keystone Automotive Operations, Inc.; Mashantucket Pequot Gaming Enterprise / Foxwoods; OSI Restaurant Partners, LLC; Palisades Center; PlayPower; Progressive Moulded Products; R.J. O'Brien; SI Corporation; Stolt-Nielsen, S.A.; Targus Group International; Tronox Inc.; Ultra Petroleum Corp.; and Vonage Holdings Corporation.

## Scope of Centerview's Proposed Services

8.    The terms and conditions of the Engagement Letter were the result of discussions and negotiations between Centerview and the Committee.  Subject to further order of the Court, and consistent with the Engagement Letter, the Committee proposes to retain Centerview to continue rendering investment banking services as outlined in the Engagement Letter and this Application.  Centerview will provide the following services ("Restructuring Services"), among others, to the Committee in connection with these Chapter 11 Cases:

(a)    familiarize itself with the business, operations, properties, financial condition and prospects of the Debtors;

(b)    analyze the Debtors' financial projections and forecasts;

(c)    advise and assist the Committee in evaluating a range of strategic alternatives and advise and assist in formulating alternative restructuring plans for the Debtors in connection with a Transaction, if requested by the Committee;

(d)    advise and assist the Committee in structuring, negotiating, implementing and otherwise responding to the financial aspects of a Transaction, in each case on behalf of the Committee and subject to the terms and conditions of this Agreement;

(e)    in connection with any Transaction, provide financial advice and assistance in structuring any new securities to be issued pursuant to the Transaction;

(f)    attend meetings of the Committee as well as meetings with the Debtors or other third parties as appropriate in connection with the matters set forth herein;

(g)    participate in negotiations among the Committee, the Debtors and their creditors and other interested parties with respect to any Transaction;

(h)    provide financial analysis of the consideration offered by the Debtors to the Committee in any Transaction;

(i)    participate in hearings before the bankruptcy court with respect to the matters upon which Centerview has provided advice, including, as relevant, coordinating with the Committee and its legal advisor, Milbank LLP, with respect to testimony in connection therewith; and

(j)    provide such other financial advisory services as may from time to time be specifically agreed upon in writing by Centerview and the Committee.

9.    If the committee requests that Centerview perform services not specifically contemplated by the Engagement Letter, Centerview and the Committee will agree, in writing, on the terms for such services and request the Court's approval thereof.

## **Professional Compensation and Expense Reimbursement**

10.    Centerview's decision to advise and assist the Committee in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

11.    As set forth more fully in the Engagement Letter, and subject thereto, Centerview will be compensated as follows (the "Fee Structure"):

a.  **Monthly Advisory Fee.**  A monthly financial advisory fee of $250,000 (the "Monthly Advisory Fee"), the first of which shall be earned upon execution of the Engagement Letter and shall be paid by the Debtors upon Bankruptcy Court approval of Centerview's retention and employment.  Each subsequent Monthly Advisory Fee shall be due on each monthly anniversary of execution of the Engagement Letter during the term of the engagement.  Fifty percent (50%) of all Monthly Advisory Fees earned after the first twelve (12) months of the term this engagement will be credited (but only once) against any Transaction Fee (as defined below) payable to Centerview pursuant to subparagraph 2(b) hereof.

b.  **Transaction Fee.**  If any Transaction (as defined in the Engagement Letter) is consummated, Centerview shall be entitled to receive a transaction fee (a "Transaction Fee"), contingent upon the consummation of such Transaction and payable in cash by the Debtors at the closing thereof, equal to $12,000,000.

c.  **Additional Fee.**  If at any time during the term of this engagement, the Debtors consummate a Transaction, a discretionary fee (at the sole discretion of the Committee and to be defined in a separate agreement) may be paid to Centerview (an "Additional Fee").

d.  **Reimbursement of Expenses.**  In addition to the fees payable by the Debtors to Centerview, the Debtors shall, whether or not any Transaction shall be proposed or consummated, reimburse Centerview on a periodic basis for its reasonable documented travel and other reasonable documented out-of-pocket expenses (including all fees, disbursements and other charges of one legal counsel to be retained by Centerview, and of other consultants and advisors retained by Centerview with the Debtors' consent), incurred during the term of the engagement in connection with, or arising out of Centerview's activities under or contemplated by the engagement.  Such reimbursements shall be made promptly upon submission by Centerview of statements for such expenses.

12.     Except in the event Centerview terminates the Engagement Letter or Centerview is terminated by the Committee for cause, Centerview shall be entitled to the Transaction Fee in the event that a Transaction (as defined in the Engagement Letter) is consummated at any time prior to the date that is 12 months following the termination of the Engagement Letter.

13.     In addition to any fees payable to Centerview, the Debtors will reimburse Centerview for all of its actual, reasonable, and documented out-of-pocket expenses as they are incurred in entering into and performing services under the Engagement Letter, including the costs of Centerview's legal counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

14.     Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order approving the Application and consistent with the proposed compensation set forth in the Engagement Letter.

15.     Centerview will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these Chapter 11 Cases. However, because Centerview does not ordinarily maintain contemporaneous time records in one-tenth hour (.1) increments or provide or conform to a schedule of hourly rates for its professionals, the Committee requests that (i) it be allowed to keep its time records in one-half (.5) hour increments, (ii) Centerview's restructuring professionals not be required to keep time records on a "project category" basis, (iii) Centerview's non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and

(iv) Centerview not be required to provide or conform to any schedule of hourly rates. To the extent that Centerview's time-keeping process as described herein deviates from what would otherwise be required, the Committee respectfully requests that this Court allow such deviations and waive any requirements to the contrary. Centerview will present such records to the Court in its fee application(s). To the extent that Centerview would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Committee respectfully requests that this Court waive such requirements.

