UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>**- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐Affects PG&E Corporation<br>☐Affects Pacific Gas and Electric Company<br>☒Affects both Debtors<br><br>** All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**REPLY DECLARATION OF DINYAR MISTRY IN FURTHER SUPPORT OF CORRECTED MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 503(c) FOR ENTRY OF AN ORDER (I) APPROVING SHORT-TERM INCENTIVE PLAN AND (II) GRANTING RELATED RELIEF**<br><br>Related Doc: Dkt. No. 806. |

I, Dinyar Mistry, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

1. I am the Senior Vice President of Human Resources and Chief Diversity Officer of PG&E Corporation and Pacific Gas and Electric Company (collectively, "**PG&E**" or the "**Debtors**"), and have served in my current role since 2016. In my current capacity as Senior Vice President of Human Resources and Chief Diversity Officer, my duties include oversight of the Debtors' talent acquisition, engagement and retention, compensation programs, employee development and training, labor relations, and diversity and inclusion programs. Since joining PG&E in 1994, I have held numerous positions, including Vice President of Regulation and Rates, Vice President of Internal Audit and Compliance, and Controller. I hold a Bachelor of Commerce in accounting and financial management from Bombay University, a Master of

Business Administration from Texas Christian University, and a Master of Science in taxation from Golden Gate University. I am registered as a Certified Public Accountant in the State of California.

2. I am knowledgeable and familiar with the Debtors' day-to-day operations and, specifically, the Debtors' employee benefits and compensation programs, and the processes by which they are administered, developed and approved. I am also generally familiar with the compensation practices of the Debtors' peer companies in the utility industry. I am authorized to submit this Reply Declaration (the "**Reply Declaration**") on behalf of the Debtors in support of the *Corrected Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, and 503(c) for Entry of an Order (I) Approving Short-Term Incentive Plan and (II) Granting Related Relief* (the "**2019 STIP Motion**").

3. The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' other employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify to the facts set forth in this Declaration.

4. I am familiar with the Assessment of Pacific Gas and Electric Corporation and Pacific Gas and Electric Company's Safety Culture prepared for the California Public Utilities Commission dated May 8, 2017 (the "**NorthStar Report**") and prepared by NorthStar Consulting Group ("**NorthStar**"). An excerpt from the NorthStar Report is attached as Exhibit C-22 to the Declaration of Catherine E. Woltering filed by the TCC in opposition to the 2019 STIP Motion. The NorthStar Report was prepared nearly two years ago based on information provided to NorthStar concerning the STIP the Debtors considered for 2017.

5. While the TCC refers to the NorthStar Report for certain matters, it neglects to mention certain important conclusions set forth in the NorthStar Report as follows:

- The NorthStar Report states that "PG&E made two significant changes in the early years following San Bruno to drive improvements in [its] safety culture: 1) the modification of discipline policies and 2) the emphasis on speaking up for

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

safety." These measures included "encouraging management and employees to report safety issues and to have open dialogue regarding potential safety concerns." NorthStar Report at I-6.

- The NorthStar Report found that "PG&E executive management is committed to safety" and the Northstar Report observed a similar "commitment to safety among field employees." *Id.* at I-6.
- The NorthStar Report observed that PG&E had increased the weighting of safety measures in its STIP from 10 percent in 2011 to "the current level of 50 percent." *Id.* at VII-12.
- The NorthStar Report stated that the "50 percent weighting [of safety measures] is considerably higher than typical in the utility industry." *Id.* at VII-12 (emphasis added).

6. One section of the NorthStar Report addressed "Compensation and Performance Management." The NorthStar Report included in that section certain recommendations relating to compensation and performance management. These recommendations are set forth in a chart on page I-14 of the NorthStar Report.

7. The TCC in its Objection to the 2019 STIP Motion discusses three of the NorthStar Report recommendations relating to compensation and performance management and highlights those three and a fourth in its attached excerpted exhibit to the Objection. Each of these four recommendations are either inapplicable to the 2019 STIP or merely requires the Compensation Committee to "reevaluate" or "revisit" certain elements of the STIP, rather than require that the recommendations be implemented.

8. My team in the Total Rewards group at the Debtors who were principally responsible for designing the 2019 STIP with WTW, and the Compensation Committee which evaluated and approved the 2019 STIP, considered the NorthStar Report, including complying with the recommendations made in the NorthStar Report relating to compensation and performance management as they pertain to the STIP.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

9. Specifically, the first NorthStar Report recommendation highlighted by the TCC, item VII-1, states that "[n]one of the [key performance indicators] currently considered for use in measuring safety culture should be included as an incentive measure. . . ." The NorthStar Report recommendation goes on to state: "[i]ncentives tied to employee submittals[1] will ensure targets are met and may minimize the value of the submittals." Consistent with the NorthStar Report recommendation, the Debtors did not include any such metrics in their 2018 and 2019 STIPs.

10. The second NorthStar Report recommendation highlighted by the TCC, item VII-4, states that the Debtors should "[r]eevaluate the appropriateness of the Earnings from Operations component of the STIP. . . ." As is clear from the quoted language, this recommendation *does not require* the Debtors to remove the Earnings from Operations component from the STIP, but simply that the Debtors reevaluate this metric. The Debtors, including the Compensation Committee, in full compliance with the recommendation, reevaluated the use of the Earnings from Operations metric in light of the NorthStar Report before using that metric in the 2019 STIP, and, indeed, consulted with their compensation consultant, WTW, with respect to the same.

11. The Debtors concluded that, after the reevaluation, the Earnings from Operations component of the 2019 STIP was appropriate because, among other things, it is the same metric used to explain the financial performance of the Debtors to investors.

12. The third NorthStar Report recommendation referred to by the TCC in its Objection, item VII-5, requires the Debtors to "[r]evisit all STIP metrics and targets in light of the enterprise-wide safety plan recommended by NorthStar." One specific item discussed in this recommendation is to "include a contractor safety metric in the STIP." Although this recommendation also does not *require* the Debtors to change the metrics and targets in the 2019

[1] "Employee submittals" include things such as self-reporting as to an injury or individual employee perception surveys which are recognized to have the potential, when included in an incentive plan, to be underreported, and, therefore, considered to be an unreliable incentive plan metric.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

STIP, in fact, since 2017, the STIP metrics have changed and include two new metrics—namely, the Enhanced Vegetation Management and System Hardening metrics—that are designed to incentivize employees with respect to fire mitigation. Additionally, the Serious Injuries and Fatalities ("**SIF**') Corrective Action Index in the 2019 STIP includes contractor SIF actual events.

13. The fourth NorthStar Report recommendation referred to by the TCC, item VII-6, requires that the Debtors develop "a more robust and comprehensive set of BPR metrics addressing all aspects of safety. . . ." This recommendation does not relate to the STIP or compensation. Instead, it relates to the Debtors' monthly Business Plan Review by senior management that has no relationship to compensation matters.

14. Based on the foregoing and my participation in the development and formulation of the 2019 STIP, I believe that the Debtors complied with all the recommendations set forth in the NorthStar Report relating to compensation and performance management as they pertain to the 2019 STIP.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct.

Dated: April 3, 2019

San Francisco, California

Dinyar Mistry
Senior Vice President of Human Resources
and Chief Diversity Officer
PG&E Corporation and Pacific Gas and
Electric Company

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119