# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

```
UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
    VS.                          )          NO. CR 14-00175 WHA
                                 )
PACIFIC GAS AND ELECTRIC         )
COMPANY,                         )
                                 )
            Defendant.           )
_____ )
```

San Francisco, California
Tuesday, April 2, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                    DAVID L. ANDERSON
                    United States Attorney
                    450 Golden Gate Avenue
                    San Francisco, California  94102
        BY:  **HALLIE M. HOFFMAN**
             **PHILIP A. KOPCZYNSKI**
             **ASSISTANT UNITED STATES ATTORNEYS**

                    DAVID L. ANDERSON
                    United States Attorney
                    150 Almaden Boulevard - Suite 900
                    San Jose, California  95113
        BY:  **JEFFREY B. SCHENK**
              **ASSISTANT UNITED STATES ATTORNEY**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

Case: 19-30088   Doc# 1273-1   Filed: 04/08/19   Entered: 04/08/19 11:42:22   Page 2 of 26

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendant:

 3                       JENNER & BLOCK
                         353 North Clark Street
 4                       Chicago, Illinois  60654
                 BY:    REID J. SCHAR, ATTORNEY AT LAW
 5
                         CLARENCE, DYER & COHEN LLP
 6                       899 Ellis Street
                         San Francisco, California  94109
 7               BY:    KATE DYER
                         ATTORNEY AT LAW
 8
                         CRAVATH, SWAINE & MOORE LLP
 9                       825 Eigth Avenue
                         New York, New York  10019
10               BY:    KEVIN ORSINI
                         ATTORNEY AT LAW
11
     Also Present:       John Simon, CEO, PG&E
12                       Mark Filip, Monitor
                         Christopher Keegan, Monitor
13                       Charles Kalil, Monitor
                         Jennifer Hutchings, U.S. Probation
14                       Britt K. Strottman, Baron & Budd, P.C.,
                            City of San Bruno
15                       Connie Jackson, Former City Manager,
                            City of San Bruno
16                       Arocles Aguilar, General Counsel,
                            California PUC
17                       Lee Palmer, Deputy Director Safety &
                            Enforcement Division, California PUC
18                       Christofer Nolan, Legal Division,
                            California PUC
19                       Frank Pitre, Attorney at Law
                         Dario deGhetaldi, Attorney at Law
20                       Amanda L. Riddle, Attorney at Law

21

22

23

24

25
```

| | |
|---|---|
| 1 | **Tuesday - April 2, 2019**                            **12:00 p.m.** |

1  **Tuesday - April 2, 2019**                          **12:00 p.m.**

2                          **P R O C E E D I N G S**

3                              **---oOo---**

4          **THE CLERK:**  Calling Criminal Action 14-175,

5  United States versus Pacific Gas and Electric Company.

6      Counsel, please step forward and state your appearances

7  for the record.

8          **MS. HOFFMAN:**  Good morning, Your Honor.  Hallie

9  Hoffman for the Government.

10          **MR. KOPCZYNSKI:**  Philip Kopczynski for the Government.

11          **MR. SCHENK:**  And Jeff Schenk for the Government.  Good

12  afternoon.

13          **THE COURT:**  Thank you to all three.

14      And?

15          **THE PROBATION OFFICER:**  Good afternoon, Your Honor.

16  Jennifer Hutchings with Probation.

17          **THE COURT:**  Okay.  And welcome to you.

18          **MR. SCHAR:**  Good afternoon, Your Honor.  Reid Schar on

19  behalf of PG&E joined by John Simon, acting CEO, and several

20  others.

21          **MS. DYER:**  Kate Dyer on behalf of PG&E.

22          **MR. ORSINI:**  Good morning, Your Honor.  Kevin Orsini

23  on behalf of PG&E.

24          **THE COURT:**  Okay.  Welcome to all of you.

25      And is somebody here from PG&E?

1          **MR. SCHAR:**  Yes, Your Honor.  The acting CEO,

2     Mr. Simon, is present, as are several others.

3          **THE COURT:**  All right.  Welcome back.  Thank you for

4     coming today, Mr. Simon.

5          **MR. SIMON:**  Thank you.

6          **THE COURT:**  All right.  We're here on a second Order

7     to Show Cause concerning whether PG&E's condition of probation

8     shouldn't be modified, and I sent that order out sometime ago,

9     back in early March, and laid out the reasons; and then the

10    Government responded, PG&E responded, and then there were

11    comments from the PUC among other comments.  So thank you.

