David W. Wessel, Esq.   Bar # 115222
service@efronlawfirm.com
LAW OFFICES OF BORIS E. EFRON
130 Portola Road
Portola Valley, CA 94028-7825
Telephone: (650) 851-8880
Facsimile: (650) 851-3001

Attorneys for Creditors
MARINA GELMAN and MIKHAIL GELMAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>---<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-3008 (DM). | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case - Jointly Administered)<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND ABSTENTION PURSUANT TO 28 U.S.C. 1334(c)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: May 9, 2019<br>Time: 9:30 a.m.<br>Ctrm: Hon. Dennis Montali<br>450 Golden Gate Avenue<br>16th Floor, Courtroom 17<br>San Francisco, CA 94102<br><br>Objection Deadline: April 24, 2019<br>At 4:00 Pacific Time |

**MOTION**

MARINA GELMAN and MIKHAIL GELMAN ("the Gelmans"), creditors of the above-named debtor, move for an order:

1

1. Terminating, annulling, modifying, or conditioning the automatic stay of 11 U.S.C. §362(a) to allow the Gelmans to prosecute to judgment their lawsuit for personal injury against the Pacific Gas and Electric Company ("PG&E"), the City and County of San Francisco ("San Francisco"), and Blue Plantain, LLC, pending in the San Francisco County Superior Court, Case No. CGC-17-556763 ("the Lawsuit");

2. Abstaining pursuant to 28 U.S.C. § 1334(c)(1);

3. Providing that the 14-day stay prescribed by Federal Bankruptcy Rule 4001(a)(3) shall not apply to the Court's order issued pursuant to this motion; and

4. For such other and further relief as this Court deems just and proper pursuant to this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. STATEMENT OF THE PRINCIPLE ISSUES TO BE DECIDED:

Whether this Court should lift the automatic stay to allow the Gelmans to prosecute the Lawsuit to judgment.

Whether the Court should abstain and let the Lawsuit remain in the Superior Court.

II. STATEMENT OF FACTS[1]

The Gelmans, who are married, contend in the Lawsuit:

On January 26, 2016, Marina tripped on the PG&E vault in the San Francisco sidewalk in front of the Palm House Restaurant owned by Blue Plantain, LLC. She tripped because of a hole in the sidewalk at the corner of the PG&E vault. This was not some trivial defect. It was like a deep golf divot. This is a photo of the divot:

///

///

///

///

///

---

[1] All facts set out here are supported by the Declaration of David W. Wessel in Support of Motion for Relief from the Automatic Stay (the Creditors' Declaration) and the Request for Judicial Notice in Support of Motion for Relief from the Automatic Stay (the "Judicial Notice Request").



The fall shattered Marina's right forearm and caused her other injuries. Mikhail was with Marina. He immediately took her to San Francisco General Hospital. The doctors there tried to treat her fractures without surgery, but within two weeks they had to operate. Because of her injuries Marina developed carpel tunnel syndrome and complex regional pain syndrome in her right upper extremity. She still suffers from those syndromes. She has a constant burning and baking sensation in her right hand, arm, and shoulder. At her deposition she testified:

> My arm is not functioning like it's my arm. It feels like it's not my arm at all. I have a very heavy like baking feeling nonstop inside my arm that somebody like put my arm into the oven and [is] baking it nonstop.

Her right hand is her dominant hand. Her injuries have drastically reduced her ability to use her hand and arm. She testified:

> I cannot do a lot of things. I cannot cook. I cannot – I use a sport bra only. I cannot close my normal bra without help. I cannot wash my hair properly. I cannot brush

3

> my hair. I cannot cut my nails. I cannot use any knife to cut any hard product except very soft, for example, mozzarella.
>
> I cannot – I don't feel it's my hand. It just lives a different life in my body. I always feel it every second.

Because of Marina's significant injuries, her husband has a substantial claim for loss of consortium.

The Gelmans filed the Lawsuit on January 31, 2017. They served PG&E on June 30, 2017. Blue Plantain served its answer to the complaint and its demand for a jury trial on July 14, 2017. San Francisco served its answer to the complaint and its request for jury trial on July 31, 2017. PG&E served its answer on October 10, 2017. None of the defendants admit liability. They each contend the other defendants were at fault. San Francisco and Blue Plantain have cross-complained against PG&E for indemnity.

