Heinz Binder (SBN 87908)
Robert G. Harris (SBN 124678)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531
Email: Heinz@bindermalter.com
Email: Rob@bindermalter.com

Attorneys for TURN, The Utility Reform Network

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>                      Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br>\* All papers shall be filed in the Lead Case No. 19-30088 DM. | Case Nos. 19-30088 DM (Lead Case)<br>                19-30089 DM<br><br>Chapter 11<br>*Jointly Administered*<br><br>Date:    May 8, 2019<br>Time:   9:30 a.m.<br>Place:   Courtroom 17<br>            450 Golden Gate Avenue<br>            San Francisco, California<br><br>OBJECTION DEADLINE: April 24, 2019 |

**MOTION BY TURN FOR APPOINTMENT OF OFFICIAL COMMITTEE OF RATEPAYER CLAIMANTS PURSUANT TO 11 U.S.C. §§ 1102(a)(2), 105(a); MEMORANDUM OF POINTS & AUTHORITIES**

# TABLE OF CONTENTS

SUMMARY OF RELIEF REQUESTED ................................................................................ 1

FACTUAL ALLEGATIONS ................................................................................................. 1

MEMORANDUM OF POINTS & AUTHORITIES .............................................................. 7

    A.    Statutory Basis for Relief. ................................................................................ 7

    B.    Burden of Proof. .............................................................................................. 7

    C.    Standard of Review. ........................................................................................ 7

    D.    Controlling Law That the U.S. Trustee Failed to Follow. .............................. 8

        1.    The Potential Appointees to a Committee of Ratepayer Claimants Are Persons under the Bankruptcy Code. ....................................... 8

        2.    Ratepayer Claimants Are Also Creditors under the Bankruptcy Code. ......... 8

    E.    Adequacy of Representation. .......................................................................... 9

        1.    The Existing Committees Cannot Not Function in a Manner That Takes into Account the Interests of Ratepayer Claimants. ........................... 9

        2.    The Nature of the Case Is Highly Unusual. ................................................ 10

        3.    The Debtors and Official Committees Are Unsupportive of the Appointment of a Third Committee. ........................................................... 10

        4.    Ratepayers Cannot Effectively Participate in These Cases Without An Official Committee. ................................................................................ 11

        5.    No Delay in Administration of This Case Would Result If the Court Grants the Motion. ....................................................................................... 12

        6.    Any Separate Committee Would Perform an Essential Function. .............. 12

        7.    Circumstances Differ from the Facts Before the Court in 2001. ................ 13

CONCLUSION ..................................................................................................................... 13

Cases

*Bodenstein v. Lentz (In re Mercury Fin., Corp.),*
      240 B.R. 270 (Bankr. N.D. Ill., Ed. 1999) ........................................................................ 8

*Granahan v. Christian (In re Central Valley Processing, Inc.),*
      2007 Bankr. LEXIS 926 ............................................................................................ 11, 12

*In re Beker Indus. Corp.,*
      55 B.R. 945 (Bankr. S.D.N.Y. 1985) .................................................................................. 9

*In re Budd Co., Inc.,*
      512 B.R. 910 (Bankr. N.D. Ill. 2014) ................................................................................. 9

*In re Kalvar Microfilm,*
      195 B.R. 599 (Bankr. D. Del. 1996) ................................................................................... 9

*In re Leap Wireless Int'l, Inc.,*
      295 B.R. 135 (Bankr. S.D. Cal. 2003) ................................................................................ 9

*In re Pierce,*
      237 B.R., 748 (Bankr. E.D. Cal. 1999) .............................................................................. 8

*In re Breland,*
      583 B.R. 787, 2018 Bankr. LEXIS 751, 2018 WL 1378763 (Bankr. S.D. Alabama 2018) . 8

*Southern California Edison Co. v. Peevey, et al.*
      (2003) 31 Cal.4th 781 ........................................................................................................ 7

