**EXHIBIT 2**

COM/MGA/mph

**Date of Issuance 3/4/2019**

Decision 19-02-023  February 21, 2019

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| Application of Pacific Gas and Electric Company for Adoption of Electric Revenue Requirements and Rates Associated with its 2019 Energy Resource Recovery Account (ERRA) and Generation Non-Bypassable Charges Forecast and Greenhouse Gas Forecast Revenue and Reconciliation. (U39E). | Application 18-06-001 |

**ALTERNATE DECISION ADOPTING PACIFIC GAS AND ELECTRIC COMPANY'S 2019 ENERGY RESOURCE RECOVERY ACCOUNT FORECAST AND GENERATION NON-BYPASSABLE CHARGES FORECAST AND GREENHOUSE GAS FORECAST REVENUE AND RECONCILIATION**

270508399
Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 1 of 40

# EXHIBIT 2

**TABLE OF CONTENTS**

**Title**                                                                                                                            **Page**

ALTERNATE DECISION ADOPTING PACIFIC GAS AND ELECTRIC
    COMPANY'S 2019 ENERGY RESOURCE RECOVERY ACCOUNT
    FORECAST AND GENERATION NON-BYPASSABLE CHARGES
    FORECAST AND GREENHOUSE GAS FORECAST REVENUE AND
    RECONCILIATION ...................................................................................................1
Summary .........................................................................................................................2
1. Background ...............................................................................................................3
2. PG&E's Updated Request .......................................................................................5
3. Issues and Discussions ...........................................................................................5
    3.1. Uncontested Issues ........................................................................................5
    3.1.1. PG&E's 2019 ERRA Forecast Requests...................................................6
    3.1.2. PG&E's Electric Sales Forecast ................................................................7
    3.1.3. PG&E's Rate Proposals ..............................................................................8
    3.1.4. GHG Issues ..................................................................................................8
    3.1.5. GHG Emissions Forecast .........................................................................10
    3.2. Modifications to the Power Charge Indifference Adjustment
    Methodology ..........................................................................................................11
    3.3. Contested Issues ...........................................................................................12
    3.3.1. Treatment of Sales Revenues .................................................................14
    3.3.2. Allocation of Costs Related to Diablo Canyon....................................16
    3.3.3. Procedural and Transparency Issues....................................................17
    3.3.4. Changes to PCIA Revenue Requirements to be Consistent with
    Factors Used to  Allocate Generation Costs ......................................................17
    3.3.5. CAM and legacy UOG Costs ..................................................................19
    3.3.6. Adjustment to the 2019 PCIA Due to Anticipated  Tax Savings From
    Approval of PG&E's Petition for Modification of D.17-05-13....................20
    3.3.7 Brown Power True-Up............................................................................20
4. Safety .......................................................................................................................22
5. Procedural Issues ..................................................................................................23
    5.1. Categorization and Need for Hearings ....................................................23
    5.2 Motions for Confidential Treatment  and to Admit Evidence..............23
6. Compliance with the Authority Granted Herein ...............................................25
7. Reduction of Comment Period.............................................................................25
8. December 27, 2018 Ruling and Comments .........................................................25

Case: 19-30088     Doc# 1328-2     Filed: 04/10/19     Entered: 04/10/19 17:01:54     Page 2
of 40

**EXHIBIT 2**

## TABLE OF CONTENTS

**Title**                                                                                          **Page**

9.  Assignment of Proceeding.........................................................................28

Findings of Fact.............................................................................................28

Conclusions of Law ......................................................................................31

ORDER ..........................................................................................................32

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 3
of 40

**EXHIBIT 2**

**ALTERNATE DECISION ADOPTING PACIFIC GAS AND ELECTRIC COMPANY'S 2019 ENERGY RESOURCE RECOVERY ACCOUNT FORECAST AND GENERATION NON-BYPASSABLE CHARGES FORECAST AND GREENHOUSE GAS FORECAST REVENUE AND RECONCILIATION**

### Summary

This decision: 1) adopts a forecast for the 2019 electric procurement revenue requirement of $2,907.4 million for Pacific Gas and Electric Company (PG&E), which consists of $1,653.2 million for the Energy Resource Recovery Account (ERRA), $80.3 million for the Ongoing Competition Transition Charge, $1,042.9 million for the Power Charge Indifference Adjustment (PCIA) less the amount of the brown power true-up for subject year 2018, and $131.1 million for the Cost Allocation Mechanism (CAM); 2) approves PG&E's 2019 electric sales and peak load forecasts; 3) adopts a 2019 Greenhouse Gas (GHG)-related forecast of $1.083 million for administrative and outreach expenses pertaining to implementation of GHG allowance proceeds return, $310 million net forecast GHG revenue return amount following the set aside of $56.606 million for Clean Energy and Energy Efficiency programs including $14.499 million for Disadvantaged Communities-Green Tariff and Community Solar Green Tariff programs; and adopts a 2019 semi-annual residential California Climate Credit of $27.70 per customer; 4) finds 2017 recorded administrative and outreach expenses of $1.052 million pertaining to implementation of GHG allowance proceeds return, are reasonable; and, 5) approves PG&E's rate proposals associated with its electric procurement related revenue requirements to be effective in rates January 1, 2019.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 4 of 40

| Revenue Requirements | 2019 Cost with FF&U Net of GTSR Program Cost | Year-End 2018 Balance | PCIA | PCIA Sub-account | Total 2019 Revenue Requirements |
|---|---|---|---|---|---|
| ERRA | $ 2,696,558,120 | $ (508,133) | $(1,037,588,106) | $ (5,304,645) | $ 1,653,157,236 |
| Ongoing CTC (i.e., MTCBA) | 67,405,765 | 12,885,488 | | | 80,291,253 |
| CAM Charge (i.e., NSGBA) | 157,440,102 | (26,366,744) | | | 131,073,358 |
| PCIA | | | 1,037,588,106 | 5,304,645 | 1,042,892,751 |
| Total | $ 2,921,403,986 | $ (13,989,388) | $ -- | $ -- | $ 2,907,414,598 |

We also resolve various issues, discussed below, concerning the Power Charge Indifference Adjustment and the application of Decision 18-10-019.

## 1.  Background

On June 1, 2018, Pacific Gas & Electric Company (PG&E) filed its Application for Adoption of Electric Revenue Requirements and Rates Associated with its 2019 Energy Resource Recovery Account (ERRA) and Generation Non-Bypassable Charges Forecast and Greenhouse Gas (GHG) Forecast Revenue and Reconciliation (Application).  In its Application, PG&E requested:  1) Adoption of its 2019 electric procurement revenue requirement forecast to become effective in rates on January 1, 2019; 2) adoption of its forecasted electric sales for 2019; and 3) adoption of its forecast of GHG revenues, revenue return, and administrative and customer outreach costs for 2019 and approval of PG&E's 2017 GHG administrative and customer outreach costs as reasonable.

On June 21, 2018, Resolution ALJ 176-3418 preliminarily determined that this proceeding was ratesetting and that hearings would be necessary.  Protests to the Application were filed on July 5, 2018 by the Public Advocates Office (Cal Advocates; formerly, Office of Ratepayer Advocates) and by East Bay Community Energy, Marin Clean Energy, Monterey Bay Community Power, Peninsula Clean Energy Authority, Pioneer Community Energy, and Sonoma

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 5 of 40

Clean Power Authority (collectively the Joint CCAs). The Modesto Irrigation District and the Merced Irrigation District filed a response on July 5, 2018. Also on July 5, 2018, the Direct Access Customer Coalition (DACC) filed a response. The City and County of San Francisco was granted party status on August 2, 2018. Silicon Valley Clean Energy Authority appeared at the Prehearing Conference (PHC) and was granted party status at that time and subsequently joined the Joint CCAs. Thereafter, on November 6, 2018, the California Large Energy Consumers Association was granted party status.

