1        UNITED STATES BANKRUPTCY COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4   In Re:                     ) Case No. 19-30088
                               ) Chapter 11
5   PG&E CORPORATION AND PACIFIC   )
    GAS AND ELECTRIC COMPANY    ) San Francisco, California
6                               ) Wednesday, April 10, 2019
                       Debtor.  ) 1:30 PM
7   _____ )
                               MOTION OF DEBTORS PURSUANT TO
8                              11 U.S.C. SECTIONS 105(A),
                               362, AND 363 AND FED. R.
9                              BANKR. P. 2002, 4001, AND
                               6004 FOR AN ORDER (I)
10                             AUTHORIZING DEBTORS TO (A)
                               SELL, TRANSFER, LEASE OR
11                             OTHERWISE ENCUMBER REAL
                               PROPERTY, (B) LEASE, LICENSE,
12                             AND PERMIT AGREEMENTS
                               RELATING TO THIRD-PARTY
13                             PROPERTY, AND (C) PURSUE AND
                               BRING EMINENT DOMAIN
14                             PROCEEDINGS TO JUDGMENT OR
                               ENTER INTO SETTLEMENTS IN
15                             LIEU THEREOF, SUBJECT TO
                               CERTAIN PROCEDURES AND
16                             PARAMETERS, AND (II) GRANTING
                               RELATED RELIEF [DKT. 1004].
17
                        TRANSCRIPT OF PROCEEDINGS
18              BEFORE THE HONORABLE DENNIS MONTALI
                   UNITED STATES BANKRUPTCY JUDGE
19
    APPEARANCES:
20  For the Debtor:            JESSICA LIOU, ESQ.
                               Weil, Gotshal & Manges LLP
21                             767 Fifth Avenue
                               New York, NY 10153
22                             (212)310-8817

23  For Joinders:             SCOTT E. JENNY, ESQ.
                               Jenny & Jenny, LLP
24                             736 Ferry Street
                               Martinez, CA 94553
25                             (925)228-1265

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
1    For Official Creditors'     THOMAS R. KRELLER, ESQ.
     Committee:                  Milbank LLP
2                                2029 Century Park East
                                 33rd Floor
3                                Los Angeles, CA 90067
                                 (424)386-4000
4
     For DF Properties and       KRISTEN DITLEVSEN RENFRO, ESQ.
5    Other Property Owners:      Desmond, Nolan, Livaich &
                                 Cunningham
6                                15th & S Building
                                 1830 15th Street
7                                Sacramento, CA 95811
                                 (916)443-2051
8
     For California State        STEVEN H. FELDERSTEIN, ESQ.
9    Agencies:                   (Telephonically)
                                 Felderstein Fitzgerald Willoughby
10                               & Pascuzzi LLP
                                 400 Capitol Mall
11                               Suite 1750
                                 Sacramento, CA 95814
12                               (916)329-7400

13   For CPUC:                   BRIAN S. HERMANN, ESQ.
                                 (Telephonically)
14                               ALAN W. KORNBERG, ESQ.
                                 (Telephonically)
15                               Paul Weiss Rifkind Wharton &
                                 Garrison
16                               1285 Avenue of the Americas
                                 New York, NY 10019
17                               (212)373-3000

18   For City of Oakland:        MONIQUE D. JEWETT-BREWSTER, ESQ.
                                 (Telephonically)
19                               Hopkins & Carly
                                 70 South 1st Street
20                               San Jose, CA 95113
                                 (408)286-9800
21
     For Topaz:                  JEFFREY C. KRAUSE, ESQ.
22                               (Telephonically)
                                 Gibson, Dunn & Crutcher LLP
23                               333 South Grand Avenue
                                 Los Angeles, CA 90071
24                               (213)229-7995

25
```

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
1   For Stroock & Stroock &      FRANK A. MEROLA, ESQ.
    Lavan LLP:                   (Telephonically)
2                               Stroock & Stroock & Lavan LLP
                                2029 Century Park East
3                               Los Angeles, CA 90067
                                (310)556-5800
4
    For Teichert:               KELLY L. POPE, ESQ.
5                               (Telephonically)
                                Downey Brand LLP
6                               621 Capitol Mall
                                18th Floor
7                               Sacramento, CA 95814
                                (916)444-1000
8
    For Official Tort Claimant  JORIAN L. ROSE, ESQ.
9   Committee:                  (Telephonically)
                                Baker & Hostetler LLP
10                              45 Rockefeller Plaza
                                New York, NY 10111
11                              (212)589-4681

12  For Southern Power          HARRIS B. WINSBERG, ESQ.
    Company:                    (Telephonically)
13                              Troutman Sanders LLP
                                600 Peachtree Street NE
14                              Suite 3000
                                Atlanta, GA 30308
15                              (404)885-3000

16

17
    Court Recorder:             JANE GALVANI
18                              United States Bankruptcy
                                Court
19                              450 Golden Gate Avenue
                                16th Floor
20                              San Francisco, CA 94102

21  Transcriber:                SUSAN PATTERSON
                                eScribers, LLC
22                              7227 N. 16th Street
                                Suite #207
23                              Phoenix, AZ 85020
                                (973)406-2250
24
    Proceedings recorded by electronic sound recording;
25  transcript provided by transcription service.
```

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, APRIL 10, 2019, 1:31 PM

2                              -oOo-

3        (Call to order of the Court.)

4            THE COURT:  Good afternoon.  Please be seated.

5            MS. LIOU:  The Matter of PG&E Corporation.  Good

6    afternoon, Your Honor.  For the record, Jessica Liou, from

7    Weil, Gotshal & Manges, counsel for the debtors.

8            THE COURT:  Good afternoon.  We don't have much left,

9    do we?

10           MS. LIOU:  No, no.  The only item moving forward today

11   on the agenda is docket number 1004.  It's what I'll call the

12   debtor's real property transactions motion.

13           THE COURT:  All right.

14           MS. LIOU:  In support of the motion, we filed the

15   declaration of Mr. Andrew Williams, who's in court today.  And

16   Your Honor, as you may have seen by this motion, the debtors

17   are seeking to continue to enter into and consummate a variety

18   of transactions relating to real property interests and

19   establish procedures for determining when such transactions

20   require committee review and/or Court approval.  It's a pretty

21   straightforward motion.

22           Your Honor, I'll just inform you that we had four

23   formal responses filed to this motion by certain property

24   owners in eminent domain actions, limited opposition at docket

25   number 1177, and a joinder filed to our motion at docket number

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  1075.

2      THE COURT:  I have them all, yes.

3      MS. LIOU:  There was also a response filed by the

4  California State agencies, which we have fully resolved, and

5  also a response filed by the City of Oakland, which we have

6  fully resolved.

7      In addition to these formal responses, the debtors

8  have received a number of informal comments from among other

9  parties the creditors' committee, the claimants' committee, the

10  CPUC, certain landlords, and potential lienholders, all of

11  which we have resolved with the changes noted in the redline

12  that was filed with this court on Monday evening at docket

13  number 1286.

14      THE COURT:  It sounded all right to me too, and I've

15  looked at it.  I guess the real simple question is, is there

16  anyone here in court or on the phone that wishes to be heard

17  and has any ongoing objection to anything that's been resolved?

18  Come on forward and -- name and identification and let's see if

19  we can get it straightened out, because I've reviewed them all

20  separately, and accept for any that were unresolved, I'm good

21  to go.  Yes?

22      MS. RENFRO:  Good afternoon, Your Honor.  Kristen

23  Renfro, Desmond law firm in Sacramento, appearing on behalf of

24  DF Properties and other property owners.  We filed the limited

25  opposition to the motion relative to the treatment of eminent

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    domain --

2         THE COURT:  Right.

3         MS. RENFRO:  -- actions.

4         THE COURT:  But I couldn't tell what you wanted me to

5    do.  I mean, the debtor filed the action, and you're raising

6    the automatic stay is not an issue.  That's not an issue, so

7    what is still an issue from your point of view?

8         MS. RENFRO:  Well, I think that the automatic stay is

9    an issue, Your Honor, because this motion is seeking relief

10   that presupposes the automatic stay, operates as a bar to cases

11   in which PG&E is the plaintiff.

12        THE COURT:  Hold on, maybe I didn't state it well.

13        MS. RENFRO:  Sure.

14        THE COURT:  It doesn't.  There is no stay in the

15   matter that PG&E initiated.  So --

16        MS. RENFRO:  I agree with Your Honor wholeheartedly.

17        THE COURT:   But what is -- let's try it a different

18   way.  What is that you're bothered by about this motion

19   that's --

20        MS. RENFRO:  Well, I think the Court is not aware,

21   then, of the fact that notices of stay have been filed in all

22   of the eminent domain cases that my office handles by the

23   outside counsel that are assigned to those eminent domain

24   matters on behalf of PG&E and that nothing is happening in

25   those cases, based on the representations of PG&E's counsel in

PG&E Corporation, et al.

1    those cases, that the automatic stay does bar the proceedings

2    and that we're at a standstill.  And conversations, meet-and-

3    confer efforts that we've had with counsel for PG&E in the

4    bankruptcy case, it hasn't produced agreement on that point.

5    The order --

6                THE COURT:  Well, again without naming lawyers --

7                MS. RENFRO:  Sure.

8                THE COURT:  -- is it PG&E bankruptcy lawyers that

9    still believe the stay is an impediment?  Or is it the outside

10   counsel that perhaps haven't got the message?

11               MS. RENFRO:  Apparently now both.  And the proposed

12   order that PG&E has submitted to you would allow PG&E, by its

13   terms, to determine which of the cases it's involved in,

14   eminent domain cases, would have relief from stay.

15               THE COURT:  Okay, Ms. Liou, you're going to have to

16   tell me whether this is a nonissue or --

17               MS. LIOU:  I can clarify, Your Honor.

18               THE COURT:  Yeah.

19               MS. LIOU:  So first off, there are a number of

20   proceedings where PG&E as plaintiffs have initiated eminent

21   domain actions.  The ones in which they filed the notices of

22   stay are proceedings in which the debtors have already taken

23   possession of the land and there has been a pre-petition

24   settlement agreement executed with the parties.  That's my

25   understanding, based on my conversations with the debtors.

                    PG&E Corporation, et al.

1            If that's the case, that's a pre-petition settlement

2   agreement upon which the debtors are not authorized to make a

3   payment unless they come before this Court and seek that

4   authorization.

5            THE COURT:  Well, which is Ms. Renfro covering?  Is

6   she in that other category?

