Robert A. Julian (SBN 99469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:   628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.442.8875
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official
Committee of Tort Claimants*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                                  **Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*\*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**APPLICATION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO 11 U.S.C. § 1103 AND FED. R. BANKR. P. 2014 AND 5002 TO RETAIN AND EMPLOY DEVELOPMENT SPECIALISTS, INC. AS A FINANCIAL ADVISOR EFFECTIVE AS OF MARCH 20, 2019**<br><br>Date:    May 8, 2019<br>Time:   9:30 a.m. (Pacific Time)<br>Place:   United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, CA 94102<br><br>**Objections Due: May 1, 2019** |

The Official Committee of Tort Claimants (the "**Committee**") of PG&E Corporation and Pacific Gas and Electric Company (collectively the "**Debtors**") hereby submits this application (the "**Application**") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Committee to retain and employ Development Specialists, Inc. ("**DSI**") as a financial advisor to the Committee, effective as of March 20, 2019, pursuant to section 1103(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and in accordance with the terms and conditions set forth in the engagement letter between the Committee and DSI dated March 20, 2019 (the "**Engagement Letter**") attached hereto as **Exhibit B**. In support of the Application, the Committee respectfully represents as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges* of the United States District Court of the Northern District of California, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On January 29, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "**Cases**") in the United States Bankruptcy Court for the Northern District of California (the "**Court**"). On January 31, 2019, the Court entered an order consolidating the Cases for joint administration [Doc. No. 207].

3. The Debtors continue to manage their assets and operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in the Cases.

4. On February 15, 2019, the Office of the United States Trustee ("**U.S. Trustee**") filed an Appointment of the Official Committee of Tort Claimants [Doc. No. 453]. Following the

resignation of Richard Heffern from the original committee and the addition of Tommy Wehe, on February 21, 2019, the U.S. Trustee filed the Amended Appointment of the Official Committee of Tort Claimants [Doc. No. 530]. The members of the Committee are: (i) GER Hospitality, LLC, in its capacity as an individual claimant; (ii) Kirk Trostle; (iii) Tommy Wehe; (iv) Angelo Loo; (v) Karen K. Gowins; (vi) Agajanian, Inc.; (vii) Susan Slocum; (viii) Samuel Maxwell; (ix) Karen M. Lockhart; (x) Wagner Family Wines-Caymus Vineyards; and (xi) Gregory Wilson. The Committee conducted a meeting on February 15, 2019, at which all members were present, and appointed Karen M. Lockhart as Chairperson.

## Retention of DSI

A. **Qualifications of DSI**

5. In light of the size and complexity of the Cases, the Committee requires a highly qualified and experienced financial advisor with the resources, capabilities, and depth of experience to assist the Committee in evaluating the liabilities and claims facing the Debtors as necessary to maximize value for all stakeholders. DSI professionals are particularly well-suited for the specific financial advisory role for which the Committee seeks their retention based upon their experience in other complex chapter 11 cases involving multiple creditor constituencies and complicated asset structures. Select examples of DSI's experience are set forth below.

6. In *In re Namco Capital Group, Inc.*, a real estate investment concern through which $3 billion flowed between 2003 and 2008, a DSI professional was appointed as Chapter 11 trustee and unraveled a complex business structure comprising over 400 entities through which investor funds were diverted by the debtor's owner for the benefit of himself and his family. DSI professionals resolved over 200 lawsuits to recover diverted funds. DSI also reconciled over a thousand claims totaling more than $1 billion.

7. In *In re Woodbridge Group of Companies, LLC, et al,* a massive $1.2 billion Ponzi scheme, DSI was retained as Chief Restructuring Officer in February 2018. Through over 300 debtor affiliates, Woodbridge operated a real estate acquisition and development business with over 350 employees in 6 states and owned over 250 residential properties. DSI professionals

managed the bankruptcy reporting for over 300 debtors, conducted forensic accounting to confirm all historical financial activity and reconciled over 8,000 claims.

8. In *In re Dana Corporation, In re Hayes Lemmerz and In re Keystone Steel,* DSI was engaged to advise the Retiree Committees appointed in each of these separate matters. Professionals from DSI analyzed the financial condition of the debtors and evaluated the various proposals and counter-proposals regarding benefit modification. DSI had the primary responsibility of communicating with the committees and the broader retiree constituencies.

