TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
JASON BLUMBERG (NY SBN 4055257)
Trial Attorney
MARTA E. VILLACORTA (NY SBN 4918280)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Avenue, Suite 05-0153
San Francisco, CA 94102
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: jason.blumberg@usdoj.gov
       marta.villacorta@usdoj.gov

Attorneys for Andrew R. Vara,
Acting United States Trustee for Region 3[1]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**,<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors**.<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br>*All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>Date: April 24, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

**UNITED STATES TRUSTEE'S OBJECTION TO APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY FTI CONSULTING, INC.**

Andrew R. Vara, Acting United States Trustee for Region 3 (the "United States Trustee"), by and through his undersigned counsel, hereby files this objection to the *Application*

---

[1] Andrew R. Vara, Acting United States Trustee for Region 3, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who has recused herself.

1

*of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§ 328(A) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to February 12, 2019* (ECF No. 1212) (the "Application"). This Objection is supported by the following memorandum of points and authorities and any argument the Court may permit.[2]

## PRELIMINARY STATEMENT

Due to its connections with the Debtors, FTI has an actual conflict of interest. Most notably, FTI's wholly-owned subsidiary, Compass Lexecon, LLC, is providing consulting services to the Debtors on a critical issue - assessing and evaluating damages from the California wildfires. By concurrently representing the Debtors and the Committee, FTI's actual conflict creates an appearance of impropriety and undermines confidence that both interests are receiving objective and unbiased advice from a disinterested bankruptcy professional on issues critical to the reorganization.

While the ethical wall procedures instituted by FTI may protect client confidences, the procedures cannot cure the inherent conflict resulting from concurrent adverse client relationships.

I.  **BACKGROUND**

1. On January 29, 2019 (the "Petition Date"), the Debtors commenced the above-captioned cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See* ECF No. 1. No trustee has been appointed in the Debtors' cases. *See generally* Case Dockets.

---

[2] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in these cases pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201.

2

2. On February 12, 2019, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). *See* ECF No. 409.

3. On April 3, 2019, the Committee filed the Application to employ and retain FTI Consulting, Inc. ("FTI") as its financial advisor. *See* Application generally.

4. As disclosed in the Application and the related declaration of Samuel E. Star (ECF No. 1212) (the "Star Declaration"), FTI has several connections to the Debtors. Notably:

    a. Compass Lexecon, LLC, a wholly-owned subsidiary of FTI, was engaged by the Debtors "to provide consulting services to assess and develop a methodology to evaluate potential damages related to the California wildfires." It is "likely" that the Debtors will seek further advice from Compass Lexecon on these matters.

    b. The Environmental Solutions practice group in FTI's Forensic & Litigation Consulting business segment "was retained by counsel for a group of over 50 defendants including the Debtors to provide analysis of post-closure obligations relating to a landfill site." Work on this engagement "may continue" after the Petition Date.

    c. The insurance practice group in FTI's Forensic & Litigation Consulting business segment "was retained by a purchaser of insurance subrogation claims to assist in connection with certain US insurance companies holding subrogation claims primarily related to the identification of and introduction to insurers …. The subrogation claims include claims against the Debtors." Work on this engagement is "likely to continue" after the Petition Date.

*See* Star Declaration, at ¶¶ 21-22.[3]

5. In order to protect confidentiality of client information, FTI has established ethical wall procedures with respect to the engagements described in Paragraphs 21 and 22 of the Star Declaration. *See id.*, at ¶ 23.

---

[3] The Star Declaration does not expressly state whether Mr. Star is the lead FTI professional on the proposed engagement by the Committee, or his involvement with the other engagements set forth in Paragraphs 21 and 22 of his declaration. Without this information, the basis for the Committee's belief that FTI does not have any interest "materially adverse" to the Debtor' estates or any class of creditors is unclear. *See* Application, at ¶ 29.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. Statutory Framework

Section 1103 of the Bankruptcy Code governs the retention of professionals by an official committee of unsecured creditors. Section 1103(b) provides, in relevant part, as follows:

> (b) An attorney or accountant employed to represent a committee appointed under section 1102 of this title <u>may not</u>, while employed by such committee, <u>represent any other entity having an adverse interest in connection with the case</u>.

