SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
James P. Hill, SBN 90478
Christopher V. Hawkins, SBN 222961
600 B Street, Suite 1700
San Diego, California 92101
Tel: (619) 233-4100
Email: hill@sullivanhill.com
hawkins@sullivanhill.com

Gerald Singleton, SBN 208783
Amanda W. LoCurto, SBN 265420
SINGLETON LAW FIRM, APC
450 A Street, 5th Floor
San Diego, CA 92101
Tel: (619) 771-3473
Email: gerald@slffirm.com
amanda@slffirm.com

Attorneys for SLF Fire Victim Claimants

**Electronically Filed 4/17/2019**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>Debtors<br><br>Affects:<br>☐ PG&E Corporation<br>☐ Pacific Gas & Electric Company<br>☒ Both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-3008 (DM) | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case–Jointly Administered)<br><br>**OBJECTION TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) CLARIFYING CERTAIN BANKRUPTCY CODE REQUIREMENTS AND (II) APPROVING PROTOCOL FOR PROVIDING ACCESS TO INFORMATION TO UNSECURED CREDITORS, *NUNC PRO TUNC* TO FEBRUARY 12, 2019 [ECF 1215]**<br><br>Date: April 24, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Hon. Dennis Montali<br><br>**Opposition Deadline: April 17, 2019, 4 p.m.** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. 3

I. INTRODUCTION ..................................................................................................... 6

II. STATEMENT OF FACTS ........................................................................................ 7

    A. Background ................................................................................................... 7

    B. The Committee's Requested Relief .............................................................. 8

    C. Summary of the SLF Claimants' Argument ................................................. 8

    D. The SLF Claimants' Requested Modifications ............................................ 9

III. ARGUMENT ........................................................................................................... 13

    A. Relevant Section 1102(b)(3)(A) Authority ................................................. 13

    B. The Committee's Proposed Order Omits the *Refco* Information Sharing Protocols. ..................................................................................................... 16

    C. The Definition of "Confidential Information" Should Be Modified ......... 18

IV. CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alvidres v. Countrywide Fin. Corp*,
  No. CV 07-05810-RGK (CTx), 2008 U.S. Dist. LEXIS 27431
    (C.D. Cal. Mar. 18, 2008) ................................................................................................. 13

*Covelo Indian Cmty. v. Fed. Energy Regulatory Com*,
  895 F.2d 581 (9th Cir. 1990) ............................................................................................... 13

*In re Alpha Natural Resources, Inc.*,
  Case No. 15-33896 (Bankr. E.D. Va. Oct. 16, 2015) ......................................................... 17

*In re HDOS Enters.*,
  Case No. 14-12028 (Bankr. C.D. Cal. Mar. 18, 2014) ....................................................... 17

*In re iHeartMedia, Inc.*,
  Case No. 18-31274 (Bankr. S.D. Tex. May 15, 2018) .................................................. 13, 18

*In re Mesa Air Grp.*,
  No. 10-10018, 2010 Bankr. LEXIS 4862 (Bankr. S.D.N.Y. Feb. 25, 2010) ...................... 17

*In re Metaldyne Corp.*,
  No. 09-13412 (Bankr. S.D.N.Y. July 20, 2009) .................................................................. 17

*In re MF Global Holdings Ltd.*,
  2012 Bankr. LEXIS 898 (Bankr. S.D.N.Y. March 6, 2012) ......................................... 14, 17

*In re MMFx Canadian Holdings, Inc.*,
  Case No. 10-10083 (Bankr. C.D. Cal. Mar. 15, 2011) .................................................. 13, 17

*In re Nine West Holdings, Inc.*,

    Case No. 18-10947 (Bankr. S.D.N.Y. June 5, 2018) ........................................................ 13, 17

*In re Patriot Coal Corp.*,

    Case No. 15-32450-KLP (Bankr. E.D. Va. July 29, 2015) ......................................................... 17

*In re QSL of Medina, Inc.*,

    Case No. 15-52722 (Bankr. N.D. Ohio January 8, 2016) ..................................................... 17, 19

*In re Refco Inc.*,

    336 B.R. 187 (Bankr. S.D.N.Y. 2006) ............................................................................... passim

*In re S&B Surgery Center, Inc.*,

    421 B.R. 546 (Bankr. C.D. Cal. 2009) ................................................................................ 18, 19

*Kingdomware Techs., Inc. v. United States*,

    136 S. Ct. 1969 (2016) ............................................................................................................ 19

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,

    523 U. S. 26 (1998) ................................................................................................................. 19

**Statutes**

11 U.S.C. § 101 *et seq.* .................................................................................................................. 6

