Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone:  (424) 386-4000
Facsimile:  (213) 629-5063

*Proposed Counsel for the Official Committee of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐  Affects PG&E Corporation<br>☐  Affects Pacific Gas and Electric Company<br>☑  Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AUTHORITY TO RETAIN AND EMPLOY AXIOM ADVISORS AS GOVERNMENT AFFAIRS CONSULTANT, EFFECTIVE AS OF MARCH 15, 2019**<br><br>Date:  May 8, 2019<br>Time:  9:30 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court,<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue,<br>San Francisco, CA 94102 |

The Official Committee of Unsecured Creditors (the "Committee") appointed in the jointly administered chapter 11 cases (the "Chapter 11 Cases") of PG&E Corporation ("PG&E Corp.") and Pacific Gas and Electric Company (the "Utility" and, together with PG&E Corp., the "Debtors") hereby submits this retention application (the "Application") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Committee to retain and employ Axiom Advisors ("Axiom") to serve as its government affairs consultant pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Application, the Committee submits the declaration of Cassie Gilson, a partner at Axiom (the "Gilson Declaration"), which is being filed concurrently herewith and is incorporated herein by reference. In further support of the Application, the Committee respectfully states as follows:

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Local Bankruptcy Rules"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 328(a) and 1103(a) of the Bankruptcy Code.

## II. BACKGROUND

### A. Chapter 11 Cases

On January 29, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On January 31, 2019, the Court ordered the joint administration of the Chapter 11 Cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b). The Debtors continue to operate their businesses and manage their properties as debtors in

possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.

On February 12, 2019, pursuant to Bankruptcy Code section 1102(a)(1), the United States Trustee for the Northern District of California (the "U.S. Trustee") appointed the Committee. The Committee currently consists of: (i) BOKF, N.A., as indenture trustee under unsecured bond indentures; (ii) The Davey Tree Expert Company, Davey Tree Surgery Company, and DRG, Inc.; (iii) Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as indenture trustee; (iv) G4S Secure Solutions (USA) Inc. and G4S Secure Integration LLC; (v) International Brotherhood of Electrical Workers, Local 1245; (vi) Mizuho Bank, Ltd.; (vii) NextEra Energy, Inc.; (viii) Pension Benefit Guaranty Corporation; and (ix) Roebbelen Contracting, Inc. On March 15, 2019, the Committee selected Axiom to serve as government affairs consultant to the Committee. On or around March 15, 2019, the Committee and Axiom executed that certain Axiom Advisors Engagement Letter (the "Engagement Letter"), which is attached to the Gilson Declaration as **Exhibit C**.

B. **Factors Leading to Chapter 11 Filing**

The Debtors are a privately owned, public utility subject to the regulatory oversight and jurisdiction of various agencies at the federal, state and local levels.[1] Regulatory oversight directly and materially impacts the Debtors' business in a variety of ways, such as by the setting of service rates for cost recovery and requirements for public safety programs, among others. Within this public-private operational environment, the 2017 and 2018 Northern California wildfires and the Debtors' potential liabilities arising therefrom compelled the Debtors to commence these Chapter 11 Cases. The Debtors have estimated that their potential liability with respect to the wildfires would exceed $30 billion, without taking into account potential punitive damages, fines and penalties or damages for future claims.

---

[1] General background information regarding the Debtors' business and the events leading to the Chapter 11 Cases is summarized here based on the information provided in the *Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Docket No. 28] ("First Day Declaration").

According to the Debtors, the principal objectives of the Chapter 11 Cases are: (1) to establish a process for the Debtors to fully address and resolve their liabilities resulting from the 2017 and 2018 wildfires; (2) to restore the Debtors' financial stability and assure that the Debtors have access to the capital and resources necessary to sustain and support their ongoing operations and invest in their systems infrastructure and safety and wildfire prevention initiatives; (3) to work with California state regulators and policy makers to: (a) address safety, and operational and structural reforms; (b) determine the most effective way for the Debtors to provide safe and reliable electric and natural gas service to its customers and communities for the long term; and (c) address the significant increase in wildfire risk in an environment that continues to be challenged by climate change and its ongoing future impact on California, including on the Debtors and their operations; and (4) to enable the Debtors to continue their rebuilding efforts to assist the communities affected by the 2017 and 2018 Northern California wildfires.  Thus, the Debtors' ability to emerge from the chapter 11 cases necessarily will involve the exploration of a wide range of important legislative and regulatory interactions.

