1  Dennis F. Dunne (admitted *pro hac vice*)
   Samuel A. Khalil (admitted *pro hac vice*)
2  MILBANK LLP
   55 Hudson Yards
3  New York, New York 10001-2163
   Telephone: (212) 530-5000
4  Facsimile: (212) 530-5219

5  *and*

6  Gregory A. Bray (SBN 115367)
   Thomas R. Kreller (SBN 161922)
7  MILBANK LLP
   2029 Century Park East, 33rd Floor
8  Los Angeles, CA 90067
   Telephone: (424) 386-4000
9  Facsimile: (213) 629-5063

10 *Proposed Counsel for the Official Committee*
   *of Unsecured Creditors*
11

12              UNITED STATES BANKRUPTCY COURT
13              NORTHERN DISTRICT OF CALIFORNIA
                   SAN FRANCISCO DIVISION
14

15 **In re:**                        Case No. 19-30088 (DM)

16 **PG&E CORPORATION**              Chapter 11

17     **-and-**                      (Lead Case)

18 **PACIFIC GAS AND ELECTRIC**      (Jointly Administered)
19 **COMPANY,**

20                    **Debtors.**

21  ☐  Affects PG&E Corporation      **DECLARATION OF CASSIE GILSON IN**
                                      **SUPPORT OF APPLICATION OF THE**
22  ☐  Affects Pacific Gas and Electric Company  **OFFICIAL COMMITTEE OF UNSECURED**
                                      **CREDITORS FOR AUTHORITY TO RETAIN**
    ■  Affects both Debtors          **AND EMPLOY AXIOM ADVISORS AS**
23                                    **GOVERNMENT AFFAIRS CONSULTANT,**
    *All papers shall be filed in the Lead Case.*  **EFFECTIVE AS OF MARCH 15, 2019**
24  *No. 19-30088 (DM)*
                                      Date:  May 8, 2019
25                                    Time: 9:30 a.m. (Pacific Time)
                                      Place: United States Bankruptcy Court
26                                            Courtroom 17, 16th Floor
                                              San Francisco, CA 94102
27

28

1    I, Cassie Gilson, being duly sworn, state the following under the penalty of perjury:

2    1.    I am a principal of Axiom Advisors ("Axiom"), which has its principal office at

3    1201 K Street, Suite 920, Sacramento, CA 95814. I am duly authorized to make this declaration

4    (the "Declaration") on behalf of Axiom. Unless otherwise indicated herein, the statements in this

5    Declaration are based on my personal knowledge, my discussions with other employees of Axiom,

6    my discussions with other advisors to the Official Committee of Unsecured Creditors (the

7    "Committee") of the above-captioned debtors in possession (collectively, the "Debtors") in these

8    chapter 11 cases (the "Chapter 11 Cases"), my review of relevant documents and/or my opinion

9    based upon my experience.

10    2.    This Declaration is being submitted in connection with the proposed retention of

11    Axiom as government affairs consultant to the Committee in these Chapter 11 Cases to perform

12    services as set forth in the *Application of the Official Committee of Unsecured Creditors Pursuant*

13    *to 11 U.S.C. §§ 328(a) and 1103(a) and Fed. R. Bank. R. 2014 and 2016 for Authority to Retain*

14    *and Employ Axiom Advisors as Government Affairs Consultant, Effective as of March 15, 2019*

15    (the "Application"). The Committee's retention of Axiom is governed by an engagement letter,

16    dated as of March 15, 2019 (the "Engagement Letter"), a copy of which is attached to the

17    Application as **Exhibit C**.[1]

18    3.    I am familiar with the matters set forth herein and, if called as a witness, I would

19    testify thereto.

20                                    **Axiom's Qualifications**

21    4.    I believe that Axiom and the professionals it employs are uniquely qualified to

22    advise the Committee in the matters for which Axiom is proposed to be employed.

23    5.    Axiom is a full-service government affairs firm dedicated to providing strategic

24    consulting, lobbying and advocacy, public affairs and targeted communications, and regulatory

25    counsel to our clients in Sacramento and throughout California. Axiom has nine full-time staff

26    operating out of three offices, with six full-time staff located in Sacramento.

27

28    [1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the
             Application or the Engagement Letter, as applicable.

