EDWARD J. TREDINNICK (#84033)
GREENE RADOVSKY MALONEY
    SHARE & HENNIGH LLP
Four Embarcadero Center, Suite 4000
San Francisco, California 94111-4106
Telephone: (415) 981-1400
Facsimile: (415) 777-4961
E-mail: etredinnick@greeneradovsky.com

Attorneys for Creditor,
City and County of San Francisco

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.: 19-30088-DM |
| PG&E CORPORATION, | Chapter 11 |
| -and- | |
| PACIFIC GAS & ELECTRIC COMPANY, | **MOTION BY THE CITY AND COUNTY OF SAN FRANCISCO FOR DETERMINATION THAT AUTOMATIC STAY DOES NOT APPLY UNDER §362(b)(4) OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY UNDER §362(d)(1) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| Debtors, | |
| ☐Affects PG&E Corporation<br>☒Affects Pacific Gas and Electric Company<br>☐Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | |
| | DATE: May 9, 2019<br>TIME: 9:30 a.m.<br>PLACE: Courtroom 17<br>450 Golden Gate Avenue<br>16th Floor<br>San Francisco, California<br>JUDGE: Hon. Dennis Montali |

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

545368.6

I.     INTRODUCTION ......................................................................................................1

II.    STATEMENT OF FACTS .......................................................................................1

     A.     PG&E's Wholesale Distribution Tariff.................................................................2

     B.     WDT-Related Disputes between San Francisco and PG&E Pending at FERC..............3

         1.     The City's 2014 Complaint and Related Disputes on WDT Service..................3

         2.     Disputes Regarding PG&E's Quarterly Filings ....................................................5

         3.     The City's January 2019 Complaint ..................................................................5

     C.     Ongoing Service Delays for San Francisco As a Result of the PG&E Conduct Raised in the January 2019 FERC Complaint..................................................................7

III.   THE AUTOMATIC STAY DOES NOT APPLY TO SAN FRANCISCO'S FERC COMPLAINTS ........................................................................................................10

IV.   CAUSE EXISTS FOR THE LIFTING OF THE AUTOMATIC STAY UNDER §352(d)(1)..14

     A.     Application of the *Curtis* Factors.........................................................................16

         1.     Whether the relief will result in partial or complete resolution of the issues. ...16

         2.     The lack of any connection with, or interference with the bankruptcy case......16

         3.     Whether the foreign proceeding involves the debtor as a fiduciary.................17

         4.     Whether a specialized tribunal has been established to hear the particular cause of action and whether the tribunal has expertise to hear such cases. ................17

         5.     Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation...............................................................................18

         6.     Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question. ...................18

         7.     Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties. ......................18

         8.     Whether the judgment claim arising from the foreign action is subject to equitable subordination. ....................................................................................18

         9.     Whether movement success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f)............................................18

         10.    The interests of judicial economy and the expeditious and economical

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

determination of litigation for the party..............................................................19

11.   Whether the foreign proceedings have progressed to a point where the parties
      are prepared for trial...................................................................................19

12.   The impact of the stay and the "balance of hurt."......................................19

V.   CONCLUSION ..........................................................................................................20

Greene Radovsky
Maloney Share &
Hennigh LLP
Four Embarcadero
Ctr, Suite 4000
San Francisco, CA
94111

Case: 19-30088   Doc# 1535   Filed: 04/18/19   ii   Entered: 04/18/19 07:55:22   Page 3 of
26

TABLE OF AUTHORITIES

**Cases**

*Bd. of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 40 (1991) .............................................10

*Berg v. Good Samaritan Hosp.*, 230 F.3d 1165 (9th Cir. 2000) ..........................................11

*Century Power Corp.*, 56 FERC ¶ 61,087 (1991).................................................................12

*City & Cty. of S.F. v. Pac. Gas & Elec. Co.*, 433 F.3d 1115, 1124 (9th Cir. 2006) ...................11

*City & Cty. of S.F. v. Pac. Gas & Elec. Co.*, FERC Docket No. EL19-38-000 (Feb. 19, 2019)............3

*City & Cty. of S.F. v. Pac. Gas & Elec. Co.*, FERC Docket No. EL19-38-000 (Jan. 28, 2019)............3

*City & Cty. of S.F. v. United Airlines*, 616 F.2d 1063, 1065 (9th Cir. 1979) .........................1

*In re Commonwealth Oil Ref. Co.*, 58 B.R. 608, 616 (Bankr. W.D. Tex. 1985) ....................15

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)................................................15, 16, 21

*In re Dingley*, 852 F.3d 1143 (9th Cir. 2017) ...................................................................11

*In re Howrey LLP*, 492 B.R. 19, 24 (Bankr. N.D. Cal. 2013) .............................................15

*In re Kronemeyer*, 405 B.R. 915, 921 (9th Cir. BAP 2009) ..............................................16

*In re Mirant Corp.*, 378 F.3d 511, 518 (5th Cir. 2004)...................................................3, 13

*In re Pac. Gas & Elec. Co.*, 263 B.R. 306, 319-20 (Bankr. N.D. Cal. 2001) .......................13

*In re Plumberex Specialties Prods., Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004)..................15, 16

*In re Roger*, 539 B.R. 837, 844-45 (C.D. Cal. 2015)......................................................15, 17

*In re Synergy Dev. Corp.*, 140 B.R. 958, 959 (Bankr. S.D.N.Y. 1992)................................10

*In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990).......................................15

*Lockyer v. Mirant Corp.*, 398 F. 3d 1098, 1108 (9th Cir. 2005).........................................11

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 502 (1986) ....................14

*Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354, 371 (1988)...........................3

*Norris Square Civic Ass'n v. Saint Mary Hosp.*, 86 B.R. 393, 398 (Bankr. E.D. Pa. 1988) ................14

*Pac. Gas & Elec. Co. v. Cal. Power Exch. Corp.*, 95 FERC ¶ 61,020, at 61,046 (2001)..................13

*Pac. Gas & Elec. Co.*, 106 FERC ¶ 61,144, P 9 (2004) ...................................................12

*PG&E v. FERC* adversary proceeding (A.P. # 19-3003)....................................................17

