# Exhibit "H"

[Confirming City Policy that the San Francisco Public Utilities Commission (SFPUC) Provide Electricity to City Projects - Urging Pacific Gas & Electric to Cooperate with the SFPUC to Provide City Power to Projects]

**Resolution confirming the City's policy that the San Francisco Public Utilities Commission provide electricity to City projects where feasible; and urging Pacific Gas & Electric to work with the San Francisco Public Utilities Commission to serve City electric customers efficiently.**

WHEREAS, In 1913, President Woodrow Wilson signed into law the Raker Act, which provided San Francisco the rights to construct the Hetch Hetchy Water and Power System and required the production and delivery of clean energy to San Francisco; and

WHEREAS, The Raker Act intended to provide the economic benefits of cheap and clean power to San Francisco to provide an alternative to service from Pacific Gas and Electric (PG&E); and

WHEREAS, The California Constitution allows local governments to provide electricity, and the City's Charter establishes that the San Francisco Public Utilities Commission (SFPUC) is the City's electricity provider; and

WHEREAS, The City and County of San Francisco's production and delivery of clean energy from Hetch Hetchy provides clean, reliable, and safe electric service as well as economic benefits to the City; and

WHEREAS, The clean power generated and delivered by the SFPUC is 100% greenhouse-gas free, and therefore helps to meet the goals of Ordinance 81-08 (on file with the Clerk of the Board of Supervisors in File No. 180693 which is hereby declared to be a part of this Resolution as if set forth fully herein) which set a goal of San Francisco not using any fossil-fuel power by 2030; and

WHEREAS, The clean power generated and delivered by the City is used to power our essential services, including, but not limited to, our hospitals, parks, schools, airport, and MUNI; and

WHEREAS, Electric service provided by the SFPUC costs less than the comparable service from PG&E, allowing city-funded programs to stretch their limited budgets, and revenues from this service are invested back into the City's operations and used to fund additional clean energy facilities and services that directly benefit the City; and

WHEREAS, To preserve and maximize these benefits, Chapter 99 of the San Francisco Administrative Code mandates that City buildings, developments, and projects receive electric service from SFPUC when feasible; and

WHEREAS, The City allows PG&E to provide service in San Francisco subject to a non-exclusive franchise agreement that the City entered with PG&E in 1939, which means that the City or another entity authorized by the City may also provide such service, and

WHEREAS, PG&E opposed adoption of the Raker Act and since its passage has frequently obstructed the City's provision of electric service. From 1925 to 1945, PG&E refused to deliver City power over PG&E's transmission and distribution system, instead agreeing only to buy the power from San Francisco for delivery to PG&E's customers; and

WHEREAS, In 1940, the United States Supreme Court found that the Raker Act prohibited San Francisco from selling power to PG&E for delivery to PG&E's customers; and

WHEREAS, In 1945, PG&E agreed to deliver Hetch Hetchy power to San Francisco customers considered "municipal load," but PG&E continued to dispute project-by-project which customers met this definition; and

WHEREAS, Similar arrangements continued for the next 70 years, during which time PG&E refused to cooperate in providing service to certain customers, including, for example,

tenants of City property, City construction projects, and certain housing projects supported by City funds, and leading at times to litigation; and

WHEREAS, PG&E provides distribution service to approximately 89% of the total electric demand in San Francisco, and the City provides service to approximately 11%; and

WHEREAS, The City has not constructed electric distribution facilities to duplicate those of PG&E, so its provision of electric service to most customers requires it to pay PG&E for the use of PG&E's facilities; in addition, in many cases the City pays PG&E to construct new facilities needed to serve City customers; and

WHEREAS, San Francisco currently pays PG&E approximately $10,000,000 per year to deliver power to City customers; the City also pays PG&E millions of dollars each year to construct facilities needed to serve City customers; and

