# Mapes Declaration

# Exhibit "B" – Part 7

**Pacific Gas and Electric Company**®
San Francisco, California
U 39

**ELECTRIC RULE NO. 2**    Sheet 9
DESCRIPTION OF SERVICE

D.   GENERAL LOAD LIMITATIONS (Cont'd.)

2.   THREE-PHASE SERVICE (2,000 VOLTS OR LESS)

| Nominal Voltage | Minimum Load Requirements | Maximum Demand Load Permitted | |
| --- | --- | --- | --- |

a.   Secondary service normally available from overhead primary distribution systems (this may require the installation of underground primary to supply a transformer at ground level.):

| | | | |
| --- | --- | --- | --- |
| 208Y/120 | Demand load justifies a 75 kVa transformer | 1,000 kVa | (T) |
| 240* | 5 hp, 3-phase connected | 300 kVa | \| |
| 240/120 | 5 hp, 3-phase connected | 300 kVa | \| |
| 480 | 30 kVa, 3-phase demand | 3,000 kVa | \| |
| 480Y/277 | 30 kVa, 3-phase demand | 3,000 kVa | (T) |

b.   Secondary service from underground primary distribution systems (where PG&E maintains existing 3-phase primary circuits):

| | | | |
| --- | --- | --- | --- |
| 208Y/120 | Demand load justifies a 75 kVa transformer | 1,000 kVa | (T) |
| 240 | 10 hp, 3-phase connected | 300 kVa | \| |
| 240/120 | 10 hp, 3-phase connected | 300 kVa | \| |
| 480Y/277 | Demand load justifies a 75 kVa transformer | 3,000 kVa | (T) |

c.   Secondary service from underground network systems (only in portions of downtown San Francisco and Oakland):

| | | | |
| --- | --- | --- | --- |
| 208Y/120 | None | 2,000 kVa | (T) |
| 480Y/277 | 1,200 kVa demand load | As required | (T) |

---

\*   Limited availability, consult PG&E.

(Continued)

| *Advice* | 3353-E | *Issued by* | *Date Filed* | October 16, 2008 |
| --- | --- | --- | --- | --- |
| *Decision* | | **Brian K. Cherry** | *Effective* | November 15, 2008 |
| | | *Vice President* | *Resolution* | |
| | | *Regulatory Relations* | | |

**Pacific Gas and Electric Company**®

San Francisco, California

U 39

| | Revised | Cal. P.U.C. Sheet No. | 27765-E |
|---|---|---|---|
| Cancelling | Revised | Cal. P.U.C. Sheet No. | 11266-E |

**ELECTRIC RULE NO. 2**
DESCRIPTION OF SERVICE

Sheet 10

D.   GENERAL LOAD LIMITATIONS (Cont'd.)

2.   THREE-PHASE SERVICE (2,000 VOLTS OR LESS) (Cont'd.)

d.   Where three-phase service is supplied, PG&E reserves the right to use banks of single-phase transformers or three-phase transformers.                    (T)

e.   Three-phase service will be supplied on request for installations aggregating less than the minimums listed  above but not less than 3 hp, three-phase, where existing transformer capacity is available.  If three-phase service is not readily available, or for service to loads less than 3 hp, service shall be provided in accordance with either Section H or I of this rule regarding Connected Load Ratings and Special Facilities.

f.   Three-phase metering for one service voltage supplied to installations on one premise at one delivery location normally is limited to a maximum of a 4,000 ampere service rating.  Metering for larger installations, or installations having two or more service switches with a combined rating in excess of 4,000 amperes, or service for loads in excess of the maximum demand load permitted, may be installed provided approval of PG&E has been first obtained as to the number, size, and location of switches, circuits, transformers and related facilities.  Service supplied to such approved installations in excess of one 4,000 ampere switch or breaker at one service delivery point may be totalized for billing purposes.

(Continued)

| | | | | |
|---|---|---|---|---|
| *Advice* | 3353-E | *Issued by* | *Date Filed* | October 16, 2008 |
| *Decision* | | **Brian K. Cherry** | *Effective* | November 15, 2008 |
| | | *Vice President* | *Resolution* | |
| | | *Regulatory Relations* | | |

