| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>OSCAR GARZA, SBN 149790<br>　ogarza@gibsondunn.com<br>SAMUEL A. NEWMAN, SBN 217042<br>　snewman@gibsondunn.com<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520<br><br>*Counsel for Centerview Partners LLC* | |

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>　-and-<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | CASE NO. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**CENTERVIEW PARTNERS LLC'S EX PARTE MOTION FOR ENTRY OF AN ORDER AUTHORIZING CERTAIN CONFIDENTIAL INFORMATION TO BE FILED UNDER SEAL IN CONNECTION WITH THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AUTHORITY TO RETAIN AND EMPLOY CENTERVIEW AS INVESTMENT BANKER** |

　　　Centerview Partners, LLC ("Centerview"), proposed investment banker to the Official Committee of Unsecured Creditors (the "Committee"), hereby moves (the "Motion"), pursuant to Sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 1001-2(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules"), and the *New District Wide Procedures for Electronically Filing*

*Sealed and Redacted Documents adopted by the United States Bankruptcy Court for the Northern District of California* (the "Local Procedures"), for entry of an order (i) authorizing Centerview to file the unredacted versions of Schedule 1 of the Chopra Declaration under seal and confidential, and (ii) directing that the Confidential Information contained in Schedule 1 of the concurrently filed Chopra Declaration and any subsequent pleadings remain under seal and confidential and not be made available to anyone other than the Court, the U.S. Trustee, attorneys for PG&E Corporation and Pacific Gas and Electric Company (collectively, the "Debtors"), and attorneys for the Committee and the Official Committee of Tort Claimants, without the prior written consent of the Debtors (with respect to the Confidential Information) and Centerview.

A proposed form of order is concurrently filed, in accordance with Bankruptcy Local Rule 1001-2(a) and Civil Local Rule for United States District Court for the Northern District of California 79-5(d)(1)(B) (the "Proposed Order"). A version of Schedule 1 of the Chopra declaration with the Confidential Information redacted has also been publicly filed in accordance with Local Rule 79-5(d)(1)(D).

The Motion is based on this Memorandum of Points and Authorities, the concurrently filed Chopra Declaration, the complete files and records of the referenced matters, the arguments of counsel, and such other and further matters as this Court may consider at or before any hearing on this Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Centerview requests relief based on §§ 105(a) and 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018.

## II. FACTS

On January 29, 2019 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Committee filed applications (collectively, the "Applications") on April 3, 2019, to retain (i) Milbank LLP ("Milbank") as counsel [Dkt. No. 1208], (ii) FTI Consulting ("FTI") as financial advisors [Dkt. No. 1212], (iii) Centerview as investment banker [Dkt. No. 1213], and (iv) Epiq Corporate Restructuring, LLC ("Epiq") as information agent [Dkt. No. 1214].

To protect commercially sensitive and confidential information, as described below, and to simultaneously ensure appropriate disclosure in these chapter 11 cases, Centerview's application described connections with confidential advisory clients, as applicable, without setting forth the clients' names (the "Confidential Information"). As disclosed in the application and accompanying disclosure declarations, none of these connections are related to the Debtors or these chapter 11 cases.[1] Centerview therefore does not believe that these connections preclude Centerview from meeting the disinterestedness standard under the Bankruptcy Code. Moreover, the manner in which

---

[1] "Centerview currently is engaged to advise and/or was formerly engaged in the last three years to advise several Potential Parties-in-Interest and/or their affiliates that, due to confidentiality obligations owed to such entities, Centerview is unable to disclose. These Potential Parties-in-Interest are in the following categories: 'Bank Accounts,' 'Contract Counterparties,' 'Litigation Counterparties/Litigation Pending Lawsuits,' 'Top Unsecured Creditors,' 'Unsecured Notes,' 'Utility Providers,' and 'Vendors.' Centerview's work for each of these entities is or was on matters that are wholly unrelated to the Debtors or these cases." Centerview Application Ex. B, Schedule 2 at 4.

Centerview disclosed the Confidential Information is consistent with the way other chapter 11 professionals have disclosed such information for many years.

