| | |
|---|---|
| 1 | Dennis F. Dunne (admitted *pro hac vice*) |
| | Samuel A. Khalil (admitted *pro hac vice*) |
| 2 | MILBANK LLP |
| | 55 Hudson Yards |
| 3 | New York, New York 10001-2163 |
| | Telephone: (212) 530-5000 |
| 4 | Facsimile: (212) 530-5219 |
| 5 | and |
| 6 | Gregory A. Bray (SBN 115367) |
| | Thomas R. Kreller (SBN 161922) |
| 7 | MILBANK LLP |
| | 2029 Century Park East, 33rd Floor |
| 8 | Los Angeles, CA 90067 |
| | Telephone: (424) 386-4000 |
| 9 | Facsimile: (213) 629-5063 |
| 10 | *Proposed Counsel for the Official Committee of Unsecured Creditors* |

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| - and - | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| Debtors. | **STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF ITS APPLICATION FOR AUTHORITY TO RETAIN AND EMPLOY FTI CONSULTING, INC. AS FINANCIAL ADVISOR EFFECTIVE AS OF FEBRUARY 15, 2019** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | |
| ☑ Affects both Debtors | |
| * *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: April 24, 2019 |
| | Time: 9:30 a.m. (Pacific Time) |
| | Place: United States Bankruptcy Court Courtroom 17, 16th Floor 450 Golden Gate Avenue San Francisco, CA 94102 |
| | Re: Docket No. 1212 |

## BACKGROUND

1. On February 15, 2019, after interviewing numerous financial advisory firms, the Official Committee of Unsecured Creditors (the "Committee") selected FTI Consulting, Inc. ("FTI") to serve as its financial advisors. Since that time, the Committee and its professionals have worked closely with FTI on a myriad of important issues, and FTI has gained critical knowledge of the Debtors' businesses and these cases.

2. The Committee filed its *Application for Entry of an Order Pursuant to 11 U.S.C. §§ 328(A) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc., as Financial Advisor* Nunc Pro Tunc *to February 12, 2019* (the "Application") [Docket No. 1212] on April 3, 2019. In support of the Application, FTI submitted the Declaration of Samuel E. Star [Docket No. 1212, Exhibit B] (the "Star Declaration"). Among the disclosures made in the Star Declaration were: (i) FTI's wholly-owned subsidiary, Compass Lexecon, LLC, was performing certain discrete consulting services for the Debtors (the "Compass Lexecon Engagement"); (ii) a separate practice group within FTI is assisting the Debtors solely with respect to certain post-closure obligations relating to a landfill site; and (iii) another separate practice group within FTI is assisting a purchaser of insurance subrogation claims against the Debtors in connection with the purchase of those claims (collectively, the "Engagements"). See Star Declaration at ¶¶ 21–22. The Star Declaration also made clear that FTI has established ethical walls "to maintain the confidentiality of the client information." See Star Declaration at ¶ 23.

3. On April 17, 2019, the U.S. Trustee filed its Objection to the Application (the "Objection") [Docket No. 1505] asserting, among other things, that FTI should be disqualified because the Compass Lexecon Engagement represents an actual conflict of interest that cannot be cured through the creation of an ethical wall. See Objection at 9. As discussed in more detail below, the Committee does not believe that FTI has any such disabling conflict of interest, and the

ethical walls that are in place are sufficient to protect against any risk of improper or inadvertent information sharing within FTI or between FTI and its wholly-owned subsidiary Compass Lexecon.

**RESPONSE**

4.     The Committee urges the Court to overrule the Objection.  While the Committee is sensitive to the concerns of the U.S. Trustee: (i) FTI has fully disclosed the Engagements to the Committee as well as to the Court and all interested parties; (ii) the Debtors are aware of the Compass Lexecon Engagement and have no objection to the Committee's engagement of FTI notwithstanding the Compass Lexecon Engagement;[1] and (iii) the ethical walls put in place by FTI and Compass Lexecon are a customary and sufficient protection against any improper or inadvertent information sharing that might otherwise occur.  With those disclosures in hand and ethical walls in place, the Committee chose FTI because it believed, and continues to believe, that FTI is the best party to represent its interests in these chapter 11 cases.

5.     Further, the Committee also does not agree with the U.S. Trustee that the Engagements give rise to any disqualifying conflicts.  The Committee understands that Compass Lexecon is an entirely separate business and corporate entity from FTI, with separate management, separate employees, and separate information technology systems that in no way overlap with FTI's management, employees or information technology systems, respectively.  See Star Declaration at ¶¶ 18(b), 21(a), 24.  Further, since the Petition Date, Compass Lexecon has not engaged in any material work on behalf of the Debtors.  As a result, contrary to the U.S. Trustee's assertions, the Committee does not believe that the Compass Lexecon Engagement creates any interest or motivation that would place FTI adverse to the interests of the Committee in any respect. Nor does the Committee believe that this prepetition representation will affect the economic

---

[1]     See *Statement of Debtors with Respect to Application of Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§ 328(a) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to February 12, 2019* [Docket No. 1560].

interests of the estates or create a bias against the estates or the Committee.

6. Moreover, the Committee understands that FTI, in an abundance of caution, has implemented ethical walls regarding the various Engagements to ensure that the Engagements will in no way compromise FTI's ability to carry out its services to the Committee. Bankruptcy courts have repeatedly held that effective screening procedures can cure issues (or potential issues) related to disinterestedness. See In re Sea Island Co., 2010 Bankr. LEXIS 3990, at *9–10 (Bankr. S.D. Ga. Sept. 20, 2010) (holding a law firm may represent a debtor as long as effective ethical screens are maintained to adequately screen non-disinterested lawyer); In re Chicago S.S. & S.B. Railroad, 101 B.R. 10, 14–16 (Bankr. N.D. Ill. 1989) (law firm with two non-disinterested attorneys permitted to represent trustee over objection of the U.S. Trustee where firm instituted an ethical wall to screen interested attorneys from the case as soon as trustee was nominated for the position).

7. Finally, bankruptcy courts have regularly authorized financial advisor retentions using similar ordinary and customary ethical wall procedures. See, e.g., In re Verity Health Systems of California, Inc., et al., Case No. 18-20151 (Bankr. C.D. Ca. Nov. 14, 2018) [Dkt. No. 822]; In re Vanguard Natural Resources, LLC, Case No. 17-30560 (MI) (Bankr. S.D. Tex. Apr. 18, 2017) [Dkt. No. 611]; In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 21, 2008) [Dkt. No. 1655]; In re Motors Liquidation Company, et al., Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Aug. 18, 2009).

8. Importantly, FTI has provided significant critical services to the Committee since the commencement of these cases. The Committee fears the consequences of being stripped of its financial advisor at this time (including the cost to the estate if the Committee were forced to engage new financial advisors to "reinvent the wheel" at this stage of these cases), especially when the Committee believes that FTI has made all appropriate disclosures and implemented appropriate protective measures, the Debtors have no objection to FTI's engagement and, most importantly, no adverse interest or potential or actual conflict exists. The Committee continues to support its decision to engage FTI at this time and requests that the Court approve the Application.

WHEREFORE, the Committee respectfully requests that the Court: (i) overrule the Objection; (ii) approve the Application; and (iii) grant such other relief as is just and proper.

Dated: April 22, 2019

**MILBANK LLP**

*/s/ Thomas R. Kreller*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Proposed Counsel for the Official Committee of Unsecured Creditors*