Richard A. Chesley (*pro hac vice* forthcoming)
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: richard.chesley@dlapiper.com

Joshua D. Morse (SBN 211050)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Telephone: (415) 836-2500
Facsimile: (415) 836-2501
Email: joshua.morse@dlapiper.com

*Counsel to FTI Consulting, Inc.*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| -and- | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **REPLY IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§328(A) AND 1103 AND FED. R. BANKR. P. 2014(A) FOR AUTHORIZATION TO RETAIN AND EMPLOY FTI CONSULTING, INC. AS FINANCIAL ADVISOR NUNC PRO TUNC TO FEBRUARY 12, 2019** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088(DM)* | **(Re: Dkt. No. 1212)** |

FTI Consulting, Inc. ("**FTI**"), by and through its undersigned counsel, DLA Piper LLP (US), hereby submits this reply (the "**Reply**") in support of the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§ 328(a) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor nunc pro tunc to February 12, 2019* [Dkt. No. 1212] (the "**Application**")

filed by the Official Committee of Unsecured Creditors (the "**Committee**") appointed pursuant to section 1102 of title 11 of the United States Code §§ 101, *et seq.* (the "**Bankruptcy Code**") in these chapter 11 cases (the "**Chapter 11 Cases**") of the above captioned debtors and debtors-in-possession (collectively, the "**Debtors**") and in response to the *United States Trustee's Objection to Application of the Official Committee of Unsecured Creditors to Employ FTI Consulting, Inc.* [Dkt. No. 1505] (the "**Objection**") filed by Andrew R. Vara, Acting United States Trustee for Region 3 (the "**US Trustee**").

In support of this Reply, FTI relies upon the *Declaration of Samuel E. Star in Support of Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§ 328(a) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisors Nunc Pro Tunc to February 12, 2019* (the "**Star Declaration**") [Dkt. No. 1212, Exh. B] and respectfully states as follows:

**<u>PRELIMINARY STATEMENT</u>**

1. On February 12, 2019, after consideration of the breadth of expertise needed by the Committee in these cases and interviews with candidates possessing the requisite qualifications, the Committee selected and retained FTI to serve as its financial advisor. Since that date, FTI's professionals have dedicated extensive resources toward assisting the Committee in navigating through these complex cases, engaging in such tasks as assessing the sufficiency of the proposed DIP financing by evaluating both short and long term cash flow projections, developing reporting and approval protocols for operational integrity supplier and other motions seeking authority to make payments on pre-petition claims, developing claims estimation models for unsecured claims, analyzing and negotiating the terms of the proposed 2019 Short Term Incentive Plan, and advising on communications strategy with respect to Governor Newsome's Strike Force Report and other legislative, regulatory and general media activities. Not only does the Committee support the retention of FTI, but the Debtors have made clear that they also support the retention of FTI and have "no objection to the relief requested in the FTI Retention Application." *See Statement of Debtors with Respect to Application of the Official Committee of Unsecured Creditors*

*for Entry of an Order Pursuant to 11 U.S.C. §§ 328(a) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to February 12, 2019* [Dkt. No. 1560] (the "**Debtors' Statement in Support**") at 2.

2. Relying on a technical, and at times inapposite, reading of the Bankruptcy Code, the US Trustee lodged an objection to FTI's retention on the basis of concurrent representations by FTI and its affiliate, Compass Lexecon, LLC ("**Compass Lexecon**"), disclosed in the Star Declaration. Applicable legal standards for the retention of official committee financial advisors imposed under sections 328 and 1103 of the Bankruptcy Code, however, make clear that FTI may be retained and compensated here so long as it does not represent an adverse interest in these Chapter 11 Cases. As none of the subject engagements (all of which were disclosed in the Star Declaration) create such disqualifying conflicts, the Objection should be overruled and the Application should be granted.

**ARGUMENT**

3. By the Application, the Committee seeks to retain FTI pursuant to section 1103 of the Bankruptcy Code. Section 1103(b) confirms, in relevant part, that an "attorney or accountant employed to represent a committee appointed under section 1102…may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case." 11 U.S.C. §1103(b).[1] The conditions imposed by section 1103 prohibit FTI from simultaneously representing entities who hold adverse interests in these Chapter 11 Cases. As explained below, FTI does not represent another entity having an adverse interest in connection with the Chapter 11 Cases. FTI's retention under section 1103 is therefore entirely appropriate.

