WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                 **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case,*<br>*No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br>(Jointly Administered)<br><br>**DEBTORS' OBJECTION TO MOTION BY TURN FOR APPOINTMENT OF OFFICIAL COMMITTEE OF RATEPAYER CLAIMANTS**<br><br>Docket Ref.: 1324<br>Hearing Date:   May 8, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place:   United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Objection (the "**Objection**") to the *Motion by TURN for Appointment of Official Committee of Ratepayer Claimants Pursuant to 11 U.S.C. §§ 1102(a)(2), 105(a); Memorandum of Points & Authorities*, dated April 10, 2019 [Docket No. 1324] (the "**Motion**[1]"). In support of the Objection, the Debtors submit the Declaration of Bruce T. Smith (the "**Smith Declaration**"), filed contemporaneously herewith.

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | 6 |
| II. | BASIS FOR RELIEF | | 9 |
| | a. | TURN has Failed to Demonstrate that Ratepayers are Prepetition Creditors of the Estates as Required under Section 1102 of the Bankruptcy Code to Support the Extraordinary Remedy of Appointing a Third Official Committee | 10 |
| | b. | Special Interest Groups are not Appropriate Members of Official Committees as they are Neither Creditors of the Debtors nor Authorized Representatives of Creditors | 12 |
| | c. | TURN has Failed to Demonstrate that the Appointment of a Third Official Committee is Required to Adequately Represent Ratepayer Interests | 13 |
| III. | CONCLUSION | | 15 |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assembly v. Public Utilities Commission*
(1995 23 Cal.4th 87) ............................................................................................................... 8

*California Manufacturer's Association v. Public Utilities Commission*,
24 Cal3d. 836 (1979) ............................................................................................................. 8

*In re Dana Corp.*,
344 B.R. 35 (Bankr. S.D.N.Y. 2006) ................................................................................ 9, 10

*In re Dow Corning Corp.*,
194 B.R. 121 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258
(E.D. Mich. 1997) ..................................................................................................................... 9

*In re Eastern Maine Electric Cooperative, Inc.*,
121 B.R. 917 (Bankr. D. Me. 1990).................................................................................... 11

*In re Enron Corp.*,
279 B.R. 671 (Bankr. S.D.N.Y. 2002) ............................................................................. 9, 10

*In re Johns-Manville Corp.*,
68 B.R. 155 (Bankr. S.D.N.Y. 1986), *appeal dismissed* 824 F.2d 176 (2d Cir.
1987) ........................................................................................................................................ 10

*In re Kalvar Microfilm, Inc.*,
195 B.R. 599 (Bankr. D. Del. 1996) .................................................................................. 10

*In re Leap Wireless Intern., Inc.*,
295 B.R. 135 (Bankr. S.D. Cal., 2003) ............................................................................. 10

*In re McLean Indus., Inc.*,
70 B.R. 852 (Bankr. S.D.N.Y. 1987)................................................................................. 10

*Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of
Enron Corp.*, No. 02 CIV. 6274 (GBD), 2003 WL 22327118 (S.D.N.Y. Oct. 10,
2003) .................................................................................................................................... 9, 14

*In re Nat'l R.V. Holdings, Inc.*,
390 B.R. 690 (Bankr. C.D. Cal., 2008)............................................................................. 9, 10

*In re Nationwide Sports Distributors, Inc.*,
227 B.R. 455 (Bankr. E.D. Pa. 1998) ................................................................................. 4

*In re Pacific Gas & Electric Company*,
Case No. 01-30923 (DM), (Bankr. N.D. Cal. May 18, 2001) ......................................... 6

*In re Park W. Circle Realty, LLC*,
No. 10-12965 (AJG), 2010 Bankr. LEXIS 2463 (Bankr. S.D.N.Y. Aug. 11, 2010)................... 10

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

*In re Residential Capital, LLC,*
    480 B.R. 550 (Bankr. S.D.N.Y. 2012) .................................................................. 14

**Statutes**

11 U.S.C. § 101 ........................................................................................................ 7, 12

11 U.S.C. § 1102(a) ........................................................................................... 9, 10, 11, 12

11 U.S.C. § 1129(a)(6) ................................................................................................. 8, 13

