Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Proposed Counsel for the Official Committee of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors. | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered) |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM) | **OBJECTION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION BY TURN FOR APPOINTMENT OF OFFICIAL COMMITTEE OF RATEPAYER CLAIMANTS PURSUANT TO 11 U.S.C. §§ 1102(a)(2), 105(a)**<br><br>Date: May 9, 2019<br>Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>Re: Docket No. 1324 |

The Official Committee of Unsecured Creditors (the "Creditors' Committee") appointed in the above-captioned chapter 11 cases, by its proposed attorneys, Milbank LLP, hereby submits this objection to the *Motion by TURN for Appointment of Official Committee of Ratepayer Claimants Pursuant to 11 U.S.C. §§ 1102(a)(2), 105(a)* [Dkt. No. 1324] (the "Motion") filed by The Utility Reform Network ("TURN").[1] In support of its objection, the Creditors' Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. By its Motion, TURN is asking the Court to appoint an additional official committee pursuant to Bankruptcy Code section 1102(a) to represent the interests of the Debtors' ratepayers. When faced with the same request over two months ago, the U.S. Trustee denied it, and the Court should do the same. The appointment of an additional ratepayer committee is: (a) inappropriate because ratepayers are generally not creditors of the Debtors; and (b) unnecessary because, to the extent ratepayers hold creditor claims, their interests as creditors are already adequately protected by the Creditors' Committee.

2. As a threshold matter, TURN does not appear to be a "party in interest" under section 1109(b) of the Bankruptcy Code and, as such, does not appear to have standing to bring the Motion on behalf of ratepayers in these cases.

3. In addition, the Motion seeks appointment to the requested additional official committee of employees of various consumer advocacy and special interest groups, including TURN itself (the "Special Interest Groups"). While individual ratepayers may claim to be parties in interest in these cases as a result of temporary claims, neither TURN nor any of the other Special Interest Groups appear to be entitled to such "party in interest" status.

4. While some ratepayers may hold prepetition claims to the extent they expect account credits stemming from a 2018 auction, the Motion fails to recognize that those credits will be issued by the Debtors (and any underlying claims thereby extinguished) in the ordinary course as adjustments on their customers' statements in the near future. Accordingly, to

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

the extent ratepayers qualify as "creditors" based on account credits, any such status is transitory and will be soon extinguished.

5. Finally, ratepayers' special interest in avoiding higher future utility rates can and will be better and more effectively addressed in venues other than this Court. Indeed, the Special Interest Groups are already participating in the legislative process and in various administrative proceedings before the California Public Utilities Commission (the "CPUC"), the most appropriate forum for asserting and resolving ratepayer issues. In fact, a number of these Special Interest Groups have already been granted party status in pending CPUC proceedings.

6. Thus, TURN's request for appointment of an additional official committee, funded by the Debtors' estates, is both inappropriate and unnecessary. The Court should deny the Motion.

## BACKGROUND

7. On January 9, 2019, the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code.

8. On February 12, 2019, the U.S. Trustee appointed and formed the Creditors' Committee pursuant to section 1102(a) of the Bankruptcy Code.

9. On February 6, 2019, TURN submitted a letter to the U.S. Trustee requesting the appointment of an official committee of ratepayer claimants (a "Ratepayer Committee"). *See* Motion at 3. On February 20, 2019, the U.S. Trustee declined to appoint such a committee, noting, among other things, that "appointment of such a committee would be outside the United States Trustee's statutory authority and is not appropriate at this time." *See* Motion at 4.

10. TURN filed the Motion on April 10, 2019.

## ARGUMENT

11. Section 1102(a)(1) of the Bankruptcy Code provides that, in a chapter 11 case, the U.S. Trustee must (subject to a "small business debtor" exception) appoint "a committee of creditors holding unsecured claims" and "may appoint additional committees of

creditors or of equity security holders" as the U.S. Trustee "deems appropriate." 11 U.S.C. § 1102(a)(1).

12. Where the U.S. Trustee does not "deem appropriate" to appoint an additional committee, the Court, on the request of a party in interest, may exercise its discretion to order the formation of an additional committee, but only if the formation is "necessary to assure adequate representation" under the facts and circumstances of the case. 11 U.S.C. § 1102(a)(2); *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 694 (Bankr. C.D. Cal. 2008).

