1  **PORTER LAW GROUP, INC.**
   **William L. Porter, Esq. [133968]**
2  **Hannah C. Kreuser, Esq. [322959]**
   **7801 Folsom Boulevard, Suite 101**
3  **Sacramento, California 95826**
   **Telephone: 916-381-7868**
4  **Facsimile: 916-381-7880**

5  **Attorneys for**
   **HANGTOWN ELECTRIC, INC.**
6  **dba MR. ELECTRIC OF RANCHO CORDOVA**

7

8                    **UNITED STATES BANKRUPTCY COURT**
9                    **NORTHERN DISTRICT OF CALIFORNIA**
                        **SAN FRANCISCO DIVISION**
10

11
   In re:                              | Case Nos.        19-30088 (DM)
12
                                                         19-30089 (DM)
13 PG&E CORPORATION

14                                      Chapter 11
                  -and-
15                                      (Jointly Administered)
   PACIFIC GAS & ELECTRIC
16 COMPANY,

17              Debtors

18
   ☐      Affects PG&E Corporation
19
   ☐      Affects Pacific Gas and Electric    **AMENDED NOTICE PURSUANT TO 11**
20         Company                            **U.S.C. § 546(b)(2) RELATED TO**
                                              **PERFECTION, MAINTENANCE AND**
21 X      Affects both Debtors                **ENFORCEMENT OF MECHANICS LIEN**
                                              **CLAIMS**
22
   *All papers shall be filed in the Lead Case,*
23 *No. 19-30088(DM)*

24

25

26

27

                                      -1-

1      HANGTOWN ELECTRIC, INC. dba MR. ELECTRIC OF RANCHO CORDOVA

2  ("HANGTOWN"), by and through its undersigned counsel, hereby amends its Notice Pursuant to

3  11 U.S.C. § 546(b)(2) Related to Perfection, Maintenance and Enforcement of Mechanics Lien

4  Claims ("Notice"), filed April 22, 2019, as Doc # 1582, to reflect a reduction in the amount it is

5  owed. This amended Notice  (i) provides notice pursuant to 11 U.S.C. § 546(b)(2) of mechanics

6  liens, corresponding to secured claims, and enforcement rights it holds against property of one or

7  both of PG&E CORPORATION and PACIFIC GAS & ELECTRIC COMPANY (collectively

8  "Debtors"); and (ii) reserves all related and other rights claims and interests it may have in the

9  subject Chapter 11 cases. In support hereof, HANGTOWN states as follows:

10  **Section 546(b)(2) Notice**

11      1.    HANGTOWN is a California corporation authorized to do business under the laws

12  of the State of California, and duly licensed by the Contractors' State License Board to operate as

13  contracted for, and holding a class C10 electrical license under license number 849839.

14      2.    In accordance with Amendment Number 8 to Agreement Between Design-Builder

15  and Design-Build Subcontractor ("Agreement") dated on or about November 29, 2018, and

16  entered into between HANGTOWN and Roebbelen Contracting, Inc., HANGTOWN agreed to

17  furnish labor, services, equipment and material in connection with works of improvement to

18  certain real property located at 343 Sacramento Street, Auburn, CA 95603, in the County of

19  Placer. ("Auburn Property"). A true and correct copy of the Agreement is attached hereto as

20  ***Exhibit 1***. The works of improvement were performed under contract and/or at the special

21  request and instance of one or more of the Debtors and with their actual or constructive

22  knowledge. One or more of the Debtors holds or claims an ownership interest in the Auburn

23  Property.

24      3.    On or about April 16, 2018, pursuant to California Civil Code §§ 8034(a), 8102,

25  8106-8118, 8200 et seq., HANGTOWN served a California Preliminary Notice on Debtors.

26  Attached hereto as ***Exhibit 2*** is a true and correct copy of HANGTOWN's California Preliminary

27

1  Notice.

2       4.     After performance under the Agreement, demand for payment, and upon

3  nonpayment for labor, materials, services and equipment furnished, and within the time required

4  by California law, HANGTOWN recorded a verified claim of mechanics lien in the office of the

5  County Recorder of Placer. At the time of recording the verified claim of mechanics lien, the

6  principal amount remaining due, owing and unpaid for its work on the Auburn Property was

7  $214,110.69, excluding interest, and the cost of verifying and recording the mechanics lien claim.

8  Attached hereto as *Exhibit 3* is a true and correct copy of HANGTOWN's mechanics lien,

9  recorded on or about March 21, 2019, with the Placer County Recorder's Office.

10       5.     On or about April 18, 2019, HANGTOWN recorded a Partial Release of Mechanics

11  Lien ("Partial Release") in the office of the County Recorder of Placer. This Partial Release

12  reduced HANGTOWN's claim of mechanics lien in the amount of $2,137.00. Thus,

13  HANGTOWN's verified claim of mechanics lien remains in full force and effect in the amount

14  of $211,973.69. Attached hereto as *Exhibit 4* is a true and correct copy of HANGTOWN's

15  Partial Release.

16       6.     In accordance with a Subcontract Agreement ("Subcontract") dated on or about

17  November 14, 2018, and entered into between HANGTOWN and Roebbelen Contracting, Inc.,

18  HANGTOWN agreed to furnish labor, services, equipment and material in connection with

19  works of improvement to certain real property located at 14550 Tuolumne Road, Sonora, CA

20  95370 in the County of Tuolumne ("Sonora Property"). A true and correct copy of the

21  Subcontract is attached hereto as *Exhibit 5*. Further work was performed at the Sonora Property

22  in accordance with two signed Subcontract Change Orders. True and correct copies of the

23  Subcontract Change Orders are attached hereto as *Exhibit 6*. The works of improvement were

24  performed under contract and/or at the special request and instance of one or more of the Debtors

25  and with their actual or constructive knowledge. One or more of the Debtors holds or claims an

26  ownership interest in the Sonora Property.

27

-3-

7. On or about November 16, 2018, pursuant to California Civil Code §§ 8034(a), 8102, 8106-8118, 8200 et seq., HANGTOWN served a California Preliminary Notice on Debtors. Attached hereto as *Exhibit 7* is a true and correct copy of HANGTOWN's California Preliminary Notice.

8. After performance under the Subcontract and Subcontract Change Orders, demand for payment, and upon nonpayment for labor, materials, services and equipment furnished, and within the time required by California law, HANGTOWN recorded a verified claim of mechanics lien in the office of the County Recorder of Tuolomne. At the time of recording the verified claim of mechanics lien, the principal amount remaining due, owing and unpaid for its work on the Sonora Property was $46,527.96, excluding interest, and the cost of verifying and recording the mechanics lien claim. Attached hereto as *Exhibit 8* is a true and correct copy of HANGTOWN's mechanics lien, recorded on or about March 19, 2019, with the Tuolumne County Recorder's Office.

9. In total, and prior to the January 29, 2019 petition date ("Petition Date"), the aggregate amount owed to HANGTOWN for the labor, services, equipment and material furnished in connection with the works of improvement described above was at least $258,501.65, exclusive of accruing interest and other charges, with additional amounts owing and accruing after the Petition Date (collectively, "Indebtedness"). To the date of filing of this Notice, $258,501.65 of the Indebtedness remains outstanding and owed to HANGTOWN.

10. Under California Civil Code § 8460(a), a claimant is ordinarily required to commence an action to enforce a mechanics lien "within 90 days after recordation of the claim of lien." However, at present, HANGTOWN is prevented from commencing appropriate actions to enforce its mechanics liens in Placer and Tuolomne Counties ("Actions") as a result of the institution of the subject Chapter 11 cases and the application of the automatic stay of 11 U.S.C. § 362(a) ("Automatic Stay").

11. Section 546(b)(2) of the Bankruptcy Code provides in pertinent part that when

-4-

applicable law requires commencement of an action to perfect, or to maintain or continue the perfection of, an interest in property and an action has not been commenced prior to the petition date, then such perfection, or maintenance or continuation of perfection, may be accomplished by a claimant instead "giving notice within the time fixed by such law" for commencement of such action.

12. Accordingly, HANGTOWN hereby provides notice that (a) it is the holder of the verified and recorded mechanics liens, as described above, and corresponding Secured Claims to the Auburn and Sonora Properties under California law; (b) but for the Automatic Stay it would have timely commenced appropriate Actions pursuant to California law in Placer and Tuolomne Counties to enforce such mechanics liens and Secured Claims; and (c) it intends in all respects to fully perfect, maintain, preserve and continue the perfection of its mechanics liens on the Auburn and Sonora Properties and to enforce and realize upon its corresponding Secured Claims in accordance with the requirements of California State law, 11 U.S.C. §§ 362(a), 362(b)(3) and 546(b)(2), and any other applicable law. Without limiting the generality of the foregoing, this notice constitutes the legal equivalent of having filed mechanics liens in the Recorders Offices of Placer and Tuolomne Counties for the pertinent works of improvement and respective amounts of Indebtedness, and then having commenced Actions to enforce and foreclose such mechanics liens in the proper courts.

## Reservation of Rights

13. In the interests of economy and efficiency, HANGTOWN has filed this single Notice in the above-captioned Chapter 11 cases intending and expecting it to apply or pertain separately and individually to (a) the continued perfection of each one of the subject mechanics liens; (b) the Actions that otherwise would have been commenced by HANGTOWN in accordance with California State law to maintain, enforce and realize upon its corresponding Secured Claims; (c) HANGTOWN's exercise of any other rights under or satisfaction of any other requirements of 11 U.S.C. § 546(b)(2) in the circumstances.

-5-

14. HANGTOWN reserves the right to supplement, amend or otherwise alter this Notice from time to time as may be necessary or appropriate to conform to, or to adapt to changes in, facts or law, determinations yet to be made in the subject Chapter 11 cases or in other proceedings, or otherwise to further the purposes of filing this Notice. Without limiting the generality of the foregoing, HANGTOWN reserves the right if deemed necessary or appropriate to subdivide this Notice into several notices under Section 546(b)(2) based upon each of the mechanics liens and potential Actions thereon, to include specific or additional pre-petition or post-petition amounts, and to state a total amount of the Indebtedness or any component thereof that would be owed by a Debtor upon the effective date of any plan of reorganization or liquidation, the date of any distribution or payment with respect to HANGTOWN's Secured Claims or any other appropriate date(s).

15. HANGTOWN reserves the right to request modification of the Automatic Stay, determinations with respect to the validity, priority or extent of its mechanics liens and Secured Claims, and adequate protection of, or any other relief in relation to its mechanics liens and Secured Claims.

16. HANGTOWN reserves the right to assert against either of the Debtors any and all claims and interests that are not encompassed by the mechanics liens and Secured Claims, including additional secured claims, administrative-priority claims or other claims that may have arisen before or after the Petition Date. Also, HANGTOWN reserves any rights, claims, actions, setoffs, or recoupments to which it is or may be entitled under contract or otherwise in law or equity with respect to either of the Debtors or their respective assets in the subject cases. In addition, HANGTOWN reserves any and all rights, claims, actions, and remedies it has or may have with respect to all entities other than Debtors, and nothing herein shall be considered an election not to pursue remedies against such entities.

//

//

-6-

| | |
|---|---|
| 1 | Dated: April 29, 2019 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |

Dated: April 29, 2019

**PORTER LAW GROUP, INC.**

By:  /s/ Hannah C. Kreuser
Hannah C. Kreuser, Esq.
Attorneys for HANGTOWN ELECTRIC, INC.
dba MR. ELECTRIC OF RANCHO
CORDOVA

R:\Production\1\1000-1999 - Porter Law Group\1100-1199\1123 Hangtown Electric\PG&E\Amended Notice of Perfection.wpd

-7-

**EXHIBIT 1**

## AMENDMENT NUMBER 8
## TO
## AGREEMENT BETWEEN DESIGN-BUILDER AND DESIGN-BUILD SUBCONTRACTOR

The amendment ("Amendment") is made by Roebbelen Contracting, Inc. ("Design-Builder") and **Hangtown Electric, Inc., dba Mr. Electric of Rancho Cordova 11423 Sunrise Gold Circle, Suite 10, Rancho Cordova, CA 95742** ("Design-Build Subcontractor"), parties to the agreement dated March 7, 2018 ("Agreement") for the **PG&E Sacramento Street** ("Project").

### PROJECT INFORMATION

Project Name: **PG&E Sacramento Street**

Project Address: **343 Sacramento Street, Auburn, CA 95603**

Contractor's Job Number: **21-16-918 and 21-18-315 as outlined in Exhibit B**

Contractor's Cost Code: **16-001**

Project Manager: **Patrick Murphy**

### MODIFICATIONS

1. Revise Section 4 of Exhibit A, Description of Services as follows:

    ~~The following services are Not in Contract (NIC), but are anticipated to be added as part of the Design Consultant Services via Amendment.~~

2. Revise Section 5 of Exhibit A, Description of Services as follows:

    ~~The following services are Not in Contract (NIC), but are anticipated to be added as part of the Design Consultant Services via Amendment.~~

3. Incorporate the following attachments to the Agreement:

    3.1. **Attachment A.**

4. Revise Section 6 of Exhibit A, Description of Services as follows:

    4.1. **Other Services.** Subcontractor shall provide those Other Services Included in Table 6.1 below. Descriptions of the included services shall be indicated in Table 6.1 and provided to the Subcontractor by the Design-Builder. When necessary, expanded, additional or modified descriptions shall be included in the Work Plan.

| OTHER SERVICES TABLE (Table 6.1) | | | | |
|---|---|---|---|---|
| Included | Section | Other Service | Basic Services Type | Description Document |
| | 5.1.1 | Programming | | |
| | 5.1.2 | Existing Facility Surveys | | |

Case: 19-30088    Doc# 1743    Filed: 04/29/19    Entered: 04/29/19 11:27:32    Page 9 of 53

AMENDMENT NUMBER 8
TO
AGREEMENT BETWEEN DESIGN-BUILDER AND DESIGN-BUILD SUBCONTRACTOR

| Included | Section | Other Service | Basic Services Type | Description Document |
|---|---|---|---|---|
| | | OTHER SERVICES TABLE (Table 6.1) | | |
| | 5.1.3 | Site Evaluation and Planning | | |
| | 5.1.4 | Value Analysis | | |
| | 5.1.5 | Conformed Construction Documents | | |
| | 5.1.6 | As-Designed Record Drawings | | |
| X | 5.1.7 | As-Built Record Drawings | Construction | Provide As-Built Record drawings as part of your closeout package. |
| | 5.1.8 | Post Occupancy Evaluation | | |

5. Revise Exhibit B, Fee Schedule, by replacing it with Exhibit B attached to this Amendment Number 8.

By their signature below, each of the following represent that they have authority to execute this Amendment to the Agreement and to bind the party on whose behalf their execution is made.

**DESIGN-BUILDER:**

ROEBBELEN CONTRACTING, INC.

