# EXHIBIT B1



# CHANGED: ORDER NO. 2700162225

Issued on Tuesday, September 18, 2018 PDT
Created on Tuesday, September 18, 2018 PDT by Diane Johnson on behalf of Ada Luyin Zhu

**SUPPLIER:**
GEI CONSULTANTS INC
"180 GRAND AVE STE 1410"
OAKLAND, CA 94612
United States
Phone: +1 510-350-2900
Fax: +1 510-350-2901

**TOTAL AMOUNT**
$12,500.00 USD

**DELIVERY ADDRESS:**
PGE
77 Beale St.
San Francisco General Off, CA 94105
United States

**BILL TO:**
PGE
P.O. Box 7760
San Francisco, CA 94120-7760
United States
Phone: +1 1-800-756-7243

**DELIVER TO:**
HYDRO ENGINEERING

GL Account:
  General Ledger Name: "Engr/Dsgn and Engr, Proc & Constr Contract"
  ID: 0005490003
Cost Center:
Asset Class:
Internal Order:
  Description: "HC: FSP Dam Safety Advisory Board"
  ID: 000010210277

Payment Terms: Net 30 days Invoice Date

## LINE ITEM DETAILS (1 LINE ITEM)

| NO. | ACTION | DESCRIPTION | PART NUMBER | QTY | NEED-BY DATE | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 1 | Modified | 2501346854 GEI Consultants Inc Consultation... | | 12,500 USD (US Dollars) | Monday, December 31, 2018 PST | $1.00 USD | $12,500.00 USD |

Full Description: 2501346854 GEI Consultants Inc Consultation for Dam Safety Review Board

Req. Line No.: 1
Requester: Ada Luyin Zhu
PR No.: PR212251-V2
Contract ID: C10704
Tax Code: I0

**TOTAL AMOUNT**

Case: 19-30088    Doc# 1744-2    Filed: 04/29/19    Entered: 04/29/19 13:43:30    Page 2 of 19

$12,500.00 USD

## Changes

- ERP Order Time Created changed from Wed, 12 Sep, 2018 to Tue, 18 Sep, 2018
- Line Item 1, Need-by Date changed from Wed, 10 Oct, 2018 to Mon, 31 Dec, 2018
- Line Item 1, Delivery Address changed from 245 MARKET STREET to 77 Beale St. General Office
- ERP Order Title changed from SRM PO 2501346854 Migration to GEI 12k DSAB SRM PO 2501346854 Migration - Luyin Zhu
- ERP Order On Behalf Of changed from Johnny Chan to Ada Luyin Zhu
- Line Item [BaseId 7905612259323 AAAAADOBzCrNd!7 2svsdf7cr.5q] was deleted

## COMMENTS

- Johnny Chan, 09/18/2018:
  This request is only for extending the contract expiration date to 12/31/18. (Johnny Chan, Tuesday, September 18, 2018 PDT)

## TERMS AND CONDITIONS OF PURCHASE

### 1.0 DEFINITIONS

Contractor means the Party, identified on the face of the Purchase Order, performing Work for PG&E.
Deliverables means any written materials to be provided by Contractor under this Purchase Order, including but not limited to reports, manuals, data, technical drawings, and presentations.
Goods means all equipment, material, parts, and other personal property purchased by PG&E under this Purchase Order.
Party or Parties means, in the singular, Contractor or PG&E, and in the plural, both Contractor and PG&E.
Purchase Order or PO means the contract between the Parties, comprised of the Purchase Order form, these Terms and Conditions, and any other document incorporated into the Purchase Order. A reference to the face of the Purchase Order means the Purchase Order form.
Services means all supervision, labor, materials, equipment and requirements necessary to perform the Work described on the face of the Purchase Order and includes all Deliverables and Goods provided hereunder.
"Subcontract" means an agreement between Contractor and Subcontractor or between Subcontractors at any level for a portion of the Work.
"Subcontractor" means the party or parties entering into a Subcontract with Contractor or another Subcontractor to perform a portion of the Work.
Work means, collectively, any and all Goods, Services and Deliverables to be provided by Contractor under this Purchase Order, regardless of whether or not the Goods were manufactured by Contractor.

### 2.0 ORDER AND ACCEPTANCE

2.1 Applicability: These terms apply to purchases of goods and services that are not already subject to a contract, including a master agreement or blanket agreement, between the parties. However, these terms are automatically generated by PG&E s purchasing system and may be inadvertently attached to work orders, contract work authorizations, and other transactions that are already subject to a contract. If the Parties have entered into a separate contract for the goods or services, then the terms of that contract apply and the terms of this Purchase Order are not applicable.

2.2 Acceptance: This Purchase Order is PG&E s offer to purchase from Contractor the Work described in this Purchase Order. ANY OF THE FOLLOWING SHALL CONSTITUTE CONTRACTOR S ACCEPTANCE OF THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER: (i) WRITTEN ACCEPTANCE OF THIS PURCHASE ORDER; (ii) SHIPMENT OF ALL OR ANY PORTION OF THE GOODS COVERED BY THIS PURCHASE ORDER, OR (iii) COMMENCEMENT OF PERFORMANCE OF THE SERVICES. ANY ADDITIONAL OR DIFFERENT TERMS PROPOSED BY CONTRACTOR, WHETHER IN ANY PROPOSAL, QUOTATION, CONFIRMATION, ACKNOWLEDGMENT, INVOICE, NOTATION OR INTERLINEATION ON THE PURCHASE ORDER OR OTHERWISE, ARE EXPRESSLY REJECTED AND SHALL BE OF NO FORCE AND EFFECT, AND NO COURSE OF DEALING, USAGE OF TRADE, OR COURSE OF PERFORMANCE SHALL BE RELEVANT TO EXPLAIN OR SUPPLEMENT ANY OTHER TERM. If the Parties have entered into a separate contract for the Goods, then in case of conflict between this Purchase Order and the contract, the terms of the contract shall prevail.

2.3 Exhibits: THIS PURCHASE ORDER SPECIFICALLY INCLUDES THE EXHIBITS IN EFFECT ON THE DATE OF THIS PURCHASE ORDER AND WHICH CAN BE FOUND AT http://www.pge.com/suppliers. THE EXHIBITS ARE HEREBY INCORPORATED INTO THIS PURCHASE ORDER BY REFERENCE.

2.4 Performance: Time is of the essence, and PG&E may terminate this Purchase Order if, as applicable, the Goods are not shipped or the Services are not commenced by the date specified on the face of the Purchase Order. No change in the scheduled performance date is permitted without PG&E s prior written consent.

2.5 Changes: PG&E may make adjustments and changes within the general scope of this order by written notice to Contractor, including but not limited to drawings and specifications for specially manufactured Goods, place of delivery, method of shipment, packing of the Goods, and description of the Services, and Contractor shall comply with such instructions. If the changes affect the cost of or the time required for performance, an equitable adjustment in the price or delivery or both shall be made, provided that no change by Contractor shall be allowed without written approval of PG&E. Unless waived in writing by PG&E, Contractor must provide written notice of any claim for adjustment within 30 days from the date Contractor receives notice of the requested changes.

2.6 Notice Concerning Electronic Purchase Orders: PG&E s Email Purchase Order Program provides the opportunity to receive PG&E Purchase Orders quickly via email. Participation in the program requires that Contractor provide PG&E with its Internet email address for delivery of Purchase Orders. To minimize possible delays in receipt of Purchase Orders, PG&E suggests that Contractor establish a general email box accessible to Contractor s staff, rather than a single individual s email address. Contractor should retrieve PG&E email Purchase Orders at least once daily during business hours to help ensure timely receipt and processing. Participation in the Email Purchase Order Program requires use of free Adobe

Reader software which can be downloaded at http://get.adobe.com/reader/.

3.0 GENERAL

3.1 Independent Contractor. Contractor is an independent contractor, and all persons hired by Contractor in connection with this Purchase Order shall be employees or subcontractors of Contractor and shall not be construed as employees or agents of PG&E in any respect.

3.2 Non Exclusivity. THIS IS NOT AN EXCLUSIVE AGREEMENT. THIS PURCHASE ORDER DOES NOT GUARANTEE CONTRACTOR ANY VOLUME OR DURATION OF WORK.

3.3 Amendments; Non-Waiver. No modification or change to this Purchase Order, or waiver of any breach or default, shall be binding or effective unless expressly set forth in writing by Change Order signed by the authorized representative of each Party. Waiver by either Party of any breach or default shall not be deemed to be a waiver of any other breach or default of the same or any other requirement, nor shall any waiver of an incident of breach or default constitute a continuing waiver of the same.

3.4 Subcontracts. Contractor shall not enter into subcontracts ( Subcontracts ) without the prior written approval of PG&E. PG&E s approval of any Subcontract shall not relieve Contractor of its obligations to PG&E under this Purchase Order. The provisions and obligations of this Purchase Order shall apply to any Subcontract, and Contractor shall be responsible to PG&E for any damages to PG&E arising out of Subcontracts not in accordance with this Purchase Order. Nothing in this Purchase Order shall create any contractual relations between a Subcontractor and PG&E.

3.5 Limit of Liability. NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF REVENUES OR PROFITS, COMMITMENTS TO SUBVENDORS, RENTAL OR LEASE AGREEMENTS, AND PERSONAL SERVICE CONTRACTS, EVEN IF SUCH PARTY WAS AWARE OF THE POSSIBILITY OF SUCH DAMAGES; PROVIDED, HOWEVER, THAT NOTHING IN THIS CLAUSE SHALL AFFECT CONTRACTOR S OBLIGATIONS IN THE CLAUSES CONCERNING INFRINGEMENT PROTECTION AND INDEMNIFICATION. PG&E S TOTAL OBLIGATION UNDER THIS PURCHASE ORDER IS SET FORTH IN THE TOTAL AMOUNT FIELD ON THE FACE OF THE PURCHASE ORDER.

3.6 Tax Withholding: Contractor represents and warrants that it will withhold all taxes, if any, which are required to be withheld under applicable law with respect to payments to persons hired by Contractor who perform Services for PG&E. Contractor shall indemnify and hold PG&E harmless, on an after-tax basis, for any liability incurred by PG&E as a result of Contractor s failure to institute any such required withholding.

4.0 BILLING AND PAYMENT

4.1 Billing
(A) Time and Materials: Contractor shall submit invoices monthly for time and materials work according to the billing rates in the Purchase Order.
(B) Lump Sum and Unit Price Work: Contractor shall submit an invoice upon completion and final acceptance by PG&E of all lump sum and unit price Work.

4.2 Sales Tax: PG&E IS NOT TAX EXEMPT. Invoices shall include sales tax where applicable. However, no sales tax applies to prepaid freight charges.

