# EXHIBIT B9



# Contract (Long Form)

This is a Contract between the below named Contractor ("Contractor"), a California corporation, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105.

| Contractor's Legal Name: | GEI Consultants, Inc. | PG&E Contract No. C11056 |
|---|---|---|
| Contractor's Address: | 180 Grand Avenue, Suite 1410 Oakland, CA 94612 | This Contract consists of 52 pages. |
| Project Name: | FERC Part 12 (5) Year Review for Safety Reports for PG&E Dams Safety | |
| Job Location: | PG&E Service Territory | |

**WORK**: Contractor shall, at its own risk and expense, perform the Work described in this Contract and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Attachment 1, Scope of Work. This is not an exclusive Contract. This Contract does not guarantee Contractor any Work nor is there any guarantee as to any volume or duration of Work.

Contractor shall Professional Engineering or Engineering Firm to act as PG&E's independent Contractors preparing Federal Energy Regulatory Commission (FERC) Part 12 5-Year review of safety Reports on various dams in PG&E Hydroelectric system.

**ATTACHMENTS:** Each of the following documents is attached to this Contract and incorporated herein by this reference:

Attachment 1: Specific Conditions, 12 Pages

Attachment 2: 2018 – 2019 MSA Pricing, 1 Page

Attachment 3: Consulting Services Long Form, General Conditions, 36 Pages

Attachment 4: PG&E Generation System Map, 1 Page

| | |
|---|---|
| **CONTRACT TERM:** | This Contract is effective upon signature by both parties and expires on **31 December 2021.** |
| **COMPLETION:** | Contractor shall commence performance hereof when directed to do so by PG&E. Work shall be completed by the completion date of 31 December 2021. Time is of the essence. |
| **INSURANCE:** | Contractor shall maintain insurance in accordance with Section 8.0 of the General Conditions. |
| **TERMS OF PAYMENT:** | In accordance with Section 3.0 of the General Conditions. |

**CONSIDERATION:** As full consideration for satisfactory performance of the Work by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E Contract Change Order, fully executed by both PG&E and Contractor.

**TOTAL: This Agreement holds no value. All funding for efforts under this blanket Agreement Will be issued in the form of Contract Work Authorizations (CWA) under the Blanket Agreement number.**

THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT.

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: GEI CONSULTANTS, INC. | |
|---|---|---|---|
| Signature | *April Titus* (DocuSigned by: B37C565A76C94FB...) | Signature | *Bill Rettberg* (DocuSigned by: 11F9B292E663401...) |
| Name | April Titus | Name | Bill Rettberg |
| Title | Category Leader, Senior | Title | Sn. VP |
| Date | 9/28/2018 | Date | 9/28/2018 |



| ADMINISTRATION | | | | |
|---|---|---|---|---|
| **PG&E Negotiator** | April Titus | **Contractor Representative** | William Rettberg | |
| **Phone** | 415-973-5926 | **Phone** | (510) 350-2910 Office | |
| **Email** | adta@pge.com | **Email** | wrettberg@geiconsultants.com | |
| **Accounting Reference** | Per individual CWA | | | |
| **PG&E Work Supervisor:** | Per individual CWA | | | |
| **INVOICE INSTRUCTIONS:** Contractor shall send invoices for each payment when due, showing the Contract number, to: PACIFIC GAS AND ELECTRIC COMPANY | **Send ORIGINAL Invoice to:** | PG&E Accounts Payable* PO Box 7760 San Francisco, CA 94120-7760 | | |
| | **Send COPY of Invoice to:** | Per individual CWA | | |
| | For information regarding invoice status, call PG&E's Paid Help Line at (800) 756-PAID (7243) or go to AP Web Reporting site at www.pge.com/actpay. **\*Note**: Contractors using the Ariba System do not need to mail a copy of the invoice to PG&E. | | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| **Distribution Date** | | |
| **Distribution of Copies** | ☒ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☒ Contractor (Signed Original Copy) |
| | ☐ Work Supervisor | ☐ Manager |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |

Case: 19-30088    Doc# 1744-10    Filed: 04/29/19    Entered: 04/29/19 13:43:30    Page 3 of 53

# SPECIFIC CONDITIONS



# SPECIFIC CONDITIONS

**TABLE OF CONTENTS**

1.0  INTRODUCTION ............................................................SC-3

2.0  DEFINITIONS... ...........................................................SC-4

3.0  SCOPE OF WORK..........................................................SC-4

4.0  CONTRACT WORK AUTHORIZATION (CWA)...........................SC-5

5.0  CONSIDERATION.........................................................SC-7

6.0  BILLING .........................................................SC-7

7.0  TERM OF CONTRACT.....................................................SC-7

8.0  CONTRACT PRICING .....................................................SC-8

9.0  CONTRACTOR STAFFING................................................SC-8

10.0  WORK LOCATION........................................................SC-8

11.0  CONTRACT INTERFACE ................................................SC-8

12.0  CONTROLLING ORDER..................................................SC-9

**Attachment 1 – Sample Contract Work Authorization (CWA)**
**Attachment 2 – Monthly Forecast Template**



## SPECIFIC CONDITIONS

**GEI Contractors, Inc.** (hereinafter referred to as **"Contractor"**), a California Corporation whose principle place of business is located at 180 Grand Ave, Suite 1410, Oakland, CA 94612 with Headquarter location in Massachusetts and **Pacific Gas and Electric Company** (hereinafter referrer to as **"PG&E"**), a California Corporation, whose corporate offices are located at 77 Beale Street, San Francisco, CA 94105.

### 1.0   INTRODUCTION

#### 1.1   PURPOSE

The purpose of this Contract is to establish the terms and conditions under which Contractor shall provide

The Federal Energy and Regulatory Commission (FERC) Requires that licensed  projects works "…be inspected and evaluated by, or under the responsibility and direction of, at least one independent Contractor." According, FERC has implemented a    dam safety performance-monitoring program, described in the internet reference below.

https://ferc.gov/industries/hydropower/safety/guidelines/eng-guide/chap14.pdf

This Contract alone does not authorize performance of Services.  Contractor agrees that no funds have been committed or will be paid by PG&E upon execution of this Contract.  Services shall be provided only as authorized by PG&E, on an as-requested basis, by issuance of a Contract Work Authorization (CWA).

The terms and conditions of this Contract shall apply independently to each CWA issued under this Contract.  The terms and conditions of this Contract shall not be modified in whole, or part, in any way, by any CWA.  The terms and conditions of this Contract shall be modified only as agreed in writing by PG&E and Contractor in a Contract Change Order.

THE PARTIES AGREE THAT THIS CONTRACT DOES NOT ESTABLISH AN EXCLUSIVE CONTRACT BETWEEN PG&E AND CONTRACTOR NOR CONSTITUTE A COMMITMENT BY PG&E, WHETHER EXPRESS OR IMPLIED, TO CONTRACT WITH CONTRACTOR TO PERFORM OR SUPPLY ANY WORK, NOR IS THERE ANY GUARANTEE AS TO THE VOLUME OF WORK OR THE DURATION OF THE CONTRACT. PG&E EXPRESSLY RESERVES ALL ITS RIGHTS, INCLUDING BUT NOT LIMITED TO THE FOLLOWING:  THE RIGHT TO UTILIZE OTHERS TO PERFORM OR SUPPLY WORK OF THE TYPE CONTEMPLATED BY THE CONTRACT; THE RIGHT TO REQUEST PROPOSAL(S) FROM OTHERS WITH OR WITHOUT REQUESTING PROPOSALS FROM CONTRACTOR FOR WORK OF THE TYPE CONTEMPLATED BY THE CONTRACT; AND THE UNRESTRICTED RIGHT BY PG&E TO BID OR PERFORM ANY SUCH WORK.

#### 1.2   **GENERAL**: This Specification establishes the terms and conditions under which PG&E may request the services of the Contractor within the PG&E service territory.  No Work is authorized solely by this Contract.  It is mutually agreed that no funds have been committed or will be paid by PG&E upon execution of this Contract.  As explained below, Work will be authorized by separate CWA issued by PG&E for specific jobs.

#### 1.3   **LOCATION:** Work will be performed within the PG&E Service Territory as indicated by the individual CWA.



1.4    **PROPOSAL INSTRUCTIONS**: Proposals shall be in accordance with the Specific Conditions, the attached Rate Sheets and the General Conditions of this Specification.

## 2.0    DEFINITIONS

The definitions in Consulting Services General Conditions, Section 1, "Definitions," are supplemented with the terms defined below:

| | | |
|---|---|---|
| 2.1 | "Project": | The total Project planned by PG&E for which the Contractor will provide Services as described in a specific CWA issued under this Contract. |
| 2.2 | "PG&E Representative": | The PG&E employee authorized to sign a CWA on behalf of PG&E. |
| 2.3 | "PG&E Work Supervisor": | PG&E's employee supervising the Work in connection with a CWA. Each CWA issued will identify PG&E's Work Supervisor. |

## 3.0    SCOPE OF WORK

Contactor, as requested by PG&E, may provide Services, including but not limited to, furnishing all labor, materials, and equipment for the Services as specified in any CWA issued under this Contract.

3.1 Type of Work: Typical Projects may include, but not be limited to, the following services. This list is not intended to be all-inclusive or to otherwise limit the scope of work which may be developed under this Contract. Each CWA shall specify a scope of work.

- Independent Contractor preparing Federal Energy Regulatory Commission (FERC) Part 12, 5-Year Review of Safety Reports
- Potential Failure Mode Analysis
- Dam Break Analysis
- Inundation Mapping
- Dam Surveillance and Monitoring Plan and Reports
- Non-Destructive Evaluations (NDE) Field Investigation Services including GPR Surveys, LiDAR, IR, IRS, borescope, or other techniques
- Geotechnical and geologic field investigation;
- Fault trace investigation and mapping;
- Landslide/debris flow evaluation and mitigation;
- Rockfall hazard evaluation, rockfall simulation, and rockfall mitigation;
- Seismic hazard analysis, including liquefaction and lateral spread potential;
- Development of geotechnical design parameters;
- Civil and structural design for various facilities and facility types, including plans, specifications, and estimates (PS&E);
- Dam and spillway evaluation, modification, and design;
- Existing facility evaluation;
- Vibration monitoring
- Mechanical Engineering design, including PS&E.



3.2    Development of Scope of Work for Each Project - (Scoping):  Depending upon the type of work, PG&E may specify the scope of work; or PG&E and Contractor may discuss a Project for problem identification and assessment, and jointly develop the Project's scope of work.

3.3    Work Schedules and Manpower Requirements/Costs:  For each separate Project, and as required by PG&E, Contractor shall submit to PG&E's Work Supervisor the activities required to perform the Project's scope of work in schedule format.  The schedule shall be broken down by phases, tasks and sub-tasks.  Contractor shall also submit its manpower requirements, listed by hours and cost per each employee required to accomplish each task of the Project.

3.4    Review of Contractor's Scoping Documents or Proposal:  PG&E will review Contractor's proposed work schedule, deliverables, key personnel, manpower requirements, and cost for each Project's scope of work.  PG&E will discuss with Contractor its proposal and, if necessary, will negotiate changes in schedule and/or cost.  If PG&E and Contractor cannot agree upon schedule and/or cost, PG&E may decide to perform the work in-house or decide to have another Contractor or contractor perform the work.

3.5    Authorization of Scope of Work for Each Project:  Once the Project's scope of work has been accepted by PG&E, the detailed scope of work, deliverables and schedule requirements, Estimated Cost for services, and lump sum fee (if applicable) will be described in separate CWAs, prepared by PG&E's Authorized Representative for the specific Services and issued by PG&E to Contractor for acceptance.

4.0    CONTRACT WORK AUTHORIZATION (CWA)

Services shall not be performed by Contractor prior to the execution of a CWA by Contractor and PG&E.  Any performance of Services by Contractor shall be authorized upon execution of a CWA.  The CWA shall not be effective until fully executed by both parties.  The issuance of any CWA shall not commit PG&E to any future services by Contractor

PG&E may issue a CWA to Contractor as a direct-award or through a competitive bidding process.

PG&E SHALL NOT BE LIABLE FOR ANY COSTS INCURRED BY CONTRACTOR IN PREPARATION OF A PROPOSAL OR FOR OTHER "MARKETING" EFFORTS PUT FORTH BY CONTRACTOR.  PROPOSALS PERTAIN TO RESPONSES TO PG&E REQUESTS FOR PROPOSALS (RFP'S) AND NOT SCOPING EFFORTS, WHICH ARE DEVELOPED COLLABORATIVELY WITH PG&E.

4.1    AUTHORIZATION

Upon receipt of the CWA, Contractor shall review the CWA and verify that the terms of the CWA are accurate and complete and shall determine whether Contractor has the capacity to perform the Services specified in compliance with all the requirements of this Contract and those specified in the CWA.  Contractor shall indicate its acceptance by having an authorized representative sign the CWA and forward the signed CWA to PG&E.  ARIBA Catalog CWAs under $100,000, only require email acceptance by the Contractor to be considered a valid executed CWA.  IF CONTRACTOR CANNOT ACCEPT THE CWA, CONTRACTOR SHALL IMMEDIATELY NOTIFY PG&E.



4.2     DELIVERABLES AND ACCEPTANCE

Deliverables provided by Contractor upon completion of Services shall be subject to PG&E review and acceptance. Unless otherwise specified in a CWA, Contractor shall submit preliminary deliverables to PG&E for review and comment. All final engineering documents shall be stamped and signed by a Professional Engineer registered in the state of California. Contractor shall also provide PG&E with an electronic file of all final engineering drawings. Specific CADD/Drafting requirements will be given to Contractor from the PG&E department issuing work and will be set forth in the CWA at the time the CWA is issued.

Contractor shall address any PG&E comments to the satisfaction of PG&E prior to submittal of final deliverables. ACCEPTANCE OF ANY DELIVERABLE PROVIDED BY CONTRACTOR SHALL IN NO WAY LIMIT CONTRACTOR'S OBLIGATIONS OR PG&E'S RIGHTS UNDER THIS CONTRACT.

4.3     WORK STATUS REPORT

Contractor shall on a monthly basis or as coincides with the invoicing period for a CWA, whichever is more often, report to the PG&E Work Supervisor for the CWA, the following information, at a minimum, with regard to the status of Work:

- PROGRESS: Work performed or completed by Contractor, including significant progress, set-backs, or outstanding issues, for example, permitting, regulatory or PG&E approval.

- CHANGES: Changes, additions or decreases, to the scope of Work.

- BUDGET: Cumulative billings, including a brief analysis and discussion of the billings as compared to actual progress.

- MONTHLY FORECAST: The most important required info is the CWA No., Past actuals, and Future forecast. Please submit Attachment 2: Monthly Forecast template to PG&E work Supervisor on the 25th of every month until the project CWA is billed.

- SCHEDULE: Review of the schedule for the Work as compared to actual progress.

Contractor shall immediately notify PG&E regarding any problems that may significantly affect the performance of Services by Contractor. For example, problems may include but are not limited to, significant change, additions or decreases, to the services specified in the CWA, including out-of-scope services, which may significantly affect the Estimated Cost, schedule, quality, or other factors; delay in submittal of a deliverable to PG&E, Contractor non-compliance with any of the Contract terms; and, other circumstances which may warrant immediate notification to PG&E. Contractor shall report such problems to the PG&E Work Supervisor for the CWA, and as appropriate, to the PG&E Contract Administrator. If Services performed by Contractor are not in the scope of the CWA, Contractor shall immediately notify PG&E.

4.4     MODIFICATION

PG&E and Contractor will address changes to a CWA by issuance of a CWA Change Order. Modifications to a CWA shall be authorized in accordance with the same requirements set forth for authorizing a CWA. The modification will reference the CWA which it modifies and will clearly set forth the changes to the previously issued CWA. Unless expressly authorized in the modified CWA, all the terms of the original CWA and any previous CWA modifications shall remain in full force and effect.



5.0     CONSIDERATION

The process by which Contractor shall be compensated for Services performed under this Contract will be specified in each CWA.

**BASIS OF PRICES AND PAYMENT**

5.1     Invoices submitted by Contractor shall be on Contractor's letterhead with an invoice number and PG&E's Contract number.

5.2     PRICING: Each CWA will state (1) a maximum not-to-exceed dollar amount for the work to be performed on a time and material basis, or (2) a Fixed or unit price amount for work to be formed on a firm fixed or unit price basis, or (3) a combination of (1) and (2) above. When using fixed or unit price amount for Work performed, defined deliverables with associated milestone payments on specified dates must be included in the CWA. When using a combination of pricing, each method must be broken out as set forth above.

5.3     INVOICING: Contactor shall submit separate invoices for each CWA identifying if by contract number, CWA number, and listing line items being billed. If applicable, Invoices will be paid only after the PG&E work supervisor has confirmed that the contractor's work and dates have been satisfactorily completed and accurately reported and that deliverables have met all acceptance criteria set forth in the CWA.

5.4     CONSIDERATION: Hourly rates shall be in accordance with Contractor's Schedule of Prices attached. These are firm rates to PG&E and include all overheads, general and administrative cost, benefits, and fees or profit.

5.5     Prices shall be predetermined for each project before a CWA is issued.

6.0     BILLING

Contractor shall bill PG&E monthly in the full amount of Actual Costs incurred for the subject CWA during the previous calendar month. Actual Costs include labor (Hourly Billing Rates X hours worked) and any PG&E approved reimbursable expenses.

