# EXHIBIT B12



# Contract Work Authorization (CWA)

This Contract Work Authorization ("CWA") No. C11481 is issued under and pursuant to the Blanket Agreement or Master Service Agreement No. C11056 dated September 28, 2018 (the "MSA") between the below-named Contractor ("Contractor"), a Massachusetts Company, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this CWA pursuant to and in accordance with the terms and conditions of the MSA.

| Contractor's Legal Name: | GEI Consultants, Inc. | Total Number of Pages: 14 |
|---|---|---|
| Contractor's Address: | 180 Grand Avenue, Suite 1410 Oakland, CA 94612 | |

| Project Name: | 2018 Combined Dam Safety Surveillance and Monitoring Plans (DSSMPRs) |
|---|---|
| Job Location: | Various Dams Throughout the PG&E Territory |

**WORK**: Contractor shall, at its own risk and expense, perform the Work described in this Contract Work Authorization and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Attachment 1, Scope of Work.

GEI Consultants to provide the necessary engineering services to prepare the updates of the DSSMPs and the 2018 DSSMRs for 66 jurisdictional dams plus Kunkle Dam which is not under FERC jurisdiction for the 2018 Combined Dam Safety Surveillance and Monitoring Plans project.

**ATTACHMENTS**: Each of the following documents are attached to this CWA and are incorporated herein by this reference:
Attachment 1: Scope of Work and Pricing, 10 Pages
Attachment 2: 1A General Conditions Required Exhibits, 2 Pages

| CWA TERM: | This CWA is effective upon signature by both parties and expires on December 31, 2019. Time is of the essence. |
|---|---|
| CWA COMPLETION: | Contractor shall commence performance hereof when directed to do so by PG&E and Work shall be completed by the completion date of December 31, 2019. |

**CONSIDERATION**: As full consideration for satisfactory performance of the Work under this CWA by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E CWA Change Order, fully executed by both PG&E and Contractor.

**TOTAL**: $336,277.00 (Three Hundred Thirty Six Thousand Two Hundred Seventy Seven Dollars and No/100)

## THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT WORK AUTHORIZATION.

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: GEI CONSULTANTS, INC. | |
|---|---|---|---|
| Signature | *Nathan Floyd* <br> DocuSigned by: <br> C49FCCF25ADF479... | Signature | *Bill Rettberg* <br> DocuSigned by: <br> 11F0B302EC63401... |
| Name | Nathan Floyd | Name | |
| Title | Supervisor, Sourcing Operations | Title | |
| Date | 10/16/2018 | Date | 10/16/2018 |

DocuSign Envelope ID: 339DA8CF-0081-4379-9A00-933BF22C4422



| ADMINISTRATION | | | |
|---|---|---|---|
| **PG&E Negotiator** | Holly Krieg | **Contractor Represent** | Bill Rettberg |
| **Phone** | 916-742-9543 | **Phone** | 510-350-2910 |
| **Email** | hxkn@pge.com | **Email** | |
| **Accounting Reference** | 10210270 | | |
| **PG&E Work Supervisor:** | Andrew Fisher-a1fi@pge.com | **Phone:** 415-973-4579 | |
| **INVOICE INSTRUCTIONS:** Contractor shall send invoices for each payment when due, showing the CWA number, to: PACIFIC GAS AND ELECTRIC COMPANY | **Send ORIGINAL Invoice to:** (See note below if using PG&E's electronic invoicing system) | PG&E Accounts Payable* PO Box 7760 San Francisco, CA 94120-7760 | |
| | **Send COPY of Invoice to:** | Johnny Chan-j9c1@pge.com | |
| | For information regarding invoice status, call PG&E's Paid Help Line at (800) 756-PAID (7243) or go to AP Web Reporting site at www.pge.com/actpay. *Note: Contractors using PG&E's electronic invoicing system do not need to mail a copy of the invoice to PG&E Accounts Payable. | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| **Distribution Date** | | |
| **Distribution of Copies:** | ☐ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☐ Contractor (Signed Original Copy) |
| | ☒ Work Supervisor: Andrew Fisher-a1fi@pge.com | ☐ Manager |
| | ☒ Invoice Approver: Johnny Chan-j9c1@pge.com | ☐ Supervisor |
| | ☐ V.P. | ☒ Sourcing/ Purchasing-Holly Krieg-hxkn@pge.com |
| | ☐ Director | ☐ Law |

62-4229 CWA (9/26/11)                    Sourcing



# Contract Work Authorization (CWA) Change Order

**This is Change Order ("CO") No. 1 to Contract Work Authorization No.** C11481 dated October 16, 2018 **issued under and pursuant to the Blanket Agreement or Master Service Agreement No.** C11056 dated September 28, 2018 **(the "MSA") between the below-named Contractor ("Contractor"),** a Massachusetts Company, **and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this CWA, as amended by this Change Order, pursuant to and in accordance with the terms and conditions of the MSA.**

| Contractor's Legal Name: | GEI Consultants, Inc. | **This Change Order consists of** 2 **pages.** |
|---|---|---|
| **Contractor's Address:** | 180 Grand Avenue, Suite 1410 | |
| | Oakland, CA 94612 | |
| **Project Name:** | 2018 Combined Dam Safety Surveillance and Monitoring Plans (DSSMPRs) | |
| **Job Location:** | Various Dams Throughout the PG&E Territory | |

<u>**CHANGES**</u>**: The Parties hereby modify the Contract Work Authorization referenced above as follows:**

Change Order No. 1 is issued to modify the Contract as follows:

Change Order No. 1 is issued to increase the total Contract Value by $24,200 for Contractor to perform the following additional Work requested and approved but not previously included in the original Scope of Work are hereby added to this Contract as further described below.

| Item # | Title | Unit | Total |
|---|---|---|---|
| 1 | Lower Lindsey Dam | $5,500 per dam | $ 5,500 |
| 2 | Scott Dam | 12 hours @145.62 | $ 1,800 |
| | | 2 hours @197.38 | $ 400 |
| | | 2 hours @256.15 | $ 500 |
| 3 | Additional time to finalize the reports | 80 hours @197.38 | $16,000 |
| | Total | | $24,200 |

Contractor shall provide PG&E approved subcontractor invoices, if any, to verify all costs associated with this Change Order.

This Change Order No. 1 represents full and final consideration for the changes described herein, including but not limited to all adjustments to price, schedule, guaranteed dates and performance criteria for work that was not included in the original Contract scope of work. All other work descriptions of the original Contract shall remain unchanged and in effect.

**ATTACHMENTS: The following are attached to this CWA Change Order and incorporated herein by this reference.**

Attachment No. N/A

| **PRICING CHANGES:** | Previous Total CWA Value: | $ 336,277.00 |
|---|---|---|
| | Addition or Deduction: | $ 24,200.00 |
| | Revised Total CWA Value: | $ 390,477.00 |

**All other terms and conditions of the CWA, as it may have been amended by previous CWA Change Order(s), if any, shall remain the same.**

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**," and, together with PG&E Corp., the "**Debtors**"), are debtors-in-possession in a proceeding pending under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Northern District of California. Nothing herein shall be deemed to constitute an assumption of the Contract or this Change Order, or a waiver or modification of the Debtors' rights to assume, assume and assign, or reject the Contract or this Change Order pursuant to section 365 of the Bankruptcy Code. The Debtors hereby reserves all rights available to them under such proceedings. Any amounts paid by the Debtors pursuant to this Contract or Change Order must be applied to services provided to the Debtors on or after January 29, 2019 (the "**Petition Date**") and shall not be applied to satisfy Claims (as defined in the Bankruptcy Code) arising prior to the Petition Date.

**THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CWA CHANGE ORDER.**

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: GEI CONSULTANTS, INC. | |
|---|---|---|---|
| Signature | | Signature | *DocuSigned by:* Bill Rettberg |
| | | | 11F9B292EC63401... |
| Name | Holly Krieg | Name | |
| Title | Sr Sourcing Specialist, Generation Sourcing | Title | |
| Date | | Date | 4/3/2019 |

62-1689 CWA (09-26-18)          Sourcing

DocuSign Envelope ID: CA6FA231-E862-45B6-83DB-EE0BAFC04409



| ADMINISTRATION | | | |
|---|---|---|---|
| PG&E Negotiator | Holly Krieg | Contractor Representative | Bill Rettberg |
| Phone | 916-742-9543 | Phone | 510-350-2910 |
| Email: | hxkn@pge.com | Email: | |
| Accounting Reference | 10210270 | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| Distribution Date | | |
| Distribution of Copies: | ☐ ARIBA Contracts ("CXXXX" series): Buyer uploads an executed copy in Ariba. | ☐ Contractor (Signed Original Copy) |
| | ☒ Work Supervisor : Andrew Fisher-a1fl@pge.com | ☐ Manager |
| | ☒ Invoice Approver : Johnny Chan-j9c1@pge.com | ☐ Supervisor |
| | ☐ V.P. | ☒ Sourcing/ Purchasing :Holly Krieg-hxkn@pge.com |
| | ☐ Director | ☐ Law |

62-1689 CWA (09-26-18)    Sourcing

# Purchase Order: 2700179314

*This purchase order was delivered by Ariba Network. For more information about Ariba and Ariba Network, visit http://www.ariba.com.*

| From: | To: | Purchase Order |
|---|---|---|
| **Pacific Gas and Electric Company** | **GEI CONSULTANTS INC** | (Changed) |
| | "180 GRAND AVE STE 1410" | 2700179314 |
| P.O. Box 7760 | OAKLAND , CA 94612 | Amount: $390,477.00 USD |
| San Francisco , CA 94120-7760 | United States | Version: 2 |
| United States | Phone: +1 (510) 3502900 | |
| Phone: +1 (800) 7567243 | Fax: +1 (510) 3502901 | |
| | Email: wrettberg@geiconsultants. | |
| | com | |

**Payment Terms**
NET 30

**Comments**
Comment Type:
General
Comment Body:

Comment By:
Johnny Chan
Comment Date:
2018-10-05T15:34:11-07:00

Comment Type:
General
Comment Body:

Comment By:
Holly Krieg
Comment Date:
2018-10-16T15:40:06-07:00

Comment Type:
General
Comment Body:

Comment By:
Holly Krieg
Comment Date:
2019-04-03T14:19:00-07:00

Comment Type: Terms and Conditions
Body:1.0 DEFINITIONS
Contractor means the Party, identified on the face of the Purchase Order, performing Work for PG&E.
Deliverables means any written materials to be provided by Contractor under this Purchase Order, including but not limited to reports, manuals, data, technical drawings, and presentations.
Goods means all equipment, material, parts, and other personal property purchased by PG&E under this Purchase Order.
Party or Parties means, in the singular, Contractor or PG&E, and in the plural, both Contractor and PG&E.
Purchase Order or PO means the contract between the Parties, comprised of the Purchase Order form, these Terms and Conditions, and any other document incorporated into the Purchase Order. A reference to the face of the Purchase Order means the Purchase Order form.
Services means all supervision, labor, materials, equipment and requirements necessary to perform the Work described on the face of the Purchase Order and includes all Deliverables and Goods provided hereunder.
"Subcontract" means an agreement between Contractor and Subcontractor or between Subcontractors at any level for a portion of the Work.
"Subcontractor" means the party or parties entering into a Subcontract with Contractor or another Subcontractor to perform a portion of the Work.
Work means, collectively, any and all Goods, Services and Deliverables to be provided by Contractor under this Purchase Order, regardless of whether or not the Goods were manufactured by Contractor.


2.0 ORDER AND ACCEPTANCE

2.1 Applicability: These terms apply to purchases of goods and services that are not already subject to a contract, including a master agreement or blanket agreement, between the parties. However, these terms are automatically generated by PG&E s purchasing system and may be inadvertently attached to work orders, contract work authorizations, and other transactions that are already subject to a contract. If the Parties have entered into a separate contract for the goods or services, then the terms of that contract apply and the terms of this Purchase Order are not applicable.

2.2 Acceptance: This Purchase Order is PG&E s offer to purchase from Contractor the Work described in this Purchase Order. ANY OF THE FOLLOWING SHALL CONSTITUTE CONTRACTOR S ACCEPTANCE OF THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER: (i) WRITTEN ACCEPTANCE OF THIS PURCHASE ORDER; (ii) SHIPMENT OF ALL OR ANY PORTION OF THE GOODS COVERED BY THIS PURCHASE ORDER, OR (iii) COMMENCEMENT OF PERFORMANCE OF THE SERVICES. ANY ADDITIONAL OR DIFFERENT TERMS PROPOSED BY CONTRACTOR, WHETHER IN ANY PROPOSAL, QUOTATION, CONFIRMATION, ACKNOWLEDGMENT, INVOICE, NOTATION OR INTERLINEATION ON THE PURCHASE ORDER OR OTHERWISE, ARE EXPRESSLY REJECTED AND SHALL BE OF NO FORCE AND EFFECT, AND NO COURSE OF DEALING, USAGE OF TRADE, OR COURSE OF PERFORMANCE SHALL BE RELEVANT TO EXPLAIN OR SUPPLEMENT ANY OTHER TERM. If the Parties have entered into a separate contract for the Goods, then in case of conflict between this Purchase Order and the contract, the terms of the contract shall prevail.

2.3 Exhibits: THIS PURCHASE ORDER SPECIFICIALLY INCLUDES THE EXHIBITS IN EFFECT ON THE DATE OF THIS PURCHASE ORDER AND WHICH CAN BE FOUND AT http://www.pge.com/suppliers. THE EXHIBITS ARE HEREBY INCORPORATED INTO THIS PURCHASE ORDER BY REFERENCE.

2.4 Performance: Time is of the essence, and PG&E may terminate this Purchase Order if, as applicable, the Goods are not shipped or the Services are not commenced by the date specified on the face of the Purchase Order. No change in the scheduled performance date is permitted without PG&E s prior written consent.

2.5 Changes: PG&E may make adjustments and changes within the general scope of this order by written notice to Contractor, including but not limited to drawings and specifications for specially manufactured Goods, place of delivery, method of shipment, packing of the Goods, and description of the Services, and Contractor shall comply with such instructions. If the changes affect the cost of or the time required for performance, an equitable adjustment in the price or delivery or both shall be made, provided that no change

by Contractor shall be allowed without written approval of PG&E. Unless waived in writing by PG&E, Contractor must provide written notice of any claim for adjustment within 30 days from the date Contractor receives notice of the requested changes.

2.6 Notice Concerning Electronic Purchase Orders: PG&E s Email Purchase Order Program provides the opportunity to receive PG&E Purchase Orders quickly via email. Participation in the program requires that Contractor provide PG&E with its Internet email address for delivery of Purchase Orders. To minimize possible delays in receipt of Purchase Orders, PG&E suggests that Contractor establish a general email box accessible to Contractor s staff, rather than a single individual s email address. Contractor should retrieve PG&E email Purchase Orders at least once daily during business hours to help ensure timely receipt and processing. Participation in the Email Purchase Order Program requires use of free Adobe Reader software which can be downloaded at http://get.adobe.com/reader/.

## 3.0 GENERAL

3.1 Independent Contractor. Contractor is an independent contractor, and all persons hired by Contractor in connection with this Purchase Order shall be employees or subcontractors of Contractor and shall not be construed as employees or agents of PG&E in any respect.

3.2 Non Exclusivity. THIS IS NOT AN EXCLUSIVE AGREEMENT. THIS PURCHASE ORDER DOES NOT GUARANTEE CONTRACTOR ANY VOLUME OR DURATION OF WORK.

3.3 Amendments; Non-Waiver. No modification or change to this Purchase Order, or waiver of any breach or default, shall be binding or effective unless expressly set forth in writing by Change Order signed by the authorized representative of each Party. Waiver by either Party of any breach or default shall not be deemed to be a waiver of any other breach or default of the same or any other requirement, nor shall any waiver of an incident of breach or default constitute a continuing waiver of the same.

3.4 Subcontracts. Contractor shall not enter into subcontracts ( Subcontracts ) without the prior written approval of PG&E. PG&E s approval of any Subcontract shall not relieve Contractor of its obligations to PG&E under this Purchase Order. The provisions and obligations of this Purchase Order shall apply to any Subcontract, and Contractor shall be responsible to PG&E for any damages to PG&E arising out of Subcontracts not in accordance with this Purchase Order. Nothing in this Purchase Order shall create any contractual relations between a Subcontractor and PG&E.

