CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)(Jointly Administered)<br><br>**APPLICATION PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY COMPASS LEXECON, LLC AS ECONOMIC CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO PETITION DATE**<br>Date: May 9, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court, Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Application (the "**Application**"), pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for authority to retain and employ Compass Lexecon, LLC ("**Compass**"), through the Debtors' litigation counsel, Cravath, Swaine & Moore LLP ("**Cravath**"), as economic consultants for the Debtors effective as of the Petition Date (as defined below) in accordance with the terms and conditions set forth in the Engagement Letter as amended (as defined below).

In support of this Application, the Debtors submit the Declaration of Dr. Adel Turki, a Senior Managing Director of Compass (the "**Turki Declaration**"), and the Declaration of Paul H. Zumbro, a partner at Cravath (the "**Zumbro Declaration**"), filed concurrently herewith. A copy of the Engagement Letter as amended (defined below) is annexed as an exhibit to the Turki Declaration. A proposed form of order approving the retention and employment of Compass is annexed hereto as <u>**Exhibit A**</u> (the "**Proposed Order**").

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **JURISDICTION**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24, and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

II. **BACKGROUND**

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

## III. CRAVATH'S RETENTION OF COMPASS

Cravath is the Debtors' lead coordinating counsel for all wildfire-related issues involving PG&E. Prior to the Petition Date, Cravath was lead counsel for PG&E in lawsuits and with respect to claims related to the 2017 North Bay fires and the 2018 Camp fire. In the Chapter 11 Cases, Cravath is also engaged to handle all litigation matters for PG&E concerning the 2015 Butte fire (together with the 2017 North Bay fires and the 2018 Camp fire, the "**Northern California Wildfires**"). With respect to the 2017 Northern California Wildfires, Cravath retained Compass as its economic consultant on February 24, 2018, and memorialized Compass' retention in the March 22, 2018 letter (together with the current 2019 Schedule of Fees and the April 29, 2019 amendment, the "**Engagement Letter**"). The consulting work performed by Compass, and its communications with Cravath as part of such retention, is subject to the protections of attorney-client privilege and the attorney work product doctrine. While such protections limit the extent to which Compass' work may be disclosed or described, Compass' work to this point has, as a general matter, included the evaluation and analysis of potential damages and losses associated with the Northern California Wildfires.

## IV. COMPASS' QUALIFICATIONS

Compass is a leading economic consulting firm with twenty-one (21) offices and more than 425 employees globally. Compass has considerable experience providing a wide variety of consulting services, including economic and financial analysis, to businesses in various contexts. In particular, Compass has expertise evaluating and assessing damages and losses in mass tort litigation, including in matters pertaining to the BP Deepwater Horizon oil spill and the General Motors ignition switch recalls.

Compass has been employed in numerous chapter 11 cases, including: *In re Aeropostale, Inc.*, Case No. 16-11275 (SHL) (Bankr. S.D.N.Y.); *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y.); *In re GenOn Energy, Inc.*, Case No. 17-33695 (DRJ) (Bankr. S.D. Tex.); *In re Lehman Bros. Holdings Inc., et al*, 08-01355 (SCC) (Bankr. S.D.N.Y.); *In re Lightsquared Inc., et al.*, Case No. 12-12080 (SCC) (Bankr. S.D.N.Y.); *In re Motors Liquidation Co.*, Case No. 09-

50026 (MG) (Bankr. S.D.N.Y.); *In re MPM Silicones, LLC*, Case No. 14-22503 (RDD) (Bankr. S.D.N.Y.); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y.); *In re Paragon Offshore PLC*, Case No. 16-10386 (CSS) (Bankr. D. Del.); *In re Physiotherapy Holdings, Inc.*, Case No. 13-12965 (KG) (Bankr. D. Del.); *In re Tribune Co.*, Case No. 08-13141 (KJC) (Bankr. D. Del.); and *In re Tronox Inc.*, Case No. 09-10156 (ALG) (Bankr. S.D.N.Y.).

