CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br> - and – <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> **Debtors.** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> * *All papers shall be filed in the Lead Case No. 19-30088 (DM).* | Bankruptcy Case <br> No. 19-30088 (DM) <br><br> Chapter 11 <br> (Lead Case) (Jointly Administered) <br><br> **DECLARATION OF PAUL H. ZUMBRO IN SUPPORT OF DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY COMPASS LEXECON, LLC AS ECONOMIC CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO PETITION DATE** <br> Date: May 9, 2019 <br> Time: 9:30 a.m. (Pacific Time) <br> Place: United States Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 |

Pursuant to 28 U.S.C. § 1746, I, Paul H. Zumbro, hereby declare as follows under penalty of perjury:

I am a partner of the law firm of Cravath, Swaine & Moore LLP ("**Cravath**"), a New York law firm with offices at 825 Eighth Avenue, New York, New York 10019. I am admitted to practice in the State of New York and am also admitted to practice before this Court *pro hac vice*. (*See* Docket No. 122.)

I submit this Declaration in connection with the Application submitted on the date hereof (the "**Application**")[1] of PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"), for authority to employ and retain Compass Lexecon, LLC ("**Compass**") as economic consultants, effective as of January 29, 2019 (the "**Petition Date**"), at its standard hourly rates and in accordance with its standard reimbursement policies, in compliance with section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"). Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

## I. CRAVATH'S RETENTION OF COMPASS

Cravath is the Debtors' lead coordinating counsel for all wildfire-related issues involving PG&E. Prior to the Petition Date, Cravath was lead counsel for PG&E in lawsuits and with respect to claims related to the 2017 North Bay fires and the 2018 Camp fire. In the Chapter 11 Cases, Cravath is also engaged to handle all litigation matters for PG&E concerning the 2015 Butte fire (together with the 2017 North Bay fires and the 2018 Camp fire, the "**Northern California Wildfires**"). With respect to the 2017 Northern California Wildfires, Cravath retained Compass as its economic consultant on February 24, 2018, and memorialized Compass' retention in the March 22, 2018 letter (together with the current 2019 Schedule of Fees and the April 29, 2019 amendment, the "**Engagement Letter**"). The consulting work performed by Compass, and its communications with Cravath as part of such retention, is subject to the protections of attorney-client privilege and the attorney work product doctrine. While such protections limit the extent to which Compass' work may be disclosed or described, Compass' work to this point has, as a general matter, included the evaluation and analysis of potential damages and losses associated with the Northern California Wildfires.

## II. SCOPE OF SERVICES

Pursuant to the terms and conditions of the Engagement Letter, the Debtors seek to continue to retain Compass, through Cravath, to serve as economic consultants to assist with Cravath's representation of Debtors. The Debtors and Cravath contemplate the continuation of Compass' engagement for a wide variety of services as have been, and may be, requested by Cravath and/or the Debtors (the "**Services**"), including (but not limited to) the following:

- Analyzing the losses and potential damages associated with the Northern California Wildfires;
- Assisting the Debtors in any claims estimation process in the Chapter 11 Cases, including performing economic analysis and data review pertaining to the estimation of potential liability in connection with the Northern California Wildfires;

- Supporting the Debtors with related empirical analyses; and
- Providing expert testimony in connection with any of the foregoing services.

To the extent that the Debtors and Compass later determine that Compass will perform additional services, deemed appropriate and necessary to benefit the Debtors' estates, and going beyond those contemplated by the Application or reasonable extensions thereof, Compass and the Debtors may enter into additional agreements with respect to such services and will seek separate retention orders with regard to any such additional agreements.

**III.    NO DUPLICATION OF SERVICES**

The Debtors intend that the services of Compass will complement or be entirely separate from, and not duplicate, the services being rendered by other professionals retained by or on behalf of Debtors in the Chapter 11 Cases. Cravath and Debtors will, working together with Compass, use reasonable efforts to avoid the duplication of services being rendered by Compass and other professionals in the Chapter 11 Cases, and agrees to work cooperatively with any additional professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

**IV.    COMPASS' DISINTERESTEDNESS**

Compass has informed Cravath that, to the best of Compass' knowledge, information and belief, other than as set forth in the Turki Declaration and the exhibits thereto, Compass (a) has no connection with the Debtors, their creditors, their equity security holders or other parties in interest or their respective attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee in any matter related to the Debtors and their estates, and (b) does not hold or represent any interest adverse to the Debtors' estates. Therefore, I believe Compass is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code. I have been informed that Compass will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise. and that if any new relevant facts or relationships are discovered, Compass will supplement its disclosure to the Court.

### A. The Proposed Retention of FTI on behalf of the Unsecured Creditors Committee ("Creditors Committee").

I do not believe that the Creditors Committee's proposed retention of FTI Consulting, Inc. ("**FTI**")—which occurred long *after* Debtors retained Compass for purposes of the 2017 North Bay fires—impacts Compass' disinterestedness in this matter. While Compass, a wholly owned subsidiary of FTI, constitutes an "affiliate" of FTI within the meaning of section 101(2) of the Bankruptcy Code, there is nothing in the Bankruptcy Code stating that such affiliation, in and of itself, serves as a *per se* disqualifier for purposes of determining a professional's disinterestedness. The Debtors also do not believe that either the Debtors' retention of Compass or the Creditors Committee's potential retention of FTI create an interest materially adverse to the interest of the estates pursuant to section 101(14)(c) of the Bankruptcy Code. Controlling Ninth Circuit precedent teaches that determining whether a party holds an interest that is materially adverse to the bankruptcy estate, so as not to qualify as disinterested under the Bankruptcy Code, necessarily requires an "objective and fact-driven inquiry" based on an examination of "the full panoply of events and elements" or "totality of the circumstances". *In re AFI Holding, Inc.*, 530 F.3d 832, 848 (9th Cir. 2008) (adopting the First Circuit's standard for determining whether a particular conflict is "materially adverse" to the estate sufficient to find a lack of disinterestedness). Based on all of the facts and circumstances stated in the Turki Declaration, I do not believe that FTI's affiliation with Compass creates any conflict sufficient to taint Compass' disinterestedness in these Chapter 11 Cases.

