WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF SHAI Y. WAISMAN IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 502(b)(9) AND 105(a), FED. R. BANKR. P. 2002, 3003(c)(3), 5005, AND 9007, AND L.B.R. 3003-1 FOR ORDER (I) ESTABLISHING DEADLINE FOR FILING PROOFS OF CLAIM, (II) ESTABLISHING THE FORM AND MANNER OF NOTICE THEREOF, AND (III) APPROVING PROCEDURES FOR PROVIDING NOTICE OF BAR DATE AND OTHER INFORMATION TO ALL CREDITORS AND POTENTIAL CREDITORS**<br>Date: May 22, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>  Courtroom 17, 16th Floor<br>  San Francisco, CA 94102 |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pursuant to 28 U.S.C. § 1746, I, Shai Y. Waisman, hereby declare as follows under penalty of perjury:

I am the Chief Executive Officer of Prime Clerk LLC ("**Prime Clerk**"), a chapter 11 administrative services firm whose headquarters are located at 830 3rd Avenue, 9th Floor, New York, New York 10022. Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of the size and complexity of these Chapter 11 Cases. Prime Clerk's professionals have acted as administrative agent or official claims and/or noticing agent in a large bankruptcy case in this District and in other districts nationwide. Prime Clerk's active and former cases include: *NewZoom, Inc.*, No. 15-31141 (HB) (Bankr. N.D. Cal.); *Channel Technologies Group, LLC*, No. 16-11912 (DS) (Bankr. C.D. Cal.); *Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del.); *Fairway Energy, LP*, No. 18-12684 (LSS) (Bankr. D. Del.); *Dixie Electric, LLC*, No. 18-12477 (KG) (Bankr. D. Del.); *New MACH Gen GP, LLC*, No. 18-11369 (MFW) (Bankr. D. Del.); *Gibson Brands, Inc.*, No. 18-11028 (CSS) (Bankr. D. Del.); *Bertucci's Holdings, Inc.*, No.18-10894 (MFW) (Bankr. D. Del.); *EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del.); *Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del.); *The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del.); *Orchard Acquisition Company, LLC*, No. 17-12914 (KG) (Bankr. D. Del.); *Rentech WP U.S., Inc.,* No. 17-12958 (CSS) (Bankr. D. Del.); *Appvion, Inc.,* No. 17-12082 (KJC) (Bankr. D. Del.); *Global Brokerage, Inc.,* No. 17-13532 (MEW) (Bankr. S.D.N.Y.); *Global A&T Electronics Ltd.,* No. 17-23931 (RDD) (Bankr. S.D.N.Y.); *Pacific Drilling S.A.*, No. 17-13193 (MEW) (Bankr. S.D.N.Y.); *Walter Investment Management Corporation,* No. 17-13446 (JLG) (Bankr. S.D.N.Y.); *Castex Energy Partners, L.P.,* No. 17-35835 (MI) (Bankr. S.D. Tex.); *Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va.); *TK Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del.); *Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); and *General Wireless Operations Inc. dba RadioShack,* No. 17-10506 (BLS) (Bankr. D. Del.).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I submit this declaration (the "**Declaration**") in support of the *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for Order (i) Establishing Deadline for Filing Proofs of Claim, (ii) Establishing the Form and Manner of Notice Thereof, and (iii) Approving Procedures for Providing Notice of Bar Date and Other Information to all Creditors and Potential Creditors* filed with the Court by PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") on the date hereof (together with any exhibits and schedules thereto, the "**Bar Date Motion**").[1]

Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors and their other professionals, including professionals at Weil, Gotshal & Manges LLP ("**Weil**"), Cravath, Swaine & Moore LLP, and AlixPartners LLP, and other members of the Prime Clerk team. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

## I. PRIME CLERK'S ENGAGEMENT BY THE DEBTORS

The Debtors engaged Prime Clerk in January 2019 to perform a variety of tasks relating to the Debtors' restructuring. On February 1, 2019, the Court entered an order approving the Debtors' retention of Prime Clerk as official claims and noticing agent [Docket No. 245]. In addition, by order dated April 9, 2019, the Court approved the Debtors' application to employ Prime Clerk as administrative advisor in these Chapter 11 Cases [Docket No. 1300].

