WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)(Jointly Administered)<br><br>**APPLICATION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY PRICEWATERHOUSECOOPERS LLP AS MANAGEMENT, TAX, AND ADVISORY CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO PETITION DATE**<br>Date: May 22, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court,<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>**Objection Deadline**: May 15, 2019, **4:00 p.m. (PT)** |

1    PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as
2    debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned
3    chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Application (the "**Application**"),
4    pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**")
5    and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),
6    for authority to retain and employ PricewaterhouseCoopers LLP ("**PwC**") as management, tax, and
7    advisory consultants for the Debtors effective as of the Petition Date (as defined below) in accordance
8    with the terms and conditions set forth in the MSA (as defined below) and Engagement Letters (as
9    defined below).

10   In support of this Application, the Debtors submit the Declaration of Daniel Bowman, a principal
11   of PwC (the "**Bowman Declaration**"), filed concurrently herewith. Copies of the MSA and Engagement
12   Letters are annexed as exhibits to the Bowman Declaration. A proposed form of order approving the
13   retention and employment of PwC is annexed hereto as **Exhibit A** (the "**Proposed Order**").

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

## III. PWC'S QUALIFICATIONS

PwC is a leading full-service accounting, tax, consulting, and financial services firm with over 79 offices and more than 45,000 employees in the United States. PwC is the United States-based firm of a global network of separate and independent member firms that operate locally in countries around the world. PwC has considerable experience providing accounting, tax, consulting, and financial advisory services to businesses in a chapter 11 environment, and has been employed in numerous chapter

11 cases, including: *In re Westmoreland Coal Company,* Case No. 18-35672 (DRJ) (Bankr. S.D.T.X. Jan. 22, 2019); *In re iHeartMedia, Inc.,* Case No. 18-31274 (MI) (Bankr. S.D.T.X. Apr. 12, 2018); *In Cumulus Media Inc.,* Case No. 17-13381 (SCC) (Bankr. S.D.N.Y. Mar. 6, 2018); *In Toys "R" Us, Inc.,* Case No. 17-34665 (KLP) (Bankr. E.D.V.A. Jan. 31, 2018); *In re Walter Investment Management Corp.,* Case No. 17-13446 (JLG) (Bankr. S.D.N.Y. Jan. 18, 2018); *In re Westinghouse Electric Company LLC,* Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. Aug.4, 2017); *In re TK Holdings Inc.,* Case No. 17-11375 (BLS) (Bankr. Del. Jul. 26, 2017); *In re Avaya Inc.,* Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Mar. 21, 2017); *In re Breitburn Energy Partners LP,* Case No. 16-11390 (SMB) (Bankr. S.D.N.Y. Aug. 19, 2016); and *In re Sunedison, Inc.,* Case No. 16-10992 (SMB) (Bankr. S.D.N.Y May 20, 2016).

PwC performed a number of engagements for the Debtors prior to the Petition Date and PwC has developed valuable institutional knowledge about the Debtors' businesses, operations, accounting systems, and other material information. Having worked with the Debtors' management and their other advisors, PwC has developed relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases. Accordingly, PwC is both well-qualified and uniquely able to provide certain services during these Chapter 11 Cases in an efficient and timely manner.

## IV. SCOPE OF SERVICES

Pursuant to the terms and conditions of the MSA and Engagement Letters, the Debtors seek to retain PwC to provide, among other things, the following management, tax, and advisory services, as requested by the Debtors (the "**Services**") as summarized herein.[1]

Management, Accounting, and Advisory Services. Pursuant to the terms and conditions of that certain Master Services Agreement dated as of January 17, 2017 (as amended November 16, 2018) attached to the Bowman Declaration as **Exhibit 1** and twelve distinctive contracts related thereto (the "**MSA Contracts**") by and between the Debtors and PwC (such MSA Contracts, collectively with the

---

[1] The summary of the Engagements included in this Application is provided for purposes of convenience only and is qualified in its entirety by reference to the Engagements. To the extent that this Application and the terms of a particular Engagement are inconsistent, the terms of the Engagement shall control. Contemporaneously herewith, the Debtors have filed a motion seeking to redact certain aspects of the MSA to protect their confidential nature. Unredacted copies of the MSA will be furnished to the Court upon request.

