WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br> - and – <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> **Debtors.** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> *\* All papers shall be filed in the Lead Case No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 (Lead Case) (Jointly Administered) <br><br> **DECLARATION OF DANIEL BOWMAN IN SUPPORT OF DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY PRICEWATERHOUSECOOPERS LLP AS MANAGEMENT, TAX, AND ADVISORY CONSULTANTS TO THE DEBTORS** *NUNC PRO TUNC* **TO PETITION DATE** <br> Date: May 22, 2019 <br> Time: 9:30 a.m. (Pacific Time) <br> Place: United States Bankruptcy Court <br>   Courtroom 17, 16th Floor <br>   San Francisco, CA 94102 <br><br> **Objection Deadline**: May 15, 2019, **4:00 p.m. (PT)** |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Daniel Bowman, being duly sworn, state the following under penalty of perjury:

I am a principal at PricewaterhouseCoopers LLP ("**PwC**"), an accounting and financial services firm that maintains offices at Three Embarcadero Center, San Francisco, California 94111. PwC is a global assurance, tax, and business consulting firm with over 250,000 professionals operating in 158 countries.[1] I am duly authorized to make this declaration (this "**Declaration**") on behalf of PwC and submit it in support of the *Application of Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ PricewaterhouseCoopers LLP as Management, Tax, and Advisory Consultants to the Debtors Nunc Pro Tunc to Petition Date* (the "**Application**").[2] Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

I submit this Declaration in connection with the proposed retention of PwC as management, tax, and advisory consultants for PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") to perform those engagements summarized in the in the Application (the "**Engagements**").

Pursuant to the terms of the Engagements, PwC has agreed to provide certain management, tax, and advisory consulting services to the Debtors to the extent necessary to complete the projects specified in the various agreements governing such Engagements. PwC is well-qualified to provide such services to the Debtors as it has extensive experience and knowledge in performing the scope of work described below and is widely recognized for its experience and expertise in the provision of such services to large and complex business entities.

Moreover, PwC is a leading full service accounting, consulting, tax, and financial services firm with over 79 offices and more than 45,000 employees in the United States. PwC is the United States-

---

[1] Such firms are members of PricewaterhouseCoopers International Limited ("**PwC IL**"), a UK membership based company, and limited by guarantee, with no shareholders and no capital. The member firms of PwC IL have agreed to operate certain of their professional services in accordance with agreed standards, but remain separate legal entities with each member firm being locally owned and managed.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

based firm of a global network of separate and independent member firms that operate locally in countries around the world. PwC has considerable experience providing accounting, tax, consulting, and financial advisory services to businesses in a chapter 11 environment, and has been employed in numerous chapter 11 cases, including: *In re Westmoreland Coal Company*, Case No. 18-35672 (DRJ) (Bankr. S.D.T.X. Jan. 22, 2019); *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D.T.X. Apr. 12, 2018); *In Cumulus Media Inc.*, Case No. 17-13381 (SCC) (Bankr. S.D.N.Y. Mar. 6, 2018); *In Toys "R" Us, Inc.*, Case No. 17-34665 (KLP) (Bankr. E.D.V.A. Jan. 31, 2018); *In re Walter Investment Management Corp.*, Case No. 17-13446 (JLG) (Bankr. S.D.N.Y. Jan. 18, 2018); *In re Westinghouse Electric Company LLC*, Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. Aug.4, 2017); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. Del. Jul. 26, 2017); *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Mar. 21, 2017); *In re Breitburn Energy Partners LP*, Case No. 16-11390 (SMB) (Bankr. S.D.N.Y. Aug. 19, 2016); and *In re Sunedison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y May 20, 2016). Accordingly, PwC is well-qualified to provide certain services during these Chapter 11 Cases in an efficient and timely manner.

Lastly, because PwC performed a number of engagements for the Debtors prior to the Petition Date, PwC has developed valuable institutional knowledge about the Debtors' businesses, operations, accounting systems and other material information.

