

*Exhibit E – Project Scorecard*

PG&E may request the Consultant Project Manager to complete an evaluation form for each CWA active during the reporting quarter. PG&E will initiate the evaluation process, and Consultant will respond in MS Excel.

Evaluations will consider the following criteria:
- Cost / Program Management: Deliverables, milestones or tasks were completed in the time allotted, are progressing as planned, or are progressing as expected under given conditions.
- Cost / Scope: Deliverables, or progress towards deliverables, align with the Scope of Work defined in the CWA.
- Delivery / Quality: Consultant work products demonstrate value added by Consultant in the form of insights, processes, recommendations, or action steps.
- Delivery / Sustainability: Consultant has worked with PG&E to build capabilities and transfer knowledge.
- Delivery / Fit: Consultant has obtained information and conveyed advice collaboratively and successfully within the context of PG&E's culture.
- Safety: Consultant adheres to safety standards and has embraced PG&E's safety goals.
- Diversity: Consultant is on track to meet stated diverse spend goals.
- Green: Consultant has made efforts to reduce environmental impact of work performed.

# TABLE OF CONTENTS

Page No.

| | | |
|---|---|---|
| 1.0 | DEFINITIONS | GC-1 |
| 2.0 | SERVICES | GC-1 |
| 3.0 | SUBCONTRACTS | GC-1 |
| 4.0 | CONFLICT OF INTEREST/BUSINESS ETHICS | GC-2 |
| 5.0 | AVAILABILITY OF INFORMATION | GC-2 |
| 6.0 | BILLING AND PAYMENT | GC-3 |
| 7.0 | PRIOR WORK | GC-6 |
| 8.0 | NO GUARANTEE OF WORK | GC-6 |
| 9.0 | ADDITIONAL WORK OR CHANGES IN WORK | GC-6 |
| 10.0 | AMENDMENTS | GC-7 |
| 11.0 | ASSIGNMENT | GC-7 |
| 12.0 | REPLACEMENT OF PERSONNEL | GC-7 |
| 13.0 | SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY | GC-7 |
| 14.0 | DRUG AND ALCOHOL ABUSE POLICY | GC-7 |
| 15.0 | LAWFUL DISPOSAL OF SAMPLED AND OTHER WASTE | GC-8 |
| 16.0 | OWNERSHIP OF DELIVERABLES | GC-8 |
| 17.0 | PROPRIETARY RIGHTS | GC-9 |
| 18.0 | USE AND REPRODUCTION RIGHTS | GC-9 |
| 19.0 | INFRINGEMENT PROTECTION | GC-9 |
| 20.0 | COPYRIGHT REGISTRATION | GC-9 |
| 21.0 | ROYALTIES AND LICENSE FEES | GC-9 |
| 22.0 | DELIVERY AND RETENTION OF RECORDS | GC-10 |
| 23.0 | PUBLIC RELEASE OF RESULTS | GC-10 |
| 24.0 | CONSULTANT'S USE OF PG&E PROPERTY | GC-10 |
| 25.0 | CONFIDENTIALITY | GC-11 |
| 26.0 | PUBLIC TESTIMONY | GC-11 |
| 27.0 | WARRANTY | GC-11 |
| 28.0 | INDEMNIFICATION | GC-12 |
| 29.0 | INCIDENTAL AND CONSEQUENTIAL DAMAGES | GC-12 |
| 30.0 | INSURANCE REQUIREMENTS | GC-13 |
| 31.0 | FORCE MAJEURE | GC-14 |
| 32.0 | HAZARDOUS MATERIALS | GC-14 |
| 33.0 | TAX WITHHOLDING | GC-14 |
| 34.0 | INJURY AND ILLNESS PREVENTION PROGRAM | GC-15 |
| 35.0 | COMPLIANCE WITH LAWS | GC-15 |
| 36.0 | CHOICE OF LAWS | GC-15 |
| 37.0 | DISPUTE RESOLUTION | GC-15 |
| 38.0 | NON-WAIVER | GC-16 |
| 39.0 | ENFORCEABILITY | GC-16 |

