WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

** All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Bankruptcy Case No. 19-30088 (DM)
Chapter 11
(Lead Case)
(Jointly Administered)

**CORRECTED MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 1121(d) TO EXTEND EXCLUSIVE PERIODS**[1]

**(“EXCLUSIVITY MOTION”)**

Date: May 22, 2019
Time: 9:30 a.m. (Pacific Time)
Place: United States Bankruptcy Court
Courtroom 17, 16th Floor
San Francisco, CA 94102
Objection Deadline:
May 15, 2019, 4:00 p.m. (Pacific Time)

[1] An otherwise identical version of this Motion was filed inadvertently without signature [Dkt. 1795].

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an extension of the Exclusive Filing Period (as defined below) to and including November 29, 2019, and the Exclusive Solicitation Period (as defined below) to and including January 28, 2020, without prejudice to the Debtors' right to seek additional extensions of such periods.

In support of this Motion, the Debtors submit the *Declaration of John Boken In Support of Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) to Extend Exclusive Periods* (the "**Boken Declaration**") filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as <u>**Exhibit A**</u> (the "**Order**").

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## TABLE OF CONTENTS

I. JURISDICTION ....................................................................................................1

II. BACKGROUND ....................................................................................................1

III. RELIEF REQUESTED....................................................................................................1

IV. BASIS FOR RELIEF REQUESTED ....................................................................................................3

A. (i) The Debtors' Chapter 11 Cases Are Large and Complex, (ii) There Has Not Been Sufficient Time to Permit the Debtors to Initiate and Resolve Major Issues Critical to the Chapter 11 Process, (iii) There Has Not Been Sufficient Time to Permit the Debtors to Negotiate and Prosecute a Chapter 11 Plan, and (iv) Considerable Good Faith Progress Has Been Made to Achieve the Objectives of Chapter 11.....................6

B. The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands ...............................................9

C. Important Contingencies Must Be Resolved by the Debtors......................................10

D. The Debtors Are Making Required Postpetition Administrative Expense Payments As They Come Due and Have the Ability to Continue to Do So ................................11

V. CONCLUSION....................................................................................................11

VI. NOTICE....................................................................................................11

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*In re Adelphia Commc'ns Corp.*,
352 B.R. 578 (Bankr. S.D.N.Y. 2006)....................9, 10, 15, 16

*In re Borders Grp., Inc.*,
460 B.R. 818 (Bankr. S.D.N.Y. 2011)....................9, 15

*In re Catholic Bishop of N. Alaska*,
No. F08-00110-DMD, 2009 WL 8412171 (Bankr. D. Alaska Sept. 11, 2009)....................10

*In re Dow Corning Corp.*,
208 B.R. 661 (Bankr. E.D. Mich. 1997)....................9

*In re Express One Int'l, Inc.*,
194 B.R. 98 (Bankr. E.D. Tex. 1996)....................9, 10

*In re Henry Mayo Newhall Mem'l Hosp.*,
282 B.R. 444 (B.A.P. 9th Cir. 2002)....................9, 15

*In re McLean Indus., Inc.*,
87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987)....................10

*In re New Meatco Provisions, LLC*,
No. 2:13-BK-22155-PC, 2014 WL 917335 (Bankr. C.D. Cal. Mar. 10, 2014)....................10

*In re Texaco Inc.*,
76 B.R. 322 (Bankr. S.D.N.Y. 1987)....................11, 16

*In re United Press Int'l, Inc.*,
60 B.R. 265 (Bankr. D.C. 1986)....................10


**Statutes**


11 U.S.C. § 341....................13

11 U.S.C. § 362....................13

11 U.S.C. § 1107....................6

11 U.S.C. § 1108....................6

11 U.S.C. § 1121....................6, 7, 8, 9, 15

28 U.S.C. § 157....................6

28 U.S.C. § 1334....................6



**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

28 U.S.C. § 1408 .....6

28 U.S.C. § 1409 .....6

**Other Authorities**

B.L.R. 5011-1(a) .....6

Fed. R. Bankr. P. 1015 .....6

Fed. R. Bankr. P. 2002 .....17

Fed. R. Bankr. P. 9006 .....7

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.) .....6

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

## III. RELIEF REQUESTED

Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**"). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has an exclusive period of 180 days after the commencement of the chapter 11 case to obtain acceptances of its plan

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(the "**Exclusive Solicitation Period**"). The Debtors' initial Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on May 29, 2019 and July 29, 2019[1], respectively (together, the "**Exclusive Periods**").

