WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF JOHN BOKEN IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 1121(d) TO EXTEND EXCLUSIVE PERIODS**<br><br>Hearing Date: May 22, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102<br>Judge: Hon. Dennis Montali<br>Objection Deadline: May 15, 2019<br>      4:00 p.m. (Pacific Time) |

I, John Boken, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

I am a Managing Director in the Turnaround and Restructuring Services practice of AlixPartners, LLP, an affiliate of both AlixPartners, LLC and AP Services, LLC, which provides interim management services to PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors-in-possession (collectively, "**PG&E**" or the "**Debtors**")[1] in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"). I currently serve as the Deputy Chief Restructuring Officer for the Debtors as authorized by this Court by Order dated April 9, 2019 [Docket No. 1299].[2]

Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

I submit this Declaration in support of the *Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) to Extend Exclusive Periods* (the "**Exclusivity Motion**") filed contemporaneously herewith.

Since the commencement of these Chapter 11 Cases, the Debtors' resources have been devoted to successfully assuring a smooth transition into chapter 11 and minimizing the business disruptions normally attendant thereto, maintaining relationships with the Debtors' business partners, and establishing a collaborative and working relationship with the US. Trustee, the Committees, the CPUC, and the advisors to the Governor's Office, as well as with the Debtors' other key economic stakeholders, including the ad hoc committee of senior unsecured noteholders, the ad hoc group of subrogation claimants, and the ad hoc committee of equity security holders. I

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Exclusivity Motion.

[2] My education, background, and professional experience is described in the *Declaration of John Boken in Further Support of First Day Motions and Related Relief* [Docket No. 653] at 2–3.

believe that these efforts have been successful in preserving and enhancing value for all parties in interest. As a result of these efforts, the Debtors have had no meaningful supply disruptions from their key energy suppliers and thereby have avoided any threat to their ability to provide ongoing services to their customers.

### Size and Complexity of the Debtors' Cases

These Chapter 11 Cases are among the largest chapter 11 filings in U.S. history. The Debtors employ approximately 24,000 employees and operate one of the largest electricity and natural gas utilities in the United States – servicing approximately 16 million customers throughout a 70,000-square-mile service area in northern and central California. The Debtors own and operate approximately 136 generating facilities, nine (9) natural gas compressor stations, over 120,000 circuit miles of electric transmission and distribution lines, and nearly 50,000 miles of natural gas transmission and distribution pipelines. The Debtors have approximately $51.7 billion in prepetition liabilities on a book value basis, and potentially thousands of claims arising out of or relating to the wildfires that occurred in Northern California in 2017 and 2018. The Debtors also listed more than 70,000 contracts and leases in the Schedules and Statements.

### Debtors' Restructuring Efforts and
### Good Faith Progress Towards Reorganization

I believe the Debtors have made significant progress in the administration of these Chapter 11 Cases. During the first few months of these Chapter 11 Cases, the Debtors' primary focus has been on stabilizing their business, securing Court approval of $5.5 billion debtor-in-possession financing, and obtaining certain relief with respect to their cash management system, employee compensation and benefit programs, customer and public purpose programs, insurance and surety bond programs, utility providers, taxes, certain safety and reliability suppliers, and lienholders, among others, and to effectively implement the same. I believe these efforts have enabled the Debtors to minimize the disruptions often attendant to the commencement of a chapter 11 case.

In addition, during the initial stages of these Chapter 11 Cases, the Debtors:

- filed their Schedules and Statements and first monthly operating report;

- filed and obtained approval of a motion to continue performance under a settlement with the Butte County District Attorney's Office to fund an enhanced wildfire prevention and communication program;

- filed and obtained approval of a motion to authorize the Utility to enter into financial transactions with various counterparties to hedge the Utility's exposure to price volatility in the markets for natural gas and electricity;

- filed and obtained approval of a motion to authorize the Debtors to sell, transfer, lease, encumber, or otherwise deal with real property interests and to establish procedures relating thereto;

- filed a motion and obtained approval of a 2019 short-term incentive plan for 10,000 of the Debtors' non-insider employees and participated in related depositions and discovery with the Committees and other parties in interest;

