WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 365(d)(4) AND B.L.R. 6006-1 EXTENDING TIME TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY ("LEASE EXTENSION MOTION")**<br><br>Date: May 22, 2019<br>Time: 9:30am, Pacific Time<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Objection Deadline:** May 15, 2019<br>4:00 p.m. (Pacific Time) |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to section 365(d)(4) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6006-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), for an extension of time to assume or reject unexpired leases of nonresidential real property (the "**Unexpired Leases**") to which the Debtors are party by an additional ninety (90) days from May 29, 2019 to and including August 27, 2019, (the "**Extension**"). The Extension would be without prejudice to the Debtors' right to seek further extensions of such date with the consent of the affected lessors in accordance with section 365(d)(4)(B)(ii) the Bankruptcy Code.

In support of this Motion, the Debtors submit the *Declaration of John Boken In Support of Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 365(d)(4) and B.L.R. 6006-1 Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* (the "**Boken Declaration**") filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Order**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

## III. THE DEBTORS' UNEXPIRED LEASES

The Debtors are currently undertaking a comprehensive review of their Unexpired Leases to determine which ones to assume and which to reject. The Debtors are party to over 100 Unexpired Leases for, among other things, offices, warehouses, parking and storage yards, aircraft hangars and data centers. Annually, the rental obligation associated with the portfolio of these

leased properties is approximately $45 million, and the square footage of properties ranges from 200 square feet to approximately 250,000 square feet.  *See* Boken Declaration ¶ 4.

On March 14, 2019, the Debtors filed their *Schedules of Assets and Liabilities* [Docket No. 897-908] (collectively, the "**Schedules**").  On their Schedules, the Debtors identified the Unexpired Leases to which one or both of the Debtors may be a party.[1]  *See* Boken Declaration ¶ 5.

IV. **BASIS FOR RELIEF REQUESTED**

Section 365(d)(4) of the Bankruptcy Code provides, in pertinent part:

> an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
>
> i.  the date that is 120 days after the date of the order for relief; or
>
> ii.  the date of the entry of an order confirming a plan.

11 U.S.C. § 365(d)(4)(A).  Thus, the Debtors' Unexpired Leases that are not assumed within the initial 120 days of filing the Chapter 11 Cases, and are not the subject of a motion to extend the statutory period filed before the 120th day, will be deemed rejected.

Pursuant to section 365(d)(4)(B) of the Bankruptcy Code, the Court may extend the 120-day period for 90 days "for cause."  *Id.* § 365(d)(4)(B); *see also Condal Distribs., Inc. v. 2300 Xtra Wholesalers, Inc. (In re 2300 Xtra Wholesalers, Inc.)*, 445 B.R. 113, 122 (S.D.N.Y. 2011) ("section 365(d)(4)(B)(i) permits the bankruptcy court, upon motion, to grant a 90–day extension "for cause").  In determining whether cause exists to extend the time to assume or reject unexpired leases of nonresidential real property, Courts have considered the following factors:

---

[1] The inclusion of any Unexpired Lease in the Schedules or service of this Motion on a non-Debtor party to an Unexpired Lease is not binding on the Debtors' determination that such agreements are unexpired nonresidential real property leases or a binding and enforceable agreement.  Any omission of any agreement from the Schedules will not operate to preclude the effect of the extension sought herein; rather, the Debtors request that the relief contemplated by this Motion be extended to all of their unexpired leases of non-residential real property.  The Debtors have reserved the right to amend the Schedules to include any unexpired non-residential real property lease that may be subsequently identified by the Debtors.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

   i. whether the debtor was paying for the use of the property;

   ii. whether the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code;

   iii. whether the debtor has had sufficient time to formulate a plan of reorganization;

   iv. whether the bankruptcy case is complex; and

   v. the number of leases the debtor must evaluate.

*See, e.g., In re Victoria Station Inc.*, 88 B.R. 231, 236 n.7 (B.A.P. 9th Cir. 1988), *aff'd*, 875 F.2d 1380 (9th Cir. 1989); *S. St. Seaport Ltd. P'Ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 761–62 (2d Cir. 1996); *In re Wedtech Corp.*, 72 B.R. 464, 471–73 (Bankr. S.D.N.Y. 1987); *see also Legacy, Ltd. v. Channel Home Ctrs., Inc. (In re Channel Home Ctrs., Inc.)*, 989 F.2d 682, 689 (3d Cir. 1993) ("[N]othing prevents a bankruptcy court from granting an extension because a particular debtor needs additional time to determine whether the assumption or rejection of particular leases is called for by the plan of reorganization that it is attempting to develop."), *cert. denied*, 510 U.S. 865 (1993); *In re 611 Sixth Ave. Corp.*, 191 B.R. 295, 298 (Bankr. S.D.N.Y. 1996) ("The bankruptcy court may extend the . . . period if the debtor makes a timely motion and establishe[d] 'cause.'"); *BC Brickyard Assocs. v. Ernst Home Ctr., Inc. (In re Ernst Home Ctr. Inc.)*, 221 B.R. 243, 253 (B.A.P. 9th Cir. 1998) ("[T]he [list of factors] is not exclusive, and a great deal of discretion is left to the court to weigh all relevant factors related to the requested extension."). Although section 365(d)(4) was extensively amended by the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("**BAPCPA**"), the discretionary factors considered to determine whether cause exists for an extension that were articulated in the pre-BAPCPA cases cited above continue to be applied by Bankruptcy Courts. *See, e.g. In re C.W. Mining Co.,* No. 08-20105, 2009 Bankr. LEXIS 757 at *40-41 (Bankr. D. Utah Mar. 18, 2009).

