WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>PG&E CORPORATION,<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF JOHN BOKEN IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 365(d)(4) AND B.L.R. 6006-1 EXTENDING TIME TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**<br><br>Date:  May 22, 2019<br>Time:  9:30am, Pacific Time<br>Place:  United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102<br><br>**Objection Deadline**:  May 15, 2019<br>                           4:00 p.m. (Pacific Time) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, John Boken, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Managing Director in the Turnaround and Restructuring Services practice of AlixPartners, LLP, an affiliate of both AlixPartners, LLC and AP Services, LLC, ("**APS**"), which provides interim management services to PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"). I currently serve as the Deputy Chief Restructuring Officer for the Debtors as authorized by this Court by Order dated April 9, 2019 [Docket No. 1299].[1]

2. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

3. This Declaration is submitted in further support of the *Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 365(d)(4) and B.L.R. 6006-1 Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* (the "**Motion**")[2] filed contemporaneously herewith.

---

[1] My education, background, and professional experience is described in the *Declaration of John Boken in Further Support of First Day Motions and Related Relief* [Docket No. 653] at 2–3.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

## The Debtors' Unexpired Leases

4. The Debtors are currently undertaking a comprehensive review of their Unexpired Leases to determine which ones to assume and which to reject. The Debtors are party to over 100 Unexpired Leases for, among other things, offices, warehouses, parking and storage yards, aircraft hangars and data centers. Annually, the rental obligation associated with the portfolio of these leased properties is approximately $45 million, and the square footage of properties ranges from 200 square feet to approximately 250,000 square feet.

5. On March 14, 2019, the Debtors filed their Schedules. On their Schedules, the Debtors identified the Unexpired Leases to which one or both of the Debtors may be a party.

## Basis for Extension of Time to Assume or Reject Unexpired Leases

6. The Debtors require additional time beyond the initial 120-day period provided under section 365(d)(4)(A) of the Bankruptcy Code, which expires on May 29, 2019, to make a reasoned determination regarding whether to assume or reject their remaining Unexpired Leases, and seek an extension of 90 days up to and including August 27, 2019 (the "**Extension**"). In light of the early stages of these large and complex Chapter 11 Cases, the Debtors have not had a sufficient opportunity to adequately assess the potential value of each of the Unexpired Leases in the context of their restructuring efforts. Such an evaluation will necessarily include an assessment of which of the Unexpired Leases will be required in the ongoing operation of the Debtors' business and whether any Unexpired Lease could generate value by reason of an assignment or other disposition thereof.

### *The Debtors' Chapter 11 Cases are Large and Complex*

7. The size and complexity of, and legal issues involved in, these unprecedented Chapter 11 Cases supports the grant of the Extension. These Chapter 11 Cases are among the largest chapter 11 filings in U.S. history. The Debtors employ approximately 24,000 employees and operate one of the largest electricity and natural gas utilities in the United States – servicing approximately 16 million customers throughout a 70,000-square-mile service area in northern and central California. The Debtors own and operate approximately 136 generating facilities, nine (9) natural gas compressor stations, over 120,000 circuit miles of electric transmission and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

distribution lines, and nearly 50,000 miles of natural gas transmission and distribution pipelines. The size and complexity of the Debtors' businesses, assets, regulatory framework, employee relationships, vendor relationships, and financing arrangements are self-evident. Moreover, in addition to managing and operating a vast business enterprise, the Debtors must address and resolve in the chapter 11 plan process, the potentially thousands of wildfire claims that have already been asserted and will be asserted against them over the next several months.

8. During the initial stages of these Chapter 11 Cases, the Debtors' resources have been devoted to successfully assuring a smooth transition into chapter 11 and minimizing the business disruptions normally attendant thereto, maintaining relationships with the Debtors' business partners, and establishing a collaborative working relationship with the U.S. Trustee, the Committees, the California Public Utilities Commission, and the advisors to the Governor's Office as well as with the Debtors' other key economic stakeholders, including the ad hoc committee of senior unsecured noteholders, the ad hoc group of subrogation claimants, and the ad hoc committee of equity security holders. These efforts have been successful in preserving and enhancing value for all parties in interest. Indeed, as a result of these efforts, the Debtors have had no meaningful supply disruptions from their key energy suppliers and thereby have avoided any threat to their ability to provide ongoing services to their customers.

