Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |
| ☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | **PRELIMINARY STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN OPPOSITION TO LIFT STAY MOTION FILED BY THE CITY AND COUNTY OF SAN FRANCISCO**<br><br>Date: May 9, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>Re: Docket No. 1535 |

The Official Committee of Unsecured Creditors (the "Creditors' Committee") appointed in the chapter 11 cases of the above-captioned debtors in possession (the "Debtors"), by its attorneys, Milbank LLP, hereby submits this preliminary statement (this "Statement") in opposition to the *Motion by the City and County of San Francisco for Determination that Automatic Stay Does Not Apply Under § 362(b)(4) or in the Alternative, for Relief from the Automatic Stay Under § 362(d)(1) and Memorandum of Points and Authorities in Support* (the "Lift Stay Motion") [Docket No. 1535] filed by the City and County of San Francisco (the "City").[1] The Committee reserves its rights to amend, supplement, or otherwise modify this Statement prior to or during the preliminary hearing on the Lift Stay Motion and to assert such other and further objections prior to the final adjudication of the matter.

1. By the Lift Stay Motion, the City seeks a determination that either: (i) the automatic stay does not apply to certain actions initiated by the City and pending before FERC that relate to the Debtors' provision of wholesale distribution services under their Wholesale Distribution Tariff ("WDT"); or (ii) the automatic stay is lifted in order to permit those actions to continue. As described by the City, the pending FERC disputes (collectively, the "SF FERC Actions"), in which the City seeks to take action "can be grouped into three general categories: (1) disputes related to the scope of San Francisco's eligibility for service under the terms of the WDT and Federal Power Act, (2) disputes related to PG&E's quarterly filings to FERC about particular points of delivery under the WDT, and (3) disputes related to PG&E's refusal to provide wholesale distribution service at secondary voltage levels consistent with the terms of its WDT." Lift Stay Motion at 3.

2. The City first argues that the automatic stay does not apply to the SF FERC Actions by virtue of the police and regulatory power exception set forth in Bankruptcy Code section 362(b)(4). Section 362(b)(4) specifically provides that a bankruptcy petition "does not

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Lift Stay Motion.

operate as a stay . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power." 11 U.S.C. § 362(b)(4). To determine whether the exception is triggered, the Ninth Circuit has developed two tests: (1) the pecuniary purpose test and (2) the public policy test.

3. In order to satisfy the pecuniary purpose test, the government action must "relate primarily" to "matters of public safety and welfare," rather than the "protection of the government's pecuniary interest in the debtor's property." In re Universal Life Church, 128 F.3d 1294, 1297 (9th Cir. 1997). In order to satisfy the public policy test, the government action must "effectuate public policy," rather than "adjudicate private rights." Id.

4. Courts only invoke the police and regulatory power exception if both of these tests are satisfied. In re Dingley, 852 F.3d 1143, 1147 (9th Cir. 2017).

5. Here, the City is not acting in its police or regulatory capacity. Rather, the City is seeking to protect and prosecute its interests as a competing utility serving customers within the same territory in which the Debtors operate. At its core, the Lift Stay Motion is a vehicle which, if granted, would allow the City to pursue its economic interests and potentially obtain cheaper and more favorable services, as well as damages, from the Debtors. See Lift Stay Motion at 6 ("PG&E's actions force San Francisco to incur unnecessary and excessive costs to serve its loads."); id. at 5–6 ("The complaint also seeks refunds of the excess costs incurred by San Francisco as a result of PG&E's improper demand for excessive equipment."); id. at 6–7 ("Finally, due to the costs and delays PG&E has unreasonably imposed on WDT services to San Francisco, PG&E has been able to take certain of San Francisco's customers as its own by offering those customers PG&E retail service on cheaper and quicker terms."). Because the City is acting in its capacity as a utility, rather than utilizing its police and/or regulatory powers, neither the pecuniary purpose test nor the public policy test is satisfied, and the City therefore is not entitled to utilize the exception to the automatic stay found in section 362(b)(4).

6. That leaves the City with the burden of establishing that the Court should grant relief from the automatic stay "for cause" to allow the SF FERC Actions to proceed. See 11 U.S.C. § 362(d)(1). Although the Committee does not dispute FERC's ultimate jurisdiction over

3

the underlying regulatory issues involved in the WDT disputes and believes that it is appropriate for FERC to decide those issues in due course, the Committee does not take a position on whether the Court should lift the stay at this time to permit FERC to adjudicate those issues on a go-forward basis. Given the early stage of the bankruptcy cases, the Committee defers to the Debtors to identify any prejudice that might arise from having to litigate the disputes before FERC at this time.

7. The Committee does object to the stay being lifted, however, to the extent that it would permit FERC to issue any rulings with respect to any claims for damages against the Debtors. Such rulings should continue to be stayed because the Bankruptcy Court (and not FERC) is the proper forum for determining the validity, priority or amount of any damages resulting from the FERC actions. If the stay is lifted and the proceedings are adjudicated to completion before FERC, the Bankruptcy Court will effectively lose control over part of the claims administration process, which should more appropriately play out in a single forum—the Bankruptcy Court—such that all creditors are on an equal playing field.

DATED: May 2, 2019         MILBANK LLP

　　　　　　　　　　　　　　　 */s/ Thomas R. Kreller*
　　　　　　　　　　　　　　　 DENNIS F. DUNNE
　　　　　　　　　　　　　　　 SAMUEL A. KHALIL
　　　　　　　　　　　　　　　 GREGORY A. BRAY
　　　　　　　　　　　　　　　 THOMAS R. KRELLER

　　　　　　　　　　　　　　　 *Counsel for the Official Committee of Unsecured Creditors*