U.S. DEPARTMENT OF JUSTICE
Joseph H. Hunt, Assistant Attorney General
Civil Division
Ruth A. Harvey, Director
Kirk Manhardt, Deputy Director
Matthew Troy (GA Bar No. 717258)
Marc S. Sacks (GA Bar No. 621931)
Danielle A. Pham (CA Bar No. 269915)
Shane Huang (IL Bar No. 6317316)
Trial Attorneys
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 514-7451
Email: marcus.s.sacks@usdoj.gov
danielle.pham@usdoj.gov
shane.huang@usdoj.gov

David L. Anderson (CA Bar No. 149604)
United States Attorney
Northern District of California

*Attorneys for the Federal Energy Regulatory Commission*

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.: 19-30088-DM |
| PG&E CORPORATION | Chapter 11 |
| -and- | (Lead Case) |
| PACIFIC GAS & ELECTRIC COMPANY, | (Jointly Administered) |
| Debtors, | **RESPONSE OF THE FEDERAL ENERGY REGULATORY COMMISSION TO MOTION BY THE CITY AND COUNTY OF SAN FRANCISCO FOR DETERMINATION THAT AUTOMATIC STAY DOES NOT APPLY UNDER § 362(B)(4) OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY UNDER § 362(D)(1)** |
| ☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | **[Relates to Dkt. 1535]** |
| | Date: May 9, 2019<br>Time: 9:30 a.m.<br>Place: Courtroom 17<br>450 Golden Gate Avenue<br>16th Floor<br>San Francisco, California<br>Judge: Hon. Dennis Montali |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................1

DISCUSSION ..............................................................................................................................4

I.    The San Francisco FERC Proceedings Fall Within the Police and Regulatory Exception to the Automatic Stay. ...................................................................................................4

II.   Alternatively, Cause Exists to Lift The Automatic Stay with Respect to the San Francisco FERC Proceedings Under 11 U.S.C. § 362(d)(1). ..........................................................8

    A.   FERC Is a Specialized Tribunal that Has Exclusive Jurisdiction to Adjudicate the San Francisco FERC Proceedings Under the FPA. ............................................... 8

    B.   The Balance of the Hurt Weighs In Favor of Lifting the Automatic Stay. ............10

    C.   The Debtors' Obligation to Comply with Federal Regulations While in Bankruptcy Pursuant To 28 U.S.C. § 959(b) Supports Lifting the Stay................12

CONCLUSION..........................................................................................................................14

U.S. Department of Justice
P.O. Box 875
Washington, DC 20044-0875

U.S. Department of Justice
P.O. Box 875
Washington, DC 20044-0875

# TABLE OF AUTHORITIES

**Cases**

*Atlantic Refining Co. v. Pub. Serv. Comm'n of New York*,
  360 U.S. 378 (1959)................................................................................................2, 4, 7

*Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake, Inc.)*,
  35 F.3d 1348 (9th Cir. 1994) ...........................................................................................11, 13

*Beker Indus. Corp. v. Fla. Land & Water Adjudicatory Comm'n (In re Beker Indus. Corp.)*,
  57 B.R. 611 (Bankr. S.D.N.Y. 1986) ..............................................................................11

*Berg v. Good Samaritan Hosp. (In re Berg)*,
  230 F.3d 1165 (9th Cir. 2000) ........................................................................................5, 6

*Briarcliff v. Briarcliff Tenants Ass'n (In re Briarcliff)*,
  15 B.R. 864 (D.N.J. 1981).............................................................................................13

*Butner v. United States*,
  440 U.S. 48 (1979).........................................................................................................11

*Cal. ex rel. Lockyer v. Dynegy, Inc.*,
  375 F.3d 831 (9th Cir. 2004) ........................................................................................2, 7, 13

*City & County of San Francisco v. PG&E Corp.*,
  433 F.3d 1115 (9th Cir. 2006) ........................................................................................5, 6, 7

*In re Edison Mission Energy*,
  502 B.R. 830 (Bankr. N.D. Ill. 2013) .......................................................................... 10, 11, 12

*Fed. Power Comm'n v. Fla. Power & Light Co.*,
  404 U.S. 453 (1972)....................................................................................................... 9

*Fed. Power Comm'n v. Sierra Pacific Power Co.*,
  350 U.S. 348 (1956)...................................................................................................... 1

*Fed. Power Comm'n. v. Louisiana Power and Light Co.*,
  406 U.S. 621 (1972)....................................................................................................... 3

*Gulf States Util. Co. v. Fed. Power Comm'n*,
  411 U.S. 747 (1973)....................................................................................................... 2

*Hart v. Massanari*,
  266 F.3d 1155 (9th Cir. 2001) ....................................................................................... 5

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*,
  997 F.2d 581 (9th Cir. 1993) .......................................................................................12

*In re A Partners*, LLC,
  344 B.R. 114 (Bankr. E.D. Cal. 2006)........................................................................... 8

