Robert A. Julian (SBN 99469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.442.8875
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official
Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>   -and-<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                                    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF KAREN M. LOCKHART IN SUPPORT OF THE SUPPLEMENT TO THE APPLICATIONS OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO RETAIN AND EMPLOY LINCOLN PARTNERS ADVISORS LLC AND DEVELOPMENT SPECIALISTS, INC. AS ITS FINANCIAL ADVISORS**<br><br>Date:       May 9, 2019<br>Time:      9:30 a.m. (Pacific Time)<br>Place:     United States Bankruptcy Court<br>              Courtroom 17, 16th Floor<br>              San Francisco, CA 94102 |

KAREN M. LOCKHART, under penalty of perjury, declares:

1. I am the chair of the Official Committee of Tort Claimants (hereafter, the "**TCC**"), of PG&E Corporation and Pacific Gas and Electric Company (collectively, the "**Debtors**"), in the above-captioned chapter 11 cases ("**Chapter 11 Cases**").

2. I am authorized to make this Declaration pursuant to section 1103(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), and Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), in support of the TCC's supplement (the "**Supplement**") to the (i) *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Lincoln Partners Advisors, LLC, as a Financial Advisor Effective as of March 1, 2019* (the "**Lincoln Application**") [Doc. No. 1134], and (ii) *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Development Specialists, Inc., as a Financial Advisor Effective as of March 20, 2019* (the "**DSI Application**" and together with the Lincoln Application, the "**Applications**") [Doc. No. 1461].

3. I submit this declaration in support of the Supplement to address the Court's preliminary questions regarding the Applications as stated in the *Issues to be Addressed at the April 24 Hearing on Retention Applications* (the "**Statement of Issues**") [Doc. No. 1587].

### The TCC's Selection of Financial Advisors

4. The TCC is comprised primarily of individual tort victims. The TCC's members are not employees or representatives of financial institutions or corporations with vast corporate and financial resources. Given the critical importance of financial advisory support for the TCC specifically, the TCC, with the assistance of its counsel, spent substantial time and resources identifying and interviewing financial advisors based on its anticipated needs.

5. In selecting a financial advisor, the TCC focused on two sets of critical skills which the TCC believes are necessary to assist it in evaluating the unique issues that may arise in the Chapter 11 Cases. Those skills include industry expertise, enterprise value evaluation, financial modeling, analysis of the Debtors' operations and cash flow, potential transaction review, among

others (collectively, "**Asset Evaluation**"). The second skill set relates to the administration, analysis and estimation of tort claims on a massive scale ("**Claims Evaluation**").

6. With counsel's assistance, the TCC or its counsel identified approximately fifteen (15) financial advisors for initial discussion of relevant qualifications and connections to these Chapter 11 Cases. The TCC ultimately interviewed seven (7) such advisors. Among the financial firms the TCC interviewed, several were large financial firms with both sets of skills. Each of those larger firms, in the TCC's view, had connections with the Debtors or parties in interest that either made the retention undesirable, or based on discussions with counsel, rendered the firm ineligible to serve as the TCC's disinterested or unconflicted financial advisor.

7. Following a thorough selection process, the TCC hired two separate financial advisors, Lincoln Partners Advisors, LLC ("**Lincoln**") and Development Specialists, Inc. ("**DSI**"), to fulfill the two discrete roles in the Chapter 11 Cases. The TCC selected Lincoln to provide all the financial advisory services that the TCC would need during the Chapter 11 Cases, except for those related to tort claims and DSI to provide those solely related to the administration, valuation and estimation of tort claims. In other words, Lincoln's services would be directed at Asset Evaluation and DSI's services limited to Claims Evaluation.

8. As set forth in the *Scope Division Among Official Committee of Tort Claimants' Financial Advisors* annexed hereto as **Exhibit A**, Lincoln and DSI have agreed to limit their respective services to the categories of services set forth therein to ensure cooperation between Lincoln and DSI and that they do not perform duplicative services for the TCC.

9. If Lincoln's and DSI's retentions are approved by the Court, the TCC intends to monitor the scope of its advisors' respective services to avoid the possibility of duplication and to make sure those services are consistent with the TCC's expectations.

10. The TCC believes that the retention of both Lincoln and DSI is necessary for the TCC to carry out its statutory duties in an efficient and cost-effective manner. Based on discussions with DSI and Lincoln, the TCC does not believe that one of the selected advisors can perform both sets of services each has been hired to provide as efficiently as the other.

11. The TCC also believes it would be unduly prejudiced if it was unable to work with its current set of advisors. Based on the extensive selection process, the TCC further does not believe it can find a single advisor with both skill sets who has not performed work for the Debtors or major parties in interest relating to the Chapter 11 Cases or otherwise.

12. The TCC further believes it cannot share or rely on the financial advisors of the Official Committee of Unsecured Creditors (the "**UCC**"). Based on discussions with counsel, the TCC understands reliance on the UCC's advisors could be problematic for several reasons, including the potential for harm to tort claimants when the TCC's and UCC's positions diverge and issues concerning privilege and confidentiality that may arise.

*Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.*

Executed on May 3, 2019

OFFICIAL COMMITTEE OT TORT CLAIMANTS OF PG&E CORPORATION AND PACIFIC GAS AND ELECTRIC COMPANY

By: *Karen Lockhart*
Name: Karen M. Lockhart
Title: Chair of the Official Committee of Tort Claimants