# EXHIBIT A – RATES

| Name | Title | $/Hour |
|---|---|---|
| Bradford Cornell | Consultant | $1,125.00 |
| Peter Clayburgh | Consultant | $885.00 |
| Senior Professionals | | $680.00 - $950.00 |
| Professional Staff | | $535.00 - $740.00 |
| Research Staff | | $220.00 - $590.00 |
| | | |
| | | |

# EXHIBIT B
# BILLING REQUIREMENTS AND PROCEDURES

**Billing Requirements:**

1. We agree to reimburse you for your out-of-pocket expenses at your actual net cost. All disbursements (including lodging, travel, out-of-pocket copying service, transcripts, and the like) must be included with your statements with supporting documentation for all lodging and travel expenses (other than nominal amounts) and for each individual item the cost of which is $75.00 or greater.

2. All expenses shall be reasonable, ordinary, actual net cost incurred and paid by you. All expenses shall be billed at cost. Please note that air travel must be at coach rates and all rental car costs must be at subcompact rates unless otherwise expressly authorized in writing. We agree that expenses for lodging, meals, and transportation shall be at reasonable rates and that you will exercise prudence in incurring such expenses. Mileage will be paid at the Internal Revenue Service's current year approved standard rate.

3. Normal overheads shall be considered a bundled component of your hourly fees and not charged or invoiced to PG&E. If any such charge appears, we will automatically deduct it from your invoice. Normal overheads for purposes of this Contract are secretarial services, administrative, library services, clerical support, office supplies, postage, routine office copying, telecopying or "fax," local telephone, filing, file indexing, bill preparation, staff overtime, word processing, and meals or snacks (unless while travelling or otherwise approved in advance).

4. When photocopying jobs, other than routine office copying, are required, you must use the least expensive service available. In any event, we will pay no more than $0.10 per page other than for unusually sized documents or color photocopying. Any job, whether by you, a vendor, or a service, exceeding $1,000 requires advance approval confirmed in writing.

5. Travel time shall not be considered as actual time worked unless approved, in advance, by the principal PG&E attorney assigned to the matter. In the event you or your employee works during travel time, such efforts shall not be considered travel time for the purpose of this Contract. Air travel time shall be billed at one-half the hourly rate of straight time rates unless you work during air travel.

**Billing Procedures:**

In order to process your statements, PG&E must have the following information with *every* monthly statement:

1. <u>A cover summary sheet on your letterhead that includes</u>:

   - Your remittance address if different than your letterhead address;

- Your taxpayer ID number;
- The case or matter name;
- The calendar period covered by the statement; and,
- A summary statement of the professional fees and disbursements together with the invoice total.

2. A separate statement of supporting detail on your letterhead with:

    - The case or matter name;
    - Name and job title (e.g., paralegal) of each worker on each date work is done;
    - Time worked on each date work is done, separated by function;
    - Description of work done on each date;
    - Hourly rates for each worker;
    - Disbursements;
    - Total amount billed; and,
    - Display your approved annual budget and how much you have spent to date for the current calendar year, and how much you have spent on a cumulative basis since work began.

3. Additional materials to include with your statement:

    - You should include as disbursements your actual out-of-pocket payments made to outside entities. *Please remember* that you must obtain authorization in advance of hiring experts/consultants.
    - You should attach receipts or other documentation for individual items costing $75 or greater, including photocopying and lodging.

# EXHIBIT C
## SECURITY MEASURES TO PROTECT PG&E CONFIDENTIAL INFORMATION

1. Your collection, management and use of PG&E Confidential Information shall comply with this Exhibit C and with all applicable laws, regulations, directives, and ordinances.

2. Security Measures: You shall take "Security Measures" with the handling of PG&E Confidential Information to ensure that the PG&E Confidential Information will not be compromised and shall be kept secure. Security Measures shall mean industry best practices, whether physical or logical, including but not limited to:

    a. Development and implementation of written policies regarding information security, disaster recovery, third-party assurance auditing, and penetration testing;

    b. Use of password protected workstations at your premises, any premises where services are being performed and any premises of any person who has access to such PG&E Confidential Information;

    c. Measures to safeguard against the unauthorized access, destruction, use, alteration or disclosure of any PG&E Confidential Information including, but not limited to, restriction of physical access to such data and information, implementation of logical access controls, sanitization or destruction of media, including hard drives, and establishment of an information security program that at all times is in compliance with the industry requirements of ISO 27001, as may be amended from time to time; and,

    d. Any third party data center or service used by you to collect, receive and/or store Confidential Information shall meet the Security Measures required by this Agreement including, if specified by PG&E, satisfying the standards for a Tier 3 data center facility as specified in the TIA-942 standard published by the Telecommunications Industry Association or equivalent standards.

