TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
JASON BLUMBERG (NY SBN 4055257)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Avenue, Suite 05-0153
San Francisco, CA 94102
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: jason.blumberg@usdoj.gov

Attorneys for Andrew R. Vara,
Acting United States Trustee for Region 3[1]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**,<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                    **Debtors**.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>Date: May 9, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102 |

**UNITED STATES TRUSTEE'S OBJECTION TO APPLICATION OF**
**THE DEBTORS TO EMPLOY COMPASS LEXECON, LLC**

Andrew R. Vara, Acting United States Trustee for Region 3 (the "United States Trustee"), by and through his undersigned counsel, hereby files this objection to the *Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain*

---

[1] Andrew R. Vara, Acting United States Trustee for Region 3, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who has recused herself.

*and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* (ECF No. 1756) (the "Application"). This Objection is supported by the following memorandum of points and authorities and any argument the Court may permit.[2]

## PRELIMINARY STATEMENT

The Debtors are seeking to retain Compass Lexecon as their "economic consultant" in connection with the assessment and evaluation of damages resulting from the California wildfires. Meanwhile, the Official Committee of Unsecured Creditors is seeking to retain Compass Lexecon's parent company - FTI Consulting - as its financial advisor. FTI will assist the Committee "in the review of the claims reconciliation and estimation process, including potential exposure from wildfire damage claims. . ."[3]

The roles of FTI and Compass Lexecon share core similarities. They both must review and determine wildfire claims, a central issue in this case. The Court will almost certainly require declarations or testimony from financial experts from the Debtors and the Committee in assessing claims or in making valuation determinations.

Two possibilities exist regarding FTI and Compass Lexecon. First, FTI and Compass Lexecon will provide different analyses, in which case FTI and Compass Lexecon employees will have to be adverse to each other. Second, FTI and Compass Lexecon will have substantially similar analyses, in which case the Court, the United States Trustee and the public will have difficulty in determining whether there was in fact some behind-the-scenes

---

[2] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in these cases pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201.

[3] FTI Employment Application at ¶ 6(h).

2

coordination by corporate affiliates to avoid embarrassment or for other reasons. The integrity of the process requires conflict free analyses.

Also, while Compass states that it maintains complete separation from FTI on an operational level, there is no statement whether FTI executives will (directly or indirectly) receive a portion of the compensation from the Compass engagement. This connection undermines confidence in Compass Lexecon's ability to provide "unbiased" advice "free from personal interest" when evaluating the wildfire claims. In view of the critical importance of that task, Compass Lexecon has an actual conflict of interest if FTI is retained by the Committee.

Simply put, FTI and one of its subsidiaries cannot be retained by competing entities in the same chapter 11 case. A debtor and an official committee of unsecured creditors carry fiduciary duties to opposing bodies. In a case as complex and prominent as PG&E with tens of thousands of creditors, victims and stakeholders, both the Debtors and the Official Committee merit untainted advice on the financial impact of the wildfires. FTI and Compass Lexecon, a parent and affiliate, cannot offer conflict-free analysis.

## I. BACKGROUND

1. On January 29, 2019 (the "Petition Date"), the Debtors commenced the above-captioned cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See* ECF No. 1. No trustee has been appointed in the Debtors' cases. *See generally* Case Dockets.

2. On January 29, 2019, the Debtors filed the Declaration of Jason P. Wells in connection with the bankruptcy filings (the "Wells Declaration"). *See* ECF No. 28. As stated by Mr. Wells, "[t]he chapter 11 filings were necessitated by a confluence of factors resulting from the catastrophic and tragic wildfires that occurred in Northern California in 2017 and 2018,

3

Case: 19-30088    Doc# 1858    Filed: 05/06/19    Entered: 05/06/19 15:13:26    Page 3 of 12

and PG&E's potential liabilities arising therefrom." *See* Wells Declaration, at Preliminary Statement.

3. On February 12, 2019, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). *See* ECF No. 409. On February 15, 2019, the United States Trustee appointed an Official Committee of Tort Claimants. *See* ECF No. 453.

