Robert A. Julian (SBN 99469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:     628.208.6434
Facsimile:     310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.442.8875
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official
Committee of Tort Claimants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| **-and-** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **STATEMENT OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS REGARDING THE DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. § 327(A) AND FED. R. BANKR. P. 2014 (a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY COMPASS LEXECON, LLC AS ECONOMIC CONSULTANTS TO THE DEBTORS NUNC PRO TUNC TO PETITION DATE [Dkt. No. 1756]** |
| □ Affects PG& E Corporation | |
| □ Affects Pacific Gas and Electric Company | |
| ■ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | |
| | Date:      May 9, 2019 Time:      9:30 a.m. (Pacific Time) Place:     United States Bankruptcy Court Courtroom 17, 16th Floor San Francisco, CA 94102 |

The Official Committee of Tort Claimants (hereafter, the "**TCC**"), in the above-captioned chapter 11 cases ("**Chapter 11 Cases**") of PG&E Corporation and Pacific Gas and Electric Company (collectively, the "**Debtors**"), by and through its undersigned counsel, hereby submits this statement in response to the *Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Doc. No. 1756] (the "**Initial Compass Application**"), as supplemented by the *Supplement to Debtors' Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Doc. No. 1842] (the "**Supplemental Compass Application**" and together with the Initial Compass Application, the "**Compass Application**"). In support of this statement, the TCC respectfully states as follows:

## BACKGROUND

1.      On January 29, 2019 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.      On February 15, 2019, the Office of the United States Trustee ("**U.S. Trustee**") filed an Appointment of the Official Committee of Tort Claimants [Doc. No. 453]. Following the resignation of Richard Heffern from the original committee and the addition of Tommy Wehe, on February 21, 2019, the U.S. Trustee filed the Amended Appointment of the Official Committee of Tort Claimants [Doc. No. 530]. The members of the TCC are: (i) GER Hospitality, LLC, in its capacity as an individual claimant; (ii) Kirk Trostle; (iii) Tommy Wehe; (iv) Angelo Loo; (v) Karen K. Gowins; (vi) Agajanian, Inc.; (vii) Susan Slocum; (viii) Samuel Maxwell; (ix) Karen M. Lockhart; (x) Wagner Family Wines-Caymus Vineyards; and (xi) Gregory Wilson. The TCC conducted a meeting on February 15, 2019, at which all members were present, and appointed Karen M. Lockhart as Chairperson.

3.      On April 3, 2019, the Official Committee of Unsecured Creditors (the "**UCC**") filed the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant*

*to 11 U.S.C. §§ 328(a) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to February 12, 2019* [Doc. No. 1212] (the "**FTI Application**").

4.      Relevant here, in the FTI Application, the UCC disclosed that Compass Lexecon, LLC ("**Compass**"), a wholly owned subsidiary of FTI Consulting, Inc. ("**FTI**") and the subject of the Compass Application, had provided economic consulting services regarding the assessment of, and methodology for evaluating potential damages relating to the California wildfires to the Debtors before the Petition Date. Based on information provided to FTI, the UCC further disclosed that the Debtors would continue to utilize Compass's services for the same purpose during the Chapter 11 Cases. Among other proposed financial advisory services outlined in the FTI Application, the UCC alleged that FTI will be assisting the UCC with its review of the claims' reconciliation and estimation process, including potential exposure from wildfire damage claims.[1]

5.      On April 17, 2019, the U.S. Trustee filed the *United States Trustee's Objection to Application of the Official Committee of Unsecured Creditors to Employ FTI Consulting, Inc.* [Doc. No. 1505]. Based on FTI's relationship to Compass and the respective services they propose to provide, the U.S. Trustee argued that FTI has an actual conflict of interest and therefore the Court should not approve its retention.

6.      On April 24, 2019, the Court conducted a hearing on several matters, including the FTI Application. For the reasons more fully stated on the record, the Court adjourned the FTI Application to May 9, 2019, and stated that it would also consider any application of the Debtors to retain Compass at that time.

7.      On April 29, 2019, the Debtors filed the Initial Compass Application, together with the *Ex Parte Motion of Debtors Pursuant to B.L.R. 9006-1 Requesting Order Shortening Time for Hearing on Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Doc. No. 1759] (the "**Motion to Shorten**").

