WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**DEBTOR'S PRELIMINARY RESPONSE IN OPPOSITION TO MOTION BY THE CITY AND COUNTY OF SAN FRANCISCO FOR DETERMINATION THAT AUTOMATIC STAY DOES NOT APPLY UNDER §362(b)(4) OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY UNDER §362(d)(1)**<br><br>Related to Dkt. No. 1535<br><br>Date: May 9, 2019<br>Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

**Introduction**

Pacific Gas and Electric Company (the "**Utility**"), as debtor and debtor in possession in the above-captioned chapter 11 cases, respectfully submits this preliminary response in opposition to the City and County of San Francisco's ("**CCSF**") Motion, which seeks a declaration that the automatic stay of section 362 of title 11 of the United States Code (the "**Bankruptcy Code**") does not apply to, or, in the alternative, should be lifted from, a prepetition action commenced by CCSF against the Utility at the Federal Energy Regulatory Commission ("**FERC**"). *See* Dkt. No. 1535.

The Utility recognizes that it is subject to a wide range of regulatory obligations and is in no way attempting to shirk those responsibilities while in chapter 11. Nor is the Utility challenging FERC's exclusive jurisdiction over the rates, terms and conditions of tariffs, or contending that this Court should preside over such matters instead of FERC.[1] Indeed, the Utility has not sought to enjoin separate, currently ongoing proceedings pending before FERC that involve, among other things, essentially the same regulatory subject matter that CCSF's Motion seeks leave to prosecute. A preliminary conference in those proceedings is scheduled for May 9, 2019 at 10:00 a.m. EDT. *See* Exhibits A–C hereto (FERC orders terminating settlement procedures, extending time standards, and setting preliminary conference, respectively). Significantly, however, CCSF's Motion concerns an action before FERC that, unlike the other FERC proceedings, was not only initiated via a complaint filed by CCSF, but also seeks damages for prepetition conduct. The FERC proceeding at issue here is thus subject to the automatic stay as a prepetition action commenced by CCSF against the Utility in furtherance of CCSF's pecuniary interests.

Moreover, because the regulatory issues raised in CCSF's complaint are already the subject of other pending FERC proceedings, there is no harm in declining CCSF's request to lift the stay. In addition, the prepetition damages that CCSF seeks may be rendered entirely moot if FERC decides the regulatory dispute in favor of the Utility in the other proceedings. CCSF's damages claims are

---

[1] While the Utility acknowledges FERC's response to CCSF's Motion, *see* Dkt. No. 1831, this preliminary opposition is not intended to address the contentions set forth in that submission. The Utility will provide more fulsome briefing on the issues raised in the Motion and in FERC's response in accordance with any schedule the Court may deem appropriate.

thus no reason to lift the stay, particularly where CCSF may not recover any judgment until the claims administration process—a point CCSF concedes in its Motion. Accordingly, the Motion should be denied in all respects.

**Argument**

CCSF's Motion concerns a proceeding initiated by a complaint that CCSF filed at FERC on January 28, 2019, the day before the Utility filed for chapter 11 protection. *See Complaint, City & Cty. of S.F. v. Pac. Gas & Elec. Co.*, No. EL19-38-000 (F.E.R.C. Jan. 28, 2019) (the "**Complaint Proceeding**").[2] CCSF's complaint seeks: (i) prospective injunctive or declaratory relief to enforce alleged obligations on the grounds that the Utility has implemented an open-access Wholesale Distribution Tariff ("**Tariff**") on discriminatory terms by allegedly failing to provide "secondary" service; (ii) retroactive damages for the purported harms occasioned by these alleged failures to provide non-discriminatory terms; and (iii) any other relief that is "necessary or appropriate" to address the alleged Tariff violations. *See id.* at 1. In short, the Complaint Proceeding seeks relief that, if granted, would redound solely to the pecuniary benefit of CCSF in its capacity as a utility service provider in competition with the Utility in the electricity market, a commercial reality recognized by CCSF in its own pleadings. *See id.* at 2 (recognizing that "PG&E has always served a dual role—both as a competitor of the City and as a provider of wholesale distribution service that the City must use to serve its customers").

The regulatory issues involved in the Complaint Proceeding—whether the Utility has acted discriminatorily and unreasonably under the Tariff by allegedly failing to provide "secondary" service—are among the subjects at issue in separate proceedings at FERC that are currently set for trial early next year (the "**QF Proceedings**"). The Complaint Proceeding, however, departs from the QF Proceedings in two material respects. First, unlike the QF Proceedings—which arose in the context of a quarterly filing submitted to FERC by the Utility pursuant to its regulatory obligations—the Complaint Proceeding is a prepetition action brought by CCSF as a competitor of the Utility seeking to promote its own interests, firmly placing it within the automatic stay's

---

[2] Of course, CCSF was aware that the Utility would be seeking chapter 11 protection given the Utility's announcements preceding the filing.

protections.  *See* 11 U.S.C. § 362(a)(1) (staying "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced" before the filing of a petition for relief).

