1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4    In Re:                        ) Case No. 19-30088
                                   ) Chapter 12
5    PG&E CORPORATION AND PACIFIC  )
     GAS AND ELECTRIC COMPANY,     ) San Francisco, California
6                                  ) Thursday, May 9, 2019
                         Debtors.  ) 9:30 AM
7    _____ )
                                    APPLICATION OF THE OFFICIAL
8                                   COMMITTEE OF UNSECURED
                                    CREDITORS FOR AUTHORITY TO
9                                   RETAIN AND EMPLOY CENTERVIEW
                                    PARTNERS LLC AS INVESTMENT
10                                  BANKER, EFFECTIVE AS OF
                                    FEBRUARY 15, 2019 [1213];
11
                                    APPLICATION OF THE OFFICIAL
12                                  COMMITTEE OF TORT CLAIMANTS
                                    PURSUANT TO 11 U.S.C. SECTION
13                                  1103 AND FED. R. BANKR. P.
                                    2014 AND 5002 TO RETAIN AND
14                                  EMPLOY LINCOLN PARTNERS
                                    ADVISORS LLC AS FINANCIAL
15                                  ADVISER EFFECTIVE AS OF MARCH
                                    1, 2019 [1134];
16
                                    APPLICATION TO EMPLOY GROOM
17                                  LAW GROUP, CHARTERED AS
                                    SPECIAL EMPLOYEE BENEFITS
18                                  COUNSEL APPLICATION PURSUANT
                                    TO 11 U.S.C. SECTION 327)E_
19                                  AND FED. R. BANKR. P. 2014(A)
                                    AND 2016 FOR AUTHORITY TO
20                                  RETAIN AND EMPLOY GROOM LAW
                                    GROUP, CHARTERED AS SPECIAL
21                                  EMPLOYEE BENEFITS COUNSEL FOR
                                    THE DEBTS EFFECTIVE AS OF THE
22                                  PETITION DATE FILED BY PG&E
                                    CORPORATION [1527];
23
                                    APPLICATION TO EMPLOY AXIOM
24                                  ADVISORS AS GOVERNMENT
                                    AFFAIRS CONSULTANT BY THE
25                                  OFFICIAL COMMITTEE OF

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                               UNSECURED CREDITORS,
EFFECTIVE AS OF MATCH 15,

2      2019 FILED BY OFFICIAL
COMMITTEE OF UNSECURED

3      CREDITORS [1524];

4      APPLICATION OF THE OFFICIAL
COMMITTEE OF TORT CLAIMANTS

5      PURSUANT TO 11 U.S.C. SECTION
1103 AND FED. R. BANKR. P.

6      2014 AND 5002 TO RETAIN AND
EMPLOY DEVELOPMENT

7      SPECIALISTS, INC. AS A
FINANCIAL ADVISOR EFFECTIVE

8      AS OF MARCH 20, 2019 [1461];

9      MOTION FOR RELIEF FROM STAY
FILED BY VALERA REFINING

10     COMPANY-CALIFORNIA [315];

11     MOTION PURSUANT TO 11 U.S.C.
SECTION 363(B) AUTHORIZING

12     DEBTORS TO PAY THE FEES AND
EXPENSES OF SIMPSON THACHER &

13     BARTLETT LLP AS COUNSEL TO
THE INDEPENDENT DIRECTORS OF

14     PG&E CORP. FILED BY PG&E
CORPORATION [1182];

15

       MOTION TO FILE REDACTED

16     DOCUMENT AND TO FILE
DOCUMENTS UNDER SEAL FILED BY

17     VALERO REFINING COMPANY-
CALIFORNIA [1862]

18

19

              TRANSCRIPT OF PROCEEDINGS

20        BEFORE THE HONORABLE DENNIS MONTALI
          UNITED STATES BANKRUPTCY JUDGE

21

APPEARANCES:

22  For the Debtors:          STEPHEN KAROTKIN, ESQ.
                         Weil, Gotshal & Manges LLP

23                       767 Fifth Avenue
                         New York, NY 10153

24                       (212)310-8000

25

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For the Debtors: | THEODORE E. TSEKERIDES, ESQ. |
| | | (Telephonically) |
| 2 | | HONG-AN TRAN, ESQ. |
| | | Weil, Gotshal & Manges LLP |
| 3 | | 201 Redwood Shores Parkway |
| | | Suite 400 |
| 4 | | Redwood City, CA 94065 |
| | | (650)802-3000 |
| 5 | | |
| | For the Debtors: | JANE KIM, ESQ. |
| 6 | | Keller & Benvenutti LLP |
| | | 650 California Street |
| 7 | | Suite 1900 |
| | | San Francisco, CA 94108 |
| 8 | | (415)364-6793 |
| | | |
| 9 | For Office of the United | MARTA E. VILLACORTA, ESQ. |
| | States Trustee: | TIMOTHY S. LAFFREDI, ESQ. |
| 10 | | U.S. Department of Justice |
| | | 450 Golden Gate Avenue |
| 11 | | 5th Floor, Suite 05-0513 |
| | | San Francisco, CA 94102 |
| 12 | | (415)252-2062 |
| | | |
| 13 | For Centerview Partners | SAMUEL A. NEWMAN, ESQ. |
| | LLC: | Gibson, Dunn & Crutcher LLP |
| 14 | | 333 South Grand Avenue |
| | | Los Angeles, CA 90071 |
| 15 | | (213)229-7000 |
| | | |
| 16 | For Tort Claimants' | CECILY A. DUMAS, ESQ. |
| | Committee: | JERRY BLOOM, ESQ. |
| 17 | | (Telephonically) |
| | | Baker & Hostetler, LLP |
| 18 | | 11601 Wilshire Boulevard |
| | | Suite 1400 |
| 19 | | Los Angeles, CA 90025 |
| | | (310)820-8800 |
| 20 | | |
| | For Official Creditors' | GREGORY A. BRAY, ESQ. |
| 21 | Committee: | Milbank LLP |
| | | 2029 Century Park East |
| 22 | | 33rd Floor |
| | | Los Angeles, CA 90067 |
| 23 | | (424)386-4000 |
| 24 | | |
| 25 | | |

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For the City and County of  EDWARD J. TREDINNICK, ESQ.
     San Francisco:              Greene Radovsky Maloney Share &
 2                               Hennigh LLP
                                 4 Embarcadero Center
 3                               San Francisco, CA 94111
                                 (415)981-1400
 4
     For the City and County of  THERESA C. MUELLER, ESQ.
 5   San Francisco:              SUZY HONG, ESQ.
                                 Office of the City Attorney of San
 6                               Francisco
                                 City Hall, Room 234
 7                               1 Dr. Carlton B. Goodlett Place
                                 San Francisco, CA 94102
 8
     For Federal Energy          SHANE HUANG, ESQ.
 9   Regulatory Commission:      Federal Energy Regulatory
                                 Commission
10                               888 First Street, NE
                                 Washington, DC 20426
11                               (202)502-8659

12   For Marina Gelman and       DAVID W. WESSEL, ESQ.
     Mikhail Gelman:             Law Offices of Boris E. Efron
13                               130 Portola Road
                                 Portola Valley, CA 94028
14                               (650)851-8880

15   For Public Employees        LEONARD K. WELSH, ESQ.
     Retirement Association of   (Telephonically)
16   New Mexico:                 Law Offices Of Leonard K. Welsh
                                 4550 California Avenue
17                               2nd Floor
                                 Bakersfield, CA 93309
18                               (661)328-5328

19   For Public Employees        MICHAEL S. ETKIN, ESQ.
     Retirement Association of   (Telephonically)
20   New Mexico:                 Lowenstein Sandler LLP
                                 One Lowenstein Drive
21                               Roseland, NJ 07068
                                 (973)597-2500
22
     For Valero Refining         RICHARD A. LAPPING, ESQ.
23   Corporation:                Trodella & Lapping LLP
                                 540 Pacific Avenue
24                               San Francisco, CA 94133
                                 (415)399-1015
25
```

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
 1    For TURN, The Utility        ROBERT G. HARRIS, ESQ.
      Reform Network:              Binder & Malter LLP
 2                                 2775 Park Avenue
                                   Santa Clara, CA 95050
 3                                 (408)295-1700

 4    For California Large         NORA E. SHERIFF, ESQ.
      Energy Consumers             Buchalter
 5    Association:                 55 Second Street
                                   Suite 1700
 6                                 San Francisco, CA 94105
                                   (415)227-0900
 7
      For Northern California      MARK GORTON, ESQ.
 8    Power Agency:                Boutin Jones, Inc.
                                   555 Capitol Mall
 9                                 Suite 1500
                                   Sacramento, CA 95814
10                                 (916)321-4444

11

12

13

14

15    Court Recorder:             Jane Galvani
                                   United States Bankruptcy
16                                 Court

17
      Transcriber:                 COLIN RICHILANO
18                                 eScribers, LLC
                                   7227 N. 16th Street
19                                 Suite #207
                                   Phoenix, AZ 85020
20                                 (973)406-2250

21    Proceedings recorded by electronic sound recording;
      transcript provided by transcription service.
22

23

24

25
```

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    SAN FRANCISCO, CALIFORNIA, THURSDAY, MAY 9, 2019, 9:31 AM

2                                -oOo-

3              (Call to order of the Court.)

4              THE CLERK:  The matter of PG&E Corporation.

5              THE COURT:  Before we turn to the calendar, let me add

6    a couple housekeeping matters for you.  And we're going to

7    change -- in the next day or two, whenever I get to it, my

8    staff and I, we're going to make a change to the case

9    management order in one specific matter.  And that is, as those

10   of you from out of the area know, the Northern District has had

11   a procedure in forever that oppositions to motions from relief

12   of stay are not required prior to the hearing.  And some of you

13   who -- in particular debtors' counsel, committees' counsel --

14   know that in recent times, I ask for at least a preliminary

15   statement of opposition on a couple of motions.

16             So I'm going to issue a change to the case management

17   order that will apply to the debtors and the two official

18   committees, not to anyone else, and ask that if you have a

19   motion -- if you have an opposition to a motion for relief from

20   stay, you file a response five days prior.

21             Now, it will be treated like a preliminary hearing,

22   and whether I act on it or not remains to be seen.  And for

23   anyone else, I'm just going to leave the rule in effect.  Most

24   of the motions for relief from stay are the debtors'

25   responsibility, in any event.  But it's just with the calendars

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    being as busy as they and the crowds that they are, I simply

2    need more time to be able to anticipate oppositions.

3        Another thing that's a matter of -- it's not a big

4    deal, but it's important to me to help in doing my job, since

5    we've had the case on file, all of the pleadings have been

6    filed by local counsel, Ms. Kim and Mr. Benvenutti.  I'd like

7    to have going forward, from the debtors' side, Mr. Karotkin,

8    that that lawyer principally responsible for the matter that's

9    going to be on the calendar at least have his or her name on

10   the pleading, their signature.  I don't -- it can be the usual

11   type of signature.

12       And I'm not trying to discount Ms. Kim or Mr.

13   Benvenutti's role.  If you want to leave them on alone, they

14   can make the argument.  I just -- the point is when I have a

15   point that I want to make, I like to know who's the author

16   ahead of time.  And that cuts both ways.  If I want to be mean

17   about it and critical, I'll take it out on the author.  And if

18   I want to be complimentary, I want to give props where they

19   belong.

20       So -- and it's not absolute.  If attorney A has done

21   the work, but for some other reason attorney B is going to be

22   presenting the argument for any other reason, I'm not going to

23   make a big deal of it.  And as I say, this is not a demotion of

24   Ms. Kim or Mr. Benvenutti; they're more than welcome to present

25   arguments.  But it's not my place to tell the debtors' counsels

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    who and what law firm is supposed to be on something.  So

2    that's not a big deal, but --

3         MR. KAROTKIN:  Can we get some insight first as to

4    whether you're going to be nice or not nice about it before we

5    sign our names?

6         THE COURT:  I won't scold you.  Remember, I was blamed

7    for scolding you once when I really didn't scold you.  You

8    might have felt like the scoldee, but I wasn't the scolder.  So

9    well, I'll tell you what, Mr. Karotkin:  the answer is just

10   always say the right thing.

11        The third thing that I want to make -- this is

12   probably a plea for mercy.  Some of you are, no doubt, blessed

13   by staffs of thousands of people helping you.  I have two law

14   clerks and two courtroom staff who are right in front of me,

15   and we are it.  We are the total team.  And on a couple of

16   matters, I have recruited help from the clerks of other judges

17   for specific matters.

18        But one of the things that we're kind of squeezed on

19   in some of these matters is when there are extensions of time

20   as we come up to a hearing.  And I don't want to be negative

21   about this.  If the committee -- and I think recently the

22   creditors' committee and the U.S. Trustee exchanged

23   stipulations to extend the time to do something, and I don't

24   want to discourage that or sound like I think that's a bad

25   idea.  It's actually constructive, particularly if there's a

PG&E Corporation and Pacific Gas and Electric Company

1    good result.  The one I have in mind, I presume it got resolved

2    because the U.S. Trustee didn't take advantage of the extended

3    time to object and didn't.

4         But I'm simply going to tell you I'll continue to

5    honor those stipulations, but I may just have to pass the

6    matter over to the next calendar or defer it.  I'd rather not

7    do that because a lot of you travel, a lot of you prepare, we

8    prepare.  But if I'm encouraging you to work things out and I

9    get something twenty-four hours or thirty-six hours before the

10   hearing and it's not something routine, I just don't always

11   have the time for it.  We are somewhat busy, you can imagine,

12   and we want to continue to do it that way.

13        The last thing is simply a comment.  We have on the

14   calendar -- we had on the calendar today motions for the

15   retention of FTI and Compass.  And for those of you who know --

16   that don't know, the parties have stipulated to put that over.

17        So I'm just going to make a comment about it -- two

18   comments.  I believe in the tort committee position on that

19   motion there was a statement made consistent with what one of

20   the counsel -- perhaps from the U.S. Trustee's office; I don't

21   remember -- discussed with me at a private hearing about the

22   term "affiliate" and what is the consequences of being an

23   affiliate.

24        And it occurred to me afterwards that it might be

25   helpful to read the statute, and I did read the statute.  And

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    "affiliate" applies to the debtor.  And to me, any issue that

2    relates to two entities that are not the debtor, at least the

3    statutory definition of affiliate doesn't seem to apply.

4         Now, is that a big deal?  No, it's not a big deal and

5    it's not going to influence my ruling one way or the other.

6    But here's where I want some help on at the next time around,

7    whether it just be thought argument or policy considerations.

8    And that is the following:  we have a roomful of lawyers, some

9    of us used to be lawyers, and lawyers are advocates for

10   clients.  And so therefore, the conflict rules are pretty clear

11   about representing an adverse interest.  We know it, we live

12   it, we deal with it in the Bankruptcy Code and in our

13   professional lives.

14        But when I apply that to something like a professional

15   organization hired to make an analysis of fire damage claims,

16   or damage claims, or things of those nature, I start to wonder

17   whether it really is adversarial.  And so what that makes me

18   think about -- and I don't want to turn this into a debate

19   today; I just want it to be on people's minds -- is, well, if

20   FTI is providing analysis or Compass is providing analysis, are

21   they adversaries?  Are they adverse to one another?  If the

22   purpose of the exercise it to get to the truth, rather than be

23   what an advocate has to do -- I'm not suggesting that advocates

24   ignore the truth, but sometimes they emphasize different

25   things -- I don't know how adversarial it is.

PG&E Corporation and Pacific Gas and Electric Company

1    And I think about this case, and comments were made

2    yesterday in the discovery dispute that at some point down the

3    road there may be a more expansive analysis -- and it might

4    involve the Court, might involve the parties -- certainly would

5    involve the parties -- on the subject of claims estimation.

6    And I start to think, well, would I have one set of experts on

7    one side of the courtroom saying the damages are X and another

8    set of experts on the other side saying the damages are Y?  And

9    I don't imagine that that's what ought to be happening.  And if

10   that is what the parties think is going to happen, then that's

11   fine.  But think about what we're talking about.

12   We had been told from the outset that this is a

13   solvent estate, and if that's not the case, then some other

14   consequences may follow.  But if there's going to be a

15   consensual -- or not a consensual -- if there's going to be a

16   plan that leaves the estate solvent, then isn't the issue not

17   to compete on different allocations or different amounts of

18   damages?  Because the issue to me is who are the claimants.

19   And I think if there are -- and we know there are

20   countless real claimants in this case, but there might be some

21   not real claimants.  And that would be an issue, for example,

22   if there's a claim that should be defeated not because of the

23   nature of the injury suffered by the victim, but rather that

24   the person isn't even a victim at all, that's a different

25   issue.  But that's much broader, I mean, a more specific

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    question in terms of the inquiry.

2           So I'm going to end this observation by simply saying

3    that as I think about, on the one hand Compass, on the other

4    hand FTI, whether they continue to serve their clients as their

5    particular clients want them or whether I have to sustain an

6    objection by the U.S. Trustee or the tort committee or anyone,

7    that's not the point.  The point is what is the purpose of the

8    Court when it's time to look at these big questions?  Are these

9    experts more like truth-seekers, or advisors to the Court, or

10   are they more like advocates?

11          I don't think they're more like advocates in this case

12   because I -- again, if one side says, well, the damages are X

13   billion dollars and the other side says well, the damages are X

14   plus billion dollars, therefore what?  If the ultimate result

15   is the creditors are going to be paid, then it shouldn't make a

16   difference.

17          So I'll leave it at that, and I don't want any debate

18   today.  When you are preparing for the next time around, if

19   there's no resolution of the FTI-Compass engagement

20   consensually, I'd like at least, let's say, five days before

21   the hearing that the committee, the tort committee, the

22   creditors' committee, the debtor, and the U.S. Trustee's

23   certainly welcome to weigh in on this.  I'm not inviting

24   everyone to weigh in on it, but I'd like some help on how that

25   should influence my thinking, not only on the particulars of

PG&E Corporation and Pacific Gas and Electric Company

1   the engagement of one or the other of those two professionals,

2   but on just the conduct of what is the purpose of this kind of

3   an analysis that has to be made?

4           So with that, I will conclude.  And Mr. Karotkin, I

5   believe you said you wanted to start with the relief from stay

6   matters today, right?  So are we sticking with that?

7           Oh, Ms. Kim?  You signed the pleadings, I guess you

8   can speak.

9           MS. KIM:  Thank you.  For the record, Jane Kim, Keller

10  & Benvenutti, on behalf of the debtors.  Your Honor, because

11  of, as you mentioned, the Compass and FTI retention

12  applications late -- got pushed off, continued, to the next

13  hearing --

14          THE COURT:  Right.

15          MS. KIM:  -- all of the remaining retention

16  applications, there are six of them --

17          THE COURT:  Uh-huh.

18          MS. KIM:  -- are unopposed.  And so we kind of figured

19  that we'd shuffle it around a little bit since the relief from

20  stay and the TURN ratepayer committee motion are both --

21          THE COURT:  Contested.

22          MS. KIM:  -- contested.  So we would maybe try to --

23          THE COURT:  So you want me to do the retention?

24          MS. KIM:  I think yes.

25          THE COURT:  Okay.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MS. KIM:  But actually, before we do that if I could

2     just make one logistical comment to --

3          THE COURT:  Sure.

4          MS. KIM:  -- the housekeeping issues that you

5     identified?  Happy to not be the lawyer who's signing the

6     pleadings.  Under the local rules, in order to e-file with a

7     digital signature for lawyers who are not ECF-registered in

8     this court, we're supposed to get scanned copies of their

9     physical signatures, which as you probably can imagine gets a

10    little bit cumbersome with the amount of papers that are

11    involved.

12         THE COURT:  Well, but it doesn't have to be for every

13    pleading.  I mean, if -- let's use Mr. Karotkin as an example.

14    If he's going to be signing the next fifteen things, I mean,

15    I'm not going to make an issue if -- I mean, if you --

16         MS. KIM:  So it's okay --

17         THE COURT:  He's been admitted as a pro hac vice.

18         MS. KIM:  Pro hac, yes.

19         THE COURT:  And you are, as his cocounsel, are

20    representing that you are aware of, or you have -- there is --

21    we can attribute this to you and your cocounsel -- are in

22    control, then, of the original.  I'm not going to question

23    that.

24         MS. KIM:  Okay.

25         THE COURT:  Okay?  But the issue really is nothing

PG&E Corporation and Pacific Gas and Electric Company

1    more.  I like -- and with the volume of pleadings such, I'm not

2    making a list of who split the infinitive and who said the

3    wrong thing; I just want to have the face that I'm having the

4    conversation with.  Because you know who you're talking to.

5         MS. KIM:  Yep.  I'm happy to not be on every single

6    one of these pleadings, so thank you, Your Honor.  So --

7         THE COURT:  Well, no.  You can let Mr. Benvenutti take

8    the tough one.

9         MS. KIM:  You know, I think he would be fine not being

10   the lawyer signing all the pleadings either.

11        So there are, as I mentioned, six retention apps --

12        THE COURT:  Uh-huh.

13        MS. KIM:  -- applications that are still on the

14   agenda.  There are two for the debtor, filed by the debtors,

15   two filed by the unsecured creditors' committee, and two filed

16   by the tort claimants' committee.

17        THE COURT:  Yeah, I just had a couple questions for

18   all of them; I have no issues.

19        MS. KIM:  Sure.  So I don't know if you want to take

20   them all at once, or for the debtors --

21        THE COURT:  I can go right through the list if you

22   don't mind.  I'll just go --

23        MS. KIM:  That is fine with me.

24        THE COURT:  One other comment.  I'm not sure -- I'll

25   let you and Mr. Karotkin decide the sequence when we get past

PG&E Corporation and Pacific Gas and Electric Company

1    the retention.  We have CCSF, Valero, Gelman, and TURN.

2          MS. KIM:  The ratepayer, yes.

3          THE COURT:  When we come to TURN, I'm going to make

4    some loose time allocations and suggest that for TURN and its

5    counsel, no more than about thirty minutes with some time to

6    reserve, and other people who are joining TURN can add on to

7    whatever Mr. Harris makes by way of his opening comment.  And

8    similarly from the other side, from the debtor, the U.S.

9    Trustee, and the committee, I'd like to just say divide up the

10   thirty minutes.

11         I've read the briefs.  You well know that I know the

12   issue.  And so no one's going to be prejudiced by not having

13   three hours to make the argument.  So I'll leave to your side

14   to pick the sequence of the four.

15         I'll go down the list.  On Centerview, Centerview was

16   carried over.  Does the U.S. -- Ms. Villacorta is the U.S.

17   Trustee satisfied with the disclosures that were made by

18   Centerview?

19         MS. VILLACORTA:  Okay.  So good morning, Your Honor.

20   Marta Villacorta on behalf of the United States Trustee.  So

21   just for the record, we have had discussions with Centerview,

22   and Centerview has narrowed its list of confidential clients.

23   And the remaining clients on the confidential list appear to be

24   clients that, if disclosed, might affect the client's business

25   as well as people may wonder why did they retain Centerview?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      We also conducted a public search to confirm that

2 these entities are, in fact, confidential.  And I've discussed

3 with Mr. Newman that it is generally important to be careful to

4 make sure that the confidential list is as narrow as possible.

5      THE COURT:  And believe it is.

6      MS. VILLACORTA:  Yeah.  So we've been working with

7 Centerview on this, and we appreciate their cooperation.

8      THE COURT:  So do you withdraw the objection?  I mean,

9 you're satisfied I should sign the order?

10      MS. VILLACORTA:  I'm satisfied.  Yeah.

11      THE COURT:  Okay.

12      MS. VILLACORTA:  Just one thing that I'd like to note

13 for the record.  So we actually received a revised proposed

14 order this morning, and I'd like the opportunity to review it

15 and consult with my client.  So --

16      THE COURT:  The only other comment that I have is -- I

17 think this is was carryover that I raised, the question about

18 not having the indemnity for negligence.  I assume that that

19 was acceptable to Centerview, right?  Mr. Newman?

20      MR. NEWMAN:  Yes, Your Honor.

21      THE COURT:  Yeah, okay.

22      MR. NEWMAN:  That was actually the reason for the

23 revised proposed order.  We've included language to address

24 that, Your Honor.

25      THE COURT:  Then, in that case, I will --

PG&E Corporation and Pacific Gas and Electric Company

1    MR. NEWMAN:  I have a copy of it with a redline if

2  you'd like to see it.

3    THE COURT:  That's okay.  I don't want to take time

4  with that.  I will approve it subject to the U.S. Trustee

5  signing off on the form of order.  And then you just upload the

6  order with the U.S. Trustee's sign-off on it, and I'll sign the

7  order.

8    MR. NEWMAN:  Will do.

9    THE COURT:  Okay.

10    MR. NEWMAN:  Thank you.  I should mention for the

11  record, I just got an email moments before I came up here from

12  the tort committee who had a question about whether the

13  language that we'd included was acceptable.  So I would just --

14  just in an abundance of caution, you should include the tort

15  committee's --

16    THE COURT:  Sure.

17    MR. NEWMAN:  -- sign-off to make sure that --

18    THE COURT:  Sure.

19    MR. NEWMAN:  -- language is acceptable to them.

20    THE COURT:  That's fine.  No problem.

21    MR. NEWMAN:  Thank you.

22    THE COURT:  Okay, got that out of the way.

23    Lincoln Partners, I'll take Lincoln Partners and DSI

24  together.  And I simply want to note -- and this goes to my

25  comment about knowing who the author is -- Ms. Dumas' the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   author of the late filing, and I want to give her credit and

2   her client credit. I thought that, on her behalf and on behalf

3   of DSI and Lincoln, the response and the submission was very

4   informative in terms of the methodology that the committee and

5   the committee's chair went through to make the decision. I

6   found it very helpful and appreciate the diligence with which

7   they went about that, and I have no problems approving the two

8   new applications for DSI and Lincoln, with that observation.

9           MS. DUMAS: Thank you, Your Honor.

10          THE COURT: So do you want to say anything? You don't

11   need to say anything.

12          MS. DUMAS: No, no, no. I will, I will to give credit

13   where credit's due. Since Your Honor thought it was a helpful

14   brief, Mr. Rose was the author.

15          THE COURT: How come your name is on it?

16          MS. DUMAS: I was simply the signatory.

17          THE COURT: In that case --

18          MS. DUMAS: Had you not liked it, sir --

19          THE COURT: -- there was a split infinitive that I'll

20   overlook.

21          Next is I'll take Groom. I don't know if anyone's

22   here or on the phone from Groom. I have just one slight

23   problem with the Groom application. The application makes

24   reference to an engagement letter, but in fact the application

25   attaches what I assume is a PG&E standard form for employment

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  of counsel.  It has all the usual rules that I'm used to seeing

2  in those.  And if there is a separate rule of engagement, I

3  need a declaration from Mr. Levine that sets that forth.  If

4  there isn't one, he can say there isn't one.

5          And then the only other comment is, again, not

6  something I want to get bogged down on except that the Groom

7  Law Group is a specialist in the other end of the country, and

8  they aren't familiar with the practice here, but the statement

9  was made on page 3 of the Groom application that -- let me find

10 the statement that I was focusing on.  It was made -- which I

11 would expect from any large law firm or other professional:

12 "The debtors, however, have numerous relationships and

13 creditors.  Consequently, although every reasonable effort has

14 been made to discover and eliminate the possibility of any

15 conflicts, including the efforts outline in paragraphs 11 and

16 12, Groom is unable to state with certainty" -- et cetera, et

17 cetera.  Well, paragraph 11 and 12 don't tell me much.

18         So I want to get -- I will tentatively approve the

19 Groom application, but I want a supplemental declaration from

20 Mr. Levine that at least explains a little bit more about what

21 did he mean when he said that.

22         He also, in one other comment, there's a statement

23 made in the Groom application that -- except as disclosed in

24 the application the payments that have been made, the pre-

25 petition payments have been made to his law firm, and there's

PG&E Corporation and Pacific Gas and Electric Company

1   nothing that explains that.

2          So again, I don't suggest that if there were payments

3   that were made before bankruptcy that that is a disqualifier,

4   nor do I assume that Mr. Levine actually is going to file a

5   declaration saying that he has a horrible conflict.  So but I

6   want the record to be such that it clarifies.  So for my

7   purposes, I will treat this as tentatively granted, and I'll

8   look forward to a supplemental declaration from Mr. Levine

9   regarding the points that I made.  I don't need further comment

10  about that.

11         Next is Axiom.  I'm going to assume that --well, the

12  debtor and the debtors' counsel haven't said a word, so the

13  debtor doesn't object to a fair amount of money being paid per

14  month to Axiom and the services it's going to render to the

15  estate.  And so therefore, I'm not going to second-guess that.

16  This might -- I don't know whether the tort committee is going

17  to be making a similar request, and I'm not going to worry

18  about that for now.

19         The only other comment is I believe the Axiom

20  application still has the same kind of problem that I asked to

21  be excluded from some of the other law firms' applications I

22  have already approved:  that is I don't want to have it in the

23  finding -- or excuse me, in the order a finding as to no

24  adverse interest and disinterested.  I just want the

25  representations that are made that are consistent with it.

PG&E Corporation and Pacific Gas and Electric Company

1    That's all.

2          So you're about to respond?  You don't have to say

3    anything.

4          MR. BRAY:  I'll say nothing then.  Thank you.

5          THE COURT:  Okay.  So I'll -- okay.

6          The final one I have is Simpson Thacher.  Again, I

7    compliment the U.S. Trustee for bird-dogging this one.  It's an

8    unusual application because I can't recall an application that

9    gets bifurcated into coming in under two different rules.  But

10   I understand the procedure and understand why it came to be.

11   And Ms. Villacorta, I compliment you and your office for

12   staying on top of this and --

13         MS. VILLACORTA:  Thank you.

14         THE COURT:  -- bird-dogging it.  And I will approve

15   that without any discussion.

16         All right.  So --

17         MR. ETKIN:  Your Honor?

18         THE COURT:  Yes, on the phone?

19         MR. ETKIN:  Your Honor, sorry to interrupt.  This is

20   Michael Etkin on the phone --

21         THE COURT:  Yes, sir.

22         MR. ETKIN:  -- on behalf of the Public Employees

23   Retirement Association of New Mexico.

24         THE COURT:  Yes, sir.

25         MR. ETKIN:  We filed a reservation of rights, and I

                PG&E Corporation and Pacific Gas and Electric Company

1    just didn't want that to be sitting in limbo.  I think it's

2    reflected in the agenda.

3               THE COURT:  Yes, it is.  I didn't --

4               MR. ETKIN:  Our --

5               THE COURT:  I didn't comment because I regard it as a

6    reservation of rights.  But go ahead, say what you wish.

7               MR. ETKIN:  Yeah.  We actually -- I apologize.  Can I

8    be heard for just thirty seconds, Your Honor?

9               THE COURT:  Yes, sir.

10              MR. ETKIN:  Our primary concern in filing the

11   pleading, Your Honor, was the original motion was a little

12   unclear as to where directors and officers liability insurance

13   was going to kick in.  And we are obviously very concerned

14   about that.

15              Just by way of quick background, we're the lead

16   plaintiff in pending securities litigation involving the

17   debtors.

18              We see by the changes that this is now going to --

19   these applications are going to be teed up through the interim

20   compensation order.  And again, thanks to the U.S. Trustee for

21   that; that was a concern.  And there's also new language in

22   there regarding a reservation of rights with respect to the D&O

23   insurance.  So I don't think the D&O insurance is implicated by

24   this application at all, and that'll have to be done

25   separately.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    So those changes actually dealt with the concerns that
2    we raised in our reservation of rights.  And I just wanted to
3    make sure I put that on the record.

4    THE COURT:  Okay, Mr. Etkin.  That's fine.  And you
5    can reserve rights, and the other side is reserving rights, and
6    everything's fine.  We're good to go.  And if there's a problem
7    down the road you've reserved your rights.

8    I don't mean to imply that everybody in the case has
9    to reserve their rights, but at least you've made it clear in
10   terms of this motion, so we'll leave it at that.

11   So Mr. --

12   MR. ETKIN:  Thank you, Your Honor.

13   THE COURT:  So is there anyone in court or on the
14   phone that wants to be heard on any of the retention
15   applications that are being dealt with today or that are on the
16   calendar for today?  Okay.

17   Mr. Karotkin, we're back to you.  What's your pleasure
18   on the action items?

19   What sequence do you want to do?

20   MR. KAROTKIN:  Your Honor, I think the CCSF, the stay
21   motion, and Mr. Tsekerides from my office is on the phone to
22   handle that.

23   MR. TSEKERIDES:  Good morning, Your Honor.  Ted
24   Tsekerides from Weil, Gotshal for the debtors.

25   THE COURT:  Good morning.  I guess it's good afternoon

(979) 799-9009 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  your time, Mr. Tsekerides.  Or are you on --

2          MR. TSEKERIDES:  It is, but I think it --

3          THE COURT:  Or are you in China or somewhere?  You

4  were somewhere else before, right?

5          MR. TSEKERIDES:  I was in Japan, but I'm back.

6          THE COURT:  Mr. Tredinnick, good morning.

7          MR. TREDINNICK:  Good morning, Your Honor.  Edward

8  Tredinnick of Greene Radovsky Maloney Share & Hennigh on behalf

9  of the City and County of San Francisco.  And also in the

10  courtroom is Ms. Theresa Mueller and Suzy Hong of the city

11  attorney's office --

12          THE COURT:  Good morning.

13          MR. TREDINNICK:  -- who head up the city's energy

14  team.

15          THE COURT:  So a question I had for you is the defense

16  or the opposition says that this is really all about money on

17  the third -- the final one, the most recent proceeding that

18  that city started, and that everything else is all rolled up in

19  the existing QF litigation.  Is that -- do you agree with that?

20          MR. TREDINNICK:  No, Your Honor.  The QF, the

21  quarterly filing proceedings are specific proceedings relating

22  to specific applications that have taken place where the PG&E

23  is required, under a separate provision of the Federal Power

24  Act, to file these quarterly filings where there has been a

25  service agreement that has been put in place for a specific

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    application.

2          The city has a very short period of time to protest

3    those.  There are approximately four that are still pending,

4    and about three of those -- and three of those have to do with

5    the primary, secondary issue, that is also part of the

6    complaint that has been filed.

7          The complaint is a more broad --

8          THE COURT:  The more recent one, the one you've just

9    filed, just before the petition.

10          MR. TREDINNICK:  The one that was just filed.

11          THE COURT:  Yeah, I can't keep track of these numbers.

12          MR. TREDINNICK:  Yeah, I'm sorry, Your Honor.  The

13    2019 complaint.

14          THE COURT:  Right, right.

15          MR. TREDINNICK:  The 2019 complaint deals directly

16    with all of the other applications that the city has been

17    attempting to get service from but has unable to get an

18    appropriate service from PG&E.  And so that is approximately

19    thirty or more applications that are detailed in Ms. Hale's

20    (phonetic) declaration and including, on a going forward basis,

21    was getting some resolution on this primary, secondary issue,

22    and the proper application of the wholesale --

23          THE COURT:  That's not a -- I mean, that's not a

24    measure of damages.  That's a measure --

25          MR. TREDINNICK:  No.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  That's a determination of whether the

2    utility owes the city this lower level, whatever you call it,

3    second tier.

4    MR. TREDINNICK:  If I might make just a statement on

5    the issue of these damages, these are not really damages.  They

6    are a request for a refund --

7    THE COURT:  Well --

8    MR. TREDINNICK:  -- based on --

9    THE COURT:  -- some people would --

10    MR. TREDINNICK:  Well, it's a money --

11    THE COURT:  -- consider that damage.

12    MR. TREDINNICK:  Yeah, it's a --

13    THE COURT:  Well, let's put it this way:  if there's

14    no bankruptcy and you win, what do you get?  Do you get a

15    check?  A credit?

16    MR. TREDINNICK:  A credit.

17    THE COURT:  Well, but you get the dollar equivalent,

18    right?  I mean, you do get a money recovery, even if it's just

19    a credit.

20    MR. TREDINNICK:  If FERC makes the determination that

21    PG&E has improperly administered the wholesale distribution

22    tariff --

23    THE COURT:  Uh-huh.

24    MR. TREDINNICK:  -- there could be a determination

25    that the cost that the city had to incur because of that

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    application could be refunded back to them.

2         THE COURT:  Right.

3         MR. TREDINNICK:  That is a dollar --

4         THE COURT:  Okay.

5         MR. TREDINNICK:  We concede that that is a dollar

6    issue.

7         THE COURT:  Okay.  But do you concede that if that

8    happens, you're back here to determine --

9         MR. TREDINNICK:  Absolutely.

10        THE COURT:  -- whether you can recover it.  I mean,

11   you --

12        MR. TREDINNICK:  There's no question about that.

13        THE COURT:  So --

14        MR. TREDINNICK:  And the city has no issue with that.

15        THE COURT:  Much like any other kind of claim for

16   money.  If I've got you right, and Mr. Tsekerides might take a

17   different view, but your position is that you have asserted

18   rights for the city -- a whole bundle of rights, but the one

19   that we're focusing on for the 2019 is that Utility did

20   something improper or incorrect, and that if FERC agrees, the

21   recovery including -- including various remedies, is a monetary

22   recovery of some sort.  Right?

23        MR. TREDINNICK:  Right.

24        THE COURT:  Okay.  And if we get to that point, then

25   you're back in line.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. TREDINNICK:  We'll file a claim for that amount.

2          THE COURT:  Okay.  Maybe you'll have a claim, maybe

3  you're entitled to offset.  You'll maybe do something, but the

4  automatic stay will apply.

5          Well then, do you concede then, at least on this

6  issue, that the company's right, that this is governed by the

7  stay?  This is not a 362(b)(4) exception?

8          MR. TREDINNICK:  The enforcement of any recovery --

9          THE COURT:  How about the determination of it?  I

10  mean, this -- you're doing --

11          MR. TREDINNICK:  I believe that the determination --

12          THE COURT:  The city is doing it for itself; it's

13  doing it for its own fiscal outcome, right?

14          MR. TREDINNICK:  I don't believe that the

15  determination should be stayed.  I believe that the enforcement

16  of any determination should be stayed.

17          THE COURT:  No, no.  But what I'm asking you is a

18  different question.  Your motion says determine that there's no

19  stay, or if there is stay, give me a relief from stay.  I'm

20  hearing from the utility, at least, that there is a stay.  This

21  isn't a police power exception.  This is an attempt by the city

22  to recover an economic recovery for its own account, and

23  therefore the stay applies.  And they want me to leave the stay

24  in effect; you want me to vacate the stay.  I'm just asking if

25  you agree to that analysis.

PG&E Corporation and Pacific Gas and Electric Company

1          If you go home with a winner today, you're a winner,

2   right?

3          MR. TREDINNICK:  Um-hum.

4          THE COURT:  But if I agree that the stay applies but

5   grant relief from stay up to the point of any recovery, that's

6   really what you want to do.  I mean, you don't care how you get

7   there.

8          MR. TREDINNICK:  I don't -- no, I don't.

9          THE COURT:  Well, you see --

10         MR. TREDINNICK:  Well, I believe that there's a reason

11  to have a determination that the stay does not apply --

12         THE COURT:  Why is that?

13         MR. TREDINNICK:  -- to these types of proceedings.

14         THE COURT:  Well, why do you think it's important?  If

15  I just say there is no stay, but if there is it's modified, why

16  isn't that sufficient?

17         MR. TREDINNICK:  For these --

18         THE COURT:  So when your cocounsel goes before the

19  FERC commissioners and the hearing examiners and all the people

20  you have to go through the drill, nobody says, wait a minute;

21  doesn't the bankruptcy court have something to say about

22  letting us go forward with this?  I mean --

23         MR. TREDINNICK:  I agree.  For our purposes, how we

24  get there is not a particularly --

25         THE COURT:  Well, I'm not trying to trap you.  I'm

PG&E Corporation and Pacific Gas and Electric Company

1  trying to -- I mean, look.  The parties are familiar with this

2  case law.  And again, one of the decisions that's cited was my

3  decision that was ultimately affirmed by the Court of Appeals.

4  But then this Dingley case, the way the Dingley case came out,

5  the debtor's counsel believed that Dingley has -- that both of

6  these tests have to be satisfied.

7          I'm of the view that I don't have to decide that if I

8  grant you relief from stay and you can see that that's good

9  enough.  Now, if you want me to -- if I have to make the

10  decision there is no stay, then I have to make the second

11  inquiry, and -- you follow me?

12          MR. TREDINNICK:  Yes.

13          THE COURT:  Okay.  And so I'm really -- so if I -- I'm

14  trying to put it a different way.  Do I need to make the

15  decision, if I'm persuaded that if there is a stay you should

16  get relief, at least up to the point of recovery?

17          MR. TREDINNICK:  I don't think that's -- I don't think

18  you necessarily need to make that decision.

19          THE COURT:  Well, one of the things that was confusing

20  about this -- again, this is a rather subtle issue for us

21  bankruptcy people -- is the United States FERC, through

22  counsel, they argue that the 362(b)(4) operates or lets FERC

23  proceed, and you are arguing and the debtor argues, no, the

24  analysis here is who's governed by it or exempted from it, and

25  it's the city.

PG&E Corporation and Pacific Gas and Electric Company

1    The city, if the stay applies -- I mean, let me put it
2    this way.  If the city's trying to recover a monetary recovery
3    for its own account, the debtors' argument is there is a stay,
4    and FERC's argument that FERC is exempt from the stay is
5    irrelevant.  You have to measure it from the point of view of
6    the city, not from the point of view of FERC.  Did you not pick
7    that up in their papers?
8        MR. TREDINNICK:  But I disa -- I don't know whose
9    papers you're talking about now.
10       THE COURT:  Well, both.
11       MR. TREDINNICK:  Okay.
12       THE COURT:  Well, let's try it a different way.  Is
13   FERC stayed if it needs to proceed in responding or dealing
14   with this application?
15       MR. TREDINNICK:  Which application are we talking
16   about now?
17       THE COURT:  2019.
18       MR. TREDINNICK:  The 2019?
19       THE COURT:  Um-hum.
20       MR. TREDINNICK:  The debtor has taken a position that
21   they're stayed.  They filed a notice --
22       THE COURT:  You're stayed, right?  You're stayed from
23   prosecuting.
24       MR. TREDINNICK:  Well, I think that's --
25       THE COURT:  Well, I tell you what.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1     MR. TREDINNICK:  We're splitting hairs a little bit

2  about it.

3     THE COURT:  Mr. Tredinnick, let me --

4     MR. TREDINNICK:  I don't believe that --

5     THE COURT:  Let me see -- let Mr. Tsekerides, when

6  it's his turn, he can tell me if this is something that we

7  should even be worried about.  We don't need to take

8  everybody's time to get into a philosophical debate about

9  whether 362(b)(4) applies from FERC towards the debtor with

10  CCSF as a litigant or applies to CCSF as the litigant seeking

11  recovery from a tribunal, called FERC, against Utility.  It's

12  semantics, to some extent, I think anyway.  Go ahead and add

13  anything more you want to add.

14     MR. TREDINNICK:  Well, I mean, I believe that the

15  regulatory agency is FERC.

16     THE COURT:  Correct.

17     MR. TREDINNICK:  And that is the governmental unit

18  that we're talking about when we're talking about 362(b)(4)

19  because they're the ones that's doing the regulation.  And this

20  is --

21     THE COURT:  Well, but that's my point.  I think the

22  debtors' position says, no, you're the governmental until.  And

23  the city is not enforcing its police power in this proceeding;

24  it's enforcing its own entitlement to monetary recovery.

25     MR. TREDINNICK:  But in this instance, the city, which

PG&E Corporation and Pacific Gas and Electric Company

1   is a governmental unit --

2           THE COURT:  Right.

3           MR. TREDINNICK:  -- is acting as the eligible customer

4   under the wholesale distribution tariff.  It would be no

5   different if it was a private entity that is coming to FERC and

6   saying, please PG&E is not doing right; help us out.

7           THE COURT:  So for a private entity, there would never

8   be -- the 362(b)(4) would not come in to play.  The fact that

9   FERC is a federal agency is -- so is the bankruptcy court, so

10  is the superior court, so is any other adjudicative body,

11  right?

12          You're the plaintiff, or your client is the plaintiff,

13  and the Utility is the respondent.

14          MR. TREDINNICK:  Well, I don't think this situation is

15  much different than the other Ninth Circuit cases, Berg and

16  Dingley, where you had private litigants, there was sanctions

17  given, and the court ruled that these were not stayed because

18  it was -- the entity that was doing that was the court, the

19  federal agency.

20          THE COURT:  This is like an old class reunion.  Berg

21  was my case.

22          MR. TREDINNICK:  That's your case.

23          THE COURT:  All right.  Do you want to reserve some

24  time?

25          MR. TREDINNICK:  Sure.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  Does -- Mr. Huang, are you here?  Do you

2   want to be heard?  Because I'm not sure whether FERC really has

3   a dog in this fight, but --

4        MR. HUANG:  Your Honor --

5        THE COURT:  -- you did file a very helpful brief, and

6   so why don't you go ahead and tell me what you think I should

7   be doing.

8        MR. HUANG:  Yes.  Shane Huang for the Federal Energy

9   Regulatory Commission.  From FERC's point of view, this is not

10  just semantics; it has real consequences for how FERC is going

11  to move forward.  FERC is very conscious of what's going on in

12  this bankruptcy proceeding, and --

13       THE COURT:  Well, wow, didn't I know that?

14       MR. HUANG:  -- FERC doesn't want to violate the

15  automatic stay.  FERC does care how you get there, to use your

16  phrase from earlier.

17       The City and County of San Francisco is a complaining

18  party in the proceeding that PG&E says is stayed.  But we would

19  take the same position even if it were a private entity, a

20  private customer of PG&E.  And it's because these proceedings,

21  we think, don't resemble that of private parties complaining to

22  a neutral -- in a neutral forum.

23       THE COURT:  But isn't CCSF a party that's saying,

24  wait, I'm paying too much because the utility's charging me

25  this amount when I'm entitled to be charged this lower amount?

PG&E Corporation and Pacific Gas and Electric Company

1    And they're asking FERC to rule in their favor.

2              MR. HUANG:  I think the nature of the dispute in the

3    January complaint, from January 2019 complaint, is not exactly

4    that the debtor is charging CCSF too much money.  It's the

5    debtor is attaching certain terms and conditions as a condition

6    of receiving service, and there's a dispute about whether this

7    is primary or secondary service.

8              Without getting in to the merits of who's right and

9    who's wrong, there's a declaratory component to that that's at

10   the very center of that dispute.

11             THE COURT:  Right.

12             MR. HUANG:  And --

13             THE COURT:  And you're saying that even if CCSF, if we

14   substituted it in place of private company that is a customer,

15   wholesale customer, it would be the same analysis?

16             MR. HUANG:  Yes, Your Honor.  And we would have to

17   split the -- the San Francisco v. PG&E case that we cited from

18   the Ninth Circuit talks about splitting the claims and

19   analyzing the 362(b)(4) analysis on a claim-by-claim basis.

20             THE COURT:  Right.

21             MR. HUANG:  So the declaratory portion of that

22   complaint is, I think, pretty clearly falls within the police

23   and regulatory exception.

24             THE COURT:  Well, I think that was -- again, that was

25   the ruling that I made in the first PG&E case, right?

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. HUANG:  Right.

2          THE COURT:  The Ninth Circuit case, right.

3          MR. HUANG:  Right, Your Honor.  And to the extent that

4   the refund should be -- the request for refund, that portion of

5   the relief should be analyzed separately, we would still argue

6   that it falls within the police and regulatory exception in the

7   same way that the litigation misconduct sanctions in Dingley

8   and Berg were still public policy.

9          THE COURT:  But is that because FERC is exercising its

10  regulatory function to make the ruling that CCSF is seeking?

11         MR. HUANG:  Yes, Your Honor.  You know, they -- we

12  were talking about -- I don't know which FERC proceedings we're

13  talking about.  If we're isolating it purely to the Section

14  206 --

15         THE COURT:  Well, the motion -- the attention seems to

16  be on the 2019 one.

17         MR. HUANG:  Sure.

18         THE COURT:  I understand -- you understand much better

19  than I do the interplay of all these things, but the action

20  seems to be on the 2019 one, so.

21         MR. HUANG:  Yes.  And we would just -- we take the

22  position that they're all covered by the police and regulatory

23  exception.  But if we're going to focus on only the 2019, we

24  would ask that you split that into the two separate claims:

25  the request for relief, a declaratory component regarding the

PG&E Corporation and Pacific Gas and Electric Company

1   secondary and primary service, and the request for refunds,

2   that backward-looking relief calculating the refund.

3           We think that that's pretty similar to the proceedings

4   in Dingley where the court ordered sanctions in a monetary

5   amount.

6           THE COURT:  Right.

7           MR. HUANG:  And then the debtor didn't pay, and the

8   court issued a show cause order.  And that proceeding was held

9   to be part of the police and regulatory exception because --

10          THE COURT:  But Dingley resembles Berg in that sense.

11  They both -- Berg was a lawyer, Dingley was not, but they -- in

12  both cases the debtors were, in effect, defying a judicial

13  order of some kind, right?

14          MR. HUANG:  Right.

15          THE COURT:  Yeah.  But well, why does it matter to you

16  and to FERC if, at the end of the day, I issue an order that

17  says if there's a stay, it's modified, or it's granted?  I

18  mean, there is -- it's vacated.  What difference does it make

19  to you --

20          MR. HUANG:  Well, Your Honor --

21          THE COURT:  -- both as a legal matter and as practical

22  matter?

23          MR. HUANG:  -- FERC has a large number of different

24  types of regulatory proceedings.

25          THE COURT:  Right.

of 179
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. HUANG:  And some of them take the form of -- for

2  example, a lot of section 205 proceedings that I believe the

3  debtor is not disputing that the police and regulatory

4  exception applies -- are those where the debtor is essentially

5  a party that files these quarterly filings or files a rate or a

6  modification to a rate and submits it to FERC for approval.

7  And then anybody else who's affected by that may file a protest

8  or --

9    THE COURT:  So there, the utility is more like a

10  plaintiff.  More like.  It's not a plaintiff, but it's the one

11  that come to the tribunal asking for --

12    MR. HUANG:  Right.

13    THE COURT:  -- something.

14    MR. HUANG:  And Your Honor, I'd say it runs the entire

15  spectrum from -- FERC has a hotline that effected people can

16  call and complain.  It's much more informal than the filing of

17  a complaint in, for example, a district court.

18    And Section 206, that really is the furthest along the

19  spectrum of proceedings that resemble a plaintiff coming in.

20  And we would still not characterize it in that way because we

21  think it resembles the NLRB decisions that are discussed in

22  Continental Hagen which we cited where a private party may

23  submit a complaint, but the agency, the regulatory authority

24  ends up acting on that complaint in its own name and issuing

25  orders for the benefit of the public, for the benefit of third

PG&E Corporation and Pacific Gas and Electric Company

1    parties, and in pursuit of its regulatory mission.

2              MR. HUANG:  So to bring it back to your question,

3    what does it matter to FERC?  FERC wants to be able to know,

4    with clear lines drawn, to say this is not to say we don't have

5    to go to the bankruptcy court and ask permission.

6              PG&E, as you might imagine, is party to a number of

7    FERC proceedings and so rather than going to the bankruptcy

8    court and asking for either relief for a stay or a

9    clarification on whether the stay applies, we would like to

10   know in advance so that when FERC makes a decision, it doesn't

11   have to run that risk of violating the automatic stay and its

12   action.

13             THE COURT:  But suppose at the end of the day FERC's

14   decision is favorable to CCSF.  Is it expressed in terms of --

15    forget declarative relief, I got that.  But is it also

16   expressed in terms of an entitlement to money recovered, either

17   a refund or a payment?

18             MR. HUANG:  If CCSF prevails on --

19             THE COURT:  Yeah.

20             MR. HUANG:  -- this.  Yes, FERC could calculate the

21   amount of a refund by it, but --

22             THE COURT:  So -- so again, I understand this is where

23   you live your life, but if I -- the next case on our docket

24   today, or one of them, is a request to have a matter go forward

25   for an injury to a plaintiff in the Superior Court.  And if I

PG&E Corporation and Pacific Gas and Electric Company

1    grant that relief, that plaintiff, I think, understands that

2    it's trying -- she or her counsel is trying to get the claim

3    liquidated, but then after that, if that court says plaintiff

4    is entitled to X dollars, then that party is governed by the

5    stay in terms of what to do about that recovery; isn't -- that

6    has to happen here, too, don't you think?

7         MR. HUANG:  Your Honor, I think Continental Hagen is a

8    good case of drawing that line between the entry of something

9    that resembles a money judgment and the enforcement of that so-

10   called money.

11        THE COURT:  Okay, but don't you see, if you want me to

12   give you a green light to say there's no stay, I have to at the

13   same time say, but there really is one if you rule in favor of

14   CCSF.  So I mean, I'm willing if I -- if debtor's counsel

15   doesn't persuade me otherwise and I go with what Mr. Tredinnick

16   is asking for, consistent with what you seem to be agreeing.

17        I still have to make sure it's clear what Mr.

18   Tredinnick concedes.  If he gets a money recovery, he doesn't

19   get to go levy on a bank account or offset something that would

20   typically be stayed as a matter of bankruptcy law as an

21   entitlement.  So that's just the facts, like my Superior Court

22   example, if the plaintiff in that case wins.  So how you

23   want -- how would that get reconciled from FERC's point of

24   view?  FERC -- I agree with you.  FERC shouldn't have to be

25   coming back here asking permission to do its job.

PG&E Corporation and Pacific Gas and Electric Company

1    MR. HUANG:  Right.

2    THE COURT:  But its job isn't to collect refunds,

3    right -- for customers?

4    MR. HUANG:  No, Your Honor.

5    THE COURT:  Okay.

6    MR. HUANG:  It issues the orders and then --

7    THE COURT:  Okay, so again, simplify it.  The trial's

8    over.  The ALJ is done.  The Commission's ruled.  It orders

9    that CCSF is entitled to X dollars.  That's his order, right?

10   MR. HUANG:  Yes, Your Honor.

11   THE COURT:  Period.  End of story.  Then it's up to

12   CCSF to collect its X, right?

13   MR. HUANG:  Yes, Your Honor.

14   THE COURT:  Correct?

15   MR. HUANG:  Yeah.

16   THE COURT:  So I can say that -- I can say either that

17   there is no stay to get to that point or that -- which is what

18   you'd like me to do, but then -- this is kind of a bifurcation

19   of the analysis, but by the way, after that, the stay is alive

20   and well, and Mr. Tredinnick acknowledges that and you don't

21   care.

22   MR. HUANG:  Yes, Your Honor, we would --

23   THE COURT:  You don't care.

24   MR. HUANG:  We would draw the line between enforce --

25   entry and enforcement --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Right.  Right.

2          MR. HUANG:  -- in the same way.  And we would advise

3     our client FERC --

4          THE COURT:  And you don't care --

5          MR. HUANG:  -- on where that line is drawn.

6          THE COURT:  -- so when the FERC order is final, and if

7     the FERC order gives the complaining party one dollar or one

8     gazillion dollars, it doesn't matter in terms of the regulatory

9     function.  But it does matter as a matter of bankruptcy law and

10    how that party gets his one dollar or his lots of dollars,

11    right?

12         MR. HUANG:  Yes, Your Honor.

13         THE COURT:  Okay.  Okay, well, I guess if I decide to

14    go the way that CCSF wants me to, I'll certainly instruct the

15    parties to make sure you're on board as to the form of the

16    order so we have it clear.

17         So the last thing in the world I want, if I make any

18    ruling here that's favorable to CCSF, is to create confusion

19    for people outside of the bankruptcy world, like your client.

20         Do the counsel for the official committee or the tort

21    committee want to be heard?  You both have weighed in on it.  I

22    don't know if you want to be heard on the subject?

23         MR. BLOOM:  This is Jerry Bloom, Your Honor, on behalf

24    of the Tort Committee, if I could be heard?

25         THE COURT:  Okay, go ahead first, then.  We had

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  counsel at the table at the podium --

2       MR. BLOOM:  Sure.

3       THE COURT:  -- but I'll -- you can go first on the

4  phone.

5       MR. BLOOM:  I can't see that, so why don't you let him

6  go and then I'll follow him?

7       THE COURT:  No, that's all right.  It's Mr. Bloom, you

8  said Bloom?

9       MR. BLOOM:  Yes, it is, Your Honor.

10      THE COURT:  Yeah, go ahead.  Make your statement, Mr.

11  Bloom.

12      MR. BLOOM:  Well, following your discussion, Your

13  Honor, I think that the position that you've been saying

14  follows very closely to what we wrote in our response, which is

15  we do not oppose San Francisco's request to permit the

16  proceedings to proceed before FERC to a final determination on

17  the issue of PG&E's compliance with the wholesale distribution

18  tariff.

19      In other words, there is a upfront determination, what

20  is the proper way in the past and going forward for PG&E to

21  comply with the terms and conditions of the tariff that is

22  filed with FERC, and we're not opposed to FERC makes this

23  determination.  It has the specific expertise needed to

24  determine what does the tariff say, and here are the actions

25  for PG&E in the past in accordance with that, and how should it

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    be implemented going forward; and we think that is their

2    determination to be made, so we do not oppose what CCSF has

3    asked for in terms of allowing that to go forward.

4         And in terms of the second question, then, if they

5    make a determination, I would note that the relief that is

6    granted by FERC might be a monetary refund or something, but it

7    could be a number of other different ways in which they

8    craft -- in fact, we have cases where FERC can say going

9    forward this is how we want this done, but in the past for

10   whatever reasons, we don't rule on, but we need a determination

11   so that frankly, what it does by allowing FERC to go forward,

12   if San Francisco is right, going forward there won't be an

13   additional accumulation of damages or possible additional

14   refund.

15        If the debtor is correct here, then there won't be

16   anything owed, and that determination is important to bring

17   clarity as to FERC in the implementation of federal rules and

18   the tariff, which has the enforcement as a law during the

19   pendency of the bankruptcy, so that -- as the cases that were

20   cited in the motions and the responses, that the debtor (break

21   in audio) avoid the consequences of complying with these FERC

22   tariffs during the pendency of the case.

23        That being said, we agree -- and I think this is the

24   way you were framing the question -- that the liquidation of --

25   if there's anything rewarded, which is the second step in that,

(971) 224-9600 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  if they come back and say, and the City is due X amount of

2  money, that liquidation should not be going -- should not go

3  forward and can't go forward,  As you stated correctly, they

4  have to come back to the court, the bankruptcy court.  They

5  can't just go and attach a fund or get a refund or get payment.

6          THE COURT:  Yeah.

7          MR. BLOOM:  And I think -- so I think our position in

8  our response follows very closely to the way you were

9  posturing, which is the part that -- within FERC's specific

10  expertise to make a determination, i.e., how do you comply with

11  the tariff as they've done expressly in the past, how do we

12  comply with the tariff going forward; so we either make a

13  determination of damages or cessation of damages accruing in

14  the future is something FERC should be doing.  If -- but we

15  oppose, or we said that we ask that San Francisco not be

16  allowed to -- from liquidating the claims as we go forward, or

17  estimating the claims for seeking payment.  That definitely has

18  to come back to the Court.

19          THE COURT:  Okay, I think that counsel for the City

20  conceded that issue, so that's fine.  I appreciate your

21  comments, Mr. Bloom.

22          MR. BLOOM:  Thank you.

23          THE COURT:  All right, let's hear from the committee;

24  well, state your appearance for the record?

25          MR. BRAY:  Good morning, Your Honor.  Gregory Bray,

PG&E Corporation and Pacific Gas and Electric Company

1    Milbank, LLP, counsel for the committee.

2         THE COURT:  Mr. Bray, in looking at your submission --

3

4         MR. BRAY:  Yes, sir.

5         THE COURT:  You seem to say that you defer to the

6    debtor on whether they should be liquidating -- litigating at

7    this point, but you want -- you don't want a ruling with

8    respect to claims for damages.  You're still wedded to that?

9         MR. BRAY:  Well, Your Honor, let me just say it this

10   way.  We think that any -- the issue of the allowability,

11   validity, priority, amount of the damages, really should be

12   determined by this Court.  This is a big case, lots of claims.

13   We think there is --

14        THE COURT:  Expertise, special tribunal?

15        MR. BRAY:  Yes, I understand that.

16        THE COURT:  You really want me to -- you want me to

17   calculate FERC?

18        MR. BRAY:  No, no.  I'm not asking you to calculate.

19   I think what I -- we think there should be a uniform

20   application of damages or claims against the estate, and that's

21   the responsibility and the jurisdiction of this court.

22        We're not saying FERC can't arrive at a number.  I

23   suspect that it's part of whatever -- if you lift the stay at

24   all, that as a part of that analysis, it's inevitable.  What we

25   are saying is that that number shouldn't be etched in stone.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   They have to file a proof of claim if someone wants to

2   challenge the calculation of the damages, the validity.

3           THE COURT:  Where would they challenge?

4           MR. BRAY:  They would challenge it here, Your Honor,

5   as an objection to the claim.

6           THE COURT:  Well, I understand that your committee and

7   the other committee, for the reasons we discussed yesterday,

8   want to have some sort of a systematic approach to claim

9   staking, but stay tuned to the next case.  We have a personal

10  injury claim and there are questions about where they can even

11  be determined.

12          I mean, how could I possibly take away from FERC its

13  function of making these very, very complicated determinations?

14  You heard Mr. Huang and Mr. Tredinnick, both I think are on the

15  same page, that if FERC reaches a point where it says the

16  utilities -- I mean, the City is entitled to X dollars, that's

17  where we stop and that's where the stay kicks in.

18          There may be bankruptcy defenses, but I don't know how

19  I would go back and second-guess that amount.  It's almost like

20  res judicata.

21          MR. BRAY:  Well, that's the slippery slope we're

22  concerned about here.  I don't know that the committee --

23  obviously, it's your decision -- would agree it's res judicata.

24          THE COURT:  Well --

25          MR. BRAY:  -- and I'm not saying --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  -- maybe not in a legal sense.

2          MR. BRAY:  -- that you would agree or you're going to

3   say I'm going to revisit the entire FERC analysis and

4   substitute my judgment for them; that's not my point.  I

5   just -- we're going to have a lot of these types of issues come

6   before the Court in all sorts of capacities, and it's pretty

7   clear to us that FERC is going to take a very expansive view of

8   their interpretation of their jurisdiction, so we're --

9          THE COURT:  Well, why do you think that, though, in

10  this case?  In other words, what we just heard from FERC's own

11  lawyer saying -- and I think you and I both know from other

12  experiences, they are a specialized tribunal.  I might disagree

13  or you might disagree with how far they extend their reach in

14  certain respects, but when it comes time to make a decision

15  like this one, they are the only place to do it, it seems to

16  me.

17          And just like if a personal injury claimant is

18  entitled to a jury trial, that's a different question that will

19  come somewhere else, or the bankruptcy court does have the

20  ability to defer, to abstain, to grant relief from stay to go

21  to other places, so why would this be different?

22          Let me try it a different way, I'll rephrase my

23  question.  PG&E is in bankruptcy for principal reasons we know,

24  and we also know there are other reasons that are going to be

25  dealt with in this bankruptcy that maybe wouldn't have been but

PG&E Corporation and Pacific Gas and Electric Company

1    for the fires that pushed them into bankruptcy.

2         But -- I don't know what involvement you had in PG&E

3    1, but I kept a lot of things going just the way they were out

4    in the real non bankruptcy world.  Like thousands of -- well,

5    maybe not thousands, but dozens and dozens of claims in other

6    forms.  Why shouldn't I follow that procedure here,

7    particularly for something like this?

8         MR. BRAY:  We're not necessarily saying you should.  I

9    think it's a case-by-case decision.

10         THE COURT:  Okay.

11         MR. BRAY:  And our concern first is -- was what we

12    considered to be a broad and inappropriate assertion that

13    (b)(4) applies; we don't think it does.  This is not within the

14    police power exception.  Thus my comment about the broad

15    interpretation of the jurisdiction.

16         THE COURT:  Um-hum.

17         MR. HUANG:  That's more of our concern, is that we not

18    be led down that path and then to an argument that basically

19    anything that has to do with FERC in any capacity, or any other

20    regulator, is now subject to (b)(4).  Our focus, as was the

21    Court's I think, is on who's the plaintiff, who's asking for

22    the relief, who's doing what to whom here.

23         THE COURT:  Well, I don't know.  I don't remember.

24    I've been reading so much that I perhaps overstated the case,

25    but there seemed to be in the competing briefs from debtor and

PG&E Corporation and Pacific Gas and Electric Company

1   from FERC particularly, about where are we supposed to apply

2   the 362(b)(4), and  clearly, if a governmental agency goes and

3   enforces an environmental law, for example, there's no

4   question.

5           MR. BRAY:  Agreed.

6           THE COURT:  If it goes and recovers or seeks to

7   recover a loan that the SBA guaranteed, for example, that's

8   clearly not police power.  This seems to be kind of a little of

9   each.

10          MR. BRAY:  It's fuzzy, I agree.

11          THE COURT:  It's a push.

12          MR. BRAY:  I had to read this several times to try and

13  understand what was going on, and I'm not one hundred percent

14  sure that I do still.  Having said that, it's very clear to us

15  that there is a damages component, a monetary component.

16          THE COURT:  Me too.

17          MR. BRAY:  And that's the part that caused us concern

18  and the assertion that that aspect of it was subject or part of

19  or the exception of (b)(4).  We disagree with that.  We don't

20  think that it is.  That's the comment I made about the slippery

21  slope and looking at this on a case-by-case basis.  You may

22  well determine -- and the committee does not -- we said in our

23  pleadings, we're not disputing an -- I'll call it the

24  underlying regulatory dispute --

25          THE COURT:  Right, right.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. BRAY:  That this isn't -- that FERC has

2 jurisdiction over this, and we weren't asking the Court to step

3 in the middle of that.

4    THE COURT:  No, I understand.

5    MR. BRAY:  Yeah.

6    THE COURT:  And again, Mr. Tsekerides is going to --

7 he's been very quiet.  If he were here, he might have wanted to

8 say something.  He's on the phone and he can't say anything

9 yet.

10    But the last paragraph that you filed, Mr. Bray, or

11 your colleague, Mr. Kreller's, name is on it, so I assume he

12 wrote it -- I'm not complimenting or criticizing -- it says --

13    MR. BRAY:  If he's on the phone, he has to answer

14 this.

15    THE COURT:  It says, "Such ruling should continue to

16 be stayed because the bankruptcy court, not FERC, is the proper

17 form for determining validity, priority, or amount."

18    Well, priority I'm not a problem with.  Validity, I'm

19 not sure what that means.  I suppose if there was some

20 provision of the Bankruptcy Code that got implicated, obviously

21 that's still there.  But amount of damages seems like I can't

22 do that, so -- we don't have to debate it to death here.

23    MR. BRAY:  I think -- well, I understand your point.

24 And I'll -- let me contract our statement a little bit.  We

25 just want to be sure that this court has the ultimate say over

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the assertion of the claim against the estate, how it fits in.

2         THE COURT:  Um-hum.

3         MR. BRAY:  If the Court is saying, I'm not going to

4    re-litigate the issue of the amount because I'm satisfied that

5    as a result of the FERC process, that was a proper exercise or

6    it was a proper determination, then the committee understands

7    that.  We just don't want the Court to end up being foreclosed

8    from visiting an issue on this that needs to be visited at the

9    time it arises; that's our concern.

10        THE COURT:  Okay.  All right.  Anyone else want to be

11   heard other than the debtor's counsel?  All right.

12        Mr. Tsekerides, are you still there?

13        MR. TSEKERIDES:  I am, Your Honor.

14        THE COURT:  All right.

15        MR. TSEKERIDES:  I've been listening very carefully.

16        THE COURT:  You're up.  Did you sign the brief?

17        MR. TSEKERIDES:  So -- I didn't, but I will going

18   forward on all things FERC.

19        So I think, from the debtor's perspective -- and again

20   for the record, Ted Tsekerides for the debtors from Weil,

21   Gotshal.  We have a complaint filed by a litigant who is

22   looking for a declaration of right and damages, and claiming

23   that there is an exception under (b)(4).  And so I just want to

24   say at the outset, to the extent the Court is going to get into

25   a (b)(4) analysis, we would request the ability to submit

PG&E Corporation and Pacific Gas and Electric Company

1   further briefing.

2           The brief that we submitted, I wouldn't even call a

3   brief.  It was a preliminary response.  That (b)(4) issue, as I

4   think everyone has touched on, is very important to the debtor.

5   We don't -- we believe that very few if any cases would fall

6   under (b)(4), and we don't think this one does.  If the Court

7   wants to take that issue on, we would request further briefing,

8   but I do hear Your Honor going in a different direction, so let

9   me just lay out for you what our thinking was.

10          One was that (b)(4) did not apply.  And then two, if

11  the stay applies, we still argue that you should not lift it

12  because -- and we broke it up into the QF proceeding, which was

13  shorthand for us for the quarterly filings, and the complaint

14  proceeding, which is what people have been referring to as

15  2019.

16          Now, we could submit declarations if it would be

17  helpful, but it is absolutely our understanding -- and I think

18  you heard some of that today, that -- at least in part, that QF

19  proceeding will be touching on the primary versus secondary

20  issue.  And once that issue is decided, once FERC makes that

21  ruling, and there was a conference today -- I did some follow-

22  up.  There is going to be a hearing on those consolidated QF

23  proceedings on January 22nd of 2020.  And it's our

24  understanding that's a faster road than whatever this complaint

25  proceeding is.  But in any event --

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  What -- what -- excuse me.  When -- that

2  hearing when, in January, you say?

3    MR. TSEKERIDES:  January, yes.

4    THE COURT:  That's --

5    MR. TSEKERIDES:  As in next year.

6    THE COURT:  Next January?  That's nine months from now

7  or seven months from now.  Okay.

8    MR. TSEKERIDES:  Well, I will tell you, the complaint

9  proceeding is not going to go any faster than that, Your Honor.

10  The one that they filed.

11    THE COURT:  Yeah, okay.

12    MR. TSEKERIDES:  Our point is that the primary versus

13  secondary service issue will be addressed, and so our argument

14  as to why the stay applies but should not be lifted is because

15  it will be dealt with in the QF proceeding, and there's no

16  reason for the debtor to have to deal with two proceedings.

17  And if we win, if the debtor wins and it was appropriate to

18  treat the City of San Francisco as a utility -- I'm not going

19  to get into the merits, but that's basically what they are.

20    If we were allowed to treat them as a utility in how

21  we provide the service to them and the debtor wins, they their

22  complaint proceeding is moot.  If we were to lose that, then

23  the application of that would be applicable to the complaint

24  proceeding.  So why go forward with this other one and waste

25  resources in that particular --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  What if the ALJ chooses to consolidate

2  them in some fashion, which I presume is an option?  Isn't that

3  an option to --

4    MR. TSEKERIDES:  You're talking about the complaint?

5    THE COURT:  Well, yeah.  I mean --

6    MR. TSEKERIDES:  The complaint proceeding --

7    THE COURT:  Yes.  I mean, I don't -- again, don't have

8  the knowledge to understand the different proceedings, but I

9  know if it were a bankruptcy, I could take two different claims

10  objections and one adversary proceeding and one main case

11  motion and consolidate them all and hear them all together.

12  Why isn't that something that could be done by the hearing

13  officer or the ALJ at FERC?

14    MR. TSEKERIDES:  I don't know the answer to that.  The

15  only thing I can say, though, is that the QF proceedings are

16  ready to go.  The complaint proceeding would be starting from

17  scratch, so I don't know what impact that would be if -- if you

18  had a case ready to go to trial and somebody added a case that

19  hadn't even had discovery yet, what the impact would be, but

20  I'm in the deep end now on that, but --

21    THE COURT:  Okay, so --

22    MR. TSEKERIDES:  I think --

23    THE COURT:  -- so let me --

24    MR. TSEKERIDES:  -- I don't know --

25    THE COURT:  Okay --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. TSEKERIDES:  -- if it could do that.

2    THE COURT:  But what if San Francisco had not filed

3  the 2019 proceeding; would the QF proceedings be impacted by

4  the automatic stay?

5    MR. TSEKERIDES:  We have not sought to stop those

6  other proceedings because -- so the answer, the short answer,

7  is no, because we started them --

8    THE COURT:  Well --

9    MR. TSEKERIDES:  -- pre-petition --

10    THE COURT:  -- maybe that's why you haven't --

11    MR. TSEKERIDES:  -- quarterly --

12    THE COURT:  -- tried to stop them, because you started

13  them.

14    MR. TSEKERIDES:  Exactly.

15    THE COURT:  That seems to me to answer the question,

16  right?

17    MR. TSEKERIDES:  Right.  And also -- I mean I do want

18  to -- some potshots were taken at the debtor that we're trying

19  to use the bankruptcy proceeding as a way of getting out of our

20  regulatory obligations, which is simply not true.  If we have

21  quarterly filings we have to make, we will.  And if FERC, in

22  response to that, asks us to do something, we will.

23    But again, I think you heard Mr. Huang speak to this

24  that -- what we don't want to have happen, and certainly not on

25  the current briefing -- we'd want to brief more -- is some kind

PG&E Corporation and Pacific Gas and Electric Company

1    of ruling that (b)(4) applies to anything FERC puts its fingers

2    on, and that's something we can't abide without further

3    briefing.  But again, I don't know that you need to go there,

4    Judge, to rule on this matter.

5         Our point is, the stay applies but it shouldn't be

6    lifted because we think judicial economy is best served by

7    letting the QF proceeding go forward on the primary/secondary

8    resolution such as it may be, and then if there needs to be

9    further proceedings for damages, we agree with you, Judge.  We

10   don't think you should be the one.  Frankly, I don't know that

11   you could be the one that makes the decision on whether, or

12   what the amount of damages would be, but again, at that point

13   we'd have rulings.

14        This happens every day in bankruptcy cases where maybe

15   the debtor would reach a resolution with the City where it

16   wouldn't need to have a proceeding go forward.  So those are

17   the reasons that we put forth as to why the stay, which we

18   believe applies, should not be lifted.

19        THE COURT:  Okay, but look, you said a couple times

20   you want to do further briefing on the 362(b)(4) question, and

21   I've been asked by Mr. Tredinnick for the City to -- well, I

22   could just grant relief from the stay.

23        So the question is -- and Mr. Huang obviously is

24   concerned about any confusion and, I think, quite properly is

25   trying to draw a distinction, but the question today is what

PG&E Corporation and Pacific Gas and Electric Company

1    goes forward and what's stopped. If I just don't cross the

2    bridge, the 362(b)(4) bridge, and say if there's a stay, I

3    grant relief from stay and things go forward, recognizing that

4    the City's own lawyer conceded that if and when there's a

5    determination of a monetary liability, the stay then is

6    applicable, and FERC is not put off by that either.

7            So why should --

8            MR. TSEKERIDES: No, and Your Honor --

9            THE COURT: Why shouldn't I do that? In other words,

10   you told me that if the sequence is QF is going to be done in a

11   nice fast track like next January -- God knows when the damage

12   calculations might be done -- why not let this thing start to

13   go forward; what's the harm to Utility to treat this piece of

14   the litigation like it would have gone had there been no

15   bankruptcy?

16           MR. TSEKERIDES: Well, and again, just to put a fine

17   point on it, the reason I mention the further briefings are,

18   Judge -- and I think I've mentioned this a few times -- is only

19   if you decided to rule on (b)(4). If you decide not to do

20   that, then obviously, we don't need the further briefing.

21           But let me ask -- answer your question why not now.

22   And I think why not now, the answer to that is because we have

23   this QF proceeding. If the debtor wins on the QF proceeding,

24   there will never be a damages calculation.

25           THE COURT: Yeah, but I have to think that there's a

PG&E Corporation and Pacific Gas and Electric Company

1  judge in Washington, D.C. called an ALJ, and he or she knows

2  how to manage the dockets, and you don't start trying the

3  second phase of the case if the first case is dispositive.

4          And so if we use this as a analogue in a civil action,

5  if I had a lawsuit pending before me and I was told that it's

6  going to be all sorts of stuff until next January when

7  liability will be determined, and after that we're going to

8  have a three-day or a three-week or a three-month trial on the

9  calculation of damages, I probably would say okay, let's start

10  with liability first.

11          And why isn't that the same analysis that should be

12  done here?  Why should --

13          MR. TSEKERIDES:  Well --

14          THE COURT:  -- FERC or the ALJ determine PG&E's

15  damages -- or CCSF's damages until it determines whether it's

16  liable in the first place?

17          MR. TSEKERIDES:  Well, the answer is, Your Honor, that

18  unlike a case that might just be in civil court, you're the

19  bankruptcy judge that the debtor is asking you to help it avoid

20  having to spend resources that it doesn't think it should have

21  to spend.

22          So you're controlling cases that go forward against

23  the debtor, and we're asking the Court, don't lift the stay

24  because if you do, now we're at the whims of this other judge

25  who may or may not look at it the way -- they're not going to

PG&E Corporation and Pacific Gas and Electric Company

1   be focused on whether or not they're preserving the debtor's

2   estate.  They're going to be focusing on whatever they focus

3   on.

4           You're the only judge who is focused on the debtor's

5   estate and preserving its assets.  And what we're saying is, it

6   doesn't make sense to us to have to go through that and hope

7   that maybe we can convince this FERC judge not to make us spend

8   resources that we shouldn't.  That's why we're asking you in

9   the first instance not to lift the stay, and saying what's the

10  harm to the other side?

11          Look, if we win, they don't get damages.  If they win,

12  it's not going to be that hard to figure out where we go from

13  there.

14          THE COURT:  Is there a way to get a consent?  Can a

15  party such as CCSF consent to a sequencing so that the damage

16  issue is deferred until the liability is determined, much like

17  you could stipulate in a civil case?

18          MR. TSEKERIDES:  I don't know the answer from a FERC

19  perspective, but it would seem logical to me that two parties

20  fighting about something would be able to work things out.  But

21  that's just sort of my off the cuff, what seems practical --

22          THE COURT:  Mr. Tredinnick --

23          MR. TSEKERIDES:  -- but I couldn't tell you if that's

24  allowed.

25          THE COURT:  Mr. Tredinnick, can you or your co-counsel

PG&E Corporation and Pacific Gas and Electric Company

1    answer that simple question?  Where'd you go, did he leave?

2    There you are.  Do you -- is there a simple answer that the

3    parties can just agree to a sequencing of the way the

4    proceeding goes forward.  And your co-counsel can answer it if

5    it's easier; that's fine with me.

6            And let me just get your name for the record.  You

7    were introduced before, but on the record here.

8            MS. MUELLER:  Your Honor, Theresa Mueller, deputy city

9    attorney for San Francisco.

10           THE COURT:  All right, Ms. Mueller, so is there a way

11   to do it like real people do in the real world?

12           MS. MUELLER:  Sure, yeah.  Those kinds of

13   considerations apply in FERC cases just like they do everywhere

14   else.  So there will be some kind of sequencing of the cases.

15   The parties can agree and recommend certain things.  The ALJ

16   doesn't have to accept them, but typically they do.

17           THE COURT:  If you say to the ALJ we'd like to try

18   this case in reverse, we'd like to do the damage trial first

19   before we go to liability, they'll say, that sounds good to me?

20           MS. MUELLER:  I'm not sure they would say that.

21           THE COURT:  I don't think so.

22           MS. MUELLER:  And I don't think we would propose that

23   either.

24           MR. TSEKERIDES:  I don't think we would agree to that

25   either, yeah.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Say again, Mr. Tsekerides?

2    MR. TSEKERIDES:  I don't know that we'd agree to a

3    reverse bifurcation, Judge, but --

4    THE COURT:  I wouldn't either.  Okay --

5    MR. TSEKERIDES:  Yeah.

6    THE COURT:  -- so Ms. Mueller, the point is, it's

7    obviously up to the judge.  But at some point -- and would you

8    agree that it's a sensible approach and you would explore that

9    with the debtor's counsel if this goes forward?

10    MS. MUELLER:  We would be happy to explore something

11    like that with them.  I mean, the thing that I think is

12    problematic about their position is -- look, the QF case and

13    the complaint case are not the same.  The complaint case is

14    much bigger.  It covers more issues and more facilities, and

15    the QF case does not.

16    THE COURT:  Right.

17    MS. MUELLER:  So it's not clear that the QF case will

18    resolve liability.

19    THE COURT:  Well, but if you get an adverse ruling in

20    the QF case, that undoubtedly narrows your entitlement in

21    what's left, right?  By definition.

22    MS. MUELLER:  It would, yes.

23    THE COURT:  Yeah.

24    MS. MUELLER:  And the other thing that I would just

25    note, part of why the City is concerned about any delay to

PG&E Corporation and Pacific Gas and Electric Company

1    moving forward is that new facilities are being delayed every

2    single day, so the list is growing. And that's the harm that

3    we're more --

4         THE COURT: So then -- well, your potential damage

5    claim is increasing, right? If the City is entitled to a

6    recovery, the number's going up, right?

7         MS. MUELLER: That is true, but this is one of those

8    cases where just getting the money later doesn't really

9    recompense the delay for facilities getting electricity.

10        THE COURT: No, I understand. I understand.

11        Okay. Anyone else?

12        MR. TREDINNICK: Unless Your Honor has any further

13   questions --

14        THE COURT: No.

15        MR. TREDINNICK: -- I don't think we have anything to

16   add.

17        THE COURT: Now I'm going to go ahead and let this go

18   forward. I'm satisfied that -- and I don't think that it's

19   blank and white where I can draw a line down the middle of this

20   case and say this is all 362(b)(4) on the left and this is

21   enforcement on the right -- I mean, monetary enforcement.

22        And again, I was the trial judge in PG&E 1 on the

23   matter that's quoted involving the City of San Francisco and

24   PG&E, but a different issue. And the Ninth Circuit left my

25   decision in place for the most part, but it's not that simple

PG&E Corporation and Pacific Gas and Electric Company

1   to break it into compartments.  And to me -- although I am not

2   going to pretend that the company is only in bankruptcy to fix

3   and deal with the wildfire claims; it's dealing with all of its

4   issues, and indeed, there may be all kinds of litigation coming

5   down the road in other areas, so I'm not going to just have the

6   view that everything else is automatically up for grabs.

7           And so Mr. Bray's statement about taking it on a case-

8   by-case basis is probably good advice at this point; it's still

9   early in the case.  But to me, hearing the stakes are high for

10  the City and the utility, PG&E, is culpable -- I mean, if

11  culpable, then it's going to have to pay the piper anyway, and

12  so the better thing to do is to keep the matter moving forward.

13          So I think taking the advice from Mr. Huang and Mr.

14  Tredinnick, I'm prepared to say that I will -- whatever stay

15  applies, I will modify so that CCSF can pursue all of its

16  remedies as identified in the papers.  Whether it be what we

17  call the QF, which interestingly enough, those of you that were

18  in the first bankruptcy we had, QF meant something else then,

19  and it was a big litigation item in those days, but also the

20  2019 proceeding; but up to the point when, as you heard Mr.

21  Huang say, if and when FERC rules that the City is entitled to

22  a monetary recovery, that's where FERC's concerns should end

23  and the City's rights are governed by bankruptcy principles or

24  whatever might exist.

25          Who knows, maybe there'll be a confirmed plan then,

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   maybe there'll be something else, and Mr. Tredinnick, the

2   ball's going to be in your court with Ms. Mueller to work with

3   Mr. Huang and Mr. Tsekerides to come up with an order that --

4   in my view, and again, many of you who know me know this is

5   important to me.  I believe our court must give clear signals

6   to other courts, and I have been in many cases where I'm

7   worried that a state court judge maybe not understand the

8   ramifications of ruling one way or the other.

9        So my order has to make it clear what is fair game and

10  in a sense, in layperson's sense, fair game for FERC and its

11  ALJ and the commission and everybody else, to bring this

12  dispute to a point where either the Utility -- I mean CCSF is

13  entitled to nothing, in which case -- or nothing by way of a

14  monetary recovery, and that's one outcome.  And if they're

15  entitled to a monetary recovery in some way, whether it be

16  offset, refund, future whatever, that that be protected by the

17  bankruptcy stay and this Court's jurisdiction.

18       So I presume you can come up with a form of order that

19  does that.

20       MR. TREDINNICK:  Yes, Your Honor, just one point of

21  clarification.  You stated that the matters that were detailed

22  in our pleadings -- there was one other matter that was not,

23  that was detailed in the pleadings but was not discussed today,

24  and that's the 2014 complaint that's been pending with FERC --

25       THE COURT:  Well --

PG&E Corporation and Pacific Gas and Electric Company

1          MR. TREDINNICK:  -- for some period of time --

2          THE COURT:  -- but it's still pending --

3          MR. TREDINNICK:  -- and that will be -- yeah.

4          THE COURT:  Yeah.

5          MR. TREDINNICK:  But that would be included within

6     this order.

7          THE COURT:  Yes.

8          MR. TREDINNICK:  Okay.

9          THE COURT:  I mean --

10         MR. TSEKERIDES:  Well -- and well, Your Honor -- I

11    mean, hold on a second.  I mean --

12         THE COURT:  Okay.

13         MR. TSEKERIDES:  They had filed a complaint that we

14    tried to stay.  And I think we have to be mindful of what we're

15    dealing with.  We had a target to shoot at and that's only the

16    complaint proceeding.  I don't think they should try to use

17    this and we'll deal with it when we get a draft as an

18    opportunity to start throwing in whatever they can think of.

19         THE COURT:  Well, let me take --

20         MR. TSEKERIDES:  I mean --

21         THE COURT:  Let me look --

22         MR. TSEKERIDES:  There's a specific --

23         THE COURT:  Let me look -- take a second and look at

24    the original motion.

25         Mr. Tredinnick, where would I -- where's that

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  referenced in the motion?

2          MR. TREDINNICK:  Well, I would have to grab the

3  motion, Your Honor.  But this was detailed.  This was detailed

4  in --

5          THE COURT:  Well, right in paragraph -- on page 3,

6  it's the 2014 complaint --

7          MR. TREDINNICK:  That's right.

8          THE COURT:  -- and related disputes regarding the WDT

9  service.  That's what you're talking about.

10          MR. TREDINNICK:  That's exactly what I'm talking

11  about, Your Honor.

12          MR. TSEKERIDES:  And my point, Your Honor, is that

13  they've moved to lift the stay for a complaint proceeding to go

14  forward.  That's -- whatever's in the complaint is what we

15  should be dealing with --

16          THE COURT:  Mr. --

17          MR. TSEKERIDES:  And whatever we move to --

18          THE COURT:  No, you're overstating it.  They moved for

19  a ruling that the stay doesn't apply it, but if it does, to

20  grant relief from stay.  So I tried to avoid --

21          MR. TSEKERIDES:  But we'll see what's in the order,

22  and Your Honor, I do want to make one observation.  We

23  understood and what -- we'll take this going forward that the

24  responses that we sent in in advance were preliminary, and I

25  appreciate you're going to rule the way you're going to rule.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1     But I think going forward, then, it's going to require

2   the debtors to put in more -- we would have put in a twenty-

3   page brief too with perhaps some declarations on these issues.

4   So I think going forward, so there's no surprises, given that

5   you ruled today, we're going to need then to file more fulsome

6   pleadings the five days beforehand.

7     THE COURT:  Well, you can do that, but keep in mind

8   that we didn't even -- I can grant relief when I believe

9   there's a basis to, with no written opposition, and all I'm

10  trying to do in my request that there be written opposition is

11  just so I can be prepared.  And I'm not going to say it can't

12  be twenty pages; two pages or twenty pages, I need to be

13  informed of the issue.

14    And the motion -- I can't grant more than the motion

15  asks for.  The motion asks for relief to go forward and either

16  say that 362(b)(4) is inapplicable, or if it is applicable,

17  that it's modified, so I'm granting it.

18    So again, we'll deal with it the next time around.  If

19  you feel you need to file a longer brief, do it.  But what I'm

20  not going to do is waste my time with a final hearing.

21  Remember, preliminary hearing, final hearing -- those are the

22  terms for relief from stay, and if I determine that relief from

23  stay is proper on a -- if I had a preliminary hearing, that's

24  the end of it.

25    So look --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. TSEKERIDES:  Okay, well, we'll be guided

2  accordingly.

3    THE COURT:  This is as they say in the Marines, this

4  isn't a hill to die for.  Save your next --

5    MR. TSEKERIDES:  No, no, I agree.  I agree.

6    THE COURT:  Okay.

7    MR. TREDINNICK:  Thank you, Your Honor.

8    THE COURT:  All right, thank you.

9    Mr. Karotkin, I'm sorry.  Do you want me to take a

10  break or should we go to the next one.  I mean, these are

11  taking longer than I thought.

12    MR. KAROTKIN:  Could we take five minutes?

13    THE COURT:  Yeah, okay.  Well, let's take about ten,

14  just because of the number of people here --

15    MR. KAROTKIN:  Okay.

16    THE COURT:  -- and people take a personal convenience

17  break, so a ten-minute break for everyone.  On the phones,

18  we'll keep the phone open.

19  (Recess from 10:53 a.m. to 11:06 a.m.)

20    THE CLERK:  All rise.

21    THE COURT:  Mr. Karotkin, I think I garbled your name

22  when I left.  I apologize for misstating your name.  All right,

23  who's the candidate next up by your determinations?

24    MS. TRAN:  Good morning, Your Honor. Hong-An Tran with

25  Weil, Gotshal on behalf of the debtors.  I think next on the

PG&E Corporation and Pacific Gas and Electric Company

1   calendar is the Gelman distinguishment.

2           THE COURT:  Okay, I'll take the Gelman case.  Do we

3   have counsel here on Gelman?

4           MR. WESSEL:  Yes, Your Honor, I'll be up there in a

5   moment.

6           THE COURT:  Okay.  Morning.

7           MR. WESSEL:  Good morning, Your Honor.

8           THE COURT:  If you're more comfortable arguing from

9   counsel table, that's fine.  There's a microphone there.  You

10  don't need to stay if --

11          MR. WESSEL:  Well, I can handle standing.

12          THE COURT:  Well, I mean, I want you to be comfortable

13  and all you need to do is be near a microphone.

14          MR. WESSEL:  So I'm equally uncomfortable sitting or

15  standing these days.

16          THE COURT:  Well, do we have any other choices?

17          UNIDENTIFIED SPEAKER:  Lying down, which is what I was

18  doing this morning, but then I had to get up and travel up here

19  for the hearing.

20          THE COURT:  I need your name for the record.

21          MR. WESSEL:  David Wessel on behalf of the moving

22  parties, the Gelmans.

23          THE COURT:  All right, Mr. Wessel, do you want to make

24  any argument?  And I'm familiar with the background, so I mean,

25  just focus on --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. WESSEL:  Well,  (phonetic)Your Honor, it seems

2    clear from the Plummout (ph.) and I'm probably butchering the

3    name, the Plummout and Landmark Fences cases that a showing of

4    a pending action with multiple defendants is in fact a showing

5    of cause for lifting the stay, a prima facie showing.

6         At that point, the burden shifts to the debtors to

7    show prejudice to the bankruptcy proceeding.  So the Gelmans

8    have made a showing of a pending action, an action that was

9    pending for two years before the filing of the bankruptcy

10   action.

11        THE COURT:  You heard -- were you here for the earlier

12   hearing?

13        MR. WESSEL:  Yes.

14        THE COURT:  Were you -- did you happen to hear the

15   counsel for the creditor's committee making a pitch about

16   treating the creditors sort of collectively?  I mean, the FERC

17   matter that I just spent time with is very specialized, but

18   some of his questions and comments were probably equally

19   applicable to someone in your client's position like lots of

20   other people that have suffered torts.  Your client's sort of

21   on a faster track or a more advanced track, but not compared to

22   some.  So what should I do about that?

23        MR. WESSEL:  Well, the problem is, Your Honor, that

24   the Gelman's case is actually unique, even though that is not a

25   Curtis factor.  It's unique because it is more than two years

PG&E Corporation and Pacific Gas and Electric Company

1    old and we have two defendants that are not subject to this

2    Court's jurisdiction.

3            THE COURT:  So why aren't you going against them?  Why

4    didn't you bifurcate and go to trial against the other two?

5            MR. WESSEL:  Because those two defendants are

6    contending that PG&E was at fault for our client's --

7            THE COURT:  Of course, they always do.  But don't you

8    have a prima facie case against those two defendants?

9            MR. WESSEL:  Not necessarily, that's what the --

10           THE COURT:  Well, they're defendants, so I mean --

11           MR. WESSEL:  I understand that.

12           THE COURT:  -- you have some --

13           MR. WESSEL:  But it's not a prima facie case.

14           THE COURT:  Well, maybe prima facie case is the wrong

15   way.

16           MR. WESSEL:  A jury has to decide the case, so --

17           THE COURT:  No, but what I'm getting at is the trial

18   judge has the ability to drop the case or to bifurcate and try

19   against the two defendants who aren't agreeing, one of whom is

20   CCSF, who is here this morning on another matter.

21           MR. WESSEL:  And that raises the risk of inconsistent

22   results, because PG&E will not be a party to that case.  So

23   PG&E is contending that they're at fault.  They're contending

24   that PG&E is at fault.

25           THE COURT:  But you're contending that all three are

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   liable.

2         MR. WESSEL:  We're contending somebody's liable, and

3   they are the ones --

4         THE COURT:  All three or only one?

5         MR. WESSEL:  Well, we're going to contend that all

6   three are liable --

7         THE COURT:  Right, right.

8         MR. WESSEL:  -- but it may be that the jury will

9   decide otherwise.

10        THE COURT:  Well, no.  I understand.  But you say

11   there's a risk of inconsistent results -- the point is, and

12   PG&E, of course, is a large company with complex involvements

13   in numerous places, but what if your third defendant was just a

14   small corporation with virtually nothing else going on, you

15   still have -- or if it had gone out of business or if it had

16   gone into Chapter 7, you'd still be able to pursue the remedy

17   against the other two, right?

18        MR. WESSEL:  The problem isn't so much pursuing the

19   remedy against the other two, the problem is that when you go

20   to trial, you will have an empty chair there called PG&E.

21        THE COURT:  That's right.

22        MR. WESSEL:  And they'll be pointing to PG&E in that

23   trial.

24        THE COURT:  And what will you be pointing to?

25        MR. WESSEL:  Well, we'll try to point to the City and

(970) 649-9992 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the --

2            THE COURT:  The restaurant --

3            MR. WESSEL:  -- restaurant --

4            THE COURT:  Restaurant, right.

5            MR. WESSEL:  -- Blue Plantain (phonetic) -- but the

6    problem is, of course, that we would want -- we would have

7    wanted to point to PG&E.  Now --

8            THE COURT:  Well, that's because it's a deeper pocket,

9    but the point is, what if -- that's my point.  What if PG&E

10   were not a deep pocket; what if it were just a small company

11   that had virtually no ability to respond anyway?  You wouldn't

12   hesitate to let them off the hook.

13           MR. WESSEL:  In this situation, Your Honor, there's

14   really no difference in the depth of the pockets.  San

15   Francisco has a deep enough pocket, and Blue Plantain has an

16   adequate insurance policy.

17           THE COURT:  Then why are you here?  I mean, why not --

18           MR. WESSEL:  Because PG&E -- because we may end up in

19   the San Francisco Superior Court with a defense verdict for San

20   Francisco and Blue Plantain --

21           THE COURT:  Mr. Wessel, there's an automatic stay.  If

22   I don't modify the stay, there'll be no verdict one way or the

23   other, up or down, against PG&E.

24           MR. WESSEL:  Your Honor, the automatic stay doesn't

25   apply to the City of San Francisco or --

of 179
(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Did you hear what I just said?  I said

2     there'd be no judgment against PG&E.

3          MR. WESSEL:  I --

4          THE COURT:  So trial judges, Superior Court trial

5     judges know how to bifurcate and instruct juries to go find up

6     or down for plaintiff A and B even though plaintiff C is in

7     bankruptcy -- excuse me, defendant, pardon me.

8          MR. WESSEL:  So from -- Your Honor, in trying a

9     personal injury case, we have to say somebody's at fault, all

10    right?

11         THE COURT:  Um-hum.

12         MR. WESSEL:  If we're trying the case against San

13    Francisco and Blue Plantain only, we have to say they're at

14    fault.  They could get a defense verdict.  Then we'd have to go

15    against PG&E, but because it's a different proceeding, PG&E can

16    point to San Francisco and Blue Plantain, and they could get a

17    defense verdict.  They could say Blue Plantain and San

18    Francisco are at fault.

19         THE COURT:  Why would they say that?  How would --

20         MR. WESSEL:  Because they're saying it now.

21         THE COURT:  Well -- I'd like to think that you can do

22    a better job of that if you can -- the flip side of that is if

23    the chair is empty and you can convince the jury to award your

24    client a judgment against the restaurant or the City, you've

25    won your case.

PG&E Corporation and Pacific Gas and Electric Company

1          MR. WESSEL:  Well, I'm --

2          THE COURT:  Anyway, another story.

3          MR. WESSEL:  I'm pleased --

4          THE COURT:  I want to ask you another question.

5          MR. WESSEL:  -- to hear that the Court is so confident

6     in my abilities.

7          THE COURT:  I don't know you.  I'm just looking --

8     look, Mr. Wessel, I have been sitting in this job for a long

9     time and I have lots of relief from stays by plaintiff's

10    lawyers who have other defendants, and I go against the other

11    defendants, and they oftentimes do.

12         Let's switch topics.  You mentioned in your mind that

13    the mandatory extension rules are not applicable; why do you

14    say that?

15         MR. WESSEL:  Well, because I think the case law that

16    we cited suggested --

17         THE COURT:  Well, what case law?

18         MR. WESSEL:  -- and I'm not saying, oh --

19         THE COURT:  What case law says that mandatory

20    extension is not available here?

21         MR. WESSEL:  Your Honor, I think there's a -- I think

22    the statute says that, but if -- and I looked at -- I'd have to

23    look at my papers because I've already resolved it in my mind

24    as not applicable, which is why we're asking for a permissive

25    extension.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Well, you know Ms. Tran's going to ask me

2    not to raise a defense that you didn't raise, but I have to

3    read the law and I'm of the opinion that this case might very

4    well call for mandatory extension.

5    MR. WESSEL:  Yeah, I apologize if I --

6    THE COURT:  But when you don't ask for it, I'm going

7    to ask you again why you didn't ask for it.

8    MR. WESSEL:  I apologize again, but my recollection is

9    that it was clear that it was not applicable in this case.

10    THE COURT:  Well --

11    MR. WESSEL:  Okay, I think that --

12    THE COURT:  Well, you had it.  This case might have

13    gone to trial already but for the illness of one of the defense

14    counsel, right?

15    MR. WESSEL:  Correct.

16    THE COURT:  And so --

17    MR. WESSEL:  Well, actually, it would have been -- it

18    would have taken place.  You're right.  It would have gone to

19    trial already.

20    THE COURT:  So -- and therefore, it's an action that

21    was filed  before bankruptcy.  It involves a matter that should

22    be decided on an expedited -- or not an expedited, but a

23    routine basis with -- the current trial date is when; end of

24    the year?

25    MR. WESSEL:  December 16th, Your Honor.

of 179
(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  Okay, so -- and if PG&E had not been in

2  bankruptcy, there'd be no basis to bring this -- to have the

3  federal court determine this matter, right?

4      MR. WESSEL:  Absolutely.

5      THE COURT:  So I mean, it may be extension is

6  technically incorrect in the sense that there is nothing that's

7  pending here from which to abstain, but the point is, relief

8  from stay and extension are very similar.

9      MR. WESSEL:  Yes.

10     THE COURT:  So okay.  Well, let me hear what Ms. Tran

11  has to say, and then I'll come back to you for closing comment.

12     So Ms. Tran, let's mix -- I mean, I understand that

13  mandatory extension and relief from stay, much like remand,

14  they all are kind of -- they all kind of get mixed together,

15  but this is a personal injury case, right?

16     MS. TRAN:  That's correct.

17     THE COURT:  So it seems to me that I have a choice of

18  granting relief from stay to let this matter get litigated in

19  the Superior Court, or I switch it to the District Court

20  because I can't try this case here, can I?

21     MS. TRAN:  So Your Honor, I think first, we believe

22  that the motion should be denied outright because they have

23  failed to meet their initial burden of establishing cause for

24  lifting stay.

25     THE COURT:  Really?  They've got an injury -- a person

PG&E Corporation and Pacific Gas and Electric Company

1   who was injured two years ago would have gone to trial but for

2   illness of counsel.  I mean, what else do you want them to say?

3           MS. TRAN:  Well, actually the circumstance here are

4   not different than any other tort claims, and with respect to

5   the trial, the motion concedes that the proceeding has not

6   progressed to the point where the parties are prepared for

7   trial.  There's still discovery.

8           THE COURT:  It was set for trial.

9           MS. TRAN:  It was set --

10          THE COURT:  And one of the defense counsel was ill,

11  right?

12          MS. TRAN:  It has been continued twice, and it's set

13  for trial in December.

14          THE COURT:  Was it set earlier except for counsel's

15  illness?

16          MS. TRAN:  I believe that's what it says in the

17  motion.

18          THE COURT:  DO you have any facts that say that's not

19  true?

20          MS. TRAN:  But the fact is now that it's currently

21  scheduled not until December of this year.

22          THE COURT:  Right.

23          MS. TRAN:  And there's no indication that it would not

24  be continued again.

25          THE COURT:  Well, there's no indication either way.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MS. TRAN:  That's correct, Your Honor.

2          THE COURT:  Okay.

3          MS. TRAN:  And so applying the Curtis factors, the

4     Gelmans have not demonstrated cause for relief from stay here,

5     and with respect to your question about your decision on, or

6     whether you can decide cases for personal injury cases, I think

7     that's a question more about timing and sequencing.

8          THE COURT:  Really?  It's -- am I going to get an

9     Article III appointment in the meantime?  I mean, where do I

10    get to decide a personal injury and wrongful death case?

11         MS. TRAN:  No, I just mean more that this is an issue

12    or a question that's not -- that you don't necessarily need to

13    decide today, and that given the fact that there is a bar

14    motion that's been filed and that there's a requested bar date,

15    it doesn't -- there's nothing that would prevent you from

16    continuing the hearing on this lift of stay motion until after

17    the date to decide whether or not a lift of stay would make

18    sense there.

19         THE COURT:  So I let the bar -- so the bar date comes

20    and then they have to file a claim, and then you'll argue to me

21    that they shouldn't abstain because they filed a proof of

22    claim.  So this is kind of a trap, right?

23         MS. TRAN:  No, I'm not saying that they have to file a

24    proof of claim; I'm just saying that at the very least, Your

25    Honor should wait until after the bar date to see where we are

PG&E Corporation and Pacific Gas and Electric Company

1    in the restructuring process, and where we are with the various

2    claims that are coming in --

3        THE COURT:  Okay, in the --

4        MS. TRAN:  -- to see if it makes sense at that point.

5        THE COURT:  In the opposition, the author wrote --

6    well, maybe Ms. Kim wrote it, I don't know.

7        MR. WESSEL:  Ms. Kim's not that clear, Your Honor.

8        THE COURT:  "Granting the Gelmans relief from the

9    automatic stay would prejudice the interest of other creditors

10   and interested parties"; is there any basis for that statement,

11   any facts to support that statement?

12       MS. TRAN:  Well, I -- first of all, Your Honor, I

13   think that granting relief from stay here would risk opening

14   the floodgates of other -- over a hundred other non-wildfire

15   tort claimants --

16       THE COURT:  It might.

17       MS. TRAN:  -- to request relief from stay.

18       THE COURT:  It might.

19       MS. TRAN:  And that in itself is a prejudice to the

20   estate --

21       THE COURT:  Do you know what --

22       MS. TRAN:  -- in having to deal with --

23       THE COURT:  Do you know what happened in PG&E 1 when I

24   had a similar request?

25       MS. TRAN:  I think you mentioned earlier that you

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  allowed all of those claims to go forward.

2  THE COURT:  You ever heard of Erin Brockovich?  Well,

3  she wasn't here, but people similarly situated, and I can't

4  remember the number, but it was a big number.  And guess what,

5  I had to decide back to Superior Court or up to the District

6  Court.  Guess where they went?

7  MS. TRAN:  I understand that, Your Honor.

8  THE COURT:  But I mean, why is that different,

9  seriously?  I'm not making light of this, and I appreciate your

10  argument, but the point is, you make some pretty broad

11  statements here that I have to ask you to focus on, and I'm not

12  joking about who wrote it.  I don't care who wrote it.

13  The statement is made that granting this motion would

14  force the debtor to devote resources to address the Gelman's

15  claims ahead of thousands of other tort claimants.  Well, that

16  may be partially true.  But then it says, "and there's a real

17  possibility that dollars spent on defending the Gelman action

18  should be allowed to" -- "should it be allowed to proceed, will

19  diminish the total dollars available to pay in compensation to

20  all claimants."  Are you admitting that the debtor is

21  insolvent?

22  MS. TRAN:  No, I think what the point of that

23  statement is, is that any sort of resources that need to be

24  devoted to litigating claims like the Gelmans is going to

25  prejudice the estate, and it would prejudice potentially other

PG&E Corporation and Pacific Gas and Electric Company

1  creditors who aren't rushing to the courthouse for relief from

2  stay.

3       THE COURT:  But how would it prejudice them?

4       MS. TRAN:  I think it's a divesting of resources that

5  otherwise might be available.

6       THE COURT:  There's outside counsel defending this

7  case before bankruptcy, right?

8       MS. TRAN:  That's correct, Your Honor.

9       THE COURT:  So they're there, and then if the judge

10  calls the case to trial, if counsel's ready, if there's some

11  more discovery -- and there seems like there's been a lot of

12  discovery already, and I'm not making light of Ms. Gelman's

13  injury, but it sounds like there's been depositions and

14  discovery and experts and --

15       MS. TRAN:  And I believe there's still discovery --

16       THE COURT:  What else is there to do?

17       MS. TRAN:  I think there's still discovery remaining,

18  as the motion states that there are still various depositions

19  that need to be taken.

20       THE COURT:  Is that your understanding, Mr. Wessel,

21  there's still -- you can stay -- you can remain seated.  Is

22  there a lot of pre-trial discovery to go forward after all

23  that's happened?

24       MR. WESSEL:  Principally expert depositions, Your

25  Honor, because we were about to --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  I need you closer to the microphone.  Just
2  pull the microphone closer so we'll pick you up.
3    MR. WESSEL:  Expert depositions, Your Honor.  We were
4  just about at expert disclosure when the counsel for the City
5  notified us of the health problem.
6    THE COURT:  Okay.  And is that counsel back from their
7  health problems; is the City's counsel back?
8    MR. WESSEL:  I don't recall when counsel for the City
9  was supposed to return from the health problem.
10    THE COURT:  So if I were to grant relief from stay, it
11  sounds to me like the case still wouldn't necessarily move
12  along because of that, right?
13    MR. WESSEL:  I suspect that counsel for the City will
14  be back shortly, and the concept was that we were going to move
15  it along.  We picked -- everybody picked the December 16th
16  trial date --
17    THE COURT:  Okay.
18    MR. WESSEL:  -- so it would move along.
19    THE COURT:  Okay.  So Ms. Tran, go back to this.  I
20  understand.  And look, this is the case involving -- the
21  Brockovich-type claims was a large number of claims, and this
22  is one case that has come up on a motion.  There have been just
23  a couple, as you know, that are similar that have been dealt
24  with already, but what's going to be different?
25    In other words, I anticipate from statements made

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  yesterday by counsel, both your co-counsel and for the tort

2  committee, that there may be a broader approach to deal with

3  claims resolution process, but I haven't any clue at all on

4  whether that's going to reach out to individuals who have

5  nothing to do with fires; they suffered their own harm.

6       I'm not saying PG&E's culpable or not, but they might

7  be, and so what's going to be different as far as you are

8  concerned?  Because again, if they get relief from stay, it

9  will only be to liquidate the claim.

10      MS. TRAN:  Sure, and that's exactly why we asked that.

11  If you're not inclined to deny the motion today, that you

12  should at least continue the hearing so that PG&E and other

13  interested parties can propose an orderly and systematic

14  approach in dealing with these sort of non-wildfire tort claims

15  to the extent that you feel like a mandatory extension night be

16  appropriate here.

17      And to that point, we do cite in our papers the

18  Conejos case which specifically says a finding of mandatory

19  extension does not preclude denial of relief from stay.

20      THE COURT:  No, that's true, that's true.  But the

21  point is this is one of those things where at least -- it's a

22  personal injury claim, there's no doubt about that.  And there

23  may be some courts that believe that the plaintiffs or parties

24  can consent to that.  Others might say that it cannot be

25  consented to.  And there is a jury right, and that's another

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    consent issue, so if I assume -- and this is third parties, and

2    so --

3            MS. TRAN:  Sure.

4            THE COURT:  -- it's a coincidence that one of those

5    parties was -- through counsel has been in court all morning,

6    but that has nothing to do with anything, and so I can't --

7    even if Mr. Wessel said we consent to the jury trial in the

8    bankruptcy court, that wouldn't mean it would happen because

9    two other defendants would be affected --

10           MS. TRAN:  Sure.

11           THE COURT:  -- and PG&E might not consent, and so it

12   comes down to well, if I don't do it now, what's going to

13   happen differently?  And so your suggestion that I wait is

14   tempting, but how long do I wait?  What do I know is going to

15   happen?

16           MS. TRAN:  And to your point that there are -- and

17   currently there are over a hundred cases that are very similar

18   to the Gelman's --

19           THE COURT:  Um-hum.

20           MS. TRAN:  -- in that it's a personal injury or injury

21   to property of non-wildfire --

22           THE COURT:  Yes, I didn't know the number, but I'm not

23   surprised --

24           MS. TRAN:  -- and more than half of those involve co-

25   defendants, and so I think, first, there's nothing that's any

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    special circumstances about the Gelman's case that should

2    warrant lifting the stay here, and so because there are so many

3    other similarly situated tort claims, we think it would be

4    productive to have time in order to --

5         THE COURT:  Come on up, you're getting a helper.  Mr.

6    Karotkin?

7         MR. KAROTKIN:  Can I say something?

8         THE COURT:  Yes, sir.

9         MR. KAROTKIN:  I didn't sign the pleading, but I want

10   to say something.

11        THE COURT:  No, no, no.  I want you to say what you

12   want to say.

13        MR. KAROTKIN:  Thank you, Your Honor.  Stephen

14   Karotkin, Weil, Gotshal & Manges for the debtors.

15        I think as is typical in other cases when you have

16   situations like this, is typically what would happen,

17   particularly when there are 150 pending cases, is that

18   litigation would not go forward.

19        In the claims process, as Your Honor well knows, if

20   claims are filed -- and I acknowledge that you can't adjudicate

21   these personal injury claims, but as claims are filed, as you

22   well know, in the bankruptcy process, that facilitates a

23   settlement of the claims.

24        THE COURT:  It does.

25        MR. KAROTKIN:  And that's kind of what we're saying.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  And by the way, so does the trial date.

2    MR. KAROTKIN:  And so -- I acknowledge that, so does a

3    trial date.  But, again, what we're potentially facing here is

4    after -- if you were to grant this motion 150 other people come

5    into court with that litigation pending in 150 state court

6    actions, the insurance coverage, Your Honor, does not cover

7    defense costs, and there's a huge deductible.

8    And, again, as you well know probably better than

9    anybody, once the filing of credit claims process moves forward

10   that facilitates an orderly settlement negotiation with respect

11   to these claims to get them allowed into bankruptcy court at a

12   number to be addressed in the plan without all of the costs

13   associated with the litigation.  And that's what we're trying

14   to accomplish here simply.

15   THE COURT:  But there is an issue of litigating the --

16   I mean, liquidating the claim.

17   MR. KAROTKIN:  And, again, as Ms. Tran indicated,

18   if -- and, again, I think this would be unusual.  If we come to

19   the point where we can't resolve those claims in the context of

20   the process before this Court, you can always modify the stay

21   or let it go forward.  That's all we're saying.

22   THE COURT:  What's the current plan on -- I mean, I

23   know there's a motion in the pipeline to set the bar date, but

24   I haven't focused on it.  What's the --

25   MR. KAROTKIN:  We have requested that the bar date be

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    set at September 16th, I believe.

2              THE COURT:  September 16th.

3              MR. KAROTKIN:  Other parties may have views on that.

4              THE COURT:  But whether it's September 16th or some

5    other date in this calendar year, nothing's going to happen

6    quickly in terms of this next phase, there's communication and

7    negotiation and so on.  It may be, but it's not going to just

8    suddenly on the 17th you're going to have answer.  I mean, if I

9    knew -- and if we all knew there was going to be a plan that

10   might be something else, but that's immature.

11             MR. KAROTKIN:  But, again, we're talking about the

12   normal negotiation in the claims process which always takes

13   place.  And you can revisit this.  First of all, they're not

14   ready for trial, they have to take expert depositions.  You can

15   revisit this at the appropriate time, and it's not going to

16   delay -- if you then decided that this trial should go forward

17   it's not going to delay anything.

18             THE COURT:  Well, and I think --

19             MR. KAROTKIN:  Again, I think what we're concerned

20   about is --

21             THE COURT:  -- it might --

22             MR. KAROTKIN:  -- if you were to grant this motion we

23   got another fifty other people coming forward.

24             THE COURT:  No, I -- and I'm -- Mr. Karotkin, I'm

25   mindful of that and you're not preaching to somebody who isn't

PG&E Corporation and Pacific Gas and Electric Company

1   listening to you.  But I don't -- I can't sort of keep the time

2   safe from the Gelmans, it's going to move too.  And so if we

3   revisit this in September or November who knows where that

4   trial will be.  And I agree it might be the same boat for a

5   hundred other cases, and thousands more fire claimants.  I'm

6   not unaware of that.

7           Mr. Wessel, did you want to say something?  Again,

8   just stand near a microphone, I don't want to make you jump up

9   and down if it's inconvenient for you.

10          MR. WESSEL:  Your Honor, you were talking about the

11  prejudice to the Gelmans from the risk of inconsistent results.

12  But there's also the prejudice of having to try the case in two

13  proceedings.

14          THE COURT:  Yeah, but you said -- you keep saying that

15  as though you don't think you can win against the other

16  defendants.  And the fact is if you can win against those other

17  defendants you should be out there doing it --

18          MR. WESSEL:  Okay.

19          THE COURT:  -- and not worrying about this process.

20          MR. WESSEL:  Your Honor, what can happen from a

21  practical standpoint is we can go to trial against San

22  Francisco and Blue Plantain and win.

23          THE COURT:  That's right.

24          MR. WESSEL:  They could be found partially at fault.

25          Then we still have to go against --

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  I don't know, it depends how much you win.

2          MR. WESSEL:  We still would have to go against PG&E,

3    because --

4          THE COURT:  Why?  Why would you have to?

5          MR. WESSEL:  Because they would have a percentage of

6    fault.

7          THE COURT:  Why would you have to if you got an

8    adequate recovery from the other defendants?

9          MR. WESSEL:  This -- and we're talking about

10   speculation here, Your Honor.  But what I'm dealing with is

11   right now, we have to get ready for a trial.  We have a three-

12   year statute.

13         THE COURT:  No, you don't.  It's --

14         MR. WESSEL:  Yes, there's a --

15         THE COURT:  -- it's tolled by the bankruptcy.

16         MR. WESSEL:  No, because there's no --

17         THE COURT:  Mr. Wessel, it's tolled --

18         MR. WESSEL:  -- stay against the city.

19         THE COURT:  It's tolled by this defendant, not the

20   others.

21         MR. WESSEL:  But you see, we have to proceed against

22   the other defendants.

23         THE COURT:  Again, I don't know how many times I have

24   to tell you you have that option, you just don't want to accept

25   it.  But you have that option.  And I don't understand why you

PG&E Corporation and Pacific Gas and Electric Company

1    aren't interested in doing that.  But you'll have to make your

2    own call on that.  I have to decide yes or no on this debtor

3    and this stay, and I can tell you early in this case the

4    debtor, through other -- on these counsel, but in other

5    proceedings sought to stay certain actions against other

6    parties, your client wasn't on that list.

7           So in other matters, where there were other

8    defendants, there was a stay entered.  But here nobody asked,

9    and no one has asked to this moment that I stay the action

10   against Blue Plantain and CCSF.  But if you choose not to do it

11   that's your choice, I'm not going to try to talk to you into

12   it, other than to tell you it's a choice.

13              MR. WESSEL:  Well --

14              THE COURT:  All right.  Well, and if you want to make

15   any further argument about -- now you've heard --

16              MR. WESSEL:  Yes.

17              THE COURT:  -- Mr. Karotkin and Ms. Tran say what they

18   say.

19              MR. WESSEL:  Yes.  With respect to -- so they tried to

20   make a case for prejudice, but they haven't done that.  So

21   we --

22              THE COURT:  Well, I think they have, because what

23   they're reminding me is if that I grant relief from you there'd

24   be a hundred more.  And that might not be what the Gelmans want

25   to hear or you.  But I can't ignore that, and the debtor's

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

counsel can't ignore that.

1

2          MR. WESSEL:  Those hundred more can move for relief --

3          THE COURT:  Yes.

4          MR. WESSEL:  -- regardless of what the Court does with

5    respect to this motion.

6          THE COURT:  That's correct.

7          MR. WESSEL:  And so the point is with respect to this

8    particular case, the Gelmans' case, granting relief is not

9    going to really increase the costs to the bankruptcy estate

10   because if we proceed against San Francisco and Blue Plantain,

11   we will have to take the deposition of PG&E and the Court will

12   allow that, because --

13         THE COURT:  The law allows that.

14         MR. WESSEL:  Right.  So we will have to take the

15   depositions of PG&E, PG&E will have to have --

16         THE COURT:  I thought you said all that was left were

17   experts.

18         MR. WESSEL:  Ex --

19         THE COURT:  Why would you take --

20         MR. WESSEL:  So I pointed out the --

21         THE COURT:  Why would you be taking PG&E --

22         MR. WESSEL:  I pointed out in the moving papers, Your

23   Honor, that we had noticed the deposition of PG&E, but PG&E

24   refused to show up.

25         THE COURT:  Mr. Wessel, I don't memorize every word

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    that people argue.  I asked you what was left, and you said

2    there were expert testimony.  If you're telling me there's

3    still discovery against the PG&E percipient witness, okay,

4    that's your representation, I'll take it.

5         MR. WESSEL:  And on top of that -- so PG&E will have

6    lawyers at that deposition, and PG&E will likely want to -- may

7    want to sit in on the experts, or get the transcripts of the

8    depositions of the experts for their lawyers.  And if PG&E

9    witnesses are called at trial PG&E lawyers will have to prep

10   them, and PG&E lawyers may be at the trial.

11        All of this -- we will -- all this will cause PG&E to

12   incur litigation costs even if PG&E is not part of the trial.

13   And --

14        THE COURT:  All right.  I'm going to take the matter

15   under advisement.  I'll give you a ruling here very shortly.

16   But I'm going to give this some thought.

17        MR. WELSH:  Your Honor --

18        THE COURT:  Yes.

19        MR. WELSH:  -- may I be heard?

20        THE COURT:  Who's that?  Who's speaking?

21        MR. WELSH:  My name is Leonard Welsh.  I'm an attorney

22   in Bakersfield, California and I represent a number of

23   nonwildfire personal injury claimants also.

24        THE COURT:  Mr. --

25        MR. WELSH:  I am not a party to this motion --

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Mr. Welsh, I'm not going to hear from you

2    on this subject, you're not a party to this motion and I'm not

3    going to turn this into a discussion about what to do about the

4    other victims.  I'm sorry, I'm not going to turn that into --

5    we have other matters on the calendar today.  So I hate to be

6    rude, but I'm not going to hear your comments.

7          MR. WELSH:  I understand, Your Honor.

8          THE COURT:  So the matter's --

9          MR. WELSH:  Thank you.

10         THE COURT:  All right.  All right.  The matter stands

11   submitted.

12         MR. WESSEL:  Thank you.

13         THE COURT:  I will act on it quickly I promise you.

14         Mr. Karotkin, we're going to go to collateral or term,

15   your call?

16         MR. KAROTKIN:  Collateral, Your Honor.

17         THE COURT:  Okay.  Mr. Lapping.

18         MR. LAPPING:  Good morning, Your Honor.  Richard

19   Lapping on behalf of Valero Refining Corporation-California

20   (sic).

21         THE COURT:  And who's appearing for the debtor?

22   You're doing that again Mr. -- Mr. Lapping, preliminary

23   question.  You have -- we're showing on the calendar at least

24   the motion to -- regarding the sealed documents.  But you --

25   did you really want to be heard on that, it was --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        MR. LAPPING:  Not -- well, Your Honor --

2        THE COURT:  Those are typically granted if

3   everything's in order, and I haven't heard any opposition.

4        MR. LAPPING:  Right.  We had a stipulation that we

5   could submit the insurance policies that were produced --

6        THE COURT:  Yeah, that's what I thought.

7        MR. LAPPING:  -- subject to the usual rules.  And so I

8   filed the motion per the usual rule.

9        THE COURT:  No, but I would have -- typically, those

10  motions come in just on an ex parte basis, so -- that's fine,

11  I'll grant -- I've already -- I mean, it's already been

12  granted, I think.

13       MR. LAPPING:  Great.  Well --

14       THE COURT:  I've reviewed them.

15       MR. LAPPING:  I just wanted to make sure it was on the

16  calendar no later than today.

17       THE COURT:  I'm trying to tell you it didn't have to

18  be on the calendar.  I think I've signed an order.  If I

19  haven't I will, and I understand.  And I've reviewed a portion

20  of it in any event, which is what I'm supposed to do.

21       So you heard -- you heard the arguments from -- in the

22  Gelman case, which is not your case, and your case is obviously

23  much different.  But what's different about it since -- that

24  you want me to consider?

25       MR. LAPPING:  Well, what's different is because we

PG&E Corporation and Pacific Gas and Electric Company

1  have a seventy-five-million-dollar claim and they publicly

2  state -- and that's correct, that they have a ten million-

3  dollar SIR, then this claim is not -- it doesn't fit squarely

4  within the -- it's all covered by insurance.  But the part that

5  isn't covered by insurance would then just become a claim if we

6  prevail in the litigation.  It becomes a liquidated claim for

7  whatever the insurance doesn't cover.

8          THE COURT:  But you heard Mr. Karotkin correctly state

9  that people start to come to the table when there's a bar

10  date -- after bar date, and they negotiate.  That may happen

11  here too, I understand.

12          MR. LAPPING:  Well, let me give you some background

13  then, Your Honor.

14          During the period the last sixty days we propounded

15  discovery about the insurance policies, and also about what

16  other claims were pending that would impact PG&E's insurance

17  for this particular year, which precedes the year of the

18  wildfires.  And the answer was that's irrelevant.  And I think

19  that means that they don't have any claims in this policy here

20  that affect these policies.

21          So we're essentially the only ones with a claim

22  against this insurance policy.  And it covers our claim except

23  for whatever the SIR is.  And they -- you know, they have used

24  some of that, and the balance would be used in part for

25  expenditure of legal expenses, which we cite the case Santa

(970) 581-0109   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Clara County Fair Association, that litigation expense per se

2    is not grounds for denying relief from stay.

3              So what we have is we've got this seventy-five-

4    million-dollar claim that is fully covered by insurance, except

5    for possibly two or three million dollars.  And so --

6              THE COURT:  I'm sorry, I lost you.  I thought you said

7    there's a ten-million-dollar --

8              MR. LAPPING:  That's the SIR.

9              THE COURT:  Be more specific.

10             MR. LAPPING:  The self -- that's the deductible.

11             THE COURT:  Okay.

12             MR. LAPPING:  The deductible is ten million dollars.

13   The insurance I can't say what it is, but we've given you the

14   policies, and in our brief the part that is redacted it

15   indicates that there's plenty --

16             THE COURT:  Okay.

17             MR. LAPPING:  -- of coverage for this claim.

18             THE COURT:  So if you get a judgment the debtor has to

19   pay ten million dollars.

20             MR. LAPPING:  Well, they can deduct whatever they've

21   spent on defending the case, and then the balance would become

22   a claim in the bankruptcy.  But anything over that would be

23   paid by the insurance.

24             THE COURT:  So if you got a recovery from the

25   insurance company, plus an amount that's still covered under

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    the SIR you would have a claim, and you just would have an

2    allowed claim in that amount.  But still -- but it still

3    requires a liquidation of the claim, which is what the debtor's

4    resisting on some of these other claims.

5           MR. LAPPING:  Well, yes, but as he said clearly all

6    those other claims are not subject to insurance because of the

7    deductible.  They don't have any other claims.  All those

8    smaller claims are not -- and there's a ten-million-dollar

9    deductible per occurrence.  So unless there's a raft of claims,

10   all of them in excess of ten million dollars, that -- we're not

11   talking about that.  This is unique in that sense.  It is a

12   unique situation, it fits squarely within the concept of

13   covered by insurance, except for some small increment.

14          THE COURT:  So if you -- but you haven't asked for

15   relief from stay to go only against the insurance, which is

16   sometimes what people do.

17          MR. LAPPING:  Well --

18          THE COURT:  I understand, you're not asking to be

19   paid, you're asking to liquidate the claim in its entirely.

20          MR. LAPPING:  Right.

21          THE COURT:  Right, okay.

22          MR. LAPPING:  And it still presents -- even if we just

23   went after the insurance, the insurance company would say well,

24   we're not going to pay for the defense, so it kind of doesn't

25   matter.  PG&E still has to expend whatever resources it wants

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    to to defend the claim.  And that has to -- that's just there.

2           But the complexity of this case -- and, again, this

3    one -- this one truly is ready for trial.  Recall --

4           THE COURT:  No, I know that.

5           MR. LAPPING:  -- we had a trial date.

6           THE COURT:  Is there a mandatory mediation or

7    settlement conference.

8           MR. LAPPING:  Well, Your Honor, there was a mediation

9    set up, and Valero's position was we'll go to a mediation

10   provided PG&E brings its carriers with authority.  And they

11   said they would do that I believe.  But then -- the mediation

12   fell during that period, after they announced the bankruptcy --

13          THE COURT:  Okay.

14          MR. LAPPING:  -- and so they said you know, we're not

15   coming.

16          THE COURT:  But the point is if you get relief from

17   stay the trial judge can make a decision on whether he orders

18   the parties to mediation in any event, right?

19          MR. LAPPING:  Well, right.  And without a trial date,

20   I think as somebody observed earlier, it's hard to get a

21   mediation to succeed.

22          THE COURT:  Ms. Tran, you want to take a shot at it?

23          MS. TRAN:  So, Your Honor, I'll try to address some of

24   the points that Mr. Lapping raised.

25          The first was the point on the insurance coverage.  As

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    an initial matter I think that he misstates the law and the

2    Curtis Factor of how insurance coverage plays into balancing

3    whether or not lift of stay is appropriate.  And the factor

4    isn't whether or not there's insurance coverage, the factor is

5    whether or not the insured carrier has assumed full financial

6    responsibility for defending the litigation, which as Mr.

7    Lapping concedes that's not the case here.

8         And he's correct that we have been engaging and

9    coordinating with respect to their discovery relating to the

10   motion.  And -- but what Mr. Lapping fails to report to the

11   Court is that we also informed Mr. Lapping that the insurers

12   here have sent a reservation of rights letter, which means that

13   there's potentially no coverage at all with respect to Valero's

14   claims.

15        THE COURT:  Well, if that's the case and if it goes to

16   trial, and the court determines, or the jury, whatever it is,

17   determine a liability I guess the insurer will have to decide

18   whether to pony up or not.  And if not, then Mr. Lapping's

19   clients got to stand in line with a liquidated claim.

20        I mean, this is -- one way or the other there's a

21   large exposure here of the debtor, either the amount of the

22   uninsured portion, of the deductible, or more.  But one way or

23   the other it has to be liquidated.

24        And, again, Mr. Karotkin made his point, and you've

25   made it, about these claim things have to happen.

operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corporation and Pacific Gas and Electric Company

1    But --

2        MS. TRAN:  Right.

3        THE COURT:  -- this is -- there's not a hundred of

4    these in the pipeline, this is the only one I'm aware of.  And

5    maybe you would tell me if there are others.  But this is a

6    substantial claim involving something that has -- you know,

7    like any other tort it's unique to itself, but it's not like

8    thousands and thousands of wildfire victims.  How does this

9    thing get liquidated if not by trial at this point?

10        MS. TRAN:  And that's correct, Your Honor.  And as we

11   had discussed at the last preliminary hearing, the fact is that

12   none of the factors weigh in favor of lifting the stay, and

13   that Valero hasn't really made an initial burden of showing

14   that.  And in terms of how to determine liability, I think that

15   the debtors remain open to settlement negotiations and

16   mediation.

17        THE COURT:  Yeah, as I'd --

18        MS. TRAN:  As Mr. --

19        THE COURT:  -- said before.  Sometimes a trial date is

20   a motivator.

21        My point is this --

22        MS. TRAN:  And there is no trial day right now, Your

23   Honor.

24        THE COURT:  Well, there was one.

25        MS. TRAN:  It has been taken off calendar.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  There was one, right?  --

2          MR. KAROTKIN:  Yes.

3          THE COURT:  Do either of you know what Judge Nunley's

4     calendar is like, when this is likely to go to trial?

5          MS. TRAN:  I do not.  But my understanding is that it

6     has been taken off calendar, there's no indication as to when

7     it would be rescheduled.

8          THE COURT:  You have any knowledge of that, Mr.

9     Lapping?

10         MR. LAPPING:  Your Honor, we filed a paper with the

11    district court as we announced we would last time, indicating

12    that the court had continued this hearing.

13         THE COURT:  Right.  Right.

14         MR. LAPPING:  And I have not seen anything on the

15    calendar, and I don't know that -- it's hard to tell that far

16    ahead whether he's scheduled something else on that slot.

17         THE COURT:  No, but I mean some district judges have

18    big criminal matters that are blocking out months at a time.  I

19    mean, I talked to one of the judges here who has a four-month

20    trial going on.  You know, I can't imagine what that would be

21    like.  But --

22         MR. LAPPING:  I can't represent anything on that

23    front.

24         THE COURT:  All right.

25         MR. LAPPING:  But I can point -- you know, every

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   insurance company that gets a claim like this they issue a

2   reservation of rights letter.  I haven't seen this one, they

3   haven't produced it to me.  I don't know what it says, I don't

4   know whether it's just the standard --

5           THE COURT:  Understood.

6           MR. LAPPING:  -- we don't want to pay this claim kind

7   of letter or not.

8           THE COURT:  Okay.  Mr. Karotkin, you want to comment

9   on the whole claims issue?

10          MR. KAROTKIN:  Yeah, I want to.  Thank you.

11          THE COURT:  What'd you do, knock the fuzzy off of it?

12          MR. KAROTKIN:  Yeah, I knocked the fuzzy off.

13          Your Honor, this is a classic automatic stay case.

14          THE COURT:  Yeah, I know.

15          MR. KAROTKIN:  This is what the automatic stay is all

16  about.

17          I think counsel has indicated it's not ready for

18  trial.  This is what the claims resolution process in the

19  bankruptcy court is all about.

20          THE COURT:  Well, it's the same as you said on the

21  other one too.

22          MR. KAROTKIN:  Yeah.  But this is even more so.

23          I mean, there's an obligation to file the claim with a

24  bar date like any other claim.  Whether it's a trade claim, a

25  bank debt claim, a bond claim, that is what the claims

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   resolution process in bankruptcy is all about.  And the

2   automatic stay is expressly designed to prevent -- to give the

3   debtor breathing room to prevent these cases from going

4   forward.

5           If you were to modify the stay as to this, Your Honor,

6   you might has well have modified it to every single claim filed

7   in the case.

8           THE COURT:  Well --

9           MR. KAROTKIN:  This is absolutely no different from

10  any other --

11          THE COURT:  That's a bit of a broad statement that

12  you're making.  That this is a unique one, it's a large sum of

13  money.

14          MR. KAROTKIN:  It's not unique in any way.

15          THE COURT:  Do we know that?

16          MR. KAROTKIN:  It is a breach of contract claim, or

17  whatever it is, it's a classic pre-petition claim.

18          THE COURT:  Okay.  So the claims bar date comes and

19  whoever files a proof of claim, you're going to object to the

20  claim, or we have this --

21          MR. KAROTKIN:  We may or we may not.

22          THE COURT:  -- the same --

23          MR. KAROTKIN:  We may try to settle it.  But again,

24  Your Honor, that's what the claims resolution process --

25          THE COURT:  Yeah, I know.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1       MR. KAROTKIN:  -- in the bankruptcy court is all

2   about.  That's how the objections-to-claim process works, in a

3   summary proceeding --

4       THE COURT:  I know that.

5       MR. KAROTKIN:  -- in this court.

6       THE COURT:  I know that.

7       MR. KAROTKIN:  To get it done quickly and

8   inexpensively -- not to modify the estate, to allow pre-

9   petition litigation to go forward.  That's not what it's all

10   about.

11       THE COURT:  Well, okay, then we have a slight

12   difference of opinion, and at some point, it is appropriate.

13   But all right, I got it.

14       Anything further, Mr. Lapping?

15       MR. LAPPING:  No, Your Honor, I just -- I'll stand on

16   my papers.  I think we hit all the Curtis factors that are

17   applicable.  But what does distinguish this claim is the

18   insurance coverage that's available to date.  We're the only

19   claim that has a shot at that particular insurance here, and

20   that makes us unique.

21       THE COURT:  Yeah, but -- okay, all right.  Well, I'm

22   going to treat this the same way I did Gelman.  I'm going to

23   take it under advisement.  I don't normally do that, but

24   because of the timing in the case and so on, I will issue

25   something fairly soon.  Matter stands submitted.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    MR. LAPPING:  Thank you, Your Honor.

2    THE COURT:  All right.

3    Mr. Karotkin, do you want to take a break again, or

4 should we go straight to the last item?  I'm comfortable to go

5 either way.  It's up to you.

6    MR. KAROTKIN:  I'd like to move ahead.

7    THE COURT:  Okay.

8    MR. KAROTKIN:  Thank you.

9    THE COURT:  Then let's do it.

10    Oh, Mr. Harris, are you here?  Sorry to keep you

11 waiting.

12    MR. HARRIS:  It was educational, Your Honor.

13    THE COURT:  Okay, so --

14    MR. HARRIS:  Robert Harris, of Binder & Malter,

15 appearing for TURN, The Utility Reform Network, moving party.

16    THE COURT:  And you heard me say before about the

17 timing.

18    MR. HARRIS:  I did, Your Honor.

19    THE COURT:  Okay.

20    MR. HARRIS:  Thirty minutes for everyone on our side.

21    THE COURT:  Yeah, and you might want to reserve some

22 for closing.

23    MR. HARRIS:  Absolutely.  I actually only have a

24 relatively short opening, Your Honor.  I don't think there's

25 any need to repeat what's in the pleadings.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Okay.

2          MR. HARRIS:  I think that I expect to hear plenty of

3    questions about where you have issues.

4          THE COURT:  I might have some questions.

5          MR. HARRIS:  One or two.  I would, however, like to

6    focus the Court on three points, if I may.  First, Your Honor,

7    why it's so important to have an official committee in this

8    case.  Your Honor, we've said in our papers that --

9          THE COURT:  I think I know that.

10         MR. HARRIS:  Well, I'm going somewhere.

11         THE COURT:  The question is can there be.  Does the

12   law permit it?  It's that simple.  I mean, it's that simple.

13   Why did I deny it before?  I didn't believe the law permitted

14   it.  So the question is, does the law permit it as I --

15         MR. HARRIS:  Well, but I have an overview point, if

16   you will.

17         THE COURT:  Okay, go ahead.

18         MR. HARRIS:  And it's this.  There are millions of

19   people, businesses and entities, that are potentially

20   ratepayers, who would be the constituents of this committee.

21   And the formation of a committee does something very special.

22   It creates a fiduciary relationship between the members of that

23   committee and those constituents, that really doesn't exist

24   right now.  There are ad hoc committees out there that

25   represent particular interests.  TURN has some relationship to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    its members, but it's very different when you have an official

2    committee that is dutybound to represent the interests of all

3    of the ratepayers of the state.

4              And effective participation in this case, obviously,

5    requires, Your Honor, that that committee get counsel, get

6    professionals.  With 6.15 million individuals, their interests

7    are so small and so diffused, that while it's been said that

8    there's a possibility that those ratepayers could appear and be

9    heard and maybe get paid on a substantial contribution basis,

10   the reality is that's never going to happen.

11             THE COURT:  Well, you made that point as though you

12   didn't understand the DIP financing.  I mean, I can never in my

13   recall -- in memory recall a case that had such leverage to --

14   in favor of the unsecured component.  Even if you accept that

15   the dollars on the asset side, maybe aren't nine -- I mean,

16   seventy billion, the debt is only five or six billion.  So

17   there is a huge cushion that would compensate somebody that

18   made a substantial contribution.  You don't really doubt that,

19   do you?

20             MR. HARRIS:  No, but, Your Honor, that --

21             THE COURT:  You don't really doubt that the DIP

22   lenders are -- and think, the DIP lenders are going to swoop up

23   all the assets.

24             MR. HARRIS:  I think in the short term that there is

25   an ability to get paid.  I think in the long term, seeing this

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  is the case is, you may be right, but subject to what happens

2  with the tort claimants, but the truth is, to ask counsel or

3  the ratepayers to finance that entire period from now until

4  when the plan gets confirmed and the debtor has to pay its

5  priority claims.

6  THE COURT:  So that's the difference between having a

7  committee or not a committee is, who pays the lawyer?  I mean,

8  it really comes down to that, doesn't it?

9  MR. HARRIS:  That is a lot of it, Your Honor.

10  THE COURT:  I understand.

11  MR. HARRIS:  We're trying to create an efficient

12  mechanism to give the ratepayers a voice in this case, to let

13  them be heard on the key decisions --

14  THE COURT:  So you -- as I recall, and somewhere in

15  the papers on the petition date, TURN and some of the other

16  entities that are volunteering, weren't even -- didn't even

17  have standing.  Now your client, TURN, has acquired a claim.

18  MR. HARRIS:  Yes, Your Honor, that's correct.

19  THE COURT:  Is that a bit of a fabrication that it

20  really isn't a rate -- it isn't really a creditor; it just

21  became one?

22  MR. HARRIS:  Well, Your Honor, it was a technical

23  response to a technical argument.  The argument --

24  THE COURT:  Well, is it technical?

25  MR. HARRIS:  It is, Your Honor, because the real

(972) 952-8333  operations@escribers.net | www.escribers.net

          PG&E Corporation and Pacific Gas and Electric Company

1    parties --

2              THE COURT:  I mean, every member of the tort committee

3    and I assume every member of the official committee are

4    creditors --

5              MR. HARRIS:  Your Honor --

6              THE COURT:  -- not representatives of creditors.

7              MR. HARRIS:  TURN is not asking to be an official

8    member of the ratepayers committee.  It's rather offering to be

9    an ex officio member.

10             THE COURT:  So what would its role be if the U.S. --

11   if I agree with you and direct the U.S. Trustee to appoint a

12   ratepayers committee?  Just a bunch of ratepayers, and then

13   what is TURN's role then after that?

14             MR. HARRIS:  TURN would offer its services as an ex

15   officio member, Your Honor, to serve -- to aid the committee in

16   its process.

17             THE COURT:  Okay, let's get to the question of claim.

18             MR. HARRIS:  Absolutely, Your Honor.

19             THE COURT:  You know that my prior ruling said they're

20   not creditors.  Your argument here is they are creditors.  Now,

21   let's -- you know me and I like hypotheticals, right?

22             MR. HARRIS:  Okay.

23             THE COURT:  So I don't know what your personal bill

24   is.  I assume you don't live on a mountaintop somewhere off the

25   grid, so let's assume you have a hundred-dollar-a-month PG&E

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    bill, and you get a five-dollar credit, based upon the CPUC

2    ruling.  The day you get your bill, your credit's paid, and

3    you're not a creditor anymore, right?  What happened?  How did

4    you -- on the petition date, if that's a magic date, when you

5    owe a hundred dollars, but the utility owes you five, let's

6    technically say, in bankruptcy terms, you are a creditor,

7    admittedly secured, offset creditor.  But the very next day or

8    the next bill or the next some event, it's gone.  So are you no

9    longer eligible to be on a creditors committee, right?

10            MR. HARRIS:  Well, Your Honor --

11            THE COURT:  Because you're not a creditor.

12            MR. HARRIS:  -- we're working within your

13   hypothetical.

14            THE COURT:  Right.

15            MR. HARRIS:  The first thing that PG&E would have done

16   with that first bill or payment, is they wouldn't have paid the

17   full five dollars.

18            THE COURT:  That's right.

19            MR. HARRIS:  So maybe I'm still owed --

20            THE COURT:  They would have --

21            MR. HARRIS:  -- two or three or four.

22            THE COURT:  They would have paid you the debt.  Or you

23   would have -- no, they would have billed you the net.  They

24   would have paid it via credit.

25            MR. HARRIS:  But that's not the case here, Your Honor.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    They're not paying the entire pre-petition debt in the April

2    bill.  There's still the October bill to come, for one.  Two,

3    there are other bases for claims that we referenced in our

4    reply brief --

5            THE COURT:  I know, but that's in your reply brief.

6    Let's stick with the original point about the CPUC rebate.  I

7    don't have the right terms; you know the terms.  They're

8    technical.  At some point, they just disappear, right?  In

9    other words, it went away -- not to mention the fact that on

10   our first day, I issued orders that directs and authorizes the

11   debtor, essentially, to pay them.

12           I guess what I'm trying to say is, if you think it's

13   being technical, it seems to me like the ratepayers, if they

14   were sort of metaphysically creditors on one day, they stopped

15   being creditors until -- at some other date, and if they become

16   creditors on the next billing cycle, they're post-petition

17   creditors, for which there's no concept for a committee.

18           MR. HARRIS:  Your Honor, I want to clarify my --

19           THE COURT:  How do I get around that?

20           MR. HARRIS:  Well, let me clarify my comment about --

21           THE COURT:  Okay.

22           MR. HARRIS:  -- the technicality.  The technicality

23   was something that the creditors committee raised with respect

24   to TURN's standing to bring the motion, not the ratepayers

25   holding claims in the case.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Okay, but I --

2    MR. HARRIS:  So when I said technical, that's what I

3    meant.

4    THE COURT:  Okay, but I'm talking about the ratepayer

5    committee is a statutory -- I mean, you believe that the

6    statute allows me to order the U.S. Trustee to direct a

7    committee of ratepayers --

8    MR. HARRIS:  Yes, Your Honor.

9    THE COURT:  -- because you believe ratepayers are

10   creditors.

11   MR. HARRIS:  They have over 400 million dollars in

12   pre-petition claims.

13   THE COURT:  And why are they creditors under your

14   analysis?

15   MR. HARRIS:  Because they have over 400 million

16   dollars in pre-petition claims.  They have direct rights under

17   utility law --

18   THE COURT:  And where did those pre --

19   MR. HARRIS:  -- to recover those.

20   THE COURT:  Where did those pre-petition claims go on

21   the first billing cycle, if not on the -- instantly?

22   MR. HARRIS:  A portion of the GHG allowances that are

23   to be credited, get paid -- got paid, I should say, in April.

24   Another portion, perhaps probably the entire balance is to paid

25   in October, months into the future.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  So that means --

2          MR. HARRIS:  So we are still creditors.

3          THE COURT:  So that means that by October, there's no

4    more creditors.  So even if I --

5          MR. HARRIS:  On --

6          THE COURT:  Even if I accepted your argument, which

7    I'm not sure I believe, but even on that argument, they're

8    gone; they're out of business as creditors.  I'm not making

9    light of it.  I know their concerns.  Listen, this is not

10   personal.  I'm not trying to say that TURN or the ratepayers

11   aren't voices and don't have a role.  You know my view on CPUC

12   as well, they should be heard.  But how do I get around the

13   fact that even if they were metaphysically creditors, they

14   aren't creditors anymore at some point, and in the near future,

15   if not already.

16         MR. HARRIS:  They may not be creditors, Your Honor.

17   We don't know that PG is going to comply with the law.  We

18   don't know what's going to happen in this case.

19         THE COURT:  Well, because I, kind of, assume they are,

20   okay?

21         MR. HARRIS:  But what if they make an application to

22   the CPUC to change the repayment for a period?  They can do

23   that.  San Diego Gas & Electric did that.

24         THE COURT:  But it's --

25         MR. HARRIS:  What if --

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  It's a setoff right.  I mean, in other

2  words, the difference is we're talking about bankruptcy rights

3  that were frozen on the petition date, right?  So on that day

4  there was some entitlement to some credit, and there may be a

5  customer somewhere who walked into the office of PG&E that day

6  and said I'd like to pay my bill, paid the hundred bucks and

7  said now where's my five dollars?  But in reality -- in the

8  real world of people living, these six million people like you

9  and me and the rest of us, they stopped being creditors for

10  these purposes, as a matter of law, as this process plays out.

11    MR. HARRIS:  Well, I would respectfully disagree that

12  it's a setoff right, Your Honor.

13    THE COURT:  Okay.

14    MR. HARRIS:  This is not an overcharge, which is then

15  subject to rebate and setoff.  This is, in fact, and I'm

16  reading from the request for judicial notice, a decision

17  adopting the Cap-and-Trade Greenhouse Allowance.  CPUC finds:

18    "We decline at this time to allocate any portion of

19  the greenhouse gas allowances towards clean energy or energy

20  efficiency resources, preferring to focus our initial efforts

21  on maximizing the amount of revenues returned directly to

22  residential ratepayers.  We take this approach to mitigate the

23  increased cost of goods and services that will ultimately be

24  borne by residential ratepayers as businesses pass on the

25  carbon cost embedded in their electricity rates."

(979)XXX-XXXX operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    So it's not the original obligation of PG&E.  It's not

2    something they did.  It's something that the legislature

3    determined had to be paid to creditors.

4    THE COURT:  Well, wait.

5    MR. HARRIS:  It's not an offset.

6    THE COURT:  But what is it in bankruptcy terms?

7    MR. HARRIS:  It's a claim.  The California Air --

8    THE COURT:  It's a claim, but it's not an offset?

9    MR. HARRIS:  No, it's not.  The California Air

10   Resources Board sells allowances.  It says to PG&E, here's the

11   money.

12   THE COURT:  But it was and will be paid, right?  And

13   has been paid in part.

14   MR. HARRIS:  It is scheduled to be paid.  I don't

15   believe that the debtor is obligated by your order.  I believe

16   that the order says the debtor is permitted.

17   THE COURT:  Do you think, as a matter of bankruptcy

18   law, it's a claim?

19   MR. HARRIS:  Yes.  I do, Your Honor.  Absolutely.

20   THE COURT:  Okay.

21   MR. HARRIS:  And if the debt --

22   THE COURT:  Because if you say no to that, you're out

23   of business, right?  It has to be a claim to be a hold by a

24   creditor who could there -- be on a committee, so --

25   But why isn't it subject to the common law doctrines

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   of setoff?

2           MR. HARRIS:  Because I don't believe --

3           THE COURT:  Because a claim -- the entitlement of

4   going from A to B that coexists at the same time an entitlement

5   goes from B to A offset themselves as a matter of law.

6           MR. HARRIS:  It's not the same.

7           THE COURT:  Even if you don't call it an offset, or

8   you don't call it anything, it happens as a matter of law.

9           MR. HARRIS:  Your Honor, I believe it's different

10  transactions.  I believe it's different obligations.  There is

11  money somewhere that is owed.

12          I'm not here arguing it's a constructive trust.

13  You'll notice that.

14          THE COURT:  I know you're not.

15          MR. HARRIS:  So --

16          THE COURT:  I know you're not.  So my point is as a

17  matter of bankruptcy law it's a setoff.  If it were the same

18  transaction, it might be subject to recoupment.  But either

19  way, that's bankruptcy terms and common law terms.

20          The point is that under my hypothetical you owe a

21  hundred dollars for your bill.  The utility owes you five

22  dollars for the Greenhouse Cap-and-Trade, whatever the right

23  label is.  They existed on the same day, right?

24          MR. HARRIS:  They did, Your Honor, and I believe that

25  under utility law there's an enforceable right to payment,

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   which is the key to determination of whether there is a claim

2   sufficient to allow ratepayers to seek and serve on a

3   committee.

4       THE COURT:  So we're back to my first day order.  The

5   debtor was authorized to pay it.

6       Now, are you really going to pretend that maybe they

7   aren't going to pay it so they can leave you as a 5 dollar

8   creditor or a $2.50 creditor?  I guess my point is I don't know

9   how we get to where you want me to be, because it seems like it

10  comes back to that same starting point.  If there was a claim

11  at all, it got compensated.  And so you can't have a committee

12  of former creditors.

13      MR. HARRIS:  Well, it may, in the future, be

14  compensated, Your Honor.

15      THE COURT:  Then it's a post-petition, and there's no

16  such animal as a post-petition creditors' committee.

17      MR. HARRIS:  No.  It's a payment of a pre-petition

18  claim post-petition.  That's what we're dealing with here.  And

19  should there be a committee to exist while hundreds of millions

20  of dollars are owed to millions -- 6.1 million individual

21  ratepayers?

22      And let me add, Your Honor, that there are other

23  ratepayers involved in this case.  It's not just the damages

24  from the San Bruno fire --

25      THE COURT:  I know.  I know.

(971)  406-2790  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. HARRIS:  -- which we detailed in our supplemental

2    RJN.

3          THE COURT:  Well, you've got Northern Cal Power.

4    They're in this as a wholesale claimant.

5          MR. HARRIS:  You've got Cal Power.

6          THE COURT:  They're a different kind of creditor.

7          MR. HARRIS:  They are a different kind of creditor.

8          THE COURT:  Right.

9          MR. HARRIS:  But we're asking for a committee that's

10   diverse, that includes all the ratepayers of the State of

11   California, because that's what it's going to take to generate

12   a sufficient amount of certainty, a sufficient amount of trust

13   in the decisions of this Court, have ratepayers participating

14   and showing that the public interest has been served by

15   appointment of a committee.

16         THE COURT:  Are you going to share some time with --

17         MR. HARRIS:  I will.  I'd like to stop for now.  Thank

18   you.

19         THE COURT:  Okay.  And who are you sharing it with?

20         MR. HARRIS:  I believe Nora Sheriff.

21         THE COURT:  Okay.

22         MR. HARRIS:  Counsel for the California Large Energy

23   users.

24         THE COURT:  Okay.  Thank you.  Good afternoon.

25         MS. SHERIFF:  Good afternoon, Your Honor.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1      THE COURT:  Let me have your name again, please.

2      MS. SHERIFF:  Nora Sheriff.  I'm counsel for the

3  California Large Energy Consumers Association or CLECA.  I

4  usually appear before the California Public Utilities

5  Commission down at 505 Van Ness.

6      THE COURT:  Welcome to the bankruptcy court.

7      MS. SHERIFF:  Thank you.  It's my first time.

8          So CLECA is an organization of large industrial

9  customers of PG&E and Southern California Edison that are in

10  the cement, steel, industrial gas, beverage, pipeline

11  transportation, mining and cold storage industries, so distinct

12  from the residential customers and small business customers

13  that TURN represents.  They share the fact that the cost of

14  electricity is a significant component of their cost of

15  manufacturing their product or providing their service, between

16  forty percent to upwards of eighty percent of their costs.  And

17  I heard what you said about ratepayers needing to go to the

18  commission and have their concerns heard there.  And that's

19  normally what I do.

20          There are a couple of ongoing proceedings of the

21  Public Utilities Commission that have an interplay with what

22  you're doing here, Your Honor, in the bankruptcy proceeding,

23  and ratepayers have asked the Commission for increased

24  transparency and clarity in those proceedings where there is

25  overlap and interplay -- the Financial Stress Test proceeding,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   which is Rulemaking 1901-006, the Safety Culture Investigation

2   proceeding, Investigation 15-08-019 -- and we've asked for

3   information about what the process is going to be to enable us

4   to have that voice, and those requests have not been answered

5   yet.

6          I understand the Public Utilities Commission is

7   working very hard on a lot of weighty matters.

8          THE COURT:  But their job is to decide.  I mean, to

9   answer one way or the other.  And I have nothing to do with

10  that decision, right?

11         MS. SHERIFF:  But --

12         THE COURT:  Mine is a pure Bankruptcy Code

13  interpretation.  So, I mean, again, I'm sympathetic, but what

14  do you think I should do as a matter of bankruptcy law?

15         MS. SHERIFF:  I think you should use your discretion

16  to enable us to participate officially on this side of the

17  regulatory divide.

18         THE COURT:  But do you think it's discretionary?  I

19  mean, are you familiar with the ruling I made with the

20  municipalities that asked for a committee?

21         MS. SHERIFF:  Your Honor, I apologize.

22         THE COURT:  Well --

23         MS. SHERIFF:  I am not.

24         THE COURT:  Well, early in the case -- early; I mean,

25  the whole case is not that old -- there was a motion to have a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   committee of governmental entities that are fire victims,

2   including the City of Paradise itself, and there were a number

3   of others.  I've forgotten the name of the group.  But they

4   made the request, and the debtor and the committee and the U.S.

5   Trustee and I were of the view that we simply didn't have the

6   statutory authority, because governmental entity is not a

7   person as defined in the Bankruptcy Code.

8           And the question is, is a ratepayer a creditor as

9   defined?  No question that an individual ratepayer is a person.

10  Nobody doubts that.  The question is whether it's a creditor.

11  And Mr. Harris argues that it is, and I'm just asking you that.

12  This is not about deciding who the good guys or the bad guys

13  are.  I don't know that there is a discretion.  I have to

14  interpret the statute in one way or the other.

15          But go ahead with the rest of your pitch.  I'm

16  listening.

17          MS. SHERIFF:  Well, I can't claim to be an expert in

18  bankruptcy law or be able to argue the case law on the

19  definition of creditors versus noncreditors, et cetera.  But

20  just looking at it from a basic equity point of view.

21          THE COURT:  Yes.  Well, equity, you know, if I had

22  equity, we have a Section called 105 in the Bankruptcy Code.

23  That says just do whatever you want.  But the case law says

24  we -- but we have to follow the Code.

25          So are you familiar with the decision I made in 2001?

(970)448-9393 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        MS. SHERIFF:  In 2001?

2        THE COURT:  Yes.  I mean, I had essentially the same

3   question.  It wasn't teed up the way Mr. Harris has done it

4   here by saying the ratepayers aren't creditors.  I just said

5   ratepayers aren't creditors, therefore no committee.

6        And it was, I mean, it's not that I can't change my

7   position.  It's that I have to see if there is a change in the

8   law.  There's certainly no change in the Bankruptcy Code.  The

9   question is whether the arguments that Mr. Harris has made --

10  and yours.  I'm not making light of it.  I'm saying the

11  fundamental issue is the statute says there can be a committee

12  of creditors and of equity holders.  So I have to figure out is

13  a ratepayer -- clearly not an equity holder.  Is a ratepayer a

14  creditor for purposes of that statute?

15       Anyway, I don't want to give you a speech.  That's

16  just what I'm up against.  So  I don't think it's

17  discretionary.  I think it's interpretation of the statute.

18       MS. SHERIFF:  And I do think you can take note of the

19  changes that have occurred since 2001, and you've had an

20  exchange with the TURN counsel on the greenhouse gas credits.

21  I will say that because most of the CLECA members are energy

22  intensive, they do get the energy-intensive, trade-exposed

23  credits, and those are very significant.

24       THE COURT:  Well, they're bigger.  They're not like my

25  hypothetical of five dollars for Mr. Harris.  But there's --

(972) 786-9800  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MS. SHERIFF:  Exactly.

2          THE COURT:  But it's still the concept.  They still
3     are smaller than the obligation to pay for the power, right?

4          MS. SHERIFF:  But they are important to enable those
5     energy-intensive industrial customers to stay in the State of
6     California, which is why the policy is that they get those
7     credits.

8          THE COURT:  No, but what I'm asking you, is there any
9     situation where the credit exceeds the obligation?  Using my
10    Harris example, I said if he is billed a hundred dollars, and
11    he gets a five dollar credit, is there a situation that has the
12    number in favor of the ratepayer rather than the utility?

13         MS. SHERIFF:  Your Honor, I don't know that off the
14    top of my head.  I will confirm with my --

15         THE COURT:  Well, probably not.

16         MS. SHERIFF:  -- my clients, but --

17         THE COURT:  I mean, it's, sort of, counterintuitive.

18         MS. SHERIFF:  Right.

19         THE COURT:  It's probably not the case.

20         MS. SHERIFF:  Well, I mean, when you're looking at
21    annual average bills of over five million dollars, and that can
22    be hard to overcome that.

23         THE COURT:  Got it.

24         MS. SHERIFF:  But the credits are significant, and I
25    would say that would be one hook that you could use to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    interpret the statute.

2            THE COURT:  Okay, thank you very much.

3            And we have another -- one more?  Are you sharing?

4            MR. GORTON:  Yes, Your Honor.  Mr. Gorton.  I'd like

5    to speak.

6            THE COURT:  Oh.  Well, Mr. Gorton, I saw your papers,

7    I got your brief.  Nice to see you.

8            MR. GORTON:  Thank you, Your Honor.

9            THE COURT:  Just -- take your appearance for the

10   record.

11           MR. GORTON:  Pleasure to be here yet again.

12           THE COURT:  You're one of the veterans from before.

13           MR. GORTON:  I represent the Northern California Power

14   Agency, and NCPA -- that's what we refer to the entity as --

15           THE COURT:  Right.

16           MR. GORTON:  -- is a creditor in the case, based upon

17   FERC refunds.  So we hold claims for FERC refunds.  In the

18   proceedings that we've described in our statement of support

19   for what's referred to as TO18 and TO19 --

20           THE COURT:  Yeah; no, I saw that in there.

21           MR. GORTON:  -- there's claims that are -- amount to

22   something about two-thirds of a billion dollars in rate refunds

23   for transmission rates that were paid with the approval of the

24   FERC, subject to refund if the rate was deemed unreasonable.

25   The ALJ has made a ruling that it appears -- that subject to

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1 FERC confirmation, that there's going to be refunds of about

2 2.3 billion dollars, of which NCPA will receive about 13

3 million dollars; anticipating in that range.

4          In addition -- it's not in my statement of support,

5 I'll acknowledge -- it dawned on me that we're identified as an

6 executory-contract counterparty on twenty-one different

7 executory contracts.  So we have unlim -- we have unliquidated

8 contingent claims in the case.  We are a creditor.  And we are

9 a rate payer.  So I think we can go through threshold of

10 saying, we're creditors, so you can have a committee of

11 creditors.  There are folks like us who can -- who have

12 creditors' claims, who could support --

13          I acknowledge that we are a governmental unit, and

14 that's why my statement of support says we would be prepared to

15 serve on an ex officio --

16          THE COURT:  And you're aware of the --

17          MR. GORTON:  -- basis.

18          THE COURT:  -- prior ruling that I made --

19          MR. GORTON:  I am, Your Honor.

20          THE COURT:  -- anyway, right?  So --

21          MR. GORTON:  I am, Your Honor.

22          THE COURT:  But again, nobody appealed it.  It's the

23 law of the case, I think.

24          MR. GORTON:  So I would say that the NCPA, as a rate-

25 payer creditor, represents an interest that's unique to rate-

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    payer creditors insofar as we're going to be paying the rate

2    for so long as PG&E is a rate collector.  So this means that we

3    have a special interest in not only having our claims paid, a

4    Chapter 11 interest that's normal for a creditor, but we have

5    an interest in a long-term, durable, sustainable, safe solution

6    for the exit in the PG&E Chapter 11, PG&E number II.  And

7    that's an interest that I don't think is represented on either

8    committee in this case, as I look at membership.

9         THE COURT:  Well, your entity might have been able to

10   be ex officio to the regular committee; right?

11        MR. GORTON:  We -- I believe that the United States

12   Trustee could add a rate-payer creditor to the committee that

13   it deems appropriate, and then there would be a voice.  But

14   that doesn't exist today.

15        THE COURT:  No, I understand.

16        MR. GORTON:  Okay.  And I'm simply saying, that's an

17   interest that's not articulated by any of the -- or represented

18   by either of the committees.  I think it's an important

19   issue -- interest.

20        And to your question about the rate-recoupment setoff

21   analysis, I sort of extend your hypothetical and I say, but

22   what if, as in PG&E I, when there was an effort to disaggregate

23   but not to sell -- what if a plan comes in this case -- what if

24   the debtor proposes to sell the wires?  The transmission unit

25   gets sold to another enterprise.  That enterprise would be the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  new rate payer -- I mean, sorry, the new rate collector.

2          THE COURT:  Right.

3          MR. GORTON:  And so my -- our ability to take the

4  refunds against future rates would be cut off, and we would

5  clearly have a right to payment claim, I believe.  But that --

6          THE COURT:  Well, yes, I --

7          MR. GORTON:  Yeah.

8          THE COURT:  -- I agree you might but, again, now we're

9  back to a plan that hasn't been filed and --

10          MR. GORTON:  Oh, absolutely.

11          THE COURT:  -- a concept that hasn't --

12          MR. GORTON:  I understand completely.

13          THE COURT:  -- been looked at.

14          MR. GORTON:  I was just trying to respond to the --

15  automatically the claim goes away.

16          THE COURT:  Well, but --

17          MR. GORTON:  There's --

18          THE COURT:  -- forget your clients and go back to my

19  ten-dollar -- five-dollar credit for Mr. Harris.  Doesn't that

20  go away?  Do you think -- do you think my analysis was

21  incorrect that on the petition date, if he had a hundred-dollar

22  bill, that -- but he only has to pay ninety-five, the credit's

23  gone.

24          MR. GORTON:  If all I had on bankruptcy day was a

25  five-dollar refund and on day -- month following I got it back,

PG&E Corporation and Pacific Gas and Electric Company

1    I got paid.

2          THE COURT:  That's right.

3          MR. GORTON:  I agree.  I agree with that, Your Honor.

4    Can't argue with that.

5          THE COURT:  Okay.

6          MR. GORTON:  But just wanted to help the Court recall

7    that we have a long-term interest --

8          THE COURT:  Well, the anomaly here, or the irony, is

9    that you make a persuasive argument for not being able to be on

10   a committee that I have to decide whether I can appoint,

11   because you can't -- your client cannot be on the committee.

12   And the best you could hope for would be an ex officio.  But

13   the point is you might very well end up being ex officio on the

14   existing committee if the United States Trustee is persuaded to

15   do so.  Again, I'm -- you'll have to decide whether that's

16   worth the trouble.  I'm not going to --

17         MR. GORTON:  Fair enough.

18         THE COURT:  -- get there.  Thank you very much for

19   your --

20         MR. GORTON:  Thank you, Your Honor.

21         THE COURT:  -- contribution.

22         All right, I guess it's time to hear from your side,

23   Mr. Karotkin.  Are you doing the duty today or someone else?

24         MR. KAROTKIN:  I am.

25         THE COURT:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          MR. KAROTKIN:  Thank you, sir.

2          THE COURT:  And the U.S. Trustee and both committees

3    are going to -- they going to be weighing in or not?  Have you

4    agreed to share some time with them?

5          MR. KAROTKIN:  I think, for the first time, Mr.

6    Laffredi has enabled me to speak on his behalf.

7          MR. LAFFREDI:  I'd like say something as well, Your

8    Honor.

9          MR. BRAY:  Your Honor, I just want two minutes,

10   please.

11         MR. LAFFREDI:  Yeah, very quick.

12         THE COURT:  I'm trying to just listen for a while.

13         MR. KAROTKIN:  I'll -- I think I'll be brief, Your

14   Honor, because I think, Your Honor, you put your finger on the

15   issue.  The fact of the matter is that the threshold issue is

16   whether they're creditors.  And they're not creditors.  I

17   think, as TURN in its pleading expressly acknowledged on page

18   10, that the debtors are obligated by both, to use their words,

19   statute and regulation to credit the greenhouse-gas allowances.

20   These are automatic; they're set by the CPUC and are part of

21   the rate-making process.

22         And I think that you made another excellent point with

23   respect to the setoff issue.

24         THE COURT:  See, he says I make excellent points when

25   he agrees with me but, boy, when I say something wrong, it

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    looks like I'm reinventing the Bankruptcy Code.  That's the fun

2    thing about being a judge and having good lawyers come and make

3    their argument.

4         MR. KAROTKIN:  But seriously --

5         THE COURT:  But it's true.

6         MR. KAROTKIN:  I was serious.

7         THE COURT:  No, I --

8         MR. KAROTKIN:  But anyway --

9         THE COURT:  -- I am too.

10        MR. KAROTKIN:  So at best, at best, if they are claims

11   and they have setoff rights, again, as you well know, then

12   they're the equivalent of secured claims, not unsecured claims.

13        THE COURT:  It's even more fundamental, it seems to

14   me.  I seem to remember back a million years ago in law school,

15   learning about these offsetting concepts under a common-law

16   doctrine of compensatia (ph.) or something like that, that they

17   automatically offset.

18        MR. KAROTKIN:  They -- and not only that; under the

19   statute -- I think it's Section 552 -- setoff rights are

20   secured claims.

21        THE COURT:  Well, that's true too.

22        MR. KAROTKIN:  So --

23        THE COURT:  But --

24        MR. KAROTKIN:  So at best --

25        THE COURT:  But that proves too much, because you

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    could have a committee of secured creditors.

2         MR. KAROTKIN:  Not that --

3         THE COURT:  But --

4         MR. KAROTKIN:  You could, but I --

5         THE COURT:  But not if they're paid.  I mean --

6         MR. KAROTKIN:  But not if they're paid.  And I think,

7    again, you fundamentally put your finger on it again when you

8    said, well, these claims are going to be paid.  And again, as

9    counsel, Mr. Harris, acknowledges in the pleadings, we have a

10   legal and statutory obligation to pay them.  On the worst-case

11   basis, all of those alleged pre-petition claims, if they are

12   claims, will be paid in October.  And I can assure you that

13   PG&E is not going to come into court and ask that that be

14   deferred.

15        THE COURT:  Well, I assume that, if the company went

16   before the Commission to say, would you please let us off the

17   hook for October because we want to do something else, you'd

18   have to -- there'd be some consequences, one of which might be

19   you still have a little bit of a claim out there, that -- a

20   pre-petition claim.

21        MR. KAROTKIN:  I can assure you that's not happening.

22        THE COURT:  I --

23        MR. KAROTKIN:  And moreover, San Diego --

24        THE COURT:  I assume too.

25        MR. KAROTKIN:  Mr. Harris referred to what San Diego

operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    Gas & Electric did.  They did not apply to the CPUC to reduce

2    the charge.  All they asked:  that the date by which they had

3    to effect the credit be extended.  So he was incorrect on that.

4              And again, if you were, again, as you said, to appoint

5    a committee based on a claim or an amount that might be payable

6    in October, you'd have to disband it in October, as a practical

7    matter.

8              THE COURT:  Right.

9              MR. KAROTKIN:  It doesn't make any sense whatsoever.

10             And the last thing I will say is --

11             THE COURT:  Well, it seems to me it not only would not

12   make sense; it'd be counterproductive.  It'd be like empowering

13   a committee that says -- it'd be like, yeah, but your term is

14   up.

15             MR. KAROTKIN:  Exactly.  And I think that, again, to

16   the extent that rate payers want their voices heard, they can

17   be heard, as you said in your prior decision, at the CPUC.

18   Basically what they're concerned about is rates going forward

19   and how this case is going to look, from a rate-payer

20   standpoint, coming out of Chapter 11.  And that is within, as,

21   again, I think you expressly concluded in your prior opinion,

22   expressly in the providence of the CPUC, where TURN appears.

23   TURN has the ability to be paid, and that's where they should

24   voice their concerns.

25             And as all of the pleadings -- all of the opposition

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   pleadings state, Your Honor, the creditors' committee has

2   fiduciary obligations to all unsecured creditors, including if

3   rate payers have claims to them and they acknowledge that --

4           THE COURT:  To the extent that they have claims.

5           MR. KAROTKIN:  To the extent they have claims.  And

6   this is an extraordinary remedy they're seeking.  The case

7   law's very clear on that.  And they haven't carried their

8   burden.

9           THE COURT:  Okay.

10          Mr. Laffredi?

11          MR. LAFFREDI:  Thank you, Your Honor.  Tim Laffredi

12  for the U.S. Trustee.  I would echo everything Mr. Karotkin

13  said.  And the U.S. Trustee also does not believe that the rate

14  payers are creditors, but I'm not going to focus as much on

15  that.  I'm going to focus on the -- well, if the Court assumes

16  that they are creditors, what are we doing here?

17          And in TURN's motion, in its reply, it attempts to

18  explain, well, we need a committee of rate payers for these

19  reasons.  Those papers almost entirely neglect the true

20  standard under which the Court needs to evaluate this request.

21  Is there adequate representation?

22          And as the case law indicates, the determinative

23  factor under that is are the credit -- are the committees that

24  are already in existence representative of the interests as

25  unsecured creditors?  And the pleadings filed by TURN almost

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   ignore this part.  They make self-serving and conclusory

2   statements about, well, the committees are not interested in --

3   in assisting or they're not responsive to certain concerns.

4        But then, they go right into all these other reasons

5   and I think Mr. Gorton said it, these special interests that

6   TURN and the rate payers would have.  For example, the payment

7   of lawyers, I mean, that's not the standard.  You don't get a

8   committee just because you want your lawyers to get paid.

9        THE COURT:  It's tempting, though.

10       MR. LAFFREDI:  It's tempting.  Right, exactly.

11  Advocating on behalf of the special interests that rate payers

12  have, the fact that rate payers are funding this case also does

13  not confer committee status.  I mean, that would mean that

14  every, single bankruptcy case would contemplate a committee of

15  vendors or -- or customers.  It's just not contemplated by the

16  bankruptcy code.

17       And so what we want to remind the Court is if the

18  Court is inclined to determine and make the finding that TURN

19  or the rate payers are creditors, that we need to get to the

20  next step and that's whether the committees adequately

21  represent their interests.  Not these special interests or not

22  these other things that they would like as an advocacy group,

23  but rather, as unsecured creditors in this bankruptcy case.

24       And I -- I would submit, as I think the other

25  objections do, that they just have failed to do that.  They

(970) 361-2181 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    have failed to meet their burden.  TURN and the rate payers

2    have failed to demonstrate that.  The committees that are

3    already in place, to the extent they have a claim, are not

4    adequately representing that interest.

5            THE COURT:  Well, it's kind of circular, isn't it?  I

6    mean, I made the statement in the 2001 decision.  I used the

7    Latin term "qua", meaning "as".  And so I said, as creditors --

8    they are not creditors as creditors.  They are -- they are

9    parties as rate payers.  Here, Mr. Harris used an example, his

10   client -- at least, TURN, claims to be a creditor.  I think

11   your point is that in that qua, that role of creditor, it's

12   represented probably by the GUC.

13           MR. LAFFREDI:  Exactly.  That's exactly right.

14           THE COURT:  And at least there's no argument that they

15   aren't.

16           MR. LAFFREDI:  And I think maybe there was one

17   reference in the reply that maybe one of them has -- or some of

18   them have claims under a tort theory, too.  To the extent that

19   there are tort claims, the tort committee would represent that

20   interest.

21           THE COURT:  Yeah and it seems to me, from your point

22   of view, it would be unworkable if you were ordered to create a

23   new committee only of people that happen to be creditors but

24   somehow doesn't do the function of the existing two creditors'

25   committees we have.

PG&E Corporation and Pacific Gas and Electric Company

1     MR. LAFFREDI:  Well, it doesn't -- if it's not

2  contemplated by the code, I don't know what would -- what they

3  would do.

4     THE COURT:  No, no, no, that's right.

5     MR. LAFFREDI:  So an additional point, Your Honor,

6  there -- and also, as the Court noted in its 2001 decision,

7  there are others who are able to come into court and make some

8  of these arguments.  For example, Rule 2018, I believe, for the

9  attorney general, and then -- sorry, I lost my train of

10  thought, there.

11     THE COURT:  Well, yeah, I do recall the attorney

12  general and --

13     MR. LAFFREDI:  Additionally, the --

14     THE COURT:  The United States Trustee?

15     MR. LAFFREDI:  Well, I'm not making any promises

16  there, Your Honor.  So and finally, Your Honor, 1129(a)(6),

17  this was also noted in the court's decision, any plan that the

18  debtors propose, or anyone proposes, must comply with

19  1129(a)(6).  That is not an option here.

20     So the fact that there is not a specific committee

21  that is designed to negotiate that does not mean that the

22  debtor is excused from a compliance end and that any plan that

23  can be confirmed must comply.

24     THE COURT:  Well, is there anything that you would be

25  aware of that either of our official committees, or the debtor,

PG&E Corporation and Pacific Gas and Electric Company

1  really, could say if a group of rate payers asked to

2  participate, to "sit at the table", but not in an official

3  capacity?  You're sort of not involved in that either way, are

4  you?

5          MR. LAFFREDI:  No, I wouldn't know that.  But I don't

6  see why they wouldn't.  And I mean --

7          THE COURT:  I mean, we have other unofficial

8  committees.

9          MR. LAFFREDI:  Exactly.

10          THE COURT:  They're coming on -- there are some

11  unofficial committees in this case.

12          MR. LAFFREDI:  There are, Your Honor.

13          THE COURT:  Now, they are creditors, so they are --

14  it's easy to pay and I guess the difference is they don't bring

15  the label of fiduciary with them --

16          MR. LAFFREDI:  Right.

17          THE COURT:  -- that would go with the official

18  committee.

19          MR. LAFFREDI:  Well, I mean, now we have TURN.  TURN

20  is -- their whole function, it sounds like, is to represent

21  these interests.  They have a claim now.  They could come to

22  the table and do this negotiation, if they would like.  But

23  just because there's no committee that's designed to do that

24  without -- on top of some other interests as an unsecured

25  creditor or other creditor, it doesn't mean that there's no

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  negotiation.

2          THE COURT:  Okay.

3          MR. LAFFREDI:  Thank you, Your Honor.

4          THE COURT:  Thank you, Mr. Laffredi.

5          Either of the committees, Mr. Bray, do you want to --

6  and is the tort committee going to be heard today, too?  Are

7  you doing the heavy lifting for both committees today?

8          MR. BRAY:  I would never speak for Ms. Dumas.

9          THE COURT:  Whatever.

10         MR. BRAY:  Your Honor, I just want to follow up on a

11 couple comments particularly made by the U.S. Trustee as to the

12 motion and the creditors' committees views on this.  Whatever

13 status you want to confer there, setoff, right credit, whatever

14 it is, it certainly, in our view, doesn't rise to the level of

15 a separate committee.  To the extent that the rate payers are

16 concerned about payment of their claims, and I think I heard

17 the term "safe and sustainable" PG&E or a new utility.

18         THE COURT:  I think Mr. Karotkin was saying --

19         MR. BRAY:  I can assure the Court we have a very

20 diverse committee.  We have labor, we have vendors, we have

21 suppliers, we have pensioners represented.  We have

22 counterparties to executory contracts.  We have long-term

23 providers of capital.

24         All of our constituency is focused on the same issues:

25 payment of unsecured claims and the safe and sustainable entity

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  post reorganization.  That's our focus.  We have no -- there's

2  no divergent of interest with any creditor group on that

3  matter.  I think we've been very clear with the Court about

4  that.  You know, there are pleadings that we filed and we think

5  that we're more than capable, as fiduciaries, to claimants who

6  do have -- or creditors who do have claims of representing

7  their interests in a satisfactory manner.

8  The only area I see where there's a possible

9  divergence has nothing to do with the debtor-creditor

10 relationship that the committee should be based upon.  It's the

11 notion of raising the rates with the rate payers, which I

12 understand may be an issue.  But that's certainly not an issue

13 for an official committee in a bankruptcy court to decide.  I

14 think the Court was focused on this in its previous decision.

15 We're focused on the debtor-creditor relationship, here.

16 That's really outside the bounds of a debtor-creditor

17 relationship.

18 THE COURT:  Yeah, I don't know that I articulate it

19 that same way, but it seems to me that's what we do, that we

20 do --

21 MR. BRAY:  Exactly.

22 THE COURT:  -- debtor-creditor rights and

23 (indiscernible) in the case of an insolvent state, equity

24 holders.  And an insolvent state, which is the more typical

25 cases that we handle every day, that's whose rights we're

PG&E Corporation and Pacific Gas and Electric Company

1　dealing with. We don't deal with divorces and we don't deal

2　with parentages and we don't deal with, you know, other kinds

3　of relationships very much.

4　　　　　MR. BRAY: I agree with that, Your Honor. It goes

5　back to our discussion about FERC.

6　　　　　THE COURT: The customers -- I mean, the person

7　who's --

8　　　　　MR. BRAY: That's what FERC does. They deal with

9　regulatory issues. CPUC deals with those issues. We're here

10　to deal with the debtor-creditor relationship. And again, just

11　to close, we're more than comfortable that we can adequately

12　represent all creditors' interests with respect to those

13　matters.

14　　　　　We think we have a diverse committee that can take

15　into account all the views that are properly taken into

16　account, irrespective of Chapter 11 process. And if we think

17　that there is a concern there, we would certainly raise it with

18　the Court or the U.S. Trustee.

19　　　　　THE COURT: Okay.

20　　　　　MR. BRAY: Unless you have any questions, I'll stand

21　down.

22　　　　　THE COURT: No, I don't. Thank you, Mr. Bray.

23　　　　　So am I right? We are not going to hear from the TCC

24　side? Ms. Dumas, did you want to say anything? You did file

25　something.

(973) 406-2250　operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1     MS. DUMAS:  I would, Your Honor.  Thank you.  Cecily

2  Dumas, Baker Hostetler on behalf of the Official Committee of

3  Tort Claimants.  The committee has elected not to take a formal

4  position, with respect to the motion.  It's sympathetic to the

5  concerns of the rate payers, particularly in the event that

6  this turns out to be an estate that may be insolvent.  And the

7  cost of the wildfire losses get past, in part, through to rate

8  payers.  The Official Committee of Tort Claimants represents

9  probably the largest group of customers of PG&E.  So we are

10  customers, not in our capacity here, as rate payers --

11     THE COURT:  Right.

12     MS. DUMAS:  -- but we are local.  We are the

13  communities.  We've also considered the technical legal issues

14  that Your Honor has raised with the Court.  An for those

15  reasons, we've elected to simply not take a position.

16     THE COURT:  Okay.  Thank you, Ms. Dumas.

17     All right, Mr. Harris, you have the closing comments.

18  And then I'll take the matter -- and at this time I'm also

19  going to take under advisement -- I want to give this a thought

20  and I hope to issue a written decision on this one sometime in

21  the very near future.  But go ahead and make your closing

22  comments.

23     MR. HARRIS:  Thank you, Your Honor.  I can see that a

24  steep slope became a bit harder to climb over the course of

25  this argument.  But --

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1          THE COURT:  Well, sometimes that's what it's all

2    about, right?

3          MR. HARRIS:  I do have some comments, though, Your

4    Honor.  First, you know, I appreciate Your Honor simplifying

5    things down to a hypothetical.  But there is another point for

6    claims besides the GHG allowances.  It's the wrongdoing that

7    PG&E engaged in that is subject to investigation by the CPUC,

8    tens of millions of dollars.  And this is set forth at pages 5

9    through 6 of my brief.  Misrepresentations with regard to

10   communications about the San Bruno fire, explicit

11   misrepresentations about where and when permits are issued for

12   excavation.

13          I mean, we're talking about a very substantial claim

14   here that would go to rate payers.  That's not something that's

15   going to be paid, necessarily, by October.  We don't know when

16   it's going to be fully adjudicated.  But it exists and it

17   continues.  And I would note that there is no bar date for

18   claims yet, so we don't know the full extent of what claims for

19   rate payers might be.  I did note that in the debtors' motion,

20   they said that rate payers need not file claims.  But I suspect

21   we will.

22          THE COURT:  But I mean, again, don't you think the

23   reason why rate payers don't file claims is because the

24   debtors' position is they're not creditors?

25          MR. HARRIS:  And I disagree with that.  I think we are

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  creditors.

2        THE COURT:  Well, I understand.  And what do you do in

3  a case where you aren't listed as a creditor and don't -- and

4  the debtor says I don't owe this person anything?  You file a

5  claim --

6        MR. HARRIS:  Exactly.

7        THE COURT:  -- if you believe you're entitled to it.

8  And if you file a frivolous claim, there are consequences.  And

9  if you file a claim with a basis, then you've done all you can

10  do at that point.

11        MR. HARRIS:  Sure.  And I don't want to speculate, but

12  it could --

13        THE COURT:  But again, but what if -- I mean, I've

14  read your papers.  Let's focus on the San Bruno fire.  If the

15  San Bruno fire was -- and following the San Bruno fire, there

16  was some mischief by PG&E individuals or the company and that

17  gives rise to what, in terms of bankruptcy terms?  A claim?

18        MR. HARRIS:  It could be -- it is a claim and it could

19  be paid in any number of ways.

20        THE COURT:  Right.

21        MR. HARRIS:  It could be a statement credit.  It could

22  be a cash payment.

23        THE COURT:  But it's a claim.

24        MR. HARRIS:  It is a claim.

25        THE COURT:  And the person who owns the claim is

PG&E Corporation and Pacific Gas and Electric Company

1    somebody who has been harmed by the conduct.  Now the perfect

2    example, obviously, would be just like the -- the 2017 and 2018

3    fire victims.  There are, or were, San Bruno fire victims.  If

4    they have -- if they didn't have claims -- I mean, if their

5    claims still exist, they'd be creditors.  They wouldn't have

6    claims as rate payers.  Why do you think it's different now?

7         MR. HARRIS:  Because these are separate claims that

8    are owed to the rate payers generally for misconduct for --

9         THE COURT:  But how does the misconduct --

10        MR. HARRIS:  -- essentially damage the public.

11        THE COURT:  -- harm the person in the role of a person

12   who pays a rate, a person who purchases services?

13        MR. HARRIS:  Your Honor, it's essentially a penalty

14   for failure to comply with applicable utility law.  And it's

15   paid out to the state's general fund.  It's paid out to

16   particular cities listed in my papers.  And it's paid out to

17   the rate payers.  So it's hard to say there's really a basis

18   for an offset here at this point. It's completely unliquidated.

19   The parties are just so different.

20        But I'd like to move on.  You had a very specific

21   question about can the credit -- the five-dollar credit be

22   exceeded by a rate payer who has a small bill and the answer is

23   yes.  A specific example would be a solar-enabled rate payer,

24   whose net energy use doesn't create a bill.  PG&E still owes

25   the rebate.  So I know that's a very granular point, but you

(970) 665-279 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1  asked if it was possible --

2         THE COURT:  No, I understand.  I understand the point.

3         MR. HARRIS:  -- that the credit could be issued.

4         THE COURT:  I mean, you'd have -- I guess even the

5  people with solar sometimes are borrowing gas from the same

6  utility.  But leaving that aside, you know, we get the ads for

7  don't have to pay your bill anymore, buy solar.  But therefore,

8  what?  I mean, that -- are you entitled to a rebate if you

9  don't pay anything?  Is that what you're talking about?

10        MR. HARRIS:  You are.

11        THE COURT:  Okay.

12        MR. HARRIS:  That's exactly right.

13        THE COURT:  Okay.

14        MR. HARRIS:  So there is a rate dependent --

15        THE COURT:  So when was it paid?  If I went all solar

16 on January 29th and suddenly I think, God, I never have to pay

17 another PG&E bill, I would've gotten my refund in April?

18        MR. HARRIS:  I would assume that --

19        THE COURT:  Or October?  Then I'm done, right?

20        MR. HARRIS:  I would assume that PG&E will have to

21 issue checks April, October or at some point, but I'm -- I

22 don't know when.

23        THE COURT:  But you heard my discussion with Mr.

24 Karotkin.  Even if you are a creditor for that temporal time,

25 you're going to stop being a creditor because as a matter of

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    law, your claim's going to be paid, notwithstanding the

2    bankruptcy.

3         MR. HARRIS:  That's correct, Your Honor.

4         THE COURT:  I mean, it's in effect.  It's in effect of

5    preference of a special class of creditor that's going to get

6    paid even if there's never a Chapter 11 plan, right?

7         MR. HARRIS:  Well, it's not dissimilar to the spouse

8    who's owed alimony maintenance or support.  There's a periodic

9    obligation.  They have to be paid.  But that doesn't mean

10   they're not creditors, Your Honor.  That doesn't mean they

11   don't have a right to participate in the case.

12        I do want to move on to Mr. Karotkin's point.  I don't

13   agree, for the reasons that we've just been talking about, that

14   my clients are not creditors.  There are the rights from the

15   San Bruno fire and the ground excavation violations that we

16   talked about.  I don't think it's counterproductive to have a

17   committee that has a time limit.  I think that this case needs

18   to resolve relatively quickly.  And to think that we're not

19   going to have a plan by next October is problematic for me.  To

20   remove the voices from the rate payers, at this stage, when

21   they could be heard, at least on an official basis, would be

22   greatly beneficial.  And I think it would streamline these and

23   speed up this case.

24        Your Honor, I think it's important to look -- and we

25   really never got to this, about what a rate payers committee

(970) 356-7500  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   would do.  You know, we've heard a lot of talk about, well,

2   everything's all about 1129(a)(6), that that essentially

3   preempts any concerns the rate payers might have.  But the rise

4   in rates is not solely considered at the time of the plan.

5   Your Honor, if you --

6           THE COURT:  Well, but if it is considered, who

7   considers it?

8           MR. HARRIS:  Well, it's the impact of what happens in

9   this court.

10          THE COURT:  Not the bankruptcy court.

11          MR. HARRIS:  Let's say you, Your Honor, decide that

12  you have jurisdiction over Section 365 and not FERC.  And --

13          THE COURT:  Well, no.  The issue is whether I share

14  it --

15          MR. HARRIS:  You share.  Okay, whether the contract --

16          THE COURT:  -- not that I don't have some of it.

17          MR. HARRIS:  -- whether the contract is rejected and

18  the financial consequences of that.

19          THE COURT:  Okay, right.

20          MR. HARRIS:  And the restructuring of those contracts

21  may well be an integral part of this reorganization.

22          THE COURT:  Okay.

23          MR. HARRIS:  That will effect rates and it will never

24  come before the CPUC under 1129(a)(6).

25          THE COURT:  Well, I don't know that.  I don't know if

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1   that's true or not.  Because if there's a number of rejections,

2   that might give rise to substantial damage claims.  I don't

3   know.  I mean, I'm not able to -- and it's not my job to figure

4   out what's the CPUC's role, if there's a contract rejection.

5   So you're suggesting that there may be consequences that aren't

6   framed by the four corners of Section 1129 of the code.  That

7   may be true.  But 1129 is the only successful door out, you

8   know?

9          There are only -- if you come into Chapter 11, there

10  are only three ways out.  It's like the roach motel.  You go

11  in -- or two.  Chapter 7 or out, or dismissal.  You know, what

12  I'm saying.

13         MR. HARRIS:  Yes, Your Honor.

14         THE COURT:  But the point is, no matter which way

15  you're there, the bankruptcy court doesn't get involved in

16  fixing rates.  Authorizing rejection of a contract allows

17  consequences, but not rates.

18         MR. HARRIS:  I understand, Your Honor.  But the point

19  is that there may be consequences that the rate payers would

20  want to be heard on here, saying okay, if we do this, the

21  result is X.  And if we do that, the result is Y.  And that's

22  part of why we need to be heard on this side of the regulatory

23  divide.  It's critical that rate payers be able to comment on

24  everything that happens here, because very little of what

25  happens here is considered there.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1    THE COURT:  Okay, so let's suppose we get a great big

2    PPA and leave aside the FERC issue, because that -- I don't

3    want to go there today.  Let's suppose we have a substantial

4    executory contract that the debtor moves to reject.  And I'm

5    asked to grant that motion or deny it.  And you're come to the

6    podium and you're representing the rate payers.  What's your

7    frame?  How do you frame whatever position you want?  Whether

8    you want me to reject it or assume it, how do you articulate

9    that position?

10    MR. HARRIS:  Well, Your Honor, the rate payers may

11    wish to be heard on a cost basis, on the impact on cost.  They

12    might wish to be heard on how it effects the overall power mix

13    in the state and how the contract is restructured and what

14    impact it will have down the line on the other power producers.

15    You can see that there's a wealth of things that this court may

16    actually want to consider before it gets over to the CPUC, if

17    it gets to the CPUC.  We don't know that that's going to

18    happen.  There's no transparency.  And Ms. Sheriff would talk

19    about that, if asked.  There's zero transparency as to what is

20    going on here when you look at it from the CPUC point of view.

21    Your Honor, I want to close with this.  I certainly

22    appreciate that the creditors' committee wishes to say that it

23    is a welcoming place for rate payers.  We really don't see it

24    as that.  They just have different interests than us.  It is

25    certainly true that to the extent that there's just purely a

PG&E Corporation and Pacific Gas and Electric Company

1    question of payment of an unsecured claims, the narrow

2    adjustment of the debtor-creditor relationship.

3           Yes, we share interests there.  But the interests of

4    rate payers, the diversity of what the rate payers may wish in

5    these cases can greatly differ from what the committee has

6    already said.  The committee says we don't have claims.  The

7    committee says if we do have claims, they're going to get paid

8    anyway, so it's safe to ignore us.  The rate payers have

9    concerns, Your Honor, that even if we were appointed and

10   granted a seat on the committee, we don't think that it would

11   be sufficiently representative.  If you have any other

12   questions, Your Honor, I'm happy to answer them.

13          THE COURT:  No, I don't.  And I appreciate all sides

14   in the argument and the oral presentation, the written

15   presentation.  I compliment you all for doing that and the ball

16   is in my court to figure out what to do.  I will do my best to

17   issue a written decision as promptly as I can.  I can't promise

18   you it's -- what day it's going to be.  I'll do my best to do

19   it quickly.

20          MR. HARRIS:   I look forward to it, Your Honor.  I

21   know things are busy in here.

22          THE COURT:  Thank you.  Thank you all for your time.

23   And I believe we're finished.  And Mr. Karotkin, unless you

24   have any follow-up, any housekeeping?

25          MR. KAROTKIN:  No, we're done.  Thank you very much.

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corporation and Pacific Gas and Electric Company

1        THE COURT:  Okay.  I'll see you all next month.  No,

2    on the 22nd, on our next calendar.  Thank you.  Thank you.

3    Have a good day everyone.

4        (Whereupon these proceedings were concluded at 12:41 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

of 179   operations@escribers.net | www.escribers.net

1                    I N D E X

2    RULINGS:                                     PAGE LINE

3    Application for the retention of DSI and      19    10

4    Lincoln Partners Advisors LLC granted

5    Application for the retention of Centerview   18    5

6    Partners LLC granted

7    Application for the retention of Groom Law     20    22

8    Group tentatively approved pending supplemental

9    declaration

10   Application for the retention of Axiom         21    20

11   Advisors granted

12   Application for the retention of Simpson       22    20

13   Thacher granted

14

15

16

17

18

19

20

21

22

23

24

25

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 155
of 179
(973) 406-2250 | operations@escribers.net | www.escribers.net

1    C E R T I F I C A T I O N

2

3    I, Colin Richilano, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ COLIN RICHILANO

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  May 10, 2019

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

**$**

**$2.50 (1)**
120:8

**A**

**abide (1)**
58:2
**abilities (1)**
77:6
**ability (7)**
49:20;53:25;73:18;
75:11;110:25;130:3;
135:23
**able (10)**
7:2;40:3;61:20;
74:16;124:18;129:9;
131:9;139:7;151:3,23
**absolute (1)**
7:20
**Absolutely (8)**
28:9;54:17;79:4;
106:9;108:23;112:18;
118:19;130:10
**abstain (3)**
49:20;79:7;81:21
**abundance (1)**
18:14
**accept (3)**
62:16;92:24;110:14
**acceptable (3)**
17:19;18:13,19
**accepted (1)**
116:6
**accomplish (1)**
89:14
**accordance (1)**
44:25
**accordingly (1)**
70:2
**account (5)**
29:22;32:3;41:19;
143:15,16
**accruing (1)**
46:13
**accumulation (1)**
45:13
**acknowledge (5)**
88:20;89:2;128:5,13;
136:3
**acknowledged (1)**
132:17
**acknowledges (2)**
42:20;134:9
**acquired (1)**
111:17
**act (3)**
6:22;25:24;96:13
**acting (2)**
34:3;39:24
**action (11)**

24:18;37:19;40:12;
60:4;72:4,8,8,10;
78:20;83:17;93:9
**actions (3)**
44:24;89:6;93:5
**actually (12)**
8:25;14:1;17:13,22;
21:4;23:7;24:1;72:24;
78:17;80:3;108:23;
152:16
**ad (1)**
109:24
**add (7)**
6:5;16:6;33:12,13;
64:16;120:22;129:12
**added (1)**
56:18
**addition (1)**
128:4
**additional (3)**
45:13,13;139:5
**Additionally (1)**
139:13
**address (3)**
17:23;83:14;101:23
**addressed (2)**
55:13;89:12
**adequate (3)**
75:16;92:8;136:21
**adequately (3)**
137:20;138:4;143:11
**adjudicate (1)**
88:20
**adjudicated (1)**
145:16
**adjudicative (1)**
34:10
**adjustment (1)**
153:2
**administered (1)**
27:21
**admitted (1)**
14:17
**admittedly (1)**
113:7
**admitting (1)**
83:20
**adopting (1)**
117:17
**ads (1)**
148:6
**advance (2)**
40:10;68:24
**advanced (1)**
72:21
**advantage (1)**
9:2
**adversarial (2)**
10:17,25
**adversaries (1)**
10:21
**adversary (1)**
56:10

**adverse (4)**
10:11,21;21:24;
63:19
**advice (2)**
65:8,13
**advise (1)**
43:2
**advisement (3)**
95:15;107:23;144:19
**advisors (1)**
12:9
**advocacy (1)**
137:22
**advocate (1)**
10:23
**advocates (4)**
10:9,23;12:10,11
**Advocating (1)**
137:11
**affect (2)**
16:24;98:20
**affected (2)**
39:7;87:9
**affiliate (4)**
9:22,23;10:1,3
**affirmed (1)**
31:3
**afternoon (3)**
24:25;121:24,25
**afterwards (1)**
9:24
**again (55)**
12:12;20:5;21:2;
22:6;23:20;31:2,20;
36:24;40:22;42:7;52:6;
53:19;56:7;57:23;58:3,
12;59:16;63:1;64:22;
66:4;69:18;78:7,8;
80:24;86:8;89:3,8,17,
18;90:11,19;91:7;
92:23;96:22;101:2;
102:24;106:23;108:3;
122:1;123:13;127:11;
128:22;130:8;131:15;
133:11;134:7,7,8;
135:4,4,15,21;143:10;
145:22;146:13
**against (31)**
33:11;47:20;53:1;
60:22;73:3,4,8,19;
74:17,19;75:23;76:2,
12,15,24;77:10;91:15,
16,21,25;92:2,18,21;
93:5,10;94:10;95:3;
98:22;100:15;125:16;
130:4
**agency (6)**
33:15;34:9,19;39:23;
51:2;127:14
**agenda (2)**
15:14;23:2
**ago (2)**
80:1;133:14

**agree (24)**
25:19;29:25;30:4,23;
41:24;45:23;48:23;
49:2;51:10;58:9;62:3,
15,24;63:2,8;70:5,5;
91:4;112:11;130:8;
131:3,3;143:4;149:13
**Agreed (2)**
51:5;132:4
**agreeing (2)**
41:16;73:19
**agreement (1)**
25:25
**agrees (2)**
28:20;132:25
**ahead (13)**
7:16;23:6;33:12;
35:6;43:25;44:10;
64:17;83:15;104:16;
108:6;109:17;124:15;
144:21
**aid (1)**
112:15
**Air (2)**
118:7,9
**alimony (1)**
149:8
**alive (1)**
42:19
**ALJ (9)**
42:8;56:1,13;60:1,
14;62:15,17;66:11;
127:25
**alleged (1)**
134:11
**allocate (1)**
117:18
**allocations (2)**
11:17;16:4
**allow (3)**
94:12;107:8;120:2
**allowability (1)**
47:10
**Allowance (1)**
117:17
**allowances (5)**
115:22;117:19;
118:10;132:19;145:6
**allowed (8)**
46:16;55:20;61:24;
83:1,18,18;89:11;
100:2
**allowing (2)**
45:3,11
**allows (3)**
94:13;115:6;151:16
**almost (3)**
48:19;136:19,25
**alone (1)**
7:13
**along (4)**
39:18;85:12,15,18
**although (2)**

20:13;65:1
**always (5)**
8:10;9:10;73:7;
89:20;90:12
**amount (22)**
14:10;21:13;29:1;
35:25;25;38:5;40:21;
46:1;47:11;48:19;
52:17,21;53:4;58:12;
99:25;100:2;102:21;
117:21;121:12,12;
127:21;135:5
**amounts (1)**
11:17
**analogue (1)**
60:4
**analysis (17)**
10:15,20,20;11:3;
13:3;29:25;31:24;
36:15,19;42:19;47:24;
49:3;53:25;60:11;
115:14;129:21;130:20
**analyzed (1)**
37:5
**analyzing (1)**
36:19
**animal (1)**
120:16
**announced (2)**
101:12;104:11
**annual (1)**
126:21
**anomaly (1)**
131:8
**answered (1)**
123:4
**anticipate (2)**
7:2;85:25
**anticipating (1)**
128:3
**anymore (3)**
113:3;116:14;148:7
**apologize (5)**
23:7;70:22;78:5,8;
123:21
**appealed (1)**
128:22
**Appeals (1)**
31:3
**appear (3)**
16:23;110:8;122:4
**appearance (2)**
46:24;127:9
**appearing (2)**
96:21;108:15
**appears (2)**
127:25;135:22
**applicable (9)**
55:23;59:6;69:16;
72:19;77:13,24;78:9;
107:17;147:14
**application (19)**
19:23,23,24;20:9,19,

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 157
of 179

23,24;21:20;22:8,8;
23:24;26:1,22;28:1;
32:14,15;47:20;55:23;
116:21
**applications (10)**
13:12,16;15:13;19:8;
21:21;23:19;24:15;
25:22;26:16,19
**applies (15)**
10:1;29:23;30:4;
32:1;33:9,10;39:4;
40:9;50:13;54:11;
55:14;58:1,5,18;65:15
**apply (11)**
6:17;10:3,14;29:4;
30:11;51:1;54:10;
62:13;68:19;75:25;
135:1
**applying (1)**
81:3
**appoint (3)**
112:11;131:10;135:4
**appointed (1)**
153:9
**appointment (2)**
81:9;121:15
**appreciate (8)**
17:7;19:6;46:20;
68:25;83:9;145:4;
152:22;153:13
**approach (5)**
48:8;63:8;86:2,14;
117:22
**appropriate (7)**
26:18;55:17;86:16;
90:15;102:3;107:12;
129:13
**approval (2)**
39:6;127:23
**approve (3)**
18:4;20:18;22:14
**approved (1)**
21:22
**approving (1)**
19:7
**approximately (2)**
26:3,18
**apps (1)**
15:11
**April (4)**
114:1;115:23;
148:17,21
**area (2)**
6:10;142:8
**areas (1)**
65:5
**argue (7)**
31:22;37:5;54:11;
81:20;95:1;124:18;
131:4
**argues (2)**
31:23;124:11
**arguing (3)**

31:23;71:8;119:12
**argument (21)**
7:14,22;10:7;16:13;
32:3,4;50:18;55:13;
71:24;83:10;93:15;
111:23,23;112:20;
116:6,7;131:9;133:3;
138:14;144:25;153:14
**arguments (4)**
7:25;97:21;125:9;
139:8
**arises (1)**
53:9
**around (6)**
10:6;12:18;13:19;
69:18;114:19;116:12
**arrive (1)**
47:22
**Article (1)**
81:9
**articulate (2)**
142:18;152:8
**articulated (1)**
129:17
**aside (2)**
148:6;152:2
**aspect (1)**
51:18
**asserted (1)**
28:17
**assertion (3)**
50:12;51:18;53:1
**asset (1)**
110:15
**assets (2)**
61:5;110:23
**assisting (1)**
137:3
**associated (1)**
89:13
**Association (3)**
22:23;99:1;122:3
**assume (15)**
17:18;19:25;21:4,11;
52:11;87:1;112:3,24,
25;116:19;134:15,24;
148:18,20;152:8
**assumed (1)**
102:5
**assumes (1)**
136:15
**assure (3)**
134:12,21;141:19
**attach (1)**
46:5
**attaches (1)**
19:25
**attaching (1)**
36:5
**attempt (1)**
29:21
**attempting (1)**
26:17

**attempts (1)**
136:17
**attention (1)**
37:15
**attorney (6)**
7:20,21;62:9;95:21;
139:9,11
**attorney's (1)**
25:11
**attribute (1)**
14:21
**audio (1)**
45:21
**author (6)**
7:15,17;18:25;19:1,
14;82:5
**authority (3)**
39:23;101:10;124:6
**authorized (1)**
120:5
**authorizes (1)**
114:10
**Authorizing (1)**
151:16
**automatic (11)**
29:4;35:15;40:11;
57:4;75:21,24;82:9;
105:13,15;106:2;
132:20
**automatically (3)**
65:6;130:15;133:17
**available (4)**
77:20;83:19;84:5;
107:18
**average (1)**
126:21
**avoid (3)**
45:21;60:19;68:20
**award (1)**
76:23
**aware (4)**
14:20;103:4;128:16;
139:25
**away (4)**
48:12;114:9;130:15,
20
**Axiom (3)**
21:11,14,19

**B**

**b4 (10)**
50:13,20;51:19;
53:23,25;54:3,6,10;
58:1;59:19
**back (24)**
24:17;25:5;28:1,8,
25;40:2;41:25;46:1,4,
18;48:19;79:11;83:5;
85:6,7,14,19;120:4,10;
130:9,18,25;133:14;
143:5
**background (3)**

23:15;71:24;98:12
**backward-looking (1)**
38:2
**bad (2)**
8:24;124:12
**Baker (1)**
144:2
**Bakersfield (1)**
95:22
**balance (3)**
98:24;99:21;115:24
**balancing (1)**
102:2
**ball (1)**
153:15
**ball's (1)**
66:2
**bank (2)**
41:19;105:25
**Bankruptcy (71)**
10:12;21:3;27:14;
30:21;31:21;34:9;
35:12;40:5,7;41:20;
43:9,19;45:19;46:4;
48:18;49:19,23,25;
50:1,4;52:16,20;56:9;
57:19;58:14;59:15;
60:19;65:2,18,23;
66:17;72:7,9;76:7;
78:21;79:2;84:7;87:8;
88:22;89:11;92:15;
94:9;99:22;101:12;
105:19;106:1;107:1;
113:6;117:2;118:6,17;
119:17,19;122:6,22;
123:12,14;124:7,18,22;
125:8;130:24;133:1;
137:14,16,23;142:13;
146:17;149:2;150:10;
151:15
**bar (12)**
81:13,14,19,19,25;
89:23,25;98:9,10;
105:24;106:18;145:17
**based (5)**
27:8;113:1;127:16;
135:5;142:10
**bases (1)**
114:3
**basic (1)**
124:20
**basically (3)**
50:18;55:19;135:18
**basis (16)**
26:20;36:19;51:21;
65:8;69:9;78:23;79:2;
82:10;97:10;110:9;
128:17;134:11;146:9;
147:17;149:21;152:11
**became (2)**
111:21;144:24
**become (5)**
98:5;99:21;114:15

**becomes (1)**
98:6
**beforehand (1)**
69:6
**behalf (13)**
13:10;16:20;19:2,2;
22:22;25:8;43:23;
70:25;71:21;96:19;
132:6;137:11;144:2
**belong (1)**
7:19
**beneficial (1)**
149:22
**benefit (2)**
39:25,25
**Benvenutti (4)**
7:6,24;13:10;15:7
**Benvenutti's (1)**
7:13
**Berg (5)**
34:15,20;37:8;38:10,
11
**besides (1)**
145:6
**best (7)**
58:6;131:12;133:10,
10,24;153:16,18
**better (4)**
37:18;65:12;76:22;
89:8
**beverage (1)**
122:10
**bifurcate (5)**
73:4,18;76:5
**bifurcated (1)**
22:9
**bifurcation (2)**
42:18;63:3
**big (11)**
7:3,23;8:2;10:4,4;
12:8;47:12;65:19;83:4;
104:18;152:1
**bigger (2)**
63:14;125:24
**bill (14)**
112:23;113:1,2,8,16;
114:2,2;117:6;119:21;
130:22;147:22,24;
148:7,17
**billed (2)**
113:23;126:10
**billing (2)**
114:16;115:21
**billion (6)**
12:13,14;110:16,16;
127:22;128:2
**bills (1)**
126:21
**Binder (1)**
108:14
**bird-dogging (2)**
22:7,14
**bit (9)**

Min-U-Script®

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 158
of 179

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(2) applications - bit

13:19;14:10;20:20;
33:1;52:24;106:11;
111:19;134:19;144:24
**blamed (1)**
8:6
**blank (1)**
64:19
**blessed (1)**
8:12
**blocking (1)**
104:18
**BLOOM (12)**
43:23,23;44:2,5,7,8,
9,11,12;46:7,21,22
**Blue (9)**
75:5,15,20;76:13,16,
17;91:22;93:10;94:10
**board (1)**
43:15;118:10
**boat (1)**
91:4
**body (1)**
34:10
**bogged (1)**
20:6
**bond (1)**
105:25
**borne (1)**
117:24
**borrowing (1)**
148:5
**both (14)**
7:16;13:20;31:5;
32:10;38:11,12,21;
43:21;48:14;49:11;
86:1;132:2,18;141:7
**bounds (1)**
142:16
**boy (1)**
132:25
**BRAY (34)**
22:4;46:25,25;47:2,
4,9,15,18;48:4,21,25;
49:2;50:8,11;51:5,10,
12,17;52:1,5,10,13,23;
53:3;132:9;141:5,8,10,
19;142:21;143:4,8,20,
22
**Bray's (1)**
65:7
**breach (1)**
106:16
**break (6)**
45:20;65:1;70:10,17,
17;108:3
**breathing (1)**
106:3
**bridge (2)**
59:2,2
**brief (14)**
19:14;35:5;53:16;
54:2,3;57:25;69:3,19;
99:14;114:4,5;127:7;

132:13;145:9
**briefing (6)**
54:1,7;57:25;58:3,
20;59:20
**briefings (1)**
59:17
**briefs (2)**
16:11;50:25
**bring (6)**
40:2;45:16;66:11;
79:2;114:24;140:14
**brings (1)**
101:10
**broad (5)**
26:7;50:12,14;83:10;
106:11
**broader (2)**
11:25;86:2
**Brockovich (1)**
83:2
**Brockovich-type (1)**
85:21
**broke (1)**
54:12
**Bruno (7)**
120:24;145:10;
146:14,15,15;147:3;
149:15
**bucks (1)**
117:6
**bunch (1)**
112:12
**bundle (1)**
28:18
**burden (5)**
72:6;79:23;103:13;
136:8;138:1
**business (5)**
16:24;74:15;116:8;
118:23;122:12
**businesses (2)**
109:19;117:24
**busy (3)**
7:1;9:11;153:21
**butchering (1)**
72:2
**buy (1)**
148:7
**by-case (1)**
65:8

**C**

**Cal (2)**
121:3,5
**calculate (3)**
40:20;47:17,18
**calculating (1)**
38:2
**calculation (3)**
48:2;59:24;60:9
**calculations (1)**
59:12

**calendar (17)**
6:5;7:9;9:6,14,14;
24:16;71:1;90:5;96:5,
23;97:16,18;103:25;
104:4,6,15;154:2
**calendars (1)**
6:25
**CALIFORNIA (11)**
6:1;95:22;118:7,9;
121:11,22;122:3,4,9;
126:6;127:13
**Call (11)**
6:3;27:2;39:16;
51:23;54:2;65:17;78:4;
93:2;96:15;119:7,8
**called (6)**
33:11;41:10;60:1;
74:20;95:9;124:22
**calls (1)**
84:10
**came (3)**
18:11;22:10;31:4
**can (84)**
7:10,14;8:3;9:11;
13:8;14:9,21;15:7,21;
16:6;20:4;23:7;24:5;
28:10;31:8;33:6;39:15;
42:16,16;44:3;45:8;
48:10;56:15;61:7,14,
25;62:3,4,15;64:19;
65:15;66:18;67:18;
69:7,8,11;71:11;76:15,
21,22,23;79:20;81:6;
84:21,21;86:13,24;
88:7;89:20;90:13,14;
91:15,16,20,21;93:3;
94:2;99:20;101:17;
104:25;109:11;110:12;
116:22;120:7;125:11,
18;126:21;128:9,10,
11;131:10;134:12,21;
135:16;139:23;141:19;
143:11,14;144:23;
146:9;147:21;152:15;
153:5,17
**candidate (1)**
70:23
**capable (1)**
142:5
**capacities (1)**
49:6
**capacity (3)**
50:19;140:3;144:10
**Cap-and-Trade (2)**
117:17;119:22
**capital (1)**
141:23
**carbon (1)**
117:25
**care (6)**
30:6;35:15;42:21,23;
43:4;83:12
**careful (1)**

17:3
**carefully (1)**
53:15
**carried (2)**
16:16;136:7
**carrier (1)**
102:5
**carriers (1)**
101:10
**carryover (1)**
17:17
**case (117)**
6:8,16;7:5;11:1,13,
20;12:11;17:25;19:17;
24:8;31:2,4,4;34:21,
22;36:17,25;37:2;
40:23;41:8,22;45:22;
47:12;48:9;49:10;
50:24;56:10,18,18;
60:3,3,18;61:17;62:18;
63:12,13,13,15,17,20;
64:20;65:9;66:13;71:2;
72:24;73:8,13,14,16,
18,22;76:9,12,25;
77:15,17,19;78:3,9,12;
79:15,20;81:10;84:7,
10;85:11,20,22;86:18;
88:1;91:12;93:3,20;
94:8,8;97:22,22,22;
98:25;99:21;101:2;
102:7,15;105:13;
106:7;107:24;109:8;
110:4,13;111:1,12;
113:25;114:25;116:18;
120:23;123:24,25;
124:18,23;126:19;
127:16;128:8,23;
129:8,23;135:19;
136:6,22;137:12,14,23;
140:11;142:23;146:3;
149:11,17,23
**case- (1)**
65:7
**case-by-case (2)**
50:9;51:21
**cases (21)**
34:15;38:12;45:8,19;
54:5;58:14;60:22;
62:13,14;64:8;66:6;
72:3;81:6,6,8;87:17;
88:15,17;91:5;106:3;
142:25;153:5
**cash (1)**
146:22
**cause (5)**
38:8;72:5;79:23;
81:4;95:11
**caused (1)**
51:17
**caution (1)**
18:14
**CCSF (21)**
16:1;24:20;33:10,10;

35:23;36:4,13;37:10;
40:14,18;41:14;42:9,
12;43:14,18;45:2;
61:15;65:15;66:12;
73:20;93:10
**CCSF's (1)**
60:15
**Cecily (1)**
144:1
**cement (1)**
122:10
**center (1)**
36:10
**Centerview (8)**
16:15,15,18,21,22,
25;17:7,19
**certain (5)**
36:5;49:14;62:15;
93:5;137:3
**certainly (10)**
11:4;12:23;43:14;
57:24;125:8;141:14;
142:12;143:17;152:21,
25
**certainty (2)**
20:16;121:12
**cessation (1)**
46:13
**cetera (3)**
20:16,17;124:19
**chair (3)**
19:5;74:20;76:23
**challenge (3)**
48:2,3,4
**change (7)**
6:7,8,16;116:22;
125:6,7,8
**changes (3)**
23:18;24:1;125:19
**Chapter (8)**
74:16;129:4,6;
135:20;143:16;149:6;
151:9,11
**characterize (1)**
39:20
**charge (1)**
135:2
**charged (1)**
35:25
**charging (2)**
35:24;36:4
**check (1)**
27:15
**checks (1)**
148:21
**China (1)**
25:3
**choice (3)**
79:17;93:11,12
**choices (1)**
71:16
**choose (1)**
93:10

Min-U-Script®

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 159
of 179

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(3) blamed - choose

**chooses (1)**
56:1
**Circuit (4)**
34:15;36:18;37:2;
64:24
**circular (1)**
138:5
**circumstance (1)**
80:3
**circumstances (1)**
88:1
**cite (2)**
86:17;98:25
**cited (5)**
31:2;36:17;39:22;
45:20;77:16
**cities (1)**
147:16
**City (37)**
25:9,10,18;26:2,16;
27:2,25;28:14,18;
29:12,21;31:25;32:1,6;
33:23,25;35:17;46:1,
19;48:16;55:18;58:15,
21;62:8;63:25;64:5,23;
65:10,21;74:25;75:25;
76:24;85:4,8,13;92:18;
124:2
**city's (5)**
25:13;32:2;59:4;
65:23;85:7
**civil (3)**
60:4,18;61:17
**claim (75)**
11:22;28:15;29:1,2;
41:2;48:1,5,8,10;53:1;
64:5;81:20,22,24;86:9,
22;89:16;98:1,3,5,6,21,
22;99:4,17,22;100:1,2,
3,19;101:1;102:19,25;
103:6;105:1,6,23,24,
24,25,25;106:6,16,17,
19,20;107:17,19;
111:17;112:17;118:7,
8,18,23;119:3;120:1,
10,18;124:17;130:5,
15;134:19,20;135:5;
138:3;140:21;145:13;
146:5,8,9,17,18,23,24,
25
**claimant (2)**
49:17;121:4
**claimants (12)**
11:18,20,21;82:15;
83:15,20;91:5;95:23;
111:2;142:5;144:3,8
**claimants' (1)**
15:16
**claim-by-claim (1)**
36:19
**claiming (1)**
53:22
**claims (85)**

10:15,16;11:5;36:18;
37:24;46:16,17;47:8,
12,20;50:5;56:9;65:3;
80:4;82:2;83:1,15,24;
85:21,21;86:3,14;88:3,
19,20,21,21,23;89:9,
11,19;90:12;98:16,19;
100:4,6,7,8,9;102:14;
105:9,18,25;106:18,24;
111:5;114:3,25;
115:12,16,20;127:17,
21;128:8,12;129:3;
133:10,12,12,20;134:8,
11,12;136:3,4,5;
138:10,18,19;141:16,
25;142:6;145:6,18,18,
20,23;147:4,5,6,7;
151:2;153:1,6,7
**claim's (1)**
149:1
**Clara (1)**
99:1
**clarification (2)**
40:9;66:21
**clarifies (1)**
21:6
**clarify (2)**
114:18,20
**clarity (2)**
45:17;122:24
**class (2)**
34:20;149:5
**classic (2)**
105:13;106:17
**clean (1)**
117:19
**clear (15)**
10:10;24:9;40:4;
41:17;43:16;49:7;
51:14;63:17;66:5,9;
72:2;78:9;82:7;136:7;
142:3
**clearly (6)**
36:22;51:2,8;100:5;
125:13;130:5
**CLECA (3)**
122:3,8;125:21
**CLERK (2)**
6:4;70:20
**clerks (2)**
8:14,16
**client (10)**
17:15;19:2;34:12;
43:3,19;76:24;93:6;
111:17;131:11;138:10
**clients (10)**
10:10;12:4,5;16:22,
23,24;102:19;126:16;
130:18;149:14
**client's (4)**
16:24;72:19,20;73:6
**climb (1)**
144:24

**close (2)**
143:11;152:21
**closely (2)**
44:14;46:8
**closer (2)**
85:1,2
**closing (4)**
79:11;108:22;
144:17,21
**clue (1)**
86:3
**co- (1)**
87:24
**cocounsel (3)**
14:19,21;30:18
**co-counsel (3)**
61:25;62:4;86:1
**Code (11)**
10:12;52:20;123:12;
124:7,22,24;125:8;
133:1;137:16;139:2;
151:6
**coexists (1)**
119:4
**coincidence (1)**
87:4
**cold (1)**
122:11
**collateral (2)**
96:14,16
**colleague (1)**
52:11
**collect (2)**
42:2,12
**collectively (1)**
72:16
**collector (2)**
129:2;130:1
**comfortable (4)**
71:8,12;108:4;
143:11
**coming (10)**
22:9;34:5;39:19;
41:25;65:4;82:2;90:23;
101:15;135:20;140:10
**comment (18)**
9:13,17;14:2;15:24;
16:7;17:16;18:25;20:5,
22;21:9,19;23:5;50:14;
51:20;79:11;105:8;
114:20;151:23
**comments (9)**
9:18;11:1;46:21;
72:18;96:6;141:11;
144:17,22;145:3
**Commission (8)**
35:9;66:11;122:5,18,
21,23;123:6;134:16
**commissioners (1)**
30:19
**Commission's (1)**
42:8
**committee (92)**

8:21,22;9:18;12:6,
21,21,22;13:20;15:15,
16;16:9;18:12;19:4;
21:16;43:20,21,24;
46:23;47:1;48:6,7,22;
51:22;53:6;72:15;86:2;
109:7,20,21,23;110:2,
5;111:7,7;112:2,3,8,12,
15;113:9;114:17,23;
115:5,7;118:24;120:3,
11,16,19;121:9,15;
123:20;124:1,4;125:5,
11;128:10;129:8,10,
12;131:10,11,14;
134:1;135:5,13;136:1,
18;137:8,13,14;138:19,
23;139:20;140:18,23;
141:6,15,20;142:10,13;
143:14;144:2,3,8;
149:17,25;152:22;
153:5,6,7,10
**committees (15)**
6:18;109:24;129:18;
132:2;136:23;137:2,
20;138:2,25;139:25;
140:8,11;141:5,7,12
**committees' (1)**
6:13
**committee's (2)**
18:15;19:5
**common (2)**
118:25;119:19
**common-law (1)**
133:15
**communication (1)**
90:6
**communications (1)**
145:10
**communities (1)**
144:13
**company (9)**
36:14;65:2;74:12;
75:10;99:25;100:23;
105:1;134:15;146:16
**company's (1)**
29:6
**compared (1)**
72:21
**compartments (1)**
65:1
**Compass (4)**
9:15;10:20;12:3;
13:11
**compensate (1)**
110:17
**compensated (2)**
120:11,14
**compensatia (1)**
133:16
**compensation (2)**
23:20;83:19
**compete (1)**
11:17

**competing (1)**
50:25
**complain (1)**
39:16
**complaining (3)**
35:17,21;43:7
**complaint (27)**
26:6,7,13,15;36:3,3,
22;39:17,23,24;53:21;
54:13,24;55:8,22,23;
56:4,6,16;63:13,13;
66:24;67:13,16;68:6,
13,14
**completely (2)**
130:12;147:18
**complex (1)**
74:12
**complexity (1)**
101:2
**compliance (2)**
44:17;139:22
**complicated (1)**
48:13
**compliment (3)**
22:7,11;153:15
**complimentary (1)**
7:18
**complimenting (1)**
52:12
**comply (7)**
44:21;46:10,12;
116:17;139:18,23;
147:14
**complying (1)**
45:21
**component (6)**
36:9;37:25;51:15,15;
110:14;122:14
**concede (3)**
28:5;7;29:5
**conceded (2)**
46:20;59:4
**concedes (3)**
41:18;80:5;102:7
**concept (5)**
85:14;100:12;
114:17;126:2;130:11
**concepts (1)**
133:15
**concern (7)**
23:10,21;50:11,17;
51:17;53:9;143:17
**concerned (8)**
23:13;48:22;58:24;
63:25;86:8;90:19;
135:18;141:16
**concerns (9)**
24:1;65:22;116:9;
122:18;135:24;137:3;
144:5;150:3;153:9
**conclude (1)**
13:4
**concluded (2)**

Min-U-Script®

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 160
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
of 179

(4) chooses - concluded

135:21;154:4
**conclusory (1)**
137:1
**condition (1)**
36:5
**conditions (2)**
36:5;44:21
**conduct (2)**
13:2;147:1
**conducted (1)**
17:1
**Conejos (1)**
86:18
**confer (2)**
137:13;141:13
**conference (1)**
54:21;101:7
**confident (1)**
77:5
**confidential (4)**
16:22,23;17:2,4
**confirm (2)**
17:1;126:14
**confirmation (1)**
128:1
**confirmed (3)**
65:25;111:4;139:23
**conflict (2)**
10:10;21:5
**conflicts (1)**
20:15
**confusing (1)**
31:19
**confusion (2)**
43:18;58:24
**conscious (1)**
35:11
**consensual (2)**
11:15,15
**consensually (1)**
12:20
**consent (6)**
61:14,15;86:24;87:1,
7,11
**consented (1)**
86:25
**consequences (10)**
9:22;11:14;35:10;
45:21;134:18;146:8;
150:18;151:5,17,19
**Consequently (1)**
20:13
**consider (3)**
27:11;97:24;152:16
**considerations (2)**
10:7;62:13
**considered (5)**
50:12;144:13;150:4,
6;151:25
**considers (1)**
150:7
**consistent (3)**
9:19;21:25;41:16

**consolidate (2)**
56:1,11
**consolidated (1)**
54:22
**constituency (1)**
141:24
**constituents (2)**
109:20,23
**constructive (2)**
8:25;119:12
**consult (1)**
17:15
**Consumers (1)**
122:3
**contemplate (1)**
137:14
**contemplated (2)**
137:15;139:2
**contend (1)**
74:5
**contending (5)**
73:6,23,23,25;74:2
**Contested (2)**
13:21,22
**context (1)**
89:19
**Continental (2)**
39:22;41:7
**contingent (1)**
128:8
**continue (5)**
9:4,12;12:4;52:15;
86:12
**continued (4)**
13:12;80:12,24;
104:12
**continues (1)**
145:17
**continuing (1)**
81:16
**contract (8)**
52:24;106:16;
150:15,17;151:4,16;
152:4,13
**contracts (3)**
128:7;141:22;150:20
**contribution (3)**
110:9,18;131:21
**control (1)**
14:22
**controlling (1)**
60:22
**convenience (1)**
70:16
**conversation (1)**
15:4
**convince (2)**
61:7;76:23
**cooperation (1)**
17:7
**coordinating (1)**
102:9
**copies (1)**

14:8
**copy (1)**
18:1
**corners (1)**
151:6
**Corporation (2)**
6:4;74:14
**Corporation-California (1)**
96:19
**correctly (2)**
46:3;98:8
**cost (8)**
27:25;117:23,25;
122:13,14;144:7;
152:11,11
**costs (5)**
89:7,12;94:9;95:12;
122:16
**counsel (40)**
6:13,13;7:6;9:20;
16:5;20:1;21:12;31:5,
22;41:2,14;43:20;44:1;
46:19;47:1;53:11;63:9;
71:3,9;72:15;78:14;
80:2,10;84:6;85:4,6,7,
8,13;86:1;87:5;93:4;
94:1;105:17;110:5;
111:2;121:22;122:2;
125:20;134:9
**counsels (1)**
7:25
**counsel's (2)**
80:14;84:10
**counterintuitive (1)**
126:17
**counterparties (1)**
141:22
**counterparty (1)**
128:6
**counterproductive (2)**
135:12;149:16
**countless (1)**
11:20
**country (1)**
20:7
**County (3)**
25:9;35:17;99:1
**couple (8)**
6:6,15;8:15;15:17;
58:19;85:23;122:20;
141:11
**course (4)**
73:7;74:12;75:6;
144:24
**Court (645)**
6:3,5;8:6;11:4;12:8,
9;13:14,17,21,23,25;
14:3,8,12,17,19,25;
15:7,12,17,21,24;16:3;
17:5,8,11,16,21,25;
18:3,9,16,18,20,22;
19:10,15,17,19;22:5,
14,18,21,24;23:3,5,9;

24:4,13,13,25;25:3,6,
12,15;26:8,11,14,23;
27:1,7,9,11,13,17,23;
28:2,4,7,10,13,15,24;
29:2,9,12,17;30:4,9,12,
14,18,21,25;31:3,13,
19;32:10,12,17,19,22,
25;33:3,5,16,21;34:2,7,
9,10,17,18,20,23;35:1,
5,13,23;36:11,13,20,
24;37:2,9,15,18;38:4,6,
8,10,15,21,25;39:9,13,
17;40:5,8,13,19,22,25;
41:3,11,21;42:2,5,7,11,
14,16,23;43:1,4,6,13,
25;44:3,7,10;46:4,4,6,
18,19,23;47:2,5,12,14,
16,21;48:3,6,24;49:1,6,
9,19;50:10,16,23;51:6,
11,16,25;52:2,4,6,15,
16,25;53:2,3,7,10,14,
16,24;54:6;55:1,4,6,11;
56:1,5,7,21,23,25;57:2,
8,10,12,15;58:19;59:9,
25;60:14,18,23;61:14,
22,25;62:10,17,21;
63:1,4,6,16,19,23;64:4,
10,14,17;66:2,5,7,25;
67:2,4,7,9,12,19,21,23;
68:5,8,16,18;69:7;70:3,
6,8,13,16,21;71:2,6,6,8,
12,16,20,23;72:11,14;
73:3,7,10,12,14,17,25;
74:4,7,10,21,24;75:2,4,
8,17,19,21;76:1,4,4,11,
19,21;77:2,4,5,7,17,19;
78:1,6,10,12,16,20;
79:1,3,5,10,17,19,19,
25;80:8,10,14,18,22,
25;81:2,8,19;82:3,5,8,
16,18,21,23;83:2,5,6,8;
84:3,6,9,16,20;85:1,6,
10,17,19;86:20;87:4,5,
8,11,19,22;88:5,8,11,
24;89:1,5,5,11,15,20,
22;90:2,4,18,21,24;
91:14,19,23;92:1,4,7,
13,15,17,19,23;93:14,
17,22;94:3,4,6,11,13,
16,19,21,25;95:14,18,
20,24;96:1,8,10,13,17,
21;97:2,6,9,14,17;98:8;
99:6,9,11,16,18,24;
100:14,18,21;101:4,6,
13,16,22;102:11,15,16;
103:3,17,19,24;104:1,
3,8,11,12,13,17,24;
105:5,8,11,14,19,20;
106:8,11,15,18,22,25;
107:1,4,5,6,11,21;
108:2,7,9,13,16,19,21;
109:1,4,6,9,11,17;
110:11,21;111:6,10,14,

19,24;112:2,6,10,17,
19,23;113:11,14,18,20,
22;114:5,19,21;115:1,
4,9,13,18,20;116:1,3,6,
19,24;117:1,13;118:4,
6,8,12,17,20,22;119:3,
7,14,16;120:4,15,25;
121:3,6,8,13,16,19,23,
24;122:1,6,6;123:8,12,
18,22,24;124:21;125:2,
24;126:2,8,15,17,19,
23;127:2,6,9,12,15,20;
128:16,18,20,22;129:9,
15;130:2,6,8,11,13,16,
18;131:2,5,6,8,18,21,
25;132:2,12,24;133:5,
7,9,13,21,23,25;134:3,
5,13,15,22,24;135:8,
11;136:4,9,15,20;
137:9,17,18;138:5,14,
21;139:4,6,7,11,14,24;
140:7,10,13,17;141:2,
4,9,18,19;142:3,13,14,
18,22;143:6,18,19,22;
144:11,14,16;145:1,22;
146:2,7,13,20,23,25;
147:9,11;148:2,4,11,
13,15,19,23;149:4;
150:6,9,10,10,13,16,19,
22,25;151:14,15;152:1,
15;153:13,16,22;154:1
**courthouse (1)**
84:1
**courtroom (3)**
8:14;11:7;25:10
**courts (2)**
66:6;86:23
**Court's (4)**
50:21;66:17;73:2;
139:17
**cover (2)**
89:6;98:7
**coverage (7)**
89:6;99:17;101:25;
102:2,4,13;107:18
**covered (6)**
37:22;98:4;99:4,
25;100:13
**covers (2)**
63:14;98:22
**CPUC (15)**
113:1;114:6;116:11,
22;117:17;132:20;
135:1,17,22;143:9;
145:7;150:24;152:16,
17,20
**CPUC's (1)**
151:4
**craft (1)**
45:8
**create (4)**
43:18;111:11;
138:22;147:24

Min-U-Script®
Case: 19-30088   Doc# 1974   Filed: 05/10/19   Entered: 05/10/19 12:37:14   Page 161
of 179
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(5) conclusory - create

**creates (1)**
109:22
**credit (1)**
19:1,2,12;27:15,16,
19;89:9;113:1,24;
117:4;126:9,11;
130:19;132:19;135:3;
136:23;141:13;146:21;
147:21,21;148:3
**credited (1)**
115:23
**creditor (27)**
111:20;113:3,6,7,11;
118:24;120:8,8;121:6,
7;124:8,10;125:14;
127:16;128:8,25;
129:4,12;138:10,11;
140:25,25;142:2;
146:3;148:24,25;149:5
**creditors (53)**
12:15;20:13;72:16;
82:9;84:1;112:4,6,20,
20;113:9;114:14,15,16,
17,23;115:10,13;116:2,
4,8,13,14,16;117:9;
118:3;120:12;124:19;
125:4,5,12;128:10,11;
129:1;132:16,16;
134:1;136:2,14,16,25;
137:19,23;138:7,8,8,
23;140:13;142:6;
145:24;146:1;147:5;
149:10,14
**creditors' (10)**
8:22;12:22;15:15;
120:16;128:12;136:1;
138:24;141:12;143:12;
152:22
**creditor's (1)**
72:15
**credits (4)**
125:20,23;126:7,24
**credit's (3)**
19:13;113:2;130:22
**criminal (1)**
104:18
**critical (2)**
7:17;151:23
**criticizing (1)**
52:12
**cross (1)**
59:1
**crowds (1)**
7:1
**cuff (1)**
61:21
**culpable (3)**
65:10,11;86:6
**Culture (1)**
123:1
**cumbersome (1)**
14:10
**current (3)**

57:25;78:23;89:22
**currently (2)**
80:20;87:17
**Curtis (4)**
72:25;81:3;102:2;
107:16
**cushion (1)**
110:17
**customer (5)**
34:3;35:20;36:14,15;
117:5
**customers (9)**
42:3;122:9,12,12;
126:5;137:15;143:6;
144:9,10
**cut (1)**
130:4
**cuts (1)**
7:16
**cycle (2)**
114:16;115:21

**D**

**D&O (2)**
23:22,23
**damage (9)**
10:15,16;27:11;
59:11;61:15;62:18;
64:4;147:10;151:2
**damages (26)**
11:7,8,18;12:12,13;
26:24;27:5,5;45:13;
46:13,13;47:8,11,20;
48:2;51:15;52:21;
53:22;58:9,12;59:24;
60:9,15,15;61:11;
120:23
**date (27)**
78:23;81:14,17,19,
25;85:16;89:1,3,23,25;
90:5;98:10,10;101:5,
19;103:19;105:24;
106:18;107:18;111:15;
113:4,4;114:15;117:3;
130:21;135:2;145:17
**David (1)**
71:21
**dawned (1)**
128:5
**day (19)**
6:7;38:16;40:13;
58:14;64:2;103:22;
113:2,7;114:10,14;
117:3,5;119:23;120:4;
130:24,25;142:25;
153:18;154:3
**days (6)**
6:20;12:20;65:19;
69:6;71:15;98:14
**DC (1)**
60:1
**deal (17)**

7:4,23;8:2;10:4,4,12;
55:16;65:3;67:17;
69:18;82:22;86:2;
143:1,1,2,8,10
**dealing (8)**
32:13;65:3;67:15;
68:15;86:14;92:10;
120:18;143:1
**deals (2)**
26:15;143:9
**dealt (5)**
24:1,15;49:25;55:15;
85:23
**death (2)**
52:22;81:10
**debate (4)**
10:18;12:17;33:8;
52:22
**debt (5)**
105:25;110:16;
113:22;114:1;118:21
**debtor (47)**
10:1,2;12:22;15:14;
16:8;21:12,13;31:23;
32:20;33:9;36:4,5;
38:7;39:3,4;45:15,20;
47:6;50:25;54:4;55:16,
17,21;57:18;58:15;
59:23;60:19,23;83:14,
20;93:2,4;96:21;99:18;
102:21;106:3;111:4;
114:11;118:15,16;
120:5;124:4;129:24;
139:22,25;146:4;152:4
**debtor-creditor (6)**
142:9,15,16,22;
143:10;153:2
**debtors (16)**
6:17;13:10;15:14,20;
20:12;23:17;24:24;
38:12;53:20;69:2;
70:25;72:6;88:14;
103:15;132:18;139:18
**debtors' (9)**
6:13,24;7:7,25;
21:12;32:3;33:22;
145:19,24
**debtor's (9)**
31:5;41:14;53:11,19;
61:1,4;63:9;93:25;
100:3
**December (4)**
78:25;80:13,21;
85:15
**decide (18)**
15:25;31:7;43:13;
59:19;73:16;74:9;81:6,
10,13,17;83:5;93:2;
102:17;123:8;131:10,
15;142:13;150:11
**decided (4)**
54:20;59:19;78:22;
90:16

**deciding (1)**
124:12
**decision (24)**
19:5;31:3,10,15,18;
40:10,14;48:23;49:14;
50:9;58:11;64:25;81:5;
101:17;117:16;123:10;
124:25;135:17;138:6;
139:6,17;142:14;
144:20;153:17
**decisions (4)**
31:2;39:21;111:13;
121:13
**declaration (6)**
20:3,19;21:5,8;
26:20;53:22
**declarations (2)**
54:16;69:3
**declarative (1)**
40:15
**declaratory (3)**
36:9,21;37:25
**decline (1)**
117:18
**deduct (1)**
99:20
**deductible (6)**
89:7;99:10,12;100:7,
9;102:22
**deemed (1)**
127:24
**deems (1)**
129:13
**deep (3)**
56:20;75:10,15
**deeper (1)**
75:8
**defeated (1)**
11:22
**defend (1)**
101:1
**defendant (3)**
74:13;76:7;92:19
**defendants (15)**
72:4;73:1,5,8,10,19;
77:10,11;87:9,25;
91:16,17;92:8,22;93:8
**defending (4)**
83:17;84:6;99:21;
102:6
**defense (9)**
25:15;75:19;76:14,
17;78:2,13;80:10;89:7;
100:24
**defenses (1)**
48:18
**defer (3)**
9:6;47:5;49:20
**deferred (2)**
61:16;134:14
**defined (2)**
124:7,9
**definitely (1)**

46:17
**definition (3)**
10:3;63:21;124:19
**defying (1)**
38:12
**delay (4)**
63:25;64:9;90:16,17
**delayed (1)**
64:1
**demonstrate (1)**
138:2
**demonstrated (1)**
81:4
**demotion (1)**
7:23
**denial (1)**
86:19
**denied (1)**
79:22
**deny (3)**
86:11;109:13;152:5
**denying (1)**
99:2
**dependent (1)**
148:14
**depends (1)**
92:1
**deposition (3)**
94:11,23;95:6
**depositions (7)**
84:13,18,24;85:3;
90:14;94:15;95:8
**depth (1)**
75:14
**deputy (1)**
62:8
**described (1)**
127:18
**designed (3)**
106:2;139:21;140:23
**detailed (6)**
26:19;66:21,23;68:3,
3;121:1
**determination (20)**
27:1,20,24;29:9,11,
15,16;30:11;44:16,19,
23;45:2,5,10,16;46:10,
13;53:6;59:5;120:1
**determinations (2)**
48:13;70:23
**determinative (1)**
136:22
**determine (10)**
28:8;29:18;44:24;
51:22;60:14;69:22;
79:3;102:17;103:14;
137:18
**determined (5)**
47:12;48:11;60:7;
61:16;118:3
**determines (2)**
60:15;102:16
**determining (1)**

Min-U-Script®

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 162
of 179

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) creates - determining

52:17
**devote (1)**
  83:14
**devoted (1)**
  83:24
**die (1)**
  70:4
**Diego (3)**
  116:23;134:23,25
**differ (1)**
  153:5
**difference (7)**
  12:16;38:18;75:14;
  107:12;111:6;117:2;
  140:14
**different (38)**
  10:24;11:17,17,24;
  22:9;28:17;29:18;
  31:14;32:12;34:5,15;
  38:23;45:7;49:18,21,
  22;54:8;56:8,9;64:24;
  76:15;80:4;83:8;85:24;
  86:7;97:23,23,25;
  106:9;110:1;119:9,10;
  121:6,7;128:6;147:6,
  19;152:24
**differently (1)**
  87:13
**diffused (1)**
  110:7
**digital (1)**
  14:7
**diligence (1)**
  19:6
**diminish (1)**
  83:19
**Dingley (8)**
  31:4,4,5;34:16;37:7;
  38:4,10,11
**DIP (3)**
  110:12,21,22
**direct (3)**
  112:11;115:6,16
**direction (1)**
  54:8
**directly (2)**
  26:15;117:21
**directors (1)**
  23:12
**directs (1)**
  114:10
**disa (1)**
  32:8
**disaggregate (1)**
  129:22
**disagree (5)**
  49:12,13;51:19;
  117:11;145:25
**disappear (1)**
  114:8
**disband (1)**
  135:6
**disclosed (2)**

16:24;20:23
**disclosure (1)**
  85:4
**disclosures (1)**
  16:17
**discount (1)**
  7:12
**discourage (1)**
  8:24
**discover (1)**
  20:14
**discovery (12)**
  11:2;56:19;80:7;
  84:11,12,14,15,17,22;
  95:3;98:15;102:9
**discretion (2)**
  123:15;124:13
**discretionary (2)**
  123:18;125:17
**discussed (6)**
  9:21;17:2;39:21;
  48:7;66:23;103:11
**discussion (5)**
  22:15;44:12;96:3;
  143:5;148:23
**discussions (1)**
  16:21
**disinterested (1)**
  21:24
**dismissal (1)**
  151:11
**dispositive (1)**
  60:3
**dispute (6)**
  11:2;36:2,6,10;
  51:24;66:12
**disputes (1)**
  68:8
**disputing (2)**
  39:3;51:23
**disqualifier (1)**
  21:3
**dissimilar (1)**
  149:7
**distinct (1)**
  122:11
**distinction (1)**
  58:25
**distinguish (1)**
  107:17
**distinguishment (1)**
  71:1
**distribution (3)**
  27:21;34:4;44:17
**District (6)**
  6:10;39:17;79:19;
  83:5;104:11,17
**divergence (1)**
  142:9
**divergent (1)**
  142:2
**diverse (3)**
  121:10;141:20;

143:14
**diversity (1)**
  153:4
**divesting (1)**
  84:4
**divide (3)**
  16:9;123:17;151:23
**divorces (1)**
  143:1
**docket (1)**
  40:23
**dockets (1)**
  60:2
**doctrine (1)**
  133:16
**doctrines (1)**
  118:25
**documents (1)**
  96:24
**dog (1)**
  35:3
**dollar (8)**
  27:17;28:3,5;43:7,
  10;98:3;120:7;126:11
**dollars (29)**
  12:13,14;41:4;42:9;
  43:8,10;48:16;83:17,
  19;99:5,12,19;100:10;
  110:15;113:5,17;
  115:11,16;117:7;
  119:21,22;120:20;
  125:25;126:10,21;
  127:22;128:2,3;145:8
**done (16)**
  7:20;23:24;42:8;
  45:9;46:11;56:12;
  59:10,12;60:12;93:20;
  107:7;113:15;125:3;
  146:9;148:19;153:25
**door (1)**
  151:7
**doubt (4)**
  8:12;86:22;110:18,
  21
**doubts (1)**
  124:10
**down (17)**
  11:2;16:15;20:6;
  24:7;50:18;64:19;65:5;
  71:17;75:23;76:6;
  87:12;91:9;111:8;
  122:5;143:21;145:5;
  152:14
**dozens (2)**
  50:5,5
**draft (1)**
  67:17
**draw (3)**
  42:24;58:25;64:19
**drawing (1)**
  41:8
**drawn (2)**
  40:4;43:5

**drill (1)**
  30:20
**drop (1)**
  73:18
**DSI (3)**
  18:23;19:3,8
**due (2)**
  19:13;46:1
**DUMAS (10)**
  19:9,12,16,18;141:8;
  143:24;144:1,2,12,16
**Dumas' (1)**
  18:25
**durable (1)**
  129:5
**during (4)**
  45:18,22;98:14;
  101:12
**duty (1)**
  131:23
**dutybound (1)**
  110:2

### E

**earlier (5)**
  35:16;72:11;80:14;
  82:25;101:20
**early (4)**
  65:9;93:3;123:24,24
**easier (1)**
  62:5
**easy (1)**
  140:14
**ECF-registered (1)**
  14:7
**echo (1)**
  136:12
**economic (1)**
  29:22
**economy (1)**
  58:6
**Edison (2)**
  122:9
**educational (1)**
  108:12
**Edward (1)**
  25:7
**effect (7)**
  6:23;29:24;38:12;
  135:3;149:4,4;150:23
**effected (1)**
  39:15
**effective (1)**
  110:4
**effects (1)**
  152:12
**efficiency (1)**
  117:20
**efficient (1)**
  111:11
**effort (2)**
  20:13;129:22

**efforts (2)**
  20:15;117:20
**e-file (1)**
  14:6
**eighty (1)**
  122:16
**either (21)**
  15:10;40:8,16;42:16;
  46:12;59:6;62:23,25;
  63:4;66:12;69:15;
  80:25;102:21;104:3;
  108:5;119:18;129:7,
  18;139:25;140:3;141:5
**elected (2)**
  144:3,15
**Electric (2)**
  116:23;135:1
**electricity (2)**
  64:9;117:25;122:14
**eligible (2)**
  34:3;113:9
**eliminate (1)**
  20:14
**else (20)**
  6:18,23;25:4,18;
  39:7;49:19;53:10;
  62:14;64:11;65:6,18;
  66:1,11;74:14;80:2;
  84:16;90:10;104:16;
  131:23;134:17
**email (1)**
  18:11
**embedded (1)**
  117:25
**emphasize (1)**
  10:24
**Employees (1)**
  22:22
**employment (1)**
  19:25
**empowering (1)**
  135:12
**empty (2)**
  74:20;76:23
**enable (3)**
  123:3,16;126:4
**enabled (1)**
  132:6
**encouraging (1)**
  9:8
**end (13)**
  12:2;20:7;38:16;
  40:13;42:11;53:7;
  56:20;65:22;69:24;
  75:18;78:23;131:13;
  139:22
**ends (1)**
  39:24
**energy (8)**
  25:13;35:8;117:19,
  19;121:22;122:3;
  125:21;147:24
**energy-intensive (2)**

Case: 19-30088   Doc# 1974   Filed: 05/10/19   Entered: 05/10/19 12:37:14   Page 163
of 179

125:22;126:5
**enforce (1)**
    42:24
**enforceable (1)**
    119:25
**enforcement (7)**
    29:8,15;41:9;42:25;
    45:18;64:21,21
**enforces (1)**
    51:3
**enforcing (2)**
    33:23,24
**engaged (1)**
    145:7
**engagement (4)**
    12:19;13:1;19:24;
    20:2
**engaging (1)**
    102:8
**enough (4)**
    31:9;65:17;75:15;
    131:17
**entered (1)**
    93:8
**enterprise (2)**
    129:25,25
**entire (5)**
    39:14;49:3;111:3;
    114:1;115:24
**entirely (2)**
    100:19;136:19
**entities (5)**
    10:2;17:2;109:19;
    111:16;124:1
**entitled (12)**
    29:3;35:25;41:4;
    42:9;48:16;49:18;64:5;
    65:21;66:13,15;146:7;
    148:8
**entitlement (7)**
    33:24;40:16;41:21;
    63:20;117:4;119:3,4
**entity (8)**
    34:5,7,18;35:19;
    124:6;127:14;129:9;
    141:25
**entry (2)**
    41:8;42:25
**environmental (1)**
    51:3
**equally (2)**
    71:14;72:18
**equity (6)**
    124:20,21,22;
    125:12,13;142:23
**equivalent (2)**
    27:17;133:12
**Erin (1)**
    83:2
**essentially (7)**
    39:4;98:21;114:11;
    125:2;147:10,13;150:2
**establishing (1)**

79:23
**estate (12)**
    11:13,16;21:15;
    47:20;53:1;61:2,5;
    82:20;83:25;94:9;
    107:8;144:6
**estimating (1)**
    46:17
**estimation (1)**
    11:5
**et (3)**
    20:16,16;124:19
**etched (1)**
    47:25
**ETKIN (10)**
    22:17,19,20,22,25;
    23:4,7,10;24:4,12
**evaluate (1)**
    136:20
**even (28)**
    11:24;27:18;33:7;
    35:19;36:13;48:10;
    54:2;56:19;69:8;72:24;
    76:6;87:7;95:12;
    100:22;105:22;110:14;
    111:16,16;116:4,6,7,
    13;119:7;133:13;
    148:4,24;149:6;153:9
**event (6)**
    6:25;54:25;97:20;
    101:18;113:8;144:5
**everybody (3)**
    24:8;66:11;85:15
**everybody's (1)**
    33:8
**everyone (5)**
    12:24;54:4;70:17;
    108:20;154:3
**everything's (3)**
    24:6;97:3;150:2
**everywhere (1)**
    62:13
**Ex (8)**
    94:18;97:10;112:9,
    14;128:15;129:10;
    131:12,13
**exactly (13)**
    36:3;57:14;68:10;
    86:10;126:1;135:15;
    137:10;138:13,13;
    140:9;142:21;146:6;
    148:12
**examiners (1)**
    30:19
**example (13)**
    11:21;14:13;39:2,17;
    41:22;51:3,7;126:10;
    137:6;138:9;139:8;
    147:2,23
**excavation (2)**
    145:12;149:15
**exceeded (1)**
    147:22

**exceeds (1)**
    126:9
**excellent (1)**
    132:22,24
**except (6)**
    20:6,23;80:14;98:22;
    99:4;100:13
**exception (10)**
    29:7,21;36:23;37:6,
    23;38:9;39:4;50:14;
    51:19;53:23
**excess (1)**
    100:10
**exchange (1)**
    125:20
**exchanged (1)**
    8:22
**excluded (1)**
    21:21
**excuse (3)**
    21:23;55:1;76:7
**excused (1)**
    139:22
**executory (3)**
    128:7;141:22;152:4
**executory-contract (1)**
    128:6
**exempt (1)**
    32:4
**exempted (1)**
    31:24
**exercise (2)**
    10:22;53:5
**exercising (1)**
    37:9
**exist (5)**
    65:24;109:23;
    120:19;129:14;147:5
**existed (1)**
    119:23
**existence (1)**
    136:24
**existing (3)**
    25:19;131:14;138:24
**exists (1)**
    145:16
**exit (1)**
    129:6
**expansive (2)**
    11:3;49:7
**expect (2)**
    20:11;109:2
**expedited (2)**
    78:22,22
**expend (1)**
    100:25
**expenditure (1)**
    98:25
**expense (1)**
    99:1
**expenses (1)**
    98:25
**experiences (1)**

49:12
**expert (6)**
    84:24;85:3,4;90:14;
    95:2;124:17
**expertise (3)**
    44:23;46:10;47:14
**experts (7)**
    11:6,8;12:9;84:14;
    94:17;95:7,8
**explain (1)**
    136:18
**explains (2)**
    20:20;21:1
**explicit (1)**
    145:10
**explore (2)**
    63:8,10
**exposure (1)**
    102:21
**expressed (2)**
    40:14,16
**expressly (5)**
    46:1;106:2;132:17;
    135:21,22
**extend (3)**
    8:23;49:13;129:21
**extended (2)**
    9:2;135:3
**extension (9)**
    77:13,20,25;78:4;
    79:5,8,13;86:15,19
**extensions (1)**
    8:19
**extent (12)**
    33:12;37:3;53:24;
    86:15;135:16;136:4,5;
    138:3,18;141:15;
    145:18;152:25
**extraordinary (1)**
    136:6

**F**

**fabrication (1)**
    111:19
**face (1)**
    15:3
**facie (4)**
    72:5;73:8,13,14
**facilitates (2)**
    88:22;89:10
**facilities (3)**
    63:14;64:1,9
**facing (1)**
    89:3
**fact (16)**
    17:2;19:24;34:8;
    45:8;72:4;80:20;81:13;
    91:16;103:11;114:9;
    116:13;117:15;122:13;
    132:15;137:12;139:20
**factor (5)**
    72:25;102:2,3,4;

136:23
**factors (3)**
    81:3;103:12;107:16
**facts (3)**
    41:21;80:18;82:11
**failed (4)**
    79:23;137:25;138:1,
    2
**fails (1)**
    102:10
**failure (1)**
    147:14
**fair (5)**
    21:13;66:9,10;99:1;
    131:17
**fairly (1)**
    107:25
**fall (1)**
    54:5
**falls (2)**
    36:22;37:6
**familiar (5)**
    20:8;31:1;71:24;
    123:19;124:25
**far (3)**
    49:13;86:7;104:15
**fashion (1)**
    56:2
**fast (1)**
    59:11
**faster (3)**
    54:24;55:9;72:21
**fault (8)**
    73:6,23,24;76:9,14,
    18;91:24;92:6
**favor (5)**
    36:1;41:13;103:12;
    110:14;126:12
**favorable (2)**
    40:14;43:18
**Federal (5)**
    25:23;34:9,19;35:8;
    45:17;79:3
**feel (2)**
    69:19;86:15
**fell (1)**
    101:12
**felt (1)**
    8:8
**Fences (1)**
    72:3
**FERC (77)**
    27:20;28:20;30:19;
    31:21,22;32:4,6,13;
    33:9,11,15;34:5,9;35:2,
    10,11,14,15;36:1;37:9,
    12;38:16,23;39:6,15;
    40:3,3,7,10,20;41:24,
    24;43:3,6,7;44:16,22,
    22;45:6,8,11,17,21;
    46:14;47:17,22;48:12,
    15;49:3,7;50:19;51:1;
    52:1,16;53:5,18;54:20;

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 164
of 179

56:13;57:21;58:1;59:6;
60:14;61:7,18;62:13;
65:21;66:10,24;72:16;
127:17,17,24;128:1;
143:5,8;150:12;152:2
**FERC's (7)**
32:4;35:9;40:13;
41:23;46:9;49:10;
65:22
**few (2)**
54:5;59:18
**fiduciaries (1)**
142:5
**fiduciary (3)**
109:22;136:2;140:15
**fifteen (1)**
14:14
**fifty (1)**
90:23
**fight (1)**
35:3
**fighting (1)**
61:20
**figure (4)**
61:12;125:12;151:3;
153:16
**figured (1)**
13:18
**file (19)**
6:20;7:5;21:4;25:24;
29:1;35:5;39:7;48:1;
69:5,19;81:20,23;
105:23;143:24;145:20,
23;146:4,8,9
**filed (26)**
7:6;15:14,15,15;
22:25;26:6,9,10;32:21;
44:22;52:10;53:21;
55:10;57:2;67:13;
78:21;81:14,21;88:20,
21;97:8;104:10;106:6;
130:9;136:25;142:4
**files (3)**
39:5,5;106:19
**filing (6)**
19:1;23:10;25:21;
39:16;72:9;89:9
**filings (4)**
25:24;39:5;54:13;
57:21
**final (6)**
22:6;25:17;43:6;
44:16;69:20,21
**finally (1)**
139:16
**finance (1)**
111:3
**financial (3)**
102:5;122:25;150:18
**financing (1)**
110:12
**find (2)**
20:9;76:5

**finding (4)**
21:23,23;86:18;
137:18
**finds (1)**
117:17
**fine (11)**
11:11;15:9,23;18:20;
24:4,6;46:20;59:16;
62:5;71:9;97:10
**finger (2)**
132:14;134:7
**fingers (1)**
58:1
**finished (1)**
153:23
**fire (11)**
10:15;91:5;120:24;
124:1;145:10;146:14,
15,15;147:3,3;149:15
**fires (2)**
50:1;86:5
**firm (3)**
8:1;20:11,25
**firms' (1)**
21:21
**first (25)**
8:3;36:25;43:25;
44:3;50:11;60:3,10,16;
61:9;62:18;65:18;
79:21;82:12;87:25;
90:13;101:25;109:6;
113:15,16;114:10;
115:21;120:4;122:7;
132:5;145:4
**fiscal (1)**
29:13
**fit (1)**
98:3
**fits (2)**
53:1;100:12
**five (12)**
6:20;12:20;69:6;
70:12;110:16;113:5,
17;117:7;119:21;
125:25;126:11,21
**five-dollar (4)**
113:1;130:19,25;
147:21
**fix (1)**
65:2
**fixing (1)**
151:16
**flip (1)**
76:22
**floodgates (1)**
82:14
**focus (11)**
37:23;50:20;61:2;
71:25;83:11;109:6;
117:20;136:14,15;
142:1;146:14
**focused (6)**
61:1,4;89:24;141:24;

142:14,15
**focusing (3)**
20:10;28:19;61:2
**folks (1)**
128:11
**follow (6)**
11:14;31:11;44:6;
50:6;124:24;141:10
**follow- (1)**
54:21
**following (4)**
10:8;44:12;130:25;
146:15
**follows (2)**
44:14;46:8
**follow-up (1)**
153:24
**force (1)**
83:14
**foreclosed (1)**
53:7
**forever (1)**
6:11
**forget (2)**
40:15;130:18
**forgotten (1)**
124:3
**form (6)**
18:5;19:25;39:1;
43:15;52:17;66:18
**formal (1)**
144:3
**formation (1)**
109:21
**former (1)**
120:12
**forms (1)**
50:6
**forth (3)**
20:3;58:17;145:8
**forty (1)**
122:16
**forum (1)**
35:22
**forward (45)**
7:7;21:8;26:20;
30:22;35:11;40:24;
44:20;45:1,3,9,11,12;
46:3,3,12,16;53:18;
55:24;58:7,16;59:1,3,
13;60:22;62:4;63:9;
64:1,18;65:12;68:14,
23;69:1,4,15;83:1;
84:22;88:18;89:9,21;
90:16,23;106:4;107:9;
135:18;153:20
**found (2)**
19:6;91:24
**four (4)**
16:14;26:3;113:21;
151:6
**four-month (1)**
104:19

**frame (2)**
152:7,7
**framed (1)**
151:6
**framing (1)**
45:24
**FRANCISCO (19)**
6:1;25:9;35:17;
36:17;45:12;46:15;
55:18;57:2;62:9;64:23;
75:15,19,20,25;76:13,
16,18;91:22;94:10
**Francisco's (1)**
44:15
**frankly (2)**
45:11;58:10
**frivolous (1)**
146:8
**front (2)**
8:14;104:23
**frozen (1)**
117:3
**FTI (4)**
9:15;10:20;12:4;
13:11
**FTI-Compass (1)**
12:19
**full (3)**
102:5;113:17;145:18
**fully (2)**
99:4;145:16
**fulsome (1)**
69:5
**fun (1)**
133:1
**function (5)**
37:10;43:9;48:13;
138:24;140:20
**fund (2)**
46:5;147:15
**fundamental (2)**
125:11;133:13
**fundamentally (1)**
134:7
**funding (1)**
137:12
**further (11)**
21:9;54:1,7;58:2,9,
20;59:17,20;64:12;
93:15;107:14
**furthest (1)**
39:18
**future (7)**
46:14;66:16;115:25;
116:14;120:13;130:4;
144:21
**fuzzy (3)**
51:10;105:11,12

────────────
**G**
────────────

**game (2)**
66:9,10

**garbled (1)**
70:21
**Gas (6)**
116:23;117:19;
122:10;125:20;135:1;
148:5
**gazillion (1)**
43:8
**Gelman (7)**
16:1;71:1,2,3;83:17;
97:22;107:22
**Gelmans (8)**
71:22;72:7;81:4;
82:8;83:24;91:2,11;
93:24
**Gelmans' (1)**
94:8
**Gelman's (5)**
72:24;83:14;84:12;
87:18;88:1
**general (3)**
139:9,12;147:15
**generally (2)**
17:3;147:8
**generate (1)**
121:11
**gets (10)**
14:9;22:9;41:18;
43:10;105:1;111:4;
126:11;129:25;152:16,
17
**GHG (2)**
115:22;145:6
**given (4)**
34:17;69:4;81:13;
99:13
**gives (2)**
43:7;146:17
**God (2)**
59:11;148:16
**goes (1)**
18:24;30:18;51:2,6;
59:1;62:4;63:9;102:15;
119:5;130:15;143:4
**good (22)**
9:1;16:19;24:6,23,
25,25;25:6,7,12;31:8;
41:8;46:25;62:19;65:8;
70:24;71:7;96:18;
121:24,25;124:12;
133:2;154:3
**goods (1)**
117:23
**Gorton (26)**
127:4,4,6,8,11,13,16,
21;128:17,19,21,24;
129:11,16;130:3,7,10,
12,14,17,24;131:3,6,
17,20;137:5
**Gotshal (4)**
24:24;53:21;70:25;
88:14
**governed (4)**

Min-U-Script®

Case: 19-30088   Doc# 1974   Filed: 05/10/19   Entered: 05/10/19 12:37:14   Page 165
of 179

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(9) FERC's - governed

29:6;31:24;41:4;
65:23
**governmental (7)**
33:17,22;34:1;51:2;
124:1,6;128:13
**grab (1)**
68:2
**grabs (1)**
65:6
**grant (15)**
30:5;31:8;41:1;
49:20;58:22;59:3;
68:20;69:8,14;85:10;
89:4;90:22;93:23;
97:11;152:5
**granted (6)**
21:7;38:17;45:6;
97:2,12;153:10
**granting (6)**
69:17;79:18;82:8,13;
83:13;94:8
**granular (1)**
147:25
**Great (2)**
97:13;152:1
**greatly (2)**
149:22;153:5
**green (1)**
41:12
**Greene (1)**
25:8
**Greenhouse (4)**
117:17,19;119:22;
125:20
**greenhouse-gas (1)**
132:19
**Gregory (1)**
46:25
**grid (1)**
112:25
**Groom (8)**
19:21,22,23;20:6,9,
16,19,23
**ground (1)**
149:15
**grounds (1)**
99:2
**Group (6)**
20:7;124:3;137:22;
140:1;142:2;144:9
**growing (1)**
64:2
**guaranteed (1)**
51:7
**GUC (1)**
138:12
**guess (11)**
13:7;24:25;43:13;
83:4,6;102:17;114:12;
120:8;131:22;140:14;
148:4
**guided (1)**
70:1

**guys (2)**
124:12,12

## H

**hac (2)**
14:17,18
**Hagen (1)**
39:22;41:7
**hairs (1)**
33:1
**Hale's (1)**
26:19
**half (1)**
87:24
**hand (2)**
12:3,4
**handle (3)**
24:22;71:11;142:25
**happen (16)**
11:10;41:6;57:24;
72:14;87:8,13,15;
88:16;90:5;91:20;
98:10;102:25;110:10;
116:18;138:23;152:18
**happened (3)**
82:23;84:23;113:3
**happening (2)**
11:9;134:21
**happens (7)**
28:8;58:14;111:1;
119:8;150:8;151:24,25
**Happy (4)**
14:5;15:5;63:10;
153:12
**hard (6)**
61:12;101:20;
104:15;123:7;126:22;
147:17
**harder (1)**
144:24
**harm (5)**
59:13;61:10;64:2;
86:5;147:11
**harmed (1)**
147:1
**Harris (106)**
16:7;108:10,12,14,
14,18,20,23;109:2,5,
10,15,18;110:20,24;
111:9,11,18,22,25;
112:5,7,14,18,22;
113:10,12,15,19,21,25;
114:18,20,22;115:2,8,
11,15,19,22;116:2,5,
16,21,25;117:11,14;
118:5,7,9,14,19,21;
119:2,6,9,15,24;
120:13,17;121:1,5,7,9,
17,20,22;124:11;125:3,
9,25;126:10;130:19;
134:9,25;138:9;
144:17,23;145:3,25;

**hit (1)**
107:16
**hoc (1)**
109:24
**hold (3)**
67:11;118:23;127:17
**holder (1)**
125:13
**holders (2)**
125:12;142:24
**holding (1)**
114:25
**home (1)**
30:1
**Hong (1)**
25:10
**Hong-An (1)**
70:24
**honor (158)**
9:5;13:10;15:6;
16:19;17:20,24;19:9,
13;22:17,19;23:8,11;
24:12,20,23;25:7,20;
26:12;35:4;36:16;37:3,
11;38:20;39:14;41:7;
42:4,10,13,22;43:12,
23;44:9,13;46:25;47:9;
48:4;53:13;54:8;55:9;
59:8;60:17;62:8;64:12;
66:20;67:10;68:3,11,
12,22;70:7,24;71:4,7;
72:1,23;75:13,24;76:8;
77:21;78:25;79:21;
81:1,25;82:7,12;83:7;
84:8,25;85:3;88:13,19;
89:6;91:10,20;92:10;
94:23;95:17;96:7,16,
18;97:1;98:13;101:8,
23;103:10,23;104:10;
105:13;106:5,24;
107:15;108:1,12,18,24;
109:6,8;110:5,20;
111:9,18,22,25;112:5,
15,18;113:10,25;
114:18;115:8;116:16;
117:12;118:19;119:9,
24;120:14,22;121:25;
122:22;123:21;126:13;
127:4,8;128:19,21;
131:3,20;132:8,9,14,
14;136:1,11;139:5,16,
16;140:12;141:3,10;
143:4;144:1,14,23;
145:4,4;147:13;149:3,
10,24;150:5,11;151:13,
18;152:10,21;153:9,12,
20
**hook (3)**
75:12;126:25;134:17
**hope (3)**
61:6;131:12;144:20
**horrible (1)**
21:5

**Hostetler (1)**
144:2
**hotline (1)**
39:15
**hours (3)**
9:9,9;16:13
**housekeeping (3)**
6:6;14:4;153:24
**Huang (43)**
35:1,4,8,8,14;36:2,
12,16,21;37:1,3,11,17,
21;38:7,14,20,23;39:1,
12,14;40:2,18,20;41:7;
42:1,4,6,10,13,15,22,
24;43:2,5,12;48:14;
50:17;57:23;58:23;
65:13,21;66:3
**huge (2)**
89:7;110:17
**hundred (11)**
51:13;82:14;87:17;
91:5;93:24;94:2;103:3;
113:5;117:6;119:21;
126:10
**hundred-dollar (1)**
130:21
**hundred-dollar-a-month (1)**
112:25
**hundreds (1)**
120:19
**hypothetical (5)**
113:13;119:20;
125:25;129:21;145:5
**hypotheticals (1)**
112:21

## I

**idea (1)**
8:25
**identified (3)**
14:5;65:16;128:5
**ie (1)**
46:10
**ignore (5)**
10:24;93:25;94:1;
137:1;153:8
**II (1)**
129:6
**III (1)**
81:9
**ill (1)**
80:10
**illness (3)**
78:13;80:2,15
**imagine (5)**
9:11;11:9;14:9;40:6;
104:20
**immature (1)**
90:10
**impact (6)**
56:17,19;98:16;
150:8;152:11,14

**hate (1)**
96:5
**head (2)**
25:13;126:14
**health (3)**
85:5,7,9
**hear (13)**
46:23;54:8;56:11;
72:14;76:1;77:5;79:10;
93:25;96:1,6;109:2;
131:22;143:23
**heard (38)**
23:8;24:14;35:2;
43:21,22,24;48:14;
49:10;53:11;54:18;
57:23;65:20;72:11;
83:2;93:15;95:19;
96:25;97:3,21,21;98:8;
108:16;110:9;111:13;
116:12;122:17,18;
135:16,17;141:6,16;
148:23;149:21;150:1;
151:20,22;152:11,12
**hearing (23)**
6:12,21;8:20;9:10,
21;12:21;13:13;29:20;
30:19;54:22;55:2;
56:12;65:9;69:20,21,
21,23;71:19;72:12;
81:16;86:12;103:11;
104:12
**heavy (1)**
141:7
**held (1)**
38:8
**help (7)**
7:4;8:16;10:6;12:24;
34:6;60:19;131:6
**helper (1)**
88:5
**helpful (5)**
9:25;19:6,13;35:5;
54:17
**helping (1)**
8:13
**Hennigh (1)**
25:8
**here's (2)**
10:6;118:10
**hesitate (1)**
75:12
**high (1)**
65:9
**hill (1)**
70:4
**hired (1)**
10:15

**146:6,11,18,21,24;**
147:7,10,13;148:3,10,
12,14,18,20;149:3,7;
150:8,11,15,17,20,23;
151:13,18;152:10;
153:20

Min-U-Script®
Case: 19-30088   Doc# 1974   Filed: 05/10/19   Entered: 05/10/19 12:37:14   Page 166
of 179

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(10) governmental - impact

**impacted (1)**
57:3
**implementation (1)**
45:17
**implemented (1)**
45:1
**implicated (2)**
23:23;52:20
**imply (1)**
24:8
**important (10)**
7:4;17:3;30:14;
45:16;54:4;66:5;109:7;
126:4;129:18;149:24
**improper (1)**
28:20
**improperly (1)**
27:21
**inapplicable (1)**
69:16
**inappropriate (1)**
50:12
**inclined (2)**
86:11;137:18
**include (1)**
18:14
**included (3)**
17:23;18:13;67:5
**includes (1)**
121:10
**including (6)**
20:15;26:20;28:21,
21;124:2;136:2
**inconsistent (3)**
73:21;74:11;91:11
**inconvenient (1)**
91:9
**incorrect (4)**
28:20;79:6;130:21;
135:3
**increase (1)**
94:9
**increased (2)**
117:23;122:23
**increasing (1)**
64:5
**increment (1)**
100:13
**incur (2)**
27:25;95:12
**indeed (1)**
65:4
**indemnity (1)**
17:18
**indicated (2)**
89:17;105:17
**indicates (2)**
99:15;136:22
**indicating (1)**
104:11
**indication (3)**
80:23,25;104:6
**indiscernible (1)**

142:23
**individual (2)**
120:20;124:9
**individuals (3)**
86:4;110:6;146:16
**industrial (3)**
122:8,10;126:5
**industries (1)**
122:11
**inevitable (1)**
47:24
**inexpensively (1)**
107:8
**infinitive (2)**
15:2;19:19
**influence (2)**
10:5;12:25
**informal (1)**
39:16
**information (1)**
123:3
**informative (1)**
19:4
**informed (2)**
69:13;102:11
**initial (4)**
79:23;102:1;103:13;
117:20
**injured (1)**
80:1
**injury (15)**
11:23;40:25;48:10;
49:17;76:9;79:15,25;
81:6,10;84:13;86:22;
87:20,20;88:21;95:23
**inquiry (2)**
12:1;31:11
**insight (1)**
8:3
**insofar (1)**
129:1
**insolvent (4)**
83:21;142:23,24;
144:6
**instance (2)**
33:25;61:9
**instantly (1)**
115:21
**instruct (2)**
43:14;76:5
**insurance (27)**
23:12,23,23;75:16;
89:6;97:5;98:4,5,7,15,
16,22;99:4,13,23,25;
100:6,13,15,23,23;
101:25;102:2,4;105:1;
107:18,19
**insured (1)**
102:5
**insurer (1)**
102:17
**insurers (1)**
102:11

integral (1)
150:21
**intensive (1)**
125:22
**interest (15)**
10:11;21:24;82:9;
121:14;128:25;129:3,
4,5,7,17,19;131:7;
138:4,20;142:2
**interested (4)**
82:10;86:13;93:1;
137:2
**interestingly (1)**
65:17
**interests (15)**
109:25;110:2,6;
136:24;137:5,11,21,21;
140:21,24;142:7;
143:12;152:24;153:3,3
**interim (1)**
23:19
**interplay (3)**
37:19;122:21,25
**interpret (2)**
124:14;127:1
**interpretation (4)**
49:8;50:15;123:13;
125:17
**interrupt (1)**
22:19
**into (24)**
10:18;22:9;33:8;
37:24;50:1;53:24;
54:12;55:19;65:1;
74:16;89:5,11;93:11;
96:3,4;102:2;115:25;
117:5;134:13;137:4;
139:7;143:15,15;151:9
**introduced (1)**
62:7
**Investigation (3)**
123:1,2;145:7
**inviting (1)**
12:23
**involve (4)**
11:4,4,5;87:24
**involved (4)**
14:11;120:23;140:3;
151:15
**involvement (1)**
50:2
**involvements (1)**
74:12
**involves (1)**
78:21
**involving (4)**
23:16;64:23;85:20;
103:6
**irony (1)**
131:8
**irrelevant (2)**
32:5;98:18
**irrespective (1)**

143:16
**isolating (1)**
37:13
**issue (48)**
6:16;10:1;11:16,18,
21,25;14:15,25;16:12;
26:5,21;27:5;28:6,14;
29:6;31:20;38:16;
44:17;46:20;47:10;
53:4,8;54:3,7,20,20;
55:13;61:16;64:24;
69:13;81:11;87:1;
89:15;105:1,9;107:24;
125:11;129:19;132:15,
15,23;142:12,12;
144:20;148:21;150:13;
152:2;153:17
**issued (4)**
38:8;114:10;145:11;
148:3
**issues (12)**
14:4;15:18;42:6;
49:5;63:14;65:4;69:3;
109:3;141:24;143:9,9;
144:13
**issuing (1)**
39:24
**item (2)**
65:19;108:4
**items (1)**
24:18

**J**

**Jane (1)**
13:9
**January (9)**
36:3,3;54:23;55:2,3,
6;59:11;60:6;148:16
**Japan (1)**
25:5
**Jerry (1)**
43:23
**job (7)**
7:4;41:25;42:2;
76:22;77:8;123:8;
151:3
**joining (1)**
16:6
**joking (1)**
83:12
**Judge (17)**
58:4,9;59:18;60:1,
19,24;61:4,7;63:3,7;
64:22;66:7;73:18;84:9;
101:17;104:3;133:2
**judges (5)**
8:16;76:4,5;104:17,
19
**judgment (5)**
41:9;49:4;76:2,24;
99:18
**judicata (2)**

48:20,23
**judicial (3)**
38:12;58:6;117:16
**jump (1)**
91:8
**juries (1)**
76:5
**jurisdiction (7)**
47:21;49:8;50:15;
52:2;66:17;73:2;
150:12
**jury (7)**
49:18;73:16;74:8;
76:23;86:25;87:7;
102:16

**K**

**Karotkin (74)**
7:7;8:3;9:13:4;
14:13;15:25;24:17,20;
70:9,12,15,21;88:6,7,9,
13,14,25;89:2,17,25;
90:3,11,19,22,24;
93:17;96:14,16;98:8;
102:24;104:2;105:8,
10,12,15,22;106:9,14,
16,21,23;107:1,5,7;
108:3,6,8;131:23,24;
132:1,5,13;133:4,6,8,
10,18,22,24;134:2,4,6,
21,23,25;135:9,15;
136:5,12;141:18;
143:24;153:23,25
**Karotkin's (1)**
149:12
**keep (7)**
26:11;65:12;69:7;
70:18;91:1,14;108:10
**Keller (1)**
13:9
**kept (1)**
50:3
**key (2)**
111:13;120:1
**kick (1)**
23:13
**kicks (1)**
48:17
**Kim (22)**
7:6,12,24;13:7,9,9,
15,18,22,24;14:1,4,16,
18,24;15:5,9,13,19,23;
16:2;82:6
**Kim's (1)**
82:7
**kind (20)**
8:18;13:2,18;21:20;
28:15;38:13;42:18;
51:8;57:25;62:14;
79:14,14;81:22;88:25;
100:24;105:6;116:19;
121:6,7;138:5

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(11) impacted - kind

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 167
of 179

**kinds (3)**
62:12;65:4;143:2
**knew (1)**
90:9,9
**knock (1)**
105:11
**knocked (1)**
105:12
**knowing (1)**
18:25
**knowledge (2)**
56:8;104:8
**knows (5)**
59:11;60:1;65:25;
88:19;91:3
**Kreller's (1)**
52:11

**L**

**label (2)**
119:23;140:15
**labor (1)**
141:20
**Laffredi (20)**
132:6,7,11;136:10,
11,11;137:10;138:13,
16;139:1,5,13,15;
140:5,9,12,16,19;
141:3,4
**Landmark (1)**
72:3
**language (4)**
17:23;18:13,19;
23:21
**Lapping (37)**
96:17,18,19,22;97:1,
4,7,13,15,25;98:12;
99:8,10,12,17,20;
100:5,17,20,22;101:5,
8,14,19,24;102:7,10,
11;104:9,10,14,22,25;
105:6;107:14,15;108:1
**Lapping's (1)**
102:18
**large (9)**
20:11;38:23;74:12;
85:21;102:21;106:12;
121:22;122:3,8
**largest (1)**
144:9
**last (8)**
9:13;43:17;52:10;
98:14;103:11;104:11;
108:4;135:10
**late (2)**
13:12;19:1
**later (2)**
64:8;97:16
**Latin (1)**
138:7
**law (40)**
8:1,13;20:7,11,25;

21:21;31:2;41:20;43:9;
45:18;51:3;77:15,17,
19;78:3;94:13;102:1;
109:12,13,14;115:17;
116:17;117:10;118:18,
25;119:5,8,17,19,25;
123:14;124:18,18,23;
125:8;128:23;133:14;
136:22;147:14;149:1
**law's (1)**
136:7
**lawsuit (1)**
60:5
**lawyer (7)**
7:8;14:5;15:10;
38:11;49:11;59:4;
111:7
**lawyers (12)**
10:8,9,9;14:7;77:10;
95:6,8,9,10;133:2;
137:7,8
**lay (1)**
54:9
**layperson's (1)**
66:10
**lead (1)**
23:15
**learning (1)**
133:15
**least (17)**
6:14;7:9;10:2;12:20;
20:20;24:9;29:5,20;
31:16;54:18;81:24;
86:12,21;96:23;
138:10,14;149:21
**leave (9)**
6:23;7:13;12:17;
16:13;24:10;29:23;
62:1;120:7;152:2
**leaves (1)**
11:16
**leaving (1)**
148:6
**led (1)**
50:18
**left (6)**
63:21;64:20,24;
70:22;94:16;95:1
**legal (5)**
38:21;49:1;98:25;
134:10;144:13
**legislature (1)**
118:2
**lenders (2)**
110:22,22
**Leonard (1)**
95:21
**lets (1)**
31:22
**letter (4)**
19:24;102:12;105:2,
7
**letting (2)**

30:22;58:7
**level (2)**
27:2;141:14
**leverage (1)**
110:13
**Levine (4)**
20:3,20;21:4,8
**levy (1)**
41:19
**liability (9)**
23:12;59:5;60:7,10;
61:16;62:19;63:18;
102:17;103:14
**liable (4)**
60:16;74:1,2,6
**life (1)**
40:23
**lift (8)**
47:23;54:11;60:23;
61:9;68:13;81:16,17;
102:2
**lifted (3)**
55:14;58:6,18
**lifting (5)**
72:5;79:24;88:2;
103:12;141:7
**light (5)**
41:12;83:9;84:12;
116:9;125:10
**liked (1)**
19:18
**likely (2)**
95:6;104:4
**limbo (1)**
23:1
**limit (1)**
149:17
**Lincoln (1)**
18:23,23;19:3,8
**line (7)**
28:25;41:8;42:24;
43:5;64:19;102:19;
152:14
**lines (1)**
40:4
**liquidate (2)**
86:9;100:19
**liquidated (5)**
41:3;98:6;102:19,23;
103:9
**liquidating (3)**
46:16;47:6;89:16
**liquidation (3)**
45:24;46:2;100:3
**list (8)**
15:2,21;16:15,22,23;
17:4;64:2;93:6
**listed (2)**
146:3;147:16
**Listen (2)**
116:9;132:12
**listening (3)**
53:15;91:1;124:16

**litigant (3)**
33:10,10;53:21
**litigants (1)**
34:16
**litigated (1)**
79:18
**litigating (3)**
47:6;83:24;89:15
**litigation (14)**
23:16;25:19;37:7;
59:14;65:4,19;88:18;
89:5,13;95:12;98:6;
99:1;102:6;107:9
**little (9)**
13:19;14:10;20:20;
23:11;33:1;51:8;52:24;
134:19;151:24
**live (3)**
10:11;40:23;112:24
**lives (1)**
10:13
**living (1)**
117:8
**LLP (1)**
47:1
**loan (1)**
51:7
**local (3)**
7:6;14:6;144:12
**logical (1)**
61:19
**logistical (1)**
14:2
**long (4)**
77:8;87:14;110:25;
129:2
**longer (3)**
69:19;70:11;113:9
**long-term (3)**
129:5;131:7;141:22
**look (19)**
12:8;21:8;31:1;
58:19;60:25;61:11;
63:12;67:21,23,23;
69:25;77:8,23;85:20;
129:8;135:19;149:24;
152:20;153:20
**looked (2)**
77:22;130:13
**looking (6)**
47:2;51:21;53:22;
77:7;124:20;126:20
**looks (1)**
133:1
**loose (1)**
16:4
**lose (1)**
55:22
**losses (1)**
144:7
**lost (2)**
99:6;139:9
**lot (10)**

9:7,7;39:2;49:5;
50:3;84:11,22;111:9;
123:7;150:1
**lots (4)**
43:10;47:12;72:19;
77:9
**lower (2)**
27:2;35:25
**Lying (1)**
71:17

**M**

**magic (1)**
113:4
**main (1)**
56:10
**maintenance (1)**
149:8
**makes (10)**
10:17;16:7;19:23;
27:20;40:10;44:22;
54:20;58:11;82:4;
107:20
**making (10)**
15:2;21:17;48:13;
72:15;83:9;84:12;
106:12;116:8;125:10;
139:15
**Maloney (1)**
25:8
**Malter (1)**
108:14
**manage (1)**
60:2
**management (2)**
6:9,16
**mandatory (7)**
77:13,19;78:4;79:13;
86:15,18;101:6
**Manges (1)**
88:14
**manner (1)**
142:7
**manufacturing (1)**
122:15
**many (4)**
66:4,6;88:2;92:23
**Marines (1)**
70:3
**Marta (1)**
16:20
**matter (40)**
6:4,9;7:3,8;9:6;
38:15,21,22;40:3,24;
41:20;43:8,9,9;58:4;
64:23;65:12;66:22;
72:17;73:20;78:21;
79:3,18;95:14;96:10;
100:25;102:1;107:25;
117:10;118:17;119:5,
8,17;123:14;132:15;
135:7;142:3;144:18;

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 168
of 179

148:25;151:14
**matters (11)**
6:6;8:16,17,19;13:6;
66:21;93:7;96:5;
104:18;123:7;143:13
**matter's (1)**
96:8
**maximizing (1)**
117:21
**MAY (42)**
6:1;9:5;11:3,14;
16:25;39:7,22;48:18;
51:21;58:8;60:25,25;
65:4;74:8;75:18;79:5;
83:16;86:2,23;90:3,7;
95:6,10,19;98:10;
106:21,21,23;109:6;
111:1;116:16;117:4;
120:13;142:12;144:6;
150:21;151:5,7,19;
152:10,15;153:4
**maybe (22)**
13:22;29:2,2,3;49:1,
25;50:5;57:10;58:14;
61:7;65:25;66:1,7;
73:14;82:6;103:5;
110:9,15;113:19;
120:6;138:16,17
**mean (90)**
7:16;11:25;14:13,14,
15;17:8;20:21;24:8;
26:23;27:18;28:10;
29:10;30:6,22;31:1;
32:1;33:14;38:18;
41:14;48:12,16;56:5,7;
57:17;63:11;64:21;
65:10;66:12;67:9,11,
11,20;70:10;71:12,24;
72:16;73:10;75:17;
79:5,12;80:2;81:9,11;
83:8;87:8;89:16,22;
90:8;97:11;102:20;
104:17,19;105:23;
109:12;110:12,15;
111:7;112:2;115:5;
117:1;123:8,13,19,24;
125:2,6;126:17,20;
130:1;134:5;137:7,13,
13;138:6;139:21;
140:6,7,19,25;143:6;
145:13,22;146:13;
147:4;148:4,8;149:4,9,
10;151:3
**meaning (1)**
138:7
**means (6)**
52:19;98:19;102:12;
116:1,3;129:2
**meant (2)**
65:18;115:3
**meantime (1)**
81:9
**measure (3)**

26:24,24;32:5
**mechanism (1)**
111:12
**mediation (7)**
101:6,8,9,11,18,21;
103:16
**meet (2)**
79:23;138:1
**member (5)**
112:2,3,8,9,15
**members (3)**
109:22;110:1;125:21
**membership (1)**
129:8
**memorize (1)**
94:25
**memory (1)**
110:13
**mention (3)**
18:10;59:17;114:9
**mentioned (5)**
13:11;15:11;59:18;
77:12;82:25
**mercy (1)**
8:12
**merits (2)**
36:8;55:19
**metaphysically (2)**
114:14;116:13
**methodology (1)**
19:4
**Mexico (1)**
22:23
**Michael (1)**
22:20
**microphone (5)**
71:9,13;85:1,2;91:8
**middle (2)**
52:3;64:19
**might (42)**
8:8;9:24;11:3,4,20;
16:24;21:16;27:4;
28:16;40:6;45:6;49:12,
13;52:7;59:12;60:18;
65:24;78:3,12;82:16,
18;84:5;86:6,24;87:11;
90:10,21;91:4;93:24;
106:6;108:21;109:4;
119:18;129:9;130:8;
131:13;134:18;135:5;
145:19;150:3;151:2;
152:12
**Milbank (1)**
47:1
**million (12)**
99:5,12,19;100:10;
110:6;115:11,15;
117:8;120:20;126:21;
128:3;133:14
**million- (1)**
98:2
**million-dollar (1)**
99:4

**millions (4)**
109:18;120:19,20;
145:8
**mind (5)**
9:1;15:22;69:7;
77:12,23
**mindful (2)**
67:14;90:25
**minds (1)**
10:19
**Mine (1)**
123:12
**mining (1)**
122:11
**minute (1)**
30:20
**minutes (5)**
16:5,10;70:12;
108:20;132:9
**mischief (1)**
146:16
**misconduct (3)**
37:7;147:8,9
**Misrepresentations (2)**
145:9,11
**mission (1)**
40:1
**misstates (1)**
102:1
**misstating (1)**
70:22
**mitigate (1)**
117:22
**mix (2)**
79:12;152:12
**mixed (1)**
79:14
**modification (1)**
39:6
**modified (4)**
30:15;38:17;69:17;
106:6
**modify (5)**
65:15;75:22;89:20;
106:5;107:8
**moment (2)**
71:5;93:9
**moments (1)**
18:11
**monetary (11)**
28:21;32:2;33:24;
38:4;45:6;51:15;59:5;
64:21;65:22;66:14,15
**money (15)**
21:13;25:16;27:10,
18;28:16;36:4;40:16;
41:9,10,18;46:2;64:8;
106:13;118:11;119:11
**month (3)**
21:14;130:25;154:1
**months (4)**
55:6,7;104:18;
115:25

**moot (1)**
55:22
**more (44)**
7:2,24;11:3,25;12:9,
10,11;15:1;16:5;20:20;
26:7,8,19;33:13;39:9,
10,16;50:17;57:25;
63:14,14;64:3;69:2,5,
14;71:8;72:21,25;81:7,
11;84:11;87:24;91:5;
93:24;94:2;99:9;
102:22;105:22;116:4;
127:3;133:13;142:5,
24;143:11
**moreover (1)**
134:23
**morning (15)**
16:19;17:14;24:23,
25;25:6,7,12;46:25;
70:24;71:6,7,18;73:20;
87:5;96:18
**Most (4)**
6:23;25:17;64:25;
125:21
**motel (1)**
151:10
**motion (41)**
6:19,19;9:19;13:20;
23:11;24:10,21;29:18;
37:15;56:11;67:24;
68:1,3;69:14,14,15;
79:22;80:5,17;81:14,
16;83:13;84:18;85:22;
86:11;89:4,23;90:22;
94:5;95:25;96:2,24;
97:8;102:10;114:24;
123:25;136:17;141:12;
144:4;145:19;152:5
**motions (9)**
6:11,15,24;9:14;
45:20;97:10
**motivator (1)**
103:20
**mountaintop (1)**
112:24
**move (10)**
35:11;68:17;85:11,
14,18;91:2;94:2;108:6;
147:20;149:12
**moved (2)**
68:13,18
**moves (2)**
89:9;152:4
**moving (5)**
64:1;65:12;71:21;
94:22;108:15
**much (21)**
11:25;20:17;28:15;
34:15;35:24;36:4;
37:18;39:16;50:24;
61:16;63:14;74:18;
79:13;92:1;97:23;
127:2;131:18;133:25;

136:14;143:3;153:25
**Mueller (14)**
25:10;62:8,8,10,12,
20,22;63:6,10,17,22,
24;64:7;66:2
**multiple (1)**
72:4
**municipalities (1)**
123:20
**must (3)**
66:5;139:18,23

---

**N**

**name (12)**
7:9;19:15;39:24;
52:11;62:6;70:21,22;
71:20;72:3;95:21;
122:1;124:3
**names (1)**
8:5
**narrow (2)**
17:4;153:1
**narrowed (1)**
16:22
**narrows (1)**
63:20
**nature (3)**
10:16;11:23;36:2
**NCPA (3)**
127:14;128:2,24
**near (4)**
71:13;91:8;116:14;
144:21
**necessarily (6)**
31:18;50:8;73:9;
81:12;85:11;145:15
**need (26)**
7:2;19:11;20:3;21:9;
31:14,18;33:7;45:10;
58:3,16;59:20;69:5,12,
19;71:10,13,20;81:12;
83:23;84:19;85:1;
108:25;136:18;137:19;
145:20;151:22
**needed (1)**
44:23
**needing (1)**
122:17
**needs (5)**
32:13;53:8;58:8;
136:20;149:17
**negative (1)**
8:20
**neglect (1)**
136:19
**negligence (1)**
17:18
**negotiate (2)**
98:10;139:21
**negotiation (5)**
89:10;90:7,12;
140:22;141:1

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 169
of 179

**negotiations (1)**
103:15
**Ness (1)**
122:5
**net (2)**
113:23;147:24
**Network (1)**
108:15
**neutral (2)**
35:22,22
**new (8)**
19:8;22:23;23:21;
64:1;130:1,1;138:23;
141:17
**Newman (10)**
17:3,19,20,22;18:1,8,
10,17,19,21
**next (28)**
6:7;9:6;10:6;12:18;
13:12;14:14;19:21;
21:11;40:23;48:9;55:5,
6;59:11;60:6;69:18;
70:4,10,23,25;90:6;
113:7,8,8;114:16;
137:20;149:19;154:1,2
**nice (4)**
8:4,4;59:11;127:7
**night (1)**
86:15
**nine (2)**
55:6;110:15
**ninety-five (1)**
130:22
**Ninth (4)**
34:15;36:18;37:2;
64:24
**NLRB (1)**
39:21
**nobody (4)**
30:20;93:8;124:10;
128:22
**non (1)**
50:4
**noncreditors (1)**
124:19
**none (1)**
103:12
**nonwildfire (1)**
95:23
**non-wildfire (3)**
82:14;86:14;87:21
**nor (1)**
21:4
**Nora (2)**
121:20;122:2
**normal (2)**
90:12;129:4
**normally (2)**
107:23;122:19
**Northern (3)**
6:10;121:3;127:13
**note (7)**
17:12;18:24;45:5;

63:25;125:18;145:17,
19
**noted (2)**
139:6,17
**nothing's (1)**
90:5
**notice (3)**
32:21;117:16;119:13
**noticed (1)**
94:23
**notified (1)**
85:5
**notion (1)**
142:11
**notwithstanding (1)**
149:1
**November (1)**
91:3
**number (17)**
38:23;40:6;45:7;
47:22,25;70:14;83:4,4;
85:21;87:22;89:12;
95:22;124:2;126:12;
129:6;146:19;151:1
**numbers (1)**
26:11
**number's (1)**
64:6
**numerous (2)**
20:12;74:13
**Nunley's (1)**
104:3

# O

**object (3)**
9:3;21:13;106:19
**objection (3)**
12:6;17:8;48:5
**objections (2)**
56:10;137:25
**objections-to-claim (1)**
107:2
**obligated (2)**
118:15;132:18
**obligation (6)**
105:23;118:1;126:3,
9;134:10;149:9
**obligations (3)**
57:20;119:10;136:2
**observation (3)**
12:2;19:8;68:22
**observed (1)**
101:20
**obviously (9)**
23:13;48:23;52:20;
58:23;59:20;63:7;
97:22;110:4;147:2
**occurred (2)**
9:24;125:19
**occurrence (1)**
100:9
**October (11)**

114:2;115:25;116:3;
134:12,17;135:6,6;
145:15;148:19,21;
149:19
**off (13)**
13:12;18:5;59:6;
61:21;75:12;103:25;
104:6;105:11,12;
112:24;126:13;130:4;
134:16
**offer (1)**
112:14
**offering (1)**
112:8
**office (5)**
9:20;22:11;24:21;
25:11;117:5
**officer (1)**
56:13
**officers (1)**
23:12
**official (13)**
6:17;43:20;109:7;
110:1;112:3,7;139:25;
140:2,17;142:13;
144:2,8;149:21
**officially (1)**
123:16
**officio (6)**
112:9,15;128:15;
129:10;131:12,13
**offset (10)**
29:3;41:19;66:16;
113:7;118:5,8;119:5,7;
133:17;147:18
**offsetting (1)**
133:15
**oftentimes (1)**
77:11
**old (3)**
34:20;73:1;123:25
**once (5)**
8:7;15:20;54:20,20;
89:9
**one (87)**
6:9;8:18;9:1,19;10:5,
21;11:6,7;12:3,12;
13:1;14:2;15:6,8,24;
17:12;19:22;20:4,4,22;
22:6,7;25:17;26:8,8,
10;28:18;31:2,19;
37:16,20;39:10;40:24;
41:13;43:7,7,10;49:15;
51:13;54:6,10;55:10,
24;56:10,10;58:10,11;
64:7;66:8,14,20,22;
68:22;70:10;73:19;
74:4;75:22;78:13;
80:10;85:22;86:21;
87:4;93:9;101:3,3;
102:20,22;103:4,24;
104:1,19;105:2,21;
106:12;109:5;111:21;

114:2,14;123:9;
124:14;126:25;127:3,
12;134:18;138:16,17;
144:20
**ones (3)**
33:19;74:3;98:21
**one's (1)**
16:12
**ongoing (1)**
122:20
**only (29)**
12:25;17:16;20:5;
21:19;37:23;49:15;
56:15;59:18;61:4;65:2;
67:15;74:4;76:13;86:9;
98:21;100:15;103:4;
107:18;108:23;110:16;
129:3;130:22;133:18;
135:11;138:23;142:8;
151:7,9,10
**oOo- (1)**
6:2
**open (3)**
70:18;103:15
**opening (3)**
16:7;82:13;108:24
**operates (1)**
31:22
**opinion (3)**
78:3;107:12;135:21
**opportunity (2)**
17:14;67:18
**oppose (3)**
44:15;45:2;46:15
**opposed (1)**
44:22
**opposition (8)**
6:15,19;25:16;69:9,
10;82:5;97:3;135:25
**oppositions (2)**
6:11;7:2
**option (5)**
56:2,3;92:24,25;
139:19
**oral (1)**
153:14
**order (31)**
6:3,9,17;14:6;17:9,
14,23;18:5,6,7;21:23;
23:20;38:8,13,16;42:9;
43:6,7,16;66:3,9,18;
67:6;68:21;88:4;97:3,
18;115:6;118:15,16;
120:4
**ordered (2)**
38:4;138:22
**orderly (2)**
86:13;89:10
**orders (5)**
39:25;42:6,8;101:17;
114:10
**organization (2)**
10:15;122:8

**original (5)**
14:22;23:11;67:24;
114:6;118:1
**Others (5)**
86:24;92:20;103:5;
124:3;139:7
**otherwise (3)**
41:15;74:9;84:5
**ought (1)**
11:9
**out (33)**
6:10;7:17;9:8;18:22;
31:4;34:6;50:3;54:9;
57:19;61:12;20;74:15;
86:4;91:17;94:20,22;
104:18;109:24;116:8;
117:10;118:22;125:12;
134:19;135:20;144:6;
147:15,15,16;151:4,7,
10,11;153:16
**outcome (2)**
29:13;66:14
**outline (1)**
20:15
**outright (1)**
79:22
**outset (2)**
11:12;53:24
**outside (3)**
43:19;84:6;142:16
**over (15)**
9:6,16;16:16;42:8;
52:2,25;82:14;87:17;
99:22;115:11,15;
126:21;144:24;150:12;
152:16
**overall (1)**
152:12
**overcharge (1)**
117:14
**overcome (1)**
126:22
**overlap (1)**
122:25
**overlook (1)**
19:20
**overstated (1)**
50:24
**overstating (1)**
68:18
**overview (1)**
109:15
**owe (3)**
113:5;119:20;146:4
**owed (6)**
45:16;113:19;
119:11;120:20;147:8;
149:8
**owes (4)**
27:2;113:5;119:21;
147:24
**own (9)**
29:13,22;32:3;33:24;

Case: 19-30088   Doc# 1974   Filed: 05/10/19   Entered: 05/10/19 12:37:14   Page 170
of 179

39:24;49:10;59:4;86:5;
93:2
**owns (1)**
146:25

## P

**page (5)**
20:9;48:15;68:5;
69:3;132:17
**pages (4)**
69:12,12,12;145:8
**paid (37)**
12:15;21:13;99:23;
100:19;110:9,25;
113:2,16,22,24;115:23,
23,24;117:6;118:3,12,
13,14;127:23;129:3;
131:1;134:5,6,8,12;
135:23;137:8;145:15;
146:19;147:15,15,16;
148:15;149:1,6,9;
153:7
**paper (1)**
104:10
**papers (14)**
14:10;32:7,9;65:16;
77:23;86:17;94:22;
107:16;109:8;111:15;
127:6;136:19;146:14;
147:16
**Paradise (1)**
124:2
**paragraph (3)**
20:17;52:10;68:5
**paragraphs (1)**
20:15
**pardon (1)**
76:7
**parentages (1)**
143:2
**part (20)**
26:5;38:9;46:9;
47:23,24;51:17,18;
54:18;63:25;64:25;
95:12;98:4,24;99:14;
118:13;132:20;137:1;
144:7;150:21;151:22
**parte (1)**
97:10
**partially (2)**
83:16;91:24
**participate (3)**
123:16;140:2;149:11
**participating (1)**
121:13
**participation (1)**
110:4
**particular (8)**
6:13;12:5;55:25;
94:8;98:17;107:19;
109:25;147:16
**particularly (7)**

8:25;30:24;50:7;
51:1;88:17;141:11;
144:5
**particulars (1)**
12:25
**parties (24)**
9:16;11:4,5,10;31:1;
35:21;40:1;43:15;
61:19;62:3,15;71:22;
80:6;82:10;86:13,23;
87:1,5;90:3;93:6;
101:18;112:1;138:9;
147:19
**Partners (2)**
18:23,23
**party (13)**
35:18,23;39:5,22;
40:6;41:4;43:7,10;
61:15;73:22;95:25;
96:2;108:15
**pass (2)**
9:5;117:24
**past (6)**
15:25;44:20,25;45:9;
46:11;144:7
**path (1)**
50:18
**pay (18)**
38:7;65:11;83:19;
99:19;100:24;105:6;
111:4;114:11;117:6;
120:5,7;126:3;130:22;
134:10;140:14;148:7,
9,16
**payable (1)**
135:5
**payer (6)**
128:9,25;129:1;
130:1;147:22,23
**payers (34)**
135:16;136:3,14,18;
137:6,11,12,19;138:1,
9;140:1;141:15;
142:11;144:5,8,10;
145:14,19,20,23;147:6,
8,17;149:20,25;150:3;
151:19,23;152:6,10,23;
153:4,4,8
**paying (3)**
35:24;114:1;129:1
**payment (12)**
40:17;46:5,17;
113:16;119:25;120:17;
130:5;137:6;141:16,
25;146:22;153:1
**payments (3)**
20:24,25;21:2
**pays (2)**
111:7;147:12
**penalty (1)**
147:13
**pendency (2)**
45:19,22

**pending (12)**
23:16;26:3;60:5;
66:24;67:2;72:4,8,9;
79:7;88:17;89:5;98:16
**pensioners (1)**
141:21
**people (24)**
8:13;16:6,25;27:9;
30:19;31:21;39:15;
43:19;54:14;62:11;
70:14,16;72:20;83:3;
89:4;90:23;95:1;98:9;
100:16;109:19;117:8,
8;138:23;148:5
**people's (1)**
10:19
**per (4)**
21:13;97:8;99:1;
100:9
**percent (3)**
51:13;122:16,16
**percentage (1)**
92:5
**percipient (1)**
95:3
**perfect (1)**
147:1
**perhaps (4)**
9:20;50:24;69:3;
115:24
**period (7)**
26:2;42:11;67:1;
98:14;101:12;111:3;
116:22
**periodic (1)**
149:8
**permission (2)**
40:5;41:25
**permissive (1)**
77:24
**permit (3)**
44:15;109:12,14
**permits (1)**
145:11
**permitted (2)**
109:13;118:16
**person (10)**
11:24;79:25;124:7,9;
143:6;146:4,25;
147:11,11,12
**personal (13)**
48:9;49:17;70:16;
76:9;79:15;81:6,10;
86:22;87:20;88:21;
95:23;112:23;116:10
**perspective (2)**
53:19;61:19
**persuade (1)**
41:15
**persuaded (2)**
31:15;131:14
**persuasive (1)**
131:9

**petition (7)**
20:25;26:9;107:9;
111:15;113:4;117:3;
130:21
**PG (1)**
16:17
**PG&E (71)**
6:4;19:25;25:22;
26:18;27:21;34:6;
35:18,20;36:17,25;
40:6;44:20,25;49:23;
50:2;64:22,24;65:10;
73:6,22,23,24;74:12,
20,22;75:7,9,18,23;
76:2,15,15;79:1;82:23;
86:12;87:11;92:2;
94:11,15,15,21,23,23;
95:3,5,6,8,9,10,11,12;
100:25;101:10;112:25;
113:15;117:5;118:1,
10;122:9;129:2,6,6,22;
134:13;141:17;144:9;
145:7;146:16;147:24;
148:17,20
**PG&E's (4)**
44:17;60:14;86:6;
98:16
**ph (2)**
72:2;133:16
**phase (2)**
60:3;90:6
**philosophical (1)**
33:8
**phone (9)**
19:22;22:18,20;
24:14,21;44:4;52:8,13;
70:18
**phones (1)**
70:17
**phonetic (2)**
26:20;75:5
**phoneticYour (1)**
72:1
**phrase (1)**
35:16
**physical (1)**
14:9
**pick (3)**
16:14;32:6;85:2
**picked (2)**
85:15,15
**piece (1)**
59:13
**pipeline (3)**
89:23;103:4;122:10
**piper (1)**
65:11
**pitch (2)**
72:15;124:15
**place (11)**
7:25;25:22,25;36:14;
49:15;60:16;64:25;
78:18;90:13;138:3;

152:23
**places (2)**
49:21;74:13
**plaintiff (13)**
23:16;34:12,12;
39:10,10,19;40:25;
41:1,3,22;50:21;76:6,6
**plaintiffs (1)**
86:23
**plaintiff's (1)**
77:9
**plan (13)**
11:16;65:25;89:12,
22;90:9;111:4;129:23;
130:9;139:17,22;
149:6,19;150:4
**Plantain (9)**
75:5,15,20;76:13,16,
17;91:22;93:10;94:10
**play (1)**
34:8
**plays (2)**
102:2;117:10
**plea (1)**
8:12
**pleading (5)**
7:10;14:13;23:11;
88:9;132:17
**pleadings (16)**
7:5;13:7;14:6;15:1,6,
10;51:23;66:22,23;
69:6;108:25;134:9;
135:25;136:1,25;142:4
**please (4)**
34:6;122:1;132:10;
134:16
**pleased (1)**
77:3
**pleasure (2)**
24:17;127:11
**plenty (2)**
99:15;109:2
**Plummout (2)**
72:2,3
**plus (2)**
12:14;99:25
**PM (1)**
154:4
**pocket (3)**
75:8,10,15
**pockets (1)**
75:14
**podium (2)**
44:1;152:6
**point (78)**
7:14,15;11:2;12:7,7;
28:24;30:5;31:16;32:5,
6;33:21;35:9;41:23;
42:17;47:7;48:15;49:4;
52:23;55:12;58:5,12;
59:17;63:6,7;65:8,20;
66:12,20;68:12;72:6;
74:11,25;75:7,9,9;

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 171
of 179

76:16;79:7;80:6;82:4;
83:10,22;86:17,21;
87:16;89:19;94:7;
101:16,25;102:24;
103:9,21;104:25;
107:12;109:15;110:11;
114:6,8;116:14;
119:16,20;120:8,10;
124:20;131:13;132:22;
138:11,21;139:5;
145:5;146:10;147:18,
25;148:2,21;149:12;
151:14,18;152:20
**pointed (2)**
94:20,22
**pointing (2)**
74:22,24
**points (4)**
21:9;101:24;109:6;
132:24
**police (9)**
29:21;33:23;36:22;
37:6,22;38:9;39:3;
50:14;51:8
**policies (4)**
97:5;98:15,20;99:14
**policy (6)**
10:7;37:8;75:16;
98:19,22;126:6
**pony (1)**
102:18
**portion (7)**
36:21;37:4;97:19;
102:22;115:22,24;
117:18
**position (17)**
9:18;28:17;32:20;
33:22;35:19;37:22;
44:13;46:7;63:12;
72:19;101:9;125:7;
144:4,15;145:24;
152:7,9
**possibility (3)**
20:14;83:17;110:8
**possible (4)**
17:4;45:13;142:8;
148:1
**possibly (2)**
48:12;99:5
**post (1)**
142:1
**post-petition (4)**
114:16;120:15,16,18
**posturing (1)**
46:9
**potential (1)**
64:4
**potentially (4)**
83:25;89:3;102:13;
109:19
**potshots (1)**
57:18
**Power (11)**

25:23;29:21;33:23;
50:14;51:8;121:3,5;
126:3;127:13;152:12,
14
**PPA (1)**
152:2
**practical (4)**
38:21;61:21;91:21;
135:6
**practice (1)**
20:8
**pre (1)**
115:18
**pre- (2)**
20:24;107:8
**preaching (1)**
90:25
**precedes (1)**
98:17
**preclude (1)**
86:19
**preempts (1)**
150:3
**preference (1)**
149:5
**preferring (1)**
117:20
**prejudice (9)**
72:7;82:9,19;83:25,
25;84:3;91:11,12;
93:20
**prejudiced (1)**
16:12
**preliminary (8)**
6:14,21;54:3;68:24;
69:21,23;96:22;103:11
**prep (1)**
95:9
**prepare (2)**
9:7,8
**prepared (4)**
65:14;69:11;80:6;
128:14
**preparing (1)**
12:18
**pre-petition (9)**
57:9;106:17;114:1;
115:12,16,20;120:17;
134:11,20
**present (1)**
7:24
**presentation (2)**
153:14,15
**presenting (1)**
7:22
**presents (1)**
100:22
**preserving (2)**
61:1,5
**presume (3)**
9:1;56:2;66:18
**pretend (2)**
65:2;120:6

**pre-trial (1)**
84:22
**pretty (5)**
10:10;36:22;38:3;
49:6;83:10
**prevail (1)**
98:6
**prevails (1)**
40:18
**prevent (3)**
81:15;106:2,3
**previous (1)**
142:14
**prima (4)**
72:5;73:8,13,14
**primary (7)**
23:10;26:5,21;36:7;
38:1;54:19;55:12
**primary/secondary (1)**
58:7
**principal (1)**
49:23
**principally (2)**
7:8;84:24
**principles (1)**
65:23
**prior (6)**
6:12,20;112:19;
128:18;135:17,21
**priority (4)**
47:11;52:17,18;
111:5
**private (9)**
9:21;34:5,7,16;
35:19,20,21;36:14;
39:22
**pro (2)**
14:17,18
**probably (12)**
8:12;14:9;60:9;65:8;
72:2,18;89:8;115:24;
126:15,19;138:12;
144:9
**problem (11)**
18:20;19:23;21:20;
24:6;52:18;72:23;
74:18,19;75:6;85:5,9
**problematic (2)**
63:12;149:19
**problems (2)**
19:7;85:7
**procedure (3)**
6:11;22:10;50:6
**proceed (6)**
31:23;32:13;44:16;
83:18;92:21;94:10
**proceeding (33)**
25:17;33:23;35:12,
18;38:8;54:12,14,19,
25;55:9,15,22,24;56:6,
10,16;57:3,19;58:7,16;
59:23,23;62:4;65:20;
67:16;68:13;72:7;

76:15;80:5;107:3;
122:22,25;123:2
**proceedings (24)**
25:21,21;30:13;
35:20;37:12;38:3,24;
39:2,19;40:7;44:16;
54:23;55:16;56:8,15;
57:3,6;58:9;91:13;
93:5;122:20,24;
127:18;154:4
**produced (2)**
97:5;105:3
**producers (1)**
152:14
**product (1)**
122:15
**productive (1)**
88:4
**professional (3)**
10:13,14;20:11
**professionals (2)**
13:1;110:6
**progressed (1)**
80:6
**promise (2)**
96:13;153:17
**promises (1)**
139:15
**promptly (1)**
153:17
**proof (4)**
48:1;81:21,24;
106:19
**proper (4)**
26:22;44:20;52:16;
53:5,6;69:23
**properly (2)**
58:24;143:15
**property (1)**
87:21
**propose (3)**
62:22;86:13;139:18
**proposed (2)**
17:13,23
**proposes (2)**
129:24;139:18
**propounded (1)**
98:14
**props (1)**
7:18
**prosecuting (1)**
32:23
**protected (1)**
66:16
**protest (2)**
26:2;39:7

**proves (1)**
133:25
**provide (1)**
55:21
**provided (1)**
101:10
**providence (1)**
135:22
**providers (1)**
141:23
**providing (1)**
10:20,20;122:15
**provision (1)**
25:23;52:20
**public (9)**
17:1;22:22;37:8;
39:25;121:14;122:4,
21;123:6;147:10
**publicly (1)**
98:1
**pull (1)**
85:2
**purchases (1)**
147:12
**pure (1)**
123:12
**purely (2)**
37:13;152:25
**purpose (3)**
10:22;12:7;13:2
**purposes (4)**
21:7;30:23;117:10;
125:14
**pursue (2)**
65:15;74:16
**pursuing (1)**
74:18
**pursuit (1)**
40:1
**push (1)**
51:11
**pushed (2)**
13:12;50:1
**put (13)**
9:16;24:3;25:25;
27:13;31:14;32:1;
58:17;59:6,16;69:2,2;
132:14;134:7
**puts (1)**
58:1

## Q

**QF (18)**
25:19,20;54:12,18,
22;55:15;56:15;57:3;
58:7;59:10,23,23;
63:12,15,17,20;65:17,
18
**qua (2)**
138:7,11
**quarterly (6)**
25:21,24;39:5;54:13;

Min-U-Script®

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 172
of 179

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(16) **pointed** - **quarterly**

57:11,21
**quick (2)**
23:15;132:11
**quickly (5)**
90:6;96:13;107:7;
149:18;153:19
**quiet (1)**
52:7
**quite (1)**
58:24
**quoted (1)**
64:23

**R**

**Radovsky (1)**
25:8
**raft (1)**
100:9
**raise (3)**
78:2,2;143:17
**raised (5)**
17:17;24:2;101:24;
114:23;144:14
**raises (1)**
73:21
**raising (1)**
142:11
**ramifications (1)**
66:8
**range (1)**
128:3
**rate (48)**
39:5,6;111:20;
127:22,24;128:9;
129:1,2;130:1,1;
135:16;136:3,13,18;
137:6,11,12,19;138:1,
9;140:1;141:15;
142:11;144:5,7,10;
145:14,19,20,23;147:6,
8,12,17,22,23;148:14;
149:20,25;150:3;
151:19,23;152:6,10,23;
153:4,4,8
**rate- (2)**
128:24,25
**rate-making (1)**
132:21
**ratepayer (8)**
13:20;16:2;115:4;
124:8,9;125:13,13;
126:12
**rate-payer (2)**
129:12;135:19
**ratepayers (24)**
109:20;110:3,8;
111:3,12;112:8,12,12;
114:13,24;115:7,9;
116:10;117:22,24;
120:2,21,23;121:10,13;
122:17,23;125:4,5
**rate-recoupment (1)**

129:20
**rates (9)**
117:25;127:23;
130:4;135:18;142:11;
150:4,23;151:16,17
**rather (8)**
9:6;10:22;11:23;
31:20;40:7;112:8;
126:12;137:23
**reach (3)**
49:13;58:15;86:4
**reaches (1)**
48:15
**read (6)**
9:25,25;16:11;51:12;
78:3;146:14
**reading (2)**
50:24;117:16
**ready (7)**
56:16,18;84:10;
90:14;92:11;101:3;
105:17
**real (9)**
11:20,21;35:10;50:4;
62:11,11;83:16;
111:25;117:8
**reality (2)**
110:10;117:7
**really (31)**
8:7;10:17;14:25;
25:16;27:5;30:6;31:13;
35:2;39:18;41:13;
47:11,16;64:8;75:14;
79:25;81:8;94:9;96:25;
103:13;109:23;110:18,
21;111:8,20,20;120:6;
140:1;142:16;147:17;
149:25;152:23
**reason (7)**
7:21,22;17:22;30:10;
55:16;59:17;145:23
**reasonable (1)**
20:13
**reasons (9)**
45:10;48:7;49:23,24;
58:17;136:19;137:4;
144:15;149:13
**rebate (4)**
114:6;117:15;
147:25;148:8
**recall (8)**
22:8;85:8;101:3;
110:13,13;111:14;
131:6;139:11
**receive (1)**
128:2
**received (1)**
17:13
**receiving (1)**
36:6
**recent (3)**
6:14;25:17;26:8
**recently (1)**

8:21
**Recess (1)**
70:19
**recognizing (1)**
59:3
**recollection (1)**
78:8
**recommend (1)**
62:15
**recompense (1)**
64:9
**reconciled (1)**
41:23
**record (12)**
13:9;16:21;17:13;
18:11;21:6;24:3;46:24;
53:20;62:6,7;71:20;
127:10
**recoupment (1)**
119:18
**recover (5)**
28:10;29:22;32:2;
51:7;115:19
**recovered (1)**
40:16
**recovers (1)**
51:6
**recovery (18)**
27:18;28:21,22;29:8,
22;30:5;31:16;32:2;
33:11,24;41:5,18;64:6;
65:22;66:14,15;92:8;
99:24
**recruited (1)**
8:16
**redacted (1)**
99:14
**redline (1)**
18:1
**reduce (1)**
135:1
**refer (1)**
127:14
**reference (2)**
19:24;138:17
**referenced (2)**
68:1;114:3
**referred (2)**
127:19;134:25
**referring (1)**
54:14
**Refining (1)**
96:19
**reflected (1)**
23:2
**Reform (1)**
108:15
**refund (13)**
27:6;37:4,4;38:2;
40:17,21;45:6,14;46:5;
66:16;127:24;130:25;
148:17
**refunded (1)**

28:1
**refunds (7)**
38:1;42:2;127:17,17,
22;128:1;130:4
**refused (1)**
94:24
**regard (2)**
23:5;145:9
**regarding (5)**
21:9;23:22;37:25;
68:8;96:24
**regardless (1)**
94:4
**regular (1)**
129:10
**regulation (2)**
33:19;132:19
**regulator (1)**
50:20
**regulatory (17)**
33:15;35:9;36:23;
37:6,10,22;38:9,24;
39:3,23;40:1;43:8;
51:24;57:20;123:17;
143:9;151:22
**reinventing (1)**
133:1
**reject (2)**
152:4,8
**rejected (1)**
150:17
**rejection (2)**
151:4,16
**rejections (1)**
151:1
**related (1)**
68:8
**relates (1)**
10:2
**relating (2)**
25:21;102:9
**relationship (7)**
109:22,25;142:10,
15,17;143:10;153:2
**relationships (2)**
20:12;143:3
**relatively (2)**
108:24;149:18
**relief (43)**
6:11,19,24;13:5,19;
29:19;30:5;31:8,16;
37:5,25;38:2;40:8,15;
41:1;45:5;49:20;50:22;
58:22;59:3;68:20;69:8,
15,22,22;77:9;79:7,13,
18;81:4;82:8,13,17;
84:1;85:10;86:8,19;
93:23;94:2,8;99:2;
100:15;101:16
**re-litigate (1)**
53:4
**remain (2)**
84:21;103:15

**remaining (3)**
13:15;16:23;84:17
**remains (1)**
6:22
**remand (1)**
79:13
**remedies (2)**
28:21;65:16
**remedy (1)**
74:16,19;136:6
**Remember (6)**
8:6;9:21;50:23;
69:21;83:4;133:14
**remind (1)**
137:17
**reminding (1)**
93:23
**remove (1)**
149:20
**render (1)**
21:14
**reorganization (2)**
142:1;150:21
**repayment (1)**
116:22
**repeat (1)**
108:25
**rephrase (1)**
49:22
**reply (4)**
114:4,5;136:17;
138:17
**report (1)**
102:10
**represent (9)**
95:22;104:22;
109:25;110:2;127:13;
137:21;138:19;140:20;
143:12
**representation (2)**
95:4;136:21
**representations (1)**
21:25
**representative (2)**
136:24;153:11
**representatives (1)**
112:6
**represented (4)**
129:7,17;138:12;
141:21
**representing (5)**
10:11;14:20;138:4;
142:6;152:6
**represents (3)**
122:13;128:25;144:8
**request (15)**
21:17;27:6;37:4,25;
38:1;40:24;44:15;
53:25;54:7;69:10;
82:17,24;117:16;
124:4;136:20
**requested (1)**
81:14;89:25

Min-U-Script®

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 173
of 179

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(17) quick - requested

**requests (1)**
123:4
**require (1)**
69:1
**required (2)**
6:12;25:23
**requires (2)**
100:3;110:5
**res (2)**
48:20,23
**rescheduled (1)**
104:7
**resemble (1)**
35:21;39:19
**resembles (3)**
38:10;39:21;41:9
**reservation (6)**
22:25;23:6,22;24:2;
102:12;105:2
**reserve (5)**
16:6;24:5,9;34:23;
108:21
**reserved (1)**
24:7
**reserving (1)**
24:5
**residential (3)**
117:22,24;122:12
**resisting (1)**
100:4
**resolution (8)**
12:19;26:21;58:8,15;
86:3;105:18;106:1,24
**resolve (3)**
63:18;89:19;149:18
**resolved (2)**
9:1;77:23
**resources (9)**
55:25;60:20;61:8;
83:14,23;84:4;100:25;
117:20;118:10
**respect (14)**
23:22;47:8;80:4;
81:5;89:10;93:19;94:5,
7;102:9,13;114:23;
132:23;143:12;144:4
**respectfully (1)**
117:11
**respects (1)**
49:14
**respond (3)**
22:2;75:11;130:14
**respondent (1)**
34:13
**responding (1)**
32:13
**response (7)**
6:20;19:3;44:14;
46:8;54:3;57:22;
111:23
**responses (2)**
45:20;68:24
**responsibility (3)**

6:25;47:21;102:6
**responsible (1)**
7:8
**responsive (1)**
137:3
**rest (2)**
117:9;124:15
**restaurant (4)**
75:2,3,4;76:24
**restructured (1)**
152:13
**restructuring (2)**
82:1;150:20
**result (5)**
9:1;12:14;53:5;
151:21,21
**results (3)**
73:22;74:11;91:11
**retain (1)**
16:25
**retention (7)**
9:15;13:11,15,23;
15:11;16:1;24:14
**Retirement (1)**
22:23
**return (1)**
85:9
**returned (1)**
117:21
**reunion (1)**
34:20
**revenues (1)**
117:21
**reverse (2)**
62:18;63:3
**review (1)**
17:14
**reviewed (2)**
97:14,19
**revised (2)**
17:13,23
**revisit (4)**
49:3;90:13,15;91:3
**rewarded (1)**
45:25
**Richard (1)**
96:18
**right (146)**
8:10,14;13:6,14;
15:21;17:19;22:16;
25:4;26:14,14;27:18;
28:2,16,22,23;29:6,13;
30:2;32:22;34:2,6,11,
23;36:8,11,20,25;37:1,
2,3;38:6,13,14,25;
39:12;42:1,3,9,12;43:1,
1,11;44:7;45:12;46:23;
51:25,25;53:10,11,14,
22;57:16,17;62:10;
63:16,21;64:5,6,21;
68:5,7;70:8,22;71:23;
74:7,7,17,21;75:4;
76:10;78:14,18;79:3,

15;80:11,22;81:22;
84:7;85:12;86:25;
91:23;92:11;93:14;
94:14;95:14;96:10,10;
97:4;100:20,21;
101:18,19;103:2,22;
104:1,13,13,24;107:13,
21;108:2;109:24;
111:1;112:21;113:3,9,
14,18;114:7,8;117:1,3,
12;118:12,23;119:22,
23,25;121:8;123:10;
126:3,18;127:15;
128:20;129:10;130:2,
5;131:2,22;135:8;
137:4,10;138:13;
139:4;140:16;141:13;
143:23;144:11,17;
145:2;146:20;148:12,
19;149:6,11;150:19
**rights (20)**
22:25;23:6,22;24:2,
5,5,7,9;28:18,18;65:23;
102:12;105:2;115:16;
117:2;133:11,19;
142:22,25;149:14
**rise (5)**
70:20;141:14;
146:17;150:3;151:2
**risk (5)**
40:11;73:21;74:11;
82:13;91:11
**RJN (1)**
121:2
**roach (1)**
151:10
**road (4)**
11:3;24:7;54:24;
65:5
**Robert (1)**
108:14
**role (7)**
7:13;112:10,13;
116:11;138:11;147:11;
151:4
**rolled (1)**
25:18
**room (1)**
106:3
**roomful (1)**
10:8
**Rose (1)**
19:14
**routine (2)**
9:10;78:23
**rude (1)**
96:6
**rule (11)**
6:23;20:2;36:1;
41:13;45:10;58:4;
59:19;68:25,25;97:8;
139:8
**ruled (3)**

34:17;42:8;69:5
**Rulemaking (1)**
123:1
**rules (8)**
10:10;14:6;20:1;
22:9;45:17;65:21;
77:13;97:7
**ruling (17)**
10:5;36:25;37:10;
43:18;47:7;52:15;
54:21;58:1;63:19;66:8;
68:19;95:15;112:19;
113:2;123:19;127:25;
128:18
**rulings (1)**
58:13
**run (1)**
40:11
**runs (1)**
39:14
**rushing (1)**
84:1

**S**

**safe (5)**
91:2;129:5;141:17,
25;153:8
**Safety (1)**
123:1
**same (22)**
21:20;35:19;36:15;
37:7;41:13;43:2;48:15;
60:11;63:13;91:4;
105:20;106:22;107:22;
119:4,6,17,23;120:10;
125:2;141:24;142:19;
148:5
**SAN (30)**
6:1;25:9;35:17;
36:17;44:15;45:12;
46:15;55:18;57:2;62:9;
64:23;75:14,19,19,25;
76:12,16,17;91:21;
94:10;116:23;120:24;
134:23,25;145:10;
146:14,15,15;147:3;
149:15
**sanctions (3)**
34:16;37:7;38:4
**Santa (1)**
98:25
**satisfactory (1)**
142:7
**satisfied (6)**
16:17;17:9,10;31:6;
53:4;64:18
**Save (1)**
70:4
**saw (2)**
127:6,20
**saying (31)**
11:7,8;12:2;21:5;

34:6;35:23;36:13;
44:13;47:22,25;48:25;
49:11;50:8;53:3;61:5,
9;76:20;77:18;81:23,
24;86:6;88:25;89:21;
91:14;125:4,10;
128:10;129:16;141:18;
151:12,20
**SBA (1)**
51:7
**scanned (1)**
14:8
**scheduled (3)**
80:21;104:16;118:14
**school (1)**
133:14
**scold (2)**
8:6,7
**scoldee (1)**
8:8
**scolder (1)**
8:8
**scolding (1)**
8:7
**scratch (1)**
56:17
**se (1)**
99:1
**sealed (1)**
96:24
**search (1)**
17:1
**seat (1)**
153:10
**seated (1)**
84:21
**second (7)**
27:3;31:10;45:4,25;
60:3;67:11,23
**secondary (6)**
26:5,21;36:7;38:1;
54:19;55:13
**second-guess (2)**
21:15;48:19
**seconds (1)**
23:8
**Section (7)**
37:13;39:2,18;
124:22;133:19;150:12;
151:6
**secured (4)**
113:7;133:12,20;
134:1
**securities (1)**
23:16
**seeing (2)**
20:1;110:25
**seek (1)**
120:2
**seeking (4)**
33:10;37:10;46:17;
136:6
**seeks (1)**

Min-U-Script®

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 174
of 179

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.com

(18) requests - seeks

51:6
**seem (5)**
10:3;41:16;47:5;
61:19;133:14
**seemed (1)**
50:25
**seems (16)**
37:15,20;49:15;51:8;
52:21;57:15;61:21;
72:1;79:17;84:11;
114:13;120:9;133:13;
135:11;138:21;142:19
**self (1)**
99:10
**self-serving (1)**
137:1
**sell (2)**
129:23,24
**sells (1)**
118:10
**semantics (2)**
33:12;35:10
**sense (11)**
38:10;49:1;61:6;
66:10,10;79:6;81:18;
82:4;100:11;135:9,12
**sensible (1)**
63:8
**sent (2)**
68:24;102:12
**separate (5)**
20:2;25:23;37:24;
141:15;147:7
**separately (2)**
23:25;37:5
**September (4)**
90:1,2,4;91:3
**sequence (4)**
15:25;16:14;24:19;
59:10
**sequencing (4)**
61:15;62:3,14;81:7
**serious (1)**
133:6
**seriously (2)**
83:9;133:4
**serve (4)**
12:4;112:15;120:2;
128:15
**served (2)**
58:6;121:14
**service (10)**
25:25;26:17,18;36:6,
7;38:1;55:13,21;68:9;
122:15
**services (4)**
21:14;112:14;
117:23;147:12
**set (11)**
11:6,8;80:8,9,12,14;
89:23;90:1;101:9;
132:20;145:8
**setoff (10)**

117:1,12,15;119:1,
17;129:20;132:23;
133:11,19;141:13
**sets (1)**
20:3
**settle (1)**
106:23
**settlement (4)**
88:23;89:10;101:7;
103:15
**seven (1)**
55:7
**seventy (1)**
110:16
**seventy-five- (1)**
99:3
**seventy-five-million-dollar (1)**
98:1
**several (1)**
51:12
**Shane (1)**
35:8
**Share (7)**
25:8;121:16;122:13;
132:4;150:13,15;153:3
**sharing (2)**
121:19;127:3
**Sheriff (20)**
121:20,25;122:2,2,7;
123:11,15,21,23;
124:17;125:1,18;
126:1,4,13,16,18,20,
24;152:18
**shifts (1)**
72:6
**shoot (1)**
67:15
**short (4)**
26:2;57:6;108:24;
110:24
**shorthand (1)**
54:13
**shortly (2)**
85:14;95:15
**shot (2)**
101:22;107:19
**show (3)**
38:8;72:7;94:24
**showing (7)**
72:3,4,5,8;96:23;
103:13;121:14
**shuffle (1)**
13:19
**sic (1)**
96:20
**side (16)**
7:7;11:7,8;12:12,13;
16:8,13;24:5;61:10;
76:22;108:20;110:15;
123:16;131:22;143:24;
151:22
**sides (1)**
153:13

**sign (5)**
8:5;17:9;18:6;53:16;
88:9
**signals (1)**
66:5
**signatory (1)**
19:16
**signature (3)**
7:10,11;14:7
**signatures (1)**
14:9
**signed (2)**
13:7;97:18
**significant (3)**
122:14;125:23;
126:24
**signing (4)**
14:5,14;15:10;18:5
**sign-off (2)**
18:6,17
**similar (6)**
21:17;38:3;79:8;
82:24;85:23;87:17
**similarly (3)**
16:8;83:3;88:3
**simple (5)**
62:1,2;64:25;109:12,
12
**simplify (1)**
42:7
**simplifying (1)**
145:4
**simply (11)**
7:1;9:4,13;12:2;
18:24;19:16;57:20;
89:14;124:5;129:16;
144:15
**Simpson (1)**
22:6
**single (4)**
15:5;64:2;106:6;
137:14
**sit (2)**
95:7;140:2
**sitting (3)**
23:1;71:14;77:8
**situated (2)**
83:3;88:3
**situation (5)**
34:14;75:13;100:12;
126:9,11
**situations (1)**
88:16
**six (4)**
13:16;15:11;110:16;
117:8
**sixty (1)**
98:14
**slight (2)**
19:22;107:11
**slippery (2)**
48:21;51:20
**slope (3)**

48:21;51:21;144:24
**slot (1)**
104:16
**small (6)**
74:14;75:10;100:13;
110:7;122:12;147:22
**smaller (2)**
100:8;126:3
**so- (1)**
41:9
**solar (3)**
148:5,7,15
**solar-enabled (1)**
147:23
**sold (1)**
129:25
**solely (1)**
150:4
**solution (1)**
129:5
**solvent (2)**
11:13,16
**somebody (5)**
56:18;90:25;101:20;
110:17;147:1
**somebody's (2)**
74:2;76:9
**somehow (1)**
138:24
**someone (3)**
48:1;72:19;131:23
**sometime (1)**
144:20
**sometimes (5)**
10:24;100:16;
103:19;145:1;148:5
**somewhat (1)**
9:11
**somewhere (8)**
25:3,4;49:19;109:10;
111:14;112:24;117:5;
119:11
**soon (1)**
107:25
**sorry (8)**
22:19;26:12;70:9;
96:4;99:6;108:10;
130:1;139:9
**sort (12)**
28:22;48:8;61:21;
72:16,20;83:23;86:14;
91:1;114:14;126:17;
129:21;140:3
**sorts (2)**
49:6;60:6
**sought (2)**
57:5;93:5
**sound (1)**
8:24
**sounds (4)**
62:19;84:13;85:11;
140:20
**Southern (1)**

122:9
**speak (5)**
13:8;57:23;127:5;
132:6;141:8
**SPEAKER (1)**
71:17
**speaking (1)**
95:20
**special (8)**
47:14;88:1;109:21;
129:3;137:5,11,21;
149:5
**specialist (1)**
20:7
**specialized (2)**
49:12;72:17
**specific (13)**
6:9;8:17;11:25;
25:21,22,25;44:23;
46:9;67:22;99:9;
139:20;147:20,23
**specifically (1)**
86:18
**spectrum (2)**
39:15,19
**speculate (1)**
146:11
**speculation (1)**
92:10
**speech (1)**
125:15
**speed (1)**
149:23
**spend (3)**
60:20,21;61:7
**spent (3)**
72:17;83:17;99:21
**split (4)**
15:2;19:19;36:17;
37:24
**splitting (2)**
33:1;36:18
**spouse (1)**
149:7
**squarely (2)**
98:3;100:12
**squeezed (1)**
8:18
**staff (2)**
6:8;8:14
**staffs (1)**
8:13
**stage (1)**
149:20
**stakes (1)**
65:9
**staking (1)**
48:9
**stand (4)**
91:8;102:19;107:15;
143:20
**standard (4)**
19:25;105:4;136:20;

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 175
of 179

137:7
**standing (4)**
71:11,15;111:17;
114:24
**standpoint (2)**
91:21;135:20
**stands (2)**
96:10;107:25
**start (8)**
10:16;11:6;13:5;
59:12;60:2,9;67:18;
98:9
**started (3)**
25:18;57:7,12
**starting (2)**
56:16;120:10
**state (13)**
20:16;46:24;66:7;
89:5;98:2,8;110:3;
121:10;126:5;136:1;
142:23,24;152:13
**stated (2)**
46:3;66:21
**statement (19)**
6:15;9:19;20:8,10,
22;27:4;44:10;52:24;
65:7;82:10,11;83:13,
23;106:11;127:18;
128:4,14;138:6;146:21
**statements (3)**
83:11;85:25;137:2
**States (6)**
16:20;31:21;84:18;
129:11;131:14;139:14
**state's (1)**
147:15
**status (2)**
137:13;141:13
**statute (12)**
9:25,25;77:22;92:12;
115:6;124:14;125:11,
14,17;127:1;132:19;
133:19
**statutory (4)**
10:3;115:5;124:6;
134:10
**stay (94)**
6:12,20,24;13:5,20;
24:20;29:4,7,19,19,19,
20,23,23,24;30:4,5,11,
15;31:8,10,15;32:1,3,4;
35:15;38:17;40:8,9,11;
41:5,12;42:17,19;
47:23;48:9,17;49:20;
54:11;55:14;57:4;58:5,
17,22;59:2,3,5;60:23;
61:9;65:14;66:17;
67:14;68:13,19,20;
69:22,23;71:10;72:5;
75:21,22,24;79:8,13,
18,24;81:4,16,17;82:9,
13,17;84:2,21;85:10;
86:8,19;88:2;89:20;

92:18;93:3,5,8,9;99:2;
100:15;101:17;102:3;
103:12;105:13,15;
106:2,5;126:5
**stayed (10)**
29:15,16;32:13,21,
22,22;34:17;35:18;
41:20;52:16
**staying (1)**
22:12
**stays (1)**
77:9
**steel (1)**
122:10
**steep (1)**
144:24
**step (3)**
45:25;52:2;137:20
**Stephen (1)**
88:13
**stick (1)**
114:6
**sticking (1)**
13:6
**still (38)**
15:13;21:20;26:3;
37:5,8;39:20;41:17;
47:8;51:14;52:21;
53:12;54:11;65:8;67:2;
74:15,16;80:7;84:15,
17,18,21;85:11;91:25;
92:2;95:3;99:25;100:2,
2,22,25;113:19;114:2;
116:2;126:2,2;134:19;
147:5,24
**stipulate (1)**
61:17
**stipulated (1)**
9:16
**stipulation (1)**
97:4
**stipulations (2)**
8:23;9:5
**stone (1)**
47:25
**stop (5)**
48:17;57:5,12;
121:17;148:25
**stopped (3)**
59:1;114:14;117:9
**storage (1)**
122:11
**story (2)**
42:11;77:2
**straight (1)**
108:4
**streamline (1)**
149:22
**Stress (1)**
122:25
**stuff (1)**
60:6
**subject (16)**

11:5;18:4;43:22;
50:20;51:18;73:1;96:2;
97:7;100:6;111:1;
117:15;118:25;119:18;
127:24,25;145:7
**submission (2)**
19:3;47:3
**submit (5)**
39:23;53:25;54:16;
97:5;137:24
**submits (1)**
39:6
**submitted (3)**
54:2;96:11;107:25
**substantial (6)**
103:6;110:9,18;
145:13;151:2;152:3
**substitute (1)**
49:4
**substituted (1)**
36:14
**subtle (1)**
31:20
**succeed (1)**
101:21
**successful (1)**
151:7
**suddenly (2)**
90:8;148:16
**suffered (3)**
11:23;72:20;86:5
**sufficient (4)**
30:16;120:2;121:12,
12
**sufficiently (1)**
153:11
**suggest (2)**
16:4;21:2
**suggested (1)**
77:16
**suggesting (2)**
10:23;151:5
**suggestion (1)**
87:13
**sum (1)**
106:12
**summary (1)**
107:3
**superior (7)**
34:10;40:25;41:21;
75:19;76:4;79:19;83:5
**supplemental (3)**
20:19;21:8;121:1
**suppliers (1)**
141:21
**support (7)**
82:11;127:18;128:4,
12,14;149:8
**suppose (4)**
40:13;52:19;152:1,3
**supposed (5)**
8:1;14:8;51:1;85:9;
97:20

**Sure (25)**
14:3;15:19,24;17:4;
18:16,17,18;24:3;
34:25;35:2;37:17;
41:17;43:15;44:2;
51:14;52:19,25;62:12,
20;86:10;87:3,10;
97:15;116:7;146:11
**surprised (1)**
87:23
**surprises (1)**
69:4
**suspect (3)**
47:23;85:13;145:20
**sustain (1)**
12:5
**sustainable (3)**
129:5;141:17,25
**Suzy (1)**
25:10
**switch (2)**
77:12;79:19
**swoop (1)**
110:22
**sympathetic (2)**
123:13;144:4
**systematic (2)**
48:8;86:13

# T

**table (5)**
44:1;71:9;98:9;
140:2,22
**talk (3)**
93:11;150:1;152:18
**talked (2)**
104:19;149:16
**talking (20)**
11:11;15:4;32:9,15;
33:18,18;37:12,13;
56:4;68:9,10;90:11;
91:10;92:9;100:11;
115:4;117:2;145:13;
148:9;149:13
**talks (1)**
36:18
**target (1)**
67:15
**tariff (8)**
27:22;34:4;44:18,21,
24;45:18;46:11,12
**tariffs (1)**
45:22
**TCC (1)**
143:23
**team (2)**
8:15;25:14
**technical (7)**
111:22,23,24;114:8,
13;115:2;144:13
**technicality (1)**
114:22,22

**technically (2)**
79:6;113:6
**Ted (2)**
24:23;53:20
**teed (2)**
23:19;125:3
**telling (1)**
95:2
**temporal (1)**
148:24
**tempting (3)**
87:14;137:9,10
**ten (5)**
70:13;98:2;99:12,19;
100:10
**ten-dollar (1)**
130:19
**ten-million-dollar (2)**
99:7;100:8
**ten-minute (1)**
70:17
**tens (1)**
145:8
**tentatively (2)**
20:18;21:7
**term (7)**
9:22;96:14;110:24,
25;135:13;138:7;
141:17
**terms (22)**
12:1;19:4;24:10;
36:5;40:14,16;41:5;
43:8;44:21;45:3,4;
69:22;90:6;103:14;
113:6;114:7,7;118:6;
119:19,19;146:17,17
**Test (1)**
122:25
**testimony (1)**
95:2
**tests (1)**
31:6
**Thacher (1)**
22:6
**thanks (1)**
23:20
**that'll (1)**
23:24
**theory (1)**
138:18
**there'd (4)**
76:2;79:2;93:23;
134:18
**therefore (7)**
10:10;12:14;21:15;
29:23;78:20;125:5;
148:7
**there'll (3)**
65:25;66:1;75:22
**Theresa (2)**
25:10;62:8
**thinking (3)**
12:25;54:9

Min-U-Script®

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 176
of 179

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

**(20) standing - thinking**

**third (5)**
8:11;25:17;39:25;
74:13;87:1
**thirty (5)**
16:5,10;23:8;26:19;
108:20
**thirty-six (1)**
9:9
**though (8)**
49:9;56:15;72:24;
76:6;91:15;110:11;
137:9;145:3
**thought (10)**
10:7;19:2,13;70:11;
94:16;95:16;97:6;99:6;
139:10;144:19
**thousands (7)**
8:13;50:4,5;83:15;
91:5;103:8,8
**three (10)**
16:13;26:4,4;73:25;
74:4,6;99:5;109:6;
113:21;151:10
**three- (1)**
92:11
**three-day (1)**
60:8
**three-month (1)**
60:8
**three-week (1)**
60:8
**threshold (2)**
128:9;132:15
**throwing (1)**
67:18
**THURSDAY (1)**
6:1
**Thus (1)**
50:14
**tier (1)**
27:3
**Tim (1)**
136:11
**times (5)**
6:14;51:12;58:19;
59:18;92:23
**timing (3)**
81:7;107:24;108:17
**TO18 (1)**
127:19
**TO19 (1)**
127:19
**today (22)**
9:14;10:19;12:18;
13:6;24:15,16;30:1;
40:24;54:18,21;58:25;
66:23;69:5;81:13;
86:11;96:5;97:16;
129:14;131:23;141:6,
7;152:3
**together (3)**
18:24;56:11;79:14
**told (3)**

11:12;59:10;60:5
**tolled (3)**
92:15,17,19
**top (4)**
22:12;95:5;126:14;
140:24
**topics (1)**
77:12
**tort (24)**
9:18;12:6,21;15:16;
18:12,14;21:16;43:20,
24;80:4;82:15;83:15;
86:1,14;88:3;103:7;
111:2;112:2;138:18,
19,19;141:6;144:3,8
**torts (1)**
72:20
**total (2)**
8:15;83:19
**touched (1)**
54:4
**touching (1)**
54:19
**tough (1)**
15:8
**towards (2)**
33:9;117:19
**track (4)**
26:11;59:11;72:21,
21
**trade (1)**
105:24
**trade-exposed (1)**
125:22
**train (1)**
139:9
**Tran (45)**
70:24,24;79:10,12,
16,21;80:3,9,12,16,20,
23;81:1,3,11,23;82:4,
12,17,19,22,25;83:7,
22;84:4,8,15,17;85:19;
86:10;87:3,10,16,20,
24;89:17;93:17;
101:22,23;103:2,10,18,
22,25;104:5
**Tran's (1)**
78:1
**transaction (1)**
119:18
**transactions (1)**
119:10
**transcripts (1)**
95:7
**transmission (2)**
127:23;129:24
**transparency (3)**
122:24;152:18,19
**transportation (1)**
122:11
**trap (2)**
30:25;81:22
**travel (2)**

9:7;71:18
**treat (5)**
21:7;55:18,20;59:13;
107:22
**treated (1)**
6:21
**treating (1)**
72:16
**Tredinnick (71)**
25:6,7,8,13,20;26:10,
12,15,25;27:4,8,10,12,
16,20,24;28:3,5,9,12,
14,23;29:1,8,11,14;
30:3,8,10,13,17,23;
31:12,17;32:8,11,15,
18,20,24;33:1,3,4,14,
17,25;34:3,14,22,25;
41:15,18;42:20;48:14;
58:21;61:22,25;64:12,
15;65:14;66:1,20;67:1,
3,5,8,25;68:2,7,10;70:7
**trial (43)**
49:18;56:18;60:8;
62:18;64:22;73:4,17;
74:20,23;76:4,4;78:13,
19,23;80:1,5,7,8,13;
84:10;85:16;87:7;89:1,
3;90:14,16;91:4,21;
92:11;95:9,10,12;
101:3,5,17,19;102:16;
103:9,19,22;104:4,20;
105:18
**trial's (1)**
42:7
**tribunal (4)**
33:11;39:11;47:14;
49:12
**tried (4)**
51:2;67:14;68:20;
93:19
**trouble (1)**
131:16
**true (12)**
57:20;64:7;80:19;
83:16;86:20,20;133:5,
21;136:19;151:1,7;
152:25
**truly (1)**
101:3
**trust (2)**
119:12;121:12
**Trustee (20)**
8:22;9:2;12:6;16:9,
17,20;18:4;22:7;23:20;
112:11;115:6;124:5;
129:12;131:14;132:2;
136:12,13;139:14;
141:11;143:18
**Trustee's (3)**
9:20;12:22;18:6
**truth (3)**
10:22,24;111:2
**truth-seekers (1)**

12:9
**try (13)**
13:22;32:12;49:22;
51:12;62:17;67:16;
73:18;74:25;79:20;
91:12;93:11;101:23;
106:23
**trying (20)**
7:12;30:25;31:1,14;
32:2;41:2,2;57:18;
58:25;60:2;69:10;76:8,
12;89:13;97:17;
111:11;114:12;116:10;
130:14;132:12
**Tsekerides (49)**
24:21,23,24;25:1,2,
5;28:16;33:5;52:6;
53:12,13,15,17,20;
55:3,5,8,12;56:4,6,14,
22,24;57:1,5,9,11,14,
17;59:8,16;60:13,17;
61:18,23;62:24;63:1,2,
5;66:3;67:10,13,20,22;
68:12,17,21;70:1,5
**tuned (1)**
48:9
**turn (29)**
6:5;10:18;13:20;
16:1,3,4,6;33:6;96:3,4;
108:15;109:25;111:15,
17;112:7,14;116:10;
122:13;125:20;132:17;
135:22,23;136:25;
137:6,18;138:1,10;
140:19,19
**turns (1)**
144:6
**TURN's (3)**
112:13;114:24;
136:17
**twenty (2)**
69:12,12
**twenty- (1)**
69:2
**twenty-four (1)**
9:9
**twenty-one (1)**
128:6
**twice (1)**
80:12
**two (37)**
6:7,17;8:13,14;9:17;
10:2;13:1;15:14,15,15;
19:7;22:9;37:24;54:10;
55:16;56:9;61:19;
69:12;72:9,25;73:1,4,5,
8,19;74:17,19;80:1;
87:9;91:12;99:5;109:5;
113:21;114:2;132:9;
138:24;151:11
**two-thirds (1)**
127:22
**type (1)**

7:11
**types (3)**
30:13;38:24;49:5
**typical (2)**
88:15;142:24
**typically (2)**
41:20;62:16;88:16;
97:2,9

---

**U**

**ultimate (2)**
12:14;52:25
**ultimately (2)**
31:3;117:23
**Um-hum (5)**
30:3;32:19;50:16;
53:2;76:11;87:19
**unable (2)**
20:16;26:17
**unaware (1)**
91:6
**unclear (1)**
23:12
**uncomfortable (1)**
71:14
**Under (20)**
14:6;22:9;25:23;
34:4;53:23;54:6;95:15;
99:25;107:23;115:13,
16;119:20,25;133:15,
18;136:20,23;138:18;
144:19;150:24
**underlying (1)**
51:24
**understands (2)**
41:1;53:6
**understood (2)**
68:23;105:5
**undoubtedly (1)**
63:20
**UNIDENTIFIED (1)**
71:17
**uniform (1)**
47:19
**uninsured (1)**
102:22
**unique (9)**
72:24,25;100:11,12;
103:7;106:12,14;
107:20;128:25
**unit (4)**
33:17;34:1;128:13;
129:24
**United (5)**
16:20;31:21;129:11;
131:14;139:14
**Unless (4)**
64:12;100:9;143:20;
153:23
**unlike (1)**
60:18
**unlim (1)**

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 177
of 179

128:7
unliquidated (2)
128:7;147:18
unofficial (2)
140:7,11
unopposed (1)
13:18
unreasonable (1)
127:24
unsecured (9)
15:15;110:14;
133:12;136:2,25;
137:23;140:24;141:25;
153:1
unusual (2)
22:8;89:18
unworkable (1)
138:22
up (44)
8:20;16:9;18:11;
23:19;25:13,18;30:5;
31:16;32:7;39:24;
42:11;53:7,16;54:12,
22;63:7;64:6;65:6,20;
66:3,18;70:23;71:4,18,
18;75:18,23;76:5;83:5;
85:2,22;88:5;91:8;
94:24;101:9;102:18;
108:5;110:22;125:3,
16;131:13;135:14;
141:10;149:23
upfront (1)
44:19
upload (1)
18:5
upon (3)
113:1;127:16;142:10
upwards (1)
122:16
use (9)
14:13;35:15;57:19;
60:4;67:16;123:15;
126:25;132:18;147:24
used (6)
10:9;20:1;98:23,24;
138:6,9
users (1)
121:23
Using (1)
126:9
usual (4)
7:10;20:1;97:7,8
usually (1)
122:4
utilities (4)
48:16;122:4,21;
123:6
utility (20)
27:2;28:19;29:20;
33:11;34:13;39:9;
55:18,20;59:13;65:10;
66:12;108:15;113:5;
115:17;119:21,25;

126:12;141:17;147:14;
148:6
utility's (1)
35:24

V

vacate (1)
29:24
vacated (1)
38:18
Valero (3)
16:1;96:19;103:13
Valero's (2)
101:9;102:13
validity (4)
47:11;48:2;52:17,18
Van (1)
122:5
various (3)
28:21;82:1;84:18
vendors (2)
137:15;141:20
verdict (4)
75:19,22;76:14,17
versus (3)
54:19;55:12;124:19
veterans (1)
127:12
via (1)
113:24
vice (1)
14:17
victim (2)
11:23,24
victims (5)
96:4;103:8;124:1;
147:3,3
view (15)
28:17;31:7;32:5,6;
35:9;41:24;49:7;65:6;
66:4;116:11;124:5,20;
138:22;141:14;152:20
views (3)
90:3;141:12;143:15
Villacorta (8)
16:16,19,20;17:6,10,
12;22:11,13
violate (1)
35:14
violating (1)
40:11
violations (1)
149:15
virtually (2)
74:14;75:11
visited (1)
53:8
visiting (1)
53:8
voice (4)
111:12;123:4;
129:13;135:24

voices (3)
116:11;135:16;
149:20
volume (1)
15:1
volunteering (1)
111:16

W

wait (6)
30:20;35:24;81:25;
87:13,14;118:4
waiting (1)
108:11
walked (1)
117:5
wants (6)
24:14;40:3;43:14;
48:1;54:7;100:25
warrant (1)
88:2
Washington (1)
60:1
waste (2)
55:24;69:20
way (46)
9:12;10:5;16:7;
18:22;23:15;27:13;
31:4,14;32:2,12;37:7;
39:20;42:19;43:2,14;
44:20;45:24;46:8;
47:10;49:22;50:3;
57:19;60:25;61:14;
62:3,10;66:8,13,15;
68:25;73:15;75:22;
80:25;89:1;102:20,22;
106:14;107:22;108:5;
119:19;123:9;124:14;
125:3;140:3;142:19;
151:14
ways (4)
7:16;45:7;146:19;
151:10
WDT (1)
68:8
wealth (1)
152:15
wedded (1)
47:8
weigh (3)
12:23,24;103:12
weighed (1)
43:21
weighing (1)
132:3
weighty (1)
123:7
Weil (4)
24:24;53:20;70:25;
88:14
welcome (3)
7:24;12:23;122:6

welcoming (1)
152:23
WELSH (8)
95:17,19,21,21,25;
96:1,7,9
weren't (2)
52:2;111:16
WESSEL (81)
71:4,7,11,14,21,21,
23;72:1,13,23;73:5,9,
11,13,16,21;74:2,5,8,
18,22,25;75:3,5,13,18,
21,24;76:3,8,12,20;
77:1,3,5,8,15,18,21;
78:5,8,11,15,17,25;
79:4,9;82:7;84:20,24;
85:3,8,13,18;87:7;91:7,
10,18,20,24;92:2,5,9,
14,16,17,18,21;93:13,
16,19;94:2,4,7,14,18,
20,22,25;95:5;96:12
What'd (1)
105:11
whatever's (1)
68:14
What's (19)
24:17;35:11;59:1,13;
61:9;63:21;68:21;
85:24;86:7;87:12;
89:22,24;97:23,25;
108:25;116:18;127:19;
151:4;152:6
whatsoever (1)
135:9
whenever (1)
6:7
Where'd (1)
62:1
where's (2)
67:25;117:7
Whereupon (1)
154:4
whims (1)
60:24
white (1)
64:19
whole (4)
28:18;105:9;123:25;
140:20
wholesale (6)
26:22;27:21;34:4;
36:15;44:17;121:4
who's (15)
7:15;14:5;31:24;
36:8,9;39:7;50:21,21,
22;70:23;95:20,20;
96:21;143:7;149:8
whose (3)
32:8;142:25;147:24
wildfire (3)
65:3;103:8;144:7
wildfires (1)
98:18

willing (1)
41:14
win (8)
27:14;55:17;61:11,
11;91:15,16,22;92:1
winner (2)
30:1,1
wins (4)
41:22;55:17,21;
59:23
wires (1)
129:24
wish (4)
23:6;152:11,12;
153:4
wishes (1)
152:22
withdraw (1)
17:8
within (9)
36:22;37:6;46:9;
50:13;67:5;98:4;
100:12;113:12;135:20
without (6)
22:15;36:8;58:2;
89:12;101:19;140:24
witness (1)
95:3
witnesses (1)
95:9
won (1)
76:25
wonder (2)
10:16;16:25
word (2)
21:12;94:25
words (7)
44:19;49:10;59:9;
85:25;114:9;117:2;
132:18
work (4)
7:21;9:8;61:20;66:2
working (3)
17:6;113:12;123:7
works (1)
107:2
world (5)
43:17,19;50:4;62:11;
117:8
worried (2)
33:7;66:7
worry (1)
21:17
worrying (1)
91:19
worst-case (1)
134:10
worth (1)
131:16
wow (1)
35:13
written (5)
69:9,10;144:20;

Min-U-Script®

Case: 19-30088   Doc# 1974   Filed: 05/10/19   Entered: 05/10/19 12:37:14   Page 178
of 179

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(22) unliquidated - written

153:14,17
**wrong (4)**
15:3;36:9;73:14;
132:25
**wrongdoing (1)**
145:6
**wrongful (1)**
81:10
**wrote (6)**
44:14;52:12;82:5,6;
83:12,12

**Y**

**year (7)**
55:5;78:24;80:21;
90:5;92:12;98:17,17
**years (4)**
72:9,25;80:1;133:14
**Yep (1)**
15:5
**yesterday (3)**
11:2;48:7;86:1

**Z**

**zero (1)**
152:19

**1**

**1 (3)**
50:3;64:22;82:23
**10 (1)**
132:18
**10:53 (1)**
70:19
**105 (1)**
124:22
**11 (8)**
20:15,17;129:4,6;
135:20;143:16;149:6;
151:9
**11:06 (1)**
70:19
**1129 (2)**
151:6,7
**1129a6 (4)**
139:16,19;150:2,24
**12 (2)**
20:16,17
**12:41 (1)**
154:4
**13 (1)**
128:2
**150 (3)**
88:17;89:4,5
**15-08-019 (1)**
123:2
**16th (5)**
78:25;85:15;90:1,2,4
**17th (1)**
90:8

**1901-006 (1)**
123:1

**2**

**2.3 (1)**
128:2
**2001 (5)**
124:25;125:1,19;
138:6;139:6
**2014 (2)**
66:24;68:6
**2017 (1)**
147:2
**2018 (2)**
139:8;147:2
**2019 (13)**
6:1;26:13,15;28:19;
32:17,18;36:3;37:16,
20,23;54:15;57:3;
65:20
**2020 (1)**
54:23
**205 (1)**
39:2
**206 (2)**
37:14;39:18
**22nd (2)**
54:23;154:2
**29th (1)**
148:16

**3**

**3 (2)**
20:9;68:5
**362b4 (11)**
29:7;31:22;33:9,18;
34:8;36:19;51:2;58:20;
59:2;64:20;69:16
**365 (1)**
150:12

**4**

**400 (2)**
115:11,15

**5**

**5 (2)**
120:7;145:8
**505 (1)**
122:5
**552 (1)**
133:19

**6**

**6 (1)**
145:9
**6.1 (1)**
120:20

**6.15 (1)**
110:6

**7**

**7 (2)**
74:16;151:11

**9**

**9 (1)**
6:1
**9:31 (1)**
6:1

Case: 19-30088    Doc# 1974    Filed: 05/10/19    Entered: 05/10/19 12:37:14    Page 179
of 179