

KELLER    BENVENUTTI

Keller & Benvenutti LLP
650 California Street, Suite 1900
San Francisco, CA 94108

May 10, 2019

<u>Via Electronic Mail</u>

Hon. Dennis Montali
United States Bankruptcy Judge
450 Golden Gate Avenue, 16th Floor
San Francisco CA 94102

      Re:    In re PG&E Corporation, Case No. 19-30088; Motion for Relief from Stay by Valero Refining Company-California ("Valero") [Docket No. 315]

Dear Judge Montali:

      I write on behalf of PG&E Corporation and Pacific Gas and Electric Company ("Utility," collectively "PG&E" or the "Debtors"), to bring to the Court's attention the Debtors' desire to place before the Court material information that the Debtors believe is highly relevant to Valero's motion for relief from stay and that Debtors would have submitted if, as the Debtors had anticipated, there had been a separate final hearing on this matter. The Debtors request the opportunity to supplement the record with material information, briefly summarized below, for the Court to consider before deciding to grant Valero's motion:

1. The trial of the Valero case, if it proceeds because the automatic stay is lifted, is estimated to last approximately three weeks.

2. Mark Quinlan is Utility's Director, Wildfire Operations. Mr. Quinlan is Utility's intended client representative for the trial, which would require his presence at the trial in Sacramento on a daily basis for the trial's duration. Mr. Quinlan is uniquely qualified to serve in this role due to his first-hand personal knowledge of the facts underlying the Valero litigation and his position as a senior manager of Utility.

3. Utility's highest operational priority is public safety, including wildfire safety. Wildfire safety is key to Debtors' ability to reorganize successfully. Accordingly, since before the chapter 11 filings, both Debtors – but especially Utility – have reallocated their personnel resources (including in Debtors' legal department) to focus on wildfire safety to the extend it would not compromise other safety and reliability imperatives.

Peter J. Benvenutti
Direct: 415.364.6798 | Cell: 415.722.4299
Fax: 650.636.9251
Email: pbenvenutti@kellerbenvenutti.com

kellerbenvenutti.com

4. Mr. Quinlan plays a central and critical role in Utility's wildfire safety efforts. Mr. Quinlan is responsible for ensuring that Utility executes wildfire season Public Safety Power Shutoff ("PSPS") events effectively, safely, and efficiently. These responsibilities include operational planning for PSPS events, execution of a PSPS (determining where to shut off the power and how), and then restoring service to affected customers as quickly as safety allows. His importance cannot be over-emphasized and his focus should remain singularly on ongoing wildfire safety issues, not in addressing prepetition claims.

5. The wildfire season runs through the summer and fall. It would be materially detrimental to Utility's wildfire safety efforts to divert Mr. Quinlan's attention from those efforts to the preparation for and attendance at a three-week trial during the wildfire season as well as any attendant remaining discovery and trial preparation. If a potential PSPS event were to occur prior to or during a trial, Utility would need to pull Mr. Quinlan from the trial preparations (and trial) to respond.

6. Alternatively, Utility's ability to defend Valero's claims at trial would be materially and adversely affected by Mr. Quinlan's absence.

7. Other senior operational personnel involved in wildfire safety would also be witnesses at a Valero trial. Requiring them to participate in preparation for and attendance at a trial as witnesses during the 2019 wildfire season would also be disruptive to Utility's fire safety efforts.

Because the hearing on May 9 was a continued *preliminary* hearing, the Debtors had understood that under BLR 4001-1(f) they were not required to provide full briefing or to submit evidence in advance of that hearing. The Debtors expected instead that, if the Court concluded there was likely merit to Valero's motion, the Court would set a final hearing, establish a briefing schedule, and afford the Debtors an opportunity to provide full briefing and evidence. The Debtors wish to ensure that, given that the Court treated the May 9 hearing as the equivalent of a final hearing, the Court has the benefit of the relevant facts that the Debtors submit establish cause to deny Valero's motion.

Accordingly, in the event the Court is inclined to grant Valero's motion, the Debtors request an opportunity to augment the factual record before the Court rules. Debtors are working diligently to prepare one or more declarations to establish in more detail and in evidentiary form the facts summarized above, so that the Court can be more fully informed of the impact on the Debtors' estates before it rules.

Debtors recognize that the Court has taken the Valero motion under submission. The Debtors propose to file a motion to reopen and augment the record to include this additional evidence, and expect to be able to do so not later than one week from today. The Debtors request that the Court defer a ruling on the Valero stay relief motion pending receipt of that motion and evidence, and, unless the Court directs otherwise, the resolution of any proceedings on that motion. If the Court would prefer that the Debtors follow some other procedure for addressing this issue, the Debtors will of course follow the Court's direction. Of course, if the Court denies the motion to lift stay based on the current record, no further submissions would be necessary.

Respectfully,

Peter J. Benvenutti

Copy via email:
    Richard A Lapping, Esq.
    Theodore E. Tsekerides, Esq,
    Hong-An Tran, Esq.