| | |
|---|---|
| JACOB T. BEISWENGER (S.B. #321012)<br>jbeiswenger@omm.com<br>O'MELVENY & MYERS LLP<br>400 South Hope Street<br>Los Angeles, California 90071-2899<br>Telephone: (213) 430-6000<br>Facsimile: (213) 430-6407<br><br>PETER FRIEDMAN (*pro hac vice* forthcoming)<br>pfriedman@omm.com<br>O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC 20006<br>Telephone: (202) 383-5300<br>Facsimile: (202) 383-5414 | JOHN J. RAPISARDI (*pro hac vice* forthcoming)<br>jrapisardi@omm.com<br>NANCY A. MITCHELL (*pro hac vice* forthcoming)<br>nmitchell@omm.com<br>MATTHEW L. HINKER (*pro hac vice* forthcoming)<br>mhinker@omm.com<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>Facsimile: (213) 326-2061 |

*Attorneys for Governor Gavin Newsom*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br>    -and-<br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas & Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**LIMITED OBJECTION OF GOVERNOR GAVIN NEWSOM TO CORRECTED MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 1121(d) TO EXTEND EXCLUSIVE PERIODS**<br><br>**[Dockets 1795 and 1797]**<br><br>Date: May 22, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

Governor Gavin Newsom, by and through his counsel O'Melveny & Myers LLP, respectfully submits this limited objection (the "**Objection**") in response to the *Corrected Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) to Extend Exclusive Periods* [Docket No. 1797] (the "**Exclusivity Motion**").[1] Governor Newsom files this Objection in his official capacity as Governor of the State of California, but not on behalf of any agency, department, unit or entity of the State of California.[2] In support of the Objection, Governor Newsom respectfully states as follows:

**PRELIMINARY STATEMENT**

1. A debtor's exclusive right to file a plan of reorganization is not unfettered; instead, it is a privilege and an extension is warranted only when the delay, after taking into account all of the divergent interests involved, facilitates timely progress towards a fair and equitable resolution of the chapter 11 case. PG&E Corporation ("**Corp**") and Pacific Gas and Electric Company (the "**Utility**" and, together with Corp, "**PG&E**") have not earned the privilege of the six-month extension requested in the Exclusivity Motion. Nor is such a lengthy extension fair or equitable to the many California stakeholders negatively impacted by PG&E's decision to file the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). Governor Newsom respectfully requests that the Court grant only a limited extension of the Exclusive Periods (not exceeding seventy-five days), so that the Court and PG&E's stakeholders have the opportunity to continually evaluate PG&E's progress in the Chapter 11 Cases, to ensure an expeditious resolution of these cases and to consider the appropriateness of further extensions of the Exclusive Periods if any are warranted.

2. PG&E's decision to commence chapter 11 placed issues related to catastrophic wildfire risk, fair compensation of fire victims, and the reliability of California's electric grid squarely in front of this Court for ultimate resolution. Not only have PG&E and its financial stakeholders acknowledged the State of California's (the "**State**") important and unique role in the resolution of these Chapter 11 Cases, PG&E argues that the requested extension of the Exclusive

---

[1] Capitalized terms used but not defined herein have the meaning given to such terms in the Exclusivity Motion.
[2] The Attorney General has appeared in these proceedings on behalf of certain agencies and departments of the State of California.

Periods is necessary due to the ongoing analysis of various legislative alternatives by the Governor and the Strike Team (defined below). *See e.g.,* Exclusivity Motion at 7. Further, PG&E has recognized the crucial importance of working with the Governor, legislators and regulatory agencies to address safety and structural reforms, to provide safe and reliable service to PG&E's customers, and to achieve a comprehensive solution that treats all parties fairly and equitably. *See e.g.,* Wells Declaration ¶¶ 22-26; Transcript of Hearing at 23:2-9, 23:10-20, *In re PG&E Corp. et al.*, Case No. 19-3088-DM (Jan. 31, 2019) [Dkt. No. 326]; Transcript of Hearing at 64:19-25; 65:1, *In re PG&E Corp. et al.*, Case No. 19-3088-DM (Feb. 27, 2019).

3. The State is working expeditiously to fulfill its role by working to enact revisions to the legal and regulatory framework applicable to electric utilities dealing with catastrophic wildfires by this summer. As detailed below, Governor Newsom and the California State Legislature are working urgently to address the continued availability of safe, reliable and affordable energy to the citizens of California. Additionally, the California Public Utilities Commission (the "**CPUC**") continues to address the numerous important issues related to PG&E that are pending before it.

