SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
  James P. Hill, SBN 90478
  Christopher V. Hawkins, SBN 222961
600 B Street, Suite 1700
San Diego, California 92101
Tel:     (619) 233-4100
Email: hill@sullivanhill.com
         hawkins@sullivanhill.com

Gerald Singleton, SBN 208783
John C. Lemon, SBN 175847
SINGLETON LAW FIRM, APC
450 A Street, 5th Floor
San Diego, CA 92101
Tel:     (619) 771-3473
Email: gerald@slffirm.com
         john@jcl-lawoffice.com

Attorneys for SLF Fire Victim Claimants

**Electronically Filed 05/15/2019**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY<br><br>                Debtors<br><br>Affects:<br>☐ PG&E Corporation<br>☐ Pacific Gas & Electric Company<br>☒ Both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case–Jointly Administered)<br><br>**OBJECTION BY THE SINGLETON LAW FIRM FIRE VICTIM CLAIMANTS TO PG&E'S EXCLUSIVITY MOTION (DOC. 1795)**<br><br>Date:  May 22, 2019<br>Time: 9:30 a.m. (Pacific)<br>Place: United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102<br>        Hon. Dennis Montali<br><br>Opposition Deadline: May 15, 2019, 4 p.m. (PDT) |

1

# I.

**The SLF Fire Victim Claimants object to PG&E's motion to extend the exclusive filing period because PG&E has not made good-faith efforts to resolve the victims' claims and the purpose of its motion is tactical delay.**

**A.     Introduction**

The Singleton Law Firm ("SLF"), together with several other firms[1], represents over 4,700 victims of the fires started by PG&E from 2015 through 2018, including victims from all three major fires at issue in this bankruptcy: (1) the 2015 Butte Fire; (2) each of the 18 major fires commonly referred to as the 2017 North Bay Fires; and (3) the 2018 Camp Fire. (Declaration of Gerald Singleton, "Singleton Dec.", ¶3.) The SLF Fire Victim Claimants are thus representative of every fire victim in this proceeding.

On May 1, 2019, PG&E filed a motion to extend the deadline to file its Chapter 11 plan from May 28, 2019, and the concomitant solicitation period from July 29, 2019, to January 28, 2020. (Electronic Case File Document Number, "Doc #", 1795.) Because PG&E has <u>not</u> made good-faith progress toward making these victims whole and because it has filed this motion for the purpose of tactical delay, the SLF Fire Victim Claimants object.

**B.     Because at least five of the nine factors cited by PG&E weigh heavily against granting the extension, PG&E cannot carry its burden and its motion should be denied.**

   **1.     PG&E must carry a heavy burden to demonstrate cause for the extension.**

PG&E bears the burden of establishing "cause" to extend the current deadlines. *See In re Dow Corning Corp.*, 208 B.R. 661, 663 (Bankr. E.D. Mich. 1997). The standard of proof "is a heavy one" and it "gets heavier with each extension [that the debtor] seeks as well as the longer the period of exclusivity lasts." *Id.* at 663, 664. "[A] request to extend . . . the period of exclusivity is a serious matter" and "such a motion should be granted neither routinely nor cavalierly." *In re All Seasons Indus., Inc.,* 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990) (quotation omitted). PG&E must carry its

//

---

[1]     Because SLF has different joint venture partners in each of the fire cases, the 4,700+ fire victims are referred to in this filing as the "SLF Fire Victim Claimants" for ease of reference.

2

burden based upon the facts and circumstances of this case. *See In re Dow Corning,* 208 B.R. 661 at 663.

### 2. The totality of the circumstances weighs heavily against PG&E's requested extension.

Courts typically look to nine factors to determine whether a movant has demonstrated cause to extend the period of exclusivity. *See In re Dow Corning,* 208 B.R. 661 at 663. Those factors are set out in PG&E's motion and will not be recounted here. At least five of them, however, militate against granting PG&E's extension.

Indeed, while this is obviously a big case (factors one and two), the next five factors counsel against an extension. The third factor – the existence of good faith progress toward reorganization – weighs heavily against PG&E because there has been none. In fact, although the Singleton Firm represents over 4,700 victims, the PG&E bankruptcy attorneys have stated that they will speak only to counsel for the Tort Claims Committee and there has been no substantive communications with counsel for the SLF Fire Victim Claimants. (Singleton Dec, ¶4.)

The next two factors – whether the debtor has demonstrated reasonable prospects for filing a viable plan and whether it has made progress in negotiations with its creditors – are similar in this context and both weigh against an extension. Again, since declaring insolvency, PG&E has refused to communicate substantively with counsel the SLF Fire Victim Claimants and therefore has made no progress in negotiations. But based on communications with other lawyers in this proceeding, it appears that PG&E is trying to negotiate a matrix to facilitate mass settlements (akin to a class action) rather than settling claims on an individual basis.

Simply put, mass settlement is not in the best interest of the fire victims. The Singleton Firm has settled well over one thousand fire cases – including over 700 from the Butte Fire with PG&E – and is uniquely credentialed to appreciate that the fire victims must maintain the right to have their cases handled individually. Taking a one-size-fits-all approach and resolving these claims *en masse* would be a windfall to PG&E at the expensive of these victims, who still deserve to be made whole – PG&E's *elective* bankruptcy notwithstanding. (Singleton Dec, ¶5.)

/ / /

3

The seventh factor – the amount of time that has elapsed – might ordinarily favor the debtor because this is the first request for an extension. But the fire cases have been pending for years and the victims, many of whom are either homeless or in temporary housing, are suffering. For example, the Butte Fire occurred in 2015. The Singleton Firm still represents over 700 individual victims (in more than 300 cases) who have been waiting since 2015 and who were on the cusp of being compensated for their losses when PG&E elected to declare bankruptcy. (Singleton Dec, ¶6.)

