1
2
3
4
5
6
7
8
9
10                          **EXHIBIT G**
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CR 14-0175 TEH |
| | ) | |
| PACIFIC GAS & ELECTRIC COMPANY, | ) | |
| | ) | San Francisco, California |
| Defendant. | ) | Tuesday |
| | ) | May 7, 2019 |
| | ) | 9:00 a.m. |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:           DAVID ANDERSON
                         United States Attorney
                         450 Golden Gate Avenue
                         San Francisco, California  94102
                  BY:    **HALLIE HOFFMAN**
                         **JEFF SCHENK**
                         **ASSISTANT UNITED STATES ATTORNEYS**


For Defendant:           JENNER & BLOCK
                         353 North Clark Street
                         Chicago, Illinois 60654
                  BY:    **REID JOSHUA SCHAR, ESQ.**


                         CLARENCE DYER & COHEN, LLP
                         899 Ellis Street
                         San Francisco, California 94109
                  BY:    **KATE DYER, ESQ.**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


*Reported By:*    *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
          *Official Reporter - US District Court*
          *Computerized Transcription By Eclipse*

```
 1   APPEARANCES (Continued):

 2

     For Defendant:          CRAVATH, SWAINE AND MOORE LLP
 3                           825 Eighth Avenue
                             New York, New York 10019
 4                      BY:  KEVIN ORSINI, ESQ.

 5

 6   Also Present:           Jennifer Hutchings - USPO

 7                           Mark Filip.
                             - Federal Monitor
 8
                             Bill Johnson
 9                           - Chief Executive Officer of PG&E

10                           Mark Zafferano
                             - San Bruno City Attorney
11
                             Connie Jackson.
12                           - Former San Bruno City Manager

13                                  _   _   _

14

15

16

17

18

19

20

21

22

23

24

25
```

Case: 19-30088   Doc# 2021-10   Filed: 05/15/19   Entered: 05/15/19 15:59:18   Page 3 of 17

## P R O C E E D I N G S

**May 7, 2019**                                              **9:02 a.m.**

---oOo---

**THE CLERK:**  Calling Criminal Action 14-174, United States versus Pacific Gas and Electric Company.

Counsel, please step forward and state your appearances for the record.

**MS. HOFFMAN:**  Good morning.

**MR. SCHENK:**  Hallie Hoffman and Jeff Schenk for the United States.  Good morning.

**THE COURT:**  Welcome.

**MR. BAUER:**  Good morning, your Honor.  Jennifer Hutchings on behalf of Probation.

**THE COURT:**  Welcome to you.

**MR. SCHAR:**  Good morning, Your Honor.  Reid Schar on behalf of PG&E.

I will note that we're joined today by Bill Johnson, who is the Chief Executive Officer --

**THE COURT:**  I'm sorry.  I couldn't hear.  Somebody was coughing.

**MR. SCHAR:**  Joined by Bill Johnson, who is in the front row seat, Chief Executive Officer of PG&E.

**THE COURT:**  Welcome to the problem.

**MR. JOHNSON:**  Thank you, Your Honor.

Case: 19-30088   Doc# 2021-10   Filed: 05/15/19   Entered: 05/15/19 15:59:18   Page 4 of 17

```
 1          MS. DYER:  Good morning, Your Honor.  Kate Dyer for
 2   PG&E.
 3          MR. ORSINI:  Good morning, Your Honor.  Kevin Orsini
 4   for PG&E.
 5          THE COURT:  Any Board members here?  Anybody here who
 6   is a Board member?
 7      (No response.)
 8          THE COURT:  I guess not.  All right.
 9          MR. JOHNSON:  I'm a putative Board member.  Not quite
10   yet, but no other ones are here, Your Honor.
11          THE COURT:  All right.
12      So we're here for sentencing on the Form 12.  I didn't get
13   any sentencing memos.  I assume that -- but let me know, did
14   anyone submit one?
15          MR. SCHAR:  No, Your Honor.
16          MS. HOFFMAN:  No.
17          THE COURT:  You were entitled to, but you didn't have
18   to.  So, all right.
19      So I have some thoughts about what should be done, but I
20   want to hear from you, give everyone your say.
21      Let's start with PG&E first.
22          MR. SCHAR:  Sure.  Thank you, Your Honor.  And I'll
23   be brief.
24      PG&E fully accepts responsibility for the reporting
25   violation at issue at this sentencing.  We appreciate we did
```

1    not meet Your Honor's expectation.  We did not meet the

2    Probation Officer's expectation.

3         What I would like to very briefly do though is explain

4    what we have done to reset that in the wake of the January 30th

5    violation.

