1
2
3
4
5
6
7
8
9
10

**EXHIBIT E**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MP6/eg3  12/21/2018



**FILED**
12/21/18
03:51 PM

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation on the Commission's Own Motion to Determine Whether Pacific Gas and Electric Company and PG&E Corporation's Organizational Culture and Governance Prioritize Safety. | Investigation 15-08-019 |

## ASSIGNED COMMISSIONER'S SCOPING MEMO AND RULING

### Summary

This Scoping Memo and Ruling (Ruling) sets forth the scope to be addressed and the schedule for the next phase of this proceeding, consistent with the Order Instituting Investigation and the prior Scoping Memo in this proceeding. This Ruling builds on this Commission's Decision (D.) 18-11-050 adopting the recommendations of the NorthStar Report and directing Pacific Gas and Electric Company (PG&E) to implement the recommendations as adopted in the decision.

### 1. Principles

Continuous, safe, and reliable gas and electric service at just and reasonable rates must be provided to Northern California in order to protect human life and sustain prosperity. The Commission's examination of PG&E's

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 2
of 17

safety culture accordingly continues in this proceeding.  The Commission will examine PG&E's and PG&E Corporation's (PG&E Corp.) current corporate governance, structure, and operations to determine if the utility is positioned to provide safe electrical and gas service, and will review alternatives to the current management and operational structures of providing electric and gas service in Northern California.

As the Commission evaluates proposed alternatives, it will consider a range of factors, including:

- the safety and reliability of utility service;
- the operational integrity and technical unity of components within PG&E's gas and electric transmission and distribution systems;
- the stability and adequacy of the utility workforce;
- the utility's relationships with and role in local communities;
- the ability of the state to implement its energy policies, including the need to reduce greenhouse gas (GHG) emissions and local criteria pollutants in both the utility sector and the economy as a whole;
- the ability of the utility to meet financial challenges posed by large catastrophic events such as earthquakes and wildfires;
- the utility's ability to raise capital and purchase gas, electricity, equipment and services; and
- the cost of utility service.

Careful consideration is also necessary to determine whether there is a viable transition process from the status quo to any preferred alternative.  If there is not a clear path forward to implement an alternative (including consideration

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 3 of 17

of legal, financial, and technical grid issues), then the alternative will not be considered a viable option in this proceeding.

The future of PG&E may also be impacted by other actors beyond the Commission. The Legislature, the court appointed Federal Monitor, the various courts considering claims against PG&E, the Federal Energy Regulatory Commission, and the communities served by PG&E all have a role in determining PG&E's future. As a publicly traded company, PG&E must also respond to the financial markets, and to the requirements of the vendors and other parties with which it conducts business.

The Commission has not drawn any conclusions about the outcome of this proceeding and recognizes these other actors may be the origin of proposals for consideration. The Commission undertakes this next phase of this proceeding in a thoughtful and deliberate manner, consistent with the importance of the issues being addressed.

## 2. Background

PG&E has had serious safety problems with both its gas and electric operations for many years. The following examples illustrate both the types of safety incidents PG&E has experienced and the remedial consequences imposed by this Commission and several courts.

On September 9, 2010, a PG&E natural gas transmission pipeline ruptured in San Bruno. The event is well detailed in a Commission decision:

> At 6:11 p.m. on September 9, 2010, Segment 180 of Line 132, a 30-inch diameter natural gas transmission pipeline owned and operated by PG&E, ruptured in the Crestmoor neighborhood of San Bruno, California. Gas escaping from the rupture

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 4 of 17

ignited.  There was an explosion of such tremendous force
that a crater approximately 72 feet long by 26 feet wide was
created.  A 28-foot long section of pipe weighing about
3,000 pounds was blown approximately 100 feet from the
crater.  The conflagration continued for over an hour and a
half, releasing 47.6 million cubic feet of flammable natural gas
before the flow was stopped.  It required the response of
600 firefighting (including emergency medical service)
personnel and 325 law enforcement personnel.

The resulting deaths, injuries, and damage to property were
especially severe […].

