**DIEMER & WEI, LLP**
Kathryn S. Diemer (#133977)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Telephone: 408-971-6270
Facsimile: 408-971-6271
Email: kdiemer@diemerwei.com

**WILLKIE FARR & GALLAGHER LLP**
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Daniel I. Forman (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
       jminias@willkie.com
       dforman@willkie.com

*Counsel for Ad Hoc Group of Subrogation Claim Holders*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    -and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                  **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Chapter 11<br>Bankr. Case No. 19-30088 (DM)<br>(Jointly Administered)<br><br>**PARTIAL OBJECTION OF AD HOC GROUP OF SUBROGATION CLAIM HOLDERS TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 502(b)(9) AND 105(a), FED. R. BANKR. P. 2002, 3003(c)(3), 5005, AND 9007, AND L.B.R. 3003-1 FOR ORDER (I) ESTABLISHING DEADLINE FOR FILING PROOFS OF CLAIM, (II) ESTABLISHING THE FORM AND MANNER OF NOTICE THEREOF, AND (III) APPROVING PROCEDURES FOR PROVIDING NOTICE OF BAR DATE AND OTHER INFORMATION TO ALL CREDITORS AND POTENTIAL CREDITORS**<br><br>**Hearing Date and Time**: June 11, 2019 at 9:30 a.m. (PT)<br>**Hearing Location**: 450 Golden Gate Ave., San Francisco, CA, Courtroom 17<br>**Judge**: Hon. Dennis Montali |

The Ad Hoc Group of Subrogation Claim Holders[1] (the "**Ad Hoc Subrogation Group**") hereby submits this objection (the "**Objection**") to the *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for Order (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 1784] (the "**Debtors' Motion**").[2] In support of the Objection, the Ad Hoc Subrogation Group, by and through its undersigned counsel, respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Setting a bar date for the filing of proofs of claim is a step in the right direction. But the Debtors' Motion seeks to outline the evidentiary support the Debtors unilaterally determine should be presented in support of certain claims and to have this Court issue an order that provides a blanket disallowance of claims that don't comply in each and every respect. This overreaching should not be sanctioned by this Court. Other than outlining the potential consequences of submitting an untimely claim, the order setting the Bar Date should not dictate allowance or disallowance of any claims. The Debtors' attempt to deprive claimants of due process in consideration of their claims is inappropriate. The purpose of the proof of claim process is simply to put interested parties on notice of the claim—not to provide all of the evidence needed to adjudicate the claim. Bankruptcy Code section 502 makes clear that a creditor is entitled to notice and a hearing on any objection to a claim. Instead of filing a simple, non-controversial motion to set a claims bar date with model forms that are personalized for the claims in these cases, the Debtors are asking the Court to make substantive rulings on which claims to allow or disallow.

2. Specifically, the proposed order, read literally, appears to set up a foot-fault where a claimant that is unable to answer every question or respond completely to very specific information

---

[1] The Ad Hoc Subrogation Group's membership and collective holdings of claims and interests are disclosed in the *First Amended Verified Statement of the Ad Hoc Group of Subrogation Claims Holders Pursuant to Bankruptcy Rule 9019* [Docket No. 1482].

[2] Capitalized terms not defined herein have the meanings ascribed to them in the Debtors' Motion.

requests "in the appropriate form shall . . . be forever barred, estopped, and enjoined from asserting such claims against the Debtors." Debtors' Motion, Exhibit A, ¶ 5. The penalty for less than perfect compliance cannot be that an otherwise valid claim is disallowed. Such an outcome is demonstrably at odds both with established precedent permitting claimants to amend their proofs of claim following an objection, and fundamental principles of fairness.

3. The above concern is heightened by the fact that the Debtors' proposed form (Debtors' Motion, Exhibit C-3, the "**Debtors' Form**") for insurance subrogation[3] claims ("**Subrogation Claims**") uses confusing terminology and asks for information that is either unavailable or unduly burdensome to collect. Despite the fact that there is a long history of information exchanged between holders of subrogation claims and utilities (including PG&E), the Debtors have deviated from what is typical, without explanation. As more fully detailed herein, the claim form should request the same information that subrogation claim holders have historically exchanged with defendants.

4. The Debtors' Form also asks for information related to claims transfers. But whether a party filing a proof of claim has transferred the claim, or is the transferee now holding a transferred claim, is irrelevant to whether a claim exists. Bankruptcy Rule 3001(e) sets forth the proper procedure to notify parties in interest of claims transfers. If the Debtors intend to take a position concerning the efficacy of claims transfers, they should not use the proof of claim process to collect information to do so. Finally, the Debtors' proposed order does not sufficiently protect information that may be commercially sensitive and/or implicates individual tort victims' personal privacy. The order should seal such information, and clarify that it may only be provided to official committees on a professional eyes' only basis.

