CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*∗ All papers shall be filed in the Lead Case No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DEBTORS' SUPPLEMENTAL STATEMENT REGARDING DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY COMPASS LEXECON, LLC AS ECONOMIC CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO PETITION DATE**<br>Re:     Dkt. No. 1756<br>Date:  May 22, 2019<br>Time:  9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, CA 94102 |

1   PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the
2   "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the
3   above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit their Supplemental
4   Statement (the "**Supplemental Statement"**) in response to (i) questions posed by this Court at the
5   May 9, 2019 hearing regarding Debtors' Application (the "**Application**"), filed on April 29, 2019
6   (ECF No. 1756), and the Supplement to the Application filed on May 3, 2019 (ECF No. 1842)
7   (collectively, the "**Supplemented Application**") for authority to retain and employ Compass
8   Lexecon, LLC ("**Compass**") pursuant to section 327(a) of title 11 of the United States Code (the
9   "**Bankruptcy Code**") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure
10  (the "**Bankruptcy Rules**"), as economic consultants for the Debtors effective as of the Petition
11  Date, and (ii) the statement of the Official Committee of Tort Claimants ("**TCC**") (ECF No. 1860),
12  filed on May 6, 2019, regarding the Supplemented Application.

**ARGUMENT**

A.   **Current Status**

For the reasons set forth in the Supplemented Application, Debtors continue to maintain that it is vital that Compass be retained to continue assisting Cravath and the Debtors with analyzing and assessing the losses and potential damages associated with the Northern California Wildfires (as defined in the Application), and potentially serving as a potential expert witness in these Chapter 11 Cases. Compass has provided, and continues to provide, critical analysis and loss assessment data to Cravath and the Debtors, and Cravath's and Debtors' inability to continue working with Compass would gravely prejudice the Debtors and the Debtors' estates, not least by requiring any replacement firm to re-incur additional, unnecessary costs re-doing the work that Compass has already done. There would also be an unnecessary time delay as that new firm gets up to speed.

In an effort to resolve issues relating to Compass's retention application in a collaborative and consensual manner, counsel for Debtors and Compass have been working together to explore ways to address the concerns of the United States Trustee ("**UST**") and the TCC. To that end, Debtors and Compass have proposed an arrangement with the Unsecured Creditors Committee ("**UCC**") pursuant to which Compass would share with the UCC's financial advisor FTI Consulting, Inc. ("**FTI**") a significant volume of publicly-available damages-related data already obtained and assessed for reliability by Compass over the course of many months. Debtors believe that sharing this data will preserve estate resources by saving FTI and the UCC valuable time and costs that would otherwise be spent obtaining much if not all of the same data and assessing its parameters and reliability, as Compass has done.

This data-sharing proposal will in no way, however, compromise the independence of the actual analyses or potential expert testimony to be subsequently provided by either Compass or FTI. Compass will continue to perform its work for Cravath and the Debtors, and FTI will continue to perform its work for the UCC, both in an entirely separate and independent manner. Consistent with the Supplemented Application, there will be no contact or communication between FTI and

Compass professionals regarding the estimation of wildfire claims as a result of this data sharing arrangement, and no influence or supervision or direction asserted by either consultant over the other.

In light of this data-sharing proposal, as well as discussions between counsel for Compass and the UST, it is Debtors' counsel's understanding that the UST is willing to withdraw its prior objections to the Compass retention application. Counsel for the TCC has also advised Debtors' counsel that the TCC will withdraw their Statement opposing the retention of Compass if they receive the same publicly-available damages-related data that is to be provided to the UCC under the arrangement described above, at the same time and on the same terms as the data is provided to the UCC. That is acceptable to Debtors.

Debtors and Compass are hopeful that this arrangement will resolve all issues surrounding Debtors' retention of Compass, and allow Compass to be retained by consent. Debtors anticipate that both the UST and the TCC will each file something themselves with the Court withdrawing their Objections and Statement respectively.

