TOGUT, SEGAL & SEGAL LLP
Albert Togut (*pro hac vice pending*)
(altogut@teamtogut.com)
Kyle J. Ortiz (admitted *pro hac vice*)
(kortiz@teamtogut.com)
Amy M. Oden (admitted *pro hac vice*)
(aoden@teamtogut.com)
Amanda C. Glaubach (admitted *pro hac vice*)
(aglaubach@teamtogut.com)
One Penn Plaza, Suite 3335
New York, NY 10119
Tel: 212-594-5000
Fax: 212-967-4258

- and -

SCHNADER HARRISON SEGAL & LEWIS LLP
George H. Kalikman
650 California Street, 19th Floor
San Francisco, CA 94108-2736
Direct (415) 364-6734
(gkalikman@schnader.com)

*Attorneys for Compass Lexecon, LLC*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**STATEMENT OF COMPASS LEXECON, LLC IN SUPPORT OF APPLICATION PURSUANT TO 11 U.S.C. § 327 AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY COMPASS LEXECON, LLC AS ECONOMIC CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO PETITION DATE**<br><br>Re: Docket Nos. 1756 and 1842<br>Date: May 22, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

Compass Lexecon, LLC ("Compass"), as economic consultant to Cravath, Swaine & Moore LLP ("Cravath"), lead coordinating counsel for all wildfire-related issues involving PG&E Corporation ("PG&E Corp.") and Pacific Gas and Electric Company (the "Utility"), as debtors and debtors in possession (together, "PG&E" or the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), respectfully submits this statement (the "Statement")[1] in support of the *Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1756] (the "Application").[2] In support of this Statement,

---

[1] Compass understands that (a) the United States Trustee (the "U.S. Trustee") will be withdrawing its objection [Docket No. 1858] and (b) the Official Committee of Tort Claimants (the "TCC") will be withdrawing its objection [Docket No. 1860] (the "TCC Objection"), in each case substantially contemporaneously with the filing of this Statement. The U.S. Trustee and Compass have agreed that Compass will waive $93,000 of its postpetition fees, which is attributed to the time spent addressing the U.S. Trustee's concerns regarding the Application. Compass, the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and the TCC have agreed to an information-sharing protocol, described below, that resolves the TCC Objection.

[2] Compass hereby incorporates by reference the Application and the supporting arguments and evidence contained in the following documents:

a. the *Declaration of Adel Turki in Support of Debtors' Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1757] (the "Original Turki Declaration");

b. the *Declaration of Paul H. Zumbro in Support of Debtors' Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1758] (the "Zumbro Declaration");

c. the *Supplement to Debtors' Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1842] (the "Supplemental Application"); and

d. the *Supplemental Declaration of Adel Turki in Support of Debtors' Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1844] (the "Supplemental Turki Declaration," and together with the Application, the Original Turki Declaration, the Zumbro Declaration, and the Supplemental Application, the "Compass Retention Documents").

Compass submits the *Second Supplemental Declaration of Adel Turki in Support of Debtors' Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* (the "Turki Declaration"),[3] filed contemporaneously herewith, and respectfully states:

## PRELIMINARY STATEMENT[4]

Compass's retention is permissible under the Bankruptcy Code and of vital importance to these Chapter 11 Cases. Compass has served as an economic consultant analyzing the losses and potential damages associated with the Northern California Wildfires since February 2018, when Compass was retained by Cravath, the Debtors' corporate and litigation counsel. During its engagement, Compass has performed the critical task of investigating, analyzing, and evaluating the losses arising from those Northern California Wildfires, as well as the potential damage claims that might be asserted against the Debtors arising from the North Bay Fire and the Camp Fire. Compass's work already has been, and will continue to be, instrumental in assisting Cravath in advising the Debtors' management regarding potential damages relating to the Northern California Wildfires, and a critical element of these Chapter 11 Cases. Given all the valuable work that Compass has done already both prior to and during the course of the Chapter 11 Cases, it would be extremely costly and prejudicial to the Debtors and their estates if Compass cannot continue its work. Cravath would have to retain new, separate economic consultants, who presumably would need to incur the same costs already incurred by Compass. For all of the reasons explained in the submissions of both Compass and the Debtors, the Committee's retention of FTI should not adversely impact the Debtors' ability to continue to utilize Compass.

