Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| -and- | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| Debtors. | **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 328(A) AND 1103 AND FED. R. BANKR. P. 2014(A) FOR AUTHORIZATION TO RETAIN AND EMPLOY FTI CONSULTING, INC. AS FINANCIAL ADVISOR NUNC PRO TUNC TO FEBRUARY 12, 2019** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Date: May 22, 2019<br>Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>Re: Docket No. 1212 |

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of PG&E Corporation and Pacific Gas and Electric Company (the "Debtors"), by its attorneys, Milbank LLP, hereby submits this Supplemental Memorandum to the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§ 328(A) and 1103 and Fed. R. Bankr. P. 2014(A) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to February 12, 2019* (the "FTI Application") [Docket No. 1212],[1] in response to statements of the Court made at the omnibus hearing held May 9, 2019 (the "May 9 Hearing"). In support of the FTI Application, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Although the Committee understands that the U.S. Trustee intends to withdraw its objection to the FTI Application, such that the Application will be unopposed, the Committee submits this Supplemental Memorandum to address and respond to the issues raised by the Court at the May 9 Hearing with respect to the role of FTI Consulting, Inc. ("FTI") and the purposes of its work in these cases.

2. After careful consideration of the services and expertise required by the Committee to appropriately discharge its fiduciary duties in these cases, the Committee selected FTI as its financial advisor, and subsequently filed an application with the Court to formally retain FTI. FTI is highly qualified as a financial advisor, having served in similar roles in many of the largest and most complex restructurings in the United States. FTI has provided since the early stages of these cases, continues to provide, and is expected to continue providing to the Committee an array of critical services needed to further the Committee's mission of preserving and maximizing the value of the Debtors' estates for the benefit of unsecured creditors, including the Committee's constituents.

3. The U.S. Trustee initially objected to FTI's retention and alleged a conflict of interest between FTI and the Debtors' proposed economic consultants, Compass Lexecon, LLC

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the FTI Application.

("Compass"). The Committee and the Debtors have disclosed that while Compass is a subsidiary of FTI, the two are separate, independent corporate entities operating under firm and established ethical walls that prevent information flow between the two. The Committee and FTI have thoroughly briefed the Court on these issues, as well as FTI's disinterestedness and lack of any interests adverse to the estates, and do not repeat those points here.[2]

4. The Debtors' proposed retention of Compass involves economic consulting services, and the scope of services described entail claims estimation and wildfire damage claims analysis. As a subset of its comprehensive financial advisory services for the Committee, FTI will provide similar services. But in providing such services—independent review and analyses of data, preparation of estimations, and potential expert reports and testimony in support thereof—FTI and Compass will not act as adversaries as that term is understood under the Bankruptcy Code or traditional jurisprudence. They will act as advisors to their respective constituencies and potentially as experts for the Court, providing specialized expertise to the Court in its efforts to reach correct, data-driven factual conclusions.

## RELEVANT BACKGROUND

5. The Committee filed the FTI Application on April 3, 2019 seeking authorization to retain and employ FTI as the Committee's financial advisor, to provide a full range of traditional financial advisory services on all matters arising in these cases and to assist in maximizing the value of the Debtors' estates for all of the Committee's constituents. The Committee engaged FTI to provide a broad array of services, including assisting with the review and analysis of the Debtors' financial related disclosures, liquidity, operating results, proposed motions for relief,

---

[2] *See Statement of the Official Committee of Unsecured Creditors Regarding Compass Lexecon Retention Application* [Docket No. 1856]; *Statement of Debtors With Respect to Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§ 328(a) and 1103 and Fed. R. Bankr. P. 2014(a) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to February 12, 2019* [Docket No. 1560]; *Statement of the Official Committee of Unsecured Creditors in Support of its Application for Authority to Retain and Employ FTI Consulting, Inc. as Financial Advisor Effective as of February 15, 2019* [Docket No. 1568]; *Reply in Support of Application of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to 11 U.S.C. §§328(A) and 1103 and Fed. R. Bankr. P. 2014(A) for Authorization to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to February 12, 2019* [Docket No. 1571].

long-term financial projections, cost/benefit analysis with respect to the affirmation or rejection of various executory contracts and leases, corporate structure, tax issues, and—notably—the claims reconciliation and estimation process, including potential exposure from wildfire damage claims. FTI Application at 3-4. FTI will also assist generally with attending meetings and discussions with various parties in interest, conducting analyses and reviewing materials for confirmation of a plan and disclosure statement in these cases, and rendering general business consulting as the Committee may deem necessary consistent with the role of a financial advisor. *Id*.

