1
Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
2
MILBANK LLP, 55 Hudson Yards
New York, New York 10001-2163
3

4
Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
5
MILBANK LLP, 2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
6

7
*Counsel for the Official Committee of Unsecured Creditors*

8
Robert A. Julian (SBN 99469)
Cecily A. Dumas (SBN 111449)
9
BAKER & HOSTETLER LLP, 1160 Battery Street, Suite 100
San Francisco, CA 94111
10

11
Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
12
BAKER & HOSTETLER LLP, 11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
13

14
*Counsel for Official Committee of Tort Claimants*

15
**UNITED STATES BANKRUPTCY COURT**
16
**NORTHERN DISTRICT OF CALIFORNIA**
17
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| **- and -** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** **Debtors.** | **STIPULATION BETWEEN THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE OFFICIAL COMMITTEE OF TORT CLAIMANTS WITH RESPECT TO RETENTION OF EPIC CORPORATE RESTRUCTURING, LLC [Re: Dkt Nos. 1214, 1705]** |
| . Affects PG&E Corporation ☐ Affects Pacific Gas and Electric Company ☑ Affects both Debtors *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | [No Hearing Requested] |

28
   This stipulation and agreement for order (the "Stipulation") is entered into by the:
(i) Official Committee of Unsecured Creditors (the "UCC"), on the one hand, and (ii) Official

Committee of Tort Claimants (the "TCC," and together with the UCC, the "Parties"), each appointed in the jointly administered chapter 11 cases of the above-captioned debtors in possession, on the other hand. The Parties hereby stipulate and agree as follows:

**RECITALS**

A. On April 3, 2019, the UCC filed its *Application for Entry of Order Approving Retention and Employment of Epiq Corporate Restructuring, LLC as Information Agent for the UCC,* Nunc Pro Tunc *to February 12, 2019* (the "Application") [Docket No. 1214], pursuant to which the UCC sought to employ Epiq Corporate Restructuring, LLC ("Epiq") pursuant to the terms of a services agreement between the UCC and Epiq (the "UCC Services Agreement"). Under the terms of the UCC Services Agreement, Epiq agreed to: (i) establish and maintain a website for the UCC and provide technology and communications-related services (the "Website Services"); and (ii) prepare and serve required notices and pleadings on behalf of the UCC in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the UCC and/or the Court, including, if applicable, all notices, orders, pleadings, publications and other documents as the UCC and/or the Court may deem necessary or appropriate (the "Notice Services" and collectively with the Website Services, the "Services"). Epiq is to be compensated for performing the Services at the hourly rates as set forth in the UCC Services Agreement.

B. As set forth in the Application, the UCC proposed that the cost of the Services be paid from the Debtors' estates pursuant to section 156(c) of the Judicial Code. Prior to the selection of Epiq, the UCC had conducted a competitive bidding process, and the UCC respectfully submitted that Epiq's rates are competitive and comparable to the rates charged by its competitors for similar services. In connection with the Application, Epiq also submitted the Declaration of Sidney Garabato, in which Epiq asserted that it does not represent any other entity having an adverse interest in connection with the Debtors' chapter 11 cases.

C. A hearing was held before the Court on the Application on April 24, 2019 (the "Hearing"). At the Hearing, the Court approved Epiq's retention by the UCC[1] and indicated that the Parties should coordinate efforts and discuss, in an effort to save costs, whether it was possible to have one party provide the Website Services to both of the Parties.

D. Since the Hearing, the Parties have engaged in good faith discussions with one another and also with Epiq and have reached an agreement whereby Epiq has agreed to provide the Services to both the TCC and UCC on identical economic terms.

E. Pursuant to this Stipulation, Epiq and the TCC have entered into a separate services agreement (the "TCC Services Agreement" and together with the UCC Services Agreement, the "Agreements") on economic terms identical to the UCC Services Agreement. A copy of the: (i) UCC Services Agreement (which was previously filed as Exhibit C to the

---

[1] The Court approved the UCC's retention of Epiq pursuant to the *Order Approving Application of Official Committee of Unsecured Creditors for Entry of Order Approving Retention and Employment of Epiq Corporate Restructuring, LLC as Information Agent for the Committee Nunc Pro Tunc to February 12, 2019* (the "Initial Order") [Docket No. 1705].

Application); and (ii) TCC Services Agreement, are attached hereto as **Exhibits A** and **B**, respectively.

