WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**REPLY IN SUPPORT OF CORRECTED MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 1121(d) TO EXTEND EXCLUSIVE PERIODS**<br><br>Re: Docket Nos. 1795, 1797, 2006, 2008, 2009, 2017, and 2019<br><br>Date: May 22, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

PG&E Corporation ("**PG&E Corp**.")[1] and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Reply (the "**Reply**") in support of the *Corrected Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) to Extend Exclusive Periods* [Dkt. No. 1797] (the "**Exclusivity Motion**")[2] and in response to the (i) *Limited Objection of Governor Gavin Newsom to Corrected Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) to Extend Exclusive Periods* [Dkt. No. 2006] (the "**Governor's Limited Objection**"); (ii) *Limited Objection of the Official Committee of Unsecured Creditors to Debtors' Corrected Motion Pursuant to 11 U.S.C. § 1121(d) to Extend Exclusive Periods* [Dkt No. 2009] (the "**UCC Limited Objection**"); (iii) *Objection of the Official Committee of Tort Claimants to Corrected Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) to Extend Exclusivity Periods* [Dkt. No. 2017] (the "**TCC Objection**"); and (iv) *Objection by the Singleton Law Firm Fire Victim Claimants to PG&E's Exclusivity Motion* [Dkt. No. 2019] (the "**SLF Objection**," and together with the Governor's Limited Objection, the UCC Limited Objection, and the TCC Objection, the "**Objections**")[3], and respectfully represent as follows:

---

[1] Capitalized terms used but not otherwise defined herein have the meanings assigned to them in the Exclusivity Motion.

[2] An otherwise identical version of the Exclusivity Motion was filed inadvertently without signature [Dkt. No. 1795].

[3] In addition to the Objections, the Ad Hoc Committee of Senior Unsecured Noteholders filed a *Statement of the Ad Hoc Committee of Senior Unsecured Noteholders to Corrected Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) to Extend Exclusive Periods* [Dkt. No. 2008] ("**Statement of the Ad Hoc Noteholders**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Preliminary Statement**

Recognizing the obvious complexity and early stage of these Chapter 11 Cases, and the incontrovertible fact that certain fundamental issues must be addressed before any feasible and confirmable chapter 11 plan can be negotiated and filed, the Debtors filed the Exclusivity Motion to extend the Exclusive Periods for approximately 6 months. These fundamental issues include, among others, the aggregate amount of the Debtors' liability for wildfire claims to be addressed in a plan of reorganization and, as plainly recognized by the Governor of California, obtaining the necessary regulatory and legislative relief that all constructive parties in interest in these cases realize is essential to any feasible chapter 11 plan and the Debtors' long-term viability.

Indeed, as the Governor's Limited Objection notes, the goal is to enact legislation "this summer that will reshape the existing policy and regulatory frameworks" that will be key to the chapter 11 process and the Debtors' successful emergence from Chapter 11. PG&E shares the Governor's goal of a fair and expeditious resolution of the Chapter 11 Cases and is hopeful the necessary legislative and regulatory reform will be achieved in the Governor's timeframe. One thing, however, is absolutely clear – the time simply is not ripe for the Debtors to negotiate and file a chapter 11 plan, and the Debtors should be granted the requested extension of the Exclusive Periods so that they will have the full and fair opportunity contemplated by Congress in enacting section 1121 of the Bankruptcy Code.

The following responsive pleadings have been filed to the Exclusivity Motion:

A. Limited Objection of the Official Committee of Unsecured Creditors (the "**UCC**") – (extension should be limited to four months);

B. Statement of the Ad Hoc Group of Noteholders – (no objection to Debtors' requested extension)

C. Limited Objection of Governor Gavin Newsom – (extension should be limited to 75 days);

D. Objection of the Official Committee of Tort Claimants (the "**TCC**") – (no extension should be granted); and

E. Objection by the Singleton Law Firm Fire Victim Claimants – (no extension should be granted).

Notably, the UCC, which is a fiduciary to a constituency of prepetition unsecured creditors holding more than $22 billion in claims against the Debtors, the Ad Hoc Group of Noteholders, which

represents the interests of a majority of the Utility's approximately $20.5 billion in funded debt, and the Governor, who represents the interests of all the citizens of the State of California (including the Debtors' 16 million customers), all understand the complexities and realities of these Chapter 11 Cases and have acknowledged that an extension of the Exclusive Periods is warranted.

