WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF GENO ARMSTRONG IN SUPPORT OF APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY KPMG LLP AS INFORMATION TECHNOLOGY, RISK, AND LEGAL SUPPORT CONSULTANTS TO THE DEBTORS** *NUNC PRO TUNC* **TO PETITION DATE**<br>Date: June 11, 2019<br>Time: 9:30 a.m. (PT)<br>Place: United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102<br>**Objection Deadline**: June 4, 2019, 4:00 p.m. (PT) |

I, Geno Armstrong, being duly sworn, deposes and says:

1. I am a principal at KPMG LLP ("**KPMG**"), a professional services firm ("**KPMG**"). I am duly authorized to make this declaration (this "**Declaration**") on behalf of KPMG and submit it in support of the *Application of Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ KPMG LLP as Information Technology, Risk, and Legal Suppor Consultants to the Debtors Nunc Pro Tunc to Petition Date* (the "**Application**"). Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

I submit this Declaration in connection with the proposed retention of KPMG as information technology, risk, and legal support consultants for PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") to perform those services (the "**Services**") each as summarized in the in the Application upon the terms and conditions more specifically set forth in (i) that certain Master Services Agreement dated as of January 17, 2017, attached hereto as **Exhibit 1-A** (together with the change order dated as of November 20, 2018, the "**MSA**"), and six distinct contracts by and between the Debtors and KPMG, attached hereto as **Exhibits 1-B** through **1-G** (the "**MSA Contracts**" and, together with the MSA, the "**Master Services Agreement**"), and (ii) that certain engagement letter dated March 13, 2012, among KPMG, the Debtors, Latham & Watkins LLP ("**Latham**") and Clarence Dyer & Cohen LLP ("**Clarence**"), attached hereto as **Exhibit 1-H** (the "**Legal Support Services Agreement**" and, together with the Master Services Agreement, the "**Engagement Agreements**").

KPMG will continue to provide information technology, risk and legal support consulting services to the Debtors including, without limitation, the following services as more particularly described in the applicable designated agreements:

    (i)    Design enterprise project management tools (Oracle Primavera Unifier and SAP PPM applications) to establish a common, centralized and automated approach for effectively and efficiently managing capital project work (the "**Enterprise Project Management Tools Implementation Services**", as described in **Exhibit 1-B** hereto);

    (ii)    Provide Debtors with a staff member to support the Debtors' personnel with respect to their security initiatives: track budget; create and oversee

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

    schedules; track issues and risks; report to Debtors' management as requested (the "**Risk Assessment Services**", as described in **Exhibits 1-C** and **1-D** hereto);

  (iii) Assist the Debtors with their migration from Siteminder to Ping (information technology software platforms) (the "**IT Software Services**") as described in **Exhibit 1-E** hereto);

  (iv) Provide support to the Debtors' internal counsel in connection with Debtors' development of certain aspects of its transmission, distribution and substation inspection programs (the "**Asset Management Services**", as described in **Exhibit 1–F** hereto);

  (v) Assist Debtors' team with the development of its Data Security program (the "**Data Security Services**", as described in **Exhibit 1-G** hereto); and

  (vi) Provide evidence, discovery management services and digital evidence recovery services at the request of Debtors' counsel, Latham and Clarence (the "**Legal Support Services**", as described in **Exhibit 1-H** hereto).

In addition to the foregoing, KPMG, at the request of the Debtors, may provide additional services deemed appropriate and necessary to benefit the Debtors' estates. Should KPMG agree in its discretion to undertake any such matter, KPMG and the Debtors may enter into additional agreements and will seek separate retention orders with regard to any such additional agreements.

    KPMG intends to apply to the Court for allowance of compensation and reimbursement of expenses for the information technology, risk and legal support services performed for the Debtors, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, the *Order Pursuant to 11 U.S.C. §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 701], and any further Orders of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**"), both in connection with this Application and any interim and final fee applications to be filed by KPMG in these Chapter 11 Cases, in accordance with the terms and conditions of the Engagement Agreements. Moreover, the Debtors are advised that KPMG intends to make a reasonable effort to comply with the requests of the United States Trustee ("the **U.S. Trustee**") for information and additional disclosures as set forth in the Fee Guidelines or any other applicable Orders.

