**Exhibit 1-A**

**MSA**



# Contract (Long Form)

**This is a Contract between the below named Contractor ("Contractor"), a Delaware limited liability partnership, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105.**

| | | |
|---|---|---|
| **Contractor's Legal Name:** | KPMG LLP, a Delaware limited liability partnership | **PG&E Contract No. 4400011340** |
| **Contractor's Address:** | PO Box 120001<br><br>Dallas, TX 75312 | **This Contract consists of 52 pages.** |
| **Project Name**: | Consulting services | |
| **Job Location:** | San Francisco; various | |

**WORK**: Contractor shall, at its own risk and expense, perform the Work described in this Contract and furnish all labor, equipment, and materials necessary to complete the Work as summarized below and as more fully described in Attachment 1, (Scope of Work). This is not an exclusive Contract. This Contract does not guarantee Contractor any Work nor is there any guarantee as to any volume or duration of Work.

Contractor shall perform Management Consulting and related services as described in further detail in the Specific Conditions, General Conditions, and set forth by individual Contract Work Authorizations (CWAs).

**ATTACHMENTS: Each of the following documents is attached to this Contract and incorporated herein by this reference:**

Attachment 1: Specific Conditions , Pages 3-23

Attachment 2: General Conditions, Pages 24-49

Attachment 3: Safety, Background Check, NERC Contracting Requirements Page 50

**CONTRACT TERM:** This Contract is effective upon signature by both parties and expires on 12/31/2017**.**

**COMPLETION**: Contractor shall commence performance hereof when directed to do so by PG&E. Work shall be completed by the completion date of 12/31/2017. Time is of the essence.

**INSURANCE**: Contractor shall maintain insurance in accordance with Section 30.0 of the General Conditions.

**TERMS OF PAYMENT**: In accordance with Section 6.0 of the General Conditions.

**CONSIDERATION:** As full consideration for satisfactory performance of the Work by Contractor, PG&E's total obligation to Contractor shall not exceed the following amount. This amount is inclusive of all taxes incurred in the performance of the Work. Any change to this amount shall only be authorized in writing by a PG&E Contract Change Order, fully executed by both PG&E and Contractor.

**TOTAL**: As outlined in individual Contract Work Authorizations (CWAs)

**THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT.**

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: KPMG, LLP | |
|---|---|---|---|
| **Signature** | | **Signature** | *Geno Armstrong* |
| **Name** | Richard Cordova | **Name** | Geno Armstrong |
| **Title** | Portfolio Manager, Sourcing Operations | **Title** | Partner/Principal |
| **Date** | | **Date** | 1/17/2017 |

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 2
of 55



| ADMINISTRATION | | | |
|---|---|---|---|
| **PG&E Negotiator** | Kim-Son Ziegler | **Contractor Representative** | Geno Armstrong |
| **Phone** | 415-973-7701 | **Phone** | (206) 852-7189 |
| **Email** | kim-son.ziegler@pge.com | **Email** | garmstrong@kpmg.com |
| **Accounting Reference** | | | |
| **PG&E Work Supervisor:** | As per individual CWAs | **Phone:** As per individual CWAs | |
| **INVOICE INSTRUCTIONS**: Contractor shall send invoices for each payment when due, showing the Contract number, to: PACIFIC GAS AND ELECTRIC COMPANY | **Send ORIGINAL Invoice to:** | PG&E Accounts Payable* PO Box 7760 San Francisco, CA 94120-7760 | |
| | **Send COPY of Invoice to:** | As per individual CWAs | |
| | For information regarding invoice status, call PG&E's Paid Help Line at (800) 756-PAID (7243) or go to AP Web Reporting site at www.pge.com/actpay. *Note: Contractors using the XIGN System do not need to mail a copy of the invoice to PG&E. | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| **Distribution Date** | | |
| **Distribution of Copies** | ☐ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☐ Contractor (Signed Original Copy) |
| | ☐ Work Supervisor | ☐ Manager |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |

Case: 19-30088    Doc# 2172-3    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 3 of 55



**Attachment 1**
**Specific Conditions**
**Table of Contents**

*Section One - Introduction and Purpose* ...................................................... 4

*Section Two - Definitions* ................................................................................ 4

*Section Three – General Provisions* ............................................................ 6

*Section Four – Statement of Work: Consulting and Related Project Management Services* ...................................................................................... 7

*Exhibit A - Contract Work Authorization Supplemental Terms* ................ 11

*Exhibit B - Statement of Work Template Requirements* ........................... 15

*Exhibit B1 –Sample Resource Schedule and Budget* ............................... 17

*Exhibit B2 –Sample Project Schedule* ........................................................ 19

*Exhibit C – Bill Rate Table and Other Commercial Terms* ....................... 20

*Exhibit D – Firm Activity Report*……………………………………………22

*Exhibit E – Project Scorecard* ..................................................................... 23

Case: 19-30088    Doc# 2172-3    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 4 of 55



## *Section One - Introduction and Purpose*

1.1     These Specific Conditions establish the terms and conditions under which, KPMG LLP, a Delaware limited liability partnership, ("Consultant") shall provide Pacific Gas and Electric Company ("PG&E") with Consulting and related Project Management Services ("Services") in support of Various PG&E departments.  Each assigned Project will follow general steps for completion as described in these Specific Conditions and/or in each Contract Work Authorization ("CWA").

1.2     The Consultant's personnel shall provide these Services on specific assigned projects(s) using applicable Typical Timing milestones as stated in each project's CWA's and as follows, as applicable:
-   Start of Project
-   Data collection design complete
-   Evaluation design complete
-   Data collection begins
-   Data collection complete
-   Specific data collection issues (e.g., pilot testing, executive interviews)
-   Data Analysis complete
-   Preliminary results available
-   Solutions and ROI developed
-   Implementation started
-   Implementation complete
-   Phases complete
-   Reports developed and implemented
-   Project turned over date
-   Presentation to management

## *Section Two - Definitions*

The definitions in the General Conditions, Section 1.0, "Definitions," are supplemented with the terms defined below:

2.1.    Contract Change Order, defined as a written order, signed by authorized representatives of PG&E and the Consultant to the Consultant detailing changes to the specified work quantities or modifications in the scope of the original Contract Work Authorization.

2.2.    Contract Documents, defined as the Contract Documents are the documents and other documents as more specifically defined and described in the Contract.

2.3.    Consultant, defined as the Consultant is the firm and any other Consultant responsible for all or any portion of the Project pursuant to a contract directly with PG&E.


2.4.    Final Completion Date, defined as the Final Completion Date under this Contract shall be the date upon which (i) the Project has been fully completed (including punch list items) and accepted by PG&E's Work Supervisor, (ii) if applicable, all systems are functioning satisfactorily, (iii) certificates of completion have been issued for the entire Project and all conditions to final certificate of completion have been satisfied, (iv) the Consultant has satisfactorily completed all of its Services required to be completed prior to the Final Completion Date hereunder, (v) all conditions to final payment to the Consultant pursuant to the CWA have been satisfied, and (vi) all Project Costs, including internal PG&E charges, have been accounted for, and final payments to all consultants and the Consultant have been approved by PG&E Work Supervisor.

2.5.    Return on Investment, or ROI, defined as the expected payoff from the solution as compared to the input of resources (the cost of the consulting project) with the value of the ultimate outcome (the monetary benefits) Example:  Expressed as a desired return on investment percentage that compares the annual monetary benefits minus the cost divided by the actual cost and multiplied by 100.

2.6.    PG&E Relationship Manager, defined as PG&E's employee representing PG&E's interest in connection with this Master Service Agreement.

2.7.    PG&E Work Supervisor, defined as PG&E's employee representing PG&E's interest in connection with a CWA.  Each CWA issued will describe a project and the Project Manager's duties related to the project and will identify PG&E's Work Supervisor.

2.8.    Project, defined as the assignment that will be described in a CWA accompanied by a technical specification, statement of work, and/or requirements document that includes the Project Budget, project contingency reserve, project cost, project schedule and the final project completion date.

2.9.    Consultant's Project Manager, defined as the Consultant's manager shall have the meaning set forth in the General Provisions of this Contract.

2.10.    Project Schedule, defined as the project timetable is a complete written schedule indicating the sequence and duration of various activities.  The Project Schedule shall establish dates by which any information is to be provided or tasks are to be accomplished by Consultant.  A Sample Project Schedule is attached hereto as, Exhibit B2.  The Project Schedule shall be revised and updated, subject to approval by the PG&E Work Supervisor and Consultant, as provided in a CWA.

2.11.    Services, defined as process improvement, Operations or process improvement, Strategy, human resource, information technology, project management, or financial advisory services.



2.12.  Site, defined as the physical location where the work will be performed.

2.13.  Subcontractor shall have the meaning set forth in Section 1.9 of the General Conditions. .

## Section Three – General Provisions

3.1  Consultant represents and warrants that it has suitable and adequate candidate screening and security procedures, and that it has performed background, reference, credit and security checks on all Consultants referred to perform Services for PG&E prior to assigning such Consultant to work for PG&E.  Consultant represents and warrants that all Consultants who shall have access to PG&E facilities shall strictly adhere to PG&E's security measures and operating standards.

3.2.  Coordination with PG&E.  Consultant's performance of its obligations under this Contract will require close coordination with various PG&E departments and Consultants, including without limitation PG&E's law, insurance, telecommunications, sourcing, project services and operations.  Coordination of the Project-related activities of these PG&E functions is the responsibility of Consultant hereunder.

3.3.  The Consultant shall assign Project team members including but not limited to, Consultant's Project Managers and Consultants of various qualifications.  The Consultant shall provide these services, at PG&E's discretion, during the design, budgeting, implementation turn over to PG&E management phases of assigned projects under a particular CWA.

3.4.  Contract Work Authorization ("CWA").  The Services shall be performed by Consultant only after the execution of a CWA by Consultant and PG&E.  The terms and conditions of this Contract shall apply independently to each CWA.  The issuance of any CWA shall not commit PG&E to any future services by Consultant.

3.5  PG&E may issue a CWA to Consultant as a direct-award or through a competitive bidding process.  PG&E SHALL NOT BE LIABLE FOR ANY COSTS INCURRED BY CONSULTANT IN PREPARATION OF A PROPOSAL OR FOR OTHER "MARKETING" EFFORTS PUT FORTH BY CONSULTANT.

3.6.  CWA Term.  Services performed under any CWA not completed within the effective term of this Contract shall terminate at the conclusion of the term specified in the CWA and any modifications thereto.  This Contract shall govern Consultant's and PG&E's rights and obligations with respect to said CWA to the same extent as if the CWA was completed during the term of this Contract.



3.7.    Modification.  PG&E and Consultant will address changes to a CWA by issuing a Change Order to the CWA.  Unless expressly authorized in the modified CWA, all the terms of the original CWA and any previous CWA modifications shall remain in full force and effect.

3.8.    If during the performance of such a task, the task's schedule cannot be met, Consultant shall immediately notify PG&E's Work Supervisor and both Consultant and PG&E shall agree upon a corrective course of action and a new schedule, as appropriate.

3.9.    Upon request by PG&E, Consultant shall inform PG&E of the status of all Projects and development activities at PG&E ("Firm Activity Report"), submit current project evaluations ("Project Scorecard"), and meet with PG&E's Relationship Manager to discuss this Master Service Agreement. PG&E shall limit its request to once per calendar quarter.

## Section Four – Statement of Work: Consulting and Related Project Management Services

4.1.    Consultant shall provide Services for each Project described in a CWA executed by both parties.

4.2.    Except as otherwise provided hereunder, Consultant shall perform the work activities within budget and in a timely, orderly and safe manner.  Consultant shall allow necessary time for all PG&E required reviews to meet the Project Schedule and deadlines.

4.3.    As soon as possible after the Consultant's receipt of a fully executed CWA, the Consultant shall hold a comprehensive Kickoff meeting that shall be scheduled with PG&E to affirm communications and Project performance criteria.  The Kickoff meeting will confirm PG&E's quality standards and project objectives and include the following discussions:

    4.3.1.  Establish the formal communication plan, meetings, conference calls and status reports.
    4.3.2.  Exchange contact information.
    4.3.3.  Review safety and security issues.
    4.3.4.  Review roles and responsibilities.
    4.3.5.  Confirm and review the project scope.
    4.3.6.  Review Project schedule.
    4.3.7.  Discuss required review meetings and deliverables.
    4.3.8.  Review procurement process.



4.3.9.   Confirm Deliverable Milestones.
4.3.10. Review performance and acceptance test criteria.
4.3.11. Confirm Completion Date and Project Closure and hand over (transition) Criteria.

