# REDACTED VERSION OF EXHIBIT

### Exhibit 1-H

**Legal Support Services**



KPMG LLP
6032 Katella Avenue
Cypress, CA 90630-5209

Telephone 714 934 5400
Fax 714 934 6199
Internet www.us.kpmg.us

March 13, 2012

Kate Dyer
Clarence Dyer & Cohen LLP
899 Ellis Street
San Francisco, CA 94109

Aaron Murphy
Latham & Watkins LLP
355 South Grand Ave.
Los Angeles, CA 90071

Re: ███████████████████ – *Pacific Gas and Electric Matters*

Dear Ms. Dyer and Mr. Murphy:

Thank you for selecting us to ███████████████████████████████████████████ representation of Pacific Gas and Electric Company ("Company"). This engagement letter and the attached Standard Terms and Conditions attached at Appendix A ("ST&C's") (as modified hereby), the KPMG Evidence and Discovery Management (EDM) Tools Terms and Conditions attached at Appendix B, and the Pricing terms attached at Appendix C, constitute the entire agreement between KPMG LLP ("KPMG"), Clarence Dyer & Cohen LLP ("Counsel"), Latham & Watkins LLP ("Co-Counsel") (collectively referred to as "Engaging Counsel") and Company, with respect to the subject matter hereof, and supersede all other oral or written representations, understandings or agreements relating thereto. In addition, it is understood that this agreement may be amended by one or more separate Addenda for additional services ("Addendum"). Payment for services rendered under this agreement are the sole responsibility of Company.

The following summarizes the work that will be performed on our engagement, as well as the fees and expenses for same:

**Project Scope**

███████████████████████████████████████████████████████████████████████

KPMG

Kate Dyer
Clarence Dyer & Cohen LLP
Aaron Murphy
Latham & Watkins LLP

March 13, 2012
Page 2 of 8

Although KPMG does not anticipate any questions to arise during this engagement that involve legal interpretations, we will refer any such questions to Counsel. The scope of work does not require that KPMG make any legal interpretations or render any legal advice, and the parties hereby agree that in connection with KPMG's performance of the services under this engagement we shall not make any legal interpretations or render any legal advice. All legal interpretations and rendering of legal advice shall be Counsel's responsibility.

We understand that our performance ▌
▌ is intended by Engaging Counsel to be a part of their privileged attorney work product. We agree that (1) all communications relating to this engagement between us, on the one hand, and Engaging Counsel and/or Company, on the other hand, which include, without limitation, any written, oral or electronic communications and any documents or information exchanged between the parties; (2) any work product performed or created by us on behalf of Engaging Counsel or Company; and (3) the fact that we have been engaged by Engaging Counsel in the above-captioned matter, shall be deemed to constitute "Confidential Information" of Engaging Counsel and/or Company under Paragraph 11 of the attached ST&C's; and we will treat such Confidential Information in accordance with Paragraph 11 of such ST&C's. Accordingly, we will not disclose such Confidential Information to any person (other than to Company and/or Engaging Counsel) under any circumstances except as permitted by Paragraphs 11 or 15 of the attached ST&C's without the prior written consent of Engaging Counsel. In addition to our specific obligations hereunder relating to the disposition of data, we further agree to return to Counsel at Counsel's written request all hard copies of Engaging Counsel's and/or Company's Confidential Information; provided that the foregoing shall not be deemed to prohibit us from retaining a copy of our work papers relating to this engagement, such retention subject to Paragraph 11 of the ST&Cs.

If, as a result of any work that we perform pursuant to this engagement, access to Engaging Counsel's work papers and files is necessary in order for us to defend and protect ourselves or any of our partners or employees, or to assert any of our or their claims, rights, interests or privileges, we understand that we will be given reasonable access to and the right to copy the work papers and files.

We will refer all inquiries from Federal and state authorities with respect to this engagement to Counsel. Our obligation in this regard is subject to all requirements of law, and in the event that any information or testimony is sought from us pursuant to a summons or subpoena, services relating to compliance with such summons or subpoena shall be within the scope of this engagement.

**Use of KPMG EDM Tools**



Kate Dyer
Clarence Dyer & Cohen LLP
Aaron Murphy
Latham & Watkins LLP

March 13, 2012
Page 3 of 8

Use by Engaging Counsel and their "Authorized Users" of any of the KPMG EDM Tools is conditioned on your acceptance of the KPMG EDM Tools Terms and Conditions attached at Appendix C without modification. The KPMG EDM Tools Terms and Conditions apply solely to the use of the KPMG EDM Tools by Engaging Counsel and their Authorized Users, and do not affect KPMG's obligations with respect to its services to you as contemplated in this letter. KPMG's services to you must comply in all respects with the terms of this letter and the attached ST&C's.

**Deliverables**

The deliverables KPMG shall provide to Engaging Counsel pursuant to this engagement letter are ▮

KPMG will encrypt all Engaging Counsel data deliverables using a commercially available software encryption tool, unless otherwise instructed. Any materials created by KPMG during this engagement are the property of KPMG.

Periodically, KPMG may release software application updates to its technologies. These may be updates to both third-party applications, and KPMG's own proprietary applications employed in the delivery of services. It is agreed that Engaging Counsel will allow KPMG to migrate Engaging Counsel data to the latest software version within 90 days of the announced release ("the Upgrade Period"). If Engaging Counsel elect to defer the announced upgrade beyond the Upgrade Period, the Company agree to pay a deferral surcharge of 15% above the customary hosting and user charges for each month beyond the Upgrade Period until the migration is completed.

**Engagement Staffing**

Chris Paskach will serve as the engagement partner and will have overall responsibility for the execution of the KPMG's activities under this engagement letter. Rick Nalle will be actively involved in the performance of the engagement and will use such other staff for assistance as deemed necessary.

