**Exhibit A**

**Engagement Letter**

Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

**Pacific Gas and
Electric Company**

**Janet Loduca**
Vice President and Deputy General Counsel

Law Department
77 Beale Street, B30A
San Francisco, CA 94105

*Mailing Address:*
P. O. Box 7442
San Francisco, CA 94120

415.973.0174
Fax: 415.973.5520
Janet.Loduca@pge.com

January 2, 2018

Joshua Hill
Morrison & Foerster, LLP
425 Market Street
San Francisco, CA 94105-2482

Re: Master Agreement

Dear Mr. Hill:

I am pleased that your firm will be providing legal services to Pacific Gas and Electric Company
("PG&E"). If the matters contemplated do not present any conflicts for you or your firm, we are
prepared to refer them to you for handling. If you have not yet ruled out the possibility of a
conflict, however remote, please do so within one week of receipt of this letter.

The attached Master Services Agreement ("Agreement") and Outside Counsel Matter
Management, Staffing, and Billing Requirements ("Billing Requirements") outline the
conditions upon which your engagement is based. Budgets, billings, and billing procedures are
crucial to the successful performance of this engagement. Please review the Agreement and
Billing Requirements carefully. If the terms of this agreement are satisfactory, please so indicate
by signing and returning it to our Legal Finance Support Group at the address below:

> Pacific Gas and Electric Company
> Attn: Legal Finance Support Group
> P. O. Box 7133
> San Francisco, CA 94120-7133

Please note that for purposes of compliance with the Securities and Exchange Commission's
Attorney Conduct Rules (commonly known as the "Sarbanes-Oxley Act"), PG&E's Chief Legal
Officer is John Simon, Executive Vice President and General Counsel, PG&E Corporation,
77 Beale Street, Room 3217, San Francisco, CA 94105, (415) 973-7138.

Sincerely,

Janet Loduca
VP and Deputy General Counsel

JL: gac



# MASTER SERVICES AGREEMENT

Updated January 2018

# TABLE OF CONTENTS

**Page**

1. RELATIONSHIP AND ENGAGEMENT EXPECTATIONS ................................................. 1

2. RATES, EXPENSES, AND SERVICES ................................................. 2

3. VOLUME AND DURATION OF WORK ................................................. 3

4. DIVERSITY ................................................. 3

5. BILLING ................................................. 4

6. CONFLICTS OF INTEREST AND BUSINESS ETHICS ................................................. 4

7. COMPLIANCE WITH SARBANES-OXLEY ACT ATTORNEY CONDUCT RULES ..... 4

8. WARRANTY ................................................. 5

9. INFRINGEMENT PROTECTION ................................................. 5

10. HAZARDOUS MATERIALS ................................................. 5

11. SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY ................................................. 5

12. CONFIDENTIAL INFORMATION AND INFORMATION SECURITY MEASURES ..... 6

13. DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS ................................................. 7

14. AVAILABILITY OF BILLING INFORMATION ................................................. 7

15. FEDERAL EQUAL OPPORTUNITY LAWS ................................................. 7

16. CHOICE OF LAWS ................................................. 8

17. NON-WAIVER ................................................. 8

18. FORCE MAJEURE ................................................. 8

19. TERMINATION AND BREACH OF AGREEMENT ................................................. 8

20. ARBITRATION OF FEE DISPUTE ................................................. 9

21. PROFESSIONAL LIABILITY INSURANCE ................................................. 9

22. GENERAL PROVISIONS ................................................. 9

47750
50386

# PG&E MASTER SERVICES AGREEMENT

This Master Services Agreement governs your representation of Pacific Gas and Electric Company ("PG&E") on all matters. This Master Services Agreement includes and incorporates all attached Exhibits and PG&E's Outside Counsel Billing Requirements ("Billing Requirements"). The Master Services Agreement, Exhibits, and Billing Requirements are referred to jointly as the "Agreement."

For purposes of this Agreement, "you" and "your" means: (1) the law firm or legal services provider executing this Agreement; and (2) all personnel, representatives, and vendors of such law firm or service provider. PG&E and the law firm may be individually referred to as "Party" and jointly referred to as "Parties."

As each distinct matter in which you are presenting PG&E arises, a separate engagement letter agreement will be sent to you covering the specific details of the matter. The terms of this Agreement apply to each such engagement.

## 1.     RELATIONSHIP AND ENGAGEMENT EXPECTATIONS

1.1     <u>Retention</u>. You acknowledge and agree that you have been engaged and will be supervised by PG&E's Legal Department. You should not solicit or accept an engagement from any PG&E department other than the Law Department. PG&E reserves the right to direct each matter for which you have been retained, including all litigation.

1.2     <u>Firm Relationship Partner</u>. You are expected to identify a Relationship Partner for your firm to serve as a single point of contact across matters. While this person may serve as the lead outside counsel for certain matters, the expectation is that he or she will maintain a level of knowledge regarding your firm's scope of services for PG&E, spanning across all matters for which you are retained. The Relationship Partner will be a single point of contact for periodic discussions related to two-way feedback, dissemination of information, updates, general relationship considerations, and other administrative topics.

