WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and –<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case No. 19-30088 (DM). | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF TIMOTHY GILLAM IN SUPPORT OF APPLICATION PURSUANT TO 11 U.S.C. §§ 327 AND 328 FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF DELOITTE & TOUCHE LLP AS INDEPENDENT AUDITOR AND ADVISOR TO THE DEBTORS NUNC PRO TUNC TO THE PETITION DATE**<br><br>Date: June 12, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court,<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>**Objection Deadline**: June 5, 2019<br>4:00 p.m. (Pacific Time) |

I, Timothy Gillam, under penalty of perjury, declares as follows:

1. I am a partner of the firm of Deloitte & Touche LLP ("**Deloitte & Touche**"), which has an office at 555 Mission Street, Suite 1400, San Francisco, California 94105. I am duly authorized to make and submit this declaration (the "**Declaration**") on behalf of Deloitte & Touche as independent auditor and advisor for PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**" and together with PG&E Corp., the "**Debtors**") in support of the *Application Pursuant to 11 U.S.C. §§ 327 and 328 for an Order Authorizing Employment and Retention of Deloitte & Touche LLP as Independent Auditor and Advisor to the Debtors Nunc Pro Tunc to the Petition Date* (the "**Application**").[1]

2. The Debtors seek to have Deloitte & Touche retained as independent auditor and advisor in accordance with the terms and conditions set forth in the Engagement Agreements, as defined below. Copies of the Engagement Agreements are annexed hereto as **Exhibits 1-3.**

3. The statements set forth in this Declaration are based upon my personal knowledge, information and belief, and/or client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte & Touche or its affiliates.

### Deloitte & Touche's Qualifications

4. Deloitte & Touche is a public accounting firm with offices across the United States. Deloitte & Touche has significant experience in providing accounting and advisory services in large and complex chapter 11 cases on behalf of debtors throughout the United States, including numerous large chapter 11 cases in this district. Such experience renders Deloitte & Touche well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases. Deloitte & Touche's services fulfill an important need and are not provided by any of the Debtors' other professionals. In addition, since approximately February 1999, Deloitte & Touche has provided professional services to the Debtors. In providing such prepetition professional services to the Debtors, Deloitte & Touche is familiar with the Debtors and their business, including the Debtors' financial

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

affairs, debt structure, operations, and related matters. Having worked with the Debtors' management, Deloitte & Touche has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during these cases. Accordingly, Deloitte & Touche is both well-qualified and able to provide the services for the Debtors in the chapter 11 cases in an efficient and timely manner.

## Disinterestedness

6. Subject to the foregoing, except as set forth herein and in the attachments hereto, to the best of my information, knowledge, and belief based on reasonable inquiry: (a) neither I, Deloitte & Touche, nor any partner, principal, or managing director of Deloitte & Touche that is anticipated to provide the services for which Deloitte & Touche is to be retained (the "**Engagement Partners/Principals/Managing Directors**") holds any interest adverse to the Debtors; and (b) Deloitte & Touche and the Engagement Partners/Principals/Managing Directors have no relationship to the Debtors, their significant creditors, certain other significant parties-in-interest, or to the attorneys that are known to be assisting the Debtors in the chapter 11 cases, except as stated herein or in any attachment hereto.

7. In connection with Deloitte & Touche's retention by the Debtors in the chapter 11 cases, Deloitte & Touche undertook searches to determine, and to disclose, whether it or its affiliates is or has been employed by or has other relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other entities with significant relationships with the Debtors (the "**Potential Parties-in-Interest**"), whose specific names were provided to Deloitte & Touche by the Debtors. To check upon and disclose possible relationships with significant Potential Parties-in-Interest in the chapter 11 cases, Deloitte & Touche researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with the Debtors or significant Potential Parties-in-Interest.

8. Deloitte & Touche and its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other Potential Parties-in-Interest. Accordingly, Deloitte & Touche and/or its affiliates have had, currently have and/or may have in the future banking

or other relationships with such parties, or provided, may currently provide, and/or may provide in the future professional services to certain of these parties in matters unrelated to the chapter 11 cases. From time to time, Deloitte & Touche and its affiliates have provided or may currently provide services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to the chapter 11 cases, except as set forth herein or in the attachments hereto. Additionally, certain significant Potential Parties-in-Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to Deloitte & Touche and/or its affiliates and the Engagement Partners/Principals/Managing Directors in matters unrelated to the chapter 11 cases. A listing of such parties is attached to this Declaration as **Schedule 1**.

9. Deloitte & Touche believes that the relationships described herein or reflected on **Schedule 1** have no bearing on the services for which Deloitte & Touche's retention is being sought by the Debtors in the chapter 11 cases. Furthermore, such relationships do not impair Deloitte & Touche's disinterestedness, and Deloitte & Touche does not represent an adverse interest in connection with the chapter 11 cases.

