**Exhibit 1**
**Engagement Letter**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# LAZARD

As of January 4, 2019

PG&E Corporation
77 Beale Street
San Francisco, California 94177

Attention:   John R. Simon
             Interim Chief Executive Officer

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and PG&E Corporation ("PG&E") and its subsidiary, Pacific Gas & Electric Company (collectively with PG&E and any of their respective controlled subsidiaries and any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

The Company hereby retains Lazard to act as investment banker to the Company to provide strategic and financial advice in connection with a variety of matters, including (i) any Transaction[1], (ii) any Restructuring[2], and (iii) any Financing[3]. By signing this Agreement, we

---

[1] As used in this Agreement, the term "Transaction" shall mean, collectively, any possible direct or indirect sale of the Company or an interest in or portion of the Company or a sale or other separation of all or a portion of a subsidiary or division of the Company, in one or more transactions which may take the form, without limitation, of a merger, a sale of assets, equity securities or other interests, a spin-off, split-off, joint venture or a recapitalization, and, subject to our agreement to advise the Company with respect thereto, any possible business combination pursuant to which all or a majority of the business or assets of the Company or a subsidiary or division of the Company are combined with or into another entity.

[2] As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code")) and/or recapitalization of all or a significant portion of the outstanding indebtedness of the Company (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), asbestos, wildfire and other litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions.

[3] As used in this Agreement, the term "Financing" shall mean any transaction or series of transactions involving the public or private issuance, sale, or placement of newly-issued (including securities held in treasury) equity, equity-linked or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code. Furthermore, "Financing" shall exclude any transaction or series of transactions to the extent involving utility securitization or the issuance of securities to creditors

Lazard Frères & Co. LLC
30 Rockefeller Plaza
New York, NY 10112

hereby accept our appointment as investment banker under the terms hereof.

Lazard understands and agrees that this Agreement is being entered into for purposes of assisting the Company as set forth above and in connection with a Transaction, Restructuring, and/or Financing. The inclusion of Lazard in any communications between the Company's legal advisors, including Weil Gotshal & Manges LLP, Cravath Swaine & Moore LLP, and/or the Company is not intended to waive the attorney-client privilege, work product privilege, or any other privileges or protections.

## *Description of Services:*

1. Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

    (a)    Reviewing and analyzing the Company's business, operations and financial projections;

    (b)    Assisting to formulate strategic and structural alternatives in connection with any Transaction, Restructuring, and/or Financing, as applicable;

    (c)    Evaluating the Company's potential debt capacity in light of its projected cash flows;

    (d)    Assisting in the determination of a capital structure for the Company;

    (e)    Assisting in the determination of a range of values for the Company on a going concern basis;

    (f)    Advising the Company on tactics and strategies for negotiating with the Stakeholders;

    (g)    Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Transaction, Restructuring, and/or Financing;

    (h)    Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Transaction, Restructuring, and/or Financing;

    (i)    Advising and assisting the Company in evaluating any potential Financing, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing;

---

in resolution of their pre-petition claims.

- (j) Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Transaction and/or Restructuring;

- (k) Assisting the Company in identifying and evaluating candidates for any potential Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Transaction;

- (l) Attending meetings of the Board of Directors of the Company with respect to matters on which we have been engaged to advise hereunder;

- (m) Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court;

- (n) Providing the Company with shareholder advisory services and advice on corporate preparedness matters; and

- (o) Providing the Company with other investment banking and financial restructuring advice.

*Fees:*

2. As consideration for the services to be provided, the Company shall pay Lazard the following fees:

- (a) Prior to a Chapter 11 filing, a monthly fee equal to $1,250,000 ("Monthly Fees"), which fee will be payable on the first day of each month until the earlier of a Chapter 11 filing or the termination of Lazard's engagement pursuant to Section 10. Following a Chapter 11 filing, each Monthly Fee will equal $300,000, which fee will be payable on the first day of each month until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10. In the event of a Chapter 11 filing, one-half of Monthly Fees paid with respect to any month following the Chapter 11 filing and in excess of $3,600,000 in the aggregate shall be credited (without duplication) against any Restructuring Fee payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in their entirety by the Bankruptcy Court, if applicable.

- (b) (i) If, whether in connection with the consummation of a Restructuring or otherwise, any Transaction is consummated, Lazard shall be paid a fee (each, a "Transaction Fee") equal to the applicable percentage of Transaction Value as defined and set forth on Exhibit A hereto. The Transaction Fee for any individual Transaction shall not exceed $35 million (the "Transaction Fee Cap"). In the event that another investment banking advisor (the "Other Advisor") is retained by the Company in connection with a Transaction, the Transaction Fee paid to Lazard with respect to such Transaction will be reduced by an amount equal to 25% of the fee payable pursuant to this clause (b). One-half of any Transaction Fee paid shall be

credited (without duplication) against any Restructuring Fee subsequently payable; provided that in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in their entirety by the Bankruptcy Court, if applicable. In addition, $750,000 of fee payments made to Lazard under prior engagements, and the financial advisory fee of $500,000 paid to Lazard in 2015, will be credited (without duplication) against any Transaction Fee.

