| | |
|---|---|
| PIERCE BAINBRIDGE BECK PRICE & HECHT LLP<br>John M. Pierce (SBN 250443)<br>jpierce@piercebainbridge.com<br>Thomas D. Warren (SBN 160921)<br>twarren@piercebainbridge.com<br>355 South Grand Avenue, 44th Floor<br>Los Angeles, California 90071<br>(213) 262-9333 | LANDAU GOTTFRIED & BERGER LLP<br>Michael I. Gottfried (SBN 146689)<br>mgottfried@lgbfirm.com<br>Roye Zur (SBN 273875)<br>rzur@lgbfirm.com<br>1880 Century Park East, Suite 1101<br>Los Angeles, California 90067<br>Tel: (310) 557-0050<br>Fax: (310) 557-0056 |

Attorneys for Interested Parties

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>and<br><br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>Debtors.<br><br>Affects:<br>☐ PG&E Corporation<br>☐ Pacific Gas & Electric Company<br>☒ Both Debtors | Case No. 19-30088 (Jointly Administered)<br><br>Chapter 11<br><br>**OBJECTION TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 502(b)(9) AND 105(a), FED. R. BANKR. P. 2002, 3003(c)(3), 5005, AND 9007, AND L.B.R. 3003-1 FOR ORDER (I) ESTABLISHING DEADLINE FOR FILING PROOFS OF CLAIM, (II) ESTABLISHING THE FORM AND MANNER OF NOTICE THEREOF, AND (III) APPROVING PROCEDURES FOR PROVIDING NOTICE OF BAR DATE AND OTHER INFORMATION TO ALL CREDITORS AND POTENTIAL CREDITORS (THE "BAR DATE MOTION")**<br><br>**Hearing Date and Time:**<br>Date: June 11, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: Courtroom 17<br>450 Golden Gate Ave., 16th Floor<br>San Francisco, CA 94102 |

# CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS ............................................................................................................................................ 2

    I.      The Devastating Wildfires ............................................................................... 2

    II.     The Debtors File For Bankruptcy .................................................................... 3

    III.    The Debtors File a Motion to Set a Bar Date .................................................. 4

        1.      The Wildfire Proof of Claim Form ..................................................... 4

        2.      Wildfire Claimants Must Refile Proofs of Claim................................ 5

        3.      The Debtors Seek to Foreclose Class Protections .............................. 5

    IV.    The Tort Committee Files A Motion Proposing Its Own Proof of Claim Form for Wildfire Claimants ............................................................................ 6

ARGUMENT .................................................................................................................................. 6

    I.      The Debtors Seek to Impose an Unnecessary Burden By Way of The Wildfire Proof Of Claim Form ......................................................................... 9

    II.     The Debtors Seek to Reverse the Burden of Production and Expunge Otherwise Valid Claims ................................................................................. 11

    III.    The Debtors Seek to Prematurely and Improperly Eviscerate Class Protections That Might Otherwise Protect Wildfire Claimants ..................... 12

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Anderson-Walker Indus., Inc.*,
    798 F.2d 1285 (9th Cir. 1986) ................................................................................. 9, 10

*In re Archdiocese of Milwaukee*,
    Case No. 11-20059 (SVK) (Bankr. E.D. Wisc. July 14, 2011), ECF No. 331 ............. 12, 14, 16

*In re Birting Fisheries, Inc.*,
    92 F.3d 939 (9th Cir. 1996) ............................................................................................ 9

*In re Burkett*,
    329 B.R. 820 (Bankr. S.D. Ohio 2005) ........................................................................... 9

*In re Connaught Grp., Ltd.*,
    491 B.R. 88 (Bankr. S.D.N.Y. 2013) ................................................................... 10, 15, 16

*In re Deutsch-Sokol*,
    290 B.R. 27 (S.D.N.Y. 2003) ................................................................................... 8, 12

*In re Energy Future Holdings Corp.*,
    Case No. 14-10979 (Bankr. D. Del. July 30, 2015), ECF No. 5171 ................. 12, 13, 14, 16

*In re First All. Mortg. Co.*,
    269 B.R. 428 (C.D. Cal. 2001) .................................................................................. 9, 15

*In re Garvida*,
    347 B.R. 697 (B.A.P. 9th Cir. 2006) ...................................................................10, 13, 14

*In re Gianulias*,
    2013 WL 1397430 (B.A.P. 9th Cir. Apr. 5, 2013) .......................................................... 9

*In re Hart Ski Mfg. Co.*,
    5 B.R. 326 (Bankr. D. Minn. 1980) ................................................................................ 8

*Herndon v. PG&E Corp.*,
    No. 19-03005 (Bankr. N.D. Cal. May 13, 2019), ECF No. 21 ......................................... 3

