

Signed and Filed: May 28, 2019

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

```
In re                              )  Chapter 11
                                   )
PG&E CORPORATION,                  )  Bankruptcy Case
                                   )  No. 19-30088-DM (Lead Case)
and                                )
                                   )
PACIFIC GAS AND ELECTRIC           )  Bankruptcy Case
COMPANY,                           )  No. 19-30089-DM
                                   )
            Debtors.               )  (Jointly Administered)
_____)
□ Affects PG&E Corporation         )
X Affects Pacific Gas and Electric Co. )
□ Affects both Debtors             )
                                   )
* All papers shall be filed in     )
  Lead Case, No. 19-30088-DM.      )
_____)
```

## MEMORANDUM DECISION ON MOTION TO APPOINT A RATEPAYERS' COMMITTEE

On May 9, 2019, this court held a hearing on the motion filed by The Utility Reform Network ("TURN") for appointment of an official committee of ratepayer claimants (the "TURN Motion"). Having considered arguments made at the hearing and in TURN's moving papers and reply, in various joinders,[1] and in  oppositions

---
[1] The following entities filed joinders, non-oppositions, or statements in support of the TURN Motion: Northern California Power Agency; City and County of San Francisco; California Large Energy Consumers Organization; California Farm Bureau Federation; the Public Advocates Office at the California Public Utilities Commission; and the SLF Fire Victim Claimants.  Another joinder was filed, but subsequently withdrawn.

-1-

filed by PG&E Corporation (the "Corporation") and Pacific Gas and Electric Company (the "Utility") (collectively, "Debtors"), the Official Committee of Unsecured Creditors ("OCUC"), and Andrew R. Vara, Acting United States Trustee for Region 3 (the "UST"), the court concludes that the ratepayers do not have a "claim" for which separate representation by a committee is necessary and will enter therefore an order denying the TURN Motion.

**I.      REQUESTED RELIEF**

Contending that neither the OCUC nor the Official Committee of Tort Claimants ("OCTC") "can speak on behalf of the ratepayers who will fund any plan" (TURN Motion, Dkt. 1324 at 5:12-14), TURN asserts that a separate committee for "focusing the views and opinions of all ratepayers" is essential. Instead of proposing that individual and small business ratepayers act as committee members, TURN suggests that representatives of various non-creditor special interest groups serve on its proposed ratepayer committee (*Id.* at 5:27 – 7:13). These entities include TURN itself, the Public Advocates Office of the California Public Utilities Commission ("CPUC"), Energy Policy of California Farm Bureau Federation, California Large Energy Consumer Advocates, AARP California, and the Greenlining Institute (*Id.* at 6:1-5).

**II.     GOVERNING LAW**

The Bankruptcy Code provides that the UST "shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate." 11 U.S.C. §

1102(a)(1).[2]  Section 1102(b) governs committee appointments and composition.  To be eligible for appointment, prospective members must qualify as creditors or equity interest holders.  11 U.S.C. § 1102(b)(1) and (2).  TURN contends that ratepayers are "creditors" entitled to representation by their own committee apart from the OCUC.[3]

Section 101(10) defines "creditor" as an

> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
>
> (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or
>
> (C) entity that has a community claim.

11 U.S.C. § 101(10).  A "claim," in turn, includes a "right to payment."  11 U.S.C. §§ 101(5).

### III. **DISCUSSION**

#### A. *Ratepayers Are Not Creditors*

As required by section 1102, the UST appointed the OCUC to represent the interests of unsecured creditors.  Under section 1102(a)(2), the court may (but is not required to) appoint additional committees of *creditors*.  TURN contends that ratepayers are creditors because they are entitled to receive a semiannual

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] Despite the contention that ratepayers are entitled to representation by their own committee, TURN proposes that special interest groups that are not creditors or typical ratepayers themselves be members of the committee.  TURN has not demonstrated that these entities or persons owe financial fiduciary duties to, or maintain agency relationships with, the ratepayers they would purport to represent.

-3-

credit on their bills stemming from auctions of greenhouse gas ("GHG") allowances. It further alleges that at the time its motion was filed, the Utility owed $324,538,000 to residential, small business and emission-intensive trade-exposed retail customers, plus another $128,975,630 to gas ratepayers. TURN Reply, dkt. 1820 at ECF pg. 8, l. 12-15.[4] According to TURN, this right to semiannual refunds constitutes a "right to payment" under section 101(5) that entitles ratepayers to assert creditor status for the purposes of section 1102. As discussed below and at the hearing, the court disagrees.

First, the semiannual credit is applied automatically and the court has already entered an order permitting Debtors to continue applying those credits going forward. The court therefore rejects the contention that this automatic, on-going and court-approved right to an on-bill credit renders a ratepayer a "creditor" entitled to separate representation by a committee.[5] Even if these

---

[4] TURN also asserts in its reply that the CPUC is currently conducting two investigations into the Utility's prepetition conduct that "could result in remedies owed to ratepayers." TURN Reply, dkt. 1820 at ECF pg. 9, l. 2-3. According to TURN, such remedies "could take any form, including credits to ratepayers against revenues[.]" *Id.* at lines 9-14. The CPUC is investigating the Utility's conduct, and will determine the any liability and the appropriate remedy. It will impose and enforce any such liability in its regulatory capacity. The bankruptcy court has no role to play in this matter, and committee representation of ratepayers is thus unnecessary.

