WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br> - and - <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 (Lead Case) (Jointly Administered) <br><br> **DEBTORS' OMNIBUS OBJECTION TO MOTIONS OF THE TORT CLAIMANTS COMMITTEE AND THE AD HOC SUBROGATION GROUP SEEKING APPROVAL OF ALTERNATIVE WILDFIRE PROOF OF CLAIM FORMS** <br><br> Related Docket Nos.: 1824, 1825, and 2044 <br> Date: June 11, 2019 <br> Time: 9:30 a.m. (Pacific Time) <br> Place: United States Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 <br> Judge: Hon. Dennis Montali |

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this omnibus objection (the "**Objection**") to the *Motion of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R. Bankr. P. 3001(a) for Entry of an Order Approving Proposed Model Proof of Claim Form for Fire Claims and Related Procedures*, dated May 3, 2019 [Docket No. 1824] (together with the supporting memorandum [Docket No. 1825], the "**TCC Motion**"), and the *Motion of the Ad Hoc Group of Subrogation Claim Holders Pursuant to 11 U.S.C. §§ 105(a), 107(b) and 501 and Fed. R. Bankr. P. 3001(a) and 9018 for Entry of an Order Approving Proposed Model Omnibus Insurance Subrogation Proof of Claim Form for Subrogation Claims and Related Procedures*, dated May 16, 2019 [Docket No. 2044] (the "**Subrogation Claimants Motion**" and, together with the TCC Motion, the "**Alternative POC Motions**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................6

I. PRELIMINARY STATEMENT ...............................................................................................6

II. THE TORT CLAIMANTS COMMITTEE'S MOTION AND DELAYED CLAIMS PROCESS SHOULD BE DENIED ..............................................................9

    A. The Tort Claimants Committee's Proposed Claims Submission Process is Inefficient and will Unduly Delay the Chapter 11 Cases ....................9

    B. The Tort Claimants Committee's Proposed Proof of Claim Form and Related Procedures are Wholly Inadequate ......................................................................10

III. THE DEBTORS BELIEVE THE ISSUES IN THE SUBROGATION CLAIMANTS MOTION REGARDING THE WILDFIRE SUBROGATION CLAIMANT PROOF OF CLAIM FORM HAVE BEEN OR WILL SOON BE RESOLVED ..................................................................................................................14

IV. CONCLUSION ....................................................................................................................14

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Allegheny Int'l, Inc.*,
 954 F.2d 167 (3d Cir. 1992) ..................................................................................................11

*In re AMR Corp.*,
 No. 11-15463 (SHL), 2016 WL 1068955 (Bankr. S.D.N.Y. Mar. 17, 2016) ..........................9

*In re Archdiocese of Milwaukee*,
 Case No. 11-20059 (SVK) (Bankr. E.D. Wisc. July 14, 2011) ............................................14

*In re Banco Latino Int'l*,
 310 B.R. 780 (S.D. Fla. 2004), *aff'd*, 404 F.3d 1295 (11th Cir. 2005) .................................10

*In re Bates*,
 570 B.R. 757 (Bankr. W.D. Tex. 2017) ............................................................................8, 11

*In re Best Products Co., Inc.*,
 140 B.R. 353 (Bankr. S.D.N.Y. 1992) ..................................................................................10

*In re Campbell*,
 336 B.R. 430 (9th Cir. B.A.P. 2005) .....................................................................................12

*In re Cluff*,
 313 B.R. 323 (Bankr. D. Utah 2004) ...............................................................................8, 12

*In re Colt Engineering, Inc.*,
 288 B.R. 861 (Bankr. C.D. Cal. 2003) ..................................................................................11

*In re Energy Future Holdings Corp.*,
 522 B.R. 520 (Bankr. D. Del. 2015) .......................................................................................9

*In re Energy Future Holdings Corp.*,
 Case No. 14-10979 (Bankr. D. Del. July 30, 2015) .............................................................13

*First Fidelity Bank, N.A. v. Hooker Investments, Inc.*,
 937 F.2d 833,840 (2d Cir. 1991) ............................................................................................9

*In re Heath*,
 331 B.R. 424 (9th Cir. B.A.P. 2005) .................................................................................8, 12

*In re Minbatiwalla*,
 424 B.R. 104 (Bankr. S.D.N.Y. 2010) ..................................................................................12

