1  Robert A. Julian (SBN 99469)
   Cecily A. Dumas (SBN 111449)
2  BAKER & HOSTETLER LLP
   1160 Battery Street, Suite 100
3  San Francisco, CA 94111
   Telephone:    628.208.6434
4  Facsimile:    310.820.8859
   Email: rjulian@bakerlaw.com
5  Email: cdumas@bakerlaw.com

6  Eric E. Sagerman (SBN 155496)
   Lauren T. Attard (SBN 320898)
7  BAKER & HOSTETLER LLP
   11601 Wilshire Boulevard
8  Suite 1400
   Los Angeles, CA 90025
9  Telephone:    310.820.8800
   Facsimile:    310.820.8859
10 Email: esagerman@bakerlaw.com
   Email: lattard@bakerlaw.com

11
   *Counsel for Official Committee of Tort Claimants*
12
           **UNITED STATES BANKRUPTCY COURT**
13          **NORTHERN DISTRICT OF CALIFORNIA**
               **SAN FRANCISCO DIVISION**
14

Robert A. Julian (SBN 99469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>  **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                    **Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR ENTRY OF AN ORDER (I) ESTABLISHING A BAR DATE FOR FILING FIRE CLAIMS, (II) APPROVING THE FORM AND PROCEDURES FOR NOTICE OF THE BAR DATE FOR FIRE CLAIMS, AND (III) APPROVING SUPPLEMENTAL PROCEDURES FOR NOTICE OF THE BAR DATE TO FIRE CLAIMANTS**<br><br>Date:    June 11, 2019<br>Time:    9:30 a.m. (Pacific Time)<br>Place:   United States Bankruptcy Court<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102<br>Objection Deadline: June 10, 2019 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

I.  JURISDICTION ................................................................................................... 1

II.  BACKGROUND ................................................................................................. 1

III.  INTRODUCTION ............................................................................................... 2

IV.  THE TCC'S PROPOSED PROCEDURES FOR FIRE CLAIMS ................................... 3

    A.  The Fire Proof of Claim Form ................................................................. 3

    B.  Fire Claimant Bar Date ........................................................................... 3

    C.  Direct Notice Program ............................................................................ 4

    D.  Proposed Procedures for Filing Fire Proofs of Claim ............................... 4

V.  TCC'S PROPOSED NOTICE PROGRAM AND PROCEDURES .................................. 8

    A.  Direct Notice Program ............................................................................ 8

    B.  Supplemental Notice Program ................................................................ 10

    C.  Cost of TCC's Proposed Notice Program ............................................... 12

VI.  BASIS FOR RELIEF ......................................................................................... 13

    A.  The Court Should Approve the TCC's Bar Date and the Proposed Notice
        Program for Filing Proofs of Claim in the Chapter 11 Cases ..................... 13

    B.  The Proposed Notice Procedures Are Reasonable and Appropriate ............ 14

VII.  NOTICE ......................................................................................................... 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                               **Page(s)**

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .......................................................................................15

*Huntsinger v. The Shaw Group, Inc.*,
  268 Fed. Appx. 518 (9th Cir. Feb. 26, 2008) ..........................................15

*In re Mansaray-Ruffin*,
  530 F.3d 230 (3d Cir. 2008) ...........................................................................15

*In re Maya Const. Co.*,
  78 F.3d 1395 (9th Cir. 1996) ..........................................................................14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ............................................................................14, 15

*PacifiCorp and Van Cott Bagley Cornwall & McCarthy v. W.R. Grace*,
  No. 05-764, 2006 WL 2375371 (D. Del. Aug. 16, 2006) .......................15

*In re Reg'l Care Servs. Corp.*,
  No. 16-1213, 2017 WL 2871751 (B.A.P. 9th Cir. Jul. 5, 2017) ...................... 14-15

*Tulsa Prof'l Collection Servs., Inc. v. Pope*,
  485 U.S. 478 (1988) ..........................................................................................15

**Statutes**

11 U.S.C. § 341 ......................................................................................................13

28 U.S.C. § 157 ........................................................................................................1

28 U.S.C. § 1334 ......................................................................................................1

28 U.S.C. § 1408 ......................................................................................................1

28 U.S.C. § 1409 ......................................................................................................1

**Rules**

Fed. R. Bankr. P. 2002 ....................................................................................16, 18

Fed. R. Bankr. P. 3003 ......................................................................................7, 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Other Authorities**

B.L.R. 3003-1 ........................................................................................................................13

B.L.R. 5011-1 ..........................................................................................................................1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.     __JURISDICTION__

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California ("**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.     __BACKGROUND__

On January 29, 2019 (the "**Petition Date**"), PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**" or "**PG&E**") commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the United States Code ("**Bankruptcy Code**"). PG&E's chapter 11 filings were necessitated by a confluence of factors resulting from catastrophic fires that occurred in Northern California prior to the Petition Date, and PG&E's potential liabilities arising therefrom. *See* Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief (Dkt. No. 263), at 3.

On the Petition Date, PG&E filed an application (Dkt. No. 14) for the appointment of Prime Clerk LLC ("**Prime Clerk**") as claims and noticing agent. On February 1, 2019, the Court entered an order (Dkt. No. 245) authorizing Prime Clerk to (1) serve as the custodian of court records and the authorized repository for all proofs of claim filed in these Chapter 11 Cases; (2) perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in these Chapter 11 Cases; and (3) provide an electronic interface for filing proofs of claim.

On May 1, 2019, PG&E filed a motion to set the bar date for claims, approve the claim form, and approve notice procedures (Dkt. No. 1784) (the "**Bar Date Motion**").

