**EXHIBIT 8**

**DION DECLARATION**

Robert A. Julian (SBN 99469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone: 628.208.6434
Facsimile: 310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.442.8875
Facsimile: 310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION** <br><br> -and- <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> **Debtors**, <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ■ Affects both Debtors <br><br> *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter Number: 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **DECLARATION OF JEFFREY R. DION IN SUPPORT OF OBJECTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO MOTION OF THE DEBTORS FOR ORDER (I) ESTABLISHING DEADLINE FOR FILING PROOFS OF CLAIM, (II) ESTABLISHING THE FORM AND MANNER OF NOTICE THEREOF, AND (III) APPROVING PROCEDURES FOR PROVIDING NOTICE OF BAR DATE AND OTHER INFORMATION TO ALL CREDITORS AND POTENTIAL CREDITORS (DKT. NO. 1784)** <br><br> Date: June 11, 2019 <br> Time: 9:30 a.m. (Pacific Time) <br> Place: United States Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 <br> Objection Deadline: May 28, 2019 |

JEFFREY R. DION declares as follows under penalty of perjury:

1. I am an attorney in good standing admitted to practice in the Commonwealth of Virginia, the United States District Court for the Eastern District of Virginia, the United States Court of Appeals for the Fourth Circuit, and the United States Supreme Court. I currently serve as Executive Director of the National Compassion Fund, a nonprofit organization dedicated to the collection and distribution of charitable donations to victims of mass casualty crimes.

2. I have personal knowledge of the facts stated herein except as to matters where I indicate otherwise, and as to those matters, I believe them to be true. If called upon to testify, I could and would competently do so. I make this declaration in support of the Objection of the Official Committee of Tort Claimants (the "**TCC**") to the Motion of the Debtors for an Order (i) Establishing Deadline for Filing Proofs of Claim, (ii) Establishing the Form and Manner of Notice Thereof, and (iii) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors (Dkt. No. 1784) (the "**Motion**"). The TCC's Objection is filed concurrently herewith.

3. I have reviewed PG&E's Motion proposing a bar date of September 16, 2019 for all Wildfire Claims, as well as the declarations submitted in support of the Motion. I have also reviewed the Motion of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R. Bankr. P. 3001(a) for Entry of an Order Approving Proposed Model Proof of Claim Form for Fire Claims and Related Procedures (Dkt. No. 1824) (the "**TCC's Model Proof of Claim and Procedures**").

4. The TCC sought my insight and opinions as to how to best implement an effective, efficient notice program with the objective of reaching as many Fire Claimants as possible to inform them of the bar date, the process for filing a proof of claim, and their rights in the Chapter 11 Cases.

5. I have extensive experience in developing notice and outreach programs to contact and inform dispersed and displaced victims of mass disasters. This includes administration of relief funds for: (1) victims of nearly a dozen mass shooting events around the country; (2) the August 2017 car attack in Charlottesville, VA, following the "Unite the Right" rally; and

(3) conducting an outreach and awareness campaign to educate victims of the September 11, 2001 terrorist attacks about their options to filing a civil lawsuit against their airlines or a claim with the federal government's September 11th Victim Compensation Program. The September 11, 2001 campaign consisted of dozens of forums throughout the United States and Canada, and directly served over 1,500 victims. My work on notice procedures, campaigns, and other outreach programs has involved mass disasters impacting more than 5,000 victims.

6. Each of these relief or compensation funds involved a deadline by which victims were required to submit an application for benefits. For example, in the case of the September 11th Fund, potential claimants had 27 months following the attacks to submit a claim to the program. Determining the appropriate claim submission deadline in a mass trauma context requires consideration of various factors, including the number of potential claimants, known identities and contact information for claimants, and the psychological trauma experienced by the class of applicants.

7. Although fires have important categorical differences from mass shootings or terrorist attacks, they share common elements of trauma that have likely affected potential Fire Claimants here. Based on my understanding of the facts of this case, including media coverage of some of the harrowing accounts of individuals affected by the fires, I recognize many of the same traumatic experiences that occur in other mass casualty events: individuals fearful for their lives, fleeing from impending danger, uncertain whether they or their loved ones will make it out alive. These experiences can cause deep, long-lasting psychological trauma, and it is critical to recognize that fact when designing a compensation program and selecting an appropriate claim submission deadline.

8. Based on my experiences described above (¶ 6), a person who experiences or witnesses a terrifying event may exhibit signs of traumatic stress which can be associated with impaired cognitive and memory functions of the brain. Consequently, individuals who survive a traumatic event where they were exposed to an imminent risk of death often have difficulty executing administrative functions. In my experience, traumatized individuals have significant

difficulty executing even basic administrative tasks, such as completing an application or remembering deadlines.

9. In working with victims, I have observed that these effects can last for months or years after a traumatic event. I am aware from news coverage that many individuals affected by the fires at issue in this case continue to suffer from trauma-related mental health effects. For example, I am aware of the efforts of the Wildfire Mental Health Collaborative to provide support to individuals struggling with mental health issues following the 2017 North Bay Fires.[1]

10. I believe that the bar date proposed in PG&E's Motion of September 16, 2019 is unrealistic in that it is will set too short a time period to provide effective notice to Fire Claimants.

11. Given the logistical hurdles to reach potential Fire Claimants—many of whom I understand to have been displaced or relocated following the loss of their homes, and many who are likely still suffering the effects of psychological trauma—a longer effort is required to sufficiently communicate the information to this population and to allow them time to complete and submit the necessary claim forms.

12. Based on the circumstances and given the notice plan set forth in the Declaration of Steven Weisbrot, I recommend a bar date of January 31, 2020. This bar date assumes that the Court adopts the TCC's Model Proof of Claim and Procedures, as well as the TCC's notice plan described in the Declaration of Steven Weisbrot.

13. Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: May 31, 2019

By: *Jeffrey R. Dion*
Name: Jeffrey R. Dion
Title: Executive Director, National Compassion Fund

---

[1] *See* Matt Simon, WIRED, *What One Devastated Community Can Teach The World About Mental Health* (Oct. 8, 2018), https://www.wired.com/story/wildfires-mental-health/; Martin Espinoza, Press Democrat, *Psychological Scars from October Wildfires Cut Deep in Sonoma County* (July 28, 2018), available at: https://www.pressdemocrat.com/news/8511629-181/psychological-scars-from-october-wildfires.