Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING DEBTORS' BAR DATE MOTION AND THE COMPETING PROOF OF CLAIM FORMS PROPOSED BY THE OFFICIAL COMMITTEE OF TORT CLAIMANTS AND THE AD HOC GROUP OF SUBROGATION CLAIM HOLDERS**<br><br>Date: June 11, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re: Docket Nos. 1784, 1824, 2044 |

1. By several motions and objections, each of the Debtors, the Official Committee of Tort Claimants (the "TCC") and the Ad Hoc Group of Subrogation Claim Holders (the "Subrogation Group") has proposed its own proof of claim ("POC") forms and filing procedures. The primary difference among these competing proposals is the amount of information sought from wildfire claimants as part of the POC process.[1]

2. The Creditors' Committee's overarching objective in these cases is to achieve confirmation of a comprehensive plan of reorganization that treats *all* creditors, including wildfire victims, fairly and equally, and to do so as swiftly as possible. With respect to the claims bar date process, the Creditors' Committee has only one objective: to establish the most effective and efficient method for gathering (and sharing among the relevant parties) the information that will be necessary to accurately assess the magnitude of the Debtors' claims pools. Not surprisingly, the most challenging aspect of that exercise will be the collection and evaluation of reliable information regarding the claims asserted against the Debtors by victims of the various wildfires.

3. The claims bar date process is an important part of that equation, but it need not be the only part. The Creditors' Committee has been advised that the Debtors and both the TCC and the Subrogation Group and their respective members possess significant wildfire claims-related data both based on historical claims experience and compiled in connection with prepetition wildfire claims litigations. The Creditors' Committee believes that all of the relevant parties, and ultimately the Court, will be well served if that data is made available by the Debtors, the TCC and the Subrogation Group pursuant to a consensual information sharing protocol designed to place all of the parties on relatively equal footing in terms of access to this important information. The common goal of this process should be fact-finding, not strategic gamesmanship. While the

---

[1] We understand that an agreement has been reached among the Debtors and the Subrogation Group regarding a revised POC form.

parties have had extensive discussions regarding the possibility of such an information sharing protocol and the Creditors' Committee has strongly advocated for the prompt sharing of data, thus far no agreement has been reached.

4.  A consensual information sharing protocol should also help resolve the pending differences of opinion regarding the proposed POC forms, the bar date and related procedures. To the extent that an acceptable information sharing protocol were to be agreed upon, the Creditors' Committee believes that the POC approach favored by the TCC of a simpler, more limited POC form may be more feasible. Absent an agreement among the various parties to provide access to claims information they have already gathered, however, a POC form and bar date similar to those proposed by the Debtors may prove necessary to allow the Debtors to gather more information directly from claimants themselves. If the TCC is concerned that the Debtors' proposed POC, procedures and bar date are overly burdensome to claimants, it should welcome the opportunity to ease that burden by sharing the data that they and their members already have in hand.

5.  Accordingly, barring an agreement on information sharing, the Creditors' Committee supports the Debtors' Proposed Bar Date and the Debtors' POC (each as defined below).[2] To the extent that an agreement on information sharing is reached among the parties, the Creditors' Committee would be open to supporting a more limited POC form along the lines proposed by the TCC.

## BACKGROUND

6.  On May 1, 2019, the Debtors filed their *Motion Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for Order (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of*

---

[2]  To the extent that the Court approves the use of the Debtors' POC, the Creditors' Committee does have certain comments that it will provide to the Debtors.

*Notice thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* (the "Bar Date Motion") [Docket No. 1784].³ Among other things, the Bar Date Motion seeks to establish September 16, 2019 at 5:00 p.m. (Prevailing Pacific Time) as the deadline (the "Debtors' Proposed Bar Date") for each person, including, without limitation, all Wildfire Claimants, Wildfire Subrogation Claimants, and Customers to file a proof of claim in respect of a prepetition claim asserted against either of the Debtors.

7. As the Debtors assert that Official Form 410 is not designed to capture information necessary in a mass tort case, they also seek approval of a POC form (the "Debtors' POC") specifically tailored to the needs of these cases and customized for different constituencies. With respect to Wildfire Claimants and Wildfire Subrogation Claimants, the Debtors' POC requests more information on the underlying claim than typically is required, including information on the relevant wildfire, the type of loss or injury, the location of the loss or injury, the type of damages asserted, and (if applicable) whether the claim is covered by insurance and relevant coverage information.

8. On May 3, 2019, the TCC filed its *Motion of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R. Bankr. P. 3001(a) for Entry of an Order Approving Proposed Model Proof of Claim Form for Fire Claims and Related Procedures* (the "TCC Motion") [Docket No. 1824], seeking, among other things, an order approving its own proposed POC form (the "TCC's POC") for asserting wildfire claims and certain procedures for submitting such claims.

---

³ Capitalized terms not defined herein have the meanings ascribed to them in the Bar Date Motion.

9.  As compared to the Debtors' POC, the TCC's POC is more abbreviated, requiring less information relating to the nature and specifics of the underlying claim. For instance, the TCC's POC does not request the claimant to indicate: (i) whether the claim is covered by insurance; (ii) whether the property was on the market for sale at the time and if so, the asking price; (iii) the circumstances and nature of any personal injury on which the POC is based; and (iv) the specific dollar amount of the claim.

