TROUTMAN SANDERS LLP
Gabriel Ozel
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092
Telephone: (858) 509-6000
gabriel.ozel@troutman.com


TROUTMAN SANDERS LLP
Hugh M. McDonald (admitted *pro hac vice*)
Jonathan D. Forstot (admitted *pro hac vice*)
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
hugh.mcdonald@troutman.com
jonathan.forstot@troutman.com
*Attorneys for Consolidated Edison Development, Inc.*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**MOTION OF CONSOLIDATED EDISON FOR RELIEF FROM THE AUTOMATIC STAY TO INTERVENE AND PARTICIPATE IN APPEAL OF FERC ORDERS**<br><br>Date: June 26, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Objection Deadline:** June 19, 2019<br>4:00 p.m. (Pacific Time) |

Consolidated Edison Development, Inc. ("Con Edison"), through its counsel, moves (the "Motion") pursuant to section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

Rule 4001-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules") for entry of an order vacating the automatic stay to the extent necessary to allow Con Edison to intervene[1] in any appeal by a Debtor of the FERC Orders and otherwise participate in all respects in that appeal, or any subsequent review or remand proceedings.

In support of the Motion,[2] Con Edison states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

The Debtors filed the Utility Motion two days ago to lift the stay so that the Utility may initiate and prosecute an appeal of the FERC Orders. Simple fairness dictates that all parties to the underlying proceeding, including Con Edison, be permitted to participate in any appeal of the FERC Orders. The Debtors asserted that relief from the stay for the Utility will not prejudice any party. But Con Edison, a PPA Counterparty, is an intervenor in the FERC Proceedings below and has a direct stake in any appeal of the FERC Orders and related actions. Without being able to defend its interests in any such appeal, Con Edison's interests will be prejudiced and harmed. The stay should be lifted for Con Edison to the same extent it is lifted for the Utility.[3]

---

[1] If PG&E files a petition for review, it will be with the Ninth or D.C. Circuit Court of Appeals. Each of these courts would normally decide whether to grant any motions to intervene. It is not for Con Edison or the Bankruptcy Court to rule on eligibility to be an intervenor in a FERC appeal. For this reason, Con Edison has intentionally left this issue for the appellate court to decide.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the pending *Motion of the Utility for Limited Relief From the Automatic Stay to Appeal Certain Matters Pending Before the Federal Energy Regulatory Commission* [Doc. No. 2362] (the "Utility Motion").

[3] Counsel for Con Edison reached out to Debtors' counsel and has had an initial discussion regarding lifting the stay for all relevant parties. The timing here compels the filing of this Motion, but Con Edison is hopeful that there can be a consensual resolution.

TROUTMAN SANDERS LLP
875 THIRD AVENUE
NEW YORK, NY 10022

## JURISDICTION

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,* General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). Pursuant to 28 U.S.C. § 157(b), this is a core proceeding and, pursuant to 28 U.S.C. §§ 1408 and 1409, venue is proper before this Court.

## SUMMARY OF FACTS[4]

Pursuant to several PPAs, Con Edison's affiliates supply approximately 665 MW of renewable energy to the Utility. *See* Dixon Declr. ¶¶ 5–7. When the news broke that the Utility's bankruptcy was imminent, certain other PPA Counterparties sought expedited relief from FERC. Specifically:

- On January 18, 2019, NextEra Energy, Inc. and NextEra Energy Partners, LP (together, "NextEra") commenced an action before FERC, captioned *NextEra Energy, Inc., et al. v. Pac. Gas & Elec. Co.,* Docket No. EL19-35-000 (Jan. 18, 2019);

- On January 22, 2019, Con Edison moved to intervene and comment in that proceeding, *see* Dixon Declr. Ex. A, and FERC granted Con Edison's motion, *see* ¶¶ 11 & 20 of Exhibit 1 to the *Declaration of Theodore E. Tsekerides in Support of the Motion of the Utility for Limited Relief from the Automatic Stay to Appeal Certain Matters Pending Before the Federal Energy Regulatory Commission* [Doc. No. 2361] ("Tsekerides Declaration");[5] and

- On January 22, 2019, Exelon Corp. commenced a proceeding like NextEra's, captioned *Exelon Corp. v. Pac. Gas & Elec. Co.*, Docket No. EL19-36-000 (Jan. 22, 2019).

