| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>Theodore Tsekerides (*pro hac vice*)<br>(theodore.tsekerides@weil.com)<br>Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | KELLER & BENVENUTTI LLP<br>Tobias S. Keller (#151445)<br>(tkeller@kellerbenvenutti.com)<br>Peter J. Benvenutti (#60566)<br>(pbenvenutti@kellerbenvenutti.com)<br>Jane Kim (#298192)<br>(jkim@kellerbenvenutti.com)<br>650 California Street, Suite 1900<br>San Francisco, CA 94108<br>Tel: 415 496 6723<br>Fax: 650 636 9251 |

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br>**PG&E CORPORATION,**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br>☐ Affects PG&E Corporation<br>☑ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br>**PRELIMINARY RESPONSE IN OPPOSITION TO WENDY NATHAN'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br>[Relates to Dkt No. 2048]<br>Date: June 11, 2019<br>Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>**Debtors' Response Deadline**:<br>June 6, 2019<br>4:00 p.m. (Pacific Time) |

Pacific Gas and Electric Company (the "**Utility**" or the "**Debtor**"), as debtor and debtor in possession in one of the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"), respectfully submits this preliminary response in opposition to Wendy Nathan's ("**Nathan's**") Motion for Relief from the Automatic Stay (the "**Motion**"). *See* Dkt. No. 2048.

As discussed more fully below, the circumstances underlying Nathan's Motion are factually and legally indistinguishable from those presented by the motion brought by Marina and Mikhail Gelman (the "Gelmans"). Dkt. No. 1310, filed April 10, 2019. In its Memorandum Decision on Motions for Relief From Stay filed May 12, 2019 [Dkt. No. 1982] (the "Gelman Decision"), the Court denied the Gelmans' motion, and a separate motion by creditor Valero Refining Company – California ("Valero"), following preliminary hearings held on May 9, 2019, and instead continued both preliminary hearings to September 10, 2019. The Court should dispose of Nathan's Motion in the same manner – by denying the Motion now and continuing the preliminary hearing to a date in September.

On August 30, 2017, Wendy Nathan initiated a personal-injury action in Alameda County Superior Court (the "Nathan Action") arising out of an alleged trip-and-fall incident, in which she named as defendants the Debtor, Ann D. Greevich as Successor Trustee of the Survivor's Trust, Greevich Trust dated June 7, 1991, and Jane Inok Hong. Subsequently, the City of Oakland, California, was added as a third-party defendant. *See* Motion at 1-3. As of January 29, 2019, all claims against the Debtor in the Nathan Action have been stayed. *See* 11 U.S.C. § 362(a). Debtor filed a notice of the bankruptcy stay on February 4, 2019, in the Superior Court in which the Nathan Action was pending. Nathan now seeks relief from the automatic stay under 11 U.S.C. § 362(d)(1), to "allow for liquidation of the claims asserted against the Debtor." *See* Motion at 2-3.

Nathan asserts "cause" for stay relief based on the argument that abstention – either permissive or mandatory – would be appropriate here under 28 USC §1334(c)(1) or (2).[1] Motion,

---

[1] It is noteworthy that the Motion is explicitly styled one for relief from the automatic stay, and the only relief it seeks is modification of the stay; the Motion does *not* seek an order for abstention, either permissive or mandatory.

¶ 10, at page 3. Utility disputes that abstention would be appropriate here, or would provide cause for stay relief.[2] But even assuming that Nathan could establish a prima facie basis for stay relief predicated on abstention principles, the Motion fails to address the broader considerations that led the Court to conclude less than a month ago that "PG&E has carried its burden in opposition under 11 U.S.C. § 362(g)(2)," and to deny stay relief to the Gelmans and Valero in its discretion "at this time." Gelman Decision at 3. Those same considerations apply equally to Nathan's Motion, and compel the same result here.

