WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Bankruptcy Case<br>No. 19 -30088 (DM)<br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DECLARATION OF RICHARD W. SLACK IN SUPPORT OF MOTION FOR ENTRY OF PROTECTIVE ORDER PURSUANT TO FED. R. BANKR. P. 7026 AND 9014(c) AND 11 U.S.C. § 105(a) GOVERNING DISCOVERY MATERIALS AND OTHER INFORMATION**<br><br>Requested Hearing on Shortened Notice:<br>Date:   June 26, 2019<br>Time:  9:30 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, CA 94102<br><br>**Objection Deadline**:  June 19, 2019<br>                                     4:00 p.m. (Pacific Time) |

I, Richard Slack, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a partner with Weil, Gotshal & Manges LLP, counsel to Pacific Gas and Electric Company (the "**Utility**") and its parent, PG&E Corporation, both Debtors and Debtors in Possession in the above-captioned chapter 11 reorganization cases. I submit this declaration in support of the Debtors' Motion (the "**Motion**") for entry of the protective order annexed to the motion as Exhibit A (the "**Protective Order**"). The matters stated herein are based upon my personal knowledge (including from a review of our firm's relevant books and records and certain publicly filed documents in these Cases), and if called as a witness I can and would testify to them on that basis.

2. Since the commencement of these Chapter 11 Cases, the Debtors have received informal and formal discovery requests for information and documents from various parties, including both the Official Committee of Unsecured Creditors (the "**UCC**") and the Official Committee of Tort Claimants (the "**TCC**," and, together with the UCC, the "**Committees**"). The Debtors anticipate that, during the pendency of these Chapter 11 Cases, they will continue to receive informal and formal discovery requests from the Committees and other parties in interest. The Debtors expect that such requests will also seek certain information of a confidential or sensitive nature.

3. Given the size and complexity of these Chapter 11 Cases, Debtors began a process of drafting a protective order to govern discovery in these Cases and then seeking consensus among the Debtors and the Committees. The Debtors based an initial draft protective order on the Court's past protective orders in bankruptcy matters — including those entered in the prior PG&E bankruptcy — as well as the United States District Court of the Northern District of California's model protective order for litigation involving highly sensitive confidential information with certain modifications based on this Court's past protective orders and given the size, complexity and unique nature of these Chapter 11 Cases. Attached as **Exhibits A** through **F** are protective orders issued by this Court in bankruptcy cases as follows:

- Attached as **Exhibit A** is a true and correct copy of Stipulation for Protective Order; Order Thereon, *In re RDIO, Inc.*, Case No. 15-31430 (Jan. 15, 2016), ECF No. 165.

- Attached as **Exhibit B** is a true and correct copy of Stipulated Protective Order, *In re PG&E*, Case No. 01-30923 (May 11, 2001), ECF No. 503.

- Attached as **Exhibit C** is a true and correct copy of Stipulated Protective Order Regarding Confidential Information, *In re PG&E*, Case No. 01-30923 (May 22, 2001), ECF No. 619.

- Attached as **Exhibit D** is a true and correct copy of Stipulated Protective Order, *In re PG&E*, Case No. 01-30923 (May 24, 2001), ECF No. 691.

- Attached as **Exhibit E** is a true and correct copy of Order Directing Production of Documents to ISO/PX Market Participants Pursuant to Federal Bankruptcy Rule 2004 and Protective Order Respecting Confidentiality of Documents, *In re PG&E*, Case No. 01-30923 (July 11, 2001), ECF No. 1448.

- Attached as **Exhibit F** is a true and correct copy of Agreed Protective Order, *In re Brobeck, Phleger & Harriso*n, Case No. 03-32715-DM7 (Nov. 8, 2004), ECF No. 666.

4. Attached as **Exhibit G** is a true and correct copy of the United States District Court of the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets, available at https://www.cand.uscourts.gov/filelibrary/776/ND_Cal_Patent_Highly_Sensitive_Model_Prot_Ord_Revised.docx.

5. On May 17, 2019, after extensive internal communications and coordination among outside counsel and Debtors' internal legal staff, the Debtors sent a draft protective order to both the UCC and the TCC for comments. Attached as **Exhibits H** and **I** are true and correct copy of those emails and attached draft protective order sent by the Debtors to the UCC and the TCC.

6. On May 20th, the TCC sent comments to the Debtors' draft protective order. The comments related to Section 6 of the protective order relating to confidentiality designations. Attached as **Exhibit J** is a true and correct copy of that email and the attached redline sent by the TCC to the Debtors.

7. On May 23, 2019, the Debtors sent a further revision of the draft protective order to the TCC in which the Debtors adopted some of the TCC's proposed changes. For example, in response to

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

the TCC's comments, Debtors reduced the number of days after a challenge to a confidentiality designation for the parties to begin the meet and confer process from 14 days to 5 days. Debtors, however, declined to accept many changes to Section 6 in keeping with a number of prior protective orders entered by this Court, including by maintaining the responsibility for filing a motion seeking to change a confidentiality designation with the party seeking such change. Attached as **Exhibit K** is a true and correct copy of that email sent by the Debtors to the TCC.

8. On May 24, 2019, the Debtors received comments from the UCC on the draft that Debtors had sent the UCC on May 17, 2019. Debtors then began integrating changes responsive to both the UCC and TCC. Attached as **Exhibit L** is a true and correct copy of that email and its attachments sent by the UCC to the Debtors.

