# EXHIBIT E

| | |
|---|---|
| 1 | JAMES L. LOPES (No. 63678) |
| | GARY M. KAPLAN (No. 155530) |
| 2 | MARTY K. COURSON (No. 178031) |
| | HOWARD, RICE, NEMEROVSKI, CANADY, |
| 3 |   FALK & RABKIN |
| | A Professional Corporation |
| 4 | Three Embarcadero Center, 7th Floor |
| | San Francisco, California 94111-4065 |
| 5 | Telephone: 415/434-1600 |
| | Facsimile: 415/217-5910 |
| 6 | |
| 7 | Attorneys for Debtor and Debtor in Possession |
| | PACIFIC GAS AND ELECTRIC COMPANY |

FILED
01 JUL 11 AM 11:16
KEENAN G. CASADY, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DIST. OF CA.
SAN FRANCISCO, CA.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 01-30923 DM |
| PACIFIC GAS AND ELECTRIC COMPANY, a California corporation, | Chapter 11 |
| Debtor. | Date: June 28, 2001<br>Time: 1:30 p.m.<br>Place: 235 Pine Street, 22nd Floor<br>San Francisco, California |
| Federal I.D. No. 94-0742640 | Judge: Hon. Dennis Montali |
| | [cont'd from June 20, 2001 at 9:30 a.m.] |

**ORDER DIRECTING PRODUCTION OF DOCUMENTS TO ISO/PX MARKET PARTICIPANTS PURSUANT TO FEDERAL BANKRUPTCY RULE 2004 AND PROTECTIVE ORDER RESPECTING CONFIDENTIALITY OF DOCUMENTS**

| | |
|---|---|
| 1 | The Court, having considered the multiple objections filed in response to the |
| 2 | motion (the "Motion") submitted by Pacific Gas and Electric Company, the debtor and |
| 3 | debtor in possession in the above-captioned Chapter 11 case ("PG&E"), for Entry Of Order |
| 4 | Requiring Production Of Documents By The California Independent System Operator |
| 5 | Corporation ("ISO") And California Power Exchange Corporation ("PX") Pursuant To |
| 6 | Federal Bankruptcy Rule 2004, the record in this case and the oral argument and admissible |
| 7 | evidence presented to the Court at or prior to the hearing on the Motion, hereby finds as |
| 8 | follows: |
| 9 | A. By its Order Directing Production Of Documents To Pacific Gas And |
| 10 | Electric Company Pursuant To Federal Bankruptcy Rule 2004 And Protective Order |
| 11 | Respecting Confidentiality Of Documents entered concurrently herewith, the Court has |
| 12 | directed the ISO and the PX to produce documents to PG&E. |
| 13 | B. Market participants of the PX and the ISO have a reciprocal right to engage |
| 14 | in mutual discovery relating to claims they may have against the PG&E bankruptcy estate as |
| 15 | well as defenses to claims of setoff or other affirmative action initiated by PG&E. |
| 16 | C. To preclude the necessity of multiple Rule 2004 examination requests in |
| 17 | this bankruptcy case, and in the interests of judicial economy, this Court shall enter a further |
| 18 | order requiring document production to market participants subject to a protective order |
| 19 | respecting confidentiality as specified below. |
| 20 | Based on the foregoing, **IT IS HEREBY ORDERED** that: |
| 21 | 1. The California Independent System Operator Corporation ("ISO") shall produce all |
| 22 | documents responsive to the Request For Production Of Documents From The California |
| 23 | Independent System Operator as specified on Exhibit A attached hereto no later than July |
| 24 | 20, 2001 (the "ISO Document Production") to outside counsel of market participants of the |
| 25 | PX, the ISO and the Official Committee of Participant Creditors in the bankruptcy case of |
| 26 | the PX (the "PX Committee") (collectively, "Market Participants") who make a request |
| 27 | therefor pursuant to the procedures in paragraph 2. The ISO is under no obligation to affix |
| 28 | |

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN



1 any label or stamp on any document contained in the ISO Document Production pursuant to
2 paragraph 5(B) hereunder or otherwise.

