1                    UNITED STATES BANKRUPTCY COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3                               -oOo-

4    In Re:                        ) Case No. 19-30088
                                   ) Chapter 11
5    PG&E CORPORATION AND PACIFIC  )
     GAS AND ELECTRIC COMPANY      ) San Francisco, California
6                                  ) Tuesday, June 11, 2019
                        Debtors.   ) 9:30 AM
7    _____ )
                                     [2048] MOTION FOR RELIEF FROM
8                                    STAY FILED BY WENDY NATHAN.

9                                    [2171] APPLICATION PURSUANT
                                     TO 11 U.S.C. SECTIONS 327(A)
10                                   AND 328(A) AND FED. R. BANKR.
                                     P. 2014(A) AND 2016 FOR
11                                   AUTHORITY TO RETAIN AND
                                     EMPLOY KPMG LLP AS
12                                   INFORMATION TECHNOLOGY, RISK,
                                     AND LEGAL SUPPORT CONSULTANTS
13                                   TO THE DEBTORS NUNC PRO TUNC
                                     TO PETITION DATE.
14
                                     [2193] APPLICATION OF DEBTORS
15                                   PURSUANT TO 11 U.S.C. SECTION
                                     327(E) AND FED. R. BANKR. P.
16                                   2014(A) AND 2016 FOR
                                     AUTHORITY TO RETAIN MORRISON
17                                   & FOERSTER LLP AS SPECIAL
                                     REGULATORY COUNSEL FOR THE
18                                   DEBTORS EFFECTIVE AS OF THE
                                     PETITION DATE.
19
                         TRANSCRIPT OF PROCEEDINGS
20               BEFORE THE HONORABLE DENNIS MONTALI
                    UNITED STATES BANKRUPTCY JUDGE
21
     APPEARANCES:
22   For the Debtors:             TOBIAS S. KELLER, ESQ.
                                  Keller & Benvenutti LLP
23                                650 California Street
                                  Suite 1900
24                                San Francisco, CA 94108
                                  (415)796-0709
25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

| | | |
|---|---|---|
| 1 | For the Debtors: | HONG-AN N. TRAN, ESQ. |
| | | Weil, Gotshal & Manges LLP |
| 2 | | 201 Redwood Shores Parkway |
| | | Redwood Shores, CA 94065 |
| 3 | | (650)802-3098 |
| 4 | For Wendy Nathan: | MATTHEW J. OLSON, ESQ. |
| | | Macdonald Fernandez LLP |
| 5 | | 221 Sansome Street |
| | | San Francisco, CA 94104 |
| 6 | | (415)362-0449 |
| 7 | For Wendy Nathan: | SETH I. ROSENBERG, ESQ. |
| | | (Telephonically) |
| 8 | | Emergent LLP |
| | | 5 Third Street |
| 9 | | Suite 1000 |
| | | San Francisco, CA 94103 |
| 10 | | (415)894-9284 |
| 11 | For High Speed Rail | PAUL J. PASCUZZI, ESQ. |
| | Authority and California | (Telephonically) |
| 12 | Air Resources Board: | Felderstein Fitzgerald Willoughby |
| | | & Pascuzzi LLP |
| 13 | | 400 Capitol Mall |
| | | Suite 1750 |
| 14 | | Sacramento, CA 95814 |
| | | (916)329-7400 |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | Court Recorder: | JANE GALVANI |
| | | United States Bankruptcy |
| 19 | | Court |
| | | 450 Golden Gate Avenue, 16th Floor |
| 20 | | San Francisco, CA 94102 |
| 21 | Transcriber: | PENINA WOLICKI |
| | | eScribers, LLC |
| 22 | | 7227 N. 16th Street |
| | | Suite #207 |
| 23 | | Phoenix, AZ 85020 |
| | | (973)406-2250 |
| 24 | | |
| 25 | Proceedings recorded by electronic sound recording; transcript provided by transcription service. | |

PG&E Corporation; Pacific Gas And Electric Co.

SAN FRANCISCO, CALIFORNIA, TUESDAY, JUNE 11, 2019, 9:31 AM

1

-oOo-

2

(Call to order of the Court.)

3

THE COURT:  Good morning.

4

IN UNISON:  Good morning, Your Honor.

5

THE COURT:  Please be seated.

6

THE CLERK:  Matter of PG&E Corporation.

7

THE COURT:  Mr. Keller, good morning.

8

MR. KELLER:  Good morning, Your Honor.  I think we

9

have a mercifully brief calendar, knock on wood.

10

Unless the Court has any comments, we'll just dive

11

right into the agenda today.

12

THE COURT:  I not only have no comments on two of

13

them, on MoFo and KPMG, I'm satisfied they're in order.  As

14

long as I get a confirmation from counsel for the State of

15

California -- the Resources Board that they're satisfied with

16

the form of order --

17

MR. KELLER:  I don't know if they're present here

18

today.  They have signed off on the form of order that was

19

submitted.

20

THE COURT:  Well, let's see, on the telephone, is Mr.

21

Pascuzzi on the phone?

22

MR. PASCUZZI:  Yes, Your Honor.  Good morning.  Paul

23

Pascuzzi, Felderstein Fitzgerald Willoughby & Pascuzzi, co-

24

counsel with the California Attorney General's Office, for the

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corporation; Pacific Gas And Electric Co.

1    High Speed Rail Authority and the Air Resources Board.  And we

2    have signed off on the proposed order.  And we appreciate KPMG

3    working with us to resolve the issues.

4            THE COURT:  So Mr. Keller, then, unless there's anyone

5    else in court or on the phone that wants to be heard on those

6    two applications, we don't have to waste any more time on it.

7            MR. KELLER:  We will upload orders, Your Honor, and I

8    will turn the --

9            THE COURT:  They'll both be approved as filed with the

10   modifications.  I'll look forward to seeing the orders.

11           MR. KELLER:  Very good.

12           THE COURT:  Okay.

13           MR. KELLER:  I will turn the podium to An Tran, from

14   Weil Gotshal, who'll be handling the relief from stay motion.

15           THE COURT:  Okay, thank you.

16           Good morning.

17           MS. TRAN:  Good morning, Your Honor.  An Tran with

18   Weil Gotshal, on behalf of the debtors.  I'll be brief.  So our

19   office --

20           THE COURT:  Wait.  Let's see if we get -- let me get

21   the debtors' (sic) counsel.

22           Mr. Olson, are you here?

23           And then I'll let you speak.

24           MS. TRAN:  Sure.

25           THE COURT:  I didn't mean to cut you off.  I just

PG&E Corporation; Pacific Gas And Electric Co.

1    wanted to get the appearances.

2          MR. OLSON:  Thank you, Your Honor.  Matt Olson for

3    Wendy Nathan.  And I believe Ms. Nathan's state court counsel

4    is on the phone as well, Mr. Rosenberg.

5          THE COURT:  Okay, thank you.

6          All right, counsel.

7          MR. ROSENBERG:  Good morning, Your Honor.  This is

8    Seth Rosenberg appearing on CourtCall for plaintiff, Wendy

9    Nathan, as well.

10         THE COURT:  And what's -- tell me what the debtors --

11   no, from the debtor.  I know what the issues are, Mr. Olson and

12   Mr. Rosenberg.  And I understand why they're here again.  But

13   tell me what your reply to this argument is, please?

14         MS. TRAN:  Yeah.  And our opposition papers and Your

15   Honor's tentative ruling and the May 12th memorandum decision

16   on the Gelman and Valero motions, sufficiently set forth why

17   Ms. Gelman's (sic) relief from stay should not be granted

18   today.

