**Exhibit A**

# CRAVATH, SWAINE & MOORE LLP

| | | WORLDWIDE PLAZA<br>825 EIGHTH AVENUE<br>NEW YORK, NY 10019-7475<br><br>TELEPHONE: +1-212-474-1000<br>FACSIMILE: +1-212-474-3700<br><br>———<br><br>CITYPOINT<br>ONE ROPEMAKER STREET<br>LONDON EC2Y 9HR<br>TELEPHONE: +44-20-7453-1000<br>FACSIMILE: +44-20-7860-1150<br><br>WRITER'S DIRECT DIAL NUMBER<br>+1-212-474-1596<br><br>WRITER'S EMAIL ADDRESS<br>korsini@cravath.com | | |
|---|---|---|---|---|
| JOHN W. WHITE<br>EVAN R. CHESLER<br>RICHARD W. CLARY<br>STEPHEN L. GORDON<br>ROBERT H. BARON<br>DAVID MERCADO<br>CHRISTINE A. VARNEY<br>PETER T. BARBUR<br>THOMAS G. RAFFERTY<br>MICHAEL S. GOLDMAN<br>RICHARD HALL<br>JULIE A. NORTH<br>ANDREW W. NEEDHAM<br>STEPHEN L. BURNS<br>KATHERINE B. FORREST<br>KEITH R. HUMMEL<br>DAVID J. KAPPOS<br>DANIEL SLIFKIN<br>ROBERT I. TOWNSEND, III<br>WILLIAM J. WHELAN, III<br>PHILIP J. BOECKMAN<br>WILLIAM V. FOGG<br>FAIZA J. SAEED<br>RICHARD J. STARK | THOMAS E. DUNN<br>MARK I. GREENE<br>DAVID R. MARRIOTT<br>MICHAEL A. PASKIN<br>ANDREW J. PITTS<br>MICHAEL T. REYNOLDS<br>ANTONY L. RYAN<br>GEORGE E. ZOBITZ<br>GEORGE A. STEPHANAKIS<br>DARIN P. MCATEE<br>GARY A. BORNSTEIN<br>TIMOTHY G. CAMERON<br>KARIN A. DEMASI<br>DAVID S. FINKELSTEIN<br>DAVID GREENWALD<br>RACHEL G. SKAISTIS<br>PAUL H. ZUMBRO<br>ERIC W. HILFERS<br>GEORGE F. SCHOEN<br>ERIK R. TAVZEL<br>CRAIG F. ARCELLA<br>DAMIEN R. ZOUBEK<br>LAUREN ANGELILLI<br>TATIANA LAPUSHCHIK | | ALYSSA K. CAPLES<br>JENNIFER S. CONWAY<br>MINH VAN NGO<br>KEVIN J. ORSINI<br>MATTHEW MORREALE<br>JOHN D. BURETTA<br>J. WESLEY EARNHARDT<br>YONATAN EVEN<br>BENJAMIN GRUENSTEIN<br>JOSEPH D. ZAVAGLIA<br>STEPHEN M. KESSING<br>LAUREN A. MOSKOWITZ<br>DAVID J. PERKINS<br>JOHNNY G. SKUMPIJA<br>J. LEONARD TETI, II<br>D. SCOTT BENNETT<br>TING S. CHEN<br>CHRISTOPHER K. FARGO<br>KENNETH C. HALCOM<br>DAVID M. STUART<br>AARON M. GRUBER<br>O. KEITH HALLAM, III<br>OMID H. NASAB<br>DAMARIS HERNÁNDEZ | JONATHAN J. KATZ<br>MARGARET SEGALL D'AMICO<br>RORY A. LERARIS<br>KARA L. MUNGOVAN<br>NICHOLAS A. DORSEY<br>ANDREW C. ELKEN<br>JENNY HOCHENBERG<br>VANESSA A. LAVELY<br>G.J. LIGELIS JR.<br>MICHAEL E. MARIANI<br>LAUREN R. KENNEDY<br>SASHA ROSENTHAL-LARREA<br>ALLISON M. WEIN<br><br>———<br><br>SPECIAL COUNSEL<br>SAMUEL C. BUTLER<br><br>———<br><br>OF COUNSEL<br>MICHAEL L. SCHLER |

