Adam Cronin, Pro Se
101 Hannaford Ct Folsom CA 95630
916-467-6040
Ajcu88@gmail.com



FILED
JUN 18 2019 MT
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

# UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHER DISTRICT OF CALIFORNIA

In Re

Pacific Gas and Electric Company ("PG&E"),

Debtor-in-Possession

) Bankruptcy Case
) No.: 19-30089-DM
)
) Chapter 11
)
) **DECLARATION IN SUPPORT OF THE**
) **MOVANT'S MOTION FOR RELIEF FROM**
) **AUTOMATIC STAY**
)
)
) Hearing:
)
)
) Date:
)
) Time:
)
) Courtroom:

**DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM STAY**

I, Adam Cronin, declare:

1) I am the Movant in this motion, and have personal knowledge of the matters set forth in this declaration, and, if called upon to testify, I could and would competently testify thereto. I have personal knowledge of the action entitled *Cronin v. PG&E et al.* San Francisco Superior Court Case No. CGC-18-567919 ("State Court Action") in which I am the Plaintiff, a former employee of the Debtor.

2) I personally hold the records, files, and facts related to the State Court Action, and know them as to be true as they pertain to and are outlined in the State Court Action filed against the Debtor. These records are available upon request by the court or relevant parties, if required.

3) My employment with PG&E was terminated in May 2017 in retaliation for me exercising my rights under the California Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA). PG&E claimed, as a pretext, that I was terminated for failing to adhere to internal rules, and implied that I violated legal statutes based upon arrest information. Prior to my termination, for nine years, I had a virtually spotless performance review record and had been recommended for promotion in early 2014. After I filed for CFRA protection (late 2015) and filed complaints regarding retaliation, I received poor performance reviews and then was terminated. The circumstances leading up to my termination are stated below.

4) I received a promotion in early 2014 to Program Manager in PG&E's Metering Services and Engineering (MS&E) department. In 2014 and 2015 I experienced a positive working relationship while working with the new group, and received positive reviews.

5) In approximately early 2015, my supervisor Young Nguyen (NGUYEN) nominated me to serve as designated "subject matter expert" (regarding specific metering subjects) and testimony drafter in PG&E's California Public Utilities Commission (CPUC) General Rate Case (GRC) filing.

6) Then, in **late** 2015, NGUYEN suddenly and inexplicably blocked me from utilizing my own, available paid "sick time" which I needed for chronic migraines (intermittently). In response I invoked my rights under the FMLA and the CFRA. This information about my medical condition was provided to PG&E, and approved by PG&E's Human Resources department (as required).

7) Prior to joining MS&E in 2014, I had established FMLA leave with my prior department and had no issues/discipline related to my work performance.

8) It was almost immediately after re-establishing my FMLA/CFRA in late 2015 that,
   a. In February of 2016 (~2 months later) NGUYEN gave me a positive performance review for work performed in 2015.
   b. In approximately February of 2016 NGUYEN began interfering with and retaliating against me for my CFRA use.

c. In March of 2016, NGUYEN began implementing retaliatory and unfounded disciplinary measures.

d. In March of 2016, NGUYEN made a verbal threat to me stating I would be terminated if my "attendance" (CFRA use) didn't improve (then memorialized & confirmed in an email).

9) During this time, NGUYEN's conduct became pervasive, and began involving others in my disciplinary actions he implemented, effectively portraying me as a "bad apple" to others, and driving a wedge between myself and the working group.

