WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                           **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OMNIBUS MOTION PURSUANT TO 11 U.S.C § 365(a), FED. R. BANKR. P. 6006, AND B.L.R. 6006-1 TO APPROVE THE UTILITY'S ASSUMPTION OF MUTUAL ASSISTANCE AGREEMENTS**<br><br>**(THE "MUTUAL ASSISTANCE MOTION")**<br><br>Hearing Date:  July 9, 2019<br>Hearing Time:  9:30am (Pacific Time)<br>Place:  United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102<br>Judge: Hon. Dennis Montali<br><br>Objection Deadline: July 2, 2019, at 4:00 p.m. (Pacific Time) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## NOTICE TO CONTRACT COUNTERPARTIES

**The counterparties to each of the Mutual Assistance Agreements to be assumed by Pacific Gas and Electric Company pursuant to this Motion are identified on <u>Exhibit B</u> hereto. If you have received this Motion and you are a counterparty to a Mutual Assistance Agreement with Pacific Gas and Electric Company, please review <u>Exhibit B</u> to determine if this Motion affects your rights thereunder.**

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to section 365(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6006-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), for an order approving the Utility's assumption of certain contracts and agreements (the "**Mutual Assistance Agreements**") with the utilities and governmental units identified in <u>**Exhibit B**</u> hereto (the "**Assisting Parties**"), pursuant to which the Assisting Parties provide the Utility with critical support and assistance to aid in restoring and maintaining electric utility service for the Utility's 16 million customers during emergency situations.

In support of the Motion, the Debtors submit the Declaration of Steve Coleman (the "**Coleman Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as <u>**Exhibit A**</u> (the "**Order**").

**Table of Contents**

I.     JURISDICTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................1

III.   THE MUTUAL ASSISTANCE AGREEMENTS ..............................................1

IV.    ASSUMPTION OF THE MUTUAL ASSISTANCE AGREEMENTS IS IN THE BEST INTERESTS OF THE UTILITY, ITS CREDITORS, AND ALL PARTIES IN INTEREST ...........................................................................................4

V.     REQUIREMENTS OF BANKRUPTCY RULE 6006 ....................................8

VI.    NOTICE ...............................................................................................................8

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*,
    476 F.3d 665 (9th Cir. 2007) ..................................................................................... 10

*In re Am. Suzuki Motor Corp.*,
    494 B.R. 466 (Bankr. C.D. Cal. 2013) ....................................................................... 10

*Bakery, Confectionary & Tobacco Workers Int'l Union v. Kirkpatrick (In re Kirkpatrick)*,
    34 B.R. 767 (B.A.P. 9th Cir. 1983) ............................................................................. 10

*In re Crummie*,
    194 B.R. 230 (Bankr. N.D. Cal. 1996) ........................................................................ 12

*Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*,
    204 F.3d 1276 (9th Cir., 2000) ................................................................................... 10

*In re Heitman*,
    No. 99-20559, 1999 WL 33486720 (Bankr. D. Idaho July 22, 1999) ........................ 12

*In re MF Glob. Holdings Ltd.*,
    466 B.R. 239 (Bankr. S.D.N.Y. 2012) ....................................................................... 10

*In re Miller*,
    No. 15-61159-12, 2016 WL 1316763 (Bankr. D. Mont. Apr. 1, 2016) ...................... 10

*NLRB v Bildisco & Bildisco*,
    465 U.S. 513 (1984) ...................................................................................................... 9

*Pac. Shores Dev. v. At Home Corp. (In re At Home Corp.)*,
    292 B.R. 195 (N.D. Cal. 2003), *aff'd*, 392 F.3d 1064 (9th Cir. 2004) ...................... 10

*Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*,
    503 F.3d 933 (9th Cir. 2007) ........................................................................................ 9

**Statutes**

11 U.S.C. § 365(a) .................................................................................................................. 9, 10

11 U.S.C. § 365(b) ...................................................................................................................... 12

11 U.S.C §§ 1107(a) and 1108 .................................................................................................... 6

28 U.S.C. § 1334 ......................................................................................................................... 6

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

28 U.S.C. § 157 ................................................................................................................. 6

28 U.S.C. §§ 1408 and 1409 ............................................................................................. 6

**Other Authorities**

B.L.R. 5011-1(a) ................................................................................................................ 6

Fed. R. Bank. P. 1015(b) ................................................................................................... 6

Fed. R. Bank. P. 2002 ...................................................................................................... 13

Fed. R. Bank. P. 6004 ...................................................................................................... 13

