WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C.
(ray.schrock@weil.com) (*pro hac vice*)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF STEVE COLEMAN IN SUPPORT THE MUTUAL ASSISTANCE MOTION**<br><br>Hearing Date: July 9, 2019<br>Hearing Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>Judge: Hon. Dennis Montali<br><br>Objection Deadline: July 2, 2019, at 4:00 p.m. (Pacific Time) |

I, Steve Coleman, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am Senior Director of Sourcing at Pacific Gas and Electric Company (the "**Utility**" and, together with PG&E Corporation, the "**Debtors**"). I joined the Utility in 1984 and held successive leadership positions in supply chain roles before becoming a Director of Corporate Real Estate. In 2007, I transitioned back to supply chain and sourcing roles and, in 2014, I was promoted to my current position. I currently lead Electric Supply Chain and Sourcing Operations. I hold a bachelor's degree in labor studies from San Francisco State University and a master's degree in business administration and management from John F. Kennedy University.

2. This Declaration is submitted in support of the *Omnibus Motion Pursuant to 11 U.S.C § 365(a), Fed. R. Bankr. P. 6006, and B.L.R. 6006-1 for an Order Approving the Utility's Assumption of Mutual Assistance Agreements* (the "**Motion**"), filed concurrently herewith.[1] I am knowledgeable and familiar with the Utility's day-to-day operations and, specifically, the Utility's interaction with the utilities and governmental units when the Utility requests, or answers requests for, assistance pursuant to the Mutual Assistance Agreements.

3. The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' other employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify to the facts set forth in this Declaration.

4. When utility companies, such as the Utility, face natural and man-made disasters and other emergency situations that cause significant damage to their infrastructure and widespread disruption of service to customers, it is of paramount importance that they respond quickly and safely to restore service to affected customers. In these emergency situations, utilities often rely on other utilities

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

from areas of the country not affected by the outage or event in question to provide assistance and resources to accelerate restoration efforts – this is often referred to as the industry's mutual assistance network.

5. Restoring power after a major disruptive event – such as an earthquake, winter storm, or wildfire – is a complex task that requires significant logistical support and restoration expertise. Following such an event, the Utility must quickly increase the number of skilled line restoration workers and have access to the necessary specialized equipment and tools to timely respond and repair damaged power and gas infrastructure and restore service to customers. To do this, the Utility turns to the mutual assistance network. Absent support from the network of companion utilities and governmental units that participate in the mutual assistance network, it would be extremely difficult, if not impossible, for the Utility to obtain sufficient trained personnel with years of utility specific experience and the other resources necessary to promptly respond to these events.

6. I believe that access to the mutual assistance network is particularly important for the Utility due to its location in the State of California. The size, geography, and climate of California means that the Utility faces extreme weather conditions and earthquake risks, and can face disruptive events arising from these conditions at any point during the calendar year and throughout its service territory. While the threat of emergency situations exists year-round, I believe the Utility faces particularly acute and critical threats during the summer wildfire season.

7. These voluntary assistance arrangements are formalized in agreements, including the Mutual Assistance Agreements, which are generally managed by regional mutual assistance groups throughout the United States. The Mutual Assistance Agreements provide a framework for utilities to request assistance from other utilities in emergency situations, and if such assistance is provided, for the requesting utility to reimburse the assisting utilities for the costs and expenses of providing such assistance. It is my understanding that these agreements do not obligate a utility to provide assistance in emergencies; however, if assistance is provided, the requesting utility is obligated to reimburse the assisting utility under the terms of the agreements.

8. Pursuant to the Motion, the Utility is seeking to assume the following Mutual Assistance Agreements with a total of 235 Assisting Parties (some being party to more than one agreement):

  a) The Mutual Assistance Agreement (Electric and Natural Gas) among Members of the California Utilities Emergency Association (the "**CUEA Agreement**"), executed by the Utility on July 16, 2008;

  b) The Western Region Mutual Assistance Agreement for Electric and Natural Gas Utilities (the "**WR Agreement**"), executed by the Utility on June 7, 2006;

  c) The Edison Electric Institute Mutual Assistance Agreement, (the "**Master Agreement**") executed by the Utility on November 13, 2012;

  d) The Reciprocal Assistance Agreement, dated September 9, 2014, between the Utility and Florida Power & Light Company (the "**FPL Agreement**");

  e) The American Gas Association Master Operations Assistance Agreement (the "**AGA Agreement**") executed by the Utility on December 13, 2016; and

  f) The Mutual Assistance Agreement, dated January 5, 1994 between the Utility and Trinity County Public Utilities District (the "**TCPUD Agreement**").

