# **Exhibit B**

Master Services Agreement

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119



# MASTER SERVICES AGREEMENT

Updated January 2018

# TABLE OF CONTENTS

Page

1. RELATIONSHIP AND ENGAGEMENT EXPECTATIONS ................................................ 1

2. RATES, EXPENSES, AND SERVICES ................................................................. 2

3. VOLUME AND DURATION OF WORK ................................................................. 3

4. DIVERSITY ................................................................................................. 3

5. BILLING .................................................................................................... 4

6. CONFLICTS OF INTEREST AND BUSINESS ETHICS ............................................ 4

7. COMPLIANCE WITH SARBANES-OXLEY ACT ATTORNEY CONDUCT RULES ..... 4

8. WARRANTY ............................................................................................... 5

9. INFRINGEMENT PROTECTION ...................................................................... 5

10. HAZARDOUS MATERIALS ............................................................................. 5

11. SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY .............................. 5

12. CONFIDENTIAL INFORMATION AND INFORMATION SECURITY MEASURES ..... 6

13. DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS ........................... 7

14. AVAILABILITY OF BILLING INFORMATION ................................................... 7

15. FEDERAL EQUAL OPPORTUNITY LAWS ....................................................... 7

16. CHOICE OF LAWS ....................................................................................... 8

17. NON-WAIVER .............................................................................................. 8

18. FORCE MAJEURE ........................................................................................ 8

19. TERMINATION AND BREACH OF AGREEMENT ............................................... 8

20. ARBITRATION OF FEE DISPUTE ................................................................... 9

21. PROFESSIONAL LIABILITY INSURANCE ........................................................ 9

22. GENERAL PROVISIONS ................................................................................ 9

# PG&E MASTER SERVICES AGREEMENT

This Master Services Agreement governs your representation of Pacific Gas and Electric Company ("PG&E") on all matters. This Master Services Agreement includes and incorporates all attached Exhibits and PG&E's Outside Counsel Billing Requirements ("Billing Requirements"). The Master Services Agreement, Exhibits, and Billing Requirements are referred to jointly as the "Agreement."

For purposes of this Agreement, "you" and "your" means: (1) the law firm or legal services provider executing this Agreement; and (2) all personnel, representatives, and vendors of such law firm or service provider. PG&E and the law firm may be individually referred to as "Party" and jointly referred to as "Parties."

As each distinct matter in which you are presenting PG&E arises, a separate engagement letter agreement will be sent to you covering the specific details of the matter. The terms of this Agreement apply to each such engagement.

1. **RELATIONSHIP AND ENGAGEMENT EXPECTATIONS**

   1.1 <u>Retention</u>. You acknowledge and agree that you have been engaged and will be supervised by PG&E's Legal Department. You should not solicit or accept an engagement from any PG&E department other than the Law Department. PG&E reserves the right to direct each matter for which you have been retained, including all litigation.

   1.2 <u>Firm Relationship Partner</u>. You are expected to identify a Relationship Partner for your firm to serve as a single point of contact across matters. While this person may serve as the lead outside counsel for certain matters, the expectation is that he or she will maintain a level of knowledge regarding your firm's scope of services for PG&E, spanning across all matters for which you are retained. The Relationship Partner will be a single point of contact for periodic discussions related to two-way feedback, dissemination of information, updates, general relationship considerations, and other administrative topics.

   1.3 <u>PG&E Relationship Manager</u>. PG&E will identify a Relationship Manager for your firm to serve as a single point of contact across matters. The Relationship Manager will meet with you periodically to review the matters that you are handling. The Relationship Manager will be a single point of contact for periodic discussions related to two-way feedback, dissemination of information, updates, general relationship considerations, and other administrative topics.

   1.4 <u>PG&E Matter Liaison</u>. All PG&E legal matters are coordinated through the PG&E Law Department. A PG&E Matter Liaison will be assigned for each matter that you handle for PG&E. You and the PG&E Matter Liaison should coordinate efforts in developing the most effective strategy for handling a matter. In some cases, the PG&E Matter Liaison may not be an attorney, or may be outside of the PG&E Law Department.

1

1.5 <u>Your Conduct as PG&E's Representative</u>. Your conduct, attitude, and demeanor while representing PG&E should be professional and courteous at all times. Your communications, whether oral or written, must be civil and respectful in tone. Your representation should be consistent with PG&E's culture, including acting with integrity, transparency and humility, valuing diversity and inclusion, and succeeding through collaboration and partnership. PG&E is committed to maintaining, promoting, and improving employee, contractor, and public safety and health, and firms performing services for PG&E are to do the same.

1.6 <u>Consultants/Experts</u>. In addition to its own in-house experts, PG&E reserves the right to identify and recommend all outside consultants/experts. Authorization must be obtained from PG&E before hiring any expert or consultant, as described further in the Billing Requirements.

1.7 <u>Independent Contractor Status</u>. In assuming and performing the obligations of this Agreement, you are an independent contractor and will not be eligible for any benefits which PG&E may provide its employees. All persons, if any, whom you hire must be your employees or your subcontractors and will not be construed as employees or agents of PG&E in any respect.

1.8 <u>Periodic Requests for Proposals</u>. When PG&E uses outside counsel, it does so based on counsel's professionalism and expertise. PG&E approaches its relationship with outside counsel as a partnership, and understands the value of developing that relationship over the long term. At the same time, PG&E wants to derive the most benefit from its outside counsel expenditures. For those subject matters for which PG&E retains outside counsel on a regular basis, PG&E intends to issue requests for proposals at least once every two years to multiple law firms with expertise in the subject matter.

2. **RATES, EXPENSES, AND SERVICES**

2.1 <u>Rates</u>. The Parties have agreed to the rates for individuals and specific categories of work that are included in Exhibit A. In addition, to the extent that you have offered a discount for certain volumes of work, the discounts are also reflected in Exhibit A.

2.2 <u>Expenses and Disbursements</u>. The Billing Requirements include a description of the expenses and disbursements that PG&E will pay for under this Agreement. PG&E will <u>not</u> reimburse you for expenses or disbursements that are not reasonable, ordinary, economical, and prudent, nor will PG&E pay for expenses or costs that are prohibited by the Billing Requirements or are above an amount specified in the Billing Requirements.

2.3 <u>Nonconforming items, Expenses and Disbursement</u>. PG&E will strike from your statements any items, expenses, or disbursements that do not conform with the terms of this Agreement, including the Billing Requirements.

2.4 <u>Alternative Fee Arrangements</u>. To the extent that you have offered PG&E an alternative fee arrangement for all of the services that you will provide under this Agreement, the alternative fee arrangement is included in Exhibit A. The Parties may also agree to alternative fee arrangements for specific matters. To the extent there is an alternative fee arrangement for a specific matter, or for any specific project associated with a matter (*e.g.*, a fixed fee for a motion), that alternative fee arrangement will be included in the engagement letter related to that specific matter and/or will be separately documented by the Parties.

2.5 <u>Additional Services</u>. To the extent that you have offered additional services to PG&E, these additional services are also included in Exhibit A. PG&E may utilize these additional services during the term of this Agreement.

2.6 <u>Billing Requirements</u>. PG&E may amend the Billing Requirements at its sole discretion from time to time and will provide you with a copy of the amended Billing Requirements and the date the amended Billing Requirements become effective.

## 3. VOLUME AND DURATION OF WORK

3.1 <u>Volume of Work</u>. This Agreement does not guarantee you any volume or duration of work. This Agreement establishes the terms and conditions on which PG&E will, through the issuance of specific engagement letters, obtain legal services from you.

3.2 <u>Duration of Work</u>. No services are authorized to be performed on any matter without issuance by PG&E of an engagement letter for that matter. This Agreement is intended to be an "evergreen" agreement without a specified termination date. However, the Parties may individually or jointly terminate this Agreement, as well as any engagement entered into under this Agreement, under the termination provisions in Section 19.

## 4. DIVERSITY

4.1 <u>Diversity Plan</u>. If you hire consultants to assist you on providing legal services to PG&E, with PG&E's prior approval, PG&E encourages you to submit to PG&E your plan to provide Small Business Enterprises ("SBEs"), Women, Minority and Disabled Veteran Business Enterprises ("WMDVBEs"), and Lesbian, Gay, Bisexual and Transgender Business Enterprises ("LGBTBEs") the opportunity to bid on the performance of work.

4.2 <u>Identification of Small and Diverse Business Enterprises</u>. PG&E has Supplier Diversity specialists available to assist you in identifying certified small business and diverse businesses for bidding opportunities.

