WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 19-30088 (DM) |
| PG&E CORPORATION, | Chapter 11 (Lead Case) (Jointly Administered) |
| - and - | |
| PACIFIC GAS AND ELECTRIC COMPANY, | **DECLARATION OF GREGG M. FICKS IN SUPPORT OF APPLICATION PURSUANT TO 11 U.S.C. § 327(e) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR ORDER AUTHORIZING THE DEBTORS TO COBLENTZ PATCH DUFFY & BASS LLP AS SPECIAL COUNSEL *NUNC PRO TUNC* TO THE PETITION DATE** |
| Debtors. | |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas & Electric Company<br>☒ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: July 9, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>Objection Deadline: July 2, 2019 at 4:00 p.m. (PT) |

I, Gregg M. Ficks, declare:

I am a partner at the law firm of Coblentz Patch Duffy & Bass LLP ("**Coblentz**" or the "**Firm**"), resident in Coblentz's San Francisco office located at One Montgomery Street, Suite 3000, San Francisco, CA 94104. I am a member in good standing of the State Bar of California, and of this Court. I submit this Declaration in connection with the accompanying Application[1] of the above-captioned debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), for an order, pursuant to section 327(e) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), approving the employment and retention of Coblentz as one of the Debtors' special counsel effective *nunc pro tunc* to January 29, 2019 (the "**Petition Date**"). Unless otherwise stated in this Declaration, I have personal knowledge of the matters set forth herein.

To the extent any information disclosed herein requires subsequent amendment or modification upon Coblentz's completion of further analysis or as additional information regarding creditors and other parties in interest becomes available to Coblentz, one or more supplemental declarations will be submitted to the Court reflecting the same.

## COBLENTZ'S QUALIFICATIONS

Coblentz is a 125+ year old San Francisco-based law firm. Coblentz is a full-service law firm, but Coblentz's qualifications described herein focus on the practice areas for which the Debtors intend to retain Coblentz.

Coblentz's real estate practice is one of the premier real estate practices in California. Coblentz has advised the Debtors on real estate matters for more than 30 years, including as primary outside real estate transactional counsel for the last 20 years. Coblentz has regularly represented the Debtors in the acquisition of improved and unimproved properties, the disposition of surplus properties, and the negotiation of all types of leases. Over the years, Coblentz also has

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Application.

handled unique assignments such as the retrofit of the Debtors' headquarter buildings on Market Street, and more recently, the assemblage of parcels for the development of the state-of-the art gas training center in Winters.

Since 2005, Coblentz also has served as primary outside counsel to Debtor Pacific Gas and Electric Company (the "**Utility**") in the implementation of its Land Conservation Commitment ("**LCC**") under which the Utility is undertaking to conserve approximately 140,000 acres of its watershed lands for a broad range of beneficial public values, including the protection of the natural habitat of fish, wildlife and plants, the preservation of open space, outdoor recreation by the general public, sustainable forestry, agricultural uses, and historic values. Approximately 100 total transactions are anticipated. As of April 19, 2019, 39 transactions have closed. Ongoing compliance guidance is anticipated for closed transactions.

Coblentz's white collar defense practice group is one of California's premier practices in the field of internal investigations and defense of regulatory and civil enforcement matters. Its partner members, all of whom are former Assistant United States Attorneys in the United States Department of Justice, have conducted internal investigations concerning publicly held corporations, privately held corporations, and governmental entities across the United States and abroad, and have defended regulatory enforcement matters before the Securities and Exchange Commission, the Office of the Comptroller of the Currency, and the California Public Utilities Commission (the "**CPUC**"). Coblentz partner Sean Coyle has represented the Utility on regulatory enforcement and criminal matters for the last four-plus years.

Coblentz's commercial and real property litigation practices are also among the strongest in California. Coblentz has represented commercial entities in a broad range of litigation disputes in courts throughout the state, and across the country. The firm has handled some of the most significant real property litigation matters in California in recent years, including California Environmental Quality Act ("**CEQA**") matters, development disputes, and property tax matters.

