**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>    ☐ Affects PG&E Corporation<br>    ☐ Affects Pacific Gas and Electric Company<br>    ☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DEBTORS' OBJECTION TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO 11 U.S.C. § 1103 AND FED. R. BANKR. P. 2014 AND 5002 TO RETAIN AND EMPLOY ANGEION GROUP, LLC AS FIRE CLAIM BAR DATE NOTICING AGENT EFFECTIVE AS OF MAY 22, 2019**<br><br>Related Docket No.: 2303<br>Date: June 26, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

Case: 19-30088    Doc# 2637    Filed: 06/19/19    Entered: 06/19/19 14:08:47    Page 1 of 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this objection (the "**Objection**") to the *Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Angeion Group, LLC as Fire Claim Bar Date Noticing Agent Effective as of May 22, 2019* [Dkt. No. 2303] (the "**Retention Application**").[1]  In support of this Objection, the Debtors submit the Supplemental Declarations of Shai Y. Waisman (the "**Supplemental Waisman Declaration**") and the Declaration of Jeanne C. Finegan (the "**Finegan Declaration**" and, together with the Supplemental Waisman Declaration, the "**Supplemental Declarations**"), filed contemporaneously herewith.[2]

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Retention Application or the Bar Date Motion (as defined below), as applicable.

# TABLE OF CONTENTS

I.    Preliminary Statement..........................................................................................6

II.   Angeion Is Not Qualified to Act As Noticing Agent in These or Any Other
      Chapter 11 Cases.................................................................................................8

      A.   Angeion Has No Prior Chapter 11 Experience and Has Demonstrated a
           Complete Lack of Understanding of the Notice Requirements and Other
           Applicable Rules under the Bankruptcy Code and Bankruptcy Rules ................8

      B.   Angeion Overstates its Class Action and Noticing Experience........................10

III.  Angeion Is Not Authorized to Act As a Noticing Agent in These Chapter 11
      Cases .................................................................................................................12

      A.   An Application to Retain Angeion as Noticing Agent May Only Be
           Made Pursuant Section 156(c) and Not Pursuant to Section 1103 of the
           Bankruptcy Code ...........................................................................................12

      B.   Angeion is Not Authorized to Act as an Agent of the Court .............................13

IV.   Prime Clerk – the Court Approved and Retained Claims and Noticing Agent
      for These Chapter 11 Cases – Is Eminently Qualified to Provide Notice on
      Behalf of the Court to All Parties Including Wildfire Claimants ...................................14

      A.   Prime Clerk is Qualified and Experienced........................................................15

      B.   Prime Clerk's Noticing Efforts Will be Complemented by an Expert in
           Both Chapter 11 and Class Action Noticing Requirements................................18

      C.   The Debtors and Prime Clerk have Already Expended Significant Time
           and Expense in Preparation of the Debtors' Proposed Noticing
           Campaign ......................................................................................................19

V.    These Chapter 11 Cases Should Not Be a Test Case for an Inexperienced Firm
      Such As Angeion .................................................................................................19

VI.   Conclusion .........................................................................................................20

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                                                    **Page(s)**

*In re AMR Corp.*,
    492 B.R. 660 (Bankr. S.D.N.Y. 2013)................................................................................20

*In re AMR Corporation (American Airlines), et al.*,
    No. 11-15463 (SHL) (Bankr. S.D.N.Y.).......................................................................18

*In re Circuit City Stores, Inc.*,
    No. 08-35653, 2010 WL 2208014 (Bankr. E.D. Va. May 28, 2010) ...............................9

*In re Commonwealth of Puerto Rico*,
    No. 17-03283 (LTS) (Bankr. P.R.) .........................................................................15, 17

*In re Energy Future Holding Corp.*,
    522 B.R. 520 (Bankr. D. Del. 2015).............................................................................20

*In re Enron*,
    No. 01-16034 (Bankr. S.D.N.Y.) ................................................................................19

*In re Freedom Commc'ns Holdings, Inc.*,
    472 B.R. 257 (Bankr. D. Del. 2012) ..............................................................................9

*In re General Motors Corp. et al*,
    No. 09-50026 (Bankr. S.D.N.Y.) ................................................................................28

*In re Nevada Emergency Services, Inc.*,
    39 B.R. 859 (D. Nev. 1984) ........................................................................................20

*In re Spenlinhauer*,
    572 B.R. 18 (Bankr. D. Mass. 2018) ...........................................................................20

*In re Spring Valley Farms, Inc.*,
    863 F.2d 832 (11th Cir. 1989) ....................................................................................19

*In re TK Holdings Inc.*,
    No. 17-11375 (BLS) (Bankr. D. Del.) ....................................................................15, 17

*In re: United Airlines*,
    No. 02-B-48191 (Bankr. N.D Ill.).................................................................................18

**Statutes**

*11 U.S.C. § 105(a)* ...........................................................................................................7

*11 U.S.C. § 502(b)(9)* ......................................................................................................7

*11 U.S.C. § 1103* .....................................................................................................8, 12, 13

*28 U.S.C. 156(c)* .................................................................................................8, 12, 13

California's Consumer Legal Remedies Act ...........................................................11

