WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**SUPPLEMENTAL DECLARATION OF SHAI Y. WAISMAN (I) IN SUPPORT OF THE DEBTORS' BAR DATE MOTION AND (II) IN RESPONSE TO THE TORT COMMITTEE'S BAR DATE MOTION AND RELATED FILINGS**<br><br>Related Docket Nos.: 1784, 2297, 2303, 2636, and 2637<br>Date: June 26, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

Pursuant to 28 U.S.C. § 1746, I, Shai Y. Waisman, hereby declare as follows under penalty of perjury:

1. I am the Chief Executive Officer of Prime Clerk LLC ("**Prime Clerk**"), a chapter 11 administrative services firm whose headquarters are located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2. I submit this Supplemental Declaration:

   A. in further support of (1) *the Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for Order (i) Establishing Deadline for Filing Proofs of Claim, (ii) Establishing the Form and Manner of Notice Thereof, and (iii) Approving Procedures for Providing Notice of Bar Date and Other Information to all Creditors and Potential Creditors* [Dkt. No. 1784] (the "**Bar Date Motion**") and (2) the *Debtors' Omnibus (I) Reply in Support of the Debtors' Bar Date Motion, and (II) Objection to the TCC's Bar Date Motion* (the "**Reply**") filed contemporaneously herewith; and

   B. in response and opposition to (1) *the Motion of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. §§ 105(a), 501 and Fed. R. Bankr. P. 3001(a), 3003(c), 5005 and 9007 for Entry of an Order (i) Establishing a Bar Date for Filing Fire Claims, (ii) Approving the Form and Procedures for Notice of the Bar Date for Fire Claims, and (iii) Approving Supplemental Procedure for Notice of the Bar date to Fire Claimants* [Dkt. No. 2297] (the "**TCC Bar Date Motion**"), (2) the *Objection of the Official Committee of Tort Claimants to Motion of the Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for Order (i) Establishing Deadline for Filing Proofs of Claim, (ii) Establishing the Form and Manner of Notice Thereof, and (iii) Approving Procedures for Providing Notice of Bar Date and Other Information to all Creditors and Potential Creditors* [Dkt. No. 2306] (the "**TCC Objection**"), and (3) *the Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Angeion Group, LLC as Fire Claim Bar Date Noticing Agent Effective as of May 22, 2019* [Dkt. No. 2303] (the "**Angeion Retention Application**").[1]

---

[1] Capitalized terms not otherwise defined herein have the meanings assigned to them in the Angeion Retention Application or the Bar Date Motion, as applicable.

## I. PRIME CLERK'S NOTICING EXPERTISE AND QUALIFICATIONS

3. As detailed in my initial declaration in support of the Debtors' Bar Date Motion [Dkt. No. 1786] (the "**Initial Declaration**"),[2] Prime Clerk is authorized by the Clerk of the Court to act as claims and noticing agent and has significant experience acting in such capacity. Prime Clerk's qualifications include:

- Being appointed claims agent in over 205 cases in the last six years - more cases than any other claims agent in the industry.

- Repeatedly being appointed claims agent in the largest and most complex cases, including Sears, Caesars, iHeart Media, A&P, West, Sunguard, Claire's Stores, Bon Ton Stores, Toys R Us, Walter Investments, Radio Shack, Altegrity, Avaya, Cenveo, Payless, Chassix, Gibson Brands, Golfsmith, Gymboree, among others. *See, e.g., In re NewZoom, Inc.*, No. 15-31141 (HB) (Bankr. N.D. Cal.); *In re Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del.); *In re Fairway Energy, LP*, No. 18-12684 (LSS) (Bankr. D. Del.); *In re Dixie Electric, LLC*, No. 18-12477 (KG) (Bankr. D. Del.); *In re New MACH Gen GP, LLC*, No. 18-11369 (MFW) (Bankr. D. Del.); *In re Gibson Brands, Inc.*, No. 18-11028 (CSS) (Bankr. D. Del.); *In re Bertucci's Holdings, Inc.*, No.18-10894 (MFW) (Bankr. D. Del.); *In re EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del.); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del.); *In re The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del.); *In re Orchard Acquisition Company, LLC*, No. 17-12914 (KG) (Bankr. D. Del.); *In re Rentech WP U.S., Inc.,* No. 17-12958 (CSS) (Bankr. D. Del.); *In re Appvion, Inc.*, No. 17-12082 (KJC) (Bankr. D. Del.); *In re Global Brokerage, Inc.,* No. 17-13532 (MEW) (Bankr. S.D.N.Y.); *In re Global A&T Electronics Ltd.,* No. 17-23931 (RDD) (Bankr. S.D.N.Y.); *In re Pacific Drilling S.A.*, No. 17-13193 (MEW) (Bankr. S.D.N.Y.); *In re Walter Investment Management Corporation*, No. 17-13446 (JLG) (Bankr. S.D.N.Y.); *In re Castex Energy Partners, L.P.,* No. 17-35835 (MI) (Bankr. S.D. Tex.); *In re Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va.); *In re Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *In re General Wireless Operations Inc. dba RadioShack,* No. 17-10506 (BLS) (Bankr. D. Del.); and *In re Channel Technologies Group, LLC*, No. 16-11912 (DS) (Bankr. C.D. Cal.).

