**DIEMER & WEI, LLP**
Kathryn S. Diemer (#133977)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Telephone: 408-971-6270
Facsimile: 408-971-6271
Email: kdiemer@diemerwei.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Benjamin P. McCallen (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
      jminias@willkie.com
      bmccallen@willkie.com

*Counsel for Ad Hoc Subrogation Group of Subrogation Claim Holders*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Chapter 11 |
| **PG&E CORPORATION,** | Bankr. Case No. 19-30088 (DM) |
| -and- | (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | **MEMORANDUM OF POINTS AND AUTHORITIES AND LIMITED OBJECTION WITH REGARD TO THE ENTRY OF A PROTECTIVE ORDER** |
| **Debtors.** | |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors | **Hearing Date:** June 26, 2019<br>**Hearing Time:** 9:30 a.m. (Pacific Time)<br>**Hearing Location:** United States Bankruptcy Court, Courtroom 17, 16th Floor, San Francisco, CA 94102<br>**Judge:** Hon. Dennis Montali<br>**Objection Deadline:** June 19, 2019, 4:00 p.m. (Pacific Time) |
| * *All papers shall be filed in the lead case, No. 19-30088 (DM)* | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ........................................................................................................................... 3

    A.    Disputed Terms In The Proposed Protective Orders. ........................................................ 3

    B.    Additional Important Provisions Of The Proposed Protective Orders. ........................... 3

ARGUMENT ................................................................................................................................. 5

  I.    THE BURDEN OF BRINGING A MOTION SHOULD FALL ON THE PARTY CLAIMING CONFIDENTIALITY. ................................................................................. 5

  II.   EACH OF THE PROPOSED PROTECTIVE ORDERS CREATES THE RISK OF OVERLY RESTRICTIVE DESIGNATIONS. ................................................................. 6

    A.    Parties That Sign the Acknowledgment Should Not Be Required to Obtain Producing Party Consent. ..................................................................................................................... 6

    B.    Certain Protective Order Provisions May Lend Themselves to Abuse. .......................... 7

CONCLUSION ............................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Brewer v. Gen. Nutrition Corp.*,
   No. 11-CV-3587 (YGR), 2014 WL 5873328 (N.D. Cal. Nov. 12, 2014) ...........................6

*In re Crawford*,
   194 F.3d 954 (9th Cir. 1999) ................................................................................................6

**Statutes**

11 U.S.C. § 107(a)....................................................................................................................5

The Ad Hoc Subrogation Group of subrogation claim holders (the "Ad Hoc Subrogation Group") in the above-captioned chapter 11 cases of PG&E Corporation and Pacific Gas and Electric Company (together, the "Debtors"), by its attorneys Willkie Farr & Gallagher LLP and Diemer & Wei, LLP, hereby submits, pursuant to 11 U.S.C. § 1109(b), this memorandum of points and authorities and limited objection with regard to the *Motion of the Official Committee of Tort Claimants for Entry of a Protective Order*, filed by the Official Committee of Tort Claimants (the "TCC") on June 5, 2019 (the "TCC Motion"), and the *Motion for Entry of Protective Order Pursuant to Fed. R. Bankr. P. 7026 and 11 U.S.C. § 105(a) Governing Discovery Materials and Other Information*, filed by the Debtors on June 7, 2019 (the "Debtors' Motion").

## PRELIMINARY STATEMENT

1. It is anticipated that the Debtors will produce substantial discovery in these Chapter 11 cases related to a variety of issues, most significantly their liability for various wildfires in 2017 and 2018. The Ad Hoc Subrogation Group, whose members hold, or act as investment advisors or managers to funds and/or accounts or their respective subsidiaries that hold, billions of dollars in claims related to those wildfires on account of payments that have been made or will be made to insured parties, joins in the TCC Motion with respect to the proposed protective orders, except to the extent specified below. The Debtors' proposed protective order improperly seeks to shift the burden from the Producing Party[1] to third parties, including the Ad Hoc Subrogation Group and the TCC, to challenge improper confidentiality designations made by the Debtors. And, even more importantly, the Debtors seek to shift the burden of proving that any such confidentiality designations are unwarranted to other parties.

