1   G. LARRY ENGEL (SBN 53484)
    **ENGEL LAW, P.C.**
2   12116 Horseshoe Lane
    Nevada City, CA 95959
3   Phone: 415.370.5943
    Email: larry@engeladvice.com
4

5   MARK GORTON (SBN 099312)
    THOMAS G. MOUZES (SBN 099446)
6   **BOUTIN JONES INC.**
    555 Capitol Mall, Suite 1500
7   Sacramento, CA 95814
    Phone: 916.321.4444
8   Fax:    916.441.7597
    Email: mgorton@boutinjones.com
9

10  JESSICA R. MULLAN (SBN 263435)
    General Counsel
11  **SONOMA CLEAN POWER AUTHORITY**
    50 Santa Rosa Avenue, Fifth Floor
12  Santa Rosa, CA 95404
    Phone: 707.890.8485
    Email: jmullan@sonomacleanpower.org

13
14  *Attorneys for Creditor and Party-in-Interest*
    *SONOMA CLEAN POWER AUTHORITY*

15  *Additional Community Choice Aggregators and their counsel*
    *are identified on the following pages.*
16

17              UNITED STATES BANKRUPTCY COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19              SAN FRANCISCO DIVISION

| | |
|---|---|
| 20  In re | ) Case Nos. 19-30088 DM (Lead Case) |
| | )                19-30089 DM |
| 21  PG&E CORPORATION | ) |
| | ) Chapter 11 |
| 22  -and- | ) Jointly Administered |
| | ) |
| 23  PACIFIC GAS AND ELECTRIC | ) **SONOMA CLEAN POWER AUTHORITY'S** |
|     COMPANY | ) **LIMITED OBJECTION TO DEBTOR'S** |
| 24 | ) **PROTECTIVE ORDER MOTION** (Dkt. 2459) |
|           Debtors. | ) |
| 25 | ) |
|     ☐ Affects PG&E Corporation | ) Date:      June 26, 2019 |
| 26 | ) Time:      9:30 a.m. |
|     ☐ Affects Pacific Gas and Electric Company | ) Courtroom: 17 |
| 27 | ) Place:     450 Golden Gate Ave., 16th Floor |
|     ☑ Affects both Debtors. | )            San Francisco, CA 94102 |
| 28 | ) Judge:     Hon. Dennis Montali |

1 | * All papers shall be filed in the Lead Case  )    Objection Deadline: June 19, 2019

No. 19-30088 DM          )    Appearance counsel: G. Larry Engel

2                    )

)

3                    )

_____)

4

5  NANCY DIAMOND, ESQ. (SBN 130963)

**LAW OFFICES OF NANCY DIAMOND**

6  822 G. Street, Suite 3

Arcata, CA 95521

7  Telephone: (707) 826-8540

Facsimile: (707) 826-8541

8  Email:  ndiamond@ndiamondlaw.com

9  *Attorney for Creditor and Party-in-Interest*

*REDWOOD COAST ENERGY AUTHORITY*

10

CLIFFORD W. STEVENS (SBN 148918)

11  **NEUMILLER & BEARDSLEE**

3121 W. March Lane, Suite 100

12  Stockton, CA 95219

P.O. Box 20

13  Stockton, CA 95201

Telephone: 209.948.8200

14  Email:  cstevens@neumiller.com

15  *Attorney for Creditor and Party-in-Interest*

*PIONEER COMMUNITY ENERGY*

16

17  HARRIET A. STEINER (SBN 109436)

**BEST BEST & KRIEGER LLP**

18  500 Capitol Mall, Suite 1700

Sacramento, CA 95814

19  Telephone: 916.325.4000

Email: harriet.steiner@bbklaw.com

20

*Attorney for Creditor and Party-in-Interest*

21  *VALLEY CLEAN ENERGY ALLIANCE*

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.  SUMMARY OF LIMITED OBJECTION ................................................................. 1

II. BACKGROUND ................................................................................................ 2

    A.   The Role Of SCPA And CCAs In California Energy Markets ..................................... 2

    B.   CCA Service Agreements and Other Contracts with PG&E ......................................... 3

III. LIMITED OBJECTION ...................................................................................... 4

    A.   PG&E's Proposed Protective Order Is Burdensome, Oppressive and Inappropriate ........................................................................................................... 5

        1.   SCPA Opposes This Burdensome and Oppressive Proposed Order and Suggests an Alternative Process for Discovery Disputes ................................. 5

        2.   PG&E Uses the Wrong Model and False Premises for Its Motion .................. 8

    B.   Proposed Solutions ....................................................................................................... 11

        1.   The Court Should Deny the Motion and Provide Guidance to PG&E ........... 11

        2.   Alternately, the Court Should Create a Comprehensive Governmental Unit Carveout and a Public Safety and Service Carveout .............................. 12

    C.   Other Tricks, Time Traps, And Objections to Some Specific PG&E Proposed Definitions, Rules, and Standards in Its Proposed Order That Are in Serious Need of Reform ............................................................................................................ 13

        1.   PG&E's "Gag" Order (Proposed Order #7) is an Intolerable Limitation on Sharing and Using Discovery Materials .................................................... 13

            a.   The Proposed Order Lacks Mutuality ................................................. 13

            b.   PG&E's Proposed Limitations on Access and Use Are Inappropriate ........................................................................................ 14

            c.   PG&E Cannot Justify Imposing Such Extreme Limits on Internal Sharing of Normally Discoverable Materials, Such as in Order #7.2 ........................................................................................ 15

        2.   The Definitions for "Discovery Materials" and "Protected Materials" (Order # 2.4 and 2.9) Need to Be Replaced to Prevent Improperly Protecting Material and to Ensure CCAs Are Not Treated as "Contractors" ................................................................................................. 16

            a.   Because CCAs Are Treated Even Worse Than Other Parties

(Order #5.4), CCAs Need Clarity That They Are Not "PG&E Contractors" ................................................................ 16

      b.    The Standards for PG&E Designations and Decisions Need to Be Changed and Made More Objective Than PG&E's Idiosyncratic Opinions of "Good Faith" or "Commercially Harmful" ............................................................................ 17

      c.    PG&E's Confidentiality and Other "Protected Material" Tests Are Grossly Overbroad and Overstated .............................. 17

    3.    The Kafkaesque Timing Rules of the Proposed Order Are Imposed with No Reference to the Requirements of the Underlying Substantive Dispute to Be Tried or Heard ....................................................... 19

      a.    PG&E Inappropriately Shifts the Burdens to Its Targets Related to Protected Material in Open Court (Order #7.6) ................ 20

      b.    The Order (# 7.5) Requires Sealing of Purportedly "Protected Material," Even Though Normally Available as Evidence or Even If Such Sealing Is Not Available .............................. 21

      c.    In This Multi-Front Battle in Different Forums, PG&E Would Bar Use of Discovery Materials in Other Related Forums (Order #7.1, 3) ...................................................................... 22

      d.    Because Trial Preparation and Other Work with Collaborating Persons and Common Interest Allies Requires Litigation Against the Order Limitations in # 7.2 and 7.3, SCPA Will Be Arguing Procedure Rather than Substance ......................... 22

      e.    The Meet and Confer Process to Challenge PG&E's Inappropriate Classifications (Order # 6.2) and Inevitable "Judicial Intervention" (Order # 6.3) Will Unnecessarily Exhaust Precious Time and Resources ................................ 23

      f.    PG&E Can Take Its Time in Making Its Designation of Protected Material (Order #6.1), Thereby Further Complicating Timing Problems ..................................................................... 24

      g.    PG&E's Order Interferes with Normal and Effective Interactions with Clients and With Common Interest Defense Groups ..................................................................................... 24

IV.    JOINDER WITH OTHER OBJECTIONS ............................................................. 24

V.    RESERVATION OF RIGHTS ............................................................................... 24

VI.    CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**Statutes**

Bankruptcy Code
    Section 541(d)................................................................................................................. 3
    Section 1109(b).............................................................................................................. 14

Federal Rules of Bankruptcy Procedure
    Rule 2004...................................................................................................................... 20
    Rule 7026(c) .................................................................................................................... 5
    Rule 9014(c) .............................................................................................................. 5, 20
    Rule 9018........................................................................................................................ 5

Federal Rules of Civil Procedure
    Rule 26........................................................................................................................... 4

**Other Authorities**

Assembly Bill 117
    adopted in 2002............................................................................... 2, 3, 4, 5, 14, 15, 16

California Public Utilities Commission
    Rule 23 .................................................................................................. 3, 4, 15, 16, 22

*Decision Adopting De-Energization (Public Safety Power Shutoff Guidelines)*
*(Phase I Guidelines)*, CPUC Decision 19-05-042 (May 30, 2019) ................................ 11

Senate Bill 790
    enacted in 2011 .............................................................. 2, 3, 4, 5, 6, 14, 15, 22

Sonoma Clean Power Authority, a California joint powers authority,[1] a community choice aggregator ("**CCA**") and a governmental unit ("**SCPA**"), submits this limited objection ("**Objection**") to the PG&E's Proposed Protective Order Motion (Dkt. 2459) [the "**Motion**"] and PG&E's Proposed Confidentiality and Protective Order (Dkt. 2459-1) [the "**Proposed Order**"].

SCPA's limited opposition addresses both the extreme burdens and unfairness of the Motion and Proposed Order and outlines some of the significant negative impacts the Motion and Proposed Order would bring. This includes the circumvention of due process in defending and countering against PG&E motions and actions, the exclusion of normal discovery and the ability to use relevant evidence in the proceeding, and the inability of counsel to even share critical information with allies and even their own clients. SCPA is attempting not to duplicate other objections in which it joins below, including those expected from the Official Committee of Tort Claimants (the "**TCC**") and the State Agencies represented by the California Attorney General (the "**State Parties**").

## I.    SUMMARY OF LIMITED OBJECTION

This Objection addresses the extreme, burdensome and inappropriate procedural requirements PG&E wishes to impose through its Motion and Proposed Order, none of which account for the timing of future underlying substantive motions or actions where the discovery and evidence would be relevant. Not only has PG&E used precedents inapplicable to the bankruptcy of a public utility granted monopoly power only for the public trust, SCPA believes a protective order of this scope is unprecedented in the Northern District. PG&E has further created procedural catch-22s that prevent the use and admission of relevant evidence obtained in routine discovery and needed to support timely responses to future motions and actions.

For example, the Proposed Order allows PG&E to label things as it wishes them to be (*e.g.* "Confidential"), applying PG&E's unique (and often disputed) standards and interpretations. The Proposed Order requires everyone comply with PG&E's disputed decisions, unless and until court is able to correct PG&E's errors on the merits through a slow and difficult process, if there is still time

---

[1]  The governmental units that are members of the SCPA joint powers authority are Cloverdale, Cotati, Petaluma, Santa Rosa, Rohnert Park, Sebastopol, Sonoma, Sonoma County (unincorporated areas), Windsor, Fort Bragg, Willits, Point Arena, and Mendocino County (unincorporated areas). (Declaration of Geoffrey G. Syphers, ¶ 7, Dkt. 67)

1  left to do so before the hearing on the underlying substantive dispute. In short, if the disputed PG&E

2  goal were to shield PG&E from all meaningful discovery that may be used to resist PG&E's future

3  motions or actions, this Motion is the ideal means to that end. Instead of the court deciding the

4  discovery disputes on the merits as usual, PG&E could win as a practical matter at the start by

5  declaring the material "**Protected Material**" (even though on the merits it normally should be

6  discoverable, relevant and admissible), and then by resisting those meritorious challenges as it runs

7  out the clock in the underlying dispute. This process can continue over and over until the other party

8  targeted by PG&E gives up or runs out of time or resources before the hearing or trial of the

9  underlying substantive dispute.[2]

10       If the Motion and Proposed Order are not rejected by this court, SCPA requests significant and

11  essential revisions to the Proposed Order, so that it may bear some semblance to a reasonable

12  protective order. SCPA also requests a comprehensive "Governmental Unit Carveout" (which includes

13  CCAs) as proposed by the State Parties and a "Public Safety and Service Carveout" (both defined

14  below).

## II.    BACKGROUND

### A.    The Role Of SCPA And CCAs In California Energy Markets

17       SCPA is a CCA established pursuant to Assembly Bill ("AB") 117 adopted in 2002,

18  following the 2001-2002 California Energy Crisis and enhanced by Senate Bill ("SB") 790 enacted

19  in 2011, among other things, imposing a code of conduct on PG&E to prevent objectionable or anti-

20  competitive conduct. A more complete description of the history and role of CCAs is provided in

21  SCPA's Statement of Support for Debtors' Public Programs Motion and related declaration, Dkts.

22  66-67. CCA programs are administered by local governments (at present, as joint power authorities

23  created by various cities and counties, such as SCPA, or as an enterprise fund within a single city or

24  county, such as San Francisco and San Jose) with a statutory mission to provide competitive clean

25  energy alternatives to Investor-Owned Utilities ("**IOU**") sources, such as PG&E. (See Declaration of

26

---

27  [2] Those who suffered through that game repeatedly in the last case do not want that precedent

28  tolerated again, although even the prior case order was not as dangerous to PG&E targets as this
Proposed Order.

