1  Dennis F. Dunne (admitted *pro hac vice*)
   Samuel A. Khalil (admitted *pro hac vice*)
2  MILBANK LLP
   55 Hudson Yards
3  New York, New York 10001-2163
   Telephone: (212) 530-5000
4  Facsimile: (212) 530-5219

5  and

6  Gregory A. Bray (SBN 115367)
   Thomas R. Kreller (SBN 161922)
7  MILBANK LLP
   2029 Century Park East, 33rd Floor
8  Los Angeles, CA 90067
   Telephone:  (424) 386-4000
9  Facsimile:  (213) 629-5063

10 *Counsel for the Official Committee
   of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br>**PG&E CORPORATION**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐   Affects PG&E Corporation<br>☐   Affects Pacific Gas and Electric Company<br>☑   Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE OFFICIAL COMMITTEE OF TORT CLAIMANT'S: (I) BAR DATE MOTION AND (II) ANGEION RETENTION APPLICATION**<br><br>Date:    June 26, 2019<br>Time:   9:30 a.m. (Pacific Time)<br>Place:   United States Bankruptcy Court<br>            Courtroom 17, 16th Floor<br>            450 Golden Gate Avenue<br>            San Francisco, CA 94102<br><br>Re:      Docket Nos. 2297 and 2303 |

The Official Committee of Unsecured Creditors (the "Committee") of PG&E Corp. and Pacific Gas and Electric Company (collectively, the "Debtors") hereby objects to both the: (i) *Motion Pursuant to 11 U.S.C. §§ 105(a), 501 and Fed. R. Bankr. P. 3001(a), 3003(c), 5005 and 9007 for Entry of an Order (I) Establishing a Bar Date for Filing Fire Claims, (II) Approving the Form and Procedures for Notice of the Bar Date for Fire Claims, and (III) Approving Supplemental Procedures for Notice of the Bar Date to Fire Claimants* (the "TCC Bar Date Motion") [Docket No. 2297]; and (ii) *Application Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002 to Retain and Employ Angeion Group, LLC as Fire Claim Bar Date Noticing Agent Effective as of May 22, 2019* (the "Angeion Retention Application") [Docket No. 2303] filed by the Official Committee of Tort Claimants (the "TCC") on May 31, 2019.[1]

**INTRODUCTION**

1. From the outset of these cases, the TCC has repeatedly emphasized to the Court that "*time is of the essence*"[2] because, among other things, "[t]he [50,000+] victims are desperately in need of assistance",[3] "displaced victims [face] significant hardship in their day to day lives",[4] and "[w]e hear every week on our weekly [TCC] telephone calls about how this case must move expeditiously and be resolved within six months."[5]

2. The Committee does not dispute these sentiments and indeed wholeheartedly agrees that it is imperative to bring these cases to an expeditious conclusion so that all unsecured creditors, including the fire victims, may be properly compensated. To achieve this overarching goal, the Committee is working diligently to advance these cases as fast as possible to the time

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the TCC Bar Date Motion.

[2] See Hr'g Tr. May 22, 2019 at 119:6-7.

[3] See *Official Committee of Tort Claimants' Limited Joinder, Objection and Counter Motion to Debtors' Wildfire Assistance Program Motion* [Docket No. 2013] at 12:22-23.

[4] Id. at 7:17-19, citing *Declaration of Robert A. Julian in Support of Official Committee of Tort Claimants' Limited Joinder, Objection and Counter Motion to Debtors' Wildfire Assistance Program Motion* [Docket No. 2021], at Exhibit H and *Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Fed. R. Bankr. P. 2002 and 6004(h) for an Order (A) Authorizing Debtors to Establish and Fund Program to Assist Wildfire Claimants with Alternative Living Expenses and Other Urgent Needs and (B) Granting Related Relief* (the "Wildfire Assistance Program Motion") [Docket No. 1777] at 8:3.

[5] See Hr'g Tr. May 8, 2019 at 53:11-13.

when a fair and equitable plan of reorganization can be confirmed, providing for prompt distributions to all holders of valid claims without undue delays and avoidable hardships. Establishing a bar date in the near term is an important step in that process.

