**WEIL, GOTSHAL & MANGES LLP**
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

**KELLER & BENVENUTTI LLP**
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>   - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                **Debtors.**<br><br>☒ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363 AND 105(a) FOR AN ORDER APPROVING TERMS OF EMPLOYMENT FOR NEW CHIEF EXECUTIVE OFFICER AND PRESIDENT OF PG&E CORPORATION**<br><br>Date: July 24, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 363 and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order approving the terms of employment for William D. Johnson as Chief Executive Officer ("**CEO**") and President of PG&E Corp. In support of the Motion, the Debtors submit the Declaration of Douglas J. Friske, Managing Director at Willis Towers Watson PLC (the "**Friske Declaration**") and the Declaration of Nora Mead Brownell, Chair of the Board of Directors of PG&E Corp. (the "**Brownell Declaration**"), filed contemporaneously herewith.

A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | JURISDICTION | 6 |
| II. | BACKGROUND | 6 |
| III. | PRELIMINARY STATEMENT | 6 |
| IV. | PG&E CORP.'S APPOINTMENT OF A NEW CHIEF EXECUTIVE OFFICER | 7 |
| | A. The Chief Executive Officer Candidate Search | 7 |
| | B. Mr. Johnson's Qualifications | 8 |
| V. | TERMS OF EMPLOYMENT | 9 |
| VI. | THE 2019 PERFORMANCE METRICS | 11 |
| VII. | BASIS FOR RELIEF REQUESTED | 12 |
| VIII. | REQUEST FOR 6004(H) WAIVER | 15 |
| IX. | NOTICE | 15 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 240 N. Brand Partners, Ltd.*,
    200 B.R. 653 (B.A.P. 9th Cir. 1996) ................................................................................... 13

*In re Adelphia Commc'ns. Corp.*,
    Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Mar. 7, 2003) ............................................. 14

*In re Calpine Corp.*,
    Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 15, 2005) ........................................... 14

*In re Chassix Holdings, Inc.*,
    Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 20, 2015) .......................................... 14

*In re Ernst Home Ctr., Inc.*,
    209 B.R. 974 (Bankr. W.D. Wash. 1997) .......................................................................... 13

*Gantler v. Stephens*,
    965 A.2d 695 (Del. 2009) ................................................................................................... 13

*In re Mirant Corp.*,
    Case No. 03-46591 (DML) (Bankr. N.D. Tex. Nov. 23, 2005) ........................................ 14

*In re Pace*,
    67 F.3d 187 (9th Cir. 1995) ............................................................................................... 13

*In re Saxman*,
    325 F.3d 1168 (9th Cir. 2003) ........................................................................................... 13

*In re WorldCom, Inc.*,
    Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Dec. 16, 2002) ........................................... 15

**Statutes**

11 U.S.C. § 105(a) ................................................................................................................. 2, 12, 13

11 U.S.C. § 363 ......................................................................................................... 2, 13, 12, 14, 15

11 U.S.C. § 503(c)(1) ..................................................................................................................... 14

11 U.S.C. § 1107(a) and 1108 .......................................................................................................... 6

28 U.S.C. § 157 ................................................................................................................................ 6

28 U.S.C. § 1334 .............................................................................................................................. 6

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

28 U.S.C. § 1408 ................................................................................................................. 6

28 U.S.C. § 1409 ................................................................................................................. 6

**Other Authorities**

Bankruptcy Rule 1015(b) .................................................................................................... 6

Bankruptcy Rule 2002 ...................................................................................................... 15

Bankrcupty Rule 5011-1(a) ................................................................................................ 6

Bankruptcy Rule 6004(h) ............................................................................................. 2, 15

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General
    Order 24 ........................................................................................................................ 6

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

## III. PRELIMINARY STATEMENT

On January 13, 2019, PG&E Corp. announced that its Board of Directors (the "**Board**") was conducting a search for a new CEO following the departure of Geisha Williams. At that time, the Board named John Simon as Interim Chief Executive Officer to temporarily fill the position while the Board engaged in its search for a permanent replacement. From the outset, the Board recognized that the recruitment of a permanent CEO with substantial safety and operational expertise was critical to the

long-term stability and success of PG&E Corp. and the Utility. Accordingly, after conducting a national search, on April 10, 2019, the Board[1] appointed William D. Johnson as CEO and President of PG&E Corp., effective May 2, 2019. Concurrent with his appointment as PG&E Corp.'s new CEO and President, Mr. Johnson was also appointed to the Utility's Board and to serve as a member of the Utility Board's Executive Committee, effective as of the same date.

