WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>        **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br><br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)(Jointly Administered)<br><br>**DECLARATION OF NORA MEAD BROWNELL IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363 AND 105(a) FOR AN ORDER APPROVING TERMS OF EMPLOYMENT FOR NEW CHIEF EXECUTIVE OFFICER AND PRESIDENT OF PG&E CORPORATION**<br><br>Date: July 24, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>    Courtroom 17, 16th Floor<br>    San Francisco, CA 94102 |

I, Nora Mead Brownell, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

I am the independent, non-executive Chair of the Board of Directors (the "**Board**") of PG&E Corporation ("**PG&E Corp.**" and together with Pacific Gas and Electric Company, the "**Utility**," the "**Debtors**"). I am familiar with the Debtors' compensation programs, including the terms of employment for William D. Johnson as Chief Executive Officer ("**CEO**") and President of PG&E Corp. as set forth in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a) for an Order Approving Terms of Employment for New Chief Executive Officer and President of PG&E Corporation* (the "**Motion**").[1] I submit this Declaration (the "**Declaration**") in support of the Motion.

I am former Commissioner of the Federal Energy Regulatory Commission, a former member of the Pennsylvania Public Utility Commission and a former President of the National Association of Regulatory Utility Commissioners. I have served as a director of PG&E Corporation and Pacific Gas and Electric Company since April 2019. I previously served on the boards of National Grid (2012 to April 2019), Tangent (2000 to April 2019), Spectra Energy Partners (2007 to 2018), Oncor Inc. (2007 to 2014) and Comverge Inc. (2007 to 2014). In my current capacity as Chair of the Board, my duties include: (i) presiding at all meetings of PG&E Corp.'s Board and shareholders, (ii) presiding over, and establishing agendas for, executive session meetings of the Board, (iii) establishing and consulting regarding Board and committee meeting agendas and attendance, (iv) consulting regarding Board committee membership/chairmanship and director nominees, (v) responding in writing to correspondence addressed to the Board, and (vi) being available to host meetings with PG&E Corp.'s largest shareholders.

The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinion, my review of the relevant documents, and on information provided to me by the Debtors' employees, the Debtors' legal, restructuring, and other advisors, the Board's legal advisors, or from other members of the Board. While some of the events in my Declaration pre-date my service on

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion.

the Board, it is part of my duties and responsibilities to familiarize myself with and understand the prior history of PG&E Corp.'s search for a CEO. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

**A.      The Chief Executive Officer Candidate Search**

On January 13, 2019, PG&E Corp. announced that its Board was conducting a search for a new Chief Executive Officer ("**CEO**") following the departure of Geisha Williams. At that time, the Board named John Simon as Interim CEO while the Board searched for a permanent replacement. Upon the departure of Ms. Williams, the Board, led by members of its Nominating and Governance Committee commenced a national search for a new CEO. The Board enlisted the assistance of Spencer Stuart, a global executive search and leadership consulting firm with over 60 years of experience finding qualified executives and board members across a range of industries, including the energy and utility sectors. Commencing in January 2019, Spencer Stuart assisted the Board with the identification of the most qualified individuals in the market of available candidates, vetted approximately 15 of such individuals, and provided the Board with input as to its view of the most appropriate and qualified candidate who was Mr. Johnson. From the outset, the Board recognized that the recruitment of a permanent CEO with substantial safety and operational expertise was critical to the long-term stability and success of PG&E Corp. and the Utility.

Notably, after the appointment of ten new Board members on April 9 and 10, 2019, the newly-constituted Board fully considered Mr. Johnson's qualifications and experience. The process culminated in the selection of Mr. Johnson as CEO and President. Accordingly, on April 10, 2019, the Board appointed William D. Johnson as CEO and President of PG&E Corp., effective May 2, 2019. Concurrent with his appointment as PG&E Corp.'s new CEO and President, Mr. Johnson was also appointed to the Utility's Board and to serve as a member of the Utility Board's Executive Committee, effective as of the same date.

Mr. Johnson brings substantial safety and operational expertise to the Debtors from his extensive career in the energy industry. With more than a decade of combined chief executive officer experience

at two large utility companies, Mr. Johnson has a keen understanding of managing risk and the responsibility for providing safe and reliable service to the Debtors' 16 million customers. Most recently, as President and CEO of the Tennessee Valley Authority ("**TVA**"), Mr. Johnson was responsible for leading the nation's largest publicly-owned utility in its mission of providing energy, environmental stewardship, and economic development across a seven-state region. Moreover, during Mr. Johnson's tenure at the TVA, the organization achieved the best safety records in its 85-year history and was a perennial top decile safety performer in the utility industry. Mr. Johnson also led the retirement of more than half of the TVA's coal generation, resulting in an approximate 50% reduction of the TVA's carbon emissions over the last decade. Furthermore, Mr. Johnson was responsible for leading the generation of more than 50% of the TVA's energy from non-greenhouse gas emitting sources. He also oversaw the TVA's expansion into utility-scale solar (large-scale grid connected photovoltaic generation) in recent years, with the addition of approximately 1,000 megawatts (mWs) of generation capacity, and pursued the modernization of the TVA's hydro assets to increase the overall amount of renewable resources.

