WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br> - and - <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br> **Debtors.** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> * *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case <br><br> No. 19-30088 (DM) <br><br> Chapter 11 <br><br> (Lead Case)(Jointly Administered) <br><br> **DECLARATION OF DOUGLAS J. FRISKE IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363 AND 105(a) FOR AN ORDER APPROVING TERMS OF EMPLOYMENT FOR NEW CHIEF EXECUTIVE OFFICER AND PRESIDENT OF PG&E CORPORATION** <br><br> Date: July 24, 2019 <br> Time: 9:30 a.m. (Pacific Time) <br> Place: United States Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 |

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

I, Douglas J. Friske, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

I am a Managing Director at Willis Towers Watson PLC ("**WTW**"). WTW has been retained by Weil, Gotshal & Manges LLP ("**Weil**") on behalf of PG&E Corp. (and, together with Pacific Gas and Electric Company, "**PG&E**" or the "**Debtors**") to provide compensation consulting services to the Debtors. I am familiar with the pre- and post-petition structure of the Debtors' compensation programs, including the terms of employment for William D. Johnson as Chief Executive Officer ("**CEO**") and President of PG&E Corp. as set forth in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a) for an Order Approving Terms of Employment for New Chief Executive Officer and President of PG&E Corporation* (the "**Motion**").[1] I submit this Declaration (the "**Declaration**") in support of the Motion.

The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinion, on information from the Debtors' books and records, the Debtors' employees, the Debtors' advisors and their employees, or from other members of the WTW team working under my supervision or direction. I have overseen a compensation consulting team since December 2018 that has provided various employee compensation consulting services to the Debtors.

I am not being specifically compensated for this testimony other than through payments received by WTW as a professional whose retention the Debtors will seek to obtain this Court's approval of pursuant to an application to be filed with this Court at a later date. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

My team and I have reviewed information supplied to us by members of the Debtors' management team and the Debtors' other advisors. For the reasons described below, it is my opinion that the compensation terms are reasonable in light of the Debtors' circumstances. Additionally, the implementation of the Debtors' proposed compensation terms will provide Mr. Johnson with a total compensation opportunity that is within the range of market practice among the Debtors' utility industry peers.

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion.

## A. Background and Qualifications

I received my Bachelor's degree in Finance from the University of Illinois in 1986. After working at Allstate and Chubb Insurance Companies, I returned to school at Northwestern University, where I received a Master's degree in Management from Northwestern University's J.L. Kellogg Graduate School of Management in 1990. Since that time, I have been employed by WTW or its predecessor firms.

WTW is an international professional services firm that offers a wide variety of services to public and private clients, including expert analysis of executive and management compensation. WTW designs and delivers solutions that manage risk, optimize benefits, cultivate talent, and expand the power of capital to protect and strengthen institutions and individuals. WTW focuses on four key business segments: corporate risk and brokering, human capital and benefits, exchange solutions, and investment, risk, and reinsurance.

My responsibilities at WTW have primarily involved consulting to large companies, specifically with regard to executive compensation. I have worked with numerous Fortune 1000 companies, and have participated in the development and design of hundreds of management and employee incentive plans for companies inside and outside of bankruptcy. I am frequently retained by large companies to advise them on their employee compensation strategies, programs and pay levels, including compensation programs for new and incumbent Chief Executive Officers.

I am highly experienced in executive, management, and employee compensation matters with more than 28 years of experience in the field. During this time, I have been the lead or supporting employee compensation expert in approximately 100 bankruptcy cases, and have frequently testified as to the reasonableness of a variety of post-petition compensation arrangements. Specifically, I have been involved in the review and design of key employee incentive plans, management incentive plans, and other similar-type plans in the chapter 11 cases of, among many, American Airlines, Avaya, Breitburn Energy Partners, Claire's Stores, Inc., Energy Future Holdings, GenOn, The Great Atlantic & Pacific Tea Company, Longview Power, Midstates, Orchard Brands, Orexigen, Penn Virginia, Pernix, RadioShack, Reader's Digest Association, Round Table Pizza, Sabine Oil & Gas, Samson Resources, Sbarro, Southeastern Grocers, VER Technologies, Sears Holdings Corporation, and Westmoreland Coal.

**B.     WTW's Involvement with the Debtors**

Since WTW was retained by Weil in December 2018, my team and I have familiarized ourselves with the Debtors' operations and business goals. At the start of our engagement, WTW discussed with the Debtors and their advisors the Debtors' operational history, financial performance, and various issues regarding the Debtors' workforce and employee programs.

As the Court is aware, I advised the Debtors in connection with the formulation of their recently approved 2019 STIP and I submitted a Declaration in support of the Debtors' motion seeking approval and implementation of the 2019 STIP. Over the course of these interactions, I reviewed the Debtors' compensation structure, which provides for a base salary supplemented by certain incentive programs.

