WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| - and - | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| Debtors. | **DECLARATION OF JOHN LOWE IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(c) FOR ENTRY OF AN ORDER (I) APPROVING DEBTORS' INCENTIVE PROGRAM FOR CERTAIN KEY EMPLOYEES AND (II) GRANTING RELATED RELIEF** |
| ☐ Affects PG&E Corporation ☐ Affects Pacific Gas and Electric Company ☒ Affects both Debtors | |
| *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date: July 24, 2019
Time: 9:30 a.m. (Pacific Time)
Place: United States Bankruptcy Court
Courtroom 17, 16th Floor
San Francisco, CA 94102 |

I, John Lowe, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

I am the Senior Director of Total Rewards of Pacific Gas and Electric Company (the "**Utility**" and together with PG&E Corporation, **"PG&E"** or the "**Debtors**"), and have served in my current role since 2016. In my current capacity as Senior Director of Total Rewards, I lead the Compensation and Benefits functions which are responsible for design and implementation of PG&E's compensation and benefits programs and practices. I joined PG&E in 2012 as Director of Executive Compensation before accepting my current position in June 2016. I have worked in the field of Human Resources for more than 35 years, 25 years of which have been specifically focused in the area of compensation. Prior to joining the Utility, I was the Manager of Compensation for Michigan-based energy provider DTE Energy Company, Director of Compensation and Benefits at Holly Automotive Division, Coltec Industries, and spent years consulting on compensation and benefits strategies with The UL Group, Ltd. Consulting firm. I hold a Bachelor of Science in Human Resources Management from Oakland University and a Master of Arts in Industrial Relations from Wayne State University.

I am knowledgeable and familiar with the Debtors' compensation and benefit programs, and the processes by which they are administered and developed. I am also generally familiar with the compensation practices of many of the Debtors' peer companies in the utility industry. I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(c) for Entry of an Order (i) Approving Debtors' Incentive Program for Certain Key Employees and (ii) Granting Related Relief* (the "**Motion**").[1] The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' other employees or the Debtors' legal, restructuring, or other advisors. If called upon to testify, I would testify to the facts set forth in this Declaration.

Over the past several months, the Debtors have worked with their advisors to formulate an appropriate incentive-based component for their senior executives' compensation program to address,

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

among other things, the pending Chapter 11 Cases. The ability to incentivize the Debtors' key employees, including senior executives, is critical to the Debtors' safe and reliable operation of their business and the maximization of enterprise value for all their economic stakeholders, including wildfire claimants. The Debtors and the Debtors' advisors, with the assistance of Willis Towers Watson ("**WTW**"), have conducted a thorough evaluation of the senior executives' incentive-based compensation and developed a key employee incentive program (the "**KEIP**"). The KEIP is designed to ensure that key members of the Debtors' executive officer team are properly incentivized to meet and exceed safety, financial, and operational targets through the opportunity to earn market compensation. The KEIP participants currently consist of 12 senior executive officers (excluding the Chief Executive Officer) (collectively, the "**KEIP Participants**"). The KEIP is designed to align the interests of KEIP Participants with the Debtors' various stakeholders by providing incentives to meet challenging performance targets as well as to enable the KEIP Participants to achieve a market rate of compensation, but only if the incentive targets are reached.

The Debtors established the metrics for the KEIP by considering, among other things, the Debtors' safety, financial, and operational goals with an emphasis on safety, to ensure that the metrics are challenging and drive enhanced performance by the KEIP Participants. In considering these objectives, the Debtors looked to the Debtors' 2019 short-term incentive program approved by this Court on April 29, 2019 (the "**2019 STIP**") to establish the appropriate metrics. Consistent with the 2019 STIP, the KEIP is entirely incentive-based, conditioning the cash and equity portion of the awards (the equity portion being in the form of performance-based restricted stock units ("**PRSUs**")) granted under the incentive program (the "**KEIP Awards**") on the Debtors meeting carefully designed safety, financial, and operational metrics (collectively the "**Performance Metrics**").

