**EXHIBIT I**

Robert A. Julian (SBN 99469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.442.8875
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                              Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE OF PG&E CORPORATION AND PACIFIC GAS AND ELECTRIC COMPANY AND REQUEST FOR PRODUCTION OF DOCUMENTS AT DEPOSITION UNDER FED. R. BANKR. P. 9014, 7030, 7034 AND FED. R. CIV. P. 30(b)(6) & 34 [BAR DATE MOTION; CONTESTED MATTER]**<br><br>Date:    June 6, 2019<br>Time:   9:00 a.m. PT<br>Place:  Skikos, Crawford, Skikos & Joseph, LLP<br>          One Sansome Street<br>          Suite 2830<br>          San Francisco, CA 94104 |

1

2     PLEASE TAKE NOTICE that pursuant to Rules 9014, 7030, and 7034 of the Federal Rules
3  of Bankruptcy Procedure and Rules 30(a)(1), 30(b)(2), 30(b)(6), and 34 of the Federal Rules of
4  Civil Procedure, the Official Committee of Tort Claimants (the "**TCC**") (a) will take the deposition
5  of PG&E Corporation (the "**Corporation**") and Pacific Gas and Electric Company (the
6  "**Company**") upon oral examination of one or more persons designated by the Corporation and the
7  Company who consents to testify on behalf of the Corporation and the Company as to matters
8  known or reasonably available to the Corporation and the Company with regard to the Bar Date
9  Motion (as defined below) and the topics set forth on Appendix A hereto consistent with the
10 definitions also set forth below; and (b) requests production of documents at the deposition in
11 response to the requests set forth on Appendix B hereto. The deposition will commence on
12 **Thursday, June 6, 2019**, starting at 9:00 a.m. PT and will be taken at Baker Hostetler LLP's office
13 located at Levi's Place, 1160 Battery Street East, Suite 100, San Francisco, California 94111. The
14 deposition will continue day to day until completed and shall be taken before any officer qualified
15 to administer oaths under the Federal Rules of Civil Procedure. The deposition testimony will be
16 recorded by stenographic means and audio-visual means. The deposition will continue until
17 completed as provided in the Federal Rules of Civil Procedure. The deposition will be taken for
18 the purposes of discovery, for use at hearings in the above captioned case, and for any other purpose
19 permitted under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure,
20 and the rules of this Court.

21 Dated: May 31, 2019

BAKER & HOSTETLER LLP

By: _/s/ Robert A. Julian_
     Robert Julian

*Attorneys for The Official Committee of Tort Claimants*

- 2 -

Case: 19-30088    Doc# 2844-9    Filed: 07/02/19    Entered: 07/02/19 18:16:23    Page 3 of 19

# APPENDIX A

- 3 -

Pursuant to Rules 9014 and 7030 of the Federal Rules of Bankruptcy Procedure, Rule 30(b)(6) of the Federal Rules of Civil Procedure, and the Local Rules of the United States Bankruptcy Court for the Northern District of California, the TCC requests that Debtors designate a representative or representatives to be deposed under oath and with personal knowledge to testify regarding the topics set forth below:

## DEFINITIONS

1. "And/Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

2. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

3. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

4. The term "Debtors" means Debtor Pacific Gas & Electric Company, and also Debtor PG&E Corporation, both collectively, and individually as a single Debtor.

5. The terms "Document," "document," "electronically stored information," and "tangible things" are defined to be synonymous in meaning and equal in scope to the usage of these terms in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations, and specifically including e-mails. A draft or non-identical copy is a separate document within the meaning of this term.

6. Additional terms utilized herein:
   a. The term "Bar Date Motion" shall mean the Motion filed on May 1, 2019 in the above captioned case at Docket Number 1784.
   b. The term "SEC" means the Securities and Exchange Commission.
   c. The term "Wildfire Claimants Form" means the form attached as Exhibit C-2 to the Bar Date Motion.
   d. The term "Jan. 2019 8-K" means the document attached as Exhibit A hereto.
   e. The term "Feb. 2019 8-K" means the document attached as Exhibit B hereto.

- 1 -

f. The term "Feb. 2019 Press Release" means the press release included in the Feb. 2019 8-K.

g. The term "Mar. 2019 10-Q" means the document attached as Exhibit C hereto.

h. The term "2015 Butte Fire" shall have the meaning used by the Debtors in the Feb. 2019 Press Release.

i. The term "2010 San Bruno Fire" shall mean the incident referred to by the Debtors in the Feb. 2019 Press Release and Feb. 2019 8-K.

j. The term "Declaration" means the Declaration of Kevin Orsini attached to the Bar Date Motion.

k. The terms "Wildfire Claims" and "Wildfire Claimants" shall have the meanings set forth in the Bar Date Motion.

## DEPOSITION TOPICS

1. The basis for the Debtors' statement in its Bar Date Motion that the Debtors do not have adequate information to estimate claims and that consequently the information must be included in the Wildfire Claimants Form (and the corresponding testimony in the Declaration).

