BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C**

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

HONORABLE CURTIS E.A. KARNOW, JUDGE PRESIDING

DEPARTMENT NUMBER 304

---oOo---

**CERTIFIED TRANSCRIPT**

COORDINATION PROCEEDING

SPECIAL TITLE [RULE 1550(b)]

CALIFORNIA NORTH BAY FIRE CASES                 Case No.: CJC-17-004955

_____/

Reporter's Transcript of Proceedings

Thursday, October 25, 2018

REPORTED BY:
MARY ANN SCANLAN, CSR NO. 8875 RMR-CRR-CCRR-CLR



SCANLAN STONE REPORTERS

Certified Shorthand Reporters
408 Columbus Avenue, Suite 2, San Francisco CA 94133
o / 415.834.1114   f / 415.399.9266
e / info@scanlanstone.com   w / scanlanstone.com

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2    FOR PLAINTIFFS:

 3        ABBEY, WEITZENBERG, WARREN & EMERY, PC
          100 Stony Point Road, Suite 200
 4        Santa Rosa, CA 95401
          707.542.5050
 5        BY:  BRENDAN M. KUNKLE, Attorney at Law (CourtCall)
               bkunkle@abbeylaw.com
 6
          MARY ALEXANDER & ASSOCIATES, P.C.
 7        44 Montgomery Street, Suite 1303
          San Francisco, California 94104
 8        415.433.4440
          BY:  MARY ALEXANDER, Attorney at Law
 9             malexander@@maryalexanderlaw.com
          BY:  SOPHIA ACHERMANN, Attorney at Law
10             sachermann@maryalexanderlaw.com

11        ANDREWS THORNTON
          2 Corporate Park, Suite 110
12        Irvine, California 92606
          949.748.1000
13        BY:  SEAN T. HIGGINS, Attorney at Law
               shiggins@andrewsthornton.com
14        BY:  ROBERT S. SIKO, Attorney at Law (CourtCall)
               rsiko@andrewsthornton.com
15
          BAUMAN LOEWE WITT & MAXWELL
16        8765 E. Bell Road, Suite 204
          Scottsdale, AZ  85260
17        480.502.4664
          BY:  A. SCOTT LOEWE, Attorney at Law (CourtCall)
18             sloewe@BLWMlawfirm.com

19        BERGER KAHN
          2 Park Plaza, Suite 650
20        Irvine, California 92614-8516
          949.474.1800
21        BY:  CRAIG S. SIMON, Attorney at Law
               csimon@bergerkahn.com
22

23

24

25        (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                    (CONTINUED)

 3    FOR PLAINTIFFS:

 4        BARON & BUDD, P.C.
          603 N. Coast Highway Suite G
 5        Solana Beach, California 92075
          415.310.7523
 6        BY:  BRITT STROTTMAN, Attorney at Law (CourtCall)
          bstrottman@baronbudd.com Attorney at Law
 7
          BARON & BUDD, P.C.
 8        3102 Oak Lawn Avenue, Suite 1100
          Dallas, Texas 75219
 9        214.521.3605
          BY:  JOHN FISKE, Attorney at Law
10             jfiske@baronbudd.com

11        THE LAW OFFICES OF SHAWN E. CAINE
          1221 Camino Del Mar
12        Del Mar, California 92014
          858.350.1660
13        BY:  SHAWN E. CAINE, Attorney at Law
               scaine@cainelaw.com
14
          COTCHETT, PITRE, SIMON & McCARTHY
15        San Francisco Airport Office Center
          840 Malcolm Road, Suite 200
16        Burlingame, California 94010
          BY:  FRANK M. PITRE, Attorney at Law
17             fpitre@cpmlegal.com
          BY:  ALISON E. CORDONVA, Attorney at Law
18             acordova@cpmlegal.com

19        COZEN O'CONNER
          101 Montgomery Stret, Suite 1400
20        San Francisco, California 94104
          415.593.9624
21        BY:  FULTON M. SMITH III, Attorney at Law
               fsmith@cozen.com
22

23

24

25        (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                    (CONTINUED)

 3   FOR PLAINTIFFS:

 4        COZEN O'CONNER
          501 West Broadway, Suite 1610
 5        San Diego, CA  92101
          619.685.1716
 6        BY:  KEVIN D. BUSH, Attorney at Law (CourtCall)
               kbush@cozen.com
 7
          CUTTER LAW PC
 8        401 Watt Avenue, Suite 100
          Sacramento, California 95864
 9        916.290.4900
          BY:  MATTHEW M. BREINING, Attorney at Law
10             (CourtCall)
               mbreining@cutterlaw.com
11
          DANKO MEREDITH
12        333 Twin Dolphin Drive, Suite 145
          Redwood City, California 94065
13        650.394.8672
          BY:  SHAWN R. MILLER, Attorney at Law (CourtCall)
14             smiller@dankolaw.com

15        DIXON DIAB & CHAMBERS
          501 W. Boradway, Suite 800
16        San Diego, California 92101
          619.354.2662
17        BY:  ED DIAB, Attorney at Law (CourtCall)
               diab@theddcfirm.com
18
          DREYER, BABICH, BUCCOLA, WOOD CAMPORA LLP
19        20 Bicentennial Circle
          Sacramento, California 95826
20        916.379.3500
          BY:  STEVEN M. CAMPORA, Attorney at Law
21             scampora@dbbwc.com

22

23

24

25        (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

Case: 19-30088    Doc# 2847-3    Filed: 04/15/19    Entered: 07/02/19 18:23:46    Page 5
of 70

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                      (CONTINUED)
       FOR PLAINTIFFS:
 3
          ENGSTROM LIPSCOMB & LACK
 4        10100 Santa Monica Boulevard, 16th Floor
          Los Angeles, California 90067-4107
 5        310.552.3800
          BY:  GREGROY P. WATERS, Attorney at Law (CourtCall)
 6             gwaters@elllaw.com
          BY:  ALEXANDRA J. NEWSOM, Attorney at Law
 7             (CourtCall)
               anewsom@elllaw.com
 8
          FOX LAW APC
 9        The Plaza Building
          225 W. Plaza Street, Suite 102
10        Solana Beach, California 92075
          BY:  JOANNA FOX, Attorney at Law
11             Joanna@FoxLawAPC.com

12        FRANTZ LAW GROUP
          402 W Broadway, Suite 860
13        San Diego, CA 92101
          619.233.5945
14        BY:  JAMES P. FRANTZ, Attorney at Law (CourtCall)
                jpf@frantzlawgroup.com
15        BY:  REGINA BAGDASARIAN, Attorney at Law
               (CourtCall)
16             rbagdasarian@frantzlawgroup.com

17        GILBERT LLP
          One Market, Spear Tower, 36th Floor
18        San Francisco, California 94105
          415.656.4014
19        BY:  PETER MERINGOLO, Attoreny at Law
               meringolop@gotofirm.com
20
          GOYETTE & ASSOCIATES
21        2366 Gold Meadow Way, Suite 200
          Gold River, California 95670-4471
22        916.851.1995
          BY:  GARY G. GOYETTE, Attorney at Law (CourtCall)
23             goyetteg@goyette-assoc.com

24

25          (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 6
of 70

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                   (CONTINUED)
     FOR PLAINTIFFS:
 3
          GROTEFELD HOFFMANN
 4        3718 SW Condor Avenue, Suite 100
          Portland, Oregon 97239
 5        503.384.2772
          BY:  WAYLON J. PICKET, Attorney at Law
 6             wpickett@ghlaw-llp.com

 7        GROTEFELD HOFFMANN LLP
          700 Larkspur Landing Circle, Suite 280
 8        Larkspur, California 94939-1755
          415.344.9670
 9        BY:  MAURA WALSH OCHOA, Attorney at Law
               mochoa@ghlaw-llp.com
10
          JACKSON & PARKINSON
11        205 West Alvarado Street, Suite 2
          Fallbrook, California 92028
12        760.723.1295
          BY:  ROBERT JACKSON, Attorney at Law
13             robert@jacksontriallawyers.com

14        LAW OFFICES OF JANG & ASSOCIATES, LLP
          1766 Lacassie Avenue, Suite 200
15        Walnut Creek, California 94596
          925.937.1400
16        BY:  ALAN J. JANG, Attorney at Law
               ajang@janglit.com
17        BY:  STEPHANIE YEE, Attorney at Law (CourtCall)
               syee@janglit.com
18        BY:  SALLY NOMA, Attorney at Law
               snoma@janglit.com
19
          LEVINS SIMES
20        44 Montgomery Street, 32nd Floor
          San Francisco, California 94104
21        415.426.3000
          BY:  AMY ESKIN, Attorney at Law
22             aeskin@levinsimes.com

23


24


25        (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                     (CONTINUED)

 3    FOR PLAINTIFFS:

 4        LIEFF CABRASER & HEIMANN
          275 Battery Street, Suite 3000
 5        San Francisco, California 94111
          415.956.1000
 6        BY:  LEXI J. HAZAM, Attorney at Law
               lhazam@lchb.com
 7        BY:  ABBY R. WOLF, Attorney at Law
               awolf@lchb.com
 8
          MATIASIC & JOHNSON, LLP
 9        44 Montgomery Street, Suite 3850
          San Francisco, California 94104
10        415.675.1089
          BY:  KELSEY F. MORRIS, Attorney at Law (CourtCall)
11             Morris@mjlawoffice.com

12        MCNICHOLAS & MCNICHOLAS, LLP
          10866 Wilshire Boulevard, Suite 1400
13        Los Angeles, California 90024
          310.474.1582 8
14        BY:  JUSTIN J. EBALLAR, Attorney at Law (CourtCall)
               jje@mcnicholaslaw.com
15
          RENNE PUBLIC LAW GROUP
16        350 Sansome Street, Suite 300
          San Francisco, California 94104
17        415.848.7200
          BY:  LORI S. LIU, Attorney at Law
18             lliu@publiclawgroup.com

19        ROBINS CLOUD
          808 Wilshire Boulevard, Suite 450
20        Santa Monica, California 90401
          310.929.4200
21        BY:  BILL ROBINS III, Attorney at Law (CourtCall)
               robins@robinscloud.com
22        BY:  ROBERT BRYSON, Attorney at Law
               rbryson@robinscloud.com
23        BY:  KEVIN M. POLOLACK, Attorney at Law (CourtCall)
               kpollack@robinscloud.com
24

25         (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

SCANLAN
STONE

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                      (CONTINUED)

 3   FOR PLAINTIFFS:

 4        LAW OFFICES OF ALEXANDER M. SCHACK, A.P.C.
          16870 West Bernardo Drive, #400
 5        San Diego, California 92127
          858.485.6535
 6        BY:  SHANNON F. NOCON, Attorney at Law (CourtCall)
               shannonnocon@amslawoffice.com
 7

          SCHROEDER LOSCOTOFF LLP
 8        7410 Greenhaven Drive, Suite 200
          Sacramento, California 95831
 9        916.438.8300
          BY:  ERIC M. SCHROEDER, Attorney at Law
10             emschroeder@calsubro.com

11        SIEGLOCK LAW
          1221 Camino Del Mar
12        Del Mar, California 92014
          858.793.0380
13        BY:  CHRISTOPHER SIEGLOCK, Attorney at Law (CourtCall)
               chris@sieglocklaw.com
14

          SINGLETON LAW FIRM
15        115 W. Plaza Street
          Solana Beach, California 92075
16        760.697.1330
          BY:  GERALD SINGLETON, Attorney at Law
17             gerald@slffirm.com

18        TERRY SINGLETON, APC
          1950 5th Avenue, Suite 200
19        san Diego, California 92101-2344
          619.239.3225
20        BY:  TERRY SINGLETON, Attorney at Law (CourtCall)

21        SKIKOS CRAWFORD SKIKOS JOSEPH & MILLICAN
          625 Market Street, 11th Floor
22        San Francisco, California 94105
          415.546.7300
23        BY:  STEVEN J. SKIKOS, Attorney at Law
               sskikos@skikos.com
24

25          (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                    (CONTINUED)

 3    FOR PLAINTIFFS:

 4        LAW OFFICES OF ROBERT A. STUTMAN
          1206 Corona Pointe Court, Suite 306
 5        Corona, California 92879
          951.387.4700
 6        BY:  TIMOTHY E. CARY, Attorney at Law (CourtCall)
              CaryT@StutmanLaw.com
 7
          SUSQUEHANNA INTERNATIONAL GROUP, LLP
 8        140 Broadway, 47th Floor
          New York, NY 10005
 9        212.514.4705
          BY:  DAVID S. GREENBERG, Interested Party
10            (CourtCall)

11        THOMPSON LAW OFFICES, P.C.
          700 Airport Boulevard, Suite 160
12        Burlingame, California 84010-1931
          650.513.6111
13        BY:  ROBERT W. THOMPSON, Attorney at Law
              (CourtCall)
14            bobby@tlopc.com

15        THORSNES BARTOLOTTA MCGUIRE
          2550 Fifth Avenue, Eleventh Floor
16        San Diego, California 92103
          619.236.9363
17        BY:  JOHN F. McGUIRE, Attorney at Law (CourtCall)
              mcguire@tbmlawyers.com
18
          TOSDAL LAW FIRM
19        777 S. Highway 101, Suite 215
          Solano Beach, California 92075
20        858.704.4710
          BY:  THOMAS TOSDAL, Attorney at Law (CourtCall)
21            tom@tosdallaw.com

