WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**DEBTORS' REPLY IN SUPPORT OF THE D&O INSURANCE MOTION AND RESPONSE TO OBJECTIONS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>[Relates to Docket. Nos. 2471 and 2835]<br><br>Date: July 9, 2019<br>Time: 9:30 am, Pacific Time<br>Place: United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), file this reply (the "**Reply**") in support of the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363 and 105(A) and Fed. R. Bankr. P. 6004 Authorizing Debtors to Purchase Directors and Officers Insurance* [Docket. No. 2471] (the "**Motion**" or the "**D&O Insurance Motion**") and in response to the Objection to the Motion [Docket. No. 2835] (the "**Objection**") and the Supplemental Objection to the Motion (the "**Supplemental Objection**") filed by the Official Committee of Unsecured Creditors (the "**Creditors Committee**").[1]

In support of this Reply, the Debtors submit the Supplemental Declaration of Janaize Markland (the "**Markland Sup. Declaration**"), and the Declaration of Theodore E. Tsekerides (the "**Tsekerides Declaration**") filed contemporaneously herewith.

## The Court Should Grant the Relief Sought in the Motion

**A. The Debtors Evaluated the Need for Additional D&O Insurance, Properly Explored Alternatives to the EIS Policy, and Exercised Their Business Judgment to Select the Most Effective Coverage for the Lowest Cost**

It is within the Debtors' business judgment to operate their affairs, including finding suitable and cost-appropriate insurance for their officers and directors. As outlined below and in the Motion, the Debtors have satisfied the requisite standard in their decision to purchase the EIS Policy: the exercise of a reasonable business judgment, on the basis of some articulated business justification, and the absence of bad faith, whim or caprice. *See In re Ernst Home Ctr., Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); and *In re New Bedford Capacitor, Inc.*, No. 01-14680-JNF, 2003 WL 25889620, at *5 (Bankr. D. Mass. June 27, 2003). As the Court in New Bedford recognized, in considering the exercise of business judgment in connection with the approval of a debtor's purchase of an extension of its

---

[1] Capitalized terms used but not herein defined have the meaning ascribed to them in the Motion.

directors' and officers' insurance, the following undertakings by the debtor satisfied the required standard: (a) an evaluation of the need for the additional insurance, weighing the costs, risks, and potential benefits, and (b) a consideration of the various options available to the estate for the purchase of such additional insurance. *Id* at *5. That the potential risks of liability to the estate were unknown at the time of the proposed purchase was not a bar to the Court granting the relief sought – only a potential for claims to be asserted was required. *Id*. Those circumstances plainly exist here, and there is no basis to challenge the Debtors' business judgment based on allegations that procurement of coverage is premature or that adequate coverage already exists, particularly where the premiums are fully refundable, with interest, if the insurance coverage is not utilized.

As discussed in the Motion, the Debtors' counsel, insurance brokers, and other professionals identified a legitimate risk that the Debtors' current D&O insurance may not provide adequate protection for the New Directors and Officers. *See* Motion at 8-10; *see also* Deposition Transcript of Janaize M. Markland, dated July 3, 2019 (the "**Markland Deposition**") at 26-33.[2] The Creditors Committee concedes the importance of maintaining appropriate coverage to protect the New Directors and Officers. *See* Objection, ¶ 1. Once the need for further coverage was identified, the Debtors explored three potential options for securing additional coverage that would address the risk that the 2017 and/or 2018 Policies are exhausted or otherwise unavailable to pay claims asserted during the Chapter 11 Cases. In deciding to purchase the EIS Policy, the Debtors sought to isolate the funds in a protected captive cell and ensure that any payment of proceeds would be subject to an approved insurance contract and overseen by an experienced, regulated third party (here, EIS). The Debtors also determined that, compared to traditional insurance, the EIS Policy was the lowest cost means of procuring insurance and provided the New Directors and Officers with the most effective coverage. Specifically, the total administrative costs of maintaining the proposed policy over its 5-year lifetime are expected to be less than $100,000, and any portion of the premium not used to cover

---

[2] Excerpts of the Markland Deposition are attached to the Tsekerides Declaration as **Exhibit A.**

postpetition claims arising from postpetition alleged wrongful acts by the directors or officers will be recouped by the Debtors, plus interest less any expenses. The Court should defer to the Debtors' exercise of their reasonable and prudent business judgment and grant the D&O Insurance Motion.

### B. The Purchase of the EIS Policy Cannot be Postponed Without Leaving the New Directors and Officers at Risk of No Coverage

In objecting to the Motion, the Creditors Committee attempts to unduly minimize the very real uncertainty that the New Directors and Officers confront: In the unfortunate event of a new wildfire and the inevitable postpetition claims arising from such a fire, the New Directors and Officers may be unable to access D&O insurance coverage.

