# EXHIBIT A

# BAILEY | CAVALIERI

KEITH A. LITTLE
klittle@baileycav.com
614-229-3264

January 23, 2019

Robin Reilly
Chief Counsel
Pacific Gas and Electric Company
P.O. Box 7442
San Francisco, CA 94120
Email: robin.reilly@pge.com

**VIA EMAIL and**
**REGULAR U.S. MAIL**

Re:     Insured:     PG&E Corporation
       AEGIS Policy:     Directors and Officers Liability
       AEGIS Policy No.:     DP5008417P
       AEGIS File No.:     52069
       Marsh File No.:     18SANF283776
       Matter:     California Wildfires Derivative Litigation

Dear Ms. Reilly:

As you will recall, we have been retained by Associated Electric & Gas Insurance Services Limited and its general managing agent, AEGIS Insurance Services, Inc. (collectively, "AEGIS"), as coverage counsel in connection with the above-referenced matter. On behalf of AEGIS, this letter acknowledges receipt of a copy of the complaint filed in the following lawsuit (the "Lawsuit"):

> Ron Williams v. Anthony F. Earley, Jr., et al., Case No. 3:18-cv-07128, United States District Court, Northern District of California.

We are directing this letter to you as the authorized insurance representative of PG&E Corporation and Pacific Gas and Electric Company (collectively, "PG&E" or the "Company"), and the individual Insureds under Directors and Officers Liability Insurance Policy No. DP5008417P (the "Policy"). To the extent that you are not acting on behalf of any of the Insureds for insurance coverage purposes, please forward a copy of this letter to their authorized insurance representative(s) and inform us with whom we should communicate in the future concerning this matter.

This letter sets forth AEGIS' preliminary analysis of coverage under the Policy with respect to the Lawsuit.[1] If, after reviewing this letter, you have any questions or comments

---
[1] By letters dated December 20, 2017 and September 5, 2018, AEGIS addressed coverage for certain lawsuits noticed by PG&E in the attached Exhibit A (the "Previously Noticed Matters"). As the Lawsuit appears to be based on the same or substantially similar alleged wrongdoing as set forth in the Previously Noticed Matters, AEGIS adopts, incorporates and restates herein the

Bailey Cavalieri LLC • 10 West Broad Street • Suite 2100 • Columbus, Ohio 43215-3422
P 614.221.3155  F 614.221.0479  W baileycav.com

regarding this analysis, please contact us at your convenience. If you or the Insureds disagree with AEGIS' analysis, we also invite you to provide any additional information or materials that you believe support a contrary conclusion.

A.  The Lawsuit

The Lawsuit was filed on November 21, 2018 by certain PG&E shareholders derivatively ("Plaintiffs") on behalf of the Company against the following defendants: Anthony F. Earley, Jr., Jason P. Wells, Geisha J. Williams, Patrick M. Hogan, Julie M. Kane, Dinyar B. Mistry, David S. Thomason, Lewis Chew, Fred J. Fowler, Maryellen C. Herringer, Jeh C. Johnson, Richard C. Kelly, Roger H. Kimmel, Richard A. Meserve, Forrest E. Miller, Eric D. Mullins, Rosendo G. Parra, Barbara L. Rambo, Anne Shen Smith, Nickolas Stavropoulos, and Barry Lawson Williams (collectively, the "Individual Defendants").[2]

The Lawsuit asserts that PG&E's power lines were at least partially responsible for the Northern California Wildfires, which began on or about on October 8, 2017. According to the Lawsuit, on or about October 12, 2017, the California Public Utilities Commission ("CPUC") ordered the Company to preserve all evidence related to the Northern California Wildfires. In response to news of PG&E's potential connection to the Northern California Wildfires, the Company's market capitalization allegedly dropped 22.2% (or by $15.22/share) on October 16, 2017. In addition to the Northern California Wildfires, the Lawsuit alleges that a subsequent fire was ignited in Butte County, California, on November 8, 2018, following a threatened (but unexecuted) safety-based power shutdown (the "Camp Fire"). The Lawsuit alleges that PG&E informed California regulators that a high-voltage line near the Camp Fire's point of origin "had an issue" just before the fire began. According to the Lawsuit, on November 12, 2018, the CPUC announced that it had launched an investigation into PG&E's regulatory compliance related to the Camp Fire. As a result of this announcement, Plaintiffs allege that the Company's stock price fell by 16.5% (or by $7.88/share) on the same day.

The Lawsuit alleges that the Individual Defendants willfully or recklessly made or caused the Company to make material misstatements about the Company's compliance with California safety regulations in breach of their fiduciary duties. Plaintiffs further allege that the Individual Defendants failed to correct the Company's purported misstatements, failed to maintain internal controls, engaged in insider sales while the Company's stock price was artificially inflated, and engaged in a conspiracy to conceal that the Company's compliance with California laws and regulations was inadequate.

Plaintiffs allege that, as a result of the Individual Defendants' breaches of fiduciary duties and other misconduct, the Company has suffered damages, including but not limited to: (i) costs incurred from defending against a securities class action filed against the Company and various

---

coverage issues and defenses set forth in AEGIS' December 20, 2017 and September 5, 2018 letters as being equally applicable to the Lawsuit.

