1           UNITED STATES BANKRUPTCY COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3                     -oOo-

4   In Re:                    ) Case No. 19-30088
                              ) Chapter 11
5   PG&E CORPORATION AND PACIFIC )
    GAS AND ELECTRIC COMPANY  ) San Francisco, California
6                             ) Tuesday, July 9, 2019
                   Debtors.   ) 9:30 AM
7   _____ )
                                MOTION FOR ENTRY OF
8                               PROTECTIVE ORDER PURSUANT TO
                                FED. R. BANKR. P. 7026 AND
9                               9014(C) AND 11 U.S.C. SECTION
                                105(A) GOVERNING DISCOVERY
10                              MATERIALS AND OTHER
                                INFORMATION FILED BY PG&E
11                              CORPORATION [2459]

12                              MOTION OF THE OFFICIAL
                                COMMITTEE OF TORT CLAIMANTS
13                              FOR ENTRY OF A PROTECTIVE
                                ORDER [2419]

14
                                MOTION PURSUANT TO 11 U.S.C.
15                              SECTIONS 363 AND 105(A) AND
                                FED. R. BANKR. P. 6004
16                              AUTHORIZING DEBTORS TO
                                PURCHASE DIRECTORS AND
17                              OFFICERS INSURANCE [2471]

18                              APPLICATION PURSUANT TO
                                U.S.C. SECTION 327(E) AND
19                              FED. R. BANKR. 2014(A) AND
                                2016 FOR ORDER AUTHORIZING
20                              THE DEBTORS TO RETAIN
                                COBLENTZ PATCH DUFFY & BASS
21                              LLP AS SPECIAL COUNSEL NUNC
                                PRO TUNC TO THE PETITION
22                              DATE, FILED BY PG&E
                                CORPORATION [2595]

23
                       TRANSCRIPT OF PROCEEDINGS
24            BEFORE THE HONORABLE DENNIS MONTALI
                 UNITED STATES BANKRUPTCY JUDGE

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   APPEARANCES:
     For the Debtors:              STEPHEN KAROTKIN, ESQ.
 2                                 THEODORE E. TSEKERIDES, ESQ.
                                   RICHARD W. SLACK, ESQ.
 3                                 Weil, Gotshal & Manges LLP
                                   767 Fifth Avenue
 4                                 New York, NY 10153
                                   (212) 310-8000
 5
                                   TOBIAS S. KELLER, ESQ.
 6                                 Keller & Benvenutti LLP
                                   650 California Street
 7                                 Suite 1900
                                   San Francisco, CA 94108
 8                                 (415) 796-0709

 9   Special Counsel to the        GREGG M. FICKS, ESQ.
     Debtors:                      Coblentz Patch Duffy & Bass LLP
10                                 1 Montgomery Street
                                   Suite 3000
11                                 San Francisco CA 94104
                                   (415) 772-5779
12
     For the Office of the         CAMERON M. GULDEN, ESQ.
13   United States Trustee:         (Telephonically)
                                   U.S. Department of Justice
14                                 Office of the United States
                                    Trustee
15                                 300 Booth Street
                                   Room 3009
16                                 Reno, NV 89509
                                   (775) 784-5335, Ext. 102
17
     For the United States:        MATTHEW J. TROY, ESQ.
18                                  (Telephonically)
                                   U.S. Department of Justice, Civil
19                                  Division
                                   P.O. Box 875
20                                 Ben Franklin Station
                                   Washington, DC 20044
21                                 (202) 514-9038 (o)

22

23   (cont'd. next page)

24

25
```

```
 1   For the Official Committee  ALAN J. STONE, ESQ.
     of Unsecured Creditors:     Milbank LLP
 2                               55 Hudson Yards
                                 New York, NY 10001
 3                               (212) 530-5285

 4                               GREGORY BRAY, ESQ.
                                 Milbank LLP
 5                               2029 Century Park East
                                 33rd Floor
 6                               Los Angeles, CA 90067
                                 (424) 386-4470
 7
     For the Official Committee  LARS H. FULLER, ESQ.
 8   of Tort Claimants:            (Telephonically)
                                 Baker & Hostetler LLP
 9                               1801 California Street
                                 Suite 4400
10                               Denver, CO 80202
                                 (303) 764-4114
11
     For the Ad Hoc Group of     BENJAMIN P. MCCALLEN, ESQ.
12   Subrogation Claim Holders:  Willkie Farr & Gallagher LLP
                                 787 Seventh Avenue
13                               New York, NY 10019
                                 (212) 728-8000
14
     For the Board of Directors  NICHOLAS S. GOLDIN, ESQ.
15   and Certain Current           (Telephonically)
     Independent Directors:      MICHAEL H. TORKIN, ESQ.
16                                 (Telephonically)
                                 Simpson Thacher & Bartlett LLP
17                               425 Lexington Avenue
                                 New York, NY 10017
18                               (212) 455-3685

19   For California State        PAUL J. PASCUZZI, ESQ.
     Agencies:                   Felderstein Fitzgerald Willoughby
20                                & Pascuzzi LLP
                                 400 Capitol Mall
21                               Suite 1750
                                 Sacramento, CA 95814
22                               (916) 329-7400, Ext. 222

23

24

25
```

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For CPUC:                  BRIAN S. HERMANN, ESQ.
                                 (Telephonically)
 2                             ALAN W. KORNBERG, ESQ.
                                 (Telephonically)
 3                             Paul, Weiss, Rifkind, Wharton &
                                Garrison LLP
 4                             1285 Avenue of the Americas
                               New York, NY 10019
 5                             (212) 373-3545
                               (212) 373-3209
 6
     For City and County of San EDWARD J. TREDINNICK, ESQ.
 7   Francisco:                  (Telephonically)
                               Greene Radovsky Maloney Share &
 8                               Hennigh LLP
                               1 Front Street
 9                             Suite 3200
                               San Francisco, CA 94111
10                             (415) 981-1400

11   For Consolidated Edison    JONATHAN D. FORSTOT, ESQ.
     Development Inc.:            (Telephonically)
12                             Troutman Sanders LLP
                               875 Third Avenue
13                             New York, NY 10022
                               (212) 704-6214
14
     For Ghost Ship Warehouse:  ESTELA O. PINO, ESQ.
15                               (Telephonically)
                               Pino & Associates
16                             20 Bicentennial Circle
                               Suite 200
17                             Sacramento, CA 95826
                               (916) 641-2288
18
     For NextEra Energy, Inc.:  SAMUEL M. KIDDER, ESQ.
19                               (Telephonically)
                               DAVID M. STERN, ESQ.
20                               (Telephonically)
                               Klee, Tuchin, Bogdanoff & Stern
21                              LLP
                               1999 Avenue of the Stars
22                             39th Floor
                               Los Angeles, CA 90067
23                             (310) 407-4019
                               (310) 407-4025
24

25
```

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For Public Utilities        SANDER L. ESSERMAN, ESQ.
     Impacted by the Wildfires:   (Telephonically)
 2                               Stutzman Bromberg Esserman &
                                  Plifka, P.C.
 3                               2323 Bryan Street
                                 Suite 2200
 4                               Dallas, TX 75201
                                 (214) 969-4900
 5
     For Sonoma Clean Power       MARK GORTON, ESQ.
 6   Authority, Redwood Coast     Boutin Jones Inc.
     Energy Authority, Valley     555 Capitol Mall
 7   Clean Energy Alliance,       Suite 1500
     Northern California Power    Sacramento, CA 95814
 8   Agency (NCPA), and           (916) 321-4444
     Transmission Agency of
 9   Northern California
     (TANC):
10
     For Travelers Insurance:     PETER D. WOLFSON, ESQ.
11                                 (Telephonically)
                                  Dentons US LLP
12                                1221 Avenue of the Americas
                                  New York, NY 10020
13                                (212) 768-6840

14   Interested Party:            EREZ E. GILAD, ESQ.
                                   (Telephonically)
15                                Stroock & Stroock & Lavan LLP
                                  180 Maiden Lane
16                                New York, NY 10038
                                  (212) 806-5881
17
                                  FRANK A. MEROLA, ESQ.
18                                 (Telephonically)
                                  Stroock & Stroock & Lavan LLP
19                                2029 Century Park East
                                  Los Angeles, CA 90067
20                                (310) 556-5802

21   For Fire Victims:            DARIO DE GHETALDI, ESQ.
                                  Corey, Luzaich, de Ghetaldi &
22                                 Riddle LLP
                                  700 El Camino Real
23                                Millbrae, CA 94030
                                  (650) 871-5666
24

