Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>    **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                             **Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR ORDER DIRECTING DEBTORS TO SUPPLEMENT SCHEDULES**<br><br>Date:       August 13, 2019<br>Time:      9:30 a.m. (Pacific Time)<br>Place:     United States Bankruptcy Court<br>              Courtroom 17, 16 Floor<br>              San Francisco, CA 94102<br><br>Objection Deadline: July 30, 2019 at 4:00 p.m. |

The Official Committee of Tort Claimants (the "**TCC**"), by and through its undersigned counsel, hereby submits this Motion ("**Motion**") for the Court to order PG&E Corporation and Pacific Gas & Electric Company (collectively, the "**Debtors**") to supplement their Official Form 206A/B filings, and specifically, Part 9 of Schedule A/B cataloguing Debtors' real property interests. The good news is that Pacific Gas & Electric reported nearly $55 billion in real property assets in its Schedule A/B. The bad news is that, where Pacific Gas & Electric was required to provide the property descriptions and locations of these tens of billions of dollars in assets, it failed to provide a single address or other location identifier. The TCC and its experts require actual property descriptions and locations to value the Debtors' solvency, plan feasibility, and ability to pay allowed claims. Debtors should be ordered to amend their Form 206A/B filing and provide complete and accurate schedules. In support of this Motion, the TCC submits the Declaration of Kody Kleber in Support of Motion of the Official Committee of Tort Claimants for Order Directing Debtors to Supplement Schedules ("**Kleber Decl**."), filed contemporaneously herewith. A proposed order is attached hereto as **Exhibit A.** In support of its Motion, the TCC states as follows:

## I. BACKGROUND

**A. Debtors' Asset and Liability Schedules and the Section 341(a) Creditors Meeting**

Debtors filed for Chapter 11 bankruptcy on January 14, 2019. In connection with Debtors' bankruptcy filing, Debtors had a duty to file a schedule of assets and liabilities. *See* 11 U.S.C. § 521(a)(1)(B)(i). Bankruptcy Rule 1007(b)(1) further required that Debtors prepare the schedule of assets "as prescribed by the appropriate Official Forms." Real property interests are covered by Part 9 of Official Form 206A/B, which lists 11 separate categories of debtors' property. The instructions to the bankruptcy forms advise that "[i]t is important that the answers to the questions on the forms be complete and accurate so that the case proceeds smoothly." *See* Instructions for Bankruptcy Forms for Non-Individuals, attached as **Exhibit A** to Kleber Decl. The instructions further state as "[t]hings to remember when filling out and filing these forms" to "[b]e as complete and accurate as possible." *Id.* The first page of Form 206A/B states the same directive. *See* Official Form 206A/B, attached as **Exhibit B** to Kleber Decl.

Pacific Gas & Electric Company filed its Form 206A/B schedules on March 14, 2019.[1] *See* Dkt. No. 904, a copy of which is attached as **Exhibit C** to Kleber Decl. On April 29, 2019, the Assistant United States Trustee for the Northern District of California, Tim Laffredi (the "UST"), conducted a creditors meeting pursuant to 11 U.S. Code § 341(a).[2] Representatives of the Debtors were placed under oath at the meeting. *See* April 29, 2019 Transcript at 10:6-10, attached as **Exhibit D** to Kleber Decl.[3] The UST observed at that time that "Debtors have an affirmative obligation to disclose all assets and liabilities." *Id.* at 10:25-11:1.

During the creditors' meeting, it quickly became apparent that Debtors had failed to provide numerous categories of information in violation of the Official Forms, the Forms' instructions, and the Bankruptcy Code and Rules. The UST pointed out multiple instances where the Debtors withheld information and provided incomplete answers for required categories. Rather than have Debtors' sworn witnesses provide additional information during the meeting, Debtors' counsel, Stephen Karotkin, became increasingly combative, refusing to allow the witnesses to discuss pertinent issues and deficiencies, talking over the UST during the UST's examination, repeatedly instructing Debtors not to answer the UST's questions, and, on multiple occasions, actually commanding the UST to "move on." *See, generally,* Ex. D at 19-21, 25-26, 44, 48, 52-54, 56-60, & 62.

At one point, while the UST and Debtors' witness were discussing materiality of assets in connection with Debtors' Schedule A/B, Mr. Karotkin took it upon himself to cut off the UST's questioning of Debtors and instead quiz the UST about the legal definition of materiality:

> MR. LAFFREDI: Okay. There's a legal definition of materiality. Are you aware of that? I'm asking him if he's aware of it. He doesn't have to know.
> MR. KAROTKIN: Are you -- what is it?
> MR. LAFFREDI: Well, I'm not ask -- I'm asking if he's aware.
> MR. KAROTKIN: Maybe if you asked him what it was, he could answer the question.
> MR. LAFFREDI: Well, are you aware of the legal definition of materiality?

