TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
JASON BLUMBERG (NY SBN 4055257)
Trial Attorney
MARTA E. VILLACORTA (NY SBN 4918280)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Avenue, Suite 05-0153
San Francisco, CA 94102
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: jason.blumberg@usdoj.gov
       marta.villacorta@usdoj.gov

Attorneys for Andrew R. Vara,
Acting United States Trustee for Region 3[1]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**,<br>   - and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                **Debtors**.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>Date: July 24, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

**DECLARATION OF LAURIE A. BRUGGER IN SUPPORT OF
UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTORS FOR
ENTRY OF AN ORDER APPROVING KEY EMPLOYEE INCENTIVE PLAN**

---

[1] Andrew R. Vara, Acting United States Trustee for Region 3, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who has recused herself.

1

I, Laurie A. Brugger, declare as follows:

1. I am employed as a paralegal specialist in the Sacramento Office of the United States Trustee, Region 17 (the "UST"). I am the paralegal specialist assigned to the bankruptcy cases of PG&E Corporation and Pacific Gas and Electric Company (the "*Debtors*"), which are jointly administered in Chapter 11 Case No. 19-30088. I have personal knowledge of the facts set forth herein, and based on that personal knowledge, I assert that all such facts are true and correct to the best of my knowledge. To the extent I base my testimony upon information and belief or upon admissible evidence other than my personal knowledge, I will specifically so state.

2. On July 17, 2019, I accessed the UST's electronic file for this case and located an email exchange between counsel for the UST and counsel for the Debtors on June 6, 2019 and June 7, 2019. *Exhibit A* hereto is a true and correct copy of this email exchange.

3. On July 17, 2019, I accessed the electronic case filing system for Chapter 11 Case No. 19-30088 and downloaded copies of the Debtors' monthly operating reports for February 2019 (ECF No. 1137), March 2019 (ECF No. 1945) and April 2019 (ECF No. 2276). *Exhibit B* hereto is a true and correct copies of the "Payment to Insiders" sections of those reports.

4. On June 18, 2019, I emailed a letter from Assistant United States Trustee Timothy S. Laffredi to the Debtors' counsel, Mr. Goren. *Exhibit C* hereto is a true and correct copy of Mr. Laffredi's letter.

5. On June 28, 2019, I received an email from the Debtors' counsel, Mr. Schinckel. Attached to Mr. Schinckel's email was a letter from Mr. Goren in response to Mr. Laffredi's letter. *Exhibit D* hereto is a true and correct copy of Mr. Goren's letter.

I declare under penalty of perjury that the foregoing is true and correct and is of my own personal knowledge and if called to do so, I would testify to same.

Executed in Sacramento, California, on July 17, 2019.

*Laurie A. Brugger*
LAURIE A. BRUGGER

# EXHIBIT A

**Brugger, Laurie (USTP)**

| | |
|---|---|
| **From:** | Goren, Matthew <matthew.goren@weil.com> |
| **Sent:** | Friday, June 7, 2019 11:22 AM |
| **To:** | Zipes, Greg (USTP) |
| **Cc:** | Jane Kim |
| **Subject:** | RE: PGE: MOR reporting |

As we discussed, these payments were one a time, annual allowances for perquisite benefits. This is a not a bonus; rather it is a lump-sum annual cash stipend paid in lieu of providing broader perquisite benefits. Here is a further description from the company's 10K and a link to the complete filing https://www.sec.gov/Archives/edgar/data/75488/000095015719000501/form10ka.htm

*Perquisites and Related Compensation*

NEOs (Named Executive Officers) generally receive a limited range of perquisite benefits, typically encompassing a partial subsidy for financial planning services from a third-party financial advisory firm, partial reimbursement of certain health club fees, on-site parking, executive health services, and de minimis perquisites under a pre-approved perquisite policy.

The Compensation Committee (and the independent members of the PG&E Corporation Board in the case of Ms. Williams, and the independent members of the Utility Board in the case of Mr. Stavropoulos) also approved a 2018 lump-sum annual stipend amount for each executive officer consistent with 2017, which ranged from $15,000 to $35,000 (the upper end applicable only to Ms. Williams). This stipend is provided in lieu of providing the NEOs with additional perquisite benefits. The NEOs have discretion to use this stipend as they see fit.

