TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
JASON BLUMBERG (NY SBN 4055257)
Trial Attorney
MARTA E. VILLACORTA (NY SBN 4918280)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Avenue, Suite 05-0153
San Francisco, CA 94102
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: jason.blumberg@usdoj.gov
       marta.villacorta@usdoj.gov

Attorneys for Andrew R. Vara,
Acting United States Trustee for Region 3[1]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**,<br>    - and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                    **Debtors**.<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br>*All papers shall be filed in the lead case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>Date: July 24, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102 |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING EMPLOYMENT TERMS OF NEW CHIEF EXECUTIVE OFFICER**

Andrew R. Vara, Acting United States Trustee for Region 3 (the "United States Trustee"), by and through his undersigned counsel, hereby files this objection (the "Objection")

---

[1] Andrew R. Vara, Acting United States Trustee for Region 3, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who has recused herself.

1

to the *Motion of Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a) for an Order Approving Terms of Employment for New Chief Executive Officer and President of PG&E Corporation* (ECF No. 2662) (the "Motion"). This Objection is supported by the following memorandum of points and authorities and any argument the Court may permit.[2]

I. **MEMORANDUM OF POINTS AND AUTHORITIES**

    A. **Introduction**

On the record before the Court, some terms of the new CEO's employment are objectionable. Notably, the Motion fails to address whether the proposed $2.5 million severance payment complies with 11 U.S.C. § 503(c)(2). The Motion also fails to address whether the $3 million transition payment is consistent with industry standards and otherwise justified by the facts and circumstances of the case under 11 U.S.C. § 503(c)(3). The Debtors' failure to address Section 503(c)(2) and (3) is reason alone to deny the Motion.

More concerning, the operating report for May reflects that the Debtors made the transition payment before they filed the Motion. The Motion does not address this failure to obtain the Court's prior approval, let alone offer a satisfactory explanation.

    B. **Background Facts and Procedural Posture**

1. On January 29, 2019, the Debtors commenced the above-captioned cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See* ECF No. 1. No trustee has been appointed in the Debtors' cases. *See generally* Case Dockets.

---

[2] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in these cases pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201.

2

2. On February 12, 2019, the United States Trustee appointed an Official Committee of Unsecured Creditors. See ECF No. 409. On February 15, 2019, the United States Trustee appointed an Official Committee of Tort Claimants. See ECF No. 453.

3. The section 341(a) meeting of creditors in these cases was initially held on March 4, 2019 and concluded on April 29, 2019. See ECF Nos. 396, 736.

4. According to the Motion, on April 10, 2019, the board of directors for Debtor PG&E Corporation appointed William D. Johnson as CEO and President of PG&E Corporation, effective May 2, 2019. Mr. Johnson was also appointed to the board of directors of Debtor Pacific Gas and Electric Company. See Motion, at p.7.

5. On June 19, 2019, the Debtors filed the Motion. The Motion seeks approval of Mr. Johnson's terms of employment. Key terms of Mr. Johnson's employment include the following:

    a. An annual base salary of $2.5 million.

    b. A one-time cash transition payment of $3 million (the "Transition Payment"). The Transition Payment must be repaid if Mr. Johnson resigns or is terminated for cause within 12 months of his start date.

    c. Annual equity awards, in the form of (i) time based restricted stock units, and (ii) performance based stock units ("PRSUs"). The target annual value of these awards is $3.5 million.

    d. Three tranches of performance-based stock options ("Options"). Tranche 1 consists of a maximum of 1.2 million Options (800,000 Options at target level performance), with an exercise price of $25 per share and exercisable until the fourth anniversary of the grant date. Tranche 2 consists of a maximum of 1.5 million Options (1 million Options at target level performance), with an exercise price of $40 per share and exercisable until the fourth anniversary of the grant date. Tranche 3 consists of a maximum 1.6 million Options (1.1 million Options at target level performance), with an exercise price of $50 per share and exercisable until the fifth anniversary of the grant date.

3

Case: 19-30088    Doc# 3032    Filed: 07/17/19    Entered: 07/17/19 13:57:26    Page 3 of 11

e. A severance payment of $2.5 million if Mr. Johnson is terminated by Debtor PG&E Corporation without cause (the "Severance Payment").

See Motion, at pp. 9-11.

