Heinz Binder (SBN 87908)
Robert G. Harris (SBN 124678)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531
Email: Heinz@bindermalter.com
Email: Rob@bindermalter.com

Attorneys for TURN, the Utility Reform Network

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION<br><br>and<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br>      Debtors.<br><hr>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br>* All papers shall be filed in the Lead Case No. 19-30088 DM. | Case Nos. 19-30088 DM (Lead Case)<br>     19-30089 DM<br><br>Chapter 11<br>*Jointly Administered*<br><br>**OPPOSITION BY TURN TO MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(c) FOR ENTRY OF AN ORDER (I) APPROVING DEBTORS' INCENTIVE PROGRAM FOR CERTAIN KEY EMPLOYEES AND (II) GRANTING RELATED RELIEF [DKT #2664]**<br><br>Date: July 24, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**RELATED DOC NO. 2664** |

The Utility Reform Network ("TURN") opposes the approval of a key employee incentive plan ("KEIP") for twelve of the Debtors' senior executive officers at this time pursuant to the terms proposed in the Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(c) for Entry of an Order (i) Approving Debtors' Incentive Program for Certain Key Employees and (ii) Granting Related Relief (the "Motion"). TURN's reasons for opposing the Motion are as follows:

1. <u>The Approval of Unreviewable Insider Compensation is Premature</u>.

As the Court is aware, the Debtors have, as yet, not proposed their own plan or filed a disclosure statement. The Motion by Ad Hoc Committee of Senior Unsecured Noteholders to Terminate the Exclusive Periods Pursuant to Bankruptcy Code Section 1121(d)(1) of the Bankruptcy Code describes a vision for the future of the two Debtors at odds with that of the Debtors themselves. Little is known of the Debtors' own plan proposal beyond their desire to burden ratepayers with a large portion of the liability for their own corporate malfeasance. It is unlikely that the bondholders will support the proposed KEIP.

It has been held that approval of certain kinds of insider compensation subject to regulation under Bankruptcy Code section 503(c), particularly without provisions for review or reconsideration, may be denied when proposed too early in a case:

> In contrast to *Journal Register* and *Dana*, the Debtors here seek the Court's approval of this severance payment now, notwithstanding the fact that the Debtors' expected effective date of the merger (and plan) is some six months away. *See* Hr'g Tr. 26:3-7. Indeed, a plan and disclosure statement have yet to be filed. And there is a real consequence to such approval today: the UCC conceded at the hearing, and the Debtors did not contest, that approval now would resolve this issue for purposes of this bankruptcy case and preclude any challenge to the merits of the severance payment during the confirmation hearing on a plan of reorganization. Hr'g Tr. 63:24-25; 64:1-2.

*In re AMR Corp.*, 490 B.R. 158, 168, (Bankr. S.D.N.Y. 2013) (motion under 11 U.S.C. §§ 363, 503(b), and 105(a) for approval of an agreement to merge the debtors (debtor airline) with another airline granted; severance to CEO denied).

*///*

1

Absent provisions for reconsideration once a consensual plan has been negotiated, or in the event that a creditor plan is confirmed, the estate and creditors should not be burdened with the proposed KEIP. The Motion should be denied on this basis alone.

2. <u>The Debtors Have Failed to Meet Their Burden as Proponents of the KEIP</u>.

"The proponent of the KEIP bears the burden of proving that the plan is not a retention plan governed by § 503(c)(1)." *In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 (Bankr, S.D.N.Y. 2012). "Attempts to characterize what are essentially prohibited retention programs as 'incentive' programs in order to bypass the requirements of section 503(c)(1) are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages, when determining whether the compensation programs are subject to section 503(c)(1). *In re Borders Group, Inc.,* 453 B.R. 459, 470 (Bankr. S.D.N.Y. 2011). A Court cannot defer to the labels used by a debtor when determining whether a KEIP's true purpose is to either incent or retain. *See id.* ('A debtor's label of a plan as incentivizing to avoid the strictures of section 503(c)(1) must be viewed with skepticism . . ..'). Instead, a court must conduct its own holistic analysis to determine whether the performance goals in the KEIP constitute meaningful and challenging targets for the debtor. … [citation omitted]. A KEIP that proposes performance goals that are a sure-thing, and easily achieved through minimal effort by the debtors, should be re-characterized as a KERP that is primarily retentive and subject to §503(c)(1)*.* [citation omitted]" *In re Alpha Natural Res., Inc.,* 546 B.R. 348, 357 (Bankr. E.D. Va. 2016) (KEIP approved under Bankruptcy Code section 503(c)(3)).

The Debtors offer as evidence that achievement of the performance goals in the proposed KEIP are not easily achievable two opinions, neither of which fulfill their evidentiary burden. First, the Debtors offer the following from John Lowe, Senior Director of Total Rewards of the Debtors:

> It is clear to me that the Performance Metrics are not easily achievable or "layups." Rather, the Performance Metrics are intended to be challenging yet achievable. The Performance Metrics are largely based on the metrics used in the 2019 STIP, but with an added condition that automatically reduces the aggregate awards if either threshold or target performance is not achieved with respect to the PSI metric, thereby further demonstrating that achieving a KEIP Award is hardly a layup. The Debtors have only achieved their target STIP

2

metrics in five of the past nine years and have never achieved a maximum score, providing further evidence that historically the Debtors have not established metrics that are easily achievable. By its design, the KEIP is a true incentive plan not only because of the Performance Metrics, but also because awards are not guaranteed. Rather, as with the 2019 STIP, the KEIP is an "at-risk" plan, which provides no guaranty of payment, but is comprised of weighted metrics, each designed specifically to motivate the KEIP Participants to achieve the Debtors' safety, financial, and operational goals, and with complete final discretion left with the Compensation Committee and Board, as applicable.[1]

