WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                  **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11 (Lead Case) (Jointly Administered)<br><br>**DECLARATION OF JAMES MESTERHARM IN SUPPORT OF DEBTORS' OBJECTION TO MOTION OF THE AD HOC COMMITTEE OF SENIOR UNSECURED NOTEHOLDERS TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS PURSUANT TO SECTION 1121(d)(1) OF THE BANKRUPTCY CODE**<br><br>Hearing Date:  July 24, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102<br><br>**Obj. Deadline**: July 18, 2019, 4:00 p.m. (PT) |

I, James Mesterharm, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

I am a Managing Director of AlixPartners, LLP ("**AlixPartners**"), an affiliate of both AlixPartners, LLC and AP Services, LLC, which, by Order dated April 9, 2019 [Docket No. 1299], is authorized to provide interim management services to PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors-in-possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"). I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

I have been a full time restructuring advisor for over 25 years. I received a B.S. in Accounting and Management in 1990 from Purdue University and a Masters of Business Administration in Finance and Organizational Behavior in 1998 from Northwestern University's Kellogg School of Graduate Management, where I have been a guest lecturer on restructuring topics. I am a Certified Public Accountant and a Fellow of the American College of Bankruptcy. I have been employed by AlixPartners since September 1996 and am the Head of the Americas Turnaround and Restructuring Practice. AlixPartners is a global independent restructuring consulting firm that has a wealth of experience in providing restructuring advisory services, and has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to these chapter 11 cases. Since its inception in 1981, AlixPartners, its predecessor entities, and its affiliate, AP Services, LLC, have provided restructuring or crisis management services in numerous large cases. Some notable, publicly-disclosed restructuring assignments that I have personally led include American Tire Distributors, Pacific Drilling, Linn Energy, Inc., Paragon Offshore PLC, Walter Energy, Inc., Nautilus Holdings Ltd., Eastman Kodak Company, General Growth Properties, Hilex-Poly, Silicon Graphics Inc., Parmalat USA, Safety-Kleen Corporation, and Zenith Electronics Corporation.

I submit this Declaration in support of the Debtors' Objection (the "**Objection**"), filed contemporaneously herewith, to the *Motion of the Ad Hoc Committee of Senior Unsecured Noteholders to Terminate the Debtors' Exclusive Periods Pursuant to Section 1121(d)(1) of the*

*Bankruptcy Code*, dated June 25, 2019 [Docket No. 2741] (the "**Termination Motion**").[1] Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, including the Ad Hoc Term Sheet and the Amended Ad Hoc Term Sheet (each as defined below), and information provided to me by the Debtors' employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

**Funding Deficit under the Ad Hoc Plan**

I have reviewed the "Term Sheet for Plan of Reorganization" (the "**Ad Hoc Term Sheet**," and the plan described therein, the "**Ad Hoc Plan**") annexed by the Ad Hoc Committee as an exhibit to its Termination Motion, as well as the *Amended Plan Term Sheet* filed by the Ad Hoc Committee on July 17, 2019 (the "**Amended Ad Hoc Term Sheet**" and the amended plan described therein, the "**Amended Ad Hoc Plan**"). Based upon my review of the Amended Ad Hoc Term Sheet, the proposed Amended Ad Hoc Plan does not account for approximately $3.8 billion of funding necessary for the Debtors to emerge from chapter 11 based on the sources of financing and funds needed for emergence contemplated by the Amended Ad Hoc Plan. The uses that are not accounted for in the Amended Ad Hoc Term Sheet include the following: (a) approximately $1.4 billion of accrued interest on funded debt that is proposed to be refinanced and exchanged for replacement notes as part of the Amended Ad Hoc Plan, and (b) approximately $3.1 billion of expected emergence costs related to prepetition trade claim payments, professional fees, transaction fees, proposed backstop fees, and including a 15% contingency. This shortfall does not include any estimate for contract rejection damage claims, disputed claims, CPUC fines and penalties or other statutory payments required to emerge from chapter 11. A chart summarizing the shortfall in funding is set forth below.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| Sources of Plan Emergence Financing Under Amended Ad Hoc Plan (in billions) | | Funds Necessary to Emerge From Chapter 11 Under Terms of Amended Ad Hoc Plan (in billions) | |
|---|---|---|---|
| New Unsecured Debt Issuance | $4.0 | Wildfire Claims Settlement | $16.0 |
| New Secured Debt Issuance | $5.5 | Initial Contribution to New Go-Forward Wildfire Fund | $5.0 |
| New Investment in Equity of Reorganized Debtors | $19.0 | Repayment of DIP Facility | $2.6 |
| Company Insurance Proceeds | $2.2 | Repayment of Bond Maturities through 2022 | $6.4 |
| | | Accrued Interest on Funded Debt (excluding makewhole or similar costs) | $1.4 |
| | | Trade Claims and Other Emergence Costs (excluding any pre and postpetition interest) | $3.1 |
| **Total** | **$30.7** | **Total** | **$34.5** |
| **Shortfall = $3.8 Billion** | | | |

