WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Theodore Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br>**PG&E CORPORATION,**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br>☐ Affects PG&E Corporation<br>☑ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**PRELIMINARY RESPONSE IN OPPOSITION TO CLAIMANT ADAM CRONIN'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Relates to Dkt. No. 2579<br><br>Date: July 24, 2019<br>Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

Pacific Gas and Electric Company (the "**Utility**" or the "**Debtor**"), as debtor and debtor in possession in one of the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"), respectfully submits this preliminary response in opposition to claimant Adam Cronin's ("**Cronin's**") Motion for Relief from the Automatic Stay (the "**Motion**"). *See* ECF No. 2579. As set forth below, this Motion should be denied because it fails to make out a *prima facie* justification for stay relief.

## PRELIMINARY STATEMENT

On July 9, 2018, Cronin initiated a *pro se* action in San Francisco County Superior Court alleging wrongful termination from his employment with the Debtor, styled *Cronin v. Pacific Gas & Elec. Co.*, No. CGC-18-567818 (Cal. Super. Ct.) (the "**Cronin Action**"). Mot. ¶ 1. Cronin is a serial litigant who, in previous lawsuits, has voluntarily dismissed similar claims related to his employment with the Debtor. As Cronin alleges, the Debtor terminated his employment after learning that he tampered with an electrical meter socket without authorization. *Id*. ¶ 18. He also states that he was arrested for allegedly tampering with a meter, although the district attorney did not press charges. *Id*. Cronin amended his complaint on December 7, 2018. On January 4, 2019, the Debtor filed a demurer to Cronin's claims for wrongful termination in violation of California Labor Code § 1102.5 and intrusion into private affairs, which is still pending. The Cronin Action, along with all claims against the Debtor, has been stayed since the Debtor filed for chapter 11 on January 29, 2019. *See* 11 U.S.C. § 362(d)(1). On January 29, 2019, Cronin filed two proofs of claim, *see* Claim Nos. 31 & 36, and now seeks relief from the automatic stay under section 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") to pursue the Cronin Action in state court.

The Court has already found that stay relief is inappropriate at this stage of the restructuring, including for actions asserting prepetition personal injury claims. *See, e.g.*, Mem. Decision on Mots. for Relief from Stay, ECF No. 1982 ("**Gelman Decision**"). This prepetition wrongful termination action, in which Cronin seeks compensatory damages for alleged lost wages and emotional distress, should be treated no differently. Further, the Motion should be denied because it fails to make a *prima facie* showing for relief from the automatic stay under section 362(d)(1) of the Bankruptcy

Code. *See In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004) ("To obtain relief from the automatic stay, the party seeking relief must first establish a prima facie case. If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied.").[1] Accordingly, for the reasons set forth below, the Motion should be denied.

## ARGUMENT

### A. Legal Standard

The party requesting relief from the stay has the burden of making a *prima facie* showing of cause under section 362(d)(1) of the Bankruptcy Code. *See Plumberex*, 311 B.R. at 553; 3 Collier on Bankruptcy ¶ 362.10 (2019) ("Failure to prove a prima facie case requires denial of the requested relief."). In evaluating whether there is "cause" to lift the automatic stay, bankruptcy courts in the Ninth Circuit have applied the twelve factors enumerated in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).[2] *See, e.g.*, *In re Landmark Fence Co.*, No. CV 11-00934 AHM, 2011 U.S.

