Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for the Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION**<br>-and-<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTIONS OF (I) AD HOC GROUP OF SUBROGATION CLAIM HOLDERS AND (II) OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date:   July 24, 2019<br>Time:  9:30 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>         Courtroom 17, 16th Floor<br>         San Francisco, CA 94102<br>Re:    Docket Nos. 2863 & 2904 |

The Official Committee of Unsecured Creditors (the "Official Committee") appointed in the above-captioned chapter 11 cases, by its attorneys, Milbank LLP, hereby objects to the *Motion of the Ad Hoc Group of Subrogation Claim Holders for Relief from the Automatic Stay* (the "Subrogation Group Lift Stay Motion") [Docket No. 2863], and to the *Amended Motion of the Official Committee of Tort Claimants for Relief from Automatic Stay to Permit State Court Jury Trial of 2017 Tubbs Wildfire Claims* (the "TCC Lift Stay Motion") [Docket No. 2904] (together with the Subrogation Group Lift Stay Motion, the "Lift Stay Motions").[1]

## PRELIMINARY STATEMENT

1. Through the Lift Stay Motions, the movants[2] request relief that will delay these cases and stall settlement negotiations. Initiation of state court litigation will reintroduce the inefficiencies of mass tort litigation that were an important motivating factor for the filing of these cases, and will result in an *ad hoc* approach to claims resolution rather than the centralized approach that is the *raison d'être* of the bankruptcy process. For these reasons, the requested relief should be denied.

2. But perhaps the primary purpose of the Lift Stay Motions was to place before the Court the movants' arguments concerning their views on claims estimation and its application in

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the *Memorandum of Points and Authorities in Support of Motion of the Official Committee of Tort Claimants for Relief from Automatic Stay to Permit State Court Jury Trial of 2017 Tubbs Wildfire Claims* [Docket No. 2843].

[2] "Movants" shall mean, together, the Official Committee of Tort Claimants ("TCC"), Ad Hoc Group of Subrogation Claim Holders ("Subrogation Group"), and the parties that have filed joinders in either Lift Stay Motion. *See* Docket No. 2861 (joinder of Barbara Thompson and Raymond Breitenstein identified in TCC's motion and "indispensable parties" John Thompson, Matthew Thompson, Peter Thompson and Stephen Breitenstein); Docket No. 2929 (joinder of John Caslin and Phyllis Lowe); Docket No. 2930 (joinder of William Edelen and Burton Fohrman, and additional parties Roxanne Edelen, The William L. Edelen and Roxanne G. Edelen Trust Agreement Dated June 22, 2011, Raleigh Fohrman, The Fohrman Family Trust Dated February 3, 1976, Jeremy Olsan, Ann DuBay, Jacob Olsan, and The Jeremy L. Olsan and Ann M. DuBay Trust Dated November 29, 2011, the heirs of decedent Monte Kirven (Kathleen Groppe, Ken Kirven and Brian Kirven), and the Estate of Monte Kirven); Docket No. 2942 (joinder of Don Louis Kamprath, Elizabeth Fourkas, Greg and Christina Wilson, and "indispensable parties" Ruth Kamprath, the Donald L. Kamprath and Ruth Johnson Kamprath Revocable Trust, Pete Fourkas [deceased], Alissa Fourkas, and the Fourkas Family Trust); Docket No. 2943 (joinder of Armando A. Berriz and heirs of Carmen Caldentey Berriz (Armando J. Berriz, Carmen T. Meissner, and Monica Berriz), and the Estate of Carmen Caldentey Berriz); Docket No. 2959 (joinder of Amica Mutual Insurance Company, BG Resolution Partners I-A, L.L.C. (an affiliate of The Baupost Group, L.L.C.), Encompass Insurance Company, Fire Insurance Exchange, Hartford Accident & Indemnity Company, Liberty Insurance Corporation, Mercury Insurance, Nationwide Mutual Insurance Company, and United Services Automobile Association); Docket No. 2983 (joinder of State Farm Mutual Automobile Insurance Company and its affiliates and subsidiaries).

1 these cases. Estimation of claims will be central to the progress of these cases and, ultimately, to
2 the confirmation of a plan of reorganization. Accordingly, the process for estimating claims
3 against the Debtors should be the subject of deliberate, educated discussion. The Official
4 Committee believes, and the movants appear to agree, that it is high time for the discussion on
5 the estimation process to begin; the Debtors' recent filing of an estimation procedures motion is
6 a first step in this direction. The Official Committee is reviewing the Debtors' proposed
7 procedures carefully, and hopes and expects that the claims estimation procedures for these cases
8 will be carefully negotiated between the Debtors, the movants here, the Official Committee, and
9 a variety of other stakeholders in the coming days and weeks. But it is these deliberations, and
10 not movants' requested relief, that should determine the appropriate estimation procedures for
11 these cases. The Lift Stay Motions should be denied.

