# EXHIBIT C

1  MICHAEL A. KELLY (SB #71460)
   mkelly@walkuplawoffice.com
2  KHALDOUN A. BAGHDADI (SB #190111)
   kbaghdadi@walkuplawoffice.com
3  **WALKUP, MELODIA, KELLY &**
   **SCHOENBERGER**
4  650 California Street, 26th Floor
   San Francisco, CA 94108
5  Telephone: (415) 981-7210

6  FRANK M. PITRE (SBN 100077)
   fpitre@cpmlegal.com
7  ALISON E. CORDOVA (SBN 284942)
   acordova@cpmlegal.com
8  **COTCHETT, PITRE & McCARTHY**
   San Francisco Airport Office Center
9  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
10 Telephone: (650) 697-6000

11 STEVEN SKIKOS (SB #148110)
   sskikos@skikos.com
12 **SKIKOS, CRAWFORD, ET AL.**
   1 Sansome Street, Ste 2830
13 San Francisco, CA 94104
   Telephone: (415) 546-7300

14
   **ON BEHALF OF DIRECT PLAINTIFFS**

   EVAN R. CHESLER (*pro hac vice*)
   echesler@cravath.com
   TIMOTHY G. CAMERON (*pro hac vice*)
   tcameron@cravath.com
   KEVIN J. ORSINI (*pro hac vice*)
   korsini@cravath.com
   **CRAVATH, SWAINE & MOORE LLP**
   825 Eighth Avenue
   New York, NY 10019
   Telephone: (212) 474-1000

   **ON BEHALF OF DEFENDANTS**

   CRAIG S. SIMON (SB #78158)
   csimon@bergerkahn.com
   **BERGER KAHN**, A Law Corporation
   1 Park Plaza, Suite 340
   Irvine, CA 92614
   Telephone: (949) 474-1880

   **ON BEHALF OF SUBROGATION PLAINTIFFS**

15

16              SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                        COUNTY OF SAN FRANCISCO

18 Coordination Proceeding              JCCP No. 4955
   Special Title (Rule 3.550)
19                                      **JOINT SUBMISSION RE PROPOSED**
   CALIFORNIA NORTH BAY FIRE CASES      **CASE MANAGEMENT ORDERS 5 AND 6**
20                                      **RE INDIVIDUAL CASES INCLUDING:**
                                        **CMO COMPLIANCE, CASE SPECIFIC**
21                                      **DISCOVERY, PRODUCTION OF CLAIM**
                                        **FILES, AND TRIAL SELECTION AND**
22                                      **PREFERENCE MOTIONS**

23

24                                      **Assigned for All Purposes to:**
                                        **Hon. Curtis E.A. Karnow, Dept. 304**

25

26         After meeting and conferring pursuant to California Rules of Court, Rules 3.724 and 3.727,

27 Plaintiffs and Defendants Pacific Gas and Electric Company and PG&E Corporation (collectively,

28 "PG&E") hereby jointly submit this Joint Submission and Proposed Case Management Order

                                         1

Case: 19-30088   Doc# 6191-3   Filed: 03/09/20   Entered: 03/09/20 11:30:40   Page 2
of 55

Number Five relating to issues involving Individual Plaintiffs (See CMO 1.A.1) including compliance with both CMO 1 and CMO 2, Case Specific Discovery, Production of Subrogation Claim Files, and Trial Selection.

## I. PROCEDURE FOR IMPROVING THE TRACKING OF COMPLIANCE WITH CASE FILING REQUIREMENTS

### A. Application to All Cases and Counsel

These provisions apply to any Individual Plaintiff whose case has been transferred to JCCP 4955 and to any Individual Plaintiff whose case is transferred to JCCP 4955 in the future.

### B. CMO 1 Requirements: Notice of Adoption/Short Form Complaint

On March 6, 2018, this Court entered CMO 1 by agreement of the parties. Pursuant to CMO 1, the Individual Plaintiffs filed the Master Complaint on March 12, 2018. On March 16, 2018, the Defendants filed their Master Answer. CMO 1 established the proper procedures in JCCP 4995 for filing and serving the Notice of Adoption of the Master Complaint (pp. 11-14).

Plaintiffs' Liaison has engaged in extensive outreach and communication and has collected information from each of the known law firms representing plaintiffs whose cases are coordinated in JCCP 4955. To date, those firms have identified more than 3,200 individual plaintiffs who are a party to a lawsuit against PG&E alleging damages related to one of the North Bay Fires. Plaintiffs' Liaison continues to receive responses from counsel identifying new plaintiffs. Plaintiffs' Liaison collects this data in order to assess each primary counsel's compliance with CMO 1, which requires service of either a Short Form Complaint or a Notice of Adoption, and to provide reports to this Court regarding compliance.

In order to track compliance with Case Management Orders, including CMO 1, the Individual Plaintiffs retained BrownGreer PLC ("BrownGreer") to manage and control all of the case-specific data relating to JCCP 4995. Under the supervision of Individual Plaintiffs' Lead and Liaison counsel, BrownGreer has reviewed and uploaded all of the Notices of Adoption and Short Form Complaints into a database, referred to hereinafter as the BrownGreer Portal.

Each Individual Plaintiff with a Short Form Complaint or Notice of Adoption has been given a unique control number, which has been connected to a particular file. The BrownGreer

1 Portal has and will continue to assist the Court with monitoring compliance with Case

2 Management Orders 1 and 2. To date, 3,100 plaintiffs (99%) have complied with CMO 1 by

3 serving a Short Form Complaint ("SFC") or Notice of Adoption ("NOA").

4 In the interests of maintaining an orderly and complete list of Plaintiffs who have adopted

5 the Master Complaint for the benefit of the Court, Individual Plaintiffs propose that BrownGreer

6 provide a regular Notice of Adoption Report to the Court. This report will include the name of

7 each plaintiff who has adopted the Master Complaint by virtue of serving an NOA or by filing an

8 SFC, as well as: the name of the primary law firm representing the plaintiff; the fire or fires

9 alleged to have caused injuries to the plaintiff or plaintiff household; the docket case number; and

10 the NOA/SFC case number, hereinafter "Household Number".[1] The provision of these Notice of

11 Adoption Reports will not obviate, limit, or otherwise affect plaintiffs' pleading obligations under

12 CMO 1.

13 To assist lead counsel in tracking information pertaining to compliance with case filing

14 requirements, going forward, any individual plaintiff who seeks to initiate litigation may do so

15 initially through the BrownGreer Portal, which provides the means to submit basic individual

16 plaintiff information as well as an interactive form for the preparation of an NOA or an SFC. The

17 BrownGreer Portal will also assign the Individual Plaintiff(s) with a Household Number, which

18 shall be used on the SFC and NOA of the Master Complaint.

19 **II. CASE MANAGEMENT ORDER TWO: LIABILITY DISCOVERY FROM
   INDIVIDUAL PLAINTIFFS**

20

21 **A. CMO 2 – Rules Applicable to Cases Added to the JCCP**

22 The parties have agreed that for new cases added to the JCCP, each Individual Plaintiff

23 shall complete and upload to the BrownGreer Portal the CMO 2 Questionnaire within 30 days

24 from the order granting coordination of their case. Then, for all new cases, BrownGreer will

25 present to the Defendants and to Individual Plaintiffs' leadership the responsive information in a

26

27 _____

[1] Household Number will be used synonymously with the Notice of Adoption Complaint Number.
28 This unique identifier will be used to capture the claims of all plaintiffs who file together under
one NOA/SFC per CMO 1, including individuals, as well as business entities.

3

1   CMO 2 report every sixty (60) days.  The next CMO 2 report shall be due on January 14, 2019.

2       **B.    CMO 2 – Plaintiffs as Witnesses**

3       On November 16th, Plaintiffs' leadership provided a set of the collected CMO 2 responses

4   to PG&E. PG&E has requested depositions of individual plaintiffs who claimed to have witnessed

5   what could be the ignition of a particular fire.  The Individual Plaintiffs' leadership requested that

6   PG&E review the interrogatory responses and coordinate with Individual Plaintiffs' leadership and

7   representing counsel prior to requesting the deposition of an individual plaintiff.

8   **III.    DAMAGES INFORMATION FROM SUBROGATION PLAINTIFFS**

9       CMO 1 contemplates the production of subrogation files/claim files on a rolling basis (see

10  CMO 1, pp. 16-17).  The parties have met and conferred regarding a schedule governing the

11  production of claim files and payment data from Subrogating Plaintiffs.  The following procedures

12  have been agreed to by the parties and will govern the production of claim files to the Individual

13  Plaintiffs and to PG&E.

14      **A.    Retained Individual Plaintiffs—Insurance Information Sharing**

15      Each Counsel or Law Firm with a case coordinated in JCCP 4955 shall submit within 10

16  days of the entry of CMO 5 a List of Individual Plaintiffs, whether filed or unfiled, who have

17  retained Counsel or Law Firm in conjunction with claims arising out of a fire that is subject to

18  JCCP 4955.  This List shall include:

19      •       The first name and last name of all adult members of each household (household
20              defined as a group of Individual Plaintiffs suffering a loss associated with the same
                address);[2]

21      •       The address of the loss location (street addresses only; P.O. Boxes and Parcel
22              Numbers are not acceptable);[3] and

        •       The name of all known insurance carriers providing property insurance coverage to
23              the household members.

24      Subrogation Plaintiffs shall provide a copy of the Complete List of Individual Plaintiffs to

25  BrownGreer for import and matching to the existing BrownGreer Individual Plaintiff Database.

26  _____

27  [2] To include business entity Direct Plaintiffs, where applicable.

28  [3] Where a property has no street address, Counsel or Law Firm shall provide the best available
    identifying information for that property.

### B. Individual Plaintiffs Retained After Entry of CMO 5—Insurance Information Sharing

For cases retained after entry of CMO 5, each Counsel or Law Firm with a case coordinated in JCCP 4955 shall submit an updated complete List of Individual Plaintiffs, whether filed or unfiled, who have retained Counsel or Law Firm in conjunction with claims arising out of a fire that is subject to JCCP 4955 every sixty (60) days to BrownGreer.  The List shall include:

- The first name and last name of all adult members of each household (household defined as a group of Individual Plaintiffs suffering a loss associated with the same address);

- The address of the loss location (street addresses only; P.O. Boxes and Parcel Numbers are not acceptable); and

- The name of all known insurance carriers providing property insurance coverage to the household members.

### C. Subrogation Claim File Production Master Control Spreadsheet

Subrogation Plaintiffs shall independently conduct a "matching" project between the List of Individual Plaintiffs and the Subrogation List of Claims to identify all property insurance claims related to each of the Individual Plaintiff households.  Wherever a match is identified, Subrogation Plaintiffs will endeavor to link the List of Individual Plaintiffs with the Subrogation claim information for each household, and with the unique Individual Plaintiff Control Number and/or the Household Number assigned by BrownGreer.

Subrogation Plaintiffs shall create an initial matching spreadsheet called "Claim File Production Master Control" ("CFMC").  The CFMC shall combine and link information from the List of Individual Plaintiffs, the Subrogation List of Claims and the BrownGreer Individual Plaintiff Database as follows:

- Client information submitted by the Individual Plaintiff firms (client/household member names, loss address, carriers);

- The corresponding BrownGreer Individual Plaintiff Control Number and/or Household Number; and

- Insurance claim information matched to the Individual Plaintiff/Household, including Name of Insured, Carrier Name, Claim Number, Date of Loss (as reported to carrier), Loss Location Address, amount paid, open reserves (if any), and the status of adjustment of the claim by the carrier.

5

Upon completion, the initial CFMC will be provided to BrownGreer for import into a central data management system. The BrownGreer Portal will then become the central repository for management of all Individual Plaintiff data, including any insurance claim data provided by the Subrogation Plaintiffs. BrownGreer will provide the Subrogation Plaintiffs with access to the BrownGreer Portal to facilitate ongoing matching between Individual Plaintiff and Subrogation data.

