# EXHIBIT D

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

HONORABLE CURTIS E.A. KARNOW, JUDGE PRESIDING

DEPARTMENT NUMBER 304

---oOo---

**CERTIFIED TRANSCRIPT**

COORDINATION PROCEEDING

SPECIAL TITLE [RULE 1550(b)]

CALIFORNIA NORTH BAY FIRE CASES

_____/

Case No.: CJC-17-004955

Reporter's Transcript of Proceedings

Friday, December 28, 2018

REPORTED BY:
MARY ANN SCANLAN, CSR NO. 8875 RMR-CRR-CCRR-CLR



Certified Shorthand Reporters
408 Columbus Avenue, Suite 2, San Francisco CA 94133
o / 415.834.1114   f / 415.399.9266
e / info@scanlanstone.com   w / scanlanstone.com

```
 1                        I N D E X

 2                                                    PAGE

 3   Preference Motion                                  13

 4   Case Management Conference                          22

 5

 6

 7                      ---oOo---

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SCANLAN
STONE

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2   FOR PLAINTIFFS:

 3        ADLER LAW GROUP, APLC
          402 W. Broadway, Suite 860
 4        San Diego, California 92101
          619.531.8700
 5        BY:  AMANDA WIESNER, Attorney at Law (CourtCall)

 6        MARY ALEXANDER & ASSOCIATES, P.C.
          44 Montgomery Street, Suite 1303
 7        San Francisco, California 94104
          415.433.4440
 8        BY:  MARY ALEXANDER, Attorney at Law
               malexander@@maryalexanderlaw.com
 9
          ANDREWS THORNTON
10        2 Corporate Park, Suite 110
          Irvine, California 92606
11        949.748.1000
          BY:  SEAN T. HIGGINS, Attorney at Law (CourtCall)
12             shiggins@andrewsthornton.com

13        BAUMAN LOEWE WITT & MAXWELL
          8765 E. Bell Road, Suite 204
14        Scottsdale, AZ  85260
          480.502.4664
15        BY:  MARK C. BAUMAN, Attorney at Law (CourtCall)
               mbauman@blwmlawfirm.com
16
          BERGER KAHN
17        2 Park Plaza, Suite 650
          Irvine, California 92614-8516
18        949.474.1800
          BY:  CRAIG S. SIMON, Attorney at Law
19             csimon@bergerkahn.com

20        BARON & BUDD, P.C.
          603 N. Coast Highway Suite G
21        Solana Beach, California 92075
          415.310.7523
22        BY:  BRITT STROTTMAN, Attorney at Law
               (CourtCall)
23             bstrottman@baronbudd.com Attorney at Law

24

25        (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

SCANLAN STONE
Case: 19-30088   Doc# 3105-4   Filed: 04/15/19   Entered: 07/19/19 15:37:40   Page 4
of 80

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                        (CONTINUED)

 3    FOR PLAINTIFFS:

 4        BARON & BUDD, P.C.
          3102 Oak Lawn Avenue, Suite 1100
 5        Dallas, Texas 75219
          214.521.3605
 6        BY:  JOHN FISKE, Attorney at Law (CourtCall)
               jfiske@baronbudd.com
 7
          THE BRANDI LAW FIRM
 8        354 Pine Street, Third Floor
          San Francisco, California 94104
 9        415.989.1800
          BY:  THOMAS J. BRANDI, Attorney at Law (CourtCall)
10             tjb@brandilaw.com

11
          THE LAW OFFICES OF SHAWN E. CAINE
12        1221 Camino Del Mar
          Del Mar, California 92014
13        858.350.1660
          BY:  SHAWN E. CAINE, Attorney at Law (CourtCall)
14             scaine@cainelaw.com

15        CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP
          110 Laurel Street
16        San Diego, California 92101-1486
          619.238.1811
17        BY:  ANGELA JAE CHUN, Attorney at Law (CourtCall)
               ajc@cglaw.com
18
          COTCHETT, PITRE, SIMON & McCARTHY
19        San Francisco Airport Office Center
          840 Malcolm Road, Suite 200
20        Burlingame, California 94010
          BY:  FRANK M. PITRE, Attorney at Law
21             fpitre@cpmlegal.com

22

23

24

25        (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

Case: 19-30088   Doc# 3105-4   Filed: 04/15/19   Entered: 07/19/19 15:37:40   Page 5
of 80

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                      (CONTINUED)

 3    FOR PLAINTIFFS:

 4        COZEN O'CONNER
          501 West Broadway, Suite 1610
 5        San Diego, CA  92101
          619.685.1716
 6        BY:  KEVIN D. BUSH, Attorney at Law (CourtCall)
               kbush@cozen.com
 7
          CUTTER LAW PC
 8        401 Watt Avenue, Suite 100
          Sacramento, California 95864
 9        916.290.4900
          BY:  MATTHEW M. BREINING, Attorney at Law
10             (CourtCall)
               mbreining@cutterlaw.com
11
          DENENBERG TUFFLEY, PLLC
12        1900 Avenue Of The Stars, Suite 425
          Los Angeles, California 90067-4318
13        310.356.4683
          BY:  ZACHARY P. MARKS, Attorney at Law (CourtCall)
14             zmarks@dt-law.com

15        DIXON DIAB & CHAMBERS
          501 W. Boradway, Suite 800
16        San Diego, California 92101
          619.354.2662
17        BY:  ED DIAB, Attorney at Law (CourtCall)
               diab@theddcfirm.com
18
          DREYER, BABICH, BUCCOLA, WOOD CAMPORA LLP
19        20 Bicentennial Circle
          Sacramento, California 95826
20        916.379.3500
          BY:  STEVEN M. CAMPORA, Attorney at Law
21             scampora@dbbwc.com

22

23

24

25        (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

Case: 19-30088   Doc# 3105-4   Filed: 04/19/19   415.834.1115   Entered: 07/19/19 15:37:40   Page 6
of 80

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                      (CONTINUED)

 3    FOR PLAINTIFFS:

 4        DONALD S. EDGAR, ATTORNEY AT LAW
          408 College Avenue
 5        Santa Rosa, California 95401
          707.799.4090
 6        BY:  DONALD S. EDGAR, Attorney at Law
               don@classattorneys.com
 7
          ENGSTROM LIPSCOMB & LACK
 8        10100 Santa Monica Boulevard, 16th Floor
          Los Angeles, California 90067-4107
 9        310.552.3800
          BY:  GREGROY P. WATERS, Attorney at Law (CourtCall)
10             gwaters@elllaw.com
          BY:  ALEXANDRA J. NEWSOM, Attorney at Law
11             (CourtCall)
               anewsom@elllaw.com
12
          FOX LAW APC
13        The Plaza Building
          225 W. Plaza Street, Suite 102
14        Solana Beach, California 92075
          BY:  JOANNA FOX, Attorney at Law (CourtCall)
15             Joanna@FoxLawAPC.com

16        FRANTZ LAW GROUP
          402 W Broadway, Suite 860
17        San Diego, CA 92101
          619.233.5945
18        BY:  JAMES P. FRANTZ, Attorney at Law
               jpf@frantzlawgroup.com
19        BY:  REGINA BAGDASARIAN, Attorney at Law
               (CourtCall)
20             rbagdasarian@frantzlawgroup.com

21        GILBERT LLP
          1100 New York Avenue, NW  Suite 700
22        Washington, DC, 20005
          202.772.2428
23        BY:  DANIEL I. WOLF, Attoreny at Law
               (CourtCall)
24             wolfd@gotofirm.com

25          (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

SCANLAN STONE

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                     (CONTINUED)

 3   FOR PLAINTIFFS:

 4        GOYETTE & ASSOCIATES
          2366 Gold Meadow Way, Suite 200
 5        Gold River, California 95670-4471
          916.851.1995
 6        BY:  RACHEL SIMONS, Law Clerk Law (CourtCall)

 7        GROTEFELD HOFFMANN LLP
          700 Larkspur Landing Circle, Suite 280
 8        Larkspur, California 94939-1755
          415.344.9670
 9        BY:  MAURA WALSH OCHOA, Attorney at Law (CourtCall)
               mochoa@ghlaw-llp.com
10

11        JACKSON & PARKINSON
          205 West Alvarado Street, Suite 2
12        Fallbrook, California 92028
          760.723.1295
13        BY:  ROBERT JACKSON, Attorney at Law (CourtCall)
               robert@jacksontriallawyers.com

14        LAW OFFICES OF JANG & ASSOCIATES, LLP
          1766 Lacassie Avenue, Suite 200
15        Walnut Creek, California 94596
          925.937.1400
16        BY:  SALLY NOMA, Attorney at Law (CourtCall)
               snoma@janglit.com
17

18        KERSHAW COOK & TALLEY
          401 Watt Avenue
19        Sacramento, CA 95864
          916.448.9800
20        BY:  IAN J. BARLOW, Attorney at Law (CourtCall)
               ian@kctlegal.com

21        LAW OFFICES OF JOHN C. LEMON
          1350 Columbia Street, Suite 600
22        San Diego, California 92101
          619.794.0423
23        BY:  JOHN C. LEMON, Attorney at Law
               john@jcl-lawoffice.com
24

25          (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

SCANLAN STONE

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                        (CONTINUED)

 3   FOR PLAINTIFFS:

 4        LEVINS SIMES
          44 Montgomery Street, 32nd Floor
 5        San Francisco, California 94104
          415.426.3000
 6        BY:  AMY ESKIN, Attorney at Law
                aeskin@levinsimes.com
 7
          LIEFF CABRASER & HEIMANN
 8        275 Battery Street, Suite 3000
          San Francisco, California 94111
 9        415.956.1000
          BY:  ELIZABETH CABRASER, Attorney at Law
10                ecabraser@lchb.com
          BY:  LEXI J. HAZAM, Attorney at Law (CourtCall)
11                lhazam@lchb.com
          BY:  ABBY R. WOLF, Attorney at Law
12                awolf@lchb.com

13        MCNICHOLAS & MCNICHOLAS, LLP
          10866 Wilshire Boulevard, Suite 1400
14        Los Angeles, California 90024
          310.474.1582
15        BY:  JOHN PATRICK MCNICHOLAS IV, Attorney at Law

16        ROBINS CLOUD
          808 Wilshire Boulevard, Suite 450
17        Santa Monica, California 90401
          310.929.4200
18        BY:  KEVIN M. POLOLACK, Attorney at Law (CourtCall)
                kpollack@robinscloud.com
19
          ROBINS KAPLAN LLP
20        800 LaSalle Avenue Suite 2800
          Minneapolis, MN  55402
21        612.349.8500
          BY:  SCOTT G. JOHNSON, Attorney at Law (CourtCall)
22                SJohnson@RobinsKaplan.com

23

24

25          (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

SCANLAN
STONE

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 9
of 80

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                        (CONTINUED)

 3    FOR PLAINTIFFS:

 4         ROBINSON CALCAGNIE, INC.
           19 Corporate Plaza Drive
 5         Newport Beach, California 92660
           949.720.1288
 6         BY:  MARK P. ROBINSON, JR., Attorney at Law
                mrobinson@robinsonfirm.com
 7         BY:  LILA RAZMARA, Attorney at Law (CourtCall)
                lrazmara@robinsonfirm.com
 8
           LAW OFFICES OF ALEXANDER M. SCHACK, A.P.C.
 9         16870 West Bernardo Drive, #400
           San Diego, California 92127
10         858.485.6535
           BY:  NATASHA N. SERINO, Attorney at Law (CourtCall)
11              natasha@serinoandserino.com

12         SCHROEDER LOSCOTOFF LLP
           7410 Greenhaven Drive, Suite 200
13         Sacramento, California 95831
           916.438.8300
14         BY:  ERIC M. SCHROEDER, Attorney at Law (CourtCall)
                emschroeder@calsubro.com
15
           SIEGLOCK LAW
16         1221 Camino Del Mar
           Del Mar, California 92014
17         858.793.0380
           BY:  CHRISTOPHER SIEGLOCK, Attorney at Law (CourtCall)
18              chris@sieglocklaw.com

19         SINGLETON LAW FIRM
           450 A Street, 5th Floor
20         San Diego, California 92101
           619.771.3473
21         BY:  GERALD SINGLETON, Attorney at Law
                gerald@slffirm.com
22         BY:  GARY LOCURTO, Attorney at Law
                gary@slffirm.com
23


24


25         (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

SCANLAN STONE

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                     (CONTINUED)

 3   FOR PLAINTIFFS:

 4        TERRY SINGLETON, APC
          1950 5th Avenue, Suite 200
 5        san Diego, California 92101-2344
          619.239.3225
 6        BY:  TERRY SINGLETON, Attorney at Law

 7        SKIKOS CRAWFORD SKIKOS JOSEPH & MILLICAN
          625 Market Street, 11th Floor
 8        San Francisco, California 94105
          415.546.7300
 9        BY:  STEVEN J. SKIKOS, Attorney at Law
               sskikos@skikos.com
10
          LAW OFFICES OF ROBERT A. STUTMAN
11        1206 Corona Pointe Court, Suite 306
          Corona, California 92879
12        951.387.4700
          BY:  TIMOTHY E. CARY, Attorney at Law (CourtCall)
13             CaryT@StutmanLaw.com

14        SUSQUEHANNA INTERNATIONAL GROUP, LLP
          140 Broadway, 47th Floor
15        New York, NY 10005
          212.514.4705
16        BY:  DAVID S. GREENBERG, Interested Party
               (CourtCall)
17
          THOMPSON LAW OFFICES, P.C.
18        700 Airport Boulevard, Suite 160
          Burlingame, California 84010-1931
19        650.513.6111
          BY:  ROBERT W. THOMPSON, Attorney at Law
20             (CourtCall)
               bobby@tlopc.com
21

22

23

24

25        (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 11
of 80

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                      (CONTINUED)

 3    FOR PLAINTIFFS:

 4        THORSNES BARTOLOTTA MCGUIRE
          2550 Fifth Avenue, Eleventh Floor
 5        San Diego, California 92103
          619.236.9363
 6        BY:  JOHN F. McGUIRE, Attorney at Law
               mcguire@tbmlawyers.com
 7        BY:  JACOB DOMENIC MARTINI, Attorney at Law
               (CourtCall)
 8             martini@tbulawyers.com

 9        WALKUP, MELODIA, KELLY & SCHOENBERGER
          650 California Street, 26th Floor
10        San Francisco, California 94108
          415.981.7210
11        BY:  KHALDOUN BAGHDADI, Attorney at Law
               kbaghdadi@WalkupLawOffice.com
12        BY:  MAX SCHUVER, Attorney at Law
               mschuver@walkuplawoffice.com

13

14    FOR DEFENDANT PG&E:

15        CLARENCE DYER & COHEN LLP
          899 Ellis Street
16        San Francisco, California 94109
          415.749.1800
17        BY:  KATE DYER, Attorney at Law
               kdyer@clarencedyer.com
18
          CRAVATH, SWAINE & MOORE
19        Worldwide Plaza
          825 Eighth Avenue
20        New York, New York 10019
          BY:  DAMARIS HERNANDEZ, Attorney at Law
21             dhernandez@cravath.com
          BY:  CHRISTINA N. BARREIRO, Attorney at Law
22             cbarreiro@cravath.com
          BY:  KEVIN J. ORSINI, Attorney at Law (CourtCall)
23             korsini@cravathcom

24

25          (APPEARANCES CONTINUED FOLLOWING PAGE:)
```

