# EXHIBIT F

Case: 19-30088    Doc# 3105-6    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 1 of 12



SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| COORDINATION PROCEEDING<br>SPECIAL TITLE [RULE 1550(b)]<br><br>CALIFORNIA NORTHBAY FIRE<br>CASES | Judicial Council Coordination<br>Proceeding No. 4955<br>Case No. CJC-17-004955<br><br>ORDER DENYING WITHOUT<br>PREJUDICE PAMELA FOWLER'S<br>MOTION FOR TRIAL PREFERENCE |

  Plaintiff Pamela Fowler moves for preference pursuant to C.C.P. § 36(a), requesting a trial date within 120 days. The motion is not opposed by defendant, and was heard December 28, 2018.

  Fowler, who was 73 years of age when the motion was filed, is entitled to trial preference if (1) she has a substantial interest in the action as a whole; and (2) her health is such that a preference is necessary to prevent prejudicing her interest in the litigation. Fowler is a plaintiff pursuing substantial claims for damages allegedly resulting from the Lobo Fire.[1] She requests preference for a trial on her claims alone. Fowler has stage 4 carcinosarcoma and is not tolerating her second round of chemotherapy well. Fowler's attorney is informed and believes that her condition is terminal. Singleton Decl. at ¶ 5; C.C.P. § 36.5. In the absence of the issues discussed below, and given the non-opposition, the motion would be granted without more. *Fox v. Superior Court*, 21

---

[1] Whether in the context of these coordinated cases her undeniable substantial interest in her own case qualifies as an "a substantial interest in the action as a whole" is discussed below.

Case: 19-30088 Doc# 3105-6 Filed: 07/19/19 Entered: 07/19/19 15:37:40 Page 2 of 12

Cal.App.5th 529 (2018).[2] I so indicated at the hearing, before the discussion at the immediately following case management conference of the issues noted below.

The parties suggest a trial date of April 29, 2019, and the locus of the trial be Sacramento Superior Court. However no motion to transfer pursuant to CRC 3.543 has been filed nor, concomitantly, have the parties offered a proposed order under subsection (c) of that rule. The parties have not considered whether the case should remain in this department under the auspices of the coordination trial judge up to the date of trial, or whether it should be transferred before that date.

The central dispute presented by this motion is not that between Fowler and the defendant; it is between Fowler and the rest of the parties plaintiff in these coordinated cases. The positions on that dispute are reflected in case management conference statements and related submissions filed in connection with the case management conference I held also on December 28, 20918. That dispute is not, precisely, whether the § 36 motion ought to be granted, but rather regards the process by which such a motion is brought. The respective policies underlying this dispute are powerful and in some ways irreconcilable.

*Practical Background*

There are scores of law firms and lawyers in these coordinated cases. There are very roughly 5,000 plaintiffs, and more are expected. About 17 separate fires are in issue, each with differences in causation and hence liability issues. If we use the age of 75 as a proxy for those plaintiffs who likely have some claim to preference under § 36, and we assume that about 5% of the relevant

---

[2] As *Fox* notes, relief may be mandatory under subsection (a) (over 70 years old and may be prejudiced as result of health condition) and is discretionary under subsection (d) (party may not live past 6 months). 21 Cal.App.5th at 533.

population has reached that age,[3] we could have about 250 cases which now may be eligible for a preference motion.[4]

If hundreds of plaintiffs opted for preference trials across a variety of the fires, coordinating these cases would be impossible. Even were discovery to be coordinated in some fashion to as to allow defendant PG&E to respond coherently to e.g. some simplified and limited document demands,[5] only some PMK depositions would be common to the cases, and PG&E would be required to provide witnesses on its policies and practices as they pertain to a variety of distinct fires and locations. Parties would also be required to attend, in the space of just weeks, third party depositions (e.g. contractors responsible for line maintenance or vegetation management, as well as eye witnesses to the fires' development and spread). During the last weeks before such trials, hundreds of experts would need to be prepared and deposed.[6]

