| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Ray C. Schrock, P.C. (*pro hac vice*)<br>(ray.schrock@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | CRAVATH, SWAINE & MOORE LLP<br>Paul H. Zumbro (*pro hac vice*)<br>(pzumbro@cravath.com)<br>Kevin J. Orsini (*pro hac vice*)<br>(korsini@cravath.com)<br>Omid H. Nasab (*pro hac vice*)<br>(onasab@cravath.com)<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212 474 1000<br>Fax: 212 474 3700 |

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>   - and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY**<br><br>                            **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19 - 30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>***EX PARTE* MOTION OF DEBTORS FOR ORDER CONTINUING THE HEARING ON THE MOTIONS OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS AND THE AD HOC GROUP OF SUBROGATION CLAIM HOLDERS FOR RELIEF FROM AUTOMATIC STAY**<br><br>Related Documents: Dkt. 2863, 2904<br><br>[No hearing requested] |

PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases, hereby submit this motion, pursuant to sections 105(a) of title 11, United States Code (the "**Bankruptcy Code**"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 9006-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Northern District of California (the "**Local Rules**") for entry of an order continuing the hearing date of the Official Committee of Tort Claimants' ("**Tort Claimants Committee**" or "**TCC**") *Amended Motion for Relief from the Automatic Stay to Permit a State Court Jury Trial of the 2017 Tubbs Wildfire Claims* [Docket No. 2904] and the Ad Hoc Group of Subrogation Claim Holders' ("**Ad Hoc Subrogation Group**") *Motion for Relief from the Automatic Stay* [Dkt. No. 2863] (collectively, the "**Stay Relief Motions**"), so that those motions may be heard together with the Debtors' *Motion for the Establishment of Wildfire Claims Estimation Procedures* [Dkt. No. 3091] (the "**Estimation Motion**") on August 14, 2019, or on such other date as the Court may schedule.

In support of the Motion, the Debtors respectfully submit the Declaration of Kevin J. Orsini (the "**Orsini Declaration**"), filed contemporaneously herewith.

## I. JURISDICTION AND VENUE

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

The Tubbs Fire was the largest and most destructive of the 2017 North Bay Wildfires. According to the California Department of Forestry and Fire Protection ("**CAL FIRE**"), the Tubbs Fire burned 36,807 acres in both Napa and Sonoma Counties, destroyed 5,636 structures, damaged an additional 317 structures, and resulted in 22 fatalities.[1] The Tubbs Fire accounts for the largest number of potential claims against the Debtors stemming from the North Bay Fires, including the majority of

---

[1] *See* CAL FIRE Report, dated January 20, 2019, https://www.fire.ca.gov/programs/fire-protection/reports/incident-reporting-collection/.

structures destroyed and/or damaged in those fires. Notably, two separate investigatory teams from CAL FIRE have ruled out PG&E equipment as a cause of the Tubbs Fire.[2] Nevertheless, wildfire claimants continue to assert that PG&E is responsible for starting the Tubbs Fire, and the TCC estimates that claims arising from the Tubbs Fire alone may be valued at as much as $18 billion. All parties agree that the Debtors' liability (if any) for the Tubbs fire is a threshold issue that is critical to the resolution of these chapter 11 cases.

The parties have now presented competing proposals for how to address that issue. On July 2, 2019, the TCC filed its Stay Relief Motion [Docket No. 2842], seeking to permit eight specific Tubbs plaintiffs to proceed to a jury trial in California Superior Court on their property damage and related personal injury claims. On July 9, 2019, the TCC amended its Stay Relief Motion to add five additional plaintiffs. [Dkt. No. 2904] On July 3, 2019, the Ad Hoc Subrogation Group filed its own Stay Relief Motion [Dkt. No. 2863], similarly requesting leave to proceed to trial in state court on claims arising out of the Tubbs Fire. A hearing on the Stay Relief Motions has been set for July 24, 2019 [Dkt. Nos. 2851, 2865].

On July 18, 2019, the Debtors filed their Estimation Motion [Dkt. No. 3091], a key aspect of which is a proposed evidentiary hearing to be held in this Court—not in state court—to estimate the likelihood of success of claims arising out of the Tubbs Fire. A hearing on the Debtors' Estimation Motion has been set for August 14, 2019.

### III. RELIEF REQUESTED

The Estimation Motion and the Stay Relief Motions present competing views on how and where to address the likelihood of success of claims related to the 2017 Tubbs Fire, which all parties agree is a threshold issue that is central to the resolution of these cases and the Debtors' ability to emerge from chapter 11. The TCC and the Ad Hoc Subrogation Group have requested that this Court lift the automatic stay and allow 13 individual claims to be tried before a jury to reach a verdict on both causation and damages. The Debtors, on the other hand, believe that the proper and most expeditious forum for addressing the value of the thousands of claims related to the Tubbs Fire is this

---

[2] *See* CAL FIRE Report, dated January 20, 2019, https://calfire.app.box.com/s/tpml34qwpy7inbr096fxfglg7broqep4/file/449219240904.

