# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| - and - | (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** **Debtors.** | **CORRECTED FIRST INTERIM APPLICATION OF MILBANK LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM FEBRUARY 12, 2019 THROUGH MAY 31, 2019** |
| ☐    Affects PG&E Corporation <br> ☐    Affects Pacific Gas and Electric Company <br> ☑    Affects both Debtors <br> *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date:      September 25, 2019 <br> Time:     9:30 a.m. (Pacific Time) <br> Place:    United States Bankruptcy Court <br>           Courtroom 17, 16th Floor <br>           450 Golden Gate Avenue <br>           San Francisco, CA 94102 <br><br> Re:       Docket Nos.: 2219, 2707, 2950 & 3071 <br><br> **Objection Deadline:**   August 12, 2019, <br>                            at 4:00 p.m. (PT) |

| | |
|---|---|
| Name of Applicant: | <u>Milbank LLP</u> |
| Authorized to Provide Professional Services to: | <u>Official Committee of Unsecured Creditors</u> |
| Date of Retention: | <u>April 29, 2019 *nunc pro tunc* to February 12, 2019</u> |
| Time Period for which compensation and reimbursement are sought: | <u>February 12, 2019 through May 31, 2019</u> |
| Amount of Compensation sought as actual, reasonable, and necessary: | <u>$7,284,101.25</u> |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | <u>$225,980.03</u> |
| Total Compensation and Expenses Requested for Compensation Period: | <u>$7,510,081.28</u> |

1   This is a(n): ___ monthly _X_ interim ___final application

2
3   This is the first interim fee application filed by Milbank LLP in these cases.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Summary of Monthly Fee Statements for Compensation Period:**

| Filing | Period Covered | Requested | | Approved/ Pending Approval | | Holdback Fees (20%) Requested Fees |
|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees (80%) | Expenses (100%) | |
| *First Monthly Fee Statement*<br><br>Docket No. 2219<br><br>Date Filed: 5/24/19 | 2/12/19 - 2/28/19 | $1,579,807.00 | $17,428.27 | $1,263,845.60 | $17,428.27 | $315,961.40 |
| *Second Monthly Fee Statement*<br><br>Docket No. 2707<br><br>Date Filed: 6/21/19 | 3/1/10 - 3/31/19 | $2,154,205.25 | $88,823.53 | $1,723,364.20 | $88,823.53 | $430,841.05 |
| *Third Monthly Fee Statement*<br><br>Docket No.<br><br>Date Filed: 7/12/19 | 4/1/19 - 4/30/19 | $1,893,348.75 | $65,490.56 | $1,514,679.00 | $65,490.56 | $378,669.75 |
| *Fourth Monthly Fee Statement*<br><br>Docket No.<br><br>Date Filed: 7/18/19 | 5/1/19 - 5/31/19 | $1,656,740.25 | $54,237.67 | $1,325,392.20 | $54,237.67 | $331,348.05 |
| **TOTALS:** | | **$7,284,101.25** | **$225,980.03** | **$5,827,281.00** | **$225,980.03** | **$1,456,820.25** |

**Summary of Any Objections to Monthly Fee Applications:** No objections were filed with respect to the First or Second Monthly Fee Statements. See *Certificates of No Objection* [Docket Nos. 2565 and 2976]. The objection deadline with respect to the Third Monthly Fee Statement is August 2, 2019, and the objection deadline with respect to the Fourth Month Fee Statement is August 8, 2019.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | |

**CORRECTED FIRST INTERIM FEE APPLICATION OF MILBANK LLP**
**FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD**
**FROM FEBRUARY 12, 2019 THROUGH MAY 31, 2019**

TO THE HONORABLE DENNIS MONTALI
UNITED STATES BANKRUPTCY JUDGE

Milbank LLP ("Milbank"), counsel to the Official Committee of Unsecured Creditors (the "Committee") of PG&E Corporation and Pacific Gas and Electric Company (collectively, the "Debtors") in the above- captioned chapter 11 cases, hereby submits its first interim application (this "First Interim Application"), seeking entry of an order pursuant to: (i) sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"); (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"); (iii) the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals, dated February 15, 2012* [Docket No. 701] (the "Interim Compensation Order"); (iv) the *Order Pursuant to 11 U.S.C. Section 1103(a) and Fed. R.Bankr. P.2014 and 2016 Authorizing the Retention and Employment of Milbank LLP as Counsel for the Official Committee of Unsecured Creditors Effective as of February 12, 2019* [Docket No. 1766] (the "Retention Order"); (v) the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses by Attorneys in Larger Chapter*

*11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines"); (vi) the Bankruptcy Local Rules for the Northern District of California (the "Local Rules"); (vii) the *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the Northern District of California*, dated February 19, 2014 (the "Local Guidelines" and together with the U.S. Trustee Guidelines, the "Fee Guidelines").

By this First Interim Application, Milbank seeks: the allowance, on an interim basis, and payment (to the extent not previously paid) of (i) compensation for professional services rendered during the period from February 12, 2019 through and including May 31, 2019 (the "Compensation Period") in the aggregate amount of $7,284,101.25, including amounts previously held back pursuant to the Interim Compensation Order; and (ii) reimbursement of actual and necessary expenses incurred by Milbank in connection with such services during the Compensation Period in the amount of $225,980.03. In support of this First Interim Application, Milbank respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Filed in the aftermath of the horrific 2017 and 2018 wildfires in Northern California, these chapter 11 cases represent one of the largest and most complex chapter 11 filings in United States history. Immediately upon the Committee's formation, Milbank has advised it on, among other things: (i) analyzing the Debtors' "first day" motions and negotiating significant changes to the relief requested thereby; (ii) working with the Debtors' counsel to minimize business and operational disruptions due to the bankruptcy filing; and (iii) analyzing the need for and propriety of the proposed $5.5 billion debtor in possession financing (the "DIP Financing"). In the ensuing weeks, Milbank also advised the Committee in: (i) working with the Debtors to markedly improve their short term incentive plan ("STIP") for their employees; (ii) assisting in litigation with the Federal Energy Regulatory Commission ("FERC") to determine jurisdictional

issues regarding potential future contract rejections; and (iii) helping secure an appropriately limited initial extension of the Debtors' exclusivity.

2. Milbank attorneys have appeared on behalf of the Committee at all of the Debtors' omnibus and telephonic hearings, meetings, depositions and conferences, and drafted and filed on behalf of the Committee numerous pleadings, including objections, statements, discovery requests, notices, and stipulations. Milbank litigators have also taken a leading role in all aspects of numerous adversary proceedings.

3. These efforts have allowed the Committee to carry out its fiduciary responsibilities to the Debtors' unsecured creditors while also allowing the Debtors' cases to be administered efficiently and economically for the benefit of all parties in interest. The professional services performed and expenses incurred by Milbank were actual and necessary to preserve and maximize the value of the Debtors' estates.

4. In light of the size, complexity and nature of these cases, Milbank's charges for professional services performed and expenses incurred are reasonable under the applicable standards. Milbank respectfully requests that the Court grant this First Interim Application and allow interim compensation for professional services and reimbursement for expenses as requested herein.

## **BACKGROUND**

5. Bankruptcy Filing. On January 29, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On February 1, 2019 the Court entered an order consolidating these cases for procedural purposes only [Docket No. 207].

6.      Creditors' Committee. On February 12, 2019, the United States Trustee for the Northern District of California (the "U.S. Trustee") appointed the Committee [Docket No. 409]. The Committee currently consists of the following nine members: (i) BOKF, N.A., as indenture trustee under unsecured bond indentures; (ii) The Davey Tree Expert Company, Davey Tree Surgery Company, and DRG, Inc.; (iii) Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as indenture trustee; (iv) G4S Secure Solutions (USA) Inc. and G4S Secure Integration LLC; (v) International Brotherhood of Electrical Workers, Local 1245; (vi) Mizuho Bank, Ltd.; (vii) NextEra Energy, Inc.; (viii) Pension Benefit Guaranty Corporation; and (ix) Roebbelen Contracting, Inc.[1]

7.      Jurisdiction. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code.

8.      Authorization for Milbank's Retention. On April 3, 2019, the Committee filed its *Application to Employ Milbank LLP as Counsel to the Official Committee of Unsecured Creditors, Effective as February 12, 2019* [Docket No. 1208] (the "Retention Application"). In connection with the Retention Application, Milbank filed the *Declaration of Thomas R. Kreller in Support of Application to Employ Milbank LLP as Counsel to the Official Committee of Unsecured Creditors, Effective as of February 12, 2019* (the "Kreller Declaration") [Docket No. 1210]. On April 29, 2019, the Court authorized Milbank's retention as counsel to the Committee. The Retention Order provides that Milbank will be compensated on an hourly basis for services rendered to the Committee and reimbursed for actual and necessary out-of-pocket expenses. This First Interim Application is Milbank's first interim application for the payment of its fees and reimbursement

---

[1]      Western Asset Management Company, LLC has resigned from the Committee.

of its expenses as well the release of the twenty-percent holdback (the "Holdback") maintained during the Compensation Period.  Milbank is not holding, and has not held, any retainer in connection with these cases or work performed on behalf of the Committee.