## Indemnification

16. As part of the overall compensation payable to Centerview under the terms of the Engagement Letter, Centerview is entitled to certain indemnification, contribution, and reimbursement obligations set forth Annex A to the Engagement Letter (the "Indemnification Agreement"). The Indemnification Agreement provides that the Debtors will indemnify and hold harmless Centerview and each of its affiliates, their respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Indemnified Persons" and each individually, an "Indemnified Person") from and against any and all losses, claims, damages, demands and liabilities, joint or several, or actions or proceedings in respect thereof, brought by or against any person (collectively, "Losses"), which are related to or arise out of the Engagement or any matter or transaction contemplated thereby. Notwithstanding the foregoing, the Debtors shall have no obligation to indemnify and hold harmless or reimburse any Indemnified Person under this letter agreement in respect of any Losses to the extent that such Losses are finally judicially determined to have resulted directly from the willful misconduct, gross negligence, or bad faith of such Indemnified Person.

17. I believe that the indemnification and contribution provisions in the Engagement Letter are appropriate and reasonable for investment banking engagements both out of court and

in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions. Centerview negotiated the Engagement Letter, including the Indemnification Agreement, with the Committee at arm's-length.

**No Duplication of Services**

18. I do not believe that the services to be rendered by Centerview will be duplicative of the services performed by any other professional, and Centerview will use reasonable efforts to coordinate with the Committee and the other professionals engaged by the Committee to minimize and avoid duplication of services.

**Disinterestedness and Eligibility**

19. In connection with its proposed retention by the Committee in these chapter 11 cases, Centerview undertook to determine whether it has any conflicts or other material relationships that might cause it not to be disinterested or to hold an interest adverse to the Debtors. In connection with this inquiry, Centerview obtained from the Debtors and their professionals the names of individuals and entities that may be parties in interest in these cases (the "Potential Parties in Interest"), as summarized on the Debtors' Retention Checklist.

20. Some of the Centerview employees who will work on the engagement for the Committee, in connection with their employment before joining Centerview, may have appeared or been engaged in cases, proceedings, or transactions involving attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and Potential Parties in Interest.

21. To the best of my knowledge, information, and belief, Centerview has not represented any Potential Parties in Interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these cases except as set forth herein.

As part of this inquiry, Centerview entered the names of Potential Parties in Interest into its computer database of existing and prior client engagements. Through this process, Centerview determined that it is and/or was formerly engaged by certain of the Potential Parties in Interest and/or their affiliates. To the best of my knowledge, information and belief, and based on such internal review process, Centerview currently is engaged to advise and/or was formerly engaged in the last three years to advise the entities identified on **Schedule 2** attached hereto and/or affiliates thereof on matters unrelated to these chapter 11 cases. These engagements are in no way connected with matters relating to the Debtors, their estates, assets, or businesses, and do not impair Centerview's disinterestedness with respect to the Debtors and their estates. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these engagements are adverse to the Debtors' interests. With respect to the rest of the Potential Parties in Interest, to the best of my knowledge, Centerview has not been engaged to render advisory services to any of them within the past three years.

22. As part of Centerview's diverse business, Centerview appears or may appear as a financial advisor or an investment banker in numerous cases, proceedings, or transactions involving attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and Potential Parties in Interest, or be claimants and Potential Parties in Interest in these cases. Further, Centerview (including its professionals through their prior employment) has in the past, and may in the future, be represented by attorneys and law firms, some of whom may be involved in these cases. In addition, Centerview (including its professionals through their prior employment) has in the past and will likely in the future be working with, against or for other professionals involved in these cases in matters unrelated to these cases. In addition, Centerview has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these chapter 11 cases in which it works

with or against or has mutual clients with other professionals involved in these chapter 11 cases. In particular, Centerview may also be engaged to represent, or may have been engaged to represent in the past, committees or groups of lenders, creditors, or equity owners in matters unrelated to the Debtors or these chapter 11 cases, some of which are included on the Potential Parties in Interest list. Furthermore, Centerview has vendor relationships with certain of the entities listed as Potential Parties in Interest unrelated to the Debtors or these chapter 11 cases. To the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors in matters upon which Centerview is to be engaged in these cases.

23. Other than as referenced herein or set forth on Schedule 2, I am unaware of any client engagements that Centerview has had with the Potential Parties in Interest herein. Centerview has not been engaged to assist any entity or person other than the Debtors on matters relating to, or in connection with, these cases. If the Court approves the proposed employment of Centerview by the Committee, Centerview will not accept any engagement or perform any services in relation to these cases for any entity or person other than the Committee. Centerview is a global investment banking and advisory firm. Given the size of Centerview and the breadth of Centerview's client base, it is possible that Centerview may now or in the future be engaged by one or more of the Potential Parties in Interest in matters unrelated to the Debtors or these cases. In addition, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that are not listed as Potential Parties in Interest and with whom Centerview may now or in the future have engagements or material commercial relationships. To the extent that Centerview discovers any, or enters into any new material engagement or commercial relationship with Potential Parties in Interest, it will supplement this disclosure to the Court.

24. Further, Centerview has legal and separate affiliates and related parties (the "Corporate Group Entities") that engage in a variety of investment activities. The Corporate Group Entities are comprised of Centerview Capital Holdings LLC ("Centerview Capital Holdings"), the consumer-focused private equity business sponsored by Centerview Capital Holdings (known as Centerview Capital Consumer), and the technology focused private and growth equity business sponsored by Centerview Capital Holdings (known as Centerview Capital Technology). The Corporate Group Entities do not reside in the same corporate structure as Centerview. The Centerview employees providing services in connection with these chapter 11 cases have no control over investment or business decisions made for the Corporate Group Entities, and because of physical and electronic information barriers and other compliance policies and procedures, have no access to any confidential information of the Corporate Group Entities. Likewise, the investment professionals responsible for the Corporate Group Entities' day-to-day portfolio management have no access to any confidential information relating to Centerview's work for the Debtors. With the exception of potential follow-on investments by funds sponsored by Centerview Capital Technology, the Corporate Group Entities are fully invested, and none of the Corporate Group Entities holds an ownership interest in, or debt of, any of the Debtors or the other Potential Parties in Interest. Based on the foregoing, I believe that the Corporate Group Entities' investment activities do not present a conflict of interest with respect to Centerview's retention by the Committee in these chapter 11 cases. If any of the Corporate Group Entities subsequently invests in any of the Potential Parties in Interest, or if Centerview becomes aware that any entity in which any of the Corporate Group Entities is invested subsequently becomes a Potential Party in Interest, Centerview will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a). Moreover, I note that certain of the Potential Parties in Interest may now or in the future invest in funds that are