12         Is anyone here from the PUC by the way?

13         **MS. AGUILAR:**  Yes.

14         **THE COURT:**  If so -- okay.

15         And your name, please?

16         **MS. AGUILAR:**  Arocles Aguilar.  I'm general counsel.

17         **THE COURT:**  Did you get the name?

18         **THE REPORTER:**  I did, Your Honor.

19         **THE COURT:**  Okay.  Very good.

20         Thank you for being here.

21         Okay.  So let's everyone have a seat.

22         I think the way to proceed on this is to hear in a moment

23    from PG&E.  And just to set the stage for a moment, we're all

24    here because originally there was a terrible explosion in

25    San Bruno.

1    Is anyone here from San Bruno today?

2                    (Hand raised.)

3         **THE COURT:** Yes, back there. Okay. Thank you.

4         **MS. STROTTMAN:** Good afternoon. Britt Strottman.

5         **THE COURT:** Say your name again.

6         **MS. STROTTMAN:** Britt Strottman.

7         **THE COURT:** Thank you.

8    And eight people were killed, a lot of houses ruined, and

9    it was an explosion caused by the PG&E gas line. That

10   eventually led to a prosecution by Ms. Hoffman and her team,

11   and PG&E was convicted on six felony counts for -- not

12   precisely for the explosion, but for the recordkeeping and

13   obstruction of justice arising -- leading up to it and arising

14   out of it.

15   So you can't put a corporation in prison so the best you

16   can do is probation and a fine, both of which The Honorable

17   Thelton Henderson imposed as one of the last things on his long

18   and illustrative career as a judge. Then the case was

19   reassigned to me to supervise the probation.

20   Now, what has happened since then is that we have had two

21   unprecedented fire seasons, 2017 and 2018, in California in

22   which 3 percent -- if you add it up, 3 percent of the acreage

23   of the entire state burned up in wildfires in just two years,

24   two seasons. Just imagine that. That's a phenomenal number.

25   Now, PG&E is not responsible for all of that. I want to

make that very clear. PG&E did not start all of those fires, but PG&E started a large number of them. In 2017 the record and the evidence is quite clear that PG&E started more than a dozen fires that we call them Wine Country fires, the North County fires, North Bay fires, and it all arose out of the wind, the Santa Ana winds. There's nothing unusual about that. We've had them for over 100 years in California; but the remarkable thing about them is that they come in the dry part of the year, late in the season.

And if a tree gets blown onto the lines, which happens and did happen quite frequently because of those high winds, it knocks down the line or causes a spark if two of those lines touch. They're uninsulated out in the chaparral. And that's nothing unusual about that, that's the way power lines are; but if they touch, a big spark flies off, lands in the grass, and that grass is dry. And what do you think happens? A big fire.

Now, this was the reason that the -- one of the reasons that the California legislature some decades ago adopted rules and statutes that require trees to be removed from near the lines, power lines, distribution lines, so that when the wind comes, it won't fall onto the lines. It's quite simple.

But what we see has happened, and it's quite clear, PG&E over several years allowed the trees that needed to be removed to be built up and did not remove them, did not trim them so that we wound up with a large number of trees that should have

1  been removed by PG&E but weren't.  And that was a major

2  contributing factor, maybe the single-biggest factor, in

3  causing the fires in 2017 and 2018 in Northern California.

4      So as the judge who is supervising PG&E arising out of a

5  different problem, the gas distribution system but in a way a

6  similar problem because it's electricity but it's also

7  protecting the public from further crimes and wrongs of PG&E,

8  back in November I began asking questions about whether the

9  probation and the conditions of probation shouldn't be extended

10  to protect the public from really rampant wrongdoing by PG&E on

11  the electrical distribution front.

12      And as we've gotten into the evidence, and I've studied

13  quite a lot of it, again I want to say it's quite clear that

14  PG&E pumped out $4.5 billion in the last five years in

15  dividends and let the tree budget wither so that a lot of trees

16  that should have been taken down were not.

17      So the conditions of probation that I have proposed are

18  directed at that.  Initially I had proposed more sweeping

19  changes, but PG&E said it would take -- I don't really believe

20  it, but they said it would take something like 18 years to

21  comply with the sweeping changes that the Court suggested.