The parties engaged in a great amount of discovery before PG&E filed for bankruptcy. Each defendant propounded interrogatories and requests for production to each of the Gelmans. PG&E took the deposition of the Gelmans, and Blue Plantain had Marina undergo a medical examination. The Gelmans propounded four sets of interrogatories, two sets of requests for admissions, and three sets of requests for production just to PG&E. PG&E responded to all these requests. The Gelmans propounded similar discovery to San Francisco and Blue Plantain. The Gelmans noticed the deposition of San Francisco, but PG&E filed for bankruptcy before it could be taken. The Gelmans also served their notice for the deposition of PG&E, but PG&E refused to appear and then filed its bankruptcy petition. The Lawsuit was first set for a jury trial on August 27, 2018. The Lawsuit was reset for trial on April 22, 2019 and would have gone to trial on that date, but because of the health of one of the defense attorneys the trial was reset on December 16, 2019.

Marina's claim has a value of $2,300,000. Mikhael's claim for loss of consortium has a value of $200,000. Their claims are unsecured and not entitled to any priority under the Bankruptcy Code. No one has filed proofs of claims for them.

III. ARGUMENT

A. The Court Should Lift the Stay

The Lawsuit involves exclusively questions of California law and only California parties. It is "an action [that] could not have been commenced in a court of the United States absent jurisdiction

4

under" 28 U.S.C. § 1334(c). In *In re Castlerock Properties*, 781 F.2d 159 (9th Cir. 1986), the Court of Appeal said, "A clear congressional policy exists to give state law claimants a right to have claims heard in state court [citing 28 U.S.C. § 1334 (c)]." Lifting the stay would promote that policy and ensure the Gelmans' claims are heard by a court with jurisdiction over all the defendants and all the claims, and which has great experience in dealing with such claims.

A creditor can move for relief from the stay under 11 U.S.C. § 362, which provides this Court "shall grant relief from the stay" on a showing of "cause." 11 U.S.C. § 362 (d). "Cause" is determined on a case-by-case basis. *In re Tucson Estates, Inc*., 912 F.2d 1162, 1166 (9th Cir.1990). In determining whether there is cause to grant relief, courts often consider the factors set out in *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984):

> (1) Whether the relief will result in a partial or complete resolution of the issues;
> (2) The lack of any connection with or interference with the bankruptcy case;
> (3) Whether the foreign proceeding involves the debtor as a fiduciary;
> (4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;
> (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
> (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
> (7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties;
> (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination;
> (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
> (10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties;
> (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and
> (12) The impact of the stay and the "balance of hurt."

40 B.R. at 799–800 (internal citations omitted). See also *In re Plumberex Specialty Prods., Inc*., 311 B.R. 551, 559 (Bankr.C.D.Cal.2004) (adopting the *Curtis* factors and recognizing that courts in other circuits that have done the same). See also *In re Tucson Estates, Inc*., 912 F.2d at 1166-67 (approving similar factors that a court should consider when deciding whether to abstain).

Applying the pertinent *Curtis* factors to the Lawsuit shows this Court should grant relief from stay. Lifting the stay would allow the Lawsuit to continue in a forum that could provide complete resolution of all the issues between the Gelmans and the Lawsuit's defendants. All the defendants are before the Superior Court, while the United States District Court may not be able to exercise jurisdiction over Defendants San Francisco and Blue Plantain. There is no real connection between the Lawsuit and this PG&E bankruptcy case. The Gelmans' claims against PG&E are not related to the wild fire claims that forced PG&E into bankruptcy or to any other claim against PG&E. The Lawsuit is narrow; it is limited to two plaintiffs, three defendants, and one sidewalk defect in San Francisco.

Allowing the Lawsuit to proceed would not interfere with the bankruptcy case. Allowing it to proceed will only help the bankruptcy case. While the San Francisco County Superior Court is not a "specialized tribunal," the Superior Court certainly has a specialty in hearing personal injury cases brought against San Francisco that are based in part on San Francisco law. The Lawsuit involves only state law personal injury claims with which the Superior Court is very experienced. There would be no prejudice to the interests of other creditors, the creditors' committees, or other interested parties. No creditors or parties other than the parties to the Lawsuit have any interest in the Lawsuit. The Gelmans seek only relief from stay to prosecute the Lawsuit to judgment. They do not ask for relief to execute on the judgment. Lifting the stay would benefit the interests of other creditors because the Superior Court, and not this Court or the District Court, would be burdened with the trial of the Gelmans' claims, allowing this Court to deal with other claims.

The interest of judicial economy supports lifting the stay. See *In re Tucson Estates, Inc.* 912 F2d 1162, 1169 (9th Cir. 1990). Much of the litigation has already taken place in the Superior Court. The Lawsuit was filed on January 31, 2017. There has been extensive discovery. The Superior Court action was initially set for trial on August 27, 2018, then reset for trial on April 22, 2019, and then again reset for trial on December 16, 2019. Because the Lawsuit involves exclusively questions of state and San Francisco law, the Superior Court is better equipped than this Court or the District Court to handle the litigation. In the interest of judicial economy alone this Court should lift the stay and abstain.