*Victor v. Edison Bros. Stores (In re Edison Bros. Stores),*
      1996 U.S. Dist. LEXIS 13768 (Bankr. D. Del. 1996) ........................................................ 7

Federal Statutes

11 U.S.C. § 101(41) ................................................................................................................. 5, 8

11 U.S.C. § 101(5)(A) .................................................................................................................. 8

11 U.S.C. § 101(10)(A) ................................................................................................................ 8

11 U.S.C. § 105 ............................................................................................................................ 7

11 U.S.C. § 105(a) .............................................................................................................. 1, 7, 13

11 U.S.C. § 503(b)(3)(D) ........................................................................................................... 11

11 U.S.C. § 1102(a)(2) ...................................................................................................... 1, 7, 13

11 U.S.C. § 1109(b) ................................................................................................................... 11

11 U.S.C. § 1129(a)(6) ................................................................................................................. 4

26 U.S.C. § 501(c)(3) ....................................................................................................................1

## California Statute

Cal. P.U.C. § 309.5(a) ............................................................................................................. 2, 6

Cal. P.U.C. § 748.5.................................................................................................................. 5, 8

## Regulations

41 C.F.R. § 102-82.20 .................................................................................................................. 2

**TO THE HONORABLE DENNIS MONTALI AND THE UNITED STATES TRUSTEE:**

<u>SUMMARY OF RELIEF REQUESTED</u>

1. The Utility Reform Network ("TURN") hereby moves the Court for an order pursuant to 11 U.S.C. sections 1102(a)(2) and 105(a) directing the United States Trustee to appoint an official committee of ratepayer claimants. The grounds for this Motion are that the U.S. Trustee has failed to follow controlling law, refusing to appoint a committee on the ground that ratepayers are not persons with pre-petition claims against the debtors herein. As set forth below, the individual, small business and other ratepayers who might be appointed to an official committee of ratepayer claimants are both persons and creditors who qualify for appointment to a committee. Having had a legal basis to appoint a committee, the U.S. Trustee abused its discretion in declining to do so on the grounds stated above.

2. Neither the Official Committee of Unsecured Creditors ("OCC") nor the Official Committee of Tort Claimants ("OCTC") can speak on behalf of the ratepayers who will fund any plan. A separate committee, a locus for focusing the views and opinions of all ratepayers, with the ability to negotiate the terms of a plan, is essential to the efficiency and success of this case. The Court is therefore moved to direct the U.S. Trustee to appoint an official committee of ratepayer claimants as necessary to assure the adequate representation of ratepayer claimants in these cases.

<u>FACTUAL ALLEGATIONS</u>

TURN respectfully represents as follows in support of this Motion:

3. TURN is a non-profit consumer advocacy organization, organized under section 501(c)(3) of the Internal Revenue Code. TURN has advocated for the interests of ratepayers before the California Public Utility Commission (the "CPUC"), the California State Legislature, and other public entities that govern the State's public utilities since 1973. TURN has over 20,000 members, and its constituents include the 6.1 million individual consumer and small business ratepayers within PG&E's service area. Other ratepayers with substantial economic interests in the outcome of this case include large agricultural energy users, large industrial energy users, and government sector energy users. TURN would respectfully encourage the U.S. Trustee, were this Motion to be granted, to solicit as potential committee members to represent a broad diversity of ratepayer interests

persons[1] such as Mark Toney, Executive Director, The Utility Reform Network; Elizabeth Echols, Director, Public Advocates Office at the CPUC; Karen Norene Mills, Senior Attorney, Energy Policy of California Farm Bureau Federation; Rita Liotta, Counsel, Federal Executive Agencies; Nora Sheriff, Counsel, California Large Energy Consumer Advocates; Nancy McPherson, State Director, AARP California; and Orson Aguilar, Executive Director, Greenlining Institute.