PG&E filed its reply to the protests and responses on July 16, 2018.

On August 3, 2018, a PHC took place in San Francisco to establish the service list, discuss the scope, and develop a procedural timetable for the management of this proceeding.

The Scoping Memorandum and Ruling of Assigned Commissioner (Scoping Memo) on the ERRA Application was issued August 16, 2018. Evidentiary hearing was held on September 20, 2018 at the Commission's San Francisco Office. PG&E and the Joint CCAs submitted opening briefs on October 2, 2018; PG&E and the Joint CCAs submitted reply briefs on October 16, 2018.

On October 24, 2018 the Joint CCAs filed a motion regarding the November Update and seeking to shorten time for the response. On October 26, 2018, a ruling was issued requiring an expedited response. On November 1, 2018, PG&E filed its expedited response reflecting its support for several of the Joint CCAs requests and opposing delay in the proceeding and distribution of confidential testimony to signatories to the non-disclosure agreement (NDA) in Rulemaking (R.) 17-06-026. On November 7, 2018, a ruling was issued requiring, in part: PG&E provide workpapers with the November

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 6 of 40

Update, provide November Update confidential information to signatories of the NDA in this proceeding, but not to signatories of the NDA in R.17-06-026, PG&E conduct an online conference concerning the November Update on November 9, 2018, and provide responses to data requests on an accelerated basis, with certain qualifications.  The ruling did not extend the time for comment on the November Update.

## 2.  PG&E's Updated Request

On November 7, 2018, PG&E filed its update of its requested 2019 ERRA forecast.  PG&E filed errata to the November Update on November 16, 2018.  The November Update provides updated forecasts of ERRA revenue requirements, GHG data, departing load data and is intended to update information already presented with more current information.

On November 19, 2018, the Joint CCAs and Cal Advocates submitted comments to the November Update.  The comments raise essentially the same issues that have been litigated throughout this proceeding and raise some additional concerns which have been addressed by this decision, where appropriate.

## 3.  Issues and Discussions

### 3.1.  Uncontested Issues

After reviewing PG&E's application, supporting workpapers, and conducting discovery, parties generally agreed with or did not contest the following PG&E requests:

1. PG&E's proposed ERRA revenue requirement of $1,532.4 million (exclusive of the amount related to the PCIA), Ongoing Competition Transition Charge (CTC) of $80.3 million, and Cost Allocation Mechanism (CAM) revenue requirement of $131.1 million;

2. PG&E's 2019 forecast of electric sales;

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 7 of 40

3. PG&E's rate proposals associated with its proposed total electric procurement related revenue requirements to be effective in rates on January 1, 2019;

4. PG&E's proposed 2019 GHG related forecasts and expenses of: a) GHG administrative and outreach expense of $1.083 million; b) the net GHG revenue return of $324.5 million; and c) the semiannual residential California climate credit of $29.18;

5. PG&E's 2017 recorded administrative and outreach expenses of $1.052 million related to the 2017 GHG revenue return to be found as reasonable; and

6. PG&E's 2019 forecast of direct and indirect GHG emissions and related costs to be found as reasonable and consistent with Commission and state policies and laws.

### 3.1.1. PG&E's 2019 ERRA Forecast Requests

PG&E's application requests Commission approval of several procurement related revenue requirement forecasts which are not disputed by the parties. With its November Update, PG&E requests approval of the 2019 ERRA forecast revenue requirement of $1,532.4 million, Ongoing CTC of $80.3 million, and CAM revenue requirement of $131.1 million. PG&E also seeks approval of PCIA of $1,163.7 million.

The ERRA revenue requirement, Ongoing CTC and the CAM revenue requirements are not in dispute. The Joint CCAs dispute the PCIA, proposing a reduction of $9 million. We discuss the PCIA below in Section 3.3, Contested Issues.

The ERRA forecast revenue requirement represents procurement-related costs including purchased energy and capacity, fuel costs for PG&E-owned facilities as well as facilities subject to tolling agreements and other

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 8 of 40

**EXHIBIT 2**

procurement-related costs such as hedging and collateral.[1] CTCs are established by statute for the "above market costs associated with eligible contract arrangements entered into before December 20, 1995, and Qualifying Facility contract restructuring costs."[2] PG&E proposes to recover these revenue requirements through rates to be implemented on January 1, 2019, and excepting the dispute of the PCIA, no parties have disputed these proposals.

### 3.1.2. PG&E's Electric Sales Forecast

PG&E's electric sales forecast is based on econometric models that forecast electric customer demand, which is based on regression equations specific to each major customer class: residential, commercial, industrial, and agricultural.[3] On a recorded basis, residential (weather normalized), commercial, and industrial class sales show a declining trend from 2015-2017.[4] Agricultural sales are closely tied to available water in the service territory since farmers pump groundwater for irrigation needs. Despite recent wet winters, PG&E expects agricultural sales to trend closer to long-run historic averages and increase by 8 percent from 2017-2019.[5] PG&E also makes post-regression adjustments to account for factors such as distributed generation, energy efficiency, electric vehicles and line loss.[6] PG&E then calculated departing customer load by using historic information for departing load, and for DA and CCAs, by working with CCAs to develop load forecasts.

---

[1] *See* PG&E-1 at 1-4:27 – 1-5:20.

[2] *See* Decision (D.) 12-12-008 at 5.

[3] PG&E-1 at 2-3.

[4] PG&E-1 at 2-3 – 2-4.

[5] PG&E-1 at 2-5.

[6] Ex. PG&E-1 at 2-6 to 2-9.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 9 of 40

### 3.1.3.  PG&E's Rate Proposals

PG&E proposes to use the revenue allocation and non-residential rate design methodologies adopted by the Commission in Phase 2 of PG&E's 2014 GRC, D.15-08-005, and for residential rate design, the methodologies adopted by the Commission in the Residential Rate Reform Order Instituting Rulemaking, D.15-07-001, excluding the impacts of the reductions in number of residential tiers.  PG&E uses March 1, 2018 electric rates as the basis for present rate revenues.

### 3.1.4.  GHG Issues

PG&E records GHG allowance revenues, expenses, and corresponding revenue return to customers in its GHG Revenue Balancing Account.  In its testimony, PG&E describes how it intended to distribute GHG allowance revenues in accordance with the methodologies adopted by the Commission in D.12-12-033 and D.14-02-037.[7]  PG&E also provides detailed explanations of how it calculated the semi-annual residential climate credit and specific expense items and amounts for both administrative and outreach expenses.  PG&E forecasts for 2019 net GHG revenue return of $324.5 million, a semi-annual residential California Climate Credit of $29.18 and Administrative and Outreach expenses of $1.083 million.  For 2017, PG&E recorded administrative and outreach expenses of $1.052 million.  No party to this proceeding has opposed PG&E's proposal.