7            MS. LIOU:  I'm not sure, but I will say that I'm just

8   aware of notices of stay filed in those actions because we do

9   not have authority to pay those claims, and that was meant to

10  kind of let the other parties know that that's the case.

11           THE COURT:  But we have to --

12           MS. LIOU:  And with respect to --

13           THE COURT:  But wait.  We've got to divide the world

14  into where PG&E is the plaintiff and where it isn't the

15  plaintiff.

16           MS. LIOU:  Well --

17           THE COURT:  If it's the plaintiff, there should --

18           MS. LIOU:  -- there's really three buckets here,

19  right?

20           THE COURT:  Okay.

21           MS. LIOU:  So there are actions in which PG&E are the

22  defendants --

23           THE COURT:  Right.

24           MS. LIOU:  -- which I think it's pretty clear, the

25  stay applies.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  THE COURT:  Agreed.

2  MS. LIOU:  And we have to make a case-by-case

3  determination whether or not the stay should be lifted.

4  THE COURT:  Correct.

5  MS. LIOU:  And then there are actions in which PG&E is

6  the plaintiff.  For actions in which PG&E has initiated an

7  action and there hasn't been any kind of determination about

8  their ability to possess the land, my understanding from the

9  clients is that notices of stay were not filed in those

10  proceedings.  But I think the larger issue, Your Honor, is that

11  I think counsel misconstrues the purpose of this motion.

12  This motion is purely a procedural motion.  It's not

13  making a determination in this motion whether or not the stay

14  does or does not apply.  To the extent that opposing counsel

15  believes that for some reason the stay should not apply to a

16  pending proceeding, then she is more than welcome to file a

17  motion to seek relief from the stay or determination of the

18  stay does not apply, which some individuals have already begun

19  to do in this case.

20  So we're not prejudicing those rights.  And as you'll

21  see, Your Honor, the proposed order includes revisions that

22  makes that very clear.  And the language about PG&E being able

23  to stipulate upon consent with another party to that

24  transaction to lift the stay is, again, just meant to be a

25  procedural mechanism so that we don't have to file a motion,

PG&E Corporation, et al.

1   wait fourteen days, come before this Court, and then get

2   another court order to approve a stipulation that both parties

3   have consensually entered in to.

4           THE COURT:  Well, I agree.

5           MS. LIOU:  It isn't PG&E taking the unilateral ability

6   to make a declaration that the stay does or does not apply in a

7   particular instance.

8           THE COURT:  Well, Ms. Renfro, what confused me was

9   that your papers say about all this interference with your

10  client's rights, and I couldn't tell what your client's rights

11  are being interfered with.  So why don't we divide the world

12  into cases where PG&E is the plaintiff and where it's not the

13  plaintiff.

14          MS. RENFRO:  Well, sure.  Your Honor, and I'm only

15  interested myself, my clients are only interested in that

16  bucket of cases where PG&E is the plaintiff.

17          THE COURT:  So why don't we stop right there --

18          MS. RENFRO:  Yes.

19          THE COURT:  -- and say there should be no stay and

20  nothing that PG&E, other counsel, or even current counsel is

21  advocating that suggests that there's an automatic stay.

22          MS. RENFRO:  Okay.  I would --

23          THE COURT:  Can we solve the problem by just --

24          MS. RENFRO:  That would get us a long distance of the

25  way there.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    THE COURT:  Is that a problem for you, Ms. Liou?

2    MS. LIOU:  Yes, that is a problem for us, Your

3  Honor --

4    THE COURT:  All right.

5    MS. LIOU:  -- because we don't think that that

6  determination should be made in the context of this motion.

7    THE COURT:  But there shouldn't -- your clients

8  shouldn't have --

9    MS. LIOU:  Well, Your Honor, let me pose a couple

10  of --

11    THE COURT:  -- said there's a notice of stay in the

12  first place.

13    MS. LIOU:  -- let me pose a couple of hypotheticals --

14    THE COURT:  Well --

15    MS. LIOU:  -- where the stay might apply, right --

16    THE COURT:  Okay.

17    MS. LIOU:  -- in looking at a case-by-case basis.

18  Let's say, for example, PG&E initiated the initial action.

19    THE COURT:  Um-hum.

20    MS. LIOU:  A determination was made, and now the other

21  party has appealed.  In that case --

22    THE COURT:  There's still no stay.

23    MS. LIOU:  -- the stay should apply if the other party

24  is appealing.

25    THE COURT:  No, it doesn't.  You're misconstruing the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1   law.  The law measures the stay as of the petition date, and --

2   I mean, the initiation of the action, excuse me, initiation of

3   the action.  So read the automatic stay.  The automatic stay

4   says, you can't stay an action against the debtor or continuing

5   against the debtor.  So if the debtor initiated the action and

6   was successful, and the defendant wishes to appeal, there's no

7   stay.  There never was one.

8          MS. LIOU:  Well, in instances where, for example, then

9   the debtors have entered into pre-petition settlement

10  agreements, and now those parties are seeking to enforce

11  payment on those --

12         THE COURT:  That's different.

13         MS. LIOU:  -- those are the subset of buckets that I'm

14  aware of right now.

15         THE COURT:  But look, if Ms. -- I'll personalize it

16  because it's simpler to personalize it.  If Ms. Renfro is

17  representing her client who believes that there's no stay that

18  prohibits her client from defending an action, that's simple.

19  That's the law.  If her client is being threatened with a levy

20  of execution to recover a judgment or something, that

21  implicates the stay not because of the original litigation, but

22  rather whether she's trying to recover property from the

23  debtor.

24         So I guess I'm having trouble knowing where the stay

25  would ever apply where she is representing the plaintiff, even

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    if -- I'm sorry, where PG&E is the plaintiff, even if now the

2    other party is trying to appeal.  You follow me?

3         MS. LIOU:  I follow you.  I'm just primarily concerned

4    about the situation where -- admissions are made in, for

5    example, the joinder to the motion that was filed, which was

6    styled as a joinder but really a limited opposition because it

7    was seeking relief outside the scope of the original --

8         THE COURT:  Which one is that?  The 10 --

9         MS. LIOU:  -- relief of the debtors requested.

10        THE COURT:  -- is this 1075 or which --

11        MS. LIOU:  Yeah.  It's docket number 1075.

12        THE COURT:  That wasn't filed by Ms. Renfro.

13        MS. LIOU:  No.

14        MR. JENNY:  That's me, Your Honor.

15        THE COURT:  Oh.

16        MR. JENNY:  Scott Jenny appearing on behalf of the

17   joinder.

18        THE COURT:  Oh, Mr. Jenny, okay.

19        MS. LIOU:  Where we have pre-petition settlement

20   agreements and we filed notices of stay in those proceedings.

21        MR. JENNY:  I have four eminent domain cases.  PG&E

22   has taken possession, we litigated, we --

23        THE COURT:  Who's the plaintiff?  Let's start with

24   who's the plaintiff.

25        MR. JENNY:  Pardon?

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corporation, et al.

1          THE COURT:  Who's the plaintiff?

2          MS. LIOU:  PG&E.

3          MS. RENFRO:  PG&E.

4          MR. JENNY:  PG&E is the plaintiff; no cross-

5    complaints, an inverse, or anything.

6          THE COURT:  So no automatic stay?

7          MR. JENNY:  Solid, straightforward, eminent domain

8    cases.

9          THE COURT:  Okay.

10         MR. JENNY:  We attended a JAMS (phonetic) mediation,

11   but PG&E never signed the settlement agreements.

12         THE COURT:  Okay.

13         MR. JENNY:  So although we headed that way, they never

14   executed the settlement documents --

15         THE COURT:  Okay.

16         MR. JENNY:  -- so we don't have a settlement, but

17   Cesar Alegria, who is inhouse counsel for PG&E, filed stays in

18   all four cases.

19         THE COURT:  But that seems wrong.

20         MR. JENNY:  Yes, sir.  So I had an order here to

21   relieve stays.  Ms. Renfro is seeking broad --

22         THE COURT:  It's not the question of -- well, okay.

23         MR. JENNY:  Anyway, I'm seeking very specific relief

24   just to my four cases.  I agree with Ms. Renfro's positions,

25   but for me, I'm just looking for relief of stay in my four

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    cases.  So the cases could either settle or go to trial.  My
2    clients already have the projects on their property and haven't
3    been paid.
4              THE COURT:  But what are you going to do -- if the
5    stay is out of your way, what happens?  What happens next?
6              MR. JENNY:  We either go towards settlement --
7              THE COURT:  I mean, forget mediation or --
8              MR. JENNY:  Yeah.
9              THE COURT:  -- consensual settlement.  Let's say
10   there's no stay.  What happens next in your mind in your four
11   cases?
12             MR. JENNY:  Either PG&E agrees to settle the cases,
13   and my numbers are lower than the pending PG&E motion, so we
14   don't need to come back before you; they're not tremendously
15   large cases.
16             THE COURT:  Right.
17             MR. JENNY:  Or we go to trial; that's it.
18             THE COURT:  What would you do at trial?
19             MR. JENNY:  Seek just compensation.
20             THE COURT:  But you'd be -- it would be a trial of a
21   defense of an eminent domain cases.
22             MR. JENNY:  I would be --
23             THE COURT:  So there's never been a stay.
24             MR. JENNY:  There should never have been a stay, yes.
25             THE COURT:  So why are we bogged down on this?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    MS. LIOU:  Well, I think we're not bogged down.  What

2    we're concerned about is that today in the context of a

3    procedures motion, they're asking Your Honor to grant

4    incredibly broad relief that says, in every single action where

5    we have initiated an eminent domain proceeding, regardless of

6    whether or not there are counterclaims, regardless of whether

7    or not there are other issues at play, they want you to make a

8    determination that the automatic stay does not apply.  We just

9    don't think that is appropriate.

10    THE COURT:  Okay.  But now let's get to the specifics.

11    If Mr. --

12    MR. JENNY:  Jenny.

13    THE COURT:  I'm sorry, Jenny.  I almost said Kenny.

14    If Mr. Jenny's clients are procedurally are simply four

15    defendants, not cross-complainants, four defendants, four

16    actions initiated by PG&E, there are no stay implications.  And

17    they shouldn't be -- they and the trial judge shouldn't be

18    confused by it.

19    MR. JENNY:  And I raised it today in my joinder.  I

20    mean I put it up before; I teed it up.

21    THE COURT:  So can't we just give him an order that --

22    like a comfort order that says there is no stay in effect, just

23    to these four?

24    MS. LIOU:  Your Honor, let me discuss that with my

25    client before I --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    THE COURT:  Well, no, discuss it with me, because to

2   me there shouldn't have been a stay in the first place.