9. In *In re Western Asbestos Co.,* DSI compiled a database of the asbestos future claims in order to independently arrive at certain value conclusions. DSI provided an expert report and testimony on three points: whether the Amended Joint Plan of Administration satisfied the best interest of creditors test; the business and financial condition of the subject entity; and the treatment of existing equity under the plan. Additionally, DSI provided an expert report and deposition testimony regarding the appropriate discount rate used to value the future claims.

10. In other non-bankruptcy, and nonpublic matters, DSI and its professionals have acted as advisors, consulting experts and testifying experts with respect to mass torts and damages analysis. This work includes establishing informational databases and reaching conclusions with respect to the valuation of damages.

**B.    Scope of services to be provided by DSI**

11. The Committee respectfully submits that it will be necessary to employ and retain DSI to provide consulting services for the Committee in connection with the Debtors' restructuring and the Cases. Specifically, DSI will work at the direction of the Committee to:

   a. Advising the Committee and its counsel regarding the tort claims process, filing and processing of tort claims and estimation of tort claims.

   b. Monitor liquidity as it relates to the foregoing, including evaluation of critical vendor payments and other key payments.

   c. Monitor operations and evaluate any projections or business plans, including any proposed wildfire safety and mitigation plans and asset spinoff/asset sales.

   d. Monitor developments in the Debtors' case and assist counsel.

e. Monitor and respond to regulatory matters and rate base considerations.

f. Review and advise the Committee on the Debtors' real estate portfolio and evaluate leases for optimization/rejection and any proposed real estate sales or financings.

g. Respond to Executive employee matters and any proposed KERP/KEIP.

h. Claims management.

i. Review of statements of financial affairs, schedules of assets and liabilities and related documents, and report to the Committee as appropriate.

j. Advise the Committee with respect to formulation of a plan and disclosure statement, as well as plan feasibility matters that involve the foregoing.

k. Participate in meetings/calls with the Debtors, creditors, other committees, the US Trustee, and other parties in interest and professionals hired by the same, as requested.

l. Assist counsel with advising the Committee on tax issues relating to the Debtors.

m. Perform such other tasks as may be agreed to by DSI and directed by the Committee or order of any Court having jurisdiction over the Committee.

12. The Engagement Letter contemplates that DSI may subcontract with a third-party to serve as information agent for the Committee and to assist with the compiling of information related to the services that DSI will be performing for the Committee. Any third-party with whom DSI may subcontract will submit invoices alongside DSI's for payment by the Debtors. Neither the Committee nor its counsel or advisors shall assume liability for any amounts payable in connection with any subcontracting arrangement. DSI has not and will not enter into any agreement with any other party to share compensation within the meaning of Bankruptcy Code section 504. Rather, all costs relating to any subcontracting arrangement will be presented and accounted for as separate expenses.

13. The services that DSI will provide to the Committee are critically necessary to enable the Committee—representing and consisting of tort claimants— to evaluate its unique position in the Cases and attain fair treatment relative to the Debtors' other creditors resulting from commercial relationships with the Debtors. DSI is highly qualified to analyze and monitor the Debtors' liquidity, estimate and process tort claims, and evaluate asset spinoff and/or asset sales. DSI's services will not duplicate those of any other professional serving the Committee,

specifically those proposed to be provided by Lincoln Partners Advisors LLC ("**Lincoln**") as the Committee has taken great care to separate the functions to be performed by each financial advisor. DSI, on one hand, will be assisting and advising the Committee with respect to the Debtors' liabilities and claims related work, and Lincoln, on the other hand, will assist and advise the Committee with respect to the Debtors' assets and valuation related work.