See 11 U.S.C. § 1103(b) (emphasis added).

Moreover, Section 328(c) of the Bankruptcy Code provides that "disinterestedness" is a prerequisite to allowance of compensation for a professional person who is employed under section 1103 of the Bankruptcy Code. Section 328(c) states, in relevant part:

> …the <u>court may deny compensation</u> for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is <u>not a disinterested person, or represents or holds an interest adverse</u> to the estate with respect to the matter on which such professional person is employed.

*See* 11 U.S.C. § 328(c) (emphasis added). Section 328(c) is a "penalty" for a professional's failure to avoid a disqualifying conflict of interest. *See In Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 625 (Bankr. E.D. Cal. 2012).

A "disinterested person" is a person who, among other things, "does not have an <u>interest materially adverse to the interest</u> of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." *See* 11 U.S.C. §§ 101(14)(C) (emphasis added); *see also In re Shat*, 2009 WL 7809004, at *6 (B.A.P. 9th Cir. Nov. 25, 2009) (A disinterested person is "one

4

that can make unbiased decisions, free from personal interest, in any matter pertaining to the debtor's estate").

To have an adverse interest means, "the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate." *See In re AFI Holding, Inc.*, 355 B.R. 139, 148-49 (B.A.P. 9th Cir. 2006) (affirming the removal of a Chapter 7 trustee, where the trustee had a materially adverse interest due either to an appearance of impropriety or potential conflict of interest arising from the trustee's prior representation of the debtor's insider, among other grounds), *aff'd by* 530 F.3d 832, 838 (9th Cir. 2008) (adopting the B.A.P.'s analysis).

To represent an adverse interest "means to serve as agent or attorney for any individual or entity holding such adverse interest." *See In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1017 (Bankr. N.D. Ill. 1993); *see also In re Shat*, 2009 WL 7809004, at *5.

The "adverse interest" language found in sections 101(14)(C), 327(a), 328(c), and 1103(b) "'telescope into what amounts to a <u>single hallmark</u> [that is] designed to <u>filter out conflicts</u> that may jeopardize a fair and equitable administration of the bankruptcy case.'" *See In re Sundance Self Storage-El Dorado LP, 482* B.R. at 626 (emphasis added).

**B.      The Role of the United States Trustee**

Under 28 U.S.C. § 586(a)(3)(I), the United States Trustee is charged with monitoring applications filed under 11 U.S.C. § 327 "and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications." The United States Trustee has a corresponding duty to review applications filed under 11 U.S.C.

5

§ 1103. *See, e.g., In re Calabrese*, 173 B.R. 61 (Bankr. D. Conn. 1994). This duty is part of the United States Trustee's responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

## III. ARGUMENT

### A. The Application Should be Denied Because FTI Has an Actual Conflict of Interest.

An actual conflict "mandates" disqualification of a professional from serving in a bankruptcy case. A potential conflict is also grounds to deny a professional's employment. *See In re Shat*, 2009 WL 7809004, at *6; *see also In re Marvel Entm't Group*, 140 F.3d 463, 477 (3d Cir. 1998) ("Section 327(a) presents a per se bar to the appointment of a law firm with an actual conflict, and gives the district court wide discretion in deciding whether to approve the appointment of a law firm with a potential conflict.").[4]

Here, as noted above, practice groups within FTI are assisting the Debtors with respect to post-closure obligations relating to a landfill site, and also assisting a purchaser of insurance subrogation claims against the Debtors. *See* Star Declaration, at ¶¶ 21-22.

Further, FTI's wholly-owned subsidiary, Compass Lexecon, is engaged by the Debtors to assess and evaluate damages related to the California wildfires. *See* Star Declaration, at ¶

---

[4] "An actual conflict exists if there is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'" *In re Git-N-Go, Inc.*, 321 B.R. 54, 58 (Bankr. N.D. Okla. 2004) (citing *In re BH&P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J. 1989), *aff'd in pertinent part*. 119 B.R. 35 (D.N.J. 1990)).