11 U.S.C. § 105(a) ....................................................................................................................... 14

11 U.S.C. § 107(b)(1) .................................................................................................................. 14

11 U.S.C. § 339(1) ....................................................................................................................... 15

11 U.S.C. § 405(b) ....................................................................................................................... 14

11 U.S.C. § 704(7) ....................................................................................................................... 15

11 U.S.C. § 704(a)(7) ............................................................................................................... 11

11 U.S.C. § 1102(a) .................................................................................................................. 13

11 U.S.C § 1102(b)(3) ......................................................................................................... passim

11 U.S.C. § 1102(b)(3)(A) ........................................................................................................ 13

11 U.S.C § 1102(b)(3)(B) ......................................................................................................... 13

11 U.S.C. § 1106 ....................................................................................................................... 11

11 U.S.C. § 1107 ....................................................................................................................... 11

17 C.F.R. §§ 243.100 to 243.103 (2005) .................................................................................. 13

**Other Authorities**

7 Collier on Bankruptcy ¶ 1102.08 (16th 2019) ....................................................................... 18

H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 87 (2005) ......................................................... 14

## I. INTRODUCTION

The Singleton Law Firm Fire Victim Claimants ("SLF Claimants"), consisting of over 3,500 individuals who suffered injuries and damages in the fires started by PG&E Corporation and Pacific Gas and Electric Company (collectively, "PG&E") and who are represented by the Singleton Law Firm, APC,[1] hereby file the following objection ("Objection") to the Motion for Entry of an Order (i) Clarifying Certain Bankruptcy Code Requirements and (ii) Approving Protocol for Providing Access to Information to Unsecured Creditors, *Nunc Pro Tunc* to February 12, 2019 [ECF No. 1215] ("Motion") filed by the Official Committee of Unsecured Creditors ("Committee").

In its Motion, the Committee states it is moving the Court for entry of an order clarifying its disclosure obligations to PG&E's unsecured creditors under Section 1102(b)(3) of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*).[2]

But the content in the proposed order attached as Exhibit A to the Motion ("Proposed Order") in fact guts the Committee's duties to share information under Section 1102(b)(3) entirely. It merely obligates the Committee to share information with unsecured creditors that is already available on the docket or through other public sources.

The Committee's interpretation of its duties under Section 1102(b)(3) is ludicrous and would eviscerate the congressional intent of Section 1102(b)(3). Indeed this section of the Bankruptcy Code was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The point of the legislation, as its title explains, was to require disclosure of non-public information to the constituents of the Committee, to increase the availability of information to creditors.

The SLF Claimants ask that the Committee be required to fulfill its obligation under Section 1102(b)(3) to share <u>more</u> information with unsecured creditors than simply what is available on the docket or other public sources. The Committee owes a fiduciary duty to its constituents to keep them informed at a sufficient level to participate in these cases meaningfully. The Committee's proposal to

---

[1] While there are other firms involved in the representation of the SLF Claimants, because each fire has a different group of firms involved, this group is referred to as the "SLF Claimants" for ease of reference.

[2] Hereinafter, unless otherwise indicated, all "Section" and "Chapter" references are to the Bankruptcy Code.

provide only public information falls far short of meeting its fiduciary duty. Given the magnitude of these cases–likely the largest bankruptcies in the country at present–more robust disclosure requirements than those proposed by the Committee are necessary. The SLF Claimants have the ability to make their own voice heard in this case, and they are entitled to be fully informed by their fiduciary, the Committee, in order to fully protect and advance their rights.

Accordingly, as more fully detailed below, the SLF Claimants respectfully request that the definition of "Confidential Information" in the Proposed Order be modified to narrow the scope of information withheld by the Committee from unsecured creditors, and that certain Modifications (defined below) be added to the Proposed Order to protect unsecured creditors' right to receive access to information from its Committee.

## II. STATEMENT OF FACTS

### A. Background

PG&E's stated reason for seeking bankruptcy protection was that it was facing $30 billion in damages from the 2015 Butte Fire, the 2017 North Bay Fires (18 fires in 10 Northern California counties) and the 2018 Camp Fire.[3] Together these fires burned nearly 500,000 acres, killed over 100 people, destroyed almost 20,000 homes, and left tens of thousands of people homeless.

The SLF Claimants consist of victims from each of the three major fires/fire complexes involved in the bankruptcy: the 2015 Butte Fire (coordinated in Sacramento Superior Court under JCCP Number 4853); the 2017 North Bay Fires (coordinated in San Francisco Superior Court under JCCP Number 4955); and the 2018 Camp Fire (which had not been coordinated or consolidated at the time PG&E filed for bankruptcy). With respect to the 2017 North Bay Fires, the SLF Claimants sustained damages in each of the 18 major fires. Accordingly, the SLF Claimants comprise a more complete representative group of fire victims than any other group.