### C. Regulatory Oversight

The Utility operates in a heavily regulated industry under the jurisdiction of various agencies at the federal, state, and local levels, including the California Public Utilities Commission (the "CPUC"), the Federal Energy Regulatory Commission ("FERC"), and the Nuclear Regulatory Commission (the "NRC").  As the holding company for the Utility, PG&E Corp. is a "public utility holding company" as defined in the Public Utility Holding Company Act of 2005 and is subject to regulatory oversight by FERC.  Chief among the Debtors' regulators is the CPUC, which is tasked with ensuring that: (i) California has a reliable energy supply; (ii) the Utility operates safely; (iii) rate payers do not unfairly bear the burden of costs relative to shareholders and creditors; and (iv) the Utility complies with renewable and other policy initiatives.

The Utility's rates for electric and natural gas services are set at levels intended to allow the Utility to recover its costs of providing service while having the opportunity to earn a return on invested capital.  Before setting rates, CPUC and FERC conduct proceedings to determine the amount that the Utility will be authorized to collect from its customers.  The Utility's revenue requirements

consist primarily of a base amount set to enable the Utility to recover its reasonable operating and capital costs. As described in greater detail below, Senate Bill 901 ("SB 901") permits CPUC to take into account the cost of wildfires that occurred in 2017 and after December 31, 2018 in its rate setting process. However, as enacted, SB 901 does not cover the wildfires that occurred in 2018. Moreover, the CPUC has not always permitted the Debtors to pass all costs on to its consumers.

Bankruptcy Code section 1129(a)(6) preserves the role of CPUC as the regulatory ratemaker. To the extent consumer costs must increase as part of any solution, or costs get passed on to consumers, CPUC approval is necessary. Additionally, to the extent there is any change of ownership or asset sales in connection with the Chapter 11 Cases, FERC, CPUC and other approvals may be necessary.

### D. Legislative Matters

According to California's doctrine of inverse condemnation, the Debtors may be strictly liable for any damage incurred as a result of fires started by their equipment, even if the Debtors were not negligent. As a result, a plaintiff might recover the entire amount of his or her damages from one defendant so long as the plaintiff can prove that the defendant "proximately" caused the damage. A California state court recently held that inverse condemnation applies to the damages resulting from the 2017 Butte Fire. Similarly, California state courts have applied inverse condemnation to damages arising out of the 2017 North Bay Fire. Although certain lawmakers have proposed different standards for determining liability associated with wildfires, SB 901 and other pending bills do not seek to repeal the inverse condemnation law.

Senate Bill 901 ("SB 901") was enacted by the California state legislature to address a portion of the liabilities PG&E faced in connection with the 2017 Northern California wildfires. However, SB 901 does not address wildfires occurring in 2018. Any such relief will not be available to the Debtors absent further legislation. SB 901 also established The Commission on Catastrophic Wildfire Cost and Recovery (the "Wildfire Commission"), a government body within the Governor's Officer of Planning and Research that is tasked with recommending changes to California law aimed at the equitable distribution of wildfire costs among affected parties.

### E. Renewable Energy Requirements

California has passed renewable energy requirements that impact the Debtors and will likely increase the cost of their operations. For example, California SB 350, the Clean Energy and Pollution Reduction Act of 2015, became effective on January 1, 2016, and established a Renewable Portfolio Standard ("RPS"), requiring load-serving entities, such as the Utility, to gradually increase the amount of renewable energy delivered to customers from 33% of their total annual retail sales by the end of the 2017-2020 compliance period, to 50% of their total annual retail sales by the end of the 2028-2030 compliance period. Similarly, The Global Warming Solutions Act of 2006 requires utilities to reduce greenhouse gas emissions to 1990 levels by 2010.