                                                    2

1    6.    Axiom regularly appears before nearly every policy committee in the Capitol, and
2   a wide variety of regulatory agencies in Sacramento and across the state, and works closely with
3   legislative leaders, the Governor's Administration, rank-and-file members in the California Senate
4   and Assembly, and high-ranking members of virtually every department, agency, commission, and
5   board in California's government.  In addition, Axiom's professionals have decades of successful
6   outcomes before key regulatory bodies such as the California Public Utilities Commission, the
7   California Coastal Commission, the State Lands Commission, the California Energy Commission,
8   the California Air Resources Board and the State Water Board.

9                              **Scope of Axiom's Proposed Services**

10    7.    The terms and conditions of the Engagement Letter were the result of arm's length
11  discussions and negotiations between Axiom and the Committee.  Subject to further order of the
12  Court, and consistent with the Engagement Letter, Axiom will provide issues monitoring,
13  consultation, strategic and communication advice and advocacy representation with respect to
14  political, administrative, regulatory, governmental affairs, legislative and similar issues that may
15  arise in connection with the Chapter 11 Cases that the Committee believes will assist in the
16  performance of its duties or otherwise impact unsecured creditors of the Debtors.

17    8.    As discussed further below, Axiom represents Clearway Energy ("Clearway") with
18  respect to certain power purchase agreement issues.  Axiom and the Committee have agreed that,
19  if, during the duration of the engagement, counsel to the Committee determines that a conflict has
20  or may arise between the Committee and Clearway solely with respect to PPA issues, then Axiom
21  will subcontract all Committee work on the PPA Issues to an individual and/or firm of the
22  Committee's choice.  Axiom will use its best efforts to assist the Committee in identifying
23  individuals and/or firms to assume work on the PPA Issues, and any party assuming the
24  subcontracted issues will be bound to the Committee to the same extent as Axiom is bound to the
25  Committee under the terms of the Engagement Letter.  Axiom shall obtain the Committee's written
26  permission before subcontracting a PPA Issue to any other firm or individuals, and such permission
27  shall not be unreasonably withheld.  To the extent a conflict has or may arise between the
28

                                              3

1    Committee and one of Axiom's existing clients with respect to any non-PPA Issue, then Axiom
2    will subcontract all non-Committee work on such issue(s) to a third party consultant.

3         9.    If the Committee requests that Axiom perform services not specifically
4    contemplated by the Engagement Letter, Axiom and the Committee will agree, in writing, on the
5    terms for such services and request the Court's approval thereof.

6                    **Professional Compensation and Expense Reimbursement**

7         10.    Axiom's decision to advise and assist the Committee in connection with these
8    Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the
9    Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

10        11.    As set forth more fully in the Engagement Letter, Axiom will be compensated
11   through payment of a flat fee of $25,000 per month plus reimbursement of actual expenses. Axiom
12   will maintain detailed records of the actual expenses it incurs in connection with rendering services
13   to the Committee and for which it will seek reimbursement.

14        12.    Axiom intends to apply for compensation for professional services rendered and
15   reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the
16   Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the
17   Bankruptcy Rules, the Local Bankruptcy Rules, the Revised U.S. Trustee Guidelines, the
18   Guidelines for Compensation, the Interim Compensation Order and any other applicable
19   procedures and orders of the Court, including any order approving the Application and consistent
20   with the proposed compensation set forth in the Engagement Letter.

21        13.    Notwithstanding the above, because Axiom does not ordinarily maintain
22   contemporaneous time records, and will be paid a flat monthly fee, the Committee requests that
23   the obligation to maintain time records be waived and Axiom's professionals not be required to
24   maintain any time records, and Axiom not be required to provide or conform to any schedule of
25   hourly rates. To the extent that Axiom's time-keeping process as described herein deviates from
26   what would otherwise be required, the Committee respectfully requests that this Court allow such
27   deviations and waive any requirements to the contrary. To the extent that Axiom would otherwise
28   be required to submit more detailed time records for its professionals by the Bankruptcy Code, the

4

Bankruptcy Rules, the Local Bankruptcy Rules, the Revised U.S. Trustee Guidelines, the Guidelines for Compensation, the Interim Compensation Order, or other applicable procedures and orders of the Court, the Committee respectfully requests that this Court waive such requirements.

**No Duplication of Services**

14.     I do not believe that the services to be rendered by Axiom will be duplicative of the services performed by any other professional, and Axiom will use reasonable efforts to coordinate with the Committee and the other professionals engaged by the Committee to minimize and avoid duplication of services.