*Va. Elec. & Power Co.*, 84 FERC ¶ 61,254 (1998) ..........................................................12

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

**Statutes**

11 U.S.C. § 362(b)(4) ................................................................................................... passim

11 U.S.C. § 362(d)(1) ..............................................................................................1, 6, 15, 21

16 U.S.C. § 824(e) ...................................................................................................................2, 18

16 U.S.C. § 824d(a) ................................................................................................................2, 3, 11

16 U.S.C. § 824e(a) ................................................................................................................2, 12, 13

16 U.S.C. §§ 824e, 825e, 825h ........................................................................................12

28 U.S.C. § 959(b) ....................................................................................................................14, 15

**Other Authorities**

Federal Power Act .................................................................................................................... passim

Federal Raker Act of 1913 (Pub. L. No. 63-41, 38 Stat. 242) ...............................................1

San Francisco Charter (§§ 4.112, 8B.120-127, 16.101) ........................................................1

State of California Constitution (art. XI, § 9) ........................................................................1

**Rules**

Bankruptcy Rule 4001(a)(3) .................................................................................................21

**Treatises**

3 *Collier on Bankruptcy* ¶ 362.05[5][a] (Richard Levin & Henry Sommers eds. 16th ed.) ..................10

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

# I. INTRODUCTION

The City and County of San Francisco ("San Francisco" or "City") hereby moves this Court for a determination that the automatic stay of section 362 of the United States Bankruptcy Code does not apply under 11 U.S.C. § 362(b)(4) to certain actions by San Francisco pending before the Federal Energy Regulatory Commission ("FERC") relating to PG&E's application of its Wholesale Distribution Tariff to San Francisco, or in the alternative that the automatic stay should be lifted pursuant to 11 U.S.C. § 362(d)(1) for cause (the "Motion").

This Motion is based on the Memorandum of Points and Authorities set forth herein, the Declaration of Barbara Hale and the Declaration of Katharine M. Mapes in Support thereof submitted herewith, and on such other evidence that the Court may consider at the hearing on the Motion.

# II. STATEMENT OF FACTS

PG&E and San Francisco both provide electric service within the City and County of San Francisco and have done so for nearly a century. PG&E does so pursuant to a franchise agreement with the City. The City does so under authority granted to it in the State of California Constitution (art. XI, § 9), the Federal Raker Act of 1913 (Pub. L. No. 63-41, 38 Stat. 242), and the San Francisco Charter (§§ 4.112, 8B.120-127, 16.101).[1] The Raker Act "granted to San Francisco the rights of way in Yosemite National Park and other public lands necessary to build the Hetch Hetchy water storage and power project,"[2] and provides that the first priority for the use of Hetch Hetchy power is for municipal public purposes of San Francisco.

Because San Francisco lacks a comprehensive distribution system within the City, it relies on PG&E's distribution facilities to deliver the City's electricity to its customers. For decades, San Francisco purchased distribution services from PG&E pursuant to a series of bilateral agreements

---

[1] Declaration of Katharine M. Mapes in Support of Motion for Determination that Automatic Stay Does Not Apply Under § 362(b)(4) or in the Alternative, for Relief from the Automatic Stay Under § 362(d)(1) by the City and County of San Francisco at ¶ 2 ("Mapes Decl.").

[2] *City & Cty. of S.F. v. United Airlines*, 616 F.2d 1063, 1065 (9th Cir. 1979).

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

1

that allowed it to deliver power to individual San Francisco customers scattered throughout the City.[3] The last such agreement terminated on June 30, 2015.[4] Since then, San Francisco has relied on PG&E's Wholesale Distribution Tariff ("WDT") on file at FERC for service over PG&E's distribution facilities.[5]

## A. PG&E's Wholesale Distribution Tariff

PG&E is a FERC-regulated public utility.[6] PG&E's WDT is a FERC-jurisdictional tariff of general applicability that sets out the rates, terms, and conditions for delivery service over PG&E's distribution system.[7] FERC has an obligation under the Federal Power Act to ensure that tariffs on file are just, reasonable, and not unduly discriminatory against one customer or another.[8]

PG&E, as well as the other investor-owned utilities in California, initially filed wholesale distribution tariffs with FERC as part of their implementation of California's electric industry restructuring.[9] According to PG&E, the WDT is based on FERC's Order No. 888-A Open Access Transmission Tariff, which is a standardized open-access transmission tariff that contains the minimum terms and conditions that FERC requires of all public utility transmission owners.[10] PG&E has stated that the WDT is designed to provide open-access, non-discriminatory service to eligible customers connected to PG&E's distribution system, so that those customers can reach the CAISO-controlled transmission grid to make wholesale purchases and sales.[11]

FERC has exclusive jurisdiction to set the rates, terms, and conditions of WDT service.[12] Under the Federal Power Act, FERC has an obligation to assure that the WDT, as well as

---

[3] Mapes Decl. at ¶ 8.

[4] *Id*.

[5] *Id*. Attached as Exhibit A to Mapes Decl.

[6] 16 U.S.C. § 824(e).

[7] Mapes Decl. at ¶ 4.

[8] *Id.* at ¶ 3.

[9] *Id.* at ¶ 5.

[10] *Id.* at ¶ 6.