WHEREAS, The City also pays for transmission service charges that increase quarterly, totaling about $17,700,000 in 2016 and $19,700,000 in 2017; while this is paid directly to the California Independent System Operator (ISO, the independent entity that operates PG&E's transmission system), a substantial portion of these charges ultimately is paid to PG&E; and

WHEREAS, The Federal Energy Policy Act of 1992 and rules adopted by the Federal Energy Regulatory Commission (FERC) (on file with the Clerk of the Board of Supervisors in File No. 180693 which is hereby declared to be a part of this Resolution as if set forth fully herein) now require privately owned utilities like PG&E to allow publicly owned utilities like the SFPUC to use their facilities, with the goal of providing efficient electric service to benefit consumers; FERC adopts standard terms and rates that are supposed to ensure fair, non-discriminatory service; and

WHEREAS, When the San Francisco and PG&E interconnection agreement expired in 2015, the City began purchasing transmission service from the ISO subject to the standard

rates and terms approved by the FERC; the City was entitled to receive distribution service in a similar manner subject to the standard requirements approved in PG&E's Wholesale Distribution Tariff ("Tariff") (on file with the Clerk of the Board of Supervisors in File No. 180693 which is hereby declared to be a part of this Resolution as if set forth fully herein); and

WHEREAS, PG&E disputed the City's rights to this service and sought to impose arbitrary terms that unfairly increase the City's costs and impair service to longstanding City customers including those providing essential services; and

WHEREAS, The City and PG&E spent several years attempting to resolve these disputes and enter into replacement agreements that will implement the Tariff's standard terms, conditions, engineering requirements, and pricing and eventually litigated the case before the FERC and are awaiting a decision on that case; and

WHEREAS, During the pendency of that case PG&E has imposed arbitrary technical requirements that create delays and increase costs for City customers, and in some cases, prevent the City from providing electricity to essential services; and

WHEREAS, These arbitrary technical standards are not required by the FERC-approved Tariff, not required for safe and reliable service, not consistent with what PG&E requires of other customers, and not reflective of good utility practice; and

WHEREAS, PG&E's arbitrary requirements for the type of equipment needed for particular customers has harmed City departments and customers in many cases. In general, customers using large amounts of electricity (such as facilities like Zuckerberg San Francisco General at 3,381 Kilovolt-amp (kVA), Oceanside Water Treatment Plant at 2,075 kVA, and Berry Street Pump Station at 1,687 kVA) would receive "primary service," which can result in lower rates but requires equipment that takes up substantial space; also in general, customers using smaller amounts of electricity (such as facilities like the Claire Lilienthal School at 461 kVA, Randall Museum at 100 kVA, and Kezar Gymnasium at 232 kVA) can be appropriate

| | |
|---|---|
| 1 | served by "secondary service" requiring much less expensive infrastructure equipment and far |
| 2 | less space; and |
| 3 | WHEREAS, PG&E does not require primary service for its own customers unless the |
| 4 | customer has a power load of 3,000 kVA, and does not even allow a customer to choose |
| 5 | primary service unless the power load is at least 1,000 kVA, but PG&E has recently |
| 6 | demanded that City customers take primary service for a load of 75 kVA or more; and |
| 7 | WHEREAS, PG&E has imposed these discriminatory requirements in the following |
| 8 | cases, among others: Ping Yuen Housing rehabilitation at 838 Pacific Avenue (558 kVA), |
| 9 | Southeast Health Center at 2401 Keith Street (200 kVA), Golden Gate Park Tennis Center on |
| 10 | Bowling Green Drive (300 kVA), and Harvey Milk Elementary at 4235 19th Street (300 kVA); |
| 11 | and |
| 12 | WHEREAS, PG&E's arbitrary determinations regarding primary and secondary service |
| 13 | waste City agency staff time, delay construction of City projects, significantly increase the cost |
| 14 | of obtaining electric service, and have caused essential program space to be reassigned to |
| 15 | accommodate unjustified infrastructure; and |
| 16 | WHEREAS, PG&E's arbitrary requirements also prevent the City from providing |
| 17 | temporary power to serve the construction of City projects, including affordable housing |
| 18 | projects located at 1296 Shotwell and 490 South Van Ness; for large projects with a long |
| 19 | construction phase, this has significant impacts, including the loss of revenue, increased costs |
| 20 | to departments, and increased emissions of carbon dioxide; and |
| 21 | WHEREAS, The City and PG&E have reached a loose agreement to prevent further |
| 22 | delays and excessive costs on 17 City projects now underway; and |
| 23 | WHEREAS, San Francisco has a known pipeline of City projects beyond these 17 as |
| 24 | well as currently undetermined future projects in response to San Francisco residents' needs |
| 25 | for public facilities and services; now, therefore, be it |