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 3 of 23

**ELECTRIC RULE NO. 2**                        Sheet 11
DESCRIPTION OF SERVICE

D.   GENERAL LOAD LIMITATIONS (Cont'd.)

   3.   THREE-PHASE SERVICE (OVER 2,000 VOLTS)

      a.   Following are three-phase voltages that are transformed from higher existing primary distribution voltages and provided only as isolated services for a single applicant where the applicant's demand load justifies, as determined by PG&E, the installation of the minimum size transformer bank used by PG&E:

| Nominal Voltage | Minimum Size Bank Installed | Maximum Demand Load Permitted | |
| --- | --- | --- | --- |
| 2,400 (See Note 1) | 500 kVa | 5,000 kVa | (T) |
| 4,160 (See Note 1) | 500 kVa | 5,000 kVa | \| |
| 12,000 (See Notes 1 and 2) | 1,000 kVa | 10,000 kVa | (T) |

      b.   Following are the standard primary voltages, one of which may be available without transformation from existing primary distribution lines in the area:

| | | | |
| --- | --- | --- | --- |
| 4,160 | 100 kVa | 4,000 kVa | (T) |
| 12,000 (See Note 1) | 500 kVa | 12,000 kVa | \| |
| 17,200 | 500 kVa | 15,000 kVa | \| |
| 20,780 | 500 kVa | 20,000 kVa | (T) |

      Note 1:  Not available in the network areas in portions of downtown San Francisco and Oakland.

      Note 2:  Not available where existing primary is 17,200 volts.

(Continued)

| Advice | 3353-E | Issued by | Date Filed | October 16, 2008 |
| Decision | | **Brian K. Cherry** | Effective | November 15, 2008 |
| | | *Vice President* | Resolution | |
| | | *Regulatory Relations* | | |

Case: 19-30088   Doc# 1538-8   Filed: 04/18/19   Entered: 04/18/19 08:20:57   Page 4 of 23

**ELECTRIC RULE NO. 2**                    Sheet 12
DESCRIPTION OF SERVICE

D.   GENERAL LOAD LIMITATIONS (Cont'd.)

   3.   THREE-PHASE SERVICE (OVER 2,000 VOLTS) (Cont'd.)

      c.   Applicants with minimum demand loads of 4,000 kVa may elect to take   (T)
delivery at the available transmission voltage and provide their own
substation facilities.  The availability of transmission voltages shall be
determined by PG&E.  Where a substation on an applicant's property is
supplied from a transmission voltage source, the metering may be installed,
at PG&E's option, on the secondary side of the transformers and may be
subject to a transformer loss adjustment in accordance with Section B.4 of
this Rule.

      d.   For its operating convenience and necessity, PG&E may elect to supply an
applicant whose demand load is in excess of 2,000 kVa from a substation on   (T)
the applicant's premises supplied from a transmission source.  Refer to
Rule 16 for additional information regarding transformers located on the
applicant's premises.

      e.   Three-phase service outside the limits of Section D.3 may be available but
only if feasible and approved by PG&E.

      f.   PG&E reserves the right to change its distribution or transmission voltage to
another standard service voltage when, in its judgment, it is necessary or
advisable for economic reasons or for proper service to its customers.
Where a customer is receiving service at the voltage being changed, the
customer then has the option to:  (1) accept service at the new voltage,
(2) accept service at the secondary side of an additional stage of
transformation to be supplied by PG&E at a location on the customer's
premises in accordance with PG&E's requirements, or (3) contract with
PG&E for an additional stage of transformation to be installed as special
facilities (including any applicable Contributions in Aid of Construction taxes)
under the provisions of Section I, below, whereby the customer will be
considered as accepting service at the primary side of the additional stage of
transformation.  Metering not relocated to the primary side of the additional
stage of transformation will be subject to a transformer loss adjustment in
accordance with Section B.4 of this Rule.  The option to contract with PG&E
for an additional stage of transformation (option 3, above) is available only
once in conjunction with a change in standard voltage by PG&E.

(Continued)

| | | | |
| --- | --- | --- | --- |
| *Advice* | 3353-E | *Issued by* | *Date Filed* | October 16, 2008 |
| *Decision* | | **Brian K. Cherry** | *Effective* | November 15, 2008 |
| | | *Vice President* | *Resolution* | |
| | | *Regulatory Relations* | | |

Case: 19-30088   Doc# 1538-8   Filed: 04/18/19   Entered: 04/18/19 08:20:57   Page 5
of 23

| | Revised | Cal. P.U.C. Sheet No. | 11269-E |
|---|---|---|---|
| Cancelling | Revised | Cal. P.U.C. Sheet No. | 10831-E |

**Pacific Gas and Electric Company®**
U 39    San Francisco, California

**ELECTRIC RULE NO. 2**
DESCRIPTION OF SERVICE

D.   GENERAL LOAD LIMITATIONS (Cont'd.)

4.   LOAD BALANCE

The applicant must balance his demand load as nearly as practicable between the two sides of a three-wire single-phase service and between all phases of a three-phase service.  The difference in amperes between any two phases at the customer's peak load should not be greater than 10 percent or 50 amperes (at the service delivery voltage), whichever is greater; except that the difference between the load on the lighting phase of a four-wire delta service and the load on the power phase may be more than these limits.  It will be the responsibility of the customer to keep his demand load balanced within these limits.