The hearing (the "Hearing") to consider, among other things, the Applications is scheduled for April 24, 2019, at 9:30 a.m. (PT), and the deadline to object to the Applications was April 17, 2019, at 4:00 p.m. (PT) (the "Objection Deadline"). No party other than the Office of the United States Trustee has provided comments or otherwise objected to the Applications.

### III. BASIS FOR RELIEF REQUESTED

Under Section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 107(b) further provides:

> On request of a party in interest, the bankruptcy court *shall*, and on the bankruptcy court's own motion, the bankruptcy court may —
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

11 U.S.C. § 107(b) (emphasis added).

Section 107(b) therefore makes it "mandatory for a court to protect documents" falling into one of three exceptions: confidential business information, scandalous or defamatory matter, and means of identification. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 431 (9th Cir. 2011); *see also Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (explaining that "if the information fits any of the specified categories, the court is *required* to protect a requesting interested party and has no discretion to deny the application"). Indeed, the "authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice." *In re Glob. Crossing Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003).

The Bankruptcy Rules similarly set forth the procedures by which a party may obtain a protective order authorizing the filing of a document under seal. Bankruptcy Rule 9018 provides, in relevant part, that "[o]n motion, or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in

Gibson, Dunn & Crutcher LLP

respect of a trade secret or other confidential research, development, or commercial information." Fed. R. Bankr. P. 9018. This Court's Local Procedures require that a request to file under seal be narrowly tailored to sealable materials. *New District Wide Procedures for Electronically Filing Sealed and Redacted Documents.*

## A. The Confidential Information Should Be Filed Under Seal

To begin with, Section 107(b) protections are not just afforded to a debtor. *See In re Borders Group, Inc.*, 462 B.R. 42, 48 (Bankr. S.D.N.Y. 2013) ("Rather, a bankruptcy court may 'protect an entity with respect to . . . commercial information.'"). And if an entity seeks protection under Section 107(b), as Centerview does here, it need only show that the information it seeks to seal is "confidential" and "commercial" in nature. *Orion Pictures Corp.*, 21 F.3d at 27. It is well settled that commercial information is information which would cause "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Itel Corp.*, 17 B.R. 942, 944 (9th Cir. B.A.P. 1982). But commercial information need not rise to the level of a trade secret to fall under Section 107(b)'s protection. *Orion Pictures Corp.*, 21 F.3d at 28. In fact, commercial information can include situations where disclosure would "have a 'chilling effect on [business] negotiations, ultimately affecting the viability of Debtors,'" *In re Borders Group, Inc.*, 462 B.R. at 47 (citations and quotations omitted), and those in which information could affect the "'buying and selling of securities on the open market,'" *In re Barney's Inc.*, 201 B.R. 703, 708 (Bankr. S.D.N.Y. 1996) (citations and quotations omitted).

Centerview is seeking to preserve the confidentiality of just four confidential client engagements in these chapter 11 cases.[2] Client confidentiality is fundamental to, and at the center of, Centerview's business. Indeed, Centerview's client engagements are, by their terms, confidential. Centerview's clients have an expectation that Centerview will exercise discretion with respect to their engagements. If Centerview were to publicly disclose the

---

[2] We refer to four confidential client engagements rather than the 16 redacted rows on Schedule 1 because we have collapsed potential parties in interest and/or their affiliates thereof. Chopra Decl. ¶ 8.

names of its client engagements, this would suggest a lack of discretion in a highly competitive business that values discretion. This could hinder Centerview's ability to attract new clients, who would be disincentivized from hiring Centerview for their sensitive matters. In addition, it would prejudice Centerview's current clients, whose confidential information would be disclosed.

Significantly, Centerview, a corporate advisory firm that only provides corporate advice including advice on mergers and acquisitions and restructurings, is often involved in high-profile, non-public mergers and acquisitions and related transactions where the disclosure of Centerview's involvement before the deal becomes public could lead to investor speculation, move the market, violate securities laws, or disrupt a deal. Such disclosure would prejudice both Centerview and its confidential clients who have no stake in these chapter 11 cases and have relied on Centerview to keep their relationships confidential. Indeed, the mere fact that Centerview is representing such parties can constitute commercially sensitive information from such third parties' perspectives, since a current or prior engagement with Centerview may signal that the company is exploring a significant transaction, such as a sale. Moreover, Centerview's representation of its confidential clients is commercially/competitively sensitive information for Centerview because Centerview is engaged in a highly competitive industry and the disclosure of the Confidential Information would give Centerview's competitors an unfair advantage. *See, e.g.*, *In re Borders Grp., Inc.*, 462 B.R. at 48 (sealing identity of key employees and vendors that would give an unfair advantage to movant's competitors). Further, requiring Centerview to disclose in a public forum the Confidential Information would have wide-ranging effects on other chapter 11 professionals who have confidentiality obligations (including ethical obligations) to their other clients.