4. Instead of focusing attention on this standard, the US Trustee cites numerous cases that analyze professional retention under section 327(a) of the Bankruptcy Code. *See* Objection

---

[1] Because the prohibitions contained in the first section of section 1103(b) do not include "other agents," certain bankruptcy courts have held that such requirements apply only to attorneys and accountants and not the "other agents" a statutory committee may hire to perform services, including financial advisors, and such agents are theoretically eligible for employment by a committee even if they also represent an entity having an adverse interest in connection with the case. *See In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 579 (Bankr. D. Utah 1985). However, the Committee also seeks to compensate FTI pursuant to section 328 of the Bankruptcy Code, which prohibits holding an adverse interest and requires disinterestedness from professionals.

at 6-7.² Of course, as a threshold matter, the retention requirements of § 327(a) are much more restrictive and inapplicable to statutory committee representations. *See In re Wheatfield Bus. Park LLC,* 286 B.R. 412, 418 n. 2 (Bankr. C.D. Cal. 2002) ("Professionals appointed to represent or assist a committee of creditors are governed by § 1103, which has different standards from § 327(a)."); *In re Enron Corp.*, 2002 Bankr. LEXIS 1720 at *21-22, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. May 23, 2002) ("It should be observed that the standards for the retention of professionals under § 327(a) are different from the standards for retention of professionals under § 1103(b).").

5. Thus, turning to the applicable standard, first and foremost, a professional hired to represent the creditors' committee may not also represent an entity that holds "an adverse interest in connection with the case." *See* 11 U.S.C. §1103(b). The Bankruptcy Code does not define "adverse interest" and the concept has been left to the development of case law. *See In re 3dfx Interactive, Inc.*, 2006 Bankr. LEXIS 1498 at *15-16, Case No. 02-55795 (JRG) (Bankr. N.D. Cal. June 29, 2006). Adverse interest is most often defined as "(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate." *Id*. (finding the existence of an "adverse interest" where counsel to the creditors' committee simultaneously resisted a monetary recovery sought by the chapter 11 trustee, which would have benefitted the members of the creditors' committee); *see also In re CF Holding Corp.*, 164 B.R. 799 (Bankr. D. Conn. 1994); *In re AroChem Corp.*, 176 F.3d 610, 622–23, (2d Cir. 1999); *In re Roberts*, 46 B.R. 815, 827 (Bankr.

---

² The US Trustee cites a number of cases in which a trustee's retention or a professionals' retention pursuant to sections 321 or 327, respectively, was denied. These cases are not applicable here. *See In re Envirodyne Indus., Inc.*, 150 B.R. 1008 (Bankr. N.D. Ill. 1993); *In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613 (Bankr. E.D. Cal. 2012); *In re Shat*, No. BAP.NV-09-1092-MODK, 2009 WL 7809004 (B.A.P. 9th Cir. Nov. 25, 2009); *In re Woodworkers Warehouse, Inc.*, 303 B.R. 740 (Bankr. D. Del. 2004); *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463 (3d Cir. 1998); *In re Hammer*, No. BAP WW-06-1373-MODJ, 2007 WL 7540944 (B.A.P. 9th Cir. Oct. 11, 2007); *In re Quality Beverage Co., Inc.*, 216 B.R. 592 (Bankr. S.D. Tex. 1995); *In re Ampal-Am. Israel Corp.*, 534 B.R. 569 (Bankr. S.D.N.Y. 2015), *aff'd,* 554 B.R. 604 (S.D.N.Y. 2016), *aff'd*, 691 F. App'x 12 (2d Cir. 2017); *In re AFI Holding, Inc.*, 355 B.R. 139 (9th Cir. BAP 2006) (applying disinterestedness standard for service of an appointed trustee); *In re AFI Holding, Inc.*, 530 F.3d 832 (9th Cir. 2008) (same).

D. Utah 1985). As described in the Star Declaration, the pre-petition matters engaged in by FTI and Compass Lexecon do not meet either of these standards.