Cal. Const. art. XII, § 1 .................................................................................................. 6

Cal. Pub. Utils. C. § 20(a) ............................................................................................. 6

Cal. Pub. Utils. C. § 1801 ............................................................................................. 6

**Other Authorities**

CPUC Decision No. 18-03-017 ................................................................................. 7-8, 11

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.        PRELIMINARY STATEMENT

As the Debtors continue to administer these Chapter 11 Cases, they remain firmly committed to providing their approximately 16 million customers with the safe and reliable natural gas and electric service they expect and deserve.  As provided by the California Constitution and the California Legislature, one of the primary means by which the Utility's customers can and do provide their view and input on the Utility's public utility services is through the California Public Utilities Commission ("**CPUC**").[2]  TURN and the entities supporting its Motion have been and continue to be active participants in CPUC proceedings, which provide not only a forum for TURN and such other entities to present and litigate their positions on behalf of their constituencies, but also provide a statutory means for them to receive compensation for their costs of intervention.[3]  The Debtors continue to fully support the rights and opportunities for TURN and other consumer representatives to fully participate in CPUC proceedings, including those current proceedings relating to safety and reliability that TURN and other interested parties are actively participating in currently.

However, the critical and determinative facts before the Court today have not changed from the time that TURN previously sought the appointment of a ratepayer committee in the Utility's 2001 chapter 11 case and such an extraordinary remedy remains unnecessary and unwarranted here.  As the Court correctly held in 2001 and remains true today, the Debtors' customers generally do not hold prepetition claims against the estates in their capacities as ratepayers; rather, from time to time they are entitled to recover credits as determined by the CPUC in the form of rate adjustments to their monthly billing statements.[4]  *See In re Pacific Gas & Electric Company*, Case No. 01-30923 (DM), at 6 (Bankr. N.D. Cal. May 18, 2001) [Docket No. 599] (the "**2001 Decision**").

---

[2] *See* Cal. Const. art. XII, § 1 and Cal. Pub. Utils. C. § 20(a).

[3] *See* Cal. Pub. Utils. C. § 1801.

[4] The Debtors recognize that certain ratepayers may otherwise hold claims against the estates in other capacities, including claims arising out of or relating to the Northern California Wildfires; however, to the extent any ratepayers hold claims in such other capacities, the Debtors submit, and it is not contested by TURN, that the interests of such parties are more than adequately represented by the

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1    Notwithstanding the Court's prior 2001 Decision, TURN, in an attempt to manufacture

2    some support for its Motion, cites to the fact that certain of the Utility's customers are entitled to

3    receive annual credits in their upcoming billing cycles on account of greenhouse gas ("**GHG**")

4    allowance auctions as the sole differentiating factor from 2001 and evidence, in TURN's view, that

5    the ratepayers now hold prepetition claims against the Utility as defined under section 101(5) of the

6    Bankruptcy Code – *however, the amounts cited by TURN as being "owed" have been continuously*

7    *credited and continue to be credited to the rates of ratepayers as reflected in the applicable Utility*

8    *tariffs and rate schedules.*  *See* Smith Decl. at 3.  Any additional amounts that have been or in the

9    future are determined by the Utility's regulatory authorities to be credited to the ratepayers in the form

10   of rate adjustments will be issued or applied by the Utility in accordance with its applicable tariffs and

11   rate schedules as required under CPUC rulings and regulations and as previously authorized by the

12   Court on a final basis in connection with the Debtors' Public Purpose and Customer Programs

13   Motion.[5]  Furthermore, as previously set forth in the Public Purpose and Customer Programs Motion,

14   these credits and rate adjustments represent funds that are collected and remitted under California's

15   GHG emissions reduction programs and rules and, therefore, are mandated by state law.  *See* Public

16   Purpose and Customer Programs Motion, at 33–34.  And the Debtors fully intend to comply with their

17   ongoing regulatory obligations, including with respect to rates and rate adjustments, as mandated by

18   the CPUC and otherwise required under the law.