13. The appointment of an additional official committee under section 1102(a)(2) of the Bankruptcy Code is considered an "extraordinary remedy." *Nat'l R.V. Holdings*, 390 B.R. at 695; *see also In re Residential Capital, LLC*, 480 B.R. 550, 557 (Bankr. S.D.N.Y. 2012). The party moving for appointment of an additional committee has the burden of establishing that its interests are not already adequately represented by the mandatorily appointed creditors' committee. *Nat'l R.V. Holdings*, 390 B.R. at 695; *see also In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002). This burden is significant—it requires a showing that the additional committee is "**absolutely required**," "***essential***," or "***indispensable***." *Residential Capital*, 480 B.R. at 558 (internal citations and quotation marks omitted) (emphasis added).

14. The term "adequate representation" is not defined in the Bankruptcy Code, but courts addressing the issue generally consider various factors, including: (1) the ability of the existing committee to function; (2) the nature of the case; (3) the standing and desires of the various constituencies; (4) the ability of creditors to participate in the case without an additional committee; (5) the delay and additional cost that would result if the court grants the motion; and (6) the tasks which a separate committee is to perform. *Id.* No one factor is dispositive, and the amount of consideration given to each factor depends on the circumstances of the particular case. *In re Budd Co., Inc.*, 512 B.R. 910, 912-13 (Bankr. N.D. Ill. 2014).

A. **The Relief Requested in the Motion is Not Authorized by Statute**

15. As a preliminary matter, TURN does not assert that it is a direct creditor of the Debtors. To have standing to be heard before the Court under section 1109(b) of the

Bankruptcy Code, TURN "must either be a creditor of a debtor to invoke the court's jurisdiction or be able to assert an equitable claim against the estate." *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (denying "party in interest" status to a consumers union which purported to "protect" consumers and thus claimed it had "the unique power to step into the shoes of the consumer ticket holders, and receive their status as a party in interest"). "The real party in interest is the party that has the legal right which is sought to be enforced or is the party entitled to bring suit." *Id*. Such a standard allows the Court to "take care not to be so liberal in granting [party in interest status] as to over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, to the extent that the goal of a speedy and efficient reorganization is hampered." *In re Pub. Serv. Co. of N.H.*, 88 B.R. 546, 554 (Bankr. D.N.H. 1988).

16. Further, as the U.S. Trustee recognized in denying the appointment of a Ratepayer Committee, the existence of such a committee is not authorized by section 1102. Section 1102(a) clearly states that an official committee may only consist of **creditors** or **equity security holders**. 11 U.S.C. §§ 1102(a)(1), (2); *see also In re E. Me. Elec. Coop., Inc.*, 121 B.R. 917, 927 (Bankr. D. Me. 1990) ("Unless the interests of the [constituency seeking appointment of an additional committee] can be characterized as those of creditors or of equity security holders, § 1102(a)(2) grants no authority to establish a committee."). To qualify as a "creditor," an entity must have "a claim"—that is, a "right to payment"—against the debtor "that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. §§ 101(5), (10).

17. TURN attempts to address this requirement by pointing to a 2012 California law and CPUC decision,[2] which entitle ratepayers within the Debtors' service area to account credits stemming, in part, from a November 14, 2018 joint auction of greenhouse gas allowances (the "November 2018 Auction"). The Motion alleges that electricity ratepayers are "entitled in 2019" to receive approximately $324.5 million as account credits, and gas ratepayers are "entitled in 2019" to receive approximately $129 million as account credits. Motion at 5, 8. TURN notes that these amounts "include both proceeds from the November 14, 2018 joint

---

[2] *See* Motion at 5 (citing Cal. Pub. Utils. Code § 748.5; CPUC Decision No. 12-12-033).

auction . . . *combined with amounts projected to be generated by auctions to be held later in 2019*." Motion at 5 (emphasis added). Because the November 2018 Auction is the only event that may have arguably given rise to prepetition claims against the Debtors, the aggregate amounts cited by TURN necessarily overstate, perhaps significantly, whatever portion of the alleged ratepayer claims are prepetition claims, as opposed to potential claims that may arise from postpetition auctions to be held in the future.[3]

18. According to the CPUC, the credits from the November 2018 Auction are provided to ratepayers (with the exception of small business customers who receive credits through a volumetrically calculated rate adjustment) as rate adjustments on April and October 2019 billing statements.[4] Pursuant to the *Final Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 507(a)(7) and Fed. R. Bankr. P. 6003 and 6004 (I) Authorizing Debtors to (A) Maintain and Administer Customer Programs, Including Public Purpose Programs, and (B) Honor Any Prepetition Obligations Related Thereto; and (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* [Dkt. No. 843], the Debtors have the authority to deal with these account credits in the ordinary course. Indeed, the Debtors have informed the Creditors' Committee that they intend to issue these credits as rate adjustments on their customers' April and October 2019 statements. As a result, any prepetition amounts that may be owed to ratepayers will be satisfied in full in the near future—at which time ratepayers will no longer have any prepetition claims (to the extent they have any now) and will lose their status as creditors (to the extent they had such status).