By _____
(Signature)

Printed Name: Frank Lindsay

Title: Vice President

Date: 11/30/18

**DESIGN BUILD SUBCONTRACTOR:**
HANGTOWN ELECTRIC, INC.
DBA MR. ELECTRIC OF RANCHO CORDOVA

By ____Terri Smith____ Digitally signed by Terri Smith Date: 2018.11.29 11:04:47-08'00'
(Signature)

Printed Name: Terri Smith

Title: President

Date: 11-29-2018

Case: 19-30088   Doc# 1743   Filed: 04/29/19   Entered: 04/29/19 11:27:32   Page 10 of 53

Hangtown Electric Inc
Dba Mr. Electric of Rancho Cordova
PO Box 630
Shingle Springs, CA 95682
P: (916) 859-0500
F: (916) 859-0555
License No.: 849839
**Email: jsmith@hangtownelectric.com**

**RE:    PG&E Auburn – Sacramento Street IT Building**
**343 Sacramento Street**
**Auburn, CA 95603**
**Our Job No.: 21-16-918 and 21-18-315**
**Cost Code: 16-001**
**Project Manager:  Patrick Murphy**

Add for Additional 13 Ground Vault Rods/Materials on the PG&E Auburn Sacramento Street IT Building. ("Project") per the Job Proposals: BCO - 13 dated 9/25/18, ("Proposal"), and at the direction of the Project Manager, Patrick Murphy Subcontractor will be compensated for services satisfactorily performed on a lump sum basis at a cost not to exceed **$67,752.25** including all taxes.

This contract includes, but is in no way limited to the following:

**A. General**
        a.   N/A

**B. Electrical**
    1.   Provide a Drill hole in each vault as marked by PG&E and Hammer – Drill into the rock below.
    2.   No Fiber to be in vaults.
    3.   Install a minimum of 5 ground rods.
    4.   Install grounding epoxy around the rods.
    5.   In Building:  Three (3) Waterfalls, install 1 and turn over 2 to PG&E.
    6.   Install 1 ladder rack matching the existing.

**C. This contract excludes the following:**
    1.   Permit Fees
    2.   Premium or Overtime
    3.   Patching or Painting.

It is understood the owner has awarded the entire base bid. This subcontractor will be responsible for all scope and project requirements as set forth in the General Requirements, Division 1, the General Conditions, and the Supplementary Conditions.  It is agreed that all material submittals and shop drawings are to be prepared and forwarded to Roebbelen Contracting, Inc. immediately.

| ROEBBELEN CONTRACTING, INC. | Hangtown Electric Inc<br>dba Mr. Electric of Rancho Cordova |
|---|---|
| ACCEPTED:_____<br>Frank Lindsay, Vice President | ACCEPTED: Terri Smith _Digitally signed by Terri Smith Date: 2018.11.29 11:04:31-08'00_ |
| DATED:    11/30/18 | DATED:  11-29-2018 |

RCPRPGE
Rev 09/25/17
Case: 19-30088    Doc# 1743    Filed: 04/29/19    Entered: 04/29/19 11:27:32    Page 11
of 53

# EXHIBIT "B"
## SUBCONTRACTOR'S DESIGN FEE AND PERSONNEL – HANGTOWN ELECTRIC

The following Exhibit further defines and supplements the requirements specified by the Agreement.


SUBCONTRACTOR'S FEE

1. COMPENSATION14

1.1. Subcontractor shall be compensated for all Subcontractor Services, a Time and Materials amount of **$1,671,227.31** This Contract Amount shall include all Work provided under this Agreement, unless it is identified as "Not in Contract". Subcontractor will be paid for progress based upon the execution of the requirements under this Agreement.

| Contract/Amendment | Type | Fee |
|---|---|---|
| Original- 21-16-918 | *Planning & Schematic Design* | $143,220.00 |
| Amendment 2 for 21-16-918 | *Vaults & Conduit purchase* | $48,171.00 |
| Amendment 2- for21-18-315 | *Construction* | $852,129.00 |
| Amendment 3 – for 21-18-315 | *Construction* | $113,203.40 |
| Amendment 4- for 21-16-918 | *Planning & Schematic Design- Deduct for phase 2 Yard Renovation* | <$65,095.00> |
| Amendment 4- for 21-18-315 | *Planning & Schematic Design- Deduct for phase 2 Yard Renovation* | <$21,370.00> |
| Amendment 5 – for 21-18-315 | Construction – Zone 4 Racks | $50, 438.18 |
| Amendment 5 – for 21-18-315 | Construction – Rock Excavation | $16,280.55 |
| Amendment 5 – for 21-18-315 | Construction – Deleted Trenches | <$19,681.19> |
| Amendment 5 – for 21-18-315 | Construction – Haul off by others | <$2,500.00> |
| Amendment 6- for 21-18-315 | Construction- Added IT Scope | $149,034.16 |
| Amendment 7- for 21-18-315 | Construction- New 400amp Service. | $339,644.96 |
| Amendment 8- for 21-18-315 | Add 13 Ground Vault Rods/Materials | $67,752.25 |
| | Total | $1,671,227.31 |

***NOTE: Each Roebbelen Job number above will require a separate billing and SOV**

1.2. Unless otherwise agreed to in writing, the pricing of all Design Services provided by Subcontractor under this Agreement shall be consistent with the Rates identified in this Exhibit B.

2. BILLABLE RATES

2.1. Rates shall remain unchanged unless both parties agree to modify or amend the Agreement.

2.2. The following Rate Schedule comprises all authorized rates the Subcontractor may utilize for the Work provided under this Agreement.

**Rate Schedule:**

**\*See attached FEE SCHEDULE\***

## SUBCONTRACTOR'S PERSONNEL

3. PRIMARY PERSONNEL

3.1. The following primary personnel are assigned to perform the Work and shall not be changed without Design-Builder's prior approval in accordance with Section 2.4.1 of the Agreement.

| Primary Personnel Name | Job Description |
|---|---|
| Johnnie Smith | Project Manager |

4. REIMBURSABLE COSTS

4.1. Reimbursable costs shall be limited to expenses deemed acceptable by the Design-Build Agreement. Subcontractor shall be reimbursed for actual expense costs without markup. All reimbursable costs must be pre-approved by the Design-Builder.

# EXHIBIT "B"
## SUBCONTRACTOR'S DESIGN FEE AND PERSONNEL – HANGTOWN ELECTRIC

| DESIGN-BUILDER: | DESIGN-BUILD SUBCONTRACTOR: |
|---|---|
| ROEBBELEN CONTRACTING, INC. | HANGTOWN ELECTRIC INC |
| | DBA MR. ELECTRIC OF RANCHO CORDOVA |
| By _____ (Signature) | By __Terri Smith__ Digitally signed by Terri Smith Date: 2018.11.29 11:04 10:08'00' |
| | (Signature) |
| Printed Name: Frank Lindsay | Name: Terri Smith |
| Title: Vice President | Title: President |
| Date: 11/+8/18 | Date: 11-29-2018 |
| | Federal ID No.: 54-2157710 |

**EXHIBIT 2**

File #: 2668 [CA][PRIVATE][COPY:EST]
Notice Requested by and Return to:
Hangtown Electric Inc.
and dba Mr. Electric of Rancho Cordova
11423 Sunrise Gold Circle #10
RANCHO CORDOVA, CA 95742

| Customer: Roebbelen Contracting, Inc.
| P.O. #:
| Project: PG&E Service Center Construction
| Rec ID: 5B1BE12C-DA6F-4E8E-9C29-480469273283
| Job #: 21-18-315 / 180015
| Cert No.: 7017 0530 0000 7510 2314 8 2321

## CALIFORNIA PRELIMINARY NOTICE - PRIVATE WORKS

*(THIS IS NOT A LIEN. THIS NOTICE IS GIVEN PURSUANT TO CALIFORNIA CIVIL CODE §§ 8034(b), 8102, 8106-8118, 8200 et seq., 8612)*

>> TO THE OWNER OR REPUTED OWNER
**Pacific Gas & Electric Company**
245 Market Street
SAN FRANCISCO, CA 94105

>> TO DIRECT OR REPUTED CONTRACTOR
**Roebbelen Contracting, Inc.**
1241 Hawks Flight Court
EL DORADO HILLS, CA 95762

>> TO LENDER, SURETY OR BONDING CO. OR
>> REPUTED LENDER, SURETY, BONDING CO.
N/A

1. The following is a general description of the labor, service, equipment or materials furnished or to be furnished by the undersigned:
**Electrical - Labor & Materials**
2. The estimated amount of the work provided or to be provided is $900,300.00
3. The name of the person or entity who furnished that labor, service, equipment or materials is:
**Hangtown Electric Inc.**
**and dba Mr. Electric of Rancho Cordova**
**11423 Sunrise Gold Circle #10**
**RANCHO CORDOVA, CA 95742**

**Relationship to Parties: Subcontractor**
4. The name of the person or entity who contracted for purchase of that labor, service, equipment or material is:
**Roebbelen Contracting, Inc.**
**1241 Hawks Flight Court**
**EL DORADO HILLS, CA 95762**

5. The description of the jobsite is:
**PG&E Service Center Construction**
**Job # 21-18-315**
**343 Sacramento Street**
**AUBURN, CA 95603**

**County of PLACER**

## NOTICE TO PROPERTY OWNER

*EVEN THOUGH YOU HAVE PAID YOUR CONTRACTOR IN FULL, IF THE PERSON OR FIRM THAT HAS GIVEN YOU THIS NOTICE IS NOT PAID IN FULL FOR LABOR, SERVICE, EQUIPMENT, OR MATERIAL PROVIDED OR TO BE PROVIDED, TO YOUR CONSTRUCTION PROJECT, A LIEN MAY BE PLACED ON YOUR PROPERTY. FORECLOSURE OF THE LIEN MAY LEAD TO LOSS OF ALL OR PART OF YOUR PROPERTY. YOU MAY WISH TO PROTECT YOURSELF AGAINST THIS BY (1) REQUIRING YOUR CONTRACTOR TO PROVIDE A SIGNED RELEASE BY THE PERSON OR FIRM THAT HAS GIVEN YOU THIS NOTICE BEFORE MAKING PAYMENT TO YOUR CONTRACTOR, OR (2) ANY OTHER METHOD APPROPRIATE UNDER THE CIRCUMSTANCES.

*THIS NOTICE IS REQUIRED BY LAW TO BE SERVED BY THE UNDERSIGNED AS A STATEMENT OF YOUR LEGAL RIGHTS. THIS NOTICE IS NOT INTENDED TO REFLECT UPON THE FINANCIAL CONDITION OF THE CONTRACTOR OR PERSON OR ENTITY EMPLOYED BY YOU ON THE CONSTRUCTION PROJECT.

*IF YOU RECORD A NOTICE OF CESSATION OR COMPLETION OF YOUR CONSTRUCTION PROJECT, YOU MUST WITHIN 10 DAYS AFTER RECORDING, SEND A COPY OF THE NOTICE OF COMPLETION TO YOUR CONTRACTOR AND THE PERSON OR FIRM THAT HAS GIVEN YOU THIS NOTICE. THE NOTICE MUST BE SENT BY REGISTERED OR CERTIFIED MAIL. FAILURE TO SEND THE NOTICE WILL EXTEND THE DEADLINE TO RECORD A CLAIM OF LIEN. YOU ARE NOT REQUIRED TO SEND THE NOTICE IF YOU ARE A RESIDENTIAL HOMEOWNER OF A DWELLING CONTAINING FOUR OR FEWER UNITS.

I declare that I am authorized to file this claim on behalf of the Claimant. I have read the foregoing document and know the contents thereof; the same is true of my own knowledge. I declare under penalty of perjury that the foregoing is true and correct. Executed at Cassel, California on 04/16/2018 for HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA.

Prepared by:
Jordi Grant, Agent Phone: (916) 859-0500 Fax: (916) 859-0555

### PROOF OF SERVICE BY MAIL AFFIDAVIT

I declare that I served the Preliminary Notice, and any related documents, by certified or registered mail, postage prepaid, or other certified delivery, addressed to the above named parties, at the addresses listed above, on 04/16/2018. I declare under penalty of perjury that the foregoing is true and correct. Executed at Cassel, California on 04/16/2018.

Prepared by:
Jordi Grant, Agent

**EXHIBIT 3**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

HANGTOWN ELECTRIC INC. AND
DBA MR. ELECTRIC OF RANCHO CORDOVA
11423 SUNRISE GOLD CIRCLE #10
RANCHO CORDOVA CA 95742

Phone:  916-859-0500
Fax:  916-859-0555

PLACER, County Recorder
RYAN RONCO
**DOC- 2019-0017198-00**
1944
THURSDAY,  MAR 21,  2019 09:17 AM
MIC      $3.00 | AUT      $3.00 | SBS      $2.00
ERD      $1.00 | SB2    $75.00 | REC    $11.00
ADD      $0.00

Ttl Pd      $95.00      Rcpt # 02763698
CLKBZRK9T2/GM/1-3

SPACE ABOVE THIS LINE FOR RECORDERS USE

# CLAIM OF MECHANIC'S LIEN
(CA Civil Code 8400 et seq.)

THE UNDERSIGNED CLAIMANT, HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA, SUBCONTRACTOR, CLAIMS A LIEN FOR LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS UNDER CALIFORNIA CIVIL CODE SECTION 8416 ET SEQ., UPON THE PREMISES HEREINAFTER DESCRIBED, AND UPON EVERY ESTATE OR INTEREST IN SUCH STRUCTURES, IMPROVEMENTS AND PREMISES HELD BY ANY PARTY HOLDING ANY ESTATE THEREIN.

THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS, WERE FURNISHED FOR THE CONSTRUCTION OF THOSE CERTAIN BUILDINGS, IMPROVEMENTS, OR STRUCTURES, NOW UPON THAT CERTAIN PARCEL OF LAND SITUATED IN THE COUNTY OF PLACER, STATE OF CALIFORNIA, SAID LAND DESCRIBED AS FOLLOWS:

PG&E SERVICE CENTER CONSTRUCTION
343 SACRAMENTO STREET, AUBURN CA 95603

THE MECHANICS LIEN IS CLAIMED FOR THE FOLLOWING GENERALLY DESCRIBED WORK, LABOR, SERVICES, EQUIPMENT OR MATERIALS:  ELECTRICAL – LABOR & MATERIALS.

THE SUM OF $214,110.69, IS DUE CLAIMANT, AFTER DEDUCTING ALL JUST CREDITS AND OFFSETS, FOR THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS FURNISHED BY CLAIMANT.

CLAIMANT FURNISHED THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS, AT THE REQUEST OF, OR UNDER CONTRACT WITH:

ROEBBELEN CONTRACTING INC., 1241 HAWKS FLIGHT COURT, EL DORADO HILLS CA 95762

THE OWNER(S) OR REPUTED OWNER(S) OF SAID PREMISES IS/ARE:

PACIFIC GAS & ELECTRIC COMPANY, 245 MARKET STREET, SAN FRANCISCO CA 94105

DATE: MARCH 18, 2019

NAME OF CLAIMANT: HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA

BY: _____ Jordi Grant, Agent

VERIFICATION

I, Jordi Grant, state:  I am the Authorized Agent of the claimant named in the foregoing Mechanics Lien.  I have read said Mechanics Lien and know the contents thereof; the same is true of my own knowledge.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on MARCH 18, 2019 at Cassel California for HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA

BY: _____ Jordi Grant, Agent

# NOTICE OF MECHANICS LIEN

## ATTENTION!

Upon the recording of the enclosed MECHANIC'S LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the Mechanic's Lien is recorded.