4.3 Expenses. All reimbursable expenses shall be reasonable, ordinary, and necessary and shall be billed to PG&E at cost to Contractor. All air travel costs within or outside of the United States will be reimbursed only on a coach fare basis and all rental car costs will be reimbursed only on a subcompact rate basis. All other reimbursable mileage shall be at the current IRS rate.

4.4 Invoice Requirements: PG&E will reject any invoices that do not meet the following minimum requirements:
(A) Each invoice must specify the Purchase Order number, item number, shipping point and delivery address;
(B) A separate invoice must be submitted for each Purchase Order. Individual Purchase Orders may not be combined on one invoice;
(C) Invoices must include only items and charges specified on the Purchase Order. Invoices with additional items or charges (e.g., surcharges) will be rejected; and
(D) PG&E must receive invoices within 60 days after final acceptance of the Work. PG&E will not be liable for payment of late invoices received after the 60 day period.

4.5 Invoice Instructions: Contractor shall submit invoices in accordance with the instructions as designated on the service contract order and include the purchase order number. All timelines for payment of invoices run from the date a correct invoice is received by PG&E s Accounts Payable department. All invoices submitted to and accepted by PG&E s Accounts Payable department by 6:00 PM on a business day are considered received that same day. Electronic invoices submitted through PG&E s electronic invoicing system and accepted by PG&E s Accounts Payable department after 6:00 PM may not be considered received until the next business day. Paper invoices must be submitted to PG&E s Accounts Payable department at the following address only:
PG&E Accounts Payable
PO Box 7760
San Francisco, CA 94120-7760
Invoices submitted to any other office, location or address, including a local office or the department in charge of the work, are NOT considered received for payment purposes. The discount and net due date timelines for invoice payment DO NOT BEGIN until the receiving location has forwarded a correct invoice to PG&E s Accounts Payable department and the invoice has been received and accepted.

4.6 Payment. PG&E may withhold from the payment any agreed withholding until satisfactory completion of all the Work, or which in PG&E s reasonable opinion is necessary to provide security against all loss, damage, expense and liability covered by the indemnity provision. PG&E will notify Contractor of any invoice deficiencies or will return the invoice to Contractor with the deficiencies noted. Contractor shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Contractor, Contractor shall resubmit a corrected invoice.

4.7 Payment Terms. Unless otherwise specified herein, the payment terms for this Purchase Order are 2% 15 Dynamic Net 45. PG&E's payment terms are a dynamic sliding scale early payment discount. The 2% discount applies when PG&E pays the invoice within 15 days. The discount decreases proportionally each day thereafter until Day 45, the net due date, when zero discount applies. All timelines are calculated from the date a correct invoice is received and accepted by PG&E s Accounts Payable department in San Francisco.

4.8 Final Invoice. The final invoice shall be marked FINAL and must be received by PG&E within sixty (60) calendar days after completion of the Work. PG&E will not be liable for payment of any late invoices that are received by PG&E beyond such 60 day period.

4.9 Withholding. PG&E may withhold from the final payment due Contractor hereunder such amounts as, in PG&E opinion, are reasonably necessary to provide security against all loss, damage, expense and liability covered by the indemnity provision.

4.10 Delinquent Accounts. PG&E may retain from any payments due hereunder sufficient funds to discharge any delinquent accounts of Contractor for which liens on PG&E's property have been or can be filed, and PG&E may at any time pay therefrom, for Contractor's account, such amounts as are admittedly due thereon.

5.0 PROVISION OF GOODS.
The following provisions shall apply to provision of Goods under this Purchase Order:

5.1 PACKING, SHIPMENT AND INSPECTION
(A) Packing: Supplier shall package and pack all Products in a manner which is (i) in accordance with good commercial practice, (ii) acceptable to common carriers for shipment at the lowest rate for the particular goods, and (iii) adequate to ensure safe arrival of the Products at the named destination. Supplier shall mark all containers with necessary lifting, handling and shipping information and with purchase order numbers, date of shipment, and the names of the consignee and consignor, if applicable. An itemized packing list shall accompany each shipment, which shall include information required by the purchase order and the related part specification. The price of the Goods includes packing materials. PG&E will not pay additional charges for packing.
(B) Packing List Instructions: (i) The packing list must be a clear, legible document identifying Contractor s name, a contact name and phone number, along with the shipping point, delivery address, PG&E Purchase Order number and line item, and the PG&E Material Code. (ii) Separate packing lists shall be placed in a plastic envelope and securely attached to each package, skid or pallet, as applicable. (iii) Contractor shall not make partial shipments except with prior written authorization (including e-mail) from PG&E. Authorized partial shipments must be identified on the packing list and specify the PG &E Purchase Order number, line item and quantity. If kit components are shipped separately, the packing list must clearly identify the partial shipment. (iv) The packing lists of any 3rd party vendor, Subcontractor or carrier must also comply with these requirements.
(C) Material Safety Data Sheets: Contractor shall submit a Material Safety data Sheet (MSDS) for all materials requested on this Purchase Order that could be hazardous to humans as required by Title 8, California Code of Regulations, Section 519. Contractor shall also submit an amended MSDS whenever there is a formulation change. Contractor shall provide the MSDS to the following address:
Pacific Gas and Electric Company
Safety, Health and Claims Department
B23A Industrial Hygienist Group
P.O. Box 770000
San Francisco, CA 94177
(D) Shipment terms. Unless otherwise specified herein, the shipment terms for this Purchase Order are FOB SHIPPING POINT FREIGHT COLLECT. All FOB Shipping Point shipments are required to route through Agistix.com. If you have a user ID go to Agistix.com and route: Carriers: For weights up to 150 lbs, ship via UPS. For weights greater than 150 lbs and palletized, use CH Robinson, For Air Freight, contact Aeronet. If you do not have a user ID, or have any questions please email: pgefreighttransportation@pge.com
(E) Title and Risk of Loss: Contractor warrants that it has and shall convey to PG&E good and clear title, free from any security interest, lien, or other encumbrance, to all Goods delivered. Contractor assumes all risk of loss of or damage to all Goods ordered and all work in progress, materials and other items related to the Purchase Order until the same are accepted by PG&E.
(F) Freight Charges: (i) Standard: Unless otherwise stated, the freight vendor should invoice PG&E directly. (ii) If the Purchase Order provides that Contractor will pay the freight costs, Contractor shall submit the freight bill to PG&E along with the invoice. If Contractor's invoice does not include a freight bill, PG&E reserves the right either not to pay the freight costs or to offset the freight charges against the Contractor's invoice. Prepay and add shipments must be supported by a copy of the carrier's freight bill, except for UPS shipments, which are billed directly to PG&E. (iii) Failure To Comply With Routing Instructions: PG&E reserves the right to back-charge Contractor for freight overcharges caused by failure to comply with these routing instructions, including Goods tendered freight collect to other than PG&E-designated carriers in the shipping instructions (misrouted) or Goods shipped 'prepay and add.
(G) Inspection: PG&E may require inspection and testing of material and workmanship at Contractor's plant, PG&E's location, or both. Notwithstanding any inspection during manufacture or witnessed test at Contractor's plant, final inspection and acceptance of the Goods shall occur at PG&E's delivery location.

5.2 Warranty of Goods:
(A) Warranty: Contractor warrants that the Goods and all parts thereof, whether or not manufactured by Contractor, shall be of the kind and quality described in this Purchase Order, free of defects in workmanship, material design, and title, shall perform in the manner set forth in the Purchase Order, shall be of good and merchantable quality, and shall be fit for their intended purpose.
(B) Remedies. Contractor shall repair or replace at its expense any part of the Goods that develop defects due to faulty material or workmanship within 12 months after the Goods are placed in operation by PG&E; provided that unless otherwise specified, the warranty period for Goods used by PG&E in transmission or distribution of natural gas or electricity or generation of electricity shall be 24 months after the Goods are placed in operation by PG&E. Contractor shall at its expense repair or replace other work or equipment damaged as a result of the defects, or as a result of the repair thereof, and hold PG&E harmless from repair expenses. Warranties will be provided at no charge to PG&E. Contractor will assume full responsibility to coordinate all warranty terms with approved manufacturers, including but not limited to: (i) Coordinating the issuance of Return Material Authorization (RMA) to PG&E on a timely basis and collection of non-compliant material within a reasonable time (normally not to exceed two weeks from notification of the need to collect that material); (ii) Timely notification to PG&E of product defects as announced by the manufacturer or manufacturer s suppliers; and Coordination of any compensation owed to PG&E from the manufacturer for the installation of defective materials within the warranty period. (iii) Coordinating the issuance of Return Material Authorization (RMA) to PG&E on a timely basis and collection of non-compliant material within a reasonable time (normally not to exceed two weeks from notification of the need to collect that material); (iv) Timely notification to PG&E of product defects as announced by the manufacturer or manufacturer s suppliers; and (v) Coordination of any compensation owed to PG&E from the manufacturer for the installation of defective materials within the warranty period.

5.3 SUPPLIER QUALITY ASSURANCE (SQA) MANAGEMENT SYSTEM:
(A) Introduction. To assure safety, reliability, and affordability of procured material, Contractor shall comply with PG&E's material quality requirements. These requirements are fully defined in PG&E's policies and procedures, with a summary provided below. Non-compliance with PG&E requirements and/or problematic quality may lead to consequences including but not limited to Contractor probation with additional Contractor cost related to oversight performed by PG&E Supplier Quality and/or contracted third parties, and/or business diverted to another supplier. The following section highlights certain material quality requirements for direct material suppliers to PG&E for products and custom tools

used in power generation (excluding nuclear) and the transmission and distribution of natural gas and electricity. Contractor is responsible for complying with PG&E's Supplier Qualification Manual, SCM-2104M, as it may be revised from time to time. In case of conflict between this summary and the Manual, the Manual shall control. The Manual is available at PG&E's website, www.pge.com, at the following link, and is specifically incorporated herein by reference: http://www.pge.com/includes/docs/pdfs/b2b/purchasing/suppliers/SupplierQualificationManual.pdf.

(B) Record Retention: Records required by applicable industry product standards shall be retained for not less than the period of time specified by any applicable industry standards or five years, whichever is longer. Records required to provide evidence of conformity to requirements and of the effective operation of the quality management system shall be retained for a minimum of five years. Supplier's records shall support material traceability to include material code, description, manufacturer, ship date to PG&E and serial number. Supplier shall maintain this data in an on-line spread sheet for the duration of the contract and shall be available for verification and download by PG&E. Supplier shall notify PG&E prior to the disposal of any quality records.

(C) Right of Access: PG&E reserves the right to visit Suppliers and sub-Suppliers for audits or business meetings during the normal course of business or to perform source inspection and surveillance. PG&E will use reasonable efforts to provide at least five (5) days advance notice and work with Supplier to ensure adequate preparation for audit and business visits.Supplier shall provide advance notice to PG&E for planned surveillance or source inspection activities consistent with manufacturing schedules or as required for key hold points or witness points .