7.0     TERM OF CONTRACT

This Contract shall be in effect for (3) three Years from date of Execution, with at least one firm option to extend the agreement for (1) one additional year, to be exercised at PG&E's option. PG&E Option to extend the contract shall be exercised in writing to contractor 45 days before the end of the contract term and any extension thereof that PG&E is electing to exercise to extend. Unit, Labor and equipment prices shall remain fixed for each one-year period and are subject to renegotiation annually unless changed by a Contract Change Order to this contract executed by both parties. This Contract maybe canceled or terminated by PG&E pursuant to the application cancelation or Termination provision of this contract.



## 8.0 CONTRACT PRICING

8.1 Contract "Basis of Charges" shall be firm and fixed for year one of the base term of the Contract.

8.2 ANNUAL ADJUSTMENTS. After year one of the base term of the Contract and annually thereafter, Contractor and PG&E agree that these rates shall apply to the term of the contract amendment, Rates for 2020 and 2021 will be escalated by a fixed 1.5%.

## 9.0 CONTRACTOR STAFFING

Contractor was awarded this Contract in part based upon the qualifications of Contractor's key individuals identified to perform Work under this Contract. PG&E has the assurance from Contractor that PG&E will have priority access to Contractor's key individuals best suited for the project. In addition to the applicable provisions of the General Conditions, Contractor shall not remove any individual from performing Work under this Contract without the approval of PG&E, with the exception of employee termination which requires only PG&E notification and not approval. Such approval shall not be unreasonably withheld or delayed.

## 10.0 WORK LOCATION

Services may be performed at Contractor's place of business, various locations throughout the PG&E service territory, or as required for successful completion of Services.

## 11.0 CONTRACT INTERFACE

### 11.1 FOR PG&E

In regard to matters relating to this Contract, Contractor shall provide notice to the below-listed PG&E representative(s):

Contract Administrator

April D. Titus
Sr. Category Lead
Power Generation Sourcing
245 Market Street, MC 519B
San Francisco, CA 94105
Office: (415) 973-5926
Cell: (925) 549-4957
E-mail: adta@pge.com

Case: 19-30088 Doc# 1744-10 Filed: 04/29/19 Entered: 04/29/19 13:43:30 Page 11 of 53

Hydro LOB Contract Person

Cathy Ly
Supervisor, Deputy Chief Dam Safety Engineer
245 Market Street, MC 519B
San Francisco, CA 94105
Office: (415) 973-3647
Cell: (415) 310-9554
E-mail: cclc@pge.com


Work Supervisor
By Individual CWA's


11.2   CONTRACTOR

For technical and commercial matters relating to this Contract, PG&E will provide notice to the below-listed Contractor representative:

William Rettberg, P.E.
Senior Vice President
GEI Consultants, Inc.
180 Grand Ave, Suite 1410
Oakland, CA 94612
(510) 350-2900 Main
(510) 350-2910 Direct
(510) 910-2201 Cell
wrettberg@geiconsultants.com


12.0   CONTROLLING ORDER

All Works shall be performed in accordance with all the terms and conditions set forth in this Contract, including the specific terms set forth in a CWA. Should a conflict exist between the Specific Conditions and the General Conditions, the Specific Conditions shall control. Should a conflict exist between a CWA and the terms set forth in this Contract, the terms set forth in this Contract shall control. THE TERMS AND CONDITIONS OF THIS CONTRACT SHALL APPLY INDEPENDENTLY TO EACH CWA, AND SHALL NOT BE MODIFIED IN WHOLE OR PART, IN ANY WAY, BY ANY CWA.

All Work shall be performed in accordance with all the terms and conditions set forth in this Contract, including without limitation all applicable local, state and federal laws, rules, orders, codes and regulations, and all other current and applicable guidance and standards. Should a conflict exist between the terms in this Contract and applicable federal, state, or local law, rule, regulation, order or code, the law, rule, regulation, order or code shall control. Varying degrees of stringency among the Specific Conditions and General Conditions, and a specific CWA shall not be deemed a conflict and the most stringent requirement shall control. Varying degrees of stringency among the Contract terms and applicable laws, rules, regulations, orders, or codes shall not be deemed conflicts and the most stringent requirement shall control.



<u>Sample</u>

# Contract Work Authorization (CWA)

This Contract Work Authorization ("CWA") No. [enter #] is issued under and pursuant to the Blanket Agreement or Master Service Agreement No. [enter #] dated [enter Date] (the "MSA") between the below-named Contractor ("Contractor"), [enter Legal Title], and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this CWA pursuant to and in accordance with the terms and conditions of the MSA.

| Contractor's Legal Name: | [enter Name] | Total Number of Pages: [enter #] |
|---|---|---|
| Contractor's Address: | [Street Address] [PO Box] [City, State Zip Code] | |
| Project Name: | [enter Name] | |
| Job Location: | [enter Location] | |

**WORK:** Contractor shall, at its own risk and expense, perform the Work described in this Contract Work Authorization and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Attachment 1, Scope of Work.

[enter Work Summary here]

**ATTACHMENTS:** Each of the following documents are attached to this CWA and are incorporated herein by this reference:

**CWA TERM:** This CWA is effective upon signature by both parties and expires on [enter Date]. Time is of the essence.

**CWA COMPLETION:** Contractor shall commence performance hereof when directed to do so by PG&E and Work shall be completed by the completion date of [enter Date].

**CONSIDERATION:** As full consideration for satisfactory performance of the Work under this CWA by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E CWA Change Order, fully executed by both PG&E and Contractor.

**TOTAL:** [enter total dollar amount and appropriate language based on pricing method for Work]

THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT WORK AUTHORIZATION.

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: [enter FIRM NAME HERE] | |
|---|---|---|---|
| Signature | | Signature | |
| Name | [enter Name] | Name | |
| Title | [enter Title] | Title | |
| Date | | Date | |

Case: 19-30088   Doc# 1744-10   Filed: 04/29/19   Entered: 04/29/19 13:43:30   Page 13 of 53



| ADMINISTRATION | | | |
|---|---|---|---|
| **PG&E Negotiator** | [enter Name] | **Contractor Represent** | |
| **Phone** | [enter #] | **Phone** | |
| **Email** | [enter Address] | **Email** | |
| **Accounting Reference** | [enter Account # if known or Delete] | | |
| **PG&E Work Supervisor:** | [enter Name] | **Phone:** [enter #] | |
| **INVOICE INSTRUCTIONS**: Contractor shall send invoices for each payment when due, showing the CWA number, to: PACIFIC GAS AND ELECTRIC COMPANY | **Send ORIGINAL Invoice to:** | PG&E Accounts Payable* PO Box 7760 San Francisco, CA 94120-7760 | |
| | **Send COPY of Invoice to:** | [Name] [Street Address/Mail Code] [City, State  Zip Code] | |
| | For information regarding invoice status, call PG&E's Paid Help Line at (800) 756-PAID (7243) or go to AP Web Reporting site at www.pge.com/actpay. | | |
| | **\*Note**:  Contractors using the Ariba System do not need to mail a copy of the invoice to PG&E. | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| **Distribution Date** | | |
| **Distribution of Copies:** | ☐ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☐ Contractor (Signed Original Copy) |
| | ☐ Work Supervisor | ☐ Manager |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |
| | | |



## Attachment 2– Monthly Forecast Template

GEI

CWA #

CWA Project Name

CASH FLOW - Sample

| TASK | % Complete | Previous Billing: | MONTH NUMBER* | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 01 | 02 | 03 | 04 | 05 | 06 | 07 | 08 | 09 | 10 | 11 | 12 | |
| | | | | | | | | | | | | | | | |
| Design | 0% | $0 | $0 | $0 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $200,000 |
| Procurement | --- | | | | | | | | | | | | | | $   - |
| Permitting | --- | | | | | | | | | | | | | | $   - |
| Construction | --- | | | | | | | | | | | | | | $   - |
| Closeout | 0% | $0 | | | | | | | | | | | | | $   - |
| Total | 0% | $   - | $   - | $   - | $20,000 | $ 20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $   200,000 |

* Month Number from Start Date; additional month columns can be added

| | |
|---|---|
| **PROJECT START DATE** | 02/28/11 |
| **PROJECT COMPLETION DATE** | 12/31/11 |
| **CWA TOTAL** | $200,000 |
| **CURRENT YEAR FORECAST** | $200,000 |

Note:

| Distribution: | Name | LAN ID |
|---|---|---|
| PG&E RE | | |
| PG&E PM | | |
| PG&E Analyst | | |
| Area | NAH | |

Case: 19-30088    Doc# 1744-10    Filed: 04/29/19    Entered: 04/29/19 13:43:30    Page 15 of 53

# GEI Schedule of Prices
# PG&E MSA
# 2018-2019

| | Title | Description | Base term rates |
|---|---|---|---|
| 1 | Staff Professional Grade 1 | Bachelor's degree, 0-3 yrs. experience | $107.58 |
| 2 | Staff Professional Grade 2 | Master's degree, 0-3 yrs. experience or bachelor's degree, 3 to 6 yrs. experience | $118.56 |
| 3 | Project Professional Grade 3 | Master's degree, 3-6 yrs. experience or bachelor's degree, 6 to 9 yrs. experience | $131.28 |
| 4 | Project Professional Grade 4 | Master's degree, 6-9 yrs. experience or bachelor's degree, 10+ yrs. experience | $145.62 |
| 5 | Senior Professional Grade 5 | Master's or bachelor's degree, 10+ yrs. experience | $162.95 |
| 6 | Senior Professional Grade 6 | Master's or bachelor's degree, 15+ yrs. experience | $197.47 |
| 7 | Senior Professional Grade 7 | Master's or bachelor's degree, 15+ yrs. experience | $228.17 |
| 8 | Senior Consultant Grade 8 | Master's or bachelor's degree, 20+ yrs. experience | $256.15 |
| 9 | Senior Technical Consultant Grades 9 and 10 | Master's or bachelor's degree, 20+ yrs. experience | $256.15 |
| 11 | Senior CADD Drafter/Designer | | $128.67 |
| 12 | CADD Drafter/Designer | | $117.08 |
| 13 | Senior Technician | | $97.76 |
| 14 | Lab/field Technician | | $97.76 |
| 15 | Word Processor, Administrative Staff | | $97.76 |
| 16 | Office Aide | | $77.97 |

Note: *= *These rates apply to the term of the contract amendment. These rates for 2020-2021 of the contract and will be escalated by a fixed 1.5%.*

Mark-up will be cost plus 6% for outside subcontractors, reproduction, and travel expenses.

September 14, 2018

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services          Attachment 2 - Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 1 of 36

## TABLE OF CONTENTS

PAGE

1.  DEFINITIONS ................................................................................................................................ 1
2.  PERFORMANCE OF THE WORK ................................................................................................ 1
3.  BILLING AND PAYMENT ............................................................................................................. 3
4.  DELIVERABLES AND USE RIGHTS ........................................................................................... 6
5.  WARRANTY .................................................................................................................................. 7
6.  CONFIDENTIALITY AND DATA SECURITY ................................................................................ 7
7.  INDEMNIFICATION, WITHHOLDING, AND LIMITATION OF LIABILITY .................................... 8
8.  INSURANCE REQUIREMENTS ................................................................................................... 9
9.  FORCE MAJEURE; CANCELLATION AND TERMINATION OF CONTRACT ............................ 11
10. REQUIREMENTS AND POLICIES .............................................................................................. 11
11. GENERAL PROVISIONS ............................................................................................................ 15

Each of the following documents is attached hereto and incorporated herein:

EXHIBIT DATA-1        Confidentiality and Data Security (3 pages)
EXHIBIT DATA-1A      Non-disclosure and Use of Information Agreement ("NDA") (1 page)

EXHIBIT 1       Prime Supplier Subcontracting Plan Instructions (1 page)
EXHIBIT 1A      Prime Supplier Subcontracting Plan (1 page)
EXHIBIT 2       PG&E's Supply Chain Responsibility Policy  (1 page)
EXHIBIT 2A      Policy Regarding Utilization of Small Business Concerns and Small
                Disadvantaged Business Concerns   (1 page)
EXHIBIT 3       Injury and Illness Prevention Program Compliance Certificate (1 page)
EXHIBIT 4       PG&E Drug and Alcohol Abuse and Testing Policy (1 page)
EXHIBIT 5       PG&E Contractor Document Retention and Production Requirements (1 page)
EXHIBIT 5A      Document and Data List (1 page)
EXHIBIT 6       Audit Rights (1 page)
EXHIBIT 7       NERC Requirements (2 pages)
EXHIBIT 7A      PG&E NERC CIP Program Non-Employee Attestation Form (1 page)
EXHIBIT 8       PG&E Supplier Code of Conduct Acknowledgement (1 page)

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services ... Attachment 2 ... Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 2 of 36

1. DEFINITIONS

   1.1 "Bidder": The person or entity submitting a Proposal to PG&E to perform Work under this Contract or a CWA.

   1.2 "Change Order": A revision or modification to the Contract reflected on a PG&E Field Order form or a PG&E Change Order form.

   1.3 "Consultant" or "Contractor": The person or entity entering into this Contract with PG&E to perform the Work.

   1.4 "Contract": This executed master service agreement between PG&E and Consultant, including the cover page signed by each Party, each CWA, the Specific Conditions and these General Conditions, together with any and all attachments and exhibits, all of which together shall constitute the Contract.

   1.5 "CPUC": The California Public Utilities Commission.

   1.6 "Customer(s)": PG&E's residential and commercial utility customers.

   1.7 "CWA": Contract Work Authorization. If specified in the Specific Conditions of this Contract, Work may be assigned to Consultant through CWAs which are signed by both PG&E and the Consultant. The terms and conditions of this Contract, as it may be modified or amended, shall apply independently to each CWA executed by both Parties.

   1.8 "Day": Unless otherwise specified, reference to a "day" means a calendar day.

   1.9 "FERC": The United States Federal Energy Regulatory Commission.

   1.10 "Malicious Code": Collectively, any malicious or unauthorized code, scripts, routines or techniques (including without limitation any virus, spyware, ransomware or other malware) that is designed to erase data or programming, or infect, impair, modify, record, take control of, disrupt, damage, destroy, disable, shut down or permit or cause unauthorized access to or misuse of a computer system or any component thereof.

   1.11 "NERC": North American Electric Reliability Corporation, which enforces reliability standards with all users, owners and operators of the bulk power system in the United States.

   1.12 "Party" or "Parties": In the singular, PG&E or Consultant, and in the plural, both PG&E and Consultant.

   1.13 "PG&E": Pacific Gas and Electric Company, a California corporation.

   1.14 "PG&E('s) Representative": The PG&E work supervisor assigned to the project and identified in the Contract, the applicable CWA, or in writing by PG&E.

   1.15 "Proposal": Bidder's firm bid quotation and package to perform Work under this Contract or a CWA.

   1.16 "Subcontract": An agreement between Consultant and Subcontractor or between Subcontractors at any level for a portion of the Work under this Contract.

   1.17 "Subcontractor": Party or parties entering into a Subcontract with Consultant or another Subcontractor to perform a portion of the Work covered by the Contract.

   1.18 "Work" or "Services": All services (including but not limited to professional, engineering, analytical and other consulting services), labor, supervision, materials, equipment, actions and other requirements to be performed and furnished by Consultant under this Contract.

2. PERFORMANCE OF THE WORK

   2.1 INDEPENDENT CONTRACTOR: In assuming and performing the obligations of this Contract, Consultant is an independent contractor and shall not be eligible for any benefits which PG&E may provide its employees, except as expressly provided for in this Contract. All persons, if any, hired by Consultant shall be employees or Subcontractors of Consultant and shall not be construed as employees or agents of PG&E in any respect.

   2.2 NO GUARANTEE OF WORK: THIS IS NOT AN EXCLUSIVE CONTRACT. THIS CONTRACT DOES NOT GUARANTEE THE CONSULTANT ANY WORK NOR IS THERE ANY GUARANTEE AS TO ANY VOLUME OR DURATION OF WORK. PG&E EXPRESSLY RESERVES ALL ITS RIGHTS, INCLUDING BUT NOT LIMITED TO THE RIGHT TO CONTRACT WITH THIRD PARTIES FOR THE PERFORMANCE OF WORK

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7

Consulting Services        Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
05/23/2018 njs5                                                                          MSA No. C11056, Page 3 of 36

OF THE TYPE CONTEMPLATED BY THIS CONTRACT; THE RIGHT TO REQUEST PROPOSALS FROM OTHERS WITH OR WITHOUT REQUESTING PROPOSALS FROM CONSULTANT AND THE UNRESTRICTED RIGHT TO PERFORM THE WORK WITH PG&E'S OWN EMPLOYEES.

2.3    PRIOR WORK: Services performed by Consultant pursuant to PG&E's authorization, but before the execution of this Contract, shall be considered as having been performed subject to the provisions of this Contract.

2.4    ADDITIONAL WORK OR CHANGES IN WORK

   2.4.1    PROCEDURE FOR ADDITIONAL WORK: BEFORE PROCEEDING WITH ANY WORK INVOLVING POSSIBLE CLAIMS FOR EXTRA COMPENSATION NOT SPECIFIED IN THE CONTRACT, CONSULTANT SHALL SUBMIT IN WRITING TO PG&E A DETAILED ESTIMATE OF THE COST FOR SUCH WORK. Consultant shall provide PG&E with a detailed breakdown and estimated cost of such anticipated contract work, including extensions and Change Orders, as follows. For each identifiable task, key milestone and deliverable, Consultant shall state: (a) description of work to be performed; (b) estimated cost; and (c) expected completion date.

   2.4.2    APPROVAL NEEDED FOR ADDITIONAL WORK: Consultant shall not proceed with any such additional work prior to receiving written authorization or a Change Order issued to Consultant by PG&E. CONSULTANT AGREES THAT ALL COSTS FOR ANY SUCH MODIFICATION OR CHANGE THAT IS PERFORMED BY CONSULTANT WITHOUT PG&E'S PRIOR WRITTEN APPROVAL SHALL BE AT CONSULTANT'S SOLE RISK AND EXPENSE.