3.5 Limit of Liability. NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF REVENUES OR PROFITS, COMMITMENTS TO SUBVENDORS, RENTAL OR LEASE AGREEMENTS, AND PERSONAL SERVICE CONTRACTS, EVEN IF SUCH PARTY WAS AWARE OF THE POSSIBILITY OF SUCH DAMAGES; PROVIDED, HOWEVER, THAT NOTHING IN THIS CLAUSE SHALL AFFECT CONTRACTOR S OBLIGATIONS IN THE CLAUSES CONCERNING INFRINGEMENT PROTECTION AND INDEMNIFICATION. PG&E S TOTAL OBLIGATION UNDER THIS PURCHASE ORDER IS SET FORTH IN THE TOTAL AMOUNT FIELD ON THE FACE OF THE PURCHASE ORDER.

3.6 Tax Withholding: Contractor represents and warrants that it will withhold all taxes, if any, which are required to be withheld under applicable law with respect to payments to persons hired by Contractor who perform Services for PG&E. Contractor shall indemnify and hold PG&E harmless, on an after-tax basis, for any liability incurred by PG&E as a result of Contractor s failure to institute any such required withholding.

## 4.0 BILLING AND PAYMENT

4.1 Billing
(A) Time and Materials: Contractor shall submit invoices monthly for time and materials work according to the billing rates in the Purchase Order.
(B) Lump Sum and Unit Price Work: Contractor shall submit an invoice upon completion and final acceptance by PG&E of all lump sum and unit price Work.

4.2 Sales Tax: PG&E IS NOT TAX EXEMPT. Invoices shall include sales tax where applicable. However, no sales tax applies to prepaid freight charges.

4.3 Expenses. All reimbursable expenses shall be reasonable, ordinary, and necessary and shall be billed to PG&E at cost to Contractor. All air travel costs within or outside of the United States will be reimbursed only on a coach fare basis and all rental car costs will be reimbursed only on a subcompact rate basis. All other reimbursable mileage shall be at the current IRS rate.

4.4 Invoice Requirements: PG&E will reject any invoices that do not meet the following minimum requirements:
(A) Each invoice must specify the Purchase Order number, item number, shipping point and delivery address;
(B) A separate invoice must be submitted for each Purchase Order. Individual Purchase Orders may not be combined on one invoice;
(C) Invoices must include only items and charges specified on the Purchase Order. Invoices with additional items or charges (e.g., surcharges) will be rejected; and
(D) PG&E must receive invoices within 60 days after final acceptance of the Work. PG&E will not be liable for payment of late invoices received after the 60 day period.

4.5 Invoice Instructions: Contractor shall submit invoices in accordance with the instructions as designated on the service contract order and include the purchase order number. All timelines for payment of invoices run from the date a correct invoice is received by PG&E s Accounts Payable department. All invoices submitted to and accepted by PG&E s Accounts Payable department by 6:00 PM on a business day are considered received that same day. Electronic invoices submitted through PG&E s electronic invoicing system and accepted by PG&E s Accounts Payable department after 6:00 PM may not be considered received until the next business day. Paper invoices must be submitted to PG&E s Accounts Payable department at the following address only:
PG&E Accounts Payable
PO Box 7760
San Francisco, CA 94120-7760
Invoices submitted to any other office, location or address, including a local office or the department in charge of the work, are NOT considered received for payment purposes. The discount and net due date timelines for invoice payment DO NOT BEGIN until the receiving location has forwarded a correct invoice to PG&E s Accounts Payable department and the invoice has been received and accepted.

4.6 Payment. PG&E may withhold from the payment any agreed withholding until satisfactory completion of all the Work, or which in PG&E s reasonable opinion is necessary to provide security against all loss, damage, expense and liability covered by the indemnity provision. PG&E will notify Contractor of any invoice deficiencies or will return the invoice to Contractor with the deficiencies noted. Contractor shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Contractor, Contractor shall resubmit a corrected invoice.

4.7 Payment Terms. Unless otherwise specified herein, the payment terms for this Purchase Order are 2% 15 Dynamic Net 45. PG&E's payment terms are a dynamic sliding scale early payment discount. The 2% discount applies when PG&E pays the invoice within 15 days. The discount decreases proportionally each day thereafter until Day 45, the net due date, when zero discount applies. All timelines are calculated from the date a correct invoice is received and accepted by PG&E s Accounts Payable department in San Francisco.

4.8 Final Invoice. The final invoice shall be marked FINAL and must be received by PG&E within sixty (60) calendar days after completion of the Work. PG&E will not be liable for payment of any late invoices that are received by PG&E beyond such 60 day period.

4.9 Withholding. PG&E may withhold from the final payment due Contractor hereunder such amounts as, in PG&E opinion, are reasonably necessary to provide security against all loss, damage, expense and liability covered by the indemnity provision.

4.10 Delinquent Accounts. PG&E may retain from any payments due hereunder sufficient funds to discharge any delinquent accounts of Contractor for which liens on PG&E's property have been or can be filed, and PG&E may at any time pay therefrom, for Contractor's account, such amounts as are admittedly due thereon.

5.0 PROVISION OF GOODS.
The following provisions shall apply to provision of Goods under this Purchase Order:

## 5.1 PACKING, SHIPMENT AND INSPECTION

(A) Packing: Supplier shall package and pack all Products in a manner which is (i) in accordance with good commercial practice, (ii) acceptable to common carriers for shipment at the lowest rate for the particular goods, and (iii) adequate to ensure safe arrival of the Products at the named destination. Supplier shall mark all containers with necessary lifting, handling and shipping information and with purchase order numbers, date of shipment, and the names of the consignee and consignor, if applicable. An itemized packing list shall accompany each shipment, which shall include information required by the purchase order and the related part specification. The price of the Goods includes packing materials. PG&E will not pay additional charges for packing.

(B) Packing List Instructions: (i) The packing list must be a clear, legible document identifying Contractor s name, a contact name and phone number, along with the shipping point, delivery address, PG&E Purchase Order number and line item, and the PG&E Material Code. (ii) Separate packing lists shall be placed in a plastic envelope and securely attached to each package, skid or pallet, as applicable. (iii) Contractor shall not make partial shipments except with prior written authorization (including e-mail) from PG&E. Authorized partial shipments must be identified on the packing list and specify the PG &E Purchase Order number, line item and quantity. If kit components are shipped separately, the packing list must clearly identify the partial shipment. (iv) The packing lists of any 3rd party vendor, Subcontractor or carrier must also comply with these requirements.

(C) Material Safety Data Sheets: Contractor shall submit a Material Safety data Sheet (MSDS) for all materials requested on this Purchase Order that could be hazardous to humans as required by Title 8, California Code of Regulations, Section 519. Contractor shall also submit an amended MSDS whenever there is a formulation change. Contractor shall provide the MSDS to the following address:

Pacific Gas and Electric Company
Safety, Health and Claims Department
B23A Industrial Hygienist Group
P.O. Box 770000
San Francisco, CA 94177

(D) Shipment terms. Unless otherwise specified herein, the shipment terms for this Purchase Order are FOB SHIPPING POINT FREIGHT COLLECT. All FOB Shipping Point shipments are required to route through Agistix.com. If you have a user ID go to Agistix.com and route: Carriers: For weights up to 150 lbs, ship via UPS. For weights greater than 150 lbs and palletized, use CH Robinson, For Air Freight, contact Aeronet. If you do not have a user ID, or have any questions please email: pgefreighttransportation@pge.com

(E) Title and Risk of Loss: Contractor warrants that it has and shall convey to PG&E good and clear title, free from any security interest, lien, or other encumbrance, to all Goods delivered. Contractor assumes all risk of loss of or damage to all Goods ordered and all work in progress, materials and other items related to the Purchase Order until the same are accepted by PG&E.

(F) Freight Charges: (i) Standard: Unless otherwise stated, the freight vendor should invoice PG&E directly. (ii) If the Purchase Order provides that Contractor will pay the freight costs, Contractor shall submit the freight bill to PG&E along with the invoice. If Contractor's invoice does not include a freight bill, PG&E reserves the right either not to pay the freight costs or to offset the freight charges against the Contractor's invoice. Prepay and add shipments must be supported by a copy of the carrier's freight bill, except for UPS shipments, which are billed directly to PG&E. (iii) Failure To Comply With Routing Instructions: PG&E reserves the right to back-charge Contractor for freight overcharges caused by failure to comply with these routing instructions, including Goods tendered freight collect to other than PG&E-designated carriers in the shipping instructions (misrouted) or Goods shipped 'prepay and add.