As described above, Compass performed a number of services for the Debtors prior to the Petition Date and as a result, has developed valuable institutional knowledge regarding the subject matter of its engagement, which will assist it in providing effective and efficient services in the Chapter 11 Cases. Accordingly, Compass is both well-qualified and uniquely able to provide certain services during the Chapter 11 Cases in an efficient and timely manner.

V.   SCOPE OF SERVICES

Pursuant to the terms and conditions of the Engagement Letter, the Debtors seek to continue to retain Compass, through Cravath, to serve as economic consultants to assist with Cravath's representation of Debtors. The Debtors and Cravath contemplate the continuation of Compass' engagement for a wide variety of services as have been, and may be, requested by Cravath and/or the Debtors (the "**Services**"), including (but not limited to) the following:

- Analyzing the losses and potential damages associated with the Northern California Wildfires;
- Assisting the Debtors in any claims estimation process in the Chapter 11 Cases, including performing economic analysis and data review pertaining to the estimation of potential liability in connection with the Northern California Wildfires;
- Supporting the Debtors with related empirical analyses; and
- Providing expert testimony in connection with any of the foregoing services.

To the extent that the Debtors and Compass later determine that Compass will perform additional services, deemed appropriate and necessary to benefit the Debtors' estates, and going beyond those contemplated by the Application or reasonable extensions thereof, Compass and

the Debtors may enter into additional agreements with respect to such services and will seek separate retention orders with regard to any such additional agreements.

## VI. NO DUPLICATION OF SERVICES

The Debtors intend that the services of Compass will complement or be entirely separate from, and not duplicate, the services being rendered by other professionals retained by or on behalf of Debtors in the Chapter 11 Cases. Compass understands that the Debtors have retained and may retain additional professionals during the term of the engagement. Compass will, working together with the Debtors and Cravath, use reasonable efforts to avoid the duplication of services being rendered by Compass and other professionals in the Chapter 11 Cases, and agrees to work cooperatively with any additional professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## VII. COMPASS' DISINTERESTEDNESS

Based upon the Turki Declaration, the Debtors submit that Compass is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

Compass is not a "creditor" with respect to fees and expenses of any of the Debtors. *See* 11 U.S.C. Sections 101(10) and 101(14)(a). In the ninety (90) days before the Petition Date, the Debtors paid Compass $739,321.58 for services rendered. To the extent that there are any invoices for professional services provided and unpaid by the Debtors as of the Petition Date, Compass agrees to waive such unpaid prepetition fees or expenses. Accordingly, as of the Petition Date, Compass does not hold a prepetition claim against the Debtors for amounts owed or services rendered.

Compass and the professionals assigned to these Chapter 11 Cases currently do not serve and have not served as a director, officer or employee of the Debtors within two years before the Petition Date. *See* 11 U.S.C. Section 101(14)(b).

To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Turki Declaration and the exhibits thereto, Compass does not hold or represent any interest

adverse to the estates or any class of creditors or equity security holders. *See* 11 U.S.C. Section 101(14)(c). The Debtors have been informed that Compass will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise. If any new relevant facts or relationships are discovered, Compass will supplement its disclosure to the Court.

### A.  Creditors Committee's Proposed Retention of FTI

The Debtors do not believe that the Creditors Committee's proposed retention of FTI Consulting, Inc. ("**FTI**")—which occurred long *after* Debtors retained Compass for purposes of the 2017 North Bay fires—impacts Compass' disinterestedness in this matter. While Compass, a wholly owned subsidiary of FTI, constitutes an "affiliate" of FTI within the meaning of section 101(2) of the Bankruptcy Code, there is nothing in the Bankruptcy Code stating that such affiliation, in and of itself, serves as a *per se* disqualifier for purposes of determining a professional's disinterestedness. The Debtors also do not believe that either the Debtors' retention of Compass or the Creditors Committee's potential retention of FTI create an interest materially adverse to the interest of the estates pursuant to section 101(14)(c) of the Bankruptcy Code. Controlling Ninth Circuit precedent teaches that determining whether a party holds an interest that is materially adverse to the bankruptcy estate, so as not to qualify as disinterested under the Bankruptcy Code, necessarily requires an "objective and fact-driven inquiry" based on an examination of "the full panoply of events and elements" or "totality of the circumstances". *In re AFI Holding, Inc.*, 530 F.3d 832, 848 (9th Cir. 2008) (adopting the First Circuit's standard for determining whether a particular conflict is "materially adverse" to the estate sufficient to find a lack of disinterestedness). Based on all of the facts and circumstances stated below,[1] Debtors do not believe that FTI's affiliation with Compass creates any conflict sufficient to taint Compass' disinterestedness in these Chapter 11 Cases.