The Creditors Committee and FTI have also confirmed and represented to the Debtors that FTI operates entirely separately and independently from Compass, as an entirely separate corporate entity with separate management and employees, and that FTI will not be privy to, or have access to, in any way, the work undertaken by Compass for or on behalf of Debtors. *Statement of Debtors with Respect to Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§328(a) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to*

*February 12, 2019* [Docket No. 1560]. The Creditors Committee and FTI have further committed to protecting the confidentiality of their client information through the use of its "Ethical Wall procedures". *Declaration of Samuel E. Star in Support of Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§328(a) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to February 12, 2019* [Docket 1212]. These procedures require, *inter alia*, FTI to set up "electronic internal security walls to ensure that *only* FTI employees involved directly with or working on the FTI Committee Engagement [(*i.e.,* no Compass professionals)] may have access to the information, databases, e-mails, schedules or any other information relating to that engagement". *Id* (emphasis added).

Based on these representations and further subject to the condition that the Creditors Committee's retention of FTI would in no way prejudice or preclude, in any way, the Debtors' ongoing ability to utilize Compass' services, in any capacity, in the Chapter 11 Cases or any other context and would not present any conflicts for Compass or for the Debtors' continuing retention and use of the services of Compass, the Debtors do not (and did not) object to the Creditors Committee's proposed retention of FTI.

However, as stated by Debtors' counsel on the record before this Court at the hearing held on April 24, 2019, it would be tremendously damaging to the Debtors and their estates if the Creditors Committee's retention of FTI were to adversely impact the Debtors' ability to continue to utilize Compass. Over the course of the last fourteen (14) months, Compass has been instrumental in providing Cravath and the Debtors invaluable economic analyses and evaluation of potential damages and losses associated with the Northern California Wildfires. Compass' continued services through this engagement will be vital to the Debtors and their estates in the Chapter 11 Cases. For this reason and in furtherance of the guidance from the Court, the Debtors have submitted this Application at this time so that these important matters for the Debtors, the Creditors Committee and their respective professionals can be reviewed by the Court on a full

record and resolved for all purposes at this time.[2]

Based on the foregoing, I do not believe that Compass has "an interest materially adverse to the interest of the estate[s] or of any class of creditors" within the meaning of section 101(14)(c) of the Bankruptcy Code. Importantly in the circumstances before the Court, I believe this to be true regardless of whether or not the Court approves the Creditor Committee's separate retention application for FTI.

## V. PROFESSIONAL COMPENSATION

In February 2018, Cravath reviewed materials prepared by and received proposals from Compass and several other economic consulting firms for work related to the 2017 North Bay fires. Cravath's decision to retain Compass was, among other factors, based on the reasonableness of Compass' fees as compared to the other candidates. Thus, I respectfully submit that Compass' rates and policies stated in the Turki Declaration are reasonable, particularly given the nature of the Chapter 11 Cases.

## VI. COMPENSATION, REIMBURSEMENT AND EXCULPATION PROVISIONS IN COMPASS' ENGAGEMENT LETTER

As described above, the Debtors retained Compass as their economic consultant on February 24, 2018 and memorialized Compass' retention in the March 22, 2018 letter, using Compass' standard form retention letter. Compass' standard form retention letter contains a limitation of liability provision stating that "Compass shall not be liable under this agreement to [the Debtors], [their] counsel, or [their] respective successors, assigns, or affiliates except where damages result directly from the gross negligence or willful misconduct of Compass Lexecon or its employees. In no event shall Compass Lexecon be liable for punitive or consequential damages of any kind. The terms of this paragraph shall survive the termination of this agreement and shall

---

[2] Debtors had not previously filed a retention application for Compass because Debtors do not believe that Compass' post-petition work to date falls within the scope of section 327(a) of the Bankruptcy Code. However, in light of the Creditors Committee's proposed retention of FTI, out of an abundance of caution and to preserve the Debtors' right to continue using Compass' services throughout the Chapter 11 Cases, the Debtors seek this Court's approval to retain Compass under section 327(a) of the Bankruptcy Code at this time.

apply to any controlling person, director, officer, employee, subcontractor, independent contractor or affiliate of Compass Lexecon. In no event, regardless of whether Compass Lexecon has consented to such disclosure, shall Compass Lexecon assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available."

In anticipation of the filing of this Application, the Debtors were able to negotiate a narrower limitation of liability provision in the April 29, 2019 addendum to the March 22, 2018 letter, and carve out from the liability limitation damages caused by negligence. The addendum provides that "[the Debtors], Cravath and Compass Lexecon agree that the provisions governing limitation of liability in the [March 22, 2018 letter] are hereby replaced by their entirety by the following: 'Compass Lexecon shall not be liable under the Retention Letter to the Client, its counsel, or their respective successors, assigns, or affiliates except where damages result directly from the negligence, gross negligence or willful misconduct of Compass Lexecon or its employees.'" Debtors believe this narrower liability limitation is a reasonable and customary provision in agreements concerning the retention of economic consultants.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 29, 2019

By: Paul H. Zumbro
Title: Partner, Cravath Swaine & Moore LLP