## II. FORMULATION OF THE NOTICE PROCEDURES

As set forth in the Bar Date Motion, the Debtors are seeking to establish a Bar Date and procedures for providing notice thereof (the "**Notice Procedures**") to all known and unknown creditors, including Wildfire Claimants, Wildfire Subrogation Claimants, and Customers (each as defined below). For purposes of the Bar Date Motion and this Declaration, and all matters related thereto (a) any claim (as such term is defined in section 101(5) of the Bankruptcy Code) related to or

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Bar Date Motion.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

in any way arising from the Northern California Wildfires[2] (including any claim of a Wildfire Subrogation Claimant) is referred to herein as a "**Wildfire Claim**"; (b) any person or entity, including any Governmental Unit, holding a Wildfire Claim (other than a Wildfire Subrogation Claimant) is referred to herein as a "**Wildfire Claimant**"; and (c) any insurance carrier having made payments to their insureds for any damages arising out of or relating to a Wildfire Claim, or any other party who has acquired by assignment or otherwise obtained an interest in a claim arising out or related to such payments, is referred to herein as a "**Wildfire Subrogation Claimant**".

With the exception of Wildfire Claimants, Wildfire Subrogation Claimants, and Customers (which are each discussed in detail below), it is my understanding that pursuant to the Bar Date Motion, the Debtors are proposing standard procedures for providing notice of the Bar Date to all creditors and parties in interest that are entitled to receive such notice in these Chapter 11 Cases, which includes parties such as the Debtors' prepetition lenders, bondholders, other financial creditors, trade creditors, parties to pending or threatened litigation (other than Wildfire Claimants and Wildfire Subrogation Claimants), current and former employees, contract and lease counterparties, and other traditional creditors and parties in interest in these Chapter 11 Cases. The Debtors also propose to extend the deadline for Governmental Units to file Proofs of Claim beyond the standard 180 days after the Petition Date required under section 502(b)(9) of the Bankruptcy Code.

Due to the unique nature of these Chapter 11 Cases, including the number of potential individual claimants and the destruction of structures to which notices of a Bar Date would customarily be sent, the Debtors are proposing special procedures to facilitate the submission and evaluation of Wildfire Claims, including, a simplified Wildfire Claim Bar Date Notice (as defined below) and customized Proof of Claim Forms for both Wildfire Claimants and Wildfire Subrogation Claimants, which seek to identify critical information with respect to each potential Wildfire Claim, including, without limitation, the relevant wildfire, the type of loss or injury, the type of damages asserted, and (if applicable) whether the claim is covered by insurance and relevant coverage information. The

---

[2] The Northern California Wildfires include, but are not limited to, the following fires: 37, Adobe, Atlas, Blue, Butte, Camp, Cascade, Cherokee, Honey, La Porte, Lobo, Maacama, McCourtney, Norrbom, Nuns, Partrick, Pocket, Point, Pressley, Pythian (a.k.a. Oakmont), Redwood, Sulphur and Tubbs.

Debtors are also proposing special procedures for providing notice of the Bar Date to their 16 million customers (each, a "**Customer**"), including a simplified Customer Bar Date Notice (as defined below), which makes clear that Customers are not required to file proofs of claim for ordinary and customary refunds, overpayments, billing credits, deposits, or similar billing items.

In addition to serving the Bar Date Notices, the Debtors intend to provide supplemental notice of the Bar Date (the "**Supplemental Notice Plan**") to unknown creditors, including Unknown Wildfire Claimants (as defined below). As set forth below, the Supplemental Notice Plan is broad, multi-faceted, and is designed to reach its target audiences in a variety of different ways, including: (i) multiple newspaper publication notices, (ii) dedicated website and toll-free phone numbers, (iii) digital advertising, including social media and other paid internet search listings, (iv) television and radio advertising, (v) email notice, and (vi) dedicated claim service centers.