Master Services Agreement, the "**MSA**"), attached as **Exhibits 1-A through 1-L** to the Bowman Declaration, PwC will continue to provide management, and advisory services to the Debtors , to the extent expressly required by and as more particularly described in the applicable designated agreements:

 A. <u>Fixed-Fee Engagements</u>

  (i) Perform support activities related to evidence evaluation for the 2017 North Bay Fires and 2018 Camp Fire and assist the Debtors in the development and formalization of consistent claims-coding processes and procedures, which will help the Debtors to facilitate enhanced data quality and enhanced reporting (the "**Claims Services**", as described in **Exhibits 1-A** and **1-B** to the Bowman Declaration);

  (ii) Assist the Debtors with their corporate incident reporting processes related to the 2017 North Bay Fires and 2018 Camp Fire and other major events in the Debtors' service territory, including, operations and legal support activities (the "**North Bay Services**" and "**Camp Fire Services**", as described in **Exhibits 1-C** and **1-D** to the Bowman Declaration);

  (iii) Provide off-shore assistance surrounding the management of technical support issues pertaining to Ariba (the Debtors' purchasing system) (the "**Offshore Support Services**", as described in **Exhibit 1-E** to the Bowman Declaration);

  (iv) Undertake external assessments to determine whether the internal auditors are fulfilling the expectations of the Debtors' Audit Committee and its effectiveness in carrying out its mission (the "**Internal Audit Assessment Services**", as described in **Exhibit 1-F** to the Bowman Declaration);

  (v) Assist the Debtors in implementing a digital contract management process, including, but not limited to: implementing a model to assist the Debtors with design recommendations; assisting with the data migration; testing, deployment, and implementation of the new business processes (the "**IT Implementation Services**", as described in **Exhibit 1-G** to the Bowman Declaration);

  (vi) Assist the Debtors' Compliance and Ethics department ("**C&E**") in assessments of their compliance programs, including, but not limited to: reviews of the compliance program elements, analyzing documentation of compliance, drafting results of assessments, and supporting its compliance and ethics road map (the "**Compliance Services**", as described in **Exhibit 1-H** to the Bowman Declaration);

  (vii) Assist the Debtors in the assessment of the design and operations of compliance controls across the Debtors' business, including, but not limited to: providing recommendations on the control design as a result of controls testing, and provide controls training to the Debtors' business

units (the "**Controls Testing Services**"), as described in **Exhibit 1-I** hereto);

B. Hourly Fee Engagements

(viii) Perform forensic collection of data from electronic devices related to the 2017 North Bay Fires and 2018 Camp Fire (the "**E-Discovery Services**", as described in **Exhibits 1-J** and **1-K** to the Bowman Declaration); and

(ix) Provide assistance and support services related to the Debtor's general rate case, including certain administrative and logistical support tasks; (the "**Rate Case Support Services**", as described in **Exhibit 1-L** to the Bowman Declaration).

Tax Zone Credit Advisory Services. Pursuant to the terms and conditions of that certain engagement letter dated as of August 26, 2013, by and between the Debtors and PwC (the "**Tax Enterprise Zone Credits Engagement Letter**"), attached as **Exhibit 2** to the Bowman Declaration, since 2013, PwC has assisted and advised the Debtors in available California Enterprise Zone Hiring Tax Credits ("**EZ HTC**") based upon the Targeted Employment Area for all open tax years. PwC has identified potentially qualified employees and calculated the hiring tax credit for all locations with supporting documentation. During each subsequent year, PwC recalculates the enterprise zone limitation and prepares amended Forms 3805Z for such year. PwC then presents all calculation forms in support of the claimed credits to the Debtors for their consideration, review, and approval prior to filing such forms by the Debtors with the appropriate state agencies (the "**Tax EZ Credit Services**").