For each of the forgoing reasons, PwC is well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner. Therefore, PwC submits that continued employment and retention of PwC as management, tax, and advisory consultants to the Debtors for the purpose of completing the specific services set forth in the agreements governing the Engagements[3] is in the best interests of the Debtors, their creditors and all parties in interest.

The Debtors have requested that PwC provide the specific services set forth in the various agreements governing the Engagements in connection with these Chapter 11 Cases consistent with the

---

[3] PwC is not at this time seeking to be retained to provide services for the Debtors that fall outside of the express scope of the agreements governing the Engagements. To the extent PwC and the Debtors determine that PwC will seek to perform additional services for the Debtors, the Debtors shall file a supplemental application with the Court.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

terms of such agreements and as summarized herein.[4]

Management, Accounting, and Advisory Services. Pursuant to the terms and conditions of that certain Master Services Agreement dated as of January 17, 2017 (as amended November 16, 2018) attached hereto as **Exhibit 1** and twelve distinctive contracts related thereto (the "**MSA Contracts**") by and between the Debtors and PwC (such MSA Contracts, collectively with the Master Services Agreement, the "**MSA**"), attached hereto as **Exhibits 1-A through 1-L**, PwC will continue to provide management, and advisory services to the Debtors, to the extent expressly required by and as more particularly described in the applicable designated agreements:

A. Fixed-Fee Engagements

    (i) Perform support activities related to evidence evaluation for the 2017 North Bay Fires and 2018 Camp Fire and assist the Debtors in the development and formalization of consistent claims-coding processes and procedures which will help the Debtors to facilitate better data quality and enhanced reporting (the "**Claims Services**", as described in **Exhibits 1-A** and **1-B** hereto);

    (ii) Assist the Debtors with their corporate incident reporting processes related to the 2017 North Bay Fires and 2018 Camp Fire and other major events in the Debtors' service territory, including, operations and legal support activities (the "**North Bay Services**" and "**Camp Fire Services**", as described in **Exhibits 1-C** and **1-D** hereto);

    (iii) Provide off shore assistance surrounding the management of technical support issues pertaining to Ariba (the Debtors' purchasing system) (the "**Offshore Support Services**", as described in **Exhibit 1-E** hereto);

    (iv) Undertake external assessments to determine that the internal auditors are fulfilling the expectations of the Debtors' Audit Committee and its effectiveness in carrying out its mission (the "**Internal Audit Assessment Services**", as described in **Exhibit 1-F** hereto);

    (v) Assist the Debtors in implementing a digital contract management process, including, but not limited to: implementing a model to assist the Debtors with design recommendations, assisting with the data migration;

---

[4] The summary of the Engagements included in this Declaration is provided for purposes of convenience only and is qualified in its entirety by reference to the Engagements. To the extent that this Declaration and the terms of a particular Engagement are inconsistent, the terms of the Engagement shall control. Contemporaneously herewith, the Debtors have filed a motion seeking to redact certain aspects of the MSA to protect their confidential nature. Unredacted copies of the MSA will be furnished to the Court upon request.

testing, deployment and implementation of the new business processes (the "**IT Implementation Services**", as described in **Exhibit 1-G** hereto);

  (vi) Assist the Debtors' Compliance and Ethics department ("**C&E**") in assessments of their compliance programs, including, but not limited to: reviews of the compliance program elements, analyzing documentation, drafting results of assessments, and supporting its compliance and ethics road map (the "**Compliance Services**", as described in **Exhibit 1-H** hereto);

  (vii) Assist the Debtors in the assessment of the design and operations of compliance controls across the Debtors' business, including, but not limited to: providing recommendations on the control design as a result of controls testing, and provide controls training to the Debtors' business units (the "**Controls Testing Services**"), as described in **Exhibit 1-I** hereto).

B. <u>Hourly Fee Engagements</u>

  (viii) Perform forensic collection of data from electronic devices related to the 2017 North Bay Fires and 2018 Camp Fire (the "**E-Discovery Services**", as described in **Exhibits 1-J** and **1-K** hereto); and

  (ix) Provide assistance and support services related to the Debtor's general rate case, including certain administrative and logistical support tasks; (the "**Rate Case Support Services**", as described in **Exhibit 1-L** hereto).