# TABLE OF CONTENTS (cont'd)

|  | | Page No. |
|---|---|---|
| 40.0 | CANCELLATION AND TERMINATION OF CONTRACT | GC-16 |
| 41.0 | INTEGRATION | GC-17 |
| 42.0 | SURVIVAL | GC-17 |
| 43.0 | CPA NOTICE | GC-17 |

| EXHIBIT 1 | PG&E Supplier Diversity Purchasing Policy |
|---|---|
| EXHIBIT 1A | List of Subcontractors/Subsuppliers and Disbursement Record |
| EXHIBIT 2 | Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns |
| EXHIBIT 3 | Injury and Illness Prevention Program Compliance Certificate |

1.0 DEFINITIONS

    1.1 "Change Order": A revision or modification to the Contract signed by both parties.

    1.2 "Consultant" or "Contractor": Party or parties entering into this Contract with PG&E for the Work.

    1.3 "Contract": This agreement between PG&E and Consultant, including the Specification and appendices, together with any other material specifically incorporated in the Contract Work Authorization.

    1.4 "Party" or "Parties": PG&E or Consultant or both.

    1.5 "PG&E": Pacific Gas and Electric Company.

    1.6 "Specification": Specific Conditions with work description and performance obligations.

    1.7 "Subcontract": An agreement between Consultant and Subcontractor or between Subcontractors at any level for a portion of the Work under this Contract.

    1.8 "Subcontractor": Party or parties entering into a Subcontract with Consultant or another Subcontractor to perform a portion of the Work covered by the Contract.

    1.9 "Work" or "Services": Consulting services including labor, supervision, materials, equipment, actions and other requirements to be performed and furnished by Consultant under this Contract.

2.0 SERVICES:

    2.1 INDEPENDENT CONTRACTOR: In assuming and performing the obligations of this Contract, Consultant is an independent contractor and shall not be eligible for any benefits which PG&E may provide its employees, except as expressly provided for in this Contract. All persons, if any, hired by Consultant shall be employees or Subcontractors of Consultant and shall not be construed as employees or agents of PG&E in any respect.

    2.2 SCOPE OF WORK: Consultant will perform such Work as agreed in one or more work orders issued under this Contract and signed by a representative of each of PG&E and Consultant ("Contract Work Authorization" or "CWA"). Consultant designates Russell Pearson as its representative to sign on behalf of Consultant. Unless otherwise agreed-to, this Contract does not cover the following services: independent audit or attestation services, tax-related services, services involving prospective financial information, services involving the selection or assessment of any of PG&E's third party vendors, Transaction Services, or Accounting Advisory Services. "Transaction Services" means financial, commercial, operational, and/or strategic due diligence, strategy consulting services, divestiture advisory services and valuation services. "Accounting Advisory Services" means advice and assistance in connection with PG&E's evaluation of the accounting, reporting and regulatory issues related to its financial accounting and reporting and assistance with the preparation of schedules, account analyses, reconciliations and data accumulation relating to its accounting and financial reporting to third parties, including tax related financial accounting and reporting services. PG&E may procure Work under this Agreement for itself and for those of its consolidated subsidiaries or affiliates that PG&E binds to this Agreement by its signature or which separately agree to the provisions of this Agreement ("Affiliates").

3.0 SUBCONTRACTS: Except as permitted in this Section 3.0 or in the relevant CWA, Consultant shall not enter into Subcontracts without the prior written approval of PG&E. PG&E's approval of