The Debtors request, pursuant to section 1121(d) of the Bankruptcy Code, an extension of the Exclusive Filing Period to and including November 29, 2019, and the Exclusive Solicitation Period to and including January 28, 2020, without prejudice to the Debtors' right to seek additional extensions of such periods.

An extension of the Exclusive Periods in these large Chapter 11 Cases as requested is appropriate, is in the best interest of the Debtors' economic stakeholders, and is consistent with the intent and purpose of chapter 11 of the Bankruptcy Code. Ample cause exists to grant the Debtors the extensions of the Exclusive Periods as, *inter alia*, (i) the Debtors' cases are large and complex – the Utility is one of the largest electricity and natural gas utilities in the United States, with approximately 16 million customers, some 24,000 employees, approximately $51.7 billion in prepetition liabilities on a book value basis, and potentially thousands of claims arising out of or relating to the tragic and catastrophic wildfires that occurred in Northern California in 2017 and 2018 – *by many accounts, these Chapter 11 Cases represent one of the largest chapter 11 filings in U.S. history*; (ii) considerable good faith progress has been made in the administration of the Chapter 11 Cases – including, stabilizing the Debtors' businesses and operations and establishing constructive working relationships with the Committees and the Debtors' other key economic stakeholders; (iii) the Committees are still getting up to speed on the Debtors' operations and affairs and are still in the process of retaining their professionals to assist them in these Chapter 11 Cases; (iv) the Governor and his Task Force are still in the process of reviewing and analyzing various legislative alternatives that likely will be critical to the Debtors' successful emergence from Chapter 11; and (v) although the Debtors are hopeful that a consensual resolution of their wildfire liability can be achieved, in view of the early stage of these cases, that process has not been able to substantively progress, and if such a consensual resolution

---

[1] The 180th date following the Petition Date is July 28, 2019; however, as that date is a Sunday, pursuant to Rule 9006(a)(1)(C) of the Federal Rules of Bankruptcy Procedure, the initial Exclusive Solicitation Period is set to expire on the next business day, which is July 29, 2019.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

cannot be achieved, formal proceedings in this Court will be required to be initiated to quantify that liability before any meaningful plan negotiations can even take place.

Simply stated, in view of the incontrovertible scope and complexity of these Chapter 11 Cases, the issues that have to be addressed, the legislative and regulatory issues involved, and the number of interested parties, the time is far from even ripe to consider filing a chapter 11 plan. Under these circumstances, the requested extensions of the Exclusive Periods clearly are warranted.

The relief requested will allow the Debtors to continue to focus on preserving and enhancing going concern value and implementing a financial and operational restructuring that will result in a competitive and sustainable cost and capital structure and achieve the other objectives of these Chapter 11 Cases stated in the Wells Declaration – including, establishing a process to comprehensively address and resolve the Debtors' wildfire liabilities in a fair and expeditious manner. The requested extensions of the Exclusive Periods at this early stage of these Chapter 11 Cases simply recognize the reality of these cases and the time needed to propose a confirmable plan. The relief requested will afford the Debtors the full and fair opportunity contemplated by Congress for the Debtors to develop, negotiate, and propose a viable, fair, and comprehensive plan of reorganization and also solicit acceptances of that plan in a manner that will maximize value for all of their economic stakeholders.

## IV. BASIS FOR RELIEF REQUESTED

Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. *See* 11 U.S.C. § 1121(d) ("on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section"). However, the 120-day period "may not be extended beyond a date that is 18 months after the [commencement] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [commencement] date." *Id.* § 1121(d)(2).

The Exclusive Periods established by Congress were incorporated in the Bankruptcy Code to afford a debtor a full and fair opportunity to propose a chapter 11 plan and enable solicitation of acceptances of the plan without the deterioration and disruption of a debtor's business that might be caused by the filing of multiple competing plans. Indeed, the primary objective of a chapter 11 case

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

is the formulation, confirmation, and consummation of a consensual chapter 11 plan. To terminate the Exclusive Periods in these Chapter 11 Cases before meaningful and substantive plan negotiations could even have a chance to begin would be to defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, affording a debtor the full and fair opportunity to formulate and prosecute its proposed chapter 11 plan. The initial 120- and 180-day Exclusive Periods provided in the Bankruptcy Code simply provide an unrealistic time frame for chapter 11 cases of the size and complexity of these Chapter 11 Cases.