- filed a motion seeking to establish a bar date and approving related procedures for providing notice thereof to all known and unknown creditors, including the Debtors' 16 million customers and any known and unknown wildfire claimants;

- established a constructive relationship with the U.S. Trustee, the Committees, and the Debtors' other key economic stakeholders, including their respective professionals, and implemented an extensive and continuing due diligence program with such constituents. This encompassed the establishment and management of a secure data site through a third-party service provider to facilitate addressing information requests of these parties so that the administration of these Chapter 11 Cases can proceed on an appropriate schedule;

- prosecuted and defended several adversary proceedings, including actions (i) for a preliminary injunction enjoining the Federal Energy Regulatory Commission from interfering with the Utility's ability to assume or reject its power purchase agreements and (ii) to extend the automatic stay under section 362 of the Bankruptcy Code to certain non-debtor employees and other defendants;

- responded to numerous requests and motions to lift the automatic stay imposed under section 362 of the Bankruptcy Code;

- responded to motions from certain creditors and public advocacy groups for the appointment of additional official committees;

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- appeared at two sessions of the section 341 meeting of creditors;

- appeared before other Courts and regulatory tribunals, including the U.S. District Court and the CPUC, regarding a number of issues and matters; and

- responded to countless inquiries related to the administration of these cases, specific contract counterparty demands, and other matters related to ongoing operations and the administration of these Chapter 11 Cases.

During this period, the Debtors also met with the advisors for each of the Committees, the CPUC, the ad hoc committee of equity security holders, the ad hoc group of subrogation claimants, and the ad hoc committee of senior unsecured noteholders to make formal presentations as to the Debtors' extensive business and operations. Additionally, the Debtors have periodic meetings/conference calls with the advisors to the Committees, regularly respond to numerous diligence requests, and provide reporting as to a variety of matters on an ongoing basis. Further, the Debtors and their professionals have also met with the advisors to the Governor to address their inquiries and to provide information relevant to the ongoing work of the Governor's Task Force.

Moreover, PG&E Corp. recently announced the appointment of a new Chief Executive Officer and President as well as the appointment of 11 new directors to its Board of Directors. These individuals necessarily have to be brought up on the learning curve and will be instrumental to the ongoing administration of these cases and the chapter 11 plan process.

I believe the Debtors are administering these Chapter 11 Cases as expeditiously as possible, but I believe there are a number of issues that must be addressed before a chapter 11 plan negotiation and formulation process can take place in earnest. The fundamental issue being, quantifying the aggregate amount of the Debtors' liability for the Northern California wildfire claims, made even more challenging in view of the more recent Camp fire and the inability to date to obtain reliable information on the scope, extent, and types of damages that may be asserted.

### Important Unresolved Contingencies

I believe the Debtors have made considerable progress in the prosecution of the Chapter 11 Cases; however, additional time in which to propose and file a confirmable chapter 11 plan is necessary to allow the Debtors to address a number of key issues as previously stated, including,

among others, either consensually, or with the assistance of the Court, establishing the Debtors' aggregate liability for wildfire claims to be treated under a plan, and addressing and implementing any operational restructuring to be effected in the Chapter 11 process.

Moreover, I further believe that the extensions of the Exclusive Periods as requested will not prejudice any party in interest, but rather will afford the Debtors a realistic opportunity to propose a feasible and hopefully consensual chapter 11 plan. The Debtors are not seeking an extension as a negotiation tactic to artificially delay the conclusion of these Chapter 11 Cases, or to hold creditors hostage to a prolonged chapter 11 process. I also believe, in my capacity as Deputy Chief Restructuring Officer, that the failure to extend the Exclusive Periods likely would create a crisis in confidence among the Debtors' customers, suppliers, and other business partners to the detriment of the business enterprise.

**Administrative Expense Payments**

In addition to the progress discussed above, the Debtors have also obtained a $5.5 billion DIP facility, are current on payment of their postpetition obligations, and have sufficient liquidity to pay their undisputed administrative expenses in the ordinary course.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct and that this Declaration was executed in Los Angeles, California, on May 1, 2019.

*/s/ John Boken*
By: John Boken

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119