### V. CAUSE EXISTS TO GRANT THE REQUESTED EXTENSION

  The Debtors require additional time beyond the initial 120-day period provided under section 365(d)(4)(A) of the Bankruptcy Code, which expires on May 29, 2019, to make a

reasoned determination regarding whether to assume or reject their remaining Unexpired Leases. In light of the early stages of these large and complex Chapter 11 Cases, the Debtors have not had a sufficient opportunity to adequately assess the potential value of each of the Unexpired Leases in the context of their restructuring efforts. *See* Boken Declaration ¶ 6. Such an evaluation will necessarily include an assessment of which of the Unexpired Leases will be required in the ongoing operation of the Debtors' business and whether any Unexpired Lease could generate value by reason of an assignment or other disposition thereof. *See* Boken Declaration ¶ 6.

### a. The Debtors' Chapter 11 Cases are Large and Complex

The size and complexity of, and legal issues involved in, these unprecedented Chapter 11 Cases supports the grant of the Extension. These Chapter 11 Cases are among the largest chapter 11 filings in U.S. history. *See* Boken Declaration ¶ 7. The Debtors employ approximately 24,000 employees and operate one of the largest electricity and natural gas utilities in the United States – servicing approximately 16 million customers throughout a 70,000-square-mile service area in northern and central California. *See* Boken Declaration ¶ 7. The Debtors own and operate approximately 136 generating facilities, nine (9) natural gas compressor stations, over 120,000 circuit miles of electric transmission and distribution lines, and nearly 50,000 miles of natural gas transmission and distribution pipelines. *See* Boken Declaration ¶ 7. The size and complexity of the Debtors' businesses, assets, regulatory framework, employee relationships, vendor relationships, and financing arrangements are self-evident. Moreover, in addition to managing and operating a vast business enterprise, the Debtors must address and resolve in the chapter 11 plan process, the potentially thousands of wildfire claims that have already been asserted and will be asserted against them over the next several months. *See* Boken Declaration ¶ 7.

During the initial stages of these Chapter 11 Cases, the Debtors' resources have been devoted to successfully assuring a smooth transition into chapter 11 and minimizing the business disruptions normally attendant thereto, maintaining relationships with the Debtors' business partners, and establishing a collaborative working relationship with the U.S. Trustee, the Committees, the California Public Utilities Commission, and the advisors to the Governor's Office as well as with the Debtors' other key economic stakeholders, including the ad hoc committee of

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

senior unsecured noteholders, the ad hoc group of subrogation claimants, and the ad hoc committee of equity security holders. *See* Boken Declaration ¶ 8. These efforts have been successful in preserving and enhancing value for all parties in interest. Indeed, as a result of these efforts, the Debtors have had no meaningful supply disruptions from their key energy suppliers and thereby have avoided any threat to their ability to provide ongoing services to their customers. *See* Boken Declaration ¶ 8.

    **b. The Debtors Have Not Had Sufficient Time to Formulate a Plan of Reorganization**

As more fully stated in the *Corrected Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) to Extend Exclusive Periods* [Docket No. 1797], the Debtors have had insufficient time to formulate and negotiate a chapter 11 plan in the first 120 days of these Chapter 11 Cases. During the first few months of these Chapter 11 Cases, the Debtors' primary focus has been on stabilizing their business by securing Court approval of a $5.5 billion debtor-in-possession financing facility and obtaining certain relief with respect to their cash management system, employee compensation and benefit programs, customer and public purpose programs, insurance and surety bond programs, utility providers, taxes, certain safety and reliability suppliers, and lienholders, among others. *See* Boken Declaration ¶ 9. In addition, the Debtors have (i) filed their Schedules and Statements of Financial Affairs, and participated in the section 341 meeting of creditors; (ii) filed and obtained approval of numerous additional motions and applications necessary to ensure the continuing, uninterrupted operation of the Debtors' business, including motions to hedge its exposure to commodity prices, establishing procedures governing certain real property interest transactions, and approving the Debtors' 2019 short-term incentive plan for its non-insider employees; and (iii) engaged in extensive consultations with the U.S. Trustee, the Committees and other parties in interest on a wide variety of issues relating to these Chapter 11 Cases. *See* Boken Declaration ¶ 9. Further, PG&E Corp. recently announced the appointment of a new Chief Executive Officer and President as well as the appointment of 11 new directors to its Board of Directors. *See* Boken Declaration ¶ 9.