*The Debtors Have Not Had Sufficient Time to Formulate a Plan of Reorganization*

9. The Debtors have had insufficient time to formulate and negotiate a chapter 11 plan in the first 120 days of these Chapter 11 Cases. During the first few months of these Chapter 11 Cases, the Debtors' primary focus has been on stabilizing their business by securing Court approval of a $5.5 billion debtor-in-possession financing facility and obtaining certain relief with respect to their cash management system, employee compensation and benefit programs, customer and public purpose programs, insurance and surety bond programs, utility providers, taxes, certain safety and reliability suppliers, and lienholders, among others. In addition, the Debtors have (i) filed their Schedules and Statements of Financial Affairs, and participated in the section 341 meeting of creditors; (ii) filed and obtained approval of numerous additional motions and applications necessary to ensure the continuing, uninterrupted operation of the Debtors' business, including

motions to hedge its exposure to commodity prices, establishing procedures governing certain real property interest transactions, and approving the Debtors' 2019 short-term incentive plan for its non-insider employees; and (iii) engaged in extensive consultations with the U.S. Trustee, the Committees and other parties in interest on a wide variety of issues relating to these Chapter 11 Cases. Further, PG&E Corp. recently announced the appointment of a new Chief Executive Officer and President as well as the appointment of 11 new directors to its Board of Directors.

10. The Debtors are administering these Chapter 11 Cases as expeditiously as possible, but there are a number of issues that must be addressed before the chapter 11 plan negotiation and formulation process can take place in earnest. The fundamental issue which must be resolved is quantifying the aggregate amount of the Debtors' liability for the Northern California wildfire claims, made even more challenging in view of the more recent Camp Fire and the inability to date to obtain reliable information on the scope, extent, and types of damages that may be asserted. Indeed, in view of these issues and the size and complexity of these Chapter 11 Cases, the time is not even ripe for the filing of a plan.

### *The Debtors Must Evaluate a Large Number of Leases*

11. The Debtors are party to over 100 Unexpired Leases, many of which are integral to the Debtors' continuing operations. Because of the size of the Debtors' operations and the complexity of these Chapter 11 Cases, the Debtors must evaluate Unexpired Leases involving numerous properties while also (i) attending to the myriad of other issues in connection with the administration of these cases, (ii) negotiating and developing a plan of reorganization that is fair and equitable, (iii) focusing on preserving and enhancing going concern value, and (iv) continuing to operate and provide safe and reliable gas and electric utility services to 16 million Californians. In light of the foregoing, the Debtors have not been able to devote the time and effort required to carefully evaluate the economics of the Unexpired Leases to determine whether the assumption or rejection of each of the Unexpired Leases would make sense in light of their overall restructuring and benefit their estates, their creditors, their shareholders, and other parties in interest.

*Impact of Granting or Not Granting the Extension on the Debtors and their Lessors*

12. The deemed rejection of the Debtors' Unexpired Leases could adversely impact the Debtors' ongoing restructuring efforts and greatly disrupt their operations. Several of the Unexpired Leases, by way of example, are office buildings in which approximately 5,800 of the Debtors' employees work. 45% of the Debtors' customer service offices are leased. Other Unexpired Leases provide critical infrastructure, such as data centers which are essential for the Debtors' information technology systems, and aircraft hangars which support the Debtors' aerial inspection program, an integral part of the Debtors' safety operations.

13. Without such relief, the Debtors will be forced to decide, without being afforded time to adequately consider the value of each Unexpired Lease, whether to permanently forfeit their right to assume any Unexpired Leases, as a result of the "deemed rejected" provision of section 365(d)(4), or be compelled to assume any Unexpired Leases by May 29, 2019 to avoid deemed rejections, with the resultant imposition of potentially substantial administrative expenses on their estates.

14. The Debtors are committed to remaining current with respect to all undisputed postpetition obligations under the Unexpired Leases in compliance with section 365(d)(3) of the Bankruptcy Code. Thus, the requested extension does not adversely affect the Debtors' lessors with respect to the Unexpired Leases, and forcing the Debtors to prematurely decide whether to assume or reject the leases may prejudice lessors if their Unexpired Leases are rejected. The Debtors will continue evaluating the Unexpired Leases on an ongoing basis as expeditiously as practicable and will file appropriate motions as soon as informed decisions can be made. Granting the extension therefore will not cause any damage to the Debtors' lessors.

15. In sum, I believe that the Extension is warranted considering the size and complexity of these Chapter 11 Cases, the time needed to formulate a reorganization plan, the number of Unexpired Leases, the Debtors' ongoing payment of its postpetition obligations under the Unexpired Leases, the adverse effects of not granting the Extension for both the Debtors and their lessors, and the lack of damage to their lessors by granting the Extension.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Los Angeles, California on May 1, 2019.

_____
John Boken

[*Signature Page to Declaration in Support of Lease Extension Motion*]