*In re Adams Delivery Service, Inc.*,
   24 B.R. 589 (B.A.P. 9th Cir. 1982) .................................................................................. 7

*In re Curtis*,
   40 B.R. 795 (Bankr. D. Utah 1984) ................................................................................. 8

*Dingley v. Yellow Logistics, LLC (In re Dingley)*,
   852 F.3d 1143 (9th Cir. 2017) ..................................................................................... 5, 6

*In re Hurvitz*,
   554 B.R. 35 (Bankr. D. Mass. 2016) .............................................................................. 10

*In re Kronemeyer*,
   405 B.R. 915 (9th Cir. B.A.P. 2009) ................................................................................ 8

*In re Lauriat's Inc.*,
   219 B.R. 648 (Bankr. D. Mass. 1998) ............................................................................ 13

*In re Plumberex Specialties Prods., Inc.*,
   311 B.R. 551 (Bankr. C.D. Cal. 2004) ............................................................................. 8

*In re Tucson Estates, Inc.*,
   912 F.2d 1162 (9th Cir. 1990) .......................................................................................... 8

*In re White Crane Trading Co., Inc.*,
   170 B.R. 694 (Bankr. E.D. Cal. 1994) ........................................................................... 13

*La. Pub. Serv. Comm'n v. FERC*,
   522 F.3d 378 (D.C. Cir. 2008) ......................................................................................... 9

*Lewis v. Mfrs. Nat'l Bank*,
   364 U.S. 603 (1961) ...................................................................................................... 11

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ..................................................................................... 5, 6

*MacDonald v. MacDonald (In re MacDonald)*,
   755 F.2d 715 (9th Cir. 1985) ........................................................................................... 8

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*,
   474 U.S. 494 (1986) ...................................................................................................... 13

*Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co.*,
   341 U.S. 246 (1951) ........................................................................................................ 2

*N.A.A.C.P. v. Fed. Power Comm'n*,
   425 U.S. 662 (1976) ............................................................................................... 2, 4, 7

*N.L.R.B. v. Cont'l Hagen Corp.*,
   932 F.2d 828 (9th Cir. 1991) ................................................................................... 4, 6, 7

*Niagara Mohawk Power Corp. v. Fed. Power Comm'n*,
   379 F.2d 153 (D.C. Cir. 1967) ..................................................................................... 2, 3

U.S. Department of Justice
P.O. Box 875
Washington, DC 20044-0875

*Norris Square Civic Ass'n v. Saint Mary Hosp.*,
 86 B.R. 393 (Bankr. E.D. Pa. 1988) .............................................................................. 12

*NRG Power Marketing, LLC v. Me. Pub. Utils. Comm'n*,
 558 U.S. 165 (2010) ......................................................................................................... 2

*Palmer v. Webster & Atlas Nat'l Bank of Bos.*,
 312 U.S. 156 (1941) ....................................................................................................... 11

*Penn. Elec. Co. v. FERC*,
 11 F.3d 207 (D.C. Cir. 1993) ........................................................................................... 2

*Saravia v. 1736 18th Street, N.W., Ltd. Partnership*,
 844 F.2d 823 (D.C. Cir. 1988) ....................................................................................... 13

*Universal Life Church, Inc. v. United States* (*In re Universal Life Church, Inc.*),
 128 F.3d 1294 (9th Cir. 1997) ......................................................................................... 5

*Wilner Wood Prods. Co. v. State of Maine, Dep't of Envtl. Prot.*,
 128 B.R. 1 (D. Me. 1991) .............................................................................................. 12

**Statutes**

11 U.S.C. § 362 .............................................................................................................passim

11 U.S.C. § 1129 .................................................................................................................. 10

16 U.S.C. § 824 ...........................................................................................................passim

16 U.S.C. § 824d ............................................................................................................ 1, 2, 9

16 U.S.C. § 824e ............................................................................................................ 1, 2, 9

16 U.S.C. § 825h .................................................................................................................... 2

28 U.S.C. § 1452(a) ........................................................................................................... 5, 8

28 U.S.C. § 959(b) .......................................................................................................... 10, 12

**Other Authorities**

*Pac. Gas & Elec. Co.*,
 81 FERC ¶ 61,323 (1997) ................................................................................................. 3

*Pac. Gas & Elec. Co.*,
 148 FERC ¶ 61,072 (2014) ............................................................................................... 3

*Pac. Gas & Elec. Co.*,
 152 FERC ¶ 61,010 (2015) ............................................................................................... 3

*Pac. Gas & Elec. Co.*,
 167 FERC ¶ 63,009 (2019) ............................................................................................... 4