3. Compliance and Monitoring:

    a. If requested by PG&E, before receiving any PG&E Confidential Information, or at any time during the term of this Agreement, you shall provide PG&E with documentation satisfactory to PG&E that you have undertaken Security Measures.

b. If requested by PG&E, before receiving any PG&E Confidential Information Data, or at any time during the term of this Agreement, you agree to undergo PG&E's vendor Security Review process.

c. You agree to meet periodically with PG&E, but no more frequently than annually, if requested by PG&E, to evaluate your Security Measures and to discuss, in good faith, means by which you and PG&E can enhance such protection, if necessary.

d. You shall update and implement your Security Measures, including procedures, practices, policies and controls so as to keep current with industry standards, including but not limited to NIST and NERC/CIP, as applicable.

e. PG&E reserves the right to perform onsite security assessments to verify the implementation and ongoing operation and maintenance of Security Measures. On request by PG&E, but no more than once annually, you shall assist PG&E in obtaining a copy of any report that documents your Security Measures.

4. Security Breach:

a. You shall immediately notify PG&E in writing of any unauthorized access or disclosure, or potential unauthorized access or disclosure, of PG&E Confidential Information.

b. You shall take reasonable measures within your control to immediately stop the unauthorized access or disclosure of PG&E Confidential Information to prevent recurrence and to return to PG&E such information and any copies.

c. You shall provide PG&E: (i) a summary of the issue and the facts; (ii) the potential number of individuals affected by the security breach; (iii) the PG&E Confidential Information that may be implicated by the security breach; and (iv) any other information pertinent to PG&E's understanding of the security breach and the exposure or potential exposure of PG&E Confidential Information.

d. You shall investigate such breach or potential breach, and shall inform PG&E, in writing, of the results of such investigation, and assist PG&E (at your sole cost and expense) in maintaining the confidentiality of such PG&E Confidential Information. You agree to provide, at your sole cost and expense, appropriate data security monitoring services for all potentially affected persons for one (1) year following the breach or potential breach, subject to PG&E's prior approval.

e. If requested in writing by PG&E, you will notify the potentially affected persons regarding such breach or potential breach within a reasonable time

period determined by PG&E and in a form as specifically approved in writing by PG&E. In addition, in no event will you issue or permit to be issued any public statements regarding the security breach involving PG&E Confidential Information unless PG&E requests you to do so in writing.

# EXHIBIT D
## PG&E CONTRACTOR DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS

1. Contractor agrees to retain all documents and data in accordance with (a) or (b) below, provided that Contractor is not required to retain: (i) draft versions of final written documents such as reports, presentations, or other written deliverables; and (ii) documents that are inconsequential or ancillary to performance and documentation of the project or its deliverables as follows:

    [ ] a. the documents and data specified in Attachment 1 to this Exhibit D; or

    [ ] b. all documents and data, whether paper or electronic, created, collected or received for PG&E in the course of performing the Work or furnishing the materials under the Agreement, including without limitation, documents, data, plans, drawings, diagrams, investigative notes, field notes, tests, photographs, records, calculations, summaries, and reports.

    If neither Section 1(a) or Section 1(b) is checked, Section 1(b) shall apply. If Section 1(a) is checked, but documents and data are not specified in Attachment 1, Section 1(b) shall apply. Collectively, the information shall hereinafter be referred to as "PG&E Contractor Documents."

2. Contractor shall store PG&E Contractor Documents in a secure and organized manner. All PG&E Contractor Documents shall be in legible form, whether paper or electronic. In managing and administering PG&E Contractor Documents, Contractor will comply with the requirements of "The Recordkeeping Principles® Level 3" (see www.arma.org), or with modified requirements approved in writing by PG&E.