4. The section 341(a) meeting of creditors in these cases was called on March 4, 2019 and concluded on April 29, 2019. *See* ECF Nos. 396, 736.

5. On March 14, 2019, the Debtors filed an application to retain Lazard Freres & Company LLC ("Lazard") as their investment bankers (the "Lazard Application"). *See* ECF No. 891. The Lazard Application has been continued to May 22, 2019. *See* ECF No. 1782.

**The Debtors' Application to Employ Compass Lexecon**

6. On April 29, 2019, the Debtors filed the Application to employ and retain Compass Lexecon, LLC ("Compass Lexecon"), through the Debtors' litigation counsel, Cravath, Swaine & Moore LLP ("Cravath"), as economic consultants for the Debtors. *See* Application generally.

7. As disclosed in the Application, Cravath initially retained Compass Lexecon on February 24, 2018 as its economic consultant with respect to the Northern California Wildfires. *See* Application, at p.4.

8. If the Application is approved, the Debtors and Cravath contemplate that Compass Lexecon will continue to provide and/or may be requested to provide the following services:

- analyzing the losses and potential damages associated with the Northern California Wildfires;

4

- assisting the Debtors in any claims estimation process in the Chapter 11 Cases, including performing economic analysis and data review pertaining to the estimation of potential liability in connection with the Northern California Wildfires;

- supporting the Debtors with related empirical analyses; and

- providing expert testimony in connection with any of the foregoing services.

*See* Application, at p. 5.

9. In addition, as set forth in a supplement to the Application filed on May 3, 2019, the Debtors disclosed that Compass Lexecon has also been engaged to provide consulting services "related to a proceeding initiated by the California Public Utilities Commission … to implement the requirement of Senate Bill 901 concerning utility requests for wildfire cost recovery." *See* ECF No. 1842, at p.3.

**The Committee's Application to Employ FTI Consulting**

10. Compass Lexecon is a wholly-owned subsidiary of FTI Consulting, Inc. ("FTI"). See Application, at p.7.

11. On April 3, 2019, the Committee filed an application to employ and retain FTI Consulting, Inc. ("FTI") as its financial advisor. *See* ECF No. 1212 (the "FTI Employment Application").

12. If that application is granted, FTI will, among other things, assist the Committee in "the review of the claims reconciliation and estimation process, *including potential exposure from wildfire damage claims*." *See* FTI Employment Application, at ¶ 6(h) (emphasis added).

13. As described in the declaration of Samuel E. Star (ECF No. 1212) (the "Star Declaration"), FTI has established an ethical wall procedure to protect confidential information

in connection with the concurrent engagements of FTI and Compass Lexecon. *See* Star Declaration, at ¶ 23.[4]

14. The Debtor filed a statement of "no objection" to the FTI Employment Application "subject to the condition that the Committee's retention of FTI would in no way prejudice or preclude, in any way, the Debtors' ongoing ability to utilize Compass's services, in any capacity, in these Chapter 11 Cases or any other context and would not present any conflicts for Compass or for the Debtors' continuing retention and use of the services of Compass." *See* ECF No. 1560.

15. The United States Trustee has objected to the FTI Employment Application on the basis of the actual conflict resulting from the Committee's engagement of FTI and the Debtor's engagement of Compass Lexecon. *See* ECF No. 1505.[5]

## II.     MEMORANDUM OF POINTS AND AUTHORITIES

### A.     Statutory Framework

Section 327(a) of the Bankruptcy Code governs the employment of professionals by a debtor in possession. Under Section 327(a), a professional representing a debtor in possession may not hold or represent "an interest adverse to the estate" and must be a "disinterested person." See 11 U.S.C. § 327(a).

Moreover, Section 328(c) of the Bankruptcy Code provides that "disinterestedness" is a prerequisite to allowance of compensation for a professional person who is employed under section 327(a) of the Bankruptcy Code. Section 328(c) states, in relevant part:

---

[4] Compass Lexecon has represented that it will employ similar procedures to protect confidential information relating to its engagement. *See* Application at p.9.