---

[1] *See* FTI Application at 4.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.      On April 30, 2019, the Court entered an order grating the Motion to Shorten and scheduled a hearing on the Compass Application for May 9, 2019 [Doc. No. 1769].

9.      On May 3, 2019, the Debtors filed the Supplemental Compass Application.

## ARGUMENT

**A.      The Debtors and UCC Should Be Required to Share the Services of Either FTI or Compass With Respect to Their Mutual Challenge to Tort Claims**

10.      These Chapter 11 Cases present the rare situation where the interests of the UCC and the Debtors are so aligned that they should be ordered to conserve estate assets by sharing the services of one financial advisor on tort claims estimation.  This complete alignment is presented by the following facts: The Debtors filed their cases as solvent cases.  The unsecured creditors hope for and expect to receive full recovery on their claims, as was the result in the first PG&E bankruptcy cases. The only materially different characteristic between these cases and the last bankruptcy cases is the existence of many billions of dollars of contingent claims for damages PG&E caused when its electrical system ignited numerous wildfires in 2015, 2017 and 2018.

11.      The Debtors and the UCC are aligned for the following reasons:  First, the Debtors wish to reorganize.  They cannot reorganize unless the aggregate tort claims are determined to be in an amount that is low enough for the Debtors' enterprise value to support the financing necessary to pay all unsecured claims.  The wildfire-related claims are general unsecured claims, payable at the same priority as the bonds issued by the utility ($17 billion), bank debt owed by the utility ($5 billion) and trade debt of the utility (estimated to be $2.1 billion).  This means that in order to be able to reorganize, the Debtors must raise through operations or refinancing $24.1 billion *plus* the amount necessary to fund payment of tort claims.  The Debtors disclosed a reserve of $14 billion in their SEC filings, but Jason Wells, CFO, noted in his testimony at the 341 meeting that the amount may be much higher.  (The TCC believes that the evidence will show that valid tort claims exceed $30 billion as reported in the Debtors' filings with the SEC; subrogation claims may be $10 billion; and public entity claims may be $2 billion.)

12.      And this is only the debt at the utility level.  The holding company has bank debt in excess of $700 million.  Only with payment in full of both the utility company debt (and preferred

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-4-

stock of $300 million) and holding company debt will the equity security holders receive any recovery at all on their investments.

13.     So, it is abundantly clear that all the major constituents in these Chapter 11 Cases—Debtors, UCC, Ad Hoc Committee of Bondholders, banks and equity security holders all are diametrically opposed to tort claimants.  It is in this context that the UCC wishes to employ FTI, in part, to estimate (challenge) tort claims, and for the Debtors to employ Compass, FTI's subsidiary, to estimate (challenge) tort claims.

14.     The Court should order the UCC and the Debtors to pick one—FTI or Compass—and share a financial advisor on the subject of tort claims estimation.  To state the TCC's position differently, the TCC should not be required to fight against two different advisory firms, both of whom are attacking the value of tort claims.

**B.      In the Alternative, the Court Should Determine that Compass is Ineligible to be Employed by the Debtors Due to its Relationship to FTI**

15.     To retain Compass, the Debtors bear the burden of showing that Compass does not "hold or represent an interest adverse to the estate" and is a "disinterested person." 11 U.S.C. § 327(a); *Official Comm. of Unsecured Creditors v. ABC Captial Mkts. Grp. (In re Capitol Metals Co.)*, 228 B.R. 724, 727 (B.A.P. 9th Cir. 1998) ("The applicant bears the burden of proving that the standards for appointment have been met."). For Compass to be "disinterested," it may not "have an interest that is materially adverse to the interest of the estate or any class of creditors by reasons of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C).

16.     Although the phrase "hold or represent an interest adverse to the estate" is not defined under the Bankruptcy Code, courts have interpreted it to mean: (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate. *In re AFI Holding, Inc.*, 355 B.R. 139, 148-49 (B.A.P. 9th Cir. 2006).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17. "A disinterested professional is one that can make unbiased decisions, free from personal interest, in any matter pertaining to the debtor's estate." *First Interstate Bank, N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.)*, 192 B.R. 549, 553 (B.A.P. 9th Cir. 1996). Importantly, courts have interpreted the Bankruptcy Code's requirement of disinterestedness to "cover[] not only actual impropriety, but the appearance of impropriety as well" and have disqualified professionals from employment whose relationship "would even faintly color the independence and impartial attitude required by the Code." *AFI Holding, Inc.*, 355 B.R. at 149, 153 (internal citations and quotations omitted). Any doubt with respect to the existence of a conflict, should weigh in favor of disqualification. *See In re Lee*, 94 B.R. 172, 177 (Bankr. C.D. Cal. 1988).