Second, in addition to declaratory and injunctive relief, the Complaint Proceeding also seeks to recover damages for alleged prepetition harms incurred by CCSF based on the Utility's purported failure to perform under the Tariff.  As such, CCSF's action for damages simply does not fall within the governmental regulatory exception to the automatic stay.  In construing section 362(b)(4) of the Bankruptcy Code, the Ninth Circuit applies two alternative tests—the pecuniary purpose and public policy tests—to determine whether an action falls outside the stay.  Contrary to CCSF's assertions, *see* Mot. at 10, section 362(b)(4) of the Bankruptcy Code only applies if a party seeking its benefit is able to prove that the government action at issue passes *both* of these tests.  *See In re Dingley*, 852 F.3d 1143, 1147 (9th Cir. 2017) ("If the court determines that the government's action is intended either to protect the government's pecuniary interest in the debtor's property *or* to adjudicate private rights, the government regulatory exemption will *not* apply and the automatic stay will be imposed.") (emphasis added).

CCSF is not able to pass *either* test, and section 362(b)(4) of the Bankruptcy Code thus does not except the Complaint Proceeding from the automatic stay.  The Complaint Proceeding fails the pecuniary purpose test because CCSF's alleged injuries rest on claims of discriminatory treatment and associated damages that are specific to CCSF's pecuniary interest.  In short, CCSF's claims are commercial in nature and seek to recover property of the Utility's estate.  CCSF does not even contest this point, and instead argues that "FERC itself has no pecuniary interest in the pending proceedings."  Mot. at 11.  But FERC's interest (or non-interest) in the outcome of the Complaint Proceeding is irrelevant to the question of whether that proceeding is excepted from the automatic stay.  CCSF, not FERC, is the entity that "commence[d] or continu[ed]" the Complaint Proceeding, and CCSF, not FERC, is thus the entity that is subject of the section 362(b)(4) analysis.  The fact that FERC is asked to adjudicate the Complaint Proceeding is of no more moment than if CCSF had asked any other tribunal to adjudicate the dispute.  The Complaint Proceeding is an action for damages, and as such, "is pursued solely to advance a pecuniary interest" of CCSF, with the result

3

that "the stay will be imposed." *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997).

The Complaint Proceeding fares no better under the public policy test. It is undeniable that CCSF principally seeks to adjudicate its private rights by pursuing a declaration of its rights and a damages action. The Complaint Proceeding is, at bottom, an action brought by CCSF in its capacity as an electrical service provider that seeks to vindicate its commercial interests in a broader dispute with one of its competitors. It follows that under either of the *Dingley* formulations, the Complaint Proceeding does not fall within the scope of section 362(b)(4) of the Bankruptcy Code, and is thus automatically stayed.

Nor should the Court lift the stay on the Complaint Proceeding. There is no urgency to move forward with this action now. First and foremost, the regulatory issues in dispute are already set to be litigated in the QF Proceedings at FERC. Moreover, if FERC sides with the Utility on these regulatory issues, then CCSF's claim for damages in the Complaint Proceeding will be moot and continued litigation would have been a pointless distraction and a waste of resources. And as recognized by CCSF itself, if FERC sides with CCSF, then any claim for damages that may flow from that decision "for excessive charges the Utility has previously imposed . . . can and will be determined by this court through its claim procedures." Mot. at 18. Because the regulatory aspects of the Complaint Proceeding are already before FERC in the QF Proceedings, and because any damages that may arise from this dispute would be payable only through the claims process, there is no need to lift the stay here, particularly given the many other claimants whose damages claims are stayed. Judicial economy would be better served by denying stay relief and addressing CCSF's damages claims against the Utility, if any remain, in the normal claims process once FERC resolves the underlying regulatory disputes between the parties, via the QF Proceedings, as is customary in chapter 11. Indeed, doing otherwise would *undermine* judicial economy, as it would virtually guarantee protracted litigation before FERC over a damages claim that may never need to be litigated, with all of the expense and disruption inherent in that process.

In sum, there is no question that the automatic stay applies to CCSF's prosecution of the Complaint Proceeding. Only in the event that FERC finds for CCSF on the regulatory dispute at

4

issue in the QF Proceedings should the Court even consider lifting the stay for litigation of whether and in what amount CCSF may be entitled to damages—although the more appropriate course at that juncture would be to attempt to resolve any such claim through the bankruptcy claims process. In any case, CCSF loses nothing if the Complaint Proceeding remains stayed, as it should be. Permitting litigation of the Complaint Proceeding now, before a bar date has even been set, is premature and places CCSF on an unequal footing with other creditors while achieving no material benefit at this time.

## Conclusion

For the foregoing reasons, CCSF's Motion should be denied in its entirety. Alternatively, the Utility respectfully requests that this Court schedule a final hearing and set a briefing schedule for the Utility to submit a full opposition to CCSF's Motion.

Dated: May 7, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: */s/ Peter J. Benvenutti*
      Peter J. Benvenutti

*Attorneys for the Debtors and Debtors in Possession*