4. While the State is working diligently to put a new framework in place, PG&E should expect that its participation in any such framework will be subject to significant conditions. Notwithstanding the protections afforded by its chapter 11 filing, and the cooperation of the State in expediting PG&E's emergence from chapter 11, the burden is on PG&E to lead the effort to solve its problems. This solution must be predicated upon a demonstrable change in PG&E's safety culture and tangible and substantial contributions from PG&E's investors and a recognition by PG&E that time is of the essence. PG&E must also promptly comply with any directives from the CPUC as required under applicable law and the Bankruptcy Code.

5. PG&E's six-month request for extension of the Exclusive Periods reflects no sense of urgency in addressing the serious problems and issues confronting it. The requested six-month extension is of particular concern because it encompasses the entirety of the 2019 wildfire season, thereby exposing PG&E to the risk of unquantifiable post-petition claims arising from 2019 wildfires. Such a prolonged extension of exclusivity to file a plan of reorganization would send PG&E and all of its stakeholders the wrong message. Allowing PG&E to continue a business-as-

usual approach without any accountability would only encourage PG&E's distressed-investors to leverage the Chapter 11 Cases to their benefit and to the detriment of existing and future wildfire victims.

6. All should be mindful of PG&E's history of over two decades of mismanagement, misconduct and failed efforts to improve a woeful safety culture. We should not forget that PG&E entered these Chapter 11 Cases as a convicted felon, with five different felony convictions for safety violations and one conviction for obstruction of justice in connection with the 2010 San Bruno explosion.

7. Nor should we ignore the reality that victims of the catastrophic fires in 2015, 2017 and 2018 suffered unimaginable losses and are still struggling to rebuild their lives. Allowing PG&E to remain in chapter 11 without accountability will only unfairly cast doubt and uncertainty over the recovery on victims' claims and prepetition settlement obligations.[3]

8. PG&E's governance actions following the commencement of the Chapter 11 Cases also raise concern. PG&E's newly appointed board of directors is populated by hedge fund financiers, out-of-state executives and other individuals with little or no experience in utility operations, regulation and safety. PG&E has done little to instill confidence that it appreciates the urgency of resolving wildfire claims or that it is developing with due dispatch a viable business plan that will allow PG&E to provide safe, reliable, and affordable power to the people of Northern California.[4] It is incredible that PG&E has still not demonstrated that it has its priorities in the proper order as evidenced by its petition to the CPUC for approval of increased customer rates. Such an increase would translate into a massive windfall to PG&E's investors.

---

[3] To date, the Debtors have also used the Chapter 11 Cases to evade pre-petition settlements PG&E entered into with victims of the 2015 Butte Fire. Victims of the Butte Fire went through litigation and private mediation and negotiated settlements with PG&E, but immediately prior to filing for chapter 11, PG&E stated it could not commit that its outstanding obligations would be paid. See Order re Letter from Plaintiffs, *Butte Fire Cases*, JCCP 4853, Docket No. 9827 (Sacramento Superior Court).

[4] In fact, at a hearing on May 7, 2019, Judge Alsup of the United States District Court for the Northern District of California sentenced PG&E's board of directors to establish or maintain a committee dedicated to compliance with the wildfire mitigation plan and probation conditions, ordered PG&E's senior leadership and directors to meet with local officials, fire chiefs and victims in Paradise and San Bruno. In explaining that sentence, Judge Alsup stated that PG&E has not put safety first and has "allowed things to slide on the safety part, particularly on the fire front."

- 4 -

9. For all of the reasons set forth herein, the Governor urges the Court to grant only a limited extension of the Exclusive Filing Period through August 15, 2019 and an extension of the Exclusive Solicitation Period through October 15, 2019. Limited extensions will incentivize PG&E to expeditiously pursue a solution.

**BACKGROUND**

10. On January 29, 2019, PG&E filed petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

11. On February 12, 2019, the Governor delivered his State of the State address in which he announced that his administration would issue a "comprehensive strategy" to ensure continued access to safe, affordable power and to seek justice for fire victims, fairness for employees and protection for ratepayers. On that same day, Governor Newsom formed a strike team led by his Chief of Staff to evaluate the issues and provide recommendations (the "**Strike Team**").