As PG&E's Chief Financial Officer admitted in his sworn testimony at the Creditor's Hearing on April 29, even taking the worst current projections for its fire losses into account ($30 billion in overall damages from the three fire complexes) PG&E will still have over *$6 billion more in assets than in liabilities*.[2] (Singleton Dec, ¶7.) Thus, while PG&E may be legally able to declare bankruptcy, it certainly was *not* forced to do so. This was a tactical move designed to try and get a better deal for PG&E, and a worse deal for the fire victims, the ratepayers, and the public. *Id.*

PG&E's decision to run for the cover of Chapter 11 means that those victims will likely have to wait months – or even years – longer. This process should not be drawn out even further by extending the exclusivity periods until November and next January.

The eighth and last relevant factor[3] – whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's demands – is uniquely probative here. This – again – is an optional bankruptcy. And PG&E is leveraging its position as a massive debtor to influence the state government to enact legislation: (1) imposing limitations on fire liability for utilities; and (2) to create a bail-out fund. (Singleton Dec, ¶9.) This is both unfair to the victims (who must now languish while their claims are in bankruptcy court), the taxpayers (who are being asked to pay billions of dollars for PG&E's malfeasance so that PG&E shareholders can continue to reap billions of dollars in profits and dividends) and an abuse of process. *Id.*

---

[2] *See* Doc # 903 and Doc # 903-1, p. 11, lines 16-22.

[3] The ninth factor, "whether an unresolved contingency exists," is vague and seems to have little application here. This is, admittedly, a big bankruptcy. There are accordingly any number of unresolved contingencies. This does not inform the analysis, however.

4

## III.

**The Court should order PG&E to resume its mediation system already in place for the Butte Fire and implement a plan to resolve the remaining fire cases before granting any extensions of time.**

As noted above, with respect to the Butte Fire, the parties had worked out a mediation system that allowed them to efficiently and fairly resolve their claims.

While the precise amount of the remaining damages for the Butte Fire are unknown, the remaining damages likely will be between $100 and $150 million.

PG&E has over $5 billion in DIP financing, with the ability to borrow at least an additional $2 billion. On March 14, PG&E filed a Summary of Assets and Liabilities listing assets of $61,001,948,725 and liabilities of $24,702,425,886. (Doc # 903.) In PG&E's commentary on the Summary of Assets and Liabilities, it estimated that the total damages for the 2015 Butte, 2017 North Bay and 2018 Camp Fire likely would be in the range of $13.4 to $30 billion. (Doc # 903-1, p. 11, lines 16-22.) At the Creditor's Meeting on April 29, 2019, PG&E's CFO testified that he believed the lowest range of PG&E's liability would be $14 billion, not $13.4 billion. (Singleton Dec, ¶8.) However, he acknowledged that, based on the information known to PG&E to date, $30 billion was the high-end of the PG&E's estimates for the potential damages from these fires.

/ / /
/ / /
/ / /
/ /
/ / /
/ /
/ / /
/ /
/ / /
/ / /
/ / /
/ / /

5

Based on the most recent Summary of Assets and Liabilities and the recent testimony of PG&E's CFO, PG&E's internal estimates are that it has $61 billion in assets and $38.7 to $54.7 billion in liabilities. Thus, PG&E's assets exceed its liabilities by somewhere between $6 and $22 billion.

Accordingly, under the worst case scenario for PG&E, *it has at least $6 billion in net assets*. There is therefore no excuse for PG&E not settling these cases immediately.

This Court should accordingly direct PG&E to resume the resolution of Butte Fire claims under the existing mediation program.

With respect to the remaining fire cases, the SLF Fire Victims Claimants respectfully request that this Court order PG&E to do the following as a condition precedent to any extensions of time:

(1) propose a mediation system for resolving fire cases on an individual basis;

(2) identify the fires for which it will concede liability and begin resolving those claims (on an individual basis, according to the mediation program) immediately; and

(3) begin discovery on fires for which it will contest liability.

Respectfully submitted,

Dated: May 15, 2019     SINGLETON LAW FIRM, APC

By: *see attached signature page*
Gerald Singleton
John C. Lemon

Dated: May 15, 2019     SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

By: */s/ Christopher V. Hawkins*
James P. Hill
Christopher V. Hawkins

Attorneys for the Singleton Law Firm
Fire Victim Claimants

6

Based on the most recent Summary of Assets and Liabilities and the recent testimony of PG&E's CFO, PG&E's internal estimates are that it has $61 billion in assets and $38.7 to $54.7 billion in liabilities. Thus, PG&E's assets exceed its liabilities by somewhere between $6 and $22 billion.

Accordingly, under the worst case scenario for PG&E, *it has at least $6 billion in net assets.* There is therefore no excuse for PG&E not settling these cases immediately.

This Court should accordingly direct PG&E to resume the resolution of Butte Fire claims under the existing mediation program.

With respect to the remaining fire cases, the SLF Fire Victims Claimants respectfully request that this Court order PG&E to do the following as a condition precedent to any extensions of time:

(1) propose a mediation system for resolving fire cases on an individual basis;

(2) identify the fires for which it will concede liability and begin resolving those claims (on an individual basis, according to the mediation program) immediately; and

(3) begin discovery on fires for which it will contest liability.

Respectfully submitted,

Dated: May 15, 2019  SINGLETON LAW FIRM, APC

By: _____
Gerald Singleton
John C. Lemon

Dated: May 15, 2019  SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

By: _____
James P. Hill
Christopher V. Hawkins

Attorneys for the Singleton Law Firm
Fire Victim Claimants

6

Case: 19-30088    Doc# 2019    Filed: 05/15/19    Entered: 05/15/19 15:56:36    Page 7 of 7