6         On February 8th, basically the week after that finding,

7    PG&E met with the Probation Officer in person to make sure

8    everyone was aligned in terms of what the Probation Officer's

9    expectations were, what she expected from us and how we could

10   communicate with her in a more robust way.

11        Since that time the Probation Officer has now been invited

12   into weekly phone calls that occur with the Monitor team.

13   Every single week those calls occur in which new

14   investigations, to the extent any exist, are discussed.

15   Updates on ongoing investigations are discussed and, frankly,

16   just general issues of relevancy to PG&E and the Monitorship

17   are discussed.

18        In addition, we have increased the amount of email

19   communication.  When anything in our view that meets the

20   requirements and, frankly, beyond the requirements of the terms

21   of probation were to occur, we're trying to make sure we very

22   timely email and report that, if not in a phone call in an

23   email at least with the attachment that would be particularly

24   relevant to the issue that's in play.  So we have increased, in

25   our view, significantly and invited the Probation Officer into

1  these weekly calls.

2      We believe these efforts, hopefully, have addressed the

3  concerns that were raised here.  We, of course, are willing to

4  work further with Your Honor and the Probation Officer in any

5  additional ways in which you would like to see increased

6  reporting.

7      It's our view that other than the Form 12 that's at issue

8  here, we have met the terms of probation.  And because we

9  believe we've addressed the issue, it's our position we don't

10  think new terms are needed.

11      However, to the extent Your Honor disagrees, what we would

12  ask is those terms be specific to the issue that's a violation

13  here, and that is the reporting issue and scoping terms around

14  the robust reporting.

15          **THE COURT:**  I'm going to come to the Government, but

16  I forgot to ask, is anyone here from San Bruno?

17          **MR. ZAFFERANO:**  Yes, Your Honor.  Mark Zafferano.

18  I'm the City Attorney.

19          **MS. JACKSON:**  Connie Jackson, former City Manager.

20          **THE COURT:**  Thank you very much.  Welcome.

21      And, also, I'd like to recognize our Monitor, let him make

22  his appearance, please.

23          **MR. FILIP:**  Good morning, your Honor.  Mark Filip

24  Monitor.

25          **THE COURT:**  Ms. Hoffman.

Case: 19-30088   Doc# 2021-10   Filed: 05/15/19   Entered: 05/15/19 15:59:18   Page 7 of 17

**MS. HOFFMAN:** Mr. Schenk is going to handle this.

**MR. SCHENK:** Your Honor, the Court found at our last hearing that PG&E violated Special Condition No. 8. That was the condition that directed PG&E to have communication with its Probation Officer when certain conditions are met.

PG&E failed to meet that requirement and after taking testimony from the Probation Officer, this Court found a violation.

So when the Government was thinking about what an appropriate sentence would be for that conduct, we focused on the conduct at issue; that is, communication between PG&E and the Probation Officer.

While the Government doesn't have a lot of insight, we don't participate in those dialogues, meetings, events, we understand, at least, from the Probation Officer that she is happy with the level of communication.

As a result, the Government doesn't have a significant level of insight into what other remedies would be necessary to prevent that type of violation from occurring in the future, but we think that a sentence that is focused on that type of conduct, on that type of violation is the appropriate sentence in this case and we would support a request from Probation or the Court that is tailored to remedy that particular violation.

We understand the Court received briefing from the parties. We submitted some on the extension question, whether

Case: 19-30088   Doc# 2021-10   Filed: 05/15/19   Entered: 05/15/19 15:59:18   Page 8 of 17

1  the Court can extend probation beyond five years, on the issue

2  of public disclosure of the Monitor reports.  We're happy to

3  address issues, but it doesn't seem like there is a lot of

4  disagreement among the parties on those two topics.

5      So we understand the Court's focus now to be on the

6  question of the sentence for the Form 12 violation.

7          THE COURT:  So how long has Mr. Johnson been on

8  Board?

9          MR. JOHNSON:  This is the beginning of my fourth day,

10  Your Honor.

11          THE COURT:  Okay.  Why don't you come up here for a

12  second?

13      (Mr. Johnson approaches the podium.)

14          THE COURT:  You were with TVA before.  What was your

15  role before this?  I read some things in the paper, but it

16  might have been wrong.

17          MR. JOHNSON:  That happens occasionally.

18      Yes, sir.  I was the CEO of TVA starting in January of

19  2013 until last Wednesday.