The Crestmoor neighborhood was effectively wiped off the
map.  An entire community was displaced.[1]

PG&E faced historically significant administrative penalties and fines and
criminal punishment as a result of the San Bruno explosion.  This Commission
imposed a fine and other penalties on PG&E totaling $1.6 billion.[2]  PG&E was
also found guilty by a federal jury of federal criminal conduct, specifically
multiple willful violations of the Natural Gas Pipeline Safety Act of 1968 and of
obstructing an agency proceeding.[3]  As part of PG&E's sentence in the federal
criminal proceeding, it was required to submit to a federal monitor for
compliance and ethics.[4]  In November 2018, Judge William Alsup, who was

---

[1]  D.15-04-023 at 3-4.

[2]  D.15-04-024 at 2.

[3]  Case No. CR-14-00175-THE; *see also* Press Release, Department of Justice, U.S. Attorney's
Office, Northern District of California, dated August 9, 2016, available at:
https://www.justice.gov/usao-ndca/pr/pge-found-guilty-obstruction-agency-proceeding-and-
multiple-violations-natural-gas.

[4]  Case No. CR-14-00175-THE, Order dated January 26, 2017.  In February 2017, Mark Filip was
selected as the Compliance and Ethics Monitor of PG&E for a period of five years.

assigned the PG&E federal criminal manner, directed PG&E to respond by December 31, 2018, to questions regarding the Camp Fire, which occurred in November 2018.

On June 19, 2012, a PG&E subcontractor was killed during demolition of PG&E's decommissioned Kern Power Plant.  As part of a settlement of the subsequent Commission Order Instituting Investigation (OII), PG&E was required to implement, on a company-wide basis, a Corrective Action Plan that included a Contractor Safety Program and an Enterprise Causal Evaluation Standard, and pay penalties totaling $5,569,313.[5]

On August 18, 2016, the Commission imposed penalties on PG&E of $25,626,000 in response to six incidents from 2010 through 2014 that called into question the safety of PG&E's natural gas distribution system.[6]  In response to the Commission's OII in that proceeding, "PG&E also set forth its efforts to enhance gas distribution system recordkeeping accuracy, accessibility, and controls, as well as operational safety improvements."[7]

On August 27, 2015, the instant OII was opened by the Commission, to examine PG&E's and PG&E Corp.'s safety culture.  This Commission was, and remains, concerned that the safety problems being experienced by PG&E were not just one-off situations or bad luck, but indicated a deeper and more systemic

---

[5]  These penalties consist of $3,269,313 in ratemaking offsets that benefit customers and $2,300,000 in fines payable to the state's General Fund.  (D.15-07-014 at 2.)

[6]  D.16-08-020 at 2-4.  An additional penalty of $10.8 million was imposed for the Carmel incident.  (*Id*. at 10, 51.)

[7]  *Id*. at 4.

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 6 of 17

problem.  The fact that imposing penalties on PG&E (the Commission's standard tool for addressing safety problems) did not seem to change the situation reinforced this concern.

As the Commission stated: "[t]his investigation will…determine whether PG&E's organizational culture and governance are related to PG&E's safety incidents and performance record, and if so, to what extent; and if so, how can or should the Commission order or encourage PG&E to develop, implement, and update as necessary a safety culture of the highest order."[8]  In D.18-11-050, the Commission adopted the findings of the consultant to the Safety and Enforcement Division, the Northstar Consulting Group.  The report concluded that "[w]hile PG&E is committed to safety and efforts have been made to reduce incidents and increase the organizational focus on safety, these efforts have been somewhat reactionary – driven by immediate needs and an understandable sense of urgency, rather than a comprehensive enterprise-wide approach to addressing safety."[9]  The failure of PG&E to develop a comprehensive enterprise -wide approach to address safety, eight years after the 2010 San Bruno pipeline explosion, is of vital concern to this Commission.

The Butte Fire, which began on September 9, 2015, burned approximately 70,000 acres of land and destroyed 921 structures, and left two civilians dead.[10]

---

[8]  Investigation 15-08-019, OII at 15.

[9]  Northstar Report at I-1.