5. The Ad Hoc Subrogation Group welcomes the setting of a bar date so the Debtors

---

[3] The use of the shorthand descriptive term "subrogation" herein is not intended to modify or limit the substantive rights of the holder of claims or the basis for the claimant's right to assert claims originating with insured tort victims. These "subrogation" claims include, but are not limited to, claims that arise from subrogation (whether such subrogation is contractual, equitable or statutory), assignment (whether such assignment is contractual, equitable or statutory), or otherwise in connection with payments made or to be made by the applicable insurer to insured tort victims, and whether arising as a matter of state or federal law, including, without limitation, Section 509 of the Bankruptcy Code.

3

and all parties in interest can better understand the quantum of total claims against the estates, and move towards a resolution of these cases. Similarly, using a specific proof of claim form for Subrogation Claims—claims that are unique and complex—is also appropriate. However, for the reasons set forth more fully below, the Motion is problematic in many critical respects, and should not be approved by the Court without the following key modifications.[4]

## BACKGROUND

6. On January 29, 2019 (the "**Petition Date**"), PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company ("**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").

7. The Ad Hoc Subrogation Group's membership and collective holdings of claims and interests are disclosed in the *First Amended Verified Statement of the Ad Hoc Group of Subrogation Claims Holders Pursuant to Bankruptcy Rule 9019* [Docket No. 1482], as may be amended from time to time.[5]

8. The Debtors' Motion was filed on May 1, 2019, seeking entry of an order establishing the last day to file proofs of claim and approving proposed proofs of claim forms for use in these chapter 11 cases, to be heard on May 22, 2019. The Debtors' Motion has been adjourned to June 11, 2019. On May 3, 2019, the Official Committee of Tort Claimants (the "**TCC**") filed a motion and accompanying memorandum of law seeking approval of its own proposed model proof of claim form for fire claims ("**TCC Motion**") [Docket Nos. 1824 & 1825], to be heard on June 11, 2019. Contemporaneously herewith, the Ad Hoc Subrogation Group filed

---

[4] Contemporaneously with the filing of this Objection, the Ad Hoc Subrogation Group has filed a motion (the "**Subrogation Group's Motion**") proposing a revised form for the assertion of Subrogation Claims (the "**Subrogation Group's Form**"). The Subrogation Group's Form is attached to the Subrogation Group's Motion as Exhibit A, and is also attached hereto as **Exhibit A** for ease of reference.

[5] The Ad Hoc Subrogation Group consists of insurers and other entities that acquired subrogation claims from insurers. Subrogation rights may be contractual or equitable under state law, or arise pursuant to section 509 of the Bankruptcy Code. Generally, when an insurer pays an insured's losses or damages for which a third party is liable, the insurer is subrogated to the rights of the insured as against the third party. Here, Ad Hoc Subrogation Group members hold Subrogation Claims against the Debtors on account of payments made (and to be made) to individual insureds relating to damages caused by the catastrophic fires that occurred in Northern California prior to the Petition Date.

4

Case: 19-30088    Doc# 2043    Filed: 05/16/19    Entered: 05/16/19 12:40:58    Page 4 of 11

the Subrogation Group's Motion and accompanying memorandum of law.

## PARTIAL OBJECTION

9. Before the Debtors' Motion is granted, the proposed order should be clarified to permit claimants to amend their proofs of claim, and the Debtors' Form should be substituted with the Subrogation Group's Form.

10. The Ad Hoc Subrogation Group does not dispute the Debtors' right to object to any proof of claim on proper notice for failure to comply with the Bar Date Order. However, the Bar Date Order should not forever bar claimants that don't perfectly complete a complicated form with dozens of specific information requests. As would be true in any other bankruptcy case, claimants should have an opportunity to revise, amend and/or supplement their claims, even if the Bar Date has passed, so long as their originally filed proof of claim form provided the Debtors with sufficient notice. The Ninth Circuit has a "long-established liberal policy toward amendment of proof of claims." *Pizza of Hawaii, Inc. v. Shakey's Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1381 (9th Cir. 1985) (quoting *Sambo's Rests., Inc. v. Wheeler (In re Sambo's Rests., Inc.)*, 754 F.2d 811, 816 (9th Cir. 1985)); *see also In re Grivas*, 123 B.R. 876, 878 (Bankr. S.D. Cal. 1991). Amendments to an already filed proof of claim should be freely allowed, and the salient question is whether the "creditor is seeking to introduce a new claim in disguise." *Diversified Pac. Opportunity Fund I, LLC v. Cisneros (In re Riley)*, No. 12-01288 (DMG), 2013 WL 4854485, at *3 (C.D. Cal. 2013) (internal quotations omitted). Paragraph 5 of the Proposed Order should be clarified to reflect this standard by adding the following language: "Notwithstanding anything to the contrary herein, claimants that make a good faith effort to assert a claim in the appropriate form shall be permitted to revise, amend and/or supplement their proof of claim until such claim is allowed or disallowed by Court order." Claimants' rights to supplement their claims must be preserved in this case (regardless of the form ultimately approved), because claims arising out of the most recent wildfires are still developing and may be subject to further modification. The proposed Bar Date is less than one year removed from the date of the Camp Fire, which inflicted enormous damage in terms of lives lost and structures destroyed. It should be expected that claims