But even in the event that that does not happen, for whatever reason, Debtors continue to believe that there is no basis for Compass's retention not to be confirmed. For the reasons detailed in prior submissions and below, and in the accompanying submission of Compass, it remains unclear whether Compass's retention requires formal approval under section 327(a) of the Bankruptcy Code. Should there be agreement amongst all parties that Compass's retention is not required under section 327(a) of the Bankruptcy Code, Debtors are happy to withdraw their application but only subject to a clear understanding and agreement by all stakeholders that there will be no subsequent arguments or objections concerning Compass's disinterestedness in these Chapter 11 Cases, or the independence of its analysis, work or testimony. Otherwise, Debtors respectfully submit that, for the reasons stated in the Supplemented Application and below, Compass's retention should be approved under section 327(a) of the Bankruptcy Code.

### B.     Compass and FTI Are Not Presumptively Adversarial.

At the May 9, 2019 hearing, the Court asked the Debtors to provide their views on whether

FTI and Compass "[a]re adverse to one another" in the same way that lawyers are, by function of their ethical and fiduciary obligations to their clients. *See* May 9, 2019 Tr. at 10:8-21, 12:8-10. The Court raises an excellent question. Debtors do not believe that the role of any of the economic consultants and potential testifying witnesses in these cases are necessarily adversarial. Compass will perform its analysis on behalf of Cravath and the Debtors, and FTI will do the same on behalf of the UCC. Presumably, other economic consultants or damages experts retained by other parties will do the same thing. From Debtors' perspective, and consistent with the obligations that Debtors hold to the various stakeholders in these cases, Compass has been and will be asked to quantify and assess the potential wildfire-related liabilities in a fair, reasonable and objective manner, playing the role of what the Court has referred to as a "truth-seeker" in the evaluation and assessment of wildfire claims. *See* May 9, 2019 Tr. at 12:8-10. The process of quantifying and assessing the potential wildfire-related liabilities will require each expert to apply its professional judgment and experience to the raw data. The fact that this may result in the experts reaching different potential claims estimations does not, by itself, make the experts adversaries. Instead, the various estimations will be tested by the parties in interest.

  **C.**   **The Court Should Permit the Retention of Compass by the Debtors.**

    **1.**   **It is Not Clear Whether Compass's Retention Is Required Under Section 327(a) of the Bankruptcy Code.**

Despite the assertions of the TCC, it is far from clear that a formal retention application under 327(a) of the Bankruptcy Code was required for Compass. Courts have held that not every person employed by debtors is a "professional person" within the meaning of section 327(a) of the Bankruptcy Code. *See In re Blair*, 329 B.R. 358 (B.A.P. 9th Cir. 2005). A "professional person is one who takes a *central role* in the administration of the bankruptcy estate and in the bankruptcy proceedings" (emphasis added). *Id.* While the work Compass has done and is doing for the Debtors is crucially important, Compass's work has little to do with the Debtors' administration

of the bankruptcy estate and/or the bankruptcy proceedings.[1]

### 2. Even If Compass's Retention Is Subject to Court Approval Under Section 327(a), Approving Compass's Retention Is Appropriate.

*First*, contrary to the TCC's submission, the Debtors' Application for Compass's retention is not untimely. *See* ECF No. 1860 at pgs. 8-9. As noted above, the Debtors do not believe Compass's post-petition work to date falls within the scope of section 327(a) of the Code, but filed the Application in light of the UCC's proposed retention of FTI, out of an abundance of caution and to preserve the Debtors' right to continue using Compass' services throughout the Chapter 11 Cases. *See* ECF No. 1756 at pg. 9, n. 2. Moreover, as the Debtors made clear and this Court recognized, the Debtors have been in contact with the UST to submit drafts of various retention applications on a rolling basis. *See* March 13, 2019 Tr. at 6:9-14. This Court has shown flexibility in the enforcement of filing deadlines for retention applications. *See* February 13, 2019 Tr. at 95:21-16. Moreover, there has been no prejudice to any party in these Chapter 11 cases flowing from the timing of Debtors' application regarding Compass's retention.