As the Debtors have observed in the Compass Retention Documents, it is far from clear that Cravath's prior retention of Compass, as an economic consultant and potential expert witness in

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application or the Turki Declaration, as applicable.

[4] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them herein.

these Chapter 11 Cases, requires Court approval pursuant to section 327(a) of the Bankruptcy Code. Economic consultants and expert witnesses are routinely retained by counsel to debtors without being separately retained by such debtors as estate professionals. Indeed, as described in the Turki Declaration, Compass is almost always engaged through counsel to debtors in chapter 11 cases and only rarely is directly retained by the debtors themselves. That is why these Debtors did not file a retention application for Compass until after the application was filed by the Committee to retain FTI Consulting, Inc. ("FTI"), as its financial advisor, which was required.[5] Compass also believes that its services as an economic consultant and potential expert witness do not fall within the scope of section 327(a) and do not require Court approval.

If the Court determines that Compass must be retained under section 327(a) of the Bankruptcy Code, its retention should be approved. No party has taken issue with Compass's qualifications to serve in this role, or the fees being charged to do so. Nor has any party identified a disqualifying conflict. Furthermore, with the filing of this Statement, the U.S. Trustee has agreed to withdraw its objection to the continued employment and retention of Compass by Cravath and the Committee's retention of FTI. Finally, to save costs, it has been agreed that a significant volume of publicly available data obtained to date by Compass will be shared with the Committee, FTI, and the TCC, to facilitate their work, which otherwise will remain entirely separate and independent. This information-sharing protocol, described below, resolves the TCC Objection.

For the reasons set forth below, Compass respectfully requests that the Court hold that Compass may continue to be retained by Cravath without the need for Court approval. The Debtors and the U.S. Trustee agree that Compass's retention falls outside the scope of section 327(a). Provided the Court agrees, the Debtors will withdraw the Application and Compass will continue to be retained solely by Cravath as an expert witness. In the alternative, if the Court finds

---

[5] The issue of Compass's retention arose following the U.S. Trustee's objection to the Committee's proposed retention of FTI, Compass's parent company, as its financial advisor. Although the Debtors agreed, at the Court's suggestion, to file a retention application for Compass pursuant to section 327(a) out of an abundance of caution, the Court has yet to find that Compass is actually a "professional" within the scope of section 327(a) given its highly specialized, narrow role in these Chapter 11 Cases.

327(a) retention necessary, Compass respectfully requests that the Court approve the Application so that Compass may continue its efforts to the Debtors regarding potential liability for damages resulting from the Northern California Wildfires.

**STATEMENT**

I.  **Compass Is an Economic Consultant and Potential Expert Witness and May Be Retained by Cravath Without Court Approval.**

Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 require court approval before a "professional person" may be retained by a debtor in possession. *See Elstead v. Nolden (In re That's Entm't Mktg. Grp., Inc.)*, 168 B.R. 226, 229 (N.D. Cal. 1994). "For purposes of interpreting § 327, the term 'professional persons,' is a 'term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate.'" *Id.* at 230 (quoting *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986)). "A person's status as a 'professional' is not determinative; the inquiry focuses on that person's duties." *That's Entm't*, 168 B.R. at 230. The determination whether a person is a "professional" turns on whether "the duties involved are central to the administration of the estate." *Id.* (quoting *In re Sieling Assocs. Ltd. P'ship*, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991)). Courts have recognized duties such as assisting in the negotiation of the debtor's plan, assisting in the adjustment of the debtor/creditor relationship, disposing of assets of the estate, and acquiring assets on behalf of the estate to be "central" to the administration of the estate. *That's Entm't*, 168 B.R. at 230.