6. On April 29, 2019, the Debtors filed an application seeking authorization to retain and employ Compass as the Debtors' economic consultants (the "Compass Application").[3] The Debtors contemplate that Compass will provide services related to claims estimation and wildfire damage claims analysis, including analyzing potential damages from the 2015 Butte fire, 2017 North Bay fires, and 2018 Camp fire, performing economic analysis and data review pertaining to the estimation of potential liability stemming from these fires, preparing related empirical analysis, and providing related expert testimony.[4]

7. The U.S. Trustee filed an objection to the FTI Application on April 17, 2019, and filed an objection to the Compass Application on May 6, 2019. Also on May 6, 2019, the Official Committee of Tort Claimants (the "Tort Committee") filed a statement regarding the Compass Application, alleging that the Debtors and the Committee should be required to share the services of FTI or Compass or, in the alternative, that the Court should determine that Compass is ineligible to be employed by the Debtors due to its relationship with FTI. The Tort Committee did not object or otherwise file a response to the FTI Application.

---

[3] *Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1756].

[4] *See* Compass Application at 5. The Debtors later disclosed that Compass was also engaged to perform certain consulting services related to a proceeding before the California Public Utilities Commission. *See Supplement to Debtors' Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Compass Lexecon, LLC as Economic Consultants to the Debtors Nunc Pro Tunc to Petition Date* [Docket No. 1842].

4

8. On May 17, 2019, counsel to FTI was informed by the U.S. Trustee that it intended to withdraw its objections to both the FTI Application and the Compass Application.

9. As the Court is aware, the hearing on the FTI Application was continued from April 24, 2019 to May 9, 2019, and then again to May 22, 2019. At the May 9 Hearing, the Court invited the Committee and other parties to provide supplemental briefing on two discrete issues:

> **(1) the "particulars of" FTI's and Compass's roles before the Court with regard to claims estimation and wildfire damage claims analysis—the overlapping matter upon which the two entities may find themselves facing each other before the Court**; and
>
> **(2) FTI's, Compass's, and the Court's "purpose" in conducting and reviewing this type of analysis**.

*See* May 9 Hearing Tr. at 10:14-16, 12:7-10, 12:23-13:3.[5]

10. The FTI Application and its supporting papers disclosed that Compass is a wholly-owned subsidiary of FTI, and outlined the corporate separateness of FTI and Compass and the ethical walls they have established. In subsequent filings with the Court, the Committee, FTI, and the Debtors have all explained that FTI and Compass are separate entities that operate independently in all material respects, and that FTI's mere ownership of Compass does not disqualify FTI from employment by the Committee under section 1103(b) of the Bankruptcy Code. This remains true.[6] FTI and Compass are, indeed, separate operating entities, and have established and adhere to ethical walls that prevent information flow between the two regarding their respective engagements.

---

[5] Specifically, the Court queried that with regard to claims estimation and fire damage claims analysis, "what is the purpose of the Court when it's time to look at these big questions? Are these experts more like truth-seekers, or advisors to the Court, or are they more like advocates?" May 9 Hearing Tr. at 10:14-16, 11:5, 12:7-10. The Court requested "some help . . . not only on the particulars of the engagement of one or the other of those two professionals, but on just the conduct of what is the purpose of this kind of an analysis that has to be made?" *Id*. at 12:24-13:3.

[6] The Court has also correctly indicated that the definition of "affiliate" under the Bankruptcy Code is inconsequential to the FTI Application. *See* May 9 Hearing Tr. at 9:17-10:3. Section 101(2) relates only to entities having a relationship with the debtor, and the term "affiliate" does not appear in sections 101(14), 327, 328, or 1103, indicating that it does not apply here.

11.     Because these issues have been thoroughly addressed in prior filings submitted to the Court, and because of the Court's specific requests regarding supplemental briefing at the May 9 Hearing, the Committee herein addresses only the particular information requested regarding FTI's role before the Court with regard to claims estimation and wildfire damage claims analysis,[7] and the relation to Compass's corresponding role.