F.    Pursuant to the Agreements, Epiq will establish and maintain websites for both the UCC and TCC. It has been determined that, since the UCC's website has already been established, it is more cost effective to establish a separate and independent website for the TCC. Epiq has also agreed to provide the Notice Services to the TCC to the extent the TCC determines to utilize such services.

H.    The Parties have attached a proposed revised form of order granting the relief requested as **Exhibit C** (the "Proposed Order") authorizing the retention of Epiq by each of the TCC and UCC. The Proposed Order was provided to counsel to the Debtors and the Office of the United States Trustee prior to the filing of this Stipulation.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THROUGH FULLY SET FORTH HEREIN, IT IS HEREBY STIPULATED AND AGREED, BY AND BETWEEN THE PARTIES, THROUGH THE UNDERSIGNED, AND THE PARTIES JOINTLY REQUEST THE COURT ORDER THAT:**

1.    Epiq be retained by each of the: (i) TCC, pursuant to the TCC Services Agreement, and (ii) UCC, pursuant to the UCC Services Agreement.

Dated: May 17, 2019                                    Dated: May 17, 2019

**MILBANK LLP**                                          **BAKER & HOSTETLER LLP**

*/s/ Thomas R. Kreller*                              */s/ Jorian Rose*
DENNIS F. DUNNE                                       JORIAN ROSE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee*            *Counsel for the Official Committee*
*of Unsecured Creditors*                            *of Tort Claimants*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Exhibit A</u>**

[UCC SERVICES AGREEMENT]



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between Epiq Corporate Restructuring, LLC ("Epiq") and The Official Committee of Unsecured Creditors of the Pacific Gas & Electric Company., et.al. (the "Client") appointed in the jointly administered Chapter 11 cases of Pacific Gas & Electric Company and the other debtors and debtors in possession (collectively, the "Debtors") pending in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), Case No. 19-30088, filed as of January 29, 2019.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

### 1. Services.

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule attached hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule attached hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for each such Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

### 2. Term.

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq; (b) by Epiq, on ninety (90) days' prior written notice to Client; or (c) automatically upon dissolution of the Client.

### 3. Charges.

3.1 For the Services and materials furnished by Epiq under this Agreement, the Client shall request payment by the Debtor of the fees, charges and costs set forth in the Pricing Schedule. Epiq will provide an invoice to the Debtors with a copy to the Client monthly. All invoices shall be due and payable by the Debtors' estates upon receipt.

1



3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2020. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to the Client and the Debtor of such proposed increases.

3.3 Client agrees to request payment by the Debtors' estates for all materials necessary for performance by Epiq of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4 Client shall request payment or reimbursement by the Debtors' estates of all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5 Client shall request payment by the Debtors' estates to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6 In the event of termination pursuant to Section 2 hereof, the Debtors' estates shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7 In no event shall the Client, any member of or professional for the Client be liable in any capacity for any of Epiq's fees, expenses, costs, damages, indemnity or other liabilities in connection with this engagement.

## 4. Confidentiality.

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

2



**5. Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Client (collectively, the "Property"). Charges paid by the Debtors' estates do not vest in Client or the Debtor any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

**6. Disposition of Data.**

6.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver the Client Data to Epiq. Client has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2   Any Client Data, programs, storage media or other materials furnished by the Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full. The Debtors' estates shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to request payment by the Debtors' estates of reasonable expenses incurred by Epiq as a result of the disposition of the Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Material or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice if it intends to dispose of such data and media.

**7. Indemnification.**

The Debtors shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including,

3



without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client, Debtors and Epiq shall notify each other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which such party is aware with respect to the services provided by Epiq under this Agreement. All requests of Epiq for payment of indemnity pursuant to this Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Bankruptcy Court to ensure that payment of such indemnity conforms to the terms of this Agreement and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Epiq be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct or fraud.

**8. Limitation of Liability**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



### 9. Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

### 10. Confidential On-Line Workspace

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its Services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

### 11. General

11.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach shall be heard and determined by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in the city and county of New York, to whose jurisdiction Client and Epiq irrevocably submit.

11.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

5



11.7 Neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



11.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

<u>If to Epiq Systems</u>:

Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Floor
New York, New York 10017
Attn:  Robert A. Hopen

<u>If to Client</u>:

Official Committee of Unsecured Creditors of Pacific Gas & Electric Company., et.al.
Milbank LLP
55 Hudson Yards
New York, NY 10001-2163
Attn: Craig M. Price, Esq.
Matthew R. Koch, Esq.
Parker J. Milender, Esq.