Without any basis, the TCC opposes any extension of the Exclusive Periods, once again citing irrelevant prepetition history, attacking the Debtors' management and Board, and baselessly asserting that the members of the Debtors' Board will breach their fiduciary duties.

As demonstrated in the Exclusivity Motion and the facts of these cases, cause clearly exists for an extension of the Exclusive Periods – indeed, the size and complexity of these cases alone warrant a reasonable initial extension as contemplated by section 1121. The Debtors are moving these Chapter 11 Cases forward as expeditiously as possible, particularly given the complexities and plan gating issues involved, and are keenly focused on addressing and resolving their liabilities fairly and equitably, and ensuring their long-term ability to deliver safe and reliable service to their 16 million customers.

The requested extension of the Exclusive Periods recognizes the circumstances of these Chapter 11 Cases and what must be accomplished before a comprehensive plan formulation and negotiation process can take place in earnest. Granting a short extension or terminating exclusivity ignores the reality of these cases and will only serve to undermine the business stability that the Debtors have been able to achieve, create an unnecessary crisis in confidence in the Debtors' business partners, and jeopardize, rather than promote, the successful conclusion of these Chapter 11 Cases and distributions to wildfire claimants.

### The Objections Should be Overruled

The primary thrust of the TCC's objection and what the Governor raises as well is the Debtors' historical prepetition conduct. That, however, has no relevance as to whether cause exists to extend the exclusive periods. Indeed, all of the relevant factors considered by the Courts in addressing motions under section 1121 focus on postpetition activities. *See* Exclusivity Motion at pp 9-10.

Further, there is no basis to attack the integrity of the new Board, Mr. Johnson, the new CEO, or their commitment to safety and to the appropriate and successful administration of these cases. Several of the new board members have significant industry and safety experience as detailed in the Debtors'

public filings. Others have substantial restructuring expertise that is directly relevant to one of the largest and most complex chapter 11 cases in recent United States history.

Moreover, Mr. Johnson, the Debtors' newly hired CEO, plainly demonstrates the commitment to safety and change. Mr. Johnson recently completed a more than six-year tenure as President and CEO of the Tennessee Valley Authority ("**TVA**"), with responsibility for leading the nation's largest publicly owned utility in its mission of providing energy, environmental stewardship, and economic development across a seven-state region. Additionally, during Mr. Johnson's time at the TVA, the organization achieved the best safety records in its 85-year history and has been a perennial top decile safety performer in the utility industry. In that same period, Mr. Johnson led the retirement of more than half of TVA's coal generation, resulting in a reduction of TVA's carbon emissions by about 50% over the last decade. He was responsible for leading the generation of more than 50% of TVA's energy from non-greenhouse gas emitting sources. He also oversaw TVA's expansion into utility scale solar in recent years, with the addition of approximately 1,000 megawatts (mWs), and pursued the modernization of its hydro assets to increase the overall amount of renewable resources. TVA's renewable portfolio includes almost 2,400 mWs of wind and solar and 5,800 mWs of hydro capacity.

The TCC's reliance on *In re Dow Corning*, 208 B.R. 661 (Bankr. E.D. Mich. 1997), to argue that the magnitude of the wildfire claims to be addressed in a chapter 11 plan is somehow irrelevant to the plan process and to an extension of the exclusive periods is perplexing. *Dow*, in fact, fully supports the relief the Debtors are seeking. In *Dow*, the Court already had extended the exclusive periods for more than two years expressly to address the estimation of mass tort claims. Nevertheless, and despite finding that the debtor had engaged in stalling, the Court denied a motion by the tort claimants to terminate exclusivity, noting the "chaos factor" that would result from competing plans. *In re Dow Corning*, 208 B.R. at 670.