KPMG's decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms set forth in the Engagement Agreements. Subject to this Court's approval, KPMG requests compensation, in accordance with its customary terms and conditions of employment, including the proposed compensation arrangements.

A.  Fixed Fee Arrangements:

The Debtors and KPMG have agreed to fixed-fee compensation for the Enterprise Project Management Tools Implementation Services. Payment of the fixed fee is dependent on an iterative process by which stages of the project go through a formal review, including a detailed walkthrough, modifications (if required) and formal acceptance. In addition, the fee estimates are based on the assumption that the Debtors will provide the information and assistance necessary for KPMG to complete each assignment. As of January 29, 2019, KPMG had received the following amounts pursuant to the MSA Contract for Services performed prepetition and will be seeking payment of the remainder of the fixed-fee after KPMG has completed the process of delivery, review and acceptance of the overall project.

| Services | Fixed-Fee Amount | Fees Paid Prepetition | Fees Sought Postpetition |
|---|---|---|---|
| **Enterprise Project Management Tools Implementation Services** | $2,071,852[1] | $716,994 | $1,338,444[2] |

The Debtors and KPMG have agreed to fixed-fee compensation for the Data Security Services. Payment of the fixed fee is dependent on an iterative process by which stages of the project go through a formal review, including a detailed walkthrough, modifications (if required) and formal acceptance. In addition, the fee estimates are based on the assumption that the Debtors will provide the information and assistance necessary for KPMG to complete each assignment.

---

[1] KPMG owes a minority-owned subcontractor $375,583 for certain services in connection with this project. Although the subcontractor is not expected to provide any substantial services for the bankruptcy estates, the subcontractor has affirmed to KPMG that it is a disinterested person under the Bankruptcy Code.

[2] KPMG has reduced the fixed fee amount by $14,414 for a deliverable defined in the MSA Contract that was not completed by the project end date, and by a $2,000 credit on the invoices paid prior to the Petition Date. Of the unpaid fixed fee, $661,242 relates to steps of the project for which KPMG received formal acceptance prior to the Petition Date, but which are necessary for the completion of the overall project.

| Services | Fixed-Fee Amount | Fees Paid Prepetition | Fees Sought Post Petition |
|---|---|---|---|
| **Data Security Services** | $2,705,013.50 | $0 | $2,705,013.50 |

B.    <u>Hourly Arrangements</u>:

The hourly rates set forth below are KPMG's applicable hourly rates for the work of its professionals and staff members to be provided to the Debtors other than with respect to the fixed fee engagements described above. These hourly rates reflect KPMG's normal and customary billing practices for engagements of this complexity and magnitude. KPMG's hourly rates are subject to periodic adjustment and/or increase from time to time in accordance with KPMG's established billing practices and procedures. The Debtors have agreed to compensate KPMG[3] for professional services rendered at its normal and customary hourly rates, subject to the reductions discussed below. To the extent such hourly rates are increased, KPMG will provide reasonable notice of any changes to its hourly rates to the Debtors and the U.S. Trustee.

The hourly rates for Legal Support services regarding additional technical and advisory services to be rendered by KPMG and applicable herein are as follows:

---

[3] Appendix C of the Legal Support Services Agreement contains additional charges for data hosting (such as per user, document, image/page and gigabyte charges).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| Billing Category | Legal Support Services[4] | Third Party Risk Assessment Loaned Staff[5] | IT Software Services[6] | Asset Management Services[7] |
|---|---|---|---|---|
| Partner / Managing Director | $595 | N/A | N/A | $500/$475 |
| Director | $575 | N/A | N/A | $435 |
| Manager | $475 | N/A | N/A | $400 |
| Senior Associate | $375 | $150 | $225 | $325 |
| Associate | $250 | N/A | N/A | $275 |
| Para Professional | $100 | N/A | N/A | N/A |
| Data Entry Clerk | $75 | N/A | N/A | N/A |

Additionally, KPMG will invoice the Debtors for its reasonable out-of-pocket expenses charged during these Chapter 11 Cases, which include, among other things, telephone and other charges, mail and express mail charges, travel expenses, expenses for "working meals" and computerized research, applicable sales, use or value-added tax, as well as non-ordinary costs such as secretarial and other overtime.