4.4.    For each Project, PG&E will assign a PG&E Work Supervisor and Consultant will assign a Consultant's Project Manager who shall have overall responsibility for the project for their respective organization for Project execution and lead their respective organizations' teams.  PG&E's Work Supervisor and Consultant's Project Manager shall coordinate activities specified in the CWA and will act as the primary interfaces between PG&E and the Consultant's project team.

4.5.    The Consultant's and PG&E's teams shall work effectively together to coordinate all activities, meetings and deliverables for both teams for a seamless integration for each Project.  Projects updates will be based on a Green, Yellow, Red scorecard.  If the project becomes Yellow or Red Consultant's Project Manager and PG&E's Work Supervisor will meet as soon as practicable to determine a corrective course of action.

4.6    The Consultant shall manage, monitor and coordinate all project activities as applicable, including any Consultants and Subcontractors, and coordinate the assigned Project-related activities of PG&E.

4.7.    The Consultant is responsible to develop as a Milestone Deliverable a Project Schedule.  All activities associated with a Project will be directed by a Project Schedule. The Project Schedule will be constructed based on a mutual agreement between the Consultant and PG&E.  A preliminary Project Schedule will be provided upon the Consultant's delivery of a Project quotation and/or proposal.  All Project Schedules will be constructed based on Milestone Deliverables.

4.8.    The Consultant shall use its reasonable efforts as commercially acceptable in the industry to provide prompt attention and diligence to all safety and security issues associated with a Project.  The Consultant's Project Manager will identify all issues with potential schedule impact as soon as practicable, and communicate issues to PG&E for prompt resolution.

4.9.    The Consultant's Project Manager shall provide PG&E with reports detailing the Project(s) progress, including updated schedule, progress of all activities and deliverables, budget, cash flow, safety, reliability, supplier diversity, action items, open items, and potential change orders, any issues and the strategies and resolutions thereof. The CWA shall specify the frequency and content of these reports.

4.10.   Intentionally Deleted. Approved



4.11.   The Consultant's Project Manager shall prepare and submit to PG&E's Work Supervisor for review and approval, any necessary revisions and updates of the Project Schedule and Project Budget as soon as practicable. No such revisions or updates shall be effective unless and until approved by PG&E in its sole discretion.

4.12.   Consultant's Project Manager shall hold Project update meetings with PG&E's project team and prepare materials related to the meeting agenda and objectives. The CWA shall specify the frequency of update meetings. Update meetings may also be held upon PG&E's request.

4.13.   Consultant's Project Manager shall manage compliance with PG&E's Supplier Diversity Program and review and submit all documentation necessary to validate adherence to WMDVBE participation goals.  The Consultant's Project Manager must be proactive in its efforts to achieve or exceed these goals**.**

4.14.   Consultant's Project Manager shall review and approve all Consultant and Consultant requests for payment, including verification of correct labor billing rates, fees, overhead, reimbursable, equipment and material charges, percentage completion and retainage.  Bundle all invoices into a monthly progress payment request to be submitted to PG&E for payment.   PG&E will process approve invoices for payment to such Consultants and Consultant.   Consultant will then submit its bills electronically. All requests for payment should state how funds being paid are to be applied against the approved Project Budget.

4.15.   Project Overview.   Immediately upon being retained by PG&E, Consultant's Project Manager shall familiarize itself with the Project, and in connection, therewith its services shall include but shall not be limited to the following:

4.15.1.   Obtain a thorough and complete understanding as required to successfully complete the Project.  Such an understanding may include a detailed knowledge and appreciation of operational processes and serviceability requirements, how these business units are currently organized, including how work assignments are given and how work flows and the strengths and weaknesses of existing systems, processes and facilities.

4.15.2.   Identify aspects of the work which have the potential to disrupt any on-going operations as appropriate. Minimize any interference with such on-going operations.

4.15.3.   Provide day-to-day project management, and monitoring and coordination among the Consultant and other Consultants, all with the objective of achieving satisfactory and timely completion of the Project.  Perform regular observations and inspections of the work for progress, quality and conformance with the Contract Documents, and exercise professional skill and expertise in order to minimize or


avoid defects and deficiencies in the work (provided that Consultant's Project Manager shall not be required routinely to make continuous or exhaustive inspections.

4.15.4.    Review the progress schedule, and schedule of values prepared by Consultant and consult with PG&E concerning their acceptability.


## *Exhibit A - Contract Work Authorization Supplemental Terms*

INTRODUCTION

1.0     A Contract Work Authorization ("CWA") is for Services as requested by Pacific Gas and Electric Company ("PG&E").  A CWA describes work to be performed by Consultant.  Additional services shall be provided only as authorized by in a separate Change Order signed by authorized representatives of PG&E and KPMG LLP.

2.0     DEFINITIONS.  The definitions in the Supplemental Specific Conditions and the General Conditions, Section 1.0, "Definitions," are supplemented with the terms defined below:

2.1     <u>Change Order</u>.  A Change Order is a written order to the Consultant signed by PG&E, issued after the execution of the Contract, authorizing a change in the work and which may authorize an adjustment in the Contract Sum or the Time(s) of Completion. As used in this Contract, the term "Change Order" includes a directive signed by PG&E as to which agreement has been reached with the Consultant regarding any adjustment in the Contract Sum or Time(s) of Completion.

2.2     "PG&E Authorized Representative": The Pacific Gas and Electric Company employee authorized to sign a Contract Work Authorization.

2.3     <u>Project Budget</u>.  The Project Budget is the detailed, line item budget for the estimated Project Costs.  A Sample Project Budget is attached hereto as <u>Exhibit B1</u> to this Contract.   The Project Budget shall be revised and updated, subject to approval by PG&E, as provided in this Contract.

2.4     <u>Project Contingency</u>.  The Project Contingency is a reserve for contingencies established in the Project Budget.  Amounts shall be charged or credited to the Project Contingency, as reasonably determined by PG&E:

2.4.1   Costs incurred in excess of amounts provided on any other line item in the Project Budget, including unforeseen costs for which provision was not made in the Project Budget, shall be charged to the Project Contingency;

2.4.2   Costs attributable to any Change Orders, excluding only substantial changes in the scope of the Project which are initiated by PG&E, shall be charged or credited to the Project Contingency.

2.5.3   On the Final Completion Date, any budgeted amounts in excess of costs actually incurred shall be credited to the Project Contingency.



2.5     Project Costs.  Project Costs are those costs incurred by PG&E in carrying out the Project.  Such costs shall be separately accounted for, and shall be charged against the Project Budget.  Project Costs shall include without limitation, (i) all hard and soft costs of design, (ii) the cost of Project Manager's services hereunder, (iii) moving costs, (iv)acquisition of equipment.  (v) telecom service costs, (vi) all insurance premiums and deductibles (if spent) attributable to the Project, (vii) attorneys' fees incurred in connection with the negotiation and execution of the Contract, agreements with the Project Manager and any other Consultant agreements, (viii) internal PG&E charges, and (ix) any other out-of-pocket costs or expenses which would not have been incurred but for the Project, whether or not provision was made therefore in the Project Budget.  Project Costs shall include both out-of-pocket costs incurred by PG&E, as well as internal PG&E charges and cost allocations, including without limitation, salaries and personnel expenses for PG&E staff.

2.6     Project Schedule.  The Project Schedule is a complete written schedule indicating the sequence and duration of various activities. The Project Schedule shall establish dates by which any information is to be provided or tasks are to be accomplished by Consultant.  A Sample Project Schedule is attached as Exhibit B2.  The Project Schedule shall be revised and updated, subject to approval by PG&E.  The Project Schedule is for the administrative and management convenience of PG&E and Project Manager and may not be relied upon by any Consultant in any way to establish any claims whatsoever, including claims for disruption or delay.

3.0     STATEMENT OF WORK AND DELIVERABLES

3.1     Services Provided Under a CWA.  Consultant shall provide comprehensive consulting and related project management services for the Project described in a CWA.

3.2     Description of Work and Deliverables.  Statement Of Work [Exhibit B] describes the work to be performed by Consultants. A clear detailed Statement of Work is to be provided by the Consultant and approved by PG&E.

4.0     WORK LOCATION.

Services may be performed at Consultant's place of business and in various locations throughout the Pacific Gas and Electric Company service territory, as required for successful completion of the work described in Section 3.

5.0     FEES AND EXPENSES

5.1     PG&E requests fixed fee, deliverable or milestone based quotations, supported by the Consultant delivery team's hours, rates, fees and expenses planned to complete the proposed work.  An eight (8) hour day will be assumed for all such fixed fee work.  A


CWA is issued with a not-to-exceed amount. Consultant only is paid for time actually spent on a project and work that is delivered and approved by PG&E. All travel and project related expenses will be billed at cost unless otherwise authorized by PG&E. Professional resources, fees and expenses shall be provided according to a planned timeline and utilization schedule as illustrated in Exhibit B1. Professional rates and budgeted fees shall not exceed those authorized in the Contract and shall clearly demonstrate all applicable adjustments (i.e. discounts, etc.).

### 5.1.1 Reimbursable Expenses

If expenses are specified and approved in a SOW, Consultant shall, in accordance with the provisions set forth herein, be entitled to monthly reimbursements for travel related and other approved expenses reasonably and properly incurred by Consultant in connection with Consultant's performance of the Services. Consultant shall maintain copies of all receipts. Expenses will be billed at Consultant's actual cost and may not include any increase, mark up, burden or uplift. In no event shall PG&E be obligated to reimburse for any Expenses incurred in excess of the budgeted expense amount specified in the relevant SOW. Consultant may roll forward unbilled expenses until the final invoice for each Contract Work Authorization is paid. All pass-through reimbursable expenses will not be subject to early payment discounts or any other rebates. Any exception to these terms must be justified and approved in writing by PG&E. Reference section 6.2.4 of the General Conditions.

### 5.1.2 Expense Cap

Expenses will be capped at ten percent (10%) of the total services fees for the applicable SOW unless otherwise approved in writing by PG&E. Expenses will be billed for out-of-town consultants only unless otherwise approved in writing by PG&E in the applicable SOW. No Expenses will be billed for in-town consultants. An "In-Town" consultant is defined as any resource that is based out of a Consultant office that is within sixty-five (65) miles of the PG&E facility where the services are to be performed. Whether out-of-town or In-Town, PG&E will not be charged for a consultant's travel time.

### 5.1.3 Meals

Reimbursement for meal expenses will be limited to out-of town consultants only. Consultants will be reimbursed for actual documented meal expenses up to a maximum of fifty dollars ($50.00) per day including tax and tip. This is not a per diem. Consultants will not be reimbursed for alcoholic beverages. Any exception to these terms must be justified and approved in writing by PG&E. Reference section 6.2.4 of the General Conditions.

### 5.1.4 Travel

All air travel will be by means other than first or business class. Consultants shall make flight selections based on the lowest available airfare and may not make a selection based on personnel preference, e.g. airline, type of aircraft, seating preference or frequent flyer program.


5.1.7   Hotel
A maximum of $300 per night shall be reimbursable.

5.2     Consultants invoices shall be submitted to the PG&E Work Supervisor at the address listed on the CWA.

6.0     Notification Consultant shall immediately notify PG&E regarding any problems which may significantly affect performance of Services by immediately notifying PG&E's Work Supervisor.


## *Exhibit B - Statement of Work Template Requirements*

This Statement of Work (SOW) outlines the engagement between Pacific Gas and Electric Company ("PG&E" or "client") with KPMG, LLP to perform the services described below.

The governing MSA for this work is Master Services Agreement #44XXXXXXXX executed on XXXX,   XX, 201X and supersedes all other oral and written representation, understandings, or agreements relating to the subject matter hereof.