**Engaging Counsel Responsibilities**

With regard to KPMG's services, Engaging Counsel are responsible for:

- Determining the objectives, scope, and extent of KPMG's services
- Designating a management-level individual who will have responsibility to oversee, along with the KPMG team, the project progress and address issues as they arise
- Timely decisions and approval of KPMG's actions and deliverables
- Providing access and contact information for authorized users to ▮ (generic accounts are prohibited)

KPMG

Kate Dyer
Clarence Dyer & Cohen LLP
Aaron Murphy
Latham & Watkins LLP

March 13, 2012
Page 4 of 8

- Identifying the names of not more than two representatives authorized to request access permission changes to ▌▌▌▌▌▌▌▌ "Counsel Representatives"). Changes to these Representatives must be provided to KPMG in writing
- Identifying the name and address of the person designated to receive and approve invoices related to this matter
- Providing written notice to KPMG of its desire to end the engagement. This notice must provide instructions for the disposition of Engaging Counsel' Data (as described under "End of Engagement")

**Timing and Professional Fees**

We are prepared to begin work upon receipt of a signed copy of this engagement letter and at a time mutually determined by Engaging Counsel and KPMG. We will be compensated for fees and expenses incurred in this engagement. **Please see Appendix C.**

Circumstances encountered during the engagement or scope changes may warrant additional procedures, resulting in revisions to the agreed-upon prices. We will notify you of such circumstances as they arise and we will obtain your approval before proceeding.

These rates are effective through September 30, 2012, after which we will provide you with changes to our rates, if any. Notwithstanding Paragraph 3 of the ST&C's, Counsel may terminate this engagement letter at any time by giving written notice to us. Upon notice of termination, we will stop all work immediately.

KPMG shall provide invoices to Counsel and the Company on a monthly basis, in accordance with the terms of the previously existing Master Services Agreement dated May 27, 2010 between KPMG and the Company.

**Modifications to ST&C's Applicable to this Engagement**

The parties hereby agree to the following modifications to the ST&C's applicable to this engagement letter:

Any obligation of "Client" (as such term is defined in such ST&C's) to indemnify KPMG under Paragraphs 8(a) and (b) of such ST&C's, shall be deemed to refer to an obligation of Company, and not to refer to an obligation of Engaging Counsel.

As agreed upon in the Master Services Agreement dated May 27, 2010 between KPMG and Company, indemnification for this engagement shall be modified to:

28.0 INDEMNIFICATION:

28.1 Contractor shall indemnify, hold harmless and defend PG&E, its affiliates, subsidiaries, parent company, officers, managers, directors, agents, and employees, from and against all

KPMG

Kate Dyer
Clarence Dyer & Cohen LLP
Aaron Murphy
Latham & Watkins LLP

March 13, 2012
Page 5 of 8

claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any:

(i) injury to or death of persons, including but not limited to employees of PG&E or Contractor; and

(ii) violation of local, state or federal common law, statute or regulation;

so long as such injury or violation (as set forth in (i) and (ii) above) arises from or is in any way connected with Contractor's performance of, or failure to perform, this Contract, to the extent caused by the negligent acts or omissions or willful misconduct of Contractor, its employees, agents or Subcontractors.

28.2 PG&E agrees to indemnify and hold Consultant harmless from third party claims to the extent such third party claim results directly from that third party's use or reliance upon the Work disclosed by PG&E to the said party. Contractor shall promptly notify PG&E, in writing, of any claim, demand, proceeding or suit of which the Contractor becomes aware which may give rise to a right of defense pursuant to this section ("Claim"). Notice of any Claim that is a legal proceeding, by suit or otherwise, must be provided to PG&E within thirty (30) days of the Contractor's first learning of such proceeding. Notice must include an offer to tender the defense of the Claim to PG&E. PG&E, if it accepts such tender, may take over sole control of the defense of the Claim, provided further that Contractor may participate in such defense with counsel of its own selection at its sole cost and expense. That control includes the right to take any and all actions necessary to completely and finally resolve the Claim by settlement or compromise, provided further that any settlement or compromise other than payment of money damages shall be subject to Contractor's written consent; provided such consent shall not be unreasonably conditioned, delayed or withheld. Upon acceptance of tender, the Contractor will cooperate with PG&E, at PG&E's expense, with respect to such defense and settlement. If a Claim is settled and to the extent permitted by law, both parties will not publicize the settlement and will make every effort, to the extent consistent with applicable law, to ensure the settlement agreement contains a non-disclosure provision.

### End of Engagement

At the end of the engagement, Counsel will advise KPMG of the desire to close the engagement in writing. All documents and/or data provided to us by you or on your behalf are referred to below as "Engaging Counsel Data."

During the course of the engagement, unless notified by Counsel in writing, KPMG will backup Engaging Counsel Data resident in data facilities managed by KPMG in accordance with our then current tape retention and disaster recovery practices, which set forth the time frame after which this data is overwritten and effectively deleted. Counsel shall, not later than 30 days after the end of the engagement, advise KPMG of the end-of-engagement disposition option Counsel elects with respect to Engaging Counsel Data. Disposition options are as follows:



Kate Dyer
Clarence Dyer & Cohen LLP
Aaron Murphy
Latham & Watkins LLP

March 13, 2012
Page 6 of 8

**A. Shutdown**

KPMG will 1)return or 2)delete and destroy (select one) all of Engaging Counsel's Data not already returned to Counsel and only to the extent it was originally delivered on physical media or in hard copy. We will delete and destroy Engaging Counsel's Data in all other environments, subject to the first sentence of Paragraph 11(b) of the ST&C's.

**B. Final Export**

KPMG will export Engaging Counsel's Data resident in one or more repositories as determined by Counsel at the rate agreed upon in Appendix C. Data export will be to portable media and the format will be as agreed to by the parties. Counsel will have 30 calendar days after receipt is confirmed to accept the condition of the data. At that time we will delete and destroy Engaging Counsel's data in all other environments, subject to the first sentence of Paragraph 11(b) of the ST&C's.