1.3     <u>PG&E Relationship Manager</u>. PG&E will identify a Relationship Manager for your firm to serve as a single point of contact across matters. The Relationship Manager will meet with you periodically to review the matters that you are handling. The Relationship Manager will be a single point of contact for periodic discussions related to two-way feedback, dissemination of information, updates, general relationship considerations, and other administrative topics.

1.4     <u>PG&E Matter Liaison</u>. All PG&E legal matters are coordinated through the PG&E Law Department. A PG&E Matter Liaison will be assigned for each matter that you handle for PG&E. You and the PG&E Matter Liaison should coordinate efforts in developing the most effective strategy for handling a matter. In some cases, the PG&E Matter Liaison may not be an attorney, or may be outside of the PG&E Law Department.

1

47750
5Q386

1.5 <u>Your Conduct as PG&E's Representative</u>.  Your conduct, attitude, and demeanor while representing PG&E should be professional and courteous at all times.  Your communications, whether oral or written, must be civil and respectful in tone.  Your representation should be consistent with PG&E's culture, including acting with integrity, transparency and humility, valuing diversity and inclusion, and succeeding through collaboration and partnership.  PG&E is committed to maintaining, promoting, and improving employee, contractor, and public safety and health, and firms performing services for PG&E are to do the same.

1.6 <u>Consultants/Experts</u>.  In addition to its own in-house experts, PG&E reserves the right to identify and recommend all outside consultants/experts.  Authorization must be obtained from PG&E before hiring any expert or consultant, as described further in the Billing Requirements.

1.7 <u>Independent Contractor Status</u>.  In assuming and performing the obligations of this Agreement, you are an independent contractor and will not be eligible for any benefits which PG&E may provide its employees.  All persons, if any, whom you hire must be your employees or your subcontractors and will not be construed as employees or agents of PG&E in any respect.

1.8 <u>Periodic Requests for Proposals</u>.  When PG&E uses outside counsel, it does so based on counsel's professionalism and expertise.  PG&E approaches its relationship with outside counsel as a partnership, and understands the value of developing that relationship over the long term.  At the same time, PG&E wants to derive the most benefit from its outside counsel expenditures.  For those subject matters for which PG&E retains outside counsel on a regular basis, PG&E intends to issue requests for proposals at least once every two years to multiple law firms with expertise in the subject matter.

2. **RATES, EXPENSES, AND SERVICES**

2.1 <u>Rates</u>.  The Parties have agreed to the rates for individuals and specific categories of work that are included in Exhibit A.  In addition, to the extent that you have offered a discount for certain volumes of work, the discounts are also reflected in Exhibit A.

2.2 <u>Expenses and Disbursements</u>.  The Billing Requirements include a description of the expenses and disbursements that PG&E will pay for under this Agreement.  PG&E will <u>not</u> reimburse you for expenses or disbursements that are not reasonable, ordinary, economical, and prudent, nor will PG&E pay for expenses or costs that are prohibited by the Billing Requirements or are above an amount specified in the Billing Requirements.

2.3 <u>Nonconforming items, Expenses and Disbursement</u>.  PG&E will strike from your statements any items, expenses, or disbursements that do not conform with the terms of this Agreement, including the Billing Requirements.

2

47750
5Q386

2.4 <u>Alternative Fee Arrangements</u>. To the extent that you have offered PG&E an alternative fee arrangement for all of the services that you will provide under this Agreement, the alternative fee arrangement is included in Exhibit A. The Parties may also agree to alternative fee arrangements for specific matters. To the extent there is an alternative fee arrangement for a specific matter, or for any specific project associated with a matter (*e.g.*, a fixed fee for a motion), that alternative fee arrangement will be included in the engagement letter related to that specific matter and/or will be separately documented by the Parties.

2.5 <u>Additional Services</u>. To the extent that you have offered additional services to PG&E, these additional services are also included in Exhibit A. PG&E may utilize these additional services during the term of this Agreement.

2.6 <u>Billing Requirements</u>. PG&E may amend the Billing Requirements at its sole discretion from time to time and will provide you with a copy of the amended Billing Requirements and the date the amended Billing Requirements become effective.

3. **VOLUME AND DURATION OF WORK**

3.1 <u>Volume of Work</u>. This Agreement does not guarantee you any volume or duration of work. This Agreement establishes the terms and conditions on which PG&E will, through the issuance of specific engagement letters, obtain legal services from you.

3.2 <u>Duration of Work</u>. No services are authorized to be performed on any matter without issuance by PG&E of an engagement letter for that matter. This Agreement is intended to be an "evergreen" agreement without a specified termination date. However, the Parties may individually or jointly terminate this Agreement, as well as any engagement entered into under this Agreement, under the termination provisions in Section 19.