10. Despite the efforts described above to identify and disclose Deloitte & Touche's connections with the significant Potential Parties-in-Interest in the chapter 11 cases, because Deloitte & Touche is a nationwide firm with many employees, Deloitte & Touche is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Deloitte & Touche discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

11. To the best of my knowledge, based on the internal search discussed above, Deloitte & Touche has determined that certain relationships should be disclosed as follows:

   a. Deloitte & Touche and/or its affiliates provide services in matters unrelated to the chapter 11 cases to certain of the Debtors' largest unsecured creditors and other Potential Parties-in-Interest or their affiliates listed on **Schedule 1**.

   b. Law firms identified on **Schedule 1**, including Cravath, Swaine & Moore LLP; Jenner & Block LLP; Latham & Watkins LLP; McDermott, Will & Emery LLP; Morrison & Foerster LLP; Munger, Tolles & Olson LLP; Weil Gotshal & Manges LLP; and WilmerHale, have provided, currently provide and may in the future

provide legal services to Deloitte & Touche or its affiliates in matters unrelated to the chapter 11 cases, and/or Deloitte & Touche or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

c. In the ordinary course of its business, Deloitte & Touche and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties-in-Interest in the chapter 11 cases. For example, from time to time, Deloitte & Touche and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

d. Certain financial institutions or their respective affiliates (including Allianz Global Risks US Insurance Company; Bank of America, N.A.; Barclays Bank PLC; CIGNA Group Insurance; Citibank, N.A.; JPMorgan Chase Bank, N.A.; TD Bank, N.A.; U.S. Bank National Association; and Wells Fargo Bank, N.A.) listed on **Schedule 1** (i) are lenders to an affiliate of Deloitte & Touche (Deloitte & Touche is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte & Touche and its affiliates. Additionally, certain financial institutions or their respective affiliates (including Barclays, Goldman Sachs, JP Morgan Chase, T. Rowe Price, US Bank, Vanguard and Wells Fargo) listed on Schedule 1 provide asset management services and/or have similar roles with respect to investments of pension, benefit and/or similar funds sponsored by Deloitte & Touche's affiliates.

e. Deloitte & Touche and its affiliates and certain of their respective personnel, including the Engagement Partners/Principals/Managing Directors, are likely to have ordinary course customer relationships with the Debtors. In particular, I am a customer of one or more of the Debtors. As such, at any given time, the foregoing persons, may owe money to or be owed money by (due to, for example, overpayments or otherwise being entitled to refunds) the Debtors. Also, it is possible that personnel of Deloitte & Touche and/or its affiliates may be victims of certain wildfires in California and, thus could have and/or assert claims, either individually or as part of a class action, for damages against the Debtors. Although Deloitte & Touche is not aware of its personnel having such claims, it has not conducted research regarding the foregoing.

f. Certain Potential Parties-in-Interest may be adverse to and/or involved in litigation matters with Deloitte & Touche or its affiliates in connection with matters unrelated to the chapter 11 cases.

g. Deloitte & Touche has provided and continues to provide audit services to certain Potential Parties-in-Interest and/or their affiliates in matters unrelated to these chapter 11 cases. In its capacity as auditor, Deloitte & Touche also provides such clients with ordinary course auditing services and conducts typical audit procedures that may arise from such Potential Parties-in-Interest's business arrangements with the Debtors.

h. Deloitte & Touche and/or its affiliates have provided, currently provide, and will continue to provide financial advisory services to the Pension Benefit Guaranty

Corporation (the "**PBGC**"). The Debtors and their pension plans were, but are no longer, the subject of these services for the PBGC.

    i. Deloitte Consulting LLP ("**Deloitte Consulting**"), an affiliate of Deloitte & Touche, and certain of its affiliates, have provided and will continue to provide services to the Executive Office of the United States Trustee in matters unrelated to the chapter 11 cases.

12. Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte & Touche or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in the chapter 11 cases, the U.S. Trustee for Region 17, the Assistant United States Trustee for the San Francisco Division of the Northern District of California, and the attorney therefor assigned to the chapter 11 cases.