(ii) Any Transaction Fee shall be payable upon consummation of the applicable Transaction.

(c) A fee equal to $25,000,000, payable upon the consummation of any Restructuring (the "Restructuring Fee"); provided, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to bind the creditors or bondholders, as the case may be to the plan; provided, further, that in the event that Lazard is paid a fee in connection with a "pre-packaged" or "pre-arranged" plan and a plan of reorganization is not consummated, Lazard shall return such fee to the Company (less any Monthly Fees that have accrued).

(d) A fee, payable upon consummation of any Financing (each, a "Financing Fee"), equal to the applicable percentage of the total gross proceeds as set forth on Exhibit B hereto; provided, however, that for any proposed "debtor-in-possession" Financing, the Financing Fee shall be earned and shall be payable upon the earlier of execution of a commitment letter or definitive agreement with respect to the Financing. To the extent that Lazard is paid a fee in connection with a proposed "debtor-in-possession" Financing and the Bankruptcy Court does not provide any required approval with respect thereto, Lazard shall return such fee to the Company (less any Monthly Fees that have accrued). One-half of any Financing Fee paid (and not returned pursuant to the preceding sentence) in connection with "debtor-in-possession" Financing and equity Financing shall be credited (without duplication) against any Restructuring Fee subsequently payable; provided that in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in their entirety by the Bankruptcy Court, if applicable.

(e) In addition, $1.5 million of monthly fees paid to Lazard prior to the execution of this Agreement shall be credited (without duplication) against any Restructuring Fee or Financing Fee payable in connection with secured, unsecured or "debtor-in-possession" financing (without duplication); provided that in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in their entirety by the Bankruptcy Court, if applicable.

Page 5

(f) For the avoidance of any doubt, it is understood that fees may be payable pursuant to each of clauses (a), (b), (c) and (d) above and more than one fee may be payable pursuant to each of clauses (a), (b), and (d) above. In addition, notwithstanding anything to the contrary set forth in this Section 2, in no event shall the cumulative level of fee crediting pursuant to clauses (a), (b), (d), and (e) exceed $18,750,000.

(g) In addition to any fees that may be payable to Lazard and, regardless of whether any Transaction, Financing or Restructuring occurs, the Company shall promptly reimburse Lazard for all reasonable expenses incurred by Lazard (including travel and lodging, data processing and communications charges, courier services and other expenditures) and the reasonable fees and expenses of counsel, if any, retained by Lazard; provided that such counsel was retained with the prior written consent of the Company (which shall not be unreasonably withheld).

(h) As part of the compensation payable to Lazard hereunder, the Company agrees that the indemnification letter dated September 15, 2011 between Lazard and the Company (the "Indemnification Letter"), shall apply to Lazard's services provided pursuant to this Agreement and each reference therein to "PG&E Corporation" or "you" shall be deemed to be a reference to the Company (as defined herein). The Indemnification Letter is incorporated herein in its entirety.

(i) All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

*Retention in Chapter 11 Proceedings:*

3. In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use best efforts to obtain an order from the Bankruptcy Court authorizing the retention of Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this Agreement in the event that any Company entity becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. The retention application shall note that in so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, Restructuring or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee,

Transaction Fee and Financing Fee, is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder, and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

*Other:*

4. No fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

5. The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard may request in connection with this engagement. The Company represents and warrants to Lazard that all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to keep Lazard advised of all developments materially affecting the Company or its financial position. In performing its services pursuant to this Agreement, Lazard shall be entitled to rely upon information furnished to it by the Company or any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party.

6. In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction, Restructuring, Financing or other transaction. The decision to pursue any such transaction shall be made by the Company in its sole discretion, and the Company shall have no obligation to pursue any such transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing or deemed to have provided any tax, accounting, actuarial, legal or other specialist advice.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or any of our affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8. Pursuant hereto, the Company has affirmed and incorporated by reference its obligations arising under the Indemnification Letter. The Indemnification Letter shall survive any termination or expiration of our engagement hereunder.

9. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

10. Our engagement hereunder will automatically expire on consummation of a Restructuring and may be earlier terminated by the Company or by us upon written notice to the other party at any time, without liability or continuing obligation to the Company or us, except that following any termination or expiration, (a) we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by the Company or any expiration of our engagement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect of any Transaction, any Restructuring and any Financing announced or resulting from negotiations occurring during the period from the date hereof until one year following such termination or expiration, as the case may be.

11. Lazard has been retained under this Agreement as an independent contractor to the Company, and nothing herein is intended to confer any rights or remedies as against Lazard upon any person (including the management, Board of Directors, employees, securityholders and creditors of the Company) other than the Company. In addition, it is understood and agreed that this Agreement and our engagement do not create a fiduciary relationship between Lazard and any person, including the Company or its management, Board of Directors, employees, securityholders and creditors. No one, other than senior management or the Board of Directors of the Company (in their capacities as such) is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of the Company (in their capacities as such) in evaluating the relevant Restructuring, Transaction or Financing and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Transaction, Restructuring or Financing. The Company agrees that, notwithstanding any termination or expiration of our engagement, any advice, written or oral, rendered by Lazard and the terms of our engagement hereunder may not be disclosed publicly or made available to third parties without the prior written consent of Lazard. Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

12. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating to nonpublic information. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as Lazard.

13. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Original Indemnification Letter. The Company's obligations pursuant to this Agreement and the Indemnification Letter shall be joint and several. This Agreement and the Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, amendments, and understandings related to the matter provided herein (it being agreed that this Agreement amends and restates the prior engagement agreement dated July 6, 2016, as amended on December 12, 2017, February 15, 2018, and January 4, 2019, however, Lazard shall remain entitled to any amounts paid pursuant to such agreement). No waiver,

amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

14. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to our engagement hereunder) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
George W. Bilicic
Vice Chairman of U.S. Investment Banking,
Global Head of Power, Energy and
Infrastructure M&A

AGREED TO AND ACCEPTED
as of the date first written above:

PG&E CORPORATION, on behalf of itself
and its controlled subsidiaries

By_____
John R. Simon
Interim Chief Executive Officer

PACIFIC GAS AND ELECTRIC COMPANY,
on behalf of itself
and its controlled subsidiaries

By_____
Steven E. Malnight
Senior Vice President

## EXHIBIT A

| Transaction Value ($ million) [1] | Fee (% of Transaction Value) |
|---|---|
| $20,000 | 0.20% |
| $15,000 | 0.25% |
| $12,500 | 0.30% |
| $10,000 | 0.36% |
| $9,000 | 0.39% |
| $8,000 | 0.43% |
| $7,000 | 0.47% |
| $6,000 | 0.50% |
| $5,000 | 0.52% |
| $4,000 | 0.58% |
| $3,000 | 0.67% |
| $2,000 | 0.78% |
| $1,000 | 1.15% |
| $900 | 1.20% |
| $800 | 1.25% |
| $700 | 1.30% |
| $600 | 1.40% |
| $500 | 1.45% |
| $400 | 1.50% |
| $300 | 1.58% |
| $200 | 1.70% |
| $100 | 2.00% |

[1] For a Transaction Value in between the amounts specified above, the fee would be determined by interpolating between the two closest percentages.

For purposes hereof, the term "Transaction Value" means (x) the total amount of cash and the fair market value (on the date of payment, except that in the case of a "credit bid", such value shall be the face value of the obligations) of all of the property paid and payable (including amounts paid into escrow) in connection with the Transaction (or any related transaction), including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed, cancelled, exchanged or forgiven by a third party. Transaction Value shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends, and, in the case of the sale of assets, the net value of any current assets not sold by the Company or relevant Company entity, as applicable. For purposes of calculating Transaction Value, (i) all shares will be deemed transferred where a Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock, except that in the case of a "credit bid", the value shall be the face value of the obligations. Transaction Value shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed, cancelled, exchanged or forgiven directly or indirectly by a third party. If the Transaction Value is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Transaction.

## EXHIBIT B

| Gross Proceeds | Fee (% of Gross Proceeds) |
|---|---|
| **Secured Debt Financing** | 0.40% |
| **Debtor-In-Possession Financing** | 0.30% |
| **Unsecured Debt Financing** | 0.75% |
| **Equity Financing** | 1.00% |

[PLEASE SEE ATTACHED COPY OF SEPTEMBER 15, 2011 INDEMNIFICATOIN LETTER]

# LAZARD

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6000
www.lazard.com

September 15, 2011

PG&E Corporation
One Market, Spear Tower
Suite 2400
San Francisco, California 94105

Ladies and Gentlemen:

In connection with our engagement to advise and assist PG&E Corporation ("you") with the matters set forth in the engagement letter of even date herewith, you and we are entering into this letter agreement. It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co. LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including your securityholders, related to, arising out of or in connection with our engagement, you will promptly reimburse each such Indemnified Person for its reasonable legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith. You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is in connection with any action, claim, proceeding or investigation in which you or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith or gross negligence. You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to you related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith or gross negligence.

If for any reason the foregoing indemnification is held unenforceable (other than due to a failure to meet the standard of care set forth above), then you shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in

1

Case: 19-30088   Doc# 2229-1   Filed: 05/24/19   Entered: 05/24/19 17:06:07   Page 15 of 17

such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by you and your securityholders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of yourselves and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. You agree that for the purposes hereof the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to you and your securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) for which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. Your reimbursement, indemnity and contribution obligations under this agreement shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of yourselves, ourselves, and any other Indemnified Persons.

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of us hereby submits to the jurisdiction of such courts. You hereby waive on behalf of yourself and your successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable. You (on your own behalf and, to the extent permitted by applicable law, on behalf of your securityholders and creditors) waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with this agreement or our engagement. This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

Case: 19-30088    Doc# 2229-1    Filed: 05/24/19    Entered: 05/24/19 17:06:07    Page 16 of 17

Very truly yours,

LAZARD FRERES & CO. LLC

By _____
George W. Bilicic
Managing Director

AGREED TO AND ACCEPTED
as of the date first above written:

PG&E CORPORATION

By _____
Name: Kent M. Harvey
Title: Chief Financial Officer

3