*In re Holm*,
  931 F.2d 620 (9th Cir. 1991) ..................................................................................................9

*In re King*,
  165 B.R. 296 (Bankr. M.D. Fla. 1994) ............................................................................10, 13

*In re Sequoia Senior Solutions, Inc.*,
  2017 WL 2533345 (Bankr. N.D. Cal. June 9, 2017) ..............................................................15

*In re TK Holdings Inc.*,
  Case No. 17-11375 (Bankr. D. Del. Oct. 4, 2017), ECF No. 959 ....................................12, 13

*In re USA Gymnastics*,
  Case No. 18-09108 (RLM) (Bankr. S.D. Ind. Feb. 25, 2018), ECF No. 301 ...............12, 14, 16

*In re Walston*,
  606 F. App'x 543 (11th Cir. 2015) .......................................................................................10

**Other Authorities**

Fed. R. Bankr. P. 3001(a) ..............................................................................................................1

Fed. R. Bankr. P. 3001(c) ..............................................................................................................8

Fed. R. Bankr. P. 3001(f) ..........................................................................................................8, 13

Fed. R. Bankr. P. 9014 ................................................................................................................15

Fed. R. Bankr. P. 3001(a) ..............................................................................................................1

Fed. R. Bankr. P. 3001(f) ..........................................................................................................8, 13

Fed. R. Civ. P. 23 ....................................................................................................................9, 15

9 COLLIER ON BANKRUPTCY P 3001.01 .........................................................................................8

9 COLLIER ON BANKRUPTCY P 3001.02 .........................................................................................8

9 COLLIER ON BANKRUPTCY P 3001.07 .........................................................................................9

Interested Parties David Herndon, Julia Herndon, Gabriell Herndon, Jedidiah Herndon, Estefania Miranda, Steven Jones, Gabriella's Eatery, Chico Rent-a-Fence, and Ponderosa Pest & Weed Control respectfully submit this response to the Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for Order (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to Creditors and Potential Creditors [ECF No. 1784] (the "**Bar Date Motion**") brought by PG&E Corporation and Pacific Gas & Electric Company (collectively the "**Debtors**") and to the Motion of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R. Bankr. P. 3001(a) for Entry of an Order Approving Proposed Model Proof of Claim Form for Fire Claims and Related Procedures [ECF No. 1824] (the "**TC Motion**") brought by the Official Committee of Tort Claimants (the "**Tort Committee**"), and in support thereof, represent as follows:

## PRELIMINARY STATEMENT

Through the Bar Date Motion and related proposed form of order [ECF No. 1784, Ex. A] (the "**Proposed Order**"), the Debtors seek to impose hurdles on wildfire victims that likely would result in the loss of substantial legitimate claims held by the wildfire victims against the Debtors. The Debtors' suggested revisions to the procedures and information required by Official Proof of Claim Form 410 are particularly onerous in that the Debtors seek to foist these additional procedures on those creditors least capable of shouldering them. And, significantly, absent compliance with these onerous procedures, the wildfire victims may be forever barred from asserting their claims even if they previously filed otherwise legitimate proofs of claim in the bankruptcy case. The imposition of these procedures is contrary to the very purpose of this bankruptcy case, which is to compensate victims in a timely and fair manner, and not to establish procedures that could rob them of their claims. In contrast to the Bar Date Motion, the TC Motion provides reasonable procedures for providing the Debtors with notice of the wildfire victims' claims without placing an undue burden on those victims. As such, while the Interested Parties do not object to the setting of a bar date in the timeframe proposed by the Debtors, the Interested

Parties object to the Debtors' proposed Wildfire Claimant Proof of Form Claim and the Debtors' proposed procedures as follows.

First, the Bar Date Motion requires that Wildfire Claimants[1] fill out an onerous Wildfire Claimant Proof of Claim Form that, *inter alia*, requires Wildfire Claimants to break down their claim amounts by the types of damages suffered. This form goes far beyond what is required for a creditor to assert a facially valid proof of claim. Proofs of claim are intended only to put the Debtors on notice of claims against it for purposes of establishing a bankruptcy plan.

Second, the Bar Date Motion requires that Wildfire Claimants who have already submitted facially valid proofs of claim in the bankruptcy to submit the new, onerous claim form or have their claims forever extinguished. This requirement is contrary to black letter law, pursuant to which a validly filed proof of claim is prima facie evidence of the validity and amount of the claim.

Third, the Bar Date Motion attempts to foreclose the possibility of class proofs of claim for Wildfire Claimants by denying the effect that a class proof of claim would have. The Bar Date Motion is a procedurally improper vehicle to litigate against class proofs of claim. The issue of whether class proofs of claim will be allowed in this bankruptcy is not yet ripe for adjudication.