[5] The objections filed by the UST, the OCUC and Debtors also persuasively reject the position that ratepayers are persons who hold claims against the Debtor and are thus eligible to serve on an official committee under section 1102(b)(1):

> TURN argues that because PG&E customers are entitled to receive a small credit on their bills twice a year, "[e]very ratepayer within PG&E's service area is a creditor in these cases." ECF No. 1324 at 8-9. While TURN is correct that 11 U.S.C. § 101(5)(A) defines "claim" as a "right to payment," ratepayers do not have a

-4-

on-bill credits did represent unsecured debts, the OCUC provides adequate representation for customers who may assert a prepetition claim for missed credits.  A separate committee is not necessary to protect the customers' entitlement to the credits.

Second, as noted by Debtors in their objection, the GHG credits have been and continue to be credited against the rates, and will continue to be credited in accordance with the CPUC's directive and state law.  In fact, this court has granted Debtors' motion to continue certain customer programs, including the postpetition provision of the GHG credits.  *See Order (i) Authorizing Debtors to (a) Maintain and Administer Customer Programs, Including Public Purpose Programs, and (b) Honor any Prepetition Obligations Relating Thereto, and (ii) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* entered on March 12, 2019 (Dkt. 843).  Any credits arising prepetition will be paid soon, if not already. Consequently, any "claims" that existed as of the petition date (January 29, 2019) will be gone very soon.

Moreover, the ratepayers do not have "claims" for such funds apart from the CPUC's directive, so even if PG&E did default, the CPUC can compel payment under its regulatory powers.  The

---

> right to payment. In fact, the [PUC] specifically rejected the idea of paying customers directly via an off-bill rebate check in favor of an on-bill credit. ECF No. 1326-1 at 121.  All current customers receive the small credit in April and October, *id*. at 122, a minor, automatic statement adjustment that does not rise to the level of transforming all gas and electric customers into creditors of PG&E.

*UST Objn.* at dkt. 1651 at 5:16-25; *see also OCUC Objn.* at dkt. 1653, ¶¶ 16-18; *Debtors' Objn.* at 10:19 – 12:1-14.

entitlementto credits are therefore not "claims" that should be classified and treated/modified under a chapter 11 plan. More importantly, the CPUC has already determined that these credits are NOT "refunds." CPUC Decision No. 18-03-017 ("GHG allowance proceeds are not analogous to the funds found to qualify as "rate refunds[.]").

Finally, the formation of a committee of interested parties based on a "right of payment" that the court has already recognized and for which the court has authorized ongoing payment is not supported by the language and intent of Bankruptcy Code section 1102.

### B. *The Relief Sought in The TURN Motion is Unnecessary*

The TURN Motion seeks appointment of a ratepayers committee to serve the interests of the ratepayers as *ratepayers* and *future customers*, and not their interests as nominal creditors. In enumerated paragraph 2 of the motion (TURN Motion, dkt. 1324 at 5), TURN argues that the existing committees cannot "speak on behalf of the ratepayers who will fund any plan." "The members of each respective official committee are fiduciaries for the general unsecured and tort claimants in this case. None can be expected to *separately assert and advocate for the interests of ratepayers as regards future rate increases that will necessarily be required to confirm the plan.*" (*Id.* at 10:1-4).

The Bankruptcy Code, however, does not provide for the creation of a separate committee to protect the interests of future consumers or customers of a debtor. As the court noted in its Memorandum Decision Regarding Motion for Order Vacating Appointment of Committee of Ratepayers in the prior PG&E case (Case No. 01-

-6-

30923 at dkt. 599) (the "2001 Decision"), "there is no authority in the Bankruptcy Code for the appointment of [a] Official Committee of Ratepayers." *Id.* at 1-2. Further, "ratepayers have other means and other fora to protect their interests. *Id.* at 2. The court's holding in 2001 that the appointment of a ratepayers committee did not assure "adequate representation of creditors" is equally applicable in 2019.

In addition, the ratepayers' interests arising from their ratepayer status are protected by section 1129(a)(6), which provides that a plan is confirmable only if "[a]ny regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." *See, e.g., In re Cajun Elec. Power Co-op., Inc.*, 230 B.R. 715, 741 (Bankr. M.D. La. 1999) (proposed plan providing that the debtor would "seek all necessary approval" for any rate change satisfied section 1129(a)(6)).

Any plan proposed by Debtors or another party must comply with section 1129(a)(6). Therefore, if any future plan includes a rate change, the Utility would first have to obtain full approval from the CPUC, and any ratepayer or entity would have the opportunity to be heard by the regulatory agency during any such consideration. See *In re Pacific Gas and Electric Co.*, 304 B.R. 395, 410 (Bankr. N.D. Cal. 2004) (finding that "[s]ection 1129(a)(6) specifically allows confirmation of a plan containing a rate change as long as the rate change is approved by the commission having jurisdiction over those rates"). Creation of a committee not contemplated under

-7-

the Bankruptcy Code to represent ratepayer interests with respect to future rates is thus unnecessary.

### IV. CONCLUSION

TURN has not demonstrated that the appointment of a third official committee is required to adequately represent ratepayer interests given that the CPUC can do so. It has not shown why the OCUC cannot represent whatever interests ratepayers hold as unsecured creditors, assuming they are indeed unsecured creditors. It has not shown how their ability to voice concerns to the CPUC regarding future rate adjustments have been impaired. As section 1129 requires any future rate increases to be approved by the CPUC, TURN and ratepayers can fight any rate increases in that forum. A separate ratepayer committee is therefore not justified under section 1102. Consequently, the court will enter a separate order denying the Turn Motion.

**\*\*\* END OF MEMORANDUM DECISION \*\*\***