*In re Rehman*,
 479 B.R. 238 (Bankr. D. Mass. 2012) ..................................................................................11

*In re TK Holdings Inc.*,
　Case No. 17-11375 (Bankr. D. Del. Oct. 4, 2017) ..................................................................13

*In re USA Gymnastics*,
　Case No. 18-09108 (RLM) (Bankr. S.D. Ind. Feb. 25, 2018) .....................................................13

**Statutes**

11 U.S.C. § 105(a)......................................................................................................................2

11 U.S.C. § 502(b)(1)................................................................................................................11

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

As the Debtors have emphasized from the commencement of these Chapter 11 Cases, one of their principal objectives in commencing these cases is to establish a process to fully address and resolve their liabilities resulting from the 2017 and 2018 Northern California wildfires and to provide compensation to those entitled to compensation from the Debtors *fairly and expeditiously*. To that end, the Debtors have worked diligently with their advisors and have prepared and filed a comprehensive motion [Docket No. 1784] (the "**Bar Date Motion**[1]") seeking, among other things, to establish a fair process and reasonable date by which all claimants must file proofs of claim (the "**Bar Date**"), a fundamental element to the orderly administration of any chapter 11 case. The Bar Date Motion encompasses robust procedures for providing notice of the Bar Date to all creditors and parties in interest (including, unprecedented, multi-faceted supplemental procedures for providing notice of the Bar Date to unknown creditors, including Unknown Wildfire Claimants). The Bar Date Motion also seeks approval of specially-tailored and customized Proof of Claim forms to be submitted by Wildfire Claimants and Wildfire Subrogation Claimants so that basic information is provided to substantiate the claims and the basis and extent of the asserted liabilities, without imposing any undue burdens. This effort and the procedures proposed by the Debtors in the Bar Date Motion have been designed to progress these cases to the next phase so that a fair and equitable plan can be formulated and negotiated and, importantly, so that distributions can be made to holders of valid claims.

The Bar Date Motion seeks approval of two Wildfire Proof of Claim Forms — one to be utilized by holders of subrogation claims, and the other to be utilized by holders of Wildfire Claims. Notably, the Debtors and the Ad Hoc Subrogation Group have engaged in productive discussions and expect to have an agreement on the Wildfire Subrogation Claimant Proof of Claim Form, and the information to be provided therein, prior to the hearing. The Debtors anticipate filing a revised Wildfire Subrogation Claimant Proof of Claim Form incorporating the final agreed revisions with the Court shortly in connection with the Bar Date Motion. Unfortunately, that is not the case with the TCC. In

---
[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bar Date Motion or the Alternative POC Motions, as applicable.

fact, the TCC advised the Debtors on May 29, 2019, that it intends to file a motion asking the Court to disregard the Debtors' Bar Date Motion and instead set a Bar Date of January 31, 2020.

In addition to seeking to push the Bar Date into the next year, the TCC has filed the TCC Motion which seeks approval of its own individual wildfire proof of claim form (the "**TCC Form**") and a bifurcated claims process, a path that will significantly delay the administration of these Chapter 11 Cases, the chapter 11 plan process, and any distribution to the claimants the TCC represents. The TCC seeks to bifurcate approval of the Bar Date, claims, and noticing process into two or three stages – first, approval of a wholly inadequate claim form, then a significantly later proposed Bar Date, and then, even further down the road, to first begin the process of obtaining information from Wildfire Claimants that goes to the essence of the basis, validity, and amount of their claims. The Debtors are not aware of a single case where parties have sought to stage the Bar Date and noticing process in such a manner that would introduce lengthy and unavoidable delay into the administration of a chapter 11 case.