On May 3, 2019, the TCC filed a motion to approve the TCC's model proof of claim form (Dkt. No. 1824) ("**TCC Proof of Claim Motion**") and a memorandum of points and authorities in support thereof (Dkt. No. 1825) (the "**TCC Proof of Claim Memorandum in Support**").[1]

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the TCC Proof of Claim Memorandum in Support.

Case: 19-30088   Doc# 2298   Filed: 05/31/19   Entered: 05/31/19 12:52:35   Page 5 of 22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Contemporaneously herewith, the TCC is filing an objection to PG&E's Bar Date Motion. The TCC's Motion requests that the Court enter an order approving a separate bar date for Fire Claims (the "**Fire Claim Bar Date**"), the TCC's notice of bar date to known and reasonably identifiable Fire Claimants (the "**Direct Notice Program**"), and the TCC's supplemental notice plan to unknown Fire Claimants (the "**Supplemental Notice Program**" and together with the Direct Notice Program, the "**Notice Program**"), as detailed below.

## III.    <u>INTRODUCTION</u>

For these Chapter 11 Cases to be successful, it is the critical that all Fire Claimants file proofs of claim.  The TCC has created a robust plan to ensure exactly that.  Contemporaneously with the filing of its Motion, the TCC is filing an application to retain the renowned noticing firm Angeion Group, LLC ("**Angeion**").

As set forth in the Declaration of Steven Weisbrot, the experts at Angeion have extensive experience in creating and administering claims and notice programs designed to maximize claimant reach and participation and have designed a notice plan to meet applicable legal requirements given the unique circumstances presented by these cases.  The Motion seeks authorization for Angeion (subject to the Court's approval of its retention application) to perform all necessary noticing and related services to effectuate the TCC's Notice Program.

The TCC's Notice Program utilizes a wide range of methods to reach potential claimants, including direct notice through mail and email, paid media in the form of television, radio, newspaper and magazine publication, billboards, and social media, as well as grassroots and experiential marketing.  Again, it is critical that a robust plan be implemented, as many victims of the 2018 Camp Fire are still homeless and suffering trauma.

If the TCC's Motion is granted, Angeion will replace Prime Clerk for purposes of implementing the TCC's Notice Program to Fire Claimants.  Prime Clerk will continue to maintain the claims registry and implement PG&E's notice plan for claimants other than Fire Claimants, but the Direct Notice Program and outreach to known Fire Claimants and the Supplemental Notice Program and outreach to unknown Fire Claimants would be handled by Angeion.

The TCC is also requesting that the Court set a separate bar date for Fire Claims.  The TCC,

2

in consultation with experts, believes that the Fire Claimants will need at least until early 2020 to file Fire Claims. Many of the Fire Claimants are still living in tents and trailers, focused on meeting basic survival needs. These Fire Claimants will need more time to file these critical Fire Claims.

As set forth in the TCC's objection to PG&E's Bar Date Motion, PG&E's proposed notice plan is constitutionally insufficient. PG&E does not plan to take steps to obtain updated address information beyond the forwarding information available from the U.S. Postal Service. PG&E proposes to spend a mere $1.5 million to $2 million on its supplemental notice program, as administered by Prime Clerk, to reach victims who will not receive direct notice – which includes those Fire Claimants whose homes and mailboxes have been incinerated. PG&E's minimalist approach is improper in the context of these cases and ignores the fact that many victims of the 2018 Camp Fire are still homeless and suffering trauma. The TCC cannot wait for PG&E to take appropriate actions. To advance these Chapter 11 Cases, the TCC comes before this Court and seeks approval of its Notice Program.

## IV.    THE TCC'S PROPOSED PROCEDURES FOR FIRE CLAIMS

### A.    The Fire Proof of Claim Form

As a preliminary matter, the TCC has already sought approval of its model Fire Proof of Claim Form (the "**Fire Proof of Claim Form**"), attached hereto as **Exhibit C**. The TCC's Fire Proof of Claim Form substantially conforms to Official Form 410. The modifications made by the TCC to the Official Form are intended to ensure that Fire Claimants provide information regarding the basis for their Fire Claims, the harm caused by the related fire, and the damages sought. The TCC's form is designed to meet applicable legal requirements so that each Fire Claim is entitled to prima facie validity, while also making it as easy as possible for unrepresented victims to file claims so they are not excluded. For the reasons already set forth in the TCC Proof of Claim Memorandum in Support, the TCC's Fire Proof of Claim Form should be approved.

### B.    Fire Claim Bar Date

The TCC anticipates that thousands of parties are likely to file claims in the Chapter 11 Cases arising from or relating to the Fires that PG&E is alleged to have caused. As a result, the TCC is requesting a Fire Claim Bar Date that will allow sufficient time for Fire Claimants to

3

1 understand the claim requirements and complete the Fire Proof of Claim Form.

2    To this end, the TCC consulted with Jeffrey Dion, the Executive Director of the National

3 Compassion Fund, a non-profit organization dedicated to the collection and distribution of

4 charitable donations to victims of mass casualty crimes. Mr. Dion has extensive experience in

5 developing notice and outreach programs to contact and inform dispersed and displaced victims of

6 mass disasters, including nearly a dozen mass shooting events around the country. Mr. Dion also

7 conducted an outreach and awareness campaign to educate victims of the September 11, 2001

8 terrorist attacks about their options to file a civil lawsuit against their airlines or a claim with the

9 federal government's September 11th Victim Compensation Program.