10. The TCC states that it wishes to "simplify the process for Fire Claimants to file a proof of claim against the Debtors in respect of any prepetition Fire Claim." TCC Motion at 3.

11. The TCC further asserts that it "expects that certain information obtained through the proof-of-claim filing process may be unnecessary to estimate certain claims given information available through databases maintained in connection with various state court proceedings." TCC Motion at 9. This appears to be a reference to the fact that the Superior Court of California for the County of San Francisco in the "California North Bay Fire Cases" (CJC-17-004955) issued a case management order mandating the establishment of a central repository (the "BrownGreer Portal") populated with detailed information regarding claims asserted against the Debtors as a consequence of the 2017 North Bay Fires.

12. The Creditors' Committee understands that the information to be deposited in the BrownGreer Portal includes, among other things: (i) for each individual plaintiff, address of loss location, the fire(s) alleged to have caused such loss, categories of damages allegedly incurred, and causes of action asserted; and (ii) for each subrogation plaintiff claims, the carrier name, amounts paid under applicable policies, open reserves (if any), and the status of adjustment of the claim by the carrier. But neither the Debtors nor the Creditors' Committee currently has been given access to the BrownGreer Portal and so has no ability to assess what information actually resides there.

5

Case: 19-30088    Doc# 2308    Filed: 05/31/19    Entered: 05/31/19 13:57:11    Page 5 of 8

13. On May 16, 2019, the Subrogation Group filed its *Partial Objection to the Bar Date Motion* [Docket No. 2043] and its *Motion Pursuant to 11 U.S.C. §§ 105(a), 107(b) and 501 and Fed. R. Bankr. P. 3001(a) and 9018 for Entry of an Order Approving Proposed Model Omnibus Insurance Subrogation Proof of Claim Form for Subrogation Claims and Related Procedures* (the "Subrogation Motion") [Docket No. 2044]. In the Subrogation Motion, the Subrogation Group proposed, among other things, a POC form for subrogation claims that limits the information requested from subrogation claimholders to what, the Subrogation Group alleges, is historically exchanged with defendants. The Subrogation Group asserts that its proposed POC form will allow the Debtors to evaluate and reconcile claims without unduly burdening claimholders. We understand that the Debtors and Subrogation Group have had productive discussions that may resolve the Subrogation Group's objection and motion. The Creditors' Committee nonetheless continues to urge both the Debtors and the Subrogation Group to agree to provide the claims data they already have in order to facilitate the flow of information and claims pool analysis that will be critical to any prospect for a prompt resolution of these cases.

**STATEMENT**

14. The Creditors' Committee has reviewed all of the proposed POC forms and discussed them with its advisors, as well as with the Debtors, the TCC and the Subrogation Group. The Creditors' Committee is not opposed to the use of a specifically tailored POC form and recognizes that, in most mass tort bankruptcies, courts have permitted parties in interest to make modifications to the Official Form 410. See, e.g., In re A.H. Robins, Co., 862 F.2d 1092, 1093 (4th Cir. 1988) (discussing custom-designed questionnaire used to elicit information to establish grounds for tort liability and validity of proofs of claim in chapter 11 bankruptcy of manufacturer of defective medical devices); In re TK Holdings Inc., Case No. 17-11375 (Bankr. D. Del. 2017) (Docket No. 959, Ex. B-2) (approving model proof of claim form for individuals who owned

vehicles equipped with airbag inflators containing phase-stabilized ammonium nitrate (PSAN) to file claims that required each claimant to provide vehicle-specific information).

15. The Creditors' Committee also understands the desire to make the POC process as easy as possible for wildfire victims to submit their claims. But this desire is balanced against the need to design a process that will garner sufficient information for the relevant parties, and ultimately the Court, to accurately assess the magnitude of those claims – and for that process to occur along a timeline that will permit the timely formulation and prosecution of a plan of reorganization.

16. Recognizing the paramount need for pooling the information regarding the wildfire claims, the Creditors' Committee's advisors have been meeting with and participated in numerous calls with the various parties in an effort to gain access to the various information held by each, including: (i) the Debtors' information regarding the cause of the fires along with prior settlement information; (ii) the TCC's information from the underlying state court actions; and (iii) the Subrogation Group's information from insurers regarding claims made and paid to date. To date, however, the parties have not been able to successfully reach agreement on an information sharing protocol. While the TCC asserts that a complex POC form is not necessary, based in part on information that it alone has access to, without the TCC sharing such information with the other parties in interest, the other parties have no choice but to require a lengthy and detailed POC.

17. As such, without an agreement on an information sharing protocol, the Creditors' Committee must support the Debtors' POC and Debtors' Proposed Bar Date, which are designed to elicit information that must be made known to all parties in interest in the near term in order to properly estimate the Debtors' wildfire liabilities and bring these cases to swift and successful conclusion.

## CONCLUSION

The Creditors' Committee respectfully requests that the Court: (i) to the extent no agreement on an information sharing protocol has been reached, approve the relief requested in the Bar Date Motion, including the Debtors' Proposed Bar Date and the Debtors' POC; and (ii) granting such other relief as is just and reasonable.

Dated: May 31, 2019

**MILBANK LLP**

*/s/ Thomas R. Kreller*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*