- On January 24, 2019, Con Edison moved to intervene and comment in that proceeding, and FERC granted Con Edison's motion, *see* Tsekerides Declr. Ex. 2 ¶¶ 10, 18.

---

[4] Con Edison incorporates the facts contained in the *Amended Declaration of James J. Dixon*, Adv. Pro. No. 19-03003 [Doc. No. 18] (the "Dixon Declaration") filed in support of *Consolidated Edison Development, Inc.'s Motion to Intervene in Adversary Proceeding.* Con Edison will cite to the Dixon Declaration as follows: "Dixon Declr. __".

[5] When citing to the exhibits attached to the Tsekerides Declaration, Con Edison will use the following format: "Tsekerides Declr. Ex __".

TROUTMAN SANDERS LLP
875 THIRD AVENUE
NEW YORK, NY 10022

On January 25 and 28, 2019, FERC issued the FERC Orders, in which FERC granted Con Edison's motions to intervene, making it a party to the proceedings. FERC determined that any party to a PPA under FERC's jurisdiction "must obtain approval from both the Commission and the bankruptcy court to modify the filed rate and reject the contract, respectively." *See, e.g.,* Tsekerides Declr. Ex. 1 ¶ 28.

On January 29, 2019, the Debtors each filed petitions for relief under chapter 11 of the Bankruptcy Code. On that same day, the Utility commenced an adversary proceeding (the "Adversary Proceeding") requesting that the Court, among other things, declare that it has exclusive jurisdiction over the rejection of PPAs and permanently and preliminarily enjoin enforcement of the FERC Orders. *See* Complaint, *Pac. Gas. & Elec. Co. g. FERC,* Adv. Pro. No. 19-03003 (Bankr. N.D. Cal. Jan 29, 2019). After extensive briefing and a hearing, the Debtors' requested relief in the Adversary Proceeding is *sub judice*.

On February 25, 2019, the Utility filed requests for rehearing of the FERC Orders. *See* Tsekerides Declr. Exs. 3 & 4. The Utility filed these requests without obtaining relief from the automatic stay. On May 1, 2019, FERC entered an order denying the Utility's requests for rehearing. *See id.* Ex. 7. And about a month later, the Debtors filed the Utility Motion seeking prospective and retroactive relief from the automatic stay. The Debtors have 60 days from May 1, 2019 (until July 1, 2019) to file a Petition for Review of the FERC Orders if the Debtors decide to challenge the FERC Orders.

## ARGUMENT

Section 362(d)(1) of the Bankruptcy Code requires the court to vacate the automatic stay if the movant demonstrates "cause." *See* 11 U.S.C. § 362(d)(1). The Bankruptcy Code, however, does not supply the standard for cause. Therefore, the court must determine "on a case-by-case basis" whether the movant has carried its burden. *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir.

2009); *In re Roger*, 539 B.R. 837, 844 (C.D. Cal. 2015).

To facilitate that inquiry, courts in the Ninth Circuit have adopted the "*Curtis* factors,"[6] *see In re Kronemyer,* 405 B.R. at 921, which the Debtors cited in the Utility Motion. As explained in more detail below, all the relevant *Curtis* factors that the Debtors identified as weighing in favor of granting the Utility Motion weigh in favor of granting this Motion. *See infra* Arg. II. The *Curtis* factors, however, are nonexclusive, *see In re Kronemyer,* 405 B.R. at 921, and the Court is not required to give them all equal weight, *see In re Baleine, LP,* No. BK 13-27610 MH, 2015 WL 5979948, at *7 (C.D. Cal. Oct. 13, 2015); *In re Roger*, 539 B.R. at 845.