    Nathan's personal-injury claim is indistinguishable in any material respect from the Gelmans' claim. *See* Gelmans' motion, Dkt. No. 1310. Just as with the Gelmans' motion, Nathan does not and cannot distinguish her trip-and-fall claim from the numerous other claims that face the Debtor, including all other prepetition tort claims, and she offers no justification for diverting the Debtor's resources and management attention away from carrying out its reorganization. The Nathan Action is in no way unique, either compared to the approximately one hundred other non-wildfire tort cases against the Debtor for personal injury and/or property damages—approximately half of which include other non-debtor defendants—and certainly not compared to the thousands of wildfire related claims and lawsuits. As with the Gelmans' Motion, and Valero's, "it is still too early in these complex reorganization cases to force the Debtor[] to defend the claims of [Nathan] in [a] different court[] while at the same time attempting to make progress toward the goal of a successful reorganization." Gelman Decision at 2. "[I]t is far more preferable to make progress toward that goal before the individual claims be dealt with." *Id.* "Debtors make a persuasive demonstration that more time is needed to attend to the myriad issues in this case without forcing them to resume defense of these two actions absent compelling circumstances to justify relief [from stay] now." *Id.* at 3 – 4. "Relief from stay for these [] motions now is not appropriate." *Id.* at 5.

    Nathan has failed to demonstrate sufficient compelling circumstances to justify compelling Utility to defend against her disputed personal-injury claim now. Granting the Motion would force

---

[2] See discussion at 6 below.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

the Debtor to devote resources to address Nathan's claims ahead of the thousands of other tort claimants, especially all other prepetition claimants who properly follow the normal claims filing and administration process that is central to Chapter 11.

Permitting the Nathan Action to proceed also threatens to open the floodgates for all tort plaintiffs to request relief from stay, rather than filing proofs of claim via the customary bankruptcy process. Such a result would defeat the purpose of the automatic stay and disrupt the pending Chapter 11 Cases. The Court should deny requests for relief from the stay to litigate individual tort claims like the Nathan Action to protect orderly and fair estate administration as to all tort claims. *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984) ("Even slight interference with the administration [of the debtor's estate] may be enough to preclude relief [from the automatic stay] in the absence of a commensurate benefit.").

It is of no moment that Nathan "only seeks to liquidate her claim." Motion at 4. Just as with the Gelmans and Valero motions, if Nathan were granted the relief she seeks, she would "still not be able to enforce [her] claim or take other actions to recover without further permission from the [C]ourt." Gelman Decision at 2-3. Nathan admits that she does "not [seek] to enforce the resulting judgment against the Estate." Motion at 4. Rather, Nathan's admission underscores her failure to demonstrate compelling circumstances to justify why the Court should grant this relief now. Debtor filed the notice of bankruptcy in the Nathan Action on February 4, 2019. Nathan did not bring her Motion until May 16, 2019—four days after the Court's Gelman Decision continued the Gelmans and Valero motions until September 10, 2019. Since Nathan waited three-and-a-half months to even seek relief from the automatic stay, it is unclear why she cannot wait three more for the consideration of her Motion. Nathan fails to offer any explanation.

Likewise, it is of no consequence that "[r]ecently, knowing that [Nathan's] motion would be filed shortly, the Superior Court ordered the parties to participate in mediation before August 30, 2019, and set a new trial date for February 21, 2020." Declaration of Seth I. Rosenberg Re: Motion for Relief from the Automatic Stay (the "**Rosenberg Decl.**") ¶ 8. These "*recent*" actions taken by the Superior Court, both setting a negotiation deadline and a trial date, violate the automatic stay,

4

Case: 19-30088    Doc# 2433    Filed: 06/06/19    Entered: 06/06/19 13:49:10    Page 4 of 7

and are void *ab initio*. In the Ninth Circuit, "judicial proceedings in violation of the automatic stay are void *ab initio*." *In re Gruntz*, 202 F.3d 1074, 1082 n.6 (9th Cir. 2000). Debtor does not need to make any attempt to have such a violation voided in bankruptcy since "violations of the automatic stay *are void*, not voidable." *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992) (emphasis added). Indeed, "it does not fall on the debtor" to "effectuate the purpose of the automatic stay" and therefore Debtor needs not undertake any further efforts for this Court to recognize that continued prosecution of the Nathan Action violates section 362(a)(3) of the Bankruptcy Code and is therefore void *ab initio*. *In re Del Mission Ltd.*, 98 F.3d 1147, 1151 (9th Cir. 1996) (citing *In re Abrams*, 127 B.R. 239, 243 (B.A.P. 9th Cir. 1991)).