9. On May 28, 2019, the TCC sent additional comments to the Debtors' draft protective order that – again – sought to shift the responsibility for filing a motion with the Court to challenge a confidentiality designation from the challenging party to the designating party. The TCC also added new comments to Section 6 not set forth in its May 20 draft, including, among others, (a) a new Section 6.1 – a non-waiver provision that expressly provides that a challenging party does not waive its ability to challenge confidentiality designations as a result of any delay in making such challenge, and (b) an inconsistent and drastic "waiver" provision that provided that a designating party (likely to be the Debtor in most cases) waives its confidentiality protection if it does not make a motion within 10 days of receipt of the writing challenging the designation. Attached as **Exhibit M** is a true and correct copy of that email and its attachments sent by the TCC to the Debtors.

10. On June 3, 2019, the Debtors sent a revised proposed protective order to the UCC that accepted virtually all of the UCC's suggested changes. The Debtors noted that the new version incorporated some edits and comments from the TCC, which accounted for virtually all of the changes not suggested by the UCC. Attached as **Exhibit N** is a true and correct copy of that email and its attachments sent by the Debtors to the UCC.

11. On June 4, 2019, the UCC responded to the Debtors that "all of these edits are fine except we would like to revert to our version of the 'Timing of Challenge to Confidentiality

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1 Designations' provision (no issue with the re-ordering of that section)." Attached as **Exhibit O** is a true and correct copy of that email and its attachments sent by the Debtors to the UCC.

12. Also on June 4, 2019, the Debtors responded to the UCC agreeing to UCC's proposed change. At that time, Debtors believed it had resolved all of the comments by the UCC and indicated that the Debtors understood the UCC to be "now signed off and that [the UCC and the Debtors were] in agreement." Attached as **Exhibit P** is a true and correct copy of that email sent by the Debtors to the UCC.

13. That evening of June 4, 2019, before receiving the Debtors' comments on the TCC's last draft, the TCC sent an email re-attaching the May 28 version of the protective order that the TCC had previously sent the Debtors and demanded that Debtors accede to its draft or they would file a motion to approve the TCC's version of the protective order the next day. This draft did not contain any of the changes to the protective order made as a result of comments by the UCC. Up to that point, it was the expectation of the Debtors that Debtors would attempt to obtain consensus on a protective order and then present it to the Court. Attached as **Exhibit Q** is a true and correct copy of that email and its attachment sent by the TCC to the Debtors.

14. Later on the evening of June 4, 2019, shortly after receiving the TCC's email message, the Debtors replied to the TCC. The Debtors sent as an attachment the latest revision of the draft protective order (the "**Proposed Protective Order**", which is attached as **Exhibit A** to the Debtor's Motion), which implemented changes based on the UCC's comments as well as agreeing to the TCC's new Section 6.1 "non-waiver" provision. The Debtors set forth the Debtors' belief that the "UCC and the Debtors are both on board with the attached draft of the protective order." The Debtors also cited six examples of protective orders entered by this Court—four from the last PG&E bankruptcy—and expressly quoted for the TCC the language from those six protective orders in all of which the Court essentially ordered that, "If agreement [concerning a confidentiality challenge] cannot be reached, the party seeking a change in the status of a document may apply promptly to the Court for appropriate relief." The Debtors suggested that the TCC and the Debtors "have a call tomorrow or [the following day] to meet and confer if you still have any issues." Attached as **Exhibit R** is a true and correct copy of that email and its attachment sent by the Debtors to the TCC.

15. Later that night, the TCC replied to the Debtors' email. Without commenting on this Court's prior protective orders, the TCC stated that they "[could] discuss further tomorrow morning at 10 am PT if you think the Debtors will agree to the process the TCC has proposed," but "if not," "the TCC will file the motion with the Court tomorrow afternoon." Essentially, the TCC was stating that it would not further negotiate and still demanded the Debtors accede to their version of Section 6.1. Attached as **Exhibit S** is a true and correct copy of that email sent by the TCC to the Debtors.

16. The TCC then filed its motion the following day on June 5, 2019, knowing that the Debtors had been working to gain the agreement of both Committees and intended to file a motion with respect to a proposed protective order.

17. Prior to filing its motion, the TCC sent an email asking if the Debtors had any "objection to shortening the standard 21 day objection period to 14 days and setting the hearing for the omnibus hearing on June 26 at 9:30 am?" I responded later that same day that "We will consent to the TCC's request for shortened notice of its motion, provided the TCC consents to a similar timeline so that both motions are scheduled to be heard before Judge Montali on June 26th." The TCC responded that it had "[n]o objection to the Debtors shortening time as well to conform to an objection deadline of June 19, and a hearing on June 26." Attached as **Exhibit T** is a true and correct copy of the email chain reflecting these communications.

18. Because the Debtors had been focused on efforts to reach a consensual agreement and anticipated filing a motion to approve an agreed form of protective order up until receiving the TCC's email the night of June 4, and due to the relatively time-consuming process for obtaining approvals from multiple co-counsel and client representatives, the Debtors needed until today to file their Protective Order Motion.

19. Negotiating revisions with the Committees was a time-consuming process, as each significant revision involved discussions not only with the respective Committees' counsel but also with multiple co-counsel and in-house counsel for the Debtors, in light of the potential scope and breadth, and the significance of the impact on the Debtors, of the order once adopted by the Court.

20. Debtors have not refused to produce documents to the TCC before a protective order is entered by the Court. To the contrary, Debtors agreed on May 25, 2019 to proceed with a schedule of

rolling discovery productions under this Court's discovery order, including making a first production by June 12, 2019. Attached as **Exhibit U** is a true and correct copy of the email chain between the TCC and the Debtors.

21. On June 7, 2019, counsel for both the TCC and the UCC confirmed by emails, on which I was copied, that the respective Committees do not object to shortening notice for a hearing of the Protective Order Motion on June 26, 2019, with an objection deadline of June 19, 2019, at 4:00 pm.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct, and that this declaration is executed on June 7, 2019.

/s/ *Richard W. Slack*
Richard W. Slack

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119