3     2. A Market Participant who desires to have its outside counsel receive a copy of the
4 ISO Document Production must submit a request that is received by counsel to the ISO,
5 David Neale, Esq. of Levene, Neale, Bender, Rankin & Brill, LLP, 1801 Avenue of the
6 Stars, Suite 1120, Los Angeles, CA 90067, no later than July 18, 2001; such request may be
7 made to Mr. Neale by facsimile to 310-229-1244. Any such requests shall also be served
8 upon bankruptcy counsel for PG&E, the PX and the PX Committee. The requesting Market
9 Participant shall bear the costs of duplication and shipment of the ISO Document
10 Production. Such request shall also be accompanied by a certification from outside counsel
11 to the requesting Market Participant stating that outside counsel agrees to be bound by the
12 terms of this Order, directing that shipment be made by overnight courier to the address of
13 outside counsel, agreeing to pay for the costs of duplication and shipment on behalf of the
14 Market Participant and providing a client billing number for invoicing purposes. At the
15 ISO's discretion, the ISO may, in lieu of an invoice, surcharge the Market Participant's
16 account for the costs of duplication and shipment of the ISO Document Production.

17     3. The California Power Exchange Corporation ("PX") shall produce all documents
18 responsive to the Request For Production Of Documents From The California Power
19 Exchange as specified on Exhibit B attached hereto no later than July 27, 2001 (the "PX
20 Document Production") to outside counsel of Market Participants who make a request
21 therefor pursuant to the procedures in paragraph 4. The PX Document Production shall be
22 shipped to said outside counsel via Federal Express on July 26, 2001 in such a manner that it
23 arrives on July 27, 2001. The PX is under no obligation to affix any label or stamp on any
24 document contained in the PX Document Production pursuant to paragraph 5(B) hereunder
25 or otherwise.

26     4. A Market Participant who desires to have its outside counsel receive a copy of the
27 PX Document Production must submit a request that is received by counsel to the PX, Dan
28 Sedor, Esq. of Jeffer, Mangels, Butler & Marmaro LLP, 2121 Avenue of the Stars, 10th

ORDER ON PROD. TO MARKET PARTICIPANTS PURSUANT TO 2004 DOCUMENT PROD REQUESTS
WD 070601/1-1419948/mkc/928558/v5 -2-
Case: 19-30088  Doc# 2460-5  Filed: 07/01/19  Entered: 07/01/19 20:03:19  Page 4 of 18

Floor, Los Angeles, CA 90067 no later than July 25, 2001; such requests may be made to Mr. Sedor by facsimile to (310) 203-0567. Any such requests shall also be served upon bankruptcy counsel for PG&E, the ISO and the PX Committee. The requesting Market Participant shall bear the costs of duplication and shipment of the PX Document Production. Such request shall also be accompanied by a certification from outside counsel to the requesting Market Participant stating that outside counsel agrees to be bound by the terms of this Order, directing that shipment be made by overnight courier to the address of outside counsel, agreeing to pay for the costs of duplication and shipment on behalf of the Market Participant and shall also providing a client billing number for invoicing purposes.

5. Because some or all of the documents requested by the Request For Production Of Documents From The California Independent System Operator and Request For Production Of Documents From The California Power Exchange (collectively, the "ISO/PX Document Production Requests") may very likely constitute and/or contain trade secrets or other confidential research, development or commercial information, PG&E shall abide by the following procedures (the "Protective Order") respecting the treatment of documents and information (collectively, the "Responsive Information") received in response to the ISO/PX Document Production Requests:

A. All Responsive Information shall be produced by the ISO and the PX to outside counsel for any Market Participant who makes a request therefor pursuant to paragraphs 1 through 4 herein. Such outside counsel shall designate itself or one of the Market Participant's other Outside Professionals (as defined in subpart (C), below) as a records custodian (the "Custodian") of the Responsive Information, and the Custodian shall establish a repository for the Responsive Information.