19         As Your Honor is fully aware and has recognized, more

20   time is needed for the debtors to attend to the litany of

21   issues in its restructuring efforts before having to resume

22   defensive tort actions such as the Nathan litigation.

23         And specifically, to quote Your Honor's May 12th

24   decision on the Gelmans' motion, which is substantially similar

25   to the Nathan motion that's at issue today, there's too much at

PG&E Corporation; Pacific Gas And Electric Co.

1    stake in needing to craft the contours of the reorganization

2    than to require a debtor this soon to tackle specific

3    individual cases.

4          And so if Your Honor is not inclined to deny

5    claimant's request for relief from stay today, the debtors

6    respectfully request and ask that Your Honor adopt the

7    tentative ruling and continue to the September 10th hearing.

8          THE COURT:  Okay.  Mr. Olson, I -- again, I thought

9    you would probably accept my ruling, but you didn't, so tell me

10   what's wrong with it and why I should make a change here, given

11   the history and where we are.

12         MR. OLSON:  Yes, Your Honor.  I think at bottom the

13   issue, as has been framed, is really why is relief from stay

14   necessary now.

15         THE COURT:  Correct.

16         MR. OLSON:  And the issue is --

17         THE COURT:  Compared to, really, not too far in the

18   future.

19         MR. OLSON:  Yes, Your Honor.  And I appreciate that.

20         The difference is that the state court has instructed

21   the other parties in this litigation to participate in

22   mediation in the next few months, before the September proposed

23   hearing date.  And given that this is the last in a series of

24   five lawsuits, claims about the same utility box in the

25   sidewalk in Oakland, the prior four having been resolved pre-

PG&E Corporation; Pacific Gas And Electric Co.

1    petition --

2            THE COURT:  All consensually?

3            MR. OLSON:  All consensually, all in which PG&E

4    accepted and paid eighty to one hundred percent of the damages,

5    it makes -- it makes sense to us to resolve this all now, not

6    put this off.

7            And while Ms. Nathan will, of course, because of the

8    bankruptcy laws, wait to enforce her claim, pursuant to a plan,

9    the real issue is that everyone else is ready now.  And waiting

10   for the claims allowance process really doesn't do a whole lot

11   for us, because all we're going to end up doing is going back

12   to the state court anyways, because mandatory abstention almost

13   certainly applies here.

14           THE COURT:  Well, your motion -- your motion looks for

15   a little of everything.  But even mandatory abstention still

16   has relief from stay gating issues, don't you think?

17           Mandatory abstention, if it applies here, isn't a free

18   pass for relief from stay, right?

19           MR. OLSON:  No, Your Honor.  It --

20           THE COURT:  I mean, do you agree with that or disagree

21   with that?

22           MR. OLSON:  Well, I think mandatory abstention is -- I

23   think the cases in the Ninth Circuit recognize that mandatory

24   abstention can be cause for relief from stay.

25           THE COURT:  Well, but the reverse is true too.  A

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas And Electric Co.

1    reason to deny relief from stay doesn't -- isn't overtaken or

2    overridden by a theoretical entitlement to mandatory

3    abstention.

4         MR. OLSON:  I understand that, Your Honor.  And I

5    agree with that.

6         THE COURT:  Okay.

7         MR. OLSON:  I think the issue here is if the claims

8    allowance process is only going to -- is likely to end up back

9    in state court anyways, why not settle this now, resolve it

10   now?  It's not going to take that much of the debtors'

11   attention away from the contours of a plan.

12        THE COURT:  Well, that may be true, and I -- if you

13   said that the state court had ordered mediation already before

14   September, I might have focused on that, but I don't think you

15   said that in the paper.  Did I miss that in the motion?

16        MR. OLSON:  I believe we addressed it.

17        THE COURT:  Well, show me where that is.  Again, I

18   don't know if it'll change my mind, but I thought I reviewed

19   the situation to see what the difference was.

20        I mean, I'm -- let me make sure we're clear here.

21   This is not directed at Ms. Nathan or making light of her

22   injury any more than it was Ms. Gelman's or any other of the

23   many people -- not fire victims, but other victims of other

24   torts, whether PG&E is or may be found liable.  It's still

25   their injury and it's important.  And it's important to me.

PG&E Corporation; Pacific Gas And Electric Co.

1    But am I -- let's go back to my question.  Did I

2    overlook that there's a mandatory mediation scheduled?

3    MR. OLSON:  Your Honor, it's in the motion at docket

4    2048 at page 3 line 6.  "The Superior Court has ordered the

5    parties" -- and "parties" here are referring to the non-PG&E

6    parties -- "to participate in mediation before August 30th."

7    THE COURT:  I'm sorry, I'm not finding it.  Line 6 --

8    page 6?

9    MR. OLSON:  Page 3, line 6.

10    THE COURT:  Okay.  Try again.  Small print.  I get

11    small print from you, for some reason, not the large print.

12    MR. OLSON:  I apologize, Your Honor.

13    THE COURT:  No, you don't have to apologize.

14    Well, have you explored the possibility of talking to

15    counsel about just agreeing to the mediation?

16    MR. OLSON:  We asked the debtor to agree to --

17    agreeing just to do the mediation, and the debtor was not

18    inclined to agree to that.

19    THE COURT:  Well, I mean, let me -- well, let's

20    pretend that I know what's going to happen.  I presume the

21    mediation will occur on one particular day in one particular

22    place in front of one particular judicial officer or -- and

23    there will be a back-and-forth about the issues.  Or is there

24    more to that?  Is there more depositions, more discovery, more

25    testimony?  Is it going to be a quick type of mediation or is

PG&E Corporation; Pacific Gas And Electric Co.

1   it going to be sort of a pre-trial something-or-other?  Or do

2   you know?

3           MR. OLSON:  My understanding of it, and --

4           MR. ROSENBERG:  Your Honor --

5           MR. OLSON:  -- Mr. Rosenberg can --

6           MR. ROSENBERG:  -- this is Seth Rosenberg appearing on

7   CourtCall.  I think I can address that, being the state court

8   attorney.

9           We're ready to go for mediation with no additional

10  discovery, nothing else is needed.  Because of the four prior

11  actions, we have all that we need evidentiary-wise with respect

12  to PG&E.

13          I would expect it would be exactly as you said, Your

14  Honor.  One day, one judicial officer, a half-day, that

15  initially would be -- the amount would be agreed upon.

16          THE COURT:  Well --

17          MR. ROSENBERG:  And I think there will be another

18  solution that we would seek is just maybe just have the stay

19  lifted just for mediation and then if that's unsuccessful, then

20  we could go back to where we were and revisit the issue later.

21  But I think that would be a compromise that we would be

22  accept -- we would find acceptable.

23          THE COURT:  Mr. Rosenberg, again, there's so many

24  firms and cases to keep track of, and I don't remember

25  specifically.  The company -- PG&E has other outside counsel in

PG&E Corporation; Pacific Gas And Electric Co.

1    the state court suit in this matter, not the principal

2    bankruptcy counsel, right?

3    MR. ROSENBERG:  That's correct, Your Honor.  And we

4    worked on multiple of the occasions with that outside counsel,

5    and have good familiarity and relationships with those guys.

6    THE COURT:  Well, do any of the lawyers here -- any of

7    you, on either side, believe that the automatic stay is

8    implicated just to have a mediation?

9    Does the debtor believe that the stay is implicated?

10   I mean, I can go out in the hall, if I were a lawyer -- if I

11   sent you out in the hall to see if you could cut a deal with

12   somebody, and you came back and said we've got an agreement,

13   does that violate the stay?