June 10, 2019

*In re: PG&E Corporation and Pacific Gas and Electric Company*
Bankruptcy Case No. 19-30088

Dear Counsel:

  I write concerning the open issues before the Court in connection with the Debtors' Bar Date Motion, including the contested issues concerning the contents of the wildfire proof of claim form, the Bar Date itself, the wildfire noticing and claims process and the discovery you have recently served.

  As the Debtors have made clear from the outset of these Chapter 11 Cases, their primary goal is to compensate victims who are entitled to recovery from the Debtors as efficiently and fairly as possible. To that end, we filed our Bar Date Motion on May 1, 2019, and proposed an approach, including customized claims forms, that would allow for a single-step process to both identify the number of wildfire claims that exist and obtain basic documentation that would permit all parties to assess those claims. The Debtors believed then—and still believe now—that their proposed approach provides the most efficient mechanism to position all of the interested stakeholders to resolve the question that is at the core of these proceedings: the value and validity of all wildfire claims.[1]

  Unfortunately, although the Debtors originally scheduled a hearing on their Bar Date Motion of May 22, 2019, that hearing has now been delayed for over a month because of actions taken by the TCC. First, at your request, we adjourned the hearing to June 11, 2019.

---

[1] The Official Creditors Committee also appears to share this view and, in its recent filing in support of the Debtors' Bar Date Motion, it stated that the Debtors' Wildfire Claimant Proof of Claim Form and proposed Bar Date were "designed to elicit information that must be made known to all parties in interest in the near term in order to properly estimate the Debtors' wildfire liabilities and bring these cases to [a] swift and successful conclusion." UCC Statement [Docket No. 2308], at ¶17.

Second, just over a week ago—after not raising any of these issues with the Debtors in the more than two months we have been discussing the Bar Date and claims issues or the month since we filed our proposed notice plan—the TCC filed its own motion seeking a completely different notice process and the appointment of a new noticing agent for wildfire claims that, to our knowledge, has never once been involved in such a process in any Chapter 11 proceeding and has been criticized repeatedly for inadequacies in the class action claims administration process.[2] Not surprisingly, given the significance of these issues and the limited time you proposed to provide to the Court to consider your motion, the Court adjourned the hearing to June 26. Most recently, you notified us on Friday that you would seek to compel compliance with untimely and irrelevant discovery requests and ask the Court to shorten time to address an urgency of your own making.

During the past month, the TCC has also urged the Debtors to abandon their proposed claim form in favor of the TCC's, arguing primarily that there is extensive information about individual claimant's alleged damages already contained in the so-called BrownGreer database. As you know, the BrownGreer database was created as a result of a so-ordered stipulation entered by the state court in the North Bay Wildfire cases prior to the commencement of these Chapter 11 Cases. The very purpose of the database and the state court's order was to provide PG&E a mechanism to obtain basic information about the scope and size of wildfire claims that are being asserted against it. It was, therefore, explicitly contemplated in the original state court order that PG&E would have direct access to this database.

Notwithstanding that history—and the TCC's repeated insistence to us, the UCC, and the Court that the BrownGreer database already contains or will contain all the information the parties could need to assess and value the wildfire claims—the TCC has refused numerous requests by the Debtors and the UCC to be granted access to the database to assess what information is actually in the database. We have also held at least two meetings among the Debtors, the TCC and the UCC at which the Debtors and the UCC have requested some detail from the TCC about what is currently in the database, what the TCC envisions in regards to documentation supporting the asserted claims that would be added, and the specific mechanisms the stakeholders could use to ensure that the claims asserted through the database are valid, non-fraudulent and not inflated. That, of course, is a legitimate interest that all stakeholders share and a concern the Court has appropriately identified.[3]

---

[2] *See, e.g.*, *Pollard v. Remington*, Case No. 13-0086-CV-W-ODS (court ordering a rework of Steven Weisbrot's notice program due, in part, to the "low response rate" of claim forms that have been completed); *Remijas v. The Neiman Marcus Group*, Case No. 14-cv-1735 (court de-certifying a settlement class noting the "poor response rate demonstrated" by the number of claim forms that had been submitted and the court encouraging the "parties to consider whether further attempts at notice are warranted").