10) In approximately April of 2016, I filed an internal complaint against NGUYEN, and PG&E's Ethics and Compliance **confirmed** the allegations about NGUYEN's conduct and implemented relatively insignificant discipline against NGUYEN.

a. In May of 2016, out of fear my reputation, opportunities, and career had been severely tarnished or ruined by NGUYEN and MS&E leadership, I filed an FMLA retaliation lawsuit.

b. Shortly after, MS&E's department leadership began constructive discharge attempts which included (but not limited to) my first "poor" annual work performance review (provided in February of 2017 for work performed in 2016).

c. MS&E's department leadership gave no substantiated feedback/coaching/indication of any "work performance issues" during 2016, prior to providing the "unsatisfactory" annual review.

d. Sometime between January and May of 2017, PG&E Legal Team embarked on what would amount to a "fishing expedition", and discovered that I had been arrested. PG&E Legal & Corporate Security initiated an internal investigation of the arrest. Utilizing this arrest information (which did not result in a conviction) PG&E's Corporate Security found that the arrest was based upon an accusation by a former disgruntled partner, alleging that I had tampered with her PG&E meter to spoil a party she was hosting in December of 2015.

e. In May of 2017, PG&E's Corporate Security confronted me about the allegations, and details of the arrest, to which I adamantly denied any wrong-doing. However, during the same investigation/confrontation by PG&E Corporate security, I admitted that in the weeks/months preceding the allegation in December of 2015, (with the homeowner/former partner's consent)

Declaration in Support of the Movant's Motion for Relief from Automatic Stay

I had inspected the meter for a potential hazard known as "Hot Socket" (in the timeframe of approximately September/October of 2015).

    f. PG&E forwarded 1) arrest information (which did not result in conviction), 2) a statement summary from the former disgruntled partner accusing me of the allegations predicating the arrest, and 3) my statement summary (in response to the investigation), in which I denied the meritless allegation leading to the arrest, and admission to a "Hot Socket" inspection prior to the allegation (which included an internal complaint to PG&E ["Troublemen"]).

    g. I am informed and believe that utilization of my arrest records which did not result in conviction, which predicated a privacy intrusion, which lead to termination, constitutes a violation of CA Labor Law section 432.7 and the California Constitution (for privacy), utilizing information for an "improper purpose".

    h. I am informed and believe that PG&E also perceived me as a "whistleblower", and out of fear of being exposed for this "Hot Socket" issue (and/or related violations of regulations related to the phenomenon), PG&E sought to retaliate and/or preemptively retaliated against me by executing a termination in which they prioritize (in writing) their internal processes/procedures over safety regulations, in violation of CA Labor Code section 1102.5

11) In May of 2017, while being confronted by PG&E Corporate Security (about arrest information & the disgruntled former partner's accusation). I informed them of my self-performed meter inspection for "Hot Socket" out of concern for safety, which I undertook in or about September-October of 2015 (<u>after</u> making **internal complaint** to PG&E ["Troublemen"]). This was while in a relationship with my former partner, we had experienced many episodes of "dim lights" which indicated a **"voltage problem"**.

12) I informed the PG&E Corporate Security investigator that I made an **internal complaint** in approximately August – September of 2015, which was investigated by a PG&E's "Troublemen". I was personally present during this investigation and noticed the "Troublemen" did not inspect the meter (for "Hot Socket") as a potential cause of the **"voltage problem"**

    a. PG&E's "<u>Decision Makers</u>" in my termination were unaware of this **internal complaint** until my admission in May of 2017.