Fed. R. Bank. P. 6006(e) ................................................................................................. 13

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General
  Order 24 (N.D. Cal) ..................................................................................................... 6

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### II.    BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**").  On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

### III.    THE MUTUAL ASSISTANCE AGREEMENTS

When utility companies, such as the Utility, face natural and man-made disasters and other emergency situations that cause significant damage to their infrastructure and widespread

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

disruption of service to customers, it is of paramount importance that they respond quickly and safely to restore service to affected customers. In these emergency situations, utilities often rely on other utilities from areas of the country not affected by the outage or event in question to provide assistance and resources to accelerate restoration efforts – this is often referred to as the industry's mutual assistance network.

Restoring power after a major disruptive event – such as an earthquake, winter storm, or wildfire – is a complex task that requires significant logistical support and restoration expertise. Following such an event, the Utility must quickly increase the number of skilled line restoration workers and have access to the necessary specialized equipment and tools to timely respond and repair damaged power and gas infrastructure and restore service to customers. To do this, the Utility turns to the mutual assistance network. Absent support from the network of companion utilities and governmental units that participate in the mutual assistance network, it would be extremely difficult, if not impossible, for the Utility to obtain sufficient trained personnel with years of utility specific experience and the other resources necessary to promptly respond to these events.

Access to the mutual assistance network is particularly important for the Utility due to its location in the State of California. The size, geography, and climate of California means that the Utility faces extreme weather conditions and earthquake risks, and can face disruptive events arising from these conditions at any point during the calendar year and throughout its service territory. While the threat of emergency situations exists year-round, the Utility faces particularly acute and critical threats during the summer wildfire season.

These voluntary assistance arrangements are formalized in agreements, including the Mutual Assistance Agreements, which are generally managed by regional mutual assistance groups throughout the United States. The Mutual Assistance Agreements provide a framework for utilities to request assistance from other utilities in emergency situations, and, if such assistance is provided, for the requesting utility to reimburse the assisting utilities for the costs and expenses of providing such assistance. The Mutual Assistance Agreements do not obligate a utility to provide assistance in emergencies; however, if assistance is provided, the requesting utility is obligated to reimburse the

assisting utility under the terms of the agreements.

The Utility is seeking to assume[1] the following Mutual Assistance Agreements[2] with a total of 235 Assisting Parties (some being party to more than one agreement):

1. The Mutual Assistance Agreement (Electric and Natural Gas) among Members of the California Utilities Emergency Association (the "**CUEA Agreement**"), executed by the Utility on July 16, 2008;

2. The Western Region Mutual Assistance Agreement for Electric and Natural Gas Utilities (the "**WR Agreement**"), executed by the Utility on June 7, 2006;

3. The Edison Electric Institute Mutual Assistance Agreement, (the "**Master Agreement**") executed by the Utility on November 13, 2012;

4. The Reciprocal Assistance Agreement, dated September 9, 2014, between the Utility and Florida Power & Light Company (the "**FPL Agreement**");

5. The American Gas Association Master Operations Assistance Agreement (the "**AGA Agreement**") executed by the Utility on December 13, 2016; and

6. The Mutual Assistance Agreement, dated January 5, 1994 between the Utility and Trinity County Public Utilities District (the "**TCPUD Agreement**").

The primary terms of each Mutual Assistance Agreement are substantially similar with each agreement providing for: (i) the method for a utility to request assistance; (ii) the requesting party's obligations to reimburse the assisting party's reasonable costs and expenses; (iii) the requesting party's obligations to provide facilities and supplies to assisting utility personnel; and (iv) the terms and conditions on which assistance is provided, including employment terms, supervisory responsibility, and other operational procedures. The Mutual Assistance Agreements generally extend in perpetuity with no defined end date,[3] and generally permit a party to withdraw from the agreement at will, subject to certain notice requirements.[4]

---

[1] The Utility may be party to additional agreements related to mutual assistance or containing provisions regarding mutual assistance which they are not seeking to assume at this time, but reserve the right to do so at a later date.

[2] Copies of the Mutual Assistance Agreements will be provided to counsel for the Committees and the U.S. Trustee, and may be made available to other parties in interest upon request.

[3] The AGA Agreement is effective until December 31, 2020.

[4] The FPL Agreement does not include a specific procedure for termination.