9. It is my understanding that the primary terms of each Mutual Assistance Agreement are substantially similar with each agreement providing for: (i) the method for a utility to request assistance; (ii) the requesting party's obligations to reimburse the assisting party's reasonable costs and expenses; (iii) the requesting party's obligations to provide facilities and supplies to assisting utility personnel; and (iv) the terms and conditions on which assistance is provided, including employment terms, supervisory responsibility, and other operational procedures. The Mutual Assistance Agreements generally extend in perpetuity with no defined end date,[2] and generally permit a party to withdraw from the agreement at will, subject to certain notice requirements.[3]

10. I believe that the support provided through these Mutual Assistance Agreements is an essential part of the Utility's restoration and response efforts in emergency outage situations as well

---

[2] The AGA Agreement is effective until December 31, 2020.

[3] The FPL Agreement does not include a specific procedure for termination.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

as its contingency planning efforts. In recent years, the Utility has had a greater need to call on support from Assisting Parties under these agreements. It is my understanding that, in 2017, the Utility requested and received assistance from 552 full-time equivalent utility workers from approximately 18 Assisting Parties for three major emergency incidents. I further understand that, in 2018, the Utility requested and received assistance from 464 full-time equivalent utility workers from 24 Assisting Parties for two major emergency incidents. The Utility has already sought support from Assisting Parties in response to snow storms causing outages in February 2019.

11. Currently, the Utility has outstanding financial obligations to the various Assisting Parties under the Mutual Assistance Agreements relating to emergency situations that occurred prior to the Petition Date, including assistance in responding to the Camp Fire, the Carr Fire and the Mendocino Complex Fire. As of the Petition Date, based on a review of its books and records, the Utility owes approximately $28.5 million to twenty-four Assisting Parties for assistance provided prior to the Petition Date (the "**Outstanding MAA Obligations**").[4] The Outstanding MAA Obligations owed to each Assisting Party is identified in **Exhibit B** of the Motion.

12. The Utility seeks to assume the Mutual Assistance Agreements pursuant to the Motion to ensure that it has adequate resources and support in the event of future outages or other emergency circumstances. I believe that the support of the Assisting Parties is critical for the fast, safe, and efficient restoration of service during major outages and for the Utility's contingency planning purposes. As stated, due to the size, geography, and climate of California, the Utility faces extreme weather conditions and earthquake risks that can result in events requiring mutual assistance at any point during the year and throughout its service territory; however, that risk is especially acute and critical during the summer wildfire season. Accordingly, I believe that the assumption of the Mutual Assistance Agreements at this time, prior to the start of the wildfire season is necessary and appropriate to safeguard

---

[4] $27,377.31 of the Outstanding MAA Obligations owed to Florida Power & Light Company ("FPL") by the Utility (out of a total of $7,431,964) is subject to ongoing review and reconciliation by the Utility (the "**Disputed Amounts**"). In the event the Utility determines it is not liable for part or all of the Disputed Amounts under the FPL Agreement, it will not pay such amounts to FPL.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

the continued and ongoing delivery of electricity and natural gas to the Utility's 16 million customers. Furthermore, the Mutual Assistance Agreements are unique among the Utility's portfolio of executory contracts in that they are agreements with other utilities and governmental units within the mutual assistance network to respond to emergency situations and only require the Utility to reimburse costs and expenses unlike other contracts that presumably include fees, profits, and margins.

13. Absent assumption of the Mutual Assistance Agreements, the Utility's ability to safely and efficiently mitigate hazards caused by damage to power plants, transmission lines, and substations, including addressing down power lines, will be significantly delayed. Moreover, the Utility's ability to promptly restore power to other critical services (such as hospitals, police and fire stations, and other essential utilities including water and communications systems) may also be delayed or compromised, which in turn may delay the ability of those services to respond to or be utilized in emergency situations

14. Absent payment of the Outstanding MAA Obligations and confirmation that any future obligations incurred by the Utility pursuant to the Mutual Assistance Agreements will be afforded priority as administrative expenses in the Chapter 11 Cases, I believe that the Utility will face difficulty in obtaining the critical and necessary assistance of other utilities during future outages and emergency situations as Assisting Entities may decline to provide support. If the Utility cannot rely on the Assisting Parties in future emergencies, the Utility's ability to promptly respond to emergency situations and natural disasters will be materially compromised, resulting in a serious risk to public safety. This could lead to a situation where the Utility may be forced to invest valuable time and capital in additional resources that would sit idle during normal business operations to ensure it can adequately respond to emergency situations. Assumption of the Mutual Assistance Agreements would avoid these costs and expenses and ensure that the Utility has access to the necessary manpower and equipment to respond to emergency situations, as and when needed.

15. It is my understanding that the number of Assisting Parties which have responded to requests for mutual assistance following the commencement of the Chapter 11 Cases has been lower

than the Utility would expect based on previous requests.  Accordingly, the Utility seeks to assume the Mutual Assistance Agreements to ensure that it can promptly respond to major emergencies and natural disasters.  I believe that these matters are important to the continued ability of the Utility to operate its business in a safe and reliable manner, and to the success of these Chapter 11 Cases.  Accordingly, I believe the relief requested in the Motion should be approved as a sound exercise of the Utility's business judgment.

[*Remainder of this page is intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Concord, California on June 18, 2019.

/s/ *Steve Coleman*
Steve Coleman