5. **BILLING**

    5.1    PG&E currently utilizes TeamConnect, a matter management system, and its electronic billing ("e-billing") system, Collaborati. The Collaborati system is how your firm will collaborate with the PG&E Law Department on timekeeper and invoice management. You agree to abide by the terms of use for such system. You acknowledge that PG&E has the right to change the e-billing system from time-to-time and you agree to cooperate in the implementation of any successor e-billing system selected by PG&E. More detailed billing information is included in the Billing Requirements. Please note: PG&E will only accept your statements in electronic format via Collaborati. Any mailed statement will be returned unpaid.

6. **CONFLICTS OF INTEREST AND BUSINESS ETHICS**

    6.1    As long as your services for PG&E continue under this engagement, you are required to adhere to:

        6.1.1    All applicable rules and regulations governing professional conduct;

        6.1.2    PG&E's Supplier Code of Conduct (http://www.pge.com/includes/docs/pdfs/b2b/purchasing/suppliers/SupplierCode ofConductPGE.pdf); and

        6.1.3    PG&E's "Attorney Representation Conflict Principles" which are included as Exhibit B.

    6.2    You agree to immediately notify immediately PG&E's Deputy General Counsel or Assistant General Counsel of any violations of this Section 6 upon becoming aware of such violation.

7. **COMPLIANCE WITH SARBANES-OXLEY ACT ATTORNEY CONDUCT RULES**

    7.1    You agree to comply with the Securities and Exchange Commission's ("SEC") Attorney Conduct Rules promulgated on August 5, 2003, in Part 205 of Title 17 of the Code of Federal Regulations, as may be amended from time to time ("the Part 205 Rules").

    7.2    Upon PG&E's request, you agree to furnish to PG&E a written statement that you have a policy to comply with the Part 205 Rules.

    7.3    You agree to notify and consult with PG&E's Executive Vice President and General Counsel, Vice President and Deputy General Counsel, and/or Assistant General Counsel, subject to your reasonable discretion and ethical obligations, if you believe that a formal report to the Executive Vice President and General Counsel or the Audit Committee of PG&E's Board of Directors is warranted under the Part 205 Rules. In this regard, you agree to designate in writing a single

attorney as the "supervisory attorney" to make any required reports and to receive notification regarding responses from PG&E. The term "supervisory attorney" is defined in the Part 205 Rules. Further, you agree to keep PG&E currently informed of the identity of your "supervisory attorney."

## 8.  WARRANTY

8.1  You warrant to PG&E that the work under this Agreement will be performed with the degree of skill and care that is required by current, good, and sound professional procedures and practices, and in conformance with generally accepted professional standards prevailing at the time the work is performed so as to ensure that the services performed are correct and appropriate for the purposes contemplated in this Agreement.

## 9.  INFRINGEMENT PROTECTION

9.1  You represent to PG&E that the material to be prepared under this Agreement will not infringe upon the copyright, patent, or license, or otherwise violate the proprietary rights, including trade secret rights, of any person or entity. You agree to indemnify and hold PG&E, its parent, subsidiaries, and affiliates harmless from any liabilities, costs, and damages arising out of any such infringement and from any suit, demand or claim made against PG&E, its parent, subsidiaries, and affiliates alleging any such infringement or violation. If there is such a suit, demand, or claim, you agree as soon as possible either to procure for PG&E the right to continue using the material, replace the material with noninfringing material, or modify it so it becomes noninfringing. You further agree to pay any judgment or reasonable settlement offer resulting from a suit, demand or claim, and pay any reasonable attorney's fees incurred by PG&E in defense against such suit, demand, or claim.

## 10.  HAZARDOUS MATERIALS

10.1  The California Health and Safety Code requires businesses to provide warnings prior to exposing individuals to materials listed by the Governor as chemicals "known to the State of California to cause cancer, birth defects, or reproductive harm." PG&E uses chemicals on the Governor's list at many of its facilities. In addition, many of these chemicals are present at non-PG&E-owned facilities and locations. Accordingly, in performing the work or services contemplated under this Agreement, you, your employees, agents, and subcontractors may be exposed to chemicals on the Governor's list. You are responsible for notifying your employees, agents, and subcontractors that work performed hereunder may result in exposures to chemicals on the Governor's list.

## 11.  SAFETY PRECAUTIONS AND PROTECTION OF PROPERTY

11.1  At PG&E, safety is a core value and PG&E is committed to improving employee, contractor, and public safety. You will perform all work associated with your representation of PG&E safely, in compliance with all applicable laws,

regulations, and best practices, including but not limited to, "Occupational Safety and Health Standards" promulgated by the U.S. Secretary of Labor and the California Division of Occupational Safety and Health and with the understanding that you are representing a company that promote safety in the communities it serves. In the course of your representation of PG&E, if you are on-site at PG&E facilities or asset locations, you will be required to comply with all PG&E safety procedures and precautions. If, in the course of your representation of PG&E, you encounter any situations or operations that you consider to be unsafe, please alert the PG&E Matter Liaison immediately so that the unsafe situation can be evaluated and made safe as necessary.

12.  **CONFIDENTIAL INFORMATION AND INFORMATION SECURITY MEASURES**

12.1  Definition. Under this Agreement, "PG&E Confidential Information" shall include: (i) all documents, data and information that you receive in the course of performing under this Agreement (whether from PG&E, or a PG&E-authorized third party, and whether prior to this Agreement in contemplation of performing work under this Agreement) including, without limitation: customer information; employee information; regulatory information; litigation strategies; business strategies and costs; financial information; vendor or contractor information; gas and electric system information; technical information; intellectual property; information in the custody of PG&E or a third party which constitutes valuable confidential and proprietary information and/or trade secrets belonging to PG&E or third parties; and information relating to or owned by any affiliate of PG&E including its parent, subsidiaries, or affiliated companies; and (ii) all documents, data or information you create in connection with your representation of PG&E.

12.2  Exclusions. PG&E Confidential Information shall not include information that: (i) was in the public domain at the time you received it or is subsequently made available to the general public without restriction and without breach of this Agreement by you; (ii) was or becomes known by you at the time of disclosure on a non-confidential basis from a source, other than PG&E, lawfully having possession of and the right to disclose such information; (iii) was independently developed by you (other than in connection with your representation of PG&E) without use of PG&E Confidential Information; (iv) is disclosed with the prior written approval of PG&E; or (v) is used or disclosed pursuant to a court order, subpoena or other lawful order of a court or governmental authority of competent jurisdiction in which case you shall give PG&E maximum practicable advance notice prior to any use or disclosure.

12.3  Treatment of PG&E Confidential Information. PG&E Confidential Information shall be treated as confidential and shall not be disclosed to others unless such disclosure is in support of performing your obligations under this Agreement and approved by PG&E.

12.4 Security Measures. Exhibit C to this Agreement, *Security Measures to Protect PG&E Confidential Information*, describes the measures necessary to protect PG&E Confidential Information. Failure to implement and maintain Security Measures in accordance with Exhibit C, or resolve and mitigate any non-compliance, may constitute a material breach of this Agreement.

## 13. DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS

13.1 You agree to comply with the *PG&E Contractor Document Retention and Production Requirements* included in Exhibit D. In Exhibit D, the term "Contractor" means you and the term "Work" means the services performed under this Agreement.

## 14. AVAILABILITY OF BILLING INFORMATION

14.1 Terms and Scope. PG&E will have, during the term of the Agreement and for five (5) years thereafter, access at all reasonable times to all of you and your subcontractors accounts and records of all description, including but not limited to computer files, pertaining to this Agreement necessary to verify and review the work performed and the fees and expenses billed to PG&E. These records will include work papers and related files, time reports and details of reimbursable expenses (with invoices for charges in excess of $75). You are not required to disclose any confidential and/or proprietary information including, but not limited to, other client information and information related to internal financial matters or affairs.

14.2 Accounting Information. You and your subcontractors' accounts must be kept in accordance with generally accepted accounting principles in the particular industry and must be kept in such a manner and in sufficient detail to clearly disclose the nature and amounts of the different items of service and cost pertaining to the Agreement and the basis for charges or allocations to the Agreement. You and your subcontractors must preserve such accounts and records for a period of five years after the term of the Agreement or of any particular engagement, whichever occurs first. PG&E will have the right to reproduce any such accounts and records.