Coblentz currently represents the Utility in an action against the California Department of Water Resources (the "**DWR Matter**") in which the Utility seeks to recover expenses incurred when it had to relocate electric transmission facilities as a result of the Oroville Dam crisis in

2017. (This is a coordinated case proceeding in the Superior Court of Sacramento County, which includes lawsuits by other landowners affected by the Oroville Dam crisis.) Coblentz also represents the Utility in an "Order Instituting Investigation" regulatory enforcement action (the "**Ex Parte OII Matter**") before the CPUC regarding alleged *ex parte* contacts between former of the Utility's officers, employees, and consultants, and CPUC officials, regarding a number of CPUC proceedings in 2010-2014.

Additionally, having represented the Debtors for years in real estate, regulatory, litigation, and similar matters, Coblentz and its applicable attorneys have acquired considerable knowledge of the Debtors' business and operations. For the foregoing reasons, I believe Coblentz is well-qualified to represent the Debtors as special counsel in connection with the matters described herein during the pendency of these Chapter 11 Cases, and that Coblentz's retention is in the best interests of the Debtors, their estates, and their creditors.

## SERVICES TO BE PROVIDED

### III. SERVICES TO BE PROVIDED

Subject to Court approval, Coblentz will provide the following services to the Debtors:

1. **Real Estate Purchase and Sale and Leasing.**

    a. Maintain and revise real estate transaction and lease forms for the Debtors.

    b. Advise and represent the Debtors regarding potential and actual sales and acquisitions of real properties.

    c. Draft and negotiate transactional real estate agreements, including post-closing agreements.

    d. Review title, prepare title summaries and objection letters, and negotiate title policies and endorsements.

    e. Prepare escrow instructions and coordinate closings.

    f. Advise and represent the Debtors in connection with the creation of conservation easements.

    g. Coordinate with environmental counsel regarding environmental issues.

    h. Advise and represent the Debtors, as tenant(s), in connection with office, retail, warehouse, industrial, and yard leases.

    i. Advise and represent the Debtors, as landlord(s), in connection with retail tenancies.

    j. Advise and represent the Debtors in additional real estate and leasing

matters during the course of these Chapter 11 Cases.

2. **Land Conservation Commitment.**

   a. Advise the Debtors regarding, and document, the development, preparation, negotiation, and finalization for each transaction.

   b. Analyze and advise the Debtors regarding title, subdivision, and other property-specific issues.

   c. Participate in implementation oversight by the Pacific Forest and Watershed Lands Stewardship Council, a non-profit corporation created to oversee and carry out the LCC.

   d. Advise and assist with the Debtors' requests for regulatory approval to FERC and the CPUC.

   e. Coordinate transaction closings.

   f. Advise and assist the Debtors regarding conservation compliance issues.

   g. Coordinate and interface with co-counsel on specialized legal issues, *e.g.*, tribal law, environmental law, governmental entity law, and water rights issues.

   h. Advise and represent the Debtors in additional land conservation work during the course of these Chapter 11 Cases.

3. **Litigation, Investigatory, and Regulatory Matters, Including the DWR Matter.**

   a. Propound and respond to written discovery and document demands/productions, and any related meet and confer and litigation.

   b. Analyze key discovery materials for motion practice and trial.

   c. Prepare for and attend depositions of the Utility's witnesses and of other witnesses.

   d. Contribute to case management submissions and attend case management conferences.

   e. Attend hearings and trial planning conferences, including preparing court papers in conjunction therewith.

   f. Prepare and oppose any motions for summary judgment or summary adjudication.

   g. Prepare for and participate in trial and trial-related proceedings, submissions, and briefing.

   h. Advise the Debtors regarding case management, discovery, and trial issues and strategies.

   i. Advise and represent the Debtors in additional litigation, investigatory, and regulatory matters during the course of these Chapter 11 Cases.

### 4. Representation of the Utility in the Ex Parte OII Matter.

a. Review and produce discovery materials, and a joint administrative evidentiary record.

b. Prepare written discovery responses and perform related research and investigation.

c. Participate in case management/meet and confer discussions with proceeding parties.

d. Attend status hearings.

e. Manage discovery disputes, and perform legal and factual research relating to such disputes.

f. Advise and participate in any settlement strategy, negotiations, and documentation, and any record submissions related thereto.

g. Prepare case submissions and prepare for and attend any hearings and evidentiary hearings.

h. Perform miscellaneous and case management work during the course of these Chapter 11 Cases.