**Other Authorities**

Bankr. D. Nev., *Guidelines for a Claims and Noticing Agent* (Mar. 2018) ...........................13

*Fed. R. Bankr. P. 2002* .......................................................................................7, 9

*Fed. R. Bankr. P. 2002(a)(7)* ...............................................................................9

*Fed. R. Bankr. P. 2014* .......................................................................................2

*Fed. R. Bankr. P. 5002* .......................................................................................2

*Fed. R. Bankr. P. 3003(c)* ...................................................................................7, 9

*Fed. R. Bankr. P. 3003(c)(3)* ...............................................................................7

*Fed. R. Bankr. P. 5005* .......................................................................................7

*Fed. R. Bankr. P. 9007* .......................................................................................7

www.nvb.uscourts.gov/downloads/cm-ecf/guidelines-claims-agent.pdf ...........................13

www.pd-ual.com ..................................................................................................18

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    PRELIMINARY STATEMENT

In an effort to move these cases forward in an efficient and expeditious manner, the Debtors filed their Bar Date Motion on May 1, 2019 [Dkt. No. 1784] (the "**Debtors' Bar Date Motion**"), and proposed an approach, including customized Wildfire Proof of Claims Forms, that would allow for a single-step process to both identify the number of Wildfire Claims that exist and obtain basic documentation designed to enable all parties to assess those claims.

Unfortunately, due in large part to the actions of the TCC, the Debtors' efforts to establish a Bar Date and otherwise move these cases forward in a timely and efficient manner have been delayed now for over a month. Accordingly, while the Debtors believed then—and still believe now—that their approach set forth in the Bar Date Motion provides the most fair and efficient mechanism to resolve the core issue of the extent and validity of all Wildfire Claims to be addressed in a plan, the Debtors determined that decisive action must be taken to avoid further unnecessary delay and for the Court to establish a reasonable Bar Date that is critical to the chapter 11 process.

Accordingly, as the Court is aware, on June 10, 2019, the Debtors sent a letter to the TCC informing them that the Debtors would be adopting the TCC's summary Wildfire Proof of Claim Form[3] – thus rending moot nearly all of the pending objections to the Bar Date Motion and eliminating any reasonable argument that the Bar Date should be delayed until January 31, 2020.[4] In addition, although the Debtors are confident that their Noticing Procedures, including the unprecedented, multi-faceted

---

[3] The adoption of the TCC's Proof of Claim Form is by no means an admission or acknowledgment that the information requested in the TCC Proof of Claim Form is sufficient. Accordingly, the Debtors reserve all rights to take discovery with respect to, among other things, all Wildfire Claims that are filed. That is a critical way to address what should be a shared concern of all parties: the possibility of invalid or overstated claims, which undermine the fairness of the process. The Debtors continue to believe the TCC's approach will result in overall delay (and increased costs) in determining the validity and value of Wildfire Claims; however, the Debtors have been unable to persuade the TCC to adopt a single-step approach.

[4] Due to the failure of the TCC to engage in good faith discussions on the sharing of information, the Debtors understand that the UCC recently served formal discovery requests for the information set forth in the so-called BrownGreer database – which the TCC has repeatedly insisted contains or will contain all of the information parties could need to assess the Wildfire Claims but, at the same time, the TCC (and the various plaintiffs' groups it represents) has refused to share such database with the Debtors or the UCC to date. The Debtors support the UCC's efforts and believe the database should be made available to the Debtors and the UCC promptly.

aspects of their Supplemental Notice Plan, are reasonably calculated to provide adequate notice of the Bar Date to all known and unknown claimants and more than satisfy the requirements of due process of law, the Debtors have adopted certain additional measures to further refine the Supplemental Notice Plan, including, Over the Top TV, streaming radio, and Out-of-Home advertising; thus improving upon an already extensive noticing plan.[5] Accordingly, the TCC's Bar Date Motion as well as their previously filed TCC Proof of Claim Motion and the Retention Application now should all be rendered moot and unnecessary in light of the Debtors' proposed path forward.

Nevertheless, the TCC continues to pursue its own Bar Date Motion, with its own proposed noticing programs and procedures (the "**TCC Notice Program**"), including a proposed delayed Bar Date of January 31, 2020 (even though members of the constituency the TCC represents would likely support an earlier bar date),[6] and the retention of its own noticing agent for Wildfire Claims. The TCC seeks to retain Angeion as noticing agent notwithstanding the fact that Prime Clerk, LLC ("**Prime Clerk**"), a proven and established chapter 11 claims and noticing firm, already has been retained to serve as the Court-appointed noticing agent in these Chapter 11 Cases and is well-qualified to provide all noticing and other services with respect to the claims bar date and otherwise.

Not only is the retention of Angeion not necessary and a waste of estate assets, Angeion has no experience serving as a noticing agent or in any other capacity in any chapter 11 cases. In addition to the significant cost and delay that would be borne by the estates from employing yet another noticing firm, Angeion has demonstrated a lack of understanding of bankruptcy law and chapter 11 noticing as is evident from its proposed noticing plan—which plan, as set forth in the Finegan Declaration, is

---

[5] These revisions along with the many other amendments and revisions that the Debtors have agreed to incorporate into the proposed Bar Date Order to address the concerns of other parties in interest are set forth as part of the Debtors' omnibus reply (the "**Reply**") in support of the Bar Date Motion and in opposition to the TCC's Bar Date Motion and related pleadings, filed contemporaneously hereto.