- Extensive experience serving as claims and noticing agent in chapter 11 cases involving mass tort and class action claims. *See, e.g., TK Holdings Inc.* (Takata), No. 17-11375 (BLS) (Bankr. D. Del.); *In re Commonwealth of Puerto Rico*, No. 17-03283 (LTS) (Bankr. P.R.); *Imerys Talc America, Inc.*, No. 19-10289 (LSS) (Bankr. D. Del.); *In re Kaiser Gypsum Company, Inc.*, No. 16-31602 (JCW) (Bankr. W.D.N.C.); *In re Maxus Energy Corp.*, No. 16-11501 (CSS) (Bankr. D. Del); *In re Montreal Maine & Atlantic Railway, Ltd.*, No. 13-10670 (Bankr. D. ME); *Altegrity, Inc.*, No. 15-10226 (LSS) (Bankr. D. Del); *In re Old FENM Inc. (f.k.a Fresh & Easy Neighborhood Market, Inc.*, No. 13-12569 (KJC) (Bankr. D. Del.); *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del.).

- Prime Clerk was named "Best Claims Agent" by *BankruptcyData* in 2018 and 2019.

---

[2] Benjamin P.D. Schrag of Prime Clerk submitted a declaration in support of the Debtors' Bar Date Motion [Dkt. No. 1787] that was identical in substance to the declaration I submitted. This was necessitated by an illness in my family that may have rendered me unavailable for the original scheduled hearing on this matter.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- The FDIC has reviewed, approved, and contracted with Prime Clerk to serve as a Claims and Noticing Administrator for Complex Financial Institutions.

- Prime Clerk is the single most experienced claims and noticing agent for bankruptcies in the energy sector. Prime Clerk has been appointed to serve in 59 energy cases, with an aggregate of nearly a million creditors and $177.4 billion in total liabilities, including *In re Breitburn Energy Partners*, No. 16-11390 (SMB) (Bankr. S.D.N.Y.); *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y.); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex.); *In re Seadrill Limited*, No. 17-60079 (Bankr. S.D. Tex.); *In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D. Ohio); *In re Arch Coal, Inc.*, 16-40120 (Bankr. E.D. Mo.); *In re Vanguard Natural Resources*, No. 17-30560 (Bankr. S.D. Tex.); and *In re Patriot Coal Corporation*, No. 15-32450 (KLP) (Bankr. E.D. Va.).

4. In addition to being foremost in the industry in representations, Prime Clerks' team is comprised of leading industry professions who have experience in both the legal and administrative aspects of complex chapter 11 cases and over 500 years of collective experience in the bankruptcy industry. Such professionals have experience in all aspects of large and complex chapter 11 cases, including experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects, as well as serving as counsel to debtors, creditors, and other parties in interest. The following details some of the relevant experience of myself and the other professionals leading Prime Clerk's engagement on these Chapter 11 Cases:

(i) Shai Waisman (Chief Executive Officer) – former partner at Weil, Gotshal & Manges LLP; twenty-two (22) years of bankruptcy industry experience; bankruptcy case experience includes, among others: Debtors' counsel to Lehman Brothers, American Airlines, Global Crossing, WorldCom, Steve & Barry's, Finlay Jewelers, Bruno's Supermarkets, Factory Card Outlet, G-1 Holdings, Maidenform; counsel to others (secured creditors, unsecured creditors, creditors' committee, purchasers, asset disposition advisors, etc.) in the following cases, amongst others, Trans World Airlines, Comdisco, Bridge Information Systems, Skip Barber Racing, Helig Meyers, Moonlight Basin, Murray Energy, Borders Books, Archstone, RSL Communications, Sabratek;