2. The Debtors' position is based exclusively on the argument that filing motions to maintain confidentiality designations will place an undue burden on them given the volume of documents they will be producing. However, their position is inconsistent with both the law and practice in this District. Moreover, even if the Court accepts the Debtors' "burden" argument as to

---

[1] Capitalized terms not otherwise defined have the definition ascribed to them in the proposed protective orders.

1

the *filing* of a motion to maintain a confidentiality designation, they offer no rationale for why the *burden of proof* should be shifted to other parties. Nor can they. Under applicable law, the Producing Party – which is the party seeking to evade the well-established public right of access to documents filed with the Court – bears the burden of demonstrating that materials warrant confidential treatment. The fact that the Debtors have volumes of documents to produce does not, and should not, change the law.

3. The Ad Hoc Subrogation Group also files this submission to alert the Court to various provisions in both proposed protective orders that could lend themselves to abuse, and in the process disproportionately harm the Ad Hoc Subrogation Group. The Ad Hoc Subrogation Group is comprised of dozens of parties who hold (or act as investment advisors or managers to funds and/or accounts or their respective subsidiaries that hold) claims against the Debtors, including many insurance companies whose insureds owned property that suffered damages as a result of the 2017 North Bay Fires and the 2018 Camp Fire. The members of the Ad Hoc Subrogation Group have a large economic interest in these bankruptcy cases – holding claims worth billions of dollars – and will be active participants in all aspects of discovery.

4. The Ad Hoc Subrogation Group objects to one provision of both proposed protective orders. As written, both contain a section (Section 7.3(j) in the TCC's proposed protective order, and Section 7.3(k) in the Debtors' proposed protective order) providing that persons or entities not otherwise specified in the proposed protective orders can gain access to confidential material by endorsing an agreement to be bound by the terms of the protective order. However, both proposed protective orders require that the Producing Party provide consent. This consent requirement is unreasonable and burdensome, and thus should be stricken.

5. The Ad Hoc Subrogation Group has no further objections at this time, and believes that, subject to the change discussed above, the TCC's proposed protective order may be entered. However, certain of the provisions in both proposed protective orders create the potential for confidentiality over-designation, which could restrict the ability of the Ad Hoc Subrogation Group's members to view materials and unfairly restrict their participation in these cases. If a plan of

reorganization is going to be efficiently negotiated, it is essential that the members of the Ad Hoc Subrogation Group – which effectively constitutes one of the largest organized groups of claimants in these cases – receive unfettered access to discovery so that they can analyze the Debtors' liability for wildfire claims, among other issues. While the Ad Hoc Subrogation Group does not seek relief from the Court in connection with these issues now, it believes it necessary to alert the Court to these provisions before significant discovery begins.

## BACKGROUND

**A. Disputed Terms In The Proposed Protective Orders.**

6. The TCC Motion and the Debtors' Motion present a dispute over three aspects of the proposed protective orders: (1) the proper procedure if parties reach an impasse over the designation of discovery material (the TCC proposal requires the party making a confidentiality designation (the "Designating Party") to move before this Court to preserve the designation, while the Debtors' proposal places the onus on the party challenging a confidentiality designation); (2) which party should bear the burden of persuasion, should a challenge to designation be brought before this Court (the TCC's proposal maintains the default rule under the law that the Designating Party bears the burden of demonstrating that the confidentiality designation is accurate, whereas the Debtors propose to shift that burden to the challenging party), and (3) the question of whether a party can waive a confidentiality designation (TCC proposes that if a Designating Party does not make a motion to preserve a designation within ten (10) days of receiving a challenge to its confidentiality designation, it waives the designation).