1    Geoffrey G. Syphers, ¶¶ 8, 9, 12, Dkt. 67.)

2         Statewide, 18 CCAs, including SCPA, independently procure energy and provide a wide

3    array of services directly to over 8 million CCA customers (more than 2.5 million customer

4    accounts). CCAs are an essential and growing part of the State's clean energy mandates. In PG&E's

5    service territory, approximately 41% of the load will be served by CCAs in 2019. SCPA serves

6    Sonoma and Mendocino Counties, each of which (like all of PG&E's territory) can now expect to

7    face ongoing risks presented by PG&E's system and operations, as well as widespread disruption in

8    connection with PG&E's defensive blackout program, referred to by some as de-energization and by

9    PG&E as Public Safety Power Shutoff ("**PSPS**"). SCPA, its public agency members, and others are

10   working diligently to mitigate the negative impacts of some of PG&E's operations and plans,

11   especially as to CCA customers receiving (or not during PSPS blackouts) CCA power through the

12   PG&E system.

13        **B.    CCA Service Agreements and Other Contracts with PG&E**

14        Pursuant to applicable state law, PG&E's Regulated Tariffs and other laws, regulations and

15   tariffs, PG&E is mandated to provide both (i) transmission and distribution services to deliver

16   energy procured by CCAs for CCA customers, and (ii) billing and collection services for CCAs'

17   benefit as to CCA customers using CCA energy. CCA customers receive their energy from the CCA,

18   rather than PG&E, over the PG&E distribution system. As a result, CCAs are load-serving

19   governmental units responsible for securing sufficient electricity supplies to meet the needs of their

20   customers, but CCAs themselves cannot deliver that power to the customers without PG&E's wires

21   or during PG&E's PSPS blackouts. (Declaration of Geoffrey G. Syphers, ¶¶ 27, 28.) This

22   relationship of CCAs and PG&E arising under state law and regulation is the subject of a CPUC

23   approved CCA Service Agreement in the tariff that incorporates and implements AB 117, SB 790

24   and CPUC Rule 23.[3] The CCAs are mandated by state law to use the IOUs, like PG&E, as their

25   exclusive billing and collection agent/section 541(d) statutory servicer. There is no provision for a

26

27   _____

     [3] A "CCA Service Agreement" means the form force of law agreement included as part of PG&E's Regulated
     Tariffs that applies PG&E's rules and other tariff provisions to CCA service . *See* "Electric Sample Form No.
28   79-1029." (Declaration of Geoffrey G. Syphers, ¶ 17, Dkt. 67.)

"back-up" billing and collection agent – the CCAs have no choice other than the IOUs and millions of CCA customers depend on the CCA clean energy providers (which PG&E cannot lawfully replace).

### III.  LIMITED OBJECTION

Simply stated, the Proposed Order is unreasonable and the Motion should be denied as to any party not consenting thereto. Any reasonable protective order cannot allow for (i) the exclusion of normally discoverable and admissible evidence simply because PG&E considers inconvenient truths to be "sensitive," "confidential," or "harmful," or (ii) the application of dilatory burdens and rules that obstruct timely objections and responses to future PG&E motions and action. In this pleading SCPA refers to these exclusions and applications as "**Excluded Discoverable Evidence,**" when they seek to expand beyond true privileged and trade secret material, and "**Inappropriately Protected Material,**" when PG&E seeks greater protection for itself and more burdens, limits and delays for the PG&E targets than would customarily apply in such substantive disputes (as distinguished from inapplicable trade secret or patent tech cases). Moreover, CCAs are governmental units with specific legal rights (e.g., AB 117, SB 790, CPUC Rule 23) that PG&E must respect, as the State Parties explain.

Applying this order to the entire case and all current and future adversary proceedings and contested matters is unprecedented in the Northern District. Never have SPCA and its counsel been part of a case where a protective order is so broadly applied. It might be common in Delaware and the Southern District of New York, but not in this district.

The supporting Debtors' Declaration provides several examples of protective orders and Debtors declare that these examples were used to negotiate with the Committees. Those example orders, including the form order, all appear to be specific to certain parties and disputes. None of the example protective orders apply to the entire case (and related future proceedings).

Further, Rule 26 requires parties to meet and confer over protective orders. Obviously, if the two committees wish to agree and have been given the opportunity to meet and confer with Debtors, the order can apply to them – but them alone. When did Debtors meet and confer with the CCAs?

Moreover, while the Debtors contend the proposed order is based on the Northern District

form protective order, language of great significance has been omitted:

  a.  ND Form Section 5.1 deals with "Exercise of Restraint and Care in Designating Material for Protection." The language is basically an admonition that parties exercise care when designating that information is subject to the protective order. The first page of the ND Form protective order has similar language and was also omitted from the PG&E proposal.

  b.  ND Form Section 6.3 (last paragraph) deals with the burden of persuasion. "Burden of persuasion…shall be on the Designating Party…."

Under the normal Bankruptcy Rules (*e.g.*, Bankruptcy Rule 7026(c), 9018, and 9014(c)), the burden of resisting or disputing discovery on privilege or confidentiality grounds would lie with PG&E when it is the Designating Party. The Proposed Order turns this standard on its head, inappropriately shifting – without good cause – that normal burdens. Even more importantly, that shift prevents CCAs and other PG&E targets from timely preparing opposition, defenses and counters to future motions and action by the Debtors.

## A.  PG&E's Proposed Protective Order Is Burdensome, Oppressive and Inappropriate

In PG&E's Motion and the Proposed Order's tricky definitions and strategic ambiguities, PG&E seeks to prevail by devising a slow, controlling process and procedure to avoid its targets' preparation for a customary, fair test on the merits. This Opposition discusses in detail how the Proposed Order impacts all parties and CCAs specifically. CCAs are governmental units with specific legal rights that PG&E must respect.[4]

### 1.  SCPA Opposes This Burdensome and Oppressive Proposed Order and Suggests an Alternative Process for Discovery Disputes

If any Protective Order is entered in this Case, it cannot fairly or appropriately use the same rules for Excluded Discoverable Evidence or Inappropriately Protected Material if there could be some minor or far less extreme protective order. In this way, SCPA can reduce the need for related defensive counters and actions, including emergency motions for relief from the Proposed Order (#13.1) for foreseeable circumstances where the procedural disputes' timing does not match the

---

[4] See Assembly Bill 117 and Senate Bill 790.

1    underlying dispute timing. Like many not consulted by PG&E before it launched this extraordinary

2    Motion and aggressive Proposed Order, SCPA, its allied CCA parties and other parties are shocked

3    by how much normally available, important evidence would be concealed or barred from use or

4    sharing by PG&E from the parties in interest and the public. What PG&E's Proposed Order calls

5    "Protected Material" includes normally discoverable and admissible evidence, including Excluded

6    Discoverable Evidence and Inappropriately Protected Material, that must be available timely for use

7    and sharing among allies and not treated as "Confidential Materials" or "Highly Confidential," or

8    worse. Once such ordinarily usable evidence is so mislabeled by PG&E, the Order creates burdens

9    on the objecting parties rather than the Designating Party for obtaining a timely remedy to allow use

10   of the evidence, while the underlying substantive motion or dispute continues at an independent

11   pace. What would normally not be protectable on the merits as a practical matter will never actually

12   be available in time for effective use at a hearing or trial through this slow and expensive PG&E

13   process. By designing such a slow, burdensome and oppressive procedure that is divorced from the

14   timing and practical requirements of the underlying substantive dispute, PG&E can "run out the

15   clock" with procedural disputes. To that end, the Proposed Order improves PG&E's likelihood that it

16   will not have to address many substantive disputes, since the procedural and cost barriers are too

17   high.

18          The problems that PG&E's excessive Order would create are so disturbing that those

19   expecting to be targeted by PG&E would not likely risk working within this intolerable Proposed

20   Order and its catch-22s and "Kafkaesque" process, but instead would have to prematurely develop

21   and deploy alternative solutions for staying on track with the underlying dispute. Because PG&E is a

22   regulated public utility and Chapter 11 fiduciary whose monopoly power is supposed to be a public

23   trust,[5] PG&E should address discovery more like a transparent governmental unit than like a tech

24

---

25   [5] PG&E is a regulated utility allowed monopoly power only as a public trust only. The public trust
     is held for the benefit of those from whom it now seeks hide Excluded Discovery Evidence and other
26   Inappropriate Protected Material. PG&E is also a fiduciary for creditors, a felon on probation and
     subject to an obligation under a code of conduct mandated by the Legislature in SB 790 (2011) to
27   restrain its predatory abuses of power. But here, PG&E seeks to reverse the public policies and rules
     that bind it. Worse, PG&E would shift all burdens to those trying to defend themselves from PG&E
28   in a slow process that does not match the timing of underlying dispute. PG&E's Motion has no

company protecting trade secrets or patents on which the PG&E Order model is based. Unless the Court carves out governmental units from the Order (including CCAs), SCPA believes the court should simply deny the Motion, unless limited to the parties who have negotiated it.

Considering both (i) the unaffordable costs and exhausting burdens of any normal party in interest trying to comply with and combat this Proposed Order, and (ii) the risk (and probability) that little by way of useful evidence will be timely available for use at any underlying substantive dispute hearing or trial, most such normal parties will likely consider abandoning their discovery efforts. SCPA assumes that is one of PG&E's goals for this process, following the old adage that if you cannot win the game, change the rules. Unfortunately, some PG&E targets cannot afford to risk defending against PG&E without such normal evidence. SCPA shares below with the court in detail what SCPA would expect to suffer, resist, and counter as best SCPA can in challenges to the disputed Order.

When PG&E launches its rejection and other motions or attacks, PG&E is the one with the relevant evidence that it wishes the Proposed Order to restrict, lethally delay (compared to the parallel pace of the underlying substantive dispute), and, as a practical matter, withhold under impenetrable and unaffordable rules and procedures. Worse, this Order makes the evidence finally obtained often unavailable for normal use, especially if such evidence cannot be sealed (# 7.5) or the courtroom sealed (#7.6).[6]

While the OCC and TCC may have tried to reform the PG&E Motion, SCPA has many unique concerns that it cannot expect those committees to have anticipated and addressed. For example, the Public Safety and Service Carveout and other definitional clarifications SCPA proposes are most likely to be applicable to those governmental units targeted by PG&E, as distinct from those committees who have a more general, watchdog role in this proceeding.

Consider this problem for the cost-effective and fair resolution of the case: When PG&E's

---

moral, policy or equitable basis.

[6] *See*, Order # 7.5, forcing the party normally entitled to that evidence to have to somehow seal it with PG&E's and the Court's approval in order to use it in a filing or submission. *See also*, # 7.6, restricting the normal use of evidence at trial and cost-effective sharing among common interest alliance groups with customary cost-effective divisions of labor.

Proposed Order denies a PG&E target the timely use of the Excluded Discoverable Evidence without the ability or time cost-effectively to demonstrate that it is Inappropriately Protected Material under the Order in order to use it at the substantive hearing or trial, how does SCPA counter? If that seems like a strange question, please read the sealing rules in #7.5 and the "gag" rules in #7.6 of the Proposed Order, showing how even otherwise admissible Excluded Discoverable Evidence obtained over all the Motion obstacles that PG&E has used to prevent access to such evidence still can be blocked if it cannot be sealed and even then "shall not be offered or otherwise used at trial or any hearing held in open court," absent closing the courtroom or obtaining a further special court order.

While the Proposed Order would impose extraordinary burdens, nonproductive expenses, and time traps on the parties to this proceeding, this burden will pale in comparison to the burden on the court. Under the Proposed Order, PG&E is not only shifting its normal burdens to its targets, but it is also then shifting PG&E's burdens to this court. In the likely scenario of a disputed PG&E plan of reorganization and many related rejection motions. An overwhelming, inefficient and distracting procedural jam at this court is anticipated when PG&E attempts to tee up all such endgame disputes at the same time. There is no way any court, even one as experienced capable as this one, can deal with that massive scrum. If PG&E has its way in the Motion, it will have successfully set up its targets to be the ones with the burden of obtaining relief from the court in that jam. SCPA would not only lose the fair opportunity for relief, but PG&E can also try to blame it for attempting to seek such deserved relief and thereby divert the court from PG&E's rush to confirm its disputed plan and rejections.

## 2. PG&E Uses the Wrong Model and False Premises for Its Motion

One of the fundamental failings of the Motion and the Proposed Order is that PG&E fails to use a model that is appropriate for the proceeding's context. None of the models that PG&E cites in the Slack Declaration Exhibits are as burdensome, oppressive or objectionable as this one. Nor should those distinguishable situations apply to limit discovery here. To justify the use of this inappropriate model, PG&E asserts that it risks being the victim of "highly asymmetrical discovery." Motion at 10. In reality, PG&E is leveraging this bankruptcy proceeding as both a sword and a shield. By aggressively targeting creditors through the unreasonable procedures of the Proposed

Order, PG&E deprives creditor targets of timely due process and the ability of creditors to work collaboratively with other creditors and committees in a normal manner as the court expects to avoid duplication and spread the burdens.

To support its claim that it will be unfairly subjected to asymmetrical discovery, PG&E makes various incorrect assertions in its Motion, such as that: (i) this Case does not fit the normal rules for two party litigation (even though most disputes in this case will result in one-on-one litigation, *e.g.*, contract rejection); (ii) this Case should have "only one set of rules and procedures relating to discovery when producing [incorrectly defined] confidential information to more than one party…"; and (iii) this is like the patent litigation cases that are governed by the N. D. Cal. "model protective order for highly sensitive confidential information." Nonsense.

This is not a trade secret case, and nothing about this Order is "typical" as incorrectly alleged by PG&E. Nor is there any "efficiency" or "economy" arising from the Order, but rather the opposite, as it inspires all manner of related disputes and side effects as PG&E targets seek creative solutions to the Order's intolerable terms and conditions. None of the precedents cited by PG&E justify under the circumstances of this case any of the objectionable, burdensome, and oppressive terms and conditions of the Proposed Order (which is even worse and more far-reaching than what is summarized in the PG&E Motion or in the disputed "precedents" attached to the supporting Declaration).

Contrary to the rule in Order #3, SCPA should be able to act on and argue from what it discovers that is not truly privileged or trade secrets, *i.e.*, the normally available discovery material. These protections should not apply to material improperly classified by PG&E as Protected Material for strategic, public relations, or other illegitimate reasons. This Order cannot be used like a criminal gag order where prosecutors cannot use either improperly obtained evidence or "the fruit of the poison tree." The exceptions for "use" in paragraph 3 are far too narrow and would need to be expanded substantially if the Order survives the various expected challenges.

PG&E is a fiduciary debtor which claims that it is solvent and is basing its purported need for more than usual "confidentiality" for protecting what it incorrectly labels as "sensitive" or "commercially harmful" information. While this may protect PG&E's public relations strategy, it

1    does not allow for the appropriate discovery of relevant and important evidence needed for defenses

2    and counters against PG&E. Unless SCPA is seeking normal privileged material or true trade

3    secrets, there is no reason for denying the Excluded Discoverable Evidence and Inappropriately

4    Protected Materials that SCPA needs for its defenses against PG&E.

5        For one of many examples, PG&E will try to hide such normally available evidence, such as

6    proof that the PG&E's PSPS blackouts are not just because it is surprised by climate change, but

7    rather the result of decades of PG&E neglect, noncompliance with regulations, and defective designs

8    and equipment. PG&E may want that reality treated as confidential because it is "**sensitive**" and its

9    disclosure might "commercially harm" its desired terms for reorganization. But, especially for such a

10    felon, PG&E's desire for better public relations is not an appropriate basis for resisting normal

11    discovery by those PG&E is attacking. The "sensitive" truth is fair to use at trial, even when such

12    truth makes it harder for PG&E to accomplish the kind of cram down plan of reorganization and

13    legislative and regulatory bailout that it seems to want, far in excess of what is fair to others.