3. Given this purportedly shared goal, the Committee is bewildered by the TCC's recent request to push the bar date to next year and its other litigation tactics that have already had, and are likely to continue to have, the effect of delaying even the initial necessary steps of setting the bar date, establishing appropriate notice procedures and commencing the claims reconciliation processes. Most importantly, however, the Committee believes that the TCC's request to set the bar date for fire victims for January 31, 2020—over seven months from now—is unwarranted, unreasonable and is not in the best interests of any unsecured creditors, including wildfire victims.

4. The TCC's efforts to commandeer critical elements of the claims process—including seeking the retention of yet another noticing agent—without so much as a conversation with the Debtors or the Committee is nothing but a turf war rather than an effort to move these cases forward in a constructive fashion. Rather than simply make its views known about the proposed bar date, proof of claim ("POC") form, and noticing program in an objection to the Debtors' initial bar date motion, the TCC elected to file its own competing motion, plus an application to employ a separate noticing agent, thus unnecessarily confusing and complicating matters—much like they did with respect to the motion to establish the wildfire victims fund. Moreover, while there may well be reasons for noticing procedures in these cases that are above and beyond those ordinarily employed, the TCC has not provided any credible evidence that the procedures and the timeline it has proposed strikes the right balance; its "arguments" are nothing but speculation and hyperbole. Nor has the TCC provided any competent evidence that a comprehensive notice program cannot be carried out in approximately 95 days. It is beyond peradventure that the unnecessary lengthening of the administration of these cases will ensure that all unsecured creditors, including the fire victims, are forced to wait longer than is necessary to receive the compensation from the Debtors' estates to which they are entitled.

5. Arguing for speed while actively seeking to delay these cases appears to be the TCC's strategy. For example, the TCC has proposed a POC form that requires little information

from fire victims.[6] The TCC justifies this proposal by asserting that extensive information about individual claimants' alleged damages are already available in the BrownGreer database—yet, for months now, the TCC has refused to share such information with anyone, choosing instead to leverage its control over this information to gain an upper hand in these cases. Such conduct is counterproductive and is hardly in the best interests of these estates and their creditors.

6. As was made clear in its *Statement Regarding Debtors' Bar Date Motion and the Competing Proof of Claim Forms Proposed by the TCC and the Ad Hoc Group of Subrogation Claimholders* (the "Statement") [Docket No. 2308], the objective of the Committee has always been "to establish the most effective and efficient method for gathering (and sharing among the relevant parties) the information that will be necessary to accurately assess the magnitude of the Debtors' claims pools." Statement at 2. The Committee has urged the TCC to share the claims information it has access to and acknowledged that the Committee would be prepared to accept the TCC's proposed POC form if such information became available to parties other than the TCC.

7. Since that time, rather than continue to fight with the TCC, the Debtors have agreed to use the TCC's POC form.[7] The Committee does not necessarily agree with that decision but understands the Debtors' desire to minimize the number of unresolved issues. However, the consequence of the TCC's both opposing the more detailed (but relatively straightforward) POC form proposed by the Debtors and refusing to share the purportedly substantial information already in its control, will result in a two-step bar date and discovery process that will inevitably lead to unnecessary delay and administrative expenses, rather than streamlining the claims and discovery process and expediting these cases as it has vociferously advocated.

8. Despite the Committee's efforts to prod the parties to these proceedings into sharing information that they have on hand and that is critical to estimating the magnitude of the Debtors' wildfire claim pools, negotiations have been beset by squabbling and gridlock, and the lion's share

---

[6] In addition, the TCC's proposed POC form does not require any supporting documentation, or any details regarding the nature or the quantification of the claim.

[7] The Committee does not concede that adoption of the TCC's POC form is proper. The Committee reserves its right to take discovery in connection with, among other things, all filed wildfire claims, including any and all related information possessed or controlled by the TCC, its advisors, its members and their respective attorneys.

of information remains under lock and key. As a consequence, the Committee has—reluctantly—served limited discovery upon the TCC and its members, the Debtors and the Subrogation Group in connection with the bar date motions seeking only the most basic data and information, including, with respect to the TCC, information necessary to access the BrownGreer database. The Committee took this step only after the Debtors withdrew their more comprehensive proof of claim form in favor of the TCC's form, and only to advance the ball in terms of information sharing. Rather than embrace what ought to be a common goal, the TCC responded with vitriol—accusing the Committee by letter of having served the discovery requests in bad faith and in violation of Rule 9011. The Committee is at a loss as to how the TCC can take this position, particularly when, as the TCC knows, the Committee has sought the same basic discovery of the Debtors and the Subrogation Group. The Committee believes, as it has said time and again, that this information must be shared as expeditiously as possible in order to advance these cases toward a swift and just conclusion.