Mr. Johnson brings substantial safety and operational expertise to the Debtors from his extensive career in the energy industry. With more than a decade of combined chief executive officer experience at two large utility companies, Mr. Johnson has a keen understanding of managing risk and the responsibility for providing safe and reliable service to the Debtors' 16 million customers. Most recently, as President and CEO of the Tennessee Valley Authority ("**TVA**"), Mr. Johnson was responsible for leading the nation's largest publicly-owned utility in its mission of providing energy, environmental stewardship, and economic development across a seven-state region. Moreover, during Mr. Johnson's tenure at the TVA, the organization achieved the best safety records in its 85-year history and was a perennial top decile safety performer in the utility industry.

Mr. Johnson is the right leader for PG&E Corp., as the Debtors work to further strengthen their safety culture, continue to implement rigorous safety initiatives, and navigate the challenges associated with these Chapter 11 Cases. Additionally, the terms of Mr. Johnson's proposed employment as CEO and President of PG&E Corp., including the incentive aspects thereof that are heavily-weighted to safety, are reasonable, appropriate, and should be approved. Notably, to place a greater emphasis on safety, the newly-constituted Board determined that Mr. Johnson's 2019 Performance-Based Awards (as defined below) should be subject to a downward modifier if the Debtors fail during the relevant performance period to meet the threshold or target performance metric most closely aligned with wildfire safety.

### IV. PG&E CORP.'S APPOINTMENT OF A NEW CHIEF EXECUTIVE OFFICER

#### A. The Chief Executive Officer Candidate Search

---

[1] The Board that appointed Mr. Johnson is the Board comprised of, among others, the ten new members appointed on April 9 and 10, 2019.

Upon the departure of Ms. Williams, the Board, led by members of its Nominating and Governance Committee composed entirely of independent directors, commenced a national search for a new CEO. The Board enlisted the assistance of Spencer Stuart, a global executive search and leadership consulting firm with over 60 years of experience finding qualified executives and board members across a range of industries, including the energy and utility sectors. Commencing in January 2019, Spencer Stuart assisted the Board with the identification of the most qualified individuals in the market of available candidates, vetted approximately 15 of such individuals, and provided the Board with input as to its view of the most appropriate and qualified candidate who is Mr. Johnson. After the appointment of the ten new Board members on April 9 and 10, 2019, the newly-constituted Board fully considered Mr. Johnson's qualifications and experience. The process culminated in the selection of Mr. Johnson as CEO and President.

### B. Mr. Johnson's Qualifications

As set forth above, for the past six years, Mr. Johnson has served as President and CEO of the TVA, with responsibility for leading the nation's largest publicly-owned utility in its mission of providing energy, environmental stewardship, and economic development across a seven-state region.

As stated, during Mr. Johnson's tenure at the TVA, the organization achieved the best safety records in its 85-year history and has been a perennial top decile safety performer in the utility industry. In that same period, Mr. Johnson led the retirement of more than half of the TVA's coal generation, resulting in an approximate 50% reduction of the TVA's carbon emissions over the last decade. Furthermore, Mr. Johnson was responsible for leading the generation of more than 50% of the TVA's energy from non-greenhouse gas emitting sources. He also oversaw the TVA's expansion into utility-scale solar (large-scale grid connected photovoltaic generation) in recent years, with the addition of approximately 1,000 megawatts (mWs) of generation capacity, and pursued the modernization of the TVA's hydro assets to increase the overall amount of renewable resources.

Prior to his tenure at the TVA, Mr. Johnson was the Chairman, President and CEO of Progress Energy, a Fortune 500 energy company that services approximately 3.1 million customers in the Carolinas and Florida, with more than 21,000 mWs of generation capacity and $9 billion in annual

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

revenues. Throughout his career in the electric utility industry, Mr. Johnson has collaborated closely with elected officials and other community leaders with the goal and mandate to deliver safe and reliable electricity to millions of customers.

The Board believes that Mr. Johnson is the right person to lead the Debtors through their Chapter 11 Cases and to navigate this complex and challenging period in PG&E Corp.'s history. With more than a decade of combined chief executive experience at two large utility companies, Mr. Johnson has a deep understanding of the Debtors' business operations, the risks that must be promptly addressed, and the responsibility of keeping customers and communities safe. Further, it is the Board's judgment that Mr. Johnson is well equipped and, indeed, fully committed, to address the Debtors' safety culture, to restore confidence, and to work constructively with regulators, policymakers, and other stakeholders in an open and transparent fashion in support of California's safety and other policy goals.