Prior to his tenure at the TVA, Mr. Johnson was the Chairman, President and CEO of Progress Energy, a Fortune 500 energy company that services approximately 3.1 million customers in the Carolinas and Florida, with more than 21,000 mWs of generation capacity and $9 billion in annual revenues. Throughout his career in the electric utility industry, Mr. Johnson has collaborated closely with elected officials and other community leaders with the goal and mandate to deliver safe and reliable electricity to millions of customers.

The Board has determined based on its considered judgment that Mr. Johnson is the right person to lead the Debtors through their Chapter 11 Cases and to navigate this complex and challenging period in PG&E Corp.'s history. With his chief executive officer experience at two large utility companies, Mr. Johnson has a deep understanding of the Debtors' business operations, the risks that must be promptly addressed, and the responsibility of keeping customers and communities safe.

Further, it is the Board's judgment that Mr. Johnson is well equipped and, indeed, fully committed, to address the Debtors' safety culture, to restore confidence, and to work constructively with

regulators, policymakers, and other stakeholders in an open and transparent fashion in support of California's safety and other policy goals.

### B. Terms of Employment

The following is a summary of the material economic terms of Mr. Johnson's employment arrangements for a three-year employment period: [2]

| Category | Description |
| --- | --- |
| Base Salary | • Annual base salary of $2.5 million. |
| Transition Payment | • One-time cash transition payment of $3 million.[3]<br>• PG&E Corp.'s standard relocation policy for expenses relating to moving to California. |
| Equity Awards[4] | • Equity awards will consist of (i) time based restricted stock units ("**RSUs**") and performance-based restricted stock units ("**PRSUs**"); and (ii) stock options ("**Options**"). [5]<br>• <u>RSUs and PRSUs</u>. Annual equity award with a target value of $3.5 million. 25% of such award consisting of RSUs and 75% of such award consisting of PRSUs.<br>• Each annual award of RSUs will vest in three equal installments on each of the first three anniversaries of the date of the grant.<br>• Each annual award of PRSUs will be subject to annual performance-based vesting metrics (the "**Performance Metrics**"). The first annual award of PRSUs will have a performance period beginning on April 1, 2019 and ending on December 31, 2019, and the second and third annual awards will have one-year performance periods ending on December 31, 2020 and December 31, 2021, respectively. As set forth below, the Performance Metrics for 2019 have been established, and consistent with customary practice, Performance Metrics for the ensuing two years will be established by the Board.<br>• <u>Stock Options</u>. One-time grant of three tranches of performance-based Options, (payable in cash or shares at Mr. Johnson's option) as follows: (i) tranche 1 consists of a maximum 1.2 million Options (800,000 Options at target level performance) with an exercise price of $25.00 per share exercisable until the fourth anniversary of |

---

[2] Mr. Johnson is currently being paid his compensation, subject to Court approval.
[3] Subject to claw-back and repayment in the event Mr. Johnson resigns or is terminated for "Cause" within 12 months of his start date. "Cause" is defined in the PG&E Corp. 2012 Officer Severance Policy.
[4] If Mr. Johnson's employment is terminated by PG&E Corp. for Cause, all outstanding equity awards will be forfeited for no consideration.
[5] The initial award of RSUs and PRSUs will be based on the volume-weighted average price of PG&E Corp. common stock for the 15 consecutive trading days immediately preceding April 3, 2019.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| | |
|---|---|
| | the grant date, (ii) tranche 2 consists of a maximum 1.5 million Options (1 million Options at target level performance) with an exercise price of $40.00 per share exercisable until the fourth anniversary of the grant date, and (iii) tranche 3 consists of a maximum 1.6 million Options (approximately 1.1 million Options at target level performance) with an exercise price of $50.00 per share exercisable until the fifth anniversary of the grant date. Each tranche of Options will be subject to annual Performance Metrics and will be divided into three equal installments. The first installment of each tranche will have a performance period starting on April 1, 2019 and ending December 31, 2019. The second and third installments of each tranche will have one-year performance periods ending December 31, 2020 and December 31, 2021, respectively. Each tranche of Options will vest annually in three equal installments based on performance results certified by Internal Auditing and approved by the Compensation Committee. |
| Anti-Dilution | • All equity incentive compensation will be subject to anti-dilution provisions upon a spin-off to shareholders and in connection with a rights offering to shareholders or other transactions in which shareholders are subject to the same anti-dilution protections as Mr. Johnson. |
| Severance[6] | • If Mr. Johnson's employment is terminated by PG&E Corp. without Cause, Mr. Johnson will be entitled to a cash payment of $2.5 million.<br><br>• With respect to Mr. Johnson's RSUs, if Mr. Johnson's employment is terminated by PG&E Corp. without Cause, a pro-rated portion of Mr. Johnson's RSUs will vest proportionally based on the number of months that Mr. Johnson was employed in the current annual vesting period, divided by 12.<br><br>• With respect to Mr. Johnson's annual award of PRSUs, (i) if Mr. Johnson's employment is terminated by PG&E Corp. without Cause during the 2019 calendar year, a pro-rated portion of Mr. Johnson's PRSUs will vest proportionally based on the number of months that Mr. Johnson was employed in 2019, divided by 8 (the number of months from May 2, 2019 until year end), and achievement of his 2019 Performance Metrics, and (ii) if Mr. Johnson's employment is terminated by PG&E Corp. without Cause during the 2020 or 2021 calendar year, a pro-rated portion of Mr. Johnson's PRSUs will vest proportionally based on the number of months that Mr. Johnson was employed in 2020 or 2021, as applicable, divided by 12, and the achievement of the Performance Metrics for PRSUs granted for the prior year. |