My team and I collaborated with PG&E Corp.'s Compensation Committee of the Board of Directors (the "**Compensation Committee**"), the Board of Directors (the "**Board**"), and other outside advisors in reviewing and advising on the terms of Mr. Johnson's compensation. Among other things, my team and I provided input and advice on the terms of Mr. Johnson's compensation for reasonableness. A primary goal in the course of these interactions was to develop an independent assessment of Mr. Johnson's compensation that drew directly upon relevant market data.

**C.     Terms of Employment**

Pursuant to the Motion, the Debtors seek approval of Mr. Johnson's employment terms. The following is a summary of the material economic terms of Mr. Johnson's employment arrangements for a three-year employment period:

| **Category** | **Description** |
| --- | --- |
| Base Salary | ● Annual base salary of $2.5 million. |
| Transition Payment | ● One-time cash transition payment of $3 million.[2] |
| | ● PG&E Corp.'s standard relocation policy for expenses relating to moving to California. |

---

[2] Subject to claw-back and repayment in the event Mr. Johnson resigns or is terminated for "Cause" within 12 months of his start date. "Cause" is defined in the PG&E Corp. 2012 Officer Severance Policy.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| | | |
|---|---|---|
| Equity Awards[3] | | - Equity awards will consist of (i) time based restricted stock units ("**RSUs**") and performance-based restricted stock units ("**PRSUs**"); and (ii) stock options ("**Options**").[4]
- <u>RSUs and PRSUs</u>. Annual equity award with a target value of $3.5 million. 25% of such award consisting of RSUs and 75% of such award consisting of PRSUs.
- Each annual award of RSUs will vest in three equal installments on each of the first three anniversaries of the date of the grant.
- Each annual award of PRSUs will be subject to annual performance-based vesting metrics (the "**Performance Metrics**"). The first annual award of PRSUs will have a performance period beginning on April 1, 2019 and ending on December 31, 2019, and the second and third annual awards will have one-year performance periods ending on December 31, 2020 and December 31, 2021, respectively. As set forth below, the Performance Metrics for 2019 have been established, and consistent with customary practice, Performance Metrics for the ensuing two years will be established by the Board.
- <u>Stock Options</u>. One-time grant of three tranches of performance-based Options, (payable in cash or shares at Mr. Johnson's option) as follows: (i) tranche 1 consists of a maximum 1.2 million Options (800,000 Options at target level performance) with an exercise price of $25.00 per share exercisable until the fourth anniversary of the grant date, (ii) tranche 2 consists of a maximum 1.5 million Options (1 million Options at target level performance) with an exercise price of $40.00 per share exercisable until the fourth anniversary of the grant date, and (iii) tranche 3 consists of a maximum 1.6 million Options (approximately 1.1 million Options at target level performance) with an exercise price of $50.00 per share exercisable until the fifth anniversary of the grant date. Each tranche of Options will be subject to annual Performance Metrics and will be divided into three equal installments. The first installment of each tranche will have a performance period starting on April 1, 2019 and ending December 31, 2019. The second and third installments of each tranche will have one-year performance periods ending December 31, 2020 and December 31, 2021, respectively. Each tranche of Options will vest annually in three equal installments based on performance results certified by Internal Auditing and approved by the Compensation Committee. |
| Anti-Dilution | | - All equity incentive compensation will be subject to anti-dilution provisions upon a spin-off to shareholders and in connection with a rights offering to shareholders or other transactions in which shareholders are subject to the same anti-dilution protections as Mr. Johnson. |

---

[3] If Mr. Johnson's employment is terminated by PG&E Corp. for Cause, all outstanding equity awards will be forfeited for no consideration.

[4] The initial award of RSUs and PRSUs will be based on the volume-weighted average price of PG&E Corp. common stock for the 15 consecutive trading days immediately preceding April 3, 2019.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| | |
|---|---|
| Severance[5] | - If Mr. Johnson's employment is terminated by PG&E Corp. without Cause, Mr. Johnson will be entitled to a cash payment of $2.5 million.<br>- With respect to Mr. Johnson's RSUs, if Mr. Johnson's employment is terminated by PG&E Corp. without Cause, a pro-rated portion of Mr. Johnson's RSUs will vest proportionally based on the number of months that Mr. Johnson was employed in the current annual vesting period, divided by 12.<br>- With respect to Mr. Johnson's annual award of PRSUs, (i) if Mr. Johnson's employment is terminated by PG&E Corp. without Cause during the 2019 calendar year, a pro-rated portion of Mr. Johnson's PRSUs will vest proportionally based on the number of months that Mr. Johnson was employed in 2019, divided by 8 (the number of months from May 2, 2019 until year end), and achievement of his 2019 Performance Metrics, and (ii) if Mr. Johnson's employment is terminated by PG&E Corp. without Cause during the 2020 or 2021 calendar year, a pro-rated portion of Mr. Johnson's PRSUs will vest proportionally based on the number of months that Mr. Johnson was employed in 2020 or 2021, as applicable, divided by 12, and the achievement of the Performance Metrics for PRSUs granted for the prior year. |

The employment terms also include, among other things, customary health, retirement, and other benefits provided to senior executives of the Debtors. As set forth above, Mr. Johnson's annual grant of PRSUs and grant of Options are subject to the Performance Metrics. Mr. Johnson's 2019 annual grant of PRSUs and the first of three installments of Options have a performance period beginning April 1, 2019 and ending December 31, 2019 (collectively, the "**2019 Performance-Based Awards**"). Mr. Johnson's 2019 Performance-Based Awards vest annually.