**A.    KEIP Participants**

The KEIP is limited to the Debtors' 12 most senior executives. In selecting the pool of KEIP Participants, the Debtors identified their most senior officers whose performance would have the greatest impact on the Debtors' operations, safety, and the administration of these Chapter 11 Cases. The KEIP Participants are largely responsible for the Debtors' ongoing day-to-day operations and guiding the

Debtors' overall business strategy. The KEIP Participants, individually and collectively, have the decision-making capacity and authority to materially influence the Debtors' safety, financial, and operational performance, ensuring safe and reliable service and that the value of the Debtors' business enterprise will be maximized for the benefit of all economic stakeholders. More importantly, the KEIP Participants are the individuals with the ultimate responsibility for overseeing the Debtors' safety initiatives and implementation and compliance with the Debtors' Wildfire Mitigation Plan. Additionally, the KEIP Participants have the added responsibility of fulfilling chapter 11 obligations, including, satisfying additional reporting obligations, developing and implementing reorganization strategy, spear-heading the chapter 11 plan formulation and negotiation process, participating in Court hearings and meetings with stakeholders, and performing other administrative and operational obligations.

Accordingly, it is imperative that the Debtors provide appropriate, market-based compensation and incentives to these employees to ensure the success of the Debtors' restructuring efforts and business operations.

### B. Historical Short-Term and Long-Term Incentive Plans

The Debtors developed and formulated the KEIP to be consistent with the Debtors' customary prepetition incentive programs, with an increased focus on safety and wildfire prevention. The Debtors' customary incentive programs are a basic element of each executive's general market-based compensation package. Historically, the Debtors have maintained a STIP as well as an equity-based long-term incentive plan ("**LTIP**") that covered, among certain other employees, the KEIP Participants. As a result of the filing of these Chapter 11 Cases, the Debtors have suspended all LTIP equity grants to employees under the existing LTIP and did not include KEIP Participants (other than Mr. Welsch and Mr. Christopher who were recently promoted) in the 2019 STIP.[2] And, as the Court is aware, no STIP payments were made to any employees for the 2018 fiscal year. Accordingly, at this time, the KEIP

---

[2] Mr. Welsch and Mr. Christopher, who were recently promoted to SVP and Chief Nuclear Officer and VP, Gas Operations respectively, each participated in the 2019 STIP prior to their promotions. As a result of their promotions, they will no longer participate in the 2019 STIP and will be eligible to receive KEIP Awards on a prorated basis as of the effective date of their promotions.

Participants do not have any incentive-based element to their compensation structure, thereby resulting in their current compensation being substantially below market.

The target awards for the KEIP have been determined based on the historical STIP and LTIP target award values to provide the opportunity for the KEIP Participants to achieve market-based compensation for the 2019 fiscal year. Specifically, the target awards for the KEIP are based on 100% of the 2019 target STIP percentage opportunity for each participant plus 75% of the percentage opportunity of the 2019 target LTIP award for each participant, as approved by the Compensation Committee in December 2018, in each case subject to adjustment based on the Public Safety Index ("**PSI**") modifier (as described below).[3] The Debtors have reduced the value associated with the approved 2019 target LTIP award to account for, among other things, the cash component of the aggregate award (50%) and the shorter vesting period of the PRSU component.[4]

On June 14, 2019, the Compensation Committee of PG&E's Board (the "**Compensation Committee**") approved the KEIP. Notably, the Compensation Committee consists exclusively of outside directors, none of whom are participants in the KEIP. Before its approval, the Compensation Committee evaluated the proposed metrics and weighting and requested specific changes to its design, specifically the PSI modifier. Ultimately, the Compensation Committee determined that the KEIP was necessary to appropriately incentivize and align the KEIP Participants' goals and performance with those of the Debtors and the approximately 10,000 other employees participating in the 2019 STIP, including a particular emphasis on safety, and to provide the KEIP Participants with the opportunity to achieve a market rate of compensation, but only if the KEIP performance goals are achieved. In addition, the Compensation Committee consulted with Pay Governance ("**PG**"), an independent compensation consultant, to review the overall design of the awards and Performance Metrics of the KEIP.

---

[3] The targets for the 2019 STIP and 2019 LTIP programs were approved by the Compensation Committee prior to the filing of these Chapter 11 Cases. The KEIP Participants do not currently participate in the 2019 STIP, and the 2019 LTIP was not implemented.

[4] Under the 2019 LTIP plan that was not implemented, the share-based awards consisting of restricted stock units, performance shares, and stock options typically had vesting periods lasting three years and generally represented more than 50% of the value of an employee's incentive-based compensation.