2. The basis for the Debtors' statement in its Bar Date Motion that the Debtors do not have adequate information to estimate claims notwithstanding the Debtors estimating potential

- 2 -

losses from the 2017 and 2018 wildfires in its Jan. 2019 8-K at $30 billion or more, not including potential punitive damages, fines and penalties or damages related to future claims.

3. With respect to the statements on page 56 of the Debtors' Mar. 2019 10-Q, the basis for the Debtors' determination "that it is probable that [the Debtors] will incur a loss of $1.1 billion in connection with the 2015 Butte fire"; including but not limited to the following:

    a. how the Debtors "determined" the $1.1 billion loss; and

    b. the identification of the "assumptions about the number, size and type of structures damaged or destroyed, the contents of such structures, the number and types of trees damaged or destroyed, well as assumptions about personal injury damages, attorneys' fees, fire suppression costs, and certain other damages" the Debtors explained they made in order to estimate the $1.1 billion loss.

4. The basis for the Debtors' estimation of their potential losses from the 2017 and 2018 wildfires in their Jan. 2019 8-K and Feb. 2019 8-K at $30 billion or more, not including potential punitive damages, fines and penalties or damages related to future claims; including but not limited to the following:

    a. how the Debtors calculated such potential losses at $30 billion or more; and

    b. the identification of any assumptions about the number, size and type of structures damaged or destroyed, the contents of such structures, the number and types of trees damaged or destroyed, well as assumptions about personal injury damages, attorneys' fees, fire suppression costs, and certain other damages the Debtors made in order to estimate the $30 billion or more loss.

5. The basis for the Debtors' calculation and "estimation" of $1 billion, $2.5 billion, and $10.5 billion of "charges" and "losses the Company faces as a result of the 2017 and 2018

fires," as disclosed on the Company's Feb. 2019 Press Release, including, but not limited to the following:

    a. the identification of the fires and fire claims that are the subject of each charge and estimation;

    b. how the Debtors estimated the losses for the fire claims involved in each charge;

    c. the identification of any assumptions about the number, size and type of structures damaged or destroyed, the contents of such structures, the number and types of trees damaged or destroyed, well as assumptions about personal injury damages, attorneys' fees, fire suppression costs, and certain other damages the Debtors made in order to calculate or estimate the losses and charges;

    d. the basis for the Debtors' calculation of each charge and estimation;

    e. each step in the Debtors' calculation of the losses and charges;

    f. the identity of the documents and facts the Debtors relied upon in calculating each charge and estimate of the losses;

    g. the identity of each individual who participated in calculating each charge and estimating the losses, and their respective roles in the calculations and estimations; and

    h. the identification of each SEC Rule, Federal Regulation, Federal statutory (e.g., Sarbanes-Oxley provision), or accounting standard the Debtors contend they complied with in calculating the charges, estimating the

- 4 -

losses, and disclosing the charges and losses to the public in the Jan. 2019 8-K, Feb. 209 8-K, Feb. 2019 Press Release, and March 2019 10-Q filings.

    i.    The basis for the Debtors' estimations of their potential losses on, and settlements and payments of, claims arising out of or related to the 2015 Butte Fire and the 2010 San Bruno Fire, including:

        (i)    identifying each claim settled or paid by identifying the name of the claimant, the type of loss the claimant asserted against the Debtors, and the dollar amount of each loss the claimant asserted against the Debtors (if this information is set forth in a demand letter or settlement agreement, the Debtors may produce those documents

- 5 -

and authenticate them at the deposition as the documents that provide this information);

 (ii) how the Debtors estimated their potential liability or loss for each claim;

 (iii) how the Debtors determined each settlement or payment that resolved each claim;

 (iv) production of each claimant's demand for payment or settlement of each claim;

 (v) production of each settlement agreement and other document that sets forth the amount that the Debtors agreed to settle or pay each claim (redacted as to privacy matters);

 (vi) production of a summary of the dollar amounts each claimant demanded from the Debtors and the corresponding dollar amount the Debtors paid in settlement or payment of each claim.

j. How the Debtors have assessed their potential liabilities to the Wildfire Claimants.

k. The Documents in the Debtors' possession regarding each potential Wildfire Claim, including:

 (i) the relevant wildfire; the type of loss or injury;

 (ii) the location of the loss or injury;

 (iii) the type of damages asserted;

 (iv) whether the claim is covered by insurance; and

 (v) relevant coverage information.

# APPENDIX B

Pursuant to Rules 2004, 9014, 7034 of the Federal Rules of Bankruptcy Procedure, Rule 34 of the Federal Rules of Civil Procedure, and the Northern District Bankruptcy Local Rules, the TCC requests that Debtors produce the following documents, electronically stored information, and tangible things in their possession, custody, or control for inspection within four business days from entry of an order granting the Application, and copying undersigned counsel at the offices of Baker & Hostetler LLP, c/o Robert A. Julian, 1160 Battery Street East, Suite 100, San Francisco, CA 9411, using the Definitions and Instructions below.