22

23

24

25        (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 10
of 70

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                    (CONTINUED)

 3   FOR PLAINTIFFS:

 4        WALKUP, MELODIA, KELLY & SCHOENBERGER
          650 California Street, 26th Floor
 5        San Francisco, California 94108
          415.981.7210
 6        BY:  MICHAEL A. KELLY, Attorney at Law
               MKelly@WalkupLawOffice.com
 7        BY:  MAX SCHUVER, Attorney at Law
               mschuver@walkuplawoffice.com
 8        BY:  ANDREW MCDEVITT, Attorney at Law
               amcdevit@walkuplawoffice.com
 9
          WATTS GUERRA
10        811 Barton Springs Road, Suite 725
          Austin, Texas 78704
11        512.479.0500
          BY:  GUY L. WATTS, Attorney at Law (CourtCall)
12             gwatts@wattsguerra.com

13

14

15

16

17

18

19

20

21

22

23

24

25        (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 11
of 70

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                      (CONTINUED)

 3   FOR DEFENDANT PG&E:

 4        CLARENCE DYER & COHEN LLP
          899 Ellis Street
 5        San Francisco, California 94109
          415.749.1800
 6        BY:  KATE DYER, Attorney at Law
               kdyer@clarencedyer.com
 7
          CRAVATH, SWAINE & MOORE
 8        Worldwide Plaza
          825 Eighth Avenue
 9        New York, New York 10019
          BY:  KEVIN J. ORSINI, Attorney at Law
10             korsini@cravathcom
          BY:  EVAN R. CHESLER, Attorney at Law
11             echesler@cravath.com

12        WILSON, SONSINI, GOODRICH & ROSATI
          650 Page Mill Road
13        Palo Alto, CA  94304-1050
          650.320.4893
14        BY:  KEITH E. EGGLETON, Attorney at Law
               keggleton@wsgr.com
15