The Creditors Committee's contention that the purchase of $50 million in coverage is "premature" and suggestion that the Debtors can postpone purchasing coverage while the claims unfold is misplaced, as it does not protect the New Directors and Officers from the risk of non-covered claims arising from postpetition events. Postponing obtaining coverage does not work. The 2019 California wildfire season has already started. EIS cannot issue the EIS Policy after an event takes place and claims have been filed. Only claims that occur *after* the inception of the policy would be covered under the policy—this is fundamentally how insurance works. *See* Markland Deposition at 61-62. Unless and until the EIS Policy is in place, there is the risk of a postpetition event (*e.g.*, wildfire) that promptly results in claims against the New Directors and Officers before EIS has a chance to issue the policy.

### C. The Creditors Committee Mischaracterizes the Risk of Insurers' Attempting to Treat All Wildfire Claims as Relating Back to 2017

The Creditors Committee also downplays in its Objection the risk that the existing insurers will assert that all wildfire claims should be pushed back into the 2017 policy period. But the risk is real. The 2018 Policies and 2017 Policies are "claims-made" policies, which means that they provide coverage, subject to all terms and conditions, for claims first asserted during the policy period.

If the D&O insurers take the position that claims from the 2017 and 2018 wildfires constitute a single claim for purposes of coverage, which AEGIS Security Insurance Company, the Debtors' primary D&O insurance carrier, has already done,[3] they may contend that all the wildfire claims, even those filed in 2019 and 2020, trigger coverage only under the 2017 Policies. Markland Deposition at 27-28. As a consequence, the risk that insurers will attempt to push the claims back into 2017 is far from hypothetical.

Further, the fact that expenses are still within the retention does not reduce the risk of exhaustion of the 2017 Policies and/or 2018 Policies on prepetition claims. While there is a stay now, as the various claims against the Debtors' officers and directors are later litigated, there is a substantial risk of one or both towers of coverage exhausting, leaving nothing for the New Directors and Officers to use in defense of postpetition claims. In fact, plaintiffs in the PERA litigation are seeking to move forward with their claims against the Debtors' current and former officers and directors.[4]

### D. The Creditors Committee Misrepresents the Risk of Uncertain Coverage Facing the New Directors and Officers

As discussed in detail in the Motion, the 2017 and 2018 Policies contain a priority of payments clause. This clause provides for the insurers to prioritize payments on account of claims arising from alleged prepetition wrongful acts over claims alleging postpetition conduct. If a claim were to be asserted against the New Directors and Officers arising from a postpetition event, such as a wildfire, such claims would be noticed under the 2018 Policies. However, if the insurers believe that the prepetition claims may exhaust the 2017 Policies and/or 2018 Policies, the New Directors and

---

[3] As stated in the Motion, by setting forth potential positions that the insurers may assert with respect to coverage under the 2017 and 2018 Policies, the Debtors are not waiving any rights or admitting the validity of any positions that may be taken by the insurers. The Debtors reserve all of their rights to dispute any such positions under the policies and at law in any appropriate forum.

[4] See Debtors' Motion for a Preliminary Injunction as to *In re PG&E Corp Securities Litig.*, 18-CV-03509 (N.D. Cal.) and Memorandum of Points and Authorities in Support, Adv. Pro. No. 19-03039 (DM) (Bankr. N.D. Cal. June 18, 2019) [Docket No. 2].

Officers will face the serious risk that the insurers will not agree to make *any* defense cost payments under the 2018 Policies for the postpetition claims arising from the new wildfires, unless or until the insurers obtain a declaration that such payments may or must be made. Thus, without the EIS Policy, there is a risk of a postpetition event (*e.g.*, wildfire) that results in claims against the New Directors and Officers for which coverage may be unavailable or so uncertain as to create an unreasonable risk of no coverage for the New Directors and Officers.[5]

It would be asking far too much of directors of a public company, let alone a company operating as a debtor in possession whose current and former officers and directors are already facing claims based on prior wildfires, to continue to sit in such capacity without the certainty of D&O insurance. That protection and safety valve is ubiquitous among similarly situated companies, and the Debtors have undertaken exhaustive efforts to obtain an appropriate level of coverage in a fiscally prudent manner. While the Creditors Committee correctly points out that the Debtors are obligated to indemnify the directors (on an administrative claim basis) should the need arise, the benefit of the EIS Policy is that if an indemnifiable event occurs now (which may not be automatically stayed as against the officers and directors), and the Debtors cannot (for whatever reason) indemnify or advance defense costs, the officers and directors will have an independent right to access the policy and utilize insurance to defend themselves.

### E. The Motion is Supported by Appropriate Evidence

The Supplemental Objection alleges that the Debtors' supporting declarant, Janaize Markland, has insufficient personal knowledge of certain matters contained in her declaration filed in support of the Motion (the "**Markland Declaration**"). The standard the Supplemental Objection

---

[5] The Creditors Committee notes in their objection that the New Directors and Officers are covered by the 2018 Policies, the terms of which were extended to May 2020. However, this is misleading as that extension did not result in the purchase of any new limits. It simply extended the existing 2018 Policies under which claims had already been tendered. The insurers' refusal to offer any new limits evinces that no insurers wanted to take on the risk of covering a claim arising from a new wildfire.

purports to apply to the adequacy of the Markland Declaration does not reflect the standard required by the Federal Rules of Evidence.