[2] The Lawsuit names PG&E Corporation and Pacific Gas and Electric Company as nominal defendants.

of its directors and officers, and the costs associated with related internal investigations; (ii) legal fees associated with defense of the fires and damages if the Company is found responsible; (iii) Individual Defendants' compensation and benefits; and (iv) loss of reputation.

The Lawsuit sets forth the following causes of action: (1) Violations of Section 14(a) of the Securities Exchange Act of 1934; (2) Breach of Fiduciary Duties; and (3) Unjust Enrichment.

B.  The Policy

The Policy is a claims-made policy, effective for the period from May 20, 2017 to May 20, 2018 (the "Policy Period").[3] Subject to its terms, conditions, and exclusions, the Policy provides coverage under the following Insuring Agreements:

Insuring Agreement I(A) of the Policy provides, in relevant part, that AEGIS shall pay on behalf of the Directors and Officers all Ultimate Net Loss for which the Insured Organization has not provided indemnification and which arises from a Claim first made against the Directors or Officers during the Policy Period for a Wrongful Act that takes place before or during the Policy Period and is actually or allegedly caused, committed, or attempted by the Directors or Officers while acting in their respective capacities as Directors or Officers.

Insuring Agreement I(B) of the Policy provides, in relevant part, that AEGIS shall pay on behalf of the Insured Organization all Ultimate Net Loss for which the Insured Organization has, to the extent required or permitted by applicable law, granted indemnification to the Directors and Officers and which arises from a Claim first made against the Directors or Officers during the Policy Period for a Wrongful Act that takes place before or during the Policy Period and is actually or allegedly caused, committed, or attempted by such Directors or Officers while acting in their respective capacities as Directors or Officers.

Insuring Agreement I(C) of the Policy provides, in relevant part, that AEGIS shall pay on behalf of the Insured Organization all Ultimate Net Loss that arises from a Securities Claim first made against the Insured Organization during the Policy Period for a Wrongful Act that takes place before or during the Policy Period. As amended by Endorsement No. 5, Insuring Agreement I(C) further provides that AEGIS shall pay on behalf of the Insured Organization all Defense Costs incurred by the Insured Organization (including through its board of directors or

---

[3] Section VI(B) of the Policy, in relevant part, provides that multiple Claims arising out of a single Wrongful Act shall be deemed to be a single Claim, even if made against different Insureds, and shall be deemed to have been first made on the date the first of such multiple Claims is first made against any of the Insureds, whether such date is before, during or after the Policy Period or the Discovery Period. Section VI(Y) of the Policy further provides that all breaches of duty, neglect, errors, misstatements, misleading statements or omissions actually or allegedly caused, committed or attempted by or claimed against one or more of the Insureds having as a common nexus any single or series of related facts, circumstances, situations, events, transactions or causes shall be deemed to be a single Wrongful Act. Based on the information currently available, AEGIS has concluded that the Lawsuit has a common nexus of facts, circumstances, situations, events, transactions or causes as the Previously Noticed Matter which are deemed to be a single Wrongful Act. Therefore, AEGIS is provisionally treating the Lawsuit as a single Claim with the Previously Noticed Matters. AEGIS reserves its rights in the event it is later determined that the Lawsuit does arise out of a single Wrongful Act or constitute a single Claim with the Previously Noticed Matters.

any committee of its board of directors) in seeking the dismissal of a shareholder derivative lawsuit on behalf of the Insured Organization.

The Policy provides an aggregate Limit of Liability of $35 million subject to a $5,000,000 Retention for each Claim under Insuring Agreements I(B) and I(C). AEGIS shall not be liable for any Ultimate Net Loss within the Retention or in excess of the Limit of Liability.

C.  Coverage Discussion

AEGIS believes it is prudent to identify for you actual and potential coverage issues that may, depending upon further developments, result in a limitation or loss of coverage under the Policy with respect to the Lawsuit. This discussion is based upon the unsubstantiated allegations in the Lawsuit and is not intended to suggest that those allegations have any legal or factual merit. This discussion is also not intended to be exhaustive or exclusive.

First, coverage is only available under the Policy for certain sums the Directors and Officers become legally obligated to pay as Ultimate Net Loss by reason of a Wrongful Act. The term Wrongful Act is defined at Section VI(Y) of the Policy as any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission actually or allegedly caused, committed or attempted by (1) any Director or Officer while acting individually or collectively in their capacity as such, or with respect to any Directors or Officers of an Insured Organization that is not a partnership, any other matter claimed against them solely by reason of their being Directors or Officers; or (2) solely with respect to Insuring Agreement I.(C), an Insured Organization. No coverage is available under the Policy to the extent any sums incurred by the Directors and Officers are on account of wrongdoing actually or allegedly committed by them in their capacities as directors, officers, or employees of any uninsured entities, in their personal capacities, or in any other uninsured capacity.