25
```

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   Also Present:              Janaize Markland
                                Director, Enterprise & Operational
 2                               Risk & Insurance at Pacific Gas
                                 and Electric Company
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20   Court Recorder:           MONICA TARTAGLIA

21   Transcriber:              CLARA RUBIN
                               eScribers, LLC
22                             7227 N. 16th Street
                               Suite #207
23                             Phoenix, AZ 85020
                               (973) 406-2250
24
     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

PG&E Corp., Pacific Gas and Electric Co.

1

2                                  -oOo-

3       (Call to order of the Court.)

4            THE CLERK:  All rise.  Court is now in session, the

5  Honorable Dennis Montali presiding.

6            THE COURT:  Good morning.

7            IN UNISON:  Good morning, Your Honor.

8            THE COURT:  Welcome back, everyone.

9            THE CLERK:  This is the Court's --

10           THE COURT:  You're in the first chair today --

11           THE CLERK:  -- 9:30 calendar in the matter of PG&E --

12           THE COURT:  -- Mr. Tsekerides, huh?

13           MR. TSEKERIDES:  Yeah, for today.

14           THE COURT:  All right, go ahead, call the case.

15           THE CLERK:  This is the Court's 9:30 case in the

16  matter of PG&E Corporation.

17           THE COURT:  Where do you want to begin?

18           MR. TSEKERIDES:  If it's okay with you, Your Honor,

19  with the D&O insurance motion.

20           THE COURT:  Sure.  We only have three items, right?

21  By my calculation.

22           MR. TSEKERIDES:  That's right.  That's right.

23           THE COURT:  Yeah.  Okay.  Well, I got the -- I read

24  the background.  I mean, just really before spending a lot of

25  time on it, I want to see what the committee's response is.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    MR. TSEKERIDES:  That's my -- I mean, that's fine with

2  me.

3    THE COURT:  Who's here for the committee?

4    Well, we had so much time to prepare.  We only got

5  your response yesterday morning at 9:30, so, plenty of time;

6  right?

7    MR. STONE:  Your Honor, Alan Stone from Milbank, here

8  on behalf of the official committee of unsecured creditors.

9    THE COURT:  So, Mr. Stone, sixty-four-dollar question:

10  is the committee on board with this now, or still opposing it?

11    MR. STONE:  We're still opposing it, Your Honor.

12    THE COURT:  Okay.  Well, go ahead and say why.  And

13  we -- of course we're mindful that there're some confidences in

14  the documents, so we --

15    MR. STONE:  Right.  And I -- my remarks will avoid

16  those.

17    Your Honor, first of all, I think that the standard

18  that we're looking at here needs to be examined.  The debtors

19  allege that the typical business-judgment standard ought to

20  apply.  We think, in fact --

21    THE COURT:  If that's true, you and I can just call it

22  a day and be done with it; right?  We don't have to do

23  anything.  Right?

24    MR. STONE:  Right.

25    THE COURT:  Okay.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      MR. STONE:  But the Court should apply special

2  scrutiny here, because this really is an interested

3  transaction.  I mean, these directors are trying to feather

4  their own nest here.  So we think the Court needs to --

5      THE COURT:  Well, that's --

6      MR. STONE:  -- look at this carefully.

7      THE COURT:  It's not -- I mean, that's a pejorative

8  term.  They're not doing anything wrong.

9      MR. STONE:  Correct.

10      THE COURT:  Okay.

11      MR. STONE:  I agree with that.  And --

12      THE COURT:  All right.

13      MR. STONE:  And we certainly recognize the utility and

14  importance of having directors protected, but they are

15  protected, and that's really our point.  The fundamental

16  question here is, is there a risk of depletion of the current

17  and outstanding policies, whether it's a 2017 policy for 250

18  million or the 2018 policy, which is 300 million dollars, or a

19  little of both?

20      THE COURT:  Right.

21      MR. STONE:  And the debtors' focus seems to be on

22  whether it's plausible that claims will be brought as a result

23  of new incidents, including new fires.  That's really not the

24  inquiry.  The inquiry is, is the current coverage sufficient

25  and is there a reason to have additional insurance?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  But if there were a new fire in 2019,

2  there would be the question of whether the insurers are on

3  the -- there's no question that the policy covers the time

4  period.  The question is whether the specifics of it and the

5  sequencing apply; right?

6    MR. STONE:  That's correct, Your Honor.  The --

7    THE COURT:  Okay.

8    MR. STONE:  So the 2018 policy that's currently in

9  force --

10   THE COURT:  Right.

11   MR. STONE:  -- extends to May of 2020.

12   THE COURT:  Correct.

13   MR. STONE:  Right?  So, next year.  So they're claims-

14 made policies, which means that if there were a fire in 2019

15 and that claim were noticed, it would be covered.

16   THE COURT:  Right.  Yeah, that's the way I understood

17 it, too.

18   MR. STONE:  Right.  Right.  And so the question is, is

19 there enough coverage for the current directors, given the fact

20 that there's a clause in both the 2017 policy and the 2018

21 policy which gives preference to pre-petition claims?  And we

22 think that, at a minimum, the debtors have to put forth some

23 kind of evidence that would indicate that there is a risk of

24 depletion.

25   THE COURT:  Well, back --

PG&E Corp., Pacific Gas and Electric Co.

1          MR. STONE:  There's no question --

2          THE COURT:  Back up.  Is the committee willing to

3   accept the late arrival of all the information, Ms. Markland's

4   declaration and so on, or do you to take issue with the timing

5   of it?  Because I wasn't kidding; when I get -- when I get an

6   incomplete opposition one twenty-four-hour period before the

7   hearing, that doesn't give me a lot of time.  And if it doesn't

8   give you enough time, I might be inclined just to delay things,

9   unless you want to go forward and have it heard today.

10          MR. STONE:  Well, Your Honor, I don't know that there

11   is really a necessity for delay.  The --

12          THE COURT:  Okay.

13          MR. STONE:  We certainly -- we're not surprised by

14   anything that was in the late-coming submission that we got

15   last night.  And I can deal with whatever was in there, today,

16   including the one case that they --

17          THE COURT:  I wasn't worried --

18          MR. STONE:  -- discussed.

19          THE COURT:  -- about cases.  I mean --

20          MR. STONE:  Yeah.

21          THE COURT:  -- I was worried about the fact that the

22   original papers made it sound like the declarant knew all she

23   needed to know, and then the opposition said, well, no, she

24   really didn't.  And I accept that she can't know everything,

25   but it bothered me, frankly, that the debtor should have told

(973) 406-2447 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   us what they were relying on, rather than tee up a declarant

2   who claimed to know things that she really didn't.

3           So it's not a criticism of her.  It's -- the process

4   shouldn't work that way.  Right?  In other words --

5           MR. STONE:  I --

6           THE COURT:  -- I have no problem with an executive

7   like Ms. Markland saying, I rely on the information I get from

8   my lawyers or staff people or all the other sources.  But it

9   was sort of like here's the deal, this is why we need it done.

10  And that's --

11          MR. STONE:  Right.

12          THE COURT:  -- that's what you --

13          MR. STONE:  That's -- it's exact --

14          THE COURT:  You seized on that.

15          MR. STONE:  It's exactly what we're complaining about,

16  Your Honor.  And again, I don't discount anything that Ms.

17  Markland says.  I took her deposition for a short period the

18  other day --

19          THE COURT:  Right.

20          MR. STONE:  -- and I think that she certainly

21  established what was already in the policies, and there's no --

22  really no dispute about them.

23          THE COURT:  Right, there's no dispute about --

24          MR. STONE:  Yeah.

25          THE COURT:  I mean, they are what they are, and the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   question's what to do about it.  Your concern is -- well, go

2   ahead, you finish your --

3            MR. STONE:  Yeah.

4            THE COURT:  Yeah.

5            MR. STONE:  So --

6            THE COURT:  Go ahead.

7            MR. STONE:  -- in some ways, as Ms. Markland pointed

8   out in her deposition, this -- there's a question of timing

9   here, because there's no question that the policies will not be

10  depleted during this bankruptcy, I mean, assuming that it goes

11  the way that people are looking at it.  All the claims are

12  stayed.  And --

13           THE COURT:  Well, I mean, they are.  They are, but --

14           MR. STONE:  Yeah.

15           THE COURT:  -- that doesn't mean they won't be

16  unstayed.

17           MR. STONE:  Right.  Understood.  But for now, they're

18  stayed, and very little has been expended toward them.

19           THE COURT:  Um-hum.  Right.

20           MR. STONE:  And so what evidence have the debtors

21  presented that any of the lawsuits will result in judgments,

22  settlements, or costs that would exceed 250 million dollars or

23  300 million dollars or some combination thereof?  They

24  presented no history of PG&E paying out hundreds of millions of

25  dollars in connection with what are director-oversight claims,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   which -- six of these seven lawsuits are director-oversight

2   claims.

3           THE COURT:  They're oversight claims, right.  They

4   aren't --

5           MR. STONE:  Right.

6           THE COURT:  They aren't accusing the directors of

7   mishandling the wiring or causing the fire.

8           MR. STONE:  Exactly.  And there's no history of huge

9   payouts by other companies, including competitors, in

10  connection with director-oversight claims.  And indeed, a

11  survey of director-oversight claims nationwide would suggest

12  that most of them are dismissed, because the standard for

13  director-oversight claims is a very difficult one for

14  plaintiffs.

15          The securities action here accuses the directors of

16  intentionally misleading the public by saying that they were

17  putting certain safety measures in place and then fires

18  happened and therefore they must have been lying.  We think

19  that's also a relatively weak claim that --

20          THE COURT:  But even if those claims are prosecuted,

21  those are already in the system.

22          MR. STONE:  Right.

23          THE COURT:  It's the question of whether there should

24  be insurance for the next claim.

25          MR. STONE:  That's right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Right?

2          MR. STONE:  Right.

3          THE COURT:  Okay.

4          MR. STONE:  So, importantly, Your Honor, Ms. Markland

5    testified at her deposition that her basis for belief that

6    additional insurance was needed was these brainstorming

7    sessions that she had with --

8          THE COURT:  Right.

9          MR. STONE:  -- counsel and with the insurance broker.

10   And importantly, she also testified that there was no

11   assessment of the likelihood of the depletion of the policies,

12   during those discussions.  And that's on page 11 of her

13   deposition.

14         THE COURT:  I only have selected pages, also, so I'm

15   not even -- I don't even attempt to understand her --

16         MR. STONE:  Well, Your Honor, we would be happy to

17   provide a fully unredacted copy to the Court.

18         THE COURT:  I'm not going to --

19         MR. STONE:  All right.

20         THE COURT:  -- sit here and read it while everybody --

21   I guess I could, all sixty pages of it, but --

22         MR. STONE:  All right.

23         THE COURT:  -- that's not the plan here.

24         MR. STONE:  Your Honor, in their late-coming reply

25   papers, the debtors cite the New Bedford case out of the

(973) 406-2447  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    District of Massachusetts, for the proposition that this is

2    easy, that this is judgment, and that courts have allowed this

3    in the past.  That case, Your Honor, involved the purchase of a

4    tail policy, which is one that extends the discovery period of

5    a claims-made policy beyond its term.

6          In fact, PG&E already had -- has a tail policy as a

7    result of their extension of the 2018 policy.  That's why it

8    costs so much money.  A significant amount of the amounts that

9    they paid for that extension were in connection with getting a

10   six-year tail.  The inquiry there was risk of claims being

11   brought, which, again, we don't deny that there could be claims

12   brought in 2019 and 2020 and beyond.  But there was no inquiry

13   there about the risk of depletion, which is really what the

14   issue is here.

15         So, really the debtors' argument here is what's the

16   big deal, we get all this money back at the end anyway --

17         THE COURT:  Well, but that's --

18         MR. STONE:  -- if it's not used.

19         THE COURT:  -- but that's part of the question.  That

20   means there is tucked under the rug a check for a lot of money

21   that's safely hidden there -- sits there -- not -- "hidden"'s

22   the wrong word -- sits there, whether it's in the offshore

23   trust or under the rug.  It's five years it's not available.

24         MR. STONE:  Correct.

25         THE COURT:  And --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    MR. STONE:  And that's exactly our point, Your Honor.

2    THE COURT:  And everybody suggests this company should

3 be out of bankruptcy within five years or earlier.  Right?

4    MR. STONE:  Hopefully sooner, Your Honor.

5    THE COURT:  So what happens to that money in the

6 meantime?  It just -- it's just set aside; right?

7    MR. STONE:  It's set aside, it's invested, they get

8 the returns on the investment.  It's --

9    THE COURT:  Well, but --

10    MR. STONE:  Yeah.

11    THE COURT:  -- but more specifically, it means, if I

12 grant the motion, one or both of the debtors -- I'm not sure

13 which one -- that's important too -- puts aside fifty million

14 dollars.

15    MR. STONE:  That's correct.

16    THE COURT:  And it's never to be seen again until five

17 years later.

18    MR. STONE:  And we don't think that's justified, Your

19 Honor.

20    THE COURT:  Yeah.

21    MR. STONE:  So let's --

22    THE COURT:  So what do we tell the directors, the

23 individual directors?  "Sorry, you're hung up"?  Do I tell

24 them, "If you can't stand the heat, don't stand in the

25 kitchen"?

PG&E Corp., Pacific Gas and Electric Co.

1    MR. STONE:  Well, that's --

2    THE COURT:  I mean, what do we tell them?

3    MR. STONE:  -- that's certainly one thing we can tell

4    them.  But let's say that the motion today is denied, that

5    there are additional claims asserted, that the insurers

6    successfully limit the coverage to the 250 million dollars in

7    the 2017 policy, and that somehow that coverage is depleted by

8    the pre-petition claims.  Then the company, or the reorganized

9    entity more likely, will have to dip into its treasury to pay

10   those costs.

11   THE COURT:  Well, it'll be a post-petition

12   administrative expense.

13   MR. STONE:  Exactly, Your Honor.

14   THE COURT:  Reading Co. v. Brown.  Right?

15   MR. STONE:  Correct, Your Honor.

16   THE COURT:  It's --

17   MR. STONE:  That's exactly our point.

18   THE COURT:  It's what it is.  So --

19   MR. STONE:  So -- and so we think that they -- they're

20   not being left out to dry, that there's still money here, that

21   there are administrative claims, that it's really a question of

22   whether you're going to set aside that fifty million dollars

23   now or you're going to end up having to pay it later, assuming

24   that their parade of horribles occurs.

25   THE COURT:  Well, if there is a subsequent event of

PG&E Corp., Pacific Gas and Electric Co.

1    some magnitude like we don't want to happen, the first claim

2    would be against the debtor; the confirmed debtor or the not-

3    yet-confirmed debtor; right?  So even if an officer or director

4    has some culpability, it's still, unless there's intentional --

5    or umbrage (ph.) -- we're not assuming that -- it still comes

6    out of the debtor first; doesn't it?

7              MR. STONE:  It does, Your Honor.

8              THE COURT:  Right?

9              MR. STONE:  And --

10             THE COURT:  That's the whole point.

11             MR. STONE:  It's exactly the point.

12             THE COURT:  Okay.  Do you know, because I do not know,

13   which debtor pays the money?

14             MR. STONE:  It's -- as I understand it, and the

15   debtors can certainly --

16             THE COURT:  Yeah; I --

17             MR. STONE:  -- correct it, there --

18             THE COURT:  -- I want --

19             MR. STONE:  -- there's an -- yeah.  There's an

20   allocation based on how many directors and officers are in each

21   of the debtors.

22             THE COURT:  So the two debtors, then, pony up together

23   the aggregate amount that would go into this insurance?

24             MR. STONE:  That's my understanding.

25             THE COURT:  I mean, it's -- we can call it insurance,

escribers
(973) 406-2247 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    but it really isn't.

2            MR. STONE:  No.  It's --

3            THE COURT:  It's self-insurance and it has a fancy

4    name, but it's self-insurance.

5            MR. STONE:  That's exactly what it is.

6            THE COURT:  I learned a long time ago in bankruptcy

7    that self-insurance means no insurance, right, and that --

8            MR. STONE:  That's correct.

9            THE COURT:  Okay.  So what's different about this one,

10   and isn't?

11           MR. STONE:  I don't think there's any difference.

12   They say that, well, it's different because we have a policy

13   and you can only claim against the money if you satisfy that

14   policy.  But that's a policy of their own making.

15           THE COURT:  It's like putting the money under the

16   carpet and saying --

17           MR. STONE:  Right.

18           THE COURT:  -- I'll draw on it anytime in the next

19   five years if I need it.  But in the meantime, creditors won't

20   have any right to any of it.  Right?

21           MR. STONE:  That's correct, Your Honor.  That's our

22   point.

23           THE COURT:  Mr. Tsekerides, you want to defend this --

24           MR. TSEKERIDES:  Absolutely, Your Honor.  In fact, I

25   think we've got very good arguments.  And let me address a few

PG&E Corp., Pacific Gas and Electric Co.

1    points --

2          THE COURT:  But I have a preliminary question for

3    you --

4          MR. TSEKERIDES:  Sure.

5          THE COURT:  -- because I want to clarify one point in

6    the reply.  And really, I must say I was disappointed in the

7    way this came out, because it seemed like kind of a very simple

8    motion and then, once the committee opposed it, the way I got

9    the response was not impressive, because what I got is a

10   tutorial on the rules of business judgment as though I'm not

11   familiar with it and the committee isn't familiar with it.

12         And then secondly, this notion about -- well, here's

13   where I'm confused:  On page 6, you say you would be asking far

14   too much for directors of a public company, et cetera, et

15   cetera, "to continue to sit in such capacity without the

16   certainty of a D&O insurance.  That protection and safety valve

17   is ubiquitous among similarly situated companies, and the

18   debtors have undertaken exhaustive efforts to obtain

19   appropriate level of coverage."  What does that mean?  Do you

20   have any evidence that it's ubiquitous in --

21         MR. TSEKERIDES:  Well, I think every -- I'm sure

22   you've dealt with it yourself, Your Honor.  Every company has

23   D&O coverage.  To ask --

24         THE COURT:  Well, I know, but in the middle of their

25   bankruptcy they don't set aside another fifty million worth.

PG&E Corp., Pacific Gas and Electric Co.

1      MR. TSEKERIDES:  Well --

2      THE COURT:  That's -- so that's what's not --

3      MR. TSEKERIDES:  Well --

4      THE COURT:  -- normal.

5      MR. TSEKERIDES:  -- if I may, Your Honor.  First, let

6  me address, though, your concern about the filing.  There was a

7  supplemental objection from the committee, that we got the

8  Friday after July 4th.

9      THE COURT:  I know.

10     MR. TSEKERIDES:  So we had --

11     THE COURT:  That's because they heard from your

12 witness.

13     MR. TSEKERIDES:  No, but -- and the witness -- and we

14 can submit the transcript.  The witness had personal knowledge,

15 Your Honor.  They were upset that she didn't read every --

16     THE COURT:  No --

17     MR. TSEKERIDES:  -- every email.

18     THE COURT:  -- you miss my point.  I don't expect her

19 to know everything.  If she -- if her original declaration

20 said, "I talked to the counsel, I talked to the insurance

21 broker, I collected all this information, and here's my

22 conclusion," I don't have a problem with that.

23     MR. TSEKERIDES:  But it did --

24     THE COURT:  But what I got was her -- her declaration

25 sounded like it's a done deal, there're no -- it's all clear as

PG&E Corp., Pacific Gas and Electric Co.

1   can be.  And it isn't.

2         MR. TSEKERIDES:  Well, her declaration did refer to a

3   line on the broker.  But let me get -- let me get to the

4   merits, then, Your Honor.  First of all, the debtor could have

5   gone out and bought a regular insurance policy and spent the

6   money, and presumably we wouldn't be having any discussion.  So

7   if they made an assessment that they needed coverage for the

8   directors and officers, new directors and officers, for new

9   claims, they'd be entitled to go buy that.

10         THE COURT:  Well, maybe --

11         MR. TSEKERIDES:  This is not --

12         THE COURT:  -- maybe in bankruptcy; maybe they would.

13         MR. TSEKERIDES:  Well --

14         THE COURT:  Now, come on.

15         MR. TSEKERIDES:  -- the --

16         THE COURT:  I mean, that's not exactly --

17         MR. TSEKERIDES:  No, but --

18         THE COURT:  -- a certainty.

19         MR. TSEKERIDES:  -- the same argument's here.  And I

20   think it's important for the Court to appreciate that.  And

21   we've submitted the correspondence; this was in the

22   declaration.  They questioned it, so we put in the

23   correspondence.  The primary carrier has said they believe, at

24   least preliminarily, that the 2018 --

25         THE COURT:  I know.

(973) 406-2467   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. TSEKERIDES:  -- fires are going to relate back to

2     the --

3          THE COURT:  I --

4          MR. TSEKERIDES:  -- 2017 fires.

5          THE COURT:  I read that last night.

6          MR. TSEKERIDES:  Okay.  Well, that was in the original

7     papers, too, Your Honor, in fairness to us.

8          THE COURT:  Yeah, but they were more -- it was much

9     more specific.  Go ahead.  All right.

10          MR. TSEKERIDES:  Okay.  So if there's a 2019 --

11          THE COURT:  And -- wait.  The committee (ph.) doesn't

12     necessarily accept that term; does it?

13          MR. TSEKERIDES:  It doesn't but, again, I mean, the

14     reason why we're doing this is because there's uncertainty.

15     The reason you buy insurance is for uncertainty.  If it was a

16     certainty, you wouldn't need it.

17          THE COURT:  And the reason why insurers sometimes make

18     reservations of rights and end up with a separate lawsuit to

19     determine the extent of policy coverage is they've got

20     parallels in an underlying lawsuit; right?  So if you had to,

21     you could bring a separate dec-relief action against the

22     insurer to determine what is or isn't covered.

23          MR. TSEKERIDES:  And in the meantime, the directors

24     and officers are hung out to dry, which isn't fair.

25          THE COURT:  Maybe.

PG&E Corp., Pacific Gas and Electric Co.

1      MR. TSEKERIDES:  And I want to make a point.  This is

2   not sticking money under the rug.  This isn't some

3   featherbedding.

4      THE COURT:  I didn't mean it as a pejorative.  I meant

5   it as taking fifty million dollars that is not available for

6   other needs in this case.

7      MR. TSEKERIDES:  And if they bought regular insurance

8   for fifty million dollars, that wouldn't be available either.

9   But this is a real insurance policy; that's the difference.

10  It's in fact to keep it out of being able to be (sic) into the

11  estate, that they're doing it --

12      THE COURT:  I know.

13      MR. TSEKERIDES:  -- in the first place --

14      THE COURT:  But it is --

15      MR. TSEKERIDES:  -- to make sure the money's

16  available.

17      THE COURT:  But it is a form of self-insurance.

18      MR. TSEKERIDES:  Well --

19      THE COURT:  You know it and I know it.  Come on, with

20  all these labels on there, when you hand somebody fifty million

21  dollars and say, "Please give it back at the end of five years

22  if we don't need it," then it's a form of self-insurance.

23      MR. TSEKERIDES:  The difference -- respectfully, Your

24  Honor, the difference is that the money is not available to

25  other people to try to grab --

(973) 406-2447 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  I know.

2          MR. TSEKERIDES:  -- in the meantime.

3          THE COURT:  I know.

4          MR. TSEKERIDES:  And that's important.

5          THE COURT:  Of course it isn't.

6          MR. TSEKERIDES:  And if you're a director or an

7   officer, that's important.  If you were a --

8          THE COURT:  I --

9          MR. TSEKERIDES:  -- director, you'd want to make sure

10   the money was there, not that a committee can come and object

11   or a court say, no, you can't get a payment later.

12          THE COURT:  Mr. Tsekerides, my questions are not

13   intended to criticize the officers and directors but rather to

14   question whether it's appropriate, in the bankruptcy, to set

15   aside this money.  Whether you call it a trust or under the rug

16   or anywhere in between, it still means fifty million dollars is

17   not available for other needs in this case; right?

18          MR. TSEKERIDES:  That's true, but --

19          THE COURT:  Okay.

20          MR. TSEKERIDES:  -- I think if you look at the reasons

21   why the company did it, one -- the relation back is a big

22   issue.  Yeah, I mean, we're not looking to have other

23   litigation and tell the directors and officers, well, why don't

24   you see what happens with that coverage dispute that might

25   happen later.  In the meantime if a claim comes in, they need

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    the coverage.

2            So the relation back is one issue.  And two, the

3    priority, which counsel referred to -- the priority in the

4    policy, in the 2018 policy, is for pre-petition claims.  So,

5    yes, there's --

6            THE COURT:  Well, I know; that's the priority.  I

7    understand.

8            MR. TSEKERIDES:  Right.  And so if a claim comes in

9    today against a new director and the insurance company says,

10   well, the priority's for the pre-petition, they might not have

11   coverage.  And we appreciate that there's a lot of money there;

12   we know that.  But there's a risk.  And the debtor's assess --

13   Ms. Markland has been doing this for at least five years as a

14   D&O, and she's here in the courtroom if you have any

15   questions --

16           THE COURT:  I don't --

17           MR. TSEKERIDES:  -- for her.

18           THE COURT:  I don't question her judgment on it, but

19   she hasn't been doing it in a bankruptcy with the priorities

20   and the post-petition anomalies that you and I and all the

21   bankruptcy world deal with every day, which is different.

22           MR. TSEKERIDES:  Right.  All the more reason --

23           THE COURT:  Okay.

24           MR. TSEKERIDES:  -- then, in a bankruptcy, to have you

25   then recognize what the risks are.  Fifty million dollars isn't

escribers
(973) 406-2247  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    going to break the bank in this case, but fifty million dollars

2    is the same amount of the Side A coverage in the 2017 policy,

3    and that would be put aside and available to these officers and

4    directors.  It's not like we're administratively insolvent.

5    When bills come in, we're paying them.  Fifty million dollars

6    in this case is a joke.

7            THE COURT:  Well --

8            MR. TSEKERIDES:  And the fact that they're making a

9    big deal --

10           THE COURT:  -- tell that to the fire victims.

11           MR. TSEKERIDES:  And we put --

12           THE COURT:  It's not a joke.

13           MR. TSEKERIDES:  -- a hundred million aside recently

14   for the fire victims.  But --

15           THE COURT:  Well, I understand.  So far, they haven't

16   gotten any of it yet.  So --

17           MR. TSEKERIDES:  Well, that's in --

18           THE COURT:  So I --

19           MR. TSEKERIDES:  -- someone else's hands.

20           THE COURT:  We can agree that it's not a joke.  It's

21   fifty million dollars.  There are some certain New York Times

22   tests here, you know.  That's your paper.  New York Times tests

23   is when -- how does it look in The New York Times.  Well, the

24   company just set aside fifty million dollars for its new

25   officers and directors.

PG&E Corp., Pacific Gas and Electric Co.

1          MR. TSEKERIDES:  Well, and --

2          THE COURT:  That has a certain --

3          MR. TSEKERIDES:  There's never a good headline --

4          THE COURT:  -- optics to it.

5          MR. TSEKERIDES:  -- for a company, but --

6          THE COURT:  Correct.

7          MR. TSEKERIDES:  -- but what we would say --

8          THE COURT:  I know that.

9          MR. TSEKERIDES:  But in court, we don't deal in

10  headlines; we deal in facts and the law.

11          THE COURT:  Right.

12          MR. TSEKERIDES:  And here --

13          THE COURT:  But that's why I don't want you to call it

14  a joke.

15          MR. TSEKERIDES:  Well, in the context of this case,

16  we're talking about billions in claims.

17          THE COURT:  We are.

18          MR. TSEKERIDES:  For us to be fighting about fifty

19  million, at the risk of leaving the directors high and dry,

20  maybe it's not a joke, but if you're a director you're going to

21  be worried about it.

22          THE COURT:  No, that's true.  I don't disagree with

23  that.

24          MR. TSEKERIDES:  And I want to make this point:  If

25  the --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  But they all came on without that fifty

2  million.  Right?

3    MR. TSEKERIDES:  Right, they all came on without that,

4  but --

5    THE COURT:  Okay.

6    MR. TSEKERIDES:  -- from a timing perspective, I don't

7  know if they came on and then the assessment took place, where

8  they knew there was coverage but then the insurer sent letters

9  in January and May saying --

10    THE COURT:  Right.

11    MR. TSEKERIDES:  -- hey, look, we're taking these

12  certain positions.  But I think it's important to recognize, if

13  the policy is never used, and we can cancel it any time, if we

14  figure out that, you know what, we're not going to need it, we

15  can --

16    THE COURT:  No, I know that.  You made that clear.  I

17  mean, look, I -- to me, that's exactly why it's more like under

18  the rug than calling it an insurance policy.  You know?  So --

19    MR. TSEKERIDES:  But insur --

20    THE COURT:  -- when you pay insurance on your house or

21  on your car, you pay insurance and you hope never to have to

22  make a claim.  But at the end of the period, the insurance

23  company doesn't give it all back to you.

24    MR. TSEKERIDES:  Right, so this is the --

25    THE COURT:  Okay?

(973) 406-2247 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. TSEKERIDES:  -- benefit to having --

2          THE COURT:  And this is different.

3          MR. TSEKERIDES:  -- a policy like this.

4          THE COURT:  But that's all I'm saying.  It's not

5   traditional insurance.

6          MR. TSEKERIDES:  Well --

7          THE COURT:  It's self-insurance.

8          MR. TSEKERIDES:  Well, captives, by their very

9   nature -- and I don't want to get into insurance, but captives,

10  by their very nature -- that's how they work, Your Honor:  you

11  put money aside and --

12          THE COURT:  I know that.

13          MR. TSEKERIDES:  But here --

14          THE COURT:  I know that.

15          MR. TSEKERIDES:  -- my point is, if we don't use it,

16  we get it back.  And if we use it, that means we needed it.

17  And then who's going to --

18          THE COURT:  That's right.

19          MR. TSEKERIDES:  -- tell the officers and directors,

20  you know what, I know, if you actually triggered this, that

21  means you needed it, but you can't have it right now?

22          THE COURT:  Well, let's go back to the point that we

23  were -- Mr. Stone made.  The company, as you just said, without

24  calling it a joke, it is -- it's paying its debts as they come

25  due.  And if there is a claim for a post-petition fire and

PG&E Corp., Pacific Gas and Electric Co.

1    somehow an aggressive plaintiff's lawyer decides to name

2    individual officers and directors as defendants for the fire

3    that follows, which could happen, then the company still can

4    cover its indemnity to those entities, can't it --

5            MR. TSEKERIDES:  It's sure --

6            THE COURT:  -- those officers and directors?

7            MR. TSEKERIDES:  It's sure that it could, but --

8            THE COURT:  And if it's administratively insolvent,

9    we've got some bigger problems.

10           MR. TSEKERIDES:  Right.  But I would say there -- it's

11   not, like, immediate payment.  Other people could object.  We

12   don't know what the -- they're objecting to having a policy.

13   They might object to them coming forward and asking for the

14   indemnity.

15           What this does, like most insurance, if not all

16   insurance, is it buys certainty for the directors and officers

17   that fifty million dollars, which is the exact same amount of

18   the 2017 policy, will be there no matter what.  If the policies

19   below don't trigger, you get this.  If the insurers win, you

20   get this.  And you know what?  If the insurance company loses

21   on the relating back or the priority --

22           THE COURT:  No, I understand.

23           MR. TSEKERIDES:  -- doesn't exhaust it --

24           THE COURT:  I understand.  I understand.

25           MR. TSEKERIDES:  -- then we get the money back.

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  Well, maybe you'll get it back.  Maybe

2    you'll get it back in five years.  I mean, my point is I -- I

3    understand, and I don't disagree with what you're saying.  It

4    really comes down to whether the unsecured creditors' committee