---

[1] In connection with its asset schedules, PG&E Corporation reported that it has no real property. *See* Schedule A/B, Part 9. Dkt. No. 898, p. 13.

[2] This meeting was a continuation of the UST's § 341(a) creditors' meeting held on March 4, 2019.

[3] Debtors' sworn witnesses were David S. Thomason, Vice President and Controller of PG&E Corporation and Vice President, Chief Financial Officer and Controller of Pacific Gas & Electric Company, and Jason P. Wells, Senior Vice President and Chief Financial Officer of PG&E Corporation.

- 3 -

MR. KAROTKIN: If you tell him what the legal definition is, he could answer the question.
MR. LAFFREDI: No, I'm --
MR. KAROTKIN: What's the legal definition of it?
MR. LAFFREDI: I'm ask -- you -- I'm asking the questions here, okay? I want to know whether he --
MR. KAROTKIN: No, and I'm --
MR. LAFFREDI: -- knows.
MR. KAROTKIN: -- and I'm representing my client.
MR. LAFFREDI: So are you not answering the question?
MR. KAROTKIN: Yes, he's not.
MR. LAFFREDI: Okay. So that sounds to me like you do not understand.
MR. KAROTKIN: It sounds to me like he's not answering the question, Mr. Laffredi.
MR. LAFFREDI: Okay, that's great. And can you answer that –
MR. KAROTKIN: Maybe if you could –
MR. LAFFREDI: Maybe --
MR. KAROTKIN: -- explain --
MR. LAFFREDI: Can he answer the question --
MR. KAROTKIN: Could you --
MR. LAFFREDI: -- please?
MR. KAROTKIN: -- give him your definition of – the legal definition of "materiality"? Because I frankly would like to know.

*See id.* at 24:24-26:9.

The following exchange further illustrates Debtors' counsel's strategy of pressuring the UST into abandoning his present line of questioning:

MR. LAFFREDI: There's a different definition than the one under the Bankruptcy Code? Is that what you're saying?
MR. KAROTKIN: You can read the language. The definition we used for "insiders" is as set forth in that note.
MR. LAFFREDI: Right; I'm asking why you used a --
MR. KAROTKIN: And I --
MR. LAFFREDI: First I'm asking is it different than the one that's listed right there?
MR. KAROTKIN: I think you can draw your own conclusions as to that by --
MR. LAFFREDI: I --
MR. KAROTKIN: -- reading the words.
MR. LAFFREDI: Okay, Mr. Tomlinson --
MR. KAROTKIN: As I said, we can move on.
MR. LAFFREDI: Can I ask Mr. Tomlinson --
MR. KAROTKIN: No, no, no. We can move on.
MR. LAFFREDI: No, I'm not ready to move on.
MR. KAROTKIN: The definition of "insider" was done on the basis of advice of counsel, period. And he's not going to answer any more questions about that.

*See id.* at 56:9-57:3.

Later, Mr. Karotkin even refused to pass the microphone to the Debtors' witness to answer a question from the UST:

- 4 -

> MR. THOMASON: So I understand there are different interpretations of the term "insider". I'm not aware of -- of a -- I'll leave it there.
> MR. LAFFREDI: Okay. And did you make a determination that one was more appropriate than the other?
> MR. KAROTKIN: He did it on advice of counsel.
> MR. LAFFREDI: Is that true?
> MR. KAROTKIN: He already answered that it was true.
> MR. THOMASON: So you made this -- you were the one who made this determination?
> MR. KAROTKIN: He took advice of counsel as to what "insider" means for purpose of the schedules. I don't know how to make that any clearer to you.
> MR. LAFFREDI: Right. So what I'm asking is why you made that. Can you tell me --
> MR. KAROTKIN: On advice of counsel.
> MR. LAFFREDI: Can you tell me why?
> MR. KAROTKIN: On advice of counsel.
> MR. LAFFREDI: Mr. Tomlinson, can you tell me why?
> MR. KAROTKIN: He answered your question.
> MR. LAFFREDI: Can you please hand him the microphone?
> MR. KAROTKIN: No.
> MR. LAFFREDI: I'm asking –
> MR. KAROTKIN: No. No.
> MR. LAFFREDI: Okay, well, I guess we're going to have to move on, because the debtor will not answer this question.
> MR. KAROTKIN: The debtor answered the question. He said he did it on advice of counsel. I suggest you move on.

*Id.* at 59:3-60:5.