**From:** Zipes, Greg (USTP) <Greg.Zipes@usdoj.gov>
**Sent:** Friday, June 7, 2019 2:13 PM
**To:** Goren, Matthew <matthew.goren@weil.com>
**Cc:** Jane Kim <jkim@kellerbenvenutti.com>
**Subject:** RE: PGE: MOR reporting

Will get back to you soon. Are you going to respond to the questions we had about the payments to insiders in March? It is still unclear what these payments are for.

**From:** Goren, Matthew <matthew.goren@weil.com>
**Sent:** Thursday, June 6, 2019 8:35 PM
**To:** Zipes, Greg (USTP) <Greg.Zipes@UST.DOJ.GOV>
**Cc:** Jane Kim <jkim@kellerbenvenutti.com>
**Subject:** PGE: MOR reporting

Greg – We appreciate the time you and the rest of the team with the U.S. Trustee's office have spent over the past few weeks working with us on these issues. As discussed, below is a recitation of our understanding of the parties' agreement to resolve the issues of the U.S. Trustee's office regarding the form and deadlines for filing the Debtors' monthly operating reports and the Debtors' Motion dated May 1, 2019 [Docket No. 1788]. Please let us know if we have missed anything. Otherwise, please confirm via reply email that the U.S. Trustee is in agreement with the below. In addition, attached is a draft form of order for your review. As discussed, the order is largely silent on the form and manner of filing the MORs and leaves it to the parties to reach an agreement amongst themselves or seek further order of the Court. Once we have an agreement on the substance below and the form of order, we will submit to the court for

1

Case: 19-30088    Doc# 3031    Filed: 07/17/19    Entered: 07/17/19 13:53:42    Page 5 of 19

approval. The attached and below remain subject to further comment and review. Let us know if you have any questions. Thank you, Matt

1. Timing: The Debtors will continue to file MORs in accordance with the schedule set forth in the Motion, which, for the avoidance of doubt, is restated as follows:

| MOR Month | Local Rule | Proposed Filing under Debtors' Motion | Example |
| --- | --- | --- | --- |
| Non-SEC Reporting Months (Jan., Feb., Apr., May, Jul., Aug., Oct., & Nov.) | No later than the 21st day of the month following the month to which the report pertains. | No later than the 31st day of the month following the month to which the report pertains.<br><br>(Requesting an additional ~10 days) | May MOR would be filed no later July 1 (June 30 is a Sunday) |
| SEC-Quarterly Reporting Months (Mar., June, and Sept.) | No later than the 21st day of the month following the month to which the report pertains. | No later than the 45 days following the month to which the report pertains.<br><br>(Requesting an additional ~25 days) | June MOR would be filed no later than Aug 15 |
| SEC-Annual Reporting Month (Dec.) | No later than the 21st day of the month following the month to which the report pertains. | No later than 60 days following the month to which the report pertains.<br><br>(Requesting an additional ~40 days) | December MOR would be filed no later than February 28 |

2. Cash Flow Statement: The Debtors will include a statement of cash flows only in their MORs that correspond with SEC-Quarterly or Annual Reporting Months (March, June, September, and December).
3. Cumulative Income Statement: The Debtors will include in their MORs going forward a cumulative income statement from the Petition Date through the applicable reporting period for each Debtor.
4. Disbursements: The Debtors will report disbursements going forward in their MORs for each Debtor to the nearest dollar (*e.g.*, not rounded figures).
5. Payments to Retained Professionals: The Debtors will include going forward in their MORs a breakdown of payments to each retained professional.



**Matthew P. Goren**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
matthew.goren@weil.com
+1 212 310 8440 Direct
+1 212 310 8007 Fax

2

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

# EXHIBIT B

12. **PAYMENTS ON PRE-PETITION DEBT**

The following reflects the payments for the month ended February 28, 2019 made in accordance with the authority granted by the Bankruptcy Court pursuant to the First Day Motions.