6. According to the Debtors' operating report for May 2019 (ECF No. 2775) (the "May MOR"), the Debtors have apparently *already* made the $3 Million Transition Payment to Mr. Johnson. The Debtors also paid a $35,000 "annual perquisite allowance" to Mr. Johnson in May. See May MOR, at p.14.[3]

7. Mr. Johnson's annual grant of PRSUs and Options are subject to performance metrics. According to the Motion, the "Board determined that the performance-based vesting conditions of Mr. Johnson's 2019 Performance-Based Awards should use the same Performance Metrics and weightings *as the 2019 STIP*." <u>See</u> Motion, at pp.11-12 (emphasis added).[4]

8. As with the 2019 STIP, "Safety Metrics" are weighted at 65%, while the "Customer Satisfaction" and "Financial Performance" metrics are weighted at 10% and 25%, respectively. See Motion, at p.12 and *Exhibit B* (ECF No. 2662-2). Mr. Johnson's 2019 Performance-Based Awards are subject to a downward modifier if the Debtors fail to meet the threshold level (reduced by 50%) or the target level (reduced by 25%) for the "Public Safety Index" component of the Safety Metric. *See id.*, at p.12. The performance period for the 2019 Performance-Based Awards is April 1, 2019 to December 31, 2019. See Motion, at p.10.

9. The performance metrics for the 2020 and 2021 "*will be established* by the Board." See Motion, at p.10 (emphasis added).

---

[3] The Debtors similarly paid 12 executive officers "perquisite allowances" without the Court's approval in March 2019. *See* ECF No. 1945 (March operating report), at p.13.

[4] On April 29, 2019, the Court approved the Debtors' 2019 STIP, which is a short-term incentive program for approximately 10,000 non-insider employees. *See* ECF No. 1751 (Order approving 2019 STIP); Motion, at p.11.

4

Case: 19-30088    Doc# 3032    Filed: 07/17/19    Entered: 07/17/19 13:57:26    Page 4 of 11

C. **Statutory Framework**

Section 503 governs the allowance of administrative expenses "for actual, necessary costs and expenses of preserving" a debtor's bankruptcy estate. 11 U.S.C. § 503(b)(1)(A). The two general overriding policies of Section 503 of the Bankruptcy Code are to: (i) preserve the value of the estate for the benefit of its creditors; and (ii) prevent the unjust enrichment of the insiders of the estate at the expense of its creditors. *See In re Journal Register Co.*, 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009).

Section 503(c)(1) of the Bankruptcy Code prohibits any transfer:

> made to, or an obligation incurred for the benefit, *of an insider of the debtor for the purpose of inducing such person to remain with the debtor's business,* absent a finding by the court based on evidence in the record that--
>
> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>
> (B) the services provided by the person are essential to the survival of the business; and
>
> (C) either –
>
> (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>
> (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

11 U.S.C. § 503(c)(1) (emphasis added).

With respect to severance payments to insiders, section 503(c)(2) provides:

> (c) Notwithstanding subsection (b), there shall neither be *allowed, nor paid* –
>
> (2) A severance payment to an insider of the debtor, unless –
>
>     (A) The payment is part of a program that is generally applicable to all full-time employees; and
>
>     (B) The amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made.

11 U.S.C. § 503(c)(2) (emphasis added).

Section 503(c) of the Bankruptcy Code, added in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), was intended to curtail payments of retention incentives or severance payments to insiders, including bonuses granted to other employees without factual and circumstantial justification. *See Journal Register*; 407 B.R. at 536; *see also In re Pilgrim's Pride Corp.*, 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009) ("Section 503(c) was enacted to limit a debtor's ability to favor powerful insiders economically and at estate expenses during a chapter 11 case."); *In re Global Home Prods., LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (the amendments were added to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process.").

Section 503(c) establishes specific evidentiary standards that must be met before a bankruptcy court may authorize payments made to an insider for the purpose of "inducing such person to remain with a debtor's business, *or payments made on account of severance*." *See In re Dana Corp.*, 351 B.R. 96, 100 (Bankr. S.D.N.Y. 2006) (emphasis added); 11 U.S.C. § 503(c)(1), (2).