Mr. Lowe's premise that achievement of the Performance Metrics are not a "lay up" is rooted in his opinion that "[t]he Debtors have only achieved their target STIP metrics in five of the past nine years and have never achieved a maximum score, providing further evidence that historically the Debtors have not established metrics that are easily achievable." However, Mr. Lowe admits that "[t]he Performance Metrics are *largely* based on the metrics used in the 2019 STIP." Mr. Lowe's analysis is rendered fatally imprecise by his failure to describe what the differences between the two sets of metrics are and the extent to which they impact the potential for achievement of the new Performance Metrics. More importantly, Mr. Lowe does not say whether the threshold level for any of the proposed KEIP Performance metrics would have been met over the nine-year period reviewed. Without the foregoing information, neither the Court nor creditors can determine whether achievement of the Performance Metrics at any level is sufficiently likely that the KEIP must be viewed as a retention rather than a performance plan.

The Debtor's independent consultant offers more detail as to the differences between the 2019 STIP and proposed KEIP Performance Metrics[2]. Mr. Friske helpfully explains that " …the

---

[1] Declaration of John Lowe in Support of Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), And 503(c) for Entry of an Order (i) Approving Debtors' Incentive Program for Certain Key Employees and (ii) Granting Related Relief, 10:4-16.

[2] Declaration of Douglas J. Friske in Support of Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(c) for Entry of an Order (i) Approving Debtors' Incentive Program for Certain Key Employees and (ii) Granting Related Relief (the "Friske Decl.").

3

target awards for the KEIP are based on 100% of the 2019 target STIP percentage opportunity for each participant plus 75% of the percentage opportunity of the 2019 target LTIP award for each participant ….in each case subject to adjustment based on the Public Safety Index modifier…."[3] Unfortunately, Mr. Friske offers no view as to whether the KEIP Performance Metrics would have been met for the period prior to the filing of these cases or evidence as to the likelihood of them being met or not met post-filing, though the data for such an opinion surely exists given that these cases were filed in January, 2019.

"BAPCPA changes impose a high standard that requires challenging goals that insiders must meet in order to earn a bonus under an incentive plan that is not subject to § 503(c)(1). The targets at the higher end of the KEIP meet this requirement but the goals at the lower end do not. Because the SLT members will likely earn some bonus under the KEIP merely by remaining with the Debtors and regardless of the road the Debtors take, approval of the KEIP must be denied. Because the burden of proof has not been met, Judge Bernstein never reached and did "… not decide whether the KEIP is an appropriate exercise of business judgment or satisfies the 'facts and circumstances' test imposed under § 503(c)(3)." *In re Hawker Beechcraft, Inc.*, supra, 479 B.R. 308, 315-316.

Similarly, this Court need not reach the business judgment test and should deny the Motion because the Debtors have failed to meet their evidentiary burden as proponent of the KEIP.

3. <u>The Motion Also Lacks Basic Information About Its Proposed Beneficiaries</u>.

In *In re Hawker Beechcraft, Inc.*, 479 B.R. 308 (Bankr, S.D.N.Y. 2012), the Court also found, in denying approval of the KEIP proposed in that case, that "… the Debtors have failed to sustain their burden of proof. At the outset, they did not identify the roles of each member of the SLT or why, individually or as part of a team, they will contribute services that are necessary to achieve the targets." *Id.* at 313. While the names and corporate positions of each of the twelve insiders to benefit from the Motion are set forth, what each will do to assist the Debtors in achieving the KEIP Performance Metrics and how they will contribute is not described. Given the failure of

---

[3] Friske Decl., 5:17-21.

4

the Debtors to meet their burden of proof in this most basic regard, the Court should deny the Motion.

4. <u>The Request for Offender PG&E to Supply Information Bears a Response Before the Motion Can Be Considered.</u>

On July 10, 2019, the U.S. District Court, responding to reports in the media, issued the following directive:

> a. The Court has learned from ABC news that PG&E has made large campaign contributions to political candidates, even quite recently. The offender shall set forth the full amount of campaign contributions and to whom such contributions were made to by PG&E since January 1, 2017, and shall explain why those campaign contributions were more important that replacing or repairing the aging transmission lines described by the Wall Street Journal article and removing or trimming the backlog of hazard trees, and increasing vegetation management.
>
> b. PG&E has distributed almost five billion dollars in dividends prior to seeking the protection of the Bankruptcy Court. Please also explain why so much was paid out in dividends at a time when PG&E was aware of the problems named in the Wall Street Journal report and knew of its hazard tree backlog.

Both responses by the offender are due **JULY 31, 2019 AT NOON**.[4]

TURN respectfully submits that this Court should not award persons who may be directly involved in the conduct about which Judge Alsup is inquiring KEIP compensation to incentive them "… to place a greater emphasis on safety." Motion, 7:11. The Motion, if not denied, should at least be continued until such time as the District Court has made findings following responses to the Request.

Dated: July 17, 2019               BINDER & MALTER, LLP

By: /s/ *Robert G. Harris*
　　　Robert G. Harris
Attorneys for TURN, the Utility Reform Network

---

[4] Request for Offender PG&E to Supply Information, *United States of America, Plaintiff, v. Pacific Gas and Electric Company, Defendant.*, Case 3:14-Cr-00175-Wha [Dkt #1075] (the "Request").

5