Therefore, in my opinion, the Amended Ad Hoc Plan does not provide the necessary funding for the Debtors to successfully emerge from Chapter 11.

### The Debtors Have Made Substantial Progress Towards Formulation of a Chapter 11 Plan

Since the commencement of these Chapter 11 Cases, the Debtors' resources have been devoted to successfully assuring a smooth transition into chapter 11 and minimizing the business disruptions normally attendant thereto, maintaining relationships with the Debtors' business partners, and establishing a collaborative working relationship with the US. Trustee, the Committees, the CPUC, and the advisors to the Governor's Office, as well as with the Debtors' other key economic stakeholders. Despite their short duration, I believe the Debtors have made substantial progress in the administration of the Chapter 11 Cases and towards the formulation of a viable and confirmable plan of reorganization, including:

- Stabilizing business operations, including restoring trade credit, and thereby substantially enhancing the Debtors' liquidity profile;

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

- Virtually eliminating demands for cash collateral and other forms of credit enhancement that were rampant at the inception of these cases and presented a significant liquidity challenge;

- Achieving a key settlement with the Public Entities resolving all of their wildfire claims for an aggregate amount of $1 billion;

- Creating a $105 million fund to address the housing needs of those displaced by the wildfires;

- Hiring a new Chief Executive Officer with significant utility experience and a well-documented safety record;

- Installing new senior leadership in both the Debtors' electric and gas businesses;

- Refreshing the Debtors' Board of Directors with new members with substantial safety and utility experience;

- Engaging in ongoing negotiations and discussions with the other two wildfire claimants' constituencies in an effort to achieve a consensual resolution of their claims to be embodied in a chapter 11 plan; and

- Engaging in regular weekly meetings with the CPUC to assure that all issues within the jurisdiction and authority of the CPUC are timely and comprehensively addressed in the context of a chapter 11 plan.

As stated, I believe the Debtors have made substantial progress in the administration of these cases. The Debtors achieved a major milestone in settling with the Public Entities, and the Debtors are engaged in ongoing settlement discussions with the subrogation claimants and the Tort Claimants Committee and its constituency. The Court only recently established October 21, 2019, as the Bar Date for filing claims, an important element of the plan process, and in either negotiating or estimating the Debtors' aggregate liability for the remaining wildfire claims. Furthermore, in order to address the fundamental issue of the Debtors' aggregate liability for the wildfire claims that are to be treated under the plan, concurrently with the filing of the Objection, the Debtors are filing a motion for the establishment of wildfire claims estimation procedures in order to implement a formal process

to address the parties' disparate views on this issue in a timely manner. I believe that establishing such a process also will serve to create the environment to facilitate and foster settlement negotiations.

[*Remainder of Page Intentional Left Blank*]

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct and that this Declaration was executed in San Francisco, CA, on July 18, 2019.

*/s/ James Mesterharm*
By: James Mesterharm

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119