---

[1] Offering no support for the proposition, the Motion also asserts that mandatory abstention under 24 U.S.C. § 1334(c)(2) applies. *See* Mot. ¶ 4. Cronin's ultimate ability to litigate, however, requires an Order from this Court lifting the automatic stay. *See In re Conejo Enterprises, Inc.*, 96 F.3d 346, 352 (9th Cir. 1996) (holding that "a finding that mandatory abstention applies to [a] state [court] action does not preclude denial of relief from § 362's automatic stay"). Because the stay relief request should be denied for the reasons provided herein, the Court need not address abstention. *See In re Farmland Indus., Inc.*, 309 B.R. 14, 18 n.3 (Bankr. W.D. Mo. 2004) (stating that if "the Court finds that [no] cause exists to lift the automatic stay, the Court will not [need to] address [the movants'] arguments for permissive abstention." Nevertheless, the Court should likewise deny Cronin's abstention request because the Motion fails to make any argument for why abstention should apply and presents no facts weighing in favor of abstention. If the Court is inclined to consider the abstention issue, or otherwise believes that Cronin has made out a *prima facie* case, the Debtor respectfully requests that the Court set a briefing schedule for the Debtor to submit a full response to all of the arguments in the Motion before it rules.

[2] The *Curtis* factors are: (1) Whether the relief will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Dist. LEXIS 150928, at *9 (C.D. Cal. Dec. 9, 2011) (reviewing *Curtis* factors and upholding denial of request to lift stay); *Yun Hei Shin v. Altman (In re Altman)*, No. CC-17-1277-KuLS, 2018 Bankr. LEXIS 1947, at *16 (B.A.P. 9th Cir. June 26, 2018); *In re Tactical Ordinance & Equip. Corp.*, No. 04-04422 TLM, Bankr. LEXIS 3038, at *11 (Bankr. D. Idaho Mar. 17, 2005); *Plumberex*, 311 B.R. at 553.

B. **Relief from the Stay Will Prejudice the Debtor by Distracting from its Reorganization**

The Court has recognized that "there is too much at stake" in the Debtor's reorganization to "require [it] this soon to tackle specific individual cases." Gelman Decision 4. In the Gelman Decision, the Court found that "Debtors make a persuasive demonstration that more time is needed to attend to the myriad issues in this case without forcing them to resume defense of these [personal injury tort actions] absent compelling circumstances to justify relief [from the stay] now." *Id.* at 3–4; *see also Curtis*, 40 B.R. at 806 ("Even slight interference with the administration [of the debtor's estate] may be enough to preclude relief [from the automatic stay] in the absence of a commensurate benefit."). Indeed, the stay of state court litigation, including the Cronin Action, is critical to protect against a race to prosecute claims against the Debtor. The Debtor's restructuring remains in its early stages, and the Debtor needs breathing room to formulate a chapter 11 plan and develop a structured approach for addressing its substantial wildfire tort claims in an orderly manner. In connection with these efforts, the Debtors have filed a motion to establish estimation proceedings relating to their

---

responsibility for defending the litigation; (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination; (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) The impact of the stay and the balance of hurt. *Curtis*, 40 B.R. at 799–800.

wildfire claims, which are at the heart of their reorganization efforts See *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 502(c) for the Establishment of Wildfire Claims Estimation Procedures*, ECF No. 3091 (the "**Estimation Motion**"). Now is not the time to divert the Debtor's focus to individual claims that do nothing to further the reorganization efforts and can be addressed through the normal claims process.

Although Cronin asserts that there is "no prejudice to PG&E to lift the stay," Mot. 12, he offers no basis to support his statement. At most, Cronin suggests that the Debtor will not be prejudiced because (a) the Cronin Action is unrelated to the Chapter 11 Cases and (b) he believes that the Debtor will object to his proofs of claim, meaning that the parties will eventually need to litigate this matter in some form, whether in state court or as a contested matter in the Chapter 11 Cases. Mot. ¶¶ 11–12. These arguments fail to show how a lift of the stay will not prejudice the Debtor. Even if litigation at some future point is inevitable, this provides no justification for requiring the Debtor to defend itself now against the claims asserted in the Cronin Action. Though it is not related to the wildfire tort litigation, the Cronin Action would still divert the Debtor's resources and management away from its reorganization. Moreover, the Court has already found that stay relief is not appropriate in tort actions that are similarly unrelated to the Chapter 11 Cases. *See* Gelman Decision 5 (finding relief from stay not appropriate for personal injury actions).