**BACKGROUND**

3.  As the Debtors noted at the inception of these cases, their "chapter 11 filings were necessitated by a confluence of factors resulting from the catastrophic and tragic wildfires that occurred in Northern California in 2017 and 2018, and PG&E's potential liabilities arising therefrom." Decl. of Jason P. Wells in Support of First Day Motions and Related Relief (the "First Day Declaration") [Docket No. 28] at 3.

4.  The Debtors filed these cases in large part "to establish a process for PG&E to fully address and resolve its liabilities resulting from the 2017 and 2018 Northern California wildfires and to provide compensation to those entitled to compensation from the Debtors fairly and expeditiously." *Id.* at 4. The Debtors' goal is to achieve a resolution of these liabilities in this Court "more quickly and more equitably than those liabilities could be addressed and resolved in the state court system." *Id.*

5.  The Lift Stay Motions seek relief from the automatic stay to allow thirteen tort plaintiffs, and members of the Ad Hoc Subrogation Group (collectively, the "Preference Plaintiffs"), all of whom hold claims related to the 2017 wildfire known as the Tubbs fire, to proceed with their actions in the California Superior Court, and to request preferential adjudication of their claims under California Code of Civil Procedure Section 36. Joinders to the

Lift Stay Motions seek to expand the tort plaintiff group to about thirty-five plaintiffs.[3] The Debtors maintain that they are not liable for the ignition of, or damages resulting from, the Tubbs fire.

**A.      The California Superior Court Judicial Council Coordination Proceeding**

6.      The Preference Plaintiffs' actions are part of a Judicial Council Coordination Proceeding (the "JCCP") created by the California Superior Court to efficiently address wildfire-related litigation brought against the Debtors.

7.      On November 2, 2018, California Superior Court Judge Curtis E.A. Karnow, overseeing the JCCP, issued an order concerning the order in which claims relating to certain fires would be tried, specifically addressing whether claims related to the Tubbs, Atlas, or Sulphur fires should be tried first. In making this determination, Judge Karnow stated two primary objectives:

> First, the goal is to have a trial which includes a sufficient number of issues such that the verdict in that case will be persuasive for not only the other parties involved in that fire, but also will be seen as strongly predictive of the way issues are likely to be resolved in cases involving other fires. Second, given the fact that these fire cases are complicated and will take up substantial resources of the parties, counsel, and the court in any event, and may tread new legal ground, there is an interest in selecting something less than the most complex case.

Amended Decl. of Michael A. Kelly in Support of TCC Lift Stay Motion ("Kelly Decl.") [Docket No. 2907], Ex. B, at 1.

8.      Judge Karnow further explained that "[t]he risk of delay and error goes up with increased complexity. Very highly complex cases are more likely to include issues unique to the parties involved in that trial, and so not useful in the evaluation of issues common to other cases. It bears repeating that the selection of this first trial ought to be based in great part on the persuasive value its result will have for other cases and other fires." *Id*.

9.      After receiving suggestions from the various parties and analyzing the relevant factors, Judge Karnow determined that the Atlas fire cases should be tried first. In doing so,

---

[3]     Several joining parties assert that "[f]ailure to allow them to join in the preference motion will both impair and impede those interests and may subject Debtors to a substantial risk of inconsistent obligations." Joinder [Docket No. 2861] at 4; Joinder [Docket No. 2930] at 5 & 7; Joinder [Docket No. 2942] at 5; Joinder [Docket No. 2943] at 3.

Judge Karnow explained at length why "Tubbs is the most complex and wide ranging case to try," and that the nature and characteristics of the Atlas fire case would "make it [more] useful as precedent" than Tubbs. *Id* at 2.