- Subrogation Plaintiffs will update the paid and open reserves as well as claims status for all claims matched to Individual Plaintiffs in the BrownGreer Portal regularly, and no less frequently than every four (4) months.

- Upon completion of the initial matching process outlined above, Subrogation Plaintiffs will update the carrier data reported to the BrownGreer Portal to provide a breakdown of payments by coverage, to include payments under Building, Contents/Business Personal Property, Alternative Living Expenses/Business Interruption and Auto/Specialty. Once a coverage breakdown has been added to the BrownGreer Portal, all updates going forward will include a breakdown by coverage.

**D. Individual Plaintiff Insurance Claim File Production**

The Subrogation Plaintiffs will produce claim files to BrownGreer as follows:

- For any claim that has been matched to an Individual Plaintiff Household, the Subrogating Plaintiff will produce the closed claim file to BrownGreer once the claim has been closed for adjustment; and

- BrownGreer will upload the claim file to the BrownGreer Portal and alert counsel, or the individual plaintiff (if pro se), by way of email notification, that counsel or pro se plaintiff has twenty-one (21) days to review the insurance claim file and object to its production and/or redact information from the production. As soon as representing counsel or the *pro se* plaintiff marks the claim file as "review complete", the claim file will be made available to the Defendants through the BrownGreer Portal. Plaintiff shall upload into the BrownGreer Portal the approved version of the claim file for production to the Defendants. However, if no review is performed or objection made within twenty-one (21) days of email notification, then the insurance claim file will automatically be made available to the Defendants through the BrownGreer Portal as provided by Subrogating Plaintiff.

**E. Access to the BrownGreer Portal**

Each Individual Plaintiff, Subrogation Plaintiff, and Defendant shall establish a secure connection with the BrownGreer Portal by obtaining authorized user names and secure login passwords to permit use of BrownGreer Portal by counsel.

Each Plaintiff shall continue to use the BrownGreer Portal to request, obtain, complete, or upload any required data, and serve the appropriate CMO 1 and 2 compliance information online

6

1 (including uploading PDFs or other electronic images, photographs and videos of any records

2 required). Liaison Counsel for Individual Plaintiffs shall continue to work with BrownGreer to

3 ensure CMO compliance and will continue to view, search and download non-confidential

4 materials submitted to the BrownGreer Portal. Finally, the Court may establish a secure

5 connection with the BrownGreer Portal by obtaining an authorized user name and secure login

6 password to permit use of the BrownGreer Portal by the Court.

7 Except as set forth herein, Counsel for plaintiffs and each *pro se* plaintiff shall be

8 permitted to view, search and download on the BrownGreer Portal those materials submitted by

9 that Plaintiff and by Defendants relating to that Plaintiff. Plaintiffs' Co-Liaison Counsels shall

10 maintain administrative access co-equal with BrownGreer to manage data and to facilitate

11 communications consistent with the purposes of this order.

12 **IV. PRODUCTION OF INDIVIDUAL PLAINTIFF CASE-SPECIFIC DAMAGES INFORMATION AND SUPPLEMENTAL PROCEDURES RELATING TO**
13 **BELLWETHER AND PREFERENCE CASES**

14 **A. CMO 1: NOA – Plaintiff-Specific Information.**

15 Each filed SFC and NOA includes 21 enumerated categories of damages suffered by a

16 particular plaintiff or Individual Plaintiff Household. That list of damage categories must be

17 completed by each Individual Plaintiff Household.

18 The original purposes for the use of the NOA/SFC and the stay on damages discovery were

19 to balance the need for information and the difficult burdens on fire victims.[4] Both Individual

20 Plaintiffs and PG&E conveyed this sentiment to the court at the first case management conference

21 on February 27, 2018. (See Hearing Transcript pp. 31:8-33:20.)

22 In order to address these concerns, and in keeping with the spirit of the CMO 1 stay of

23 damages discovery, Individual Plaintiffs' Lead and Liaison Counsel and PG&E propose that each

24 individual plaintiff shall be required to confirm the actual damage categories that apply to that

25 plaintiff's specific case. This confirmation is herein referred to as the "CMO Compliance

26

27 ───────────────

[4] PG&E reserves the right to move to lift the stay on damages discovery, either generally or as to a
28 specific firm, following meet and confer. Plaintiffs' leadership reserves the right to oppose any lifting of the stay on damage discovery.

7

1  Information" and shall be submitted by each Individual Plaintiff to the BrownGreer Portal. The

2  parties have agreed to use the BrownGreer Portal to hold such information.

3      Each individual plaintiff whose case has been coordinated in JCCP 4955 before the entry

4  of CMO 5 shall submit the CMO Compliance Information to the BrownGreer Portal within 30

5  days of the entry of CMO 5. Each individual plaintiff whose case is coordinated in JCCP 4955

6  after entry of CMO 5 shall have 30 days from the entry of the order granting coordination of that

7  plaintiff's case in which to submit the CMO Compliance Information to the BrownGreer Portal.

8      Service of completed CMO Compliance Information shall be deemed to occur when the

9  submitting party has performed each of the steps required by the BrownGreer Portal to execute the

10 online submission of the materials, and the submitting party has received confirmation on screen

11 that the materials have been successfully submitted.

12  **B.     Trial Selection: CMO 4**

13      **1.      Atlas Fire**

14      Following the October 25, 2018 case management conference and the entry of CMO 4, the

15 parties have met and conferred regarding the case selection procedures for the first Bellwether

16 trial.  The parties agree that the Court set for trial a group of claims representing the majority of

17 the types of claims that will be presented by average or typical plaintiffs in the litigation as a

18 whole.  The parties have agreed to ten separate categories of claimants, each of which holds one or

19 more of the following types of claims:

20          1.    Wrongful death
            2.    Personal injury
21          3.    Total loss of home on property larger than 5 acres
            4.    Total loss of home on property smaller than 5 acres
22          5.    Partial loss/non-total damage to home
            6.    Commercial loss to non-winery
23          7.    Commercial loss to winery/vineyard
            8.    Loss/displacement of renter/tenant with destruction of personal property
24          9.    Damage/destruction to raw land without loss of home
            10.   Smoke and soot

25

26 In order to select the 15 plaintiffs for trial under CMO 4, the plaintiffs will present 20 cases to

27 PG&E for review with the completed CMO Compliance Information from the BrownGreer Portal

28 for each of these plaintiffs.

[PROPOSED] CMO 5: AMENDED EVIDENCE PRESERVATION, CMO 3 COMPLIANCE, CASE
SPECIFIC DISC., PROD. OF CLAIM FILES AND TRIAL SELECTION AND PREF. MTNS - JCCP No. 4955

Lead Counsel for Public Entities continues to meet and confer with Leadership and Defense counsel regarding public entity bellwether participation in the September 23, 2019 Atlas trial. Counsel plans to fully brief the issue in preparation for the January 25, 2019 Case Management Conference but has raised during meet and confer conversation the prospect of including Napa County in the subject Atlas trial as a means to understanding public entity valuation.

### 2. Sulphur Fire

CMO 4 provides for a Bellwether process relating to the Atlas Trial. The parties have already presented to this Court briefing and oral argument relating to the Bellwether Trial Selection procedures. The Singleton Plaintiffs have requested an all-issues trial of 5-10 cases for late June, 2019, for the Sulphur Fire. PG&E opposes the request. PG&E notes that the Court has already set two prior Case Management Conferences to address the scheduling of the non-preference trial. The Singleton Plaintiffs already requested this and the Court rejected this approach. It is inappropriate to re-litigate the issues that have been previously litigated here.

### C. Preference Cases and Preference Protocol

PG&E and leadership for Individual Plaintiffs recognize that there may be a number of individuals who believe they may qualify for preference trials and that such trials may relate to any number of the various fires that are subject to this coordinated proceeding. In an effort to manage the process around the filing of preference claims, PG&E and leadership for Individual Plaintiffs and Subrogation Plaintiffs have negotiated a protocol for the evaluation of preference claims, which is attached hereto as Exhibit C. This protocol has been modeled much like the one that was entered in certain cases concerning fires outside of PG&E's service territory (*i.e.*, the Southern California fire cases) and is consistent with the case realities that have presented themselves in other catastrophic mass tort litigation before this Court. To the extent any attorney representing an Individual Plaintiff in this case believes it is appropriate to file a motion for preference trial settings under California Code of Civil Procedure Section 36, such attorney must utilize the mechanisms identified in the Order regarding Preference Protocol entered

9

simultaneously with this Order. To the extent that a proposed plaintiff preference request has a corresponding Subrogation claim, Subrogation Leadership will be included and consulted as well. The Preference Protocol agreed to by leadership for the parties is presented as proposed CMO 6.

## V. RESPONSE TO CASE MANAGEMENT CONFERENCE STATEMENT FOR CERTAIN INDIVIDUAL PLAINTIIFFS

On the afternoon of Friday, December 21, the Singleton firm presented PG&E and counsel for the various plaintiff groups an 11-page PDF statement with instructions to attach that document to the Joint CMC Statement.[5] Given that the Joint Statement would be filed on Christmas Eve, the submission left the parties essentially no time to actually meet and confer. The PDF statement followed a week of requests for the Singleton firm's substantive positions and a December 20 letter from PG&E documenting the firm's failure to meet and confer. Finally, the PEC sent a written statement to the Singleton firm and all counsel on December 21:

> "We take seriously the meet and confer requirements of the court. We would have liked to have the opportunity to review your positions and to present the issues to the PEC, PSC and to all counsel.
>
> Over 50 law firms in this litigation are proceeding in cooperation towards common litigation goals. No firm's clients or lawyers' interests are more important than any others in this case.
>
> We have asked for your submission for a week. It is now the Friday before Christmas Eve and we have received nothing other than statements asking to relitigate issues or seeking a separate special arrangement for your firm." (Email from K. Baghdadi to Gary LoCurto and Frank Pitre, et al. dated 12/21/2018)

This Court asked for a single submission with all parties' positions included. (Oct. 25, 2018 Status Conference Transcript, 18:15 – 19:4) In light of this procedural history, the Singleton submission violates the Court's instructions at the last hearing.

### A. PG&E's Response

While one Plaintiff in the Singleton Group has filed a motion seeking statutory preference, the bulk of the requests now made by the Singleton Group are much broader and were explicitly

---

[5] The Singleton Firm submission is attached hereto as Exhibit C.

Case 19-30088 Doc 3108-5 Filed 07/19/19 Entered 07/19/19 08:07:40 Page 11 of 55

[PROPOSED] CMO 5 AND 6 RE INDIVIDUAL CASES INVOLVING MINORS, CASE SPECIFIC DISC., PROD. OF CLAIM FILES AND TRIAL SELECTION AND PREF. MTNS - JCCP No. 4955

designed to allow this one group of Plaintiffs—who have claims related to many different fires and share nothing in common other than the fact that they are represented by the same lawyer—to disengage completely from the rest of the thousands of parties to these coordinated proceedings. If the Singleton Group were to succeed in their efforts, they would in effect create two different JCCPs—one for all of the Plaintiffs represented by Gerald Singleton and one for everyone else.[6]

The Singleton Group's submission is a direct attack on the concept of coordination and this Court's Coordination Order and should be rejected. Allowing the Singleton Group to separate from the overall coordinated proceedings would not only be grossly inefficient, it would also prejudice the rights of PG&E and the thousands of other claimants who are part of the coordinated proceeding. As the Court is aware, there are dozens of different law firms representing the thousands of Individual Plaintiffs who have suffered losses in connection with the North Bay Fires. With the exception of the Singleton Group, these lawyers are working together efficiently and effectively through Plaintiffs' Leadership, which is in turn working with PG&E to move the entire coordinated proceeding on a path toward resolution. The Singleton Group has made no showing as to why it needs to be treated differently and be permitted to pursue its own path divorced from all of the procedures in place to protect the due process rights of all involved.