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 12
of 80

```
 1        A P P E A R A N C E S   O F   C O U N S E L:

 2                        (CONTINUED)

 3    FOR DEFENDANT PG&E:

 4        WILSON, SONSINI, GOODRICH & ROSATI
          650 Page Mill Road
 5        Palo Alto, CA  94304-1050
          650.320.4893
 6        BY:  RODNEY GRANT STRICKLAND JR, Attorney at Law
               rstrickland@wsgr.com
 7

 8                        ---oOo---

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SCANLAN
STONE

1                    P R O C E E D I N G S

2            Friday | December 28, 2018 | 2:07 p.m.

3                          ---oOo---

4            THE COURT:  Good afternoon.

5            So for two o'clock we have a preference

6     motion.  I didn't see any oppositions.

7            MR. PITRE:  Good afternoon, Your Honor, Frank

8     Pitre.

9            If we could, Your Honor, if it is not too much

10    trouble for the Court, we would request that we have the

11    CMC.

12           THE COURT:  The trouble is that the CMC was

13    set for three o'clock and I don't know if everybody

14    realizes it would happen earlier than that.  If I had it

15    down and completed it in 45 minutes, people stroll in

16    the door or get on the telephone at three o'clock only

17    to be told it already happened, there's a due process

18    problem.

19           MR. PITRE:  Understood, Your Honor.

20           THE COURT:  I have read all the CMC materials,

21    so I'm sensitive to some of those issues.

22           MR. PITRE:  Your Honor, the only issue that we

23    would raise is really one that deals with the motion

24    before His Honor as it relates to CMO number six.

25           They're interrelated, so if the Court wants to

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 14
of 80

1   hear both at the same time, I just didn't want this

2   Court to get the impression that because we did not file

3   a formal opposition to the preference motion, that we

4   did have some concerns as to how it would work.

5           THE COURT:  I understand and I know what they

6   are.  I don't even have to read between the lines.

7           MR. PITRE:  There you go, Your Honor.

8           THE COURT:  I can just read the lines

9   themselves.

10          No, the order will issue -- both the CMO and

11  the order on the preference motion will issue after

12  we've finished all of the hearings and they'll have to

13  go out today because today is my last day for a couple

14  of weeks.

15          MR. PITRE:  As long as Your Honor -- if I may.

16  I apologize.

17          THE COURT:  Go ahead.

18          MR. PITRE:  As long as we can have the Court

19  reserve its ruling on the order on the motion for

20  preference until they're both taken together, we'll take

21  it however the Court wants.

22          THE COURT:  The order is not going to issue

23  until after I've had the case management conference.

24          MR. PITRE:  Very good.

25          THE COURT:  If that's helpful.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 15
of 80

```
 1              Is Mr. Singleton here?

 2              MR. SINGLETON:  Yes, Your Honor.

 3              THE COURT:  How are you?

 4              MR. SINGLETON:  I'm well, Your Honor.  How

 5    about yourself?

 6              THE COURT:  I'm good.

 7              There's no opposition to the motion, so my

 8    tentative, obviously, is to grant it, but there are a

 9    couple of issues that are not addressed in the motion

10    that we have to talk about -- I'll hear from PG&E in a

11    minute -- for example, a trial date, what county it

12    should occur in.

13              Do you have any thoughts about any of these

14    things?

15              MR. SINGLETON:  Yes, sir.

16              I think 120 days would be April 29th, we

17    believe that would be an appropriate date for the Court

18    to set.

19              In terms of the county, I understand

20    Your Honor is not available.  Obviously, our first

21    choice would be to be in front of Your Honor.

22              THE COURT:  I'm not available at all in any

23    case after the middle of January because a different

24    judge will be taking all of these cases.