Basic rules designed to reduce costs and burdens, such as those permitting (by default at least) but a single deposition of a person would go by the wayside: parties not involved in a specific preference case would not be ready for any of the PG&E depositions,. Nor would they be prepared for the other depositions, because they would not have had the time to review documents and otherwise prepare—reasonably so—since they would not be under the 120-day gun. So too the difficult time-consuming and very expensive ESI production from PG&E: the requirements of the coordinated cases strongly suggest a single comprehensive production (perhaps augmented later), planned out in the usual way;[7] but with demands from some counsel desiring to peel out their cases

---

[3] "Demographic Statistics for California," <https://www.infoplease.com/us/california/demographic-statistics-237>.
[4] In many sorts of coordinated actions, such as those involving medical devices and medications and drugs, the percentage of plaintiffs who could make a § 36 motion will be far higher: they are probably sicker and older than average.
[5] In these cases, PG&E *cannot* in fact produce all discoverable documents within the next month or two; we have at earlier conferences discussed electronically stored information (ESI) including PG&E's old data format and associated retrieval problems.
[6] In Fowler's case, plaintiff suggests she'd use five experts, presumably a suggestion of about 10 experts per case, although some overlap as among cases might be expected.
[7] E.g. meet and confer and then implementation of steps such as: identification of custodians, relevant backup and in-production data; retrieval, search terms (either classic Boolean terms or some other form of technology assisted review

- 3 -

in preference motions, some sort of abbreviated search protocol will have to be generated and implemented on a case-by-case basis (unless the plaintiffs' counsel forgo a search for anything other than the most basic documents from PG&E).

In the meantime, most of the planning and consideration that has gone in to the prosecution of the cases as a coordinated group would be eviscerated: my rulings directing the focus on the preparation of the Atlas fire trial and associated bellwethers will be set aside. (Fowler's trial involves the Lobo fire.) The rest of the caseload—the rest of the many thousands of cases—will be on pause for some period of time. Without properly selected and prepared-for bellwether trials, the efforts of the court and the balance of the parties to generate guidelines for settlement will be abandoned. And as time goes on, of course, more cases will be subject to § 36: the inexorable laws of nature tell us that. Simply granting each § 36 motion as it arrives will utterly destroy any hope for coordination, and will forsake all cases involving younger (or healthier) plaintiffs: their cases may not get tried until the five year statute (C.C.P. § 583.310) kicks in. That truly is operating in failure mode.

Case management in complex coordinated cases is designed to manage cases to settlement or other resolution short of trial, because as all involved understand, it is not in fact possible to try each case. Some cases may resolve on a legal issue, and that can be tested by means of motions for summary judgment or perhaps demurrer (or judgment on the pleadings). Sometimes there is a key fact issue cutting across a large swath of cases, in which situation a short trial either to a jury or the court can resolve it. Perhaps bellwether trials will provide the parties and their insurers the information they need to settle. Sometimes, the parties simply need to conduct discovery across a spectrum of issue to make an intelligent evaluation—one hopes a shared evaluation—of the worth of the cases. Often defendants may be willing to settle a large number of case at once, but not on

---

(TAR)), de-duplication, privilege review, and then production. This process in any case takes many months; here it will take somewhat longer because of the data issue alluded to in note 5 above.

- 4 -

case-by-case basis, because the latter approach may not reduce the cost of litigation or sufficiently reduce the defendants' overall exposure. Coordination is the *sina qua non* of every technique used to manage cases to these sorts of resolutions. The opening sentences of the manual for complex litigation make the obvious point: "Fair and efficient resolution of complex litigation requires at least that (1) the court exercise early and effective supervision (and, where necessary, control); (2) counsel act *cooperatively* and professionally; and (3) the judge and counsel *collaborate* to develop and carry out a *comprehensive plan* for the conduct of pretrial and trial proceedings." MANUAL FOR COMPLEX LITIGATION, at 7 (4th ed. 2004) (emphasis supplied).