Court, in which <u>all</u> Wildfire Claimants and other interested parties can be heard and the Court can assess the Debtors' liability for the Tubbs Fire (if any) across all associated claims. The Debtors believe that the parties' competing proposals should be considered together, and accordingly the Debtors request that the Court continue the hearing on the Stay Relief Motions filed by the TCC and the Ad Hoc Subrogation Group so that those motions may be heard on the same date as the Debtors' Estimation Motion, which is currently set for hearing on August 14, 2019.

Section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code". 11 U.S.C. § 105(a). *See Scholl v. Felmont Oil Corp.*, 327 F. 2d 697, 700 (6th Cir. 1964) ("The granting or denial of a continuance is a matter within the discretion of the trial judge and will not be reversed on appeal unless there has been a clear abuse of discretion."). In addition, pursuant to Local Rule 9006-1, the Court may "enlarge or shorten time to perform any act". The Court has broad discretion to manage its own calendar as to matters pending before it.

The central issues raised in the TCC's and Ad Hoc Subrogation Group's Stay Relief Motions are also at the heart of the Debtors' Estimation Motion. In order to address the TCC's and Ad Hoc Subrogation Group's Stay Relief Motions, this Court will inevitably have to analyze and decide the best forum in which to address this issue. Indeed, the extent to which the issues presented in these motions overlap is evidenced by the fact that the TCC devotes almost ten pages of its Stay Relief Motion to a rebuttal of an anticipated estimation motion from the Debtors (which has since been filed). (*See* TCC Stay Relief Motion at 9-18.) The Court should weigh these competing proposals together, with the benefit of full briefing on both sets of motions.

The TCC and the Ad Hoc Subrogation Group oppose adjournment. The Ad Hoc Subrogation Group did not provide a reason. The TCC argues that adjournment is inappropriate because it claims that issues in the Stay Relief Motions overlap with issues the TCC has raised in response to the *Motion of the Ad Hoc Committee of Senior Noteholders to Terminate the Debtors' Exclusive Periods Pursuant to Section 1121(d)(1) of the Bankruptcy Code* [Dkt. 2741] (the "**Exclusivity Motion**"), which is also set to be heard on July 24. (*See* Orsini Decl. ¶ 8, Ex. A.) That is not compelling. The TCC seems to make this argument premised on the fact that the term sheet

proposed by the Ad Hoc Noteholders Committee includes references to an estimation motion. While that may be true, the Ad Hoc Noteholders Committee has not filed a motion to estimate, and the questions of how, whether and when to conduct an estimation hearing—let alone where a hearing on the Tubbs Fire should be held—are not issues that this Court needs to address in determining whether to terminate the Debtors' exclusivity. By contrast, the Debtors' Estimation Motion is entirely about estimation, and it is largely about the Tubbs Fire issue. So, while the TCC is correct that its Stay Relief Motion overlaps with estimation issues, that is hardly a reason to insist it be heard with a motion to terminate exclusivity as opposed to a motion for estimation.

Deciding the TCC's and Ad Hoc Subrogation Group's Stay Relief Motions separate and apart from the Debtors' Estimation Motion would be inefficient and prejudicial to Debtors' ability to emerge from chapter 11 prior to the June 30, 2020, legislative deadline. Accordingly, Debtors request that this Court grant this Motion to Continue.

## IV. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the TCC; (iv) counsel to the Ad Hoc Group of Subrogation Claims Holders (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) the Office of the California Attorney General; (viii) the California Public Utilities Commission; (ix) the Nuclear Regulatory Commission; (x) the Federal Energy Regulatory Commission; (xi) the Office of the United States Attorney for the Northern District of California; (xii) counsel for the agent under the Debtors' debtor in possession financing facility; and (xiii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

////
////
////
////
////

## V. CONCLUSION

For the reasons stated herein, the Debtors respectfully request that the Court continue the hearing of the TCC's and Ad Hoc Subrogation Group's Stay Relief Motions [Dkt. Nos. 2863, 2904] to be heard together with the Debtors' Estimation Motion [Dkt. No. 3091] on August 14, 2019, or on such other date as the Court may select.

Dated: July 19, 2019

**WEIL, GOTSHAL & MANGES LLP**
**CRAVATH, SWAINE & MOORE LLP**
**KELLER & BENVENUTTI LLP**

/s/ *Kevin J. Orsini*

Kevin J. Orsini