9.    Fee Examiner.  On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner (the "Fee Examiner") in these cases [Docket No. 2267].  Milbank is in the process of providing information to the Fee Examiner as requested and necessary for the Fee Examiner to evaluate the reasonableness of the compensation sought in this First Interim Application.

10.    Status of Cases.    The Debtors are continuing their operations as debtors in possession.  No plan or disclosure statement has yet been filed.

11.    Monthly Fee Statements.  In accordance with the Interim Compensation Order, each Retained Professional (as defined therein) is required to file monthly fee statements.  To the extent there are no objections to a monthly fee statement, the relevant Retained Professional is authorized to file a certification of no objection, after which the Debtors are authorized to pay such professional eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in such monthly fee statement.  Interim Compensation Order, ¶ 2(f).  Pursuant to the Interim Compensation Order, Milbank submitted the following monthly fee statements (each a "Monthly Fee Statement"):

a.  On May 24, 2019, Milbank filed its first fee statement for the period from February 12, 2019 through and including February 28, 2012 [Docket No. 2219] (the "First Fee Statement").  The First Fee Statement sought: (i) compensation for services rendered, in the amount of $1,579,807.00; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $17,428.27.

b. On June 21, 2019, Milbank filed its second fee statement for the period from March 1, 2019 through and including March 31, 2019 [Docket No. 2707] (the "Second Fee Statement"). The Second Fee Statement sought: (i) compensation for services rendered, in the amount of $2,154,205.25; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $88,823.53.

c. On July 12, 2019, Milbank filed its third fee statement for the period from April 1, 2019 through and including April 30, 2019 [Docket No. 2950] (the "Third Fee Statement"). The Third Fee Statement sought: (i) compensation for services rendered, in the amount of $1,893,348.75; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $65,490.56.

d. On July 18, 2019, Milbank filed its fourth fee statement for the period from May 1, 2019 through and including May 31, 2019 [Docket No. 3071] (the "Fourth Fee Statement"). The Fourth Fee Statement sought: (i) compensation for services rendered, in the amount of $1,656,740.25; and (ii) reimbursement of actual and necessary expenses incurred in connection with such services, in the amount of $54,237.67. [2]

12. Milbank has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional

---

[2] The objection deadlines for the First Fee Statement and the Second Fee Statement expired on June 14, 2019 and July 12, 2019, respectively. No objections were filed with respect to either the First or Second Fee Statements, and a *Certificates of No Objection* has been filed with respect to each [Docket Nos. 2565 and 2976, respectively]. The objection deadlines with respect to the Third Fee Statement and the Fourth Fee Period have not yet passed, thus, the amounts requested therein have not yet been allowed. To date, no objections have been filed with respect to either fee statement.

services rendered in the Chapter 11 Cases. No promises have been received by Milbank or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## RELIEF REQUESTED

13.     By this First Interim Application, Milbank seeks: (i) interim allowance and award of 100% of the compensation for professional services rendered by Milbank, as counsel to the Committee, during the Compensation Period in the amount of $7,284,101.25; (ii) reimbursement of actual and necessary expenses incurred by Milbank in connection with such services during the Compensation Period in the amount of $225,980.03; and (iii) the release of the Holdback.

14.     As stated in the certification (the "Kreller Certificate") attached hereto as **Exhibit G**, which certifies Milbank's compliance with the Fee Guidelines, all of the services for which compensation is sought herein were rendered solely for or on behalf of the Committee in connection with these cases.

15.     Pursuant to the Interim Compensation Order, Milbank has already received payment for the Compensation Period in the total amount of $1,281,273.87. Milbank seeks further payment of $6,228,807.41 pursuant to this First Interim Application, which amount represents the portion of Milbank's fees for legal services rendered and expenses incurred during the Compensation Period not previously paid to Milbank pursuant to the Monthly Fee Statements.

16.     The fees sought by this First Interim Application reflect an aggregate of 7,055.20 hours of attorney and paraprofessional time spent and recorded in performing services to the Committee during the Compensation Period, at a blended average hourly rate of $1,032.44 for both attorneys and paraprofessionals. The blended hourly rate for attorneys only is $1,055.49.

17.     The fees charged by Milbank in these cases are billed in accordance with Milbank's existing billing rates and procedures in effect during the Compensation Period. The rates Milbank charges for the services rendered by its professionals in these cases generally are the same rates

Milbank charges for professional services rendered in comparable bankruptcy and non-bankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive legal market.

18. Copies of Milbank's invoices detailing the services rendered and expenses incurred during the Compensation Period are attached to the Monthly Fee Statements, which have been filed on the docket and furnished to the Debtors, counsel to the Official Committee of Tort Claimants (the "Tort Committee"), the U.S. Trustee and the Fee Examiner. Milbank is in the process of providing the Fee Examiner with the Monthly Fee Statements in an electronic LEDES format Milbank believes is acceptable to the Fee Examiner.

19. Milbank has made every effort to ensure that this First Interim Application complies with the Fee Guidelines to the extent applicable.

**SUMMARY OF PROFESSIONAL SERVICES RENDERED**

20. In the ordinary course of its practice, Milbank maintains written records of the time expended by professionals and paraprofessionals in the rendition of professional services.[3] A chart showing the name of each relevant professional or paraprofessional, each attorney's year of bar admission, the aggregate time expended by each such professional or paraprofessional, the hourly billing rate for each such professional or paraprofessional in effect during the Compensation Period, and the amount requested for each such professional or paraprofessional is attached hereto as **Exhibit A**. A schedule of the project categories and amounts for which compensation is requested in each category is attached hereto as **Exhibit B**.

---

[3] Copies of these computerized records (as modified to address privileged and confidential matters) have been filed on the docket with the Monthly Fee Statements and furnished to the Debtors, the Tort Committee, the U.S. Trustee, and will be provided to the Fee Examiner in the format specified by the Fee Guidelines.

8

21.     In the ordinary course of its practice, Milbank also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the performance of professional services, all of which are available for inspection. A detailed summary of the expenses incurred during the Compensation Period is attached hereto as **Exhibit C**.

22.     Milbank respectfully submits that the services that it has rendered on behalf of the Committee during the Compensation Period were necessary and appropriate and have directly contributed to the effective administration of these cases.

23.     Annexed hereto as **Exhibit D** is a summary and comparison of the aggregate blended hourly rates billed by Milbank's timekeepers in all domestic offices to non-bankruptcy matters during the preceding fiscal year and the blended hourly rates billed to the Debtors during the Compensation Period.

24.     Milbank discussed its rates, fees, and staffing with the Committee at the outset of its retention in these cases. Milbank provided the Committee with the *Budget for Milbank LLP, Counsel to the Official Committee of Unsecured Creditors of PG&E Corporation and Pacific Gas and Electric Company for the Period from February 12, 2019 through May 31, 2019* (the "Budget") and the *Staffing Plan for Milbank LLP, Counsel to the Official Committee of Unsecured Creditors of PG&E Corporation and Pacific Gas and Electric Company, for the Period from February 12, 2019 through May 31, 2019* (the "Staffing Plan") attached hereto as **Exhibit E**. The Committee is aware of the complexities of these cases, the many issues that need to be addressed, the various disciplines involved, and that the staffing needs are dynamic and based on a number of factors, many of which are unpredictable, including the activities of other parties in interest in these cases. **Exhibit F** is a summary of fees and hours budgeted compared to fees and hours billed. Lastly, **Exhibit G** is the Certification of Thomas R. Kreller, certifying certain matters addressed in the Interim Compensation Order.

**Summary of Services Performed by
Milbank by Project Code**

25.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed. Rather, it merely highlights certain project billing categories areas in which significant services were rendered by Milbank, as well as identifies some of the issues Milbank was required to address. Detailed descriptions of the day-to-day services provided by Milbank and the time expended performing such services in each project billing category were attached as exhibits to the Monthly Fee Statements. Such detailed descriptions demonstrate that Milbank was heavily involved in the performance of services for the Committee on a daily basis, including night and weekend work, often under extreme time constraints, to meet the needs of the Committee.