managed by the Corporate Group Entities or co-invest with the Corporate Group Entities, but I do not believe that these potential relationships create a conflict of interest for Centerview regarding the Debtors or these chapter 11 cases. I also note that David Dorman, a principal of Centerview Capital Technology, is a member of the Board of Directors of Dell Technologies, Inc., affiliates of which are UCC Lien Holders of the Debtors and Potential Parties in Interest. In addition, James Kilts, a principal of Centerview Capital Consumer, is a member of the Board of Directors of Metropolitan Life Insurance Company, affiliates of which are litigation counterparties and/or parties to threatened litigation with one or more of the Debtors and Potential Parties in Interest. Mr. Dorman and Mr. Kilts are not employees of Centerview, do not share in any of the profits of Centerview (including any fees that may be paid by the Debtors to Centerview) and have no role in the governance of Centerview in any respect. Further, Mr. Dorman and Mr. Kilts do not have access to confidential information relating to Centerview's work for the Debtors, and are not physically located in any Centerview office. Accordingly, I believe that the foregoing board memberships do not present a conflict of interest regarding the Debtors or these chapter 11 cases.

25. To the best of my knowledge, information, and belief after reasonable inquiry, other than as disclosed in this Declaration, neither I, Centerview, nor any of our professionals or employees participating in or connected with Centerview's engagement with the Committee: (i) is related to the Debtors or any other party in interest herein, the United States Trustee for the Northern District of California or anyone employed in the Office of the United States Trustee for the Northern District of California, or the judge assigned to these cases; (ii) has any connection with or holds or represents any interest adverse to the Debtors, their estates, their creditors, or any other Potential Parties in Interest or their respective attorneys in the matters on which Centerview is proposed to be retained; or (iii) has advised any Potential Parties

in Interest in connection with these chapter 11 cases. Additionally, Centerview does not believe that any relationship that Centerview or any of our professionals or employees participating in or connected with Centerview's engagement with the Committee may have with any Potential Parties in Interest in connection with any unrelated matter will interfere with or impair Centerview's representation of the Committee in these Cases.

26. To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, Centerview has no agreement with any other entity to share with such entity any compensation received by Centerview in connection with these chapter 11 cases. No promises have been received by Centerview as to compensation for Centerview in connection with these chapter 11 cases other than in accordance with the Engagement Letter.

27. Certain employees of Centerview may have mortgages, consumer loans, investment, brokerage accounts, or other banking brokerage, or other customer relationships with institutions that are creditors, equity holders or other Potential Parties in Interest in these chapter 11 cases or with funds sponsored by or affiliated with such parties. I do not believe that these relationships create a conflict of interest regarding the Debtors or their chapter 11 cases.

28. Certain employees of Centerview were formerly employed by other investment banking, financial services or other professional services firms that are among, or represent other parties that are among, the creditors, equity holders, or other Potential Parties in Interest in these cases in connection with matters unrelated to the Debtors and the cases. I do not believe that these matters create a conflict of interest regarding the Debtors or the cases.

29. In addition, certain employees of Centerview and certain of such persons' relatives may directly or indirectly hold, in the ordinary course, debt or equity securities of certain of the Potential Parties in Interest or investment funds sponsored by them. However, based upon the information that has been provided to me, I believe that any such holdings are

insignificant and, to my knowledge, none of these investors controls or has any influence on such Potential Parties in Interest. Further, I do not believe these investments, considered separately or collectively, are material or create a conflict of interest regarding the Debtors or these chapter 11 cases.

30. Finally, I note that John Roos, a Senior Advisor to Centerview, is a member of the Global Advisory Board of Mistubishi UFJ Financial Group, affiliates of which are Term and Revolving Loan Lenders and Administrative Agents of and provide bank accounts for one or more of the Debtors and are Potential Parties in Interest. As a Senior Advisor, Mr. Roos is a part-time independent contractor. Mr. Roos is not an employee of Centerview. He does not share in any of the profits of Centerview (including any fees that may be paid by the Debtors to Centerview) and has no role in the governance of Centerview in any respect. Further, Mr. Roos does not have access to confidential information relating to Centerview's work for the Committee, and is not physically located in any Centerview office. Accordingly, I believe that the foregoing board membership do not present a conflict of interest regarding the Debtors or these Chapter 11 Cases.

31. In the light of the number of the Debtors' creditors, Potential Parties in Interest, and potential additional parties in interest, neither I nor Centerview am able conclusively to identify all potential relationships at this time, and we reserve the right to supplement this disclosure as additional material relationships come to our attention. In particular, among other things, Centerview may have relationships with persons who are beneficial owners of Potential Parties in Interest and persons whose beneficial owners include Potential Parties in Interest or persons who otherwise have relationships with Potential Parties in Interest. Moreover, Centerview employees may have relationships with Potential Parties in

Interest, persons that may become parties in interest in this case, or persons that have business relationships with the Debtors or are competitors of the Debtors.

32.     Based on the foregoing, to the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, Centerview and the employees of Centerview that will work on this engagement do not hold or represent any interest adverse to the Debtors or their estates, and Centerview is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Centerview and the employees of Centerview that will work on this engagement:

a.     are not creditors, equity security holders, or insiders of the Debtors;

b.     were not, within two years before the Petition Date, a director, officer, or employee of the Debtors; and

c.     do not have an interest materially adverse to the Debtors, their respective estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

33.     Centerview will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  To the extent that any new material facts or relationships bearing on the matters described herein during the period of Centerview's retention are discovered or arise, Centerview will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).