22  This would have been trimming trees and branches that might

23  cause problems.

24      So I acquiesced and just simply am going to require,

25  subject to this hearing, that PG&E comply with the state law,

and that PG&E comply with its own wildfire prevention plan that it now has before the PUC, among other smaller issues, but those are the main things.

This is a crisis, a crisis that California faces on these wildfires, and PG&E is the single-most culpable entity in the mix. Not the only one. There's blame to go around for others too, but PG&E has started more than -- way more than its share of these fires.

In the wintertime when it's wet, it's okay to start a fire because it won't go more than a few feet; but in the summertime when the Santa Ana -- and the fall when the Santa Ana winds are blowing hard, it's dry as can be and those fires take off, and they are hard to stop.

All right. So we're here, and I'm going to let PG&E go first. I've already read your brief, and I want to give you a full opportunity to try to talk me out of these conditions that I have proposed.

Before we do that, I did want to ask. Is the monitor here or a representative of the monitor present?

MR. FILIP: Yes, Your Honor.

THE COURT: Oh, there you are right there. Oh, I see. I was looking in the wrong place. Thank you for being here today. Make your appearance, please.

MR. FILIP: Mark Filip, judicial monitor.

THE COURT: Excellent. Thank you.

1    Let's hear now from PG&E.  The floor is yours.

2         **MR. SCHAR:**  Thank you, Your Honor.  I'll be brief.

3    We're not going to try to talk you out of these

4    conditions.  That's our goal.  We've laid out our views in the

5    filing.  We fully endorse Numbers 3 and 4 in terms of the

6    monitor's involvement and understand that.

7         Number 5 there could be concerns about somewhere down the

8    road, but we're not objecting to it today.

9         And then Number 1 and Number 2, which are abiding by the

10   law, we fully intend to comply with the law.

11        I think what we were really seeking in that regard was a

12   bit of clarification, which may have been intuitive as part of

13   what you were saying in the conditions; but obviously

14   compliance with the law is a highly technical question, and I

15   believe Cal Fire has written to Your Honor about how it

16   requires a fair amount of expert judgment.

17        And so our presumption and what we were asking for

18   clarification on was simply that in the first instance, to the

19   extent that there are violations of these, that's determined by

20   the regulatory entity that's responsible for going out and

21   checking the work and making sure.

22        **THE COURT:**  No, that's not going to be.  It's going to

23   be your old federal judge.  If there's a condition that these

24   people -- Cal Fire will be busy putting out the fires and it

25   will be years before they can get around to adjudicating these.

1  So it's going to be your federal judge who's going to

2  adjudicate any violations of the conditions of probation.

3       So I'm not going to go any further than requiring

4  compliance with the state law and your own wildfire plan, and I

5  do accept Cal Fire's interpretation of the Public Resource

6  Code.  So I'm conceding all of that, but at least that bare

7  minimum should be honored by PG&E.

8       And like a lot of other things, I am capable of deciding

9  whether or not the law has been violated.  So I'm rejecting

10 that suggestion.

11       **MR. SCHAR:**  Okay.  We appreciate that, Your Honor.

12 We'll stand on that.

13       Then I think the only other issue that we had raised, and

14 I think it was raised perhaps by the U.S. Attorney's Office and

15 the CPUC as well, is the wildfire mitigation plan is still in

16 the process of being reviewed and there isn't a final one.  So,

17 again, we would simply ask that whatever the order be, it take

18 into account that that plan is still in flux.

19       **THE COURT:**  That's a fair point.  I did -- I will make

20 it clear that the plan as adopted by the CPUC will be the

21 operative document, not necessarily the one that you submitted.

22 It could be changed to make it stricter or looser.  I don't

23 know yet.  But I understand that it would -- you ought to just

24 have one plan, and that whatever the PUC comes up with is okay

25 with me.

1    But that was on the assumption, which I think still is

2    valid, that the CPUC is going to make its decision by I believe

3    it was May 13th.  Isn't that the statutory deadline?

4            **MR. SCHAR:**  I believe it is in May, Your Honor.

5            **THE COURT:**  All right.  Sometime in May.

6    Well, then, that would be fine because then we will know

7    going into the fire season what it is that you're being -- that

8    you yourself and the PUC are holding you to.