"The impact of the stay on the parties and the 'balance of the hurt.'" This is perhaps the most important factor. This Court may have no jurisdiction over the codefendants in the Lawsuit. Forcing the Gelmans to proceed separately against PG&E in the District Court and against San Francisco and Blue Plantain in the Superior Court would result in a great injustice to them. See *In re Hoffman,* 33 B. R. 937, 941 (BC WD OK 1983).

The argument may be made that lifting the stay would result in litigation costs to the bankruptcy estate. However, "[o]rdinarily, litigation costs to a bankruptcy estate do not compel a court to stay relief." *In re Santa Clara Cty. Fair Ass'n, Inc*., 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995). The Gelmans are entitled to prosecute their claims. As the bankruptcy court stated in *In re Bock Laundry Machine Company*, 37 B. R. 564 (BC WD OH 1984):

> Requiring the Movants to forego prosecution of their claims until such time as the stay is no longer in effect will effectively deny them an opportunity to be heard. This is especially significant in light of the size and nature of this Chapter 11 case. Removing the stay will not work a significant hardship on the Debtor-In-Possession, inasmuch as it will be made, at some time in the future, to participate in state court. The mere filing of a petition in bankruptcy cannot, in and of itself, erase a plaintiff's claim, their opportunity to litigate, or the fact that a debtor may be liable to the plaintiff in some amount.

*Id*. at 567. This Court should lift the stay and abstain from the litigation of the Gelmans' claims because their claims can be timely adjudicated in the Lawsuit.

B. <u>This Court Should Abstain and Leave the Lawsuit with the Superior Court</u>

In addressing whether the Court should abstain from the Lawsuit, a personal injury action, the Court must first consider whether it has jurisdiction over the Gelmans' claims in the Lawsuit. The Court has jurisdiction under the "related to" prong of 28 U.S.C. § 1334 (b). The second statute to consider is 28 U.S.C. § 157 (b). Section 157 (b) appears to preclude this Court from "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." (§ 157 (b) (2)). Section 157 (b)(5) states: "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." Although § 157 (b)(5) uses "shall order," this section has been consistently construed to

7

give a district court the discretion to leave a personal injury action where it is pending and abstain from exercising jurisdiction. *Hopkins* v. *Plant Insulation Co.*, 342 B.R. 703, 708 (D. Del. 2006).

The third statute to consider is 28 U.S.C. § 1334(c). This section provides for discretionary abstention and mandatory abstention. Because the Lawsuit is a personal injury action, mandatory abstention pursuant to § 1334(c)(2) is not applicable. *Id.* The Court, though, may in its discretion abstain from the Lawsuit pursuant to the discretionary abstention principles set out in § 1334(c)(1). *Id.*(citations). Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

In *In re Tucson Estates, Inc.*, 912 F.2d at 1166-67, the Ninth Circuit set out these factors to consider in determining whether to abstain:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

Applying these factors, first, this Court's abstention would promote the efficient administration of the estate. Abstention would relieve this Court of the burden of the Lawsuit. Second, the Lawsuit involves only state law issues. Third, the law applicable to the Lawsuit may not be difficult for the Superior Court because it is California and San Francisco law, but this Court may be unfamiliar with it. Fourth, the Lawsuit is a related proceeding commenced in state court. Fifth, there is no jurisdictional basis other than § 1334. Sixth, there is little relationship between the Lawsuit and the main bankruptcy case. Seventh, the Lawsuit is not a "core" proceeding. Eighth, it would be feasible to sever the state law claims from the core bankruptcy matters to allow judgment to be entered in

8

the Superior Court with enforcement left to this Court; there are no core matters. Ninth, this Court's docket is already overly burdened with all matters PG&E; it would benefit all to leave the Lawsuit in the Superior Court. The tenth factor does not apply; no one contends the Debtors engaged in forum shopping by their bankruptcy filing. The eleventh factor applies in favor of abstaining; all the parties to the Lawsuit have the right to a jury trial. The twelfth factor also applies in favor of abstention; there are two non-debtor defendants in the Lawsuit. Thus, other than the tenth factor the Ninth Circuit factors weigh wholly in favor of abstention.

## V. CONCLUSION

The Gelmans are entitled to prosecute their claims for their injuries against PG&E. The only feasible forum in which they can do that is the Lawsuit in the Superior Court. This Court should lift the stay, abstain from hearing the Gelmans' claims, and allow the Lawsuit to proceed to judgment. Once judgment has been entered, the Gelmans can return to this Court to seek enforcement, assuming this bankruptcy case is still pending when the judgment is entered.

Respectfully submitted,

Dated: April 10, 2019                    LAW OFFICES OF BORIS E. EFRON


 /s/ David W. Wessel
Attorneys for Creditors
Marina Gelman and Mikhail Gelman