4. The following is a brief description of ratepayer interests that could be represented were the aforementioned persons appointed to a committee of ratepayer claimants:

   a. Public Advocates Office at the CPUC (Cal Advocates) is an independent organization within the CPUC mandated by statute "to represent and advocate on behalf of the interests of public utility customers" pursuant to Public Utilities Code Section 309.5(a).

   b. California Farm Bureau Federation is the state's largest farm organization, working to protect family farms and ranches on behalf of its nearly 36,000 members statewide and as part of a nationwide network of more than 5.5 million members. Organized 100 years ago as a voluntary, nongovernmental and nonpartisan organization, it advances its mission throughout the state together with its 53 county Farm Bureaus.

   c. Federal Executive Agencies (FEA): Pursuant to Title 41 Code of Federal Regulations Section 102-82.20, the Federal Executive Agencies represents the consumer interest of all the Federal agencies that, in California, consists of numerous military installations, with electricity consumption of an estimated 1,500 GWH, and other federal facilities statewide. FEA participates in CPUC proceedings to respond to rate increase proposals filed by PG&E, SDG&E and Southern California Edison.

---

[1] If a committee of ratepayer claimants is formed, the following individuals have indicated their willingness to serve as members.

2

Case: 19-30088    Doc# 1324    Filed: 04/10/19    Entered: 04/10/19 16:33:29    Page 6 of 17

d.  California Large Energy Consumer Advocates (CLECA) has been active in CPUC proceedings and before the Legislature since the early-to-mid 1980s. The member companies are in the steel, cement, industrial gas, mining, pipeline, cold storage, and beverage industries and share the fact that electricity costs comprise a significant portion of their costs of production.

    e.  AARP represents 3.3 million members living in California, many of whom rely on an average Social Security check of $1,422 a month as their sole income.  They advocate for affordable utility bills for seniors at the CPUC, the legislature, and other policy makers.

    f.  Greenlining Institute advocates that utility policies meet the needs of diverse communities and constituencies that include faith-based organizations, minority business associations, community development corporations, health advocates, traditional civil rights organizations, and ethnic media outlets.

5.  TURN has received from ratepayers over 1,200 written letters and 500 online petition signatures supporting the appointment of an official ratepayer claimant committee.  Those letters and signatures are posted on the TURN website and can be viewed at https://theutilityreform-my.sharepoint.com/:f:/g/personal/legalassistant_turn_org/EpIOKFFheqJDsnvNDVrIdUMBwAoNThTAD3oWHdqIp1LRAw?e=rO3Lh4.

6.  The above-captioned bankruptcy cases were filed on January 29, 2018.  On February 6, 2019, TURN wrote to the United States Trustee to request that an official committee of ratepayer claimants be appointed to represent the interests of the residential and small business ratepayers in PG&E's service territory.  As the Court is aware, the U.S. Trustee appointed such a committee in the original PG&E filing.

7.  The U.S. Trustee held a meeting to form an official committee of unsecured creditors on February 11, 2019.  On February 12, 2019, the U.S. filed its Appointment of the Official Committee of Unsecured Creditors [Dkt. #409].  On February 21, 2019, the U.S. Trustee filed its Amended Appointment of the Official Committee of Tort Claimants [Dkt #530].

3

8. TURN's motivations in seeking a committee of ratepayer claimants are as follows: (1) to ensure that the hundreds of millions of dollars in claims owed to ratepayers are paid according to the law and this Court's orders; (2) to create a single entity in which the views of all various types of ratepayers as to issues in the case and an eventual plan coalesce; and (3) to establish an entity that can, as a fiduciary for ratepayers, negotiate a plan with the Debtor and other parties-in-interest in this case, and actively participate before the CPUC as it considers and approves any rate change that the regulator must approve under Bankruptcy Code section 1129(a)(6).