PG&E has removed the 2016 to 2018 Solar on Multifamily Affordable Housing (SOMAH) Program funding of $50.5 million, set aside in the June testimony, because it was previously recorded in the GHG Revenues

---

[7] *See* Ex. PG&E-1 at 13-6:5 – 13-8:11.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 10 of 40

Sub-Account within the GHG Revenue Balancing Account. PG&E also revised the 2019 SOMAH Program funding to $37.7 million and included an additional $4.4 million to set aside for the Disadvantaged Communities-Single Family Solar Home Program.[8]

Under Pub. Util. Code 748.5(c), the Commission may allocate up to 15% of the revenue received by an electric corporation from its sales of allocated GHG allowances to specific Clean Energy and Energy Efficiency (EE) projects that are not funded by another source and are already approved by the Commission. 15% of PG&E's 2019 forecast allowance is $56.606 million. The funding for Clean Energy and EE programs is summarized in the table below (in millions).

| Total Clean Energy and EE | $56.606 |
|---|---|
| 2019 SOMAH | $37.700 |
| 2019 DAC-SASH | $4.400 |
| Remaining Funds | $14.499 |

In D.18-06-027, the Commission created the Disadvantaged Community-Single-Family Solar Homes (DAC-SASH) program, the Disadvantaged Community Green Tariff (DAC-GT) program, and the Community Solar Green Tariff (CSGT) programs to incentivize the installation of solar generating systems in low-income households. Decision 18-06-027 set an annual $10 million budget for the DAC-SASH program (with funding apportioned to the participating utilities). Although that decision set no budget for the DAC-GT or CSGT programs, it authorized utilities to fund both programs

---

[8] PG&E-6 at 12:21 – 13:5.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 11 of 40

first through available GHG allowance proceeds, and then through public purpose program funds if the GHG allowance funds were exhausted.

PG&E proposed to set-aside $4.4 million, its share of the annual $10 million budget, for the DAC-SASH program. PG&E did not propose to set aside GHG allowance funding for the DAC-GT or the CSGT programs. Although we find PG&E's set aside for DAC-SASH reasonable and in compliance with D.18-06-027, PG&E's silence regarding a set-aside for the DAC-GT and CSGT programs is inconsistent with D.18-06-027. Therefore, the Commission sets aside the remainder of PG&E's unallocated funding for Clean Energy and EE projects, $14.499 million, for funding the DAC-GT and CSGT programs. This set-aside of $14.499 million will also be available for use with any other Commission approved Clean Energy and EE programs implemented in 2019.

PG&E forecasts for 2019 a semi-annual residential California Climate Credit of $29.18 based on a 2019 net GHG revenue return of $324.5 million. Following the additional set aside of $14.499 million, the net GHG revenue return is reduced to $310 million. Therefore, there is a corresponding reduction of the forecast per household credit and we modify the authorized amount for the semi-annual Climate Credit to eligible households and approve $27.70.

### 3.1.5. GHG Emissions Forecast

PG&E has recorded a negative value for its 2019 GHG emissions. Cal Advocates reports that in response to discovery, PG&E explained that it records a negative value for the 2019 emissions forecast because of California Independent System Operator (CAISO) sales and contract sales.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 12 of 40

Cal Advocates contends it is impossible for PG&E to achieve negative GHG emissions through the sales of energy.[9]

We do not agree. This is not the first time PG&E has forecast negative indirect GHG Emissions relating to CAISO. We recognize it is feasible for PG&E to recognize negative indirect emissions as a net seller at CAISO. In D.14-10-033 we stated, a "reasonably accurate forecast of GHG emission costs is important for setting rates sufficient to cover procurement costs."[10] We noted, at that time, Cal Advocates supported the utilities' use of "estimations using a reasonable methodology that is consistent with D.12-12-033, the utility's own ERRA … and any applicable ARB cap-and-trade program rules."[11] We accept PG&E's forecast as an estimation using a reasonable methodology consistent with our decisions and other rules.

### 3.2. Modifications to the Power Charge Indifference Adjustment Methodology

On October 19, 2018, the Commission issued D.18-10-019, which made changes to the method by which revisions to the PCIA charge is calculated. Among other things, the decision made changes to the calculation for both major components of the PCIA, the Market Price Benchmark (MBP) and the Total Portfolio Cost (TPC). The decision also changed the revenue factors for vintage indifference amounts to be consistent with the factors that the Investor Owned Utilities (IOUs) use to allocate generation costs to bundled service customers.

---

[9] Response of the Public Advocates Office to the November Update, at 3.

[10] D.14-10-033 at 13.

[11] *Ibid.*, at 15.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 13 of 40

The decision also eliminated the 10-year eligibility limit for certain utility owned generation (UOG).

Ordering Paragraph 1 of D.18-10-019 sets forth the following;

The Commission's Energy Division shall calculate the following values and make them available to interested parties at the beginning of November each year: (1) the Brown Power Index, (2) the renewable procurement standard (RPS) Adder, and (3) the resource adequacy (RA) adder.

a. The Brown Power Index shall continue to be calculated using the methodology adopted in Decision (D.) 06-07-030.

b. The RPS Adder shall be calculated using reported prices from purchases and sales of renewable energy by the investor-owned utilities (IOUs), Community Choice Aggregators (CCAs) and ESPs during the year two years prior to the forecast year (year n-2) for delivery in the forecast year (year n). For the 2019 RPS Adder forecast only, the Energy Division shall use the most recently published Platts Portfolio Content Category (PCC) 1 REC index mid value ("California Bundled REC (Bucket 1)") as of November 1, 2018. The RPS Adder for each utility will be the sum of the Platts PCC 1 REC index value and its brown power index.

c. The RA Adder shall be calculated using reported purchase and sales prices from IOU, CCA, and Electric Service Provider (ESP) transactions made during (year n-1) for deliveries in (year n). A zero or *de minimis* price shall be assigned for capacity expected to remain unsold. The RA Adder shall be calculated in a manner that reflects the three types of RA capacity: system, local, and flexible. For the 2019 RA Adder only, the Energy Division shall use the weighted average system and local RA prices in the most recent annual RA report.

### 3.3. Contested Issues

The issues in dispute generally relate to the PCIA. The Joint CCA parties raised the following issues in their briefs: 1) PG&E's proposed treatment of sales revenues from Renewables Portfolio Standard (RPS) and Resource Adequacy (RA) products; 2) PG&E's allocation of costs related to Diablo Canyon Power

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 14 of 40

Plant (DCPP); and, 3) alleged persistent procedural and transparency issues within PG&E's forecast proceedings which "hamper the CCAs' ability to understand, plan for, and protect their customers..."[12]

The Joint CCAs requested by their comments that the Commission:

a) Determine the calculations and entries underlying the proposed PCIA rates are not in compliance with all applicable rules, regulations, resolutions and decisions for all customer classes;

b) Reject PG&E's requested 2019 ERRA Forecast PCIA revenue requirement of $1.164 billion as unreasonable;

c) Value multi-year sales of RPS-eligible energy, RA capacity and brown power at the relevant benchmark for the purpose of forecasting the PCIA;

d) Reject changes to the billing determinants used to allocate the PCIA revenue requirements among vintages until PCIA-related rate design changes are investigated holistically;

e) Order PG&E to refund misallocated CAM-related costs via a one-time adjustment in this proceeding; Re-allocate costs to direct access customers for legacy UOG;

f) Order PG&E to develop a mechanism to adjust the 2019 PCIA on account of anticipated tax savings likely to flow from approval of PG&E's Petition for Modification of D.17-05-13;

g) Require the brown power true-up be implemented for 2018 rates in the 2019 ERRA compliance proceeding;

h) Address the misallocation of costs related to Diablo Canyon Power Plan, as explained in the Joint CCA's Opening and Reply Briefs;

i) Provide clear guidance on where on-going procedural and transparency issues related to the mechanics of the ERRA process should be addressed; and

---

[12] Joint CCAs' Reply Brief at 3.