3    MS. LIOU:  So let me just make sure I understand where

4   you're going with this then.  Apart from this motion and the

5   order on this motion, you're suggesting that we provide or

6   submit to this Court a separate comfort order that deals with

7   specifically these four actions and whether or not the stay

8   applies to these eminent domain proceedings?

9    THE COURT:  You're overstating the case.  I'll say it

10  again.  You, correctly and efficiently, as PG&E has done in so

11  many cases, have brought a whole basket of different kinds of

12  things.  And that's fine, I'm all for solving lots of problems.

13  But out of this universe of people implicated by today's

14  omnibus motion, one lawyer representing four groups of people

15  wants just to go forward with life in their world and doesn't

16  want to be told that there even is a stay in favor of this

17  Chapter 11 debtor.  And the answer is, and I know, and you

18  know, there is no stay.

19    MS. LIOU:  So how about we do this then.

20    THE COURT:  How about we just --

21    MS. LIOU:  We can withdraw the notices --

22    THE COURT:  How about we just have an order that says

23  there's no stay in these four cases?

24    MS. LIOU:  I think that's what I --

25    MR. JENNY:  I have that order, Your Honor.

PG&E Corporation, et al.

1    MS. RENFRO:  How about an order --

2    THE COURT:  I'll come to yours --

3    MS. LIOU:  Your Honor, I think that's what I

4    suggested.

5    THE COURT:  Slow down everybody.

6    MS. LIOU:  Right.

7    THE COURT:  I'll come to Ms. Renfro in a minute.

8    MS. LIOU:  Well, I --

9    THE COURT:  Finish your point, Ms. Liou.

10   MS. LIOU:  Right.

11   THE COURT:  What's wrong with doing that?

12   MS. LIOU:  I think that's exactly what I suggested.

13   So separate and apart from this proposed order on this real

14   estate transactions motion, it sounds like we're submitting a

15   separate comfort order with respect to just these four

16   proceedings.

17   THE COURT:  You're overstating the case by acting like

18   it's a comfort order.  You could, if I tell you to, just file a

19   notice there is no stay, but if you want an order, I don't mind

20   doing it.  But it's not because I want to complicate it; it's

21   because I know from experience state court judges don't

22   understand the nuances of automatic stay, and I like to send

23   state court judges a clear signal they're not implicated in the

24   automatic stay at all.  So it's a comfort but it's a comfort

25   for that judge as much as anything else.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1      MS. LIOU:  Sure.  I will refrain from using the word

2   "comfort order" then.  So the two choices ahead, as I see it --

3   and you can tell me if you have a preference, Your Honor -- is

4   that we could simply withdraw the notices of suggestion of stay

5   in those proceedings, which saves time and money for everyone,

6   or we can issue a separate order in this proceeding on the

7   issue.

8      THE COURT:  Okay.  Mr. Jenny, are you good enough?  Is

9   it okay with you if they just file something -- a notice of

10   withdrawal of notice of stay?

11      MR. JENNY:  I'd rather have an order that there is no

12   stay and hasn't been any stay.

13      THE COURT:  Okay.

14      MR. JENNY:  That would give me comfort, and I'm sure

15   that has the magic word but I don't understand it.

16      THE COURT:  I don't mind the word.

17      MR. JENNY:  I don't understand the secret word.

18      THE COURT:  Listen --

19      MR. JENNY:  But it makes me more comfortable to walk

20   out of here with an order.

21      THE COURT:  I happen to be one of those people who

22   believe in comfort orders because of what I said.  Because

23   there are folks out there in the real world who don't

24   understand this crazy world we live in.  So it sounds like Ms.

25   Liou is not opposed to this and we don't have to notice it.  We

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    don't have to do anything.  For your four clients, there can be

2    an order, or orders, that says in this matter of such and such

3    and such, there is no stay in effect, period.

4         MR. JENNY:  And I wrote an order to that effect.  I

5    don't know how to present it.

6         THE COURT:  Now, if you -- and then there is some

7    mediation and a consensual resolution and PG&E is supposed to

8    pay some money within the guidelines of these procedures,

9    that's fine.  If it has to be treated in some other way, we'll

10   treat it some other way.

11        MR. JENNY:  Yes, sir.

12        THE COURT:  Now, Ms. Renfro, how do we solve your

13   problem?

14        MR. JENNY:  My clients would also love to have that

15   same comfort, Your Honor.

16        THE COURT:  Is it the same alignment?  I mean, it --

17   is it the same issue --

18        MS. RENFRO:  Yeah, yeah.  Straightforward direct

19   eminent domain cases where PG&E is the plaintiff.  No

20   counterclaims or cross-claims.

21        THE COURT:  But what is -- procedurally, what's

22   different between Mr. Jenny's four and yours?

23        MS. RENFRO:  I don't know procedurally or not, the

24   other objection that we had to the way the eminent domain cases

25   in which PG&E is the plaintiff are being treated by the

PG&E Corporation, et al.

1  proposed order by PG&E is this idea that over a certain dollar

2  limit those cases are going to a committee or to the board for

3  approval before we get to payment on settlement agreements or

4  judgments, jury awards determining what just compensation is.

5  And we did file a separate motion, but we discussed a little

6  bit in our limited opposition here, the reason why those

7  determinations of just compensation, something our clients are

8  constitutionally entitled to be paid for interest where PG&E

9  has already gone out, taken prejudgment possession, put

10  infrastructure on their properties, that that should not be up

11  for debate whether or not those folks are going to get paid.

12          THE COURT:  It's not.  It's timing and method.  I

13  mean --

14          MS. RENFRO:  And expense and burden for our client.

15          THE COURT:  Well, it may be, but look, PG&E owes

16  billions of dollars, and they're trying to simplify the way it

17  goes.  And one of the ways we do it in these complex cases is

18  by having independent groups like the creditors' committee sign

19  off on things with huge thresholds.  I mean, there are

20  threshold levels in this case that wouldn't even -- would

21  require full notice and hearings in smaller cases.  And so the

22  bigger the case, the more granularly you have to be in making

23  things work sufficiently.  But I don't think it's any

24  substantive due process or violation of the Constitution to ask

25  your clients to wait a little bit to get paid.  And so

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1   that's -- and that was what I was reading in here.  My

2   goodness, it sounds like the end of the world here with this

3   going to be done.  Really.

4           MS. RENFRO:  Well, Your Honor, not the end of the

5   world, but we have a system and we have procedural and

6   substantive protection for the property owners.  These are

7   individuals who own property where PG&E has already gone out

8   onto the property.  We need to be able to ensure that in a

9   timely manner and without undue burden and expense, because

10  every dollar our clients spend reduces their --

11          THE COURT:  I agree.

12          MS. RENFRO:  -- their just compensation.

13          THE COURT:  I agree.  I agree.

14          MS. RENFRO:  And we know the Court has --

15          THE COURT:  And then the time we've had in this

16  discussion we could have --

17          MS. RENFRO:  Yeah.

18          THE COURT:  -- it could be filed.  I mean, the point

19  is, I'm not faulting you for filing your opposition here, but

20  when I read it, I thought maybe I've got the wrong case.  I

21  mean, it sounded like somebody was sending you to jail.  I

22  mean, we have here -- the company is trying pay its debts to

23  your client.

24          MS. RENFRO:  Well, we'd like that too.  We would just

25  like to save everyone the time and trouble of dealing with us

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    in the future on a case-by-case basis.

2            THE COURT:  Ms. Liou, will you simplify this one, too,

3    in your mind?  We simplified Mr. Jenny's four.  Is there a way

4    that you could suggest that we could simplify this without

5    implicating the Fifth Amendment of the Constitution and the

6    denial of the due process?

7            MS. RENFRO:  Well --

8            MS. LIOU:  One suggestion I have, but I think it would

9    require the input of the formal committee here, is it sounds

10   like counsel is requesting that her proceedings be carved out

11   of these procedures.

12           THE COURT:  Well, but I mean, come on; work with me to

13   come up with an efficient way to go.  What is the quickest way

14   to let you and the lawyers on your side move on to the next

15   problem and let Ms. Renfro and her clients go on with their

16   life if there were no bankruptcy.  So give me a practical

17   solution here.

18           MS. LIOU:  I mean, the practical solution are these

19   procedures that we've proposed, Your Honor.  I mean, we have

20   created streamline procedures so that we can get these matters

21   before the relevant parties as soon as possible.  If these are

22   proceedings where there actually is some kind of judgment, I'm

23   not sure that any of the formal committees are -- I mean, I

24   can't speak for them; they're here in court today -- are going

25   to take issue with PG&E honoring their commitments and paying

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    those post-petition judgments.

2         MS. RENFRO:  Well, then maybe a carve-out is

3    appropriate.  If those interests are represented in the

4    courtroom here today --

5         THE COURT:  Ma'am, you need to be closer to the

6    microphone.  We're just not picking up in the microphone.

7         MS. RENFRO:  Excuse me.  Well, then maybe a carve-out

8    is appropriate for the eminent domain cases due to their kind

9    of special nature.  And if we have the relevant interested

10   parties in the courtroom today and they want to confirm that

11   they will not have a problem with that, then let's not leave it

12   to a process that's unnecessary.

13        THE COURT:  Okay.  Let me just look at something.  I

14   thought this was going to be simple, and maybe it still is and

15   I'm just missing the point here.  What are the dollar amounts

16   under your claims?  I mean, Mr. Jenny's are relatively small.

17   Yours are relatively small too, aren't they?

18        MS. RENFRO:  Well, ours vary.  And I want to say in

19   the larger of the cases, we're talking about potentially up to

20   a seven-million-dollar figure.

21        THE COURT:  Oh, okay.

22        MS. RENFRO:  I mean, the likely -- as these cases go,

23   one appraiser says one thing and another says another, and we

24   don't know where we will end up.

25        THE COURT:  Correct.  I know, but it's not six

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    figures; it's seven.

2              MS. RENFRO:  Sure, yeah.

3              THE COURT:  Okay.  Well, I mean, I guess I'm resisting

4    for the moment, a carve-out because carve-out means another

5    round of getting something carved back in again.  So have you

6    seen the form of order that Ms. Liou has prepared?

7              MS. RENFRO:  I've seen the form of order.  If this

8    Court would be comfortable doing it, we have a motion that's on

9    calendar for the 24th --

10             THE COURT:  I know you do, and I'm trying to avoid

11   that.