C. **DSI's Disinterestedness**

14. To the best of the Committee's knowledge, information and belief, based on and except as otherwise set forth in the annexed Declaration of Bradley D. Sharp, President and Chief Executive Officer of DSI operating out of DSI's office in Los Angeles, California (the "**Sharp Declaration**"), a copy of which is attached hereto as **Exhibit C**, neither DSI nor its professionals have any connection with or represent any other entity having an adverse interest to the Debtors, their creditors or any other party in interest, or their respective attorneys or accountants. The Sharp Declaration also sets forth, pursuant to Bankruptcy Rule 2014(a), to the best of Mr. Sharp's knowledge, all of DSI's connections with the Debtors, known creditors, other known parties in interest and their respective attorneys and accountants, and any person employed in the San Francisco Office of the United States Trustee for Region 17. Based upon the Sharp Declaration, DSI is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

15. The Committee believes that the employment of DSI as financial advisor on the terms set forth in this Application is appropriate and in the best interests of the tort victim creditor body that the Committee represents. The Committee has reviewed the Sharp Declaration, including the description of DSI's connections with parties in interest and/or potential parties in interest, and has no objection to any matter set forth therein. The Committee thus seeks an order approving DSI's engagement by the Committee on the terms set forth in this Application and the Engagement Letter.

D. **Effective Date of Retention**

16. The Committee requests that DSI's retention be approved effective as of March 20, 2019, the date DSI was selected by the Committee as its financial advisor and began substantive

Case: 19-30088    Doc# 1461    Filed: 04/15/19    Entered: 04/15/19 20:23:15    Page 6 of 9

work on the Committee's behalf. The Committee believes retention that is effective as of March 20, 2019 is appropriate in view of the nature of these Cases and the Committee's immediate needs for DSI's assistance in evaluating the Debtors' liabilities and claims.

**E.     Compensation of DSI**

17.     DSI intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines promulgated by the Office of the United States Trustee, and pursuant to the order entered by this Court on February 28, 2019 establishing the procedures for interim compensation and reimbursement of expenses of professionals [Doc. No. 701] and any additional procedures that may be established by the Court in these Cases.

18.     Subject to the Court's approval, DSI will be compensated at its standard hourly rates, which are based on the professionals' level of experience, plus reimbursement of the actual and necessary expenses that DSI incurs in accordance with the ordinary and customary rates which are in effect on the date the services are rendered. DSI anticipates that the professionals primarily responsible for advising the Committee in these cases will be as follows:

| Professional | Hourly Rate |
|---|---|
| Bradley D. Sharp | $685.00/hr. |
| R. Brian Calvert | $640.00/hr. |
| Thomas P. Jeremiassen | $575.00/hr. |
| Eric J. Held | $495.00/hr. |
| Nicholas Troszak | $485.00/hr. |
| Shelly L. Cuff | $360.00/hr. |
| Spencer Ferrero | $350.00/hr. |

19.     These rates are subject to periodic rate adjustments in the ordinary course of DSI's business, notice of which adjustments shall be provided to the Debtors and the United States Trustee. DSI will maintain detailed, contemporaneous records of time and any necessary costs and expenses incurred in connection with the rendering of its services as described above and will be reimbursed for such costs and expenses in conformity with the Guidelines promulgated by the United States Trustee as in effect in this District.

### Basis for Relief

20. The Committee respectfully requests that the Court authorize the retention and employment of DSI as its financial advisor, effective as of March 20, 2019, pursuant to section 1103(a) of the Bankruptcy Code, which provides that a committee appointed under section 1102 of the Bankruptcy Code:

> [M]ay select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.

11 U.S.C. § 1103(a).

21. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

22. The Committee submits that for all the reasons stated above and based upon the Sharp Declaration, the retention of DSI as financial advisor to the Committee is merited. Further, as stated in the Sharp Declaration, DSI is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors or their related parties except as may be disclosed in the Sharp Declaration. Accordingly, the retention of DSI as financial advisor to the Committee should be approved.

### Notice

23. Notice of this Application will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Debtors; (iv) the Securities and Exchange

Baker & Hostetler LLP
Attorneys at Law
San Francisco, CA

Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

## No Prior Request

24. No previous request for the relief sought herein has been made to this or any other court.

## Reservation of Rights

25. The Committee respectfully reserves the right to file a brief and memorandum of law in response to any objection to this Application.

WHEREFORE, the Committee respectfully requests that this Court enter an order, in the form attached hereto as **Exhibit A**, (a) authorizing the Committee to retain DSI effective as of March 20, 2019; and (b) granting such other and further relief as is just and proper.

Dated: April 15, 2019

OFFICIAL COMMITTEE OF TORT CLAIMANTS
OF PG&E CORPORATION AND PACIFIC GAS
AND ELECTRIC COMPANY

By: /s/ Karen M. Lockhart
Name: Karen M. Lockhart
Title: Chair of the Official Committee of Tort Claimants