6

21. Resolution of the wildfire claims is one of the "principal objectives" of these cases. *See* ECF No. 263 (amended declaration of Jason P. Wells), at p.4. The interests of the Debtors and the Committee may not be aligned on this issue, let alone the myriad of other issues that are likely to arise in these cases.

In short, FTI is seeking to represent the Committee at the same time that its wholly-owned subsidiary is advising the Debtors on a fundamental issue in the case. This concurrent representation is an actual conflict of interest. *See*, *e.g.*, *In re Hammer*, 2007 WL 7540944, at *7 (B.A.P. 9th Cir. Oct. 11, 2007) (law firm retained by the Chapter 7 Trustee was not disinterested, where it also represented a major creditor in the case); *In re Shat*, 2009 WL 7809004, at *8 (counsel had an "irreconcilable conflict," where he represented debtors whose estates had competing interests in the same property); *In re Woodworkers Warehouse, Inc.*, 303 B.R. 740, 742-43 (Bankr. D. Del. 2004) (denying retention of debtor's proposed counsel where counsel had represented the committee in the Chapter 11 case of the debtor's predecessor); *In re Quality Beverage Co., Inc.*, 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995) ("Coopers has performed services for the Committee, and now seeks to perform services for the Trustee who has potential preference actions against members of the Committee, resulting in a potential dual representation. <u>Where there is a dual representation, an "actual conflict" exists</u>.") (emphasis added).[5]

---

[5] Section 1103(b) states that "[r]epresentation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest." 11 U.S.C. § 1103(b). Section 1103(b) does not, however, have a similar exclusion for joint representation of a committee and the debtor. *See id.* It should be presumed that Congress intended this omission. *See, e.g., Blausey v. U.S. Trustee.*, 552 F.3d 1124, 1133 (9th Cir. 2009) ("The general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded."); *In re City of Vallejo*, 408 B.R. 280, 295–96 (B.A.P. 9th Cir. 2009) ("[I]t 'is generally presumed Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.'").

7

### B. An Ethical Wall Cannot Cure FTI's Conflict.

The Star Declaration discloses that FTI and Compass have erected ethical walls "to maintain the confidentiality of the client information." *See* Star Declaration, at ¶ 23.

The purpose of an ethical wall is to protect confidentiality. *See, e.g., Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 822 (N.D. Cal. 2004) ("Although an ethical wall may, in certain limited circumstances, prevent a breach of confidentiality, it cannot, in the absence of an informed waiver, cure a law firm's breach of its duty of loyalty to its client."); *see also In re Ampal-American Israel Corp.*, 534 B.R. 569, 583 (Bankr. S.D.N.Y. 2015) ("Although associated attorneys are presumed to share client confidences … that presumption is rebutted through evidence that an ethical wall prevents information sharing.").

By shielding client confidences, an ethical wall may ameliorate the sometimes harsh effects of vicarious or imputed disqualification due to the personal disqualification of one member of a firm. *See, e.g., In re Cty. of Los Angeles*, 223 F.3d 990, 997 (9th Cir. 2000) ("Screening mechanisms that are both timely and effective … will rebut the presumption that the former judge disclosed confidences to other members of the firm.").[6]

An ethical wall does not, however, eliminate a "conflict arising from concurrent adverse client relationships." *See, e.g., Concat LP v. Unilever, PLC*, 350 F. Supp. 2d at 822 ("Screening measures … do nothing to mitigate conflict arising from concurrent adverse client relationships, since the purpose of the prohibition against such

---

[6] A professional's knowledge and duty of loyalty are imputed to the professional's firm. *See In Hammer*, 2007 WL 7540944, at *7 n.11.

relationships is to preserve the attorney's duty of loyalty, not confidentiality, to his client.").

Here, the issue is not limited to the protection of client confidences. FTI has an actual conflict of interest due, in part, to Compass Lexecon's existing engagement by the Debtors. An ethical wall cannot cure this conflict.

**WHEREFORE**, the United States Trustee respectfully requests that the Court (i) deny the Application and (ii) grant such other relief as the Court deems appropriate and just.

Dated: April 17, 2019
                 Andrew R. Vara
                 Acting United States Trustee, Region 3

                 By: /s/ Jason Blumberg
                 Jason Blumberg
                 Trial Attorney for Acting United States Trustee