The SLF Claimants fully intend to be active in the case and monitor PG&E's prospects for reorganization under a Chapter 11 plan for the benefit of the SLF Claimants and those similarly

---

[3] "PG&E to file for Bankruptcy as Wildfire Costs hit $30 billion", *Los Angeles Times*, July 14, 2019, https://www.latimes.com/business/la-fi-pge-bankruptcy-filing-20190114-story.html.

situated. The SLF Claimants cannot effectively do so unless information is properly shared with them by the Committee.

**B.     The Committee's Requested Relief**

The Committee requests that the Court enter the Proposed Order, which would minimize the statutory information sharing obligation of the Committee and merely obligate the Committee to (1) establish and maintain an internet-accessed website that provides information regarding the PG&E bankruptcy cases that is otherwise accessible through PACER or other public websites; and (2) establish and maintain an electronic mail address for creditors to submit questions and comments.

Moreover, the Proposed Order authorizes the Committee not to disclose the following:

(a) "confidential, proprietary, and/or other non-public information (whether oral or written and including information in any electronic or physical medium)" received by the Committee "concerning the Debtors, these chapter 11 cases, or the Committee, including (without limitation) with respect to the acts, conduct, assets, liabilities and financial condition of the Debtors, the operations of the Debtors' businesses and the desirability of the continuance of such businesses, or any other matter related or relevant to these chapter 11 cases or to the formulation of one or more chapter 11 plans or related to any adversary proceeding, contested matter or other litigation (including any and all confidential, proprietary, or other non-public materials of the Committee) whether provided (voluntarily or involuntarily) by or on behalf of the Debtors or by any third party or prepared by or for the Committee";

(b) "any other information if the effect of such disclosure would constitute a general or subject matter waiver of the attorney-client, work-product, or other applicable privilege possessed by the Committee"; and

(c) "[a]ny documents, information or other materials designated by the Debtors as confidential."

**C.     Summary of the SLF Claimants' Argument**

The Committee's Proposed Order essentially negates the Committee's duties to share information under Section 1102(b)(3). It merely obligates the Committee to share information with unsecured creditors that is <u>already available on the docket or through other public sources</u>.

The Committee's interpretation of its duties under Section 1102(b)(3) is tortured and would nullify the congressional language and intent of Section 1102(b)(3). The SLF Claimants, which are one of the single largest groups of represented fire tort claimants in the PG&E cases and which are

not included by a single representative on the Tort Committee, ask that the Committee be required to share more information with unsecured creditors than simply what is available on the docket or other public sources. As Congress made clear with Section 1102(b)(3), the Committee owes a fiduciary duty to the SLF Claimants and other unsecured creditors to keep them informed–informed at a sufficient level to participate in these cases meaningfully. The Committee's proposal to provide only public information falls short of meeting its statutorily mandated fiduciary duty.

The SLF Claimants believe that the Committee's proposed exceptions to disclosure not only swallow the rule of disclosure embodied in Section 1102(b)(3), but unduly burden individual claimants, and the Court, with unnecessary process, attendant delay, and expense, associated with obtaining information in the hands of the Committee that should be shared, in accordance with appropriate mechanisms as required for particular circumstances. The little amount of information the Committee proposes to share is hardly worth the exercise if the Proposed Order were adopted as submitted. The Committee would become a <u>gatekeeper</u> of information, rather than a conduit and facilitator for access to information to claimants who have legitimate, individualized needs to address issues as they arise in these enormous and complex Chapter 11 cases, including that necessary ultimately to the prove-up and allowance of claims held by individual fire tort claimants.

The Committee can, and should, act as a positive force to improve access to information and provide efficiencies in bundling data that will, in that fashion, be of greater use to all similarly situated creditors. Instead, the Proposed Order threatens to make the Committee a tool of PG&E to restrict the flow of information as PG&E works to limit information that might be used against it in the cases.

**D.      The SLF Claimants' Requested Modifications**

The SLF Claimants object to entry of the Proposed Order, unless it is modified as follows ("Modifications"):[4]

    1.      Change the definition of "Confidential Information" to read as follows:

---

[4] A revised proposed order granting the Motion and incorporating the Modifications is attached as Exhibit A hereto. A redline showing the changes made to the Committee's Proposed Order in the revised proposed order is attached as Exhibit B hereto.