## III. APPLICATION

### A. Axiom's Qualifications

Axiom is a full-service government affairs firm dedicated to providing strategic consulting, lobbying and advocacy, public affairs and targeted communications, and regulatory counsel to clients in Sacramento and throughout California. Axiom has nine full-time staff operating out of three offices, with six full-time staff located in Sacramento.

Axiom regularly appears before nearly every policy committee in the Capitol, and a wide variety of regulatory agencies in Sacramento and across the state, and works closely with legislative leaders, the Governor's Administration, rank-and-file members in the California Senate and Assembly, and high-ranking members of virtually every department, agency, commission, and board in California's government. In addition, Axiom's professionals have decades of successful outcomes before key regulatory bodies such as the California Public Utilities Commission, the California Coastal Commission, the State Lands Commission, the California Energy Commission, the California Air Resources Board and the State Water Board.

### B. Services to be Provided by Axiom

Axiom will provide issues monitoring, consultation, strategic and communication advice and advocacy representation with respect to political, administrative, regulatory, governmental affairs, legislative and similar issues that may arise in connection with the Chapter 11 Cases that the Committee believes will assist in the performance of its duties or otherwise impact unsecured

creditors of the Debtors. Given the heavy regulatory and legislative overlay on the Debtors' ability to reorganize and exit bankruptcy, the Committee believes it will require Axiom's services to enable it to satisfy its fiduciary duties to protect the interests of unsecured creditors in this challenging environment.

### C. No Duplication of Services

In addition to this Application, the Committee has filed applications to employ: (i) Milbank LLP, as counsel; (ii) FTI Consulting Inc., as financial advisor; (iii) Centerview Partners LLC, as investment banker; and (iv) Epiq Corporate Restructuring, LLC, as information and noticing agent. The Committee may also file applications to employ additional professionals in the future. Rather than overlap, it is anticipated that the efficient coordination of efforts between Axiom and such other professionals will complement one another and greatly add to the effective and efficient administrative administration of these Chapter 11 Cases. Axiom will coordinate with the other professionals retained in these Chapter 11 Cases to ensure a clear delineation of each firm's respective role in connection with representation of the Committee to prevent duplication of services and ensure that the cases are administered in the most efficient fashion possible.

### D. Axiom's Disinterestedness

The Committee understands that Axiom has performed a review with respect to all persons identified on the Debtors' list of potential parties in interest (the "Debtors' Interested Party List"), which is summarized on Exhibit 1 (the "Retention Checklist") to the *Declaration of Stephen Karotkin in Support of Application of Debtors Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for the Debtors Effective as of the Petition Date* [Docket No. 865]. According to Axiom, except as disclosed herein or in the Gilson Declaration, Axiom: (i) has no connections to the Debtors, their creditors, or other parties in interest, and (ii) during the term of its engagement will not represent any other entity having an adverse interest in connection with the Debtors' cases. To the best of the Committee's

knowledge, Axiom is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

Given the large number of parties in interest in these Chapter 11 Cases, and despite the efforts to identify and disclose Axiom's relationships with such parties in interest, Axiom is unable to state with certainty that every client relationship or other connection has been disclosed in the Gilson Declaration. To the extent that any new material facts or relationships bearing on the matters described herein during the period of Axiom's retention are discovered or arise, Axiom will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

The Committee has been informed that Axiom will not share any compensation received in connection with services rendered in accordance with this Application with any other person, other than principals and employees of Axiom.

### E. Effective Date of Retention

The Committee requests that Axiom's retention be approved effective as of March 15, 2019, the date Axiom was selected to serve as counsel to the Committee and began substantive work on the Committee's behalf. The Committee believes that Axiom's retention effective as of this date is appropriate in light of the Committee's immediate need for consulting services in connection with the regulatory and legislative matters at play in the Chapter 11 Cases.

### F. Proposed Compensation

Axiom intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "<u>Revised UST Guidelines</u>"), United States Bankruptcy Court Northern District of California *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees* (the "<u>Guidelines for Compensation</u>"), *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (the "<u>Interim Compensation Order</u>") [Docket No. 427], and any additional orders and procedures that may be or have already been established by the Court.