**Disinterestedness and Eligibility**

15.     In connection with its proposed retention by the Committee in these Chapter 11 Cases, Axiom undertook to determine whether it has any conflicts or other material relationships that might cause it to represent or hold an interest adverse to the Debtors. In connection with this inquiry, Axiom obtained from the Debtors and their professionals the names of individuals and entities that may be parties in interest in these cases (the "Potential Parties in Interest"), as summarized on the Debtors' Retention Checklist.

16.     To the best of my knowledge, information, and belief, Axiom has not represented any Potential Parties in Interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these cases except as set forth herein.

17.     As part of this inquiry, Axiom entered the names of Potential Parties in Interest into its computer database of existing and prior client engagements. Through this process, Axiom determined that it is and/or was formerly engaged by certain of the Potential Parties in Interest and/or their affiliates. To the best of my knowledge, information and belief, and based on such internal review process, Axiom currently is engaged to advise and/or was formerly engaged in the last three years to advise the entities identified on **Schedule 2** attached hereto and/or affiliates thereof on matters unrelated to these Chapter 11 Cases. These engagements are in no way connected with matters relating to the Debtors, their estates, assets, or businesses, and do not

5

1   impair Axiom's ability to be employed by the Committee. To the best of my knowledge,
2   information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of
3   these engagements are adverse to the interests represented by the Committee. With respect to the
4   rest of the Potential Parties in Interest, to the best of my knowledge, Axiom has not been engaged
5   to render advisory services to any of them within the past three years.

6       18.     In addition to the disclosures in **Annex 2**, Axiom has certain additional matters
7   worthy of disclosure below.

8       19.     With respect to Centerbridge Partners LP, a party listed on the *Verified Statement*
9   *of the Ad Hoc Committee of Senior Unsecured Noteholders Pursuant to Bankruptcy Rule 2019*
10  [Docket No. 744] (the "Ad Hoc 2019"), Axiom provides information and analysis of legislative
11  and administrative actions that are relevant to the bankruptcy but does not lobby or publicly
12  represent Centerbridge before the legislature, administration or in any other forum. Axiom does
13  not believe that such representation will conflict with, or infringe upon, its representation of the
14  Committee. Axiom will also be bound to maintain the confidentiality of any information it
15  receives from the Committee.

16      20.     With respect to LS Power, Axiom provides information and analysis of legislative
17  and administrative actions that may be relevant to the bankruptcy and publicly lobbies and
18  represents LS Power before the legislature and administration on matters unrelated to the Debtors'
19  bankruptcy cases. Axiom does not believe that such representation will conflict with, or infringe
20  upon, its representation of the Committee. Axiom will also be bound to maintain the
21  confidentiality of any information it receives from the Committee.

22      21.     Axiom currently represents Clearway with respect to certain PPA Issues. As
23  provided above and in the Engagement Letter, the Committee and Axiom have agreed that if any
24  conflict arises with respect to the PPA Issues, Axiom will subcontract such work to another
25  provider subject to the Committee's approval.

26      22.     One of Axiom's employees also performs certain services for California Strategies
27  ("CA"), a separate governmental affairs firm. CA represents a coalition of parties in understanding
28  the regulatory, political, and policy issues related to energy and wildfire issues in California.

6

Among the parties included in the coalition is Diameter Capital Partners LP, which is listed on the Ad Hoc 2019. Axiom does not represent Diameter before the legislature, administration or in any other forum and Axiom does not believe that such representation by its employee will conflict with, or infringe upon, its representation of the Committee. Such employee will also be bound to maintain the confidentiality of any information he receives from the Committee.

23.    Another employee of Axiom performs certain work for a coalition of parties with respect to certain California water resources-related issues. This coalition, named RiverArc, includes the Placer County Water Authority, a party listed as a Potential Parties in Interest. Such work is wholly unrelated to the Debtors' bankruptcy cases. Such employee will also be bound to maintain the confidentiality of any information he receives from the Committee.