[11] *Id.*

[12] 16 U.S.C. § 824d(a); *see also* 16 U.S.C. § 824e(a) (requiring FERC to "determine the just and

2

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

"all rules and regulations affecting or pertaining" to the WDT, are just, reasonable, and not unduly discriminatory.[13]

**B.    WDT-Related Disputes between San Francisco and PG&E Pending at FERC**

Since beginning to take service under the WDT, San Francisco has not seen the fair, non-discriminatory service that FERC intended from such open-access tariffs. Accordingly, there are several open dockets at FERC that pertain to San Francisco's inability to receive wholesale distribution service pursuant to the FERC-approved terms and conditions of PG&E's WDT. These disputes are not over the rates charged by PG&E under the WDT, but concern PG&E's failure to offer service to San Francisco in accord with the terms and conditions of the WDT.  The pending disputes can be grouped into three general categories: (1) disputes related to the scope of San Francisco's eligibility for service under the terms of the WDT and Federal Power Act, (2) disputes related to PG&E's quarterly filings to FERC about particular points of delivery under the WDT, and (3) disputes related to PG&E's refusal to provide wholesale distribution service at secondary voltage levels consistent with the terms of its WDT. This third category is the subject of San Francisco's January 2019 complaint in FERC Docket No. EL19-38-000.[14] PG&E has argued that this most recent Complaint is subject to the automatic stay.[15]

**1.    <u>The City's 2014 Complaint and Related Disputes on WDT Service</u>**

In November 2013, San Francisco submitted an application to PG&E seeking to transfer all loads served under the about-to-expire bilateral agreement to wholesale distribution service

---

reasonable rate, charge, classification, rule, regulation practice, or contract …"); *In re Mirant Corp.*, 378 F.3d 511, 518 (5th Cir. 2004) ("FERC has the 'exclusive authority to determine the reasonableness of wholesale [electricity] rates' under the [Federal Power Act]") (quoting *Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354, 371 (1988)).

[13] 16 U.S.C. § 824d(a).

[14] City & Cty. of S.F., Complaint, *City & Cty. of S.F. v. Pac. Gas & Elec. Co.*, FERC Docket No. EL19-38-000 (Jan. 28, 2019), eLibrary No. 20190128-5207, attached as Exhibit B to the Mapes Decl. ( hereinafter "Complaint").

[15] Pac. Gas & Elec. Co., Notice of Bankruptcy Filing and Imposition of Automatic Stay, *City & Cty. of S.F. v. Pac. Gas & Elec. Co.*, FERC Docket No. EL19-38-000 (Feb. 19, 2019), eLibrary No. 20190219-5231, attached as Exhibit C to Mapes Decl.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

Case: 19-30088    Doc# 1535    Filed: 04/18/19    Entered: 04/18/19 07:55:22    Page 8 of 26
545368.6

1     under PG&E's WDT effective July 2015.[16] PG&E responded by claiming that the great majority of

2     San Francisco's delivery points were not eligible for service under the WDT.[17] San Francisco filed a

3     complaint with FERC under Section 206 and 306 of the Federal Power Act seeking WDT service.[18] A

4     few months later, PG&E filed a set of unexecuted service agreements with FERC under Section 205

5     of the Federal Power Act intended to implement PG&E's provision of service to San Francisco under

6     the WDT.  In those agreements it proposed to provide WDT service to certain of San Francisco's

7     loads connected to PG&E's distribution system, following the termination of the bilateral

8     agreement.[19]

9         FERC consolidated the complaint and replacement agreement dockets into a single

10     proceeding. After seven days of hearings as well as the filing of post-hearing briefs, in November

11     2016 an Initial Decision was issued by the Administrative Law Judge presiding over the case.[20] San

12     Francisco, PG&E, and FERC Trial Staff filed exceptions to certain portions of the Initial Decision.

13     The proceeding is still open, because FERC action on the Initial Decision remains pending.[21]

14         These consolidated proceedings raise fundamental issues concerning whether PG&E

15     has implemented the WDT for service to San Francisco in a manner that complies with the Federal

16     Power Act and FERC requirements. These issues impact San Francisco's continued ability to provide

17     service at thousands of existing points of delivery. They also affect every application for new service

18     San Francisco has submitted since it started taking service under the WDT, as well as currently-

19     pending applications and all such applications that San Francisco submits in the future under the

20     WDT. The disputed issues do not include the rates for WDT service. The parties are awaiting a final

21     decision from FERC, after which there could be requests to FERC for rehearing and petitions for

22

23

---

24     [16] Mapes Decl. at ¶ 10.

25     [17] *Id.*

26     [18] *Id.*

27     [19] *Id.*

    [20] *Pac. Gas & Elec. Co.*, 157 FERC ¶ 63,021 (2016.)

28     [21] Mapes Decl. at ¶ 10.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

review to the circuit court.[22]

### 2.     <u>Disputes Regarding PG&E's Quarterly Filings</u>

PG&E is required to make quarterly filings with FERC pursuant to Section 205 of the Federal Power Act to identify all added, changed, or terminated San Francisco points of delivery receiving WDT service.[23] San Francisco has protested ten of those filings with respect to whether PG&E has complied with the Federal Power Act and WDT in its treatment of particular points of delivery, and PG&E's practices regarding San Francisco's requests for service. As required by FERC, the City and PG&E have engaged in extensive settlement negotiations over the matters raised in the City's protests. Late last year, the City and PG&E filed a Joint Offer of Partial Settlement with FERC, which is still waiting for FERC approval.[24] While the parties reached agreement on six of the ten protests, there are still outstanding disputes in four other protests.[25] The City expects that FERC will remove those disputes from the settlement process and into active litigation.

### 3.     <u>The City's January 2019 Complaint</u>

San Francisco's January 2019 complaint alleges that PG&E has violated the terms and conditions for WDT service by refusing to provide San Francisco with wholesale distribution service at a secondary voltage level—which would allow cheaper and easier interconnections than the primary voltage-level service being required by PG&E. The complaint alleges that PG&E has imposed and continues to impose on San Francisco requirements for WDT service that: (1) are not set forth in its FERC-approved WDT; (2) serve no technical, safety, or reliability purposes; and (3) PG&E does not impose on its other WDT customers.[26] The complaint asks FERC to order PG&E to provide service under the terms of its FERC-approved WDT, including secondary service for small customers. The complaint also seeks refunds of the excess costs incurred by San Francisco as a result

---

[22] *Id.*

[23] *Id.* at ¶ 11.