1    RESOLVED, That the Board of Supervisors urges PG&E to comply with federal, state
2    and local laws and rules, including its Wholesale Distribution Tariff approved by FERC; urges
3    PG&E to stop imposing technical requirements that are not mandated by the Tariff or
4    necessary to ensure safety and reliability; and further urges PG&E to work in good faith with
5    the SFPUC to efficiently serve City customers; and further urges the City and PG&E to work
6    as a team to come to terms for long-term service; and, be it

7    FURTHER RESOLVED, That the Board of Supervisors expects both the City and
8    PG&E to designate appropriate staffing and resources to ensure timely and efficient
9    processing of City applications for temporary and permanent electric power; and be it

10    FURTHER RESOLVED, That the Board of Supervisors expects all City agencies and
11    projects to work with SFPUC to ensure the use of City electric service, consistent with the
12    Charter and Chapter 99 of the Administrative Code; and, be it

13    FURTHER RESOLVED, That the SFPUC for the next two years shall provide to the
14    Board of Supervisors a quarterly report that identifies the following: status of all City projects
15    with applications to SFPUC for electric service, including project schedules and financing and
16    other deadlines; project sponsor and SFPUC concerns in securing temporary and permanent
17    power, including any obstacles that could increase costs or delay service to City customers;
18    and the status of disputes with PG&E before the FERC or in other forums; each report should
19    identify the financial, environmental, and other costs to the City in each case; and, be it

20    FURTHER RESOLVED, That the San Francisco Board of Supervisors hereby directs
21    the Clerk of the Board to transmit copies to Pacific Gas & Electric with a request to take all
22    action necessary to achieve the objectives of this resolution.
23
24
25

Supervisors Ronen; Peskin
BOARD OF SUPERVISORS                                                                     Page 6



**City and County of San Francisco**

**Tails**

**Resolution**

City Hall
1 Dr. Carlton B. Goodlett Place
San Francisco, CA 94102-4689

**File Number:** 180693

**Date Passed:** July 10, 2018

Resolution confirming the City's policy that the San Francisco Public Utilities Commission provide electricity to City projects where feasible; and urging Pacific Gas & Electric to work with the San Francisco Public Utilities Commission to serve City electric customers efficiently.

July 10, 2018 Board of Supervisors - ADOPTED
   Ayes: 10 - Cohen, Breed, Fewer, Kim, Peskin, Ronen, Sheehy, Stefani, Tang and Yee
   Absent: 1 - Safai

File No. 180693

**I hereby certify that the foregoing Resolution was ADOPTED on 7/10/2018 by the Board of Supervisors of the City and County of San Francisco.**

*[signature]*
Angela Calvillo
Clerk of the Board

Unsigned
_____
London N. Breed
Mayor

7/20/2018
_____
Date Approved

I hereby certify that the foregoing resolution, not being signed by the Mayor within the time limit as set forth in Section 3.103 of the Charter, or time waived pursuant to Board Rule 2.14.2, became effective without his approval in accordance with the provision of said Section 3.103 of the Charter or Board Rule 2.14.2.

*[signature]*
Angela Calvillo
Clerk of the Board

7/22/18
Date

Case: 19-30088   Doc# 1537-8   Filed: 04/18/19   Entered: 04/18/19 08:12:56   Page 8 of 8