E.   PROTECTIVE DEVICES

1.   It shall be the applicant's responsibility to furnish, install, inspect and keep in good and safe condition at his own risk and expense, all appropriate protective devices of any kind or character, which may be required to properly protect the applicant's facilities.  PG&E shall not be responsible for any loss or damage occasioned or caused by the negligence, or  wrongful act of the applicant or of any of his agents, employees or licensees in omitting, installing, maintaining, using, operating or interfering with any such protective devices.

2.   It shall be the applicant's responsibility to select and install such protective devices as may be necessary to coordinate properly with PG&E's protective devices to avoid exposing other customers to unnecessary service interruptions.

3.   It shall be the applicant's responsibility to equip his three-phase motor installations with appropriate protective devices, or use motors with inherent features, to completely disconnect each such motor from its power supply, giving particular consideration to the following:

a.   Protection in each set of phase conductors to prevent damage due to overheating in the event of overload.

(Continued)

| Advice | 1303-E | Issued by | Date Filed | June 21, 1990 |
|---|---|---|---|---|
| Decision | | **Robert S. Kenney** | Effective | July 31, 1990 |
| | | Vice President, Regulatory Affairs | Resolution | |

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 6 of 23

| | | | Revised | *Cal. P.U.C. Sheet No.* | 11270-E |
|---|---|---|---|---|---|
| | *Cancelling* | Revised | *Cal. P.U.C. Sheet No.* | 10831-E |

**Pacific Gas and Electric Company**®

U 39    *San Francisco, California*

E.   PROTECTIVE DEVICES (Cont'd.)

3.   (Cont'd.)

b.   Protection to prevent automatic restarting of motors or motor driven machinery which has been subjected to a service interruption and, because of the nature of the machinery itself or the product it handles, cannot safely resume operation automatically.

c.   Open-phase protection to prevent damage due to overheating in the event of loss of voltage on one phase.

d.   Reverse-phase protection where appropriate to prevent uncontrolled reversal of motor rotation in the event of accidental phase reversal. (Appropriate installations would include, but are not limited to, motors driving elevators, hoists, tramways, cranes, pumps, conveyors, etc.)

4.   The available short-circuit current varies from one location to another, and also depends on the ultimate design characteristics of PG&E's supply and service facilities. Consult PG&E for the ultimate maximum short-circuit current at each service termination point.

5.   Where an applicant proposes to use a ground-fault sensing protective system which would require special PG&E-owned equipment, such a system may be installed only where feasible and with written approval of PG&E.

6.   Any non-PG&E-owned emergency standby or other generation equipment that can be operated to supply power to facilities that are also designed to be supplied from PG&E's system shall be controlled with suitable protective devices by the applicant to prevent parallel operation with PG&E's system in a fail-safe manner, such as the use of a double-throw switch to disconnect all conductors, except where there is a written agreement or service contract with PG&E permitting such parallel operation.

(Continued)

| *Advice* | 1303-E | *Issued by* | *Date Filed* | June 21, 1990 |
|---|---|---|---|---|
| *Decision* | | **Robert S. Kenney** | *Effective* | July 31, 1990 |
| | | *Vice President, Regulatory Affairs* | *Resolution* | |

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 7 of 23

| | | Revised | Cal. P.U.C. Sheet No. | 11271-E |
| --- | --- | --- | --- | --- |
| | *Cancelling* | Revised | Cal. P.U.C. Sheet No. | 6931-E |

**Pacific Gas and Electric Company®**
San Francisco, California
U 39

**ELECTRIC RULE NO. 2**
DESCRIPTION OF SERVICE

F.   INTERFERENCE WITH SERVICE

1.   GENERAL

PG&E reserves the right to refuse to serve new loads or to continue to supply existing loads of a size or character that may be detrimental to PG&E's operations or to the service of its customers.  Any customer who operates or plans to operate any equipment such as, but not limited to, pumps, welders, saw mill apparatus, furnaces, compressors or other equipment where the use of electricity is intermittent, causes intolerable voltage fluctuations, or otherwise causes intolerable service interference, must reasonably limit such interference or restrict the use of such equipment upon request by PG&E.  The customer is required either to provide and pay for whatever corrective measures are necessary to limit the interference to a level established by PG&E as reasonable, or avoid the use of such equipment, whether or not the equipment has previously caused interference.

2.   HARMFUL WAVE FORM

Customers shall not operate equipment that superimposes a current of any frequency or wave form upon PG&E's system, or draws current from PG&E's system of a harmful wave form, which causes interference with PG&E's operations, or the service to other customers, or inductive interference to communication facilities.

3.   CUSTOMER'S RESPONSIBILITY

Any customer causing service interference to others must diligently pursue and take timely corrective action after being given notice and a reasonable time to do so by PG&E.  If the customer does not take timely corrective action, or continues to operate the equipment causing the interference without restriction or limit, PG&E may, without liability, after giving five days written notice to customer, either install and activate control devices on its facilities that will temporarily prevent the detrimental operation, or discontinue electric service until a suitable permanent solution is provided by the customer and it is operational.