Moreover, Centerview has narrowly tailored the Confidential Information to capture only those four client engagements that are not publicly known and are therefore commercially sensitive, while at the same time disclosing as much information as possible about the nature of the connections. For example, Centerview disclosed that the confidential client connections were to

potential parties in interest and/or affiliates thereof (the "Parties") in the following categories: "Bank Accounts," "Contract Counterparties," "Litigation Counterparties/Litigation Pending Lawsuits," "Top Unsecured Creditors," "Unsecured Notes," "Utility Providers," and "Vendors." Centerview Application Ex. B, Schedule 2 at 4.

Finally, this issue has already been decided by another court, albeit one in a different but influential jurisdiction. On April 8, 2019, Chief Judge Sontchi of the United States Bankruptcy Court for the District of Delaware granted a motion permitting Centerview to file under seal the names of its confidential client engagements. *In re CTI Foods, LLC*, Case No. 19-10497 (CSS) (Bankr. D. Del. April 8, 2019) (granting Motion to File Certain Confidential Information Under Seal where like here, Centerview's Confidential Information constituted clients' names, because there was a valid basis under Section 107(b) and the redactions were narrowly tailored to apply to only the most sensitive information). Chief Judge Sontchi took that opportunity to affirm that the presumption of disclosure is not absolute. *Id.* The protections outlined in Section 107 curb that presumption and exist to preserve the "confidentiality of sensitive, confidential business information." *Id.* And when it is "clear that the redactions have been very narrowly tailored to apply to only the most sensitive information," a party has met its burden under Section 107(b). *Id.* There, Centerview met its burden. *Id.* As it does here, Centerview disclosed the relationship of the parties in interest to the debtors. *Id.* As it does here, Centerview redacted only the most commercially sensitive information. *Id.*

Centerview fully appreciates the importance of the policy of open access to court records. *See* 11 U.S.C. § 107(a) ("[e]xcept as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records open to examination by an entity at reasonable times without charge"). In fact, the Committee's application to retain Centerview disclosed Centerview's engagements with over 60 potential parties in interest. Centerview Application Ex. B, Schedule 2 at 4.[3] As discussed above, just five of these engagements were not disclosed due to confidentiality obligations. *Id.* And when one of these engagements (Waste Management, Inc.) became public, Centerview disclosed it. Chopra Decl. ¶ 6. In this spirit,

---

[3] Certain of these four potential parties-in-interest and/or their affiliates fall into multiple categories.

Centerview is prepared to publicly file supplemental disclosures for the remaining engagements within a reasonable time after the need for confidential treatment no longer applies.

Thus, as in *CTI,* because the Confidential Information discussed above falls within the scope of Section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018, and because the request is narrowly tailored to include only the most sensitive information, the Court should grant Centerview's request.

## IV. NOTICE

Notice of this Motion shall be provided to (i) the U.S. Trustee; (ii) counsel to the Debtors; (iii) counsel to the Official Committee of Tort Claimants; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002. Centerview respectfully submits that no further notice is required.

## V. CONCLUSION

To prevent the negative business implications discussed above and to simultaneously ensure appropriate disclosure and transparency in these chapter 11 cases, Centerview seeks limited relief to file the Confidential Information under seal in connection with the Application of the Official Committee of Unsecured Creditors to Retain and Employ Centerview as Investment Banker. For the reasons set forth above, Centerview requests that the Confidential Information be kept under seal as set forth in the Proposed Order.

Dated: April 19, 2019

                OSCAR GARZA
                GIBSON, DUNN & CRUTCHER LLP

                By:  /s/ Oscar Garza
                      Oscar Garza

*Counsel for Centerview Partners LLC*