6. The bulk of the Objection focuses on the engagements of Compass Lexecon, which the US Trustee believes creates an actual conflict of interest. *See* Objection at 6-7. As the outset, it is important for the Court to understand the separateness of FTI and its subsidiary, Compass Lexecon. Among other things, Compass Lexecon is an entirely separate business and corporate entity from FTI. *See* Star Declaration, ¶¶18(b), 21(a), 24. Compass Lexecon has separate management, separate employees, and separate information technology systems that in no way overlap with FTI's management, employees or information technology systems, respectively. *Id.* In most locations, FTI and Compass Lexecon work from separate offices. *Id.* Ordinarily, FTI professionals do not have access to the work product undertaken or completed by Compass Lexecon in its engagements. FTI and Compass Lexecon are not the same entity but instead affiliated entities with separate operations. FTI's retention should not be in question due to any Compass Lexecon engagement.

7. As an additional prophylactic measure undertaken out of an abundance of caution (as detailed in the Star Declaration), FTI erected appropriate ethical walls and other screening procedures at FTI and Compass Lexecon in order to maintain the confidentiality of client information. *See* Star Declaration at ¶ 23. Ethical walls and screening methods such as those employed by FTI are common practice at large financial advisory firms such as FTI. Though the US Trustee argues that the ethical wall procedures will only protect client confidences, *see* Objection at 8-9, bankruptcy courts have held that effective screening procedures will cure concerns over disinterestedness. *See In re Sea Island Co.*, 2010 Bankr. LEXIS 3990 at *9-10 (Bankr. S.D. Ga. Sept. 20, 2010) (holding a law firm may represent a debtor as long as effective ethical walls are maintained to adequately screen non-disinterested lawyer); *In re Chicago S. Shore & S. Bend R.*, 101 B.R. 10, 14-16 (Bankr. N.D. Ill. 1989) (law firm with two non-disinterested attorneys permitted to represent trustee over objection of the US Trustee where firm instituted an ethical wall to screen interested attorneys from the case as soon as trustee was nominated for the position). Not surprisingly, bankruptcy courts throughout the country have authorized financial

advisor retentions using similar ethical wall and screening procedures. *See*, *e.g.*, *In re Verity Health Sys. of Cal., Inc., et al.*, Case No. 18-20151 (EMR) (Bankr. C.D. Cal. Nov. 14, 2018) [Dkt. No. 822]; *In re Vanguard Nat. Res., LLC*, Case No. 17-30560 (MI) (Bankr. S.D. Tex. Apr. 18, 2017) [Dkt. No. 611]; *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 21, 2008) [Dkt. No. 1655]; *In re Motors Liquidation Co., et al.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Aug. 18, 2009) [Dkt. No. 3829].

8. With respect to the concurrent engagement of Compass Lexecon, even if the Court were to disregard the separateness of that business from that of FTI, FTI's proposed engagement by the Committee does not represent an "adverse interest" of the Debtors' estate or the Committee. Unlike in *3dfx Interactive*, Compass Lexecon is not engaged in an activity that adversely affects the Committee, such as resisting a monetary recovery to the Debtors' estates. Instead, prior to the Petition Date, Compass Lexecon was engaged to assess and evaluate potential damages related to the 2017 and 2018 California wildfires.

9. The relief requested in the Application does not represent a divergence from standard bankruptcy practice. Indeed, similar financial advisor representations, in which a financial advisor represents the creditors' committee and its affiliates or subsidiaries advise a debtor in ongoing litigation or matters related to the bankruptcy cases, have been approved by other bankruptcy courts. *See*, *e.g.*, *In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico, as representative of the Commonwealth of Puerto Rico, et al.*, Case No. 17-3283 (LTS) (D.C.P.R. Oct. 6, 2017) [Dkt. No. 1413] (approving FTI's retention as financial advisor to the official committee of retired employees where Compass Lexecon was disclosed as continuing to provide economic consulting services to the Debtor); *In re Gen. Growth Props., Inc.*, Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. July 24, 2009) [Dkt. No. 1082] (approving FTI's retention as financial advisor to the official committee of unsecured creditors where Compass Lexecon was disclosed as continuing to represent some of the Debtors in litigation); *In re Midway Games Inc.*, Case No. 09-10465 (KG) (Bankr. D. Del. Apr. 20, 2009) [Dkt. No. 267] (approving FTI's retention as financial advisor to the official committee of unsecured creditors where FTI's subsidiary FD Ashton Partners was also retained as one of Debtors' disclosed ordinary course professionals).