19   Moreover, even if the Utility was not continuing to issue the credits and rate

20   adjustments cited by TURN (which it is), the ratepayers still would not hold prepetition claims against

21   the estates.  The CPUC already has concluded that the GHG credits are *not* "refunds" owed to

---

Official Committee of Unsecured Creditors or the Official Committee of Tort Claimants that have
been appointed in these Chapter 11 Cases.

[5] The "**Public Purpose and Customer Programs Motion**" refers to the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 507(a) and Fed. R. Bankr. P. 6003 and 6004 for Interim and Final Orders (i) Authorizing Debtors to (a) Maintain and Administer Customer Programs, Including Public Purpose Programs, and (b) Honor any Prepetition Obligations Relating Thereto, and (ii) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* [Docket No. 16], which was approved by the Court on a final basis by order dated March 12, 2019 [Docket No. 843] (the "**Final Public Purpose and Customer Programs Order**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

individual customers under California utility law. *See* CPUC Decision No. 18-03-017 ("GHG allowance proceeds are not analogous to the funds found to qualify as 'rate refunds' in *California Manufacturer's Association v. Public Utilities Commission*, 24 Cal3d. 836 (1979) and *Assembly v. Public Utilities Commission* (1995 23 Cal.4th 87.").

Furthermore, as was similarly the case in 2001, TURN is not suggesting that its proposed ratepayer committee be comprised of any of the individuals or small business owners that TURN argues may be prepetition creditors of the estates; rather, TURN suggests that such a committee should be comprised of special interest groups that are not creditors themselves and do not owe financial fiduciary duties to, or maintain agency relationships with, the ratepayers they would purport to represent. Such groups have their own mandates, agendas, and interests in the outcome of the Debtors' Chapter 11 Cases and pursuing or representing those going forward interests is not a proper purpose for appointing of an official committee. As the Court previously stated in 2001, "having an interest in a result (as all ratepayers do), does not rise to the level of having a claim as defined in the Bankruptcy Code." 2001 Decision, at 8.

Finally, as the Court also noted in the 2001 Decision, the ratepayers have other options available to them to safeguard and adequately represent their interests and, therefore, the extreme remedy of appointing a third official committee in these Chapter 11 Cases is not necessary or warranted. TURN and the other special interest and advocacy groups cited in their Motion are certainly capable of addressing the concerns of ratepayers in the appropriate fora, including in the appropriate legislative and regulatory bodies. As the Court previously observed, "Whatever benefits may be ordered by regulatory agencies such as the California Public Utilities Commission ("CPUC") will no doubt follow proceedings before such a body, and the right of ratepayers or others to be heard there will be established under applicable non-bankruptcy law." 2001 Decision, at 6–7. To the extent those interests are impacted here in these Chapter 11 Cases, section 1129(a)(6) of the Bankruptcy Code generally requires the Debtors receive the approval of the CPUC with respect to rate changes proposed in connection with a chapter 11 plan – and the CPUC (as well as other governmental and regulatory agencies) have been actively involved and well represented in these Chapter 11 Cases. To the extent any customers *arguendo* are creditors of the estates in their capacities as ratepayers (and the Debtors

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

submit that they are not), they are already represented by the two official Committees appointed in these Chapter 11 Cases, most specifically the Official Committee of Unsecured Creditors, which was appointed as a fiduciary for all unsecured creditors at large in these Chapter 11 Cases and is more than capable of adequately representing the interests of the individuals and small business owners cited by TURN.

The undisputed facts demonstrate that the U.S. Trustee's conclusion was correct, and that the extraordinary remedy of appointing a third official committee to represent ratepayers who are not creditors or claimants in these Chapter 11 Cases is not warranted for substantially the same reasons as the Court found in the 2001 Decision. Therefore, the Court should reject TURN's arguments and deny the Motion.