19. Finally, by its Motion, TURN not only seeks the appointment of an additional official committee, but suggests that such a committee be populated by employees of various Special Interest Groups—including TURN itself. Not only have these Special Interest Groups failed to provide any evidence of their holding claims against the Debtors (prepetition or

---

[3] In any case, the aggregate amount of these arguably prepetition claims must be less than $329 million (the total amount of proceeds which, according to the Motion, were generated by the November 2018 Auction to "Investor-Owned Utilities (including PG&E)"). In comparison, the aggregate amount of unsecured claims represented by the Creditors' Committee is more than $22 billion.

[4] *See* CPUC, California Climate Credit, http://www.cpuc.ca.gov/climatecredit/.

6

otherwise), they do not appear to bear any fiduciary or other legal relationship with the ratepayers they purport to represent.

20. Thus, while ratepayers may be interested in the financial affairs of the Debtors and the outcome of these cases, such an interest does not either transform them into the Debtors' "creditors" or entitle them to representation at the expense of the estates. Indeed, courts have denied requests to appoint committees of ratepayers in favor of more efficient means of participation by ratepayers in chapter 11 cases. *See E. Me. Elec. Coop.*, 121 B.R. at 933; *see also Pub. Serv. Co. of N.H.*, 88 B.R. at 553. In fact, in PG&E's 2001 bankruptcy case, this Court vacated the appointment of an official committee of ratepayers, finding that ratepayers did not qualify as "creditors" under the Bankruptcy Code.[5]

B. **The Ratepayers' Interests Are Already Adequately Represented**

21. Even if this Court were to find that ratepayers hold valid prepetition claims against the Debtors, any interests they have as unsecured creditors are already adequately represented by the Creditors' Committee. The Creditors' Committee is statutorily charged with fiduciary duties to a wide array of similarly situated unsecured creditors. The Creditors' Committee and its proposed advisors have actively engaged with the Debtors with respect to all matters brought before the Court and have filed pleadings and appeared before the Court to advance the interests of its diverse constituency.

22. While TURN alleges that ratepayers' interest in "the plan's impact on future rates" is unique and different from the interests of other unsecured creditors, *see* Motion at 10, official creditors' committees are almost inevitably composed of a broad variety of creditors whose interests are often not aligned. *See Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1317 (1st Cir. 1993) (noting that "[n]o two creditors have identical interests"). Indeed, TURN recognizes that the Creditors' Committee "consists of an admirably diverse set of claimants." *See* Motion at 9. The members of the Creditors' Committee

---

[5] *In re Pac. Gas & Elec. Co.*, Memorandum Decision Regarding Motion for Order Vacating Appointment of Committee of Ratepayers at 4-5, No. 01-30923 (Bankr. N.D. Cal. May 21, 2001).

7

represent unions, pension holders, contract counterparties, vendors, and financial institutions. The interests of each such constituency are unique and at times disparate, but all of the constituencies share the interest of the Debtors' successful reorganization and emergence from bankruptcy protection as healthy, viable entities. In fact, courts have found that having members of a single committee represent conflicting interests may in fact "facilitate the consensual resolution of the conflicting priorities among the holders of unsecured claims and thereby facilitate the negotiation of a consensual plan." *In re Hills Stores Co.*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992).

23. Thus, the "mere presence of a conflict of interest does not necessitate an additional committee," which will only result in additional costs, expenses, and delay, *see Residential Capital*, 480 B.R. at 558, particularly in large and complex cases such as these. *See Enron Corp.*, 279 B.R. at 688 (declining to appoint an additional creditors' committee in complex, jointly administered chapter 11 cases where no evidence existed of lack of adequate representation by existing creditors' committee).

24. TURN urges the appointment of a Ratepayer Committee to represent only "ratepayer interests." Motion at 1. As such, a single creditor group, representing creditors with at best a very small portion of the aggregate unsecured claims pool, would have the benefit of a separate committee charged solely with advancing its interests, whereas the vast interests of the unsecured creditor constituencies represented by the Creditors' Committee will share one committee. Approval of the Motion would thus give ratepayers greater representation than any other creditor group represented by the Creditors' Committee. Such preferential treatment is inappropriate. *See Residential Capital*, 480 B.R. at 558-59 (finding that forming an official borrowers committee "solely to advance individual borrowers' claims is not appropriate"); *Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02-civ-6274, 2003 WL 22327118, at *6 (S.D.N.Y. Oct. 10, 2003) (noting "[t]he principal purpose of creditors' committees is not to advocate any particular creditor class's agenda").