The party identified in the Mechanic's Lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a Mechanic's Lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the Mechanic's Lien is released.

**BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEBSITE AT www.cslb.ca.gov.**

# PROOF OF SERVICE AFFIDAVIT

### California Civil Code Section 8416 (a) (7), (c) (1)

I, Jordi Grant, Authorized Agent, declare that I served a copy of the enclosed MECHANIC'S LIEN and NOTICE OF MECHANIC'S LIEN by Certified Mail, evidenced by a certificate of mailing, postage prepaid, addressed to the following owner(s) or reputed owner(s) of the property:

    PACIFIC GAS & ELECTRIC COMPANY,

at the following address:

    245 MARKET STREET, SAN FRANCISCO CA 94105

on this date:  MARCH 18, 2019

Signed at Cassel, California, on this date: MARCH 18, 2019

By Jordi Grant, Agent for
HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA

*cc:*  ROEBBELEN CONTRACTING INC., 1241 HAWKS FLIGHT COURT, EL DORADO HILLS CA 95762
ROEBBELEN JOB # 21-18-315

**EXHIBIT 4**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

HANGTOWN ELECTRIC INC. AND
DBA MR. ELECTRIC OF RANCHO CORDOVA
11423 SUNRISE GOLD CIRCLE #10
RANCHO CORDOVA CA 95742

Phone:    916-859-0500
Fax:       916-859-0555

PLACER, County Recorder
RYAN RONCO
DOC- 2019-0024364-00
CREDIT CARD
THURSDAY,  APR 18,  2019 03:27 PM
MIC    $3.00 | AUT      $2.00 | SBS       $1.00
ERD    $1.00 | SB2    $75.00 | REL      $10.00
ADD    $0.00

Ttl Pd     $92.00      Rcpt # 02770872
                                        CLKBZLH9T2/MD/1-2

SPACE ABOVE THIS LINE FOR RECORDERS USE

# PARTIAL RELEASE OF MECHANICS LIEN
### (CA Civil Code §§ 8120-8130, 8400 et seq.)

The lien claimed by HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA, SUBCONTRACTOR, against PACIFIC GAS & ELECTRIC COMPANY,  upon the following described real property in the City of AUBURN, County of PLACER, State of CALIFORNIA, said land described as follows,

PG&E SERVICE CENTER CONSTRUCTION
343 SACRAMENTO STREET, AUBURN CA 95603

is hereby partially released, the claim there under being reduced by $2,137.00, and that certain Notice of Lien recorded as Document #2019-0017198 filed March 21, 2019 in the official records of Placer County, California is hereby partially satisfied.   There remains due and owing an amount of $211,973.69.

This reflects a partial release only and the lien filed on March 21, 2019 is to remain in effect.

Dated:    April 15, 2019

Name:    HANGTOWN ELECTRIC INC. AND
            DBA MR. ELECTRIC OF RANCHO CORDOVA

By:  _____
            Johnnie Smith, Vice President

## ATTACH NOTARY TO THIS DOCUMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of ___Sacramento___ }

On __April 15th 2019__ before me, __Emily Elizabeth Williamson, Notary Public__
    *Date*                         *Here Insert Name and Title of the Officer*

personally appeared __Johnnie Smith__
                              *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**EMILY ELIZABETH WILLIAMSON**
Notary Public - California
Sacramento County
Commission # 2265794
My Comm. Expires Nov 4, 2022

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___Emily Elizabeth Will___
                              *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

---

**———— OPTIONAL ————**

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee        ☐ Guardian of Conservator
☐ Other: _____
Signer is Representing: _____

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee        ☐ Guardian of Conservator
☐ Other: _____
Signer is Representing: _____

©2017 National Notary Association

When embossed and signed, this is certified to be a true copy
of the records of the Placer County Clerk-Recorders Office.
Ryan Ronco, Clerk-Recorder 4/18/2019
By _____ Deputy

**EXHIBIT 5**

Case: 19-30088   Doc# 1743   Filed: 04/29/19   Entered: 04/29/19 11:27:32   Page 25
of 53

# SUBCONTRACT AGREEMENT

THIS AGREEMENT, made and entered into at El Dorado Hills, El Dorado County, California this **12th** day of **November 2017,** by and between **ROEBBELEN CONTRACTING, INC.,** hereinafter called CONTRACTOR, with principal office at **1241 Hawks Flight Court, El Dorado Hills, California 95762,** and **Hangtown Electric, Inc. dba Mr. Electric of Rancho Cordova, 11423 Sunrise Gold Circle, Suite 10, Rancho Cordova, CA 95682,** hereinafter called SUBCONTRACTOR.

WITNESSETH, that the Subcontractor and the Contractor agree as follows:

*ARTICLE I. DESCRIPTION OF WORK.* The Subcontractor shall perform all the work, labor, services, materials, plant, equipment, tools, scaffolds, appliances, insurance, and other facilities of every kind and description required for the prompt and efficient execution of the work described herein and to perform the work necessary or incidental to complete all activity (hereinafter called the Work) for and at **PG&E Area 5 SC Refresh Program (hereinafter called the Project), located on the premises at Sonora Service Center 14550 Tuolumne Road, Sonora, CA 95370** (hereinafter called the Premises), as shown and described in and in strict accordance with the entire set of Plans, Specifications, Drawings, General Conditions, Special Conditions, Addenda, Amendments and Revisions as well as all other terms and provisions of the Prime Contract between the Contractor and **Pacific Gas & Electric, Inc. 245 Market Street, San Francisco California ("Owner") and Contractor dated November 09, 2017** are understood to be included in Subcontractors' terms and conditions, as defined by Article III Contract Documents. These Contract Documents are all "incorporated by reference" in this subcontract. These Contract Documents also include the additional requirements set forth in **Attachment "A"- Scope of Work, Attachment "B" Safety Job Requirements, Attachment "C" Agreement Authorizing Electronic Transactions, and Attachment "D"- Procedure Manual**. Further, Subcontractor understands and agrees it shall include all Contract Documents into its sub-tiers (sub-subcontractor and vendors) contracts related to this Project. All requirements are hereby expressly incorporated herein by reference as "Contract Documents" as further defined in Article III.

*ARTICLE II. PRICE*. The sum to be paid by the Contractor to Subcontractor for the satisfaction, performance and completion of the work and of all of the duties, obligations, and responsibilities of the Subcontractor under this Agreement shall be the lump sum amount of **Fifty-Four Thousand Six Hundred Ten Dollars and 00/100 ($54,610.00),** hereafter called the "Price" subject to additions and deductions as herein provided.

The Price includes all Federal, State, County, Municipal and other taxes. The total price of all items included in the Work plus the amount of such taxes shall not exceed the Price.

*ARTICLE III. CONTRACT DOCUMENTS*. The Prime contract clauses, terms, drawings, plans, and conditions are included in the Contract Documents. These requirements "flow down" to Subcontractor whom must also "flow down" these requirements by written contract agreement to all its Project sub-tier sub-subcontractors and vendors. Subcontractor expressly agrees to require this compliance in its Project sub-subcontract agreements or Project purchase order contracts, and any failure to do so is agreed to be a material breach of contract that gives rise to substantive Contractor damages. The Plans, Specifications, Drawings, General Conditions, Prime Contract Clauses including those referenced and incorporated in Special Conditions, Addenda, Amendments and all Prime Contract terms and Conditions, hereinabove mentioned, are available for examination by the Subcontractor at all reasonable times at the office of the Contractor; all of the aforesaid, including this Agreement, being hereinafter sometimes referred to as the "Contract Documents." The Subcontractor represents and agrees that it has carefully examined and understands this Agreement and the other Contract Documents. The Subcontractor agrees to be bound to the Contractor by each and all terms and provisions of the Prime Contract, and the other Contract Documents, and to assume toward the Contractor all of the duties, obligations and responsibilities that the Contractor by those Contract Documents assumes toward the Owner, and the Subcontractor agrees further that the Contractor shall have the same rights and remedies against the Subcontractor as the Owner under the terms and provisions of the Prime Contract and the other Contract Documents has against the Contractor with the same force and effect as though every such duty, obligations, responsibility, right or remedy were set forth herein and in full. The terms and provisions of this Agreement with respect to the Work to be performed and furnished by the Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any of the terms and provisions of the Prime Contract and the other Contract Documents. Any disputes procedures set forth in the Owner-Contractor's Prime Contract applicable to the Contractor shall be the procedure, forum, and agreement related to disputes regarding such Subcontractor claims.

If the Prime Contract provides for arbitration and/or does not provide for attorneys fees and costs related to such disputes to the prevailing party, then the Subcontractor agrees this procedure and related rules are applicable to said dispute between Subcontractor and Contractor, as opposed to this Subcontract's dispute clause which is applicable to disputes solely between the Contractor and Subcontractor (which in no way are caused by the Owner under the Prime Contract).

**ARTICLE IV. TIME OF COMPLETION.** Time is the essence of this Agreement. Subcontractor shall complete the several portions and the whole of the work at or before the time or times set to in the Contract Documents.

Subcontractor agrees that the Contractor's progress schedule may be modified from time to time as deemed necessary by the Contractor. Subcontractor shall be obligated to conform to Contractor's modifications. Subcontractor agrees that no additional compensation will be allowed or paid due to modification of the original progress schedule by Contractor so long as the total time allocated to the Subcontractor for its work remains unchanged from the total time allocated in the original progress schedule even though the period of time in which Subcontractor is required to perform its work may be substantially different from the original progress schedule.

**ARTICLE V. EXTENSION OF TIME.** Should the Subcontractor be delayed in the commencement, prosecution, or completion of the Work by the act, omission, neglect, or default of the Contractor or of anyone employed by the Contractor, or of any other contractor or subcontractor on the Project, or by acts, omissions, neglect, or default of the Architect or Owner, or by any damage caused by fire or other casualty or by the combined action of workmen in no way chargeable to the Subcontractor, or by an extraordinary condition arising out of war or government regulations, or by any other cause beyond the Subcontractor's control and not due to any fault, neglect, act or omission on its part, then the Subcontractor shall be entitled to an extension of time <u>only</u>, such extension to be for a period equivalent to the time lost by reason of any and all of the aforesaid causes, as determined by the Contractor. The Subcontractor shall not be entitled to any such extension of time, however, unless a claim is presented in writing and is timely received by Contractor, within seven (7) calendar days of the delay.

Finally, any Subcontractor delay or time impact claim alleged against the Contractor or Owner shall be determined pursuant to California state law.

**ARTICLE VI. PAYMENTS.** No progress or full payment shall be due until Subcontractor furnishes Contractor, upon request, any bonds, personal guarantees, proof of insurance, identification of all materialmen and Subcontractors with right against any Contractor bond, payroll affidavits, contract certifications, release of liens or other obligations, dismissals or endorsed-filed entry of judgment.

The Subcontractor shall submit within ten (10) days of execution of this contract, a detailed schedule showing the breakdown of the Price into its various parts for use only as a basis of checking the Subcontractor's monthly requisitions. The Subcontractor agrees that it shall furnish such information, evidence and substantiation as the Contractor may require with respect to the nature and extent of all obligations incurred by the Subcontractor for or in connection with the Work, all payments made by the Subcontractor thereon, and the amounts remaining unpaid, to whom and the reasons therefore.

Retention will be held from the subcontractors' progress payment at the same rate that the Owner withholds from the Contractors progress payment.

The final payment shall be due within forty-five (45) days after the Notice of Completion has been filed by the Owner and acceptance of the Work by the Contractor, provided first, however, that (1) the Contractor shall have received final payment from the Owner or Contractor has been allowed a Reasonable Time to obtain such final payment as provided immediately below; (2) the Subcontractor shall have furnished evidence satisfactory to the Contractor that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished or incurred for or in connection with the Work, and (3) the Subcontractor shall have executed and delivered in a form satisfactory to the Contractor a General Release running to and in favor of the Contractor and the Owner. Should there prove to be any such claim, obligation or lien after final payment is made, the Subcontractor shall refund to the Contractor all monies that the Contractor and/or the Owner shall pay in satisfying, discharging, or defending against any such claim, obligation or lien or any action brought or judgment recovered thereon and all costs and expenses, including legal fees and disbursements, incurred in connection therewith.

If Owner, or any other person responsible for providing construction funds from which payment to Subcontractor is to be made delays in making payment to the Contractor, Contractor shall have a reasonable time to make payment to Subcontractor. "Reasonable time" shall be determined according to the relevant circumstances, but in no event shall be less than the time Contractor and Subcontractor require to pursue their legal remedies to obtain payment against Owner

Case: 19-30088   Doc# 1743   Filed: 04/29/19   Entered: 04/29/19 11:27:32   Page 27

RCPR2MIL                                                                                              Rev. 04/27/17

and/or any other person responsible for providing construction funds, including but not limited to mechanic's lien remedies.

It is further understood and agreed that Contractor has the right of offset between subcontracts existing between Contractor and Subcontractor, whether said contracts be either commercial or Federal, or California public works, or otherwise. Subcontractor understands and agrees this provision changes any potential statutory preclusion of offsets against public works contracts/payments (See also, Article XXIX).

**ARTICLE VII. DIMENSIONS.** Not withstanding the dimensions given on the Plans, Specifications, and other Contract Documents, it shall be the obligation and responsibility of the Subcontractor to take such measurements as will insure the proper matching and fitting of the Work covered by this Agreement with contiguous work.

> **Shop Drawings.** Subcontractor shall prepare, submit to Contractor, within 30 days of receipt of this subcontract, and obtain approval as required by the Contract Documents for all shop drawings, details, samples, and do all other things necessary and incidental to the prosecution of its work.

> Approval of such shop drawings by the Contractor and/or the Owner's Representative shall not relieve the Subcontractor of its obligation to perform the Work in strict accordance with the Plans, Specifications, the Additional Provisions hereof and the other Contract Documents, nor of its responsibility for the proper matching and fitting of the Work with contiguous work.

> **Contiguous Work.** Should the proper and accurate performance of the work hereunder depend upon the performance of other work not covered by this Agreement, the Subcontractor shall carefully examine such other work, determine whether it is in fit, ready and suitable condition for the proper and accurate performance of the Work hereunder, use all means necessary to discover any defects in such other work, and before proceeding with the Work hereunder, report promptly any improper conditions and defects to the Contractor in writing and allow the Contractor a reasonable time to have such improper conditions and defects remedied.

> Subcontractor shall coordinate the work covered by this Agreement with that of all other contractors, subcontractors, and of the Contractor in a manner that will facilitate the efficient completion of the entire work. Contractor shall have complete control of the premises on which the work is to be performed and shall have the right to decide the time or order in which the various portions of the work shall be installed or the priority of the work of other subcontractors, and, in general, all matters representing the timely and orderly conduct of the work of Subcontractor on the premises.

**ARTICLE VIII. CHANGE ORDERS, ADDITIONS AND DEDUCTIONS.** Subcontractor shall make any and all changes in the work, including additions, deletions, or other revisions, as directed by Contractor by properly executed written directive. Such change by written directive shall not invalidate this Agreement. Subcontractor shall promptly perform the work as directed. Once Subcontractor has received Contractor's properly executed written directive, Subcontractor is solely responsible for timely performance of the work as changed by the written directive. If Contractor and Subcontractor cannot agree on the amount of the addition or deletion, Subcontractor shall not be relieved of its obligation to perform the work as changed by Contractor's written directives.