(D) Change Management Process: This process implements a formal PG&E policy requiring approval for all supplier changes. It requires a formal system for assessing, tracking & documenting changes; improves PG&E ability to be aware, prepare and support the change; and ensures pre-approval to avoid the adverse effect of random changes. The Supplier is required to implement a Configuration Management System to ensure the control of documentation and the definition of product manufactured and / or designed for PG&E by the Supplier or its sub-Suppliers.

(E) Material Traceability: Supplier may be required to maintain traceability data on oil filled or solid state or vacuum operated products. The traceability data to include material code, description, manufacturer, ship date to PG&E, type of oil (mineral, FR3, silicon), PCB Concentration at time of manufacture and serial number. This data shall be maintained in an on-line spread sheet for the duration of the contract and shall be available for verification and download by PG&E. Records shall be maintained by Supplier for the useful life of the equipment and/or transferred to PG&E at the end of the contracting period; plus any applicable record retention requirements in the contract.

(F) Control of Sub-tier Suppliers: If a Supplier chooses to outsource a process or product, the Supplier is responsible for qualification and surveillance of the sub-Supplier to PG&E requirements and notifying PG&E of this qualification. PG&E reserves the right to review the Supplier s process for selection, qualification and surveillance of its sub-Suppliers; to approve or disapprove the sub-Supplier s qualification; and audit and monitor the sub-Supplier s processes and facilities when deemed necessary. The Supplier shall perform routine quality audits and inspection of its key sub-Suppliers to ensure oversight, knowledge and control of critical or special processes as well as changes enacted by the sub-Supplier. In addition, the Supplier shall have a documented system in place to inspect custom incoming components from sub-Suppliers for adherence to drawings or specifications. The Supplier shall conduct requalification to validate any major changes to processes or product provided by the sub-Suppliers, including First Article inspections. Key sub-Suppliers, sub-Supplier processes, or sub-Supplier manufacturing locations or critical components that affect form, fit, or function that are approved as part of the PG&E qualification are considered frozen and cannot be changed without resubmittal and approval of the required documents by PG&E.

(G) First Article: Supplier shall inform and monitor sub-tier Suppliers to ensure that any major changes to their products or facilities are communicated to PG&E Supplier Quality and Sourcing personnel with at least 30 days prior to the commencement of that change. PG&E shall be notified at minimum through the website firstarticle@pge.com and shall include the contact information for the individual at the distributor most knowledgeable about the change. PG&E personnel will respond with follow-up questions and/or directions on any further testing/measurements/certs that may be required to "re-qualify" the product or facility changes. This note does not apply to custom or "one-off" products.The changes covered by this note include:

Major revision to a product produced for PG&E

Change of location of manufacturing or major change of facility

Change of sub-tier Supplier to a Supplier for a major component of a product

Break of production (that will begin production of that product) for at least 2 years PG&E shall be notified at minimum through the email firstarticle@pge.com and shall include the contact information for the individual at the distributor most knowledgeable about the change. PG&E personnel will respond with follow-up questions and/or directions on any further testing/measurements/certs that may be required to "re-qualify" the product or facility changes. This note does not apply to custom or "one-off" products.

(H) Quality Representation: Supplier shall maintain at least one quality professional on staff to support duties and tasks as noted in the terms and conditions of this Purchase Order. Supplier shall maintain a staff of trained quality inspectors (as required) to ensure consistent and accurate quality inspection of products as required in this Purchase Order.

(I) Hold Points and Witness Points: Hold Points are mandatory verification points identified by the PG&E Supplier Quality Engineer (SQE) beyond which work may not proceed until a PG&E representative performs verification or surveillance and provides notice to proceed. Source inspection prior to product release and PG&E surveillance of a manufacturing step, special process test or inspection are examples of Hold Points. Hold points or witness points, when required, will normally be communicated through purchase order notes. Witness Points require the Supplier to notify the SQE in writing prior to completion of those steps. After notification, work may not proceed beyond a Witness Point without action by the SQE. The Supplier shall notify the SQE of Hold Points or Witness Points in the manufacturing or qualification process schedule a minimum of ten (10) days in advance (unless otherwise agreed upon with the SQE).

(J) Supplier Inspection of Parts: Supplier shall establish a formal inspection process to ensure all required items are appropriately inspected to meet PG&E s quality requirements. Note: Supplier shall be provided an inspection plan by PG&E for each item subject to inspection. Supplier shall notify PG&E Supplier Quality at least 15 business days prior to the need for the unique inspection plans. Inspection plans are subject to change by PG&E and shall be modified by Supplier to reflect those changes driven by PG&E immediately upon receipt. PG&E may on occasion specifically add or subtract material codes from inspection based on quality concerns or levels of successful inspection. Supplier shall maintain records of inspection and provide the data in a usable format with a minimum of the material code, part description, Supplier name, pass / fail status, quantity and reason for failure if applicable and related rejection report number.

(K) Supplier Re-inspection of Rejected Lots at PG&E: Supplier shall be available to re-inspect 100% of parts rejected by PG&E during the course of inspection at PG&E facilities. This effort shall normally affect large or critical lots and would be conducted when lots are rejected by PG&E based upon a sampling plan rejection. The support would normally be expected to be on site at PG&E at the required location. The re-inspection shall generally be accomplished in not more than 4 business days from notification of the need for 100% inspection. Supplier shall report the inspection results to PG&E Supplier Quality immediately upon completion.

(L) Reporting Failures: Upon being informed of any product quality or usability problem(s) (including but not limited to recurrent product failures, Supplier bulletins, and warranty return issues) that may affect products that have been and/or are being sold to PG&E, the Supplier of that product shall inform PG&E of the particular product quality or usability problem(s) within five (5) business days of the discovery by emailing the related SQA Manager or Director. The Supplier shall additionally exercise reasonable efforts, in a timely manner, to work with PG&E to ensure all suspect Goods are removed from PG&E s system and shall do so at no material or labor cost to PG&E.

(M) Customer Service and Technical Support: Supplier will provide key contacts representing quality at their plant(s) and if applicable their corporate headquarters. Technical support from the Supplier plants shall be available to PG&E if needed up to 7 days per week 24 hours a day. During problematic quality or product qualifications, the Supplier s quality organization will lead routine meetings, issue minutes, and maintain plans for qualification and corrective actions.

(N) Preventive Maintenance: The Supplier shall identify key process equipment and tooling, develop and document a Preventive Maintenance

program. PG&E may verify that such programs are documented and effectively implemented during Supplier audits
(O) Metrics: Supplier will provide to PG&E a 4-Panel dashboard report format or an equivalent alternative upon request to demonstrate the Supplier s continuous improvement trend over time to reduce material defects. This report will contain trending of total inspection rejects over time, Pareto trending observed condition leading to the rejects, details of number of parts rejected as a function of time and part type, to include Corrective Action Plans and Status. In the case of problematic quality, updates are required bi-weekly and timely achievement of Scorecard requirements will prevent reductions in product allocations.
(P) Sub-Tier Supplier Metrics: Supplier shall maintain metrics results from their inspections of each unique supplier for each lot inspected and shall take corrective action as supplier's metrics vary from acceptable levels as agreed upon with PG&E Quality. Supplier shall routinely notify PG&E quality related to suppliers that are struggling with maintaining the agreed upon metrics targets and shall inform PG&E upon request the steps taken to work with that Supplier.
(Q) Supplier Response to SCARs (Supplier Corrective Action Response): Unless otherwise agreed, Supplier shall (i) achieve "containment" of any noted defects within three business days of finding those defects or of being notified of those defects by PG&E; and (ii) provide a corrective action plan to PG&E or plan of corrective action within 10 business days of finding or of being notified of those defects by PG&E.

6.0 SERVICES WORK

6.1 Services Warranties. In addition to the warranties implied in fact or in law, Contractor warrants that it will perform the Work with the degree of skill and care required by currently prevailing best industry practices. The equipment, material and parts furnished by Contractor, whether or not manufactured by Contractor, shall be of the kind and quality described in the Purchase Order, free of defects in workmanship, material, design, and title, shall be of good and merchantable quality, and shall be fit for its intended purpose. Contractor shall repair or replace at its expense any part of the Work that develops defects due to faulty material or workmanship within a period of one year after being placed in operation by PG&E. Contractor shall at its expense repair or replace other work or equipment damaged as the result of the defects, or as a result of the repairing thereof, and hold PG&E harmless from repair expenses. Neither acceptance of the Work by PG&E nor payment therefore shall relieve Contractor from liability under the indemnity or any of the guarantees contained in or implied by this Purchase Order.

7.0 PROVISIONS APPLICABLE TO ALL WORK

7.1 Additional Work or Changes in Work
(A) Procedure For Additional Work: Before proceeding with any work involving possible claims for extra compensation not specified in the Purchase Order, Contractor shall submit in writing to PG&E a detailed estimate of the cost for such proposed work, including extensions and Change Orders, as follows: (i) Description of work to be performed, including detailed breakdown by identifiable tasks, (ii) Estimated cost of each task, and (iii) Expected date of completion of each task.
(B) PG&E Approval Needed For Additional Work: Contractor shall not proceed with any work not authorized in the Purchase Order without first receiving specific written authorization or a Change Order signed by PG&E. CONTRACTOR AGREES THAT ALL COSTS FOR ANY SUCH MODIFICATION OR CHANGE PERFORMED BY CONTRACTOR WITHOUT THE PRIOR WRITTEN APPROVAL OF PG&E S REPRESENTATIVE AUTHORIZED TO APPROVE SUCH CHANGE SHALL BE AT CONTRACTOR S SOLE RISK AND EXPENSE.
(C) PG&E Changes To Work. PG&E reserves the right to make such changes in Work, specifications, or level of effort as may be necessary or desirable, and any difference in Purchase Order price resulting from such changes shall be approved in writing by PG&E before the Work is begun.