   2.4.3    PG&E CHANGES TO WORK: PG&E reserves the right to make such changes in Work, specifications, or level of effort, as may be necessary or desirable, and any difference in Contract price resulting from such changes shall be approved in writing by PG&E before the Work is begun.

2.5    REPLACEMENT OF PERSONNEL

   2.5.1    BY CONSULTANT: Consultant acknowledges that the removal, replacement, or reassignment of the individuals who are initially assigned by Consultant to perform Work under this Contract may result in serious harm and costs to PG&E. Consultant will make reasonable efforts to maintain continuity in its staffing and will provide PG&E with ample notification if any such changes are made. Consultant agrees not to remove, replace or reassign such individuals without the approval of PG&E, whose approval shall not be unreasonably withheld or delayed. Consultant agrees not to charge PG&E for the time spent in familiarizing replacement personnel with the Work.

   2.5.2    BY PG&E: Consultant shall employ personnel qualified to perform the Work. If PG&E finds Consultant's employee to be unsatisfactory, Consultant shall replace that employee within 24 hours of notification. For the avoidance of doubt, this provision addresses only the assignment of personnel to PG&E jobs; it does not require the Consultant to terminate the employment of any employee replaced under this section, nor does PG&E endorse or approve, either expressly or impliedly, Consultant's termination of any such employee.

2.6    TRAINING RECORDS: Consultant shall maintain records demonstrating that its personnel have completed training, as well as any associated assessments required by law, regulation, certifying organization, or PG&E, required to perform Work under this Contract. Consultant shall also maintain copies of certificates, licenses, and other materials demonstrating that its personnel are qualified to safely and correctly complete the Work. Training and qualification records must be provided to PG&E within 48 hours of request.

2.7    IMPORTANCE OF SAFETY: Consultant recognizes and agrees that safety is of paramount importance in the performance of the Work and that Consultant is responsible for performing the Work in a safe manner. Consultant shall plan and conduct the Work, and shall require all Subcontractors to perform their portion of the Work, in accordance with Consultant's safety program and with all applicable local, state and federal rules, regulations, codes, and ordinances to safeguard persons and property from injury. Consultant further agrees to provide necessary training to its employees and Subcontractors to inform them of the foregoing safety and health rules and standards. Should PG&E at any time observe Consultant, or any of its Subcontractors, performing the Work in an unsafe manner, or in a manner that may, if continued, become unsafe, then PG&E shall have the right (but not the obligation) to require Consultant to stop the Work

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services    Attachment 3, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 4 of 36

affected by the unsafe practice until Consultant has taken corrective action so that the Work performance has been rendered safe.

2.8    SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY: Consultant shall plan and conduct its Work to safeguard persons and property. Consultant shall direct performance of Work in compliance with reasonable safety and work practices and applicable federal, state and local laws, rules and regulations, including but not limited to, "Occupational Safety and Health Standards" promulgated by the U.S. Secretary of Labor and the California Division of Occupational Safety and Health. PG&E may designate safety precautions in addition to those in use or proposed by Consultant. PG&E reserves the right to inspect the Work and to halt Work to ensure compliance with reasonable and safe work practices and with applicable federal, state, and local laws, rules and regulations. Neither the requirement that Consultant follow said practices and applicable laws, rules and regulations, and any special instructions given by PG&E nor the adherence thereto by Consultant shall relieve Consultant of the responsibility to maintain safe and efficient working conditions

2.9    LAWFUL DISPOSAL OF SAMPLED AND OTHER WASTE: If the scope of Work under this Contract requires Consultant to perform hazardous waste site investigations, the following provisions shall apply:

   2.9.1    PG&E will be responsible for disposal of onsite samples. Charges for disposal of samples taken offsite for testing are included in the Consultant's proposed rates.

   2.9.2    Consultant shall lawfully dispose of all test samples after completion of the required tests, along with any residue or byproducts of the testing process. Consultant shall comply with all of the existing federal, state and local laws, rules, regulations, and/or ordinances applicable to the services to be performed, including but not limited to, to the extent applicable, the Code of Federal Regulations, Title 40, Part 260 *et seq*. and the California Health and Safety Code, Section 25, 100 *et seq*., and the Title 22, California Code of Regulations, Section 66,000 *et seq*.

2.10   CORRECTIVE ACTION PLAN: Except as otherwise provided in this Contract, Consultant shall meet or achieve each milestone or deliverable for the Work by the applicable date. If PG&E reasonably believes that Consultant is not making substantial progress, or if Consultant fails to achieve a milestone or complete a deliverable by the applicable date, and such failure is not attributable to reasons entitling Consultant to a Contract Change Order, then Consultant shall provide for PG&E's approval a corrective action plan that will demonstrate achievement at the earliest possible date to minimize delay of the Work schedule. Such corrective action plan shall include, without limitation, reasonable evidence of increases in Consultant's work force, increases in the number of shifts, overtime operations, additional days of Work per week, and such other evidence (including schedule analysis) as necessary for the timely completion of the Work. Upon receipt of PG&E's written concurrence, Consultant shall diligently comply with such corrective action plan; provided, however, that PG&E's concurrence shall not affect any of PG&E's rights or Consultant's obligations under this Contract.

3.   BILLING AND PAYMENT

   3.1    LUMP SUM WORK: The following provisions shall apply to all Work performed on a lump sum basis.

      3.1.1    INVOICE SUBMITTAL INSTRUCTIONS: Consultant shall submit a monthly invoice to PG&E for compensation earned in the preceding calendar month. Consultant shall submit invoices to PG&E in accordance with the requirements of this Section and with the instructions printed in the Contract or Contract Change Order. The Consultant shall include the Contract number and, if applicable, the Contract Work Authorization number, on the invoice.

      3.1.2    INVOICE DEFICIENCIES: Should PG&E determine that Consultant's invoice does not meet the invoicing requirements of this Contract, PG&E will notify Consultant of the deficiencies or return the invoice to Consultant with noted deficiencies. Consultant shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Consultant, Consultant shall resubmit a corrected invoice.

      3.1.3    PG&E PAYMENT: PG&E will pay Consultant monthly for Work performed on a lump sum basis, in the full amount of the cost of the Work performed less any negotiated percentage withholding, computed in accordance with the terms of the Contract, and satisfactorily completed during each month. All payments will be made, subject to PG&E approval after receipt of a correct invoice. Payment of the balance of the amount will occur at the end of the Contract after all Work is satisfactorily completed.

3.1.4 FINAL INVOICE: The final invoice shall be marked "FINAL" and must be received by PG&E within 60 days after completion of the Work. PG&E will not be liable for payment of any late invoices that are received by PG&E beyond the 60 day period.

3.1.5 BILLING RATES AND CONFLICTS: Consultant's lump sum price(s) stated in the Contract fee schedule shall not change during the term of this Contract without prior written approval by PG&E. The lump sum price(s) shall be inclusive of all Consultant's overhead costs, administrative and general fees, and profit. To the extent such lump sum price(s), or any invoice or other billing instrument as provided for in this Article 3, "Billing and Payment", contains terms and conditions which are in addition to or in conflict with the terms and conditions in this Contract, whether Specific or General, those terms and conditions in the fee schedule, invoice, or other billing instrument shall be null and void.

3.2 TIME AND MATERIALS AND UNIT PRICE WORK: The following provisions shall apply to all Work performed on a time and materials or unit price basis.

3.2.1 INVOICE SUBMITTAL INSTRUCTIONS: Consultant shall submit invoices to PG&E in accordance with the requirements of this Section and with the instructions printed in the Contract or Contract Change Order. The Consultant shall include the Contract number and, if applicable, the Contract Work Authorization number, on the invoice.

3.2.2 MONTHLY INVOICE: Consultant shall submit a monthly invoice to PG&E for review and approval of compensation earned and reimbursable expenses incurred in the preceding calendar month. Each invoice shall be broken down by Contract tasks; for each task the invoice shall include the following information:

(i) STATUS: Task description, estimated cost to complete, total cost incurred to date, percentage of Work completed and date completed.

(ii) LABOR: Employee name, employee labor classification, employee salary rate, number of hours spent and billing rate.

(iii) REIMBURSABLE EXPENSES: Unit cost and quantity of each item of expense.

3.2.3 BILLING RATES AND CONFLICTS: Consultant's billing rates or fees stated in the Contract fee schedule shall not change during the term of this Contract without prior written approval by PG&E. These billing rates and fees shall be inclusive of all Consultant's overhead costs, administrative and general fees, and profit. To the extent such fee schedule, or any invoice or other billing instrument as provided for in this Article 3, "Billing and Payment," contains terms and conditions which are in addition to or in conflict with the terms and conditions in this Contract, whether Specific or General, those terms and conditions in the fee schedule, invoice, or other billing instrument shall be null and void.

(i) Overtime hours shall be billed at straight-time rates, unless otherwise approved by PG&E prior to the use of overtime, and limited to those hours for which Consultant's employee is actually compensated. If applicable, Consultant's overhead cost shall not be applied to the premium portion of the overtime cost.

(ii) Individuals other than employees of Consultant (nonemployees) retained by Consultant, such as Subcontractors, outside consultants, or agency personnel, shall not be billed as Consultant's employees and shall be shown separately on the invoice. Such nonemployees working in Consultant's established office under Consultant's direct supervision shall be billed to PG&E at the cost charged to Consultant multiplied by 1.05. All other nonemployees shall be billed at Consultant's actual, direct cost.

3.2.4 EXPENSES: All reimbursable expenses shall be reasonable, ordinary, and necessary and shall be billed at cost. All reimbursable expenses other than those listed in this Article shall be authorized in writing by PG&E's authorized representative prior to expenditure by the Consultant. PG&E will not reimburse Consultant for any expenses not so approved.

(i) Overhead costs are Consultant's responsibility and will not be reimbursed as expenses. Overhead costs include but are not limited to the following: Miscellaneous costs, such as routine telephone communications, routine copying, electronic mail, facsimile transmissions, computer time and use of in-house technical software.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services     Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 6 of 36

3.2.5 TRAVEL TIME AND COSTS: All air travel costs within or outside of the United States will be reimbursed only on a coach fare basis and all rental car costs will be reimbursed only on a subcompact rate basis. Travel time to and from the Work site shall be at Consultant's expense.

3.2.6 MILEAGE AND USE OF PERSONAL CAR: If Consultant uses its personal car in the performance of Work under the Contract and such use is included as a reimbursable expense, normal commuting such as trips from home to first business stop and from the last business stop to home represents personal use of car and shall not be reimbursed. All other reimbursable mileage shall be at the current IRS rate.

3.2.7 SUPPORTING DOCUMENTATION: For each expense item over $100, supporting data and documentation shall be furnished with the invoice. Copies of detailed expense reports to support travel costs shall be attached to the invoice. Although travel receipts need not be attached, Consultant shall retain them for the term of the audit period.

    (i) Each invoice shall be assembled such that attached supporting documentation shall be placed in the order listed in the invoice, and each item of expense chargeable to PG&E shall be highlighted or clearly delineated.

3.2.8 INVOICE DEFICIENCIES: Should PG&E determine that Consultant's invoice does not meet the invoicing requirements of this Contract, PG&E will notify Consultant of the deficiencies or return the invoice to Consultant with noted deficiencies. Consultant shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Consultant, Consultant shall resubmit a corrected invoice.

3.2.9 FINAL INVOICE: The final invoice shall be marked "FINAL" and must be received by PG&E within 60 days after completion of the Work. PG&E will not be liable for payment of any late invoices that are received by PG&E beyond the 60 day period.

3.2.10 UNIT PRICE BASIS: When invoices include Work performed on a unit price basis, Consultant shall attach to the invoice a list stating the unit price item numbers, unit prices, quantities, dollar amounts and other information as required to identify the Work.

3.2.11 PG&E PAYMENT: Payment by PG&E to Consultant for Work performed on a time and materials or unit price basis will be monthly, in the full amount due for Work performed less any negotiated percentage withholding, computed in accordance with the terms of the Contract, and satisfactorily completed during each month including reimbursable expenses, if any. Payment of any remaining balance of the amount due will occur at the end of the Contract after all Work is satisfactorily completed.

3.3 PAYMENT TERMS: Unless otherwise specified herein, the payment terms for this Contract are 2% 15 Dynamic Net 45. PG&E's payment terms are a dynamic sliding scale early payment discount. The 2% discount applies when PG&E pays the invoice within 15 days. The discount decreases proportionally each day thereafter until Day 45, the net due date, when zero discount applies. All timelines are calculated from the date a correct invoice is received and accepted by PG&E's Accounts Payable department in San Francisco.

3.3.1 The chart below illustrates the applicable dynamic discount. The dynamic discount applies to every day in the payment period, regardless of whether or not the payment date is included in the chart below. "Day 0" is the date the invoice has been submitted to and accepted by PG&E's Accounts Payable department.

| Payment Date | Applicable Discount % |
|---|---|
| 0 - 15 | 2.00 |
| 30 | 1.00 |
| 45 | 0.00 |

3.4 INVOICE INSTRUCTIONS: Invoices must be submitted in accordance with the Contract requirements and include the purchase order number and the applicable purchase order line item number(s). All timelines for payment of invoices run from the date a correct invoice is received by PG&E's Accounts Payable

Department. All invoices submitted to and accepted by PG&E's Accounts Payable department by 6:00 PM on a business day are considered received that same day.

3.4.1 ELECTRONIC INVOICES: Electronic invoices submitted through PG&E's electronic invoicing system and accepted by PG&E's Accounts Payable department **after** 6:00 PM may not be considered received until the next business day.

3.4.2 PAPER INVOICES: Paper invoices must be submitted to PG&E's Accounts Payable department at the following address:

PG&E Accounts Payable
PO Box 7760
San Francisco, CA 94120-7760

INVOICES SUBMITTED TO ANY OTHER OFFICE, LOCATION OR ADDRESS, INCLUDING A LOCAL PG&E OFFICE OR THE DEPARTMENT IN CHARGE OF THE WORK, ARE **NOT** CONSIDERED RECEIVED FOR PAYMENT PURPOSES. The discount and net due date timelines for invoice payment **DO NOT BEGIN** until the receiving location has forwarded a correct invoice to PG&E's Accounts Payable department and the invoice has been received and accepted.

4. DELIVERABLES AND USE RIGHTS

4.1 OWNERSHIP OF DELIVERABLES: PG&E shall own all data, reports, information, manuals, computer programs or other written, recorded, photographic or visual materials, or other deliverables produced in the performance of this Contract. Consultant shall retain no ownership, interest, or title in them except as may otherwise be provided in the Contract.

4.2 PROPRIETARY RIGHTS: PG&E shall own all proprietary rights, including, but not limited to, exclusive patent and copyright rights, in and to any and all inventions, software, works of authorship, designs or improvements of equipment, tools or processes, including the items referenced in the Section titled "Ownership of Deliverables" (collectively, the "Developments"), conceived, developed, implemented, or produced by Consultant in the performance of this Contract, and Consultant shall retain no ownership, interest or title in or to them except as otherwise provided in this Contract. Consultant agrees to assign and hereby assigns all its right, title and interest in and to the patents, copyrights and other intellectual property rights in the Developments and hereby agrees to fully cooperate and to do all things reasonably necessary to allow PG&E to claim sole ownership, including the execution of documents deemed necessary by PG&E.

4.3 USE AND REPRODUCTION RIGHTS: If and to the extent that Consultant retains any preexisting rights in any materials furnished hereunder, including Developments, Consultant hereby grants to PG&E the irrevocable, perpetual, non-exclusive, worldwide, royalty free right and license to (i) make, use, execute, reproduce, display, perform, distribute copies of, and prepare derivative works based upon such preexisting rights and derivative works thereof in connection with PG&E's business and (ii) authorize others to do any or all of the foregoing in connection with PG&E's business. Any claims of Consultant to proprietary rights in materials furnished hereunder must be expressly set forth in this Contract or shall have been previously disclosed to PG&E in writing.

4.4 COPYRIGHT REGISTRATION: Notice of PG&E copyright ownership shall be placed by Consultant on all reports, information or instructional manuals, computer programs or other written, recorded, photographic or visual materials or other deliverables to which PG&E has the right of such ownership as provided in this Contract. Such notice shall be placed on the materials in a manner and location as to give reasonable notice of the claim of copyright, and shall consist of the copyright symbol or the word "Copyright" followed by the year in which the material is produced and the words "Pacific Gas and Electric Company". Application for copyright registration shall be the responsibility of PG&E.

4.5 ROYALTIES AND LICENSE FEES: Royalties, license fees or other charges for patents, copyrights and other intellectual property for designs, processes, technology, published or unpublished data, information or technical materials including, but not limited to, manuals, computer programs, or other deliverables furnished by Consultant, or for processes or methods employed by Consultant in performing the services, shall be included in the Contract price.

4.6 DELIVERY AND RETENTION OF RECORDS: To the extent PG&E does not otherwise specifically request delivery of records or results, Consultant agrees to retain all records and results of Work performed under this Contract for a period of not less than three years from the end of the Contract term. At PG&E's request

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7

Consulting Services — Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
05/23/2018 njs5
MSA No. C11056, Page 8 of 36

Consultant will deliver a copy of any or all original field notes, investigative notes, tests, photographs, records, calculations, summaries, reports, and records produced and collected in the course of the Work performed under this Contract.

4.7 PUBLIC RELEASE OF RESULTS: Consultant agrees not to release any results of the Work without first providing PG&E with the material sought to be released and a description of the publication for PG&E's prior approval. Consultant further agrees that no release shall present any material findings not reasonably inferable from the data. Any public release shall acknowledge PG&E's sponsorship of the Work.