(G) Inspection: PG&E may require inspection and testing of material and workmanship at Contractor's plant, PG&E's location, or both. Notwithstanding any inspection during manufacture or witnessed test at Contractor's plant, final inspection and acceptance of the Goods shall occur at PG&E's delivery location.

## 5.2 Warranty of Goods:

(A) Warranty: Contractor warrants that the Goods and all parts thereof, whether or not manufactured by Contractor, shall be of the kind and quality described in this Purchase Order, free of defects in workmanship, material design, and title, shall perform in the manner set forth in the Purchase Order, shall be of good and merchantable quality, and shall be fit for their intended purpose.

(B) Remedies. Contractor shall repair or replace at its expense any part of the Goods that develop defects due to faulty material or workmanship within 12 months after the Goods are placed in operation by PG&E; provided that unless otherwise specified, the warranty period for Goods used by PG&E in transmission or distribution of natural gas or electricity or generation of electricity shall be 24 months after the Goods are placed in operation by PG&E. Contractor shall at its expense repair or replace other work or equipment damaged as a result of the defects, or as a result of the repair thereof, and hold PG&E harmless from repair

expenses. Warranties will be provided at no charge to PG&E. Contractor will assume full responsibility to coordinate all warranty terms with approved manufacturers, including but not limited to: (i) Coordinating the issuance of Return Material Authorization (RMA) to PG&E on a timely basis and collection of non-compliant material within a reasonable time (normally not to exceed two weeks from notification of the need to collect that material); (ii) Timely notification to PG&E of product defects as announced by the manufacturer or manufacturer s suppliers; and Coordination of any compensation owed to PG&E from the manufacturer for the installation of defective materials within the warranty period. (iii) Coordinating the issuance of Return Material Authorization (RMA) to PG&E on a timely basis and collection of non-compliant material within a reasonable time (normally not to exceed two weeks from notification of the need to collect that material); (iv) Timely notification to PG&E of product defects as announced by the manufacturer or manufacturer s suppliers; and (v) Coordination of any compensation owed to PG&E from the manufacturer for the installation of defective materials within the warranty period.

5.3 SUPPLIER QUALITY ASSURANCE (SQA) MANAGEMENT SYSTEM:

(A) Introduction. To assure safety, reliability, and affordability of procured material, Contractor shall comply with PG&E's material quality requirements. These requirements are fully defined in PG&E's policies and procedures, with a summary provided below. Non-compliance with PG&E requirements and/or problematic quality may lead to consequences including but not limited to Contractor probation with additional Contractor cost related to oversight performed by PG&E Supplier Quality and/or contracted third parties, and/or business diverted to another supplier. The following section highlights certain material quality requirements for direct material suppliers to PG&E for products and custom tools used in power generation (excluding nuclear) and the transmission and distribution of natural gas and electricity. Contractor is responsible for complying with PG&E's Supplier Qualification Manual, SCM-2104M, as it may be revised from time to time. In case of conflict between this summary and the Manual, the Manual shall control. The Manual is available at PG&E's website, www.pge.com, at the following link, and is specifically incorporated herein by reference: http://www.pge.com/includes/docs/pdfs/b2b/purchasing/supplie rs/SupplierQualificationManual.pdf.

(B) Record Retention: Records required by applicable industry product standards shall be retained for not less than the period of time specified by any applicable industry standards or five years, whichever is longer. Records required to provide evidence of conformity to requirements and of the effective operation of the quality management system shall be retained for a minimum of five years. Supplier's records shall support material traceability to include material code, description, manufacturer, ship date to PG&E and serial number. Supplier shall maintain this data in an on-line spread sheet for the duration of the contract and shall be available for verification and download by PG&E. Supplier shall notify PG&E prior to the disposal of any quality records.

(C) Right of Access: PG&E reserves the right to visit Suppliers and sub-Suppliers for audits or business meetings during the normal course of business or to perform source inspection and surveillance. PG&E will use reasonable efforts to provide at least five (5) days advance notice and work with Supplier to ensure adequate preparation for audit and business visits.Supplier shall provide advance notice to PG&E for planned surveillance or source inspection activities consistent with manufacturing schedules or as required for key hold points or witness points .

(D) Change Management Process: This process implements a formal PG&E policy requiring approval for all supplier changes. It requires a formal system for assessing, tracking & documenting changes; improves PG&E ability to be aware, prepare and support the change; and ensures pre-approval to avoid the adverse effect of random changes. The Supplier is required to implement a Configuration Management System to ensure the control of documentation and the definition of product manufactured and / or designed for PG&E by the Supplier or its sub-Suppliers.

(E) Material Traceability: Supplier may be required to maintain traceability data on oil filled or solid state or vacuum operated products. The traceability data to include material code, description, manufacturer, ship date to PG&E, type of oil (mineral, FR3, silicon), PCB Concentration at time of manufacture and serial number. This data shall be maintained in an on-line spread sheet for the duration of the contract and shall be available for verification and download by PG&E. Records shall be maintained by Supplier for the useful life of the equipment and/or transferred to PG&E at the end of the contracting period; plus any applicable record retention requirements in the contract.

(F) Control of Sub-tier Suppliers: If a Supplier chooses to outsource a process or product, the Supplier is responsible for qualification and surveillance of the sub-Supplier to PG&E requirements and notifying PG&E of this qualification. PG&E reserves the right to review the Supplier s process for selection, qualification and surveillance of its sub-Suppliers; to approve or disapprove the sub-Supplier s qualification; and audit and monitor the sub-Supplier s processes and facilities when deemed necessary. The Supplier shall perform routine quality audits and inspection of its key sub-Suppliers to ensure oversight, knowledge and control of critical or special processes as well as changes enacted by the sub-Supplier. In addition, the Supplier shall

have a documented system in place to inspect custom incoming components from sub-Suppliers for adherence to drawings or specifications. The Supplier shall conduct requalification to validate any major changes to processes or product provided by the sub-Suppliers, including First Article inspections. Key sub-Suppliers, sub-Supplier processes, or sub-Supplier manufacturing locations or critical components that affect form, fit, or function that are approved as part of the PG&E qualification are considered frozen and cannot be changed without resubmittal and approval of the required documents by PG&E.

(G) First Article: Supplier shall inform and monitor sub-tier Suppliers to ensure that any major changes to their products or facilities are communicated to PG&E Supplier Quality and Sourcing personnel with at least 30 days prior to the commencement of that change. PG&E shall be notified at minimum through the website firstarticle@pge.com and shall include the contact information for the individual at the distributor most knowledgeable about the change. PG&E personnel will respond with follow-up questions and/or directions on any further testing/measurements/certs that may be required to "re-qualify" the product or facility changes. This note does not apply to custom or "one-off" products.The changes covered by this note include:
Major revision to a product produced for PG&E
Change of location of manufacturing or major change of facility
Change of sub-tier Supplier to a Supplier for a major component of a product
Break of production (that will begin production of that product) for at least 2 years PG&E shall be notified at minimum through the email firstarticle@pge.com and shall include the contact information for the individual at the distributor most knowledgeable about the change. PG&E personnel will respond with follow-up questions and/or directions on any further testing/measurements/certs that may be required to "re-qualify" the product or facility changes. This note does not apply to custom or "one-off" products.

(H) Quality Representation: Supplier shall maintain at least one quality professional on staff to support duties and tasks as noted in the terms and conditions of this Purchase Order. Supplier shall maintain a staff of trained quality inspectors (as required) to ensure consistent and accurate quality inspection of products as required in this Purchase Order.

(I) Hold Points and Witness Points: Hold Points are mandatory verification points identified by the PG&E Supplier Quality Engineer (SQE) beyond which work may not proceed until a PG&E representative performs verification or surveillance and provides notice to proceed. Source inspection prior to product release and PG&E surveillance of a manufacturing step, special process test or inspection are examples of Hold Points. Hold points or witness points, when required, will normally be communicated through purchase order notes. Witness Points require the Supplier to notify the SQE in writing prior to completion of those steps. After notification, work may not proceed beyond a Witness Point without action by the SQE. The Supplier shall notify the SQE of Hold Points or Witness Points in the manufacturing or qualification process schedule a minimum of ten (10) days in advance (unless otherwise agreed upon with the SQE).