*First*, Compass, while owned by FTI, operates as a separate and independent corporate entity from FTI. FTI does not manage, oversee or control any aspect of Compass' day-to-day

---

[1] *See also* Turki Declaration and Zumbro Declaration.

operations. Compass' management, employees and information technology systems are wholly separate and in no way overlap with FTI's management, employees or information technology systems.

*Second*, specifically as it relates to the work that Compass has been and may be doing for Cravath and the Debtors related to the Northern California Wildfires, FTI has not had, and will continue to not have, any supervision or control over any of the work performed by Compass. Compass' work related to the 2017 North Bay fires and the 2018 Camp fire was performed entirely by Compass personnel, who, as previously mentioned, share no overlap in any respect with FTI personnel and staff.

*Third*, Compass has confirmed that FTI has no visibility into, or access to, and has not seen to date, any of the work, or the results thereof, that Compass has undertaken for Cravath and the Debtors related to the Northern California Wildfires.

*Fourth*, FTI and Compass will not be working together, in any way, on any matters as to which Compass is being retained in the Chapter 11 Cases.

The Creditors Committee and FTI have also confirmed and represented to the Debtors that FTI operates entirely separately and independently from Compass, as an entirely separate corporate entity with separate management and employees, and that FTI will not be privy to, or have access to, in any way, the work undertaken by Compass for or on behalf of Debtors. *Statement of Debtors with Respect to Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§328(a) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to February 12, 2019* [Docket No. 1560]. The Creditors Committee and FTI have further committed to protecting the confidentiality of their client information through the use of its "Ethical Wall procedures". *Declaration of Samuel E. Star in Support of Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§328(a) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to February 12, 2019* [Docket 1212]. These procedures require, *inter alia*,

FTI to set up "electronic internal security walls to ensure that *only* FTI employees involved directly with or working on the FTI Committee Engagement [(*i.e.,* no Compass professionals)] may have access to the information, databases, e-mails, schedules or any other information relating to that engagement". *Id* (emphasis added). Compass will employ similar procedures to ensure that *only* Compass employees involved directly with or working on the Debtors' engagement may have access to the information, databases, e-mails, schedules or any other information relating to that engagement.

Based on these representations and further subject to the condition that the Creditors Committee's retention of FTI would in no way prejudice or preclude, in any way, the Debtors' ongoing ability to utilize Compass' services, in any capacity, in the Chapter 11 Cases or any other context and would not present any conflicts for Compass or for the Debtors' continuing retention and use of the services of Compass, the Debtors do not (and did not) object to the Creditors Committee's proposed retention of FTI. However, as stated by Debtors' counsel on the record before this Court at the hearing held on April 24, 2019, given all the valuable work Compass has done to date for the Debtors, it would be tremendously damaging to the Debtors and their estates if the Creditors Committee's retention of FTI were to adversely impact the Debtors' ability to continue to utilize Compass. For this reason and in furtherance of the guidance from the Court, the Debtors have submitted this Application at this time so that these important matters for the Debtors, the Creditors Committee and their respective professionals can be reviewed by the Court on a full record and resolved for all purposes at this time.[2]

Based on the foregoing, the Debtors do not believe that Compass has "an interest materially adverse to the interest of the estate or of any class of creditors" within the meaning of section 101(14)(c) of the Bankruptcy Code. Importantly in the circumstances before the Court, the

---

[2] Debtors had not previously filed a retention application for Compass because Debtors do not believe that Compass' post-petition work to date falls within the scope of section 327(a) of the Bankruptcy Code. However, in light of the Creditors Committee's proposed retention of FTI, out of an abundance of caution and to preserve the Debtors' right to continue using Compass' services throughout the Chapter 11 Cases, the Debtors seek this Court's approval to retain Compass under section 327(a) of the Bankruptcy Code at this time.