It is my understanding that, since being retained by the Debtors in January 2019, Prime Clerk has assisted the Debtors and their advisors in developing the Notice Procedures (including the Supplemental Notice Plan). It is my understanding that Prime Clerk collaborated with the Debtors in preparing the Debtors' recommended noticing strategy by researching the costs and efficiencies of various noticing strategies and alternatives. Prime Clerk also used its knowledge of past noticing experiences to present various ideas for cost savings.

### III. ESTIMATED COSTS OF THE NOTICE PROCEDURES

As set forth in further detail below, the Debtors estimate the total cost of the Notice Procedures, including the Supplemental Notice Plan, to be approximately $19 million - $22 million depending on the final number of noticing parties (estimated to be 16.3 million to 16.5 million parties) and assuming eligibility for volume postage discounts obtained, which may be broken down as follows: (i) approximately $18 million - $20 million for expenses relating to service and mailing of physical Bar Date Notices; (ii) approximately $400,000 for publication of the Bar Date Notices; and (iii) $1.0 million - $1.5 million for other costs and expenses associated with the Supplemental Notice Plan, including costs and expenses relating to digital, television, and radio advertising and the costs and expenses of staffing the Claim Service Centers. Each of the parties to be noticed and the cost components of the Notice Procedures is discussed in further detail below.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### A. Costs of Mailing the Standard Bar Date Notice

Traditional creditors, which include, without limitation, the Debtors' prepetition lenders, bondholders, other financial creditors, trade creditors, parties to pending or threatened litigation (other than Wildfire Claimants and Subrogation Claimants), current and former employees, contract and lease counterparties, and other customary parties of interest in these Chapter 11 Cases will receive a traditional notice of the Bar Date (the "**Standard Bar Date Notice**") with a standard proof of claim form attached (the "**Standard Proof of Claim Form**"). The Standard Bar Date Notice (i) sets forth the Bar Date; (ii) advises creditors under what circumstances they must file a Standard Proof of Claim; (iii) alerts creditors to the consequences of failing to timely file a Standard Proof of Claim; (iv) sets forth the address to which Standard Proofs of Claim must be sent for filing; and (v) notifies creditors that (a) Standard Proofs of Claim must be filed with original signatures and (b) facsimile, telecopy, or electronic mail transmission of Standard Proofs of Claim (other than Proofs of Claim filed electronically through the Electronic Filing System) are not acceptable and are not valid for any purpose. The Debtors propose to mail the Standard Bar Date Notice via first class mail to all of the Debtors' known creditors other than the Wildfire Claimants, Subrogation Claimants, and Customers. Prime Clerk estimates the cost of mailing the Standard Bar Date Notice to the Debtors' traditional notice parties (approximately 300,000 parties) to be approximately $500,000.

### B. Costs of Mailing the Wildfire Claim Bar Date Notice

As set forth above, due to the unique nature of these Chapter 11 Cases, including the number of potential individual claimants and the destruction of structures to which notices of a Bar Date would customarily be sent, the Debtors are proposing special procedures with respect to Wildfire Claims. These procedures address (a) holders of Wildfire Claims that, as of the Petition Date, already had commenced actions against the Debtors or had provided actual notice to the Debtors of their intention to commence actions against the Debtors ("**Known Wildfire Claimants**"), and (b) holders of Wildfire Claims that, as of the Petition Date, had not commenced actions against the Debtors or provided actual notice to the Debtors of their intention to commence actions against the Debtors ("**Unknown Wildfire Claimants**"). The Debtors propose to serve all Known Wildfire Claimants via first-class mail (i) a simplified 5 page Bar Date Notice (the "**Wildfire Claim Bar Date Notice**"), and (ii) a proof of claim