Strategic Analysis Services. Pursuant to the terms and conditions of that certain engagement letter dated as of June 12, 2018 (amended as of December 10, 2018), by and between the Debtors and PwC (the "**Strategic Analysis Engagement Letter**"), attached as **Exhibits 3-A** and **3-B**[2] to the Bowman Declaration, PwC will continue to support the Debtors regarding the analysis of potential restructuring scenarios supporting their strategic priorities, including but not limited to, holding discussions with certain of the Debtors' officers, employees, and outside consultants of the Debtors, and providing advice

---

[2] The "Contract Work Authorization" that was prepared internally by the Debtors in connection with these services improperly indicated that the services would be subject to the MSA notwithstanding that the work at issue (a) did not involve the management consulting services to which the MSA applies and (b) was subject to a separate, stand-alone engagement letter. The Debtors' senior management team has acknowledged the error and confirmed that the subject work was, in fact, governed by the stand-alone Strategic Analysis Engagement Letter rather than the MSA.

on the Debtors' strategic analysis of certain corporate structure decisions across various work streams including: project management, accounting and finance, tax, regulatory, legal, other functional areas (e.g. information technology, human resources, etc.) and operating models (the "**Strategic Analysis Services**").

Bankruptcy Tax and Accounting Advisory Services. Pursuant to the terms and conditions of that certain engagement letter dated as of February 14, 2019, by and between the Debtors and PwC (the "**Bankruptcy Accounting Advisory Services Engagement Letter**"), attached as **Exhibit 4** to the Bowman Declaration, PwC will perform the accounting advisory services related to the Debtors' evaluation of their accounting for bankruptcy under ASC 852, reorganization, and provide advice and assistance in connection with the Debtors' accumulation of data and preparation of various schedules, account analyses, and reconciliations, including reconciliations of claims, information needed for the Debtors' schedules and statements of financial affairs and other reports required by the Court, any information needed in connection with any plan of reorganization of the Debtors and such other documentation that is customarily issued by debtors in chapter 11 cases of this size and complexity (the "**Bankruptcy Accounting Services**").

In addition, pursuant to that certain engagement letter dated as of February 11, 2019, by and between the Debtors and PwC (the "**Bankruptcy Tax Advisory Services Engagement Letter**" and, together with the Tax Enterprise Zone Credits Engagement Letter, the Strategic Analysis Engagement Letter, the Bankruptcy Accounting Advisory Services Engagement Letter, collectively, the "**Engagement Letters**"), attached as **Exhibit 5** to the Bowman Declaration, PwC will perform various bankruptcy tax advisory services, including but not limited to: preparation of a tax model to illustrate U.S. federal and California income tax implications of the bankruptcy and related transactions, calculation of ownership changes for Internal Revenue Code ("**IRC**") section 382 purposes and advising management whether one or more private letter rulings with the IRS and/or California tax agencies may be required to address significant tax issues that arise through the bankruptcy process, and consulting with management throughout the bankruptcy process to advise management of expected tax issues and

any additional mutually agreed services subsequently requested by members of the Debtors' management team that are related to the bankruptcy (the "**Bankruptcy Tax Services**").

In addition to the foregoing, at the request of the Debtors, PwC may provide additional services deemed appropriate and necessary to benefit the Debtors' estates. Should PwC agree in its discretion to undertake any such matter, PwC and the Debtors may enter into additional agreements. PwC and the Debtors will seek separate retention orders with regard to any such additional agreements.

## V. NO DUPLICATION OF SERVICES

The Debtors intend that the services of PwC will complement, and not duplicate, the services being rendered by other professionals retained in these Chapter 11 Cases. PwC understands that the Debtors have retained and may retain additional professionals during the term of the engagement. The Debtors plan to retain KPMG LLP for certain information technology, risk, and legal support services and Deloitte & Touche LLP as the Debtors' independent auditor of their financial statements. PwC will be providing distinct management, tax, and advisory services and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## VI. PWC'S DISINTERESTEDNESS

To the best of the Debtors' knowledge, information, and belief, the members, partners, principals and professionals assigned to this case by PwC do not have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, except as may be set forth in the Bowman Declaration.

Based upon the Bowman Declaration, the Debtors submit that PwC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code. The Debtors have been informed that PwC will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise. If any new relevant facts or relationships are discovered, PwC will supplement its disclosure to the Court.