<u>Tax Zone Credit Advisory Services</u>. Pursuant to the terms and conditions of that certain engagement letter dated as of August 26, 2013, by and between the Debtors and PwC (the "**Tax Enterprise Zone Credits Engagement Letter**"), attached as **Exhibit 2** hereto, since 2013, PwC has assisted and advised the Debtors in available California Enterprise Zone Hiring Tax Credits ("**EZ HTC**") based upon the Targeted Employment Area for all open tax years. PwC has identified potentially qualified employees and calculated the hiring tax credit for all locations with supporting documentation. During each subsequent year, PwC recalculates the enterprise zone limitation and prepares amended Forms 3805Z for such year. PwC then presents all calculation forms in support of the claimed credits to the Debtors for their consideration, review, and approval prior to filing such forms by the Debtors with the appropriate state agencies (the "**Tax EZ Credit Services**").

<u>Strategic Analysis Services</u>. Pursuant to the terms and conditions of that certain engagement letter dated as of June 12, 2018 (amended as of December 10, 2018), by and between the Debtors and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PwC (the "**Strategic Analysis Engagement Letter**"), attached hereto as **Exhibits 3-A** and **3-B**[5], PwC will continue to support the Debtors regarding the analysis of potential restructuring scenarios supporting their strategic priorities, including but not limited to holding discussions with certain of the Debtors' officers, employees and outside consultants of the Debtors, and providing advice on the Debtors' strategic analysis of certain corporate structure decisions across various work streams including: project management, accounting and finance, tax, regulatory, legal, other functional areas (e.g. information technology, human resources, etc.) and operating model (the "**Strategic Analysis Services**").

<u>Bankruptcy Tax and Accounting Advisory Services</u>. Pursuant to the terms and conditions of that certain engagement letter dated as of February 14, 2019, by and between the Debtors and PwC (the "**Bankruptcy Accounting Advisory Services Engagement Letter**"), attached as **Exhibit 4** hereto, PwC will perform the accounting advisory services related to the Debtors' evaluation of their accounting for bankruptcy under ASC 852, reorganization, and provide advice and assistance in connection with the Debtors' accumulation of data and preparation of various schedules, account analyses, and reconciliations, including reconciliations of claims, information needed for the Debtors' schedules and statements of financial affairs and other reports required by the Court, any information needed in connection with the Debtors' plan of reorganization and such other documentation that is customarily issued by debtors in chapter 11 cases of this size and complexity (the "**Bankruptcy Accounting Services**").

In addition, pursuant to that certain engagement letter dated as of February 11, 2019, by and between the Debtors and PwC (the "**Bankruptcy Tax Advisory Services Engagement Letter**" and together with the Tax Enterprise Zone Credits Engagement Letter, the Strategic Analysis Engagement Letter, the Bankruptcy Accounting Advisory Services Engagement Letter, collectively the "**Engagement Letters**"), attached as **Exhibit 5** hereto, PwC will perform various bankruptcy tax advisory services, including but not limited to: preparation of a tax model to illustrate U.S. federal and

---

[5] The "Contract Work Authorization" that was prepared internally by the Debtors in connection with these services improperly indicated that the services would be subject to the MSA notwithstanding that the work at issue (a) did not involve the management consulting services to which the MSA applies and (b) was subject to a separate, stand-alone engagement letter. The Debtors' senior management team has acknowledged the error and confirmed that the subject work was, in fact, governed by the stand-alone Strategic Analysis Engagement Letter rather than the MSA.

California income tax implications of the bankruptcy and related transactions, calculation of ownership changes for Internal Revenue Code ("**IRC**") section 382 purposes and advising management whether one or more private letter rulings with the IRS and/or California tax agencies may be required to address significant tax issues that arise through the bankruptcy process, and consulting with management throughout the bankruptcy process to advise management of expected tax issues and any additional mutually agreed services subsequently requested by members of the Debtors' management team that are related to the bankruptcy (the "**Bankruptcy Tax Services**").