any Subcontract shall not relieve Consultant of its obligations to PG&E under this Contract. The provisions and obligations of this Contract shall apply to performance of any Subcontract and Consultant shall be responsible to PG&E for any damages to PG&E arising out of performance of Subcontracts not in accordance with this Contract. Nothing in this Contract shall create any contractual relations between a Subcontractor and PG&E. Consultant is the U.S. firm of the global network of separate and independent PricewaterhouseCoopers firms (exclusive of Consultant, the "Other Consultant Firms"). Consultant may draw on the resources of and/or subcontract to its subsidiaries, the Other Consultant Firms and/or third party contractors and PG&E-approved Subcontractors, within or outside of the United States (each, a "Consultant Subcontractor") in connection with the provision of Work and/or for internal, administrative and/or regulatory compliance purposes. Subject to the approvals of PG&E required by this Section 3.0, PG&E agrees that Consultant may provide information Consultant receives in connection with this Agreement to the Consultant Subcontractors for such purposes. Consultant will be solely responsible for the provision of the Work (including the Work performed by the Consultant Subcontractors) and for the protection of the information provided to the Consultant Subcontractors. The Consultant Subcontractors and theirs and Consultant's respective partners, principals or employees (collectively the "Beneficiaries") shall have no liability or obligations arising out of this Agreement. PG&E agrees to: (a) bring any claim or other legal proceeding of any nature arising from the Work against Consultant and not against the Beneficiaries; and (b) ensure or procure that the Affiliates do not assert any such claim or other legal proceeding against Consultant or the Beneficiaries. PG&E Affiliates should notify PG&E of any disputes or potential claims arising from the Work. Consultant disclaims any contractual or other responsibility or duty of care to any other subsidiaries or affiliates. While Consultant is entering into this Agreement on its own behalf, this section also is intended for the benefit of the Beneficiaries.

4.0 CONFLICT OF INTEREST/BUSINESS ETHICS

   4.1 REASONABLE CARE: Consultant shall exercise reasonable care and diligence to prevent any actions or conditions which could result in a conflict with PG&E's interest.

   4.2 OTHER EMPLOYMENT: During the term of this Contract, Consultant will not accept any work or engage in any work which creates a conflict of interest with PG&E or in any way compromises the Work to be performed under this Contract.

   4.3 GIFTS: Consultant or its employees shall not offer or cause to be offered gifts, entertainment, payments, loans and/or other services, benefits or considerations of more than a nominal value to PG&E's employees, their families, vendors, Subcontractors and other third parties acting on PG&E's behalf.

   4.4 ACCURATE DOCUMENTATION: All financial statements, reports, billings, and other documents rendered shall properly reflect the facts about all activities and transactions handled for the account of PG&E.

   4.5 NOTIFICATION: The Consultant shall immediately notify PG&E of any and all violations of this clause upon becoming aware of such violation.

5.0 AVAILABILITY OF INFORMATION

   5.1 ACCESS: PG&E's duly authorized representatives shall have, during the term of the Contract and for three years thereafter, access at all reasonable times to all of the Consultant's and its Subcontractors' accounts and records of all description, including but not limited to computer files, pertaining to Work under the Contract, in each case necessary to verify reimbursable costs, amounts invoiced by the Consultant, and estimates of cost for lump sum proposals including those applicable to proposed changes and for any other reasonable purposes of verifying compliance with this Contract. PG&E and Consultant will

meet in advance regarding the scope of the review and establish procedures to prevent access to confidential information of other Consultant clients.

5.2 APPLICABILITY: This Section 5 shall apply to all PG&E contracts but shall not apply to pricing for contracts performed solely on a lump-sum basis. However, where lump-sum and time and materials work (unit price, reimbursable cost, fixed rates, etc.) are performed together, either as a part of this Contract or as separate contracts, then the above audit right shall also extend to PG&E access to all Consultant's records pertaining to all PG&E contracts including the lump-sum for assurance that the portions of the Work performed on a time and materials basis are not being charged with time, material or other units or cost which are intended to be covered by lump-sum or fixed rates, etc., provided herein, supplement hereto or in such other agreements.

5.3 ACCOUNTING: The Consultant's and its Subcontractors' accounts shall be kept in accordance with generally accepted accounting principles in the particular industry and shall be kept in such a manner and in sufficient detail to clearly disclose the nature and amounts of the different items of service and cost pertaining to the Contract and the basis for charges or allocations to the Contract.

5.4 TIME PERIOD: The Consultant and its Subcontractors shall preserve all such accounts and records for a period of three years after the term of the Contract. PG&E's duly authorized representatives shall have the right to reproduce any such accounts and records.

5.5 ADJUSTMENTS: Consultant shall promptly adjust any inaccuracy in the billings. Adjustments shall accrue interest, compounded monthly, at a rate equal to the prime rate charged by the Bank of America, NT&SA, San Francisco, California, at the beginning of each month, from the date of payment of the invoice being adjusted to the date that the adjustment is paid.