As stated, section 1121(d) of the Bankruptcy Code empowers a Bankruptcy Court to extend the Exclusive Periods "for cause." The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension. The legislative history of section 1121 indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

In exercising its broad discretion, the Bankruptcy Court may consider a variety of factors to assess the totality of circumstances in each case. *See In re Henry Mayo Newhall Mem'l Hosp.,* 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002) ("The question [of § 1121(d) cause] is inherently fact-specific and calls for a delicate exercise of judgment about which seasoned judges could differ."); *In re Borders Grp., Inc.*, 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996). Those factors include, without limitation:

(i) the size and complexity of the debtor's case;

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

(ii) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii) the existence of good faith progress towards reorganization;

(iv) the fact that the debtor is paying its bills as they become due;

(v) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi) whether the debtor has made progress in negotiations with its creditors;

(vii) the amount of time which has elapsed in the case;

(viii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(ix) whether an unresolved contingency exists.

*In re New Meatco Provisions, LLC*, No. 2:13-BK-22155-PC, 2014 WL 917335, at *3 (Bankr. C.D. Cal. Mar. 10, 2014); *In re Catholic Bishop of N. Alaska,* No. F08-00110-DMD, 2009 WL 8412171, at *1 (Bankr. D. Alaska Sept. 11, 2009); *Adelphia Commc'ns*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *accord In re Express One*, 194 B.R. at 100 (identifying all of the nine factors as relevant in determining whether cause exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that debtor showed cause to extend exclusive period based upon certain of the nine factors). The exercise of the Court's discretion is not simply a check-off process, but is based upon the totality of the circumstances. The above factors are not the exclusive bases for the exercise of the Court's discretion to extend the exclusive periods, nor must they all be satisfied.

Application of the identified standards to the indisputable facts of these Chapter 11 Cases demonstrates that more than ample cause exists to grant the Debtors' requested extensions of the Exclusive Periods. The extensions are necessary and appropriate in order for the Debtors to have the opportunity contemplated by the Bankruptcy Code to propose a chapter 11 plan and solicit acceptances of such plan.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**A. (i) The Debtors' Chapter 11 Cases Are Large and Complex, (ii) There Has Not Been Sufficient Time to Permit the Debtors to Initiate and Resolve Major Issues Critical to the Chapter 11 Process, (iii) There Has Not Been Sufficient Time to Permit the Debtors to Negotiate and Prosecute a Chapter 11 Plan, and (iv) Considerable Good Faith Progress Has Been Made to Achieve the Objectives of Chapter 11**

It is well-established that the size and complexity of a debtor's case alone may constitute cause to extend the Exclusive Periods. The legislative history provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963. Similarly, courts have recognized that "[t]he large size of a debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods." *In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

The size and complexity of, and legal issues involved in, these unprecedented Chapter 11 Cases themselves warrant an extension of the Exclusive Periods as requested. As set forth above, these Chapter 11 Cases are among the largest chapter 11 filings in U.S. history. The Debtors employ approximately 24,000 employees and operate one of the largest electricity and natural gas utilities in the United States – servicing approximately 16 million customers throughout a 70,000-square-mile service area in northern and central California. The Debtors own and operate approximately 136 generating facilities, nine (9) natural gas compressor stations, over 120,000 circuit miles of electric transmission and distribution lines, and nearly 50,000 miles of natural gas transmission and distribution pipelines. The size and complexity of the Debtors' businesses, assets, regulatory framework, employee relationships, vendor relationships, and financing arrangements are self-evident. Moreover, in addition to managing and operating a vast business enterprise, the Debtors must address and resolve in the chapter 11 plan process, the potentially thousands of wildfire claims that have already been asserted and will be asserted against them over the next several months.

During the initial stages of these Chapter 11 Cases, the Debtors' resources have been devoted to successfully assuring a smooth transition into chapter 11 and minimizing the business disruptions normally attendant thereto, maintaining relationships with the Debtors' business partners, and establishing a collaborative and working relationship with the U.S. Trustee, the Committees, the

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

CPUC, and the advisors to the Governor's Office as well as with the Debtors' other key economic stakeholders, including the ad hoc committee of senior unsecured noteholders, the ad hoc group of subrogation claimants, and the ad hoc committee of equity security holders. These efforts have been successful in preserving and enhancing value for all parties in interest. Indeed, as a result of these efforts, the Debtors have had no meaningful supply disruptions from their key energy suppliers and thereby have avoided any threat to their ability to provide ongoing services to their customers.