The Debtors are administering these Chapter 11 Cases as expeditiously as possible, but there are a number of issues that must be addressed before the chapter 11 plan negotiation and formulation process can take place in earnest. *See* Boken Declaration ¶ 10. The fundamental issue which must be resolved is quantifying the aggregate amount of the Debtors' liability for the Northern California wildfire claims, made even more challenging in view of the more recent Camp Fire and the inability to date to obtain reliable information on the scope, extent, and types of damages that may be asserted. *See* Boken Declaration ¶ 10. Indeed, in view of these issues and the size and complexity of these Chapter 11 Cases, the time is not even ripe for the filing of a plan. *See* Boken Declaration ¶ 10.

### c. The Debtors Have a Large Number of Leases to Evaluate

The Debtors are party to over 100 Unexpired Leases, many of which are integral to the Debtors' continuing operations. *See* Boken Declaration ¶ 11. Because of the size of the Debtors' operations and the complexity of these Chapter 11 Cases, the Debtors must evaluate Unexpired Leases involving numerous properties while also (i) attending to the myriad of other issues in connection with the administration of these cases, (ii) negotiating and developing a plan of reorganization that is fair and equitable, (iii) focusing on preserving and enhancing going concern value, and (iv) continuing to operate and provide safe and reliable gas and electric utility services to 16 million Californians. *See* Boken Declaration ¶ 11. In light of the foregoing, the Debtors have not been able to devote the time and effort required to carefully evaluate the economics of the Unexpired Leases to determine whether the assumption or rejection of each of the Unexpired Leases would make sense in light of their overall restructuring and benefit their estates, their creditors, their shareholders, and other parties in interest. *See* Boken Declaration ¶ 11.

### d. Impact of Granting or Not Granting the Extension on the Debtors and their Lessors

The deemed rejection of the Debtors' Unexpired Leases could adversely impact the Debtors' ongoing restructuring efforts and greatly disrupt their operations. *See* Boken Declaration ¶ 12. Several of the Unexpired Leases, by way of example, are office buildings in

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

which approximately 5,800 of the Debtors' employees work. *See* Boken Declaration ¶ 12. 45% of the Debtors' customer service offices are leased. *See* Boken Declaration ¶ 12. Other Unexpired Leases provide critical infrastructure, such as data centers which are essential for the Debtors' information technology systems, and aircraft hangars which support the Debtors' aerial inspection program, an integral part of the Debtors' safety operations. *See* Boken Declaration ¶ 12.

Without such relief, the Debtors will be forced to decide, without being afforded time to adequately consider the value of each Unexpired Lease, whether to permanently forfeit their right to assume any Unexpired Leases, as a result of the "deemed rejected" provision of section 365(d)(4), or be compelled to assume any Unexpired Leases by May 29, 2019 to avoid deemed rejections, with the resultant imposition of potentially substantial administrative expenses on their estates. *See* Boken Declaration ¶ 13.

The Debtors are committed to remaining current with respect to all undisputed postpetition obligations under the Unexpired Leases in compliance with section 365(d)(3) of the Bankruptcy Code. *See* Boken Declaration ¶ 14. Thus, the requested extension does not adversely affect the Debtors' lessors with respect to the Unexpired Leases, and forcing the Debtors to prematurely decide whether to assume or reject the leases may prejudice lessors if their Unexpired Leases are rejected. *See* Boken Declaration ¶ 14. The Debtors will continue evaluating the Unexpired Leases on an ongoing basis as expeditiously as practicable and will file appropriate motions as soon as informed decisions can be made. Granting the extension therefore will not cause any damage to the Debtors' lessors. *See* Boken Declaration ¶ 14.

In sum, considering the size and complexity of these Chapter 11 Cases, the time needed to formulate a reorganization plan, the number of Unexpired Leases, the Debtors' ongoing payment of its postpetition obligations under the Unexpired Leases, the adverse effects of not granting the Extension for both the Debtors and their lessors, and the lack of damage to their lessors by granting the Extension, cause exists for a 90-day extension to be granted pursuant to section 365(d)(4)(B) of the Bankruptcy Code. In light of the foregoing, the Debtors submit that cause exists to grant the extension of the period within which the Debtors may assume or reject their

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Unexpired Leases to and including August 27, 2019 and such extension is in the best interests of the Debtors, their estates, their creditors, their shareholders, and all parties in interest.

## VI. RESERVATION OF RIGHTS

Nothing contained herein is intended to be or shall be construed as (i) an admission as to the characterization or validity of any Unexpired Lease or other claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any Unexpired Lease or other claim, or (iii) an approval, rejection or assumption of an Unexpired Lease, or any other agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any and all of the Debtors' rights, claims, and defenses with respect to the characterization of the Unexpired Leases under Bankruptcy Code sections 365(d)(3) and 365(d)(4) or otherwise are expressly reserved.

## VII. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) the non-Debtor parties to the Unexpired Leases; and (xiii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein for cause shown and as being in the best interests of their estates, creditors, shareholders, and all other parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: May 1, 2019

                                        **WEIL, GOTSHAL & MANGES LLP**

                                        **KELLER & BENVENUTTI LLP**

                        By:   */s/ Jane Kim*
                                  Jane Kim

                        *Attorneys for Debtors*
                        *and Debtors in Possession*