7 Collier on Bankruptcy P 1108.02 (16th ed. 2018) ................................................................ 12

**U.S. Department of Justice**
P.O. Box 875
Washington, DC 20044-0875

# INTRODUCTION

The Federal Energy Regulatory Commission ("FERC" or the "Commission") hereby responds to the City and County of San Francisco's ("San Francisco") Motion for Determination that Automatic Stay Does Not Apply Under § 362(b)(4) or in the Alternative, for Relief from the Automatic Stay under § 362(d)(1) (the "Motion"). FERC files this Response to join in the relief requested by San Francisco and advise the Court that the FERC proceedings at issue in the Motion, which arise under Sections 205, 206, and other provisions of the Federal Power Act (the "San Francisco FERC Proceedings"), are exempt from the automatic stay under § 362(b)(4). In the alternative, to the extent that the Court may disagree with FERC that the San Francisco FERC Proceedings are exempt from the automatic stay, FERC submits this Response requesting that the Court lift the stay to permit the San Francisco FERC Proceedings to continue in the ordinary course.

# BACKGROUND

In enacting the Federal Power Act ("FPA"), Congress declared that the provision of electric energy in interstate commerce is "affected with the public interest." 16 U.S.C. § 824(a). Congress thus developed a comprehensive regulatory framework for protecting the public interest and created FERC's predecessor, the Federal Power Commission, to implement it. *Fed. Power Comm'n v. Sierra Pacific Power Co.*, 350 U.S. 348, 355 (1956) ("the purpose of the power given [FERC under the FPA] is the protection of the public interest."). In furtherance of its public policy mission, FERC is vested with exclusive authority to regulate rates, terms, and conditions for interstate transmission and wholesale sales of electric energy. *See* 16 U.S.C. §§ 824, 824d, 824e.

All proposed rates, terms, and conditions for interstate transmissions and wholesale power sales must be filed with the Commission and are subject to the Commission's regulatory control. *Id.* §§ 824d(c), 824e. Under sections 205 and 206 of the FPA, the Commission has exclusive authority to review proposed, as well as previously filed, rates, terms and conditions to ensure they are "just and reasonable" and "not unduly discriminatory or preferential." *Id.* §§ 824d, 824e. Where it deems such rates, terms and conditions to be unlawful, the Commission may reject or

change them. *Id.* §§ 824d, 824e. Once rates for wholesale electric energy sales or interstate transmission are filed with FERC, they carry the force of law. *See, e.g., Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251 (1951) (a party "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms."); *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 839 (9th Cir. 2004) (electric tariffs are "the equivalent of federal regulation"). No entity may engage in interstate commerce at anything other than the existing filed rate and the Commission has broad remedial authority to address violations of the filed rate, including ordering refunds. 16 U.S.C. § 825h; *Niagara Mohawk Power Corp. v. Fed. Power Comm'n*, 379 F.2d 153, 159 (D.C. Cir. 1967).

The Supreme Court has reiterated that the Commission's enforcement of the FPA protects the interests of the electricity-consuming public by ensuring stability and predictability, by preventing unjust and unreasonable, and unduly discriminatory or preferential rates in the electricity markets. *See N.A.A.C.P. v. Fed. Power Comm'n*, 425 U.S. 662, 670 (1976) (stating that the "principal purpose" of the FPA is to protect consumers through the "orderly development of plentiful supplies of electricity at reasonable prices"); *Atlantic Refining Co. v. Pub. Serv. Comm'n of New York*, 360 U.S. 378, 389 (1959) (noting the "overriding intent of the Congress to give full protective coverage to the consumer as to price"); *cf. NRG Power Marketing, LLC v. Me. Pub. Utils. Comm'n*, 558 U.S. 165, 175 (2010) (observing that FERC's promotion of market stability was, in certain contexts, "critical to maintaining reliability") (internal citation and quotation omitted). The Supreme Court has also identified the FPA's purposes to "curb abusive practices of public utility companies by bringing them under effective control, and to provide effective federal regulation of the expanding business of transmitting and selling electric power." *Gulf States Util. Co. v. Fed. Power Comm'n*, 411 U.S. 747, 758 (1973); *see also Penn. Elec. Co. v. FERC*, 11 F.3d 207, 210 n.5 (D.C. Cir. 1993) (FERC has the "duty of conducting an independent review of rates" under the assumption "that public utilities may abuse their market power"). The Commission's statutory authority in protecting the "public interest" is liberally construed. *See, e.g., Gulf States*,

411 U.S. at 757-58; *see also*, *Fed. Power Comm'n. v. Louisiana Power and Light Co.*, 406 U.S. 621, 642 (1972) (stating that the Commission has broad authority to make "pragmatic adjustments" based on circumstances); *Niagara Mohawk*, 379 F.2d at 158–59 (finding that the Commission has implied as well as express authority to implement statutory purposes).