3. Upon completion of the Work or furnishing of the materials under the Agreement, or upon completion of the Work or furnishing of the materials under each CWA under the Agreement ("Work Completion Date"), PG&E will specify which of PG&E Contractor Documents must be transmitted by Contractor to PG&E ("PG&E Records"), provided however, unless otherwise agreed by PG&E:

    a. Contractor shall transmit to PG&E, or provide PG&E access to, PG&E Records on request within forty eight (48) hours or sooner if needed (without limitation) for regulatory, California Public Utilities Commission ("CPUC"), safety, audit and/or litigation requirements;

    b. PG&E may specify that PG&E Records be delivered to PG&E on a regular basis prior to the Work Completion Date;

    c. With respect to PG&E Contractor Documents not transmitted to PG&E as PG&E Records, Contractor shall retain all such documents for twenty four

(24) months after the Work Completion Date ("Post-Termination Retention Period"). During the Post-Termination Retention Period, PG&E Contractor Documents shall be retained by Contractor at no additional cost to PG&E until disposed of in accordance with Section 6 below. To the extent PG&E requests Contractor to retain PG&E Contractor Documents after the Post-Termination Retention Period, the parties will mutually agree on the terms and conditions of such additional retention;

    d. If PG&E Records are kept in electronic form, the following formats are acceptable for transmission to PG&E: (i) PDF, CAD or TIFF for drawings and diagrams; and (ii) PDF for all other documents. If PG&E Records transmitted to PG&E consist of data in a proprietary format, Contractor shall make available to PG&E the proprietary tools or software necessary to access the data including after the transfer of the data to PG&E. This Section 3.d. shall not abrogate Contractor's obligation to produce PG&E Records in an alternative format (e.g., a native format) if set forth elsewhere in the Agreement, in which case Contractor shall produce PG&E Records in each of the formats requested.

4. PG&E Contractor Documents shall be treated as confidential and shall not be disclosed to others unless Contractor is required to produce such documents pursuant to legal or regulatory requirements, in which case Contractor shall give PG&E maximum practicable advance notice prior to any production.

5. Contractor shall maintain a system for back-up of electronic PG&E Contractor Documents (e.g., files or databases) so they will be preserved for retrieval in the event that the originals are lost or destroyed.

6. If PG&E directs Contractor to dispose of PG&E Contractor Documents, Contractor shall do so in a confidential and secure manner, whether the format is electronic or paper. Proof of destruction of PG&E Contractor Documents shall be submitted to PG&E upon request.

7. If PG&E provides paper documents to Contractor in order to convert them to digital electronic format, Contractor shall return both the paper documents and the documents converted to digital electronic format to PG&E.

8. Contractor is responsible for ensuring that its Subcontractors regardless of tier comply with the obligations of Contractor where set forth in this Exhibit D.

9. The terms and conditions of this Exhibit D, including Attachment 1 if attached, shall survive the termination of this Agreement.

# EXHIBIT D – ATTACHMENT 1

If Section 1(a) of Exhibit D is checked, Contractor agrees that in connection with this Agreement, the following PG&E Contractor Documents will be created, received and/or maintained by Contractor:

**[Insert list of all specific PG&E Contractor Documents required under this Agreement]**

**EXHIBIT E – SAMPLE BILLING STATEMENT**

*Sample Cover Sheet*

Your Firm Name
411 Main Avenue
City, CA 91234-5678

[Remittance address, if different than above.]

**Taxpayer ID**: 94-0987654

September 1, 2019
Pacific Gas & Electric Company
P.O. Box 7133
San Francisco, CA 94120

Re: ABC v. PG&E

For professional services rendered during the period from August 1, 2019, to August 31, 2019.

| | |
|---|---:|
| Professional Fees | $187.50 |
| Expenses | 50.00 |
| **Total** | **$237.50** |

> **Sample Detailed Statement**

**Your Firm Name**
411 Main Avenue
City, CA 91234-5678

**Taxpayer ID**: 94-0987654

*Statement*

TO: Pacific Gas and Electric Company

RE: ABC v. PG&E

| Date | Employee | Title | Services Rendered | Hour | Rate | Amount |
|------|----------|-------|-------------------|------|------|--------|
| 8/5/19 | Jane Doe | Partner | Prepare for hearing | 1.5 | $125 | $187.50 |
| | | | | | Subtotal.................. | $187.50 |

**Disbursements:**

| | | |
|---|---|---|
| C&D Blueprint Service—depo transcript exhibits for 7/15/19 depo | | $50.00 |
| | Subtotal................ | $50.00 |
| | TOTAL ................. | $237.50 |

| | |
|---|---|
| 2019 Budget | $2,500.00 |
| 2019 Amount billed to date | 237.50 |
| **Total amount billed to date** | **$3,237.60** |

*DUE AND PAYABLE UPON RECEIPT*