[5] The hearing on the FTI Employment Application has been continued to May 9, 2019, so that it can be considered in conjunction with the Debtors' Application to employ Compass Lexecon.

6

> …the *court may deny compensation* for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is *not a disinterested person, or represents or holds an interest adverse* to the estate with respect to the matter on which such professional person is employed.

*See* 11 U.S.C. § 328(c) (emphasis added). Section 328(c) is a "penalty" for a professional's failure to avoid a disqualifying conflict of interest. *See In Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 625 (Bankr. E.D. Cal. 2012).

A "disinterested person" is a person who, among other things, "does not have an *interest materially adverse to the interest* of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, *or for any other reason*." *See* 11 U.S.C. § 101(14)(C) (emphasis added). Stated differently, a disinterested person is "one that can make unbiased decisions, free from personal interest, in any matter pertaining to the debtor's estate." *See In re Shat*, 2009 WL 7809004, at *6 (B.A.P. 9th Cir. Nov. 25, 2009).

To have an adverse interest means, "the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate." *See In re AFI Holding, Inc.*, 355 B.R. 139, 148-49 (B.A.P. 9th Cir. 2006) (affirming the removal of a Chapter 7 trustee, where the trustee had a materially adverse interest due either to an appearance of impropriety or potential conflict of interest arising from the trustee's prior representation of the debtor's insider, among other grounds), *aff'd by* 530 F.3d 832, 838 (9th Cir. 2008) (adopting the B.A.P.'s analysis).

To represent an adverse interest "means to serve as agent or attorney for any individual or entity holding such adverse interest." *See In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1017 (Bankr. N.D. Ill. 1993); *see also In re Shat*, 2009 WL 7809004, at *5.

The "adverse interest" language found in sections 101(14)(C), 327(a), and 328(c) "'telescope into what amounts to a *single hallmark* [that is] designed to *filter out conflicts* that may jeopardize a fair and equitable administration of the bankruptcy case.'" *See In re Sundance Self Storage-El Dorado LP, 482* B.R. at 626 (emphasis added).

### B. The Role of the United States Trustee

Under 28 U.S.C. § 586(a)(3)(I), the United States Trustee is charged with monitoring applications filed under 11 U.S.C. § 327 "and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications." This duty is part of the United States Trustee's responsibility to enforce the laws as written by Congress and interpreted by the courts. *See In re Columbia Gas Sys., Inc.*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *In re Revco D.S., Inc.*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

## III. ARGUMENT

### A. The Application Should be Denied Because Compass Lexecon Has an Actual Conflict of Interest.

An actual conflict "mandates" disqualification of a professional from serving in a bankruptcy case. A potential conflict is also grounds to deny a professional's employment. *See In re Shat*, 2009 WL 7809004, at *6; *see also In re Marvel Entm't Group*, 140 F.3d 463, 477 (3d Cir. 1998) ("Section 327(a) presents a per se bar to the appointment of a law firm with

8

an actual conflict, and gives the district court wide discretion in deciding whether to approve the appointment of a law firm with a potential conflict.").[6]

Here, the Committee is seeking to retain FTI as its financial advisor, while the Debtors are seeking to retain Compass Lexecon as its economic consultant in connection with the Northern California Wildfires. Compass Lexecon is FTI's wholly-owned subsidiary.

The Debtors contend that there is no *per se* rule that prohibits the retention of a professional and a professional's wholly-owned subsidiary in the same case. *See* Application, at p.7.

Even so, "where inappropriate safeguards exist to alleviate the conflict, *or if there is any material concern, the retention will not be allowed.*" *See In re Greystone Holdings, L.L.C.*, 305 B.R. 456, 462 (Bankr. N.D. Oh. 2003) (wholly-owned subsidiary of law firm previously retained by committee was not disinterested and, thus, could not be retained as committee's financial advisor).

There is a material concern in this case. Compass Lexecon's engagement relates to the assessment and evaluation of damages from the California wildfires. Resolution of these claims is questionably a "principal objective[ ]" of these cases. *See* ECF No. 263 (amended declaration of Jason P. Wells), at p.4. It is difficult to conceive that the interests of the Debtors and the Committee are fully aligned on this issue.