18. These requirements further the statute's purpose of assuring that professionals employed by the estate devote undivided loyalty to their clients. *See First Interstate Bank, N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.)*, 192 B.R. 549, 554 (B.A.P. 9th Cir. 1996); *see also In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 626 (Bankr. E.D. Cal. 2012) (stating that the "adverse interest" component of § 327(a) and the "material adverse interest" element of the "disinterested person" definition under § 101(14)(C) are "designed to filter out conflicts that may jeopardize a fair and equitable administration of the bankruptcy estate.").

19. The Debtors have not met their burden in demonstrating that Compass's relationship to FTI does not compromise its ability to act as disinterested professional free from conflicting loyalties in these Chapter 11 Cases. Compass is an "affiliate" of FTI under the Bankruptcy Code because FTI is its 100% owner. *See* 11 U.S.C. § 101(2). In addition, the UCC and the Debtors have hired FTI and Compass, respectively, to provide the same services: to analyze the potential liability and damages of tort claimants. Notwithstanding the independence of Compass's and FTI's employees and information technology systems, it seems apparent that FTI can set Compass's corporate policy and oversee its operations. Based on this potential for control and the predisposition for Compass to act in the economic interest of its parent, it is unclear how Compass can demonstrate it does not represent an interest adverse to the Debtors, regardless of FTI's separate corporate existence.

Baker & Hostetler llp
Attorneys at Law
San Francisco

20.     Without support, the Debtors argue that in evaluating Compass's compliance with the requirements of section 327 of the Bankruptcy Code, the Court should consider that the Debtors hired Compass long before the UCC had hired FTI.[2] Whether the Debtors hired Compass first is irrelevant to determining Compass's connections at the time of its proposed employment and the Court should not read such a requirement into the statute. *See In re Plaza Hotel Corp.*, 111 B.R. 882, 891 (Bankr. E.D. Cal. 1990), *aff'd* 123 B.R. 466 (B.A.P. 9th Cir. 1990) (Section 327's requirements apply not only at the time of retention but also throughout the case).

21.     Moreover, the UCC's proposed retention of FTI and the Debtors' proposed retention of Compass are subject to different requirements. Under section 1103 of the Bankruptcy Code, a committee's professionals are not prohibited from simultaneously representing the committee and creditors of the same constituency. *See* 11 U.S.C. § 1103(b); *Adorno & Yoss LLP v. United States Tr. (In re 3DFX Interactive, Inc.)*, No. 07-1240, 2008 Bankr. LEXIS 4702, at *13 (B.A.P. 9th Cir. Feb. 6, 2008) (Section 1103(b) prohibits a professional's dual representation if it "would interfere with counsel's vigorous advocacy for either client, jeopardize counsel's undivided loyalty to either client, or endanger the confidences and secrets of either client."). Section 327 does not permit dual representation by a debtor's professionals. In addition, section 1103 of the Bankruptcy Code, unlike section 327 of the Bankruptcy Code, does not expressly require a committee's professionals to be "disinterested." *Compare* 11 U.S.C. § 327(a) *with* 11 U.S.C. § 1103(b).[3]

22.     Compass, as the Debtors' professional, must satisfy the requirements of section 327 of the Bankruptcy Code, not section 1103. Due to this distinction and the post-petition overlap of work that has already existed to date, the TCC does not believe that the denial of the UCC's employment of FTI would allow the Debtors to employ Compass. As stated in the U.S. Trustee's objection to the FTI Application, these concurrent representations appear to create an actual conflict, or at least create the appearance of a conflict, which should disqualify Compass from representing the Debtor.

---

[2] *See* Initial Compass Application at 14.
[3] However, courts may deny allowance of compensation for a committee's professional who is not disinterested. *See* 11 U.S.C. § 328(c).