12. On April 12, 2019, the Strike Team released a report entitled, *Wildfires and Climate Change: California's Energy Future* (the "**60-Day Report**"). The 60-Day Report recommends steps the State should take to reduce the incidence and severity of wildfires, including significant wildfire mitigation and resiliency efforts already proposed and initiated by the Governor. The 60-Day Report also concluded a new policy framework is necessary to address wildfire liabilities due to the increased risk and magnitude of wildfires, uncertainty as to the timing and effectiveness of mitigation efforts, applicable law and the financial stress on the utility sector. In addition, the 60-Day Report identified seven principles to guide any solution, carefully evaluated a number of alternatives for new policy frameworks, and ultimately identified three concepts for further consideration by the Commission on Catastrophic Wildfire Cost and Recovery (the "**901 Commission**") and the Legislature.

13. The 901 Commission has held a series of public meetings beginning in February of this year and has heard from numerous stakeholders. The 901 Commission is also evaluating the new policy concepts identified in the 60-Day Report and is expected to issue its recommendations by July 1, 2019. On April 25, 2019, the California Senate created a Senate Select Committee to assess the policy options outlined in the 60-Day Report. The Senate Select Committee held its first

hearing on the issues on May 8, 2019. The California Assembly is also scheduling hearings to address the policy issues.

14. All of this activity is driven towards the goal of enacting legislation this summer that will reshape the existing policy and regulatory frameworks and—together with decisions by the CPUC—will circumscribe the options for PG&E.

## LIMITED OBJECTION

**A.     Standard for Extending Exclusive Periods.**

15. Section 1121 of the Bankruptcy Code limits the period of time during which a debtor has the exclusive right to file a chapter 11 plan and solicit acceptances thereof to 120 and 180 days, respectively. *See* 11 U.S.C. §§ 1121(b),(c).

16. A debtor may only extend these exclusive periods "for cause" and the burden is on the debtor to demonstrate the existence of good cause. *See* 11 U.S.C. §1121(d)(1); *see also In re New Meatco Provisions, LLC*, No. 2:13-BK-22155-PC, 2014 WL 917335, at *2 (Bankr. C.D. Cal. Mar. 10, 2014). Extending a debtor's exclusive period is not a routine exercise but is within the discretion of the bankruptcy court and is fact specific. *See In re New Meatco Provisions, LLC*, 2014 WL 917335, at *3 (quoting *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006)); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("Extensions are not to be granted neither routinely nor cavalierly.").

17. The key question is whether the extension of exclusivity facilitates movement towards a fair and equitable resolution of the case, taking into account all of the divergent interests involved. *See In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. at 453.

18. Courts take into account a number of factors in evaluating whether cause exists to extend exclusivity.[5] However, even when many of those factors weigh in favor of granting an

---

[5] To determine whether cause exists to extend or reduce exclusivity, courts in this jurisdiction typically apply a number of non-exclusive factors, which include (a) the size and complexity of the case, (b) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information, (c) the existence of good faith progress towards reorganization, (d) the fact that the debtor is paying its bills as they come due, (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (f) whether the debtor has made progress in negotiating with its creditors, (g) the amount of time which has elapsed in the case, (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands, and (i) whether an unresolved contingency exists. *See In re New Meatco Provisions, LLC*, 2014 WL 917335 at *3 (citing *In re Dow*

extension, a bankruptcy court may nonetheless deny a motion to extend exclusivity, or grant a shorter extension than is sought by the debtor. *See In re Sharon Steel Corp.*, 78 B.R. 762, 763-765 (Bankr. W.D. Pa. 1987) (explaining that Congress's use of the permissive "may" permits a court to decline to extend exclusivity even upon a showing of "cause").

**B.     PG&E's Requested Extension of Exclusivity Should Be Limited.**

19.     The requested extension of the Exclusive Filing Period through November 29, 2019 and an extension of the Exclusive Solicitation Period through January 28, 2020 will not facilitate movement towards a fair and equitable resolution of the Chapter 11 Cases. Instead, a more limited extension will afford parties in interest and this Court the opportunity to evaluate PG&E's conduct and progress during these Chapter 11 Cases while allowing time for development of further clarity around a potential new legal and regulatory framework that will define at least some of the parameters of a plan of reorganization.

20.     Despite repeated assurances from PG&E's management, PG&E has not demonstrated that it understands the gravity and urgency of the situation. It has not undertaken fundamental management and cultural reforms to prioritize safety and reliable service. While PG&E reconstituted its boards of directors during these Chapter 11 Cases to include new board members who possess substantial restructuring and financial expertise, these board members lack experience related to safety and operational matters.