20          THE COURT:  Are you from California?

21          MR. JOHNSON:  No, sir.  I grew up in northwestern

22  Pennsylvania, but I've lived in North Carolina and Tennessee

23  for the last 45 or 50 years.  So I believe I have picked up

24  some of the inflection and the idiom.

25          THE COURT:  That's a big operation, TVA.  And you

Case: 19-30088   Doc# 2021-10   Filed: 05/15/19   Entered: 05/15/19 15:59:18   Page 9
of 17

1   were in charge of that for a long time?  How long were you in

2   charge of the TVA?

3          **MR. JOHNSON:**  Almost six and a half years.

4          **THE COURT:**  Well, you have your hands full here.

5          **MR. JOHNSON:**  Yes, sir.

6          **THE COURT:**  You do.

7     Okay.  Well, do you have anything you want to say?  You

8   don't -- you don't have to, but if you would like to say

9   something, I would be happy to hear it.

10          **MR. JOHNSON:**  Your Honor, I thought I might tell you

11   why I came to California.

12          **THE COURT:**  Let's hear that.

13          **MR. JOHNSON:**  I have been in the industry a long

14   time.  It's treated me well and I think it's an important

15   industry for the country and I really feel like the outcomes

16   here have to be better; the outcomes by PG&E, the outcomes for

17   customers, for fire victims, for everybody.  And so at an

18   advanced stage, and really post career, I have come here to

19   just see if I could help make outcomes better.  That's why I'm

20   here.

21          **THE COURT:**  Where are you going to live?

22          **MR. JOHNSON:**  Somewhere in the city.  It's not quite

23   been determined yet, but pretty close to the office because I

24   intend to be there quite frequently.

25          **THE COURT:**  Okay.  Are you up to speed on what's

 1  happened in this Court the last -- since the San Bruno case and

 2  the trial and the verdict and all of that?

 3      **MR. JOHNSON:**  Yes, Your Honor.  I have read the

 4  sentences.  I've kept up and fully briefed.  I've read a lot of

 5  material about what is happening in this courtroom.

 6      **THE COURT:**  Well, we have a common problem and I

 7  think sometimes the lawyers think I'm their enemy, but the

 8  truth is I'm trying to -- we're all trying to get to the common

 9  goal.

10      I don't care really how much money PG&E makes, but I do

11  care about the safety of the people who live in California.

12  And one of the biggest problems we've had is that PG&E has been

13  starting a lot of fires, and they had that horrible explosion

14  in San Bruno, and I just don't think PG&E has put safety first.

15  The ads all say it does, but I think if you look at the record,

16  PG&E has allowed things to slide on the safety front,

17  particularly on the fire part, cutting those trees or trimming

18  those trees that could fall onto the lines, all the

19  uninsulated.  There is nothing wrong with that as long as the

20  trees can't reach them, but then they spark.

21      One thing you're going to see out here that's vastly

22  different than Tennessee and North Carolina is the long

23  summers.  We have six to seven months of no rain.  And you

24  can't blame it on global warming because I have been here a

25  long time and it's been that way every summer.

1    So one little spark from a power line in the month of

2    August, say, will fall down 40 feet and hit the grass, all dry

3    as can be.  That starts a fire.  No one is around, can't be

4    around.  It's out in the middle of nowhere.  Within two minutes

5    it's up to the brush.  That brush has got a resin in it that is

6    highly flammable.  You don't -- I don't think you have this

7    kind of brush in Tennessee.  And that brush catches on fire

8    like gasoline and then that catches the trees on fire and

9    within 30 minutes there is a forest fire going, a wildfire.

10   It's impossible sometimes to stop.

11   So your company admitted that it started 17 of those fires

12   in 2017 just in the Wine Country.  This wildfire season, they

13   get hotter and hotter, but we have always had hot summers that,

14   in my view, starts about June 21 and runs through the first big

15   rain in the November or December.

16   After the rains, it's okay if there is a spark because it

17   won't go anywhere, but in the middle of the wildfire season it

18   can burn hundreds of thousands of acres and kill lots of

19   people.

20   So as much as we need the electricity, it has got to come

21   to us safely and we need an infrastructure where PG&E is on top

22   of this and is providing it to us safely.  Anyway, that's my

23   little welcome speech to you.

24   But here is what I think we should do for the remedy on

25   the Form 12.  I'm going to change subjects now a little bit.