[10]  Cal Fire Report, last modified October 15, 2015, available at http://cdfdata.fire.ca.gov/incidents/incidents_details_info?incident_id=1221.

*Footnote continued on next page*

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 7 of 17

The Commission's Safety and Enforcement Division (SED) issued PG&E a citation for $8 million for violation of the CPUC's General Order 95, Rule 31.1, for failing to maintain its 12 kilovolt (kV) overhead conductors safely and properly.[11] SED also cited PG&E $300,000 for failure to timely report to the CPUC that PG&E's facilities may have been linked to the ignition of the Butte Fire and for failing to maintain the minimum required clearance between a 12 kV conductor and a tree.[12]

In the fall of both 2017 and 2018, historically large wildfires burned in PG&E's service territory.  The scale of these fires set new records on almost every metric which exists to measure wildfires.  Because the Commission's investigations into these fires are ongoing, the specific causes of the fires, potential enforcement actions, and PG&E's prudency related to the fires will not be addressed in this proceeding.  However, the Commission will consider the fact that PG&E's service territory includes fire prone land according to the Commission's fire threat maps,[13] which is a critical safety challenge for PG&E.

On December 14, 2018, the Commission opened an OII proceeding to consider penalties and ordered immediate action against PG&E for what

---

[11]  Citation Issued Pursuant to D.16-09-055.  Available here: http://www.cpuc.ca.gov/uploadedFiles/CPUC_Public_Website/Content/News_Room/E1704001 E2015091601Citation20170425.pdf.

[12]  Citation Issued Pursuant to D.16-09-055.  Available here: http://www.cpuc.ca.gov/uploadedFiles/CPUC_Public_Website/Content/News_Room/E1704002 E20150916_01Citation20170425.pdf.

[13]  D.17-01-009, revised by D.17-06-024.

*Footnote continued on next page*

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 8 of 17

Commission staff says are systemic violations of rules to prevent damage to natural gas pipelines during excavation activities.[14]  The Commission directed PG&E to take immediate corrective measures and to attest under penalty of perjury that it is conducting natural gas pipeline locate and mark efforts and programs in a safe manner consistent with all applicable laws.  The Commission has not prejudged the outcome of that proceeding; however, the fact that these allegations have been made are noted to provide context for the type of challenges we expect PG&E to address by adopting and maintaining a safety culture.

This Commission is tasked with regulating PG&E's safe operation of its natural gas pipeline and electricity infrastructure.  Given PG&E's record and the dangers inherent in PG&E's service territory, the Commission must evaluate whether there is a better way to serve Northern California with safe and reliable electric and gas service at just and reasonable rates.  This ruling identifies the scope of issues considered in the next phase of this proceeding.

## 3.  Scope of Issues

The safe operation of PG&E's gas and electric systems and the threat of personal harm to PG&E employees and members of the public are of critical concern to the Commission and California.  To address that concern and mitigate future risk, the next phase of this proceeding will consider a broad range of alternatives to current management and operational structures for providing electric and natural gas in Northern California.  Accordingly, the following list of

---

[14]  I.18-12-007.

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 9 of 17

proposals is illustrative rather than exclusive and is intended to show the range of possible alternatives under consideration.  This list does not limit the Commission's potential actions or directives.  The outcome of this investigation may include recommendations to other entities that have a role in ensuring safe electrical and gas service in Northern California, if a desired outcome requires action by someone other than this Commission.  Parties may present other options than the ones listed below.  The Commission may revise the scope of alternatives to be considered after receiving comments from parties.

This is not a punitive exercise.  Indeed, the keystone question is, compared to PG&E and PG&E Corp. as presently constituted, would any of the following proposals provide Northern Californians safer gas and electric service at just and reasonable rates?

### Corporate Governance – Board of Directors

- Should PG&E and PG&E Corp. be subject to a utility-specific business judgment rule (BJR) to require the Board of Directors to account for safety beyond the current fiduciary duties?[15]  If so, should such a utility-specific business judgment rule apply to corporate officers as well?