will be modified after the Bar Date as more/better information becomes available.

11. Furthermore, preserving claimants' rights to supplement their proofs of claim is particularly critical, because the Debtors' Form is confusing and asks for information not typically provided by subrogated insurers to PG&E when negotiating and settling these types of claims. Multiple subrogation lawyers representing a large group of individual insurers track the claims made under individual insureds' policies in a centralized, electronic format. Subrogation counsel and PG&E have used that database in the past to resolve Subrogation Claims. The proof of claim form should ask for the same information historically exchanged on Subrogation Claims. But, certain data points listed in Question 11 of the Debtor's Form do not conform to historic practice, specifically: policy limits, parcel IDs, and reserves per claim broken down by loss type.

12. Policy limits are irrelevant to the asserted claim, because subrogation rights arise as a matter of equity from the payment made by the insurer to insured, irrespective of any policy limits. Furthermore, policy limits generally cannot be boiled down to one single dollar amount—for example, policies typically incorporate various limits and sub-limits for different types of losses. It would be overly burdensome to provide such information on a policy-by-policy basis. Policy limits are also potentially sensitive information for insureds because they indicate the value of the insureds' property. The insureds are involuntary creditors and their private information should not be made public through the claims process.

13. A property's parcel ID is property-tax related information, which is not collected by many insurers from the insureds in the ordinary course of business. Collecting such information now from thousands of claimants would be extremely time consuming and prohibitively expensive. The Subrogation Group's Form proposes providing the information that is routinely collected: street addresses.

14. Many insurers do not track reserves by loss type (e.g., structure, personal property, automobile), as requested in the Debtors' Form, and therefore cannot provide such information. In fact, insurers use a wide variety of reserve practices. Some carriers only track bulk reserves relating to a loss event, like a fire or earthquake. The Subrogation Group's Form more

appropriately asks holders of Subrogation Claims to provide aggregate reserves, and that is sufficient information to allege a claim. Subrogation Group's Form, Question 12.

15. The Debtors' Form also uses confusing terminology. It asks whether the "claim" asserted was acquired from someone else, and whether the claimant is aware of anyone else asserting the same "claim." Debtors' Form, Questions 4 & 7. Those questions are confusing in the subrogation context, where insurers pursue claims as subrogees of their insureds, some of whom are individual claimants who may assert their own independent claims. The form should be clarified to reference "subrogation claims" rather than "claims," and note that it is not asking whether claims have been "acquired from" or "filed by" the underlying insureds, as set forth in the Subrogation Group's Form. Subrogation Group's Form, Questions 4 & 9.

16. In addition, the Debtors' Form asks for aggregate "paid" and "reserved" amounts, but that does not clearly allow the claimant to assert claims above and beyond the amount "reserved" on their books and records. *See* Debtors' Form, Question 10. The amount reserved by an insurer for potential future payments to an insured is different from estimating contingent claims in the bankruptcy context. Some insurers may wish to assert further estimated amounts in a bankruptcy proof of claim form that are not captured in the internal reserve maintained for insurance purposes. The Subrogation Group's Form more appropriately asks for aggregate paid, reserved and estimated amounts. *Compare* Debtors' Form, Question 10, *with* Subrogation Group's Form, Questions 10-13.

17. Aside from being generally confusing and asking for information that is not readily available, the Debtors' Form also inappropriately requests claims transfer information. Bankruptcy Rule 3001(e) governs what must be filed related to claims transfers. By contrast, the proof of claim form's purpose is to notify the world of the creditor's intention to pursue a claim. *See Spokane Law Enf't Fed. Credit Union v. Barker (In re Barker)*, 839 F.3d 1189, 1195 (9th Cir. 2016) ("The proof of claim plays the important role of alerting the court, trustee, and other creditors, as well as the debtor, to claims against the estate, and the creditor's intention to enforce the claims.") (internal quotations omitted); *Brosio v. Deutsche Bank Nat'l Tr. Co. (In re Brosio)*, 505 B.R. 903, 912 (9th

7

Cir. BAP 2014) ("The filing of a proof of claim is analogous to filing a complaint in the bankruptcy case.") (citations omitted).  The detailed transfer information requested by the Debtors does not further that purpose.  Moreover, Question 12(c) of the Debtors' proposed POC form, which purports to require production of the underlying policy for every claim, is extremely burdensome.  It is also irrelevant because subrogation arises by operation of equity, irrespective of the policy terms.  The fact that Debtors are only seeking this information from creditors that acquired their claims shows that the information is irrelevant.