*Second*, Compass meets the "disinterestedness" requirement of section 327(a) and does not "hold or represent an interest adverse to the estate". *See* 11 U.S.C. § 327(a). While the TCC refers to Compass as "an 'affiliate' of FTI under the Bankruptcy Code", there is simply no *per se* disqualifier for a professional under the Bankruptcy Code or Bankruptcy Rules for purposes of determining disinterestedness based on affiliation with another non-debtor alone, as this Court observed. *See* April 24, 2019 Tr. at 55:12-20, 65:4-6. Furthermore, the TCC's arguments that Compass has an adverse interest arising out of its relationship with FTI are not only conclusory

---

[1] On this basis, Debtors have retained and anticipate retaining subject matter experts in connection with the wildfire claims; Debtors do not intend to seek this Court's approval for the retention of these experts under section 327(a) of the Bankruptcy Code. It is also on this basis that Debtors did not previously file a retention application for Compass under section 327(a), and have done so solely out of an abundance of caution and to preserve Debtors' right to continue using Compass's services in the event that the Court approves the UCC's retention of FTI.

and speculative,[2] but are disproved by the factual record put before the Court by both Debtors and Compass. *See* Declaration of Adel Turki in Support of Debtors Application to Retain and Employ Compass Lexecon, LLC as Economic Consultants (ECF No. 1757) at pgs. 6-7. FTI and Compass have both confirmed that there is a clear business separation between the two legal entities, that there will be no FTI supervision of Compass's work (or vice versa) and that there will be no exchange of information related to the work performed as part of their retention in these Chapter 11 cases. *See id.*; April 24, 2019 Tr. at 44:1-7. Consequently, there is no actual or potential conflict or even an appearance of impropriety arising out of Compass's affiliation with FTI.[3]

*Third*, the TCC's claim that the Debtors' application may not be approved absent a "*full disclosure of [Compass's] scope of services*" is unsupported by any legal basis.[4] *See* ECF No. 1860 at pgs. 9-10 (emphasis added). Furthermore, the Debtors have made it very clear that Compass's services include analyzing losses and potential damages arising out of the Northern California Wildfires. To provide details beyond this point would require Debtors to disclose the particular methodologies, assumptions and analytical frameworks undertaken by Compass on behalf of Debtors, which is entirely premature at this point. Furthermore, any requests to disclose Compass's methods, analyses and conclusions cannot be maintained, as they are protected under the work product doctrine, since Compass has, and will continue to serve as consultants to

---

[2] The TCC alleges that "it *seems apparent* that FTI can set Compass' corporate policy and oversee its operations" and "[b]ased on *this potential for* control and the predisposition for Compass to act in the economic interest of its parent, it is unclear how Compass can demonstrate it does not represent an interest adverse to the Debtors". *See* ECF No. 1860 at pg. 6 (emphasis added).

[3] Courts have advised against disqualifications based on "appearances of impropriety" alone, because doing so would "allow horrible imaginings alone to carry the day". *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 477 (3d Cir. 1998) (court rejecting the Trustee's invitation to read an appearance of conflict disqualification into section 327(a)).

[4] The TCC cites various cases in support of this statement, but not a single one of them pertains to the disclosure of the *scope of services* to be provided by the professional that is sought to be retained. ECF No. 1860 at pg. 10. Instead, the cases merely address disclosure obligations in the context of the court's "disinterestedness" and "adverse interest" analyses (*i.e.*, disclosure obligations that the TCC does *not* allege the Debtors or Compass have failed to meet). *See, e.g., In re Thomas*, 476 B.R. 579, 586 (N.D. Cal. 2012) (stating merely that an attorney's duty to disclose under the Bankruptcy Code and Rules extends to all facts that may be pertinent to a court's determination of whether it is *disinterested* or *holds an adverse interest to the estate*).

attorneys and its work has been wholly undertaken in anticipation of litigation and at the direction of counsel. *See Fed. R. Bankr. P.* 9014(c), *Fed. R. Civ. P.* 26(b)(3)(A).

### D. The TCC's Argument That the Debtors and the UCC Should Share a Financial Advisor Is Unavailing.

Finally, the TCC's argument that it "should not be required to fight against two different advisory firms, both of whom are attacking the value of tort claims" (ECF No. 1860 at pg. 5) is contrived, because each of the significant parties in these Chapter 11 cases, including the TCC, is entitled to retain its own independent economic advisor to assist with matters related to this bankruptcy proceeding. Additionally, the UCC and the Debtors are fiduciaries to two different groups, and thus it is not practical, customary, or appropriate to share advisors.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested in the Debtors' Supplemented Application as a sound exercise of the Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties interests, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: May 17, 2019

**CRAVATH, SWAINE & MOORE LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Paul Zumbro
      Paul Zumbro

*Attorneys for Debtors
and Debtors in Possession*