Courts have routinely held that potential expert witnesses do not fall under this category. *See, e.g., id.* at 230–31 (holding that the employment of an accounting firm as an expert witness was not subject to section 327 or Bankruptcy Rule 2014); *In re Cyrus II P'ship*, No. 05-39857 (MI), 2008 WL 3003824, at *1 (Bankr. S.D. Tex. July 31, 2008) (holding that expert witness need not be retained as "professional persons" under section 327(a)); *In re Artra Grp., Inc.*, 308 B.R. 858, 860 (Bankr. N.D. Ill. 2003) ("Most courts have come to the conclusion that there is no requirement of prior court authorization for retention of an expert witness because an expert is not

a 'professional person' within the meaning of § 327." (quoting *In re Napoleon*, 233 B.R. 910, 913 (Bankr. D.N.J. 1999)); *In re First Am. Health Care of Georgia, Inc.*, 208 B.R. 996, 998 (Bankr. S.D. Ga. 1996) (holding that expert witness's retention was outside the scope of section 327(a) and that expert witness could be employed by debtor's criminal defense counsel and counsel could seek reimbursement of expert witness fees as a pass-through expense); *In re Babcock Dairy Co. of Ohio, Inc.*, 70 B.R. 691, 693 (Bankr. N.D. Ohio 1987) (holding that expert witnesses should not be considered "professionals" because of their tangential relationship to the administration of the estate).

An expert witness is a witness that has "knowledge, skill, experience or education or a combination thereof" that "could assist the trier of fact in understanding the evidence or determining a fact in issue." Hon. Barry Russell, Bankruptcy Evidence Manual § 702:1 (2018 ed.); *see also* Fed. R. Evid. 702 (stating that an expert may be qualified by "knowledge, skill, experience, training, or education" and that an "expert's scientific, technical, or other specialized knowledge [must] help the trier of fact to understand the evidence or to determine a fact in issue"); *United States v. Rivera*, 43 F.3d 1291, 1295 (9th Cir. 1995) ("Expert witnesses may testify if they are qualified and if their testimony will assist the trier of fact in understanding the evidence or determining a fact in issue.") (internal quotation marks and citation omitted). This all applies to Compass's retention by Cravath, as both an economic consultant and potential expert witness on behalf of the Debtors to analyze the losses and assess potential damages arising from the Northern California Wildfires.

As described in further detail in the Turki Declaration, Compass has dedicated significant time, more than a year, on this engagement. Turki Decl. ¶ 10. It has conducted individual evaluations and assessments of the losses and potential damage claims resulting from the North Bay Fires and the Camp Fire. *Id.* ¶¶ 8–10. As a result of that work, Compass has deeply specialized knowledge, skill, and experience about the types of damage claims involved and their magnitude, and, in the event that Compass personnel are asked to testify as an expert witness, that expertise could assist a trier of fact in understanding the evidence or determining a fact in issue.

As described in the Compass Retention Documents, Compass has been providing and will continue to provide the following services to Cravath:

    a.    analyzing the losses and potential damages associated with the Northern California Wildfires;

    b.    assisting in any claims estimation process in the Chapter 11 Cases, including performing economic analysis and data review pertaining to the estimation of potential liability in connection with the Northern California Wildfires;

    c.    performing related empirical analyses;

    d.    providing expert testimony in connection with any of the foregoing services; and

    e.    providing consulting services related to a proceeding initiated by the California Public Utilities Commission to implement the requirement of Senate Bill 901 concerning utility requests for wildfire cost recovery.

App. at 5; Supp. App at 3.

Unlike a "professional person," Compass's role does not involve formulation of strategies or managing the Debtors' estates or their liabilities. Instead, Compass gathers, organizes, and analyzes information and provides such information and analyses to Cravath. Cravath, the Debtors, and the Debtors' other professionals formulate and implement strategy based, in part, on the information and analyses provided by Compass.