## ARGUMENT

### A.     FTI's Retention for Traditional Financial Advisory Services Does Not Present Any Adverse Interest.

12.     As a preliminary matter, the restriction on representation of entities having adverse interests may not apply to FTI the same way it applies to attorneys. Section 1103 of the Bankruptcy Code governs the retention of professionals by an official committee. Section 1103(b) requires that some such retained professionals may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. 11 U.S.C. § 1103(b). While section 1103(a) authorizes the retention of "one or more attorneys, accountants, or other agents," section 1103(b) refers only to "an attorney or accountant" employed to represent an official committee; and only section 1103(b) refers to the restriction on representation of entities having adverse interests. This distinction is notable—because section 1103(b) does not refer to "other agents," such persons are theoretically eligible for employment by a committee even if they also represent an entity having an adverse interest in connection with the case. *See* 7 Collier on Bankruptcy § 1103.04 (16th ed.); *see also In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 579 (Bankr. D. Utah 1985).

13.     This distinction between lawyers and non-lawyers is not surprising in light of the applicable state professional regulations that govern lawyers and accountants in addition to the Bankruptcy Code. These applicable codes of professional conduct—such as state codes of professional responsibility for attorneys and the Rules of Professional Conduct of the American Institute of Certified Public Accountants for accountants—require that lawyers and accountants

---

[7]     As discussed *supra*, FTI will provide traditional financial advisory services on all matters arising in these cases to the Committee in addition to its work on claims estimation and wildfire damage claims.

6

evaluate their actions in light of these professional codes. *See In re Caldor, Inc.-NY,* 193 B.R. 165, 176 (Bankr. S.D.N.Y. 1996) (stating that professionals must police their actions under the Code of Professional Responsibility for attorneys and under the Rules of Professional Conduct of the American Institute of Certified Public Accountants for accountants). The applicable professional code for attorneys is also used by courts to evaluate if such attorneys have a conflict under the Bankruptcy Code. *Id.* at 178. Notably, the bankruptcy court in *Caldor* applied no similar professional code for the financial advisors which belonged to the same firm as the accountants in the case.

14. Regardless, the retention of FTI does not present an adverse interest. An "adverse interest" is a competing economic interest which diminishes the value of the estate or creates an actual dispute in which the estate is a rival claimant. *See Caldor*, 193 B.R. at 171. The inquiry of whether there is an "adverse interest" should focus on "whether the Professionals' representation of the [the retaining party] will create 'either a meaningful incentive to act contrary to the best interest of the [second retaining party]—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one.'" *Id.* (internal citation omitted); *see also In re Hammer*, 2007 WL 7540944, at *5 (B.A.P. 9th Cir. Oct. 11, 2007) (defining an adverse interest as "the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that creates a bias against the estate") (internal quotation and citation omitted); *In re Quality Beverage Co., Inc.*, 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995) (stating that a professional has an adverse interest "if the professional possesses or asserts any economic interest that would tend to lessen the value of the bankruptcy estate," or that would create a situation in which the estate is a rival claimant, or would render a bias against the estate).

15. Here, there is no reason for FTI to act contrary to the best interests of the estate or the Committee by virtue of the fact that Compass is providing services to the Debtors. The constituencies represented by FTI and Compass share the common goal of maximizing the value of the Debtors' estates; neither possesses an interest that would lessen the value of the bankruptcy

7

estate. In fact, FTI owes a fiduciary *obligation* to the Committee, which shares the Debtors' goals of maximizing the value of the estates. No evidence exists in this or any previous case that FTI has not and will not adhere to this obligation, and the mere fact that FTI will provide services to the Committee in furtherance of its fiduciary duties does not render it *adverse* to the estates.

**B.    FTI's Retention for Potential Expert Services Does Not Present an Adverse Interest.**

16.    As to claim estimation and wildfire damage claims, FTI will provide the Committee with "assistance in the review of the claims reconciliation and estimation process, including potential exposure from wildfire damage claims," and also may provide "expert reports/testimony on case issues as required by the Committee." FTI Application at 4.

17.    The work to be performed by FTI regarding the wildfire damage claims will include review and analysis of historical claim information and data that has been, and will be, made available to FTI and other professionals retained in these cases by the Debtors and the Tort Committee; calculation and determination of claim estimations and amounts based on this information and data, using industry-accepted methodologies and through the application of parameters, if necessary, based on accepted measures; and the provision of these results to the Committee[8] and to the Court as the Court and the parties deem necessary. To the extent Compass performs these or similar services for the Debtors, FTI and Compass may find themselves discussing the matter or presenting the matter to the Court for a determination.