<u>If to Debtors</u>:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY   10153
Attn: Stephen Karotkin, Esq.

11.11 Invoices should be delivered to the Debtors, with a copy to the Client:

<u>If to Debtors</u>:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY   10153
Attn: Stephen Karotkin, Esq.
Email: stephen.karotkin@weil.com

Official Committee of Unsecured Creditors of Pacific Gas & Electric Company., et.al.
Milbank LLP
55 Hudson Yards
New York, NY 10001-2163
Attn: Craig M. Price, Esq.
Matthew R. Koch, Esq.
Parker J. Milender, Esq.

Email:          CPrice@milbank.com;

7



MKoch@milbank.com
PMilender@milbank.com

11.12   The "Effective Date" of this Agreement is March 7, 2019.

8



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

Name: Robert A. Hopen
Title: President

**PENSION BENEFIT GUARANTY CORPORATION**
Member of the Committee

By
Name: Cynthia Wong
Corporate Finance & Restructuring

9



# SERVICES SCHEDULE

## WEBSITE SERVICES

➢ Create and maintain a website with general case information provided by the Committee, key documents, claim search function, a mirror of ECF case docket, and other case information as requested by Client.

➢ Website will also contain links to the Debtors' claims agent's website, the Debtors' corporate website, the Bankruptcy Court for the Northern District of California and the Office of the United States Trustee.

➢ Provide email functionality whereby viewers may send email inquiries to the Committee to a designated email address.

## NOTICING

➢ Prepare and serve required notices in accordance with case management or other relevant procedures.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update noticing database to reflect undeliverable or changed addresses.

➢ Coordinate publication of notices in periodicals and other media.

## MISCELLANEOUS

➢ Provide such other noticing and related administrative services as may be requested from time to time.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

10



# EPIQ SYSTEMS PRICING SCHEDULE

## PROFESSIONAL SERVICES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $20.00 – $36.00 |
| IT / Programming | $52.00 – $68.00 |
| Case Managers | $56.00 – $132.00 |
| Consultants/ Directors/Vice Presidents | $128.00 – $152.00 |

## NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFFERED RATES |
| E-Mail Noticing | WAIVED |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.09 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | $100 per month |
| CD- ROM (Mass Document Storage) | $5.00 per CD |

---

[1] Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

1

2 **<u>Exhibit B</u>**

3 [TCC SERVICES AGREEMENT]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between Epiq Corporate Restructuring, LLC ("Epiq") and Official Committee of Tort Claimants of the Pacific Gas & Electric Company., et.al. (the "Client") appointed in the jointly administered Chapter 11 cases of Pacific Gas & Electric Company and the other debtors and debtors in possession (collectively, the "Debtors") pending in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), Case No. 19-30088, filed as of January 29, 2019.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1. Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule attached hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule attached hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for each such Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2. Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq; (b) by Epiq, on ninety (90) days' prior written notice to Client; or (c) automatically upon dissolution of the Client.

**3. Charges.**

3.1 For the Services and materials furnished by Epiq under this Agreement, the Client shall request payment by the Debtor of the fees, charges and costs set forth in the Pricing Schedule. Epiq will provide an invoice to the Debtors with a copy to the Client monthly. All invoices shall be due and payable by the Debtors' estates upon receipt.

1



3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2020. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to the Client and the Debtor of such proposed increases.

3.3 Client agrees to request payment by the Debtors' estates for all materials necessary for performance by Epiq of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4 Client shall request payment or reimbursement by the Debtors' estates of all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5 Client shall request payment by the Debtors' estates to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6 In the event of termination pursuant to Section 2 hereof, the Debtors' estates shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7 In no event shall the Client, any member of or professional for the Client be liable in any capacity for any of Epiq's fees, expenses, costs, damages, indemnity or other liabilities in connection with this engagement.

3.8 To the extent services are performed for both Client and the Official Unsecured Creditors' Committee ("UCC"), Epiq shall divide any such charges equally between Client and the UCC. Under no circumstances shall Epiq charge twice for services performed for both Client and the UCC.

## 4. **Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized

2



acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

## 5. Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Client (collectively, the "Property"). Charges paid by the Debtors' estates do not vest in Client or the Debtor any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

## 6. Disposition of Data.

6.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver the Client Data to Epiq. Client has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2   Any Client Data, programs, storage media or other materials furnished by the Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full. The Debtors' estates shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to request payment by the Debtors' estates of reasonable expenses incurred by Epiq as a result of the disposition of the Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Material or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice if it intends to dispose of such data and media.