Additionally, the TCC's assertion that "many of the wildfire claims were either resolved, close to resolution, or certain procedures had been negotiated to facilitate their resolution as the Petition Date" is inaccurate. TCC Objection ¶48. The undisputed facts are that none of the 2017 or 2018 wildfire claims were close to resolution. In fact, as the tort plaintiff lawyers readily acknowledge, because of how recently the Camp Fire occurred, as of the Petition Date, they did not know the number or magnitude

of potential claims that might be asserted.  Indeed, that is one reason the Debtors filed their Bar Date Motion – another prerequisite to the plan process – seeking to obtain relevant information as to the magnitude and nature of all of the potential claims, an effort the TCC is also resisting.

As noted, above, all interested parties other than the TCC recognize the critical importance of legislative and regulatory reform to the chapter 11 plan formulation and negotiation process and the Debtors' successful emergence from chapter 11.  The Governor's Objection could not be more clear in this regard, and the report of the Governor's Strike Force plainly focuses on that need, not only for PG&E, but for California's other public and private utilities as well.  *Wildfires And Climate Change: California's Energy Future, A Report from Governor Newsom's Strike Force*, April 12, 2019, at 2-3.  In fact, without this reform in place, it is unrealistic to expect that any rational investors would provide capital on any reasonable economic terms to fund a chapter 11 plan or that the Debtors would be able to attract the ongoing investments necessary to assure their long-term viability.

As stated in the Governor's Objection, the "State is working expeditiously to fulfill its role by working to enact revisions to the legal and regulatory framework applicable to electric utilities dealing with catastrophic wildfires by this summer". . . .  "Additionally, the California Public Utilities Commission (the "CPUC") continues to address the numerous important issues related to PG&E that are pending before it."  Governor's Limited Objection ¶ 3.

Under these circumstances, no one can seriously dispute that there is a fundamental unresolved contingency that warrants a reasonable extension of the Exclusive Periods as requested in the Exclusivity Motion.

And because, as the Governor himself recognizes, the goal is to have this critical legislative and regulatory reform addressed by, at the earliest, "this summer" (and possibly toward the end of the legislative session in September), neither the Governor's suggested 75-day extension nor the UCC's suggested four month extension of the Exclusive Periods afford sufficient time for Debtors to formulate and negotiate a plan that incorporates the outcome of that process.  Indeed, these shorter extensions will only result in additional unnecessary motion practice before this Court.

The Debtors have stated from the outset of these cases that their objectives have been, and continue to be, to establish a process to comprehensively address and resolved their wildfire liabilities

in a fair and expeditious manner, and implement a financial and operational restructuring that will result in a competitive and sustainable cost and capital structure that will ensure their long-term viability. As stated, and as recognized by the Governor, this will require significant and substantive legislative and regulatory reform.

As the TCC appropriately recognizes, the purpose of section 1121 of the Bankruptcy Code is to afford the debtor a full and fair opportunity to file and obtain acceptances of a chapter 11 plan without the threat of competing plans.

The issue before the Court is not whether cause exists for an extension of the Exclusive Periods, because it clearly does. Rather, the issue is – how long the initial extension should be. Based on the undisputed size and complexity of these cases and the fundamental gating issues that must be addressed before a comprehensive, feasible, and confirmable chapter 11 plan can be formulated, negotiated, and proposed, the Debtors believe that the six-month extension requested is reasonable and appropriate.

## Conclusion

The Debtors request that the Objections be overruled and the relief requested in the Exclusivity Motion be granted.

Dated: May 20, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ *Stephen Karotkin*
      Stephen Karotkin

*Attorneys for Debtors and Debtors in Possession*