It is not the practice of KPMG's professionals to keep detailed time records in one-tenth-of-an-hour increments (*i.e.*, six minute increments) as customarily kept by attorneys who are compensated subject to approval of the Bankruptcy Court. Instead, the customary practice of KPMG's professionals is to keep reasonably detailed records of services rendered during the course of an engagement in half-hour (0.5) increments. Thus, KPMG requests that this Court allow KPMG's professionals to provide the following in its monthly, interim, and final fee applications: (a) a narrative summarizing each project category and the services rendered under each project category; (b) as an exhibit to each monthly,

---

[4] The majority of fees to be charged for Legal Support Services regarding additional technical and advisory services reflect a reduction of approximately 30% - 38% from KPMG's normal and customary rates, depending on the types of services to be rendered.

[5] The majority of fees to be charged in the Third Party Risk Assessment Program Loaned Staff engagement reflect a reduction of approximately 78% from KPMG's normal and customary rates, depending on the types of services to be rendered. The services are billed to a cap of $378,000. The Engagement Agreement includes a total estimated amount of fees to be charged for the applicable services. Any such amount is an estimate and may be subject to increase or decrease.

[6] The majority of fees to be charged in the IT Software Services engagement reflect a reduction of approximately 69% - 73% from KPMG's normal and customary rates, depending on the types of services to be rendered. The services are billed to a cap of $228,690.00.

[7] The majority of fees to be charged for Asset Management Services regarding additional technical and advisory services reflect a reduction of approximately 29%-53% from KPMG's normal and customary rates, depending on the types of services to be rendered and the services are billed at a cap of $4,200,000.

interim, and final fee application that KPMG files in these Chapter 11 Cases, a summary, by project category, of services rendered to the Debtors, which identifies each professional rendering services, the number of hours expended by each professional, and the amount of compensation requested with respect to the services rendered by each professional; and (c) reasonably detailed records of time in half-hour (0.5) increments, describing the services rendered by each professional and the amount of time spent on each date.

Given the nature of the services to be provided by KPMG, such billing format and associated time details will be sufficient for the Debtors and other parties-in-interest to make informed judgments regarding the nature and appropriateness of KPMG's services and fees.

I believe that these fee structures and compensation arrangements for each of the Engagement Agreements are market-based and reasonable considering KPMG's vast knowledge and experience.

It is my understanding that the Debtors intend that the services of KPMG will complement and not duplicate the services rendered by any other professional retained in these Chapter 11 Cases. KPMG understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

As part of the overall compensation payable to KPMG under the terms of the Engagement Agreements, the Debtors have agreed to certain indemnification obligations. The terms of the Engagement Agreements and the indemnification provisions therein were negotiated in good faith and at arm's length.

Based upon information supplied by Debtors' counsel, KPMG is searching its client database to identify any connection or relationship with individuals or entities that may be parties in interest in these Chapter 11 Cases. The Debtors organized the names by category and the categories are listed on **Schedule 1** (the "**Potential Parties-in-Interest**") attached hereto.

KPMG's review consisted of queries of an internal computer database containing names of individuals and entities that are present or recent and former clients of KPMG in order to identify

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

potential relationships.[8] This database includes engagement activity or potential engagement activity for at least the last three years. A summary of those current potential relationships that KPMG was able to identify using its reasonable efforts is reflected in **Schedule 2** attached hereto.[9] KPMG's search is continuing, and it will submit an updated **Schedule 2** if any additional relationships are identified. In addition, on an ongoing basis, KPMG will conduct further reviews of its professional contacts as it becomes aware of new parties of interest, as is stated below. To the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, KPMG neither holds nor represents an interest adverse to the Debtors' estates that would impair KPMG's ability to objectively perform professional services for the Debtors, in accordance with section 327 of the Bankruptcy Code.

To the best of my knowledge, KPMG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that, KPMG:

  a. is not a creditor, an equity security holder, or an insider of the Debtors;
  b. is not and was not, within two years before the date of filing of these Chapter 11 Cases, a director, officer, or employee of the Debtors; and
  c. does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason.