Engagement Objectives and Scope of Services:

**Brief description of the situation, background of initiative, and expected outcome.**

1. **Scope.** Define the initiative, project purpose, key objective(s), impacted line(s) of business/stakeholder(s), and rationale.
2. **Deliverables, Milestones and Acceptance.** Key expected project outcomes, high-level milestones/decision points and the criteria that will be used to accept completion of project work.
3. **Anticipated Timeframe, Project Schedule** [(Exhibit B2) with activities, start and end dates and any key dependencies]
4. **Key Assumptions** [Assumptions used to base proposed team mix, duration of the project, expenses, risk, etc.]
5. **Team/Resource Description** [A description of all team members and resources (including subcontractors), levels and expertise, and their role/contribution to the project and its deliverables.]
6. **PG&E Role and Responsibilities** [Expectations of PG&E team members, sponsors, and managers to make the project successful]
7. **Professional Fees and Expenses** [Exhibit B1]
8. **PG&E and Consultant Work Supervisor Name, Number and email address**
9. **Work Location(s)**
10. **Other** (**Consider the following other areas**). Examples include:
    - Excluded work from scope
    - Consultant's approach, methodology, and tools employed to complete the described work
    - List of proprietary Consultant Knowledge or Tools subject to confidentiality in Section 25 of the General Conditions,


- Additional factors unique to this project, Special qualification for personnel performing the work or names of individuals required to perform work
- Special conditions that need to be considered
- Special equipment or software required to perform the Work
- Format requirements for deliverables drawings or reports (Hard copy or electronic)
- Performance Criteria or guarantee including duration of warranty period
- Time allowed for PG&E review of deliverables before final acceptance



# Exhibit B1 –Sample Resource Schedule and Budget

All requisite data must be provided by the Consultant in the format specified by this Exhibit. Any exceptions or deviations from this Exhibit must be approved by PG&E in writing. The completed Exhibit must agree with the detailed project Schedule (Exhibit B2).

| Resource Schedule: | | | | | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Billable Days | | | 22 | 20 | 22 | 21 | 22 | 21 | 22 | 22 | 21 | 22 | 21 | 19 | |
| | | | | | | | | | | | | | | | | | |
| **Resource Title/Name*** | **Utilization** | | | | | | | | | | | | | | | | |
| Partner A | 5% | | | | 8 | 100 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 188 |
| Director B | 10% | | | | 16 | 150 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 326 |
| Manager C | 15% | | | Hours | 20 | 200 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 420 |
| Consultant D | 10% | | | | 20 | 200 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 420 |
| Consultant E | 10% | | | | 20 | 200 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 420 |
| Analyst F | 25% | | | | 25 | 200 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 475 |
| Analyst G | 25% | | | | 25 | 200 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 475 |
| Project Total | 100% | | | | | | | | | | | | | | | | |
| | | | | | 134 | 1250 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 2724 |
| Full time equivalents (FTEs) | | | | | 0.8375 | 7.8125 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | |
| *Indicate if subcontractor | | | | | | | | | | | | | | | | | |



Contract 4400011340 **Attachment 1** – Specific Conditions

## Project Budget:

### Deliverable/Milestone A

| Resource Title/Name* | % of Time | Rate | Adj Rate | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Partner A | 5% | $ 300 | $ 300 | $ 2,400 | $ 30,000 | $ 2,400 | $ 2,400 | | | | | | | | | $ 37,200 |
| Director B | 10% | $ 250 | $ 250 | $ 4,000 | $ 37,500 | $ 4,000 | $ 4,000 | | | | | | | | | $ 49,500 |
| Manager C | 15% | $ 200 | $ 200 | $ 4,000 | $ 40,000 | $ 4,000 | $ 4,000 | | | | | | | | | $ 52,000 |
| Consultant D | 10% | $ 175 | $ 175 | $ 3,500 | $ 35,000 | $ 3,500 | $ 3,500 | | | | | | | | | $ 45,500 |
| Consultant E | 10% | $ 175 | $ 175 | $ 3,500 | $ 35,000 | $ 3,500 | $ 3,500 | | | | | | | | | $ 45,500 |
| Analyst F | 25% | $ 150 | $ 150 | $ 3,750 | $ 30,000 | $ 3,750 | $ 3,750 | | | | | | | | | $ 41,250 |
| Analyst G | 25% | $ 150 | $ 150 | $ 3,750 | $ 30,000 | $ 3,750 | $ 3,750 | | | | | | | | | $ 41,250 |
| Expenses (if applicable) | | | | | | | | | | | | | | | | $ - |
| Project Total | 100% | | | $24,900 | $237,500 | $24,900 | $24,900 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | **$312,200** |

### Deliverable/Milestone B

| Resource Title/Name* | % of Time | Rate | Adj Rate | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Partner A | 5% | $ 300 | $ 300 | | | | | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 19,200 |
| Director B | 10% | $ 250 | $ 250 | | | | | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 32,000 |
| Manager C | 15% | $ 200 | $ 200 | | | | | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 32,000 |
| Consultant D | 10% | $ 175 | $ 175 | | | | | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 28,000 |
| Consultant E | 10% | $ 175 | $ 175 | | | | | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 28,000 |
| Analyst F | 25% | $ 150 | $ 150 | | | | | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 30,000 |
| Analyst G | 25% | $ 150 | $ 150 | | | | | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 30,000 |
| Expenses (if applicable) | | | | | | | | | | | | | | | | |
| Project Total | 100% | | | $ - | $ - | $ - | $ - | $24,900 | $24,900 | $24,900 | $24,900 | $24,900 | $24,900 | $24,900 | $24,900 | **$199,200** |

### Total Project Budget

| Resource Title/Name* | % of Time | Rate | Adj Rate | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Partner A | 5% | $ 300 | $ 300 | $ 2,400 | $ 30,000 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 56,400 |
| Director B | 10% | $ 250 | $ 250 | $ 4,000 | $ 37,500 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 81,500 |
| Manager C | 15% | $ 200 | $ 200 | $ 4,000 | $ 40,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 84,000 |
| Consultant D | 10% | $ 175 | $ 175 | $ 3,500 | $ 35,000 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 73,500 |
| Consultant E | 10% | $ 175 | $ 175 | $ 3,500 | $ 35,000 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 73,500 |
| Analyst F | 25% | $ 150 | $ 150 | $ 3,750 | $ 30,000 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 71,250 |
| Analyst G | 25% | $ 150 | $ 150 | $ 3,750 | $ 30,000 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 71,250 |
| Expenses (if applicable) | | | | | | | | | | | | | | | | |
| **Project Total** | 100% | | | $24,900 | $237,500 | $24,900 | $24,900 | $24,900 | $24,900 | $24,900 | $24,900 | $24,900 | $24,900 | $24,900 | $24,900 | **$511,400** |

*Indicate if subcontractor


# *Exhibit B2 –Sample Project Schedule*

## SAMPLE PROJECT SCHEDULE

| Task ID Number | Task Name | Duration in Days | Start Date | End Date | Finish Date | Chart Progress | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Q 1 | | | Q 2 | | | Q 3 | | |
| | | | | | | J | F | M | A | M | J | J | A | S |


## *Exhibit C – Bill Rate Table and Other Commercial Terms* Hourly

**Personnel Rates:** Professional fees will be charged on an hourly basis. Billed hourly rates shall not exceed the amounts below, without prior approval from PG&E.

| **KPMG LLP** | Partner/MD | Director / Sr. Manager | Manager | Sr. Associate/ Consultant | Associate/ Consultant |
|---|---|---|---|---|---|
| Max Hourly Service Rates | $          408 | $          388 | $          331 | $          273 | $          175 |

**Rates:** Hourly Personnel Rates shall not increase during the duration of this contract. Fixed fee projects shall be based on a standard eight (8) hour work day.

**Diversity Goal:**

| **Term** | **Term Type** | **Description** | **Annualized Target** | **Other:** Target Growth over Prior Year |
|---|---|---|---|---|
| Diverse Subcontracting | Collective (All PG&E Projects) | Goal to subcontract to CPUC certified small and diverse suppliers (a percent of professional fees across all project types and lines of businesses). | *12.0%* | *2.0%* |

**Continuous Improvement:** For the duration of the contract Consultant shall provide at least two continuous improvement ideas annually for PG&E to consider

.


**Volume Rebate:** A volumetric cash adjustment will be calculated using the total professional fees paid by PG&E in each 12-month period, and shall not include amounts paid to subcontractors. Adjustments will be payable within forty-five (45) days of each Contract anniversary.

| Term | Term Type | Description | |
|------|-----------|-------------|---|
| | | | **Year-End Cash Rebate** |
| Volume Rebate | Collective (All PG&E Projects) | Total PG&E professional fee spend with Consultant across all project types and lines of businesses is aggregated on an annual, 12 month basis, and a rebate is issued by Consultant according to total rebate from incremental spend rebate tiers. Ex: PG&E pays $2.0M in fees, the total rebate due for the year would be 0% x $1.5M and 2.5% x $0.5M | |
| | | Spend Tiers (Total PG&E Spend): | |
| | | $0 - $ 1.5M | 0.0% |
| | | $ 1.5M - $ 3.0M | 2.5% |
| | | $3.0M - $ 4.5M | 3.5% |
| | | $4.5M - $6.0M | 4.5% |
| | | $6.0M - $7.5M | 5.5% |
| | | $7.5M - $9.0M | 6.5% |
| | | $9.0M - $10.5M | 7.5% |
| | | $10.5M - $12.0M | 8.5% |
| | | $12.0M - $13.5M | 9.5% |
| | | $13.5M+ | 10.5% |

| Term | Term Type | Description | Standard Rate |
|------|-----------|-------------|---------------|
| Expenses | Project | Consultant's reasonable travel and other project incidental pass-through costs as a percent of total project professional fees. | *10.0%* |
| Early Payment Discount | Performance (Invoice) | Consultant's invoices for professional fees paid by PG&E in less than 15 days will receive a minimum early pay discount against the accepted invoice; otherwise invoice will be paid by PG&E in full within 45 days on a dynamic sliding scale discount basis. This applies to all project types and lines of businesses (where a system purchase order is issued). | *2.0%* |


# *Exhibit D – Firm Activity Report*

PG&E may request the information below in MS Excel format, on a quarterly basis.
PG&E will initiate the request process.

**Project Information**
- CWA or PO number
- Project Type
- Project name or short description
- Project status
- PG&E functional area
- PG&E executive sponsor
- PG&E Project Supervisor
- Consultant Project Manager
- Consultant Project Manager's Email
- Active project time (weeks of reporting quarter)
- Number of Full-Time Equivalent employees staffed by level
- Invoiced fees and expenses for the reporting quarter
- Invoiced diverse fees and expenses for the reporting quarter
- Invoiced fees and expenses for the project to date
- CWA authorized spend amount

**Areas of Investment or Opportunity**
- Description of Consultant investment or perceived opportunity
- PG&E functional area
- Current or Desired PG&E contact
- Consultant Project Manager (if applicable)
- Consultant Project Manager's email (if applicable)
- Active investment time (weeks in reporting quarter)
- Number of Full-Time Equivalent employees invested by level

**Issues or Concerns requiring PG&E Relationship Manager Attention**


## *Exhibit E – Project Scorecard*

PG&E may request the Consultant Project Manager to complete an evaluation form for each CWA active during the reporting quarter. PG&E will initiate the evaluation process, and Consultant will respond in MS Excel.

Evaluations will consider the following criteria:
- Cost / Program Management: Deliverables, milestones or tasks were completed in the time allotted, are progressing as planned, or are progressing as expected under given conditions.
- Cost / Scope: Deliverables, or progress towards deliverables, align with the Scope of Work defined in the CWA.
- Delivery / Quality: Consultant work products demonstrate value added by Consultant in the form of insights, processes, recommendations, or action steps.
- Delivery / Sustainability: Consultant has worked with PG&E to build capabilities and transfer knowledge.
- Delivery / Fit: Consultant has obtained information and conveyed advice collaboratively and successfully within the context of PG&E's culture.
- Safety: Consultant adheres to safety standards and has embraced PG&E's safety goals.
- Diversity: Consultant is on track to meet stated diverse spend goals.

Green: Consultant has made efforts to reduce environmental impact of work performed


# TABLE OF CONTENTS

Page No.