If Counsel does not elect an end-of-engagement disposition option at the end of the 30 day period referred to above, Counsel will be deemed to have elected the "delete and destroy" option contemplated by Option A.

**Other Matters**

KPMG has performed an internal search for potential client conflicts based upon the names of the parties that Counsel has provided. During the course of this engagement, Counsel agrees that it will inform KPMG of additional parties in this matter or name changes for those parties provided by Counsel. As a large professional services organization, KPMG is engaged by new clients every day and cannot ensure that an engagement for the involved parties will not be accepted by KPMG. We take no responsibility for monitoring possible conflicts that could arise during the course of the engagement, although we will inform you promptly should any come to our attention. We reserve the right to resign from this engagement at any time if conflicts arise or become known to us that, in our judgment, would impair our ability to perform.

The value of our Firm's services to you and your client is founded, in part, on our reputation for professionalism and integrity. KPMG and other KPMG International member firms have been engaged from time to time by a significant number of law firms, both locally and nationally. It is possible that the opposing parties or their law firms have engaged KPMG and other KPMG International member firms in other engagements unrelated to this litigation. Your engagement of our Firm is expressly conditioned on your agreement not to use information gained by you about KPMG and/or the KPMG EDM Tools as a means of enhancing or diminishing our credibility in conjunction with any appearance before a trier of fact.

![KPMG]

Kate Dyer
Clarence Dyer & Cohen LLP
Aaron Murphy
Latham & Watkins LLP

March 13, 2012
Page 7 of 8

Thank you for allowing us to assist you in this matter. If this letter and the attached ST&C's correctly set forth our arrangements, please sign this letter and return the original signed copy it to us. If you have any questions, please call me at (714) 934-5442.

Very truly yours,

*[signature]*

KPMG LLP
Partner

Attachments:
Appendix A – Standard Terms & Conditions
Appendix B – KPMG EDM Tools Terms & Conditions
Appendix C – Pricing

**Accepted by:**
Clarence Dyer & Cohen LLP :

By: *[signature]*

Title: Partner

Date: 3-14-2012

**Accepted by:**
Latham & Watkins LLP :

By: *[signature]*

Title: Partner

Date: 3/20/2012


KPMG

Kate Dyer
Clarence Dyer & Cohen LLP
Aaron Murphy
Latham & Watkins LLP

March 13, 2012
Page 8 of 8

**Name and Address** of Person designated to receive and approve invoices:

Name: _Kate Dyer, Clarence Dyer & Cohen_
Address: _899 Ellis Street_
_SF CA 94109_
Phone: _415-749-1800_
Fax: _415-749-1694_
E-Mail: _kdyer@clarencedyer.com_

In consideration of the services KPMG will perform to assist Engaging Counsel, by signing this letter, the Company acknowledges and agrees that (i) any professional responsibility KPMG has to communicate information to the Company as a client will be discharged by communicating such information to Counsel and Co-Counsel, and (ii) the Company has received a copy of, read, understands and agrees to abide by the terms hereof, including the ST&C's attached hereto, including without limitation, ultimate responsibility for payment of KPMG's fees as described herein.

**Accepted by:**

Pacific Gas and Electric Company :

By: _[signature]_

Title: _Vice President and Managing Director, Law_

Date: _03/14/12_

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

1. **Services; Client Responsibilities.**

   (a) References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached or incorporated (the "Engagement Letter") and references herein to KPMG shall refer to KPMG LLP, a Delaware registered limited liability partnership and the United States member firm of the KPMG network of independent firms (the "KPMG Network"). Client, its parent company and their affiliates, and their respective directors, officers, employees, and agents are collectively referred to herein as the "Client Parties." KPMG, the other member firms of the KPMG Network and firms and entities controlled by, or under common control with, one or more such member firms (collectively, the "Member Firms"), and their affiliates, and their respective partners, principals, employees, and agents are collectively referred to herein as the "KPMG Parties."

   (b) It is understood and agreed that KPMG's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. KPMG will not perform management functions or make management decisions for Client.

   (c) If KPMG audits the financial statements of Client or provides any other attestation services to Client, the rules of the American Institute of Certified Public Accountants ("AICPA") require Client to agree to the following provisions of this Paragraph 1(c). In connection with KPMG's provision of services under the Engagement Letter, Client agrees that Client, and not KPMG, shall perform the following functions: (i) make all management decisions and perform all management functions; (ii) designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to oversee such services, and to evaluate the adequacy and results of such services; (iii) accept responsibility for the results of such services; and (iv) establish and maintain internal controls over the processes with which such services are concerned, including monitoring on-going activities.

   (d) Subsequent to the completion of this engagement, KPMG will not update its advice, recommendations or work product for changes or modifications to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2. **Tax on Services.** All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Termination.** Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination.

4. **Ownership and Use of Deliverables.**

   (a) KPMG has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Engagement Letter, use, provide, modify, create, acquire or otherwise obtain rights in, (i) concepts, ideas, methods, methodologies, procedures, processes, know-how, techniques, models, templates and software and (ii) the general elements of style, design, art work and graphics and content of general applicability included in KPMG's Deliverables (as defined below) or work product not specific to Client or the services under the engagement letter (collectively, the "KPMG Property"). KPMG retains all ownership and use rights in the KPMG Property. Client shall acquire no rights or interest in the KPMG Property, except as expressly provided in the next paragraph. KPMG acknowledges that KPMG Property shall not include any of Client's confidential information or tangible or intangible property, and KPMG shall have no ownership rights in such property.