4. **DIVERSITY**

4.1 <u>Diversity Plan</u>. If you hire consultants to assist you on providing legal services to PG&E, with PG&E's prior approval, PG&E encourages you to submit to PG&E your plan to provide Small Business Enterprises ("SBEs"), Women, Minority  and Disabled Veteran Business Enterprises ("WMDVBEs"), and Lesbian, Gay, Bisexual and Transgender Business Enterprises ("LGBTBEs") the opportunity to bid on the performance of work.

4.2 <u>Identification of Small and Diverse Business Enterprises</u>. PG&E has Supplier Diversity specialists available to assist you in identifying certified small business and diverse businesses for bidding opportunities.

3

5.  **BILLING**

5.1     PG&E currently utilizes TeamConnect, a matter management system, and its electronic billing ("e-billing") system, Collaborati. The Collaborati system is how your firm will collaborate with the PG&E Law Department on timekeeper and invoice management. You agree to abide by the terms of use for such system. You acknowledge that PG&E has the right to change the e-billing system from time-to-time and you agree to cooperate in the implementation of any successor e-billing system selected by PG&E. More detailed billing information is included in the Billing Requirements. Please note: PG&E will only accept your statements in electronic format via Collaborati. Any mailed statement will be returned unpaid.

6.  **CONFLICTS OF INTEREST AND BUSINESS ETHICS**

6.1     As long as your services for PG&E continue under this engagement, you are required to adhere to:

6.1.1   All applicable rules and regulations governing professional conduct;

6.1.2   PG&E's Supplier Code of Conduct (http://www.pge.com/includes/docs/pdfs/b2b/purchasing/suppliers/SupplierCode ofConductPGE.pdf); and

6.1.3   PG&E's "Attorney Representation Conflict Principles" which are included as Exhibit B.

6.2     You agree to immediately notify immediately PG&E's Deputy General Counsel or Assistant General Counsel of any violations of this Section 6 upon becoming aware of such violation.

7.  **COMPLIANCE WITH SARBANES-OXLEY ACT ATTORNEY CONDUCT RULES**

7.1     You agree to comply with the Securities and Exchange Commission's ("SEC") Attorney Conduct Rules promulgated on August 5, 2003, in Part 205 of Title 17 of the Code of Federal Regulations, as may be amended from time to time ("the Part 205 Rules").

7.2     Upon PG&E's request, you agree to furnish to PG&E a written statement that you have a policy to comply with the Part 205 Rules.

7.3     You agree to notify and consult with PG&E's Executive Vice President and General Counsel, Vice President and Deputy General Counsel, and/or Assistant General Counsel, subject to your reasonable discretion and ethical obligations, if you believe that a formal report to the Executive Vice President and General Counsel or the Audit Committee of PG&E's Board of Directors is warranted under the Part 205 Rules. In this regard, you agree to designate in writing a single

47750
5Q386

attorney as the "supervisory attorney" to make any required reports and to receive notification regarding responses from PG&E. The term "supervisory attorney" is defined in the Part 205 Rules. Further, you agree to keep PG&E currently informed of the identity of your "supervisory attorney."

8. **WARRANTY**

8.1 You warrant to PG&E that the work under this Agreement will be performed with the degree of skill and care that is required by current, good, and sound professional procedures and practices, and in conformance with generally accepted professional standards prevailing at the time the work is performed so as to ensure that the services performed are correct and appropriate for the purposes contemplated in this Agreement.

9. **INFRINGEMENT PROTECTION**

9.1 You represent to PG&E that the material to be prepared under this Agreement will not infringe upon the copyright, patent, or license, or otherwise violate the proprietary rights, including trade secret rights, of any person or entity. You agree to indemnify and hold PG&E, its parent, subsidiaries, and affiliates harmless from any liabilities, costs, and damages arising out of any such infringement and from any suit, demand or claim made against PG&E, its parent, subsidiaries, and affiliates alleging any such infringement or violation. If there is such a suit, demand, or claim, you agree as soon as possible either to procure for PG&E the right to continue using the material, replace the material with noninfringing material, or modify it so it becomes noninfringing. You further agree to pay any judgment or reasonable settlement offer resulting from a suit, demand or claim, and pay any reasonable attorney's fees incurred by PG&E in defense against such suit, demand, or claim.

10. **HAZARDOUS MATERIALS**

10.1 The California Health and Safety Code requires businesses to provide warnings prior to exposing individuals to materials listed by the Governor as chemicals "known to the State of California to cause cancer, birth defects, or reproductive harm." PG&E uses chemicals on the Governor's list at many of its facilities. In addition, many of these chemicals are present at non-PG&E-owned facilities and locations. Accordingly, in performing the work or services contemplated under this Agreement, you, your employees, agents, and subcontractors may be exposed to chemicals on the Governor's list. You are responsible for notifying your employees, agents, and subcontractors that work performed hereunder may result in exposures to chemicals on the Governor's list.