13. Except as may be disclosed herein, to the best of my knowledge, information, and belief, Deloitte & Touche and the Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte & Touche and the Engagement Partners/Principals/Managing Directors are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

### Scope of Services

14. As set forth more fully in the following agreements (collectively, the "**Engagement Agreements**"), Deloitte & Touche has agreed to perform independent audit and advisory services for the Debtors in accordance with the terms and conditions set forth in the Engagement Agreements, as follows:

    (i) *Base Audit Engagement Letters.* Pursuant to the terms of those certain engagement letters, dated February 16, 2018 (the "**2018 Base Audit Engagement Letter**") and February 19, 2019 (the "**2019 Base Audit Engagement Letter**" and, together with the 2018 Base Audit Engagement Letter, the "**Base Audit Engagement Letters**"), Deloitte & Touche will perform an integrated audit of the Debtors in accordance with the standards of the Public Company Accounting Oversight Board (PCAOB) (United States) (the "**PCAOB Standards**"). Deloitte & Touche will express opinions on (1) the fairness of the presentation of the Debtors' consolidated financial statements for the year ended December 31, 2018 and the year ending December 31, 2019, as applicable, in conformity with accounting principles generally accepted in the United States of America ("generally accepted accounting principles"), and (2) the effectiveness of the Debtors' internal control over financial reporting as of the applicable year ended periods.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(ii) **Trust Audit Engagement Letter.** Pursuant to the terms of that certain engagement letter, dated February 19, 2019, for the audit of the respective financial statements of certain trusts of the Utility for the year ended December 31, 2018 (the "**Trust Audit Engagement Letter**"), Deloitte & Touche will perform audit services, as contemplated therein, for the Nuclear Facilities Non-Qualified CPUC Decommissioning Master Trust, the Nuclear Facilities Qualified CPUC Decommissioning Master Trust, and the Nuclear Facilities Qualified FERC Decommissioning Master Trust of the Utility, and express opinions on the fairness of the presentation of the applicable entity's financial statements for the year ended December 31, 2018, in conformity with generally accepted accounting principles.

(iii) **Lease Accounting Engagement Letter.** Pursuant to the terms of that certain engagement letter, dated February 22, 2018 (the "**Lease Accounting Engagement Letter**"), Deloitte & Touche will assess the internal controls and processes of PG&E Corp. and its subsidiaries in preparation for PG&E Corp's planned changes in information systems and related business processes for the PowerPlant Lease Accounting module ("lease accounting system"), which is a new software module designed to implement a new accounting standard (ASU No. 2016-02, Leases), and provide advice and recommendations regarding the transition to and implementation of the lease accounting system.

15. Deloitte & Touche respectfully requests that its retention be made effective *nunc pro tunc* to the Petition Date so that Deloitte & Touche may be compensated for the professional services it has provided before the Application is heard by the Court. Deloitte & Touche has provided services to the Debtors in advance of approval of the Application in anticipation that its retention would be approved *nunc pro tunc* to the Petition Date. Deloitte & Touche submits that these circumstances are of a nature warranting retroactive approval.

**Professional Compensation**

16. Deloitte & Touche's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements, set forth in the Engagement Agreements.

17. As of the Petition Date, Deloitte & Touche had received payment in full for services performed under the 2018 Base Audit Engagement Letter. Deloitte & Touche has been performing services under the 2018 Base Audit Engagement Letter during the chapter 11 cases but does not intend to bill the Debtors for any fees in connection with such services, and accordingly, such services will not be included in any fee application submitted by Deloitte & Touche in these cases.

18. Pursuant to the 2019 Base Audit Engagement Letter, Deloitte & Touche agreed

to bill the Debtors periodically with respect to the audit services performed thereunder, except for Out-of-Scope Services (as defined below). Deloitte & Touche will bill its fees for the audits of each Debtors' financial statements, the reviews of the related interim financial information, the audits of each Debtor's internal control over financial reporting, and the Utility's FERC Form 1 audit for the year ending December 31, 2019 at the hourly rates set forth in the table below.

19. Pursuant to the 2019 Base Audit Engagement Letter, the Debtors may request, and Deloitte & Touche may agree to provide, additional services that were not contemplated as part of the base audit but pre-approved by the parties (collectively, the "**Out-of-Scope Services**"), as follows:

(i) Accounting consultations on accounting and financial reporting matters, which are pre-approved for the year ending December 31, 2019 up to $25,000 for PG&E Corp. and up to $75,000 for the Utility.

(ii) The issuance of a (1) "comfort letter" related to anticipated offerings of debt or equity during 2019, which are will be $45,000 per letter; or (2) consent letter for the reissuance of reports during 2019, which will be $25,000 each time a consent is required.

(iii) Out-of-scope audit procedures (including services provided in connection with statutory or regulatory filings, engagements and regulatory reviews of audit workpapers, specific transactions/accounting, reporting on critical audit matters, adoption of new accounting pronouncements, internal controls surrounding new applications, systems or activities, and changes in laws or regulations in the current year), which will be billed based on the time spent on such services at the rate of the professional performing the service, as noted in the table below.