The Court should not permit the Debtors to create additional hoops that Wildfire Claimants must jump through or have their claims forever barred. Accordingly, the Interested Parties request that this Court deny the Debtors' attempts to impose extra-legal requirements on Wildfire Claimants and grant the TC Motion in its entirety.

**FACTS**

I. **THE DEVASTATING WILDFIRES**

On November 8, 2018, the most destructive wildfire in California history (the "**Camp Fire**") began near the town of Pulga, California, quickly spreading west and nearly erasing the town of Paradise, California from the map. In all, the fire destroyed nearly over 150,000 acres and 18,000 buildings and their contents. At least eighty-five people died from the Camp Fire.

---

[1] Capitalized terms not defined herein shall having the meaning ascribed to them in the Bar Date Motion.

1 | The Interested Parties are residents and businesses of Paradise who lost their homes, their possessions, their livelihoods, and nearly their lives in the Camp Fire. Now, over six months after their harrowing escape, they continue to struggle to put their lives back together. The Interested Parties' stories are shared by thousands of other putative class members, and the Camp Fire victims form one of, if not the, largest single groups of creditors in the bankruptcy.

It quickly became apparent to investigators that the origin of the Camp Fire was electrical distribution equipment owned and operated by the Debtors. The Camp Fire joined a long list of wildfires caused by or suspected to have been caused by the Debtors' equipment, including the 2015 Butte Fire and eighteen wildfires that occurred in 2017 (collectively with the Camp Fire, the "**Northern California Wildfires**"). *See, e.g.*, ECF No. 1825 at 2; ECF No. 2019 at 2. Indeed, the Debtors have conceded that they "believe[] it is probable that the Utility's equipment will be determined to be an ignition point of the 2018 Camp fire." PG&E Corp., Current Report (Form 8-k) (Feb. 28, 2019), https://www.sec.gov/Archives/edgar/data/75488/000119312519055751/d710309d8k.htm. And on May 15, 2019, the California Department of Forestry & Fire Protection "determined that the Camp Fire was caused by electrical transmission lines owned and operated by Pacific Gas and Electricity . . . located in the Pulga area." Press Release, CAL FIRE, CAL FIRE Investigators Determine Cause of the Camp Fire (May 15, 2019), http://calfire.ca.gov/communications/downloads/newsreleases/2019/CampFire_Cause.pdf.

II. **THE DEBTORS FILE FOR BANKRUPTCY**

On January 29, 2019 (the "**Petition Date**"), PG&E Corporation ("**PG&E**") and Pacific Gas & Electric Company (the "**Utility**," and collectively with PG&E the "**Debtors**") each commenced in this Court a voluntary case under chapter 11 of the Bankruptcy Code, and those case have been consolidated for procedural purposes. The bankruptcy petitions "were necessitated by a confluence of factors resulting from the catastrophic and tragic wildfires that occurred in Northern California in 2017 and 2018, and PG&E's potential liabilities resulting therefrom." Decl. of Jason P. Wells in Support of First Day Motions and Related Relief (the "**Wells Declaration**"), ECF No. 28 at 3. At the time of the filing, the Debtors estimated their total liability for the Wildfires at $30 billion or more. *Id.*

3

## III. THE DEBTORS FILE A MOTION TO SET A BAR DATE

On May 1, 2019, the Debtors filed the Bar Date Motion to set a bar date, approve proof of claim forms, and approve procedures to provide notice of the bar date and proof of claim forms to creditors. ECF No. 1784. The Bar Date Motion requests approval of "special procedures to facilitate the submission and evaluation of Wildfire Clams," to include "a simpler Wildfire Claim Bar Date Notice and customized Proof of Claim Forms for both Wildfire Claimants and Wildfire Subrogation Claimants." *Id.* at 10. Those "special procedures" include, *inter alia*, (i) the Wildfire Proof of Claim Form that drastically differs from Official Form 410, (ii) a requirement that Wildfire Claimants who have already filed otherwise valid proofs of claim must submit the Wildfire Proof of Claim Form or be forever barred from recovery, and (iii) a requirement that any Wildfire Claimant who is covered by a purported class action or class proof of claim must submit the Wildfire Proof of Claim Form or be forever barred from recovery.

### 1. The Wildfire Proof of Claim Form

The Bar Date Motion requires that each and every claimant who suffered losses stemming from any of the Northern California Wildfires must "set forth with specificity the legal and factual basis for the alleged claim" and file a form that "conform[s] substantially to the" Wildfire Proof of Claim Form. Bar Date Mot. at 14; Proposed Order at 4. The consequence for failure to timely file a Wildfire Proof of Claim Form is that a Wildfire Claimant is "forever barred, estopped, and enjoined from asserting such claims against the Debtors, their property, or their estates (or submitting a Proof of Claim with respect thereto" and will "not be treated as a creditor with respect to such claim for the purposes of voting and distribution with respect to any chapter 11 plan." Proposed Order at 8. These provisions, then, require that Wildfire Claimants who do not comply with the requirements of the Wildfire Proof of Claim Form will be forever barred from seeking recompense for the Northern California Wildfires.