Putting aside the obvious drawbacks of the process requested in the TCC Motion, the TCC Form is wholly inadequate. The Debtors' proposed Wildfire Claimant Proof of Claim Form is designed to obtain certain basic and fundamental information with respect to Wildfire Claims, including the specific relevant wildfire, the particular type of loss or injury, whether there is an intention to rebuild, certain available basic market and documentary information, the location of the loss or injury, the type and amount of damages asserted, and (if applicable) whether the claim is covered by insurance, and, if so, relevant coverage information. The information requested in the Debtors' Wildfire Claimant Proof of Claim Form is reasonable, straightforward, and in no way burdensome.[2] In contrast, the TCC Form requests only summary information, without any detail as to the particular fire, the alleged loss, insurance coverage, relevant documentation, or any amount asserted as a claim. In fact, the TCC Motion states that its proposed claim form "does not require Fire Claimants to list an amount for their claims, *as this would serve no useful purpose* at this stage of the Chapter 11 Cases." TCC Motion at 9:10-11 (emphasis supplied). The TCC Motion then goes on to state that "supporting documentation is not required at this time . . . . *The day will come when additional documentation and information will be necessary*." *Id*. at

---

[2] The Debtors, of course, understand that certain requested documentary information may not be available in certain circumstances as a result of the fires and, if that is the case, that should be noted on the Wildfire Proof of Claim Form, and will not prejudice the claimant.

9:12-16 (emphasis supplied). As far as the Debtors are concerned, if these cases are to move forward to the plan process and, more importantly, to distributions to the victims of the Wildfires, now is the time to obtain claim amounts and relevant basic claim support and documentation — doing this in stages, much less deferring the entire process until next year, makes no sense whatsoever.

Although Wildfire Claimants may not have an affirmative duty under Bankruptcy Rule 3001(c) to attach a specific writing to their claims, each Wildfire Claimant "must allege facts sufficient to support the claim" *In re Bates*, 570 B.R. 757, 763 (Bankr. W.D. Tex. 2017), and the cases cited by the TCC acknowledge that "creditors have an obligation to respond to formal or informal requests for information." *In re Heath*, 331 B.R. 424, 436 (9th Cir. B.A.P. 2005); *In re Cluff*, 313 B.R. 323, 337 (Bankr. D. Utah 2004). This is precisely why the Debtors have proposed the limited and narrowly tailored questions in their Wildfire Proof of Claim Form – not to improperly shift the burden of proof to Wildfire Claimants or to impose obstacles, but rather to enable the Debtors to obtain fundamental information to advance these cases. Indeed, as the Court will see in connection with the Bar Date Motion, the Debtors have agreed to a significant number of revisions to the proposed Bar Date Order to address various concerns raised by certain parties in interest that also have an interest in moving these cases forward.[3] Of course, this same goal likely could be accomplished in various stages and through formal discovery as proposed by the TCC, but proceeding in that fashion and deferring the Bar Date to next year, will only serve to substantially delay the administration of these cases and distributions to claimants.

The Debtors have been engaged in ongoing discussions with the TCC and certain plaintiffs' lawyers in an attempt to resolve these issues and agree on a process to provide the basic claims information to the Debtors on a timely basis. To date, however, those discussions have not been productive. The Debtors and other parties in interest are anxious to move these Chapter 11 Cases forward and to implement the unprecedented noticing plan outlined in the Bar Date Motion to assure that due process is achieved and that basic and appropriate claims information can be timely obtained. The TCC

---

[3] Among other revisions, the Debtors have agreed to add language to the proposed Bar Date Order making clear that any claimant that timely files a claim and makes a good faith effort to assert a claim in the appropriate form shall be permitted to revise, amend, and/or supplement their applicable Proof of Claim Form until such time as their claim is allowed or disallowed by order of the Court.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Motion is an impediment to this customary process and should be denied.

## II. THE TORT CLAIMANTS COMMITTEE'S MOTION AND DELAYED CLAIMS PROCESS SHOULD BE DENIED

### A. The Tort Claimants Committee's Proposed Claims Submission Process is Inefficient and will Unduly Delay the Chapter 11 Cases

As stated, one of the Debtors' principal objectives in commencing these Chapter 11 Cases is to establish a process to fairly and expeditiously address their liabilities and provide compensation to those entitled to receive compensation from the Debtors. Since the Petition Date, the Debtors, their advisors, and other parties in interest have been working diligently to stabilize their business operations and these efforts have been successful. These cases have now progressed to the point where the Debtors and other parties in interest are turning their focus towards the chapter 11 plan process.