10    Although fires have important categorical differences from mass shootings or terrorist

11 attacks, they share common elements of trauma that have likely affected potential Fire Claimants

12 here. Many victims feared for their lives, fled impending danger, and were uncertain as to whether

13 they or their loved ones would make it out alive. Such experiences can cause deep, long-lasting

14 psychological trauma, and it is critical to recognize this fact when designing a compensation

15 program and selecting an appropriate claim-submission deadline. Based on this reality, the TCC

16 requests the Fire Claim Bar Date be set no earlier than January 31, 2020, which assumes the Court's

17 adoption of the TCC's Fire Proof of Claim Form and the TCC's Notice Program.

18    **C.    Direct Notice Program**

19    To facilitate the notice of the Fire Claim Bar Date, the TCC proposes to use a one-page **Fire**

20 **Claim Bar Date Notice** in the form attached to the Motion as **Exhibit A**. The Fire Claim Bar Date

21 Notice is a simplified one-page form designed to provide key information to Fire Claimants about

22 the bar date to Fire Claimants. The Fire Claim Bar Date Notice includes all of the most relevant

23 information, such as the bar date and the method for filing a Fire Proof of Claim, in a streamlined,

24 understandable way.

25    **D.    Proposed Procedures for Filing Fire Proofs of Claim**

26    The TCC proposes the following procedures for filing Fire Proofs of Claim by any person

27 or entity that is a Fire Claimant:

28    (a)    The Fire Claim Bar Date shall be **January 31, 2020 at 9:00 p.m.** (Pacific Time).

4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(b)     Fire Proof of Claim Forms must:

        (1)     be written in the English language;

        (2)     conform substantially to the Fire Proof of Claim Form or Official Form No. 410; and

        (3)     be signed by the Fire Claimant or, if the Fire Claimant is not an individual, by an authorized agent of the Fire Claimant.

(c)     All timely filed Fire Proof of Claim Forms will be deemed filed against both Debtors (without prejudice to the Debtors' right to assert that any such claim should be allowed only as to one of the Debtors).

(d)     All Fire Proof of Claim Forms must be filed either (i) electronically through Prime Clerk's website using the interface available on the Case Website under the link entitled "Submit a Claim" (the "**Electronic Filing System**") or (ii) by delivering the original Fire Proof of Claim Form by hand, or mailing the original Fire Proof of Claim Form so that is **received on or before the Fire Claim Bar Date** as follows:

If by first class mail:

        PG&E Corporation Claims Processing Center
        c/o Prime Clerk LLC
        Grand Central Station, PO Box 4850
        New York, NY 10163-4850

If by overnight courier:

        PG&E Corporation Claims Processing Center
        c/o Prime Clerk LLC
        850 Third Avenue, Suite 412
        Brooklyn, NY 11232

If by hand delivery:

        PG&E Corporation Claims Processing Center
        c/o Prime Clerk LLC
        850 Third Avenue, Suite 412
        Brooklyn, NY 11232

        -or-

        At one of the Debtors' Claim Service Centers located at the following PG&E locations:

5

|       | (i)   | 350 Salem Street, Chico, CA 95928; |
|-------|-------|-----|
|       | (ii)  | 231 "D" Street, Marysville, CA 95901; |
|       | (iii) | 1567 Huntoon Street, Oroville, CA 95965; |
|       | (iv)  | 3600 Meadow View Road, Redding, CA 96002; |
|       | (v)   | 111 Stony Circle, Santa Rosa, CA 95401; or |
|       | (vi)  | 1850 Soscol Ave. Ste 105, Napa, CA 94559. |

(e) A Fire Proof of Claim Form shall be deemed timely filed only if it is **actually received** by Prime Clerk (i) at the addresses listed above in subparagraph (d), or (ii) electronically through the Electronic Filing System on or before the Fire Claim Bar Date.

(f) Fire Proof of Claim Forms sent by facsimile, telecopy, or electronic mail transmission (other than Fire Proofs of Claim filed electronically through the Electronic Filing System) **will not** be accepted.

(g) In the event that the Debtors amend or supplement their Schedules subsequent to the date of entry of the order setting the Fire Claim Bar Date, the Debtors shall give notice of any amendment or supplement to the holders of claims or interests affected thereby, and such holders shall have until the later of (i) the Fire Claim Bar Date or (ii) thirty (30) days from the date of such notice to file a Fire Proof of Claim or be barred from doing so and shall be given notice of such deadline.

(h) The following persons or entities are **not** required to file a Fire Proof of Claim solely with respect to the claims described below:

 (i) any person or entity that is not a Fire Claimant;

 (ii) any Fire Claimant who has already filed a Fire Proof of Claim against any of the Debtors with respect to the claim being asserted, utilizing a claim form that substantially conforms to the Fire Proof of Claim Form or Official Form No. 410; provided, however, that any Fire Claimant who holds or asserts a claim other than a Fire Claim must file a general proof of claim prior to the general claims bar date set in the Chapter 11 Cases;

 (iii) any Fire Claimant whose claim has been paid in full;

6

| | (i) | 350 Salem Street, Chico, CA 95928; |
|---|---|---|
| | (ii) | 231 "D" Street, Marysville, CA 95901; |
| | (iii) | 1567 Huntoon Street, Oroville, CA 95965; |
| | (iv) | 3600 Meadow View Road, Redding, CA 96002; |
| | (v) | 111 Stony Circle, Santa Rosa, CA 95401; or |
| | (vi) | 1850 Soscol Ave. Ste 105, Napa, CA 94559. |

(e) A Fire Proof of Claim Form shall be deemed timely filed only if it is **actually received** by Prime Clerk (i) at the addresses listed above in subparagraph (d), or (ii) electronically through the Electronic Filing System on or before the Fire Claim Bar Date.