Under the circumstances here, the most important factor is the balance of the harms.[7]

---

[6] The court in *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984) listed the following factors as potentially relevant to determining whether stay relief should be granted to allow litigation to continue outside the bankruptcy court:

(1) Whether the relief will result in a partial or complete resolution of the issues.
(2) The lack of any connection with or interference with the bankruptcy case.
(3) Whether the foreign proceeding involves the debtor as a fiduciary.
(4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases.
(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.
(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.
(7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties.
(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).
(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).
(10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties.
(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.
(12) The impact of the stay and the "balance of hurt."

*Id.* (citations omitted).

[7] While generally, other factors may be more important, based on the facts of the instant case, the Court should consider the relative harms as being most important. *See Wright v. Blythe (In re Blythe)*, Nos. 02-40898-DML-7, 02-4141, 02-4142, 2002 Bankr. LEXIS 1974, at *12 (Bankr. N.D. Tex. Dec. 18, 2002) (stating that balance of harms was perhaps most important factor).

Because there is a significant disparity between the potential harm to the Debtors if stay relief is granted and the potential harm to Con Edison if stay relief is denied, the Court should grant Con Edison's Motion for that reason alone.

**I. The "obvious unfairness" of allowing the Utility to commence and prosecute an appeal of the FERC Orders when the automatic stay would bar Con Edison and other parties from participating in that appeal is sufficient cause for this Court to grant stay relief pursuant to section 362(d)(1) of the Bankruptcy Code.**

If the Court grants the Utility Motion but does not enter an order granting Con Edison's comparable relief, then Con Edison will be irreparably harmed because the automatic stay will preclude Con Edison from exercising its ability to intervene and participate in any appeal of the FERC Orders.[8] Courts have identified the "obvious unfairness" of when, as described in the scenario above, "a debtor is allowed to appeal an adverse judgment rendered in an action against the debtor, yet, at the same time, the automatic stay would prevent a creditor from doing the same." *In re Paxton*, 596 B.R. 686, 695–96 (Bankr. N.D. Cal. 2019); *cf. In re Den Beste,* No. 10-13558, 2012 WL 2061402, at * 1 (Bankr. N.D. Cal. June 6, 2012) (determining that non-debtor/appellee was not precluded from defending herself when debtor/appellant violated the automatic stay by prosecuting appeal). Simply put, the automatic stay "is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment." *In re Rivera*, 345 B.R. 229, 237 (Bankr. E.D. Cal. 2005) (citation and internal quotation marks omitted). Therefore, the Court should grant Con Edison stay relief (or deny the Utility Motion) to level the playing field. Con Edison submits that the same relief should be granted to other interested parties that satisfy the U.S. Court of Appeals' standards to permit intervention in the appeal. Allowing one party to appeal the FERC Orders while precluding other parties that would, but for the automatic stay, have the right to participate in the appeal would be legally flawed under this standard. By seeking this relief,

---

[8] And unlike the Debtors, who seem to think it is better to beg for forgiveness than ask for permission, Con Edison first seeks stay relief before moving to intervene in any appeal.

Con Edison seeks to promote judicial efficiency so that other parties are not forced to move separately.

In the FERC Proceedings, Con Edison was an intervenor[9] and, if the FERC Orders are overturned or modified, Con Edison's PPAs may be in jeopardy (as explained more fully in the *PPA Counterparties' Opposition to Debtors' Motion for Preliminary Injunction*, Adv. Pro. No. 19-03003 [Doc. No. 99]). Clearly then, any appeal of the FERC Orders will directly affect Con Edison. Indeed, when the Debtors omitted Con Edison from the Adversary Proceeding, Con Edison moved this Court to intervene. By granting Con Edison's motion, the Court recognized Con Edison's and the other PPA Counterparties' interests in the matter. Now, if the stay is not lifted for Con Edison, it will, in effect, deprive Con Edison due process.