Nathan's assertion that relief from the stay would promote judicial economy is baseless. Relief from the stay would be especially inappropriate here where Nathan indicates that the parties are not prepared to go to trial. *See* Motion at 2 (indicating the possible need of "further discovery . . . with respect to co-defendants"). Indeed, Nathan has proffered no evidence that the parties are trial-ready. *See* Motion at 6-7. It would be a more efficient use of judicial resources to deny stay relief and channel Nathan's claims into the normal claims process, as is customary in cases under Chapter 11. Given the magnitude of tort claims confronting the Debtor, an orderly process to resolve these claims is essential. As this Court has found, "there is too much at stake in needing to craft the contours of the reorganization than to require a debtor this soon to tackle specific individual cases. [The Debtor] must have breathing room in order [to] at least outline where and how these and other claims will be handled." Gelman Decision at 4.

Nathan's assertions that "[i]t is impossible to sever the state law claims" simply miss the mark. *See* Motion at 4. "Nothing prevents [Nathan] from severing [her] action and proceeding separately against the other defendants but [she] has declined that option." Gelman Decision at 3. Nathan nowhere alleges how separate proceedings would prejudice her, nor can Nathan plausibly claim that the stay prevents her from recovering from the City of Oakland or the individual defendants under generally applicable joint liability theories. Nathan could also pursue her claim against the Debtor by filing a proof of claim and participating, along with other unsecured creditors,

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

in the claims allowance process.³ Nathan has shown nothing unique about litigating against other defendants as there are numerous other claimants who brought tort claims against the Debtor and other non-debtor defendants. That a claimant would have the option to proceed sooner by pursuing claims against debtor and non-debtor defendants in different forums does not determine whether the Court should lift the stay. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1287 (2d Cir. 1990) (holding that balance of harms weighed in favor of stay where the movant had the right to proceed with its claims in a separate proceeding against non-debtor defendants). Nathan's choice not to proceed separately is but another indication that even from Nathan's perspective there is simply no rush for Debtor to address her claims now.

Nathan's Motion relies on the doctrines of permissive and mandatory abstention, but her ability to proceed depends entirely upon an order from this Court lifting the automatic stay. *See In re Conejo Enterprises, Inc.*, 96 F.3d 346, 352 (9th Cir. 1996) (holding that "a finding that mandatory abstention applies to [a] state [court] action does not preclude denial of relief from § 362's automatic stay"). The Court need not consider abstention in the first instance because the Court should deny relief for lack of any cause to lift the stay. *See In re Farmland Indus., Inc.*, 309 B.R. 14, 18 n.3 (Bankr. W.D. Mo. 2004) (stating that if "the Court finds that [no] cause exists to lift the automatic stay, the Court will not [need to] address [the movants'] arguments for permissive abstention" pursuant to 28 U.S.C. § 1334(c)(1)).

Additionally, the Court could also deny Nathan's abstention request merely because Nathan's Motion fails to set forth evidence showing that the circumstances of her lawsuit and the Chapter 11 Cases weigh in favor of abstention. For instance, while "the complexity of state law issues . . . 'particularly favors abstention'" (*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 268 (2d Cir. 2012)), Nathan has argued that her "issues are not complex" and "concern typical negligence and premises-liability issues that the Superior Court adjudicates every day." Motion at 4, 6. Similarly, while the need for "swift resolution" is a relevant factor (*Parmalat*, 671

---

³ If Nathan opted to proceed against the non-debtor defendants to judgment in the Nathan Action, the non-debtor defendants could also file proofs of claim against the Debtor for any purported indemnity claims.

6

F.3d at 268), Nathan has shown little haste or other evidence of a need for "swift resolution" of her case. Nathan also presents no basis for assessing "the backlog of the state court's calendar relative to the federal court's calendar." *Id.* at 266. While ultimately Nathan is not entitled to stay relief for lack of cause, she also falls short of demonstrating a persuasive argument for either permissive or mandatory abstention.[4]

In sum, the Motion fails to establish a prima facie basis for its requested relief from the automatic stay, or compelling circumstances why – given the early state of the Debtor's chapter 11 case – Nathan's underlying lawsuit against the Debtor should be permitted to proceed *now*. The Court should deny Nathan's request for relief from the automatic stay at this time, and continue the preliminary hearing on her Motion until September 10, 2019, or as soon thereafter, as with the Gelmans and Valero Motions.

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By:  */s/ Peter J. Benvenutti*
    Peter J. Benvenutti

*Attorneys for Debtors
and Debtors in Possession*

---

[4] If the Court were inclined to consider the abstention issue, the Debtor requests that the Court set a briefing schedule for the Debtor to submit a full response to all of the abstention arguments in the Motion before it rules.