B. Paper copies of documents that are part of the Responsive Information shall have affixed to them by the Custodian a label or stamp which states the following: "Confidential Information Subject to Protective Order, In re Pacific Gas and Electric Company (Bkr. Case No. 01-30923-DM)" (the "Label"). Any disk that contain data files that are a part of the Responsive Information shall also be similarly identified by the Label, however, this

ORDER ON PROD. TO MARKET PARTICIPANTS PURSUANT TO 2004 DOCUMENT PROD REQUESTS
WD.070601/1-1419948/mkc/928558/v5   -3-

labeling requirement does not require electronic files to bear the Label. In all circumstances, all Responsive Information, whether bearing the Label or not, is subject to the terms and conditions of this Protective Order.

C. The Custodian shall only disclose Responsive Information to outside attorneys, accountants, financial advisors, consultants, experts and other professionals (and any assistants or clerical employees working under their direct supervision) (collectively, the "Outside Professionals") retained by the Market Participant. Except as otherwise authorized by the United States Bankruptcy Court pursuant to the procedure described in paragraph (6) below, Responsive Information shall not be disclosed to any other entity or individual, including, by way of example, to the requesting Market Participant or its affiliates, employees, officers and directors. Upon request by a Market Participant, the Custodian for the PX Committee may disclose Responsive Information to Outside Professionals of such Market Participant in accordance with this Protective Order.

D. All Outside Professionals to whom Responsive Information may be disclosed as provided herein shall maintain the confidentiality of the Responsive Information and disclosure to such Outside Professionals may be made only upon execution of a Non-Disclosure Certificate in the form attached hereto as Exhibit C; such Non-Disclosure Certificates to be executed by each and every individual and entity to whom Responsive Information is disclosed. All executed Non-Disclosure Certificates shall be maintained by the Custodian.

E. Subject to the limitations set forth in this Protective Order respecting the disclosure of Responsive Information, Responsive Information shall be utilized exclusively for litigation purposes in connection with this bankruptcy case (including adversary proceedings and claims litigation), administrative proceedings and state and federal litigation (collectively, the "Proceedings"). Except as otherwise provided herein, Responsive Information shall not otherwise be utilized for any other purpose whatsoever (such as for a business purpose) without further order of the United States Bankruptcy Court or by express written permission of the party to whom the Responsive Information pertains.

F. Nothing in this Protective Order shall be deemed to restrict an Outside Professional's reliance on the Responsive Information (or information derived therefrom) in shaping the Outside Professional's impressions, conclusions, theories or questions.

G. Documents containing Responsive Information may be disclosed, without violating the terms of this Protective Order, to (i) United States Bankruptcy Court personnel, including court reporters; (ii) witnesses and counsel who have previously executed Non-Disclosure Certificates; or (iii) individuals otherwise permitted to receive disclosure of Responsive Information hereunder or pursuant to a subsequent Order of this Court. Additionally, it shall not violate the terms of this Protective Order to file a document containing Responsive Information under seal with this Court.

H. Should a Market Participant desire to make any disclosure of Responsive Information other than that which is expressly permitted under this Protective Order, then, prior to such disclosure, written notice (the "Notice") must be made to the affected Market Participant(s) (for purposes hereunder, the term "Market Participant" includes PG&E) and their outside counsel, if known, to whom the Responsive Information relates (the "Affected Market Participant"), as well as to the PX Committee, and an attempt to meet and confer with such Affected Market Participant(s) be made with respect to the proposed disclosure. Such Notice may be provided by facsimile. If, after such written Notice, no objection is received within 10 days thereof from the Affected Market Participant, then disclosure of such Responsive Information may be made in the manner contemplated by the Notice.

I. If such Affected Market Participant(s) object to the disclosure contemplated in the Notice within 10 days thereof, and the party seeking disclosure and the Affected Market Participant(s) are unable to agree upon a procedure that would permit the disclosure of the Responsive Information, then the Responsive Information shall not be disclosed; except, the party seeking disclosure may then request a ruling from the United States Bankruptcy Court that the disclosure be made in the manner contemplated by the Notice or as otherwise ordered by the Court, and the Affected Market Participant(s) shall have the opportunity to oppose the requested relief. If the Affected Market Participant(s) oppose such requested

ORDER ON PROD. TO MARKET PARTICIPANTS PURSUANT TO 2004 DOCUMENT PROD REQUESTS
WD-070601/1-1419948/mkc/928558/v5            -5-

relief, then the PX Committee may also oppose the requested relief.