14   MS. TRAN:  Your Honor, to the extent that it's a

15   court-ordered mediation, and requires from the estate, then we

16   would say that yes, it does.

17   THE COURT:  But what if it isn't a court-ordered

18   mediation?  What if the lawyer for the debtor -- a lawyer for

19   the debtor says to a lawyer for the claimant, look, we might

20   put this to bed if your client would agree to a claim of X

21   dollars, and the other side says yeah, we can live with that;

22   done.  Claim liquidated.  End of story.

23   I don't think the automatic stay, if it's implicated

24   at all, is an impediment.  Do you think that that's a problem?

25   MS. TRAN:  We would agree if it's -- if it's not a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas And Electric Co.

1    court-ordered.

2         THE COURT:  Well, here I mean -- but I mean, what if

3    it isn't court-ordered, but I tell you to go do it anyway?

4    Somebody ought to go to that mediation -- I mean, look, let me

5    try it a different way.  And this is not focused on Ms.

6    Nathan's situation or what Mr. Olson or Mr. Rosenberg told me.

7         I believe debtors' counsel have counted somewhere

8    along the line around a hundred claims that are in the pipeline

9    somewhere that are not the wildfire claims, they're not

10   multimillion dollar claims arising out of a refinery meltdown

11   like at Valero.  They are people like the Gelmans and Ms.

12   Nathan and other people who, but for the bankruptcy that was

13   precipitated by the wildfires, would have had their day in

14   court in the run-of-the-mill -- if that's a term that can be

15   used, which I don't mean to say it that way, because I think

16   that term is misused, and I've commented on others' misuse of

17   the term, because it's not run-of-the-mill for the victim.

18        But my point is this.  PG&E filed bankruptcy for some

19   very, very significant reasons.  And had those reasons not

20   precipitated the bankruptcy, cases like Ms. Nathan's, in the

21   superior court, whether they go to mediation or go to a jury

22   trial or go to a court trial, they would be business as usual.

23        And the question is when do we get back to business as

24   usual of the utility defending and winning, where appropriate,

25   or losing tort claims that came about by just the -- what goes

PG&E Corporation; Pacific Gas And Electric Co.

1   with the territory when you run a multibillion dollar utility?

2   The answer is, like any other big company, whether it be a

3   delivery company or a retail store, or a chain of grocery

4   stores -- I mean, chains of grocery stores have slip-and-fall

5   cases, and power companies have people who have tripped on

6   power boxes.

7        And so I was persuaded and have been persuaded to

8   maintain the status quo.  And that was my thinking in the

9   Gelman case, and that was my thinking in the tentative ruling

10  on Ms. Nathan's case.  But to me, it's one of those thing where

11  to get to the point where Ms. Nathan at least knows two things:

12  if she has an agreement that she's entitled to X dollars and

13  she knows that X minus whatever she recovers from other

14  defendants will be an allowed claim in the PG&E bankruptcy,

15  that's not a huge burden.  It doesn't interfere with the

16  reorganization.  I doubt that it has any significant impact on

17  the more enormously complex issue of determining who are the

18  fire victims, what are their claims, where's the liability, and

19  so on.

20       And my problem is, if I stick with my tentative, which

21  puts an imposition on Ms. Nathan and her counsel -- not the end

22  of the world -- I'm sure that the mediation and everything else

23  could be done in September, if it could be done in August.  But

24  the question is when do I decide it's time for the utility to

25  get back to running its business as usual, which includes

        PG&E Corporation; Pacific Gas And Electric Co.

1   dealing with the run-of-the-mill ordinary-course-of-business

2   kind of tort liability?

3          And so I'm thinking out loud.  I'm not asking you,

4   counsel, to give me an answer.  But I'm asking if you can give

5   me why it isn't appropriate to start letting people like Ms.

6   Nathan and others have at least the process for liquidating

7   their claims, which are not going to be anywhere like the vast

8   amount of liquidation analysis that's going to take place with

9   the fire claims?

10        MS. TRAN:  And this case is substantially similar to

11   the Gelman litigation.

12        THE COURT:  Right.

13        MS. TRAN:  There's concerns about opening the

14   floodgates and having other similar claims come rather than go

15   through the claims process.  And as you stated specifically in

16   your decision on the Gelman motion, it is still too early in

17   these complex reorganization cases to force the debtors to

18   defend the claims of movants in two different courts while at

19   the same time attempting to make progress toward the goal of a

20   successful reorganization.  It is much far more preferable to

21   make progress towards the goal before the individual claims can

22   be dealt with.

23        And you had continued that hearing until --

24        THE COURT:  No, I know.  I know that.

25        MS. TRAN:  -- September.  And --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas And Electric Co.

1    THE COURT:  And I haven't -- I'm going to go back and

2  revisit that.  But I'm asking you to tell me, well, what's --

3  let's pretend it's September.  What's different?  What's going

4  to happen between now and September.

5    Again, I don't -- I'm not here to beat on you for

6  figuring out how to deal with hundreds and thousands of tort

7  claims -- of fire victim claims.  I'm asking you to tell me

8  what's going to happen for maybe a hundred everyday, course-of-

9  business type tort claims that happen when people trip on

10  concrete boxes holding power equipment or all the other kinds

11  of things that are -- PG&E trucks, unfortunately, might bump

12  into people out on the street.  That's the course of business

13  stuff.

14    MS. TRAN:  Sure.  And as you're aware, based on our

15  exclusivity motion, there's quite a bit going on in the

16  restructuring.

17    THE COURT:  Right.

18    MS. TRAN:  And between now and September, we can't,

19  for sure, know exactly what's going to happen and how we deal

20  with these specific claims, but that is time for us to

21  potentially maybe -- like you said -- talk to other claimants

22  and potentially get in -- engage in settlement discussion.

23  Essentially that there's nothing different from this case than

24  the Gelman case and the other hundred cases that are very

25  similar tort claims.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas And Electric Co.

1    And so to allow --

2    THE COURT:  Well, but it's -- it's no more than about

3  a hundred; isn't that correct?

4    MS. TRAN:  About a hundred, yeah.

5    THE COURT:  About a hundred, right?  And again, I'm

6  not -- it was a coincidence that Ms. Gelman's situation and the

7  Valero situation were on the same calendar.  That's where the

8  similarity ended.

9    And so I'm really looking at Ms. Gelman in the

10  rearview mirror and Ms. Nathan today and Mr. X next week for

11  these kinds of things that don't seem to need much more than

12  somebody agreeing on a dollar amount.

13    I mean, it almost takes no scientific or anything --

14  any other kind of methodology that might be involved in

15  estimating the vast fire claims to figure out what is the -- to

16  use a pejorative -- not a pejorative, but kind of a common term

17  in the PI world -- I mean, what's the going rate for the kind

18  of injury that Ms. Nathan suffered.

19    And people that are far more experienced than I am are

20  able to make a predicted estimate of likelihood of liability

21  and likelihood of outcomes for damages.  And I don't know

22  whether it's three figures or five figures or six figures, but

23  there is a dollar amount, consensually, that I suspect that Ms.

24  Nathan and her counsel would accept and the debtor would agree.

25  And it would be end of story, allowed claim.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas And Electric Co.

1    And then she might -- unfortunately, she might have to

2  wait a long, long time to get paid.  But that's unfortunate,

3  but that's not the case.

4    So I'll go back to the question of mediation.  So

5  there is -- again, I don't remember the specifics of Ms.