[3] *See, e.g.*, Hr'g Tr. (May 22, 2019) at 86:3-6 (the Court stating that if "the debtor filed a plan tomorrow and there was a claim's [*sic*] deadline, every one of the victims would have to file a proof of claim and be subject to whatever proper inquiry as to the entitlement to the claim"), and Hr'g Tr. (May 9, 2019) at 11:19-21 (the Court stating that "we know there are countless real claimants in this case, but there might be some not real claimants" and that there would be an

The result of the events described above has been significant delay and the inability of the Debtors, the UCC, or anyone outside of the TCC and the wildfire plaintiffs' lawyers to conduct any real assessment of whether the database that you claim is critical to noticing and claims valuation and validity work is actually sufficient. While we are concerned about this conduct and what it suggests in terms of the path forward, our goal is the same as it always has been: to ensure that wildfire victims are fairly compensated as soon as possible. As a result, in the interests of moving these cases forward to the chapter 11 plan process, we are writing to notify you that we propose the following approach in connection with these disputed issues.

Claims Form and Bar Date

In light of the TCC's objections and failure to work productively towards a solution, and our desire to move forward as promptly as possible, the Debtors are prepared to adopt the TCC's proposed wildfire proof of claim form. This is by no means an admission or acknowledgment that the information requested in the TCC Proof of Claim Form is sufficient as you admit by your suggested two-step process. Accordingly, we reserve all rights to take discovery with respect to, among other things, all wildfire claims that are filed. That is a critical way to address what should be our shared concern: the possibility of fraudulent, invalid or overstated claims, which undermine the fairness of the process. We continue to believe this approach will result in overall delay (and increased costs) in determining the validity and value of wildfire claims, but we have been unable to persuade you to adopt our single-step approach. Continuing motion practice with the TCC to resolve these issues itself has costs, which the Debtors seek to minimize. Note, however, that we also do not concede that the BrownGreer database provides sufficient claim information and reserve all of our rights with respect thereto and to all other discovery matters as well.

Because we are willing to adopt the TCC's simple wildfire claim form, we believe there is no reasonable argument that the Bar Date should be delayed until January 31, 2020. While we understand and share the concern about the difficulties that are being experienced by the victims of the tragic Camp Fire (and all other Northern California wildfires), we also believe it is in the best interests of all stakeholders—including those victims—to establish an earlier Bar Date. Our proposed Bar Date provides more than enough time for wildfire claimants to submit the basic TCC wildfire claim form, which does not require any supporting documentation, any detail about the nature of the claim, or any valuation of the claim itself.[4] Furthermore,

---

issue "if there's a claim that should be defeated not because of the nature of the injury suffered by the victim, but rather that the person isn't even a victim at all").

[4] Indeed, even members of the constituency the TCC represents would likely support an earlier bar date. *See, e.g., Objection to Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for Order (i) Establishing Deadline for Filing Proofs of Claim, (ii) Establishing the Form and Manner of Notice Thereof, and (iii) Approving Procedures for Providing Notice of Bar Date and Other Information to all Creditors and Potential Creditors* [Docket No. 2240] (specifically stating that the Interested Parties do not object to the setting of a bar date in the timeframe proposed by the Debtors) *and Objection by the Singleton Law Firm Fire Victim Claimants to: (1) the Proof-of-*

representations have been made by you and the trial lawyers managing the BrownGreer database that it already contains over 10,000 claims related to the Camp Fire. *See Declaration of Philip R. Strunk in Support of Objection of the Official Committee of Tort Claimants to Motion of the Debtors For Order (i) Establishing Deadline for Filing Proofs of Claim, (ii) Establishing the Form and Manner of Notice Thereof, and (iii) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* [Docket No. 2306-6], at ¶7.