13) **Voltage problems** are a potential symptom of "Hot Socket", are hazardous, and have been known to cause meters to catch fire. **Voltage problems** in general, (regardless of the cause) are hazardous and can potentially cause a fire. "Hot sockets" are more likely to occur after a meter replacement, and PG&E had just replaced the meter at this location in the weeks/months preceding the **voltage problems**.
   a. "Hot Sockets" are generally caused by electrical arcing occurring as a result of loose connection between the connecting points of an electric meter and its socket, causing heat and potentially, a fire. This "loose connection" is often associated with a meter change. At the time, I knew of a meter change that had recently occurred, just prior to the voltage problems occurring.
14) After PG&E's Troubleman failed to inspect for Hot Socket, and no other apparent causes for the **voltage problems** were found (by various contractors who were also troubleshooting), I questioned the "Troubleman" about inspecting for "Hot Socket" to which the Troubleman implied it wasn't in his *work procedure* to do this, and didn't do it anyways.
   a. MS&E leadership would've been the group responsible for initiating or implementing such a *work procedure* since they held knowledge of, and created technical documents pertaining to "Hot Socket"
15) Because I had a substantial metering background, knowledge of a recent PG&E meter change performed, inability by numerous contractors to locate a cause (including PG&E's Troublemen [the internal complaint]), and a concern about the safety hazard presented by the ongoing, intermittent **voltage problems**, I inspected the Meter Socket myself.
   a. This involved unplugging the meter from the socket, turning it over to inspect for **burn marks** (which would indicate the cause of the voltage problems) and then plugging the meter back in (not too dissimilar to any regular plug from an outlet). This information including the **internal complaint** was relayed to the PG&E Corporate Security investigator in May of 2017. The entire inspection process took approximately 30-60 seconds.
   b. I was relieved to find that there were no burn marks so that the voltage problems we had experienced were probably not related to a "Hot Socket" issue. Being that no evidence of

Declaration in Support of the Movant's Motion for Relief from Automatic Stay

"Hot Socket" was found, I considered the inspection to be a minor issue that, I frankly had all but forgotten about until confronted by PG&E's Corporate Security (aside defending against a meritless accusation leading to the arrest).

c. This action bears no relationship whatsoever to the meritless allegation which lead to the arrest and **assertion** by PG&E that I committed the acts associated with the allegation.

d. The reason I did not report this to PG&E was because PG&E **typically "claims"** to prioritize safety over procedure, therefore, implying consent (or perhaps requiring it, since I knew of it and the Troubleman did not) to performing the inspection. Since burn marks were not found, I did not find it necessary to report PG&E's *procedural deficiency* or inspection at that time.

16) When this information was given to the PG&E Corporate Security Officer in May of 2017, PG&E immediately claimed that I violated their Code of Conduct because I didn't have "written authorization" to perform that inspection, and placed me on suspension, then subsequent termination.

a. I was, of course, **shocked** by PG&E's conclusion, as this is a blatant contradiction and defiance of safety regulations, something I did not anticipate PG&E would have the audacity to conclude.

b. PG&E broke the law because they pretextually prioritized internal procedure over safety regulations in an effort to avoid legal accountability by retaliating/preemptively retaliating against an internal and/or perceived external whistleblower. And *initially* unbeknownst to me, internal complainants, as well as *perceived* whistleblowers are protected under CA Labor Code section 1102.5

c. PG&E elected to prioritize to their **internal procedure** over safety regulations because a) this exposed their own procedural deficiency, b) they perceived me as a whistleblower, c) perceived me as threat to "blow the whistle" on them again and, d) PG&E habitually elects to serve their own purposes over the rights and safety of others.

17) PG&E's termination decision & accompanying paperwork (compiled in May of 2017) was based on information gathered from an arrest record (which was dismissed), a meritless 3rd

Declaration in Support of the Movant's Motion for Relief from Automatic Stay

party accusation (a disgruntled former partner), and my statement about an internal complaint and brief inspection for the "hot socket" issue in the Fall of 2015.

    a. The charges for the arrest were dismissed in June of 2017 without contest by the Solano County District Attorney's office. I believe there was no pursuit (of charges) or contest (to the dismissal) by the DA's office because a) there was no objective evidence of a crime, just an accusation and b) it was approx. 1.5 years between when the allegation was made (In December 2015) and when I was arraigned for the allegation (April of 2017).

    b. I have argued and believe, that due to various OSHA regulations (and others), particularly considering my knowledge of the "Hot Socket" issue, *as well as* PG&E's own requirement of "putting safety first at all times", I was under no obligation to obtain written authorization from PG&E to perform the meter inspection, considering that I believed there to be a dangerous situation to be present, or potentially present. In fact, I have argued I was under certain and specific obligations to act to cure a hazard after PG&E's "Troubleman" failed to.