The support provided through these Mutual Assistance Agreements is an essential part of the Utility's restoration and response efforts in emergency outage situations as well as its contingency planning efforts. In recent years, the Utility has had a greater need to call on support from Assisting Parties under these agreements. In 2017, the Utility requested and received assistance from 552 full-time equivalent utility workers from approximately 18 Assisting Parties for three major emergency incidents. In 2018, the Utility requested and received assistance from 464 full-time equivalent utility workers from 24 Assisting Parties for two major emergency incidents. The Utility has already sought support from Assisting Parties in response to snow storms causing outages in February 2019.

Currently, the Utility has outstanding financial obligations to the various Assisting Parties under the Mutual Assistance Agreements relating to emergency situations that occurred prior to the Petition Date, including assistance in responding to the Camp Fire, the Carr Fire and the Mendocino Complex Fire. As of the Petition Date, based on a review of its books and records, the Utility owes approximately $28.5 million to twenty-four Assisting Parties for assistance provided prior to the Petition Date (the "**Outstanding MAA Obligations**"). The Outstanding MAA Obligations owed to each Assisting Party, which must be satisfied or cured for the Utility to assume the applicable Mutual Assistance Agreement, are identified in **Exhibit B** hereto.

## IV.   ASSUMPTION OF THE MUTUAL ASSISTANCE AGREEMENTS IS IN THE BEST INTERESTS OF THE UTILITY, ITS CREDITORS, AND ALL PARTIES IN INTEREST

The Utility's assumption of the Mutual Assistance Agreements should be approved under section 365(a) of the Bankruptcy Code. Section 365(a) provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract . . . of the debtor." 11 U.S.C. § 365(a).

The Supreme Court has defined "executory contracts" as contracts "on which performance is due to some extent on both sides." *NLRB v Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984). The Ninth Circuit has described executory contracts in similar terms, being contracts where "one party's failure to perform its obligation would excuse the other party's performance." *Zurich Am.*

*Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.),* 503 F.3d 933, 941 (9th Cir. 2007) (citing *Commercial Union Ins. Co. v. Texscan Corp. (In re Texscan Corp.)*, 976 F.2d 1269, 1272 (9th Cir., 1992)). The Mutual Assistance Agreements clearly fall within this definition. In each case, there remains material performance obligations on both the Utility and the Assisting Parties under the Mutual Assistance Agreements.

Bankruptcy Courts generally "approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Glob. Holdings Ltd*., 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir., 2000); *In re Miller,* No. 15-61159-12, 2016 WL 1316763, at *4 (Bankr. D. Mont. Apr. 1, 2016).

The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract will benefit the debtor's estate. *See Bakery, Confectionary & Tobacco Workers Int'l Union v. Kirkpatrick (In re Kirkpatrick)*, 34 B.R. 767, 769 (B.A.P. 9th Cir. 1983); *Pac. Shores Dev. v. At Home Corp. (In re At Home Corp.),* 292 B.R. 195, 199 (N.D. Cal. 2003), *aff'd*, 392 F.3d 1064 (9th Cir. 2004) ("Bankruptcy courts generally approve rejection if the debtor demonstrates that the rejection will benefit the estate under a 'business judgment' test."); *In re Am. Suzuki Motor Corp*., 494 B.R. 466, 476 (Bankr. C.D. Cal. 2013). Furthermore, "[c]ourts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract or unexpired lease would benefit the debtor's estate." *In re MF Glob. Holdings Ltd.*, 466 B.R. at 242; *In re Miller,* 2016 WL 1316763, at *4 ("Although the business judgment is the proper standard for determining whether to permit assumption or rejection of an executory contract or unexpired lease, the court should focus on the business judgment of the trustee or debtor in possession, not on its own business judgment."). The Court should "presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (in the context of a motion to reject under section

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

365(a)). Only a decision which is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice" falls foul of the rule. *Id.*

The Utility seeks to assume the Mutual Assistance Agreements to ensure that it has adequate resources and support in the event of future outages or other emergency circumstances. As set forth in the Coleman Declaration, the support of the Assisting Parties is critical for the fast, safe, and efficient restoration of service during major outages and for the Utility's contingency planning purposes. As stated, due to the size, geography, and climate of California, the Utility faces extreme weather conditions and earthquake risks that can result in events requiring mutual assistance at any point during the year and throughout its service territory; however, that risk is especially acute and critical during the summer wildfire season. Accordingly, assumption of the Mutual Assistance Agreements at this time, prior to the start of the wildfire season, is necessary and appropriate to safeguard the continued and ongoing delivery of electricity and natural gas to the Utility's 16 million customers. Furthermore, the Mutual Assistance Agreements are unique among the Utility's portfolio of executory contracts in that they are agreements with other utilities and governmental units within the mutual assistance network to respond to emergency situations and only require the Utility to reimburse costs and expenses unlike other contracts that presumably include fees, profits, and margins.