14.3 Availability of Subcontractors Information. You must include the necessary provisions in your subcontracts to ensure that your subcontractors comply with this provision.

## 15. FEDERAL EQUAL OPPORTUNITY LAWS

15.1 During the performance of this Agreement, your firm agrees to comply with all Federal Equal Opportunity laws, orders and regulations, including Executive Order 11246, the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1972, the Rehabilitation Act of 1973, the Vietnam Era Veterans Readjustment Assistance Act of 1974, the Americans With Disabilities Act of 1990, and the Civil Rights Act of 1991. Your firm will not discriminate

Case: 19-30088   Doc# 2595-2   Filed: 06/18/19   Entered: 06/18/19 18:25:46   Page 10 of 43

against any employee or applicant for employment because of race, color, religion, sex, or national origin and will take affirmative action to ensure that applicants and employees are treated without regard to their race, color, religion, sex, or national origin.

16. **CHOICE OF LAWS**

16.1 This Agreement shall be construed and interpreted in accordance with the laws of the State of California, excluding any choice of law rules which may direct the application of the laws of another jurisdiction.

17. **NON-WAIVER**

17.1 The waiver by either Party of any breach of any term, covenant or condition contained in this Agreement, or any default in the performance of any obligations under this Agreement, will not be deemed to be a waiver of any other breach or default of the same or any other term, covenant, condition or obligation. Nor will any waiver of any incident of breach or default constitute a continuing waiver of the same.

18. **FORCE MAJEURE**

18.1 Neither of the Parties will be considered in default in the performance of its obligations under this Agreement, except obligations to make payments hereunder for work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause which is beyond the reasonable control of the affected party. In the event either Party claims that performance of its obligations was prevented or delayed by any such cause, that Party must promptly notify the other Party of that fact, and of the circumstances preventing or delaying performance. Such Party claiming a cause-delayed performance must endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

19. **TERMINATION AND BREACH OF AGREEMENT**

19.1 Right to Terminate. Either Party may terminate this Agreement by providing written notice to the other Party. Unless specifically agreed, you will provide no further services and incur or advance no further costs on PG&E's behalf after receiving a notice of termination from PG&E. If you are PG&E's attorney of record in any proceeding, PG&E will execute and return a substitution-of-attorney form immediately upon its receipt from you.

19.2 Returning of PG&E Property. Upon termination of this Agreement or an individual engagement under this Agreement, all PG&E Confidential Information, files, documents, and other property will remain PG&E's property and must be returned to PG&E. PG&E's property includes, for example, correspondence, deposition transcripts, exhibits, experts' reports, legal documents, physical

evidence, and other items reasonably necessary to PG&E's representation, whether PG&E has paid for them or not.

19.3 <u>Breach of Agreement</u>. In the event that either Party breaches this Agreement, the non-breaching Party will have the right to immediately terminate this Agreement.

19.4 <u>Consequential Damages</u>. In the event of termination for any reason, PG&E will not be liable for consequential damages, *e.g.*, lost or anticipated profits or overhead on uncompleted portions of any engagement.

## 20. ARBITRATION OF FEE DISPUTE

20.1 If a dispute arises between us regarding your fees under this Agreement and you file suit in any court other than small claims court, PG&E will have the right to stay that suit by timely electing to arbitrate the dispute under California Business and Professions Code §§ 6200-6206, in which event you must submit the matter to such arbitration.

## 21. PROFESSIONAL LIABILITY INSURANCE

21.1 You agree to maintain Errors and Omissions Liability insurance appropriate to the provision of legal services under this Agreement. Coverage shall be for a professional error, act or omission arising out of the scope of services under this Agreement. The limit shall not be less than $1,000,000 each claim/$2,000,000 aggregate.

## 22. GENERAL PROVISIONS

22.1 <u>Modification by Subsequent Agreement</u>. This Agreement may be modified by subsequent agreement of the Parties only by an instrument in writing signed by both of us. Any oral modification must be reduced to a writing signed by both Parties or it will be void and not binding in any respect.

22.2 <u>Integration</u>. This Agreement contains the entire agreement and understanding between the Parties as to the subject matter of the Agreement. It merges and supersedes all prior or contemporaneous agreements, commitments, representations, writings, and discussions between you and PG&E, whether oral or written and has been induced by no representations, statements or agreements other than those expressed herein. Neither you nor PG&E will be bound by any prior or contemporaneous obligations, conditions, warranties or representations with respect to the subject matter of this Agreement, except as provided herein.

Case: 19-30088   Doc# 2595-2   Filed: 06/18/19   Entered: 06/18/19 18:25:46   Page 12 of 43

This Agreement will take effect when it has been executed by both Parties.

PACIFIC GAS AND ELECTRIC COMPANY
LAW DEPARTMENT

By _____

Janet Loduca
VP and Deputy General Counsel

JL:jm

Enclosures


COBLENTZ, PATCH, DUFFY & BASS, LLP

By _____

Barbara A. Milanovich

10

Coblentz Patch Duffy & Bass LLP

## EXHIBIT A – RATES AND DISCOUNTS

**Category:** Commercial Litigation - Non-Energy Procurement, Non-Construction, and Non-Collections

| Name | Title | $/Hour – *2018-2019* |
|------|-------|------|
| Jonathan R. Bass | Partner | $800 |
| Charmaine Yu | Partner | $595 |
| Sean P.J. Coyle | Of Counsel | $500 |
| Traci J. Irvin | Associate | $430 |
| Foram Dave | Associate | $365 |
| Elizabeth Barnette | Paralegal | $225 |

**Category:** Federal Energy Regulatory Commission ("FERC")/California Public Utilities Commission ("CPUC") Regulatory and Licensing Activity (excludes CPUC permitting)

| Name | Title | $/Hour – *2018-2019* |
|---|---|---|
| Sean P.J. Coyle | Of Counsel | $500 |

**Category:** Land/Eminent Domain

| Name | Title | $/Hour - *2018* | $/Hour - *2019* |
|---|---|---|---|
| Barbara A. Milanovich | Partner | $572 | $648 |
| Douglas C. Sands | Partner | $572 | $648 |
| Misti M. Schmidt | Of Counsel | $378 | $450 |
| Valerie Blair McDermott | Associate | $343 | $401 |
| Joy Spezeski | Associate | $360 | $369 |
| Michael Wilson | Paralegal | $260 | $302 |
| Doug Larson | Paralegal | $260 | $284 |
| Angie Brandt | Paralegal | $242 | $248 |
| Gino Altamirano | Paralegal | $242 | $248 |

**Discounts:**

| Volume Discounts Offered | | | |
|---|---|---|---|
| $0 - $250K | $250K - $500K | $500K - $1M | > $1M |
| | | | 5%* |

*Volume discount excludes Real Estate Transactional and LLC work*

**Additional Services Offered:**

| | |
|---|---|
| **Free Legal Services to Prove Expertise During Introductory Period** | For any legal service area where it is recognized that we need to prove our expertise, we will not charge for a mutually agreed upon introductory period. |
| **Legal Training (CLE, CPD)** | We will work with you to tailor quarterly legal training for your in-house team. |
| **Precedents and Templates** | We developed and maintain PG&E standard real estate forms. |
| **Reporting Dashboards** | These are under development internally, and when complete, will be deployed for use with PG&E. |
| **Telephone Hotline to field urgent inquiries** | We will provide 6 hours per month for "hotline" calls to field your urgent inquiries. The first point of contact will be our relationship partner, Barbara Milanovich. |

# EXHIBIT B
## ATTORNEY REPRESENTATION
## CONFLICT PRINCIPLES

These principles apply to all counsel representing Pacific Gas and Electric Company ("PG&E"). For conflicts purposes, PG&E should be treated as the client of any outside counsel providing services to any of such entities.

**Scope of matters covered by these principles:** These principles apply to the representation by any attorney and his or her firm of any third party in connection with transactions and proceedings wherein the third party is adverse to PG&E, and/or involving issues substantially related to the matter(s) for which counsel has been retained by PG&E.

**Limitation on adverse engagements during PG&E engagement:** During any engagement by PG&E, the retained attorney and his or her firm will not represent another client in a matter in which that client's interests are adverse to the interests of PG&E without first making written disclosure of the proposed engagement and obtaining written consent from the PG&E entity undertaking the engagement. Any actual or potential conflict(s) pre-existing the engagement with PG&E must be disclosed prior to executing a retainer agreement, or promptly upon discovery. Where pre-existing conflicts may exist, counsel is expected to obtain waivers from its other clients, including written agreements that such clients will not object to the attorney or firm representing PG&E entities in any pending or future matter.