Coblentz will perform other legal services as requested by the Debtors during the pendency of these Chapter 11 Cases, to the extent Coblentz agrees to perform such work. Coblentz will work with Weil, Gotshal & Manges LLP and the Debtors' other professionals, as and if applicable, to maximize efficiency and avoid any duplication of effort.

### SECTION 327(e) REQUIREMENTS AND COBLENTZ'S CONNECTIONS

Coblentz has undertaken procedures to enable it to comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the *United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees*, effective February 19, 2014 (the "**Local Guidelines**"), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**"), and is prepared to comply with any further Orders of the Court in these Chapter 11 Cases regarding professional compensation and reimbursement of expenses (the "**Orders**").

In accordance with these procedures, and in conjunction with the Application, I asked

Coblentz conflicts personnel to compare the names from the categories listed on **<u>Exhibit A</u>** hereto, based as a conflicts check list provided by Weil, Gotshal, Chapter 11 counsel to the Debtors, on or about March 4, 2019, which Weil, Gotshal updated and provided to Coblentz on or about April 16, 2019, with a database containing the names of all Coblentz clients and former clients from the past ten years, including known affiliates of the listed entities or people as known to Coblentz. I and/or my partners made follow-up inquiries to various attorneys at Coblentz as appropriate upon receiving the conflicts report. I also distributed an email inquiry to all Coblentz attorneys, paralegals, and senior managers to inquire if they may have relevant connections, claims, or interests in these bankruptcy cases, and made follow-up inquiries as appropriate upon receipt of various responses.

For disclosure purposes, Coblentz identified the creditors or parties in interest, or affiliates of creditors or parties in interest, set forth on **<u>Exhibit B</u>** hereto, as parties that Coblentz or Coblentz attorneys have represented in at least the past ten years, and/or continue to represent. Coblentz expects to continue to represent these and probably other creditors and parties in interest in matters unrelated to the Debtors or these Chapter 11 Cases during the course of these Chapter 11 bankruptcy Cases. Additionally, Coblentz discloses that:

1) A paralegal in Coblentz's corporate department is engaged to be married to someone who is employed by one or both of the Debtors as "Gas Superintendent, San Francisco & North Bay," and that future spouse owns stock in one or both of the Debtors.

2) A partner who will have a lead role on real estate matters for the Debtors under Coblentz's retention herein is married to someone who owns 900 shares of one of both of the Debtors stock in the Coblentz partner's spouse's separate brokerage account.

3) About 17 years ago, before joining Coblentz, I participated in the representation of one or more water or irrigation districts in connection with a prior Pacific Gas and Electric Company bankruptcy case. I ceased representing that water district(s) no later than when I left my prior firm in 2002. I have not communicated with that water district(s) since that time. I have not maintained or obtained any confidential information regarding that representation or that water district(s) since that time, and I do not recall any confidential information regarding that representation or that water district(s).

4) Coblentz represents the City of Oakland, California (the "**City**") in a series of civil actions pending in Alameda County Superior Court arising from the Ghost Ship fire, titled *Gregory et al. v. Chor Nar Siu Ng, et al.* (Case No. RG 16843631 and related cases) (the "**Oakland Warehouse Fire Litigation**"). Debtor Pacific Gas

and Electric Company is a co-defendant in the Oakland Warehouse Fire Litigation. Should any adversity arise between the City and Debtor Pacific Gas and Electric Company in the Oakland Warehouse Fire Litigation, Coblentz will not advise or represent the City regarding any matters for which any such adversity has arisen, and the City will need to rely on other counsel to advise and represent it regarding any such matters should it require counsel.

5) Coblentz, and all or virtually all of its partners and employees, reside in Northern California. As such, this firm, and all or virtually all of its partners and employees, likely are direct or indirect customers of the Debtors.

6) Coblentz has business banking relationships with Wells Fargo Bank and Citibank, and maintains profit sharing/401(k) plans through Fidelity.

7) A former associate at Debtors' bankruptcy counsel, Weil, Gotshal (Hannah Jones), who did some work in these Chapter 11 Cases on behalf of Debtors while at Weil, Gotshal, will join Coblentz as an associate on or about July 1, 2019.

8) Coblentz has a pre-petition claim against the Debtors in the approximate sum of $295,566.27.[2]

9) During the ninety (90) day period prior to the Petition Date (*i.e.*, October 31, 2018 through January 28, 2019), Coblentz received payments in the amount of $768,304.86 on invoices for pre-petition services performed for, and expenses incurred on behalf of, the Debtors. None of these services were for bankruptcy counsel to the Debtors.