[6] *See, e.g., Objection to Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for Order (i) Establishing Deadline for Filing Proofs of Claim, (ii) Establishing the Form and Manner of Notice Thereof, and (iii) Approving Procedures for Providing Notice of Bar Date and Other Information to all Creditors and Potential Creditors* [Dkt. No. 2240] (specifically stating that the Interested Parties do not object to the setting of a bar date in the timeframe proposed by the Debtors).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

excessive, wasteful due, in part, to its unnecessary frequency levels, and critically flawed in several respects.[7]

As is evident from the Retention Application, Angeion's only prior noticing experience is in the class action arena—which is of little or no application to these Chapter 11 Cases—and, as set forth below, even that experience is overstated and flawed. As described in detail in the Finegan Declaration, there have been numerous instances where noticing plans proposed by Angeion have been met with disfavor or disapproval by Courts, criticized by professionals and other industry leaders within the class action arena, and have resulted in significant cost and delay to the class action claims administration process.

Moreover, as explained in further detail below, noticing services in any chapter 11 case fall within the express purview and duties of the Clerk of the Court. As such, any application to serve as an administrative noticing agent of the Court must be made pursuant to 28 U.S.C. § 156(c) ("**Section 156(c)**") and not, as the TCC requests, as a professional to be retained pursuant to section 1103 of the Bankruptcy Code to act on behalf of any particular constituency. ***Indeed, upon information and belief, Angeion has not been approved and is not currently eligible to serve as a noticing agent on behalf of the Clerk of the Court.*** In contrast, Prime Clerk, an expert and leader in the field of chapter 11 claims and noticing, is on the list of pre-approved firms eligible to serve as agents of the Court and provide noticing services in chapter 11 cases, its retention in these Chapter 11 Cases has already been approved pursuant to Section 156(c), and Prime Clerk is more than qualified to serve the neutral and unbiased function of noticing agent for all constituencies in these Chapter 11 Cases, including Wildfire Claimants.

## II. ANGEION IS NOT QUALIFIED TO ACT AS NOTICING AGENT IN THESE OR ANY OTHER CHAPTER 11 CASES

### A. Angeion Has No Prior Chapter 11 Experience and Has Demonstrated a Complete Lack of Understanding of the Notice Requirements and Other Applicable Rules under the Bankruptcy Code and Bankruptcy Rules

As set forth in the Supplemental Declarations, upon information and belief, Angeion has never acted as a noticing agent in any chapter 11 case and, despite extensive research, the Debtors have

---

[7] The TCC and Angeion improperly use the Retention Application and the supporting Weisbrot Declaration as a forum to criticize the Debtors' Notice Procedures. As set forth in the Finegan Declaration, these criticisms are flawed and misplaced and the Debtors address those misguided criticisms in their Reply. *See* Finegan Decl. at ¶¶22-28.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

found no record of Angeion or Mr. Weisbrot ever being involved in a chapter 11 case in any capacity. Both the Weisbrot Declaration and Angeion's own website mention in passing that they offer "settlement management services" for bankruptcy administrations; however, there is no mention of any specific instance in which they have served in any capacity in a chapter 11 case nor any further explanation of their purported bankruptcy-related experience. Given their lack of any prior relevant experience, it is, therefore, not surprising that Angeion's Retention Application and proposed noticing plan demonstrate a lack of understanding of the notice requirements under the Bankruptcy Code and Bankruptcy Rules.[8]

For example, it is a bedrock principal of chapter 11 that *known* creditors are entitled to receive actual notice of key dates and important milestones by mail. *See, e.g., In re Circuit City Stores, Inc.*, No. 08-35653, 2010 WL 2208014, at *7 (Bankr. E.D. Va. May 28, 2010) ("Known creditors must receive actual notice by mail of the claims bar date."); *In re Freedom Commc'ns Holdings, Inc.*, 472 B.R. 257, 261 (Bankr. D. Del. 2012) ("Known creditors must generally be provided actual written notice of a debtor's bankruptcy filing and the bar claims date in the case."). Consistent therewith, Bankruptcy Rule 2002 requires that "the clerk, or some other person as the court may direct, shall give . . . all creditors and indenture trustees at least 21 days' notice ***by mail*** of . . . the time fixed for filing proofs of claims pursuant to Rule 3003(c)". Fed. R. Bankr. P. 2002(a)(7) (emphasis provided). Yet despite the foregoing, Angeion's noticing plan dispenses with any physical mailing to some two million known claimants and, instead, proposes to provide them with notice via electronic mail only. *See* Weisbrot Decl. at 24:2-4.[9]

Angeion's lack of bankruptcy experience is further evidenced by its attempt to demonstrate it is "disinterested". As set forth in the Weisbrot Declaration, when furnished with the Debtors' list of Potential Parties in Interest that all retained professionals have used to search their client

---

[8] In order to further explore Angeion's experience, the Debtors noticed a deposition of Mr. Weisbrot to take place before the June 26th hearing. The TCC stated that he was not available prior to the hearing. Accordingly, as set forth in the Reply, Mr. Weisbrot's declaration should be stricken based on the TCC's failure to provide his deposition prior to the hearing upon timely notice by the Debtors.