(ii) Benjamin Schrag (Chief Business Development Officer) – former associate at Kirkland & Ellis and previously employed as Vice President of Restructuring Services by another bankruptcy claims and noticing agent; thirteen (13) years of bankruptcy industry experience; bankruptcy case experience includes, among others: Solutia, Inc., Wellman, Inc. and Masonite Corporation;

(iii) Christopher Schepper (Executive Vice President) – previously employed as a Senior Managing Consultant and Vice President of Restructuring Support

Services by another bankruptcy claims and noticing agent; twenty-five (25) years of bankruptcy industry experience; bankruptcy case experience includes, among others: Toys "R" Us, Inc., Commonwealth of Puerto Rico, RadioShack Corporation, SunEdison, Inc., Eastman Kodak, Blockbuster Inc., Calpine Corporation, Residential Capital LLC, Bally Total Fitness and Dura Corporation; and

(iv) Herb Baer (Director) – previously employed as Senior Director of Client Services by another bankruptcy claims and noticing agent; twenty (20) years of bankruptcy industry experience; bankruptcy case experience includes, among others: Sears, TK Holdings, Maxus Energy, New Gulf Resources, Lehman Brothers, WorldCom, Global Crossing, Enron, Bethlehem Steel, Lyondell, and Delta Airlines.

Additionally, Prime Clerk has a staff of over 200 dedicated solely to bankruptcy, the largest personnel resource in the industry, who have assisted in managing over 205 cases, including the production and mailing of over 600 million pages of bankruptcy-specific notices.

5. Prime Clerk has also deployed mass noticing strategies such as the one contemplated in these cases in dozens of bankruptcy cases, including in the Takata case, *In re TK Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del.), in which Prime Clerk developed a unique noticing plan to provide 88 million parties with customized notices and a customized mobile-focused digital and radio advertising campaign to provide supplemental notice to potential unknown claimants in Puerto Rico and the U.S. Virgin Islands in the aftermath of Hurricane Maria. Likewise, in *In re Commonwealth of Puerto Rico*, No. 17-03283 (LTS) (Bankr. P.R.), Prime Clerk coordinated and executed multiple mailings of various legal notices in two languages to millions of potential creditors, coordinated a radio campaign with information pertaining to the bar date and extended bar date, and opened claim information and processing centers throughout the island to facilitate the submission of proofs of claims by claimants affected by Hurricane Maria.

II. **PRIME CLERK HAS BEEN RETAINED AS CLAIMS AND NOTICING AGENT IN THESE CHAPTER 11 CASES AND HAS WORKED WITH THE DEBTORS SINCE THE PETITION DATE TO DEVELOP THE ROBUST NOTICE PLAN**

6. As stated in my Initial Declaration, the Debtors engaged Prime Clerk in January 2019 to perform a variety of tasks relating to the Debtors' restructuring. On February 1, 2019, the Court entered

an order approving the Debtors' retention of Prime Clerk as official claims and noticing agent pursuant to 28 U.S.C. § 156(c) ("**Section 156(c)**") [Dkt. No. 245] (the "**Retention Order**").[3] Pursuant to the Retention Order, Prime Clerk is authorized and directed to "perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in these Chapter 11 Cases, and all related tasks, all as described in the [Prime Clerk retention application]." Retention Order, at ¶ 2. As required by Section 156(c) and the protocols for engagement of claims and noticing agents and as set forth in Prime Clerk's retention application, Prime Clerk's tasks also expressly include "Furnishing a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim." [Dkt. No. 14] at 5:22-23.