**B. Additional Important Provisions Of The Proposed Protective Orders.**

7. Both protective orders submitted to the Court propose to govern the production of all material "exchanged in or subject to discovery that is produced, formally or informally in response to or in connection with any Discovery Requests" in the Chapter 11 Cases. (TCC Motion Ex. A § 3; Debtors' Motion § 3.) Both proposed protective orders also contain a "use restriction," which provides:

Discovery Material produced informally by the Debtors in connection with the Chapter 11 Cases or pursuant to Rule 2004 (unless otherwise agreed by the Debtors) may only be used in the Chapter 11 Cases, including in connection with any contested motions in the Chapter 11 Cases, and may not be used in connection with any adversary proceeding or other litigation.

(TCC Motion Ex A. §§ 3, 7.1; Debtors' Motion Ex. A §§ 3, 7.1.)

8. A party seeking to designate material as confidential under the terms of the proposed protective orders may designate the materials under one of three classifications: "Confidential," "Highly Confidential / Professional Eyes Only" or "Contractor Confidential." (TCC Motion Ex. A § 5.1; Debtors' Motion Ex. A § 5.1.) The classification of "Highly Confidential" or "Professional Eyes Only" applies if the party producing the material:

believes in good faith (or with respect to documents received from another person, has been reasonably advised by such other person) that such Discovery Material constitutes or includes "HIGHLY CONFIDENTIAL" and/or "PROFESSIONAL EYES ONLY" Material that is of such a nature that a risk of competitive injury or a material risk to the Debtors' development of a plan of reorganization or emergence from Bankruptcy would be created if such Discovery Material were disclosed to persons other than those identified in Paragraph 7.3 of this Order, such as trade secrets, sensitive financial, personal or business information, including insurance policy information, or material prepared by its industry advisors, financial advisors, accounting advisors, experts or consultants (and their respective staff) that are retained by any Party in connection with these Chapter 11 Cases, and only to the extent that the Producing Party believes in good faith that such material is of such a nature that Highly Confidential or Professional Eyes Only treatment is warranted.

(TCC Motion Ex. A § 5.3; Debtors' Motion Ex. A § 5.3.) Among the parties identified in both the TCC and the Debtors' proposed Section 7.3 who can receive all discovery materials, including "Professional Eyes Only" materials, are "Outside Counsel," a defined term that includes:

attorneys who are not employees of a Party but are retained to represent or advise a Party regarding the Chapter 11 cases. With respect to the Debtors, and any Official Committee, Outside Counsel refers to counsel that has been retained by one of the above Parties and whose retention has been approved by the Court.

(TCC Motion Ex. A § 2.6; Debtors' Motion Ex. A § 2.6.) The proposed protective orders also provide that access to confidential material may be granted to "any other person or entity with respect to whom the Producing Party may consent in writing and who have signed the 'Acknowledgment and

4

Agreement to Be Bound,'" which is Exhibit A to the proposed protective orders. (*Id.* Ex A. § 7.3(j); Debtors' Motion Ex. A § 7.3(k).)

## ARGUMENT

### I. THE BURDEN OF BRINGING A MOTION SHOULD FALL ON THE PARTY CLAIMING CONFIDENTIALITY.

9. The Ad Hoc Subrogation Group supports the TCC's position that, in the event a dispute over a confidentiality designation arises, the Designating Party, and not the party seeking to contest the designation, should bear the burden of bringing the matter before this Court. First, as the TCC points out, such a procedure is consistent with this Court's customary practice and the standard form protective order in this district, as well as applicable law. (TCC Motion at 5.) Second, placing the onus on the Designating Party to preserve its designation would encourage Producing Parties to only designate material as confidential when they are confident that such designations are appropriate – rather than over-designating large document productions and waiting to see what materials other parties will bother to challenge.

10. Finally, the Debtors' sole argument in favor of this aspect of their proposed protective order is that that it would be unduly burdensome for the Debtors – who will be producing the majority of the discovery materials in these cases – to bear the burden of moving to seal in the face of a challenge by any party to a confidentiality designation, no matter how insubstantial the objection. Even if the Court were to agree with that position, the Debtors offer no explanation why the challenging party should also bear the burden of persuasion on that motion.