14        There is no legitimate cause for the normal needs of defending creditors to be subordinated to

15    those of PG&E. PG&E is supposed to be open and transparent for its constituents like a

16    governmental unit, not like a tech company trying to hide its trade secrets from its competitors.

17    Instead of using an overly burdensome "one size fits all" as a tactic to shift burdens to the creditors

18    who PG&E plans to attack, PG&E should be fully open and transparent, as expected of a fiduciary

19    claiming to be solvent, and should fully accept all of its normal burdens that it is trying to shift to

20    others.

21        Moreover, the need for more discovery and disclosure is paramount in the public interest in

22    this case. That is why SCPA insists on an exception for a "Public Safety and Service Carveout,"

23    discussed below. For example, when the hot weather is dry and the wind blows (even at

24    normal/common levels) and PG&E shuts down its services for a PSPS blackout in CCA areas

25    depriving CCA customers of receiving CCA power over PG&E's distribution system, PG&E claims

26    to CPUC, in setting its new regulations, that it is entitled *not to share* with CCAs the same early

27    warning and other data that it shares with other first responders and local governmental units. See,

28    *Decision Adopting De-Energization (Public Safety Power Shutoff Guidelines) (Phase I Guidelines)*,

CPUC Decision 19-05-042 (May 30, 2019). Why hide that critical public safety and service information needed to deal effectively with unhappy and suffering CCA customers? Worse, why, if PG&E was operating fairly and appropriately, would PG&E not consult and coordinate with CCAs for the benefit of all concerned? Recall that if PG&E just "pulled the plug" on CCAs and their customers for the long fire season with excessive PSPS blackouts (which could have been avoided by undergrounding and other alternatives used by SDG&E for a decade), not only would customers suffer, but CCAs would be out of operation. Yet, somehow all the data CCAs need to help their customers and hold PG&E accountable would be hidden by this objectionable Order as somehow "confidential," "sensitive," and "harmful" to PG&E's reorganization plan that SCPA is entitled to dispute.

### B.  Proposed Solutions

#### 1.  The Court Should Deny the Motion and Provide Guidance to PG&E

The Court should deny the Motion. Alternately, the Court should limit the Order to the parties who negotiated it, like the OCC and the TCC, who may be comfortable that they have sufficient leverage with PG&E to endure the excessive cost, burdens, and oppressive terms and conditions of the Proposed Order. If the Court does not deny the Motion, the hearing on June 26 should be treated as a status conference to discuss about how best to deal with current and future inevitable disputes.

Since there is no time for most parties in interest before this rushed hearing for a fully briefed objection to all the flaws, dangers and overreaches in the Proposed Order, such a status conference would allow the parties to learn the court's preferences on how best to salvage due process and normal discovery from this conflict. If the Proposed Order were adopted by the Court, SCPA– and SCPA expects many other parties who can foresee some of PG&E's attacks – would have to consider promptly moving in advance (*e.g.*, via Rule 2004) under Proposed Order #13.1 for more tolerable rules, both for the particular contested matters that SCPA expects to defend (*e.g.*, contract rejection motions by PG&E) or for counter-adversary proceedings for use in response to such PG&E expected attacks, including the expected plan of reorganization from PG&E.

/ / /

## 2. Alternately, the Court Should Create a Comprehensive Governmental Unit Carveout and a Public Safety and Service Carveout

In the alternative, SCPA joins with the State Parties in requesting a comprehensive exclusion from the Protective Order for all governmental units, including CCAs ("**Governmental Unit Carveout**") and requesting an exclusion for public safety and service matters (a "**Public Safety and Service Carveout**") from the burdensome Proposed Order. These carveouts should override all of the limitations of PG&E's Motion. CCAs should be allowed to share Public Safety and Service Carveout data with the California Public Utilities Commission ("**CPUC**"), the Attorney General and other officials, especially when there is evidence of noncompliance by PG&E of applicable code of conduct, laws and regulations. CCA customers also deserve to have their questions answered timely, especially about PSPS blackouts and other public safety and service issues.

In order to protect CCA governmental rights and their customers, modification would be necessary to implement a Public Safety and Service Carveout. A definition for Public Safety and Service Carveout should be added to any Order in order to assure that SCPA can continue to fulfill its assigned governmental duties, including holding PG&E accountable for compliance with laws and regulations for the protection of CCA customers.

So, what is the Public Safety and Service Carveout? It includes an intense focus on anything and everything having to do with PG&E's PSPS blackouts and its Wildfire Mitigation Plan, as well as the discarded better alternatives to such blackouts, such as undergrounding, and the real reasons why PG&E still resists more undergrounding. Why does PG&E avoid better safety practices available sooner than the slow pace of its less effective "hardening" plan over a decade? While superficially more expensive, are alternatives from a safety and service perspective, such as undergrounding, cheaper when all direct and indirect costs are considered, including its *de facto* self-insurance? What data SCPA obtains in other forums – including the CPUC, Fire Commission hearings and others – should also be allowed to be used in the Chapter 11 case, without restraint of any kind from this Proposed Order.

While PG&E and others can argue about prohibitions in discovering its insurance policies, SCPA is much more interested in why PG&E is substantially self-insured. Why have the insurers

reportedly refused to provide more than the $1.4B of insurance as stated in this court on the record by PG&E's shareholders, despite PG&E's Wildfire Mitigation Plan? SCPA has some information, many educated suspicions, and many more questions and concerns to investigate when PG&E compels its targets to come to the defense of their rights. If the most informed and expert insurers are not convinced of the safety of PG&E's "harder" system and PSPS blackout strategy, why should SCPA not also be wary? PG&E should not be allowed to hide that information as Confidential or otherwise as Protected Material.

**C.     Other Tricks, Time Traps, And Objections to Some Specific PG&E Proposed Definitions, Rules, and Standards in Its Proposed Order That Are in Serious Need of Reform.**

**1.     PG&E's "Gag" Order (Proposed Order #7) is an Intolerable Limitation on Sharing and Using Discovery Materials**

PG&E's Proposed Order allows the debtors to share discovery with its allies (#7.2(c)), while barring other collaborations among common interest groups and governmental units. At the same time its adversaries are gagged, PG&E can use its own discovery material (Order #13.5) while denying it to other.

**a.     The Proposed Order Lacks Mutuality**

In various ways the Order is not fully reciprocal, giving PG&E unique benefits not shared with other parties, (a) sometimes intentionally, (b) sometimes ambiguously, and (c) sometimes as what may be a confusing typo.[7] Moreover, when PG&E elects to use "in any way" the same Discovery Material that PG&E denies to creditors (Order # 13.5), how is that fair or proper? Whatever those flawed Order terms mean, SCPA objects both (a) to any uncertainty, (b) to PG&E being able to use and share discovery benefits more broadly and for more uses than the rest of us, and (c) to any other limitations on the use and sharing of Discovery Materials among allied parties.

Governmental Units in particular need to be able to share information with each other and

---

[7] *E.g.*, The definition of "Discovery Materials" in #2.4 seems strangely one-sided  because it refers only to professionals, agents, etc. "that are retained by the Debtor's creditors in connection with the Chapter 11 cases." Thus, it appears that the Order would not govern Discovery Materials obtained by PG&E from creditors or other parties in interest.  Moreover, the definition of "Discovery Materials" refers to "Discovery Requests", a term that is not defined in the Order,

with their citizens (and in the case of CCAs, the CCA customers), including in compliance with government records acts. SCPA also notes that "**parties in interest**" entitled to participate in the Case under section 1109(b) – including the **governor**, the Legislature, the regulators, and ratepayer advocates such as The Utility Reform Network – who are not "creditors" seem to be shut out by the Proposed Order of both the discovery process and any sharing by creditors. Governmental Units like the CCAs need to share with those parties in interest, as well as to use discovery in related CPUC and Federal Energy Regulatory Commission ("**FERC**") proceedings.

### b. PG&E's Proposed Limitations on Access and Use Are Inappropriate

PG&E's proposed limitations on the access and use of evidence are intended to isolate and hinder common interest parties, preclude evidence and prevent parties from having the full picture of relevant and admissible evidence. These limitations should not stand.

In the definitions in Order #2, in Order #7.1 and throughout the rest of the Proposed Order, PG&E repeatedly attempts to limit access, use and other things only to what is "in connection with the Chapter 11 Cases." Even worse, Order #7.1 attempts to gag and isolate objecting creditors by limiting disclosure "only to the [objectionably narrow] categories of persons and under the [always disputed] conditions described in the Order [e.g., the objectionable terms and conditions in Order 7.2-7.6]."

The gag order continues that this ordinarily discoverable evidence has to be maintained and stored to "ensure[s] access is limited to the persons authorized under this Order," adding unjustified and objectionable operational and system burdens and expenses. That gets tricky, because under # 3, all the related uses and derivatives of the Protected Material are subject to the same rules as the material itself. The objectionable intent and effect of such Order rules are to prevent creditor alliances and cost-effective collaborations with useful divisions of labor under common interest arrangements, as the court should also want.

PG&E is a regulated utility, and, especially as to the CCAs, whose contracts with PG&E are part of the PG&E tariff and mandated by CPUC Rule 23 and by specific legislation in AB 117 and SB 790, this bankruptcy proceeding cannot be separated from such laws and regulations or the

1   legislative or regulatory processes. Any attempt by PG&E to reject the CCA Service Agreements

2   will involve the argument that there is no legitimate net benefit to PG&E. As a joint

3   defense/common interest group of 11 similarly situated independent governmental units (all

4   operating under the same CPUC mandated standard form contract, Rule 23, AB 117, SB 790, etc.

5   requirements), SCPA will be using PG&E evidence from many forums to defend ourselves in these

6   Cases from such existential, though meritless, PG&E attacks.

7   SCPA will also be fighting this Order to use (with stay relief if, as, and when needed)

8   evidence gathered in these Cases from PG&E in those other forums or to other officials. Since CCAs

9   collectively are providing CCA clean electric power to CCA customers for over 40% of the grid in

10  2019, there are serious public policy, safety and service issues here that far outweigh PG&E's selfish

11  search for strategic advantages in those disputes attempts to enhance or expand its monopoly.

12
    **c.  PG&E Cannot Justify Imposing Such Extreme Limits on Internal
          Sharing of Normally Discoverable Materials, Such as in Order
13        #7.2**

14  Not only does PG&E seek to impair collaboration and communications between allied parties

15  in this Case and other related matters in other forums regarding normally discoverable material, but

16  PG&E even would improperly limit how a single creditor party interacts with its own team. For

17  example, the overbroad and disputed label "Protected Material" (which includes what SCPA calls

18  "Excluded Discoverable Evidence" and "Inappropriately Protected Material") is only available to a

19  party's "Outside Counsel" "of Record" in these Chapter 11 Cases (Order #2.6, 7.2). Even then, it is

20  only available to those "to whom disclosure is reasonably necessary for the purposes of the Chapter

21  11 Cases or a Case" (Order #7.2(a), 7.3(a)). These restrictions are inappropriate and should be

22  rejected.

23  First, a party's counsel may not be a bankruptcy lawyer or even of record, because, in the

24  case of this regulated utility, many lawyers from different specialties, such as FERC specialist

25  counsel, CPUC specialist counsel, corporate counsel, and legislative lobby counsel, need to

26  collaborate to advise the creditor client with respect to relief sought by or with respect to PG&E.

27  Second, it is absurd to impose the same restrictions that one uses for the most treasured trade

28  secret or patent data also on ordinarily discoverable material that PG&E just wants to label for

strategic advantage as Confidential or Highly Confidential, because it incorrectly thinks such material is "sensitive" or "confidential" or "proprietary," or "would cause competitive harm" in the disputed view of PG&E.

SCPA notes that by PG&E shifting the burden of sealing such Protected Material to the recipient – and prohibiting its use if sealing is not successful [Order #7.5] – PG&E is admitting that much of its purported Protected Material cannot meet the sealing test. If it cannot be sealed, by definition it does not deserve to be treated as Protected Material. As PG&E warns in Order #1, sealing may not be available. This means that the Order not only shifts the normal burdens from PG&E to its targets, but also forces its targets into a dead end path (Order #7.5). Here is the catch-22: The Order requires the sealing of normally admissible evidence, which is not allowed to be sealed.

### 2. The Definitions for "Discovery Materials" and "Protected Materials" (Order # 2.4 and 2.9) Need to Be Replaced to Prevent Improperly Protecting Material and to Ensure CCAs Are Not Treated as "Contractors"

The definitions for Discovery Materials and Protected Materials must make clear distinctions between normally privileged or protected material (with the burden on PG&E as the party resisting discovery) and material PG&E incorrectly labels "Protected Material." The definition of "Contractor" must also be revised to ensure that CCAs are not considered Contractors.

#### a. Because CCAs Are Treated Even Worse Than Other Parties (Order #5.4), CCAs Need Clarity That They Are Not "PG&E Contractors"

CCAs provide goods and services to CCA customers, not to PG&E, and some CCAs buy Resource Adequacy type products from PG&E. The only services involved in that are the joint billing and collecting related agency functions of PG&E as to those CCA customers that have exclusively assigned to PG&E by the Legislature in AB 117 and by the CPUC in Rule 23 and the standard form CPUC mandated Service Agreement that is part of the PG&E tariff (and which PG&E has reserved the right to try to reject). None of that should make SCPA a "**Contractor**" who must suffer special prejudice from PG&E, and CCAs must be carved out from that category and Order #5.4.

b. **The Standards for PG&E Designations and Decisions Need to Be Changed and Made More Objective Than PG&E's Idiosyncratic Opinions of "Good Faith" or "Commercially Harmful"**

There is no good cause for the court, in effect, to delegate its discovery powers to PG&E in the Proposed Order or to so radically change the other parties' rights and obligations from what they are normally under the applicable rules, just because PG&E believes that it can best exercise those extraordinary powers and benefits subject only to a subjective "in good faith" standard, or because PG&E has a subjective fear of normal discovery to be "commercially harmful." What is clear is that PG&E is a fiduciary who is acting under this Order in its self-interest and contrary what the CCAs and other objectors consider to be in their interest and in the best interest of creditors generally.