9. In any case, now that the Debtors have agreed to accept the TCC's POC form, there is no credible argument as to why the bar date should be delayed until next year. Moreover, the Committee understands that the Debtors and their noticing agent, Prime Clerk, intend to supplement the proposed notice program by adopting some of the elements proposed by the TCC. The Committee believes that the notice program proposed by the Debtors already exceeds the requirements necessary to guarantee the wildfire claimants' due process rights. There is no reason or justification for the added expense of retaining an additional noticing agent in these cases.

10. For these reasons, the Committee objects both to the TCC Bar Date Motion and to the Angeion Retention Application, and urges the Court to approve the Debtors' proposed bar date and noticing program.

## BACKGROUND

11. The Debtors filed their *Motion Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for Order (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All*

*Creditors and Potential Creditors* (the "Bar Date Motion") [Docket No. 1784] on May 1, 2019. Among other things, the Bar Date Motion seeks to: (i) approve various POC forms;[8] and (ii) establish September 16, 2019 at 5:00 p.m. (Prevailing Pacific Time) as the deadline for creditors to file POCs (the "Debtors' Proposed Bar Date").[9]

12. On May 3, 2019, the TCC filed its *Motion of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R. Bankr. P. 3001(a) for Entry of an Order Approving Proposed Model Proof of Claim Form for Fire Claims and Related Procedures* (the "TCC POC Motion") [Docket No. 1824], seeking, among other things, approval of its own POC form (the "TCC POC Form") for asserting wildfire claims and certain procedures for submitting such claims.[10] The TCC POC Motion did not specify a specific bar date by which POCs would need to be filed nor did it request a different notice program.

13. The Debtors' Bar Date Motion was originally set to be heard on May 22, 2019. The TCC requested an adjournment to the June 11, 2019 hearing. On May 31, 2019, a mere eleven days before the June 11 hearing, the TCC filed the TCC Bar Date Motion and the Angeion Retention Application, along with an *ex parte* request to allow them to be heard on an expedited basis at the June 11, 2019 hearing.[11] On the same day, the TCC also served on the Debtors a deposition notice and request for production of documents regarding the Debtors' Proposed Bar Date. As pointed out in the *Preliminary Statement Updating the Court with Respect to the Status of the Debtors' Bar Date Motion and Related Noticing Motions and Pleadings* [Docket No. 2562], during the more than three weeks between the filing of the Debtors' Bar Date Motion and the TCC Bar Date Motion, the Debtors, the Committee and the TCC engaged in what the Committee

---

[8] The Committee understands that the POC form proposed for the subrogation claimants has been modified in response to the comments received from the Ad Hoc Group of Subrogation Claim Holders [Docket No. 2044].

[9] The Committee understands that the September 16, 2019 date was based on a 95-day notice period and that, because of the delay in obtaining the bar date order, the Debtors intend to extend the bar date accordingly.

[10] The Committee previously informed the Court of its position with respect to the TCC POC Motion in its Statement.

[11] The Court denied the motion to shorten notice.

believed to be good faith discussions regarding, among other things, the bar date.  Throughout this period, the TCC never mentioned its intention to file its own bar date motion or seek discovery in connection with the Bar Date Motion.[12]  The Court ultimately moved the hearing on the bar date issues to June 26, 2019—thus, the TCC's gamesmanship has already resulted in an over one month delay in establishing the bar date in these cases.

## OBJECTION

**A.     The Committee Supports the Debtors' Notice Procedures.**

14.     The Committee wishes that all creditors—including fire victims—receive ample notice of the bar date and a full and fair opportunity to file their POCs, as proper notice to creditors and complete information regarding the quantum of the Debtors' liabilities is necessary to formulate, negotiate, and ultimately confirm a plan in these cases.  As such, the Committee believes that a notice program is necessary that will give all of the Debtors' various creditors a fair and reasonable opportunity to assert their claims against the Debtors without unnecessary delay or waste of estate resources.  To that end, while the Committee is in favor of an expansive notice program, it is also mindful that, under applicable law, notice programs must only be "***reasonably*** calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their claims."  In re Eagle-Picher Indus., Inc., 137 B.R. 679, 682 (Bankr. S.D. Ohio 1992), citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also City of New York v. N.Y., N.H. & H.R. Co., 344 U.S. 293, 296 (1953) (applying Mullane due process requirements to bankruptcy cases); In re Robintech, 863 F.2d 393, 396 (5th Cir. 1989) (stating that Mullane requires that reasonable notice include all pertinent information and sufficient time for claimants to respond).