## V. TERMS OF EMPLOYMENT

On April 10, 2019, the Board formally appointed Mr. Johnson as CEO and President of PG&E Corp., effective May 2, 2019, and approved his proposed compensation arrangements, subject to development and approval of the Performance Metrics. As stated, concurrent with the effective date of his appointment as PG&E Corp.'s new CEO and President, Mr. Johnson was also appointed to the Utility's Board and to its Executive Committee.

The following is a summary of the material economic terms of Mr. Johnson's employment arrangements for a three-year employment period:[2]

| Category | Description |
|---|---|
| Base Salary | • Annual base salary of $2.5 million. |
| Transition Payment | • One-time cash transition payment of $3 million.[3] <br> • PG&E Corp.'s standard relocation policy for expenses relating to moving to California. |

---

[2] Mr. Johnson is currently being paid his compensation, subject to Court approval.

[3] Subject to claw-back and repayment in the event Mr. Johnson resigns or is terminated for "Cause" within 12 months of his start date. "Cause" is defined in the PG&E Corp. 2012 Officer Severance Policy.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| Category | Description |
|---|---|
| Equity Awards[4] | ● Equity awards will consist of (i) time based restricted stock units ("**RSUs**") and performance-based restricted stock units ("**PRSUs**"); and (ii) stock options ("**Options**"). [5]<br><br>● <u>RSUs and PRSUs</u>. Annual equity award with a target value of $3.5 million. 25% of such award consisting of RSUs and 75% of such award consisting of PRSUs.<br><br>● Each annual award of RSUs will vest in three equal installments on each of the first three anniversaries of the date of the grant.<br><br>● Each annual award of PRSUs will be subject to annual performance-based vesting metrics (the "**Performance Metrics**") described below. The first annual award of PRSUs will have a performance period beginning on April 1, 2019 and ending on December 31, 2019, and the second and third annual awards will have one-year performance periods ending on December 31, 2020 and December 31, 2021, respectively. As set forth below, the Performance Metrics for 2019 have been established, and consistent with customary practice, Performance Metrics for the ensuing two years will be established by the Board.<br><br>● <u>Stock Options</u>. One-time grant of three tranches of performance-based Options, (payable in cash or shares at Mr. Johnson's option) as follows: (i) tranche 1 consists of a maximum 1.2 million Options (800,000 Options at target level performance) with an exercise price of $25.00 per share exercisable until the fourth anniversary of the grant date, (ii) tranche 2 consists of a maximum 1.5 million Options (1 million Options at target level performance) with an exercise price of $40.00 per share exercisable until the fourth anniversary of the grant date, and (iii) tranche 3 consists of a maximum 1.6 million Options (approximately 1.1 million Options at target level performance) with an exercise price of $50.00 per share exercisable until the fifth anniversary of the grant date. Each tranche of Options will be subject to annual Performance Metrics and will be divided into three equal installments. The first installment of each tranche will have a performance period starting on April 1, 2019 and ending December 31, 2019. The second and third installments of each tranche will have one-year performance periods ending December 31, 2020 and December 31, 2021, respectively. Each tranche of Options will vest annually in three equal installments based on performance results certified by Internal Auditing and approved by the Compensation Committee**.** |
| Anti-Dilution | ● All equity incentive compensation will be subject to anti-dilution provisions upon a spin-off to shareholders and in connection with a rights offering to shareholders or other transactions in which |

---

[4] If Mr. Johnson's employment is terminated by PG&E Corp. for Cause, all outstanding equity awards will be forfeited for no consideration.
[5] The initial award of RSUs and PRSUs will be based on the volume-weighted average price of PG&E Corp. common stock for the 15 consecutive trading days immediately preceding April 3, 2019.

| Category | Description |
|---|---|
| | shareholders are subject to the same anti-dilution protections as Mr. Johnson. |
| Severance[6] | - If Mr. Johnson's employment is terminated by PG&E Corp. without Cause, Mr. Johnson will be entitled to a cash payment of $2.5 million.<br><br>- With respect to Mr. Johnson's RSUs, if Mr. Johnson's employment is terminated by PG&E Corp. without Cause, a pro-rated portion of Mr. Johnson's RSUs will vest proportionally based on the number of months that Mr. Johnson was employed in the current annual vesting period, divided by 12.<br><br>- With respect to Mr. Johnson's annual award of PRSUs, (i) if Mr. Johnson's employment is terminated by PG&E Corp. without Cause during the 2019 calendar year, a pro-rated portion of Mr. Johnson's PRSUs will vest proportionally based on the number of months that Mr. Johnson was employed in 2019, divided by 8 (the number of months from May 2, 2019 until year end), and achievement of his 2019 Performance Metrics, and (ii) if Mr. Johnson's employment is terminated by PG&E Corp. without Cause during the 2020 or 2021 calendar year, a pro-rated portion of Mr. Johnson's PRSUs will vest proportionally based on the number of months that Mr. Johnson was employed in 2020 or 2021, as applicable, divided by 12, and the achievement of the Performance Metrics for PRSUs granted for the prior year. |