The employment terms also include, among other things, customary health, retirement, and other benefits provided to senior executives of the Debtors. As set forth above, Mr. Johnson's annual grant of

---

[6] Any severance payments to be made to Mr. Johnson during the pendency of these Chapter 11 Cases shall be subject to the provisions of the Bankruptcy Code.

PRSUs and grant of Options are subject to the Performance Metrics. Mr. Johnson's 2019 annual grant of PRSUs and the first of three installments of Options have a performance period beginning April 1, 2019 and ending December 31, 2019 (collectively, the "**2019 Performance-Based Awards**"). Mr. Johnson's 2019 Performance-Based Awards vest annually.

To align Mr. Johnson's 2019 Performance-Based Awards with the performance metrics utilized in the Debtors' 2019 Short Term Incentive Plan (the "**2019 STIP**"), the newly-constituted Board determined that the performance-based vesting conditions of Mr. Johnson's 2019 Performance-Based Awards should use the same Performance Metrics and weightings as the 2019 STIP, subject to the Public Safety Index ("**PSI**") modifier described below. The 2019 STIP calculates an overall company score by adding public and employee safety metrics weighted at 65%, financial metrics weighted at 25%, and customer metrics weighted at 10%, subject to a threshold, target, and maximum for each metric. To be consistent with the 2019 STIP, the Board determined that the payout ranges for all metrics of Mr. Johnson's 2019 Performance-based Awards would conform to the following payout ranges under the 2019 STIP:

- Threshold: 50% of target
- Target: 100% of target
- Maximum: 150% of target

Additionally, the newly-constituted Board determined that the Performance Metrics for Mr. Johnson's 2019 Performance-Based Awards should be further modified to place greater emphasis on the PSI metric, which is the metric most closely aligned with wildfire safety. More specifically, the PSI metric measures the electric operations safety subcomponent of the Debtors' safety metric (25% of the overall Performance Metrics). Accordingly, unlike the 2019 STIP, Mr. Johnson's 2019 Performance-Based Awards will be subject to a PSI modifier. If for the 2019 performance period, the aggregate score for the PSI metric is below threshold, the total payout for Mr. Johnson's 2019 Performance-Based Awards across all components will be reduced by 50%. If, for the 2019 performance period, the aggregate score for the PSI metric is at or above threshold but below target, the total payout for Mr. Johnson's 2019 Performance-Based Awards across all components will be reduced by 25%.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### C. Conclusion

The Board has determined in its judgment that Mr. Johnson is the right leader for PG&E Corp., as the Debtors work to further strengthen their safety culture, continue to implement rigorous safety initiatives, and navigate the challenges associated with these Chapter 11 Cases. Moreover, the Board believes the selection of the right leader for PG&E Corp. is critical to ongoing operations and to preserving and enhancing enterprise value for all stakeholders. Accordingly, it is imperative that the Debtors provide appropriate, market-based compensation and incentives to the CEO to ensure the success of the Debtors' restructuring efforts and business operations.

Additionally, I believe the terms of Mr. Johnson's proposed compensation, including the incentive aspects thereof, are reasonable and appropriate under the circumstances. As described above, the terms of Mr. Johnson's incentive compensation are heavily performance-based, with safety performance having the greatest impact on his compensation. If the Debtors fail to reach the target or threshold levels of the PSI metric, Mr. Johnson's 2019 Performance-Based Awards will be reduced by 25% or 50%, respectively, across all components. The Board approved the terms of Mr. Johnson's employment after substantial discussion and deliberation and upon consultation with the Board's and the Debtors' professional advisors, including Willis Towers Watson and Pay Governance. Thus, the Board believes the approval of Mr. Johnson's employment terms constitutes a proper exercise of the Debtors' business judgment and is in the best interest of the Debtors and their economic stakeholders.

Pursuant to section 1746 of title 28 of the United States Code, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: June 19, 2019
San Francisco, California

_____
Nora Mead Brownell
Chair of the Board, PG&E Corporation

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119