In order to align Mr. Johnson's 2019 Performance-Based Awards with the performance metrics utilized in the 2019 STIP, the newly-constituted Board determined that the performance-based vesting conditions of Mr. Johnson's 2019 Performance-Based Awards should use the same Performance Metrics and weightings as the 2019 STIP, subject to the Public Safety Index ("**PSI**") modifier described below. The 2019 STIP calculates an overall company score by adding public and employee safety metrics weighted at 65%, financial metrics weighted at 25%, and customer metrics weighted at 10%, subject to a threshold, target, and maximum for each metric. To be consistent with the 2019 STIP, the Board

---

[5] Any severance payments to be made to Mr. Johnson during the pendency of these Chapter 11 Cases shall be subject to the provisions of the Bankruptcy Code.

determined that the payout ranges for all metrics of Mr. Johnson's 2019 Performance-based Awards would conform to the following payout ranges under the 2019 STIP:

- Threshold: 50% of target
- Target: 100% of target
- Maximum: 150% of target

Additionally, the Board determined that the Performance Metrics for Mr. Johnson's 2019 Performance-Based Awards should be further modified to place greater emphasis on the PSI metric, which is the metric most closely aligned with wildfire safety. More specifically, the PSI metric measures the electric operations safety subcomponent of the Debtors' safety metric (25% of the overall Performance Metrics). Accordingly, unlike the 2019 STIP, Mr. Johnson's 2019 Performance-Based Awards will be subject to a PSI modifier. If for the 2019 performance period, the aggregate score for the PSI metric is below threshold, the total payout for Mr. Johnson's 2019 Performance-Based Awards across all components will be reduced by 50%. If, for the 2019 performance period, the aggregate score for the PSI metric is at or above threshold but below target, the total payout for Mr. Johnson's 2019 Performance-Based Awards across all components will be reduced by 25%.

### D. Analysis of Total Target Direct Compensation

In assessing the reasonableness of Mr. Johnson's total target direct compensation, I worked with my team to analyze competitive total target direct compensation, a standard benchmark that includes base salary, target annual bonus, and long-term incentives.

My team and I developed competitive market total target direct compensation benchmarks from multiple data sources including (1) data from recently filed public proxy disclosures for 19 peer companies;[6] and (2) published survey data from the broader energy services industry. The market data represents a blend of 50% proxy data from the Peer Companies and 50% published survey data from the broader energy services industry. My team and I compared Mr. Johnson's total target direct compensation to the market rates of total target direct compensation. When compared to the market

---

[6] The peer companies include: Ameren Corporation; American Electric Power Company, Inc., CenterPoint Energy, Inc.; Consolidated Edison, Inc.; Dominion Energy, Inc.; DTE Energy Company; Duke Energy Corporation; Edison International; Entergy Corporation; Eversource Energy; Exelon Corporation; FirstEnergy Corp.; NextEra Energy, Inc.; Public Service Enterprise Group Incorporated; Sempra Energy; The AES Corporation; The Southern Company; WEC Energy Group, Inc.; and Xcel Energy Inc.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

data, Mr. Johnson's total target direct compensation falls between the 50th percentile and 75th percentile of the market.

My team and I also reviewed the structure of Mr. Johnson's incentive awards relative to our knowledge of utility industry practice, broader industry practice and CEO compensation within the context of a restructuring. Against all of these market reference points, it is my opinion that Mr. Johnson's compensation terms are more performance oriented than typical market practice. Specific features of the terms that are more performance oriented than typical market practice include:

   i. The absence of an annual cash incentive opportunity, which in this case has been replaced by the restricted stock unit awards;
   ii. Stock options with exercise prices that exceed the stock price on the date of grant;
   iii. Performance vesting conditions on stock options;
   iv. The use of a performance modifier (the PSI modifier) that is applied to all aspects of performance-conditioned awards; and
   v. A modifier that only applies a negative adjustment to an award that is determined based on the defined vesting conditions.

Furthermore, the use of equity awards and stock options to incent executives in a restructuring is highly unusual, creating greater incentives and corresponding risk of forfeiture or devaluation than would exist if the compensation was denominated solely in cash.

**F.    Conclusion**

WTW has reviewed Mr. Johnson's total target direct compensation and believes that the target pay opportunity is consistent with that provided to CEOs within the Debtors' industry. In addition, I believe the structure of Mr. Johnson's compensation is more highly performance oriented than typical market practice relative to the utility industry as well as other restructurings. Based on my experience and the work WTW and I have performed in these and similar cases, I believe Mr. Johnson's compensation is reasonable given the facts and circumstances of these Chapter 11 Cases.

Pursuant to section 1746 of title 28 of the United States Code, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: June 19, 2019

Chicago, Illinois

_____
Douglas J. Friske, Managing Director
Willis Towers Watson PLC