### C. Summary of the KEIP

The following is a summary of the key terms of the KEIP:

1. **KEIP Participants**: Twelve senior executive officers, John Simon (EVP, Law, Strategy and Policy); Jason Wells (EVP and Chief Financial Officer); Janet Loduca (SVP and General Counsel); Melvin Christopher (VP, Gas Operations); Michael Lewis (SVP, Electric Operations; Julie Kane (SVP, Chief Ethics & Compliance Officer, & Deputy General Counsel); Dinyar Mistry (SVP, Human Resources, Shared Services and Chief Diversity Officer); Loraine Giammona (SVP and Chief Customer Officer); Fong Wan (SVP, Energy Policy & Procurement); Kathleen Kay (SVP and Chief Information Officer); James Welsch (SVP and Chief Nuclear Officer); and David Thomason (VP, CFO Utility and Controller).

2. **Total Program Cost**: The aggregate value of the KEIP Awards at grant range from $5,465,500 at threshold performance, $10,931,000 at target performance, and $16,396,500 at maximum performance. The potential awards consist of 50% cash and 50% PRSUs, with the PRSU value at settlement subject to market fluctuation of PG&E Corp.'s common stock from the date of the grant to the date the PRSUs are settled.[5] Accordingly, the actual value of earned awards may be above or below the threshold, target or maximum specified at grant as a result of the common stock price at settlement.

3. **Performance Period**: January 1, 2019 through December 31, 2019 (the "**Performance Period**").

4. **Form of KEIP Awards:** Incentive compensation will consist of (i) 50% cash and (ii) 50% PRSUs.

5. **Timing of KEIP Award Issuance and Payout:** Any cash component of the KEIP Awards, if earned, shall be paid in the first quarter of 2020. The PRSUs will be granted as soon as practicable after the Court's entry of an Order approving the KEIP on a date in compliance with the Debtors' Equity Grant Date Policy and, if earned and vested, will be settled in the first quarter of 2020. Any payout of cash or shares shall occur only after the certification of the Performance Metrics has occurred. The Company has the option of settling the PRSU component in cash.

6. **Performance Metrics and Weighting:**
    a) **Safety Metrics (inclusive of all safety-related Performance Metrics) (Weight: 65%):**
        (i) **Nuclear Reliability and Safety Indicator (Weight: 5%):** Measures nuclear power generation and safety based on performance indicators for nuclear power generation developed by the nuclear industry and applied to all U.S. nuclear power plants.
        (ii) **Public Safety Index (Weight: 25%):** This metric includes two equally weighted sub-metrics:
            - **Enhanced Vegetation Management ("EVM"):** EVM measures how many circuit miles of vegetation have been cleared under the EVM program within high-fire risk areas.

---

[5] The total values do not take into account (i) any reduction that would be made as a result of the application of the PSI modifier and (ii) any awards potentially offered to Additional KEIP Participants.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- **System Hardening:** System hardening measures completed circuit miles within high-fire risk areas such as the updating or undergrounding of overhead circuitry.

      **(iii) First-Time ILI Miles (Weight: 10%):** Measures the number of miles of natural gas transmission pipelines that were successfully inspected for the first time following the introduction of inspection tools (sensors) within the pipelines.

      **(iv) Asset Records Duration Index (Weight: 10%):** Tracks the average number of days required to complete appropriate documentation of electric and gas construction projects.

      **(v) Serious Injuries and Fatalities Corrective Actions Index (15%):** Measures the quality (as determined by an independent safety expert) and timeliness of corrective actions implemented in response to employee and contractor serious injuries and fatalities events.

    **b) Customer Satisfaction (Weight: 10%):** Measures the number of customer complaints escalated to the CPUC.

    **c) Financial Performance (Weight: 25%):** Earnings from Operations ("**EFO**"): Measures financial performance from ongoing core operations calculated as net income adjusted for income or expenses associated with events or circumstances outside of ongoing core operations.

7. **Award Payout Levels**: KEIP Participants are eligible to receive:
   - *Below Threshold KEIP Performance*: If threshold performance is not achieved, there is no award.
   - *Threshold KEIP Performance*: 50% of the Target KEIP Award is earned if the Debtors meet but do not exceed the threshold performance levels.
   - *Target KEIP Performance*: 100% of the Target KEIP Award is earned if the Debtors achieve, but do not exceed target performance levels.
   - *Maximum KEIP Performance*: 150% of Target KEIP Awards is earned if the Debtors meet maximum performance levels.