## DEFINITIONS

7. "And/Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

9. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

10. The term "Debtors" means Debtor Pacific Gas & Electric Company, and also Debtor PG&E Corporation, both collectively, and individually as a single Debtor.

11. The terms "Document," "document," "electronically stored information," and "tangible things" are defined to be synonymous in meaning and equal in scope to the usage of these terms in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations, and specifically including e-mails. A draft or non-identical copy is a separate document within the meaning of this term.

12. Additional terms utilized herein:

    a. The term "Bar Date Motion" shall mean the Motion filed on May 1, 2019 in the above captioned case at Docket Number 1784.

    b. The term "SEC" means the Securities and Exchange Commission.

- 8 -

c.  The term "Wildfire Claimants Form" means the form attached as Exhibit C-2 to the Bar Date Motion.

d.  The term "Jan. 2019 8-K" means the document attached as Exhibit A hereto.

e.  The term "Feb. 2019 8-K" means the document attached as Exhibit B hereto.

f.  The term "Feb. 2019 Press Release" means the press release included in the Feb. 2019 8-K.

g.  The term "Mar. 2019 10-Q" means the document attached as Exhibit C hereto.

h.  The term "2015 Butte Fire" shall have the meaning used by the Debtors in the Feb. 2019 Press Release.

i.  The term "2010 San Bruno Fire" shall mean the incident referred to by the Debtors in the Feb. 2019 Press Release and Feb. 2019 8-K.

j.  The term "Declaration" means the Declaration of Kevin Orsini attached to the Bar Date Motion.

k.  The terms "Wildfire Claims" and "Wildfire Claimants" shall have the meanings set forth in the Bar Date Motion.

## INSTRUCTIONS FOR DOCUMENT PRODUCTION REQUESTS

Federal Rules of Civil Procedure 26–37, made applicable to this proceeding pursuant to Bankruptcy Rules 7026–7037 and Bankruptcy Rule 9014, are hereby incorporated by reference and apply to each of the following instructions:

1.  All Documents shall be identified by the Request(s) to which they are primarily responsive or be produced as they are maintained in the usual course of business.

2.  Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of a current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, or web-based email systems such as Gmail, Yahoo, etc.

- 9 -

3. You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third-party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

4. Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

5. Documents not otherwise responsive to these Requests should be produced: (i) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests; (ii) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests; or (iii) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

6. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

7. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

8. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request or part thereof, for each such Document, You must:

    (a) Identify the type, title and subject matter of the Document;

    (b) State the place, date, and manner of preparation of the Document;

    (c) Identify all authors, addressees, and recipients of the Document, including information about such Persons to assess the privilege asserted; and

    (d) Identify the legal privilege(s) and the factual basis for the claim.

9. Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 8 above must be provided.

10. To the extent a Document sought herein was at one time, but is no longer, in your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of. In each instance, Identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, Identify each Person having knowledge of the circumstances of the disposition, and Identify each Person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests are to be identified and produced.

## MANNER OF PRODUCTION

All Documents produced to the TCC shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

1. <u>Database load files and production media structure</u>: Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder. If any of the Documents produced in response to these Requests are designated as confidential pursuant to the Litigation Protective Order, in addition to marking the Documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the Document has been designated as confidential, as well as native file loading/linking information (where applicable).

2. <u>Electronic Documents and data, generally</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source

- 12 -

information, and searchable text as to allow the TCC, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

3. <u>Emails and attachments, and other email account-related Documents</u>: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the TCC.

4. <u>Documents and data created or stored in or by structured electronic databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the TCC to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

(a) XML format file(s);

(b) Microsoft SQL database(s);

(c) Access database(s); and/or

(d) fixed or variable length ASCII delimited files.

5. <u>Spreadsheets, multimedia, and non-standard file types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that

- 13 -

do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

6. <u>"Other" electronic Documents</u>: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

7. <u>Paper Documents</u>: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests.

## LIST OF DOCUMENTS REQUESTED FOR PRODUCTION

1. All Documents necessary for the witness to testify regarding the Topics set forth in the Notice of Deposition.

2. All Documents utilized by the Debtors' estimations of their potential losses on, and settlements and payments of, claims arising out of or related to the 2015 Butte Fire and the 2010 San Bruno Fire, including:

    (a) an identification of each claim settled or paid by identifying the name of the claimant, the type of loss the claimant asserted against the Debtors, and the dollar amount of each loss the claimant asserted against the Debtors (if this information is set forth in a demand letter or settlement agreement, the Debtors may produce those

- 14 -

documents and authenticate them at the deposition as the documents that provide this information);

  (b) each claimant's demand for payment or settlement of each claim;

  (c) each settlement agreement and other document that sets forth the amount that the Debtors agreed to settle or pay each claim (redacted as to privacy matters);

  (d) a summary of the dollar amounts each claimant demanded from the Debtors and the corresponding dollar amount the Debtors paid in settlement or payment of each claim.

3. All Documents utilized by the Debtors to estimate losses for the 2015 Butte Fire and 2017-2018 wildfires in its Jan. 2019 8-K, Feb. 2019 8-K, and May 2019 10-Q.