16                    ---oOo---

17

18

19

20

21

22

23

24

25
```

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 12
of 70

```
 1              P R O C E E D I N G S
 2         Thursday | October 25, 2018 | 9:16 a.m.
 3                    ---oOo---
 4         THE COURT:  Good morning.
 5              I'm going to go through the topics that I plan
 6  to talk about and then I'll start each topic with some
 7  questions and comments so that the attorneys in the room
 8  can push back and correct me or steer me on those
 9  matters.  And when we finish our comments on that topic,
10  then we'll move on to the next topic.
11              I'd appreciate a copy, even a rough
12  transcript, of today's hearing.  I think it will be
13  helpful, so if somebody can get that to me in the next
14  couple of days or by early next week, that will help me
15  with a case management order to resolve a lot of the
16  issues that we have to talk about today.
17              Because we got started a little late, I'll ask
18  people to not speak quickly but perhaps with fewer
19  words.
20              With respect to the number of trials, I'm a
21  little concerned that we're not focusing on the overall
22  number of trials that might be implicated.
23              Obviously, after we have some of the
24  bellwether cases, there's a thought that mediation will
25  kick in and perhaps we'll get some resolution; but we
```

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 13
of 70

1    can't put a hundred percent of our bet on that approach.

2              If there are 15 or 19 fires and if the results

3    from one won't have much effect on the other -- and some

4    of the individual plaintiffs have suggested as much,

5    because of different ignition sources and therefore

6    different ways in which liability is likely to be

7    resolved, then simply having the Tubbs fire first or

8    simply having the Atlas fire first may not push us along

9    toward the other cases and getting those resolved.

10             But if we do them 60 days or half a year, one

11   after the next, it will be many, many years before these

12   cases get resolved, which doesn't work.

13             So the current thought from some of the

14   plaintiffs -- many of the plaintiffs and I think -- is

15   that we would have, for example, maybe Tubbs set 60 days

16   after the Atlas fires.

17             But when you work that out for all of the

18   fires involved, we're still many, many years down the

19   road, so I'm concerned about that.

20             Before we talk about which particular trial to

21   have first, I'd just like to open up comments with

22   respect to that, whether we should be planning Tubbs or

23   Atlas first and then Atlas or Tubbs next, wait 60 days,

24   wait 90 days, have the next trial, or whether we should

25   really be setting more cases at this point -- a lot of

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 14
of 70

1  cases.

2        Obviously, that will put a tremendous burden

3  on the parties to go -- to essentially be preparing for

4  two, three, four, five trials at the same time.

5        And we're not going to resolve this particular

6  issue today, but I think we want to get started thinking

7  about what's the long-term plan here.  We haven't

8  thought about this particular issue before, so let me

9  just stop there and invite comment.

10        MR. KELLY:  So, Your Honor, first of all, I

11  think that we agree with the Court that you can't have

12  trials going on forever.

13        We addressed this in response to the questions

14  that were posed, which is which should go first, what

15  should it look like, how long would it take?

16        THE COURT:  Absolutely.

17        MR. KELLY:  I think, just so you know, with as

18  few words as possible, we are continuing to do discovery

19  on all of the fires and are certainly willing to come

20  back and talk about what's the most efficient way if

21  that's what moves the needle to further explore with you

22  how many, where, and at what intervals.

23        We're not wedded to this as the only way to go

24  forward.

25        I will say that the CMC that we prepared and

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 15
of 70

 1  submitted essentially had the universal agreement of all

 2  the leads in response to your question, and I guess the

 3  short answer is, it's a fair question, it's a good

 4  question.  Does a trial or multiple trials move the

 5  needle or do we need to do five, six, or eight?  I think

 6  that's something we need to come back and talk to you

 7  about.

 8          THE COURT:  All right.  Thank you.

 9          MR. SIMON:  Your Honor, I think that with

10  regard to the plaintiffs' request that Atlas go first, I

11  believe that it would move the needle for other trials

12  because of the vegetation-related issues.

13          MR. ORSINI:  Good morning, Your Honor, Kevin

14  Orsini.  I already speak too quickly, so I'll just use

15  few words.

16          I think Your Honor's concern is exactly the

17  right one.  How do we get to this point where we're not

18  trying these cases for the next decade?  I think we may

19  very well get to a point where we have to slot a number

20  of trials for a number of different fires, either

21  concurrently or consecutively with less than a 60-day

22  gap, but I think the question goes back to why we

23  believe you have to set Tubbs first.

24          THE COURT:  Right.  I'll be getting to that.

25  That's a separate issue.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 16
of 70

1          But maybe the approach is going to be to set

2   one first, whichever one that is.

3          MR. ORSINI:  If I may, Your Honor, just to

4   expand on that a little bit, the reason why I don't

5   think they're completely separate, at least from our

6   perspective, which is -- you know, from PG&E's

7   perspective about how could we resolve this, because we

8   don't want these cases hanging around for the next ten

9   years either, just as much as the individual plaintiffs

10  who are victims don't.

11         And from our perspective, as we're looking at

12  how we can size how this ought to be resolved, trying

13  Tubbs first doesn't guarantee that we don't have to have

14  all of those other trials, but it's the best chance that

15  we don't have to have all those other trials.

16         Because when I sit with my client and we talk

17  about what resolutions could look like, when you're

18  staring down the barrel of one fire that's two-thirds of

19  the potential liabilities, that one has the highest

20  probability of getting all the others tied up in a

21  global resolution.

22         That's why I don't think they're unrelated.

23         And I think we could, for example, take an

24  approach where we set the Tubbs trial first for

25  precisely that reason, and then we figure out how to set

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 17
of 70

1  a number of additional trials shortly thereafter so that

2  we have a mechanism where, if I'm wrong and trying Tubbs

3  doesn't get us all to the point where we can get this

4  wrapped up without more trials, we have the schedule in

5  place to move right to those trials.

6          THE COURT:  Thank you.

7          MR. SINGLETON:  Your Honor, may I offer a

8  different perspective?

9          THE COURT:  If you keep your voice way up,

10  yes, you can.

11          MR. SINGLETON:  Gerald Singleton.

12          I apologize, Your Honor, I had a flight issue

13  so we were delayed.

14          I think the Court is absolutely right when it

15  suggests that it would be beneficial to set numerous

16  trials.  We propose, as the Court is aware, Sulphur

17  going in March or April to be followed by the four Wind

18  Complex fires.

19          Although it would be aggressive, we have

20  circulated to both plaintiffs' counsel and defense

21  counsel a proposed trial plan that would try all of

22  these cases next year.

23          I understand this is not something that the

24  Court is going to decide today nor should it, but I

25  think that looking at some of the other issues,

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 18
of 70

1  particularly the fact that you have people, real world
2  issues, such as ALE benefits running out after two
3  years, the proper way to resolve these cases is to set
4  them for trial once the liability is ready to go on each
5  one.  And if we do that, we believe we could get most if
6  not all of them, tried in 2019.
7           Obviously, it would be burdensome, but there
8  are a lot of fine lawyers on both sides, and we
9  certainly believe we could do that.
10          THE COURT:  Did you author the response to
11 certain individual plaintiffs to the joint case
12 management conference statement -- you were involved in
13 that?
14          MR. SINGLETON:  Yes, Your Honor.
15          THE COURT:  How come I didn't get a single CMC
16 statement?  Do you know what happened?
17          MR. SINGLETON:  Yes, Your Honor.
18          THE COURT:  Were you not consulted?
19          MR. SINGLETON:  No, Your Honor.  What happened
20 is we met and conferred extensively, but there is a
21 fundamental difference of opinion between the four firms
22 in our group and the plaintiffs' leadership.
23          THE COURT:  Is it possible to get your
24 comments into a single document next time?
25          MR. SINGLETON:  We certainly can, Your Honor.

SCANLAN
STONE

 1  We were not afforded the opportunity to add it to that,

 2  but we certainly can if that's what the Court would

 3  prefer.

 4          THE COURT:  I'd prefer it.

 5          MR. SINGLETON:  Very well.

 6          THE COURT:  Thank you, very much.

 7          MR. SINGLETON:  Thank you.

 8          THE COURT:  My guess is that what we're going

 9  to do is set a single trial first, one of these cases.

10  We're going to turn to that matter in about one minute.

11          And after we have set that trial but before it

12  starts, at a future CMC, we're going to talk about this

13  issue of what happens after that.  I want to have a

14  long-term plan.  We're not going to wait until that

15  first trial has started.

16          We're going to have a long-term plan before

17  that, whether it's something that the Singleton firm has

18  suggested or some other approach, but I think we want to

19  have an idea of what's coming down the road so that PG&E

20  understands what it's facing and so the lawyers who are

21  involved in this case can have a say in how their

22  energies are going to be spent over the next couple of

23  years and really what's feasible and what's not

24  physically feasible.

25          Let me turn to the next topic, which is which

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 20
of 70

1   trial to go first.  Let me make some summary comments.

2           The Sulphur trial has been proposed.  Some of

3   the individual plaintiffs suggest this, but they didn't

4   provide enough information for me to do very much with

5   that today.  They don't provide a rough number of

6   witnesses available, what their areas of testimony are

7   going to be.  I don't think they suggested how long the

8   trial is going to be.

9           I wonder if it's true, if some people agree

10  that this is in fact the simplest case, at least between

11  Sulphur, Atlas, and Tubbs.  Comments on that are

12  solicited.

13          They have indicated -- the folks that proffer

14  the Sulphur trial, that it involves a lot of people.  I

15  think that's probably true with Tubbs and Atlas as well.

16          They have suggested that they think that the

17  discovery cutoff should be pursuant to code.  It doesn't

18  sound like the way to go.  If there are only a couple of

19  expert witnesses, then perhaps that could be fit in

20  pursuant to code, but probably not otherwise.

21          The next proposal is the Atlas case.  I

22  wonder, is it true that there's a general agreement that

23  this is a tree line contact case, that there is the

24  single point of ignition?  There may be obviously

25  disagreements as to who's responsible for that.

1          I wonder, can we say that there are, in fact,

2   common ignition sources or source in the Tubbs fire and

3   in the Atlas fire?

4          I think in the Tubbs fire, the consensus

5   probably is that there is not a single ignition source.

6          In Atlas, I wonder if there is or not.

7          My concern is, particularly with respect to

8   the Tubbs fire, that we might have ultimate liability as

9   to some of the plaintiffs and not as to others, because

10   we have different ignition sources and it will devolve

11   into a dispute as to really how many fires we have.

12          So my question there, in summary, is how much

13   of a consensus is there that we have identified ignition

14   points for these two candidate fires, Tubbs and Atlas?

15          Turning to the Tubbs fire -- this is PG&E's

16   suggestion -- it's noted, I think without dispute, that

17   it's the most extensive fire, it's likely to resolve the

18   most cases.  PG&E has suggested that about two-thirds of

19   the liability it faces could be involved in the Tubbs

20   fire.

21          This makes it an appealing fire to take first

22   because it will resolve most of the cases or at least

23   indicate possible resolution to most of the cases.

24          But there's also a suggestion that this has

25   the most complex causation issues associated with it.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 22
415.834.1114                         of 70

1    If that is true, how is it possible that PG&E is right

2    that it will actually be a shorter trial than Atlas?

3            I think we generally recognize that this will

4    be a battle of experts and there probably will be a lot

5    more experts in Tubbs than Atlas, but I throw that out

6    so that you'll correct me if I'm wrong about that.

7            Do the plaintiffs agree with PG&E that in a

8    Tubbs fire trial they would not have the vegetation

9    management-related witnesses that they want in the Atlas

10   fire?  PG&E has suggested that only half of the time

11   needed would be applicable.

12           With respect to Atlas or Tubbs or the Sulphur

13   fire, is it true that we would probably have exactly the

14   same issues and potential delay associated with

15   accessing the evidence in the hands of Cal fire, or do

16   we have a different picture for those three fires?

17           For these three fires, Atlas, Tubbs, or

18   Sulphur, to what extent do the plaintiffs need the

19   completion of all of PG&E's corporate discovery for all

20   of these trials?

21           Isn't it the same thing, don't we need to do

22   exactly the same work on that front, getting that

23   corporate discovery done, regardless of what fire we

24   take?

25           And just to drop a footnote here, perhaps the

1  parties need to set a deadline for the completion of

2  this discovery from PG&E.  There's a lot of discussion

3  in the joint case management statement indicating some

4  concern about PG&E's discovery.

5          If the parties cannot set a deadline, maybe

6  they want me to resolve that issue if they are unable to

7  set a deadline for the completion of that discovery.

8          The plaintiffs have suggested with respect to

9  this discovery -- this applies to all three of these

10 candidate fires, Atlas, Tubbs, or Sulphur -- that they

11 don't want to set a fact discovery cutoff date.  They

12 say that on page 22 of their statement.  I find this a

13 little odd.

14          If we're going to set a trial date, don't we

15 need to set a discovery cutoff date?

16          Let me stop there.  The general topic now is

17 which fire:  Sulphur, Atlas, or Tubbs?

18          And I'm interested in people's views to the

19 extent they haven't been reflected in my --

20          MR. KELLY:  So, Your Honor, Michael Kelly.  I

21 hope I got all the questions.

22          Let me start with these three fires.  The

23 leadership appointed in CMO1 went through these

24 questions relative to what should be first.

25          Let me say about Sulphur, it is a pole failure

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 24
of 70

1   case; whereas everything else is power line, tree line,

2   or multiple causes of failure.  It has no deaths.  It

3   has a minimum number of structures, 162.  For a host of

4   reasons it was determined by the larger group, including

5   subrogation and the public entities, that it was not

6   going to be helpful in moving the litigation forward

7   toward resolution.

8           Let me talk about Atlas for a minute.  There

9   is no question that the Atlas fire is a tree contact or

10  branch contact fire.  It is pleaded in our long form

11  complaint.  PG&E reported both a branch failure line

12  contact tree collapse into the same line to the PUC; and

13  Cal Fire reported two locations of origin that are both

14  tree contact issues.

15          So while that doesn't prove liability, it does

16  prove or suggest that there's an easy way to prove

17  causation.

18          The notion of the Tubbs fire really being the

19  suitable case to try first is undermined by the various

20  arguments in the CMC statement, which I'm sure the Court

21  read carefully of he says, she says, she says, he says

22  about what happened, how many points of origin.  And the

23  fundamental problem there is it's going to take multiple

24  experts who can't get to the evidence.

25          As we've noted late in the CMC statement, we

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 25
of 70

1  have worked really hard with the DA's to get an

2  agreement on access to evidence.

3         And Ms. Cordova can talk more about it, but

4  the Tubbs report is not out.  The Tubbs report is not on

5  the table for getting access to Cal Fire evidence

6  because we're dealing with DA's; it hasn't been referred

7  out, it hasn't been finished.  There are multiple

8  experts to look at it.

9         It's inconceivable to me that it is tried in a

10  shorter period of time or involves less experts or it

11  is, as suggested by the defendants, it's some kind of an

12  on/off switch.  It's either at these old folks' home or

13  somewhere else.

14         The truth of the matter is if the total number

15  of points of origin is not clear, in part because we

16  haven't seen all of the physical evidence -- there are

17  multiple experts looking at it -- there's no reason to

18  believe that actually the point of origin is as

19  suggested by PG&E.

20         THE COURT:  You don't have the same discovery

21  and Cal Fire issues with Atlas?

22         MR. KELLY:  We don't, because the Atlas report

23  is done.

24         And let me -- actually, we'll get ahead of

25  ourselves, but I think it would be helpful to the Court.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 26
of 70

1          Here's the status of that.  For fires not

2   referred to district attorneys, LaPort, Honey, Redwood,

3   Cherokee, 37, and Nuns, we have an agreement to get both

4   reports and access to the evidence with the DA's.

5          MS. CORDOVA:  With Cal Fire.

6          MR. KELLY:  With Cal Fire, excuse me.

7          And we're working with the district attorneys.

8          Cal Fire's position is you get an agreement

9   from the DA's.  Cal Fire and the district attorneys have

10  agreed to evidence inspections -- the DA's in Sonoma,

11  Butte, Yuba, and Nevada counties, and we're working with

12  the other DA's.  We just haven't gotten confirmation for

13  access to the evidence.

14         These are all cases where the report is

15  finished.  We are waiting to hear from Napa County

16  district attorney relative to the Atlas fire.

17         But as for the Tubbs fire, the report is not

18  finished.  A decision about referral or non-referral

19  hasn't been made.  It's not even on the table in terms

20  of negotiating with Cal Fire and the district attorney

21  to get access to the evidence.

22         And I think one of the things the Court -- I'm

23  sorry to be presumptuous, but the notion --

24         THE COURT:  Go ahead.

25         MR. KELLY:  -- that you want a discovery

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 27
of 70

1    cutoff is to get things finished or moving, we can't
2    even begin to get things finished until we get to that
3    Tubbs evidence.
4            So as a practical matter, whatever the
5    feelings of the defendant are about how much it might
6    move a needle -- and I'm using might in italics -- it's
7    really something we don't know.  It's a moving target.
8    We don't know when the -- I've heard on seven different
9    occasions the Tubbs report is coming out this week.  And
10   those are seven different weeks over the past five
11   months.  And I don't think anybody knows that.
12           So one of the things I think the Court wants
13   is certainty.  We want certainty.  So for us, you know,
14   the one thing about the Atlas fire, is it going to move
15   the needle?  Well, it's going to move it to the extent
16   that there are wrongful deaths involved, there are more
17   than 50,000 acres, there are more than 700 structures,
18   we do know it's a tree line contact.  We know some
19   things that make it capable of assessing and analyzing
20   and getting the experts on.
21           THE COURT:  Thank you.
22           MR. KELLY:  And if I might, I was responsible
23   for drafting what apparently was an inarticulate CMC
24   statement on our side.
25           We don't suggest that you should never set a

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 28
                                  of 70
405.834.114

1  general discovery cutoff.  We proposed, referencing this

2  fire, a discovery cutoff for the fire that is set.  It

3  was intended to make clear that the discovery cutoff we

4  proposed and the modification as to the expert discovery

5  was peculiar to this fire that's set and said as far as

6  a generic cutoff, we still can't even get ESI.

7          If the Court will recall, we were supposed to

8  get it on December 21st.  This statement now skips the

9  month of January and says we will get it in February and

10  proposes discovery cutoff two weeks later.

11          So we're not adverse, but it's not --

12          THE COURT:  Your suggestion is set a discovery

13  cutoff per trial?

14          MR. KELLY:  Yes.  That is my point.

15          THE COURT:  What do you think about a

16  discovery cutoff for getting evidence which is going to

17  be common to all of the cases, I think, which is the

18  corporate discovery from PG&E?

19          MR. KELLY:  I agree that the corporate

20  behavior discovery is common.  The same company is

21  operating in response -- at least in our opinion,