The Debtors' insurance operations, unremarkably for organizations the size of the Debtors, are operated by a number of employees of the Debtors, supported by insurance brokers and counsel. Specifically, Ms. Markland works closely with and relies upon Marsh, the Debtors' insurance broker, in the ordinary course of arranging the Debtors' D&O insurance coverage. *See* Markland Deposition at 10-11, 13, 20-21. It cannot be reasonably expected that Ms. Markland, or indeed any other individual, could have first-hand knowledge of every matter of relevance to the Debtors' D&O insurance policies. However, as the employee responsible for the Debtors' insurance portfolio, Ms. Markland does indeed have the requisite knowledge to support the statements in her declaration and to the extent she does not have first-hand knowledge of some information, she was informed or became aware of these matters in the ordinary course of her employment by other employees or agents of the Debtors, whose roles it was to inform Ms. Markland of such information. *See Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir. 1990) (CEO's personal knowledge of negotiations and agreement could be presumed); *see also Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 206 F.3d 1322, 1330 (9th Cir. 2000) ("Personal knowledge can be inferred from an affiant's position.") (citations omitted). Additionally, courts have recognized that a declarant's personal knowledge can come from review of the contents of files and records. *See Laurant Beverly Hills v. Ford Motor Co.,* 108 F.3d 338 (9th Cir. 1996) ("[The declarant] established that he had personal knowledge of the events and transactions to which he refers in his declaration. The mere fact that he was out of the country during the time that these events took place does not indicate that he lacks personal knowledge of them."); *see also Aniel v. GMAC Mortg., LLC*, No. C 12-04201 SBA, 2012 WL 5373388, at *6 (N.D. Cal. Oct. 30, 2012) ("[P]ersonal knowledge can come from the review of the contents of business records, and an affiant may testify to acts that she did not personally observe but which have been described in business records.").

The characterization of the Markland Deposition in the Supplemental Objection is also

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

incomplete and misleading in many respects. First, the allegations in paragraph 7 of the Supplemental Objection, that Ms. Markland was not immediately familiar at her deposition with the specific details of all the communications in which an insurance carrier indicated an intention to treat claims arising from the 2017 and 2018 wildfires as a single claim, does not render her unable to give testimony on the subject. Ms. Markland testified that she was aware of the correspondence with the carriers and her Supplemental Declaration contains the relevant correspondence Ms. Markland reviewed as part of her job duties, which contains statements that the Debtors' primary D&O insurer under the 2017 Policies and 2018 Policies is provisionally treating certain claims noticed by the Debtors relating to the 2018 wildfires as a single claim along with claims previously noticed by the Debtors in relation to the 2017 wildfires. *See* Markland Sup. Declaration at ¶¶ 6-8 and Ex. A.

In respect of the allegation in paragraph 8 of the Supplemental Objection, Ms. Markland does not need to know the detailed merits of the pending claims to know whether further costs will be incurred, or to know that the claims are substantial. Moreover, she testified that she is aware of the broad strokes of what the claims are about, which is more than enough to know they threaten the amount of insurance available to the New Directors and Officers. *See* Markland Deposition at 18, 30-32

In paragraph 9 of the Supplemental Objection, the Creditors Committee again seeks to impose an impossible standard on the decision of the Debtors to supplement their D&O insurance. The Creditors Committee essentially demands that the Debtors face a liquidated claim prior to attempting to insure against it. As outlined above, Ms. Markland identified substantial uncertainty as to the adequacy of the existing D&O insurance. Rather than a hypothetical "nightmare" scenario, there are very plausible scenarios where, even if the coverage limits are not exhausted, the New Directors and Officers will not have access to insurance to fund their defense costs without the EIS Policy being in place. In respect of the necessity of the EIS Policy to enable board member retention and recruitment, Ms. Markland clearly outlines, based on her experience in obtaining D&O coverage since 2014, her belief as to the importance of adequate D&O insurance to the Debtors' officers and

directors in her deposition. *See* Markland Deposition at 52-53.

Finally, the allegation in paragraph 11 of the Supplemental Objection that the Debtors could acquire a new policy "whenever [they] want" fails to reflect the further testimony of Ms. Markland that the Debtors would be unable to obtain coverage under the EIS Policy for losses that occur prior to the policy being taken out. Markland Deposition at 61. This underscores the need for the Debtors to place the EIS Policy as soon as possible.

Accordingly, the Objection should be overruled and the D&O Insurance Motion should be granted.

Dated: July 8, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

*/s/ Theodore E. Tsekerides*
Theodore E. Tsekerides

*Attorneys for Debtors and Debtors in Possession*