Second, Section VI(X) of the Policy defines Ultimate Net Loss to mean the total Indemnity and Defense Costs with respect to each Claim to which the Policy applies. Ultimate Net Loss does not include any amount allocated pursuant to Condition (T) of the Policy. The definition of Indemnity in Section VI(I) of the Policy, as amended by Endorsement Nos. 13 and 14, provides that the term Indemnity shall not include, among other things: (i) fines or penalties, other than civil penalties assessed pursuant to § 2(g)(2)(B) of the Foreign Corrupt Practices Act of 1977, or any fines or penalties for an unintentional or nonwillful violation of law, (ii) any amount that represents disgorgement or restitution, or (iii) any amount that is uninsurable under applicable law; provided, however, AEGIS shall not assert that Ultimate Net Loss is disgorgement, restitution or uninsurable due to an actual or alleged violation of §§ 11, 12 or 15 of the Securities Act of 1933. AEGIS will not be liable under the Policy to the extent the Insureds are liable for any sums that do not constitute covered or insurable Ultimate Net Loss under the Policy or applicable law.

Third, Section VII(B) of the Policy, as amended by Endorsement No. 19, provides that AEGIS shall not be liable to make any payment for that portion of Ultimate Net Loss or Investigative Expense arising from any Claim made against any Insured based upon, arising out of or attributable to such Insured: (1) having gained any personal profit, financial advantage or remuneration to which such Insured was not legally entitled; or (2) having committed a deliberately fraudulent or criminal act or omission or any intentional violation of any law, statute or regulation, if established by a final, non-appealable adjudication in the underlying proceeding. If such an adjudication occurs, AEGIS shall not be liable to make payment under the Policy for Ultimate Net Loss or Investigative Expenses attributable to the excluded conduct.

Fourth, Condition (J) in Section IX the Policy states that the Policy shall be in excess of and shall not contribute with any other valid and collectible insurance with any other insurer that is available to the Insureds with respect to a Claim also covered by the Policy, regardless of whether such insurance is issued before, concurrent with, or after the inception of the Policy, other than insurance that is issued specifically as insurance in excess of the insurance afforded by the Policy. Nothing in the Policy shall be construed to make the Policy subject to the terms of other insurance. Please promptly notify any other insurer(s) of any other policy or policies that may potentially provide coverage for this matter and send to us copies of all communications with any such other insurer relating to the Lawsuit or the circumstances giving rise to the Lawsuit.

Fifth, Condition (T) in Section IX of the Policy states that if a Claim is made against both Insureds who are covered for such Claim and others, or if a Claim against the Insureds includes both covered and non-covered matters, the Insureds and AEGIS shall allocate any defense costs, settlement, judgment or other loss on account of such Claim between covered Investigative Expenses or Ultimate Net Loss attributable to the Claim against the Insureds and non-covered loss. Such allocation shall be based upon the relative legal and financial exposure of each party to such Claim for covered and non-covered matters.

D.  Defense Arrangement

In accordance with Section IX(F) of the Policy, it is the duty of the Insureds, and not the duty of AEGIS, to investigate and defend Claims made against the Insureds. AEGIS shall not be called upon to assume charge of the investigation, settlement, or defense of any Claim made against any Insured. However, AEGIS shall have the right and shall be given the opportunity to associate with the Insureds in the investigation, settlement, defense, and control of any Claim. The Insureds are required to use diligence and prudence at all times in the investigation, settlement, and defense of any Claim. Further, the Insureds and AEGIS agree to cooperate in the investigation, settlement, and defense of any Claim.

AEGIS understands that the Insureds have retained Robert Perrin and James Brandt of Latham & Watkins LLP to represent PG&E, Steven Scholes of McDermott Will & Emery to represent the current and former officer defendants, and Paul Curnin of Simpson Thacher & Bartlett LLP to represent the outside director defendants in connection with the Lawsuit. Please

provide us with the hourly rates for those attorneys and any other attorneys that are expected to be involved in defending the Insureds in this matter. AEGIS' consent to the proposed defense arrangements shall be subject to the following: (1) defense counsel only charging reasonable and necessary fees and expenses; (2) the reservation of rights set forth within this letter; and (3) satisfaction of the applicable Retention.

In addition, AEGIS must be provided with at least quarterly status reports, a defense cost budget through each phase of the litigation, and copies of defense costs statements, itemized as to the nature of the individual services rendered, the identity of the individual attorney providing the services, the time allocated to the specific service and a description of all disbursements. AEGIS will not reimburse charges for word processing, secretarial or similar services that are part of general overhead expenses.

E.  Reservation of Rights

In addition to the coverage issues and defenses set forth above, AEGIS expressly reserves all of its rights and defenses under the Policy and available at law with respect to this matter, including, without limitation, the right to assert any of the foregoing coverage defenses and to raise additional Policy terms, conditions and defenses as additional facts come to our attention. Nothing herein shall be construed as a waiver of any rights or defenses that AEGIS now has or hereafter may have under the Policy or at law. AEGIS recognizes that you are similarly reserving your rights.