5    have a voice -- I didn't make this up on my own, and I don't

6    want to speculate on whether I would have responded if there

7    had been no objection.  But the unsecured creditors' committee

8    is concerned about fifty million dollars -- I won't say "flying

9    out the window", okay?  I'll say "going under the rug".  You

10   can say "going to the captive".  It's the same concept.

11   MR. TSEKERIDES:  And they have every right, and that's

12   their job.  And --

13   THE COURT:  That's their job.

14   MR. TSEKERIDES:  And our point is we're explaining to

15   the Court -- and Ms. Markland testified and she's willing to

16   take the stand, if you need her to, here.  But she put in

17   papers as to why the company needs this for the new Ds and Os,

18   recognizing the real risks -- and unlike Mr. Stone, I can't

19   predict the future as to what's going to happen -- the real

20   risk that the relation back or the prioritization will mean no

21   coverage for a new claim.  And that's what this is for:  to

22   remove that uncertainty in the amount of fifty million dollars.

23   And if it's not needed, we can cancel the policy.  It's not

24   five years --

25   THE COURT:  Well, come on.  Let's --

(973) 406-2247   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1        MR. TSEKERIDES:  -- under the rug for five --

2        THE COURT:  Let's -- you and I know that particularly

3    as -- all we have to do is read the paper this morning.  And

4    how many articles in the paper today showed pictures of the

5    fires?  Okay?  I live in the East Bay, where we had helicopters

6    flying over, yesterday.  And PG&E is flying helicopters over,

7    inspecting for fire.  And my neighbors were happy to hear that

8    PG&E is flying over their house, making a lot of noise with the

9    helicopters looking for fire damage.

10        So it's a real thing.  And I live in the Bay Area.  I

11   don't live in Paradise.  So it's for real.  And realistically,

12   Mr. Tsekerides, that money isn't going to be coming back for a

13   while, no matter what, you know it and I know it, because we've

14   got to get through the fire season and perhaps out the door

15   with a confirmed plan in a reasonable period of time.  Right?

16        MR. TSEKERIDES:  Okay, Your Honor, but if we went and

17   bought traditional insurance --

18        THE COURT:  I understand.

19        MR. TSEKERIDES:  -- which the market didn't bear, it

20   would never come back.

21        THE COURT:  I understand that.

22        MR. TSEKERIDES:  At least within five years, we can

23   represent that it could come back --

24        THE COURT:  It could come back.

25        MR. TSEKERIDES:  -- if there's no claim.  If something

(973) 406-2447 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    happens with the coverage disputes, where the underlying

2    policy's the 20- --

3         THE COURT:  No, I understand.  I don't disagree with

4    that.  And I'm not making light of it.  Can you clarify for me

5    the allocation and who should be paying what?  In other words,

6    what I don't know -- I think Mr. Karotkin said it to me at one

7    point early in the case -- is the alignment of the boards.

8    There is some commonality but there're some people who are only

9    on one and not on the other; right?

10        MR. TSEKERIDES:  I'll do the best I can.

11        THE COURT:  Yeah.

12        MR. TSEKERIDES:  I can't tell you for sure.  It is

13   split.

14        THE COURT:  Is --

15        MR. TSEKERIDES:  It is allocated between the utility

16   and the corporation.  But I couldn't tell you, standing here

17   right now --

18        THE COURT:  You don't have to tell me the dollar --

19   just tell me generally.  Am I correct, there are some

20   directors -- let's focus on directors.

21        MR. TSEKERIDES:  Right.

22        THE COURT:  There're some directors of the parent but

23   not the utility, and --

24        MR. TSEKERIDES:  That's correct.

25        THE COURT:  -- vice versa?  But there're some who are

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    directors of both?

2         MR. TSEKERIDES:  That's right.

3         THE COURT:  Right?  And is that same true with the

4    officers?  I don't know.

5         MR. TSEKERIDES:  I don't know.

6         I don't know.  Do you know?

7         THE COURT:  Mr. Karotkin, just a general view; if you

8    can just explain that.

9         MR. KAROTKIN:  I think it --

10        THE COURT:  And I don't need a corporate chart.  I

11   need an overview.

12        MR. KAROTKIN:  No, no.  I think it's true with a few

13   officers.

14        THE COURT:  As being in both?

15        MR. KAROTKIN:  Yes.

16        THE COURT:  Okay.  But some --

17        MR. KAROTKIN:  And some only being --

18        THE COURT:  And some not?

19        MR. STONE:  And some only being in one.

20        THE COURT:  And some not.  Okay, so that's good

21   enough.  So --

22        MR. TSEKERIDES:  Okay.

23        THE COURT:  -- it's a hybrid.  And then the

24   allocation -- the -- whether it goes to the insurance company

25   or it goes under the carpet, there are two money -- two sources

(973) 406-2447   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    of money coming in; right?  The parent and the sub are --

2             MR. TSEKERIDES:  Oh, yes.  Um-hum.

3             THE COURT:  -- contributing on a ratio that's

4    consistent with that?

5             MR. TSEKERIDES:  Correct.

6             THE COURT:  And I mean, look --

7             MR. TSEKERIDES:  I just don't know what that is.

8             THE COURT:  -- it's important to me to hear this,

9    because, again, I'm not going to criticize you but I'm not

10   going to say that fifty million is a joke.  Is -- we have some

11   other motions coming up in a few weeks that are significant,

12   and I'm sure you're aware of that.

13            MR. TSEKERIDES:  I am.

14            THE COURT:  And I have to -- I have to figure out,

15   well, is the utility paying for the officers and directors of

16   the parent, or vice versa, and, if so --

17            MR. TSEKERIDES:  Hmm.

18            THE COURT:  -- is that appropriate.  If your answer --

19            MR. TSEKERIDES:  I don't think so.

20            THE COURT:  -- is no, I'll take --

21            MR. TSEKERIDES:  Right.

22            THE COURT:  -- your word for it.

23            MR. TSEKERIDES:  Yeah.

24            THE COURT:  And the committee hasn't raised that, and

25   I'm -- it's a close subject, because you said it, and I'll

(973) 406-2477  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    accept it.

2           So -- okay, so there's an allocation.

3           MR. TSEKERIDES:  Right.

4           THE COURT:  And if I approve it, then Ms. Markland

5    then will figure out a way, and two -- in theory, two checks'll

6    go:  one from each of the two companies.  And the fact that

7    some individuals are in both, they're getting double coverage,

8    if you will.  And those who are only affiliated with the parent

9    and those only with the utility, they're --

10          MR. TSEKERIDES:  Right.  They're getting coverage for

11   their actions for that --

12          THE COURT:  They're getting coverage for their role.

13          MR. TSEKERIDES:  -- position.

14          THE COURT:  Okay.

15          MR. TSEKERIDES:  And if I may.  So maybe I used the

16   New York street vernacular for "insignificant".  What I meant

17   by "joke" was, in the context of this case, is this a drop in

18   the bucket.

19          THE COURT:  And I do understand that.

20          MR. TSEKERIDES:  Okay.

21          THE COURT:  I'm looking at the fee appli -- the

22   quarterly fees coming in.  No comment.

23          MR. TSEKERIDES:  No comment.  Yeah.

24          THE COURT:  Okay, anything further?

25          MR. TSEKERIDES:  I don't think so, Your Honor.

PG&E Corp., Pacific Gas and Electric Co.

1        THE COURT: Anyone else other than Mr. Stone? Anyone

2  want to be heard? Nobody -- no one other -- no other party

3  filed anything, but if there's anyone that wants to be heard --

4        Yes, sir.

5        MR. DE GHETALDI: Good morning, Your Honor. Dario de

6  Ghetaldi on behalf of --

7        THE COURT: Mr. de Ghetaldi, I do recognize you these

8  days. A couple of times you've showed up and you probably

9  think I don't remember your name, and I do.

10        MR. DE GHETALDI: Yeah.

11        THE COURT: I appreciate your stating your name,

12  but -- thank you for coming back. What can I --

13        MR. DE GHETALDI: Thank you, Your Honor. I -- just

14  briefly. We weren't able to see any of the underlying

15  documents here, I think because of the protective order and our

16  inability to access documents --

17        THE COURT: Well, some of them --

18        MR. DE GHETALDI: -- under the current --

19        THE COURT: -- were sealed. I mean, it's --

20        MR. DE GHETALDI: -- current form -- right.

21        THE COURT: Apart from the protective order, some of

22  it was under the traditional sealing because of the nature of

23  the --

24        MR. DE GHETALDI: Understood, Your Honor. But I

25  apologize; I haven't seen all of the documents. But I was just

escribers

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    sitting here thinking, given my experience with litigating

2    against PG&E, including a derivative case against PG&E, arising

3    out of the San Bruno fire, I think -- maybe I'm wrong, but I

4    think that this is insurance that is related -- that would come

5    into play in derivative litigation primarily, and the money

6    would be going actually back to the company.

7            THE COURT:  I don't -- Mr. --

8            MR. DE GHETALDI:  Maybe I'm wrong, but that was just

9    a --

10            THE COURT:  -- Tsekerides can clarify, but I don't

11   understand that these are all based on derivative actions.

12            MR. TSEKERIDES:  No, they're not.

13            MR. DE GHETALDI:  That was just a thought that I had,

14   Your Honor, and --

15            THE COURT:  Well, we have a -- we have a pending

16   adversary proceeding.  Right?  The --

17            MR. TSEKERIDES:  Right.

18            THE COURT:  The newly filed adversary proceeding.

19   It's a refiling.

20            MR. TSEKERIDES:  That's right.  And that's a

21   securities action, not a derivatives action.

22            THE COURT:  Right.  Yeah.

23            MR. DE GHETALDI:  Okay.  All right.

24            THE COURT:  That's what I thought.

25            MR. DE GHETALDI:  Okay.  Well, to the extent that they

PG&E Corp., Pacific Gas and Electric Co.

1    are related to derivative actions --

2           THE COURT:  Well, but, I mean, in a sense -- I mean --

3    yeah, but I think Mr. Tsekerides' theory -- his argument is

4    that, if there're no claims, the money goes back to the company

5    because it's self -- what I call self-insurance.  In the

6    derivative action, a successful derivative action, it goes back

7    to the benefit of the share -- that's a nice argument but, in a

8    company that may or may not be insolvent -- I'm assuming --

9    they're assuming solvency here.  But imagine if the company

10   were insolvent; it has a different outcome.

11          MR. DE GHETALDI:  Right.  And the other thing that I

12   don't know and I just wanted to bring this up, Your Honor, is

13   that I have taken Ms. Markland's deposition in the past, I have

14   taken Geisha Williams' deposition in the past, both relating in

15   part to issues of insurance.  And the existence -- the policies

16   that this company has are unique, at least the ones that I've

17   seen, in that a number of them have excess provisions that

18   cover intentional conduct, and that would cover punitive

19   damages, which --

20          THE COURT:  Well, but that -- I don't know that that's

21   relevant here.

22          MR. DE GHETALDI:  I don't either, but --

23          THE COURT:  I mean --

24          MR. DE GHETALDI:  -- these are policies, Your Honor,

25   that, if we're talking about similar coverage, that coverage is

PG&E Corp., Pacific Gas and Electric Co.

1    not legal in California and can only be obtained from overseas

2    carriers coming out of --

3             THE COURT:  Well, I don't believe --

4             MR. DE GHETALDI:  -- Bermuda and London.

5             THE COURT:  -- I don't believe there's --

6             MR. DE GHETALDI:  And I just don't -- I don't know.  I

7    just wanted to raise that possibility.

8             THE COURT:  Well, the creditors' committee hasn't

9    raised that issue, and I don't think there was any reference to

10   it in the papers.  And as I recall --

11            Mr. Tsekerides, am I right; it's a South Carolina --

12            MR. TSEKERIDES:  That's --

13            THE COURT:  -- corporation; right?

14            MR. TSEKERIDES:  That's correct, Your Honor --

15            THE COURT:  And --

16            MR. TSEKERIDES:  -- South Carolina.

17            THE COURT:  And that doesn't mean it doesn't have some

18   offshore consequences.  But I'm assuming that this is a lawful

19   activity.

20            MR. TSEKERIDES:  That's my understanding, yeah.

21            THE COURT:  And --

22            MR. DE GHETALDI:  Okay.

23            THE COURT:  And, Mr. de Ghetaldi, if we -- Mr.

24   Tsekerides didn't like my metaphor but, if I put fifty million

25   dollars under the rug and said no creditor can get it, and five

(973) 406-2447   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    years later it goes back to the company, that's not illegal; is

2    it?  And it doesn't -- it's not offshore laundering; it's

3    just --

4            MR. DE GHETALDI:  It's not illegal, Your Honor, but,

5    as the --

6            THE COURT:  It's protecting your money.

7            MR. DE GHETALDI:  As the Court observed, this is not

8    peanuts, this is not something that is nothing, compared to the

9    individuals who have lost their homes, some of whom are

10   homeless still, living in --

11           THE COURT:  Well, I understand, and --

12           MR. DE GHETALDI:  -- hotels and tents and --

13           THE COURT:  -- and that's why --

14           MR. DE GHETALDI:  -- trailers.

15           THE COURT:  -- that's why the question of the motions

16   that are coming up next month -- later this month, about the

17   Tubbs Fire and about -- those are all relevant.  But the only

18   question here is whether the individuals who are serving as

19   officers and directors get this extra protection that's been

20   argued.  No one's suggested that any of them have done anything

21   wrong or inartfully.  You might -- you, in your various

22   complaints, might have alleged some wrongdoing but, in terms of

23   this context and the -- this is where I do look to the general

24   unsecured creditors' committee -- and I might add the tort

25   victims' committee have (sic) not taken a position on this.

PG&E Corp., Pacific Gas and Electric Co.

1          So that suggests to me that we're not dealing with

2     anything that's kind of unusual -- well, it's unusual, but it's

3     not out of the realm of the situation we have here and the

4     reasons why the company wants this kind of protection for the

5     officers and directors.

6          MR. DE GHETALDI:  All I'm saying, Your Honor --

7          THE COURT:  Okay.

8          MR. DE GHETALDI:  -- is that I have not had access to

9     all of the documents --

10         THE COURT:  Yeah.  I understand.

11         MR. DE GHETALDI:  -- and these are my concerns.

12         THE COURT:  Okay.  Thank you.

13         MR. DE GHETALDI:  Thank you.

14         THE COURT:  Mr. Stone, you want to close?

15         MR. STONE:  I don't have a lot to add, Your Honor.  I

16    think I would just reiterate again that this -- we believe that

17    this really is just a self-insurance program and that this is

18    tantamount to granting a superpriority administrative claim.

19    As Your Honor mentioned --

20         THE COURT:  Well, but do you also accept a couple of

21    things that Mr. Tsekerides and I talked about:  that if we tell

22    the officers and directors the Court is going to allow this

23    set-aside -- again, we won't call it "under the rug"; we don't

24    have to have words like "a captive cell".  The concept is fifty

25    million dollars is available tomorrow that isn't available

PG&E Corp., Pacific Gas and Electric Co.

1  today in case these officers and directors need it.  But it's

2  also true that that money is coming back to the company if the

3  claims are not asserted.  You don't disagree with that?

4          MR. STONE:  I don't disagree with that.

5          THE COURT:  And so that's what makes it unlike your

6  run-of-the-mill kind of insurance for casualty insurance or

7  liability insurance or professional malpractice, et cetera.

8  It's -- you're earning it as you -- as time goes by.

9          But where is the outcome if I say no today?  And then

10  what do we do?  In other words, do we really wait until there's

11  another fire and then wait until the existing insurance decides

12  to play hardball on the coverage and then we tell the officers

13  and directors, well, you know, the company will probably cover

14  you because they're paying the debts as they come due, but you

15  don't have this kind of assurance?  That's not a good message

16  to send; is it?

17          MR. STONE:  Well, I don't think it's a -- I don't

18  think it puts directors in a terrible position, because I think

19  that, if there is another fire and/or the insurance company

20  plays hardball on the coverage, that would be a time when they

21  could -- the debtors could come to the Court and say, there

22  really is a need here, let's -- allow us to do the self-

23  insurance program now.

24          THE COURT:  But if there's another horrible fire, a

25  big one, then we have another problem that -- it's like the

PG&E Corp., Pacific Gas and Electric Co.

1    elephant in the room; we have a post-petition claim that's

2    measured in billions and what to do about them and whether the

3    government or --

4              MR. STONE:  True.

5              THE COURT:  -- the legislature or anybody else deals

6    with it.  The bankruptcy law tells us what the answer is for

7    bankruptcy law; right?  And it's not a pleasant law for anyone,

8    but it's a fact of life that would be true.  Don't you agree?

9    If a camp fire happens next month, we have some significant

10   post-petition exposure for the estate.

11             MR. STONE:  For the estate?  Absolutely.

12             THE COURT:  Right?

13             MR. STONE:  For officers and directors, it's more

14   tenuous.

15             THE COURT:  Well, I mean, it should be more tenuous,

16   because hopefully they don't have any culpability.  But --

17   that's easy for you and me to say but, when they get served

18   with a summons and they say, who's protecting me -- I mean, we

19   do want officers and directors running the company; don't we?

20             MR. STONE:  We do.

21             THE COURT:  Maybe some people might want --

22             MR. STONE:  And --

23             THE COURT:  -- different officers and directors, but

24   these are the ones that we got.

25             MR. STONE:  Well, and these are the ones who signed

PG&E Corp., Pacific Gas and Electric Co.

1      up --

2                THE COURT:  That's right.

3                MR. STONE:  -- to be officers and directors, with

4      these policies in place, with the very same provisions in place

5      that relate back, and with the very same provision in place

6      that says that pre-petition claims are favored.

7                THE COURT:  Well, it's interesting; it's -- pre-

8      petition claims are favored as a matter of insurance law; post-

9      petition claims are favored as a matter of bankruptcy law.  So,

10     guess what?  If you're a fire victim, as horrible as that may

11     be, you have the better outcome, because you have the insurer

12     to look to you (sic) for your pre-petition claims, and the

13     estate and/or the bankruptcy law for your post-petition claims.

14     And I guess Mr. Tsekerides is right; on the grand order of

15     things, it's not a lot of money relative to the entirety of the

16     exposure here.

17               MR. STONE:  Well, I'm sure my clients'd be happy to

18     have another fifty million dollars put in their pocket.

19               THE COURT:  Well, but that gets back to the question

20     of the plan.  In other words, if there -- the perception is --

21     I'm sure your client knows as well as I do, is that the

22     creditors will be paid.  And if the creditors are paid, then

23     setting aside this amount of money for the benefit of the

24     officers and directors is of no consequence.

25               MR. STONE:  If the creditors are paid, we can all go

PG&E Corp., Pacific Gas and Electric Co.

1  home.

2          THE COURT:  Well, but I want -- I guess I'm -- I'm

3  going to -- it's my decision and I'll make it.  But the

4  question is why is this a good thing -- why is denying the

5  motion a good thing from the point of view of the unsecured

6  creditors' committee?

7          MR. STONE:  Because --

8          THE COURT:  Why is your client better off for purposes

9  of how the bankruptcy might have a proper conclusion?  It's too

10 early to think about it, but I read in the papers it's going to

11 be done in June.  So why --

12         MR. STONE:  Well, we all hope, Your Honor.  But from

13 our stand --

14         THE COURT:  They don't know that the first one is

15 still pending.

16         MR. STONE:  From our standpoint, Your Honor, it's just

17 what Your Honor mentioned in our previous exchange, which is

18 that this is just taking money and putting it out of the reach

19 of otherwise ordinary creditors.  And we don't know what's

20 going to happen.

21         THE COURT:  Well, okay, but let's focus on that.  Yes,

22 and I can use my metaphor or his metaphor; so I'll go back to

23 mine.  I'm going to -- I'm being asked to let the company --

24 companies put fifty million dollars under the rug for a rainy

25 day, for the benefit of a small subset of people called

eScribers
(973) 406-2247   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  officers and directors, who are well paid and well compensated

2  but are also taking some risk here.  And they are in the

3  kitchen and they have -- and they're putting up with the heat.

4  And I'm sure there's plenty of it in the kitchen.

5      If I deny the motion, it doesn't change the outcome

6  for creditors.  Your clients don't get fifty more million

7  dollars, nor do the fire victims.  What happens is that -- Mr.

8  Tsekerides is correct -- a relatively small blip is still on

9  the available-asset side of the equation, and the company,

10 whether on its own or with a competing plan -- somebody's going

11 to figure out a way to pay the creditors.  And the deal isn't

12 going to turn on this fifty million dollars under the rug.

13 Isn't that true?

14      MR. STONE:  Probably not --

15      THE COURT:  It's just not --

16      MR. STONE:  -- Your Honor.

17      THE COURT:  It's just not --

18      MR. STONE:  Yes.

19      THE COURT:  It's not going to make a difference.

20      MR. STONE:  It --

21      THE COURT:  If I -- look, I made reference to the fire

22 fund, and the fire fund was approved just over a month ago.

23 And the other day I said to myself, well, when is some of that

24 money going out to the victims?  Now I realize there's been

25 some activity -- you're probably familiar with it, or the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    committee is -- and progress is being made.

2           If I had a sense that denying this motion might

3    somehow move the ball towards getting some money to the

4    creditors -- and I won't say the fire victims; I'll say the

5    creditor -- the universe of creditors -- that would be an

6    argument in favor of telling the officers and directors, well,

7    you'll just have to stay in the kitchen with the heat and we're

8    not going to turn the temperature down.  But there's no

9    indication that that's going to happen.  I mean, there either

10   is or isn't going to be a plan in the near term.  Right?

11          MR. STONE:  Right.

12          THE COURT:  So once again, I'm pinning you down:  how

13   is this going to make a real difference to creditors, whether

14   they be fire victims or consensual creditors?

15          MR. STONE:  I don't know that anyone today can answer

16   that question.

17          THE COURT:  Okay.

18          MR. STONE:  Okay.

19          MR. TSEKERIDES:  Your Honor, I think Mr. Karotkin

20   wanted to --

21          MR. KAROTKIN:  Can I say --

22          THE COURT:  Yes.  Sure, Mr. --

23          MR. KAROTKIN:  Sorry, I -- having lost my voice -- too

24   many airplane flights, Your Honor.  It's Stephen Karotkin.

25          THE COURT:  You haven't moved --

PG&E Corp., Pacific Gas and Electric Co.

1          MR. KAROTKIN:  Well --

2          THE COURT:  -- to California yet?

3          MR. KAROTKIN:  Housing's too expensive in San

4  Francisco.

5          THE COURT:  Hey, we had an earthquake for you since

6  you were --

7          MR. KAROTKIN:  Two of them.

8          THE COURT:  Yeah.  Well, they were Southern California

9  earthquakes, so --

10          MR. KAROTKIN:  Yeah, I know.

11          Your Honor, I think you put your finger on it in the

12  last few minutes when you addressed how is this really going to

13  impact distributions under the plan, because it's not -- and I

14  think that it's important to note, again, as you said, that --

15  God forbid, God forbid there's another catastrophic wildfire --

16  what Mr. Stone is asking these officers and directors to do is

17  rely on the fact that they have administrative-expense claims

18  which are pari passi, of course, with a post-petition

19  catastrophic wildfire.  And it's not fair to put them in that

20  risk when all we're asking, Your Honor, is -- and again, it's

21  not all we're asking, but it's to put fifty million dollars

22  aside to give them the peace of mind that they have -- that

23  they have the coverage.

24          And it's easy for Mr. Stone to say, don't worry,

25  there's not a big risk of a lawsuit, there's not a big risk of

PG&E Corp., Pacific Gas and Electric Co.

1    being exposed to it.  He's not going to be the defendant.  And

2    I think it's important to note that the directors and officers

3    are entitled to that coverage.  The money is not leaving the

4    estate.  And as Mr. --

5           THE COURT:  Well, it kind of -- it's kind of leaving

6    the estate.

7           MR. KAROTKIN:  It's not, though.

8           THE COURT:  It --

9           MR. KAROTKIN:  It's there.  It's an asset that will be

10   available.  And if it's not used, it comes back.

11          THE COURT:  I mean, it's -- come on, it's like paying

12   a retainer to a special counsel.  I mean, if a lawyer gets

13   hired and says, "I'll take" -- "I'll do something as long as I

14   get my retainer in advance" --

15          MR. KAROTKIN:  But it comes back, Your Honor.

16          THE COURT:  -- we allow -- that's right.  And if the

17   lawyer doesn't use it up, he gives it back.  But my point is

18   we --

19          MR. KAROTKIN:  And if there -- and if the --

20          THE COURT:  -- we do it all the time.

21          MR. KAROTKIN:  Right.

22          THE COURT:  This is a different one.

23          MR. KAROTKIN:  And if the company, as Mr. Stone is

24   convinced of, is administratively solvent and will have the

25   ability to provide the indemnification, all of the money will

(973) 406-2447   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    come back, with interest.

2    THE COURT:  So we're going into this anomaly of

3    saying, if the company -- everybody in the room presumes that

4    the company is administratively solvent, and not only

5    administratively solvent, it's going to pay its creditors,

6    therefore what's the big deal of setting aside fifty million.

7    But then the question then is, well, what if we're wrong on

8    that?  Then the question is, well, do the fifty million

9    dollars -- have they been reallocated unfairly to the people

10   that it should be --

11   MR. KAROTKIN:  Again, Your Honor --

12   THE COURT:  -- allocated to?  Don't know.

13   MR. KAROTKIN:  -- directors and officers are entitled

14   to the protection of insurance.  This was a very economical way

15   to do this, and we think that it represents --

16   THE COURT:  I don't disagree with that.  I mean, look,

17   again, the complexity of it and the -- but the simplicity of

18   it, in a sense, is there.  But -- and the committee didn't

19   disagree, nor did I question the relatively minor cost of

20   administering this thing.  It's 100,000 dollars over five

21   years.

22   MR. KAROTKIN:  Exactly.

23   THE COURT:  I mean, but again, it's your own money.

24   MR. KAROTKIN:  And I will note, Your Honor, the tort

25   committee, which obviously represents thousands and thousands

PG&E Corp., Pacific Gas and Electric Co.

1   of claimants, has no opposition or --

2           THE COURT:  No, I know, and -- no one --

3           MR. KAROTKIN:  -- objection to the relief.

4           THE COURT:  -- no one but the unsecured creditors'

5   committee.

6           MR. KAROTKIN:  Thank you, sir.

7           THE COURT:  I'll go ahead and grant the motion.  I am

8   on the fence about it.  I was -- struggled with it in my own

9   mind, and I was bothered by the way it came about.  But I'm

10  glad we resolved it today.  I would have wished that it could

11  have been played out a little more deliberately so that I and

12  the unsecured creditors' committee and Mr. de Ghetaldi and

13  anyone else would have a better sense of it.  But at the end of

14  the day, I think the presentation of counsel has explained it

15  to me.  And I don't mean to put Mr. Stone on the spot by trying

16  to pin him down to say how does it really matter.  That's not

17  his role.  His role is to do what the unsecured creditors'

18  committee's supposed to do, and that is, second -- in

19  appropriate cases, second-guess the debtor and have a reality

20  check on whether the debtor should be doing it.

21          I'm not unsympathetic to the risks that any person who

22  serves as an officer or director of a company like this -- it's

23  constantly under criticism till the lights stay on, and then

24  they get no thanks for it.  It's not an easy job.  And I wish

25  it would be simpler.  But I think -- not to put a label on it

(973) 406-2447   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   to say, well, I'm deferring to the debtors' judgment.  I do

2   defer to the debtors' judgment but, here, having considered the

3   argument of the creditors' committee but, more importantly, the

4   way it should work and the way -- and the way there is a

5   minimal impact on creditors, notwithstanding the optics of it,

6   it is true, I will probably read in the paper what you all read

7   tomorrow:  that the judge just handed over fifty million

8   dollars to the officers and directors.  That's not true.  But I

9   have to -- I will go ahead and grant the motion because I'm

10  satisfied that the tradeoff of the benefit to maintaining the

11  situation going forward outweighs what is almost a nonexistent

12  present and a benefit to the universe of creditors:  tort

13  creditors and contractual creditors, who hopefully will be

14  taken care of in a broader sense in the future.

15          So for all those reasons, I will overrule the

16  committee's objections, thank Mr. Stone for the presentation

17  and the argument and, Mr. Tsekerides, you too.  And so I'll

18  grant the motion for those reasons and I'll ask that -- I don't

19  recall what the form of order says, but it's for the reasons

20  stated on my comments that I just made is why I will grant the

21  motion.

22          So let's go to the next one.

23          MR. TSEKERIDES:  Your Honor, can Ms. Markland be

24  excused?

25          THE COURT:  Oh, sure.  She never -- I mean, I

PG&E Corp., Pacific Gas and Electric Co.

1    didn't -- wasn't requiring her to be here.

2           Thank you, Ms. Markland, for coming.

3           MS. MARKLAND:   Thank you.

4           THE COURT:   All right, you want to -- so can I just

5    ask, is there any ongoing objection to the retention of the

6    Coblentz firm, based upon what Mr. Ficks has said?  Any -- the

7    tort committee?  Are you -- or Mr. Ficks --

8           MR. FULLER:   Your Honor, Lars Fuller of Baker &

9    Hostetler, on behalf of the tort committee.

10          I think we are satisfied with the supplemental

11   disclosure of Mr. Ficks, addressing the issue --

12          THE COURT:   Okay, and is --

13          MR. FULLER:   -- we had raised in our --

14          THE COURT:   All right.  Thank you, Mr. Fuller.

15          Is Ms. Pino on the phone or in court today?

16          MS. PINO:   Good morning, Your Honor.  Estela Pino

17   appearing by phone.  Your Honor, thank you for hearing this

18   matter and allowing us to appear by phone.

19          Your Honor, we have carefully reviewed Mr. Ficks'

20   supplemental declaration and we do not feel that it addresses

21   the concerns we raised in our objection.  The very contract

22   entered into between the firm sought to be employed and the

23   debtor provides that all applicable rules and regulations

24   governing professional conduct have to be followed.  And the

25   contract also says that any actual or potential conflict with

PG&E Corp., Pacific Gas and Electric Co.

1    other parties that, if those exist, the other -- the law firm

2    has to obtain written waivers from the other client.

3              THE COURT:  Well, they have --

4              MS. PINO:  And --

5              THE COURT:  -- they only have -- they only have two

6    clients; right?  They have -- the Coblentz firm's clients are

7    the City of Oakland and the debtor.  So, I mean, your --

8              MS. PINO:  Actually, there's a lot -- there's a lot of

9    other clients that they represent.  But as the Ghost Ship

10   plaintiff's executive committee, we are very concerned about

11   the issue with the City of Oakland.  There is no evidence

12   before the Court that the City of Oakland has given its written

13   consent to the representation of the debtors by this firm.  And

14   it could have been addressed in the supplemental declaration

15   that was filed, and it is not.

16             We do appreciate that Mr. Ficks has said that --

17   addressed one of the TCC's concerns that Coblentz will not

18   represent the debtors or matters relating to the Oakland-

19   warehouse litigation in connection with claims estimation and

20   the claims process.  But they could have used this declaration

21   to supplement the record regarding the written consent of the

22   City of Oakland and others, like --

23             THE COURT:  Well --

24             MS. PINO:  -- the Caymus winery --

25             THE COURT:  -- who's the other --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MS. PINO:  -- and they didn't.

2          THE COURT:  Okay, so the representation here that they

3    have advised Caymus regarding other matters -- but the issue on

4    Oakland, the Ghost Ship -- Oakland is a defendant in the Ghost

5    Ship, PG&E is a defendant in Ghost Ship.  And the Coblentz firm

6    has two clients who are defendants, who perhaps are not adverse

7    to one another, but -- well, they may be, but Mr. Coblen -- I

8    mean Mr. Ficks' firm is not getting in the middle of that.