Mr. Karotkin appeared to acknowledge Debtors' duty to amend Debtors' noncompliant schedules with additional information: "To the extent these schedules need to be amended, we'll do so." *See id.* at 48:2-3. However, when Debtors were pressed on multiple specific deficiencies, Mr. Karotkin brushed off the UST's request for complete information by claiming to take the matter under advisement:

> MR. WELLS: As a larger complex enterprise, we have numerous agreements subject to confidentiality. For instance, one agreement is gas that we procure to provide our customers, held in third-party locations. We have not disclosed those specific locations. We have disclosed the assets as part of our schedules.
> MR. LAFFREDI: Have you provided all of this information that was not disclosed, to the United States Trustee?
> MR. KAROTKIN: Not that I'm aware of.
> MR. LAFFREDI: And why not?
> MR. KAROTKIN: We're not aware that we have an obligation to do that.
> MR. LAFFREDI: It's in Section 107.
> MR. KAROTKIN: Okay, fine.
> MR. LAFFREDI: So then I'm asking that you provide all of this information.
> MR. KAROTKIN: And we'll take your request under advisement.

*See id.* at 20:13-21:6. Mr. Karotkin took the same approach with respect to former executive's contact information:

> MR. LAFFREDI: Okay. You wouldn't have the former executives' businesses addresses?
> MR. THOMASON: Well, we didn't -- we didn't list it in the schedules. We didn't -
> MR. LAFFREDI: Yeah, no, I know you didn't. I'm asking why you wouldn't have put the business?
> MR. THOMASON: I think it's the same, I think, principle that applies, in terms of -- of privacy.
> MR. LAFFREDI: Okay, so I'm requesting that you provide this infor -- first, have you provided this information to the Office of the U.S. Trustee?
> MR. THOMASON: No.
> THE COURT: And why not?
> MR. KAROTKIN: Because we didn't.
> MR. LAFFREDI: I'm asking Mr. Thomason.
> MR. THOMASON: Yeah, I -- if we were required to, I wasn't aware that that was a requirement.
> MR. LAFFREDI: Okay. Well, I'm asking that you provide that, please.
> MR. KAROTKIN: We'll take your request under advisement.

*Id.* at 61:20-62:15.

Not surprisingly, Debtors' counsel was unable to provide a date by which Debtors would submit amended schedules to address the information gaps—when the UST asked how long it would take for the Debtors to "file will take the debtors to file any amendments to the schedules or statements," Mr. Karotkin responded: "I have no idea. We'll get back to you on that." *Id.* at 166:8-10. Needless to say, he never did. No amendments to any of Debtors' noncompliant schedules have been provided in the subsequent two months.

**B.     Debtors' Form 206A/B Schedule Deficiencies with Respect to Real Property**

Part 9 of Official Form 206A/B requires Debtors to provide a description and the location of any real property they own. *See* Ex. C at 17-18. The Form provides a column entitled "Description and location of property" and further instructs Debtors to "Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available." *Id.* Despite Pacific Gas & Electric's estimated total real property value of $54,927,619,001, the company provided no information whatsoever that actually identifies any of its real property. Instead, Pacific Gas & Electric provided the below generic descriptions:

- 6 -

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest | | | | |
| 55.1 PLANT IN SERVICE - GAS | | $18,485,899,094 | NET BOOK VALUE | $18,485,899,094 |
| 55.2 PLANT IN SERVICE - ELECTRIC | | $57,923,594,272 | NET BOOK VALUE | $57,923,594,272 |
| 55.3 PLANT IN SERVICE - COMMON | | $6,696,586,813 | NET BOOK VALUE | $6,696,586,813 |
| 55.4 NONUTILITY PLANT | | $29,171,933 | NET BOOK VALUE | $29,171,933 |
| 55.5 LAND IMPROVEMENTS ON EASEMENTS | | $1,184,632 | NET BOOK VALUE | $1,184,632 |
| 55.6 CONSTRUCTION WORK IN PROGRESS - GAS | | $389,097,364 | NET BOOK VALUE | $389,097,364 |
| 55.7 CONSTRUCTION WORK IN PROGRESS - ELECTRIC | | $1,786,238,275 | NET BOOK VALUE | $1,786,238,275 |
| 55.8 CONSTRUCTION WORK IN PROGRESS - COMMON | | $446,223,708 | NET BOOK VALUE | $446,223,708 |
| 55.9 COMMON PROPERTY UNDER CAPITAL LEASE | | $10,695,537 | NET BOOK VALUE | $10,695,537 |
| 55.10 ACCUMULATED DEPRECIATION | | ($30,841,072,627) | NET BOOK VALUE | ($30,841,072,627) |

*Id.* at 18.