**(in millions)**

| First Day Motions | Disbursed in Month |
|---|---:|
| Operational Integrity Supplier | — |
| Cash Management | — |
| NGX - CAISO | 25 |
| Public Purpose Programs | 86 |
| Shippers / Liens | 2 |
| Tax | 26 |
| Employee Wage and Benefits | 139 |
| **Total** | **278** |

13. **PAYMENTS FOR RETAINED PROFESSIONALS**

There were no payments made to bankruptcy professionals retained under section 327 or 363 of the Bankruptcy Code during the month ended February 28, 2019.

14. **PAYMENTS TO INSIDERS**

The following reflects the cash payments made to insiders of the Corporation and the Utility during the month ended February 28, 2019. Other than reimbursement for reasonable expenses incurred in connection with attending Board of Directors meetings, Board of Directors committee meetings, or participating in other activities undertaken on behalf of the Corporation and the Utility, there were no payments made to non-employee directors during the reporting period.

**(in ones)**

| Name | Title [1] | Total Payments for Month [2] |
|---|---|---:|
| Loraine Giammona | *Senior Vice President and Chief Customer Officer* | $ 40,000 |
| Julie Kane | *Senior Vice President, Chief Ethics and Compliance Officer, and Deputy General Counsel, PG&E Corporation and Pacific Gas and Electric Company* | 39,433 |
| Kathleen Kay | *Senior Vice President and Chief Information Officer* | 34,583 |
| Michael Lewis | *Senior Vice President, Electric Operations* | 37,500 |
| Janet Loduca | *Senior Vice President and Interim General Counsel, PG&E Corporation and Pacific Gas and Electric Company* | 87,296 [3] |
| Steven Malnight | *Senior Vice President, Energy Supply and Policy* | 43,750 |
| Dinyar Mistry | *Senior Vice President, Human Resources and Chief Diversity Officer, PG&E Corporation and Pacific Gas and Electric Company* | 42,667 |
| John Simon | *Interim Chief Executive Officer, PG&E Corporation* | 135,078 [4] |
| Jesus Soto | *Senior Vice President, Gas Operations* | 49,819 |
| David Thomason | *Vice President, Chief Financial Officer, and Controller, Pacific Gas and Electric Company* *Vice President and Controller, PG&E Corporation* | 33,333 |
| Fong Wan | *Senior Vice President, Energy Policy and Procurement* | 45,456 |
| Jason Wells | *Senior Vice President and Chief Financial Officer, PG&E Corporation* | $ 52,500 |

[1] Except as otherwise noted, all positions have been held at the Utility.
[2] Payments primarily consist of salary and accrued vacation pay.
[3] Includes temporary monthly compensation increase as a result of promotion to position of Interim General Counsel.
[4] Approximately 60% of this amount reflects accrued vacation pay.

### 14. PAYMENTS TO INSIDERS

The following reflects the cash payments made to insiders of the Corporation and the Utility during the month ended March 31, 2019. Other than reimbursement for reasonable expenses incurred in connection with attending Board of Directors meetings, Board of Directors committee meetings, or participating in other activities undertaken on behalf of the Corporation and the Utility, there were no payments made to non-employee directors during the reporting period.

| (in ones) Name | Title [1] | Total Payments for Month [2] [3] |
|---|---|---|
| Loraine Giammona | *Senior Vice President and Chief Customer Officer* | $ 60,000 |
| Julie Kane | *Senior Vice President, Chief Ethics and Compliance Officer, and Deputy General Counsel, PG&E Corporation and Pacific Gas and Electric Company* | 59,433 |
| Kathleen Kay | *Senior Vice President and Chief Information Officer* | 49,827 |
| Michael Lewis | *Senior Vice President, Electric Operations* | 57,500 |
| Janet Loduca | *Senior Vice President and Interim General Counsel, PG&E Corporation and Pacific Gas and Electric Company* | 101,833 [4] |
| Steven Malnight | *Senior Vice President, Energy Supply and Policy* | 68,750 |
| Dinyar Mistry | *Senior Vice President, Human Resources and Chief Diversity Officer, PG&E Corporation and Pacific Gas and Electric Company* | 62,667 |
| John Simon | *Interim Chief Executive Officer, PG&E Corporation* | 75,317 |
| Jesus Soto | *Senior Vice President, Gas Operations* | 67,917 |
| David Thomason | *Vice President, Chief Financial Officer, and Controller, Pacific Gas and Electric Company* <br> *Vice President and Controller, PG&E Corporation* | 42,083 |
| Fong Wan | *Senior Vice President, Energy Policy and Procurement* | 54,483 |
| Jason Wells | *Senior Vice President and Chief Financial Officer, PG&E Corporation* | $ 77,500 |

[1] Except as otherwise noted, all positions have been held at the Utility.
[2] Payments primarily consist of salary.
[3] Payments include annual perquisite allowances paid in March 2019.
[4] Includes temporary monthly compensation increase as a result promotion in January 2019 to position of Interim General Counsel.