The BAPCPA amendments make it abundantly clear that if a proposed transfer falls within Section 503(c)(1) or 503(c)(2), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. *See In re Dana Corp.*, 351 B.R. at 100-101; *see also In re Siliken Mfg. USA, Inc.*, 2013 WL 5330481, at *7 (Bankr. S.D. Cal. Sept. 19, 2013) ("[T]he Code often subjects insider dealings to heightened scrutiny in recognition that even ostensibly arm's length transactions between insiders have an inherently coercive element to them.").

## ARGUMENT

**I. The Debtors Have Not Established that the Severance Payment Complies with Section 503(c)(2).**

Under Section 503(c)(2), a Court may approve severance payments to an "insider" only if the debtor presents evidence that (1) the payment is part of a severance program generally available to all full time employees of the debtor, and (2) the amount of the proposed payment is less than ten times the average severance payments made to non-insiders in the calendar year in which the proposed severance payment is made. *See In re Dana Corp.,* 351 B.R. at 102-03.

Here, as a threshold matter, the Debtors do not appear to dispute that Mr. Johnson - PGE Corporation's CEO and President - is an "insider." Indeed, if a debtor is a corporation, the term "insider" expressly includes an officer of the debtor. 11 U.S.C. § 101(31)(B)(ii); *see also In re The Village at Lakeridge, LLC*, 814 F.3d 993, 999 (9th Cir. 2016) ("Statutory insiders, also known as '*per se* insiders,' are persons explicitly described in 11 U.S.C. § 101(31) …. As a matter of law, a statutory insider has a sufficiently close relationship with a debtor to warrant special treatment.") *In re Marquam Inv. Corp.*, 942 F.2d 1462, 1465 (9th Cir. 1991) ("Warde Erwin was the president of Marquam. His son, Charles Erwin was listed as Marquam's director

and vice-president in Marquam's 1983 bankruptcy petition. Thus, Warde Erwin and Charles Erwin were insiders of Marquam.").

Because Mr. Johnson is an "insider," the Court may approve the Severance Payment "*only if* it satisfies the two pronged test of Section 503(c)(2)(A) and (B)." *See In re AMR Corp.*, 490 B.R. 158, 166 (Bankr. S.D.N.Y. 2013) (emphasis added).

The Debtors' Motion does not reference Section 503(c)(2). The Debtors instead represent that "[a]ny severance payments to be made to Mr. Johnson *during the pendency* of these Chapter 11 Cases *shall be subject* to the provisions of the Bankruptcy Code." *See* Motion, at p.11 n.6 (emphasis added).

This representation suggests that the Severance Payment need not, and will not, comply with Section 503(c)(2) if it is paid *after the Debtors emerge from bankruptcy*. Section 503(c), however, speaks to the allowance as well as the payment of obligations. Thus, its requirements apply with equal force regardless of whether the payment is to be made by the debtor prior to plan confirmation, or whether the successor of the debtor is directed to make such a payment after emergence from bankruptcy. *See In re AMR Corp.*, 490 B.R. at 166-67, 170 (disapproving proposed severance payment as part of proposed merger, even though payment would have been made after consummation of plan); *In re AMR Corp.*, 497 B.R. 690, 699 (Bankr. S.D.N.Y. 2013) (severance payment could not be approved as part of plan confirmation process without "comply[ing] with applicable law") *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 172-73 (Bankr. D.N.J. 2010) (holding severance provision invalid under section 503(c)(2) notwithstanding fact that severance was to be paid after plan effective date by reorganized debtor).

Regardless of the timing, the Court should not approve the Severance Payment, unless the Debtors demonstrate that the payment satisfies the requirements of Section 503(c)(2).

8

## II. The Debtors Have Not Established that the Employment Terms are Justified by the Facts and Circumstances of the Case.

Section 503(c)(3) of the Bankruptcy Code prohibits the payment of an administrative expense for:

> transfers or obligations that are outside the ordinary course of business and not *justified by the facts and circumstances of the case*, including *transfers* made to, or obligations incurred for the benefit of, officers, managers, or consultants *hired after the date of the filing of the petition*.