An order lifting the stay would invite a flood of requests for relief from the stay, further distracting from the Debtor's reorganization and delaying recovery for all creditors, including Cronin, and undermining the purpose of the automatic stay. *See Landmark Fence*, 2011 U.S. Dist. LEXIS 150928, at *7 ("The purpose of the stay is not just to protect debtors but also creditors by preventing a race among creditors to assert claims against the debtor."). The Debtor has been working diligently to establish a streamlined process for handling wildfire and non-wildfire tort claims, and on July 1, 2019, the Court entered an order setting October 21, 2019 at 5:00 p.m. (Pacific Time) as the deadline for filing proofs of claim in the Chapter 11 Cases (the "**Bar Date**") and approving the Debtor's procedures for providing notice of the Bar Date to known and unknown claimants. *See* Order, ECF No. 2806. As stated, the Debtor has also filed the Estimation Motion

and is focused on the process for ultimately assessing its wildfire liabilities and formulating and filing a chapter 11 plan. If the Debtor is required to litigate individual tort and wrongful termination cases now, this will distract from these efforts. Furthermore, if the Court were to lift the stay, it would require the Debtor to devote resources to the Cronin Action ahead of the thousands of wildfire and non-wildfire tort claimants. This litigation, and potential additional prepetition employment claim lawsuits likely to soon follow, would thus prejudice the prepetition claimants who followed the proof of claim process.

### C. The Stay of the Cronin Action Will Not Cause Cronin Undue Hardship

Despite the rhetoric in his Motion and the First Amended Complaint, his claim, at its core, is an individualized, prepetition wrongful termination suit. Cronin seems to believe that the balance of hurt tilts in his favor because he has "suffered damages" as a result of his alleged wrongful termination. Mot. ¶ 13. But, as a plaintiff seeking damages from the Debtor, Cronin is no different from any other plaintiffs seeking recovery for alleged prepetition personal injury or property loss. The Court has found that relief from the stay is not appropriate for these actions, (Gelman Mot. 4–5), and Cronin has not shown why the Court should treat his case differently from the approximately one hundred non-wildfire tort cases against the Debtor.

Moreover, the Cronin Action is but one of several *pro se* lawsuits that serial litigant Cronin has initiated over recent years. Cronin has already sued PG&E once for allegedly infringing on his rights under the Family Medical Leave Act. *See* Notice of Removal, Ex. 1, *Cronin v. Pac. Gas & Elec. Co.*, No. 16-cv-3206 (N.D. Cal. June 10, 2016), ECF No. 1-1. Cronin initiated that lawsuit *pro se* in state court in May 9, 2016. *Id.* PG&E removed the action to federal court soon after, and Cronin subsequently obtained counsel, but he sought voluntary dismissal of the case only three months after filing an amended complaint. *See* Order of Dismissal, *Cronin v. Pac. Gas & Elec. Co.*, No. 16-cv-3206 (N.D. Cal. April 3, 2017), ECF No. 47. On July 9, 2018, the same date that he brought the Cronin Action, Cronin also initiated a case *pro se* against his supervisor at PG&E in the San Francisco County Superior Court of California. *See* Compl., *Cronin v. Duong Minh Nguyen*,

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

CGC-18-567920 (Cal. Super. Ct. July 9, 2018). Only a month later, Cronin filed a request for dismissal in which he stated that he had not recovered anything of value in the lawsuit. *See* Request for Dismissal, *Cronin v. Duong Minh Nguyen*, CGC-18-567920 (Cal. Super. Ct. July 9, 2018). Considering Cronin's litigious record and the regularity with which he has dismissed similar claims related to his employment with PG&E, it is clear that the stay of the Cronin Action will not cause him significant hardship.

Additionally, even if the state action were to proceed, Cronin could not collect on a judgment against the Debtor until the Court approves a final plan of reorganization. As the Court has explained, even if a party seeking stay relief were to prevail against the Debtor in the underlying action, the plaintiff "will still not be able to enforce their claim or take other actions to recover without further permission from the court." Gelman Decision 2–3.