10. In addition, Judge Karnow issued an order to set "a preference case protocol to facilitate the exchange of information related to cases potentially eligible for preferential trial setting." *See Declaration of Thomas R. Kreller in Support of Objection of the Official Committee of Unsecured Creditors to Motions of (I) Ad Hoc Group of Subrogation Claim Holders and (II) Official Committee of Tort Claimants for Relief from Automatic Stay* ("<u>Kreller Decl.</u>"), Ex. A (*Case Management Order 6 re: Preference Case Protocol, California North Bay Fire Cases*, JCCP No. 4955, Case No. CJC-17-004955 (Cal. Super. Ct. Dec. 31, 2018)). This order established a "Preference Committee for Individual Plaintiffs . . . to review potential preference cases and advise the submitting Plaintiff's counsel as to the viability and sequence of any potential filings." *Id*. ¶ 1. Judge Karnow delineated a process for providing notice of alleged preference claims under California Code of Civil Procedure Section 36, which includes a "written statement setting forth in detail the grounds for preferential trial setting" and any records and declarations in support thereof. *Id*. ¶ 5. Following the completion of this "Preference Protocol," the order requires the filing of a motion for preference. *Id*. ¶ 10.

**B.  The Lift Stay Motions and Relief Sought Therein**

11. The Lift Stay Motions ask this Court for entry of an order terminating the automatic stay to allow the movants to request that the Preference Plaintiffs proceed to a jury trial in the California Superior Court on claims arising from the Tubbs fire.[4]

12. While the TCC Lift Stay Motion asserts that eight of the identified Preference Plaintiffs qualify for preferential treatment under California Code of Civil Procedure Section 36(a), the motion makes no mention of a specific Section 36 provision that pertains to the remaining Preference Plaintiffs. *See* TCC Lift Stay Mot., Ex. A.[5]

---

[4] The Subrogation Group limits its request for stay relief to pursue claims only on the issue of PG&E's contested liability for the Tubbs fire.

[5] The Subrogation Group Lift Stay Motion does not identify specific plaintiffs they claim should be granted relief, but state that if "this Court determines that the [California] Superior Court is the appropriate forum for an

# ARGUMENT

**I.    Cause Does Not Exist to Lift the Stay to Determine the Question of Causation of the Tubbs Fire in State Court.**

13.    The movants bear the burden of establishing that the Court should grant relief from the automatic stay "for cause" to allow the Preference Plaintiffs to proceed with their actions in the California Superior Court. *See* 11 U.S.C. § 362(d)(1). Because "cause" is not defined in the Bankruptcy Code, bankruptcy courts determine cause on a case-by-case basis. *E.g.*, *In re Brotman Med. Ctr., Inc.*, No. BAP.CC-08-1056-DKMO, 2008 WL 8444797, at *5 (B.A.P. 9th Cir. Aug. 15, 2008).

14.    Cause does not exist to lift the automatic stay to grant the movants' requested relief. These cases were commenced in large part to address the Debtors' tort liabilities in a centralized forum that would enable efficient resolution and facilitate settlement. Far from creating efficiencies, the requested relief will result in distraction and delay by taking central issues out of the purview of this Court and creating hurdles to settlement negotiations.

15.    In its earlier denials of requests for relief from the automatic stay by parties situated similarly to the Preference Plaintiffs, this Court recognized the importance of a single, orderly process through which claims adjudication must proceed. The Court declined to grant the stay relief motions of Marina and Mikhail Gelman [Docket No. 1310] and of Valero Refining Company – California ("Valero") [Docket No. 315], each of which sought this Court's permission to pursue their prepetition tort claims against the Debtors in state or federal district court. *See Mem. Decision on Motions for Relief from Stay* [Docket No. 1982]. The Court reasoned that "it is still too early in these complex reorganization cases to force the Debtors to defend the claims of the two movants in two different courts while at the same time attempting to make progress toward the goal of a successful reorganization." *Id.* at 2. The Court further explained that "[w]hile there is no doubt that [PG&E's] alleged liability must be determined, if at all, and perhaps for both claims liquidated as to amount, it is far more preferable to make

---

adjudication of the claims of the TCC Plaintiffs, it follows that the Ad Hoc Subrogation Group should be permitted to participate in those trials, as well." Subrogation Group Lift Stay Motion, Ex. 1 (Memorandum of Points and Authorities) at 4.

progress toward that goal before the individual claims be dealt with." *Id.*  Additionally, the Court noted that even if it granted relief from the stay, and the Gelmans or Valero were granted a judgment against PG&E, neither plaintiff would "be able to enforce any judgment or take other actions to recover from PG&E without further permission" from the Court.  *Id*. at 2-3.

16.  Similarly, this Court recently dismissed an adversary complaint, without leave to amend, because the state law tort causes of action asserted therein (relating to the November 2018 Camp Fire) "should be handled and resolved through the claims process and not through a separate adversary proceeding."  *Order Granting Mot. to Dismiss First Am. Compl.*, Adv. Pro. No. 19-03005 (Bankr. N.D. Cal. July 10, 2019) at 2.