In fact, this effort to disrupt the entire coordinated proceeding appears to be nothing more than an attempt by one lawyer to elevate the interests of a small subset of the overall parties above all others and jump to the front of the line. The Singleton Group has not been coy about this desire. Instead, the Singleton Group has adamantly refused to even be part of the mediation process that PG&E and Individual Plaintiffs' Leadership has established as a result of discussions with the Court at prior Case Management Conferences ("CMC"). The Singleton Group has insisted on pursuing

---

[6] Although it may be the case that certain trials do need to move forward given a particular Plaintiff's statutory rights, that is a completely different issue than permitting a subset of Individual Plaintiffs to separate themselves entirely from the coordinated proceedings regardless of whether they are entitled to any preference.

PG&E'S ISSUED PROPOSED CMO 15 AND JOINDER CASES' MO TO COMPLIANCE CASE
SPECIFIC DISC., PROD. OF CLAIM FILES, AND TRIAL SELECTION AND PREF. MTNS - JCCP No. 4955

1  this path of inefficiency while offering to drop it entirely—including all preference motions—if

2  PG&E will agree to mediate these Plaintiffs' claims separate from everyone else's claims.

3  As the Court is aware, the primary charge to the Coordination Judge is to "manag[e] all steps

4  of the pretrial, discovery and trial proceedings to expedite the just determination of the coordinated

5  actions without delay".  (Rule of Court 3.541(b).)  To achieve this goal, the Coordination Judge is

6  "vest[ed]" with "whatever great breadth of discretion may be necessary and appropriate to ease the

7  transition through the judicial system of the logjam of cases which gives rise to coordination".

8  (*McGhan Med. Corp. v. Superior Court*, 11 Cal. App. 4th 804, 812 (1992); *id.* at 813 ("One of the

9  purposes, in our view, of a centralized coordinating authority is to vest in one administrator the

10  power to organize the litigation in an efficient and equitable manner, for the benefit of all.").)

11  One way in which the Coordination Judge is authorized to manage the coordinated actions

12  efficiently is by appointing liaison counsel to act on behalf of each side included in the coordinated

13  proceeding.  (Rule of Court 3.506(a).)  This Court has chosen to appoint Lead Counsel for each

14  group represented in this coordinated proceeding, and has clearly established the roles and

15  responsibilities of such groups.  (*See* CMO No. 1 at 1-10.)  The Singleton Group should not be

16  entitled to derail this entire process—which is working effectively for the other thousands of

17  claimants and PG&E—by making separate discovery and trial requests that will apply only to a

18  limited group of claimants.  To create separate litigation tracks for certain groups of Plaintiffs will

19  simply delay the entire process and will jeopardize the parties' ability to reach the earliest resolution

20  of the totality of Plaintiffs' claims.

21  Given the overall scope of these proceedings, it simply is not enough for the Singleton Group

22  to complain that there has been some delay by requiring them to work through Plaintiffs' Leadership

23  (a claim that is nothing more than an unsupported assertion).  Where certain counsel participating

24  in a coordinated proceeding have likewise complained that coordination may cause delay to the

25  detriment of those particular counsel, the Court of Appeal has stated that although "[i]t is possible

26  that some delay in certain cases may be experienced[,] [w]e view this potential detriment to the few

27  to be a modest price to pay for the efficiency to be gained by the majority of cases through

28  coordination."  *McGhan*, 11 Cal. App. 4th  at 813.

12

### 1.    Request To Set A Date For The Sulphur Trial.

The Singleton Group has renewed their request for a Sulphur fire bellwether trial in 2019. This Court should once again reject that request. Prior to the October 25 CMC, the Singleton Group submitted a proposal asking for a Sulphur fire bellwether trial to be set for March or April of 2019. At the CMC, both Plaintiffs' Leadership and PG&E opposed the Singleton Group's proposal, arguing that the Sulphur fire would not be appropriate for the first bellwether trial given its limited impact compared to the Tubbs and Atlas fires. (10/25/18 CMC Tr. 23:25-24:7 (Individual Plaintiffs' Leadership stating that "[f]or a host of reasons, it was determined by the larger group, including subrogation and the public entities, that it was not going to be helpful in moving the litigation forward toward resolution"; *id.* 40:24-41:13 (PG&E arguing that given the Sulphur fire's limited damages, it has "no chance of moving the needle" with respect to settlement).) Although PG&E understands that the Sulphur fire and the damage it caused is tragic for those who were impacted, as the Singleton Group acknowledges, the Sulphur fire destroyed only approximately 160 structures, whereas the Tubbs fire and Atlas fire destroyed over 5,600 and 780, respectively. Moreover, unlike the Tubbs fire and the Atlas fire, the Sulphur fire did not involve any fatalities. For these very reasons, this Court agreed that the Sulphur fire was not appropriate to try first. (*See* CMO No. 4 at 2:1-6 (rejecting Sulphur fire as candidate for a bellwether trial and noting the Sulphur fire "does not contain all the issues presentable in the other fires, such as a death case, and involves a relatively few number of structures".) Nothing relevant has changed since October.

PG&E also continues to disagree with the Singleton Group's characterization of the Sulphur fire as a "straightforward" case as well as their conclusory statement that merely because the case allegedly involves pole failure it will require less written discovery, depositions or experts than the other cases. Even if it is true that the Sulphur fire allegedly does not implicate PG&E's vegetation management program, that serves as another reason to deny the Singleton Group's request according to this Court's reasoning. In selecting the Atlas fire over the Tubbs fire, this Court reasoned that the Atlas fire should be tried first in part because the Atlas fire allegedly involves vegetation to powerline contact, "which may be common to the other fires". (*Id.* at 2:22-25.)

Further, PG&E does not believe that a Sulphur fire trial will be as short as the Singleton Group claims. The Singleton Group's estimated number of witnesses fails to include:

- any percipient witnesses, either from PG&E or potential third party eyewitnesses;
- any first responders;
- a complete list of "corporate" witnesses to discuss PG&E's policies and practices related to wildfire risk mitigation, pole integrity and electric operations;
- any damages experts, which will be needed for each of the (at least) six categories of damages the Singleton Group proposes including in the trial; or
- any experts at all to testify for PG&E.

By PG&E's estimation, at the very least, a Sulphur trial will take four to six weeks to complete.

Finally, slotting a Sulphur fire trial into the queue prior to the Atlas fire trial that this Court previously scheduled for September 23, 2019 would be prejudicial to PG&E. Plaintiffs' Leadership, which is responsible for the coordinated action on behalf of thousands of Individual Plaintiffs, as well as over 200 Subrogation Plaintiffs and several Public Entity Plaintiffs, advocated for an Atlas fire trial in September. Plaintiffs have served extensive discovery on PG&E (including over 2000 Requests for Production and approximately 650 interrogatories) and have represented to the Court that they will complete any necessary discovery and prepare for a trial by September 2019. Given the parties' focus on preparing for an Atlas fire trial, PG&E should not now be asked to also focus its efforts on preparing for an earlier trial date related to yet another fire, particularly where the Singleton Group is not alleging they are entitled to statutory preference. In addition to the Atlas fire, PG&E may need to prepare for a Lobo fire statutory preference trial, as well as continue to respond to Plaintiffs' discovery requests and deposition notices related to the generalized corporate discovery that will be required for the Atlas fire trial. Plaintiffs' Leadership and PG&E have been expending significant efforts on preparing for the Atlas fire trial. To date, there has been only one deposition related to the Sulphur fire, and PG&E anticipates that many more will be required before this case can proceed to trial. For PG&E to split its focus now, only ten months before the Atlas fire trial is scheduled to commence, will cause significant prejudice and may require a delay in the Atlas fire trial date.

14

**2.    Request To Conduct Preference Discovery.**

The Singleton Group proposes that they be permitted to conduct discovery related to any Lobo fire preference trial that may be granted outside of the structure ordered by the Court in CMO No. 1.  PG&E opposes this request.  Ms. Fowler, who is represented by the Singleton Law Firm, has chosen to file a preference motion and to have her trial held in an expedited fashion.  There are presumably many other Plaintiffs who potentially qualify for statutory preference who have, instead, reasonably chosen to wait until the parties complete the discovery process before requesting a trial date.  PG&E cannot shift all of the general corporate discovery to an expedited track.

To the extent there are Lobo-specific issues on which Ms. Fowler needs additional discovery for purposes of the preference trial, those narrow requests can be made through the existing Plaintiffs' Leadership process.  It is not clear that any additional discovery related to the Lobo fire will even be necessary for Ms. Fowler to proceed, given that Plaintiffs have served over 100 Requests for Production, almost 40 Interrogatories and approximately 30 Requests for Admission related specifically to the Lobo fire.  If Ms. Fowler believes that Plaintiffs' Leadership has refused to permit Ms. Fowler to take discovery on critical, Lobo-specific issues, Ms. Fowler may seek relief from the Court.  But the fact that Ms. Fowler has filed a claim for statutory preference should not derail the discovery process, which has been running through Plaintiffs' Leadership at the Court's express direction.

**3.    Request For Separate Track.**

This request is a frontal assault on the very structure of the coordinated proceeding.  PG&E opposes the Singleton Group's request to essentially dismantle the coordinated proceeding and create a separate litigation track for this particular group of Individual Plaintiffs.  As stated in Section V.A, *supra*, to create separate tracks for certain individual claimants would not only be grossly inefficient, but will also prejudice the rights of PG&E and the thousands of other claimants who are part of the coordinated proceeding.

In concluding that this was a complex case, this Court, acting as the Coordination Motion Judge, found that these proceedings "require[] exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case".  (Cal. Code of Civ. Proc.

Case  19-30088   Doc  3108-3   Filed  07/19/19   Entered  07/19/19  16:07:00   Page 16
of 55

PG&E'S RESPONSE TO PROPOSED CMOs ON LOBO INDIVIDUAL CASES AND TO COMPLIANCE, CASE SPECIFIC DISC., PROD. OF CLAIM FILES, AND TRIAL SELECTION AND PREF. MTNS - JCCP No. 4955

§ 3.400(a).) This Court therefore correctly determined that coordination was appropriate for the thousands of individual claimants, hundreds of subrogation insurers and multiple public entities who are participating in this proceeding. In making that determination, this Court noted that because of "the substantial overlap as among the PG&E witnesses and documents, as well as the experts" as well as "common discovery and motion practice across all of the fires relating to PG&E's policies and practices" and "common legal questions relating to inverse condemnation and other matters", there were "benefits that c[ould] only be achieved through a single coordinated proceeding". (1/4/18 Order Granting Petitions for Coordination and Staying Cases 4-5.) Indeed, this Court stated that to split these cases into separate proceedings would "cause unnecessary procedural delays". (*Id.* at 6.) This is even more true today, one year into the coordinated proceeding, where the parties have been working through the Leadership groups to bring motions, complete discovery and move all of the cases, in the entire coordinated proceeding, on a path to resolution.

Because the Singleton Group wants to jump to the front of the line, they are asking this Court to take action that would jeopardize the goals set forth in the governing law as well as the progress that the parties have made in the last year to resolve this proceeding. This simply should not be permitted for the reasons set forth in Section V.A, *supra*. (*See, e.g.*, *McGhan*, 11 Cal. App. 4th at 813 ("One of the purposes, in our view, of a centralized coordinating authority is to vest in one administrator the power to organize the litigation in an efficient and equitable manner, for the benefit of all."); *id.* ("It is possible that some delay in certain cases may be experienced. We view this potential detriment to the few to be a modest price to pay for the efficiency to be gained by the majority of cases through coordination.").)