25              MR. SINGLETON:  Understood, Your Honor.
```

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 16
of 80

1          What I think we would request is to have the

2    case transferred to Sacramento for trial.  That would be

3    much more convenient for our client.  I know the Court

4    has seen the papers.  She is in very poor health.

5          Sacramento was the coordination point for the

6    Butte fire.  Obviously, it is certainly capable of

7    handling a complex case, and so we believe that it is

8    within the Court's powers to send it to Sacramento and

9    we think that would be the best for all parties.

10          It certainly would be most convenient for the

11    witnesses.  As I'm sure the Court is aware, the

12    witnesses who will be testifying from Cal Fire and some

13    of the other agencies are in counties that are adjacent

14    to Sacramento.  We obviously haven't had a chance to

15    speak with every witness, but some of the ones we have

16    spoken with would prefer a trial in Sacramento.

17          So for the benefit of the parties and the

18    witnesses, we think Sacramento is where this particular

19    trial should occur.

20          THE COURT:  Thank you.

21          Does PG&E have any views on this?

22          MS. HERNANDEZ:  Good afternoon, Your Honor,

23    Damaris Hernandez.

24          We agree that Mr. Singleton that April 29th

25    should be the date for trial.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 17
of 80

1          I think we think the case should happen here

2     in San Francisco.  Again, we agree with Mr. Singleton

3     that we prefer it would be in front of you, but since

4     that is not possible, we think it's more efficient for

5     us to have it here.  It's more convenient for us.

6          And just as we discussed in the last CMC, it

7     makes sense, since the cases are coordinated here, that

8     it happen here in San Francisco.

9          THE COURT:  If you could get back to the

10    podium, please.

11         Your convenience is not perhaps the most

12    important factor.  The convenience of the plaintiff

13    herself is important in the sense that she might or may

14    not have trouble moving.  I don't know what that status

15    is, but my main concern I think is probably convenience

16    of witnesses and things like that.

17         Do you have any view as to where the witnesses

18    are likely to come from?

19         I mean, we have PG&E folks of course.  Maybe I

20    should assume that they're here in San Francisco.  I

21    don't know.  Do you have a view as to what the

22    unaffiliated witnesses, where they might be coming from,

23    third party witnesses, for example?

24         MS. HERNANDEZ:  I think the third party

25    witnesses will probably be from San Francisco.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 18
of 80

1          THE COURT:  Who would those be, probably?

2          MS. HERNANDEZ:  So the vegetation management,

3  Lobo, it's like Atlas.  It's an alleged vegetation

4  contact power line case, so it would be third party

5  contractors who did patrolling, and it would also be the

6  PG&E folks who actually are involved in monitoring the

7  vegetation work we do.

8          THE COURT:  Those are all residents closer to

9  San Francisco than they are to Sacramento?

10          MS. HERNANDEZ:  I think so, Your Honor.

11          THE COURT:  We don't really know, do we?  No

12  one knows.  It was never briefed.

13          MS. HERNANDEZ:  It was never briefed.

14          THE COURT:  Right, no one has a clue.

15          Fortunately, San Francisco and Sacramento are

16  not too far apart from each other, but we actually have

17  no basis to decide -- there's nothing in front of me

18  that decides or even helps decide whether it should be

19  San Francisco or Sacramento, except PG&E is across the

20  street, basically, right?

21          If I could speak with Mr. Singleton just for a

22  moment.

23          Thank you, ma'am.  I appreciate your help.

24          There's nothing in here that helps me decide

25  this.  Where does your client live, what county is she?

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 19
of 80

1          MR. SINGLETON:  She lives in Nevada County,

2    which is very close to Sacramento.  The witnesses that

3    we intend to call will be local there.  Obviously, I'm

4    sure PG&E --

5          THE COURT:  For example, what sort of

6    witnesses would those be?

7          MR. SINGLETON:  There will be damages

8    witnesses who will be in a position to comment on what

9    the property looked like before, what the property

10   looked like after.  Those will all be local.

11         My understanding of where the vegetation

12   management contractors are is that they are local, the

13   individuals who actually perform the work.  Typically,

14   that's the way it's done.

15         In handling these cases, I've never seen it

16   done somewhere else where, for example, you have

17   contractors from San Francisco who would drive several

18   hours to perform work in Nevada County.  Typically,

19   they're local people that are hired to do it.  I believe

20   that's what we'll find here, but obviously if that's

21   something the Court wishes to reserve judgment upon and

22   have us brief the issue and try to find out, we can

23   certainly do that.

24         THE COURT:  I think probably everybody would

25   like this just decided one way or another as soon as

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 20
of 80

1    possible.  You would; probably PG&E would.  I appreciate

2    that.  Thank you, sir.

3              Yes, ma'am.

4              MS. HERNANDEZ:  Your Honor, to the extent that

5    Your Honor wishes it to be in Sacramento, I think we

6    would be amendable to that.  We can get our witnesses

7    there and we can do it for the convenience of the

8    plaintiff.

9              THE COURT:  Okay.

10             I'll devise an order.  It will be brief and

11   we'll have it in Sacramento.

12             The actual date, I may set it down for

13   April 29th, but I think I need to contact the presiding

14   judge in Sacramento to find out what their system is for

15   assigning dates on cases and so on.  I want something

16   that fits with what they're doing.

17             There are other issues with respect to how

18   discovery is going to get handled between now and then,

19   but my guess is we'll have a more detailed discussion

20   about that at the CMC; I think probably.

21             I think would -- I recognize -- at least I'll

22   just speak for myself -- which is that preference

23   motions like this present an impossible situation for

24   everybody.  It's impossible for the plaintiff.  It's

25   impossible for the defendants.  The idea that we can

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 21
of 80

1  have as prepared a trial in 120 days as we could with a

2  more extensive time period is really not feasible.

3          What the legislature has told us,

4  understandably, is that it's better to have an imperfect

5  process and do what we can within 120 days rather than

6  run a serious risk of a plaintiff not having his or her

7  day in court at all.  That's the judgment call the

8  legislature has made.

9          But the consequence is going to be that a

10  number of things that we would normally want to get done

11  in preparation for a trial, we're not going to have the

12  time to do it.  It's never going to happen.  We can talk

13  about that in a little bit more detail at the CMC, about

14  how we're going to organize preference motions and

15  particularly the discovery that has to be done in

16  advance of that.

17          With that being said, I think we'll resume in

18  about 45 minutes.  We will have our three o'clock CMC at

19  that point.  That way I'll know that everybody who wants

20  to participate is available to either listen or come in

21  the door.

22          I'd like to get it done sooner, too, because I

23  know it's Friday afternoon and people want to get back

24  to their families, but I think it's just not fair to

25  people who are counting on this starting at

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 22
of 80
415.834.1114

1   three o'clock to start without them.

2               (Recess taken 2:18 p.m.)

3

4           CASE MANAGEMENT CONFERENCE | 3:00 P.M.

5               THE COURT:  Good afternoon again.

6               I believe we have exactly the same people,

7   don't we?  Oh, well.

8               Let me just give you a couple of tentative

9   thoughts on some issues that are presented by the

10  various papers, and then I'll turn it over to the

11  attorneys for discussion.

12              With respect to the Sulphur fire, we've

13  already discussed this and there's no reason to shift

14  gears at this point.  We're going to proceed with the

15  Atlas fire first.

16              With respect to the suggestions made by the

17  Singleton firm, which are referred and summarized to

18  some extent in exhibit C of the CMC statement, I reject

19  the suggestions.  I think it's confusing and

20  counterproductive to go down that road.

21              I would remind the Singleton firm that we have

22  an orderly process here in terms of getting CMC

23  statements in to the Court and people are simply going

24  to have to do a better job in terms of coordination in

25  advance.  So if the Singleton firm or indeed any

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 23
of 80

1    attorney representing a plaintiff has concerns or issues

2    or wants things discussed in a CMC statement, it may

3    just be necessary to back up and start a little bit

4    earlier than ordinarily what's going on.

5              These things are due three days in advance,

6    and that means that sometimes you may have to start ten

7    days in advance or something like that to get the ball

8    rolling and have the discussion that you need so that

9    your views can be represented and contested if necessary

10   by other attorneys.

11             There's nothing wrong with having sort of a

12   contest or different viewpoints in the CMC statement.

13   That's fine.  In fact, it can be very healthy, but to

14   have separate documents lodged is not good, and to have,

15   for example, a document sent in on December 27th is not

16   good at all.  It is just confusing and it needs people

17   looking at -- people seeing documents and ideas and

18   positions during a time period where it's impossible to

19   respond to them in writing and that gets difficult.

20             If it were just the case with a couple of

21   lawyers, we would have plenty of time in the case

22   management context to go through everything orally and

23   to have people discuss things orally and to give

24   everybody all the time they want to speak orally.

25             But in this case like this and other cases

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 24
of 80

 1  involving many lawyers, most of the work actually has to

 2  be done in writing because there's no way to say

 3  everything that you have to say and be able to respond

 4  to it orally in the case management context.

 5          I'll stop there and open it up for any

 6  comments and then we'll talk more specifically about

 7  CMO5 and CMO6, so if you have comments about those

 8  things in particular, just hold off for a few minutes

 9  while I pause just to get any reactions or comments from

10  anybody who'd like to talk about the topics that I've

11  just alluded to.

12          Yes, sir.

13          MR. SINGLETON:  Your Honor, just as -- so I

14  understand what is being rejected.

15          One of the things that we asked for was the

16  right to do discovery on behalf of Ms. Fowler.  Is that

17  something that's being rejected or is that something

18  we're going to discuss going forward?

19          THE COURT:  Well, that specifically is

20  something which is going to have to be coordinated.

21          Obviously, you need to do discovery specific

22  to her case.  There's no question about it, but I don't

23  want to have PG&E getting all sorts of discovery demands

24  from you without the other lawyers in the case having --

25  especially lead counsel in the case having an

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 25
of 80

1  opportunity to look at it and try to coordinate.

2          So, for example, let's just hypothesize that

3  you wanted to take a PMK deposition on vegetation

4  management of PG&E.  Well, if it just got -- simply came

5  out of your office directly to PG&E without the ability

6  of the other lawyers to coordinate on that, we would

7  have a real problem.

8          So you need -- this case, like any case, has

9  to work through leadership and you have to coordinate,

10  which means it's going to take maybe a couple of days or

11  it's going to take a little bit more time to get that

12  done.  I'm going to encourage the other lawyers to act

13  very rapidly in your particular case because of the

14  deadlines that you're now under.

15          But these things have to be coordinated.  We

16  can't three, four -- let's say we had four or five or

17  six preference cases.  I see notes in here that suggest

18  that you might file up to 15 different preference

19  motions.  They could be motions that pertain to multiple

20  fires -- to a variety of different fires.  It's

21  certainly conceivable.  It could start really unwinding

22  all the coordination that we have here if those weren't

23  coordinated through leadership, so that's what has to

24  get done.

25          There may be disputes between you and

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 26
of 80

1  leadership on that.  That's possible, and those will

2  simply have to be resolved by the Court.

3          MR. SINGLETON:  Your Honor, I understand what

4  the Court is saying.

5          I think the concern we have is this:  In the

6  event that other motions were filed and this was

7  something that affected other fires, I can see that

8  issue, but this is a single discrete fire, Lobo, and

9  there's only two groups that have actual plaintiffs in

10  it, my group and the Adler, Fox, Sieglock group.

11          As the Court said, it is -- I believe the

12  Court used the word "impossible"; preferences are an

13  impossible situation for the parties under the best

14  circumstances.  If we have to coordinate through

15  leadership, if we can't serve our own discovery, if we

16  can't meet and confer, there's absolutely no way we can

17  get the case ready for trial.

18          So that is a fundamental denial of due process

19  to Ms. Fowler, who, as the Court has recognized, has

20  Stage IV carcinosarcoma and is dying.  There is

21  absolutely no reason for us to not be allowed to serve

22  the discovery directly.  If the concern is duplicative

23  discovery, then obviously --

24          THE COURT:  It's not just duplicative; it's

25  uncoordinated that's part of the protocol.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 27
of 80

1    It may well be, for example, I can imagine a

2  lot of discovery demands that raise no issues.  For

3  example, let's say there is a deposition of a person who

4  knows about a certain piece of vegetation or a certain

5  pole or a certain specific area that is unique to your

6  case.

7    Well, we can tell in about four and a half

8  seconds in maybe a two-minute phone call between you and

9  leadership that that doesn't pose any issues at all,

10  right?  No one else needs to go to that deposition

11  necessarily; or people who might want to, they can be

12  alerted to it, but that's probably not going to upset

13  any applecarts whatsoever.

14    So that's a phone call.  It might inject

15  another couple of hours of delay in your ability to get

16  a deposition notice out.

17    On the other hand, I can imagine the PMK of

18  a -- a corporate PMK of PG&E that has to do with, you

19  know, topics like tell me everything about your policies

20  about everything -- I'm exaggerating here grossly just

21  to make a point -- all your policies about forest

22  management, all your policies about hiring third party

23  contractors, all your policies about -- so on and so

24  forth.

25    At that point it's going to cause tremendous

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 28
of 80

1   chaos and that needs to be coordinated.  That will take

2   longer to set up.

3           MR. SINGLETON:  I understand completely, Your

4   Honor.

5           So would it be possible to have a situation

6   where we can serve discovery that relates only to the

7   Lobo fire and everything that involves anything broader

8   can be done through leadership?

9           Our concern is --

10          THE COURT:  I just don't know how to

11  articulate that line.  I don't know how to write that

12  one up.

13          MR. SINGLETON:  The way that I think it would

14  be done, Your Honor, as an example is to grant

15  Ms. Fowler's counsel the right to do discovery relating

16  solely to the Lobo case.  If it relates to any other

17  cases, then it would have to be coordinated through

18  leadership.

19          But our concern is this:  For our experts to

20  be ready and for them to be deposed -- and I would

21  imagine that will happen in about two months -- they

22  need, for example, the Cal Fire reports.  They need the

23  opportunity to inspect the evidence.  Thus far, we're

24  seven months after those reports have been prepared and

25  we still don't have them.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 29
of 80

1          We need the ability to file a motion to

2    compel.  We asked leadership to file it.  It was filed,

3    then it was taken off without our knowledge and three

4    months -- without our consent.  Three months later we

5    still don't have it.

6          I understand the meet and confer process is

7    going on and, certainly, that's commendable, but it's

8    been seven months and we need it.  And the concern that

9    we have is we're working at different paces here.

10         Now that we have this granted, there is a fire

11   under us to get this case ready to go.  If we're not

12   ready, that comes back on us, not leadership, and our

13   client has hired us and wants us to represent her.  If

14   we're not allowed to do discovery, we can't do that.

15         So I completely understand, and if there's any

16   issue that relates to any case other than Lobo, I

17   completely have no problem with going through

18   leadership; but in terms of our getting this case ready,

19   filing the request for productions, the notices of

20   depositions, the special interrogatories, and requests

21   for admission that have to be filed, it will inject an

22   unnecessary element of delay in an already, to use the

23   Court's term, impossible progress -- process if we're

24   required to do that.

25         So I would simply ask for the right to conduct

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 30
of 80

1    discovery on her behalf.

2            THE COURT:  You know what you want now, pretty

3    much, right, at least in broad terms?

4            MR. SINGLETON:  We know certain things, but we

5    need the Cal Fire report, and that's why we need to be

6    able to file that.  Again, I don't know if that's an

7    issue the Court is going to raise now or later, but

8    we've asked for permission to file that motion to

9    compel.

10           THE COURT:  Let me rephrase my question.

11           MR. SINGLETON:  Sure.

12           THE COURT:  You know now the sorts of

13   discovery that you would want to issue to PG&E and you

14   realize that you're basically going to have about one

15   wave of written discovery -- time for about one wave of

16   written discovery, interrogatories, document demands,

17   RFAs, and things like that.  That's about as much time

18   as you'll have, and then you're going to do some

19   depositions and that will probably eat up the amount of

20   time.

21           The point I'm making is you know now pretty

22   much what written discovery and depositions you want or

23   at least within a week or so, very soon, you can figure

24   that out, right?

25           MR. SINGLETON:  We know some of it, but we

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 31
of 80

1  won't know the majority of it until we get that Cal Fire

2  report.  It's the road map to how to do the case, which

3  is why it's so critical.  That's why we need that

4  document, why we've been trying to get it now for seven

5  months, and why we're asking the Court to allow us to

6  serve a motion to compel.

7          That way, if they have any kind of a

8  legitimate issue, if they're going to try to assert some

9  type of governmental privilege, which I think the case

10  law is very clear it wouldn't apply here, but if they

11  want to assert it, that's fine.  The Court can make a

12  decision.

13          But the problem is leadership has been meeting

14  and conferring with us not involved with the various

15  counties for seven months and we still don't have the

16  reports or access.  We need to have that happen

17  immediately.

18          So one of the things that we're asking for is

19  the right to file a motion to compel the Cal Fire report

20  in Lobo and inspection, and we'd like an order

21  shortening time on that so that it can be done post

22  haste.

23          But, again, setting depositions, these are the

24  kind of things that we need to be able to do.  Certainly

25  we'll ask other people.  If they're interested, we'll

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 32
of 80

1 | try to accommodate everyone, but the number one concern

2 | here has to be getting this case worked up for the

3 | preference plaintiff, who is dying.

4 |         THE COURT:  Thank you.  I appreciate that.

5 |         Others wish to be heard on this topic?

6 |         MR. BAGHDADI:  Your Honor, if I may be heard

7 | briefly.

8 |         THE COURT:  Of course.

9 |         MR. BAGHDADI:  Good afternoon, and may it

10 | please the Court, Khaldoun Baghdadi.

11 |         The entire process that the Court just

12 | outlined for Mr. Singleton, the confusion, the potential

13 | chaos, the need to coordinate, is exactly what we tried

14 | to do with the preference process.

15 |         Since August we established a preference

16 | committee, circulated a protocol, wanted to obtain and

17 | elicit the orderly and efficient exchange of information

18 | so that we would be avoiding these specific conundrums

19 | because never would I ever want to stand as an officer

20 | of the Court and say Ms. Fowler shouldn't get her day in

21 | court, but the process by which that is decided should

22 | follow some coordination.

23 |         What we have in this case is 50 firms that

24 | have agreed to a coordinated process in obtaining the

25 | information for preference.  Do we have the information

1  necessary, which fires are we talking about, how can we

2  exchange this information in an orderly fashion, how do

3  we trigger a meet and confer process, could there be

4  more than one case that would qualify as a preference,

5  which we could then use as a bellwether?

6          And in that process what we've done is told

7  our constituent law firms and some of my own clients, we

8  understand what you're going through.  We know you've

9  got a client who might be a 36(a) mandatory preference,

10  but we need to do this in an orderly fashion so that we

11  don't just rush the Court.

12          What happened here is in this specific motion

13  that was before the Court, there was a steady refusal to