*Legal Background: Coordination*

The practical problems outlined above are recognized by state statute and rules of court. The Legislature has for example authorized the Judicial Council to enact any rule for coordinated actions "[n]otwithstanding any other provision of law...." *Philip Morris Inc. v. Superior Court,* 71 Cal. App. 4th 116, 120 (1999) (emphasis added by opinion). C.C.P. § 404.7. This "gives the Judicial Council broad discretion to adopt procedures which will foster the goals of coordination, and that such procedures may reconcile apparent inconsistencies in the statute." *Id.*, quoting *McGhan Medical Corp. v. Superior Court,* 11 Cal.App.4th 804, 812 (1992). The rules recognize this extraordinary power given the Council in this context. CRC 3.504(b). In turn, the rules confer extraordinary powers on the coordination trial court:

> A review of applicable rules adopted by the Judicial Council indicates that the procedures which may be utilized by the coordinating judge are flexible indeed. Rule 1541 provides that the court may order any issue or defense tried separately; hearings may be conducted at various sites in the state as may be selected to provide convenience to witnesses, parties, and counsel; the court can prescribe all manner of pretrial discovery devices designed to aid the litigation. Rule 1543 gives the coordinating judge the power to sever cases or claims from the coordination pool and transfer them back to their original venue. Rule 1528 gives the judge power to try specific issues separately. Generally, we are satisfied that it is the intent of the Judicial Council *to vest in the coordinating judge whatever great breadth of discretion may be necessary and appropriate to ease the transition through the judicial system of the logjam of cases which gives rise to coordination.* If the parties or court

Case: 19-30088    Doc# 3105-6    Filed: 07/19/19    Entered: 07/19/19 15:37:40    Page 6 of 12

otherwise feel restriction from the statute or rules, our comments on the judge's reservations about coordination, which of course become law of this case, should resolve the same.

*McGhan Med. Corp. v. Superior Court*, 11 Cal. App. 4th 804, 812 (1992)[8] (emphasis supplied). See also, *Abelson v. Nat'l Union Fire Ins. Co.*, 28 Cal. App. 4th 776, 785–86 (1994) (quoting *McGhan*).

So it is that, even though coordination may delay individual cases ready for trial, the trial court is plainly empowered to so order because the interests of the *group* of cases may well overcome the interests of *one* of them: "One of the purposes, in our view, of a centralized coordinating authority is to vest in one administrator the power to organize the litigation in an efficient and equitable manner, *for the benefit of all*." *McGhan*, 11 Cal. App. 4th at 813 (emphasis supplied).

*Legal Background: Section 36*

Section 36 obviously is meant to ensure that age and infirmity do not deprive a party from going to trial. See generally, *Rice v. Superior Court,* 136 Cal.App.3d 81 (1982). The time period allowed to conduct discovery and otherwise prepare for trial—120 days—is insufficient for anything other than the simplest case, but plainly the Legislature has decided that an imperfect trial is better than a serious risk of no trial at all. Case law has been unstinting in its direction that motions under § 36(a) are not matters of discretion. For example, the usual inherent powers of any trial court are irrelevant: "as to section 36 matters, no discretion is left to trial courts." *Koch-Ash v. Superior Court*, 180 Cal. App. 3d 689, 694 (1986). At least "in complex, consolidated actions" it doesn't matter that the cost—inflicted on otherwise innocent parties—will be an assortment of "potentially wasteful serial trials," 180 Cal. App. 3d at 698-99 (internal quotes removed). It doesn't matter that a superior court may, if the § 36(a) motion is granted, be unable "to manage a

---

[8] The citations to e.g. CRC 1541 etc. are to older versions of the rules which have since been renumbered. For example, renumbered CRC 3.541(a)(2) allows the judge to overrule the timetables in the code of civil procedure to establish timing of non-discovery motions.

- 6 -

voluminous increase in criminal and civil cases." *Sprowl v. Superior Court*, 219 Cal. App. 3d 777, 781 (1990) (relying on *Koch-Ash*). Indeed, a 1990 opinion from the First District Court of Appeal strongly suggests that there are no conceivable countervailing considerations:

> Thus, relevant precedent upholds the absolute command of section 36(a) in light of its plain meaning, despite recognition that in certain instances there are strong countervailing considerations—deriving from principles of efficient trial court management; from fairness and due process to other litigants; and from divergent public policy or statutory contexts in which the section 36(a) mandate may be difficult, impractical, or impossible to realize. In short, we approach this case against a background of relevant precedent which holds section 36(a) is a comprehensive and final legislative judgment on the issue, which must prevail whenever the section 36(a) right is juxtaposed to another countervailing argument, based on whatever legitimate or seemingly compelling public interest.