**Automatic Stay**
(Fees: $131,882.00; Hours: 135.10)

26.     During the Compensation Period, Milbank attorneys reviewed various motions to either: (i) lift the automatic stay or (ii) find that the automatic stay did not apply, including those filed by, among others: (i) Enel Green Power North America Inc.; (ii) esVolta, LP; (iii) mNoc AERS LLC; (iv) Valero Refining Company; (v) Kevin Thompson and Mia Nash; (vi) Philip Verwey; (vii) Mikhail and Marina Gelman; and (viii) the City and County of San Francisco (collectively, the "Stay Motions"). In connection with the Stay Motions, Milbank drafted memorandum to the Committee regarding the issues raised therein, appeared at hearings regarding such motions, researched legal issues where necessary, worked with the Debtors to resolve the Stay Motions, and, where appropriate, filed statements in support of the Debtors' position.

**Bankruptcy Litigation**
(Fees: $944,981.00 ; Hours: 1,069.00)

27.     During the Compensation Period, Milbank attorneys engaged in various litigation and discovery related activities in connection with: (i) the adversary proceeding initiated by the

Debtors for a preliminary injunction against the FERC (Adv. Pro. 19-03003); (ii) the Herdon class action (Adv. Pro. 19193995); (iii) the subrogation litigation (Adv. Pro. 19-03015); (iv) the motion filed by TURN for the appointment of a ratepayers' statutory committee; (iv) the Debtors' motion to dismiss certain the Camp fire adversary proceeding; and (v) the Debtors' various "first day" motions. These tasks included reviewing the underlying pleadings and proposed orders to evaluate and address the potential impacts upon the Debtors and the Committee, research into the relevant issues, diligencing factual issues, drafting related memoranda for the Committee and preparing and filing pleadings in support of the Committee's positions, such as: (i) a statement with respect to the "first day" motions [Docket No. 610]; (ii) motion to intervene in the FERC adversary proceeding [Adv. Pro. Docket No. 96] (which was granted); and (iii) an objection to the establishment of a ratepayer's committee [Docket No. 1653] (which was successful).

28. In addition, Milbank also filed two additional objections: (i) an objection with respect to the Debtors' motion to extend the exclusive periods [Docket No. 2009]; and (ii) a limited objection to the Debtors' *Motion Pursuant to Sections 105(a) and 362 for Interim and Final Orders Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Stock of, and Claims Against, the Debtors* (the "NOL Motion") [Docket No. 10]. Following the filing of these objections: (i) the Court shortened the Debtors' requested exclusivity period by two months on the Committee's recommendation; and (ii) the Debtors and the Committee agreed to important changes that significantly improved the marketability of the Debtors' securities.

**Case Administration**
(Fees: $258,097.00; Hours: 290.30)

29. During the Compensation Period, Milbank expended substantial time attending to various case administrative matters, including among other things: (i) preparing and updating an internal calendar of critical dates for the Committee; (ii) maintaining an internal task list to monitor the status of pending matters; (iii) coordinating critical work streams among Milbank attorneys

and the Committee's various other advisors; and (iv) reviewing the docket for new pleadings and distributing such filings to the team and Committee along with summaries of such pleadings.

### Communications with Client
(Fees: $471,370.50; Hours: 438.00)

30.     During the Compensation Period, in coordination with the Committee's financial advisors, Milbank attorneys spent a substantial amount of time coordinating, preparing materials for (including meeting agendas, factual and legal memoranda, summaries, and presentations) Committee meetings.  In advance of such meetings, Milbank attorneys drafted memoranda for the Committee summarizing and providing analyses and recommendations with respect to each substantive matter that was scheduled for an upcoming hearing or was otherwise active.  Milbank attorneys also drafted substantive memoranda on a number of various case topics, including, among other things: (i) the Committee's fiduciary duties to the unsecured creditors; (ii) the Debtors' Butte County settlement motion regarding wildfire liability, (iii) lift stay issues; (iv) certain plan issues including various issues related to solvent debtors; (iv) each of the Debtors' substantive motions; and (v) the California legislative system.

31.     Milbank attorneys also prepared for and participated in numerous calls and other communications, including via email, with individual Committee members and their counsel, as well as the subcommittees established by the Committee, which include the: (i) Public Affairs Subcommittee; (ii) Business Operations Subcommittee; (iii) Wildfire Mitigation Subcommittee; and (iv) Wildfire Claims Subcommittee.

### Communications with Unsecured Creditors
(Fees: $66,132.50; Hours: 54.10)

32.     During the Compensation Period, Milbank attorneys researched, drafted, and filed a motion to establish creditor information protocols, which the Court granted on April 26, 2019 [Docket No. 1705].  In connection with such protocols, Milbank attorneys solicited proposals from various vendors and selected an information and noticing agent – Epiq Consulting, Inc. ("Epiq")

– to establish a website on behalf of the Committee to provide pertinent information regarding these cases to the Debtors' unsecured creditors.  Later, at the Court's direction, Milbank worked with the counsel to the Tort Committee to expand Epiq's role to also provide information to the constituents of the Tort Committee, as directed by the Court.  Milbank also worked with Epiq to update the Committee's website periodically.

33.     In addition, in accordance with the Committee's statutory duties under section 1102(b) of the Bankruptcy Code, Milbank attorneys responded electronically and telephonically to various inquires received from the Debtors' unsecured creditors regarding these cases.  Milbank also maintained frequent contact with [the U.S. Trustee and] advisors to major constituencies in these cases, including the Debtors, the Tort Committee, and various ad hoc unsecured creditor groups, to discuss open issues and upcoming matters important to the Committee, communicate the Committee's positions and seek mutually acceptable courses of action.

34.     Milbank attorneys also prepared for and participated in numerous in-person and telephonic meetings with the Tort Committee and the various ad hoc groups (or combinations thereof) to, among other things, discuss the ongoing administration and potential resolution of these cases.

**Committee Meetings**
(Fees: $636,899.50; Hours: 523.60)

35.     Given the significant size of the Debtors' cases and the sheer amount of materials that the Committee's advisors were tasked with handling, each week (and sometimes, on additional occasions) Milbank conducted a telephonic meeting with the Committee.  Milbank also conducted a number of in-person meetings with the Committee (collectively, with all telephonic meetings, the "Committee Meetings").  During Committee Meetings, Milbank attorneys discussed key issues with the Committee, including the upcoming matters scheduled for hearing by the Court.  Prior to such meetings, Milbank attorneys reviewed pending matters requiring the Committee's attention

13

and the underlying documentation and coordinated advice with the Committee's other professionals. Milbank attorneys also drafted agendas for all such meetings, and distributed pertinent information in advance to the Committee. Thereafter, Milbank discussed each of these matters with the Committee, as well as individual Committee members on separate occasions, and assisted the Committee in formulating a position with respect to each matter. Milbank also provided Committee members with sometimes daily update emails regarding the status of these cases.

### DIP Financing/Cash Management
(Fees: $193,772.00; Hours: 162.20)

36. One of the most significant "first day" issues related to the Debtors request for authorization to obtain $5.5 billion of secured, superpriority postpetition financing pursuant to their *Motion Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503 and 507, and Fed. R. Bankr. P. 2002, 4001, 6003, 6004 and 9014 for Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured, Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling Final Hearing, and (V) Granting Related Relief* (the "DIP Motion") [Docket No. 23]. Immediately upon the Committee's formation, Milbank and the Committee's financial advisors began to review the DIP credit agreement and an enormous amount of diligence regarding the DIP Motion, which required that the Committee's advisors work closely with the Committee and the Debtors' advisors, in order to understand the various aspects of the proposed financing, the Debtors' capital structure, funding needs and market conditions and comparables with respect to loans of this type and size. Among other things, Milbank and the Committee's other advisors specifically focused on the sizing of the DIP Financing. Milbank also reviewed the related cash management order and the Debtors' proposed DIP Order, and Milbank attorneys also appeared at the final hearing on the DIP Motion. Based on its review of all of the aspects of the DIP financing, the Committee ultimately came to

support the DIP Motion, and Milbank drafted and filed a *Statement of the Official Committee of Unsecured Creditors in Support of the Final Approval of the Debtors' DIP Motion* [Docket No. 835].