Executed on April 3, 2019, New York, NY


*/s/* Samuel M. Greene
Samuel M. Greene

# SCHEDULE 1

**Retention Checklist**

1
- Debtors
2
- Debtors' Trade Names and Aliases (up to 8 years)
- Affiliates and Subsidiaries
3
- Bank Accounts
- Bankruptcy Judges & Staff Northern District of California
4
- Current Officers and Directors
- Term and Revolving Loan Lenders and Administrative Agents
5
- Contract Counterparties
6
- DIP Lenders
- Debtors Professionals
7
- Former Officers and Directors (since 2008)
- Affiliations of Former Officers
8
- Affiliations of Former Directors
9
- Insurance/Insurance Provider/Surety Bonds
- Surety Bonds
10
- Landlords and parties to leases
11
- Lenders Litigation Counterparties/Litigation Pending Lawsuits
- Litigation Parties (in adversary proceeding 19-03003)
12
- Ad Hoc Committee of Unsecured Tort Claimant Creditors
- Non-Debtors Professionals
13
- Ordinary Course Professionals
14
- Letters of Credit
- Regulatory and Government
15
- Significant Competitors
- Significant Shareholders (more than 5% of equity)
16
- Significant holder of voting securities
17
- Taxing Authorities
- Top Unsecured Creditors (top 50 list as well as other large holders of unsecured claims)
18
- Unsecured Notes
19
- UCC Lien Holders
- Unions
20
- Office of the United States Trustee for Region 17
21
- Utility Providers
- Vendors/Suppliers
22
- Interested Parties / Notice of Appearance Parties
23

24

25

26

27

28

1

**SCHEDULE 2**

2

**Connections to Potential Parties in Interest**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Centerview currently is engaged to advise and/or was formerly engaged in the last three years to advise the following Potential Parties-in-Interest and/or their affiliates in matters wholly unrelated to the Debtors or these cases (including where the Potential Party-in-Interest was only a member of group of lenders, creditors or equity owners):

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Aetna<br>Aetna International | Insurance/Insurance Provider/Surety Bonds |
| Baker Hughes Process & Pipeline Services<br>Baker Hughes US Land | Vendors |
| BakerCorp | Vendors |
| Bank of America | Bank Accounts<br>Top Unsecured Creditors |
| Bank of America Merrill Lynch | Bank Accounts<br>Unsecured Notes |
| Bank of America, N.A. | Lenders (Prepetition and Proposed Postpetition to the extent not already listed)<br>DIP Lenders<br>Unsecured Notes<br>Term and Revolving Loan Lenders and Administrative Agents |
| BlackRock Fund Advisors | Significant holder of voting securities |
| BlackRock, Inc. | Significant Shareholders (more than 5% of equity) |
| Blue Mountain Capital Management LLC | Significant holder of voting securities |
| BlueLine Rental, LLC | Vendors |
| Brookfield Renewable Energy Partners | Contract Counterparties (includes, PPAs, patents and IP) |
| CalRenew -1 LLC | Contract Counterparties (includes, PPAs, patents and IP) |
| Ch2m Hill Engineers Inc. | Top Unsecured Creditors<br>Vendors |
| Citadel Energy Mktg. LLC | Contract Counterparties (includes, PPAs, patents and IP) |
| Citi | Unsecured Notes |
| Citibank, N.A. | Top Unsecured Creditors<br>Unsecured Notes |
| Citigroup<br>Citigroup Energy Inc. | Contract Counterparties (includes, PPAs, patents and IP) |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Citigroup Global Markets Inc. | Lenders (Prepetition and Proposed Postpetition to the extent not already listed) DIP Lenders Unsecured Notes |
| Cognizant Worldwide Limited | Top Unsecured Creditors |
| Credit Suisse Energy LLC | Contract Counterparties (includes, PPAs, patents and IP) |
| Dell Financial Services L.L.C. Dell Financial Services, L.P. | UCC Lien Holders |
| DeWalt Corporation | Vendors |
| Elliott Management | Significant holder of voting securities |
| Elster American Meter Company, LLC | Interested Parties / Notice of Appearance Parties |
| Express Scripts Holding Company | Insurance/Insurance Provider/Surety Bonds |
| Frito Lay Cogen Frito-Lay, Inc. | Contract Counterparties (includes, PPAs, patents and IP) |
| GE Oil & Gas - North America GE Renewable Energy General Electric International Inc. General Electric International Inc. - Power Services | Vendors |
| Goldman Sachs | Unsecured Notes |
| Goldman Sachs Bank USA | Term and Revolving Loan Lenders and Administrative Agents Unsecured Notes |
| Goldman, Sachs & Co. | Bank Accounts |
| Honeywell HPS | Vendors |
| Instrument & Valve Services Company | Vendors |
| Iron Mountain | Non-Debtors Professionals |
| J.P. Morgan Securities LLC | Unsecured Notes |
| JP Morgan Chase Bank, N.A. | Bank Accounts Contract Counterparties (includes, PPAs, patents and IP) Term and Revolving Loan Lenders and Administrative Agents Lenders (Prepetition and Proposed Postpetition to the extent not already listed) DIP Lenders Unsecured Notes |
| JP Morgan Securities LLC JP Morgan Ventures Energy Corporation | Contract Counterparties (includes, PPAs, patents and IP) |

Case: 19-30088   Doc# 1213   Filed: 04/03/19   Entered: 04/03/19 17:59:58   Page 47 of 61

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Lazard Frères & Co. LLC | Debtors Professionals (law firms, accountants and other professionals) |
| Macquarie Energy LLC | Contract Counterparties (includes, PPAs, patents and IP) Top Unsecured Creditors |
| Macquarie Can Macquarie Futures | Contract Counterparties (includes, PPAs, patents and IP) |
| Merrill Lynch | Bank Accounts Contract Counterparties (includes, PPAs, patents and IP) |
| Merrill Lynch Commodities Inc. | Contract Counterparties (includes, PPAs, patents and IP) |
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | Unsecured Notes |
| Morgan Stanley / ISG Operations | Bank Accounts |
| Morgan Stanley Bank Morgan Stanley Bank/ Morgan Stanley Senior Funding | Unsecured Notes |
| Morgan Stanley Bank, N.A. | Term and Revolving Loan Lenders and Administrative Agents |
| Morgan Stanley Capital Group Inc. | Contract Counterparties (includes, PPAs, patents and IP) |
| Morgan Stanley Senior Funding, Inc. | Unsecured Notes Term and Revolving Loan Lenders and Administrative Agents |
| Neff | Landlords and parties to leases |
| Nextel Communications Nextel of California, Inc., a Delaware Corp. | Utility Providers |
| Prime Clerk | Debtors Professionals (law firms, accountants and other professionals) |
| Sears | Landlords and parties to leases |
| Silver Spring Networks, Inc. | Suppliers |
| SimplexGrinnell | Vendors |
| Solar Turbines Incorporated | Vendors |
| Sprint Sprint Nextel Property Services Sprint Spectrum Sprint Spectrum- Nextel | Utility Providers |
| SPS Atwell Island, LLC | Contract Counterparties (includes, PPAs, patents and IP) |
| SunEdison Yieldco ACQ2, LLC | Contract Counterparties (includes, PPAs, patents and IP) |
| Triton Construction Services | Vendors |
| Tyco Integrated Security LLC | Vendors |