9    So, anyway, I agree with you on that point.

10           **MR. SCHAR:**  And as part of that, Your Honor, and maybe

11   this will be addressed in, you know, further motion practice in

12   case it needs to be amended, but I think one of the points that

13   was also made is, as this plan goes out multiple years, it

14   could be that there are more efficient and better ways of doing

15   things and we would talk to the CPUC about that.

16   And if that becomes the case, I don't know if it would

17   turn into an amended plan or whatever, but we would obviously

18   revisit with Your Honor if we think there are improvements to

19   the plan be made.  It is not a static situation.  We just want

20   to make sure there's an opportunity for us to be heard on that.

21           **THE COURT:**  Sure.  That's reasonable.  If -- but --

22   all right.  That's a reasonable request, and I plan to be

23   reasonable on that.

24   But let's say that you say in your plan you're going to

25   trim X thousand trees this fire season, which, you know, your

plan does have numbers like that, and then you get to the end

of it and you've only done half of that and then you run to the

PUC and they rubber stamp a request to reduce that number down

to one half, I don't know if I could go along with that or not.

Maybe.

I mean, I'm giving you -- that's my concern --

**MR. SCHAR:** Sure.

**THE COURT:** -- is that PG&E and the PUC sometimes

agree more than maybe they should, and so I may have to say at

some point, "No. I thought you were going to cut twice as many

trees as you say -- as you wound up cutting."

I don't know. I shouldn't say that about the PUC. I

betcha they're over there doing a great job. So I take back

any suggestion that -- but, nevertheless, reasonable

adjustments to your plan, if the PUC approves them, I'm going

to go along with that on the mitigation plan. I would only be

concerned if there was a major shortfall. Then we'd have to

have another discussion.

**MR. SCHAR:** Understood, Your Honor. And if something

like that were to happen, we would expect that we would brief

you fully and you would take a fair and objective view of it

and make your determination.

**THE COURT:** Yes.

Now, on the compliance with the state law, you've got to

do that. I'm not cutting you any slack on compliance -- full

1   compliance with the state law.  So if it turns out that PG&E

2   hasn't cut the right trees, we're going to have hearings to

3   finally get to the bottom of what happened.

4           **MR. SCHAR:**  And, Your Honor --

5           **THE COURT:**  Maybe there would be a violation of a

6   condition of probation.

7           **MR. SCHAR:**  We appreciate that and I think as we laid

8   out in our papers, we have every intention of complying with

9   the law.  We've also, I think, laid out in our papers that

10  there are a lot of trees out there and we don't have eyes on

11  all of them and every minute, but we'll -- you know, this

12  will -- hopefully it will never become an issue and we'll never

13  see you on it.  If it does --

14          **THE COURT:**  This is a problem of your own making.  A

15  lot of money went out in dividends that should have gone to the

16  tree budget.  This is a problem of your own making and you've

17  got to undo this problem.  You've got to address it and get

18  back square with the people of the State of California that

19  depend on you to do the job safely.

20       Now, before we go any further, I don't want to interrupt

21  you here, I did, so please continue.

22          **MR. SCHAR:**  No, Your Honor.  I think that we've

23  addressed each of the various terms; and beyond that, we'd

24  stand on the briefs.

25          **THE COURT:**  All right.

1    Let me say this to PG&E:  One thing we're putting off for

2  the time being is this problem of de-energization, and this was

3  raised earlier and I'm not making any ruling on this now.  I

4  want to see what happens with the PUC on this front.  I do

5  recognize it is somewhat more complicated maybe than I have

6  described it in the past.

7    It occurred to me that PG&E might have wanted me -- and

8  you should think about this -- as the judge to impose it on you

9  so that you could blame the judge when communities complain

10  that their power has been turned off, but you didn't go that

11  far.  And I may still do it at some future point.

12    Here is the basic thing:  To my mind, when you had these

13  high winds and the Santa Ana winds and PG&E is sitting there

14  thinking "Will our power lines hold up?  Will the trees fall on

15  the lines?  Will we have another Butte County fire?  Will PG&E

16  be the cause of all that devastation?", the prudent thing to do

17  if you're not certain is to turn the power off till the winds

18  subside and then go check the lines afterwards to make sure

19  that no trees have fallen on them.  That's the prudent thing to

20  do.