9. On February 20, 2019, the U.S. Trustee responded to TURN's request for an official committee of ratepayer claimants, concluding that "… appointment of such a committee would be outside the United States Trustee's statutory authority and is not appropriate at this time." The U.S. Trustee supplied the following legal analysis: "11 U.S.C. § 1102(b) governs committee appointments and composition. Section 1102(b)(1) requires that the United States Trustee appoint persons who hold claims against the debtor to serve on official committees. To be eligible for appointment, prospective members must qualify under the Bankruptcy Code as 'persons' and must 'hold claims against the debtor.' See 11 U.S.C. §§ 101(10) and (41)."[2] *See* Harris Declaration, Exhibit "A"

10. On March 21, 2019, following a telephonic inquiry by counsel to U.S. Trustee about a potential ratepayer claimants committee, TURN received a letter advising that "[t]he United States Trustee's position remains the same and, accordingly, no action will be taken at this time. If you have additional information or documentation regarding TURN's request, please feel free to forward that to my attention. Thank you again for reaching out, and please let me know if you would like to discuss this matter further." *See* Harris Declaration, Exhibits "B." On April 5, 2019, the Debtor transmitted a draft of this Motion and Exhibits A, B and C to the supporting Declaration for Mark Toney to the U.S. Trustee. On April 9, 2019, attorney Timothy Laffredi advised that the U.S. Trustee had not changed his position on appointment of a ratepayers' committee and authorized TURN to so state. The filing of this Motion followed. Harris Decl., ¶¶5-6.

---

[2] A true and correct copy of the U.S. Trustee's letter is attached as Exhibit "A" to the Declaration of Robert G. Harris in Support of Motion by Turn for Appointment of Official Committee of Ratepayer Claimants Pursuant to 11 U.S.C. §§ 1102(a)(2), 105(a) (the "Harris Declaration").

4

11. Individual and small business ratepayers are inarguably "persons" within the meaning of 11 U.S.C. §101(41), which encompasses natural persons, partnerships and corporations. Individual and small business ratepayers are pre-petition creditors as well because the Debtor electric utility is required by law to distribute to them the proceeds of a pre-petition greenhouse gas allowances auction that generated hundreds of millions of dollars in revenues. California Public Utilities Code section 748.5 provides specifically that "… the commission shall require revenues, including any accrued interest, received by an electrical corporation as a result of the direct allocation of greenhouse gas allowances to electric utilities …to be credited[3] directly to the residential, small business, and emissions-intensive trade-exposed retail customers of the electrical corporation." Electricity ratepayers are entitled[4] in 2019 to receive $310 million to be returned to residential customers as statement credits in April and October of 2019, in the amount of $27.70 per household. For gas proceeds, ratepayers are entitled[5] in 2019 to receive $128,975,630 as statement credits in April, 2019. These sums include both proceeds from the November 14, 2018 joint auction of greenhouse gas (GHG) allowances[6] combined with amounts projected to be generated by auctions to be held later in 2019.

12. Neither the OCC nor the OTCC can adequately represent ratepayers in this case. The OCC consists of a diverse set of creditors that includes trade creditors, a Fortune 200 energy generator, an integrated security company specializing in the provision of security and related services, two bond indenture trustees, and one of the unions for PG&E employees. The OTCC

---

[3] Pursuant to D.12-12-033 (an excerpt of this CPUC decision attached as Exhibit "A" to the Declaration of Mark Toney in Support of Motion by Turn for Appointment of Official Committee of Ratepayer Claimants Pursuant to 11 U.S.C. §§ 1102(a)(2), 105(a) (the "Toney Declaration").), the Semi-Annual California Climate Credits are provided to residential customers through the April and October bill cycles. Non-residential customers that are Emissions-Intensive and Trade Exposed (EITE) and eligible to receive the California Industry Assistance return will receive a single annual credit in their April bill cycle. Small business customers, defined as entities with monthly demand not exceeding 20 kW in more than three months in a twelve-month period receive credits through a volumetrically calculated rate adjustment pursuant to D. 12-12-033.

[4] Electric ratepayers – see D.19-02-023 (an excerpt of this CPUC decision attached as Exhibit "B" to the Toney Declaration) at page 10 and discussing $310 million net GHG revenue return in 2019 to residential customers.