Case: 19-30088   Doc# 1328-2   Filed: 04/10/19   Entered: 04/10/19 17:01:54   Page 15 of 40

j)  Until the issues listed herein are appropriately addressed, reject approval of PG&E's rate proposals to be effective on January 1, 2019.

We address the issues raised by briefing first, followed by issues raised only in comments.

### 3.3.1.  Treatment of Sales Revenues

The Joint CCAs assert PG&E unreasonably allocated the revenues from sales of RA and PRS products by "valuing sold output at a transactional value that is different than the MPB."[13]

PG&E acknowledges it did not properly credit revenues from these sales across vintaged portfolios but instead credited the revenues solely to the 2018 vintage.[14]  The suggested correction was made in rebuttal testimony.[15]

PG&E states it is forecasting for the first time revenues from sales of RA capacity and RPS attributes allocates for inclusion in PCIA.  The revenues are allocated among departing load portfolio vintages and reduce the RA capacity and RPS positions in the remaining portfolio to reflect the sales.  Although PG&E contends these revenues are based on actual transactions and the forecast rate is based on the best information available the Joint CCAs are correct that this procedure is not authorized by a Commission decision and we agree it would be

---

[13]  Joint CCAs' Opening Brief at 12.

[14]  PG&E Opening Brief at 14.

[15]  PG&E-2, 1-5:5-22.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 16 of 40

**EXHIBIT 2**

improper to adopt it here.[16] Therefore, continuing valuation using the MPB warrants a reduction of the PCIA revenue requirement.[17]

PG&E, by its comments contends, and we agree, the record does not support a finding that benefits remain with PG&E's bundled customers following sales of these products.

---

[16] Joint CCAs' Opening Brief at 12; Joint CCAs' Reply Brief at 9.

[17] Joint CCAs' Opening Brief at 18. A minor error in the PCIA workbook was corrected to include previously omitted 2012 vintage incremental RPS sales revenue.

PG&E further contends it should not be controversial to use actual sales revenue for only RA and RPS sales and that this is consistent with D.18-10-019. We note however, in D.18-10-019 we deferred for later development a true-up process for RA and RPS.[18] We therefore continue to defer for more robust development the consideration of RA and RPS sale proceeds.

### 3.3.2. Allocation of Costs Related to Diablo Canyon

The Joint CCAs propose PG&E's forecasts and accounting for DCPP should be revised to account for "capital additions for refueling and going-forward maintenance and operations costs in its Utility Generation Base Revenue Account [the Utility Generation Balancing Account (UGBA)] that should have been included in the ERRA revenue requirement because they are generation costs."[19] The Joint CCAs contend this results in an overstatement of DCPP's contribution to Total Portfolio Costs or an understatement of the value of DCPP in PG&E's portfolio.[20] The Joint CCAs then suggest this be resolved by revising the brown power component of the Market Price Benchmark or reducing the Total Portfolio Cost of each vintage by $3.03/MWh of DCPP anticipated generation.[21]

Revising how the Market Price Benchmark is calculated or imposing a limitation on cost recovery is, as PG&E argues, outside the scope of this proceeding. The issue is whether capital additions for refueling and going-forward O&M costs should be recorded in the ERRA or UGBA. Either the

---

[18] D.18-10-019, at 142.

[19] Joint CCAs' Opening Brief at 19.

[20] Joint CCAs' Reply Brief at 13.

[21] Joint CCA-1 at 9:4-19.

Case: 19-30088   Doc# 1328-2   Filed: 04/10/19   Entered: 04/10/19 17:01:54   Page 18 of 40

**EXHIBIT 2**

compliance ERRA or the General Rate Case will address this. Any correction in the ERRA compliance proceeding may be reflected in 2021 rates (following the February 2019 compliance filing, decision and subsequent 2021 AET [Annual Electric True-Up]). We will not change, in this utility specific ERRA forecast proceeding, how an element of the PCIA is calculated or determine the recovery of DCPP related costs.

### 3.3.3. Procedural and Transparency Issues

The Joint CCAs express concerns with "persistent procedural and transparency issues within PG&E's forecast proceedings [which] continue to hamper the CCAs' ability to understand, plan for, and protect their customers from potentially severe, short-term rate impacts." We decline the invitation to alter the structure of ERRA forecast proceedings generally as it is outside the scope of this proceeding and could impact the ERRA proceedings of other utilities which are not parties to this proceeding.

### 3.3.4. Changes to PCIA Revenue Requirements to be Consistent with Factors Used to Allocate Generation Costs

Ordering Paragraph 4 of D.18-10-019 requires:

> Pacific Gas and Electric Company, Southern California Edison Company, and San Diego Gas & Electric Company shall modify the revenue allocation factors for vintaged Indifference Amounts to be consistent with the factors used to allocate generation costs to their bundled service customers.

In D.18-10-019, the Commission ordered PG&E to move away from allocating vintage Indifference Amounts proportionately by each rate group's contribution to the "Top 100 hours" of system load to a method that allocates the Indifference Amounts consistent with factors used to allocate generation costs to PG&E's bundled service customers. In the November Update, PG&E proposed a

Case: 19-30088   Doc# 1328-2   Filed: 04/10/19   Entered: 04/10/19 17:01:54   Page 19 of 40

**EXHIBIT 2**

method to calculate the allocation factors based on the proportion of each rate group's bundled service generation rate to the generation component of the system average rate.[22]  The rate for each group is calculated by dividing the generation revenue requirement by the total sales for each rate group.

The Joint CCAs do not object to the allocation factors presented by PG&E in the November Update as they consider it to satisfy the requirements of D.18-10-019,[23] and we agree.

The Joint CCAs, however, object with the next step proposed by PG&E. PG&E proposes in its update to modify its billing determinants based on departed customers, increasing the PCIA the Joint CCAs correctly note that this change was not approved by D.18-10-019.[24]  Rather than approving PG&E's new and unique modification, PG&E should continue to use the system-level billing determinates consistent with its initial testimony.

PG&E, by their comments, contends D.18-10-019 approved use of its billing determinate methodology.  PG&E quotes that decision in support, "For all these reasons, we find that the proposal made by the Joint Utilities in Exhibit IOU-1 should be adopted in this decision…"  The selective quotation by PG&E however, avoids the remainder of the sentence , "so that the revenue allocation factors for vintaged Indifference Amounts are consistent with the factors used to allocate generation costs to the Joint Utilities' bundled service customers."[25]  Likewise, Ordering Paragraph 4 of D.18-10-019 requires the IOUs

---

[22]  Joint CCAs Ex.14_PG&E Response 8.08

[23]  Joint CCAs' Comment on Update at 16.

[24]  *Id.*, at 17.

[25]  D.18-10-019, at 124.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 20 of 40

modify "revenue allocation factors for vintaged Indifference Amounts to be consistent with the factors used to allocate generation costs to their bundled service customers." The Ordering Paragraphs of D.18-10-019 notably do not require a change to the billing determinates and we will not adopt that change here. Consistent with this determination, we correct the modification of the approved ERRA and PCIA revenue requirements as stated elsewhere by this decision.