12             MS. RENFRO:  Me too.  Me too, Your Honor.  But I mean,

13   that's really what we want.  Is we want a carve-out for this

14   category given that the compensation is fundamentally

15   different.  These are not folks who voluntarily contracted.

16   These are people who are entitled to this money.  It's

17   burdensome for them to participate in the --

18             THE COURT:  No, but I asked if you saw those orders?

19             MS. RENFRO:  I did.

20             THE COURT:  What would you -- I mean, do you have some

21   suggested changes?  I mean, is there something that would make

22   that order more palatable to you?

23             MS. RENFRO:  Well, I would simply revise it so that

24   the eminent domain cases -- let's see, looking at page -- I

25   mean --

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1      THE COURT:  Well, let's not talk about the eminent

2  domain cases.  Let's talk about your clients and what do we --

3  you're not picking up some more are you?

4      MS. RENFRO:  I don't know, Your Honor.

5      THE COURT:  Okay.  Well, let's --

6      MS. RENFRO:  I leave open the possibility and I'm --

7      THE COURT:  And that's okay.  I didn't mean to imply

8  that you can't go out and take care of more clients.  I'm just

9  saying the clients you speak for today, let's see if we can

10  simplify solving their problems.  So do you have a suggestion

11  on how it would get simplified?  Language-wise?  And I don't

12  want to have another hearing; I'll do it.  I'll be here.

13  You're the one that has to come to the hearing.  I'm trying to

14  make it simple so we can put this baby to bed.

15      MS. RENFRO:  I suppose a paragraph accepting the

16  specific cases, noting the specific cases, and we could lift

17  some language from the proposed order we prepared on the other

18  motion to put it in here.  I think trying to craft that on the

19  fly for you here is difficult.  I'd certainly be happy to go in

20  the hallway and try to work something out.  But --

21      THE COURT:  Well, let's see if Ms. Liou can do it.  I

22  mean, Ms. Liou, what do you want -- do you want me to give you

23  and Ms. Renfro a chance to work it out or do you want me to

24  just kick this over to the 24th of April and we'll try to get

25  it resolved then?  I mean, this looks like it's solvable, but I

PG&E Corporation, et al.

1    don't know.  What do you want me to do?

2           You've got some helpers from the creditors' committee?

3           MR. KRELLER:  Good afternoon, Your Honor, Thomas

4    Kreller of Milbank, LLP.

5           THE COURT:  You've got a solution, Mr. Kreller?

6           MR. KRELLER:  Unfortunately I don't, and for a few

7    different reasons.  One is, obviously, I'm not sitting here

8    with my committee of nine to make decisions that would carve a

9    category that's a bit of an unknown certainly for me sitting

10   here.  I'm not quite sure what we're carving out or what door

11   we're opening for that carve-out to get bigger and bigger.  And

12   so it's hard to agree to anything today in a bit of a vacuum.

13   And certainly not, ultimately without my client's input.

14          THE COURT:  Okay.

15          MR. KRELLER:  I think if we were to kick this over to

16   the 24th, frankly, it does sound solvable to me, but from my

17   perspective at least, I'd need some information and a little

18   bit of time with my clients.

19          THE COURT:  Okay.  So let me turn that around.  Ms.

20   Liou, what about if we try this.  What if we continue the

21   matters pertaining to Ms. Renfro's clients for all purposes

22   from today's -- April 10th to April 24th, we separately do the

23   order that -- well, the comfort orders that Mr. Jenny wanted

24   for his clients, and then have your proposed order that's

25   agreeable to Oakland and the municipalities and everybody else.

PG&E Corporation, et al.

1    And then we've got it all resolved, I think.

2         And then between now and the 24th, if you and Ms.

3    Renfro, with the participation of this committee, can get it

4    resolved, we got it resolved, and if it's not I'll listen to

5    the arguments and make a decision on the 24th.  Does that work?

6         MS. LIOU:  So I think that sounds like a great plan,

7    but I want to clarify one thing.  So you will be entering the

8    proposed order today, but we will preserve the Renfro issues

9    for dealing with on the 24th, and if we needed to submit a

10   modified proposed order at that point in time we could then do

11   so, right?

12        THE COURT:  Well, I have to confess to you, because as

13   you know, I keep track of a lot of things.  And so I don't

14   personally know exactly what the proposed order says.  But it

15   has to get modified slightly anyway to take Mr. Jenny's clients

16   out of it.  And that's a separate order.  And it has to get Ms.

17   Renfro's clients out of it.  So you have to take them out of

18   the order, don't you?

19        MS. LIOU:  Yes.  We can do that.

20        THE COURT:  Yeah.  Well, I mean, I don't want to sign

21   an order that disposes of her client's issues when they're not

22   being disposed of.  So --

23        MS. LIOU:  Um-hum.

24        THE COURT:  -- I'm trying to give -- protect her

25   clients but get you the benefit of finality for everybody else

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    in the universe who is impacted by today's --

2           MS. LIOU:  Just to be clear, though, I think that Mr.

3    Jenny's clients just wanted a determination that the automatic

4    stay didn't apply.  And I don't think that that requires any

5    change --

6           THE COURT:  Okay.

7           MS. LIOU:  -- to the proposed order.

8           THE COURT:  Do you agree with that, Mr. Jenny?

9           MS. RENFRO:  I don't agree with that.

10          THE COURT:  Well, let Mr. Jenny --

11          MS. RENFRO:  Okay.

12          THE COURT:  Do you agree that if you get your nice

13   little comfort order that you can show the superior court judge

14   there's no stay, go forward, then you don't have any problem

15   with the, sort of, administrative approach that the debtor has

16   for the motion, generally?

17          MR. JENNY:  Correct.  I'm here for four cases only,

18   and as long as the -- I mean, the broader order, as I read it,

19   does apply to me; as long as I have a more specific order, that

20   carves me out.

21          THE COURT:  Okay.

22          MR. JENNY:  And I'm not sure how to present it to the

23   Court.  I'm not sure how it works.

24          THE COURT:  You're an electronic filer though, right?

25          MR. JENNY:  Yes, sir.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    THE COURT:  Then you just submit that order that you

2  have, get Ms. Liou to sign off on it, and upload it for entry.

3    MR. JENNY:  Yes, sir.

4    THE COURT:  Okay.  So Ms. Renfro, don't we preserve

5  your position by putting it over?  The order today -- Ms. Liou

6  said will I sign it today; I may not sign it until tomorrow,

7  but the point is, I'll sign it -- it won't affect your clients.

8    MS. RENFRO:  Okay.  My only discomfort at the moment

9  is with paragraph 13 of the proposed order, because that says

10  to the extent applicable, the automatic stay shall be lifted

11  with respect to eminent domain proceedings as necessary in

12  instances where PG&E stipulates to lift the stay.  And we've

13  talked about, today, the fact that the automatic stay is not

14  currently in effect --

15    THE COURT:  Can we have --

16    MS. RENFRO:  -- and should not be barring those cases.

17    MS. LIOU:  The language says "to the extent" --

18    THE COURT:  -- a footnote on the new order that says

19  nothing in this order effects the following parties, and just

20  name all your clients in a footnote and say that's the subject

21  of a further order on the 24th?

22    MS. RENFRO:  I'll take it, Your Honor.  That's fine.

23    MR. KRELLER:  I'm on it.

24    THE COURT:  Okay.  Do you want --

25    MS. LIOU:  I'm sorry, Your Honor.  I just want to make

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  sure we're clear on this because I don't want parties to try to

2  request broader relief than they were requesting earlier in

3  this hearing.  So I just do want to point out that in paragraph

4  13, it does start with "to the extent applicable".  So no one

5  is making any determination about applicability under this

6  order.  No one's rights are being prejudiced under this order.

7           MS. RENFRO:  It breeds confusion.  It breeds

8  confusion, "to the extent applicable", but it's suggesting that

9  the relief is necessary.

10           THE COURT:  Yes, I agree with you.  It's confusing.

11  What's wrong with putting something in this order that says

12  nothing in this order applies to -- and naming all of Ms.

13  Renfro's clients and --

14           MS. LIOU:  I'm comfortable doing that --

15           THE COURT:  -- all of Mr. Jenny's clients.

16           MS. LIOU:  -- for Ms. Renfro's clients, but he did

17  not --

18           THE COURT:  I know he didn't.

19           MS. LIOU:  Your Honor --

20           THE COURT:  He didn't.

21           MS. LIOU:  -- he didn't ask for that relief.

22           THE COURT:  But I did.

23           MS. LIOU:  Right?  He --

24           MS. RENFRO:  He's a nice guy.

25           MS. LIOU:  He only asked for a determination about

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1  whether or not the stay applies to those proceedings, and

2  now --

3          THE COURT:  Ms. Liou?

4          MS. LIOU:  -- we're expanding that.

5          THE COURT:  Ms. Liou?  Ms. Liou?  I asked for it.

6  Okay?

7          MS. LIOU:  Okay.

8          THE COURT:  My goal is to avoid confusion.  State

9  court judges get confused when they're dragged into bankruptcy

10 world.  I'm going to unconfuse them to the best that I can.

11         Mr. Jenny?

12         MR. JENNY:  Sir?

13         THE COURT:  What would you like?  The same thing on a

14 footnote?

15         MR. JENNY:  Yes, sir, footnote me out.

16         THE COURT:  But then you won't be governed by any

17 footnote other -- or any order other than the new one that

18 you're submitting.  Is that okay?

19         MR. JENNY:  My new order -- yes, sir.  It will remove

20 the stay.

21         THE COURT:  Okay.  Okay.  Ms. Liou, again, your job is

22 to tell me whether there's any downside other than just the

23 mechanics of it.  Any problems with this?

24         MS. LIOU:  Yeah.  I'll just state on the record that

25 we oppose the fact that we are now carving out all of these

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation, et al.

1    individuals, but we are obviously supportive of the entry of

2    the rest of the order.

3             THE COURT:  Yesterday, some of your colleagues asked

4    me to sign an order that effects 10,000 people, and I said I'm

5    not comfortable because I don't understand it.  So we waited

6    and we're going to have another hearing --

7             MS. LIOU:  Right.

8             THE COURT:  -- and I'm maybe going to solve it for

9    10,000 people.  All I'm trying to do today is solve it for

10   about twelve people, and so by not including them in an order

11   that serves very, very broad purposes, it solves that problem.

12            MS. LIOU:  I understand, Your Honor.

13            THE COURT:  Okay.  All right.  Then to review the

14   bidding, I'm going to get a revised blanket order from Ms. Liou

15   for the benefit of everything that's affected by today's motion

16   other than the two groups of people represented by the two

17   other counsel here at the podium, and the new order will

18   exclude those folks and there will be a separate series of

19   orders for Mr. Jenny's seven (sic) people and four litigations

20   and just a continuation.