The term "Confidential Information" shall mean any nonpublic information of the Debtors, including, without limitation, nonpublic information concerning the Debtors' assets, liabilities, business operations, projections, analyses, compilations, studies, and other documents prepared by the Debtors or their advisors, or other agents of the Debtors, which is furnished, disclosed, or made known to the Committee or its advisors or agents, whether intentionally or unintentionally, and in any manner, including written form, orally, or through any electronic, facsimile or computer-related communication. Confidential Information shall include: (a) any notes, summaries, compilations, memoranda, or other written materials disclosing or discussing Confidential Information; (b) any written Confidential Information that is discussed or presented orally; and (c) any other Confidential Information conveyed to the Committee orally that the Debtors or their advisors, or other agents of the Debtors advise the Committee should be treated as confidential. Notwithstanding the foregoing, Confidential Information shall not include any information or portions of information that: (a) is or becomes generally available to the public or is or becomes available to the Committee on a non-confidential basis, in each case to the extent that such information became so available other than by a violation of a contractual, legal, or fiduciary obligation to the Debtors; or (b) in the possession of the Committee prior to its disclosure by the Debtors and is not subject to any other duty or obligation to maintain confidentiality.

2. Delete paragraph 6 of the Proposed Order, which provides that "[a]ny documents, information or other materials designated by the Debtors as confidential shall be treated as 'Confidential Information' for purposes of this Order; provided, however, that nothing in this Order affects or shall be deemed to affect the Committee's ability to dispute any Debtor's designation of information as 'Confidential Information.' "

3. In the alternative to deleting paragraph 6 of the Proposed Order, modify it to read that "[a]ny documents, information or other materials designated by the Debtors as confidential shall be treated as 'Confidential Information' for purposes of this Order; provided, however, that nothing in this Order affects or shall be deemed to affect the Committee's or unsecured creditors' ability to dispute any Debtor's designation of information as 'Confidential Information.' "

4. Add the following information sharing protocol ("Information Sharing Protocol"):

   a. If a creditor (the "Requesting Creditor") submits a written request to the Committee (the "Information Request") for the Committee to disclose information, the Committee shall as soon as practicable, but no more than twenty (20) days after receipt of the Information Request, provide a response to the Information Request (the "Response"), including providing access to the information requested or the reasons for which the

Committee cannot comply with the Information Request. If the Response is to deny the Request because the Committee believes the Information Request implicates Confidential Information or Privileged Information or otherwise, or that the Information Request is unduly burdensome, the Requesting Creditor may, after a good faith effort to meet and confer with an authorized representative of the Committee regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion filed with this Court. Such motion shall be served on the counsel for the Committee and PG&E and the hearing on such motion shall be noticed and scheduled as required by the Local Rules for the Northern District of California. Upon request, the Committee shall provide the Requesting Creditor a log or other index of any information specifically responsive to the Requesting Creditor's Information Request that the Committee deems to be Confidential Information or Privileged Information, including (as to any document), the nature of the document, its date, the parties involved, and the basis for the privilege asserted. Furthermore, the Requesting Creditor may request that the Court conduct an *in camera* review of any information specifically responsive to the Requesting Creditor's Information Request that the Committee asserts is Confidential Information or Privileged Information.

b. In its Response to an Information Request for access to Confidential Information, the Committee shall consider whether (a) the Requesting Creditor is willing to agree to reasonable confidentiality restrictions with respect to such Confidential Information; and (b) under the particular facts, such agreement will reasonably protect the confidentiality of such Confidential Information. Any disputes with respect to this paragraph shall be resolved as provided in the preceding paragraph, and, to the extent applicable, the next paragraph.

c. In addition, if the Information Request implicates Confidential Information of PG&E (or any other Entity) and the Committee agrees that such request should be satisfied, or if the Committee on its own wishes to disclose such Confidential Information to creditors, the Committee may demand (the "Demand") the disclosure of such Confidential Information for the benefit of PG&E's creditors: (a) if the Confidential Information is information of PG&E, by submitting a written request, each captioned as a "Committee Information Demand," to counsel for PG&E, stating that such information will be disclosed in the manner described in the Demand unless PG&E objects to such Demand on or before fifteen (15) days after the service of such Demand; and, after the lodging of any such an objection, the Committee, the Requesting Creditor (if one exists), or PG&E may schedule a hearing with the Court seeking a ruling with respect to the Demand under 11 U.S.C. § 704(a)(7) (incorporated by 11 U.S.C. §§ 1106 & 1107); and (b) if the Confidential Information is information of another Entity, by submitting a written request to such Entity and its counsel of record, with a copy to PG&E's counsel, stating that such information will be disclosed in the manner described in the

Demand unless such entity objects to such Demand on or before fifteen (15) days after the service of such Demand; and, after the lodging of any such an objection, the Committee, the Requesting Creditor (if one exists), such Entity, or PG&E may schedule a hearing with the Court seeking a ruling with respect to the Demand.