Subject to the Court's approval, Axiom's proposed compensation for the consulting services described herein is a flat fee of $25,000 per month plus reimbursement of actual expenses, as set forth more fully in the Gilson Declaration and the Engagement Letter. Axiom will maintain detailed records of the actual expenses it incurs in connection with rendering legal services to the Committee and for which it will seek reimbursement in accordance with the Local Bankruptcy Rules, the Interim Compensation Order and any other applicable orders or procedures of this Court.

Prior to the selection of Axiom, the Committee conducted a competitive bidding process, and the Committee respectfully submits that Axiom's rates are competitive and comparable to the rates charged by its competitors for similar services. The Committee believes employing Axiom on the terms set forth herein is necessary, in the best interests of the creditors and the Debtors' estates and will enable the Committee to carry out its duties owed to creditors under the Bankruptcy Code.

## IV. RELIEF REQUESTED

By this Application, the Committee respectfully requests entry of an order authorizing the employment and retention of Axiom as consultant to the Committee effective as of March 15, 2019, pursuant to section 328(a) and 1103(a) of the Bankruptcy Code and Bankruptcy Rules 2014, 2016 and 5002.

## V. BASIS FOR RELIEF REQUESTED

Pursuant to section 1103(a) of the Bankruptcy Code, a creditors' committee "may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." 11 U.S.C. § 1103(a). Bankruptcy Code section 328(a) provides that professionals employed pursuant to section 1103 may be employed "on any reasonably terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingency fee basis." 11 U.S.C. § 328(a). The Committee proposes to engage Axiom under sections 1103(a) and 328(a) to provide services to the Committee that will assist it in exercising its powers and duties under Bankruptcy Code section 1103(c). Pursuant to Section 1103(b)(3), a committee appointed under section 1102 may:

> (1) consult with the trustee or debtor in possession concerning the administration of the case;

>(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
>
>(3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;
>
>(4) request the appointment of a trustee or examiner under section 1104 of this title; and
>
>(5) perform such other services as are in the interest of those represented.

11 U.S.C. § 1103(c).

In chapter 11 cases involving debtors that operate in highly regulated industries, official creditor committees often hire consultants to provide specialized advice on issues arising in connection with the debtor's bankruptcy case.[2] *See In re Energy Future Holdings Corp., et al.*, Case No. 14-10979, Docket No. 3049 (Bankr. D. Del., December 17, 2014) (granting committee's application to employ natural gas and energy consultants); *In re Exide Technologies*, Case No. 13-11482, Docket No. 1248 (Bankr. D. Del. January 17, 2014) (granting committee's application to employ environmental consultants); *In re A123 Systems, Inc., et al.*, Case No. 12-12859, Docket No. 817 (Bankr. D. Del. January 11, 2013) (granting committee's application to have its counsel employ lobbyist to provide political and policy intelligence gathering and analysis, and strategic guidance and tactical implementation regarding legislative and political matters); *In re Mirant Corp., et al.*, Case No. 03-46590, Docket No. 4732 (Bankr. N.D. Tex. July 23, 2004) (granting committee's application to employ energy industry consultants). Given the power of the regulatory agencies and policy makers in these Chapter 11 Cases and the impact of their actions on the Debtors' ability to

---

[2] In *In re Dow Corning Corp.*, 142 F.3d 433 (6th Cir. 1998), the court affirmed a bankruptcy court decision finding that the official committee of unsecured creditors could not hire a lobbyist to influence legislation that might have a detrimental effect on the claims of its constituency by limiting the debtor's liability thereunder. Here, unlike in *Dow Corning*, regulatory oversight and legislative decision making are central to the Debtors' operations and their ability to formulate a plan of reorganization.

successfully reorganize, the Committee likewise requires the assistance of a government affairs consultant that will enable it to navigate the unique legislative and regulatory landscape in which the Debtors are operating.

From the outset of these Chapter 11 Cases, it has been readily apparent that any solution to the issues facing the Debtors will require political and regulatory engagement. The Debtors have repeatedly emphasized this point in widely publicized statements such as the following:

- The prompt establishment of the customer harm threshold is a key element of the Chapter 11 plan process and of any successful reorganization of PG&E. Until the Commission determines the threshold, customers, suppliers, wildfire claimants, and other stakeholders will be harmed by the delay imposed on the reorganization process. Expeditious resolution of the Chapter 11 reorganization process, which depends on expeditious Commission action to determine the customer harm threshold, is in the public interest.