24.    Other than as referenced herein or set forth on Schedule 2, (a) I am unaware of any client engagements that Axiom has had or has with the Potential Parties in Interest herein; and (b) Axiom has not been engaged to assist any entity or person on matters relating to, or in connection with, these cases. It is possible that Axiom may now or in the future be engaged by one or more of the Potential Parties in Interest in matters unrelated to the Debtors or these cases. In addition, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that are not listed as Potential Parties in Interest and with whom Axiom may now or in the future have engagements or material commercial relationships. To the extent that Axiom discovers any, or enters into any new material engagement or commercial relationship with Potential Parties in Interest, it will supplement this disclosure to the Court.

25.    To the best of my knowledge, information, and belief after reasonable inquiry, other than as disclosed in this Declaration, neither I, Axiom, nor any of our professionals or employees participating in or connected with Axiom's engagement with the Committee: (i) is related to the Debtors or any other party in interest herein, the United States Trustee for the Northern District of California or anyone employed in the Office of the United States Trustee for the Northern District of California, or the judge assigned to these cases; (ii) holds or represents any other entity having an adverse interest in connection with these Chapter 11 Cases; or (iii) has advised any Potential Parties in Interest in connection with these Chapter 11 Cases. Additionally, Axiom does not

7

believe that any relationship that Axiom or any of our professionals or employees participating in or connected with Axiom's engagement with the Committee may have with any Potential Parties in Interest in connection with any unrelated matter will interfere with or impair Axiom's representation of the Committee in these Chapter 11 Cases.

26.     To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, Axiom has no agreement with any other entity to share with such entity any compensation received by Axiom in connection with these Chapter 11 Cases. No promises have been received by Axiom as to compensation for Axiom in connection with these Chapter 11 Cases other than in accordance with the Engagement Letter.

27.     Certain employees of Axiom may have mortgages, consumer loans, investment accounts, brokerage accounts, or other banking brokerage, or other customer relationships with institutions that are creditors, equity holders or other Potential Parties in Interest in these Chapter 11 Cases or with funds sponsored by or affiliated with such parties. I do not believe that these relationships create a conflict of interest regarding the Debtors or their Chapter 11 Cases.

28.     Certain employees of Axiom were formerly employed by other professional services firms that are among, or represent other parties that are among, the creditors, equity holders, or other Potential Parties in Interest in these cases in connection with matters unrelated to the Debtors and the Chapter 11 Cases. I do not believe that these matters create a conflict of interest regarding the Debtors or the Chapter 11 Cases.

29.     In addition, certain employees of Axiom and certain of such persons' relatives may directly or indirectly hold, in the ordinary course, debt or equity securities of certain of the Potential Parties in Interest or investment funds sponsored by them. However, based upon the information that has been provided to me, I believe that any such holdings are insignificant and, to my knowledge, none of these investors controls or has any influence on such Potential Parties in Interest. Further, I do not believe these investments, considered separately or collectively, are material or create a conflict of interest regarding the Debtors or these Chapter 11 Cases.

30.     In the light of the number of the Debtors' creditors, Potential Parties in Interest, and potential additional parties in interest, neither I nor Axiom is able conclusively to identify all

8

potential relationships at this time, and we reserve the right to supplement this disclosure as additional material relationships come to our attention. In particular, among other things, Axiom may have relationships with persons who are beneficial owners of Potential Parties in Interest and persons whose beneficial owners include Potential Parties in Interest or persons who otherwise have relationships with Potential Parties in Interest. Moreover, Axiom employees may have relationships with Potential Parties in Interest, persons that may become parties in interest in this case, or persons that have business relationships with the Debtors or are competitors of the Debtors.

31.     Based on the foregoing, to the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, Axiom and the employees of Axiom that will work on this engagement do not hold or represent any other entity having an adverse interest in connection with these Chapter 11 Cases, and Axiom is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Axiom and the employees of Axiom that will work on this engagement:

a.     are not creditors, equity security holders, or insiders of the Debtors;

b.     were not, within two years before the Petition Date, a director, officer, or employee of the Debtors; and

c.     do not have an interest materially adverse to the Debtors, their respective estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

32.     Axiom will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent that any new material facts or relationships bearing on the matters described herein during the period of Axiom's retention are discovered or arise, Axiom will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