[24] *Id.*

[25] *Id.*

[26] Complaint at 2-5.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111
545368.6

5

of PG&E's improper demand for excessive equipment.[27]

As San Francisco's complaint explains, PG&E has routinely insisted that San Francisco apply for and agree to take primary wholesale distribution service for small City customers, even though the sizes of these projects are well below what typically requires primary service and PG&E has identified no basis in its WDT for this practice.[28] PG&E's practice of requiring that San Francisco take primary WDT service for small loads has severely impacted San Francisco's ability to function as a utility and to serve its customers.[29]

First, PG&E's actions force San Francisco to incur unnecessary and excessive costs to serve its loads.[30] Second, the large equipment that PG&E demands for even small customers is unwieldy, particularly in a dense urban environment such as San Francisco. By forcing San Francisco to install such equipment as a condition of receiving WDT service, PG&E takes away from the space San Francisco has to provide critical services to City residents.[31] Third, PG&E's actions have caused and continue to cause excessive delays, and related costs, in getting electric service to customers.[32] San Francisco, for example, has been forced to delay the opening of municipal facilities and programs because PG&E refused to provide WDT service on terms consistent with the Tariff.[33] Finally, due to the costs and delays PG&E has unreasonably imposed on WDT service to San Francisco, PG&E has been able to take certain of San Francisco's customers as its own by offering those customers PG&E

---

[27] Mapes Decl. at ¶ 12.

[28] *See* Complaint at 10-11; Declaration of Barbara Hale in Support of Motion for Determination that Automatic Stay Does Not Apply under § 362(b)(4) or in the Alternative, for Relief from the Automatic Stay Under § 362(d)(1) by the City and County of San Francisco at ¶¶ 3-5 ("Hale Decl.").

[29] Hale Decl. at ¶ 6.

[30] *Id.* at ¶ 8.

[31] *Id.* at ¶ 7.

[32] *Id.* at ¶ 9.

[33] *Id.*, referencing Exh. A, San Francisco Public Utilities Commission ("SFPUC") Report, Att. A, row 6 ("The opening of a new wing at the health center will be delayed"), row 8 ("Many swim programs were cancelled due to the project delay. The delay had a domino effect on [Recreation and Park Department's] plans to renovate a group of community pools."), row 45 ("the opening of a single-use bathroom for [San Francisco Municipal Transportation Agency] drivers was delayed as a result.").

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
CTR, SUITE 4000
FOUR EMBARCADERO
SAN FRANCISCO, CA
94111

6

545368.6

retail service on cheaper and quicker terms.[34] San Francisco's complaint contends that PG&E cannot legally use its position as administrator of an open access distribution tariff to gain a competitive advantage for its own retail service.[35]

### C. Ongoing Service Delays for San Francisco As a Result of the PG&E Conduct Raised in the January 2019 FERC Complaint

San Francisco filed its January 2019 complaint with FERC to require PG&E to comply with the terms and conditions of its WDT. That complaint identifies many of the disputes that delayed or prevented service to City customers.[36] Many of the interconnection disputes addressed in the complaint remain at a standstill.[37] These disputes have delayed service to City customers that provide important public services, and required City customers to install large unneeded electrical facilities instead of using that space for services. The City estimates that the total cost impact to the City from PG&E's actions through the end of 2018 exceeds $8,000,000.[38]

As alleged in the complaint and noted above, PG&E's most egregious denial of service is its refusal to provide San Francisco the "secondary" service specified by the WDT for small City customers, and its corresponding demand that San Francisco instead take "primary" service.[39] While primary service connections are appropriate for customers with large loads (and required for very large loads), there are no technical, safety, or reliability reasons for requiring primary service connections for small loads.[40] Most of San Francisco's thousands of points of delivery are small

---

[34] *Id.* at ¶¶ 10-12.

[35] *See* Complaint at 20-33; Mapes Decl. at ¶ 12.

[36] *See* Complaint at 10-20; *id.*, Exh. 1, Att. B (November 2018 SFPUC Quarterly Report to the Board of Supervisors on the Status of Applications to PG&E for Electric Service); and Hale Decl., Exh. A.

[37] Hale Decl. at ¶ 17. These include the City's applications for service to: (a) Lafayette Elementary School (renovation); (b) Southeast Community Center (new construction); (c) 3001-3021 24th Street (new affordable housing); (d) 102 Marina Boulevard (new electric vehicle charging stations); (e) Mission Bay Ferry Landing (upgrade to existing service); (f) 10501 Warnerville Road (substation rehabilitation) and (g) San Francisco Police Department Traffic Control and Forensics facility (new construction).

[38] *Id.* at ¶ 16.

[39] Complaint at 10-20.

[40] *See* Complaint, Exh. 2, Declaration of Rod Maslowski.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111
545368.6

7

loads—e.g., individual schools, health clinics, libraries, affordable housing buildings, playgrounds, swimming pools, police stations, and public restrooms. Primary service requires large, expensive equipment while secondary service generally does not.[41]

As further alleged in the complaint, after months of negotiations PG&E has sometimes withdrawn its primary service demands and agreed to alternate arrangements to connect some customers.[42] Although these alternate arrangements still require San Francisco to provide equipment in excess of what the WDT specifies, San Francisco has accepted the arrangement because it allows completely stalled projects to move forward and eliminates the need for even larger and more expensive equipment. Moreover, PG&E has only accepted these alternative arrangements on a case-by-case basis after lengthy and costly delays and negotiations[43]—the very problems open access tariffs like the WDT were intended to avoid.

Not surprisingly, PG&E's efforts to hinder San Francisco from connecting its loads have not abated since San Francisco filed its complaint and PG&E filed for bankruptcy. PG&E continues to insist that San Francisco provide large expensive facilities regardless of the size of the load. In the last two months, additional disputes have prevented service to several customers, including an affordable housing project, the construction of a new fire boat station at Pier 22½, and the installation of electric vehicle charging stations in a City parking lot. PG&E now claims that, due to the City's complaint and PG&E's bankruptcy proceeding, it can no longer negotiate the types of compromises with the City that it has in the past.[44]

Recently, PG&E rejected the same alternate arrangement the City had used at several facilities for an affordable housing project at 681 Florida Street, even though there are no technical, safety, or reliability reasons for refusing to allow this project to obtain the same service PG&E agreed to provide at other six housing developments. During a February 21, 2019 meeting with the City and

_____

[41] Hale Decl. at ¶¶ 4-5.

[42] Complaint at 14-15.

[43] Hale Decl. at ¶¶ 8-9.