(Continued)

| *Advice* | 1303-E | *Issued by* | *Date Filed* | June 21, 1990 |
| --- | --- | --- | --- | --- |
| *Decision* | | *Robert S. Kenney* | *Effective* | July 31, 1990 |
| | | *Vice President, Regulatory Affairs* | *Resolution* | |

Case: 19-30088   Doc# 1538-8   Filed: 04/18/19   Entered: 04/18/19 08:20:57   Page 8 of 23

**ELECTRIC RULE NO. 2**    Sheet 16
DESCRIPTION OF SERVICE

F.   INTERFERENCE WITH SERVICE (Cont'd.)

   4.   MOTOR STARTING CURRENT LIMITATIONS

      a.   The starting of motors shall be controlled by the customer as necessary to avoid causing voltage fluctuations that will be detrimental to the operation of PG&E's distribution or transmission system, or to the service of any of PG&E's customers.

      b.   If the starting current for a single motor installation exceeds the value listed in Table 1, and the resulting voltage disturbance causes or is expected to cause detrimental service to others, reduced voltage starters or other suitable means must be employed, at the customer's expense, to limit the voltage fluctuations to a tolerable level, except as otherwise provided under subsections 4.d., 4.e., 4.f., and 4.g.

      c.   The starting current shall be considered to be the current defined in Note 2 of Table 1. At its option, PG&E may determine the starting current of a motor by test, using a stop ammeter with not more than 15 percent overswing, or an oscillograph, disregarding the value shown for the first ten cycles after energizing the motor.

      d.   Where service conditions permit, subject to PG&E's approval, motor starters may be deferred in the original installation. PG&E may later order the installation of a suitable starter or other devices when it has been determined that the operation of the customer's motors interfere with service to others. Also, PG&E may require starting current values lower than those set forth herein where conditions at any point on its system require such reduction to avoid interference with service to other customers.

(Continued)

| | | | |
|---|---|---|---|
| *Advice* | 1303-E | *Issued by* | *Date Filed* | June 21, 1990 |
| *Decision* | | **Robert S. Kenney** | *Effective* | July 31, 1990 |
| | | *Vice President, Regulatory Affairs* | *Resolution* | |

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 9 of 23

**ELECTRIC RULE NO. 2**      Sheet 17
DESCRIPTION OF SERVICE

F.    INTERFERENCE WITH SERVICE (Cont'd.)

     4.    MOTOR STARTING CURRENT LIMITATIONS (Cont'd.)

         e.    In the case of room and unitary air conditioners, heat pumps or other complete unit equipment on which the nameplate rating is expressed in kVa    (T) input and not in hp output, the nameplate kVa input rating shall be    (T) considered to be the hp rating for use of Table 1. If the nameplate does not show kVa input, then it may be determined for single-phase motors by taking    (T) the product of the running input line current in amperes times the input voltage rating divided by 1,000. For three-phase motors, multiply this product by the square root of three (1.73).

         f.    The starting current values in Table 1 apply only to the installation of a single motor. Starters may be omitted on the smaller motors of a group installation when their omission will not result in a starting current in excess of the allowable starting current of the largest motor of the group. Where motors start simultaneously, they will be treated as a single unit equal to the sum of their individual starting currents.

         g.    PG&E may limit the maximum size and type of any motor that may be operated at any specific location on its system to that which will not be detrimental to PG&E's system operations or to the service of its customers, as determined by PG&E.

         h.    Where the design or operation of the customer's motor is such that unequal starting currents flow in PG&E's service conductors, the largest starting current in any one set of phase conductors shall be considered the motor starting current.

(Continued)

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 10 of 23

F.   INTERFERENCE WITH SERVICE (Cont'd.)

    4.   MOTOR STARTING CURRENT LIMITATIONS (Cont'd.)

        i.   For installations of motors where the equipment is started automatically by
             means of float, pressure, or thermostat devices, such as with pumps or wind
             machines for frost protection, irrigation pumps or other similar installations,
             PG&E may require the customer to install, at his own expense and in
             accordance with PG&E's operating requirements, suitable preset time-delay
             devices to stagger the automatic connection of load to the supply system
             and to prevent simultaneous start-up for any reason.