Accordingly, the US Trustee's objection regarding the Compass Lexecon engagement should be overruled.

10. The US Trustee also objects to FTI's retention because it believes the Environmental Solutions Engagement, the Subrogation Engagement and the Tiger Engagement (each as defined in the Star Declaration) constitute conflicts of interest. *See* Objection at 6. Even a cursory review of these engagements confirms that these representations do not amount to interests adverse to the Debtors' estates or the Committee. Instead, in the Subrogation Engagement, FTI simply identified opportunities and made introductions for a purchaser of insurance subrogation claims; this does not involve making any assessment regarding the claims, their value, or their underlying validity. Moreover, this will not affect the economic interests of the estates and does not create a bias against the estates or the Committee. *See* Star Declaration at ¶22(a). Similarly, FTI's representation of the Debtors and many other entities in analyzing post-closure obligations relating to a landfill site does not affect the economic interests of the estates or create biases against the estates or the Committee. *See id.* at ¶21(b). Finally, in connection with the Tiger Engagement, FTI represents Tiger Natural Gas, Inc., an unsecured creditor of the Debtors – which aligns with the representation of the Committee because Tiger Natural Gas, Inc. is a member of the same class of creditors. *See id.* at ¶22(b); *see also In re Calabrese*, 173 B.R. 61, 63 (Bankr. D. Conn. 1994) ("As is apparent from §1103(b), Congress created an exception for the employment of an [advisor] representing creditors of the same class as represented by the [c]ommittee…").

11. Further, section 1103(b) does not prohibit simultaneous representation of both a committee appointed under 11 U.S.C. §1102 and a party with an adverse interest to the committee so long as the professional represents the holder of the adverse interest in matters unrelated to the debtor's bankruptcy case. *See Daido Steel Co., Ltd. v. Official Comm. of Unsecured Creditors*, 178 B.R. 129, 132 (N.D. Ohio 1995) (counsel permitted to represent a creditors' committee even though the firm represented a potential acquirer of the debtor on matters not related to the bankruptcy case); *see also In re Pilgrim Med. Ctr. Inc.*, 574 B.R. 523, 531 (Bankr. D.N.J. 2017) (counsel's representation of secured creditors of a debtor in matters wholly unrelated to the

bankruptcy case did not disqualify counsel from representing the official committee appointed in the cases).

12. Accordingly, the US Trustee's objection regarding the Environmental Solutions Engagement, the Subrogation Engagement and the Tiger Engagement should be overruled. As disclosed in the Star Declaration, none of these representations violate the requirement of section 1103(b) because they are representations in matters wholly unrelated to the bankruptcy cases. *See* Star Declaration at ¶¶ 21(b), 22. The Environmental Solutions Engagement involves post-closure landfill obligations. *See* Star Declaration at ¶ 21(b). The Subrogation matter involves the purchase of insurance subrogation claims. *See* Star Declaration at ¶ 22(a). The Tiger matter involves a dispute over billing and collections. While each involve or involved the Debtors in some way, each are wholly unrelated to these bankruptcy cases. *See* Star Declaration at ¶ 22(b).

13. Since its engagement during the early days of these Chapter 11 Cases, FTI has dedicated the considerable resources necessary to serving the extensive needs of the Committee in these highly complex bankruptcy cases. It has done so with a singular focus on serving the interests of the Committee. And, while FTI, like many financial advisors and other professionals involved in the Chapter 11 Cases has engaged in a number of matters related to the Debtors, what is critical for the purposes of the Application is that none of these matters present an adverse interest in these Chapter 11 Cases. Moreover, FTI has taken all steps necessary, including those approved by other bankruptcy courts on numerous other similar situations, to ensure that no question can be raised as to FTI's interest in representing the Committee. This is all that the Bankruptcy Code requires.

## CONCLUSION

For the reasons set forth herein, the Objection should be overruled and the Application should be approved.

Dated: April 22, 2019                **DLA PIPER LLP (US)**

*/s/ Joshua D. Morse*
　　　Joshua D. Morse

*Counsel to FTI Consulting, Inc.*