## II. BASIS FOR RELIEF

The appointment of an additional committee under section 1102(a)(2) is considered an "extraordinary remedy." *See In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 695 (Bankr. C.D. Cal., 2008); *see also In re Enron Corp.*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002), *aff'd sub nom. Mirant Ams. Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, 2003 U.S. Dist. LEXIS 18149 (S.D.N.Y. Oct. 9, 2003); *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006). The movant has the burden of proving that the appointment of an additional committee is necessary to insure "adequate representation" of the moving party. *See In re Nat'l R.V. Holdings, Inc.*, 390 B.R. at 695; *see also In re Enron Corp.*, 279 B.R. at 685; *In re Dow Corning Corp.*, 194 B.R. 121 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997). The determinative factors in considering the adequacy of representation are:

(a) The ability of the existing committees to function;

(b) The nature of the case;

(c) The standing and desires of the various constituencies;

(d) The ability for creditors to participate in the case even without an official committee and the potential to recover expenses pursuant to section 503(b);

(e) The delay and additional cost that would result if the Court grants the motion;

(f) The tasks that a committee or separate committee is to perform; and

(g) Other factors relevant to the adequate representation issue.

*In re Enron Corp.*, 279 B.R. at 685; *see also In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 601 (Bankr. D. Del. 1996); *In re McLean Indus., Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987); *In re Johns-Manville Corp.*, 68 B.R. 155 (Bankr. S.D.N.Y. 1986), *appeal dismissed* 824 F.2d 176 (2d Cir. 1987). No one factor is dispositive, and the amount of due consideration given to each depends on the circumstances of the particular chapter 11 case. *See In re Nat'l R.V. Holdings, Inc.*, 390 B.R. at 695–96; *see also In re Leap Wireless Intern., Inc.*, 295 B.R. 135, 137 (Bankr. S.D. Cal., 2003); *In re Park W. Circle Realty, LLC*, No. 10-12965 (AJG), 2010 Bankr. LEXIS 2463, *9 (Bankr. S.D.N.Y. Aug. 11, 2010); *In re Dana Corp.*, 344 B.R. at 38; *In re Kalvar Microfilm*, 195 B.R. at 600-01. A Court need only focus on those factors it deems essential to the particular case.

TURN has failed to and, indeed cannot, meet this heavy burden as the ratepayers are not prepetition creditors as required under section 1102 of the Bankruptcy Code to form an official creditors committee. Furthermore, even if the ratepayers were prepetition creditors (which they are not), the existing Committees and other legislative and regulatory bodies ensure that the interests of the ratepayers are more than adequately represented in these Chapter 11 Cases and, therefore, the additional cost and delay to the estates that would be incurred in connection with the appointment of a third official committee is not warranted. Accordingly, TURN's request to appoint an official ratepayers committee should be rejected and the Motion should be denied.

a. **TURN has Failed to Demonstrate that Ratepayers are Prepetition Creditors of the Estates as Required under Section 1102 of the Bankruptcy Code to Support the Extraordinary Remedy of Appointing a Third Official Committee**

TURN's arguments fail to prove that the ratepayers are creditors as defined under the Bankruptcy Code. With that failure, TURN is incapable of proving that the U.S. Trustee abused its discretion by denying TURN's request for the appointment of a third official committee.[6]

---

[6] TURN correctly notes in the Motion that the applicable standard of review of the U.S. Trustee's decision to decline to appoint a ratepayer committee is, as the Court applied in 2001, the "abuse of discretion" standard, which requires TURN to show that the U.S. Trustee "disregarded controlling law." 2001 Decision, at 3–4.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Section 1102(a)(1) authorizes the U.S. Trustee to appoint a committee of creditors holding unsecured claims and additional committees of creditors or of equity security holders as the U.S. Trustee deems appropriate. 11 U.S.C. § 1102(a)(1). Section 1102(a)(2) of the Bankruptcy Code authorizes a party in interest to request the court to order the appointment of additional committees of creditors or equity holders "if necessary to assure adequate representation of creditors or of equity security holders." 11 U.S.C. § 1102(a)(1).

As the Court previously noted in its 2001 Decision (*citing In re Eastern Maine Electric Cooperative, Inc.*, 121 B.R. 917, 927 (Bankr. D. Me. 1990)), "Unless the interests of the cooperative's membership [*i.e.*, the ratepayers] can be <u>characterized as those of creditors</u> or of equity security holders, [section] 1102(a) grants no authority to establish a committee." 2001 Decision, at 5 (emphasis in original). As set forth above, the ratepayers do not hold prepetition claims against the estates.