25. Further, as this Court held in 2001, "ratepayers have other means and other *fora* to protect their interests."[6] Ratepayers' interests are already the subject of a number of ongoing proceedings—including a rate-setting case—before the CPUC, the state agency charged with regulating privately owned utilities, which provides yet another layer of "adequate protection" to such interests. While TURN alleges that its motivation in seeking an official committee to represent ratepayers is, in part, to "establish an entity that can . . . actively participate before the CPUC as it considers and approves any rate change," *see* Motion at 4, a number of the Special Interest Groups have **already** been granted party status in the rate-setting case.[7] Such status confers the ability to testify, comment, file motions, and otherwise represent the interests of ratepayers before the CPUC. Furthermore, the California Public Utilities Code provides compensation for "reasonable advocate's fees, reasonable expert witness fees, and other reasonable costs . . . of participation or intervention in any proceeding of the [CPUC]." Cal. Pub. Utils. Code § 1801. TURN has already filed for such compensation. In addition, these same Special Interest Groups also actively represent ratepayers' interests in legislative proceedings.[8]

26. Finally, the interests of ratepayers are and will continue to be adequately represented by the State of California, which has practical and legal experience in representing rights of ratepayers. Indeed, Governor Gavin Newsom convened a "Strike Force," charged with developing a strategy to ensure California's "continued access to safe affordable power" and to "seek justice for fire victims, fairness for employees, and protection for consumers."[9] The Strike Force issued its Report on April 12, 2019, in which the State confirmed and vowed that it "has

---

[6] *In re Pac. Gas & Elec. Co.*, Memorandum Decision Regarding Motion for Order Vacating Appointment of Committee of Ratepayers at 2, No. 01-30923 (Bankr. N.D. Cal. May 21, 2001).

[7] TURN, Public Advocates Office, and Federal Executive Agencies are parties to the CPUC PG&E Test Year 2020 General Rate Case (A1812009).

[8] The Public Advocates Office, for example, is "mandated by statute to represent and advocate on behalf of the interests of public utility customers," and the California Large Energy Consumer Advocates "have been active in CPUC proceedings and before the Legislature since the early-to-mid 1980s." Motion at 2-3.

[9] Office of Gov. Gavin Newsom, *Governor Newsom Delivers State of the State Address* (Feb. 12, 2019), https://www.gov.ca.gov/2019/02/12/state-of-the-state-address/.

9

and will continue to advocate in PG&E's bankruptcy proceeding for . . . California consumers," and pledged to "[m]onitor—and intervene—in the bankruptcy proceedings . . . ."[10] It is difficult to imagine a more powerful and invested advocate for ratepayers' rights. *See Pub. Serv. Co. of N.H.*, 88 B.R. at 555 (granting New Hampshire "party in interest" rights to represent consumers).

### C. The Cost and Delay of a Ratepayer Committee Cannot be Justified

27. The appointment of a Ratepayer Committee would unnecessarily hinder the progress of these cases without adding any commensurate benefits to the ratepayers, as well as cause additional unnecessary costs on the estates that will have to come from the pockets of the Creditors' Committee's constituency. Because the appointment of an additional committee is discretionary, the Court should also consider the costs associated with appointment and the potential for added complexity. *See Albero v. Johns-Manville Corp.*, 68 B.R. 155, 163 (S.D.N.Y. 1986). A Ratepayer Committee would add another layer of administrative expenses to these cases: an official Ratepayer Committee will be entitled to hire attorneys, investment bankers, and other professionals, all of whom will have to be compensated ahead of the Debtors' unsecured creditors. This is particularly inappropriate here where the Special Interest Groups already have another potential source of compensation for advocating the ratepayers' interests in other *fora*.

### CONCLUSION

28. Based on all of the foregoing, the Creditors' Committee respectfully requests the Court deny the Motion.

DATED: April 24, 2019     MILBANK LLP

    /s/ Dennis F. Dunne
    DENNIS F. DUNNE
    SAMUEL A. KHALIL
    GREGORY A. BRAY
    THOMAS R. KRELLER

    *Proposed Counsel for the Official Committee of Unsecured Creditors*

---

[10] *See* Wildfires and Climate Change: California's Energy Future, A Report from Governor Newsom's Strike Force at 1, 4 (Apr. 12, 2019), *available at* https://www.gov.ca.gov/wp-content/uploads/2019/04/Wildfires-and-Climate-Change-California%E2%80%99s-Energy-Future.pdf.