A DIRECTIVE SHALL BE DEEMED PROPERLY EXECUTED IF, AND ONLY IF, IT IS IN WRITING AND IT HAS BEEN EXECUTED BY CONTRACTOR'S PROJECT MANAGER, PROJECT SUPERINTENDENT OR PROJECT ENGINEER.

Subcontractor shall not make any changes in the work or in any way cause or allow that work to deviate from the Contract Documents without a properly executed written directive from Contractor. Payment for changed work shall be made in accordance to Article VI

Subcontractor shall timely perform any disputed work and shall give written notice of a claim for additional compensation for that work. Such written notice of claim must be given within ten days after the work is performed or such shorter time as given within the time frame set forth in the Prime Contract. Failure of timely notice is agreed to preclude any claim for which timely notice is required by the Prime contract.

Subcontractor's failure to give timely written notice to Contractor under the Contract Documents shall be deemed a waiver of any legal or equitable right for reimbursement and/or a failure to meet an express condition precedent for such claim, including any allocable increased cost or price or related contract payment, project performance time, or damages resulting from or related to the change in work.

Case: 19-30088    Doc# 1743    Filed: 04/29/19    Entered: 04/29/19 11:27:32    Page 28

RCPR2MIL                                                    Rev. 05/25/17

Subcontractor's claim shall not exceed its actual damages including any extra actual cost. It is understood that all damages shall be based upon and shall not exceed actual cost or damages to Subcontractor and in no event shall Subcontractor be allowed more than its costs plus a mark-up for profit and overhead, as defined by the Prime Contract. In the absence of a defined percentage, fifteen percent (15%) will be allowed, including sub-tier markups.

All changes, additions or omissions in the work ordered in writing by the Contractor shall be deemed to be a part of the Work hereunder and shall be performed and furnished in strict accordance with all of the terms and provisions of this Agreement and the other Contract Documents.
No change, alteration or modification to or deviation from this Agreement, the Contract Documents, the Prime Contract, the Project Plans and Specifications, whether made in the manner provided in this provision or not, shall release, exonerate, in whole or in part, any bond or surety on any bond given in connection with this Agreement, and no notice is required to be given to such surety of any change, alteration, modification or deviation.

Subcontractor agrees to hold any legal action in abeyance pending the Owner's decision on its claims. Contractor agrees to toll the running of any statute of limitations for the period of time commencing with the filing of claims with Contractor and ending with Owner's final decision or deemed denial.

***ARTICLE IX. DISPUTES.*** If a dispute arises between the Subcontractor and Contractor resulting from the Owner's actions, or interpretations of Prime Contract or Contract Documents by Owner, then the dispute resolution procedure in the Prime Contract shall be applicable to the Subcontractor. (See interpretation of disputes set forth in Article III). When the Contractor and Owner arbitrate such a controversy that, in Contractor's opinion, involves Subcontractor's work, then, at Contractor's sole option, and subject to the Prime Contract's arbitration agreement (between Contractor and Owner), the Subcontractor agrees it shall participate in and be subject to the jurisdiction of the Owner/Contractor' arbitration and Subcontractor shall be bound to the arbitration decision as a party.

If Contractor is prosecuting a claim against Owner which includes any claim cost for Subcontractor, Subcontractor shall not be entitled to any other legal jurisdiction for resolution of any action against Contractor. If prevailing party is not entitled to attorney fees under the Prime Contract that term shall be applicable to Subcontractor to the extent it has an action against Contractor in the consolidated arbitration/litigation.

If Subcontractor submits any claim which by its nature is a pass through claim, i.e., a claim which if meritorious ultimately should be paid by Owner rather than Contractor, Contractor may, in its sole discretion, require subcontractor to enter into a pass-through agreement, whereby Contractor authorizes Subcontractor to prosecute the claim in Contractor's name and Subcontractor agrees that the recovery which it obtains on the claim will be limited to the amount, if any, it receives from the Owner. The terms of any such pass-through agreement shall be satisfactory to Contractor. Subcontractor shall reimburse Contractor for any reasonable attorneys' fees incurred by Contractor in connection with the preparation of the pass-through agreement or on account of the claim being processed by Subcontractor in Contractor's name. Further, Subcontractor shall defend and indemnify Contractor from and against any cross-claim or counterclaim brought by Owner against Contractor on account of the claim being pursued by Subcontractor.

No claim, dispute or controversy shall interfere with the progress or performance of the Work, and in all instances Subcontractor shall proceed with the work as directed by Contractor. Any failure of Subcontractor to comply herewith and to proceed with the Work shall automatically be deemed a breach of this Agreement.

If the dispute between the Contractor and Subcontractor is solely related to disputes between Subcontractor and Contractor (as real party in interest) and not the Owner or its Plans/Specification/Interpretations the parties shall:

Initially, and promptly after identification of any claim or dispute between the parties to this Agreement which arise from or in connection with this Agreement, Contractor's project manager and Subcontractor's project representative shall meet face-to-face to review and consider the claim or dispute. This meeting shall occur at the earliest practicable date and shall be for the express purposes of: (1) exchanging and reviewing all pertinent documents and information relating to the matters and issues in dispute; (2) freely and candidly discussing each party's position; and (3) reaching agreement upon a reasonable, compromise resolution of the claim or dispute.

If the project managers are unable to resolve the claim or dispute and if the claim or dispute is not one that Contractor believes should be submitted to the Owner, a senior representative from Contractor and a senior representative from Subcontractor each shall review the claim or dispute in detail and then meet face-to-face to discuss and resolve the matter. This meeting of senior management representatives shall occur no later than fifteen (15) days after the meeting of the project representatives, unless the parties both agree upon a longer period of time. The parties shall promptly designate a senior representative for purpose of this section. Either party may, if necessary, designate a different senior representative at any time during the course of the Project.

If any claim or dispute not involving the Owner remains unresolved after the meeting of the senior management representatives or subsequent meeting(s) as agreed upon by the parties, Contractor and Subcontractor agree to promptly submit the matter to mediation with an experienced, mutually acceptable mediator. Unless the parties both agree upon a longer period of time, the mediation shall be held no later than sixty (60) days after the meeting of the senior management representatives. No later than thirty (30) days prior to the mediation date, the parties shall exchange in a cooperative and forthright manner all documents, data and information relating to the claim or dispute, excepting only those items protected by the attorney/client or other applicable privilege. The parties shall share equally the mediator's fee for the mediation.

**ARTICLE X. INSPECTION AND DEFECTIVE WORK.** The Subcontractor shall at all times provide sufficient, safe and proper facilities for the inspection of the Work by the Contractor, the Owner and their authorized representatives in the field, at shops, or at any other place where materials or equipment for the Work are in the course of preparation, manufacture, treatment or storage. The Subcontractor shall, within twenty-four (24) hours after receiving written notice from the Contractor to that effect, proceed to take down all portions of the Work and remove from the premises all materials whether worked or unworked, which the Contractor shall conclude is unsound, defective or improper or as in any way failing to conform to this Agreement or the Plans, Specifications or other Contract Documents, and the Subcontractor, at its own cost and expense, shall replace the same with proper and satisfactory work and materials and make good all work damaged or destroyed by or as a result of such unsound, improper or nonconforming work or materials or by the taking down, removal or replacement thereof.

**ARTICLE XI. FAILURE TO PROSECUTE, ETC.** Should the Subcontractor any time refuse or neglect to supply a sufficiency of skilled workmen or materials of the proper quality and quantity, or fail in any respect to prosecute the Work with promptness and diligence, or cause by any act or omission the stoppage of delay of or interference with or damage to the Work of the Contractor or of any work Contractors or Subcontractors on the Project such action shall be deemed a material breach of contract. The Contractor shall have the right, in addition to any other rights and remedies provided by this Agreement and the other contract Documents or by law, after three (3) days written notice to the Subcontractor mailed or delivered to the last known address of the latter, (a) to perform and furnish through itself or through others any such labor or materials for the Work and to deduct the cost thereof from any monies due or to become due to the Subcontractor under this Agreement, and/or (b) to terminate the employment of the Subcontractor for all or any portion of the Work.

In case of such termination of the employment of the Subcontractor, the Subcontractor shall not be entitled to receive any further payment under this Agreement until the Work shall be wholly completed to the satisfaction of the Contractor and shall have been accepted at which time, if the unpaid balance of the amount to be paid under this Agreement shall exceed the cost and expense incurred by the Contractor in completing the Work, such excess shall be paid by the Contractor to the Subcontractor; but such cost and expense shall include not only the cost of completing the Work to the satisfaction of the Contractor and of performing and furnishing all labor, services, materials, equipment and other items required therefor, but also all losses, damages, costs and expenses, including legal costs and attorney fees sustained, incurred or suffered by reason of or resulting from the Subcontractor's default.

**ARTICLE XII. LOSS OR DAMAGE TO WORK.** The Contractor shall not be responsible for any loss or damage to the Work to be performed and furnished under this Agreement, however caused, until after final acceptance thereof by the Contractor, nor shall the Contractor be responsible for loss of or damage to materials, tools, equipment, appliances, or other personal property owned, rented or used by the Subcontractor or anyone employed by it in the performance of the Work however caused.

In the event of a loss insured under this Article, the Subcontractor shall be bound by any adjustment which shall be made between the Contractor or the Owner and the insurance company or companies. Loss, if any, shall be made payable to the Contractor and/or the Owner, as their interests may appear, for the account of whom it may concern.

**ARTICLE XIII. CLEANING UP.** The Subcontractor shall, at its own cost and expense, (1) keep the Premises free at all times from all waste materials, packaging materials and other rubbish accumulated in connection with the execution of its Work, (2) clean and remove from its own Work and from all contiguous Work of others any soiling, staining, mortar, plaster, concrete or dirt caused by the execution of its Work and make good all defects resulting therefrom, (3) at the completion of its Work in each area, perform such cleaning as may be required to leave the area "broom clean," and (4) at the entire completion of its Work, remove all of its tools, equipment, scaffolds, shanties and surplus materials. Should the Subcontractor fail to perform any of the foregoing to the Contractor's satisfaction, the Contractor shall have the right to perform and complete such Work itself or through others and charge the cost thereof to the Subcontractor.

RCPR2MIL

REV 05-2017

**ARTICLE XIV. COMPLIANCE WITH LAW AND PERMITS.** The Subcontractor shall comply with all Federal, State, Municipal and Local Laws, ordinances, rules, regulations, standards, orders, notices and requirements, including, among others, those relating to State Contractor License Requirements, safety, discrimination in employment, fair employment practices or equal employment opportunity, and with the requirements of the American Insurance Association, whether or not provided for by the Plans, Specifications, General Conditions or other Contract Documents, without additional charge or expense to the Contractor, and shall also be responsible for and correct, at its own cost and expense, any violations thereof resulting from or in connection with the performance of its Work. The Subcontractor shall at any time upon demand furnish such proof as the Contractor may require showing such compliance and the correction of such violations. The Subcontractor agrees to hold harmless and indemnify the Contractor from and against any and all loss, injury, claims, actions, proceedings, liability, damages, fire, penalties, costs and expenses, including legal costs and attorney fees, caused or occasioned directly or indirectly by the Subcontractor's failure to comply with any said laws, ordinances, rules, regulations, standards, orders, notices or requirements or to correct such violations.

**ARTICLE XV. LABOR TO BE EMPLOYED.** Subcontractor acknowledges that Contractor has entered into labor agreements covering work at his construction job sites with the following labor unions:

### Carpenters 46 Northern California Counties Conference Board

### Laborers Northern California Council of Laborers

Should there be picketing on the Contractor's jobsite, and the Contractor establishes a reserved gate for the Subcontractor's purposes, it shall be the obligation of the Subcontractor to continue the proper performance of his Work without interruption or delay.

Subcontractor further promises and agrees that he will bind and require all of his Subcontractors performing jobsite work of the type covered by any of the labor agreements specified above to agree to all of the foregoing promises and undertakings, to the same effect as herein provided with respect to him.

Contractor is signatory to the Carpenters 46 Northern California County's Conference Board and the Laborers Northern California Counsel of Laborers. Contractor and Subcontractor agree to comply with all Dispute Resolution procedures existing between their respective Unions and are to resolve lawfully any conflict relating to an assignment of works, jurisdictional disputes and disputes or grievances. Upon request of Contractor, Subcontractor shall take any and all lawful steps to secure binding and final determination of such disputes with the National Labor Relations Board.

**ARTICLE XVI. TAXES AND CONTRIBUTIONS.** The Subcontractor for the Price herein provided for, hereby accepts and assumes exclusively liability for and shall indemnify, protect and save harmless the Contractor and the Owner from and against the payment of:

1. All contributions, taxes or premiums (including interest and penalties thereon) which may be payable under the Unemployment Insurance Law of any State, the Federal Social Security Act, Federal, State, County and/or Municipal Tax Withholding Laws, or any other law, measured upon the payroll of or required to be withheld from employees, employed by Subcontractor or it's agent engaged in the Work to be performed and furnished under this Agreement.

2. All sales, use, personal property and other taxes (including interest and penalties thereon) required by any Federal vendors or to any other person or persons acting for, through, or under any of them, by reason of the performance of the Subcontractor's Work or the acquisition, ownership, furnishing or use of any materials, equipment, supplies, labor, services or other items for or in connection with the Work.

3. All pension, welfare, vacation, annuity and other union benefit contributions payable under or in connection with labor agreements with respect to all persons, by whomsoever employed, engaged in the Work to be performed and furnished under this Agreement.

**ARTICLE XVII. PATENTS.** The Subcontractor hereby agrees to indemnify, protect and save harmless the Contractor and the Owner from and against any and all liability, loss or damage and to reimburse the Contractor and the Owner for any expenses including legal costs and attorney fees, to which the Contractor and the Owner may be put because of claims or litigation on account of infringement or alleged infringement of any letters patent or patent rights by reason of the Work or materials, equipment or other items used by the Subcontractor in its performance.

**ARTICLE XVIII. MECHANICS' LIENS OR CLAIMS** If any subcontractor, Laborer or Materialman of the Subcontractor files or maintains a Lien or Claim against the Project or Premises or any part thereof or any interests therein or any

improvements thereon or against any monies due or to become due from the Owner to the Contractor or from the Contractor to the Subcontractor, for or on account of any work, labor, services, materials, equipment or other items performed or furnished for or in connection with the Work or under any change order or supplemental agreement for extra or additional work in connection with the Project, the Subcontractor agrees to cause such Liens and Claims to be satisfied, removed or discharged at its own expense by bond, payment or otherwise within ten (10) days from the date of the filing thereof, and upon its failure so to do the Contractor shall have the right, in addition to all other rights and remedies provided under this Agreement and the other Contract Documents or by law, to cause such liens or claims to be satisfied, removed or discharged by whatever means the Contractor chooses, at the entire cost and expense of the Subcontractor (such cost and expense to include legal costs and attorney fees.) The Subcontractor agrees to indemnify, protect and save harmless the Contractor and its payment bond Surety against any and all such liens and claims and actions brought or judgments rendered thereon, and from and against any and all loss, damages, liability, costs and expenses, including legal cost and attorney fees which the Contractor may sustain or incur in connection therewith.