7.2 Intellectual Property and Data Security
(A) Royalties and License Fees: Royalties, license fees or other charges for patents, copyrights, licenses, or other intellectual property for designs, processes, machinery, equipment, technology, published or unpublished data, information or materials, including but not limited to, manuals, computer programs or other deliverables furnished by Contractor for the Work, or for processes or methods employed by Contractor in performing the Work, shall be included in the Purchase Order price. Contractor shall indemnify PG&E against all loss, damage, expense, and liability arising out of the infringement or alleged infringement of any patent, trademark, copyright or other intellectual property right by the equipment, material and parts furnished by Contractor.
(B) Use and Reproduction Rights: PG&E shall have the unrestricted right of use and reproduction of all documentation, including but not limited to, instructional manuals, and other materials related to the Work furnished hereunder. Such use and reproduction by PG&E or by contractors doing work for PG&E shall not require further permission by Contractor, nor shall it constitute infringement of Contractor s ownership rights, including copyright, to such materials. Any claims of Contractor to ownership in materials furnished hereunder must be expressly set forth in the Purchase Order or shall be disclosed to PG&E in writing.
(C) Ownership of Deliverables: PG&E shall own all data, drawings, designs, reports, information, manuals, computer programs or other written, recorded, photographic or visual materials, or other deliverables produced in the performance of this Purchase Order. Contractor shall retain no ownership, interest, or title in them except as may otherwise be provided specifically in this Purchase Order.
(D) Contractor s Use of PG&E Property: All records, reports, computer programs, written procedures and similar materials, documents or data, in whatever form, provided by PG&E for Contractor s use in the performance of Work under this Purchase Order shall remain the confidential property of PG&E and shall be returned to PG&E immediately upon completion of Contractor s use for the performance of Work or earlier upon the written request of PG&E.
(E) Third Party Licenses: Contractor represents and warrants that it shall comply (and ensure that its personnel and Subcontractors comply) with all third party licenses, terms of use, policies and procedures that apply to or otherwise govern access to and/or use of any third party materials made available by PG&E to Contractor under this Purchase Order.

7.3 Confidentiality and Data Security
(A) Confidentiality: In the course of performing the Work under this Purchase Order, Contractor may have access to confidential commercial or personal information concerning, but not limited to, technological, ratemaking, legislative, personnel, and customer-related information, matters and practices of PG&E, its parent company, subsidiaries, affiliates, or members of the public. Contractor agrees not to disclose any such confidential information or otherwise make it available to any other person or entity, including any affiliate of PG&E that produces energy or energy-related products or services, without the prior written approval of PG&E.
(B) No Customer Data: Contractor warrants that it is not receiving and will not accept any PG&E Customer Data under this Purchase Order. As used in the preceding sentence, Customer Data means, collectively, any and all data and information of or concerning any identified or identifiable PG&E retail or business customer or PG&E employee, including, but not limited to, name, home address and home telephone number; device IDs; e-mail addresses; billing information; electric and gas energy usage, electric service (including, without limitation, service account number, electricity demand (in kilowatts), monthly billed revenue, credit history, rate schedule(s), or number or type of meters at a location).
(C) Security: Contractor hereby represents, warrants and covenants to PG&E that the Work, including any hardware, software, firmware, equipment and other deliverables, does not and will not contain or make available any Malicious Code, defined as any malicious or unauthorized code, scripts, routines or techniques (including without limitation any virus, spyware, ransomware or other malware) that is designed to erase data

or programming, or infect, impair, modify, record, take control of, disrupt, damage, destroy, disable, shut down or permit or cause unauthorized access to or misuse of a computer system or any component thereof. Without limiting any of PG&E s rights and remedies with respect thereto (all of which are expressly reserved), if Contractor detects or is made aware of Malicious Code in the Work, Contractor shall notify PG&E immediately, remove such Malicious Code, remediate the effects of such Malicious Code, and restore any lost or corrupt data if applicable.
(D) Cyber Protection for Programmable Devices: The following requirements apply to any deliverables under this Purchase Order containing software, firmware, microcode or other programmable features. These requirements apply on a continuing basis for the longer of five years and the expected service life of the deliverables as disclosed by Contractor in its product descriptions (the Service Life ): (i) Malicious Code. Contractor hereby represents, warrants, and covenants to PG&E that upon delivery to PG&E the deliverables will not contain or make available any Malicious Code. Without limiting any of PG&E s rights and remedies with respect thereto (all of which are expressly reserved), if Contractor detects or is made aware of Malicious Code in the deliverables during the Service Life, Contractor shall immediately notify PG&E. If the deliverables are not yet in use by PG&E, Contractor shall remove such Malicious Code, remediate its effects and certify to PG&E that the Malicious Code has been removed. If the deliverables are in use by PG&E, Contractor shall assist PG&E to remove the Malicious Code in accordance with the Section below titled Security Updates and Support. (ii) Cybersecurity Specifications. Contractor hereby represents, warrants, and covenants that the deliverables comply with the cybersecurity features and functions, if any, described in the associated specifications. (iii) Security Vulnerabilities and Tests. Contractor acknowledges that the deliverables may be subject to security testing by PG&E or its security testing consultants before the deliverables are accepted by PG&E as well as subsequently, at any time during their Service Life. If the deliverables are integrated with products supplied by third parties, the third party suppliers may also be involved in the testing process. Contractor shall fully cooperate in the conduct of such tests. If requested by PG&E, such cooperation shall include the following: (i) providing source code and other program documentation (which PG&E shall use solely for testing purposes), and (ii) providing a representative with suitable technical expertise to participate in the tests. The conduct and results of the tests, including any security vulnerabilities that are identified in the course of the tests, shall be PG&E Confidential Information. Any security vulnerabilities that are identified in such tests shall be resolved in accordance with the following Section, titled Security Updates and Support. (iv) Security Updates and Support. Contractor shall maintain a technical support line with access to PG&E so that any security-related issues can be addressed promptly. Contractor shall notify PG&E without delay if Contractor detects or is made aware of any Malicious Code or security vulnerability in the deliverables during their Service Life. If Malicious Code or security vulnerability is identified during the Service Life, Contractor shall provide an update or revision to the deliverables to remove the Malicious Code and/or cure the vulnerability (a Security Patch ) as soon as possible and at no charge to PG&E. Contractor shall assist PG&E to implement the Security Patch if requested by PG&E and shall reimburse PG&E for the cost of implementing the Security Patch.

7.4 Termination or Cancellation: PG&E may suspend, terminate or cancel the Purchase Order, in whole or in part, upon written notice to Contractor. If PG&E cancels or terminates for cause, PG&E shall be liable to Contractor only for compensation earned on the Work satisfactorily performed to the date of termination. If PG&E cancels or terminates for its own reasons (not for cause), PG&E will in addition compensate Contractor for costs, if any, reasonably incurred by Contractor in terminating its operation. However, in no event will Contractor be entitled to payment for lost or anticipated profits or overhead on uncompleted portions of the Work. Contractor shall not enter into any agreements, commitments or Subcontracts which would incur significant cancellation costs without prior written approval of PG&E, which written approval is a condition precedent to the payment of any cancellation charges. Prior to release of final payment, Contractor shall deliver to PG&E all reports, drawings or other documents prepared for PG&E prior to the effective date of such termination or cancellation.

7.5 Assignment. Contractor shall not assign its rights or delegate its duties under this Purchase Order without the prior written consent of PG&E, and any attempted assignment or delegation without such consent shall be void. At its discretion, PG&E may assign its rights or delegate its duties under this Purchase Order, provided PG&E will remain obligated for payments unless otherwise agreed in writing by Contractor.

8.0 ALL ON-SITE WORK
The following provisions apply if the Contractor is performing Work on PG&E s premises:

8.1 Importance of Safety. Contractor recognizes and agrees that safety is of paramount importance in the performance of the Work and that Contractor is responsible for performing the Work in a safe manner. Contractor shall plan and conduct the Work, and shall require all Subcontractors to perform their portion of the Work, in accordance with Contractor s safety program and with all applicable local, state and federal rules, regulations, codes, and ordinances to safeguard persons and property from injury. Contractor further agrees to provide necessary training to its employees and Subcontractors to inform them of the foregoing safety and health rules and standards. Should PG&E at any time observe Contractor, or any of its Subcontractors, performing the Work in an unsafe manner, or in a manner that may, if continued, become unsafe, then PG&E shall have the right (but not the obligation) to require Contractor to stop the Work affected by the unsafe practice until Contractor has taken corrective action so that the Work performance has been rendered safe.

8.2 Indemnification. Contractor shall indemnify PG&E, its directors, officers, agents, and employees, against all loss, damage, expense and liability resulting from injury to or death of person, including, but not limited to, employees of PG&E or Contractor, or injury to property, including, but not limited to, property of PG&E or Contractor, violation of local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; strict liability imposed by any law or regulation; breach of confidentiality; payments to any Subcontractor including but not limited to any demands for payment, invoices, or liens; or delay or failure to pay any Subcontractor or Contractor or Subcontractor personnel the compensation, monies, wages or other payment due or allegedly due; arising out of or in any way connected with the performance of this Purchase Order, however caused, regardless of any negligence of PG&E, whether active or passive, excepting only such loss damage, cost, expense, liability, payment, strict liability, or violation of law for which indemnity is not allowed under applicable law. Contractor shall, on PG&E's request, defend any suit asserting a claim covered by this indemnity. Contractor shall pay all costs that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees.

8.3 Insurance. Contractor shall maintain the following insurance coverage. Contractor is also responsible for its Subcontractors maintaining sufficient limits of the same coverage.
(A) Workers' Compensation and Employers' Liability: Workers' Compensation insurance complying with any applicable labor codes, acts, laws or statutes, state or federal, where Contractor performs work. Employers' Liability insurance shall not be less than $1,000,000 for injury or death each accident.
(B) Commercial General Liability: (i) Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage occurrence form, with no coverage deletions. The limit shall not be less than $1,000,000 each occurrence for bodily injury, property damage and personal injury. If coverage is subject to a general aggregate limit, this aggregate limit shall be twice the occurrence limit. (ii) Coverage shall:
By "Additional Insured" endorsement add as insureds PG&E, its directors, officers, agents and employees with respect to liability arising out of work performed by or for the Contractor; and
Be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it.

(C) Business Auto: Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile liability, code 1 "any auto." The limit shall not be less than $1,000,000 each accident for bodily injury and property damage.

(D) Professional Liability Insurance. Errors and Omissions Liability insurance if appropriate for the Service Provider s profession. Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Purchase Order. The limit shall not be less than $1,000,000 each claim/$2,000,000 aggregate.

(E) Cyber Security and Privacy Liability Insurance: (i) Contractor shall obtain and maintain cyber risks insurance providing coverage for at least the following perils and losses: unauthorized use of or access to a computer system containing or giving access to PG&E confidential information; defense of any regulatory action involving a breach of privacy in connection with PG&E confidential information; failure to protect PG&E confidential information from disclosure; and costs of notifying affected individuals and providing credit monitoring for up to one year, whether or not required by applicable law. (ii) The policy(s) shall have limits of liability of at least $5,000,000 per occurrence and $10,000,000 in the aggregate. If any deductible is applicable, such deductible shall not exceed $100,000, unless such increased deductible or retention is approved in advance by PG&E in writing. (iii) PG&E, its affiliates, subsidiaries and parent company, and PG&E s directors, officers, agents and employees shall be named as additional insureds under this policy. If the policy includes a blanket endorsement by contract, the following language added to the certificate of insurance will satisfy PG&E s additional insured requirement: PG&E, its affiliates, subsidiaries, and parent company, and PG&E s directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Contractor are additional insureds under a blanket endorsement.