4.8 THIRD PARTY LICENSES: Consultant represents and warrants that it shall comply (and ensure that its personnel and subcontractors comply) with all third party licenses, terms of use, policies and procedures that apply to or otherwise govern access to and/or use of any third party materials made available by PG&E to Consultant under this Contract.

4.9 PUBLIC TESTIMONY: It is further agreed between the Parties that, if requested by PG&E, Consultant shall provide testimony before any federal, state or local court, regulatory body or any other public agency to substantiate any Work performed or data, reports, or materials supplied to PG&E. Reasonable fees for such testimony will be negotiated at that time.

4.10 CONSULTANT'S USE OF PG&E PROPERTY: All records, reports, computer programs, written procedures and similar materials, documents or data, in whatever form, provided by PG&E for Consultant's use in the performance of Work under this Contract shall remain the confidential property of PG&E and shall be returned to PG&E immediately upon completion of Consultant's use for the performance of the Work or earlier upon the request of PG&E. In the alternative, Consultant may destroy such information, provided an officer of Consultant certifies the destruction in writing to PG&E.

4.11 NO PUBLICITY: Consultant shall not include PG&E's name, any reference to this Contract, or any reference to PG&E's purchase or use of any products or services provided by Consultant in Consultant's published customer list or in other publicity or advertisement, including internet, without the prior written consent of an officer of PG&E. The fact that the Parties have entered into this Contract does not constitute, nor does it imply in any way, an endorsement of Consultant by PG&E, and Consultant will not state or imply that PG&E endorses, recommends, or vouches for Consultant in any form of written, verbal, or electronic advertisement, communication, or any other business development effort.

5. WARRANTY

5.1 Consultant warrants to PG&E that the Work under this Contract shall be performed with the degree of skill and care that is required by current, good and sound professional procedures and practices, and in conformance with generally accepted professional standards prevailing at the time the Work is performed so as to ensure that the services performed are correct and appropriate for the purposes contemplated in this Contract and related specifications. Consultant shall use appropriate numbers of personnel with suitable training, education, experience and skill to perform the Work in accordance with the Contract requirements.

6. CONFIDENTIALITY AND DATA SECURITY

6.1 CONFIDENTIALITY: In the course of performing the Work, Consultant may have access to confidential commercial or personal information including, but not limited to, Customer energy usage or billing information: PG&E Data as defined in **Exhibit DATA 1**, Confidentiality and Data Security; information on California residents or PG&E Customers; information on PG&E employees and operations, information on technological, ratemaking, legislative and personnel matters and practices; and reports, strategies, analyses, specifications, records, software, data, computer models, and related documentation of PG&E, its parent company, subsidiaries, affiliates, or third parties (collectively, "Confidential Information"). Consultant agrees to use such Confidential Information strictly for the Work under this Contract, to restrict access to Confidential Information to those of its personnel with a need to know the information in order to perform the Work, and not to disclose any such Confidential Information or otherwise make it available to any other person or entity, including but not limited to any affiliate of PG&E that produces energy or energy-related products or services, without the prior written approval of PG&E. Consultant shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information but in no case less than reasonable measures, to protect any personal information or Confidential Information from unauthorized access, destruction, use, modification, or disclosure. The requirements of **Exhibit DATA 1**, Confidentiality and Data Security, and **Exhibit DATA 1A**, Non-Disclosure and Use of Information Agreement, attached, are hereby incorporated into the Contract. Consultant shall ensure that each of its

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services — Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 9 of 36

employees and Subcontractors who will receive Confidential Information under this Contract first executes a copy of **Exhibit DATA 1A**.

6.2 SECURITY: Consultant hereby represents, warrants and covenants to PG&E that the Work, including any hardware, software, firmware, equipment and other deliverables, does not and will not contain or make available any Malicious Code. Without limiting any of PG&E's rights and remedies with respect thereto (all of which are expressly reserved), if Consultant detects or is made aware of Malicious Code in the Work, Consultant shall notify PG&E immediately, remove such Malicious Code, remediate the effects of such Malicious Code, and restore any lost or corrupt data if applicable.

6.3 CYBER PROTECTION FOR PROGRAMMABLE DEVICES: The following requirements apply to any deliverables under this Contract containing software, firmware, microcode or other programmable features. These requirements apply on a continuing basis for the longer of five years and the expected service life of the deliverables as disclosed by Consultant in its product descriptions (the "**Service Life**"):

   6.3.1 MALICIOUS CODE: Consultant hereby represents, warrants, and covenants to PG&E that upon delivery to PG&E the deliverables will not contain or make available any Malicious Code. Without limiting any of PG&E's rights and remedies with respect thereto (all of which are expressly reserved), if Consultant detects or is made aware of Malicious Code in the deliverables during the Service Life, Consultant shall immediately notify PG&E. If the deliverables are not yet in use by PG&E, Consultant shall remove such Malicious Code, remediate its effects and certify to PG&E that the Malicious Code has been removed. If the deliverables are in use by PG&E, Consultant shall assist PG&E to remove the Malicious Code in accordance with the Section below titled "Security Updates and Support."

   6.3.2 CYBERSECURITY SPECIFICATIONS: Consultant hereby represents, warrants, and covenants that the deliverables comply with the cybersecurity features and functions, if any, described in the associated specifications.

   6.3.3 SECURITY VULNERABILITIES AND TESTS: Consultant acknowledges that the deliverables may be subject to security testing by PG&E or its security testing consultants before the deliverables are accepted by PG&E as well as subsequently, at any time during their Service Life. If the deliverables are integrated with products supplied by third parties, the third party suppliers may also be involved in the testing process. Consultant shall fully cooperate in the conduct of such tests. If requested by PG&E, such cooperation shall include the following: (i) providing source code and other program documentation (which PG&E shall use solely for testing purposes), and (ii) providing a representative with suitable technical expertise to participate in the tests. The conduct and results of the tests, including any security vulnerabilities that are identified in the course of the tests, shall be PG&E Confidential Information. Any security vulnerabilities that are identified in such tests shall be resolved in accordance with the following Section, titled Security Updates and Support.

   6.3.4 SECURITY UPDATES AND SUPPORT: Consultant shall maintain a technical support line with access to PG&E so that any security-related issues can be addressed promptly. Consultant shall notify PG&E without delay if Consultant detects or is made aware of any Malicious Code or security vulnerability in the deliverables during their Service Life. If Malicious Code or security vulnerability is identified during the Service Life, Consultant shall provide an update or revision to the deliverables to remove the Malicious Code and/or cure the vulnerability (a "**Security Patch**") as soon as possible and at no charge to PG&E. Consultant shall assist PG&E to implement the Security Patch if requested by PG&E and shall reimburse PG&E for the cost of implementing the Security Patch.

7. INDEMNIFICATION, WITHHOLDING, AND LIMITATION OF LIABILITY

   7.1 INDEMNIFICATION

      7.1.1 Consultant shall indemnify, hold harmless and defend PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any: (i) injury to or death of persons, including but not limited to employees of PG&E or Consultant; (ii) injury to property or other interests of PG&E, Consultant, or any third party; (iii) violation of local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; (iv) strict liability imposed by any law or regulation; (v) a breach of its confidentiality obligations under Article 6; (vi) delay or

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7

Consulting Services     Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
05/23/2018 njs5                                                                MSA No. C11056, Page 10 of 36

failure to pay any Subcontractor, including but not limited to any demands for payment, invoices, or liens; or (vii) delay or failure to pay any employees, laborers, or other personnel of Consultant or any Subcontractor the compensation, monies, wages, benefits or other payment due or allegedly due; so long as such injury, violation, or strict liability (as set forth in (i) - (vii) above) arises from or is in any way connected with Consultant's performance of, or failure to perform, this Contract, however caused, regardless of any strict liability or negligence of PG&E, whether active or passive, excepting only such loss, damage, cost, expense, liability, payment, strict liability, or violation of law or regulation for which indemnity is not allowed under applicable law.

7.1.2   Consultant acknowledges that any claims, demands, losses, damages, costs, expenses, and liability that arise from or are in any way connected with the release or spill of any legally designated hazardous material or waste and arise from or is in any way connected with the Work performed under this Contract, are expressly within the scope of this indemnity. Likewise, the costs, expenses, and legal liability for environmental investigations, monitoring, containment, abatement, removal, repair, cleanup, restoration, remedial work, penalties, and fines arising from strict liability or the violation of any local, state, or federal law or regulation, attorney's fees, disbursements, and other response costs incurred as a result of such releases or spills are expressly within the scope of this indemnity.

7.1.3   Consultant shall, on PG&E's request, defend any action, claim, or suit asserting a claim which might be covered by this indemnity, using counsel acceptable to PG&E. Consultant shall pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees. To the extent necessary, each Party was represented by counsel in the negotiation and execution of this Contract.

7.2   TAX WITHHOLDING: Consultant represents and warrants that it will withhold all taxes, if any, which are required to be withheld under applicable law with respect to payments to persons hired by Consultant who perform services for PG&E. Consultant shall indemnify and hold PG&E harmless, on an after-tax basis, for any liability incurred by PG&E as a result of Consultant's failure to institute any such required withholding.

7.3   INFRINGEMENT PROTECTION: Consultant represents to PG&E that the material to be prepared under this Contract will not infringe upon the copyright, patent or license, or otherwise violate the proprietary rights, including trade secret rights, of any person or entity. Consultant agrees to indemnify and hold PG&E, its parent company, subsidiaries and/or affiliates, harmless from and against any and all liabilities, costs and damages arising out of any such infringement, and from any suit, demand or claim made against PG&E, its parent company, subsidiaries and/or affiliates, alleging any such infringement or violation. In addition to the foregoing, if there is such a suit, demand or claim, Consultant agrees, as soon as possible, to either procure for PG&E the right to continue using the material, replace the material with non-infringing material or modify it so it becomes non-infringing; provided, however that the replaced or modified material shall be equal to that contracted for hereunder and satisfactory to PG&E. Consultant further agrees to pay any judgment or reasonable settlement offer resulting from a suit, demand or claim, and pay any reasonable attorney's fees incurred by PG&E in defense against such suit.

7.4   LIMITATION OF LIABILITY: TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, PG&E SHALL NOT BE LIABLE UNDER ANY CIRCUMSTANCES, WHETHER IN CONTRACT, TORT, EQUITY, OR OTHERWISE, FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, PUNITIVE, OR EXEMPLARY DAMAGES, EVEN IF SUCH DAMAGES ARE FORESEEABLE, AND REGARDLESS OF WHETHER OR NOT PG&E HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS OR UNRECOVERED OVERHEAD AND, UNLESS EXPRESSLY AUTHORIZED IN ADVANCE IN WRITING AND SPECIFICALLY ASSUMED BY PG&E, COMMITMENTS TO THIRD PARTIES, SUCH AS SUBCONTRACTS, RENTAL OR LEASE AGREEMENT(S), AND PERSONAL SERVICES CONTRACTS.

8.   INSURANCE REQUIREMENTS

8.1   Consultant shall maintain the following insurance coverage. Consultant is also responsible for its Subcontractors maintaining sufficient limits of the appropriate insurance coverage.

8.1.1   WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY

(i)   Workers' Compensation insurance or self-insurance indicating compliance with any applicable labor codes, acts, laws or statutes, state or federal, where Consultant performs Work.

    (ii)    Employers' Liability insurance shall not be less than $1,000,000 for injury or death each accident.

8.1.2    COMMERCIAL GENERAL LIABILITY

    (i)    Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form, with no coverage deletions.

    (ii)    The limit shall not be less than $1,000,000 each occurrence/$2,000,000 aggregate for bodily injury, property damage and personal injury.

    (iii)    Coverage shall:  a) By "Additional Insured" endorsement add as insureds PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, agents and employees with respect to liability arising out of or connected with the Work performed by or for the Consultant.  (ISO Form CG2010 or equivalent is preferred).  If the Commercial General Liability policy includes a "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement:  "PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Consultant are additional insureds under a blanket endorsement."; b) Be endorsed to specify that the Consultant's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it.

8.1.3    BUSINESS AUTO

    (i)    Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile Liability, code 1 "any auto."

    (ii)    The limit shall not be less than $1,000,000 each accident for bodily injury and property damage.

8.1.4    PROFESSIONAL LIABILITY INSURANCE

    (i)    Errors and Omissions Liability insurance appropriate to the Consultant's profession. Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Contract.

    (ii)    The limit shall not be less than $1,000,000 each claim/$2,000,000 aggregate.

8.1.5    CYBER SECURITY AND PRIVACY LIABILITY INSURANCE

    (i)    Consultant shall obtain and maintain cyber risks insurance providing coverage for at least the following perils and losses: (a) unauthorized use of or access to a computer system containing or giving access to PG&E confidential information; (b) defense of any regulatory action involving a breach of privacy in connection with PG&E confidential information; (c) failure to protect PG&E confidential information from disclosure; and (d) costs of notifying affected individuals and providing credit monitoring for up to one year, whether or not required by applicable law.

    (ii)    The policy(s) shall have limits of liability of at least $5,000,000 per occurrence and $10,000,000 in the aggregate. If any deductible is applicable, such deductible shall not exceed $100,000, unless such increased deductible or retention is approved in advance by PG&E in writing.

    (iii)    PG&E, its affiliates, subsidiaries and parent company, and PG&E's directors, officers, agents and employees shall be named as additional insureds under this policy.  If the policy includes a "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement:  "PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Consultant are additional insureds under a blanket endorsement."

8.2    OTHER REQUIREMENTS

8.2.1    Consultant shall have all insurance in place before beginning any Work.  Upon request, Consultant shall furnish PG&E with certificates of insurance, declaration pages and endorsements (collectively,

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7

Consulting Services      Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
05/23/2018 njs5                                                                MSA No. C11056, Page 12 of 36

"Documentation") of all required insurance. Documentation shall be signed and submitted by a person authorized by that insurer to issue certificates of insurance and endorsements on its behalf.

8.2.2 The insurer shall deliver notification to PG&E in accordance with the policy provisions if any of the above-described policies are cancelled before the stated expiration date.

8.2.3 PG&E may inspect the original policies or require complete certified copies at any time.

8.2.4 The minimum liability insurance requirements established in this Contract are not a representation by PG&E that the insurance limits are sufficient, nor do these requirements in any way limit Consultant's liability under this Contract.

8.2.5 Upon request, Consultant shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Consultant.

9. FORCE MAJEURE; CANCELLATION AND TERMINATION OF CONTRACT

9.1 FORCE MAJEURE: Neither PG&E nor Consultant shall be considered in default in the performance of its obligations under this Contract, except obligations to make payments hereunder for Work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause, existing or future, which is beyond the reasonable control, and without the fault or negligence, of the affected Party. If either Party claims that performance of its obligations was prevented or delayed by any such cause, that Party shall promptly notify the other Party in writing and describe the circumstances preventing or delaying performance. The Party so claiming a cause-delayed performance shall endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

9.2 CANCELLATION FOR CAUSE

9.2.1 PG&E may, at its option, cancel or suspend, in whole or in part, this Contract or any one or more CWAs for cause, including but not limited to the following situations: (a) the failure, refusal or inability of Consultant to perform the Work in accordance with this Contract for any reason (except as specified in the section titled "Force Majeure"), following notice and an opportunity to cure and Consultant has failed to do so; provided, however, that safety or security violations may result in immediate cancellation; (b) Consultant has become insolvent, has failed to pay its bills, or has had checks for payment of its bills returned from suppliers and Subcontractors due to insufficient funds; (c) a legal action is placed against Consultant which, in PG&E's opinion, may interfere with the performance of the Work; or (d) in PG&E's opinion, the Work will not be completed in the specified time, PG&E has requested Consultant take action to accomplish the required progress and completion, and Consultant has failed to do so. PG&E will be the sole judge whether Consultant is substantially performing Work in accordance with this Contract.

9.2.2 If the Contract is cancelled for cause: (i) PG&E shall pay Consultant for services satisfactorily performed prior to the date of cancellation which are of benefit to PG&E, and (ii) Consultant shall be liable for additional costs to PG&E arising from cancellation.

9.3 SUSPENSION OR TERMINATION FOR PG&E'S REASONS: PG&E may suspend or terminate, in whole or in part, the Contract or any one or more CWAs, without cause upon written notice to Consultant. Consultant shall mitigate its damages so as to minimize its claim, if any, against PG&E. If the Contract is terminated for PG&E's reasons, PG&E shall be liable to Consultant only for the compensation earned on the Work satisfactorily performed to the date of termination, plus costs reasonably incurred by Consultant in terminating its operation.

9.4 CWA TERM AND TERMINATION: The cancellation, suspension and termination provisions in this Section shall apply to individual CWAs. If PG&E cancels, suspends or terminates the Work under a particular CWA, or if a particular CWA expires, the remainder of this Contract shall not be affected. In addition, if the term of any one or more CWAs continues beyond the termination date of this Contract, the terms and conditions of this Contract shall continue to apply to those CWAs until final completion and acceptance of the Work.

9.5 GENERAL

9.5.1 In no event shall PG&E be liable for lost or anticipated profits or overhead on uncompleted portions of the Work.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services    Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 13 of 36

9.5.2   Consultant shall not enter into any agreements, commitments, or Subcontracts which would incur significant cancellation or termination costs without prior written approval of PG&E. Such written approval is a condition precedent to the payment of cancellation or termination charges by PG&E.

9.5.3   Before PG&E will release final payment, Consultant shall deliver to PG&E any and all reports, drawings, documents and deliverables prepared for PG&E before the effective date of cancellation or termination.

9.6   ASSISTANCE AND COOPERATION: Beginning upon expiration, or upon notice to Consultant of cancellation or termination of a CWA or this Contract, and continuing for so long as PG&E may reasonably request, Consultant will cooperate and assist with the orderly transfer of the Work. To the extent that compensation for such assistance is not already specified, the Parties will mutually agree on reasonable compensation, not to exceed Consultant's then-current, standard hourly rates for similar work.