(J) Supplier Inspection of Parts: Supplier shall establish a formal inspection process to ensure all required items are appropriately inspected to meet PG&E s quality requirements. Note: Supplier shall be provided an inspection plan by PG&E for each item subject to inspection. Supplier shall notify PG&E Supplier Quality at least 15 business days prior to the need for the unique inspection plans. Inspection plans are subject to change by PG&E and shall be modified by Supplier to reflect those changes driven by PG&E immediately upon receipt. PG&E may on occasion specifically add or subtract material codes from inspection based on quality concerns or levels of successful inspection. Supplier shall maintain records of inspection and provide the data in a usable format with a minimum of the material code, part description, Supplier name, pass / fail status, quantity and reason for failure if applicable and related rejection report number.

(K) Supplier Re-inspection of Rejected Lots at PG&E: Supplier shall be available to re-inspect 100% of parts rejected by PG&E during the course of inspection at PG&E facilities. This effort shall normally affect large or critical lots and would be conducted when lots are rejected by PG&E based upon a sampling plan rejection. The support would normally be expected to be on site at PG&E at the required location. The re-inspection shall generally be accomplished in not more than 4 business days from notification of the need for 100% inspection. Supplier shall report the inspection results to PG&E Supplier Quality immediately upon completion.

(L) Reporting Failures: Upon being informed of any product quality or usability problem(s) (including but not limited to recurrent product failures, Supplier bulletins, and warranty return issues) that may affect products that have been and/or are being sold to PG&E, the Supplier of that product shall inform PG&E of the particular product quality or usability problem(s) within five (5) business days of the discovery by emailing the related SQA Manager or Director. The Supplier shall additionally exercise reasonable efforts, in a timely manner, to work with PG&E to ensure all suspect Goods are removed from PG&E s system and shall do so at no material or labor cost to PG&E.

(M) Customer Service and Technical Support: Supplier will provide key contacts representing quality at their plant(s) and if applicable their corporate headquarters. Technical support from the Supplier plants shall be available to PG&E if needed up to 7 days per week 24 hours a day. During problematic quality or product qualifications, the Supplier s quality organization will lead routine meetings, issue minutes, and maintain

plans for qualification and corrective actions.

(N) Preventive Maintenance: The Supplier shall identify key process equipment and tooling, develop and document a Preventive Maintenance program. PG&E may verify that such programs are documented and effectively implemented during Supplier audits

(O) Metrics: Supplier will provide to PG&E a 4-Panel dashboard report format or an equivalent alternative upon request to demonstrate the Supplier s continuous improvement trend over time to reduce material defects. This report will contain trending of total inspection rejects over time, Pareto trending observed condition leading to the rejects, details of number of parts rejected as a function of time and part type, to include Corrective Action Plans and Status. In the case of problematic quality, updates are required bi-weekly and timely achievement of Scorecard requirements will prevent reductions in product allocations.

(P) Sub-Tier Supplier Metrics: Supplier shall maintain metrics results from their inspections of each unique supplier for each lot inspected and shall take corrective action as supplier's metrics vary from acceptable levels as agreed upon with PG&E Quality. Supplier shall routinely notify PG&E quality related to suppliers that are struggling with maintaining the agreed upon metrics targets and shall inform PG&E upon request the steps taken to work with that Supplier.

(Q) Supplier Response to SCARs (Supplier Corrective Action Response): Unless otherwise agreed, Supplier shall (i) achieve

"containment" of any noted defects within three business days of finding those defects or of being notified of those defects by PG&E; and (ii) provide a corrective action plan to PG&E or plan of corrective action within 10 business days of finding or of being notified of those defects by PG&E.


## 6.0 SERVICES WORK

6.1 Services Warranties. In addition to the warranties implied in fact or in law, Contractor warrants that it will perform the Work with the degree of skill and care required by currently prevailing best industry practices. The equipment, material and parts furnished by Contractor, whether or not manufactured by Contractor, shall be of the kind and quality described in the Purchase Order, free of defects in workmanship, material, design, and title, shall be of good and merchantable quality, and shall be fit for its intended purpose. Contractor shall repair or replace at its expense any part of the Work that develops defects due to faulty material or workmanship within a period of one year after being placed in operation by PG&E. Contractor shall at its expense repair or replace other work or equipment damaged as the result of the defects, or as a result of the repairing thereof, and hold PG&E harmless from repair expenses. Neither acceptance of the Work by PG&E nor payment therefore shall relieve Contractor from liability under the indemnity or any of the guarantees contained in or implied by this Purchase Order.

## 7.0 PROVISIONS APPLICABLE TO ALL WORK

7.1 Additional Work or Changes in Work

(A) Procedure For Additional Work: Before proceeding with any work involving possible claims for extra compensation not specified in the Purchase Order, Contractor shall submit in writing to PG&E a detailed estimate of the cost for such proposed work, including extensions and Change Orders, as follows: (i) Description of work to be performed, including detailed breakdown by identifiable tasks, (ii) Estimated cost of each task, and (iii) Expected date of completion of each task.

(B) PG&E Approval Needed For Additional Work: Contractor shall not proceed with any work not authorized in the Purchase Order without first receiving specific written authorization or a Change Order signed by PG&E. CONTRACTOR AGREES THAT ALL COSTS FOR ANY SUCH MODIFICATION OR CHANGE PERFORMED BY CONTRACTOR WITHOUT THE PRIOR WRITTEN APPROVAL OF PG&E S REPRESENTATIVE AUTHORIZED TO APPROVE SUCH CHANGE SHALL BE AT CONTRACTOR S SOLE RISK AND EXPENSE.

(C) PG&E Changes To Work. PG&E reserves the right to make such changes in Work, specifications, or level of effort as may be necessary or desirable, and any difference in Purchase Order price resulting from such changes shall be approved in writing by PG&E before the Work is begun.

7.2 Intellectual Property and Data Security

(A) Royalties and License Fees: Royalties, license fees or other charges for patents, copyrights, licenses, or other intellectual property for designs, processes, machinery, equipment, technology, published or unpublished data, information or materials, including but not limited to, manuals, computer programs or other deliverables furnished by Contractor for the Work, or for processes or methods employed by Contractor in performing the Work, shall be included in the Purchase Order price. Contractor shall indemnify PG&E against all loss, damage, expense, and liability arising out of the infringement or alleged infringement of any patent,

trademark, copyright or other intellectual property right by the equipment, material and parts furnished by Contractor.

(B) Use and Reproduction Rights: PG&E shall have the unrestricted right of use and reproduction of all documentation, including but not limited to, instructional manuals, and other materials related to the Work furnished hereunder. Such use and reproduction by PG&E or by contractors doing work for PG&E shall not require further permission by Contractor, nor shall it constitute infringement of Contractor s ownership rights, including copyright, to such materials. Any claims of Contractor to ownership in materials furnished hereunder must be expressly set forth in the Purchase Order or shall be disclosed to PG&E in writing.

(C) Ownership of Deliverables: PG&E shall own all data, drawings, designs, reports, information, manuals, computer programs or other written, recorded, photographic or visual materials, or other deliverables produced in the performance of this Purchase Order. Contractor shall retain no ownership, interest, or title in them except as may otherwise be provided specifically in this Purchase Order.

(D) Contractor s Use of PG&E Property: All records, reports, computer programs, written procedures and similar materials, documents or data, in whatever form, provided by PG&E for Contractor s use in the performance of Work under this Purchase Order shall remain the confidential property of PG&E and shall be returned to PG&E immediately upon completion of Contractor s use for the performance of Work or earlier upon the written request of PG&E.

(E) Third Party Licenses: Contractor represents and warrants that it shall comply (and ensure that its personnel and Subcontractors comply) with all third party licenses, terms of use, policies and procedures that apply to or otherwise govern access to and/or use of any third party materials made available by PG&E to Contractor under this Purchase Order.

7.3 Confidentiality and Data Security

(A) Confidentiality: In the course of performing the Work under this Purchase Order, Contractor may have access to confidential commercial or personal information concerning, but not limited to, technological, ratemaking, legislative, personnel, and customer-related information, matters and practices of PG&E, its parent company, subsidiaries, affiliates, or members of the public. Contractor agrees not to disclose any such confidential information or otherwise make it available to any other person or entity, including any affiliate of PG&E that produces energy or energy-related products or services, without the prior written approval of PG&E.

(B) No Customer Data: Contractor warrants that it is not receiving and will not accept any PG&E Customer Data under this Purchase Order. As used in the preceding sentence, Customer Data means, collectively, any and all data and information of or concerning any identified or identifiable PG&E retail or business customer or PG&E employee, including, but not limited to, name, home address and home telephone number; device IDs; e-mail addresses; billing information; electric and gas energy usage, electric service (including, without limitation, service account number, electricity demand (in kilowatts), monthly billed revenue, credit history, rate schedule(s), or number or type of meters at a location).