Debtors believe this to be true regardless of whether or not the Court approves the Creditor Committee's separate retention application for FTI. Accordingly, the Debtors submit that Compass is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

**VIII. PROFESSIONAL COMPENSATION**

As set forth in the Turki Declaration, Compass will apply to the Court for allowances of compensation and reimbursement of expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the *United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees*, effective February 19, 2014 (the "**Local Guidelines**"), the U.*S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**"), the *Order Pursuant to 11 U.S.C. §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 701], and any further Orders of the Court in the Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**").

Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and the Orders, the Debtors propose to compensate Compass as contemplated in the Engagement Letter on an hourly basis.

**A. Hourly Fee Engagements:**

The hourly rates set forth below are Compass' current applicable hourly rates for the work of its professionals and staff members for certain of the engagements set forth in the Engagement Letter. These hourly rates reflect Compass' normal and customary billing practices for engagements of this complexity and magnitude. Compass' hourly rates are subject to periodic adjustment from time to time in accordance with Compass' established billing practices and

procedures. Compass will provide reasonable notice of any changes to its hourly rates to the Debtors and the U.S. Trustee.

| Compass Professional | Hourly Fee |
|---|---|
| Senior Professionals | $700-975 |
| Professional Staff | $580-685 |
| Research Staff | $220-605 |

**B.     Expenses**

Additionally, Compass will invoice the Debtors for its reasonable out-of-pocket expenses charged during the Chapter 11 Cases, which include, among other things, travel expenses and expenses for purchased data. Such out-of-pocket expenses are charged at actual cost. Compass will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these Chapter 11 Cases.

The Debtors respectfully submit that Compass' rates and policies stated in the Turki Declaration are reasonable, particularly given the nature of the Chapter 11 Cases.

**IX.     COMPENSATION, REIMBURSEMENT AND EXCULPATION PROVISIONS IN COMPASS' ENGAGEMENT LETTER**

By this Application, the Debtors also request that the Court approve the compensation (subject to the Court's approval of Compass' fee applications), exculpation and related provisions in the Engagement Letter (as amended by the April 29, 2019 addendum).

As described above, the Debtors retained Compass as their economic consultant on February 24, 2018 and memorialized Compass' retention in the March 22, 2018 letter, using Compass' standard form retention letter. Compass' standard form retention letter contains a limitation of liability provision stating that "Compass shall not be liable under this agreement to [the Debtors], [their] counsel, or [their] respective successors, assigns, or affiliates except where damages result directly from the gross negligence or willful misconduct of Compass Lexecon or its employees. In no event shall Compass Lexecon be liable for punitive or consequential damages

of any kind.  The terms of this paragraph shall survive the termination of this agreement and shall apply to any controlling person, director, officer, employee, subcontractor, independent contractor or affiliate of Compass Lexecon.  In no event, regardless of whether Compass Lexecon has consented to such disclosure, shall Compass Lexecon assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available."

In anticipation of the filing of this Application, the Debtors were able to negotiate a narrower limitation of liability provision in the April 29, 2019 addendum to the March 22, 2018 letter, and carve out from the liability limitation damages caused by negligence.  The addendum provides that "[the Debtors], Cravath and Compass Lexecon agree that the provisions governing limitation of liability in the [March 22, 2018 letter] are hereby replaced by their entirety by the following: 'Compass Lexecon shall not be liable under the Retention Letter to the Client, its counsel, or their respective successors, assigns, or affiliates except where damages result directly from the negligence, gross negligence or willful misconduct of Compass Lexecon or its employees.'"  Debtors believe this narrower liability limitation is a reasonable and customary provision in agreements concerning the retention of economic consultants.

X. **BASIS FOR RELIEF REQUESTED**

The Debtors seek authority to employ and retain Compass, through Cravath, as their economic consultants under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out the [debtors'] duties under this title."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

## XI. NOTICE

Notice of this Application will be provided to (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in the Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties interests, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: April 29, 2019

**CRAVATH, SWAINE & MOORE LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Jane Kim
      Jane Kim

*Attorneys for Debtors
and Debtors in Possession*