form that requests specific information designed to facilitate the evaluation and estimation of Wildfire Claims of Wildfire Claimants (the "**Wildfire Claimant Proof of Claim Form**") and Wildfire Subrogation Claimants (the "**Wildfire Subrogation Claimant Proof of Claim Form**" and, together with the Wildfire Claimant Proof of Claim Form, the "**Wildfire Proof of Claim Forms**"). Further, the Debtors will post the Wildfire Claimant Proof of Claim Form, the Wildfire Subrogation Claimant Proof of Claim Form, and the Wildfire Claim Bar Date Notice on the Case Website. The Debtors propose to mail the Wildfire Claim Bar Date Notice and the applicable Wildfire Proof of Claim Form to each Known Wildfire Claimant at the address for the attorney of record set forth in the complaint initiating the prepetition action (or other document or correspondence notifying the Debtors of an intention to commence a prepetition action) and to (i) Willkie Farr & Gallagher LLP, as attorneys for the Ad Hoc Committee of Wildfire Subrogation Claimants, and (ii) Stutzman, Bromberg, Esserman & Plifka, P.C., as attorneys for the Ad Hoc Committee of Public Entity Wildfire Claimants. Similar notice will be sent by first class mail to any holder of a Wildfire Claim that has filed a Proof of Claim on or prior to the entry of a Proposed Order at the address listed in such Proof of Claim.[3] I understand that, to supplement the foregoing, the Debtors are proposing to make efforts to send by first class mail the foregoing notice to property owners of destroyed homes within the areas affected by the 2017 Northern California Wildfires using proprietary data maintained by Geographical Information Systems ("**GIS**") satellite experts retained by Debtors in connection with the prepetition litigation. In addition, I further understand that the Debtors intend to request that certain third parties who may be in possession of contact information for additional potential Wildfire Claimants provide such information for the Debtors' use in identifying such claimants. I understand that such information includes: (i) contact information stored in a database maintained by BrownGreer PLC, which lists

---

[3] It is my understanding that the list of Known Wildfire Claimants set forth in the Debtors' Schedule E/F (filed on March 14, 2019) was compiled from a review of all complaints related to the North Bay, Camp and Butte wildfires filed as of the Petition Date, as well as a list of individuals who may have contacted or corresponded with the Debtors through their claims management process regarding potential Wildfire Claims but who had not yet commenced formal litigation at the time of correspondence. I further understand that the list of Wildfire Claims set forth in Schedule E/F reflects approximately 13,700 individual Known Wildfire Claimants. Taking into account additional related notice parties identified in the Schedules, the total number of parties to receive the Wildfire Claim Bar Date Notice is estimated to be approximately 38,400.

persons or entities that have Wildfire Claims in connection with the State court litigation related to the 2017 Northern California Wildfires; and (ii) contact information maintained by the subrogation insurance carriers for persons or entities that have filed insurance claims or have received payment under any insurance policy for any damages arising out of or relating to a Wildfire Claim. To the extent such information is provided to the Debtors reasonably in advance of the entry of the Proposed Order, the Debtors will send the foregoing notice by first class mail to any potential Wildfire Claimants identified in such sources at the addresses listed for them in those sources.

The Debtors designed the Wildfire Proof of Claim Forms with the assistance of Prime Clerk and the Debtors' attorneys and other professionals to request certain information relating to the asserted Wildfire Claims, including information to identify the relevant wildfire, the type of loss or injury, the type of damages asserted, and (if applicable) whether the claim is covered by insurance and relevant coverage information. The Wildfire Claim Bar Date Notice (i) sets forth the Bar Date; (ii) advises Wildfire Claimants and Wildfire Subrogation Claimants under what circumstances they must file a Wildfire Proof of Claim Form; (iii) alerts the Wildfire Claimants and Wildfire Subrogation Claimants to the consequences of failing to file a timely Wildfire Proof of Claim Form; and (iv) sets forth the address to which Wildfire Proof of Claim Forms must be sent for filing. Prime Clerk estimates the cost of mailing the Wildfire Claim Bar Date Notice to all Known Wildfire Claimants and related notice parties (approximately 38,400 parties) to be approximately $100,000.