In the ninety (90) days before the Petition Date, the Debtors paid PwC $17,596,753.79 for services rendered. PwC received advance payments from the Debtors for North Bay Services, Camp Fire Services and the Strategic Analysis Services. These advance payments have be applied on account

of fees and expenses incurred in connection with prepetition services. As of the Petition Date, PwC was owed $799,361.44 for professional services provided and unpaid by the Debtors. PwC has agreed to waive any unpaid prepetition fees or expenses. Accordingly, as of the Petition Date, PwC does not hold a prepetition claim against the Debtors for amounts owed or services rendered.

**VII. PROFESSIONAL COMPENSATION**

As set forth in the Bowman Declaration, PwC will apply to the Court for allowances and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the *United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees*, effective February 19, 2014 (the "**Local Guidelines**"), the U.*S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**"), the *Order Pursuant to 11 U.S.C. §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 701], and any further Orders of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**").

Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and the Orders, the Debtors propose to compensate PwC as contemplated in the Engagement Letters on either an hourly or fixed-fee basis.

A. <u>Hourly Fee Engagements</u>:

The hourly rates set forth below are PwC's applicable hourly rates for the work of its professionals and staff members for certain of the engagements set forth in the applicable MSA Contracts and Engagement Letters. These hourly rates reflect PwC's normal and customary billing practices for engagements of this complexity and magnitude. PwC's hourly rates are subject to periodic adjustment from time to time in accordance with PwC's established billing practices and procedures. PwC will provide reasonable notice of any changes to its hourly rates to the Debtors and the U.S. Trustee.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| Billing Category | E-Discovery Services | Rate Case Support[3] | Strategic Analysis Services | Bankruptcy Accounting Services | Bankruptcy Tax Services |
|---|---|---|---|---|---|
| Partner / Principal | $499 | $500 | $780 - $909 | $839 - $994 | $909 |
| Managing Director | n/a | n/a | n/a | $757 - $898 | n/a |
| Director/Senior Manager | $404 | $395 | $650 - $776 | $715 - $807 | $707 |
| Manager | $329 | n/a | $445 - $650 | $525 - $628 | $585 |
| Senior Associate/Staff | $267 | $260 | $348 - $497 | $460 - $517 | $464 |
| Associate | $172 | n/a | $287 - $433 | $415 - $450 | $360 |
| Administrative | n/a | $260 | n/a | $135 | $125 |

B. <u>Fixed-Fee Engagements:</u>

The Debtors and PwC have agreed to fixed-fee compensation for several of the MSA Contracts. These fixed-fee estimates are based on the time required by the individuals assigned to the Debtors' engagements. In addition, the fee estimates are based on the assumption that the Debtors will provide certain information and assistance to PwC. As of January 29, 2019, PwC had received the following amounts pursuant to those MSA Contracts for Services performed prepetition and will be seeking reimbursement of the remainder of the fixed-fee estimates as services are provided post-petition.

| Services | Fixed-Fee Amount | Fees Paid Prepetition[4] | Fees Remaining to be Paid for Yet to be Performed Post-Petition Services |
|---|---|---|---|
| Claims Services – Evidence Evaluation | C.o. 4 - $25,000 | $18,750 | $6,250 |
| Claims Services – Claims Coding | C.o. 5 - $122,000 | $101,500 | $20,500 |
| North Bay Services | $2,789,441 | $1,534,441 | $1,255,000 |
| Camp Fire Services | $3,072,201 | $1,510,701 | $1,561,500 |
| Offshore Support Services | $95,228 | $0 | $95,228 |
| Internal Audit Assessment Services | $99,000 | $0 | $99,000 |
| IT Implementation Services | $430,000 | $0 | $327,000 |
| Compliance Services | $1,945,000 | $0 | $1,945,000 |
| Controls Testing Services | $550,000 | $0 | $550,000 |

---

[3] Pursuant to the terms of the Rate Case Support Services Agreement, PwC has estimated an initial fee not to exceed $750,000, but it is PwC's understanding that the amount of support the Debtors need may change over the life of the engagement.

[4] These payments represent the fees paid prepetition under these MSA Contracts PWC received additional payment from the Debtors prepetition related to reasonable out-of-pocket expenses associated with these services.