PwC believes that the services to be rendered by PwC will not be duplicative of the services rendered by any other professionals in these Chapter 11 Cases. The Debtors and PwC will use reasonable efforts to avoid the duplication of services being rendered by PwC and other professionals in these Chapter 11 Cases.

To the extent that the Debtors and PwC later determine that PwC will perform additional services deemed appropriate and necessary to benefit the Debtors' estates. PwC and the Debtors may enter into additional agreements with respect to such services and will seek separate retention orders with regard to any such additional agreements.

PwC intends to apply to the Court for allowance of compensation and reimbursement of expenses for the services performed for the Debtors, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and any applicable Orders of the Court, both in connection with this Application and any interim and final fee applications to be filed by PwC in these Chapter 11 Cases, in accordance with the terms and conditions of the MSA and the Engagement Letters. Moreover, PwC will make reasonable efforts to comply with the requests of the United States Trustee ("the **U.S. Trustee**") for information and additional disclosures as set forth in the Fee Guidelines or any other applicable Orders.

PwC's decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms set forth in the MSA and the Engagement Letters. Subject to this Court's approval, PwC, in accordance with its customary terms and conditions of employment, including the proposed compensation arrangements set forth in the respective MSA

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Contracts and Engagement Letters (the "**Fee Structures**"), for (a) compensation for the E-Discovery Services, Rate Case Support Services, Strategic Analysis Services, Bankruptcy Accounting Services, and Bankruptcy Tax Services on an hourly basis in accordance with PwC's ordinary and customary rates in effect on the date such services are rendered; (b) compensation for the Claims Services, North Bay Services, Camp Fire Services, Offshore Support Services, Internal Audit Assessment Services, IT Implementation, Compliance Services and Controls Testing Services on a fixed-fee basis (summarized below) in accordance with the terms of each respective MSA Contract; (c) compensation for the Tax EZ Credit Services and corresponding fees in accordance with the terms of its Engagement Letter; and (d) reimbursement of actual and necessary costs and expenses incurred by PwC in connection with all services performed on behalf of the Debtors. I believe that these Fee Structures and compensation for each of the Engagements are market-based and reasonable considering PwC's knowledge and experience.

Hourly Fee Engagements. The hourly rates set forth below are PwC's applicable hourly rates for the work of its professionals and staff members for the different engagements set forth in the applicable MSA Contracts and Engagement Letters. These hourly rates reflect PwC's normal and customary billing practices for engagements of this complexity and magnitude. PwC's hourly rates are subject to periodic adjustment from time to time in accordance with PwC's established billing practices and procedures. PwC will provide reasonable notice of any changes to its hourly rates to the Debtors and the U.S. Trustee.

| Billing Category | E-Discovery Services | Rate Case Support[6] | Strategic Analysis Services | Bankruptcy Accounting Services | Bankruptcy Tax Services |
|---|---|---|---|---|---|
| Partner / Principal | $499 | $500 | $780 - $909 | $839 - $994 | $909 |
| Managing Director | n/a | n/a | n/a | $757 - $898 | n/a |
| Director/Senior Manager | $404 | $395 | $650 - $776 | $715 - $807 | $707 |
| Manager | $329 | n/a | $445 - $650 | $525 - $628 | $585 |
| Senior Associate/Staff | $267 | $260 | $348 - $497 | $460 - $517 | $464 |
| Associate | $172 | n/a | $287 - $433 | $415 - $450 | $360 |
| Administrative | n/a | | n/a | $135 | $125 |

---

[6] Pursuant to the terms of the Rate Case Support Services agreement, PwC has estimated an initial fee not to exceed $750,000, but it is PwC's understanding that the amount of support the Debtors need may change over the life of the engagement.