5.6 SUBCONTRACTORS: The Consultant shall include the necessary provisions in its Subcontracts to ensure that its Subcontractors comply with this Section 5.

6.0 BILLING AND PAYMENT

6.1 BILLING AND PAYMENT FOR LUMP SUM WORK: The terms of this Paragraph 6.1 shall apply to all Work performed on a lump sum basis.

6.1.1 INVOICE SUBMITTAL INSTRUCTIONS: Consultant shall submit a monthly invoice to PG&E for compensation earned in the preceding calendar month. Consultant shall submit invoices to PG&E in accordance with the requirements of this Paragraph 6.1 and with the instructions printed in the Contract or Contract Change Order. The Consultant shall include the Contract number, and if applicable the Contract Work Authorization number, on the invoice. All invoices must be supported with the detailed effort and hours relating to the invoiced work for PG&E review.

6.1.2 INVOICE DEFICIENCIES: Should PG&E determine that Consultant's invoice does not meet the invoicing requirements of this Contract, PG&E will notify Consultant of the deficiencies or return the invoice to Consultant with noted deficiencies. Consultant shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Consultant, Consultant shall resubmit a corrected invoice.

- 6.1.3 PG&E PAYMENT: Payment by PG&E to Consultant for Work performed on a lump sum basis will be monthly, in the full amount due for the Work performed less any negotiated percentage withholding, computed in accordance with the terms of the Contract, and satisfactorily completed during each month including reimbursable expenses, if any. PG&E reserves the right to discount payment(s) to Consultant by Two (2) percent of the invoice total amount for professional fees (but not reimbursable expenses); provided PG&E's payment(s) made to Consultant within Fifteen (15) business days of PG&E's receipt of a valid invoice (e.g., received electronically via Taulia). If PG&E does not elect early payment discount within such 15 days, all payments will be made without discount to Consultant within Forty-Five (45) days after receipt of a correct invoice. This discount will not apply to contingency fee/fee risk sharing engagements.

- 6.1.4 BILLING RATES AND CONFLICTS: Consultant's lump sum price(s) stated in the Contract fee schedule shall not change during the term of this Contract without prior written approval by PG&E. The lump sum price(s) shall be inclusive of all Consultant's overhead costs, administrative and general fees, and profit and consistent with PG&E approved Consultant personnel hourly rates. To the extent such lump sum price(s), or any invoice or other billing instrument as provided for in this Section 6 contains terms and conditions which are in addition to or in conflict with the terms and conditions in this Contract, whether Specific or General, those terms and conditions in the fee schedule, invoice, or other billing instrument shall be null and void.

6.2 BILLING AND PAYMENT FOR TIME AND MATERIALS AND UNIT PRICE WORK: The terms of this Paragraph 6.2 shall apply to all Work performed on a time and materials or unit price basis.

- 6.2.1 INVOICE SUBMITTAL INSTRUCTIONS: Consultant shall submit invoices to PG&E in accordance with the requirements of this Paragraph 6.2 and with the instructions printed in the Contract or Contract Change Order. The Consultant shall include the Contract number, and if applicable the Contract Work Authorization number, on the invoice.

- 6.2.2 MONTHLY INVOICE: Consultant shall submit a monthly invoice to PG&E for compensation earned and reimbursable expenses incurred in the preceding calendar month. Each invoice shall be broken down by Contract tasks; for each task the invoice shall include the following information:

    - 6.2.2.1 Status

        Task descriptions.
        Allocation between balancing account and non-balancing account activities if needed.

    - 6.2.2.2 Labor

        Employee name and title.
        Number of hours spent.
        Billing rate.

    - 6.2.2.3 Reimbursable Expenses

        Unit cost and quantity of each item of expense.

6.2.3 BILLING RATES AND CONFLICTS: Consultant's billing rates or fees stated in the CWA fee schedule shall not change during the term of the CWA without prior written approval by PG&E. These billing rates and fees shall be inclusive of all Consultant's overhead costs, administrative and general fees, and profit. To the extent such fee schedule, or any invoice or other billing instrument as provided for in this Section 6 contains terms and conditions which are in addition to or in conflict with the terms and conditions in this Contract, whether Specific or General, those terms and conditions in the fee schedule, invoice, or other billing instrument shall be null and void.