Additionally, because of the size and complexity of the Debtors' businesses and operations, the Debtors received extensions of time to file their schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules and Statements**"), until March 14 and April 15, 2019, respectively [ECF No. 228]. The Debtors have now filed their Schedules and Statements but, as a consequence of these extensions, the deferral of setting a bar date for filing claims, a necessary prerequisite to the plan process, was required. Thousands of claims will be filed in these cases and the Debtors are parties to more than 70,000 executory contracts and unexpired leases. Additionally, the Court is well familiar with the proceedings relating to FERC and the Debtors' executory contracts, another important element to the plan formulation and negotiation process.

During the first few months of these Chapter 11 Cases, the Debtors' primary focus has been on stabilizing their business, securing Court approval of $5.5 billion debtor-in-possession financing, and obtaining certain relief with respect to their cash management system, employee compensation and benefit programs, customer and public purpose programs, insurance and surety bond programs, utility providers, taxes, certain safety and reliability suppliers, and lienholders, among others, and to effectively implement the same. All of these efforts have enabled the Debtors to minimize the disruptions often attendant to the commencement of a chapter 11 case.

In addition to the foregoing, during the initial stages of these Chapter 11 Cases, the Debtors:

- filed their Schedules and Statements and first monthly operating report;
- filed and obtained approval of a motion to continue performance under a settlement with the Butte County District Attorney's Office to fund an enhanced wildfire prevention and communication program;

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- filed and obtained approval of a motion to authorize the Utility to enter into financial transactions with various counterparties to hedge the Utility's exposure to price volatility in the markets for natural gas and electricity;

- filed and obtained approval of a motion to authorize the Debtors to sell, transfer, lease, encumber, or otherwise deal with real property interests and to establish procedures relating thereto;

- filed a motion and obtained approval of a 2019 short-term incentive plan for 10,000 of the the Debtors' non-insider employees and participated in related depositions and discovery with the Committees and other parties in interest;

- filed a motion seeking to establish a bar date and approving related procedures for providing notice thereof to all known and unknown creditors, including the Debtors' 16 million customers and any known and unknown wildfire claimants;

- established a constructive relationship with the U.S. Trustee, the Committees, and the Debtors' other key economic stakeholders, including their respective professionals, and implemented an extensive and continuing due diligence program with such constituents. This encompassed the establishment and management of a secure data site through a third-party service provider to facilitate addressing information requests of these parties so that the administration of these Chapter 11 Cases can proceed on an appropriate schedule;

- prosecuted and defended several adversary proceedings, including actions (i) for a preliminary injunction enjoining the Federal Energy Regulatory Commission from interfering with the Utility's ability to assume or reject its power purchase agreements and (ii) to extend the automatic stay under section 362 of the Bankruptcy Code to certain non-debtor employees and other defendants;

- responded to numerous requests and motions to lift the automatic stay imposed under section 362 of the Bankruptcy Code;

- responded to motions from certain creditors and public advocacy groups for the appointment of additional official committees;

- appeared at two sessions of the section 341 meeting of creditors;

- appeared before other Courts and regulatory tribunals, including the U.S. District Court and the CPUC, regarding a number of issues and matters; and

- responded to countless inquiries related to the administration of these cases, specific contract counterparty demands, and other matters related to ongoing operations and the administration of these Chapter 11 Cases.

During this period, the Debtors also met with the advisors for each of the Committees, the CPUC, the ad hoc committee of equity security holders, the ad hoc group of subrogation claimants,

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

and the ad hoc committee of senior unsecured noteholders to make formal presentations as to the Debtors' extensive business and operations. Additionally, the Debtors have periodic meetings/conference calls with the advisors to the Committees, regularly respond to numerous diligence requests, and provide reporting as to a variety of matters on an ongoing basis. Further, the Debtors and their professionals have met with the advisors to the Governor to address their inquiries and to provide information relevant to the ongoing work of the Governor's Task Force.

Further, PG&E Corp. recently announced the appointment of a new Chief Executive Officer and President as well as the appointment of 11 new directors to its Board of Directors. These individuals necessarily have to be brought up on the learning curve and will be instrumental to the ongoing administration of these cases and the chapter 11 plan process.

The Debtors are administering these Chapter 11 Cases as expeditiously as possible, but, as is clear, there are a number of issues that must be addressed before the Chapter 11 plan negotiation and formulation process can take place in earnest. The fundamental issue being, quantifying the aggregate amount of the Debtors' liability for the Northern California wildfire claims, made even more challenging in view of the more recent Camp fire and the inability to date to obtain reliable information on the scope, extent, and types of damages that may be asserted. Indeed, as stated, in view of the size and complexity of these Chapter 11 Cases, the time is not even ripe for the filing of a plan.