As relevant here, in 1997, Debtor Pacific Gas & Electric Co. ("PG&E" or "Debtor") filed with the Commission its Wholesale Distribution Tariff ("WDT"), which provides the rates, terms, and conditions of PG&E's FERC-jurisdictional wholesale distribution service to customers. The Commission accepted PG&E's filing, making the WDT the filed rate and therefore binding. *Pac. Gas & Elec. Co.*, 81 FERC ¶ 61,323 (1997). The most recent changes to the WDT were approved by FERC in uncontested offers of settlement that PG&E filed in 2014 and 2015 in Docket No. ER11-1388. *Pac. Gas & Elec. Co.*, 152 FERC ¶ 61,010 (2015); *Pac. Gas & Elec. Co.*, 148 FERC ¶ 61,072 (2014).

To receive service under the WDT, a customer enters into a service agreement with PG&E that specifies the services to be provided, as well as the associated charges for the service. San Francisco is a customer of PG&E under the WDT. Over the past several years, San Francisco and PG&E have been parties to proceedings pending before the Commission with respect to the wholesale distribution service provided by PG&E (*i.e.*, the San Francisco FERC Proceedings). Specifically, in October 2014, San Francisco filed a complaint under sections 206 and 306 of the FPA against PG&E, contending that PG&E would unreasonably deny San Francisco service as the city transitioned from grandfathered service provided by PG&E pursuant to older contracts to service under the WDT. The Commission consolidated this complaint with related section 205 filings submitted by PG&E, including the filing of an unexecuted service agreement with San Francisco under the WDT. In addition, San Francisco has protested several quarterly filings PG&E made under section 205 of the FPA that identify new, changed, or canceled points of delivery receiving wholesale distribution service, as well as section 205 filings PG&E made seeking to

revise the underlying service agreement.[1] The Commission set those filings for hearing and settlement judge procedures.[2] Finally, on January 28, 2019, San Francisco filed a complaint pursuant to sections 206, 306, and 309 of the FPA against PG&E, which alleges that PG&E has unreasonably denied service to San Francisco under the WDT, and that PG&E is administering the WDT in an unjust, unreasonable, and unduly discriminatory manner.

## DISCUSSION

### I. The San Francisco FERC Proceedings Fall Within the Police and Regulatory Exception to the Automatic Stay.

FERC proceedings under the FPA fall within the police and regulatory exception to the automatic stay, because FERC's enforcement of the FPA protects the broader public interest in reliable electric power and stable electric markets. *N.A.A.C.P.*, 425 U.S. at 670 (stating that the "principal purpose" of the FPA is to protect consumers through the "orderly development of plentiful supplies of electricity at reasonable prices"); *Atlantic Refining Co*, 360 U.S. at 389 (noting the "overriding intent to the Congress to give full protective coverage to the consumer as to price"). Courts have relied on two tests for determining whether an administrative proceeding falls within the police and regulatory exception of 11 U.S.C. § 362(b)(4): the "pecuniary purpose" test and the "public policy" test. *N.L.R.B. v. Cont'l Hagen Corp.*, 932 F.2d 828, 833 (9th Cir. 1991).

---

[1] San Francisco filed protests in the following proceedings involving section 205 filings by PG&E: Docket Nos. ER17-910, ER17-1509, ER17-2181, ER17-2406, ER18-198, ER18-768, ER18-790, ER18-1102, and ER18-1482.

[2] On April 16, 2019, the Settlement Judge in the section 205 dockets certified an uncontested partial settlement in those proceedings (Partial Settlement). *Pac. Gas & Elec. Co.*, 167 FERC ¶ 63,009 (2019). The Partial Settlement fully resolves issues in Docket Nos. ER17-2406, ER18-198, ER18-768, ER18-790, and ER18-1482. The Partial Settlement resolves issues in Docket Nos. ER17-910, ER17-1509, and ER17-2181, and does not resolve issues in Docket No. ER18-1102. The Partial Settlement is currently pending before FERC.

"Satisfaction of either test will suffice to exempt the action from the reach of the automatic stay."[3] *City & County of San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1124 (9th Cir. 2006).[4]

The pecuniary purpose test inquires whether the action "primarily seeks to protect the government's pecuniary interest." *San Francisco*, 433 F.3d at 1124. Notably, the pecuniary purpose test looks to the pecuniary interest of a governmental unit, not to the pecuniary interests of any private parties to the proceeding. *See Berg v. Good Samaritan Hosp.* (*In re Berg*), 230 F.3d 1165, 1168 (9th Cir. 2000) (rejecting "an overly-literal interpretation of the phrase 'pecuniary purpose test'" that would find the police and regulatory exception inapplicable merely because the funds would "inure to the benefit of a private party"); *see also San Francisco*, 433 F.3d at 1125 (concluding that the pecuniary interest test favored regulatory agencies because government units would "receive no pecuniary advantage"); *Universal Life Church, Inc. v. United States* (*In re Universal Life Church, Inc.*), 128 F.3d 1294, 1297 (9th Cir. 1997) (describing the pecuniary purpose test as relating to "a pecuniary interest of the government unit"). Indeed, the Ninth Circuit concluded that the pecuniary purpose test exempts state court contempt proceedings for litigation misconduct, in part because the state court itself had no pecuniary interest in enforcing monetary sanctions. *Dingley v. Yellow Logistics, LLC* (*In re Dingley*), 852 F.3d 1143, 1147 (9th Cir. 2017).