Compass Lexecon's affiliation with FTI undermines confidence in its ability to provide "unbiased" advice "free from personal interest" when evaluating the wildfire claims. In light

---

[6] "An actual conflict exists if there is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'" *In re Git-N-Go, Inc.*, 321 B.R. 54, 58 (Bankr. N.D. Okla. 2004) (citing *In re BH&P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J. 1989), *aff'd in pertinent part*. 119 B.R. 35 (D.N.J. 1990)).

of the critical importance of resolving the claims, Compass Lexecon has an actual conflict of interest. *See*, *e.g.*, *In re Hammer*, 2007 WL 7540944, at *7 (B.A.P. 9th Cir. Oct. 11, 2007) (law firm retained by the Chapter 7 Trustee was not disinterested, where it also represented a major creditor in the case); *In re Shat*, 2009 WL 7809004, at *8 (counsel had an "irreconcilable conflict," where he represented debtors whose estates had competing interests in the same property); *In re Woodworkers Warehouse, Inc.*, 303 B.R. 740, 742-43 (Bankr. D. Del. 2004) (denying retention of debtor's proposed counsel where counsel had represented the committee in the Chapter 11 case of the debtor's predecessor); *In re Quality Beverage Co., Inc.*, 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995) ("Coopers has performed services for the Committee, and now seeks to perform services for the Trustee who has potential preference actions against members of the Committee, resulting in a potential dual representation. *Where there is a dual representation, an "actual conflict" exists*.") (emphasis added).

### B. An Ethical Wall Cannot Cure Compass Lexecon's Conflict.

The purpose of an ethical wall is to protect confidentiality. *See, e.g., Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 822 (N.D. Cal. 2004) ("Although an ethical wall may, in certain limited circumstances, prevent a breach of confidentiality, it cannot, in the absence of an informed waiver, cure a law firm's breach of its duty of loyalty to its client."); *see also In re Ampal-American Israel Corp.*, 534 B.R. 569, 583 (Bankr. S.D.N.Y. 2015) ("Although associated attorneys are presumed to share client confidences … that presumption is rebutted through evidence that an ethical wall prevents information sharing.").

By shielding client confidences, an ethical wall may ameliorate the sometimes harsh effects of vicarious or imputed disqualification due to the personal disqualification

of one member of a firm. *See, e.g., In re Cty. of Los Angeles*, 223 F.3d 990, 997 (9th Cir. 2000) ("Screening mechanisms that are both timely and effective … will rebut the presumption that the former judge disclosed confidences to other members of the firm.").[7]

An ethical wall does not, however, eliminate a "conflict arising from concurrent adverse client relationships." *See, e.g., Concat LP v. Unilever, PLC*, 350 F. Supp. 2d at 822 ("Screening measures … do nothing to mitigate conflict arising from concurrent adverse client relationships, since the purpose of the prohibition against such relationships is to preserve the attorney's duty of loyalty, not confidentiality, to his client."); *In re Chicago S. Shore & S. Bend R.R.*, 101 B.R. 10, 13 (Bankr. N.D. Ill. 1989) ("The duty of loyalty encompasses more than confidentiality.").

Here, the issue is not limited to the protection of client confidences. Compass Lexecon has an actual conflict of interest due to the Committee's proposed engagement of FTI.

### C. Compass Lexecon's Services May Overlap with Lazard's Services.

The United States Trustee also objects to this retention, because the Debtors have not adequately explained the role of Compass Lexecon, as compared to Lazard. It appears that Lazard is in fact undertaking some of same functions as Compass Lexecon.

---

[7] A professional's knowledge and duty of loyalty are imputed to the professional's firm. *See In Hammer*, 2007 WL 7540944, at *7 n.11.

**WHEREFORE**, the United States Trustee respectfully requests that the Court (i) deny the Application and (ii) grant such other relief as the Court deems appropriate and just.

Dated: May 6, 2019

Andrew R. Vara
Acting United States Trustee, Region 3

By: /s/ Jason Blumberg
Jason Blumberg
Trial Attorney for Acting United States Trustee