Case: 19-30088    Doc# 1860    Filed: 05/06/19    Entered: 05/06/19 15:42:03    Page 7 of 11

**C.** **The Debtors' Failure to Seek the Court's Approval For Compass' Retention Sooner Should Not Be Sanctioned**

23.     According to the Compass Application, Compass has provided professional services to the Debtors after the Petition Date.[4] The Debtors suggest that because Compass was hired through their litigation counsel, section 327 was not invoked, and that the Debtors have only sought to retain Compass now "out of an abundance of caution."[5] However, the timing of the Compass Application shows that the Debtors made a conscious decision not to seek the Court's approval. Notwithstanding the unequivocal requirements of the Bankruptcy Code, the Debtors waited until the Court raised questions concerning the UCC's retention of FTI and its connections to Compass to file the Compass Application. The Court should deny the Compass Application on this ground alone.

24.     The TCC understands that Compass's retention was structured through the Debtors' litigation counsel to protect applicable privileges between Compass and the Debtors. However, it was incumbent upon the Debtors to seek the Court's approval for Compass's retention as soon as Compass agreed to provide post-petition services to the Debtors. *See In re Mahoney, Trocki & Assocs., Inc.*, 54 B.R. 823, 825 (Bankr. S.D. Cal. 1985) (professionals must ordinarily receive court approval of employment before providing services to the estate.).

25.     A professional person within the meaning of section 327 of the Bankruptcy Code "is one who takes a central role in the administration of the bankruptcy estate and in the bankruptcy proceedings." *Blair v. Stratton (In re Blair)*, No. 04-1461, 2005 Bankr. LEXIS 3385, at *11 (B.A.P. 9th Cir. June 20, 2005) (internal citations omitted); *In re Napoleon*, 233 B.R. 910, 913 (Bankr. D.N.J. 1999) (holding that expert witness for the debtor's special counsel was not a professional person under the statute because the expert's services were not essential to the administration of the estate or case). Individuals or entities that provide services without the ability to exercise discretion or of a mechanical nature do not qualify as professionals whose retention must be pre-approved by the bankruptcy court. *Blair*, 2005 Bankr. LEXIS 3385, at *11-12 (holding that an escrow agent was not a professional under section 327 of the Bankruptcy Code because, as a limited

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[4] *See* Initial Compass Application at 14, n.2; Supplemental Compass Application at 5, n.3.
[5] *Id.*

Case: 19-30088     Doc# 1860     Filed: 05/06/19     Entered: 05/06/19 15:42:03     Page 8 of 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1 agent that must strictly comply with the instructions given by the parties, it could not exercise

2 discretion); *see also In re ACandS, Inc.*, 297 B.R. 395, 403 (Bankr. D. Del. 2003) (holding that an

3 entity that had provided claims-processing services for the debtor was a professional whose court-

4 approved retention was required). Importantly, even when payment is to be made from third parties,

5 a professional must obtain the court's approval for the retention. *See In re Boh! Ristorante, Inc.*, 99

6 B.R. 971, 972-73 (B.A.P. 9th Cir. 1989).

7      26.     Courts possess the power to retroactively authorize a professional's employment

8 when the applicant can show both a satisfactory explanation for failing to seek judicial approval of

9 the employment sooner and that the applicant had benefitted the bankruptcy estate in some

10 significant way. *See Atkins v. Wain*, 69 F.3d 970, 974 (9th Cir. 1995). The circumstances justifying

11 *nunc pro tunc* retention must be "exceptional." *Id*. The applicant bears the burden in demonstrating

12 satisfaction of both requirements. *See In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 231 (Bankr.

13 E.D. Cal. 1988).

14      27.     Compass is undoubtedly a "professional person" whose retention must be approved

15 by the Court under the Bankruptcy Code. It is unclear to the TCC why the Debtors only sought to

16 retain Compass once this Court suggested it do so in order to resolve the question of whether the

17 UCC could hire FTI due to its relationship to Compass. In addition, the Debtors have not

18 demonstrated, let alone alleged, exceptional circumstances that would warrant *nunc pro tunc*

19 retention ninety days after the commencement of the Chapter 11 Cases for a professional whose

20 services were known to be needed long before the decision was made to formally seek its retention.