21.     As the risk of the 2019 wildfire season looms over the Chapter 11 Cases, PG&E should not be granted a six-month extension of the Exclusive Periods. The Exclusivity Motion fails to demonstrate the existence of good cause sufficient to warrant a six-month extension of the Exclusive Periods. In fact, as the United States Bankruptcy Appellate Panel for the Ninth Circuit recognized, affirmative answers to a number of the inquiries listed in *Dow Corning* does not necessarily favor extending exclusivity; instead, the extension of the Exclusive Periods is within the discretion of the Court to encourage a resolution to these Chapter 11 Cases. *See*, *In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. at 452 (noting that the propositions that complex cases

---

*Corning Corp.*, 208 B.R. 661, 663 (Bankr. E.D. Mich. 1997)); *see also In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002).

1 require extended exclusivity and that extended exclusivity facilitates negotiations have been
2 debunked); *see also In re Mirant Corp.*, Nos. 4-04-CV-476, 4-04-CV-530-A, 2004 WL 2250986,
3 at *3 (N.D. Tex. Sep. 30, 2004) (explaining that the "bankruptcy court did not grant the extension
4 sought by the debtors . . . . Instead, the bankruptcy court granted an extension that it concluded
5 would be meaningful in that debtors would be pressed, but not unduly so, to submit a proposed
6 plan").

7       22.    While PG&E may require additional time to (i) negotiate a plan of reorganization,
8 (ii) engage in good faith progress towards reorganization, (iii) demonstrate reasonable prospects
9 for filing a viable plan, and (iv) demonstrate progress in negotiating with its creditors, the "key
10 question . . . is whether the first extension of exclusivity function[s] to facilitate movements
11 towards a fair and equitable resolution of the case, taking into account all the divergent interests
12 involved." *Id*. at 453. To facilitate movement towards a fair and equitable resolution of the Chapter
13 11 Cases, PG&E should be given a shorter extension of the Exclusive Periods and should be
14 required to utilize the additional time to (1) demonstrate meaningful progress to settle wildfire
15 damage claims, (2) demonstrate actual and tangible actions to improve safety culture and improve
16 corporate governance and (3) develop and present a viable go-forward business plan that includes
17 substantial contributions from investors and does not require ratepayers to bear the full-impact of
18 the PG&E's challenges.

19       23.    Neither this Objection, nor any subsequent appearance, pleading, proof of claim,
20 claim or suit is intended or shall be deemed or construed as:

21       a.    consent by Governor Newsom or the State of California to the jurisdiction of this
22 Court or any other court with respect to proceedings, if any, commenced in any case against or
23 otherwise involving Governor Newsom or the Office of the Governor;

24       b.    waiver of any right by Governor Newsom or the State of California to (i) have an
25 Article III judge adjudicate in the first instance any case, proceeding, matter or controversy as to
26 which a Bankruptcy Judge may not enter a final order or judgment consistent with Article III of
27 the United States Constitution, (ii) have final orders in non-core matters entered only after *de novo*
28 review by a District Court Judge, (iii) trial by jury in any proceeding so triable in the Chapter 11

Cases or in any case, controversy, or proceeding related to the Chapter 11 Cases, (iv) have the United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, (v) any and all rights, claims, actions, defenses, setoffs, recoupments or remedies to which Governor Newsom or the State of California, are or may be entitled under agreements, in law or in equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved hereby, (vi) the requirements for service of process under Federal Rules of Bankruptcy Procedure 7004 and 9014, or (vii) the requirements for service of an objection to claim under Federal Rule of Bankruptcy Procedure 3007, all of which rights, claims, actions, defenses, setoffs, and recoupments Governor Newsom or the State of California expressly reserve; or

      c.    waiver of any objections or defenses that Governor Newsom or the State of California may have to this Court's jurisdiction over the State of California or any agency, unit or entity of the State of California based upon the Eleventh Amendment to the United States Constitution or related principles of sovereign immunity or otherwise, all of which objections and defenses are hereby reserved.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

# CONCLUSION

24. The extension of the Exclusive Periods should be carefully tailored to provide an appropriate incentive to PG&E, its creditors and other parties in interest to move with alacrity towards a resolution of these Chapter 11 Cases. The more limited extensions proposed in this Objection will require PG&E to act quickly to participate in a resolution of the problems confronting California while affording this Court and parties in interest an opportunity to more closely monitor PG&E's actions and progress.

Dated: May 15, 2019

**O'MELVENY & MYERS LLP**

By: /s/ Jacob T. Beiswenger

JOHN J. RAPISARDI
NANCY A. MITCHELL
PETER FRIEDMAN
MATTHEW HINKER
JACOB T. BEISWENGER

*Attorneys for Governor Gavin Newsom*