Case: 19-30088   Doc# 2021-10   Filed: 05/15/19   Entered: 05/15/19 15:59:18   Page
12 of 17

1      I have two ideas and they are tied to Butte County.  I'm

2 going to direct the Federal Monitor and Probation to facilitate

3 meetings between the PG&E -- I'm going to come back to what I

4 mean by that -- PG&E directors and PG&E senior executive

5 leadership and local officials in Paradise, California and San

6 Bruno, including tours of those communities, so that the

7 leadership can see the gravity of what happened up there.  And

8 I want -- we can get a bus.  I think I'm going to go on this

9 tour, too.  All lawyers can go, but the Board of Directors

10 ought to see firsthand the devastation.

11      The second is to direct that the Board of Directors have a

12 committee -- it could be an existing committee, like the

13 Compliance Committee -- who will track the progress or lack of

14 progress by the utility in meeting its own wildfire mitigation

15 plan and the conditions of probation and to report in writing

16 to the Board for each meeting and verbally present at each

17 meeting what the progress and shortfalls have been and how to

18 come into compliance.

19      So those are the two ideas, the two sentences.

20      Now, what I want to do is give you the flexibility to

21 work -- to fix up my language.  So I don't want to impose an

22 untoward burden.  I would like the tour to be done by the

23 middle of July.  So I know these are important people on your

24 Board, so it may take a while to find a date that will work.

25 The Monitor is going to go as well.

So if you don't like the language that I have just given you, you all can tinker with it and work out the kinks. But if you don't come to an agreement that I'm good with, then we'll just go with what I've -- something very close to what I just said.

So in summary, the first one is communications with those two affected communities, Paradise and San Bruno, with an on-scene in-person conversation with victims, with fire chiefs and looking at it firsthand. Not on TV. Not on a video. But being up there in person.

And the second is having a committee of the Board that is dedicated to compliance with the wildfire mitigation plan and the conditions of probation.

Okay. Anyone want to argue with me about that?

**MR. SCHAR:** No, Your Honor.

**THE COURT:** Okay.

**MS. HOFFMAN:** No, Your Honor.

**PROBATION OFFICER:** No, Your Honor.

**THE COURT:** Well, do you want -- I'll tell you what. I'll wait a few days and let you think about the language and submit to me better language than I just used.

So maybe we'll all have a bus ride on July 15th or so or sometime before the middle of July.

This is -- I want to end by just saying how serious this problem is and we are right on the cusp now of a new wildfire

Case: 19-30088   Doc# 2021-10   Filed: 05/15/19   Entered: 05/15/19 15:59:18   Page 14 of 17

```
1    season.  It will start in six weeks.  And I will lose sleep
2    over it, over did I do enough to help PG&E stop these fires.
3         Now, I want to be very clear.  Many fires get started that
4    PG&E has nothing to do with, but I think PG&E is the number
5    one -- no one has started more fires than PG&E.  So you're at
6    the top of the list, but there are a lot of other causes, I
7    acknowledge that.  So we would still have some fires even
8    without PG&E.  I want to help PG&E get to where we all need to
9    be.
10        And I know that's what you want to do, Mr. Johnson.  So
11   welcome aboard.  I appreciate your help.
12        Okay.  Are we done for today?  Was there anything else I
13   needed to go over.  Jennifer?
14            PROBATION OFFICER:  No, Your Honor.
15            THE COURT:  Okay.
16        Anything else?
17            MR. JOHNSON:  Thank you, your Honor.
18            THE COURT:  I want to just say I'm not going to rule
19   on whether or not I have the authority to extend probation.  I
20   see the arguments.  I'm going to leave that in abeyance because
21   I don't think it's the right answer in this case anyway.  For
22   the Form 12 we're dealing with, it was not the right answer.
23        So what is the right answer is what I have asked you to
24   do.  Okay?
25            MS. HOFFMAN:  Thank you, Your Honor.
```

Case: 19-30088   Doc# 2021-10   Filed: 05/15/19   Entered: 05/15/19 15:59:18   Page
15 of 17

1          **MR. JOHNSON:**  Thank you, Your Honor.

2          **MR. SCHAR:**  Thank you, Your Honor.

3          **THE COURT:**  Have a good day.

4      (Proceedings adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Debra L. Pas, CSR, RPR, RMR, CRR*
*Official Reporter - U.S. District Court - San Francisco*
*(415) 431-1477*

## <u>CERTIFICATE OF OFFICIAL REPORTER</u>

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Tuesday, May 7, 2019

Case: 19-30088   Doc# 2021-10   Filed: 05/15/19   Entered: 05/15/19 15:59:18   Page 17 of 17