- Should the PG&E Board of Directors regularly file with the Commission a report of how the Board met its duties under the BJR to account for safety?  Should this include a summary of the oversight exercised by the Board including information reviewed, when deliberations occurred, and the depth of the review?  Should the report include the Board review of the corporate officers' leadership as it pertains to safety?  Should compensation to the Board

---

[15] *See, e.g.* California Corporations Code § 309 and *Gaillard v. Natomas Co.,* 208 Cal. App. 3d 1250 (1989).

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 10 of 17

Members be dependent on a Commission finding that the Board members discharged their safety duties appropriately?

- Should PG&E form an independent nominating committee to identify and select candidates for the Board of Directors?

- Should PG&E identify specific criteria for potential Board of Directors members?  For example, should PG&E have one or more Board of Directors members be experts in organizational safety, gas safety, and/or electrical safety?  If so, should the appointment of safety experts be made subject to Commission or Governor approval?

- Should PG&E form an audit committee constituted of independent directors possessing financial and safety competence, as defined by the Commission, to evaluate the Board of Directors' discharge of their duties and make recommendations for qualifications of future members of PG&E's Board of Directors?

- The Securities and Exchange Commission requires publicly traded companies to file an 8-K Form when a material event occurs.  Generally, an event is material if there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision.  Should PG&E file an analogous safety report with the Commission when PG&E makes a significant decision regarding capital expenditures pertaining to safety, a change in management as it pertains to safety, or any other decision that may impact safety?

- Should PG&E file a public annual report of all Directors and Officers insurance policies obtained by PG&E and identify the risk PG&E identified to obtain the insurance?  If PG&E amends its Directors and Officers insurance, should it notify the Commission of the risk identified and the terms of the amended policy?

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 11 of 17

- Should part or all of the existing Board of Directors resign and be replaced by directors with a stronger background and focus on safety?

**Corporate Management – Officers and Senior Leadership**

- Should PG&E retain new corporate management in all or in part?

- Should the questions posed above for Corporate Governance be similarly considered for corporate management?

- Should compensation for non-officer executives be modified?  Does the current incentive structure properly incent PG&E decision-makers?[16]

**Corporate Structure**

- Should PG&E's gas and electric distribution and transmission divisions be separated into separate companies?  If so, should the separate companies be controlled by a holding company?  Should the holding company be a regulated utility?

- Should PG&E's corporate structure be reorganized with regional subsidiaries based on regional distinctions?  For example, PG&E could be divided into multiple smaller utilities operating under a single parent company.  If so, should such a reorganization apply to both gas and electric services?  Do the physical characteristics of the gas and electric systems lend themselves to the same regional structure, or do the physical characteristics of the respective systems lend themselves to different regional structures?

---

[16] Senate Bill 901 (Dodd) prohibits an electrical or gas corporation from recovering any annual salary, bonus, benefits, or other consideration of any value, paid to an officer of the corporation, from ratepayers.

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 12 of 17

- Should the Commission revoke holding company authorization, so PG&E is exclusively a regulated utility? Should all affiliates and subsidiaries be spun off or incorporated into the regulated utility?

- Should the Commission form a standing working group with the union leadership of PG&E to identify the safety concerns of PG&E staff?

**Publicly Owned Utility, Cooperative, Community Choice Aggregation or other Models**

- Should some or all of PG&E be reconstituted as a publicly owned utility or utilities?

- Should PG&E be a "wires-only company" that only provides electric distribution and transmission services with other entities providing generation services? If so, what entities should provide generation services?

**Return On Equity**

- Should the Commission condition PG&E's return on equity on safety performance?

- What are the safety considerations for the utility if its financial status is downgraded by the investment community?

**Other Proposals**

- What other measures should be taken to ensure PG&E satisfies its obligation to provide safe service?

**4. Comments**

Parties should make preliminary comments on the desirability of these alternatives with discussion of how each proposal impacts the following considerations:

- the safety and reliability of utility service;

Case: 19-30088   Doc# 2028-8   Filed: 05/15/19   Entered: 05/15/19 16:58:06   Page 13 of 17

- the operational integrity and technical unity of components within PG&E's gas and electric transmission and distribution systems;

- the stability and adequacy of the utility workforce;

- the utility's relationships with and role in local communities;

- the ability of the state to implement its energy policies, including the need to reduce GHG emissions and local criteria pollutants in both the utility sector and the economy as a whole;

- the ability of the utility to meet financial challenges posed by large catastrophic events such as earthquakes and wildfires;

- the utility's ability to raise capital and purchase gas, electricity, equipment and services; and

- the cost of utility service.