18. The following chart shows how the Subrogation Group's Form addresses each of the foregoing issues by comparing the Debtors' Form and the Subrogation Group's Form side-by-side.

| Issue | Debtors' Form | Subrogation Group's Form |
|---|---|---|
| **Unnecessary Information** | 11. . . . This information must be provided to Prime Clerk in the form requested . . .<br><br>4. Policy Limit . . .<br><br>10. Parcel ID . . .<br><br>15. Total Paid/Reserved by Claim Type (e.g., Auto Commercial, Homeowners)<br><br>16. Total Paid/Reserved by Loss Type (e.g., structure, personal property, automobile) | 15. . . . This information, to the extent maintained by the claimant in the ordinary course of business, shall be provided to Prime Clerk substantially in the form requested . . .<br><br>[*Policy Limit and Parcel ID not requested*]<br><br>13. Total Paid to date by Loss Type (e.g. structure, personal property, automobile)<br><br>[*Reserves requested in the aggregate.  See Question 12.*] |
| **Terminology: "claim" vs. "subrogation claim"** | 4. Has this claim been acquired from someone else?<br><br>7. Do you know if anyone else has filed a proof of claim for this claim? | 4. Has this subrogation claim been acquired from someone else (other than an insured)?<br><br>9. Do you know if anyone else (other than the underlying insureds) has filed a proof of claim for this subrogation claim? |
| **Aggregate Claim Amounts** | 10. Total aggregate claim amount (amount to reflect all individual claims that have been paid or reserved by the Insurer) | 10. Liquidated Claims.  What is the aggregate amount of liquidated claims (*i.e.* payments made to insureds as of the date hereof)?<br><br>12. Contingent or Unliquidated Claims.  What is the aggregate amount of estimated contingent and unliquidated claims (*i.e.* amounts reserved or estimated for claims to be paid to insureds for incidents that occurred prepetition)? |
| **Transfer Documentation** | 12. If any individual claims that form the basis of this claim have been acquired through an assignment, please provide the following additional information for each individual | [*Omitted from Subrogation Group's Form*] |

8

| | |
|---|---|
| claim: (1) a copy of the original contract of sale/assignment . . . (2) a copy of insurer's written notification to insured (pursuant to 10 Cal. Code Regs. § 2695.7(p)) . . . (3) a copy of the underlying policy . . . | |

19. Finally, the Debtors' Proposed Order does not sufficiently protect confidential information. It provides that supporting documentation "shall remain confidential" and may be provided to other parties that "agree[] to keep the information . . . confidential." Debtors' Motion, Exhibit A, ¶ 4. Some of the information that may be reported in connection with Subrogation Claims is particularly sensitive, including individual tort victims' names, street addresses, and dollar amounts paid and/or reserved under insurance policies. Section 107(b) of the Bankruptcy Code makes it "mandatory for a court to protect documents" falling into one of three categories: confidential business information, scandalous or defamatory matter, and means of identification. *Archdiocese of Portland v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland)*, 661 F.3d 417, 430-31 (9th Cir. 2011). As set forth in the proposed order attached to the Subrogation Group's Motion, the order setting a bar date should clearly state that sensitive information shall be sealed and held confidentially by Prime Clerk and the Debtors, and may only be provided to the Court and the United States Trustee, and, on a professional eyes' only basis, to the official committees.

20. The Ad Hoc Subrogation Group does not object to the establishment of a bar date or to the Court approving a specific proof of claim form for Subrogation Claims. However, the Debtors' Proposed Order and the Debtors' Form will not facilitate a seamless claims process in these cases for all the reasons set forth above, each of which is addressed and corrected by the Subrogation Group's Form.

WHEREFORE, the Ad Hoc Subrogation Group requests that the Court grant it relief consistent with this Objection as it determines is just and proper.

Dated: May 16, 2019

**WILLKIE FARR & GALLAGHER LLP**

/s/ *Matthew A. Feldman*
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Daniel I. Forman (*pro hac vice*)

*Counsel to Ad Hoc Group of Subrogation Claim Holders*