For these reasons, Compass respectfully submits that its retention falls outside the scope of section 327(a) and does not require court approval.

## II. Compass's Relationship with FTI Is Not Disqualifying.

Even if the Court requires 327(a) retention as an estate professional, as set forth in the Compass Retention Documents, Compass satisfies the section 327(a) standard and is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.[6]

Public policy favors permitting parties to retain professionals of their choice. *See, e.g., In re Christ's Church of the Golden Rule*, 157 F.2d 910, 911 (9th Cir. 1946); *see also In re Caldor, Inc.*, 193 B.R. 165, 170 (Bankr. S.D.N.Y. 1996).

---

[6] *See* App. at 6–10; Initial Turki Decl. at 6–11; Zumbro Decl. at 4–7.

Section 327 of the Bankruptcy Code permits the retention of professionals who "do not hold or represent an interest adverse to the estate" and that are "disinterested persons." 11 U.S.C. § 327(a).

Courts have defined an "interest adverse to the estate" to mean:

> (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate.

*Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 845 (9th Cir. 2008) (citations omitted). "Generally an 'adverse interest' takes the form of a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant." *Caldor,* 193 B.R. at 171; *AFI Holding*, 530 F.3d at 845. The concept of "adverse interest" has also been articulated in terms of motivation: whether the professional possesses "a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors." *In re Martin,* 817 F.2d 175, 180 (1st Cir. 1987); *Gosser v. Arkison (In re Hammer)*, Nos. WW-06-1373 (MoDJ), 04-22244 (SJS), 2007 WL 7540944, at *6 (9th Cir. B.A.P. Oct. 11, 2007). An actual conflict exists "if there is active competition between two interests, in which one interest can only be served at the expense of the other." *Hume, Smith, Geddes, Green & Simmons LLP v. Hawkins (In re Hummer Transp.)*, No. CV F 13-1640 (LJO), 2014 WL 412534, at *5 (E.D. Cal. Feb. 3, 2014); *In re Git-N-Go, Inc.*, 321 B.R. 54, 58 (Bankr. N.D. Okla. 2004) (quoting *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J. 1989) (same), *aff'd in pertinent part*, 119 B.R. 35 (D.N.J. 1990)).

Courts have recognized that there is an overlap in the "adverse interest" and "disinterested person" prongs of section 327(a). *See, e.g., Martin*, 817 F.2d at 180 ("[T]he twin requirements of disinterestedness and lack of adversity telescope into what amounts to a single hallmark."); *In re Vebeliunas*, 231 B.R. 181, 189 (Bankr. S.D.N.Y. 1999) ("It is well-recognized that the meaning of the phrase 'interest materially adverse' in the definition of a disinterested person overlaps with that of 'interest adverse' in the first prong of § 327(a) and, together, they form one hallmark with which to evaluate whether professionals seeking court-approved retention (or to remain retained by

the estate) meet the absence of adversity requirements embodied in the Bankruptcy Code."). As defined in section 101(14)(C) of the Bankruptcy Code, a "disinterested person" is one that, among other things, "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). When determining whether a professional holds a disqualifying "interest materially adverse" under clause (C) of this definition, courts have generally applied a factual analysis to determine whether an actual conflict of interest exists.

The case law demonstrates clearly that there is no *per se* rule that prohibits Compass from representing the Debtors while FTI represents the Committee. *See, e.g., AFI Holding*, 530 F.3d at 848 (stating that determining whether a party holds an interest that is materially adverse to the bankruptcy estate, so as not to qualify as disinterested under the Bankruptcy Code, necessarily requires an "objective and fact-driven inquiry" based on an examination of "the full panoply of events and elements" or "totality of the circumstances"); *Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.)*, 339 B.R. 730, 739–40 & n.10 (9th Cir. B.A.P. 2006) ("[T]he inquiry into whether the professional holds interests adverse to the estate, is disinterested or otherwise is impaired by conflict of interest (actual or potential) is necessarily case- and fact-specific."); *Caldor,* 193 B.R. at 171 (explaining that whether an "adverse interest" exists is determined on a case-by-case basis).