18.    The nature of this work, however, will *not* create an adversarial relationship between FTI and Compass. Instead, should FTI find itself presenting such estimations or other issues related to wildfire damage claims to the Court for a determination, FTI will operate as an expert (through a specific individual), providing the Court with analyses of facts, data, and information, and assisting the Court in reaching correct, data-driven conclusions and estimations. Notably, the considerations underlying the attorney-client relationship and duties "do not apply to

---

[8]    FTI, as a professional retained by the Committee, owes fiduciary duties to the Committee to review and distill the information and data made available to the Committee, and to develop its own estimations, independent of those developed by other experts in these cases.

8

experts," as experts "*do not serve as advocates, but as sources of information*." *See E.E.O.C. v. Locals 14 & 15, Int'l Union of Operating Eng'rs*, 1981 WL 163, at *4 (S.D.N.Y. Feb. 11, 1981) (emphasis added) ("Their role is to assist the parties and, if they testify, to help the trier of fact to understand the relevant evidence."). Indeed, "*experts perform very different functions in litigation than do attorneys. Experts are not advocates in the litigation but sources of information and opinions*." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (internal quotations and citation omitted) (emphasis added); *see also Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1026 (S.D. Cal. 2004) ("*An expert does not advocate during litigation but acts as a source of information and opinion*.") (quoting *U.S. v. Salamanca*, 244 F. Supp. 2d 1023, 1025 (D.S.D. 2003)) (emphasis added).

19. In this expert capacity, FTI and Compass would *not* operate as client advocates or adversaries. Rather, expert witnesses serve as "*advocate[s] of the truth with testimony to help the court and the jury reach the ultimate truth in a case*." *See Selvidge v. United States*, 160 F.R.D. 153, 156 (D. Kan. 1995) (emphasis added); *see also E.E.O.C. v. Locals 14 & 15*, 1981 WL 163, at *4; *Richard v. Hinshaw*, 2013 WL 6632122, at *5 (D. Kan. Dec. 17, 2013) ("*[T]he expert's role is to help [the Court] understand subjects with which [it is] not familiar. The role is professionally neutral*." (emphasis added)).

20. Indeed, a testifying expert witness "has a duty to the court to expound his or her own opinion *essentially independent of influence from the client*." Weston Anson, *The Multiple Roles and Types of Experts*, American Bar Association (Aug. 15, 2017), https://www.americanbar.org/groups/gpsolo/publications/gpsolo_ereport/2013/may_2013/multiple_roles_types_expert_witnesses/ (emphasis added).

21. With respect to potential conflicts in the engagement of expert services, courts have explicitly recognized that because of the differing roles of attorneys and experts, the issues implicated in attorney-client engagements are fundamentally different from those in the retention of experts. *See E.E.O.C. v. Locals 14 & 15*, 1981 WL at *4; *see also Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1086 (C.D. Cal. 2001) ("[T]he only similarity between experts and lawyers is that the parties purchase the services of each."). The expert role entails disinterestedness in the

9

ultimate outcomes that flow from the information provided by the expert witness, and thus the expert has no purpose or intention to persuade the Court on any issue. *See Van Blargan v. Williams Hosp. Corp.*, 754 F. Supp. 246, 249 (D.P.R. 1991) ("***An expert witness should be an advocate of the truth with testimony to help the jury and the Court reach the ultimate truth in a case***, which is the basis of any verdict." (emphasis added)).

22. What is more, the Court will always have the opportunity to review the qualifications of FTI's expert to act as an expert witness if and when such time comes, as parties in these cases can challenge and seek to exclude such testimony. As such, even following approval of the FTI Application, the Court will continue to act as a gatekeeper to consider and exclude unreliable or otherwise flawed expert testimony.

## **CONCLUSION**

23. Given that FTI and Compass operate as separate entities and maintain robust ethical safeguards, that the two are not adversarial, and that to the extent the two may "face" each other before the Court to present claims estimation evidence, they will operate in such capacity as experts—and not as adversaries or advocates[9]—the Committee's retention of FTI should be approved.

DATED: May 17, 2019

MILBANK LLP

*/s/ Thomas R. Kreller*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*

---

[9] The potential solvency of the Debtors' estates further supports the conclusion that FTI does not have adverse interests in these cases, particularly as neither FTI nor Compass would have a competing economic interest which could diminish the value of the estate. *See Caldor*, 193 B.R. at 171. FTI would have no meaningful economic incentive to act contrary to the best interests of the Committee.