## 7. Indemnification.

3



The Debtors shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client, Debtors and Epiq shall notify each other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which such party is aware with respect to the services provided by Epiq under this Agreement. All requests of Epiq for payment of indemnity pursuant to this Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Bankruptcy Court to ensure that payment of such indemnity conforms to the terms of this Agreement and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Epiq be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct or fraud.

## 8. Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 9. Confidential On-Line Workspace

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its Services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 10. General

10.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

10.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

4



10.3 This Agreement shall be governed by the laws of the State of California, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach shall be heard and determined by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any California state or federal court of competent jurisdiction sitting in the city and county of California, to whose jurisdiction Client and Epiq irrevocably submit.

10.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

10.5 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

10.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

10.7 Neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

10.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

10.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

5



10.10 Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

If to Epiq:

Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Floor
New York, New York 10017
Attn: Robert A. Hopen

If to Client:

Official Committee of Tort Claimants of Pacific Gas & Electric Company., et.al.

Baker & Hostetler, LLP
45 Rockefeller Plaza
New York, NY 10111-0100
Attn: Jorian L. Rose, Esq.

SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Attn: Jimmy D. Parrish, Esq.

If to Debtors:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153
Attn: Stephen Karotkin, Esq.

10.11 Invoices should be delivered to the Debtors, with a copy to the Client:

If to Debtors:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153
Attn: Stephen Karotkin, Esq.
Email: stephen.karotkin@weil.com

Official Committee of Tort Claimants of Pacific Gas & Electric Company., et.al.
Baker & Hostetler, LLP
45 Rockefeller Plaza
New York, NY 10111-0100
Attn: Jorian L. Rose, Esq.

6



SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Attn: Jimmy D. Parrish, Esq.
Email: jrose@bakerlaw.com
Email: jparrish@bakerlaw.com

10.12  The "Effective Date" of this Agreement is ___May 16___, 2019.

7



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

Name:  Robert A. Hopen
Title:    President


**CLIENT**

By:

Name:  Karen M. Lockhart
Title:    Chair, Official Committee of Tort Claimants

8



# SERVICES SCHEDULE

## WEBSITE SERVICES

➢ Create and maintain a website with general case information provided by the Committee, key documents, claim search function, a mirror of ECF case docket, and other case information as requested by Client.

➢ Website will also contain links to the Debtors' claims agent's website, the Debtors' corporate website, the Bankruptcy Court for the Northern District of California and the Office of the United States Trustee.

➢ Provide email functionality whereby viewers may send email inquiries to the Committee to a designated email address.

## NOTICING

➢ Prepare and serve required notices in accordance with case management or other relevant procedures.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update noticing database to reflect undeliverable or changed addresses.

➢ Coordinate publication of notices in periodicals and other media.

## MISCELLANEOUS

➢ Provide such other noticing and related administrative services as may be requested from time to time.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

9



# EPIQ SYSTEMS PRICING SCHEDULE

## PROFESSIONAL SERVICES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $20.00 – $36.00 |
| IT / Programming | $52.00 – $68.00 |
| Case Managers | $56.00 – $132.00 |
| Consultants/ Directors/Vice Presidents | $128.00 – $152.00 |

## NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFFERED RATES |
| E-Mail Noticing | WAIVED |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.09 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | $100 per month |
| CD- ROM (Mass Document Storage) | $5.00 per CD |

---

[1]  Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

10

1
2

**Exhibit C**

3
[PROPOSED ORDER]

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  Dennis F. Dunne (admitted *pro hac vice*)
   Samuel A. Khalil (admitted *pro hac vice*)
2  MILBANK LLP, 55 Hudson Yards
   New York, New York 10001-2163
3
4  Gregory A. Bray (SBN 115367)
   Thomas R. Kreller (SBN 161922)
5  MILBANK LLP, 2029 Century Park East, 33rd Floor
   Los Angeles, CA 90067
6
7  *Counsel for the Official Committee of Unsecured Creditors*

8  Robert A. Julian (SBN 99469)
   Cecily A. Dumas (SBN 111449)
9  BAKER & HOSTETLER LLP, 1160 Battery Street, Suite 100
   San Francisco, CA 94111
10
11 Eric E. Sagerman (SBN 155496)
   Lauren T. Attard (SBN 320898)
12 BAKER & HOSTETLER LLP, 11601 Wilshire Blvd., Suite 1400
   Los Angeles, CA 90025-0509
13
14 *Counsel for Official Committee of Tort Claimants*