In the ninety (90) days before the Petition Date, the Debtors paid KPMG $4,836,042.16 for services rendered. These advance payments have been applied on account of fees and expenses

---

[8] As set forth in above, KPMG is the United States member firm of KPMG International, a Swiss cooperative of independent member firms. While KPMG is a separate and distinct legal entity from all other member firms of KPMG International, in an attempt to identify conflicts among or between KPMG International member firms, KPMG International has a global conflict internal computer database related to the engagement activity or potential engagement activity of a majority of such member firms for at least the last three years that allows KPMG International member firms to identify potential conflicts between other KPMG International member firms. Financial information pertaining to engagement activity is the proprietary and confidential information of each individual member firm and KPMG does not have any legal right to access, or if accessed, disclose, such information relating to other KPMG International member firms.

[9] **Schedule 2** contains a list of the relationships or potential relationships of all KPMG International member firms (as opposed to solely KPMG) and one or more of the parties set forth on the conflicts checklist.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

incurred in connection with prepetition services. KPMG has agreed to waive any unpaid prepetition fees or expenses. Accordingly, as of the Petition Date, KPMG does not hold a prepetition claim against the Debtors for amounts owed for services rendered.[10]

To the best of my knowledge, except as set forth herein and in **Schedule 2** attached hereto and incorporated herein by reference, (a) KPMG has no connections with the creditors, any other party-in-interest, or their respective attorneys and accountants; and (b) the KPMG partners and professionals working on these matters are not relatives of and have no known connection with the United States Trustee for Region 17 or of any known employee in the office thereof, or any United States Bankruptcy Judge of the Northern District of California.

KPMG has in the past been retained by, presently provides and likely in the future will provide services for, certain creditors of the Debtors, other parties-in-interest and their respective attorneys and accountants in matters unrelated to such parties' claims against the Debtors or interests in these Chapter 11 Cases. KPMG currently performs, has previously performed or may have performed such services for the entities listed in **Schedule 2,** however, except as disclosed herein, such services, to the extent performed by KPMG, are unrelated to the Debtors or these Chapter 11 Cases.

KPMG has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their respective attorneys and accountants with regard to any matter related to these Chapter 11 Cases.

KPMG is the United States member firm of KPMG International, a Swiss cooperative of member firms, each a separate legal entity, located worldwide. Only KPMG is being retained in these matters. KPMG cannot assure that an engagement will not be accepted by a foreign member firm of KPMG International for another party that may bear upon KPMG's engagement by the Debtors. However, to the extent KPMG is aware of such engagement and believes such engagement may bear upon KPMG's engagement by the Debtors, KPMG will file a supplemental declaration with the Bankruptcy Court.

---

[10] KPMG received $115,000 payment on March 23, 2019 for prepetition hazardous substance mechanism work, an environmental cleanup program, in accordance with the *Final Order Pursuant to 11 U.S.C. §§ 105(a) 363(b), and 507(a)(7) and Fed. R. Bankr. P. 6003 and 6004 (i) Authorizing Debtors to (a) Maintain and Administer Customer Programs, Including Public Purpose Programs, and (b) Honor Any Prepetition Obligations Relating Thereto; and (ii) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* [Docket No. 843] entered on March 12, 2019.

From time to time, KPMG may use the services of certain professionals from the other member firms of the KPMG network of independent firms and firms and entities controlled by, or under common control with, one or more such member firms (collectively, "**KPMG Parties**") when necessary to the performance of its professional duties and services to the Debtors.  The use of such professionals allows KPMG to maximize resources and minimize costs to the Debtors' estates.  KPMG will pay such KPMG Parties directly for the use of such professionals, and will include such amounts in its fee application at KPMG cost without any mark-up or increase.

In addition, from time to time, KPMG may use independent contractors, such as software providers.  However, KPMG will not profit from the use of such persons.

As part of its practice, KPMG appears in many cases, proceedings, and transactions involving many different law firms, financial consultants, and investment bankers in matters unrelated to these bankruptcy cases.  KPMG has not identified any material relationships or connections with any law firm, financial consultant or investment banker involved in these Chapter 11 Cases that would cause it to be adverse to the Debtors, the Debtors' estates, any creditor or any other party-in-interest.  If and when additional information becomes available with respect to any other relationships which may exist between KPMG, foreign member firms of KPMG International, or their partners and professionals and the Debtors, creditors, or any other Potential Parties-In-Interest which may affect these cases, supplemental declarations describing such information shall be filed with this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated May 21, 2019

/s/ *[signature]*
Gene Armstrong
KPMG LLP
55 Second Street, Suite 1400
San Francisco, CA 94105