1.0 DEFINITIONS ...................................................................................................GC-1
2.0 INDEPENDENT CONTRACTOR ........................................................................GC-1
3.0 SUBCONTRACTS................................................................................................GC-1
4.0 CONFLICT OF INTEREST/BUSINESS ETHICS.................................................GC-1
5.0 AVAILABILITY OF INFORMATION .....................................................................GC-2
6.0 BILLING AND PAYMENT.....................................................................................GC-2
7.0 RESERVED .........................................................................................................GC-5
8.0 NO GUARANTEE OF WORK ..............................................................................GC-5
9.0 ADDITIONAL WORK OR CHANGES IN WORK...................................................GC-6
10.0 AMENDMENTS....................................................................................................GC-6
11.0 ASSIGNMENT .....................................................................................................GC-6
12.0 REPLACEMENT OF PERSONNEL .....................................................................GC-6
13.0 SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY ..........................GC-7
14.0 DRUG AND ALCOHOL ABUSE POLICY .............................................................GC-7
15.0 RESERVED .........................................................................................................GC-8
16.0 OWNERSHIP OF DELIVERABLES .....................................................................GC-8
17.0 RESERVED .........................................................................................................GC-8
18.0 USE AND REPRODUCTION RIGHTS .................................................................GC-8
19.0 INFRINGEMENT PROTECTION..........................................................................GC-8
20.0 RESERVED .........................................................................................................GC-9
21.0 ROYALTIES AND LICENSE FEES ......................................................................GC-9
22.0 DELIVERY AND RETENTION OF RECORDS .....................................................GC-9
23.0 PUBLIC RELEASE OF RESULTS .......................................................................GC-9
24.0 CONSULTANT'S USE OF PG&E PROPERTY .....................................................GC-9
25.0 CONFIDENTIALITY .............................................................................................GC-10
26.0 RESERVED .........................................................................................................GC-10
27.0 WARRANTY.........................................................................................................GC-10
28.0 INDEMNIFICATION .............................................................................................GC-10
29.0 INCIDENTAL AND CONSEQUENTIAL DAMAGES .............................................GC-11
30.0 INSURANCE REQUIREMENTS ..........................................................................GC-11
31.0 FORCE MAJEURE...............................................................................................GC-13
32.0 HAZARDOUS MATERIALS .................................................................................GC-13
33.0 TAX WITHHOLDING ...........................................................................................GC-13
34.0 INJURY AND ILLNESS PREVENTION PROGRAM .............................................GC-13
35.0 COMPLIANCE WITH LAWS ................................................................................GC-14
36.0 CHOICE OF LAWS ..............................................................................................GC-14
37.0 DISPUTE RESOLUTION .....................................................................................GC-14
38.0 NON-WAIVER ......................................................................................................GC-14
39.0 ENFORCEABILITY ..............................................................................................GC-14


Case: 19-30088    Doc# 2172-3    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 26 of 55


# TABLE OF CONTENTS (cont'd)

|  |  | Page No. |
|---|---|---|
| 40.0 | CANCELLATION AND TERMINATION OF CONTRACT | GC-15 |
| 41.0 | INTEGRATION | GC-16 |
| 42.0 | SURVIVAL | GC-16 |
| 43.0 | ADDITIONAL TERMS | GC-16 |

EXHIBIT 1     PG&E Supplier Diversity Purchasing Policy

EXHIBIT 1A    List of Subcontractors/Subsuppliers and Disbursement Record

EXHIBIT 2     Policy Regarding Utilization Of Small Business Concerns and Small Disadvantaged Business Concerns

EXHIBIT 3     Injury and Illness Prevention Program Compliance Certificate

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 27 of 55

Contract 4400011340

1.0   DEFINITIONS

    1.1   "Change Order":  A revision or modification to the Contract signed by both parties.

    1.2   "Consultant" or "Contractor":  Party or parties entering into this Contract with PG&E for the Work.

    1.3   "Contract":  This agreement between PG&E and Consultant, including the Specification and appendices, together with any other material specifically incorporated therein.

    1.4   "Party" or "Parties":  PG&E or Consultant or both.

    1.5   "PG&E":  Pacific Gas and Electric Company.

    1.6   "Specification":  Specific Conditions with work description and performance obligations.

    1.7   "Subcontract":  An agreement between Consultant and Subcontractor or between Subcontractors at any level for a portion of the Work under this Contract.

    1.8   "Statement of Work":  a mutually agreed upon document defining the Services and Deliverables, if any, to be provided by Contractor, Contractor's compensation, delivery dates, performance milestones, deadlines, if any, additional terms and conditions applicable to specific engagements, if any, and such other details and pertinent information to be performed and/or delivered pursuant to this Agreement and that SOW as the parties deem appropriate.

    1.9   "Subcontractor":  Party or parties entering into a Subcontract with Consultant or another Subcontractor to perform a portion of the Work covered by the Contract.

    1.10   "Work":  Consulting services including labor, supervision, materials, equipment, actions and other requirements to be performed and furnished by Consultant under this Contract.

2.0   INDEPENDENT CONTRACTOR:  In assuming and performing the obligations of this Contract, Consultant is an independent contractor and shall not be eligible for any benefits which PG&E may provide its employees, except as expressly provided for in this Contract.  All persons, if any, hired by Consultant shall be employees or Subcontractors of Consultant and shall not be construed as employees or agents of PG&E in any respect.

3.0   SUBCONTRACTS:  Consultant shall not enter into Subcontracts without the prior written approval of PG&E.  PG&E's approval of any Subcontract shall not relieve Consultant of its obligations to PG&E under this Contract.  The provisions and obligations of this Contract shall apply to any Subcontract and Consultant shall be responsible to PG&E for any damages to PG&E arising out of Subcontracts not in accordance with this Contract.  Nothing in this Contract shall create any contractual relations between a Subcontractor and PG&E.

4.0   CONFLICT OF INTEREST/BUSINESS ETHICS

    4.1   REASONABLE CARE:  Consultant shall exercise reasonable care and diligence to prevent any actions or conditions which could result in a conflict with PG&E's interest.

    4.2   OTHER EMPLOYMENT:  During the term of this Contract, Consultant or its employees will not accept any employment or engage in any work which creates a conflict of interest with PG&E or in any way compromises the Work to be performed under this Contract.

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 28 of 55


4.3 GIFTS: Consultant or its employees shall not offer or cause to be offered gifts, entertainment, payments, loans and/or other services, benefits or considerations of more than a nominal value to PG&E's employees, their families, vendors, Subcontractors and other third parties acting on PG&E's behalf.

4.4 ACCURATE DOCUMENTATION: All financial statements, reports, billings, and other documents rendered shall properly reflect the facts about all activities and transactions handled for the account of PG&E.

4.5 NOTIFICATION: The Consultant shall immediately notify PG&E of any and all violations of this clause upon becoming aware of such violation.

5.0 AVAILABILITY OF INFORMATION

5.1 ACCESS: PG&E's duly authorized representatives shall have, during the term of the Contract and for three years thereafter, access at all reasonable times to all of the Consultant's and its Subcontractors' personnel, accounts and records of all description, including but not limited to records, pertaining to the Contract to verify or review the progress of the Work, reimbursable costs, amounts claimed by the Consultant, estimates of cost for fixed rates including those applicable to proposed changes included in this Contract.

5.2 APPLICABILITY: This Section 5 shall apply to all PG&E contracts but shall not apply to pricing for contracts performed solely on a lump-sum basis. However, where lump-sum and time and materials work (unit price, reimbursable cost, fixed rates, etc.) are performed together, either as a part of this Contract or as separate contracts, then the above audit right shall also extend to PG&E access to all Consultant's records pertaining to all PG&E contracts including the lump-sum for assurance that the portions of the Work performed on a time and materials basis are not being charged with time, material or other units or cost which are intended to be covered by lump-sum or fixed rates, etc., provided herein, supplement hereto or in such other agreements.

5.3 ACCOUNTING: The Consultant's and its Subcontractors' accounts shall be kept in such a manner and in sufficient detail to clearly disclose the nature and amounts of the different items of service and cost pertaining to the Contract and the basis for charges or allocations to the Contract.

5.4 TIME PERIOD: The Consultant and its Subcontractors shall preserve all such accounts and records for a period of three years after the term of the Contract. PG&E's duly authorized representatives (which are not, in Consultant's discretion, direct competitors of Consultant) shall have the right to reproduce any such accounts and records.

5.5 ADJUSTMENTS: Consultant shall promptly adjust any undisputed inaccuracy in the billings.

5.6 SUBCONTRACTORS: The Consultant shall include the necessary provisions in its Subcontracts to ensure that its Subcontractors comply with this Section 5.

6.0 BILLING AND PAYMENT

6.1 BILLING AND PAYMENT FOR LUMP SUM WORK: The terms of this Paragraph 6.1 shall apply to all Work performed on a lump sum basis.

6.1.1 INVOICE SUBMITTAL INSTRUCTIONS: Consultant shall submit a monthly invoice to PG&E for compensation earned in the preceding calendar month.

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 29 of 55


Consultant shall submit invoices to PG&E in accordance with the requirements of this Paragraph 6.1 and with the instructions printed in the Contract or Contract Change Order. The Consultant shall include the Contract number, and if applicable the Contract Work Authorization number, on the invoice.

6.1.2    INVOICE DEFICIENCIES:  Should PG&E determine that Consultant's invoice does not meet the invoicing requirements of this Contract, PG&E will notify Consultant of the deficiencies or return the invoice to Consultant with noted deficiencies.  Consultant shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Consultant, Consultant shall resubmit a corrected invoice.

6.1.3    PG&E PAYMENT:
Payment by PG&E to Consultant for Work performed on a lump sum basis will be monthly, in the full amount of the cost of the Work performed less any negotiated percentage withholding, computed in accordance with the terms of the Contract, and satisfactorily completed during each month. PG&E reserves the right to discount payment(s) to Consultant by Two (2) percent of the invoice total amount for payment(s) made to Consultant within Fifteen (15) days; or payable to Consultant within Forty-Five (45) days. All payments will be made, subject to PG&E approval after receipt of a correct invoice.  Payment of the balance of the amount will occur at the end of the Contract after all Work is satisfactorily completed.
.

6.1.4    BILLING RATES AND CONFLICTS:  Consultant's lump sum price(s) stated in the Contract fee schedule shall not change during the term of this Contract without prior written approval by PG&E.  The lump sum price(s) shall be inclusive of all Consultant's overhead costs, administrative and general fees, and profit.  To the extent such lump sum price(s), or any invoice or other billing instrument as provided for in this Section 6 contains terms and conditions which are in addition to or in conflict with the terms and conditions in this Contract, whether Specific or General, those terms and conditions in the fee schedule, invoice, or other billing instrument shall be null and void.

6.2    BILLING AND PAYMENT FOR TIME AND MATERIALS AND UNIT PRICE WORK:  The terms of this Paragraph 6.2 shall apply to all Work performed on a time and materials or unit price basis.

6.2.1    INVOICE SUBMITTAL INSTRUCTIONS:  Consultant shall submit invoices to PG&E in accordance with the requirements of this Paragraph 6.2 and with the instructions printed in the Contract or Contract Change Order.  The Consultant shall include the Contract number, and if applicable the Contract Work Authorization number, on the invoice.

6.2.2    MONTHLY INVOICE:  Consultant shall submit a monthly invoice to PG&E for compensation earned and reimbursable expenses incurred in the preceding calendar month.  Each invoice shall be broken down by Contract tasks; for each task the invoice shall include the following information:

6.2.2.1    Status

Task descriptions.
Allocation between balancing account and non-balancing account activities if needed.

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 30 of 55

Contract 4400011340

    6.2.2.2    Labor

            Employee name and title.
            Number of hours spent.
            Billing rate.

    6.2.2.3    Reimbursable Expenses
            Unit cost and quantity of each item of expense.

6.2.3    BILLING RATES AND CONFLICTS:  Consultant's billing rates or fees stated in the CWA fee schedule shall not change during the term of the CWA without prior written approval by PG&E.  These billing rates and fees shall be inclusive of all Consultant's overhead costs, administrative and general fees, and profit.  To the extent such fee schedule, or any invoice or other billing instrument as provided for in this Section 6 contains terms and conditions which are in addition to or in conflict with the terms and conditions in this Contract, whether Specific or General, those terms and conditions in the fee schedule, invoice, or other billing instrument shall be null and void.

    6.2.3.1    Overtime hours shall be billed at straight-time rates, unless otherwise approved by PG&E prior to the use of overtime, and limited to those hours for which Consultant's employee is actually compensated.  If applicable, Consultant's overhead cost shall not be applied to the premium portion of the overtime cost.

    6.2.3.2    Individuals other than employees of Consultant (nonemployees) retained by Consultant, such as Subcontractors, outside consultants, or agency personnel, shall not be billed as Consultant's employees and shall be shown separately on the invoice.  Such nonemployees working in Consultant's established office under Consultant's direct supervision shall be billed to PG&E at the cost charged to Consultant. All nonemployees shall be billed at Consultant's direct costs.

6.2.4    EXPENSES:  All reimbursable expenses shall be reasonable, ordinary, and necessary and shall be billed at cost.  All reimbursable expenses other than those listed in this paragraph 6.2.4 shall be authorized in writing by PG&E's authorized representative prior to expenditure by the Consultant; any expenses not so approved by PG&E shall not be reimbursed.

    6.2.4.1    Overhead costs will not be reimbursed as expenses.  Miscellaneous costs, such as routine telephone communications, routine copying, electronic mail, facsimile transmissions, computer time and use of in-house technical software are considered to be part of Consultant's overhead costs.
    6.2.4.2         Where Contractor is reimbursed for expenses, it is Contractor's policy to bill clients the amount incurred at the time the good or service is purchased.  If Contractor subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, Contractor does not credit such payment to PG&E.  Instead, Contractor applies such payments to reduce its overhead costs, which costs are taken into account in determining Contractor's standard billing rates and certain transaction charges that may be charged to clients.