   (b) Except for KPMG Property, and upon full and final payment to KPMG under the Engagement Letter, the tangible items specified as deliverables or work product in the Engagement Letter including any intellectual property rights appurtenant thereto (the "Deliverables") will become the property of Client. If any KPMG Property is contained in any of the Deliverables, KPMG hereby grants Client a royalty-free, paid-up, non-exclusive, perpetual license to use such KPMG Property in connection with Client's use of the Deliverables. Client acknowledges and agrees that KPMG shall have the right to retain for its files copies of each of the Deliverables, subject to the provisions of Paragraph 11 below.

   (c) Client acknowledges and agrees that any advice, recommendations, information, Deliverables or other work product provided to Client by KPMG in connection with the services under the Engagement Letter is intended for Client's sole benefit and KPMG does not authorize any other party to rely upon such advice, recommendations, information, Deliverables or other work product and any such reliance shall be at such party's sole risk. Client agrees that if it makes such advice, recommendations, information or work product available to any third party other than as expressly permitted by the Engagement Letter the provisions of Paragraph 8(b) shall apply unless Client provides the written notice to the third party in substantially the form of Appendix A hereto (the "Notice"), which Notice shall be acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide KPMG with a copy of the foregoing Notice and acknowledgement and any notice and acknowledgement sent to Client by such third party as contemplated by the Notice. Client may only make a Deliverable bearing the "KPMG" name or logo available to a third party in its entirety. Notwithstanding the foregoing, (i) in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) below, no acknowledgement of the Notice shall be required and (ii) no Notice or acknowledgement shall be required with respect to disclosures expressly authorized by the Engagement Letter.

5. **Warranties.** KPMG's services under the Engagement Letter are subject to and will be performed in accordance with AICPA and other professional standards applicable to the services provided by KPMG under the Engagement Letter and in accordance with the

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

terms thereof. KPMG disclaims all other warranties, either express or implied.

6. **Limitation on Damages.** Except for the respective indemnification obligations of Client and KPMG set forth herein, the liability of the Client Parties and the KPMG Parties to one another, on account of any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter shall be limited to the amount of fees paid or owing to KPMG under the Engagement Letter. In no event shall any of the Client Parties or any of the KPMG Parties be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). For avoidance of doubt, any damages awarded against any of the Client Parties or the KPMG Parties based on a third party claim subject to indemnification hereunder shall not be subject to the disclaimer in the previous sentence. The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss asserted, whether in contract, statute, tort (including but not limited to negligence) or otherwise.

7. **Infringement.**

(a) KPMG hereby agrees to indemnify, hold harmless and defend the Client Parties from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by a third party against any of the Client Parties to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's patents issued as of the date of the Engagement Letter, trade secrets, trademarks or copyrights. The preceding indemnification shall not apply to any infringement to the extent arising out of (i) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than for Client's internal business purposes; (ii) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or (iii) the combination of the Deliverables with materials not supplied or approved by KPMG.

(b) In case any of the Deliverables (including any KPMG Property contained therein) or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, to constitute infringement, KPMG may, within a reasonable time, at its option either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing. In the event KPMG is, in its reasonable discretion, unable to perform either of the options described in clauses (i) or (ii) above, Client shall return the allegedly infringing item to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c) The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8. **Indemnification.**

(a) KPMG agrees to indemnify, hold harmless and defend the Client Parties from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the Client Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the KPMG Parties. Client agrees to indemnify, hold harmless and defend the KPMG Parties from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the KPMG Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the Client Parties.

(b) In accordance with Paragraph 4(c), Client agrees to indemnify, defend and hold harmless the KPMG Parties from and against any and all Liabilities incurred or suffered by or asserted against any of the KPMG Parties in connection with a third party claim to the extent resulting from such party's reliance upon KPMG's advice, recommendations, information, Deliverables or other work product as a result of Client's disclosure of such advice, recommendations, information or work product without adhering to the notice requirements of Paragraph 4(c) above. The foregoing indemnification obligation shall apply regardless of whether the third party claim alleges a breach of contract, violation of statute or tort (including without limitation negligence) by KPMG.

(c) The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages for which the Indemnifying Party has accepted responsibility.

9. **Cooperation; Use of Information.**

(a) Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide or arrange to provide KPMG with timely access to and use of the personnel, facilities, equipment, data and information necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional details regarding KPMG's access to and use of personnel, facilities, equipment, data and information.

(b) The Engagement Letter may set forth additional obligations of Client in connection with the services under the Engagement Letter necessary for KPMG to perform its obligations under the Engagement Letter. Client acknowledges that its failure to satisfy these obligations could adversely affect KPMG's ability to provide the services under the Engagement Letter.

(c) Client acknowledges and agrees that KPMG will, in performing the services under the Engagement Letter, base its conclusions on the

Case: 19-30088    Doc# 2172-10    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 11 of 18

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

facts and assumptions that Client furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to KPMG could have a material adverse effect on KPMG's conclusions.

10. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11. **Confidentiality.**

(a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the services under the Engagement Letter: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (1) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (2) is or becomes publicly known through no wrongful act of the Receiving Party; (3) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (4) relates to information provided by KPMG relating to the tax treatment or tax structure of any transaction; (5) the Receiving Party determines is required to be maintained or disclosed by the Receiving Party under sections 6011, 6111 or 6112 of the Internal Revenue Code ("IRC") or the regulations thereunder or under any similar or analogous provisions of the laws of a state or other jurisdiction; or (6) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

(b) The Receiving Party will deliver to the Disclosing Party or destroy all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for copies retained in work paper files or records, anything that may be stored in back up media or other electronic data storage systems, latent data and metadata. Except as otherwise set forth in this Paragraph 11 or Paragraph 15 below, the Receiving Party shall not disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required or necessary to be disclosed pursuant to a statutory or regulatory provision or court or administrative order, or, subject to appropriate conditions of confidentiality, to fulfill professional obligations and standards (including quality and peer review) or to submit and process an insurance claim.