11. **SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY**

11.1 At PG&E, safety is a core value and PG&E is committed to improving employee, contractor, and public safety. You will perform all work associated with your representation of PG&E safely, in compliance with all applicable laws,

5

47750
50386

regulations, and best practices, including but not limited to, "Occupational Safety and Health Standards" promulgated by the U.S. Secretary of Labor and the California Division of Occupational Safety and Health and with the understanding that you are representing a company that promote safety in the communities it serves. In the course of your representation of PG&E, if you are on-site at PG&E facilities or asset locations, you will be required to comply with all PG&E safety procedures and precautions. If, in the course of your representation of PG&E, you encounter any situations or operations that you consider to be unsafe, please alert the PG&E Matter Liaison immediately so that the unsafe situation can be evaluated and made safe as necessary.

12. **CONFIDENTIAL INFORMATION AND INFORMATION SECURITY MEASURES**

12.1 <u>Definition</u>. Under this Agreement, "PG&E Confidential Information" shall include: (i) all documents, data and information that you receive in the course of performing under this Agreement (whether from PG&E, or a PG&E-authorized third party, and whether prior to this Agreement in contemplation of performing work under this Agreement) including, without limitation: customer information; employee information; regulatory information; litigation strategies; business strategies and costs; financial information; vendor or contractor information; gas and electric system information; technical information; intellectual property; information in the custody of PG&E or a third party which constitutes valuable confidential and proprietary information and/or trade secrets belonging to PG&E or third parties; and information relating to or owned by any affiliate of PG&E including its parent, subsidiaries, or affiliated companies; and (ii) all documents, data or information you create in connection with your representation of PG&E.

12.2 <u>Exclusions</u>. PG&E Confidential Information shall not include information that: (i) was in the public domain at the time you received it or is subsequently made available to the general public without restriction and without breach of this Agreement by you; (ii) was or becomes known by you at the time of disclosure on a non-confidential basis from a source, other than PG&E, lawfully having possession of and the right to disclose such information; (iii) was independently developed by you (other than in connection with your representation of PG&E) without use of PG&E Confidential Information; (iv) is disclosed with the prior written approval of PG&E; or (v) is used or disclosed pursuant to a court order, subpoena or other lawful order of a court or governmental authority of competent jurisdiction in which case you shall give PG&E maximum practicable advance notice prior to any use or disclosure.

12.3 <u>Treatment of PG&E Confidential Information</u>. PG&E Confidential Information shall be treated as confidential and shall not be disclosed to others unless such disclosure is in support of performing your obligations under this Agreement and approved by PG&E.

Case: 19-30088    Doc# 2194-3    Filed: 05/22/19    Entered: 05/22/19 17:42:12    Page 10
of 25

47750
50386

12.4 <u>Security Measures</u>. Exhibit C to this Agreement, *Security Measures to Protect PG&E Confidential Information*, describes the measures necessary to protect PG&E Confidential Information. Failure to implement and maintain Security Measures in accordance with Exhibit C, or resolve and mitigate any non-compliance, may constitute a material breach of this Agreement.

13. **DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS**

13.1 You agree to comply with the *PG&E Contractor Document Retention and Production Requirements* included in Exhibit D. In Exhibit D, the term "Contractor" means you and the term "Work" means the services performed under this Agreement.

14. **AVAILABILITY OF BILLING INFORMATION**

14.1 <u>Terms and Scope</u>. PG&E will have, during the term of the Agreement and for five (5) years thereafter, access at all reasonable times to all of you and your subcontractors accounts and records of all description, including but not limited to computer files, pertaining to this Agreement necessary to verify and review the work performed and the fees and expenses billed to PG&E. These records will include work papers and related files, time reports and details of reimbursable expenses (with invoices for charges in excess of $75). You are not required to disclose any confidential and/or proprietary information including, but not limited to, other client information and information related to internal financial matters or affairs.

14.2 <u>Accounting Information</u>. You and your subcontractors' accounts must be kept in accordance with generally accepted accounting principles in the particular industry and must be kept in such a manner and in sufficient detail to clearly disclose the nature and amounts of the different items of service and cost pertaining to the Agreement and the basis for charges or allocations to the Agreement. You and your subcontractors must preserve such accounts and records for a period of five years after the term of the Agreement or of any particular engagement, whichever occurs first. PG&E will have the right to reproduce any such accounts and records.

14.3 <u>Availability of Subcontractors Information</u>. You must include the necessary provisions in your subcontracts to ensure that your subcontractors comply with this provision.

15. **FEDERAL EQUAL OPPORTUNITY LAWS**

15.1 During the performance of this Agreement, your firm agrees to comply with all Federal Equal Opportunity laws, orders and regulations, including Executive Order 11246, the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1972, the Rehabilitation Act of 1973, the Vietnam Era Veterans Readjustment Assistance Act of 1974, the Americans With Disabilities Act of 1990, and the Civil Rights Act of 1991. Your firm will not discriminate

7

47750
5Q386

against any employee or applicant for employment because of race, color, religion, sex, or national origin and will take affirmative action to ensure that applicants and employees are treated without regard to their race, color, religion, sex, or national origin.

16. **CHOICE OF LAWS**

16.1 This Agreement shall be construed and interpreted in accordance with the laws of the State of California, excluding any choice of law rules which may direct the application of the laws of another jurisdiction.