(iv) Other audit-related services (including agreed-upon procedures, advice and recommendations regarding proposed transactions, adoption of new accounting pronouncements, internal controls surrounding new applications, systems or activities, and training in a future year), which will be billed based on the time spent on such services at the applicable rate of the professional performing the services, as noted in the table below.

| Professional Level | Hourly Rates for 2019 Base Audit | Hourly Rates for Out-of-Scope Services |
|---|---|---|
| Partner / Principal / Managing Director | $380 | $760 |
| Senior Manager | $330 | $660 |
| Manager | $290 | $580 |

| Senior | $230 | $460 |
| Staff | $200 | $390 |
| Junior Staff | $180 | N/A |

20. Pursuant to the terms of the Trust Audit Engagement Letter, Deloitte & Touche agreed to bill the Debtors periodically with respect to the services performed thereunder. The fees for such services will be $63,000, plus expenses.

21. Pursuant to the terms of the Lease Accounting Engagement Letter, Deloitte & Touche agreed to bill the Debtors based on the actual time spent by professionals on such services at the individual's applicable professional hourly rate. Deloitte & Touche will charge the Debtors the following hourly rates with respect to such services:

| **Professional Level** | **Hourly Rates** |
|---|---|
| Partner / Principal / Managing Director | $365 |
| Senior Manager | $325 |
| Manager | $295 |
| Senior | $265 |
| Staff | $225 |

22. In addition to the fees set forth above, the Debtors have agreed to compensate Deloitte & Touche for engagement-related expenses, including travel, report production, delivery services, and other expenses incurred by Deloitte & Touche in providing the services.

23. Deloitte & Touche intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred pursuant to the Engagement Agreements in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), any applicable orders of the Court, including the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (ECF No. 796) (the "**Interim Compensation Order**") and the Order granting this Application, and any applicable guidelines issued by the Office of the United States Trustee.

24. Deloitte & Touche will maintain records in support of any fees incurred in connection with the services it performs in the chapter 11 cases by category and nature of the services

rendered and will provide reasonably detailed descriptions of those services rendered on behalf of the Debtors, the time expended in provided those services, and the individuals who provided professional services on behalf of the Debtors. Deloitte & Touche will present such records to the Court in its fee applications to the Court. Deloitte & Touche requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders, if any, that would apply to interim payments. I understand that all payments rendered pursuant to Deloitte & Touche's retention by the Debtors must be approved by an order of this Court and based upon the filing by Deloitte & Touche of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

25. As noted above, prior to the Commencement Date, Deloitte & Touche provided certain professional services to the Debtors. In the ninety (90) days prior to the Commencement Date, the Debtors paid Deloitte & Touche approximately $2,277,600 for services rendered in connection with the Engagement Agreements. As of the Commencement Date, no amounts were outstanding with respect to the invoices issued by Deloitte & Touche prior to such date.

26. Prior to the Commencement Date, Deloitte Tax LLP ("**Deloitte Tax**"), an affiliate of Deloitte & Touche, provided certain tax-related professional services to the Debtors. In the ninety (90) days prior to the Commencement Date, the Debtors paid did not pay Deloitte Tax for services performed. As of the Commencement Date, no amounts were outstanding with respect to the invoices issued by Deloitte Tax prior to such date.

27. Some services incidental to the tasks to be performed by Deloitte & Touche in the chapter 11 cases may be performed by personnel now employed by or associated with affiliates of Deloitte & Touche, such as Deloitte Transactions and Business Analytics LLP, Deloitte Financial Advisory Services LLP, Deloitte Tax, and Deloitte Consulting, and/or their respective subsidiaries, including subsidiaries located outside of the United States.

28. Deloitte & Touche may subcontract a portion of the services to be performed under the Engagement Agreements to its indirect wholly-owned subsidiary, Deloitte & Touche Audit Services India Private Limited ("**Deloitte & Touche India**"). In such case, a specifically assigned team of personnel from Deloitte & Touche India will assist in such services under the supervision, and

with the input, of personnel of Deloitte & Touche. The hourly rates charged to the clients by Deloitte & Touche for services performed by Deloitte & Touche India personnel are comparable to the rates charged for similar services by Deloitte & Touche, but do not directly correlate with the hourly rates attributed to such services by Deloitte & Touche India. The connections of Deloitte & Touche India (along with the connections of Deloitte & Touche and its other affiliates) to the parties in interest searched by Deloitte & Touche are set forth on **Schedule 1** attached hereto.

29. Deloitte & Touche has received no promises regarding compensation in the chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. Deloitte & Touche has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in the chapter 11 cases.

### Efforts to Avoid Duplication of Services

30. The services performed by Deloitte & Touche will not unnecessarily duplicate or overlap with the other services performed by the Debtors' other retained professionals and advisors. Deloitte & Touche understands that the Debtors have retained and may retain additional professionals during the term of the Engagement Letter, and Deloitte & Touche agrees to work cooperatively with the Debtors to avoid unnecessary duplication of services.

[Remainder of Page Left Blank]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 22, 2019
San Francisco, California

*[signature]*
Timothy Gillam
Partner
Deloitte & Touche LLP