The Wildfire Proof of Claim Form [ECF No. 1784, Ex. C-2] requires claimants to submit a separate claimed amount for each potential type of loss, including for: 1) loss of residence or other structure; 2) personal property; 3) other property; 4) business/economic loss; 5) personal injury; and 6) other types of claims. The Form also requires identification of whether "all or part of the

4

claim is based on wrongful death," whether the claimed losses were insured and, if so, the identification of the insurer, the coverage amount, and the insurance proceeds received. In addition, Wildfire Claimants must identify which of the twenty-three listed wildfires forms the basis for the claim and file a separate Form for each. Finally, the Form requires a litany of supporting documents including, *inter alia*, proof of property ownership, property appraisals, insurance documents, rental agreements, proof of business operation, two-years of federal tax returns for business losses, monthly and annual profit and loss statements or W-9 forms, death certificates, insurance benefit summaries, and hospital and doctor's office records.

### 2. Wildfire Claimants Must Refile Proofs of Claim

The Bar Date Motion requires that each and every claimant who suffered losses stemming from any of the Northern California Wildfires file a Wildfire Proof of Claim Form regardless of whether that claimant "filed a lawsuit against the Debtors prior to the Petition Date" or "filed a Proof of Claim in the Chapter 11 Cases prior to the entry of the Proposed Order." Bar Date Mot. at 14; Proposed Order at 4.[2] However, claimants other than Wildfire Claimants do not need to file a new proof of claim if the claimant "has already filed a Proof of Claim . . . with respect to the claim being asserted, utilizing a claim form that substantially conforms to" the proposed "Standard Proof of Claim Form or Official Form No. 410." *Id.* at 7. In other words, only Wildfire Claimants are required to submit multiple proofs of claim in order to avoid having their claims against the Debtors forever extinguished.

### 3. The Debtors Seek to Foreclose Class Protections

The Bar Date Motion and Proposed Order also require that each person or entity that is a Wildfire Claimant to submit the Wildfire Proof of Claim Form "even if such claimant may be included in, or represented by, a purported class action, class suit, class Proof of Claim, or similar representative action." Bar Date Mot. at 14; Proposed Order at 4. Again, just as with the other

---

[2] "[A]ny person or entity whose claim is listed on the Schedules" and whose claim is not listed as disputed, contingent, or unliquidated is exempted from filing a proof of claim. Proposed Order at 6. However, even a cursory review of the Schedules reveals that all known wildfire claims do not qualify for this exception. *See, e.g.*, TC Motion at 5.

5

onerous requirements placed on Wildfire Claimants, the penalty for "fail[ure] to comply with this Order by timely filing a Proof of Claim in the appropriate form" is the permanent expungement of those wildfire claims." Proposed Order at 8.

### IV. THE TORT COMMITTEE FILES A MOTION PROPOSING ITS OWN PROOF OF CLAIM FORM FOR WILDFIRE CLAIMANTS

On May 3, 2019, the Tort Committee filed the TC Motion seeking approval of its own, streamlined version of a claim form for Wildfire Claimants [ECF No. 1824, Ex. A] (the "TC Form"). The Tort Committee notes that "Official Form 410 . . . is not tailored to prepetition claims against the Debtors for monetary losses, personal injuries (including death), losses or averted damages arising out of or relating to the Fires." TC Motion at 2. The TC Form is a simple two-page claim form that differs from Official Form 410 by eliminating irrelevant sections and providing spaces in which to set out information relevant to the wildfire claims. Specifically, the TC Form asks Wildfire Claimants to identify which of four wildfires (the numerous 2017 wildfires are aggregated for purposes of the TC Form) forms the basis of the claim, the location(s) of the injuries, the types of harm suffered, the types of damages sought, and the aggregate amount of the claim. TC Form at 1-2.

The TC Motion does not seek to foreclose class proofs of claim, nor does it require that Wildfire Claimants who previously filed proofs of claim resubmit their claims on the TC Form. Rather, the TC Motion makes clear that any Wildfire Claimant who previously filed proof of claim "that substantially conforms to Official Form 410 is not required to file another proof of claim, or an amended proof of claim, using the Fire Proof of Claim Form." TC Motion at 4.

### ARGUMENT

Federal Rule of Bankruptcy Procedure ("Bankruptcy Rules") 3001[3] requires that "[a] proof of claim shall conform substantially to the appropriate Official Form." The official proof of claim form, Official Form 410 requires, *inter alia*, that the creditor provide the *aggregate* amount of the

---

[3] "The Bankruptcy Code provides no guidance concerning what a proof of claim must contain1 and, therefore, *Rule 3001* is the definitive authority concerning the contents." 9 COLLIER ON BANKRUPTCY P 3001.01.