The importance of moving these cases forward in an expeditious manner is a theme that has been echoed by nearly every constituency since the Petition Date. Indeed, at the "first day" hearing, many of the plaintiffs' attorneys that represent a significant number of the Wildfire Claimants expressed the need to resolve these Chapter 11 Cases quickly. *See Hr'g Tr.* (Jan. 31, 2019) at 79:25; 80:1-4 (Mr. Esserman: "The public entities are very interested in getting a prompt resolution of this case which would be to everyone's benefit."); 83:2-7 (Mr. Baghdadi: "Expeditious and fair orderly resolution of this process is what [the fire victims] want to be a part of."); and 84:4-11 (Mr. Pitre: "I ask that that exceptional talent, together with your stewardship, Your Honor, insure that this process moves with a sense of urgency"). Counsel for the TCC has made similar comments stating, "We hear every week on our weekly [Tort Committee] telephone calls about how this case must move expeditiously and be resolved within six months." *See Hr'g Tr.* (May 8, 2019) at 53:11-13. The TCC's proposal to unnecessarily stage the claims filing process and extend the claims bar date to January 31, 2020 is at odds with these statements.

It is well established that the setting of a bar date in chapter 11 cases serves the important purpose of enabling parties in interest to ascertain, on a reasonable timeline, the identity of persons making claims against the estate and the general amount of such claims. *See First Fidelity Bank, N.A. v. Hooker Investments, Inc.*, 937 F.2d 833,840 (2d Cir. 1991); *In re AMR Corp.*, No. 11-15463 (SHL), 2016 WL 1068955, at *2 (Bankr. S.D.N.Y. Mar. 17, 2016); *In re Energy Future Holdings Corp.*, 522

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

B.R. 520, 526–27 (Bankr. D. Del. 2015); *In re Banco Latino Int'l*, 310 B.R. 780, 786 (S.D. Fla. 2004), *aff'd*, 404 F.3d 1295 (11th Cir. 2005); *In re Best Products Co., Inc.,* 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992). As stated in the Bar Date Motion, the Debtors ability to properly assess their potential liabilities is a gating issue to the formulation and negotiation of a plan and, ultimately, achieving a successful reorganization and distributions to, among others, Wildfire Claimants. Additionally, the establishment of a Bar Date is a key element of the plan voting process.

The TCC's bifurcated, or potentially trifurcated, Bar Date and noticing process is antithetical to moving these cases forward. As stated above, the TCC Motion seeks approval of the TCC Form (the deficiencies of which are self-evident) and to delay both the setting of a Bar Date and the process of notifying creditors of that deadline. Such an approach would unfold in two or three stages — first, approval of a wholly inadequate claim form, followed later by the establishment of a Bar Date — now not until next year as proposed by the TCC — and then, even further down the road, first beginning the process of collecting information from Wildfire Claimants that is fundamental to the assessment of the Debtors' potential liabilities to be addressed in a plan. Conversely, the Debtors seek to expedite this process and distributions to creditors by establishing a reasonable Bar Date and claim form that will provide the information necessary to hopefully achieve a negotiated resolution or facilitate the timely intervention of this Court, if necessary.

### B. The Tort Claimants Committee's Proposed Proof of Claim Form and Related Procedures are Wholly Inadequate

As acknowledged in the TCC Motion, Courts routinely permit parties to make modifications to the Official Form 410 (the "**Official Form**"), particularly in mass tort chapter 11 cases. *See* TCC Motion at 7:3-28; 8:1-13. The Debtors and the TCC appear to agree that, given the nature of the potential claims, use of the Official Form is not practical or efficient with respect to Wildfire Claims, and an appropriately tailored claim form is necessary. As proposed, however, the TCC Form is wholly inadequate.

The Debtors' proposed Wildfire Claimant Proof of Claim Form requests certain basic information with respect to each Wildfire Claim. For example: (a) the specific fire involved (as opposed to the four broad fire categories proposed in the TCC Form); (b) the specific real property involved and

whether it was on the market; (c) the type of personal property for which recovery is sought; (d) the name and address of any business involved in the claimed loss, including certain documentation such as tax returns directly relevant to proving any claimed loss; (e) certain specific information as to asserted personal injury claims, including when the injury occurred; (f) insurance coverage information which is fundamental to determining the amount of any claim; and (g) the amount of the asserted claims. As set forth in the Bar Date Motion and the Orsini Declaration submitted in connection therewith, the information requested in the Debtors' Wildfire Claimant Proof of Claim Form is necessary for the Debtors to assess the scope of their liabilities and move these cases forward in a meaningful way. The Debtors do not believe that this requested information imposes any undue burden and that it is not unreasonable to request that claimants furnish this information to provide a basis to substantiate their claims and receive a distribution from the estates. Of course, as noted, to the extent that certain documentary information cannot be furnished because of exigent circumstances, that can be noted on the form.