(f) Fire Proof of Claim Forms sent by facsimile, telecopy, or electronic mail transmission (other than Fire Proofs of Claim filed electronically through the Electronic Filing System) **will not** be accepted.

(g) In the event that the Debtors amend or supplement their Schedules subsequent to the date of entry of the order setting the Fire Claim Bar Date, the Debtors shall give notice of any amendment or supplement to the holders of claims or interests affected thereby, and such holders shall have until the later of (i) the Fire Claim Bar Date or (ii) thirty (30) days from the date of such notice to file a Fire Proof of Claim or be barred from doing so and shall be given notice of such deadline.

(h) The following persons or entities are **not** required to file a Fire Proof of Claim solely with respect to the claims described below:

    (i) any person or entity that is not a Fire Claimant;

    (ii) any Fire Claimant who has already filed a Fire Proof of Claim against any of the Debtors with respect to the claim being asserted, utilizing a claim form that substantially conforms to the Fire Proof of Claim Form or Official Form No. 410; provided, however, that any Fire Claimant who holds or asserts a claim other than a Fire Claim must file a general proof of claim prior to the general claims bar date set in the Chapter 11 Cases;

    (iii) any Fire Claimant whose claim has been paid in full;

6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| | (i) | 350 Salem Street, Chico, CA 95928; |
|---|---|---|
| | (ii) | 231 "D" Street, Marysville, CA 95901; |
| | (iii) | 1567 Huntoon Street, Oroville, CA 95965; |
| | (iv) | 3600 Meadow View Road, Redding, CA 96002; |
| | (v) | 111 Stony Circle, Santa Rosa, CA 95401; or |
| | (vi) | 1850 Soscol Ave. Ste 105, Napa, CA 94559. |

(e) A Fire Proof of Claim Form shall be deemed timely filed only if it is **actually received** by Prime Clerk (i) at the addresses listed above in subparagraph (d), or (ii) electronically through the Electronic Filing System on or before the Fire Claim Bar Date.

(f) Fire Proof of Claim Forms sent by facsimile, telecopy, or electronic mail transmission (other than Fire Proofs of Claim filed electronically through the Electronic Filing System) **will not** be accepted.

(g) In the event that the Debtors amend or supplement their Schedules subsequent to the date of entry of the order setting the Fire Claim Bar Date, the Debtors shall give notice of any amendment or supplement to the holders of claims or interests affected thereby, and such holders shall have until the later of (i) the Fire Claim Bar Date or (ii) thirty (30) days from the date of such notice to file a Fire Proof of Claim or be barred from doing so and shall be given notice of such deadline.

(h) The following persons or entities are **not** required to file a Fire Proof of Claim solely with respect to the claims described below:

    (i) any person or entity that is not a Fire Claimant;

    (ii) any Fire Claimant who has already filed a Fire Proof of Claim against any of the Debtors with respect to the claim being asserted, utilizing a claim form that substantially conforms to the Fire Proof of Claim Form or Official Form No. 410; provided, however, that any Fire Claimant who holds or asserts a claim other than a Fire Claim must file a general proof of claim prior to the general claims bar date set in the Chapter 11 Cases;

    (iii) any Fire Claimant whose claim has been paid in full;

6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(iv)   any Fire Claimant who holds a claim that heretofore has been allowed
by Order of the Court entered on or before any applicable bar date set for
Fire Claims in the Chapter 11 Cases; and

(v)    any Fire Claimant whose claim is listed on the Schedules; provided that
(A) the claim is **not** listed on the Schedules as "disputed," "contingent,"
or "unliquidated," (B) the Fire Claimant does not dispute the amount,
nature, and priority of the claim as set forth in the Schedules, and (C) the
Fire Claimant does not dispute that the claim is an obligation of the
specific Debtor against which the claim is listed in the Schedules.

(i)    Pursuant to Bankruptcy Rule 3003(c)(2), all holders of Fire Claims, including Fire
Claimants, that fail to comply with the Court's Order by timely filing a Proof of
Claim in the appropriate form shall (a) be forever barred, estopped and enjoined
from asserting such claims against the Debtors, their property, or their estates (or
submitting a Fire Proof of Claim with respect thereto) and (b) not be treated as a
creditor with respect to such claim for the purposes of voting and distribution with
respect to any Chapter 11 plan or plans of reorganization that may be filed in these
Chapter 11 Cases.  Notwithstanding the foregoing, late filings shall be permitted
where the failure to act was the result of "excusable neglect" under the standard set
forth in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*,
507 U.S. 380 (1993) or as otherwise permitted by the Court.

(j)    No party, including the Debtors, may object in whole or in part to any Fire Claim
prior to the Fire Claim Bar Date.

(k)    Within five (5) days of entry of an order granting the Motion, the Debtors, Prime
Clerk, and the TCC shall post the Fire Claim Bar Date Notice and Fire Proof of
Claim Form on their websites, and the UCC shall include a link to both the TCC and
Prime Clerk websites.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

**V.    TCC's PROPOSED NOTICE PROGRAM AND PROCEDURES**

Not only are there tens of thousands of Fire Claimants, but many have been displaced by the fires. Many have left California. Others are still living in temporary housing. Providing notice of the claims bar date for Fire Claimants will not be as simple as sending a notice to the last known address, particularly in instances where one of the Fires incinerated the Fire Claimant's house and mailbox, or where the Fire Claimant has been displaced. The TCC's Notice Program is robust, will ensure that updated contact information is obtained for displaced victims where possible, and will ensure that a first-class media campaign is implemented to reach unknown Fire Claimants.

The Notice Program is based on objective data customarily used by advertising professionals and is designed to reach the greatest practicable number of Fire Claimants. Notice will be effectuated directly where possible, and via the use of a sophisticated, integrated, multimedia campaign, where no direct contact information exists or can be reasonably ascertained.