In contrast, granting Con Edison stay relief will not harm the Debtors, who themselves sought relief from the automatic to litigate an appeal of the FERC Orders in another forum. The Debtors even state in the Utility Motion that they desire "to ensure that the rights of *all* parties—the Utility as well as FERC and certain PPA Counterparties—are preserved on appeal." *See* Utility Motion at 10. Moreover, the Debtors' discussion of the 12th factor (the "balance of hurt") is predicated, in part, on its view that its "rights to judicial review of the FERC Orders should not be impeded by the automatic stay and there is no apparent harm to FERC or the PPA Counterparties." *See id.* at 7. For all that to be true, the Debtors should have no objection to the Court granting Con Edison stay relief to participate in the FERC appeal and related proceedings.

Therefore, the balance of the harms tips heavily in Con Edison's favor, and this alone justifies granting Con Edison stay relief to participate in any appeal of the FERC Orders.

---

[9] Although Con Edison was granted intervenor status in the FERC Proceedings, it must move to intervene in any appeal of the FERC Orders.

TROUTMAN SANDERS LLP
875 THIRD AVENUE
NEW YORK, NY 10022

## II. Relief from the stay to intervene and participate in an appeal of the FERC Orders, if filed, is appropriate for the same reasons the Debtors cite in support of the Utility Motion.

The other relevant *Curtis* factors that courts assess to determine whether the stay should be lifted to resume litigation in another forum also militate in favor of granting Con Edison relief from the automatic stay.

For example, if the Court grants stay relief, doing so will have no impact whatsoever on the bankruptcy cases (*see* factor 2) or the interests of creditors and other parties (*see* factor 7) because the Court will have previously or simultaneously granted the Utility Motion. In so ruling, any negative effects, to the extent there would be any, would be attributable to the Utility obtaining stay relief and taking the appeal of the FERC Orders. Stated differently, if the Debtors are successful in obtaining stay relief and choose to appeal the FERC Orders, then the appeal will move forward, regardless of whether Con Edison obtains stay relief to intervene. Assuming the Utility Motion is granted, no further effects should follow if this Motion is granted. (And if the Debtors are not successful, then Con Edison's Motion is moot.)

Likewise, as the Debtors correctly note, Congress gave the federal circuit courts of appeal exclusive jurisdiction to review FERC Orders (once rehearing from FERC has been denied). *See* 16 U.S.C. § 825*l*(b). So clearly those courts have the "expertise to hear such cases" (*see* factor 4). Indeed, they are the **only courts** authorized to hear such cases and, therefore, are a "specialized tribunal" of sorts (*see id.*). For this same reason, judicial economy is best served by allowing Con Edison to obtain stay relief and intervene in any appeal.

If the Court finds, after application of the *Curtis* factors, that there is cause to lift the stay to allow the Utility to pursue an appeal of the FERC Orders, then it must also find that there is cause to lift the stay to allow Con Edison to intervene and participate in that appeal. There is no reason why the application of the *Curtis* factors here would lead to a different result. Indeed, the

TROUTMAN SANDERS LLP
875 THIRD AVENUE
NEW YORK, NY 10022

case here is more compelling because the appeal will already be in progress when Con Edison moves to intervene in it. Therefore, Con Edison is entitled to relief from the automatic stay for cause to protect its rights in any appeal of the FERC Orders.

## CONCLUSION

For the foregoing reasons, the Court should enter an order granting the Motion and awarding any further relief that is just and proper.

Dated: June 5, 2019

TROUTMAN SANDERS LLP
By: /s/ *Hugh M. McDonald*

Hugh M. McDonald (admitted *pro hac vice*)
Jonathan D. Forstot (admitted *pro hac vice*)
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
hugh.mcdonald@troutman.com
jonathan.forsot@troutman.comn

-and-

TROUTMAN SANDERS LLP
Gabriel Ozel
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092
Telephone: (858) 509-6000
gabriel.ozel@troutman.com
*Attorneys for Consolidated Edison Development, Inc.*