J.  The obligations respecting the treatment of Responsive Information herein shall continue for the duration in which such Responsive Information may be used in the Proceedings, including, but not limited, to the conclusion of all appeals and challenges therefrom ("Proceedings Termination"). Sixty (60) days after Proceedings Termination, all parties receiving Responsive Information pursuant to this Order shall destroy such Responsive Information.

K.  In any Proceeding, a Market Participant shall be entitled to seek from another Market Participant (for purposes hereunder, the term "Market Participant" includes PG&E), through discovery procedures applicable to such Proceeding, all or any portion of the Responsive Information as may be relevant to such Proceeding; provided, however, that all such disclosures of Responsive Information in such discovery proceedings which contain reference to or identification of any other Market Participant may only be made to individuals as to whom Responsive Information may be disclosed pursuant to this Order or the concurrently filed Order Directing Production Of Documents To Pacific Gas and Electric Company Pursuant To Federal Bankruptcy Rule 2004 And Protective Order Respecting Confidentiality Of Documents ("PG&E Order"), unless either (i) there is a further order of the Bankruptcy Court permitting such disclosure, or (ii) the Affected Market Participant(s) do not timely object to the disclosure after the notification procedures in subpart (H), above or in paragraph 5(H) of the PG&E Order. Nothing in this Protective Order shall be deemed to restrict an Outside Professional's use or disclosure of Responsive Information which pertains only to the Market Participant such Outside Professional represents and does not contain any reference to or identification of any other Market Participant. Nothing in this Order shall preclude a Market Participant from seeking a subsequent Federal Bankruptcy Rule 2004 Order, or utilizing other applicable discovery procedures, in this or any other bankruptcy proceeding for the purpose of seeking documents and information concerning that specific Market Participant's claims and defenses or for any other purpose authorized by the applicable rules.



6. On or before August 15, 2001, if a Market Participant wishes to disclose Responsive Information to persons other than its Outside Professionals, including, without limitation the Market Participant's employees, officers or directors ("Key Personnel"), then the Market Participant ("Movant"), shall file papers stating the (1) the names and position of the Key Personnel, or alternatively why disclosure of any name is not appropriate, (2) the reasons why the Responsive Information or any part thereof must be disclosed to such Key Personnel, (3) the measures that will be taken to prevent disclosure of the Responsive Information or any of the information therein to anyone not entitled to access thereof (including those employees who are engaged in trading in the wholesale electricity markets) and (4) any legal authorities in addition to those already cited by the parties in papers filed in connection with the June 28, 2001 hearing that the Movant wishes the Court to consider. These papers should be in the form of, or supported by, appropriate declarations. A separate motion need not be prepared. The papers must be served so as to be <u>received</u> by counsel for PG&E, PG&E's Official Committee of Unsecured Creditors ("OCC"), the Office of the United States Trustee ("UST"), the PX, the ISO, the PX Committee and all other Market Participants of the ISO and the PX on or before August 15, 2001. On or before August 24, 2001, any party opposing the relief sought by Movant shall file and serve any opposition on the Movant, PG&E, OCC and UST in the same manner as set forth above. No reply papers shall be filed. On August 30, 2001 at 10:00 a.m., the Court has scheduled a hearing to consider any Movant's papers and any filed opposition thereto.

7. Nothing in this Order shall preclude a party from seeking modifications thereto upon proper motion to the Court.

DATED: July 11, 2001

HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

# REQUEST FOR PRODUCTION OF DOCUMENTS FROM THE CALIFORNIA INDEPENDENT SYSTEM OPERATOR

*DEFINITIONS AND INSTRUCTIONS*

The following definitions and instructions apply to each of these requests (collectively, the "Requests").