6  Gelman's case.  I don't need to.  Here, in Ms. Nathan's case,

7  we have outside counsel.  We have that counsel familiar with

8  the coincidence of four other instances of people being injured

9  at the same site in Oakland.  And we have a superior court that

10  said show up in August and try to mediate.  And if Ms. Nathan

11  says I want five million dollars, I suspect that somebody on

12  the debtors' side will say sorry, you're not going to get five

13  million dollars.  If Ms. Nathan says I'd like some other figure

14  that makes good economic sense, someone with client authority

15  will say we can live with that, shake hands, sign a simple

16  settlement agreement, and we're done.

17    So why is that an imposition on anyone at all?  That's

18  my question.  So I'm asking a rhetorical question.  If you

19  don't have an answer, you don't have it.  I'm not going to yell

20  at you.  But that's why I have to think, well, why not try to

21  mediate this claim; what's the harm?

22    MS. TRAN:  And Your Honor, to the extent that you

23  accept -- or that you adopt the tentative to continue the

24  hearing till September 30th, I think that that's something that

25  the debtors can negotiate or talk to counsel for Ms. Nathan

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas And Electric Co.

1   regarding the possibility of a settlement.

2           But to grant relief from stay and forcing the debtors

3   to engage in a court-ordered mediation is an imposition on the

4   estate and --

5           THE COURT:  What's the difference?  Suppose the

6   superior court had not ordered mediation, but I know and at

7   least the local counsel knew that that's the normal expectation

8   in the superior court in Oakland?  Again, it may be.  I just

9   don't know.

10          It's certainly an expectation in this court when we

11  have settlement negotiations on the things that we do.  And so

12  without trying to formalize it, if I said to the debtor --

13  debtors' special counsel who handles this defense, why can't

14  you go over to Oakland on August such-and-such a date and meet

15  with Mr. Rosenberg and his client and your client and see if

16  you can settle the case?  It seems like the world's easiest

17  thing.

18          Again, it doesn't mean that the company has to give

19  away something it believes it shouldn't be giving away.

20  There's no penalty for not settling.  The question is, isn't

21  there a benefit, another claim out of the way, to get it

22  settled?

23          Again, you don't have to answer this.  I'm just

24  telling you what my thinking is.  And so I'm -- I don't want to

25  get hung up on opening floodgates, but I have to be honest:  if

we had another tort claimant in Ms. Nathan's situation, when all we have is limited relief at this point, I don't know why I wouldn't do it.

So you know what? I'll stick with the tentative with one variation. To the extent that anybody believes an order is necessary, I will grant limited relief from stay to Ms. Nathan so that she can sit across the table with the proper lawyer representing the utility and that lawyer's client, for purposes of a mediation along the lines Mr. Rosenberg said.

And what that means is that maybe in August, Ms. Nathan will agree to an amount and the utility will agree to an amount, and that's the end of the problem, and we don't have to have a further hearing in September.

But this is another way of saying that by September, when -- well, let me clarify that. If there's no agreement in August, there's no agreement. There's no penalty. No one's going to be criticized. But come September, when Ms. Nathan's case is back on the calendar and Ms. Gelman's is, and who knows who else's is, I have to have a better sense as to what the utility is going to do to take care of this category of claims, at least for allowance purposes.

And I'll concede the point. Everyone's case is going to be a little bit different. But this case sounds like it's much easier to try to get it resolved. And the other -- the next one might be more difficult. So with that in mind I'll

eScribers (973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas And Electric Co.

1    say limited relief from stay for purposes of mediation to try

2    to do it under these circumstances.

3           So I'm going to take Mr. Rosenberg's representation

4    that this would be no more than one day, with all the --

5    everything is prepared.  And all we have to do is have the

6    debtors' litigation counsel and a client representative do

7    whatever the superior court expects of litigants to do, the way

8    that counsel and the client would be expected to participate,

9    had there been no bankruptcy.

10          And if the debtor and Ms. Nathan reach an agreement,

11   to me, that's not only good for them, it's good for the

12   process, because it means we've used the system without a huge

13   imposition.  It doesn't upset the orderly course of

14   administrating the case.  And it also, perhaps, gets one claim

15   resolved.

16          And to the extent that there may be multiple claims

17   that are more like Ms. Nathan's and less like some of the

18   unliquidated, highly emotional, fire claims, it may be that

19   there's a methodology to have a format grid or settlement model

20   to fit the other ninety-nine of the hundred that are on this

21   list, if you follow me.

22          So, okay.  So that's a long way of saying I'm going to

23   depart from the tentative for that limited purpose.

24          Mr. Olson, you need to draft something with debtors'

25   counsel's agreement on this for a form of order so that -- so

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas And Electric Co.

1    the lawyer going to participate in the mediation, and more

2    importantly, the settlement judge, understands that the

3    bankruptcy court has authorized this process.  Nobody is

4    violating the stay.  There's no rules.  The bankruptcy court is

5    not ordering that there be a settlement.  The bankruptcy court

6    is authorizing and directing, if you will, an attempt to settle

7    in accordance with the normal processes of the Alameda Superior

8    Court.

9         If there's no settlement, the motion for relief from

10   stay is continued on schedule to the September calendar.  And

11   if you come back to me in September and say we didn't get the

12   case settled, we'd like to go to trial, I'll listen to the

13   other side, and it may be that it won't happen.  I can't

14   promise you that.

15        So this is perhaps an invitation to Ms. Nathan, also,

16   to consider compromising and getting this thing out of the way.

17   Okay?

18             MR. OLSON:  Thank you, Your Honor.

19             THE COURT:  Is that acceptable?  Any questions about

20   that?

21             MS. TRAN:  No, Your Honor.

22             THE COURT:  Okay.  Thank you all for your --

23             MR. ROSENBERG:  No, Your Honor.  This is Seth

24   Rosenberg.  I just wanted to say thank you, Your Honor.

25             THE COURT:  All right, thanks very much.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas And Electric Co.

1          So Mr. Keller, I think that's it for our calendar,

2    right?

3          MR. KELLER:  Nothing further, Your Honor.

4          THE COURT:  Okay.  Thanks very much.  See you next

5    time.

6      (Whereupon these proceedings were concluded at 9:58 AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

I N D E X

RULINGS:                                                   PAGE  LINE

Application to retain KPMG LLP, approved.          4       9

Application to retain Morrison & Foerster,         4       9

approved.

Relief from stay is granted to the limited        19       5

extent of allowing for mediation, to

the extent mediation is affected by the

automatic stay.

escribers
(973)**-*** | operations@escribers.net | www.escribers.net

C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a
true and accurate record of the proceedings.