Given our willingness to adopt the TCC's wildfire claim form to avoid further costly and inefficient disputes, we expect that you will withdraw the discovery requests served by the TCC on May 30, 2019. As Mr. Fuller conceded in his various emails to me on Friday, those requests are driven by your assertion that the Debtors' do not need the information sought in the Debtors' proposed wildfire claim form given the public disclosures the Debtors have made about potential wildfire liabilities. The Debtors' adoption of the TCC's wildfire claim form eliminates any dispute about whether the Debtors are entitled to the customized wildfire claims information through their proposed wildfire claim form, thereby mooting the contested discovery based on your own description of its purpose.[5] We trust that you will not continue to waste the Debtors' resources or the Court's time by pushing for discovery you do not need on the proposed expedited schedule that you created, or otherwise.

Notice Procedures and Wildfire Noticing Agent

As noted above, we are mystified as to why the TCC never raised the issues directly with us that it set forth in its motion filed last week. We do, of course, share the desire

---

*Claim Forms Proposed by PG&E and the Tort Claimants Committee (Including a Proposed Alternative Form); and (2) the Wildfire-Claim Cut-Off Date Proposed by PG&E* [Docket No. 2248] (proposing November 8, 2019 as a bar date).

[5] The requested discovery was inappropriate even before we agreed to use the TCC's proposed wildfire claim form. The discovery sought information concerning the Debtors' estimations of wildfire liabilities as a whole, including accruals for accounting purposes. These estimations of potential liability are largely based on public information since, as you well know, the Debtors do not have access to claim specific information from any of the individual wildfire claimants for the North Bay and Camp Fires. We have already provided the TCC with a list of the public sources used by the Debtors' economic consultant, Compass Lexecon, whose work I have already explained is protected work product and would not, therefore, be subject to discovery in any event. The simple fact is that PG&E does not have access to documents and information from any of the individual 2017 or 2018 wildfire claimants that would validate the existence of their claims or their magnitude and permit the estimation of the size of those claims based upon actual losses incurred. Modeling of potential damages for required public disclosure purposes based on primarily publicly-available data is no substitute for documents and other information necessary to establish actual losses suffered by claimants who are seeking payment, particularly if (as we expect) the TCC is unwilling to agree that the Debtors' current estimate of probable loss of approximately $14.0 billion for all North Bay and Camp wildfire claims is sufficient for the chapter 11 process.

to ensure that sufficient notice be provided to the wildfire claimants. We disagree with your characterizations of our proposed notice process, as well as the statements that your proposed approach is required to satisfy due process. We nonetheless are considering your proposed supplemental notice mechanisms to determine whether we believe any of them should be incorporated into our plan, which is the same approach we would have taken had you raised any of these suggestions with use before filing your motion. A simple phone call to discuss these issues would have been the appropriate method to proceed rather than a complete lack of communication while you spent resources of the estates pursuing your own strategic maneuvers. Simply put, the TCC has no basis to co-opt the noticing process and its proposal to use a seemingly unqualified noticing agent is completely inappropriate. We will submit our opposition to those proposals at the appropriate time.

   The Debtors' accommodations described above moot much of our dispute with the TCC regarding the Bar Date Motion (including the related TCC discovery request). However, a live dispute remains over the TCC's proposed noticing agent and notice plan, as well as the timing for the Bar Date, and discovery is appropriate on those contested issues. We will, therefore, serve appropriate discovery requests on those issues later today.

                Regards,

                Kevin J. Orsini

Robert A. Julian, Esq.
 Baker Hostetler
  11601 Wilshire Boulevard, Suite 1400
   Los Angeles, CA 90025

Eric Goodman, Esq.
 Baker Hostetler
  Key Tower, 127 Public Square
   Suite 2000
    Cleveland, OH 44114

Lars Fuller, Esq.
 Baker Hostetler
  1801 California Street, Suite 4400
   Denver, CO 80202