18) I believe that this serves as further evidence that PG&E habitually elects to serve their own purposes, instead of considering the rights and safety of others, which is exactly what they've done publically on numerous occasions, and exactly what I've gone through with them culminating over the last 3+ years. Additionally, as PG&E's legal team has become famous for, they elect to defend their mid-level managers (and "fight dirty"), **even when it is reasonably clear that liability has been established.** My belief of this comes from

    a. Numerous criminal convictions which arose from PG&E's conduct

        i. This type of conduct is characterized by the NTSB as stemming from PG&E's "exploiting weaknesses in lax oversight" (Exhibit E). PG&E's Legal team is likely to be the primary internal source in which the "exploitation" is disseminated culturally

    b. Public statements regarding the NTSB investigation of PG&E for the San Bruno incident

        i. Presumably originating within PG&E's own Legal Department, the NTSB characterized PG&E's conduct during investigation as "Shady", "Fishy", and their corporate culture as "ugly", and "toxic atmosphere"

    c. My personal dealings with PG&E's Legal Department related to FMLA retaliation.

Declaration in Support of the Movant's Motion for Relief from Automatic Stay

i. At the direction of PG&E's Legal Team, embarking on a fishing expedition and subsequently utilizing an improper purpose to invade my constitutional right to privacy, even after internal complaints confirmed MS&E leadership illicitly made threats in connection with FMLA use

d. My personal observation of PG&E's handling of "sensitive documents" related to "Hot Socket" & failure to take adequate measures to protect employees and public safety regarding this issue

i. (Presumably) at the direction of PG&E's Legal team, MS&E leadership was told to treat technical and general information about the "Hot Socket" issue as "sensitive/confidential", potentially creating a the **procedural deficiency** I identified with the PG&E Troubleman

e. General public perception of PG&E prioritizing profits over safety

19) If these changes they're now publically claiming to "need" or "embrace" were implemented years earlier, PG&E may have elected to put the rights and safety of others first and I likely may not have been wrongfully terminated in the first place.

20) Instead, PG&E's Legal Team has habitually defends negligent, retaliating, discriminating managers, and **enabling** the injurious conduct they've become famous for, and that I've personally become a victim to. Such conduct of PG&E's Legal Team, I strongly believe, has precipitated many of the "corporate culture issues" on display in the public view today, as these behavior patterns seem to originate in their Legal Department, then disseminate to the **mid-level** managers and beyond (often evading corporate leadership knowledge or oversight).

21) The FMLA retaliation case which I had filed in May of 2016 was withdrawn in (approx.) March/April of 2017, at the recommendation of my counsel, since I was still employed with them at that time. My legal counsel recommended that I involve the Department of Fair Employment and Housing (DFEH), in an attempt to mediate a fair solution to the ongoing constructive discharge attempts, retaliation, and discrimination. However, before the DFEH could respond to my request to mediate, PG&E terminated my employment in May of 2017.

Declaration in Support of the Movant's Motion for Relief from Automatic Stay

22) The DFEH took nearly a year to complete their investigation and issue a new "right-to-sue" letter, and then I filed a new legal complaint on July 9th, 2018.

23) Due to PG&E essentially being a monopoly, and my background and skill set which covers the majority of my entire adult life consisting of specialized expertise in an area which is ***extremely*** difficult to transfer to anywhere else.

24) Consequentially, I have incurred an insurmountable level of economic and emotional damages. I've essentially been forced to completely start over in life, with nothing but a trail of complete destruction that surrounds me at the hands of this entity, and will be forced to completely retrain and rebuild my life anew. Some of the hardships I have incurred "but for" PG&E's actions include (but not limited to)

   a. Multiple evictions (and high concern of ending up homeless)
   b. Vehicle repossession (incapable of transit without reliance on others)
   c. Destruction of personal credit and finances (loss of financial stability)
   d. Destruction/loss of future opportunities & trajectory
   e. Forced to borrow/receive basic necessities from friends and family to survive
   f. Forced to live with family (embarrassment and humiliation)
   g. Loss of enjoyment of life activities (extreme depression)
   h. Loss of personal friendships and relationships (as result of isolation)
   i. Loss of general sense of well-being
   j. Negative impacts to mental and physical health (distress believed to be affecting physical health)
   k. Loss of sleep, undue stress & anxiety
   l. Reliance on various medications usually resulting in undesirable side effects (potentially harmful in the long-term)