Absent assumption of the Mutual Assistance Agreements, the Utility's ability to safely and efficiently mitigate hazards caused by damage to power plants, transmission lines, and substations, including addressing down power lines, will be significantly delayed. Moreover, the Utility's ability to promptly restore power to other critical services (such as hospitals, police and fire stations, and other essential utilities including water and communications systems) may also be delayed or compromised, which in turn may delay the ability of those services to respond to or be utilized in emergency situations.

As set forth in the Coleman Declaration, absent payment of the Outstanding MAA Obligations and confirmation that any future obligations incurred by the Utility pursuant to the Mutual Assistance Agreements will be afforded priority as administrative expenses in the Chapter 11 Cases, the Utility will face difficulty in obtaining the critical and necessary assistance of other utilities during future outages and emergency situations as Assisting Entities may decline to provide support. If the Utility

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

cannot rely on the Assisting Parties in future emergencies, the Utility's ability to promptly respond to emergency situations and natural disasters will be materially compromised, resulting in a serious risk to public safety. This could lead to a situation where the Utility may be forced to invest valuable time and capital in additional resources that would sit idle during normal business operations to ensure it can adequately respond to emergency situations. Assumption of the Mutual Assistance Agreements would avoid these costs and expenses and ensure that the Utility has access to the necessary manpower and equipment to respond to emergency situations, as and when needed.

As set forth in the Coleman Declaration, the Utility has observed that the number of Assisting Parties which have responded to requests for mutual assistance following the commencement of the Chapter 11 Cases has been lower than the Utility would expect based on previous requests. Accordingly, the Utility seeks to assume the Mutual Assistance Agreements to ensure that it can promptly respond to major emergencies and natural disasters. These matters are important to the continued ability of the Utility to operate its business in a safe and reliable manner and to the success of these Chapter 11 Cases. There can be no reasonable argument that the decision is not based on sound business judgment. Accordingly, the relief requested herein should be approved as a sound exercise of the Utility's business judgment.

When assuming an executory contract, section 365(b) of the Bankruptcy Code requires the debtor to cure any defaults under the contract or provide adequate assurance that it will promptly cure these defaults. *See* 11 U.S.C. § 365(b)(1)(A); see also *In re Crummie*, 194 B.R. 230, 237 (Bankr. N.D. Cal. 1996); *In re Heitman*, No. 99-20559, 1999 WL 33486720, at *1 (Bankr. D. Idaho July 22, 1999) ("Additionally, § 365(a) and (b) require Court approval of assumption, and only then upon proof of satisfaction of certain prerequisites regarding cure of defaults and adequate assurance of future performance."). The only defaults under the Mutual Assistance Agreements by the Utility is non-payment of the Outstanding MAA Obligations. The Utility has funds available to pay the Outstanding MAA Obligations and will pay them promptly following the approval of this Motion in the amounts set

forth in **Exhibit B**. [5]

## V.      REQUIREMENTS OF BANKRUPTCY RULE 6006

The Utility requests authorization pursuant to Bankruptcy Rule 6006(e) to file this Motion as an omnibus motion to assume the Mutual Assistance Agreements.  As outlined above, (i) the Mutual Assistance Agreements are all related to the Utility's requests for, and provision of, mutual assistance in emergencies, and (ii) the Mutual Assistance Agreements all contain similar terms.  Accordingly, the Utility believes there is ample cause for an order permitting this Motion to be heard as an omnibus motion to avoid the Utility's estate bearing the cost of six, near-identical motions to assume each Mutual Assistance Agreement.  There is no detriment to any party in interest in having the Motion heard as an omnibus motion.

## VI.     NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) each of the Assisting Parties; and (xiii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice is required.

---

[5] $27,377.31 of the Outstanding MAA Obligations owed to Florida Power & Light Company ("**FPL**") by the Utility (out of a total of $7,431,964) is subject to ongoing review and reconciliation by the Utility (the "**Disputed Amounts**").  In the event the Utility determines it is not liable for part or all of the Disputed Amounts under the FPL Agreement, it will not pay such amounts to FPL.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Utility's business judgment and in the best interests of its estate, creditors, shareholders, and all other parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: June 18, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: ___/s/ Stephen Karotkin_____
       Stephen Karotkin

*Attorneys for Debtors*
*and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119