**Notification of adverse engagement during PG&E engagement:** If a retained attorney or his or her firm anticipates that representation of another client will involve advancing a position on an issue related to the PG&E engagement that may be adverse to PG&E interests, counsel should bring the matter to the attention of the appropriate PG&E entity in advance of doing so.

**Notification of adverse engagements after PG&E engagement:** After the conclusion of any engagement by PG&E, the retained attorney and his or her firm will not represent a client in a matter in which that client's interests are adverse or potentially adverse to the interests of the PG&E entity undertaking the representation that was the subject of the engagement, and that bears a substantial relationship to any matter previously handled on behalf of that PG&E entity, without first making written disclosure of the proposed engagement to the appropriate PG&E entity.

**Procedure for considering waivers of actual or potential conflicts:** PG&E will review, on a case by case basis, each request for waiver of an actual or potential conflict.

**EXHIBIT C**
**SECURITY MEASURES TO PROTECT PG&E CONFIDENTIAL INFORMATION**

1. Your collection, management and use of PG&E Confidential Information shall comply with this Exhibit C and with all applicable laws, regulations, directives, and ordinances.

2. Security Measures: You shall take "Security Measures" with the handling of PG&E Confidential Information to ensure that the PG&E Confidential Information will not be compromised and shall be kept secure. Security Measures shall mean industry best practices, whether physical or logical, including but not limited to:

   a. Development and implementation of written policies regarding information security, disaster recovery, third-party assurance auditing, and penetration testing;

   b. Use of password protected workstations at your premises, any premises where services are being performed and any premises of any person who has access to such PG&E Confidential Information;

   c. Measures to safeguard against the unauthorized access, destruction, use, alteration or disclosure of any PG&E Confidential Information including, but not limited to, restriction of physical access to such data and information, implementation of logical access controls, sanitization or destruction of media, including hard drives, and establishment of an information security program that at all times is in compliance with the industry requirements of ISO 27001, as may be amended from time to time; and,

   d. Any third party data center or service used by you to collect, receive and/or store Confidential Information shall meet the Security Measures required by this Agreement including, if specified by PG&E, satisfying the standards for a Tier 3 data center facility as specified in the TIA-942 standard published by the Telecommunications Industry Association or equivalent standards.

3. Compliance and Monitoring:

   a. If requested by PG&E, before receiving any PG&E Confidential Information, or at any time during the term of this Agreement, you shall provide PG&E with documentation satisfactory to PG&E that you have undertaken Security Measures.

b.   If requested by PG&E, before receiving any PG&E Confidential Information Data, or at any time during the term of this Agreement, you agree to undergo PG&E's vendor Security Review process.

c.   You agree to meet periodically with PG&E, if requested by PG&E, to evaluate your Security Measures and to discuss, in good faith, means by which you and PG&E can enhance such protection, if necessary.

d.   You shall update and implement your Security Measures, including procedures, practices, policies and controls so as to keep current with industry standards, including but not limited to NIST and NERC/CIP, as applicable.

e.   PG&E reserves the right to perform onsite security assessments to verify the implementation and ongoing operation and maintenance of Security Measures. At least annually, on request by PG&E, you shall assist PG&E in obtaining a copy of any report that documents your Security Measures.

4.   Security Breach:

a.   You shall immediately notify PG&E in writing of any unauthorized access or disclosure, or potential unauthorized access or disclosure, of PG&E Confidential Information.

b.   You shall take reasonable measures within your control to immediately stop the unauthorized access or disclosure of PG&E Confidential Information to prevent recurrence and to return to PG&E such information and any copies.

c.   You shall provide PG&E: (i) a summary of the issue and the facts; (ii) the potential number of individuals affected by the security breach; (iii) the PG&E Confidential Information that may be implicated by the security breach; and (iv) any other information pertinent to PG&E's understanding of the security breach and the exposure or potential exposure of PG&E Confidential Information.

d.   You shall investigate such breach or potential breach, and shall inform PG&E, in writing, of the results of such investigation, and assist PG&E (at your sole cost and expense) in maintaining the confidentiality of such PG&E Confidential Information. You agree to provide, at your sole cost and expense, appropriate data security monitoring services for all potentially affected persons for one (1) year following the breach or potential breach, subject to PG&E's prior approval.

e.   If requested in writing by PG&E, you will notify the potentially affected persons regarding such breach or potential breach within a reasonable time period determined by PG&E and in a form as specifically approved in writing by PG&E. In addition, in no event will you issue or permit to be

14

issued any public statements regarding the security breach involving PG&E Confidential Information unless PG&E requests you to do so in writing.

**EXHIBIT D**
**PG&E CONTRACTOR DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS**

1. Contractor agrees to retain all documents and data in accordance with (a) or (b) below, provided that Contractor is not required to retain: (i) draft versions of final written documents such as reports, presentations, or other written deliverables; and (ii) documents that are inconsequential or ancillary to performance and documentation of the project or its deliverables as follows:

   [ ] a. the documents and data specified in Attachment 1 to this Exhibit D; or

   [ ] b. all documents and data, whether paper or electronic, created, collected or received for PG&E in the course of performing the Work or furnishing the materials under the Agreement, including without limitation, documents, data, plans, drawings, diagrams, investigative notes, field notes, tests, photographs, records, calculations, summaries, and reports.

   If neither Section 1(a) or Section 1(b) is checked, Section 1(b) shall apply. If Section 1(a) is checked, but documents and data are not specified in Attachment 1, Section 1(b) shall apply. Collectively, the information shall hereinafter be referred to as "PG&E Contractor Documents."

2. Contractor shall store PG&E Contractor Documents in a secure and organized manner. All PG&E Contractor Documents shall be in legible form, whether paper or electronic. In managing and administering PG&E Contractor Documents, Contractor will comply with the requirements of "The Recordkeeping Principles® Level 3" (see www.arma.org), or with modified requirements approved in writing by PG&E.

3. Upon completion of the Work or furnishing of the materials under the Agreement, or upon completion of the Work or furnishing of the materials under each CWA under the Agreement ("Work Completion Date"), PG&E will specify which of PG&E Contractor Documents must be transmitted by Contractor to PG&E ("PG&E Records"), provided however, unless otherwise agreed by PG&E:

   a. Contractor shall transmit to PG&E, or provide PG&E access to, PG&E Records on request within forty eight (48) hours or sooner if needed (without limitation) for regulatory, California Public Utilities Commission ("CPUC"), safety, audit and/or litigation requirements;

   b. PG&E may specify that PG&E Records be delivered to PG&E on a regular basis prior to the Work Completion Date;

   c. With respect to PG&E Contractor Documents not transmitted to PG&E as PG&E Records, Contractor shall retain all such documents for twenty four

(24) months after the Work Completion Date ("Post-Termination Retention Period"). During the Post-Termination Retention Period, PG&E Contractor Documents shall be retained by Contractor at no additional cost to PG&E until disposed of in accordance with Section 6 below. To the extent PG&E requests Contractor to retain PG&E Contractor Documents after the Post-Termination Retention Period, the parties will mutually agree on the terms and conditions of such additional retention;

d. If PG&E Records are kept in electronic form, the following formats are acceptable for transmission to PG&E: (i) PDF, CAD or TIFF for drawings and diagrams; and (ii) PDF for all other documents. If PG&E Records transmitted to PG&E consist of data in a proprietary format, Contractor shall make available to PG&E the proprietary tools or software necessary to access the data including after the transfer of the data to PG&E. This Section 3.d. shall not abrogate Contractor's obligation to produce PG&E Records in an alternative format (e.g., a native format) if set forth elsewhere in the Agreement, in which case Contractor shall produce PG&E Records in each of the formats requested.

4. PG&E Contractor Documents shall be treated as confidential and shall not be disclosed to others unless Contractor is required to produce such documents pursuant to legal or regulatory requirements, in which case Contractor shall give PG&E maximum practicable advance notice prior to any production.

5. Contractor shall maintain a system for back-up of electronic PG&E Contractor Documents (e.g., files or databases) so they will be preserved for retrieval in the event that the originals are lost or destroyed.

6. If PG&E directs Contractor to dispose of PG&E Contractor Documents, Contractor shall do so in a confidential and secure manner, whether the format is electronic or paper. Proof of destruction of PG&E Contractor Documents shall be submitted to PG&E upon request.