10) As of the January 29, 2019 Petition Date, Coblentz held no advance payment retainer from the Debtors, and continues to not have or hold any retainer.

Insofar as I have been able to ascertain, based on the results of these review procedures, I believe neither Coblentz nor any partner or other attorney at Coblentz represents any entity or person in, or in connection with, these Chapter 11 Cases (other than the Debtors if the Application is granted) with respect to the matters upon which Coblentz is to be retained; and Coblentz and its partners and other attorneys do not hold or represent any interest adverse to the Debtors or to the estate with respect to the matters upon which Coblentz is to be retained.

In addition, to the best of my knowledge, information and belief, no partner or other attorney at Coblentz, is a relative of, or has been so connected to, any judge of the United States

---

[2] This $295,566.27 pre-petition claim consists of the following approximate amounts: (A) $168,166.14 on unpaid invoices Coblentz issued pre-petition for pre-petition fees and expenses (including $31,154.15 for invoice(s) issued pre-petition, on which the Debtors issued payments to Coblentz pre-petition, but which payments did not clear the bank prior to the Petition Date, or at all); and (B) $127,400.13 for pre-petition fees and expenses that Coblentz had not yet billed prior to the Petition Date, but which were included in segregated/partial January, 2019 invoices that Coblentz issued to the Debtors post-petition for their information.

Bankruptcy Court for the Northern District of California, or to any appointee or employee of the Office of the United States Trustee for Region 17 (the "**U.S. Trustee**"). Accordingly, I submit that Bankruptcy Rule 5002 would not prohibit employment of Coblentz as special counsel for the Debtors in these cases.

Based on the foregoing, I believe Coblentz is qualified to serve as special counsel to the Debtors under section 327(e) of the Bankruptcy Code and to be paid from these estates, that Coblentz's retention as special counsel in connection with the matters described herein is in the best interest of the Debtors, the estates, and their creditors, and that Coblentz's retention should be approved under section 327(e) of the Bankruptcy Code.

Coblentz's practices encompass the representation of many diverse clients, some of which may be or may become creditors or parties in interest in these bankruptcy cases. To the extent that, during the course of Coblentz's employment in these Chapter 11 Cases, Coblentz discovers any facts materially bearing on matters described in this Declaration, Coblentz will supplement the information contained in this Declaration.

## COMPENSATION

The pre-petition terms of Coblentz's engagement by the Debtors are set forth in the PG&E Master Services Agreement updated January 2018, which is further incorporated by reference into periodic letters from Pacific Gas & Electric Company confirming Coblentz's retention in connection with various new matters as they arise (collectively, the "**Engagement Agreement**").[3] Coblentz has informed the Debtors that, subject to the approval of this Court, it will charge the Debtors for its legal services on an hourly basis at the rates set forth in the Engagement Agreement for calendar year 2019 and for reimbursement of certain costs and expenses in accordance with the terms of the Engagement Agreement. These hourly rates reflect discounts ranging from

---

[3] In the Engagement Agreement, Coblentz agreed to charge the Debtors at stipulated discounted rates during 2018 and 2019. In addition, for land conservation commitment work for the Debtors, Coblentz provides a discount of 3 percent on fees collected in excess of $300,000 during a calendar year, up to and including $500,000, and a discount of 5 percent on fees collected in excess of $500,000 during a calendar year. Further, with respect to work other than real estate and land conservation commitment work, Coblentz agreed to a 5 percent discount to the Debtors on fees collected in excess of $1,000,000 during a calendar year.

approximately 12 to 24 percent from Coblentz's ordinary and customary hourly rates for attorneys in effect as of January 1, 2019. The average discount for partners is approximately 16 percent, the average discount for of counsel attorneys is approximately 15 percent, and the average discount for associates is approximately 18 percent. In the normal course of its business, Coblentz revises its hourly rates annually, typically on or about January 1 of each year. Coblentz will discuss any such rate increases with the Debtors, and will serve notice of such rate increases to the Debtors and the Office of the United States Trustee, before the rate increases take effect. Coblentz also will cause notice of the rate increases to be filed with the Court, if so required. Coblentz will bill for services in increments of a tenth of an hour (0.1) as required by the U.S. Trustee Guidelines.