[9] While the Debtors' Notice Procedures contemplate providing notice via email to any of their Customers that have signed up for electronic billing that notice would be in addition to, and not in lieu of, notice by mail. *See* Debtors' Bar Date Motion at 25:6-9.

databases for potential conflicts of interest, Angeion only circulated that list to, and made inquiry of any potential conflicts from, a limited group of "Angeion Group Partners" as opposed to all firm professionals as is appropriate. In addition, the Weisbrot Declaration states that, in connection with its conflicts check, Angeion only searched its own client database for the five limited categories of parties from the Potential Parties in Interest List as opposed to the nearly thirty categories and some ten thousand entries that the other retained professionals have searched. *See* Weisbrot Decl. at 6:10-17. Angeion justifies its limited conflict search by unilaterally concluding that "a search of every name thereon would have produced little meaningful information for Angeion, the Court, and parties in interest to evaluate Angeion's relationships with Potential Parties in Interest." *Id*. at 6:13-17. The Debtors submit that Angeion is not the sole arbiter of whether it is disinterested.

Further, Angeion does not reference the Bankruptcy Code, the Bankruptcy Rules, or a single bankruptcy case in support of its proposed noticing plan. Rather, the Retention Application and supporting declaration cite to theories and precedents in class action cases as alleged support for Angeion and the TCC Notice Program. *See* Weisbrot Decl. at 10-12. As the Court is well aware, however, these Chapter 11 Cases are not class action settlements and, as set forth in the Reply and the Finegan Declaration, the Debtors' proposed Notice Procedures, including the Supplemental Notice Procedures, not only satisfy the more rigorous requirements of due process and fairness imposed under the Bankruptcy Code and Bankruptcy Rules, they exceed it by implementing bankruptcy noticing procedures that have proven successful in other cases where there were large numbers of potentially unknown claimants.

**B.    Angeion Overstates its Class Action and Noticing Experience**

Throughout the Retention Application and supporting declaration, Angeion describes itself as a leader in the class action and noticing industry. This is echoed by the TCC in its Bar Date Motion. *See* TCC Bar Date Memo. at 6:12-17. Even if this experience were relevant, Angeion's past experience in class action cases is overstated. As set forth in the Finegan Declaration, it is the Debtors' understanding that Angeion is a small firm of approximately twenty-five (25) employees in total (including all administrative support staff) that has limited experience in class action noticing, and outsources most of its services to third parties. *See* Finegan Decl. at ¶18. Angeion has neither the

experience nor the facilities to serve in any capacity in these Chapter 11 Cases, much less take on the important task of noticing tens of thousands of claimants and potential claimants.

Perhaps most alarming, however, is Angeion's (and the TCC's) failure to apprise the Court of the numerous instances where, even in the class action context where Angeion purports to be an expert, Mr. Weisbrot's plans and recommendations have been heavily criticized, reworked, and he even has been replaced as a notice expert. *See id.* at ¶21. A few examples include:

(i) *Pollard v. Remington* – Mr. Weisbrot was replaced by a different notice agent after his notice plan failed. Weisbrot's notice plan did not make effective use of media notice and resulted in a mere 2,327 claims being submitted out of a potential class of 7.5 million claimants. The Court found that the "low response rate demonstrates the notice process has not been effective." The final hearing was canceled and the Court ordered the parties to develop a notice plan that would "be effective and result in a more significant response rate". *See* Finegan Decl. at Ex. B.

(ii) *Cronin v. EOS* –The Court declined to approve Mr. Weisbrot's notice program, finding that the direct notice plan was insufficient and did not demonstrate that "reasonable efforts" were being made to provide direct notice. The Court also found that the indirect noticing plan was insufficient and was not designed to have the widest impact, noting that Weisbrot's declaration made clear that the form of notice was chosen not because it was calculated to reach class members but "to satisfy the notice requirements" of California's Consumer Legal Remedies Act. The Court denied the notice program and forced a rework. *See* Finegan Decl. at Ex. C.

(iii) *Neiman Marcus* – The settling parties represented to the Court that Mr. Weisbrot's notice program would include direct and indirect notice. Instead of providing direct notice to all class members, however, direct notice was provided to less than 50% of potential class members out of a proposed class of over two million. As a result of Mr. Weisbrot's noticing plan, less than one percent (three-quarters of a percent 0.75%) of the settling class submitted claim forms. The Court expressed its "concern" given the "paltry" results of the noticing efforts and directed the parties to consider whether further attempts at notice were warranted. *See* Finegan Decl. Ex. D.

Simply put, the Debtors do not want to subject their estates and other parties in interest to these risks.