7. As official claims and noticing agent in these Chapter 11 Cases and consistent with the Retention Order, Prime Clerk has been working proactively with the Debtors to formulate the specially-tailored Notice Procedures, including the unprecedented and multi-faceted components of the Supplemental Notice Plan, to provide notice of the Bar Date to all known and unknown creditors of the Debtors, including Known and Unknown Wildfire Claimants. To that end, professionals at Prime Clerk have spent significant time collaborating with the Debtors and their advisors in preparing the Debtors' recommended noticing strategy by researching the costs and efficiencies of various noticing strategies and alternatives, and using its past noticing campaigns – which have all been met with success and praise from various bankruptcy courts – to present various ideas for maximizing effectiveness and minimizing costs. In addition, Prime Clerk's noticing efforts in these Chapter 11 Cases have been, and will continue to be, complemented by Jeanne C. Finegan, who is an expert in *both* chapter 11 and class action noticing with more than thirty (30) years of communications and advertising experience. Ms. Finegan is President and Chief Media Officer of HF Media, LLC, a division of Heffler Claims Group ("**Heffler**"),[4] and, it is my understanding that, in addition to working on numerous class action noticing plans, Ms.

---

[3] Separate and apart from Prime Clerk's role as claims and noticing agent, by order dated April 9. 2019 [Dkt. No. 1300], the Court approved the Debtors' application to employ Prime Clerk as administrative advisor in these Chapter 11 Cases.

[4] Heffler and Prime Clerk have been exploring a strategic transaction between the two firms for some time. While no definitive agreement has been entered into as of the date hereof, the firms anticipate reaching agreement in the near term.

Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.

8. Further, as retained claims and noticing agent, Prime Clerk has been working proactively with the Debtors to address the unique noticing issues presented in these Chapter 11 Cases since before the Petition Date and has taken step to ensure they are prepared for noticing the Bar Date. These steps include, among other things, purchasing all of the necessary paper, preparing content for TV, radio and internet campaigns, and working on specially designed mailers meant to simplify and streamline claim submission. Additionally, Prime Clerk has spent weeks working with PG&E's security clearance team to coordinate access to highly sensitive data required for noticing.

### III. ANGEION IS NOT AUTHORIZED TO ACT AS AN AGENT OF THE COURT AND HAS DEMONSTRATED A LACK OF UNDERSTANDING OF THE BANKRUPTCY NOTICING RULES AND REQUIREMENTS

9. It is my understanding, based on my prior experience as a bankruptcy lawyer for nearly fifteen (15) years and a claims and noticing agent for nearly six (6) years, that the duties that noticing agents perform, including preparing and serving required notices and documents in a chapter 11 case, such as notice of the Bar Date, are central and essential duties of the Clerk of the Court (the "**Clerk**").[5] I further understand that Section 156(c) provides that the Clerk may utilize the services of a noticing agent in cases arising under title 11 where such services or facilitates are paid by the estate. For these reasons, I understand that the Clerk has a significant and vested interested in ensuring that any firm that is acting as its agent and is discharging the Clerk's statutory responsibilities, be qualified to provide all such services.

10. Accordingly, it is my experience that, to act as an agent of the Clerk and serve as a claims and noticing agent, a firm is required to pass a rigorous background and pre-qualification process. Based

---

[5] Although firms that are retained as claims and noticing agents are often also retained in chapter 11 cases by debtors or official committees pursuant to section 327(a) or 1103 of the Bankruptcy Code, those retentions are for other administrative services that must be unrelated to claims or noticing services or other traditional functions of the Clerk, such as providing notice, processing claims, maintaining a public docket, maintaining the claims register, establishing case websites, setting up toll-free inquiry hotlines, or proving other related services.

on my experience, this process includes meeting with the Clerk and providing signification information related to, among other things, the firm's background, its experience, its familiarity with the chapter 11 process, its understanding of the chapter 11 claims process, its ability to implement and prosecute notice in a chapter 11 case, its data security and integrity related to the receipt and maintenance of debtor and claimant information, and much more.

11. It is my understanding that most Bankruptcy Court jurisdictions rely on the lists of approved claims and noticing agents promulgated and published[6] by the Clerks of the Court for the Southern District of New York and the District of Delaware to determine whether a particular firm is qualified and trusted to serve as a claims and noticing agent. I am not aware of a single instance where a retention was approved in any jurisdiction for a claims or noticing agent that was not listed on the approved lists of agents for either of those two Districts. Notably, since it launched, Prime Clerk has been listed as an approved claims and noticing agent on the lists for the Southern District of New York and the District of Delaware and has served as a claims and noticing agent in the following districts: Central District of California, District of Puerto Rico, District of the Virgin Islands, District of Alaska, District of Delaware, District of Maine, District of Massachusetts, District of Nebraska, District of Nevada, District of New Jersey, Eastern District of Missouri, Eastern District of Virginia, Northern District of California, Northern District of Illinois, Northern District of Ohio, Northern District of Texas, Southern District of Florida, Southern District of New York, Southern District of Texas, Western District of North Carolina, Western District of Pennsylvania, Western District of Texas and Western District of Wisconsin.