11. Nor is there any basis for that position. Disputes over confidentiality designations are most likely to arise in connection with materials that will be appended to motions or otherwise publicly filed. If the material is properly designated "Confidential" or "Highly Confidential" it will be filed under seal; if not, it will be made public. The law is clear that the public has a general right of access to documents filed in these proceedings. 11 U.S.C. § 107(a) ("Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge");

*In re Crawford*, 194 F.3d 954, 960 n.8 (9th Cir. 1999) (exceptions to § 107 "are construed narrowly" and the section has an "otherwise broad scope"). As a result, the burden of proving that material designated confidential "is in fact sealable . . . lays squarely on the party who designated it confidential. . . ." *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 (YGR), 2014 WL 5873328, at *1 (N.D. Cal. Nov. 12, 2014) (internal quotations omitted). The volume of discovery the Debtors anticipate producing in these cases does not and should not relieve them of that burden under the law.

## II. EACH OF THE PROPOSED PROTECTIVE ORDERS CREATES THE RISK OF OVERLY RESTRICTIVE DESIGNATIONS.

### A. Parties That Sign the Acknowledgment Should Not Be Required to Obtain Producing Party Consent.

12. The Ad Hoc Subrogation has only one objection to both proposed protective orders. Section 7.3(j) of the TCC's proposed protective order and Section 7.3(k) of the Debtors' proposed protective order provide that persons or entities not otherwise permitted to access "Confidential" or "Highly Confidential" material may gain access those materials provided (i) they endorse the "Acknowledgment and Agreement to Be Bound" and (ii) the Producing Party consents. (TCC Motion Ex. A §§ 7.2(f), 7.3(j); Debtors' Motion Ex. A §§ 7.2(f); 7.3(k).) For counsel, signing the "Acknowledgment" is only necessary if they do not meet the definition of "Outside Counsel," (TCC Motion Ex. A §§ 7.2, 7.3; Debtors' Motion Ex. A §§ 7.2; 7.3), which the proposed protective orders define as "attorneys who are not employees of a Party but are retained to represent or advise a Party regarding the Chapter 11 cases."[2] (TCC Motion Ex A. § 2.6; Debtors' Motion Ex. A § 2.6.)

13. The Ad Hoc Subrogation Group is concerned that a party could take the position that "Outside Counsel" would not include counsel who represent one or more members of the Ad Hoc Subrogation Group, but who have not made an appearance in these cases. To the extent such counsel wish to gain access to materials produced pursuant to the protective order, they should be permitted to do so without being forced to get consent from each Producing Party on a production-by-production

---

[2] The proposed protective orders also utilize the phrase "Outside Counsel of Record," (TCC Motion Ex. A §§ 2.2, 2.5; Debtors' Motion Ex. A §§ 2.2; 2.5), which is not a defined term, despite being capitalized.

basis. Requiring counsel to obtain that consent would be inefficient, costly, cause delays and increase the likelihood of parties seeking Court intervention. Accordingly, the Ad Hoc Subrogation Group requests that the requirement in the proposed protective orders that Producing Party consent to each party who signs the "Acknowledgment and Agreement to Be Bound" be stricken.

**B.      Certain Protective Order Provisions May Lend Themselves to Abuse.**

14.     While the Ad Hoc Subrogation Group does not object to any other portions of the proposed protective orders at this time, several provisions nevertheless raise concerns that they could overly restrict the ability of the Ad Hoc Subrogation Group to use discovery materials, if designations are broadly or improperly applied to discovery materials.