In order to shift the normal burdens from PG&E to its objectors, especially considering the many radical effects, limitations, and requirements of the Proposed Order, there needs to be far more justification and proven "cause" than exists in the Motion or the supporting Declaration. There is no legal presumption that a debtor, especially this self-interested fiduciary on probation for prior felonies and still being investigated for possibly more, is entitled to change the rules in its favor simply by any good faith belief or opinion, especially when it comes to its unilateral classification of "Protected Material" (Order #2.9 referencing #5.2-5.4), as disputed herein, especially when such terms can be read as what most would consider a public relations test, rather than a legal test.

c. **PG&E's Confidentiality and Other "Protected Material" Tests Are Grossly Overbroad and Overstated**

Few, if any, Order limitations and burdens should be imposed on Excluded Discoverable Evidence and Inappropriately Protected Material. These are materials that would normally be discoverable and admissible without sealing or other burdens. As noted above, it is a huge mistake for PG&E to demand that "one size must fit all." PG&E's Proposed Order applies standards applicable to valuable and vulnerable trade secrets to all evidence. It fails to allow for normal, fair and proper discovery for the most common non-secret, nonprivileged situations. Few, if any, of PG&E's Proposed Order terms and conditions should apply to such Excluded Discoverable Evidence or such Inappropriately Protected Material, or to the suggested Public Safety and Service Carveout.

1        Moreover, as one of the most seasoned and aggressive litigation companies in California,

2  judged by any standard and from personal experiences of many participants in the last PG&E

3  bankruptcy or in other forums, PG&E's ordinary course of business is to use confidentiality and

4  NDAs for everything and anything feasible. Under its proposed definition of "Confidentiality"

5  (Order # 5.2, 3) PG&E would be allowed to routinely manufacture "Confidentiality" or higher

6  Protected Material classifications just by arranging an NDA as usual. Worse, in #3 PG&E gets to

7  choose between its manufactured confidentiality designation and the disputed Order as to which to

8  apply by this disputed test: "the provision that provides the most confidentiality protection for

9  Discovery Materials applies."

10       Beyond that obvious flaw, the other #5.2 tests are also objectionable:

- #5.2(1)(a) as fairly translated, says if PG&E has a good faith belief that it could persuade a judge to provide even minor protection under a Bankruptcy Rule or Federal Rule, then PG&E can designate that evidence as "Confidential" or higher. These materials would then have all the extraordinary and more powerful and burdensome Proposed Order requirements applied as if they were precious trade secrets, but protections that would never be granted for such Discovery Material in the real world under such Rules;

- #5.2(1)(b) as fairly translated, says that somehow a legal or contractual "right of privacy" converts that Discovery Material into something that now has more such enhanced Order protection than ever would be available for such a right of privacy;

- #5.1(2)(a) as fairly translated, says if PG&E and a third party have agreed to keep something that is discoverable to be treated confidentially (a routine business practice for PG&E), then it is magically "Confidential" under the Order and entitled to the same protections as the most valuable trade secret; and

- #5.1(2)(b) as fairly translated, says that, if another ally of PG&E (e.g., its equity) wants to help PG&E by claiming that some Discovery Material contains information that such other party considers "confidential" or "proprietary," then magically it becomes "Confidential" or higher classification under the Order.

Beyond those flaws and others, Order #5.3 also contains the same kind of objectionable terms for "Highly Confidential" or "Professional Eyes Only." According to PG&E, all the normal standards and laws are to be superseded by the Order whenever the Discovery Material (in PG&E's view) "is of such a nature that a risk of competitive injury or a material risk to the Debtors' development of a plan of reorganization or emergence from Bankruptcy would be created if such Discovery Material were disclosed …" This Order will protect normally discoverable materials such as relevant business information and nonprivileged material prepared by its industry advisors, financial advisors, accounting advisors and experts. SCPA takes special exception to the above idea that a PG&E's testifying experts' work products can be shielded under this Order.

### 3. The Kafkaesque Timing Rules of the Proposed Order Are Imposed with No Reference to the Requirements of the Underlying Substantive Dispute to Be Tried or Heard

The Proposed Order's timing rules result in many catch-22 situations. The Proposed Order ensures there is never sufficient time to include discovery results in any objection or response to PG&E's motions or actions. It also precludes parties from normally using any discovery results at the trial or hearing, as discussed above when SCPA is unable to seal things as required (# 7.5) or to seal the courtroom (#7.6).

The Motion and Proposed Order are PG&E's strategic attempt to impose timing and other burdens in the abstract, without any consideration of the nature or timing of the actual underlying substantive adversary proceeding or contested matter that PG&E launches against its expected targets. The result, as PG&E hopes, is that its targets will either exhaust all their time, energy and resources struggling to comply with these burdensome, oppressive, and catch-22 rules, or else that they abandon any hope of obtaining any timely or useful discovery. The Order will likely prevent any discovery results to be obtained in time either to be filed (*see* #1 and #7.5, requiring sealing of what often will not meet the standards for sealing and, therefore, should not ever have been so burdened by this Order in the first place), or used at the trial or hearing (see #7.6). PG&E should not win by unfairly causing a forfeit or by rigging the objectionable, procedural rules of the game to achieve a result it could not achieve on the merits under the normal rules.

This is not hyperbole. SCPA submits as as an example a future attempt to reject CCA Service

Agreements. When PG&E makes its rejection motion at a time of its choosing (currently expected in the jam around the time PG&E files the plan of reorganization that SCPA fears will be disappointing or worse for us), there will not be sufficient time to comply with all the procedures required by Proposed Order in order to be able to obtain the discovery needed for effectively opposing the underlying substantive motion at that critical evidentiary hearing.[8]

Recognizing that dilemma and the court's many distractions during that massive, endgame scrum, SCPA – and many others expecting to be PG&E targets – has to consider planning ways to raise issues far in advance in hopes of countering these fatal Order procedures and timing traps. These will include motions in limine, early Rule 2004 efforts or others under Proposed Order #13.1 and will occur earlier than necessary in case the Rule 9014(c) relief may be insufficient or not sufficiently expedient to counter the harms done by the Proposed Order or Motion. Fights over shortening time efforts by PG&E or extensions of time by its defending targets will become existential and strategic imperatives, rather than routine matters.

Under any evidentiary rules, each party must have the opportunity for reasonable discovery in order to ensure due process and fairness. That must include importing evidence from other forums (e.g., CPUC, FERC, the criminal proceeding presided over by Judge Alsup, etc.) that would be barred, obstructed or fatally delayed by the Proposed Order. The PG&E Proposed Order sets forth procedures and timing traps that defeat due process and, as a result, prevent a fair trial on the merits.[9]

### a. PG&E Inappropriately Shifts the Burdens to Its Targets Related to Protected Material in Open Court (Order #7.6)

Proposed Order #7.6 provides that "At least 72 hours prior to the use of any Protected

---

[8] As noted above, there are additional time burdens created by the required sealing of what may not be allowed to be sealed. This filing would therefore be barred by Proposed Order #7.5. Worse, even if sealed, there are more time burdens to being able to present the evidence at the hearing, with much of it likely being prohibited from use under PG&E's trial/hearing rules in Proposed Order # 7.6.s.

[9] Normally a party obtains the relevant documents and information in discovery first and then takes the depositions and prepares the objections and other filings and the trial/hearing presentation. The effect of the Proposed Order (see, e.g., #6.2) is to scramble and defeat that efficient normal process, by exhausting available time and resources, so that whatever depositions can be managed at the last minute are less effective and far more contentious. SCPA questions whether there is even time and opportunity for any such depositions under PG&E's procedures.

Material at the trial or any to be held in open court," or as part of any pretrial conference or meet and confer as to the use of exhibits, the target defending against the rejection or other motion must "meet and confer to discuss ways to redact the Protected Material" for use. It is important to recall that much of this protected material is actually Excluded Discoverable Evidence and Inappropriately Protected Material. When the parties are unable to resolve such disputes, the <u>defending target</u> rather than PG&E as the Designating Party "bears the burden of requesting relief from the Court and, in the absence of such relief, such Protected Material shall not be offered or otherwise used at trial or any hearings held in open court."

As those PG&E tactics are fairly translated, Order #7.6 means: (i) cutting the precious hearing preparation deadline by at least 72 hours, (ii) distracting the target's counsel with unnecessary and inappropriate procedural hurdles, and (iii) excluding such evidence that is normally discovered and used at trial, but that here has been obtained late or not at all as a result of PG&E's designation of "Protected Material."

> **b.** **The Order (# 7.5) Requires Sealing of Purportedly "Protected Material," Even Though Normally Available as Evidence or Even If Such Sealing Is Not Available**

As discussed above, PG&E prevents any discovery results from being filed, submitted, or used in filings or submissions, unless it has been sealed in accordance with the applicable sealing rules. The catch-22, which proves such so-called Protected Material should never have protected like this in the first place, is that much of that normally available and useful discovery and admissible evidence may not meet the sealing test. In effect, the target will have suffered through all of the objectionable obstacles to usual discovery that PG&E has created, only to find at the end that it was a wasted effort, because PG&E wrongly designated as Protected Material things that cannot be sealed – and because PG&E's own Order requires that it be sealed.

Putting aside the waste, cost, and other problems resulting from this disputed rule, dealing with this mess exhausts more precious time on process and procedure at a time when the target counsel is trying to get ready for the substance of trial on the underlying rejection or other motion, and when the court has other pressing business.

/ / /

    **c.**    **In This Multi-Front Battle in Different Forums, PG&E Would Bar Use of Discovery Materials in Other Related Forums (Order #7.1, 3)**

CCA discovery goals will include obtaining evidence of any PG&E violations of the SB 790 Code of Conduct that the Legislature imposed on PG&E specifically for CCA protection and that CPUC implemented in Rule 23. That is relevant and important, among other things, in resisting PG&E's rejection of the CCA Service Agreement and in demonstrating the "morning after" consequences of rejection on PG&E. The Court should be able to hear from the regulators' records directly, rather than just from competing experts arguing about what will happen to PG&E the morning after rejection or after permitted (but late) reporting of any such misconduct by PG&E.

SCPA notes also that under Order #7.3(j) deposing counsel can only ask a PG&E witness questions to which counsel already knows the answer, because no questions are permitted, unless counsel "reasonably and in good faith believes that doing so is necessary and that in doing so would not cause competitive harm…" The point of the deposition is to learn things, not just confirm things, and, once an answer is given, then to plan the defense on an informed basis including impeachment of the PG&E witness. All that is obstructed or prevented by this Order. If PG&E disputes such questions by counsel, does the court really want a disputed  contempt hearing under Order # 13.8 over the legal question of what is "competitive harm" to PG&E and when such harm is legitimate or illegitimate?

    **d.**    **Because Trial Preparation and Other Work with Collaborating Persons and Common Interest Allies Requires Litigation Against the Order Limitations in # 7.2 and 7.3, SCPA Will Be Arguing Procedure Rather than Substance**

Trial Preparation and other collaboration with common interest allies also requires litigation against the Order limitations set forth in # 7.2 and 7.3. The PG&E target will be battling over staffing (Order # 13.1), witness eligibility and preparation (Order # 7.3(g) and (h)), and normal discovery fights (Order # 13.6). These battles will be in addition to fundamental matters of substance. There are many such time exhausting problems that will arise under this Order, requiring Court intervention and discovery battles to get back to normal fairness lost in the Order (*see* Order #13.1). Those without an army of lawyers are going to have difficulty timely accomplishing

1　everything that needs to be done to get over all these PG&E procedural hurdles, at every step

2　requiring nonproductive meet and confer sessions and then burdensome challenges by the defending

3　PG&E targets.

4　　　　　　　　　**e.**　**The Meet and Confer Process to Challenge PG&E's Inappropriate**
**Classifications (Order # 6.2) and Inevitable "Judicial**
5　　　　　　　　　　　**Intervention" (Order # 6.3) Will Unnecessarily Exhaust Precious**
**Time and Resources**
6

7　　　　After PG&E disputes SCPA's discovery attempts by declaring something normally available

8　to be "Protected Material," SCPA must give notice of its challenge and wait up to 5 business days

9　for a likely nonproductive and one-sided meet and confer. As PG&E's challenger, it would now

10　somehow be SCPA's assigned burden to conduct a mini-trial before PG&E, so that it can re-examine

11　the material and reconsider its position at its convenience. No judicial intervention can even be

12　**scheduled** until after that hurdle is overcome. By then all deadlines for objections in the underlying

13　substantive rejection dispute will likely have expired, and PG&E will claim to have prevailed on

14　mootness just by running out the clock. To be clear, nothing in the Order imposes any duty on

15　PG&E to extend any deadline in the underlying substantive dispute while allowing them to tie up the

16　matter procedurally.

17　　　　Worse, the PG&E target/challenger rather than PG&E as the Designating Party has to then

18　assume the burden of making a "motion …at the first available date on regular notice." Until the

19　court rules on that motion, the target is frozen, because it has to assume the correctness of PG&E's

20　designation until the court makes a ruling (Order # 6.3). As a practical matter, if the underlying

21　substantive dispute motion goes forward on a faster schedule, the procedural issue becomes moot,

22　because PG&E will have successfully run out the clock. That means in order to avoid missing such

23　deadlines caused by PG&E and to preserve its rights, the challenging PG&E target must also battle

24　(in the midst of these other Order battles and while preparing plan and disclosure statement

25　objections also impacted by this Order) to delay the underlying rejection or other motion so as to

26　avoid mootness.

27　/ / /

28　/ / /

**f. PG&E Can Take Its Time in Making Its Designation of Protected Material (Order #6.1), Thereby Further Complicating Timing Problems**

The Order (*See* Order #6.1, 5.9, 10, 13.1) allows PG&E to trigger the confidentiality designation process at any time without prejudice to PG&E, even with long periods to consider its position. Furthermore, Order #5.5(b) assumes all deposition transcripts are Confidential Material for either 7 or 3 days, and that will complicate all the other timing and resource problems discussed herein. Order # 8 allows tag team games by PG&E allies also adding Protected Material disputes that further burden and harass the targets just trying to get normal discovery in a fair and efficient process.