15.     While the Committee is not opposed to the additional notice procedures, provided they are consistent with the bar date proposed by the Debtors, it believes that, on the whole, the Debtors' proposed notice program is appropriate from both a legal and practical sense of informing all creditors, including the wildfire victims, of the time and manner for exercising their right to assert a claim against the estate(s).  The Committee understands that the Debtors are proposing to

---

[12]     It is questionable whether the TCC has standing to pursue the TCC Bar Date Motion.

7

Case: 19-30088    Doc# 2650    Filed: 06/19/19    Entered: 06/19/19 15:37:17    Page 7 of 9

modify their proposed program in response to some of the TCC's suggestions and hopes that the parties reach a consensual agreement on this issue (and stands ready to help facilitate such an agreement). The Committee is mindful, however, that, in light of the fact that the 2017 and 2018 wildfires were well publicized disasters, and, as such, their victims should already be well aware of these bankruptcy cases, further spending on a notice program may not necessarily improve notice, will have diminishing returns, and will exceed the legal requirement that only a ***reasonable*** effort be made to reach all creditors.

16. As the Court is well aware, the Debtors have already retained Prime Clerk to serve as the noticing agent in these cases. There is no justification for retaining yet another professional to serve in the same capacity or why Prime Clerk cannot adequately perform its assigned role. Moreover, as opposed to Prime Clerk, on information and belief, the Committee understands that Angeion has never been involved in a chapter 11 case and has been criticized for its administrative role in a number of class action cases. Accordingly, the Committee supports the Debtors' notice program as modified, and objects to the Angeion Retention Application.

**B.     The Committee Supports the Debtors' Proposed Bar Date.**

17. The TCC bases its request for a later bar date on two grounds: (i) extra time is required for fire claimants "to complete and submit the necessary claim forms" owing to their "deep, long-lasting psychological trauma";[13] and (ii) more time is required to notify all fire claimants regarding the deadline for filing POCs. The TCC has not provided any evidence, however, that any particular claimant cannot file a timely POC on account of this trauma, or that comprehensive notice cannot be provided by Prime Clerk in the allotted time. Rather, the TCC relies on the declarations by purported experts about the need for more notice and/or the capabilities of the fire victims.

18. Neither the Bankruptcy Code nor Bankruptcy Rules give specific guidance on establishing a bar date. Courts have, however, recognized that "it is manifest that fixing the

---

[13]     See *Objection of the Official Committee of Tort Claimants to Motion of the Debtors for Order (I) Establishing Deadline for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to All Creditors and Potential Creditors* at Exhibit H, *Declaration of Jeffrey R. Dion*, at 2: 20 and 3: 14-15.

number and identity of . . . claimants will lend considerable assistance to the process of arriving at a value of the claims." Eagle-Picher, 137 B.R. at 681. Determining the potential universe of a debtor's liabilities is important in the plan process, and any delay in establishing a bar date will only serve to delay any distributions to the fire victims.

19. The Committee recognizes the need for the Court to balance the objectives of assuring fair and proper notice to all unsecured creditors with the swiftest possible confirmation of a plan of reorganization so that the Debtors' creditors can be paid as soon as possible, especially given the circumstances of these cases. The Committee believes that the establishment of an approximately 95-day bar date period, ending in mid-October, coupled with the adoption of the modified notice procedures that include certain elements of the TCC's proposal will "thread this needle." If, on the other hand, a bar date is set for next year, a foreseeable consequence is a material delay in the plan process—which will only lead to additional uncertainty and risk while the Debtors languish in chapter 11. As such, the Committee requests that the TCC's request for a later bar date be denied.

## CONCLUSION

20. The Committee respectfully requests that the Court: (i) deny the TCC Bar Date Motion; (ii) approve the Debtors' Proposed Bar Date; (iii) deny the Angeion Retention Application; and (iv) grant such other and further relief as is just and reasonable.

Dated: June 19, 2019

**MILBANK LLP**

*/s/ Andrew M. Leblanc*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER
ANDREW M. LEBLANC

*Counsel for the Official Committee of Unsecured Creditors*