The employment terms also include, among other things, customary health, retirement, and other benefits provided to senior executives of the Debtors.

## VI. THE 2019 PERFORMANCE METRICS

As the Court is aware, by Order dated April 29, 2019, it approved the Debtors' 2019 Short-Term Incentive Plan ("**2019 STIP**"), a broad-based program under which approximately 10,000 employees of the Debtors are eligible for awards based on achieving certain performance metrics. As set forth above, Mr. Johnson's annual grant of PRSUs and grant of Options are subject to the Performance Metrics. Mr. Johnson's 2019 annual grant of PRSUs and the first of three installments of Options have a performance period beginning April 1, 2019 and ending December 31, 2019 (collectively, the "**2019 Performance-Based Awards**"). Mr. Johnson's 2019 Performance-Based Awards vest annually.

---

[6] Any severance payments to be made to Mr. Johnson during the pendency of these Chapter 11 Cases shall be subject to the provisions of the Bankruptcy Code.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

In order to align Mr. Johnson's 2019 Performance-Based Awards with the performance metrics utilized in the 2019 STIP, the newly-constituted Board determined that the performance-based vesting conditions of Mr. Johnson's 2019 Performance-Based Awards should use the same Performance Metrics and weightings as the 2019 STIP, subject to the Public Safety Index ("**PSI**") modifier described below. The 2019 STIP calculates an overall company score by adding public and employee safety metrics weighted at 65%, financial metrics weighted at 25%, and customer metrics weighted at 10%, subject to a threshold, target, and maximum for each metric. To be consistent with the 2019 STIP, the Board determined that the payout ranges for all metrics of Mr. Johnson's 2019 Performance-based Awards would conform to the following payout ranges under the 2019 STIP:

- Threshold: 50% of target
- Target: 100% of target
- Maximum: 150% of target

Additionally, the Board determined that the Performance Metrics for Mr. Johnson's 2019 Performance-Based Awards should be further modified to place greater emphasis on the PSI metric, which is the metric most closely aligned with wildfire safety. More specifically, the PSI metric measures the electric operations safety subcomponent of the Debtors' safety metric (25% of the overall Performance Metrics). Accordingly, unlike the 2019 STIP, Mr. Johnson's 2019 Performance-Based Awards will be subject to a PSI modifier. If for the 2019 performance period, the aggregate score for the PSI metric is below threshold, the total payout for Mr. Johnson's 2019 Performance-Based Awards across all components will be reduced by 50%. If, for the 2019 performance period, the aggregate score for the PSI metric is at or above threshold but below target, the total payout for Mr. Johnson's 2019 Performance-Based Awards across all components will be reduced by 25%.

The Performance Metrics for 2019, which as stated, are the same as the 2019 STIP performance metrics, are annexed hereto as **Exhibit B**.

### VII. BASIS FOR RELIEF REQUESTED

The terms of Mr. Johnson's employment as CEO and President of PG&E Corp. should be approved pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use . . . , other than in the ordinary course of business, property of the estate." When construing this and similar provisions of the Bankruptcy Code, Bankruptcy Courts generally approve the use of property of the estate under § 363(b)(1) when a debtor presents a "valid business justification." *In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *see also In re Ernst Home Ctr., Inc.,* 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) (debtor's decision to enter into a transaction outside of the ordinary course under section 363(b)(1) must be based on "its reasonable business judgment"). Importantly, the business judgment rule creates "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Gantler v. Stephens*, 965 A.2d 695, 705 (Del. 2009) (citation omitted). Additionally, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." U.S.C. § 105(a); *In re Saxman*, 325 F.3d 1168, 1174 (9th Cir. 2003); *In re Pace*, 67 F.3d 187, 193 (9th Cir. 1995).