Notwithstanding the foregoing, if the aggregate score for the PSI metric (a) is below threshold level, the KEIP Awards that otherwise would be made shall be reduced by 50%; or (b) is at or above threshold level but below target level, the KEIP Awards that otherwise would be made shall be reduced by 25%.

8. **Computing Payout Levels:** KEIP Awards between (i) threshold and target and (ii) target and maximum will be interpolated on a linear basis.

9. **Public Safety Index Modifier:** As set forth above, a PSI modifier of -25% and -50% will be applied if the PSI metric does not reach target or threshold levels respectively. The PSI metric measures the electric operations safety component of the safety metric (25% of the 65% overall safety metric) and is most closely aligned with wildfire safety. Accordingly, if for the Performance Period, the aggregate score for the PSI metric is below threshold, the total payout for participant's 2019 KEIP Awards across all components will be reduced by 50%  If, for the Performance Period, the aggregate score for the PSI metric is at or above threshold but below target, the total payout for the participant's 2019 KEIP Awards across all components will be reduced by 25%.

10. **Eligibility to Receive KEIP Award Payout upon Termination**: Each KEIP Participant shall only be eligible to receive a KEIP Award payout if such participant is employed by the Debtors as of the end of the Performance Period; *provided, however*, that if a KEIP

Participant is terminated without cause or without "good reason" or similar standard, or upon disability, retirement or death, such KEIP Participant will remain eligible to receive a prorated share of the KEIP Award based on the percentage of time the KEIP Participant remained employed during the Performance Period as if such participant was still employed at the end of the Performance Period. In addition, all KEIP Awards are subject to claw-back under PG&E Corp.'s Executive Incentive Compensation Recoupment Policy.

11. **Replacement of KEIP Participants**: In the event that a KEIP Participant's employment with the Debtors ends during the Performance Period, and the Debtors determine that an appropriate replacement should be made, either by external hire or by promotion from within, the new executive shall be eligible to receive a prorated share of the applicable KEIP Award based on the Performance Period for which they are employed; *provided, however,* that in no event shall the KEIP Award available to such new executive exceed the maximum award available to the departed executive, less any amounts paid to such departed executive.

12. **Additional KEIP Participants**: The Debtors shall have the ability to provide KEIP Awards for up to two (2) additional KEIP Participants in 2019, whether hired externally or promoted from within, whose job role and responsibilities would have qualified such executive to participate in the KEIP if they had held such position at the time of the KEIP's approval. The KEIP Awards available to such additional participants shall be determined in a manner consistent with the manner in which awards were determined for the initial KEIP Participants and shall not exceed in the aggregate a maximum value of $4,000,000.

The foregoing results in the following estimated award amounts: [6]

| | | | (All amounts are in 000s) | | |
|---|---|---|---|---|---|
| **Incumbent** | **Position** | **Base Salary** | **FY2019 Threshold KEIP $ Value** | **FY2019 Target KEIP $ Value** | **FY2019 Maximum KEIP $ Value** |
| Simon, John | EVP, Law, Strategy, & Policy | $695 | $917 | $1,834 | $2,751 |
| Wells, Jason | EVP and Chief Financial Officer | $630 | $892.5 | $1,785 | $2,678 |
| Loduca, Janet | SVP and General Counsel | $575 | $651.5 | $1,303 | $1,954 |
| Christopher, Melvin | VP, Gas Operations | $307 | $226.5 | $453 | $680 |
| Welsch, James | SVP and Chief Nuclear Officer | $545 | $407.5 | $815 | $1,222 |
| Lewis, Michael | SVP, Electric Operations | $450 | $379 | $758 | $1,136 |
| Kane, Julie | SVP, Chief Ethics & Compliance Officer & Deputy GC | $473 | $385.5 | $771 | $1,157 |
| Mistry, Dinyar | SVP, HR, Shared Services & Chief Diversity Officer | $565 | $413.5 | $827 | $1,240 |
| Giammona, Loraine | SVP and Chief Customer Officer | $505 | $395.5 | $791 | $1,186 |
| Wan, Fong | SVP, Energy Policy & Procurement | $414 | $368 | $736 | $1,104 |
| Kay, Kathleen | SVP and Chief Information Officer | $415 | $254 | $508 | $761 |
| Thomason, David | VP, CFO Utility and Controller | $325 | $176.5 | $353 | $529 |
| Total | | $5,899 | $5,466 | $10,931 | $16,397 |