22  responsible for all the fires.

23          THE COURT:  We need to set a single deadline

24  for that, right, at some point?

25          MR. KELLY:  We do, but I would suggest to the

SCANLAN
STONE

1   Court that it would be nice to have the

2   electronically-stored information in our hands to review

3   for a period of more than two weeks before we can come

4   and chat about what's fair to everybody.

5           THE COURT:  Okay.

6           MR. KELLY:  What have I missed?

7           THE COURT:  Not too much.

8           MR. KELLY:  Okay.

9           So I was always a B student.  I feel that

10  having not missed too much, I'm hoping I'm not below a

11  B-minus.  If there is a major point I missed, I would

12  like to address it.

13          THE COURT:  I don't think so.  Thank you very

14  much.

15          Let me give the rest of the plaintiffs a

16  chance to talk, then I will turn to PG&E.

17          MR. SIMON:  Your Honor, Craig Simon for

18  subrogation plaintiffs.  We agree with everything that

19  Mr. Kelly said.

20          I want to answer specifically some of your

21  questions.

22          With Atlas, is there general agreement on

23  ignition?  I believe so.  To reiterate what Mr. Kelly

24  said, you have two admitted ignition places in Atlas.

25  In one you have a significant tree branch that contacted

1    the line.  It was reported by PG&E as a tree branch, so

2    they saw it and looked at it and reported it that way.

3           The second ignition is a whole tree down.

4    PG&E reported it that way and, therefore, I believe that

5    it is, by far, a much simpler case than Tubbs.

6           I do want to say, with regard to Tubbs, in

7    previous hearings, I might have suggested to the Court

8    that it was an electrical fire only that did not involve

9    vegetation.  We've had some discovery since the last

10   hearing that has come out which implicates a need for

11   additional evidence collection, that is, that we know

12   there was an electrical event at a particular location.

13   The cause of that electrical event is still under

14   review.

15          It could be on the Calistoga line at other

16   places things that are occurring, and one of those

17   things may be vegetation-related.  We've had some

18   eyewitnesses and some issues that have come up.

19          THE COURT:  Do you think there's a consensus

20   that that is the ignition point for the Tubbs fire,

21   whatever the cause is?

22          MR. SIMON:  No, Your Honor.  I believe that

23   this is extremely complicated and there's no answer.

24          And I agree with Mr. Kelly that the back and

25   forth in the brief -- I think the point that I'm trying

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 31
of 70

1  to emphasize for the Court is Tubbs is the most complex

2  fire that is delayed in any type of discovery by the

3  fact the evidence is tied up and it's different than

4  Atlas.

5        You asked specifically, isn't access to the

6  evidence, is it the same or different?  That was a

7  question that you asked -- don't you have the same

8  problem with the Cal Fire?  No, it's completely

9  different.

10        In the Tubbs there is no report or final

11  conclusion, and PG&E affirmatively went out and extended

12  the time for Cal Fire to make a report.

13        So by PG&E's volitional efforts, they have

14  delayed or allowed a delay in the Tubbs report.  I'm not

15  blaming them.  I'm just saying it as a fact that we

16  don't have a report and, therefore, the chance of

17  getting the same type of evidence with regard to Atlas

18  is completely different.

19        We believe we're going to be able to get to

20  the -- what we need to see is the conductor in Atlas,

21  and we have certain other outage reports, so it's

22  completely between Tubbs and Atlas with regard to that.

23        Mr. Kelly dealt with a deadline of discovery.

24  We, of course, want a deadline if we're in a trial, but

25  we don't want a deadline for the other fires.

SCANLAN
STONE

1         And you asked specifically if Sulphur was the
2    simplest case.  In a way it is the simplest case and
3    that's part of the reason why we were saying that it
4    could be used after the first trial if we can't get to
5    Tubbs.  In other words, we may be in a situation where
6    four months from now we still don't have a Tubbs report,
7    and we would need to have another fire go forward and we
8    said in the brief that maybe that other fire would be
9    Sulphur.
10         Your Honor, subrogation completely supports
11   what Mr. Kelly said and the individual plaintiffs.
12         THE COURT:  Thank you.
13         Are there other plaintiffs who have a
14   completely different view as to what I've been hearing?
15         MR. SINGLETON:  Thank you, Your Honor.
16         I would concur with what Mr. Kelly and
17   Mr. Simon said in terms of how the trial how the
18   discovery cutoff should work.  I think it should be per
19   trial.  Discovery should go forward on the others.
20         Following up with what Mr. Simon said, I think
21   all parties agree that Sulphur is the simplest.  It is a
22   pole that snapped.  There are no vegetation management
23   issues.  There do not appear to be the same issues that
24   arise when you have a line slap, which can create
25   separate issues.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 33
of 70

1           So in terms of simple, I do believe there is

2    large consensus it is the simplest.

3           I wanted to address two points that the Court

4    raised.  Number one, do we need the ESI to try Sulphur?

5    Certainly we would like it.  In a perfect world we would

6    have that, but I think there's a difference between what

7    you need and what you would like when you're going to

8    trial.

9           In terms of Sulphur, we believe that once

10   we're allowed to actually inspect the evidence so we can

11   confirm what our experts have posited and what they've

12   theorized, we will be largely ready to go.  There will

13   be a handful of other depositions that will need to be

14   taken, but this is going to be a much more streamlined

15   straightforward case.  We estimated it would take 13 to

16   17 court days to try, and that's assuming that there

17   were five to ten cases involved.  If the Court wanted to

18   strip that down, we could cut that back even further.

19          But the timeline that we've suggested also

20   addresses one issue I haven't heard yet today and that

21   is that of the preference cases.  We have,

22   unfortunately, at least eight individuals in Sulphur who

23   we believe will qualify for preference under section

24   36(a); and this is not something we take lightly, but

25   these are individuals who are over the age of 70 who are

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 34
of 70

 1  very ill and for whom we will need to file those motions

 2  relatively soon.  That was why we had suggested the

 3  March/April trial date, because we think that would

 4  coincide with when these cases will be ready.

 5          The last issue I wanted to address was

 6  something that Mr. Kelly said about Sulphur not moving

 7  settlement forward, and I think that depends on what the

 8  settlement in this case is going to look like.

 9          Obviously, PG&E has said and they've been

10  consistent throughout that they want a global settlement

11  that involves all fires.  Having represented, I believe,

12  more individuals in fire cases than anyone else in

13  California, and certainly having been involved in many

14  major fires over the last few years, I have not seen

15  that happen in a multiple-fire case.

16          There's many reasons for that.  One is the

17  fact that the liability is very different.  For example,

18  in the 2007 San Diego fires, there were three separate

19  fires, all of which were very large.  I think the

20  smallest was about 40,000 acres.

21          But we had over a year where we were settling

22  cases in two of them, but the third one was not settling

23  because there were issues related to liability.

24          I can see the same thing arising here.  You

25  have a case like Sulphur where -- again, obviously this

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 35
of 70

1  is our position and PG&E may differ, but it's a fairly

2  straightforward case.

3          You have a case like Tubbs, where I think all

4  parties agree that's going to be a complicated case, and

5  certainly there are going to be differences in terms of

6  the strength of liability.

7          So I would simply say that I don't see this

8  case, at least at this point, as being able to be

9  resolved on a global order anytime soon.

10          I think what makes the most sense is to treat

11  these the way that I believe Mr. Orsini and Mr. Kelly

12  have both commented on.  These are not one size fits

13  all.  It's not one case.  It's 16, 17, 19 -- it depends

14  on how you quantify the fires.  There can be a little

15  bit of difference of opinion, but there's certainly at

16  least 16 major fires here, and I believe they have to be

17  approached on an individual basis, and that's why it

18  makes so much sense to set them as they are ready to

19  try.

20          When you have a case like Sulphur that is the

21  simplest, I would submit it makes very little sense to

22  put it behind a much more complicated -- a super trial,

23  if you will, with an Atlas or a Tubbs.

24          If Sulphur can be ready to be tried in March

25  or April, why not try it?

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 36
of 70

1       The same is true of the Wind Complex fires.

2   Those are the Lobo, McCourtney, Cascade, and LaPort.  We

3   have the reports in two, and my understanding is there

4   have been agreements with the Nevada County District

5   Attorney where these occurred to go ahead and inspect in

6   Lobo and McCourtney.

7       I'm the discovery coordinator for the

8   plaintiffs in the Lobo and McCourtney fires, and based

9   upon what I've seen, there's no doubt in my mind we can

10   be ready to go in those fires by May or so.

11       So to me, what makes the most sense is you set

12   these when they're ready.  If the Court adopts that

13   approach, then you have the Sulphur case tried in March

14   or April, with liability established, and then you have

15   the Wind Complex cases, which are four all together

16   tried in May.

17       Again, liability would be established,

18   assuming we're successful, and that would not in any way

19   interfere with the Atlas case.

20       THE COURT:  I'm going to ask you to

21   terminate -- just give me your final thoughts.

22       MR. SINGLETON:  Sure.  Yes, Your Honor.

23       All I would say is we would respectfully

24   submit that these be set when they are ready to be

25   tried.  Thank you.

1          THE COURT:  Let me turn it over to PG&E.

2          MR. ORSINI:  Thank you, Your Honor.

3          So I think there are a number of things that

4    Mr. Kelly and Mr. Simon and also Mr. Singleton said that

5    are just factually not true.

6          There has been a lot of suggestion that

7    there's some broad consensus that Atlas is a vegetation

8    case, that it involves tree line contact, that we know

9    that, it's simple.

10          I want to be very, very clear PG&E does not

11   agree with that.  We did submit incident reports to the

12   CPUC that there was vegetation that contacted our lines,

13   but that does not say anything about whether or not that

14   vegetation caused a fire.

15          For example, one of the two locations is a

16   location where we believe all of the evidence very

17   strongly establishes that the tree that fell because it

18   burned and after the lines were already deactivated.

19          We do not believe either of those locations

20   were where the fire started.  So I just want to be clear

21   about that, because there's been a lot of suggestion

22   that there's broad consensus about what the facts are in

23   Atlas.

24          There's the argument Atlas is simple because

25   we have basically a single point of origin and Tubbs

1 complicated because there might be multiple points of

2 origin.  Again, that's not true.

3          What we know is at least Cal Fire has said

4 there are two origin points for Atlas.  So as I said, I

5 disagree with both of those, but Cal Fire has identified

6 two different locations, so Atlas will already involve

7 at least those two spots and, we believe, others.

8          With respect to Tubbs, it's absolutely right

9 that Cal Fire hasn't issued a report yet.  And

10 plaintiffs have tried to walk back statements they've

11 made about whether Tubbs involves vegetation.  And you

12 heard Mr. Simon say that's because we have more

13 discovery since the last conference.  It's not

14 consistent with the statement they submitted this week.

15          If you look at page 2 of their submission,

16 they say that vegetation contact issues are common for

17 all the fires, excluding Tubbs, Cascade, and Sulphur.

18          With respect --

19          THE COURT:  Do you have a contention about how

20 many ignition points there are for Tubbs?

21          MR. ORSINI:  All of the evidence that we've

22 seen thus far points to the fact that the Tubbs fire

23 began in the vicinity of 1128 Bennett Lane.

24          Now, there's more discovery to be done, but

25 there have been ten depositions of eyewitnesses to the

1    fire starting in Tubbs. No such depositions for Atlas.

2        We have body cam footage of police officers.

3    We have first responders from Calistoga Fire Department

4    and Cal Fire. We have satellite data. All of the

5    evidence that exists today points to that origin point.

6        Now, that could change, just like the origin

7    points for Atlas could change because there's a lot more

8    discovery to occur.

9        But plaintiffs are asserting to Your Honor

10    that Tubbs is much more complicated than Atlas. That's

11    not our view and, obviously, Your Honor can't resolve

12    that right not. That's what the trial is for. I'll

13    come back to that because at the end of the day that's

14    the key consideration.

15        Now, with respect to access to evidence,

16    again, respectfully, I think Mr. Kelly and Mr. Simon got

17    it exactly backwards. We are further ahead in getting

18    access to the Tubbs evidence than we are with respect to

19    the Atlas evidence.

20        We don't have a report. That is true on

21    Tubbs. The report is not admissible anyway.

22        What matters is being able to inspect the

23    evidence itself. You heard Mr. Kelly say we haven't

24    heard back from Napa -- the Napa County District

25    Attorney with respect to Atlas and that is true.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 40
405.834.1114   of 70

1      So we don't know as we stand here right now

2   whether the Napa County District Attorney, which has

3   taken the lead in the investigation of Atlas, will or

4   will not permit us to inspect the Atlas evidence that

5   Cal Fire has.

6      You also heard Mr. Kelly say with respect to

7   Sonoma, which -- Sonoma, to all appearances in our

8   interactions with them, they are our liaison for the

9   Tubbs fire.  They are the ones taking the lead in the

10  investigation of the Tubbs fire from a district attorney

11  criminal perspective.

12      They said to us yesterday they will have no

13  objection to any arrangement we can make with Cal Fire

14  to access the Tubbs evidence.

15      Now, if Cal Fire refuses to give access to

16  Tubbs evidence, we will be in this courtroom very

17  quickly because the privilege is a law enforcement

18  privilege, and the investigating and prosecuting --

19  potentially prosecuting district attorney has said they

20  will not have an objection to all of us collectively

21  accessing that evidence.

22      So it's just not true that Atlas is ahead of

23  Tubbs in that regard.  It's exactly backwards.

24      With respect to Sulphur, again, the assertions

25  are we all know what happened in Sulphur.  I don't.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 41
of 70

1  PG&E does not agree that the pole caused the fire.  It
2  is not a simple case.
3          And with respect to Sulphur, again, let's say
4  the pole did cause the fire.  There's not a single other
5  fire where there's any such allegation.  Sulphur has, by
6  our estimation, 2 percent of the total structures
7  destroyed.  It has zero percent of the total fatalities.
8  It has 4 percent if the plaintiffs who have actually
9  filed suit.
10         We have more than 3,000 individual plaintiffs
11  in this litigation.  There are 138 with respect to
12  Sulphur.  Sulphur has no chance of moving the needle.
13  It's just not credible to suggest it does.
14         And one other point on that front, to address
15  something that Mr. Singleton said, trying the Sulphur
16  case first makes it less likely that the plaintiffs with
17  respect to that fire get paid sooner than more likely.
18         Because if we go to that trial, we all know
19  there are inevitably going to be appeals and we know
20  those appeals are not going to be resolved for quite
21  some time.
22         Whereas if we're able to move forward with a
23  fire that actually does move the needle to resolution,
24  Tubbs, that resolution is far more likely to happen
25  before those appeals can run.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 42
of 70
415.834.1114

1    Now --

2        THE COURT:  Do you think -- and the plaintiffs

3    will have a chance to comment on this, too -- is the

4    dispute here based on something that we're not talking

5    about, which is that PG&E thinks it has a better shot at

6    winning the Tubbs and the plaintiffs think they have a

7    better shot at winning Atlas?

8        MR. ORSINI:  I think it would be hard for

9    anybody here not to draw that conclusion, Your Honor.

10       THE COURT:  You don't have to say anything

11   more.

12       MR. ORSINI:  But I think that's exactly the

13   point, actually.  I'm glad Your Honor asked the

14   question.

15       I think that's exactly the point because we

16   can't ultimately know.  There are all these arguments

17   about was Tubbs vegetation, was Tubbs one point or

18   multiple points, was Tubbs something that involved maybe

19   vegetation happening in one place and starting a fire in

20   another place?  That's what a trial is for, right?  A

21   trial will resolve those issues.

22       And from PG&E's perspective, facing the

23   specter of all of these many cases with all of these

24   different fires, we can't figure out how to resolve

25   these until we have some visibility into what the

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 43
of 70

1  resolution is going to be of the Tubbs case.

2          THE COURT:  Thank you.

3          MR. ORSINI:  And two other quick points,

4  Your Honor, with respect to discovery.

5          With respect to discovery, I do think we need

6  a global discovery cutoff.  I think with respect to the

7  corporate-level discovery, we have proposed March 1st.

8  If the concern is they want a couple more weeks once

9  they have the ESI, that's fine.

10          Obviously, if they discover something after

11  the fact that requires them to reopen a request, that

12  always happens, right --

13          THE COURT:  When do you think you will finish

14  producing the things that you are currently under an

15  obligation to produce?

16          MR. ORSINI:  As we said in the stipulation,

17  Your Honor, we're currently believing we'll get it done

18  sometime in early to mid-February.  We're having a lot

19  of problems with backup tapes.

20          THE COURT:  Okay.

21          MR. ORSINI:  And I also think that discovery

22  cutoff, Your Honor, ought to apply to all of the fires

23  as well, because to Your Honor's point, which I think is

24  the right point, we have to get these all on a track to

25  get managed, delaying the discovery specific to other

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 44
of 70

 1  fires, i.e., the one that's not set for trial, I think,

 2  is more likely to drag this out.

 3          Let's get it done.  We have a lot of

 4  plaintiffs' lawyers.  We have a lot of lawyers.  We can

 5  do that discovery simultaneously.

 6          Our view is we should get it all done.

 7          THE COURT:  Thank you very much.

 8          MR. ORSINI:  Thank you, Your Honor.

 9          THE COURT:  Any brief response?

10          MR. KELLY:  Yes, brief.

11          First of all, I am so grateful for PG&E's

12  benevolence, possibly giving us two weeks to review

13  things that are over 10 million pages.

14          And I think the Court recognizes that this

15  continues to be a moving target.  Last time it was

16  December.  Now we skip January.  Now we're in February.

17  I think we ought to talk about a discovery cutoff when

18  we get the darn discovery.  We can come to you and

19  discuss it.

20          Number two, do plaintiffs want to set Atlas

21  before Tubbs because they have a better shot at winning

22  Atlas?  Actually, I don't think that's a fair

23  characterization.  I think it's a fair question.

24          We know the source of origin in Atlas without

25  dispute.  You've seen today how little we agree on.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 45
of 70

 1  Even a pole that fell over from woodpeckers, it wasn't
 2  the pole; it was something else.
 3          The one thing we know about Atlas is that we
 4  have the okay of Cal Fire to deal with the DA.  We don't
 5  have that in Tubbs.  There was this long argument about
 6  us having it backward.
 7          Here is what we know:  Cal Fire is a law
 8  enforcement agency.  They have the privilege.  They have
 9  not agreed to make any Tubbs evidence available.  If
10  we're going to approach a motion, we'll do a motion,
11  but, for goodness sake, let's get that straight.
12          For the other fires, Cal Fire has said make a
13  deal with the DA's.  That's what we're doing.  We don't
14  have that agreement in Tubbs.
15          So for me, why do you want to set Atlas?
16  Because we know something about it.
17          And the rest of this is just kind of shooting
18  in the dark.  I say this, you say that, it happened at
19  the Zinc house, it didn't happen at the Zinc house.  You
20  know what we need?  We need to see the physical
21  evidence.  That way we don't characterize what a witness
22  saw.
23          When I was a very baby lawyer, two things, the
24  first is I was always told the physical evidence isn't
25  on anybody's side.  We need to see the physical

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 46
of 70