*   *   *

While we encourage you to first contact us with any questions or concerns you may have with regard to the positions expressed in this letter, you may be entitled to have your claim reviewed by the California Department of Insurance to the extent that you disagree with any or all of the positions we have expressed herein. Your inquiry should be directed as follows:

> State of California Department of Insurance
> Claims Services Bureau
> 300 South Spring Street, 11th floor
> South Tower
> Los Angeles, CA 90013
> 1-800-927-4357 (calling from within CA)
> 213-897-8921 (calling from outside CA)

Robin Reilly
January 23, 2019
Page 7

                Sincerely,

                BAILEY CAVALIERI LLC

                Keith Little

cc:    Dan Bailey, Bailey Cavalieri, LLC (dbailey@baileycav.com)
       Mee Choi, AEGIS (meechoi@aegislimited.com)
       Janaize Markland, Pacific Gas and Electric Company (j5mp@pge.com)
       Colleen Erwin, Marsh (colleen.erwin@marsh.com)
       Damian Brew, Marsh (Richard.d.brew@marsh.com)
       Brian Jordan, Bailey Cavalieri, LLC (bjordan@baileycav.com)

Robin Reilly
January 23, 2019
Page 8

## **Exhibit A**

1. <u>Fireman's Retirement System of St. Louis v. Geisha J. Williams, et al.</u>, Case No. CGC-17-562591, Superior Court of California, San Francisco County;

2. <u>Jeffrey Lentine v. Geisha J. Williams, et al.</u>, Case No. CGC-17562553, Superior Court of California, San Francisco County;

3. <u>David C. Weston v. PG&E Corporation, et al.</u>, Case No. 3:18-cv-03509, United States District Court, Northern District of California;

4. <u>Jon Paul Moretti v. PG&E Corporation, et al.</u>, Case No. 3:18-cv-03545, United States District Court, Northern District of California; and

5. <u>Oklahoma Firefighters Pension and Retirement System v. Lewis Chew, et al.</u>, Case No. 3:18-cv-04698, United States District Court, Northern District of California.

# BAILEY | CAVALIERI

KEITH A. LITTLE
klittle@baileycav.com
614-229-3264

May 10, 2019

Robin Reilly
Chief Counsel
Pacific Gas and Electric Company
P.O. Box 7442
San Francisco, CA 94120
Email: robin.reilly@pge.com

**VIA EMAIL and**
**REGULAR U.S. MAIL**

Re:     Insured:     **PG&E Corporation**
        AEGIS Policy:     Directors and Officers Liability
        AEGIS Policy No.:     DP5008417P
        AEGIS File No.:     52069
        Marsh File Nos.:     18SANF266620; 18SANF267614; 18SANF283776; 19SANF292184; 19SANF288169; 19SANF290390; 19SANF290392; and 19SANF293077
        Matter:     California Wildfires Litigation

Dear Ms. Reilly:

As you will recall, we have been retained by Associated Electric & Gas Insurance Services Limited and its general managing agent, AEGIS Insurance Services, Inc. (collectively, "AEGIS"), as coverage counsel in connection with the above-referenced matter. On behalf of AEGIS, this letter acknowledges receipt of copies of the complaints filed in the following lawsuits (collectively, the "Securities Lawsuits"):

1. The Second Amended Complaint filed in the lawsuit captioned <u>In re PG&E Corporation Securities Litigation</u>, Case No. 3:18-cv-03509, United States District Court, Northern District of California (the "Consolidated Lawsuit"); and

2. <u>York County on behalf of the County of York Retirement Fund, et al. v. Barbara L. Rambo, et al.</u>, Case No. 3:19-cv-00994, United States District Court, Northern District of California (the "York County Lawsuit").

In addition, this letter acknowledges receipt of copies of complaints filed in the following derivative lawsuits (collectively, the "Derivative Lawsuits"):

1. <u>Rick Bowlinger v. Lewis Chew, et al.</u>, Case No. CGC-18-572326, Superior Court of the State of California, San Francisco County;

Bailey Cavalieri LLC • 10 West Broad Street • Suite 2100 • Columbus, Ohio 43215-3422
P 614.221.3155   F 614.221.0479   W baileycav.com

Case: 19-30088    Doc# 2883-1    Filed: 07/08/19    Entered: 07/08/19 09:54:50    Page 10 of 19

    2. <u>Bob Haberg v. Lewis Chew, et al.</u>, Case No. CGC-19-573190, Superior Court of the State of California, San Francisco County; and

    3. <u>Charles Blackburn v. Richard Meserve, et al.</u>, Case No. 5:19-cv-00501, United States District Court, Northern District of California (the "Blackburn Lawsuit").[1]

We are directing this letter to you as the authorized insurance representative of PG&E Corporation and Pacific Gas and Electric Company (collectively, "PG&E" or the "Company"), and the individual Insureds under Directors and Officers Liability Insurance Policy No. DP5008417P (the "Policy"). To the extent that you are not acting on behalf of any of the Insureds for insurance coverage purposes, please forward a copy of this letter to their authorized insurance representative(s) and inform us with whom we should communicate in the future concerning this matter.

This letter sets forth AEGIS' coverage analysis under the Policy with respect to the Securities Lawsuits and Derivative Lawsuits (collectively, the "Lawsuits"). If, after reviewing this letter, you have any questions or comments regarding this analysis, please contact us at your convenience. If you or the Insureds disagree with AEGIS' analysis, we also invite you to provide any additional information or materials that you believe support a contrary conclusion.

A.     <u>The Securities Lawsuits</u>

    1.     <u>The Consolidated Lawsuit</u>

On December 14, 2018, Plaintiffs filed the Second Amended Complaint in the Consolidated Lawsuit against the following defendants: PG&E, Anthony Earley, Jr., Geisha Williams, Nickolas Stavropoulos, Julie Kane, Christopher Johns, and Patrick Hogan. The Second Amended Complaint alleges a Class Period of April 29, 2015 to November 15, 2018.