9          So -- well, look, let me ask Mr. Ficks to respond.

10          You heard these comments.  Can you solve the problem

11    with a consent from Oakland?

12          MR. FICKS:  Yes, Your Honor.  We have it.  We have a

13    written consent from Oakland.

14          THE COURT:  Okay.  And you didn't have it when you

15    gave me the declaration, but your representation is that it

16    exists?

17          MR. FICKS:  Yes, and --

18          THE COURT:  I mean subsequent to this thing all

19    surfacing?

20          MR. FICKS:  No.  It existed before, Your Honor.  The

21    declaration and my discussions with Ms. Pino were going on at

22    the same time.  So I did inform her yesterday by telephone that

23    we had the written --

24          THE COURT:  And what about --

25          MR. FICKS:  -- consent.

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  -- Caymus Vineyards?

2          MR. FICKS:  There's no -- we're not representing

3    Caymus Vineyards.  They're not adverse to anything that my firm

4    is involved with, with PG&E.  There's no reason to get a waiver

5    from them.  We have no actual potential conflict.  They have

6    not --

7          THE COURT:  They're not -- you're doing something

8    unrelated to PG&E for Caymus, and unrelated to City of Oakland

9    for Caymus; right?

10          MR. FICKS:  Correct.

11          THE COURT:  Ms. Pino, why do they need a waiver from

12    Caymus, in your opinion?  I don't know that they do, either.

13    There might be good client relationships, but it's not legally

14    required under the rules; is it?

15          MS. PINO:  Well, Your Honor, I think it's required by

16    the actual agreement that is attached as Exhibit B to the

17    application to employ.  But let's focus on the City of Oakland.

18    The declaration does not state that they have the written

19    consent of the City of Oakland.

20          THE COURT:  But Mr. Ficks just --

21          MS. PINO:  Rather --

22          THE COURT:  But Mr. Ficks just made a representation

23    on the record.  Do you think he's making that up?  I mean, I

24    don't -- I --

25          MS. PINO:  Well, Your Honor, I --

(973) 406-2447   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Mr. Ficks isn't going to --

2          MS. PINO:  -- I have --

3          THE COURT:  -- come to court -- Ms. Pino, Mr. Ficks is

4     not going to come into this court as an officer of the Court

5     and represent to this Court that he has obtained a written

6     consent from Oakland, if it's not true.  And if you want me to

7     make him -- you mean -- I don't even want to ask him, any more

8     than I would ask you.  Do you really want me to just not

9     believe him?

10         MS. PINO:  Your Honor, I think that perhaps that

11    written consent should be submitted for your review.

12         THE COURT:  That's none of my business.  An officer of

13    the Court, member of the California bar, has said he has a

14    written consent from a defendant, who is also a client of his

15    firm, in connection with a matter where the debtor, who seeks

16    to employ Mr. Ficks' firm, is also employing the firm, in

17    connection with that event.  But he does not, and his firm does

18    not, represent the parties against one another.  They have a

19    common interest.

20         I'm not going to do anything more than take his word

21    for it.  If he gave me a false statement, there are other

22    consequences.  But go ahead; anything else you want to add?

23    Because I'm satisfied with that representation and I'm not

24    going to -- I'm not going to review a document -- or a letter

25    that an officer of the Court has said exists.

PG&E Corp., Pacific Gas and Electric Co.

1          So what else do you want -- anything else?

2          MS. PINO:  That's it, Your Honor.  Thank you for your

3    time.

4          THE COURT:  Okay.  Well, to the extent -- and I'm not

5    asking Ms. Pino to back down.  I will, for the record, then,

6    take Mr. Ficks' representation that he has the written consent

7    from his other client and I don't need to see it.  And I will

8    overrule the remaining objection by the executive committee.

9    The tort committee has, through Mr. Fuller's comments,

10   indicated its satisfaction.  So for those two reasons, then,

11   the application will be granted.

12         And go ahead, Mr. Ficks, you can coordinate with

13   counsel.  I guess there already has been an order uploaded,

14   so -- maybe not uploaded, but make sure it is uploaded in the

15   normal fashion.  Okay?

16         MR. FICKS:  Thank you, Your Honor.

17         THE COURT:  Okay.  Thanks very much.

18         Thank you, Ms. Pino.

19         MR. KAROTKIN:  Your Honor --

20         MS. PINO:  Thank you, Your Honor.

21         THE COURT:  Yes, sir?

22         MR. KAROTKIN:  -- may I be excused?

23         THE COURT:  Yeah.  You want to --

24         MR. KAROTKIN:  Thank you.

25         THE COURT:  Are you leaving?

PG&E Corp., Pacific Gas and Electric Co.

1      MR. KAROTKIN:  Yes.

2      THE COURT:  Are we done?

3      MR. KAROTKIN:  No.

4      THE COURT:  Okay.

5      MR. KAROTKIN:  Thank you, sir.

6      THE COURT:  Don't buck (ph.) into the door.

7      MR. KAROTKIN:  Not anymore.  You fixed that.

8      THE COURT:  All right, so we're down to the protective

9  order?

10      MR. SLACK:  Yes --

11      THE COURT:  All right.

12      MR. SLACK:  -- Your Honor.

13      THE COURT:  Mr. Slack.  Well, let --

14      MR. SLACK:  So, Richard --

15      THE COURT:  -- let me make -- okay, state your

16  appearance, please.

17      MR. SLACK:  I was just going to say, Richard Slack --

18      THE COURT:  Yeah.

19      MR. SLACK:  -- from Weil, for the debtors, Your Honor.

20      THE COURT:  So I was reviewing the agenda that Ms. Kim

21  (ph.) prepared, and going back through my notes from before,

22  and I have to confess that I just simply couldn't keep up with

23  the status of what's still pending.  And I obviously want you

24  to summarize what's still unresolved.  And if there are other

25  counsel in court or on the phone that want to be heard, I'll go

PG&E Corp., Pacific Gas and Electric Co.

1    down through every one of them.  But I thought a number of them

2    were resolved.  So why don't you tell me what's unresolved.

3             MR. SLACK:  That's true, Your Honor.  So, first, as I

4    think the Court is aware, the debtors, the UCC, and the TCC

5    agreed on a protective order, which Your Honor entered.

6             THE COURT:  Right.

7             MR. SLACK:  And there's therefore, I think, broad

8    creditor support for the protective order put in place by the

9    Court.

10            Since that time, we have continued to discuss with the

11   objectors, and I'm pleased to say that we've made progress and

12   resolved what I think are two large groups of objectors.  So we

13   have resolved -- and I'm going to go through it in a second,

14   Your Honor -- the NextEra objection and all of the joinders to

15   the NextEra --

16            THE COURT:  Oh.

17            MR. SLACK:  -- objection.

18            THE COURT:  Okay, that's one I was -- that was on my

19   "open" list.

20            MR. SLACK:  And we've also resolved the Sonoma Clean

21   Power Authority objection and all the joinders to that

22   objection, Your Honor.

23            THE COURT:  Well, is that the same as the -- Mr.

24   Pascuzzi's California state-agen --

25            MR. SLACK:  No, that's different.

escribers
(973) 406-2247 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  That's different.  Okay.  Sonoma Power --

2    MR. SLACK:  So there're still -- and again, I'll go

3    through this in a second, Your Honor.  There're still three

4    issues, at least that we're aware of:  the first is with the

5    state agencies, who'd like to add some language, which I'll

6    talk to in a few minutes; the second is, there are individual

7    fire claimants, they also have a continuing objection; and the

8    ad hoc subrogation group also has a continuing objection.  And

9    I'll go through each of those.

10    THE COURT:  Okay.

11    MR. SLACK:  But those are the three that I'm aware of,

12    Your Honor, that still are outstanding.

13    THE COURT:  Okay.  Well, you go ahead and summarize it

14    and then I'll see if there's anyone that you --

15    MR. SLACK:  So, Your Honor, I --

16    THE COURT:  -- might have forgotten.

17    MR. SLACK:  -- what I'd like to do is, because we've

18    made some progress, and we have made some changes to the

19    protective order that you entered, I'd like to hand that up and

20    walk through those with you so you can --

21    THE COURT:  Sure.

22    MR. SLACK:  -- see what was resolved.

23    THE COURT:  Okay.  Thank you.

24    MR. SLACK:  So, Your Honor, there's a clean and a

25    blackline.  The clean should be the first one.  The blackline

PG&E Corp., Pacific Gas and Electric Co.

1  is the second.  And I'd like to go over the blackline version.

2      THE COURT:  Well, you know, you don't need to go

3  through what's been agreed to.  I don't -- I'll rely on it.

4      MR. SLACK:  Okay.

5      THE COURT:  I think we should identify what's open,

6  what's unresolved.

7      MR. SLACK:  Yeah, well, I -- the only reason I'd like

8  to at least walk through the NextEra objections -- I think it

9  relates to one of the unresolved objections --

10      THE COURT:  Okay.

11      MR. SLACK:  -- because I think a party has an

12  analogous objection but wasn't satisfied with the resolution.

13  So --

14      THE COURT:  Okay.

15      MR. SLACK:  -- I think it's important to at least go

16  through that, so you understand what our proposal is to deal

17  with it.

18      So NextEra had raised a few issues, but the principal

19  objection that we worked out with them related to whether

20  someone, who was not otherwise permitted to see confidential

21  and highly confidential information under 7.2 and 7.3, should

22  be allowed.

23      And after discussions, what we understood the primary

24  concern was is that while they recognize there's a provision

25  7.3 already in the protective order that allows for these kinds

PG&E Corp., Pacific Gas and Electric Co.

1  of determinations, in other words, a party can come to the

2  debtors and ask for a consent for somebody -- and that's where

3  the debtor, of course, is the producing party.  It could be

4  another party.  But could come to the debtors and ask for our

5  consent to show it to somebody who's not otherwise permitted.

6         And the concern was well, maybe the debtor's going to

7  drag its feet in doing that.  So we agreed to a new sentence at

8  the end of 7.3(k), which is in the blackline.  And it

9  essentially provides that after a request by a party to show it

10  to somebody, who's not otherwise permitted, the debtor will

11  have three-to-five days, use best efforts for three days, but

12  five days to give an answer.  And that could be followed by an

13  application to the Court.

14         THE COURT:  Less than three -- at least three but no

15  later than five.

16         MR. SLACK:  Exactly, Your Honor.

17         THE COURT:  Sounds like a four to me.  Okay.

18         MR. SLACK:  So with that change to 7.3(k), NextEra,

19  and again, as I understand it, all the folks that have joined

20  that have -- we've resolved those objections.

21         THE COURT:  Okay.

22         MR. SLACK:  I'll just point out -- I won't walk you

23  through the provision, but in section 3, we agreed to carve out

24  a number of the CCAs that we worked out the language with

25  Sonoma and the joinders.  And again, with that language in

PG&E Corp., Pacific Gas and Electric Co.

1    section 3, that objection has been resolved.

2           THE COURT:  Is that --

3           MR. SLACK:  So --

4           THE COURT:  Let me take a look at that though.  In

5    section 3 -- I'm looking at the blackline.

6           MR. SLACK:  Right, so it's section 3 at pages 4 and 5

7    of the blackline.

8           THE COURT:  Yeah, okay.  Oh that's the entities that

9    are being carved out.

10          MR. SLACK:  That's correct, Your Honor.

11          THE COURT:  Yeah.  All right.  Okay, got it.

12          MR. SLACK:  So again, I think that leaves only three

13   of the objections unresolved.

14          THE COURT:  But what --

15          MR. SLACK:  Our view, Your Honor --

16          THE COURT:  What was the fate of the one that was

17   raised by someone, I forget, about letting outside -- I mean,

18   sorry, in-house counsel -- those companies that have in-house

19   counsel were being allowed to see it?  Was that resolved or

20   not?

21          MR. SLACK:  I think the only issue that is unresolved

22   with respect to counsel relates to outside -- at least as we're

23   aware, now relates to outside counsel who is not counsel in the

24   bankruptcy.  The ad hoc subrogation group would like those

25   counsel to be able to see information.

PG&E Corp., Pacific Gas and Electric Co.

1      And again, our view on that, Your Honor, is that that

2  already is covered under 7.3(k), which is the catch-all.  And

3  now with the new language, we think that should resolve that

4  issue.

5          THE COURT:  Okay.

6          MR. SLACK:  So the three unresolved objections, let me

7  see if I can go through them.  The first, Your Honor, no

8  particular order -- we'll take the individual fire victim

9  creditors filed an objection.  What they're seeking -- and

10  we've had some discussions with them, is they essentially want

11  to see any information that the debtors produced to the TCC.

12  And putting aside for a moment that this request is overbroad

13  and inappropriate because the individual fire victims don't

14  perform the same function in this bankruptcy as the TCC does.

15  And therefore, the TCC is necessarily going to need information

16  that wouldn't necessarily be appropriate for other parties.

17          The real issue today is that the request is not a

18  protective-order issue.  The request is simply a request for

19  documents.  They want to see information that the TCC gets, and

20  if they want to see that, then they can make requests, and

21  we'll respond to them in the appropriate way.  And if they're

22  not happy with the answers that the debtors give them on a

23  request-by-request basis, then they can come to court like any

24  other party who wants information.  But it's fundamentally not

25  a protective-order issue.  There isn't a provision in this

(970) 612-4767 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    protective order that addresses whether parties should be able

2    to get discovery that they want independently.

3         THE COURT:  Well, but if the TCC asks the debtor for

4    something, and the debtor gives it to the TCC under the

5    protective-order rules, then doesn't that exactly -- isn't that

6    what triggers the individual claimants making the same request?

7         MR. SLACK:  Yeah, the issue though is, Your Honor,

8    when -- under the way the protective order works, if you give

9    information to the TCC there are specific people who they can

10   give it to.

11        THE COURT:  Yeah, I know that.  I understand that.

12        MR. SLACK:  All right, the question is this is a

13   separate, essentially, receiving party, meaning if they want

14   information like any other party in the bankruptcy, they can

15   make a request.  There certainly is nothing that --

16        THE COURT:  No, but I know that.  I know that, and if

17   there's no claim of confidentiality, the debtor would be well-

18   advised to just cooperate with them, right?

19        MR. SLACK:  That's true.

20        THE COURT:  And if the debtor says no, that's

21   confidential, or highly confidential, then you're back to well,

22   okay, then they have to make a request.  They don't get to sort

23   of trigger the three-day, five-day response time?  I mean,

24   what -- in other words, I'm not following you how it gets

25   implemented from the individual claimant's point of view.

PG&E Corp., Pacific Gas and Electric Co.

1    MR. SLACK:  So let's say that the individual claimants

2    are represented.  They want information on a particular motion.

3    They would make a request of the debtor.  They would be an

4    independent receiving party from the TCC, and we'd be able to

5    judge whether that request makes sense for the individual fire

6    claimant to see that information.

7        Maybe it's a confidentiality issue, but maybe it's an

8    issue of should they be performing the same role as the TCC in

9    duplicating effort in this bankruptcy.  Maybe it's an issue

10   that they don't have a dog in that fight.  So it shouldn't be

11   that everything that the TCC gets that another party should

12   automatically get.  Again, it's just not a protective-order

13   issue.

14       THE COURT:  Well, I know you said that it isn't, but

15   when does it become one?  In other words, if Mr. Julian asks

16   you for something, and you say well, okay, that's under the --

17   we'll do it too, but we're marking it confidential, but we'll

18   give it to you because it's consistent with our term.

19       MR. SLACK:  That's right.

20       THE COURT:  Then one of the individual claimants says

21   well, I'd like that same thing too, and you say no, then what?

22   Then we're back to the same question.

23       MR. SLACK:  No, we're actually at a different

24   question.

25       THE COURT:  Okay.

PG&E Corp., Pacific Gas and Electric Co.

1      MR. SLACK:  And at a different point.  And the

2   different question is you're looking at particular information

3   that the individual fire claimants want to see.

4      THE COURT:  Right.

5      MR. SLACK:  I mean, for example, the TCC, because of

6   their role as a committee, is getting information about the

7   upcoming CEO motion.  And they're getting information about the

8   KEIP, for example.  There's no suggestion that just because the

9   TCC is getting information to fulfil their role as an official

10  committee that the fire victims should get everything that the

11  TCC sees.  And that --

12      THE COURT:  No, I got that.  But what if the fire

13  claimant says but I want it?

14      MR. SLACK:  Right, that's a request to the debtors.

15      THE COURT:  Yeah.

16      MR. SLACK:  And the debtors will take that just like

17  they would from any other party.

18      THE COURT:  And the debtor says no, I'm not going to

19  give it to you --

20      MR. SLACK:  Right.

21      THE COURT: -- because it's confidential.

22      MR. SLACK:  Well, it could be because of that.  It

23  could be for other reasons.  But the point, Your Honor, is at

24  that point you've got a specific request with a specific need.

25  And both the debtors and the Court are going to be able to look

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    at the specific need for that specific motion and make a

2    determination whether the fire victims need that information in

3    that particular circumstance.

4           And that's the way it should work.  It shouldn't work

5    where you have a blanket everything the TCC gets the fire

6    victims should get.  And that's what they want is this blanket

7    ruling that they should get everything just because the TCC

8    gets it.

9           THE COURT:  Okay.  We'll see what they have to say.

10          MR. SLACK:  The second one, Your Honor, that's

11   outstanding is the -- again, the ad hoc subrogation group.  And

12   they seek to be able to show the debtors' information not just

13   to their counsel in the bankruptcy, which is permitted.  So

14   anybody who appears in the bankruptcy can get the information

15   and use it in the bankruptcy.  That's not an issue.

16          And we've also agreed, Your Honor, though it doesn't

17   appear in the -- it doesn't appear in the protective order.

18   It's essentially a 7.3, but we've agreed that their

19   bankruptcy -- their bankruptcy counsel who hasn't officially

20   appeared, but they've given us a list.  And they've said these

21   are our bankruptcy counsel for the individual members.  We've

22   also agreed that they can see the information.

23          And so now the question that remains is whether their

24   essentially outside litigation subrogation counsel should be

25   able to have a blanket waiver here.  And again, what our view

PG&E Corp., Pacific Gas and Electric Co.

1   is, Your Honor, is that 7.3 covers this.  And if you think

2   about it, Your Honor, this is really an analogous issue to what

3   NextEra and the joinders there had.  They wanted to show it to

4   common interest folks.  They're not -- common interest folks

5   aren't listed.  And we worked out an arrangement under 7.3.  I

6   think there was a recognition that the protective order already

7   covered these kinds of disputes.  And the language in (k) that

8   we've added makes sure that it happens promptly.

9           THE COURT:  Well so would that -- in your mind, that

10  would work for the subrogation group too?

11          MR. SLACK:  That's exactly right.  And the advantage

12  to that, Your Honor, and it's an important one, is that that

13  allows the debtor to look on a case-by-case basis.

14          THE COURT:  Right.

15          MR. SLACK:  With respect to the documents.

16          THE COURT:  So if a member of the ad hoc subrogation

17  group says share this information with our general counsel, our

18  outside litigation counsel, not bankruptcy --

19          MR. SLACK:  That's right.

20          THE COURT:  -- that triggers the three-to-five-day

21  response by you.

22          MR. SLACK:  Exactly, Your Honor, exactly.

23          THE COURT:  But it still means that you're the one,

24  the debtor and you as its counsel are the ones that have to

25  respond.  And if you respond favorably, the problem's solved.

(973) 406-2447 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    If you say no, then --

2              MR. SLACK:  Exactly, Your Honor.

3              THE COURT:  -- I'm here.  Okay.

4              MR. SLACK:  The last outstanding objection is by the

5    state agencies.  Now, first we've agreed to carve them out.

6              THE COURT:  Right.

7              MR. SLACK:  And they wanted to be carved out.  So

8    they're not carved out, and that's in the section 3 carve-out.

9              THE COURT:  We said that.

10             MR. SLACK:  But that didn't resolve their objection.

11   What they're -- what they said is they want to put in place a

12   provision.  And I don't think their language is in -- is in

13   their objection, but they want to put in place a provision that

14   would allow anybody who receives the debtor's information to

15   essentially be a quasi-attorney general whistleblower and have

16   a global carve-out that says, whether something's confidential

17   or highly confidential, that they can essentially whistle blow

18   and tell the state agencies.

19             THE COURT:  So you're saying -- you know, I did look

20   at the state agencies specifically because I was aware that

21   they were carved out.  But I looked at it and so this -- what

22   you call the whistleblower rule is not even in there.

23             MR. SLACK:  I think they mentioned that they -- I

24   think they have one sentence where they complain about the fact

25   that people can't do it, but they don't propose language, and

(972) 562-477 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    there's no discussion or rationale in the papers, Your Honor.

2         THE COURT:  But is this a protective-order issue?  In

3    other words, if the state agencies are not covered by this

4    rule, and they get some information, then if there's a

5    whistleblower consequence there's a consequence.  The rule

6    doesn't apply, so what is there to --

7         MR. SLACK:  Yeah --

8         THE COURT:  How do we come up with a carve-out to the

9    carve-out?

10        MR. SLACK:  Yeah, Your Honor, I think you're on to

11   something, but I think look, this is -- there are statutes that

12   deal with whistleblowers.

13        THE COURT:  I would think --

14        MR. SLACK:  And that's a legislative province.  And

15   that's why you're going to find any support -- there's no

16   support for this kind of a provision because this is the

17   province of the legislature.  And if the legislature wants to

18   have a carve-out for all protective orders in civil litigation

19   that would allow folks who are regulated to have people who get

20   information essentially become quasi attorney generals, the

21   legislature can enact that.  There's no preventing it.

22        THE COURT:  But we're not going to tell the

23   legislature what to do.  The question is what should the

24   Bankruptcy Court do.  And what would -- I see Mr. Pascuzzi's

25   going to tell me what he wants to do, but what would you have

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  me do, Mr. Slack?  Would you just leave it as is?

2  MR. SLACK:  I don't think there needs to be any change

3  at all --

4  THE COURT:  No change at all.

5  MR. SLACK:  -- to the protective order.

6  THE COURT:  Okay.

7  MR. SLACK:  I think that the protective order works

8  the way it is.  I mean, two points that are really important

9  here.  One, the debtors have cooperated fully with the

10  regulators, provided information.  There's no suggestion

11  otherwise, so I think that's -- we've got to put that aside.

12  And the debtors will continue to do that.  And the

13  state regulators are in the same position, if this is silent,

14  that they would be without a protective order.

15  THE COURT:  Well, but that's what strikes me is it's

16  as though that -- Mr. Pascuzzi will tell me in a minute what's

17  bothering him, but based upon paragraph 3, it's as though

18  they're simply not party to the protective order.  Therefore,

19  if they want some information, they're governed by the

20  traditional rules and so are you.

21  MR. SLACK:  Yeah, that's right, Your Honor.  Anyhow,

22  so, Your Honor, I think again somebody may stand up and say I

23  missed one, but I think those are the three objections that are

24  outstanding.

25  THE COURT:  Okay.  Because Mr. Pascuzzi was almost at

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1　the podium, we'll go in reverse order.  I'll ask him to speak,

2　and then I'll hear from whoever's speaking for the ad hoc

3　subrogation group.  And then we'll come back and finish with

4　the fire claimants.

5　　　　　Mr. Pascuzzi, what do you want me to do for you?

6　　　　　MR. PASCUZZI:  Thank you, Your Honor.  Paul Pascuzzi,

7　Felderstein Fitzgerald Willoughby & Pascuzzi, co-counsel with

8　the Attorney General's Office for the state agencies listed in

9　our pleadings at docket 2631 and 2634.

10　　　　　THE COURT:  Right, got them.

11　　　　　MR. PASCUZZI:  Your Honor, we appreciate the carve-

12　out.  Let me tie back in though why this is important.  The

13　provision in section 7.1, which is the scope of -- or the

14　access and use of discovery material, it prohibits use by a

15　receiving party of any of the discovery material for any

16　purpose other than the Chapter 11 cases.

17　　　　　So this order is going to apply to 50,000-plus

18　creditors in this case.  We're not talking about a discrete

19　order, typical in a litigation or a bankruptcy case that

20　applies to a committee and a debtor.  So under this hugely

21　broad order, parties are going to be getting information from

22　the debtor during the case.  And if they happened --

23　　　　　THE COURT:  Excuse me, they're going to be getting it

24　in response to their request for it.

25　　　　　MR. PASCUZZI:  Correct.

(973)406-2247  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1        THE COURT:  I mean, the debtor just isn't now putting

2   out a Facebook page of all this information.

3        MR. PASCUZZI:  Understood.  Understood.

4        THE COURT:  So if an individual creditor or person or

5   entity asks the debtor for something, the debtor will either

6   provide it or refuse to.

7        MR. PASCUZZI:  Correct.  Correct.

8        THE COURT:  Okay.

9        MR. PASCUZZI:  You're following exactly.

10       THE COURT:  Okay, so I'm not sure what -- go ahead

11   with your point.

12       MR. PASCUZZI:  So this creditor gets information in

13   response to a request.  And let's say it's information that the

14   creditor says well, this could reveal a violation of a law or

15   regulation, an environmental issue, something like that.  And I

16   believe I need to report it to a state agency or law

17   enforcement.  This order, under penalty of sanctions in section

18   13.8 says any violation of this order is subject to sanctions

19   from this Court.  This order could chill and/or does prevent

20   that creditor from disclosing information.  I'm not talking

21   about disclosing confidential information.  We're not even

22   talking about disclosing the discovery materials.  I'm talking

23   about picking up the phone and making a phone call to the

24   appropriate regulatory authority.

25       THE COURT:  Well but I think what you're telling me is

PG&E Corp., Pacific Gas and Electric Co.

1    that you are not making the argument today for the agencies.

2    You're making it for everybody else in the world.

3          MR. PASCUZZI:  The agencies regulate the debtor, Your

4    Honor.

5          THE COURT:  No, I know that.

6          MR. PASCUZZI:  So we want --

7          THE COURT:  I mean, I'm not making light of it.  I'm

8    just trying to figure out why you're complaining about

9    something that's an agreement that you're not covered by.

10         MR. PASCUZZI:  Because --

11         THE COURT:  And the answer is because other people are

12   covered by it.

13         MR. PASCUZZI:  Because it would chill --

14         THE COURT:  Yes.

15         MR. PASCUZZI:  -- other people reporting to our

16   clients issues that might show up in the discovery material.

17         THE COURT:  But what if an individual learns something

18   independent of this Court's protective order?  That person's

19   certainly free to blow the whistle, right?

20         MR. PASCUZZI:  Yeah.

21         THE COURT:  That's what whistleblower laws provide.

22         MR. PASCUZZI:  The protective order does not prevent

23   that, but the protective order does prevent any use of any

24   discovery materials other than in the Chapter 11 case.

25         THE COURT:  But isn't -- am I correct; though it

                    PG&E Corp., Pacific Gas and Electric Co.

1    operates because someone has made the request per the order.

2              MR. PASCUZZI:  Right.

3              THE COURT:  And the debtor has responded per the

4    order.

5              MR. PASCUZZI:  Right.

6              THE COURT:  And so if an individual, not you

7    representing the agency -- someone else, a citizen of the state

8    makes a request, and PG&E says okay, we'll give it to you, but

9    you can't use it for anything.  That person can seek relief

10   from the Court or what?

11             MR. PASCUZZI:  That person could seek relief from the

12   Court.  But, Your Honor, that's not how investigations and

13   regulatory --

14             THE COURT:  No, I know that.

15             MR. PASCUZZI:  -- violations work --

16             THE COURT:  You don't have to go to the --

17             MR. PASCUZZI:  -- where you go --

18             THE COURT:  -- bankruptcy court to get permission to

19   blow the whistle.

20             MR. PASCUZZI:  Or you don't go tell the target of the

21   investigation that you're going to go report something to a law

22   enforcement agency.

23             Your Honor, under the circumstances of this case,

24   where PG&E is on probation and is subject to numerous PUC

25   proceedings, I mean, the regulatory authority and the whole

            PG&E Corp., Pacific Gas and Electric Co.

1    umbrella over this case makes this a serious issue.

2           THE COURT:  Yeah, I know.

3           MR. PASCUZZI:  In addition, the fact that the order

4    covers everybody --

5           THE COURT:  So --

6           MR. PASCUZZI:  -- everybody --

7           THE COURT:  -- so what would you do to -- is it

8    paragraph 14?

9           MR. PASCUZZI:  So we wanted to add one sentence.

10          THE COURT:  To what paragraph?

11          MR. PASCUZZI:  It could be a standalone paragraph, or

12   it could be in a "provided however" in 7.1.

13          THE COURT:  Okay, let me hear it -- what it says.

14          MR. PASCUZZI:  It shall not be a violation of this

15   protective order for any receiving party to notify,

16   confidentially, law enforcement or regulatory personnel of a

17   governmental unit of any potential violation of law revealed by

18   the discovery materials.

19          I can hand the sheet up, if you want to look --

20          THE COURT:  So the guy who gets the information from

21   Mr. Slack can't put it on his Facebook page.

22          MR. PASCUZZI:  No.

23          THE COURT:  But he can call up the Attorney General's

24   Office of the Department of whatever.

25          MR. PASCUZZI:  Exactly.  Exactly, Your Honor.  We're

PG&E Corp., Pacific Gas and Electric Co.

1    not talking about disclosing confidential materials.  We're not

2    talking about even disclosing the discovery materials itself.

3    But if they learn something from the discovery materials, they

4    should have the ability, without being subject to the risk of

5    sanctions from this Court, to report it to law enforcement or

6    regulatory personnel.

7              THE COURT:  Okay.  The two critical -- law enforcement

8    or regulatory --

9              MR. PASCUZZI:  Personnel of a governmental unit.  And

10   I can hand up a piece of paper --

11             THE COURT:  No, that's okay.

12             MR. PASCUZZI:  Okay.  And I've given this to debtors'

13   counsel.  And the tort committee counsel is fine with it too,

14   when we were dealing with them with their order.

15             THE COURT:  Mr. Slack, why can't I -- how can I not --

16   I mean, how can this Court sort of tell somebody if you get

17   some information from the debtor, you cannot tell it to a law

18   enforcement person?

19             I mean, that doesn't play well on the front page of

20   The New York Times either, right?

21             MR. SLACK:  Well, I don't think --

22             THE COURT:  Because you're going to --

23             MR. SLACK:  -- that's -- I don't think that's the

24   issue, Your Honor.

25             THE COURT:  But the debtor's in control of the

PG&E Corp., Pacific Gas and Electric Co.

1    information.  If the person asks the information and you don't

2    want to give it to them, you don't give it to them.  But if you

3    give it to them, and then he calls up law enforcement, it's

4    hard for me to think that that's okay -- so I mean, that I

5    should prohibit that.  But make it -- I mean, Mr. Pascuzzi has

6    zeroed it in, and he's -- I think he's doing it for the benefit

7    of every other citizen of the country who might get

8    information.

9         So and it seems to be narrow, how he wants it.  So

10   what am I missing?

11        MR. SLACK:  So I think what you're missing, Your

12   Honor, is that what it's essentially asking -- and if you look

13   at the language where an individual who's getting information

14   on -- that they've asked for from the debtor in the

15   bankruptcy --

16        THE COURT:  Um-hum.

17        MR. SLACK:  -- is now going to individually assess

18   whether there's a potential violation of law.  And based on

19   their view, they're now going to be able to disclose