To add context to Pacific Gas & Electric's egregious deficiencies, its $54,927,619,001 in real property assets would make it the fourth largest public real estate company in the world by asset value, according to Forbes.[4] Even back in 2001, Pacific Gas & Electric's spokesman stated that the company owned "property and hundreds of facilities in 45 counties."[5] Also at that time, Pacific Gas & Electric was earning $6.2 million a year selling timber harvested on its property, $2.8 million renting out space for conference at two Bay Area training centers, and $2.5 from other

---

[4] *See* Samantha Sharf, *The World's Largest Real Estate Companies 2019: Brookfield On Top*, FORBES.COM, May 15, 2019, https://www.forbes.com/sites/samanthasharf/2019/05/15/worlds-largest-real-estate-companies-2019/#12ab48fb288a.

[5] *See* David Lazarus, *PG&E raking it in from real estate / Income disclosed as utility tries to comply with bankruptcy rules*, SFGATE.COM, June 23, 2001, https://www.sfgate.com/news/article/PG-E-raking-it-in-from-real-estate-Income-2906133.php.

Case: 19-30088   Doc# 2964   Filed: 07/12/19   Entered: 07/12/19 18:18:37   Page 7 of 9

leasing activities.[6] Further, Pacific Gas & Electric is the top taxpayer in Placer County, where it moved 200 employees into new office space in 2014. According to the Placer County Tax Collector's website, Pacific Gas & Electric has a total tax liability of $12,313,926 on $742,468,290 of taxable asset value—nearly three times the tax assessment of the next largest landowner.[7]

Putting aside its more non-descript properties, Pacific Gas & Electric does not even bother to identify its corporate headquarters, a 34-story building (and the 26th tallest skyscraper in San Francisco) located at 77 Beale Street—less than two miles from this Bankruptcy Court. According to the Real Property Tax Assessor records, this property is held in Pacific Gas & Electric's name. *See* Real Property Tax Assessor Record, attached as **Exhibit E** to Kleber Decl. Curiously, this massive building does not appear to fit into any of generic descriptions contained in sections 55.1-55.10.

Pacific Gas & Electric's Form 206A/B property schedule is wholly inadequate for purposes of asset valuation.

## II. ARGUMENT

### A. The TCC's Need for Compliant Real Property Schedules

The TCC represents the largest stakeholders in this case—the victims of the fires caused by the Debtors' equipment and electrical system practices. Detailed asset and liability schedules (including Form 206A/B) are necessary for the TCC, as well as any other interested party, to evaluate Debtors' nonessential assets that may be liquidated for the benefit of creditors. In the context of real estate, asset descriptions that lack either an APN or street address do not comply with the Bankruptcy Rules or provide creditors with sufficient information to ascertain the value of debtors' properties.

### B. The Court Should Require Debtors to Supplement Their Form 206A/B Schedules

The bottom line is that Pacific Gas & Electric is a corporate land baron that conspicuously disclosed no identifiable real property assets in its bankruptcy filings. The schedules required by

---

[6] *Id.*
[7] *See* https://www.placer.ca.gov/1424/Top-Ten-Taxpayers.

- 8 -

Case: 19-30088    Doc# 2964    Filed: 07/12/19    Entered: 07/12/19 18:18:37    Page 8 of 9

Official Form 206A/B are not discretionary. Pacific Gas & Electric's schedules are noncompliant on their face and must be amended or supplemented immediately.

As the Court is aware, this is the largest bankruptcy case in the history of California, and the sixth largest bankruptcy case filed in this country's history. Public scrutiny is baked into the Bankruptcy Code and attendant Bankruptcy Rules. Furthermore, Pacific Gas & Electric is a quasi-public utility that is regulated by the California Public Utilities Commission, and it is allegedly responsible for multiple wildfires that have claimed dozens of lives and destroyed the property of thousands of others. Debtors cannot avoid public scrutiny and its reporting obligations in bankruptcy by filing vague and facially noncompliant schedules, then having their high-priced bankruptcy counsel shout down the United States Trustee and refuse to give the microphone to his clients to answer questions about the schedules' deficiencies in a public 341 meeting.

### III. NOTICE

Notice of this Motion is being provided in accordance with the *Second Amended Order Implementing Certain Notice and Case Management Procedures,* entered on May 14, 2019 (Dkt. No. 1996).

### IV. CONCLUSION

Based on the foregoing, the TCC respectfully requests that this Court enter an order requiring Debtors to fully and completely supplement their Official Form 206A/B schedules in accordance with the Bankruptcy Code, 11 U.S.C. § 521(a)(1)(B)(i), and Bankruptcy Rule 1007(b)(1), including, but not limited to, supplementing their real property schedule to identify addresses and property descriptions of all of Debtors' property interests, within thirty (30) days.

Dated: July 12, 2019

BAKER & HOSTETLER LLP

By: */s/ Cecily A. Dumas*
    Cecily A. Dumas

*Counsel for The Official Committee of Tort Claimants*