### 15. REORGANIZATION ITEMS

The following reflects net reorganization items as of March 31, 2019:

| | Post-Petition Period Through March 31, 2019 | | |
|---|---|---|---|
| (in millions) | Pacific Gas & Electric Company | PG&E Corporation | PG&E Corporation Consolidated |
| Debtor-in-possession financing costs | $ 97 | $ 17 | $ 114 |
| Legal and other | 23 | 1 | 24 |
| Interest income | (9) | (2) | (11) |
| Adjustments to LSTC | — | — | — |
| Trustee fees | — | — | — |
| **Total reorganization items, net** | $ 111 | $ 16 | $ 127 |

Case: 19-30088  Doc# 1041  Filed: 03/07/19  Entered: 03/07/19 13:50:42  Page 10 of 13

## 14. PAYMENTS TO INSIDERS

The following reflects the cash payments made to insiders of the Corporation and the Utility during the month ended April 30, 2019. Other than reimbursement for reasonable expenses incurred in connection with attending Board of Directors meetings, Board of Directors committee meetings, or participating in other activities undertaken on behalf of the Corporation and the Utility, there were no payments made to non-employee directors during the reporting period.

| (in ones) Name | Title [1] | Total Payments for Month [2] |
|---|---|---|
| Loraine Giammona | *Senior Vice President and Chief Customer Officer* | $ 40,465 |
| Julie Kane | *Senior Vice President, Chief Ethics and Compliance Officer, and Deputy General Counsel, PG&E Corporation and Pacific Gas and Electric Company* | 40,444 |
| Kathleen Kay | *Senior Vice President and Chief Information Officer* | 35,048 |
| Michael Lewis | *Senior Vice President, Electric Operations* | 37,500 |
| Janet Loduca | *Senior Vice President and Interim General Counsel, PG&E Corporation and Pacific Gas and Electric Company* | 52,298 [3] |
| Steven Malnight | *Senior Vice President, Energy Supply and Policy* | 85,286 [4] |
| Dinyar Mistry | *Senior Vice President, Human Resources and Chief Diversity Officer, PG&E Corporation and Pacific Gas and Electric Company* | 42,667 |
| John Simon | *Interim Chief Executive Officer, PG&E Corporation* | 50,782 |
| Jesus Soto | *Senior Vice President, Gas Operations* | 47,917 |
| David Thomason | *Vice President, Chief Financial Officer, and Controller, Pacific Gas and Electric Company* *Vice President and Controller, PG&E Corporation* | 27,548 |
| Fong Wan | *Senior Vice President, Energy Policy and Procurement* | 34,948 |
| Jason Wells | *Senior Vice President and Chief Financial Officer, PG&E Corporation* | 52,965 |
| James Welsch | *Vice President, Nuclear Generation and Chief Nuclear Officer* | $ 43,498 |

[1] Except as otherwise noted, all positions have been held at the Utility.
[2] Payments primarily consist of salary.
[3] Includes temporary monthly compensation increase as a result of promotion in January 2019 to position of Interim General Counsel.
[4] Steven Malnight resigned effective April 12, 2019, payment includes prorated salary and payout of accrued vacation.