*See* 11 U.S.C. § 503(c)(3) (emphasis added); *see also In re Willow Bend Ventures*, LLC, 2019 WL 2252498, at *11 (Bankr. E.D. La. May 24, 2019) ("Section 503(c)(3) is most commonly cited when employee compensation packages are at issue.").[5]

Accordingly, the balance of Mr. Johnson's employment terms may be approved only if the Court finds that the terms are necessary to preserve the value of the Debtors' estate, and is "justified by the facts and circumstances of the case." *See* 11 U.S.C. § 503(c)(3); *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir. 1988) ("Any claim for administrative expenses and costs must be the actual and necessary costs of preserving the estate for the benefit of its creditors."), *superseded by statute on other grounds*, 11 U.S.C. § 365(d)(3); *see also In re Regensteiner Printing Co.*, 122 B.R. 323, 326 (N.D. Ill. 1990) (reversing approval of severance agreements for key employees, because debtors presented no evidence that severance payments

---

[5] The Motion is predicated on Sections 363(b) and 105(a). *See* Motion, at p.12. The Motion does not address Section 503(c)(3). In their pending motion to approve a key employee incentive plan for senior executives, the Debtors have contended that the test under Section 503(c)(3) is identical to the business judgment rule as applied under Section 363(b)(1). *See* ECF No. 2664, at pp. 17-18. This reading, however, would render Section 503(c)(3) superfluous. *See In re Pilgrim's Pride Corp.*, 401 B.R. at 236–37 ("To read section 503(c)(3) as requiring nothing not already required by section 363(b)(1) would violate" the principle of construction that Congress intended independent Code Sections to "have independent, differing impacts."); *see also In re GT Advanced Tech. Inc.*, 2015 WL 4459502, at *7 (D.N.H. July 21, 2015) (Section 503(c)(3) "directs courts to give more scrutiny to the business judgment of debtors than is permitted under the § 363(b)(1) business judgment test."). Further, a bankruptcy court's equitable authority under Section 105(a) must be exercised "within the confines of the Bankruptcy Code." *See Willms v. Sanderson*, 723 F.3d 1094, 1103 (9th Cir. 2013).

were necessary to preserve bankruptcy estate); *In re Pacific Gas and Electric Co.*, 2001 WL 34133840, at *2 n.4 (Bankr. N.D. Cal. July 13, 2001) (initial declaration "'on information and belief'" was "insufficient" basis to grant KERP motion).

The Debtors have not met this burden. Most importantly, neither the Motion nor the supporting declarations address whether the $3 Million Transition Payment is consistent with industry standards. Mr. Friske's supporting declaration acknowledges, though, that Mr. Johnson's total direct compensation is *above market*. See ECF No. 2666, at p.8 ("Mr. Johnson's total direct compensation falls between the 50th percentile and the 75th Percentile of the market.").[6]

Moreover, aside from a fleeting reference in a footnote,[7] the Motion fails to address the fact that the Debtors made the Transition Payment *before* they filed the Motion or obtained the Court's approval. Cf. *In re Rhead*, 232 B.R. 175, 181 (Bankr. D. Ariz. 1999) ("*Nunc pro tunc* relief is never lightly granted; Debtors must show extraordinary circumstances to justify such exceptional relief.")

Finally, much of Mr. Johnson's compensation is performance based. For 2019, the metrics are those utilized in the 2019 STIP. Notwithstanding the passage of time since the approval of the 2019 STIP, the Debtors' Motion does not address whether the Debtors are on track to satisfy the metrics. Nor does the Motion identify the specific achievement levels for the

---

[6] As noted above, Mr. Johnson's base salary is $2.5 million. This figure is significantly higher than the 2018 base salaries of the CEOs for Edison International ($1,219,971) and Sempra Energy ($1.1 million). See Proxy Statement for Sempra Energy filed March 22, 2019, at p.50 (available at https://www.sec.gov/Archives/edgar/data/1032208/000119312519082379/d674771ddef14a.htm); Joint Proxy Statement for Edison International and Southern California Edison filed March 15, 2019, at p.50 (available at https://www.sec.gov/Archives/edgar/data/827052/000120677419000873/edison3497151-def14a.htm).

[7] *See* Motion, at p.9 n.2 ("Mr. Johnson is currently being paid his compensation, subject to Court approval.").

"Financial Performance" metric.  And, for 2020 and 2021, the Debtors have not yet determined the performance metrics.

## **CONCLUSION**

The United States Trustee respectfully requests that the Court deny the Motion and grant such other relief as the Court deems fair and just.

Dated: July 17, 2019

Andrew R. Vara
Acting United States Trustee, Region 3

By:/s/ Jason Blumberg
Jason Blumberg
Trial Attorney for United States Trustee