Cronin dedicates most of his Motion to arguing that he has a "substantial probability" of succeeding on the merits of his wrongful termination claims. This contention (misplaced as it is), however, does not support a *prima facie* case for relief from the stay. Indeed, bankruptcy courts in the Ninth Circuit apply the twelve-factor analysis articulated in *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984), which does not consider the moving party's probability of success. *See supra* note 1; *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009). In suggesting that the Court consider whether the "creditor has a probability of prevailing on the merits," Cronin relies on a Delaware bankruptcy court opinion, *Matter of Rexene Prod. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). Bankruptcy courts in the Ninth Circuit have not followed this standard, and for good reason. It invites the parties to litigate the merits of the underlying dispute, an exercise that defeats the very purpose of the bankruptcy stay. In any event, Cronin's cursory arguments on this issue, even if applicable, do not outweigh the Debtor's need for breathing room to focus on administering its reorganization and the myriad other significant issues facing the Debtors at this time, including

8

their proposed estimation proceeding.³  *See Curtis*, 40 B.R. at 806 ("The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate.").

### D. The Cronin Action Has Not Progressed to the Point Where the Parties are Prepared for Trial

Finally, relief from the stay is not justified because the Cronin Action is still in the early stages of litigation. It has not even reached discovery. Despite filing his complaint in July 2018, Cronin has only briefed the Debtor's demurrer and the parties had not yet had oral argument prior to the stay. Mot. ¶¶ 14, 21. Cronin seems to suggest he has cause for relief because the Debtor's demurrer has been fully briefed, Mot. ¶ 14, but the demurrer is merely an initial step in the litigation. Recognizing the importance of the stay for the Debtor's reorganization, the Court has denied stay relief for actions that have progressed much further, including one in which the state court had set a date for trial. Gelman Decision 3. The Cronin Action is also not a complex litigation that will require an unusually long time to resolve once allowed to proceed. *See id.* at 4 n.3 (distinguishing the personal injury actions from the "lengthy litigation between CCSF and PG&E before the [FERC]" given its complexity). By Cronin's own admission, this is a "relatively small matter." Mot. ¶ 14. Because the Cronin Action is far from trial-ready, relief from the stay is not justified.

---

³ Cronin has not shown he has any likelihood of prevailing on the merits. First, the claims in Cronin's First Amended Complaint rest on unsupported allegations as to the Debtor's motivations and justifications for terminating his employment. *See, e.g.*, Mot. ¶ 25 (claiming that Cronin's termination violated California's whistleblower retaliation statute based on the assertion that the Debtor "*regarded* [Cronin] as a whistleblower or potential whistleblower . . .") (emphasis added). Mere pleadings of this nature cannot demonstrate any chance of succeeding in the litigation. Second, Cronin asserts that his "'probability of success' is at least 'slight'" because the Debtor did not file a demurrer to four out of six of his causes of action. Mot. ¶ 21. But the Debtor's decision not to file a demurrer as to each cause of action merely indicates that the Debtor chose, as a matter of litigation strategy, not to challenge the legal sufficiency of certain pleadings. In no way does that suggest that Cronin has any hope of presenting evidence sufficient to prove a single cause of action. Third, while the Motion primarily attempts to show the Debtor's demurrer "will fail," Mot. 6–8, Cronin again offers insufficient evidence to demonstrate a likelihood of success even if certain of his claims survive the pleading stage.

## CONCLUSION

For all of these reasons, the Motion fails to establish a prima facie case for its requested relief. The Court should deny Cronin's request for relief from the automatic stay at this time, and continue the preliminary hearing on his Motion until September 10, 2019, as with the Gelman, Valero, and Nathan Motions.

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By:   /s/ *Peter J. Benvenutti*
       Peter J. Benvenutti

*Attorneys for Debtors
and Debtors in Possession*