17.  That same analysis applies with equal force here.  As with the Gelman and Valero motions, the Lift Stay Motions seek to leapfrog the centralized claims resolution process.  While the Official Committee agrees that progress must be made toward the Debtors' reorganization, litigating certain issues in other courts will jeopardize, rather than facilitate, the negotiations that are critical to these cases' resolution—specifically, negotiations concerning estimation of tort claims.

18.  The movants posit that proceeding in state court is a superior alternative to an estimation process.  But the question of how to estimate claims, and for what purposes, is likely to be a central issue in these cases.  These issues deserve focused attention and negotiation among these cases' various constituents, and such discussions must—and will—begin now. Rather than addressing these important issues in response to lift stay motions, the parties should channel these efforts to negotiating toward a consensual view on process.  The Official Committee expects that the Debtors' motion to establish claims estimation procedures will kick-start these deliberations.[6]

19.  For a variety of estimation paths are available in these cases, especially if consensus can be achieved on a path forward.  The law is clear that this Court and the District Court have the power to estimate all claims in a centralized proceeding, and that as a part of that

---

[6] *See Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 502(c) for the Establishment of Wildfire Claims Estimation Procedures* (the "Estimation Procedures Motion") [Docket No. 3091].

proceeding also may determine the allowability of all claims. An estimation proceeding, which must be held in these cases in any event for any proposed plan to be confirmable, has the benefit of providing binding results for all parties, rather than only those whose cases are allowed to proceed on an *ad hoc* basis, as the movants propose. An aggregate claims estimation, and not individual trials, will bring all parties closer to a negotiated settlement.

20. That a claims estimation process is appropriate is clear; which process to employ is yet to be determined. The benefits and drawbacks of the various options for estimation, including those proposed in the Estimation Procedures Motion, should, and will, be considered in negotiations on the appropriate claims estimation process for these cases, and the Official Committee continues to evaluate all options carefully.

**II. The Path Movants Propose Is Procedurally Flawed.**

21. Like the movants, the Official Committee is eager to move these cases forward. But the movants' requested relief is not only inefficient, it also suffers from several procedural defects.

22. First, as previously noted, even if the Court were to grant the movants' requested stay relief, the movants would still need to make a request of Judge Karnow at the California Superior Court under California Code of Civil Procedure Section 36. Judge Karnow previously entered orders regarding procedures for identifying plaintiffs that qualify under Section 36, but has not yet determined how such plaintiffs' cases would proceed in the JCCP. To make their request, the movants would be required to follow the established "Preference Protocol" and to file motions with the California Superior Court. *See supra* ¶ 10; Kreller Decl. Ex. A.

23. In addition, the relief sought in the TCC's Lift Stay Motion is directly contrary to Judge Karnow's ruling that the Atlas fire cases should be tried first. After considering the arguments of the parties, and after careful deliberation, Judge Karnow determined that the Atlas fire cases, rather than the Tubbs fire cases, should be tried first in the JCCP on the ground that "Tubbs is the most complex and wide ranging case to try," and Atlas would be the most "useful as precedent." Kelly Decl., Ex. B, at 2. The movants' requested relief would require the California Superior Court to reconsider this measured decision.

24.     Furthermore, a grant of the movants' requested stay relief reintroduces certain inefficiencies involving mass tort litigation that both of the JCCP and these bankruptcy cases were designed to resolve. In addition to the inconsistent verdicts that might arise from individual trials, the preclusive effect of individual cases may be asymmetric, and is uncertain in any event. *See, e.g.*, *Parklane Hosiery Co, Inc. v. Shore*, 439 U.S. 322, 326-29 (1979) (non-mutual collateral estoppel may be applied only where certain delineated factors are met). This is especially true here, where subsequent plaintiffs that might have joined in a first case are precluded from doing so by the automatic stay. Moreover, appeals from individual state court cases are likely to take years, regardless of the verdict. Sending individual cases to state court is not the quick fix the movants present it to be.

25.     Bankruptcy process is designed to avoid these issues and to reach a resolution efficiently in a centralized forum—all the more efficiently if it can be done consensually. Now that the Governor of California and the California legislature have taken extraordinary steps to put in place a regime to assist the state's utilities, including the Debtors, the next logical step is to formulate an estimation framework that will lead to a consensus in these cases regarding the most efficient path forward. The Official Committee is prepared and eager to engage in these discussions with the Debtors and others who may have a viable plan to move forward.

## CONCLUSION

26.     For these reasons, the Official Committee respectfully requests that the Lift Stay Motions be denied.

DATED: July 19, 2019

MILBANK LLP

 */s/ Gregory A. Bray*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*