### 4. Request to File Motion to Compel Regarding Cal Fire Reports and to Inspect Physical Evidence.

The Singleton Group is seeking leave to file a motion to compel the Cal Fire reports and access to the physical evidence in Cal Fire's possession. As an initial matter, PG&E strongly disagrees with the Singleton Group that the Cal Fire reports are "an import[ant] tool to further the discovery process". Indeed, such reports should be inadmissible. Plaintiffs' Leadership also agrees that the Cal Fire reports are not important. (9/21/18 CMC Tr. 30:1-2 (Mr. Kelly, on behalf of

16

Case 19-30088 Doc 3109-3 Filed 07/19/19 Entered 07/19/19 18:07:40 Page 2
of 59

PG&E'S RESPONSE RE PROPOSED CMC #5 AGENDA INDIVIDUAL CASES/INDIVIDUAL COMPLIANCE, CASE SPECIFIC DISC., PROD. OF CLAIM FILES AND TRIAL SELECTION AND PREF. MTNS - JCCP No. 4955

Individual Plaintiffs, stating "[i]t's not the reports; it's the evidence" that is important); *id.* at 45:24-25 (Mr. Baghdadi, on behalf of Individual Plaintiffs, again stating "I don't think there's disagreement [with PG&E]. It's the evidence. It's not the reports.").) With respect to the physical evidence in Cal Fire's possession, although PG&E agrees that getting to inspect such evidence is important, there is already a process underway to get the parties access to such evidence, and therefore the Singleton Group's proposed motion to compel is unnecessary, inefficient and a waste of this Court's resources.

As Plaintiffs' Leadership stated at the October 25 CMC, with respect to the fires that were not referred to a district attorney's office, the parties have an agreement with the Attorney General to get the Cal Fire reports and access to the evidence. The parties received those reports on November 13, 2018. The parties also sent a proposed evidence transportation and storage protocol to the Attorney General to review and expect to move forward with that process shortly.

With respect to the fires that were referred to a district attorney's office, the parties have been working with the Attorney General and the relevant District Attorneys to get access to the reports and physical evidence related to those fires. Several of the District Attorneys have already agreed to permit the parties access to the physical evidence, and Plaintiffs' Leadership is finalizing the inspection details with the Attorney General. To file a motion to compel now would be a waste of the Court's and the parties' resources. The relevant governing authority has been working productively with PG&E and Plaintiffs' Leadership and this motion is not necessary.

## B. Individual Plaintiffs' Response

The timing and tenor of the Singleton submission is a studied exercise in disruption. Moreover, this refusal to work collaboratively has become manifest in the Southern California fire cases before Judge Buckley and in the Butte Fire in Amador and Calaveras Counties cases.[7] It is

---

[7] The Singleton firm has been removed from the PSC in Butte, voted off of the PSC in the Northern California fire cases, and the Court denied the firm a leadership position in Southern California Fire cases. In all cases, the firm sought a "separate track" for his firm, and refused to comply with Case Management Orders.

17

Case 19-30088   Doc 3108-5   Filed 07/19/19   Entered 07/19/19   08:37:40   Page 18 of 55

JOINT SUBMISSION RE: PROPOSED CMOs ON JOINDER OF INDIVIDUAL CASES INTO CMC AND CASE SPECIFIC DISC., PROD. OF CLAIM FILES AND TRIAL SELECTION AND PREF. MTNS - JCCP No. 4955

1  contrary to the long history of successful collaboration in JCCP cases.

2                 **1.        Liability Discovery**

3         The California JCCPs are known nationally for the cooperation and coordination among

4  the plaintiffs, the ability of nationally recognized counsel to review millions of pages of

5  documents, conduct hundreds of liability depositions, prepare exceptional experts across multiple

6  scientific disciplines, and the ability to try cases to obtain positive results.  Over the last 25 years,

7  lawyers from all over the country, from both sides, have come to California to work with

8  California leadership within the JCCP system to address and resolve cases on the merits. With

9  respect to the plaintiffs' interests, the mark of the JCCP courts and plaintiffs' leadership has been

10  inclusion. The test for inclusion in these efforts is simple: performance of substantive work for the

11  benefit of all plaintiffs.  The ability to market for cases, make litigation threats or cause other

12  disruptions has no place within real litigation efforts; especially within a JCCP, which usually

13  involves hundreds or thousands of plaintiffs.  This case is no different.

14  

15         This is one of the most significant JCCP's in California history. The fires that have

16  devastated Northern California have killed and injured over one-hundred people and claimed the

17  homes, personal property and businesses of tens of thousands.  The PEC and PSC in this litigation

18  has undertaken the document review to address corporate responsibility as it relates to each fire

19  and across all fires.  This liability discovery is critical.  Along with subrogation, the PEC and PSC

20  have taken all of the liability depositions thus far and have conducted the ESI work for the benefit

21  of all plaintiffs. The PEC and PSC and counsel for the public entities have worked cooperatively

22  with the governmental entities to obtain the documents and evidence while allowing the

23  government to fulfill its function as well.

Case 19-30088   Doc# 3105-3   Filed: 07/19/19   Entered: 07/19/19 16:07:40   Page 19
of 55

[PROPOSED] CMO 25 ON JOINDER IN CASES, INDIVIDUAL CASE COMPLIANCE, CASE
SPECIFIC DISC., PROD. OF CLAIM FILES AND TRIAL SELECTION AND PREF. MTNS - JCCP No. 4955

### 2. There is No Need for a Separate Track for Any Firm

The coordination process cannot work if a single firm is permitted to ignore the procedures designed to make sure all plaintiffs have access to the time and resources of the Court. Several dozen firms have worked together in an organized fashion, recognizing that doing so may not yield the fastest result for any one of them. This approach has by all accounts gone extremely well *with all counsel*. The plaintiffs have been able to achieve over 99% compliance with CMO 1 with *all firms* and now *all firms* are in essential compliance with CMO 2. The systems in place for exchanging information is working. There is nothing about a single law firm that warrants a need to carve out a separate Case Management process.

### 3. Preferential Trial Setting and Other Trial Settings.

As expected, there are several dozen individuals whose cases may be eligible for preferential trial setting. Lawyers in over 30 cases have provided to leadership case specific information supporting a preferential trial setting. The PEC expects dozens more. The setting of preference cases is a critical component that allows cases be resolved on the merits. Plaintiffs leadership strongly believes that all plaintiffs should be on equal footing and have the right to participate in presentation of their specific preference cases. To that end, all firms in this case were invited to complete a preference questionnaire. The Singleton firm has refused to cooperate with that effort.

Almost all of the firms in this litigation are working for the benefit of all of the plaintiffs given the devastation that has occurred. This catastrophic situation should not result in a race to the filing of motions.[8] This is especially true if the preference trial demand is made contingent on

---

[8] The Singleton firm has now put in writing that they are bringing 17 preference cases to be tried in mid-2019 (eight in Northern California and nine in Southern California.) They also seek a Sulphur setting, which the court addressed at the last status conference.

Case 19-30088 Doc 3108-3 Filed 07/19/19 Entered 07/19/19 18:07:40 Page 22
of 59

[PLAINTIFFS'] PROPOSED CMO 5 AND JOINDER OF ALL FIRMS IN COMPLIANCE, CASE
SPECIFIC DISC., PROD. OF CLAIM FILES AND TRIAL SELECTION AND PREF. MTNS - JCCP No. 4955

an agreement by the defendant to create a separate mediation track for one firm's clients. As

PG&E states in its submission: "The Singleton Group has insisted on pursuing this path of

inefficiency while offering to drop it entirely—including all preference motions—if PG&E will

agree to mediate these Plaintiffs' claims separate from everyone else's claims."[9] It is a dangerous

precedent to let the disconnected and seemingly frantic mediation energies of one lawyer spill over

into the litigation of the actual cases. The litigation plan must be connected to the actual litigation

realities. For example, there is significant corporate liability discovery that remains to be

completed including basic ESI, document review, corporate risk management, as well as origin

and cause depositions. The lawyers conducting that work are best positioned to work out trial

strategy based upon a goal trial success for the benefit of plaintiffs.

### 4. Cal-Fire

Plaintiffs' leadership has worked since the end of September with CAL Fire, by way of the

Attorney General's Office, to obtain access to all evidence, reports, and investigative materials

related to the North Bay Fires. The Attorney General's Office has assigned two lawyers to

interface with plaintiffs' leadership on the North Bay Fires, and they have been extremely

responsive and are working diligently to get leadership access to the reports and physical evidence

quickly as possible.

The Camp Fire and the Woolsey Fire placed significant burdens on CAL Fire and

demanded that resources that otherwise would have been available to coordinate with plaintiffs'

---

[9] Every firm has the right to request mediation or to attempt to resolve their cases individually. A capable firm can contribute substantively to the ESI work, the document production and review, the corporate liability depositions, the experts, the trial preparation and trial work with the rest of the firms if settlement efforts do not succeed. However, the disruption of positive litigation progress as a technique to demand a separate mediation track is not productive.

litigation efforts, were diverted to imminent, lifesaving duties for several weeks. Despite this necessary and understandable delay, the plaintiffs have made significant progress.

Additionally, the Attorney General and CAL Fire are not the only decision makers involved. The District Attorneys of each county where a North Bay Fire occurred has a claim to official information privilege related to the fire in their county that has been referred for criminal prosecution. This includes six different counties and district attorney's offices: Nevada County, Mendocino County, Lake County, Humboldt County, Napa County, and Sonoma County. Plaintiffs' leadership had to seek agreement from these District Attorneys as well as the Attorney General and CAL Fire to get access to evidence and reports. Leadership has done so, and is only awaiting agreement from two Counties, Nevada and Mendocino. All other counties have agreed to allow access.

In sum, the following agreements have been reached to date: Plaintiffs have access to all CAL Fire reports and investigative materials for all North Bay Fires except McCourtney, Lobo and Redwood Fires. All reports for unreferred fires have already been produced. Reports for Sulphur, Atlas, Honey, Cherokee, Blue, Norrbom, Adobe, Partrick, Pythian, Nuns, 37, and Pocket are currently being reviewed and prepared for production. The Cascade Fire report alone had 25 exhibits, including one exhibit with over 300 audio recordings. Each must be reviewed prior to production. CAL Fire has also agreed to produce reports for the McCourtney, Lobo and Redwood Fires if the District Attorney's Office agrees. Plaintiffs' leadership has sent correspondence to those District Attorneys but have not received a response yet. Of note, the Tubbs Fire is the one North Bay Fire that is not contemplated by any of the agreements above since there is no CAL Fire report at this time.

### 5. Remedy

Issues within the plaintiff group should be addressed within the plaintiff group. All counsel should have the right to participate. The meet and confer should NOT take place in the

21

status conference statement. The parties have made real progress in moving this case forward since the October 25th status conference. The fact that over half of the submission is responsive to this untimely and misguided filing is telling.