14  participate meaningfully in the preference protocol

15  process and the motion followed.  We then filed our case

16  management statement and sought to be heard on calendar

17  at the same time because we don't want to stand

18  substantively in the way of anybody under 36(a), but

19  cannot have a situation where the JCC process is

20  rendered meaningless when all you have is a series of

21  uncoordinated preferences.

22          We must now turn back to our constituents and

23  say we want this protocol, we want this process, we want

24  to be able to have a seven-day meet and confer period

25  with PG&E.  Why?  So that we can know we've got four

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 34
of 80

1  Atlas preferences, we've got 30 preferences that we

2  could be filing.

3          The specific issue you just encountered here

4  at this podium from Mr. Singleton is exactly what we

5  were trying to avoid, that the coordination, not just

6  apply to discovery but to preferences as well; and not

7  at the risk of someone losing their substantive rights,

8  but that the decision to grant that preference be

9  considered in addition to others as part of the broader

10  case management plan, which this Court is vested with

11  the power to do under the rules of court.

12          That's just the observation I wish to make.

13          And so, the coordination of discovery, once we

14  start creating separate tracks for every attorney that

15  wants to file 27, 28 preference motions, our job as

16  liaison and lead to bring this in to you with the issues

17  teed up, with the disputes focused, becomes untenable

18  because the constraints imposed by due process under

19  36(a) at some juncture have to yield to the procedural

20  considerations that any preference be ruled upon and

21  addressed according to an orderly protocol.

22          So we cannot coordinate any discovery if we

23  have a rush on preference motions, which I fear may

24  follow, when we have another person saying, well, I've

25  got a Pocket preference, I want to conduct my own

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 35
of 80

 1  discovery on Pocket, Your Honor, it won't have anything

 2  to do with broader fires, just Pocket.

 3          Well, we got coordinated in San Francisco on

 4  the basis that the fire may have happened in Nevada

 5  County, but the decisions we contend that led to it --

 6          THE COURT:  Just one moment.

 7          (Interruption.)

 8          THE COURT:  Is somebody on the telephone?

 9          MR. BAGHDADI:  The decisions that led to the

10  fire be it vegetation management, risk management,

11  corporate enterprise, took place here in San Francisco.

12          Eventually we're going to have be getting to

13  corporate discovery, as we work with PG&E to roll out

14  production of evidence.

15          Now, we know it would be need to be expedited

16  for preference cases, but we fear that enabling a

17  preference motion to proceed in the absence of a broader

18  coordination process is going to make it very difficult

19  if not impossible for us to continue in that

20  coordination process.

21          THE COURT:  Well, the plan that you have in

22  the proposed CMO, the net of it is, I think, and it

23  probably has to be that a certain process is gone

24  through, but at the end of the process, if a plaintiff's

25  counsel believes that they need to file a preference

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 36
of 80

 1  motion, they file it, right?

 2          MR. BAGHDADI:  Correct.

 3          THE COURT:  We're not going to stop anybody

 4  from filing a preference motion.

 5          MR. BAGHDADI:  Nor can we.

 6          THE COURT:  Nor can we.  We can't do that.

 7          MR. BAGHDADI:  Correct.

 8          THE COURT:  So the issues are going to come

 9  up.

10          I mean, the issue that we have today is a

11  foretaste of possible issues that we're going to have

12  coming up.

13          So just to focus on today's specific issue,

14  the Cal report on Lobo, the request has been made that

15  at least that motion get teed up, we go ahead and have

16  that motion.  What do you think?

17          MR. BAGHDADI:  Well, you've got the attorney

18  general's office, which we've been coordinating on.

19          And we did file a motion, as the Court is

20  aware, and it drew an objection and we were able to

21  reach an accord with them.

22          The problem specifically with Lobo is that the

23  Nevada County district attorney has not responded as of

24  yet since that case could be potentially under criminal

25  investigation.

1          We obtained an agreement to share materials

2    and evidence on Atlas, Norrbom, Adobe -- the majority of

3    the fires.  And indeed, the process is such that when

4    we're dealing with over a dozen fires, at some times we

5    need to be systemic about the approach as opposed to

6    making a motion to compel on one discrete issue.

7          The AG's level of cooperation may change if

8    they're faced with a Lobo motion; but perhaps by going

9    through our protocol process we learn there's more than

10   one Lobo case that is suitable for preference or there's

11   more than one Sulphur case.

12         Before we unleash every preference motion as

13   it happens, could we have perhaps an orderly

14   coordination of that so that if it's not this Court,

15   whomever it is, is not inheriting more swipes at the

16   preference process so that we can then prioritize and

17   tell the attorney general, listen, we've got three

18   preference cases.  That case is set for trial per 36(a).

19   It will not be moved.

20         We need this material or we have to file the

21   motion.  We can renew the motion.  We obtained their

22   agreement to refile and renew it.  We have no problem

23   doing that, so once we create -- I apologize.

24         THE COURT:  No.

25         MR. BAGHDADI:  Once we create separate tracks

SCANLAN
STONE

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 38
of 80

 1  for every person who decides not to participate and then

 2  file a motion of their own, we cannot deliver what

 3  you've asked us to do, which is get this case ready for

 4  trial and bring it in through trial or settlement.  We

 5  won't be able to do that, sir.

 6          THE COURT:  It's a very difficult situation.

 7          I think there is a federal judge who, within

 8  the last month and a half or something like that, if I

 9  recall correctly, denied a preference motion on the

10  basis of the fact that it was part of what I'll call a

11  coordinated action, maybe it was an MDL or something

12  like that, and on that basis denied the preference

13  motion.  I found that interesting.

14          So it's unlikely something like that will

15  happen in state court.  We have the statute.

16          And I think what you're suggesting, if I

17  understand it correctly, is that with respect to this

18  motion, Cal Fire or some other discovery motion, which

19  is thought to be urgent by an attorney because, for

20  example, they have made a preference motion and it has

21  been granted, the way to handle it is in the first

22  instance to go through leadership, get it coordinated,

23  give that some time to work out, whatever that is, if

24  it's a week, whatever that time period is, it has to be

25  a fairly short fuse.

1          And if that attorney is then frustrated by the

2   reaction that comes from you and your colleagues sitting

3   at that table, then that attorney can go to the judge

4   and say, you know, it's not working out with these

5   people, I've tried to coordinate with them and they

6   think this is the wrong time to bring this motion for

7   whatever reason, they may have good reasons for that

8   position, but I need it now because I have 100 days left

9   to finish and that gets brought to the judge.

10          Is that your view as to how it works?

11          MR. BAGHDADI:  My view is as CMO1

12   contemplates, if any lawyer for any client feels that

13   their interests aren't being adequately represented,

14   they can come to the Court.

15          We are given the position of leadership not

16   because we drew a short straw; because we demonstrated

17   with the Court that we're trying to compete with the

18   interests of all our clients for all the fires versus

19   the interests of one lawyer and his or her own.

20          And even the coordination process of

21   preference -- and I understand that motion was denied on

22   the basis of its substantial interest in the litigation

23   as a whole was defined as the broader litigation as a

24   whole as opposed to that one case.

25          I don't believe 36(a) enables such balancing.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 40
of 80

1    I do believe that the Court's inherent authority would

2    enable that motion to be continued and considered then

3    on its substance and on its merits as part of a broader

4    CMO process for preference to avoid that very issue.

5           I see nothing in the case law, be it Fox or

6    otherwise, where the Court's inherent authority or under

7    1540 or 1541 could say I see what you've got here.  I

8    think you've satisfied the elements; however, under my

9    inherent authority, I'm going to continue your hearing

10   because I don't know what else is coming down the pike,

11   I don't know who's going to be handling these, and if

12   there is more than one preference motion for the same

13   court or county, it would be nice to know that before we

14   start calling other judges to transfer.  That's where I

15   could come down on this.

16          As for the coordination of discovery

17   specifically, Your Honor, the process is working.  Is it

18   working as fast as I would like?  Absolutely not.  I

19   would like to have more, but in terms of the substantial

20   completion of document discovery, which we've been

21   through in PG&E's backup tape system, which I believe is

22   on a Betamax or some other novel technology that's being

23   used, we're going to need to get the cases ready.

24          If there are preference motions, more than

25   one, we want to be aware of them and we want to be able

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 41
415.834.1114
of 80

1  to effectively dedicate our time and resources to them

2  so that it is not haphazard.

3          So the issue that you raised with

4  Mr. Singleton is spot on.  It's exactly why we want a

5  CMO6 heard, so that any preference motion be considered

6  part of that broader analysis and that once preferences

7  are decided, we can accommodate the discovery of those

8  cases.  If we've got three preferences in Sulphur, we've

9  got to activate on Sulphur more so than we are already,

10 because, candidly, our focus right now is Atlas because

11 we want to be ready for trial in September.

12         THE COURT:  It's a long-term problem, but I

13 think about 5 percent of the population in California is

14 75 and older, so 5 percent of the caseload.  You know,

15 you can come up with your own numbers.  There are a lot

16 of cases here, so we're talking about a lot of potential

17 preference motions coming down.

18         And the risk, number one, that's a very

19 serious problem for those particular plaintiffs,

20 extremely serious, but it's also a deep threat to the

21 coordination of these cases and the ability to manage

22 these cases.

23         I appreciate your thoughts.  Thank you, sir.

24         MR. BAGHDADI:  I understand Mr. Pitre had --

25         MR. PITRE:  Just one thought, Your Honor.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 42
of 80

1          This Court is not the first court that's had

2    to deal with this issue.  Other state courts have had to

3    deal with this issue.  We felt that their hands were not

4    tied by CCP 36 in that 1504 gave them the ability to

5    manage a case in a way where the court could consider

6    preference cases along with test cases, so that if a

7    case was tried and it was determined that we needed to

8    grant a preference, we took preference cases, we mixed

9    them in with test cases so when that case got tried, it

10   served as benchmarks that could provide the persuasive

11   authority that this Court recognized when it issued CMO

12   number four.

13          And if I could just take a brief moment, what

14   was done in the Butte case is a motion for preference

15   had been filed; however, what the judge wanted is the

16   judge said, if I'm going to try a preference case, it

17   seems to me that that's the prime opportunity to also

18   bring in test cases, because then a test case or a

19   variety of types of damages of cases could then be used

20   to establish a matrix, which would then be used to

21   resolve then 2000 to 3,000 different plaintiff cases.

22          So the plan that this group had was to go

23   through preference protocols, see what we have.  Now,

24   the difference between Butte and what we have here is we

25   have 17 fires.  So, ideally, in terms of an overall

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 43
                                   of 80

 1    management plan, we're taking a look at all the various

 2    preference cases and which fires that they impact.

 3              We then blend in, to the extent that we don't

 4    have representative cases of some of the claims, test

 5    cases, but it allows -- it allows us to develop an

 6    overall plan that then can be used to resolve all cases.

 7              If all we do is try one case and it's a

 8    preference case, it teaches us nothing.

 9              And the problem that I see, Judge, is -- I

10    want to come back to in the Butte case, the Court

11    continued the hearing on the preference motion because

12    the concern was that we were going to waste time with

13    just preference cases.

14              The other thing that I think is very important

15    about the Butte case is the preference motions, from a

16    timing standpoint, were not brought until after

17    substantial completion of discovery to avoid the issues

18    that Mr. Baghdadi and you, Your Honor, addressed with

19    Mr. Singleton.

20              And let me give you an example.  The Lobo is a

21    tree line case.  Vegetation management is at issue.  If

22    we're looking at this case from the standpoint of all

23    the claims that are asserted in the master complaint, we

24    have to look at a variety of different claims being

25    asserted, including a claim for punitive damages.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 44
of 80

1          Now, the last time we came before the Court,

2   the plaintiffs' committee submitted to the Court an

3   overall plan detailing all the witnesses that they

4   believe would be required in a tree line contact case,

5   and the discovery -- we actually had times for each

6   witness.

7          If we take the Lobo case and we give that a

8   trial of April 29th and you back out, A, a summary

9   judgment motion, which has to be filed 75 days before

10  the trial -- actually, 105 days, 30 days for the hearing

11  and then 75 days back.

12         So let's back out 105 days for the filing of

13  the motion.  If you look at when expert disclosures and

14  all the evidence has to be gathered together and you

15  consider the fact that document production, as is

16  presently constituted, will not be completed until

17  middle of February.

18         If Mr. Singleton chooses to start taking

19  vegetation management depositions of people who made

20  decisions on whether or not the tree that contacted this

21  line was a hazard tree and should have been removed and

22  then trying to determine whether PG&E was negligent or

23  worse, if we don't have all the documents to have

24  digested by then, if we don't have the ability to

25  properly work up that case, then you're going to have

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 45
of 80

1  potentially a decision being made by a judge that sits

2  in Sacramento on a record that is not complete that then

3  will serve as what?

4          No instruction whatsoever because we wouldn't

5  have had the ability to fully develop the evidence so

6  that it could be marshaled to oppose the summary

7  judgment motion.

8          The impacts here are enormous and that's why,

9  although Mr. Singleton may want to have his own

10 discovery, there's nothing to suggest that that

11 discovery and the timing will coincide with all of the

12 other discovery that needs to be done to get a properly

13 developed negligence or, worse, punitive damage case so

14 that if a decision is made, it has some persuasive

15 influence on the rest of us.

16         That's why, Your Honor, in the Butte case we

17 as leadership made sure that before preference motions

18 were filed, appropriate discovery had been done, so as

19 not to prejudice the rights of everybody else.

20         So the concern that is expressed here -- and I

21 want to echo soundly, is that I could see what would

22 happen if a deposition was prematurely noticed and we

23 believe that if all the documents and discovery wasn't

24 developed so we could take an effective deposition, PG&E

25 is going to claim you only get one bite of this apple.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 46
of 80

1  We're not bringing this same person back to be deposed

2  three months from now, just because you haven't

3  completed your work.  It got noticed in the Lobo case,

4  you take your questions, but we're not going to have

5  duplicative discovery and more discovery going on from

6  the same witness.

7          So it causes complete disruption of the

8  orderly process of how we pursue this case.

9          The McGhan case that was cited in the CMC

10  statement had some very important language that I think

11  really is instructive for everybody.  There may be some

12  delay that impacts some cases, but when you have a

13  coordinated proceeding, really, the goal line is what is

14  in the best interest for resolution on behalf of

15  everyone?  We shouldn't sacrifice one case to the

16  detriment of thousands of others that are pending when

17  the instructive value of that case is not going to

18  provide anything that can be useful in an overall

19  process of resolution.

20          We interject conflict, we interject perhaps

21  differing decisions, and we create chaos in an otherwise

22  process that requires an enormous amount of coordination

23  and preparation to do this effectively.

24          THE COURT:  Well, even under your proposed

25  plan, the CMO, we could have a situation in which an

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 47
of 80

1   attorney goes to leadership and says I need to press my
2   preference motion; leadership says, this -- this is not
3   a great time.  It would be good if we did this in five
4   months from now, and the first attorney says, my client
5   is dying, my client is going to be dead in two and a
6   half months or whatever and I need to press this.  I
7   disagree with you, leadership, I'm going to go to the
8   court.
9          Judge, here's the motion, the requirements for
10  36 are met, and the judge thinks that postponing the
11  hearing or continuing the hearing is sort of perhaps a
12  back way around trying to avoid the statutory mandate,
13  and so ends up granting the motion.
14         This problem -- we can't get away from this
15  problem.  There are going to be situations and this --
16  we may have run into the first one now, but there are
17  going to be situations, are there not, in which the
18  needs of this one case to get maybe a PMK depo from PG&E
19  on forest management or something, that has to happen
20  and the way -- one way to solve that problem, which is
21  to say the problem that normally PG&E only has to give
22  up their witness once and can basically tell the rest of
23  the plaintiffs, arguably, this was your shot, is to make
24  it clear that in these sort of unique circumstances,
25  PG&E may have to produce that witness again.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 48 of 80

1          Because we don't want to have a situation in

2    which everybody feels at next week's forest management

3    PMK deposition of PG&E that this is their only chance.

4    We don't want to have a situation in which everybody

5    feels they have to show up.  That's not fair.  It's not

6    fair to anybody else in these cases.  You don't have the

7    documents yet.  You don't have your questions yet for

8    these people.

9          But one attorney has decided that he does have

10   his questions and he does have the data that he needs,

11   so maybe the way to handle it is let him go ahead and

12   have that PMK, and PG&E may need to produce the witness

13   again down the road, to make that clear in writing.

14   Takes care of at least that problem.

15          What I'm suggesting in a broader sphere is

16   that there's actually no good answer to any of this;

17   there's no answer.

18          For example, you talk about summary judgment

19   motions.  I have tried to find an appellate case that

20   considers two conflicting statutory mandates.  The first

21   mandate is the preference that you have 120 days to go.

22   The second is -- and there's some authority to this --

23   that parties have a statutory right to file a summary

24   judgment motion.  For example, there's the case that

25   says something like if you have a newly-entered party

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 49
415.834.1114
of 80

1  and they come in, but the trial date when they come in

2  is so close that they don't have a right to make a

3  summary judgment motion, they don't have the time to

4  make it.  The judge is supposed to continue the trial

5  date in deference to the statutory right to make a

6  summary judgment motion.

7         But we have -- these two statutes block each

8  other.  They're inconsistent with each other.  There

9  isn't going to be time in the Fowler case to make a

10 summary judgment motion.  It's impossible.  The work --

11 you can't get the discovery done in the next week or two

12 in time to prepare the papers so that the summary

13 judgment motion will be heard 30 days before trial and

14 still have the 75- to 80-day notice period for summary

15 judgment motion.

16        It can't happen.  It just can't happen.  So

17 there's a whole bunch of things that kick in once we've

18 a preference motion.  Once it's granted, a whole bunch

19 of rights just get wiped out as a result of this.  This

20 is the imperfection of a trial that goes to trial

21 because of a preference motion.  People don't have the

22 evidence they need, they don't have the discovery, they

23 don't have time to get everything done.

24        Especially in cases like this where there's

25 some document-intensive situations, they don't have time

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 50
of 80

1   to make summary judgment motions, they don't have time

2   to do any of this, so it's an impossible situation, and

3   I don't know how we're going to avoid these issues.

4           I think one way to do it is to give leadership

5   the first crack at trying to coordinate this, to go

6   through leadership.  I want this deposition, I want that

7   deposition, I want to make this motion.  See if there's

8   something that you can do, knowing everything that you

9   know about all the different cases and where you are.

10          And then, if there's no meeting of the minds

11  in terms of how to progress, the Mr. Singletons of the

12  world will perhaps have to be allowed to bring the issue