*Miller v. Superior Court*, 221 Cal. App. 3d 1200, 1206 (1990). See also, *Swaithes v. Superior Court*, 212 Cal. App. 3d 1082, 1085–86 (1989).

*Coordination Powers & § 36*

The policies and directives under coordination rules on the one hand and preference motions (at least under § 36(a)) on the other hand, conflict.[9] Fundamentally, section 36 presumes cases resolve by trial. The rules on coordination recognize that this isn't usually true: cases resolve short of trial though case management (to be sure, the setting of trial dates and bellwether trials is frequently essential to that management).

I have found only one case where these two sets of directives were addressed, but the court was not required to resolve the conflict. In *Abelson v. Nat'l Union Fire Ins. Co.*, 28 Cal. App. 4th 776 (1994), the coordination trial judge had been concerned that *potential* motions under § 36(a)

---

[9] A similar situation can arise as between the rights protected by § 36 and the right to bring a motion for summary judgment or adjudication which, with its 75+ day notice period and time needed to conduct discovery to support the motion, generally can't be accomplished within 120 days. See e.g., *Polibrid Coatings, Inc. v. Superior Court*, 112 Cal.App.4th 920 (2003) (party *entitled* to minimum six-month continuance of trial for discovery and to prepare and schedule summary judgment motion). Compare *Looney v. Superior Court*, 6 Cal.App.4th 521, 534 (1993) (resolving direct conflict between §36 and 9 month period for allowing punitive damages claim under C.C.P. § 425.13 by implying exception to § 425.13). In practice, because the various interests of the parties cannot possibly be accommodated with a strict application of § 36's 120 day period, counsel often make a deal: they might agree to a shortened timetable for a summary judgment motion, modifications to demands for discovery, shortened time for discovery responses, or might agree to postpone the filing of the § 36 motion until key discovery has been done; and so on.

- 7 -

would derail the coordinated proceedings, and so devised a sort of special collateral estoppel rule ("limited purpose issue preclusion") based on a case which was not yet final. The appellate court disapproved, holding that the interests in coordination did not allow imposition of a purpose-built rule of collateral estoppel, at least in that case. 28 Cal. App. 4th at 788–89. The conflict discussed in this order was not resolved.

    1.    *"Substantial interest in the action as a whole"*

One prerequisite of a §36(a) motion is a showing that the moving party has a "substantial interest in the action as a whole". As one commentator suggests, there are no known cases interpreting this phrase. Weil & Brown, CALIFORNIA PRACTICE GUIDE: CIVIL PROCEDURE BEFORE TRIAL ¶ 12:246.3 (Rutter: 2018). The suggestion is made that the phrase allows the court to determine the "extent" of the moving party's interest, which determination may be discretionary. *Id.* at ¶ 12:246.1("**Effect:** Trial priority is not mandatory and absolute merely because one of the parties is age 70. The court has discretion to determine the *extent* of that party's interest and find as a matter of fact the risk posed of that party's death or incapacity if trial is delayed."). This notion is found in another text as well, which suggests—and it is only a suggestion—that the language was indeed meant to provide discretion where earlier case law had blocked that discretion:

> This "substantial interest" language presumably vitiates—or at least introduces discretion into—the holding in Koch-Ash v. Superior Court, 180 Cal. App. 3d 689, 225 Cal. Rptr. 657 (2d Dist. 1986). That case held that the ages of a dozen (out of 400) plaintiffs in the Malibu Big Rock Mesa landslide cases absolutely required special setting.