### Executory Contracts
(Fees: $123,790.00; Hours: 118.30)

37.     During the Compensation Period, Milbank attorneys spent considerable time and effort analyzing with the assistance of the Committee's financial advisor, FTI Consulting, Inc. ("FTI"), those executory contracts and unexpired leases that the Debtors determined to assume or reject.  Most importantly, the Committee closely reviewed the Debtors' motion (the "Quanta Motion") [Docket No. 1218] to assume certain agreements with Quanta Energy Services, LLC ("Quanta"), whereby the Debtors, among other things, sought to remit over $116 million to Quanta in cure payments.  Milbank and FTI spent considerable time diligencing the agreements, and when it failed to obtain the necessary information from the Debtors, filed a limited objection to the Quanta assumption [Docket No. 1555].

### General Case Strategy
(Fees: $1,118,223.50; Hours: 964.40)

38.     As Committee counsel, Milbank expended significant time organizing the Committee by, among other things: (i) conducting numerous calls, both internally, with Milbank attorneys, and externally, with the Committee's other professionals to discuss and analyze the "first-day" and other pending motions and applications, as well as other tasks and projects; (ii) corresponding with the Debtors and their advisors regarding various work streams and diligence items; and (iii) analyzing new pleadings filed on the bankruptcy docket.

39.     Further, on a weekly basis during the Compensation Period, Milbank attorneys led advisors-only calls with the Committee's financial advisors to prepare for regular Committee meetings and other matters.  During such calls, the Committee's advisors discussed general case strategy, issues that may be appropriate for special attention by the Committee and proposed

15

recommendations with respect to such issues. Also during the Compensation Period, Milbank attorneys drafted minutes to memorialize the Committee's resolutions during Committee meetings.

### Court Hearings
(Fees: $476,043.00; Hours 397.50)

40. During the Compensation Period, Milbank attorneys spent considerable time preparing for and attending (either in person or telephonically) all significant hearings and Court conferences in these cases and related adversary proceedings. Significant hearings were held with regard to: (i) the Debtors' request for final relief with respect to a panoply of "first day" motions (which included substantial DIP financing); (ii) the Debtors' complaint against the FERC for, among other things, a declaratory judgment and injunctive relief in connection with certain proceedings brought before FERC by several counterparties to whole power purchase agreements with the Debtors; (iii) motions from various parties for safe harbor protection; (iv) certain public entities' request to appoint an official committee of public entities; (v) the Debtors' hedging programs; (vi) the Debtors' STIP; (vii) applications to employ and retain professionals for each of the Debtors, the Committee, and the Tort Committee; (viii) TURN's motion for appointment of an official ratepayers committee; (ix) the Debtors' exclusivity extension motion; (x) the wildfire assistance program motion; and (xi) numerous motions by non-debtor parties to modify or lift the automatic stay, among other matters. Milbank attorneys communicated in advance of hearings with other parties in interest, including the Debtors, the Tort Committee, the various ad hoc unsecured creditor groups, and the U.S. Trustee regarding the relief requested and any issues raised thereby, in an effort to consensually resolve concerns prior to the applicable hearing. Given the nature of these cases, many matters went forward during the Compensation Period on a contested basis, necessitating active Committee participation to advance and protect the interests of its constituency. Moreover, because the issues that arose implicated numerous nuanced areas of the

law, the contribution of Milbank attorneys spanning multiple specialties was necessary to properly represent the Committee.

**Non-Working Travel**
(Fees: $122,467.75; Hours: 186.80)

41.     Non-working travel time spent by Milbank attorneys traveling to and from meetings, conferences, hearings and similar events in connection with Milbank's representation of the Committee was either not billed or charged at 50% of such attorney's normal billing rate. Most significantly, during the Compensation Period, Milbank attorneys were required to travel to and from San Francisco on a regular basis – sometimes making multiple trips in a single week – for court hearings, meetings with the Debtors and their respective advisors. Efforts were made to use travel time productively, for performing work for the estates or for other client-related matters, but this was not always possible or practicable.

**Retention/Fee Applications**
(Fees: $796,780.50; Hours: 823.00)

42.     Soon after its engagement, Milbank worked with the Committee and FTI to hire an investment banker to provide investing banking services to the Committee. After the Committee's selection of Centerview Partners LLC ("Centerview"), Milbank coordinated with the Committee, FTI, and Centerview to draft and/or finalize each professional firm's retention application and exhibits thereto, including engagement letters, conflict schedules and declarations, in addition to those for Milbank. Subsequently, the Committee determined to retain Axiom Advisors ("Axiom") as its government affairs consultant, given the significant legislative issues at play in these cases. As with FTI and Centerview, Milbank worked with the Committee and Axiom to file Axiom's retention papers. To the extent required by applicable bankruptcy law, each professional ran a conflicts check for purposes of disclosing relationships to parties potentially interested in these cases, a list of such parties having been supplied by the Debtors' advisors to Milbank. Given the voluminous nature of the list, significant time was required to be spent by Milbank attorneys

reviewing and analyzing the results of its conflicts search and making disclosures as appropriate in its retention application. Orders were entered approving the retention of each professional as follows: (i) Milbank [Docket No. 1766]; (ii) FTI [Docket No. 2252]; (iii) Centerview [Docket No. 2067]; and (iv) Axiom [Docket No. 1978].

**Tax Issues**
(Fees: $74,267.00; Hours: 69.90)

43.     During the Compensation Period, Milbank assisted the Committee with its review and analysis of various tax issues.

**Wildfire Claims and Treatment**
(Fees: $794,796.50; Hours: 783.60)

44.     Likely one of the most significant issues in the Debtors' cases will be the resolution and treatment of the various claims made by victims of the Northern California wildfires. During the Compensation Period, Milbank attorneys researched and addressed a host of issues for the Committee related to mass tort cases, including the claims estimation process, potential mechanisms or structures to address those claims and other liability issues. In addition, Milbank reviewed various issues related to the possible treatment of the wildfire claims. Further, the Committee's advisors spent substantial time reviewing the various proposed legislation in California meant to compensate the wildfire victims and to ensure the continued viability of California public utilities. Importantly, during the Compensation Period, the Debtors filed their *Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Fed. R. Bankr. P. 2002 and 6004(h) for an Order (A) Authorizing Debtors to Establish and Fund Program to Assist Wildfire Claimants with Alternative Living Expenses and Other Urgent Needs and (B) Granting Related Relief* (the "Housing Assistance Motion") [Docket No. 1777], whereby the Debtors sought to establish a $105 million fund for the benefit of wildfire victims. Milbank and the Committee's other advisors spent considerable time reviewing and diligencing the issues raised in the Housing Motion, and subsequently filed an Objection to the Housing Motion, seeking, among other things, certain

Case: 19-30088    Doc# 3117    Filed: 07/22/19    Entered: 07/22/19 07:27:34    Page 21 of 47

modifications to the Order to ensure that: (i) only victims affected by fires caused by the Debtors receive payments from the fund; and (ii) payments are credited so that victims did not receive double payments. Relatedly, Milbank also reviewed the Tort Committee's cross motion seeking to, among other things, increase the size of the Wildfire Recovery Fund to $250 million. Milbank attorneys negotiated with both the Debtors and the Tort Committee, and through these efforts the Debtors made certain modifications to the program. Additionally, Milbank also spent considerable time reviewing the Wildfire Mitigation Plan, which was approved by the State of California and linked by the Debtors to their STIP Motion, discussed below.

**Employment Issues**
(Fees: $310,510.00; Hours: 311.00 )

45.     During the Compensation Period, the Debtors sought a variety of employee-related relief, including with respect to: (i) the payment of prepetition wages, salaries, withholding obligations and other compensation and benefits and the continuation of employee benefits programs; and (ii) a STIP for the 2019 fiscal year. Given the size and scope of the STIP, with the assistance of FTI, Milbank conducted substantial diligence on the proposed terms of the program, prepared written analyses for the Committee, and engaged in extensive negotiations with the Debtors for improved terms, while also preparing an objection and supporting documents to the extent an acceptable compromise was not reached. Following the Committee's filing of a limited objection to the STIP, and after numerous weeks of diligence, analysis, and productive negotiations, the Committee reached a resolution with the Debtors for significant improvements to be made to the program, which the Court ultimately approved.

## ALLOWANCE OF COMPENSATION

46.     In light of the size and complexity of these Chapter 11 Cases, the professional services rendered by Milbank required the expenditure of substantial time and effort by a large but lean team of attorneys and a high degree of professional competence and expertise across multiple

specialties. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited unsecured creditors and the Debtors' estates.