3

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Ultra Petroleum | Top Unsecured Creditors |
| Ultra Resources | Contract Counterparties (includes, PPAs, patents and IP) |
| Williams Field Services | Contract Counterparties (includes, PPAs, patents and IP) |

Note: Centerview currently is engaged to advise and/or was formerly engaged in the last three years to advise several Potential Parties-in-Interest and/or their affiliates that, due to confidentiality obligations owed to such entities, Centerview is unable to disclose. These Potential Parties-in-Interest are in the following categories: "Bank Accounts," "Contract Counterparties", "Litigation Counterparties/Litigation Pending Lawsuits", "Top Unsecured Creditors", "Unsecured Notes", "Utility Providers" and "Vendors". Centerview's work for each of these entities is or was on matters that are wholly unrelated to the Debtors or these cases.

1

**EXHIBIT C**

2

**Engagement Letter**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AS OF FEBRUARY 15:
Centerview Partners LLC
31 West 52nd Street
New York, NY 10019

February 15, 2019


CONFIDENTIAL

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF PG&E CORPORATION AND
PACIFIC GAS AND ELECTRIC COMPANY
C/O MILBANK LLP
55 HUDSON YARDS
NEW YORK, NY 10001


Dear Ms. Wong:

This letter (the "Agreement") confirms the terms under which the Official Committee of Unsecured Creditors of PG&E Corporation and Pacific Gas and Electric Company (the "Committee") has engaged Centerview Partners LLC ("Centerview") as its financial advisor and investment banker with respect to a possible Transaction (as defined below) and with respect to such other financial matters as to which the Committee and Centerview may agree in writing during the term of this engagement. For purposes hereof, the term "Company" shall mean, collectively, PG&E Corporation and Pacific Gas and Electric Company, debtors in the chapter 11 cases (Case No. 19-30088).[1] If appropriate in connection with performing its services hereunder, Centerview may utilize the services of one or more of its affiliates, in which case references herein to Centerview shall include, as applicable, such affiliates. The terms of this Agreement shall apply to all services provided by Centerview in connection with the matters contemplated herein, including those provided prior to the date of this Agreement.

As used herein, the term "Transaction" shall mean (i) any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement, refinancing, purchase or repurchase, reinstatement and/or a material modification or amendment to the terms, conditions or covenants thereof) of substantially all of the Company's preferred equity, debt securities, bank or other credit facilities and other indebtedness, obligations and liabilities (including, without limitation, partnership interests, lease obligations, trade credit facilities and/or contract, tort and contingent obligations), including pursuant to a repurchase or an exchange transaction or a solicitation of consents, waivers, acceptances or authorizations or

---

[1] It is expressly understood and agreed that all references to obligations of the Company under the terms of the Agreement and Annex A shall be obligations of the Company pursuant to the order entered by the Bankruptcy Court pursuant to and in accordance with the Centerview retention application.

*1*

(ii) any transaction or series of related transactions involving an acquisition, merger, consolidation, or any other business combination pursuant to which a majority of the business, equity or assets of the Company are, directly or indirectly, sold, purchased or combined with another entity or company.

1. Centerview**,** as financial advisor and investment banker to the Committee, will perform the following financial advisory and investment banking services:

   a. familiarize itself with the business, operations, properties, financial condition and prospects of the Company;

   b. analyze the Company's financial projections and forecasts;

   c. advise and assist the Committee in evaluating a range of strategic alternatives and advise and assist in formulating alternative restructuring plans for the Company in connection with a Transaction, if requested by the Committee;

   d. advise and assist the Committee in structuring, negotiating, implementing and otherwise responding to the financial aspects of a Transaction, in each case on behalf of the Committee and subject to the terms and conditions of this Agreement;

   e. in connection with any Transaction, provide financial advice and assistance in structuring any new securities to be issued pursuant to the Transaction;

   f. attend meetings of the Committee as well as meetings with the Company or other third parties as appropriate in connection with the matters set forth herein;

   g. participate in negotiations among the Committee, the Company and its creditors and other interested parties with respect to any Transaction;

   h. provide financial analysis of the consideration offered by the Company to the Committee in any Transaction;

   i. participate in hearings before the bankruptcy court with respect to the matters upon which Centerview has provided advice, including, as relevant, coordinating with the Committee and its legal advisor, Milbank LLP, with respect to testimony in connection therewith; and

   j. provide such other financial advisory services as may from time to time be specifically agreed upon in writing by Centerview and the Committee.

In rendering its services hereunder, Centerview is not assuming any responsibility for the Company's or the Committee's underlying business decision to pursue any business strategy or to effect any Transaction. The Committee agrees that Centerview shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions. The Committee acknowledges that Centerview is not providing any advice on tax, legal, regulatory or accounting matters, and the Committee agrees that it will seek and rely on the advice of its own professional advisors for such matters, and will make an independent decision with respect to the matters that are the subject of this engagement based on such advice.

In order to coordinate effectively Centerview's activities to effect a Transaction, the Committee will use commercially reasonable efforts to promptly inform Centerview of any discussions, negotiations or inquiries regarding a possible Transaction (including any such discussions, negotiations or inquiries that have occurred in which the Committee and/or its counsel have been involved).