21    It's not prudent in my view, it's reckless in my view, to

22  keep the power on under those circumstances.  However, you've

23  made arguments against what I just said, and the PUC has that

24  piece of it under consideration.

25    Still, I suggest to you that I'm willing to take the heat.

PG&E could blame me and say "That federal judge made us turn
off the power."  If you want that condition, you should be
talking to Probation and we'll have another discussion, and I
think you should -- it would be a good condition of probation.

Then when the communities complain that somebody's
power -- they lost everything in their refrigerator or all the
ice cream melted -- yes, that's an inconvenience but that is
not the loss of life -- and you could say, "That judge told us
we had to turn off the power in these circumstances."  And then
people could complain to me, and I'm willing to take that heat.

So you think about whether or not that wouldn't be a way
to go, but we're not there yet.  On de-energization, I think
we're going to take that as a separate problem, and for right
now we're just dealing with the trees that are falling on the
lines and causing these fires.

Did you have more to say?

**MR. SCHAR:**  No, Your Honor.  I appreciate those
comments, and certainly we will take them back and discuss them
with the company.

**THE COURT:**  All right.  Did the Government wish to be
heard?

**MS. HOFFMAN:**  Thank you, Your Honor.  The Government
would just submit on the papers that it filed.

**THE COURT:**  Thank you.

How about any of the victims from San Bruno?  Would you

1  like to be heard?

2  (No response.)

3  **THE COURT:** Anyone else want to be heard?

4  (Hand raised.)

5  **THE COURT:** Yes, sir? Who are you?

6  **MR. deGHETALDI:** My name is Dario deGhetaldi.

7  **THE COURT:** Now, did you file a brief?

8  **MR. deGHETALDI:** Dario deGhetaldi.

9  I did, Your Honor.

10  **THE COURT:** All right. Tell me -- summarize what it

11  is. If you're just going to make a closing argument on behalf

12  of all the people that have been hurt by PG&E, I've read the

13  papers.

14  **MR. deGHETALDI:** Okay. I'm not.

15  **THE COURT:** What do you want to say?

16  **MR. deGHETALDI:** My name is Dario deGhetaldi.

17  **THE COURT:** Yes.

18  **MR. deGHETALDI:** And I just have a couple of things I

19  would want to say.

20  You've read the papers. I've filed a brief. It was a

21  couple of hours late because I couldn't get into PACER.

22  **THE COURT:** That doesn't matter. Is this the one that

23  starts off with the Fresno story?

24  **MR. deGHETALDI:** Yes, Your Honor.

25  **THE COURT:** Yes. I'm fully familiar with it.

1    MR. deGHETALDI:  I just want to say, Your Honor, that

2  I would hope in the future that the Court looks at other issues

3  aside from the vegetation management issues.  The Camp fire was

4  not caused by vegetation management.  It was caused by

5  infrastructure failure.  It was caused by hundred-year-old

6  towers and components, and we've laid out how that --

7    THE COURT:  You know, that picture, I've seen that

8  tower in your brief and I know something about power lines.  I

9  don't believe that tower was 100 years old.

10    MR. deGHETALDI:  Well, that's --

11    THE COURT:  No.  They didn't come along with those

12  kind of towers until about 60 years ago.

13    MR. deGHETALDI:  That's what we've read, Your Honor.

14  We haven't had a chance --

15    THE COURT:  I don't believe that that's a

16  hundred-year-old tower.

17    MR. deGHETALDI:  It may not be, but that's to the best

18  of our information.  We haven't been able to do discovery.

19    I would, though, Your Honor, like to go back to San Bruno.

20  Our office represented 45 families in that case.  There are a

21  number of other attorneys here who have represented families,

22  individuals, going back to 2010 for the San Bruno fire, the

23  Butte County -- the Butte fire in Calaveras County in 2015, the

24  North Bay fires, and the Camp fires.

25    So one thing that I think that the Court should consider

1   as well is the effect of the bankruptcy stay on the San Bruno

2   settlement, derivative case settlement.  That order of the

3   San Mateo Superior Court, the judgment, and the settlement in

4   that case is stayed because of the bankruptcy.

5           **THE COURT:**  What do you want me to do about that?

6           **MR. deGHETALDI:**  I would like to make that, as I said

7   in the papers, an additional condition of probation, that PG&E

8   continue to comply with that stipulation and that judgment

9   based on that stipulation.