[5] Gas ratepayers – see the excerpt of Advice Letter 4038-G attached as Exhibit "C" to the Toney Declaration, Attachment 6, Table C, row 10 showing $128,975,630 forecast to be returned to customers in 2019.

[6] A true and correct copy of the California Cap-and-Trade Program, and Québec Cap-and-Trade System November 2018 Joint Auction #17 Summary Results Report is attached as Exhibit "D" to the Toney Declaration. This auction generated proceeds to the Investor-Owned Utilities (including PG&E) of $329,979,828.82 and proceeds to the Privately-Owned Utilities of $38,826,282.48.

5

consists of individuals who are, presumably, tort claimants. The members of each respective official committee are fiduciaries for the general unsecured and tort claimants in this case. None can be expected to separately assert and advocate for the interests of ratepayers as regards future rate increases that will necessarily be required to confirm a plan.

13. TURN, though counsel, queried the Debtor, the OCC and the OTCC about their standing and desire for or opposition to a ratepayer claimants' committee. TURN supplied each with a copy of this Court's May 18, 2001 Memorandum Decision Regarding Motion for Order Vacating Appointment of Committee of Ratepayers,[7] and conveyed TURN's view that the Memorandum Decision does not bar the appointment of a committee of ratepayer in these cases. The Debtor and OCC will not support appointment of a separate committee of ratepayer claimants. The OTCC has elected not to take a position. TURN agreed, on request by the Debtor, to set this Motion on regular notice.

14. Individual and small business ratepayers, which comprise the majority of ratepayers in the Debtor's service area, cannot effectively participate in this case without a committee. No individual ratepayer, owed an average of $27.70 for PG&E, per the CPUC's website (http://www.cpuc.ca.gov/General.aspx?id=5917), could reasonably be expected to appear as a party-in-interest, much less move for approval of actual and necessary expenses making a substantial contribution in the cases without a carve-out to pay any such award.

15. The CPUC has, within its structure, a Public Advocates Office. The Public Advocates Office is an independent organization within the CPUC that advocates solely on behalf of utility ratepayers. The Public Advocates Office's director is appointed by the Governor, and the Public Advocates Office has its own independent operating budget. *See* California Public Utilities Code section 309.5(a). The Public Advocates Office's statutory mission is to obtain the lowest possible rate for service consistent with reliable and safe service levels. The Public Advocates Office, however, typically limits its appearances to regulatory matters. It has not appeared in these

---

[7] The "Memorandum Decision," a true and correct copy of which is attached as Exhibit "D" to the Harris Declaration.

6

bankruptcy cases but reserves the right to do so. The Public Advocates Office supports the appointment of a committee of ratepayer claimants and would hope to participate as a member, *ex oficio* or otherwise.

16. Access by ratepayers to regulatory proceedings before the CPUC is no substitute for an official committee. The CPUC is charged with the task of balancing all public interests implicated by utility regulation, of which ratepayer interests are merely one subset. Further, CPUC has the ability to work out settlements with the utilities it regulates in a non-public and non-transparent way and has done so in the past. *See Southern California Edison Co. v. Peevey, et al.* (2003) 31 Cal.4th 781, 797-801. While the CPUC has appeared in these cases, it is not doing so on behalf of ratepayers as creditors or solely to protect the interests of ratepayers under a plan.

WHEREFORE, for all the reasons set forth above, TURN respectfully requests that this Court issue an order granting this Motion pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a) and directing the United States Trustee to appoint an official committee of ratepayer claimants.

## MEMORANDUM OF POINTS & AUTHORITIES

A. <u>Statutory Basis for Relief.</u>

TURN asks that this Court exercise its discretion to order appointment of a committee of ratepayer claimants as "… necessary to assure adequate representation of creditors …." 11 U.S.C. §1102(a)(2).

B. <u>Burden of Proof.</u>

TURN, as the party seeking appointment of an additional committee, has "… the initial burden of developing a factual record to demonstrate the need for adequate representation." *Victor v. Edison Bros. Stores (In re Edison Bros. Stores),* 1996 U.S. Dist. LEXIS 13768, *14 (Bankr. D. Del. 1996) (bankruptcy court's order denying the appointment of an official committee for equity security holders was affirmed).