### 3.3.5. CAM and legacy UOG Costs

Due to a cost allocation error related to CAM-eligible contracts there was an over-collection of revenue from customers paying costs in ERRA and a corresponding under-collection from customers paying costs in the New System Generating Balancing Account.[26] PG&E has proposed to address this issue in the 2018 ERRA compliance and 2020 ERRA forecast proceedings.[27] The Joint CCAs contend that since the error was identified in April 2018, it is unreasonable to wait for future proceedings to correct the error. PG&E's proposal however, is consistent with these proceedings and the scope of this proceeding.

The Joint CCAs also contend "PG&E Appears to Have Inappropriately Removed Costs Previously Allocated to Direct Access Customers for Legacy Utility-Owned Generation."[28] PG&E has met its burden to establish the reasonableness of its treatment of these costs. The "implication" the Joint CCAs draw from this appearance is insufficient to meet the Joint CCAs burden to call into question the reasonableness of PG&E's treatment.

---

[26] Ex. PG&E-6, 9:1-3.

[27] *Id.,* 10:18 – 11:2.

[28] Joint CCAs' Comment to November Update, at 27.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 21 of 40

### 3.3.6. Adjustment to the 2019 PCIA Due to Anticipated Tax Savings From Approval of PG&E's Petition for Modification of D.17-05-13

Presently a petition for modification of D.17-05-013, PG&E's 2017 GRC is pending to address reduction of the revenue requirement due to the Tax Cuts and Jobs Act of 2017. The Joint CCAs contend the November Update fails to reflect this tax savings. PG&E states "the tax savings are not included in the PCIA calculation because they are not yet approved by the Commission." We agree, we will not require PG&E to implement a savings which has not been approved.

### 3.3.7 Brown Power True-Up

The Joint CCAs contend a Brown Power true-up should be performed for 2018 based on Ordering Paragraph 6 of D.18-10-019. PG&E states it intends to true-up brown power beginning in 2019 based on 2019 market transactions.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 22 of 40

**EXHIBIT 2**

D.18-10-019 requires "a true-up mechanism for the brown power index to reflect actual values realized in market transactions for the subject year should be adopted to ensure that bundled and departing load customers pay equitably (*i.e.,* pro rata) for non-RA, non-RPS PCIA-eligible resources."[29]  The PCIA decision does not prohibit a true-up of brown power for the 2018 subject year. Furthermore, D.18.10.019 also states that, for now, the true-up shall be limited to brown power.[30]  Implementing a true-up of 2018 brown power by this decision meets the requirements of the PCIA decision in a timely manner.  Therefore, PG&E shall implement a 2018 brown power true-up as a result of this decision.

The 2019 forecast shall include a true-up of the 2018 forecast year for brown power.  The utilities are ordered to calculate the true-up by replacing the forecasted 2018 brown power benchmark in the 2018 Forecast ERRA case by applying actual 2018 market prices to actual PCIA-eligible generation deliveries and realized Ancillary Services revenues[31] in accordance with D.18-10-019[32]. Subsequently, the Renewable benchmark will be updated per the Commission-approved formula[33] when adjusting the Brown Power Benchmark.  The difference between the total indifference amount in the 2018 Forecast ERRA case

---

[29] D.18-10-019, COL 16.

[30] D.18-10-019 at 141.

[31] Actual 2018 market prices of PCIA-eligible generation deliveries and realized ancillary services shall be determined by the net of CAISO revenues for PCIA-eligible resources.

[32] D.18-10-019, p. 161

[33] Resolution E-4475, Exhibit A

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 23 of 40

and that calculated with the 2018 brown power true-up shall be reflected in rates in a manner compliant with the PCIA workpapers filed in this proceeding.

While we expect the Green and RA MPBs to change as a result of inputting an actual load weighted average value, neither the Green nor RA adders themselves will change for 2018. In other words, the specific values forecasted for Green and RA should not be affected in the workbook by a new brown power price, nor should the utilities update their RA or RPS adders.

## 4. Safety

The health and safety impacts of GHGs are among the many reasons that the Legislature enacted AB 32. Specifically, the Legislature found and declared that global warming caused by GHG "poses a serious threat to the economic well-being, public health, natural resources, and the environment of California. The potential adverse impacts of global warming include the exacerbation of air quality problems, a reduction in the quality and supply of water to the state from the Sierra snowpack, a rise in sea levels resulting in the displacement of thousands of coastal businesses and residences, damage to marine ecosystems and the natural environment, and an increase in the incidences of infectious diseases, asthma, and other human health-related problems."[34]

This decision implements a key part of the GHG reduction program envisioned by AB 32 and Public Utilities Code Section 748.5 and, as a result, will improve the health and safety of California residents.

---

[34] AB 32 Section 38501(a).

Case: 19-30088   Doc# 1328-2   Filed: 04/10/19   Entered: 04/10/19 17:01:54   Page 24 of 40

## 5. Procedural Issues

### 5.1. Categorization and Need for Hearings

In Resolution ALJ 176-3418, dated June 21, 2018, the Commission preliminarily categorized this proceeding as ratesetting, and preliminarily determined that hearings were necessary. Pursuant to the scoping memo, we held an evidentiary hearing on September 20, 2018. We affirm the preliminary categorization.

### 5.2 Motions for Confidential Treatment and to Admit Evidence

PG&E filed a motion for confidential treatment of its November Update pursuant to D.06-06-066, D.08-04-023, and D.14-10-033, Rule 11.5, Pub. Util. Code §§ 454.5(g) and 583, and General Order (GO) 66-C. PG&E states that these documents contain information that complies with the confidentiality requirements of the above listed Decisions, Rules, Codes and GOs, and should therefore be treated confidentially. No party commented on PG&E's request.

By D.06-06-066, D.08-04-023, and D.14-10-033, the Commission sets forth guidelines for confidential information as it applies to the confidentiality of electric procurement and GHG data (that may be market sensitive) submitted to the Commission. GO 66-C addresses access to records in the Commission's possession. Pub. Util. Code §§ 454.5(g) and 583 address the Commission processes regarding confidential documents in general, while Rule 11.5 addresses sealing all or part of an evidentiary record.

PG&E has been granted similar requests in previous ERRA Forecast Applications. We agree that the information contained in the November Update is market sensitive electric procurement-related information. PG&E identified its November Update as PG&E-6 and PG&E-6-C in its motion. On November 16, 2018 PG&E served its amended updates as PG&E-6 and

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 25 of 40

**EXHIBIT 2**

PG&E-6-C.  We grant PG&E's request to treat as confidential its Exhibit PG&E-6-C, as detailed in Ordering Paragraph 5, of this decision.

We also grant PG&E's motion to offer and admit into the evidentiary record its amended November Update, PG&E-6 and PG&E-6-C pursuant to Rule 13.8(c).