21            So the minutes will reflect the matters related to Ms.

22   Renfro's clients are put over and will be dealt with on April

23   24th.  And we have that as a calendar label on it.  And then,

24   Ms. Renfro, with a little luck I won't see you on the 24th if

25   it can get resolved with a little help from the creditors'

PG&E Corporation, et al.

1  committee.  Okay?

2          MS. RENFRO:  Okay.

3          MS. LIOU:  Thank you, Your Honor.

4          THE COURT:  We good?  Everything okay?  Anyone else

5  want to be heard on any subject?

6          Okay.  Thank you for your time.  Good luck.

7          MR. KRELLER:  Thank you, Your Honor.

8      (Whereupon these proceedings were concluded at 2:04 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation

1          C E R T I F I C A T I O N

2

3    I, Susan Patterson, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ SUSAN PATTERSON, CDLT-174

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  April 11, 2019

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

# #

**#207 (1)**
35:12

# /

**/s/ (1)**
35:9

# A

**ability (2)**
9:8;10:5
**able (2)**
9:22;22:8
**accept (1)**
5:20
**accepting (1)**
26:15
**accurate (1)**
35:4
**acting (1)**
18:17
**action (9)**
6:5;9:7;11:18;12:2,3,
4,5,18;16:4
**actions (9)**
4:24;6:3;7:21;8:8,
21;9:5,6;16:16;17:7
**actually (1)**
23:22
**addition (1)**
5:7
**administrative (1)**
29:15
**admissions (1)**
13:4
**advocating (1)**
10:21
**affect (1)**
30:7
**affected (1)**
33:15
**afternoon (5)**
4:4,6,8;5:22;27:3
**again (5)**
7:6;9:24;17:10;25:5;
32:21
**against (2)**
12:4,5
**agencies (1)**
5:4
**agenda (1)**
4:11
**agree (11)**
6:16;10:4;14:24;
22:11,13,13;27:12;
29:8,9,12;31:10
**agreeable (1)**
27:25
**Agreed (1)**

9:1
**agreement (3)**
7:4,24;8:2
**agreements (4)**
12:10;13:20;14:11;
21:3
**agrees (1)**
15:12
**ahead (1)**
19:2
**Alegria (1)**
14:17
**alignment (1)**
20:16
**allow (1)**
7:12
**almost (1)**
16:13
**although (1)**
14:13
**Amendment (1)**
23:5
**among (1)**
5:8
**amounts (1)**
24:15
**and/or (1)**
4:20
**Andrew (1)**
4:15
**Apart (2)**
17:4;18:13
**Apparently (1)**
7:11
**appeal (2)**
12:6;13:2
**appealed (1)**
11:21
**appealing (1)**
11:24
**appearing (2)**
5:23;13:16
**applicability (1)**
31:5
**applicable (3)**
30:10;31:4,8
**applies (3)**
8:25;17:8;31:12;
32:1
**apply (10)**
9:14,15,18;10:6;
11:15,23;12:25;16:8;
29:4,19
**appraiser (1)**
24:23
**approach (1)**
29:15
**appropriate (3)**
16:9;24:3,8
**approval (2)**
4:20;21:3
**approve (1)**
10:2

**APRIL (6)**
4:1;26:24;27:22,22;
33:22;35:15
**arguments (1)**
28:5
**around (1)**
27:19
**assigned (1)**
6:23
**attended (1)**
14:10
**authority (1)**
8:9
**authorization (1)**
8:4
**authorized (1)**
8:2
**automatic (14)**
6:6,8,10;7:1;10:21;
12:3,3;14:6;16:8;
18:22,24;29:3;30:10,
13
**avoid (2)**
25:10;32:8
**awards (1)**
21:4
**aware (3)**
6:20;8:8;12:14
**AZ (1)**
35:13

# B

**baby (1)**
26:14
**back (2)**
15:14;25:5
**bankruptcy (4)**
7:4,8;23:16;32:9
**bar (2)**
6:10;7:1
**barring (1)**
30:16
**based (2)**
6:25;7:25
**basis (2)**
11:17;23:1
**basket (1)**
17:11
**bed (1)**
26:14
**begun (1)**
9:18
**behalf (3)**
5:23;6:24;13:16
**believes (1)**
9:15;12:17
**benefit (2)**
28:25;33:15
**best (1)**
32:10
**bidding (1)**
33:14

**bigger (3)**
21:22;27:11,11
**billions (1)**
21:16
**bit (5)**
21:6,25;27:9,12,18
**blanket (1)**
33:14
**board (1)**
21:2
**bogged (2)**
15:25;16:1
**both (2)**
7:11;10:2
**bothered (1)**
6:18
**breeds (2)**
31:7,7
**broad (3)**
14:21;16:4;33:11
**broader (2)**
29:18;31:2
**brought (1)**
17:11
**bucket (1)**
10:16
**buckets (2)**
8:18;12:13
**burden (2)**
21:14;22:9
**burdensome (1)**
25:17

# C

**calendar (2)**
25:9;33:23
**CALIFORNIA (2)**
4:1;5:4
**Call (2)**
4:3,11
**can (17)**
5:19;7:17;10:23;
17:21;19:3,6;20:1;
23:20;26:9,14,21;28:3,
19;29:13;30:15;32:10;
33:25
**care (1)**
26:8
**carve (1)**
27:8
**carved (2)**
23:10;25:5
**carve-out (6)**
24:2,7;25:4,4,13;
27:11
**carves (1)**
29:20
**carving (2)**
27:10;32:25
**case (10)**
7:4;8:1,10;9:19;
11:21;17:9;18:17;

21:20,22;22:20
**case-by-case (3)**
9:2;11:17;23:1
**cases (8)**
6:10,22,25;7:1,13,
14;10:12,16;13:21;
14:8,18,24;15:1,1,11,
12,15,21;17:11,23;
20:19,24;21:2,17,21;
24:8,19,22;25:24;26:2,
16,16;29:17;30:16
**category (3)**
8:6;25:14;27:9
**CDLT-174 (1)**
35:9
**certain (3)**
4:23;5:10;21:1
**certainly (1)**
26:19;27:9,13
**certify (1)**
35:3
**Cesar (1)**
14:17
**chance (1)**
26:23
**change (1)**
29:5
**changes (2)**
5:11;25:21
**Chapter (1)**
17:17
**choices (1)**
19:2
**City (1)**
5:5
**claimants' (1)**
5:9
**claims (2)**
8:9;24:16
**clarify (2)**
7:17;28:7
**clear (5)**
8:24;9:22;18:23;
29:2;31:1
**client (6)**
12:17,18,19;16:25;
21:14;22:23
**clients (27)**
9:9;10:15;11:7;15:2;
16:14;20:1,14;21:7,25;
22:10;23:15;26:2,8,9;
27:18,21,24;28:15,17,
25;29:3;30:7,20;31:13,
15,16;33:22
**client's (4)**
10:10,10;27:13;
28:21
**closer (1)**
24:5
**colleagues (1)**
33:3
**comfort (12)**
16:22;17:6;18:15,18,

Case: 19-30088    Doc# 1352    Filed: 04/11/19    Entered: 04/11/19 16:17:35    Page 36
of 42

24,24;19:2,14,22;
20:15;27:23;29:13
**comfortable (4)**
19:19;25:8;31:14;
33:5
**comments (1)**
5:8
**commitments (1)**
23:25
**committee (10)**
4:20;5:9,9;21:2,18;
23:9;27:2,8;28:3;34:1
**committees (1)**
23:23
**company (1)**
22:22
**compensation (5)**
15:19;21:4,7;22:12;
25:14
**complaints (1)**
14:5
**complex (1)**
21:17
**complicate (1)**
18:20
**concerned (2)**
13:3;16:2
**concluded (1)**
34:8
**confer (1)**
7:3
**confess (1)**
28:12
**confirm (1)**
24:10
**confused (3)**
10:8;16:18;32:9
**confusing (1)**
31:10
**confusion (3)**
31:7,8;32:8
**consensual (2)**
15:9;20:7
**consensually (1)**
10:3
**consent (1)**
9:23
**Constitution (2)**
21:24;23:5
**constitutionally (1)**
21:8
**consummate (1)**
4:17
**context (2)**
11:6;16:2
**continuation (1)**
33:20
**continue (2)**
4:17;27:20
**continuing (1)**
12:4
**contracted (1)**
25:15

**conversations (2)**
7:2,25
**Corporation (1)**
4:5
**correctly (1)**
17:10
**counsel (12)**
4:7;6:23,25;7:3,10;
9:11,14;10:20,20;
14:17;23:10;33:17
**counterclaims (2)**
16:6;20:20
**couple (2)**
11:9,13
**Court (151)**
4:3,4,8,13,15,20;5:2,
12,14,16;6:2,4,12,14,
17,20;7:6,8,15,18;8:3,
5,11,13,17,20,23;9:1,4;
10:1,2,4,8,17,19,23;
11:1,4,7,11,14,16,19,
22,25;12:12,15;13:8,
10,12,15,18,23;14:1,6,
9,12,15,19,22;15:4,7,9,
16,18,20,23,25;16:10,
13,21;17:1,6,9,20,22;
18:2,5,7,9,11,17,21,23;
19:8,13,16,18,21;20:6,
12,16,21;21:12,15;
22:11,13,14,15,18;
23:2,12,24;24:5,13,21,
25;25:3,8,10,18,20;
26:1,5,7,21;27:5,14,19;
28:12,20,24;29:6,8,10,
12,13,21,23,24;30:1,4,
15,18,24;31:10,15,18,
20,22;32:3,5,8,9,13,16,
21;33:3,8,13;34:4
**courtroom (2)**
24:4,10
**covering (1)**
8:5
**CPUC (1)**
5:10
**craft (1)**
26:18
**crazy (1)**
19:24
**created (1)**
23:20
**creditors' (4)**
5:9;21:18;27:2;
33:25
**cross- (1)**
14:4
**cross-claims (1)**
20:20
**cross-complainants (1)**
16:15
**current (1)**
10:20
**currently (1)**
30:14