5. Add a paragraph requiring the Committee to provide monthly Committee written reports summarizing recent proceedings, events, and financial information, including information not otherwise publically available, to unsecured creditors.

The SLF Claimants submit that their proposed Modifications are narrowly tailored, appropriate, and reasonable.

To be clear, by the above requested Modifications, the SLF Claimants are not requesting unfettered access to every shred of information that the Committee holds. Nor are they requesting access to truly confidential and privileged information without restriction.

But they are asking that the Committee share more information with them than simply what is available on the docket. To hold otherwise would eviscerate Section 1102(b)(3). The Modifications would accomplish several goals: (a) enable the Committee to function properly; (b) ensure that PG&E and the Committee have full and frank advice of their professional advisors; (c) provide unsecured creditors and fire tort claimants, including the SLF Claimants, who comprise one of the largest groups of fire tort claimants in these cases, and who do not have a representative participant member on the Tort Committee, with the information they need to meaningfully participate in the cases; and (d) prevent widespread disclosure of confidential and privileged information shared with the Committee.

Because the definition of "Confidential Information" in the Motion is so exceedingly broad, the SLF Claimants could be deprived of information about PG&E's business that may be vital to the SLF Claimants' ability to meaningfully participate in these proceedings in violation of the intent of Section 1102(b)(3). Further, without the Information Sharing Protocol, the SLF Claimants cannot be guaranteed to timely receive from the Committee information to which they are entitled.

/ / /

/ / /

/ / /

## III. ARGUMENT

**A.      Relevant Section 1102(b)(3)(A) Authority.**

Fiduciaries have a general duty to keep their constituents informed of important matters. *Covelo Indian Cmty. v. Fed. Energy Regulatory Com,* 895 F.2d 581, 586 (9th Cir. 1990); *Alvidres v. Countrywide Fin. Corp*, No. CV 07-05810-RGK (CTx), 2008 U.S. Dist. LEXIS 27431, at *9 (C.D. Cal. Mar. 18, 2008) ("It is also well-established that fiduciaries have an affirmative duty to provide participants with information material to the participants' circumstances, even when the participant has not specifically asked for the information.").

When it comes to official committees, Congress enacted Section 1102(b)(3)(A), which provides, in relevant part, that a creditors' committee appointed under Section 1102(a) "shall provide access to information for creditors who (i) hold claims of the kind represented by that committee; and (ii) are not appointed to the committee[.]" 11 U.S.C. § 1102(b)(3)(A). Section 1102(b)(3)(B) provides that a committee must "solicit and receive comments from the creditors described in subparagraph (A)." 11 U.S.C. § 1102(b)(3)(B). However, while Sections 1102(b)(3)(A) and (B) do not indicate how a creditors' committee "shall" provide "access to information" for creditors or "solicit and receive comments" from creditors, Congress enacted the fiduciary standard of an affirmative duty to inform.

Section 1102(b)(3)(A) could be read as requiring a creditors' committee to provide access to all information provided to it by a debtor, or developed through exercise of its investigative function, regardless of whether the information is confidential, privileged, proprietary, or material non-public information and regardless of whether disseminating such information implicates securities laws disclosure requirements. *See* 17 C.F.R. §§243.100 to 243.103 (2005). Recognizing this possible interpretation, bankruptcy courts have issued orders clarifying that creditors' committees are not required to provide access to confidential or privileged information. *See, e.g., In re MMFx Canadian Holdings, Inc.*, Case No. 10-10083 (Bankr. C.D. Cal. Mar. 15, 2011) [ECF No. 169]; *In re Nine West Holdings, Inc.*, Case No. 18-10947 (Bankr. S.D.N.Y. June 5, 2018) [ECF No. 353]; *In re iHeartMedia, Inc.*, Case No. 18-31274 (Bankr. S.D. Tex. May 15, 2018) [ECF No. 728].

/ / /

The legislative history for Section 1102(b)(3) reiterates the language of Section 1102(b)(3), establishing the importance of the language used. *See* H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 87 (2005) ("Section 405(b) requires the committee to give creditors having claims of the kind represented by the committee access to information. In addition, the committee must solicit and receive comments for these creditors and, pursuant to court order, make additional reports and disclosures available to them."). As discussed *infra*, the Congressional language–the Committee "shall–provide access to information for creditors"–creates a mandatory obligation that courts should be reluctant to circumscribe.