  …

  PG&E urges the Commission to continue working collaboratively with the Legislature to reform the flawed legal doctrine of inverse condemnation liability for wildfires and to pursue other legal and policy changes that will mitigate utilities' financial exposure to future wildfires – particularly in cases in which the financial exposure arises from the strict liability standard. Absent such comprehensive reform, the financial viability of all California electric utilities will continue to be threatened, which will undermine their ability to provide safe and reliable service, and render inadequate any changes resulting from this proceeding, however meritorious such changes may be.[3]

- Since the 2018 Camp Fire and in view of PG&E's potential liabilities relating to the Camp Fire, PG&E has been in regular contact with representatives of the Governor's office and the relevant regulatory agencies, including the staff of the [CPUC], and has apprised those parties as to PG&E's financial condition and its projected liquidity profile.[4]

---

[3] *PG&E, Opening Comments of Pacific Gas and Electric Company on Order Instituting Rulemaking, R. 19-01-006, February 11, 2019,*
http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M266/K858/266858935.PDF

[4] First Day Declaration, p. 5.

Likewise, California Governor Gavin Newsom has expressed his intentions to change the regulatory scheme to address the issues currently facing the Debtors:

- My administration will work to make sure PG&E upholds its obligations. I have convened a team of the nation's best bankruptcy lawyers and financial experts from the energy sector. They will work with my strike team to develop a comprehensive strategy that we will present within 60 days. We will ensure continued access to safe affordable power. We will seek justice for fire victims, fairness for employees, and protection for ratepayers.[5]

- We need to address the fact that electricity procurement in this state has radically changed...I think the regulatory structure needs to change and governance needs to change. So we're reviewing what that means.[6]

- On March 22, 2019, Governor Newsom signed a proclamation declaring a state of emergency to relax state procurement rules and environmental regulations, allowing for more tree-cutting as a wildfire-prevention measure.[7]

The CPUC has made various proposals to change the Debtors' corporate structure and business operations:

- The set of proposals includes 2 examples such as: should some or all of the existing PG&E and PG&E Corp. Board of Directors be replaced by Directors with a stronger background and focus on safety; should PG&E retain new corporate management; should the CPUC condition PG&E's return on equity on safety performance; should PG&E's natural gas and electric distribution and transmission divisions be split into separate companies controlled by a holding company; should PG&E's corporate structure be reorganized with regional subsidiaries based on regional distinctions; should the CPUC revoke holding company authorization so PG&E is exclusively a regulated utility; should some or all of PG&E be reconstituted as a publicly owned utility or utilities.[8]

---

[5] Gov. Gavin Newsom, State of the State Address, February 12, 2019. https://www.gov.ca.gov/2019/02/12/state-of-the-state-address/

[6] "California wants to reform PG&E, but just how is uncertain", San Francisco Chronicle, March 11, 2019, https://www.sfchronicle.com/business/article/California-wants-to-reform-PG-E-but-just-how-is-13677464.php).

[7] https://www.gov.ca.gov/2019/03/22/governor-newsom-proclaims-state-of-emergency-on-wildfires-to-protect-states-most-vulnerable-communities/

[8] http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M252/K798/252798213.PDF

Finally, legislators have taken action during the course of the Chapter 11 Cases to propose legislation that directly impacts the Debtors' operations:

- On February 22, 2019, California Senator Jerry Hill (D-San Mateo) introduced Senate Bill 549 (SB 549), which provides that "[t]he [CPUC] shall not approve any capital structure change or increase in rates for the Pacific Gas and Electric Company unless the Legislature, by statute, authorizes the capital structure change or increase in rates.[9]

In light of the Debtors' potential liability for the 2017 and 2018 wildfires and the legislative and regulatory decisions which may impact the administration of the Debtors' estate and the formulation of a plan of reorganization, the Committee believes it is necessary and appropriate to employ a consultant in these cases to provide it with independent advice regarding the legislative and regulatory issues facing the Debtors. The legislative and regulatory actions will impact the scope of the Debtors' potential liability and its ability to generate revenue going forward, which will in turn directly impact recoveries to general unsecured creditors. As such, it is critical that the Committee have an independent consultant to advise the Committee and interface with policy makers. Axiom will assist the Committee in assessing the Debtors' response to regulatory proceedings and pursuing legislation that will benefit the estate. Through the services to be provided by Axiom, the Committee will be better positioned to ensure that the interests of the estates are adequately represented in the California state legislature, and that the ability to confirm and implement a successful plan of reorganization is preserved.