9

1    Executed on April 17, 2019, Sacramento, CA

2

3    Cassie Gilson

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**SCHEDULE 1**</u>

**Retention Checklist**

| | |
|---|---|
| 1 | • Debtors |
| 2 | • Debtors' Trade Names and Aliases (up to 8 years) |
| | • Affiliates and Subsidiaries |
| 3 | • Bank Accounts |
| | • Bankruptcy Judges & Staff Northern District of California |
| 4 | • Current Officers and Directors |
| 5 | • Term and Revolving Loan Lenders and Administrative Agents |
| | • Contract Counterparties |
| 6 | • DIP Lenders |
| | • Debtors Professionals |
| 7 | • Former Officers and Directors (since 2008) |
| 8 | • Affiliations of Former Officers |
| | • Affiliations of Former Directors |
| 9 | • Insurance/Insurance Provider/Surety Bonds |
| | • Surety Bonds |
| 10 | • Landlords and parties to leases |
| 11 | • Lenders Litigation Counterparties/Litigation Pending Lawsuits |
| | • Litigation Parties (in adversary proceeding 19-03003) |
| 12 | • Ad Hoc Committee of Unsecured Tort Claimant Creditors |
| 13 | • Non-Debtors Professionals |
| | • Ordinary Course Professionals |
| 14 | • Letters of Credit |
| | • Regulatory and Government |
| 15 | • Significant Competitors |
| 16 | • Significant Shareholders (more than 5% of equity) |
| | • Significant holder of voting securities |
| 17 | • Taxing Authorities |
| | • Top Unsecured Creditors (top 50 list as well as other large holders of unsecured claims) |
| 18 | • Unsecured Notes |
| 19 | • UCC Lien Holders |
| | • Unions |
| 20 | • Office of the United States Trustee for Region 17 |
| 21 | • Utility Providers |
| | • Vendors/Suppliers |
| 22 | • Interested Parties / Notice of Appearance Parties |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

## SCHEDULE 2

### Connections to Potential Parties in Interest

| Party Name | Relationship to Debtors[2] | Relationship to Axiom[3] |
|---|---|---|
| Aera Energy LLC | Contract Counterparties | Current client on matters unrelated to the Debtors or the Chapter 11 cases |
| Cargill Inc. | Contract Counterparties | Current client on matters unrelated to the Debtors or the Chapter 11 cases |
| LS Power | | Current client on matters unrelated to the Debtors or the Chapter 11 cases |
| SunPower | Contract Counterparties | Potential affiliate of current client on mattes unrelated to the Debtors or the Chapter 11 cases |

---

[2]   The Relationship to the Debtors is correlated to the categories of relationships from the Debtors' Interested Party List. Where a Party was listed in multiple categories, each category is indicated.

[3]   A "current client" is an entity for which there are, as of the date hereof, active matters on which Axiom is engaged; a "former client" is an entity for which there were no active matters as of the date hereof. Axiom does not represent any of these "current" or potential" clients in matters related to the Debtors or the Chapter 11 Cases. Identification of a party in interest on Annex 2 is not an admission of a conflict, disabling or otherwise, but rather is solely a disclosure of potential connections.

1

# **EXHIBIT C**

2

**Engagement Letter**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Privileged and Confidential

This Agreement is hereby entered into as of March 15, 2019, and will serve to confirm the engagement (the "Engagement") of Axiom Advisors ("Consultant") as a consultant to Milbank LLP ("Counsel" and, together with Consultant, the "Parties"), in its capacity as proposed counsel to the Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy cases of PG&E Corporation and Pacific Gas and Electric Company (collectively, the "Debtors"). Consultant will provide general and strategic consulting services to Counsel as set forth below.

Consultant has been retained on behalf of, and will report solely to, Counsel and the Committee, notwithstanding that its fees and expenses will be paid by the Debtors' estates and that Consultant's engagement and terms provided herein are subject to applicable law and approval by the Bankruptcy Court for the Northern District of California (the "Bankruptcy Court").

**Scope of Services**:
Consultant shall provide services as described on Exhibit A (the "Services").

**Compensation:**
In consideration for the Services, Consultant shall be entitled to payment from the Debtors of the monthly fee set forth in Exhibit A attached hereto, provided that Consultant's fees and expenses will be subject to applicable orders or procedures entered by the Bankruptcy Court. For the avoidance of doubt, neither Counsel, the Committee, nor any of its advisors shall be liable for any fees or expenses incurred in connection with the Services.

**Expenses:**
Consultant shall be reimbursed for reasonable expenses incurred in the normal course of business in respect of the Services provided. "Expenses" may also include reasonable costs incurred to retain subcontracted consulting or professional services, should such retention be necessary as provided for herein. Prior approval from Counsel shall be obtained for items costing in excess of $1,000. Any expenses incurred in connection with the Services shall be documented and billed as they occur.