[44] *Id.* ¶¶ 18, 21-22.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111
545368.6

affordable housing developers, PG&E claimed that it was unable to agree to the same compromise because of the bankruptcy and FERC complaint. PG&E asserted that it could not go forward until this Court issued a "business as usual" determination, which PG&E claimed would be 30-45 days from the Chapter 11 filing.[45]

In another instance, PG&E seemed to suggest that it could not agree to the same alternative arrangement it has agreed to in the past—which reduces, but does not eliminate, the excessive equipment being demanded by PG&E for small City loads—until the FERC complaint is resolved. In a letter dated March 15, 2019, PG&E rejected the City's request for "low-side metering" to provide service to new electric vehicle charging stations in a parking lot owned by the City.[46] The installation of the primary switchgear required for primary service would require the elimination of a number public parking spaces and create a traffic hazard.[47] In light of PG&E's claim that the City's FERC complaint is subject to the automatic stay, its suggestion that the complaint had to be "resolved" before it could negotiate alternate arrangements with the City suggests that PG&E intends to delay service to the City indefinitely.

PG&E's refusal to provide service on the reasonable terms required by its FERC-approved WDT, creates health and safety risks associated with key City services. Recently the City applied for secondary service under the WDT to the San Francisco Fire Department Fire Boat Headquarters project at Pier 22½. The project includes replacing facilities that are over 100 years old and reconstructing two deteriorated piers—one is that completely unusable and one that is in poor condition.[48] On February 12, 2019, PG&E advised the City that primary service would be required.[49] PG&E's insistence on primary service will require major design changes and expenses for no purpose other than to comply with PG&E's arbitrary implementation of its WDT.

PG&E continues to impose unreasonable requirements on WDT service to San

---

[45] *Id.* at ¶ 19.

[46] *Id.* at ¶ 21; *id.* Exh. J.

[47] Hale Decl. at ¶ 21.

[48] *Id.* at ¶ 22.

[49] *Id.* at ¶ 22; *id.* Exh. K.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

9

545368.6

Francisco, with significant consequences for City services. PG&E seeks to use its bankruptcy petition to stifle any effort by the City to receive service according to the terms of the WDT, by precluding FERC enforcement of the tariff and refusing to agree to alternative arrangements that allow City customers to receive service.[50]

### III. THE AUTOMATIC STAY DOES NOT APPLY TO SAN FRANCISCO'S FERC COMPLAINTS

The bankruptcy court is not a haven for wrongdoers or a place to escape the enforcement of regulatory actions against a debtor. *See 3 Collier on Bankruptcy* ¶ 362.05[5][a] (Richard Levin & Henry Sommers eds. 16th ed.). "The purpose of the automatic stay is to allow a debtor to maintain the status quo in order to file a plan of reorganization, not as a sword to stop the State from enforcing its police or regulatory powers." *In re Synergy Dev. Corp.*, 140 B.R. 958, 959 (Bankr. S.D.N.Y. 1992). FERC is a governmental unit and a regulatory agency and in ruling on the claims of San Francisco regarding the WDT will be exercising its regulatory authority.

The section 362(b)(4) exception allows regulatory bodies to fulfill their duties, reflecting the "broad discretion Congress has expressly granted many administrative entities and . . . the limited authority Congress has vested in bankruptcy courts." *Bd. of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 40 (1991) (rejecting a reading of section 362(b)(4) that would "require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity").

Section 362(b)(4) excepts from the automatic stay actions and proceedings to enforce police or regulatory powers of a governmental unit. To determine whether an action is excepted from the automatic stay as a police or regulatory power, courts have developed two tests to judge the governmental action:

- the pecuniary purpose test – (is the governmental unit pursuing matters of the public safety and welfare, rather than a governmental pecuniary interest); and

- the public policy test – (is the government action designed to effectuate public

---

[50] Hale Decl. at ¶¶ 18-22.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

1  policy rather adjudicate private rights). *Berg v. Good Samaritan Hosp.*, 230 F.3d

2  1165 (9th Cir. 2000); *In re Dingley*, 852 F.3d 1143 (9th Cir. 2017).

3     Satisfaction of either test will suffice to exempt the action from the reach of the

4  automatic stay. *City & Cty. of S.F. v. Pac. Gas & Elec. Co.*, 433 F.3d 1115, 1124 (9th Cir. 2006)

5  (citing *Lockyer v. Mirant Corp*., 398 F. 3d 1098, 1108 (9th Cir. 2005)).

6     The proceedings on behalf of San Francisco pending before FERC meet the criteria for

7  the application of the regulatory exemption under section 362(b)(4) as they concern matters of public

8  safety and welfare and not the assertion of a pecuniary interest.   FERC itself has no pecuniary interest

9  in the pending proceedings regarding the application of the WDT to San Francisco. FERC's

10  determinations under the WDT will inure to all parties who seek service under the WDT, which is

11  designed to provide eligible wholesale customers interconnected to PG&E's distribution system with

12  open-access, non-discriminatory service. Although San Francisco brings this complaint based on its

13  dealings with PG&E, FERC's rulings will apply to all wholesale customers and affects the public

14  welfare.  As noted above, under the Federal Power Act, FERC has an obligation to assure that the

15  WDT, as well as "all rules and regulations affecting or pertaining" to the WDT, are just, reasonable,

16  and not unduly discriminatory. 16 U.S.C. § 824d(a).

17     Throughout the prior bankruptcy proceeding that PG&E initiated in 2001, PG&E

18  participated in contested rate proceedings at FERC involving its tariffs, and FERC regularly ruled in

19  those proceedings, noting that FERC's "actions taken under the authority granted it by the Federal

20  Power Act and the controlling regulations fit within [the section 362(b)(4)] exception, and, therefore,

21  are exempt from the automatic stay provision."[51]

22     Further, the FERC proceedings at issue here do not solely adjudicate private rights but

23  effectuate public policy under the WDT and FERC's mandate to assure that public utilities implement

24  their posted tariffs as required under the Federal Power Act.[52]  San Francisco's WDT-related disputes

25

26  _____

27  [51] *Pac. Gas & Elec. Co.*, 106 FERC ¶ 61,144, P 9 (2004) (citing *Va. Elec. & Power Co.*, 84 FERC ¶ 61,254 (1998); *Century Power Corp.*, 56 FERC ¶ 61,087 (1991)); *Pac. Gas & Elec. Co.*, 106 FERC ¶ 61,058, P 13 (2004) (same); *Pac. Gas & Elec. Co.*, 106 FERC ¶ 61,036, P 15 (2004) (same).