(Continued)

| *Advice* | 1303-E | *Issued by* | *Date Filed* | June 21, 1990 |
| *Decision* | | **Robert S. Kenney** | *Effective* | July 31, 1990 |
| | | *Vice President, Regulatory Affairs* | *Resolution* | |

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 11
of 23

| | | Revised | Cal. P.U.C. Sheet No. | 11275-E |
|---|---|---|---|---|
| **Pacific Gas and Electric Company** | Cancelling | Revised | Cal. P.U.C. Sheet No. | 6932-E |

U 39   San Francisco, California

**ELECTRIC RULE NO. 2**                    Sheet 19
DESCRIPTION OF SERVICE

F.   INTERFERENCE WITH SERVICE (Cont'd.)

    4.   MOTOR STARTING CURRENT LIMITATIONS (Cont'd.)

TABLE 1
NORMAL MAXIMUM ALLOWABLE MOTOR STARTING CURRENTS
ALTERNATING-CURRENT MOTORS

| Rated HP Output | Single-Phase Voltage Motor Rating (Service Voltage) | Three-Phase Voltage Motor Rating (Service Voltage) | | |
|---|---|---|---|---|
| | 230v (240v) | 200v (208v) | 230v (240v) | 460v (480v) |
| 2 | 60 amps | – | – | – |
| 3 | 80 | 74 amps | 64 amps | 32 amps |
| 5 | 120 | 106 | 92 | 46 |
| 7.5 | 170 | 146 | 127 | 63 |
| 10 | – | 186 | 162 | 81 |
| 15 | – | 267 | 232 | 116 |
| 20 | – | 347 | 302 | 151 |
| 25 | – | 428 | 372 | 186 |
| 30 | – | 508 | 442 | 221 |
| 40 | – | 669 | 582 | 291 |
| 50 | – | 830 | 722 | 361 |
| 60 | – | – | – | 431 |
| 75 | – | – | – | 536 |
| 100 | – | – | – | 711 |

Over 100—See Note 3

Table 1 Notes:

1.   See Section F.4. for details on the use of this table.

2.   Motor starting current is defined as the steady state current taken from the supply line
with the motor rotor or rotors locked, with all other power consuming components,
including a current-reducing starter, if used, connected in the starting position,
and with rated voltage and frequency applied.

3.   The applicant shall consult PG&E for design criteria information for selecting suitable
starting equipment for three-phase a-c motors not shown on Table 1, for d-c motors
supplied directly from existing d-c systems, and for motors that operate at higher
voltage ratings.

(Continued)

| Advice | 1303-E | Issued by | Date Filed | June 21, 1990 |
|---|---|---|---|---|
| Decision | | **Robert S. Kenney** | Effective | July 31, 1990 |
| | | *Vice President, Regulatory Affairs* | Resolution | |

Case: 19-30088   Doc# 1538-8   Filed: 04/18/19   Entered: 04/18/19 08:20:57   Page 12 of 23

| | | Revised | Cal. P.U.C. Sheet No. | 27769-E |
| --- | --- | --- | --- | --- |
| | Cancelling | Revised | Cal. P.U.C. Sheet No. | 11276-E |

**Pacific Gas and Electric Company®**
San Francisco, California
U 39

**ELECTRIC RULE NO. 2**       Sheet 20
DESCRIPTION OF SERVICE

G. POWER FACTOR

When lighting devices, such as neon, fluorescent, luminous gaseous, mercury vapor, and other lighting equipment having low power factors are served on street lighting or area lighting schedules, the customer shall provide, at his own expense, power factor corrective equipment  to increase the power factor of each complete lighting device to not less than 90 percent.

H. CONNECTED LOAD RATINGS

1. The connected load is the sum of the rated capacities of all of the customer's electric utilization equipment that is served through one metering point and that may be operated at the same time, computed to the nearest one-tenth of a horsepower, kilowatt or kilovolt-ampere.  Motors will be counted at their nameplate ratings in horsepower output and other devices at their nameplate input ratings in kw or kVa, except that resistance welders will be rated in accordance with the section of this rule regarding "Welder Service."  Unless otherwise stated in the rate schedule, conversions between horsepower, kw and/or kVa ratings will be made on a one-to-one basis. (T)

2. The normal operating capacity rating of any motor or other device may be determined from the nameplate rating.  Where the original nameplate has been removed or altered, the manufacturer's published rating may be used or the rating determined by test at the expense of the customer.

3. Motor-generator sets shall be rated at the nameplate rating of the alternating-current drive motor of the set.

4. a. X-ray equipment shall be rated at the maximum nameplate kVa input operating at the highest rated output amperes.  If the kVa input rating is not shown, it will be determined for single-phase loads by taking the product of the amperes input rating times the input voltage rating divided by 1,000.  For three-phase equipment, multiply this product times the square root of three (1.73). (T)

(Continued)

| Advice | 3353-E | Issued by | Date Filed | October 16, 2008 |
| --- | --- | --- | --- | --- |
| Decision | | **Brian K. Cherry** | Effective | November 15, 2008 |
| | | *Vice President* | Resolution | |
| | | *Regulatory Relations* | | |