First, notwithstanding TURN's assertion to the contrary, the CPUC has already ruled that the GHG credits are not refunds owed to individual customers under California utilities law. *See* CPUC Decision No. 18-03-017. Second, as set forth in the Smith Declaration, the GHG credits which TURN relies on as the sole basis for asserting that ratepayers are prepetition creditors have been and continue to be credited to the ratepayers as reflected in the applicable Utility rate schedules and tariffs and will be in the future. *See* Smith Decl. at 3. As set forth in the Public Purpose and Customer Programs Motion, the credits and rate adjustments cited by TURN represent funds that are collected and remitted as mandated by California's GHG laws and regulations for credits to the Utility's rates for the benefit of ratepayers and other third parties. Any additional amounts that have been or in the future are determined by the Debtors' regulatory authorities to be credited to the ratepayers will be done in accordance with CPUC rulings, regulations, and approved tariffs.

Moreover, even if the Utility was not already in the process of issuing the credits and rate adjustments cited by TURN (which it is), the ratepayers still would not hold prepetition claims against the Debtors' estates. Pursuant to the Final Public Purpose and Customer Programs Order, this Court already has authorized the Debtors to continue various programs for the benefit of their customers and to advance public policy goals, including the GHG emissions reduction programs cited by TURN in the Motion and required by the California Air Resources Board that provide certain

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

credits to customers, and to honor obligations incurred in connection therewith. Final Public Purpose and Customer Programs Order, at ¶ 2. The Final Public Purpose and Customer Programs Order also authorizes the Debtors to provide credits to Customers in accordance with applicable laws (i) as a result of corrections in rates, metering, and other charges, (ii) in connection with the Debtors' budget billing plan, which is intended to normalize Customer payments over the course of the year, and the Debtors' solar tariffs, which compensate Customers for surplus energy delivery, and (iii) to address other similar Customer concerns and issues. *Id*. Accordingly, with respect to the credits referenced by TURN, the Utility is continuing to apply such credits to the ratepayers in the form of billing adjustments in the ordinary course as required under applicable law and as authorized by this Court. Under these circumstance, it is difficult to conceive how ratepayers in their capacities as such, could be creditors in these cases to warrant the appointment of an official committee.

Accordingly, as was the case in the 2001 Decision, the ratepayers do not have prepetition claims against the estates and, therefore, the appointment of an official committee of ratepayers is not authorized under section 1102(a) of the Bankruptcy Code.[7]

b.      **Special Interest Groups are not Appropriate Members of Official Committees as they are Neither Creditors of the Debtors nor Authorized Representatives of Creditors**

As was similarly the case in 2001, TURN is not suggesting that its proposed ratepayer committee be comprised of any of the individuals or small business owners that TURN argues may be prepetition creditors of the estates; rather, TURN suggests that such a committee should be comprised

---

[7] Furthermore, as TURN notes in its Motion, the Semi-Annual California Climate Credits are provided to residential customers through the April and October bill cycles. Section 101(10) defines "creditor" to mean an entity that has a "claim against the debtor *that arose at the time of or before the order for relief*." 11 U.S.C. § 101(10) (emphasis added). As the Court stated in the 2001 Decision "Thus, even though rights to payment that arose after the order for relief may be encompassed within the definition of "claim" (*see* 11 U.S.C. § 101(5)), Congress had in mind that the creditors committees appointed in Chapter 11 could consist only of holders of pre-petition claims, not post-petition claims." 2001 Decision, at 5. Accordingly, even if the ratepayers were determined to have claims against the estates, there exists a material question of fact as to whether such claims relate to the prepetition or postpetition period.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

of special interest groups that are not themselves creditors nor do they owe fiduciary duties to, or maintain financial agency relationships with, the ratepayers they would purport to represent. Specifically, TURN proposes that an official ratepayer committee be comprised of seven (7) individuals from the following special interest groups: (i) TURN; (ii) the Public Advocates Office at the CPUC; (iii) the Energy Policy of California Farm Bureau Federation; (iv) Federal Executive Agencies; (v) California Large Energy Consumer Advocates; (vi) AARP California; and (vii) Greenling Institute. Motion, at ¶ 4.