**ARTICLE XIX. ASSIGNMENT AND SUBLETTING.** Neither this Agreement nor the monies due or to become due hereunder shall be assignable without the prior written consent of the Contractor nor shall the whole or any part of this Agreement be sublet without like prior written consent. Any such assignment or subletting without such prior written consent shall be void and of no effect and shall vest no right or right of action in the Assignee or Subcontractor against the Contractor.

Contractor may assign or transfer the whole or part of this Subcontract, and its rights hereunder, to any corporation, individual, partnership, or limited liability company.

**ARTICLE XX. TERMINATION OF AGREEMENT.** Contractor shall have the right at any time by written notice to Subcontractor, to terminate this Agreement. Such termination shall be effective in the manner specified in said notice and shall be without prejudice to any claims which Contractor or Subcontractor may have against each other.

Upon receipt of such notice, Subcontractor shall, unless the notice directs otherwise, immediately discontinue the work and placing of orders for materials, facilities, and supplies in connection with performance of this Agreement, and shall, if requested, make every reasonable effort to procure cancellation of all existing orders for contracts upon terms satisfactory to Contractor, and thereafter shall do only such work as may be necessary to preserve and protect work already in progress and to protect materials, supplies and equipment on the work or in transit thereto.

Upon such termination, it is further agreed that the obligations of this contract shall continue as to work already performed as to bona fide obligations assumed by Subcontractor prior to the date of cancellation or termination. Subcontractor shall be entitled to only pro rata compensation for the portion of the agreement already performed, including materials for which it has made firm contracts. It is understood and agreed that the Contractor shall be entitled to such materials.

Subcontractors shall not be entitled to any compensation for anticipated profits on unperformed work or on materials or equipment unfurnished except those materials for which it has made firm contracts.

If this Agreement is terminated by Contractor for default under Article XI, above, and if it is later determined that the default termination was wrongful, such default termination automatically shall be converted to and treated as a termination for convenience under this Article XX. In such event, Subcontractor specifically waives any claim for any other amounts or damages, including any claim for consequential damages.

**ARTICLE XXI. GUARANTEES.** The Subcontractor hereby guarantees the Work to the full extent provided in the Plans, Specifications, General Conditions and other Contract Documents.

Without limitation by the foregoing, the Subcontractor shall pay in addition for all damage to the Project or Premises resulting from defects in Work and all costs and expenses necessary to correct, remove, replace and/or repair the Work and any other work or property which may be damaged in correcting, removing, replacing or repairing the Work.

**ARTICLE XXII. POST-CONSTRUCTION REQUIREMENTS.** When as-built drawings, guarantees, operating instructions and other post-construction requirements are required in the Prime contract specifications, the Subcontractor agrees that such drawings, guarantees, instructions, and requirements will be submitted timely. Furthermore, it is agreed that the Contractor may procure these requirements in the event of untimely performance by the Subcontractor, with the cost of this procurement charged against the account of the Subcontractor.

**ARTICLE XXIII. ACCIDENT PREVENTION.** The Subcontractor agrees that the prevention of accidents to workers engaged upon or in the vicinity of the Work is its responsibility. The Subcontractor agrees to comply with all Federal,

Case: 19-30088    Doc# 1743    Filed: 04/29/19    Entered: 04/29/19 11:27:32    Page 32

RCPR2MIL
Rev. 04/21/17

State, Municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices and requirements concerning safety as shall be applicable to the Work, including, among others, the Federal Occupational Safety and Health Act of 1970, as amended, and all standards, rules, regulations and orders which have been or shall be adopted or issued thereunder, and with the safety standards established during the progress of the Work by the Contractor or Owner.

When so ordered, the Subcontractor shall stop any part of the work which the Contractor deems unsafe until corrective measures satisfactory to the Contractor have been taken. Subcontractor shall not continue work until Subcontractor has submitted its written report of Subcontractor's corrective actions that have actually been executed by Subcontractor. The Subcontractor understands and agrees that if Subcontractor fails to either notify Contractor and/or to actually implement necessary corrective action that Subcontractor failure will be deemed a material breach of contract and this Subcontract Agreement may be terminated based solely upon such Subcontractor breach. Further, Subcontractor agrees that it shall not have nor make any claims for damages growing out of such work stoppages or termination. In addition to these rights to terminate, if Subcontractor neglects to take corrective measures related to Contractor's direction to stop work, the Contractor may take necessary corrective action at the cost and expense of the Subcontractor, including deduction from progress or final payment or back-charge or offset to other contracts for Contractor's costs to take such corrective action. Failure on the part of the Contractor to stop unsafe practices shall in no way relieve the Subcontractor of its responsibility therefore and Subcontractor understands it has primary responsibility and shall not delegate such to any other party.

**SAFETY: Subcontractor acknowledges that it is responsible to supply all safety measures to insure all of its workers are working in a safe environment. To the extent Subcontractor does not feel the site is safe, Subcontractor is to immediately stop all work until all unsafe site conditions have been corrected and Contractor notified of both the stoppage and corrective measures in writing. Subcontractor's failure to stop all work, or Subcontractor's recommencement of work, shall constitute Subcontractor express agreement to indemnify Contractor, Owner, and all their Agents of any and all liability of any incident that arises related to such Subcontractor inaction. This latter indemnity is independent of and in addition to this Agreement's other express or implied indemnity requirements. If applicable, Subcontractor must be enrolled in ISNetworld with an acceptable grade set by Owner's Requirements.**

*ARTICLE XXIV. INDEMNIFICATION*

*1. Subcontractor Indemnity Obligations*

The work performed by Subcontractor shall be at the risk of Subcontractor, exclusively. To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Owner and Contractor and all affiliated companies of Owner and Contractor and each of their partners, joint venturers, representatives, members, designees, officers, directors, shareholders, employees, agents, successors, and assigns ("Indemnified Parties"), from and against any and all claims, demands, damages, actions, causes of action, suits, losses, judgments, obligations and liabilities, costs and expenses (including, but limited to, investigative and repair costs, attorneys' fees and costs, and consultants' fees and costs) ("Claims") which arise out of or are in any way related to the scope of work performed, materials furnished or services provided under this Agreement by Subcontractor or its agents or employees. These indemnity and defense obligations shall apply to any and all acts or omissions and any and all negligent or willful misconduct of Subcontractor, its employees or agents, whether the same are active or passive. These indemnity and defense obligations shall not apply only to the extent said Claims arise out of, pertain, or relate to (a) the active (but not passive) negligence, sole negligence, or willful misconduct of the Indemnified Parties or their agents and independent contractors, other than Subcontractor or (b) defects in design furnished by those persons. It is the express intent of the Parties and these indemnity provisions to comply with Civil Code section 2782 and 2782.05 as amended or added by Senate Bill 474, chaptered October 9, 2011.

Without limiting the generality of the foregoing indemnity obligations, such indemnity obligations expressly extend to and include any and all claims, demands, damages, costs, expenses, fines, penalties, or liability occasioned as a result of:

Damages to adjacent property caused by the conduct of Subcontractor's Work;

The violation by Subcontractor, Subcontractor's agents, employees, or independent contractors or subcontractors, of any provision of federal, state or local law, including applicable administrative regulations;

Any and all claims, liabilities, loss, damage, costs, or expenses, including reasonable attorneys' fees, awards, and judgments, arising by reason of any claims, liens, stop notices, or bond claims for labor, materials, or equipment used or furnished to be used on the Project, or union trust fund payments arising from or relating to

<span style="color:red">Case: 19-30088    Doc# 1743    Filed: 04/29/19    Entered: 04/29/19 11:27:32    Page 33</span>

RCPR2MIL

Rev. 04/21/17

Subcontractor's Work on the Project, and all incidental or consequential damages resulting to Indemnified Parties from such claims, liens, stop notices or bond claims;

Any claim, suit, or action, or any alleged violation or infringement of patent rights, copyrights or trademarks that may be made against Owner or Contractor by reason of the use in connection with or as a part of the performance of Subcontractor's Work or the furnishing of materials hereunder, of anything which is now or may hereafter be covered by patent, copyright, or trademark, and also against all expense, including attorneys' fees, which Contractor and/or Owner may incur in defending or adjusting any such claim, suit, or action; and

Hazardous Materials or contamination therefrom brought onto the Project site, discharged or released by Subcontractor, any subcontractor, material supplier of Subcontractor or any person or entity under the direct or indirect control of any of them.

Personal Injury, including, but not limited to, bodily injury, emotional distress, sickness or disease, or death to persons, including, but not limited to, any employees or agents of Subcontractor, Owner, Contractor, or any other subcontractor.

Subcontractor's failure to comply with Article XV, above.

Subcontractor's failure to comply with Article XXV, below.

Any failure or alleged failure to comply with the terms of this Subcontract or the Contract Documents.

## 2. *Subcontractor Defense Obligations*

Subcontractor's obligation and duty to defend are as broad as allowed by law, including, without limitation, Civil Code section 2782.05, and apply whether the issue of the Indemnified Parties liability, breach of this Agreement or other obligation or fault has been determined.

**ARTICLE XXV. INSURANCE REQUIREMENTS** The Parties intend that Subcontractor shall provide the maximum insurance coverage for Contractor and Owner as additional insureds on Subcontractor's insurance policies ("Additional Insureds") as allowed by law. All required insurance shall be maintained during the term of the Subcontract agreement and for the statutory period in which claims may be filed or brought against Subcontractor, Contractor or Owner in connection with Work under Civil Code and Code of Civil Procedures of the jurisdiction in which Work is performed

**1.0.** Prior to commencing any work, Subcontractor shall, at its sole expense, procure and maintain insurance on all of its operations, with minimum amounts and policy forms acceptable to Contractor as specified herein. If higher limits or other forms of insurance are required in the Contract Documents, then Subcontractor shall procure and maintain insurance to satisfy such requirements. Any deductible(s) or self-insured retention(s) shall be borne by Subcontractor and not by Contractor or Owner.

**1.1.** <u>QUALIFYING INSURERS:</u> All policies required hereunder shall be issued by insurance companies authorized to transact business in the State of California with a minimum A.M. Best rating of A– VIII, unless otherwise approved by the Contractor. An exception is allowed for Workers' Compensation insurance provided by California State Compensation Insurance Fund.

**1.2.** <u>WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY INSURANCE</u> shall be maintained as required by any applicable law or regulation, including U.S. Longshoremen's and Harbor Workers' Compensation Act, the Jones Act or any other Federal, State or local employment regulations.

Employer's Liability Insurance limits shall be at least:
$1,000,000 each accident for bodily injury by accident
$1,000,000 each employee for bodily injury by disease
$1,000,000 policy limit for bodily injury by disease

The policy shall provide a Waiver of Subrogation to Contractor, Owner and their respective officers, directors and employees on NCCI form WC 00 03 13, or its equivalent.

**1.3.** <u>COMMERCIAL GENERAL LIABILITY INSURANCE</u> shall be maintained on policy forms at least as broad as ISO form CG 0001 covering all operations performed by or on behalf of the Subcontractor including, but not limited to, the following coverages and minimum limits:

A. Premises & Operations
B. Products and Completed Operations, which shall be maintained through the expiration of all applicable statutes of limitation following completion of the work
C. Personal and Advertising Injury Liability
D. Contractual Liability insuring the obligations assumed by Subcontractor in this Agreement
E. Broad Form Property Damage, including Completed Operations

**1.3.1.** Limits of Liability based on Subcontractors scope of work shall be at least:

**1.3.1.1.** Limits of Liability for all Subcontractors, other than those specified in Article 1.3.1.2., shall be at least:

$ 2,000,000 Each Occurrence for Bodily Injury and Property Damage Liability
$ 2,000,000 Personal Injury and Advertising Liability
$ 2,000,000 Products and Completed Operations Aggregate
$ 2,000,000 General Aggregate

**1.3.1.2.** For Projects where the Building height is greater than three stories the Limits of Liability for Subcontractors performing Roofing; Exterior siding, stucco, or skin of any type; Flashing; Installation of skylights, windows, storefronts, or exterior doors; Waterproofing; Sheet metal; Rough Carpentry; Fire protection; Scaffold operations; Crane operations; or any other trades as Contractor may designate shall be at least:

$5,000,000 Each Occurrence for Bodily Injury and Property Damage Liability
$5,000,000 Personal Injury and Advertising Liability
$5,000,000 Products and Completed Operations Aggregate
$5,000,000 General Aggregate

**1.3.2.** <u>Additional Insured Requirement</u> – The Contractor, the Owner and their respective officers, directors and employees, and any other parties required by Owner shall be additional insureds, and such coverage shall be at least as broad as that afforded to the Subcontractor. The additional insured provisions shall include products and completed operations coverage, and shall be maintained on all subsequent policy renewals through all applicable statute of repose periods following completion of the work. Such provision shall be at least as broad as ISO Additional Insured form CG 2010 1185, or a combination of ISO Additional Insured forms CG 2010 1001 and CG 2037 1001, or their equivalent. Any deviation from these specified forms, or their equivalent, shall be submitted to Contractor for approval prior to commencing work.

**1.3.3.** <u>Primary Insurance Requirement</u> – The policy shall stipulate the insurance afforded to the additional insureds applies as primary insurance and that any other insurance carried by the additional insureds will be excess only and will not contribute with the Subcontractor's insurance. Such provision shall be at least as broad as ISO Primary and Noncontributory – Other Insurance Condition form CG 2001 0413.

**1.3.4.** <u>Other General Liability Insurance Requirements</u> –
A. Coverage shall apply on an "occurrence" basis. Claims made or modified occurrence policies are not allowed.
B. The General Aggregate Limit shall apply separately to this project, or shall be at least 2 (two) times the required each occurrence limit.
C. Any "Overall or Total Policy Aggregate Limit" shall be submitted to Contractor for approval prior to commencing work.
D. Defense Costs shall be in addition to the policy limits.
E. The policy shall provide a Waiver of Subrogation to all Additional Insured parties. Such provision shall be at least as broad as ISO Waiver of Transfer of Rights of Recovery Against Others To Us form CG 2404 0509.
F. Any "cross suits" exclusions shall not apply to any additional insureds.
G. There shall be no provision which excludes or limits coverage for claims brought by employees of any subcontractor or claims by any lower tier subcontractors, such as an independent subcontractor exclusion.
H. There shall be no coverage exclusions or restrictions for subsidence, earth movement, explosion, collapse or underground hazards.
I. Deductibles or Self-Insured Retentions greater than $25,000 shall be submitted to Contractor for approval prior to commencing work. All Self-Insured Retentions shall be disclosed on the certificates of insurance and a copy of the Self-Insured Retention endorsement or policy provision shall be provided along with the certificate of insurance. All Self-Insured Retention provisions must state that retention amounts may be satisfied by either the Named Insured(s) or any Additional Insured(s). Self-Insured Retentions that can be

satisfied by only the Named Insured(s) are not acceptable.