(F) Insurance Documentation Requirements: (i) Contractor shall have insurance in place before beginning any Work. Upon request, Contractor shall provide PG&E with certificates of insurance, declaration pages and endorsements of all required insurance. Such documentation shall be signed and submitted by a person authorized by that insurer to issue certificates of insurance and endorsements on its behalf. (ii) Should any of the above described policies be cancelled before the expiration date thereof, the insurer shall deliver notification to PG&E in accordance with the policy provisions; (iii) PG&E may inspect the original policies or require complete certified copies, at any time; and (iv) Upon request, Contractor shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Contractor.

## 9.0 REQUIREMENTS AND POLICIES

9.1 PG&E S Supply Chain Responsibility Policy: It is PG&E s policy that small and diverse businesses shall have the maximum practicable opportunity to participate in providing the goods and services purchased by PG&E. Small and diverse businesses include Small Business Enterprises ( SBEs ); Women, Minority, and Disabled Veteran Business Enterprises ( WMDVBEs ); and Lesbian, Gay, Bisexual, and Transgender Business Enterprises ( LGBTBEs ).

(A) Contractor agrees to comply, and to require all Subcontractors and sub-Subcontractors to comply, with PG&E s Supply Chain Responsibility Policy, Exhibit 2, available at http://www.pge.com/suppliers and incorporated herein by this reference. Contractor shall provide a copy of Exhibit 2 to each prospective Subcontractor.

(B) Contractor shall act in accordance with its completed Prime Supplier Subcontracting Plan, Exhibit 1-A, available at http://www.pge.com/suppliers and incorporated herein, in the performance of the Work and in the award of all Subcontracts.

(C) In addition, if the Purchase Order exceeds $500,000 ($1 million for construction contracts), Contractor shall comply with Exhibit 2A, Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns, available at http://www.pge.com/suppliers and incorporated herein by this reference, and the Prime Supplier Subcontracting Plan must include provisions for implementing the requirements of Exhibit 2A.

(D) Each Bidder s Proposal shall describe how Bidder will comply with the requirements of Exhibit 2 if awarded the Work. The requirements of Exhibit 2 and the successful Bidder s response, along with a completed, signed copy of Exhibit 1-A, will be incorporated into the Purchase Order.

9.2 Equal Employment Opportunity And Affirmative Action Regulations Policy: During the performance of this Purchase Order and to the extent they may be applicable, Contractor agrees to comply with all laws, orders, and regulations included by summary or reference as follows:
(A) Executive Order 11246, 41 CFR Part 60-1.4: Equal Opportunity Clause.
(B) Executive Order 11246, 41 CFR Part 60-1.8: Nonsegregated Facilities.
(C) Vietnam Era Veterans Readjustment Assistance Act of 1974, 41 CFR Part 60-300.5.a: Equal Opportunity Clause. Contractor and its Subcontractor(s) shall abide by the requirements of 41 CFR 60-300.5(a). This regulation prohibits discrimination against qualified protected veterans, and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified protected veterans.
(D) Section 503 of the Rehabilitation Act of 1973, 41 CFR Part 60-741.5.a: Equal Opportunity Clause. Contractor and its Subcontractor(s) shall abide by the requirements of 41 CFR 60-741.5(a). This regulation prohibits discrimination against qualified individuals on the basis of disability, and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified individuals with disabilities.

9.3 Executive Order 13496 Employee Rights Under The National Labor Relations Act. To the extent applicable, the employee notice requirements set forth in 29 C.F.R. Part 471, Appendix A to Subpart A are hereby incorporated by reference into this Purchase Order.

9.4 Contractor Safety Program: Contractor represents and warrants that it will perform all applicable Work, and cause all Subcontractors to perform all applicable Work, in compliance with PG&E s Contractor Safety Program Standard Contract Requirements, as may be modified from time to time. The Contractor Safety Program Standard Contract Requirements can be located and downloaded at: www.pge.com/contractorsafety and are hereby incorporated by reference into this Contract. Contractor s failure to comply with the Contractor Safety Program Standard Contract Requirements shall be immediate grounds for termination for cause under this Contract. Notwithstanding the above, Contractor is the "controlling employer" as defined under CalOSHA and will remain responsible for all fines and liability arising from violation of the Contractor Safety Program Standard Contract Requirements and applicable law.

9.5 Injury and Illness Prevention Program: In the performance of the Work under this Purchase Order, Contractor acknowledges that it has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code. Contractor shall ensure that any Subcontractor hired by Contractor to perform any portion of the Work under this Purchase Order shall also have an effective Injury and Illness Prevention Program. The person with the authority and responsibility for implementing and administering Contractor s Injury and Illness and Prevention Program shall execute the Compliance Certificate, Exhibit 3, available at http://www.pge.com/suppliers and incorporated herein by this reference.

9.6 PG&E Drug and Alcohol Policy: PG&E is committed to maintain and promote job safety and health for all workers at its facilities. In addition, PG&E is determined to protect its employees, customers, and the general public while they are on PG&E property from any harm caused by illegal drug and alcohol use by non-PG&E personnel. To accomplish these objectives, PG&E has established a drug and alcohol policy for access to PG&E facilities by its Contractor and Subcontractor personnel. If any personnel of Contractor or its approved Subcontractors perform any Work or services at PG&E offices and/or other PG&E facilities, then Contractor shall comply with PG&E s Drug and Alcohol Abuse and Testing Policies,

Exhibit 4, available at http://www.pge.com/suppliers and incorporated herein by this reference.

9.7 Document Retention and Production Requirements: PG&E is committed to maintain documents and records so as to satisfy applicable legal, contractual and regulatory requirements as well as PG&E s on-going business needs; to enable appropriate records management, provide appropriate retrieval and achieve the proper level of security and privacy. In furtherance of this commitment, Contractor agrees to comply with the requirements of Exhibit 5, PG&E Contractor Document Retention and Production Requirements, and Exhibit 5A, Document and Data List, available at http://www.pge.com/suppliers and incorporated herein by this reference.

9.8 Code of Conduct: Contractor, its Subcontractors and their suppliers at all tiers shall comply with PG&E s Supplier Code of Conduct in the award of all contracts and subcontracts. The Supplier Code of Conduct requires that Contractor and each of its Subcontractors demonstrate a strong commitment to compliance, ethics, sustainability, and supplier diversity as a foundation to successful business. Contractor must complete its Work for PG&E in full compliance with the Supplier Code of Conduct, as it may be modified from time to time. Contractor shall access, read and comply with PG&E s Supplier Code of Conduct and shall make it available to its Subcontractors and suppliers. The Supplier Code of Conduct can be located and downloaded at the following link: http://www.pge.com/includes/docs/pdfs/b2b/purchasing/suppliers/SupplierCodeofConductPGE.pdf and is hereby incorporated by reference into this Purchase Order.

9.9 Conflict of Interest and Business Ethics
(A) Contractor shall not offer, or cause to be offered, gifts, entertainment, payments, loans, services, benefits, or any other consideration of more than a nominal value to PG&E's employees, their families, vendors, subcontractors, or third parties.
(B) Contractor shall exercise reasonable care and diligence to prevent any actions or conditions which could result in a conflict with PG&E's interest.

9.10 Availability of Information: Contractor shall keep accurate records and books of accounts, and shall preserve and make available such records and books of accounts, in accordance with the requirements of Exhibit 6, Audit Rights, available at http://www.pge.com/suppliers and incorporated herein by this reference.

9.11 California Health and Safety Code. The California Health and Safety Code requires businesses to provide warnings prior to exposing individuals to materials listed by the Governor as chemicals "known to the State of California to cause cancer, birth defects or reproductive harm." PG&E uses chemicals on the Governor's list at many of its facilities. In addition, many of these chemicals are present at non-PG&E-owned facilities and locations. Accordingly, in performing the Work or services contemplated under this Purchase Order, Contractor, its employees, agents, and Subcontractors may be exposed to chemicals on the Governor's list. Contractor is responsible for notifying its employees, agents, and Subcontractors that Work performed hereunder may result in exposures to chemicals on the Governor's list.

9.12 Export Controls. Contractor shall provide PG&E with information and assistance as may reasonably be required in connection with compliance with applicable import and export laws, including but not limited to, Manufacturer's Affidavits, Harmonized Tariff Schedules, Export Control Classification Numbers, and qualification information (e.g. origin) relevant to United States and foreign regulatory approvals for deliverables, products, and other materials furnished hereunder. Contractor shall make such information available to PG&E within five (5) business days following receipt of PG&E s written request.

9.13 Work On PG&E or PG&E Customer Property: The following provisions shall apply to the extent that the Work under the Purchase Order requires any Contractor or Subcontractor personnel (collectively, Personnel ) to have access to PG&E assets, premises, customer property, or logical access to PG&E data or systems (collectively, Access ).
(A) Criminal Background Checks: (i) Contractor warrants and represents that it will not assign any Personnel to work requiring Access unless Contractor has performed a criminal background check on each such individual (either at the time of hiring or during the course of employment). Prior to assigning work requiring Access to any Personnel with one or more criminal convictions during the last seven years, Contractor must consider the gravity of the individual s offense, the time since the conviction, the successful completion of parole/probation, the individual s age at the time of conviction, the number of convictions, and the stability of the individual, including favorable work history. Contractor shall also consider the relation of the offense to the nature of the work the individual will perform. (ii) Notwithstanding the foregoing, in no event shall Contractor grant Access to an individual with one or more convictions for a Serious Offense(s), which is defined as violent and sex offenses, crimes against children, domestic violence, fraud, theft (including but not limited to identity theft), embezzlement, all felonies during the last seven years, and/or two or more DUI s in the past three years. (iii) Contractor shall maintain documentation related to its criminal background check investigation for all Personnel requiring Access and make it available to PG&E for audit if requested pursuant to the audit provisions of this Purchase Order. (iv) Contractor also agrees to notify PG&E if any of its Personnel requiring Access are charged with or convicted of a Serious Offense during the course of a PG&E assignment.
(B) Fitness for Duty: Contractor shall ensure that its Personnel granted Access report to work fit for duty. Personnel with Access may not consume alcohol while on duty and/or be under the influence of drugs that impair their ability to work safely. PG&E expects each supplier to have policies in place that requires their employees report to work in a condition that allows them to perform the work safely. For example, employees should not be operating equipment under medication that creates drowsiness. As a federal contractor, PG&E does not recognize nor allow work to be completed under the influence of marijuana, whether or not is it used for medical reasons.
(C) Eligibility For PG&E Work: When assigning any Personnel to perform Work requiring Access, Contractor shall submit each person s full name and the last four digits of their social security number to PG&E at the following e-mail address: RecruitingOperations@pge.com. PG&E reserves the right to decline to accept any proposed Personnel, in which case Contractor shall promptly propose a replacement.