## 10. REQUIREMENTS AND POLICIES

10.1   PG&E'S SUPPLY CHAIN RESPONSIBILITY POLICY: It is PG&E's policy that small and diverse businesses shall have the maximum practicable opportunity to participate in providing the goods and services purchased by PG&E. Small and diverse businesses include Small Business Enterprises ("**SBEs**"); Women, Minority, and Disabled Veteran Business Enterprises ("**WMDVBEs**"); and Lesbian, Gay, Bisexual, and Transgender Business Enterprises ("**LGBTBEs**").

10.1.1   Consultant agrees to comply, and to require all Subcontractors and sub-Subcontractors to comply, with PG&E's Supply Chain Responsibility Policy, **Exhibit 2,** attached hereto and incorporated herein. Consultant shall provide a copy of **Exhibit 2** to each prospective Subcontractor.

10.1.2   Consultant shall act in accordance with its completed Prime Supplier Subcontracting Plan, **Exhibit 1-A,** attached hereto and incorporated herein, in the performance of the Work and in the award of all Subcontracts.

10.1.3   In addition, if the Contract exceeds $500,000 ($1 million for construction contracts), Consultant shall comply with **Exhibit 2A,** Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns, attached hereto and incorporated herein, and the Prime Supplier Subcontracting Plan must include provisions for implementing the requirements of **Exhibit 2A.**

10.1.4   Each Bidder's Proposal shall describe how Bidder will comply with the requirements of **Exhibit 2** if awarded the Work. The requirements of **Exhibit 2** and the successful Bidder's response, along with a completed, signed copy of **Exhibit 1-A,** will be incorporated into the Contract.

10.2   FEDERAL REQUIREMENTS

10.2.1   FEDERAL DEBARMENT: Consultant warrants and represents that neither it nor its principals, nor any Subcontractors that will participate in the Work, is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded by the Federal government. If Consultant cannot certify any element of the preceding statement, Consultant shall deliver a written explanation to PG&E and must receive written approval to waive such certification prior to start of the Work.

10.2.2   EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION REGULATIONS POLICY: During the performance of this Contract and to the extent they may be applicable, Consultant agrees to comply with all laws, orders, and regulations included by summary or reference in the following paragraphs:

(i)   Executive Order 11246, 41 CFR Part 60-1.4: Equal Opportunity Clause.

(ii)   Executive Order 11246, 41 CFR Part 60-1.8: Nonsegregated Facilities.

(iii)   Vietnam Era Veterans' Readjustment Assistance Act of 1974, 41 CFR Part 60-300.5.a: Equal Opportunity Clause. **Consultant and its Subcontractor(s) shall abide by the requirements of 41 CFR 60-300.5(a). This regulation prohibits discrimination against qualified protected veterans, and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified protected veterans.**

(iv)   Section 503 of the Rehabilitation Act of 1973, 41 CFR Part 60-741.5.a: Equal Opportunity Clause. **Consultant and its Subcontractor(s) shall abide by the requirements of 41**

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services    Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 14 of 36

**CFR 60-741.5(a). This regulation prohibits discrimination against qualified individuals on the basis of disability, and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified individuals with disabilities.**

10.2.3 EXECUTIVE ORDER 13496 – EMPLOYEE RIGHTS UNDER THE NATIONAL LABOR RELATIONS ACT. To the extent applicable, the employee notice requirements set forth in 29 C.F.R. Part 471, Appendix A to Subpart A are hereby incorporated by reference into this Contract.

10.3 SAFE WORK PRACTICES AND REQUIREMENTS

10.3.1 CONTRACTOR SAFETY PROGRAM: Consultant represents and warrants that it will perform all applicable Work, and cause all Subcontractors to perform all applicable Work, in compliance with PG&E's Contractor Safety Program Standard Contract Requirements, as may be modified from time to time. The Contractor Safety Program Standard Contract Requirements can be located and downloaded at: www.pge.com/contractorsafety and are hereby incorporated by reference into this Contract. Consultant's failure to comply with the Contractor Safety Program Standard Contract Requirements shall be immediate grounds for termination for cause under this Contract. Notwithstanding the above, Consultant is the "controlling employer" as defined under CalOSHA and will remain responsible for all fines and liability arising from violation of the Contractor Safety Program Standard Contract Requirements and applicable law.

10.3.2 GOLD SHOVEL STANDARD CERTIFICATION: This Section applies if the Work under this Contract includes Excavation (as defined below). Before performing any Work involving Excavation, Consultant must be certified by the Gold Shovel Standard, a nonprofit organization that provides independent safety certification and performance measurement. As used in this section, the term "**Excavation**" has the meaning defined in California Government Code Section 4216(g), which provides as follows: "'Excavation' means any operation in which earth, rock, or other material in the ground is moved, removed, or otherwise displaced by means of tools, equipment, or explosives in any of the following ways: grading, trenching, digging, ditching, drilling, augering, tunneling, scraping, cable or pipe plowing and driving, or any other way."

10.3.3 INJURY AND ILLNESS PREVENTION PROGRAM: In the performance of the Work under this Contract, Consultant acknowledges that it has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code. Consultant shall ensure that any Subcontractor hired by Consultant to perform any portion of the Work under this Contract shall also have an effective Injury and Illness Prevention Program. The person with the authority and responsibility for implementing and administering Consultant's Injury and Illness and Prevention Program shall execute the Compliance Certificate, **Exhibit 3**, attached hereto and incorporated herein.

10.3.4 PG&E DRUG AND ALCOHOL POLICY: PG&E is committed to maintain and promote job safety and health for all workers at its facilities. In addition, PG&E is determined to protect its employees, customers, and the general public while they are on PG&E property from any harm caused by illegal drug and alcohol use by non-PG&E personnel. To accomplish these objectives, PG&E has established a drug and alcohol policy for access to PG&E facilities by its Consultant and Subcontractor personnel. If any personnel of Consultant or its approved Subcontractors perform any Work or services at PG&E offices and/or other PG&E facilities, then Consultant shall comply with PG&E's Drug and Alcohol Abuse and Testing Policies, attached hereto and incorporated herein as **Exhibit 4**.

10.3.5 CALIFORNIA HEALTH AND SAFETY CODE: The California Health and Safety Code requires businesses to provide warnings prior to exposing individuals to materials listed by the Governor as chemicals "known to the State of California to cause cancer, birth defects or reproductive harm." PG&E uses chemicals on the Governor's list at many of its facilities. In addition, many of these chemicals are present at non-PG&E-owned facilities and locations. Accordingly, in performing the Work or services contemplated under this Contract, Consultant, its employees, agents and Subcontractors may be exposed to chemicals on the Governor's list. Consultant is responsible for notifying its employees, agents, and Subcontractors that Work performed hereunder may result in exposures to chemicals on the Governor's list.

10.4    CONFLICT OF INTEREST AND BUSINESS ETHICS

      10.4.1    REASONABLE CARE:  Consultant shall exercise reasonable care and diligence to prevent any actions or conditions which could result in a conflict with PG&E's interest.

      10.4.2    OTHER EMPLOYMENT:  During the term of this Contract, Consultant or its employees will not accept any employment or engage in any work which creates a conflict of interest with PG&E or in any way compromises the Work to be performed under this Contract.

      10.4.3    GIFTS:  Consultant or its employees shall not offer or cause to be offered gifts, entertainment, payments, loans and/or other services, benefits or considerations of more than a nominal value to PG&E's employees, their families, vendors, Subcontractors and other third parties.

      10.4.4    ACCURATE DOCUMENTATION:  All financial statements, reports, billings, and other documents rendered shall properly reflect the facts about all activities and transactions handled for the account of PG&E.

      10.4.5    NOTIFICATION:  The Consultant shall immediately notify PG&E of any and all violations of this clause upon becoming aware of such violation.

10.5    DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS: PG&E is committed to maintain documents and records so as to satisfy applicable legal, contractual and regulatory requirements as well as PG&E's on-going business needs; to enable appropriate records management, provide appropriate retrieval and achieve the proper level of security and privacy.  In furtherance of this commitment, Consultant agrees to comply with the requirements of **Exhibit 5**, PG&E Contractor Document Retention and Production Requirements, and **Exhibit 5A**, Document and Data List, each attached hereto and incorporated herein.

10.6    AVAILABILITY OF INFORMATION: Consultant shall keep accurate records and books of accounts, and shall preserve and make available such records and books of accounts, in accordance with the requirements of **Exhibit 6**, Audit Rights, attached hereto and incorporated herein.

10.7    EXPORT CONTROLS.  Consultant shall provide PG&E with information and assistance as may reasonably be required in connection with compliance with applicable import and export laws, including but not limited to, Manufacturer's Affidavits, Harmonized Tariff Schedules, Export Control Classification Numbers, and qualification information (e.g. origin) relevant to United States and foreign regulatory approvals for deliverables, products, and other materials furnished hereunder.  Consultant shall make such information available to PG&E within five (5) business days following receipt of PG&E's written request.

10.8    WORK ON PG&E OR PG&E CUSTOMER ASSETS OR PREMISES:  The following provisions shall apply to the extent that the Work under the Contract requires any Consultant or Subcontractor personnel (collectively, "**Personnel**") to have access to PG&E assets, premises, customer property, or logical access to PG&E data or systems (collectively, "**Access**").

      10.8.1    CRIMINAL BACKGROUND CHECKS:

          (i)    Consultant warrants and represents that it will not assign any Personnel to work requiring Access unless Consultant has performed a criminal background check on each such individual (either at the time of hiring or during the course of employment).  Prior to assigning work requiring Access to any Personnel with one or more criminal convictions during the last seven years, Consultant must consider the gravity of the individual's offense, the time since the conviction, the successful completion of parole/probation, the individual's age at the time of conviction, the number of convictions, and the stability of the individual, including favorable work history.  Consultant shall also consider the relation of the offense to the nature of the work the individual will perform.

          (ii)    Notwithstanding the foregoing, in no event shall Consultant grant Access to an individual with one or more convictions for a Serious Offense(s), which is defined as violent and sex offenses, crimes against children, domestic violence, fraud, theft (including but not limited to identity theft), embezzlement, all felonies during the last seven years, and/or two or more DUI's in the past three years.

          (iii)    Consultant shall maintain documentation related to its criminal background check investigation for all Personnel requiring Access and make it available to PG&E for audit if requested pursuant to the audit provisions of this Contract.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services — Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 16 of 36

        (iv)    Consultant also agrees to notify PG&E if any of its Personnel requiring Access are charged with or convicted of a Serious Offense during the course of a PG&E assignment.

10.8.2  FITNESS FOR DUTY: Consultant shall ensure that its Personnel granted Access report to work fit for duty. Personnel with Access may not consume alcohol while on duty and/or be under the influence of drugs that impair their ability to work safely. PG&E expects each supplier to have policies in place that requires their employees report to work in a condition that allows them to perform the work safely. For example, employees should not be operating equipment under medication that creates drowsiness. As a federal contractor, PG&E does not recognize nor allow work to be completed under the influence of marijuana, whether or not it is used for medical reasons.

10.8.3  ELIGIBILITY FOR PG&E WORK: When assigning any Personnel to perform Work requiring Access, Consultant shall submit each person's full name and the last four digits of their social security number to PG&E at the following e-mail address: RecruitingOperations@pge.com. PG&E reserves the right to decline to accept any proposed Personnel, in which case Consultant shall promptly propose a replacement.

10.9    NERC REQUIREMENTS: Pursuant to a NERC directive, PG&E has implemented policies and procedures for the protection of facilities, systems, assets and information that are critical to the operation or support of the Bulk Electric System ("**BES**"). PG&E identifies these facilities, systems, assets and information in accordance with its internal utility procedures. If this Contract relates to BES Cyber Systems or Bulk Electric System Cyber System Information (as designated by PG&E), then Consultant shall comply with the requirements of **Exhibit 7**, NERC Requirements and **Exhibit 7A**, PG&E NERC CIP Program Non-Employee Attestation Form, each attached hereto and incorporated herein. Consultant represents and warrants that it has consulted with PG&E to determine whether Exhibit 7 is applicable to the Work under this Contract.

10.10  SUPPLIER CODE OF CONDUCT: CONSULTANT, ITS SUBCONTRACTORS AND THEIR SUPPLIERS AT ALL TIERS, SHALL COMPLY WITH PG&E'S SUPPLIER CODE OF CONDUCT IN THE AWARD AND PERFORMANCE OF ALL CONTRACTS AND SUBCONTRACTS. The Supplier Code of Conduct requires that Consultant and each of its Subcontractors demonstrate a strong commitment to compliance, ethics, sustainability, and supplier diversity as a foundation to successful business. Consultant must complete its Work for PG&E in full compliance with the Supplier Code of Conduct, as it may be modified from time to time. Consultant shall access, read and comply with PG&E's Supplier Code of Conduct and shall make it available to its Subcontractors and suppliers. In addition, Consultant's authorized representative shall sign the PG&E Supplier Code of Conduct Acknowledgement, **Exhibit 8**, attached hereto and incorporated herein. The Supplier Code of Conduct is hereby incorporated by reference into this Contract. It is available at PG&E's website, www.PGE.com, at the following link:
http://www.pge.com/includes/docs/pdfs/b2b/purchasing/suppliers/SupplierCodeofConductPGE.pdf

11. GENERAL PROVISIONS

11.1    AMENDMENTS, SUBCONTRACTS AND ASSIGNMENTS

11.1.1  AMENDMENT: No provision of the Contract will be deemed amended or waived by PG&E without prior written approval in the form of a signed Contract Change Order. No oral statement will modify or otherwise affect the terms and conditions set forth herein.

11.1.2  SUBCONTRACTS: Consultant shall not enter into Subcontracts, and no Subcontractor shall be permitted to perform Work, without the prior written approval of PG&E. PG&E's approval of any Subcontract shall not relieve Consultant of its obligations to PG&E under this Contract. Consultant's obligations under this Contract shall apply to any Subcontract, and Consultant shall be responsible to PG&E for any damages to PG&E arising out of Subcontracts not in accordance with this Contract. Nothing in the Contract or any subcontract shall create any direct contractual relations between a Subcontractor and PG&E.

11.1.3  ASSIGNMENT: PG&E may assign its rights or delegate its duties under this Contract, directly or indirectly, by operation of law or otherwise, without the Consultant's prior approval or written consent, provided PG&E remains obligated to pay for services rendered up to the effective date of such assignment. Consultant may not assign its rights or delegate its duties under this Contract, directly or indirectly, by operation of law or otherwise without PG&E's prior written consent, except that Consultant may assign to Consultant's corporate affiliate in which Consultant holds a majority interest, provided that the Consultant and the affiliate remain obligated under this Contract. A Party

shall not unreasonably withhold, condition or delay its consent. Subject to the foregoing, this Contract shall be binding upon and inure to the benefit of the successors and assigns of the Parties hereto. Any purported assignment of rights or delegation of duties in violation of this section is void.

11.2    COMPLIANCE WITH LAWS

11.2.1    GENERAL: Consultant shall comply with all applicable federal, state and local laws, rules and regulations, and shall obtain all applicable licenses and permits for the conduct of its business and the performance of the Work called for in this Contract. Consultant shall comply with all environmental and endangered species requirements and shall conduct its operations in a manner that complies with applicable programs and permits. To the extent Consultant's work is subject to PG&E-specific environmental permits or programs, PG&E will provide Consultant with such permit or program requirements. Unless prohibited by law, Consultant shall hold PG&E harmless from any liability, fine or penalty incurred as a result of Consultant's failure to comply with applicable legal and regulatory requirements.

11.2.2    PERFORMANCE DIRECTLY RELATING TO A FEDERAL GOVERNMENT CONTRACT: If the Work to be performed or supplies to be provided under this Contract have a direct relationship to a deliverable requirement of the U.S. Government, then this Contract is subordinate to that U.S. Government contract, and as subcontractor under a U.S. Government contractor, Consultant must agree to be bound by and comply with the following provisions.

(i)    LAWS AND REGULATIONS: Consultant agrees to comply fully with all applicable laws and regulations associated with the provision of goods or services to the U.S. Government.

(ii)    SUSPENSION AND DEBARMENT: Consultant hereby represents and warrants that neither Consultant nor any of its principals are debarred, suspended, or proposed for debarment by any agency or instrumentality of the U.S. Government. Consultant shall notify the PG&E representative immediately if Consultant or any of its principals are suspended, debarred or proposed for debarment during the term of this Contract. Consultant further agrees that PG&E shall have no liability to Consultant arising out of or resulting from any action the U.S. Government requires PG&E to take with respect to the Contract as a consequence of any such debarment, suspension, or proposed debarment.