(C) Security: Contractor hereby represents, warrants and covenants to PG&E that the Work, including any hardware, software, firmware, equipment and other deliverables, does not and will not contain or make available any Malicious Code, defined as any malicious or unauthorized code, scripts, routines or techniques (including without limitation any virus, spyware, ransomware or other malware) that is designed to erase data or programming, or infect, impair, modify, record, take control of, disrupt, damage, destroy, disable, shut down or permit or cause unauthorized access to or misuse of a computer system or any component thereof. Without limiting any of PG&E s rights and remedies with respect thereto (all of which are expressly reserved), if Contractor detects or is made aware of Malicious Code in the Work, Contractor shall notify PG&E immediately, remove such Malicious Code, remediate the effects of such Malicious Code, and restore any lost or corrupt data if applicable.

(D) Cyber Protection for Programmable Devices: The following requirements apply to any deliverables under this Purchase Order containing software, firmware, microcode or other programmable features. These requirements apply on a continuing basis for the longer of five years and the expected service life of the deliverables as disclosed by Contractor in its product descriptions (the Service Life ): (i) Malicious Code. Contractor hereby represents, warrants, and covenants to PG&E that upon delivery to PG&E the deliverables will not contain or make available any Malicious Code. Without limiting any of PG&E s rights and remedies with respect thereto (all of which are expressly reserved), if Contractor detects or is made aware of Malicious Code in the deliverables during the Service Life, Contractor shall immediately notify PG&E. If the deliverables are not yet in use by PG&E, Contractor shall remove such Malicious Code, remediate its effects and certify to PG&E that the Malicious Code has been removed. If the deliverables are in use by PG&E, Contractor shall assist PG&E to remove the Malicious Code in accordance with the Section below titled Security Updates and Support. (ii) Cybersecurity Specifications. Contractor hereby represents, warrants, and covenants that the deliverables comply with the cybersecurity features and functions, if any, described in the associated specifications. (iii) Security Vulnerabilities and Tests. Contractor acknowledges that the deliverables may be

subject to security testing by PG&E or its security testing consultants before the deliverables are accepted by PG&E as well as subsequently, at any time during their Service Life. If the deliverables are integrated with products supplied by third parties, the third party suppliers may also be involved in the testing process. Contractor shall fully cooperate in the conduct of such tests. If requested by PG&E, such cooperation shall include the following: (i) providing source code and other program documentation (which PG&E shall use solely for testing purposes), and (ii) providing a representative with suitable technical expertise to participate in the tests. The conduct and results of the tests, including any security vulnerabilities that are identified in the course of the tests, shall be PG&E Confidential Information. Any security vulnerabilities that are identified in such tests shall be resolved in accordance with the following Section, titled Security Updates and Support. (iv) Security Updates and Support. Contractor shall maintain a technical support line with access to PG&E so that any security-related issues can be addressed promptly. Contractor shall notify PG&E without delay if Contractor detects or is made aware of any Malicious Code or security vulnerability in the deliverables during their Service Life. If Malicious Code or security vulnerability is identified during the Service Life, Contractor shall provide an update or revision to the deliverables to remove the Malicious Code and/or cure the vulnerability (a Security Patch ) as soon as possible and at no charge to PG&E. Contractor shall assist PG&E to implement the Security Patch if requested by PG&E and shall reimburse PG&E for the cost of implementing the Security Patch.

7.4 Termination or Cancellation: PG&E may suspend, terminate or cancel the Purchase Order, in whole or in part, upon written notice to Contractor. If PG&E cancels or terminates for cause, PG&E shall be liable to Contractor only for compensation earned on the Work satisfactorily performed to the date of termination. If PG&E cancels or terminates for its own reasons (not for cause), PG&E will in addition compensate Contractor for costs, if any, reasonably incurred by Contractor in terminating its operation. However, in no event will Contractor be entitled to payment for lost or anticipated profits or overhead on uncompleted portions of the Work. Contractor shall not enter into any agreements, commitments or Subcontracts which would incur significant cancellation costs without prior written approval of PG&E, which written approval is a condition precedent to the payment of any cancellation charges. Prior to release of final payment, Contractor shall deliver to PG&E all reports, drawings or other documents prepared for PG&E prior to the effective date of such termination or cancellation.

7.5 Assignment. Contractor shall not assign its rights or delegate its duties under this Purchase Order without the prior written consent of PG&E, and any attempted assignment or delegation without such consent shall be void. At its discretion, PG&E may assign its rights or delegate its duties under this Purchase Order, provided PG&E will remain obligated for payments unless otherwise agreed in writing by Contractor.

8.0 ALL ON-SITE WORK
The following provisions apply if the Contractor is performing Work on PG&E s premises:

8.1 Importance of Safety. Contractor recognizes and agrees that safety is of paramount importance in the performance of the Work and that Contractor is responsible for performing the Work in a safe manner. Contractor shall plan and conduct the Work, and shall require all Subcontractors to perform their portion of the Work, in accordance with Contractor s safety program and with all applicable local, state and federal rules, regulations, codes, and ordinances to safeguard persons and property from injury. Contractor further agrees to provide necessary training to its employees and Subcontractors to inform them of the foregoing safety and health rules and standards. Should PG&E at any time observe Contractor, or any of its Subcontractors, performing the Work in an unsafe manner, or in a manner that may, if continued, become unsafe, then PG&E shall have the right (but not the obligation) to require Contractor to stop the Work affected by the unsafe practice until Contractor has taken corrective action so that the Work performance has been rendered safe.

8.2 Indemnification. Contractor shall indemnify PG&E, its directors, officers, agents, and employees, against all loss, damage, expense and liability resulting from injury to or death of person, including, but not limited to, employees of PG&E or Contractor, or injury to property, including, but not limited to, property of PG&E or Contractor, violation of local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; strict liability imposed by any law or regulation; breach of confidentiality; payments to any Subcontractor including but not limited to any demands for payment, invoices, or liens; or delay or failure to pay any Subcontractor or Contractor or Subcontractor personnel the compensation, monies, wages or other payment due or allegedly due; arising out of or in any way connected with the performance of this Purchase Order, however caused, regardless of any negligence of PG&E, whether active or passive, excepting only such loss damage, cost, expense, liability, payment, strict liability, or violation of

law for which indemnity is not allowed under applicable law. Contractor shall, on PG&E's request, defend any suit asserting a claim covered by this indemnity. Contractor shall pay all costs that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees.

8.3 Insurance. Contractor shall maintain the following insurance coverage. Contractor is also responsible for its Subcontractors maintaining sufficient limits of the same coverage.

(A) Workers' Compensation and Employers' Liability: Workers' Compensation insurance complying with any applicable labor codes, acts, laws or statutes, state or federal, where Contractor performs work. Employers' Liability insurance shall not be less than $1,000,000 for injury or death each accident.

(B) Commercial General Liability: (i) Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage occurrence form, with no coverage deletions. The limit shall not be less than $1,000,000 each occurrence for bodily injury, property damage and personal injury. If coverage is subject to a general aggregate limit, this aggregate limit shall be twice the occurrence limit. (ii) Coverage shall:

By "Additional Insured" endorsement add as insureds PG&E, its directors, officers, agents and employees with respect to liability arising out of work performed by or for the Contractor; and

Be endorsed to specify that the Contractor's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it.

(C) Business Auto: Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile liability, code 1 "any auto." The limit shall not be less than $1,000,000 each accident for bodily injury and property damage.

(D) Professional Liability Insurance. Errors and Omissions Liability insurance if appropriate for the Service Provider s profession. Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Purchase Order. The limit shall not be less than $1,000,000 each claim/$2,000,000 aggregate.

(E) Cyber Security and Privacy Liability Insurance: (i) Contractor shall obtain and maintain cyber risks insurance providing coverage for at least the following perils and losses: unauthorized use of or access to a computer system containing or giving access to PG&E confidential information; defense of any regulatory action involving a breach of privacy in connection with PG&E confidential information; failure to protect PG&E confidential information from disclosure; and costs of notifying affected individuals and providing credit monitoring for up to one year, whether or not required by applicable law. (ii) The policy(s) shall have limits of liability of at least $5,000,000 per occurrence and $10,000,000 in the aggregate. If any deductible is applicable, such deductible shall not exceed $100,000, unless such increased deductible or retention is approved in advance by PG&E in writing. (iii) PG&E, its affiliates, subsidiaries and parent company, and PG&E s directors, officers, agents and employees shall be named as additional insureds under this policy. If the policy includes a blanket endorsement by contract, the following language added to the certificate of insurance will satisfy PG&E s additional insured requirement: PG&E, its affiliates, subsidiaries, and parent company, and PG&E s directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Contractor are additional insureds under a blanket endorsement.