C.    **Costs of Mailing the Customer Bar Date Notice**

Customers will receive a simplified 2-page Bar Date Notice (the "**Customer Bar Date Notice**"), but with a Standard Proof of Claim Form attached. The Customer Bar Date Notice (i) sets forth the Bar Date; (ii) advises Customers under what circumstances they must file a Standard Proof of Claim; (iii) makes clear that Customers are not required to file proofs of claim for refunds, overpayments, billing credits, or deposits that the Debtors have been authorized by the Court to pay or honor in the ordinary course of business, (iv) alerts Customers to the consequences of failing to file a timely Standard Proof of Claim; and (iv) sets forth the address to which Standard Proofs of Claim must be sent for filing. In addition, the Customer Bar Date Notice includes bold and conspicuous language alerting Customers that may potentially have Wildfire Claims of their obligation to file the

applicable Wildfire Proof of Claim Form by the Bar Date (which is available for download or submission on the Case Website) – thereby providing notice of the procedures for filing Wildfire Proof of Claim Forms to any Unknown Wildfire Claimants that are Customers of the Debtors or have otherwise provided the Debtors with a forwarding address. The Customer Bar Date Notice will also direct Customers to the Case Website where such parties may register an email address and request electronic notice for the duration of these Chapter 11 Cases. I believe that the Customer Bar Date Notice provides the required notice of Bar Date and will result in substantial cost-savings to the estates. Prime Clerk estimates that providing the Standard Bar Date Notice to the Debtors' 16 million customers will cost approximately $17 million - $20 million depending on total number of notices of Customer Bar Date Notices to be sent and final postage costs. Prime Clerk estimates that if it were instead to provide hard-copies of the Standard Bar Date Notice to the Debtors' customers, such notice would increase the cost of preparing and mailing the Bar Date Notice to the Debtors' 16 million customers by approximately $14 - $21 million as compared to the cost of preparing and mailing the Customer Bar Date Notice.

### D. Costs of the Supplemental Notice Plan

The Supplemental Notice Plan aims to reach individuals impacted by the Wildfires in Napa, Lake, Sonoma, Mendocino, Nevada, Butte, and Humboldt counties, all of the counties impacted by the Northern California Wildfires. I believe the Supplemental Noticing Plan will maximize notice of the Bar Date to adults in the impacted areas and those who may have moved within or out of the affected counties in the past two years. The Supplemental Notice Plan is a media-based plan that utilizes numerous media formats including widespread dissemination of publication notices, internet banner advertisements, social media posts, informational releases, a dedicated website, a call center, and in-person claims service centers to reach potential claimants. In my opinion, the Supplemental Notice Plan is reasonably calculated to provide notice to all unknown creditors, including all Unknown Wildfire Claimants, and parties in interest. The Supplemental Notice Plan is estimated to cost approximately $1.5 million - $2.0 million. The primary components and associated costs of the Supplemental Notice Plan are summarized as follows:

(a) <u>Publication of the Bar Date Notice</u>.

    (i) <u>Multiple Newspaper Publications</u>.  The information set forth in the Standard Bar Date Notice will be published three times in each of the *Wall Street Journal, USA Today, the Los Angeles Times, San Francisco Chronicle, The Bakersfield Californian, The Fresno Bee, The Modesto Bee, The Sacramento Bee, The Santa Rosa Press Democrat, The San Jose Mercury News, The East Bay Times, The Stockton Record, the Paradise Post, and the Chico Enterprise-Record*.  These are the same publications in which the Notice of Commencement was previously published.  Additionally, each of the Standard Bar Date Notice, the Wildfire Claim Bar Date Notice, and the Customer Bar Date Notice will be posted on the Case Website.  The cost of publishing the Standard Bar Date Notice as set forth above is estimated to be approximately $400,000.

(b) <u>Dedicated Website(s) and Toll-Free Numbers</u>.