Contingency Fee Engagements. The proposed fee for the Tax EZ Credit Services is calculated as equal to fifteen percent (15%) of the tax savings related to the California EZ HTC review for all open tax years identified and vouched by PwC (and not previously identified by the Debtors or their other providers). The 15% fee percentage includes all fee and expenses and will be due at the time the Debtors receive the cash benefit, i.e. upon receipt of the refund or claiming an offset against a tax liability. PwC expects that these California EZ HTC filing will undergo substantive review and consideration by the state taxing authorities. If the Debtors receive any cash benefit during these Chapter 11 Cases, PwC will present an exhibit with the facts and calculations of tax savings for Court approval.

Expenses. Additionally, PwC will invoice the Debtors for its reasonable out-of-pocket expenses charged during these Chapter 11 Cases, which include, among other things, telephone and other charges, mail and express mail charges, travel expenses, expenses for "working meals" and computerized research, applicable sales, use or value added tax, as well as non-ordinary costs such as secretarial and other overtime.

The PwC professionals providing services to the Debtors will consult with internal PwC bankruptcy retention and billing advisors to ensure compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and any other applicable procedures and orders of the Court, as well as to decrease the overall fees associated with the administrative aspects of PwC's engagement. The services provided by these bankruptcy retention and billing advisors shall include, but are not limited to: (a) assistance with preparation of the bankruptcy retention documents; (b) assistance with the disinterestedness disclosures; and (c) preparation of monthly fee statements and interim and final fee applications. Given the specialized nature of these services, specific billing rates exist for these PwC bankruptcy retention and billing advisors.[5]

The Debtors understand it is not the practice of PwC's professionals to keep detailed time records in one-tenth-of-an-hour increments (*i.e.*, six minute increments) as customarily kept by attorneys who are compensated subject to approval of the Bankruptcy Court. Instead, the customary practice of PwC's

---

[5] The rate per hour for these PwC bankruptcy retention and billing advisors by level of experience will be as follows: Director: $550; Manager: $400; Senior Associate: $290; Associate: $225 and Paraprofessional: $150. These rates also are subject to periodic adjustment.

professionals is to keep reasonably detailed records of services rendered during the course of an engagement in half-hour (0.5) increments. Thus, PwC requests that this Court allow PwC's professionals to provide the following in its monthly, interim, and final fee applications: (a) a narrative summarizing each project category and the services rendered under each project category; (b) as an exhibit to each monthly, interim, and final fee application that PwC files in these Chapter 11 Cases, a summary, by project category, of services rendered to the Debtors, which identifies each professional rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered by each professional; and (c) reasonably detailed records of time in half-hour (0.5) increments, describing the services rendered by each professional and the amount of time spent on each date.

The Debtors respectfully submit that PwC's rates and policies stated in the Bowman Declaration are reasonable, particularly given the nature of these Chapter 11 Cases.

## VIII. INDEMNIFICATION

As part of the overall compensation payable to PwC under the terms of certain of the MSA Contracts and Engagement Letters, the Debtors have agreed to certain indemnification obligations as described in such MSA Contracts and Engagement Letters. The terms of the MSA and Engagement Letters and the indemnification provisions contained therein were fully negotiated in good faith and at arm's length.

## IX. BASIS FOR RELIEF REQUESTED

The Debtors seek authority to employ and retain PwC as its management, tax, and advisory consultants under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out the [debtors'] duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in

possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

The Debtors further seek approval of the fixed-fee portion of the engagement pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals on flexible terms that reflect the nature of their services and market conditions. The Debtors believe that the fixed-fee portion of the engagement provides for reasonable terms and conditions of employment, comparable to other leading consulting firms and, thus, should be approved under section 328(a) of the Bankruptcy Code (except that the U.S. Trustee may review such compensation under sections 330 and 331 of the Bankruptcy Code). Accordingly, the Debtors submit that the relief requested in this Application is in the best interests of the Debtors' estates, creditors, and all parties in interest to these Chapter 11 Cases.

## X. NOTICE

Notice of this Application will be provided to (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested

herein as a sound exercise of the Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties interests, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: May 1, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ *Thomas B. Rupp*
    Thomas B. Rupp

*Attorneys for Debtors
and Debtors in Possession*