Fixed-Fee Engagements. The Debtors and PwC have agreed to fixed-fee compensation for several of the MSA Contracts. These fixed-fee estimates are based on the time required by the individuals assigned to the Debtors' engagements. In addition, the fee estimates are based on the assumption that the Debtors will provide certain information and assistance to PwC. As of January 29, 2019, PwC had received the following amounts pursuant to those MSA Contracts for services performed prepetition and will be seeking reimbursement of the remainder of the fixed-fee estimates as services are provided post-petition.

| Services | Fixed-Fee Amount | Fees Paid Prepetition[7] | Fees Remaining to be Paid for Yet to be Performed Post-Petition Services |
|---|---|---|---|
| Claims Services – Evidence Evaluation | C.o. 4 - $25,000 | $18,750 | $6,250 |
| Claims Services – Claims Coding | C.o. 5 - $122,000 | $101,500 | $20,500 |
| North Bay Services | $2,789,441 | $1,534,441 | $1,255,000 |
| Camp Fire Services | $3,072,201 | $1,510,701 | $1,561,500 |
| Offshore Support Services | $95,228 | $0 | $95,228 |
| Internal Audit Assessment Services | $99,000 | $0 | $99,000 |
| IT Implementation Services | $430,000 | $0 | $327,000 |
| Compliance Services | $1,945,000 | $0 | $1,945,000 |
| Controls Testing Services | $550,000 | $0 | $550,000 |

Contingency Fee Engagements. The proposed fee for the Tax EZ Credit Services is calculated as equal to fifteen percent (15%) of the tax savings related to the California EZ HTC review for all open tax years identified and vouched by PwC (and not previously identified by the Debtors or their other providers). The 15% fee percentage includes all fee and expenses and will be due at the time the Debtors receive the cash benefit, i.e. upon receipt of the refund or claiming an offset against a tax liability. PwC expects that these California EZ HTC filing will undergo substantive review and consideration by the state taxing authorities. If the Debtors receive any cash benefit during these Chapter 11 Cases, PwC will present an exhibit with the facts and calculations of tax savings for Court approval.

Expenses. Additionally, PwC will invoice the Debtors for its reasonable out-of-pocket expenses

---

[7] These payments represent the fees paid prepetition under these MSA Contracts. PwC received additional payment from the Debtors prepetition related to reasonable out-of-pocket expenses associated with these services.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

charged during these Chapter 11 Cases, which include, among other things, telephone and other charges, mail and express mail charges, travel expenses, expenses for "working meals" and computerized research, applicable sales, use or value added tax, as well as non-ordinary costs such as secretarial and other overtime. In the 90 days prior to the Petition Date, the Debtors paid PwC $17,596,753.79 in connection with prepetition services provided to the Debtors. Certain of these payments were advance payments from the Debtors for North Bay Services, Camp Fire Services and the Strategic Analysis Services. These advance payments (which are a subset of the total noted above and approximate $1,947,350) have been applied on account of fees and expenses incurred in connection with prepetition services. As of the Petition Date, no advance payment remains unapplied.

As of the Petition Date, PwC was owed $799,361.44 for professional services provided and unpaid by the Debtors. PwC agrees to waive any unpaid prepetition fees or expenses upon approval and execution of an Order approving its retention in these Chapter 11 Cases in a form acceptable to PwC.

The PwC professionals providing services to the Debtors will consult with internal PwC bankruptcy retention and billing advisors to ensure compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and any other applicable procedures and orders of the Court, as well as to decrease the overall fees associated with the administrative aspects of PwC's engagement. The services provided by these bankruptcy retention and billing advisors shall include, but are not limited to: (a) assistance with preparation of the bankruptcy retention documents; (b) assistance with the disinterestedness disclosures; and (c) preparation of monthly fee statements and interim and final fee applications. Given the specialized nature of these services, specific billing rates exist for these PwC bankruptcy retention and billing advisors.[8]

It is not the practice of PwC's professionals to keep detailed time records in one tenth-of-an-hour increments (i.e., six minute increments) as customarily kept by attorneys who are compensated subject to approval of the Bankruptcy Court. Instead, the customary practice of PwC's professionals is to keep reasonably detailed records of services rendered during the course of an engagement in half-hour (0.5)