    6.2.3.1 Overtime hours shall be billed at straight-time rates, unless otherwise approved by PG&E prior to the use of overtime, and limited to those hours for which Consultant's employee is actually compensated. If applicable, Consultant's overhead cost shall not be applied to the premium portion of the overtime cost.

    6.2.3.2 Individuals other than employees of Consultant (nonemployees) retained by Consultant, such as Subcontractors, outside consultants, or agency personnel, shall be billed as professional fees as specified in the CWA.

6.2.4 EXPENSES: All reimbursable expenses shall be reasonable, ordinary, and necessary and shall be billed at cost. All reimbursable expenses other than those listed in this paragraph 6.2.4 shall be authorized in writing by PG&E's authorized representative prior to expenditure by the Consultant; any expenses not so approved by PG&E shall not be reimbursed.

    6.2.4.1 Overhead costs will not be reimbursed as expenses. Miscellaneous costs, such as routine telephone communications, routine copying, electronic mail, facsimile transmissions, computer time and use of in-house technical software are considered to be part of Consultant's overhead costs.

6.2.5 TRAVEL TIME AND COSTS: All air travel costs within the United States will be reimbursed only on a coach fare basis. Travel time to and from the Work site shall be at Consultant's expense.

6.2.6 MILEAGE AND USE OF PERSONAL CAR: In the event Consultant uses its personal car in the performance of Work under the Contract and such use is included as a reimbursable expense, normal commuting such as trips from home to first business stop and from the last business stop to home represents personal use of car and shall not be reimbursed. All other reimbursable mileage shall be at the current IRS rate.

6.2.7 SUPPORTING DOCUMENTATION: For each expense item over $100, supporting data and documentation shall be retained by Consultant for the term of the audit period defined in Section 5.1 and provided upon PG&E's request.
    6.2.7.1 Each invoice shall be assembled such that attached supporting documentation shall be placed in the order listed in the invoice, and each item of expense chargeable to PG&E shall be highlighted or clearly delineated.

6.2.8 INVOICE DEFICIENCIES: Should PG&E determine that Consultant's invoice does not meet the invoicing requirements of this Contract, PG&E will notify

Consultant of the deficiencies or return the invoice to Consultant with noted deficiencies. Consultant shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Consultant, Consultant shall resubmit a corrected invoice.

- 6.2.9 UNIT PRICE BASIS: When invoices include Work performed on a unit price basis, Consultant shall attach to the invoice a list stating the unit price item numbers, unit prices, quantities, dollar amounts and other information as required to identify the Work.

6.2.10 PG&E PAYMENT: Payment by PG&E to Consultant for Work performed on a lump sum basis will be monthly, in the full amount due for the Work performed less any negotiated percentage withholding, computed in accordance with the terms of the Contract, and satisfactorily completed during each month including reimbursable expenses, if any. PG&E reserves the right to discount payment(s) to Consultant by Two (2) percent of the invoice total amount for professional fees (but not reimbursable expenses); provided PG&E's payment(s) made to Consultant within Fifteen (15) business days after PG&E's receipt of a valid invoice (e.g., received electronically via Taulia). If PG&E does not elect early payment discount within such 15 days, all payments will be made without discount to Consultant within Forty-Five (45) days after receipt of a correct invoice. This discount will not apply to contingency fee/fee risk sharing engagements.

7.0 PRIOR WORK: Services performed by Consultant pursuant to PG&E's authorization, but before the execution of this Contract, shall be considered as having been performed subject to the provisions of this Contract.

8.0 NO GUARANTEE OF WORK: THIS IS NOT AN EXCLUSIVE CONTRACT. THIS CONTRACT DOES NOT GUARANTEE THE CONSULTANT ANY WORK NOR IS THERE ANY GUARANTEE AS TO ANY VOLUME OR DURATION OF WORK.