Under the circumstances of these Chapter 11 Cases, the requested extensions of the Exclusive Periods clearly are warranted and, in fact, necessary and appropriate to afford the Debtors the opportunity to achieve the objectives of chapter 11 – a full and fair opportunity to negotiate with their various stakeholders and propose a confirmable plan as contemplated by the Bankruptcy Code.

**B. The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands**

This is the Debtors' first request for extensions of the Exclusive Periods. It is self-evident that the Debtors are not seeking these extensions to artificially delay the administration of these Chapter 11 Cases or to hold creditors hostage to an unsatisfactory plan proposal. Simply put, there has not been a real opportunity for the Debtors to propose and file a plan during the short period of time since the Petition Date.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Debtors' relationship with their key economic stakeholders, including the Committees and their professionals, is constructive. These Chapter 11 Cases are still in the very early stage. The request for extending the Exclusive Periods is not a negotiation tactic, but rather a reflection of the fact that these cases are not nearly mature for the formulation, filing, and prosecution of a feasible chapter 11 plan.

**C. Important Contingencies Must Be Resolved by the Debtors**

Courts have recognized the need to resolve important contingencies as justification for extending the Exclusive Periods. *See, e.g.*, *Borders*, 460 B.R. at 826; *Adelphia Commc'ns*, 352 B.R. at 587. The Debtors have made considerable progress in the prosecution of the Chapter 11 Cases; however, it is abundantly clear that additional time in which to propose and file a confirmable chapter 11 plan is necessary to allow the Debtors to address a number of key issues as previously stated, including, among others, either consensually, or with the assistance of the Court, establishing the Debtors' aggregate liability for wildfire claims to be treated under a plan, and addressing and implementing any operational restructuring to be effected in the Chapter 11 process.

Moreover, the extensions of the Exclusive Periods as requested will not prejudice any party in interest, but rather will afford the Debtors a realistic opportunity to propose a feasible and hopefully consensual chapter 11 plan. Failure to extend the Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, to provide the Debtors with a meaningful and reasonable opportunity to negotiate with their economic stakeholders and propose a confirmable chapter 11 plan. Courts have previously held that the facilitation of a fair and equitable resolution to a chapter 11 case is of paramount importance in determination whether to extend exclusivity. *See In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. at 453 ("We also agree with the *Dow Corning* court that a transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolution."). Those circumstances plainly exist here. Conversely, the termination of the Exclusive Periods and the threat of multiple plans would lead to unnecessary adversarial situations, a potential crisis in confidence among the Debtors' customers, employees, business partners, and other economic stakeholders, and the attendant deterioration in value of the Debtors' business enterprise, to the detriment and prejudice of all parties

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

in interest. Furthermore, such an action would jeopardize the primary objectives of these Chapter 11 Cases, namely, ensuring the safe and reliable provision of utility services to 16 million customers, and facilitating a fair and reasonable resolution of all wildfire claims on an expedited basis. The Court should not permit such a scenario to unfold.

### D. The Debtors Are Making Required Postpetition Administrative Expense Payments As They Come Due and Have the Ability to Continue to Do So

Courts considering an extension of exclusivity also may assess a debtor's liquidity and ability to pay costs and expenses of administration. *See Adelphia Commc'ns*, 352 B.R. at 587; *Texaco*, 76 B.R. at 322. Here, the Debtors have obtained a $5.5 billion DIP facility, are current on payment of their postpetition obligations, and have sufficient liquidity to pay their undisputed administrative expenses in the ordinary course. As such, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of creditors or other parties in interest, and this factor weighs in favor of granting the relief requested.

## V. CONCLUSION

The Debtors have responded to the exigent demands of these Chapter 11 Cases and have worked diligently with the Committees and their other key economic stakeholders to advance the reorganization process. The Debtors should be afforded a full, fair, and reasonable opportunity to negotiate, propose, file, and solicit acceptances of a chapter 11 plan. This first requested extension of the Exclusive Periods is warranted and necessary to afford the Debtors a meaningful opportunity to pursue the chapter 11 reorganization process and build a consensus among their economic stakeholders, all as contemplated by chapter 11 of the Bankruptcy Code.

## VI. NOTICE

Notice of this Motion will be provided to (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi)

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein for cause shown and as being in the best interests of their estates, creditors, shareholders, and all other parties interests, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: May 1, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

/s/ *Jane Kim*
Jane Kim

*Attorneys for Debtors and Debtors in Possession*