---

[3] The Official Committee for Unsecured Creditors (the "UCC") incorrectly argues that "[c]ourts only invoke the police and regulatory power exception if both [the pecuniary purpose and public policy tests] are satisfied." Dkt. 1813, at 3 (citing *In re Dingley*, 852 F.3d 1143, 1147 (9th Cir. 2017)). Contrary to the UCC's argument, the *Dingley* opinion directly quotes *San Francisco*'s holding that "[s]atisfaction of either test will suffice to exempt the action from the reach of the automatic stay." *Dingley*, 852 F.3d at 1146 (quoting *San Francisco*, 433 F.3d at 1124). To the extent that *Dingley* can be read to require the regulatory agency to satisfy both tests, rather than either test, such a reading would conflict with prior precedent. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108 (9th Cir. 2005) ("A suit comes within the exception of § 362(b)(4) if it satisfies either test."); *Universal Life Church*, 128 F.3d at 1297 ("The question in this case is whether [a governmental action] meets either test. We hold that it meets both."). Thus, under this Circuit's prior panel precedent rule, the earlier cases bind this Court. *See, e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.").

[4] In *San Francisco*, the Ninth Circuit analyzed the phrase "police and regulatory power" within the context of removal under 28 U.S.C. § 1452(a), and held that the phrase has the same meaning in that provision as it does in 11 U.S.C. § 362(b)(4).

Here, FERC has no pecuniary interest in the outcome of the San Francisco FERC Proceedings. For example, San Francisco's January 28, 2019 administrative complaint requests that FERC "direct PG&E to comply with its [filed tariffs]" by providing service in a manner determined by certain technical criteria. Mapes Decl. Ex. B, Dkt. # 1538-3, at 33-36. In addition, San Francisco seeks refunds of "excess costs" incurred by San Francisco to comply with allegedly improper demands by PG&E. *Id.* at 36. FERC is not a market participant, so FERC's decision whether to issue any such order would not have any bearing on FERC's own pecuniary interests. *See San Francisco*, 433 F.3d at 1125. Therefore, under the pecuniary purpose test, the San Francisco FERC Proceedings are exempt from the automatic stay. *See Dingley*, 852 F.3d at 1147; *Berg*, 230 F.3d at 1168.

In the alternative,[5] the public policy test[6] exempts the San Francisco FERC Proceedings from the automatic stay. Courts applying the public policy test determine "whether the government seeks to effectuate public policy or to adjudicate private rights." *San Francisco*, 433 F.3d at 1125 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005); *Continental Hagen*, 932 F.2d at 833) (internal quotation marks omitted). Proceedings that primarily advance public policy are exempt from the stay, even if resolution of the claims would incidentally benefit private parties. *See Dingley*, 852 F.3d at 1147 (sanctions for litigation misconduct effectuate public policy in deterring unprofessional misconduct, even if "sanctions award is ultimately payable to a private party"); *San Francisco*, 433 F.3d at 1126 (civil restitution claims were "fundamentally law enforcement actions designed to protect the public," even if "a successful result for the governmental entities may well result in money being paid to private parties"); *Berg*, 230 F.3d at 1168 ("[A]lthough private parties may benefit financially from sanctions, the deterrent effect of

---

[5] Courts need not conduct an inquiry under the public policy test if the proceeding in question satisfies the pecuniary interest test. *See San Francisco*, 433 F.3d at 1125 ("Given that the governmental entities have satisfied the pecuniary interest test, it is unnecessary for us to reach the question of whether the restitution claim also satisfies the 'public policy' test.").

[6] Some cases refer to the public policy test as the "public purpose" test. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108-09 (9th Cir. 2005).

monetary penalties can be essential for the government to protect its regulatory interests."); *Continental Hagen*, 932 F.2d at 834 (holding that NLRB proceedings further the public policy of federal labor laws, even in entering judgment for back pay to employees). Thus, even when acting in response to private complaints, public agencies engaged in a regulatory oversight function pass the public policy test when such agencies act upon such complaints in their own name. *See, e.g.*, *Continental Hagen*, 932 F.2d at 834 (finding NLRB actions exempt from automatic stay because the NLRB "determine[s] which complaints it will act upon in its own name").