21      **D.**     **Compass's Retention cannot be Approved Absent Full Disclosure of the Scope**
22                     **of Services it is to Provide**

23      28.     The Debtors allege that the attorney-client and attorney work product privileges

24 limit the extent to which the Debtors may disclose the scope of work Compass will provide during

25 the Chapter 11 Cases. In applying for professional employment, the Debtors may not selectively

26 disclose information they deem relevant to their proposed retention of Compass. It is for the Court

27 and parties in interest to make that assessment.

28

Case: 19-30088   Doc# 1860   Filed: 05/06/19   Entered: 05/06/19 15:42:03   Page 9 of 11

29. The disclosure rules imposed by the Bankruptcy Code and Rules are strictly construed. The applicant may not exercise any discretion to withhold information but must let the court and parties in interest determine whether further inquiry should be made before deciding to approve the professional's employment. *See In re Thomas*, 476 B.R. 579, 586 (N.D. Cal. 2012) (stating that an attorney's duty to disclose under the Bankruptcy Code and Rules extends to all facts that may be pertinent to a court's determination of whether it is disinterested or holds an adverse interest to the estate); *In re Condor Sys.*, 302 B.R. 55, 70-71 (Bankr. N.D. Cal. 2003) (requiring same comprehensive disclosure of information from the debtor's proposed financial advisor); *see also In re Sonicblue Inc.*, No. 03-51775, 2007 Bankr. LEXIS 1057, at *34 (Bankr. N.D. Cal. Mar. 26, 2007) ("Estate professionals must make full, candid and complete disclosures of all facts affecting their eligibility for employment.").

30. In the Compass Application, the Debtors alleged that prior to the Petition Date their litigation counsel, Cravath, Swaine & Moore LLP ("**Cravath**"), had retained Compass as its economic consultant to perform consulting work related to the evaluation and analysis of potential damages and losses associated with the Northern California Wildfires. Without any further explanation, the Debtors alleged that the specific services Compass had provided are subject to the attorney-client privilege and the attorney work product doctrine and that subject to Court approval, Compass would be providing the same services to the Debtors, through Cravath, during the Chapter 11 Cases. The TCC respectfully submits that this disclosure is inadequate for the Court and TCC to assess, among other things, whether Compass's services would be duplicative of those already being provided by other estate-retained professionals.

31. With respect to the applicability of the attorney-client privilege, the Debtors have not shown why the privilege trumps their disclosure obligations. *See Raj Kamal Corp. v. Fukushima (In re Raj Kamal Corp.)*, No. 12-1648, 2013 Bankr. LEXIS 5305, at *10 (B.A.P. 9th Cir. Dec. 17, 2013) (holding that the attorney-client privilege does not excuse the disclosures required under section 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure). Nor have the Debtors identified the basis of the privilege, the identity of the parties to whom the alleged privilege applies, or the purpose of the alleged communications. Similarly, the Debtors have

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case: 19-30088    Doc# 1860    Filed: 05/06/19    Entered: 05/06/19 15:42:03    Page 10 of 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    not attached a privilege log that identifies these foundational elements. Although the Debtors'

2    information may be protected by the work product doctrine, the doctrine's protection is limited and

3    may not be available in these Chapter 11 Cases under all circumstances. If the work product

4    privilege applies, the Debtors have not identified the foundational elements for its application.

5                                                    **NOTICE**

6          Notice of this statement will be provided to (i) the Debtors and their counsel; (ii) the Office

7    of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi,

8    Esq.); (iii) the UCC's counsel; (iv) those persons who have formally appeared in these Chapter 11

9    Cases and requested service pursuant to Bankruptcy Rule 2002; and (v) all the Standard Parties, as

10   defined in the Court's *Amended Order Implementing Certain Notice and Case Management*

11   *Procedures entered on March 27, 2019* [Doc. No. 1093]. The TCC respectfully submits that no

12   further notice is required.

13         WHEREFORE the TCC respectfully requests that the Court: (a) require the Debtors and the

14   UCC to share the services of either FTI or Compass with respect to their mutual challenge to tort

15   claims; (b) in the alternative, deny the Compass Application; and (b) grant such other and further

16   relief as the Court may deem just and appropriate.

17

18   Dated: May 6, 2019

19                                                        BAKER & HOSTETLER LLP

20                                                        By:    /s/ *Cecily A. Dumas*
                                                                 Cecily A. Dumas
21
                                                          *Attorneys for The Official Committee of Tort*
22                                                        *Claimants*

23

24

25

26

27

28