In addition, the parties shall make initial observations on the legal, technical, and financial feasibility of these proposals and include observations on the feasibility of transitioning from the current utility structure to proposed alternatives. Parties may also offer additional proposals with consideration given to the same factors and feasibility concerns.  Parties may also comment on scope and process recommendations.

For ease of reference, parties' comments shall follow the same format provided in this ruling.  Specifically, parties shall comment on proposals in the following sequence:  Corporate Governance, Corporate Management, Corporate Structure, Public Utility or Cooperative, Return on Equity, and Other Proposals. Opening comments are limited to 40 pages.  Reply comments are limited to 20 pages.

To better inform this proceeding, on or before January 16, 2019, PG&E is also directed to file a summary of:

- PG&E's and PG&E Corp.'s corporate structures, including organizational charts for the respective Board of Directors, executives, and other senior leadership as of September 1, 2010, and as of December 31, 2018.  The summary should also explain the different lines of business of PG&E and PG&E Corp.
- The senior positions in PG&E and PG&E Corp. responsible for management of safety, and how the different roles interact.

After review of comments filed by parties, the Commission will identify the best process to consider proposals and identify concerns that require additional filings from parties.

## 5.  Schedule

The next step for this Commission is to obtain input on the various possible approaches to address the underlying issue of PG&E's safety culture. The Commission needs to have more information and analysis from a range of perspectives before it can consider implementation of any particular approach, or even select any approach to consider in more detail.  Accordingly, the schedule set forth below is limited to the filing and service of party comments on the issues identified above.

The following schedule is adopted:

| PG&E and PG&E Corp. Background Filing | January 16, 2019 |
|---|---|
| Concurrent Opening Comments filed and served | January 30, 2019 |
| Concurrent Reply Comments filed and served | February 13, 2019 |

This schedule may be modified by the assigned Commissioner or Administrative Law Judge (ALJ) as necessary.  Once comments are received, the assigned Commissioner and ALJ will determine the next procedural steps to take.

## 6.  Presiding Officer

In the interest of judicial efficiency, ALJ Peter V. Allen is designated as the Presiding Officer in this phase of the proceeding.

## 7.  Public Category of Proceeding/*Ex Parte* Restrictions

As stated in the original scoping memo issued on May 8, 2017, this proceeding is categorized as ratesetting.  With the change in presiding officer, the voluntary *ex parte* prohibition previously imposed by the assigned Commissioner is lifted, and will not apply to this phase of the proceeding.  The Commission's rules regarding *ex parte* communications in ratesetting proceedings remain in place.  Accordingly, *ex parte* communications are restricted and must be reported pursuant to Article 8 of the Commission's Rules of Practice and Procedure.

## 8.  Advisor

Any person interested in participating in this proceeding who is unfamiliar with the Commission's procedures or has questions about the electronic filing procedures is encouraged to obtain more information at http://consumers.cpuc.ca.gov/pao/ or contact the Commission's Public Advisor at 866-849-8390 or 415-703-2074 or 866-836-7825 (TYY), or send an e-mail to public.advisor@cpuc.ca.gov.

**IT IS RULED** that:

1. The scope of this proceeding is described above.

Case: 19-30088    Doc# 2028-8    Filed: 05/15/19    Entered: 05/15/19 16:58:06    Page 16 of 17

2.  The schedule of this proceeding is as set forth above.

3.  Administrative Law Judge Peter V. Allen is designated as the presiding officer for this phase of the proceeding.

4.  Page limitations for opening and reply comments are as set forth above.

Dated December 21, 2018, at San Francisco, California.

/s/  MICHAEL PICKER

Michael Picker
Assigned Commissioner

Case: 19-30088   Doc# 2028-8   Filed: 05/15/19   Entered: 05/15/19 16:58:06   Page 17 of 17