Applying the facts and circumstances analysis: (a) Compass operates as a separate corporate entity from FTI, with independent management and employees; (b) FTI has not had, and will continue to not have, any supervision or control over any of the work performed by Compass related to the Northern California Wildfires; (c) Compass has confirmed that FTI has no visibility into, or access to, and has not seen to date, any of the work, or the results thereof, that Compass has undertaken for Cravath and the Debtors related to the Northern California Wildfires; and (d) FTI and Compass will not be working together, in any way, on any matters as to which Compass is being retained in the Chapter 11 Cases. *See* App. at 7–8; Initial Turki Decl. at 7. There is no

"dual representation" here. Compass works for Cravath and FTI works for the Committee. Since each of Compass and FTI are separate entities, there is no duality. Both Cravath and the Committee have received, and will continue to receive, unbiased advice from a disinterested key professional. Accordingly, Compass is disinterested and does not hold an interest adverse to the estates in accordance with section 327(a) of the Bankruptcy Code.

### III. Compass's Corporate Separateness and Effective Use of Information Barriers Are a Further Safeguard Against Any Disqualifying Conflict.

As noted above, Compass and FTI are two separate legal entities. Compass's and FTI's information systems and employees are completely separate, and both entities have robust and strict policies concerning confidential information. *See* App. at 7–9; Initial Turki Decl. at 7; Zumbro Decl. at 5–6. They can no more share with each other than they can with unrelated third parties. In fact, Compass and FTI routinely represent different parties in the same cases. *See generally* Turki Decl. Ex. 1, *Retentions of Compass and FTI by Different Parties in the Same Case*. FTI and Compass will not be working together, in any way, on any matters as to which Compass is being retained in the Chapter 11 Cases.

Not only does Compass operate as a separate and independent corporate entity from FTI, but it also has had effective safeguards and information barriers in place for the entire period where Compass has been engaged by the Debtors and FTI has been engaged by the Committee, which has ensured that confidential information has not been exchanged between the personnel working on either matter. Plainly stated, they are separate corporate entities that do not share information.[7] Neither Compass nor FTI have access to one another's files. They share no systems and no employees. Furthermore, there is no overlap in governance. No FTI executives have any governance role with Compass, and no senior professionals of Compass have any role with FTI.

---

[7] As stated in the Engagement Letter, "Compass Lexecon is a separate business unit within FTI Consulting, Inc., is operated as such, and does not recognize conflicts with the other business segments of FTI." *See* Engagement Letter at 3 [Docket No. 1757-1]. The Engagement Letter further provides that "Compass Lexecon will not share any non-public client information with the other divisions within FTI during this engagement or thereafter." *Id.* These are both standard provisions that are generally included in all of Compass's engagements. Turki Decl. ¶ 12.

Turki Decl. ¶ 13. None of the revenue from Compass's engagement by Cravath will be upstreamed to FTI. *Id.*

Even when adverse interests are represented by the same entity, safeguards may be put in place to reduce even the appearance of conflicts, and courts have held that alleged conflicts are not disabling where appropriate safeguards are put in place. *See Caldor,* 193 B.R. at 182; *see also Hempstead Video, Inc. v. Village of Valley Stream,* 409 F.3d 127, 137 (2d Cir. 2008) (rejecting interpretation of Second Circuit precedent that suggested screens and safeguards of client confidences may be categorically rejected as means to isolate and protect against disclosure of client confidences). Indeed, in *Caldor,* the Court noted that the existence of information barriers such as these "augment[]" the propriety of a dual representation. *See Caldor,* 193 B.R. at 182.

Here, it isn't even a matter of erecting safeguards because Compass and FTI are not a single entity. Their information systems and employees are completely separate because they are different legal entities.