15          **UNITED STATES BANKRUPTCY COURT**

16          **NORTHERN DISTRICT OF CALIFORNIA**

17              **SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| - and - | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **AMENDED ORDER APPROVING RETENTION AND EMPLOYMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS INFORMATION AGENT FOR THE COMMITTEES** |
| ☐   Affects PG&E Corporation | |
| ☐   Affects Pacific Gas and Electric Company | |
| ☑   Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

Upon the application (the "Application") of the Official Committee of Unsecured Creditors (the "UCC") for entry of an order authorizing the UCC to retain and employ Epiq Corporate Restructuring, LLC (together with its affiliates and subcontractors, "Epiq") as Information Agent for the UCC *nunc pro tunc* to February 12, 2019, and the Court having reviewed the Application and considered the Declaration of Sidney Garabato (the "Garabato Declaration") in connection with the Application and the Stipulation (the "Stipulation")[2] between the UCC and the Official Committee of Tort Claimants (the "TCC") with respect to the retention of Epiq, the Court hereby finds as follows: (a) the Court has jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; (b) consideration of the Application and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) venue of this matter is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (d) due and proper notice of the Application was provided, and no other or further notice need be provided; and (e) the legal and factual bases set forth in the Application and the Declaration establish just cause for the relief granted herein. Now, therefore, upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1. The Application is granted as set forth herein, *nunc pro tunc* to February 12, 2019 with respect to the UCC and February 15, 2019 with respect to the TCC.

2. Pursuant to section 1103(a) of the Bankruptcy Code, the UCC is authorized to employ and retain Epiq as its Information Agent in accordance with the terms and conditions of the UCC Services Agreement.

3. Pursuant to section 1103(a) of the Bankruptcy Code, the TCC is also authorized to employ and retain Epiq, as its Information Agent in accordance with the terms and conditions of the TCC Services Agreement.

---

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Stipulation.

4.   Epiq is authorized to establish and maintain each of the UCC's and TCC's websites and provide technology and communications-related services.

5.   Epiq will prepare and serve required notices and pleadings on behalf of each of the UCC and TCC as may be requested in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the UCC and TCC, respectively, and/or the Court, including, if applicable, all notices, orders, pleadings, publications and other documents as the UCC, TCC and/or the Court may deem necessary or appropriate.

6.   Without further order of the Court, the Debtors are authorized to compensate Epiq in accordance with the terms and conditions of the UCC Services Agreement and the TCC Services Agreement, as applicable, upon Epiq's submission to the Debtors of invoices summarizing, in reasonable detail, the services rendered, and expenses incurred in connection therewith and without the necessity for Epiq to file an application for compensation or reimbursement with the Court.

7.   To the extent services are performed for both the TCC and the UCC, Epiq shall allocate any such charges equally between the TCC and the UCC for billing purposes.  Under no circumstances shall Epiq charge the Debtors twice for services performed for both the TCC and the UCC.

8.   Notwithstanding any term in the UCC Services Agreement or TCC Services Agreement to the contrary, no limitation of liability under either the UCC Services Agreement or TCC Services Agreement shall apply during these chapter 11 cases.

9.   Epiq will serve monthly invoices on the Notice Parties (as defined in the *Order Pursuant to 11 U.S.C. §§ 331 and 501(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 701]).

10. The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to either the UCC Services Agreement, the TCC Services Agreement or monthly invoices; provided that the parties may seek resolution of the matter from the Court if resolution is not achieved.

11. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq incurred in connection with providing services pursuant to both the UCC Services Agreement and TCC Services Agreement are to be treated as an administrative expense of the Debtors' estates.

12. In the event of any inconsistency between the UCC Services Agreement, the TCC Services Agreement, the Application, the Stipulation and this Order, this Order shall govern.

13. The UCC, TCC and Epiq are each authorized to take all actions necessary to effectuate the relief granted in this Order.

14. Notwithstanding any term in the UCC Services Agreement and/or TCC Services Agreement to the contrary, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

15. This Order shall supersede *Order Approving Application of Official Committee of Unsecured Creditors for Entry of Order Approving Retention and Employment of Epiq Corporate Restructuring, LLC as Information Agent for the Committee Nunc Pro Tunc to February 12, 2019* [Docket No. 1705] in its entirety.

** END OF ORDER **