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 31 of 55


6.2.5   TRAVEL TIME AND COSTS:  All air travel costs within or outside of the United States will be reimbursed only on a coach fare basis.  Travel time to and from the Work site shall be at Consultant's expense.

6.2.6   MILEAGE AND USE OF PERSONAL CAR:  In the event Consultant uses its personal car in the performance of Work under the Contract and such use is included as a reimbursable expense, normal commuting such as trips from home to first business stop and from the last business stop to home represents personal use of car and shall not be reimbursed.  All other reimbursable mileage shall be at the current IRS rate.

6.2.7   SUPPORTING DOCUMENTATION:   For each expense item over $100, supporting data and documentation shall be retained by Consultant for the term of the audit period defined in Section 5.1 and provided upon PG&E's request.

    6.2.7.1   Each invoice shall be assembled such that attached supporting documentation shall be placed in the order listed in the invoice, and each item of expense chargeable to PG&E shall be highlighted or clearly delineated.

6.2.8   INVOICE DEFICIENCIES:  Should PG&E determine that Consultant's invoice does not meet the invoicing requirements of this Contract, PG&E will notify Consultant of the deficiencies or return the invoice to Consultant with noted deficiencies.  Consultant shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Consultant, Consultant shall resubmit a corrected invoice.

6.2.9   UNIT PRICE BASIS:  When invoices include Work performed on a unit price basis, Consultant shall attach to the invoice a list stating the unit price item numbers, unit prices, quantities, dollar amounts and other information as required to identify the Work.

6.2.10   PG&E PAYMENT:  Payment by PG&E to Consultant for Work performed on a time and materials or unit price basis will be monthly, in the full amount due for Work performed less any negotiated percentage withholding, computed in accordance with the terms of the Contract, and satisfactorily completed during each month including reimbursable expenses, if any.  After receipt and approval of the Consultant's itemized invoice, PG&E reserves the right to discount payment(s) to Consultant by Two (2) percent of the invoice total amount for payment(s) made to Consultant within Fifteen (15) days; or payable to Consultant within Forty-Five (45) days.  Payment of any remaining balance of the amount due will occur at the end of the Contract after all Work is satisfactorily completed.

7.0   RESERVED.

8.0   NO GUARANTEE OF WORK:  THIS IS NOT AN EXCLUSIVE CONTRACT.  THIS CONTRACT DOES NOT GUARANTEE THE CONSULTANT ANY WORK NOR IS THERE ANY GUARANTEE AS TO ANY VOLUME OR DURATION OF WORK.

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 32 of 55


9.0 ADDITIONAL WORK OR CHANGES IN WORK

   9.1 PROCEDURE FOR ADDITIONAL WORK: BEFORE PROCEEDING WITH ANY WORK INVOLVING POSSIBLE CLAIMS FOR EXTRA COMPENSATION NOT SPECIFIED IN THE CONTRACT, CONSULTANT SHALL SUBMIT IN WRITING TO PG&E A DETAILED ESTIMATE OF THE COST FOR SUCH WORK. Consultant shall provide PG&E with a detailed breakdown and estimated cost of such anticipated contract work, including extensions and Change Orders, as follows:

      9.1.1 Description of work to be performed including detailed breakdown by identifiable tasks.
      9.1.2 Estimated cost of each task.

      9.1.3 Expected date of completion of each task.

   9.2 APPROVAL NEEDED FOR ADDITIONAL WORK: Consultant shall not proceed with any such additional work prior to receiving written authorization or a Change Order issued to Consultant by PG&E. CONSULTANT AGREES THAT ALL COSTS FOR ANY SUCH MODIFICATION OR CHANGE THAT IS PERFORMED BY CONSULTANT WITHOUT PG&E'S PRIOR WRITTEN APPROVAL SHALL BE AT CONSULTANT'S SOLE RISK AND EXPENSE.

   9.3 PG&E CHANGES TO WORK: PG&E reserves the right to make such changes in Work, specifications, or level of effort, as may be necessary or desirable and any difference in Contract price resulting from such changes shall be approved in writing by both parties before the Work is begun.

10.0 AMENDMENTS: NO MODIFICATION OR CHANGE TO THIS CONTRACT SHALL BE BINDING OR EFFECTIVE UNLESS EXPRESSLY SET FORTH IN WRITING BY CHANGE ORDER AND SIGNED BY A REPRESENTATIVE OF BOTH PARTIES AUTHORIZED TO EXECUTE THE CONTRACT.

11.0 ASSIGNMENT: Neither party may assign any of its rights, voluntarily or involuntarily, whether by operation of law or any other manner, or delegate any performance under this Contract, without the prior written consent of the other party. Any purported assignment or delegation of performance in violation of this provision is void. Subject to the foregoing, this Contract is binding upon and shall inure to the benefit of the successors and assigns of the parties.

Consultant may utilize third party service providers within and without the United States to provide, at Consultant's direction, administrative and clerical support services to Consultant. These third party service providers may in the performance of such services have limited access to information, including but not limited to Confidential Information, received by Consultant from or at the request or direction of PG&E.

12.0 REPLACEMENT OF PERSONNEL

   12.1 BY CONSULTANT: Consultant acknowledges that in the event that the individuals who are initially assigned by Consultant to perform services under this Contract are removed, replaced or reassigned by Consultant, Consultant shall discuss such action with PG&E and shall use reasonable efforts to replace such personnel promptly. Consultant will make reasonable efforts to maintain continuity in its staffing and will provide PG&E with ample

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 33 of 55



notification if any such changes are made. Consultant agrees not to charge PG&E for the time spent in familiarizing replacement personnel with the Work.

12.2 BY PG&E: If PG&E finds Consultant's employee to be unsatisfactory, Consultant shall discuss such dissatisfaction with PG&E and, after such discussion, Consultant shall use reasonable efforts to promptly replace said employee within ten (10) business days from the date of PG&E's request. This provision does not in any way require, endorse or approve (expressed or implied) the termination of employment by the Consultant of any employee replaced under the terms of this paragraph.

13.0 SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY: Consultant shall plan and conduct its Work to safeguard persons and property from injury. Consultant shall direct performance of Work in compliance with reasonable safety and work practices and applicable federal, state and local laws, rules and regulations, including but not limited to, "Occupational Safety and Health Standards" promulgated by the U.S. Secretary of Labor and the California Division of Occupational Safety and Health. PG&E may designate safety precautions in addition to those in use or proposed by Consultant. PG&E reserves the right to inspect the Work and to halt Work to ensure compliance with reasonable and safe work practices and with applicable federal, state, and local laws, rules and regulations. Neither the requirement that Consultant follow said practices and applicable laws, rules and regulations, and any special instructions given by PG&E nor the adherence thereto by Consultant shall relieve Consultant of the sole responsibility to maintain safe and efficient working conditions.

14.0 DRUG AND ALCOHOL ABUSE POLICY

14.1 PREFACE: Pacific Gas and Electric Company is committed to maintain and promote job safety and health for all workers at its facilities. In addition, PG&E is determined to protect its employees, customers, and the general public while they are on PG&E property from any harm caused by illegal drug and alcohol use by non-PG&E personnel. To accomplish these objectives, PG&E has established the following drug and alcohol abuse policy for access to PG&E facilities by its Consultant and Subcontractor personnel.

14.2 COVERAGE: This policy applies to the personnel of all PG&E Consultants, Contractors and Subcontractors performing any Work or services at PG&E offices and/or any other PG&E facilities.

14.3 POLICY:

14.3.1 PG&E may deny access to, or remove from, its facilities the personnel of any Consultant, Contractor or Subcontractor, who PG&E has reasonable grounds to believe has:

14.3.1.1 Engaged in alcohol abuse or illegal drug activity which in any way impairs PG&E's ability to maintain safe work facilities, to protect the health and well-being of PG&E employees, customers, and the general public, and to promote the public's confidence in PG&E's service and operations; or

14.3.1.2 Been found guilty, pled guilty, or pled nolo contendere to a charge of sale or distribution of any illegal drug or controlled substance as defined under Federal or California law within the past five years, unless the criminal record was later expunged or sealed by a court order.

14.3.2 The following activities are prohibited at all facilities owned or leased by PG&E:

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 34 of 55

Contract 4400011340

14.3.2.1 Possessing, furnishing, selling, offering, purchasing, using or being under the influence of illegal drugs or other controlled substances as defined under Federal or California law;

14.3.2.2 Possessing, furnishing, selling, offering, or using alcoholic beverages, or being under the influence of alcohol.

14.3.3 Where reasonable cause exists that paragraph 14.3.2 of this policy has been violated, the Consultant will take appropriate actions to determine if there has shall take appropriate actions to determine if there has, in fact, been a violation. If Consultant determines that there has been a violation, then Consultant will remove such individual from PG&E's premises.

14.3.4 Any individual who has been denied access to, or removed from, PG&E facilities for violating this policy may obtain permission to enter or reenter provided the individual establishes, to the satisfaction of their employer and PG&E, that the previous activity which formed the basis for denying access or removal has been corrected and his or her future conduct will conform with this policy. PG&E retains the right of final approval for the entry or reentry of any individual previously denied access to or removed from PG&E facilities.

15.0 RESERVED.

16.0 OWNERSHIP OF DELIVERABLES: PG&E shall own all data, reports, information, manuals, or other written, recorded, photographic or visual materials, or other deliverables produced as specifically prepared by Consultant as set forth under the applicable Statement of Work (collectively, the "Deliverables"). Consultant shall retain an irrevocable, perpetual, royalty free license to use the deliverables, subject to the confidentiality provisions of Section 25 of these General Conditions. PG&E grants Consultant a royalty free, irrevocable, non-transferable, non-exclusive license to use the Deliverables without attribution to PG&E. Consultant shall retain all right, title, and interest in and to all preexisting methodologies, processes, techniques, ideas, concepts, trade secrets and know-how used by Consultant in the production of the deliverables or prior to the effective date hereof, and working papers, administrative files and communications ("Consultant Knowledge"). Subject to the confidentiality restrictions contained in Section 25, Consultant may use the Deliverables and the Consultant Knowledge for any purpose.

17.0 RESERVED.

18.0 USE AND REPRODUCTION RIGHTS: For any Consultant Knowledge used, incorporated into, required for use of, or provided with any Services and/or Deliverables provided to PG&E hereunder, Consultant hereby grants, on behalf of itself and its suppliers, under intellectual property rights, to PG&E and its affiliates and their respective personnel a worldwide, perpetual, royalty-free license to use, modify, reproduce, disclose, display, publish, produce derivative works of or otherwise disseminate, distribute or transfer such Consultant Knowledge as used for PG&E's and/or its affiliates' business purposes, only, as incorporated into or provided with the applicable Services and/or Deliverables provided hereunder.

19.0 INFRINGEMENT PROTECTION: Consultant represents to PG&E that the Services, Consultant Knowledge and Deliverables will not infringe upon the copyright, patent or license, or otherwise violate the proprietary rights, including trade secret rights, of any person or entity. Consultant agrees to indemnify and hold PG&E, its parent company, subsidiaries and/or affiliates, harmless from and against any and all liabilities, costs and damages (collectively, the "Liabilities") arising out of any such infringement, and from any suit, demand or claim made against PG&E, its parent company, subsidiaries and/or affiliates, alleging any such infringement or violation. In addition to

Case: 19-30088    Doc# 2172-3    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 35 of 55


the foregoing, if there is such a suit, demand or claim, Consultant agrees, as soon as possible, to either procure for PG&E the right to continue using the material, replace the material with non-infringing material or modify it so it becomes non-infringing; provided, however that the replaced or modified material shall be equal to that contracted for hereunder and satisfactory to PG&E. Consultant further agrees to pay any judgment or reasonable settlement offer resulting from a suit, demand or claim, and pay any reasonable attorney's fees incurred by PG&E in defense against such suit. The foregoing provisions shall not apply to any infringement arising out of any alteration, modification or revision of the Deliverables not expressly authorized in writing by Contractor, which but for such alteration, modification or revision the claim would not have arisen.

20.0  RESERVED.

21.0  ROYALTIES AND LICENSE FEES:  Royalties, license fees or other charges for patents, copyrights and other intellectual property for designs, processes, technology, published or unpublished data, information or technical materials including, but not limited to, manuals, computer programs, or other deliverables furnished by Consultant, or for processes or methods employed by Consultant in performing the services, shall be included in the Contract price.