(c) The KPMG Parties may aggregate Client information with information from other sources in connection with thought leadership projects, to improve the delivery of services to clients and to allow clients to evaluate various business transactions and opportunities. The KPMG Parties will only use this information without attribution to Client and under circumstances where Client will not be identified as the source of the information.

(d) KPMG may also use Client information and information relating to the services rendered under the Engagement Letter for the purpose of permitting the KPMG Parties to access and share knowledge and information solely among the KPMG Parties. The KPMG Parties receiving this information will be obligated to comply with confidentiality obligations with respect to such information in accordance with this Paragraph 11.

(e) Each party shall exercise the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(f) If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall, unless prohibited by law, provide prompt written notice to the Disclosing Party of such demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent required by law, subject to any protective order or the like that may have been entered in the matter. In the event the Receiving Party is requested to testify or produce its documents relating to the services under the Engagement Letter pursuant to subpoena or other legal process in judicial or administrative proceedings to which it is not a party, or in connection with an informal inquiry or investigation with the consent of the Disclosing Party, the Disclosing Party shall reimburse the Receiving Party for its time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

12. **Assignment.** Subject to Paragraph 15 below, neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld.

13. **Governing Law; Severability.** The Engagement Letter and these Standard Terms and Conditions shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws provisions. In the event that any term or provision of the Engagement Letter or these terms shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter and these terms shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

14. **Alternative Dispute Resolution.**

(a) Any dispute or claim arising out of or relating to the Engagement Letter between the parties or the services provided thereunder shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-

Case: 19-30088    Doc# 2172-10    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 12 of 18

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

Administered Arbitration of the International Institute for Conflict Prevention and Resolution (the "IICPR"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

(b) Mediation, if selected, may take place at a location to be designated by the parties using the Mediation Procedures of the IICPR, with the exception of paragraph 2 (Selecting the Mediator).

(c) Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in IICPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d) Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

(e) Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

15 **Use of Member Firms and Third Party Service Providers.**

(a) Client acknowledges and agrees that the services under the Engagement Letter, including any applicable tax advice, may be performed by a Member Firm located outside of the United States. Client understands that each Member Firm is a separate, distinct and independent legal entity and is not a partner, principal, agent or affiliate of KPMG and KPMG is not a partner, principal, agent or affiliate of any other Member Firm.

(b) Client further acknowledges that in connection with the performance of services under the Engagement Letter, KPMG and Member Firms, in their discretion or at Client's direction, may utilize the services of third party service providers within and without the United States to complete the services under the Engagement Letter.

(c) KPMG uses third party service providers within and without the United States to provide at KPMG's direction administrative and clerical services to KPMG. These third party service providers may in the performance of such services have limited access to information, including but not limited to Confidential Information, received by KPMG from or at the request or direction of Client. KPMG represents to Client that each such third party service provider has agreed to conditions of confidentiality with respect to Client's information to the same or similar extent as KPMG has agreed to pursuant to Paragraph 11 above. KPMG has full responsibility to cause these third party service providers to comply with such conditions of confidentiality and KPMG shall be responsible for any consequences of their failure to comply.

(d) Accordingly, Client consents to KPMG's disclosure to a Member Firm or third party service provider and the use by such Member Firm and third party service provider of data and information, including but not limited to Confidential Information, received from or at the request or direction of Client for the purposes set forth in Paragraph 11 and this Paragraph 15.

(e) Any services performed by a Member Firm or third party service provider shall be performed in accordance with the terms of the Engagement Letter and these Standard Terms and Conditions, including Paragraph 11 (Confidentiality), but KPMG shall remain responsible to Client for the performance of such services. Client agrees that any claim relating to the services under the Engagement Letter may only be made against KPMG and not any other Member Firm or third party service provider referred to above.

16. **Miscellaneous.**

(a) **Sarbanes-Oxley.** Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Client acknowledges that completion of this engagement or acceptance of Deliverables resulting from this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The services under the Engagement Letter shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b) **Electronic Communications.** KPMG and Client may communicate with one another by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Each party accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices). Client agrees that the final hardcopy version of a document, including a Deliverable, or other written communication that KPMG transmits to Client shall supersede any previous versions transmitted electronically by KPMG to Client unless no such hard copy is transmitted.

(c) **California Accountancy Act.** For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

(d) **Volume Rebates.** Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a

Case: 19-30088    Doc# 2172-10    Filed: 05/21/19    Entered: 05/21/19 17:15:01    Page 13 of 18

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(e) **Use of Names and Logos.** Except as permitted by law or the terms of the Engagement Letter, neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof. Any such use shall require the express written consent of the owner party.

(f) **Privileged Communications.** Information relating to advice KPMG provides to Client, including communications between KPMG and Client and material KPMG creates in the course of providing advice, may be privileged and protected from disclosure to the IRS or other governmental authority in certain circumstances. As KPMG is not able to assert the privilege on Client's behalf with respect to any communications for which privilege has been waived, Client agrees to promptly notify KPMG of any such waivers, whether resulting from communications with KPMG or third parties in the same or a related matter. Client also understands that privilege may not be available for communications with an audit client and that KPMG personnel providing audit and non-audit services will discuss matters that may affect the audit to the extent required by applicable professional standards. Client agrees that KPMG will not assert on Client's behalf any claim of privilege unless Client specifically instructs KPMG in writing to do so after discussing the specific request and the grounds on which such privilege claim would be made. Notwithstanding the foregoing, Client acknowledges that in no event will KPMG assert any claim of privilege that KPMG concludes, after exercising reasonable judgment, is not valid.

(g) **Active Spreadsheets and Electronic Files.** KPMG may use models, electronic files and spreadsheets with embedded macros created by KPMG to assist KPMG in providing the services under the Engagement Letter. If Client requests a working copy of any such model, electronic file or spreadsheet, KPMG may, at its discretion, make such item available to Client for its internal use only and such item shall be considered a Deliverable subject to Paragraph 4 above; provided that Client is responsible for obtaining the right to use any third party products necessary to use or operate such item.