17. **NON-WAIVER**

17.1 The waiver by either Party of any breach of any term, covenant or condition contained in this Agreement, or any default in the performance of any obligations under this Agreement, will not be deemed to be a waiver of any other breach or default of the same or any other term, covenant, condition or obligation. Nor will any waiver of any incident of breach or default constitute a continuing waiver of the same.

18. **FORCE MAJEURE**

18.1 Neither of the Parties will be considered in default in the performance of its obligations under this Agreement, except obligations to make payments hereunder for work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause which is beyond the reasonable control of the affected party. In the event either Party claims that performance of its obligations was prevented or delayed by any such cause, that Party must promptly notify the other Party of that fact, and of the circumstances preventing or delaying performance. Such Party claiming a cause-delayed performance must endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

19. **TERMINATION AND BREACH OF AGREEMENT**

19.1 <u>Right to Terminate</u>. Either Party may terminate this Agreement by providing written notice to the other Party. Unless specifically agreed, you will provide no further services and incur or advance no further costs on PG&E's behalf after receiving a notice of termination from PG&E. If you are PG&E's attorney of record in any proceeding, PG&E will execute and return a substitution-of-attorney form immediately upon its receipt from you.

19.2 <u>Returning of PG&E Property</u>. Upon termination of this Agreement or an individual engagement under this Agreement, all PG&E Confidential Information, files, documents, and other property will remain PG&E's property and must be returned to PG&E. PG&E's property includes, for example, correspondence, deposition transcripts, exhibits, experts' reports, legal documents, physical

47750
50386

evidence, and other items reasonably necessary to PG&E's representation, whether PG&E has paid for them or not.

19.3 <u>Breach of Agreement</u>. In the event that either Party breaches this Agreement, the non-breaching Party will have the right to immediately terminate this Agreement.

19.4 <u>Consequential Damages</u>. In the event of termination for any reason, PG&E will not be liable for consequential damages, *e.g.*, lost or anticipated profits or overhead on uncompleted portions of any engagement.

## 20. ARBITRATION OF FEE DISPUTE

20.1 If a dispute arises between us regarding your fees under this Agreement and you file suit in any court other than small claims court, PG&E will have the right to stay that suit by timely electing to arbitrate the dispute under California Business and Professions Code §§ 6200-6206, in which event you must submit the matter to such arbitration.

## 21. PROFESSIONAL LIABILITY INSURANCE

21.1 You agree to maintain Errors and Omissions Liability insurance appropriate to the provision of legal services under this Agreement. Coverage shall be for a professional error, act or omission arising out of the scope of services under this Agreement. The limit shall not be less than $1,000,000 each claim/$2,000,000 aggregate.

## 22. GENERAL PROVISIONS

22.1 <u>Modification by Subsequent Agreement</u>. This Agreement may be modified by subsequent agreement of the Parties only by an instrument in writing signed by both of us. Any oral modification must be reduced to a writing signed by both Parties or it will be void and not binding in any respect.

22.2 <u>Integration</u>. This Agreement contains the entire agreement and understanding between the Parties as to the subject matter of the Agreement. It merges and supersedes all prior or contemporaneous agreements, commitments, representations, writings, and discussions between you and PG&E, whether oral or written and has been induced by no representations, statements or agreements other than those expressed herein. Neither you nor PG&E will be bound by any prior or contemporaneous obligations, conditions, warranties or representations with respect to the subject matter of this Agreement, except as provided herein.

Case: 19-30088   Doc# 2194-3   Filed: 05/22/19   Entered: 05/22/19 17:42:12   Page 13 of 25

47750
50386

This Agreement will take effect when it has been executed by both Parties.

PACIFIC GAS AND ELECTRIC COMPANY
LAW DEPARTMENT

By _____

Janet Loduca
VP and Deputy General Counsel

JL:gac

Enclosures

MORRISON & FOERSTER, LLP

By _____

Joshua Hill

Morrison & Foerster LLP

# EXHIBIT A – RATES AND DISCOUNTS

**Category:** Corporate (Capital Markets, Governance, Executive Compensation and Benefits, M&A)

| Name | Title | $/Hour |
|---|---|---|
| Brandon Parris | Partner | $978 |
| Dario Avram | Partner | $680 |
| Jeff Jaeckel | Partner | $978 |
| Mike Krigbaum | Partner | $744 |
| Jennifer Marines | Partner | $850 |
| Geoff Peck | Partner | $850 |
| Bernie Pistillo | Partner | $914 |
| Sara Terheggen | Partner | $786 |
| Marty Dunn | Of Counsel | $1,148 |
| Amanda Hines Gold | Of Counsel | $701 |
| Steven Bleiberg | Associate | $718 |
| Erica Richards | Associate | $723 |
| Lee Johnston | Associate | $638 |
| Alexa Belonick | Associate | $638 |
| Emiko Kurotsu | Associate | $638 |
| Victor Liang | Associate | $599 |
| Ali Assareh | Associate | $599 |
| Kerry Jones | Associate | $514 |
| Jessica Stern | Associate | $514 |
| Tobyn Yael Aaron | Associate | $429 |
| Katerina Kousoula | Associate | $638 |