6

claim and a generalized statement laying forth "the basis of the claim," using as examples "[g]oods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card." Documentation is required only to the extent required by Bankruptcy Rule 3001(c), which applies only "when a claim . . . is based on a writing." Providing the information requested in Official Form 410 is sufficient for any proof of claim: "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

The Bankruptcy Rules and Official Form 410 require no more because the "sole purpose of a proof of claim is to allow the creditor to assert a right to participate in the distribution of assets." *In re Deutsch-Sokol*, 290 B.R. 27, 31 (S.D.N.Y. 2003). *See also In re Hart Ski Mfg. Co.*, 5 B.R. 326, 327–28 (Bankr. D. Minn. 1980) (noting that the purpose of a proof of claim is "to provide the trustee or the debtor-in-possession with adequate notice of the claim against the estate. The filing of a proof of claim is a ministerial act which does not alter the legal and equitable relationships involved."); 9 COLLIER ON BANKRUPTCY P 3001.02 ("The proof of claim provides the basis of creditor participation in a case" and "also provide[s] a basis for a trustee to evaluate claims and from objections to them").

Consistent with that purpose, courts in the Ninth Circuit and elsewhere have held that failure to conform with even the limited requirements found in the Bankruptcy Rules does not necessarily bar a creditor from sharing in the distributions of the debtor's estate. For example, courts allow for informal proofs of claim where the creditor makes "an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable" *In re Anderson-Walker Indus., Inc.*, 798 F.2d 1285, 1287 (9th Cir. 1986) (allowing letter from creditor to debtor to constitute an "amendable proof of claim"). *See also In re Holm*, 931 F.2d 620, 622 (9th Cir. 1991) (holding that the "document that purports to be an informal proof of claim need not be filed in the court"); *In re Gianulias*, 2013 WL 1397430, at *9 (B.A.P. 9th Cir. Apr. 5, 2013) (discussing the "historically liberal standard" of informal proofs of claim and collecting cases). As another example, "[a] majority of courts hold that a failure to attach documents required by Fed. R. Bankr. P. 3001 and Official Form 10 is not, by itself, a basis for

7

disallowance of a claim." *In re Burkett*, 329 B.R. 820, 828 (Bankr. S.D. Ohio 2005) (citing to *In re Holm*, 931 F.2d 620 and collecting cases from other jurisdictions).

Creditors can also rely on class proofs of claim to protect their interests in a bankruptcy in the "five circuits [that] have correctly held that bankruptcy courts have discretion to apply Rule 7023, respecting class actions, to the claims process." 9 COLLIER ON BANKRUPTCY P 3001.07. The Ninth Circuit explicitly endorsed the availability of class proofs of claim in bankruptcy. *In re Birting Fisheries, Inc.*, 92 F.3d 939, 939–40 (9th Cir. 1996). *See also In re First All. Mortg. Co.*, 269 B.R. 428, 444–47 (C.D. Cal. 2001) (reversing bankruptcy court's rejection of class proofs of claim that "was based on its erroneous finding that class procedures were disfavored"). With class actions or class proofs of claim come considerable protections for creditors, including tolling of the date to file proofs of claim. *See, e.g., In re Connaught Grp., Ltd.*, 491 B.R. 88, 97–98 (Bankr. S.D.N.Y. 2013) (holding that where "the representative files a timely adversary proceeding or class proof of claim" and the court later "denies a motion to certify a class," the court "should set a reasonable bar date to allow the members of the putative class to file individual claims").

Once a creditor has submitted an individual or class proof of claim that conforms with the limited requirements of the Bankruptcy Rules, the creditor has done "all that is required for that claim to be allowed unless a party in interest objects to the proof of claim." *In re King*, 165 B.R. 296, 299 (Bankr. M.D. Fla. 1994). The filing creates "an evidentiary presumption that is rebuttable" and "operates to shift the burden of going forward but not the burden of proof." *In re Garvida*, 347 B.R. 697, 706–07 (B.A.P. 9th Cir. 2006). But the proof of claim "is more than 'some' evidence; it is, unless rebutted, 'prima facie' evidence." *Id.* at 707 (citing *Garner v. Shier (In re Garner)*, 246 B.R. 617, 621-22 (B.A.P. 9th Cir. 2000)). *Cf. In re Walston*, 606 F. App'x 543, 547 (11th Cir. 2015) ("when a proof of claim includes all of the information required under Rule 3001, it constitutes prima facie evidence of the validity of the claim, regardless of whether the evidence on which the claimant relies would be considered inadmissible hearsay under state law"). A creditor who files a facially valid proof of claim is entitled to distributions in the amount claimed unless and until an interested party rebuts the presumption "with counter-evidence." *Id.*