In contrast, the TCC Form requests very limited summary information with no specific details necessary to an appropriate evaluation. Indeed, as stated, the TCC Form does not even provide that an amount be asserted, somehow arguing that it would serve no useful purpose. The TCC Motion further proposes that Wildfire Claimants should not be required to attach any documentation in support of their asserted claims. Although, as stated, Wildfire Claimants may not have an affirmative duty under Bankruptcy Rule 3001(c) to attach a specific writing to their claims, each Wildfire Claimant "must allege facts sufficient to support the claim." *In re Bates*, 570 B.R. at 763; *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) ("Initially, the claimant must allege facts sufficient to support the claim."); *In re Colt Engineering, Inc.*, 288 B.R. 861, 878 (Bankr. C.D. Cal. 2003) ("It would follow, however, that if the claimant fails to provide sufficient facts to establish the amount and validity of its claim, then the proof of claim would not enjoy the *prima facie* validity set forth in the Section 502(a)."); *In re Rehman*, 479 B.R. 238, 242 (Bankr. D. Mass. 2012) ("to avoid disallowance under Bankruptcy Code § 502(b)(1) a claim must be presented in a manner that were it brought as a complaint in state court, it would survive a motion to dismiss.").

Additionally, numerous cases, including cases within the Ninth Circuit, acknowledge that

"creditors have an obligation to respond to formal or informal requests for information." *In re Heath*, 331 B.R. 424, 436 (9th Cir. B.A.P. 2005); *In re Minbatiwalla,* 424 B.R. 104, 118 (Bankr. S.D.N.Y. 2010) ("Failure of the creditor to respond to requests for documentation within two weeks after dispatch or communication of such request could strip any presumption of *prima facie* validity from the proof of claim and the objection could be sustained after a hearing on notice."). And Courts have previously held that it is within their authority to compel claimants to produce documentation in support of their claims. *See e.g., In re Campbell*, 336 B.R. 430, 436 (9th Cir. B.A.P. 2005) ("Moreover, a creditor's lack of adequate response to a debtor's formal or informal inquiries in itself may raise an evidentiary basis to object to the unsupported aspects of the claim, or even a basis for evidentiary sanctions, thereby coming within Section 502(b)'s grounds to disallow the claim.") (*citing Heath*, 331 B.R. at 437); *In re Cluff*, 313 B.R. at 337 ("using a summary also requires the creditor to make the underlying documents available for examination at a reasonably place and time, and such creditors should not underestimate the Court's willingness to compel them to do so."). Indeed, this is precisely the reason that the Official Form itself directs claimants to attach copies of any documents that support the claim. *See* Official Form ("Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements."). The request that certain documentation be provided is not designed as a trap, but rather as a way to obtain necessary information and to expedite the chapter 11 process. There is no question that the Debtors are entitled to this information. The issue perhaps is only a matter of timing, and the Debtors are seeking to advance the chapter 11 plan process, which they believe is in the best interests of all of their economic stakeholders.

    The information sought in the Debtors' proposed Wildfire Claimant Proof of Claim Form is critical to assessing the Debtors' aggregate liability and for different categories of claims. For instance, as set forth in the Orsini Declaration, identifying the specific fire and the location of the loss or injury is necessary to ensure that any liability findings made with respect to the individual fires are carried through to the corresponding claims. Information concerning the types of damages asserted is required to enable the Debtors and other parties to calculate an accurate measure of damages. Identifying whether a claim has been covered by insurance is required to value claims accurately and avoid any double-counting of

losses recovered across the different categories of claimants (*i.e*., Wildfire Claimants and Wildfire Subrogation Claimants). *See* Orsini Decl., at 3-4. The Debtors carefully considered the limited information requested in their Wildfire Claimant Proof of Claim Form and narrowly tailored the requests to insure that potential Wildfire Claimants adequately plead and support their claims and are not subject to any undue burden.