Specifically, the Notice Program utilizes a combination of direct notice via U.S. mail and email (where both are available or can be derived from third-party data sources), coupled with robust paid and earned media campaigns. The integrated paid media campaign utilizes state-of-the-art targeted internet banner advertisements, custom social media campaigns, a bespoke broadcast radio/television campaign, a network of digital and static billboards, a combination of local, regional, and national print publications, and a nationwide, yet geographically tailored, public relations campaign. Further, the Notice Program utilizes an earned media campaign designed to take advantage of the substantial news coverage the events have already garnered and to continue to drive media to cover the story at a local, regional and national level. Moreover, the TCC through its program will engage in a grassroots word-of-mouth campaign and experiential marketing.

An overview of the TCC's proposed Notice Program is provided below.

**A.    Direct Notice Program**

The TCC's Notice Program contemplates a robust Direct Notice Program, which incorporates sophisticated third-party data sources, known best practices, and advanced search techniques. The facts and circumstances of the Chapter 11 Cases demand that PG&E, in consultation with the TCC, undertake additional efforts to locate Fire Claimants, and obtain current

8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

addresses for the same. In order to comport with Due Process, within fourteen (14) days following entry of the Order, PG&E shall provide Angeion with information sufficient to allow it to compile a Fire Claimant mailing list that will be designed to be as fulsome and over-inclusive as possible. Broadly, the categories of information that will ultimately provide name, address, and other pertinent contact information necessary to comprise this Fire Claimant list can be summarized as follows:

a. Prepetition Litigation Records. The list will include all fire victims that filed prepetition suits. This includes the data gathered during the North Bay Fires litigation, which is stored in a centralized database run by BrownGreer PLC. Angeion, working with the TCC, will also locate previously filed complaints and obtain attorney contact information for the lawyers representing the plaintiffs, including the use of litigations service lists.

b. PG&E Customer Data. Nearly all of the victims were PG&E customers and, thus, PG&E maintained current contact information up to and including the dates of the fires. The physical addresses in this database could, in some cases, be outdated, since many of the customer addresses would be for homes that were destroyed by the fires. Nevertheless, PG&E customers may have updated their records with PG&E, and even if they did not, Angeion, working with both the United States Postal Service ("**USPS**") and reputable third-party data aggregation companies, can determine a significant number of current addresses for some of these individuals.

c. Geographic Information Systems Data. PG&E has represented in its Bar Date Motion, at 22, that it has some "proprietary data maintained by Geographical Information Systems ("**GIS**") satellite experts retained by Debtors in connection with the prepetition litigation."

d. Disaster Relief and Community Organizations. Several disaster relief organizations, including but not limited to the Red Cross, FEMA and myriad local agencies, have provided support to fire victims. The TCC believes it will be successful in garnering additional contact information through those organizations which can be utilized as part of the direct notice efforts.

e. Records Garnered Pursuant to Subpoena. In other court-approved notice programs that Angeion has implemented, the court has authorized the use of third-party subpoenas to help identify and contact absentee audiences. In particular, as it relates to this case, the TCC could use subpoenas to procure information from insurance carriers, governmental organizations, and/or private repair/remediation companies to gather additional address information for Fire Claimants.

f. First-Party Intelligence. Public records, third-party data sources, and community resources will be identified, culled and thoroughly searched to identify as many owners of destroyed properties as possible. Angeion will then use other sources of data to ascertain current mailing addresses, particularly in circumstances where properties were completely destroyed and notice can no longer be sent to former addresses.

g. TCC Website. Angeion has been advised that the TCC is designing a dedicated website that will act as a hub of communication between the TCC and the fire

9

Case: 19-30088    Doc# 2298    Filed: 05/31/19    Entered: 05/31/19 12:52:35    Page 13 of 22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

victims. Among other functions, the website will allow those affected by the fires to enter their own contact information as well as contact information for displaced friends and family members.

h.  <u>Emergency Fund</u>.  Debtors shall cause Angeion to receive a list with contact information for all Fire Claimants who file applications for assistance from the Emergency Fund approved by this Court on May 24, 2019.  *See* Dkt. No. 2223.

Specifically, Angeion will cause the Fire Bar Date Notice and Fire Proof of Claim Form (collectively, the "**Fire Claimant Notice Materials**") to be mailed via USPS first-class mail, postage prepaid.  Prior to mailing, the mailing list will be processed via the USPS National Change of Address database to identify updated address information for individuals and businesses who have moved in the last four years and who filed a change of address card with the USPS.

Similarly, in an effort to deliver notices to the intended recipients, the Notice Program provides for the following:  (1) notices that are returned as undeliverable by the USPS and have a forwarding address will be re-mailed to that forwarding address; and (2) notices that are returned as undeliverable by the USPS without a forwarding address will be subject to address verification searches ("**skip tracing**"), utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, and so on, to locate updated addresses. Notices will then be re-mailed to updated addresses located through skip tracing.

The direct mail effort will be supplemented by sending notice to all Fire Claimants who have an email address or for whom an email address can be garnered via PG&E's customer records and sophisticated third-party data aggregation services described *infra*.  It is important to note that the email effort will be in addition to, not in lieu of, the mailed notice efforts described herein.

**B.      Supplemental Notice Program**

To supplement the comprehensive Direct Notice Program and effectuate notice to the Fire Claimants, the Supplemental Notice Program contemplates a robust paid campaign that utilizes multiple forms of media—*e.g.*, television, radio, magazines, newspapers, and social media—to enable PG&E to identify additional known Fire Claimants and to give constructive notice to unknown claimants.