1. Any capitalized terms not defined herein shall have the meaning set forth in the Bankruptcy Code (11 U.S.C. §§ 101 et seq.).

2. The rules of construction pursuant to 11 U.S.C. § 102 apply to these Requests.

3. "ISO" means individually or collectively, the California Independent System Operator Corporation, and its employees, agents and representatives.

4. "PX" means individually or collectively, the California Power Exchange, and its employees, agents and representatives.

5. "Real-Time" market refers to the market controlled and coordinated by the ISO for arranging real-time imbalance power.

6. "Day-Ahead" market refers to the forward market for the buyers and sellers of electrical power the day before delivery.

7. "Hour-Ahead" market refers to the market for the buyers and sellers of electrical power two-hours before delivery.

8. "Scheduling Coordinator" is an entity authorized to submit to the ISO a balanced generation or demand schedule on behalf of one or more generators or one or more buyers of electricity.

9. "Document" means any documents, writings, recordings or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001, Federal Rule of Civil Procedure 34(a) and Federal Bankruptcy Rule 7034, including, but not limited to, books and records, invoices, receipts, check ledgers, journals, ledgers, bank statements, books of accounts, workpapers, agreements, contracts, messages, analyses, records of payment and collection, notes, notations, correspondence, interoffice or intraoffice

communications, transcripts, memoranda, logbooks, diaries, data in the memory of a computer, or any other machine-readable matter, reports, press releases, summaries, projections, tabulations, cancelled or uncancelled checks or drafts, reports or opinions of consultants or counsel, accountant's or auditors' reports or opinions, valuations, and financial statements; this definition encompasses not only originals but also any copy containing or having attached thereto any alterations, notes, comments or other material not appearing on the original or any other copy not containing such material and shall also include drafts, revisions of drafts and other preliminary materials, from whatever source, underlying, supporting or used in the preparation of any Document.

10. "Related to" or "relating to" means constituting, defining, evidencing, containing, describing, concerning, discussing, embodying, reflecting, analyzing, stating, referring to or dealing with.

11. These Requests includes all Documents in your or your attorneys', accountants' or any other agents' or representatives' possession, custody or control, wherever those Documents are located.

12. To the extent that the Documents requested herein are not produced as they are kept in the usual course of business, then for each Document produced, indicate the letter or letters of the Requests below for which the Document is responsive.

13. If any Request is objected to, please state the legal grounds for the objection.

14. If any Document or thing requested herein is withheld by you on the basis of privilege, immunity, confidentiality, or any other ground, you are hereby requested to provide concurrently with your production of responsive Documents, the following information regarding each Document withheld:

 a. the name(s) of the sender(s) and author(s) of the Document;

 b. the name(s) of the person(s) currently in possession of such Document;

 c. the name(s) of the person(s) to whom the Document or copies of the Document were transmitted or provided;

 d. the date(s) on which the Document was prepared or written and the date(s)

on which it was transmitted or provided;

  e. the specific place (including name(s) of file(s) where the Document is now located);

  f. a description of the subject matter of the Document; and

  g. the statute, rule or decision which are claimed to give rise to the privilege or other reason for withholding the Document.

15. To the extent that a Document responsive to these Requests exists in an electronic format, these Requests seek production in that format, and, wherever applicable, provide such Documents in the same electronic format that the ISO provides to its Scheduling Coordinators.

## DOCUMENTS TO BE PRODUCED

A. The monthly preliminary invoices for each ISO Scheduling Coordinator from May 1, 2000 through the date of production.

B. The monthly final invoices for each ISO Scheduling Coordinator from May 1, 2000 through the date of production.

C. Summary statements of all disbursements and remaining balances owed to or from each ISO Scheduling Coordinator and certifications for market settlements from May 1, 2000 through the date of production.

D. All final settlement statements and all supporting documentation, including but not limited to "imbalance energy/no pay settlement detail files," for each ISO Scheduling Coordinator from May 1, 2000 through the date of production.