_____

/s/ PENINA WOLICKI, CET-569


eScribers

7227 N. 16th Street, Suite #207

Phoenix, AZ 85020


Date:  June 12, 2019

(973) 406-2250 | operations@escribers.net | www.escribers.net

**A**

**able (1)**
16:20
**abstention (6)**
7:12,15,17,22,24;8:3
**accept (4)**
6:9;10:22;16:24;
17:23
**acceptable (2)**
10:22;21:19
**accepted (1)**
7:4
**accordance (1)**
21:7
**across (1)**
19:7
**actions (2)**
5:22;10:11
**additional (1)**
10:9
**address (1)**
10:7
**addressed (1)**
8:16
**administrating (1)**
20:14
**adopt (2)**
6:6;17:23
**again (11)**
5:12;6:8;8:17;9:10;
10:23;15:5;16:5;17:5;
18:8,18,23
**agenda (1)**
3:12
**agree (9)**
7:20;8:5;9:16,18;
11:20,25;16:24;19:11,
11
**agreed (1)**
10:15
**agreeing (3)**
9:15,17;16:12
**agreement (7)**
11:12;13:12;17:16;
19:15,16;20:10,25
**Air (1)**
4:1
**Alameda (1)**
21:7
**allow (1)**
16:1
**allowance (3)**
7:10;8:8;19:21
**allowed (2)**
13:14;16:25
**almost (2)**
7:12;16:13
**along (2)**
12:8;19:9
**amount (6)**
10:15;14:8;16:12,23;

19:11,12
**analysis (1)**
14:8
**anyways (2)**
7:12;8:9
**apologize (1)**
9:12,13
**appearances (1)**
5:1
**appearing (2)**
5:8;10:6
**applications (1)**
4:6
**applies (2)**
7:13,17
**appreciate (2)**
4:2;6:19
**appropriate (2)**
12:24;14:5
**approved (1)**
4:9
**argument (1)**
5:13
**arising (1)**
12:10
**around (1)**
12:8
**attempt (1)**
21:6
**attempting (1)**
14:19
**attend (1)**
5:20
**attention (1)**
8:11
**Attorney (2)**
3:25;10:8
**August (6)**
9:6;13:23;17:10;
18:14;19:10,16
**Authority (2)**
4:1;17:14
**authorized (1)**
21:3
**authorizing (1)**
21:6
**automatic (2)**
11:7,23
**aware (2)**
5:19;15:14
**away (3)**
8:11;18:19,19

**B**

**back (11)**
7:11;8:8;9:1;10:20;
11:12;12:23;13:25;
15:1;17:4;19:18;21:11
**back-and-forth (1)**
9:23
**bankruptcy (10)**
7:8;11:2;12:12,18,

20;13:14;20:9;21:3,4,5
**based (1)**
15:14
**beat (1)**
15:5
**bed (1)**
11:20
**behalf (1)**
4:18
**believes (2)**
18:19;19:5
**benefit (1)**
18:21
**better (1)**
19:19
**big (1)**
13:2
**bit (2)**
15:15;19:23
**Board (2)**
3:16;4:1
**both (1)**
4:9
**bottom (1)**
6:12
**box (1)**
6:24
**boxes (2)**
13:6;15:10
**brief (2)**
3:10;4:18
**bump (1)**
15:11
**burden (1)**
13:15
**business (5)**
12:22,23;13:25;15:9,
12

**C**

**calendar (5)**
3:10;16:7;19:18;
21:10;22:1
**CALIFORNIA (3)**
3:1,16,25
**Call (1)**
3:3
**came (2)**
11:12;12:25
**can (12)**
7:24;10:5,7;11:10,
21;12:14;14:4,21;
17:15,25;18:16;19:7
**care (1)**
19:20
**case (14)**
13:9,10;14:10;15:23,
24;17:3,6,6;18:16;
19:18,22,23;20:14;
21:12
**cases (7)**
6:3;7:23;10:24;

12:20;13:5;14:17;
15:24
**category (1)**
19:20
**cause (1)**
7:24
**certainly (2)**
7:13;18:10
**chain (1)**
13:3
**chains (1)**
13:4
**change (2)**
6:10;8:18
**Circuit (1)**
7:23
**circumstances (1)**
20:2
**claim (8)**
7:8;11:20,22;13:14;
16:25;17:21;18:21;
20:14
**claimant (2)**
11:19;19:1
**claimants (1)**
15:21
**claimant's (1)**
6:5
**claims (23)**
6:24;7:10;8:7;12:8,9,
10,25;13:18;14:7,9,14,
15,18,21;15:7,7,9,20,
25;16:15;19:20;20:16,
18
**clarify (1)**
19:15
**clear (1)**
8:20
**CLERK (1)**
3:7
**client (7)**
11:20;17:14;18:15,
15;19:8;20:6,8
**co- (1)**
3:24
**coincidence (2)**
16:6;17:8
**commented (1)**
12:16
**comments (2)**
3:11,13
**common (1)**
16:16
**companies (1)**
13:5
**company (4)**
10:25;13:2,3;18:18
**Compared (1)**
6:17
**complex (2)**
13:17;14:17
**compromise (1)**
10:21

**compromising (1)**
21:16
**concede (1)**
19:22
**concerns (1)**
14:13
**concluded (1)**
22:6
**concrete (1)**
15:10
**confirmation (1)**
3:15
**consensually (3)**
7:2,3;16:23
**consider (1)**
21:16
**continue (2)**
6:7;17:23
**continued (2)**
14:23;21:10
**contours (2)**
6:1;8:11
**Corporation (1)**
3:7
**counsel (20)**
3:15,25;4:21;5:3,6;
9:15;10:25;11:2,4;
12:7;13:21;14:4;16:24;
17:7,7,25;18:7,13;20:6,
8
**counsel's (1)**
20:25
**counted (1)**
12:7
**course (3)**
7:7;15:12;20:13
**course-of- (1)**
15:8
**Court (66)**
3:3,4,6,8,11,13,21;
4:4,5,9,12,15,20,25;
5:3,5,10;6:8,15,17,20;
7:2,12,14,20,25;8:6,9,
12,13,17;9:4,7,10,13,
19;10:7,16,23;11:1,6,
17;12:2,14,21,22;
14:12,24;15:1,17;16:2,
5;17:9;18:5,6,8,10;
20:7;21:3,4,5,8,19,22,
25;22:4
**CourtCall (2)**
5:8;10:7
**court-ordered (5)**
11:15,17;12:1,3;18:3
**courts (1)**
14:18
**craft (1)**
6:1
**criticized (1)**
19:17
**cut (2)**
4:25;11:11

Case: 19-30088   Doc# 2491   Filed: 06/12/19   Entered: 06/12/19 07:14:52   Page 25
of 30

**D**

**damages (2)**
7:4;16:21
**date (2)**
6:23;18:14
**day (4)**
9:21;10:14;12:13;
20:4
**deal (3)**
11:11;15:6,19
**dealing (1)**
14:1
**dealt (1)**
14:22
**debtor (10)**
5:11;6:2;9:16,17;
11:9,18,19;16:24;
18:12;20:10
**debtors (7)**
4:18;5:10,20;6:5;
14:17;17:25;18:2
**debtors' (7)**
4:21;8:10;12:7;
17:12;18:13;20:6,24
**decide (1)**
13:24
**decision (3)**
5:15,24;14:16
**defend (1)**
14:18
**defendants (1)**
13:14
**defending (1)**
12:24
**defense (1)**
18:13
**defensive (1)**
5:22
**delivery (1)**
13:3
**deny (2)**
6:4;8:1
**depart (1)**
20:23
**depositions (1)**
9:24
**determining (1)**
13:17
**difference (3)**
6:20;8:19;18:5
**different (5)**
12:5;14:18;15:3,23;
19:23
**difficult (1)**
19:25
**directed (1)**
8:21
**directing (1)**
21:6
**disagree (1)**
7:20

**discovery (2)**
9:24;10:10
**discussion (1)**
15:22
**dive (1)**
3:11
**docket (1)**
9:3
**dollar (4)**
12:10;13:1;16:12,23
**dollars (4)**
11:21;13:12;17:11,
13
**done (4)**
11:22;13:23,23;
17:16
**doubt (1)**
13:16
**draft (1)**
20:24