25) Although I have continually attempted to mitigate these damages, the fact that PG&E is a monopoly and my skill set was highly specific and specialized; as of the date of filing this motion, efforts to mitigate have been unsuccessful.

Declaration in Support of the Movant's Motion for Relief from Automatic Stay

26) Due to PG&E's conduct, the economic and emotional damages I have incurred and am continually incurring have been ongoing and extreme, and only continue to escalate each day. By being permitted to liquidate this pending State Court Action, I anticipate exploring prospects of obtaining outside financing against my ***liquidated*** claim in bankruptcy court, in order to attempt to begin remedying the economic and emotional damages I've incurred (if PG&E is still in bankruptcy upon liquidation), and begin working on restoring myself economically and emotionally. I find it difficult to adequately state or convey the level of "hardship" this whole situation has caused, and seeing that PG&E has already retained counsel for this pending State Court Action, the level of "hardship" they would endure by liquidating it, would be minimal.

27) Additionally, I believe that there is a potential to serve public interest by permitting this State Court Action to continue because PG&E's ***procedural deficiency*** pertaining to "Hot Socket" has yet to be addressed (as far as I am aware), and I believe that there is a potential risk to public safety if this issue continues to go unaddressed.

28) During PG&E's Section 431 meeting of the creditors on April 29th, 2019, I asked PG&E about the total number of pending non-liquidated, non-wildfire related category of lawsuits pending, to which PG&E said was a "relatively small [or low]" number compared to other categories of pending litigation, which I believe further suggests the "hardship" they would incur would be minimal.

29) The State Court Action procedural status is stayed in California State Court. The **original** complaint was filed July 9th, 2018, and discovery was underway when the Debtor filed their Chapter 11 Bankruptcy on 1/29/2019. In the State Court Action, the ***hearing*** of PG&E's Demurrer to my 4th and 6th causes of action (to the Second Amended Complaint) was just days away when the Debtor filed for Bankruptcy protection.

30) I have disputed PG&E's attempt to Demurrer these causes of action because I am informed and believe that they are properly plead, and my likelihood of succeeding on the merits of **all** causes of action are substantially greater than "slight".

31) Even so, in the unlikely event that the Demurrer is sustained, I am equally confident that, with proper clarifications made on the 4th and 6th causes of action, the proper pleading can and will be affirmatively alleged & proven.
   a. I have reason to believe that the Demurrer stems from a slight lack of clarity/understanding in the pleading and can be improved (if deemed necessary by the court) in order to withstand the Demurrer.
32) I am informed and believe that I have a very substantial case against PG&E, and the claim is **not frivolous**.
33) My causes of action in the pending State Court Action claim (Second Amended Complaint) are 1) Violation of FEHA/CFRA 2) Retaliation in violation of FEHA 3) Wrongful termination in violation of CA Labor Code 432.7 4) Wrongful termination in violation of CA Labor Code 1102.5 (Whistleblower Retaliation), 5) Wrongful termination in violation of Public Policy, and 6) Intrusion into private affairs.
34) PG&E has not attempted to Demurrer on other causes of action, and the discovery (which has been stayed) on those facts & elements were underway, and will be proven.
35) I wish to retain my right to a jury trial in the pending State Court Action and forum, as requested/demanded on the pleading.
36) It is my belief that based on prior proceedings; PG&E has already retained counsel for this pending State Court Action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

| Date | Print | Signature |
|---|---|---|
| 6-18-19 | Adam Cronin | /s/ |