7. If PG&E provides paper documents to Contractor in order to convert them to digital electronic format, Contractor shall return both the paper documents and the documents converted to digital electronic format to PG&E.

8. Contractor is responsible for ensuring that its Subcontractors regardless of tier comply with the obligations of Contractor where set forth in this Exhibit D.

9. The terms and conditions of this Exhibit D, including Attachment 1 if attached, shall survive the termination of this Agreement.

## EXHIBIT D – ATTACHMENT 1

If Section 1(a) of Exhibit D is checked, Contractor agrees that in connection with this Agreement, the following PG&E Contractor Documents will be created, received and/or maintained by Contractor:

**[Insert list of all specific PG&E Contractor Documents required under this Agreement]**

Case: 19-30088    Doc# 2595-2    Filed: 06/18/19    Entered: 06/18/19 18:25:46    Page 24 of 43



# OUTSIDE COUNSEL MATTER MANAGEMENT, STAFFING, AND BILLING REQUIREMENTS

# Table of Contents

                                      **Page**

1. INTRODUCTION ........................................................................................ 1

2. MATTER RETENTION AND COMMUNICATION ............................................ 1

3. MATTER STAFFING ................................................................................. 2

4. CONSULTANTS, EXPERTS, AND OTHER VENDORS .................................... 3

5. BUDGETING, BILLING, AND INVOICING ..................................................... 4

6. BILLING PRINCIPLES AND MECHANICS ..................................................... 5

7. MATTER TERMINATION ............................................................................ 8

8. ADDITIONAL REQUIREMENTS FOR LITIGATION ENGAGEMENTS ..................... 8

# PG&E Outside Counsel Matter Management, Staffing, and Billing Requirements

## 1. INTRODUCTION

**1.1.** These Outside Counsel Matter Management, Staffing, and Billing Requirements ("Billing Requirements") govern your representation of Pacific Gas and Electric Company ("PG&E") on all matters. "You" and "your" means: (1) the law firm or legal services provider named in a signed Master Services Agreement between PG&E and such law firm or legal services provider ("Agreement"), and (2) all personnel, representatives and vendors of such law firm or service provider. PG&E and you may be individually referred to as "Party" and jointly referred to as "Parties."

**1.2.** PG&E may, from time to time, amend these Billing Requirements at its sole discretion and will provide you with a copy of the amended Billing Requirements and the date the amended Billing Requirements become effective.

**1.3.** These Billing Requirements are expressly incorporated into the Agreement.

## 2. MATTER RETENTION AND COMMUNICATION

**2.1. Matter Retention.** As each matter arises, a separate engagement letter will be sent to you to cover specific details of the matter.

**2.2. PG&E Matter Liaison and Administrative Contacts**

2.2.1. <u>Role of PG&E Matter Liaison</u>. A PG&E Matter Liaison will be identified in the engagement letter for each matter. In some cases, the PG&E Matter Liaison may not be an attorney, or may be outside of the PG&E Law Department.

2.2.2. <u>Information Gathering</u>. PG&E will designate individuals to help you gather information from PG&E and respond to discovery, if needed. Until you are thoroughly familiar with the matter, we discourage direct contact with employees. In the interim, please notify the PG&E Matter Liaison of your needs.

2.2.3. <u>Administrative Contacts</u>. If you have questions regarding whether an authorization to retain a consultant or expert has been approved, or if you have a billing issue, please call the Legal Finance Support Group at (415) 972-5673 or email GenlCnslLawPaymentProcessingGroup@pge.com.

**2.3. Lead Outside Counsel**

2.3.1. <u>Role Requirements</u>. A lead outside counsel from your firm shall be identified at the onset of each engagement on a specific matter. This individual will serve as a main point of contact and interaction with PG&E

on that matter. This is not necessarily the firm's Relationship Partner, as described in the Agreement. However, the lead outside counsel is expected to be a Partner-level attorney, and should ensure that the Relationship Partner is kept up to date on PG&E matters.

2.3.2. <u>Communications With the PG&E Matter Liaison</u>. You will keep the PG&E Matter Liaison updated fully, regularly, and in a timely manner about each matter, and you will respond promptly to requests for information regarding a matter.

2.3.3. <u>Departure of Lead Outside Counsel</u>. Should the lead outside counsel for a matter give notice of his/her intent to leave, you will provide the PG&E Matter Liaison forty-five (45) days advance notice of the lead outside counsel's planned departure, or as soon as reasonably practicable, but in no event later than two (2) days after the lead outside counsel gave notice of his/her intent to leave. The PG&E Matter Liaison will decide whether to move a matter to a different provider or stay with the original provider. Regardless of the decision, you will provide a detailed transition plan and cooperate in every respect to transition work seamlessly.

**2.4. Communications With PG&E**

2.4.1. <u>Large Electronic Attachments</u>. Your computer networks should, to the extent possible, be configured to receive large electronic attachments.

2.4.2. <u>E-Mail Disclaimers</u>. Your email communications must include the following (or a substantially similar) confidentiality statement: "This e-mail and any attachment are privileged and confidential. If you have received this e-mail in error, please notify the sender and destroy it immediately."

2.4.3. <u>Document Format</u>. When sending documents for comments, you will send such documents in an editable format, preferably Microsoft Word, pre-scanned with an up-to-date virus checking program before transmission to PG&E.

**2.5. Communications With Other Parties.** When documents are sent to opposing counsel or filed electronically, you will ensure that documents are stripped of hidden metadata (e.g., internal comments, previous editors of the document, etc.) before transmission.

**3. MATTER STAFFING**

**3.1. Initial Staffing.** When you are engaged on a specific matter, you will work with the PG&E Matter Liaison in determining the appropriate staffing for the matter, and proactively seek opportunities to leverage PG&E's in-house legal and business resources whenever it is reasonable and cost-effective to do so. You will

use reasonable efforts to ensure assigned staff members remain assigned to the matter until its conclusion.

    3.1.1. <u>First-Year Associates, Summer Associates, and Law Clerks</u>. You will not bill PG&E for any first-year associates, summer associates, or law clerks assigned to any PG&E matter.

    3.1.2. <u>Training Costs</u>. You will not bill PG&E for fees or expenses incurred for personnel to learn substantive areas of law related to a matter, to bring substituted staff members up to speed on a pending matter, or to unnecessarily supervise tasks.

**3.2.** **Staffing Level for Matter Activities**. You agree that only one person from your firm will attend conference calls, depositions, mediations, arbitrations, court appearances and meetings unless approved by the PG&E Matter Liaison in advance. You will avoid duplication of effort when handling PG&E matters. You will obtain the prior approval of the responsible PG&E Matter Liaison before any personnel commence any substantial legal research or draft any significant legal memoranda.

**3.3.** **Replacement of Personnel.** From time to time, PG&E may specifically request particular individuals to work on a matter. You acknowledge that in the event that you remove, replace, or reassign the individuals who were initially assigned to perform services on a particular matter, such removal, replacement, or reassignment may result in harm and costs to PG&E. You agree not to remove, replace, or reassign such individuals without the approval of the PG&E Matter Liaison. PG&E will not unreasonably withhold or delay such approval. You will make reasonable efforts to maintain continuity in your staffing and will provide PG&E with ample notification if any such changes are made. You agree not to charge PG&E for the time spent in familiarizing replacement personnel with the matter.

## 4. CONSULTANTS, EXPERTS, AND OTHER VENDORS

**4.1.** **Retaining Consultant, Experts, and Vendors.** You must request in writing approval to hire any consultant, expert, or vendor utilizing the template attached in Exhibit A to these Billing Requirements. In exceptional cases, you may receive oral authorization; however, you must follow up the conversation with a confirming letter. Your letter must detail the consultant's, expert's, and/or vendor's area of expertise, a description of the services to be provided, hourly rates, and an estimate of the total cost for services including out-of-pocket expenses. Generally, you may directly retain and contract for any consultant or expert whose engagement is not reasonably expected to exceed $10,000 in total cost. PG&E may directly retain, contract for, and pay all consultants or experts whose engagement is reasonably expected to exceed $10,000 in total cost.

**4.2.** **Small Business & Diverse Business Enterprise Suppliers.** For each matter for which you expect to retain experts, consultants, or vendors, you agree that to the

extent possible and consistent with the efficient performance of your work on a matter, to provide Small Business Enterprises ("SBEs"); Women, Minority and Disabled Veteran Business Enterprises ("WMDVBEs"); and Lesbian, Gay, Bisexual, and Transgender Business Enterprises ("LGBTBEs") with the opportunity to bid on the performance of work.