I believe that Coblentz's rates are reasonable based upon its capabilities and are below the market range for comparable firms. The billing rates for the attorneys and paraprofessionals currently expected to have a material role in representing the Debtors are set forth below:

**Real Estate/Land/Conservation Easement/Eminent Domain:**

| Name | Title | Discounted Hourly Rate – 2019 |
|---|---|---|
| Barbara A. Milanovich | Partner | $648 |
| Douglas C. Sands | Partner | $648 |
| Harry O'Brien | Partner | $900 |
| Scott Greenwood-Meinert | Partner | $472 |
| Matt Bove | Partner | $725 |
| Robert B. Hodil | Of Counsel | $520 |
| Misti M. Schmidt | Of Counsel | $450 |
| Joy Spezeski | Associate | $369 |
| Daniel P. Barsky | Associate | $334 |
| Leah P. Collins | Associate | $334 |
| Michael Wilson | Paralegal | $302 |
| Doug Larson | Paralegal | $284 |
| Angie Brandt | Paralegal | $248 |
| Gino Altamirano | Paralegal | $248 |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Litigation, Including CPUC, Regulatory, and Investigative**

| Name | Title | Discounted Hourly Rate – 2019 |
|---|---|---|
| Sean P. Coyle | Partner | $500 |
| Jonathan R. Bass | Partner | $800 |
| Charmaine Yu | Partner | $595 |
| Gregg M. Ficks | Partner | $623 |
| David (Duff) Beach | Of Counsel | $450 |
| Mark Hejinian | Associate | $400 |
| James McKee | Associate | $400 |
| Foram Dave | Associate | $365 |
| Yasmin L. Jayasuriya | Paralegal | $260 |
| Vincent N. Doan | Case Clerk | $175 |

The hourly rates set forth above are consistent with or generally less than the rates that Coblentz charges other comparable clients for similar services, whether in or outside of chapter 11, regardless of the location of the client or the court in which a matter is pending. The hourly rates listed above are appropriate and are generally less than (a) the rates that Coblentz charges for other similar types of representations, or (b) the rates that other counsel of similar expertise and experience would charge to do work similar to the work Coblentz will perform for the Debtors.

The expenses for which Coblentz may be reimbursed by the Debtors are limited by the Engagement Agreement. In accordance with the Engagement Agreement, unless otherwise agreed in advance, Coblentz cannot charge for secretarial services, library services, clerical support, learning or training costs, office supplies, postage, internal couriers, routine office photocopying, telecopying or fax, local telephone and cellular plans, filing, file indexing, bill preparation, staff overtime, word processing, computer assisted research (such as Lexis-Nexis, Westlaw and the like), and meals or snacks (unless while traveling).

Coblentz will charge such costs and expenses in accordance, and only to the extent consistent, with the Bankruptcy Local Rules, the applicable Guidelines promulgated by the U.S. Trustee, and the Engagement Agreement.

Coblentz will apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with its representation of the Debtors in

compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, the Fee Guidelines, and (including to any extent modified by) Orders of the Court. In connection with any employment or interim or final fee application Coblentz files in these Chapter 11 Cases, Coblentz will make a reasonable effort to comply with the Fee Guidelines.

Coblentz does not share fees with any attorneys except to the extent permitted by section 504 of the Bankruptcy Code.

**RESPONSE TO U.S. TRUSTEE FEE GUIDELINE QUESTIONS**

The following answer the questions in Section D.1 of the U.S. Trustee Guidelines:

1) Other than the discount provided for in the Engagement Agreement and noted above, Coblentz did not agree to any variations from, or alternatives to, its standard or customary billing arrangements for this engagement.

2) None of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case.

3) Coblentz billed the Debtors for services rendered prior to the Petition Date in accordance with the rate schedule included in the Engagement Agreement, as these rates existed in 2018 through December 31, 2018. Starting January 1, 2019, Coblentz began charging rates in accordance with the 2019 rate schedule included in the Engagement Agreement, as they incurred in the ordinary course of Coblentz's business. Coblentz's billing rates and material financial terms have not changed post-petition.

4) Coblentz and the Debtors will discuss a staffing plan and budget for these matters in connection with Coblentz's initial fee application in this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 18, 2019
San Francisco, California

_____
Gregg M. Ficks