### III. ANGEION IS NOT AUTHORIZED TO ACT AS A NOTICING AGENT IN THESE CHAPTER 11 CASES

#### A. An Application to Retain Angeion as Noticing Agent May Only Be Made Pursuant Section 156(c) and Not Pursuant to Section 1103 of the Bankruptcy Code

Pursuant to the Retention Application, the TCC improperly seeks to retain Angeion as "Fire Claim Bar Date Noticing Agent" pursuant to section 1103 of the Bankruptcy Code, which as the Court is aware, governs the retention of Committee professionals. Noticing, however (even if limited to Wildfire Claimants), is the sole responsibility of the Clerk of the Bankruptcy Court (the "**Clerk**") and is not within the purview of any professional to be retained to act on behalf of any particular constituency. Specifically, Section 156(c) of the Bankruptcy Code provides that:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c). Section 156(c) clearly states that noticing services are an administration function of the Court and that the Clerk (not a Committee) may utilize the services of an agent in cases under title 11 where such services or facilities are paid by the estate. Even the retention application filed by Epiq Corporate Restructuring, LLC, the TCC's joint information and service agent, recognizes the independence of the role of a Court-appointed noticing agent referring to its prior experience as such as serving in a "neutral capacity." Epiq Retention Application [Dkt. No. 1214] at 6.

Moreover, the *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* (as adopted by the Bankruptcy Courts for Southern District of New York and the District of Delaware), and, specifically, the Model Form 156 Retention Application annexed thereto, expressly state that providing "notice of any claims bar date" falls under the purview of "Claims and Noticing Services."[10] Other Bankruptcy Courts within the Ninth Circuit have similarly adopted protocols and

---

[10] *See* Bankr. D. Del., "Claims Agent Retention Application" at ¶9(a)(ii) (http://www.deb.uscourts.gov/content/forms); and Bankr. S.D.N.Y., "Application for an Order Authorizing Retention and Appointment of Claims and Noticing Agent" at ¶5(a)(ii) (http://www.nysb.uscourts.gov/claims-agent-forms).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

guidelines, which expressly state that bar date noticing is the obligation of a claims and noticing agent appointed under 28 U.S.C. 156(c).  *See, e.g.,* United States Bankruptcy Court District of Nevada, *Guidelines for a Claims and Noticing Agent*, (Mar. 2018) ("The outside claims agent shall: . . . Prepare and serve required notices in the above captioned case(s), including but not limited to . . . notice of the claims bar date. . ."), https://www.nvb.uscourts.gov/downloads/cm-ecf/guidelines-claims-agent.pdf.[11]

Accordingly, an application, such as the Angeion Retention Application, that seeks to retain a professional to carry out the noticing functions of the Court can only be made pursuant to Section 156(c) and not as the TCC seeks pursuant to section 1103 or any other provision of the Bankruptcy Code.

**B.    Angeion is Not Authorized to Act as an Agent of the Court**

Preparing and serving required notices and documents in a chapter 11 case, including notice of the Bar Date, is a central and essential duty of the Clerk.  As stated, in cases where a claims and noticing agent is appointed, the Clerk delegates its noticing duties and the claims and noticing agent acts on the Clerk's behalf.  Upon information and belief, however, Angeion has not been approved by a Clerk of any Court to act as a claims and noticing agent.  *See* Supp. Waisman Decl., at ¶12.

As described in the Supplemental Waisman Declaration, to act as an agent of the Clerk and serve as a claims and noticing agent, a firm is required to pass a rigorous background and pre-qualification process.  The firm must meet with the Clerk and provide significant information related to, *inter alia*, the firm's background, its experience, its familiarity with the chapter 11 process, its understanding of the chapter 11 claims process, its ability to implement and prosecute notice in a chapter 11 case, its data security and integrity related to the receipt and maintenance of debtor and claimant information, and much more.  And for good reason – the Clerk has a significant and vested interest in ensuring that any firm that is acting as its agent and is discharging the Clerk's statutory responsibilities, be qualified to provide all such services.  The Debtors understand that most Bankruptcy Court jurisdictions rely on the list of approved claims and noticing agents promulgated and published by the

---

[11] Although firms that are retained as claims and noticing agents are often also retained in chapter 11 cases by debtors or official committees pursuant to section 327(a) or 1103 of the Bankruptcy Code, those retentions are for administrative and other services that are unrelated to claims or noticing services or other traditional functions of the Clerk, such as establishing case websites, setting up toll-free creditor response lines, or proving plan balloting or vote tabulation services.  *See* Supp. Waisman Decl., at n.5.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Clerks of the Court for the Southern District of New York and the District of Delaware to determine whether a particular firm is qualified and trusted to serve as a claims and noticing agent. In fact, the Debtors are not aware of a single instance where a retention was approved in any jurisdiction for a claims or noticing agent that was not listed on the approved lists of agents for either of these two Districts. *See* Waisman Decl. at ¶11. It should come as no surprise then, given their complete lack of any prior experience, that Angeion is not included on the list of approved claims and noticing agents for either the Southern District of New York or the District of Delaware.[12]

As set forth in the Supplemental Waisman Declaration, based on prior experience, the process of securing approval of the Clerks for either of these two Districts likely would take Angeion weeks, if not longer, to complete. Moreover, even if Angeion was to seek approval of the appropriate parties to serve as a claims agent and if Angeion was able to secure such approvals (which, based on its spotty track record, is questionable), the Debtors understand that initial engagements for recently approved claims agents are typically limited to small, routine cases until the claims and noticing agent has demonstrated that it is able to satisfactorily perform the required tasks as an agent of the Court. *See* Supp. Waisman Decl. at ¶14. Accordingly, the following are the relevant circumstances as to Angeion:

(i)     it is not an approved noticing agent;

(ii)    approval, even if attainable, would take weeks, if not longer; and

(iii)   if approved, Angeion would first be required to demonstrate its capabilities in smaller routine cases, and clearly would not be permitted to take on responsibilities in one of the largest and most complex chapter 11 cases in U.S. history.