12. To my knowledge, Angeion is not now, nor has it ever been, approved to serve as claims and noticing agent in this District, the Southern District of New York, the District of Delaware, or any other district in this country. To my knowledge, Angeion has never been retained in a chapter 11 case as a claims or noticing agent or in any other capacity.

---

[6] *See* Bankr. S.D.N.Y., "Claims Agents" (http://www.nysb.uscourts.gov/claims-agents) and Bankr. D. Del., "Delaware Bankruptcy Court – Claims Agencies" (https://www.deb.uscourts.gov//claims-agency-list).

13. To my knowledge, and upon a review of the profiles of Angeion's employees on Angeion's website, no employee of Angeion has any substantive experience in bankruptcy, bankruptcy law, or serving as an appointed claims and noticing agent in a bankruptcy case. This includes Steven Weisbrot, whom I never encountered in a bankruptcy case in my twenty-two (22) years in the industry and whose bio includes no reference to any bankruptcy education, experience, or other qualification whatsoever.[7]

14. Based on my experience, the process of securing approval of the Clerk to serve as claims and noticing agent likely would take Angeion weeks, if not longer, to complete. If Angeion were to seek approval of the appropriate parties to serve as a claims and noticing agent and if it were able to secure such approvals, it is my experience that noticing firms are typically subject to a probationary period with initial engagements limited to small, routine cases until the claims and noticing agent has demonstrated that it is able to satisfactorily perform the required tasks as an agent of the Court.

15. Based upon my review of Angeion's website, including its case specific sites, Angeion likely could not obtain approval to serve as an agent of the Clerk without a significant technology upgrade and the investment of time, money, and human capital resources. This is separate and apart from Angeion's lack of familiarity with bankruptcy rules and procedures and lack of experienced staff, all of which, in my experience, would be problematic for any applicant seeking to serve the Clerk.

16. Notably, Angeion's noticing plan suggests dispenses with physical mailing to approximately two million known claimants and, instead, proposes to provide them with notice via electronic mail only, in clear violation of Bankruptcy Rule 2002. In my opinion, any experienced bankruptcy noticing agent would be aware that Bankruptcy Rule 2002 requires that "the clerk, or some other person as the court may direct, shall give . . . all creditors and indenture trustees at least 21 days' notice *by mail* of . . . the time fixed for filing proofs of claims pursuant to Rule 3003(c)". Fed. R. Bankr. P. 2002(a)(7) (emphasis provided). Furthermore, Angeion does not reference the Bankruptcy Code, the Bankruptcy Rules, or a single bankruptcy case in support of its proposed noticing plan. Rather, as I understand it, the Angeion Retention Application and supporting declaration cite to theories and

---

[7] *See* http://www.angeiongroup.com/our_team.htm.

precedents for class action cases which, in my opinion, has little or no application here. Additionally, the TCC also tries to fault the Debtors for not using the U.S. Postal Service Change of Address Database and verification searches (also known as skip tracing). These are services that Prime Clerk (and other established noticing firms) performs in virtually all cases and would be assumed, rather than highlighted as some extraordinary measure.[8]

17. For all of the reasons discussed in this Supplemental Declaration, it is my opinion that Angeion is neither authorized nor qualified to act as noticing agent in these Chapter 11 Cases. In contrast, based on my experience, it is my belief that Prime Clerk is more than qualified to serve as an agent of the Court in these Chapter 11 Cases and discharge the Clerk's duties, including providing notice of the Bar Date to all known and unknown claimants, including Wildfire Claimants.

---

[8] In fact, in these cases, Prime Clerk will not only be performing regular skip tracing, but also intends to utilize additional services to perform address look- for all mail that is returned as undeliverable with no forwarding address, a protocol notably absent from Angeion's plan.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed on June 19, 2019, in New York, New York.

_____
Shai Y. Waisman