15.     *First*, both of the proposed protective orders permit certain materials to be designated "Highly Confidential" or "Professional Eyes Only." (TCC Motion Ex. A § 5.3; Debtors' Motion Ex. A §5.3.) Those materials can only be viewed by the narrow categories of individuals identified in Sections 7.3, which is generally limited to outside counsel, financial advisors, this Court and certain witnesses. (TCC Motion Ex. A §§ 5.3, 7.3; Debtors' Motion Ex. A §§ 5.3, 7.3.) Most significantly, the proposed protective orders prohibit any client representatives – including officers, directors, employees or "In House Counsel" – from viewing such materials. At the same time, the definition of "Professional Eyes Only" materials under both protective orders includes various loose and vague categories that have no obvious sensitivity, such as "insurance policy information," or materials prepared by "industry advisors, financial advisors, accounting advisors, experts or consultants." (TCC Motion Ex. A § 5.3; Debtors' Motion Ex. A § 5.3.) The proposed protective orders provide only one meaningful check on "Professional Eyes Only" designations – the Designating Party must believe "in good faith" that disclosure of the material outside of the authorized individuals creates "a risk of competitive injury or a material risk to the Debtors' development of a plan of reorganization or emergence from Bankruptcy." (TCC Motion Ex. A § 5.3; Debtors' Motion Ex. A § 5.3.)

16.     The members of the Ad Hoc Subrogation Group are actively involved in these cases, and it is essential that their in-house legal advisors and business teams fully understand the information produced during discovery. Among other things, this will allow them to assess and quantify their

7

claims against the Debtors, and participate meaningfully in discussions relating to a plan of reorganization. Moreover, any abuse of the "Professional Eyes Only" designation poses a greater threat of harm to the Ad Hoc Subrogation Group than other significant creditor constituencies in these cases, such as the UCC or TCC, who represent parties that do not participate in the day-to-day management of these cases.

17. The Ad Hoc Subrogation Group understands that there may be an extremely limited universe of highly confidential business records that, if broadly disclosed beyond professionals, could potentially harm the Debtors. However, to the extent that the Debtors (or any Producing Party) designate materials "Highly Confidential" or "Professional Eyes Only" and do not comply with the stringent requirement that "the Producing Party believes in good faith that such material is of such a nature that Highly Confidential or Professional Eyes Only treatment is warranted," (TCC Motion Ex A § 5.3; Debtors' Motion Ex A § 5.3), the Ad Hoc Subrogation Group intends to promptly raise that issue with the Court.

18. *Second*, the proposed protective orders provide that materials "produced informally by the Debtors . . . may only be used in the Chapter 11 Cases, including in connection with any contested motions in the Chapter 11 Cases, and may not be used in connection with any adversary proceeding or other litigation." (TCC Motion §§ 3, 7.1; Debtors' Motion §§ 3, 7.1.) All parties expect that these cases will involve significant litigation. As this Court is aware, a number of parties, including members of the Ad Hoc Subrogation Group, have brought claims against the Debtors both in and outside of these proceedings. Prohibiting parties who obtain documents in one aspect of these cases from using them, for example, in a related adversary proceeding, is unreasonable and will lead to duplicative and wasteful discovery requests, consuming valuable time and resources. The Ad Hoc Subrogation Group trusts that if litigation does move forward and documents obtained in these proceedings are relevant to any those proceedings, the Debtors will agree to appropriate relief from any protective order to permit the efficient use of relevant discovery materials.

## **CONCLUSION**

19. For all the foregoing reasons, the Ad Hoc Subrogation Group urges the Court to adopt

8

the TCC's proposal that the burden of bringing a motion with regard to a challenged confidentiality designation, and the burden of persuasion with respect to such a motion, should lie with the party making the designation. The Ad Hoc Subrogation Group also objects to the requirement that a person not otherwise specified in the protective order obtain Producing Party consent to gain access by signing the Acknowledgment and Agreement to be Bound. The Ad Hoc Subrogation Group does not object to any other portions of the proposed protective orders at this time, but reserves the right to seek relief before this Court should its concerns concerning over-designation of discovery prove justified.

Dated: June 19, 2019

**WILLKIE FARR & GALLAGHER LLP**

/s/ Benjamin P. McCallen
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Benjamin P. McCallen (*pro hoc vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
           jminias@willkie.com
           bmccallen@willkie.com

**DIEMER & WEI, LLP**
Kathryn S. Diemer (#133977)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Telephone: 408-971-6270
Facsimile: 408-971-6271
Email: kdiemer@diemerwei.com

*Counsel to Ad Hoc Subrogation Group of Subrogation Claim Holders*

9