**g. PG&E's Order Interferes with Normal and Effective Interactions with Clients and With Common Interest Defense Groups**

One particularly objectionable portion of the Proposed Order is #13.7, which provides that "counsel shall not make specific disclosure of any information in any manner that is inconsistent with the restrictions or procedures set forth herein [*i.e.*, in the Order]." Notwithstanding these restrictions, the counsel is somehow supposed to still render the advice needed by the client.

## IV. JOINDER WITH OTHER OBJECTIONS

SCPA supports the objections and proposed modifications suggested by the State Parties, the CPUC, and others, consistent with this Objection.

## V. RESERVATION OF RIGHTS

Except as provided above, SCPA reserves all rights as provided in its Reservation Rights attached as Exhibit B to its Statement of Support for Debtors' Public Programs Motion and Reservation of Rights (Dkt. 66).

## VI. CONCLUSION

For these reasons, SCPA requests the court to sustain its limited objection and grant such other relief as is appropriate.

DATED: June 19, 2019.                          RESPECTFULLY SUBMITTED,

                                               ENGEL LAW, P.C.

                                               By:_____/s/ G. Larry Engel_____
                                                        G. Larry Engel

1

2                            -and-

BOUTIN JONES INC.
Mark Gorton

3

4                            -and-

SONOMA CLEAN POWER AUTHORITY
Jessica R. Mullan, General Counsel

5

6 *Attorneys for Creditor and Party-in-Interest, SONOMA*
*CLEAN POWER AUTHORITY*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     Valley Clean Energy Alliance, a California joint powers authority[1] and a "governmental

2 unit" (as defined in Bankruptcy Code section 101), joins Sonoma Clean Power Authority's Limited

3 Objection to Debtor's Protective Order Motion (Dkt. 2459).

4 DATED: June 19, 2019.          RESPECTFULLY SUBMITTED,

5                           BEST BEST & KRIEGER LLP

6

7                           By:_____
                                 Harriet A. Steiner

8                           *Attorneys for Creditor, VALLEY CLEAN*
                          *ENERGY ALLIANCE*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 _____

[1] The governmental units that are members of Valley Clean Energy Alliance are County of Yolo,
28 City of Davis and City of Woodland.

SONOMA CLEAN POWER AUTHORITY'S LIMITED OBJECTION TO DEBTOR'S
PROTECTIVE ORDER MOTION

1    REDWOOD COAST ENERGY AUTHORITY, a California joint powers authority, [1] a

2    community choice aggregator and a governmental unit, joins the Limited Objection to Debtors'

3    Protective Order Motion (Dkt. 2459).

4    DATED: June 29, 2019.                          RESPECTFULLY SUBMITTED,

5                                                   REDWOOD COAST ENERGY AUTHORITY
                                                    Nancy Diamond, General Counsel
6

7                                                   By: _____
                                                         Nancy Diamond
8                                                        General Counsel

9                                                   *Attorneys for Creditor and Party-in-Interest*
10                                                  *REDWOOD COAST ENERGY AUTHORITY*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
     _____
28   [1] The governmental units that are members of the RCEA joint powers authority are the Cities of
     Arcata, Blue Lake, Eureka, Ferndale, Fortuna, Rio Dell, Trinidad, the County of Humboldt, and the
     Humboldt Bay Municipal Water District (a special district of the State of California)

1    Pioneer Community Energy, a California Community Choice Aggregation (CCA)[1] and a

2    "governmental unit" (as defined in Bankruptcy Code 101), joins Sonoma Clean Power

3    Authority's Limited Objection to Debtor's Protective order Motion (Dkt. 2459).

4

5    Dated: June 19, 2019                          NEUMILLER & BEARDSLEE,
                                                   A PROFESSIONAL CORPORATION
6

7                                                  By:_____

8                                                       CLIFFORD W. STEVENS
                                                        Attorneys for Creditor,
9                                                       PIONEER COMMUNITY ENERGY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[1] The governmental units that are part of the Pioneer Community Energy CCA are Placer County (unincorporated areas), the cities of Auburn, Colfax, Lincoln, Rocklin, and the Town of Loomis.

# CERTIFICATE OF SERVICE

I am employed in the County of Sacramento; my business address is 555 Capitol Mall, Suite 1500, Sacramento, California 95814. I am over the age of eighteen years and not a party to the foregoing action.

On June 19, 2019, I served the within:

(1) **SONOMA CLEAN POWER AUTHORITY'S LIMITED OBJECTION TO DEBTOR'S PROTECTIVE ORDER MOTION (Dkt. 2459)**

| X | **(by e-mail transmission)** on all parties listed on the attached **Exhibit A**, based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I sent the document(s) to the person(s) at the e-mail address(es) as set forth on the attached service list, **Exhibit A**. |
|---|---|

| X | **(by mail)** on all parties listed on the attached **Exhibit B** in said action by regular, first class United States mail, postage fully pre-paid, by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below. At Boutin Jones Inc., mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Sacramento, California. |
|---|---|

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on June 19, 2019, at Sacramento, California.

_____
CARMELIA V. DOMINGO

1021276.1

# Exhibit A

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for for Mirna Trettevik, including other Fire Victim Tort Claimants | ADLER LAW GROUP, APLC | Attn: E. Elliot Adler, Geoffrey E. Marr, Brittany S. Zummer 402 West Broadway Suite 860 San Diego CA 92101 | EAdler@TheAdlerFirm.com | Email |
| Counsel for Aera Energy LLC, Midway Sunset Congeneration Company | Aera Energy LLC | Attn: Ron A. Symm 10000 Ming Avenue Bakersfield CA 93311 | RASymm@aeraenergy.com | Email |
| Counsel to TRANSWESTERN PIPELINE COMPANY, LLC | AKERMAN LLP | Attn: JOHN E. MITCHELL and YELENA ARCHIYAN 2001 Ross Avenue, Suite 3600 Dallas TX 75201 | john.mitchell@akerman.com | Email |
| Counsel to the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company | Akin Gump Strauss Hauer & Feld LLP | Attn: David P. Simonds 1999 Avenue of the Stars Suite 600 Los Angeles CA 90067 | mstamer@akingump.com; idizengoff@akingump.com; dbotter@akingump.com | Email |
| Counsel to the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company | Akin Gump Strauss Hauer & Feld LLP | Attn: Michael S. Stamer, Ira S. Dizengoff, David H. Botter One Bryant Park New York NY 10036 | dsimonds@akingump.com | Email |
| Counsel for BOKF, NA, solely in its capacity as Indenture Trustee | ARENT FOX LLP | Attn: Andrew I. Silfen, Beth M. Brownstein, Jordana L. Renert 1301 Avenue of the Americas 42nd Floor New York NY 10019 | andy.kong@arentfox.com | Email |
| Counsel for Genesys | Arent Fox LLP | Attn: Andy S. Kong and | Beth.Brownstein@arentfox.com; | Email |

1017500.2

**Exhibit A – Service List Email Only**

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Telecommunications Laboratories Inc. | | Christopher K.S. Wong 555 West Fifth Street 48th Floor Los Angeles CA 90013-1065 | Jordana.Renert@arentfox.com; | |
| Counsel for BOKF, NA, solely in its capacity as Indenture Trustee | ARENT FOX LLP | Attn: Aram Ordubegian 555 West Fifth Street 48th Floor Los Angeles CA 90013-1065 | Aram.Ordubegian@arentfox.com | Email |
| Counsel for AT&T | Arnold & Porter Kaye Scholer LLP | Attn: Brian Lohan, Esq., Steven Fruchter, Esq. 250 West 55th Street New York NY 10019 | brian.lohan@arnoldporter.com; steven.fruchter@arnoldporter.com | Email |
| Counsel for AT&T | AT&T | Attn: James W. Grudus, Esq. One AT&T Way, Room 3A115 Bedminster NJ 07921 | Jg5786@att.com | Email |
| Counsel to California State Agencies | Attorney General of California | Attn: XAVIER BECERRA, DANETTE VALDEZ, and ANNADEL ALMENDRAS 455 Golden Gate Avenue Suite 11000 San Francisco CA 94102-7004 | James.Potter@doj.ca.gov | Email |
| Counsel to California State Agencies | Attorney General of California | Attn: XAVIER BECERRA, MARGARITA PADILLA, and JAMES POTTER 1515 Clay Street, 20th Floor P.O. Box 70550 Oakland CA 94612-0550 | Danette.Valdez@doj.ca.gov | Email |
| Counsel to California State Agencies | Attorney General of California | Attn: XAVIER BECERRA, MARGARITA PADILLA, and JAMES POTTER 300 South Spring Street Suite 1702 Los Angeles CA 90013 | James.Potter@doj.ca.gov | Email |
| Special Bankruptcy Counsel for Certain Fire Damage Plaintiffs | BAILEY AND ROMERO LAW FIRM | Attn: MARTHA E. ROMERO 12518 Beverly Boulevard Whittier CA 90601 | marthaeromerolaw@gmail.com | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Claimants | | | | |
| Counsel for NRG Energy Inc., Clearway Energy, Inc., and Clearway Energy Group LLC | Baker Botts L.L.P. | Attn: C. Luckey McDowell, Ian E. Roberts, Kevin Chiu 2001 Ross Avenue Suite 1000 Dallas TX 75201 | Ian.Roberts@BakerBotts.com; Kevin.Chiu@BakerBotts.com | Email |
| Counsel for NRG Energy Inc., Clearway Energy, Inc., and Clearway Energy Group LLC | Baker Botts L.L.P. | Attn: Navi S. Dillon 101 California Street Suite 3600 San Francisco CA 94111 | Navi.Dhillon@BakerBotts.com | Email |
| Counsel for Phillips and Jordan | Baker, Donelson, Bearman, Caldwell & Berkowitz, PC | Attn: John H. Rowland 211 Commerce Street Suite 800 Nashville TN 37201 | jrowland@bakerdonelson.com | Email |
| Counsel for Realty Income Corp., Counsel for Discovery Hydrovac | BALLARD SPAHR LLP | Attn: Craig Solomon Ganz, Michael S. Myers 1 East Washington Street Suite 2300 Phoenix AZ 85004-2555 | ganzc@ballardspahr.com | Email |
| URENCO Limited and Louisiana Energy Services, LLC | Ballard Spahr LLP | Attn: Matthew G. Summers 919 North Market Street 11th Floor Wilmington DE 19801 | summersm@ballardspahr.com | Email |
| Counsel to Campos EPC, LLC | BALLARD SPAHR LLP | Attn: Theodore J. Hartl, Esq. 1225 17th Street Suite 2300 Denver CO 80202 | hartlt@ballardspahr.com | Email |
| Counsel for Bank of America, N.A. | Bank of America | Attn: John McCusker Mail Code: NY1-100-21-01 One Bryant Park New York NY 10036 | John.mccusker@bami.com | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for Creditors Public Entities Impacted by the Wildfires | Baron & Budd, P.C. | Attn: Scott Summy, John Fiske 3102 Oak Lawn Avenue #1100 Dallas TX 75219 | ssummy@baronbudd.com; jfiske@baronbudd.com | Email |
| Counsel for City of Morgan Hill | Barton, Klugman & Oetting LLP | Attn: Terry L. Higham, Thomas E. McCurnin, Christopher D. Higashi 350 South Grand Avenue, Suite 2200 Los Angeles CA 90071-3485 | chigashi@bkolaw.com; thigham@bkolaw.com | Email |
| Counsel for Infosys Limited, Counsel for ACRT, Inc. | BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP | Attn: Kevin M. Capuzzi, Michael J. Barrie 222 Delaware Avenue Suite 801 Wilmington DE 19801 | kcapuzzi@beneschlaw.com; mbarrie@beneschlaw.com | Email |
| Counsel for MDR Inc. (dba Accu-Bore Directional Drilling), Veteran Power, Inc. | Brothers Smith LLP | Attn: Mark V. Isola 2033 N. Main Street Suite 720 Walnut Creek CA 94596 | misola@brotherssmithlaw.com | Email |
| California Public Utilities Commission | California Public Utilities Commission | Attn: Arocles Aguilar 505 Van Ness Avenue San Francisco CA 94102 | arocles.aguilar@cpuc.ca.gov | Email |
| Counsel to Chevron Products Company, a division of Chevron U.S.A. Inc. | CHEVRON PRODUCTS COMPANY, A DIVISION OF CHEVRON U.S.A. INC. | Attn: Melanie Cruz, M. Armstrong 6001 Bollinger Canyon Road T2110 San Ramon CA 94583 | melaniecruz@chevron.com; marmstrong@chevron.com | Email |
| Counsel to liberty Mutual Insurance Company | Choate, Hall & Stewart LLP | Attn: Douglas R. Gooding Two International Place Boston MA 02110 | dgooding@choate.com | Email |
| Counsel to liberty Mutual Insurance Company | Choate, Hall & Stewart LLP | Attn: Johnathan D. Marshall Two International Place Boston MA 02110 | jmarshall@choate.com | Email |

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel to Solon | CKR Law, LLP | Attn: Kristine Takvoryan<br>1800 Century Park East, 14th Floor<br>Los Angeles CA 90067 | otakvoryan@ckrlaw.com | Email |
| Counsel for BlueMountain Capital Management, LLC | Cleary Gottlieb Sheen & Hamilton LLP | Attn: Lisa Schweitzer, Margaret Schierberl One Liberty Plaza<br>New York NY 10006 | mschierberl@cgsh.com | Email |
| Counsel to Western Electricity Coordinating Council | COHNE KINGHORN, P.C. | Attn: George Hofmann<br>111 East Broadway, 11th Floor<br>Salt Lake City UT 84111 | ghofmann@cohnekinghorn.com | Email |
|  | Commonwealth of Pennsylvania | Department of Labor and Industry | ra-li-ucts-bankrupt@state.pa.us | Email |
| Counsel for Fire Victim Creditors | COREY, LUZAICH, DE GHETALDI & RIDDLE LLP | Attn: Dario De Ghetaldi, Amanda L. Riddle, Steven M. Berki, Sumble Manzoor<br>700 El Camino Real<br>PO Box 669<br>Millbrae CA 94030-0669 | alr@coreylaw.com; smb@coreylaw.com;<br>sm@coreylaw.com | Email |
| Individual Plaintiffs Executive Committee appointed by the California Superior Court in the North Bay Fire Cases, Judicial Council Coordination Proceeding Number 4955, Pursuant to the terms of the Court's Case Management Order No. 1 | Cotchett, Pitre & Mccarthy, LLP | Attn: Frank M. Pitre, Alison E. Cordova, Abigail D. Blodgett San Francisco Airport Office Center<br>840 Malcolm Road, Suite 200<br>Burlingame CA 94010 | fpitre@cpmlegal.com;<br>acordova@cpmlegal.com;<br>ablodgett@cpmlegal.com | Email |
| COUNTY OF YOLO | Attn: Eric May |  | eric.may@yolocounty.org | Email |