As stated above, the Debtors engaged in a national search for a new CEO to both successfully guide them through the Chapter 11 Cases and to provide the leadership necessary for the Debtors' long-term success and viability. This search culminated with Mr. Johnson who has both the operational expertise to oversee the Debtors' complex business enterprise and a keen focus on safety, which is of primary concern for the Debtors and their Board. Mr. Johnson just recently completed his tenure with the TVA, the country's largest publicly-owned utility, during which the TVA achieved the best safety record in its 85-year history. Additionally, Mr. Johnson has expertise in both solar and other renewable resources that will be important to the Debtors' operations moving forward.

The Debtors are at a critical juncture in their operations, public perception, and in the administration of these Chapter 11 Cases. The Debtors and their Board believe that Mr. Johnson, with his industry experience, safety record, and commitment to change, will reposition the Debtors, restore their reputation, substantially enhance their safety culture and goals, and position the Debtors for a successful emergence from chapter 11.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Moreover, the Debtors submit that the proposed compensation arrangements for Mr. Johnson are reasonable. As set forth in the Friske Declaration, the value of Mr. Johnson's compensation package, including the transition payment, is within the range of reasonableness in the market. Moreover, Mr. Johnson's compensation arrangements are more heavily focused on performance than is typical in the market, including the PRSUs and Options being tied to the Performance Metrics, which often is not the case. It also is important to note that Mr. Johnson's performance-based compensation has a particular emphasis on safety. The Performance Metrics prioritize safety by giving it a 65% weighting. Furthermore, as stated, the application of the PSI modifier reduces the aggregate number of PRSUs and Options if either threshold or target performance is not achieved with respect to the electric operations safety subcomponent of the Debtors' safety metric (25% of the overall Performance Metrics) which is most closely aligned with wildfire safety. Accordingly, as set forth in the Friske Declaration, given the challenges and uncertainties facing the Debtors, the proposed compensation to Mr. Johnson is reasonable and appropriate under the circumstances.

The Debtors do not believe that section 503(c)(1) of the Bankruptcy Code, which deals with retention of insiders, is at all relevant to the relief sought herein. First, the Motion seeks approval of an overall compensation arrangement for a new CEO, and not a KERP or a KEIP. Second, there are no retention payments provided for in the proposed compensation arrangements. Lastly, the Performance-Based Awards clearly are incentive based, as the Court already has recognized in connection with its approval of the 2019 STIP.

Lastly, numerous Bankruptcy Courts have authorized Debtors to employ high-ranking executives to help guide their restructuring process pursuant to section 363 of the Bankruptcy Code. *See, e.g., In re Chassix Holdings, Inc.*, Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 20, 2015) (approving interim chief financial officer and additional personnel); *In re Mirant Corp.*, Case No. 03-46591 (DML) (Bankr. N.D. Tex. Nov. 23, 2005) (approving debtors' entry into employment agreements); *In re Calpine Corp.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 15, 2005) (approving, among others, debtors' entry into employment agreements with chief financial officer and chief restructuring officer); *In re Adelphia Commc'ns. Corp.*, Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Mar. 7, 2003) (approving

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

under section 363 the employment and compensation of the debtors' (a) chairman and chief executive officer, and (b) president and chief operating officer, as "in the best interests of the [d]ebtors, their estate, their creditors and other parties-in interest"); *In re WorldCom, Inc.*, Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Dec. 16, 2002) (authorizing the employment of the president, chief executive officer and chairman of the board of directors as "necessary and in the best interests of the [d]ebtors and their estates").

Accordingly, the Debtors believe the appointment of Mr. Johnson as CEO and President of PG&E Corp. is in the best interests of the Debtors, their estates, and all parties is interest, and that his compensation arrangements and terms of employment should be approved.

## VIII. REQUEST FOR 6004(h) WAIVER

It is critical for the Debtors to establish the right leadership to ensure long-term stability and to effectively guide the Debtors through these Chapter 11 Cases. Thus, the Debtors request a waiver of the 14-day stay (to the extent such stay applies) of an order authorizing the use, sale, or lease of property outside the ordinary course of business under Bankruptcy Rule 6004(h). Accordingly, the Debtors request that the Court find that ample cause exists to grant a waiver of Bankruptcy Rule 6004(h) and waive the stay to the extent it applies.

## IX. NOTICE

Notice of this Motion will be provided to (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of PG&E Corp.'s business judgment and in the best interests of its estate, creditors, shareholders, and all other parties interests, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: June 19, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ *Stephen Karotkin*
      Stephen Karotkin

*Attorneys for Debtors and*
*Debtors in Possession*