Like the 2019 STIP, the proposed KEIP heavily prioritizes safety performance metrics by giving

---

[6] These amounts are rounded and do not take into account (i) any reduction that would be made as a result of the application of the PSI modifier and (ii) any awards potentially offered to Additional KEIP Participants.

them a 65% weighting. Financial performance metrics are given a 25% weighting and customer-related performance metrics are given a 10% weighting.[7] In addition, the Debtors developed the Performance Metrics to incorporate certain independent benchmarks directly related to wildfire safety and regulatory compliance. For example, the Nuclear Safety and Reliability Indicator metric is based on an industry wide standard that measures a nuclear power plant's safety and reliability. The Serious Injuries and Fatalities Corrective Actions Index metric is based on the assessment of an independent safety expert who is responsible for reviewing all corrective actions. The applicability of the PSI metric is based on the Utility's Wildfire Mitigation Plan and is subject to revision if the California Public Utilities Commission requires changes. As with the 2019 STIP, the KEIP Awards can be *completely* eliminated for any reason, whether performance targets are met or not, in the discretion of the Board or Compensation Committee.[8] And, as with the 2019 STIP, such discretion applies either to the entire program or on an individual participant basis. It also is important to note that implementation of the KEIP will provide the KEIP Participants with the opportunity to achieve a market rate of compensation, but only if the incentive targets are achieved.

Furthermore, as described above, because the KEIP applies to the Debtors' most senior officers, the KEIP places increased emphasis on the PSI metric, which is directly related to the Debtors' implementation of their Wildfire Mitigation Plan. If the Debtors do not achieve the threshold level for the PSI metric,ive, the full KEIP Awards will be reduced by 50%. If the Debtors achieve the threshold level, but do not achieve the target level, the KEIP Awards will be reduced by 25%. And again, because the KEIP applies to the Debtors' senior officers, awards, if any, are made only at the end of the annual Performance Period and not quarterly as is the case with the 2019 STIP. Accordingly, it is my view that the KEIP's design and scope is reasonable, with a clear focus on safety and other incentives that are

---

[7] For more information on the Performance Metrics and payout levels, see the testimony of John Lowe, Senior Director of Total Rewards of the Utility, incorporated fully within this Declaration. Hr'g Tr. April 23, 2019; *Notice Regarding Filing of Documents Used During Oral Testimony at Hearing on STIP Motion*; *Corrected Declaration of Dinyar Mistry in support of Corrected Motion for Entry of Order Approving Short-Term Incentive Plan* [Docket No. 806]; and *Corrected Declaration of Douglas J. Friske in support of Motion for Entry of An Order (I) Approving Short-Term Incentive Plan and (II) Granting Related Relief* [Docket No. 807].

[8] The Compensation Committee has the discretion to approve the payout of all KEIP Awards for the KEIP Participants that report directly to the CEO. The full Board has the discretion to approve the payout of all KEIP Awards for those KEIP Participants that report directly to the Board.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

value enhancing and will promote a successful reorganization. Having attended all the Compensation Committee meetings at which the KEIP was discussed, it is also my view that the KEIP's implementation reflects a sound exercise of the Debtors' business judgment.

It is clear to me that the Performance Metrics are not easily achievable or "layups." Rather, the Performance Metrics are intended to be challenging yet achievable. The Performance Metrics are largely based on the metrics used in the 2019 STIP, but with an added condition that automatically reduces the aggregate awards if either threshold or target performance is not achieved with respect to the PSI metric, thereby further demonstrating that achieving a KEIP Award is hardly a layup. The Debtors have only achieved their target STIP metrics in five of the past nine years and have never achieved a maximum score, providing further evidence that historically the Debtors have not established metrics that are easily achievable. By its design, the KEIP is a true incentive plan not only because of the Performance Metrics, but also because awards are not guaranteed. Rather, as with the 2019 STIP, the KEIP is an "at-risk" plan, which provides no guaranty of payment, but is comprised of weighted metrics, each designed specifically to motivate the KEIP Participants to achieve the Debtors' safety, financial, and operational goals, and with complete final discretion left with the Compensation Committee and Board, as applicable.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct.

Dated: June 19, 2019
       San Francisco, California

_____
John Lowe
Senior Director of Total Rewards
Pacific Gas and Electric Company

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119