```
 1   evidence.
 2           Second, counsel suggests that we only move the
 3   needle if we try the case.  I'm so darn old I was here
 4   when we had discovery reforms in the late 1960s.  The
 5   truth of the matter is discovery is about each side
 6   getting sufficient information to evaluate their risk
 7   and the likelihood of success.
 8           We don't have any discovery on Tubbs and we
 9   have no guarantee from the law enforcement agencies
10   we're going to get it.
11           THE COURT:  Thank you.
12           MR. SINGLETON:  Your Honor --
13           THE COURT:  No.  I really need to move on to
14   the other issues.  We have a number of other issues to
15   cover in the next few minutes.
16           I want to talk about location next.  I don't
17   think the location issues depend on whether Tubbs or
18   Atlas or Sulphur goes first, but if you think that's
19   true, let me know.
20           Here are my concerns.  San Francisco, it
21   strikes me, is much easier to get a jury and it's
22   probably much more convenient for the people in this
23   room.  It's not more convenient for the plaintiffs in
24   the sense that I think there will be a lot of interest
25   in the case and people will want to attend.  Most of
```

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 47
of 70

1    those people are in the North Bay counties.  So San
2    Francisco is probably much more convenient.
3            The North Bay counties, there's more interest
4    and there is sort of a -- I think of it as almost a
5    moral impetus to try to have a jury trial in the
6    location where things happened, and I understand the
7    interest that the plaintiffs themselves, maybe not their
8    attorneys, but the plaintiffs themselves might have.
9            I think it will be much more difficult to get
10   a jury there.  I think jury selection in the North Bay
11   counties would be extremely difficult.
12           I queried why it is that PG&E really wants to
13   have a jury trial up there.  Generally speaking -- I'm
14   not talking about this case, but generally speaking, the
15   defendants want out of the county where things like this
16   happen, so I'm not sure what's going on there.
17           After I listened briefly to the attorneys on
18   their views, if you have more to say than is in the
19   written document, my plan is to at least touch base with
20   the presiding judges of Napa and Sonoma Counties to get
21   their, perhaps, visceral reaction to the ability of
22   those courts to actually handle any of these cases and
23   to get their views as to whether or not they think there
24   would be an enormous burden in selecting a jury and any
25   other things that you think I might touch base with them

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 48
of 70

1    on.

2            If you think there are other topics I should

3    discuss with them, I need to make a note of that as

4    well.  That's my thought, to do that before I select a

5    location.

6            In a few minutes -- we have about four or five

7    other topics to talk about.  A topic about three lines

8    down, there is the fact that -- I will just alert it to

9    you right now, which is that this particular department,

10   304, is not available until the late summer of 2020 for

11   a trial, so if we are going to have trials in San

12   Francisco, it's unlikely that they will be in this

13   department.

14           The parties are in general agreement,

15   August/September time frame, roughly, something around

16   in there, but the trial calendar in this department is

17   occupied until the early fall of 2020.

18           So let's just have a few comments on the

19   location first, the location issue.  If there is

20   anything else I should know about that.

21           Thank you.

22           Sir.

23           MR. PITRE:  Good morning, Your Honor, Frank

24   Petri.  I'll make this simple.  We agree with the Court.

25           THE COURT:  Okay.  I'll take that as a yes.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 49
of 70

1          MR. ORSINI:  I guess that puts me in the
2    position of having to disagree with the Court.
3          I actually don't with respect to the critical
4    point you made, Your Honor, which is there's almost a
5    moral impetus to have the cases tried where the events
6    occurred.  And you're absolutely right, Your Honor, that
7    you would usually expect me to stand up here and be
8    taking their position and theirs would be taking ours.
9          THE COURT:  You want to have this trial in
10   North Carolina?
11         MR. ORSINI:  I'll reserve comment on North
12   Carolina.
13         Let me explain to Your Honor why we think
14   that's important.  Because we have looked at what the
15   relevant facts are, we've looked at the issues that we
16   believe are going to be critical to the resolution of
17   any of these cases, and we have concluded strongly that
18   our best chance to get a fair trial and to get a trial
19   that leads to the proper result requires a jury who has
20   some familiarity with the issues.
21         These are -- I'm from New York.  We all know
22   that, so I don't live in San Francisco or in one of the
23   North Bay counties, but I've spent enough time here to
24   know that San Francisco is different than the North Bay
25   counties in ways that are very significant with respect

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 50
of 70

 1   to these fires:  What the vegetation issues are up

 2   there, what the weather issues are up there, what the

 3   fire experiences have been up there.

 4        One of the critical arguments that plaintiffs

 5   have presented since they filed their first complaint is

 6   PG&E could have avoided all of this by just turning the

 7   power off on October 7th.

 8        Well, we've seen the news even out in New York

 9   about the de-energization that occurred in the last ten

10   days or so, which has been a very difficult topic for a

11   lot of people because you have to balance two different

12   safety concerns, the safety risk of leaving the power on

13   and potentially having a fire started --

14        THE COURT:  So is it your view that the folks

15   in the North Bay come to this case knowing a lot more

16   about it than somebody from San Francisco and that we

17   should -- those are the people that we're going to keep

18   on the jury?

19        When jury trials started, that's actually the

20   way things were done.  We would pick people who knew all

21   about the case.  Those would be the people we would have

22   on the jury -- this is England before the United States

23   commenced.  We would actually pick people who knew

24   everything that there was to know about the case and

25   we'd put them on the jury.

1          And somehow we've changed.  In the United

2   States, now we kick those people off, right?  How much

3   do you know about this?  Do you have a feeling about the

4   impact of power surges and loss of energy?  Do you have

5   a sense of this?  Do you know how -- we actually tend to

6   boot those people and we get 12 people who are

7   completely ignorant and we use them as a jury.

8          So where does your plan sort of fit in with

9   the way things are done?

10          MR. ORSINI:  So I think there's a spectrum

11  here, Your Honor.  We'd obviously boot someone who saw

12  the fire start.  We'd boot someone whose brother's house

13  burned down, right, but we have, in Sonoma alone a half

14  a million residents.

15          And our view is it's not having familiarity

16  with the facts of the specific fire; it's knowing their

17  community.  It's their community that was impacted.

18  There are claims here for punitive damages that are

19  designed to effect change in how PG&E goes about doing

20  its job of delivering safe and reliable power.

21          Who's going to be affected by that?  The

22  people who live in those communities.

23          And we believe that it is very important for

24  PG&E's actions and statements about what PG&E's actions

25  ought to be going forward to be judged by the people who

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 52
of 70

have been and will be affected by those actions.

That's our view, Your Honor.

THE COURT: I appreciate that. Thank you.

Let me turn to the next topic, which is if there's anything more to say on the types of plaintiffs that we're looking for. There's a little bit of a dispute. I'm not sure there's more to say about it at this particular point and I don't think we have to resolve it right away.

But for example, plaintiffs have suggested we'd want to have wineries and non-wineries involved. PG&E thinks that's not appropriate because business loss is complicated. My tentative view is it's not that complicated. Maybe you have a witness on each side talking about business losses.

PG&E has suggested another criteria, what they call annoyance damages, people who have been affected by soot and air but without any other serious property damages.

If anybody has a comment that I won't find in the written document I am happy to hear that.

MR. KELLY: I don't think we object to adding such a person, Your Honor.

THE COURT: Okay.

With respect to trial dates, I've already said

1   really what I want to say about that.  I don't know what

2   there is that you can say unless you can settle some of

3   these cases that have been set in this department,

4   there's not much you can do.

5           But to the extent that the cases are in San

6   Francisco, my plan is to talk to my presiding judge and

7   get permission to have those come out of Department 206.

8           I don't think anybody wants to wait until 2020

9   to get these cases.  That's a delay of almost -- about a

10  year past the time period that both sides are in general

11  agreement, so I'm seeing affirmative nods of the head

12  and I'll just pass by that for now.

13          MR. ORSINI:  Can I just make one comment,

14  Your Honor, very briefly?

15          THE COURT:  Of course.

16          MR. ORSINI:  While we would prefer for

17  Your Honor to preside over the trial, 2020 is a long

18  time away.

19          THE COURT:  Right.

20          MR. ORSINI:  Our view is if Your Honor does

21  ultimately keep the trials here or if you send them to

22  Sonoma or Napa, our one view is that Your Honor, working

23  with the presiding judge here or there, would have the

24  authority to designate in advance who the trial judge

25  will be, rather than waiting for the standard you find

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 54
of 70

1  out the morning you report for trial.

2           Our view is that type of approach would be far

3  more conducive to getting a really streamlined trial

4  prepared and would help in a case of this complexity.

5           THE COURT:  I think you're absolutely right.

6  Thank you.

7           There are apparently -- with respect to the

8  plaintiffs' submissions of damages information, I know

9  there's a representative from the Singleton law firm

10 here and maybe, hopefully, from the Frantz Law Group as

11 well.  I'd invite attorneys from those two entities to

12 let me know what the status is.

13          MR. SINGLETON:  Certainly, Your Honor.

14          As we put in our papers, we provided responses

15 to, I think, 760.

16          THE COURT:  Right.

17          MR. SINGLETON:  There were roughly 17 for whom

18 we could not provide responses.  We couldn't get in

19 touch with them.  We've dismissed them without

20 prejudice, so there are now zero that we have not

21 provided responses to.

22          THE COURT:  Thank you.

23          And is there a representative of the Frantz

24 Law Group here?

25          MR. McNICHOLAS:  Your Honor, this is Patrick

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 55
of 70
415.834.1114

1   McNicholas.

2           THE COURT:  If you could state your -- sir,

3   hold on just one second.

4           Please state your name one more time slowly

5   and then go ahead.

6           MR. McNICHOLAS:  McNicholas & McNicholas.

7   We're with the Frantz Law Group.

8           THE COURT:  Could you start again, please?

9           Could you please start again?

10          We cannot hear you very well.  Speak very

11  slowly, please, as you state your name.

12          MR. McNICHOLAS:  This is Patrick McNicholas

13  from McNicholas & McNicholas.

14          MR. FRANTZ:  James Frantz from the Frantz Law

15  Group.

16          THE COURT:  Thank you.

17          Mr. Frantz, could you tell us what your status

18  is?

19          MR. FRANTZ:  My status?

20          THE COURT:  The status of your plaintiffs;

21  have they provided the damages information?  Are any of

22  them out of compliance?

23          MR. FRANTZ:  Regina Bagdasarian of my office

24  is here and she's handling that component of the CMO.

25          Regina, if you want to speak to that.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 56
405.834.114
of 70

1    MS. BAGDASARIAN:  Yes, Your Honor.

2    We have submitted the vast majority of

3    plaintiffs' information with regard to the evidence as

4    to what they saw in the fires.  We have a few of them

5    that we're still following up with, and we expect to be

6    complete very shortly.

7    THE COURT:  How many are you following up

8    with?

9    MS. BAGDASARIAN:  I think there's about 70,

10    and we've filed a total of 626 plaintiffs so far.

11    THE COURT:  Seventy, seven-zero?

12    MS. BAGDASARIAN:  Yes, Your Honor.

13    THE COURT:  And when will it be done?

14    MS. BAGDASARIAN:  If we could have 30 days,

15    I'm sure we could be complete with that.  We've been

16    calling them and following up with them regularly and

17    we're just waiting on some return information.

18    Some of them thought they had provided

19    everything and had some missing component.  We just want

20    to make sure we're complete.

21    THE COURT:  I appreciate that.

22    Was there somebody else on the telephone who

23    wanted to address this issue?

24    (No response.)

25    THE COURT:  Apparently not.

Case: 19-30088   Doc# 2847-3   Filed: 07/02/19   Entered: 07/02/19 18:23:46   Page 57
of 70

1          With respect to the continuing negotiations

2    between -- at this point it's really the DA's; it's not

3    so much Cal Fire, but it's really the DA's regarding

4    referred fires.

5          I would really want those discussions to

6    happen as fast as possible, and if a motion has to be

7    brought, then let's bring it.

8          But I think you should invite the DA's to come

9    in for informal conference with me.  They may or may not

10   agree.  They have a right to decline.  That's fine.

11         But I'm available to talk, and we can have an

12   informal off-the-record conference.  Anybody who wants

13   to come can come.  It won't be on the telephone.  It

14   will be an in-person meeting.  We'll put the tables

15   together and we'll sit around the table and we'll see if

16   we can work something out, as I say, off the record.

17         But that might help sort of figure out exactly

18   what the problems are and we might be able to work that

19   out, so that's an available approach.

20         With respect to the mediators, I'm glad people

21   are looking at folks.  I don't know if there's a

22   conflict between what the individual plaintiffs are

23   thinking of.  There was one reference to Justice

24   Trotter, and I know a number of people in this room have

25   had experience with Justice Trotter; and then also Judge

1  Daniel Weinstein and Mr. Mayer, who have also been

2  indicated.  So I'm not going to speak any more about

3  that.

4        I also see that Judge Vaughn Walker has been

5  suggested as somebody who could help with respect to the

6  subrogation plaintiffs.

7        These mediations have to occur before trial

8  and, hopefully, sufficiently, substantially before trial

9  so you're actually saving time and effort and money if

10 the mediations work out, but we can take that up at some

11 other point.

12       Let's go off the record and pick the next CMC

13 date.

14            (Discussion off the record.)

15       THE COURT:  Back on the record.

16       The next CMC is set for January 25th between

17 9:00 and 11:00 a.m.

18       I'll get an order out within the next few

19 days, a few business days.

20       Thank you for coming in.  It's good to see

21 everybody.

22    (Whereupon, proceedings adjourned at 10:17 a.m.)

23

24

25