Plaintiffs allege that defendants caused the Company to make materially false and misleading statements regarding the Company's efforts to maintain and improve its electricity transmission lines and its ability to minimize potential safety issues in connection with the Northern California Wildfires. Specifically, plaintiffs in the Consolidated Lawsuit allege that defendants caused the Company to make material misstatements and omissions beginning on April 29, 2015 when Defendant Johns assured investors on a conference call of the Company's commitment to "[step] up vegetation management activities to mitigate wildfire risk." Plaintiffs allege that defendants continued to make misstatements during the Class Period in connection

---

[1] By letters dated December 20, 2017, September 5, 2018, and January 23, 2019, AEGIS addressed coverage for certain lawsuits noticed by PG&E in the attached <u>Exhibit A</u> (the "Previously Noticed Matters"). As the Securities Lawsuits and Derivative Lawsuits appear to be based on the same or substantially similar alleged wrongdoing as set forth in the Previously Noticed Matters, AEGIS adopts, incorporates and restates herein the coverage issues and defenses set forth in AEGIS' December 20, 2017, September 5, 2018, and January 23, 2019 letters as applicable to the Securities Lawsuits and Derivative Lawsuits.

Robin Reilly
May 10, 2019
Page 3

with the Company's filings with the Securities & Exchange Commission ("SEC") and in statements to investors. Among other things, the Second Amended Complaint asserts that defendants concealed the Company's failure to comply with various safety regulations, which resulted in a subsequent fire that was ignited in Butte County, California, on November 8, 2018, following a threatened (but unexecuted) safety-based power shutdown (the "Camp Fire").

The Consolidated Lawsuit alleges that the truth about the Company's disclosures began to emerge on or about on October 8, 2017 when numerous wildfires started in Northern California. On October 13, 2017, the Company allegedly filed a Form 8-K with the SEC disclosing an investigation by California authorities into whether the Company was responsible for those wildfires. On December 20, 2017, the Company allegedly issued a press release announcing the suspension of its cash dividend because of the uncertainty associated with the investigation. Plaintiffs assert that the truth continued to emerge on May 25, 2018, when the California Department of Forestry and Fire Protection ("CDFFP") issued a press release announcing its determination that PG&E's failure to remove vegetation from the areas surrounding several of its power lines was the cause of wildfires in two counties. The Second Amended Complaint alleges that between June and November 2018, the market continued to learn the truth concerning the Company's alleged misstatements as additional information was disclosed by the Company about the 2017 fires and its potential involvement in the Camp Fires.

The Consolidated Lawsuit asserts causes of action for: (1) violations of Section 10(b) of the Exchange Act and Rule 10b-5 against all Defendants; and (2) violations of Section 20(a) of the Exchange Act against the Company; (3) violations of Section 20(a) of the Exchange Act against the Individual Defendants; and (4) "alter ego" liability for violations of Section 10(b) of the Exchange Act against the Company.

2. The York County Lawsuit

On February 22, 2019, the York County Lawsuit was filed against numerous individual defendants affiliated with the Company and various underwriters.[2] The York County Lawsuit alleges that defendants caused the Company to make various misstatements about its compliance with safety rules and regulations in connection with the Northern California Wildfires.

In particular, the York County Lawsuit alleges that the defendants caused the Company to make material misstatements and omissions in connection with its Registration Statements for senior note offerings filed with the SEC in March 2016, December 2016, March 2017, and April 2018. The York County Lawsuit alleges that the defendants made misstatements by falsely representing that the Company had taken adequate precautionary measures to prevent wildfires

---

[2] On May 7, 2019, the York County Lawsuit was consolidated with the Consolidated Lawsuit. A Third Amended Consolidated Class Action Complaint is due on or about May 28, 2019. The Consolidated Lawsuit also includes the Blackburn Lawsuit and the following lawsuits which were previously acknowledged by AEGIS: Oklahoma Firefighters Pension and Retirement System v. Lewis Chew, et al., Case No. 3:18-cv-04698, United States District Court, Northern District of Californi,a and Ron Williams v. Anthony F. Earley, Jr., et al., Case No. 3:18-cv-07128, United States District Court, Northern District of California.

BAILEY|CAVALIERI

and was in compliance with applicable safety rules and regulations. The York County Lawsuit also asserts that the Company failed to adequately disclose the risks associated with the Company's alleged compliance failures. The York County Lawsuit alleges that, following the Company's April 2018 note offering, various corporate disclosures and publicly available information began to reveal the Company's "wholesale disregard" for safety measures, including the Company's purported role in causing the 2017 fires and Camp Fire.

The York County Lawsuit asserts causes of action against for: (1) violations of Section 11 of the Securities Act of 1933; and (2) violations of Section 15 of the Securities Act.