20   confidential and highly confidential information.

21        And what I would suggest, Your Honor, is that there's

22   a reason that you don't see this provision anywhere -- and

23   there's not a -- and they're not even trying to tell you

24   there's any support for this provision.  It's effectively, Your

25   Honor, a legislative issue that Your Honor would be intruding

PG&E Corp., Pacific Gas and Electric Co.

1    on.

2              In other words, there are rules about whistleblowers.

3    And the legislature can say whistleblowers can get information

4    and whistle-blow, and they're protected.  Okay?  But this is

5    essentially a legislative act.  And to say that this is somehow

6    unique, the fact is is that every bankruptcy has protective

7    orders.

8              THE COURT:  Well, not every --

9              MR. SLACK:  And every bankruptcy --

10             THE COURT:  -- bankruptcy has a protective order, but

11    this one has one.  So, okay.

12             MR. SLACK:  Okay, but the -- certainly I can tell Your

13    Honor that there are numerous bankruptcies that have protective

14    orders --

15             THE COURT:  I know.

16             MR. SLACK:  -- that relate to --

17             THE COURT:  And I --

18             MR. SLACK:  -- a lot of creditors.  And they're --

19             THE COURT:  -- and I've issued some of them.

20             MR. SLACK:  And there are other regulate -- there are

21    other companies that are heavily regulated.  There's securities

22    issues for companies.  There's a lot of companies that have had

23    other issues.  And the fact is that there's not a single shred

24    of support for this kind of provision being entered by a court

25    and really invading the legislative space.

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  I guess I'm having trouble understanding

2     why you say that.  So again, I do well with hypotheticals.  So

3     Mr. X -- not Mr. Pascuzzi -- Mr. X, who has standing to make a

4     request, he's a creditor -- Mr. X contacts you under the rules

5     and says I'd like to see the report that you got from CAL FIRE

6     last month about something.  And you make a decision to release

7     it or not.  And if you release it, you're telling me it's a

8     legislative act that I can't tell Mr. X that he can't take that

9     information to a law enforcement or regulatory entity.  And I

10    don't know why that is so horrible.  But you're just saying

11    well, it's a legislative act.

12          I don't know -- I don't understand why that's so,

13    because it seems to me you control the disposition to begin

14    with.  So if this person says give me the such-and-such, and

15    you think, gee, I don't want that getting out, you don't

16    release it.  And then he has to come to court, or you --

17    whatever the rules are -- then a court determines whether it

18    should be released.

19          But --

20          MR. SLACK:  No, I'm not following that, Your Honor --

21          THE COURT:  Okay, well --

22          MR. SLACK:  -- in the sense that if somebody comes to

23    us and they want information in the bankruptcy, the debtor is

24    not deciding do we want information to go to the government.

25          THE COURT:  No, no.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1        MR. SLACK:  As I said --

2        THE COURT:  You decide not to release it to the

3    requester.

4        MR. SLACK:  Right.  But my point is, there may be a

5    completely legitimate reason to release it to the objector or

6    whomever in the bankruptcy is looking for it.  And the point

7    is, it shouldn't be up to that person to then make a

8    determination whether they think, based on this maybe limited

9    information, there's a potential violation of law.

10       THE COURT:  But who's it up -- who's it up to?  Who

11   makes the call?  I don't know the answer.  Who makes the call?

12       MR. SLACK:  Well, so the way this works -- so in the

13   absence of -- in the absence, Your Honor, of any provision

14   here -- first off, the government is in no worse shape before

15   or after a protective order is put in place.  Again, these are

16   very common.  And the fact is, what we're saying is is if you

17   get information in the bankruptcy, you should use it for the

18   bankruptcy.  And if there are issues that the government, the

19   State agencies, want to have in regulation, there's mechanisms

20   to get that information.

21           And if the legislature wants to say that in civil

22   litigation, a person getting information -- because there are

23   whistleblower statutes -- can use that regardless, that's a

24   legislative province to say.  But if you get information in a

25   bankruptcy, Your Honor, then by doing that, it's very, very

PG&E Corp., Pacific Gas and Electric Co.

1   common -- I think probably in all of your protective orders

2   that this Court's done, I would gather, it says that you can

3   use that information in the bankruptcy.

4           THE COURT:  Well, I don't remember.  You can do your

5   homework.  I'm focusing on this one.  And I'm still having

6   trouble with the basic proposition -- I'm sorry to be dense

7   about this -- is that you control the outflow of information,

8   but you don't want the recipient of that information to do this

9   narrow thing.

10          It seems to me, the simple answer is if the

11  information is -- passes your screening, such that you're

12  willing to release it to somebody, then you ought to be willing

13  to let it go find its way, not to Facebook or to the guys -- to

14  a competitor, but to a law enforcement or regulatory person.

15  They will decide to disregard it or to act on it.  That's their

16  job.

17          So I don't have -- you can quote every protective

18  order I've ever signed or every bankruptcy judge has ever

19  signed in the country.  I still don't know what the problem --

20  how we -- why it's wrong to do what Mr. Pascuzzi is arguing and

21  asking for.

22          MR. SLACK:  So, Your Honor, I have --

23          THE COURT:  So you've got to explain -- you've got to

24  convince --

25          MR. SLACK:  -- I think the idea is just simply that

PG&E Corp., Pacific Gas and Electric Co.

1    you're giving the power to people who are getting this in the

2    bankruptcy to make individual determinations on incomplete

3    information that they think there's a potential violation of

4    law, and that's --

5              THE COURT:  Mr. Slack --

6              MR. SLACK:  -- that's inappropriate.

7              THE COURT:  -- somebody sitting in the back of the

8    room could have this morning called the Attorney General of the

9    United States to say the bankruptcy judge just allowed fifty

10   million dollars to go out to the D&Os.  That's an outrage.  Put

11   them all in jail.

12             And somebody in the Attorney General's Office will

13   decide to disregard it or to act on it.  What is different?

14   What is different if someone gets information in the context of

15   a bankruptcy proceeding and shares that with this narrow band

16   of people who will either act on it, or more typically, if it's

17   of no big deal, will ignore it?  What is the harm?

18             I mean, I'm not -- you're not telling me where it

19   hurts.  You're only telling me that we've done it in other

20   cases.  But this is not the other case.  So --

21             MR. SLACK:  Well, I'm not talking about that, Your

22   Honor.

23             THE COURT:  Okay.

24             MR. SLACK:  It just creates -- it creates mischief in

25   the following -- in the following -- I'm going to -- I'm going

eScribers
(973) 406-2457 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  to explain it, Your Honor, right?  Because what you have is

2  you've now empowered people who are getting information, who

3  may have an ax to grind with the debtor --

4          THE COURT:  Well, then don't give them the

5  information.

6          MR. SLACK:  Well, but there's two --

7          THE COURT:  If I --

8          MR. SLACK:  -- separate issues, Your Honor.

9          THE COURT:  -- if somebody who is a troublemaker, who

10  is always throwing stones at PG&E and arguing about everything,

11  don't volunteer the information.  Make them come and convince

12  me to order you to produce it.  And then, if I order you to

13  produce it, convince me that I should restrict the use of it.

14          But you're sort of saying okay, public, if you get

15  information under this procedure, you can't use it even for

16  what appears to be a lawful practice.

17          MR. SLACK:  Well, so you're --

18          THE COURT:  Not a spiteful one or a vindictive one.

19          MR. SLACK:  -- you're creating a back door in the

20  following respect, Your Honor.  The State agencies have asked

21  to be carved out of this.  And it truly can't be that

22  individuals can essentially get out of the confidentiality --

23  again, people who get information can get out of the

24  confidentiality by saying well, I think there may be a

25  potential violation, so I'm going to --

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  I guess you're just not --

2          MR. SLACK:  -- I'm going to send it to the --

3          THE COURT:  -- you're not agreeing with what I'm

4   saying.  They don't get the confidential stuff if you don't

5   give it to them.  You're the one who gives it to them.

6          MR. SLACK:  Right, but let's assume --

7          THE COURT:  Look, I can't --

8          MR. SLACK:  -- Your Honor, that --

9          THE COURT:  -- I can't make an informed decision

10  without some more help.  So if this is an issue that needs to

11  be resolved, I need to have a little bit of further briefing on

12  this narrow issue from both sides.  I mean, I just can't do

13  this --

14         MR. SLACK:  Okay, Your Honor.

15         THE COURT:  -- on the fly, because every time I tell

16  you what bothers me, you tell why it shouldn't bother me.  And

17  that's not good enough.

18         I'm not saying you're wrong.  I'm saying I just

19  can't -- I can't see the problem when you control the outflow

20  and you say well, somebody's going to misuse it.  Well, then

21  don't produce it.

22         So let me do this.  I will -- my tentative thinking is

23  to go with Mr. Pascuzzi's language, but I will give you an

24  opportunity -- you tell me when we end today a time, and I

25  won't do anything until -- on that narrow issue until you have

PG&E Corp., Pacific Gas and Electric Co.

1    a chance to brief it briefly.

2         MR. SLACK:  Okay, that's fine, Your Honor.

3         THE COURT:  Okay?  Fair enough?

4         MR. SLACK:  So --

5         THE COURT:  Or maybe you'll just -- maybe you and Mr.

6    Pascuzzi can come up with something else in between.  I don't

7    say you're wrong.  I just don't know one way or the other.

8         So let's go to -- so that's an open issue for the

9    short term.

10        Anybody want to be heard from the ad hoc subrogation

11   group about sharing the information?  Who's speaking on that?

12   Yes.

13        MR. MCCALLEN:  Yes, Your Honor.  Good morning.

14   Benjamin McCallen from Willkie Farr & Gallagher, on behalf of

15   the ad hoc subrogation group.

16        Your Honor, Mr. Slack was correct.  We had filed an

17   objection previously.  And most of the issues in our objection,

18   I think, have been resolved.  But there is one open issue, and

19   that's really the debtors have taken a position as to the fact

20   that they think certain of the lawyers who represent my clients

21   can see documents produced pursuant to the protective order and

22   certain can't.

23        And let me describe where the lines are being drawn

24   here.  So my firm, Your Honor, represents the ad hoc group as a

25   group.  But that group consists of more than a hundred

                    PG&E Corp., Pacific Gas and Electric Co.

1    individual entities, all of whom --

2              THE COURT:  Right.

3              MR. MCCALLEN:  -- hold subrogation claims.

4              THE COURT:  And they're all insurers -- generally

5    insurers, right, who paid the claims?

6              MR. MCCALLEN:  Generally speaking, that's correct,

7    Your Honor.

8              THE COURT:  Yeah.

9              MR. MCCALLEN:  And so each of those members of my

10   group have -- I wouldn't say each, but I think the majority, at

11   the very least, have individual counsel of their own that fall

12   into a couple different categories.

13             Some of them have retained separate bankruptcy

14   counsel.  And as Mr. Slack explained earlier today, and it's my

15   understanding as well, the debtors say that's fine; those

16   bankruptcy lawyers can see the materials produced pursuant to

17   the protective order as well.

18             But my clients also have what I'm going to call today

19   subrogation counsel, who are --

20             THE COURT:  Just non-bankruptcy lawyers.  The rest of

21   them --

22             MR. MCCALLEN:  Everybody else.

23             THE COURT:  -- the unwashed.

24             MR. MCCALLEN:  There's bankruptcy lawyers, and then

25   everybody's --

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  The people that don't count, right?

2      MR. MCCALLEN:  By subrogation lawyers, what I mean are

3  generally speaking lawyers who --

4      THE COURT:  Yeah, no, I --

5      MR. MCCALLEN:  -- have had experience litigating

6  subrogation claims.

7      THE COURT:  No, I understand.

8      MR. MCCALLEN:  And many of these -- just context, Your

9  Honor, many of these lawyers -- and there's about twenty

10  different law firms who represent many of the different members

11  of my group, they were participating in the state court

12  proceeding relating to the wildfire claims of --

13      THE COURT:  Yeah, no, I understand --

14      MR. MCCALLEN:  -- 2017 and 2018 --

15      THE COURT:  -- I understand.

16      MR. MCCALLEN:  -- before that was stayed.

17      THE COURT:  There are large numbers of them out there.

18  I'm aware of that.

19      MR. MCCALLEN:  Of course.  And so, Your Honor, what it

20  really comes down to, the provision in the protective order

21  that's been agreed to by the TCC, the UCC, and the debtors, has

22  a definition of "outside counsel" as to who can see the

23  materials.  And what the definition says is outside counsel is

24  defined as "attorneys who are not employees of a party but are

25  retained to represent or advise a party regarding the Chapter

PG&E Corp., Pacific Gas and Electric Co.

1 | 11 cases."

2 | It's our position that the subrogation counsel are
3 | advising our clients within the context of these Chapter 11
4 | cases, for one simple reason, which is that we're only here for
5 | one reason, obviously. These cases are about our subrogation
6 | claims.

7 | And so the material that's going to be produced in
8 | these cases is going to inform our clients in many different
9 | ways about the value of those claims. And it could come up in
10 | many different contexts, whether it be plan negotiations,
11 | whether it be litigation related to issues that in any way
12 | affect the value of those claims.

13 | My clients should have the right to be able to say to
14 | their counsel who's experienced in litigating these claims and
15 | in valuing these claims, we've just got this document from the
16 | debtor. Take a look at this and let us know what you think
17 | about this issue. And I'll say, Your Honor, just as context, I
18 | speak with these lawyers all the time. They're very involved
19 | in advising the clients with respect to these Chapter 11 cases.

20 | Now, the debtors have said --

21 | THE COURT: Excuse me. Where's the language that --
22 | is it in 7.2?

23 | MR. MCCALLEN: So the definition of outside counsel,
24 | Your Honor, is --

25 | THE COURT: Or Mr. Slack, if you know where it is --

PG&E Corp., Pacific Gas and Electric Co.

1    MR. MCCALLEN:  I believe it's at the front of the

2   protective order where the defined terms are.

3    THE COURT:  Okay.  Oh, all right, yeah, it probably

4   is.

5    Counsel without qualifier -- house counsel, outside

6   counsel.  2.6, is that it?

7    MR. MCCALLEN:  Yes, Your Honor.

8    THE COURT:  Okay.  All right.  So what would you have

9   that 2.6 say?

10    MR. MCCALLEN:  Well, I think as it's written, Your

11   Honor, and what -- and just as context here, the reason that

12   this dispute came about is we called the debtors up, because

13   when it comes to issues like protective orders, I want to make

14   sure there's no ambiguity or disagreement.  We basically called

15   them up and said look, we have these lawyers who have not,

16   technically speaking, put in a notice of appearance in these

17   cases.  They'll sign the acknowledgement and agree to be bound

18   by the terms of the protective order.  We just want to make

19   sure that we're in agreement here that these lawyers can see

20   documents produced pursuant to the protective order, under this

21   definition.

22    And they said no.  They said, in effect, Willkie Farr

23   & Gallagher, you are the lawyers this is talking about.  We'll

24   make a carve-out for the other people who happen to be

25   bankruptcy lawyers at other law firms, but if you're a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    subrogation lawyer, it doesn't count.

2        THE COURT:  Well, but the language says attorneys who

3    advise the party regarding the Chapter 11 case.

4        MR. MCCALLEN:  Um-hum.

5        THE COURT:  And that's pretty broad in and of itself.

6        MR. MCCALLEN:  I agree, Your Honor.  And that's why I

7    think that these lawyers who are what I'm calling subrogation

8    counsel, fit within that definition on the terms of the

9    protective order as agreed to among the parties.

10       THE COURT:  Well, but then, if I didn't do anything,

11   then the first time Mr. Slack took issue with how you shared

12   with somebody would be a test of that language, and we'd have

13   to test it on a real case, not a hypothetical one.

14       I mean, I guess what I'm saying -- I thought maybe it

15   was going to say people that are member of the American

16   Bankruptcy Institute or something like that.  I mean,

17   bankruptcy lawyers like to think they're the only ones that

18   know the specialty, but there are a lot of other people that

19   know it too, and they wouldn't call themselves bankruptcy

20   lawyers.

21       MR. MCCALLEN:  Of course, Your Honor.  And --

22       THE COURT:  Yeah.

23       MR. MCCALLEN:  -- look, you're absolutely right;

24   that's a way we could have proceeded.  But when it comes to

25   court orders regarding discovery and documents and sharing it,

escribers
(973) 406-2447 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  I don't like to take the position that I think makes sense and

2  let the debtors say oh, you violated a protective order and

3  then we come in and have a hearing about --

4          THE COURT:  And I don't want you to.

5          MR. MCCALLEN:  -- interpreting that.

6          THE COURT:  Obviously from a judge's point of view,

7  the one thing we want these orders to do is to work, not to be

8  things to fight about.

9          MR. MCCALLEN:  Of course, Your Honor.

10          THE COURT:  But again, is there specific words that

11  you would add to 2.6 to clarify it?

12          MR. MCCALLEN:  I --

13          THE COURT:  Or somewhere else?

14          MR. MCCALLEN:  Well, Your Honor, I think that there's

15  a couple different ways that you could deal with this.  I guess

16  one would be just to simply rule today that parties who sign --

17  counsel for the parties who sign the acknowledgement and agree

18  to be bound to the terms of the protective order are outside

19  counsel under 2.6.

20          Another way of dealing with the same -- with the same

21  issue is the protective order has a provision where other

22  lawyers can get documents by signing the acknowledgement that

23  appears at the end.  But the acknowledgement says that the

24  debtors have to give consent or the producing party has to give

25  consent for that party to get the information.  So if the

PG&E Corp., Pacific Gas and Electric Co.

1  consent language were stricken, again, a party could sign --

2  could sign the protective order.

3          And I guess the third way of dealing with it, Your

4  Honor, because there's really a lot of ways to address this

5  issue, is in the language of 2.6, we could put in something

6  specific with respect to the ad hoc subrogation committee, that

7  that includes parties retained to represent them in connection

8  with stayed litigation related to their subrogation claims.

9          THE COURT:  Well, Mr. Slack, you need to tell me what

10  you can live with.  I mean, it doesn't sound unreasonable --

11  and I don't want to try and define the bankruptcy attorney.  I

12  mean, if there were no Chapter 11 case, we wouldn't have this

13  meeting -- we wouldn't be here.  So what language can you live

14  with, given Mr. McCallen's request to have some inclusion here?

15          MR. SLACK:  Your Honor, the language that's here --

16  and I think the intention is pretty clear -- if somebody

17  appears in the bankruptcy case -- and we don't control that;

18  they can have bankruptcy counsel, somebody who appears in the

19  bankruptcy, and get the information.

20          So I think that the language the way it -- the way it

21  reads and the way it's intended, covers that.  And then anybody

22  outside of that, Your Honor, should be able to still make

23  requests of the debtor under 7.3.

24          THE COURT:  But 2.6 doesn't say "retained".  It says

25  "advise a party regarding the case".

PG&E Corp., Pacific Gas and Electric Co.

1          MR. SLACK:  With respect to -- right, with respect to

2     the bankruptcy.

3          THE COURT:  Well, it does -- no, it doesn't say that.

4     It says "regarding the case".  So --

5          MR. SLACK:  Okay.

6          THE COURT:  So --

7          MR. SLACK:  So regarding the Chapter 11 cases.  But

8     the idea is still, Your Honor, if somebody is going to be

9     retained to advise with respect to the Chapter 11 cases, this

10    language, again, allows people to see it.

11         The question is let's say you have counsel that is

12    separate litigation counsel.  You would want that counsel to

13    make a specific request to the debtor under 7.3.  And that was

14    the intention of that.

15         And, Your Honor, I mean, I think you can see that the

16    intention -- because if you read the next sentence with respect

17    to the official committees, where the official committees have

18    agreed, the whole idea here is that outside counsel should be

19    defined as those people appearing and giving advice with

20    respect to the bankruptcy.

21         THE COURT:  But isn't it, by definition, if you are

22    representing a subrogation claimant, it is in respect to the

23    bankruptcy?  Because the reason why you have a subrogation

24    creditor is because someone has paid the victim and therefore,

25    essentially, to use the old term, steps in the shoes of the

PG&E Corp., Pacific Gas and Electric Co.

1    victim.  So that -- for purposes of the property damage.

2           So they've essentially -- I mean, why else would they

3    be advising them except in connection with the case.  That's

4    why they're here.

5           MR. SLACK:  Right.

6           THE COURT:  They wouldn't be here, or they wouldn't

7    even be coming to use our bankruptcy court protective regime,

8    unless they have an interest in the outcome of the bankruptcy.

9    So --

10          MR. SLACK:  The question --

11          THE COURT:  I mean, look, so for example, there is a

12   motion to go forward with the Tubbs fire.  What if that motion

13   is granted?  Then do lawyers like subrogation counsel have a

14   right to get information under 2.6, if the Court grants relief

15   from stay, so the litigation is going forward in state court?

16          I mean, I realize that that's for another day, and I'm

17   not predisposing this.  But I'm saying, what are the rules

18   then?

19          MR. SLACK:  Right.  So the interim -- but I think you

20   hit it on the nose, Your Honor, is that in specific situations,

21   the debtor's going to get these requests and is going to

22   respond to those requests knowing the type of information and

23   what it is.  And that's why 7.3 is in there.

24          So I think you -- I think, Your Honor, you actually

25   hit it on the nose, is that in specific circumstances, there

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    can be requests of the debtor.  And the question is whether

2    there should be a blanket you-can-see-everything versus making

3    the requests on a case-by-case basis under 7.3.

4          THE COURT:  Okay.  So what -- again, you've told me

5    that 7.3 was modified with (k).  Where would I --

6          MR. SLACK:  That's --

7          THE COURT:  -- go for 7.3 to pick up --

8          MR. SLACK:  Right.  So it's 7.3(k), Your Honor.

9          THE COURT:  Yeah, no, I'm there.  Okay.

10          So let's say, Mr. McCallen -- am I pronouncing your

11    name correctly, [Mc-alin]?

12          MR. MCCALLEN:  Yes.  Yes, Your Honor.

13          THE COURT:  All right.  So if his co-counsel who is

14    not his -- has never appeared in the bankruptcy court but is

15    advising his -- their common client about --

16          MR. SLACK:  Right.

17          THE COURT:  -- what does this all mean, how would that

18    person -- how would that person request information through

19    you?

20          MR. SLACK:  Right.  So the person would request

21    information and therefore become a receiving party.  And the

22    request would go in to the debtor, Your Honor, that would say

23    you know what, with this -- with this issue -- I don't want to

24    say what issue -- but with this issue, it's really necessary

25    that we talk to our subrogation counsel.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Um-hum.  Right.

2          MR. SLACK:  And the debtors would then have a

3    period -- a very short period to be able to say yes or no.  And

4    then that issue could come to the Court when it's ripe, when we

5    know what information they want to see and be able to assess

6    it.

7          MR. MCCALLEN:  Your Honor, can I address that for a

8    second?

9          THE COURT:  Yeah, I'm trying to figure out --

10         MR. MCCALLEN:  So I --

11         THE COURT:  -- how to make it work.

12         MR. MCCALLEN:  -- Mr. Slack makes, in the abstract,

13   some interesting arguments about how this could play out.  But

14   as a practical matter, where's what we're talking about here.

15         My clients -- this isn't a situation where we're

16   talking about we've got FERC lawyers who might come in for some

17   special issue on something and come into the case and out.  And

18   I can understand why they wouldn't get everything.  We have

19   subrogation claims.  These are the lawyers who best understand

20   those claims.

21         THE COURT:  And they are --

22         MR. MCCALLEN:  That's what this case is about.

23         THE COURT:  -- the people who have advised your client

24   that you have to pay the losses of victim X, and therefore you

25   are in X's shoes for -- vis-a-vs PG&E.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    MR. MCCALLEN:  Absolutely, Your Honor.  And as a

2    practical matter, what we're talking about here is I've got

3    over a hundred clients, dozens of their counsel who work hand-

4    in-glove with them.  So this -- what Mr. Slack is proposing and

5    what the debtors are proposing is when we get a document

6    production from the debtors, and I find something in there that

7    I say I want to -- that I want to send to the subrogation

8    lawyers, I've got to go back to him and I've got to say either

9    this production or this list of documents, I want to show to

10   these lawyers.  And then I have to have a conversation with him

11   about why that is and explain what it is I'm trying to do, and

12   then maybe he says yes to ten of the documents and no to five.

13   And I need to keep to track of that.

14        THE COURT:  Mr. McCallen, does this get solved if I

15   let you interlineate 2.6 to include subrogation counsel working

16   with bankruptcy counsel, or something of that nature?

17        MR. MCCALLEN:  From my perspective --

18        THE COURT:  Language like that?

19        MR. MCCALLEN:  -- from my perspective, yes, Your

20   Honor.

21        THE COURT:  I mean, just that kind of phrase.

22        So if Mr. Slack is asked to produce something and you

23   send it over to FERC's general counsel, you've violated the

24   rule.  But if you send it over to Attorney Smith, who you've

25   been working with since the fire, to advise your co -- the two

(973) 406-2247   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    of you, your common client about the subrogation claims and the

2    assertion of claims in the PG&E case --

3            MR. MCCALLEN:  Um-hum.

4            THE COURT:  -- that --

5            MR. MCCALLEN:  Yeah, of course, Your Honor.

6            THE COURT:  -- goes with the territory.

7            MR. MCCALLEN:  And we're not trying to hide these

8    people.  And we sent a list to the debtors as to who we're

9    talking about.

10           THE COURT:  So, Mr. Slack, can't we interlineate in

11   2.6 "subrogation client".  Is that a slippery slope here or

12   not?  What's wrong with it?

13           MR. SLACK:  Yeah, I think, Your Honor, that we -- that

14   it's not appropriate to make a blanket -- and especially not in

15   the protective order, and say that subrogation counsel somehow

16   get exalted status.  The whole point here, Your Honor, is that

17   these are folks that want to sue the debtors.  And there should

18   be --

19           THE COURT:  That's why we have an automatic --

20           MR. SLACK:  -- there --

21           THE COURT:  -- stay.  That's why we have --

22           MR. SLACK:  There --

23           THE COURT:  -- a claims process.  That's why --

24           MR. SLACK:  That's exactly right, Your Honor.  And so

25   that there needs to be a process by which if these folks who

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    are -- have adverse interests, if they want to see the debtors'

2    information, the debtors should have the ability to know who's

3    getting what and what they're receiving and make sure that it's

4    appropriate for --

5            THE COURT:  But this is --

6            MR. SLACK:  -- somebody who wants to sue the debtor to

7    see.

8            THE COURT:  -- but this is the same thing -- the same

9    conversation I had with you on the whistleblower.  You're in

10   control of what you release.  And this notion that a hundred

11   different co-counsel have to work with Mr. McCallen to answer

12   your questions, it distorts it.

13           You should control what you release, and if you say

14   yes, you can share this with your co-subro counsel, and even if

15   you've got a list of them, then you've solved the problem.

16   That, to me, is the solution.

17           MR. TSEKERIDES:  Your Honor, can I add some --

18           THE COURT:  Sure.

19           MR. TSEKERIDES:  -- since I've dealt with Mr. McCallen

20   on other matters before, on these issues?

21           In this particular case, I think from the debtors'

22   perspective, you're right, we can control it.  But then what

23   you could be setting up is us giving nothing to anybody,

24   because we control if we say it's confidential.  So I may give

25   you -- you asked for a request, and it's perfectly legitimate,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    and I give it to you, but it's confidential.

2              I look at you and say, okay, it's a legitimate

3    request.  I've given you confidential information.  But now if

4    we give what Mr. McCallen wants, he can give that to all these

5    subro attorneys who are suing the company.  This is not a --

6              THE COURT:  But they're not --

7              MR. TSEKERIDES:  -- back door --

8              THE COURT:  -- suing the company.  The --

9              MR. TSEKERIDES:  No, but that's what they -- but

10   that's what they would use it for.  Then why do they need it?

11             THE COURT:  Then --

12             MR. TSEKERIDES:  They shouldn't get -- this is not a

13   back door for discovery for them in these other cases.  That's

14   our concern.

15             THE COURT:  I don't follow you.

16             MR. TSEKERIDES:  Okay.

17             THE COURT:  The information might be, for example,

18   suppose the company files a plan, suppose that plan has a

19   disposition of claims, a channeling or an estimation process,

20   and the bankruptcy lawyer, like Mr. McCallen, his position has

21   to share it with the attorney who knows about the insurance and

22   the subrogation issues.  They're supposed to communicate about

23   it.

24             MR. TSEKERIDES:  And --

25             THE COURT:  They analyze it.  You don't give it to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1　them in the first place if you don't want to -- you don't think

2　it's --

3　　　　　MR. TSEKERIDES:  Well, but we can't -- we can't not

4　give it to him in the first place.

5　　　　　THE COURT:  That's right.  And if you -- and if you

6　keep showing up here with frivolous claims of confidentiality,

7　I will invite you to bring your toothbrush --

8　　　　　MR. TSEKERIDES:  Right, so --

9　　　　　THE COURT:  -- and I will overrule your objection.

10　　　　　MR. TSEKERIDES:  But exactly my point.  So to Mr.

11　McCallen, if he comes with -- for his clients, generally, he

12　would get the documents.  What we're saying is he shouldn't be

13　able to give it to a subro plaintiff's lawyer who's going to be

14　suing the debtors.

15　　　　　THE COURT:  But --

16　　　　　MR. TSEKERIDES:  And yet -- so then --

17　　　　　THE COURT:  -- but you --

18　　　　　MR. TSEKERIDES:  -- use --

19　　　　　THE COURT:  -- you keep saying "will be suing the

20　debtor" as though you forgot we have an automatic stay.

21　　　　　MR. TSEKERIDES:  I'm not forgetting.  But, Your

22　Honor --

23　　　　　THE COURT:  And if his co-counsel files a suit, you

24　can drag them in here with a contempt motion.

25　　　　　MR. TSEKERIDES:  But, Your Honor, but his co-counsel,

operations@escribers.net | www.escribers.net
(973) 406-2447

PG&E Corp., Pacific Gas and Electric Co.

1    one of the people who he wants to have argue on the lift stay

2    and then go forward on the motion that they filed, that they

3    joined in, that lawyer, today, is stayed.  He should not be

4    getting or she should not be getting discovery from the debtor

5    today on some claim that is stayed.

6         To your point to Mr. Slack earlier, the question you

7    asked him:  you have a motion to lift stay, including from Mr.

8    McCallen's clients, where they want to participate in any kind

9    of lift stay in state court.

10        THE COURT:  Yes.

11        MR. TSEKERIDES:  Okay.  And there'll be a process, I'm

12   sure, in state court, for discovery.

13        They should not be able to use discovery here in the

14   broader Chapter 11 cases ahead of time to prepare for that.

15        THE COURT:  Well, I haven't -- I didn't want to turn

16   this into the lift-stay motion.

17        MR. TSEKERIDES:  I know.

18        THE COURT:  And if there is a lift-stay motion, I

19   guess it will have to -- we'll have to figure out what is the

20   impact of the protective order.  But for the moment, there is