## 15. REORGANIZATION ITEMS

The following reflects reorganization items, net, post-petition through April 30, 2019:

| (in millions) | Pacific Gas & Electric Company | PG&E Corporation | PG&E Corporation Consolidated |
|---|---|---|---|
| Debtor-in-possession financing costs | $ 97 | $ 17 | $ 114 |
| Legal and other | 39 | 1 | 40 |
| Interest income | (15) | (3) | (18) |
| Adjustments to LSTC | — | — | — |
| Trustee fees | — | — | — |
| **Total reorganization items, net** | $ 121 | $ 15 | $ 136 |

# EXHIBIT C



U.S. Department of Justice

United States Trustee
Northern and Eastern
Districts of California and Nevada

_____

San Francisco Office                                    415-705-3333
450 Golden Gate Ave, Suite 05-0153                  FAX 415-705-3367
San Francisco, California 94102

Website address: www.justice.gov/ust-regions-r17

June 18, 2019

**Via electronic mail and U.S. Mail**

Matthew Goren, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153-0119

   Re: In re PG&E Corporation, *et al.*
      Case No. 19-30088 (DM) (Bankr. N.D. Cal.)

Dear Matt:

  Reference is made to the email exchange between PG&E Corporation, *et al.* (the "**Debtors**") and this Office in connection with certain payments to insiders of the Debtors, as reflected in the March 2019 monthly operating report. A chart showing the increases in payments to insiders in March (and for one, in April).

  In your most recent email to me on June 7, 2019, you described these payments as "annual allowances for perquisite benefits. This is a not a bonus; rather it is a lump-sum annual cash stipend paid in lieu of providing broader perquisite benefits."

  Absent further explanation, these payments appear to meet the definition of a bonus under 11 U.S.C. § 503(c). *See In re Residential Capital, LLC*, 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012) (discussing payments that fall under section 503(c)(1)). Congress enacted section 503(c) as part of the 2005 BAPCPA amendments to the Bankruptcy Code to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process." *Id*. (quoting *In re Global Home Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (internal quotation marks omitted).

  Accordingly, we ask for further disclosure. Have these payments been made to these employees in past years? Are they the subject of written contracts? Do you agree that these are payments are to insiders? Please provide a full basis for your contention that these payments are not bonuses under the Bankruptcy Code, requiring a motion seeking approval of these payments; please be sure to include any

and all legal authority for this contention.

    Please provide a written response within one week hereof. Failure to provide a timely response may result in this Office taking formal action and seeking judicial intervention.

    Very truly yours,

ANDREW R. VARA
Acting United States Trustee, Region 3

*Timothy S. Laffredi* (Digitally signed by TIMOTHY LAFFREDI Date: 2019.06.18 14:44:43 -07'00')

TIMOTHY S. LAFFREDI
Assistant United States Trustee

cc: Andrew R. Vara, Acting United States Trustee, Region 3
James L. Snyder, Acting United States Trustee, Region 12

**PAYMENTS TO INSIDERS**

MONTH ENDED
(in ones)

| Name | Title | 1/31/2019 Cons. | 2/28/2019 Cons. | 3/31/2019 Cons. | 4/30/2019 Cons. |
|---|---|---|---|---|---|
| Loraine Giammona | Senior VP & Chief Customer Officer | $ - | $ 40,000 | $ 60,000 | $ 40,465 |
| Julie Kane | Senior VP, Chief Ethics and Compliance Officer | $ - | $ 39,433 | $ 59,433 | $ 40,444 |
| Kathleen Kay | Senior VP and Chief Information Officer | $ - | $ 34,583 | $ 49,827 | $ 35,048 |
| Michael Lewis | Senior VP. E;ectric Operations | $ - | $ 37,500 | $ 57,500 | $ 37,500 |
| Janet Loduca | Senior VP and Interim General Counsel | $ - | $ 87,296 | $ 101,833 | $ 52,298 |
| Steven Malnight | Senior VP, Energy Supply and Policy | $ - | $ 43,750 | $ 68,750 | $ 85,286 |
| Dinyar Mistry | Senior VP, Human Resources & Chief Diversity Officer | $ - | $ 42,667 | $ 62,667 | $ 42,667 |
| John Simon | Interim Chief Executive Officer | $ - | $ 135,078 | $ 75,317 | $ 50,782 |
| Jesus Sota | Senior VP, Gas Operations | $ - | $ 49,819 | $ 67,917 | $ 47,917 |
| David Thomason | VP and Controller | $ - | $ 33,333 | $ 42,083 | $ 27,548 |
| Fong Wan | Senior VP, Energy Policy and Procurement | $ - | $ 45,456 | $ 54,483 | $ 34,948 |
| Jason Wells | Senior VP and Chief Financial Officer | $ - | $ 52,500 | $ 77,500 | $ 52,965 |
| James Welsch | Vice President, Nuclear Generation and Chief Nuclear Officer | $ - | $ - | $ - | $ 43,498 |
| **Total** | | $ - | $ 641,415 | $ 777,310 | $ 591,366 |