Dated: December  24, 2018          WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____/s/ Michael A. Kelly_____
MICHAEL A. KELLY
Attorneys for Individual Plaintiffs

Dated: December  24 , 2018          BERGER KAHN

By: _____/s/ Craig Simon_____
CRAIG SIMON
Attorneys for Subrogation Plaintiffs

Dated: December 24, 2018          SKIKOS, CRAWFORD, SKIKOS & JOSEPH LLP

By: _____/s/ Steven J. Skikos_____
STEVEN J. SKIKOS
Attorneys for Plaintiffs

Dated: December 24, 2018          CRAVATH, SWAINE & MOORE LLP

By: _____/s/ Kevin J. Orsini_____
KEVIN J. ORSINI
Attorneys for Defendants Pacific Gas & Electric
Company and PG&E Corporation

22

Case 19-30088   Doc 3105-3   Filed 07/19/19   Entered 07/19/19 13:07:40   Page 23
of 55

# EXHIBIT A

1  MICHAEL A. KELLY (SB #71460)
   mkelly@walkuplawoffice.com
2  KHALDOUN A. BAGHDADI (SB #190111)
   kbaghdadi@walkuplawoffice.com
3  **WALKUP, MELODIA, KELLY &**
   **SCHOENBERGER**
4  650 California Street, 26th Floor
   San Francisco, CA 94108
5  Telephone: (415) 981-7210

6  FRANK M. PITRE (SBN 100077)
   fpitre@cpmlegal.com
7  ALISON E. CORDOVA (SBN 284942)
   acordova@cpmlegal.com
8  **COTCHETT, PITRE & McCARTHY**
   San Francisco Airport Office Center
9  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
10 Telephone: (650) 697-6000

11 STEVEN SKIKOS (SB #148110)
   sskikos@skikos.com
12 **SKIKOS, CRAWFORD, ET AL.**
   1 Sansome Street, Ste 2830
13 San Francisco, CA 94104
   Telephone: (415) 546-7300
14

   **ON BEHALF OF DIRECT PLAINTIFFS**

15

EVAN R. CHESLER (*pro hac vice*)
echesler@cravath.com
TIMOTHY G. CAMERON (*pro hac vice*)
tcameron@cravath.com
KEVIN J. ORSINI (*pro hac vice*)
korsini@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000

**ON BEHALF OF DEFENDANTS**

CRAIG S. SIMON (SB #78158)
csimon@bergerkahn.com
**BERGER KAHN**, A Law Corporation
1 Park Plaza, Suite 340
Irvine, CA 92614
Telephone: (949) 474-1880

**ON BEHALF OF SUBROGATION PLAINTIFFS**

16              SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                        COUNTY OF SAN FRANCISCO

18 Coordination Proceeding                    | JCCP No. 4955
   Special Title (Rule 3.550)
19                                            **STIPULATION AND [PROPOSED] CASE**
   CALIFORNIA NORTH BAY FIRE CASES           **MANAGEMENT ORDER 5 RE:**
20                                            **COLLECTION AND PRODUCTION OF**
                                              **CASE MANAGEMENT ORDER**
21                                            **COMPLIANCE INFORMATION AND**
                                              **SUBROGATION FILES**
22

23                                            **Assigned for All Purposes to:**
                                              **Hon. Curtis E.A. Karnow, Dept. 304**
24

25        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

26        The parties, by and through Individual Plaintiffs' Lead and Liaison Counsel, Lead Counsel

27 for Subrogation, and Counsel for Defendant PG&E, hereby reach the following stipulation as to

28 the further handling of case specific issues which includes the production of subrogation claim

                                         1

files (CMO 1) and several case management order compliance issues including filing procedures (CMO 1), identification and confirmation of damage claims (CMO 1), liability discovery from individual plaintiffs or witnesses identified by individual plaintiffs (CMO 2).

## STIPULATION

PG&E, Lead and Liaison Counsel for Individual and Subrogation Plaintiffs agree to the following Order in relation to the collection and production of case management order compliance information and subrogation claim files.

So stipulated:

Dated: December 24 , 2018        WALKUP, MELODIA, KELLY & SCHOENBERGER

By:    ___/s/ Michael A. Kelly___
        MICHAEL A. KELLY
        Attorneys for Individual Plaintiffs

Dated: December 24, 2018        CRAVATH, SWAINE & MOORE LLP

By:    ___/s/ Kevin J. Orsini___
        KEVIN J. ORSINI
        Attorneys for Defendants Pacific Gas & Electric Company and PG&E Corporation

Dated: December 24, 2018        COTCHETT PITRI & MCCARTHY LLP

By:    ___/s/ Frank M. Pitri___
        FRANK M. PITRI
        Attorneys for Individual Plaintiffs

2

Dated: December 24, 2018

BERGER KAHN, A LAW CORPORATION


By: _____/s/ Craig S. Simon_____
CRAIG S. SIMON
Attorneys for Subrogation Plaintiffs PURE
Insurance Company, California FAIR Plan
Association, et al.


**IT IS SO ORDERED.**

Dated: _____

_____
Hon. Curtis E.A. Karnow
Judge of the Superior Court

1 | MICHAEL A. KELLY (SB #71460)
mkelly@walkuplawoffice.com
2 | KHALDOUN A. BAGHDADI (SB #190111)
kbaghdadi@walkuplawoffice.com
3 | **WALKUP, MELODIA, KELLY &**
**SCHOENBERGER**
4 | 650 California Street, 26th Floor
San Francisco, CA 94108
5 | Telephone: (415) 981-7210

EVAN R. CHESLER (*pro hac vice*)
echesler@cravath.com
TIMOTHY G. CAMERON (*pro hac vice*)
tcameron@cravath.com
KEVIN J. ORSINI (*pro hac vice*)
korsini@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000

**ON BEHALF OF DEFENDANTS**

6 | FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
7 | ALISON E. CORDOVA (SBN 284942)
acordova@cpmlegal.com
8 | **COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
9 | 840 Malcolm Road, Suite 200
Burlingame, CA 94010
10 | Telephone: (650) 697-6000

11 | STEVEN SKIKOS (SB #148110)
sskikos@skikos.com
12 | **SKIKOS, CRAWFORD, ET AL.**
1 Sansome Street, Ste 2830
13 | San Francisco, CA 94104
Telephone: (415) 546-7300

CRAIG S. SIMON (SB #78158)
csimon@bergerkahn.com
**BERGER KAHN**, A Law Corporation
1 Park Plaza, Suite 340
Irvine, CA 92614
Telephone: (949) 474-1880

14 |

**ON BEHALF OF DIRECT PLAINTIFFS**

**ON BEHALF OF SUBROGATION PLAINTIFFS**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

Coordination Proceeding
Special Title (Rule 3.550)

CALIFORNIA NORTH BAY FIRE CASES

JCCP No. 4955

**[PROPOSED] CASE MANAGEMENT**
**ORDER 5: COLLECTION AND**
**PRODUCTION OF CASE**
**MANAGEMENT ORDER COMPLIANCE**
**INFORMATION AND SUBROGATION**
**FILES**

**Assigned for All Purposes to:**
**Hon. Curtis E.A. Karnow, Dept. 304**

This Case Management Order establishes the obligations of the Parties and their vendor,

BrownGreer, PLC, to collect and organize case-specific information in a central repository in

order to facilitate and track compliance with previously established Case Management Orders in

this JCCP.

1

[PROPOSED] CASE MANAGEMENT ORDER 5: COLLECTION AND PRODUCTION OF CASE
MANAGEMENT ORDER COMPLIANCE INFORMATION AND SUBROGATION FILES

# I. PROCEDURE FOR IMPROVING THE TRACKING OF COMPLIANCE WITH CASE FILING REQUIREMENTS

## A. Application to All Cases and Counsel

These provisions apply to any Individual Plaintiff whose case has been transferred to JCCP 4955 as of the entry of this Order, and to any Individual Plaintiff whose case is transferred to JCCP 4955 after entry of this Order.

## B. CMO 1 Requirements: Notice of Adoption/Short Form Complaint

In order to track compliance with Case Management Orders, including CMO 1, the Individual Plaintiffs retained BrownGreer PLC ("BrownGreer") to manage and control all of the case-specific data relating to JCCP 4995. Under the supervision of Individual Plaintiffs' Lead and Liaison counsel, BrownGreer has reviewed and uploaded all of the Notices of Adoption and Short Form Complaints into a database, referred to hereinafter as the BrownGreer Portal.

In the interests of maintaining an orderly and complete list of Plaintiffs who have adopted the Master Complaint for the benefit of the Court, BrownGreer shall provide a Notice of Adoption Report to the Court on a regular basis, or upon request from the Court. This report will include the name of each plaintiff who has adopted the Master Complaint by virtue of serving an NOA or by filing an SFC, as well as: the name of the primary law firm representing the plaintiff; the fire or fires alleged to have caused injuries to the plaintiff or plaintiff household; the docket case number; and the NOA/SFC case number, hereinafter "Household Number".[1] The provision of these Notice of Adoption Reports will not obviate, limit, or otherwise affect plaintiffs' pleading obligations under CMO 1.

To assist lead counsel in tracking information pertaining to compliance with case filing requirements, going forward, any individual plaintiff who seeks to initiate litigation may do so initially through the BrownGreer Portal, which provides the means to submit basic individual plaintiff information as well as an interactive form for the preparation of an NOA or an SFC. The

---

[1] Household Number will be used synonymously with the Notice of Adoption Complaint Number. This unique identifier will be used to capture the claims of all plaintiffs who file together under one NOA/SFC per CMO 1, including individuals, as well as business entities.

[PROPOSED] CASE MANAGEMENT ORDER 5: COLLECTION AND PRODUCTION OF
MANAGEMENT ORDER COMPLIANCE INFORMATION AND SUBROGATION FILES

BrownGreer Portal will also assign the Individual Plaintiff(s) with a Household Number, which shall be used on the SFC and NOA of the Master Complaint.

C. **Amended Service Requirements for NOAs/SFCs**

The service requirements contained in CMO 1, which apply to service of SFCs and NOAs are hereby amended to include the following. Each Direct Action Plaintiff who files and/or effects service of an SFC and/or NOA after entry of this Order shall concomitantly serve the SFC and/or NOA on BrownGreer by email to NBF_Service@browngreer.com.

II. **CASE MANAGEMENT ORDER TWO: LIABILITY DISCOVERY FROM INDIVIDUAL PLAINTIFFS**

Each individual plaintiff whose case is coordinated in JCCP 4995 and who has not provided CMO 2 responses to Plaintiffs' Liaison before entry of this Order shall complete and upload to the BrownGreer Portal the CMO 2 Questionnaire within 30 days of either the entry of this Order, or within 30 days of the entry of the order granting coordination of their case, whichever is later in time. BrownGreer shall present to the Defendants and to Individual Plaintiffs' leadership the responsive information in a CMO 2 report every sixty (60) days. The next CMO 2 report shall be due on January 14, 2019.

III. **DAMAGES INFORMATION FROM SUBROGATION PLAINTIFFS**

A. **Retained Individual Plaintiffs—Insurance Information Sharing**

Each Counsel or Law Firm with a case coordinated in JCCP 4955 shall submit within 10 days of the entry of CMO 5 a List of Individual Plaintiffs, whether filed or unfiled, who have retained Counsel or Law Firm in conjunction with claims arising out of a fire that is subject to JCCP 4955. This List shall include:

- The first name and last name of all adult members of each household (household defined as a group of Individual Plaintiffs suffering a loss associated with the same address);[2]

- The address of the loss location (street addresses only; P.O. Boxes and Parcel

---

[2] To include business entity Direct Plaintiffs, where applicable.

3

Numbers are not acceptable);[3] and

- The name of all known insurance carriers providing property insurance coverage to the household members.

Subrogation Plaintiffs shall provide a copy of the Complete List of Individual Plaintiffs to BrownGreer for import and matching to the existing BrownGreer Individual Plaintiff Database.

**B. Individual Plaintiffs Retained After Entry of CMO 5 – Insurance Information Sharing**

For cases retained after entry of CMO 5, each Counsel or Law Firm with a case coordinated in JCCP 4955 shall submit an updated complete List of Individual Plaintiffs, whether filed or unfiled, who have retained Counsel or Law Firm in conjunction with claims arising out of a fire that is subject to JCCP 4955 every sixty (60) days to BrownGreer. The List shall include:

- The first name and last name of all adult members of each household (household defined as a group of Individual Plaintiffs suffering a loss associated with the same address);
- The address of the loss location (street addresses only; P.O. Boxes and Parcel Numbers are not acceptable); and
- The name of all known insurance carriers providing property insurance coverage to the household members.

**C. Subrogation Claim File Production Master Control Spreadsheet**

Subrogation Plaintiffs shall independently conduct a "matching" project between the List of Individual Plaintiffs and the Subrogation List of Claims to identify all property insurance claims related to each of the Individual Plaintiff households. Wherever a match is identified, Subrogation Plaintiffs will endeavor to link the List of Individual Plaintiffs with the Subrogation claim information for each household, and with the unique Individual Plaintiff Control Number and/or the Household Number assigned by BrownGreer.

Subrogation Plaintiffs shall create an initial matching spreadsheet called "Claim File Production Master Control" ("CFMC"). The CFMC shall combine and link information from the

---

[3] Where a property has no street address, Counsel or Law Firm shall provide the best available identifying information for that property.