13  to the Court and sometimes just move forward on a

14  deposition, for example, that otherwise wouldn't have

15  taken place.

16          What do you think about that?

17          MR. PITRE:  Well, if that's the case, I think

18  we've set ourselves up for chaos, Your Honor, to be

19  quite candid.

20          THE COURT:  How does one avoid that?

21          MR. PITRE:  Certainly, Your Honor, you have

22  the power, because under 1504 the Court has the right to

23  manage this as a coordinated proceeding and it

24  understands as the McGhan case stated, is that there are

25  going to be some delays to some people because the

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 51
of 80

1  overall goal is resolution of the entirety.

2           And here's what I want to call the worst case

3  scenario:  There's 17 fires.  Lawyers are emboldened by

4  the fact that I go through a process, leadership says we

5  can't do it, so now what I want to do is I want to have

6  a case tried in all 17 fires and I want to do this in

7  six different counties.

8           Now what we've done, through the guise of a

9  preference motion, is we've completely disintegrated

10  what we all said at the beginning, the first day we came

11  in before this Court and everybody was here and said we

12  all agree the cases should be coordinated because there

13  are common issues that apply across the board.

14           Well, what we would do then is we would invite

15  15, 20 different cases, taking place all within 150 days

16  because I can see what's going to happen, Your Honor, is

17  people are going to be encouraged.  They're all going to

18  find preference cases and say, look it, I don't have to

19  go through this protocol because leadership is never

20  going to agree that my fire is more important because my

21  client has an illness.

22           So now we have a bunch of cases before you or

23  the next judge.  They use this decision as precedent and

24  they all say I want my day in court in Nevada County, in

25  Sonoma County, in Napa County, in Lake County.

SCANLAN
STONE
415.834.1114

1          Now we've created nothing but chaos.  You
2   can't have coordinated proceedings because everybody has
3   a different idea.  You've got the pole cases.  You have
4   line slap cases.  You've got tree line contact cases.
5   Now we've just destroyed a coordinated proceeding.
6          THE COURT:  So you think 1504 sort of trumps
7   section 36?
8          MR. PITRE:  Absolutely.  Absolutely.
9          And there's suggestion of that in the Abelson
10  v. National Union case that was cited, I believe, by
11  Mr. Singleton in his briefs, where, you know, an issue
12  had come up and I know it because it was decided against
13  our firm, where we were trying to use -- there were a
14  number of elderly people who had been the victims of a
15  financial fraud.
16          And what the court wanted to do is take one
17  group of cases and the findings from that case and apply
18  it to hundreds of other cases that were set because
19  there were a number of elderly people, all of which
20  concerns were they weren't going to make it.
21          You know, the trial court said, well, I'm
22  going to say that the findings in trial number one on
23  the test cases are going to apply to all the rest of the
24  cases and I'm going to apply a limited collateral
25  estoppel.  The court of appeal said, no, you can't do

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 53
of 80

1 | that.

2 | So there was an issue that came up and the

3 | issue that came up that I'd ask the Court to take a look

4 | at is whether under 1504, which I believe it can, the

5 | Court can look at the interests of the overall

6 | management of the cases in light of what we see as

7 | CCP 36(a) and decide that the overall interests, whether

8 | the Court wants to take it as does this client have a

9 | substantial interest in the overall proceeding, the one

10 | preference case, and looking at substantial interests in

11 | the context of a coordinated proceeding -- I've seen

12 | some courts go that route.

13 | I've also seen some courts take the route that

14 | 1504 and their inherent ability to manage cases in a

15 | coordinated proceeding trumps that.

16 | So I would just suggest that one of the ways

17 | to avoid the dilemma really is what Mr. Baghdadi said,

18 | which is to have the Court's ruling on the 36 issue for

19 | the Fowler decision continued until we can go through

20 | the process that we have laid out in CMO number six and

21 | then be able to look at what that appears to be in the

22 | context of all people who, similarly, like Ms. Fowler,

23 | have a legitimate right to a preference trial, and then

24 | decide how are these cases going to be managed in the

25 | overall context of giving everybody that same right if

Case: 19-30088    Doc# 3105-4    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 54
of 80

1   that's something that the Court is inclined to do.

2           Because I think, one, it sends a message to

3   everybody that there is a process in a coordinated

4   proceeding that has to be followed and you cannot on

5   your own take it on yourself to devise your own plan;

6   two, it allows everybody who's in the same boat who has

7   the right to a preference motion to be able to have

8   their day in court on an expedited basis, whatever that

9   may be, so there's fairness that's uniform; three, it

10  gives leadership for the plaintiffs and PG&E the ability

11  to sit down and then say, okay, folks, we had a plan

12  without preference.  We need to revise the plan.  We

13  need to figure out a better way to get this stuff done

14  on a better basis and start to understand a revised

15  model because the way it is now, it will be chaos in

16  trying to get depositions organized, what documents get

17  produced first, what documents get produced last, whose

18  deposition takes precedence.

19          You can't do that, Judge.  There's got to be a

20  plan, and the plan to, to me, would be as follows:  You

21  take the preference cases, you find out how many we

22  have -- do we have 30, do we have 50, or do we have a

23  hundred?

24          How many fires are impacted?  If only a subset

25  of those fires are impacted, then let's forget about

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 55
of 80

 1    discovery in the other cases.  Let's focus on the fires

 2    that are at hand and let's devise a plan for getting

 3    those done.

 4              Of those fires, how many are tree line

 5    contact, how many are pole, how many are something else,

 6    what discovery is necessary?

 7              Now we come at this Court or whoever follows

 8    you with a better organized plan on how things can get

 9    done and you decide on trial dates that work; because

10    I'm not sure that this Court or whoever follows you

11    wants to set trials that will all be going at the same

12    time, 150 or 180 days from the filing of the next wave

13    of preference motions.

14              I don't think PG&E is going to go along with

15    that.  Maybe they will, but it gives the Court a better

16    idea and the parties and counsel to put together an

17    effective plan; or else we have a bunch of what I want

18    to call just wild mavericks all going out and doing what

19    they want to do because they say, well, it's my decision

20    on behalf of my client that needs this discovery to go

21    first.

22              And that just can't go on, Your Honor.

23              THE COURT:  Thank you.

24              MR. PITRE:  Thank you, Your Honor.

25              THE COURT:  Let me just make sure I've heard

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 56
of 80

1   from other people first.

2            Is there anybody else at plaintiffs' table who

3   would like to speak?

4            Would PG&E like to be heard?

5            MS. HERNANDEZ:  Your Honor, I would just echo

6   what Mr. Pitre and Mr. Baghdadi said and the Court's

7   concerns if you let the -- as you said -- what you said

8   multiple times, preference motions are complicated in a

9   coordinated proceeding, and there might be times that

10  you actually have to move forward because of the

11  statutory right with some trials, but that is quite

12  different from having a subset of plaintiffs just

13  separate themselves from the coordinated proceedings.

14           That just leads to inefficiency.  It leads to

15  the coordinated proceedings just being debunked.  But

16  most importantly, actually, the piecemeal discovery

17  requests to PG&E is just prejudicial.

18           The process that you actually put in place in

19  CMO1 where all coordinated discovery was going through

20  leadership has actually been working.  Mr. Singleton got

21  up here and said that he needs to actually be the one

22  who directly requests discovery from PG&E because

23  otherwise his client will be prejudiced.  That's not

24  true.

25           As of today the leadership has served us with

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 57
of 80

1   100 document requests specifically to Lobo, 30

2   interrogatories, and 40 RFAs.

3            And if Ms. Fowler continues to have

4   Lobo-specific requests, they can still go through

5   leadership.  Like you said earlier today, to the extent

6   that Ms. Fowler feels that there's some critical

7   discovery that's not happening through leadership, that

8   could be raised directly with the Court to no prejudice

9   to her.

10           So I don't think that Mr. Singleton has made a

11  showing that he's being disadvantaged in any way by not

12  dealing directly on discovery with us.

13           THE COURT:  Thank you very much.

14           Yes, sir.

15           MR. SINGLETON:  Thank you, Your Honor.

16           Mr. Petri talked about things that are

17  suggested in the McGhan case.  We're very fortunate

18  because this particular statute, 36(a), is not one that

19  we have to guess at what the legislature intended or at

20  how the court of appeal is going to interpret it in

21  complex cases.

22           Fortunately, there are several cases that

23  directly refute the suggestions made by plaintiffs'

24  counsel that the Court has discretion to delay or to do

25  anything else.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 58
of 80

1          Let me read just a couple of things that the

2   court of appeal had said.  This is from the Koch-Ash,

3   case.  Madam Reporter, that would be K-O-C-H, dash,

4   A-S-H.

5          The appellate court issued the writ holding

6   section 36(a), quote, is mandatory and absolute in its

7   application and does not allow a trial court to exercise

8   the inherent or statutory general administrative

9   authority it would otherwise have, close quote.

10         That was a decision that was made in a complex

11  case, Koch-Ash.

12         Now, the Koch-Ash court goes on to say, quote,

13  if trial courts or, in this case, plaintiff counsel

14  believe that certain exceptions to section 36 are

15  necessary in complex consolidated actions, their remedy

16  lies in persuading the legislature to amend the absolute

17  language of section 36, close quote.  That is at page

18  699.  The preceding quote was at page 698 in Koch-Ash.

19         This is not just Koch-Ash.  For example,

20  Swaithes, S-W-A-I-T-H-E-S, says, quote, mere

21  inconvenience to the court or to other litigants is

22  irrelevant.  The trial court has no power to balance the

23  differing interests of opposing litigants in applying

24  the provision, close quote.

25         The provision in that case being section 36.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 59
of 80

1          Now, Mr. Petri correctly points out in the

2    Abelson case, which is A-B-E-L-S-O-N, which is cited in

3    our papers on page 4, line 21, the court took advantage

4    of the fact that a preference case had been filed and

5    said, in addition to that, we're going to go ahead and

6    put in other cases so that there's more than one case

7    being tried.

8          We certainly have no objection if the Court

9    wants other cases from the Lobo fire to be tried along

10   with Ms. Fowler's.  That would be what Abelson says, but

11   Abelson certainly does not stand for the provision that

12   the court may say, I'm going to delay a preference trial

13   until such time as other cases are ready.

14         Respectfully, I was also in the Butte case.

15   I'm also a member of leadership in Butte.  And that is

16   not what happened in Butte.  What happened in Butte is

17   people filed their preference motions, court granted

18   them, and there were two different dates set.  One was

19   for preference cases and the other was for a bellwether

20   case that would proceed -- I believe it was 30 days, it

21   might have been six weeks -- after the preference cases

22   were done.  That was how the Butte case was handled.

23         I want to very briefly just touch on something

24   the Court said because the Court said something that

25   struck a chord with me when it said if an attorney has

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 60
of 80

1    tried to go through leadership and has been unsuccessful

2    for whatever reason -- it could be leadership's fault,

3    could be my fault -- for whatever reason is

4    unsuccessful, the Court can -- I'm sorry, the attorney

5    can then come to the Court and say, I need relief.

6              That's where I am now.  We have been asking.

7    We have been pushing on Lobo for a long time.  We've

8    been trying to get the reports.  We have been the ones

9    pushing this for seven months and we've been successful

10   so all we're asking is we think seven months of meeting

11   and confer is long enough.  We would like to be able to

12   file a motion to compel so that we can get the Cal Fire

13   report and an inspection of evidence in Lobos so that

14   our experts can be ready so that they can get meaningful

15   depositions, as PG&E is certainly entitled to.

16             Thank you very much, Your Honor.

17             THE COURT:  Thank you, sir.

18             MR. PITRE:  I will be 30 seconds, Your Honor.

19             The choice of language when we're looking at

20   this issue of preference motions and the Court's ability

21   to manage is very important, and I know that this Court

22   is a student of looking at cases.

23             The word complex case, consolidated case, and

24   coordinated cases have a very important meaning.  The

25   cases that were just cited to you occurred in the

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 61
of 80

1  context of a complex designated case, which His Honor

2  sits in complex, as well as a consolidated case.  No

3  case has suggested in a coordinated proceeding where one

4  has thousands of individuals that are impacted that

5  CCP 36 trumps, and that's the distinction.

6          That's the only thing I wanted to say,

7  Your Honor.

8          THE COURT:  Thank you, sir.

9          Well, let me ask one question about -- let's

10 go directly to the proposed orders.  I don't know if you

11 have originals to leave off here to be signed.  Somebody

12 does.

13         MR. SKIKOS:  (Indicating.)

14         THE COURT:  Thank you, Mr. Skikos.

15         But I just have, really, one question on

16 number five.

17         First of all, number five, you suggested that

18 I sign off on your stipulation as opposed to -- well,

19 you've suggested I sign off on a stipulation and then

20 also sign the order itself.  I think you just want me to

21 sign the order itself, number five.

22         MR. BAGHDADI:  Yes, Your Honor.

23         THE COURT:  I don't have any particular

24 questions on five.

25         One question, which was sparked by a comment

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 62
of 80

1  in Mr. Singleton's papers, is to look at CMO6, paragraph

2  four.

3          And Mr. Singleton's comment on paragraph four

4  was he's not sure what kind of a questionnaire this is

5  and he's not sure if you're going to be asking him to

6  present more information than otherwise would be

7  normally presented in the context of a preference

8  motion.  In other words, how much -- in part, how much

9  of a burden is this, how relevant is this?

10          What sort of questionnaire is this that's

11  being referred to in paragraph four?

12          MR. SKIKOS:  I'll deal with that.

13          First, with respect to the questionnaire

14  itself, we had a preference committee back in August.

15  Mr. Terry Singleton was on it.

16          We presented the original questionnaire back

17  on August 14th.  The questionnaire that is proposed is

18  mirrored off of 36, and it was sent to all counsel,

19  including all Singleton attorneys, who receive all

20  counsel emails, on October 22nd.  On October 29th again,

21  so everybody has seen it, and I have the emails.

22          However, the questionnaire itself, again, is

23  just a mirror of 36.  It is not substantively different

24  other than it hits a lot of the topics, including what

25  fires are involved, et cetera.

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 63
of 80

1          I have a lot of other things to say, but that

2     answers your question.

3          THE COURT:  What else did you want to say?

4          MR. SKIKOS:  Well, I think, first, it's

5     regrettable that there's a potential change in judges,

6     because we can build on what we have built on in other

7     cases and in this case.

8          And in this case we have built a series of

9     case management orders and a process that has been

10    successful in 20-something other JCCPs, which is the

11    plaintiff lawyers do things by collaboration and by

12    consent.

13         We spent four months -- four months working

14    together with 50 law firms, trying to put together a

15    preference plan that can be protected from arguments

16    from the defense.

17         I am very concerned that there is more going

18    on here than simply one preference motion for one

19    plaintiff.  Every -- in one week, I had 30 preference

20    cases sent to me under the criteria that was presented

21    in the preference motion on the Fowler case.

22         And Your Honor and I dealt with this in

23    Reglan, where we had a mortality rate of 26 percent in a

24    very short period of time.

25         In Gadolinium, which was a predecessor to you,

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 64
of 80

1  but you had one of the trial cases, the gadolinium

2  mortality rate was unbelievable.  It was a hundred

3  percent.

4        We as a plaintiff bar had to work together to

5  deal with a horrible situation, which is a sick and

6  dying population, a need to complete liability

7  discovery -- and in this case a need to complete

8  liability discovery across fires -- a need to make sure

9  that the litigation is successful.

10        And what's happening here is a little

11  nerve-racking.  When PG&E puts in its brief -- they

12  didn't hide it.  They put it in their brief.  They said

13  the Singleton group has insisted on pursuing this path

14  of inefficiency while offering to drop it entirely,

15  including all preference motions, if PG&E will agree to

16  mediate these plaintiff claims separate from everybody

17  else's claims.

18        Whether that is true or false, a litigation

19  plan has to be based on the collaboration of all the

20  lawyers.  It has to be based on not a mediation plan for

21  your own clients, especially in a case like this, but a

22  litigation plan that is ultimately going to be

23  successful for all plaintiffs.

24        Now, at the very start of this litigation -- I

25  see Mr. Terry Singleton here.  At the very start of this

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 65
of 80

1  litigation, I reached out to Mr. Terry Singleton and

2  Mr. Tom Tosdale and started setting up sporadic calls to

3  work with each other, to collaborate with each other, to

4  come up with a game plan.

5          I am concerned and I'll say this on the record

6  that the plan that has been put in place benefits PG&E,

7  and I want to make sure that nothing that happens here

8  prejudices the rights of the 3,000 people, my hometown,

9  other leaders' hometowns, to the detriment to all

10  plaintiffs.

11          And the fact that they put in the brief that

12  this litigation plan is conditioned upon some mediation

13  plan, well, here they -- we have spent the entire

14  hearing, two hours, dealing with plaintiff lawyers.

15  Why?  Why is this one case and other cases similarly

16  situated -- when we have one in our own law firm in

17  which the plaintiff was dying of cancer, she fled to our

18  house and lived with us until she died.

19          Every single plaintiff, okay, if they have

20  people who are sick and dying, PG&E can settle those

21  individual cases, but don't make a litigation plan that

22  hurts the entire litigation or potentially hurts the

23  entire litigation based upon a mediation decision.

24          So I say that only because it seems odd that

25  in 20-something JCCPs, this group of lawyers, Mr. Petri,

SCANLAN
STONE
Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 66
of 80
415.834.1114

1   Mr. Robinson, Ms. Cabraser, all of these lawyers who

2   have run all these JCCPs, have done this collaboratively

3   and without conflict over CCP 36 because we understand

4   the importance of that statute and preserving that

5   statute against the DRI and against the Wall Street

6   interests, who want to get rid of it, because that's

7   what's really going so, we have to work together and

8   collaboratively.

9           That's all we're asking of Mr. Singleton.

10  That's all we are asking of his group, whatever is left

11  of it.  We are asking everybody to work collaboratively

12  to make sure that the plaintiffs' interests in this

13  state are preserved.

14          And we can do that but we have to do that as a

15  team, so that's my point.

16          THE COURT:  Thank you, sir.

17          MR. SINGLETON:  Your Honor, if I may --

18          THE COURT:  Very briefly.  This will be the

19  last -- we're going to conclude our conference --

20          MR. SINGLETON:  Understood.  I wasn't going to

21  address it, but since Mr. Skikos brought it up, I do

22  want to say that is categorically false.

23          What happened -- and I wasn't going to say

24  anything, but since PG&E has put it in the brief, what

25  happened was this:  I suggested that we attempt to

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 67
of 80

1  mediate Ms. Fowler's case as opposed to filing the

2  motion.  PG&E decided they didn't want to do that.

3  That's absolutely fine.  That's their right.

4          But the assertion that we agreed not to file

5  any preference motions, that we agreed to drop

6  everything in exchange for a mediation is simply false.

7  I don't know where it comes from.

8          THE COURT:  Thank you.

9          I'm going to ask whoever has the original

10 copies of CMO5 and six to leave them here before you

11 leave.

12         My plan now is to go off the record and pick a

13 date for the next CMC, but before I do that, is there

14 anything else anybody wants to raise?

15                  (No response.)

16         THE COURT:  Off the record.

17           (Discussion off the record.)

18          (Recess taken at 4:04 p.m.)

19         THE COURT:  The next CMC has already been set

20 for January 2019 and the issues are submitted.

21         Thank you very much.

22 (Whereupon, proceedings adjourned at 4:04 p.m.

23                        )

24

25

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 68
of 80
415.834.114