Eric E. Younger, YOUNGER ON CALIFORNIA MOTIONS § 24:7 (2d ed. as of Nov. 2018 update). Judge Younger may not be correct in his reference to the 1986 *Koch-Ash* decision, because the pertinent language was in § 36 in e.g., 1982. *Rice v. Superior Court* 136 Cal.App.3d 81, 86 (1982); see also the 1985 case *Greenblatt v. Kaplan's Restaurant*, 171 Cal.App.3d 991, 993 n.2 (1985). But

Case: 19-30088   Doc# 3105-6   Filed: 07/19/19   Entered: 07/19/19 15:37:40   Page 9 of 12

it seems clear that the language has not yet been examined by the courts, including *Koch-Ash*.[10] Nor have the opinions noted above which require strict adherence to § 36 been asked to evaluate this language.

In the ordinary case with a plaintiff and a defendant, surely each party has a 'substantial interest in the action as a whole,' and concomitantly the clause "as a whole" seems surplusage. It is not surplusage only if there a distinction to be drawn between a party's interest in his or her own claims, and some larger piece of litigation which qualifies as the 'whole'. The language also of course strongly suggests that one may be a party to a case but *not* have a 'substantial interest in the action as a whole'. That is, the language suggests looking for a disparity between the interests of the party moving under § 36 and the interests of the other parties to the "action".

So, what is an "action"? The term is used without much rigor, because it usually doesn't matter. It is shorthand for 'cause for action,' *McNulty v. Copp*, 125 Cal.App.2d 697, 704 (1954), and for both a cause of action and the lawsuit as a whole. E.g., *Monschke v. Timber Ridge Assisted Living, LLC*, 244 Cal.App.4th 583, 587 (2016); *Franceschi v. Franchise Tax Bd.*, 1 Cal.App.5th 247, 253 (2016); *Tanguilig v. Bloomingdale's, Inc.*, 5 Cal.App.5th 665 (2016). It is also used to identify an entire coordinated proceeding. E.g., *Philip Morris Inc. v. Superior Court*, 71 Cal.App.4th 116, 125–126 (1999); *Industrial Indemnity Co. v. Superior Court*, 214 Cal.App.3d 259, 261 (1989); *Jane Doe 8015 v. Superior Court*, 148 Cal.App.4th 489, 491 (2007); *United States Fidelity & Guaranty Co. v. Superior Court*, 204 Cal.App.3d 1513, 1515 (1988). Although these cases don't count for much, they suggest that Herculean linguistic gymnastics are not required to find that § 36's term "action" may include a coordinated proceeding as such.

---

[10] Five published California cases quote the phrase. None resolves a dispute concerning its meaning. *Fox v. Superior Court*, 21 Cal.App.5th 529 (2018); *Abelson v. National Union Fire Ins. Co.*, 28 Cal.App.4th 776 (1994); *Young v. Horizon West, Inc.*, 220 Cal.App.4th 1122 (2013); *Warren v. Schecter*, 57 Cal.App.4th 1189, 1199 (1997); *Eliceche v. Federal Land Bank Assn.*, 103 Cal.App.4th 1349, 1355 n.5 (2002).

- 9 -

2. *Treatment of Fowler's § 36 Motion*

While it would be nice if the Legislature clarified the phrase "substantial interest in the action as a whole," or if the Judicial Council exercised its powers under C.C.P. § 404.7 to clarify the interaction between § 36 and the authority of a coordination trial judge, the issue is presented now. I understand the phrase to permit me to determine if the moving party has a substantial interest in the context of all cases included in a JCCP coordination action. To assist in that determination, and to avoid upending the coordination action as a whole, I require the process and input of the plaintiffs' leadership group as reflected in case management conference order No.6, which I signed on December 28, 2018. This order sets forth a protocol for the handling of preference requests. Fowler's counsel may employ that process at his convenience. In the meantime, the motion is denied without prejudice.

Dated: December 31, 2018



CURTIS E.A. KARNOW
JUDGE OF THE SUPERIOR COURT

# CERTIFICATE OF ELECTRONIC SERVICE
(CCP 1010.6(6) & CRC 2.260(g))

I, DANIAL LEMIRE, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On  JAN 2 - 2019 , I electronically served THE ATTACHED DOCUMENT via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:  JAN 2 - 2019

T. Michael Yuen, Clerk

By: _____
DANIAL LEMIRE, Deputy Clerk