47. The interim allowance of compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in Bankruptcy Code section 331:

> … any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

48. With respect to the level of compensation, Bankruptcy Code section 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered[.]" See In re Manoa Finance Co., 853 F.2d 687, 689 (9th Cir. 1988) (stating that section 330 authorizes reasonable compensation for certain services and costs). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The clear Congressional intent and policy expressed by the statute is to

provide for adequate compensation to professionals in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases. In re Fleming Cos., 304 B.R. 85, 92 (Bankr. D. Del. 2003) ("in enacting the Bankruptcy Code provisions which allow compensation to attorneys, Congress sought to encourage qualified attorneys to develop bankruptcy expertise by assuring that they would be compensated at the *same level* as their peers in other practice areas.").

49.     The total time spent by Milbank attorneys and paraprofessionals during the Compensation Period was 7,055.20 hours and has a fair market value of $7,284,101.25.   As demonstrated by this First Interim Application and supporting exhibits, Milbank submits that its services were rendered economically and without unnecessary duplication of efforts. In addition, the work involved, and thus the time expended, was carefully assigned in consideration of the experience and expertise required for each particular task.  The compensation requested in the First Interim Fee Application is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

50.     As reflected in this First Interim Fee Application and the supporting documents, Milbank spent its time efficiently and without unnecessary duplication of time. Nonetheless, Milbank has voluntarily agreed to reduce its fees during the Compensation Period in the amount of $757,811.00 (the "Voluntary Reduction").[4]

### **EXPENSES**

51.     Bankruptcy Code Section 330 also authorizes "reimbursement for actual, necessary expenses" incurred by a retained professional. 11 U.S.C. § 330(a)(1)(B). "Once documented, 'actual and necessary expenses' are automatically reimbursable."  In re Wendy's of Montana, Inc., 111 B.R. 314, 315 (Bankr. N.D. Mont. 1988).  Milbank seeks reimbursement for actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in

---

[4]     Milbank reserves the right to seek allowance of all or a portion of such fees in connection with its final fee application or in advance thereof.

Case: 19-30088   Doc# 3117   Filed: 07/22/19   Entered: 07/22/19 07:27:34   Page 24 of 47

the sum of $225,980.03. The disbursements have been incurred in accordance with Milbank's normal practice of charging clients for expenses clearly related to and required by particular matters. In accordance with section 330 of the Bankruptcy Code, Milbank seeks reimbursement only for the actual cost of such expenses to Milbank. Milbank charges for these expenses at rates consistent with those charged to Milbank's other bankruptcy clients, which rates are equal to or less than the rates charged by Milbank to its non-bankruptcy clients. Milbank has minimized these expenses to the greatest extent possible. A detailed summary of the expenses is attached hereto as **Exhibit C**. Copies of supporting documentation for the out-of-pocket expenses (receipts, statements, invoices, etc.) will be provided to the Court, the U.S. Trustee and the Fee Examiner upon request.

52.     Milbank's hourly billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. Milbank believes that it is more appropriate to charge each client only for the expenses actually incurred in performing services therefor.

53.     Milbank seeks reimbursement at the following rates for the following expenses: (i) ten cents ($0.10) per page for photocopying; (ii) ten cents ($0.10) per page for black and white printing; and (iii) ten cents ($0.10) per page for color printing. Milbank's charges for internal duplicating are well below the $.50 per page rate authorized by statute for copies made by the clerks of the United States Courts. See 28 U.S.C. § 1914(b); Judicial Conference Schedule of Fees n. 4. Milbank currently does not charge for facsimile transmissions. Milbank has negotiated a discounted transactional rate for computer assisted legal research. Milbank is not seeking reimbursement of hourly fees of its secretarial services in this First Interim Fee Application. Further, in providing or obtaining from third parties services that are reimbursable by clients,

Milbank does not include in such reimbursable amount any costs of investment, equipment, or capital outlay.

54.     Throughout the Compensation Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

**NO FEE SHARING; DISINTERESTEDNESS OF MILBANK;**
**NO PRIOR APPLICATIONS**

55.     No agreement or understanding exists between Milbank and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

56.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**RESERVATION OF RIGHTS**

57.     Although every effort has been made to include all fees and expenses incurred during the Compensation Period, some fees and expenses incurred during the period might not be included in this First Interim Fee Application due to delays caused in connection with the accounting and processing of such time and expenses.  Accordingly, Milbank reserves the right to make further application to this Court for allowance of such fees and expenses incurred during this Compensation Period but not included herein.

**NOTICE**

58.     No trustee or examiner has been appointed in the Chapter 11 Cases.  Pursuant to the Interim Compensation Order, notice of this Application has been served upon: (i) the Debtors c/o Pacific Gas & Electric Company, 77 Beale Street, San Francisco, CA 94105 (Attn: Janet Loduca, Esq.); (ii) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. and Rachael Foust, Esq.) and Keller & Benvenutti LLP, 650 California Street, Suite 1900, San Francisco, CA 94108 (Attn: Tobias S.

23

Keller, Esq. and Jane Kim, Esq.); (iii) the Office of the United States Trustee for Region 17, 450 Golden Gate Avenue, 5th Floor, Suite #05-0153, San Francisco, CA 94102 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); and (iv) counsel for the Official Committee of Tort Claimants, Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509 (Attn: Eric Sagerman, Esq. and Cecily Dumas, Esq.).

## **CONCLUSION**

WHEREFORE, Milbank respectfully requests that the Court enter an order: (i) allowing Milbank (a) interim compensation for professional services rendered as counsel for the Committee during the Compensation Period in the amount of $7,284,101.25; and (b) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $225,980.03, for a total award of $7,510,081.28; (ii) authorizing and directing the Debtors to pay (to the extent not previously paid in accordance with the Interim Compensation Order) to Milbank $6,228,807.41 which is an amount equal to the difference between (a) this $7,510,081.28 award; and (b) $1,281,273.87, the total of all amounts that the Debtors have previously paid to Milbank pursuant to the Interim Compensation Order for services rendered and expenses incurred during the Compensation Period; and (iii) granting such further relief as is just and appropriate.

Dated: July 22, 2019

Respectfully submitted,

MILBANK LLP

By: */s/ Dennis F. Dunne*
Dennis F. Dunne (admitted pro hac vice)
Samuel A. Khalil (admitted pro hac vice)
Gregory A. Bray
Thomas R. Kreller

*Counsel for the Official Committee of Unsecured Creditors*

24

## EXHIBIT A

## COMPENSATION BY PROFESSIONAL

    The attorneys who rendered professional services in these chapter 11 cases from February 12, 2019 through May 31, 2019 (the "Fee Period") are:

| NAME OF PROFESSIONAL PARTNERS AND COUNSEL: | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Paul Aronzon | Financial Restructuring | 1979 | $1,540 | 191.50 | $294,910.00 |
| William Bice | Global Project, Energy and Infrastructure Finance | 1996 | $1,540 $770* | 146.80 9.00 | $226,072.00 $6,930.00 |
| Gregory Bray | Financial Restructuring | 1984 | $1,540 $770* | 462.50 19.20 | $712,250.00 $14,784.00 |
| Dennis Dunne | Financial Restructuring | 1991 | $1,540 | 211.80 | $326,172.00 |
| Russell Kestenbaum | Tax | 1999 | $1,540 | 31.80 | $48,972.00 |
| Thomas Kreller | Financial Restructuring | 1992 | $1,540 $770* | 294.40 35.60 | $453,376.00 $27,412.00 |
| Andrew Leblanc | Litigation | 2000 | $1,540 $770 | 162.60 51.90 | $250,404.00 $39,963.00 |
| Eric Moser | Alternative Investments | 1991 | $1,540 | 1.40 | $2,156.00 |
| Adam Moses | Global Corporate | 2002 | $1,540 | 9.80 | $15,092.00 |
| Michael Nolan | Litigation | 1992 | $1,540 | 28.80 | $44,352.00 |
| Albert Pisa | Alternative Investments | 1997 | $1,540 | 6.50 | $10,010.00 |
| Alan Stone | Litigation | 1988 | $1,540 | 57.80 | $89,012.00 |
| Karen Wong | Global Project, Energy and Infrastructure Finance | 1986 | $1,540 | 3.80 | $5,852.00 |
| Samuel Khalil | Financial Restructuring | 2004 | $1,425 $712.5* | 60.00 7.60 | $85,500.00 $5,415.00 |
| Manan Shah | Tax | 2002 | $1,425 | 37.90 | $54,007.50 |
| Michael Price | Financial Restructuring | 2011 | $1,155 | 10.40 | $12,012.00 |
| Jennifer Harris | Alternative | 2000 | $1,120 | 3.90 | $4,368.00 |