The Committee shall use its commercially reasonable efforts to procure from the Company, for Centerview, all information concerning the business, assets, operations, financial condition and prospects of the Company that Centerview reasonably requests in connection with the services to be performed hereunder, and shall use its commercially reasonable efforts to cause the Company to provide Centerview with reasonable access to the Company's officers, directors, employees, independent accountants, and counsel, and other advisors, agents and other representatives of the Company as Centerview reasonably requests. The Committee understands and agrees that, in performing our services hereunder, Centerview (a) will be using and relying on publicly available information and on materials, data and other information furnished to Centerview by the Company, the Committee and other parties, (b) is entitled to assume and rely upon the accuracy and completeness of such publicly available information and the other information so furnished without having independently verified the same, and (c) does not assume any responsibility for the accuracy or completeness of such information. Centerview will not conduct an independent evaluation or appraisal of the assets or liabilities (including any contingent, derivative or off -balance sheet assets or liabilities) of the Company, or advise or opine on any solvency or viability issues, nor will it make an inspection of the properties or assets of the Company. With respect to any forecasts or projections that may be furnished to Centerview or discussed with the Committee, Centerview will assume that they have been reasonably prepared on bases reflecting the best then currently available estimates and judgments of the management of the Company as to the matters covered thereby.

2.      As compensation for services rendered under this Agreement, the following fees, when due, shall be paid by the Company to Centerview in cash, by wire transfer of immediately available funds:

     a.      A monthly financial advisory fee of $250,000 (the "<u>Monthly Advisory Fee</u>"), the first of which shall be earned upon execution of this Agreement and shall be paid by the Company upon Bankruptcy Court approval of this Agreement. Each subsequent Monthly Advisory Fee shall be due on each monthly anniversary of execution of this Agreement during the term of this engagement. Fifty percent (50%) of all Monthly Advisory Fees earned after the first twelve (12) months of the term this engagement will be credited (but only once) against any Transaction Fee payable to Centerview pursuant to subparagraph 2(b) hereof.

     b.      If any Transaction is consummated, Centerview shall be entitled to receive a transaction fee (a "<u>Transaction Fee</u>"), contingent upon the consummation of such Transaction and payable in cash by the Company at the closing thereof, equal to $12,000,000.

     c.      If at any time during the term of this engagement, the Company consummates a Transaction, a discretionary fee (at the sole discretion of the Committee and to be defined in a separate agreement) may be paid to Centerview (an "Additional Fee").

Notwithstanding any other provision of this Agreement, any Transaction Fee shall be payable to Centerview only upon the effective date of a chapter 11 plan with respect to the Company.

Each party hereto acknowledges and agrees that Centerview's restructuring expertise as well as its capital markets/financing knowledge and mergers and acquisitions capabilities, some or all of which may be required during the term of Centerview's engagement hereunder, were important factors in determining the amount of the fees set forth herein, and that the ultimate benefit of Centerview's services hereunder could not be measured merely by reference to the number of hours to be expended by Centerview's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Centerview and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Centerview and that the actual time and commitment required by Centerview and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given numerous issues which Centerview may be required to address in the performance of its services hereunder, Centerview's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Centerview's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards.

3.      In addition to the fees payable by the Company to Centerview hereunder, the Company shall, whether or not any Transaction shall be proposed or consummated, reimburse Centerview on a periodic basis for its reasonable documented travel and other reasonable documented out-of-pocket expenses (including all fees, disbursements and other charges of one legal counsel to be retained by Centerview, and of other consultants and advisors retained by Centerview with the Company's consent), incurred during the term of this engagement in connection with, or arising out of Centerview's activities under or contemplated by this engagement. Such reimbursements shall be made promptly upon submission by Centerview of statements for such expenses. It is understood and agreed that nothing contained herein shall be deemed to limit in any manner the indemnification, expense reimbursement and other obligations of the Company contained in the provisions attached hereto as Annex A.

4.      The Company and Centerview have entered into a separate letter agreement, dated the date hereof and attached hereto as Annex A (the "Indemnification Agreement"), providing for indemnification by the Company of Centerview and certain related persons. Such Indemnification Agreement is an integral part of this Agreement and the terms thereof are incorporated by reference herein. As stated therein, the Indemnification Agreement shall survive any termination or completion of Centerview's engagement hereunder.

5.      The Committee and the Company agree that neither Centerview nor any of its affiliates, their respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Centerview Persons" and each individually, a "Centerview Person") shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company, the Committee or any person asserting claims on behalf of or in right of any of them for or in connection with this engagement or any transactions or conduct in connection herewith, except to the extent that any losses, claims, damages or liabilities incurred by the Company and/or Committee are finally judicially determined to have resulted directly from the willful misconduct, gross negligence or bad faith of such Centerview Person.

6. This Agreement and Centerview's engagement hereunder may be terminated by either the Committee or Centerview at any time upon 30 days' prior written notice thereof to the other party; provided, however, that (A) termination of Centerview's engagement hereunder shall not affect the Company's continuing obligations under Annex A and the Committee's continuing obligations and agreements under paragraphs 5 and 7 hereof, (B) notwithstanding any such termination (other than a termination (i) by Centerview or (ii) by the Committee for Cause), Centerview shall be entitled to the Transaction Fee in the event that a Transaction is consummated at any time prior to the date that is 12 months following the termination or expiration of this Agreement and (C) termination of Centerview's engagement hereunder shall not affect the Company's obligation to reimburse the expenses accrued prior to such termination to the extent provided in paragraph 3 hereof. For purposes of this Agreement, "Cause" shall mean means Centerview's gross negligence, bad faith or willful misconduct in the performance or omission of its services under this Agreement, as finally judicially determined.