10     And the other thing, Your Honor, is --

11         **THE COURT:**  I have to give notice -- hold a hearing,

12   give notice, proposed conditions.  I just can't do this

13   willy-nilly.  It has to be done through a process.

14         **MR. deGHETALDI:**  I understand, Your Honor, and what

15   I'm trying to say is that we believe that this process should

16   continue and not end with today, and that is one of the things

17   that we think that the Court should look at in the future.

18     The other problem relates to PG&E's mark-and-locate

19   program with respect to their gas lines.  The CPUC and the

20   Safety Enforcement Division of the CPUC has been looking at

21   that.  There have been reports issued.  There was a new one

22   just issued five days ago, five or six days ago, that folds in

23   violations of PG&E's underground electrical distribution system

24   with PG&E's underground gas line distribution issues; and

25   PG&E's response to that is due tomorrow, I believe.

1    So there are a number of other issues that I think are

2  critical that the Court consider in the future, and I would

3  hope that the Court takes the brief that I filed and the

4  evidence in there as a possible road map to future appearances.

5        **THE COURT:**  All right.  I did read it and I'm going to

6  refer -- you had several things.  You had the Fresno where you

7  allege that the pipeline was 4 inches below the concrete and

8  it's supposed to be 30, and a front-end loader gouged out the

9  thing and caused a big explosion.

10    You've have the mark-and-locate.  You've got the problem

11  with the San Mateo judgment that the bankruptcy has

12  interrupted.

13    I'm going to refer all that to the monitor and let the

14  monitor evaluate that evidence and Probation; and if they

15  decide that there is something there that I should be looking

16  at by way of further conditions, I will at least do that much.

17        **MR. deGHETALDI:**  Thank you, Your Honor.

18    And we would also ask -- one of the other things that we

19  had asked for is that the monitor's report be made public.  I

20  don't see any reason why it shouldn't be.

21        **THE COURT:**  That's a fair point and I'll consider

22  that.

23        **MR. deGHETALDI:**  Thank you.

24        **THE COURT:**  Does anybody have an objection to making

25  the monitor's reports public?

1     **MR. FILIP:**  Your Honor, I'd like a chance to be heard

2  on that in terms of the effect that would have on our ability

3  to speak to people, potentially whistleblowers.

4     **THE COURT:**  All right.  In that event, what we will do

5  is everybody has two weeks to submit whatever you want on the

6  subject of whether or not those reports should be public,

7  including Government and PG&E.

8     Now, procedurally I have not yet -- this is not the

9  sentencing on the violation of probation that we still have

10  hanging fire.  I want to be clear about that.  This is a

11  stand-alone procedure.  I want that to be clear.  So we have

12  not yet done the sentencing on that violation.

13     But procedurally do you want me to read these out loud to

14  Mr. Simon so that he knows or is it sufficient for me to just

15  adopt what's in the Order to Show Cause verbatim?

16     **MR. SCHAR:**  You do not need to read it, Your Honor.

17  He's familiar with it.

18     **THE COURT:**  All right.  Mr. Simon, are you familiar

19  with these proposed conditions?

20     **MR. SIMON:**  Yes.

21     **THE COURT:**  All right.  Well, I'm going to adopt all

22  of them.  And my goal is -- I know I've been a little tough on

23  your company, but the truth is I want to see you succeed and I

24  want to see the people of California safe in their homes.  I

25  know that's probably what you want, but we've got to get there.

1    And by the end of -- we've got a fire season coming up

2 quick, and by December we'll be back here and we will know how

3 many fires your company started, and I'm hoping the answer is

4 zero. That's what I want --

5    **MR. SIMON:** Me too, Judge.

6    **THE COURT:** -- and that's what the people of

7 California want. We've got other fires to put out too, but

8 PG&E shouldn't be starting these fires. So that's where I hope

9 this is headed, in a good direction.

10    Okay. So those are all adopted.

11    Now, let me -- you may have a seat. Thank you, Mr. Simon.

12    I have a question for you that you can brief also in the

13 next two weeks. This will probably not be music to your ears,

14 but as a condition, can I extend the -- you got the maximum

15 probation already, five years; but on account of the violation,

16 can I, say, extend it one more year to six years? So that you

17 would be under my supervision a little longer on account of the

18 violation that we've already adjudicated. I don't know the

19 answer to that, but I raise that for you because we do have to

20 set a date for sentencing on that probation violation.