C. <u>Standard of Review.</u>

This Court has the power to review the U.S. Trustee's decision not to appoint a committee of ratepayer claimants under Bankruptcy Code section 105. *In re Breland*, 583 B.R. 787, 791, 2018 Bankr. LEXIS 751, *6-7, 2018 WL 1378763 (Bankr. S.D. Alabama 2018); *In re Pierce*, 237 B.R.

7

748, 753-54 (Bankr. E.D. Cal. 1999). The majority of courts hold that the bankruptcy court reviews administrative acts of the U.S. Trustee under an arbitrary and capricious standard. *Bodenstein v. Lentz (In re Mercury Fin., Corp.),* 240 B.R. 270, 276 (Bankr. N.D. Ill., Ed. 1999). In 2001, this Court (in the original PG&E case) interpreted that standard to mean, in the context of a motion to disband a ratepayers' committee appointed, that "…the court must decide whether the UST, in exercising her discretion, disregarded controlling law."[8]

### D. Controlling Law That the U.S. Trustee Failed to Follow.

#### 1. The Potential Appointees to a Committee of Ratepayer Claimants Are Persons under the Bankruptcy Code.

Bankruptcy Code section 101(41) provides that "[t]he term "person" includes individual, partnership, and corporation. Individual ratepayers and small businesses that are either partnerships or corporations are all eligible to be appointed to a committee of ratepayer claimants. The U.S. Trustee's conclusion that appointment of such a committee is outside his statutory authority on the ground that ratepayer claimants or the other potential appointees identified in paragraphs 1-2 above are not persons under 11 U.S.C. § 101(41) disregarded controlling law.

#### 2. Ratepayer Claimants Are Also Creditors under the Bankruptcy Code.

"The term 'creditor' means— (A) [an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor" and "The term 'claim' means — (A) [a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §§ 101(5)(A), 101(10)(A).

In paragraph 7 above, TURN established that the California Cap-and-Trade Program, and Québec Cap-and-Trade System November 2018 Joint Auction #17 took place prior to the filing of these cases. TURN further established that under California Public Utilities Code section 748.5 the utility Debtor is required to credit directly to residential, small business, and emissions-intensive trade-exposed retail customers of the electrical corporation in 2019 $324,538,000, plus another

---

[8] Memorandum Decision, 4:24-28.

8

$128,975,630 to gas ratepayers. Every ratepayer within PG&E's service area is a creditor in these cases. The U.S. Trustee's conclusion that appointment of an official committee of ratepayer claimants is outside its statutory authority on the ground that ratepayer claimants do not hold claims against the debtor under 11 U.S.C. §§ 101(10) and (41) disregarded controlling law.

E. <u>Adequacy of Representation.</u>

"There is no statutory definition of 'adequacy of representation'; it is generally determined on a case by case basis." *In re Leap Wireless Int'l, Inc.,* 295 B.R. 135, 137 (Bankr. S.D. Cal. 2003) (*citing In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985). Courts evaluating the adequacy of a single committee's representation of creditors rely generally on the following factors: (1) the ability of the existing committee to function, (2) the nature of the case, (3) the standing and desires of the various constituencies, (4) the ability of creditors to participate in the case without an additional committee, (5) the delay and additional cost that would result if the court grants the motion, (6) the tasks which a separate committee is to perform, and (7) other factors relevant to the adequate representation issue. *Id.* No one factor is dispositive, and the amount of consideration given to each factor depends on the circumstances of the case. *In re Budd Co., Inc.*, 512 B.R. 910, 912-13 (Bankr. N.D. Ill. 2014) (*citing In re Kalvar Microfilm*, 195 B.R. 599, 600-601 (Bankr. D. Del. 1996).