Lastly, we grant the motion of the Joint CCAs to Move Exhibits Into Evidence and Admit Exhibits Into The Record consisting of the following documents:

| Exhibit No. | Description |
|---|---|
| Joint CCAs-10 | PG&E Response to Joint CCA Data Request 7.01 |
| Joint CCAs-11 | PG&E Response to Joint CCA Data Request 8.03 |
| Joint CCAs-12 | PG&E Response to Joint CCA Data Request 8.04 |
| Joint CCAs-13 | PG&E Response to Joint CCA Data Request 8.07 |
| Joint CCAs-14 | PG&E Response to Joint CCA Data Request 8.08 |
| Joint CCAs-15 | PG&E Response to Joint CCA Data Request 8.09 |
| Joint CCAs-16 | PG&E Response to Joint CCA Data Request 8.11 |
| Joint CCAs-17 | PG&E Response to Joint CCA Data Request 8.16 |
| Joint CCAs-18 | PG&E Response to Joint CCAs Data Request 8.16 Attachment A |
| Joint CCAs-19 | PG&E Response to Joint CCA Data Request 8.17 |
| Joint CCAs-20 | PG&E Response to Joint CCA Data Request 8.18 |
| Joint CCAs-21 | PG&E Response to Joint CCA Data Request 8.20 |
| Joint CCAs-22 | PG&E Response to Joint CCA Data Request 8.22 |
| Joint CCAs-23 | PG&E Response to Joint CCA Data Request 8.24 |
| Joint CCAs-24 | PG&E Response to Joint CCA Data Request 9.04 |
| Joint CCAs-25 | PG&E Response to Joint CCA Data Request 9.05 |

Case: 19-30088   Doc# 1328-2   Filed: 04/10/19   Entered: 04/10/19 17:01:54   Page 26 of 40

| Joint CCAs-26 | PG&E Response to Joint CCA Data Request 8.23 |
|---|---|

All other pending motions are denied.

## 6. Compliance with the Authority Granted Herein

In order to implement the authority granted herein, PG&E must file a Tier 1 Advice Letter (AL) within 30 days of the date of this decision.  The tariff sheets filed in the AL shall be effective on or after the date filed subject to the Commission's Energy Division determining they are in compliance with this decision.

## 7. Reduction of Comment Period

Pursuant to Rule 14.6(b) of the Commission's Rules of Practice and Procedure, all parties stipulated to reduce the 30-day public review and comment period required by Section 311 of the Public Utilities Code to 10 days for initial comments and 5 days for reply.  Pursuant to the parties' stipulation, comments were filed on December 17, 2018 by PG&E, the California Large Energy Consumers Association, and the Joint CCAs, and reply comments were filed on December 24, 2018 by PG&E and the Joint CCAs.

We have revised portions of this decision in response to comments as noted throughout.  Many of the comments merely repeated contentions made earlier in the proceeding and therefore, we do not address them further in this decision.

We have revised section 3.3.5 to reflect that a CAM cost allocation error may initially be corrected in the 2018 ERRA Compliance proceeding.

We agree, consistent with comments, any under- or over- collection resulting from implementation of the 2018 PCIA rate shall be tracked in the PCIA subaccount.

## 8. December 27, 2018 Ruling and Comments

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 27 of 40

**EXHIBIT 2**

The Alternate Proposed Decision of Commissioner Martha Guzman Aceves in this matter was mailed on January 22, 2019 in accordance with Section 311 of the Public Utilities Code and comments were allowed under Rule 14.3 of the Commission's Rules of Practice and Procedure. Opening comments were timely filed on February 11, 2019 by PG&E and the Joint CCAs. Reply comments were filed on February 19 by PG&E, Cal Advocates, Joint CCAs and CLECA.

This section summarizes the changes made to the alternate proposed decision in response to comments and reply comments. Rather than summarizing every comment made, we focus on major arguments where we did or did not make revisions in response to party input. In response to party input, we modified section 6.4, Conclusions of Law 9 and Ordering Paragraph 7.

PG&E comments that the APD errs in ordering a 2018 Brown Power True-Up for four main reasons: They say the true up is "unambiguously prospective," that it fails to consider adjustments to PRS and RA which leads to cost shifts, that there is no evidentiary basis for the brown power true up methodology, and again that it improperly shifts costs to bundled customers.

We disagree that the PCIA Decision was only prospective, and that cannot be performed in the absence of the other components. The Decision unambiguously states that the PCIA rate methodology will be put into place starting with 2019; that at this time only PCIA's brown power true up can be performed; and that by definition, the subject year of a true up for the start year of 2019 is 2018. Therefore, the 2018 brown power must be trued up. We acknowledge that the PABA account advice letters will soon be authorized by the Commission and that a formal recorded account for these market transactions did not exist for all of 2018. For this reason, we are directing PG&E to follow a

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 28 of 40

**EXHIBIT 2**

calculation methodology that offers the most transparency and least controversy regarding verifiability of values and how they are applied in the PCIA template.

PG&E contends that the PCIA decision did not authorize a true up of 2018 PCIA Rates, a point with which we also disagree. That decision clearly stated that at this time Brown power was the only aspect of the PCIA that was non-controversial, and could be adjusted transparently.

The inclusion of RPS and RA true ups will be considered in the Phase 2 of the PCIA proceeding.

PG&E, Cal Advocates, and CLECA commented that the APDs Adoption of a Brown Power True Up Lacks Evidentiary Support and Is Inconsistent with the PCIA Decision. We disagree. The concept of a brown power true up was raised during the PCIA proceeding by Joint CCAs and parties at the time, including the utilities, found it non-controversial.

PG&E also comments that The APD's Proposed Application of a 2018 Brown Power True-up Improperly Shifts Costs to Bundled Customers, that The APD's partial true-up would incorrectly charge $218M to bundled customers; And that a full true up would result in unbundled customers owing $185M if RA and RPS market price benchmarks were included in the true up. Since the Decision only concluded that the brown power true up is the only viable component of the PCIA that can be trued up at this time, we decline to examine the impacts of the RPS and RA components; those shall be addressed in the PCIA Phase 2 proceeding. We also disagree with the characterization that this is a cost shift; instead, we believe that this true up provides improved accuracy by relying on actual values. We acknowledge that cost shifts have persisted throughout the years, yet this is incremental progress as PCIA methodology

Case: 19-30088   Doc# 1328-2   Filed: 04/10/19   Entered: 04/10/19 17:01:54   Page 29 of 40

continues to evolve, and we believe that this brown power true up makes meaningful improvement to the 2019 ERRA forecast.

     The Joint CCAs recommended that PG&E should also develop a mechanism to include tax savings in unbundled customers 2019 PCIA rates since bundled customers will receive such a benefit in the 2019 generation rates and that the Commission should address correcting the CAM-related error in the APD. While we decline to take up this issue in this Decision, we do acknowledge our intent that all affected customers, including unbundled customers, will benefit simultaneously from a refund related to PG&E's accounting errors.

## 9. Assignment of Proceeding

     Martha Guzman-Aceves is the assigned Commissioner and Eric Wildgrube is the assigned Administrative Law Judge in this proceeding.

## Findings of Fact

1. By Resolution ALJ 176-3418, dated June 21, 2018, Application (A.) 18-06-001 was categorized as ratesetting with hearings needed.

2. In A.18-06-001, PG&E requests, pursuant to its Application, and Update, that the Commission: 1) adopt a forecast for the 2019 electric procurement revenue requirement of $2,907.4 million for PG&E, , which consists of $1,532.4 million for the ERRA, $80.3 million for the Ongoing Competition Transition Charge, $1,163.7 million for the PCIA and $131.1 million for the CAM; 2) approve PG&E's 2019 electric sales and peak load forecasts; 3) adopt a 2019 GHG-related forecast of $1.083 million for administrative and outreach expenses pertaining to implementation of GHG allowance proceeds return, $324.5 million net forecast GHG revenue return amount; and adopts a 2019 semi-annual residential California Climate Credit of $29.18 per customer; 4) find 2017 recorded administrative and outreach expenses of $1.052 million pertaining to

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 30 of 40

**EXHIBIT 2**

implementation of GHG allowance proceeds return, are reasonable; and,
5) approve PG&E's rate proposals associated with its electric procurement
related revenue requirements to be effective in rates January 1, 2019.