**D**

**date (2)**
12:1;35:15
**days (1)**
10:1
**dealing (2)**
22:25;28:9
**deals (1)**
17:6
**dealt (1)**
33:22
**debate (1)**
21:11
**debtor (7)**
6:5;12:4,5,5,23;
17:17;29:15
**debtors (8)**
4:7,16;5:7;7:22,25;
8:2;12:9;13:9
**debtor's (1)**
4:12
**debts (1)**
22:22
**decision (1)**
28:5
**decisions (1)**
27:8
**declaration (2)**
4:15;10:6
**defendant (1)**
12:6
**defendants (3)**
8:22;16:15,15
**defending (1)**
12:18
**defense (1)**
15:21
**denial (1)**
23:6
**Desmond (1)**
5:23
**determination (10)**
9:3,7,13,17;11:6,20;
16:8;29:3;31:5,25
**determinations (1)**
21:7
**determine (1)**
7:13
**determining (2)**
4:19;21:4
**DF (1)**
5:24
**different (6)**
6:17;12:12;17:11;
20:22;25:15;27:7
**difficult (1)**
26:19
**direct (1)**
20:18
**discomfort (1)**
30:8

**discuss (2)**
16:24;17:1
**discussed (1)**
21:5
**discussion (1)**
22:16
**disposed (1)**
28:22
**disposes (1)**
28:21
**distance (1)**
10:24
**divide (2)**
8:13;10:11
**docket (5)**
4:11,24,25;5:12;
13:11
**documents (1)**
14:14
**dollar (3)**
21:1;22:10;24:15
**dollars (1)**
21:16
**domain (17)**
4:24;6:1,22,23;7:14,
21;13:21;14:7;15:21;
16:5;17:8;20:19,24;
24:8;25:24;26:2;30:11
**done (2)**
17:10;22:3
**door (1)**
27:10
**down (3)**
15:25;16:1;18:5
**downside (1)**
32:22
**dragged (1)**
32:9
**due (3)**
21:24;23:6;24:8

**E**

**earlier (1)**
31:2
**effect (4)**
16:22;20:3,4;30:14
**effects (2)**
30:19;33:4
**efficient (1)**
23:13
**efficiently (1)**
17:10
**efforts (1)**
7:3
**either (3)**
15:1,6,12
**electronic (1)**
29:24
**else (4)**
18:25;27:25;28:25;
34:4
**eminent (17)**

4:24;5:25;6:22,23;
7:14,20;13:21;14:7;
15:21;16:5;17:8;20:19,
24;24:8;25:24;26:1;
30:11
**end (3)**
22:2,4;24:24
**enforce (1)**
12:10
**enough (1)**
19:8
**ensure (1)**
22:8
**enter (1)**
4:17
**entered (2)**
10:3;12:9
**entering (1)**
28:7
**entitled (2)**
21:8;25:16
**entry (2)**
30:2;33:1
**eScribers (1)**
35:11
**establish (1)**
4:19
**estate (1)**
18:14
**even (5)**
10:20;12:25;13:1;
17:16;21:20
**evening (1)**
5:12
**everybody (3)**
18:5;27:25;28:25
**everyone (1)**
19:5;22:25
**exactly (2)**
18:12;28:14
**example (3)**
11:18;12:8;13:5
**exclude (1)**
33:18
**excuse (2)**
12:2;24:7
**executed (2)**
7:24;14:14
**execution (1)**
12:20
**expanding (1)**
32:4
**expense (2)**
21:14;22:9
**experience (1)**
18:21
**extent (5)**
9:14;30:10,17;31:4,8

**F**

**fact (3)**
6:21;30:13;32:25

Case: 19-30088    Doc# 1352    Filed: 04/11/19    Entered: 04/11/19 16:17:35    Page 37
of 42

**faulting (1)**
22:19
**favor (1)**
17:16
**few (1)**
27:6
**Fifth (1)**
23:5
**figure (1)**
24:20
**figures (1)**
25:1
**file (5)**
9:16,25;18:18;19:9;
21:5
**filed (17)**
4:14,23,25;5:3,5,12,
24;6:5,21;7:21;8:8;9:9;
13:5,12,20;14:17;
22:18
**filer (1)**
29:24
**filing (1)**
22:19
**finality (1)**
28:25
**fine (3)**
17:12;20:9;30:22
**Finish (1)**
18:9
**firm (1)**
5:23
**first (3)**
7:19;11:12;17:2
**fly (1)**
26:19
**folks (4)**
19:23;21:11;25:15;
33:18
**follow (2)**
13:2,3
**following (1)**
30:19
**footnote (5)**
30:18,20;32:14,15,
17
**foregoing (1)**
35:3
**forget (1)**
15:7
**form (2)**
25:6,7
**formal (4)**
4:23;5:7;23:9,23
**forward (4)**
4:10;5:18;17:15;
29:14
**four (19)**
4:22;13:21;14:18,24,
25;15:10;16:14,15,15,
23;17:7,14,23;18:15;
20:1,22;23:3;29:17;
33:19

**fourteen (1)**
10:1
**FRANCISCO (1)**
4:1
**frankly (1)**
27:16
**full (1)**
21:21
**fully (2)**
5:4,6
**fundamentally (1)**
25:14
**further (1)**
30:21
**future (1)**
23:1

**G**

**generally (1)**
29:16
**given (1)**
25:14
**goal (1)**
32:8
**goes (1)**
21:17
**Good (9)**
4:4,5,8;5:20,22;19:8;
27:3;34:4,6
**goodness (1)**
22:2
**Gotshal (1)**
4:7
**governed (1)**
32:16
**grant (1)**
16:3
**granularly (1)**
21:22
**great (1)**
28:6
**groups (3)**
17:14;21:18;33:16
**guess (3)**
5:15;12:24;25:3
**guidelines (1)**
20:8
**guy (1)**
31:24

**H**

**hallway (1)**
26:20
**handles (1)**
6:22
**happen (1)**
19:21
**happening (1)**
6:24
**happens (3)**
15:5,5,10

**happy (1)**
26:19
**hard (1)**
27:12
**headed (1)**
14:13
**heard (2)**
5:16;34:5
**hearing (4)**
26:12,13;31:3;33:6
**hearings (1)**
21:21
**help (1)**
33:25
**helpers (1)**
27:2
**Hold (1)**
6:12
**Honor (30)**
4:6,16,22;5:22;6:9,
16;7:17;9:10,21;10:14;
11:3,9;13:14;16:3,24;
17:25;18:3;19:3;20:15;
22:4;23:19;25:12;26:4;
27:3;30:22,25;31:19;
33:12;34:3,7
**honoring (1)**
23:25
**huge (1)**
21:19
**hypotheticals (1)**
11:13

**I**

**idea (1)**
21:1
**identification (1)**
5:18
**impacted (1)**
29:1
**impediment (1)**
7:9
**implicated (2)**
17:13;18:23
**implicates (1)**
12:21
**implicating (1)**
23:5
**implications (1)**
16:16
**imply (1)**
26:7
**includes (1)**
9:21
**including (1)**
33:10
**incredibly (1)**
16:4
**independent (1)**
21:18
**individuals (3)**
9:18;22:7;33:1

**inform (1)**
4:22
**informal (1)**
5:8
**information (2)**
27:17
**infrastructure (1)**
21:10
**inhouse (1)**
14:17
**initial (1)**
11:18
**initiated (7)**
6:15;7:20;9:6;11:18;
12:5;16:5,16
**initiation (2)**
12:2,2
**input (2)**
23:9;27:13
**instance (1)**
10:7
**instances (2)**
12:8;30:12
**interest (1)**
21:8
**interested (3)**
10:15,15;24:9
**interests (2)**
4:18;24:3
**interfered (1)**
10:11
**interference (1)**
10:9
**into (5)**
4:17;8:14;10:12;
12:9;32:9
**inverse (1)**
14:5
**involved (1)**
7:13
**issue (9)**
6:6,6,7,9;9:10;19:6,
7;20:17;23:25
**issues (3)**
16:7;28:8,21
**item (1)**
4:10

**J**

**jail (1)**
22:21
**JAMS (1)**
14:10
**JENNY (44)**
13:14,16,18,21,
25;14:4,7,10,13,16,20,
23;15:6,8,12,17,19,22,
24;16:12,13,13,19;
17:25;19:8,11,14,17,
19;20:4,11,14;27:23;
29:8,10,17,22,25;30:3;
32:11,12,15,19

**Jenny's (8)**
16:14;20:22;23:3;
24:16;28:15;29:3;
31:15;33:19
**Jessica (1)**
4:6
**job (1)**
32:21
**joinder (5)**
4:25;13:5,6,17;16:19
**judge (3)**
16:17;18:25;29:13
**judges (3)**
18:21,23;32:9
**judgment (2)**
12:20;23:22
**judgments (2)**
21:4;24:1
**jury (1)**
21:4

**K**

**keep (1)**
28:13
**Kenny (1)**
16:13
**kick (2)**
26:24;27:15
**kind (4)**
8:10;9:7;23:22;24:8
**kinds (1)**
17:11
**knowing (1)**
12:24
**KRELLER (7)**
27:3,4,5,6,15;30:23;
34:7
**Kristen (1)**
5:22

**L**

**label (1)**
33:23
**land (2)**
7:23;9:8
**landlords (1)**
5:10
**language (3)**
9:22;26:17;30:17
**Language-wise (1)**
26:11
**large (1)**
15:15
**larger (2)**
9:10;24:19
**law (4)**
5:23;12:1,1,19
**lawyer (1)**
17:14
**lawyers (3)**
7:6,8;23:14

Case: 19-30088    Doc# 1352    Filed: 04/11/19    Entered: 04/11/19 16:17:35    Page 38
of 42

**least (1)**
27:17
**leave (2)**
24:11;26:6
**left (1)**
4:8
**levels (1)**
21:20
**levy (1)**
12:19
**lienholders (1)**
5:10
**life (2)**
17:15;23:16
**lift (3)**
9:24;26:16;30:12
**lifted (2)**
9:3;30:10
**likely (1)**
24:22
**limit (1)**
21:2
**limited (4)**
4:24;5:24;13:6;21:6
**LIOU (81)**
4:5,6,10,14;5:3;7:15,
17,19;8:7,12,16,18,21,
24;9:2,5;10:5;11:1,2,5,
9,13,15,17,20,23;12:8,
13;13:3,9,11,13,19;
14:2;16:1,24;17:3,19,
21,24;18:3,6,8,9,10,12;
19:1,25;23:2,8,18;
25:6;26:21,22;27:20;
28:6,19,23;29:2,7;30:2,
5,17,25;31:14,16,19,
21,23,25;32:3,4,5,5,7,
21,24;33:7,12,14;34:3
**Listen (2)**
19:18;28:4
**litigated (1)**
13:22
**litigation (1)**
12:21
**litigations (1)**
33:19
**little (6)**
21:5,25;27:17;29:13;
33:24,25
**live (1)**
19:24
**LLP (1)**
27:4
**long (3)**
10:24;29:18,19
**look (3)**
12:15;21:15;24:13
**looked (1)**
5:15
**looking (3)**
11:17;14:25;25:24
**looks (1)**
26:25