Furthermore, Section 107(b)(1) provides that "on request of a party in interest, the bankruptcy court shall... protect an entity with respect to trade secret or confidential research, development, or commercial information." Finally, Section 105(a) empowers the Court to "issue any order... that is necessary or appropriate to carry out the provisions of this title."

Notwithstanding Sections 107(b)(1), Section 1102(b)(3) requires more of the Committee than to simply provide unsecured creditors with basic case information. After all,

> [a]n official committee of creditors plays a pivotal role in the bankruptcy process. The function of an official creditors committee is to aid, assist and monitor the debtor to ensure that the unsecured creditors' views are heard and their interests promoted and protected. In order to fulfill that role, committee members owe a fiduciary duty to their constituents–and, in the case of an official committee of unsecured creditors, its duty extends to all of the debtor's unsecured creditors.

*In re MF Global Holdings Ltd.*, 2012 Bankr. LEXIS 898, \*13 (Bankr. S.D.N.Y. March 6, 2012) (internal quotations and citations omitted) (approving more extensive information sharing protocols of a creditors' committee than those proposed by the Committee). While the Committee and its members are fiduciaries to all unsecured creditors, a fiduciary is not necessarily or always in a position to be an advocate. Here the SLF Claimants have the ability to make their own voice heard in these cases, and they are entitled to be fully informed in order to adequately protect and advance their rights.

One of the only published opinions regarding Section 1103(b)(3) (*In re Refco Inc.*, 336 B.R. 187 (Bankr. S.D.N.Y. 2006)) is relied upon by the Committee in its motion. In *Refco*, the court examined the ambiguities in Section 1102(b)(3), its legislative history, and other bankruptcy statutes,

concluding that an order setting procedures and protecting confidential, privileged, and other information, was appropriate. The *Refco* court interpreted Section 1102(b)(3)'s imperative that the committee provide information to and seek comments from its constituency in light of: (i) analogous Section 704(7), which states that "a trustee shall... unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;" (ii) Section 339(1) of the Bankruptcy Act of 1898, which listed as a function of a Chapter XI committee "to report to the creditors from time to time concerning the progress of the proceeding;" (iii) other duties and functions of creditors' committees, such as the fiduciary duty owed by committee members to their constituency to maintain the confidentiality of information in order to facilitate open communication between the committee and the debtor and among committee members; (iv) limitations on the disclosure of material non-public information imposed by the securities laws if the debtor has public stock or debt; and (v) the committee's attorney-client privilege.

Then the *Refco* court entered an order that balanced the need to protect confidential/privileged information with creditors' need for information. To effectuate what it considered a proper balance, the *Refco* court entered an order that, absent further court order, Section 1102(b)(3) did not require the committee to disclose information,

> (a) that could reasonably be determined to be confidential and non-public or proprietary, (b) the disclosure of which could reasonably be determined to result in a general waiver of the attorney-client or other applicable privilege, or (c) whose disclosure could reasonably be determined to violate an agreement, order or law, including applicable securities law.

*Refco*, 198.

But the *Refco* order required the committee to establish a website that would provide, among other things, access to the case and claims dockets and filings, "general information concerning significant parties in the cases," "monthly Committee written reports summarizing recent proceedings, events and public financial information," "highlights of significant events in the cases," press releases, a "general overview of the chapter 11 process," a "non-public forum to submit creditor questions, comments and requests for access to information," and "answers to frequently asked questions." *Refco*, 200. The committee was also required to provide "case updates" by email to

creditors requesting them, and to "[e]stablish and maintain a telephone number and electronic mail address for creditors to submit questions and comments." *Id*.

More importantly for purposes of the Motion, the *Refco* order provided that, if a creditor requests information (1) the committee shall respond "as soon as practicable" to the request, "but no more than twenty (20) days after receipt" of the request; (2) the committee shall provide reasons for any denial of information to enable the creditor to seek a court order requiring disclosure; (3) the committee shall consider the willingness of a requesting creditor to enter into a confidentiality agreement or trading restrictions in determining whether to provide the information; (4) the creditor could request that the committee provide a log or other index of any information specifically responsive to the request that the committee deems confidential or privileged; and (5) the creditor could request that the court conduct an *in camera* review of any withheld information ("*Refco* Provisions"). *Id*. at 200–01.