## VI. NOTICE

Notice of this Motion will be provided to (i) the Debtors; (ii) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (iii) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern

---

[9] *http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201920200SB549*

District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facilities; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Committee respectfully submits that no further notice is required.

No previous request for the relief sought herein has been made by the Committee to this or any other court.

WHEREFORE, the Committee respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: April 17, 2019

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PG&E CORPORATION AND PACIFIC GAS AND ELECTRIC COMPANY**

By: /s/ Ericka Schoenberger
Davey Tree Expert Company, Davey Tree Surgery Company, and DRG, Inc.

By: /s/ George Kubin
BOKF, N.A.

*Co-Chairs of the Committee*

**Exhibit A**

**Proposed Order**

4828-0937-4860v10

Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Proposed Counsel for the Official Committee of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>    -and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>              **Debtors.** | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered) |
| ☐  Affects PG&E Corporation<br>☐  Affects Pacific Gas and Electric Company<br>■  Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case. No. 19-30088 (DM)* | **[PROPOSED] ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF AXIOM ADVISORS AS GOVERNMENT AFFAIRS CONSULTANT, EFFECTIVE AS OF MARCH 15, 2019**<br><br>Date: May 8, 2019<br>Time: 9:30 AM Pacific Time<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

Upon the application (the "<u>Application</u>")[1] of the Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the above-captioned chapter 11 cases for entry of an order (this "<u>Order</u>") authorizing the Committee to retain and employ Axiom Advisors ("<u>Axiom</u>") as advisors to the Committee, effective as of March 15, 2019; and the Court having reviewed the Application and the accompanying Declarations of Cassie Gilson (the "<u>Gilson Declaration</u>"); and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and the Court having found that: (i) good and sufficient cause exists for granting the Application; (ii) Axiom does not represent any entity having an adverse interest in connection with these chapter 11 cases; (iii) Axiom is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and (iv) Axiom's monthly fees as set forth in the Gilson Declaration are reasonable; and any objections to the relief requested by the Application having been overruled or withdrawn; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Application is granted as set forth herein.

2. The Committee is authorized to retain and employ Axiom as advisors, effective as of March 15, 2019, on the terms set forth in the Engagement Letter.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

3. Axiom shall use its reasonable best efforts to avoid any duplication of the services to be provided by any of the Committee's other retained professionals.

4. Except to the extent set forth herein, the Engagement Letter is approved pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code. Axiom shall file monthly, interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders or procedures of this Court, and the Fee Guidelines; provided that Axiom shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code, and Axiom's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code, except that the U.S. Trustee shall have review for reasonableness pursuant to section 330 of the Bankruptcy Code. Subject to compliance with the foregoing, and subject to approval by the Court, the Debtors shall pay Axiom's fees and reimburse Axiom for its reasonable and necessary costs and expenses as provided in the Engagement Letter. For the avoidance of doubt, under no circumstances shall any of the compensation or expense reimbursement obligations approved by the Court be an obligation of, or paid by, the Committee or any of its members.

5. Notwithstanding anything to the contrary herein, the requirements of the Interim Compensation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other orders or procedures of this Court, to the extent applicable, are hereby modified such that Axiom's professionals shall not be required to maintain summary records.

6. The Committee and Axiom are authorized to take all actions each of them deems necessary and appropriate to effectuate the relief granted in this Order.

7. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8. In the event of any inconsistency between the Engagement Letter, the Application, and this Order, this Order shall govern.

9. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the interpretation, implementation, or enforcement of this Order.

** END OF ORDER **