**Duration:**
The Services to be rendered by the Consultant under this Agreement, for which a fee shall be paid, will commence March 15, 2019. Either of the Parties may terminate this Agreement, without liability, with 30 days advance written notice. In the event of such termination,

Santa Barbara
39 E. De La Guerra St.
Santa Barbara, CA 93101

Sacramento
1201 K Street Suite 920
Sacramento, CA 95814

Los Angeles
1240 Rosecrans Ave Suite 120
Manhattan Beach, CA 90266

www.axiomadvisors.com

Case: 19-30088    Doc# 1525    Filed: 04/17/19    Entered: 04/17/19 16:19:54    Page 15 of 22

Consultant shall be entitled to all expenses incurred, and any fees due and owing, through the effective date of termination.

**Assignment:**
This Agreement may not be assigned by either of the Parties except upon the express written consent of the other Party.

**Hiring and Subcontracting:**
If, during the duration of this Agreement, Counsel determines that a conflict has or may arise between the Committee and Clearway (as defined below) solely with respect to issues related to power purchase agreements involving the Debtors and Clearway (the "PPA Issues"), then Consultant will subcontract all Committee work on the PPA Issues to an individual and/or firm of the Committee's choice. Consultant will use its best efforts to assist the Committee in identifying individuals and/or firms to assume work on the PPA Issues, should they arise. Any party assuming the subcontracted issues will be bound to Counsel and the Committee to the same extent as Consultant is bound to Counsel and the Committee under the terms of this Agreement. Consultant shall obtain Counsel's written permission before subcontracting a PPA Issue to any other firm or individuals, and such permission shall not be unreasonably withheld. To the extent a conflict has or may arise between the Committee and one of Consultant's existing clients with respect to any non-PPA Issue, then Consultant will subcontract all non-Committee work on such issue(s) to a third party consultant.

**Limitation of Liability:**
Notwithstanding any provision of this Agreement to the contrary, neither Party shall be liable to the other for indirect, incidental or consequential damages.

**Confidentiality:**
Consultant agrees to protect the Committee's confidential or privileged information against unauthorized disclosure. Consultant will protect the Committee's confidential or privileged information using a reasonable degree of care as is used to protect its own confidential or privileged information of a like nature. Consultant agrees to protect Committee's confidential or privileged information disclosed in tangible form, clearly labeled confidential or privileged at time of disclosure, and in non-tangible form, pertaining to matters disclosed in writing or orally. Confidential or privileged information does not include information that is: (a) previously known to Consultant, free from any obligation to keep it confidential, (b) publicly disclosed by the Committee or Counsel either prior to or subsequent to Consultant's receipt of such information, (c) independently developed by Consultant without any access to the Committee's confidential or privileged information, or (d) rightfully obtained by Consultant from a third party lawfully in possession of the Committee's confidential or privileged information who is not bound by confidentiality obligations to the Committee or Counsel. Consultant's obligations regarding confidential or privileged information received under this Agreement shall survive for two years following any termination hereof.

**Code of Ethics:**
In respect to the performance of the Services described herein, Consultant specifically represents, warrants and agrees that, in respect of its involvement with the Committee or Counsel, no payment or offer of payment has been made or shall be approved or made by Consultant with the intention or understanding that any part of such payment is to be used to influence or attempt to influence, corruptly or unlawfully, any decision or judgment of any official of any government or of any subdivision, agency, or instrument thereof or any political party in connection with the Committee or Counsel. The obligations in this paragraph shall survive the termination of this Agreement.

**Consents:**
Consultant hereby represents that Consultant has received all of the consents, approvals, or other authorizations necessary to undertake the Engagement.

**Potential Conflicts of Interest:**
Consultant has used its best efforts to evaluate potential conflicts among its existing client base related to this Agreement. To the best of its knowledge, Consultant has not undertaken, and will not undertake for the duration of this Agreement, any representations, consultations, or other engagements that may conflict with the interests of the Committee in connection with the Debtors' bankruptcy cases. To the extent any conflict (either actual or potential), arises, Consultant will advise Counsel immediately. While we have determined that no conflicts currently exist, for purposes of full disclosure, Consultant represents and will continue to represent Clearway Energy ("Clearway") in connection with the Debtors' bankruptcy cases for the limited purpose of providing consultation services to Clearway with regard to PPA Issues.