28  [52] Mapes Decl. at ¶ 3.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

11

545368.6

with PG&E are well-within the exception of section 362(b)(4) of the Bankruptcy Code. PG&E has not formally asserted that the automatic stay applies to the initial complaint proceeding and related disputes or the quarterly filings proceedings at FERC (discussed in Parts II.B.1 and II.B.2, *supra*). Nor has PG&E asserted that the automatic stay applies to its pending transmission rate case at FERC, where it seeks to recover large increases from customers.

PG&E has asserted that the automatic stay applies to San Francisco's January 2019 complaint proceeding, this proceeding likewise falls squarely within the exception of section 362(b)(4) of the Bankruptcy Code. San Francisco filed the 2019 Complaint pursuant to sections 206, 306, and 309 of the Federal Power Act,[53] and the proceeding involves FERC's statutory duty under the Federal Power Act to ensure that PG&E is not administering its WDT in a manner that is "unjust, unreasonable, unduly discriminatory or preferential."[54]

That duty is at the core of FERC's regulatory obligations. Accordingly, FERC's carrying out of that duty through the implementation and enforcement of a tariff that PG&E has filed with FERC (which includes the price, terms and conditions of tariff service) is regulatory in nature, not merely the adjudication of contractual rights. *See In re Pac. Gas & Elec. Co.*, 263 B.R. 306, 319-20 (Bankr. N.D. Cal. 2001) (concluding that the California Public Utilities Commission's rate-setting function implements public policy and therefore falls under the exception of section 362(b)(4)).

Indeed, in *In re Mirant Corp.*, 378 F.3d 511, 523 (5th Cir. 2004) a case involving FERC's authority in the bankruptcy context, the Court of Appeals for the Fifth Circuit affirmed that "[t]he Bankruptcy Code clearly anticipates ongoing governmental regulatory jurisdiction while a bankruptcy proceeding is pending." *Id.*

As an example of FERC's continuing regulatory responsibilities, the *Mirant* court specifically cited to the FERC's obligations under section 206 of the Federal Power Act, which the court notes allow "FERC to modify any filed rate that, after a hearing initiated either upon its own

---

[53] 16 U.S.C. §§ 824e, 825e, 825h.

[54] 16 U.S.C. § 824e(a); Mapes Decl. at ¶ 3.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111
545368.6

motion or upon a complaint, it determines to be unjust or unreasonable."[55] *See also Pac. Gas & Elec. Co. v. Cal. Power Exch. Corp.*, 95 FERC ¶ 61,020, at 61,046 (2001) (rejecting the argument that the section 362(a) automatic stay provision applied to complaints brought against the California Power Exchange Corporation regarding the implementation of its tariff, because FERC was "exercising [its] regulatory power under Sections 205 and 206 of the Federal Power Act as permitted by Section 362(b)(4) of the Bankruptcy Code to issue an order that does not threaten the bankruptcy court's control over the property of the bankruptcy estate") (internal citations omitted).

Further, San Francisco's pending proceedings with FERC and the recently filed complaint seek to ensure that during the post-petition period, San Francisco receives electric service on fair and non-discriminatory terms under PG&E's WDT, an open-access, FERC-jurisdictional tariff of general applicability. PG&E's obligation to provide service according to the terms and conditions of that tariff does not cease because it is in bankruptcy. San Francisco alleges that PG&E has improperly denied and continues to deny the City tariff service contrary to the terms of the FERC-approved WDT. Such PG&E practices are not only contrary to the terms of the WDT, but are also contrary to the manner in which PG&E treats its other wholesale distribution customers.[56] PG&E cannot use its voluntary bankruptcy petition to shield itself from its ongoing obligations to comply with the WDT, and to continue to offer non-discriminatory service under that tariff to any eligible customer.

It is clear that PG&E is using its bankruptcy filing as not only a shield from its responsibilities under the WDT but as a sword against San Francisco's legitimate complaints as to PG&E's implementation of the WDT. PG&E has affirmatively asserted the application of the stay in the recently filed WDT proceedings initiated by San Francisco.[57] As set forth in Ms. Hale's Declaration, PG&E has also claimed since the filing of its bankruptcy case that it can no longer negotiate the compromises it has in the past because of its bankruptcy filing.[58] It is apparent that

---

[55] 16 U.S.C. § 824e(a).

[56] Complaint at 24-25, 30-31.

[57] Mapes Decl., Exh. C.

[58] Hale Decl. at ¶¶ 19-22.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

545368.6

13

PG&E is strategically using the bankruptcy case to further delay its proper application of the WDT to San Francisco's detriment. It is equally apparent that without the ongoing FERC proceedings it will continue to do so. It is precisely these types of actions by debtors that section 362(b)(4) is designed to avoid.

The Supreme Court has explained that the filing of a bankruptcy petition does not provide "*carte blanche* to ignore non-bankruptcy law."[59] Congress has likewise required, in 28 U.S.C. § 959(b), that debtors "shall manage and operate the property . . . according to the requirements of the valid laws of the State in which such property is situated," which courts have long held requires debtors to comply with federal law.[60] PG&E, despite being in bankruptcy, continues to have legal obligations to carry on its public utility business in a manner consistent with FERC's requirements.

San Francisco requests that this Court make the determination that the automatic stay does not apply to all of San Francisco's pending FERC proceedings relating to the application of the WDT to San Francisco and that those proceedings may continue unabated under Bankruptcy Code Section 362(b)(4).

## IV.     CAUSE EXISTS FOR THE LIFTING OF THE AUTOMATIC STAY UNDER §352(d)(1).

Assuming, *arguendo*, that the Court should decide that the exception under section 362(b)(4) does not apply in this instance, nonetheless, this Court should grant relief from the automatic stay under 11 U.S.C. §362(d)(1) for cause to allow San Francisco to pursue its pending actions with FERC regarding the WDT.