Case: 19-30088   Doc# 1538-8   Filed: 04/18/19   Entered: 04/18/19 08:20:57   Page 13 of 23

| | | Revised | Cal. P.U.C. Sheet No. | 27770-E |
|---|---|---|---|---|
| | Cancelling | Revised | Cal. P.U.C. Sheet No. | 11277-E |

**Pacific Gas and Electric Company**®
San Francisco, California
U 39

**ELECTRIC RULE NO. 2**
DESCRIPTION OF SERVICE

H.   CONNECTED LOAD RATINGS (Cont'd.)

  4.   (Cont'd.)

   b.   Where X-ray equipment is separately metered and supplied from a separate transformer installed by PG&E to serve the X-ray installation only, the kVa rating of PG&E's transformer or the total X-ray equipment input capacity, whichever is smaller, will be considered the load for billing  purposes.                     (T)

  5.   Where a customer operates a complete unit of equipment connected for three-phase service but consisting of single-phase components which cannot be readily reconnected for single-phase service, PG&E shall consider the connected load of such a unit as three-phase load.

  6.   Where a customer has, or expects to have, permanently-connected, three-phase load that is used infrequently or for short  durations, such as, but not limited to, equipment for fire pumps, frost protection, flood control, emergency sirens or other  similar installations which make it impractical to record proper demands on a monthly basis for billing purposes, the customer  may, for his own reasons and with PG&E's approval, guarantee an appropriate billing demand or connected three-phase load for billing purposes in order to reserve suitable capacity in PG&E's facilities.

I.   SPECIAL FACILITIES

  1.   PG&E normally installs only those standard facilities which it deems are necessary to provide regular service in accordance with the tariff schedules. Where the applicant requests PG&E to install special facilities and PG&E agrees to make such an installation, the additional costs thereof shall be borne by the applicant, including such continuing ownership costs as may be applicable.

(Continued)

| Advice | 3353-E | Issued by | Date Filed | October 16, 2008 |
|---|---|---|---|---|
| Decision | | **Brian K. Cherry** | Effective | November 15, 2008 |
| | | *Vice President* | Resolution | |
| | | *Regulatory Relations* | | |

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 14 of 23

| | Revised | *Cal. P.U.C. Sheet No.* | 11278-E |
|---|---|---|---|
| *Cancelling* Revised | | *Cal. P.U.C. Sheet No.* | 6933-E |

**PACIFIC GAS AND ELECTRIC COMPANY®**
U 39    *San Francisco, California*

**ELECTRIC RULE NO. 2**    Sheet 22
DESCRIPTION OF SERVICE

I.    SPECIAL FACILITIES (Cont'd.)

2.    Special facilities are (a) facilities requested by an applicant which are in addition to or in substitution for standard facilities which PG&E would normally provide for delivery of service at one point, through one meter, at one voltage class under its tariff schedules, or (b) a pro rata portion of the facilities requested by an applicant, allocated for the sole use of such applicant, which would not normally be allocated for such sole use.  Unless otherwise provided by PG&E's filed tariff schedules, special facilities will be installed, owned and maintained or allocated by PG&E as an accommodation to the applicant only if acceptable for operation by PG&E and the reliability of service  to PG&E's other customers is not impaired.

3.    Special facilities will be installed under the terms and conditions of a contract in the form on file with the Commission.  Such contract will include, but is not limited to, the following terms and conditions:

a.    Where new facilities are to be installed for applicant's use as special facilities, the applicant shall advance to PG&E the estimated additional installed cost of the special facilities over the estimated cost of standard facilities.  At PG&E's option, PG&E may finance the new facilities.

b.    A monthly cost-of-ownership charge shall be paid by  applicant for the special facilities:

(Continued)

| *Advice* | 1303-E | *Issued by* | *Date Filed* | June 21, 1990 |
|---|---|---|---|---|
| *Decision* | | **Robert S. Kenney** | *Effective* | July 31, 1990 |
| | | *Vice President, Regulatory Affairs* | *Resolution* | |

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 15 of 23

| | | Revised | Cal. P.U.C. Sheet No. | 41100-E |
|---|---|---|---|---|
| | Cancelling | Revised | Cal. P.U.C. Sheet No. | 35850-E |

**Pacific Gas and Electric Company**®
U 39   San Francisco, California

**ELECTRIC RULE NO. 2**                    Sheet 23
DESCRIPTION OF SERVICE

I.    SPECIAL FACILITIES (Cont'd.)

    3.    (Cont'd.)

        b.    (Cont'd.)

| TYPE OF FACILITY | FINANCING | MONTHLY CHARGE | |
|---|---|---|---|
| Transmission (60kv and over)* | Customer | 0.31% of the amount advanced | |
| | PG&E | 1.14% of the additional cost | |
| Distribution | Customer | 0.53% of the amount advanced | (R) |
| | PG&E | 1.22% of the additional cost | (R) |

        c.    Where existing facilities are allocated for applicant's use as special facilities, the applicant shall pay a monthly Cost of Ownership charge. This monthly Cost of Ownership charge shall be based on the estimated installed cost of that portion of the existing facilities which is allocated to the customer.

        d.    Where PG&E determines the collection of continuing monthly Cost of Ownership charges is not practicable, the applicant will be required to make an equivalent one-time payment in lieu of the monthly Cost of Ownership charges.

        e.    All monthly Cost of Ownership charges shall be reviewed and re-filed with the Commission when changes occur in PG&E's cost of providing such service.