In its Motion, however, TURN does not cite a single precedent for appointment of an official committee consisting solely or principally of special interest organizations or advocacy groups that are concededly not themselves creditors – nor can they. At best, such entities may be considered "parties in interest" and, as the Court noted in the 2001 Decision, "Congress certainly knew the difference between 'parties in interest' and 'creditors' when it empowered the latter to organize as a committee and participate in bankruptcy cases at the expense of the estate. It did not extend that right to 'parties in interest.'" 2001 Decision, at 8. Accordingly, the appointment of an official committee of ratepayers comprised exclusively of special interest groups is not proper and the Motion should be denied.

### c. TURN has Failed to Demonstrate that the Appointment of a Third Official Committee is Required to Adequately Represent Ratepayer Interests

TURN argues that the interests of ratepayers are not adequately represented and cannot be adequately represented by the CPUC or the two official Committees that have already been appointed in these Chapter 11 Cases. This statement is both misplaced and unsupportable.

First, as set forth above, section 1129(a)(6) of the Bankruptcy Code requires the Debtors receive the approval of the CPUC with respect to any rate changes proposed in connection with a chapter 11 plan – and the CPUC has been actively involved and well represented in these Chapter 11 Cases. TURN and the other advocacy and special interest groups cited in the Motion are

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

sophisticated parties that are capable of representing their own interests, and regularly do so before the CPUC.

Second, to the extent that the ratepayers can be categorized as prepetition "creditors" of the Debtors' estates (which, again, the Debtors submit they are not), their interests are more than adequately represented by the two official Committees that already have been appointed in these Chapter 11 Cases. The Official Creditors Committee, specifically, has been appointed as a fiduciary for all unsecured creditors and is more than capable of adequately representing the interests of the individuals and small business owners cited by TURN to the extent they have prepetition claims. The fact that the Official Creditors Committee represents a variety of unsecured creditors is not uncommon as the "principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished. *Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02 CIV. 6274 (GBD), 2003 WL 22327118, at *6 (S.D.N.Y. Oct. 10, 2003).

TURN asserts, however, that the neither Committee "can be expected to separately assert and advocate for the interests of ratepayers as regards future rate increases that will necessarily be required to confirm a plan." Motion, at ¶ 12. However, advocating future rates is not the role of an official committee of creditors in a chapter 11 case. *See In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 463 (Bankr. E.D. Pa. 1998) ("In general, the purpose of such committees is to represent the interests of unsecured creditors and to strive to maximize the bankruptcy dividend paid to that class of creditors.").

While it has been said countless times already that these Chapter 11 Cases are large and complex, the large size of a bankruptcy case alone is not sufficient to warrant the appointment of yet another additional official committee. *See In re Residential Capital, LLC*, 480 B.R. 550, 558 (Bankr. S.D.N.Y. 2012) ("The large size of a bankruptcy case in and of itself is not determinative of whether additional committees should be appointed."). Clearly here, the added cost and expense that would be incurred with the appointment of an official ratepayer committee with its own set of professionals and the attenuated delay to the administration and progress of these Chapter 11 Cases

outweigh any purported benefit to be gained from the appointment of a third official committee. This is particularly the case where, as demonstrated above, the purported constituency of said committee, the ratepayers, are not creditors of the estates and, if they were, their interests are already more than adequately represented by various other parties and entities in these cases.

In conclusion, the Court correctly summarized this issue in the closing of its 2001 Decision where it said:

> In summary, the court reminds the parties that the Bankruptcy Code, and the bankruptcy court, were designed to resolve debtor-creditor problems; state agencies are where issues such as rates for electricity are handled. In its wisdom, Congress was correct: the estate should pay for dealing with those debtor-creditor issues in bankruptcy. It should not be burdened with matters likely to be resolved elsewhere.

2001 Decision, at 10.

Accordingly, TURN's request for the appointment of an official committee of ratepayers should be rejected and the Motion should be denied.

## III. CONCLUSION

WHEREFORE the Debtors respectfully request that the Court deny the Motion and grant such other and further relief as the Court may deem just and appropriate.

Dated: April 24, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**


/s/ *Jane Kim*
          Jane Kim

*Attorneys for Debtors and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119