J. Contractor reserves the right to require a surety bond, letter of credit or other form of security in an amount equal to the Self-Insured retention at no additional cost to Contractor

**1.3.5.** **General Liability Insurance Requirements for Specific Trades** – The following provisions apply in addition to the requirements stated in Article 1.3.4.:

A. Any Subcontractor of any tier performing work involving Roofing; Exterior siding, stucco, or skin of any type, including, but not limited to, Exterior Insulation and Finish Systems (EIFS); Flashing; Installation of skylights, windows, storefronts or exterior doors; Waterproofing; Fire protection; HVAC; Plumbing; or any other trades as Contractor may designate shall provide acceptable evidence that their General Liability insurance either (a) does not have any exclusions or limitations for claims from mold, fungus or bacteria; or (b) shall provide evidence of other acceptable insurance such as Contractor's Pollution Liability to adequately insure these exposures.

B. Any Subcontractor of any tier performing work involving EIFS shall provide acceptable evidence that their General Liability insurance either (a) does not have any exclusions or limitations for claims arising from EIFS, mold, fungus or bacteria; or (b) shall provide evidence of other acceptable insurance to adequately insure the exposures involving EIFS work.

**1.4.** **AUTOMOBILE LIABILITY INSURANCE** shall be maintained on policy forms at least as broad as ISO form CA 0001, including, but not limited to, the following coverages and minimum limits:

A. Coverage for all owned, non-owned and hired automobiles.
B. Limit of liability shall be at least $1,000,000 combined single limit.
C. If the Subcontractor or its Subcontractors transport hazardous materials, regulated substances or wastes, then the minimum limit of liability shall be $3,000,000 combined single limit and the policy shall include Endorsement MCS-90.
D. The Contractor, the Owner and their respective officers, directors and employees, and any other parties required by Owner shall be additional insureds. Such provision shall be at least as broad as ISO Designated Insured form CA 2048 1013.
E. The policy shall provide a Waiver of Subrogation to all additional insured parties. Such provision shall be at least as broad as ISO Waiver of Transfer of Rights of Recovery Against Others To Us form CA 0444 1013.

**1.5.** **EXCESS/UMBRELLA LIABILITY INSURANCE** – If Excess or Umbrella Liability policies are used to meet the required limits of liability, then said policies shall be "following" form of the underlying policy and shall meet all of the insurance requirements stated in Articles 1.2, 1.3 and 1.4.

**1.6.** **POLLUTION LIABILITY INSURANCE**
A. If any Subcontractor of any tier handles hazardous materials (including, but not limited to, asbestos, lead, silica, PCB's, contaminated soil, etc.), or if their operations create an exposure to hazardous materials, they must provide Contractor's Pollution Liability Insurance with limits not less than $5,000,000 per incident and $5,000,000 aggregate for Bodily Injury, Property Damage, Environmental Damage or Clean-up Costs.
B. If any Subcontractor of any tier transports hazardous materials, they must provide Contractor's Pollution Liability Insurance which includes coverage for pollution conditions arising from the transportation of hazardous materials with limits not less than $5,000,000 per incident and $5,000,000 aggregate.
C. With respects to Article 1.3.5., General Liability Insurance Requirements for Specific Trades it shall be permissible for Subcontractors or Sub-Subcontractors performing those specified scopes of work to provide Contractor's Pollution Liability insurance which includes coverage for "Mold, Fungus, Bacteria and EIFS" as a means of satisfying the insurance requirements stated in Article 1.3.5. The limit of liability shall be not less than $1,000,000 each incident and $2,000,000 aggregate.
D. Whether written on an "Occurrence" basis or on a "Claims Made" basis, coverage shall either be renewed continuously or shall provide an extended claims reporting period through all applicable statute of limitation periods following completion of the work.
E. The Contractor, the Owner and their respective officers, directors and employees, and any other parties required by Owner shall be additional insureds during the term of the Subcontract agreement and through all applicable statute of repose periods following completion of the work.
F. The policy shall provide a Waiver of Subrogation to all additional insured parties.

**1.7.** **PROFESSIONAL LIABILITY INSURANCE**
A. If Subcontractor or any Sub-Subcontractor performs any professional, design or design-build work or services, they must provide Professional Liability Insurance with limits not less than $1,000,000. Coverage

Case: 19-30088    Doc# 1743    Filed: 04/29/19    Entered: 04/29/19 11:27:32    Page 36

RCPR2MIL
Rev. 04/21/17

must be continuous or allow for the reporting of claims for 3 years following completion of the work

    B.   Coverage must have an effective date, retroactive date or prior acts date prior to the start of any professional services.

    C.   If Contractor or Owner elects to provide a project-specific Professional Liability policy, then Subcontractor's Professional Liability policy shall be endorsed to provide excess coverage over the project-specific policy.

**1.8.**   **AIRCRAFT LIABILITY INSURANCE**

    A.   If Subcontractor or any Sub-Subcontractor uses any owned or non-owned aircraft of any type in the performance of their work, they shall maintain aircraft liability insurance with limits not less than $10,000,000 per occurrence including Passenger Liability.

    B.   The Contractor, the Owner and their respective officers, directors and employees, and any other parties required by Owner shall be additional insureds.

    C.   The policy shall provide a Waiver of Subrogation to all additional insured parties.

**1.9.**   **RIGGERS LIABILITY INSURANCE** – If Subcontractor or any Sub-Subcontractor performs any work involving the rigging, lifting, lowering or moving of property or equipment, then those parties performing such work shall carry Rigger's Liability Insurance to insure against physical loss or damage to the property or equipment.

**1.10.**   **INSURANCE REQUIREMENTS FOR SUB-SUBCONTRACTORS, TRUCKERS, VENDORS AND SUPPLIERS** – Subcontractor shall insure that all tiers of their Sub-Subcontractors, Truckers, Vendors and Suppliers shall procure and maintain insurance in like form and amounts, including the Additional Insured requirements stated herein. Each Sub-subcontractor shall provide acceptable certificates of insurance and required policy endorsements to Contractor before commencing any work hereunder.

**1.11.**   **INSURANCE COVERAGES/LIMITS BROADER THAN/GREATER THAN THE MINIMUM REQUIREMENTS** – The insurance coverages and limits stated herein are the minimum required coverages and limits. To the extent Subcontractor maintains insurance policies with coverages broader than and/or limits greater than any of the required minimums, then Subcontractor agrees that such broader coverage and/or higher limits shall be deemed to be the required minimums and shall be available to the Additional Insureds with respects to any of Subcontractor's insurance obligations hereunder

**1.12.**   **PROPERTY/BUILDER'S RISK INSURANCE**

    A.   If Property/Builder's Risk insurance purchased by Owner or Contractor contains deductibles, then Subcontractor shall be responsible for such deductible applicable to damage to Subcontractor's work and/or damage to other work caused by Subcontractor.

    B.   Subcontractor shall be bound by any loss adjustment made between the Owner or Contractor and the insurance company(ies).

    C.   Contractor, Subcontractor and their respective insurers waive all rights against each other and against all other Subcontractors and Owner for loss or damage to the extent reimbursed by Property/Builder's Risk insurance applicable to the work, except such rights as they may have to proceeds of such insurance.

    D.   If Property/Builder's Risk insurance is not purchased by Owner or Contractor, then Subcontractor shall be fully responsible for all loss or damage to Subcontractor's work.

    E.   If not covered by Property/Builder's Risk insurance, or any other insurance required by the Contract Documents, then Subcontractor shall procure and maintain at its own expense insurance for Subcontractor's work, including, but not limited to, materials, supplies and equipment, stored away from the site or in transit.

    F.   Contractor shall not be responsible for any loss or damage to Subcontractor's work, however caused, until after final acceptance by Owner and Contractor.

    G.   Contractor shall not be responsible for loss or damage to materials, tools, equipment or other personal property owned, rented or used by Subcontractor or anyone employed by Subcontractor.

    H.   Upon written request of Subcontractor, Contractor shall provide Subcontractor with a copy of the Builder's Risk Policy of insurance or any other property or equipment insurance in force for the Project and procured by Contractor. Subcontractor shall satisfy itself as to the existence and extent of such insurance prior to commencement of Subcontractor's Work.

**1.13.**   **CERTIFICATES OF INSURANCE**

    A.   Subcontractor shall provide acceptable certificates of insurance along with all required policy forms or endorsements to Contractor before commencing any work under this Subcontract Agreement. If requested, Subcontractor shall provide full copies any policies required herein.

    B.   All policies shall contain a minimum thirty (30) days notice of cancellation. Subcontractor shall make

RCPR2MIL
Rev. 04/21/17

every effort to have each policy endorsed so that the insurer will provide thirty (30) days notice of cancellation directly to Contractor. If the insurers refuse, then Subcontractor agrees and warrants to immediately notify Contractor in the event of any policy cancellation.

C. Subcontractor shall continue to provide certificates of insurance and required policy endorsements, including the additional insured endorsements, through all applicable statute of repose periods following completion of the work.

## 1.14. NON-COMPLIANCE

A. In the event Subcontractor does fails to maintain any insurance required herein, Contractor may, at its option, provide insurance coverage to protect the Contractor and charge the Subcontractor for the cost of that insurance, hold the Subcontractor responsible for all costs incurred by Contractor as a result of Subcontractor's failure to maintain the proper insurance, and/or terminate this Subcontract Agreement. Contractor, at its option, may withhold payment until acceptable certificates have been furnished, or if upon receipt of a cancellation notice on a policy, until withdrawal of the notice or the reinstatement of the canceled policy.

B. Contractor's acceptance of insurance certificates shall in no way limit or relieve the Subcontractor of the duties and responsibilities stated in this Subcontract Agreement. Neither the forbearance nor omission by Contractor to require proof of all provisions of this insurance from Subcontractor will be deemed as a waiver of Contractor's rights or Subcontractor's obligations regarding the provisions of this Subcontract Agreement.

## 1.15. CONTROLLED INSURANCE PROGRAM – If the Contract Documents require participation in an Owner Controlled Insurance Program (OCIP) or Contractor Controlled Insurance Program (CCIP), Subcontractor shall fully participate and cooperate with Contractor and Insurance Program Administrator in compliance with the program requirements.

*ARTICLE XXVI. SUBCONTRACTOR PERFORMANCE BONDS.* The Contractor may, as a condition precedent to this Subcontract (as advertised for public works projects) or at any time after entering into this Subcontract based on reasonable cause, require the Subcontractor to furnish a faithful performance and labor and material bond, using bond forms provided by Contractor. If a bond is requested it shall be furnished within five (5) days and be subject to Contractor's acceptance of the SURETY. Performance Bond shall cover all conditions of this Subcontract including all costs and expenses associated with the Indemnification and Insurance provisions of this agreement, including the satisfaction of any self insured retention. The bond may equal but not exceed 100% of the Subcontract price and shall comply with any related project solicitations by the Contractor. Cost for the bond will be borne by the Contractor unless stated otherwise in this Agreement.

*ARTICLE XXVII. INDEPENDENT CONTRACTOR.* Subcontractor certifies that Subcontractor is an independent contractor and in no way is an agent or employee or Owner of Contractor, and shall, at his sole cost and expense, and without increase in the Agreement amount comply with all laws, rules, ordinances and regulations of all governing bodies having jurisdiction over the work, including, but not limited to any and all safety acts of the state and federal governments.

*ARTICLE XXVIII. USE OF CONTRACTOR'S EQUIPMENT.* Any use of Contractor's equipment shall be at the sole risk of Subcontractor, his agents, employees or those granted permission. Such Subcontractor, his agents and employees or those granted permission agree to hold Contractor harmless and free from all liability, penalties, losses, damages, costs, attorneys' fees, expenses, suits, claims or judgments resulting from death, injury or harm to any person or injury to any property resulting from or arising out of such use of Contractor's equipment.

*ARTICLE XXIX. CONFLICT WITH GOVERNING LAWS.* Contractor and Subcontractor agree that if any word, phrase or provision of this Agreement is deemed to be in conflict with any applicable law, only those words which create the conflict shall be stricken and the remainder of the words, phrases or provisions of this Agreement shall remain in full force and effect.

*ARTICLE XXX. OTHER CONTRACTS.* Should one or more contracts now or hereafter exist between the parties hereto or with any affiliated corporation or company of Contractor, concerning this or any construction project, then a breach by the Subcontractor of any contract may, at the option of the Contractor, be considered a breach of all contracts. In such event Contractor may terminate any or all of the contracts so breached, or may withhold monies due or to become due on any of such contracts and apply the same toward payment of any damages suffered on that or any other commercial or public works contract.

Case: 19-30088   Doc# 1743   Filed: 04/29/19   Entered: 04/29/19 11:27:32   Page 38

RCPR2MIL                                                                                          Rev. 04/21/17

**ARTICLE XXXI. INFORMATION REQUIRED BY OWNER.** In addition to the information to be provided by Subcontractor pursuant to other provisions of this Subcontract, Subcontractor hereby agrees to provide, at no additional cost to Contractor, any information required by the Owner and/or the Prime Contract or Contract Documents. Subcontractor further agrees that such information will be provided in a prompt and timely fashion so as not to disrupt the performance of this subcontract or the contract between Contractor and the Owner or otherwise cause or fail to mitigate Contractor or Owner damages. Such information includes but is not limited to certified payroll reports, or information required by any governmental entity having jurisdictional authority over the Owner, Contractor or Project.

**ARTICLE XXXII. CHOICE OF LAW.** This Agreement shall be deemed to have been entered into in El Dorado County, State of California, and all questions concerning the validity, interpretation, or performance of any of its terms or provisions or of any rights or obligations of the parties hereto, shall be governed by and resolved in accordance with the laws of the State of California.

**ARTICLE XXXIII VENUE.** Subcontractor agrees that its execution/signature of this Agreement is an offer and that Contractors signature/execution of the Agreement shall be acceptance. It is further agreed and understood that any and all payments are due to Subcontractor by mail and payable by deposit into the US Mail or other commercial means in El Dorado Hills, California. Therefore, the parties expressly agree that any legal action related to this contract may be filed (commenced if arbitration) by either party in El Dorado County, notwithstanding that other statutory venues may exist. Subcontractor expressly agrees it will commence any contractual or statutory action against Contractor or its Bonding companies or Public Owners in El Dorado County, California.

**ARTICLE XXXIV. LIQUIDATED DAMAGES.** It is understood that Contractor has obligated itself to Owner to complete the project in the number of days and at a liquidated damage rate in the amount per day as set out in the Contract Documents. In the event of delay caused by Subcontractor, Contractor shall be entitled to recover liquidated damages assessed by Owner as well as all other damages incurred by Contractor as a result of such delay caused by Subcontractor.

**ARTICLE XXXV. NOTICE.** All notices, requests, documents, approvals and other instruments made, given or delivered pursuant to and in connection with this Agreement shall be in writing. Written notice may be accomplished by personal delivery, by transmitting a copy by facsimile machine, by use of the United States mail, by use of overnight delivery service, by electronic mail ("e-mail") or any standard form of telegraphic communications. The written notice shall become effective when the notice is hand-delivered to the party or its representative at the Project or at the office address of the party appearing on the face of the Agreement, upon transmission by facsimile machine as evidenced by a facsimile confirmation (if transmitted before 5:00 p.m. at the place of delivery on a business day, otherwise on the next business day), two days after mailing by U.S. Mail, or upon the receipt of the notice evidenced by a delivery receipt. If notice is accomplished by e-mail, the notice shall become effective when the e-mail enters an information processing system that the recipient has designated or uses for the purpose of receiving e-mail, and from which the recipient is able to retrieve the e-mail.