9.14 NERC Requirements: Pursuant to a directive from the North American Reliability Corporation ( NERC ), PG&E has implemented policies and procedures for the protection of facilities, systems, assets and information that are critical to the operation or support of the Bulk Electric System ( BES ). PG&E identifies these facilities, systems, assets and information in accordance with its internal utility procedures. If this Purchase Order relates to BES Cyber Systems or Bulk Electric System Cyber System Information (as designated by PG&E), then Contractor shall comply with the requirements of Exhibit 7, NERC Requirements and Exhibit 7A, PG&E NERC CIP Program Non-Employee Attestation Form, available at http://www.pge.com/suppliers and incorporated herein. Contractor represents and warrants that it has consulted with PG&E to determine whether Exhibit 7 is applicable to the Work under this Purchase Order.

10.0 GENERAL

10.1 Compliance with Laws: In performing the Work, Contractor shall comply with all applicable Federal, State and local laws, rules and regulations, and shall obtain all applicable licenses and permits for the conduct of its business and the performance of the Work.

10.2 Reporting: In accordance with Section 7912 of the California Public Utilities Code, Contractor agrees to report annually to PG&E the number

of California residents employed by Contractor, calculated on a full-time or full-time equivalent basis, who are personally providing services to PG&E.

10.3 Choice of Laws: This Purchase Order shall be construed and interpreted in accordance with the laws of the State of California, excluding any choice of law rules which may direct the application of the laws of another jurisdiction.

10.4 Severability: If any provision of this Purchase Order is determined to be illegal, unenforceable, or invalid in whole or in part, such provision or part thereof shall be stricken from this Purchase Order and shall not affect the legality, enforceability or validity of the remainder of this Purchase Order. If any provision or part thereof of this Purchase Order is stricken in accordance with the provisions of this Article, it shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in intent to the stricken provision as is legally possible.

10.5 Survival: The provisions of this Purchase Order which by their nature should survive expiration, cancellation or other termination of this Purchase Order, including but not limited to provisions regarding warranty, indemnity, document retention, business ethics, confidentiality and availability of information, shall survive such expiration, cancellation or other termination.

10.6 Entire Agreement: This Purchase Order constitutes the entire agreement and understanding between Contractor and PG&E as to the subject matter of the Purchase Order and supersedes all prior or contemporaneous agreements, commitments, representations, writings, and discussions, whether oral or written. However, as stated in Section 2.1 above, If the Parties have entered into a separate contract for the goods or services, then the terms of that contract apply and the terms of this Purchase Order are not applicable.



Pacific Gas and Electric Company
245 Market St., Room 543, Mail Code N5D, P.O. Box 770000
San Francisco, CA 94177
(415) 973-8089 . FAX (415) 973-2553

Page: 1 / 1

## CHANGE ORDER

| Date | P.O. Number |
|---|---|
| 04/25/2014 | 2500998868 |

PHONE THE PG&E CONTACT IMMEDIATELY IF YOU CANNOT DELIVER BY THE DATE WANTED.

SHOW THIS PURCHASE ORDER NUMBER AND APPLICABLE ITEM NUMBER(S) LISTED BELOW ON PACKAGES, INVOICES, PACKING LISTS, AND BILLS OF LADING.

**VENDOR #: 1005022**

BUYER - April Titus   ADTA@PGE.COM

GEI CONSULTANTS INC
                    EDI
180 GRAND AVE STE 1410
OAKLAND CA  94612

TERMS - 2% 15 days, Net 45 days  Posting Date

PLEASE DELIVER TO:
PGECORP
PG&E Corporation
245 Market Street
San Francisco CA  94105

REFER TO ASSOCIATED CONTRACT DOCUMENTATION FOR SERVICE LOCATION DETAILS

VENDOR - THIS PURCHASE IS AUTHORIZED SUBJECT TO THE TERMS AND CONDITIONS OF OUR AGREEMENT (AGREEMENT NUMBER 4400006370). YOUR INVOICE MUST SHOW OUR P.O. NUMBER 2500998868. AND APPLICABLE ITEM NUMBERS.

10/5/15 - Terry Fischer, $5,000 added to line 2, new total of PO is $35,000.

| Item | Product Code | Description | Quantity | Unit | Unit Price | Item Total |
|---|---|---|---|---|---|---|
| 1 | | 2014 DSAB Service for Steve Verigin | 20,000 | USD | 1.00 | 20,000.00 |
| | | Delivery date: 12/31/2014 | | | | |
| 2 | | DSAB Service for Steve Verigin | 15,000 | USD | 1.00 | 15,000.00 |
| | | Delivery date: 12/31/2015 | | | | |

7/2/15 Terry Fischer, $10,000.00 added to the DL PO for 2015 work, see line 2.

Total net value excl. tax USD     35,000.00
========================

For paper invoice submission, mail original invoice to the P.O. Box. Vendors on electronic invoicing do not need to send a paper invoice.

Pacific Gas and Electric Company
P.O. Box 7760
San Francisco, CA 94120-7760
1-800-756-PAID

Case: 19-30088    Doc# 1744-2    Filed: 04/29/19    Entered: 04/29/19 13:43:30    Page 12 of 19

PLEASE SEE ASSOCIATED CONTRACT DOCUMENTS FOR GENERAL AND SPECIFIC CONDITIONS



**Pacific Gas and Electric Company**
245 Market St., Room 543, Mail Code N5D, P.O. Box 770000
San Francisco, CA 94177
(415) 973-8089 . FAX (415) 973-2553

Page: 1 / 1

## CHANGE ORDER

| Date | P.O. Number |
|---|---|
| 04/25/2014 | 2500998868 |

PHONE THE PG&E CONTACT IMMEDIATELY IF YOU CANNOT DELIVER BY THE DATE WANTED.

SHOW THIS PURCHASE ORDER NUMBER AND APPLICABLE ITEM NUMBER(S) LISTED BELOW ON PACKAGES, INVOICES, PACKING LISTS, AND BILLS OF LADING.

VENDOR #: 1005022

BUYER - April Titus 415/973-7882 ADTA@PGE.COM

GEI CONSULTANTS INC
EDI
180 GRAND AVE STE 1410
OAKLAND CA 94612

TERMS - 2% 15 days, Net 45 days Posting Date

PLEASE DELIVER TO:
PGECORP
PG&E Corporation
245 Market Street
San Francisco CA 94105

REFER TO ASSOCIATED CONTRACT DOCUMENTATION FOR SERVICE LOCATION DETAILS

VENDOR - THIS PURCHASE IS AUTHORIZED SUBJECT TO THE TERMS AND CONDITIONS OF OUR AGREEMENT (AGREEMENT NUMBER 4400006370). YOUR INVOICE MUST SHOW OUR P.O. NUMBER 2500998868. AND APPLICABLE ITEM NUMBERS.

| Item | Product Code | Description | Quantity | Unit | Unit Price | Item Total |
|---|---|---|---|---|---|---|
| 1 | | 2014 DSAB Service for Steve Verigin | 20,000 | USD | 1.00 | 20,000.00 |
| | | Delivery date: 12/31/2014 | | | | |
| 2 | | DSAB Service for Steve Verigin | 10,000 | USD | 1.00 | 10,000.00 |
| | | Delivery date: 12/31/2015 | | | | |
| | | 7/2/15 Terry Fischer, $10,000.00 added to the DL PO for 2015 work, see line 2. | | | | |
| | | Total net value excl. tax USD | 30,000.00 | | | |
| | | ======================= | | | | |

For paper invoice submission, mail original invoice to the P.O. Box. Vendors on electronic invoicing do not need to send a paper invoice.

**Pacific Gas and Electric Company**
P.O. Box 7760
San Francisco, CA 94120-7760
1-800-756-PAID

PLEASE SEE ASSOCIATED CONTRACT DOCUMENTS FOR GENERAL AND SPECIFIC CONDITIONS



**Pacific Gas and Electric Company**
245 Market St., Room 543, Mail Code N5D, P.O. Box 770000
San Francisco, CA 94177
(415) 973-8089 . FAX (415) 973-2553

Page: 1 / 1

## PURCHASE ORDER

| Date | P.O. Number |
|---|---|
| 04/25/2014 | 2500998868 |

PHONE THE PG&E CONTACT IMMEDIATELY IF YOU CANNOT DELIVER BY THE DATE WANTED.

SHOW THIS PURCHASE ORDER NUMBER AND APPLICABLE ITEM NUMBER(S) LISTED BELOW ON PACKAGES, INVOICES, PACKING LISTS, AND BILLS OF LADING.

**VENDOR #: 1005022**

BUYER - April Titus 415/973-7882 ADTA@PGE.COM

GEI CONSULTANTS INC
EDI
180 GRAND AVE STE 1410
OAKLAND CA 94612

TERMS - 2% 15 days, Net 45 days Posting Date

PLEASE DELIVER TO:
PGECORP
PG&E Corporation
245 Market Street
San Francisco CA 94105

REFER TO ASSOCIATED CONTRACT DOCUMENTATION FOR SERVICE LOCATION DETAILS

VENDOR - THIS PURCHASE IS AUTHORIZED SUBJECT TO THE TERMS AND CONDITIONS OF OUR AGREEMENT (AGREEMENT NUMBER 4400006370). YOUR INVOICE MUST SHOW OUR P.O. NUMBER 2500998868. AND APPLICABLE ITEM NUMBERS.

| Item | Product Code | Description | Quantity | Unit | Unit Price | Item Total |
|---|---|---|---|---|---|---|
| 1 | | 2014 DSAB Service for Steve Verigin | 20,000 | USD | 1.00 | 20,000.00 |
| | Delivery date: 12/31/2014 | | | | | |
| | | Total net value excl. tax USD | 20,000.00 | | | |

For paper invoice submission, mail original invoice to the P.O. Box. Vendors on electronic invoicing do not need to send a paper invoice.

Pacific Gas and Electric Company
P.O. Box 7760
San Francisco, CA 94120-7760
1-800-756-PAID

PLEASE SEE ASSOCIATED CONTRACT DOCUMENTS FOR GENERAL AND SPECIFIC CONDITIONS

Case: 19-30088    Doc# 1744-2    Filed: 04/29/19    Entered: 04/29/19 13:43:30    Page 14 of 19



Pacific Gas and Electric Company
245 Market St., Room 543, Mail Code N5D, P.O. Box 770000
San Francisco, CA 94177
(415) 973-8089 . FAX (415) 973-2553

Page: 1 / 1

## PURCHASE ORDER

| Date | P.O. Number |
|---|---|
| 02/05/2016 | 2501346854 |

PHONE THE PG&E CONTACT IMMEDIATELY IF YOU CANNOT DELIVER BY THE DATE WANTED.