(iii)    REQUIRED CONTRACT CLAUSES: The following clauses from Title 48 of the Code of Federal Regulations (the "FAR") are incorporated by reference into, and form a part of, the terms and conditions of this Contract. The full text of the FAR clauses may be found at: http://www.acquisition.gov/. The effective version of each FAR clause shall be the same version in effect at the date of this Contract. Consultant agrees to flow down all applicable FAR clauses to lower-tier Subcontractors, as required. In all clauses, the terms "Government," "United States," and "Contracting Officer" shall mean "PG&E" in order to affect the proper intent of the provision.

| No. | Title of Provision | FAR Clause |
|---|---|---|
| 1 | Contractor Code of Business Ethics and Conduct | 52.203-13 |
| 2 | Whistleblower Protections Under the American Recovery and Reinvestment Act of 2009 | 52.203-15 |
| 3 | Basic Safeguarding of Covered Contractor Information Systems | 52.204-21 |
| 4 | Utilization of Small Business Concerns | 52.219-8 |
| 5 | Prohibition of Segregated Facilities | 52.222-21 |
| 6 | Equal Opportunity | 52.222-26 |
| 7 | Equal Opportunity for Veterans | 52.222-35 |
| 8 | Equal Opportunity for Workers with Disabilities | 52.222-36 |
| 9 | Employment Reports on Veterans | 52.222-37 |
| 10 | Notification of Employee Rights Under the National Labor Relations Act | 52.222-40 |
| 11 | Combating Trafficking in Persons | 52.222-50 |
| 12 | Employment Eligibility Verification (E-verify) | 52.222-54 |
| 13 | Minimum Wages under Executive Order 13658 | 52.222-55 |

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services — Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 18 of 36

| 14 | Contractors Performing Private Security Functions Outside the United States | 52.225-26 |
| 15 | Providing Accelerated Payments to Small Business Subcontractors | 52.232-40 |
| 16 | Preference for Privately Owned U.S.-Flag Commercial Vessels | 52.247-64 |

11.3    REPORTING: In accordance with Section 7912 of the California Public Utilities Code, Consultant agrees to report annually to PG&E the number of California residents employed by Consultant, calculated on a full-time or full-time equivalent basis, who are personally providing services to PG&E.

11.4    CHOICE OF LAWS: This Contract shall be construed and interpreted in accordance with the laws of the State of California, excluding any choice of law rules which may direct the application of the laws of another jurisdiction. Any controversy or claim arising out of or in any way relating to this Contract which cannot be amicably settled without court action shall be litigated in a California State Court of competent jurisdiction; or if jurisdiction over the action cannot be obtained in a California State Court, in a Federal Court of competent jurisdiction situated in the State of California.

11.5    DISPUTE RESOLUTION

11.5.1    EXECUTIVE NEGOTIATIONS: The Parties shall attempt in good faith to resolve any dispute arising out of or relating to this Contract promptly by negotiations between a vice president of PG&E or his or her designated representative and an executive of similar authority of Consultant. Either Party may give the other Party written notice of any dispute which has not been resolved at a working level. Within 20 days after delivery of such notice, the executives shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary to exchange information and to attempt to resolve the dispute.

11.5.2    MEDIATION: If the matter has not been resolved within 30 days of the first meeting of the executives, either Party may at any time thereafter request mediation by written notice to the other Party. The mediation shall be conducted by a mutually-agreeable mediator with experience mediating complex commercial disputes. If the matter has not been resolved with 60 days after the request for mediation, then either Party may initiate litigation.

11.5.3    PERFORMANCE: Except as otherwise expressly provided in this Contract, each Party shall continue to perform its obligations under this Contract pending final resolution of any dispute arising out of or relating to this Contract.

11.5.4    CONFIDENTIALITY OF DISPUTE RESOLUTION PROCESS: All negotiations and any mediation conducted pursuant to this provision are confidential and shall be treated as compromise and settlement negotiations, to which Section 1119 of the California Evidence Code shall apply, and Section 1119 is incorporated herein by reference.

11.5.5    PRELIMINARY INJUNCTION: Notwithstanding the foregoing provisions, a Party may seek a preliminary injunction or other provisional judicial remedy if in its judgment such action is necessary to avoid irreparable damage or to preserve the status quo.

11.6    NON-WAIVER: The waiver by either Party of any breach of any term, covenant or condition contained in this Contract, or any default in the performance of any obligations under this Contract, shall not be deemed to be a waiver of any other breach or default of the same or any other term, covenant, condition or obligation. Nor shall any waiver of any incident of breach or default constitute a continuing waiver of the same.

11.7    CAPTIONS AND HEADINGS: Section, paragraph, and other headings contained in this Contract are for reference purposes only and are in no way intended to describe, interpret, define, amplify, or limit the scope, extent or intent of this Contract or any provision.

11.8    ENFORCEABILITY: If any of the provisions, or application of any of the provisions, of this Contract are held to be illegal or invalid by a court of competent jurisdiction or arbitrator/mediator, PG&E and Consultant shall negotiate an equitable adjustment in the provisions of this Contract with a view toward effectuating the purpose of this Contract. The illegality or invalidity of any of the provisions, or application of any of the provisions, of this Contract will not affect the legality or enforceability of the remaining provisions or application of any of the provisions of the Contract.

11.9    INTEGRATION: This Contract constitutes the entire agreement and understanding between the Parties as to the subject matter of the Contract. It supersedes all prior or contemporaneous agreements,

commitments, representations, writings, and discussions between Consultant and PG&E, whether oral or written, and has been induced by no representations, statements or agreements other than those expressed herein. Neither Consultant nor PG&E shall be bound by any prior or contemporaneous obligations, conditions, warranties or representations with respect to the subject matter of this Contract.

11.10   SURVIVAL: The provisions of this Contract which by their nature should survive expiration, cancellation or other termination of this Contract, including but not limited to provisions regarding warranty, indemnity, insurance, confidentiality, document retention, business ethics and availability of information, shall survive such expiration, cancellation or other termination.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7

Consulting Services — Attachment 2 — Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
05/23/2018 njs5                                                               MSA No. C11056, Page 20 of 36

AUG 2018

## EXHIBIT DATA-1

## CONFIDENTIALITY AND DATA SECURITY

1.  In addition to the requirements set out in Section 5.3, Confidentiality, of these General Conditions, Consultant shall comply with the following additional terms of this Exhibit DATA-1 regarding the handling of Confidential Information (as defined in Section 5.3 of the General Conditions) and PG&E Data (as defined below) from PG&E or its Customers.

2.  NON-DISCLOSURE AGREEMENTS: Consultant shall require all of its employees, Subcontractors, and Subcontractor employees who will perform Work or services under this Contract to sign a non-disclosure agreement in the form attached hereto as Exhibit DATA-1A, Non-disclosure and Use of Information Agreement ("NDA"). Before starting said Work or services, Consultant shall promptly furnish the original signed NDAs to PG&E.

3.  SECURITY MEASURES: Consultant shall take "Security Measures" with the handling of Confidential Information to ensure that the Confidential Information will not be compromised and shall be kept secure. As used herein, "Security Measures" shall mean industry data security standards and techniques, physical and logical, including but not limited to:

    a.  written policies regarding information security, disaster recovery, third-party assurance auditing, penetration testing,

    b.  password protected workstations at Consultant's premises, any premises where Work or services are being performed and any premises of any person who has access to such Confidential Information,

    c.  encryption of Confidential Information, and

    d.  measures to safeguard against the unauthorized access, destruction, use, alteration or disclosure of any such Confidential Information including, but not limited to, restriction of physical access to such data and information, implementation of logical access controls, sanitization or destruction of media, including hard drives, and establishment of an information security program that at all times is in alignment with the industry requirements of ISO 2700X or SOC2 Type 2.

    Consultant agrees to impose on its Subcontractors the same security obligations imposed on Consultant under this Contract.

4.  COMPLIANCE AND MONITORING: Consultant shall comply with security policies relating to the handling of Confidential Information.

    a.  Prior to PG&E's first transfer of Confidential Information to Consultant, Consultant shall provide PG&E with documentation satisfactory to PG&E that it has undertaken Security Measures.

    b.  Consultant and PG&E agree to meet periodically, if requested by PG&E, to evaluate Consultant's Security Measures and to discuss, in good faith, means by which the Parties can enhance such protection, if necessary.

    c.  Consultant shall update its Security Measures, including procedures, practices, policies and controls, so as to keep current with industry standards, including but not limited to NIST, NERC/CIP and FERC requirements, as applicable.

    d.  PG&E reserves the right to perform onsite security assessments to verify the implementation and ongoing operation and maintenance of security controls. At least annually, Consultant shall assist PG&E in obtaining a copy of any report that documents Consultant's Security Measures.

    e.  If PG&E determines Consultant has not complied with Security Measures, PG&E shall provide written notice to Consultant describing the deficiencies. Consultant shall then have sixty (60) calendar days to cure. If Consultant has not cured the deficiencies within sixty (60) calendar days, PG&E may cancel this Contract for cause in accordance with Section 8.2 of these General Conditions.

5.  PG&E DATA: As used herein, "PG&E Data" shall mean:

    a.  all data or information provided by or on behalf of PG&E, including but not limited to, personally identifiable information relating to, of, or concerning, or provided by or on behalf of any Customers,

    b.  all data or information input, transferred, uploaded, migrated, or otherwise sent by or on behalf of PG&E to Consultant as PG&E may provide in advance and in writing (in each instance),

    c.  account numbers, forecasts, and other similar information disclosed to or otherwise made available to Consultant by or on behalf of PG&E and Customers, and

    d.  all data provided by PG&E's licensors, including any and all survey responses, feedback, and reports, as well as information entered by PG&E, Consultant or Subcontractor, and Customers, if applicable.

6.  SECURITY OF PG&E DATA: Consultant agrees that Consultant's collection, management and use of PG&E Data during the term of the Contract shall comply with these security requirements and all applicable laws, regulations, directives, and ordinances.

    a.  Vendor Security Review: Before receiving any PG&E Data, Consultant shall undergo PG&E's Vendor Security Review process. Consultant may receive PG&E Data if the security review reveals no high-risk security control deficiencies. If

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7

Consulting Services — Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
05/23/2018 njs5
MSA No. C11056, Page 21 of 36

Consultant security review reveals high-risk security control deficiencies, Consultant may not receive PG&E Data until such time Consultant mitigates the risk(s).

7.  USE OF PG&E DATA:

    a. License:  PG&E may provide PG&E Data to Consultant to perform its obligations hereunder.  Subject to the terms of the Contract, PG&E grants Consultant a personal, non-exclusive, non-assignable, non-transferable limited license to use the PG&E Data solely for the limited purpose of performing the Work or services during the Contract term, but not otherwise.

    b. Limited Use of PG&E Data:  Consultant agrees that PG&E Data will not be (a) used by Consultant for any purpose other than that of performing Consultant's obligations under this Contract, (b) disclosed, sold, assigned, leased or otherwise disposed of or made available to third parties by Consultant, (c) commercially exploited by or on behalf of Consultant, nor (d) provided or made available to any other party without written authorization, subject to the General Conditions, this Exhibit DATA-1, Confidentiality and Data Security, and Exhibit DATA-1A, Non-Disclosure and Use of Information Agreement.

    c. All data provided by PG&E for Consultant's use in the performance of Work under this Contract shall remain the confidential property of PG&E and shall be destroyed, upon completion of Consultant's use for the performance of the Work or earlier upon the request of PG&E. A proof of destruction should be provided to PG&E or an officer of Consultant certifies the destruction in writing to PG&E.

    d. Application Development: Consultant agrees that it will not engage in any application development without or until it has demonstrated compliance with the provisions of these General Conditions, this Exhibit DATA-1 and Exhibit DATA-1A.

8.  SECURITY BREACH:  Consultant shall immediately notify PG&E in writing of any unauthorized access or disclosure of Confidential Information and/or PG&E Data.

    a. Consultant shall take reasonable measures within its control to immediately stop the unauthorized access or disclosure of Confidential Information and/or PG&E Data to prevent recurrence and to return to PG&E any copies.

    b. Consultant shall provide PG&E (i) a brief summary of the issue, facts and status of Consultant's investigation; (ii) the potential number of individuals affected by the security breach; (iii) the Confidential Information and/or PG&E Data that may be implicated by the security breach; and (iv) any other information pertinent to PG&E's understanding of the security breach and the exposure or potential exposure of Confidential Information and/or PG&E Data.

    c. Consultant shall investigate such breach or potential breach, and shall inform PG&E, in writing, of the results of such investigation, and assist PG&E (at Consultant's sole cost and expense) in maintaining the confidentiality of such Confidential Information and/or PG&E Data.  Consultant agrees to provide, at Consultant's sole cost and expense, appropriate data security monitoring services for all potentially affected persons for one (1) year following the breach or potential breach, subject to PG&E's prior approval.

    d. If requested in advance and in writing by PG&E, Consultant will notify the potentially affected persons regarding such breach or potential breach within a reasonable time period determined by PG&E and in a form as specifically approved in writing by PG&E.  In addition, in no event shall Consultant issue or permit to be issues any public statements regarding the security breach involving Confidential Information and/or PG&E Data unless PG&E requests Consultant to do so in writing.

9.  RIGHT TO SEEK INJUNCTION:  Consultant agrees that any breach of this Exhibit DATA-1 would constitute irreparable harm and significant injury to PG&E. Accordingly, and in addition to PG&E's right to seek damages and any other available remedies at law or in equity in accordance with this Contract, Consultant agrees that PG&E will have the right to obtain, from any competent civil court, immediate temporary or preliminary injunctive relief enjoining any breach or threatened breach of this Contract, involving the alleged unauthorized access, disclosure or use of any Confidential Information and/or PG&E Data.  Consultant hereby waives any and all objections to the right of such court to grant such relief, including, but not limited to, objections of improper jurisdiction or forum non conveniens.

10. CPUC and IOU DISCLOSURE:  Notwithstanding anything to the contrary contained herein, but without limiting the general applicability of the foregoing, Consultant understands, agrees and acknowledges as follows.

    a. PG&E hereby reserves the right in its sole and absolute discretion to disclose any and all terms of this Contract and all exhibits, attachments, and any other documents related thereto to the California Public Utilities Commission ("CPUC"), and that the CPUC may reproduce, copy, in whole or in part or otherwise disclose the Contract to the public.

    b. PG&E may be required, or may deem it to be in the best interest of the Work, to disclose to other investor owned utilities ("IOUs") certain Work-related information (excluding any pricing information).

11. SUBPOENAS:  In the event that a court or other governmental authority of competent jurisdiction, including the CPUC, issues an order, subpoena or other lawful process requiring the disclosure by Consultant of the Confidential Information and/or PG&E Data, Consultant shall notify PG&E immediately upon receipt thereof to facilitate PG&E's efforts to prevent such disclosure, or otherwise preserve the proprietary or confidential nature of the Confidential Information and/or PG&E Data.  If PG&E is unsuccessful at preventing the disclosure or otherwise preserving the proprietary or confidential nature of the Confidential Information and/or PG&E Data, or has notified Consultant in writing that it will take no action to prevent disclosure or otherwise preserve the proprietary or confidential nature of such Confidential Information and/or PG&E Data, then Consultant shall not be in violation of this Contract if it complies with an order of such court or governmental authority to disclose such Confidential Information and/or PG&E Data.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services — Attachment 2 - Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 22 of 36

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services          Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 23 of 36

May 2017

EXHIBIT DATA-1A

NON-DISCLOSURE AND USE OF INFORMATION AGREEMENT ("NDA")

THIS AGREEMENT is by and among _____ ("Consultant"), _____, ("Undersigned") authorized employee of Consultant (together, Consultant and Undersigned are referred to as the "Recipient"), and PACIFIC GAS AND ELECTRIC COMPANY ("PG&E"), a California corporation, on the date set forth below.  Consultant and Undersigned agree as follows:

1.  The Recipient acknowledges that in the course of performing services or work for PG&E ("Work"), the Recipient will be given access to certain Confidential Information, which may include (a) PG&E residential and/or commercial customer ("Customer") account information and information relating to their facilities, equipment, processes, products, specifications, designs, records, data, software programs, Customer identities, marketing plans or manufacturing processes or products, (b) any technical, commercial, financial, or Customer information of PG&E obtained by Recipient in connection with the Work, either during the Contract term or prior to the term but in contemplation that Consultant might be providing the Work or services, including but not limited to a Customer's energy usage and billing data, data, matters and practices concerning technology, ratemaking, personnel, business, marketing or manufacturing processes or products, which may be information owned by PG&E or by a third party and which may be in the custody of PG&E or third party and which constitutes valuable confidential and proprietary information and or trade secrets belonging to PG&E, and/or third parties, (c) any such confidential information of any third party disclosing such confidential information to PG&E or Recipient in the course of such third party's employment, engagement, business, or other relationship with PG&E or its parent, subsidiary, or affiliated companies and (d) PG&E Data as defined in Exhibit DATA-1, Confidentiality and Data Security, to the Contract (collectively, "Confidential Information").

2.  In consideration of being made privy to such Confidential Information, and of the contracting for the Recipient's professional services by PG&E, the Recipient hereby shall hold the same in strict confidence, and not disclose it, or otherwise make it available, to any person or third party (including but not limited to any affiliate of PG&E that produces energy or energy-related products or services) without the prior written consent of PG&E.  The Recipient agrees that all such Confidential Information:

    a.  Shall be used only for the purpose of providing Work or services for PG&E; and

    b.  Shall not be reproduced, copied, in whole or in part, in any form, except as specifically authorized and in conformance with PG&E's instructions when necessary for the purposes set forth in (a) above; and

    c.  Shall, together with any copies, reproductions or other records thereof, in any form, and all information and materials developed by Undersigned there from, be returned to PG&E when no longer needed for the performance of Undersigned's Work or services for PG&E.

3.  The Recipient hereby agrees that any third parties owning any Confidential Information are express third party beneficiaries of this Agreement.

4.  The Recipient hereby acknowledges and agrees that because (a) an award of money damages is inadequate for any breach of this Agreement by the Recipient or any of its representatives and (b) any breach causes PG&E irreparable harm, that for any violation or threatened violation of any provision of this Agreement, in addition to any remedy PG&E may have at law, PG&E is entitled to equitable relief, including injunctive relief and specific performance, without proof of actual damages.