(F) Insurance Documentation Requirements: (i) Contractor shall have insurance in place before beginning any Work. Upon request, Contractor shall provide PG&E with certificates of insurance, declaration pages and endorsements of all required insurance. Such documentation shall be signed and submitted by a person authorized by that insurer to issue certificates of insurance and endorsements on its behalf. (ii) Should any of the above described policies be cancelled before the expiration date thereof, the insurer shall deliver notification to PG&E in accordance with the policy provisions; (iii) PG&E may inspect the original policies or require complete certified copies, at any time; and (iv) Upon request, Contractor shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Contractor.

9.0 REQUIREMENTS AND POLICIES

9.1 PG&E S Supply Chain Responsibility Policy: It is PG&E s policy that small and diverse businesses shall have the maximum practicable opportunity to participate in providing the goods and services purchased by PG&E. Small and diverse businesses include Small Business Enterprises ( SBEs ); Women, Minority, and Disabled Veteran Business Enterprises ( WMDVBEs ); and Lesbian, Gay, Bisexual, and Transgender Business Enterprises ( LGBTBEs ).

(A) Contractor agrees to comply, and to require all Subcontractors and sub-Subcontractors to comply, with PG&E s Supply Chain Responsibility Policy, Exhibit 2, available at http://www.pge.com/suppliers and incorporated herein by this reference. Contractor shall provide a copy of Exhibit 2 to each prospective Subcontractor.

(B) Contractor shall act in accordance with its completed Prime Supplier Subcontracting Plan, Exhibit 1-A,

available at http://www.pge.com/suppliers and incorporated herein, in the performance of the Work and in the award of all Subcontracts.

(C) In addition, if the Purchase Order exceeds $500,000 ($1 million for construction contracts), Contractor shall comply with Exhibit 2A, Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns, available at http://www.pge.com/suppliers and incorporated herein by this reference, and the Prime Supplier Subcontracting Plan must include provisions for implementing the requirements of Exhibit 2A.

(D) Each Bidder s Proposal shall describe how Bidder will comply with the requirements of Exhibit 2 if awarded the Work. The requirements of Exhibit 2 and the successful Bidder s response, along with a completed, signed copy of Exhibit 1-A, will be incorporated into the Purchase Order.

9.2 Equal Employment Opportunity And Affirmative Action Regulations Policy: During the performance of this Purchase Order and to the extent they may be applicable, Contractor agrees to comply with all laws, orders, and regulations included by summary or reference as follows:

(A) Executive Order 11246, 41 CFR Part 60-1.4: Equal Opportunity Clause.

(B) Executive Order 11246, 41 CFR Part 60-1.8: Nonsegregated Facilities.

(C) Vietnam Era Veterans Readjustment Assistance Act of 1974, 41 CFR Part 60-300.5.a: Equal Opportunity Clause. Contractor and its Subcontractor(s) shall abide by the requirements of 41 CFR 60-300.5(a). This regulation prohibits discrimination against qualified protected veterans, and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified protected veterans.

(D) Section 503 of the Rehabilitation Act of 1973, 41 CFR Part 60-741.5.a: Equal Opportunity Clause. Contractor and its Subcontractor(s) shall abide by the requirements of 41 CFR 60-741.5(a). This regulation prohibits discrimination against qualified individuals on the basis of disability, and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified individuals with disabilities.

9.3 Executive Order 13496 Employee Rights Under The National Labor Relations Act. To the extent applicable, the employee notice requirements set forth in 29 C.F.R. Part 471, Appendix A to Subpart A are hereby incorporated by reference into this Purchase Order.

9.4 Contractor Safety Program: Contractor represents and warrants that it will perform all applicable Work, and cause all Subcontractors to perform all applicable Work, in compliance with PG&E s Contractor Safety Program Standard Contract Requirements, as may be modified from time to time. The Contractor Safety Program Standard Contract Requirements can be located and downloaded at: www.pge.com /contractorsafety and are hereby incorporated by reference into this Contract. Contractor s failure to comply with the Contractor Safety Program Standard Contract Requirements shall be immediate grounds for termination for cause under this Contract. Notwithstanding the above, Contractor is the "controlling employer" as defined under CalOSHA and will remain responsible for all fines and liability arising from violation of the Contractor Safety Program Standard Contract Requirements and applicable law.

9.5 Injury and Illness Prevention Program: In the performance of the Work under this Purchase Order, Contractor acknowledges that it has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code. Contractor shall ensure that any Subcontractor hired by Contractor to perform any portion of the Work under this Purchase Order shall also have an effective Injury and Illness Prevention Program. The person with the authority and responsibility for implementing and administering Contractor s Injury and Illness and Prevention Program shall execute the Compliance Certificate, Exhibit 3, available at http://www.pge.com/suppliers and incorporated herein by this reference.

9.6 PG&E Drug and Alcohol Policy: PG&E is committed to maintain and promote job safety and health for all workers at its facilities. In addition, PG&E is determined to protect its employees, customers, and the general public while they are on PG&E property from any harm caused by illegal drug and alcohol use by non-PG&E personnel. To accomplish these objectives, PG&E has established a drug and alcohol policy for access to PG&E facilities by its Contractor and Subcontractor personnel. If any personnel of Contractor or its approved Subcontractors perform any Work or services at PG&E offices and/or other PG&E facilities, then Contractor shall comply with PG&E s Drug and Alcohol Abuse and Testing Policies, Exhibit 4, available at http://www. pge.com/suppliers and incorporated herein by this reference.

9.7 Document Retention and Production Requirements: PG&E is committed to maintain documents and records so as to satisfy applicable legal, contractual and regulatory requirements as well as PG&E s on-

going business needs; to enable appropriate records management, provide appropriate retrieval and achieve the proper level of security and privacy. In furtherance of this commitment, Contractor agrees to comply with the requirements of Exhibit 5, PG&E Contractor Document Retention and Production Requirements, and Exhibit 5A, Document and Data List, available at http://www.pge.com/suppliers and incorporated herein by this reference.

9.8 Code of Conduct: Contractor, its Subcontractors and their suppliers at all tiers shall comply with PG&E s Supplier Code of Conduct in the award of all contracts and subcontracts. The Supplier Code of Conduct requires that Contractor and each of its Subcontractors demonstrate a strong commitment to compliance, ethics, sustainability, and supplier diversity as a foundation to successful business. Contractor must complete its Work for PG&E in full compliance with the Supplier Code of Conduct, as it may be modified from time to time. Contractor shall access, read and comply with PG&E s Supplier Code of Conduct and shall make it available to its Subcontractors and suppliers. The Supplier Code of Conduct can be located and downloaded at the following link: http://www.pge.com/includes/docs/pdfs/b2b/purchasing/supplie rs/SupplierCodeofConductPGE.pdf and is hereby incorporated by reference into this Purchase Order.

9.9 Conflict of Interest and Business Ethics
(A) Contractor shall not offer, or cause to be offered, gifts, entertainment, payments, loans, services, benefits, or any other consideration of more than a nominal value to PG&E's employees, their families, vendors, subcontractors, or third parties.
(B) Contractor shall exercise reasonable care and diligence to prevent any actions or conditions which could result in a conflict with PG&E's interest.

9.10 Availability of Information: Contractor shall keep accurate records and books of accounts, and shall preserve and make available such records and books of accounts, in accordance with the requirements of Exhibit 6, Audit Rights, available at http://www.pge.com/suppliers and incorporated herein by this reference.

9.11 California Health and Safety Code. The California Health and Safety Code requires businesses to provide warnings prior to exposing individuals to materials listed by the Governor as chemicals "known to the State of California to cause cancer, birth defects or reproductive harm." PG&E uses chemicals on the Governor's list at many of its facilities. In addition, many of these chemicals are present at non-PG&E-owned facilities and locations. Accordingly, in performing the Work or services contemplated under this Purchase Order, Contractor, its employees, agents, and Subcontractors may be exposed to chemicals on the Governor's list. Contractor is responsible for notifying its employees, agents, and Subcontractors that Work performed hereunder may result in exposures to chemicals on the Governor's list.