    (i) The Debtors, through Prime Clerk, have established a dedicated Case Website and toll-free number.  The Case Website and toll-free numbers will be prominently displayed in all printed notice documents and other paid advertising and will provide notice of the Bar Date and all requirements to comply therewith, and other relevant information relating to the Chapter 11 Cases.  Included within the Case Website will be a page specifically tailored to, and designed for, the holders of Wildfire Claims, which will, among other things, inform them of certain key dates and deadlines, allow them to view certain key documents in the Chapter 11 Cases free of charge, and allow holders of Wildfire Claims and other creditors to register their email addresses and consent to e-mail service of certain notices required to be sent during the Chapter 11 Cases.  In addition, Spanish, Mandarin, Tagolog, Vietnamese, and Korean language translations of the Customer Bar Date Notice will be available for download on the Case Website.  Prime Clerk does not anticipate additional material costs and expenses to be incurred in connection with maintaining the Case Website and toll-free numbers as set forth herein.

(c) <u>Digital Advertising</u>.

    (i) As soon as practicable following entry of the Proposed Order, the Debtors, through Prime Clerk, will implement both (1) a broad-based geographic effort to provide notice to a large majority of online adults in the six affected counties using available data related to adult online usage, and (2) digital matching to precisely target a known universe of individuals who have moved within or out of the affected counties in the past year.

    (ii) This digital effort is estimated to reach approximately 750,000 individuals, or approximately 70% of the adult population estimated to be approximately 1 million individuals, in the six affected counties through a combination of Facebook, Google Display Network™, and targeted news website ads.

(iii) In order to target individuals who have moved within or out of the affected counties, Prime Clerk will utilize U.S. Postal Service data and private databases. Prime Clerk will then match those names to digital advertising targets (*e.g.*, using phone numbers to match to Facebook profiles) and target digital ads to that list.

(iv) The initial running of all digital advertising, as well as the radio and television advertisements discussed below, is estimated to cost approximately $525,000 - $600,000. In the event the Debtors decide to run additional advertisements, additional charges may be incurred.

(d) <u>Television and Radio</u>.

(i) All of the affected counties are within four designated market areas in California, which render television and radio advertising fairly cost efficient and effective. The Debtors, through Prime Clerk, will utilize such methods to reach some of the more rural affected areas and audiences that may not be otherwise exposed to online noticing. The estimated costs and expenses of the television and radio advertising – in both English and Spanish – are included in the estimate for digital advertising set forth above.

(ii) The Supplemental Notice Plan's television and radio advertisements will deliver approximately 150 gross rating points (GRPs) or rough equivalent each on English television, Spanish television, English radio, and Spanish radio. GRPs are a standard measure of delivery in advertising. In this instance, the Supplemental Notice Plan's advertisements will be seen by an average adult 1.5 times on television and heard 1.5 times on radio, although many individuals will see the advertisements numerous times and some may not see it at all.

(e) <u>Email Notice</u>.

(i) The Debtors have email information for approximately 40% of their Customers. Accordingly, to supplement the hard-copy notice to Customers described above, the Debtors intend to send the Customer Bar Date Notice to such parties via email as well, with a link to the online proof of claim submission portal. Prime Clerk does not anticipate material costs or expenses to be incurred in connection with providing email notice as set forth herein.

(f) <u>Claim Service Centers</u>.

(i) The Debtors intend to utilize certain of their existing customer billing service centers as claims service centers ("**Claim Service Centers**"). Prime Clerk staff will supplement existing staff at the Debtors' Chico, Marysville, Oroville, Redding, Santa Rosa, and Napa billing center locations where members of the affected communities may go to ask general questions about the claims process. Additionally, Customers will be able to hand deliver Proofs of Claim to the Claim Service Centers during normal business hours and receive a date-stamped receipt. The individuals staffing the Claim

Service Centers will make clear that that no legal advice would be provided. In addition, the Bar Date Notices will be posted in each of the Debtors' approximately seventy-five (75) billing service center locations. Prime Clerk estimates the cost of staffing Claims Service Centers to be $500,000 - $750,000 depending on staffing levels.

[Signature page on next page]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: May 1, 2019

/s/ *Shai Y. Waisman*
By: Shai Y. Waisman
Title: Chief Executive Officer
Prime Clerk LLC
830 3rd Avenue, 9th Floor
New York, New York 10022