---

[8] The rate per hour for these PwC bankruptcy retention and billing advisors by level of experience will be as follows: Director: $550; Manager: $400; Senior Associate: $290; Associate: $225 and Paraprofessional: $150. These rates also are subject to periodic adjustment.

increments. Thus, in the Application, the Debtors request that this Court allow PwC's professionals to provide the following in its monthly, interim, and final fee applications: (a) a narrative summarizing each project category and the services rendered under each project category; (b) as an exhibit to each monthly, interim, and final fee application that PwC files in these Chapter 11 Cases, a summary, by project category, of services rendered to the Debtors, which identifies each professional rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered by each professional; and (c) reasonably detailed records of time in half hour (0.5) increments, describing the services rendered by each professional and the amount of time spent on each date.

Given the nature of the services to be provided by PwC, such billing format and associated time details will be sufficient for the Debtors and other parties-in-interest to make informed judgments regarding the nature and appropriateness of PwC's services and fees.

It is my understanding that the Debtors intend that the services of PwC will complement and not duplicate the services rendered by any other professional retained in these Chapter 11 Cases. PwC understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

As part of the overall compensation payable to PwC under terms of certain of the MSA Contracts and Engagement Letters, the Debtors have agreed to certain indemnification obligations as described in such MSA Contracts and Engagement Letters. The terms of the MSA and Engagement Letters and the indemnification provisions contained therein were fully negotiated in good faith and at arm's length.

In connection with its proposed retention by the Debtors in these Chapter 11 Cases, PwC undertook to determine whether PwC has any conflicts or other relationships that, in contravention of Bankruptcy Code Section 327(a) might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors or their estates. Specifically, PwC obtained from the Debtors the names of individuals and entities that may be parties in interest in these Chapter 11 Cases (the "**Potential Parties in Interest**").

PwC's conflict analysis, completed under my supervision, consisted of queries of an internal computer database containing names of individuals and entities that are present or recent former clients of PwC in order to identify relationships with the Potential Parties in Interest. A summary of the relationships and representations that PwC was able to identify using its reasonable efforts is set forth on **Schedule 1** to this Declaration. PwC's representation of each entity listed on **Schedule 1** (or its apparent affiliate, as the case may be), however, was or is only on matters that are unrelated to the Debtors and these Chapter 11 Cases. Due to the significant number of entities searched, PwC's review of its relationships with these Potential Parties in Interest is continuing and PwC will file a supplemental declaration disclosing the results of PwC's search and analysis in an expedited matter.

Except as set forth on **Schedule 1** hereto: (a) PwC has no connection with the Debtors, the Debtors' creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party with an actual or potential interest in these Chapter 11 Cases or their respective attorneys or accountants; (b) PwC is not a creditor, equity security holder, or insider of the Debtors; (c) neither PwC (nor any of its principals) is or was, within two years of the Petition Date, a director, officer or employee of the Debtors; and (d) PwC does not have an interest materially adverse to the Debtors, their estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason. Accordingly, to the best of my knowledge, PwC is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

PwC is not providing, and will not provide, services to any of the clients that are listed on **Schedule 1** with respect to matters as to which they would be adverse to the Debtors or their estates or related to issues connected to the Debtors' Chapter 11 Cases. Further, PwC is not providing, and will not provide, services to the Debtors that would be adverse to any of the entities listed on **Schedule 1**.

PwC has provided, and likely will continue to provide, services unrelated to these Chapter 11 Cases for the various Potential Parties in Interest listed on **Schedule 1**. PwC's provision of services to these Potential Parties in Interest primarily has involved the provision of auditing, tax, and/or other consulting services. To the best of my knowledge, information, and belief: (a) PwC's services to these

parties were and are wholly unrelated to the Debtors, their estates, and these Chapter 11 Cases; (b) PwC has not provided services to these parties that could impact their rights in these Chapter 11 Cases; and (c) PwC's involvement in these Chapter 11 Cases does not compromise its ability to continue providing such auditing, tax, and/or consulting services to these Potential Parties in Interest.