9.0 ADDITIONAL WORK OR CHANGES IN WORK

- 9.1 PROCEDURE FOR ADDITIONAL WORK: BEFORE PROCEEDING WITH ANY WORK INVOLVING POSSIBLE CLAIMS FOR EXTRA COMPENSATION NOT SPECIFIED IN THE CONTRACT, CONSULTANT SHALL SUBMIT IN WRITING TO PG&E A DETAILED ESTIMATE OF THE COST FOR SUCH WORK. Consultant shall provide PG&E with a detailed breakdown and estimated cost of such anticipated contract work, including extensions and Change Orders, as follows:

    - 9.1.1 Description of work to be performed including detailed breakdown by identifiable tasks.
    - 9.1.2 Estimated cost of each task.
    - 9.1.3 Expected date of completion of each task.

- 9.2 APPROVAL NEEDED FOR ADDITIONAL WORK: Consultant shall not proceed with any such additional work prior to receiving written authorization or a Change Order issued to Consultant by PG&E. CONSULTANT AGREES THAT ALL COSTS FOR ANY SUCH MODIFICATION OR CHANGE THAT IS PERFORMED BY CONSULTANT WITHOUT PG&E'S PRIOR WRITTEN APPROVAL SHALL BE AT CONSULTANT'S SOLE RISK AND EXPENSE.

- 9.3 PG&E CHANGES TO WORK: PG&E reserves the right to make such changes in Work, specifications, or level of effort, as may be necessary or desirable and any difference in

Contract price resulting from such changes shall be approved in writing by both parties before the Work is begun.

10.0 **AMENDMENTS: NO MODIFICATION OR CHANGE TO THIS CONTRACT SHALL BE BINDING OR EFFECTIVE UNLESS EXPRESSLY SET FORTH IN WRITING BY CHANGE ORDER AND SIGNED BY A REPRESENTATIVE OF BOTH PARTIES AUTHORIZED TO EXECUTE THE CONTRACT.**

11.0 ASSIGNMENT: Neither party may assign any of its rights, voluntarily or involuntarily, whether by operation of law or any other manner, or delegate any performance under this Contract, without the prior written consent of the other party. Any purported assignment or delegation of performance in violation of this provision is void. Subject to the foregoing, this Contract is binding upon and shall inure to the benefit of the successors and assigns of the parties.

12.0 REPLACEMENT OF PERSONNEL

  12.1 BY CONSULTANT: Consultant acknowledges that in the event that the individuals who are initially assigned by Consultant to perform services under this Contract are removed, replaced or reassigned by Consultant, such removal, replacement, or reassignment may result in harm and costs to PG&E. Consultant agrees not to remove, replace or reassign such individuals without the approval of PG&E. Such approval shall not be unreasonably withheld or delayed. Consultant will make reasonable efforts to maintain continuity in its staffing and will provide PG&E with ample notification if any such changes are made. Consultant agrees not to charge PG&E for the time spent in familiarizing replacement personnel with the Work.

  12.2 BY PG&E: If PG&E finds Consultant's employee to be unsatisfactory, Consultant shall replace said employee immediately. This provision does not in any way require, endorse or approve (expressed or implied) the termination of employment by the Consultant of any employee replaced under the terms of this paragraph.

13.0 SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY: Consultant shall plan and conduct its Work to safeguard persons and property from injury. Consultant shall direct performance of Work in compliance with reasonable safety and work practices and applicable federal, state and local laws, rules and regulations, including but not limited to, "Occupational Safety and Health Standards" promulgated by the U.S. Secretary of Labor and the California Division of Occupational Safety and Health. PG&E may designate safety precautions in addition to those in use or proposed by Consultant. PG&E reserves the right to inspect the Work and to halt Work to ensure compliance with reasonable and safe work practices and with applicable federal, state, and local laws, rules and regulations. Neither the requirement that Consultant follow said practices and applicable laws, rules and regulations, and any special instructions given by PG&E nor the adherence thereto by Consultant shall relieve Consultant of the sole responsibility to maintain safe and efficient working conditions.

14.0 DRUG AND ALCOHOL ABUSE POLICY

  14.1 PREFACE: Pacific Gas and Electric Company is committed to maintain and promote job safety and health for all workers at its facilities. In addition, PG&E is determined to protect its employees, customers, and the general public while they are on PG&E property from any harm caused by illegal drug and alcohol use by non-PG&E personnel. To accomplish these objectives, PG&E has established the following drug and alcohol abuse policy for access to PG&E facilities by its Consultant and Subcontractor personnel.