In this case, the San Francisco FERC Proceedings serve FERC's public policy mission, consistent with the explicit Congressional declaration "that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest." 16 U.S.C. § 824(a). To that end, FERC does not act as a mere forum where private parties submit their disputes, but rather exercises its power to protect the broader interests of third parties and of the public. *See N.A.A.C.P.*, 425 U.S. at 670 (stating that the "principal purpose" of the FPA is to protect consumers through the "orderly development of plentiful supplies of electricity at reasonable prices"); *Atlantic Refining Co*, 360 U.S. at 389 (noting Congressional intent to protect consumers). FERC therefore does not merely adjudicate private rights, but rather enforces its regulations, analogous to how the National Labor Relations Board "determines which complaints it will act upon in its own name." *Continental Hagen*, 932 F.2d at 834 (quoting *In re Adams Delivery Service, Inc.*, 24 B.R. 589, 592 (B.A.P. 9th Cir. 1982)); *see also Dynegy,* 375 F.3d at 839 ("Once filed with a federal agency, such tariffs are the equivalent of a federal regulation.") (internal quotation marks and citation omitted). Thus, the incidental benefits that may flow to a complaining party, such as San Francisco, do not transform the FERC proceedings into mere adjudication of private rights. Rather, the San Francisco FERC Proceedings are "designed to protect the public," and therefore satisfy the public policy test. *San Francisco*, 433 F.3d at 1126. Thus, the FERC proceedings are exempt from the automatic stay.

## II. Alternatively, Cause Exists to Lift The Automatic Stay with Respect to the San Francisco FERC Proceedings Under 11 U.S.C. § 362(d)(1).

To the extent the police and regulatory exception does not apply the San Francisco FERC Proceedings, the Court should lift the automatic stay so that those proceedings may continue before FERC under section 362(d)(1). On a request from a party in interest, the bankruptcy court *shall* grant relief from the automatic stay, such as terminating, annulling, or modifying such stay, for "cause." *See* 11 U.S.C. § 362(d)(1). "Because there is no clear definition of what constitutes 'cause,'" relief from the stay is determined on a "case by case basis." *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir.1985); *see also In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990); *In re A Partners*, LLC, 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006) ("The term 'cause' as used in § 362(d)(1) 'is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations.'").

In analyzing whether "cause" exists, courts have been guided by the twelve factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984). However, this list is non-exhaustive, and not all factors must be present for the court to find "cause" to grant relief from stay. *See In re Kronemeyer*, 405 B.R. 915, 921 (9th Cir. B.A.P. 2009); *In re Plumberex Specialties Prods., Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004). FERC submits that San Francisco demonstrates ample "cause" for the court to modify the automatic stay to permit the San Francisco FERC Proceedings to move forward. In addition to the *Curtis* factors described in the Motion, the Court should consider the following additional factors, which also weigh in favor of granting relief from stay.

### A. FERC Is a Specialized Tribunal that Has Exclusive Jurisdiction to Adjudicate the San Francisco FERC Proceedings Under the FPA.

The fourth *Curtis* factor (another tribunal better suited to determination of the issue) weighs heavily in favor of granting relief from stay. Only FERC has the legal authority and technical expertise to decide the regulatory issues at the center of the San Francisco FERC Proceedings. Specifically, San Francisco describes three categories of issues raised in those proceedings: "(1) issues related to the scope of San Francisco's eligibility for service under the terms of the WDT and Federal Power Act, (2) issues related to PG&E's quarterly filings to FERC about particular

points of delivery under the WDT, and (3) issues related to PG&E's refusal to provide wholesale distribution service at secondary voltage levels consistent with the terms of its WDT." Mot. at 2. These issues all require an interpretation of the WDT that was filed with FERC, and FERC is the Congressionally-created, specialized tribunal designated to decide such questions. *See* 16 U.S.C. §§ 824, 824d, 824e. Moreover, the FPA vests FERC with the exclusive jurisdiction to ensure that the WDT is "just, reasonable, and not unduly discriminatory" against one customer or another so these claims must be brought to FERC in the first instance. *See* 16 U.S.C. § 824e(a). In contrast, the Bankruptcy Code does not provide this court with jurisdiction to adjudicate a dispute regarding interpretation of a FERC-jurisdictional tariff. Unlike in instances where the bankruptcy court's claims administration process replaces liquidation of claims through litigation, San Francisco would have no alternative avenue in this case to seek enforcement of a FERC-jurisdictional tariff because FERC has the exclusive authority to decide contested issues regarding filed tariffs.

FERC also has the specialized knowledge required to adjudicate the San Francisco FERC Proceedings. San Francisco and the Debtors dispute whether the Debtors are in compliance with the WDT filed with FERC, which is the filed rate. FERC has developed decades-long technical expertise to adjudicate the San Francisco FERC Proceedings and is uniquely positioned to interpret the filed tariff because it is the Commission's mission to ensure that the terms of filed tariffs are not unjust, unreasonable, unduly discriminatory or preferential. *See La. Pub. Serv. Comm'n v. FERC*, 522 F.3d 378, 392 (D.C. Cir. 2008) (the FPA "calls upon FERC to make fact-intensive judgment calls on the basis of its superior technical expertise"); *Fed. Power Comm'n v. Fla. Power & Light Co.*, 404 U.S. 453, 644 (1972) ("factual questions [are] within the area of competence of an administrative agency created by Congress, and when resolution of that question depends on 'engineering and scientific' considerations, we recognize the relevant agency's technical expertise and experience, and defer to its analysis"). Because of the foregoing, FERC's expertise with respect to the San Francisco FERC Proceedings weighs heavily in favor of granting relief from stay.