Compass has provided, and continues to provide, critical analysis and loss assessment data to Cravath and the Debtors at a crucial juncture in these cases, and its retention is necessary in order to assist Cravath and the Debtors in assessing the potential damage claims against the Debtors arising from the Northern California Wildfires. There are no facts or legal authorities that require this Court to reject Compass's retention. Doing so would be inconsistent with existing law and established practice, and would be unduly prejudicial to the Debtors.

## IV. Information-Sharing Protocol.

In an effort to preserve estate resources, Compass and the Debtors have agreed to enter into an information-sharing protocol with the Committee, FTI, and the TCC. Pursuant to the information-sharing protocol, Compass will share with FTI and the TCC the extensive publicly available data that Compass has aggregated to date during its engagement by Cravath in connection with the Northern California Wildfires. That information-sharing protocol will preserve estate resources and save the Committee, FTI, and the TCC valuable time and cost that would otherwise be spent mining much of the same data.

The data Compass is willing to share is significant. For instance, with regard to just the North Bay Fires, Compass has offered to share publicly available data identified and collected over multiple months from numerous data sources, pertinent to potential losses including (but not limited to) residential property damages, commercial or agricultural property damages, business interruption costs, infrastructure damage, and automobile losses. The parties will do their own analysis and reach their own conclusions based on that data, but there will no longer be a need on the part of the Committee, FTI, or the TCC to duplicate that significant data collection process.

**VI. Response to Questions Raised at Hearing on May 9, 2019.**

In response to the Court's questions at the May 9, 2019 hearing, Compass respectfully submits that it is too early in the case to determine whether the Debtors and the Committee will be presenting adverse expert testimony with respect to the wildfire damage claims. Their respective analyses, which will be undertaken entirely separately and independently, may have positions of overlap and positions of difference. But even if their analyses are different, that does not mean that they will be adversarial. As the Court acknowledges, different experts can come to different conclusions that must be reconciled, and there can be reasonable differences of opinion. Compass is a "truth-seeker" in the sense that their role as an economic consultant and expert is to conduct analyses and inform Cravath and the Debtors' management. However, FTI cannot do that for the Debtors, and FTI's role for the Committee is much broader and stretches to all aspects of these cases.

Regardless, while the Court's questions are good ones, they are also premature. At this stage, there is no way to know what the advisors' ultimate conclusions will be and what role the Court will need to take. That is precisely why Compass is needed to advise and consult with Cravath and the Debtors' management. In any case, the parties will do what they can to share information pursuant to the information protocol discussed above, and work together to streamline any issues brought before the Court and to clearly delineate what guidance they need from the Court at the appropriate times.

# CONCLUSION

For the reasons set forth above, Compass respectfully requests that the Court (a) hold that Compass may be retained by Cravath without the need for Court approval, or (b) in the alternative, grant the relief requested in the Application and such other and further relief as may be just and proper.

Dated: New York, New York
May 17, 2019

Respectfully submitted,

**COMPASS LEXECON, LLC**

By Its Attorneys:
TOGUT, SEGAL & SEGAL LLP

/s/ *Albert Togut*
Albert Togut (*pro hac vice pending*)
(altogut@teamtogut.com)
Amy M. Oden (admitted *pro hac vice*)
(aoden@teamtogut.com)
Amanda C. Glaubach (admitted *pro hac vice*)
(aglaubach@teamtogut.com)
One Penn Plaza, Suite 3335
New York, NY 10119
Tel: 212-594-5000
Fax: 212-967-4258

/s/ *Kyle J. Ortiz*
Kyle J. Ortiz (admitted *pro hac vice*)
(kortiz@teamtogut.com)
One Penn Plaza, Suite 3335
New York, NY 10119
Tel: 212-594-5000
Fax: 212-967-4258

- and -

SCHNADER HARRISON SEGAL & LEWIS LLP
George H. Kalikman
650 California Street, 19th Floor
San Francisco, CA 94108-2736
Direct (415) 364-6734
(gkalikman@schnader.com)

*Attorneys for Compass Lexecon, LLC*