22.0  DELIVERY AND RETENTION OF RECORDS:  To the extent PG&E does not otherwise specifically request delivery of records or results, Consultant agrees to retain all records and results of Work performed under this Contract for a period of not less than two years from the date the Work is accepted by PG&E. Within thirty (30) days from the date of PG&E's written request, Consultant will grant access to working papers related to Work performed hereunder to PG&E.

23.0  PUBLIC RELEASE OF RESULTS:  Except as may be required by applicable law or regulation or professional standard, Consultant agrees not to release any results of the Work without first providing PG&E with the material sought to be released and a description of the publication for PG&E's prior approval.

24.0  CONSULTANT'S USE OF PG&E PROPERTY:  Subject to the provisions of Paragraph 25 below, all records, reports, computer programs, written procedures and similar materials, documents or data, in whatever form, provided by PG&E for Consultant's use in the performance of services under this Contract shall remain the confidential property of PG&E and shall be returned to PG&E immediately upon completion of Consultant's use for the performance of the Work or earlier upon the request of PG&E, except that one copy of which may be kept for Consultant's work papers.

Case: 19-30088    Doc# 2172-3    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 36 of 55


25.0 CONFIDENTIALITY:  In the course of performing the services under this Contract , either party (the "Receiving Party"),  may have access to confidential commercial or personal information concerning, but not limited to, technological, ratemaking, legislative and personnel matters and practices of the other party (the "Disclosing Party"), its parent company, subsidiaries, affiliates, or members of the public.  The Receiving Party agrees not to disclose any such confidential information or otherwise make it available to any other person, including any affiliate of the Disclosing Party that produces energy or energy-related products or services, without the prior written approval of the Disclosing Party. Notwithstanding the foregoing, Confidential Information does not include information which: (i) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (ii) is or becomes publicly known through no wrongful act of the Receiving Party; (iii) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (iv) relates to the tax treatment or tax structure of any transaction; (v) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.  Consultant agrees to make a good faith effort to exclude any Consultant Knowledge from its Deliverables that would create confidentiality concerns for Consultant if PG&E disclosed such Deliverables to other consulting firms, or released that information into the public domain through regulatory or other required disclosure.   Any subcontractor of the consultant agree to be bound by confidentiality provisions no less restrictive than the foregoing.

26.0 RESERVED.

27.0 WARRANTY:  Consultant warrants to PG&E that the Work under this Contract shall be performed in a competent and workmanlike manner in accordance with American Institute of Certified Public Accountants ("AICPA") and other professional standards applicable to Contractor's performance of the Services and in accordance with the terms of the applicable Statement of Work and this Agreement.  In addition, Consultant warrants to PG&E that (a) the personnel assigned to perform the Services are duly qualified and competent to perform the Services; (b) the Services will conform to the Specification, milestones and delivery dates that are set forth in the applicable SOW; and (c) Consultant and its personnel will take all necessary precautions to prevent injury to any person (including, without limitation, PG&E's employees) or damage to any property (including, without limitation, PG&E's physical property) while performing Services on or around a site or in  contact with any PG&E employee, consultant or agent.

28.0 INDEMNIFICATION:

28.1 Contractor shall indemnify, hold harmless and defend PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, agents, and employees, from and against all claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any:

(i) injury to or death of persons, including but not limited to employees of PG&E or Contractor; and

(ii) violation of local, state or federal common law, statute or regulation;

so long as such injury or violation (as set forth in (i) and (ii) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, to the extent caused by the negligent acts or omissions or willful misconduct of Contractor, its employees, agents or Subcontractors.

Case: 19-30088    Doc# 2172-3    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 37 of 55


28.2    PG&E agrees to indemnify and hold Consultant harmless from third party claims to the extent such third party claim results directly from that third party's use or reliance upon the Work disclosed by PG&E to the said party. Contractor shall promptly notify PG&E, in writing, of any claim, demand, proceeding or suit of which the Contractor becomes aware which may give rise to a right of defense pursuant to this section ("Claim"). Notice of any Claim that is a legal proceeding, by suit or otherwise, must be provided to PG&E within thirty (30) days of the Contractor's first learning of such proceeding. Notice must include an offer to tender the defense of the Claim to PG&E. PG&E, if it accepts such tender, may take over sole control of the defense of the Claim, provided further that Contractor may participate in such defense with counsel of its own selection at its sole cost and expense. That control includes the right to take any and all actions necessary to completely and finally resolve the Claim by settlement or compromise, provided further that any settlement or compromise other than payment of money damages shall be subject to Contractor's written consent; provided such consent shall not be unreasonably conditioned, delayed or withheld. Upon acceptance of tender, the Contractor will cooperate with PG&E, at PG&E's expense, with respect to such defense and settlement. If a Claim is settled and to the extent permitted by law, both parties will not publicize the settlement and will make every effort, to the extent consistent with applicable law, to ensure the settlement agreement contains a non-disclosure provision. The foregoing indemnification obligation shall apply regardless of whether the third party claim alleges a breach of contract, violation of statute or tort (including without limitation negligence) by Consultant.

29.0    LIMIT OF LIABILITY

29.1    INCIDENTAL AND CONSEQUENTIAL DAMAGES: NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INCIDENTAL, SPECIAL NOR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, LOSS OF REVENUES OR PROFITS, COMMITMENTS TO SUBCONTRACTORS, RENTAL OR LEASE AGREEMENT(S), AND PERSONAL SERVICES CONTRACTS, UNLESS EXPRESSLY AUTHORIZED IN WRITING BY EITHER PARTY. THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY REGARDLESS OF THE FORM OF ACTION, DAMAGE, CLAIM, LIABILITY, COST, EXPENSE, OR LOSS ASSERTED, WHETHER IN CONTRACT, STATUTE, TORT (INCLUDING BUT NOT LIMITED TO NEGLIGENCE) OR OTHERWISE.

29.2    THE LIMIT OF LIABILITY OF EITHER PARTY SHALL NOT EXCEED TWO TIMES (2X) THE TOTAL FEES PAID OR PAYABLE TO CONSULTANT UNDER THE APPLICABLE STATEMENT OF WORK. HOWEVER, THIS LIMIT SHALL NOT APPLY TO DAMAGES RESULTING FROM A BREACH OF CONTRACTOR'S OBLIGATIONS UNDER SECTION 25 HEREOF. THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY REGARDLESS OF THE FORM OF ACTION, DAMAGE, CLAIM, LIABILITY, COST, EXPENSE, OR LOSS ASSERTED, WHETHER IN CONTRACT, STATUTE, TORT (INCLUDING BUT NOT LIMITED TO NEGLIGENCE) OR OTHERWISE.

30.0    INSURANCE REQUIREMENTS:

Consultant shall maintain the following insurance coverage. Consultant is also responsible for its Subcontractors maintaining sufficient limits of the appropriate insurance coverage.

30.1    Workers' Compensation and Employers' Liability

30.1.1    Workers' Compensation insurance or self-insurance indicating compliance with any applicable labor codes, acts, laws or statutes, state or federal, where Consultant performs Work.

30.1.2    Employers' Liability insurance shall not be less than $1,000,000 for injury or death each accident.

Case: 19-30088    Doc# 2172-3    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 38 of 55


30.2    Commercial General Liability

    30.2.1    Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form, with no coverage deletions.

    30.2.2    The limit shall not be less than $1,000,000 each occurrence/$2,000,000 aggregate for bodily injury, property damage and personal injury.

30.2.3    Coverage shall: a) By "Additional Insured" endorsement add as insureds PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, and employees with respect to liability arising out of or connected with the Work performed by or for the Consultant.  (ISO Form CG2010 or equivalent is preferred).  In the event the Commercial General Liability policy includes a "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement:  "PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, agents and employees with respect to liability arising out of the work performed by or for the Consultant are additional insureds under a blanket endorsement."; b) Be endorsed to specify that the Consultant's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it; provided the loss was caused solely by Consultant.

30.3    Business Auto

    30.3.1    Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile Liability, code 1 "any auto."

    30.3.2    The limit shall not be less than $1,000,000 each accident for bodily injury and property damage.

30.4    Professional Liability Insurance

Coverage shall cover any and all errors, omissions or negligent acts in the delivery of products, services and licensed programs under this agreement. Such errors and omissions insurance shall include coverage for claims and losses with respect to  network risks (such as data breaches, unauthorized access/use, ID theft, invasion of privacy, damage/loss/theft of data, degradation, downtime, etc.) and intellectual property infringement, such as copyrights,  trademarks, service marks and trade dress.

The limit of insurance shall not be less than $3,000,000 per occurrence and in the aggregate.

The policy shall have a retroactive coverage date no later than the effective date and be renewed annually for a period of 3 years following completion of services.

30.5    Additional Insurance Provisions

    30.5.1    Before commencing performance of Work, Consultant shall furnish PG&E with certificates/verifications of insurance of all required insurance for Consultant.

    30.5.2    The documentation shall state that in the event coverage is canceled notice shall be provided by Consultant as provided in the applicable policy.

Case: 19-30088    Doc# 2172-3    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 39 of 55


30.5.3    PG&E uses a third party vendor, Exigis, to confirm and collect insurance documents. Certificates of insurance and endorsements shall be signed and submitted by a person authorized by that insurer to issue certificates of insurance and endorsements on its behalf, and submitted via email or fax to:

Certificate Holder:

PG&E

c/o EXIGIS LLC

support@exigis.com

Fax: 646-755-3327

A copy of all such insurance documents shall be sent to PG&E's Contract negotiator and/or Contract administrator.

30.5.4    Upon request, Consultant shall furnish PG&E the same evidence of insurance for its Subcontractors as PG&E requires of Consultant.

31.0    FORCE MAJEURE: Neither PG&E nor Consultant shall be considered in default in the performance of its obligations under this Contract, except obligations to make payments hereunder for Work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause, existing or future, which is beyond the reasonable control of the affected Party. In the event either Party claims that performance of its obligations was prevented or delayed by any such cause, that Party shall promptly notify the other Party of that fact, and of the circumstances preventing or delaying performance. Such Party so claiming a cause-delayed performance shall endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

32.0    HAZARDOUS MATERIALS: The California Health and Safety Code requires businesses to provide warnings prior to exposing individuals to materials listed by the Governor as chemicals "known to the State of California to cause cancer, birth defects or reproductive harm." PG&E uses chemicals on the Governor's list at many of its facilities. In addition, many of these chemicals are present at non-PG&E-owned facilities and locations. Accordingly, in performing the Work or services contemplated under this Contract, Consultant, its employee, agents, and Subcontractors may be exposed to chemicals on the Governor's list. Consultant is responsible for notifying its employees, agents, and Subcontractors that Work performed hereunder may result in exposures to chemicals on the Governor's list.

33.0    TAX WITHHOLDING: Consultant represents and warrants that it will withhold all taxes, if any, which are required to be withheld under applicable law with respect to payments to persons hired by Consultant who perform services for PG&E. Consultant shall indemnify and hold PG&E harmless, on an after-tax basis, for any liability incurred by PG&E as a result of Consultant's failure to institute any such required withholding.

34.0    INJURY AND ILLNESS PREVENTION PROGRAM: To the extent required of Consultant by applicable law, in the performance of the Work under this Contract, Consultant acknowledges that it has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code. Consultant shall ensure that any Subcontractor hired by Consultant to perform any portion of the Work under this Contract shall also have an effective Injury and Illness Prevention Program. If the Consultant has any employees in California, even if those employees do not perform Work under this Contract, the attached Compliance Certificate (Exhibit 3) shall be executed by the


person with the authority and responsibility for implementing and administering such Injury and Illness and Prevention Program.

35.0 COMPLIANCE WITH LAWS

35.1 Consultant shall comply with all applicable federal, state and local laws, rules and regulations, and shall obtain all applicable licenses and permits for the conduct of its business and the performance of the Work called for in this Contract.

36.0 CHOICE OF LAWS: This Contract shall be construed and interpreted in accordance with the laws of the State of California, excluding any choice of law rules which may direct the application of the laws of another jurisdiction. Any controversy or claim arising out of or in any way relating to this Contract which cannot be amicably settled without court action shall be litigated in a California State Court of competent jurisdiction; or if jurisdiction over the action cannot be obtained in a California State Court, in a Federal Court of competent jurisdiction situated in the State of California.