(h) **Non-Solicitation.** During the term of the Engagement Letter and for one year thereafter, neither party shall solicit for hire as an employee, consultant or otherwise any of the other party's personnel who have had direct involvement with the services under the Engagement Letter, without such other party's express written consent. This prohibition shall not apply to any offers of employment which result from a general solicitation for employment, including without limitation, through the Internet, newspapers, magazines and radio.

17. **Entire Agreement.** The Engagement Letter and these Standard Terms and Conditions, including the Exhibits and Appendices hereto and thereto, constitute the entire agreement between KPMG and Client with respect to the services under the Engagement Letter and supersede all other oral and written representations, understandings or agreements relating thereto.

18. **Additional Terms for Engagements Involving Tax Services.**

(a) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Standard Terms and Conditions is or is intended to be construed as a condition of confidentiality within the meaning of IRC sections 6011, 6111, 6112 or the regulations thereunder, or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction within the scope of this engagement and all materials of any kind (including opinions and other tax analyses) that are provided to Client relating to such tax treatment and tax structure. Client also agrees to use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG advice is requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b) Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance. Client agrees to use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions. IRC section 6111 requires a material advisor with respect to a reportable transaction to disclose information on the transaction to the IRS by a prescribed date, and IRC section 6112 requires the material advisor to maintain, and make available to the IRS upon request, a list of persons and other information with respect to the transaction. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state or other jurisdiction adopting similar or analogous provisions.

(c) Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

(d) In rendering tax advice, KPMG may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, and the Employee Retirement Income Security Act of 1974, each as amended, and the relevant state, local and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.

## APPENDIX A

## [FORM OF NOTICE AND ACKNOWLEDGEMENT]

[Name of Third Party]
Address


The advice, recommendations and information in the document included with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG's engagement for [Name of Client]. It has been provided to you for informational purposes only and you are not authorized by KPMG to rely upon it and any such reliance by you or anyone else shall be at your or their own risk. You acknowledge and agree that KPMG accepts no responsibility or liability in respect of the advice, recommendations or other information in such document to any person or organization other than [Name of Client]. You shall have no right to disclose the advice, recommendations or other information in such document to anyone else without including a copy of this notice and, unless disclosure is required by law or to fulfill a professional obligation required under applicable professional standards, obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.*

Very truly yours,

[Name of Client]

By: _____
   Name:
   Title:

**Accepted and Agreed to on this ___ day of ____, 20__ by:***

[Name of Third Party

By: _____
   Name:
   Title:

*Remove in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) of the Standard Terms and Conditions in which case an acknowledgement is not required by the terms of Paragraph 4(c).

## Appendix B

## KPMG Evidence and Discovery Management (EDM) Tools Terms and Conditions

**1. Terminology** - KPMG LLP ("KPMG") is a Delaware limited liability partnership, the United States member firm of KPMG International Cooperative, a Swiss entity. "Client" is the business entity engaging KPMG to provide the services described in the engagement letter or other contractual agreement ("Engagement Contract") to which these terms are appended. "Client Affiliates" are direct or indirect subsidiaries of Client. "Authorized Users" are personnel of Client or Client Affiliates directly involved in the engagement between KPMG and Client, for which Client has explicitly requested KPMG to establish user accounts for use of the KPMG EDM Tools that are designated on the Engagement Contract. Agents or contractors of Client are Authorized Users only if qualified in accordance with paragraph 7. To the extent there is a conflict between the intellectual property rights granted to Client in the Engagement Contract and these Terms and Conditions, these Terms and Conditions shall control with respect to the use of the KPMG EDM Tools.

**2. Technology Platform** – The KPMG EDM Tools are web-based tools designed to assist with evidence and discovery management. The KPMG EDM Tools are a combination of licensed and proprietary technology. The KPMG EDM Tools may not be used by Client for any purpose other than as contemplated by the Engagement Contract or made available to any other person other than Authorized Users.

**3. Availability** – The KPMG EDM Tools are accessible through a Web browser (Internet Explorer version 5.5 and higher) and certain other software that is freely available over the Internet. There is no other software required to run the application. However, as with any Internet-based product, technical factors such as bandwidth, network configurations, and laptop browser settings can affect the KPMG EDM Tools' speed and accessibility. Application, server, and operating system maintenance, as well as broader Internet disruptions, will also mean that the KPMG EDM Tools may be unavailable whenever such maintenance (scheduled and unscheduled) may be necessary. Therefore, unless and to the extent set forth in the Engagement Contract, KPMG does not make any representation or warranty regarding the availability or accessibility of the KPMG EDM Tools to any Authorized User.

**4. Proprietary Rights** - Client acknowledges and agrees that: a) the KPMG EDM Tools are the exclusive property of KPMG and its licensors and b) except for the limited license granted herein to Client, Client acquires no right or interest of any kind in or to KPMG EDM Tools. Client agrees not to license, sell, export or otherwise profit from the KPMG EDM Tools. Client also agrees not to (i) remove, modify or obscure any copyright, trademark or other proprietary rights notices that are contained in or on the KPMG EDM Tools, and (ii) disassemble, decompile, reverse engineer or in any other way modify the KPMG EDM Tools and not to hack into or otherwise attempt to access other areas of the KPMG network or servers to which it has not been granted access.

**5. Limited License** – KPMG grants to Client a non-exclusive, royalty-free (other than the fees set forth in the Engagement Contract) limited license to use the KPMG EDM Tools in accordance with these Terms and Conditions of Use.