**Category:** Federal Energy Regulatory Commission ("FERC")/California Public Utilities Commission ("CPUC") Regulatory and Licensing Activity (excludes CPUC permitting)

| Name | Title | $/Hour |
|------|-------|--------|
| Joshua Hill | Partner | $850 |
| Michael Steel | Partner | $871 |
| Robert Fleishman | Of Counsel | $871 |
| Zori Ferkin | Of Counsel | $723 |
| Todd Edmister | Of Counsel | $701 |
| Paul Varnado | Associate | $638 |
| Tyler Welti | Associate | $638 |
| Dustin Elliott | Associate | $514 |

47750
50386

**Category:** Personal Injury/Property Damage

| Name | Title | $/Hour |
|---|---|---|
| Joshua Hill | Partner | $850 |
| Michael Steel | Partner | $871 |
| Alejandro Bras | Associate | $638 |
| Navi Dhillon | Associate | $638 |
| Kelly Obranowicz | Associate | $472 |

47750
50386

## Volume Discounts – Based on Annual Billing:

| Volume Discounts Offered | | | |
|---|---|---|---|
| $0 - $250K | $250K - $500K | $500K - $1M | > $1M |
| | | 2.5% | 5.0% |

## Additional Services Offered:

| | |
|---|---|
| **Discounted Secondments** | We have seconded associates, paralegals, and even partners to our key clients on a full-time or part-time basis, to help fill temporary gaps in staffing, and to help us better understand the clients' business and legal needs. |
| **Free Legal Services to Prove Expertise During Introductory Period** | We will schedule – at no charge to you–kickoff meetings in practice areas where we have not previously worked with PG&E during which our team members can meet with their PG&E counterparts to better understand legal needs, and facilitate growth of the relationship.  This will allow PG&E to better understand our resources and staffing and will let our team better understand the projects where we can add value to PG&E, and your goals and objectives in connection with those matters. We do not charge clients for time attorneys spend "getting up to speed" on new client matters. |
| **Internal Document Management** | In addition to other technology used to enhance our client relationship, we maintain an online repository of documents with specific instructional annotations to maximize workflow efficiency. |
| **Legal Training (CLE, CPD)** | We regularly partner with clients to further the development of their legal staff and would be delighted to perform in-house training and other CLE programs at no expense to PG&E (indeed, we have conducted such training sessions for PG&E in the past, and were invited for two years in a row to speak to PG&E licensees on privacy and data security issues). We have a menu of available programs to choose from, or we can develop bespoke sessions to fit your needs. |
| **Precedents and Templates** | We would be pleased to work with PG&E to develop a budget and scope to prepare standardized, PG&E-centric forms and agreements for M&A and other corporate transactions.  Our corporate team, led by Brandon Parris, along with subject-matter specialists from areas such as IP, TTG, privacy, and employee benefits would meet with PG&E designees to prepare draft agreements, ancillary agreements, and other form documents (e.g., NDAs, term sheets, closing checklists, etc.) to establish standardized deal forms. With such documents in place, our team will be able to provide draft documents on an expedited timeline and know they address your primary concerns. Having the detailed discussions required to develop these forms will provide us with greater insight into your goals and requirements in a transactional context, allowing us to more effectively partner with your in-house team and to serve as better advocates for PG&E. |

| | |
|---|---|
| **Regulatory Alerts Monitoring** | We communicate with our clients on important news affecting their legal needs, including court decisions, legislation, and trends. We also deliver a wide array of reports, white papers, newsletters, research studies, databases, and other information resources to help clients stay informed. We have played a leadership role among Am Law 100 firms in launching blogs, such as our award-winning Socially Aware blog, that help our clients stay on top of important legal and business trends and developments. |
| **Reporting Dashboards** | The firm provides dashboard reports to numerous clients, and would be happy to do so with PG&E. We would work with your representatives to cover what is included in these reports, but common items are: status of matters; performance to budget; inventory of value-added services; changes in staffing; important legal trends/developments that may impact PG&E's business or legal needs; value of the results obtained; value received compared to fees charged; and overall satisfaction with the firm. |
| **Telephone Hotline to field urgent inquiries** | We would be pleased to offer PG&E access to our MoFone hotline service, subject to certain limits (typically $10,000 per quarter). |
| **Use of AI Machine Learning Tools** | The firm recently subscribed to Lex Machina, a Legal Analytics platform that enables data-driven decisions and the formulation of effective litigation strategies by uncovering insights about judges, courts, lawyers, and parties involved in litigation. |

47750
50386

**EXHIBIT B**
**ATTORNEY REPRESENTATION**
**CONFLICT PRINCIPLES**

These principles apply to all counsel representing Pacific Gas and Electric Company ("PG&E"). For conflicts purposes, PG&E should be treated as the client of any outside counsel providing services to any of such entities.