/ / /

8

In all, the bankruptcy process provides for liberal protections for creditors to assert their claims against a debtor before those claims are permanently barred. As the Ninth Circuit has observed, "[b]ankruptcy courts are courts of equity, and must assure that substance will not give way to form, and that technical considerations will not prevent substantial justice from being done." *In re Anderson-Walker*, 798 F.2d at 1287 (internal quotation marks and alterations omitted). Here, however, the Bar Date Motion seeks to impose extra-legal "technical considerations" on the Wildfire Claimants under penalty of forfeiture of the right to recovery. The combined effect of its various provisions will be to impose an unnecessary burden on Wildfire Claimants through the onerous Wildfire Proof of Claim Form, expunge otherwise valid proofs of claim in a blatant attempt to reverse the burden of production, and foreclose the protections afforded to potential class members at a premature and procedurally improper phase of the litigation. That the Debtors seek to impose these burdens on the very people that they victimized by way of causing *twenty-three wildfires* in Northern California is particularly egregious where even the Debtors have acknowledged that "[m]any of those who lost their homes in the 2017 and 2018 Wildfires . . . continue to struggle to find affordable alternative housing" and are "still in need of assistance for Alternative Living Expenses or other urgent needs." ECF No. 1777 at 10. These burdens are antithetical to the purpose of filing proofs of claim and the equitable nature of bankruptcy.

## I. THE DEBTORS SEEK TO IMPOSE AN UNNECESSARY BURDEN BY WAY OF THE WILDFIRE PROOF OF CLAIM FORM

The Wildfire Proof of Claim Form proposed by the Debtors here requires the Wildfire Claimants to "set forth with specificity the legal and factual basis for the alleged claim" and file a form that "conform[s] substantially to the" Wildfire Proof of Claim Form. Bar Date Mot. at 14; Proposed Order at 4. Conforming with the proposed form includes setting forth a *separate* claimed amount for each of six categories of losses and production of, *inter alia*, proof of property ownership, property appraisals, insurance documents, rental agreements, proof of business operation, two-years of federal tax returns for business losses, monthly and annual profit and loss statements or W-9 forms, death certificates, insurance benefit summaries, and hospital and

9

Case: 19-30088    Doc# 2240    Filed: 05/28/19    Entered: 05/28/19 14:50:55    Page 13 of 19

doctor's office records. While such a breakdown of damages and production of supporting documents may eventually be useful in establishing the allowed claim amount, those burdens do not serve the purpose of "allow[ing] the creditor to assert a right to participate in the distribution of assets." *In re Deutsch-Sokol*, 290 B.R. at 31. Rather, that information can be requested, if necessary, if and when the Debtors object to a particular claim. Requiring Wildfire Claimants to submit to such burdens now serves no purpose but to expunge the claims of creditors who do not perfectly comply with the "technical considerations" that the Debtors seek to impose.

The cases cited by the Debtors in the Bar Date Motion do not counsel for such burdens to be placed on the Wildfire Claimants here. Two of the cases involve sexual assault allegations requiring special confidentiality and filing provisions. *In re Archdiocese of Milwaukee*, Case No. 11-20059 (SVK) (Bankr. E.D. Wisc. July 14, 2011), ECF No. 331 (requiring "Abuse Survivors" to fill out a special claim form that was subject to a "Confidentiality Protocol" and special filing requirements); *In re USA Gymnastics*, Case No. 18-09108 (RLM) (Bankr. S.D. Ind. Feb. 25, 2018), ECF No. 301 (same). In addition, the sexual assaults were allegedly committed by individuals in the employ of the debtors, and information about the claims would have been held by the creditor and those individuals, not the debtors. Here, in contrast, the creditors are largely holders of known, contingent claims and appear on the Debtors' schedules. *See* ECF Nos. 899, 900, 905, 906.

The other two cases involve a tailored but simple claim form that did <u>not</u> require the creditors to separately identify claimed amounts by category of damages or the production of all supporting documentation, as the Debtors are seeking to impose here. *In re TK Holdings Inc.*, Case No. 17-11375 (Bankr. D. Del. Oct. 4, 2017), ECF No. 959 (for airbag defect claims, a two-page claim form requiring identification of the vehicle, ownership history, and amount of the claim); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. July 30, 2015), ECF No. 5171 (for pre-manifestation asbestos exposure claims, a one-page form requiring identification of the plants at which the claimant worked). These cases show that a bankruptcy court can tailor a proof of claim form for a particular type of claim *without* placing unnecessary and extra-legal burdens on the claimant. In fact, the *TK Holdings* and *Energy Future Holdings*

10

claim forms are similar to the TC Form, which is a two-page claim form that requires claimants to identify the relevant wildfire, the types of damages sought, and the aggregate claim amount. That is all that should be required of Wildfire Claimants here.