The Debtors believe that this approach is entirely consistent with the Court's comments at the hearing on May 22, 2019, in connection with the Debtors' recently approved Wildfire Assistance Fund, where the Court stated that if "the debtor filed a plan tomorrow and there was a claim's deadline, every one of the victims would have to file a proof of claim and be subject to whatever proper inquiry as to the entitlement to the claim." *See* Hr'g Tr. (May 22, 2019) at 86:3-6.

Additionally, the Debtors' proposed Wildfire Claimant Proof of Claim Form is consistent with other specially tailored proof of claims approved by other courts in the context of chapter 11 cases involving substantial tort claims. *See, e.g., In re TK Holdings Inc.*, Case No. 17-11375 (Bankr. D. Del. Oct. 4, 2017) [Docket No. 959] (approving special proof of claim form for potential claimants that had suffered personal injury or economic loss damages relating to their ownership or operation of vehicles with recalled airbag inflators, which form required claimants to identify, among other things, (i) the manufacturer, make, model, and vehicle identification number of their vehicle, (ii) whether they owned or leased said vehicle, (iii) the period in which they owned or leased said vehicle, and (iv) the basis of the asserted claim (loss of economic value, personal injury or litigation, other) and to submit supporting documentation explaining or detailing the type and date of injury); *In re USA Gymnastics*, Case No. 18-09108 (RLM) (Bankr. S.D. Ind. Feb. 25, 2018) [Docket No. 301] (approving special proof of claim form for claimants asserting claims relating to sexual misconduct, which form required claimants to, among other things, provide documentation and written responses to approximately thirty (30) separate questions regarding the nature of their claims, the damages asserted, their connections to the debtors, and the procedural history of their asserted claims); *In re Energy Future Holdings Corp*., Case No. 14-10979 (Bankr. D. Del. July 30, 2015) [Docket No. 5171] (approving proof of claim for claimants asserting unmanifested asbestos related injuries which required claimants to, among other things, identify the plant in which they or their family members worked, the location of said plant, the type of

asbestos exposure, and the estimated exposure dates, if known); *In re Archdiocese of Milwaukee*, Case No. 11-20059 (SVK) (Bankr. E.D. Wisc. July 14, 2011) [Docket No. 331] (approving special proof of claim for claimants asserting sexual misconduct claims requiring claimants to submit supporting documentation and answer a series of questions relating to the nature of the claim, whether they had previously commenced a lawsuit, the impact of the abuse and damages, and other additional information).

### III. THE DEBTORS BELIEVE THE ISSUES IN THE SUBROGATION CLAIMANTS MOTION REGARDING THE WILDFIRE SUBROGATION CLAIMANT PROOF OF CLAIM FORM HAVE BEEN OR WILL SOON BE RESOLVED

As stated above, the Debtors have been working with the Ad Hoc Subrogation Group to resolve their concerns regarding the Debtors' proposed Wildfire Subrogation Claimant Proof of Claim Form and proposed Bar Date procedures. As a result of those discussions, the Debtors expect to make certain revisions to the proposed Bar Date Order and proposed Wildfire Subrogation Claimant Proof of Claim Form to resolve the issues of the Ad Hoc Subrogation Group. The Debtors will shortly be filing a revised form of Bar Date Order and revised Wildfire Subrogation Claimant Proof of Claim Form that incorporate these changes. Accordingly, the Debtors believe the issues regarding the Subrogation Claimants Motion will be resolved prior to the hearing and any relief with respect to that motion will be unnecessary.

### IV. CONCLUSION

The Debtors have filed a Bar Date Motion designed to fairly and expeditiously advance the administration of these cases so that appropriate distributions can be made to claimants. In furtherance of this goal, the Debtors have worked constructively with the Ad Hoc Subrogation Group on a claim form and a Bar Date to move these cases forward to the plan process. In contrast, the TCC has proposed a delay in the Bar Date to next year, together with an unnecessary staged claims filing process that inevitably will result in unwarranted delay, to the detriment and prejudice of all parties in interest. The Court should not permit this scenario to unfold.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

WHEREFORE the Debtors request that the Court deny the Alternative POC Motions, approve the Bar Date Motion, and grant the Debtors such other and further relief as the Court may deem just and appropriate.

Dated: May 31, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ *Stephen Karotkin*
 Stephen Karotkin

*Attorneys for Debtors
and Debtors in Possession*