The Supplemental Notice Program is summarized below and described in more detail in the Weisbrot Declaration.

10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

a.  Video:  Both traditional broadcast television and internet/streaming opportunities are high-reach media tactics that provide exposure to affected people regardless of where they reside (*i.e.*, rural areas, urban areas, etc.).  Thirty-second units will appear on local broadcast and cable television as appropriate in the 4 core designated market areas (San Francisco, Sacramento, Chico-Redding, and Eureka).

b.  Audio:  Both terrestrial and streaming radio are high-frequency mediums, ideally suited for providing exposure to affected Fire Claimants where they reside (*i.e.*, rural areas, urban areas, etc.).  The Supplemental Notice Program contemplates 60-second units over a 21 week schedule on selected radio stations in the Northern California markets.  There are a total of 6 radio metro survey areas in the Northern California area:  Chico, Redding, San Francisco, Sacramento, Stockton, and Modesto.  There are an additional 3 counties that are not measured in radio metros and will be included in the consideration set.  Those counties are Lake, Mendocino, and Humboldt.

c.  Programmatic Display and Video:  Angeion utilizes advanced targeting, machine learning, and a known and verifiable target audience profile, to ensure that members of the target audience are reached online.  Through this "programmatic" approach, Angeion's focus will be on effectively reaching the prototypical Fire Claimant, rather than whitelisting specific websites.  Purchasing display and video inventory programmatically provides the highest reach, allows for multiple targeting layers, and offers the most cost-efficient rates.  The campaign will run across all devices including desktop, mobile, tablet, and other connected devices to ensure maximum reach.  Further, the display campaign will include targeting around key word lists and IP addresses.  Utilizing these types of lists, the program will target residents in Lake, Sonoma, Napa, Mendocino, Nevada, Butte, and Humboldt counties based on their IP addresses.  In addition to residents, similar lists will be utilized to target employees or business owners in those areas.

d.  Magazines:  Two print publications will be utilized to cover the western region of the United States: *People* and *Sports Illustrated*.  These were chosen due to their reach against Adults 18+ and the balanced demographic readership that the publications provide when used together.  In order to maximize efficiencies, the publication notice will be geo-targeted to the following states: California, Nevada, Oregon, and Washington.  Over the course of the 7-month campaign timeframe, each publication will have 4 regional insertions.

e.  Newspapers:  The Supplemental Notice Program includes newspapers targeted to two different geographic regions.  A collection of 14 local newspapers targeted to the 4 key designated market areas (San Francisco, Sacramento, Chico-Redding, and Eureka) were chosen to provide a campaign-long print presence in this key market.  Each publication will have 14 full-page insertions spread out over the 7 months.  These will be included in the weekday publications of each paper.  In addition to the local publications, newspapers covering the remainder of the state were all selected given the intense displacement of the affected parties.  These include the *LA Times*, the *Wall Street Journal* (Northern CA & Southern CA Editions), and *USA Today* (Los Angeles and San Francisco Editions).  Each of these publications will include 7 full-page insertions over the course of the 7-month campaign and will be in the weekday issues.

f.  Social Media:  The Supplemental Notice Program also contemplates a robust multi-pronged approach to using social media to seed and disburse news of the bar date to the Fire Claimants.  The paid social media component will include Facebook, Instagram, and Twitter.

11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

g.  Out-of-Home:  The Supplemental Notice Program will include "out-of-home" or outdoor advertising in both the Northern California area and the entire state of California.  Out-of-home is a very strong awareness tactic and efficiently drives significant reach.  To focus in on the primary geography, a large portion of the out-of-home advertising will be placed in the 4 designated market areas mentioned previously.  Out-of-home will include a mix of digital and static units to maximize overall reach and efficiencies.  This includes 54 digital units and 18 static units in the Northern California area for the first 3 months of the campaign.  In addition to the local focus, there will be support in both Los Angeles and San Diego.  In Los Angeles, 10 digital units are recommended to reach potential claimants.  In San Diego, 29 digital transit shelters and 10 digital billboards are recommended to reach potential claimants.

h.  Earned Media:  A critical component of the Supplemental Notice Program is a sustained media presence via earned media; this is effectuated using two unified public relations partners—one on the east coast and one in the Bay Area.  The fires have proved to be the ultimate public interest story and have been covered by local, national and international press.  The public relations portion of the campaign is designed to guarantee a continued lifecycle in the press concerning the importance and timeliness of the Fire Claim Bar Date.  Using direct media outreach, press conferences, regular news releases, content development and official spokespeople, Angeion will generate substantial earned media.  This includes personally contacting the media and leveraging standing relationships to open conversations and ultimately secure media coverage of the bar date.  A list of target media outlets is attached as Exhibit D to the Weisbrot Declaration.

i.  Grassroots Outreach and Experiential Marketing:  The Supplemental Notice Program will include both grassroots outreach and experiential marketing.  It will utilize professional experiential marketers to hand-distribute notice forms for a total of 35 days across the 7 counties affected by the fires.  The team will distribute flyers both to individuals and institutions that make sense in the various communities, including leaving flyers at high-traffic locations such as community centers, restaurants, and houses of worship.  The Supplemental Notice Program also includes direct outreach to any remaining community centers and meeting places, notice through churches, social service agencies, support groups, online forums and other trusted community resources.

**C.    Cost of TCC's Proposed Notice Program**

The TCC is not proposing to spend more, but to spend funds in the right way.  Of the $22 million budgeted by PG&E for noticing, the TCC proposes to spend a total of $21.8 million, of which $12.8 is allocated to the Supplemental Notice Program.  Prime Clerk estimates the cost of mailing bar date notices to be $18 million to $20 million.  Bar Date Motion at 11.  Angeion Group estimates that it can effectuate the same mailing for approximately $8 million to $9 million.