E. All Documents memorializing disputes submitted by each ISO Scheduling Coordinator to the ISO, the ISO's responses to the disputing Scheduling Coordinators, and the resolutions of such disputes, for trade dates beginning January 1, 1999 through the date of production.

F. All Documents identified as Attachments D through L in the April 9, 2001 letter from J. Phillip Jordan of the ISO to David Boergers of the Federal Energy Regulatory Commission. (A copy of the list of Attachments D and L from the Jordan letter is provided

as Exhibit 1 to this request.)

G.  The following schedules from February 1, 2001 to the date of production: (1) import and export schedules, (2) within-area generation schedules, (3) real-time energy schedules, and (4) ancillary services schedules.

H.  All reports, analyses and data compilations relating to price increases in California's wholesale electricity markets since May 2000. (By way of example, "relating to price increases in California's wholesale electricity markets since May 2000" refers to Documents such as those reports published by the ISO including, *Empirical Evidence of Strategic Bidding In California ISO Real Time Market*, prepared by Anjali Sheffrin (March 21, 2001); *Further Analyses of the Exercise and Cost Impacts of Market Power In California's Wholesale Energy Market*, prepared by Eric Hildebrandt (March 2001); and *Impacts of Market Power In California's Wholesale Energy Market;* and *More Detailed Analysis Based on Individual Seller Schedules and Transactions in the ISO and PX Markets*, prepared by Eric Hildebrandt (April 9, 2001)).

I.  All Documents relating to data used or relied on to prepare the reports, schedules, analyses, and data compilations described in Requests F, G and H above.

J.  All bid data, including but not limited to, Day-Ahead and Hour-Ahead ancillary services bids, supplemental energy bids, out of market calls and adjustment bids in markets controlled or operated by the ISO or the PX, from May 1, 2000 through the date of production.

WD 052901/1-1419948/920658/v1

4
REQUEST FOR PROD. OF DOCS FROM THE CAL. ISO (EXH. A)

# EXHIBIT B

## REQUEST FOR PRODUCTION OF DOCUMENTS FROM THE CALIFORNIA POWER EXCHANGE

*DEFINITIONS AND INSTRUCTIONS*

The following definitions and instructions apply to each of these requests (collectively, the "Requests").

1. Any capitalized terms not defined herein shall have the meaning set forth in the Bankruptcy Code (11 U.S.C. §§ 101 et seq.).

2. The rules of construction pursuant to 11 U.S.C. § 102 apply to these Requests.

3. "PX" means individually or collectively, the California Power Exchange, and its employees, agents and representatives.

4. "ISO" means individually or collectively, the California Independent System Operator Corporation, and its employees, agents and representatives.

5. "Participant" means the wholesale electricity suppliers and purchasers that participate in any of the PX's markets, including without limitation the PX Core market and the California Trading Services markets.

6. "Real-Time" market refers to the market controlled and coordinated by the ISO for arranging real-time imbalance power.

7. "Day-Ahead" market refers to the forward market for the buyers and sellers of electrical power the day before delivery.

8. "Day-Of" market refers to the market for the buyers and sellers of electrical power for schedule adjustments performed hours before the flow of energy.

9. "Scheduling Coordinator" is an entity authorized to submit to the ISO a balanced generation or demand schedule on behalf of one or more generators or one or more buyers of electricity.

10. "Document" means any documents, writings, recordings or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001, Federal Rule of Civil Procedure 34(a) and Federal Bankruptcy Rule 7034, including, but not limited to, books and records, invoices, receipts, check ledgers, journals, ledgers, bank statements,

books of accounts, workpapers, agreements, contracts, messages, analyses, records of payment and collection, notes, notations, correspondence, interoffice or intraoffice communications, transcripts, memoranda, logbooks, diaries, data in the memory of a computer, or any other machine-readable matter, reports, press releases, summaries, projections, tabulations, cancelled or uncancelled checks or drafts, reports or opinions of consultants or counsel, accountant's or auditors' reports or opinions, valuations, and financial statements; this definition encompasses not only originals but also any copy containing or having attached thereto any alterations, notes, comments or other material not appearing on the original or any other copy not containing such material and shall also include drafts, revisions of drafts and other preliminary materials, from whatever source, underlying, supporting or used in the preparation of any Document.