**E**

**early (1)**
14:16
**easier (1)**
19:24
**easiest (1)**
18:16
**economic (1)**
17:14
**efforts (1)**
5:21
**eighty (1)**
7:4
**either (1)**
11:7
**else (4)**
4:5;7:9;10:10;13:22
**else's (1)**
19:19
**emotional (1)**
20:18
**end (6)**
7:11;8:8;11:22;
13:21;16:25;19:12
**ended (1)**
16:8
**enforce (1)**
7:8
**engage (2)**
15:22;18:3
**enormously (1)**
13:17
**entitled (1)**
13:12
**entitlement (1)**
8:2
**equipment (1)**
15:10
**Essentially (1)**
15:23
**estate (2)**

11:15;18:4
**estimate (1)**
16:20
**estimating (1)**
16:15
**even (1)**
7:15
**everyday (1)**
15:8
**everyone (1)**
7:9
**Everyone's (1)**
19:22
**evidentiary-wise (1)**
10:11
**exactly (2)**
10:13;15:19
**exclusivity (1)**
15:15
**expect (1)**
10:13
**expectation (2)**
18:7,10
**expected (1)**
20:8
**expects (1)**
20:7
**experienced (1)**
16:19
**explored (1)**
9:14
**extent (4)**
11:14;17:22;19:5;
20:16

**F**

**familiar (1)**
17:7
**familiarity (1)**
11:5
**far (3)**
6:17;14:20;16:19
**Felderstein (1)**
3:24
**few (1)**
6:22
**figure (2)**
16:15;17:13
**figures (3)**
16:22,22,22
**figuring (1)**
15:6
**filed (2)**
4:9;12:18
**find (1)**
10:22
**finding (1)**
9:7
**fire (6)**
8:23;13:18;14:9;
15:7;16:15;20:18
**firms (1)**

10:24
**fit (1)**
20:20
**Fitzgerald (1)**
3:24
**five (4)**
6:24;16:22;17:11,12
**floodgates (2)**
14:14;18:25
**focused (2)**
8:14;12:5
**follow (1)**
20:21
**force (1)**
14:17
**forcing (1)**
18:2
**form (3)**
3:17,19;20:25
**formalize (1)**
18:12
**format (1)**
20:19
**forth (1)**
5:16
**forward (1)**
4:10
**found (1)**
8:24
**four (3)**
6:25;10:10;17:8
**framed (1)**
6:13
**FRANCISCO (1)**
3:1
**free (1)**
7:17
**front (1)**
9:22
**fully (1)**
5:19
**further (2)**
19:13;22:3
**future (1)**
6:18

**G**

**gating (1)**
7:16
**Gelman (6)**
5:16;13:9;14:11,16;
15:24;16:9
**Gelmans (1)**
12:11
**Gelmans' (1)**
5:24
**Gelman's (5)**
5:17;8:22;16:6;17:6;
19:18
**General's (1)**
3:25
**gets (1)**

20:14
**given (2)**
6:10,23
**giving (1)**
18:19
**goal (2)**
14:19,21
**goes (1)**
12:25
**Good (13)**
3:4,5,8,9,23;4:11,16,
17;5:7;11:5;17:14;
20:11,11
**Gotshal (2)**
4:14,18
**grant (2)**
18:2;19:6
**granted (1)**
5:17
**grid (1)**
20:19
**grocery (1)**
13:3,4
**guys (1)**
11:5

**H**

**half-day (1)**
10:14
**hall (2)**
11:10,11
**handles (1)**
18:13
**handling (1)**
4:14
**hands (1)**
17:15
**happen (6)**
9:20;15:4,8,9,19;
21:13
**harm (1)**
17:21
**heard (1)**
4:5
**hearing (5)**
6:7,23;14:23;17:24;
19:13
**High (1)**
4:1
**highly (1)**
20:18
**history (1)**
6:11
**holding (1)**
15:10
**honest (1)**
18:25
**Honor (26)**
3:5,9,23;4:7,17;5:2,
7,19;6:4,6,12,19;7:19;
8:4;9:3,12;10:4,14;
11:3,14;17:22;21:18,

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(2) damages - Honor

Case: 19-30088    Doc# 2491    Filed: 06/12/19    Entered: 06/12/19 07:14:52    Page 26
of 30

21,23,24;22:3
**Honor's (2)**
5:15,23
**huge (2)**
13:15;20:12
**hundred (8)**
7:4;12:8;15:8,24;
16:3,4,5;20:20
**hundreds (1)**
15:6
**hung (1)**
18:25

**I**

**impact (1)**
13:16
**impediment (1)**
11:24
**implicated (3)**
11:8,9,23
**important (2)**
8:25,25
**importantly (1)**
21:2
**imposition (4)**
13:21;17:17;18:3;
20:13
**inclined (2)**
6:4;9:18
**includes (1)**
13:25
**individual (2)**
6:3;14:21
**initially (1)**
10:15
**injured (1)**
17:8
**injury (3)**
8:22,25;16:18
**instances (1)**
17:8
**instructed (1)**
6:20
**interfere (1)**
13:15
**into (2)**
3:12;15:12
**invitation (1)**
21:15
**involved (1)**
16:14
**issue (7)**
5:25;6:13,16;7:9;
8:7;10:20;13:17
**issues (5)**
4:3;5:11,21;7:16;
9:23

**J**

**judge (1)**
21:2

**judicial (2)**
9:22;10:14
**JUNE (1)**
3:1
**jury (1)**
12:21

**K**

**keep (1)**
10:24
**Keller (9)**
3:8,9,18;4:4,7,11,13;
22:1,3
**kind (4)**
14:2;16:14,16,17
**kinds (2)**
15:10;16:11
**knew (1)**
18:7
**knock (1)**
3:10
**knows (3)**
13:11,13;19:18
**KPMG (2)**
3:14;4:2

**L**

**large (1)**
9:11
**last (1)**
6:23
**later (1)**
10:20
**laws (1)**
7:8
**lawsuits (1)**
6:24
**lawyer (6)**
11:10,18,18,19;19:7;
21:1
**lawyers (1)**
11:6
**lawyer's (1)**
19:8
**least (4)**
13:11;14:6;18:7;
19:21
**less (1)**
20:17
**letting (1)**
14:5
**liability (3)**
13:18;14:2;16:20
**liable (1)**
8:24
**lifted (1)**
10:19
**light (1)**
8:21
**likelihood (2)**
16:20,21

**likely (1)**
8:8
**limited (4)**
19:2,6;20:1,23
**line (4)**
9:4,7,9;12:8
**lines (1)**
19:9
**liquidated (1)**
11:22
**liquidating (1)**
14:6
**liquidation (1)**
14:8
**list (1)**
20:21
**listen (1)**
21:12
**litany (1)**
5:20
**litigants (1)**
20:7
**litigation (4)**
5:22;6:21;14:11;
20:6
**little (2)**
7:15;19:23
**live (2)**
11:21;17:15
**local (1)**
18:7
**long (4)**
3:15;17:2,2;20:22
**look (3)**
4:10;11:19;12:4
**looking (1)**
16:9
**looks (1)**
7:14
**losing (1)**
12:25
**lot (1)**
7:10
**loud (1)**
14:3

**M**

**maintain (1)**
13:8
**makes (3)**
7:5,5;17:14
**making (1)**
8:21
**mandatory (7)**
7:12,15,17,22,23;
8:2;9:2
**many (2)**
8:23;10:23
**Matt (1)**
5:2
**Matter (2)**
3:7;11:1