**4.3.** **Third Party Billing.** In your discussions with potential consultants or experts, you should notify them that their billings must provide the same type of information that you are required to provide to PG&E. Consultants, experts, and/or vendors are required to bill PG&E monthly.

**4.4.** **E-Discovery Vendor.** PG&E has an E-Discovery preferred provider, currently Complete Discovery Source ("CDS"). PG&E's preferred provider should be engaged as the E-Discovery vendor on all matters involving E-Discovery unless a specific exception is granted by PG&E's Managing Counsel of Litigation.

## 5. BUDGETING, BILLING, AND INVOICING

**5.1.** **Strategy and Budgeting.** Unless waived by the PG&E Matter Liaison, you will provide to the PG&E Matter Liaison both an initial case plan and an initial budget outlining a best estimate of what PG&E can expect to spend for each matter. You agree to prepare individual budgets for both the expected duration of each matter assigned to you and, because PG&E prepares its own budgets on a calendar year basis, for each calendar year. You agree to provide your initial budget to PG&E within thirty (30) days of assignment of the matter. Both the initial case plan and the initial budget must be approved by the PG&E Matter Liaison before you commence any work.

**5.1.1.** Case Plans. The initial case plan should include, at a minimum, your general approach and strategy. You will update the case plan, as reasonably necessary, to reflect developments in the engagement. In no event will you charge PG&E for time or expenses associated with preparing a case plan.

**5.1.2.** Budgets and Forecasts. For litigation matters, and for other matters as specified by PG&E, you agree to prepare and revise a written budget simultaneously with preparation and revision of your risk assessments. Your budget must be all-inclusive of your professional fees and all eligible out of pocket expenses. The initial budget will include, at a minimum: (a) the estimated time period of the matter; (b) the name of each proposed staff member; (c) the applicable billing rate for each staff member as provided in the Agreement; (d) estimated level of effort; (e) estimated expenses, as permitted by these Billing Requirements, (f) a forecast of fees and expenses for each calendar year you expect the matter to be active and (g) for litigation matters, additional items described in Section 8. Thereafter you will provide monthly updates to the budget and forecast for review by the PG&E Matter Liaison. Before incurring costs that exceed an approved budget or the reported forecast, you will submit a request to

revise both the budget and forecast in writing to the PG&E Matter Liaison for approval. PG&E will not pay fees or expenses that exceed the currently-agreed case budget or forecast.

5.1.3. <u>Budget Approval</u>. Upon receipt, PG&E will assess your submitted budget, revise as necessary, and send the formal engagement letter to you stating your authorized budget for the matter.

**5.2. Billing Fees, Rates, and Alternative Fee Arrangements.**

5.2.1. <u>Billing Practices</u>. PG&E requires outside counsel to be vigilant in determining the best use of resources and to manage themselves with respect to cost efficiency with the same intensity that they manage themselves with respect to quality. All expenses should be billed at your actual cost without any overhead or profit factor. Estimates of all such expenses must be included in the budget or any approved revisions. You will include sufficient detail in your invoices so that it is clear that the level of work being billed is appropriate to the level of the person performing it.

5.2.2. <u>Fixed Fee Engagements</u>. Fixed fees (either for an entire engagement or for a portion of the engagement) are all-inclusive. Unless agreed to as part of the engagement, no other costs or fees will be charged to or accepted by PG&E.

5.2.3. <u>Billable Fee Engagements</u>. You and PG&E have agreed on billing rates for those persons identified in the Agreement who are expected to work on a matter. PG&E will pay your fees based on the agreed billing rates plus reasonable, ordinary, and necessary direct expenses. Unless otherwise agreed, PG&E will pay the hourly rates in effect at the time that you are retained for a particular matter for all services rendered during the pendency of the matter.

5.2.4. <u>Addition of Personnel</u>. In the event that you change or add personnel assigned to a matter, you agree to seek PG&E's approval in writing at least ten (10) days prior to each change or addition including the additional person's billing rate. No person is authorized to work on the matter without PG&E's written approval.

## 6. BILLING PRINCIPLES AND MECHANICS

**6.1. Electronic Billing System.** PG&E utilizes an electronic billing system. You agree to abide by the terms of use for such system. PG&E will only accept your invoices in electronic format, any mailed invoice will be returned unpaid.

**6.2. One Matter Per Statement.** Unless otherwise directed by PG&E, you must bill separately for each case or matter assigned to you. Statements must be sent

electronically on a monthly basis. Statements must be sent within thirty (30) days after the close of the month in which the services were rendered.

6.3.    **Invoice Requirements.** In order to process your statements, PG&E requires that every monthly statement transmitted via Collaborati adhere to standard LEDES invoice requirements, including:

- The case or matter name and PG&E's matter number;

- The calendar month covered by the statement (each month of service must be separately submitted);

- Name and job title (e.g., paralegal) of each timekeeper on each date work is done;

- Time must be billed in increments required by Collaborati, for each date work is done;

- Written description of work done on each date together with the corresponding ABA/ACCA task-based billing codes sometimes known as the UTBMS (Uniform Task Based Management System) codes;

- Hourly rates for each timekeeper;

- Disbursements; and

- Total amount billed.

*See* Exhibit B for Billing and Expenses Codes.

6.4.    **Block Billing.** PG&E does not allow block billing (*i.e.*, each entry should reflect a separate task and the amount of time spent on the task) unless the total time for the block is less than the total time that would be billed if each task were billed separately.

6.5.    **Travel Time.** Travel will not be considered as actual time worked unless approved, in advance, by the PG&E Matter Liaison. In the event you work during travel time, such efforts will not be considered travel time.

6.6.    **Billing Contact.** Correspondence regarding billing matters should be addressed to:

> Pacific Gas and Electric Company
> Attn: Legal Finance Support Group
> P. O. Box 7133
> San Francisco, CA 94120-7133
>
> Or e-mailed to: GenlCnslLawPaymentProcessingGroup@pge.com

**6.7.  Overpayment.**  Please note that in the event of an overpayment for any reason, you must remit the amount of the overpayment to PG&E.  You may not credit your next invoice.

**6.8.  Disbursements.**

6.8.1.  <u>Disbursement Documentation and Invoicing</u>.  All disbursements (including any expert or consultant fees and expenses, lodging, travel, out-of-pocket copying service, transcripts, and the like) must be included with your statements with supporting documentation for all lodging and travel expenses (other than nominal amounts) and for any individual item the cost of which is $75.00 or greater.

6.8.2.  <u>Reasonableness of Disbursements</u>.  All expenses, including for lodging, meals, and transportation, must be reasonable, ordinary, economical, and prudent.  Air travel is to be at coach rates and all rental car costs at subcompact rates unless you receive advance approval confirmed in writing from PG&E.  All expenses must be billed at the actual net cost incurred and paid by you and not with any supplementary markup.  Interest and late charges should not be charged.  Mileage will be paid at the Internal Revenue Service's current year approved standard rate.  PG&E will <u>not</u> reimburse you for expenses that are not reasonable, ordinary, economical, and prudent.

6.8.3.  <u>Firm Overhead</u>.  Normal overhead will be considered a bundled component of your hourly fees and not charged or invoiced to PG&E.  If any such charge appears, PG&E will automatically deduct it from your statement.  Unless otherwise agreed to in advance by your PG&E Matter Liaison, normal overheads for purposes of these Requirements are secretarial services, library services, clerical support, learning or training costs, office supplies, postage, internal couriers, routine office photocopying, telecopying or "fax," local telephone and cellular plans, filing, file indexing, bill preparation, staff overtime, word processing, computer assisted research (such as Lexis-Nexis, Westlaw, and the like), and meals or snacks (unless while traveling or otherwise approved in advance).

6.8.4.  <u>Photocopying</u>.  Routine on-site copying will not be reimbursed unless specifically negotiated.  Exceptions will be negotiated for extraordinary matters. PG&E will pay no more than $0.05 per page. Any photocopy job to be charged, whether by you, a vendor, or a service, exceeding $1,000 requires advance approval from the PG&E Matter Liaison confirmed in writing.  Additionally, PG&E will not pay for attorney or staff time spent photocopying.

6.8.5.  <u>Receipts</u>.  Any individual cost greater than $75 must be supported by documentation such as a receipt or a paid invoice or bill.

6.8.6. <u>Nonconforming or Unreasonable Expenses</u>. PG&E will strike nonconforming items from your statement, as well as items that are not reasonable pursuant to Section 6.8.2.