What is also quite apparent is that if the Court were to permit this scenario to unfold, the administration of these cases and distributions to creditors would be delayed even much longer than the delay the TCC already seeks to impose with its January 31, 2020 proposed bar date.

---

[12] *See* Bankr. S.D.N.Y., "Claims Agents" (http://www.nysb.uscourts.gov/claims-agents) and Bankr. D. Del., "Delaware Bankruptcy Court – Claims Agencies" (https://www.deb.uscourts.gov//claims-agency-list).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## IV. PRIME CLERK – THE COURT APPROVED AND RETAINED CLAIMS AND NOTICING AGENT FOR THESE CHAPTER 11 CASES – IS EMINENTLY QUALIFIED TO PROVIDE NOTICE ON BEHALF OF THE COURT TO ALL PARTIES INCLUDING WILDFIRE CLAIMANTS

### A. Prime Clerk is Qualified and Experienced

As the Court is aware, Prime Clerk has already been approved as claims and noticing agent in these Chapter 11 Cases, and with good reason. In contrast to Angeion's complete lack of chapter 11 experience, Prime Clerk has a wealth of experience, is currently, or was previously, involved in a multitude of large and complex cases and was named "Best Claims Agent" by *BankruptcyData* in 2018 and 2019. *See* Supp. Waisman Decl. at ¶3; *Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va.); *NewZoom, Inc.*, No. 15-31141 (HB) (Bankr. N.D. Cal.); *Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del.); *Fairway Energy, LP*, No. 18-12684 (LSS) (Bankr. D. Del.); *Dixie Electric, LLC*, No. 18-12477 (KG) (Bankr. D. Del.); *New MACH Gen GP, LLC*, No. 18-11369 (MFW) (Bankr. D. Del.); *Gibson Brands, Inc.*, No. 18-11028 (CSS) (Bankr. D. Del.); *Bertucci's Holdings, Inc.*, No. 18-10894 (MFW) (Bankr. D. Del.); *EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del.); *Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del.); *The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del.); *Orchard Acquisition Company, LLC*, No. 17-12914 (KG) (Bankr. D. Del.); *Rentech WP U.S., Inc.,* No. 17-12958 (CSS) (Bankr. D. Del.); *Appvion, Inc.,* No. 17-12082 (KJC) (Bankr. D. Del.); *Global Brokerage, Inc.,* No. 17-13532 (MEW) (Bankr. S.D.N.Y.); *Global A&T Electronics Ltd.,* No. 17-23931 (RDD) (Bankr. S.D.N.Y.); *Pacific Drilling S.A.*, No. 17-13193 (MEW) (Bankr. S.D.N.Y.); *Walter Investment Management Corporation,* No. 17-13446 (JLG) (Bankr. S.D.N.Y.); *Castex Energy Partners, L.P.,* No. 17-35835 (MI) (Bankr. S.D. Tex.); *Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *General Wireless Operations Inc. dba RadioShack,* No. 17-10506 (BLS) (Bankr. D. Del.); and *Channel Technologies Group, LLC*, No. 16-11912 (DS) (Bankr. C.D. Cal.).

Moreover, Prime Clerk has extensive experience serving as claims and noticing agent in chapter 11 cases involving mass tort and class action claims. *See, e.g., TK Holdings Inc.* (Takata)*,* No. 17-11375 (BLS) (Bankr. D. Del.); *In re Commonwealth of Puerto Rico*, No. 17-03283 (LTS) (Bankr. P.R.); *Imerys Talc America, Inc.*, No. 19-10289 (LSS) (Bankr. D. Del.); *In re Kaiser Gypsum Company,*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Inc.*, No. 16-31602 (JCW) (Bankr. W.D.N.C.); *In re Maxus Energy Corp.*, No. 16-11501 (CSS) (Bankr. D. Del); *In re Montreal Maine & Atlantic Railway, Ltd.*, No. 13-10670 (Bankr. D. ME); *Altegrity, Inc.*, No. 15-10226 (LSS) (Bankr. D. Del); *In re Old FENM Inc. (f.k.a Fresh & Easy Neighborhood Market, Inc.*, No. 13-12569 (KJC) (Bankr. D. Del.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.).

Additionally, Prime Clerk is the single most experienced bankruptcy claims and noticing agent in the energy sector, having been appointed to serve in 59 energy cases with an aggregate of nearly one million creditors and $177.4 billion in total liabilities. *See* Supp. Waisman Decl. at ¶3. Prime Clerk's energy sector experience includes the following: *In re Breitburn Energy Partners*, No. 16-11390 (SMB) (Bankr. S.D.N.Y.); *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex.); *In re Seadrill Limited*, No. 17-60079 (Bankr. S.D. Tex.); *In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D. Ohio); *In re Arch Coal, Inc.*, 16-40120 (Bankr. E.D. Mo.); *In re Vanguard Natural Resources*, No. 17-30560 (Bankr. S.D. Tex.); and *In re Patriot Coal Corporation*, No. 15-32450 (KLP) (Bankr. E.D. Va.).