**Exhibit A – Service List Email Only**

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel to Liberty Mutual Insurance Company | Cozen O'Connor | Attn: Fulton Smith, III<br>101 Montgomery Street<br>Suite 1400<br>San Francisco CA 94101 | fsmith@cozen.com | Email |
| Counsel to Renaissance Reinsurance LTD. | Crowell & Moring LLP | Attn: Mark D. Plevin, Brendan V. Mullan<br>Three Embarcadero Center, 26th Floor<br>San Francisco CA 94111 | bmullan@crowell.com | Email |
| Counsel for Fire Victim Creditors | DANKO MEREDITH | Attn: Michael S. Danko, Kristine K. Meredith, Shawn R. Miller<br>333 Twin Dolphin Drive<br>Suite 145<br>Redwood Shores CA 94065 | mdanko@dankolaw.com;<br>kmeredith@dankolaw.com;<br>smiller@dankolaw.com | Email |
| Counsel for the agent under the Debtors' proposed debtor in possession financing facilities, Counsel for Citibank N.A., as Administrative Agent for the Utility Revolving Credit Facility | Davis Polk & Wardwell LLP | Attn: Eli J. Vonnegut, David Schiff, Timothy Graulich<br>450 Lexington Avenue<br>New York NY 10017 | eli.vonnegut@davispolk.com;<br>david.schiff@davispolk.com;<br>timothy.graulich@davispolk.com | Email |
| | Davis Polk & Wardwell LLP | Attn: Andrew D. Yaphe<br>1600 El Camino Real<br>Menlo Park, CA 94025 | andrew.yaphe@davispolk.com | Email |
| Debra Grassgreen | Attn: Karl Knight | | dgrassgreen@gmail.com | Email |
| Counsel to Southwire Company LLC | Dentons US LLP | Attn: Bryan E. Bates, Esq.<br>303 Peachtree St., NE, Suite 5300<br>Atlanta GA 30308 | oscar.pinkas@dentons.com | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for Capital Power Corporation and Halkirk I Wind Project LP | Dentons US LLP | Attn: Lauren Macksoud<br>1221 Avenue of the Americas<br>New York NY 10020-1089 | Lauren.macksoud@dentons.com | Email |
| Counsel for Capital Power Corporation and Halkirk I Wind Project LP | Dentons US LLP | Attn: Oscar N. Pinkas<br>1221 Avenue of the Americas<br>New York NY 10020-1089 | bryan.bates@dentons.com | Email |
| Counsel for Travelers Insurance | Dentons US LLP | Attn: Peter D. Wolfson<br>1221 Avenue of the Americas<br>New York NY 10020 | peter.wolfson@dentons.com | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for the Official Committee of Unsecured Tort Claimant Creditors | DLA PIPER LLP (US) | Attn: Eric Goldberg, David Riley 2000 Avenue of the Stars Suite 400 North Tower Los Angeles CA 90067-4704 | david.riley@dlapiper.com | Email |
| Counsel for East Bay Community Energy Authority | East Bay Community Energy Authority | Attn: Leah S. Goldberg 1111 Broadway 3rd Floor Oakland CA 94607 | lgoldberg@ebce.org | Email |
| Counsel for EDP Renewables North America LLC, Rising Tree Wind Farm II LLC, and Arlington Wind Power Project LLC | EDP Renewables North America LLC | Attn: Leslie A. Freiman, Randy Sawyer 808 Travis Suite 700 Houston TX 77002 | Leslie.Freiman@edpr.com; Randy.Sawyer@edpr.com | Email |
| Information Agent for the Official Committee of Unsecured Creditors, and the Official Committee of Tort Claimants | Epiq Corporate Restructuring, LLC | Attn: PG&E UCC and PG&E TCC 777 Third Avenue, 12th Floor New York NY 10017 | sgarabato@epiqglobal.com | Email |
| Counsel to California State Agencies | FELDERSTEIN FITZGERALD WILLOUGHBY & PASCUZZI LLP | Attn: STEVEN H. FELDERSTEIN and PAUL J. PASCUZZI 400 Capitol Mall Suite 1750 Sacramento CA 95814 | sfelderstein@ffwplaw.com | Email |
| Counsel for BOKF, NA, solely in its capacity as Indenture Trustee | FREDERIC DORWART, LAWYERS PLLC | Attn: Samuel S. Ory 124 East Fourth Street Tulsa OK 74103-5010 | sory@fdlaw.com | Email |

1017500.2

**Exhibit A – Service List Email Only**

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for Itron, Inc. | GELLERT SCALI BUSENKELL & BROWN, LLC | Attn: Michael Busenkell 1201 N. Orange St. Suite 300 Wilmington DE 19801 | mbusenkell@gsbblaw.com | Email |
| Counsel for Fire Victim Creditors | GIBBS LAW GROUP | Attn: Eric Gibbs, Dylan Hughes 505 14th Street, Suite 1110 Oakland CA 94612 | ehg@classlawgroup.com; dsh@classlawgroup.com | Email |
| Counsel for Topaz Solar Farms LLC | Gibson, Dunn & Crutcher LLP | Attn: Michael A. Rosenthal, Alan Moskowitz 200 Park Avenue New York NY 10166-0193 | Mrosenthal@gibsondunn.com; Amoskowitz@gibsondunn.com | Email |
| Counsel for Cardno, Inc. | Greenberg Traurig, LLP | Attn: Diane Vuocolo 1717 Arch Street Suite 400 Philadelphia PA 19103 | vuocolod@gtlaw.com | Email |
| Counsel for Nationwide Entities | Grotefeld Hoffmann | Attn: Mark S. Grotefeld, Maura Walsh Ochoa, Waylon J. Pickett 700 Larkspur Landing Circle, Suite 280 Larkspur CA 94939 | mgrotefeld@ghlaw-llp.com; mochoa@ghlaw-llp.com; wpickett@ghlaw-llp.com | Email |
| | HercRentals | Attn: Sharon Petrosino, Esq. | Sharon.petrosino@hercrentals.com | Email |
| COUNSEL FOR PARTIES-IN-INTEREST ESVOLTA, LP AND HUMMINGBIRD ENERGY STORAGE, LLC | HOGAN LOVELLS US LLP | Attn Erin N Brady 1999 Avenue of the Stars Suite 1400 Los Angeles CA 90067 | bennett.spiegel@hoganlovells.com | Email |
| Counsel for McKinsey & Company, Inc. U.S. | HOGAN LOVELLS US LLP | Attn: Bennett L. Spiegel 1999 Avenue of the Stars Suite 1400 Los Angeles CA 90067 | alex.sher@hoganlovells.com; peter.ivanick@hoganlovells.com | Email |
| Counsel for McKinsey & Company, Inc. U.S. | HOGAN LOVELLS US LLP | Attn: Peter A. Ivanick, Alex M. Sher 875 Third Avenue New York NY 10022 | erin.brady@hoganlovells.com | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for Deutsche Bank Trust Company Americas and Deutsche Bank National Trust Company as Indenture Trustees for certain bondholders | Holland & Knight LLP | Attn: Robert J. Labate, David I. Holtzman 50 California Street Suite 2800 San Francisco CA 94111 | robert.labate@hklaw.com | Email |
| Counsel for DTE Stockton, LLC, Mt. Poso Cogeneration Company, LLC f/k/a Mt. Poso Cogeneration Company, L.P., Potrero Hills Energy Producers, LLC, Sunshine Gas Producers, LLC, Woodland Biomass Power, LLC f/k/a Woodland Biomass Power, Ltd. | HUNTON ANDREWS KURTH LLP | Attn: Peter S. Partee, Sr. 200 Park Avenue 53rd Floor New York NY 10166 | ppartee@huntonak.com | Email |
| Counsel to International Business Machines Corp | IBM Corporation | Attn: Marie-Jose Dube 275 Viger East Montreal QC H2X 3R7 Canada | mjdube@ca.ibm.com | Email |
| Counsel for BlueMountain Capital Management, LLC | Irell & Manella LLP | Attn: Craig Varnen, Andrew J. Strabone 1800 Avenue of the Stars Suite 900 Los Angeles CA 90067-4276 | cvarnen@irell.com; astrabone@irell.com | Email |
| Counsel for BlueMountain Capital Management, LLC | Irell & Manella LLP | Attn: Michael H. Strub, Jr. 840 Newport Center Drive Suite 400 Newport Beach CA 92660-6324 | mstrub@irell.com | Email |

1017500.2

**Exhibit A – Service List Email Only**

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel to Iron Mountain Information Management, LLC | Iron Mountain Information Management, LLC | Attn: Joseph Corrigan One Federal Street Boston MA 02110 | Bankruptcy2@ironmountain.com | Email |
| Interested Party CH2M HILL Engineers, Inc. | Jacobs Engineering | Attn: Robert Albery Associate General Counsel 9191 South Jamaica Street Englewood CO 80112 | robert.albery@jacobs.com | Email |
| Counsel for Nationwide Entities | Jang & Associates, LLP | Attn: Alan J. Jang, Sally Noma 1766 Lacassie Ave., Suite 200 Walnut Creek CA 94596 | ajang@janglit.com; snoma@janglit.com | Email |
| Counsel to Sodexo, Inc. | JD Thompson Law | Attn: Judy D. Thompson, Esq. P.O. Box 33127 Charlotte NC 28233 | jdt@jdthompsonlaw.com | Email |
| Counsel for A&J Electric Cable Corporation | JORDAN, HOLZER & ORTIZ, PC | Attn: Antonio Ortiz, Shelby A Jordan 500 N. Shoreline Suite 900 Corpus Christi TX 78401 | aortiz@jhwclaw.com; sjordan@jhwclaw.com; ecf@jhwclaw.com | Email |
| Counsel for Kompogas SLO LLC and Tata Consultancy Services | Kelley Drye & Warren LLP | Attn: Benjamin D. Feder 101 Park Avenue New York NY 10178 | bfeder@kelleydrye.com | Email |
| Counsel for Ruby Pipeline, L.L.C. | Kinder Morgan, Inc. | Attn: Mark A. Minich Two North Nevada Colorado Springs CO 80903 | Mark_Minich@kindermorgan.com | Email |
| Counsel for Ruby Pipeline, L.L.C. | Kinder Morgan, Inc. | Attn: Mosby Perrow 1001 Louisiana Suite 1000 Houston TX 77002 | mosby_perrow@kindermorgan.com | Email |

1017500.2

**Exhibit A – Service List Email Only**

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for Calpine Corporation | Kirkland & Ellis LLP | Attn: Aparna Yenamandra 601 Lexington Avenue New York NY 10022 | stephen.hessler@kirkland.com; | Email |
| Counsel for Calpine Corporation | Kirkland & Ellis LLP | Attn: David R. Seligman, P.C. 300 North LaSalle Chicago IL 60654 | marc.kieselstein@kirkland.com; | Email |
| Counsel for the Federal Monitor | Kirkland & Ellis LLP | Attn: Marc Kieselstein, P.C. 300 North LaSalle Chicago IL 60654 | mark.mckane@kirkland.com | Email |
| Counsel for Calpine Corporation | Kirkland & Ellis LLP | Attn: Mark McKane, P.C., Michael P. Esser 555 California Street San Francisco CA 94104 | aparna.yenamandra@kirkland.com | Email |
| Counsel for the Federal Monitor | Kirkland & Ellis LLP | Attn: Stephen E. Hessler, P.C. 601 Lexington Avenue New York NY 10022 | david.seligman@kirkland.com | Email |
| Counsel for NextEra Energy Inc. et al. | Klee, Tuchin, Bogdanoff & Stern LLP | Attn: Kenneth N. Klee, David M. Stern, Samuel M. Kidder 1999 Avenue of the Stars Thirty-Ninth Floor Los Angeles CA 90067 | kklee@ktbslaw.com | Email |
| Counsel to Public Employees Retirement Association of New Mexico | LABATON SUCHAROW LLP | Attn: Thomas A. Dubbs, Louis Gottlieb, Carol C. Villegas & Jeffrey A. Dubbin 140 Broadway New York NY 10005 | tdubbs@labaton.com; cvillegas@labaton.com; jdubbin@labaton.com | Email |

1017500.2

**Exhibit A – Service List Email Only**

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel to County of San Luis Obispo | LAMB & KAWAKAMI LLP | Attn: Kevin J. Lamb, Michael K. Slattery, Thomas G. Kelch<br>333 South Grand Avenue<br>Suite 4200<br>Los Angeles CA 90071 | klamb@lkfirm.com; tkelch@lkfirm.com | Email |
| Counsel to Dynegy Marketing and Trade, LLC | Latham & Watkins LLP | Attn: Caroline A. Reckler, Andrew M. Parlen<br>885 Third Avenue<br>New York NY 10022-4834 | christopher.harris@lw.com;<br>andrew.parlen@lw.com | Email |
| Counsel for Crockett Cogeneration, Middle River Power, LLC, and MRP San Joaquin Energy, LLC | Latham & Watkins LLP | Attn: Christopher Harris, Andrew M. Parlen<br>885 Third Avenue<br>New York NY 10022 | andrew.parlen@lw.com | Email |
| Counsel for Ruby Pipeline, L.L.C. | LAW OFFICE OF PATRICIA WILLIAMS PREWITT | Attn: Patricia Williams Prewitt<br>10953 Vista Lake Ct.<br>Navasota TX 77868 | pwp@pattiprewittlaw.com | Email |
| Counsel to Central Valley Associates, L.P. | Law Offices of Ronald K. Brown, Jr. | Attn: Ronald K. Brown, Jr.<br>901 Dove Street, Suite 120<br>Newport Beach CA 92660 | Ron@rkbrownlaw.com | Email |
| Creditor and Counsel to Debra Grassgreen | Law Offices of Thomas J. Brandi | Attn: Thomas J. Brandi<br>345 Pine Street<br>3rd Floor<br>San Francisco CA 94104 | tjb@brandilaw.com | Email |
| | Lewis Brisbois Bisgaard & Smith LLP | Attn: Lovee D. Sarenas, Scott Lee, Amy L. Goldman, Jasmin Yang | Amy.Goldman@lewisbrisbois.com<br>Jasmin.Yang@lewisbrisbois.com | Email |