```
 1   State of California                    )
                                            )
 2   County of San Francisco                )

 3

 4

 5        I, Mary Ann Scanlan, California Certified Shorthand

 6   Reporter No. 8875, do hereby certify:

 7        That I was present at the time of the above

 8   proceedings;

 9        That I took down in machine shorthand notes all

10   proceedings had and testimony given;

11        That I thereafter transcribed said shorthand notes

12   with the aid of a computer;

13        That the above and foregoing is a full, true, and

14   correct transcription of said shorthand notes, and a

15   full, true and correct transcript of all proceedings had

16   and testimony taken;

17        That I am not a party to the action or related to a

18   party or counsel;

19        That I have no financial or other interest in the

20   outcome of the action.

21

22   Dated:  October 29, 2018

23

24   _____

25        MARY ANN SCANLAN CSR No. 8875
```

**-**

**---ooo---** 12:3

**1**

**10** 44:13
**10:17** 58:22
**1128** 38:23
**11:00** 58:17
**12** 51:6
**13** 33:15
**138** 41:11
**15** 13:2
**16** 35:13,16
**162** 24:3
**17** 33:16 35:13 54:17
**19** 13:2 35:13
**1960s** 46:4
**1st** 43:7

**2**

**2** 38:15 41:6
**2007** 34:18
**2018** 12:2
**2019** 18:6
**2020** 48:10,17 53:8,17
**206** 53:7
**21st** 28:8
**22** 23:12
**25** 12:2
**25th** 58:16

**3**

**3,000** 41:10
**30** 56:14
**304** 48:10

**36(a)** 33:24
**37** 26:3

**4**

**4** 41:8
**40,000** 34:20

**5**

**50,000** 27:17

**6**

**60** 13:10,15,23
**60-day** 15:21
**626** 56:10

**7**

**70** 33:25 56:9
**700** 27:17
**760** 54:15
**7th** 50:7

**9**

**90** 13:24
**9:00** 58:17
**9:16** 12:2

**A**

**a.m.** 12:2 58:17,22
**ability** 47:21
**absolutely** 14:16 17:14
  38:8 49:6 54:5
**access** 25:2,5 26:4,13,
  21 31:5 39:15,18 40:14,
  15
**accessing** 22:15 40:21
**acres** 27:17 34:20
**actions** 51:24 52:1

**add** 19:1
**adding** 52:22
**additional** 17:1 30:11
**address** 29:12 33:3
  34:5 41:14 56:23
**addressed** 14:13
**addresses** 33:20
**adjourned** 58:22
**admissible** 39:21
**admitted** 29:24
**adopts** 36:12
**advance** 53:24
**adverse** 28:11
**affected** 51:21 52:1,17
**affirmative** 53:11
**affirmatively** 31:11
**afforded** 19:1
**age** 33:25
**agencies** 46:9
**agency** 45:8
**aggressive** 17:19
**agree** 14:11 20:9 22:7
  28:19 29:18 30:24
  32:21 35:4 37:11 41:1
  44:25 48:24 57:10
**agreed** 26:10 45:9
**agreement** 15:1 20:22
  25:2 26:3,8 29:22 45:14
  48:14 53:11
**agreements** 36:4
**ahead** 25:24 26:24 36:5
  39:17 40:22 55:5
**air** 52:18
**ALE** 18:2
**alert** 48:8
**allegation** 41:5
**allowed** 31:14 33:10
**analyzing** 27:19
**annoyance** 52:17

**anybody's** 45:25
**anytime** 35:9
**apologize** 17:12
**apparently** 27:23 54:7
  56:25
**appealing** 21:21
**appeals** 41:19,20,25
**appearances** 40:7
**applicable** 22:11
**applies** 23:9
**apply** 43:22
**appointed** 23:23
**approach** 13:1 16:1,24
  19:18 36:13 45:10 54:2
  57:19
**approached** 35:17
**April** 17:17 35:25 36:14
**areas** 20:6
**argument** 37:24 45:5
**arguments** 24:20
  42:16 50:4
**arise** 32:24
**arising** 34:24
**arrangement** 40:13
**asserting** 39:9
**assertions** 40:24
**assessing** 27:19
**assuming** 33:16 36:18
**Atlas** 13:8,16,23 15:10
  20:11,15,21 21:3,6,14
  22:2,5,9,12,17 23:10,17
  24:8,9 25:21,22 26:16
  27:14 29:22,24 31:4,17,
  20,22 35:23 36:19 37:7,
  23,24 38:4,6 39:1,7,10,
  19,25 40:3,4,22 42:7
  44:20,22,24 45:3,15
  46:18
**attend** 46:25
**attorney** 26:16,20 36:5
  39:25 40:2,10,19

SCANLAN
STONE

depos@scanlanstone.com
415.834.1114
Case: 19-30088    Doc# 2847-3    Filed: 07/02/19    Entered: 07/02/19 18:23:46    Page 61
of 70

**attorneys** 12:7 26:2,7, 9 47:8,17 54:11

**August/september** 48:15

**author** 18:10

**authority** 53:24

**avoided** 50:6

**aware** 17:16

**B**

**B-MINUS** 29:11

**baby** 45:23

**back** 12:8 14:20 15:6, 22 30:24 33:18 38:10 39:13,24 58:15

**backup** 43:19

**backward** 45:6

**backwards** 39:17 40:23

**Bagdasarian** 55:23 56:1,9,12,14

**balance** 50:11

**barrel** 16:18

**base** 47:19,25

**based** 36:8 42:4

**basically** 37:25

**basis** 35:17

**battle** 22:4

**Bay** 47:1,3,10 49:23,24 50:15

**began** 38:23

**begin** 27:2

**behavior** 28:20

**believing** 43:17

**bellwether** 12:24

**beneficial** 17:15

**benefits** 18:2

**benevolence** 44:12

**Bennett** 38:23

**bet** 13:1

**bit** 16:4 35:15 52:6

**blaming** 31:15

**body** 39:2

**boot** 51:6,11,12

**branch** 24:10,11 29:25 30:1

**briefly** 47:17 53:14

**bring** 57:7

**broad** 37:7,22

**brother's** 51:12

**brought** 57:7

**burden** 14:2 47:24

**burdensome** 18:7

**burned** 37:18 51:13

**business** 52:12,15 58:19

**Butte** 26:11

**C**

**Cal** 22:15 24:13 25:5,21 26:5,6,8,9,20 31:8,12 38:3,5,9 39:4 40:5,13, 15 45:4,7,12 57:3

**calendar** 48:16

**California** 34:13

**Calistoga** 30:15 39:3

**call** 52:17

**calling** 56:16

**cam** 39:2

**candidate** 21:14 23:10

**capable** 27:19

**carefully** 24:21

**Carolina** 49:10,12

**Cascade** 36:2 38:17

**case** 12:15 18:11 19:21 20:10,21,23 23:3 24:1, 19 30:5 32:2 33:15 34:8,15,25 35:2,3,4,8, 13,20 36:13,19 37:8

41:2,16 43:1 46:3,25 47:14 50:15,21,24 54:4

**cases** 12:24 13:9,12,25 14:1 15:18 16:8 17:22 18:3 19:9 21:18,22,23 26:14 28:17 33:17,21 34:4,12,22 36:15 42:23 47:22 49:5,17 53:3,5,9

**causation** 21:25 24:17

**caused** 37:14 41:1

**certainty** 27:13

**chance** 16:14 29:16 31:16 41:12 42:3 49:18

**change** 39:6,7 51:19

**changed** 51:1

**characterization** 44:23

**characterize** 45:21

**chat** 29:4

**Cherokee** 26:3

**circulated** 17:20

**claims** 51:18

**clear** 25:15 28:3 37:10, 20

**client** 16:16

**CMC** 14:25 18:15 19:12 24:20,25 27:23 58:12, 16

**CMO** 55:24

**CMO1** 23:23

**code** 20:17,20

**coincide** 34:4

**collapse** 24:12

**collection** 30:11

**collectively** 40:20

**commenced** 50:23

**comment** 14:9 42:3 49:11 52:20 53:13

**commented** 35:12

**comments** 12:7,9 13:21 18:24 20:1,11 48:18

**common** 21:2 28:17,20 38:16

**communities** 51:22

**community** 51:17

**company** 28:20

**complaint** 24:11 50:5

**complete** 56:6,15,20

**completely** 16:5 31:8, 18,22 32:10,14 51:7

**completion** 22:19 23:1,7

**complex** 17:18 21:25 31:1 36:1,15

**complexity** 54:4

**compliance** 55:22

**complicated** 30:23 35:4,22 38:1 39:10 52:13,14

**component** 55:24 56:19

**concern** 15:16 21:7 23:4 43:8

**concerned** 12:21 13:19

**concerns** 46:20 50:12

**concluded** 49:17

**conclusion** 31:11 42:9

**concur** 32:16

**concurrently** 15:21

**conducive** 54:3

**conductor** 31:20

**conference** 18:12 38:13 57:9,12

**conferred** 18:20

**confirm** 33:11

**confirmation** 26:12

**conflict** 57:22

**consecutively** 15:21

**consensus** 21:4,13 30:19 33:2 37:7,22

SCANLAN STONE

**consideration** 39:14

**consistent** 34:10
38:14

**consulted** 18:18

**contact** 20:23 24:9,10,
12,14 27:18 37:8 38:16

**contacted** 29:25 37:12

**contention** 38:19

**continues** 44:15

**continuing** 14:18 57:1

**convenient** 46:22,23
47:2

**coordinator** 36:7

**copy** 12:11

**Cordova** 25:3 26:5

**corporate** 22:19,23
28:18,19

**corporate-level** 43:7

**correct** 12:8 22:6

**counsel** 17:20,21 46:2

**counties** 26:11 47:1,3,
11,20 49:23,25

**county** 26:15 36:4
39:24 40:2 47:15

**couple** 12:14 19:22
20:18 43:8

**court** 12:4 14:11,16
15:8,24 17:6,9,14,16,24
18:10,15,18,23 19:2,4,
6,8 24:20 25:20,25
26:22,24 27:12,21 28:7,
12,15,23 29:1,5,7,13
30:7,19 31:1 32:12
33:3,16,17 36:12,20
37:1 38:19 42:2,10
43:2,13,20 44:7,9,14
46:11,13 48:24,25 49:2,
9 50:14 52:3,24 53:15,
19 54:5,16,22 55:2,8,
16,20 56:7,11,13,21,25
58:15

**courtroom** 40:16

**courts** 47:22

**cover** 46:15

**CPUC** 37:12

**Craig** 29:17

**create** 32:24

**credible** 41:13

**criminal** 40:11

**criteria** 52:16

**critical** 49:3,16 50:4

**current** 13:13

**cut** 33:18

**cutoff** 20:17 23:11,15
27:1 28:1,2,3,6,10,13,
16 32:18 43:6,22 44:17

---

**D**

**DA** 45:4

**DA's** 25:1,6 26:4,9,10,
12 45:13 57:2,3,8

**damages** 51:18 52:17,
19 54:8 55:21

**Daniel** 58:1

**dark** 45:18

**darn** 44:18 46:3

**data** 39:4

**date** 23:11,14,15 34:3
58:13

**dates** 52:25

**day** 39:13

**days** 12:14 13:10,15,
23,24 33:16 50:10
56:14 58:19

**de-energization** 50:9

**deactivated** 37:18

**deadline** 23:1,5,7
28:23 31:23,24,25

**deal** 45:4,13

**dealing** 25:6

**dealt** 31:23

**deaths** 24:2 27:16

**decade** 15:18

**December** 28:8 44:16

**decide** 17:24

**decision** 26:18

**decline** 57:10

**defendant** 27:5

**defendants** 25:11
47:15

**defense** 17:20

**delay** 22:14 31:14 53:9

**delayed** 17:13 31:2,14

**delaying** 43:25

**delivering** 51:20

**department** 39:3 48:9,
13,16 53:3,7

**depend** 46:17

**depends** 34:7 35:13

**depositions** 33:13
38:25 39:1

**designate** 53:24

**designed** 51:19

**destroyed** 41:7

**determined** 24:4

**devolve** 21:10

**Diego** 34:18

**differ** 35:1

**difference** 18:21 33:6
35:15

**differences** 35:5

**difficult** 47:9,11 50:10

**disagree** 38:5 49:2

**disagreements** 20:25

**discover** 43:10

**discovery** 14:18 20:17
22:19,23 23:2,4,7,9,11,
15 25:20 26:25 28:1,2,
3,4,10,12,16,18,20 30:9
31:2,23 32:18,19 36:7
38:13,24 39:8 43:4,5,6,
7,21,25 44:5,17,18
46:4,5,8

**discuss** 44:19 48:3

**discussion** 23:2 58:14

**discussions** 57:5

**dismissed** 54:19

**dispute** 21:11,16 42:4
44:25 52:7

**district** 26:2,7,9,16,20
36:4 39:24 40:2,10,19

**document** 18:24 47:19
52:21