B.  The Derivative Lawsuits

The Derivative Lawsuits were filed by PG&E shareholders derivatively on behalf of the Company against one or more of the following defendants: Anthony F. Earley, Jr., Jason P. Wells, Geisha J. Williams, Patrick M. Hogan, Julie M. Kane, Dinyar B. Mistry, David S. Thomason, Lewis Chew, Fred J. Fowler, Maryellen C. Herringer, Jeh C. Johnson, Richard C. Kelly, Roger H. Kimmel, Richard A. Meserve, Forrest E. Miller, Eric D. Mullins, Rosendo G. Parra, Barbara L. Rambo, Anne Shen Smith, Nickolas Stavropoulos, Barry Lawson Williams, Christopher P. Johns, and Benito Minicucci.[3]

The Derivative Lawsuits assert that defendants breached their fiduciary duties to the Company by diverting millions of dollars of corporate funds away from safety, maintenance, and operations projects that could have prevented various fires and explosions, including the Camp Fire and its injuries to direct victims and to the Company's reputation and financial conditions. Plaintiffs allege that PG&E has a long history of safety and maintenance violations beginning several decades ago and running through the Camp Fire in 2018. In addition to the alleged pattern and practice of putting profits and individual compensation ahead of safety and compliance and the financial exposures associated with the Northern California Wildfires, plaintiffs allege that defendants have (i) made material misrepresentations regarding PG&E's compliance, (ii) caused PG&E catastrophic financial losses, and (iii) exposed PG&E to new criminal liability. Specifically, the Derivative Lawsuits allege that, on November 27, 2018, Federal Judge William H. Alsup of the Northern District of California issued an order in the San Bruno Criminal Proceeding against PG&E "demanding that PG&E provide 'an accurate and complete statement' of its role in the Camp Fire and a disclosure of any other related activity that violated the Company's post San Bruno fire probation."

The Derivative Lawsuits sets forth some or all of the following causes of action: (1) Breach of Fiduciary Duty, (2) Abuse of Control, (3) Corporate Waste, and (4) Unjust Enrichment.

---

[3] The Derivative Lawsuits name PG&E Corporation and/or Pacific Gas and Electric Company as nominal defendants.

C.  The Policy

The Policy is a claims-made policy, effective for the period from May 20, 2017 to May 20, 2018 (the "Policy Period").[4] Subject to its terms, conditions, and exclusions, the Policy provides coverage under the following Insuring Agreements:

Insuring Agreement I(A) of the Policy provides, in relevant part, that AEGIS shall pay on behalf of the Directors and Officers all Ultimate Net Loss for which the Insured Organization has not provided indemnification and which arises from a Claim first made against the Directors or Officers during the Policy Period for a Wrongful Act that takes place before or during the Policy Period and is actually or allegedly caused, committed, or attempted by the Directors or Officers while acting in their respective capacities as Directors or Officers.

Insuring Agreement I(B) of the Policy provides, in relevant part, that AEGIS shall pay on behalf of the Insured Organization all Ultimate Net Loss for which the Insured Organization has, to the extent required or permitted by applicable law, granted indemnification to the Directors and Officers and which arises from a Claim first made against the Directors or Officers during the Policy Period for a Wrongful Act that takes place before or during the Policy Period and is actually or allegedly caused, committed, or attempted by such Directors or Officers while acting in their respective capacities as Directors or Officers.

Insuring Agreement I(C) of the Policy provides, in relevant part, that AEGIS shall pay on behalf of the Insured Organization all Ultimate Net Loss that arises from a Securities Claim first made against the Insured Organization during the Policy Period for a Wrongful Act that takes place before or during the Policy Period. As amended by Endorsement No. 5, Insuring Agreement I(C) further provides that AEGIS shall pay on behalf of the Insured Organization all Defense Costs incurred by the Insured Organization (including through its board of directors or any committee of its board of directors) in seeking the dismissal of a shareholder derivative lawsuit on behalf of the Insured Organization.

The Policy provides an aggregate Limit of Liability of $35 million subject to a $5,000,000 Retention for each Claim under Insuring Agreements I(B) and I(C). AEGIS shall not be liable for any Ultimate Net Loss within the Retention or in excess of the Limit of Liability.

D.  Coverage Discussion

AEGIS believes it is prudent to identify for you actual and potential coverage issues that may, depending upon further developments, result in a limitation or loss of coverage under the Policy with respect to the Lawsuits. This discussion is based upon the unsubstantiated allegations

---

[4] As discussed below, AEGIS is provisionally treating the Securities Lawsuits and Derivative Lawsuits together with the Previously Noticed Matters as a single Claim deemed first made against Insureds during the Policy Period. *See infra* Section D. Coverage Discussion, First paragraph.

in the Lawsuits and is not intended to suggest that those allegations have any legal or factual merit. This discussion is also not intended to be exhaustive or exclusive.