21   very limited relief from stay that's been granted to other

22   parties, as you know.  And maybe there will be more; I don't

23   know.  But for today, we have to figure out a feasible way to

24   make the protective order work.

25        And again, I keep repeating myself that if you believe

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    that information shouldn't be out there because of the nature

2    of the specifics, you resist it and trigger the 7.3 procedure

3    for meet-and-confer and bring it to the Court.  And you

4    can't -- Mr. Tsekerides, you can't just say we can't have this

5    broad discovery the way they want it because they're going to

6    be suing the debtor.

7                THE COURT:  But --

8                THE COURT:  They are not suing the debtor.  And if --

9                MR. TSEKERIDES:  But, Your Honor, I would suggest,

10   respectfully, if we have a procedure that says right now, if

11   there's a need for a subro attorney to advise, there can't be

12   all of them they need to advise.  They could bring it to us

13   now.

14                If what you're saying, what they want, right now, is

15   Mr. McCallen to get information from us, he sends us a request

16   from his ad hoc committee, perfectly legitimate, I can't say no

17   to Mr. McCallen on that, but what you're saying is well, if

18   he's going to give it to a subro attorney now, I should say no

19   and then come here and have a discussion with you.

20                THE COURT:  No, no, you shouldn't.

21                MR. TSEKERIDES:  I should --

22                THE COURT:  You should say yes, and --

23                MR. TSEKERIDES:  Exactly.  So but if --

24                THE COURT:  But --

25                MR. TSEKERIDES:  -- I say yes, how am I going to stop

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    him from giving it to the subro person?

2         THE COURT:  But what is the harm of giving it to the

3    subro person?  What are you -- what am I missing here?  If you

4    can give it your opponent who happens to be more bankruptcy

5    knowledgeable, why are you at risk -- why is the company being

6    prejudiced by his sharing it with someone that has a different

7    specialty?

8         MR. TSEKERIDES:  Well, because the person with the

9    different specialty wants to use it for a lawsuit or a claim

10   against --

11        THE COURT:  But that doesn't --

12        MR. TSEKERIDES:  -- the debtor.

13        THE COURT:  -- mean he can.  It doesn't mean he can

14   use it for another purpose.  It's not an invitation.  You're

15   not waiving the stay.  His co-counsel can't run down to state

16   court and file suit against the debtor, or he'll be dragged in

17   here for contempt.

18        MR. TSEKERIDES:  I appreciate that.  But co-counsel

19   right now could not get that discovery from me.  So they're

20   going to be using this --

21        THE COURT:  Well, you know, that --

22        MR. TSEKERIDES:  -- process --

23        THE COURT:  -- that isn't even clear.

24        MR. TSEKERIDES:  Well, it's --

25        THE COURT:  Because that co-counsel might make a 2004

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    exam request.

2         MR. TSEKERIDES:  They might.

3         THE COURT:  And guess what would happen?  It might be

4    granted.

5         MR. TSEKERIDES:  It might be.  But at least, Your

6    Honor, under that circumstance, I'd have an opportunity to

7    argue against it.  Here --

8         THE COURT:  But you have an opportunity here to

9    refuse.

10        MR. TSEKERIDES:  Well, but no.  You just told me --

11        THE COURT:  Okay, look --

12        MR. TSEKERIDES:  -- I can't tell Mr. McCallen no.

13        THE COURT:  -- okay.  I'm going to -- I can't -- like

14   everything else, I'm not going to turn this into further

15   briefing, but I have to make a decision, and I'm going to let

16   there be some interlineation in the definition to expand the

17   universe of attorneys that Mr. McCallen and his colleagues who

18   are similarly situated can share with people who have a common

19   client in a common interest.

20        Obviously I'll leave it to you, from the debtors'

21   side, to draft it in a way that they're not sharing stuff to

22   people that don't get some of the information.  I don't know

23   any other way to do it.  I mean, I obviously want to make it

24   work.  I understand your point.  I simply can't resolve it any

25   other way.  So that's what I'll do.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. MCCALLEN:  Thank you, Your Honor.

2          THE COURT:  So you'll -- Mr. McCallen --

3          MR. MCCALLEN:  And for the record -- for the record,

4   I think when Mr. Tsekerides said he used to work with me in

5   other cases, he meant it as a compliment, but it didn't sound

6   like it.  So I just want to --

7          MR. TSEKERIDES:  It was a compliment.

8          THE COURT:  All right, let's go to the issue for

9   the --

10          MR. MCCALLEN:  Your Honor, I'm sorry.  Could I just

11  say one more thing --

12          THE COURT:  Yeah.

13          MR. MCCALLEN:  -- on a related point?  But this isn't

14  something -- this isn't something we mentioned in our

15  objection.  I just want to, briefly, Your Honor, alert you to

16  this.  Because I think it could be an issue down the road,

17  although we're not raising it right now.

18          The definition of "professional-eyes-only material",

19  in the confidentiality order, Your Honor, it requires that

20  there be a risk of -- that the debtors make a good-faith

21  assessment that there's a risk of material harm to the debtors

22  in disclosing the information.  But then it also goes on to

23  define categories of information that can be designated PEO.

24          The categories given are, on their face, pretty broad.

25  They include insurance-policy information, materials prepared

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   by industry advisors, financial advisors, accounting advisors.

2   That's all broad language, Your Honor.  Obviously we will -- we

3   didn't object because we thought this is not something to raise

4   in the abstract, this is best done in the context of specific

5   documents, but did want to alert Your Honor to this --

6           THE COURT:  Okay.

7           MR. MCCALLEN:  -- and to the extent we have --

8           THE COURT:  I'll try to keep track --

9           MR. MCCALLEN:  -- issues --

10          THE COURT:  -- of it.

11          MR. MCCALLEN:  -- we'll be back on that.  Thank you,

12  Your Honor.

13          THE COURT:  All right, we have on the phone -- are you

14  the --

15          MR. STERN:  Excuse me, Your Honor.

16          THE COURT:  Yes, on the phone?

17          MR. STERN:  Excuse me.  This is -- I'm sorry, it's

18  David Stern on behalf of NextEra and also speaking on behalf of

19  the other parties.

20          THE COURT:  Yes, sir.

21          MR. STERN:  I just wanted to be certain, because we

22  had so much that went on subsequently, that the modifications

23  that Mr. Slack articulated at the beginning with respect to

24  7.3, that applies also to 7.2 -- that was the three-day/five-

25  day business -- that that is, indeed, doing to be part of the

(970) 952-4827 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   final order and that that didn't get lost in the shuffle.

2           THE COURT:  Oh, I thought that was part of the deal,

3   right?

4           MR. SLACK:  Yeah, so --

5           THE COURT:  Yeah.

6           MR. SLACK:  -- Your Honor, the way it works -- and I

7   apologize, because I did intend to make that clear -- is that

8   7.2(f) talks about any other person specified in paragraph 7.3,

9   so that the -- anybody who would make an application under

10  7.3(k), it would also apply to 7.2.

11          THE COURT:  Does that satisfy you, Mr. Stern?

12          MR. STERN:  Great.  I appreciate it.  Thank you very

13  much.

14          THE COURT:  Okay.  Mr. de Ghetaldi, are you the -- are

15  you the spokesperson for the fire victims?

16          MR. DE GHETALDI:  I am, Your Honor.

17          THE COURT:  Okay.  I remember your name again.

18          All right, so you heard the open issue that Mr. Slack

19  touched on.

20          MR. DE GHETALDI:  I did.

21          THE COURT:  You want to see what the TCC gets; is that

22  it?

23          MR. DE GHETALDI:  Essentially, yes, Your Honor.  Just

24  a little history, I think, would be helpful.  As I've said

25  before, our firm started litigating against PG&E in 2010 with

PG&E Corp., Pacific Gas and Electric Co.

1    the San Bruno --

2         THE COURT:  Right.

3         MR. DE GHETALDI:  -- fires, and has continued on

4    through the Fresno, Sheriff's Gun Range fire and explosion, the

5    Butte fire, the North Bay fires, and the Camp fire.  And

6    throughout that long history, we've worked hand-in-hand with

7    the subrogation attorneys.

8         We have common-interest agreements with them on that.

9    There are four firms currently who represent members of the TCC

10   who were, along with our firm, in leadership positions in all

11   of those complex litigations.

12        We've received literally hundreds of thousands, if not

13   into the millions, of documents from PG&E, some of which were

14   marked confidential, some of which were not.  And there's never

15   been an issue of our having misused any of those documents

16   during that nine-year period.

17        Now, we currently represent -- our firm, the Danko

18   firm, and the Gibbs firm, currently represents approximately

19   3,000 victims of the Butte fire, the North Bay fires, Camp

20   fire, the Sheriff's Gun Range explosion, and fire in Fresno.

21   We also represent a number of whistleblowers, Your Honor.

22        And this protective order, I have to say, is -- maybe

23   it's a bankruptcy thing.  I don't know.  I'm a nonbankruptcy

24   litigator.  And the way that production works in the cases that

25   I'm familiar with is that somebody makes a request and all of

(970) 352-7 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   the parties get the documents.  And if there's a problem, then

2   the producing party makes a motion to the court and has the

3   burden of showing why a certain document should not be produced

4   all or should not be produced to a certain party.

5           And here, in this protective order, that process is

6   turned completely upside down.  It would be on the other

7   attorneys, who have not requested a document, to make the case

8   for why they should.  It puts the burden, to me, on the wrong

9   party, especially if where we've said that we would agree to

10  sign this agreement to be bound, that is, we would not misuse

11  any document that we receive.

12          And so the Court was asking counsel for the

13  subrogation lawyers about the provision that defines outside

14  counsel and how to meld that in to the protective order.  And

15  my suggestion would be to modify 7.3 to add a subdivision that

16  specifically says that outside counsel can receive documents if

17  they agree to be bound by the agreement that's attached to the

18  protective order.

19          I think it's a simple fix.  And right now, the way

20  that it's worded, even though outside counsel is defined, the

21  outside counsel who can receive documents under 7.3 is

22  extremely limited.

23          So I would -- that would be my suggestion on that,

24  Your Honor.

25          Also, we -- our firms do have two clients among the

PG&E Corp., Pacific Gas and Electric Co.

1    eight who are seeking relief from the stay on the preference

2    motion.  And it seems to me that we have a need to see

3    documents that we reasonably believe the TCC has asked for or

4    will be asking for, because our interests are substantially the

5    same as the representatives on the TCC.  They --

6         THE COURT:  Well, therefore what?  I'm not sure I

7    understand your point.  Therefore what?

8         MR. DE GHETALDI:  Therefore, why is it that we cannot

9    see the documents?

10        THE COURT:  Oh, no, you --

11        MR. DE GHETALDI:  Again, it goes to the burden.

12        THE COURT:  No, you made that point a minute ago.

13        MR. DE GHETALDI:  Okay.

14        THE COURT:  But then you went to the eight -- the two

15   of the eight people who are on the motion for relief from stay.

16        MR. DE GHETALDI:  Oh, right.

17        THE COURT:  This is not the motion for relief stay.

18        MR. DE GHETALDI:  Right.

19        THE COURT:  So why are you bringing that motion for

20   relief from stay up now?  What do you want me to do with that?

21        MR. DE GHETALDI:  Well, because of the -- on the off

22   chance that the Court grants the motion --

23        THE COURT:  Well, okay.  I won't grant it or deny it

24   until I hear it.

25        MR. DE GHETALDI:  I understand.  I understand.  But --

of 147
(970) 962-7837 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1     THE COURT:  They haven't even made an opposition yet.

2     MR. DE GHETALDI:  I'm sorry.  I had not finished that

3 thought.  Under section 8, which is on pages 13 and 14, I

4 think --

5     THE COURT:  Section 8 of the protective order?

6     MR. DE GHETALDI:  Yeah.

7     THE COURT:  Okay.

8     MR. DE GHETALDI:  It actually -- it's interesting,

9 because this section actually places the burden of protecting

10 documents on the debtors or on the producing parties if the

11 case is remanded to state court for that trial.

12     And so it seems to me that that disparity actually

13 shows that there is no need for the tight strictures on

14 production to anyone other than the requesting party.

15     THE COURT:  I'm still -- I'm not following you.

16 Because if I were to grant the motion for relief from stay when

17 it comes up, maybe we have to revisit some aspects of the

18 protective order.  But if I deny the motion for relief from

19 stay, we're dealing with the protective order.

20     MR. DE GHETALDI:  Understood, Your Honor.

21     THE COURT:  So I can't -- I'm having enough trouble

22 deciding today what's abstract, and so I've got to wait and see

23 what responses there are to the motion for relief from stay.

24 The fact that -- Mr. de Ghetaldi, that you have two of the

25 eight victims is a fact, and in a sense, perhaps you're going

PG&E Corp., Pacific Gas and Electric Co.

1 to join that motion.  I don't know.

2    MR. DE GHETALDI:  I already did, Your Honor.

3    THE COURT:  The motion has been made by people who

4 don't -- who normally don't make a motion.  Committees don't

5 usually make motions for relief from stay.

6    MR. DE GHETALDI:  I --

7    THE COURT:  People who are stayed make motions for

8 relief from stay.

9    MR. DE GHETALDI:  I agree --

10    THE COURT:  But I'm not worrying about that today.

11 Let's talk about today.  So --

12    MR. DE GHETALDI:  Your Honor, I agree with the Court's

13 comment --

14    THE COURT:  Okay.

15    MR. DE GHETALDI:  -- about a potential standing issue,

16 but we did join that motion.

17    THE COURT:  Okay.  Okay, but again, I --

18    MR. DE GHETALDI:  And so we're on the record as --

19    THE COURT:  -- only read these things when I have to.

20    MR. DE GHETALDI:  Understood.

21    THE COURT:  I was reading the D&O motion last night,

22 not the relief from stay that's two weeks down the road.

23    MR. DE GHETALDI:  I understand that.

24    THE COURT:  Okay.

25    MR. DE GHETALDI:  But my point here was simply, Your

of 147   operations@escribers.net | www.escribers.net
(973) 406-2250

PG&E Corp., Pacific Gas and Electric Co.

1    Honor, that this protective order is inconsistent in terms of

2    the party on which the burden is placed.  The protective order,

3    as it is written, places the burden on the requesting party or

4    people who would like to see documents that the requesting

5    party has asked for, whereas this section 8 places the burden

6    on the debtors, on the defendant, on PG&E.

7        And so my point was simply that the way that the

8    protective order, as written, treats the burden of justifying

9    production, nonproduction, receipt, or nonreceipt, is

10   inconsistent.  And I think that the better practice is to

11   require the debtor to show cause why documents should not be

12   produced to certain parties rather than putting that burden on

13   the parties themselves.

14       So it's also my understanding, Your Honor, in

15   conversations with counsel for the TCC, that the TCC supports

16   our request to be allowed to see documents that they have

17   requested from the debtor.  And so I know that counsel for the

18   TCC is on the phone and he has told me that.  And other counsel

19   for the TCC have told me that.  And so I --

20       THE COURT:  Okay.  Let me see what Mr. Slack wants to

21   respond.  We've got two questions, I guess.  One is to modify

22   7.3 -- well, maybe that -- I mean, that's essentially it.  So

23   do you -- I take it you oppose that?

24       MR. SLACK:  Yeah, Your Honor, we think that turns the

25   entire document production process on its head, because what

(979) 626-4447 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    you need and what is important in this is a process by which

2    anybody who wants documents makes a request to the debtor, so

3    that the debtor has the ability to say yes or no, because

4    that's the point I think Your Honor was making before.

5         If we agree to produce documents to a particular

6    person, and then we're making that decision.  And so all --

7         THE COURT:  Right.

8         MR. SLACK:  -- all we're saying, Your Honor, is if

9    those folks who are the individual fire victims, if they want

10   documents from the debtor, they should make a request and the

11   debtor, on a case-by-case basis, should look at the documents

12   they want.

13        And I think the other point, Your Honor -- and I

14   really don't think there's much dispute about it -- is that

15   there's a number of documents -- because the TCC is an official

16   committee and they have a broad role -- so they're getting

17   documents with respect to the -- again, the compensation

18   motions, and --

19        THE COURT:  Yeah, lots of things.  Lots of things.

20        MR. SLACK:  -- so it can't be that every document that

21   we produce to the TCC automatically gets produced to a zillion

22   parties across the spectrum.  That makes no sense.

23        So there should be specific requests of the debtor,

24   and we would say, Your Honor, there should be no change, and

25   there needs to be no change to the protective order, which is

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    very, very common, and the terms here are very typical.

2    THE COURT:  So Mr. de Ghetaldi would simply modify 7.3

3    to include -- well, I think the way he said it would be in --

4    he would include -- well, I guess it's the definition of -- one

5    of the definitional sections.  I'm a little confused, because I

6    just haven't memorized the sections.  So I'm not sure which

7    one.  It's the --

8    MR. DE GHETALDI:  2.6, I believe.

9    THE COURT:  It's at 2.6.  It's the same as the outside

10   counsel, we just did with subro folks, right?  And it would

11   extend to him as well, not subrogation.  Isn't that what --

12   MR. SLACK:  But, Your Honor, there's a difference

13   here, and I think it's an important difference.  And that

14   difference is, Your Honor, that what happens in each of the

15   other situations is -- what the subrogation counsel were saying

16   is if they make a request, the subrogation counsel makes a

17   request --

18   THE COURT:  Yeah.

19   MR. SLACK:  -- they want to give it to their --

20   THE COURT:  Yeah, no.  And I -- and that's --

21   MR. SLACK:  -- outside counsel.  The difference is,

22   and what we're saying is, let's put the -- let's put everybody

23   in that same boat, then.  Let's have the individual fire

24   counsel make a request and then have the debtor be able to

25   respond to that.

(972)406-2040   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  Yeah, I --

2      MR. SLACK:  And so --

3      THE COURT:  No, I understand your point.  I understand

4  your point.

5      Look, my problem is I'm trying to keep up with these

6  definitions of something that I've just been handed, again, and

7  I can't keep up with you.  But I understand your point.  You do

8  not want Mr. de Ghetaldi to be treated separately the way he

9  requests.  And I think that's -- I'm going to stick with that.

10      Mr. de Ghetaldi, I think I have to go with Mr. Slack's

11  view on that, and put you in the position of making the

12  request.  And again, I have a history, I think, of being pretty

13  open about making people cooperate on discovery requests.  So

14  request it, and if they don't have a good reason to turn you

15  down, they better comply or we'll deal with it here.

16      And I do think that the situation with the subrogation

17  claims are different.  And the point about what happens if

18  relief from stay is granted is something we'll just have to

19  deal with that later.  And if so, there's -- excuse me -- if

20  there's an inconsistency in the document there's nothing I can

21  do about it.  I'm not going to try to fix it.  It's been

22  hammered out with too many players.  So I'm not going to turn

23  your group into sort of a co-TCC.

24      But make the request.  You won't get -- you shouldn't

25  get opposition from stuff that would be reasonably requested

(972) 595-1357 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    for you, for your clients' position.  That's all I can tell

2    you.

3              MR. DE GHETALDI:  Okay, Your Honor.  I would --

4              THE COURT:  Okay?

5              MR. DE GHETALDI:  -- I would just suggest that if

6    there are certain categories of documents that the debtor is

7    leery of producing to our firms, then I'm happy to talk about

8    that.  But it seems to me that the vast universe of documents

9    that exist in the debtors' possession, should not be a problem.

10   So that, I would propose as an alternative.

11             We did have a conversation last week, but we never got

12   to that issue.

13             THE COURT:  I invite the continued conversations.  The

14   problem that I'm having is it's difficult to make these

15   decisions on the fly with different interests in such a moving

16   target.  So I gave -- over Mr. Slack's objection, I gave one

17   concession to the subrogation group.  And I've stayed open on

18   this question of the government -- the thing that Mr. Pascuzzi

19   argued about.  But generally, I'm sticking with the debtors'

20   view on this.

21             And the message to them is make sure you cooperate so

22   we don't waste time with unnecessary motions to compel or

23   informal motions to compel under the procedures here.

24             I can't -- we'll leave it at that.

25             MR. DE GHETALDI:  Thank you, Your Honor.

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Okay, thank you for your time.

2          Do we have anything else to take care of today?

3          Mr. Slack, how much time do you want to anticipate

4   before you'll give me whatever authority you have to deal with

5   Mr. Pascuzzi, unless you guys can reach an agreement on your

6   own?

7          Do you want to -- I mean, it seems to me if I -- you

8   need to give me a time that you want to try to do it.

9          MR. SLACK:  So we're happy to put in something in a

10  week, Your Honor.  Does that work for you?

11         THE COURT:  Yes, sure.  Sure.

12         Mr. Pascuzzi?

13         MR. PASCUZZI:  Yes.

14         THE COURT:  A week to respond after that?

15         MR. PASCUZZI:  Yes, Your Honor.

16         THE COURT:  Okay.  Just and I don't want reply.  Just

17  short and sweet.  Don't give me the -- reinvent the wheel.

18  Just give me this narrow issue on why this whistleblower thing

19  is inappropriate from the debtors' point of view, and what are

20  we talking about.  Okay?

21         MR. PASCUZZI:  Yes, Your Honor.

22         MR. SLACK:  Your Honor, I'm not sure when that would

23  put -- do you want a continued hearing, or just submit the

24  briefs and then you'll decide?  Which his fine.

25         THE COURT:  I'll decide.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. SLACK:  Okay.  Then yeah.  Then give us a week

2    after, if that's okay?

3          THE COURT:  That's fine.

4          MR. SLACK:  All right.

5          THE COURT:  Okay, so today is the 8th.  So --

6          UNIDENTIFIED SPEAKER:  The 9th.

7          THE COURT:  9th?  Today is the 9th.  Right, 9th.

8    Seven -- 16th, and 23rd.

9          MR. SLACK:  So, Your Honor, would it be -- because

10   this is an objection, it seems to me here that both parties can

11   be putting these in at the same time with their position.  If

12   not, it would seem to me appropriate that the debtors -- even

13   if it's just a couple of days, get a reply.

14         THE COURT:  Yeah, but I can only do so much.  I've got

15   these other motions coming up on the very next day.

16         MR. SLACK:  Right.

17         THE COURT:  I've got -- my other question, though, is,

18   should we -- and maybe we covered this -- can we go with the

19   order as is, or do you need -- we need to hold up this last

20   provision until I get this thing briefed from you?  What do you

21   think, Mr. Slack?

22         MR. SLACK:  I mean, it seems to me that we could put

23   in place an order.  We do have to -- we do have to craft the

24   language around the subrogation --

25         THE COURT:  Right, right.

(973) 406-2247   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    MR. SLACK:  -- issue, Your Honor.  We'll work with

2  them on that.  But then I think Your Honor could put in place

3  an order.

4    THE COURT:  Okay.  Let's do that.  So --

5    MR. SLACK:  And then we can decide if this other issue

6  is going to go in, Your Honor would be able to make that at

7  some future time.

8    THE COURT:  Yeah.  Mr. Pascuzzi, I'd rather close this

9  matter.  I'll get the brief from -- brief brief from Mr. Slack

10  in a week, and a response from you.  Chances are, since it's

11  the very next day when we have some fairly heavy-duty motions

12  to deal with, I'll do my best to respond.  But I'm not -- I'll

13  just -- I'll consider it submitted on that narrow issue.  In

14  the meantime, we'll get the order.

15    MR. PASCUZZI:  And then if -- and then the Court can

16  issue an amended order if necessary.  Okay.

17    THE COURT:  Something -- okay.

18    MR. PASCUZZI:  Thank you, Your Honor.

19    THE COURT:  Thank you all for your time.  It was a

20  long morning.

21    IN UNISON:  Thank you, Your Honor.

22    (Whereupon these proceedings were concluded at 11:45 AM)

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1                          I N D E X

2   RULINGS:                                    PAGE  LINE

3   Debtors' motion for order authorizing        54     6

4   debtors to purchase D&O insurance, granted.

5   Debtors' application to employ the Coblentz   61    10

6   firm as special counsel to the debtors,

7   granted.

8   Protective order is approved as amended on    127    13

9   the record, aside from the issue of

10  governmental agencies, which is to be

11  briefed and submitted.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3    I, Clara Rubin, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5

6

7

8

9

10

11    _____

12    /s/ CLARA RUBIN

13

14    eScribers

15    7227 N. 16th Street, Suite #207

16    Phoenix, AZ 85020

17

18    Date:  July 10, 2019

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

**[**

**[Mc-alin] (1)**
101:11

**A**

**ability (4)**
52:25;82:4;105:2;
121:3
**able (17)**
25:10;39:14;67:25;
69:1;70:4;71:25;72:12,
25;83:19;94:13;98:22;
102:3,5;107:13;
108:13;122:24;127:6
**absence (2)**
86:13,13
**Absolutely (4)**
20:24;46:11;96:23;
103:1
**abstract (3)**
102:12;113:4;118:22
**accept (5)**
11:3,24;24:12;38:1;
44:20
**access (3)**
39:16;44:8;77:14
**accounting (1)**
113:1
**accuses (1)**
14:15
**accusing (1)**
14:6
**acknowledgement (4)**
95:17;97:17,22,23
**across (1)**
121:22
**act (6)**
84:5;85:8,11;87:15;
88:13,16
**action (6)**
14:15;24:21;40:21,
21;41:6,6
**actions (3)**
38:11;40:11;41:1
**activity (2)**
42:19;49:25
**actual (3)**
56:25;59:5,16
**actually (8)**
31:20;40:6;57:8;
70:23;100:24;118:8,9,
12
**ad (10)**
64:8;67:24;72:11;
73:16;77:2;91:10,15,
24;98:6;109:16
**add (8)**
43:24;44:15;60:22;
64:5;81:9;97:11;
105:17;116:15

**added (1)**
73:8
**addition (1)**
81:3
**additional (3)**
9:25;15:6;18:5
**address (4)**
20:25;22:6;98:4;
102:7
**addressed (3)**
51:12;57:14,17
**addresses (2)**
56:20;69:1
**addressing (1)**
56:11
**administering (1)**
53:20
**administrative (3)**
18:12,21;44:18
**administrative-expense (1)**
51:17
**administratively (5)**
28:4;32:8;52:24;
53:4,5
**advance (1)**
52:14
**advantage (1)**
73:11
**adversary (2)**
40:16,18
**adverse (3)**
58:6;59:3;105:1
**advice (1)**
99:19
**advise (7)**
93:25;96:3;98:25;
99:9;103:25;109:11,12
**advised (3)**
58:3;69:18;102:23
**advising (4)**
94:3,19;100:3;
101:15
**advisors (3)**
113:1,1,1
**affect (1)**
94:12
**affiliated (1)**
38:8
**again (36)**
12:16;16:11;17:16;
24:13;37:9;44:16,23;
50:12;51:14,20;53:11,
17,23;64:2;66:19,25;
67:12;68:11;70:12;
72:11,25;76:22;85:2;
86:15;89:23;97:10;
98:1;99:10;101:4;
108:25;114:17;117:11;
119:17;121:17;123:6,
12
**against (1)**
19:2;20:13;24:21;
27:9;40:2,2;60:18;

110:10,16;111:7;
114:25
**agencies (10)**
64:5;74:5,18,20;
75:3;77:8;79:1,3;
86:19;89:20
**agency (3)**
78:16;80:7,22
**agenda (1)**
62:20
**aggregate (1)**
19:23
**aggressive (1)**
32:1
**ago (3)**
20:6;49:22;117:12
**agree (11)**
9:11;28:20;46:8;
95:17;96:6;97:17;
116:9,17;119:9,12;
121:5
**agreed (11)**
63:5;65:3;66:7,23;
72:16,18,22;74:5;
93:21;96:9;99:18
**agreeing (1)**
90:3
**agreement (6)**
59:16;79:9;95:19;
116:10,17;125:5
**agreements (1)**
115:8
**ahead (12)**
7:14;8:12;13:2,6;
24:9;54:7;55:9;60:22;
61:12;64:13;78:10;
108:14
**airplane (1)**
50:24
**Alan (1)**
8:7
**alert (2)**
112:15;113:5
**alignment (1)**
35:7
**allege (1)**
8:19
**alleged (1)**
43:22
**allocated (2)**
35:15;53:12
**allocation (4)**
19:20;35:5;36:24;
38:2
**allow (5)**
44:22;45:22;52:16;
74:14;75:19
**allowed (5)**
16:2;65:22;67:19;
88:9;120:16
**allowing (1)**
56:18
**allows (3)**

65:25;73:13;99:10
**almost (2)**
55:11;76:25
**along (1)**
115:10
**alternative (1)**
124:10
**although (1)**
112:17
**always (1)**
89:10
**ambiguity (1)**
95:14
**amended (1)**
127:16
**American (1)**
96:15
**among (3)**
21:17;96:9;116:25
**amount (6)**
16:8;19:23;28:2;
32:17;33:22;47:23
**amounts (1)**
16:8
**analogous (2)**
65:12;73:2
**analyze (1)**
106:25
**and/or (3)**
45:19;47:13;78:19
**anomalies (1)**
27:20
**anomaly (1)**
53:2
**anticipate (1)**
125:3
**anymore (1)**
62:7
**Apart (1)**
39:21
**apologize (2)**
39:25;114:7
**appear (3)**
56:18;72:17,17
**appearance (2)**
62:16;95:16
**appeared (2)**
72:20;101:14
**appearing (2)**
56:17;99:19
**appears (5)**
72:14;89:16;97:23;
98:17,18
**appli (1)**
38:21
**applicable (1)**
56:23
**application (4)**
59:17;61:11;66:13;
114:9
**applies (2)**
77:20;113:24
**apply (6)**

8:20;9:1;10:5;75:6;
77:17;114:10
**appreciate (7)**
23:20;27:11;39:11;
57:16;77:11;110:18;
114:12
**appropriate (10)**
21:19;26:14;37:18;
54:19;68:16,21;78:24;
104:14;105:4;126:12
**approve (1)**
38:4
**approved (1)**
49:22
**approximately (1)**
115:18
**Area (1)**
34:10
**argue (2)**
108:1;111:7
**argued (2)**
43:20;124:19
**arguing (2)**
87:20;89:10
**argument (7)**
16:15;41:3,7;50:6;
55:3,17;79:1
**arguments (2)**
20:25;102:13
**argument's (1)**
23:19
**arising (1)**
40:2
**around (1)**
126:24
**arrangement (1)**
73:5
**arrival (1)**
11:3
**articles (1)**
34:4
**articulated (1)**
113:23
**aside (15)**
17:6,7,13;18:22;
21:25;26:15;28:3,13,
24;31:11;47:23;51:22;
53:6;68:12;76:11
**aspects (1)**
118:17
**asserted (2)**
18:5;45:3
**assertion (1)**
104:2
**assess (3)**
27:12;83:17;102:5
**assessment (4)**
15:11;23:7;30:7;
112:21
**asset (1)**
52:9
**assume (1)**
90:6

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 130
of 147

**assuming (6)**
13:10;18:23;19:5;
41:8,9;42:18
**assurance (1)**
45:15
**attached (2)**
59:16;116:17
**attempt (1)**
15:15
**attorney (10)**
75:20;77:8;81:23;
88:8,12;98:11;103:24;
106:21;109:11,18
**attorneys (6)**
93:24;96:2;106:5;
111:17;115:7;116:7
**Authority (4)**
63:21;78:24;80:25;
125:4
**automatic (2)**
104:19;107:20
**automatically (2)**
70:12;121:21
**available (10)**
16:23;25:5,8,16,24;
26:17;28:3;44:25,25;
52:10
**available-asset (1)**
49:9
**avoid (1)**
8:15
**aware (7)**
37:12;63:4;64:4,11;
67:23;74:20;93:18
**ax (1)**
89:3

**B**

**back (45)**
7:8;10:25;11:2;
16:16;24:1;25:21;
26:21;27:2;30:23;
31:16,22;32:21,25;
33:1,2,20;34:12,20,23,
24;39:12;40:6;41:4,6;
43:1;45:2;47:5,19;
48:22;52:10,15,17;
53:1;61:5;62:21;69:21;
70:22;77:3,12;88:7;
89:19;103:8;106:7,13;
113:11
**background (1)**
7:24
**Baker (1)**
56:8
**ball (1)**
50:3
**band (1)**
88:15
**bank (1)**
28:1
**bankruptcies (1)**

84:13
**bankruptcy (63)**
13:10;17:3;20:6;
21:25;23:12;26:14;
27:19,21,24;46:6,7;
47:9,13;48:9;67:24;
68:14;69:14;70:9;
72:13,14,15,19,19,21;
73:18;75:24;77:19;
80:18;83:15;84:6,9,10;
85:23;86:6,17,18,25;
87:3,18;88:2,9,15;
92:13,16,24;95:25;
96:16,17,19;98:11,17,
18,19;99:2,20,23;
100:7,8;101:14;
103:16;106:20;110:4;
115:23
**bar (1)**
60:13
**based (6)**
19:20;40:11;56:6;
76:17;83:18;86:8
**basic (1)**
87:6
**basically (1)**
95:14
**basis (5)**
15:5;68:23;73:13;
101:3;121:11
**Bay (4)**
34:5,10;115:5,19
**bear (1)**
34:19
**become (3)**
70:15;75:20;101:21
**Bedford (1)**
15:25
**begin (2)**
7:17;85:13
**beginning (1)**
113:23
**behalf (6)**
8:8;39:6;56:9;91:14;
113:18,18
**belief (1)**
15:5
**below (1)**
32:19
**benefit (7)**
31:1;41:7;47:23;
48:25;55:10,12;83:6
**Benjamin (1)**
91:14
**Bermuda (1)**
42:4
**best (5)**
35:10;66:11;102:19;
113:4;127:12
**better (5)**
47:11;48:8;54:13;
120:10;123:15
**beyond (2)**

16:5,12
**big (8)**
16:16;26:21;28:9;
45:25;51:25,25;53:6;
88:17
**bigger (1)**
32:9
**billions (2)**
29:16;46:2
**bills (1)**
28:5
**bit (1)**
90:11
**blackline (6)**
64:25,25;65:1;66:8;
67:5,7
**blanket (5)**
72:5,6,25;101:2;
104:14
**blip (1)**
49:8
**blow (3)**
74:17;79:19;80:19
**board (1)**
8:10
**boards (1)**
35:7
**boat (1)**
122:23
**both (10)**
9:19;10:20;17:12;
36:1,14;38:7;41:14;
71:25;90:12;126:10
**bother (1)**
90:16
**bothered (2)**
11:25;54:9
**bothering (1)**
76:17
**bothers (1)**
90:16
**bought (3)**
23:5;25:7;34:17
**bound (4)**
95:17;97:18;116:10,
17
**brainstorming (1)**
15:6
**break (1)**
28:1
**brief (4)**
91:1;127:9,9,9
**briefed (1)**
126:20
**briefing (2)**
90:11;111:15
**briefly (3)**
39:14;91:1;112:15
**briefs (1)**
125:24
**bring (3)**
24:21;41:12;107:7;
109:3,12

**bringing (1)**
117:19
**broad (7)**
63:7;77:21;96:5;
109:5;112:24;113:2;
121:16
**broader (2)**
55:14;108:14
**broker (3)**
15:9;22:21;23:3
**brought (2)**
9:22;16:11,12
**Brown (1)**
18:14
**Bruno (2)**
40:3;115:1
**buck (1)**
62:6
**bucket (1)**
38:18
**burden (9)**
116:3,8;117:11;
118:9;120:2,3,5,8,12
**business (3)**
21:10;60:12;113:25
**business-judgment (1)**
8:19
**Butte (2)**
115:5,19
**buy (2)**
23:9;24:15
**buys (1)**
32:16

**C**

**CAL (1)**
85:5
**calculation (1)**
7:21
**calendar (1)**
7:11
**CALIFORNIA (6)**
7:1;42:1;51:2,8;
60:13;63:24
**Call (15)**
7:3,14;8:21;19:25;
26:15;29:13;41:5;
44:23;74:22;78:23;
81:23;86:11,11;92:18;
96:19
**called (4)**
48:25;88:8;95:12,14
**calling (3)**
30:18;31:24;96:7
**calls (1)**
83:3
**came (6)**
21:7;30:1,3,7;54:9;
95:12
**camp (2)**
46:9;115:5,19
**can (90)**

8:21;11:15;18:3;
19:15,25;20:13;22:14;
23:1;26:10;28:20;
30:13,15;32:3;33:10,
23;34:22;35:4,10;36:8;
39:12;40:10;42:1,25;
47:25;48:22;50:15,21;
55:23;56:4;58:10;
61:12;64:20;66:1;68:7,
20,23;69:9,14;72:14,
22;74:17;75:21;80:9;