# EXHIBIT D

**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Matthew Goren**
+1 (212) 310-8440
matthew.goren@weil.com

BY E-MAIL

June 28, 2019

Timothy S. Laffredi
U.S. Department of Justice
United States Trustee
Northern and Eastern Districts of California and Nevada
450 Golden Gate Ave, Suite 05-0153
San Francisco, CA 94102

**Re: In re PG&E Corporation and Pacific Gas and Electric Company - Case No. 19-30088 (DM) (Bankr. N.D. Cal.)**

Dear Mr. Laffredi:

As you are aware, this firm represents PG&E Corporation and Pacific Gas and Electric Company (collectively, the "**Debtors**") in connection with the above-referenced chapter 11 cases pending before the United States Bankruptcy Court for the Northern District of California. We are in receipt of your letter dated June 18, 2019 (the "**Letter**"), in which you request additional information regarding annual perquisite payments made to certain of the Debtors' officers, as reflected in the Debtors' March 2019 monthly operating report [Docket No. 1945] (the "**MOR**").

As described in the 2019 PG&E Corporation and Pacific Gas and Electric Company Joint Proxy Statement,[1] the Debtors provide perquisite benefits to their officers as part of their fixed annual compensation as is typical for executives of large corporations. The perquisite benefits come in two forms:

1. Limited perquisites directly provided by the Debtors, including parking, executive health services, insurance and a subsidy for financial advice services; and

2. A lump-sum annual cash stipend which is paid in lieu of the Debtors providing broader perquisite benefits (the "**Lump Sum Perquisite Allowance**"). The Lump Sum Perquisite Allowance is a set stipend that each officer has discretion to use as they see fit, and it is intended

---

[1] A copy of the 2019 Joint Proxy Statement is available at
https://www.sec.gov/Archives/edgar/data/75488/000095015719000501/form10ka.htm.

> to cover miscellaneous expenses, such as membership in professional organizations, which would otherwise be provided or reimbursed by the Debtors to their officers.

The payments to the Debtors' officers that were disclosed in the MOR and referenced in your Letter were made on account of the annual payment of the Lump Sum Perquisite Allowance.

Payment of the Lump Sum Perquisite Allowance to the Debtors' officers is a long-standing and normal part of these and other officers' compensation and has been an established practice of the Debtors since at least 2002. The amount of the Lump Sum Perquisite Allowance is a fixed amount between $15,000 and $35,000 determined based on the individual officers' level within the Debtors, and has not changed in over ten years.

As part of the normal compensation of the Debtors' officers, the Lump Sum Benefits are not "bonuses" nor are they transfers that were made to induce the Debtors' officers to remain with their business, which would render them subject to section 503(c) of the Bankruptcy Code. The Lump Sum Benefits represent a component of the Debtors' ordinary course fixed compensation being provided to their officers, are indistinguishable from the fixed salaries for these officers, and represent a small percentage of their overall compensation. Courts have previously held that normal wages and compensation are not retention payments within the purview of section 503(c) of the Bankruptcy Code. *See In re QuVIS, Inc.*, No. 09-10706, 2009 WL 4262077, at *5 (Bankr. D. Kan. Nov. 23, 2009); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 802 (Bankr. D. Del. 2007) (The scrutiny of section 503(c)(1) is not applied to *any* payment made to an insider, and it is not applied to regular salary – to do so would be "an absurd result".).

The Lump Sum Perquisite Allowances are a long-running element of the Debtors' compensation to their officers, consistent with their terms of employment and prepetition policies of the Debtors and are justified as appropriate compensation for the Debtors' officers' service as senior executives in a large and complex business. Indeed as indicated, these types of perquisites are normal course of business in many corporations. Accordingly, the requirements of section 503(c) do not apply to the Lump Sum Perquisite Allowance.

Please let us know if you have any further questions, and, of course, we will be happy to discuss this further at your convenience.

Sincerely,

Matthew Goren