4

[PROPOSED] CASE MANAGEMENT ORDER 5: COLLECTION AND PRODUCTION OF CASE MANAGEMENT ORDER COMPLIANCE INFORMATION AND SUBROGATION FILES

List of Individual Plaintiffs, the Subrogation List of Claims and the BrownGreer Individual

Plaintiff Database as follows:

- Client information submitted by the Individual Plaintiff firms (client/household member names, loss address, carriers);

- The corresponding BrownGreer Individual Plaintiff Control Number and/or Household Number; and

- Insurance claim information matched to the Individual Plaintiff/Household, including Name of Insured, Carrier Name, Claim Number, Date of Loss (as reported to carrier), Loss Location Address, amount paid, open reserves (if any), and the status of adjustment of the claim by the carrier.

Upon completion, the initial CFMC will be provided to BrownGreer for import into a central data management system. The BrownGreer Portal will then become the central repository for management of all Individual Plaintiff data, including any insurance claim data provided by the Subrogation Plaintiffs. BrownGreer will provide the Subrogation Plaintiffs with access to the BrownGreer Portal to facilitate ongoing matching between Individual Plaintiff and Subrogation data.

- Subrogation Plaintiffs will update the paid and open reserves as well as claims status for all claims matched to Individual Plaintiffs in the BrownGreer Portal regularly, and no less frequently than every four (4) months.

- Upon completion of the initial matching process outlined above, Subrogation Plaintiffs will update the carrier data reported to the BrownGreer Portal to provide a breakdown of payments by coverage, to include payments under Building, Contents/Business Personal Property, Alternative Living Expenses/Business Interruption and Auto/Specialty. Once a coverage breakdown has been added to the BrownGreer Portal, all updates going forward will include a breakdown by coverage.

**D.    Individual Plaintiff Insurance Claim File Production**

The Subrogation Plaintiffs will produce claim files to BrownGreer as follows:

- For any claim that has been matched to an Individual Plaintiff Household, the Subrogating Plaintiff will produce the closed claim file to BrownGreer once the claim has been closed for adjustment; and

- BrownGreer will upload the claim file to the BrownGreer Portal and alert counsel, or the individual plaintiff (if pro se), by way of email notification, that counsel or pro se plaintiff has twenty-one (21) days to review the insurance claim file and object to its production and/or redact information from the production. As soon as representing counsel or the pro se plaintiff marks the claim file as "review complete", the claim file will be made available to the Defendants through the BrownGreer Portal. Plaintiff shall upload into the BrownGreer Portal the approved

5

version of the claim file for production to the Defendants. However, if no review is performed or objection made within twenty-one (21) days of email notification, then the insurance claim file will automatically be made available to the Defendants through the BrownGreer Portal as provided by Subrogating Plaintiff.

**E.      Access to the BrownGreer Portal**

Each Individual Plaintiff, Subrogation Plaintiff, and Defendant shall establish a secure connection with the BrownGreer Portal by obtaining authorized user names and secure login passwords to permit use of BrownGreer Portal by counsel.

Each Plaintiff shall continue to use the BrownGreer Portal to request, obtain, complete, or upload any required data, and serve the appropriate CMO 1 and 2 compliance information online (including uploading PDFs or other electronic images, photographs and videos of any records required). Liaison Counsel for Individual Plaintiffs shall continue to work with BrownGreer to ensure CMO compliance and will continue to view, search and download non-confidential materials submitted to the BrownGreer Portal. Finally, the Court may establish a secure connection with the BrownGreer Portal by obtaining an authorized user name and secure login password to permit use of the BrownGreer Portal by the Court.

Except as set forth herein, Counsel for plaintiffs and each *pro se* plaintiff shall be permitted to view, search and download on the BrownGreer Portal those materials submitted by that Plaintiff and by Defendants relating to that Plaintiff. Plaintiffs' Co-Liaison Counsels shall maintain administrative access co-equal with BrownGreer to manage data and to facilitate communications consistent with the purposes of this order.

**F.      CMO 1: NOA – Plaintiff-Specific Information.**

Each individual plaintiff shall be required to confirm the actual damage categories that apply to that plaintiff's specific case. This confirmation is herein referred to as the "CMO Compliance Information" and shall be submitted by each Individual Plaintiff to the BrownGreer Portal. The parties have agreed to use the BrownGreer Portal to hold such information.

Each individual plaintiff whose case has been coordinated in JCCP 4955 before the entry of CMO 5 shall submit the CMO Compliance Information to the BrownGreer Portal within 30 days of the entry of CMO 5. Each individual plaintiff whose case is coordinated in JCCP 4955

6

[PROPOSED] CASE MANAGEMENT ORDER 5: COLLECTION AND PRODUCTION OF CASE
MANAGEMENT ORDER COMPLIANCE INFORMATION AND SUBROGATION FILES

1    after entry of CMO 5 shall have 30 days from the entry of the order granting coordination of that

2    plaintiff's case in which to submit the CMO Compliance Information to the BrownGreer Portal.

3         Service of completed CMO Compliance Information shall be deemed to occur when the

4    submitting party has performed each of the steps required by the BrownGreer Portal to execute the

5    online submission of the materials, and the submitting party has received confirmation on screen

6    that the materials have been successfully submitted.

7

8

9         **IT IS SO ORDERED.**

10   Dated:                                    _____

11                                             Hon. Curtis E.A. Karnow
                                              Judge of the Superior Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# EXHIBIT B

MICHAEL A. KELLY (SB #71460)
mkelly@walkuplawoffice.com
KHALDOUN A. BAGHDADI (SB #190111)
kbaghdadi@walkuplawoffice.com
**WALKUP, MELODIA, KELLY &
SCHOENBERGER**
650 California Street, 26th Floor
San Francisco, CA 94108
Telephone: (415) 981-7210

FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
ALISON E. CORDOVA (SBN 284942)
acordova@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000

STEVEN SKIKOS (SB #148110)
sskikos@skikos.com
**SKIKOS, CRAWFORD, ET AL.**
1 Sansome Street, Ste 2830
San Francisco, CA 94104
Telephone: (415) 546-7300

**ON BEHALF OF DIRECT PLAINTIFFS**

EVAN R. CHESLER (*pro hac vice*)
echesler@cravath.com
TIMOTHY G. CAMERON (*pro hac vice*)
tcameron@cravath.com
KEVIN J. ORSINI (*pro hac vice*)
korsini@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000

**ON BEHALF OF DEFENDANTS**

CRAIG S. SIMON (SB #78158)
csimon@bergerkahn.com
**BERGER KAHN**, A Law Corporation
1 Park Plaza, Suite 340
Irvine, CA 92614
Telephone: (949) 474-1880

**ON BEHALF OF SUBROGATION PLAINTIFFS**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| Coordination Proceeding<br>Special Title (Rule 3.550)<br><br>CALIFORNIA NORTH BAY FIRE CASES | JCCP No. 4955<br><br>**STIPULATION AND [PROPOSED] CASE MANAGEMENT ORDER 6 RE: PREFERENCE CASE PROTOCOL**<br><br>**Assigned for All Purposes to:**<br>**Hon. Curtis E.A. Karnow, Dept. 304** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

The parties, by and through Individual and Subrogation Plaintiffs' Lead and Liaison

Counsel and Counsel for Defendant PG&E, hereby reach the following stipulation as to the

handling of preference trials in the North Bay Fire Litigation.

1

**STIPULATION**

PG&E and Individual and Subrogation Plaintiffs' Lead and Liaison Counsel agree that to the extent any attorney representing a Plaintiff in this case believes it is appropriate to file a motion for preference trial settings under California Code of Civil Procedure Section 36, he or she must utilize the Order regarding Preference Protocol set forth in Exhibit A, annexed to this Stipulation.

So stipulated:

Dated: December 24, 2018      WALKUP, MELODIA, KELLY & SCHOENBERGER

By: _____/s/ Michael A. Kelly_____
MICHAEL A. KELLY
Attorneys for Individual Plaintiffs

Dated: December 24, 2018      BERGER KAHN

By: _____/s/ Craig Simon_____
CRAIG SIMON
Attorneys for Subrogation Plaintiffs

Dated: December 24, 2018      CRAVATH, SWAINE & MOORE LLP

By: _____/s/ Kevin J. Orsini_____
KEVIN J. ORSINI
Attorneys for Defendants Pacific Gas & Electric Company and PG&E Corporation

# EXHIBIT A

Case 19-10118 Doc 1 Filed 07/19/19 Entered 07/19/19 Page 38 of 55
STIPULATION AND [PROPOSED] CASE MANAGEMENT ORDER RE: PRE-REFERENCE CASE PROTOCOL - JCCP No. 4955

1

2

3

4

5

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                              COUNTY OF SAN FRANCISCO

10

11   Coordination Proceeding                    JCCP No. 4955
     Special Title (Rule 3.550)
12                                              **STIPULATION AND [PROPOSED] CASE**
     CALIFORNIA NORTH BAY FIRE CASES           **MANAGEMENT ORDER 6 RE:**
13                                              **PREFERENCE CASE PROTOCOL**

14                                              **Assigned for All Purposes to:**
                                                **Hon. Curtis E.A. Karnow, Dept. 304**
15

16        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

17             This Case Management Order shall govern all cases filed in or transferred to California

18   North Bay Fire Cases, JCCP 4955, including all cases currently in this proceeding and any cases

19   subsequently added to this proceeding. The Court anticipates, given the large number of filings in

20   this JCCP and the factual nature and complexity of the claims at issue, that multiple plaintiffs may

21   be interested in pursuing a preferential trial setting. The purpose of this Case Management Order is

22   to establish a preference case protocol to facilitate the exchange of information related to cases

23   potentially eligible for preferential trial setting.

24             The Court hereby Orders as follows:

25             1.        A Preference Committee for Individual Plaintiffs is hereby established to review

26   potential preference cases and advise the submitting Plaintiff's counsel as to the viability and

27   sequence of any potential filings.  The Preference Committee shall consist of the following

28   members of the Individual Plaintiffs' Executive Committee and shall report to (Co-Lead and Co-

Liaison Counsel): Thomas Brandi, Amy Eskin, Max Schuver, Mary Alexander, Allison Cordova, Angela Ja Chun, Matt Skikos, Joanna Fox, Steven Berki, and Ahmed Diab.

2.  The Preference Committee shall meet regularly and report to Co-Lead and Co-Liaison counsel for Individual Plaintiffs and shall be available for consultation as a group with any individual plaintiff's counsel. For this purposes of compliance with this Order, the Preference Committee obligations are to all plaintiffs in the litigation and the litigation as a whole.

3.  The Preference Committee shall be responsible for meeting and conferring with the defendants regarding potential preference cases including briefing scheduling, setting of hearings, and coordination of discovery.  These meet and confer efforts with Defendants will also include the Attorney for the Plaintiff moving for Preference.

4.  The Preference Committee shall submit to all counsel a preference questionnaire which shall be completed by the submitting Plaintiff's counsel who seeks to present a case to this Court for preferential trial setting.  Given the large number of cases potentially eligible for preferential setting, counsel for any individual plaintiff seeking preference shall complete the preference questionnaire and provide it to the Preference Committee.

5.  Any plaintiff's counsel who, at any time, represents a Plaintiff that has a good faith basis for asserting entitlement to a preferential trial setting under Code of Civil Procedure § 36 must provide written Notice to the Preference Committee of their potential claim of preferential trial setting eligibility at least 21 days before a motion for preference can be filed.  At the time this Notice is served, the submitting Plaintiff's counsel shall also produce to the Preference Committee the following: (a) <u>Grounds for Preference</u> – A written statement setting forth in detail the grounds for preferential trial setting and the facts supporting preference including the name of the plaitniff; (b) <u>Records</u> – Any  medical and/or  other records which the Plaintiff moving for Preference intends to submit to the Court  to support the request for preferential trial setting, which will be uploaded on a secure document portal managed by Brown Greer to maintain security; (c) <u>Declarations</u> – Any and all declarations in support of the request for preferential trial setting (d) a completed CMO Compliance statement as required by CMO 5 uploaded to the BrownGreer portal and (e) a completed preference questionnaire as set forth in paragraph 4 above.  If the Plaintiff

5

moving for Preference has exigent circumstances that warrant an expedited process, these circumstances are to be presented to the Preference Committee at the earliest opportunity. If good cause exists, the attorney for the Plaintiff moving for Preference, Lead Plaintiffs' Counsel, and Defendants' Counsel will meet and confer as soon as practical.