```
 1   State of California              )
                                      )
 2   County of San Francisco          )

 3

 4

 5        I, Mary Ann Scanlan, California Certified Shorthand

 6   Reporter No. 8875, do hereby certify:

 7        That I was present at the time of the above

 8   proceedings;

 9        That I took down in machine shorthand notes all

10   proceedings had and testimony given;

11        That I thereafter transcribed said shorthand notes

12   with the aid of a computer;

13        That the above and foregoing is a full, true, and

14   correct transcription of said shorthand notes, and a

15   full, true and correct transcript of all proceedings had

16   and testimony taken;

17        That I am not a party to the action or related to a

18   party or counsel;

19        That I have no financial or other interest in the

20   outcome of the action.

21

22   Dated:  January 9, 2019

23

24        _____
              MARY ANN SCANLAN CSR No. 8875
25
```

Case: 19-30088   Doc# 3105-4   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 69
of 80

**-**

**---ooo---** 13:3

**1**

**100** 39:8 57:1
**105** 44:10,12
**120** 15:16 21:1,5 48:21
**14th** 62:17
**15** 25:18 51:15
**150** 51:15 55:12
**1504** 42:4 50:22 52:6 53:4,14
**1540** 40:7
**1541** 40:7
**17** 42:25 51:3,6
**180** 55:12

**2**

**20** 51:15
**20-something** 63:10 65:25
**2000** 42:21
**2018** 13:2
**2019** 67:20
**21** 59:3
**22nd** 62:20
**26** 63:23
**27** 34:15
**27th** 23:15
**28** 13:2 34:15
**29th** 15:16 16:24 20:13 44:8 62:20
**2:07** 13:2
**2:18** 22:2

**3**

**3,000** 42:21 65:8
**30** 34:1 44:10 49:13 54:22 57:1 59:20 60:18 63:19
**36** 42:4 47:10 52:7 53:18 58:14,17,25 61:5 62:18,23 66:3
**36(a)** 33:9,18 34:19 37:18 39:25 53:7 57:18 58:6
**3:00** 22:4

**4**

**4** 59:3
**40** 57:2
**45** 13:15 21:18
**4:04** 67:18,22

**5**

**5** 41:13,14
**50** 32:23 54:22 63:14

**6**

**698** 58:18
**699** 58:18

**7**

**75** 41:14 44:9,11
**75-** 49:14

**8**

**80-day** 49:14

**A**

**A-B-E-L-S-O-N** 59:2
**A-S-H** 58:4

**Abelson** 52:9 59:2,10, 11
**ability** 25:5 27:15 29:1 41:21 42:4 44:24 45:5 53:14 54:10 60:20
**absence** 35:17
**absolute** 58:6,16
**absolutely** 26:16,21 40:18 52:8 67:3
**access** 31:16
**accommodate** 32:1 41:7
**accord** 36:21
**act** 25:12
**action** 38:11
**actions** 58:15
**activate** 41:9
**actual** 20:12 26:9
**addition** 34:9 59:5
**address** 66:21
**addressed** 15:9 34:21 43:18
**adequately** 39:13
**adjacent** 16:13
**adjourned** 67:22
**Adler** 26:10
**administrative** 58:8
**admission** 29:21
**Adobe** 37:2
**advance** 21:16 22:25 23:5,7
**advantage** 59:3
**affected** 26:7
**afternoon** 13:4,7 16:22 21:23 22:5 32:9
**AG's** 37:7
**agencies** 16:13
**agree** 16:24 17:2 51:12, 20 64:15
**agreed** 32:24 67:4,5

**agreement** 37:1,22
**ahead** 14:17 36:15 48:11 59:5
**alerted** 27:12
**alleged** 18:3
**allowed** 26:21 29:14 50:12
**alluded** 24:11
**amend** 58:16
**amendable** 20:6
**amount** 30:19 46:22
**analysis** 41:6
**answers** 63:2
**apologize** 14:16 37:23
**appeal** 52:25 57:20 58:2
**appears** 53:21
**appellate** 48:19 58:5
**apple** 45:25
**applecarts** 27:13
**application** 58:7
**apply** 31:10 34:6 51:13 52:17,23,24
**applying** 58:23
**approach** 37:5
**April** 15:16 16:24 20:13 44:8
**area** 27:5
**arguably** 47:23
**arguments** 63:15
**articulate** 28:11
**assert** 31:8,11
**asserted** 43:23,25
**assertion** 67:4
**assigning** 20:25
**assume** 17:20
**Atlas** 18:3 22:15 34:1 37:2 41:10
**attempt** 66:25

SCANLAN STONE

**attorney** 23:1 34:14 36:17,23 37:17 38:19 39:1,3 47:1,4 48:9 59:25 60:4

**attorneys** 22:11 23:10 62:19

**August** 32:15 62:14,17

**authority** 40:1,6,9 42:11 48:22 58:9

**avoid** 34:5 40:4 43:17 47:12 50:3,20 53:17

**avoiding** 32:18

**aware** 16:11 36:20 40:25

**B**

**back** 17:9 21:23 23:3 29:12 33:22 43:10 44:8, 11,12 46:1 47:12 62:14, 16

**backup** 40:21

**Baghdadi** 32:6,9,10 35:9 36:2,5,7,17 37:25 39:11 41:24 43:18 53:17 56:6 61:22

**balance** 58:22

**balancing** 39:25

**ball** 23:7

**bar** 64:4

**based** 64:19,20 65:23

**basically** 18:20 30:14 47:22

**basis** 18:17 35:4 38:10, 12 39:22 54:8,14

**beginning** 51:10

**behalf** 24:16 30:1 46:14 55:20

**believes** 35:25

**bellwether** 33:5 59:19

**benchmarks** 42:10

**benefit** 16:17

**benefits** 65:6

**Betamax** 40:22

**bit** 21:13 23:3 25:11

**bite** 45:25

**blend** 43:3

**block** 49:7

**board** 51:13

**boat** 54:6

**briefed** 18:12,13

**briefly** 32:7 59:23 66:18

**briefs** 52:11

**bring** 34:16 38:4 39:6 42:18 50:12

**bringing** 46:1

**broad** 30:3

**broader** 28:7 34:9 35:2, 17 39:23 40:3 41:6 48:15

**brought** 39:9 43:16 66:21

**build** 63:6

**built** 63:6,8

**bunch** 49:17,18 51:22 55:17

**burden** 62:9

**Butte** 16:6 42:14,24 43:10,15 45:16 59:14, 15,16,22

**C**

**Cabraser** 66:1

**Cal** 16:12 28:22 30:5 31:1,19 36:14 38:18 60:12

**calendar** 33:16

**California** 41:13

**call** 19:3 21:7 27:8,14 38:10 51:2 55:18

**calling** 40:14

**calls** 65:2

**cancer** 65:17

**candid** 50:19

**candidly** 41:10

**capable** 16:6

**carcinosarcoma** 26:20

**care** 48:14

**case** 14:23 15:23 16:2,7 17:1 18:4 22:4 23:20, 21,25 24:4,22,24,25 25:8,13 26:17 27:6 28:16 29:11,16,18 31:2, 9 32:2,23 33:4,15 34:10 36:24 37:10,11,18 38:3 39:24 40:5 42:5,7,9,14, 16,18 43:7,8,10,15,21, 22 44:4,7,25 45:13,16 46:3,8,9,15,17 47:18 48:19,24 49:9 50:17,24 51:2,6 52:10,17 53:10 57:17 58:3,11,13,25 59:2,4,6,14,20,22 60:23 61:1,2,3 63:7,8,9,21 64:7,21 65:15 67:1

**caseload** 41:14

**cases** 15:24 17:7 19:15 20:15 23:25 25:17 28:17 35:16 37:18 40:23 41:8,16,21,22 42:6,8,9,18,19,21 43:2, 4,5,6,13 46:12 48:6 49:24 50:9 51:12,15,18, 22 52:3,4,17,18,23,24 53:6,14,24 54:21 55:1 57:21,22 59:6,9,13,19, 21 60:22,24,25 63:7,20 64:1 65:15,21

**categorically** 66:22

**CCP** 42:4 53:7 61:5 66:3

**cetera** 62:25

**chance** 16:14 48:3

**change** 37:7 63:5

**chaos** 28:1 32:13 46:21 50:18 52:1 54:15

**choice** 15:21 60:19

**chooses** 44:18

**chord** 59:25

**circulated** 32:16

**circumstances** 26:14 47:24

**cited** 46:9 52:10 59:2 60:25

**claim** 43:25 45:25

**claims** 43:4,23,24 64:16,17

**clear** 31:10 47:24 48:13

**client** 16:3 18:25 29:13 33:9 39:12 47:4,5 51:21 53:8 55:20 56:23

**clients** 33:7 39:18 64:21

**close** 19:2 49:2 58:9, 17,24

**closer** 18:8

**clue** 18:14

**CMC** 13:11,12,20 17:6 20:20 21:13,18 22:18, 22 23:2,12 46:9 67:13, 19

**CMO** 13:24 14:10 35:22 40:4 42:11 46:25 53:20

**CMO1** 39:11 56:19

**CMO5** 24:7 67:10

**CMO6** 24:7 41:5 62:1

**coincide** 45:11

**collaborate** 65:3

**collaboration** 63:11 64:19

**collaboratively** 66:2, 8,11

**collateral** 52:24

**colleagues** 39:2

**commendable** 29:7

**comment** 19:8 61:25 62:3

**comments** 24:6,7,9

**committee** 32:16 44:2 62:14

**common** 51:13

**compel** 29:2 30:9 31:6, 19 37:6 60:12

**compete** 39:17

**complaint** 43:23

**complete** 45:2 46:7 64:6,7

**completed** 13:15 44:16 46:3

**completely** 28:3 29:15, 17 51:9

**completion** 40:20 43:17

**complex** 16:7 57:21 58:10,15 60:23 61:1,2

**complicated** 56:8

**conceivable** 25:21

**concern** 17:15 26:5,22 28:9,19 29:8 32:1 43:12 45:20

**concerned** 63:17 65:5

**concerns** 14:4 23:1 52:20 56:7

**conclude** 66:19

**conditioned** 65:12

**conduct** 29:25 34:25

**confer** 26:16 29:6 33:3, 24 60:11

**conference** 14:23 22:4 66:19

**conferring** 31:14

**conflict** 46:20 66:3

**conflicting** 48:20

**confusing** 22:19 23:16

**confusion** 32:12

**consent** 29:4 63:12

**consequence** 21:9

**considerations** 34:20

**considered** 34:9 40:2 41:5

**considers** 48:20

**consolidated** 58:15 60:23 61:2

**constituent** 33:7

**constituents** 33:22

**constituted** 44:16

**constraints** 34:18

**contact** 18:4 20:13 44:4 52:4 55:5

**contacted** 44:20

**contemplates** 39:12

**contend** 35:5

**contest** 23:12

**contested** 23:9

**context** 23:22 24:4 53:11,22,25 61:1 62:7

**continue** 35:19 40:9 49:4

**continued** 40:2 43:11 53:19

**continues** 57:3

**continuing** 47:11

**contractors** 18:5 19:12,17 27:23

**conundrums** 32:18

**convenience** 17:11, 12,15 20:7

**convenient** 16:3,10 17:5

**cooperation** 37:7

**coordinate** 25:1,6,9 26:14 32:13 34:22 39:5 50:5

**coordinated** 17:7 24:20 25:15,23 28:1,17 32:24 35:3 38:11,22 46:13 50:23 51:12 52:2, 5 53:11,15 54:3 56:9, 13,15,19 60:24 61:3

**coordinating** 36:18

**coordination** 16:5 22:24 25:22 32:22 34:5, 13 35:18,20 37:14 39:20 40:16 41:21

46:22

**copies** 67:10

**corporate** 27:18 35:11, 13

**Correct** 36:2,7

**correctly** 38:9,17 59:1

**counsel** 24:25 28:15 35:25 55:16 57:24 58:13 62:18,20

**counterproductive** 22:20

**counties** 16:13 31:15 51:7

**counting** 21:25

**county** 15:11,19 18:25 19:1,18 35:5 36:23 40:13 51:24,25

**couple** 14:13 15:9 22:8 23:20 25:10 27:15 58:1

**court** 13:4,10,12,20,25 14:2,5,8,17,18,21,22,25 15:3,6,17,22 16:3,11,20 17:9 18:1,8,11,14 19:5, 21,24 20:9 21:7 22:5,23 24:19 26:2,4,11,12,19, 24 28:10 30:2,7,10,12 31:5,11 32:4,8,10,11, 20,21 33:11,13 34:10, 11 35:6,8,21 36:3,6,8, 19 37:14,24 38:6,15 39:14,17 40:13 41:12 42:1,5,11 43:10 44:1,2 46:24 47:8 50:13,20,22 51:11,24 52:6,16,21,25 53:3,5,8 54:1,8 55:7,10, 15,23,25 57:8,13,20,24 58:2,5,7,12,21,22 59:3, 8,12,17,24 60:4,5,17,21 61:8,14,23 63:3 66:16, 18 67:8,16,19

**Court's** 16:8 29:23 40:1,6 53:18 56:6 60:20

**courts** 42:2 53:12,13 58:13

**crack** 50:5

**create** 37:23,25 46:21

**created** 52:1

**creating** 34:14

**criminal** 36:24

**criteria** 63:20

**critical** 31:3 57:6

---

**D**

**damage** 45:13

**damages** 19:7 42:19 43:25

**Damaris** 16:23

**dash** 58:3

**data** 48:10

**date** 15:11,17 16:25 20:12 49:1,5 67:13

**dates** 20:15 55:9 59:18

**day** 14:13 21:7 32:20 51:10,24 54:8

**days** 15:16 21:1,5 23:5, 7 25:10 39:8 44:9,10, 11,12 48:21 49:13 51:15 55:12 59:20

**dead** 47:5

**deadlines** 25:14

**deal** 42:2,3 62:12 64:5

**dealing** 37:4 57:12 65:14

**deals** 13:23

**dealt** 63:22

**debunked** 56:15

**December** 13:2 23:15

**decide** 18:17,18,24 53:7,24 55:9

**decided** 19:25 32:21 41:7 48:9 52:12 67:2

**decides** 18:18 38:1

**decision** 31:12 34:8 45:1,14 51:23 53:19 55:19 58:10 65:23

**decisions** 35:5,9 44:20 46:21

**dedicate** 41:1

SCANLAN STONE