Case: 19-30088   Doc# 3117   Filed: 07/22/19   Entered: 07/22/19 07:27:34   Page 28 of 47

| NAME OF PROFESSIONAL PARTNERS AND COUNSEL: | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| | Investments | | | | |
| Craig Price | Financial Restructuring | 2000 | $1,120 | 689.50 | $772,240.00 |
| | | | $1,120 | 152.40 | $170,688.00 |
| | | | $995 | 326.30 | $324,668.50 |
| | | | $560* | 12.70 | $7,112.00 |
| Samir Vora | Litigation | 2007 | $497.5* | 5.50 | $2,736.25 |
| | | | | | |
| **Total Partners and Counsel:** | | | **$1,321.66** | **3,031.40** | **$4,006,466.25** |

2

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT | YEAR ADMITTED* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Lena Mandel | Financial Restructuring | 1991 | $1,080 | 69.70 | $75,276.00 |
| Jason Anderson | Global Corporate | 2009 | $995 | 9.30 | $9,253.50 |
| Kamel Malik Aitelaj | Litigation | 2008 | $995 | 39.30 | $39,103.50 |
| James Beebe | Tax | 2011 | $995 | 20.30 | $20,198.50 |
| Nicholas Deluca | Tax | 2009 | $995 | 1.00 | $995.00 |
| Daniel Denny | Financial Restructuring | 2005 | $995 | 258.10 | $256,809.50 |
|  |  |  | $497.5* | 17.10 | $8,507.25 |
| Yigal Gross | Alternative Investments | 2015 | $995 | 6.30 | $6,268.50 |
| James Behrens | Financial Restructuring | 2015 | $955 | 13.10 | $12,510.50 |
| Erin Dexter | Litigation | 2014 | $920 | 143.40 | $131,928.00 |
| Rachael Franzoia | Financial Restructuring | 2013 | $920 | 384.00 | $353,280.00 |
|  |  |  | $460* | 7.50 | $3,450.00 |
| Matthew Koch | Financial Restructuring | 2014 | $920 | 650.20 | $598,184.00 |
| Parker Milender | Financial Restructuring | 2014 | $920 | 55.30 | $50,876.00 |
| Katherine Pierucci | Litigation | 2014 | $920 | 65.60 | $60,352.00 |
| Jordan Weber | Financial Restructuring | 2015 | $920 | 268.90 | $247,388.00 |
| Christina Skaliks | Tax | 2015 | $875 | 22.10 | $19,337.50 |
| Julie Wolf | Litigation | 2016 | $875 | 455.90 | $398,912.50 |
| Emile Ayoub | Litigation | 2017 | $830 | 71.80 | $59,594.00 |
| Archan Hazra | Tax | 2017 | $830 | 18.70 | $15,521.00 |
| Kavon Khani | Litigation | 2017 | $830 | 199.60 | $165,668.00 |
| Adeola Adeyosoye | Financial Restructuring | 2018 | $735 | 25.40 | $18,669.00 |
| Julia Duke | Litigation | 2018 | $735 | 273.00 | $200,655.00 |
| Will Clark Farmer | Litigation | 2017 | $735 | 4.30 | $3,160.50 |
| Luis Orengo | Litigation | 2018 | $735 | 118.10 | $86,803.50 |
| Henry Seeley | Global Project, Energy and Infrastructure | 2018 | $735 | 60.80 | $44,688.00 |

2

| | | | | | |
|---|---|---|---|---|---|
| | Finance | | | | |
| Stephen Benz | Litigation | 2019 | $595 | 26.10 | $15,529.50 |
| Margherita Capolino | Litigation | 2019 | $595 | 56.80 | $33,796.00 |
| Rachael Connelly | Global Corporate | 2018 | $595 | 19.10 | $11,364.50 |
| Colette Gulick | Global Project, Energy and Infrastructure Finance | 2018 | $595 | 7.00 | $4,165.00 |
| Benjamin Heller | Tax | 2018 | $595 | 19.00 | $11,305.00 |
| Erin Hood | Alternative Investments | 2019 | $595 | 4.50 | $2,677.50 |
| Danielle Lee | Litigation | 2019 | $595 | 114.10 | $67,889.50 |
| Aaron Metviner | Financial Restructuring | 2018 | $595 | 8.90 | $5,295.50 |
| Julia Wu | Litigation | 2018 | $595 $297.5* | 197.00 20.70 | $117,215.00 $6,158.25 |
| Joshua Zimberg | Litigation | 2019 | $595 | 66.40 | $39,508.00 |
| | | | | | |
| **Total Associates:** | | | **$843.06** | **3,798.40** | **$3,202,293.00** |

3

| NAME OF PARAPROFESSIONALS: | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Angel Anderson | Litigation | $350 | 10.50 | $3,675.00 |
| Abayomi Ayandipo | Litigation | $350 | 38.10 | $13,335.00 |
| Jenifer Gibbs | Litigation | $350 | 11.30 | $3,955.00 |
| David McCracken | Litigation | $350 | 20.30 | $7,105.00 |
| Ishmael Taylor-Kamara | Financial Restructuring | $300 | 4.80 | $1,440.00 |
| Charmaine Thomas | Financial Restructuring | $300 | 62.20 | $18,660.00 |
| Ricky Windom | Litigation | $300 | 4.40 | $1,320.00 |
| Jacqueline Brewster | Financial Restructuring | $290 | 28.80 | $8,352.00 |
| Brandon Fiscina | Litigation | $250 | 27.00 | $6,750.00 |
| Cecelia Kim | Financial Restructuring | $235 | 1.70 | $399.50 |
| James Liles | Practice Support | $635 | 16.30 | $10,350.50 |
| | | | | |
| **Total Paraprofessionals and other non-legal staff:** | | **$334.26** | **225.40** | **$75,342.00** |

| PROFESSIONALS TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Counsel | 1,321.66 | 3,031.40 | $4,006,466.25 |
| Associates | 843.06 | 3,798.40 | $3,202,293.00 |
| Paraprofessionals and other non-legal staff | 334.26 | 225.40 | $75,342.00 |
| **Blended Attorney Rate** | **1,055.49** | **6,829.80** | **$7,208,759.25** |
| **Total Fees Incurred** | **1,032.44** | **7,055.20** | **$7,284,101.25** |

Case: 19-30088   Doc# 3117   Filed: 07/22/19   Entered: 07/22/19 07:27:34   Page 32 of 47

**EXHIBIT B**

**COMPENSATION BY PROJECT CATEGORY**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| 00002 Asset Sales/363 Sales | 3.20 | $3,518.50 |
| 00003 Automatic Stay | 135.10 | $131,882.00 |
| 00004 Bankruptcy Litigation | 1,069.00 | $944,981.00 |
| 00005 Bar Date | 102.20 | $125,984.50 |
| 00007 Case Administration (Dockets updates, WIP and calendar) | 290.30 | $258,097.00 |
| 00008 CCA and Aggregator Issues | .40 | $368.00 |
| 00009 Plan of Reorganization | 50.90 | $49,481.50 |
| 00010 Communications with Client | 438.00 | $471,370.50 |
| 00011 Communications with Unsecured Creditors | 54.10 | $66,132.50 |
| 00012 Committee Meetings | 523.60 | $636,899.50 |
| 00013 Committee Governance | 80.90 | $98,239.50 |
| 00014 Corporate Governance and Board Issues | 84.00 | $84,871.50 |
| 00015 Customer, Supplier and Vendor Issues | 29.80 | $30,080.00 |
| 00016 DIP Financing/Cash Management | 162.20 | $193,772.00 |
| 00017 Executory Contracts/Lease issues | 118.30 | $123,790.00 |
| 00018 General Case Strategy(includes calls with client and team calls and meetings) | 964.40 | $1,118,223.50 |
| 00020 Court Hearings | 397.50 | $476,043.00 |
| 00022 Non-Bankruptcy Litigation | 119.60 | $105,591.00 |
| 00023 Non-Working Travel | 186.80 | $122,467.75 |
| 00026 Regulatory, Political and Legislative | 11.70 | $16,191.00 |
| 00027 CPUC | 90.00 | $91,096.00 |
| 00028 FERC | 62.40 | $64,667.50 |
| 00029 Retention/Fee Applications | 823.00 | $796,780.50 |
| 00030 Retention/Fee Applications Ordinary Course | 3.00 | $2,257.50 |
| 00032 Subrogation Issues | 52.40 | $44,503.00 |

| | | |
|---|---|---|
| 00034 Tort Committee | 18.10 | $26,716.00 |
| 00034 Tax Issues | 69.90 | $74,267.00 |
| 00036 U.S. Trustee | 19.80 | $20,523.00 |
| 00038 Wildfire Claims and Treatment | 783.60 | $794,796.50 |
| 00039 Employee Benefits/Severance Issues | 311.00 | $310,510.00 |
| **Total** | **7,055.20** | **$7,284,101.25** |