7. Centerview has been retained under this Agreement as an independent contractor with duties owed solely to the Committee in connection with its representation of the Committee and the Committee acknowledges that Centerview is not acting as an agent of the Committee or in a fiduciary capacity, whether pursuant to contract or otherwise, with respect to the Committee or any other third party. The advice (oral or written) rendered by Centerview pursuant to this Agreement is intended solely for the benefit and use of the Committee in considering the matters to which this Agreement relates, and the Committee agrees that such advice may not be (a) relied upon by any person other than the Committee, (b) used for any other purpose or (c) reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, without the prior written consent of Centerview. In addition no public references to Centerview shall be made by the Committee without the prior written consent of Centerview. Notwithstanding the foregoing, in the event that the Committee is legally required (including by interrogatory, request for information or documents, subpoena, deposition, civil investigative demand or other process) to disclose any of the foregoing information, the Committee will, to the extent not prohibited by law) provide Centerview with prompt written notice of any such requirement so that Centerview may seek an appropriate protective order or waive the Committee's compliance with the provisions of this paragraph. If, failing the entry of a protective order or the receipt of a waiver hereunder, the Committee is, on the advice of its counsel, required to disclose any such information, it may disclose that portion of the information which the Committee's counsel advises it that it is required to disclose. In any event, the Committee will not oppose, and will cooperate in, any action by Centerview to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded any such information. Centerview is not assuming any duties or obligations other than those expressly set forth in this Agreement.

8. The Committee agrees that, following Bankruptcy Court approval of this Agreement, Centerview shall have the right to place customary advertisements in financial and other newspapers and journals and in marketing materials at its own expense describing its services to the Committee hereunder.

9. The Committee shall use its commercially reasonable efforts to promptly apply to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 328(a) and 1103 of the Bankruptcy Code of this Agreement and Centerview's retention by the Committee under the terms of this Agreement, and subject to the standard of review provided for in section 328(a) of the

Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code or any other standard of review, and shall use its commercially reasonable efforts to obtain Bankruptcy Court authorization thereof. The Committee shall supply Centerview and its counsel with a draft of such application and any proposed order authorizing Centerview's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Centerview and its counsel to review and comment thereon. Centerview shall have no obligation to provide any services under this Agreement unless and until Centerview's retention under the terms of this Agreement is approved under sections 328(a) and 1103 of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Centerview in all respects. Centerview acknowledges that in the event that the Bankruptcy Court approves its retention by the Committee pursuant to the application process described in this paragraph 10, payment of Centerview's fees and expenses shall be subject to (i) jurisdiction and approval of the Bankruptcy Court under sections 328(a) and 1103 of the Bankruptcy Code and any order approving Centerview's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interest and final fee applications. Centerview shall have no obligation to keep time records except as it does so in its normal practice and will have no obligation to provide services under this Agreement if it will be required to vary its normal time-keeping practices. In the event that Centerview's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Centerview hereunder as promptly as practicable in accordance with the terms hereof. In so agreeing to seek Centerview's retention under section 328(a) of the Bankruptcy Code, the Committee acknowledges and agrees that Centerview's experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its other capabilities will inure to the benefit of the Company's bankruptcy estates and Committee, that the value to the Company's bankruptcy estates and Committee of Centerview's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees payable to Centerview hereunder are reasonable regardless of the number of hours to be expended by Centerview's professionals in performance of the services to be provided hereunder.

Upon Court approval of this Agreement, Centerview's post-petition compensation as set forth herein and payments made pursuant to the expense reimbursements and indemnification provisions of this Agreement (including, without limitation, Annex A hereto) shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. The Committee agrees to reasonably assist Centerview in preparing, filing and serving all required fee statements, interim fee applications, and final fee application.

10. This Agreement shall be deemed made in New York. This Agreement and all controversies arising from or relating to performance hereunder shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such State, without giving effect to such State's rules concerning conflicts of laws that might provide for any other choice of law. Each party hereto agrees that any action or proceeding based hereon, or arising out of Centerview's engagement hereunder, shall be brought and maintained in the courts of the State of New

York located in the City and County of New York or in the United States District Court for the Southern District of New York, or, during the pendency of the Company's chapter 11 proceedings, the United States Bankruptcy Court for the Northern District of California. The parties hereto each hereby irrevocably submit to the jurisdiction of the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, or, during the pendency of the Company's chapter 11 proceedings, the United States Bankruptcy Court for the Northern District of California, for the purpose of any such action or proceeding as set forth above. Each of the parties hereto hereby irrevocably waive, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that any such action or proceeding has been brought in an inconvenient forum and agree not to plead or claim the same. THE COMMITTEE (FOR ITSELF, OR ANYONE CLAIMING THROUGH IT OR IN ITS NAME) AND CENTERVIEW EACH HEREBY IRREVOCABLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

11.     This Agreement may be executed in counterparts, each of which together shall be considered a single document. This Agreement may not be assigned by the parties hereto (except by Centerview to an affiliate) without the prior written consent of the other. This Agreement shall be binding upon Centerview, the Committee, and the Company and their respective successors and permitted assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Transaction). This Agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, the Committee or any other person or entity not a party hereto, other than the Indemnified Persons referenced in Annex A and the Centerview Persons referenced in paragraph 5 hereof. This Agreement (including Annex A) constitutes the entire agreement of the parties with respect to the subject matter hereof, and may not be amended or otherwise modified or its provisions waived except by a writing executed by Centerview, the Committee and the Company. The Company's obligations hereunder (including Annex A) are joint and several.

12.     Centerview is engaged directly and through its affiliates and related parties in a number of investment banking, financial advisory and merchant banking activities. The Committee acknowledges and agrees that in performing its services for the Committee hereunder, Centerview shall have no duty to disclose to the Committee, or to use for the benefit of the Committee, any proprietary or non-public information obtained by Centerview or its affiliates or related parties in the course of providing services to any other entity or person, engaging in any transaction (including as principal) or otherwise conducting its business. Notwithstanding anything to the contrary in this Engagement Letter, during the term of the engagement under this Agreement or, in the event this engagement is terminated prior to the consummation of a Transaction (other than a termination by the Committee without Cause), for the period ending 12 months' following such termination, Centerview shall not be engaged to provide any investment banking financial advisory services in connection with a Transaction to any creditors or equity holders of the Company or its affiliates, or any other party adverse to the Committee, in each case, in connection with a Transaction.

We are pleased to accept this engagement and look forward to working with the Committee. Please confirm that the foregoing is in accordance with our mutual understanding by signing and returning to Centerview this Agreement, which shall thereupon constitute a binding agreement between Centerview and the Committee.