21    And then when I get your answers to that, I think we'll

22 set a date sometime in the next couple months so that we'll be

23 back here just on that one issue. So two weeks to file a brief

24 on that topic.

25    Have I left anything out, Ms. Hoffman?

1    MS. HOFFMAN:  Your Honor, there was a scheduled status

2 hearing in two weeks from now about whether or not PG&E has

3 satisfied all their community service obligations.  I just

4 wanted to clarify whether or not that was still going to

5 happen.

6    THE COURT:  What is the answer?  Have they done what

7 they're supposed to do on that?

8    MS. HOFFMAN:  Your Honor, I believe so, but we have

9 yet to --

10    THE PROBATION OFFICER:  They're still working on it,

11 Your Honor.  I sent Your Honor the 2018 year-end review.

12    THE COURT:  Let's put that off until we do the

13 sentencing hearing.  How's that?  Does that make sense.

14    MS. HOFFMAN:  Thank you.

15    THE COURT:  Is that all right with you?

16    MR. SCHAR:  Yes.

17    THE COURT:  All right.  So we don't need to have that

18 hearing.

19    What else do I need to address?

20    MS. HOFFMAN:  I believe that's it, Your Honor.

21    THE COURT:  The representative from San Bruno, would

22 you stand up again?  Is everything on your front -- why don't

23 you come up here so you don't have to shout; and as you're

24 coming up, you can compose your answer.

25    My question is:  Is everything on the probation going okay

1   on the things that directly concern -- please come up here --

2   that directly concern San Bruno?  Why don't you come up here

3   and give us your name, please.

4           MS. JACKSON:  Good afternoon.  My name is Connie

5   Jackson.  I'm the former city manager of the City of San Bruno.

6           THE COURT:  Excellent.

7       You are?

8           MS. STROTTMAN:  Good afternoon.  Britt Strottman, and

9   I have my apologies from Mark Zafferano, who's the City

10  Attorney, who could not be here today.  So I'm here on his

11  behalf.

12          THE COURT:  Good.  Welcome to both of you.

13          MS. STROTTMAN:  Thank you.

14          THE COURT:  What do you think of how the probation is

15  going?

16          MS. JACKSON:  We're pleased with the judge's

17  consideration of the various issues.  We agree with the terms

18  of probation that you have approved and adopted.

19      I would just say that the City of San Bruno remains

20  concerned and interested in the completion of the community

21  service hours as was originally imposed by the Court and would

22  look forward to the opportunity to engage further with the

23  Court about that.

24          THE COURT:  Well, if there's any shortfall, we will

25  fix it; but my understanding is that PG&E, last time I checked

1  in, was on track to meet its obligation there.  So if that's

2  not true, we will address it at the next hearing.  Is that

3  okay?

4          **MS. STROTTMAN:**  Yeah, that seems appropriate.  Thank

5  you.

6          **MS. JACKSON:**  Yes.

7          **THE COURT:**  All right.  Okay.

8          **MS. STROTTMAN:**  Thank you.

9          **THE COURT:**  Thank you very much.

10          **MS. JACKSON:**  Thank you.

11          **THE COURT:**  All right.  Does PG&E have anything else

12  it wishes to raise today?

13          **MR. SCHAR:**  No, Your Honor.

14          **THE COURT:**  How about the monitor?

15          **MS. HOFFMAN0:**  No, sir.

16          **THE COURT:**  Ms. Hoffman?

17          **MS. HOFFMAN:**  No.  Thank you, Your Honor.

18          **THE COURT:**  All right.  So these new conditions, I'm

19  going to sign an order that adopts them, and we'll be holding

20  our breath for the next fire season.  I really want to see PG&E

21  succeed on this.

22      So good luck.  Thank you.

23          (Proceedings adjourned at 12:33 p.m.)

24          ---oOo---

25

1
2
3          **CERTIFICATE OF REPORTER**
4              I certify that the foregoing is a correct transcript
5      from the record of proceedings in the above-entitled matter.
6
7      DATE:    Thursday, April 4, 2019
8
9
10
11      _____
12          Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                      U.S. Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25