1. <u>The Existing Committees Cannot Function in a Manner That Takes into Account the Interests of Ratepayer Claimants.</u>

Neither the OCC nor the OTCC can adequately represent ratepayers in this case. The OCC consists of an admirably diverse set of claimants that includes trade creditors, a Fortune 200 energy generator, an integrated security company specializing in the provision of security and related services, two bond indenture trustees, and one of the unions for PG&E employees. None are involuntary creditors. The OTCC consists of individual tort claimants; while they are involuntary creditors who never made the decision to invest in the utility, they are owed substantial sums which they must sue to collect. The members of each respective official committee are, respectively, fiduciaries for the general unsecured and tort claimants in this case. All are, necessarily, wearing just one hat: that of the creditor constituency they represent. Neither the OCC's nor OCTC's

9

members will be asked to advocate for their clients to pay money into the case to fund a plan. The official committees cannot simultaneously challenge the allocation of rate increases to pay for the Debtors' felonies and corporate malfeasance while advocating for full payment of the claims of creditors.

A ratepayers' committee, with payment of the amount owing to its constituents required by law and scheduled for April and October of this year, could do exactly that. Ratepayers will wear the same hat when negotiating plan terms which impact future rates as they will when ensuring their claims are paid as and when due; the right to a rebate and the plan's impact on future rates are interconnected interests that are unique to ratepayers. A separate committee is required to allow the millions of ratepayers affected by these cases to speak with a single voice and negotiate with the well-represented financial interests in this case over the terms – and contributions – needed to confirm a plan.

### 2. The Nature of the Case Is Highly Unusual.

These cases are unique. The original PG&E bankruptcy was, at the time, the largest in U.S. history to date; there were over 15,000 docket entries. Nearly two decades later, these new filings are the sixth largest in history and affect over 6 million ratepayers and thousands of creditors, tens of billions in debt, and $70 billion in assets. Reorganization is imperative, and liquidation is unthinkable, though the utilities could well be broken up.

### 3. The Debtors and Official Committees Are Unsupportive of the Appointment of a Third Committee.

TURN communicated with counsel for the OCC, OTCC and Debtor. The OCC and Debtor oppose appointment of an official committee of ratepayer claimants and can be expected to file opposition. The OTCC is not taking a position. However, these officially constituted groups of two kinds of unsecured claims are far from the only constituencies in these cases. Because of its size and reach, these cases impact constituencies of all kinds and character, including farmers, industry, environmental groups, public entities such as municipalities and power aggregators and other public bodies, and the government of the State, including but not limited to the Governor himself. TURN

10

hopes and expects that the members of all constituencies affected by these bankruptcy cases will make themselves heard and join in TURN's Motion after its filing.

    4. <u>Ratepayers Cannot Effectively Participate in These Cases Without An Official Committee.</u>

Bankruptcy Code section 1109(b) permits parties in interest to appear and be heard. As a practical matter, absent official committee recognition, individual ratepayers will not be able to do so. There are over 6.1 million individual consumer and small business ratepayer claimants who share common interests in this case. Given the size of the individual claims of each (no more than $27.70 per ratepayer), none would be in a position to appear on the many complex motions filed in this case, much less negotiate the terms of a plan.

The argument that ratepayer claimants could engage independent counsel who could then seek compensation and be paid under 11 U.S.C. §503(b)(3)(D) is unavailing as well. As the Court has noted, the DIP financing approved in this case has no carve-out for such administrative expenses. Thus, following the allowance of administrative expenses for having made a substantial contribution, the ratepayer(s) who hires counsel would be forced to finance those fees until a plan is confirmed.