    3.  PG&E submits the following requests to which the parties generally
agreed or did not contest:

        1.  PG&E's proposed ERRA revenue requirement of
$1,532.4 million (exclusive of the amount related to the
PCIA), Ongoing Competition Transition Charge (CTC) of
$80.3 million, and Cost Allocation Mechanism (CAM)
revenue requirement of $131.1 million;

        2.  PG&E's 2019 forecast of electric sales;

        3.  PG&E's rate proposals associated with its proposed total
electric procurement related revenue requirements to be
effective in rates on January 1, 2019;

        4.  PG&E's proposed 2019 GHG related forecasts and
expenses of:  a) GHG administrative and outreach expense
of $1.083 million; b) the net GHG revenue return of
$324.5 million; and c) the semiannual residential California
climate credit of $29.18;

        5.  PG&E's 2017 recorded administrative and outreach
expenses of $1.052 million related to the 2017 GHG
revenue return to be found as reasonable; and

        6.  PG&E's 2019 forecast of direct and indirect GHG emissions
and related costs to be found as reasonable and consistent
with Commission and state policies and laws.

    4.  PG&E's forecasts and accounting for Diablo Canyon Power Plant are
reasonable.

    5.   A petition for modification of D.17-05-013, PG&E's 2017 General Rate
Case is pending to address reduction of the revenue requirement due to the Tax
Cuts and Jobs Act of 2017.

6.  It is reasonable that the subject year of the brown power true-up required by Ordering Paragraph 6 of D.18.10.019 commences with 2018.

7.  It is reasonable to value Resource Adequacy capacity and Renewable Portfolio Standard eligible energy in excess of demand using the Market Price Benchmark.

8.  PG&E's use of the bundled service generation average rate for each rate group and the total generation average rate for bundled customers for calculating the allocation factors to be used in the PCIA rate calculation is reasonable.

9.  It is reasonable to continue to calculate the PCIA rate by dividing the allocated vintaged Indifference Amount by the forecasted system sales.

10.  There is a cost allocation error related to CAM eligible contracts.

11.  The Joint CCAs filed a motion to offer and admit into evidence documents that have been identified as Joint CCAs-10 through Joint CCAs-26.

12.  PG&E filed a motion to offer and admit into evidence its November Update, identified as PG&E-6 and PG&E-6-C.

13.  PG&E filed a motion requesting confidential treatment of certain exhibits containing information that complied with the confidential requirements as set out by the Commission.

14.  Rule 11.5 addresses sealing all or part of an evidentiary record.

15.  By D.06-06-066, D.08-04-023, and D.14-10-033, we set forth guidelines for confidential information, as it applies to the confidentiality of electric procurement and GHG data (that may be market sensitive) submitted to the Commission.

16.  GO 66-C addresses access to records in the Commission's possession.

Case: 19-30088   Doc# 1328-2   Filed: 04/10/19   Entered: 04/10/19 17:01:54   Page 32 of 40

17. Pub. Util. Code §§ 454.5(g) and 583 addresses the Commission processes regarding confidential documents in general.

**Conclusions of Law**

1. PG&E's updated 2019 ERRA forecast should be adopted/approved, as modified: 1) adopt a forecast for the 2019 electric procurement revenue requirement of $2,907.4 million for PG&E, which consists of $1, 653.2 million for the ERRA, $80.3 million for the Ongoing Competition Transition Charge, $1,042.9 million for the PCIA (less the amount of the brown power true-up) and $131.1 million for the CAM; 2) approve PG&E's 2019 electric sales and peak load forecasts; 3) adopt a 2019 GHG-related forecast of $1.083 million for administrative and outreach expenses pertaining to implementation of GHG allowance proceeds return, $310 million net forecast GHG revenue return amount, $56.606 million for Clean Energy and Energy Efficiency programs, including $14.499 million for Disadvantaged Communities-Green Tariff and Community Solar Green Tariff programs; and adopts a 2019 semi-annual residential California Climate Credit of $27.70 per customer; 4) find 2017 recorded administrative and outreach expenses of $1.052 million pertaining to implementation of GHG allowance proceeds return, are reasonable; and, 5) approve PG&E's rate proposals associated with its electric procurement related revenue requirements to be effective in rates January 1, 2019.

2. The sales of Resource Adequacy capacity and Renewable Portfolio Standard eligible energy should be valued using the Market Price Benchmark.

3. It is reasonable to address misallocated CAM related costs in the 2018 ERRA compliance and 2020 ERRA forecast proceedings.

4.  It is reasonable to defer in the PCIA calculation recognition of potential tax savings realized from application of the Tax Cut and Jobs Act because they are not yet approved by the Commission.

5.  A true-up of brown power in the 2019 ERRA Forecast based on 2018 actual net CAISO revenues for PCIA-eligible resources complies with D.18-10-019.

6.  This decision implements a key part of the GHG reduction program envisioned by AB 32 and Public Utilities Code Section 748.5 and, as a result, will improve the health and safety of California residents.

7.  PG&E's Exhibits PG&E-6 and PG&E-6-C, should be identified and received into the evidentiary record.

8.  PG&E's request to seal the confidential version of its testimony should be granted, as detailed herein.

9.  The Joint CCAs exhibits Joint CCAs-10 through Joint CCAs-26, inclusive, should be identified and received into the evidentiary record.

10.  This decision should be effective immediately so that it may be reflected in rates on January 1, 2019 or as soon thereafter as reasonably practicable.

## O R D E R

**IT IS ORDERED** that:

1.  Pacific Gas and Electric Company's (PG&E) requests in Application 17-06-005 are modified and adopted as follows:  1) adopt a forecast for the 2019 electric procurement revenue requirement of $2,907.4 million for PG&E, which consists of $1,653.2 million for the Energy Resource Recovery Account, $80.3 million for the Ongoing Competition Transition Charge, $1,042.9 million for the Power Charge Indifference Adjustment (less the amount

Case: 19-30088   Doc# 1328-2   Filed: 04/10/19   Entered: 04/10/19 17:01:54   Page 34 of 40

of the brown power true-up) , and $131.1 million for the Cost Allocation Mechanism; 2) approve PG&E's 2019 electric sales and peak load forecasts; 3) adopt a 2019 Greenhouse Gas (GHG)-related forecast of $1.083 million for administrative and outreach expenses pertaining to implementation of GHG allowance proceeds return, $310 million net forecast GHG revenue return amount, $56.606 million for Clean Energy and Energy Efficiency programs, including $14.499 million for Disadvantaged Communities-Green Tariff and Community Solar Green Tariff programs, and adopts a 2019 semi-annual residential California Climate Credit of $27.70  per customer; 4) find 2017 recorded administrative and outreach expenses of $1.052 million pertaining to implementation of GHG allowance proceeds return, are reasonable; and, 5) approve PG&E's rate proposals associated with its electric procurement related revenue requirements to be effective in rates January 1, 2019 or as soon thereafter as reasonably practicable.

2. PG&E must file a Tier 2 Advice Letter within 15 days of the date of this decision including tariff sheets in compliance with this decision.