**lot (1)**
28:13
**lots (1)**
17:12
**love (1)**
20:14
**lower (1)**
15:13
**luck (2)**
33:24;34:6

## M

**Ma'am (1)**
24:5
**magic (1)**
19:15
**makes (2)**
9:22;19:19
**making (3)**
9:13;21:22;31:5
**Manges (1)**
4:7
**manner (1)**
22:9
**many (1)**
17:11
**Matter (3)**
4:5;6:15;20:2
**matters (4)**
6:24;23:20;27:21;
33:21
**may (3)**
4:16;21:15;30:6
**maybe (6)**
6:12;22:20;24:2,7,
14;33:8
**mean (26)**
6:5;12:2;15:7;16:20;
20:16;21:13,19;22:18,
21,22;23:12,18,19,23;
24:16,22;25:3,12,20,
21,25;26:7,22,25;
28:20;29:18
**means (1)**
25:4
**meant (2)**
8:9;9:24
**measures (1)**
12:1
**mechanics (1)**
32:23
**mechanism (1)**
9:25
**mediation (3)**
14:10;15:7;20:7
**meet-and- (1)**
7:2
**message (1)**
7:10
**method (1)**
21:12
**microphone (2)**

24:6,6
**might (1)**
11:15
**Milbank (1)**
27:4
**mind (4)**
15:10;18:19;19:16;
23:3
**minute (1)**
18:7
**minutes (1)**
33:21
**misconstrues (1)**
9:11
**misconstruing (1)**
11:25
**missing (1)**
24:15
**modified (2)**
28:10,15
**moment (2)**
25:4;30:8
**Monday (1)**
5:12
**money (3)**
19:5;20:8;25:16
**more (7)**
9:16;19:19;21:22;
25:22;26:3,8;29:19
**motion (28)**
4:12,14,16,21,23,25;
5:25;6:9,18;9:11,12,12,
13,17,25;11:6;13:5;
15:13;16:3;17:4,5,14;
18:14;21:5;25:8;26:18;
29:16;33:15
**move (1)**
23:14
**moving (1)**
4:10
**much (2)**
4:8;18:25
**municipalities (1)**
27:25
**myself (1)**
10:15

## N

**name (2)**
5:18;30:20
**naming (2)**
7:6;31:12
**nature (1)**
24:9
**necessary (2)**
30:11;31:9
**need (4)**
15:14;22:8;24:5;
27:17
**needed (1)**
28:9
**new (4)**

30:18;32:17,19;
33:17
**next (3)**
15:5,10;23:14
**nice (2)**
29:12;31:24
**nine (1)**
27:8
**nonissue (1)**
7:16
**noted (1)**
5:11
**notice (6)**
11:11;18:19;19:9,10,
25:21;21
**notices (7)**
6:21;7:21;8:8;9:9;
13:20;17:21;19:4
**noting (1)**
26:16
**nuances (1)**
18:22
**number (7)**
4:11,25,25;5:8,13;
7:19;13:11
**numbers (1)**
15:13

## O

**Oakland (2)**
5:5;27:25
**objection (2)**
5:17;20:24
**obviously (2)**
27:7;33:1
**off (3)**
7:19;21:19;30:2
**office (1)**
6:22
**omnibus (1)**
17:14
**one (14)**
12:7;13:8;17:14;
19:21;21:17;23:2,8;
24:23,23;26:13;27:7;
28:7;31:4;32:17
**ones (1)**
7:21
**one's (1)**
31:6
**ongoing (1)**
5:17
**only (6)**
4:10;10:14,15;29:17;
30:8;31:25
**onto (1)**
22:8
**oOo- (1)**
4:2
**open (1)**
26:6
**opening (1)**

27:11
**operates (1)**
6:10
**oppose (1)**
32:25
**opposed (1)**
19:25
**opposing (1)**
9:14
**opposition (5)**
4:24;5:25;13:6;21:6;
22:19
**order (57)**
4:3;7:5,12;9:21;
10:2;14:20;16:21,22;
17:5,6,22,25;18:1,13,
15,18,19;19:2,6,11,20;
20:2,4;21:1;25:6,7,22;
26:17;27:23,24;28:8,
10,14,16,18,21;29:7,
13,18,19;30:1,5,9,18,
19,21;31:6,6,11,12;
32:17,19;33:2,4,10,14,
17
**orders (5)**
19:22;20:2;25:18;
27:23;33:19
**original (2)**
12:21;13:7
**ours (1)**
24:18
**out (19)**
5:19;15:5;17:13;
19:20,23;21:9;22:7;
23:10;26:8,20,23;
27:10;28:16,17,17;
29:20;31:3;32:15,25
**outside (3)**
6:23;7:9;13:7
**over (5)**
21:1;26:24;27:15;
30:5;33:22
**overstating (2)**
17:9;18:17
**owes (1)**
21:15
**own (1)**
22:7
**owners (3)**
4:24;5:24;22:6

## P

**page (1)**
25:24
**paid (4)**
15:3;21:8,11,25
**palatable (1)**
25:22
**papers (1)**
10:9
**paragraph (3)**
26:15;30:9;31:3

Case: 19-30088    Doc# 1352    Filed: 04/11/19    Entered: 04/11/19 16:17:35    Page 39
of 42

**Pardon (1)**
13:25
**participate (1)**
25:17
**participation (1)**
28:3
**particular (1)**
10:7
**parties (9)**
5:9;7:24;8:10;10:2;
12:10;23:21;24:10;
30:19;31:1
**party (4)**
9:23;11:21,23;13:2
**Patterson (2)**
35:3,9
**pay (3)**
8:9;20:8;22:22
**paying (1)**
23:25
**payment (3)**
8:3;12:11;21:3
**pending (2)**
9:16;15:13
**people (9)**
17:13,14;19:21;
25:16;33:4,9,10,16,19
**perhaps (1)**
7:10
**period (1)**
20:3
**personalize (2)**
12:15,16
**personally (1)**
28:14
**perspective (1)**
27:17
**pertaining (1)**
27:21
**petition (1)**
12:1
**PG&E (39)**
4:5;6:11,15,24;7:3,8,
12,12,20;8:14,21;9:5,6,
22;10:5,12,16,20;
11:18;13:1,21;14:2,3,4,
11,17;15:12,13;16:16;
17:10;20:7,19,25;21:1,
8,15;22:7;23:25;30:12
**PG&E's (1)**
6:25
**Phoenix (1)**
35:13
**phone (1)**
5:16
**phonetic (1)**
14:10
**picking (2)**
24:6;26:3
**place (2)**
11:12;17:2
**plaintiff (16)**
6:11;8:14,15,17;9:6;

10:12,13,16;12:25;
13:1,23,24;14:1,4;
20:19,25
**plaintiffs (1)**
7:20
**plan (1)**
28:6
**play (1)**
16:7
**Please (1)**
4:4
**PM (2)**
4:1;34:8
**podium (1)**
33:17
**point (8)**
6:7;7:4;18:9;22:18;
24:15;28:10;30:7;31:3
**pose (2)**
11:9,13
**position (1)**
30:5
**positions (1)**
14:24
**possess (1)**
9:8
**possession (3)**
7:23;13:22;21:9
**possibility (1)**
26:6
**possible (1)**
23:21
**post-petition (1)**
24:1
**potential (1)**
5:10
**potentially (1)**
24:19
**practical (2)**
23:16,18
**preference (1)**
19:3
**prejudgment (1)**
21:9
**prejudiced (1)**
31:6
**prejudicing (1)**
9:20
**prepared (2)**
25:6;26:17
**pre-petition (4)**
7:23;8:1;12:9;13:19
**present (2)**
20:5;29:22
**preserve (2)**
28:8;30:4
**presupposes (1)**
6:10
**pretty (2)**
4:20;8:24
**primarily (1)**
13:3
**problem (8)**

10:23;11:1,2;20:13;
23:15;24:11;29:14;
33:11
**problems (3)**
17:12;26:10;32:23
**procedural (3)**
9:12,25;22:5
**procedurally (1)**
16:14;20:21,23
**procedures (6)**
4:19;16:3;20:8;
23:11,19,20
**proceeding (3)**
9:16;16:5;19:6
**proceedings (14)**
7:1,20,22;9:10;
13:20;17:8;18:16;19:5;
23:10,22;30:11;32:1;
34:8;35:4
**process (3)**
21:24;23:6;24:12
**produced (1)**
7:4
**prohibits (1)**
12:18
**projects (1)**
15:2
**Properties (2)**
5:24;21:10
**property (9)**
4:12,18,23;5:24;
12:22;15:2;22:6,7,8
**proposed (12)**
7:11;9:21;18:13;
21:1;23:19;26:17;
27:24;28:8,10,14;29:7;
30:9
**protect (1)**
28:24
**protection (1)**
22:6
**provide (1)**
17:5
**purely (1)**
9:12
**purpose (1)**
9:11
**purposes (2)**
27:21;33:11
**put (5)**
16:20;21:9;26:14,18;
33:22
**putting (2)**
30:5;31:11

**Q**

**quickest (1)**
23:13
**quite (1)**
27:10

**R**

**raised (1)**
16:19
**raising (1)**
6:5
**rather (2)**
12:22;19:11
**read (3)**
12:3;22:20;29:18
**reading (1)**
22:1
**real (5)**
4:12,18;5:15;18:13;
19:23
**really (4)**
8:18;13:6;22:3;
25:13
**reason (2)**
9:15;21:6
**reasons (1)**
27:7
**received (1)**
5:8
**record (3)**
4:6;32:24;35:4
**recover (2)**
12:20,22
**redline (1)**
5:11
**reduces (1)**
22:10
**reflect (1)**
33:21
**refrain (1)**
19:1
**regardless (2)**
16:5,6
**related (1)**
33:21
**relating (1)**
4:18
**relative (1)**
5:25
**relatively (2)**
24:16,17
**relevant (2)**
23:21;24:9
**relief (11)**
6:9;7:14;9:17;13:7,
9;14:23,25;16:4;31:2,
9,21
**relieve (1)**
14:21
**remove (1)**
32:19
**RENFRO (57)**
5:22,23;6:3,8,13,16,
20;7:7,11;8:5;10:8,14,
18,22,24;12:16;13:12;
14:3,21;18:1,7;20:12,
18,23;21:14;22:4,12,