## B. The Committee's Proposed Order Omits the *Refco* Information Sharing Protocols.

The Committee's Proposed Order omits all of the access-to-information protocols set forth in the *Refco* Provisions. These protocols should be added to the Court's order. Without them, the order proposed by the Committee would eviscerate the congressional intent of Section 1102(b)(3). The only information which the Committee would be required to share with its constituents would be the same information available to all members of the public – the docket for the cases and an informational website maintained by PG&E. While that information may be useful for a creditor who may not be represented by counsel or for counsel who is unfamiliar with rudimentary concepts of bankruptcy procedure and jurisprudence, it provides little added value to the large group of SLF Claimants who want and intend to be active in the PG&E cases.

And without the *Refco* Provisions, the Committee will be an unchecked gatekeeper of information. It will be impossible to know what, if any, information will flow freely, and the SLF Claimants cannot be assured that their counsel will be fully informed. The SLF Claimants should not be left at the mercy of the Committee and PG&E to respond at their whim to information requests. These cases have moved, and will continue to move, at a vigorous pace. Any disconnect in receiving information or a response to an information request, for even a short period of time, could have

serious consequences.

In fact, the important information sharing protocols missing in the Proposed Order have been made part of other courts' Section 1102(b)(3) orders as well. *MF Global*, 2012 Bankr. LEXIS 898 is one such case. In *MF Global*, a Southern District of New York bankruptcy court considered objections to a stipulation between a Statutory Creditors' Committee and a Chapter 11 Trustee through which the committee sought a means to comply with its obligations under Section 1102(b)(3) and protect the debtors' confidential, privileged, or proprietary information. The terms of the stipulation approved the by *MF Global* court included the *Refco* Provisions. By approving the stipulation, the court found that the committee's constituency would not be materially deprived of information, and the stipulation properly limited disclosure only of confidential and privileged information. The court observed that the provisions in the stipulation are now considered commonplace in large cases and that the court had granted similar relief in past cases, citing *In re Mesa Air Grp.,* No. 10-10018, 2010 Bankr. LEXIS 4862 (Bankr. S.D.N.Y. Feb. 25, 2010) [ECF No. 365] and *In re Metaldyne Corp.*, No. 09-13412 (Bankr. S.D.N.Y. July 20, 2009) [ECF No. 459]. *MF Global*, *15.

Moreover, the Committee itself cites to a number of cases wherein courts have entered orders containing the *Refco* Provisions. *See, e.g., In re HDOS Enters.*, Case No. 14-12028 (Bankr. C.D. Cal. Mar. 18, 2014) [ECF No. 194] (order contains all *Refco* Provisions); *In re MMFx Canadian Holdings, Inc.*, Case No. 10-10083 (Bankr. C.D. Cal. Mar. 15, 2011) [ECF No. 169 and 241] (order contains all *Refco* Provisions); *In re Alpha Natural Resources, Inc.,* Case No. 15-33896 (Bankr. E.D. Va. Oct. 16, 2015) [ECF No. 690] (order contains all *Refco* Provisions, except it shortens the time in which the committee must respond to information requests to 14 days); *In re Patriot Coal Corp.*, Case No. 15-32450-KLP (Bankr. E.D. Va. July 29, 2015) [ECF No. 678] (order contains all *Refco* Provisions, except it shortens the time in which the committee must respond to information requests to 14 days); *In re QSL of Medina, Inc.*, Case No. 15-52722 (Bankr. N.D. Ohio January 8, 2016) [ECF No. 144] (order contains all *Refco* Provisions, except it shortens the time in which the committee must respond to information requests to four business days and does not mention a requesting creditor's right to request a log of information not produced); *In re Nine West Holdings, Inc.*, Case No. 18-10947

403446-v2

17

Case: 19-30088    Doc# 1523    Filed: 04/17/19    Entered: 04/17/19 15:49:38    Page 17 of 20

(Bankr. S.D.N.Y. June 5, 2018) [ECF No. 353] (order contains all *Refco* Provisions, except it lengthens the time in which the committee must respond to information requests to 30 days and does not require the committee to consider the willingness of a requesting creditor to enter into a confidentiality agreement); *In re iHeartMedia, Inc.*, Case No. 18-31274 (Bankr. S.D. Tex. May 15, 2018) [ECF No. 728] (order contains all *Refco* Provisions, except it lengthens the time in which the committee must respond to information requests to 30 days and does not require the committee to consider the willingness of a requesting creditor to enter into a confidentiality agreement).