**Independent Contractor Status:**
By execution of this Agreement, Consultant acknowledges that it is an independent contractor and neither it nor its principals and employees are employees of the Committee or Counsel for any purpose whatsoever. Consultant has no right or authority to assume or create any obligation or responsibility, express or implied, on behalf of the Committee or Counsel, except as expressly otherwise authorized in writing.

**Registration/Reporting**
 The Committee understands and acknowledges that Consultant may have registration or reporting requirements and that the Committee and Consultant will coordinate to the extent necessary to ensure Consultant's compliance  with all applicable registration or reporting requirements and related laws during the term of this Agreement.

**No Legal Services:**
Under this Agreement, the Consultant does not provide "legal services". At all times during the term of this Agreement, the parties understand that the Consultant is not legal counsel nor providing legal advice.

3

**Governing Law:**

This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of California.

**Amendment:**

This Agreement may be amended only by a written and signed agreement of both the Consultant and the Counsel.

**ACCEPTED & AGREED:**

**Counsel:**

By: _____

Thomas R. Kreller
Partner
Milbank LLP

**Co-Chairs of the Committee:**

BOKF, N.A., as indenture trustee

By: _____
George Kubin
Authorized Signatory

The Davey Tree Expert Company, Davey
Tree Surgery Company, and DRG, Inc.

By: _____
Erika Schoenberger
Authorized Signatory

**Consultant:**

By: _____
Cassie Gilson, Partner
Axiom Advisors

4

**Governing Law:**

This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of California.

**Amendment:**

This Agreement may be amended only by a written and signed agreement of both the Consultant and the Counsel.

**ACCEPTED & AGREED:**

**Counsel:**

By: _____
Thomas R. Kreller
Partner
Milbank LLP

**Co-Chairs of the Committee:**

BOKF, N.A., as indenture trustee

By: _____
George Kubin
Authorized Signatory

The Davey Tree Expert Company, Davey
Tree Surgery Company, and DRG, Inc.

By: _____
Erika Schoenberger
Authorized Signatory

**Consultant:**

By: _____
Cassie Gilson, Partner
Axiom Advisors

4

**Governing Law:**
This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of California.

**Amendment:**
This Agreement may be amended only by a written and signed agreement of both the Consultant and the Counsel.


**ACCEPTED & AGREED:**

**Counsel:**

By: _____
Thomas R. Kreller
Partner
Milbank LLP

**Co-Chairs of the Committee:**

BOKF, N.A., as indenture trustee

By: _____
George Kubin
Authorized Signatory

The Davey Tree Expert Company, Davey Tree Surgery Company, and DRG, Inc.

By: _/s/ Erika Schoenberger_____
Erika Schoenberger
Authorized Signatory

**Consultant:**

By: _____
Cassie Gilson, Partner
Axiom Advisors

4

**Governing Law:**

This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of California.

**Amendment:**

This Agreement may be amended only by a written and signed agreement of both the Consultant and the Counsel.

**ACCEPTED & AGREED:**

**Counsel:**

By: _____

Thomas R. Kreller
Partner
Milbank LLP

**Co-Chairs of the Committee:**

BOKF, N.A., as indenture trustee

By: _____

George Kubin
Authorized Signatory

The Davey Tree Expert Company, Davey
Tree Surgery Company, and DRG, Inc.

By: _____

Erika Schoenberger
Authorized Signatory

**Consultant:**

By: _____

Cassie Gilson, Partner
Axiom Advisors

4

**EXHIBIT A**

**Scope of Services:**

The Consultant will provide issues monitoring, consultation, strategic and communication advice and advocacy representation with respect to political, administrative, regulatory, governmental affairs, legislative and similar issues that may arise in connection with the Debtors' bankruptcy cases that the Committee believes will assist in the performance of their duties or otherwise impact unsecured creditors of the Debtors.

If the Parties agree that changes in the scope of responsibilities and/or fees under this Agreement are warranted, an amendment to this Agreement will be negotiated.  No modification of this Agreement shall be effective unless in made in writing.

**Compensation:**
Consultant will be entitled to $25,000 per month in return for the Services as detailed in the Scope of Services contained in this Attachment.

5