Section 362(d)(1) provides that the automatic stay may be lifted by the Court for "cause." "Cause" has no clear definition in the Bankruptcy Code and is thus analyzed on a case-by-

---

[59] *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 502 (1986).

[60] *See, e.g.*, *Norris Square Civic Ass'n v. Saint Mary Hosp.*, 86 B.R. 393, 398 (Bankr. E.D. Pa. 1988) ("We believe that it is inescapable to avoid the conclusion that 28 U.S.C. § 959(b) requires a debtor to conform with applicable federal, state, and local law in conducting its business."); *In re Commonwealth Oil Ref. Co.*, 58 B.R. 608, 616 (Bankr. W.D. Tex. 1985) ("This provision [28 U.S.C. § 959(b)] requires [a debtor] to comply with federal law.") (internal citations omitted).

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

545368.6

case basis. *In re Tucson Estates, Inc*., 912 F.2d 1162, 1166 (9th Cir. 1990).

In determining whether cause exists to permit an action to proceed in a non-bankruptcy forum, courts will analyze the twelve factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984). *See also, In re Roger*, 539 B.R. 837, 844-45 (C.D. Cal. 2015); *In re Howrey LLP*, 492 B.R. 19, 24 (Bankr. N.D. Cal. 2013); *In re Plumberex Specialties Prods., Inc*., 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004). The twelve factors, commonly referred to as the *Curtis* factors, are:

1.     Whether the relief will result in partial or complete resolution of issues;

2.     The lack of any connection with or interference with the bankruptcy case;

3.     Whether the foreign proceeding involves the debtor as a fiduciary;

4.     Whether a specialized tribunal has been established to hear the particular cause of action and whether the tribunal has expertise to hear such cases;

5.     Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6.     Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7.     Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8.     Whether the judgment claim arising from the foreign action is subject to equitable subordination;

9.     Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f);

10.     The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11.     Whether the foreign proceedings have progressed to a point where the parties are prepared for trial;

12.     The impact of the stay and the "balance of hurt."

The Ninth Circuit has recognized that "the *Curtis* factors are appropriate, non-exclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111
545368.6

15

pending litigation to continue in another forum" *In re Kronemeyer*, 405 B.R. 915, 921 (9th Cir. BAP 2009). While the *Curtis* factors are used to determine the existence of cause, not all of the factors are relevant in every case, nor is a court required to give each factor equal weight. *Plumberex*, 311 B.R. at 560.

### A. Application of the *Curtis* Factors

Upon review of the *Curtis* Factors, several do not apply. Those that do apply, however, are either neutral or, on balance, in favor of relief from the automatic stay for continuance of the FERC proceeding.

#### 1. Whether the relief will result in partial or complete resolution of the issues.

The resolution of the issues in the FERC proceeding regarding the application of the WDT by PG&E towards San Francisco will undoubtedly result in a complete resolution of the issues. FERC has exclusive jurisdiction over these issues under the Federal Power Act. Unlike the pending issues before this Court in the *PG&E v. FERC* adversary proceeding (A.P. # 19-3003) with respect to the power purchase agreements in which it has been asserted that the bankruptcy court and FERC have concurrent jurisdiction, there is no applicable bankruptcy interest or conflicting statutory power in the application of the WDT. The WDT is not subject to rejection and thus the issues that are being litigated before this Court in the above referenced adversary proceeding do not apply. Thus, FERC will have exclusive jurisdiction to determine whether PG&E is properly complying with the WDT and can make a complete resolution with respect to the issues therein. This factor weighs in favor of relief from the stay.

#### 2. The lack of any connection with, or interference with the bankruptcy case.

The interference with the bankruptcy case is the most important factor in determining whether a non-bankruptcy forum litigation should proceed. *Roger*, 539 B.R. at 846. Here, the FERC proceedings regarding the WDT will not interfere with the bankruptcy case. As noted above, this is not a situation where a power purchase agreement is being rejected. It is a proceeding to interpret the application of the WDT as it applies to providing wholesale distribution service to San Francisco. These FERC proceedings will not interfere with any bankruptcy-related powers or jurisdictions for PG&E.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

16

545368.6

Likewise, the FERC proceedings are not related to any of the wildfire-related claims that are at issue and, as stated by PG&E at the outset of these cases, were the primary factor for PG&E being in the bankruptcy case. The FERC proceedings are related to the operation of PG&E under the WDT, a discrete matter not related to any reorganization issues. This is a regulatory matter that PG&E regularly encounters in its ordinary course of business and for which it has more than adequate resources to address without interfering with PG&E's outside counsel or advisors employed for the reorganization process. As noted above, FERC proceedings continued in the prior PG&E bankruptcy case without disturbing the reorganization process. *See supra* note 51. There may be a minor effort expended by PG&E to address this issue but no more than what it will do in the ordinary course of its business with FERC applying the terms of the WDT. At best this factor is neutral.

**3.** **Whether the foreign proceeding involves the debtor as a fiduciary.**

This factor does not apply.

**4.** **Whether a specialized tribunal has been established to hear the particular cause of action and whether the tribunal has expertise to hear such cases.**

This factor favors heavily in the determination that the stay should be lifted. FERC is a specialized tribunal that has been established under the Federal Power Act to hear these types of claims and has expertise to hear claims under the WDT. 16 U.S.C. §§ 824d, 824e. FERC has exclusive jurisdiction under the Federal Power Act over the tariff at issue, and it regularly hears claims of this nature. 16 U.S.C. §§ 824d, 824e.[61] The FERC actions related to the WDT are highly technical proceedings and not matters that a bankruptcy court typically handles. As noted above, there is no conflict in the pending San Francisco FERC proceedings with any bankruptcy-specific issues for which this Court also has jurisdiction such as the determination regarding assumption or rejection of executory contracts. At issue here is the proper interpretation of highly technical aspects of the WDT that FERC is particularly qualified to handle. This factor weighs heavily in favor of relief from the stay.

---

[61] Mapes Decl. at ¶¶ 3-4.