---

\*    For the purposes of applying the special transmission facilities charge, special transmission facilities are those facilities in the "100 series" of the standard PG&E system of accounts (FERC Account Nos. 352-359).

(Continued)

| Advice | 5176-E | Issued by | Date Filed | November 6, 2017 |
|---|---|---|---|---|
| Decision | 07-07-019 | **Robert S. Kenney** | Effective | January 1, 2018 |
| | | Vice President, Regulatory Affairs | Resolution | |

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 16 of 23

**Pacific Gas and Electric Company®**
U 39    San Francisco, California

**ELECTRIC RULE NO. 2**                    Sheet 24
DESCRIPTION OF SERVICE

J.    WELDER SERVICE

1.    RATING OF WELDERS

Electric welders will be rated for billing purposes as follows:

a.    MOTOR-GENERATOR ARC WELDERS – The horsepower rating of the motor driving a motor-generating type arc welder will be taken as the horsepower rating of the welder.

b.    TRANSFORMER ARC WELDERS – Nameplate maximum kVa input (at                    (T)
rated output amperes) will be taken as the rating of transformer type arc welders.

c.    RESISTANCE WELDERS – Resistance welder ratings will be determined by multiplying the welder transformer nameplate rating (at 50 percent duty cycle) by the appropriate factor listed below:

(Continued)

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 17 of 23

**Pacific Gas and Electric Company**®
San Francisco, California
U 39

### ELECTRIC RULE NO. 2
DESCRIPTION OF SERVICE

Sheet 25

J.   WELDER SERVICE (Cont'd.)

1.   RATING OF WELDERS (Cont'd.)

| TYPE OF WELDER | TRANSFORMER NAMEPLATE RATING @ 50% Duty Cycle** | FACTOR PG&E-Owned Distrib. Transf. | FACTOR Customer Owned Distrib. Transf. | |
|---|---|---|---|---|
| 1.  Rocker Arm, Press or Projection Spot | 20 kVa or less | 0.60 | 0.50 | (T) |
| 2.  Rocker Arm, Press Spot Project Spot Flash or Butt Seam or Portable Gun | Over 20 kVa 21 to 75 kVa, inclusive 100 kVa or over All sizes | 0.80 | 0.60 | (T) (T) (T) |
| 3.  Flash or Butt | 67 to 100 kVa, inclusive | *** | *** | (T) |
| 4.  Projection Spot Flash or Butt | Over 75 kVa 66 kiva or less | 1.20 | 0.90 | (T) |

_____

**    The kVa rating of all resistance welders to which these rating procedures are applied must be at or equivalent to 50 percent duty cycle operation.  Duty cycle is the percent of the time welding current flows during a given operating cycle.  If the operating kVa nameplate rating is for some other operating duty cycle, then the thermally equivalent kVa  rating at 50 percent duty cycle must be calculated.    (T)

***   Each flash or butt welder in this group will be rated at 80 kVa where distribution transformer is owned by PG&E or 60 kVa where distribution transformer is owned by the customer.    (T)

(Continued)

Case: 19-30088   Doc# 1538-8   Filed: 04/18/19   Entered: 04/18/19 08:20:57   Page 18 of 23

**ELECTRIC RULE NO. 2**
DESCRIPTION OF SERVICE

Sheet 26

J.   WELDER SERVICE (Cont'd.)

1.   RATING OF WELDERS (Cont'd.)

d.   Ratings prescribed by a., b. and c. above, normally will be determined from nameplate data or from data supplied by the manufacturer.  If such data are not available or are believed by either PG&E or customer to be unreliable, the rating will be determined by test at the expense of the customer.

e.   If established by seals approved by PG&E, the welder rating may be limited by the sealing of taps which provide capacity greater than the selected tap and/or by the interlocking lockout of one or more welders with other welders.

f.   When conversion of units is required for tariff application, one welder kVa will be taken as one horsepower for tariffs stated on a horsepower basis and one welder kVa will be taken as one kilowatt for tariffs stated on a kilowatt basis.   (T)

(T)

2.   BILLING OF WELDERS

Welders will be billed at the regular rates and conditions of the tariffs on which they are served, subject to the following provisions:

a.   CONNECTED LOAD TYPE OF SCHEDULE

Welder load will be included as part of the connected load with ratings as determined under Section 1, above, based on the maximum load that can be connected at any one time, and no allowance will be made for diversity between welders.