Upon mutual agreement of the parties, e-mail may be used as a method of Project correspondence. The parties understand and agree that e-mail correspondence is a "writing" under California evidence law, and as such, shall be interpreted with the same force of law as a conventional mailed letter or other forms of conventional written communication.

The parties may agree to conduct certain Project-related transactions by e-mail, including but not limited to, approvals, rejections, amendments to the Agreement, Change Orders, Construction Change Directives, or orders for minor changes in the Work issued by the Owner or Contractor. In the event the parties so agree, they shall execute a separate and optional agreement, the form of which will be provided by Contractor, the primary purpose of which is to authorize transactions to be conducted by electronic means. The parties shall further subscribe to a mutually agreeable authentication service for the duration of the Project, or such shorter time as the Parties may mutually agree, for the purpose of authenticating digital signatures and verifying that documents related to electronic transactions are not altered once signed. The Parties' agreement to conduct transactions by electronic means shall in no way limit the Parties from conducting such transactions at any time by conventional written means, if they so desire.

Subcontractor shall, at all times during its Work, have a representative authorized to receive written notices present on the Project site during all normal working hours. In the absence of such a representative, personal delivery is complete when the notice is delivered to any of Subcontractor's supervisors or workers.

**ARTICLE XXXVI. ENTIRE AGREEMENT.** This Agreement, including all Attachments constitutes the entire agreement between the parties hereto. No oral representations or other agreements made by the Contractor except as

Case: 19-30088   Doc# 1743   Filed: 04/29/19   Entered: 04/29/19 11:27:32   Page 39

stated in this Agreement will have any bearing in the interpretation of this Agreement. This Agreement may not be changed in any way except as herein provided, and no term or provision hereof may be waived by the Contractor except in writing signed by its duly authorized officer or agent. The article descriptions of any term or provisions of this Agreement are for convenience only and shall not be deemed to limit, restrict or alter the content, meaning or effect thereof.

*ARTICLE XXXVII.  OTHER PROVISIONS.*  The provisions set out in Attachment "D", Procedure Manual attached hereto including any special provisions are incorporated herein by reference and made a part hereof.

**The said parties, for themselves, their heirs, executors, administrators, successors and assigns, do hereby agree to the full performance of all of the terms and provisions herein contained.**

**FOR ALL CONTRACTS INVOLVING WORK IN THE STATE OF CALIFORNIA.  NOTE: CONTRACTORS ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE CONTRACTORS STATE LICENSE BOARD WHICH HAS JURISDICTION TO INVESTIGATE COMPLAINTS AGAINST CONTRACTORS IF A COMPLAINT REGARDING A PATENT ACT OR OMISSION IS FILED WITHIN FOUR YEARS OF THE DATE OF THE ALLEGED VIOLATION.  A COMPLAINT REGARDING A LATENT ACT OR OMISSION PERTAINING TO STRUCTURAL DEFECTS MUST BE FILED WITHIN 10 YEARS OF THE DATE OF THE ALLEGED VIOLATION. ANY QUESTIONS CONCERNING A CONTRACTOR MAY BE REFERRED TO THE REGISTRAR, CONTRACTORS STATE LICENSE BOARD, P.O. BOX 26000, SACRAMENTO, CALIFORNIA 95826.**

IN WITNESS WHEREOF the parties to these presents have hereunto set their hands as of the day and year first above written.

| | |
|---|---|
| Signature | Johnnie R Smith |
| **Frank Lindsay, Vice President** | Signature |
| Type Name and Official Title | **Johnnie Smith VP** |
| | Type Name and Official Title |
| **ROEBBELEN CONTRACTING, INC.** | **HANGTOWN ELECTRIC, INC. DBA MR. ELECTRIC OF RANCHO CORDOVA** |
| Company Name – Contractor | Company Name – Subcontractor |
| | **11/14/2018** |
| 734124 | Date |
| License Number | **849839 C10 Exp 11/01/2020** |
| | License Number – THIS INFORMATION IS MANDATORY |
| 11/15/18 | **54-2157710** |
| Date – Executed in El Dorado Hills, California | Federal ID Number – THIS INFORMATION IS MANDATORY |

Hangtown Electric, Inc.
dba Mr. Electric of Rancho Cordova
11423 Sunrise Gold Circle, Suite 10
Rancho Cordova, CA 95682
P. 916.859.0500
F. 916.859.0555
**Email: joshuaf@hangtownelectric.com**
License: 849839

RE:     **PG&E Area 5 SC Refresh Program**
        **Sonora Service Center**
        **14550 Tuolumne Road**
        **Sonora, CA 95370**
        **Our Job No.:** 21-17-431-006
        **Account Code Number: LF 16-002 SC**
        **Project Manager: Eric Staehlin**

Do a complete job of all Electrical work per the Revision 3 proposal dated 11/5/2018 and per plans developed by ATI dated 9/12/2018, all for the lump sum of **$54,610.00** including all taxes.

This contract includes, but is in no way limited to the following:

A. <u>General</u>
1. <u>**Invoices submitted for payment must identify the Extra # and site name and include a detailed summary of costs for each Extra.**</u>
2. Subcontractor, and all sub tier contractors to this contract, to be ISN compliant with an "A" or "B" grade for PG&E Work. Visit ISNetworld.com for specifics.
3. Prepare and submit, to the Roebbelen Project Superintendent on a weekly basis, project daily reports and a 3 week short interval schedule. The 3-week schedule shall be due every Wednesday.
4. Attendance at weekly subcontractor coordination meeting by a representative having decision making authority, while performing this work.
5. All Shop drawings, submittals, product data, samples, mock-ups and certifications as required for your work. All submittals are to be submitted electronically within 10 days of notice of award.
6. Provide detailed labor, material and equipment rental breakdowns at time of billings for price verification.
7. Provide a project specific, emergency contact list to be used for the duration of this project.
8. Maintenance of the schedule and weekly updates are a contract requirement; payments may be withheld until your schedule and updates are brought current.
9. Subcontractor to schedule inspections for their division of work and notify Roebbelen Superintendent of inspection date and time.
10. All requests for change orders must be accompanied by appropriate back up documentation. Contractor shall not proceed with any change order work without written directive from Roebbelen Contracting, Inc. Proceeding with change order work without a written directive will be at the Contractor's own risk.
11. **The following items are due to Roebbelen within one (2) weeks of completing your work. Retention payment will be withheld until receipt of these documents.**
    a. O & M manuals for equipment,
    b. Provide warranty/guarantee upon the date of acceptance by Owner.
    c. Provide record drawings on blue lines.

| INITIALS: FL | INITIALS: Johnnie R Smith |
|---|---|

Hangtown Electric Inc
dba Mr Electric Of Rancho Cordova
RE:     **PG&E Sonora Service Center Refresh**
         **14550 Tuolumne Rd., Sonora, CA**
         **Our Job No.: 21-17-431-006**
Page 2

## B. Electrical

1. Provide and install electrical wiring, material and equipment per this proposal, the electrical systems' plans and specifications as prepared by ATI dated 9/12/2018.
2. Includes providing and installing (5) buck booster transformers for the swing space, (4 each for AC/heaters and 1 each for 30 AMP water heater).
3. Includes providing and installing temporary lighting in lieu of using existing (29) 2x4s.
4. Includes providing temporary power and data to 4 temporary construction trailers.
5. Work assigned under this Contract shall be performed by union tradesmen or equally qualified tradesman making a prevailing wage.
6. All daily work activities must be coordinated with the onsite Roebbelen superintendent and PG&E Building Engineering.
7. Temporary facilities and utilities as required.
8. All dust control, traffic control, noise mitigation, street cleaning, general cleaning, and drainage maintenance required for your work.
9. All demolition as required.
10. All coring and patching as required for the work.
11. Hard hats, safety glasses, proper work shoes and attire will be required for the duration of this project.
12. All safety associated with the proper installation of all Electrical work. This will include any guardrails, handrails, tie-off systems and scaffolding utilized for this work, and all necessary equipment to perform your work in a safe and professional manner.
13. All trenching work to install underground materials.
14. Structural support/removal and replacement of finishes as required.
15. All fire safing, fire caulking and fire sealants of all electrical penetrations through fire rated barriers.
16. All concrete work to support your activity.
17. Work to be performed by State Certified Electricians only.
18. Fire Alarm subcontractor to provide full time fire watch ANY time the building Fire Alarm System is out of service.
19. All start-up, testing and support as required by PG&E.

## C. This contract excludes the following:

1. Permits, bonds and fees.
2. Overtime labor.
3. Light fixtures and lighting controls labor and materials.
4. Removing, restoring and re-installing (29) 2x4 light fixtures.

It is understood the owner has awarded the entire base bid. This subcontractor will be responsible for all scope and project requirements as set forth in the General Requirements, Division 1, the General Conditions, and the Supplementary Conditions. It is agreed that all material submittals and shop drawings are to be prepared and forwarded to Roebbelen Contracting, Inc. immediately.

| ROEBBELEN CONTRACTING, INC. | HANGTOWN ELECTRIC, INC. DBA MR. ELECTRIC OF RANCHO CORDOVA |
|---|---|
| ACCEPTED: _Frank Lindsay, Vice President_ | ACCEPTED: Johnnie R Smith |
| DATED: 11/15/18 | DATED: |

We desire to operate a safe project for all employees working on the project.

Subcontractors working on this project are obligated by contract to comply with SB 198, all OSHA Safety Requirements, Project Safety Requirements and Owner/Client Safety Procedures. Pursuant to Cal-OSHA Regulations, General Industry Safety Order No. 5194, Material Safety Data Sheet (MSDS) sheets are required for all materials that appear on the Director's list of Hazardous Substances. Please forward a (MSDS) sheet for each hazardous substance that will be used on the site at this time.

Per SB 198 you will designate a competent supervisor to carry out your safety program. Please forward that name at this time.

All fatal and serious injuries and all major potential liability claims will be reported immediately to our project superintendent. The Subcontractor shall cooperate in the conduct of all accident investigations.

Our project superintendent and/or our foreman will tour the construction site at least once daily. We will make every effort to monitor the safety performance of our employees as well as those of subcontractors working under his control and direction. When violations of either OSHA Safety Requirements, Project Safety Procedures or Owner/Client Safety regulations are observed, the responsible subcontractor's representative will be informed orally, if possible, and a written notice of non-compliance will be prepared as a follow-up.

Violations will be classified as:
1.    Imminent Hazard Violations: ". . . any conditions or practices in any place of employment which are such that a danger exists which would reasonably be expected to cause death or serious physical harm immediately.
2.    Serious Violation: ". . . if there is a substantial probability that death or serious physical harm could result from a condition which exists . . . "
3.    Non-Serious Violations:  ". . . where an incident or occupational illness resulting from violation of a standard would probably not cause death or serious physical harm but would have a direct or immediate relationship to the safety or health of employees . . ."

They will be corrected as follows:
1.    Imminent Hazard Violations:   The work shall be halted immediately by the person observing the violation. The contractor's supervisor, the project superintendent, the safety manager and the project manager shall each be notified immediately of the condition and corrective action required prior to resumption of the work.
2.    Serious Violation:   The project superintendent and/or safety manager may cause immediate cessation of the practice, or removal of all personnel from the area if, in their opinion, such action is required to avoid death or serious physical harm.
3.    Non-Serious Violations:  The contractor will be notified in a timely manner of the condition or practice so that it may be eliminated.

Failure to correct the unsafe condition or practice will be handled by our project manager directly with your head office. Continued failure to correct the safety violation will warrant our company making the correction unilaterally to protect persons on property and charging you.

Our project superintendent will conduct, once per month, a safety review of the project with foreman of all subcontractors working on site. Attendance is mandatory.

---

Hangtown Electric, Inc.dba Mr Electric of Rancho Cordova

SUBCONTRACTOR NAME

11/14/2018

DATE

Johnnie R Smith

SIGNATURE

Johnnie smith VP

PRINT NAME/TITLE

**ATTACHMENT C**

**AGREEMENT AUTHORIZING ELECTRONIC TRANSACTIONS**

This agreement ("Agreement") is made and entered into at El Dorado Hills, El Dorado County, California this _14th_ day of _November_ 20 _19_, by and between **ROEBBELEN CONTRACTING, INC.**, hereinafter called Contractor, with its principal office at **1241 Hawks Flight Court, El Dorado Hills, California 95762** and _Hangtown Electric, Incdba Mr Electric_ hereinafter called Subcontractor. Contractor and Subcontractor are sometimes hereinafter collectively referred to as the "Parties."

### Recitals

A.  In 1999, the California Legislature enacted the Uniform Electronic Transactions Act (the "UETA"), which governs the use and validity of electronic signatures and records.

B.  The UETA specifically provides that a signature may not be denied legal effect solely because it is in electronic form. Moreover, under the UETA, a contract may not be denied legal effect solely because an electronic record was used in its formation.

C.  By its own terms, however, the UETA only governs transactions in which each party has agreed to conduct the transaction by electronic means. As such, this Agreement is designed to expressly authorize the Parties to conduct transactions electronically.

### Agreement

1.  The Parties expressly agree and acknowledge that they may conduct transactions electronically. The Parties expressly agree that any electronic signature generated in the course of the Parties' dealings, either by computer, facsimile or similar means, shall have the same force and effect as an original signature. Moreover, the Parties expressly agree that, unless otherwise prohibited by law, any electronic record generated in the course of the Parties' dealings shall have the same force and effect as a paper record for all purposes, including the creation of legally binding contracts and agreements.

2.  Each of the Parties expressly agrees not to inhibit, in any manner, the ability of the other to store, print or otherwise retain any electronic signature or record generated in the course of the Parties' dealings.

3.  The Parties agree that they shall not challenge the validity, enforceability and/or admissibility of any electronic signature or record generated in the course of the Parties' dealings on the ground that it was electronically created, authorized, transmitted or received.

4.  The Parties acknowledge and agree that any and all electronic transactions between them shall be governed by the laws of the State of California. Moreover, the Parties agree that any dispute arising out of any electronic transaction shall be litigated, arbitrated and/or mediated, as the case may be, in the State of California.

5.  This Agreement shall be effective as of the date first written above and shall remain in effect until written request to cancel agreement.

6.  This Agreement may be executed in one or more counterparts, each of which will be deemed to constitute an original, but all of which together shall constitute one and the same legally enforceable Agreement.