SHOW THIS PURCHASE ORDER NUMBER AND APPLICABLE ITEM NUMBER(S) LISTED BELOW ON PACKAGES, INVOICES, PACKING LISTS, AND BILLS OF LADING.

VENDOR #: 1005022

BUYER - Terry Fischer 415-973-2310 TNF7@PGE.COM

GEI CONSULTANTS INC
                    EDI
180 GRAND AVE STE 1410
OAKLAND CA  94612

TERMS - Net 30 days   Invoice Date

PLEASE DELIVER TO:
PGECORP
PG&E Corporation
HYDRO ENGINEERING
245 MARKET STREET
SAN FRANCISCO CA  94105

REFER TO ASSOCIATED CONTRACT DOCUMENTATION FOR SERVICE LOCATION DETAILS

VENDOR - THIS PURCHASE IS AUTHORIZED SUBJECT TO THE TERMS AND CONDITIONS OF OUR AGREEMENT (AGREEMENT NUMBER ). YOUR INVOICE MUST SHOW OUR P.O. NUMBER 2501346854. AND APPLICABLE ITEM NUMBERS.

| Item | Product Code | Description | Quantity | Unit | Unit Price | Item Total |
|---|---|---|---|---|---|---|
| 1 | | Consultation for Dam Safety Review Board | 35,000 | USD | 1.00 | 35,000.00 |
| | Delivery date: 12/31/2016 | | | | | |
| | | Total net value excl. tax USD | 35,000.00 | | | |

For paper invoice submission, mail original invoice to the P.O. Box. Vendors on electronic invoicing do not need to send a paper invoice.

Pacific Gas and Electric Company
P.O. Box 7760
San Francisco, CA 94120-7760
1-800-756-PAID

PLEASE SEE ASSOCIATED CONTRACT DOCUMENTS FOR GENERAL AND SPECIFIC CONDITIONS

From: Rettberg, Bill <wrettberg@geiconsultants.com>
Sent: Thursday, February 04, 2016 11:27 AM
To: White, Robert
Cc: Verigin, Steve
Subject: CWA Request for Steve Verigin for the PG&E Dam Safety Advisory Board-2016

Importance: High

Alert: This message originated outside of PG&E. Use caution when opening attachments, clicking links or responding to requests for information.
****************************************

Dear Rob:

PG&E invited Steve Verigin to be a member of PG&E's Dam Safety Program Board (DSAB) in 2013. Steve will continue to serve as a DSAB member for 2016.

Based on discussions with your staff, we anticipate Steve's support to perform the following scope of services:

1. Participate in DSAB meeting (twice a year)
2. Participate in conference calls and office meetings for follow-up as requested.
3. Participate in field visits as needed.
4. Review technical documents prepared by PG&E and its consultants.
5. Provide comments and recommendations regarding PG&E's Dam Safety Program.
6. Participate in discussions and meetings with regulatory agencies as needed.
7. Participate in critical project related reviews.

Although the exact scope of these activities is not yet known, based on our understanding at this time we anticipate that the above tasks will require approximately 100 hours to perform. Our estimated budget for the level of effort, including direct expenses, is $35,000. This budget will not be exceeded without written authorization from PG&E.

Please let us know if you have any further questions or comments. GEI looks forward to continue serving PG&E in the coming year.

Regards,

Bill

PURCHASE ORDER FOR SERVICES
TERMS AND CONDITIONS
EXHIBIT 1

1. **DEFINITIONS**

   **"Contractor"** means the Party, identified on the face of the Purchase Order, which is performing Services under this Purchase Order.

   **"Deliverables"** means written materials to be provided by Contractor under the Purchase Order, including but not limited to reports, manuals, data, technical drawings, and presentations.

   **"Goods"** means personal property purchased by PG&E under the Purchase Order.

   **"Party"** or **"Parties"** means, in the singular, Contractor or PG&E, and in the plural, both Contractor and PG&E.

   **"Purchase Order"** or **"PO"** means the contract between the Parties, comprised of the Purchase Order form, these Terms and Conditions, and any other document incorporated into the Purchase Order. A reference to the "face of the Purchase Order" means the Purchase Order form.

   **"Services"** means the work to be performed by Contractor described on the face of the Purchase Order and includes all Deliverables and Goods provided hereunder.

   **"Subcontract"** means an agreement between Contractor and Subcontractor or between Subcontractors at any level for a portion of the Services under this Contract.

   **"Subcontractor"** means the party or parties entering into a Subcontract with Contractor or another Subcontractor to perform a portion of the Services covered by the Contract.

2. **ACCEPTANCE:** This Purchase Order is PG&E's offer to purchase from Contractor the Services described on the face of the Purchase Order. BY COMMENCING PERFORMANCE OF THE SERVICES, CONTRACTOR IS DEEMED TO HAVE ACCEPTED ALL THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER. Any additional or different terms proposed by Contractor, whether in any proposal, quotation, confirmation, acknowledgment, invoice, notation or interlineation on the Purchase Order or otherwise, are expressly rejected and shall be of no force and effect, and no course of dealing, usage of trade, or course of performance shall be relevant to explain or supplement any term herein.

3. **INDEPENDENT CONTRACTOR:** Contractor is an independent contractor, and all persons hired by Contractor in connection with this Purchase Order shall be employees or subcontractors of Contractor and shall not be construed as employees or agents of PG&E in any respect. Contractor is solely responsible for determining the appropriate means and methods of performing the Services, notwithstanding any review, approval, acceptance, use or payment by PG&E.

4. **AMENDMENTS; NON-WAIVER:** No modification or change to this Purchase Order, or waiver of any breach or default, shall be binding or effective unless expressly set forth in writing by a change order signed by the authorized representatives of both Parties. Waiver by either Party of any breach or default shall not be deemed to be a waiver of any other breach or default of the same or any other requirement, nor shall any waiver of an incident of breach or default constitute a continuing waiver of the same.

5. **SUBCONTRACTS:** Contractor shall not enter into Subcontracts without the prior written approval of PG&E, which approval shall not relieve Contractor of its obligations hereunder.

6. **NON EXCLUSIVITY:** THIS IS NOT AN EXCLUSIVE CONTRACT. THIS PURCHASE ORDER DOES NOT GUARANTEE CONTRACTOR ANY VOLUME OR DURATION OF WORK.

7. **PERFORMANCE:** Time is of the essence, and PG&E may terminate the Purchase Order if the services are not begun or performed by the date specified on the face of the Purchase Order. No change in the scheduled performance date is permitted without PG&E's prior written consent.

8. **INVOICES:** Contractor's invoices for services must meet the following minimum requirements before they can be paid:

   a. Submit a separate invoice for each Purchase Order.

   b. Invoices must include the Purchase Order number, delivery or service address, and, if applicable, the shipping point.

   c. Each invoice item must clearly identify the corresponding Purchase Order item.

   d. Contractor must submit an invoice within Sixty (60) days after completion and final acceptance of the Services by PG&E. PG&E will not be liable for payment of late invoices that are received beyond such Sixty (60) day period.

9. **EXPENSES:** All reimbursable expenses shall be billed to PG&E at Contractor's cost and must be reasonable, ordinary and necessary. Air fare costs will be reimbursed only on a coach fare basis and rental car costs on a subcompact rate basis. Other reimbursable mileage will be at the then-current Internal Revenue Service (IRS) rate.

10. **PAYMENT TERMS**: PG&E's payment terms are 2% 15 days, net 45 days after receipt of an approved invoice. PG&E reserves the right to discount payments to Contractor by Two percent (2%) of the invoice total for payment(s) made to Contractor within Fifteen (15) days. Any remaining, uncontested balance shall be payable to Contractor within Forty-Five (45) days after receipt of an approved invoice. PG&E may retain from any payments due hereunder sufficient funds to discharge any delinquent accounts of Contractor for which liens on PG&E's property have been or can be filed, and PG&E may at any time pay therefrom, for Contractor's account, such amounts as are admittedly due thereon.

11. **WARRANTIES:** Contractor warrants that the Services shall be performed with the degree of skill and care required by currently prevailing best industry practices and in conformance with generally accepted professional standards prevailing at the time the Work is performed so that the services performed are correct and appropriate for the purposes contemplated herein. Any Goods furnished by Contractor, whether or not manufactured by Contractor, shall be of the kind and quality described in the Purchase Order, free of defects in workmanship, material, design, and title, of good and merchantable quality, and fit for their intended purpose.

12. **TERMINATION OR CANCELLATION:** PG&E may suspend, terminate or cancel the Purchase Order upon written notice to Contractor, and PG&E shall be liable to Contractor only for the compensation earned on the Work performed to the date of termination. Contractor shall not be entitled to any payment for lost or anticipated profits or overhead on uncompleted portions of the Work. Any reports, drawings or other documents prepared for PG&E prior to the effective date of such termination or cancellation shall be delivered to PG&E by Contractor before PG&E will release the final payment.

13. **INFRINGEMENT PROTECTION:** Contractor represents to PG&E that the Services will not infringe upon the copyright, patent or license, or otherwise violate the proprietary rights, including trade secret rights, of any person or entity. Contractor agrees to indemnify and hold PG&E, its parent, subsidiaries and affiliates, harmless from any liabilities, costs, and

{00098432.DOC;8}
10/13/2010 KBW4

damages arising out of any such infringement and from any suit, demand or claim made against PG&E, its parent, subsidiaries, and affiliates alleging any such infringement or violation. Contractor further agrees to pay any judgment or reasonable settlement offer resulting from a suit, demand or claim, and pay any reasonable attorneys fees incurred by PG&E in defense against such suit, demand, or claim.

**14. INDEMNIFICATION:** Contractor shall indemnify PG&E, its directors, officers, agents, and employees, against all loss, damage, expense and liability resulting from injury to or death of person, including, but not limited to, employees of PG&E or Contractor, or injury to property, including, but not limited to, property of PG&E or Contractor, arising out of or in any way connected with the performance of, or failure to perform, this Purchase Order, however caused, except for such injury, death or property damage caused by the negligence or willful misconduct of PG&E.

**15. INCIDENTAL AND CONSEQUENTIAL DAMAGES:** NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF REVENUES OR PROFITS, COMMITMENTS TO SUBCONTRACTORS, RENTAL OR LEASE AGREEMENTS, AND PERSONAL SERVICE CONTRACTS, EVEN IF SUCH PARTY WAS AWARE OF THE POSSIBILITY OF SUCH DAMAGES; PROVIDED, HOWEVER, THAT NOTHING IN THIS CLAUSE SHALL AFFECT CONTRACTOR'S OBLIGATIONS IN THE CLAUSES CONCERNING INFRINGEMENT PROTECTION, INDEMNIFICATION AND INSURANCE.