5.  This Agreement shall be governed by and interpreted in accordance with the laws of The State of California, without regard to its conflict of laws principles.

| UNDERSIGNED | | CONSULTANT | GEI Consultants, Inc. |
|---|---|---|---|
| By: *Bill Rettberg* (DocuSigned by) | | Company Name: _____ | |
| 11F9B292EC63401... | | Authorized Agent: *Bill Rettberg* (DocuSigned by) | |
| Name: Bill Rettberg | | 11F9B292EC63401... | |
| Title: Sn. VP | | Name: Bill Rettberg | |
| Company GEI Consultants, Inc. | | Title: Sn. VP | |
| Date: 9/28/2018 | | Date: 9/28/2018 | |

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services    Attachment 2    Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 24 of 36

March 2017

# EXHIBIT 1

## PRIME SUPPLIER SUBCONTRACTING PLAN INSTRUCTIONS

Contractor shall provide a signed Prime Supplier Subcontracting Plan (**Exhibit 1A**) describing Contractor's planned utilization of Subcontractors and Suppliers. The first line on the form is completed as a sample. Line by Line instructions follow. Respond "N/A" for anything that is not applicable.

(1)    Provide the complete name of the Subcontractor or Supplier. Do not abbreviate - please spell out any acronyms.

(2)    Provide the California Contractor's License Number of each Subcontractor or Supplier (if applicable).

(2a)   Provide the Expiration Date of the Subcontractor or Supplier's California Contractor's License.

(3)    Indicate whether Subcontractor or Supplier is signatory to a labor union by responding "Yes" or "No."

(4)    Provide CPUC Clearinghouse Verification Order Number (VON) of Subcontractor's or Supplier as listed in the CPUC Clearinghouse Database (if applicable). To locate the VON, diversity status, or to find potential subcontractors, access the following site:

   • CPUC Clearinghouse Database: https://sch.thesupplierclearinghouse.com/frontend/searchcertifieddirectory.asp

(5)    Provide Small Business number of Subcontractor or Supplier (if applicable). To determine status or to find potential subcontractors, access the following sites:

   • California Department of General Services (DGS): http://www.dgs.ca.gov/pd/Programs/OSDS.aspx
   • U.S. Small Business Administration (SBA): https://www.sba.gov/contracting/getting-started-contractor/qualifying-small-business

(6)    Provide the Small Business Code of Subcontractor or Supplier (if applicable). See Small Business Code List in Exhibit 1A.

(7)    Provide a description of the work to be performed or major materials to be supplied by the Subcontractor or Supplier.

(7a)   Indicate whether the work to be performed by each Subcontractor or Supplier includes excavation by responding "Yes" or "No." Refer to Section 4216 of the California Government Code for the definition of "excavation."

(8)    Indicate the Gold Shovel Status for each Subcontractor or Supplier by responding as appropriate:

   • "N/A" for Subcontractor or Supplier who will not perform excavation work.
   • "Active" for Subcontractor or Supplier with an active Gold Shovel Certification.
   • "Inactive" for Subcontractor or Supplier that does not have current Gold Shovel Certification. Attach an explanation to Exhibit 1A indicating when Contractor anticipates Subcontractor or Supplier will obtain Gold Shovel Certification.

   To determine status or to find potential subcontractors, access the following site: http://www.goldshovelstandard.com

(9)    Indicate whether each Subcontractor or Supplier will be performing low, medium, or high risk work by responding "Low", "Med", or "High". Refer to PG&E's Contractor Safety Program Contract Requirements at http://www.pge.com/contractorsafety for risk definitions.

(10)   Provide ISNetworld (ISN) Identification Number of each Subcontractor or Supplier performing medium to high risk work.

   • Respond "N/A" for any Subcontractor or Supplier performing low risk work.
   • Respond "None" if Subcontractor or Supplier has not completed ISN prequalification. Attach an explanation to Exhibit 1A explaining when Contractor anticipates Subcontractor or Supplier prequalification will be complete.

(10a)  Indicate whether Subcontractor or Supplier performing medium to high risk work is Prequalified in ISN by responding "Yes" or "No." Respond "N/A" for each Subcontractor or Supplier performing low risk work.

   • To determine prequalification status or to find potential subcontractors, access the following site:

   https://www.pge.com/en_US/for-our-business-partners/purchasing-program/suppliers/suppliers.page

(11)   Provide the estimated amount to be paid to each Subcontractor or Supplier.

(12)   Provide the total estimated amount to be paid to all Subcontractors and Suppliers.

(13)   Provide the total estimated amount to be paid to the Prime Contractor or Supplier for work to be self-performed.

(14)   Provide the total bid value in U.S. Dollars for all work to be performed.

(15)   Provide the total estimated amount to be paid to all CPUC Clearinghouse Subcontractors and Suppliers with a VON.

(16)   Provide the total estimated amount to be paid to all Small Business Subcontractors and Suppliers.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Attachment 3 - Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 25 of 36

Sourcing
March 2017
Page 1 of 1

EXHIBIT 1A

**Pacific Gas and Electric Company**

# Prime Supplier Subcontracting Plan

The information provided on this form may form the **basis of a** Statement of Record, against which PG&E may conduct an audit or review to ensure compliance.

| Prime Contractor/Supplier: | | | | | Name of Preparer: | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Employer Identification # (EIN): | | | | | Telephone: ( ) - | | | | | | |
| PG&E Contract Number (if any): | | | | | E-Mail: | | | | | | |
| PG&E Project/Product: | | | | | Is Prime Contractor/Supplier CPUC Clearinghouse Certified? | | | Yes | | No | VON: |
| Contract Duration (Year): | From: | To: | | | Is Prime Contractor/Supplier a Registered Small Business? | | | Yes | | No | Small Business #: |

| (1) Name of Subcontractor or Supplier | (2) / (2a) Contractor's License # / Expiration Date | (3) Union Signatory? | (4) CPUC VON¹ | (5) Small Business #¹ | (6) Small Business Code | (7) / (7a) Description of Work to be Performed or Major Materials to be Supplied / Excavation Required? | | (8) Gold Shovel Status | (9) Risk Level | (10) / (10a) ISN ID# / Prequalified? | | (11) Estimated Amount to be Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Small Diverse Subcontractor, Inc. | 123456   12/31/17 | Yes | 99999999 | 1234567 | SBE-DGS | Demolition | Yes | Active | High | 400-11111 | Yes | $Example |
| None at this time | | | | | | | | | | | | $ |
| | | | | | | | | | | | | $ |
| | | | | | | | | | | | | $ |
| | | | | | | | | | | | | $ |
| | | | | | | | | | | | | $ |
| | | | | | | | | | | | | $ |
| | | | | | | | | | | | | $ |
| | | | | | | | | | | | | $ |
| | | | | | | | | | | | | $ |
| | | | | | | | | | | | | $ |
| | | | | | | | | | | | | $ |

**Small Business Code List**
SBE-DGS   A small business certified by the California Department of General Services (DGS)
SBE-SBA   A small business certified by the U.S. Small Business Administration (SBA)
SBE-OTH   A small business certified by another agency that issues a Small Business number

| (12) Total All Subcontractors and Suppliers | $ |
|---|---|
| (13) Total Self-Performed by Prime Contractor / Supplier: | $ |
| (14) Total Bid Value: | $ |
| (15) Total CPUC Clearinghouse Certified: | $ |
| (16) Total Small Business Certified: | $ |

Signature: Bill Kathury (DocuSigned by:)

Date: 9/28/2018

I hereby certify that the information listed is true to the best of my knowledge

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services      Attachment 2 - Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 26 of 36

August 2017

## EXHIBIT 2

## PG&E'S SUPPLY CHAIN RESPONSIBILITY POLICY

PG&E is committed to supply chain responsibility, including supplier diversity, sustainability, and ethical supply chain practices.

- PG&E's Supplier Diversity Program, launched in 1981, aims to provide diverse suppliers with economic opportunities to supply products and services to PG&E.

- The Supplier Sustainability Program, launched in 2007, encourages supplier responsibility, excellence and innovation.

- Promoting an ethical supply chain means that ethical supplier performance, including a supplier's efforts in each of the following areas, is an important consideration in supplier selection: health and safety, labor issues, human rights, ethical business conduct, and conflicts of interest.

SUPPLIER AND ITS SUBCONTRACTORS OF ALL TIERS MUST COMPLY WITH PG&E'S SUPPLY CHAIN RESPONSIBILITY POLICY IN THE AWARD OF ALL SUBCONTRACTS. This Policy requires that small and diverse businesses shall have the maximum practicable opportunity to participate in the performance of work, including Small Business Enterprises (**"SBEs"**); Women, Minority, and Disabled Veteran Business Enterprises (**"WMDVBEs"**); and Lesbian, Gay, Bisexual, and Transgender Business Enterprises (**"LGBTBEs"**).

In order to be considered for this Contract, the Supplier must comply with the following requirements:

1. Supplier shall provide a copy of this **Exhibit 2** to each prospective Subcontractor.

2. Supplier shall provide a separate signed Prime Supplier Subcontracting Plan (**Exhibit 1A**). Supplier shall also describe its Supply Chain Responsibility efforts and planned outreach to small, diverse businesses.

3. Qualifying Subcontractors must be certified as follows:

   a. Small Business Enterprises must be registered as a small business with a state or federal agency (e.g. California Department of General Services or Small Business Administration);

   b. Women-, minority-, and lesbian, gay, bisexual and transgender-owned businesses must be certified by the California Public Utilities Commission's Supplier Clearinghouse; and

   c. Service disabled veteran-owned businesses must be certified by the California Department of General Services.

4. No later than the 10th of each month, Supplier shall submit its Subcontracting spend with small and diverse Subcontractors using PG&E's electronic reporting system located at the following address: https://cvmas10.cvmsolutions.com/pge/default.asp. To establish a User ID for use in the reporting system, Supplier shall submit a request via email to the following e-mail address: PVB1@pge.com.

5. For contracts exceeding $500,000 (or $1 million for construction), Suppliers must comply with the Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns, as described in **Exhibit 2A**. The Prime Supplier Subcontracting Plan for these contracts must include provisions for implementing the terms of this **Exhibit 2**.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7

Consulting Services    Attachment 2    Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
05/23/2018 njs5                                    MSA No. C11056, Page 27 of 36

## EXHIBIT 2A

## POLICY REGARDING UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL DISADVANTAGED BUSINESS CONCERNS

The following policy of the United States shall be adhered to in the performance of this Contract:

a) It is the policy of the United States that small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals shall have the maximum practicable opportunity to participate in performing contracts let by any Federal Agency, including contracts and subcontracts for subsystems, assemblies, components, and related services for major systems. It is further the policy of the United States that prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals.

b) Contractor hereby agrees to carry out this policy in the awarding of subcontracts to the fullest extent consistent with efficient contract performance. Contractor further agrees to cooperate in any studies or surveys as may be conducted by the United States Small Business Administration or the awarding agency of the United States as may be necessary to determine the extent of Contractor's compliance with this clause.

c) As used in this Contract, the term "small business concern" shall mean a small business as defined in Section 3 of the Small Business Act and relevant regulations promulgated pursuant thereto. The term "small business concern owned and controlled by socially and economically disadvantaged individuals" shall mean a small business concern (1) which is at least 51 percent unconditionally owned by one or more socially and economically disadvantaged individuals; or, in the case of any publicly owned business, at least 51 percent of the stock of which is unconditionally owned by one or more socially and economically disadvantaged individuals; and (2) whose management and daily business operations are controlled by one or more of such individuals. This term also means a small business concern that is at least 51 percent unconditionally owned by an economically disadvantaged Indian tribe or Native Hawaiian Organization, or a publicly owned business having at least 51 percent of its stock unconditionally owned by one of these entities which has its management and daily business controlled by members of an economically disadvantaged Indian tribe or Native Hawaiian Organization, and which meets the requirement of 13 CFR Part 124. Contractor shall presume that socially and economically disadvantaged individuals include Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, and other minorities, or any other individual found to be disadvantaged by the Administration pursuant to Section 8(a) of the Small Business Act. Contractor shall presume that socially and economically disadvantaged entities also include Indian Tribes and Native Hawaiian Organizations.

d) Contractor acting in good faith may rely on written representations by its subcontractors regarding their status as either a small business concern or a small business concern owned and controlled by socially and economically disadvantaged individuals.[1]

[1] Notwithstanding this provision of the federal statute, all WMDVBE subcontractors must be verified pursuant to the procedures prescribed in Section 2 of CPUC General Order 156, as such procedures may be amended periodically.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services          Attachment 3 - Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 28 of 36

March 2017

**EXHIBIT 3**

**INJURY AND ILLNESS PREVENTION PROGRAM
COMPLIANCE CERTIFICATE**

The undersigned hereby certifies to PG&E as follows:

1. The Company, and any Subcontractor hired by the Company to perform any portion of the Work under this Contract, has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code.

2. The undersigned is an authorized representative of the Company identified below, with the authority and responsibility for implementing and administering the Company's Injury and Illness Prevention Program.

IN WITNESS WHEREOF, the undersigned has executed this Compliance Certificate.

Company: GEI Consultants, Inc.

By: *Bill Rettberg*
11F9B292EC63401...

Print Name: Bill Rettberg

Title: Sn. VP

Date Signed: 9/28/2018

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services    Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 29 of 36

## EXHIBIT 4

## PG&E DRUG AND ALCOHOL ABUSE
## AND TESTING POLICIES

**I.    PG&E POLICY**

1.0    PREFACE: PG&E is committed to maintain and promote job safety and health for all workers at its facilities. In addition, PG&E is determined to protect its employees, customers, and the general public while they are on PG&E property from any harm caused by illegal drug and alcohol use by non-PG&E personnel. To accomplish these objectives, PG&E has established the following drug and alcohol policy for access to PG&E facilities by its Contractor and Subcontractor personnel.

2.0    COVERAGE: This policy applies to the personnel of all PG&E Contractors and Subcontractors performing any work or services at PG&E offices and/or any other PG&E facilities.

3.0    POLICY: PG&E may deny access to, or remove from, its facilities the personnel of any Contractor or Subcontractor, who PG&E has reasonable grounds to believe has:

   3.1    Engaged in alcohol abuse or illegal drug activity which in any way impairs PG&E's ability to maintain safe work facilities, to protect the health and well-being of PG&E employees, customers, and the general public, and to promote the public's confidence in PG&E's service and operations; or

   3.2    Been found guilty, pled guilty, or pled nolo contendere to a charge of sale or distribution of any illegal drug or controlled substance as defined under Federal or California law within the past five years, unless the criminal record was later expunged or sealed by a court order.

4.0    PROHIBITED ACTIVITIES: The following activities are prohibited at all facilities owned or leased by PG&E:

   4.1    Possessing, furnishing, selling, offering, purchasing, using or being under the influence of illegal drugs or other controlled substances as defined under Federal or California law;

   4.2    Possessing, furnishing, selling, offering, or using alcoholic beverage, or being under the influence of alcohol.

5.0    ACTIONS: Where reasonable cause exists that paragraph 4 of this policy has been violated, the Contractor or Subcontractor must inform the PG&E representative responsible for the Contract. The Contractor or Subcontractor is also expected to take any or all of the following actions to the fullest extent they are permitted under governing collective bargaining agreements and/or its applicable security and human resources policies.

   5.1    Search the individual, his or her vehicle, locker, storage area, and personal effects;

   5.2    Require the individual to undergo a medical examination to determine their fitness for duty. Such examination shall include obtaining a urine and/or blood specimen for drug or alcohol analysis unless the examining physician deems such tests to be inappropriate;

   5.3    Take any other appropriate action to determine if there has been a violation of paragraph 4. Refusal to comply with a request made under this paragraph shall be grounds for denying access to, or immediate removal from, any PG&E facility.

6.0    PERMISSION TO RE-ENTER: Any individual who has been denied access to, or removed from, PG&E facilities or violating this policy may obtain permission to enter or reenter provided the individual establishes, to the satisfaction of his or her employer and PG&E, that the previous activity which formed the basis for denying access or removal has been corrected and his or her future conduct will conform with this policy. PG&E retains the right of final approval for the entry or reentry of any individual previously denied access to or removed from PG&E facilities.

**II.    U.S. DEPARTMENT OF TRANSPORTATION REGULATIONS FOR DRUG AND ALCOHOL TESTING OF COMMERCIAL MOTOR VEHICLE DRIVERS AND OF NATURAL GAS PIPELINE WORKERS**

1.0    Contractor agrees that, to the extent it may be applicable to this Contract, Contractor shall comply with the U.S. Department of Transportation's (DOT) regulations for (i) commercial motor vehicle drivers, 49 CFR 382, Controlled Substances and Alcohol Use and Testing and (ii) work on gas, hazardous liquid and carbon dioxide pipelines, and liquefied natural gas pipelines, 49 CFR Parts 192, 193 or 195, Control of Drug Use in Natural Gas, Liquefied Natural Gas and Hazardous Pipeline Operations. Contractor shall establish and maintain a drug and alcohol testing program for its employees consistent with 49 CFR Part 40, Procedures for Transportation Workplace Drug Testing Programs and 49 CFR 199, Drug and Alcohol Testing, as applicable. Contractor shall ensure that any Subcontractor hired by Contractor to perform any portion of the Work under this Contract that is regulated by 49 CFR 192, 193, 195 or 382 shall also have a drug and alcohol testing program that complies with applicable DOT requirements.