9.12 Export Controls. Contractor shall provide PG&E with information and assistance as may reasonably be required in connection with compliance with applicable import and export laws, including but not limited to, Manufacturer's Affidavits, Harmonized Tariff Schedules, Export Control Classification Numbers, and qualification information (e.g. origin) relevant to United States and foreign regulatory approvals for deliverables, products, and other materials furnished hereunder. Contractor shall make such information available to PG&E within five (5) business days following receipt of PG&E s written request.

9.13 Work On PG&E or PG&E Customer Property: The following provisions shall apply to the extent that the Work under the Purchase Order requires any Contractor or Subcontractor personnel (collectively, Personnel ) to have access to PG&E assets, premises, customer property, or logical access to PG&E data or systems (collectively, Access ).
(A) Criminal Background Checks: (i) Contractor warrants and represents that it will not assign any Personnel to work requiring Access unless Contractor has performed a criminal background check on each such individual (either at the time of hiring or during the course of employment). Prior to assigning work requiring Access to any Personnel with one or more criminal convictions during the last seven years, Contractor must consider the gravity of the individual s offense, the time since the conviction, the successful completion of parole/probation, the individual s age at the time of conviction, the number of convictions, and the stability of the individual, including favorable work history. Contractor shall also consider the relation of the offense to the nature of the work the individual will perform. (ii) Notwithstanding the foregoing, in no event shall Contractor grant Access to an individual with one or more convictions for a Serious Offense(s), which is defined as violent and sex offenses, crimes against children, domestic violence, fraud, theft (including but not limited to identity theft), embezzlement, all felonies during the last seven years, and/or two or more DUI s in the past three years. (iii) Contractor shall maintain documentation related to its criminal background check investigation for all Personnel requiring Access and make it available to PG&E for audit if requested pursuant to the audit provisions of this Purchase Order. (iv) Contractor also agrees to notify PG&E if any of its

Personnel requiring Access are charged with or convicted of a Serious Offense during the course of a PG&E assignment.

(B) Fitness for Duty: Contractor shall ensure that its Personnel granted Access report to work fit for duty. Personnel with Access may not consume alcohol while on duty and/or be under the influence of drugs that impair their ability to work safely. PG&E expects each supplier to have policies in place that requires their employees report to work in a condition that allows them to perform the work safely. For example, employees should not be operating equipment under medication that creates drowsiness. As a federal contractor, PG&E does not recognize nor allow work to be completed under the influence of marijuana, whether or not is it used for medical reasons.

(C) Eligibility For PG&E Work: When assigning any Personnel to perform Work requiring Access, Contractor shall submit each person s full name and the last four digits of their social security number to PG&E at the following e-mail address: RecruitingOperations@pge.com. PG&E reserves the right to decline to accept any proposed Personnel, in which case Contractor shall promptly propose a replacement.

9.14 NERC Requirements: Pursuant to a directive from the North American Reliability Corporation ( NERC ), PG&E has implemented policies and procedures for the protection of facilities, systems, assets and information that are critical to the operation or support of the Bulk Electric System ( BES ). PG&E identifies these facilities, systems, assets and information in accordance with its internal utility procedures. If this Purchase Order relates to BES Cyber Systems or Bulk Electric System Cyber System Information (as designated by PG&E), then Contractor shall comply with the requirements of Exhibit 7, NERC Requirements and Exhibit 7A, PG&E NERC CIP Program Non-Employee Attestation Form, available at http://www.pge.com /suppliers and incorporated herein. Contractor represents and warrants that it has consulted with PG&E to determine whether Exhibit 7 is applicable to the Work under this Purchase Order.

10.0 GENERAL

10.1 Compliance with Laws: In performing the Work, Contractor shall comply with all applicable Federal, State and local laws, rules and regulations, and shall obtain all applicable licenses and permits for the conduct of its business and the performance of the Work.

10.2 Reporting: In accordance with Section 7912 of the California Public Utilities Code, Contractor agrees to report annually to PG&E the number of California residents employed by Contractor, calculated on a full-time or full-time equivalent basis, who are personally providing services to PG&E.

10.3 Choice of Laws: This Purchase Order shall be construed and interpreted in accordance with the laws of the State of California, excluding any choice of law rules which may direct the application of the laws of another jurisdiction.

10.4 Severability: If any provision of this Purchase Order is determined to be illegal, unenforceable, or invalid in whole or in part, such provision or part thereof shall be stricken from this Purchase Order and shall not affect the legality, enforceability or validity of the remainder of this Purchase Order. If any provision or part thereof of this Purchase Order is stricken in accordance with the provisions of this Article, it shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in intent to the stricken provision as is legally possible.

10.5 Survival: The provisions of this Purchase Order which by their nature should survive expiration, cancellation or other termination of this Purchase Order, including but not limited to provisions regarding warranty, indemnity, document retention, business ethics, confidentiality and availability of information, shall survive such expiration, cancellation or other termination.

10.6 Entire Agreement: This Purchase Order constitutes the entire agreement and understanding between Contractor and PG&E as to the subject matter of the Purchase Order and supersedes all prior or contemporaneous agreements, commitments, representations, writings, and discussions, whether oral or written. However, as stated in Section 2.1 above, If the Parties have entered into a separate contract for the goods or services, then the terms of that contract apply and the terms of this Purchase Order are not applicable.

Contract #
C11481

Other Information

| Company Code: | PGE1 |
|---|---|

ATTACHMENTS
FE_CWA_GEI_Consultants_C11481_hxkn_R1_10.16.18.pdf (application
/pdf)  2018_PG&E_DSSMPRs_Proposal_10-01-2018.pdf (application
/pdf)  FE_CCO1Dam_Safety_GEI_C11481_hxkn_4.3.19.pdf (application/pdf)

| SHIP ALL ITEMS TO | BILL TO | DELIVER TO |
|---|---|---|
| **245 MARKET STREET**<br>245 MARKET STREET<br>SAN FRANCISCO , CA 94105<br>United States<br>Ship To Code: 0040885502<br>Phone: +1 (415) 9734579<br>Email: A1Fi@pge.com | **Pacific Gas and Electric Company**<br>P.O. Box 7760<br>San Francisco , CA 94120-7760<br>United States<br>Phone: +1 (800) 7567243 | Andrew Fisher<br>245 MARKET STREET |

**Line Items**

| Line # | Part # / Description | Customer Part # | Type | Qty (Unit) | Need By | Unit Price | Subtotal |
|---|---|---|---|---|---|---|---|
| 1 | Not Available | | Material | 366,277 (USD) | 31 Dec 2019 | $1.00 USD | $366,277.00 USD |
| | GEI 366k 2018 Combined DSSMPRs - Andrew Fisher | | | | | | |

STATUS

366,277
Unconfirmed

Other Information

| Req. Line No.: | 1 |
|---|---|
| Requester: | Andrew Fisher |
| PR No.: | PR227537-V2 |
| Contract ID: | C11481 |
| Tax Code: | I0 |
| Classification Domain: | unspsc |
| Classification Code: | 81101507 |

| Line # | Part # / Description | Customer Part # | Type | Qty (Unit) | Need By | Unit Price | Subtotal |
|---|---|---|---|---|---|---|---|
| 2 | Not Available | | Material | 24,200 (USD) | 31 Dec 2019 | $1.00 USD | $24,200.00 USD |
| | GEI CO1 24K additional work to finish DSSMRP reports - Andrew Fisher | | | | | | |

STATUS

24,200
Unconfirmed

Other Information

| Req. Line No.: | 2 |
|---|---|
| Requester: | Andrew Fisher |
| PR No.: | PR227537-V2 |
| Contract ID: | C11481 |
| Tax Code: | I0 |
| Classification Domain: | unspsc |
| Classification Code: | 81101507 |

Order submitted on: Wednesday 3 Apr 2019 2:19 PM GMT-07:00
Received by Ariba Network on: Wednesday 3 Apr 2019 2:20 PM GMT-07:00
This Purchase Order was sent by Pacific Gas & Electric Company AN01039276030 and delivered by Ariba Network.
There are attachment(s) associated with this order that can be viewed online.

**PDF generated by William Rettberg on Wednesday 3 Apr 2019 2:28 PM GMT-07:00**

| | | |
|---|---|---|
| Sub-total: | $ 390,477.00 | USD |