Moreover, as part of its diverse practice, PwC appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and Potential Parties in Interest in these Chapter 11 Cases. Additionally, PwC has performed in the past, and may perform in the future, audit, tax, and consulting services for various attorneys and law firms in the legal community and has been represented by several attorneys and law firms in the legal community, some of whom may be involved in these Chapter 11 Cases. Moreover, PwC has in the past, may currently and will likely in the future be working with or against other professionals involved in these Chapter 11 Cases on matters unrelated to the Debtors or these Chapter 11 Cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge, none of these business relationships create interests materially adverse to the Debtors with respect to the matters for which PwC is to be employed, and none are in connection with these Chapter 11 Cases.

Although PwC has researched the Potential Parties in Interest list, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that are not included as Potential Parties in Interest and with whom we may maintain business relationships. Other than as disclosed herein, PwC has no relationship with the Debtors of which I am aware after due inquiry.

To the best of my knowledge, no professional of PwC who will work on these engagements are related or connected to any United States Bankruptcy Judge for the Northern District of California, any District Judge for the Northern District of California, or any employee of the U.S. Trustee.

As specifically set forth in **Schedule 1**, PwC represents certain of the Potential Parties in Interest in ongoing matters unrelated to the Debtors and these Chapter 11 Cases. None of these representations described herein are materially adverse to the Debtors' estates. PwC should not be disqualified from

acting as the Debtors' management, tax, accounting and advisory consultant merely because it represents the Debtors' creditors, equity holders or other parties in interests in matters unrelated to these Chapter 11 Cases. Below are some specific disclosures above those represented in **Schedule 1**:

    (i) <u>Disclosures of other PricewaterhouseCoopers member firms</u>: Some of the Services described above may be subcontracted to its wholly-owned subsidiary, PricewaterhouseCoopers Advisory Services LLC.

    (ii) <u>Connection with Debtors' employees</u>: The sector leader of PwC's Energy Utilities and Mining Advisory Group, Jenny Koehler, is married to the Debtors' Chief Financial Officer. PwC and the Debtors have instituted a number of policies to address any conflicts that might arise as a result of this relationship and PwC (and, upon information and belief, the Debtors) intend to adhere to such practices, to the extent applicable, during the Chapter 11 Cases. Ms. Koehler will be prohibited from participation in any marketing efforts and client pitches that PwC undertakes with respect to future engagements with the Debtors. Further, upon information and belief, the Debtors have a process in place (which will continue) pursuant to which the Debtors' CFO recuses himself from any hiring decisions that the Debtors undertake with respect to PwC. Additionally, PwC has put into place certain protections between (i) the specific team of PwC personnel representing the Debtors, and (ii) Ms. Koehler, which protections will be designed to prevent any communications amongst or disclosure of confidential documents among the team working on these Chapter 11 Cases on the one hand and Ms. Koehler on the other.

    (iii) <u>Connection with Debtors' contractors</u>: Additionally, Cynthia Lorie, a PwC director who is a part of the team that is involved in providing the Debtors with the Rate Case Support Services is married to Michael Gallo. Mr. Gallo is the sole practitioner of the Law Offices of Michael L. Gallo, which is one of the Debtors' ordinary course professionals that provides legal services associated with the Electric Operations to the Debtors. Ms. Lorie and her team provide project management support gathering information and assisting with testimony at the direction of PG&E Legal. PwC does not believe that this relationship in any way implicates the disinterestedness or other requirements of Section 327(a) of the Bankruptcy Code but nevertheless discloses the relationship out of an abundance of caution.

To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of PwC's retention are discovered or arise, PwC will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

It is PwC's intention to seek compensation for its services as described in the Application and the MSA and Engagement Letters in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines and any and all rules and Orders of this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: May 1, 2019

By: _D. Bowman_
Daniel Bowman
Principal
PricewaterhouseCoopers LLP