## B. The Balance of the Hurt Weighs In Favor of Lifting the Automatic Stay.

The twelfth *Curtis* factor (balance of hurt) weighs heavily in favor of lifting the stay because the harm to the public interest of non-compliance with the FPA outweighs the costs to the estates of litigating the San Francisco FERC Proceedings.

The stay, if applicable, would do nothing more than delay, rather than absolve, the estate from incurring the expenses related to the FERC Proceedings. To the extent the San Francisco FERC Proceedings are stayed by section 362(a), the stay will terminate after a plan of reorganization goes effective and these regulatory proceedings will continue at that point. *See* 11 U.S.C. § 362(c). Once the stay is terminated, the Debtors will have all the same statutory and regulatory obligations with respect to the FPA, including compliance obligations under its FERC-filed tariffs. *See* 28 U.S.C. § 959(b). Not to mention, the rates under the WDT will stay in place because the Bankruptcy Code does not permit the Debtors to change rates under any plan without FERC approval. *See* 11 U.S.C. § 1129(a)(6). Therefore, at most, the automatic stay delays these proceedings until the effective date of a plan, and the estates will have to incur the expense of these regulatory proceedings in the future and in the meantime, they must continue to comply with their post-petition regulatory obligations. *Cf. In re Hurvitz*, 554 B.R. 35, 40 (Bankr. D. Mass. 2016) (granting relief from stay where an obligation to comply with noncompetition provisions could not be discharged). However, such a delay is not appropriate here because there is comparatively significant harm done to the public interest by holding the enforcement of the FPA in suspense while the Debtors remain in bankruptcy.

*In re Edison Mission Energy* is instructive in analyzing whether "cause" exists to grant relief from stay for parties to seek enforcement of regulatory obligations. *See* 502 B.R. 830, 837-41 (Bankr. N.D. Ill. 2013). In that case, the Sierra Club brought a prepetition suit to enforce compliance with environmental regulations. *Id*. The Court agreed that the Debtors "will not be greatly prejudiced" because granting relief from stay would "merely expedite . . . compliance with environmental obligations that will continue to be in effect upon the Debtors' emergence from bankruptcy." *Id*. The court stated that it "fails to see how requiring [the debtor] to take immediate

action to address alleged environmental violations would be prejudicial to the Debtors." *Id.* at 837-38. Comparing the "*de minimus*" harm to the Debtors, the court found that the environmental concerns and the harm to the public weighed against having the automatic stay in effect. *Id.* at 839.

Compared to the limited "hurt" to the Debtors, FERC, market participants, and the public will suffer irreparable harm if the regulatory process is stayed. If FERC were unable to commence or continue administrative proceedings to enforce compliance with filed rates, the automatic stay would seriously undermine the public policy goals of the FPA. Furthermore, the Debtors would receive an unfair advantage by being able to operate in a highly-regulated business but cherry-picking which regulations they must comply with. Under the Bankruptcy Code, Congress carefully balanced the protections available in bankruptcy so that bankruptcy proceedings would not be havens for debtors to avoid regulatory compliance merely because it is not economical. *See Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1354 (9th Cir. 1994) ("Congress's purpose in enacting the Bankruptcy Code was not to mandate that every company be reorganized at all costs, but rather to establish a preference for reorganizations, where they are legally feasible and economically practical."). Furthermore, "[a]n ongoing business is not to be given a competitive edge merely by virtue of its attempt to reorganize under Chapter 11." *Beker Indus. Corp. v. Fla. Land & Water Adjudicatory Comm'n (In re Beker Indus. Corp.)*, 57 B.R. 611, 624 (Bankr. S.D.N.Y. 1986) (citing *Palmer v. Webster & Atlas Nat'l Bank of Bos.*, 312 U.S. 156, 163 (1941)). The Debtors should not be relieved of regulatory obligations just by filing for bankruptcy and, as a result, receive a "windfall merely by reason of the happenstance of bankruptcy." *Butner v. United States*, 440 U.S. 48, 55 (1979) (quoting *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961)). In contrast, if the Debtors are granted a temporary exemption from their WDT, other parties that transact business with the Debtors under the WDT (such as San Francisco) would be harmed, which could have impact on end users. As a result, the balance of harms weighs in favor of lifting the stay to allow the San Francisco FERC Proceedings to continue.

## C. The Debtors' Obligation to Comply with Federal Regulations While in Bankruptcy Pursuant To 28 U.S.C. § 959(b) Supports Lifting the Stay.