37.0 DISPUTE RESOLUTION

37.1 PROCEDURE: The Parties shall attempt in good faith to resolve any dispute arising out of or relating to this Contract promptly by negotiations between a vice president of PG&E or his or her designated representative and an executive of similar authority of Consultant. Either Party may give the other Party written notice of any dispute. Within twenty (20) days after delivery of said notice, the executives shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary to exchange information and to attempt to resolve the dispute. If the matter has not been resolved within thirty (30) days of the first meeting, either Party may initiate a mediation of the controversy.

37.2 CONFIDENTIALITY: All negotiations and any mediation conducted pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations, to which Section 1119 of the California Evidence Code shall apply, and Section 1119 is incorporated herein by reference.

37.3 PRELIMINARY INJUNCTION: Notwithstanding the foregoing provisions, a Party may seek a preliminary injunction or other provisional judicial remedy if in its judgment such action is necessary to avoid irreparable damage or to preserve the status quo.

37.4 CONTINUANCE OF WORK: Each Party is required to continue to perform its obligations under this Contract pending final resolution of any dispute arising out of or relating to this Contract.

38.0 NON-WAIVER: The waiver by either Party of any breach of any term, covenant or condition contained in this Contract, or any default in the performance of any obligations under this Contract, shall not be deemed to be a waiver of any other breach or default of the same or any other term, covenant, condition or obligation. Nor shall any waiver of any incident of breach or default constitute a continuing waiver of the same.

39.0 ENFORCEABILITY: In the event that any of the provisions, or application of any of the provisions, of this Contract are held to be illegal or invalid by a court of competent jurisdiction or arbitrator/mediator, PG&E and Consultant shall negotiate an equitable adjustment in the provisions of this Contract with a view toward effectuating the purpose of this Contract. The illegality or invalidity of any of the provisions, or application of any of the provisions, of this Contract will not affect the legality or enforceability of the remaining provisions or application of any of the provisions of the Contract.

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 41 of 55


40.0   CANCELLATION AND TERMINATION OF CONTRACT

40.1   CANCELLATION FOR CAUSE:

40.1.1   PG&E may, at its option, cancel or suspend this Contract for cause including, but not limited to, the following situations:

(1)   the failure, refusal or inability of the Consultant to perform the Work in accordance with this Contract for any reason (except as specified in Section 31, "Force Majeure"); or

(2)   Consultant has become insolvent, has failed to pay its bills, or has had checks for payment of its bills returned from suppliers and Subcontractors due to insufficient funds; or

(3)   a legal action is placed against Consultant which, in PG&E's opinion, may interfere with the performance of the Work; or

(4)   in PG&E's opinion, the Work will not be completed in the specified time and PG&E has requested Consultant to take steps necessary to accomplish the required progress and completion, and Consultant has failed to do so.

In addition PG&E may at its option and without prejudice to its other rights, take over and complete all or part of the Work.

In addition, (i) Consultant may terminate this Agreement or any outstanding Statement of Work upon thirty (30) days written notice to PG&E, in the event such PG&E breaches a material term of this Agreement or any Statement of Work and such breach remains uncured at the end of such thirty (30) day period.

40.1.2   PG&E shall determine whether Consultant is substantially performing Work and services in accordance with this Specification, and shall notify Consultant of any comments in connection therewith. Consultant will review and give due consideration to PG&E's comments and discuss those comments with PG&E. PG&E acknowledges and agrees that PG&E's review and comments shall not impede Consultant's professional judgment and applicable professional standards and practices when performing the Work.

40.1.3   In the event of such cancellation, PG&E shall pay Consultant for services satisfactorily performed prior to the date of cancellation. In no event shall PG&E be liable for lost or anticipated profits or overhead on uncompleted portions of the Work. Any reports, drawings or other documents prepared for PG&E prior to the effective date of such cancellation shall be delivered to PG&E by Consultant prior to PG&E's release of its final payment to Consultant. Consultant shall not enter into any agreements, commitments or Subcontracts which would incur significant cancellation costs without prior written approval of PG&E. Such written approval is a condition precedent to the payment of any cancellation charges by PG&E.

40.2   TERMINATION FOR PG&E'S REASONS:  PG&E may suspend or terminate the Contract, without cause and upon ten business days' written notice to Consultant. Consultant thereupon shall take whatever reasonable action with respect to performance of the Work as will tend to minimize its claim for fees or expenses against PG&E. In the event of termination, PG&E shall be liable to Consultant only for the compensation earned and expenses approved by PG&E on the Work performed to the date of termination. Consultant shall not be entitled to any payment for lost or anticipated profits or overhead on

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 42 of 55


uncompleted portions of the Work. Any reports, drawings or other documents prepared for PG&E prior to the effective date of such termination shall be delivered to PG&E by Consultant prior to PG&E's release of its final payment to Consultant. PG&E acknowledges that Consultant makes no representations, warranties and shall have no indemnity or other obligations or liabilities to PG&E or any other party regarding any unfinished Work.

41.0 INTEGRATION: This Contract constitutes the entire agreement and understanding between the Parties as to the subject matter of the Contract. It supersedes all prior or contemporaneous agreements, commitments, representations, writings, and discussions between Consultant and PG&E, whether oral or written, and has been induced by no representations, statements or agreements other than those expressed herein. Neither Consultant nor PG&E shall be bound by any prior or contemporaneous obligations, conditions, warranties or representations with respect to the subject matter of this Contract.

42.0 SURVIVAL: The provisions of this Contract which by their nature should survive expiration, cancellation or other termination of this Contract, including but not limited to provisions regarding warranty, indemnity, confidentiality and availability of information, shall survive such expiration, cancellation or other termination.

43.0 ADDITIONAL TERMS:

(a) Notwithstanding anything herein to the contrary, the Services shall not include (i) the provision of expert testimony on behalf of PG&E or (ii) any service that would require Consultant to maintain independence from PG&E in accordance with then current applicable law, rule or regulation of any governmental entity or professional organization. Unless expressly set forth in a Statement of Work with respect to tax services, the Services do not include representing PG&E in the event of a challenge by the United States Internal Revenue Service (the "IRS") or other tax or revenue authorities.

(b) PG&E agrees to cooperate with Consultant in the performance of the Services and shall provide or arrange to provide Consultant with timely access to and use of the personnel, facilities, equipment, data and information to the extent necessary for Consultant to perform the Services. Statements of Work may set forth additional details regarding Consultant's access to and use of personnel, facilities, equipment, data and information.

(c) PG&E may request changes that affect the scope or duration of the Services relating to any Statement of Work and Consultant may notify PG&E that it has encountered issues or circumstances related to the Services that are beyond the scope of Services under a Statement of Work. If PG&E requests such a change or if Consultant notifies PG&E of issues or circumstances beyond the applicable scope of Services, then Consultant promptly shall notify PG&E if Consultant believes that an adjustment in the scope of Services, fees to be paid to Consultant with respect to the applicable Statement of Work or applicable deadlines is required and the parties shall negotiate in good faith a reasonable and equitable adjustment in the applicable scope, fees or deadlines.

(d) To the extent applicable to the Services, a Statement of Work shall set forth the obligations of PG&E in connection with such Services. PG&E agrees to perform such obligations in accordance with, and subject to, such Statement of Work. PG&E acknowledges that its failure to meet such obligations could adversely affect Consultant's ability to provide the Services in accordance with the terms of this Agreement and the applicable Statement of Work.

(e) PG&E acknowledges and agrees that Consultant will, in performing the Services, base its conclusions on the facts and assumptions that PG&E furnishes and that Consultant may use data, material, and other information furnished by or at the request or direction of PG&E without any independent investigation or verification and that Consultant shall be entitled to rely upon the

Case: 19-30088    Doc# 2172-3    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 43
of 55


accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to Consultant could have a material effect on Consultant's conclusions.

(f) It is understood and agreed that Consultant's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, PG&E. Consultant will not perform management functions or make management decisions for PG&E. In connection with Consultant's provision of Services under a Statement of Work, PG&E agrees that PG&E, and not Consultant, shall perform the following functions: (i) make all management decisions and perform all management functions; (ii) designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to oversee such services, and to evaluate the adequacy and results of such services; (iii) accept responsibility for the results of such services; and (iv) establish and maintain internal controls over the processes with which such services are concerned, including monitoring on-going activities.

(g) Subsequent to the completion of the Services under a Statement of Work, Consultant will not update its advice, recommendations or work product for changes or modification to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless PG&E separately engages Consultant to do so in writing after such changes or modifications, interpretations, events or transactions.

(h) Except as otherwise set forth in the applicable Statement of Work, PG&E acknowledges that completion of the Services under a Statement of Work or acceptance of the Works thereunder will not constitute a basis for PG&E's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The Services under a Statement of Work shall not be construed to support PG&E's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(i) Intentionally Deleted. (j) PG&E acknowledges that certain of Consultant's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide Services under a Statement of Work may not be licensed as certified public accountants under the laws of any of the various states.

(k) Where Consultant is reimbursed for expenses, it is Consultant's policy to bill clients the amount incurred at the time the good or service is purchased. If Consultant subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, Consultant does not credit such payment to PG&E. Instead, Consultant applies such payments to reduce its overhead costs, which costs are taken into account in determining Consultant's standard billing rates and certain transaction charges that may be charged to clients.

Case: 19-30088   Doc# 2172-3   Filed: 05/21/19   Entered: 05/21/19 17:15:01   Page 44 of 55

# EXHIBIT 1


## PG&E SUPPLIER DIVERSITY PURCHASING POLICY


CONTRACTOR AND SUBCONTRACTORS OF ALL TIERS MUST COMPLY WITH PG&E'S SUPPLIER DIVERSITY PURCHASING POLICY IN THE AWARD OF ALL SUBCONTRACTS AND SUB-SUBCONTRACTS. This policy requires that Women, Minority and Disabled Veteran Business Enterprises (WMDVBEs) shall have the maximum practicable opportunity to participate in the performance of the Work.[1]


Contractor shall provide, along with its proposal, a separate, signed Subcontracting Plan consisting of either: (i) a specific list of Subcontractors (including sub-subcontractors) that will participate in the performance of the Work, on the form attached as Exhibit 1-A; or (ii) a statement setting forth the Contractor's goals for WMDVBE subcontracting of all tiers and setting forth such additional good faith efforts Contractor and Subcontractors will employ to increase the participation of WMDVBE in the performance of the Work.


In the event Contractor has not submitted a list of Subcontractors with its proposal, prior to requesting bids for any Subcontract, Contractor and Subcontractor shall submit to PG&E's Procurement Specialist or Contract Administrator, on the form attached as Exhibit 1-A, a list of prospective WMDVBEs that will be invited to compete for such Subcontracts.


Additionally, Contractor and Subcontractors must provide to PG&E's Supplier Diversity Office, no later than the 15th of each month, an updated "List of Subcontractors/Subsuppliers and Disbursement Record" with a current accounting of actual Subcontractor payments for the previous month (Exhibit 1-A,

column 8).


Contractor's supplier diversity subcontracting goal for the Contract is determined in the Specific Conditions for this Contract. Contractor shall report its supplier diversity goal as Contractor's spend with verified WMDVBE Subcontractors on PG&E Work under the Contract.

---

[1] WMDVBEs must be verified pursuant to the procedures prescribed in Section 2 of CPUC General Order 156.



**Pacific Gas and Electric Company**

01-5873 (Rev 1/00)

Purchasing

## List of Subcontractors/Subsuppliers and Disbursement Record

**EXHIBIT 1-A**

| Prime Contractor/Supplier: | Name of Preparer: | Report Period: |
|---|---|---|
| PG&E Contract Number (if any): | Telephone: ( ) | |
| PG&E Project/Product: | Fax: | Month _____ Year _____ |
| | E-Mail: | |

| Name of Subcontractor or Subsupplier (1) | WMDVBE Status Code* (2) | V** (3) | NV*** (4) | Address (5) | Description of Work (6) | Estimated Amount to be Paid to Subcontractors, (7) | Actual Amount Paid to Successful Subcontractors, (8) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | Total Amount Paid to | | |

**Please send form to:**

Supplier Diversity Office, Purchasing Department

Pacific Gas and Electric Company

245 Market Street, Mail Code N5D

P.O. Box 770000

San Francisco, CA 94177

(415) 973-0888   (415) 973-2553 (fax)

Signature: _____ / Date _____

I hereby verify that the information in this report is true
and accurate to the best of my knowledge

\* Refer to Instructions/Codes/Definitions on back.

\** V = Subcontractor is a *verified* WBE, MBE certified by the CPUC Clearinghouse, or a *verified* DVBE certified by the Office of Small Business Certification and Resource.

\*** NV = Subcontractor is *not verified*.