**6. Termination of Access** - Client's right to use the KPMG EDM Tools will terminate upon completion or termination of the services under the Engagement Contract, at which time KPMG will deactivate accounts for all Authorized Users and delete or provide to Client a copy of all Client data residing and accessible on the KPMG EDM Tools at such time, in accordance with the Engagement Contract. KPMG also retains the right to terminate Client's use of KPMG EDM Tools on 30 days advance written notice for any other reason, in KPMG's sole discretion, in which case Client's payment obligations relating to the KPMG EDM Tools shall cease upon such termination. If KPMG terminates Client's use of the KPMG EDM Tools due to unauthorized use or other breach by Client or Authorized Users of these Terms and Conditions, such user accounts may be deactivated immediately.

**7. Restricted to Authorized Users** - Client agrees not to provide access to the KPMG EDM Tools, any component of the KPMG EDM Tools or any of the intellectual property incorporated in the KPMG EDM Tools to any person other than Authorized Users. Agents or contractors of Client can be granted access to the KPMG EDM Tools only with KPMG's express permission, which can be withheld in KPMG's sole discretion. If Client is a law firm, Client may designate personnel at its applicable client's organization to be Authorized Users. Client shall be responsible for such agents, contractors or clients' use of the KPMG EDM Tools in accordance with these Terms and Conditions.

**8. Content Standards** - Client acknowledges and agrees that it is exclusively responsible for all data and documents posted on the KPMG EDM Tools by its Authorized Users. Client will ensure that all such content complies with all

applicable laws, regulations and authority; that the content is not defamatory or indecent; and that the content will not infringe the intellectual property or data privacy rights of any third party.

**9. Viruses** – KPMG uses commercially reasonable efforts to screen data loaded into the KPMG EDM tools for viruses. However, KPMG does not guarantee that the KPMG EDM Tools will be free from viruses, and is not responsible for any damage caused by viruses.

**10. Data and Document Retention** Client's data will be handled in accordance with the Engagement Contract, including without limitation in accordance with the provisions therein pertaining to backup and disposition of Client's data. The KPMG EDM Tools should not be used as a primary document retention system nor should the KPMG EDM Tools be regarded as a system of record. Client is responsible for ensuring that Authorized Users retain copies of all data and documents posted within the KPMG EDM Tools by Authorized Users. Except as expressly set forth in the Engagement Contract, KPMG has no responsibility for recovering or providing to Client any data or documents contained in the KPMG EDM Tools.

**11. Indemnification** - Client agrees to indemnify KPMG against all claims, liabilities, costs and expenses (including legal fees) incurred by KPMG in the event of a third party claim, demand, suit or action arising out of or relating to any unauthorized use of the KPMG EDM Tools or use thereof contrary to these Terms and Conditions, except to the extent caused by KPMG. KPMG hereby agrees to indemnify Client with respect to claims that the KPMG EDM Tools infringe the copyright or other proprietary rights of a third party in accordance with and to the same extent as KPMG's indemnification obligation with respect to infringement under the terms of the Engagement Contract.

**12. No Warranties; Liability** - Client's access to and use of the KPMG EDM Tools is provided on an "as is" basis without representation or warranty of any kind, unless and to the extent set forth in the Engagement Contract. In particular, any and all implied warranties of merchantability and fitness for a particular purpose are expressly excluded. The KPMG EDM Tools are not designed or intended for use in any situation where failure or fault of any kind of the KPMG EDM Tools could lead to death or serious bodily injury of any person, or to severe physical or environmental damage ("High Risk Use"). Client is not licensed to use the KPMG EDM Tools in, or in conjunction with, High Risk Use. Other than KPMG's indemnification obligation set forth in Paragraph 11 above, KPMG's entire liability for the use of the KPMG EDM Tools shall not exceed the limitation of liability set forth in the Engagement Contract.

**13. System Changes** - In its sole discretion, KPMG may release software application updates to the KPMG EDM Tools. KPMG shall inform Client of important changes in functionality that may affect Client's use of the KPMG EDM Tools.



# Appendix C

**KPMG**
Confidential Pricing Sheet for End-to-End eDiscovery Services

This document contains confidential or proprietary information of KPMG LLP, the disclosure of which would provide a competitive advantage to others; therefore, the recipient shall not disclose, use, or duplicate this document, in whole or in part, for any purpose other than administration of this agreement.

## EVIDENCE & DISCOVERY MANAGEMENT IN THE U.S.

| | Rate | Notations |
|---|---|---|
| **I PROJECT PLANNING** | | |
| Project Planning and Strategy Session(s) | Hourly | Discounted Hourly Rates listed below[1] |
| Client-site connectivity and sustainable bandwidth testing | Hourly | Discounted Hourly Rates listed below |
| Mandatory Discovery Radar Reviewer Training | $750 | Per 1.5-hour session |
| Mandatory Discovery Radar Manager Training | $2,400 | Per 4-hour session |
| Discovery Radar Administrator Certification | $5,500 | Per Person. Classroom at CTEC |
| Incremental Onsite or Web-based application training | Hourly | Discounted Hourly Rates listed below |
| **II DATA IDENTIFICATION & COLLECTION[2]** | | |
| On-site and Remote Data Identification Efforts[*] | Hourly | Discounted Hourly Rates listed below[1] |
| File Preservation Program ("FPP") for Secure User-Defined Preservation | $150 | per secured file and hourly support[1] |
| Hard Drive Forensic Imaging | $500 | per hard drive |
| Mailbox Collection (Active or Restored) Server | $225 | per mailbox |
| Active Network Share Collection | $225 | per custodian/group share |
| PDA/Cell Phone Collection | $500 | per device |
| Other Imaging/Collection (CD, DVD, Floppy, Flash Media, etc.) | As Quoted | Depends on Media |
| **III DATA EXTRACTION deNIST and PROCESSING** | | |
| Hard Drive and Network Share Data Paring Extraction — This is not required with FPP collections | $300 | per drive[2] |
| Native File Processing with Nuix — Text and metadata extraction, QC, exception file handling and reporting and loading for review services | $250 | per gigabyte (min. charge 1 GB per batch processed) |
| Processing with Conversation Threading, Near De-duplication Identification — Threading and Near Dedupe service. Text and metadata extraction, OCR, QC, exception file handling and reporting and loading for review services (optional deduplication and OCR of image only files) | $450 | Tiered Pricing per GB (1 - 500)[2] |
| | $425 | Tiered Pricing per GB (501 - 1,000)[2] |
| | $400 | Tiered Pricing per GB (Over 1,000)[2] |
| Processing data for KPMG Software Assisted First Review (SAFR) within Discovery Radar | $0.10 | per document |
| Third Party data normalization and loading into Discovery Radar (from IT.com, Concordance, | $475.00 | per hour |
| **IV DATA MANAGEMENT, FILTERING AND & REVIEW WORKFLOW MANAGEMENT - RECURRING MONTHLY FEES** | | |
| Media Storage and Management | $25 | per month per physical GETS ID |
| Repository Creation | No Charge | |
| Data Hosting and Management inclusive of Disaster Recovery and Business Continuity protocols, near-line data (process data used for culling, ulti-on-demand, new data culling, et al) and Online data (data visible to end-user for ECA, Filtering and Review activities) | $40 | Tiered Pricing per GB (1 - 500)[3] |
| | $35 | Tiered Pricing per GB (501 - 1,000)[3] |
| | $30 | Tiered Pricing per GB (Over 1,000)[3] |
| Discovery Radar User Fee (For PG&E initial 10 users at no charge) | $95 | per user per month |
| TIFF-on-DEMAND (Batch conversion to 300dpi Group IV B&W images) | $0.04 | per page. High resolution Tiffs are billed at $0.06/page |
| OCR Services | $0.04 | per image |
| Enable Multi-Color Hit Highlighting (on TIFF image only) | $0.04 | per page |
| **V PRODUCTION** | | |
| Data Export in CSV or with Concordance Load File (Native, Image or mixed) Includes all endorsements | $90 | per gigabyte ($500 minimum per production) |
| TIFF (Group IV 300dpi B&W images) created at time of production | $0.04 | per page |
| Media[*] | As Invoiced | per HDD, DVD or CD |
| **VI DATA ENVIRONMENT & REPOSITORY SHUT DOWN[***]** | | |
| Option A: Immediate Shutdown | No Charge | per occurrence |
| Option B: Final Export | $100 | per gigabyte[4] |

All services will be billed at the above rates unless the services extend beyond standard collections and forensic analysis. In addition, for services not covered above all services will be billed at an hourly rate. The hourly rates for US based professionals are as follows:

[1] **Additional Technical and Advisory Services**

| | | |
|---|---|---|
| Partner/MD: | $595 | per hour |
| Director: | $575 | per hour |
| Manager: | $475 | per hour |
| Senior Associate: | $375 | per hour |
| Associate: | $250 | per hour |
| Para Professional: | $100 | per hour |
| Data Entry Clerk: | $75 | per hour |

KPMG understands the time pressures of discovery, and staffs to provide comprehensive support. However, on nationally recognized holidays and holiday weekends observed by KPMG, required coverage will be billed hourly at 2X the above referenced rates. KPMG recognized national holidays are as follows:

| Memorial Day and associated weekend | Independence Day and associated weekend | Labor Day and associated weekend | Thanksgiving and Thanksgiving Weekend | Christmas Eve, Christmas Day and adjacent weekend | New Year's Eve and New Year's Day |
|---|---|---|---|---|---|

[2] Assumes all media is in working condition. Special handling may apply if media is damaged or corrupted.

[3] "Hibernation", or near-line, hosting for inactive matters: Hosting per GB rate will be reduced by 50% when hibernation/inactive hosting is requested. In order to qualify for "hibernation" hosting discount, all user accounts must be deactivated, there must be no user access in the repository for the entire month, and all previously issued invoices must be paid/current with no past-due Accounts Receivable. Please note that "hibernation" status is not pro-rated for portions of a month, but rather applies only when there is no activity and no user accounts for a full month.

[4] Additional charges may apply for TIFF images and/or unusual export requirements.

**General Notes**
*Travel expenses are billed as invoiced
**KPMG will encrypt all client data deliverables using a commercially available software encryption tool
Data unit charges based on uncompressed files/data.
Prices subject to change based on specific project requirements and actual data processed.
Pricing for electronic content conversion - raster - is based upon resultant black and white images.

*** **End of Engagement**
At the end of the engagement, the Client will advise KPMG of the desire to close the engagement in writing. All documents and/or data provided to us by you or on your behalf are referred to below as "Client's data."
During the course of the engagement, unless notified by the Client in writing, KPMG will back up Client's data resident in data facilities managed by KPMG in accordance with our then current tape retention and disaster recovery practices, which set forth the time frame after which this data is overwritten and effectively deleted. Client shall, not later than 30 days after the end of the engagement, advise KPMG of the end-of-engagement disposition option it elects with respect to Client's data. Disposition options are as follows:
A. Shutdown
KPMG will 1) return or 2) delete and destroy (select one) all of Client's original data not already returned to the Client and only to the extent it was originally delivered on physical media or in hard copy. KPMG will delete and destroy the Client's data in all other environments, except for copies retained in work paper files or records, anything that may be stored in back up media or other electronic data storage systems, latent data and metadata.
B. Final Export
KPMG will export the Client's data resident in one or more repositories as determined by the Client at the rate agreed to above. Data export will be to portable media and the format will be as agreed upon by the parties. The Client will have 30 calendar days after receipt is confirmed to accept the condition of the data. At that time we will delete and destroy the Client's data in all other environments, except for copies retained in work paper files or records, anything that may be stored in back up media or other electronic data storage systems, latent data and metadata. If the Client does not elect an end-of-engagement disposition option at the end of the 30 day period referred to above, the Client will be deemed to have elected the "delete and destroy" option contemplated by Option A.