**Scope of matters covered by these principles:** These principles apply to the representation by any attorney and his or her firm of any third party in connection with transactions and proceedings wherein the third party is adverse to PG&E, and/or involving issues substantially related to the matter(s) for which counsel has been retained by PG&E.

**Limitation on adverse engagements during PG&E engagement:** During any engagement by PG&E, the retained attorney and his or her firm will not represent another client in a matter in which that client's interests are adverse to the interests of PG&E without first making written disclosure of the proposed engagement and obtaining written consent from the PG&E entity undertaking the engagement. Any actual or potential conflict(s) pre-existing the engagement with PG&E must be disclosed prior to executing a retainer agreement, or promptly upon discovery. Where pre-existing conflicts may exist, counsel is expected to obtain waivers from its other clients, including written agreements that such clients will not object to the attorney or firm representing PG&E entities in any pending or future matter.

**Notification of adverse engagement during PG&E engagement:** If a retained attorney or his or her firm anticipates that representation of another client will involve advancing a position on an issue related to the PG&E engagement that may be adverse to PG&E interests, counsel should bring the matter to the attention of the appropriate PG&E entity in advance of doing so.

**Notification of adverse engagements after PG&E engagement:** After the conclusion of any engagement by PG&E, the retained attorney and his or her firm will not represent a client in a matter in which that client's interests are adverse or potentially adverse to the interests of the PG&E entity undertaking the representation that was the subject of the engagement, and that bears a substantial relationship to any matter previously handled on behalf of that PG&E entity, without first making written disclosure of the proposed engagement to the appropriate PG&E entity.

**Procedure for considering waivers of actual or potential conflicts:** PG&E will review, on a case by case basis, each request for waiver of an actual or potential conflict.

Case: 19-30088    Doc# 2194-3    Filed: 05/22/19    Entered: 05/22/19 17:42:12    Page 20
of 25

47750
50386

# EXHIBIT C
## SECURITY MEASURES TO PROTECT PG&E CONFIDENTIAL INFORMATION

1. Your collection, management and use of PG&E Confidential Information shall comply with this Exhibit C and with all applicable laws, regulations, directives, and ordinances.

2. <u>Security Measures</u>: You shall take "Security Measures" with the handling of PG&E Confidential Information to ensure that the PG&E Confidential Information will not be compromised and shall be kept secure. Security Measures shall mean industry best practices, whether physical or logical, including but not limited to:

   a. Development and implementation of written policies regarding information security, disaster recovery, third-party assurance auditing, and penetration testing;

   b. Use of password protected workstations at your premises, any premises where services are being performed and any premises of any person who has access to such PG&E Confidential Information;

   c. Measures to safeguard against the unauthorized access, destruction, use, alteration or disclosure of any PG&E Confidential Information including, but not limited to, restriction of physical access to such data and information, implementation of logical access controls, sanitization or destruction of media, including hard drives, and establishment of an information security program that at all times is in compliance with the industry requirements of ISO 27001, as may be amended from time to time; and,

   d. Any third party data center or service used by you to collect, receive and/or store Confidential Information shall meet the Security Measures required by this Agreement including, if specified by PG&E, satisfying the standards for a Tier 3 data center facility as specified in the TIA-942 standard published by the Telecommunications Industry Association or equivalent standards.

3. <u>Compliance and Monitoring</u>:

   a. If requested by PG&E, before receiving any PG&E Confidential Information, or at any time during the term of this Agreement, you shall provide PG&E with documentation satisfactory to PG&E that you have undertaken Security Measures.

Case: 19-30088    Doc# 2194-3    Filed: 05/22/19    Entered: 05/22/19 17:42:12    Page 21 of 25

47750
50386

b. If requested by PG&E, before receiving any PG&E Confidential Information Data, or at any time during the term of this Agreement, you agree to undergo PG&E's vendor Security Review process.

c. You agree to meet periodically with PG&E, if requested by PG&E, to evaluate your Security Measures and to discuss, in good faith, means by which you and PG&E can enhance such protection, if necessary.

d. You shall update and implement your Security Measures, including procedures, practices, policies and controls so as to keep current with industry standards, including but not limited to NIST and NERC/CIP, as applicable.

e. PG&E reserves the right to perform onsite security assessments to verify the implementation and ongoing operation and maintenance of Security Measures. At least annually, on request by PG&E, you shall assist PG&E in obtaining a copy of any report that documents your Security Measures.

4. Security Breach:

a. You shall immediately notify PG&E in writing of any unauthorized access or disclosure, or potential unauthorized access or disclosure, of PG&E Confidential Information.

b. You shall take reasonable measures within your control to immediately stop the unauthorized access or disclosure of PG&E Confidential Information to prevent recurrence and to return to PG&E such information and any copies.

c. You shall provide PG&E: (i) a summary of the issue and the facts; (ii) the potential number of individuals affected by the security breach; (iii) the PG&E Confidential Information that may be implicated by the security breach; and (iv) any other information pertinent to PG&E's understanding of the security breach and the exposure or potential exposure of PG&E Confidential Information.

d. You shall investigate such breach or potential breach, and shall inform PG&E, in writing, of the results of such investigation, and assist PG&E (at your sole cost and expense) in maintaining the confidentiality of such PG&E Confidential Information. You agree to provide, at your sole cost and expense, appropriate data security monitoring services for all potentially affected persons for one (1) year following the breach or potential breach, subject to PG&E's prior approval.

e. If requested in writing by PG&E, you will notify the potentially affected persons regarding such breach or potential breach within a reasonable time period determined by PG&E and in a form as specifically approved in writing by PG&E. In addition, in no event will you issue or permit to be

14

47750
50386

issued any public statements regarding the security breach involving PG&E Confidential Information unless PG&E requests you to do so in writing.

47750
50386

**EXHIBIT D**
**PG&E CONTRACTOR DOCUMENT RETENTION AND PRODUCTION**
**REQUIREMENTS**

1. Contractor agrees to retain all documents and data in accordance with (a) or (b) below, provided that Contractor is not required to retain: (i) draft versions of final written documents such as reports, presentations, or other written deliverables; and (ii) documents that are inconsequential or ancillary to performance and documentation of the project or its deliverables as follows:

   [ ] a. the documents and data specified in Attachment 1 to this Exhibit D; or

   [ ] b. all documents and data, whether paper or electronic, created, collected or received for PG&E in the course of performing the Work or furnishing the materials under the Agreement, including without limitation, documents, data, plans, drawings, diagrams, investigative notes, field notes, tests, photographs, records, calculations, summaries, and reports.

   If neither Section 1(a) or Section 1(b) is checked, Section 1(b) shall apply. If Section 1(a) is checked, but documents and data are not specified in Attachment 1, Section 1(b) shall apply. Collectively, the information shall hereinafter be referred to as "PG&E Contractor Documents."

2. Contractor shall store PG&E Contractor Documents in a secure and organized manner. All PG&E Contractor Documents shall be in legible form, whether paper or electronic. In managing and administering PG&E Contractor Documents, Contractor will comply with the requirements of "The Recordkeeping Principles[®] Level 3" (see www.arma.org), or with modified requirements approved in writing by PG&E.

3. Upon completion of the Work or furnishing of the materials under the Agreement, or upon completion of the Work or furnishing of the materials under each CWA under the Agreement ("Work Completion Date"), PG&E will specify which of PG&E Contractor Documents must be transmitted by Contractor to PG&E ("PG&E Records"), provided however, unless otherwise agreed by PG&E:

   a. Contractor shall transmit to PG&E, or provide PG&E access to, PG&E Records on request within forty eight (48) hours or sooner if needed (without limitation) for regulatory, California Public Utilities Commission ("CPUC"), safety, audit and/or litigation requirements;

   b. PG&E may specify that PG&E Records be delivered to PG&E on a regular basis prior to the Work Completion Date;

   c. With respect to PG&E Contractor Documents not transmitted to PG&E as PG&E Records, Contractor shall retain all such documents for twenty four

(24) months after the Work Completion Date ("Post-Termination Retention Period"). During the Post-Termination Retention Period, PG&E Contractor Documents shall be retained by Contractor at no additional cost to PG&E until disposed of in accordance with Section 6 below. To the extent PG&E requests Contractor to retain PG&E Contractor Documents after the Post-Termination Retention Period, the parties will mutually agree on the terms and conditions of such additional retention;

   d. If PG&E Records are kept in electronic form, the following formats are acceptable for transmission to PG&E: (i) PDF, CAD or TIFF for drawings and diagrams; and (ii) PDF for all other documents. If PG&E Records transmitted to PG&E consist of data in a proprietary format, Contractor shall make available to PG&E the proprietary tools or software necessary to access the data including after the transfer of the data to PG&E. This Section 3.d. shall not abrogate Contractor's obligation to produce PG&E Records in an alternative format (e.g., a native format) if set forth elsewhere in the Agreement, in which case Contractor shall produce PG&E Records in each of the formats requested.

4. PG&E Contractor Documents shall be treated as confidential and shall not be disclosed to others unless Contractor is required to produce such documents pursuant to legal or regulatory requirements, in which case Contractor shall give PG&E maximum practicable advance notice prior to any production.

5. Contractor shall maintain a system for back-up of electronic PG&E Contractor Documents (e.g., files or databases) so they will be preserved for retrieval in the event that the originals are lost or destroyed.

6. If PG&E directs Contractor to dispose of PG&E Contractor Documents, Contractor shall do so in a confidential and secure manner, whether the format is electronic or paper. Proof of destruction of PG&E Contractor Documents shall be submitted to PG&E upon request.

7. If PG&E provides paper documents to Contractor in order to convert them to digital electronic format, Contractor shall return both the paper documents and the documents converted to digital electronic format to PG&E.

8. Contractor is responsible for ensuring that its Subcontractors regardless of tier comply with the obligations of Contractor where set forth in this Exhibit D.

9. The terms and conditions of this Exhibit D, including Attachment 1 if attached, shall survive the termination of this Agreement.