II. **THE DEBTORS SEEK TO REVERSE THE BURDEN OF PRODUCTION AND EXPUNGE OTHERWISE VALID CLAIMS**

The Bar Date Motion and Proposed Order require that every Wildfire Claimant who has already submitted a valid proof of claim using Official Form 410 or its equivalent to submit the new Wildfire Proof of Claim Form or have their claims against the Debtors forever barred. This requirement has the effect of disallowing presumptively valid proofs of claim by improper means, and shifts the burden of production from the Debtors, where the burden should lie, to the creditors. But that is not the law. A correctly filed proof of claim is "prima facie evidence of the validity and amount of the claim," Fed. R. Bankr. P. 3001(f), and "is all that is required for that claim to be allowed *unless* a party in interest objects," *In re King*, 165 B.R. at 299 (emphasis added). The filing of a claim creates an "evidentiary presumption" that acts to "shift the burden of going forward" to the party challenging the claim. *In re Garvida*, 347 at 706-07. And the Debtors cannot argue that this burden shifting is a form of mass objection to already-filed proofs of claim, because a "proof of claim is more than 'some' evidence; it is, unless rebutted, 'prima facie' evidence" that must be rebutted "with counter-evidence." *Id.* at 707. And when combined with the documentary evidence required for the Wildfire Proof of Claim Form, the Debtors appear to be attempting to require the Wildfire Claimants to provide "counter-evidence" to the Debtors *lack* of evidence. That is exactly backwards.

This attempted burden-shifting has massive implications. In the normal course, a debtor (or any other interested party) can object to a proof of claim. The issue then becomes a contested matter, and the creditor has the ultimate burden of proof in establishing the right to and amount of payment. *See, e.g., id.* at 706-07. The Debtors' attempt to shift the burden here, however, will result in expunged claims, some of which may not get refiled[4] or, if the Bar Date Motion is

---

[4] Wildfire Claimants who have already submitted proofs of claim have no reason to believe that they will need to

11

granted, will get refiled but not in accordance with the onerous requirements of the Wildfire Proof of Claim Form. *See supra* at 11-13. Those creditors, who have already met their burden of production and are entitled to the protections afforded by the contested matter process, will be *forever barred* from asserting their claims against the Debtors.

Again, the cases cited by the Debtors in support of their motion do not counsel differently. Three of those cases explicitly exempt creditors who have already filed a proof of claim from the need to file the more tailored proof of claim form. *In re TK Holdings Inc.*, ECF No. 959; *In re Energy Future Holdings Corp.*, ECF No. 5171; *In re Archdiocese of Milwaukee*, ECF No. 331. Only the *USA Gymnastics* court required creditors who had already filed a proof of claim to file the new form by the bar date, and only subject to the requirement that the debtor "gives such Survivor prompt notice that the Survivor must re-file the Claim." *In re USA Gymnastics*, ECF No. 301 at 9. Here, the Debtors have already conceded that the destruction caused by the Northern California Wildfires will make such direct notice impossible. *See* Bar Date Mot. at 31.

In stark contrast to the Bar Date Motion, the TC Motion does not require Wildfire Claimants to refile their claims:

> Any Fire Claimant that has already filed a proof of claim with Prime Clerk against any of the Debtors utilizing a claim form that substantially conforms to Official Form No. 410 is not required to file another proof of claim, or an amended proof of claim, using the Fire Proof of Claim Form.

TC Mot. at 4. The TC Motion is fully compliant with the Bankruptcy Code, Bankruptcy Rules, and case law.

III. **THE DEBTORS SEEK TO PREMATURELY AND IMPROPERLY EVISCERATE CLASS PROTECTIONS THAT MIGHT OTHERWISE PROTECT WILDFIRE CLAIMANTS**

The Bar Date Motion also attempts to preempt the use of class proofs of claim through the backdoor, rather than properly litigating the issue:

---

refile their claims or be forever barred from recovery. The proposed notice procedures will help, but even the Debtors concede that they "do not have names and addresses of many potential claimants to which they would otherwise mail notice." Bar Date Mot. at 31.

12

> Any holder of a Wildfire Claim must file the applicable Wildfire Proof of Claim Form even if such claimant may be included in, or represented by, a purported class action, class suit, *class Proof of Claim*, or similar representative action filed against the Debtors with respect to such claimant's Wildfire Claim.

Bar Date Mot. at 14 (emphasis added); Proposed Order at 4. This provision would have the practical effect of barring class proofs of claim in this bankruptcy. The Bar Date Motion is not the proper procedural vehicle to challenge the propriety of class proofs of claim. *See, e.g. In re First All. Mortg.*, 269 B.R. at 444 (C.D. Cal. 2001) (reversing bankruptcy court ruling sustaining objection to class proof of claim).

Nor is the issue of allowing class proofs of claim ripe for adjudication. In the normal course, a creditor would file a class proof of claim and, if an interested party objects, the creditor would then file a motion pursuant to Bankruptcy Rule 9014 to apply Bankruptcy Rule 7023, which applies Federal Rules of Civil Procedure 23, to the contested matter. Judge Jaroslovsky of the Bankruptcy Court for the Northern District of California explained that a "motion to invoke [Bankruptcy Rule 7023] is timely *if promptly made once an objection to the claim is raised*." *In re Sequoia Senior Solutions, Inc.*, 2017 WL 2533345, at *2 (Bankr. N.D. Cal. June 9, 2017) (emphasis added). Until that time, any challenge to the class proof of claim procedure is not ripe. *See id.*

Furthermore, the Bar Date Motion can be construed as a clever effort to eviscerate an important protection for creditors – tolling of the time to file individual proofs of claim. *See, e.g., In re Connaught Grp.,* 491 B.R. at 97–98 (citing *Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir. 2012) and noting that the *American Pipe* "tolling rule applies in bankruptcy"). If this Court later denies a class proof of claim, "it should set a reasonable bar date to allow the members of the putative class to file individual claims." *Id.* at 98. That protection is particularly important here as the Debtors may not be able to provide the direct mail notice required for known claimants to the thousands of wildfire victims whose residences were burned down. *See* Bar Date Mot. at 31 ("the Debtors do not have names and addresses of many potential claimants to which they would otherwise mail notice"). *See also* ECF No. 1777 at 4-5 (the Debtors conceding that "[m]any of those who lost their homes in the 2017 and 2018 Wildfires . . . continue to struggle to find

13

affordable housing" and may be "living in tents"). The Debtors should not be able to circumvent the protections afforded creditors through well-settled bankruptcy procedures through what ostensibly is a Bar Date Motion, but which in reality seeks to strip the Wildlife creditors of important protections.[5]

The TC Motion does not suffer from the same infirmities as the Bar Date Motion. The TC Motion is silent on the issue of class proofs of claim, allowing interested parties and this Court to address class proofs of claim at the appropriate time and through the appropriate procedures.

## CONCLUSION

For all the above reasons, the Interested Parties request that this Court (i) strike the parts of the Proposed Order requiring Wildfire Claimants who have already filed a proof of claim to file a new proof of claim, (ii) strike the parts of the Proposed Order requiring Wildfire Claimants who are covered by class actions and/or class proofs of claim to file an individual proof of claim, (iii) deny the Wildfire Proof of Claim Form in its entirety, (iv) approve of the TC Motion in its entirety, and (v) grant any other relief that this Court deems just and proper.

[Signatures to Follow]

---

[5] None of *Archdiocese of Milwaukee*, *Energy Future Holdings*, or *USA Gymnastics* contain a similar waiver of class procedures. *In re USA Gymnastics*, ECF No. 301; *In re Energy Future Holdings Corp.*, ECF No. 5171; *In re Archdiocese of Milwaukee*, ECF No. 331. But see *In re TK Holdings Inc.*, ECF No. 959 (requiring each airbag claimant to file an individual proof of claim).

14

| | | |
|---|---|---|
| Dated: May 28, 2019 | | _/s/ Thomas D. Warren_ |
| Los Angeles, CA | | Thomas D. Warren |

PIERCE BAINBRIDGE BECK PRICE & HECHT LLP
John M. Pierce (SBN 250443)
jpierce@piercebainbridge.com
Thomas D. Warren (SBN 160921)
twarren@piercebainbridge.com
Carolynn K. Beck (SBN 264703)
cbeck@piercebainbridge.com
Janine Cohen (SBN 203881)
jcohen@piercebainbridge.com
355 South Grand Avenue, 44th Floor
Los Angeles, California 90071
(213) 262-9333

Deborah Renner (pro hac requested)
drenner@piercebainbridge.com
Claiborne Hane (pro hac requested)
chane@piercebainbridge.com
Michael Eggenberger (pro hac)
meggenberger@piercebainbridge.com
277 Park Avenue, 45th Floor
New York, New York 10172
(212) 484-9866

-and-

_/s/ Michael I. Gottfried_
Michael I. Gottfried

LANDAU GOTTFRIED & BERGER LLP
Michael Gottfried (SBN 146689)
mgottfried@lgbfirm.com
Roye Zur (SBN 273875)
rzur@lgbfirm.com
1880 Century Park East, Suite 1101
Los Angeles, CA 90067
(310) 557-0050

Attorneys for Interested Parties