By adopting the TCC's Notice Program, the cost of mailings could be substantially reduced by approximately $9 million to $11 million, and the savings could be used to fund the Supplemental Notice Program without meaningfully increasing (and perhaps even decreasing) the overall cost of

12

the Notice Program. This would allow a substantially stronger and more effective Notice Program at a virtually identical price point.

## VI. BASIS FOR RELIEF

### A. The Court Should Approve the TCC's Bar Date and the Proposed Notice Program for Filing Proofs of Claim in the Chapter 11 Cases

Bankruptcy Rule 3003(c)(3) provides that the Court shall fix the time within which proofs of claim are filed. Local Bankruptcy Rule 3003-1 provides that unless otherwise ordered by the Court, proofs of claim in Chapter 11 cases shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to 11 U.S.C. § 341(a). B.L.R. 3003-1. Bankruptcy Rule 3003(c)(2) provides that any creditor whose claim (a) is not scheduled in PG&E's schedules of assets and liabilities and statements of financial affairs or (b) is scheduled as disputed, contingent, or unliquidated must file a proof of claim by the bar date fixed by the Court. Bankruptcy Rule 3003(c)(2) further provides that "any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr. P. 3003(c)(2).

Here, PG&E scheduled thousands of Fire Claims in the Chapter 11 Cases in an "undetermined" amount as "disputed," "contingent," and "unliquidated," thus necessitating the need for virtually all, if not all, Fire Claimants to file proofs of claim in the Chapter 11 Cases. *See* Dkt. No. 906 at Schedule E/F. In addition, actual notice of any bar date set in the Chapter 11 Cases must be sent to all known creditors, including all known or reasonably identifiable Fire Claimants. The importance of this cannot be understated. This task will require not only considerable effort but also a level of cooperation between various parties in interest. Approving the TCC's Notice Program will allow PG&E to gain visibility into the total Fire Claims against the estates and will create a process that is both efficient and less burdensome on Fire Claimants.

The Notice Program described herein provides Fire Claimants with ample notice and opportunity and a clear process for filing Fire Proofs of Claim and achieving administrative and judicial efficiency. Indeed, the TCC's Notice Program will provide comprehensive notice and clear instructions to Fire Claimants, on the one hand, and allow the Chapter 11 Cases to move forward

13

quickly with a minimum of administrative expense and delay, on the other hand.

The TCC's Notice Program provides clear instructions that will help avoid confusion or uncertainty among Fire Claimants that might lead them to file unnecessary protective proofs of claim or multiple proofs of claim that would cause expense and delay in the claims process for all parties. The TCC's Notice Program is also designed to comply with the Bankruptcy Code while providing flexibility if supplemental information on the Fire Claims is required.

**B.      The Proposed Notice Procedures Are Reasonable and Appropriate**

The TCC's Notice Program provides for mailing the Fire Claimant Notice Materials to Fire Claimants who are known to PG&E, or whose identity can be reasonably ascertained. The Notice Program thus relies on publication and supplemental notice for unknown or unascertainable Fire Claimants. This procedure is consistent with applicable case law and practice in this District. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950).

Due process requires that known creditors receive actual written notice of a debtor's bankruptcy filing and claims bar date. *See In re Maya Const. Co.*, 78 F.3d 1395, 1399 (9th Cir. 1996) (due process requires formal notice to known contingent creditors); *In re Reg'l Care Servs. Corp.*, No. 16-1213, 2017 WL 2871751, at *6 (B.A.P. 9th Cir. Jul. 5, 2017) ("It is a fundamental principle of due process that known creditors of a debtor are entitled to actual notice of a claims bar date before their claims can be extinguished") (citation omitted).

A known creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988). Customers with whom a debtor has a direct relationship are generally considered known creditors. *See PacifiCorp and Van Cott Bagley Cornwall & McCarthy v. W.R. Grace*, No. 05-764, 2006 WL 2375371, at *4 (D. Del. Aug. 16, 2006). For unknown creditors, constructive notice by publication typically satisfies the requirements of due process. *See Huntsinger v. The Shaw Group, Inc.*, 268 Fed. Appx. 518, 521 (9th Cir. Feb. 26, 2008) (notice by publication proper for unknown creditor's claims) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)).

When actual or constructive notice is required, a "process which is a mere gesture is not due process." *Mullane*, 339 U.S. at 315. "[N]otice must be reasonably calculated, under all the

14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974). The level of notice due to a party is "highly dependent on the context;" thus, a "process that may be constitutionally sufficient in one setting may be insufficient in another." *In re Mansaray-Ruffin*, 530 F.3d 230, 239 (3d Cir. 2008).

The unique context of these Chapter 11 Cases is that PG&E's tortious conduct creates noticing problems. Fire Claimants that are PG&E's current or former customers, or those located within the region where PG&E supplied power and PG&E can determine their identities from a diligent investigation of its records and other sources, such as third-party subpoenas, are known creditors. This information can and should be provided to Angeion. Notice, however, cannot be delivered to a house that was destroyed. The mailbox is gone. Families were displaced. These problems apply especially to those Fire Claimants impacted by the 2018 Camp Fire. While the identity of some of the Fire Claimants may be known or can be determined, actions must be taken here to locate known creditors and identify their current address or contact information. Many Fire Claimants are suffering from trauma. A constitutionally sufficient notice program must take this into account.

The TCC's Notice Program addresses the unique context of these Chapter 11 Cases. The TCC's Notice Program includes the use of GIS database records, third-party subpoenas to entities such as insurers, and record searches to identify contact information for all known Fire Claimants. *See* Weisbrot Decl. at 67.

For those Fire Claimants who are unknown and whose identity is not reasonably ascertainable, the TCC proposes to use multiple forms of media—*e.g.*, television, radio, magazines, newspapers, and social media. The TCC's program achieves a much higher frequency than PG&E's program. The TCC's paid media plan is designed to ensure that 95% of adults in Northern California receive notice approximately 51.95 times. *Id.* at 83. The TCC's proposed television advertising alone is estimated to reach over 74% of adults in Northern California market with an estimated frequency of 10 times each. *Id.* at 80.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      The TCC further submits that the relief requested herein provides for clear notice of the Fire

2  Claim Bar Date in satisfaction of the requirements of the Bankruptcy Rules and consistent with the

3  underlying policies of the Bankruptcy Code.  Specifically, to the extent the Fire Claim Bar Date is

4  established, as proposed, as 9:00 p.m. (Pacific Time) on January 31, 2020, the TCC, through its

5  noticing agent, Angeion, intends to:  (a) cause the Fire Claimant Notice Materials to be mailed by

6  by a date that is at least 120 days before the Fire Claim Bar Date; (b) cause the Publication Notice

7  to be published by a date that is at least 120 days before the Fire Claim Bar Date; and (c) run a

8  seven-month media campaign that is strategically timed to maximize participation by unknown Fire

9  Claimants.

10      Within five (5) days after entry of an order granting this Motion, PG&E and the TCC shall

11  post the Fire Claimant Notice Materials on their respective websites, as well as the websites

12  established by Prime Clerk for PG&E's Chapter 11 Cases.

13      Under the Notice Program, the Fire Claimant Notice Materials shall be served as soon as

14  practicable after entry of the Order, but at least one hundred twenty (120) days prior to any Fire

15  Claim Bar Date established by the Court.  The TCC submits that the Fire Claim Bar Date Notice

16  will provide Fire Claimants with sufficient information to file properly prepared and executed Fire

17  Proof of Claim Forms in a timely manner.  This time period is longer than the twenty-one (21)

18  days' notice required under Bankruptcy Rule 2002(a)(7) and is intended to provide Fire Claimants

19  with additional time to file Fire Proofs of Claim.  Accordingly, the TCC respectfully submits that

20  the Fire Claim Bar Date, and the form and manner of providing notice thereof, are appropriate in

21  light of the circumstances, inure to the benefit of all parties in interest and should be approved.

22  **VII.**   **NOTICE**

23      Notice of the Motion will be provided to (i) the Debtors, c/o PG&E Corporation and Pacific

24  Gas and Electric Company, PO Box 770000, 77 Beale Street, San Francisco, CA 94105 (Attn: Janet

25  Loduca, Esq.); (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153

26  (Attn: Stephen Karotkin, Esq., Jessica Liou, Esq., and Matthew Goren, Esq.), proposed attorneys

27  for the Debtors; (iii) Keller & Benvenutti LLP, 650 California Street, Suite 1900, San Francisco,

28  CA 94108 (Attn: Tobias Keller, Esq. and Jane Kim, Esq.), attorneys for the Debtors; (iv) Stroock

& Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038-4982 (Attn: Kristopher M. Hansen, Esq., Erez E. Gilad, Esq., and Matthew G. Garofalo, Esq.) and 2029 Century Park East, Los Angeles, CA 90067-3086 (Attn: Frank A. Merola, Esq.), as counsel for the administrative agent under the Debtors' debtor-in-possession financing facility; (v) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Eli J. Vonnegut, Esq., David Schiff, Esq., and Timothy Graulich, Esq.), as counsel for the collateral agent under the Debtors' debtor-in-possession financing facility; (vi) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 (Attn: Alan W. Kornberg, Esq., Brian S. Hermann, Esq., Walter R. Rieman, Esq., Sean A. Mitchell, Esq., and Neal P. Donnelly, Esq.), as counsel to the California Public Utilities Commission; (vii) the Office of the United States Trustee for Region 17, 450 Golden Gate Avenue, 5th Floor, Suite #05-0153, San Francisco, CA 94102 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (viii) the U.S. Nuclear Regulatory Commission, Washington, DC 20555-0001 (Attn: General Counsel); (ix) the U.S. Department of Justice, 1100 L Street, NW, Room 7106, Washington DC 20005 (Attn: Danielle A. Pham, Esq.,) as counsel for the United States on behalf of the Federal Energy Regulatory Commission; (x) Milbank LLP, 55 Hudson Yards, New York, NY 10001-2163 (Attn: Dennis F. Dunne, Esq. and Sam A. Khalil, Esq.) and 2029 Century Park East, 33rd Floor, Los Angeles, CA 90067 (Attn: Paul S. Aronzon, Esq., Gregory A. Bray, Esq., and Thomas R. Kreller, Esq.), as counsel for the Official Committee of Unsecured Creditors; and (xi) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The TCC respectfully submits that no further notice is required.

No previous request for the relief sought herein has been made by the TCC to this or any other court.

**WHEREFORE**, the TCC respectfully requests entry of an order (i) setting a Fire Claim Bar Date for no earlier than January 31, 2020, (ii) approving the TCC's Fire Claim Bar Date Notice, and (iii) implementing the TCC's Notice Program, including its Supplemental Notice Program and the appointment of Angeion as the noticing agent.

17

Dated: May 31, 2019

Respectfully submitted,

BAKER & HOSTETLER LLP

By:   /s/  Eric Goodman

*Counsel for The Official Committee of Tort Claimants*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18