11. "Related to" or "relating to" means constituting, defining, evidencing, containing, describing, concerning, discussing, embodying, reflecting, analyzing, stating, referring to or dealing with.

12. These Requests includes all Documents in your or your attorneys', accountants' or any other agents' or representatives' possession, custody or control, wherever those Documents are located.

13. To the extent that the Documents requested herein are not produced as they are kept in the usual course of business, then for each Document produced, indicate the letter or letters of the Requests below for which the Document is responsive.

14. If any Request is objected to, please state the legal grounds for the objection.

15. If any Document or thing requested herein is withheld by you on the basis of privilege, immunity, confidentiality, or any other ground, you are hereby requested to provide concurrently with your production of responsive Documents, the following information regarding each Document withheld:

    a. the name(s) of the sender(s) and author(s) of the Document;

    b. the name(s) of the person(s) currently in possession of such Document;

    c. the name(s) of the person(s) to whom the Document or copies of the

1 Document were transmitted or provided;

2     d. the date(s) on which the Document was prepared or written and the date(s)
3 on which it was transmitted or provided;

4     e. the specific place (including name(s) of file(s) where the Document is now
5 located);

6     f. a description of the subject matter of the Document; and

7     g. the statute, rule or decision which are claimed to give rise to the privilege or
8 other reason for withholding the Document.

9     16. To the extent that a Document responsive to these Requests exists in an
10 electronic format, these Requests seek production in that format, and, wherever applicable,
11 provide such Documents in the same electronic format that the PX provides to its
12 Participants.

## DOCUMENTS TO BE PRODUCED

A. The monthly preliminary Real Time invoices for each Participant from May 1, 2000 through the date of production.

B. The monthly final Day Ahead / Day Of invoices and the monthly final Real Time invoices for each Participant from May 1, 2000 through the date of production.

C. Account summary statements of all disbursements and remaining balances owed to or from each Participant from May 1, 2000 through the date of production.

D. All final settlement statements and all supporting documentation, including but not limited to "IE Reports," "IE Part Reports," "IE Intertie Reports," and "Deviation Reports," for each Participant from May 1, 2000 through the date of production.

E. All Documents memorializing disputes submitted by each Participant to the PX, the PX's responses to the disputing Participant, and the resolutions of such disputes, for trade dates beginning January 1, 1999 through the date of production. This shall include, without limitation, all "ISO Dispute Response" spreadsheets provided to each Participant for trade dates beginning January 1, 1999 through the date of production.

F. [No request]

G. [No request]

H. All reports, analyses and data compilations relating to price increases in California's wholesale electricity markets since May 2000. (By way of example, "relating to price increases in California's wholesale electricity markets since May 2000" refers to Documents such as those reports published by the PX including, *Price Movements in California, Power Exchange Markets, Analysis of Price Activity, May-September 2000* (November 1, 2000)).

I. All Documents relating to data used or relied on to prepare the reports, analyses, and data compilations described in Request H above.

J. All bid data, including but not limited to, Day-Ahead and Hour-Ahead energy bids, Day-Ahead and Hour-Ahead ancillary services bids, supplemental energy bids and adjustment bids in markets controlled or operated by the ISO or the PX, from May 1, 2000 through the date of production.

WD 053001/1-1419948/mkc/920694/v1

# EXHIBIT C

## NON-DISCLOSURE CERTIFICATE

I hereby certify my understanding that access to Responsive Information is provided to me pursuant to the terms and restrictions of the Order Directing Production Of Documents To ISO/PX Market Participants Pursuant To Federal Bankruptcy Rule 2004 And Protective Order Respecting Confidentiality Of Documents (the "Order"), entered by the United States Bankruptcy Court on July __, 2001, a copy of which is attached hereto. I further certify that I have read the Order, understand its provisions respecting the confidential treatment of documents, and agree to be bound by the Order.

By: _____
Title: _____
Date: _____