**May (8)**
5:15,23;8:12,24;
18:8;20:16,18;21:13
**maybe (4)**
10:18;15:8,21;19:10
**mean (13)**
4:25;7:20;8:20;9:19;
11:10;12:2,2,4,15;
13:4;16:13,17;18:18
**means (2)**
19:10;20:12
**mediate (2)**
17:10,21
**mediation (22)**
6:22;8:13;9:2,6,15,
17,21,25;10:9,19;11:8,
15,18;12:4,21;13:22;
17:4;18:3,6;19:9;20:1;
21:1
**meet (1)**
18:14
**meltdown (1)**
12:10
**memorandum (1)**
5:15
**mercifully (1)**
3:10
**methodology (2)**
16:14;20:19
**might (7)**
8:14;11:19;15:11;
16:14;17:1,1;19:25
**million (2)**
17:11,13
**mind (2)**
8:18;19:25
**minus (1)**
13:13
**mirror (1)**
16:10
**miss (1)**
8:15
**misuse (1)**
12:16
**misused (1)**
12:16
**model (1)**
20:19
**modifications (1)**
4:10
**MoFo (1)**
3:14
**months (1)**
6:22
**more (16)**
4:6;5:19;8:22;9:24,
24,24,24;13:17;14:20;
16:2,11,19;19:25;20:4,
17;21:1
**morning (8)**
3:4,5,8,9,23;4:16,17;
5:7
**motion (10)**

4:14;5:24,25;7:14,
14;8:15;9:3;14:16;
15:15;21:9
**motions (1)**
5:16
**movants (1)**
14:18
**much (7)**
5:25;8:10;14:20;
16:11;19:24;21:25;
22:4
**multibillion (1)**
13:1
**multimillion (1)**
12:10
**multiple (2)**
11:4;20:16

**N**

**Nathan (20)**
5:3,9,22,25;7:7;8:21;
12:12;13:11,21;14:6;
16:10,18,24;17:10,13,
25;19:6,11;20:10;
21:15
**Nathan's (8)**
5:3;12:6,20;13:10;
17:6;19:1,17;20:17
**necessary (2)**
6:14;19:6
**need (4)**
10:11;16:11;17:6;
20:24
**needed (2)**
5:20;10:10
**needing (1)**
6:1
**negotiate (1)**
17:25
**negotiations (1)**
18:11
**next (4)**
6:22;16:10;19:25;
22:4
**ninety-nine (1)**
20:20
**Ninth (1)**
7:23
**Nobody (1)**
21:3
**non-PG&E (1)**
9:5
**normal (2)**
18:7;21:7

**O**

**Oakland (4)**
6:25;17:9;18:8,14
**occasions (1)**
11:4
**occur (1)**

Case: 19-30088    Doc# 2491    Filed: 06/12/19    Entered: 06/12/19 07:14:52    Page 27
of 30

9:21
**off (4)**
3:19;4:2,25;7:6
**Office (2)**
3:25;4:19
**officer (2)**
9:22;10:14
**Olson (23)**
4:22;5:2,2,11;6:8,12,
16,19;7:3,19,22;8:4,7,
16;9:3,9,12,16;10:3,5;
12:6;20:24;21:18
**one (11)**
7:4;9:21,21,22;
10:14,14;13:10;19:5,
25;20:4,14
**one's (1)**
19:16
**only (3)**
3:13;8:8;20:11
**oOo- (1)**
3:2
**opening (2)**
14:13;18:25
**opposition (1)**
5:14
**order (7)**
3:3,14,17,19;4:2;
19:5;20:25
**ordered (3)**
8:13;9:4;18:6
**ordering (1)**
21:5
**orderly (1)**
20:13
**orders (2)**
4:7,10
**ordinary-course-of-business (1)**
14:1
**others (1)**
14:6
**others' (1)**
12:16
**ought (1)**
12:4
**out (9)**
11:10,11;12:10;14:3;
15:6,12;16:15;18:21;
21:16
**outcomes (1)**
16:21
**outside (3)**
10:25;11:4;17:7
**over (1)**
18:14
**overlook (1)**
9:2
**overridden (1)**
8:2
**overtaken (1)**
8:1

## P

**page (3)**
9:4,8,9
**paid (2)**
7:4;17:2
**paper (1)**
8:15
**papers (1)**
5:14
**participate (4)**
6:21;9:6;20:8;21:1
**particular (3)**
9:21,21,22
**parties (4)**
6:21;9:5,5,6
**Pascuzzi (4)**
3:22,23,24,24
**pass (1)**
7:18
**Paul (1)**
3:23
**pejorative (2)**
16:16,16
**penalty (2)**
18:20;19:16
**people (9)**
8:23;12:11,12;13:5;
14:5;15:9,12;16:19;
17:8
**percent (1)**
7:4
**perhaps (2)**
20:14;21:15
**persuaded (2)**
13:7,7
**petition (1)**
7:1
**PG&E (8)**
3:7;7:3;8:24;10:12,
25;12:18;13:14;15:11
**phone (3)**
3:22;4:5;5:4
**PI (1)**
16:17
**pipeline (1)**
12:8
**place (2)**
9:22;14:8
**plaintiff (1)**
5:8
**plan (2)**
7:8;8:11
**Please (2)**
3:6;5:13
**podium (1)**
4:13
**point (4)**
12:18;13:11;19:2,22
**possibility (2)**
9:14;18:1
**potentially (2)**

15:21,22
**power (3)**
13:5,6;15:10
**pre- (1)**
6:25
**precipitated (2)**
12:13,20
**predicted (1)**
16:20
**preferable (1)**
14:20
**prepared (1)**
20:5
**present (1)**
3:18
**presume (1)**
9:20
**pretend (2)**
9:20;15:3
**pre-trial (1)**
10:1
**principal (1)**
11:1
**print (3)**
9:10,11,11
**prior (2)**
6:25;10:10
**probably (1)**
6:9
**problem (3)**
11:24;13:20;19:12
**proceedings (1)**
22:6
**process (6)**
7:10;8:8;14:6,15;
20:12;21:3
**processes (1)**
21:7
**progress (2)**
14:19,21
**promise (1)**
21:14
**proper (1)**
19:7
**proposed (2)**
4:2;6:22
**purpose (1)**
20:23
**purposes (3)**
19:8,21;20:1
**pursuant (1)**
7:8
**put (2)**
7:6;11:20
**puts (1)**
13:21

## Q

**quick (1)**
9:25
**quite (1)**
15:15

quo (1)
13:8
**quote (1)**
5:23

## R

**Rail (1)**
4:1
**rate (1)**
16:17
**rather (1)**
14:14
**reach (1)**
20:10
**ready (2)**
7:9;10:9
**real (1)**
7:9
**really (4)**
6:13,17;7:10;16:9
**rearview (1)**
16:10
**reason (2)**
8:1;9:11
**reasons (2)**
12:19,19
**recognize (1)**
7:23
**recognized (1)**
5:19
**recovers (1)**
13:13
**referring (1)**
9:5
**refinery (1)**
12:10
**regarding (1)**
18:1
**relationships (1)**
11:5
**relief (13)**
4:14;5:17;6:5,13;
7:16,18,24;8:1;18:2;
19:2,6;20:1;21:9
**remember (2)**
10:24;17:5
**reorganization (4)**
6:1;13:16;14:17,20
**reply (1)**
5:13
**representation (1)**
20:3
**representative (1)**
20:6
**representing (1)**
19:8
**request (2)**
6:5,6
**require (1)**
6:2
**requires (1)**
11:15

**resolve (1)**
4:3;7:5;8:9
**resolved (2)**
6:25;19:24;20:15
**Resources (2)**
3:16;4:1
**respect (1)**
10:11
**respectfully (1)**
6:6
**restructuring (2)**
5:21;15:16
**resume (1)**
5:21
**retail (1)**
13:3
**reverse (1)**
7:25
**reviewed (1)**
8:18
**revisit (2)**
10:20;15:2
**rhetorical (1)**
17:18
**right (9)**
3:12;5:6;7:18;11:2;
14:12;15:17;16:5;
21:25;22:2
**Rosenberg (16)**
5:4,7,8,12;10:4,5,6,6,
17,23;11:3;12:6;18:15;
19:9;21:23,24
**Rosenberg's (1)**
20:3
**rules (1)**
21:4
**ruling (4)**
5:15;6:7,9;13:9
**run (1)**
13:1
**running (1)**
13:25
**run-of-the-mill (3)**
12:14,17;14:1

## S

**same (4)**
6:24;14:19;16:7;
17:9
**SAN (1)**
3:1
**satisfied (2)**
3:14,16
**saying (2)**
19:14;20:22
**schedule (1)**
21:10
**scheduled (1)**
9:2
**scientific (1)**
16:13
**seated (1)**

Case: 19-30088    Doc# 2491    Filed: 06/12/19    Entered: 06/12/19 07:14:52    Page 28
of 30

3:6
seeing (1)
4:10
seek (1)
10:18
seem (1)
16:11
seems (1)
18:16
sense (3)
7:5;17:14;19:19
sent (1)
11:11
September (14)
6:7,22;8:14;13:23;
14:25;15:3,4,18;17:24;
19:13,14,17;21:10,11
series (1)
6:23
set (1)
5:16
Seth (3)
5:8;10:6;21:23
settle (3)
8:9;18:16;21:6
settled (2)
18:22;21:12
settlement (8)
15:22;17:16;18:1,11;
20:19;21:2,5,9
settling (1)
18:20
shake (1)
17:15
show (2)
8:17;17:10
sic (2)
4:21;5:17
side (4)
11:7,21;17:12;21:13
sidewalk (1)
6:25
sign (1)
17:15
signed (2)
3:19;4:2
significant (2)
12:19;13:16
similar (4)
5:24;14:10,14;15:25
similarity (1)
16:8
simple (1)
17:15
sit (1)
19:7
site (1)
17:9
situation (5)
8:19;12:6;16:6,7;
19:1
six (1)
16:22

slip-and-fall (1)
13:4
Small (1)
9:10,11
solution (1)
10:18
somebody (4)
11:12;12:4;16:12;
17:11
someone (1)
17:14
something-or-other (1)
10:1
somewhere (2)
12:7,9
soon (1)
6:2
sorry (2)
9:7;17:12
sort (1)
10:1
sounds (1)
19:23
speak (1)
4:23
special (1)
18:13
specific (2)
6:2;15:20
specifically (3)
5:23;10:25;14:15
specifics (1)
17:5
Speed (1)
4:1
stake (1)
6:1
start (1)
14:5
State (8)
3:15;5:3;6:20;7:12;
8:9,13;10:7;11:1
stated (1)
14:15
status (1)
13:8
stay (18)
4:14;5:17;6:5,13;
7:16,18,24;8:1;10:18;
11:7,9,13,23;18:2;
19:6;20:1;21:4,10
stick (2)
13:20;19:4
still (3)
7:15;8:24;14:16
store (1)
13:3
stores (2)
13:4,4
story (2)
11:22;16:25
street (1)
15:12

stuff (1)
15:13
submitted (1)
3:20
substantially (2)
5:24;14:10
successful (1)
14:20
such-and-such (1)
18:14
suffered (1)
16:18
sufficiently (1)
5:16
suit (1)
11:1
Superior (7)
9:4;12:21;17:9;18:6,
8;20:7;21:7
Suppose (1)
18:5
Sure (5)
4:24;8:20;13:22;
15:14,19
suspect (2)
16:23;17:11
system (1)
20:12

**T**

table (1)
19:7
tackle (1)
6:2
talk (2)
15:21;17:25
talking (1)
9:14
telephone (1)
3:21
telling (1)
18:24
tentative (7)
5:15;6:7;13:9,20;
17:23;19:4;20:23
term (4)
12:14,16,17;16:16
territory (1)
13:1
testimony (1)
9:25
thanks (2)
21:25;22:4
theoretical (1)
8:2
thinking (4)
13:8,9;14:3;18:24
thought (2)
6:8;8:18
thousands (1)
15:6
three (1)

16:22
till (1)
17:24
today (6)
3:12,19;5:18,25;6:5;
16:10
told (1)
12:6
tort (7)
5:22;12:25;14:2;
15:6,9,25;19:1
torts (1)
8:24
toward (1)
14:19
towards (1)
14:21
track (1)
10:24
Tran (15)
4:13,17,17,24;5:14;
11:14,25;14:10,13,25;
15:14,18;16:4;17:22;
21:21
trial (3)
12:22,22;21:12
trip (1)
15:9
tripped (1)
13:5
trucks (1)
15:11
true (2)
7:25;8:12
Try (6)
9:10;12:5;17:10,20;
19:24;20:1
trying (1)
18:12
TUESDAY (1)
3:1
turn (2)
4:8,13
two (4)
3:13;4:6;13:11;
14:18
type (2)
9:25;15:9

**U**

under (1)
20:2
understands (1)
21:2
unfortunate (1)
17:2
unfortunately (2)
15:11;17:1
UNISON (1)
3:5
Unless (2)
3:11;4:4

unliquidated (1)
20:18
unsuccessful (1)
10:19
up (4)
7:11;8:8;17:10;
18:25
upload (1)
4:7
upon (1)
10:15
upset (1)
20:13
use (1)
16:16
used (2)
12:15;20:12
usual (3)
12:22,24;13:25
utility (7)
6:24;12:24;13:1,24;
19:8,11,20

**V**

Valero (3)
5:16;12:11;16:7
variation (1)
19:5
vast (2)
14:7;16:15
victim (2)
12:17;15:7
victims (3)
8:23,23;13:18
violate (1)
11:13
violating (1)
21:4

**W**

Wait (3)
4:20;7:8;17:2
waiting (1)
7:9
wants (1)
4:5
waste (1)
4:6
way (7)
12:5;15;18:21;19:14;
20:7,22;21:16
week (1)
16:10
Weil (2)
4:14,18
Wendy (2)
5:3,8
what's (11)
5:10;6:10;9:20;15:2,
3,3,8,19;16:17;17:21;
18:5

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(5) seeing - what's

Case: 19-30088    Doc# 2491    Filed: 06/12/19    Entered: 06/12/19 07:14:52    Page 29
of 30

**where's (1)**
  13:18
**Whereupon (1)**
  22:6
**whole (1)**
  7:10
**who'll (1)**
  4:14
**wildfire (1)**
  12:9
**wildfires (1)**
  12:13
**Willoughby (1)**
  3:24
**winning (1)**
  12:24
**without (2)**
  18:12;20:12
**wood (1)**
  3:10
**worked (1)**
  11:4
**working (1)**
  4:3
**world (2)**
  13:22;16:17
**world's (1)**
  18:16
**wrong (1)**
  6:10

**Y**

**yell (1)**
  17:19

**1**

**10th (1)**
  6:7
**11 (1)**
  3:1
**12th (2)**
  5:15,23

**2**

**2019 (1)**
  3:1
**2048 (1)**
  9:4

**3**

**3 (2)**
  9:4,9
**30th (2)**
  9:6;17:24

**6**

**6 (4)**
  9:4,7,8,9

**9**

**9:31 (1)**
  3:1
**9:58 (1)**
  22:6

Case: 19-30088    Doc# 2491    Filed: 06/12/19    Entered: 06/12/19 07:14:52    Page 30
of 30