6.8.7. <u>Overnight Mail and External Courier Services</u>. You may only use overnight mail, delivery or courier services if necessary, and you must document what was sent, the relevant legal matter, and the person to whom the correspondence was sent.

6.9. **Court Reporters', Consultants' and Experts' Bills.** If, on PG&E's behalf, you employ court reporters, consultants, or experts, you must review and approve, as appropriate, the bill from the court reporter, consultant, or expert before PG&E will pay the charges directly or as part of your statement. Your approval certifies that the court reporter, consultant, or expert performed the work described in the statement.

6.10. **Exceptions.** Exceptions to any of the requirements in this Section 6 require approval in advance from the PG&E Matter Liaison, PG&E's Vice President and Deputy General Counsel, or Assistant General Counsel.

# 7. MATTER TERMINATION

7.1. Subject to any applicable rules of professional responsibility, any engagement may be terminated at any time with notice by you or PG&E. Upon termination, in addition to any obligations imposed by law, regulation or code of professional responsibility, you will take all steps reasonably requested by PG&E to transition the matter(s) as directed, at no additional cost to PG&E, including promptly delivering all pertinent files, research, memoranda, pleadings, communications, records, drafts and other related material, including electronic copies of documents (in Microsoft Word or equivalent or Adobe ".pdf" formats), and ensure that the PG&E Matter Liaison is aware of all relevant dates and deadlines in the matter.

# 8. ADDITIONAL REQUIREMENTS FOR LITIGATION ENGAGEMENTS

8.1. **Litigation Philosophy.** PG&E is committed to fair, prompt, and efficient resolution of litigation and claims. All strategies you employ, including discovery strategy, and fees and expenses you incur need to maximize the opportunities for a fair, prompt, and efficient resolution.

8.2. **Preservation, Legal Holds, and Initial Meeting.** Upon assignment of a new matter, you will schedule an initial meeting with the PG&E Matter Liaison to discuss the initial views of the matter, key witnesses and the individuals, documents and facts that should initially be gathered and preserved. If PG&E does have a duty to preserve, you will work with the PG&E Matter Liaison and PG&E's E-Discovery Team to develop and implement a preservation strategy. The checklist will be provided by PG&E.

**8.3.** **Litigation Budget, Plan, and Forecast.** You will provide to the PG&E Matter Liaison an overall anticipated budget for each matter with appropriate qualifications utilizing the template provided by PG&E. The budget will be based on an agreed-upon litigation plan, which should contemplate all phases of the litigation: initial investigation, discovery (including identification of likely deponents), motion practice by all parties, experts, settlement efforts, trial, and other anticipated phases. The budget will also include a description of how the phases of litigation will be staffed and a list of all relevant timekeepers assigned to the matter. You will provide the PG&E Matter Liaison an updated budget on the first day of each month, comparing the estimates to the actual fees and expenses for that month. In addition, you will provide to the PG&E Matter Liaison a forecast of all anticipated fees and expenses you expect to incur in each calendar year the litigation matter will be active. You will update the forecast to the PG&E Matter Liaison on the first day of each month.

    8.3.1. <u>Attorney Assignments</u>. Absent approval from the PG&E Matter Liaison, no more than one partner and one associate attorney may be assigned to a matter.

    8.3.2. <u>Trial Budgets</u>. You agree to submit to the PG&E Matter Liaison a separate budget for any expected trial, arbitration or regulatory hearing costs and fees approximately eight (8) weeks before the scheduled trial, arbitration or regulatory hearing date.

**8.4.** **Early Case Evaluation and Quarterly Reports.**

    8.4.1. <u>PG&E As A Defendant</u>. No later than sixty (60) days after receiving a complaint that names PG&E as a defendant, or as otherwise designated by the PG&E Matter Liaison, you will give the PG&E Matter Liaison an oral (or, if requested by the PG&E Matter Liaison, written) assessment of PG&E's exposure, an updated budget that takes into account the likely cost of litigating the case to conclusion in light of your assessment, the amount (if any) for which you recommend that PG&E settle the matter, and a strategy for resolving the matter in the most cost-effective manner possible (*e.g.*, proposed settlement strategy/amount, motions likely to be dispositive, etc.) ("<u>Defense Case Evaluation</u>").

    8.4.2. <u>PG&E As A Plaintiff/Claimant</u>. Unless directed otherwise by the PG&E Matter Liaison, when representing PG&E as plaintiff or claimant, you will prepare an oral (or, if requested by the PG&E Matter Liaison, written) case assessment of PG&E's recovery prospects, a budget for litigating the case to conclusion, and a strategy for resolving the matter in the most cost-effective manner possible (*e.g.*, proposed settlement strategy/amount, motions likely to be dispositive, etc.) ("<u>Claimant Case Evaluation</u>"), prior to the filing of an initial pleading on behalf of PG&E and in accordance with the PG&E Matter Liaison's instructions.

8.4.3. <u>Updates to Evaluations</u>. Unless directed otherwise by the PG&E Matter Liaison, you will update any Claimant or Defense Case Evaluation at least quarterly in the manner directed by your PG&E Matter Liaison. These quarterly reports do not replace the need for prompt updates on material developments in the case.

**8.5. Motion Practice and Review of Court Papers.** You will consult with the PG&E Matter Liaison before engaging in any motion practice. Depending on the nature of the case and the content of the filing, it is PG&E's practice to share draft motions with various internal stakeholders. To facilitate this important review, you will submit drafts of opening briefs where PG&E is the moving party to the PG&E Matter Liaison at least seven (7) days before the due date and other draft filings with sufficient time for distribution and meaningful review.

**8.6. Discovery.** PG&E is committed to meeting its discovery obligations in a defensible, efficient, and cost-conscious manner. You must carefully consider discovery at the outset of a case and align discovery closely to the case strategy. You will:

8.6.1. coordinate all requests for documents, persons and information incidental to discovery with the PG&E Matter Liaison and whomever the PG&E Matter Liaison designates to manage the arrangements for interviews of Company employees in connection with the matter;

8.6.2. not contact internal PG&E personnel independently without prior approval;

8.6.3. unless waived by the PG&E Matter Liaison, copy the PG&E Matter Liaison on all communications with PG&E personnel, contractors and consultants;

8.6.4. before commencing any discovery, develop and submit to the PG&E Matter Liaison a discovery plan for document collection and production, interrogatory preparation and depositions, in order to assist with determining whether the document collection, deposition or other discovery is necessary and cost effective;

8.6.5. as required by PG&E, use certain PG&E preferred vendors providing discovery or litigation services, including contract attorney firms for document review, and you will not, absent approval of the PG&E Matter Liaison, perform any document review yourself, engage such vendors directly nor use contract attorneys or other temporary personnel on Company matters;

8.6.6. inform the PG&E Matter Liaison of all depositions, hearings, court appearances and preparation sessions so that someone from PG&E may participate in all such events;

8.6.7. not waive deponents' right to review and sign their depositions or stipulate to the contrary without the PG&E Matter Liaison's prior consent;

8.6.8. update the PG&E Matter Liaison promptly following a meeting, hearing, deposition or court appearance, if a PG&E representative is does not attend such event; and

8.6.9. not bill for more than one timekeeper to attend court appearances, depositions and associated preparation sessions, absent advance approval by the PG&E Matter Liaison.

**8.7.** **Discovery Response Timing.** Draft discovery responses must be provided to the PG&E Matter Liaison at least four (4) business days before the due date. Signed original responses for verification must be provided to the PG&E Matter Liaison at least two (2) business days prior to the due date.

**8.8.** **Depositions and Oral Argument.** The lead outside counsel for the matter will argue all motions, except routine discovery motions, and take and defend all depositions, unless otherwise agreed in advance by the PG&E Matter Liaison as to how the specific motion or deposition (or series of motions or depositions) will be handled.

**8.9.** **ADR and Settlement.** You will: (a) immediately report all settlement offers or overtures to the PG&E Matter Liaison, along with your analysis and recommendation for how to proceed; (b) not agree to settle a case on PG&E's behalf, release any substantial right, or otherwise commit PG&E on any major issue without the PG&E Matter Liaison's prior written approval; and (c) not offer or reject an inquiry regarding ADR or settlement without first consulting and securing authority from the PG&E Matter Liaison. PG&E has internal procedures regarding issuance of settlement authority. You must provide a written recommendation regarding settlement at least two (2) weeks before any settlement conference or mediation utilizing the template that PG&E will provide.

**8.10.** **Pre-Trial and Trial.** You will notify the PG&E Matter Liaison immediately once a matter is scheduled for trial. When reasonably possible, you will involve the PG&E Matter Liaison in the date selection process. No less than sixty (60) days prior to the beginning of any trial, you will provide the PG&E Matter Liaison with a comprehensive pretrial report setting forth an assessment of the liability and damage issues presented (including any evidentiary concerns regarding those issues), the legal and factual issues at dispute, the identity of witnesses expected to be called (including experts), an estimate of the length of the trial, anticipated costs of pre-trial and trial activities (including the mandatory settlement conference), and the status of settlement discussions at that point. Unless the PG&E Matter Liaison is present during trial, trial counsel is required to report to the PG&E Matter Liaison twice daily what has occurred at trial and its relative impact on expected outcome.

**8.11.** **Writs and Appeals.** You will promptly inform the PG&E Matter Liaison of any adverse ruling so PG&E can make a decision regarding a writ or appeal. You will take all steps necessary to protect the interests and preserve appeal rights of PG&E pending a decision to take a write or appeal, but no writ or appeal may be made without approval from the PG&E Matter Liaison.

**8.12.** **Closing Letter.** At the conclusion of each case, you will prepare a closing letter describing the disposition of the case and requesting issuance of settlement or judgment funds or enclosing settlement or judgement funds PG&E is to receive utilizing the template provided by PG&E.

**8.13.** **Files.** When requested by the PG&E Matter Liaison, you will provide PG&E with copies of all legal pleadings, filings, memoranda, settlement agreements and other documents in electronic form at no cost to PG&E and in the form and manner requested. You understand and agree that PG&E will not pay for the preparation of "enclosed please find" letters and you will not create form cover letters that summarize documents forwarded to PG&E unless requested by the PG&E Matter Liaison.

**8.14.** **Additional Requirements.** Without limiting anything else in these Billing Requirements, you will immediately notify the PG&E Matter Liaison of the following: (a) filings or threatened filings of a motion to compel discovery, motion for sanctions or any motion related to alleged spoliation of evidence; (b) notices to depose PG&E employees or representatives; (c) all formal and informal offers to compromise litigation; (d) all information related to the matter that may impact PG&E's public relations; (e) rulings by a court or other decision maker in an assigned PG&E matter; (f) assignments of trial, mediation, arbitration and hearing dates; (g) events that require the appearance or direct involvement of a PG&E representative; and (h) all verdicts.

# EXHIBIT B
## PG&E Billing & Expense Codes

Please utilize the following Codes for all invoicing.

**Bankruptcy Code Set:**

B110 Case Administration

B120 Asset Analysis and Recovery

B130 Asset Disposition

B140 Relief from Stay/Adequate Protection

B150 Meetings of and Communications with Creditors

B160 Fee/Employment Applications

B170 Fee/Employment Objections

B180 Avoidance Action Analysis

B185 Assumption/Rejection of Leases and Contracts

B190 Other Contested Matters

B195 Non-Working Travel

B210 Business Operations

B220 Employee Benefits/Pensions

B230 Financing/Cash Collections

B240 Tax Issues

B250 Real Estate

B260 Board of Directors Matters

B310 Claims Administration and Objections

B320 Plan and Disclosure Statement

B410 General Bankruptcy Advice/Opinions

B420 Restructurings

**Counseling Code Set:**

C100 Fact Gathering

C200 Researching Law

C310 Client Counsel - Agreements

C311 Client Counsel - Company Policy

C312 Client Counsel - Stat/Reg/Judicial

C320 Infringement/Validity/Survey Studies

C330 Tort Reform/Lobbying/Govt Affairs

C340 Situation Management

C341 Business Disputes

C350 Contract/Form Development

C360 Legal Awareness Training

C361 Policy/Program Development

**Project Code Set:**

P100 Project Administration

P210 Corporate Review

P220 Tax

P230 Environmental

P240 Real and Personal Property

P250 Employee/Labor

P260 Intellectual Property

P270 Regulatory Reviews

P280 Other

P300 Structure/Strategy/Analysis

P400 Initial Document Preparation/Filing

P500 Negotiation/Revision/Responses

P600 Completion/Closing

P700 Post-Completion/Post-Closing

P800 Maintenance and Renewal

**Litigation Code Set:**

L110 Fact Investigation/Development

L120 Analysis/Strategy

L130 Experts/Consultants

L143 Discovery – Identification and Preservation

L160 Settlement/Non-Binding ADR

L200 Pre-Trial Pleadings and Motions

- Pleadings
- Preliminary Injunctions/Provisional Remedies
- Court Mandated Conferences
- Dispositive Motions other than those listed below
- Other Written Motions and Submissions
- Class Action Certification and Notice

L241 Motion to Dismiss: Preemption

L242 Motion to Dismiss: Lack of Subject Matter Jurisdiction

L243 Motion for Summary Judgment: Kongros

L244 Motion for Summary Judgment: Causation

L245 Motion for Summary Judgment: Employment
L246 Motion for Summary Judgment: Recreational Use Immunity
L310 Written Discovery
- Drafting discovery requests
- Drafting written responses, including objections, to discovery requests
- Meeting and conferring with opposing parties
- Drafting Electronically Stored Information (ESI) protocols, clawback agreements, and protective orders
- Drafting mandatory written disclosures under FRCP 26

L330 Depositions
- Determining deponents, timing and sequences of depositions
- Preparing deposition notices and subpoenas
- Communicating with opposing parties regarding depositions
- Planning for and preparing to take depositions
- Preparing witnesses for deposition
- Drafting deposition summaries

L350 Discovery Motions
- Developing, drafting, responding to, and arguing all discovery motions, including motions for protective orders and motions to quash

L400 Trial Preparation and Trial
- Fact Witnesses
- Written Motions and Submissions
- Other Trial Preparation and Support
- Trial and Hearing Attendance
- Post-Trial Motions and Submissions
- Enforcement

L500 Appeal
- Appellate Motions and Submissions
- Appellate Briefs
- Oral Argument

L600 Identification
- Identifying potentially relevant information, where it is stored, and key players
- Interviewing custodians and analyzing responses

L610 Preservation
- Developing and executing a preservation strategy and plan
- Drafting and responding to preservation related communications, including legal holds and preservation demand letters
- Overseeing quality assurance and control of preservation activities

L620 Collection
- Developing collection strategy and plan
- Collecting potentially relevant information, including paper files, tangible items and electronically stored information

- Overseeing quality assurance and control of collection activities

L630 Processing
- Developing a processing strategy and plan
- Staging, preparing, and processing electronically stored information, or working with a vendor on the same activities
- Analyzing and developing culling criteria, including date filters and key words
- Performing early case assessments
- Training a predictive coding system
- Overseeing quality assurance and control of processing activities

L650 Review
- Developing a review strategy and plan
- Preparing a review platform
- Drafting review protocols
- Training reviewers
- Overseeing quality assurance and control of review activities

L653 First Pass Document Review
- Performing first pass document review such as determining relevancy, issue coding, tagging, and initial privileged determinations

L654 Second Pass Document Review
- Performing second pass quality control of data and documents coded for relevancy, issue codes, tagging, and initial privileged determinations during first pass review

L655 Privilege Review
- Performing final privilege review
- Preparing privilege logs

L656 Redaction
- Developing and implementing a redaction protocol
- Performing redactions

L670 Production
- Preparing document productions
- Overseeing quality assurance and control of production activities

L671 Conversion of ESI to Production
- Oversight of activities related to the TIFFing, bates stamping, endorsing, preparation of load files and deliverables to be provided as part of the production

L680 Presentation
- Preparing and displaying electronically stored information before audiences (at depositions, hearings, trials, etc.)

L800 Experts/Consultants
- Experts/Consultants
- Expert Discovery
- Expert Preparation for Trial

L900 Settlement Process
- Attendance at Mediations or other ADR conferences
- Preparations for these conferences

- Oral and written communications related to these conferences

**Expense Codes:**

E102 Outside printing

E107 Delivery services/messengers

E109 Local travel

E110 Out-of-town travel

E111 Meals

E112 Court fees

E113 Subpoena fees

E114 Witness fees

E115 Deposition transcripts

E116 Trial transcripts

E117 Trial exhibits

E118 Litigation support vendors

E119 Experts

E121 Arbitrators/mediators

E125 WMBE Sub-Contractor

E126 WMBE Administration Costs