As detailed in the Supplemental Waisman Declaration, Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as official claims and noticing agent in a bankruptcy case in this District and in other districts nationwide. Prime Clerk's staff has over 500 years of collective experience in the bankruptcy industry. The Prime Clerk professionals leading this matter include:

(i)     Shai Waisman (Chief Executive Officer) – former partner at Weil, Gotshal & Manges LLP; twenty-two (22) years of bankruptcy industry experience; bankruptcy case experience includes, among others: Debtors' counsel to Lehman Brothers, American Airlines, Global Crossing, WorldCom, Steve & Barry's, Finlay Jewelers, Bruno's Supermarkets, Factory Card Outlet, G-1 Holdings, Maidenform; counsel to others (secured creditors, unsecured creditors, creditors' committee, purchasers, asset disposition advisors, etc.) in the following cases, amongst others, Trans World Airlines, Comdisco, Bridge Information Systems,

Skip Barber Racing, Helig Meyers, Moonlight Basin, Murray Energy, Borders Books, Archstone, RSL Communications, Sabratek;

(ii) Benjamin Schrag (Chief Business Development Officer) – former associate at Kirkland & Ellis and previously employed as Vice President of Restructuring Services by another bankruptcy claims and noticing agent; thirteen (13) years of bankruptcy industry experience; bankruptcy case experience includes, among others: Solutia, Inc., Wellman, Inc. and Masonite Corporation;

(iii) Christopher Schepper (Executive Vice President) – previously employed as a Senior Managing Consultant and Vice President of Restructuring Support Services by another bankruptcy claims and noticing agent; twenty-five (25) years of bankruptcy industry experience; bankruptcy case experience includes, among others: Toys "R" Us, Inc., Commonwealth of Puerto Rico, RadioShack Corporation, SunEdison, Inc., Eastman Kodak, Blockbuster Inc., Calpine Corporation, Residential Capital LLC, Bally Total Fitness and Dura Corporation; and

(iv) Herb Baer (Director) – previously employed as Senior Director of Client Services by another bankruptcy claims and noticing agent; twenty (20) years of bankruptcy industry experience; bankruptcy case experience includes, among others: Sears, TK Holdings, Maxus Energy, New Gulf Resources, Lehman Brothers, WorldCom, Global Crossing, Enron, Bethlehem Steel, Lyondell, and Delta Airlines.

*See* Supp. Waisman Decl. at ¶4. Additionally, Prime Clerk has a staff of over 200 dedicated solely to bankruptcy, the largest personnel resource in the industry, who have assisted in managing over 205 cases, including the production and mailing of over 600 million pages of bankruptcy-specific notices.

Notably, Prime Clerk has deployed mass noticing strategies, including media campaigns, in dozens of cases, including in the Takata mass tort chapter 11 case, *In re TK Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del.), in which Prime Clerk developed a unique noticing plan to provide 88 million parties with customized notices and developed a customized mobile-focused digital and radio advertising campaign to provide supplemental notice to potential unknown claimants in Puerto Rico and the U.S. Virgin Islands in the aftermath of Hurricane Maria, and in *In re Commonwealth of Puerto Rico,* No. 17-03283 (LTS) (Bankr. P.R.), in which Prime Clerk coordinated and executed multiple mailings of various legal notices in two languages to millions of potential creditors, coordinated a radio campaign with information pertaining to the bar date and extended bar date, and opened claim information and processing centers throughout the island to facilitate the submission of proofs of claims by claimants

affected by Hurricane Maria. Accordingly, the retention of Angeion is both unnecessary and a waste of estate assets, as Prime Clerk, a proven expert in chapter 11 noticing campaigns, has already been retained in these cases and is more than well-qualified to provide appropriate notice consistent with due process.

### B. Prime Clerk's Noticing Efforts Will be Complemented by an Expert in Both Chapter 11 and Class Action Noticing Requirements

Prime Clerk's noticing efforts in these Chapter 11 Cases have been, and will continue to be, complemented by Jeanne Finegan, APR, who is an expert in *both* chapter 11 and class action noticing with more than thirty (30) years of communications and advertising experience. *See* Finegan Decl. at ¶3. Ms. Finegan is President and Chief Media Officer of HF Media, LLC, a division of Heffler Claims Group ("**Heffler**").[13] During her tenure, Ms. Finegan has implemented over 1,000 high-profile, complex legal notice communication programs. *Id.* at ¶10. In addition to working on numerous class action noticing plans, Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs, including:

(i) *In re AMR Corporation (American Airlines), et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y.) ("due and proper notice [was] provided, and … no other or further notice need be provided.").

(ii) *In re Jackson Hewitt Tax Service Inc.*, et al., No 11-11587 (Bankr. D. Del.) (2011). The debtors sought to provide notice of their filing, as well as of the hearings to approve their disclosure statement and confirm their plan, to a large group of current and former customers, which promised to be a difficult (if not impossible) and costly undertaking. The *Jackson Hewitt* notice program constituted one of the first large chapter 11 cases to incorporate online advertising, with more than 350 local newspaper and television websites, online display advertising, a website notice linked to a press release and notice on eight major websites, including CNN and Yahoo.

(iii) *In re General Motors Corp. et al*, No. 09-50026 (Bankr. S.D.N.Y.). This case was the fourth largest bankruptcy in U.S. history. Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.

(iv) *In re: United Airlines*, No. 02-B-48191 (Bankr. N.D. Ill.). Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs. The notice was published in 11 countries and translated into six languages. Ms. Finegan worked closely with legal counsel and UAL's advertising team to select the appropriate media campaign. www.pd-ual.com.

---

[13] It is the Debtors' understanding that Heffler and Prime Clerk have been exploring a strategic transaction between the two firms for some time and that, while no definitive agreement has been entered into as of the date hereof, the firms anticipate reaching agreement in the near term.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(v)    *In re Enron*, No. 01-16034 (Bankr. S.D.N.Y.).  Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*See* Finegan Decl. at ¶12.  With Ms. Finegan's assistance, Prime Clerk has incorporated the latest noticing tools and trends into the Debtors' Notice Procedures, including the Supplemental Notice Plan, in an effective, tailored, and cost-conscious manner.

### C.    The Debtors and Prime Clerk have Already Expended Significant Time and Expense in Preparation of the Debtors' Proposed Noticing Campaign

As stated, Prime Clerk has already been retained as claims and noticing agent since February 1, 2019 and has been working proactively with the Debtors to address the unique noticing issues presented in these Chapter 11 Cases since before the Petition Date.  As a preliminary matter, Prime Clerk has spent weeks working with PG&E's security clearance team in order to coordinate access to highly sensitive data required for noticing.  *See* Supp. Waisman Decl. at ¶8.

Additionally, Prime Clerk has taken steps to prepare to implement the Debtors' Notice Procedures and Supplemental Noticing Plan, including purchasing all of the necessary paper, preparing content for TV, radio and internet campaigns, and working on specially designed mailers meant to simplify and streamline claim submission.  There is no reason to proceed in a different fashion and incur the duplication of effort, expense, and delay necessarily attendant thereto.

### V.    THESE CHAPTER 11 CASES SHOULD NOT BE A TEST CASE FOR AN INEXPERIENCED FIRM SUCH AS ANGEION

As has been repeatedly stated, the Debtors' Chapter 11 Cases are large and complex.  The Debtors comprise one of the largest electric and natural gas utilities in the United States, with approximately 16 million customers, some 24,000 employees, and potentially thousands of claims arising out of or relating to the tragic and catastrophic wildfires that occurred in Northern California in 2017 and 2018—by many accounts, these Chapter 11 Cases represent one of the largest chapter 11 filings in U.S. history.  The noticing process should not be entrusted to an agent with no chapter 11 noticing experience and questionable class action noticing results.

It is well established that inadequate notice of a claims bar date is a defect that precludes discharge of a claim in bankruptcy.  *See In re Spring Valley Farms, Inc.*, 863 F.2d 832, 835 (11th Cir.

1989); *In re Nevada Emergency Services, Inc.*, 39 B.R. 859, 861-62 (D. Nev. 1984); *In re Spenlinhauer*, 572 B.R. 18, 34 (Bankr. D. Mass. 2018); *In re Energy Future Holding Corp.*, 522 B.R. 520, 529 (Bankr. D. Del. 2015) ("A debtor must provide actual notice to all 'known creditors' in order to discharge their claims."); and *In re AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) ("[I]f a creditor is not given reasonable notice of . . . the relevant bar dates, its claim cannot be constitutionally discharged."). The Debtors' potential discharge and the ultimate success of these Chapter 11 Cases should not be dependent on the efficacy of a firm that has no noticing experience in a chapter 11 context and questionable noticing results in other industries, especially considering that a noticing agent with impeccable qualifications and experience has already be selected and approved in these Chapter 11 Cases. Accordingly, Angeion's Retention Application should be denied.

## VI. CONCLUSION

The Debtors have retained, and the Clerk of the Court has approved, Prime Clerk to provide all noticing services in these Chapter 11 Cases and, therefore, the retention of another noticing firm would serve no purpose and would unnecessarily create duplication of efforts, waste, inefficiencies, and delay. As stated, Angeion is not authorized to act as an agent of the Clerk of the Court, and is otherwise unqualified to serve as noticing agent in these Chapter 11 Cases. Angeion has not been retained in a single chapter 11 case, has demonstrated a lack of familiarity and understanding of the requirements of the Bankruptcy Code and Bankruptcy Rules, and has repeatedly implemented deficient noticing plans in the class action context. In contrast, Prime Clerk is comprised of leading industry professionals with significant experience in legal noticing in large and complex chapter 11 cases. Accordingly, for the reasons set forth above, the Retention Application should be denied.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

WHEREFORE the Debtors request that the Court deny the Retention Application and grant the Debtors such other and further relief as the Court may deem just and appropriate.

Dated: June 19, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By:  /s/ *Stephen Karotkin*
         Stephen Karotkin

*Attorneys for Debtors*
*and Debtors in Possession*