1017500.2

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for International Brotherhood of Electrical Workers Local Union 1245 | Locke Lord LLP | Attn: Bradley C. Knapp<br>601 Poydras Street<br>Suite 2660<br>New Orleans LA 70130 | sbryant@lockelord.com | Email |
| Counsel for California Power Exchange Corporation | LOEB & LOEB LLP | Attn: Marc S. Cohen, Alicia Clough<br>10100 Santa Monica Blvd<br>Suite 2200<br>Los Angeles CA 90067 | mscohen@loeb.com | Email |
| Counsel to Public Employees Retirement Association of New Mexico | LOWENSTEIN SANDLER LLP | Attn: Michael S. Etkin, Andrew Behlmann<br>& Gabriel L. Olivera<br>One Lowenstein Drive<br>Roseland NJ 070068 | abehlmann@lowenstein.com;<br>golivera@lowenstein.com | Email |
| Interested Party | Macdonald J Fernandez LLP | Attn: Iain A. Macdonald<br>221 Sansome Street Third Floor<br>San Francisco CA 94104-2323 | imac@macfern.com | Email |
| Counsel to Aegion Corporation and its subsidiary entities: Corrpro Companies, Inc., Insituform Technologies, LLC and Fibrwrap Construction Services, Inc. | MARGULIES FAITH, LLP | ATTN: CRAIG G. MARGULIES 16030 VENTURA BOULEVARD SUITE 470 ENCINO CA 91436 | Craig@MarguliesFaithLaw.com | Email |
| Counsel for Ghost Ship Warehouse Plaintiffs' Executive Committee | MARY ALEXANDER & ASSOCIATES, P.C. | Attn: Mary E. Alexander<br>44 Montgomery Street, Suite 1303 San Francisco CA 94104 | malexander@maryalexander.com | Email |
| | McCormick Barstow, P.C. | Attn: David L. Emerzian, H. Annie Duong | demerzian@mccormickbarstow.com | Email |

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel to Winners Industry Co., Ltd. | McKoool Smith, P.C. | Attn: James H. Smith<br>One Bryant Park, 47th Floor<br>New York NY 10036 | jsmith@mckoolsmith.com | Email |
| Counsel for the Official Committee of Unsecured Creditors | Milbank LLP | Attn: Paul S. Aronzon, Gregory A. Bray, Thomas R. Kreller<br>2029 Century Park East, 33rd Floor<br>Los Angeles CA 90067 | Paronzon@milbank.com;<br>Gbray@milbank.com | Email |
| Counsel for the Official Committee of Unsecured Creditors | Milbank LLP | Attn: Dennis F. Dunne, Samuel A. Khalil<br>2029 Century Park East, 33rd Floor<br>Los Angeles CA 90067 | ddunne@milbank.com<br>skhalil@milbank.com | Email |
| Counsel for Marin Clean Energy | Mintz Levin Cohn Ferris Glovsky and Popeo, P.C. | Attn: Abigail V. O'Brient, Andrew B. Levin<br>2029 Century Park East Suite 3100<br>Los Angeles CA 90067 | avobrient@mintz.com; ablevin@mintz.com | Email |
| Counsel for Exponent, Inc. | Newmeyer & Dillion LLP | Attn: James J. Ficenec, Joshua B. Bevitz<br>1333 N. California Blvd<br>Suite 600<br>Walnut Creek CA 94596 | Joshua.Bevitz@ndlf.com | Email |
| Counsel for CALIFORNIA SELF-INSURERS' SECURITY FUND | NIXON PEABODY LLP | Attn: MAXIMILIAN A. FERULLO<br>55 West 46th Street<br>New York NY 10036 | mferullo@nixonpeabody.com | Email |
| Counsel for CALIFORNIA SELF-INSURERS' SECURITY FUND | NIXON PEABODY LLP | Attn: RICHARD C. PEDONE<br>Exchange Place<br>53 State Street<br>Boston MA 02109 | rpedone@nixonpeabody.com | Email |

1017500.2

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for Michael Vairo, Marie Dierssen, Catherine McClure, Tonia Hanson, Deirdre Coderre, Denise Stooksberry, John Stooksberry, Bryan Sullivan, Sara Hill, Isaiah Vera, Michael Williams, Joel Batts, Annaleisa Batts, Claudia Bijstra, Andries Bijstra, Roger Martinez, Candice Seals, Gretchen Franklin, Christopher Franklin, Paul Bowen, Kelly Jones, Tami Coleman, Cecil Morris, Linda Schooling, Jennifer Makin, Barbara Cruise, Benjamin Hernandez, Irma Enriquez, Constantina Howard, Leroy Howard, Edward Delongfield, Brenda Howell, Lynda Howell, Angela Coker, Sally Thorp, Paradise Moose Lodge, Nancy Seals | Northern California Law Group, PC | Attn: Joseph Feist 2611 Esplanade Chico CA 95973 | joe@norcallawgroup.net | Email |
| Counsel for NextEra Energy Inc., NextEra Energy Partners, L.P. | NORTON ROSE FULBRIGHT US LLP | Attn: Howard Seife, Andrew Rosenblatt, Christy Rivera 1301 Avenue of the Americas New York NY 10019-6022 | howard.seife@nortonrosefulbright.com; andrew.rosenblatt@nortonrosefulbright.com; christy.rivera@nortonrosefulbright.com | Email |

**Exhibit A – Service List Email Only**

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel to Department of Finance for the State of California and Governor Gavin Newsom | O'MELVENY & MYERS LLP | Attn: John J. Rapisardi, Nancy A. Mitchell and Daniel S. Shamah 7 Times Square New York NY 10036 | jrapisardi@omm.com; nmitchell@omm.com; dshamah@omm.com | Email |
| Office of the California Attorney General | Office of the California Attorney General | Attn: Bankruptcy Dept P.O. Box 944255 Sacramento CA 94244-2550 | bankruptcy@coag.gov | Email |
| Office of the United States Trustee | Office of the United States Trustee | Attn: James L. Snyder, Esq. & Timothy Lafreddi, Esq., Marta E. Villacorta 450 Golden Gate Ave Suite 05-0153 San Francisco CA 94102 | James.L.Snyder@usdoj.gov | Email |
| Counsel for EDP Renewables North America LLC, Rising Tree Wind Farm II LLC, and Arlington Wind Power Project LLC | Orrick, Herrington & Sutcliffe LLP | Attn: Debra Felder 1152 15th Street, NW Washington DC 20005 | lmcgowen@orrick.com | Email |
| Counsel to Centerbridge Partners, L.P. | ORRICK, HERRINGTON & SUTCLIFFE LLP | Attn: Douglas S. Mintz Columbia Center 1152 15th Street, N.W. Washington DC 20005-1706 | dfelder@orrick.com | Email |
| Counsel for EDP Renewables North America LLC, Rising Tree Wind Farm II LLC, and Arlington Wind Power Project LLC | Orrick, Herrington & Sutcliffe LLP | Attn: Lorraine McGowen 51 West 52nd Street New York NY 10019 | dmintz@orrick.com | Email |
| Counsel for The Baupost Group, L.L.C., as the general partner and investment manager for certain entities | Pachulski Stang Ziehl & Jones LLP | Attn: Isaac M. Pachulski, Debra I. Grassgreen, Gabriel I. Glazer, John W. Lucas 150 California Street 15th Floor San Francisco CA 94111 | ipachulski@pszjlaw.com | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel to California Public Utilities Commission | Paul, Weiss, Rifkind, Wharton & Garrison LLP | Attn: Alan W. Kornberg, Brian S. Hermann, Walter R. Rieman, Sean A. Mitchell, Neal P. Donnelly 1285 Avenue of the Americas New York NY 10019-6064 | bhermann@paulweiss.com; wrieman@paulweiss.com; smitchell@paulweiss.com; ndonnelly@paulweiss.com | Email |
| Counsel for Bank of America, N.A. | Pillsbury Winthrop Shaw Pittman LLP | Attn: Leo T. Crowley 1540 Broadway New York NY 10036 | leo.crowley@pillsburylaw.com | Email |
| Counsel for Ad Hoc Group of Institutional Par Bondholders of Pacific Gas and Electric Co. | Proskauer Rose LLP | Attn: Martin J. Bienenstock, Brian S. Rosen, Maja Zerjal Eleven Times Square New York NY 10036-8299 | mbienenstock@proskauer.com; brosen@proskauer.com; mzerjal@proskauer.com | Email |
| Counsel for Ad Hoc Group of Institutional Par Bondholders of Pacific Gas and Electric Co. | Proskauer Rose LLP | Attn: Michael A. Firestein, Lary Alan Rappaport, Steve Y. Ma 2029 Century Park East Suite 2400 Los Angeles CA 90067-3010 | mfirestein@proskauer.com; sma@proskauer.com | Email |
| Interested Party Provencher & Flatt | Provencher & Flatt, LLP | Attn: Douglas B. Provencher 823 Sonoma Avenue Santa Rosa CA 95404 | dbp@provlaw.com | Email |
| Counsel for Creditors Nevada Irrigation District, Counsel for Attorneys for Creditors Lodi Gas Storage, L.L.P. Wild Goose, LLC | Reed Smith LLP | Attn: Monique B. Howery 10 S. Wacker Drive 40th Floor Chicago IL 60606 | mhowery@reedsmith.com | Email |
| Counsel for Bank of New York Mellon | Reed Smith LLP | Attn: Robert P. Simons 225 Fifth Avenue Suite 1200 Pittsburgh PA 15222 | rsimons@reedsmith.com | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for Pivot Interiors, Inc. | RIMON, P.C. | Attn: Lillian G. Stenfeldt One Embarcadero Center Suite 400 San Francisco CA 94111 | lillian.stenfeldt@rimonlaw.com | Email |
| Individual Plaintiffs Executive Committee appointed by the California Superior Court in the North Bay Fire Cases, Judicial Council Coordination Proceeding Number 4955, Pursuant to the terms of the Court's Case Management Order No. 1 | Robins Cloud LLP | Attn: Bill Robins, III, Robert Bryson 808 Wilshire Boulevard Site 450 Santa Monica CA 90401 | robins@robinscloud.com; rbryson@robinscloud.com | Email |
| Counsel for ELLIOTT MANAGEMENT CORPORATION, on behalf of itself and certain funds and accounts managed, advised, or sub-advised by it | ROPES & GRAY LLP | Attn: Gregg M. Galardi, Keith H. Wofford, Daniel G. Egan 1211 Avenue of the Americas New York NY 10036-8704 | mark.bane@ropesgray.com; matthew.roose@ropesgray.com | Email |
| Counsel for The Baupost Group L.L.C., as the managing general partner and/or investment manager for certain entities | Ropes & Gray LLP | Attn: Matthew M. Roose, Mark I. Bane 1211 Avenue of the Americas New York NY 10036-8704 | peter.welsh@ropesgray.com; joshua.sturm@ropesgray.com; patricia.chen@ropesgray.com | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for The Baupost Group L.L.C., as the managing general partner and/or investment manager for certain entities | Ropes & Gray LLP | Attn: Peter L. Welsh, Joshua Y. Sturm, & Patricia I. Chen Prudential Tower 800 Boylston Street Boston MA 02199-3600 | keith.wofford@ropesgray.com; daniel.egan@ropesgray.com | Email |
| Counsel for ELLIOTT MANAGEMENT CORPORATION, on behalf of itself and certain funds and accounts managed, advised, or sub-advised by it | ROPES & GRAY LLP | Attn: Stephen Moeller-Sally, Matthew L. McGinnis Prudential Tower, 800 Boylston Street Boston MA 02199-3600 | ssally@ropesgray.com; matthew.mcginnis@ropesgray.com | Email |
| Counsel for Creditor ARB, INC. | RUTAN & TUCKER, LLP | Attn: Roger F. Friedman, Philip J. Blanchard 611 Anton Boulevard Suite 1400 Costa Mesa CA 92626-1931 | pblanchard@rutan.com | Email |
| | San Francisco City Attorney's Office | Attn: Owen Clements | Owen.Clements@sfcityatty.org Catheryn.Daly@sfcityattyorg | Email |
| Counsel for International Business Machines Corp. | Satterlee Stephens LLP | Attn: Christopher R. Belmonte, Esq., Pamela A. Bosswick, Esq. 230 Park Avenue New York NY 10169 | cbelmonte@ssbb.com; pbosswick@ssbb.com | Email |
| COUNSEL TO MARIE VALENZA, BRANDEE GOODRICH, KRISTAL DAVIS-BOLIN, ASHLEY DUITSMAN, BARBARA MORRIS, MARY HAINES | SAVAGE, LAMB & LUNDE, PC | ATTN: E. RYAN LAMB 1550 Humboldt Road, Suite 4 CHICO CA 95928 | erlamblaw@gmail.com | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for Turner Construction Company Case | Seyfarth Shaw LLP | Attn: M. Ryan Pinkston, Christopher J. Harney<br>560 Mission Street<br>Suite 3100<br>San Francisco CA 94105 | charney@seyfarth.com | Email |
| Counsel for East Bay Community Energy Authority | Shemanolaw | Attn: David B. Shemano<br>1801 Century Park East Suite 1600<br>Los Angeles CA 90067 | dshemano@shemanolaw.com | Email |
|  | Shulman Hodges &Bastian LLP | Attn: Leonard N. Shulman, Melissa Davis Lowe | mlowe@shpllp.com | Email |
| Counsel for TURN – The Utility Reform Network | Silicon Valley Law Group | Attn: David V. Duperrault, Kathryn E. Barrett<br>One North Market Street<br>Suite 200<br>San Jose CA 95113 | dvd@svlg.com | Email |
| Counsel to the Board of PG&E Corporation and Pacific Gas and Electric Company and Certain Current and Former Independent Directors | SIMPSON THACHER & BARTLETT LLP | Attn: Michael H. Torkin, Nicholas Goldin, Kathrine A. McLendon, Jamie J. Fell<br>425 Lexington Avenue<br>New York NY 10017 | michael.torkin@stblaw.com;<br>ngoldin@stblaw.com;<br>kmclendon@stblaw.com;<br>jamie.fell@stblaw.com | Email |
|  | Singleton Law Firm, APC | Attn: Gerald Singleton & John C. Lemon | john@slffirm.com | Email |
| Counsel for Creditor and Party-in-Interest Sonoma Clean Power Authority | Sonoma Clean Power Authority | Attn: Jessica Mullan, General Counsel<br>50 Santa Rosa Avenue<br>Fifth Floor<br>Santa Rosa CA 95494 | jmullan@sonomacleanpower.org | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for Southern California Edison Company | Southern California Edison Company | Attn: Julia A. Mosel, Patricia A. Cirucci 2244 Walnut Grove Avenue 3rd Floor Rosemead CA 91770 | Julia.Mosel@sce.com; patricia.cirucci@sce.com | Email |
| | Steve Christopher | | sc2104721@gmail.com | Email |
| Counsel to Allianz Global Corporate & Specialty | Stevens & Lee, P.C. | Attn: Constantine D. Pourakis 485 Madison Avenue 20th Floor New York NY 10022 | lpg@stevenslee.com | Email |
| Counsel to Allianz Global Corporate & Specialty | Stevens & Lee, P.C. | Attn: Leonard P. Goldberger 620 Freedom Business Center Suite 200 King of Prussia PA 19406 | cp@stevenslee.com | Email |
| Counsel for Liberty Mutual Life Insurance Company | Stewart Sokol & Larkin LLC | Attn: Jan D. Sokol, Esq., Kevin M. Coles, Esq. 2300 SW First Avenue, Suite 200 Portland OR 97201 | kcoles@lawssl.com | Email |
| Counsel for Tanforan Industrial Park, LLC | STEYER LOWENTHAL BOODROOKAS ALVAREZ & SMITH LLP | Attn: Jeffrey H. Lowenthal One California Street Third Floor San Francisco CA 94111 | jlowenthal@steyerlaw.com | Email |
| | STRADLING YOCCA CARLSON & RAUTH, P.C. | ATTN: PAUL R. GLASSMAN | pglassman@sycr.com | Email |
| Counsel for Mizuho Bank, Ltd. | STROOCK & STROOCK & LAVAN LLP | Attn: David W. Moon 2029 Century Park East Los Angeles CA 90067-3086 | khansen@stroock.com; egilad@stroock.com; mgarofalo@stroock.com | Email |
| Counsel for JPMorgan Chase Bank, N.A., as DIP Administrative Agent | Stroock & Stroock & Lavan LLP | Attn: Frank A. Merola 2029 Century Park East Los Angeles CA 90067-3086 | fmerola@stroock.com | Email |

1017500.2

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for JPMorgan Chase Bank, N.A., as DIP Administrative Agent | Stroock & Stroock & Lavan LLP | Attn: Kristopher M. Hansen, Erez E. Gilad, Matthew G. Garofalo 180 Maiden Lane New York NY 10038-4982 | khansen@stroock.com; egilad@stroock.com; mgarofalo@stroock.com; holsen@stroock.com; mspeiser@stroock.com; kpasquale@stroock.com; smillman@stroock.com | Email |
| Counsel for Mizuho Bank, Ltd. | STROOCK & STROOCK & LAVAN LLP | Attn: Mark A. Speiser, Kenneth Pasquale, Sherry J. Millman, Harold A. Olsen 180 Maiden Lane New York NY 10038-4982 | dmoon@stroock.com | Email |
| Counsel for Creditors Public Entities Impacted by the Wildfires | Stutzman, Bromberg, Esserman & Plifka, P.C. | Attn: Sander L. Esserman, Cliff I. Taylor 2323 Bryan Street Suite 2200 Dallas TX 5201-2689 | esserman@sbep-law.com; taylor@sbep-law.com | Email |
| Counsel for BrightView Enterprise Solutions, LLC, Counsel for Granite Construction Incorporated, BrightView Landscape Services, Inc. | Taylor English Duma LLP | Attn: John W. Mills, III 1600 Parkwood Circle Suite 200 Atlanta GA 30339 | jmills@taylorenglish.com | Email |
| Counsel to Road Safety, Inc. | The Bankruptcy Group, P.C. | Attn: Stephan Brown and Daniel Griffin 3300 Douglas Blvd. Ste. 100 Roseville CA 95661 | daniel@thebklawoffice.com | Email |
| Counsel for The Davey Tree Expert Company | The Davey Tree Expert Company | Attn: Erika J. Schoenberger, General Counsel 1500 N. Mantua Street Kent OH 44240 | Erika.Schoenberger@davey.com | Email |

**Exhibit A – Service List Email Only**

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel to Compass Lexecon, LLC | TOGUT, SEGAL & SEGAL LLP | Attn: Albert Togut, Kyle J. Ortiz, Amy M. Oden, Amanda C. Glaubach One Penn Plaza Suite 3335 New York NY 10119 | altogut@teamtogut.com; kortiz@teamtogut.com; aoden@teamtogut.com; aglaubach@teamtogut.com | Email |
| Counsel for Southern Power Company | TROUTMAN SANDERS LLP | Attn: Harris B. Winsberg, Esq., Matthew G. Roberts, Esq. 600 Peachtree St. NE Suite 3000 Atlanta GA 30308 | harris.winsberg@troutman.com; matthew.roberts2@troutman.com | Email |
| Counsel for TURN – The Utility Reform Network | TURN—The Utility Reform Network | Attn: Mark Toney, Thomas Long 785 Market St Suite 1400 San Francisco CA 94103 | mtoney@turn.org; tlong@turn.org | Email |
| Interested Party | Union Pacific Railroad Company | Attn: Tonya W. Conley, Lila L. Howe 1400 Douglas Street STOP 1580 Omaha NE 68179 | bankruptcynotices@up.com | Email |
| US Securities and Exchange Commission | US Securities and Exchange Commission | Attn: Jina Choi, Regional Director San Francisco Regional Office 44 Montgomery Street, Suite 2800 San Francisco CA 94104 | secbankruptcy@sec.gov | Email |
| US Securities and Exchange Commission | US Securities and Exchange Commission | Attn: Office of General Counsel 100 F St. NE MS 6041B Washington DC 20549 | sanfrancisco@sec.gov | Email |
| Counsel to Public Employees Retirement Association of New Mexico | WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP | Attn: James M. Wagstaffe & Frank Busch 100 Pine Street Suite 725 San Francisco CA 94111 | wagstaffe@wvbrlaw.com;busch@wvbrlaw.com | Email |

1017500.2

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Individual Plaintiffs Executive Committee appointed by the California Superior Court in the North Bay Fire Cases, Judicial Council Coordination Proceeding Number 4955, Pursuant to the terms of the Court's Case Management Order No. 1 | Walkup Melodia Kelly & Schoenberger | Attn: Michael A. Kelly, Khaldoun A. Baghdadi, Max Schuver 650 California Street 26th Floor San Francisco CA 94108 | mkelly@walkuplawoffice.com; kbaghdadi@walkuplawoffice.com; mschuver@walkuplawoffice.com | Email |
| Counsel for Aera Energy LLC, Midway Sunset Congeneration Company | Walter Wilhelm Law Group a Professional Corporation | Attn: Riiley C. Walter, Michael L. Wilhelm 205 E. River Park Circle Suite 410 Fresno CA 93720 | rileywalter@W2LG.com; Mwilhelm@W2LG.com | Email |
| Counsel for Engineers and Scientists of California, Local 20, IFPTE, Counsel for SEIU United Service Workers - West | Weinberg Roger & Rosenfeld | Attn: Emily P. Rich 1001 Marina Village Parkway Suite 200 Alameda CA 94501-1091 | cgray@unioncounsel.net | Email |
| Counsel for Sempra Energy, San Diego Gas & Electric Company, and Southern California Gas Company | White & Case LLP | Attn: J. Christopher Shore 1221 Avenue of the Americas New York NY 10020-1095 | cshore@whitecase.com | Email |
| Counsel for Sempra Energy, San Diego Gas & Electric Company, and Southern California Gas Company | White & Case LLP | Attn: Thomas E Lauria, Matthew C. Brown Southeast Financial Center 200 South Biscayne Boulevard, Suite 4900 Miami FL 33131-2352 | tlauria@whitecase.com; mbrown@whitecase.com | Email |

Exhibit A – Service List Email Only

| DESCRIPTION | NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|---|
| Counsel for Macquarie Energy LLC | Winston & Strawn LLP | Attn: Michael A. Yuffee 1700 K Street, N.W. Washington DC 20006-3817 | myuffee@winston.com | Email |
| Counsel for Official Committee of Tort Claimants | Baker& Hostetler, LLP | Attn: Eric Sagerman, Esq. and Cecily Dumas, Esq. 11601 Wilshire Boulevard Suite 1400 Los Angeles, CA 90025-0509 | esagerman@bakerlaw.com cdumas@bakerlaw.com | Email |
| Counsel for Official Committee of Tort Claimants | Baker& Hostetler, LLP | Attn: Robert A. Julian, Cecily A. Dumas 1160 Battery Street Suite 100 San Francisco, CA 94111 | rjulian@bakerlaw.com cdumas@bakerlaw.com | Email |

1017500.2

**Exhibit B**

| DESCRIPTION | NAME | hADDRESS |
|---|---|---|
| Counsel to the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company | Akin Gump Strauss Hauer & Feld LLP | Attn: David P. Simmons<br>1999 Avenue of the Stars<br>Suite 600<br>Los Angeles, CA 90067 |
| Federal Energy Regulatory Commission | Federal Energy Regulatory Commission | Attn: General Counsel<br>888 First St NE<br>Washington DC 20426 |
| Counsel for City and County of San Francisco, including all of its agencies, departments, or instrumentalities | Greene Radovsky Maloney Share & Hennigh LLP | Attn: Edward J. Tredinnick<br>Four Embarcadero Center Suite 4000<br>San Francisco CA 94111-4106 |
| Counsel for DTE Stockton, LLC, Mt. Poso Congeneration Company, LLC f/k/a Mt. Poso Congeneration Company, L.P., Potrero Hills Energy Producers, LLC, Sunshine Gas Producers, LLC Woodland Biomass Power, LLC f/k/a Woodland Biomass Power Ltd. | Greene Radovsky Maloney Share & Hennigh LLP | Attn: Kevin S. Eckhardt<br>50 California Street<br>Suite 1700<br>San Francisco, CA 94111 |
| Internal Revenue Service | Internal Revenue Service | Centralized Insolvency Operation<br>2970 Market St<br>Philadelphia PA 19104-5016 |
| Interested Party John A. Vos | John A. Vos | 1430 Lincoln Avenue<br>San Rafael, CA 94901 |
| Counsel for Philip Verwey d/b/a Philip Verwey Farms | McCormick Barstow LLP | Attn: H. Annie Duong<br>Counsel for Philip Verwey d/b/a Philip Verwey Farms<br>7647 North Fresno Street<br>Fresno CA 93720 |
| Office of the United States Attorney for the Northern District of California | Office of the United States Attorney for the Northern District of California | Attn: Bankruptcy Unit<br>Federal Courthouse<br>450 Golden Gate Avenue<br>San Francisco CA 94102 |
| Interested Party Placer County Office of the Treasurer-Tax Collector | Placer County Office of the Treasurer-Tax Collector | Attn: Robert Kanngiesser<br>2976 Richardson Drive<br>Auburn CA 95603 |

| DESCRIPTION | NAME | hADDRESS |
|---|---|---|
| Counsel for City and County of San Francisco, including all of its agencies, departments, or instrumentalities | San Francisco City Attorney's Office | Attn: Owen Clements<br>1390 Market Street<br>7th Floor<br>San Francisco CA 94102 |
| U.S. Bankruptcy Court Northern District of CA | U.S. Bankruptcy Court Northern District of CA | Attn: Honorable Dennis Montali<br>PG&E Corp. Chambers Copy<br>450 Golden Gate Ave, 18th Floor<br>San Francisco CA 94102 |
| Nuclear Regulatory Commission | U.S. Nuclear Regulatory Commission | Attn: General Counsel<br>U.S. NRC Region IV<br>1600 E. Lamar Blvd. Arlington TX 76011 |
| Counsel for the United States Department of Energy | United States Department of Justice – Civil Division | Attn: Matthew J. Troy<br>1100 L Street, N.W.<br>Room 10030<br>Washington, DC 20530 |
| Interested Party | Union Pacific Railroad Company | Attn: Tonya W. Conley, Lila L. Howe<br>1400 Douglas Street<br>STOP 1580<br>Omaha, NE 68179 |
| Counsel for Ballard Marin Construction, Inc. | William Kastner | Attn: Todd W. Blischke<br>601 Union Street<br>Suite 4100<br>Seattle, WA 98101-2380 |
| Counsel for Official Committee of Tort Claimants | Baker& Hostetler, LLP | Attn: Eric Sagerman, Esq. and Cecily Dumas, Esq.<br>11601 Wilshire Boulevard<br>Suite 1400<br>Los Angeles, CA 90025-0509 |
| Counsel for Official Committee of Tort Claimants | Baker& Hostetler, LLP | Attn: Robert A. Julian, Cecily A. Dumas<br>1160 Battery Street<br>Suite 100<br>San Francisco, CA 94111 |
| | Davis Polk & Wardwell LLP | Attn: Andrew D. Yaphe<br>55 Hudson Yards<br>New York, NY 10001-2163 |
| Counsel for the Official Committee of Unsecured Creditors | Milbank LLP | Attn: Dennis F. Dunne, Samuel A. Khalil<br>2029 Century Park East, 33rd Floor<br>Los Angeles CA 90067 |

1017521.2

**Exhibit B – Service List by Mail Only**

| DESCRIPTION | NAME | hADDRESS |
|---|---|---|
| Office of the United States Trustee | Office of the United States Trustee | Attn: James L. Snyder, Esq. & Timothy Lafreddi, Esq., Marta E. Villacorta 450 Golden Gate Ave Suite 05-0153 San Francisco CA 94102 |