**doubt** 36:9

**drafting** 27:23

**drag** 44:2

**draw** 42:9

**drop** 22:25

---

**E**

**early** 12:14 43:18 48:17

**easier** 46:21

**easy** 24:16

**effect** 13:3 51:19

**efficient** 14:20

**effort** 58:9

**efforts** 31:13

**electrical** 30:8,12,13

**electronically-stored**
29:2

**emphasize** 31:1

**end** 39:13

**energies** 19:22

**energy** 51:4

**enforcement** 40:17
45:8 46:9

**England** 50:22

**enormous** 47:24

**entities** 24:5 54:11

**ESI** 28:6 33:4 43:9

**essentially** 14:3 15:1

**established** 36:14,17

**establishes** 37:17

**estimated** 33:15

**estimation** 41:6

**evaluate** 46:6

**event** 30:12,13

**events** 49:5

**evidence** 22:15 24:24 25:2,5,16 26:4,10,13,21 27:3 28:16 30:11 31:3, 6,17 33:10 37:16 38:21 39:5,15,18,19,23 40:4, 14,16,21 45:9,21,24 46:1 56:3

**excluding** 38:17

**excuse** 26:6

**exists** 39:5

**expand** 16:4

**expect** 49:7 56:5

**experience** 57:25

**experiences** 50:3

**expert** 20:19 28:4

**experts** 22:4,5 24:24 25:8,10,17 27:20 33:11

**explain** 49:13

**explore** 14:21

**extended** 31:11

**extensive** 21:17

**extensively** 18:20

**extent** 22:18 23:19 27:15 53:5

**extremely** 30:23 47:11

**eyewitnesses** 30:18 38:25

---

**F**

**faces** 21:19

**facing** 19:20 42:22

**fact** 18:1 20:10 21:1 23:11 31:3,15 34:17

38:22 43:11 48:8

**facts** 37:22 49:15 51:16

**factually** 37:5

**failure** 23:25 24:2,11

**fair** 15:3 29:4 44:22,23 49:18

**fairly** 35:1

**fall** 48:17

**familiarity** 49:20 51:15

**fast** 57:6

**fatalities** 41:7

**feasible** 19:23,24

**February** 28:9 44:16

**feel** 29:9

**feeling** 51:3

**feelings** 27:5

**fell** 37:17 45:1

**fewer** 12:18

**figure** 16:25 42:24 57:17

**file** 34:1

**filed** 41:9 50:5 56:10

**final** 31:10 36:21

**find** 23:12 52:20 53:25

**fine** 18:8 43:9 57:10

**finish** 12:9 43:13

**finished** 25:7 26:15,18 27:1,2

**fire** 13:7,8 16:18 21:2,3, 4,8,15,17,20,21 22:8, 10,13,15,23 23:17 24:9, 10,13,18 25:5,21 26:5, 6,9,16,17,20 27:14 28:2,5 30:8,20 31:2,8, 12 32:7,8 34:12 37:14, 20 38:3,5,9,22 39:1,3,4 40:5,9,10,13,15 41:1,4, 5,17,23 42:19 45:4,7,12 50:3,13 51:12,16 57:3

**Fire's** 26:8

**fires** 13:2,16,18 14:19 15:20 17:18 21:11,14

22:16,17 23:10,22 26:1 28:22 31:25 34:11,14, 18,19 35:14,16 36:1,8, 10 38:17 42:24 43:22 44:1 45:12 50:1 56:4 57:4

**firm** 19:17 54:9

**firms** 18:21

**fit** 20:19 51:8

**fits** 35:12

**flight** 17:12

**focusing** 12:21

**folks** 20:13 50:14 57:21

**folks'** 25:12

**footage** 39:2

**footnote** 22:25

**forever** 14:12

**form** 24:10

**forward** 14:24 24:6 32:7,19 34:7 41:22 51:25

**frame** 48:15

**Francisco** 46:20 47:2 48:12 49:22,24 50:16 53:6

**Frank** 48:23

**Frantz** 54:10,23 55:7, 14,17,19,23

**front** 22:22 41:14

**fundamental** 18:21 24:23

**future** 19:12

---

**G**

**gap** 15:22

**general** 20:22 23:16 28:1 29:22 48:14 53:10

**generally** 22:3 47:13, 14

**generic** 28:6

**Gerald** 17:11

**give** 29:15 36:21 40:15

**giving** 44:12

**glad** 42:13 57:20

**global** 16:21 34:10 35:9 43:6

**good** 12:4 15:3,13 48:23 58:20

**goodness** 45:11

**grateful** 44:11

**group** 18:22 24:4 54:10,24 55:7,15

**guarantee** 16:13 46:9

**guess** 15:2 19:8 49:1

---

**H**

**half** 13:10 22:10 51:13

**handful** 33:13

**handle** 47:22

**handling** 55:24

**hands** 22:15 29:2

**hanging** 16:8

**happen** 34:15 41:24 45:19 47:16 57:6

**happened** 18:16,19 24:22 40:25 45:18 47:6

**happening** 42:19

**happy** 52:21

**hard** 25:1 42:8

**head** 53:11

**hear** 26:15 52:21 55:10

**heard** 27:8 33:20 38:12 39:23,24 40:6

**hearing** 12:12 30:10 32:14

**hearings** 30:7

**helpful** 12:13 24:6 25:25

**highest** 16:19

**hold** 55:3

home 25:12

Honey 26:2

Honor 14:10 15:9,13 16:3 17:7,12 18:14,17, 19,25 23:20 29:17 30:22 32:10,15 36:22 37:2 39:9,11 42:9,13 43:4,17,22 44:8 46:12 48:23 49:4,6,13 51:11 52:2,23 53:14,17,20,22 54:13,25 56:1,12

Honor's 15:16 43:23

hope 23:21

hoping 29:10

host 24:3

house 45:19 51:12

hundred 13:1

**I**

i.e. 44:1

idea 19:19

identified 21:13 38:5

ignition 13:5 20:24 21:2,5,10,13 29:23,24 30:3,20 38:20

ignorant 51:7

ill 34:1

impact 51:4

impacted 51:17

impetus 47:5 49:5

implicated 12:22

implicates 30:10

important 49:14 51:23

in-person 57:14

inarticulate 27:23

incident 37:11

including 24:4

inconceivable 25:9

indicating 23:3

individual 13:4 16:9

18:11 20:3 32:11 35:17 41:10 57:22

individuals 33:22,25 34:12

inevitably 41:19

informal 57:9,12

information 20:4 29:2 46:6 54:8 55:21 56:3,17

inspect 33:10 36:5 39:22 40:4

inspections 26:10

intended 28:3

interactions 40:8

interest 46:24 47:3,7

interested 23:18

interfere 36:19

intervals 14:22

investigating 40:18

investigation 40:3,10

invite 14:9 54:11 57:8

involve 30:8 38:6

involved 13:18 18:12 19:21 21:19 27:16 33:17 34:13 42:18 52:11

involves 20:14 25:10 34:11 37:8 38:11

issue 14:6,8 15:25 17:12 19:13 23:6 33:20 34:5 48:19 56:23

issued 38:9

issues 12:16 15:12 17:25 18:2 21:25 22:14 24:14 25:21 30:18 32:23,25 34:23 38:16 42:21 46:14,17 49:15, 20 50:1,2

italics 27:6

**J**

James 55:14

January 28:9 44:16

58:16

job 51:20

joint 18:11 23:3

judge 53:6,23,24 57:25 58:4

judged 51:25

judges 47:20

jury 46:21 47:5,10,13, 24 49:19 50:18,19,22, 25 51:7

Justice 57:23,25

**K**

Kelly 14:10,17 23:20 25:22 26:6,25 27:22 28:14,19,25 29:6,8,19, 23 30:24 31:23 32:11, 16 34:6 35:11 37:4 39:16,23 40:6 44:10 52:22

Kevin 15:13

key 39:14

kick 12:25 51:2

kind 25:11 45:17

knew 50:20,23

knowing 50:15 51:16

**L**

Lane 38:23

Laport 26:2 36:2

large 33:2 34:19

largely 33:12

larger 24:4

late 12:17 24:25 46:4 48:10

law 40:17 45:7 46:9 54:9,10,24 55:7,14

lawyer 45:23

lawyers 18:8 19:20 44:4

lead 40:3,9

leadership 18:22 23:23

leads 15:2 49:19

leaving 50:12

liabilities 16:19

liability 13:6 18:4 21:8, 19 24:15 34:17,23 35:6 36:14,17

liaison 40:8

lightly 33:24

likelihood 46:7

lines 37:12,18 48:7

listened 47:17

litigation 24:6 41:11

live 49:22 51:22

Lobo 36:2,6,8

location 30:12 37:16 46:16,17 47:6 48:5,19

locations 24:13 37:15, 19 38:6

long 14:15 20:7 24:10 45:5 53:17

long-term 14:7 19:14, 16

looked 30:2 49:14,15

loss 51:4 52:12

losses 52:15

lot 12:15 13:25 18:8 20:14 22:4 23:2 37:6,21 39:7 43:18 44:3,4 46:24 50:11,15

**M**

made 26:19 38:11 49:4

major 29:11 34:14 35:16

majority 56:2

make 20:1 27:19 28:3 31:12 40:13 45:9,12 48:3,24 53:13 56:20

SCANLAN STONE

**makes** 21:21 35:10,18, 21 36:11 41:16

**managed** 43:25

**management** 12:15 18:12 23:3 32:22

**management-related** 22:9

**March** 17:17 35:24 36:13 43:7

**March/april** 34:3

**matter** 19:10 25:14 27:4 46:5

**matters** 12:9 39:22

**Mayer** 58:1

**Mccourtney** 36:2,6,8

**Mcnicholas** 54:25 55:1,6,12,13

**mechanism** 17:2

**mediation** 12:24

**mediations** 58:7,10

**mediators** 57:20

**meeting** 57:14

**met** 18:20

**Michael** 23:20

**mid-february** 43:18

**million** 44:13 51:14

**mind** 36:9

**minimum** 24:3

**minute** 19:10 24:8

**minutes** 46:15 48:6

**missed** 29:6,10,11

**missing** 56:19

**modification** 28:4

**money** 58:9

**month** 28:9

**months** 27:11 32:6

**moral** 47:5 49:5

**morning** 12:4 15:13 48:23 54:1

**motion** 45:10 57:6

**motions** 34:1

**move** 12:10 15:4,11 17:5 27:6,14,15 41:22, 23 46:2,13

**moves** 14:21

**moving** 24:6 27:1,7 34:6 41:12 44:15

**multiple** 15:4 24:2,23 25:7,17 38:1 42:18

**multiple-fire** 34:15

**N**

**Napa** 26:15 39:24 40:2 47:20 53:22

**needed** 22:11

**needle** 14:21 15:5,11 27:6,15 41:12,23 46:3

**negotiating** 26:20

**negotiations** 57:1

**Nevada** 26:11 36:4

**news** 50:8

**nice** 29:1

**nods** 53:11

**non-referral** 26:18

**non-wineries** 52:11

**North** 47:1,3,10 49:10, 11,23,24 50:15

**note** 48:3

**noted** 21:16 24:25

**notion** 24:18 26:23

**number** 12:20,22 15:19,20 17:1 20:5 24:3 25:14 33:4 37:3 44:20 46:14 57:24

**numerous** 17:15

**Nuns** 26:3

**O**

**object** 52:22

**objection** 40:13,20

**obligation** 43:15

**occasions** 27:9

**occupied** 48:17

**occur** 39:8 58:7

**occurred** 36:5 49:6 50:9

**occurring** 30:16

**October** 12:2 50:7

**odd** 23:13

**off-the-record** 57:12

**offer** 17:7

**office** 55:23

**officers** 39:2

**on/off** 25:12

**open** 13:21

**operating** 28:21

**opinion** 18:21 28:21 35:15

**opportunity** 19:1

**order** 12:15 35:9 58:18

**origin** 24:13,22 25:15, 18 37:25 38:2,4 39:5,6 44:24

**Orsini** 15:13,14 16:3 35:11 37:2 38:21 42:8, 12 43:3,16,21 44:8 49:1,11 51:10 53:13,16, 20

**outage** 31:21

**P**

**pages** 44:13

**paid** 41:17

**papers** 54:14

**part** 25:15 32:3

**parties** 14:3 23:1,5 32:21 35:4 48:14

**pass** 53:12

**past** 27:10 53:10

**Patrick** 54:25 55:12

**peculiar** 28:5

**people** 12:18 18:1 20:9, 14 46:22,25 47:1 50:11, 17,20,21,23 51:2,6,22, 25 52:17 57:20,24

**people's** 23:18

**percent** 13:1 41:6,7,8

**perfect** 33:5

**period** 25:10 29:3 53:10

**permission** 53:7

**permit** 40:4

**person** 52:23

**perspective** 16:6,7,11 17:8 40:11 42:22

**Petri** 48:24

**PG&E** 19:19 21:18 22:1,7,10 23:2 24:11 25:19 28:18 29:16 30:1, 4 31:11 34:9 35:1 37:1, 10 41:1 42:5 47:12 50:6 51:19 52:12,16

**PG&E's** 16:6 21:15 22:19 23:4 31:13 42:22 44:11 51:24

**physical** 25:16 45:20, 24,25

**physically** 19:24

**pick** 50:20,23 58:12

**picture** 22:16

**PITRE** 48:23

**place** 17:5 42:19,20

**places** 29:24 30:16

**plaintiffs** 13:4,14 16:9 18:11 20:3 21:9 22:7,18 23:8 29:15,18 32:11,13 36:8 38:10 39:9 41:8, 10,16 42:2,6 44:20 46:23 47:7,8 50:4 52:5, 10 55:20 56:10 57:22 58:6

SCANLAN STONE

**plaintiffs'** 15:10 17:20 18:22 44:4 54:8 56:3

**plan** 12:5 14:7 17:21 19:14,16 47:19 51:8 53:6

**planning** 13:22

**pleaded** 24:10

**point** 13:25 15:17,19 17:3 20:24 25:18 28:14, 24 29:11 30:20,25 35:8 37:25 39:5 41:14 42:13, 15,17 43:23,24 49:4 52:8 57:2 58:11

**points** 21:14 24:22 25:15 33:3 38:1,4,20,22 39:5,7 42:18 43:3

**pole** 23:25 32:22 41:1,4 45:1,2

**police** 39:2

**posed** 14:14

**posited** 33:11

**position** 26:8 35:1 49:2,8

**possibly** 44:12

**potential** 16:19 22:14

**potentially** 40:19 50:13

**power** 24:1 50:7,12 51:4,20

**practical** 27:4

**precisely** 16:25

**prefer** 19:3,4 53:16

**preference** 33:21,23

**prejudice** 54:20

**prepared** 14:25 54:4

**preparing** 14:3

**presented** 50:5

**preside** 53:17

**presiding** 47:20 53:6, 23

**presumptuous** 26:23

**previous** 30:7

**privilege** 40:17,18 45:8

**probability** 16:20

**problem** 24:23 31:8

**problems** 43:19 57:18

**proceedings** 58:22

**produce** 43:15

**producing** 43:14

**proffer** 20:13

**proper** 18:3 49:19

**property** 52:18

**proposal** 20:21

**propose** 17:16

**proposed** 17:21 20:2 28:1,4 43:7

**proposes** 28:10

**prosecuting** 40:18,19

**prove** 24:15,16

**provide** 20:4,5 54:18

**provided** 54:14,21 55:21 56:18

**public** 24:5

**PUC** 24:12

**punitive** 51:18

**pursuant** 20:17,20

**push** 12:8 13:8

**put** 13:1 14:2 35:22 50:25 54:14 57:14

**puts** 49:1

Q

**qualify** 33:23

**quantify** 35:14

**queried** 47:12

**question** 15:2,3,4,22 21:12 24:9 31:7 42:14 44:23

**questions** 12:7 14:13 33:21,24 29:21

**quick** 43:3

**quickly** 12:18 15:14 40:17

R

**raised** 33:4

**reaction** 47:21

**read** 24:21

**ready** 18:4 33:12 34:4 35:18,24 36:10,12,24

**real** 18:1

**reason** 16:4,25 25:17 32:3

**reasons** 24:4 34:16

**recall** 28:7

**recognize** 22:3

**recognizes** 44:14

**record** 57:16 58:12,14, 15

**Redwood** 26:2

**reference** 57:23

**referencing** 28:1

**referral** 26:18

**referred** 25:6 26:2 57:4

**reflected** 23:19

**reforms** 46:4

**refuses** 40:15

**regard** 15:10 30:6 31:17,22 40:23 56:3

**Regina** 55:23,25

**regularly** 56:16

**reiterate** 29:23

**related** 34:23

**relative** 23:24 26:16

**relevant** 49:15

**reliable** 51:20

**reopen** 43:11

**report** 25:4,22 26:14,17 27:9 31:10,12,14,16

32:6 38:9 39:20,21 54:1

**reported** 24:11,13 30:1,2,4

**reports** 26:4 31:21 36:3 37:11

**representative** 54:9, 23

**represented** 34:11

**request** 15:10 43:11

**requires** 43:11 49:19

**reserve** 49:11

**residents** 51:14

**resolution** 12:25 16:21 21:23 24:7 41:23,24 43:1 49:16

**resolutions** 16:17

**resolve** 12:15 14:5 16:7 18:3 21:17,22 23:6 39:11 42:21,24 52:9

**resolved** 13:7,9,12 16:12 35:9 41:20

**respect** 12:20 13:22 21:7 22:12 23:8 38:8,18 39:15,18,25 40:6,24 41:3,11,17 43:4,5,6 49:3,25 52:25 54:7 57:1,20 58:5

**respectfully** 36:23 39:16

**responders** 39:3

**response** 14:13 15:2 18:10 28:21 44:9 56:24

**responses** 54:14,18, 21

**responsible** 20:25 27:22 28:22

**rest** 29:15 45:17

**result** 49:19

**results** 13:2

**return** 56:17

**review** 29:2 30:14 44:12

**risk** 46:6 50:12

**road** 13:19 19:19

**room** 12:7 46:23 57:24

**rough** 12:11 20:5

**roughly** 48:15 54:17

**run** 41:25

**running** 18:2

———————

**S**

———————

**safe** 51:20

**safety** 50:12

**sake** 45:11

**San** 34:18 46:20 47:1 48:11 49:22,24 50:16 53:5

**satellite** 39:4

**saving** 58:9

**schedule** 17:4

**section** 33:23

**select** 48:4

**selecting** 47:24

**selection** 47:10

**send** 53:21

**sense** 35:10,18,21 36:11 46:24 51:5

**separate** 15:25 16:5 32:25 34:18

**set** 13:15 15:23 16:1,24, 25 17:15 18:3 19:9,11 23:1,5,7,11,14,15 27:25 28:2,5,12,23 35:18 36:11,24 44:1,20 45:15 53:3 58:16

**setting** 13:25

**settle** 53:2

**settlement** 34:7,8,10

**settling** 34:21,22

**seven-zero** 56:11

**Seventy** 56:11

**shooting** 45:17

**short** 15:3

**shorter** 22:2 25:10

**shortly** 17:1 56:6

**shot** 42:5,7 44:21

**side** 27:24 45:25 46:5 52:14

**sides** 18:8 53:10

**significant** 29:25 49:25

**Simon** 15:9 29:17 30:22 32:17,20 37:4 38:12 39:16

**simple** 33:1 37:9,24 41:2 48:24

**simpler** 30:5

**simplest** 20:10 32:2,21 33:2 35:21

**simply** 13:7,8 35:7

**simultaneously** 44:5

**single** 18:15,24 19:9 20:24 21:5 28:23 37:25 41:4

**Singleton** 17:7,11 18:14,17,19,25 19:5,7, 17 32:15 36:22 37:4 41:15 46:12 54:9,13,17

**sir** 48:22 55:2

**sit** 16:16 57:15

**situation** 32:5

**size** 16:12 35:12

**skip** 44:16

**skips** 28:8

**slap** 32:24

**slot** 15:19

**slowly** 55:4,11

**smallest** 34:20

**snapped** 32:22

**solicited** 20:12

**Sonoma** 26:10 40:7 47:20 51:13 53:22

**sooner** 41:17

**soot** 52:18

**sort** 47:4 51:8 57:17

**sound** 20:18

**source** 21:2,5 44:24

**sources** 13:5 21:2,10

**speak** 12:18 15:14 55:10,25 58:2

**speaking** 47:13,14

**specific** 43:25 51:16

**specifically** 29:20 31:5 32:1

**specter** 42:23

**spectrum** 51:10

**spent** 19:22 49:23

**spots** 38:7

**stand** 40:1 49:7

**standard** 53:25

**staring** 16:18

**start** 12:6 23:22 51:12 55:8,9

**started** 12:17 14:6 19:15 37:20 50:13,19

**starting** 39:1 42:19

**starts** 19:12

**state** 55:2,4,11

**statement** 18:12,16 23:3,12 24:20,25 27:24 28:8 38:14

**statements** 38:10 51:24

**States** 50:22 51:2

**status** 26:1 54:12 55:17,19,20

**steer** 12:8

**stipulation** 43:16

**stop** 14:9 23:16

**straight** 45:11

**straightforward** 33:15 35:2

**streamlined** 33:14

54:3

**strength** 35:6

**strikes** 46:21

**strip** 33:18

**strongly** 37:17 49:17

**structures** 24:3 27:17 41:6

**student** 29:9

**submission** 38:15

**submissions** 54:8

**submit** 35:21 36:24 37:11

**submitted** 15:1 38:14 56:2

**subrogation** 24:5 29:18 32:10 58:6

**substantially** 58:8

**success** 46:7

**successful** 36:18

**sufficient** 46:6

**sufficiently** 58:8

**suggest** 20:3 24:16 27:25 28:25 41:13

**suggested** 13:4 19:18 20:7,16 21:18 22:10 23:8 25:11,19 30:7 33:19 34:2 52:10,16 58:5

**suggestion** 21:16,24 28:12 37:6,21

**suggests** 17:15 46:2

**suit** 41:9

**suitable** 24:19

**Sulphur** 17:16 20:2,11, 14 22:12,18 23:10,17, 25 32:1,9,21 33:4,9,22 34:6,25 35:20,24 36:13 38:17 40:24,25 41:3,5, 12,15 46:18

**summary** 20:1 21:12

**summer** 48:10

**super** 35:22

supports 32:10

supposed 28:7

surges 51:4

switch 25:12

---

**T**

table 25:5 26:19 57:15

tables 57:14

taking 40:9 49:8

talk 12:6,16 13:20 14:20 15:6 16:16 19:12 24:8 25:3 29:16 44:17 46:16 48:7 53:6 57:11

talking 42:4 47:14 52:15

tapes 43:19

target 27:7 44:15

telephone 56:22 57:13

ten 16:8 33:17 38:25 50:9

tend 51:5

tentative 52:13

terminate 36:21

terms 26:19 32:17 33:1, 9 35:5

testimony 20:6

theorized 33:12

thing 22:21 27:14 34:24 45:3

things 26:22 27:1,2,12, 19 30:16,17 37:3 43:14 44:13 45:23 47:6,15,25 50:20 51:9

thinking 14:6 57:23

thinks 42:5 52:12

thought 12:24 13:13 14:8 48:4 56:18

thoughts 36:21

throw 22:5

Thursday 12:2

tied 16:20 31:3

time 14:4 18:24 22:10 25:10 31:12 41:21 44:15 48:15 49:23 53:10,18 55:4 58:9

timeline 33:19

today 12:16 14:6 17:24 20:5 33:20 39:5 44:25

today's 12:12

told 45:24

topic 12:6,9,10 19:25 23:16 48:7 50:10 52:4

topics 12:5 48:2,7

total 25:14 41:6,7 56:10

touch 47:19,25 54:19

track 43:24

transcript 12:12

treat 35:10

tree 20:23 24:1,9,12,14 27:18 29:25 30:1,3 37:8,17

tremendous 14:2

trial 13:20,24 15:4 16:24 17:21 18:4 19:9, 11,15 20:1,2,8,14 22:2, 8 23:14 28:13 31:24 32:4,17,19 33:8 34:3 35:22 39:12 41:18 42:20,21 44:1 47:5,13 48:11,16 49:9,18 52:25 53:17,24 54:1,3 58:7,8

trials 12:20,22 14:4,12 15:4,11,20 16:14,15 17:1,4,5,16 22:20 48:11 50:19 53:21

Trotter 57:24,25

true 20:9,15,22 22:1,13 36:1 37:5 38:2 39:20,25 40:22 46:19

truth 25:14 46:5

Tubbs 13:7,15,22,23 15:23 16:13,24 17:2 20:11,15 21:2,4,8,14, 15,19 22:5,8,12,17 23:10,17 24:18 25:4

26:17 27:3,9 30:5,6,20 31:1,10,14,22 32:5,6 35:3,23 37:25 38:8,11, 17,20,22 39:1,10,18,21 40:9,10,14,16,23 41:24 42:6,17,18 43:1 44:21 45:5,9,14 46:8,17

turn 19:10,25 29:16 37:1 52:4

turning 21:15 50:6

two-thirds 16:18 21:18

type 31:2,17 54:2

types 52:5

---

**U**

ultimate 21:8

ultimately 42:16 53:21

unable 23:6

undermined 24:19

understand 17:23 47:6

understanding 36:3

understands 19:20

United 50:22 51:1

universal 15:1

unrelated 16:22

---

**V**

vast 56:2

Vaughn 58:4

vegetation 22:8 30:9 32:22 37:7,12,14 38:11, 16 42:17,19 50:1

vegetation-related 15:12 30:17

vicinity 38:23

victims 16:10

view 32:14 39:11 44:6 50:14 51:15 52:2,13 53:20,22 54:2

views 23:18 47:18,23

visceral 47:21

visibility 42:25

voice 17:9

volitional 31:13

---

**W**

wait 13:23,24 19:14 53:8

waiting 26:15 53:25 56:17

walk 38:10

Walker 58:4

wanted 33:3,17 34:5 56:23

ways 13:6 49:25

weather 50:2

wedded 14:23

week 12:14 27:9 38:14

weeks 27:10 28:10 29:3 43:8 44:12

Weinstein 58:1

whichever 16:2

Wind 17:17 36:1,15

wineries 52:11

winning 42:6,7 44:21

witnesses 20:6,19 22:9

woodpeckers 45:1

words 12:19 14:18 15:15 32:5

work 13:12,17 22:22 32:18 57:16,18 58:10

worked 25:1

working 26:7,11 53:22

world 18:1 33:5

wrapped 17:4

written 47:19 52:21

wrong 17:2 22:6

wrongful 27:16

SCANLAN
STONE

depos@scanlanstone.com
415.834.1114

---

**Y**

---

**year** 13:10 17:22 34:21
  53:10

**years** 13:11,18 16:9
  18:3 19:23 34:14

**yesterday** 40:12

**York** 49:21 50:8

**Yuba** 26:11

---

**Z**

---

**Zinc** 45:19

SCANLAN
STONE

depos@scanlanstone.com
415.834.1114

Case: 19-30088    Doc# 2847-3    Filed: 07/02/19    Entered: 07/02/19 18:23:46    Page 70
of 70