First, the Policy affords coverage for Claims first made against the Insureds during the Policy Period. Section VI(B) of the Policy provides, in relevant part, that multiple Claims arising out of a single Wrongful Act shall be deemed to be a single Claim, even if made against different Insureds, and shall be deemed to have been first made on the date the first of such multiple Claims is first made against any of the Insureds, whether such date is before, during or after the Policy Period or the Discovery Period. Section VI(Y) of the Policy further provides that all breaches of duty, neglect, errors, misstatements, misleading statements or omissions actually or allegedly caused, committed or attempted by or claimed against one or more of the Insureds having as a common nexus any single or series of related facts, circumstances, situations, events, transactions or causes shall be deemed to be a single Wrongful Act. Based on the information currently available, AEGIS has concluded that the wrongdoing alleged in the Securities Lawsuits and Derivative Lawsuits have a common nexus of facts, circumstances, situations, events, transactions or causes as the wrongdoing alleged in the Previously Noticed Matters which are deemed to be a single Wrongful Act. Therefore, AEGIS is provisionally treating the Securities Lawsuits and Derivative Lawsuits as a single Claim with the Previously Noticed Matters. AEGIS reserves its rights in the event it is later determined that the Lawsuits do not arise out of a single Wrongful Act or constitute a single Claim with the Previously Noticed Matters and/or to the extent it is later determined that the Lawsuits and Previously Noticed Matters arise out of a prior Wrongful Act and are deemed to be a single Claim first made prior to the Policy Period, including but not limited to the San Bruno matter.[5]

Second, coverage is only available under the Policy for certain sums the Directors and Officers become legally obligated to pay as Ultimate Net Loss by reason of a Wrongful Act. The term Wrongful Act is defined at Section VI(Y) of the Policy as any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission actually or allegedly caused, committed or attempted by (1) any Director or Officer while acting individually or collectively in their capacity as such, or with respect to any Directors or Officers of an Insured Organization that is not a partnership, any other matter claimed against them solely by reason of their being Directors or Officers; or (2) solely with respect to Insuring Agreement I.(C), an Insured Organization. No coverage is available under the Policy to the extent any sums incurred by the

---

[5] The Lawsuits reference legal proceedings filed against the Insureds and a related court-ordered probation program arising from the San Bruno explosion that occurred on September 9, 2010. In this regard, the Lawsuits allege that the Company's conduct allegedly giving rise to the Northern California Wildfires (i) may arise out of the same pattern and practice of wrongdoing as the San Bruno matter, and (ii) may violate the terms of the Company's probation program relating to the San Bruno incident and may give rise to additional criminal liability in connection with that matter. As you are aware, AEGIS handled numerous matters reported by the Insureds relating to the San Bruno incident under Policy No. D0181A1A10, which was effective for the policy period from April 30, 2010 to April 30, 2011, under Claim Number 181-44213. Accordingly, AEGIS reserves its rights to the extent that the Lawsuits and the Previously Noticed Matters are deemed to be a single Claim with the San Bruno matter and are deemed first made under Policy No. D0181A1A10.

Directors and Officers are on account of wrongdoing actually or allegedly committed by them in their capacities as directors, officers, or employees of any non-insured entities, in their personal capacities, or in any other uninsured capacity.

Third, Section VI(X) of the Policy defines Ultimate Net Loss to mean the total Indemnity and Defense Costs with respect to each Claim to which the Policy applies. Ultimate Net Loss does not include any amount allocated pursuant to Condition (T) of the Policy. The definition of Indemnity in Section VI(I) of the Policy, as amended by Endorsement Nos. 13 and 14, provides that the term Indemnity shall not include, among other things: (i) fines or penalties, other than civil penalties assessed pursuant to § 2(g)(2)(B) of the Foreign Corrupt Practices Act of 1977, or any fines or penalties for an unintentional or nonwillful violation of law, (ii) any amount that represents disgorgement or restitution, or (iii) any amount that is uninsurable under applicable law; provided, however, AEGIS shall not assert that Ultimate Net Loss is disgorgement, restitution or uninsurable due to an actual or alleged violation of §§ 11, 12 or 15 of the Securities Act of 1933. AEGIS will not be liable under the Policy to the extent the Insureds are liable for any sums that do not constitute covered or insurable Ultimate Net Loss under the Policy or applicable law.

Fourth, Section VII(B) of the Policy, as amended by Endorsement No. 19, provides that AEGIS shall not be liable to make any payment for Ultimate Net Loss or Investigative Expense arising from any Claim made against any Insured based upon, arising out of or attributable to such Insured: (1) having gained any personal profit, financial advantage or remuneration to which such Insured was not legally entitled; or (2) having committed a deliberately fraudulent or criminal act or omission or any intentional violation of any law, statute or regulation, if established by a final, non-appealable adjudication in the underlying proceeding. If such an adjudication occurs, AEGIS shall not be liable to make payment under the Policy for Ultimate Net Loss or Investigative Expenses attributable to the excluded conduct.

Fifth, Section VII(C) of the D&O Policy provides that AEGIS shall not be liable to make any payment for Ultimate Net Loss or Investigative Expense arising from any Claim made against any Insured for bodily injury, mental anguish, mental illness, emotional upset, sickness or disease sustained by any person, for death of any person or for physical injury to or destruction of tangible property or the loss of use thereof. Given the injuries and damages arising from the wildfires at issue in the Lawsuits, AEGIS reserves its rights pursuant to this exclusion.

Sixth, Condition (J) in Section IX the Policy states that the Policy shall be in excess of and shall not contribute with any other valid and collectible insurance with any other insurer that is available to the Insureds with respect to a Claim also covered by the Policy, regardless of whether such insurance is issued before, concurrent with, or after the inception of the Policy, other than insurance that is issued specifically as insurance in excess of the insurance afforded by the Policy. Nothing in the Policy shall be construed to make the Policy subject to the terms of other insurance. Please promptly notify any other insurer(s) of any other policy or policies that may potentially provide coverage for this matter and send to us copies of all communications

with any such other insurer relating to the Lawsuits or the circumstances giving rise to the Lawsuits.

Seventh, Condition (T) in Section IX of the Policy states that if a Claim is made against both Insureds who are covered for such Claim and others, or if a Claim against the Insureds includes both covered and non-covered matters, the Insureds and AEGIS shall allocate any defense costs, settlement, judgment or other loss on account of such Claim between covered Investigative Expenses or Ultimate Net Loss attributable to the Claim against the Insureds and non-covered loss. Such allocation shall be based upon the relative legal and financial exposure of each party to such Claim for covered and non-covered matters.

E. Defense Arrangement

In accordance with Section IX(F) of the Policy, it is the duty of the Insureds, and not the duty of AEGIS, to investigate and defend Claims made against the Insureds. AEGIS shall not be called upon to assume charge of the investigation, settlement, or defense of any Claim made against any Insured. However, AEGIS shall have the right and shall be given the opportunity to associate with the Insureds in the investigation, settlement, defense, and control of any Claim. The Insureds are required to use diligence and prudence at all times in the investigation, settlement, and defense of any Claim. Further, the Insureds and AEGIS agree to cooperate in the investigation, settlement, and defense of any Claim.

AEGIS understands that the Insureds have retained Robert Perrin and James Brandt of Latham & Watkins LLP to represent PG&E, Steven Scholes of McDermott Will & Emery to represent the current and former officer defendants, and Paul Curnin of Simpson Thacher & Bartlett LLP to represent the outside director defendants in connection with the Previously Noticed Matters. Please confirm that those firms will also be defending the respective defendants in the Lawsuits and please provide us with the hourly rates for those attorneys and any other attorneys that are expected to be involved in defending the Insureds in this matter. AEGIS' consent to the proposed defense arrangements shall be subject to the following: (1) defense counsel only charging reasonable and necessary fees and expenses; (2) the reservation of rights set forth within this letter; and (3) satisfaction of the applicable Retention.

As set forth in our prior correspondence regarding coverage for the Previously Noticed Matters, AEGIS requested at least quarterly status reports, a defense cost budget through each phase of the litigation, and copies of defense costs statements, itemized as to the nature of the individual services rendered, the identity of the individual attorney providing the services, the time allocated to the specific service and a description of all disbursements.[6] To date, AEGIS has not received any information regarding defense cost budgets or defense costs incurred to date (including but not limited to a summary of defense costs incurred or copies of the defense cost

---

[6] AEGIS also notes that it will not reimburse charges for word processing, secretarial or similar services that are part of general overhead expenses.

statements). Accordingly, AEGIS reiterates its requests for that information and for regular status updates on this matter.

F.  Reservation of Rights

In addition to the coverage issues and defenses set forth above, AEGIS expressly reserves all of its rights and defenses under the Policy and available at law with respect to this matter, including, without limitation, the right to assert any of the foregoing coverage defenses and to raise additional Policy terms, conditions and defenses as additional facts come to our attention. Nothing herein shall be construed as a waiver of any rights or defenses that AEGIS now has or hereafter may have under the Policy or at law. AEGIS recognizes that you are similarly reserving your rights.

\*   \*   \*

While we encourage you to first contact us with any questions or concerns you may have with regard to the positions expressed in this letter, you may be entitled to have your claim reviewed by the California Department of Insurance to the extent that you disagree with any or all of the positions we have expressed herein. Your inquiry should be directed as follows:

> State of California Department of Insurance
> Claims Services Bureau
> 300 South Spring Street, 11th floor
> South Tower
> Los Angeles, CA 90013
> 1-800-927-4357 (calling from within CA)
> 213-897-8921 (calling from outside CA)

Sincerely,

BAILEY CAVALIERI LLC

*[signature]*

Keith Little

cc: Dan Bailey, Bailey Cavalieri, LLC (dbailey@baileycav.com)
Mee Choi, AEGIS (meechoi@aegislimited.com)
Janaize Markland, Pacific Gas and Electric Company (j5mp@pge.com)
Colleen Erwin, Marsh (colleen.erwin@marsh.com)
Damian Brew, Marsh (Richard.d.brew@marsh.com)
Brian Jordan, Bailey Cavalieri, LLC (bjordan@baileycav.com)

## Exhibit A

1. <u>Fireman's Retirement System of St. Louis v. Geisha J. Williams, et al.</u>, Case No. CGC-17-562591, Superior Court of California, San Francisco County;

2. <u>Jeffrey Lentine v. Geisha J. Williams, et al.</u>, Case No. CGC-17562553, Superior Court of California, San Francisco County;

3. <u>David C. Weston v. PG&E Corporation, et al.</u>, Case No. 3:18-cv-03509, United States District Court, Northern District of California;

4. <u>Jon Paul Moretti v. PG&E Corporation, et al.</u>, Case No. 3:18-cv-03545, United States District Court, Northern District of California;

5. <u>Oklahoma Firefighters Pension and Retirement System v. Lewis Chew, et al.</u>, Case No. 3:18-cv-04698, United States District Court, Northern District of California; and

6. <u>Ron Williams v. Anthony F. Earley, Jr., et al.</u>, Case No. 3:18-cv-07128, United States District Court, Northern District of California.