81:19,23;82:10,15,16;
84:3,3,12;86:23;87:2,4,
17;89:22,23;91:6,21;
92:16;93:22;95:19;
97:22;98:10,13,18;
99:15;101:1;102:7,18;
105:14,17,22;106:4;
107:24;110:4,13,13;
111:18;112:23;116:16,
21;123:20;124:1;
125:5;126:10,14,18;
127:5,15
**cancel (2)**
30:13;33:23
**capacity (1)**
21:15
**captive (2)**
33:10;44:24
**captives (2)**
31:8,9
**car (1)**
30:21
**care (2)**
55:14;125:2
**carefully (2)**
9:6;56:19
**Carolina (2)**
42:11,16
**carpet (2)**
20:16;36:25
**carrier (1)**
23:23
**carriers (1)**
42:2
**carve (2)**
66:23;74:5
**carve- (1)**
77:11
**carved (5)**
67:9;74:7,8,21;89:21
**carve-out (6)**
74:8,16;75:8,9,18;
95:24
**case (34)**
7:14,15;11:16;15:25;
16:3;25:6;26:17;28:1,
6;29:15;35:7;38:17;
40:2;45:1;77:18,19,22;
79:24;80:23;81:1;
88:20;96:3,13;98:12,
17,25;99:4;100:3;
102:17,22;104:2;

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 131
of 147

105:21;116:7;118:11
**case-by-case (3)**
73:13;101:3;121:11
**cases (16)**
11:19;54:19;77:16;
88:20;94:1,4,5,8,19;
95:17;99:7,9;106:13;
108:14;112:5;115:24
**casualty (1)**
45:6
**catastrophic (2)**
51:15,19
**catch-all (1)**
68:2
**categories (4)**
92:12;112:23,24;
124:6
**cause (1)**
120:11
**causing (1)**
14:7
**Caymus (7)**
57:24;58:3;59:1,3,8,
9,12
**CCAs (1)**
66:24
**cell (1)**
44:24
**CEO (1)**
71:7
**certain (11)**
14:17;28:21;29:2;
30:12;91:20,22;
113:21;116:3,4;
120:12;124:6
**certainly (8)**
9:13;11:13;12:20;
18:3;19:15;69:15;
79:19;84:12
**certainty (4)**
21:16;23:18;24:16;
32:16
**cetera (3)**
21:14,15;45:7
**chair (1)**
7:10
**chance (2)**
91:1;117:22
**Chances (1)**
127:10
**change (6)**
49:5;66:18;76:2,4;
121:24,25
**changes (1)**
64:18
**channeling (1)**
106:19
**Chapter (10)**
77:16;79:24;93:25;
94:3,19;96:3;98:12;
99:7,9;108:14
**chart (1)**
36:10

**check (2)**
16:20;54:20
**checks'll (1)**
38:5
**chill (2)**
78:19;79:13
**circumstance (2)**
72:3;111:6
**circumstances (2)**
80:23;100:25
**cite (1)**
15:25
**citizen (2)**
80:7;83:7
**City (7)**
57:7,11,12,22;59:8,
17,19
**civil (2)**
75:18;86:21
**claim (16)**
10:15;14:19,24;19:1;
20:13;26:25;27:8;
30:22;31:25;33:21;
34:25;44:18;46:1;
69:17;108:5;110:9
**claimant (3)**
70:6;71:13;99:22
**claimants (7)**
54:1;64:7;69:6;70:1,
20;71:3;77:4
**claimant's (1)**
69:25
**claimed (1)**
12:2
**claims (46)**
9:22;10:21;13:11,25;
14:2,3,10,11,13,20;
16:10,11;18:5,8,21;
23:9;27:4;29:16;41:4;
45:3;47:6,8,9,12,13;
51:17;57:19,20;92:3,5;
93:6,12;94:6,9,12,14,
15;98:8;102:19,20;
104:1,2,23;106:19;
107:6;123:17
**claims- (1)**
10:13
**claims-made (1)**
16:5
**clarify (4)**
21:5;35:4;40:10;
97:11
**clause (1)**
10:20
**Clean (3)**
63:20;64:24,25
**clear (5)**
22:25;30:16;98:16;
110:23;114:7
**CLERK (4)**
7:4,9,11,15
**client (11)**
47:21;48:8;57:2;

59:13;60:14;61:7;
101:15;102:23;104:1,
11;111:19
**clients (17)**
49:6;57:6,6,9;58:6;
79:16;91:20;92:18;
94:3,8,13,19;102:15;
103:3;107:11;108:8;
116:25
**clients' (1)**
124:1
**clients'd (1)**
47:17
**close (3)**
37:25;44:14;127:8
**Co (2)**
18:14;103:25
**Coblen (1)**
58:7
**Coblentz (4)**
56:6;57:6,17;58:5
**co-counsel (8)**
77:7;101:13;105:11;
107:23,25;110:15,18,
25
**colleagues (1)**
111:17
**collected (1)**
22:21
**combination (1)**
13:23
**coming (12)**
32:13;34:12;37:1,11;
38:22;39:12;42:2;
43:16;45:2;56:2;100:7;
126:15
**comment (3)**
38:22,23;119:13
**comments (3)**
55:20;58:10;61:9
**committee (34)**
8:3,8,10;11:2;21:8,
11;22:7;24:11;26:10;
33:4,7;37:24;42:8;
43:24,25;48:6;50:1;
53:18,25;54:5,12;55:3;
56:7,9;57:10;61:8,9;
71:6,10;77:20;82:13;
98:6;109:16;121:16
**committees (3)**
99:17,17;119:4
**committee's (3)**
7:25;54:18;55:16
**common (10)**
60:19;73:4,4;86:16;
87:1;101:15;104:1;
111:18,19;122:1
**commonality (1)**
35:8
**common-interest (1)**
115:8
**communicate (1)**
106:22

**companies (8)**
14:9;21:17;38:6;
48:24;67:18;84:21,22,
22
**company (35)**
17:2;18:8;21:14,22;
26:21;27:9;28:24;29:5;
30:23;31:23;32:3,20;
33:17;36:24;40:6;41:4,
8,9,16;43:1;44:4;45:2,
13,19;46:19;48:23;
49:9;52:23;53:3,4;
54:22;106:5,8,18;
110:5
**compared (1)**
43:8
**compel (2)**
124:22,23
**compensated (1)**
49:1
**compensation (1)**
121:17
**competing (1)**
49:10
**competitor (1)**
87:14
**competitors (1)**
14:9
**complain (1)**
74:24
**complaining (2)**
12:15;79:8
**complaints (1)**
43:22
**completely (2)**
86:5;116:6
**complex (1)**
115:11
**complexity (1)**
53:17
**compliment (2)**
112:5,7
**comply (1)**
123:15
**concept (2)**
33:10;44:24
**concern (5)**
13:1;22:6;65:24;
66:6;106:14
**concerned (2)**
33:8;57:10
**concerns (3)**
44:11;56:21;57:17
**concession (1)**
124:17
**concluded (1)**
127:22
**conclusion (2)**
22:22;48:9
**conduct (2)**
41:18;56:24
**confess (1)**
62:22

**confidences (1)**
8:13
**confidential (17)**
65:20,21;69:21,21;
70:17;71:21;74:16,17;
78:21;82:1;83:20,20;
90:4;105:24;106:1,3;
115:14
**confidentiality (6)**
69:17;70:7;89:22,24;
107:6;112:19
**confidentially (1)**
81:16
**confirmed (2)**
19:2;34:15
**conflict (2)**
56:25;59:5
**confused (2)**
21:13;122:5
**connection (8)**
13:25;14:10;16:9;
57:19;60:15,17;98:7;
100:3
**consensual (1)**
50:14
**consent (15)**
57:13,21;58:11,13,
25;59:19;60:6,11,14;
61:6;66:2,5;97:24,25;
98:1
**consequence (3)**
47:24;75:5,5
**consequences (2)**
42:18;60:22
**consider (1)**
127:13
**considered (2)**
55:2
**consistent (2)**
37:4;70:18
**consists (1)**
91:25
**constantly (1)**
54:23
**contacts (1)**
85:4
**contempt (2)**
107:24;110:17
**context (9)**
29:15;38:17;43:23;
88:14;93:8;94:3,17;
95:11;113:4
**contexts (1)**
94:10
**continue (2)**
21:15;76:12
**continued (2)**
63:10;115:3;124:13;
125:23
**continuing (2)**
64:7,8
**contract (2)**
56:21,25

Min-U-Script®

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 132
of 147

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(3) case-by-case - contract

**contractual (1)**
55:13

**contributing (1)**
37:3

**control (9)**
82:25;85:13;87:7;
90:19;98:17;105:10,
13,22,24

**conversation (3)**
103:10;105:9;124:11

**conversations (2)**
120:15;124:13

**convince (3)**
87:24;89:11,13

**convinced (1)**
52:24

**cooperate (3)**
69:18;123:13;124:21

**cooperated (1)**
76:9

**coordinate (1)**
61:12

**copy (1)**
15:17

**corporate (1)**
36:10

**Corporation (3)**
7:16;35:16;42:13

**correctly (1)**
101:11

**correspondence (2)**
23:21,23

**cost (1)**
53:19

**costs (3)**
13:22;16:8;18:10

**co-subro (1)**
105:14

**co-TCC (1)**
123:23

**counsel (62)**
15:9;22:20;27:3;
52:12;54:14;61:13;
62:25;67:18,19,22,23,
23,25;72:13,19,21,24;
73:17,18,24;82:13,13;
92:11,14,19;93:22,23;
94:2,14,23;95:5,5,6;
96:8;97:17,19;98:18;
99:11,12,12,18;100:13;
101:25;103:3,15,16,23;
104:15;105:14;116:12,
14,16,20,21;120:15,17,
18;122:10,15,16,21,24

**count (2)**
93:1;96:1

**country (2)**
83:7;87:19

**couple (5)**
39:8;44:20;92:12;
97:15;126:13

**course (8)**
8:13;26:5;51:18;

66:3;93:19;96:21;97:9;
104:5

**Court (594)**
7:3,4,6,8,10,12,14,
17,20,23;8:3,9,12,21,
25;9:1,4,5,7,10,12,20;
10:1,7,10,12,16,25;
11:2,12,17,19,21;12:6,
12,14,19,23,25;13:4,6,
13,15,19;14:3,6,20,23;
15:1,3,8,14,17,18,20,
23;16:17,19,25;17:2,5,
9,11,16,20,22;18:2,11,
14,16,18,25;19:8,10,
12,16,18,22,25;20:3,6,
9,15,18,23;21:2,5,24;
22:2,4,9,11,16,18,24;
23:10,12,14,16,18,20,
25;24:3,5,8,11,17,25;
25:4,12,14,17,19;26:1,
3,5,8,11,12,19;27:6,16,
18,23;28:7,10,12,15,
18,20;29:2,4,6,8,9,11,
13,17,22;30:1,3,6,10,16,
20,25;31:2,4,7,12,14,
18,22;32:6,8,22,24;
33:1,13,15,25;34:2,18,
21,24;35:3,11,14,18,
22,25;36:3,7,10,14,16,
18,20,23;37:3,6,8,14,
18,20,22,24;38:4,12,
14,19,21,24;39:1,7,11,
17,19,21;40:7,10,15,
18,22,24;41:2,20,23;
42:3,5,8,13,15,17,21,
23;43:6,7,11,13,15;
44:7,10,12,14,20,22;
45:5,21,24;46:5,12,15,
21,23;47:2,7,19;48:2,8,
14,21;49:15,17,19,21;
50:12,17,22,25;51:2,5,
8;52:5,8,11,16,20,22;
53:2,12,16,23;54:2,4,7;
55:25;56:4,12,14,15;
57:3,5,12,23,25;58:2,
14,18,24;59:1,7,11,20,
22;60:1,3,3,4,4,5,12,13,
25;61:4,17,21,23,25;
62:2,4,6,8,11,13,15,18,
20,25;63:4,6,9,16,18,
23;64:1,10,13,16,21,
23;65:2,5,10,14;66:13,
14,17,21;67:2,4,8,11,
14,16;68:5,23;69:3,11,
16,20;70:14,20,25;
71:4,12,15,18,21,25;
72:9;73:9,14,16,20,23;
74:3,6,9,19;75:2,8,13,
22,24;76:4,6,15,25;
77:10,23;78:1,4,8,10,
19,25;79:5,7,14,17,
21,25;80:3,6,10,12,14,
16,18,18;81:2,5,7,10,

13,20,23;82:5,7,11,15,
16,22,25;83:16;84:8,
10,15,17,19,24;85:1,
16,17,21,25;86:2,10;
87:4,23;88:5,7,23;89:4,
7,9,18;90:1,3,7,9,15;
91:3,5;92:2,4,8,20,23;
93:1,4,7,11,13,15,17;
94:21,25;95:3,8;96:2,5,
10,22,25;97:4,6,10,13;
98:9,24;99:3,6,21;
100:6,7,11,14,15;
101:4,7,9,13,14,17;
102:1,4,9,11,21,23;
103:14,18,21;104:4,6,
10,19,21,23;105:5,8,
18;106:6,8,11,15,17,
25;107:5,9,15,17,19,
23;108:9,10,12,15,18;
109:3,8,20,22,24;
110:2,11,13,16,21,23,
25;111:3,8,11,13;
112:2,8,12;113:6,8,10,
13,16,20;114:2,5,11,
14,17,21;115:2;116:2;
117:6,10,12,14,17,
19,22,23;118:1,5,7,11,
15,21;119:3,7,10,14,
17,19,21,24;120:20;
121:7,19;122:2,9,18,
20;123:1,3;124:4,13;
125:1,11,14,16,25;
126:3,5,7,14,17,25;
127:4,8,15,17,19

**courtroom (1)**
27:14

**courts (1)**
16:2

**Court's (5)**
7:9,15;79:18;87:2;
119:12

**cover (4)**
32:4;41:18,18;45:13

**coverage (24)**
9:24;10:19;18:6,7;
21:19,23;23:7;24:19;
26:24;27:1,11;28:2;
30:8;33:21;35:1;38:7,
10,12;41:25,25;45:12,
20;51:23;52:3

**covered (8)**
10:15;24:22;68:2;
73:7;75:3;79:9,12;
126:18

**covers (4)**
10:3;73:1;81:4;
98:21

**craft (1)**
126:23

**creates (2)**
88:24,24

**creating (1)**
89:19

**creditor (9)**
42:25;50:5;63:8;
78:4,12,14,20;85:4;
99:24

**creditors (20)**
8:8;20:19;47:22,22,
25;48:19;49:6,11;50:4,
5,13,14;53:5;55:5,12,
13,13;68:9;77:18;
84:18

**creditors' (9)**
33:4;7;42:8;43:24;
48:6;54:4,12,17;55:3

**critical (1)**
82:7

**criticism (2)**
12:3;54:23

**criticize (2)**
26:13;37:9

**culpability (2)**
19:4;46:16

**current (5)**
9:16,24;10:19;39:18,
20

**currently (4)**
10:8;115:9,17,18

**D**

**D&O (5)**
7:19;21:16,23;27:14;
119:21

**D&Os (1)**
88:10

**damage (2)**
34:9;100:1

**damages (1)**
41:19

**Danko (1)**
115:17

**Dario (1)**
39:5

**David (1)**
113:18

**day (10)**
8:22;12:18;27:21;
48:25;49:23;54:14;
100:16;113:25;126:15;
127:11

**days (5)**
39:8;66:11,11,12;
126:13

**DE (61)**
39:5,5,7,10,13,18,20,
24;40:8,13,23,25;
41:11,22,24;42:4,6,22,
23;43:4,7,12,14;44:6,8,
11,13;54:12;114:14,16,
20,23;115:3;117:8,11,
13,16,18,21,25;118:2,
6,8,20,24;119:2,6,9,12,
15,18,20,23,25;122:2,
8;123:8,10;124:3,5,25

**deal (19)**
11:15;12:9;16:16;
22:25;27:21;28:9;29:9,
10;49:11;53:6;65:16;
75:12;88:17;97:15;
114:2;123:15,19;
125:4;127:12

**dealing (5)**
44:1;82:14;97:20;
98:3;118:19

**deals (1)**
46:5

**dealt (2)**
21:22;105:19

**debtor (54)**
11:25;19:2,2,3,6,13;
23:4;54:19,20;56:23;
57:7;60:15;66:3,10;
69:3,4,17,20;70:3;
71:18;73:13,24;77:20,
22;78:1,5,5;79:3;80:3;
82:17;83:14;85:23;
89:3;94:16;98:23;
99:13;101:1,22;105:6;
107:20;108:4;109:6,8;
110:12,16;120:11,17;
121:2,3,10,11,23;
122:24;124:6

**debtors (42)**
8:18;10:22;13:20;
15:25;17:12;19:15,21,
22;21:18;45:25;57:13,
18;62:19;63:4;66:2,4;
68:11,22;71:14,16,25;
76:9,12;91:19;92:15;
93:21;94:20;95:12;
97:2,24;102:2;103:5,6;
104:8,17;105:2;
107:14;112:20,21;
118:10;120:6;126:12

**debtors' (2)**
9:21;16:15;55:1,2;
72:12;82:12;105:1,21;
111:20;124:9,19;
125:19

**debtor's (5)**
27:12;66:6;74:14;
82:25;100:21

**debts (2)**
31:24;45:14

**decide (6)**
86:2;87:15;88:13;
125:24,25;127:5

**decides (2)**
32:1;45:11

**deciding (2)**
85:24;118:22

**decision (5)**
48:3;85:6;90:9;
111:15;121:6

**decisions (1)**
124:15

**declarant (2)**

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(4) contractual - declarant

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 133
of 147

11:22;12:1

**declaration (11)**
11:4;22:19,24;23:2,
22;56:20;57:14,20;
58:15,21;59:18

**dec-relief (1)**
24:21

**defend (1)**
20:23

**defendant (5)**
52:1;58:4,5;60:14;
120:6

**defendants (2)**
32:2;58:6

**defer (1)**
55:2

**deferring (1)**
55:1

**define (2)**
98:11;112:23

**defined (4)**
93:24;95:2;99:19;
116:20

**defines (1)**
116:13

**definition (9)**
93:22,23;94:23;
95:21;96:8;99:21;
111:16;112:18;122:4

**definitional (1)**
122:5

**definitions (1)**
123:6

**delay (2)**
11:8,11

**deliberately (1)**
54:11

**denied (1)**
18:4

**Dennis (1)**
7:5

**dense (1)**
87:6

**deny (4)**
16:11;49:5;117:23;
118:18

**denying (2)**
48:4;50:2

**Department (1)**
81:24

**depleted (2)**
13:10;18:7

**depletion (4)**
9:16;10:24;15:11;
16:13

**deposition (6)**
12:17;13:8;15:5,13;
41:13,14

**derivative (6)**
40:2,5,11;41:1,6,6

**derivatives (1)**
40:21

**describe (1)**

91:23

**designated (1)**
112:23

**determination (2)**
72:2;86:8

**determinations (2)**
66:1;88:2

**determine (2)**
24:19,22

**determines (1)**
85:17

**difference (10)**
20:11;25:9,23,24;
49:19;50:13;122:12,
13,14,21

**different (25)**
20:9,12;27:21;31:2;
41:10;46:23;52:22;
63:25;64:1;70:23;71:1,
2;88:13,14;92:12;
93:10,10;94:8,10;
97:15;105:11;110:6,9;
123:17;124:15

**difficult (2)**
14:13;124:14

**dip (1)**
18:9

**director (6)**
19:3;26:6,9;27:9;
29:20;54:22

**director-oversight (5)**
13:25;14:1,10,11,13

**directors (43)**
9:3,14;10:19;14:6,
15;17:22,23;19:20;
21:14;23:8,8;24:23;
26:13,23;28:4,25;
29:19;31:19;32:2,6,16;
35:20,20,22;36:1;
37:15;43:19;44:5,22;
45:1,13,18;46:13,19,
23;47:3,24;49:1;50:6;
51:16;52:2;53:13;55:8

**disagree (7)**
29:22;33:3;35:3;
45:3,4;53:16,19

**disagreement (1)**
95:14

**disappointed (1)**
21:6

**disclose (1)**
83:19

**disclosing (6)**
78:20,21,22;82:1,2;
112:22

**disclosure (1)**
56:11

**discount (1)**
12:16

**discovery (18)**
16:4;69:2;77:14,15;
78:22;79:16,24;81:18;
82:2,3;96:25;106:13;

108:4,12,13;109:5;
110:19;123:13

**discrete (1)**
77:18

**discuss (1)**
63:10

**discussed (1)**
11:18

**discussion (3)**
23:6;75:1;109:19

**discussions (4)**
15:12;58:21;65:23;
68:10

**dismissed (1)**
14:12

**disparity (1)**
118:12

**disposition (2)**
85:13;106:19

**dispute (5)**
12:22,23;26:24;
95:12;121:14

**disputes (2)**
35:1;73:7

**disregard (2)**
87:15;88:13

**distorts (1)**
105:12

**distributions (1)**
51:13

**District (1)**
16:1

**docket (1)**
77:9

**document (9)**
60:24;94:15;103:5;
116:3,7,11;120:25;
121:20;123:20

**documents (34)**
8:14;39:15,16,25;
44:9;68:19;73:15;
91:21;95:20;96:25;
97:22;103:9,12;
107:12;113:5;115:13,
15;116:1,16,21;117:3,
9;118:10;120:4,11,16;
121:2,5,10,11,15,17;
124:6,8

**dog (1)**
70:10

**dollar (1)**
35:18

**dollars (30)**
9:18;13:22,23,25;
17:14;18:6,22;25:5,8,
21;26:16;27:25;28:1,5,
21,24;32:17;33:8,22;
42:25;44:25;47:18;
48:24;49:7,12;51:21;
53:9,20;55:8;88:10

**done (9)**
8:22;12:9;22:25;
43:20;48:11;62:2;87:2;

88:19;113:4

**door (5)**
34:14;62:6;89:19;
106:7,13

**double (1)**
38:7

**down (13)**
33:4;50:8,12;54:16;
61:5;62:8;63:1;93:20;
110:15;112:16;116:6;
119:22;123:15

**dozens (1)**
103:3

**draft (1)**
111:21

**drag (2)**
66:7;107:24

**dragged (1)**
110:16

**draw (1)**
20:18

**drawn (1)**
91:23

**drop (1)**
38:17

**dry (1)**
18:20;24:24;29:19

**Ds (1)**
33:17

**due (2)**
31:25;45:14

**duplicating (1)**
70:9

**during (4)**
13:10;15:12;77:22;
115:16

**E**

**earlier (3)**
17:3;92:14;108:6

**early (2)**
35:7;48:10

**earning (1)**
45:8

**earthquake (1)**
51:5

**earthquakes (1)**
51:9

**East (1)**
34:5

**easy (4)**
16:2;46:17;51:24;
54:24

**economical (1)**
53:14

**effect (1)**
95:22

**effectively (1)**
83:24

**effort (1)**
70:9

**efforts (2)**

21:18;66:11

**eight (4)**
117:1,14,15;118:25

**either (8)**
25:8;41:22;50:9;
59:12;78:5;82:20;
88:16;103:8

**elephant (1)**
46:1

**else (14)**
39:1;46:5;54:13;
60:22;61:1,1;79:2;
80:7;91:6;92:22;97:13;
100:2;111:14;125:2

**else's (1)**
28:19

**email (1)**
22:17

**employ (2)**
59:17;60:16

**employed (1)**
56:22

**employees (1)**
93:24

**employing (1)**
60:16

**empowered (1)**
89:2

**enact (1)**
75:21

**end (9)**
16:16;18:23;24:18;
25:21;30:22;54:13;
66:8;90:24;97:23

**enforcement (9)**
78:17;80:22;81:16;
82:5,7,18;83:3;85:9;
87:14

**enough (6)**
10:19;11:8;36:21;
90:17;91:3;118:21

**entered (4)**
56:22;63:5;64:19;
84:24

**entire (1)**
120:25

**entirety (1)**
47:15

**entities (3)**
32:4;67:8;92:1

**entitled (3)**
23:9;52:3;53:13

**entity (3)**
18:9;78:5;85:9

**environmental (1)**
78:15

**equation (1)**
49:9

**especially (2)**
104:14;116:9

**essentially (15)**
66:9;68:10;69:13;
72:18,24;74:15,17;

Min-U-Script®

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) declaration - essentially

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 134
of 147

75:20;83:12;84:5;
89:22;99:25;100:2;
114:23;120:22
**established (1)**
12:21
**estate (6)**
25:11;46:10,11;
47:13;52:4,6
**Estela (1)**
56:16
**estimation (2)**
57:19;106:19
**et (3)**
21:14,14;45:7
**even (16)**
14:20;15:15,15;19:3;
60:7;74:22;78:21;82:2;
83:23;89:15;100:7;
105:14;110:23;116:20;
118:1;126:12
**event (2)**
18:25;60:17
**everybody (8)**
15:20;17:2;53:3;
79:2;81:4,6;92:22;
122:22
**everybody's (1)**
92:25
**everyone (1)**
7:8
**evidence (4)**
10:23;13:20;21:20;
57:11
**exact (2)**
12:13;32:17
**exactly (22)**
12:15;14:8;17:1;
18:13,17;19:11;20:5;
23:16;30:17;53:22;
66:16;69:5;73:11,22,
22;74:2;78:9;81:25,25;
104:24;107:10;109:23
**exalted (1)**
104:16
**exam (1)**
111:1
**examined (1)**
8:18
**example (4)**
71:5,8;100:11;
106:17
**exceed (1)**
13:22
**except (1)**
100:3
**excess (1)**
41:17
**exchange (1)**
48:17
**Excuse (5)**
77:23;94:21;113:15,
17;123:19
**excused (2)**

55:24;61:22
**executive (3)**
12:6;57:10;61:8
**exhaust (1)**
32:23
**exhaustive (1)**
21:18
**Exhibit (1)**
59:16
**exist (2)**
57:1;124:9
**existed (1)**
58:20
**existence (1)**
41:15
**existing (1)**
45:11
**exists (2)**
58:16;60:25
**expand (1)**
111:16
**expect (1)**
22:18
**expended (1)**
13:18
**expense (1)**
18:12
**expensive (1)**
51:3
**experience (2)**
40:1;93:5
**experienced (1)**
94:14
**explain (4)**
36:8;87:23;89:1;
103:11
**explained (2)**
54:14;92:14
**explaining (1)**
33:14
**explosion (2)**
115:4,20
**exposed (1)**
52:1
**exposure (2)**
46:10;47:16
**extend (1)**
122:11
**extends (2)**
10:11;16:4
**extension (2)**
16:7,9
**extent (4)**
24:19;40:25;61:4;
113:7
**extra (1)**
43:19
**extremely (1)**
116:22

**F**

**face (1)**

112:24
**Facebook (3)**
78:2;81:21;87:13
**fact (18)**
8:20;10:19;11:21;
16:6;20:24;25:10;28:8;
38:6;46:8;51:17;74:24;
81:3;84:6,23;86:16;
91:19;118:24,25
**facts (1)**
29:10
**fair (3)**
24:24;51:19;91:3
**fairly (1)**
127:11
**fairness (1)**
24:7
**fall (1)**
92:11
**false (1)**
60:21
**familiar (4)**
21:11,11;49:25;
115:25
**fancy (1)**
20:3
**far (2)**
21:13;28:15
**Farr (2)**
91:14;95:22
**fashion (1)**
61:15
**fate (1)**
67:16
**favor (1)**
50:6
**favorably (1)**
73:25
**favored (3)**
47:6,8,9
**feasible (1)**
108:23
**feather (1)**
9:3
**featherbedding (1)**
25:3
**fee (1)**
38:21
**feel (1)**
56:20
**fees (1)**
38:22
**feet (1)**
66:7
**Felderstein (1)**
77:7
**fence (1)**
54:8
**FERC (1)**
102:16
**FERC's (1)**
103:23
**few (6)**

20:25;36:12;37:11;
51:12;64:6;65:18
**Ficks (17)**
56:6,7,11;57:16;
58:9,12,17,20,25;59:2,
10,20,22;60:1,3;61:12,
16
**Ficks' (4)**
56:19;58:8;60:16;
61:6
**fifty (29)**
17:13;18:22;21:25;
25:5,8,20;26:16;27:25;
28:1,5,21,24;29:18;
30:1;32:17;33:8,22;
37:10;42:24;44:24;
47:18;48:24;49:6,12;
51:21;53:6,8;55:7;88:9
**fight (2)**
70:10;97:8
**fighting (1)**
29:18
**figure (8)**
30:14;37:14;38:5;
49:11;79:8;102:9;
108:19,23
**file (1)**
110:16
**filed (6)**
39:3;40:18;57:15;
68:9;91:16;108:2
**files (2)**
106:18;107:23
**filing (1)**
22:6
**final (1)**
114:1
**financial (1)**
113:1
**find (3)**
75:15;87:13;103:6
**fine (6)**
8:1;82:13;91:2;
92:15;125:24;126:3
**finger (1)**
51:11
**finish (2)**
13:2;77:3
**finished (1)**
118:2
**fire (44)**
10:1,14;14:7;28:10,
14;31:25;32:2;34:7,9,
14;40:3;43:17;45:11,
19,24;46:9;47:10;49:7,
21,22;50:4,14;64:7;
68:8,13;70:5;71:3,10,
12;72:2,5;77:4;85:5;
100:12;103:25;114:15;
115:4,5,5,19,20,20;
121:9;122:23
**fires (8)**
9:23;14:17;24:1,4;

34:5;115:3,5,19
**firm (17)**
56:6,22;57:1,13;
58:5,8;59:3;60:15,16,
16,17;91:24;114:25;
115:10,17,18,18
**firms (5)**
93:10;95:25;115:9;
116:25;124:7
**firm's (1)**
57:6
**first (17)**
7:10;8:17;19:1,6;
22:5;23:4;25:13;48:14;
63:3;64:4,25;68:7;
74:5;86:14;96:11;
107:1,4
**fit (1)**
96:8
**Fitzgerald (1)**
77:7
**five (15)**
16:23;17:3,16;20:19;
25:21;27:13;33:2,24;
34:1,22;42:25;53:20;
66:12,15;103:12
**five-day (1)**
69:23
**fix (2)**
116:19;123:21
**fixed (1)**
62:7
**flights (1)**
50:24
**fly (2)**
90:15;124:15
**flying (4)**
33:8;34:6,6,8
**focus (4)**
9:21;35:20;48:21;
59:17
**focusing (1)**
87:5
**folks (8)**
66:19;73:4,4;75:19;
104:17,25;121:9;
122:10
**follow (1)**
106:15
**followed (2)**
56:24;66:12
**following (7)**
69:24;78:9;85:20;
88:25,25;89:20;118:15
**follows (1)**
32:3
**forbid (2)**
51:15,15
**force (1)**
10:9
**forget (1)**
67:17
**forgetting (1)**

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 135
of 147

107:21
**forgot (1)**
107:20
**forgotten (1)**
64:16
**form (4)**
25:17,22;39:20;
55:19
**forth (1)**
10:22
**forward (6)**
11:9;32:13;55:11;
100:12,15;108:2
**four (4)**
66:17;115:9
**FRANCISCO (2)**
7:1;51:4
**frankly (1)**
11:25
**free (1)**
79:19
**Fresno (2)**
115:4,20
**Friday (1)**
22:8
**frivolous (1)**
107:6
**front (2)**
82:19;95:1
**fulfil (1)**
71:9
**FULLER (4)**
56:8,8,13,14
**Fuller's (1)**
61:9
**fully (2)**
15:17;76:9
**function (1)**
68:14
**fund (2)**
49:22,22
**fundamental (1)**
9:15
**fundamentally (1)**
68:24
**further (3)**
38:24;90:11;111:14
**future (3)**
33:19;55:14;127:7

**G**

**Gallagher (2)**
91:14;95:23
**gather (1)**
87:2
**gave (4)**
58:15;60:21;124:16,
16
**gee (1)**
85:15
**Geisha (1)**
41:14

**general (6)**
36:7;43:23;73:17;
74:15;88:8;103:23
**generally (6)**
35:19;92:4,6;93:3;
107:11;124:19
**generals (1)**
75:20
**General's (3)**
77:8;81:23;88:12
**gets (12)**
47:19;52:12;68:19;
69:24;70:11;72:5,8;
78:12;81:20;88:14;
114:21;121:21
**GHETALDI (61)**
39:5,6,7,10,13,18,20,
24;40:8,13,23,25;
41:11,22,24;42:4,6,22,
23;43:4,7,12,14;44:6,8,
11,13;54:12;114:14,16,
20,23;115:3;117:8,11,
13,16,18,21,25;118:2,
6,8,20,24;119:2,6,9,12,
15,18,20,23,25;122:2,
8;123:8,10;124:3,5,25
**Ghost (4)**
57:9;58:4,4,5
**Gibbs (1)**
115:18
**given (8)**
10:19;40:1;57:12;
72:20;82:12;98:14;
106:3;112:24
**gives (4)**
10:21;52:17;69:4;
90:5
**giving (5)**
88:1;99:19;105:23;
110:1,2
**glad (1)**
54:10
**global (1)**
74:16
**God (2)**
51:15,15
**goes (10)**
13:10;36:24,25;41:4,
6;43:1;45:8;104:6;
112:22;117:11
**Good (14)**
7:6,7;20:25;29:3;
36:20;39:5;45:15;48:4,
5;56:16;59:13;90:17;
91:13;123:14
**good-faith (1)**
112:20
**governed (1)**
76:19
**governing (1)**
56:24
**government (5)**
46:3;85:24;86:14,18;

124:18
**governmental (2)**
81:17;82:9
**grab (1)**
25:25
**grand (1)**
47:14
**grant (7)**
17:12;54:7;55:9,18,
20;117:23;118:16
**granted (5)**
61:11;100:13;
108:21;111:4;123:18
**granting (1)**
44:18
**grants (2)**
100:14;117:22
**Great (1)**
114:12
**grind (1)**
89:3
**group (15)**
64:8;67:24;72:11;
73:10,17;77:3;91:11,
15,24,25,25;92:10;
93:11;123:23;124:17
**groups (1)**
63:12
**guess (14)**
15:21;47:10,14;48:2;
61:13;85:1;90:1;96:14;
97:15;98:3;108:19;
111:3;120:21;122:4
**Gun (2)**
115:4,20
**guy (1)**
81:20
**guys (2)**
87:13;125:5

**H**

**hammered (1)**
123:22
**hand (4)**
25:20;64:19;81:19;
82:10
**hand- (1)**
103:3
**handed (2)**
55:7;123:6
**hand-in-hand (1)**
115:6
**hands (1)**
28:19
**happen (8)**
19:1;26:25;32:3;
33:19;48:20;50:9;
95:24;111:3
**happened (2)**
14:18;77:22
**happens (9)**
17:5;26:24;35:1;

46:9;49:7;73:8;110:4;
122:14;123:17
**happy (6)**
15:16;34:7;47:17;
68:22;124:7;125:9
**hard (1)**
83:4
**hardball (2)**
45:12,20
**harm (3)**
88:17;110:2;112:21
**head (1)**
120:25
**headline (1)**
29:3
**headlines (1)**
29:10
**hear (5)**
34:7;37:8;77:2;
81:13;117:24
**heard (8)**
11:9;22:11;39:2,3;
58:10;62:25;91:10;
114:18
**hearing (4)**
11:7;56:17;97:3;
125:23
**heat (3)**
17:24;49:3;50:7
**heavily (1)**
84:21
**heavy-duty (1)**
127:11
**helicopters (3)**
34:5,6,9
**help (1)**
90:10
**helpful (1)**
114:24
**here's (3)**
12:9;21:12;22:21
**hey (2)**
30:11;51:5
**hidden (1)**
16:21
**hidden's (1)**
16:21
**hide (1)**
104:7
**high (1)**
29:19
**highly (4)**
65:21;69:21;74:17;
83:20
**hired (1)**
52:13
**history (5)**
13:24;14:8;114:24;
115:6;123:12
**hit (2)**
100:20,25
**Hmm (1)**
37:17

**hoc (10)**
64:8;67:24;72:11;
73:16;77:2;91:10,15,
24;98:6;109:16
**hold (2)**
92:3;126:19
**home (1)**
48:1
**homeless (1)**
43:10
**homes (1)**
43:9
**homework (1)**
87:5
**Honor (189)**
7:7,18;8:7,11,17;
10:6;11:10;12:16;15:4,
16,24;16:3;17:1,4,19;
18:13,15;19:7;20:21,
24;21:22;22:5,15;23:4;
24:7;25:24;31:10;
34:16;38:25;39:5,13,
24;40:14;41:12,24;
42:14;43:4;44:6,15,19;
48:12,16,17;49:16;
50:19,24;51:11,20;
52:15;53:11,24;55:23;
56:8,16,17,19;58:12,
20;59:15,25;60:10;
61:2,16,19,20;62:12,
19;63:3,5,14,22;64:3,
12,15,24;66:16;67:10,
15;68:1,7;69:7;71:23;
72:10,16;73:1,2,12,22;
74:2;75:1,10;76:21,22;
77:6,11;79:4;80:12,23;
81:25;82:24;83:12,21,
25,25;84:13;85:20;
86:13,25;87:22;88:22;
89:1,8,20;90:8,14;91:2,
13,16,24;92:7;93:9,19;
94:17,24;95:7,11;96:6,
21;97:9,14;98:4,15,22;
99:8,15;100:20,24;
101:8,12,22;102:7;
103:1,20;104:5,13,16,
24;105:17;107:22,25;
109:9;111:6;112:1,10,
15,19;113:2,5,12,15;
114:6,16,23;115:21;
116:24;118:20;119:2,
12;120:1,14,24;121:4,
8,13,24;122:12,14;
124:3,25;125:10,15,21,
22;126:9;127:1,2,6,18,
21
**Honorable (1)**
7:5
**hope (2)**
30:21;48:12
**Hopefully (1)**
17:4;46:16;55:13
**horrible (3)**

Min-U-Script®

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 136
of 147

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(7) forgot - horrible

45:24;47:10;85:10
**horribles (1)**
    18:24
**Hostetler (1)**
    56:9
**hotels (1)**
    43:12
**house (3)**
    30:20;34:8;95:5
**Housing's (1)**
    51:3
**huge (1)**
    14:8
**hugely (1)**
    77:20
**huh (1)**
    7:12
**hundred (4)**
    28:13;91:25;103:3;
    105:10
**hundreds (2)**
    13:24;115:12
**hung (2)**
    17:23;24:24
**hurts (1)**
    88:19
**hybrid (1)**
    36:23
**hypothetical (1)**
    96:13
**hypotheticals (1)**
    85:2

**I**

**idea (3)**
    87:25;99:8,18
**identify (1)**
    65:5
**ignore (1)**
    88:17
**illegal (2)**
    43:1,4
**imagine (1)**
    41:9
**immediate (1)**
    32:11
**impact (3)**
    51:13;55:5;108:20
**implemented (1)**
    69:25
**importance (1)**
    9:14
**important (14)**
    17:13;23:20;26:4,7;
    30:12;37:8;51:14;52:2;
    65:15;73:12;76:8;
    77:12;121:1;122:13
**importantly (3)**
    15:4,10;55:3
**impressive (1)**
    21:9
**inability (1)**

39:16
**inappropriate (3)**
    68:13;88:6;125:19
**inartfully (1)**
    43:21
**incidents (1)**
    9:23
**inclined (1)**
    11:8
**include (4)**
    103:15;112:25;
    122:3,4
**includes (1)**
    98:7
**including (5)**
    9:23;11:16;14:9;
    40:2;108:7
**inclusion (1)**
    98:14
**incomplete (2)**
    11:6;88:2
**inconsistency (1)**
    123:20
**inconsistent (2)**
    120:1,10
**indeed (2)**
    14:10;113:25
**indemnification (1)**
    52:25
**indemnity (2)**
    32:4,14
**independent (2)**
    70:4;79:18
**independently (1)**
    69:2
**indicate (1)**
    10:23
**indicated (1)**
    61:10
**indication (1)**
    50:9
**individual (21)**
    17:23;32:2;64:6;
    68:8,13;69:6,25;70:1,5,
    20;71:3;72:21;78:4;
    79:17;80:6;83:13;88:2;
    92:1,11;121:9;122:23
**individually (1)**
    83:17
**individuals (4)**
    38:7;43:9,18;89:22
**industry (1)**
    113:1
**inform (2)**
    58:22;94:8
**informal (1)**
    124:23
**information (77)**
    11:3;12:7;22:21;
    65:21;67:25;68:11,15,
    19,24;69:9,14;70:2,6;
    71:2,6,7,9;72:2,12,14,
    22;73:17;74:14;75:4,

20;76:10,19;77:21;
    78:2,12,13,20,21;
    81:20;82:17;83:1,1,8,
    13,20;84:3;85:9,23,24;
    86:9,17,20,22,24;87:3,
    7,8,11;88:3,14;89:2,5,
    11,15,23;91:11;97:25;
    98:19;100:14,22;
    101:18,21;102:5;
    105:2;106:3,17;109:1,
    15;111:22;112:22,23,
    25
**informed (1)**
    90:9
**in-glove (1)**
    103:4
**in-house (2)**
    67:18,18
**inquiry (4)**
    9:24,24;16:10,12
**insignificant (1)**
    38:16
**insolvent (1)**
    28:4;32:8;41:8,10
**inspecting (1)**
    34:7
**Institute (1)**
    96:16
**insur (1)**
    30:19
**insurance (37)**
    7:19;9:25;14:24;
    15:6,9;19:23,25;20:7;
    21:16;22:20;23:5;
    24:15;25:7,9;27:9;
    30:18,20,21,22;31:5,9;
    32:15,16,20;34:17;
    36:24;40:4;41:15;45:6,
    6,7,11,19,23;47:8;
    53:14;106:21
**insurance-policy (1)**
    112:25
**insurer (3)**
    24:22;30:8;47:11
**insurers (6)**
    10:2;18:5;24:17;
    32:19;92:4,5
**intend (1)**
    114:7
**intended (2)**
    26:13;98:21
**intention (3)**
    98:16;99:14,16
**intentional (2)**
    19:4;41:18
**intentionally (1)**
    14:16
**interest (6)**
    53:1;60:19;73:4,4;
    100:8;111:19
**interested (1)**
    9:2
**interesting (3)**

47:7;102:13;118:8
**interests (3)**
    105:1;117:4;124:15
**interim (1)**
    100:19
**interlineate (2)**
    103:15;104:10
**interlineation (1)**
    111:16
**interpreting (1)**
    97:5
**into (15)**
    18:9;19:23;25:10;
    31:9;40:5;53:2;56:22;
    60:4;62:6;92:12;
    102:17;108:16;111:14;
    115:13;123:23
**intruding (1)**
    83:25
**invading (1)**
    84:25
**invested (1)**
    17:7
**investigation (1)**
    80:21
**investigations (1)**
    80:12
**investment (1)**
    17:8
**invitation (1)**
    110:14
**invite (2)**
    107:7;124:13
**involved (3)**
    16:3;59:4;94:18
**issue (50)**
    11:4;16:14;26:22;
    27:2;42:9;56:11;57:11;
    58:3;67:21;68:4,17,18,
    25;69:7;70:7,8,9,13;
    72:15;73:2;75:2;78:15;
    81:1;82:24;83:25;
    90:10,12,25;91:8,18;
    94:17;96:11;97:21;
    98:5;101:23,24,24;
    102:4,17;112:8,16;
    114:18;115:15;119:15;
    124:12;125:18;127:1,
    5,13,16
**issued (1)**
    84:19
**issues (14)**
    41:15;64:4;65:18;
    79:16;84:22,23;86:18;
    89:8;91:17;94:11;
    95:13;105:20;106:22;
    113:9
**items (1)**
    7:20

**J**

**jail (1)**

88:11
**January (1)**
    30:9
**job (4)**
    33:12,13;54:24;
    87:16
**join (2)**
    119:1,16
**joinders (4)**
    63:14,21;66:25;73:3
**joined (2)**
    66:19;108:3
**joke (8)**
    28:6,12,20;29:14,20;
    31:24;37:10;38:17
**judge (4)**
    55:7;70:5;87:18;
    88:9
**judge's (1)**
    97:6
**judgment (5)**
    16:2;21:10;27:18;
    55:1,2
**judgments (1)**
    13:21
**Julian (1)**
    70:15
**JULY (2)**
    7:1;22:8
**June (1)**
    48:11
**justified (1)**
    17:18
**justifying (1)**
    120:8

**K**

**Karotkin (33)**
    35:6;36:7,9,12,15,
    17;50:19,21,23,24;
    51:1,3,7,10;52:7,9,15,
    19,21,23;53:11,13,22,
    24;54:3,6;61:19,22,24;
    62:1,3,5,7
**keep (9)**
    25:10;62:22;103:13;
    107:6,19;108:25;
    113:8;123:5,7
**KEIP (1)**
    71:8
**kidding (1)**
    11:5
**Kim (1)**
    62:20
**kind (12)**
    10:23;21:7;44:2,4;
    45:6,15;52:5,5;75:16;
    84:24;103:21;108:8
**kinds (2)**
    65:25;73:7
**kitchen (4)**
    17:25;49:3,4;50:7

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 137
of 147

**knew (2)**
11:22;30:8
**knowing (1)**
100:22
**knowledge (1)**
22:14
**knowledgeable (1)**
110:5
**knows (2)**
47:21;106:21

**L**

**label (1)**
54:25
**labels (1)**
25:20
**language (21)**
64:5;66:24,25;68:3;
73:7;74:12,25;83:13;
90:23;94:21;96:2,12;
98:1,5,13,15,20;99:10;
103:18;113:2;126:24
**large (2)**
63:12;93:17
**Lars (1)**
56:8
**last (8)**
11:15;24:5;51:12;
74:4;85:6;119:21;
124:11;126:19
**late (1)**
11:3
**late-coming (2)**
11:14;15:24
**later (8)**
17:17;18:23;26:11,
25;43:1,16;66:15;
123:19
**laundering (1)**
43:2
**law (24)**
29:10;46:6,7,7;47:8,
9,13;57:1;78:14,16;
80:21;81:16,17;82:5,7,
17;83:3,18;85:9;86:9;
87:14;88:4;93:10;
95:25
**lawful (2)**
42:18;89:16
**laws (1)**
79:21
**lawsuit (4)**
24:18,20;51:25;
110:9
**lawsuits (2)**
13:21;14:1
**lawyer (7)**
32:1;52:12,17;96:1;
106:20;107:13;108:3
**lawyers (23)**
12:8;91:20;92:16,20,
24;93:2,3,9;94:18;

95:15,19,23,25;96:7,
17,20;97:22;100:13;
102:16,19;103:8,10;
116:13
**leadership (1)**
115:10
**learn (1)**
82:3
**learned (1)**
20:6
**learns (1)**
79:17
**least (11)**
23:24;27:13;34:22;
41:16;64:4;65:8,15;
66:14;67:22;92:11;
111:5
**leave (3)**
76:1;111:20;124:24
**leaves (1)**
67:12
**leaving (4)**
29:19;52:3,5;61:25
**leery (1)**
124:7
**left (1)**
18:20
**legal (1)**
42:1
**legally (1)**
59:13
**legislative (7)**
75:14;83:25;84:5,25;
85:8,11;86:24
**legislature (1)**
46:5;75:17,17,21,23;
84:3;86:21
**legitimate (4)**
86:5;105:25;106:2;
109:16
**Less (1)**
66:14
**letter (1)**
60:24
**letters (1)**
30:8
**letting (1)**
67:17
**level (1)**
21:19
**liability (1)**
45:7
**life (1)**
46:8
**lift (3)**
108:1,7,9
**lift-stay (2)**
108:16,18
**light (2)**
35:4;79:7
**lights (1)**
54:23
**likelihood (1)**

15:11
**likely (1)**
18:9
**limit (1)**
18:6
**limited (3)**
86:8;108:21;116:22
**line (1)**
23:3
**lines (1)**
91:23
**list (5)**
63:19;72:20;103:9;
104:8;105:15
**listed (2)**
73:5;77:8
**literally (1)**
115:12
**litigating (4)**
40:1;93:5;94:14;
114:25
**litigation (12)**
26:23;40:5;57:19;
72:24;73:18;75:18;
77:19;86:22;94:11;
98:8;99:12;100:15
**litigations (1)**
115:11
**litigator (1)**
115:24
**little (6)**
9:19;13:18;54:11;
90:11;114:24;122:5
**live (5)**
34:5,10,11;98:10,13
**living (1)**
43:10
**London (1)**
42:4
**long (4)**
20:6;52:13;115:6;
127:20
**look (27)**
9:6;26:20;28:23;
30:11,17;37:6;43:23;
47:12;49:21;53:16;
58:9;67:4;71:25;73:13;
74:19;75:11;81:19;
83:12;90:7;94:16;
95:15;96:23;100:11;
106:2;111:11;121:11;
123:5
**looked (1)**
74:21
**looking (8)**
8:18;13:11;26:22;
34:9;38:21;67:5;71:2;
86:6
**loses (1)**
32:20
**losses (1)**
102:24
**lost (3)**

43:9;50:23;114:1
**lot (13)**
7:24;11:7;16:20;
27:11;34:8;44:15;
47:15;57:8,8;84:18,22;
96:18;98:4
**Lots (2)**
121:19,19
**lying (1)**
14:18

**M**

**magnitude (1)**
19:1
**maintaining (1)**
55:10
**majority (1)**
92:10
**makes (14)**
45:5;70:5;73:8;80:8;
81:1;86:11,11;97:1;
102:12;115:25;116:2;
121:2,22;122:16
**making (15)**
20:14;28:8;34:8;
35:4;59:23;69:6;78:23;
79:1,2,7;101:2;121:4,
6;123:11,13
**malpractice (1)**
45:7
**many (9)**
19:20;34:4;50:24;
93:8,9,10;94:8,10;
123:22
**marked (1)**
115:14
**market (1)**
34:19
**marking (1)**
70:17
**Markland (10)**
12:7,17;13:7;15:4;
27:13;33:15;38:4;
55:23;56:2,3
**Markland's (2)**
11:3;41:13
**Massachusetts (1)**
16:1
**material (6)**
77:14,15;79:16;94:7;
112:18,21
**materials (9)**
78:22;79:24;81:18;
82:1,2,3;92:16;93:23;
112:25
**matter (12)**
7:11,16;32:18;34:13;
47:8,9;54:16;56:18;
60:15;102:14;103:2;
127:9
**matters (3)**
57:18;58:3;105:20

**May (14)**
10:11;22:5;30:9;
38:15;41:8,8;47:10;
58:7;61:22;76:22;86:4;
89:3,24;105:24
**maybe (26)**
23:10,12,12;24:25;
29:20;33:1,1;38:15;
40:3,8;46:21;61:14;
66:6;70:7,7,9;86:8;
91:5,5;96:14;103:12;
108:22;115:22;118:17;
120:22;126:18
**MCCALLEN (55)**
91:13,14;92:3,6,9,22,
24;93:2,5,8,14,16,19;
94:23;95:1,7,10;96:4,6,
21,23;97:5,9,12,14;
101:10,12;102:7,10,12,
22;103:1,14,17,19;
104:3,5,7;105:11,19;
106:4,20;107:11;
109:15,17;111:12,17;
112:1,2,3,10,13;113:7,
9,11
**McCallen's (2)**
98:14;108:8
**mean (69)**
7:24;8:1;9:3,7;
11:19;12:25;13:10,13,
15;18:2;19:25;21:19;
23:16;24:13;25:4;
26:22;30:17;33:2,20;
37:6;39:19;41:2,2,23;
42:17;46:15,18;50:9;
52:11,12;53:16,23;
54:15;55:25;57:7;58:8,
18;59:23;60:7;67:17;
69:23;71:5;76:8;78:1;
79:7;80:25;82:16,19;
83:4,5;88:18;90:12;
93:2;96:14,16;98:10,
12;99:15;100:2,11,16;
101:17;103:21;110:13,
13;111:23;120:22;
125:7;126:22
**meaning (1)**
69:13
**means (8)**
10:14;16:20;17:11;
20:7;26:16;31:16,21;
73:23
**meant (3)**
25:4;38:16;112:5
**meantime (6)**
17:6;20:19;24:23;
26:2,25;127:14
**measured (1)**
46:2
**measures (1)**
14:17
**mechanisms (1)**
86:19

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 138
of 147

**meet-and-confer (1)**
109:3
**meeting (1)**
98:13
**meld (1)**
116:14
**member (3)**
60:13;73:16;96:15
**members (4)**
72:21;92:9;93:10;
115:9
**memorized (1)**
122:6
**mentioned (4)**
44:19;48:17;74:23;
112:14
**merits (1)**
23:4
**message (2)**
45:15;124:21
**metaphor (3)**
42:24;48:22,22
**middle (2)**
21:24;58:8
**might (20)**
11:8;26:24;27:10;
32:13;43:21,22,24;
46:21;48:9;50:2;59:13;
64:16;79:16;83:7;
102:16;106:17;110:25;
111:2,3,5
**Milbank (1)**
8:7
**million (35)**
9:18,18;13:22,23;
17:13;18:6,22;21:25;
25:5,8,20;26:16;27:25;
28:1,5,13,21,24;29:19;
30:2;32:17;33:8,22;
37:10;42:24;44:25;
47:18;48:24;49:6,12;
51:21;53:6,8;55:7;
88:10
**millions (2)**
13:24;115:13
**mind (3)**
51:22;54:9;73:9
**mindful (1)**
8:13
**mine (1)**
48:23
**minimal (1)**
55:5
**minimum (1)**
10:22
**minor (1)**
53:19
**minute (2)**
76:16;117:12
**minutes (2)**
51:12;64:6
**mischief (1)**
88:24

**mishandling (1)**
14:7
**misleading (1)**
14:16
**miss (1)**
22:18
**missed (1)**
76:23
**missing (3)**
83:10,11;110:3
**misuse (2)**
90:20;116:10
**misused (1)**
115:15
**modifications (1)**
113:22
**modified (1)**
101:5
**modify (3)**
116:15;120:21;122:2
**moment (2)**
68:12;108:20
**money (31)**
16:8,16,20;17:5;
18:20;19:13;20:13,15;
23:6;25:2,24;26:10,15;
27:11;31:11;32:25;
34:12;36:25;37:1;40:5;
41:4;43:6;45:2;47:15,
23;48:18;49:24;50:3;
52:3,25;53:23
**money's (1)**
25:15
**Montali (1)**
7:5
**month (5)**
43:16,16;46:9;49:22;
85:6
**more (19)**
17:11;18:9;24:8,9;
27:22;30:17;46:13,15;
49:6;54:11;55:3;60:7,
20;88:16;90:10;91:25;
108:22;110:4;112:11
**morning (9)**
7:6,7,8;5:34;3;39:5;
56:16;88:8;91:13;
127:20
**most (3)**
14:12;32:15;91:17
**motion (35)**
7:19;17:12;18:4;
21:8;48:5;49:5;50:2;
54:7;55:9,18,21;70:2;
71:7;72:1;100:12,12;
107:24;108:2,7,16,18;
116:2;117:2,15,17,19,
22;118:16,18,23;119:1,
3,4,16,21
**motions (9)**
37:11;43:15;119:5,7;
121:18;124:22,23;
126:15;127:11

**move (1)**
50:3
**moved (1)**
50:25
**moving (1)**
124:15
**much (10)**
8:4;16:8;21:14;24:8;
61:17;113:22;114:13;
121:14;125:3;126:14
**must (2)**
14:18;21:6
**myself (2)**
49:23;108:25

**N**

**name (6)**
20:4;32:1;39:9,11;
101:11;114:17
**narrow (7)**
83:9;87:9;88:15;
90:12,25;125:18;
127:13
**nationwide (1)**
14:11
**nature (5)**
31:9,10;39:22;
103:16;109:1
**near (1)**
50:10
**necessarily (3)**
24:12;68:15,16
**necessary (2)**
101:24;127:16
**necessity (1)**
11:11
**need (31)**
12:9;20:19;24:16;
25:22;26:25;30:14;
33:16;36:10,11;45:1,
22;59:11;61:7;65:2;
68:15;71:24;72:1,2;
78:16;90:11;98:9;
103:13;106:10;109:11,
12;117:2;118:13;
121:1;125:8;126:19,19
**needed (6)**
11:23;15:6;23:7;
31:16,21;33:23
**needs (9)**
8:18;9:4;25:6;26:17;
33:17;76:2;90:10;
104:25;121:25
**negotiations (1)**
94:10
**neighbors (1)**
34:7
**nest (1)**
9:4
**new (17)**
9:23,23;10:1;15:25;
23:8,8;27:9;28:21,22,

23,24;33:17,21;38:16;
66:7;68:3;82:20
**newly (1)**
40:18
**next (9)**
10:13;14:24;20:18;
43:16;46:9;55:22;
99:16;126:15;127:11
**NextEra (7)**
63:14,15;65:8,18;
66:18;73:3;113:18
**nice (1)**
41:7
**night (3)**
11:15;24:5;119:21
**nine-year (1)**
115:16
**Nobody (1)**
39:2
**noise (1)**
34:8
**nonbankruptcy (1)**
115:23
**non-bankruptcy (1)**
92:20
**none (1)**
60:12
**nonexistent (1)**
55:11
**nonproduction (1)**
120:9
**nonreceipt (1)**
120:9
**nor (2)**
49:7;53:19
**normal (2)**
22:4;61:15
**normally (1)**
119:4
**North (2)**
115:5,19
**nose (2)**
100:20,25
**not- (1)**
19:2
**note (3)**
51:14;52:2;53:24
**notes (1)**
62:21
**notice (1)**
95:16
**noticed (1)**
10:15
**notify (1)**
81:15
**notion (2)**
21:12;105:10
**notwithstanding (1)**
55:5
**number (5)**
41:17;63:1;66:24;
115:21;121:15
**numbers (1)**

23,24;33:17,21;38:16;
66:7;68:3;82:20

93:17
**numerous (2)**
80:24;84:13

**O**

**Oakland (12)**
57:7,11,12,22;58:4,4,
11,13;59:8,17,19;60:6
**Oakland- (1)**
57:18
**object (4)**
26:10;32:11,13;
113:3
**objecting (1)**
32:12
**objection (25)**
22:7;33:7;54:3;56:5,
21;61:8;63:14,17,21,
22;64:7,8;65:12,19;
67:1;68:9;74:4,10,13;
91:17,17;107:9;
112:15;124:16;126:10
**objections (7)**
55:16;65:8,9;66:20;
67:13;68:6;76:23
**objector (1)**
86:5
**objectors (2)**
63:11,12
**observed (1)**
43:7
**obtain (2)**
21:18;57:2
**obtained (2)**
42:1;60:5
**obviously (7)**
53:25;62:23;94:5;
97:6;111:20,23;113:2
**occurs (1)**
18:24
**off (3)**
48:8;86:14;117:21
**Office (3)**
77:8;81:24;88:12
**officer (6)**
19:3;26:7;54:22;
60:4,12,25
**officers (31)**
19:20;23:8,8;24:24;
26:13,23;28:3,25;
31:19;32:2,6,16;36:4,
13;37:15;43:19;44:5,
22;45:1,12;46:13,19,
23;47:3,24;49:1;50:6;
51:16;52:2;53:13;55:8
**official (5)**
8:8;71:9;99:17,17;
121:15
**officially (1)**
72:19
**offshore (3)**
16:22;42:18;43:2

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 139
of 147

**old (1)**
99:25
**once (1)**
21:8;50:12
**one (58)**
11:6,16;14:13;16:4;
17:12,13;18:3;20:9;
21:5;26:21;27:2;35:6,
9;36:19;38:6;39:2;
45:25;48:14;52:22;
54:2,4;55:22;57:17;
58:7;60:18;63:1,18;
64:25;65:9;67:16;
70:15,20;72:10;73:12,
23;74:24;76:9,23;81:9;
84:11,11;87:5;89:18,
18;90:5;91:7,18;94:4,
5;96:13;97:7,16;108:1;
112:11;120:21;122:4,
7;124:16
**ones (7)**
41:16;46:24,25;
73:24;96:17
**one's (1)**
43:20
**ongoing (1)**
56:5
**only (22)**
7:20;8:4;15:14;
20:13;35:8;36:17,19;
38:8;9;42:1;43:17;
53:4;57:5,5;65:7;
67:12,21;88:19;94:4;
96:17;119:19;126:14
**oOo- (1)**
7:2
**open (7)**
63:19;65:5;91:8,18;
114:18;123:13;124:17
**operates (1)**
80:1
**opinion (1)**
59:12
**opponent (1)**
110:4
**opportunity (3)**
90:24;111:6,8
**oppose (1)**
120:23
**opposed (1)**
21:8
**opposing (2)**
8:10,11
**opposition (5)**
11:6,23;54:1;118:1;
123:25
**optics (2)**
29:4;55:5
**order (72)**
7:3;39:15,21;47:14;
55:19;61:13;62:9;63:5,
8;64:19;65:25;68:8;
69:1,8;72:17;73:6;

76:5,7,14,18;77:1,17,
19,21;78:17,18,19;
79:18,22,23;80:1,4;
81:3,15;82:14;84:10;
86:15;87:18;89:12,12;
91:21;92:17;93:20;
95:2,18,20;96:9;97:2,
18,21;98:2;104:15;
108:20,24;112:19;
114:1;115:22;116:5,
14,18;118:5,18,19;
120:1,2,8;121:25;
126:19,23;127:3,14,16
**orders (7)**
75:18;84:7,14;87:1;
95:13;96:25;97:7
**ordinary (1)**
48:19
**original (3)**
11:22;22:19;24:6
**Os (1)**
33:17
**others (1)**
57:22
**otherwise (5)**
48:19;65:20;66:5,10;
76:11
**ought (2)**
8:19;87:12
**out (48)**
13:8,24;15:25;17:3;
18:20;19:6;21:7;23:5;
24:24;25:10;30:14;
33:9;34:14;37:14;38:5;
40:3;42:2;44:3;48:18;
49:11,24;54:11;65:19;
66:22,23,24;67:9;73:5;
74:5,7,8,21;77:12;
78:2;79:8;85:15;88:10;
89:21,22,23;93:17;
102:9,13,17;108:19,23;
109:1;123:22
**outcome (5)**
41:10;45:9;47:11;
49:5;100:8
**outflow (2)**
87:7;90:19
**outrage (1)**
88:10
**outside (18)**
67:17,22,23;72:24;
73:18;93:22,23;94:23;
95:5;97:18;98:22;
99:18;116:13,16,20,21;
122:9,21
**outstanding (5)**
9:17;64:12;72:11;
74:4;76:24
**outweighs (1)**
55:11
**over (12)**
34:6,6,8;49:22;
53:20;55:7;65:1;81:1;

103:3,23,24;124:16
**overboard (1)**
68:12
**overrule (3)**
55:15;61:8;107:9
**overseas (1)**
42:1
**oversight (1)**
14:3
**overview (1)**
36:11
**own (8)**
9:4;20:14;33:5;
49:10;53:23;54:8;
92:11;125:6

**P**

**page (5)**
15:12;21:13;78:2;
81:21;82:19
**pages (4)**
15:14,21;67:6;118:3
**paid (7)**
16:9;47:22,22,25;
49:1;92:5;99:24
**paper (5)**
28:22;34:3,4;55:6;
82:10
**papers (7)**
11:22;15:25;24:7;
33:17;42:10;48:10;
75:1
**parade (1)**
18:24
**Paradise (1)**
34:11
**paragraph (5)**
76:17;81:8,10,11;
114:8
**parallels (1)**
24:20
**parent (4)**
35:22;37:1,16;38:8
**pari (1)**
51:18
**part (4)**
16:19;41:15;113:25;
114:2
**participate (1)**
108:8
**participating (1)**
93:11
**particular (6)**
68:8;70:2;71:2;72:3;
105:21;121:5
**particularly (1)**
34:2
**parties (17)**
57:1;60:18;68:16;
69:1;77:21;96:9;97:16,
17;98:7;108:22;
113:19;116:1;118:10;

120:12,13;121:22;
126:10
**party (30)**
39:2;65:11;66:1,3,4,
9;68:24;69:13,14;70:4,
11;71:17;76:18;77:15;
81:15;93:24,25;96:3;
97:24,25;98:1,25;
101:21;116:2,4,9;
118:14;120:2,3,5
**Pascuzzi (47)**
76:16,25;77:5,6,6,7,
11,25;78:3,7,9,12;79:3,
6,10,13,15,20,22;80:2,
5,11,15,17,20;81:3,6,9,
11,14,22,25;82:9,12;
83:5;85:3;87:20;91:6;
124:18;125:5,12,13,15,
21;127:8,15,18
**Pascuzzi's (3)**
63:24;75:24;90:23
**passes (1)**
87:11
**passi (1)**
51:18
**past (3)**
16:3;41:13,14
**Paul (1)**
77:6
**pay (7)**
18:9,23;30:20,21;
49:11;53:5;102:24
**paying (7)**
13:24;28:5;31:24;
35:5;37:15;45:14;
52:11
**payment (2)**
26:11;32:11
**payouts (1)**
14:9
**pays (1)**
19:13
**peace (1)**
51:22
**peanuts (1)**
43:8
**pejorative (2)**
9:7;25:4
**penalty (1)**
78:17
**pending (3)**
40:15;48:15;62:23
**PEO (1)**
112:23
**people (33)**
12:8;13:11;25:25;
32:11;35:8;46:21;
48:25;53:9;69:9;74:25;
75:19;79:11,15;88:1,
16;89:2,23;93:1;95:24;
96:15,18;99:10,19;
102:23;104:8;108:1;
111:18,22;117:15;

119:3,7;120:4;123:13
**per (2)**
80:1,3
**perception (1)**
47:20
**perfectly (2)**
105:25;109:16
**perform (1)**
68:14
**performing (1)**
70:8
**perhaps (4)**
34:14;58:6;60:10;
118:25
**period (9)**
10:4;11:6;12:17;
16:4;30:22;34:15;
102:3,3;115:16
**permission (1)**
80:18
**permitted (4)**
65:20;66:5,10;72:13
**person (18)**
54:21;78:4;80:9,11;
82:18;83:1;85:14;86:7,
22;87:14;101:18,18,
20;110:1,3,8;114:8;
121:6
**personal (1)**
22:14
**personnel (3)**
81:16;82:6,9
**person's (1)**
79:18
**perspective (4)**
30:6;103:17,19;
105:22
**petition (2)**
47:8,9
**PG&E (19)**
7:11,16;13:24;16:6;
34:6,8;40:2,2;58:5;
59:4,8;80:8,24;89:10;
102:25;104:2;114:25;
115:13;120:6
**ph (4)**
19:5;24:11;62:6,21
**phone (9)**
56:15,17,18;62:25;
78:23,23;113:13,16;
120:18
**phrase (1)**
103:21
**pick (1)**
101:7
**picking (1)**
78:23
**pictures (1)**
34:4
**piece (2)**
82:10
**pin (1)**
54:16

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 140 of 147

**pinning (1)**
50:12
**Pino (19)**
56:15,16,16;57:4,8,
24;58:1,21;59:11,15,
21,25;60:2,3,10;61:2,5,
18,20
**place (14)**
14:17;25:13;30:7;
47:4,4,5;63:8;74:11,
13;86:15;107:1,4;
126:23;127:2
**placed (1)**
120:2
**places (3)**
118:9;120:3,5
**plaintiffs (1)**
14:14
**plaintiff's (3)**
32:1;57:10;107:13
**plan (9)**
15:23;34:15;47:20;
49:10;50:10;51:13;
94:10;106:18,18
**plausible (1)**
9:22
**play (4)**
40:5;45:12;82:19;
102:13
**played (1)**
54:11
**players (1)**
123:22
**plays (1)**
45:20
**pleadings (1)**
77:9
**pleasant (1)**
46:7
**Please (2)**
25:21;62:16
**pleased (1)**
63:11
**plenty (2)**
8:5;49:4
**pocket (1)**
47:18
**podium (1)**
77:1
**point (42)**
9:15;17:1;18:17;
19:10,11;20:22;21:5;
22:18;25:1;29:24;
31:15,22;33:2,14,35:7;
48:5;52:17;66:22;
69:25;71:1,23,24;
78:11;86:4,6;97:6;
104:16;107:10;108:6;
111:24;112:13;117:7,
12;119:25;120:7;
121:4,13;123:3,4,7,17;
125:19
**pointed (1)**

13:7
**points (2)**
21:1;76:8
**policies (9)**
9:17;10:14;12:21;
13:9;15:11;32:18;
41:15,24;47:4
**policy (26)**
9:17,18;10:3,8,20,
21;16:4,5,6,7;18:7;
20:12,14,14,23:5;
24:19;25:9;27:4,4;
28:2;30:13,18;31:3;
32:12,18;33:23
**policy's (1)**
35:2
**pony (1)**
19:22
**position (11)**
38:13;43:25;45:18;
76:13;91:19;94:2;97:1;
106:20;123:11;124:1;
126:11
**positions (2)**
30:12;115:10
**possession (1)**
124:9
**possibility (1)**
42:7
**post- (1)**
47:8
**post-petition (7)**
18:11;27:20;31:25;
46:1,10;47:13;51:18
**potential (8)**
56:25;59:5;81:17;
83:18;86:9;88:3;89:25;
119:15
**Power (3)**
63:21;64:1;88:1
**practical (2)**
102:14;103:2
**practice (2)**
89:16;120:10
**pre- (1)**
47:7
**predict (1)**
33:19
**predisposing (1)**
100:17
**preference (2)**
10:21;117:1
**prejudiced (1)**
110:6
**preliminarily (1)**
23:24
**preliminary (1)**
21:2
**prepare (2)**
8:4;108:14
**prepared (2)**
62:21;112:25
**pre-petition (6)**

10:21;18:8;27:4,10;
47:6,12
**present (1)**
55:12
**presentation (2)**
54:14;55:16
**presented (2)**
13:21,24
**presiding (1)**
7:5
**presumably (1)**
23:6
**presumes (1)**
53:3
**pretty (4)**
96:5;98:16;112:24;
123:12
**prevent (3)**
78:19;79:22,23
**preventing (1)**
75:21
**previous (1)**
48:17
**previously (1)**
91:17
**primarily (1)**
40:5
**primary (2)**
23:23;65:23
**principal (1)**
65:18
**priorities (1)**
27:19
**prioritization (1)**
33:20
**priority (4)**
27:3,3,6;32:21
**priority's (1)**
27:10
**probably (7)**
39:8;45:13;49:14,25;
55:6;87:1;95:3
**probation (1)**
80:24
**problem (11)**
12:6;22:22;45:25;
58:10;87:19;90:19;
105:15;116:1;123:5;
124:9,14
**problems (1)**
32:9
**problem's (1)**
73:25
**procedure (3)**
89:15;109:2,10
**procedures (1)**
124:23
**proceeded (1)**
96:24
**proceeding (4)**
40:16,18;88:15;
93:12
**proceedings (2)**

80:25;127:22
**process (10)**
12:3;57:20;104:23,
25;106:19;108:11;
110:22;116:5;120:25;
121:1
**produce (6)**
89:12,13;90:21;
103:22;121:5,21
**produced (9)**
68:11;91:21;92:16;
94:7;95:20;116:3,4;
120:12;121:21
**producing (5)**
66:3;97:24;116:2;
118:10;124:7
**production (6)**
103:6,9;115:24;
118:14;120:9,25
**professional (2)**
45:7;56:24
**professional-eyes-only (1)**
112:18
**program (2)**
44:17;45:23
**progress (3)**
50:1;63:11;64:18
**prohibit (1)**
83:5
**prohibits (1)**
77:14
**promptly (1)**
73:8
**pronouncing (1)**
101:10
**proper (1)**
48:9
**property (1)**
100:1
**proposal (1)**
65:16
**propose (2)**
74:25;124:10
**proposing (1)**
103:4,5
**proposition (2)**
16:1;87:6
**prosecuted (1)**
14:20
**protected (3)**
9:14,15;84:4
**protecting (3)**
43:6;46:18;118:9
**protection (4)**
21:16;43:19;44:4;
53:14
**protective (53)**
39:15,21;62:8;63:5,
8;64:19;65:25;69:1,8;
72:17;73:6;75:18;76:5,
7,14,18;79:18,22,23;
81:15;84:6,10,13;
86:15;87:1,17;91:21;

92:17;93:20;95:2,13,
18,20;96:9;97:2,18,21;
98:2;100:7;104:15;
108:20,24;115:22;
116:5,14,18;118:5,18,
19;120:1,2,8;121:25
**protective-order (5)**
68:18,25;69:5;70:12;
75:2
**provide (4)**
15:17;52:25;78:6;
79:21
**provided (2)**
76:10;81:12
**provides (2)**
56:23;66:9
**province (2)**
75:14,17;86:24
**provision (16)**
47:5;65:24;66:23;
68:25;74:12,13;75:16;
77:13;83:22,24;84:24;
86:13;93:20;97:21;
116:13;126:20
**provisions (2)**
41:17;47:4
**public (3)**
14:16;21:14;89:14
**PUC (1)**
80:24
**punitive (1)**
41:18
**purchase (1)**
16:3
**purpose (2)**
77:16;110:14
**purposes (2)**
48:8;100:1
**pursuant (3)**
91:21;92:16;95:20
**put (30)**
10:22;23:22;28:3,11;
31:11;33:16;42:24;
47:18;48:24;51:11,19,
21;54:15,25;63:8;
74:11,13;76:11;81:21;
86:15;88:10;95:16;
98:5;122:22,22;
123:11;125:9,23;
126:22;127:2
**puts (3)**
17:13;45:18;116:8
**putting (8)**
14:17;20:15;48:18;
49:3;68:12;78:1;
120:12;126:11

## Q

**qualifier (1)**
95:5
**quarterly (1)**
38:22

Case: 19-30088   Doc# 2921   Filed: 07/10/19   Entered: 07/10/19 14:49:14   Page 141
of 147

**quasi (1)**
75:20

**quasi-attorney (1)**
74:15

**question's (1)**
13:1

**quote (1)**
87:17

## R

**rainy (1)**
48:24

**raise (2)**
42:7;113:3

**raised (6)**
37:24;42:9;56:13,21;
65:18;67:17

**raising (1)**
112:17

**Range (2)**
115:4,20

**rather (5)**
12:1;26:13;59:21;
120:12;127:8

**ratio (1)**
37:3

**rationale (1)**
75:1

**reach (2)**
48:18;125:5

**read (10)**
7:23;15:20;22:15;
24:5;34:3;48:10;55:6,
6;99:16;119:19

**Reading (2)**
18:14;119:21

**reads (1)**
98:21

**real (8)**
25:9;33:18,19;34:10,
11;50:13;68:17;96:13

**realistically (1)**
34:11

**reality (1)**
54:19

**realize (2)**
49:24;100:16

**reallocated (1)**
53:9

**really (28)**
7:24;9:2,15,23;
11:11,24;12:2,22;
16:13,15;18:21;20:1;
21:6;33:4;44:17;45:10,
22;51:12;54:16;60:8;
73:2;76:8;84:25;91:19;
93:20;98:4;101:24;
121:14

**realm (1)**
44:3

**reason (14)**
9:25;24:14,15,17;

27:22;59:4;65:7;83:22;
86:5;94:4,5;95:11;
99:23;123:14

**reasonable (1)**
34:15

**reasonably (2)**
117:3;123:25

**reasons (7)**
26:20;44:4;55:15,18,
19;61:10;71:23

**recall (1)**
42:10;55:19

**receipt (1)**
120:9

**receive (3)**
116:11,16,21

**received (1)**
115:12

**receives (1)**
74:14

**receiving (6)**
69:13;70:4;77:15;
81:15;101:21;105:3

**recently (1)**
28:13

**recipient (1)**
87:8

**recognition (1)**
73:6

**recognize (5)**
9:13;27:25;30:12;
39:7;65:24

**recognizing (1)**
33:18

**record (6)**
57:21;59:23;61:5;
112:3,3;119:18

**refer (1)**
23:2

**reference (2)**
42:9;49:21

**referred (1)**
27:3

**refiling (1)**
40:19

**refuse (2)**
78:6;111:9

**regarding (8)**
57:21;58:3;93:25;
96:3,25;98:25;99:4,7

**regardless (1)**
86:23

**regime (1)**
100:7

**regular (2)**
23:5;25:7

**regulate (2)**
79:3;84:20

**regulated (2)**
75:19;84:21

**regulation (2)**
78:15;86:19

**regulations (1)**

56:23

**regulators (2)**
76:10,13

**regulatory (8)**
78:24;80:13,25;
81:16;82:6,8;85:9;
87:14

**reinvent (1)**
125:17

**reiterate (1)**
44:16

**relate (3)**
24:1;47:5;84:16

**related (6)**
40:4;41:1;65:19;
94:11;98:8;112:13

**relates (3)**
65:9;67:22,23

**relating (4)**
32:21;41:14;57:18;
93:12

**relation (3)**
26:21;27:2;33:20

**relationships (1)**
59:13

**relative (1)**
47:15

**relatively (3)**
14:19;49:8;53:19

**release (8)**
85:6,7,16;86:2,5;
87:12;105:10,13

**released (1)**
85:18

**relevant (2)**
41:21;43:17

**relief (16)**
54:3;80:9,11;100:14;
108:21;117:1,15,17,20;
118:16,18,23;119:5,8,
22;123:18

**rely (3)**
12:7;51:17;65:3

**relying (1)**
12:1

**remaining (1)**
61:8

**remains (1)**
72:23

**remanded (1)**
118:11

**remarks (1)**
8:15

**remember (3)**
39:9;87:4;114:17

**remove (1)**
33:22

**reorganized (1)**
18:8

**repeating (1)**
108:25

**reply (4)**
15:24;21:6;125:16;

126:13

**report (4)**
78:16;80:21;82:5;
85:5

**reporting (1)**
79:15

**represent (12)**
34:23;57:9,18;60:5,
18;91:20;93:10,25;
98:7;115:9,17,21

**representation (6)**
57:13;58:2,15;59:22;
60:23;61:6

**representatives (1)**
117:5

**represented (1)**
70:2

**representing (3)**
59:2;80:7;99:22

**represents (4)**
53:15,25;91:24;
115:18

**request (36)**
66:9;68:12,17,18,18;
69:6,15,22;70:3,5;
71:14,24;77:24;78:13;
80:1,8;85:4;98:14;
99:13;101:18,20,22;
105:25;106:3;109:15;
111:1;115:25;120:16;
121:2,10;122:16,17,24;
123:12,14,24

**request-by-request (1)**
68:23

**requested (3)**
116:7;120:17;123:25

**requester (1)**
86:3

**requesting (3)**
118:14;120:3,4

**requests (7)**
68:20;98:23;100:21,
22;101:1,3;121:23;
123:9,13

**require (1)**
120:11

**required (2)**
59:14,15

**requires (1)**
112:19

**requiring (1)**
56:1

**reservations (1)**
24:18

**resist (1)**
109:2

**resolution (1)**
65:12

**resolve (3)**
68:3;74:10;111:24

**resolved (1)**
54:10;63:2,12,13,20;
64:22;66:20;67:1,19;

90:11;91:18

**respect (13)**
67:22;73:15;89:20;
94:19;98:6;99:1,1,9,16,
20,22;113:23;121:17

**respectfully (2)**
25:23;109:10

**respond (9)**
58:9;68:21;73:25,25;
100:22;120:21;122:25;
125:14;127:12

**responded (2)**
33:6;80:3

**response (8)**
7:25;8:5;21:9;69:23;
73:21;77:24;78:13;
127:10

**responses (1)**
118:23

**rest (1)**
92:20

**restrict (1)**
89:13

**result (3)**
9:22;13:21;16:7

**retained (5)**
92:13;93:25;98:7,24;
99:9

**retainer (2)**
52:12,14

**retention (1)**
56:5

**returns (1)**
17:8

**reveal (1)**
78:14

**revealed (1)**
81:17

**reverse (2)**
77:1

**review (2)**
60:11,24

**reviewed (1)**
56:19

**reviewing (1)**
62:20

**revisit (1)**
118:17

**Richard (2)**
62:14,17

**right (149)**
7:14,20,22,22;8:6,15,
22,23,24;9:12,20;10:5,
10,13,16,18,18;12:4,
11,19,23;13:17,19;
14:3,5,22,25;15:1,2,8,
19,22;17:3,6;18:14;
19:3,8;20:7,17,20,20;
24:9,20;26:17;27:8,22;
29:11;30:2,3,10,24;
31:18,21;32:10;33:11;
34:15;35:9,17,21;36:2,
3;37:1,21;38:3,10;

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 142
of 147

39:20;40:16,17,20,22,
23;41:11;42:11,13;
46:7,12;47:2,14;50:10,
11;52:16,21;56:4,14;
57:6;59:9;62:8,11;
63:6;67:6,11;69:12,18;
70:19;71:4,14,20;
73:11,14,19;74:6;
76:21;77:10;79:19;
80:2,5;82:20;86:4;
89:1;90:6;92:2,5;93:1;
94:13;95:3,8;96:23;
99:1;100:5,14,19;
101:8,13,16,20;102:1;
104:24;105:22;107:5,
8;109:10,14;110:19;
112:8,17;113:13;
114:3,18;115:2;
116:19;117:16,18;
121:7;122:10;126:4,7,
16,25,25
**rights (1)**
24:18
**ripe (1)**
102:4
**rise (1)**
7:4
**risk (15)**
9:16;10:23;16:10,13;
27:12;29:19;33:20;
49:2;51:20,25,25;82:4;
110:5;112:20,21
**risks (3)**
27:25;33:18;54:21
**road (2)**
112:16;119:22
**role (7)**
38:12;54:17,17;70:8;
71:6,9;121:16
**room (3)**
46:1;53:3;88:8
**rug (11)**
16:20,23;25:2;26:15;
30:18;33:9;34:1;42:25;
44:23;48:24;49:12
**rule (5)**
74:2;75:4,5;97:16;
103:24
**rules (9)**
21:10;56:23;59:14;
69:5;76:20;84:2;85:4,
17;100:17
**ruling (1)**
72:7
**run (1)**
110:15
**running (1)**
46:19
**run-of-the-mill (1)**
45:6

## S

**safely (1)**
16:21
**safety (2)**
14:17;21:16
**same (23)**
23:19;28:2;32:17;
33:10;36:3;47:4,5;
58:22;63:23;68:14;
69:6;70:8,21,22;76:13;
97:20,20;105:8,8;
117:5;122:9,23;126:11
**SAN (4)**
7:1;40:3;51:3;115:1
**sanctions (3)**
78:17,18;82:5
**satisfaction (1)**
61:10
**satisfied (4)**
55:10;56:10;60:23;
65:12
**satisfy (2)**
20:13;114:11
**saying (25)**
12:7;14:16;20:16;
30:9;31:4;33:3;44:6;
53:3;74:19;85:10;
86:16;89:14,24;90:4,
18,18;96:14;100:17;
107:12,19;109:14,17;
121:8;122:15,22
**scope (1)**
77:13
**screening (1)**
87:11
**scrutiny (1)**
9:2
**sealed (1)**
39:19
**sealing (1)**
39:22
**season (1)**
34:14
**second (7)**
54:18;63:13;64:3,6;
65:1;72:10;102:8
**second-guess (1)**
54:19
**secondly (1)**
21:12
**section (11)**
66:23;67:1,5,6;74:8;
77:13;78:17;118:3,5,9;
120:5
**sections (2)**
122:5,6
**securities (3)**
14:15;40:21;84:21
**seek (3)**
72:12;80:9,11
**seeking (2)**
68:9;117:1
**seeks (1)**
60:15

**seem (1)**
126:12
**seemed (1)**
21:7
**seems (10)**
9:21;83:9;85:13;
87:10;117:2;118:12;
124:8;125:7;126:10,22
**sees (1)**
71:11
**seized (1)**
12:14
**selected (1)**
15:14
**self (1)**
41:5
**self- (1)**
45:22
**self-insurance (8)**
20:3,4,7;25:17,22;
31:7;41:5;44:17
**send (5)**
45:16;90:2;103:7,23,
24
**sends (1)**
109:15
**sense (10)**
41:2;50:2;53:18;
54:13;55:14;70:5;
85:22;97:1;118:25;
121:22
**sent (2)**
30:8;104:8
**sentence (4)**
66:7;74:24;81:9;
99:16
**separate (6)**
24:18,21;69:13;89:8;
92:13;99:12
**separately (1)**
123:8
**sequencing (1)**
10:5
**serious (1)**
81:1
**served (1)**
46:17
**serves (1)**
54:22
**serving (1)**
43:18
**session (1)**
7:4
**sessions (1)**
15:7
**set (6)**
17:6,7;18:22;21:25;
26:14;28:24
**set-aside (1)**
44:23
**setting (3)**
47:23;53:6;105:23
**settlements (1)**

13:22
**seven (2)**
14:1;126:8
**shall (1)**
81:14
**shape (1)**
86:14
**share (5)**
41:7;73:17;105:14;
106:21;111:18
**shared (1)**
96:11
**shares (1)**
88:15
**sharing (4)**
91:11;96:25;110:6;
111:21
**sheet (1)**
81:19
**Sheriff's (2)**
115:4,20
**Ship (4)**
57:9;58:4,5,5
**shoes (2)**
99:25;102:25
**short (4)**
12:17;91:9;102:3;
125:17
**show (7)**
66:5,9;72:12;73:3;
79:16;103:9;120:11
**showed (2)**
34:4;39:8
**showing (2)**
107:6;116:3
**shows (1)**
118:13
**shred (1)**
84:23
**shuffle (1)**
114:1
**sic (3)**
25:10;43:25;47:12
**Side (3)**
28:2;49:9;111:21
**sides (1)**
90:12
**sign (6)**
95:17;97:16,17;98:1,
2;116:10
**signed (3)**
46:25;87:18,19
**significant (3)**
16:8;37:11;46:9
**signing (1)**
97:22
**silent (1)**
76:13
**similar (1)**
41:25
**similarly (2)**
21:17;111:18
**simple (4)**

21:7;87:10;94:4;
116:19
**simpler (1)**
54:25
**simplicity (1)**
53:17
**simply (9)**
62:22;68:18;76:18;
87:25;97:16;111:24;
119:25;120:7;122:2
**single (1)**
84:23
**sit (2)**
15:20;21:15
**sits (2)**
16:21,22
**sitting (2)**
40:1;88:7
**situated (2)**
21:17;111:18
**situation (4)**
44:3;55:11;102:15;
123:16
**situations (2)**
100:20;122:15
**six (1)**
14:1
**sixty (1)**
15:21
**sixty-four-dollar (1)**
8:9
**six-year (1)**
16:10
**SLACK (145)**
62:10,12,13,14,17,
17,19;63:3,7,17,20,25;
64:2,11,15,17,22,24;
65:4,7,11,15;66:16,18,
22;67:3,6,10,12,15,21;
68:6;69:7,12,19;70:1,
19,23;71:1,5,14,16,20,
22;72:10;73:11,15,19,
22;74:2,4,7,10,23;75:7,
10,14;76:1,2,5,7,21;
81:21;82:15,21,23;
83:11,17;84:9,12,16,
18,20;85:20,22;86:1,4,
12;87:22,25;88:5,6,21,
24;89:6,8,17,19;90:2,6,
8,14;91:2,4,16;92:14;
94:25;96:11;98:9,15;
99:1,5,7;100:5,10,19;
101:6,8,16,20;102:2,
12;103:4,22;104:10,13,
20,22,24;105:6;108:6;
113:23;114:4,6,18;
120:20,24;121:8,20;
122:12,19,21;123:2;
125:3,9,22;126:1,4,9,
16,21,22;127:1,5,9
**Slack's (2)**
123:10;124:16
**slippery (1)**

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 143
of 147

104:11
slope (1)
104:11
small (2)
48:25;49:8
Smith (1)
103:24
solution (1)
105:16
solve (1)
58:10
solved (3)
73:25;103:14;105:15
solvency (1)
41:9
solvent (3)
52:24;53:4,5
somebody (17)
25:20;66:2,5,10;
76:22;82:16;85:22;
87:12;88:7,12;89:9;
96:12;98:16,18;99:8;
105:6;115:25
somebody's (2)
49:10;90:20
somehow (5)
18:7;32:1;50:3;84:5;
104:15
someone (8)
28:19;65:20;67:17;
80:1,7;88:14;99:24;
110:6
something's (1)
74:16
sometimes (1)
24:17
somewhere (1)
97:13
Sonoma (3)
63:20;64:1;66:25
sooner (1)
17:4
Sorry (7)
17:23;50:23;67:18;
87:6;112:10;113:17;
118:2
sort (5)
12:9;69:22;82:16;
89:14;123:23
sought (1)
56:22
sound (3)
11:22;98:10;112:5
sounded (1)
22:25
Sounds (1)
66:17
sources (2)
12:8;36:25
South (2)
42:11,16
Southern (1)
51:8

space (1)
84:25
speak (2)
77:1;94:18
SPEAKER (1)
126:6
speaking (6)
77:2;91:11;92:6;
93:3;95:16;113:18
special (3)
9:1;52:12;102:17
specialty (3)
96:18;110:7,9
specific (13)
24:9;69:9;71:24,24;
72:1,1;97:10;98:6;
99:13;100:20,25;
113:4;121:23
specifically (3)
17:11;74:20;116:16
specifics (2)
10:4;109:2
specified (1)
114:8
spectrum (1)
121:22
speculate (1)
33:6
spending (1)
7:24
spent (1)
23:5
spiteful (1)
89:18
split (1)
35:13
spokesperson (1)
114:15
spot (1)
54:15
staff (1)
12:8
stand (5)
17:24,24;33:16;
48:13;76:22
standalone (1)
81:11
standard (3)
8:17,19;14:12
standing (3)
35:16;85:3;119:15
standpoint (1)
48:16
started (1)
114:25
state (19)
59:18;62:15;64:5;
74:5,18,20;75:3;76:13;
77:8;78:16;80:7;86:19;
89:20;93:11;100:15;
108:9,12;110:15;
118:11
state-agen (1)

63:24
stated (1)
55:20
statement (1)
60:21
States (1)
88:9
stating (1)
39:11
status (2)
62:23;104:16
statutes (2)
75:11;86:23
stay (21)
50:7;54:23;100:15;
104:21;107:20;108:1,
7,9,21;110:15;117:1,
15,17,20;118:16,19,23;
119:5,8,22;123:18
stayed (8)
13:12,18;93:16;98:8;
108:3,5;119:7;124:17
Stephen (1)
50:24
steps (1)
99:25
STERN (6)
113:15,17,18,21;
114:11,12
stick (1)
123:9
sticking (2)
25:2;124:19
still (21)
8:10,11;18:20;19:4,
5;26:16;32:3;43:10;
48:15;49:8;62:23,24;
64:2,3,12;73:23;87:5,
19;98:22;99:8;118:15
Stone (105)
8:7,7,9,11,15,24;9:1,
6,9,11,13,21;10:6,8,11,
13,18;11:1,10,13,18,
20;12:5,11,13,15,20,
24;13:3,5,7,14,17,20;
14:5,8,22,25;15:2,4,9,
16,19,22,24;16:18,24;
17:1,4,7,10,15,18,21;
18:1,3,13,15,17,19;
19:7,9,11,14,17,19,24;
20:2,5,8,11,17,21;
31:23;33:18;36:19;
39:1;44:14,15;45:4,17;
46:4,11,13,20,22,25;
47:3,17,25;48:7,12,16;
49:14,16,18,20;50:11,
15,18;51:16,24;52:23;
54:15;55:16
stones (1)
89:10
stop (1)
109:25
street (1)

38:16
stricken (1)
98:1
strictures (1)
118:13
strikes (1)
76:15
struggled (1)
54:8
stuff (3)
90:4;111:21;123:25
sub (1)
37:1
subdivision (1)
116:15
subject (4)
37:25;78:18;80:24;
82:4
submission (1)
11:14
submit (2)
22:14;125:23
submitted (3)
23:21;60:11;127:13
subro (7)
106:5;107:13;
109:11,18;110:1,3;
122:10
subrogation (38)
64:8;67:24;72:11,24;
73:10,16;77:3;91:10,
15;92:3,19;93:2,6;
94:2,5;96:1,7;98:6,8;
99:22,23;100:13;
101:25;102:19;103:7,
15;104:1,11,15;
106:22;115:7;116:13;
122:11,15,16;123:16;
124:17;126:24
subsequent (2)
18:25;58:18
subsequently (1)
113:22
subset (1)
48:25
substantially (1)
117:4
successful (1)
41:6
successfully (1)
18:6
such-and-such (1)
85:14
sue (2)
104:17;105:6
sufficient (1)
9:24
suggest (4)
14:11;83:21;109:9;
124:5
suggested (1)
43:20
suggestion (4)

71:8;76:10;116:15,
23
suggests (2)
17:2;44:1
suing (6)
106:5,8;107:14,19;
109:6,8
suit (2)
107:23;110:16
summarize (2)
62:24;64:13
summons (1)
46:18
superpriority (1)
44:18
supplement (1)
57:21
supplemental (4)
22:7;56:10,20;57:14
support (5)
63:8;75:15,16;83:24;
84:24
supports (1)
120:15
suppose (2)
106:18,18
supposed (2)
54:18;106:22
Sure (30)
7:20;17:12;21:4,21;
25:15;26:9;32:5,7;
35:12;37:12;47:17,21;
49:4;50:22;55:25;
61:14;64:21;73:8;
78:10;95:14,19;105:3,
18;108:12;117:6;
122:6;124:21;125:11,
11,22
surfacing (1)
58:19
surprised (1)
11:13
survey (1)
14:11
sweet (1)
125:17
system (1)
14:21

T

tail (3)
16:4,6,10
talk (3)
64:6;101:25;119:11;
124:7
talked (3)
22:20,20;44:21
talking (15)
29:16;41:25;77:18;
78:20,22,22;82:1,2;
88:21;95:23;102:14,
16;103:2;104:9;125:20

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 144
of 147

**talks (1)**
114:8
**tantamount (1)**
44:18
**target (2)**
80:20;124:16
**TCC (27)**
63:4;68:11,14,15,19;
69:3,4,9;70:4,8,11;
71:5,9,11;72:5,7;
93:21;114:21;115:9;
117:3,5;120:15,15,18,
19;121:15,21
**TCC's (1)**
57:17
**technically (1)**
95:16
**tee (1)**
12:1
**telephone (1)**
58:22
**telling (5)**
50:6;78:25;85:7;
88:18,19
**tells (1)**
46:6
**temperature (1)**
50:8
**ten (1)**
103:12
**tentative (1)**
90:22
**tents (1)**
43:12
**tenuous (2)**
46:14,15
**term (7)**
9:8;16:5;24:12;
50:10;70:18;91:9;
99:25
**terms (7)**
43:22;95:2,18;96:8;
97:18;120:1;122:1
**terrible (1)**
45:18
**territory (1)**
104:6
**test (2)**
96:12,13
**testified (3)**
15:5,10;33:15
**tests (2)**
28:22,22
**thanks (2)**
54:24;61:17
**theory (2)**
38:5;41:3
**therefore (11)**
14:18;53:6;63:7;
68:15;76:18;99:24;
101:21;102:24;117:6,
7,8
**there'll (1)**

**thereof (1)**
13:23
**there're (8)**
8:13;22:25;35:8,22,
25;41:4;64:2,3
**thinking (2)**
40:1;90:22
**third (1)**
98:3
**though (13)**
21:10;22:6;52:7;
67:4;69:7;72:16;76:16,
17;77:12;79:25;
107:20;116:20;126:17
**thought (7)**
40:13,24;63:1;96:14;
113:3;114:2;118:3
**thousands (3)**
53:25,25;115:12
**three (9)**
7:20;64:3,11;66:11,
14,14;67:12;68:6;
76:23
**three-day (1)**
69:23
**three-day/five- (1)**
113:24
**three-to-five (1)**
66:11
**three-to-five-day (1)**
73:20
**throughout (1)**
115:6
**throwing (1)**
89:10
**tie (1)**
77:12
**tight (1)**
118:13
**till (1)**
54:23
**Times (5)**
28:21,22,23;39:8;
82:20
**timing (3)**
11:4;13:8;30:6
**today (27)**
7:10,13;11:9,15;
18:4;27:9;34:4;45:1,9;
50:15;54:10;56:15;
68:17;79:1;90:24;
92:14,18;97:16;108:3,
5,23;118:22;119:10,
11;125:2;126:5,7
**together (1)**
19:22
**told (5)**
11:25;101:4;111:10;
120:18,19
**tomorrow (2)**
44:25;55:7
**took (3)**

12:17;30:7;96:11
**toothbrush (1)**
107:7
**tort (7)**
43:24;53:24;55:12;
56:7,9;61:9;82:13
**touched (1)**
114:19
**toward (1)**
13:18
**towards (1)**
50:3
**track (2)**
103:13;113:8
**tradeoff (1)**
55:10
**traditional (4)**
31:5;34:17;39:22;
76:20
**trailers (1)**
43:14
**transaction (1)**
9:3
**transcript (1)**
22:14
**treasury (1)**
18:9
**treated (1)**
123:8
**treats (1)**
120:8
**trial (1)**
118:11
**trigger (3)**
32:19;69:23;109:2
**triggered (1)**
31:20
**triggers (2)**
69:6;73:20
**trouble (3)**
85:1;87:6;118:21
**troublemaker (1)**
89:9
**true (14)**
8:21;26:18;29:22;
36:3,12;45:2;46:4,8;
49:13;55:6,8;60:6;
63:3;69:19
**truly (1)**
89:21
**trust (2)**
16:23;26:15
**try (5)**
25:25;98:11;113:8;
123:21;125:8
**trying (5)**
9:3;54:15;79:8;
83:23;102:9;103:11;
104:7;123:5
**Tsekerides (156)**
7:12,13,18,22;8:1;
20:23,24;21:4,21;22:1,
3,5,10,13,17,23;23:2,

11,13,15,17,19;24:1,4,
6,10,13,23;25:1,7,13,
15,18,23;26:2,4,6,9,12,
18,20;27:8,17,22,24;
28:8,11,13,17,19;29:1,
3,5,7,9,12,15,18,24;
30:3,6,11,19,24;31:1,3,
6,8,13,15,19;32:5,7,10,
23,25;33:11,14;34:1,
12,16,19,22,25;35:10,
12,15,21,24;36:2,5,22;
37:2,5,7,13,17,19,21,
23;38:3,10,13,15,20,
23,25;40:10,12,17,20;
42:11,12,14,16,20,24;
44:21;47:14;49:8;
50:19;55:17,23;
105:17,19;106:7,9,12,
16,24;107:3,8,10,16,
18,21,25;108:11,17;
109:4,7,9,21,23,25;
110:8,12,18,22,24;
111:2,5,10,12;112:4,7
**Tsekerides' (1)**
41:3
**Tubbs (2)**
43:17;100:12
**tucked (1)**
16:20
**TUESDAY (1)**
7:1
**turn (6)**
49:12;50:8;108:15;
111:14;123:14,22
**turned (1)**
116:6
**turns (1)**
120:24
**tutorial (1)**
21:10
**twenty (1)**
93:9
**twenty-four-hour (1)**
11:6
**two (21)**
19:22;27:2;36:25,25;
38:5,5,6;51:7;57:5;
58:6;61:10;63:12;76:8;
82:7;89:6;103:25;
116:25;117:14;118:24;
119:22;120:21
**type (1)**
100:22
**typical (3)**
8:19;77:19;122:1
**typically (1)**
88:16

**U**

**ubiquitous (2)**
21:17,20
**UCC (2)**

63:4;93:21
**umbrage (1)**
19:5
**umbrella (1)**
81:1
**Um-hum (6)**
13:19;37:2;83:16;
96:4;102:1;104:3
**uncertainty (3)**
24:14,15;33:22
**under (40)**
16:20;23:20:15;25:2;
26:15;30:17;33:9;34:1;
36:25;39:18,22;42:25;
44:23;48:24;49:12;
51:13;54:23;59:14;
65:21;68:2;69:4,8;
70:16;73:5;77:20;
78:17;80:23;85:4;
89:15;95:20;97:19;
98:23;99:13;100:14;
101:3;111:6;114:9;
116:21;118:3;124:23
**underlying (3)**
24:20;35:1;39:14
**understood (8)**
10:16;13:17;39:24;
65:23;78:3,3;118:20;
119:20
**undertaken (1)**
21:18
**unfairly (1)**
53:9
**UNIDENTIFIED (1)**
126:6
**unique (2)**
41:16;84:6
**UNISON (2)**
7:7;127:21
**unit (2)**
81:17;82:9
**United (1)**
88:9
**universe (4)**
50:5;55:12;111:17;
124:8
**unless (4)**
11:9;19:4;100:8;
125:5
**unlike (2)**
33:18;45:5
**unnecessary (1)**
124:22
**unreasonable (1)**
98:10
**unredacted (1)**
15:17
**unrelated (2)**
59:8,8
**unresolved (7)**
62:24;63:2;65:6,9;
67:13,21;68:6
**unsecured (8)**

Min-U-Script®
Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 145
of 147

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(16) talks - unsecured

8:8;33:4,7;43:24;
48:5;54:4,12,17
**unstayed (1)**
13:16
**unsympathetic (1)**
54:21
**unusual (2)**
44:2,2
**unwashed (1)**
92:23
**up (41)**
11:2;12:1;17:23;
18:23;19:22;24:18;
33:5;37:11;39:8;41:12;
43:16;47:1;49:3;52:17;
59:23;62:22;64:19;
75:8;76:22;78:23;
79:16;81:19,23;82:10;
83:3;86:7,10,10;91:6;
94:9;95:12,15;101:7;
105:23;107:6;117:20;
118:17;123:5,7;
126:15,19
**upcoming (1)**
71:7
**uploaded (3)**
61:13,14,14
**upon (2)**
56:6;76:17
**upset (1)**
22:15
**upside (1)**
116:6
**use (22)**
31:15,16;48:22;
52:17;66:11;72:15;
77:14,14;79:23;80:9;
86:17,23;87:3;89:13,
15;99:25;100:7;
106:10;107:18;108:13;
110:9,14
**used (6)**
16:18;30:13;38:15;
52:10;57:20;112:4
**using (1)**
110:20
**usually (1)**
119:5
**utility (5)**
9:13;35:15,23;37:15;
38:9

**V**

**value (2)**
94:9,12
**valuing (1)**
94:15
**valve (1)**
21:16
**various (1)**
43:21
**vast (1)**

124:8
**vernacular (1)**
38:16
**versa (2)**
35:25;37:16
**version (1)**
65:1
**versus (1)**
101:2
**vice (2)**
35:25;37:16
**victim (5)**
47:10;68:8;99:24;
100:1;102:24
**victims (14)**
28:10,14;49:7,24;
50:4,14;68:13;71:10;
72:2,6;114:15;115:19;
118:25;121:9
**victims' (1)**
43:25
**view (11)**
36:7;48:5;67:15;
68:1;69:25;72:25;
83:19;97:6;123:11;
124:20;125:19
**vindictive (1)**
89:18
**Vineyards (2)**
59:1,3
**violated (2)**
97:2;103:23
**violation (8)**
78:14,18;81:14,17;
83:18;86:9;88:3;89:25
**violations (1)**
80:15
**vis-a-vs (1)**
102:25
**voice (2)**
33:5;50:23
**volunteer (1)**
89:11

**W**

**wait (4)**
24:11;45:10,11;
118:22
**waiver (3)**
59:4,11;72:25
**waivers (1)**
57:2
**waiving (1)**
110:15
**walk (3)**
64:20;65:8;66:22
**wants (13)**
39:3;44:4;68:24;
75:17,25;83:9;86:21;
105:6;106:4;108:1;
110:9;120:20;121:2
**warehouse (1)**

57:19
**waste (1)**
124:22
**way (37)**
10:16;12:4;13:11;
21:7,8;38:5;49:11;
53:14;54:9;55:4,4,4;
68:21;69:8;72:4;76:8;
86:12;87:13;91:7;
94:11;96:24;97:20;
98:3,20,20,21;108:23;
109:5;111:21,23,25;
114:6;115:24;116:19;
120:7;122:3;123:8
**ways (4)**
13:7;94:9;97:15;
98:4
**weak (1)**
14:19
**week (5)**
124:11;125:10,14;
126:1;127:10
**weeks (2)**
37:11;119:22
**Weil (1)**
62:19
**Welcome (1)**
7:8
**well- (1)**
69:17
**weren't (1)**
39:14
**what's (15)**
16:15;20:9;22:2;
33:19;48:19;53:6;
62:23,24;63:2;65:3,5,
6;76:16;104:12;118:22
**wheel (1)**
125:17
**whereas (1)**
120:5
**Where's (2)**
94:21;102:14
**Whereupon (1)**
127:22
**whistle (3)**
74:17;79:19;80:19
**whistle-blow (1)**
84:4
**whistleblower (7)**
74:15,22;75:5;79:21;
86:23;105:9;125:18
**whistleblowers (4)**
75:12;84:2,3;115:21
**who'd (1)**
64:5
**whoever's (1)**
77:2
**whole (4)**
19:10;80:25;99:18;
104:16
**whomever (1)**
86:6

**Who's (13)**
8:3;31:17;46:18;
57:25;66:5,10;83:13;
86:10,10;91:11;94:14;
105:2;107:13
**wildfire (3)**
51:15,19;93:12
**Williams' (1)**
41:14
**willing (4)**
11:2;33:15;87:12,12
**Willkie (2)**
91:14;95:22
**Willoughby (1)**
77:7
**win (1)**
32:19
**window (1)**
33:9
**winery (1)**
57:24
**wiring (1)**
14:7
**wish (1)**
54:24
**wished (1)**
54:10
**within (4)**
17:3;34:22;94:3;
96:8
**without (8)**
21:15;30:1,3;31:23;
76:14;82:4;90:10;95:5
**witness (3)**
22:12,13,14
**word (3)**
16:22;37:22;60:20
**worded (1)**
116:20
**words (11)**
12:4;35:5;44:24;
45:10;47:20;66:1;
69:24;70:15;75:3;84:2;
97:10
**work (16)**
12:4;31:10;55:4;
72:4,4;73:10;80:15;
97:7;102:11;103:3;
105:11;108:24;111:24;
112:4;125:10;127:1
**worked (4)**
65:19;66:24;73:5;
115:6
**working (2)**
103:15,25
**works (5)**
69:8;76:7;86:12;
114:6;115:24
**world (2)**
27:21;79:2
**worried (3)**
11:17,21;29:21
**worry (1)**

51:24
**worrying (1)**
119:10
**worse (1)**
86:14
**worth (1)**
21:25
**written (13)**
57:2,12,21;58:13,23;
59:18;60:5,11,14;61:6;
95:10;120:3,8
**wrong (11)**
9:8;16:22;40:8,8;
43:21;53:7;87:20;
90:18;91:7;104:12;
116:8
**wrongdoing (1)**
43:22

**X**

**X's (1)**
102:25

**Y**

**year (1)**
10:13
**years (11)**
16:23;17:3,17;20:19;
25:21;27:13;33:2,24;
34:22;43:1;53:21
**yesterday (3)**
8:5;34:6;58:22
**yet-confirmed (1)**
19:3
**York (5)**
28:21,22,23;38:16;
82:20
**you-can-see-everything (1)**
101:2

**Z**

**zeroed (1)**
83:6
**zillion (1)**
121:21

**1**

**100,000 (1)**
53:20
**11 (11)**
15:12;77:16;79:24;
94:1,3,19;96:3;98:12;
99:7,9;108:14
**11:45 (1)**
127:22
**13 (1)**
118:3
**13.8 (1)**
78:18

Case: 19-30088    Doc# 2921    Filed: 07/10/19    Entered: 07/10/19 14:49:14    Page 146
of 147

**14 (2)**
   81:8;118:3
**16th (1)**
   126:8

## 2

**2.6 (11)**
   95:6,9;97:11,19;
   98:5,24;100:14;
   103:15;104:11;122:8,9
**20- (1)**
   35:2
**2004 (1)**
   110:25
**2010 (1)**
   114:25
**2017 (7)**
   9:17;10:20;18:7;
   24:4;28:2;32:18;93:14
**2018 (7)**
   9:18;10:8,20;16:7;
   23:24;27:4;93:14
**2019 (5)**
   7:1;10:1,14;16:12;
   24:10
**2020 (2)**
   10:11;16:12
**23rd (1)**
   126:8
**250 (3)**
   9:17;13:22;18:6
**2631 (1)**
   77:9
**2634 (1)**
   77:9

## 3

**3 (6)**
   66:23;67:1,5,6;74:8;
   76:17
**3,000 (1)**
   115:19
**300 (2)**
   9:18;13:23

## 4

**4 (1)**
   67:6
**4th (1)**
   22:8

## 5

**5 (1)**
   67:6
**50,000-plus (1)**
   77:17

## 6

**6 (1)**
   21:13

## 7

**7.1 (2)**
   77:13;81:12
**7.2 (4)**
   65:21;94:22;113:24;
   114:10
**7.2f (1)**
   114:8
**7.3 (18)**
   65:21,25;72:18;73:1,
   5;98:23;99:13;100:23;
   101:3,5,7;109:2;
   113:24;114:8;116:15,
   21;120:22;122:2
**7.3k (5)**
   66:8,18;68:2;101:8;
   114:10

## 8

**8 (3)**
   118:3,5;120:5
**8th (1)**
   126:5

## 9

**9 (1)**
   7:1
**9:30 (4)**
   7:1,11,15;8:5
**9th (4)**
   126:6,7,7,7

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net