6.     To the extent that a proposed plaintiff preference request has a corresponding Subrogation claim, Subrogation Leadership will be included and consulted as well.

7.     Upon receipt of Notice(s) of potential claim(s) for preferential trial setting, the Preference Committee shall review and confirm that each request is complete and compliant with the preference protocol pursuant to C.C.P. § 36 and ready for meet and confer with Defendants. The Preference Committee shall communicate the findings of their review to the submitting Plaintiff's Counsel within 7 days of receipt of Notice.

8.     Once a review of a request for preferential trial setting is deemed complete, pursuant to paragraph III above, the Preference Committee, or the submitting Plaintiff's Counsel if s/he disagrees with the Preference Committee's findings, shall provide Defendants with Notice regarding the preferential trial setting request(s) and the supporting materials to be submitted with the anticipated Preference motion(s) including any medical records and /or declarations that will be submitted. Plaintiffs and Defendants shall meet and confer within 7 days regarding the briefing and potential deposition schedule for each request for preferential trial setting. Any unresolved disputes amongst the parties regarding preferential trial settings will be decided by the Court upon the filing and hearing of a Motion for Preferential Trial Setting pursuant to C.C.P. § 36.

9.     Counsel for the plaintiff bringing the preference motion shall be in compliance with the CMOs of this Court.

10.     After the procedure followed in this Preference Protocol is completed, any attorney representing a Plaintiff in this case may proceed with the filing of a motion for preference under California Code of Civil Procedure section 36 if that attorney believes it is appropriate to do so

**IT IS SO ORDERED.**

6

Dated: _____

                      Hon. Curtis E.A. Karnow
                      Judge of the Superior Court

7

STIPULATION AND [PROPOSED] CASE MANAGEMENT ORDER RE PREFERENCE CASE PROTOCOL - JCCP No. 4955

# EXHIBIT C

1 GERALD SINGLETON (SBN 208783)
TERRY SINGLETON (SBN 58316)
2 GARY LoCURTO (SBN270372)
**SINGLETON LAW FIRM, APC**
3 115 West Plaza Street
Solana Beach, CA 92075
4 Phone: (760) 697-1330
Email: gerald@slffirm.com
5 terry@terrysingleton.com
gary@slffirm.com
6
7 JOHN F. McGUIRE, JR. (SBN 69176)
BRETT J. SCHREIBER (SBN 239707)
**THORSNES BARTOLOTTA McGUIRE LLP**
8 2550 Fifth Avenue, 11th Floor
San Diego, California 92103
9 Phone: 236-9363 Fax: (619) 236-9653
Email: mcguire@tbmlawyers.com
10 Fusselman@tbmlawyers.com
Schreiber@tbmlawyers.com
11
12 Counsel for Individual Requesting Plaintiffs

13

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14

**COUNTY OF SAN FRANCISCO**

15

| | |
|---|---|
| Coordination Proceeding Special Title (Rule 3.550) | CJC-17-004955 JCCP Case No. 4955 |
| CALIFORNIA NORTH BAY FIRE CASES | **CASE MANAGEMENT CONFERENCE STATEMENT FOR CERTAIN INDIVUDUAL PLAINTIFFS FILED DECEMBER 26, 2018** |
| | Date: December 28, 2018 Time: 3:00 p.m. Dept: 304 Judge: Hon. Curtis E.A. Karnow |

23 TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

24 The Individual Plaintiffs represented by the attorneys listed above ("Requesting Plaintiffs")

25 hereby submit the following to be included in the Joint Case Management Conference Statement

26 ("Joint CMS") filed December 21, 2018. In sum, and for the reasons set forth below, Requesting

27 Plaintiffs seek leave and/or request the following:

28 //

1.  A trial date for the Sulphur Fire;

2.  An order granting Requesting Plaintiffs the right to conduct independent
    discovery on behalf of Preference Plaintiffs;

3.  A separate litigation track as to all fires; and

4.  The right to file a Motion to Compel access to the physical evidence and
    reports generated by Cal Fire in connection with all 2017 North Bay Fires.

## I.

### INTRODUCTION/COMPLIANCE WITH MEET AND CONFER REQUIREMENTS

Undersigned counsel has met and conferred with counsel for PG&E, and with Leadership Counsel for Individual Plaintiffs ("Leadership"), prior to the instant filing. On or about December 16, 2018, Undersigned Counsel communicated with both Counsel for PG&E and Leadership, informing them of their intention to request Sulphur be set for trial sometime in June 2019. PG&E and Leadership both expressed opposition to the idea. On December 17, 2018, Leadership issued a Cease and Desist letter direct towards Undersigned Counsel, claiming various violations of Court Orders. Undersigned counsel categorically denies any violation of any of the directives of this Court and issued the attached response on December 18, 2018. Undersigned Counsel sent a follow up correspondence to Leadership and Counsel for PG&E on December 19, 2018, further outlining the issues addressed in the instant filing, in an effort to be completely transparent and continue the meet and confer process. This final effort proved futile and the parties unfortunately were unable to find any common ground. As such, Requesting Plaintiffs have satisfied the requirement to meet and confer regarding the issue raised herein.

## II.

### RESPONSE TO ISSUES RAISED BY THE COURT IN CMO NO. 3&4

### AND REQUEST TO SET A TRIAL DATE FOR THE SULPHUR FIRE

In response to CMO 3, Requesting Plaintiffs submitted a supplemental filing requesting the Court set Sulphur for trial first. In CMO 4 the Court indicated Requesting Plaintiffs did not "provide all the data I requested in my earlier CMC order." Accordingly, Requesting Plaintiffs provide this information herein and respectfully renew their request to set a trial date for the Sulphur Fire;

Case: 19-30088    Doc# 3105-3    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 45 of 55

1  however, this request differs from the prior request in that it is being made only on behalf of

2  Plaintiffs represented by undersigned counsel.

3  Set Forth below is Requesting Plaintiffs' attempt to provide the court with the information

4  requested in CMO 3, along with the general premise of why Sulphur should be set for trial.

5  ***Trial setting*. The parties should propose a trial with this detail, for each trial proposed:**

6  • **Which fire (Tubbs, Atlas, etc.). Explain the choice, if the parties disagree.**

7  Requesting Plaintiffs believe the Sulphur Fire should be tried as soon as it is ready. In terms

8  of liability, Sulphur is the most straightforward of all the North Bay fires. The Sulphur Fire does <u>not</u>

9  involve vegetation management issues and the widely held belief amongst all Plaintiffs is the fire

10  was caused by a snapped pole. Accordingly, it will be a very streamlined trial and will not require as

11  much written discovery, depositions, or experts as the other more complex fires.

12  If Requesting Plaintiffs can obtain the Cal Fire reports and inspect the evidence collected by

13  Cal Fire (discussed *infra*), Undersigned Counsel is confident this case will be ready for trial by June

14  10, 2019. Requesting Plaintiffs are <u>not</u> asking the Court to change the trial date for the Atlas Fire

15  (which currently is set for trial on September 23, 2019) and are eager for the Atlas trial to go

16  forward. Rather, Requesting Plaintiffs are asking that the Sulphur trial (which should last 14-18

17  court days) be completed in June. Since there is no shortage of capable lawyers on both sides who

18  can handle the work up for both trials, a trial in June on the Sulphur case will <u>not</u> prevent the Atlas

19  case from going forward as scheduled on September 23.

20  Finally, as addressed in prior filings, there is a significant human element involved here. The

21  hundreds of people who lost their homes in the Sulphur Fire (Cal Fire determined that 162 structures

22  were destroyed) are hurting. A significant number of those who lost their homes in the Sulphur Fire

23  were renters. Most were uninsured, and many are suffering extreme hardship (including

24  homelessness) while they wait for their cases to be resolved. Many other plaintiffs are significantly

25  underinsured, and cannot afford to rebuild their home until they settle or try their cases against

26  PG&E. Under most insurance policies, a Plaintiffs' ALE benefits – the portion of an insurance

27  policy that pays for a rental while the insured's home is being rebuilt – will run out after two years.

28  In short, Responding Plaintiffs believe the foregoing trial schedule is necessary to avoid prejudicing

Case: 19-30088    Doc# 3105-3    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 46
of 55

1  the multitude of individuals who are uninsured and underinsured.

2       • **Number of plaintiffs.**

3  Approximately 5-10 cases per trial, totaling 8-15 individual plaintiffs.

4       • **Key characteristics of each plaintiff (e.g. the case includes wrongful death, or type of**

5       **damage (e.g., agricultural); or presents a key issue [in which case this issue should**

6       **be cited]; or plaintiff is selected randomly.**

7  Responding Plaintiff's anticipate submitting Plaintiffs for trial which represent the full

8  picture of injuries, losses, and/or damages, which are as follows:

9       1. Complete primary home loss

10      2. Partial home loss

11      3. Commercial loss

12      4. Raw land loss (no dwelling/structure) rental loss

13      5. Smoke and soot damage

14      6. Evacuation only injuries (including emotional distress for those who fled their

15          homes in fear for their lives.)

16      **When and how each plaintiff will be identified, and if a series of backup plaintiffs**

17  **whose cases present similar characteristics will be identified.**

18      The parties will work collaboratively to identify the appropriate representative Plaintiffs and

19  complete the process no more than 120 days prior to trial.

20      Each Plaintiff will represent the holder of a type of claim that arises from one of the above

21  categories. Plaintiffs' counsel will provide defendant with a list of three or four suitable individuals

22  which fit into one of the above categories who are fit to serve as a representative trial plaintiff, with

23  supporting documentation to validate their selection.  Plaintiffs and defendant can then

24  collaboratively select two or three individuals in each category to make certain as the trial date

25  approaches, should any individual claim be settled another suitable plaintiff holding the same type of

26  right or claim can replace that individual. In the event the parties cannot reach an agreement on the

27  proposed representatives, the parties would bring the matter before the Court for final decision.

28  //

Case: 19-30088    Doc# 3105-3    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 47
of 55

- **Estimated number of witnesses, with very brief descriptions of their testimony (e.g. expert on topic X, plaintiff on damages, PG&E witness on topic Z, etc.).**

Below is an estimate of the types of witnesses, what they will testify to, and an estimate of the length of testimony.

| PG&E WITNESSES | |
| --- | --- |
| **SUBJECT: Training & Qualifications of PG&E and/or Third Party Equipment** | |
| **WITNESS** | **TIME ESTIMATE** |
| • PG&E PMK Regarding Pole Inspection and Risk of Pole Failure | 1.5 Hours |
| • Supervising Equipment Inspection Manager: To Establish Insufficient Inspection and Maintenance Protocol (1-2 Witnesses) | 3.0-3.5 Hours |
| • PG&E Quality Control Project Manager(s) to Establish Knowledge of Deficiencies in Equipment Inspection Systems. | 3.0 -3.5 Hours |
| | **Total Hours 7.5-8.5** |

| PG&E WITNESSES | |
| --- | --- |
| **Subject: Failure of PG&E Managing Agents to Manage Wildfire Risk** | |
| **WITNESS** | **TIME ESTIMATE** |
| • PG&E Director Risk Management For Re: Equipment Maintenance | 3.0-3.5 Hours |
| • PG&E Director Risk Management to Establish Process for Identification & Removal/Repair of aging or defective Poles/Equipment. | 3.0-3.5 Hours |
| • PG&E Operations Manager to Establish Historical Process for determining when Poles/Equipment should be replaced. | 3.0-3.5 Hours |

Case: 19-30088   Doc# 3105-3   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 48 of 55

| | |
|---|---|
| • PG&E Program Manager(s) to Establish Continued Failures for Managing Wildfire Risk. (1-2 Witnesses) | 3.0-3.5 Hours |
| • PG&E Program Managers For Public Safety & Reliability ("PS&R"). | 2.0-2.5 Hours |
| • PG&E Manager for Governance & Support re: Budgets for Pole/Equipment Inspection. | |
| | **Total Hours 14-16.5** |

| PG&E WITNESSES | |
|---|---|
| **WITNESS** | **TIME ESTIMATE** |
| • PG&E PMK re: Role & Responsibility of Emergency Operations Center Activated On or Before October 5, 2017 to Monitor Events Leading Up To Fire. | 3.0-3.5 Hours |
| • PG&E PMK re: Policy, Practice & Procedure for Monitoring Weather Conditions in Advance of This Incident. | 2.5-3.0 Hours |
| • PG&E PMK re: Policy, Practice Or Procedures For DeEnergizing Lines, Historical Background Regarding Any Evaluation of This Risk Prevention Measures Prior to This Incident. | 3.0-3.5 Hours |
| | **Total Hours: 8.5-10** |

| EXPERTS | |
|---|---|
| **WITNESS** | **TIME ESTIMATE** |
| • Plaintiffs' Expert re: Birds and Woodpecker Damage. | 3.0 Hours |
| • Plaintiffs' Expert re: Electrical Accident Investigation, Contact & Causation. | 3.0 Hours |
| • Plaintiffs' Expert re: Fire Cause and Origin. | 3.0 Hours |
| • Plaintiffs' Expert re: Quality Assurance Sampling and Audit Process. | 3.0 Hours |
| • Plaintiffs' Expert re: Risk Management Standards for Wildfire Prevention and Mitigation Measures. | 3.0 Hours |
| | **Total Hours 15** |

- **Estimated number of days for trial, accounting for cross examination of witnesses by all counsel who would have reasons to do so.**
   - 14-18 court days

Case: 19-30088   Doc# 3105-3   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 49 of 55

1    • **Proposed trial date.**

2        ○ June of 2019

3    • **Proposed county for trial.**

4    Requesting Plaintiffs suggest Sulphur be tried in the City and County of San Francisco.

5    • **While some parties have asked for trial in this Dept. 304, if the Department's trial**

6    **calendar does not allow a trial in or around the date proposed, state alternative (e.g.,**

7    **trial in different county; trial judge assigned by the Presiding Judge of this Court on**

8    **the date of trial {master calendar approach}, etc.).**

9    If this Department is unavailable on the date requested, Requesting Plaintiffs request the case

10    be assigned to the Presiding Judge of this Court for assignment on the Master Calendar.

11    **III.**

12    **REQUEST TO CONDUCT DISCOVERY DIRECTLY**

13    **AFTER PREFERENCE MOTION IS GRANTED**

14    Requesting Plaintiffs filed their preference motion on December 4, 2018, and to date there

15    has been no opposition filed. As such, undersigned counsel anticipate this Court granting the

16    motion, which will in turn trigger the 120-day statutory timeframe to prepare for trial.

17    The current structure of filtering all discovery through Leadership is unworkable given this

18    time frame and will only serve to delay counsel's ability to swiftly conduct all necessary discovery

19    prior to trial. Under the current structure, if any counsel who is <u>not</u> part of leadership wishes to

20    conduct any discovery, it must submit its proposals to leadership for approval. If leadership denies or

21    ignores the request, counsel has a right to seek leave of court. This process is far too time

22    consuming given the shortened period to complete discovery in a preference case. As such,

23    undersigned counsel respectfully requests the right to independently conduct discovery.

24    Undersigned counsel will of course review all discovery which has been propounded to make sure

25    they do not duplicate any of Leadership's prior efforts. Undersigned Counsel was the head of the

26    Lobo discovery committee, and does not anticipate this will pose any problem.

27    //

28    //

Case: 19-30088    Doc# 3105-3    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 50 of 55

**REQUEST FOR SEPARATE TRACK**

As this Court is aware, since the inception of this coordinated proceeding, there have been significant differences and disputes which have emerged between Undersigned Counsel and Leadership. When the current structure was agreed to, such irreconcilable differences were not anticipated. Circumstances have drastically changed and as such, Undersigned Counsel is left with no choice but to petition the Court for a separate litigation track.

There are clearly fundamental differences between the two factions' approaches to resolving their respective clients' claims. Despite the parties' efforts, it seems a common ground cannot be reached. As addressed in prior filings and hearings, it is Undersigned Counsel's position that these cases should be tried as they are ready. Many of Undersigned Counsel's clients are in dire straits financially and need these cases to move along at a quicker pace.

In addition to the philosophical and strategic differences between the two groups, Undersigned Counsel has been unable to meaningfully participate in the litigation process. Since the coordination of these proceedings, Leadership has consistently failed to include Undersigned Counsel in discussions and decisions which substantially impact all Plaintiffs. Additionally, Leadership continues to level unsupported claims of misconduct, going as far as to completely refuse to communicate with anyone from Undersigned Counsel's office. This situation has been made more untenable given the Leadership's instance that counsel for Requesting Plaintiffs cease all contact with defense counsel, even as to matters that affect only Requesting Plaintiffs.

Simply stated, Undersigned Counsel is unable to meaningfully participate in the coordinated proceedings and represent their clients as they see fit. As such Requesting Plaintiffs respectfully request the Court grant Requesting Plaintiffs a separate litigation track. If he court is unwilling to grant this request at this time, Requesting Plaintiffs respectfully request the opportunity to fully brief this issue in a noticed motion.

//

//

//

Case: 19-30088    Doc# 3105-3    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 51 of 55

# V.

## REQUEST TO FILE A MOTION TO COMPEL CAL FIRE
## REPORTS AND TO INSPECT PHYSICAL EVIDENCE

All parties will certainly agree the Cal Fire Reports along with the ability to inspect physical evidence are the most import tools either party has to further the discovery process. Without access to this information, all parties are severely limited in what they can do to push these cases towards resolution. As detailed in the attached motion, to date, the parties have been unable to obtain all the unredacted reports for each fire and have not been granted access to inspect any physical evidence.

The attached motion sets forth in great detail the timeline of events in Plaintiffs' efforts to obtain the reports; however, the following is a brief synopsis of the timeline of events leading up to this request:

On June 8 and 12, 2018, Lead Counsel for the Individual and Subrogation Plaintiffs served subpoenas on Cal Fire for physical evidence it gathered and the completed, unredacted reports it generated in connection with its investigations of the Atlas, Honey, Lobo, McCourtney, Nuns/Abode/Norrbom/Pythian/Partrick, Pocket, Blue, and Sulphur fires. These subpoenas demanded production on dates between June 29 and July 9, 2018. Cal Fire produced unredacted copies of its reports (including attachments) for the first group of fires.

With regard to the second group of fires, Cal Fire asked Plaintiffs to withdraw their subpoenas until the various district attorneys decided whether to press charges. As a compromise, Plaintiffs proposed these reports be produced subject to the Protective Order entered in this case.

On July 5, 2018 Cal Fire informed Plaintiffs that, "all of the respective DA's Offices have requested that the Group 2 fire investigation reports not be shared with anyone else," and that, "Cal Fire intends on making every effort to honor this request of the DA's Offices."

On July 9, 2018, Plaintiffs requested legal authority from Cal Fire to supports its position.

On July 20, 2018, Cal Fire advised Plaintiffs that Cal Fire was still in the process of ascertaining the basis for the district attorneys' request that Cal Fire withhold the subpoenaed materials from Plaintiffs.

//

Case: 19-30088    Doc# 3105-3    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 52
of 55

1  Further meet and confer efforts were unsuccessful, and on August 9, 2018, Lead Counsel for

2  the Individual and Subrogation Plaintiffs filed their Motion to Compel Production of Cal Fire

3  Reports.

4  On August 23, 2018, Cal Fire filed its Opposition to Plaintiffs' Motion to Compel.

5  On August 30, 2017, Lead Counsel for Plaintiffs withdrew the Motion to Compel, stating

6  certain individuals were in the process of finalizing a cooperative means of accessing the unredacted

7  reports and access to physical evidence on or shortly after October 8, 2018.

8  October 8th came and went without Plaintiffs being granted access to the subpoenaed

9  materials.

10  CMO 1 does <u>not</u> set forth any rules or procedures expressly applicable to Requesting Plaintiffs'

11  instant request.  CMO 1 does, however, provide:

12  > Should any Plaintiff or law firm after consultation with the Individual Plaintiffs' Lead
13  > Counsel and the Subrogation Plaintiffs' Lead Counsel believe that they need to
> propound liability discovery that has not been or will not be propounded by the
14  > Individual Plaintiffs' Lead Counsel or the Subrogation Plaintiffs' Lead Counsel, such
> Plaintiff or law firm may seek an order from the Court allowing such discovery to be
15  > propounded.  Otherwise, no Plaintiff may serve separate liability discovery. (CMO 1
> at 15-16.)

16  Accordingly, Requesting Plaintiffs hereby seek leave of Court to file the attached motion to

17  compel access to the physical evidence and reports generated by Cal Fire in connection with all fires.

18  **IV.**

19  **CONCLUSION**

20  For the foregoing reasons, Responding Plaintiffs request an order:

21  (1)  Setting a trial in the Sulphur Fire case in June 2019 (preferably June 10, 2019);

22  (2)  Allowing Undersigned Counsel to conduct discovery directly in the Lobo Fire

23      on behalf of Preference Plaintiffs;

24  (3)  Granting Requesting Plaintiffs a separate litigation track, or in the alternative,

25      the opportunity to fully brief the matter; and

26  //

27  //

28  //

Case: 19-30088    Doc# 3105-3    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 53
of 55

1    (4)    Allowing Requesting Plaintiffs to file the attached Motion to Compel access to

2           the physical evidence and reports generated by Cal Fire in connection with all

3           fires.

4                                              Respectfully submitted,

5    Dated:  December 21, 2018               SINGLETON LAW FIRM, APC

6                                            *Gerald Singleton*

7                                            By: _____
                                                 Gerald Singleton, Esq.
8                                                Terry Singleton, Esq.
                                                 Gary LoCurto, Esq.
9

10

11

12   Dated:  December 21, 2018               THORSNES BARTOLOTTA McGUIRE LLP

13                                           *[signature]*

14                                           By: _____
                                                 John F. McGuire, Jr.
15                                               Attorneys for Requesting Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 19-30088    Doc# 3105-3    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 54
of 55

**PROOF OF SERVICE**

STATE OF CALIFORNIA        )

                                 )   ss.:

COUNTY OF SAN FRANCISCO  )

*California North Bay Fire Cases*
San Francisco Superior Court, JCCP No. 4955

I certify that I am over the age of eighteen (18) years and not a party to the within action.  I am an employee of Skikos, Crawford, Skikos & Joseph LLP, and my business address is One Sansome Street, Suite 2830, San Francisco, CA 94104.

On **December 24, 2018**, I caused to be served the following document(s) described as:

    **JOINT SUBMISSION RE PROPOSED CASE MANAGEMENT ORDERS 5 AND 6 RE INDIVIDUAL CASES INCLUDING: CMO COMPLIANCE, CASE SPECIFIC DISCOVERY, PRODUCTION OF CLAIM FILES, TRIAL SELECTION AND PREFERENCE MOTIONS**

on interested parties in this action by submitting an electronic version of the document(s) via file transfer protocol (FTP) to CaseHomePage through the upload feature at www.casehomepage.com. [The document will be deemed served on the date it was uploaded to the website as indicated by CaseHomePage system]

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on **December 24, 2018** at San Francisco, California.

                                          _____
                                          MARCO MONTOYA

PROOF OF SERVICE