**deep** 41:20

**defendants** 20:25

**defense** 63:16

**deference** 49:5

**defined** 39:23

**delay** 27:15 29:22 46:12 57:24 59:12

**delays** 50:25

**deliver** 38:2

**demands** 24:23 27:2 30:16

**demonstrated** 39:16

**denial** 26:18

**denied** 38:9,12 39:21

**depo** 47:18

**deposed** 28:20 46:1

**deposition** 25:3 27:3, 10,16 45:22,24 48:3 50:6,7,14 54:18

**depositions** 29:20 30:19,22 31:23 44:19 54:16 60:15

**designated** 61:1

**destroyed** 52:5

**detail** 21:13

**detailed** 20:19

**detailing** 44:3

**determine** 44:22

**determined** 42:7

**detriment** 46:16 65:9

**develop** 43:5 45:5

**developed** 45:13,24

**devise** 20:10 54:5 55:2

**died** 65:18

**difference** 42:24

**differing** 46:21 58:23

**difficult** 23:19 35:18 38:6

**digested** 44:24

**dilemma** 53:17

**directly** 25:5 26:22 56:22 57:8,12,23 61:10

**disadvantaged** 57:11

**disagree** 47:7

**disclosures** 44:13

**discovery** 20:18 21:15 24:16,21,23 26:15,22, 23 27:2 28:6,15 29:14 30:1,13,15,16,22 34:6, 13,22 35:1,13 38:18 40:16,20 41:7 43:17 44:5 45:10,11,12,18,23 46:5 49:11,22 55:1,6,20 56:16,19,22 57:7,12 64:7,8

**discrete** 26:8 37:6

**discretion** 57:24

**discuss** 23:23 24:18

**discussed** 17:6 22:13 23:2

**discussion** 20:19 22:11 23:8 67:17

**disintegrated** 51:9

**disputes** 25:25 34:17

**disruption** 46:7

**distinction** 61:5

**district** 36:23

**document** 23:15 30:16 31:4 40:20 44:15 57:1

**document-intensive** 49:25

**documents** 23:14,17 44:23 45:23 48:7 54:16, 17

**door** 13:16 21:21

**dozen** 37:4

**drew** 36:20 39:16

**DRI** 66:5

**drive** 19:17

**drop** 64:14 67:5

**due** 13:17 23:5 26:18 34:18

**dilemma** 53:17

**duplicative** 26:22,24 46:5

**dying** 26:20 32:3 47:5 64:6 65:17,20

---

**E**

**earlier** 13:14 23:4 57:5

**eat** 30:19

**echo** 45:21 56:5

**effective** 45:24 55:17

**effectively** 41:1 46:23

**efficient** 17:4 32:17

**elderly** 52:14,19

**element** 29:22

**elements** 40:8

**elicit** 32:17

**else's** 64:17

**emails** 62:20,21

**emboldened** 51:3

**enable** 40:2

**enables** 39:25

**enabling** 35:16

**encountered** 34:3

**encourage** 25:12

**encouraged** 51:17

**end** 35:24

**ends** 47:13

**enormous** 45:8 46:22

**enterprise** 35:11

**entire** 32:11 65:13,22, 23

**entirety** 51:1

**entitled** 60:15

**establish** 42:20

**established** 32:15

**estoppel** 52:25

**event** 26:6

**Eventually** 35:12

**evidence** 28:23 35:14 37:2 44:14 45:5 49:22 60:13

**exaggerating** 27:20

**exceptions** 58:14

**exchange** 32:17 33:2 67:6

**exercise** 58:7

**exhibit** 22:18

**expedited** 35:15 54:8

**expert** 44:13

**experts** 28:19 60:14

**expressed** 45:20

**extensive** 21:2

**extent** 20:4 22:18 43:3 57:5

**extremely** 41:20

---

**F**

**faced** 37:8

**fact** 23:13 38:10 44:15 51:4 59:4 65:11

**factor** 17:12

**fair** 21:24 48:5,6

**fairly** 38:25

**fairness** 54:9

**false** 64:18 66:22 67:6

**families** 21:24

**fashion** 33:2,10

**fast** 40:18

**fault** 60:2,3

**fear** 34:23 35:16

**feasible** 21:2

**February** 44:17

**federal** 38:7

**feels** 39:12 48:2,5 57:6

**felt** 42:3

figure 30:23 54:13

file 14:2 25:18 29:1,2 30:6,8 31:19 34:15 35:25 36:1,19 37:20 38:2 48:23 60:12 67:4

filed 26:6 29:2,21 33:15 42:15 44:9 45:18 59:4, 17

filing 29:19 34:2 36:4 44:12 55:12 67:1

financial 52:15

find 19:20,22 20:14 48:19 51:18 54:21

findings 52:17,22

fine 23:13 31:11 67:3

finish 39:9

finished 14:12

fire 16:6,12 22:12,15 26:8 28:7,22 29:10 30:5 31:1,19 35:4,10 38:18 51:20 59:9 60:12

fires 25:20 26:7 33:1 35:2 37:3,4 39:18 42:25 43:2 51:3,6 54:24,25 55:1,4 62:25 64:8

firm 22:17,21,25 52:13 65:16

firms 32:23 33:7 63:14

fits 20:16

fled 65:17

focus 36:13 41:10 55:1

focused 34:17

folks 17:19 18:6 54:11

follow 32:22 34:24

forest 27:21 47:19 48:2

foretaste 36:11

forget 54:25

formal 14:3

fortunate 57:17

Fortunately 18:15 57:22

forward 24:18 50:13

56:10

found 38:13

Fowler 24:16 26:19 32:20 49:9 53:19,22 57:3,6 63:21

Fowler's 28:15 59:10 67:1

Fox 26:10 40:5

Francisco 17:2,8,20,25 18:9,15,19 19:17 35:3, 11

Frank 13:7

fraud 52:15

Friday 13:2 21:23

front 15:21 17:3 18:17

frustrated 39:1

fully 45:5

fundamental 26:18

fuse 38:25

---

## G

gadolinium 63:25 64:1

game 65:4

gathered 44:14

gave 42:4

gears 22:14

general 37:17 58:8

general's 36:18

give 22:8 23:23 38:23 43:20 44:7 47:21 50:4

giving 53:25

goal 46:13 51:1

good 13:4,7 14:24 15:6 16:22 22:5 23:14,16 32:9 39:7 47:3 48:16

governmental 31:9

grant 15:8 28:14 34:8 42:8

granted 29:10 38:21 49:18 59:17

granting 47:13

great 47:3

grossly 27:20

group 26:10 42:22 52:17 64:13 65:25 66:10

groups 26:9

guess 20:19 57:19

guise 51:8

---

## H

half 27:7 38:8 47:6

hand 27:17 55:2

handle 38:21 48:11

handled 20:18 59:22

handling 16:7 19:15 40:11

hands 42:3

haphazard 41:2

happen 13:14 17:1,8 21:12 28:21 31:16 38:15 45:22 47:19 49:16 51:16

happened 13:17 33:12 35:4 59:16 66:23,25

happening 57:7 64:10

haste 31:22

hazard 44:21

health 16:4

healthy 23:13

hear 14:1 15:10

heard 32:5,6 33:16 41:5 49:13 55:25 56:4

hearing 40:9 43:11 44:10 47:11 65:14

hearings 14:12

helpful 14:25

helps 18:18,24

Hernandez 16:22,23 17:24 18:2,10,13 20:4

56:5

hide 64:12

hired 19:19 29:13

hiring 27:22

hits 62:24

hold 24:8

holding 58:5

hometown 65:8

hometowns 65:9

Honor 13:7,9,19,22,24 14:7,15 15:2,4,20,21,25 16:22 18:10 20:4,5 24:13 26:3 28:4,14 32:6 35:1 40:17 41:25 43:18 45:16 50:18,21 51:16 55:22,24 56:5 57:15 60:16,18 61:1,7,22 63:22 66:17

horrible 64:5

hours 19:18 27:15 65:14

house 65:18

hundred 54:23 64:2

hundreds 52:18

hurts 65:22

hypothesize 25:2

---

## I

idea 20:25 52:3 55:16

ideally 42:25

ideas 23:17

illness 51:21

imagine 27:1,17 28:21

immediately 31:17

impact 43:2

impacted 54:24,25 61:4

impacts 45:8 46:12

imperfect 21:4

imperfection 49:20

SCANLAN STONE

importance 66:4

important 17:12,13 43:14 46:10 51:20 60:21,24

importantly 56:16

imposed 34:18

impossible 20:23,24, 25 23:18 26:12,13 29:23 35:19 49:10 50:2

impression 14:2

inclined 54:1

including 43:25 62:19, 24 64:15

inconsistent 49:8

inconvenience 58:21

Indicating 61:13

individual 65:21

individuals 19:13 61:4

inefficiency 56:14 64:14

influence 45:15

information 32:17,25 33:2 62:6

inherent 40:1,6,9 53:14 58:8

inheriting 37:15

inject 27:14 29:21

insisted 64:13

inspect 28:23

inspection 31:20 60:13

instance 38:22

instruction 45:4

instructive 46:11,17

intend 19:3

intended 57:19

interest 39:22 46:14 53:9

interested 31:25

interesting 38:13

interests 39:13,18,19 53:5,7,10 58:23 66:6,12

interject 46:20

interpret 57:20

interrelated 13:25

interrogatories 29:20 30:16 57:2

Interruption 35:7

investigation 36:25

invite 51:14

involved 18:6 31:14 62:25

involves 28:7

involving 24:1

irrelevant 58:22

issue 13:22 14:10,11, 22 19:22 26:8 29:16 30:7,13 31:8 34:3 36:10,13 37:6 40:4 41:3 42:2,3 43:21 50:12 52:11 53:2,3,18 60:20

issued 42:11 58:5

issues 13:21 15:9 20:17 22:9 23:1 27:2,9 34:16 36:8,11 43:17 50:3 51:13 67:20

IV 26:20

## J

January 15:23 67:20

JCC 33:19

JCCPS 63:10 65:25 66:2

job 22:24 34:15

judge 15:24 20:14 38:7 39:3,9 42:15,16 43:9 45:1 47:9,10 49:4 51:23 54:19

judges 40:14 63:5

judgment 19:21 21:7 44:9 45:7 48:18,24 49:3,6,10,13,15 50:1

juncture 34:19

## K

K-O-C-H 58:3

Khaldoun 32:10

kick 49:17

kind 31:7,24 62:4

knowing 50:8

knowledge 29:3

Koch-ash 58:2,11,12, 18,19

## L

laid 53:20

Lake 51:25

language 46:10 58:17 60:19

law 31:10 33:7 40:5 63:14 65:16

lawyer 39:12,19

lawyers 23:21 24:1,24 25:6,12 51:3 63:11 64:20 65:14,25 66:1

lead 24:25 34:16

leaders' 65:9

leadership 25:9,23 26:1,15 27:9 28:8,18 29:2,12,18 31:13 38:22 39:15 45:17 47:1,2,7 50:4,6 51:4,19 54:10 56:20,25 57:5,7 59:15 60:1

leadership's 60:2

leads 56:14

learn 37:9

leave 61:11 67:10,11

led 35:5,9

left 39:8 66:10

legislature 21:3,8 57:19 58:16

legitimate 31:8 53:23

level 37:7

liability 64:6,8

liaison 34:16

lies 58:16

light 53:6

limited 52:24

lines 14:6,8

listen 21:20 37:17

litigants 58:21,23

litigation 39:22,23 64:9,18,22,24 65:1,12, 21,22,23

live 18:25

lived 65:18

lives 19:1

Lobo 18:3 26:8 28:7,16 29:16 31:20 36:14,22 37:8,10 43:20 44:7 46:3 57:1 59:9 60:7

Lobo-specific 57:4

Lobos 60:13

local 19:3,10,12,19

lodged 23:14

long 14:15,18 60:7,11

long-term 41:12

longer 28:2

looked 19:9,10

losing 34:7

lot 27:2 41:15,16 62:24 63:1

## M

Madam 58:3

made 21:8 22:16 36:14 38:20 44:19 45:1,14,17 57:10,23 58:10

main 17:15

majority 31:1 37:2

**make** 27:21 31:11 34:12 35:18 47:23 48:13 49:2,4,5,9 50:1,7 52:20 55:25 64:8 65:7, 21 66:12

**makes** 17:7

**making** 30:21 37:6

**manage** 41:21 42:5 50:23 53:14 60:21

**managed** 53:24

**management** 14:23 18:2 19:12 22:4 23:22 24:4 25:4 27:22 33:16 34:10 35:10 43:1,21 44:19 47:19 48:2 53:6 63:9

**mandate** 47:12 48:21

**mandates** 48:20

**mandatory** 33:9 58:6

**map** 31:2

**marshaled** 45:6

**master** 43:23

**material** 37:20

**materials** 13:20 37:1

**matrix** 42:20

**mavericks** 55:18

**Mcghan** 46:9 50:24 57:17

**MDL** 38:11

**meaning** 60:24

**meaningful** 60:14

**meaningfully** 33:14

**meaningless** 33:20

**means** 23:6 25:10

**mediate** 64:16 67:1

**mediation** 64:20 65:12, 23 67:6

**meet** 26:16 29:6 33:3, 24

**meeting** 31:13 50:10 60:10

**member** 59:15

**mere** 58:20

**merits** 40:3

**message** 54:2

**met** 47:10

**middle** 15:23 44:17

**minds** 50:10

**minute** 15:11

**minutes** 13:15 21:18 24:8

**mirror** 62:23

**mirrored** 62:18

**mixed** 42:8

**model** 54:15

**moment** 18:22 35:6 42:13

**monitoring** 18:6

**month** 38:8

**months** 28:21,24 29:4, 8 31:5,15 46:2 47:4,6 60:9,10 63:13

**mortality** 63:23 64:2

**motion** 13:6,23 14:3, 11,19 15:7,9 29:1 30:8 31:6,19 33:12,15 35:17 36:1,4,15,16,19 37:6,8, 12,21 38:2,9,13,18,20 39:6,21 40:2,12 41:5 42:14 43:11 44:9,13 45:7 47:2,9,13 48:24 49:3,6,10,13,15,18,21 50:7 51:9 54:7 60:12 62:8 63:18,21 67:2

**motions** 20:23 21:14 25:19 26:6 34:15,23 40:24 41:17 43:15 45:17 48:19 50:1 55:13 56:8 59:17 60:20 64:15 67:5

**move** 50:13 56:10

**moved** 37:19

**moving** 17:14

**multiple** 25:19 56:8

**N**

**Napa** 51:25

**National** 52:10

**necessarily** 27:11

**needed** 42:7

**negligence** 45:13

**negligent** 44:22

**nerve-racking** 64:11

**net** 35:22

**Nevada** 19:1,18 35:4 36:23 51:24

**newly-entered** 48:25

**nice** 40:13

**Norrbom** 37:2

**notes** 25:17

**notice** 27:16 49:14

**noticed** 45:22 46:3

**notices** 29:19

**number** 13:24 21:10 32:1 41:18 42:12 52:14, 19,22 53:20 61:16,17, 21

**numbers** 41:15

**O**

**objection** 36:20 59:8

**observation** 34:12

**obtain** 32:16

**obtained** 37:1,21

**obtaining** 32:24

**occur** 15:12 16:19

**occurred** 60:25

**October** 62:20

**odd** 65:24

**offering** 64:14

**office** 25:5 36:18

**officer** 32:19

**older** 41:14

**open** 24:5

**opportunity** 25:1 28:23 42:17

**oppose** 45:6

**opposed** 37:5 39:24 61:18 67:1

**opposing** 58:23

**opposition** 14:3 15:7

**oppositions** 13:6

**orally** 23:22,23,24 24:4

**order** 14:10,11,19,22 20:10 31:20 61:20,21

**orderly** 22:22 32:17 33:2,10 34:21 37:13 46:8

**orders** 61:10 63:9

**ordinarily** 23:4

**organize** 21:14

**organized** 54:16 55:8

**original** 62:16 67:9

**originals** 61:11

**outlined** 32:12

**P**

**p.m.** 13:2 22:2,4 67:18, 22

**paces** 29:9

**papers** 16:4 22:10 49:12 59:3 62:1

**paragraph** 62:1,3,11

**part** 26:25 34:9 38:10 40:3 41:6 62:8

**participate** 21:20 33:14 38:1

**parties** 16:9,17 26:13 48:23 55:16

**party** 17:23,24 18:4 27:22 48:25

**path** 64:13

SCANLAN STONE

patrolling 18:5

pause 24:9

pending 46:16

people 13:15 19:19
21:23,25 22:6,23 23:16,
17,23 27:11 31:25 39:5
44:19 48:8 49:21 50:25
51:17 52:14,19 53:22
56:1 59:17 65:8,20

percent 41:13,14 63:23
64:3

perform 19:13,18

period 21:2 23:18
33:24 38:24 49:14
63:24

permission 30:8

person 27:3 34:24 38:1
46:1

persuading 58:16

persuasive 42:10
45:14

pertain 25:19

Petri 57:16 59:1 65:25

PG&E 15:10 16:21
17:19 18:6,19 19:4 20:1
24:23 25:4,5 27:18
30:13 33:25 35:13
44:22 45:24 47:18,21,
25 48:3,12 54:10 55:14
56:4,17,22 60:15 64:11,
15 65:6,20 66:24 67:2

PG&E's 40:21

phone 27:8,14

pick 67:12

piece 27:4

piecemeal 56:16

pike 40:10

Pitre 13:7,8,19,22 14:7,
15,18,24 41:24,25
50:17,21 52:8 55:24
56:6 60:18

place 35:11 50:15
51:15 56:18 65:6

plaintiff 17:12 20:8,24

21:6 23:1 32:3 42:21
58:13 63:11,19 64:4,16
65:14,17,19

plaintiff's 35:24

plaintiffs 26:9 41:19
47:23 54:10 56:12
64:23 65:10

plaintiffs' 44:2 56:2
57:23 66:12

plan 34:10 35:21 42:22
43:1,6 44:3 46:25 54:5,
11,12,20 55:2,8,17
63:15 64:19,20,22 65:4,
6,12,13,21 67:12

plenty 23:21

PMK 25:3 27:17,18
47:18 48:3,12

Pocket 34:25 35:1,2

podium 17:10 34:4

point 16:5 21:19 22:14
27:21,25 30:21 66:15

points 59:1

pole 27:5 52:3 55:5

policies 27:19,21,22,23

poor 16:4

population 41:13 64:6

pose 27:9

position 19:8 39:8,15

positions 23:18

post 31:21

postponing 47:10

potential 32:12 41:16
63:5

potentially 36:24 45:1
65:22

power 18:4 34:11 50:22
58:22

powers 16:8

precedence 54:18

precedent 51:23

preceding 58:18

predecessor 63:25

prefer 16:16 17:3

preference 13:5 14:3,
11,20 20:22 21:14
25:17,18 32:3,14,15,25
33:4,9,14 34:8,15,20,
23,25 35:16,17,25 36:4
37:10,12,16,18 38:9,12,
20 39:21 40:4,12,24
41:5,17 42:6,8,14,16,23
43:2,8,11,13,15 45:17
47:2 48:21 49:18,21
51:9,18 53:10,23 54:7,
12,21 55:13 56:8 59:4,
12,17,19,21 60:20 62:7,
14 63:15,18,19,21
64:15 67:5

preferences 26:12
33:21 34:1,6 41:6,8

prejudice 45:19 57:8

prejudiced 56:23

prejudices 65:8

prejudicial 56:17

prematurely 45:22

preparation 21:11
46:23

prepare 49:12

prepared 21:1 28:24

present 20:23 62:6

presented 22:9 62:7,
16 63:20

presently 44:16

preserved 66:13

preserving 66:4

presiding 20:13

press 47:1,6

pretty 30:2,21

prime 42:17

prioritize 37:16

privilege 31:9

problem 13:18 25:7
29:17 31:13 36:22
37:22 41:12,19 43:9
47:14,15,20,21 48:14

procedural 34:19

proceed 22:14 35:17
59:20

proceeding 46:13
50:23 52:5 53:9,11,15
54:4 56:9 61:3

proceedings 52:2
56:13,15 67:22

process 13:17 21:5
22:22 26:18 29:6,23
32:11,14,21,24 33:3,6,
15,19,23 34:18 35:18,
20,23,24 37:3,9,16
39:20 40:4,17 46:8,19,
22 51:4 53:20 54:3
56:18 63:9

produce 47:25 48:12

produced 54:17

production 35:14
44:15

productions 29:19

progress 29:23 50:11

properly 44:25 45:12

property 19:9

proposed 35:22 46:24
61:10 62:17

protected 63:15

protocol 26:25 32:16
33:14,23 34:21 37:9
51:19

protocols 42:23

provide 42:10 46:18

provision 58:24,25
59:11

punitive 43:25 45:13

pursue 46:8

pursuing 64:13

pushing 60:7,9

put 55:16 56:18 59:6
63:14 64:12 65:6,11
66:24

puts 64:11

## Q

**qualify** 33:4

**question** 24:22 30:10 61:9,15,25 63:2

**questionnaire** 62:4, 10,13,16,17,22

**questions** 46:4 48:7,10 61:24

**quote** 58:6,9,12,17,18, 20,24

## R

**raise** 13:23 27:2 30:7 67:14

**raised** 41:3 57:8

**rapidly** 25:13

**rate** 63:23 64:2

**reach** 36:21

**reached** 65:1

**reaction** 39:2

**reactions** 24:9

**read** 13:20 14:6,8 58:1

**ready** 26:17 28:20 29:11,12,18 38:3 40:23 41:11 59:13 60:14

**real** 25:7

**realize** 30:14

**realizes** 13:14

**reason** 22:13 26:21 39:7 60:2,3

**reasons** 39:7

**recall** 38:9

**receive** 62:19

**recess** 22:2 67:18

**recognize** 20:21

**recognized** 26:19 42:11

**record** 45:2 65:5 67:12, 16,17

**referred** 22:17 62:11

**refile** 37:22

**refusal** 33:13

**refute** 57:23

**Reglan** 63:23

**regrettable** 63:5

**reject** 22:18

**rejected** 24:14,17

**relates** 13:24 28:6,16 29:16

**relating** 28:15

**relevant** 62:9

**relief** 60:5

**remedy** 58:15

**remind** 22:21

**removed** 44:21

**rendered** 33:20

**renew** 37:21,22

**rephrase** 30:10

**report** 30:5 31:2,19 36:14 60:13

**Reporter** 58:3

**reports** 28:22,24 31:16 60:8

**represent** 29:13

**representative** 43:4

**represented** 23:9 39:13

**representing** 23:1

**request** 13:10 16:1 29:19 36:14

**requests** 29:20 56:17, 22 57:1,4

**required** 29:24 44:4

**requirements** 47:9

**requires** 46:22

**reserve** 14:19 19:21

**residents** 18:8

**resolution** 46:14,19

51:1

**resolve** 42:21 43:6

**resolved** 26:2

**resources** 41:1

**respect** 20:17 22:12,16 38:17 62:13

**Respectfully** 59:14

**respond** 23:19 24:3

**responded** 36:23

**response** 67:15

**rest** 45:15 47:22 52:23

**result** 49:19

**resume** 21:17

**revise** 54:12

**revised** 54:14

**RFAS** 30:17 57:2

**rid** 66:6

**rights** 34:7 45:19 49:19 65:8

**risk** 21:6 34:7 35:10 41:18

**road** 22:20 31:2 48:13

**Robinson** 66:1

**roll** 35:13

**rolling** 23:8

**route** 53:12,13

**ruled** 34:20

**rules** 34:11

**ruling** 14:19 53:18

**run** 21:6 47:16 66:2

**rush** 33:11 34:23

## S

**S-W-A-I-T-H-E-S** 58:20

**Sacramento** 16:2,5,8, 14,16,18 18:9,15,19 19:2 20:5,11,14 45:2

**sacrifice** 46:15

**San** 17:2,8,20,25 18:9, 15,19 19:17 35:3,11

**satisfied** 40:8

**scenario** 51:3

**seconds** 27:8 60:18

**section** 52:7 58:6,14, 17,25

**send** 16:8

**sends** 54:2

**sense** 17:7,13

**sensitive** 13:21

**separate** 23:14 34:14 37:25 56:13 64:16

**September** 41:11

**series** 33:20 63:8

**serve** 26:15,21 28:6 31:6 45:3

**served** 42:10 56:25

**set** 13:13 15:18 20:12 28:2 37:18 50:18 52:18 55:11 59:18 67:19

**setting** 31:23 65:2

**settle** 65:20

**settlement** 38:4

**seven-day** 33:24

**share** 37:1

**shift** 22:13

**short** 38:25 39:16 63:24

**shortening** 31:21

**shot** 47:23

**show** 48:5

**showing** 57:11

**sick** 64:5 65:20

**Sieglock** 26:10

**sign** 61:18,19,20,21

**signed** 61:11

**similarly** 53:22 65:15

**simply** 22:23 25:4 26:2 29:25 63:18 67:6

**single** 26:8 65:19

**Singleton** 15:1,2,4,15, 25 16:24 17:2 18:21 19:1,7 22:17,21,25 24:13 26:3 28:3,13 30:4,11,25 32:12 34:4 41:4 43:19 44:18 45:9 52:11 56:20 57:10,15 62:15,19 64:13,25 65:1 66:9,17,20

**Singleton's** 62:1,3

**Singletons** 50:11

**sir** 15:15 20:2 24:12 38:5 41:23 57:14 60:17 61:8 66:16

**sit** 54:11

**sits** 45:1 61:2

**sitting** 39:2

**situated** 65:16

**situation** 20:23 26:13 28:5 33:19 38:6 46:25 48:1,4 50:2 64:5

**situations** 47:15,17 49:25

**Skikos** 61:13,14 62:12 63:4 66:21

**slap** 52:4

**solely** 28:16

**solve** 47:20

**Sonoma** 51:25

**sooner** 21:22

**sort** 19:5 23:11 47:11, 24 52:6 62:10

**sorts** 24:23 30:12

**sought** 33:16

**soundly** 45:21

**sparked** 61:25

**speak** 16:15 18:21 20:22 23:24 56:3

**special** 29:20

**specific** 24:21 27:5 32:18 33:12 34:3 36:13

**specifically** 24:6,19 36:22 40:17 57:1

**spent** 63:13 65:13

**sphere** 48:15

**spoken** 16:16

**sporadic** 65:2

**spot** 41:4

**Stage** 26:20

**stand** 32:19 33:17 59:11

**standpoint** 43:16,22

**start** 22:1 23:3,6 25:21 34:14 40:14 44:18 54:14 64:24,25

**started** 65:2

**starting** 21:25

**state** 38:15 42:2 66:13

**stated** 50:24

**statement** 22:18 23:2, 12 33:16 46:10

**statements** 22:23

**status** 17:14

**statute** 38:15 57:18 66:4,5

**statutes** 49:7

**statutory** 47:12 48:20, 23 49:5 56:11 58:8

**steady** 33:13

**stipulation** 61:18,19

**stop** 24:5 36:3

**straw** 39:16

**street** 18:20 66:5

**stroll** 13:15

**struck** 59:25

**student** 60:22

**stuff** 54:13

**submitted** 44:2 67:20

**subset** 54:24 56:12

**substance** 40:3

**substantial** 39:22 40:19 43:17 53:9,10

**substantive** 34:7

**substantively** 33:18 62:23

**successful** 60:9 63:10 64:9,23

**suggest** 25:17 45:10 53:16

**suggested** 57:17 61:3, 17,19 66:25

**suggesting** 38:16 48:15

**suggestion** 52:9

**suggestions** 22:16,19 57:23

**suitable** 37:10

**Sulphur** 22:12 37:11 41:8,9

**summarized** 22:17

**summary** 44:8 45:6 48:18,23 49:3,6,10,12, 14 50:1

**supposed** 49:4

**Swaithes** 58:20

**swipes** 37:15

**system** 20:14 40:21

**systemic** 37:5

———

**T**

**table** 39:3 56:2

**takes** 48:14 54:18

**taking** 15:24 43:1 44:18 51:15

**talk** 15:10 21:12 24:6,10 48:18

**talked** 57:16

**talking** 33:1 41:16

**tape** 40:21

**teaches** 43:8

**team** 66:15

**technology** 40:22

**teed** 34:17 36:15

**telephone** 13:16 35:8

**ten** 23:6

**tentative** 15:8 22:8

**term** 29:23

**terms** 15:19 22:22,24 29:18 30:3 40:19 42:25 50:11

**Terry** 62:15 64:25 65:1

**test** 42:6,9,18 43:4 52:23

**testifying** 16:12

**thing** 43:14 61:6

**things** 15:14 17:16 21:10 23:2,5,23 24:8,15 25:15 30:4,17 31:18,24 49:17 55:8 57:16 58:1 63:1,11

**thinks** 47:10

**thought** 38:19 41:25

**thoughts** 15:13 22:9 41:23

**thousands** 46:16 61:4

**threat** 41:20

**tied** 42:4

**time** 14:1 21:2,12 23:18,21,24 25:11 30:15,17,20 31:21 33:17 38:23,24 39:6 41:1 43:12 44:1 47:3 49:3,9,12,23,25 50:1 55:12 59:13 60:7 63:24

**times** 37:4 44:5 56:8,9

**timing** 43:16 45:11

**today** 14:13 36:10 56:25 57:5

**today's** 36:13

**told** 13:17 21:3 33:6

**Tom** 65:2

**topic** 32:5

**topics** 24:10 27:19 62:24

**Tosdale** 65:2

**touch** 59:23

**tracks** 34:14 37:25

**transfer** 40:14

**transferred** 16:2

**tree** 43:21 44:4,20,21 52:4 55:4

**tremendous** 27:25

**trial** 15:11 16:2,16,19, 25 21:1,11 26:17 37:18 38:4 41:11 44:8,10 49:1,4,13,20 52:21,22 53:23 55:9 58:7,13,22 59:12 64:1

**trials** 55:11 56:11

**trigger** 33:3

**trouble** 13:10,12 17:14

**true** 56:24 64:18

**trumps** 52:6 53:15 61:5

**turn** 22:10 33:22

**two-minute** 27:8

**type** 31:9

**types** 42:19

**Typically** 19:13,18

_____

              **U**

**ultimately** 64:22

**unaffiliated** 17:22

**unbelievable** 64:2

**uncoordinated** 26:25 33:21

**understand** 14:5 15:19 24:14 26:3 28:3 29:6,15 33:8 38:17 39:21 41:24 54:14 66:3

**understandably** 21:4

**understanding** 19:11

**understands** 50:24

**Understood** 13:19 15:25 66:20

**uniform** 54:9

**Union** 52:10

**unique** 27:5 47:24

**unleash** 37:12

**unnecessary** 29:22

**unsuccessful** 60:1,4

**untenable** 34:17

**unwinding** 25:21

**upset** 27:12

**urgent** 38:19

_____

              **V**

**variety** 25:20 42:19 43:24

**vegetation** 18:2,3,7 19:11 25:3 27:4 35:10 43:21 44:19

**versus** 39:18

**vested** 34:10

**victims** 52:14

**view** 17:17,21 39:10,11

**viewpoints** 23:12

**views** 16:21 23:9

_____

              **W**

**Wall** 66:5

**wanted** 25:3 32:16 42:15 52:16 61:6

**waste** 43:12

**wave** 30:15 55:12

**ways** 53:16

**week** 30:23 38:24 49:11 63:19

**week's** 48:2

**weeks** 14:14 59:21

**whatsoever** 27:13 45:4

**who'd** 24:10

**whomever** 37:15

**wild** 55:18

**wiped** 49:19

**wishes** 19:21 20:5

**witnesses** 16:11,12,18 17:16,17,22,23,25 19:2, 6,8 20:6 44:3

**word** 26:12 60:23

**words** 62:8

**work** 14:4 18:7 19:13, 18 24:1 25:9 35:13 38:23 44:25 46:3 49:10 55:9 64:4 65:3 66:7,11

**worked** 32:2

**working** 29:9 39:4 40:17,18 56:20 63:13

**works** 39:10

**world** 50:12

**worse** 44:23 45:13

**worst** 51:2

**writ** 58:5

**write** 28:11

**writing** 23:19 24:2 48:13

**written** 30:15,16,22

**wrong** 23:11 39:6

_____

              **Y**

**yield** 34:19

SCANLAN
STONE

depos@scanlanstone.com
415.834.1114