# EXHIBIT C

## EXPENSE SUMMARY

| Expense Category | Total Expenses |
|---|---|
| Airfreight/Messenger | $2,204.66 |
| Cab Fares/Local Transportation | $7,198.58 |
| Computerized Database Research | $139,993.27 |
| Lodging | $26,399.25 |
| Meals | $6,464.82 |
| Photocopies/Printing | $12,800.94 |
| Telephone | $4,797.13 |
| Transcript Expenses | $4,270.75 |
| Travel | $21,850.63 |
| **TOTAL** | **$225,980.03** |

# EXHIBIT D

## CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES

| Category of Timekeeper | Blended Hourly Rate | |
|---|---|---|
| | **Billed Firm-wide for preceding Fiscal year (FY2018)[1]** | **Billed February 12, 2019 through May 31, 2019** |
| Partner | $1,329.38 | $1,479.91 |
| Counsel | $1,053.49 | $1,076.80 |
| Associate | $753.07 | $843.06 |
| Paralegal | $281.10 | $334.26 |
| Aggregated | $869.72 | $1,032.44 |

---

[1]    As requested in the U.S. Trustee Guidelines, the calculations in this column exclude members of Milbank's Financial Restructuring Group.

1

**EXHIBIT E**

2

**BUDGET AND STAFFING PLAN**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | | |
|---|---|---|
| 1 | **UNITED STATES BANKRUPTCY COURT** | |
| 2 | **NORTHERN DISTRICT OF CALIFORNIA** **SAN FRANCISCO DIVISION** | |

| | | |
|---|---|---|
| 3 | **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| 4 | **PG&E CORPORATION** | Chapter 11 |
| 5 | **- and -** | (Lead Case) (Jointly Administered) |
| 6 | **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| 7 | **Debtors.** | |

| | | |
|---|---|---|
| 8 | ☐     Affects PG&E Corporation | **BUDGET FOR MILBANK LLP AS COUNSEL TO THE OFFICIAL** |
| 9 | ☐     Affects Pacific Gas and Electric | **COMMITTEE OF UNSECURED CREDITORS OF PG&E CORPORATION** |
| 10 | Company | **AND PACIFIC GAS AND ELECTRIC COMPANY FOR THE PERIOD** |
| 11 | ☑     Affects both Debtors | **FEBRUARY 12, 2019 THROUGH MAY 31, 2019** |
| 12 | *\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

Date Retention Approved: <u>April 29, 2019 *nunc pro tunc* to February 12, 2019</u>

| PROJECT CATEGORY | ESTIMATED HOURS | ESTIMATED FEES[1] |
|---|---|---|
| Administrative Expense Claims (00001) | 50 | $51,486.50 |
| Asset Sales/363 Sales (00002) | 5 | $5,148.65 |
| Automatic Stay (00003) | 150 | $154,459.50 |
| Bankruptcy Litigation (00004) | 1,800 | $1,853,514.00 |
| Bar Date (00005) | 90 | $92,675.70 |
| Claims Reconciliation/Objections (00006) | 15 | $15,445.95 |
| Case Administration (Docket Updates, WIP and calendar) (00007) | 425 | $437,635.25 |
| CCA and Aggregator Issues (00008) | 10 | $10,297.30 |
| Plan of Reorganization (00009) | 25 | $25,743.25 |

---

[1]     The estimated fees contained herein are calculated by multiplying the estimated hours by $1,029.73, the average blended rate of the Milbank professionals and paraprofessionals working on these cases for the month of February 2019.

| PROJECT CATEGORY | ESTIMATED HOURS | ESTIMATED FEES[1] |
|---|---|---|
| Communications with Client (00010) | 475 | $489,121.75 |
| Communications with Unsecured Creditors (00011) | 100 | $102,973.00 |
| Committee Meetings (00012) | 600 | $617,838.00 |
| Committee Governance (00013) | 150 | $154,459.50 |
| Corporate Governance and Board Issues (00014) | 115 | $118,418.95 |
| Customer, Supplier and Vendor Issues (00015) | 5 | $5,148.65 |
| DIP Financing/Cash Management (00016) | 175 | $180,202.75 |
| Executory Contracts/Lease Issues (00017) | 100 | $102,973.00 |
| General Case Strategy (includes calls with clients and team calls and meetings) (00018) | 1250 | $1,287,162.50 |
| Insurers and Insurance Claims (00019) | 10 | $10,297.30 |
| Court Hearings (00020) | 700 | $720,811.00 |
| Mediation and Alternative Dispute Resolution (00021) | 5 | $5,148.65 |
| Non-Bankruptcy Litigation (00022) | 200 | $205,946.00 |
| Non-Working Travel (00023) | 200 | $205,946.00 |
| Power Purchase Agreements (00024) | 50 | $51,486.50 |
| Reclamation/503(b)(9) Claims (00025) | 10 | $10,297.30 |
| Regulatory, Political and Legislative (00026) | 50 | $51,486.50 |
| CPUC (00027) | 125 | $128,716.25 |
| FERC (00028) | 50 | $51,486.50 |
| Retention/Fee Applications (00029) | 1000 | $1,029,730.00 |
| Retention/Fee Application Ordinary Course Professionals (00030) | 25 | $25,743.25 |
| Schedules/Statements of Financial Affairs (00031) | 5 | $5,148.65 |
| Subrogation Issues (00032) | 50 | $51,486.50 |
| Tort Committee (00033) | 15 | $15,445.95 |

| PROJECT CATEGORY | ESTIMATED HOURS | ESTIMATED FEES[1] |
|---|---|---|
| Tax Issues (00034) | 100 | $102,973.00 |
| Trust Structure, Corpus and Terms (00035) | 0 | $0.00 |
| U.S. Trustee (00036) | 15 | $15,445.95 |
| Adequate Assurance Issues (00037) | 0 | $0.00 |
| Wildfire Claims and Treatment (00038) | 750 | $772,297.50 |
| Employee Benefits and Severance Issues (00039) | 500 | $514,865.00 |
| **TOTAL** | **9,350** | **$9,627,975.50** |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case<br>No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| **- and -** | Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | |

☐    Affects PG&E Corporation

☐    Affects Pacific Gas and Electric Company

☑    Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

**STAFFING PLAN FOR MILBANK LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PG&E CORPORATION AND PACIFIC GAS AND ELECTRIC COMPANY FOR THE PERIOD FEBRUARY 12, 2019 THROUGH MAY 31, 2019**

Date Retention Approved:  April 29, 2019 *nunc pro tunc* to February 12, 2019

| CATEGORY OF TIMEKEEPER | NUMBER OF TIMEKEEPERS EXPECTED TO WORK ON THE MATTER DURING THE BUDGET PERIOD | AVERAGE HOURLY RATE[1] |
|---|---|---|
| Partners | 20 | $1,376.82 |
| Counsel | 7 | $1,218.00 |
| Sr. Associates (7+ years experience) | 7 | $991.67 |
| Associates (4-6 years experience) | 12 | $916.67 |
| Jr. Associates (1-3 years experience) | 22 | $720.00 |
| Paralegals | 8 | $270.00 |
| Staff Attorneys, Case Managers, and Specialists | 9 | $320.00 |

---

[1]     Milbank's hourly rates are subject to customary annual firm-wide adjustments in the ordinary course of business, notice of which adjustments shall be provided to the Committee and the U.S. Trustee.

**EXHIBIT F**

**SUMMARY OF FEES AND HOURS**
**BUDGETED COMPARED TO FEES AND HOURS BILLED**

| PROJECT CATEGORY | Budgeted Hours | Billed Hours | Budgeted Fees | Billed Fees |
|---|---|---|---|---|
| Administrative Expense Claims (00001) | 50 | 0 | $51,486.50 | $0.00 |
| Asset Sales/363 Sales (00002) | 5 | 3.20 | $5,148.65 | $3,518.50 |
| Automatic Stay (00003) | 150 | 135.10 | $154,459.50 | $131,882.00 |
| Bankruptcy Litigation (00004) | 1,800 | 1,069.00 | $1,853,514.00 | $944,981.00 |
| Bar Date (00005) | 90 | 102.20 | $92,675.70 | $125,984.50 |
| Claims Reconciliation/Objections (00006) | 15 | 0 | $15,445.95 | $0.00 |
| Case Administration (Docket Updates, WIP and calendar) (00007) | 425 | 290.30 | $437,635.25 | $258,097.00 |
| CCA and Aggregator Issues (00008) | 10 | .40 | $10,297.30 | $368.00 |
| Plan of Reorganization (00009) | 25 | 50.90 | $25,743.25 | $49,481.50 |
| Communications with Client (00010) | 475 | 438.00 | $489,121.75 | $471,370.50 |
| Communications with Unsecured Creditors (00011) | 100 | 54.10 | $102,973.00 | $66,132.50 |
| Committee Meetings (00012) | 600 | 523.60 | $617,838.00 | $636,899.50 |
| Committee Governance (00013) | 150 | 80.90 | $154,459.50 | $98,239.50 |
| Corporate Governance and Board Issues (00014) | 115 | 84.00 | $118,418.95 | $84,871.50 |
| Customer, Supplier and Vendor Issues (00015) | 5 | 29.80 | $5,148.65 | $30,080.00 |
| DIP Financing/Cash Management (00016) | 175 | 162.20 | $180,202.75 | $193,772.00 |
| Executory Contracts/Lease Issues (00017) | 100 | 118.30 | $102,973.00 | $123,790.00 |
| General Case Strategy (includes calls with clients and team calls and meetings) (00018) | 1250 | 964.40 | $1,287,162.50 | $1,118,223.50 |

| PROJECT CATEGORY | Budgeted Hours | Billed Hours | Budgeted Fees | Billed Fees |
|---|---|---|---|---|
| Insurers and Insurance Claims (00019) | 10 | 0 | $10,297.30 | $0.00 |
| Court Hearings (00020) | 700 | 397.50 | $720,811.00 | $476,043.00 |
| Mediation and Alternative Dispute Resolution (00021) | 5 | 0 | $5,148.65 | $0.00 |
| Non-Bankruptcy Litigation (00022) | 200 | 119.60 | $205,946.00 | $105,591.00 |
| Non-Working Travel (00023) | 200 | 186.80 | $205,946.00 | $122,467.75 |
| Power Purchase Agreements (00024) | 50 | 0 | $51,486.50 | $0.00 |
| Reclamation/503(b)(9) Claims (00025) | 10 | 0 | $10,297.30 | $0.00 |
| Regulatory, Political and Legislative (00026) | 50 | 11.70 | $51,486.50 | $16,191.00 |
| CPUC (00027) | 125 | 90.00 | $128,716.25 | $91,096.00 |
| FERC (00028) | 50 | 62.40 | $51,486.50 | $64,667.50 |
| Retention/Fee Applications (00029) | 1000 | 823.00 | $1,029,730.00 | $796,780.50 |
| Retention/Fee Application Ordinary Course Professionals (00030) | 25 | 3.00 | $25,743.25 | $2,257.50 |
| Schedules/Statements of Financial Affairs (00031) | 5 | 0 | $5,148.65 | $0.00 |
| Subrogation Issues (00032) | 50 | 52.40 | $51,486.50 | $44,503.00 |
| Tort Committee (00033) | 15 | 18.10 | $15,445.95 | $26,716.00 |
| Tax Issues (00034) | 100 | 69.90 | $102,973.00 | $74,267.00 |
| Trust Structure, Corpus and Terms (00035) | 0 | 0 | $0.00 | $0.00 |
| U.S. Trustee (00036) | 15 | 19.80 | $15,445.95 | $20,523.00 |
| Adequate Assurance Issues (00037) | 0 | 0 | $0.00 | $0.00 |
| Wildfire Claims and Treatment (00038) | 750 | 783.60 | $772,297.50 | $794,796.50 |
| Employee Benefits and Severance Issues (00039) | 500 | 311.00 | $514,865.00 | $310,510.00 |
| **TOTAL** | **9,350** | **7,055.20** | **$9,627,975.50** | **$7,284,101.25** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT G**

**KRELLER DECLARATION**

Case: 19-30088    Doc# 3117    Filed: 07/22/19    Entered: 07/22/19 07:27:34    Page 45
of 47

<table>
<tr><td>1</td><td colspan="2" align="center"><strong>UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF CALIFORNIA<br>SAN FRANCISCO DIVISION</strong></td></tr>
</table>

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| **- and -** | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **CERTIFICATION OF THOMAS R. KRELLER REGARDING FIRST INTERIM APPLICATION OF MILBANK LLP FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM FEBRYARY 12, 2019 THROUGH MAY 31, 2019** |

☐     Affects PG&E Corporation

☐     Affects Pacific Gas and Electric Company

☑     Affects both Debtors

*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

1.      I am a partner in the Financial Restructuring Group of the firm Milbank LLP ("Milbank"), counsel to the official committee of unsecured creditors (the "Committee") in these chapter 11 cases. I am admitted to the bar of the State of California.

2.      I make this certification regarding the *First Interim Application of Milbank LLP for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period from February 12, 2019 through May 31, 2019* (the "Interim Fee Application"). I am familiar with: (i) the *Order Pursuant to 11 U.S.C. §§ 331 and 105(a) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 701] (the "Interim Compensation Order"); (ii) the *Guidelines for Compensation and Expense*

*Reimbursement of Professionals and Trustees for the Northern District of California*, dated

February 19, 2014 (the "Local Guidelines"); and (iii) the *U.S. Trustee Guidelines for Reviewing*

*Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by*

*Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines"

and collectively, the "Fee Guidelines").

        3.     I have reviewed the Interim Fee Application and hereby certify that, to the best of

my knowledge, information and belief, it complies with the Fee Guidelines and the applicable

provisions of the Bankruptcy Code and the Bankruptcy Rules. The fees and disbursements sought

are billed at rates in accordance with those generally charged by Milbank and generally accepted

by Milbank's clients. I certify that: (i) all of the services for which compensation is sought in the

First Interim Application were rendered for or on behalf of the Committee solely in connection

with the Chapter 11 Cases; and (ii) the First Interim Application is being served on the Debtors,

the Tort Committee, and the U.S. Trustee in accordance with the Interim Compensation Order.

Additionally, I hereby certify that, in accordance with the Interim Compensation Order, and in

connection with preparing this Interim Fee Application, Milbank has made a reasonable effort to

comply with the U.S. Trustee's requests for information and additional disclosures set forth in the

U.S. Trustee Guidelines. To that end, Milbank specifically responds to certain questions identified

in the U.S. Trustee Guidelines as follows:

      Question 1:    Did Milbank agree to any variations from, or alternatives to, Milbank's standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

                   Answer:      No.

      Question 2:    If the fees sought in the Interim Fee Application as compared to the fees budgeted for the time period covered by the Application are higher by 10% or more, did Milbank discuss the reasons for the variation with the client?

| | | | |
|---|---|---|---|
| 1 | | Answer: | The fees sought in the First Interim Fee Application are less than the fees budgeted for the time period covered by such application. |
| 2 | | | |

Answer: The fees sought in the First Interim Fee Application are less than the fees budgeted for the time period covered by such application.

Question 3: Have any of the professionals included in the Interim Fee Application varied their hourly rate based on geographic location of the bankruptcy case?

Answer: No.

Question 4: Does the Interim Fee Application include time or fees related to reviewing or revising time records or preparing, reviewing or revising invoices?

Answer: The First Interim Fee Application includes a small amount of time and fees related to reviewing or revising time records for privileged or confidentiality and preparing, reviewing or revising invoices in connection with the preparation of Monthly Fee Statements relating to the period covered by this First Interim Fee Application.

Question 5: Does the Interim Fee Application include time for fees for reviewing time records to redact any privileged or other confidential information?

Answer: Yes. See above.

Question 6: Does the Interim Fee Application includes any rate increases since retention in these cases:

Answer: The First Interim Fee Applications does not include any rate increases since retention in these cases.

Question 7: Did the client agree when retaining Milbank to accept all future rate increases? If not, did Milbank inform the client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Answer: The client did not prospectively approve such rate increases but was notified at the outset of the engagement that Milbank's hourly rates are reviewed and revised from time to time. In accordance with ABA Formal Ethics Opinion 11-458, Milbank also notified the Committee at the outset of the representation that it need not agree to any modified rates or terms in order to have Milbank continue its representation of the Committee.

*/s/ Thomas R. Kreller*
Thomas R. Kreller