Very truly yours,

CENTERVIEW PARTNERS LLC

By: /s/ Samuel M. Greene

Name: Samuel M. Greene
Title: Partner

Accepted and Agreed to:

On behalf of the OFFICIAL COMMITTEE
OF UNSECURED CREDITORS
OF PG&E CORPORATION AND
PACIFIC GAS AND ELECTRIC COMPANY

By:
Name: Cynthia Wong
        Corporate Finance & Restructuring
        Pension Benefit Guaranty Corporation

In connection with the engagement (the "Engagement") of Centerview Partners LLC ("Centerview") by the Official Committee of Unsecured Creditors of PG&E Corporation and Pacific Gas and Electric Company (the "Committee"), pursuant to a letter agreement dated the date hereof and attached hereto (the "Engagement Agreement"), PG&E Corporation and Pacific Gas and Electric Company (Case No. 19-30088) (jointly and severally, the "Company") hereby agree as follows:

1.      Except as provided in paragraph 3 hereof, the Company agrees to indemnify and hold harmless Centerview and each of its affiliates, their respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Indemnified Persons" and each individually, an "Indemnified Person") from and against any and all losses, claims, damages, demands and liabilities, joint or several, or actions or proceedings in respect thereof, brought by or against any person (collectively, "Losses"), which are related to or arise out of the Engagement or any matter or transaction contemplated thereby.

2.      The Company agrees to reimburse each Indemnified Person promptly upon request for all costs and expenses (including reasonably incurred fees, disbursements and other charges of legal counsel), as they are incurred in connection with investigating, preparing for, pursuing, defending against or providing evidence in, any pending or threatened action, claim, suit, investigation or other proceeding brought by or against any person in any jurisdiction related to or arising out of the Engagement or any matter or transaction contemplated thereby (whether or not Centerview or any other Indemnified Person is a named party or witness, and whether or not any liability to any person results therefrom), including in connection with enforcing the terms hereof.

3.      Notwithstanding the foregoing, the Company shall have no obligation to indemnify and hold harmless any Indemnified Person under this letter agreement in respect of any Losses to the extent that such Losses are finally judicially determined to have resulted directly from the willful misconduct, gross negligence or bad faith of such Indemnified Person (an "Excluded Claim"). If an Indemnified Person is not entitled to indemnification with respect to an Excluded Claim, Centerview or such Indemnified Person will promptly repay to the Company any indemnification payments or expense reimbursements made under this Annex A with respect to such Excluded Claim and any expenses previously reimbursed under this Annex A with respect to such Excluded Claim.

4.      The Company agrees that it will not, without Centerview's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, claim, suit, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Centerview or any other Indemnified Person is an actual or potential party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from all liability arising out of such action, claim, suit, investigation or proceeding and does not impose any monetary or financial obligation on any Indemnified Person or contain any admission of culpability or liability on the part of any Indemnified Person. No Indemnified Person seeking indemnification, reimbursement or contribution under this letter agreement will, without the Company's prior written consent (which

consent shall not be unreasonably withheld or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

5. If the foregoing indemnification provided for herein is determined to be unavailable to an Indemnified Person for any reason or is insufficient to hold it harmless in respect of any Losses referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses (and expenses related thereto) (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and to Centerview, on the other hand, with respect to the Engagement or (ii) if the allocation provided by clause (i) of this paragraph is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of each of the Company, together with its officers, directors, employees and other advisors, on the one hand, and Centerview, on the other hand, and any other relevant and equitable considerations; provided, however, that, except with respect to an Excluded Claim, in no event shall the aggregate contribution of the Indemnified Persons to the amounts so paid or payable exceed the aggregate amount of all fees actually received by Centerview from the Company in connection with the Engagement (excluding any amounts received by Centerview as reimbursement of expenses pursuant to the Engagement Agreement). For purposes of this letter agreement, the relative benefit to the Company and Centerview of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by the Company in the transaction or transactions that are the subject of the Engagement, whether or not such transaction is proposed or completed, bears to (b) the fees paid or to be paid to Centerview under the Engagement Agreement.

6. This letter agreement shall be deemed made in New York. This letter agreement and all controversies arising from or relating to performance hereunder shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such State, without giving effect to such State's rules concerning conflicts of laws that might provide for any other choice of law. Each of the Company and Centerview agree that any action or proceeding based on, arising out of or resulting from any matter referred to in this letter agreement, shall be brought and maintained exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York. The Company and Centerview each hereby irrevocably submit to the jurisdiction of the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York for the purpose of any such action or proceeding as set forth above, and irrevocably agree to be bound by any judgment rendered thereby in connection with such action or proceeding; provided that during the pendency of the Company's chapter 11 proceedings, all legal proceedings relating to this letter agreement shall be brought in a bankruptcy court overseeing such proceeding. Each of the Company and Centerview hereby irrevocably waive, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that any such action or proceeding has been brought in an inconvenient forum, and agree not to plead or claim the same. ANY RIGHTS OF TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THIS LETTER AGREEMENT OR THE ENGAGEMENT ARE HEREBY WAIVED.

7.    The indemnity, contribution, reimbursement and other obligations of the Company hereunder shall be in addition to any liability that the Company may have, at common law or otherwise, and shall be binding on its successors and permitted assigns. The obligations of the Company hereunder cannot be assigned without the prior written consent of Centerview.

8.    Prior to or at the time a public announcement is made concerning the Company entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth herein, the Company will notify Centerview in writing thereof and, if requested by Centerview, shall use commercially reasonable efforts to arrange in connection therewith alternative means of providing for the obligations of the Company set forth herein.

9.    The terms of this letter agreement shall apply to all services provided by Centerview to the Committee in connection with the matters contemplated by the Engagement, including those provided prior to the date of this letter agreement. The provisions of this letter agreement shall apply to any subsequent amendment to or modification of the Engagement Agreement, and shall survive the termination or completion of the Engagement. For the avoidance of doubt, the term "Engagement" shall include any services provided by Centerview to the Committee prior to the execution of an Engagement Agreement with the Committee, whether or not such services are described in such Engagement Agreement.