Finally, the large number of ratepayers and size of their individuals claims impacts their ability to participate without their own committee. In *Granahan v. Christian (In re Central Valley Processing, Inc.),* 2007 Bankr. LEXIS 926 (Bankr. E.D. Cal 2007), Judge Richard Lee *sua sponte* appointed a committee for growers whose claims share many of the characteristics of those of the ratepayer claimants in this case:

> As secured creditors, the Growers had common interests which were adverse to both the Debtor, Debtor's management, and the unsecured creditors. Each Grower had an undivided equal priority interest in a common asset, the Almond Inventory, which was not large enough to satisfy all of the Grower claims. *Because of the size and disparity of the Grower group, the common nature of the Grower Liens, and the possibility of other rights and remedies available to the Growers under State law, the court determined that it was neither practical nor prudent to require each Grower to hire independent counsel to protect its rights in this case*. Further, the court

> concluded that the common interests of the Growers could not be effectively represented by either the Debtor, a trustee, or a committee of unsecured creditors. For that reason, the court *sua sponte* ordered the appointment of the Growers' Committee pursuant to 11 U.S.C. § 1102 (a)(2) and the court's inherent authority under 11 U.S.C. § 105(a) to represent and protect the Growers' rights under, *inter alia,* the Cal. Food and Agric. Code.

*Granahan v. Christian (In re Central Valley Processing, Inc.),* 2007 Bankr. LEXIS 926, *17-18 (emphasis added) (trustee's motion to approve compromise with insiders approved over objection of growers committee).

     5.   <u>No Delay in Administration of This Case Would Result If the Court Grants the Motion.</u>

TURN contends that the appointment of an official ratepayer claimants committee would aid in the development of a plan and prompt administration of this bankruptcy case. Ratepayer consent to contribute to distributions through a plan, and what the Debtors might offer in return, are not only capable of but should be negotiated in the bankruptcy process. The regulatory process in which the CPUC decides the amount individual groups of ratepayers will be asked to contribute to a plan will almost certainly be heavily contested. The ability of ratepayers to be heard as to how that contribution might be utilized under a plan of reorganization, as well as their views as to asset sales and the preservation of essential pro-environment programs, such as contracts with green energy power producers from whom ratepayers may buy energy, can only be preserved by participating in the process in these cases.

     6.   <u>Any Separate Committee Would Perform an Essential Function.</u>

An official committee of ratepayer claimants would expect to hire counsel to assist it in reviewing filings, commenting on the Debtor's financial performance and, of course, negotiating a plan. It seems likely that counsel for an official committee of ratepayer claimants would require far less than the other committee professionals' $100,000 monthly cap given the more limited scope of issues with which the committee would likely be concerned.

///

12

### 7. Circumstances Differ from the Facts Before the Court in 2001.

The current circumstances are distinguishable from those before the Court in 2001. First, ratepayer claimants are creditors in the current cases and do not simply hold potential future claims, so there is, this time, legal authority for the U.S. Trustee to have appointed a committee. Second, there is really no option for ratepayers to appear and be heard as individuals, both because of the small size of each individual claim and their numerosity, and because of the absence of a carve-out from the DIP financing for any fees for substantial contribution granted. Finally, there is no regulatory alternative for ratepayers to participate in the process through which they will be asked to make a contribution to the plan distribution in these cases. As has been noted, the CPUC does not exclusively represent the ratepayers. Whatever consideration might be given to ratepayers in proceedings before the CPUC would be limited to issues regarding future rates and would never reach bankruptcy plan issues such as the potential future use of monies contributed, asset sales and the like.

It is essential to note that the Public Advocate Office does wish to participate in these cases through a ratepayer claimants committee and is filing a joinder in this Motion. Though it might only be able to do so as an *ex oficio* member as it is part of a government agency, its involvement in a ratepayer committee will provide ratepayers with the voice in this case that they cannot have through limited regulatory review of the very narrow issues considered in CPUC proceedings.

### CONCLUSION

It is rare for there to be more than two official committees, but in this very unique case circumstances merit giving ratepayer claimants a voice and a place at the negotiating table. For all the reasons set forth above, TURN respectfully requests that this Court grant this Motion and issue an order pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a) directing the U.S. Trustee to appoint an official committee of ratepayer claimants

Dated: April 10, 2019  BINDER & MALTER, LLP

By: /s/ *Robert G. Harris*
Robert G. Harris

Attorneys for TURN, the Utility Reform Network

13