3. Pacific Gas and Electric Company's updated 2019 electric sales forecast and rate proposals associated with its electric procurement related revenue requirements is approved to be effective in rates January 1, 2019 or as soon thereafter as reasonably practicable, subject to the Annual Electric True-up process.

4. The calculation of the PCIA rate shall follow as it has in past ERRA proceedings by allocating the cumulative vintaged Indifference Amount to each rate group using the allocation factors followed by dividing by the forecasted system sales for the forecast year.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 35 of 40

**EXHIBIT 2**

5. The 2019 forecast shall include a true-up of the 2018 forecast year for brown power. Pacific Gas and Electric Company is ordered to calculate the true-up by applying actual 2018 market prices to actual PCIA-eligible generation deliveries and realized Ancillary Services revenues in accordance with D.18-10-019. Subsequently, the Renewable benchmark will be updated per Resolution E-4475 when adjusting the Brown Power Benchmark. Pacific Gas and Electric Company's request for receipt of the public and confidential versions of its Exhibits PG&E-6 and PG&E-6-C, into the record is approved.

6. Pacific Gas and Electric Company's request to treat as confidential, its Exhibit PG&E-6-C, is granted. This exhibit shall remain sealed and confidential for a period of three years after the date of this order, and shall not be made accessible or disclosed to anyone other than the Commission staff or on further order or ruling of the Commission, the assigned Commissioner, the assigned Administrative Law Judge (ALJ), the Law and Motion Judge, the Chief ALJ, or the Assistant Chief ALJ, or as ordered by a court of competent jurisdiction. If PG&E believes that it is necessary for this information to remain under seal for longer than three years, PG&E may file a new motion stating the justification of further withholding of the information from public inspection. This motion shall be filed at least 30 days before the expiration of this limited protective order.

7. The Joint Community Choice Aggregators' request for receipt of Joint CCAs-10, Joint CCAs-11, Joint CCAs-12, Joint CCAs-13, Joint CCAs-14, Joint CCAs-15, Joint CCAs-16, Joint CCAs-17, Joint CCAs-18, Joint CCAs-19, Joint CCAs-20, Joint CCAs-21, Joint CCAs-22, Joint CCAs-23, Joint CCAs-24, Joint CCAs-25, and Joint CCAs-26 into the record is approved.

8. Application 18-06-001 is closed.

This order is effective today.

Dated February 21, 2019, at San Francisco, California.

LIANE M. RANDOLPH
MARTHA GUZMAN ACEVES
CLIFFORD RECHTSCHAFFEN
GENEVIEVE SHIROMA
Commissioners

I dissent.

/s/  MICHAEL PICKER
     Commissioner


I reserve the right to file a concurrence.

/s/  MARTHA GUZMAN ACEVES
     Commissioner

**EXHIBIT 2**

## CONCURRENCE OF COMMISSIONER GUZMAN ACEVES ON ITEMS 33A AND 34A ON THE COMMISSION VOTING MEETING AGENDA OF FEBRUARY 21, 2019 DECISIONS REGARDING PACIFIC GAS AND ELECTRIC CO. AND SOUTHERN CALIFORNIA EDISON CO. 2019 ENERGY RESOURCE RECOVERY ACCOUNT FORECASTS

Decisions (D.) 19-02-023 and D.19-02-024, issued March 4, 2019, are two alternate decisions to improve the accuracy of both PG&E and SCE's 2019 forecast electric procurement revenue requirement, in particular the brown power true-up from 2018. The ERRA alternate decision appropriately addresses unforecasted revenues from brown power in 2018, just as companion decisions address undercollection of costs, such as the SCE trigger application for 2018, Application 18-11-009.

The ERRA forecasts are the process we use to allow utilities to collect revenue in anticipation of the costs of procuring energy for the year ahead, as well as other major expenditures, including the GHG auction proceeds and cap and trade costs, Energy Settlements Memorandum Accounts and the New System Generation Balancing Account. We approve these forecasts and then consolidate them in the annual electric true-up. The 2019 forecasts are $2.9 billion for PG&E and more than $4 billion for SCE.

Both the State Legislature and the Commission have established forecast triggers for addressing revenue shortfalls (or 'undercollections'). The triggers provide mechanism for the utilities to notice when the actual market prices diverge from the forecasts by 5%. The intent of the trigger notification mechanism is to shed some daylight on where the energy market is going—particularly if the market does not appear to self-correct—and enable us to "true-up" the rates midstream in order to minimize bill shocks.

We approved such a trigger application in January for SCE, whose undercollection was more than $800 million. Originally, SCE sought to roll this into its 2019 forecast; however, due to the magnitude of the undercollection we decided to treat it as a separate application. Nevertheless, this illustrates that various true-ups are perpetual functions within the ERRA proceedings.

Interestingly, while on one hand we are diligent in addressing the cost side of the equation--ensuring that the utilities are able to recover undercollections--we have so far been under-emphasizing the unforecasted revenue side of the equation by some of the procured electricity. The growth and transition in Load

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 38 of 40

Serving Entities necessitates greater accuracy in both the costs and revenues generated by the utilities procured electricity.

The Power Cost Indifference Account (PCIA) is an important part of ratemaking that came out of the energy crisis to ensure that departing load or unbundled customers pay for investments made by the utilities to serve their load. The statutory framework supporting CCA formation requires the Commission to ensure that departing customers remain responsible for certain costs incurred on their behalf by their utility, without being subject to costs that were not incurred on their behalf, and to do the accounting as accurately as possible. In the most recent PCIA decision D.18-10-019 Ordering Paragraph 7, the Commission ordered the utilities to annually true-up their PCIA rates to reflect actual values realized in market transactions for the subject year for the Brown Power Index to capture the full costs and revenues of generated by brown power, including market energy prices and ancillary services revenues. Historically, this component of the PCIA is based entirely on forecasts, using Brown Power Benchmark prices with no adjustment or true-up to reflect actual energy costs incurred by those customers. In 2018 we saw startling variations between the forecast prices of electricity and other components of the so-called brown power and actual market prices. Therefore, we are following the Decision language and implementing a true-up.

One concerning topic of the utilities' comments to the Alternate Proposed Decision (APD) was that of cost shifting, and their assertion that a brown power true-up in the absence of the RPS and RA adjustments would impermissibly shift cost burdens to bundled customers. However, at this time we have Decision language explicitly directing a brown power true-up using a transparent methodology; the methodology to calculate and true-up other PCIA cost components will take place this year in Phase 2 of the PCIA proceeding, as described in President Picker's recent Scoping Memo.

Other parties also expressed concern that there was insufficient evidentiary record to order the brown power true-up, yet I believe the APD covers the concern over the evidentiary record for requiring the brown-power true-up. In addition to the Ordering Paragraph 7 already discussed, brown power calculation has been considered a straightforward exercise, and although we do not have utility-recorded transactions for 2018, we have equally transparent and accessible market data from the CAISO that can be relied upon for subject year 2018.

Case: 19-30088    Doc# 1328-2    Filed: 04/10/19    Entered: 04/10/19 17:01:54    Page 39 of 40

By the end of this year, California will see more than half of its investor-owned utility customers served by CCAs: 41% of PG&E's load, and 15% of SCE's load. We face many challenges during this transition, and transparency in forecasting is critical step forward to ensuring a more balanced transition.

Dated March 4, 2019 at San Francisco, California.

/s/ MARTHA GUZMAN ACEVES

Martha Guzman Aceves
Commissioner