14,17,24;23:7,15;24:2,
7,18,22;25:2,7,12,19,
23;26:4,6,15,23;28:3,8;
29:9,11;30:4,8,16,22;
31:7,24;33:24;34:2
**Renfro's (6)**
14:24;27:21;28:17;
31:13,16;33:22
**representations (1)**
6:25
**represented (2)**
24:3;33:16
**representing (2)**
12:17,25;17:14
**request (1)**
31:2
**requested (1)**
13:9
**requesting (2)**
23:10;31:2
**require (1)**
4:20;21:21;23:9
**requires (1)**
29:4
**resisting (1)**
25:3
**resolution (1)**
20:7
**resolved (9)**
5:4,6,11,17;26:25;
28:1,4,4;33:25
**respect (3)**
8:12;18:15;30:11
**response (2)**
5:3,5
**responses (2)**
4:23;5:7
**rest (1)**
33:2
**review (2)**
4:20;33:13
**reviewed (1)**
5:19
**revise (1)**
25:23
**revised (1)**
33:14
**revisions (1)**
9:21
**right (17)**
4:13;5:14;6:2;8:19,
23;10:17;11:4,15;
12:14;15:16;18:6,10;
28:11;29:24;31:23;
33:7,13
**rights (4)**
9:20;10:10,10;31:6
**round (1)**
25:5

**S**

**Sacramento (1)**

Min-U-Script®

Case: 19-30088    Doc# 1352    Filed: 04/11/19    Entered: 04/11/19 16:17:35    Page 40
of 42

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) Pardon - Sacramento

5:23
**same (4)**
20:15,16,17;32:13
**SAN (1)**
4:1
**save (1)**
22:25
**saves (1)**
19:5
**saw (1)**
25:18
**saying (1)**
26:9
**scope (1)**
13:7
**Scott (1)**
13:16
**seated (1)**
4:4
**secret (1)**
19:17
**seek (3)**
8:3;9:17;15:19
**seeking (6)**
4:17;6:9;12:10;13:7;
14:21,23
**seems (1)**
14:19
**send (1)**
18:22
**sending (1)**
22:21
**separate (7)**
17:6;18:13,15;19:6;
21:5;28:16;33:18
**separately (2)**
5:20;27:22
**series (1)**
33:18
**serves (1)**
33:11
**settle (2)**
15:1,12
**settlement (10)**
7:24;8:1;12:9;13:19;
14:11,14,16;15:6,9;
21:3
**seven (2)**
25:1;33:19
**seven-million-dollar (1)**
24:20
**shall (1)**
30:10
**show (1)**
29:13
**sic (1)**
33:19
**side (1)**
23:14
**sign (7)**
21:18;28:20;30:2,6,
6,7;33:4
**signal (1)**

18:23
**signed (1)**
14:11
**simple (4)**
5:15;12:18;24:14;
26:14
**simpler (1)**
12:16
**simplified (2)**
23:3;26:11
**simplify (4)**
21:16;23:2,4;26:10
**simply (3)**
16:14;19:4;25:23
**single (1)**
16:4
**sitting (2)**
27:7,9
**situation (1)**
13:4
**six (1)**
24:25
**slightly (1)**
28:15
**Slow (1)**
18:5
**small (2)**
24:16,17
**smaller (1)**
21:21
**Solid (1)**
14:7
**solution (3)**
23:17,18;27:5
**solvable (2)**
26:25;27:16
**solve (4)**
10:23;20:12;33:8,9
**solves (1)**
33:11
**solving (2)**
17:12;26:10
**somebody (1)**
22:21
**soon (1)**
23:21
**sorry (3)**
13:1;16:13;30:25
**sort (1)**
29:15
**sound (1)**
27:16
**sounded (2)**
5:14;22:21
**sounds (5)**
18:14;19:24;22:2;
23:9;28:6
**speak (2)**
23:24;26:9
**special (1)**
24:9
**specific (4)**
14:23;26:16,16;

29:19
**specifically (1)**
17:7
**specifics (1)**
16:10
**spend (1)**
22:10
**standstill (1)**
7:2
**start (2)**
13:23;31:4
**State (6)**
5:4;6:12;18:21,23;
32:8,24
**stay (63)**
6:6,8,10,14,21;7:1,9,
14,22;8:8,25;9:3,9,13,
15,17,18,24;10:6,19,
21;11:11,15,22,23;
12:1,3,3,4,7,17,21,24;
13:20;14:6,25;15:5,10,
23,24;16:8,16,22;17:2,
7,16,18,23;18:19,22,
24;19:4,10,12,12;20:3;
29:4,14;30:10,12,13;
32:1,20
**stays (2)**
14:17,21
**still (4)**
6:7;7:9;11:22;24:14
**stipulate (1)**
9:23
**stipulates (1)**
30:12
**stipulation (1)**
10:2
**stop (1)**
10:17
**straightened (1)**
5:19
**straightforward (3)**
4:21;14:7;20:18
**streamline (1)**
23:20
**Street (1)**
35:12
**styled (1)**
13:6
**subject (2)**
30:20;34:5
**submit (3)**
17:6;28:9;30:1
**submitted (1)**
7:12
**submitting (2)**
18:14;32:18
**subset (1)**
12:13
**substantive (2)**
21:24;22:6
**successful (1)**
12:6
**sufficiently (1)**

21:23
**suggest (1)**
23:4
**suggested (3)**
18:4,12;25:21
**suggesting (2)**
17:5;31:8
**suggestion (3)**
19:4;23:8;26:10
**suggests (1)**
10:21
**Suite (1)**
35:12
**superior (1)**
29:13
**support (1)**
4:14
**supportive (1)**
33:1
**suppose (1)**
26:15
**supposed (1)**
20:7
**Sure (13)**
6:13;7:7;8:7;10:14;
17:3;19:1,14;23:23;
25:2;27:10;29:22,23;
31:1
**Susan (2)**
35:3,9
**system (1)**
22:5

**T**

**talk (2)**
26:1,2
**talked (1)**
30:13
**talking (1)**
24:19
**teed (1)**
16:20
**terms (1)**
7:13
**Thomas (1)**
27:3
**though (2)**
29:2,24
**thought (2)**
22:20;24:14
**threatened (1)**
12:19
**three (1)**
8:18
**threshold (1)**
21:20
**thresholds (1)**
21:19
**timely (1)**
22:9
**timing (1)**
21:12

**today (14)**
4:10,15;16:2,19;
23:24;24:4,10;26:9;
27:12;28:8;30:5,6,13;
33:9
**today's (4)**
17:13;27:22;29:1;
33:15
**told (1)**
17:16
**tomorrow (1)**
30:6
**towards (1)**
15:6
**track (1)**
28:13
**transaction (1)**
9:24
**transactions (4)**
4:12,18,19;18:14
**transcript (1)**
35:3
**treat (1)**
20:10
**treated (2)**
20:9,25
**treatment (1)**
5:25
**tremendously (1)**
15:14
**trial (5)**
15:1,17,18,20;16:17
**trouble (2)**
12:24;22:25
**true (1)**
35:4
**try (5)**
6:17;26:20,24;27:20;
31:1
**trying (9)**
12:22;13:2;21:16;
22:22;25:10;26:13,18;
28:24;33:9
**turn (1)**
27:19
**twelve (1)**
33:10
**two (3)**
19:2;33:16,16

**U**

**ultimately (1)**
27:13
**Um-hum (2)**
11:19;28:23
**unconfuse (1)**
32:10
**under (3)**
24:16;31:5,6
**undue (1)**
22:9
**Unfortunately (1)**

Min-U-Script®

Case: 19-30088   Doc# 1352   Filed: 04/11/19   Entered: 04/11/19 16:17:35   Page 41
of 42

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) same - Unfortunately

27:6
**unilateral (1)**
  10:5
**universe (2)**
  17:13;29:1
**unknown (1)**
  27:9
**unless (1)**
  8:3
**unnecessary (1)**
  24:12
**unresolved (1)**
  5:20
**up (8)**
  16:20,20;21:10;
  23:13;24:6,19,24;26:3
**upload (1)**
  30:2
**upon (2)**
  8:2;9:23
**using (1)**
  19:1

**V**

**vacuum (1)**
  27:12
**variety (1)**
  4:17
**vary (1)**
  24:18
**view (1)**
  6:7
**violation (1)**
  21:24
**voluntarily (1)**
  25:15

**W**

**wait (3)**
  8:13;10:1;21:25
**waited (1)**
  33:5
**walk (1)**
  19:19
**wants (1)**
  17:15
**way (11)**
  6:18;10:25;14:13;
  15:5;20:9,10,24;21:16;
  23:3,13,13
**ways (1)**
  21:17
**WEDNESDAY (1)**
  4:1
**Weil (1)**
  4:7
**welcome (1)**
  9:16
**What's (3)**
  18:11;20:21;31:11
**Whereupon (1)**

34:8
**whole (1)**
  17:11
**wholeheartedly (1)**
  6:16
**who's (4)**
  4:15;13:23,24;14:1
**Williams (1)**
  4:15
**wishes (2)**
  5:16;12:6
**withdraw (2)**
  17:21;19:4
**withdrawal (1)**
  19:10
**within (1)**
  20:8
**without (4)**
  7:6;22:9;23:4;27:13
**word (4)**
  19:1,15,16,17
**work (5)**
  21:23;23:12;26:20,
  23;28:5
**works (1)**
  29:23
**world (8)**
  8:13;10:11;17:15;
  19:23,24;22:2,5;32:10
**wrong (4)**
  14:19;18:11;22:20;
  31:11
**wrote (1)**
  20:4

**Y**

**Yesterday (1)**
  33:3

**1**

**1:31 (1)**
  4:1
**10 (2)**
  4:1;13:8
**10,000 (2)**
  33:4,9
**1004 (1)**
  4:11
**1075 (3)**
  5:1;13:10,11
**10th (1)**
  27:22
**11 (2)**
  17:17;35:15
**1177 (1)**
  4:25
**1286 (1)**
  5:13
**13 (2)**
  30:9;31:4
**16th (1)**

35:12

**2**

**2:04 (1)**
  34:8
**2019 (2)**
  4:1;35:15
**24th (10)**
  25:9;26:24;27:16,22;
  28:2,5,9;30:21;33:23,
  24

**7**

**7227 (1)**
  35:12

**8**

**85020 (1)**
  35:13

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

Case: 19-30088    Doc# 1352    Filed: 04/11/19    Entered: 04/11/19 16:17:35    Page 42
of 42