The SLF Claimants submit that the *Refco* Provisions are particularly appropriate given the <u>enormous scope</u> of these cases. In another case cited by the Committee (*In re S&B Surgery Center, Inc.,* 421 B.R. 546 (Bankr. C.D. Cal. 2009)), a Central District of California Bankruptcy Court entered an order merely requiring the committee to maintain a website with general nonconfidential case information to satisfy its Section 1102(b)(3) duties. The *S&B Surgery* case was "relatively small, in comparison to *Refco*," and more properly characterized as a medium sized case "with more than 220 unsecured creditors and over $36 million in unsecured claims." *S&B Surgery*, 550. However as explained in the treatise *Collier on Bankruptcy*, "[i]n a smaller case, the committee's obligation to provide access will necessarily be more modest [than in *Refco*]." 7 Collier on Bankruptcy P 1102.08 (16th 2019). "In determining how to fulfill its duties, the committee will need to balance the cost of undertaking formal procedures against the benefit to creditors from so doing." 7 *Collier on Bankruptcy* ¶ 1102.08 (16th 2019). The PG&E cases are similar to, but even larger than, the *Refco* case, in that they are "large and rapidly moving case[s], and meaningful information may become stale before the completion of litigation over whether and how it should be provided." *Refco*, 190. As such, the protocols in *Refco*, which are designed to streamline information requests and balance the fiduciary duties of committee members with the need to protect confidential and privileged information, should be included in any order granting the Committee's Motion.

C.  **The Definition of "Confidential Information" Should Be Modified.**

As explained above, the larger and more significant the case, the greater the duty a creditors' committee has to provide information, and the more robust a disclosure process required. *S&B Surgery*, *supra* at 550. Given the magnitude of the PG&E cases and the fact that PG&E is a public

entity in a highly regulated industry, with tens of thousands of creditors and millions of customers who depend on PG&E for gas and electricity, a substantially greater amount of its information should not be designated as "confidential."

In this situation, creditors should receive <u>greater</u> access to information–<u>not lesser</u> access.

As noted in *Refco* and *S&B Surgery*, creditors who are <u>not</u> members of the committee generally should not be provided access to information protected by the attorney-client privilege and counsel's duties of confidentiality. *See Refco*, supra at 200; *S&B Surgery*, supra at 549. But here, the Committee seeks to conceal substantially more than such attorney client and work product information–it seeks to conceal all documents and information that are not already on the public docket.

That clearly is not what Congress contemplated when it enacted Section 1102(b)(3)–otherwise there would be no need for the statute. By definition, public information is already available to creditors. Here the statute is particularly clear that the Committee "shall–provide access to information for creditors." It would take an extraordinarily tortured interpretation of the statute to limit that information to information creditors already had. The attempt to limit access to only information PG&E chooses not to mark as confidential is refuted by the obligation inherent in the statute: "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016). *See also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U. S. 26, 35 (1998) (recognizing that "shall" is "mandatory" and "normally creates an obligation impervious to judicial discretion"). An obligation to provide information is mandated; it cannot be reasonably limited to information already available.

In that regard, to ensure that only truly confidential information is withheld from creditors by the Committee, the term "Confidential Information" needs a more detailed, specific definition than the one posed by the Committee in the Proposed Order, and one that does not necessarily include whatever information PG&E marks as confidential. The definition proposed by the SLF Claimants–at II(D)(1) above–is substantially similar to the definitions for "Confidential Information" contained in many of the orders cited by the Committee in its Motion. *See e.g.*, *QSL of Medina, supra*.

While the SLF Claimants assert that paragraph 6 of the Proposed Order –"Any documents, information or other materials designated by the Debtors as confidential shall be treated as 'Confidential Information' for purposes of this Order; *provided*, however, that nothing in this Order affects or shall be deemed to affect the Committee's ability to dispute any Debtor's designation of information as 'Confidential Information.'" – should be stricken, if the Court is inclined to include in the definition for "Confidential Information" any documents, information or other materials designated by PG&E as confidential, then the SLF Claimants request that the Court change paragraph 6 of the Proposed Order to read as follows: "Any documents, information or other materials designated by the Debtors as confidential shall be treated as 'Confidential Information' for purposes of this Order; *provided*, however, that nothing in this Order affects or shall be deemed to affect the Committee's, fire tort claimants' (and particularly the SLF Claimants), and other unsecured creditors' ability to dispute any Debtor's designation of information as 'Confidential Information.'"

### IV. CONCLUSION

Based on the foregoing, the SLF Claimants respectfully request that the Court incorporate the Modifications to the Proposed Order raised in this Objection, and grant such further relief as the Court deems proper.

Respectfully submitted,

Dated: April 17, 2019         SINGLETON LAW FIRM, APC

By: /s/ Gerald Singleton
Gerald Singleton
Amanda W. LoCurto

Dated: April 17, 2019         SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

By:   */s/ Christopher V. Hawkins*
James P. Hill
Christopher V. Hawkins

Attorneys for the Singleton Law Firm Fire Victim Claimants