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

17

545368.6

5. **Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.**

This factor does not apply.

6. **Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.**

This factor does not apply.

7. **Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.**

These tariff-specific FERC proceedings are potentially of interest to other eligible customers under PG&E's WDT, but will not prejudice the interests of PG&E's creditors, the creditors' committee, and other interested parties. The WDT specifies the rate, terms, and conditions of wholesale delivery service for a particular class of eligible customers, including San Francisco. In these proceedings, San Francisco has disputed PG&E's implementation of the terms and conditions of WDT service, but it does not allege that the rates for service established by the WDT are unjust or unreasonable. The focus of these proceedings, moreover, is PG&E's ongoing and future implementation of its WDT. To the extent that FERC may determine that refunds are due from PG&E for excessive charges PG&E has previously imposed, payment of any such refunds can and will be determined by this court through its claims procedures. This is a unique relationship between PG&E and San Francisco that is highly unlikely to impact any other creditors, the creditors' committees or other interested parties. It would certainly not impact or set precedents for the dominant claims that are at issue in this estate arising from the pre-petition wildfire claims or for any other tort claims that could be involved in this case. This factor favors relief from stay.

8. **Whether the judgment claim arising from the foreign action is subject to equitable subordination.**

This factor does not apply.

9. **Whether movement success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f).**

This factor does not apply.

Greene Radovsky
Maloney Share &
Hennigh llp
Four Embarcadero
Ctr, Suite 4000
San Francisco, Ca
94111
545368.6

18

**10.** **The interests of judicial economy and the expeditious and economical determination of litigation for the party.**

Judicial economy would be well served by granting relief from stay. This is a non-core proceeding and a matter in which the bankruptcy court will likely never be involved. It is neither a proceeding that arises under title 11 nor arises in a case under title 11. These proceedings involve a highly technical matter that should be heard in the specialized tribunal established under federal law to deal with these specific disputes. FERC has been dealing with these issues continually since 2014. There is no reason that these matters should be heard in any other forum than FERC and the bankruptcy court has no other countervailing jurisdictional issues. Having FERC resolve this matter would result in judicial economy. This factor favors relief from stay.

**11.** **Whether the foreign proceedings have progressed to a point where the parties are prepared for trial.**

This issue does not particularly weigh in favor of lifting the automatic stay nor does it heavily weigh in favor of the stay being left in place. As noted in the Statement of Facts, a matter that has been pending since 2014 was litigated for seven days before an Administrative Law Judge and is still at issue with FERC. Numerous disputes regarding PG&E's quarterly filings with FERC that have been raised by the City remain pending. The most recent matter that was filed immediately prior to the bankruptcy case should also be addressed along with these other matters as they relate to the same or similar issues under the WDT. As is noted, FERC proceedings do not proceed quickly; therefore it is imperative that the matters not be delayed any further so that the parties can move toward resolution. This factor is either neutral or at best, slightly in favor of lifting the stay to allow these matters to proceed.

**12.** **The impact of the stay and the "balance of hurt."**

As noted in the Declaration of Barbara Hale, the City and County of San Francisco has been harmed by PG&E's actions in their interpretation of the WDT. The City has been forced to build facilities that are typically ten times more expensive than is necessary. Hale Decl. at ¶¶ 8, 14. In some instances the City has resorted to taking retail electrical service from PG&E at higher costs in order to complete its projects. *Id.* at ¶¶ 10, 12. The City believes that this is a

19

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

545368.6

competitive strategy of PG&E that violates its responsibilities under the WDT. That harm continues to this day as set forth in Ms. Hale's declaration in that numerous projects within the City and County of San Francisco have been delayed due to the inability of the City to have PG&E provide the appropriate connection services to the City under the WDT. *Id.* at ¶¶ 8, 9 n.14. The City is faced with mounting costs for the delay and the misinterpretation of the WDT that are estimated to be in excess of $8,000,000. *Id.* at ¶ 16.

On the other hand, lifting the automatic stay so that the FERC proceedings will continue does not prejudice PG&E beyond what it normally would be required to do during the ordinary course of its business. PG&E is obligated to provide open access wholesale distribution service under the rates, terms, and condition specified in the WDT, and it must comply with its regulator's determinations with respect to the WDT. A determination that a secondary rather than primary connection is appropriate for a WDT-served load costs PG&E nothing; PG&E is fully compensated for the costs of providing that service by the PG&E-filed, and FERC-approved, secondary WDT rate. The additional cost of PG&E's improper determination as to the type of connection required to receive WDT service is borne by City and County of San Francisco, not by PG&E. Further delaying the FERC proceedings clearly impacts the City more than PG&E. The balance of hurt factor heavily favors relief from the stay.

## V. CONCLUSION

It is abundantly clear that the San Francisco FERC proceedings that are currently pending are regulatory matters that fall within the section 362(b)(4) exception. As stated above, these proceedings seek proper treatment by PG&E under the WDT which is applicable generally to all wholesale customers.

Further, even if the FERC proceedings were not excepted from the automatic stay, there clearly is cause for lifting the stay to allow them to proceed under the criteria set out in the *Curtis* case and adopted generally in the Ninth Circuit.

WHEREFORE, San Francisco prays for relief as follow:

1. For an order determining that the automatic stay does not apply to the San Francisco FERC proceedings described herein pursuant to 11 U.S.C. § 362(b)(4);

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

20

545368.6

Case: 19-30088    Doc# 1535    Filed: 04/18/19    Entered: 04/18/19 07:55:22    Page 25
of 26

2. In that alternative, for an order granting San Francisco relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1) in order to continue to prosecute the San Francisco FERC proceedings described herein against PG&E;

3. For a waiver of the 14-day stay that would otherwise be imposed upon the granting of such relief under Bankruptcy Rule 4001(a)(3);

4. For such further and other orders that are appropriate in the circumstances.

Dated: April 18, 2019     Respectfully Submitted,

GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP

By: /s/ Edward Tredinnick
  Edward J. Tredinnick
Attorneys for Creditor,
City and County of San Francisco

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
CTR, SUITE 4000
FOUR EMBARCADERO
SAN FRANCISCO, CA
94111

21

545368.6