(Continued)

Case: 19-30088   Doc# 1538-8   Filed: 04/18/19   Entered: 04/18/19 08:20:57   Page 19 of 23

| | Revised | Cal. P.U.C. Sheet No. | 27774-E |
|---|---|---|---|
| *Cancelling* | Revised | Cal. P.U.C. Sheet No. | 11283-E |

**Pacific Gas and Electric Company®**

U 39    San Francisco, California

### ELECTRIC RULE NO. 2
DESCRIPTION OF SERVICE

Sheet 27

J.    WELDER SERVICE (Cont'd.)

2.    BILLING OF WELDERS (Cont'd.)

b.    DEMAND METERED TYPE OF SCHEDULE

Where resistance welders are served on these schedules, the computation of diversified resistance welder load shall be made as follows:

Multiply the individual resistance welder ratings, as prescribed in Sections 1.c. to 1.f. inclusive, above, by the following factors and adding the results thus obtained:

1.0 times the rating of the largest welder

0.8 times the rating of the next largest welder

0.6 times the rating of the next largest welder

0.4 times the rating of the next largest welder

0.2 times the ratings of all additional welders

If this computed, diversified, resistance welder load is greater than the metered demand, the diversified resistance welder load will be used in lieu of the metered demand for rate computation purposes.

3.    USE OF WELDERS THROUGH RESIDENTIAL SERVICE

Any welder exceeding three kVa capacity at 50 percent duty cycle supplied through a residential service requires advance approval by PG&E.                    (T)

---

| *Advice* | 3353-E | *Issued by* | *Date Filed* | October 16, 2008 |
|---|---|---|---|---|
| *Decision* | | **Brian K. Cherry** | *Effective* | November 15, 2008 |
| | | *Vice President* | *Resolution* | |
| | | *Regulatory Relations* | | |

Case: 19-30088    Doc# 1538-8    Filed: 04/18/19    Entered: 04/18/19 08:20:57    Page 20 of 23

# EXHIBIT 3

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

| | |
|---|---|
| City and County of San Francisco | |
| Complainant | |
| v. | Docket No. EL19-___ |
| Pacific Gas and Electric Company | |
| Respondent | |

NOTICE OF COMPLAINT

(January 28, 2019)

Take notice that on January 28, 2019, the City and County of San Francisco ("San Francisco") filed a formal complaint against Pacific Gas and Electric Company ("PG&E") pursuant to Sections 206, 306, and 309 of the Federal Power Act, 16 U.S.C. §§ 824e, 825e, 825h, and Rule 206 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.206. San Francisco alleges that PG&E has violated its open-access Wholesale Distribution Tariff ("WDT") and that it is implementing its WDT in a manner that is unjust, unreasonable, and unduly discriminatory. San Francisco requests that the Commission (1) direct PG&E to comply with its Tariff by offering San Francisco the secondary and primary-plus wholesale distribution service provided for by the WDT; (2) direct PG&E to pay refunds to San Francisco consistent with the filed rate; and (3) take any such other actions that the Commission finds necessary or appropriate to address PG&E's tariff violations and to assure that the WDT and PG&E's implementation of that Tariff are just, reasonable, and not unduly discriminatory.

San Francisco certifies that copies of the complaint were served on contacts for PG&E as listed on the Commission's list of Corporate Officials.

Any person desiring to intervene or to protest this filing must file in accordance with Rules 211 and 214 of the Commission's Rules of Practice and Procedure (18 C.F.R. §§ 385.211 and 385.214). Protests will be considered by the Commission in determining the appropriate action to be taken, but will not serve to make protestants parties to the proceeding. Any person wishing to become a party must file a notice of intervention or motion to intervene, as appropriate. The Respondent's answer and all interventions, or protests must be filed on or before the comment date. The Respondent's answer, motions to intervene, and protests must be served on the Complainants.

The Commission encourages electronic submission of protests and interventions in lieu of paper using the "eFiling" link at http://www.ferc.gov. Persons unable to file electronically should submit an original and 5 copies of the protest or intervention to the Federal Energy Regulatory Commission, 888 First Street, NE, Washington, DC 20426.

This filing is accessible on-line at http://www.ferc.gov, using the "eLibrary" link and is available for review in the Commission's Public Reference Room in Washington, DC. There is an "eSubscription" link on the web site that enables subscribers to receive

email notification when a document is added to a subscribed docket(s).  For assistance with any FERC Online service, please email FERCOnlineSupport@ferc.gov, or call (866) 208-3676 (toll free).  For TTY, call (202) 502-8659.

Comment Date: 5:00 pm Eastern Time on (insert date).

Kimberly D. Bose,
Secretary.