By their signature below, each of the following individuals represent that they have authority to execute this Agreement and to bind the party on whose behalf their execution is made.

| Roebbelen Contracting, Inc. | Subcontractor: |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: _Frank Lindsay_ | Name: _Johnnie Smith_ |
| Its: _Vice President_ | Its: _VP_ |

RCPU

Rev 03/17/17

**EXHIBIT 6**



## Roebbelen

QUALITY CONSTRUCTION SINCE 1959
INSTITUTIONAL • COMMERCIAL • INDUSTRIAL

| Subcontract Change Order |
|---|

PG&E Area 5 - Refresh Program.2700031527

Multiple Locations

Tel:
Fax:

**Date:** Thursday, December 13, 2018

**To Subcontractor: Hangtown Electric, Inc., dba Mr. Electric of Rancho Cordova**

11419 #1 Sunrise Gold Circle
Rancho Cordova, California  95742

**Contract No: 16-001-006**

**Project #  21-17-431**

**Change Order Number:  001**

**Contract Date: 11/12/2018**

| CE# | CEA# | Cost Code | Owner CO | Description | Amount |
|---|---|---|---|---|---|
| 079 | 079 | 16-001 | | Extra 006 | $2,231.54 |
| | | | | Sonora Service Center Refresh | |
| | | | | Net added cost of labor, materials and equipment to run conduit nd pathway for fire | |
| | | | | alarm system per RFQ CO003 dated  12/12/18. | |
| | | | | | |
| | | | | Exlcudes wire. | |

| TOTAL AMOUNT OF THIS CHANGE ORDER: | $2,231.54 |
|---|---|

**Subcontractor or vendor agrees to make the herein-described changes in accordance with the terms hereof.  The change in contract price and/or contract time noted above is a full and final settlement of all additional costs incurred or to be incurred as a result of the change described above.**

| | |
|---|---|
| The original Contract Value was | $54,610.00 |
| Sum of changes by prior Subcontract Change Orders | $0 |
| The Contract Value prior to this Subcontract Change Order was | $54,610.00 |
| The Contract Value will be changed by this Subcontract Change Order in the amount of | $2,231.54 |
| The new Contract Value including this Subcontract Change Order will be | $56,841.54 |
| The Contract duration will be changed by | 0 Days |
| The revised Project Completion date as of this Subcontract Change Order is | |

| APPROVED:<br>Roebbelen Contracting, Inc.<br><br>By _____<br>Frank Lindsay/Vice President<br><br>DATE _____ 12/17/18 | APPROVED:<br>Hangtown Electric, Inc., dba Mr. Electric of Rancho Cordova<br>By  Johnnie Smith<br><br>SIGNATURE  Johnnie R Smith<br><br>DATE  12/13/2019 |
|---|---|

**Please sign and email Change Order(s) to our office.  Upon execution, your copy will be emailed for your records.**

Roebbelen Management, Inc.
Roebbelen Contracting, Inc. CA #734124 NV #0056512 WA #ROEBBCI967KQ
Roebbelen Construction Management Services, Inc.  CA #808764
Disabled Veteran Business Enterprise #1012610

1241 Hawks Flight Court
El Dorado Hills, CA 95762
p 916.939.4000
f 916.939.4028
www.roebbelen.com

Case: 19-30088    Doc# 1743    Filed: 04/29/19    Entered: 04/29/19 11:27:32    Page 46 of 53



## QUALITY CONSTRUCTION SINCE 1959
### INSTITUTIONAL · COMMERCIAL · INDUSTRIAL

## Subcontract Change Order

PG&E Area 5 - Refresh Program.2700031527

Multiple Locations

Tel:
Fax:

**Date:  Tuesday, December 18, 2018**

Project #  21-17-431

**To Subcontractor: Hangtown Electric, Inc., dba Mr. Electric of Rancho Cordova**

Contract No: 16-001-006      Change Order Number:  002

11419 #1 Sunrise Gold Circle
Rancho Cordova, California   95742

Contract Date: 11/12/2018

| CE# | CEA# | Cost Code | Owner CO | Description | Amount |
|-----|------|-----------|----------|-------------|--------|
| 080 | 080 | 16-001 | | Extra 006<br>Sonora Service Center | $1,973.67 |
| | | | | Net added cost of labor, materials and equipment to install (1) additonal floor box and the data and cable to the new floor box. | |
| | | | | All per RFQ CO002 dated  12/14/2018. | |

| | |
|---|---|
| **TOTAL AMOUNT OF THIS CHANGE ORDER:** | **$1,973.67** |

Subcontractor or vendor agrees to make the herein-described changes in accordance with the terms hereof.  The change in contract price and/or contract time noted above is a full and final settlement of all additional costs incurred or to be incurred as a result of the change described above.

| | |
|---|---|
| The original Contract Value was | $54,610.00 |
| Sum of changes by prior Subcontract Change Orders | $2,231.54 |
| The Contract Value prior to this Subcontract Change Order was | $56,841.54 |
| The Contract Value will be changed by this Subcontract Change Order in the amount of | $1,973.67 |
| The new Contract Value including this Subcontract Change Order will be | $58,815.21 |
| The Contract duration will be changed by | 0 Days |
| The revised Project Completion date as of this Subcontract Change Order is | |

| APPROVED: | APPROVED: |
|---|---|
| Roebbelen Contracting, Inc. | Hangtown Electric, Inc., dba Mr. Electric of Rancho Cordova |
| By _____ | By   **Johnnie Smith** |
| Frank Lindsay/Vice President | SIGNATURE   **Johnnie R Smith** |
| DATE        12/20/18 | DATE   **12/18/2018** |

Please sign and email Change Order(s) to our office.  Upon execution, your copy will be emailed for your records.

Roebbelen Management, Inc.
Roebbelen Contracting, Inc.  CA #734124 NV #0056512 WA #ROEBBCI967KQ
Roebbelen Construction Management Services, Inc.  CA #808764
Disabled Veteran Business Enterprise #1012610

1241 Hawks Flight Court
El Dorado Hills, CA 95762
p 916.939.4000
f 916.939.4028
www.roebbelen.com

**EXHIBIT 7**

File #: 2820 [CA][PRIVATE][COPY:EST]
Notice Requested by and Return to:
Hangtown Electric Inc.
and dba Mr. Electric of Rancho Cordova
11423 Sunrise Gold Circle #10
RANCHO CORDOVA, CA 95742

| Customer: Roebbelen Contracting, Inc.
| P.O. #:
| Project: PG&E Area 5 SC Refresh Program
| Rec ID: 82F74A57-C947-48A7-842C-900756118099
| Job #: 21-17-431-006 / 180027
| Cert No.: **7017 0530 0000 7509** 8471 8488

# CALIFORNIA PRELIMINARY NOTICE – PRIVATE WORKS

*(THIS IS NOT A LIEN. THIS NOTICE IS GIVEN PURSUANT TO CALIFORNIA CIVIL CODE §§ 8034(b), 8102, 8106-8118, 8200 et seq., 8612)*

>> TO THE OWNER OR REPUTED OWNER
**Pacific Gas & Electric Company**
**245 Market Street**
**SAN FRANCISCO, CA 94105**

>> TO DIRECT OR REPUTED CONTRACTOR
**Roebbelen Contracting, Inc.**
**1241 Hawks Flight Court**
**EL DORADO HILLS, CA 95762**

>> TO LENDER, SURETY OR BONDING CO. OR
>> REPUTED LENDER, SURETY, BONDING CO.
N/A

1. The following is a general description of
the labor, service, equipment or materials
furnished or to be furnished by the undersigned:
    **Electrical - Labor & Materials**
2. The estimated amount of the work provided or
to be provided is  $54,610.00
3. The name of the person or entity who furnished
that labor, service, equipment or
materials is:
    **Hangtown Electric Inc.**
    **and dba Mr. Electric of Rancho Cordova**
    **11423 Sunrise Gold Circle #10**
    **RANCHO CORDOVA, CA 95742**

    **Relationship to Parties: Subcontractor**
4. The name of the person or entity who contracted for
purchase of that labor, service, equipment
or material is:
    **Roebbelen Contracting, Inc.**
    **1241 Hawks Flight Court**
    **EL DORADO HILLS, CA 95762**

5. The description of the jobsite is:
    **PG&E Area 5 SC Refresh Program**
    **Job #s 21-17-431-006 / 180027**
    **14550 Tuolumne Road**
    **SONORA, CA 95370**

    County of TUOLUMNE

## NOTICE TO PROPERTY OWNER

*EVEN THOUGH YOU HAVE PAID YOUR CONTRACTOR IN FULL, IF THE PERSON OR FIRM THAT HAS GIVEN YOU THIS NOTICE IS NOT PAID IN FULL FOR LABOR, SERVICE, EQUIPMENT, OR MATERIAL PROVIDED OR TO BE PROVIDED, TO YOUR CONSTRUCTION PROJECT, A LIEN MAY BE PLACED ON YOUR PROPERTY. FORECLOSURE OF THE LIEN MAY LEAD TO LOSS OF ALL OR PART OF YOUR PROPERTY. YOU MAY WISH TO PROTECT YOURSELF AGAINST THIS BY (1) REQUIRING YOUR CONTRACTOR TO PROVIDE A SIGNED RELEASE BY THE PERSON OR FIRM THAT HAS GIVEN YOU THIS NOTICE BEFORE MAKING PAYMENT TO YOUR CONTRACTOR, OR (2) ANY OTHER METHOD APPROPRIATE UNDER THE CIRCUMSTANCES.

*THIS NOTICE IS REQUIRED BY LAW TO BE SERVED BY THE UNDERSIGNED AS A STATEMENT OF YOUR LEGAL RIGHTS. THIS NOTICE IS NOT INTENDED TO REFLECT UPON THE FINANCIAL CONDITION OF THE CONTRACTOR OR PERSON OR ENTITY EMPLOYED BY YOU ON THE CONSTRUCTION PROJECT.

*IF YOU RECORD A NOTICE OF CESSATION OR COMPLETION OF YOUR CONSTRUCTION PROJECT, YOU MUST WITHIN 10 DAYS AFTER RECORDING, SEND A COPY OF THE NOTICE OF COMPLETION TO YOUR CONTRACTOR AND THE PERSON OR FIRM THAT HAS GIVEN YOU THIS NOTICE. THE NOTICE MUST BE SENT BY REGISTERED OR CERTIFIED MAIL. FAILURE TO SEND THE NOTICE WILL EXTEND THE DEADLINE TO RECORD A CLAIM OF LIEN. YOU ARE NOT REQUIRED TO SEND THE NOTICE IF YOU ARE A RESIDENTIAL HOMEOWNER OF A DWELLING CONTAINING FOUR OR FEWER UNITS.

I declare that I am authorized to file this claim on behalf of the Claimant. I have read the foregoing document and know the contents thereof; the same is true of my own knowledge. I declare under penalty of perjury that the foregoing is true and correct. Executed at Cassel, California on 11/16/2018 for HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA.

Prepared by:
Jordi Grant, Agent  Phone: (916) 859-0500 Fax: (916) 859-0555

### PROOF OF SERVICE BY MAIL AFFIDAVIT

I declare that I served the Preliminary Notice, and any related documents, by certified or registered mail, postage prepaid, or other certified delivery, addressed to the above named parties, at the addresses listed above, on 11/16/2018. I declare under penalty of perjury that the foregoing is true and correct. Executed at Cassel, California on 11/16/2018.

Prepared by:
Jordi Grant, Agent

**EXHIBIT 8**

Doc # 2019002502
Page 1 of 3
Date: 3/19/2019 01:24P
Recording Requested By:
PUBLIC - MAIL
Filed & Recorded in Official Records
of COUNTY OF TUOLUMNE
KAENAN WHITMAN
COUNTY RECORDER
Fee: $97.00

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

HANGTOWN ELECTRIC INC. AND
DBA MR. ELECTRIC OF RANCHO CORDOVA
11423 SUNRISE GOLD CIRCLE #10
RANCHO CORDOVA CA 95742

Phone:   916-859-0500
Fax:       916-859-0555

SPACE ABOVE THIS LINE FOR RECORDERS USE

# CLAIM OF MECHANIC'S LIEN
### (CA Civil Code 8400 et seq.)

THE UNDERSIGNED CLAIMANT, HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA, SUBCONTRACTOR, CLAIMS A LIEN FOR LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS UNDER CALIFORNIA CIVIL CODE SECTION 8416 ET SEQ., UPON THE PREMISES HEREINAFTER DESCRIBED, AND UPON EVERY ESTATE OR INTEREST IN SUCH STRUCTURES, IMPROVEMENTS AND PREMISES HELD BY ANY PARTY HOLDING ANY ESTATE THEREIN.

THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS, WERE FURNISHED FOR THE CONSTRUCTION OF THOSE CERTAIN BUILDINGS, IMPROVEMENTS, OR STRUCTURES, NOW UPON THAT CERTAIN PARCEL OF LAND SITUATED IN THE COUNTY OF TUOLUMNE, STATE OF CALIFORNIA, SAID LAND DESCRIBED AS FOLLOWS:

> PG&E AREA 5 SERVICE CENTER REFRESH PROGRAM
> 14550 TUOLUMNE ROAD, SONORA CA 95370

THE MECHANICS LIEN IS CLAIMED FOR THE FOLLOWING GENERALLY DESCRIBED WORK, LABOR, SERVICES, EQUIPMENT OR MATERIALS: ELECTRICAL – LABOR & MATERIALS.

THE SUM OF $46,527.96, IS DUE CLAIMANT, AFTER DEDUCTING ALL JUST CREDITS AND OFFSETS, FOR THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS FURNISHED BY CLAIMANT.

CLAIMANT FURNISHED THE LABOR, SERVICES, EQUIPMENT, AND/OR MATERIALS, AT THE REQUEST OF, OR UNDER CONTRACT WITH:

> ROEBBELEN CONTRACTING INC., 1241 HAWKS FLIGHT COURT, EL DORADO HILLS CA 95762

THE OWNER(S) OR REPUTED OWNER(S) OF SAID PREMISES IS/ARE:

> PACIFIC GAS & ELECTRIC COMPANY, 245 MARKET STREET, SAN FRANCISCO CA 94105

DATE: MARCH 18, 2019

NAME OF CLAIMANT: HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA

BY: _____ Jordi Grant, Agent

### VERIFICATION

I, Jordi Grant, state: I am the Authorized Agent of the claimant named in the foregoing Mechanics Lien. I have read said Mechanics Lien and know the contents thereof; the same is true of my own knowledge. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on MARCH 18, 2019 at Cassel California for HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA

BY: _____ Jordi Grant, Agent

# NOTICE OF MECHANICS LIEN

## ATTENTION!

Upon the recording of the enclosed MECHANIC'S LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the Mechanic's Lien is recorded.

The party identified in the Mechanic's Lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a Mechanic's Lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the Mechanic's Lien is released.

**BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEBSITE AT www.cslb.ca.gov.**

# PROOF OF SERVICE AFFIDAVIT

## California Civil Code Section 8416 (a) (7), (c) (1)

I, Jordi Grant, Authorized Agent, declare that I served a copy of the enclosed MECHANIC'S LIEN and NOTICE OF MECHANIC'S LIEN by Certified Mail, evidenced by a certificate of mailing, postage prepaid, addressed to the following owner(s) or reputed owner(s) of the property:

PACIFIC GAS & ELECTRIC COMPANY,

at the following address:

245 MARKET STREET, SAN FRANCISCO CA 94105

on this date: MARCH 18, 2019

Signed at Cassel, California, on this date: MARCH 18, 2019

By Jordi Grant, Agent for
HANGTOWN ELECTRIC INC. AND DBA MR. ELECTRIC OF RANCHO CORDOVA

cc: ROEBBELEN CONTRACTING INC., 1241 HAWKS FLIGHT COURT, EL DORADO HILLS CA 95762
ROEBBELEN JOB # 21-17-431-006 / 180027