**16. INTELLECTUAL PROPERTY AND CONFIDENTIALITY**

a. **OWNERSHIP AND USE OF DELIVERABLES:** PG&E shall own all data, reports, information, manuals, computer programs or other written, recorded, photographic or visual materials, or other Deliverables produced for PG&E hereunder. Contractor shall retain no ownership, interest, or title in them except as may otherwise be provided in the Purchase Order. If and to the extent that Contractor retains any preexisting rights in any materials furnished hereunder, Contractor hereby grants to PG&E the irrevocable, perpetual, non-exclusive, worldwide, royalty free right and license to (i) make, use, execute, reproduce, display, perform, distribute copies of, and prepare derivative works based upon such preexisting rights and derivative works thereof in connection with PG&E's business and (ii) authorize others to do any or all of the foregoing in connection with PG&E's business. Any claims of Contractor to proprietary rights in the Deliverables must be expressly set forth herein or previously disclosed to PG&E in writing.

b. **DELIVERY AND RETENTION OF RECORDS:** To the extent PG&E does not otherwise specifically request delivery of records or results, Contractor agrees to retain all records and results of Work performed under this Purchase Order for a period of not less than two years from the date the Work is accepted by PG&E. At PG&E's request Contractor will deliver a copy of any or all original field notes, investigative notes, tests, photographs, records, calculations, summaries, reports, and records produced and collected in the course of the Work performed under this Purchase Order.

c. **CONTRACTOR'S USE OF PG&E PROPERTY:** All records, reports, computer programs, written procedures and similar materials, documents or data, in whatever form, provided by PG&E for Contractor's use in the performance of Services shall remain the confidential property of PG&E and shall be returned to PG&E immediately upon completion of Contractor's use for the performance of the Work or earlier upon the request of PG&E.

d. **CONFIDENTIALITY:** In the course of performing the Services, Contractor may have access to confidential commercial or personal information concerning, but not limited to, technological, ratemaking, legislative and personnel matters and practices of PG&E, its parent company, subsidiaries, affiliates, or members of the public. Contractor agrees not to disclose any such confidential information or otherwise make it available to any other person, including any affiliate of PG&E that produces energy or energy-related products or services, without the prior written approval of PG&E. Contractor shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect any personal or confidential information from unauthorized access, destruction, use, modification, or disclosure.

**17. INSURANCE REQUIREMENTS:** Contractor shall maintain insurance coverage accordance with this Article. Contractor is also responsible for its Subcontractors maintaining sufficient limits of the same coverage.

a. **ON-SITE WORK:** If the work hereunder requires Contractor to enter PG&E's premises, the following provisions shall apply. Contractor shall maintain **(1) Workers' Compensation** insurance complying with any applicable labor codes, acts, laws or statutes, state or federal, where Contractor performs work; (2) **Employers' Liability** insurance which shall not be less than $1,000,000 for injury or death each accident, and (3) **Commercial General Liability** coverage at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage occurrence form, with no coverage deletions. The limit for Commercial General Liability coverage shall not be less than $1,000,000 each occurrence for bodily injury, property damage and personal injury. If coverage is subject to a general aggregate limit, this aggregate limit shall be twice the occurrence limit. Coverage shall: (1) by "Additional Insured" endorsement add as insureds PG&E, its directors, officers, agents and employees with respect to liability arising out of work performed by or for the Contractor; and (2) be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it.

b. **VEHICLE COVERAGE:** If the Services hereunder involve any use of a vehicle, the following provision shall apply. Contractor shall maintain **Business/Personal Auto** insurance with coverage at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile liability, code 1 "any auto." The limit shall not be less than $1,000,000 each accident for bodily injury and property damage. Sole proprietor consulting or other professional services firms may provide evidence of Personal Auto insurance, provided that the limit for Personal Auto shall not be less than the minimum limits established by the California Department of Motor Vehicles, but in no case less than $300,000 each accident.

c. **INSURANCE DOCUMENTATION REQUIREMENTS.** Contractor must provide PG&E with certificates of insurance and endorsements of all required insurance upon request. The insurance documentation shall state that coverage shall not be cancelled except after thirty (30) days prior written notice has been given to PG&E, and must be signed by a person authorized by that insurer to bind coverage on its behalf. All policies or binders with respect to insurance maintained shall waive any right of subrogation of the insurers hereunder against PG&E, PG&E's directors, officers, employees, agents, and its parent company, affiliates, subsidiaries. PG&E may inspect the original policies or require complete certified copies, at any time. Upon request, Contractor shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Contractor.

**18. SAFETY**

## PURCHASE ORDER FOR SERVICES
## TERMS AND CONDITIONS
## EXHIBIT 1

a. **Performance of Work**: Contractor shall plan and conduct the work to safeguard adequately all persons and property from injury. Contractor shall direct the performance of the work in compliance with reasonable safety regulations and work practices and with all applicable Federal, State and local laws, rules and regulations, including, but not limited to, "occupational safety and health standards" promulgated by the U.S. Secretary of Labor and safety orders of the California Division of Industrial Safety. PG&E may require Contractor to observe reasonable safety precautions in addition to those in use or proposed by Contractor. Neither the giving of such special instructions by PG&E nor the adherence thereto by Contractor shall relieve Contractor of its sole responsibility to maintain safe and efficient working conditions.

b. **Injury and Illness Prevention Program**: Contractor acknowledges that it has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code.

c. **PG&E Drug and Alcohol Policy**: PG&E has established a drug and alcohol policy for access to PG&E facilities by its Contractor and Subcontractor personnel. If any personnel of Contractor or its approved Subcontractors perform any Work or services at PG&E offices and/or other PG&E facilities, then Contractor shall comply with PG&E's Drug and Alcohol Abuse and Testing Policies.

**19. HAZARDOUS MATERIALS:** The California Health and Safety Code requires businesses to provide warnings prior to exposing individuals to materials listed by the Governor as chemicals "known to the State of California to cause cancer, birth defects or reproductive harm." PG&E uses chemicals on the Governor's list at many of its facilities. In addition, many of these chemicals are present at non-PG&E-owned facilities and locations. Accordingly, in performing the Services, Contractor, its employees and agents, may be exposed to chemicals on the Governor's list. Contractor is responsible for notifying its employees and agents that Services performed hereunder may result in exposures to chemicals on the Governor's list.

**20. AVAILABILITY OF INFORMATION:** PG&E's authorized representatives shall have access at all reasonable times to all of the Contractor's personnel and records during the term of the Purchase Order and for Three (3) years thereafter to verify the quantity and quality of Work, reimbursable costs, accuracy of billings, and compliance with the Conflict of Interest/Business Ethics clause below. Contractor shall promptly submit payment including accrued interest for any inaccuracies disclosed. Except for the review for compliance with the Conflict of Interest/Business Ethics clause, this paragraph shall not apply to contracts performed solely on a lump-sum basis.

**21. CONFLICT OF INTEREST/BUSINESS ETHICS:** Contractor shall not offer, or cause to be offered, gifts, entertainment, payments, loans, services, benefits, or any other consideration of more than a nominal value to PG&E's employees, their families, contractors, or third parties.

**22. NO PUBLICITY:** Contractor shall not include PG&E's name, any reference to this Purchase Oder, or any reference to PG&E's purchase or use of any products or services provided by Contractor in Contractor's published customer list or in other publicity or advertisement (including internet sites) without the prior written consent of an officer of PG&E.

**23. ASSIGNMENT:** Contractor shall not assign its rights or delegate its duties under the Purchase Order without obtaining prior written consent of PG&E, and any attempted assignment or delegation without such consent shall be void. At its discretion, PG&E may assign its rights or delegate its duties under the Purchase Order, provided PG&E will remain obligated for payments unless otherwise agreed by Contractor.

**24. CODE OF CONDUCT:** CONTRACTOR AND CONTRACTOR'S SUBCONTRACTORS AND THEIR SUPPLIERS AT ALL TIERS SHALL COMPLY WITH PG&E'S CONTRACTOR, CONSULTANT AND SUPPLIER CODE OF CONDUCT IN THE AWARD OF ALL CONTACTS AND SUBCONTRACTS. This policy requires that Contractor and Contractor's subcontractors and suppliers demonstrate a strong commitment to compliance and ethics as a foundation to successful business. Any Work done for PG&E must be completed in full compliance with PG&E's Contractor, Consultant and Supplier Code of Conduct. Contractor shall access, read and comply with PG&E's Code of Conduct and shall make it available to its Subcontractors and suppliers. The Code of Conduct is available at PG&E's website, www.PGE.com, at the following link: http://www.pge.com/includes/docs/pdfs/b2b/purchasing/contractor consultant and supplier code.pdf).

**25. FEDERAL EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION REGULATIONS POLICY:** During the performance of this Purchase Order and to the extent they may be applicable, Contractor agrees to comply with all laws, orders, and regulations included by summary or reference in the following provisions: (a) Executive Order 11246, 41 CFR Part 60-1.4: Equal Opportunity Clause; (b) Executive Order 11246, 41 CFR Part 60-1.8: Nonsegregated Facilities. (c) Vietnam Era Veterans' Readjustment Assistance Act of 1974, 41 CFR Part 60-250.5.a: Equal Opportunity Clause; (d) Vietnam Era Veterans' Readjustment Assistance Act of 1974,41 CFR Part 60-300.5.a: Equal Opportunity Clause; and (e) Section 503 of the Rehabilitation Act of 1973, 41 CFR Part 60-741.5.a: Equal Opportunity Clause.

**26. CHOICE OF LAWS:** The contract created by acceptance of this Purchase Order, and the rights and obligations of the Parties arising thereunder, shall be construed and interpreted in accordance with the laws of the State of California, excluding any choice of law rules directing the application of the laws of another jurisdiction.

**27 COMPLIANCE WITH LAWS:** In performing the Services, Contractor shall comply with all applicable Federal, State and local laws, rules and regulations, and shall obtain all applicable licenses and permits for the conduct of its business and the performance of the Services.

**28. SURVIVAL:** The provisions of this Purchase Order which by their nature should survive expiration, cancellation or other termination of this Purchase Order, including but not limited to provisions regarding warranty, indemnity and availability of information, shall survive such expiration, cancellation or other termination.

**29. ENTIRE AGREEMENT:** The terms and conditions stated on the face of the Purchase Order, together with these Terms and Conditions and the provisions of any other document incorporated into the Purchase Order constitute the entire agreement between the Contractor and PG&E with respect to the subject matter of the Purchase Order and supersede all prior or contemporaneous communications, representations, or agreements, whether oral or written.