2.0    PG&E's duly authorized representatives, the CPUC, DOT and appropriate agencies shall have, during the term of the Contract and for two years thereafter, access at all reasonable times to Contractor's drug and alcohol testing program records for the purpose of monitoring compliance with DOT regulations. Contractor shall ensure that any Subcontractor hired by Contractor to perform any portion of the Work regulated by 49 CFR Part 192, 193, 195 or 382 under this Contract shall also provide access to its drug and alcohol testing program records to PG&E's authorized representatives, the CPUC, DOT and appropriate agencies for the purpose of monitoring compliance with DOT regulations. Failure to comply with this requirement may, at PG&E's option, result in cancellation or termination of existing contracts and the loss of opportunity to bid on future contracts.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services     Attachment 3 - Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 30 of 36

April 2014

# EXHIBIT 5

## PG&E CONTRACTOR DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS

1. Contractor agrees to retain all documents and data, whether paper or electronic, created, collected or received for PG&E in the course of performing the Work or furnishing the materials under the Contract, including without limitation, documents, data, plans, drawings, diagrams, investigative notes, field notes, tests, photographs, records, calculations, summaries, and reports; provided that Contractor is not required to retain (i) draft versions of final written documents such as reports, presentations, or other written deliverables and (ii) documents that are inconsequential or ancillary to performance and documentation of the project or its deliverables as follows:

    [ ] a. the documents and data specified in **Exhibit 5A**, Document and Data List, to this Contract and/or in individual work authorizations (CWA) under this Contract; or

    [ ] b. all documents and data, whether paper or electronic, created, collected or received for PG&E in the course of performing the Work or furnishing the materials under the Contract.

    If neither Section 1(a) or Section 1(b) is checked, Section 1(b) shall apply. If Section 1(a) is checked, but documents and data are not specified in Exhibit 5A, or in a subsequently issued CWA, Section 1(b) shall apply. Collectively, the information shall hereinafter be referred to as "PG&E Contractor Documents."

2. Contractor shall store PG&E Contractor Documents in a secure and organized manner. All PG&E Contractor Documents shall be in legible form, whether paper or electronic. In managing and administering PG&E Contractor Documents, Contractor will comply with the requirements of "The Generally Accepted Recordkeeping Principles®" (see www.arma.org), or with modified requirements approved in writing by PG&E.

3. Upon completion of the Work or furnishing of the materials under the Contract, or upon completion of the Work or furnishing of the materials under each CWA under the Contract ("Work Completion Date"), PG&E will specify which of PG&E Contractor Documents must be transmitted by Contractor to PG&E ("PG&E Records"), provided however, unless otherwise agreed by PG&E:

    a. Contractor shall transmit to PG&E, or provide PG&E access to, PG&E Records on request within forty eight (48) hours or sooner if needed (without limitation) for regulatory, CPUC, safety, audit and/or litigation requirements;

    b. PG&E may specify that PG&E Records be delivered to PG&E on a regular basis prior to the Work Completion Date;

    c. With respect to PG&E Contractor Documents not transmitted to PG&E as PG&E Records, Contractor shall retain all such documents for twenty four (24) months after the Work Completion Date ("Post-Termination Retention Period"). During the Post-Termination Retention Period, PG&E Contractor Documents shall be retained by Contractor at no additional cost to PG&E until disposed of in accordance with Section 6 below. To the extent PG&E requests Contractor to retain PG&E Contractor Documents after the Post-Termination Retention Period, the parties will mutually agree on the terms and conditions of such additional retention;

    d. If PG&E Records are kept in electronic form, the following formats are acceptable for transmission to PG&E: (i) PDF, CAD or TIFF for drawings and diagrams and (ii) PDF for all other documents. If PG&E Records transmitted to PG&E consist of data in a proprietary format, Contractor shall make available to PG&E the proprietary tools or software necessary to access the data including after the transfer of the data to PG&E. This Section 3.d. shall not abrogate Contractor's obligation to produce PG&E Records in an alternative format (e.g., a native format) if set forth elsewhere in the Contract, in which case Contractor shall produce PG&E Records in each of the formats requested.

4. PG&E Contractor Documents shall be treated as confidential and shall not be disclosed to others unless Contractor is required to produce such documents pursuant to legal or regulatory requirements, in which case Contractor shall give PG&E maximum practicable advance notice prior to any production.

5. Contractor shall maintain a system for back-up of electronic PG&E Contractor Documents (e.g., files or databases) so they will be preserved for retrieval in the event that the originals are lost or destroyed.

6. If PG&E directs Contractor to dispose of PG&E Contractor Documents, Contractor shall do so in a confidential and secure manner, whether the format is electronic or paper. Proof of destruction of PG&E Contractor Documents shall be submitted to PG&E upon request.

7. If PG&E provides paper documents to Contractor in order to convert them to digital electronic format, Contractor shall return both the paper documents and the documents converted to digital electronic format to PG&E.

8. Contractor is responsible for ensuring that its Subcontractors regardless of tier comply with the obligations of Contractor where set forth in this **Exhibit 5**.

9. The terms and conditions of this **Exhibit 5**, including **Exhibit 5A** if attached, shall survive the termination of this Contract.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services    Attachment 3 – Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 31 of 36

April 2014

## EXHIBIT 5A

## DOCUMENT AND DATA LIST

If Section 1(a) of **Exhibit 5** is checked, Contractor agrees that in connection with this Contract or CWA, as applicable, the following PG&E Contractor Documents will be created, received and/or maintained by Contractor:

*[Insert list of all specific PG&E Contractor Documents
required under this Contract or CWA]*

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services    Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 32 of 36

Nov 2015

# EXHIBIT 6
# AUDIT RIGHTS

1. ACCURACY OF RECORDS.

    1.1  Contractor shall keep accurate records and books of accounts showing the items and costs billed under this Contract, as well as cost data supporting the Contract proposal and/or other representations, including detailed supporting cost data for assumptions and calculation of indirect cost rates specified in the Contract. Contractor shall also maintain nonfinancial documentation and records related to Work performed hereunder but not delivered to PG&E.

    1.2  Contractor's books and records must provide sufficient detail to verify the charges shall include, without limitation, the following:

    - Payroll records (hours, employee name, employee classification, multiplier breakdown, etc.) that account for total time worked under the Contract;
    - Canceled payroll checks or signed receipts for cash payroll;
    - Invoices (including all back-up details) for purchases, receiving and issuing documents, and all inventory records for Contractor's stock or capital items;
    - Paid invoices and canceled checks for purchased materials, Subcontractor, and third-party charges;
    - Records relating to air freight and ground transportation, including but not limited to handling, hauling, and disposing of materials/equipment; and
    - Accurate, auditable records of gifts and entertainment to individual PG&E personnel.

2. AVAILABILITY OF RECORDS. Contractor shall preserve and make available its records and books of accounts, both manual and those which are in machine readable form (collectively, "Records"), for a period of three years from the date of final payment under this Contract. If this Contract is terminated, Contractor's Records shall be preserved and made available for a period of three years from the date of termination or of any resulting final settlement, whichever is later. Records which relate to litigation or the settlement of claims arising out of the performance of this Contract, or costs and expenses of this Contract to which exception has been taken by PG&E, shall be retained until such appeals, litigations, claims, or exceptions have been concluded.

3. AUDIT. Upon reasonable notice, PG&E or its representatives shall have the right to audit, without restrictions and at no additional cost to PG&E, at any time during normal business hours, the items and costs described in this Section, including without limitation, all fees and direct and indirect costs incurred by Contractor and billed to PG&E, to verify the rates and costs billed to PG&E hereunder are as represented by Contractor. PG&E may use recognized statistical sampling methods to determine an estimate of the total amount, if any, of PG&E overpayments or underpayments to Contractor.

4. OVERPAYMENTS. Contractor shall refund to PG&E any payments to Contractor which are not in accordance with Contract terms or are not supported by Contractor Records or other valid evidence.

5. ERRORS/IRREGULARITIES. If errors, irregularities, inaccuracies, mistakes or the like ("Errors") are discovered by audit or other means and PG&E relied upon such Errors in accepting the rates, the affected rates shall be adjusted accordingly, with such adjustment retroactive to the effective date of the Contract and any overpayments refunded to PG&E.

6. MISREPRESENTATION OF COST OR PRICING DATA. If any price, including profit or fee, negotiated in connection with this Contract, or any cost reimbursable under this Contract, was increased by any significant amount because Contractor or a Subcontractor misrepresented cost or pricing data in negotiations, the price or cost shall be reduced accordingly. This provision also applies to any future change order or modification to this Contract which involves the submission of cost or pricing data. The knowing misrepresentation of cost or pricing data by Contractor shall be considered a material breach of this Contract.

7. TRANSACTION COSTS. If an audit determines that Contractor overcharged PG&E or if Contractor knowingly submits overcharges or misrepresents cost or pricing data in any amount, Contractor agrees to reimburse PG&E both the amount of the overcharges plus PG&E's associated transaction costs, including but not limited to costs associated with the discovery and determination of the overcharge amount, the discovery of misrepresented cost or pricing data, and the quantification of any resulting overcharges.

8. INTEREST ON OVERPAYMENTS. If PG&E makes an overpayment to Contractor as a result of Contractor over billings, Contractor shall be liable to PG&E for interest on the amount of such overpayment to be computed (1) for the period beginning on the date the overpayment was made to Contractor and ending on the date Contractor repays the amount of such overpayment to PG&E, and (2) at a rate equal to the prime rate charged by the Bank of America, NT&SA, San Francisco, California.

9. SUBCONTRACTS. Contractor shall include the requirements of this Exhibit in each Subcontract.

.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services Attachment 3 - Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 33 of 36

August 2017

**Exhibit 7**

**NERC REQUIREMENTS**

I.  **Applicability to Bulk Electric System Cyber Systems and Information**

Pursuant to a directive from the North American Electric Reliability Corporation (**"NERC"**), PG&E has implemented policies and procedures for the protection of facilities, systems, assets and information that are critical to the operation or support of the Bulk Electric System (**"BES"**). PG&E identifies these facilities, systems, assets and information in accordance with its internal utility procedures.

If this Contract relates to BES Cyber Systems or BCSI (as designated by PG&E), then Contractor must comply with the additional requirements described in this Exhibit 7. Contractor represents and warrants that it has consulted with PG&E to determine whether Exhibit 7 is applicable.

II. **Definitions**

The following terms are defined for use in this Exhibit:

"**Access**" means:

1)  Unescorted access by any person to facilities, systems and functions that PG&E deems critical to the support of the Bulk Electric System ("**Critical Facilities and/or Critical Systems**"), including persons working within PG&E Critical Facilities and/or Critical Systems; and

2)  Physical or electronic access by any person to BCSI, or administrative control over BCSI or systems containing BCSI. For the avoidance of doubt, disclosing BCSI to a person by any means constitutes Access to such information by that person.

"**BCSI**" means Bulk Electric System Cyber System Information in any form (whether printed or electronic) including data, files, and file attributes. BCSI is information about a BES Cyber System that could be used to gain unauthorized access or pose a security threat to the BES Cyber System, as determined by PG&E. BCSI is typically classified by PG&E as "NERC CIP Confidential – BCSI" or "Restricted – BCSI," but not all BCSI data will be designated as such in all formats.

"**BES**" means Bulk Electric System.

"**PRA**" means Personal Risk Assessment.

"**NERC**" means North American Electric Reliability Corporation.

"**WECC**" means Western Electricity Coordinating Council.

III. **NERC CIP Security Obligations**

A.  Contractor shall comply with all cyber security policies, plans and procedures relating to the BES Cyber Systems and/or BCSI as directed by PG&E. As directed by PG&E, Contractor shall provide documentation and evidence demonstrating such compliance. This may include the conduct of periodic tests and audits as specified by PG&E from time to time. Contractor acknowledges that Contractor's failure to comply and demonstrate compliance may subject Contractor and/or PG&E to fines and other sanctions.

B.  Before being granted Access, Contractor must satisfactorily complete PG&E's Vendor Security Review process. If Work is to be performed at Contractor locations, those locations must be approved by PG&E following completion of the Vendor Security Review Process. PG&E's approval does not limit its rights to conduct periodic audits and reviews as provided in the Contract.

C.  Contractor shall ensure that (i) any BCSI that is obtained by Contractor is stored and Accessed only within the United States, (ii) BCSI is not copied, exported, transferred or otherwise transmitted outside the United States, and (iii) no third party (including without limitation any

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services    Attachment 2, Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 34 of 36

individual, corporation, government or governmental agency), system or environment located outside the United States obtains Access to BCSI through Contractor. Without limiting any other term of this Contract, a third party, system, or environment will be deemed to have Access to BCSI if Contractor shares BCSI with such third party, system, or environment in any manner, or if such third party uses access tokens, cards, credentials, or other means of authentication furnished to Contractor by PG&E to obtain, view, download, or copy BCSI.

**D.** Contractor shall ensure that any personnel requiring Access successfully complete background checks ("**Personnel Risk Assessments**" or "**PRAs**") and PG&E-mandated security training before they obtain Access, in accordance with the following requirements:

1) Contractor shall perform a background screening for each individual that includes each of the following criteria: (i) Social Security Number verification; (ii) City, County, State and Federal Criminal Check for felonies and misdemeanors over the past seven years (in up to three counties where the individual has lived in the past seven years); (iii) "Global Watch" (check of 19 Federal and International Terrorist Watch lists);and (iv) validation of current residence and confirmation of continuous residence at this site for a minimum of the most recent 6 months (confirmed by period of residence, employment, or education at a specific site) and validation of other locations where, during the seven years immediately prior to the date of the criminal check specified in 4a(ii) above, the individual has resided for six consecutive months or more.

2) After performing an acceptable background check, the Contractor shall provide PG&E's Human Resources Department with a Personnel Risk Assessment Attestation Form in the form attached hereto as **Exhibit 7A** for the individual prior to the individual being granted Access. PG&E may request that Contractor provide a copy of the complete Personnel Risk Assessment results at the time the PRA Form is submitted.

3) Contractor shall require that each individual complete an initial training and annual PG&E web-based training session on safety, information security, compliance with PG&E codes and procedures, including but not limited to CORP-0804 Cyber and Physical Security Awareness training (or alternative training as designated by PG&E). Contractor shall direct that each individual complete the PG&E training program by CD or by hard copy format, if Contractor informs PG&E that web based training is not feasible.

4) After Contractor certifies to PG&E completion of the requirements set forth in paragraphs a. through c. above, PG&E will issue appropriate Access credentials. PG&E will deny Access to any individual for whom Contractor has not certified completion of the requirements set forth in paragraphs D(1) through (3) above.

5) Every seven years, Contractor shall perform background screening as described herein for each individual on continuing assignment who has Access.

6) Contractor shall retain documentation supporting the Personnel Risk Assessment Attestation Form for each individual with Access for a minimum of seven years.

7) PG&E may audit Contractor's background screening methodology and substantiate the accuracy of Personnel Risk Assessment Attestation Forms for each individual. Contractor shall respond to any auditing requests and activities, including but not limited to data requests, within one business day. PG&E and/or WECC will set the frequency of auditing the Contractor's PRA process and supporting records.

E. In addition to its other indemnity obligations hereunder, Contractor shall indemnify and hold harmless PG&E for any fines, penalties or other sanctions assessed against PG&E (including but not limited to fines, penalties or sanctions assessed against PG&E by the WECC, NERC, or the Federal Energy Regulatory Commission (FERC) for a violation of any NERC reliability standard) caused by Contractor's failure to perform its obligations under this Contract.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

## EXHIBIT 7A

### PG&E NERC CIP PROGRAM
### NON-EMPLOYEE ATTESTATION FORM
### COMPLETION OF PERSONNEL RISK ASSESSMENT (PRA) PROCESS

Please initial next to each line item below to verify that the following Non-Employee has received satisfactory results for each of the required background checks.

Non-Employee Name: _____

Contractor Name: _____

Requisition and/or PO Number: _____

Date NERC Background Check Completed: _____

**Background Investigation – Completed and Passed the Following (Includes International Components When Applicable).** *Initial next to each:*

_____ Criminal Felony / Misdemeanor Search: Past 7 years, all names, all counties off the social trace (include past 7 years residency check)

_____ Federal Criminal Search: Past 7 years, all names off the social trace

_____ Prohibited Parties

_____ SSN Trace

_____ SSN Validation

_____ Statewide Criminal Search

By completing and signing this form, Contractor confirms that the background investigation has been executed and satisfactory results received according to PG&E NERC CIP Program specifications for the above stated Non-Employee. All supporting documents must be kept on file with Contractor for a minimum of 7 years following the end of the Contractor's last non-employee's assignment at PG&E. Random audits of supporting documents may be conducted by PG&E or its designee, consistent with its right under the PG&E/Contractor contract, to ensure compliance with the requirements designated in the certification and contract.

☐ **I hereby certify that I am authorized to sign on behalf of the aforementioned Contractor:**

Contractor Representative Signature: _____

Contractor Representative Name (print): _____

Date Signed: _____

If you have any questions and need additional details regarding this process, please contact the PG&E Human Resources Department at nercaccess@pge.com.

DocuSign Envelope ID: C8379C84-EEF3-4165-ACEF-5864B1BC1CA7
05/23/2018 njs5

Consulting Services          Attachment 3  Consulting Services Long Form, General Conditions, GEI Consultants, Inc.
MSA No. C11056, Page 36 of 36

January 2018

## Exhibit 8

## PG&E Supplier Code of Conduct[1]
## Acknowledgement

On behalf of the Company identified below, I acknowledge that I have read the PG&E *Supplier Code of Conduct.*

I certify that the Company and its subcontractors and agents shall conduct work for or on behalf of PG&E in full compliance with the applicable standards and expectations described in the PG&E *Supplier Code of Conduct*, as it may be modified from time to time.

I am authorized to sign this Acknowledgement on behalf of the Company.

GEI Consultants, Inc.
**Company:** _____

**By:** _Bill Rettberg_____
━━11F9B292EC63401...
Bill Rettberg
**Name:** _____

Sn. VP
**Title:**_____

9/28/2018
**Date Signed:** _____

---

1 The Code can found online by typing "PGE Supplier Code of Conduct" into your browser, or by cutting and pasting the following url into your browser:
https://www.pge.com/includes/docs/pdfs/b2b/purchasing/2013_Supplier_Code_of_Conduct.pdf