The Court may also lift the stay for "cause" based upon the Debtors' obligations under 28 U.S.C. § 959(b), which mandates that the Debtors must manage and operate property in their possession "according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound if in possession thereof." 28 U.S.C. § 959(b). "[S]ection 959(b) operates as a weighty policy consideration that will in many circumstances require a bankruptcy court to grant relief from the automatic stay, if it is requested, so that a state may enforce its laws." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 592 (9th Cir. 1993) ("Bankruptcy does not grant debtors rights greater than those they would receive outside bankruptcy."); *see also Norris Square Civic Ass'n v. Saint Mary Hosp.*, 86 B.R. 393, 398 (Bankr. E.D. Pa. 1988) ("[I]t is inescapable to avoid the conclusion that 28 U.S.C. § 959(b) requires a debtor to conform with applicable federal, state, and local law in conducting its business."); 7 Collier on Bankruptcy P 1108.02 (16th ed. 2018) (noting that although 28 U.S.C. § 959(b) "in deference to longstanding principles of federalism and comity, refers only to valid 'state' laws, it is clear that a business must be operated in accordance with federal nonbankruptcy laws as well").

Section 959(b) ensures that the Debtors remain bound by generally applicable nonbankruptcy law while in bankruptcy. For example, in *Wilner Wood Prods. Co. v. State of Maine, Dep't of Envtl. Prot.*, 128 B.R. 1 (D. Me. 1991), the district court relied upon section 959(b) to overturn a bankruptcy court's injunction preventing the state from denying the debtor an air emission license. The court found "no exception [under section 959(b)] for debtors who would be inconvenienced or burdened by State laws" and explained that the Supreme Court held section 959(b) was "evidence of congressional intent that debtors in possession comply with states' environmental laws." *Id.* at 2. Moreover, "[n]othing in the general language of section 105 suggests that Congress intended it to override the specific prohibition of section 959(b)." *Id.* at 3; *see In re Edison Mission Energy*, 502 B.R. at 838 (holding that the Sierra Club's pending regulatory action

U.S. Department of Justice
P.O. Box 875
Washington, DC 20044-0875

before the state pollution control board against a debtor affiliate for excess sulfur dioxide emissions was exempt from the automatic stay).

Thus, with respect to section 959(b), Debtor remains obligated to comply with the terms of its filed WDT throughout the bankruptcy.[7] *Dynegy*, 375 F.3d at 839 ("Once filed with a federal agency, such tariffs are the equivalent of a federal regulation.") (internal quotation marks and citation omitted). Debtor's obligation to comply with the WDT continues throughout the bankruptcy, just as a debtor may not conduct an asset sale that violates state consumer protection laws, *In re Lauriat's Inc.*, 219 B.R. 648, 649 (Bankr. D. Mass. 1998), *In re White Crane Trading Co., Inc.*, 170 B.R. 694, 702 (Bankr. E.D. Cal. 1994), increase rents that violate state rent control laws, *Briarcliff v. Briarcliff Tenants Ass'n* (*In re Briarcliff*), 15 B.R. 864, 866 (D.N.J. 1981), be relieved of a "public obligation . . . going to health and safety" to maintain an apartment building's habitability, *Saravia v. 1736 18th Street, N.W., Ltd. Partnership*, 844 F.2d 823, 825-26 (D.C. Cir. 1988), or abandon property in violation of environmental protection laws, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 507 (1986). These regulatory laws remain binding on the debtor's estate, even if the burden makes a reorganization more difficult. *See Baker & Drake, Inc.*, 35 F.3d at 1354. While the question of whether Debtor has indeed violated its WDT is undecided, section 959(b) requires Debtor to continue to comply with the filed tariff while in bankruptcy. FERC should therefore retain the authority to evaluate Debtor's compliance with its filed WDT in the San Francisco FERC Proceedings.

---

[7] FERC takes no position, at this time, on the merits of the underlying San Francisco FERC Proceedings, or whether Debtor has complied with the terms and conditions of its WDT.

# CONCLUSION

For the foregoing reasons, the Court should confirm that the automatic stay does not apply to the San Francisco FERC Proceedings, or, in the alternative, the Court should lift the automatic stay and permit the San Francisco FERC Proceedings to continue.

Dated: May 3, 2019

JOSEPH H. HUNT
Assistant Attorney General

RUTH A. HARVEY
Director

KIRK MANHARDT
Deputy Director

DAVID L. ANDERSON
United States Attorney
Northern District of California

Respectfully submitted,

/s/ Shane Huang
MATTHEW TROY (GA Bar No. 717258)
MARC S. SACKS (GA Bar No. 621931)
DANIELLE A. PHAM (CA Bar No. 269915)
SHANE HUANG (IL Bar No. 7316316)
Trial Attorneys
U.S. Department of Justice, Civil Division
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 616-0341
Facsimile: (202) 514-9163
E-mail: shane.huang@usdoj.gov

ATTORNEYS FOR THE FEDERAL
ENERGY REGULATORY COMMISSION