# STEP-BY-STEP INSTRUCTIONS

1.  Complete column numbers 1-7 and return this form with your bid proposal.

2.  Please attach copies of WMDVBE Subcontractors/subsuppliers certifications with your bid proposal.

3.  Complete column number 8 with the actual payments to WMDVBE subcontractors/subsuppliers for the PG&E work that was performed.

4.  Send a copy of this form no later than the 15th day of each month for the previous month to:  Supplier Diversity Office, Purchasing Department, Pacific Gas & Electric Company,

    245 Market Street, Mail Code N5D, P.O. Box 770000, San Francisco, California, 94177, or (415) 973-2553 (fax).

---

## DEFINITIONS AND CODES

WBE -----Women Business Enterprise:  A business enterprise that is at least 51 percent owned by a woman or women, or, in the case of any publicly-owned business, at least 51 percent of the stock of which is owned by one or more women, and whose management and daily business operations are controlled by one or more of those individuals.  Must be certified by the California Public Utilities Commission (CPUC) Clearinghouse.  For more information call the WMBE Clearinghouse, (800) 359-7998.

MBE------Minority Business Enterprise:  A business enterprise that is at least 51 percent owned by a minority group or groups, or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more minority-group individuals, and whose management and daily business operations are controlled by one or more of those individuals. Must be certified by the California Public Utilities Commission (CPUC) Clearinghouse.  For more information call the WMBE Clearinghouse, (800) 359-7998.

| Minority Status: | 001 | African American Male | 008 | Hispanic American Female |
| --- | --- | --- | --- | --- |
| | 002 | African American Female | 009 | Caucasian Male |
| | 003 | Asian Pacific American Male | 010 | Caucasian Female |
| | 004 | Asian Pacific American Female | 011 | Multi- Status |
| | 005 | Native American Male | 012 | Other Groups |
| | 006 | Native American Female | 013 | Small Business Enterprise |
| | 007 | Hispanic American Male | 014 | Service Disabled Veteran Business Enterprise |

African Americans    Persons having origins in any black racial groups of Africa.

Asian Pacific Americans    Persons having origins in Asia or the Indian Subcontinent, including, but not limited to, persons from Japan, China, the Philippines, Vietnam, Korea, Samoa, Guam, the U.S. Trust Territories of the Pacific, Northern Marianas, Laos, Cambodia, Taiwan, India, Pakistan, and Bangladesh.

| | |
|---|---|
| Native Americans | Persons having origin in any of the original peoples of North America or the Hawaiian Islands, in particular, American Indians, Eskimos, Aleuts, and Native Hawaiians. |
| Hispanic Americans | All persons of Mexican, Puerto Rican, Cuban, South or Central American, Caribbean, or other Spanish culture or origin. |
| Caucasian | Includes all people of European and North African descent. |
| Multi-Status | An enterprise that is wholly owned and controlled by a combination of minorities or women but whose majority ownership (at least 51%) is not vested with any one of these individuals. |
| Other Groups | Groups whose members are found to be socially and economically disadvantaged by the Small Business Administration pursuant to Section 8 (d) of the Small Business Act as amended (15 U.S.C. 637 (d), or by the Secretary of Commerce pursuant to Section 5 of Executive Order 11625. |
| Small Business Enterprise (SBE) | A business defined pursuant to Section 3 of the Small Business Act (SBA) and relevant regulations pursuant thereto.  If unsure, please contact your local Small Business Administration office for clarification. |
| Service Disabled Veterans Business Enterprise (DVBE) | Has the same meaning as defined in subdivision (g) of the Military and Veterans Code and must meet the "Control" and "Operate" criteria.  An enterprise which is 51 percent owned, or the stock is 51 percent owned, by one or more disabled veterans. |

# EXHIBIT 2

### POLICY REGARDING UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL DISADVANTAGED BUSINESS CONCERNS

The following policy of the United States shall be adhered to in the performance of this Contract:

a) It is the policy of the United States that small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals shall have the maximum practicable opportunity to participate in performing contracts let by any Federal Agency, including contracts and subcontracts for subsystems, assemblies, components, and related services for major systems. It is further the policy of the United States that prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals.

b) Consultant hereby agrees to carry out this policy in the awarding of subcontracts to the fullest extent consistent with efficient contract performance. Consultant further agrees to cooperate in any studies or surveys as may be conducted by the United States Small Business Administration or the awarding agency of the United States as may be necessary to determine the extent of Consultant's compliance with this clause.

c) As used in this Contract , the term "small business concern" shall mean a small business as defined in Section 3 of the Small Business Act and relevant regulations promulgated pursuant thereto. The term "small business concern owned and controlled by socially and economically disadvantaged individuals" shall mean a small business concern (1) which is at least 51 percent unconditionally owned by one or more socially and economically disadvantaged individuals; or, in the case of any publicly owned business, at least 51 percent of the stock of which is unconditionally owned by one or more socially and economically disadvantaged individuals; and (2) whose management and daily business operations are controlled by one or more of such individuals. This term also means a small business concern that is at least 51 percent unconditionally owned by an economically disadvantaged Indian tribe or Native Hawaiian Organization, or a publicly owned business having at least 51 percent of its stock unconditionally owned by one of these entities which has its management and daily business controlled by members of an economically disadvantaged Indian tribe or Native Hawaiian Organization, and which meets the requirement of 13 CFR Part 124. Consultant shall presume that socially and economically disadvantaged individuals include Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, and other minorities, or any other individual found to be disadvantaged by the Administration pursuant to Section 8(a) of the Small Business Act. Consultant shall presume that socially and economically disadvantaged entities also include Indian Tribes and Native Hawaiian Organizations.

d) Consultant acting in good faith may rely on written representations by its subcontractors regarding their status as either a small business concern or a small business concern owned and controlled by socially and economically disadvantaged individuals.[2]

---

[2] Notwithstanding this provision of the federal statute, all WMDVBE subcontractors must be verified pursuant to the procedures prescribed in Section 2 of CPUC General Order 156, as such procedures may be amended periodically.

**EXHIBIT 3**

# INJURY AND ILLNESS PREVENTION PROGRAM
## Compliance Certificate

The undersigned, the _____ of

(title/position)

_____ (Consultant), hereby certifies to PG&E as follows:

(name of Consultant)

1. That Consultant has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code and that any Subcontractor hired by Consultant to perform any portion of the Work under this Contract has an effective Injury and Illness Prevention Program; and

2. That he or she is the person with the authority and responsibility for implementing and administering Consultant's 's Injury and Illness Prevention Program.

IN WITNESS WHEREOF, the undersigned has executed this Compliance Certificate on _____.


_____

Signature


_____

Print Name

The Safety, Background Check, and NERC Contract Requirements specified herein supersede all prior agreed-to terms. In the event of a conflict between these terms and those in the General Conditions, the Specific Conditions, and/or a CWA, these terms shall control.

1. *WORK ON PG&E OR PG&E CUSTOMER ASSETS OR PREMISES: The following provisions shall apply to the extent that the Work under the Contract requires any Contractor or Subcontractor personnel (collectively, "Personnel") to have access to PG&E assets, premises, customer property, or logical access to PG&E data or systems (collectively, "Access").*

    (i) *CRIMINAL BACKGROUND CHECKS: Contractor warrants and represents that it will not assign any Personnel to work requiring Access unless Contractor has performed a criminal background check on each such individual (either at the time of hiring or during the course of employment). Prior to assigning work requiring Access to any Personnel with one or more criminal convictions during the last seven years, Contractor must consider the gravity of the individual's offense, the time since the conviction, the successful completion of parole/probation, the individual's age at the time of conviction, the number of convictions, and the stability of the individual, including favorable work history. Contractor shall also consider the relation of the offense to the nature of the work the individual will perform.*

    (ii) *Notwithstanding the foregoing, in no event shall Contractor grant Access to an individual with one or more convictions for a Serious Offense(s), which is defined as violent and sex offenses, crimes against children, domestic violence, fraud, theft (including but not limited to identity theft), embezzlement, all felonies during the last seven years, and/or two or more DUI's in the past three years.*

    (iii) *Contractor shall maintain documentation related to its criminal background check investigation for all Personnel requiring Access and will cooperate with PG&E to verify compliance with this section for audit purposes if requested pursuant to the audit provisions of this contract.*

    (iv) *Contractor also agrees to notify PG&E if it becomes aware that any of its Personnel requiring Access are charged with or convicted of a Serious Offense during the course of a PG&E assignment.*

2. *FITNESS FOR DUTY: Contractor shall request that its Personnel granted Access report to work fit for duty. Personnel with Access may not consume alcohol while on duty and/or be under the influence of drugs that impair their ability to work safely. PG&E expects each supplier to have policies in place that requires their employees report to work in a condition that allows them to perform the work safely. For example, employees should not be operating equipment under medication that creates drowsiness. As a federal contractor, PG&E does not recognize nor allow work to be completed under the influence of marijuana whether or not is it used for medical reasons.*

3. *ELIGIBILITY FOR PG&E WORK: When assigning any Personnel to perform Work requiring Access, Contractor shall submit each person's full name and the last four digits of their social security number to PG&E at the following e-mail address: RecruitingOperations@pge.com. PG&E reserves the right to decline to accept any proposed Personnel, in which case Contractor shall promptly propose a replacement.*

4. *NERC REQUIREMENTS: Pursuant to a directive from the North American Electric Reliability Corporation (NERC), all employees and contractors with Unescorted Access to facilities, systems and functions that PG&E deems critical to the support of the Bulk Electric System ("Critical Facilities and/or Critical Systems") shall undergo employment background screening and training prior to being granted access to these PG&E facilities and/or systems. Contractor hereby agrees to perform background checks*

*("Personnel Risk Assessments" or "PRA's") on all Contractor and Subcontractor personnel ("Individuals") with unescorted access to Critical Facilities and/or Critical Systems ("Unescorted Access"). PG&E has included in the category of those with Unescorted Access all Individuals working within PG&E Critical Facilities and/or Critical Systems. To the extent applicable to the Work, Contractor shall comply with the requirements of Exhibits 8 and 8A, attached hereto and incorporated herein.*



# Contract Change Order

**This is Change Order ("CO") No. 4 to Contract No. C73 (formerly 4400011340) dated 01/19/2017 between the below-named Contractor ("Contractor"), a Delaware Limited Liability Partnership, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105. Contractor shall perform all Work under this Contract, as amended by this Change Order, pursuant to and in accordance with the terms and conditions of the Contract.**

| | | |
|---|---|---|
| **Contractor's Legal Name:** | KPMG, LLP | **This Contract Change Order consists of 2 page(s).** |
| **Contractor's Address:** | P.O. BOX 120001 DALLAS, TX 75312 | |

| | |
|---|---|
| **Project Name**: | CONSULTING SERVICES |
| **Job Location**: | VARIOUS |

**CHANGES: The Parties hereby modify the Contract referenced above as follows:**

This Change Order No. 4 does the following:

1. The Contract expiration date is hereby extended from November 30, 2018 to June 30, 2019.

**ATTACHMENTS: The following are attached to this Contract Change Order and incorporated herein by this reference.**

Attachment No. N/A

| **PRICING CHANGES**: | | |
|---|---|---|
| | Previous Total Contract Value: | $ 10,000,000 |
| | Addition or Deduction: | $ 0 (No Change) |
| | Revised Total Contract Value: | $ 10,000,000 |

**All other terms and conditions of the Contract, as it may have been amended by previous Contract Change Order(s), if any, shall remain the same.**

**THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT CHANGE ORDER.**

| **PACIFIC GAS AND ELECTRIC COMPANY** | | **CONTRACTOR: KPMG, LLP** | |
|---|---|---|---|
| Signature | *DocuSigned by:* Rafael Soto-Amaro | Signature | *DocuSigned by:* Geno Armstrong |
| Name | 4B75ED19F856450... Rafael Soto-Amaro | Name | 2C19AE69855141D... Geno Armstrong |
| Title | Portfolio Manager | Title | Principal |
| Date | 11/20/2018 | Date | 11/20/2018 |

62-4675 (12-1-08)



| ADMINISTRATION | | | |
|---|---|---|---|
| **PG&E Negotiator** | Brandon Wilson | **Contractor Representative** | Geno Armstrong |
| **Phone** | 415.973.2525 | **Phone** | 206-852-7189 |
| **Email:** | brandon.wilson2@pge.com | **Email:** | garmstrong@kpmg.com |
| **Accounting Reference** | As shown on each fully executed CWA | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| **Distribution Date** | | |
| **Distribution of Copies** | ☐ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☐ Contractor (Signed Original Copy) |
| | ☐ Work Supervisor | ☐ Manager |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |