**Exhibit A**

**Term Sheet**

# PG&E CORP., ET AL.

## RESTRUCTURING TERM SHEET

## July 23, 2019

This term sheet (the "Term Sheet") is proposed by the Ad Hoc Group of Subrogation Claim Holders (the "Ad Hoc Subrogation Group") and sets forth the principal terms of a comprehensive restructuring (the "Restructuring") of the existing debt and other obligations of the Debtors (as defined below) each of which commenced cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), on January 29, 2019 (the "Petition Date"). The Restructuring contemplated herein shall be implemented pursuant to a proposed joint chapter 11 plan of reorganization (the "Plan").

THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY CHAPTER 11 PLAN OF REORGANIZATION, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, ONLY WILL BE MADE IN COMPLIANCE WITH APPLICABLE PROVISIONS OF SECURITIES, BANKRUPTCY AND/OR OTHER APPLICABLE LAW. THIS TERM SHEET DOES NOT ADDRESS ALL TERMS THAT WOULD BE REQUIRED IN CONNECTION WITH ANY POTENTIAL TRANSACTION REFERENCED HEREIN, AND THE ENTRY INTO OR THE CREATION OF ANY BINDING AGREEMENT IS SUBJECT TO THE EXECUTION OF DEFINITIVE DOCUMENTATION IN FORM AND SUBSTANCE CONSISTENT WITH THIS TERM SHEET AND OTHERWISE ACCEPTABLE TO THE AD HOC SUBROGATION GROUP.

| Plan Overview | |
|---|---|
| **Term** | **Description** |
| Debtors | PG&E Corporation ("PG&E Corp.") and Pacific Gas and Electric Company (the "Utility," and collectively with PG&E Corp., the "Debtors"). Following the occurrence of the effective date of the Plan ("Effective Date"), PG&E Corp. and the Utility will be referred to herein as **"Reorganized PG&E Corp."** and the "Reorganized Utility," respectively, and collectively as the "Reorganized Debtors." |
| Transaction Overview | As set forth in greater detail herein, the Plan shall provide for<br><br>• A resolution of all allowed claims (as such term is defined in section 101(5) of the Bankruptcy Code) related to or in any way arising from the wildfires that occurred in Northern California prior to the Petition Date (each a "Wildfire Claim") through (a) honoring municipalities' settlements with the Debtors; (b) a settlement of all subrogation Wildfire Claims in exchange for a distribution of $15.8 billion of consideration split between 90% in new mandatory convertible preferred equity (the "Mandatory Convertible Preferred") and 10% in cash; and (c) the funding and creation of the Settlement Trust (defined below) for Individual Wildfire Claimants (defined below) with up to $[●] billion[1] for the purposes of paying Wildfire Claims |

---

[1] This Term Sheet contemplates that each individual fire victim will have the opportunity to realize a full recovery on his or her provable and compensable claim up to the Trust Funding Amount (defined below) (including, for the avoidance of doubt, reimbursement of any deductibles paid prior to receipt of insurance policy proceeds). The Ad Hoc Subrogation Group intends to continue to work with the representatives of the Tort Claimants Committee and expects to file an amended Term Sheet that, in the judgment of the Ad Hoc Subrogation Group, provides for sufficient funding for a Settlement Trust in order to achieve this goal.

asserted by Individual Wildfire Claimants (defined below), each on the terms provided below;

- The issuance of $14.2 billion Mandatory Convertible Preferred by Reorganized PG&E Corp. as the primary source of distributions on Subrogation Claims;[2]

- The refinancing of short-term funded debt, reinstatement of long-term funded debt and the issuance of incremental debt capital at levels that maintain an investment grade rating;

- The exclusive opportunity for holders of PG&E Corp. Common Interests to participate in the recapitalization of the Debtors via a $[●] billion new money investment in exchange for new common equity of Reorganized PG&E Corp. (the "New Common Equity");

- The Debtors cash on hand at emergence, proceeds of the new money investments and the issuance of the Mandatory Convertible Preferred shall be used to (a) pay in full in cash all DIP Financing Facility Claims (as defined below), (b) pay in full in cash all funded debt that is not reinstated on the Effective Date, (c) pay in full in cash all allowed administrative and priority claims, (d) fund the creation of the Settlement Trust for Individual Wildfire Claimants, and (e) fund the Debtors' contribution of $5.0 billion to a long-term California statewide wildfire fund created for purposes of paying claims arising from future utility-related wildfires in California (the "California Wildfire Insurance Fund"); and

- Payment of all trade claims in the ordinary course of business and assumption and/or continuation of pension-related obligations.

## Treatment of Claims and Interests Under the Chapter 11 Plan

### Unclassified Claims

| Claim | Treatment |
|---|---|
| DIP Financing Facility Claims | Each holder of a claim under the Senior Secured Superpriority Debtor-in-Possession Credit, Guaranty and Security Agreement, dated as of February 1, 2019 (the "DIP Financing Facility," and the claims arising thereunder, the "DIP Financing Facility Claims") shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such DIP Financing Facility Claim, payment in full in cash on the Effective Date. |
| Administrative Expense Claims | Each holder of an allowed administrative expense claim against the Debtors under section 507(a)(2) of the Bankruptcy Code (other than DIP Financing Facility Claims) (the "Administrative Expense Claims") shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Administrative Expense Claim, cash equal to the allowed amount of such Administrative Expense Claim on the later of (i) the Effective Date or as soon thereafter as is reasonably practicable, and (ii) the date such Administrative Expense Claim becomes an allowed |

---

While the Ad Hoc Subrogation Group continues to negotiate with the Tort Claimants Committee, the Plan described herein is expected to provide recoveries up to a higher level than the plan proposed by the Ad Hoc Bondholder Group.

[2] The issuance of Mandatory Convertible Preferred may be increased if the Settlement Trust is funded (at least in part) with Mandatory Convertible Preferred.

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 3 of 22

| | | | |
|---|---|---|---|
| | Administrative Expense Claim or as soon thereafter as is reasonably practicable. | | |
| Priority Tax Claims | Each holder of an allowed claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the type specified in section 507(a)(8) of the Bankruptcy Code against any Debtor (the "Priority Tax Claims") shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Priority Tax Claim, (a) cash equal to the amount of such allowed Priority Tax Claim on the later of (i) the Effective Date or as soon thereafter as is reasonably practicable and (ii) the date such Priority Tax Claim becomes an allowed Priority Tax Claim or as soon thereafter as is reasonably practicable, or (b) such other treatment consistent with the provisions of section l 129(a)(9) of the Bankruptcy Code. | | |

## Wildfire Claims Against PG&E Corp. and Utility[3]

| Claim | Classification/Treatment/Voting | Estimated Recovery | Estimated % Recovery of Total Claims |
|---|---|---|---|
| Class 1A: Subrogation Claims | ***Classification:*** Holders of Wildfire Claims that arise from subrogation (whether such subrogation is contractual, equitable or statutory), assignment (whether such assignment is contractual, equitable or statutory), or otherwise in connection with payments made or to be made by the applicable insurer to insured tort victims, and whether arising as a matter of state or federal law, including, without limitation, Section 509 of the Bankruptcy Code (including attorneys' fees and interest, collectively the "Subrogation Claims"). <br><br> ***Treatment:*** On the Effective Date, each holder of an allowed Subrogation Claim (a "Subrogation Claim Holder") shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Subrogation Claim, the holder's share of $1.6 billion cash, and $14.2 billion Mandatory Convertible Preferred, *provided that* any such recoveries on account of amounts reserved by such Subrogation Claim Holder representing amounts to be paid to underlying insureds may be held in trust for the benefit of such Subrogation Claim Holder (on terms acceptable to the Ad Hoc | $15.8 billion[4] | ~70% |

---

[3]    If required, the Plan will provide for separate classes of Wildfire Claims against each entity.

[4]    The aggregate recovery on account of Subrogation Claims is a settlement and compromise solely for purposes of the Plan described herein. If the allowed amount of all Subrogation Claims were litigated, holders of Subrogation Claims could and would assert claims in a substantially higher amount than the compromise amount proposed in this Term Sheet. Approximately $18.5 billion of payments and policy reserves have been reported to the California Department of Insurance, which amount does not include estimated but not yet reserved future payments, estimated or accrued interest and attorneys' fees, all of which are recoverable under applicable law, and would raise the total amount of Subrogation Claims to over $20 billion. Upon confirmation of the Plan, the compromised aggregate allowed claim will be binding on each individual class member and a binding allocation of the recovery among class members will be set forth in the Plan or a supplement thereto.

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 4 of 22

| | | | |
|---|---|---|---|
| | Subrogation Group) until such insurance policy payments are made, at which point such recoveries shall be released.<br><br>*Voting*: Impaired - entitled to vote. | | |
| Class 2A: Municipal Claims | *Classification:* Wildfire Claims held by a Municipality (as defined in section 101(40) of the Bankruptcy Code) ("<u>Municipal Claims</u>").<br><br>*Treatment*: On the Effective Date, holders of allowed Municipal Claims will receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Municipal Claims, $1.0 billion in cash to be allocated in accordance with the existing Plan Support Agreements between the Debtors and certain <u>municipalities</u> (the "<u>Municipalities</u>"), <u>provided</u>, <u>that</u>, such Plan Support Agreements may not be amended in any manner that affects the Debtors' aggregate liability to the Municipalities without the consent of the Ad Hoc Subrogation Group.<br><br>*Voting*: [TBD] | $1.0 billion | [TBD]% |
| Class 3A: Individual Wildfire Claims | *Classification:* Holders ("<u>Individual Wildfire Claimants</u>") of Wildfire Claims other than Subrogation Claims and Municipal Claims ("<u>Individual Wildfire Claims</u>").<br><br>*Treatment:* Individual Wildfire Claims will be channeled to a trust to be established on the Effective Date (the "<u>Settlement Trust</u>"). The Settlement Trust will assume all of the Debtors' liability with respect to Individual Wildfire Claims, and Individual Wildfire Claimants will be the beneficiaries of the Settlement Trust. The Settlement Trust will be funded as set forth below. The right to assert Individual Wildfire Claims against the Settlement Trust shall be deemed payment in full of all Individual Wildfire Claims. The order confirming the Plan (the "<u>Confirmation Order</u>") shall provide that all claims shall be released and forever barred and the Individual Wildfire Claimants shall be deemed to have been made whole with respect to the subrogation claims of the members of Class 1A.<br><br>*Voting*: Impaired - entitled to vote. | $[●] up front and up to a maximum of $[●] over time | 100%, subject to the Trust Funding Amount |

| PG&E Corp. Claims | | | |
|---|---|---|---|
| **Claim** | **Classification/Treatment/Voting** | **Estimated Allowed Claims** | **Estimated % Recovery** |
| Class 1B: Other PG&E Corp. Priority Claims | *Classification:* Holders of allowed claims against PG&E Corp. entitled to priority under section 507(a) of the Bankruptcy Code (other than DIP Claims, Administrative Expense Claims and Priority Tax | [TBD] | 100% |

| | | | |
|---|---|---|---|
| | Claims) (the "Other PG&E Corp. Priority Claims").<br><br>**Treatment:** Each holder of an allowed Other PG&E Corp. Priority Claim against PG&E Corp. shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other PG&E Corp. Priority Claim, (i) cash in an amount equal to such allowed claim on the Effective Date or as soon thereafter as is reasonably practicable, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.<br><br>**Voting:** Unimpaired - deemed to accept. | | |
| Class 2B: Other PG&E Corp. Secured Claims | **Classification:** Holders of claims (other than DIP Financing Facility Claims) that are secured by valid, perfected and enforceable liens on property in which PG&E Corp. has an interest or that are subject to setoff pursuant to section 553 of the Bankruptcy Code (the "Other PG&E Corp. Secured Claims").<br><br>**Treatment:** Each holder of an allowed Other PG&E Corp. Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other PG&E Corp. Secured Claim, (i) retention of its Other PG&E Corp. Secured Claim and any properly perfected and valid liens; (ii) payment in full in cash, including the payment of any interest allowed and payable under section 506(b) of the Bankruptcy Code, on the Effective Date or as soon thereafter as is reasonably practicable, or (iii) treatment of such allowed Other PG&E Corp. Secured Claim in any other manner that renders the claim unimpaired, including reinstatement under section 1124(2) of the Bankruptcy Code.<br><br>**Voting:** Unimpaired - deemed to accept. | [TBD] | 100% |
| Class 3B: PG&E Corp. Unsecured Revolving Credit Facility Claims | **Classification:** Holders of claims arising under the Second Amended and Restated Credit Agreement, dated as of April 27, 2015, by and between PG&E Corp. and Citibank, N.A., as administrative agent (the "PG&E Corp. Unsecured Revolving Credit Agreement"), in the aggregate principal amount of up to $300 million (the "PG&E Corp. Unsecured Revolving Credit Facility Claims").<br><br>**Treatment:** On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed PG&E Corp. Unsecured Revolving Credit Facility Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed PG&E Corp. Unsecured Revolving Credit Facility Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the PG&E Corp. Unsecured Credit Agreement and (ii) accrued and unpaid interest from the Petition Date through the | ~ $300 million | 100% |

5

| | | | |
|---|---|---|---|
| | Effective Date at the contract rate, to the extent enforceable under applicable law.<br><br>***Voting:*** Unimpaired - deemed to accept. | | |
| Class 4B: PG&E Corp. Unsecured Term Loan Claims | ***Classification:*** Holders of claims arising under the Term Loan Agreement, dated as of April 16, 2018, by and between PG&E Corp. and Mizuho Bank, Ltd., as administrative agent (the "<u>PG&E Corp. Unsecured Term Loan Credit Agreement</u>") in the aggregate principal amount of $350 million (the "<u>PG&E Corp. Unsecured Term Loan Claims</u>").<br><br>***Treatment:*** On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed PG&E Corp. Unsecured Term Loan Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed PG&E Corp. Unsecured Term Loan Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the PG&E Corp. Unsecured Term Loan Credit Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate, to the extent enforceable under applicable law.<br><br>***Voting:*** Unimpaired - deemed to accept. | ~ $350 million | 100% |
| Class 5B: PG&E Corp. General Unsecured Claims | ***Classification:*** Holders of general unsecured claims (other than Other PG&E Corp. Priority Claims, PG&E Corp. Unsecured Revolving Credit Facility Claims, and PG&E Corp. Unsecured Term Loan Claims) against PG&E Corp. (the "<u>PG&E Corp. General Unsecured Claims</u>")<br><br>***Treatment:*** Each holder of an allowed PG&E Corp. General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed PG&E Corp. General Unsecured Claim, cash in an amount equal to the allowed PG&E Corp. General Unsecured Claim, together with accrued and unpaid interest from the Petition Date through the Effective Date at the applicable contract rate or, in the absence of a contract rate, the federal judgement rate, on the earlier of (i) the Effective Date or as soon thereafter as is reasonably practicable or (ii) as soon as reasonably practicable following the date such PG&E Corp. General Unsecured Claim becomes an allowed PG&E Corp. General Unsecured Claim.<br><br>***Voting:*** Unimpaired - deemed to accept. | [TBD] | 100% |
| Class 6B: PG&E Corp. Intercompany Claims | ***Classification:*** Claims held by the Utility or any non-Debtor affiliate of PG&E Corp. against PG&E Corp. (the "<u>PG&E Corp. Intercompany Claims</u>"). | [TBD] | 100% |

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 7 of 22

| | Classification/Treatment/Voting | | |
|---|---|---|---|
| | *Treatment:* All allowed PG&E Corp. Intercompany Claims, if any, shall be reinstated, compromised or cancelled at the election of the Debtors (with the consent of the **Ad Hoc Subrogation Group**, not to be unreasonably withheld), such that the PG&E Corp. Intercompany Claims are treated in a tax-efficient manner.<br><br>*Voting:* Unimpaired - not entitled to vote. | | |
| Class 8B: PG&E Corp. Common Interests | *Classification:* Holders of outstanding common interests in PG&E Corp. (the "PG&E Corp. Common Interests").<br><br>*Treatment:* Holders of allowed PG&E Corp. Common Interests shall retain ownership of all PG&E Corp. Common Interests, subject to the issuance of New Common Equity pursuant to the Rights Offering and the conversion of the Mandatory Convertible Preferred.<br><br>*Voting:* [TBD] | N/A | [TBD]% |

| **Utility Claims** | | | |
|---|---|---|---|
| **Claim** | **Classification/Treatment/Voting** | **Estimated Allowed Claims** | **Estimated % Recovery** |
| Class 1C: Other Utility Priority Claims | *Classification:* Holders of allowed claims against the Utility entitled to priority under section 507(a) of the Bankruptcy Code (other than DIP Financing Facility Claims, Administrative Expense Claims and Priority Tax Claims) (the "Other Utility Priority Claims").<br><br>*Treatment:* Each holder of an allowed Other Utility Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other Utility Priority Claim, (i) cash in an amount equal to such allowed Other Utility Priority Claim on the Effective Date or as soon as practicable thereafter, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.<br><br>*Voting:* Unimpaired - deemed to accept. | [TBD] | 100% |
| Class 2C: Other Utility Secured Claims | *Classification:* Holders of claims (other than DIP Financing Facility Claims) that are secured by valid, perfected and enforceable liens on property in which the Utility has an interest or that are subject to setoff pursuant to section 553 of the Bankruptcy Code (the "Other Utility Secured Claims").<br><br>*Treatment:* Each holder of an allowed Other Utility Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other Utility Secured Claim, (i) retention of its Other Utility Secured Claim and any | [TBD] | 100% |

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 8 of 22

| | | | |
|---|---|---|---|
| | properly perfected and valid liens, (ii) payment in full in cash, including the payment of any interest allowed and payable under section 506(b) of the Bankruptcy Code, on the Effective Date or as soon thereafter as is reasonably practicable, or (iii) treatment of such allowed Other Utility Secured Claim in any other manner that renders the Other Utility Secured Claim unimpaired, including reinstatement under section 1124(2) of the Bankruptcy Code.<br><br>*Voting:* Unimpaired - deemed to accept. | | |
| Class 3C: Utility Unsecured Revolving Credit Facility Claims | *Classification:* Holders of claims arising under the Second Amended and Restated Credit Agreement, dated as of April 27, 2015, by and between the Utility and Citibank, N.A., as administrative agent (the "Utility Unsecured Revolving Credit Agreement"), in the aggregate principal amount of up to $3 billion (the "Utility Unsecured Revolving Credit Facility Claims").<br><br>*Treatment:* On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Utility Unsecured Revolving Credit Facility Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Utility Unsecured Revolving Credit Facility Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the Utility Unsecured Revolving Credit Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate, to the extent enforceable under applicable law.<br><br>*Voting:* Unimpaired - deemed to accept. | ~ $2.885 billion | 100% |
| Class 4C: Utility Unsecured Term Loan Claims | *Classification:* Holders of claims arising under the Term Loan Credit Agreement, dated as of February 23, 2018, by and between the Utility and the Bank of Tokyo-Mitsubishi UFJ, Ltd., as administrative agent (the "Utility Unsecured Term Loan Agreement") in the aggregate principal amount of $250 million (the "Utility Unsecured Term Loan Claims").<br><br>*Treatment:* On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Utility Unsecured Term Loan Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Utility Unsecured Term Loan Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the Utility Unsecured Term Loan Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate, to the extent enforceable under applicable law. | ~ $250 million | 100% |

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 9 of 22

| | | | |
|---|---|---|---|
| | ***Voting:*** Unimpaired - deemed to accept. | | |
| **Class 5C: Short-Term Utility Unsecured Notes Claims** | ***Classification:*** Holders of claims arising under the notes (or the applicable indenture relating thereto) (the "<u>Short-Term Utility Unsecured Notes</u>" and the indentures, the "<u>Short-Term Utility Unsecured Notes Indentures</u>") maturing on or before December 31, 2022 (the "<u>Short-Term Utility Unsecured Notes Claims</u>"), identified in Schedule 1 hereto.[5]<br><br>***Treatment:*** On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Short-Term Utility Unsecured Notes Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Short-Term Utility Unsecured Notes Claim, cash in an amount equal to the sum of (i) outstanding principal and accrued and unpaid interest as of the Petition Date at the contract rate under the applicable Short-Term Utility Unsecured Notes or Short-Term Utility Unsecured Notes Indentures, (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate under the applicable Short Term Utility Unsecured Notes or Short-Term Utility Unsecured Notes Indentures, to the extent enforceable under applicable law, and (iii) any prepayment premium, makewhole or other similar call protection under the applicable Short-Term Utility Unsecured Notes or Short-Term Utility Unsecured Notes Indentures, to the extent enforceable under applicable law.<br><br>***Voting:*** Unimpaired – deemed to accept. | ~ $1.75 billion | 100% |
| **Class 6C: Long-Term Utility Unsecured Notes Claims** | ***Classification:*** Holders of claims arising under any notes (or the applicable indenture relating thereto) (the "<u>Long-Term Utility Unsecured Notes</u>" and the indentures, the "<u>Long-Term Utility Unsecured Notes Indentures</u>") maturing on or after January 1, 2023 (the "<u>Long-Term Utility Unsecured Notes Claims</u>"), identified in Schedule 2 hereto.[6]<br><br>***Treatment:*** On the Effective Date, the Long-Term Utility Unsecured Notes will be reinstated (including any accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate under the applicable Long-Term Utility Unsecured Notes or Long-Term Utility Unsecured Notes Indentures, to the extent enforceable under applicable law), and the Long-Term Utility Unsecured Notes Claims will be unimpaired in accordance with section 1124(2) of the | ~$15.8 billion | 100% |

---

[5]   If required, the Plan will provide subclasses for claims arising from each separate issuance of the Short-Term Utility Unsecured Notes.

[6]   If required, the Plan will provide subclasses for claims arising from each separate issuance of the Long-Term Utility Unsecured Notes.

Case: 19-30088   Doc# 3147-1   Filed: 07/23/19   Entered: 07/23/19 10:56:24   Page 10 of 22

| | | | |
|---|---|---|---|
| | Bankruptcy Code.<br><br>*Voting:* Unimpaired – deemed to accept. | | |
| Class 7C: Utility Pollution Control Bond Claims | *Classification:* Holders of claims arising under the Pollution Control Bonds issued by the California Pollution Control Financing Authority and the California Infrastructure and Economic Development Bank (the "Utility Pollution Control Bonds") and related reimbursement obligations from certain letter of credit facilities in the aggregate outstanding principal amount of $863 million (the "Utility Pollution Control Bonds Claims").<br><br>*Treatment:* On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Utility Pollution Control Bonds Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Utility Pollution Control Bonds Claim, cash in an amount equal to the sum of (i) outstanding principal and accrued and unpaid interest as of the Petition Date at the contract rate under the applicable Utility Pollution Control Bonds and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate under the applicable Utility Pollution Control Bonds, to the extent enforceable under applicable law.<br><br>*Voting:* Unimpaired – deemed to accept. | $863 million | 100% |
| Class 8C: Utility Intercompany Claims | *Classification:* Claims held by the PG&E Corp. or any non-Debtor affiliate of PG&E Corp. against the Utility (the "Utility Intercompany Claims").<br><br>*Treatment:* All allowed Utility Intercompany Claims, if any, shall be reinstated, compromised or cancelled at the election of the Debtors (with the consent of the Ad Hoc Subrogation Group, not to be unreasonably withheld), such that the Utility Intercompany Claims are treated in a tax-efficient manner.<br><br>*Voting:* Unimpaired - not entitled to vote. | [TBD] | 100% |
| Class 9C: Other Utility General Unsecured Claims | *Classification:* Holders of general unsecured claims (other than Other Utility Priority Claims, Utility Unsecured Revolving Credit Facility Claims, Utility Unsecured Term Loan Claims, Short-Term Utility Unsecured Notes Claims, Long-Term Utility Unsecured Notes Claims, Wildfire Claims, and Utility Workers' Compensation Claims) against the Utility (the "Other Utility General Unsecured Claims").<br><br>*Treatment:* Each holder of an allowed Other Utility General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other Utility General Unsecured Claim, cash in an amount equal to the allowed Other Utility General Unsecured Claim, | [TBD] | 100% |

10

| | | | |
|---|---|---|---|
| | together with accrued and unpaid interest from the Petition Date through the Effective Date at the applicable contract rate or, in the absence of a contract rate, the federal judgement rate, on the earlier of (i) the Effective Date or as soon thereafter as is reasonably practicable or (ii) the date such Other Utility General Unsecured Claim becomes an allowed Other Utility General Unsecured Claim, or as soon thereafter as is reasonably practicable.<br><br>***Voting:*** Unimpaired - deemed to accept. | | |
| Class 10C: Utility Workers' Compensation Claims | ***Classification:*** Holders of claims against the Utility by employees of the Utility for the payment of workers' compensation benefits under applicable law (the "<u>Utility Workers' Compensation Claims</u>").<br><br>***Treatment:*** Each allowed Utility Workers' Compensation Claim shall be satisfied in full in the ordinary course of business at such time and in such manner as the Utility is obligated to satisfy such Utility Workers' Compensation Claim under applicable law.<br><br>***Voting:*** Unimpaired - deemed to accept. | [TBD] | 100% |
| Class 11C: Utility Preferred Interests | ***Classification:*** Holders of outstanding preferred interests in the Utility (the "<u>Utility Preferred Interests</u>")<br><br>***Treatment:*** Holders of allowed Utility Preferred Interests shall retain ownership of all Utility Preferred Interests in the Reorganized Utility (including any associated liquidation preference). Accrued but unpaid dividends as of the Effective Date shall be paid in cash.<br><br>***Voting:*** Unimpaired - deemed to accept. | $258 million | 100% |
| Class 12C: Utility Common Interests | ***Classification:*** PG&E Corp. as holder of all outstanding common interests in the Utility (the "<u>Utility Common Interests</u>").<br><br>***Treatment:*** Reorganized PG&E Corp., as holder of the Utility Common Interests, shall retain ownership of all Utility Common Interests in the Reorganized Utility.<br><br>***Voting:*** Unimpaired - deemed to accept. | N/A | 100% |
| **Chapter 11 Plan Implementation** | | | |
| Estimation Proceeding | In the event that Class 3A (Individual Wildfire Claims) votes to reject the Plan, there will be an estimation proceeding for the limited purpose of determining whether the aggregate amount of Individual Wildfire Claims exceeds $[●] billion. In connection with the estimation proceeding the Bankruptcy Court and/or the District Court will estimate the Debtors' liability on all Individual Wildfire Claims for purposes of confirming the Plan, in accordance with the Bankruptcy Code and applicable law. Such estimation proceeding shall conclude prior to the hearing on Plan confirmation. The estimated amount of the aggregate Individual Wildfire Claims as determined by Bankruptcy Court and/or District Court order is referred to herein as the "<u>Estimated Individual Wildfire Liability</u>." If Class 3A (Individual Wildfire Claims) rejects the Plan, a condition precedent to confirmation shall be that the Estimated Individual | | |

11

| | |
|---|---|
| | Wildfire Liability does not exceed $[●] billion. |
| Settlement Trust for Individual Wildfire Claimants | The purpose of the Settlement Trust will be to (x) assume liability for all valid Individual Wildfire Claims and (y) use the Trust Funding Amount to promptly and fairly compensate Individual Wildfire Claimants by establishing an efficient mechanism to administer, process, settle, resolve, liquidate and pay all valid Individual Wildfire Claims pursuant to the Settlement Trust Distribution Procedures (the "TDP"). |
| | The Settlement Trust shall be funded with $[●] up front and up to a maximum of $[●] over time (each of which may be in cash, Mandatory Convertible Preferred, or a combination thereof) (the "Trust Funding Amount") for payment to Individual Wildfire Claims as such claims are resolved. |
| | An agreement (the "Trust Agreement") shall establish and set forth the provisions of the Settlement Trust and shall be consistent with the terms attached hereto as Exhibit [●], and otherwise in form and substance acceptable to the Ad Hoc Subrogation Group. |
| | The Settlement Trust will be administered by three trustees (each such person, a "Trustee"). The Debtors, the Official Committee of Tort Claimants ("Tort Claimants Committee") and the Ad Hoc Subrogation Group shall each have the right to appoint one trustee, subject to the approval of the Bankruptcy Court in the Confirmation Order. The Confirmation Order shall also appoint a trust advisory committee ("TAC"). The TAC will be a [●]-member committee to represent the interests of the holders of the accrued Individual Wildfire Claims. The TAC will initially consist of [●].[7] The Trustees and the TAC shall have the authority to retain any advisors for the purpose of carrying out their respective duties under the Trust Agreement. |
| Individual Claims Trust Distribution Procedures | Simultaneously with entering into the Trust Agreement, the Trustees, the TAC and the Reorganized Debtors will agree on the terms of, and promptly implement, the TDP, on substantially the same terms as attached hereto as Exhibit [●], which terms shall include the following:

• Holders of unliquidated Individual Wildfire Claims that timely file proofs of claim in the Chapter 11 Cases shall be eligible to file a proof of claim and supporting documentation with the Settlement Trust.

• The Settlement Trust shall develop and adopt (with the consent of the Reorganized Debtors and the TAC) an expeditious process to liquidate and pay valid Individual Wildfire Claims submitted to the Settlement Trust, including, but not limited to, by reference to a damages matrix.

• If, following processing, the Settlement Trust establishes a liquidated value for any Individual Wildfire Claim submitted to the Settlement Trust, it shall tender to the claimant an offer of payment of the aforementioned determined value, together with a form of release adopted by the Settlement Trust with the consent of the Reorganized Debtors and the TAC. The form of release shall include (but not be limited to) a full release of Wildfire Claims against the Debtors, Reorganized Debtors, and the Settlement Trust, and an acknowledgement that the claimant shall be deemed to have been made whole with respect to the subrogation claims of the members of Class 1A. If the claimant accepts the offer of payment and returns the release forms |

---

[7] [Subject to further discussions, it is expected that the TAC shall be comprised of the members of the Tort Claimants Committee (or a subset thereof)]

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 13 of 22

|  | properly executed, the claim shall be paid as soon as practicable and pursuant to a regular payment schedule to be developed by the Settlement Trust with the consent of the Reorganized Debtors and the TAC. |
|  | • The Settlement Trust, with the consent of the Reorganized Debtors and the TAC, shall institute binding and non-binding arbitration procedures for resolving disputes concerning (a) the Settlement Trust's denial of a claim and/or (b) the liquidated value of a claim. |
|  | • Individual Wildfire Claimants may elect binding or non-binding arbitration after receiving a denial or offer from the Settlement Trust. A claimant who submits to binding arbitration, or non-binding arbitration and accepts the arbitral award, will receive payment in the same manner as a claimant who accepts the Settlement Trust's original offer. |
|  | • Individual Wildfire Claimants who elect non-binding arbitration and then reject their arbitral awards retain the right to have their claim liquidated through the tort system. The Settlement Trust shall defend the claim, and the Reorganized Debtors shall have the right to assume responsibility for the defense of the lawsuit. Individual Wildfire Claimants shall be eligible for payment of a final judgment for monetary damages obtained in the tort system from the Settlement Trust. |
| Channeling Injunction | The Settlement Trust shall be the sole source of recovery for Individual Wildfire Claimants against the Debtors. The Plan and Confirmation Order shall channel all Wildfire Claims held by Individual Wildfire Claimants against the Debtors to the Settlement Trust for payment, and shall bar and enjoin Individual Wildfire Claimants from seeking to recover on account of their Wildfire Claims against the Reorganized Debtors or any assets of the Reorganized Debtors (the "<u>Channeling Injunction</u>"). |
| California Wildfire Insurance Fund | On the Effective Date, the Reorganized Debtors shall contribute $5.0 billion to the California Wildfire Insurance Fund. |
| Sources of Plan Funding | Distributions under the Plan shall be funded through a combination of the following sources: (a) the issuance of the Mandatory Convertible Preferred, (b) the Debtors' cash on hand at emergence, (c) insurance proceeds, (d) $5.2 billion of additional Reorganized PG&E Corp. debt, $4.3 billion of additional Reorganized Utility debt, and $0.2 billion of additional Reorganized Utility Preferred Interests, each to be raised in the capital markets, and (e) an optional new money equity investment of up to $[●] billion via the Rights Offering (as defined below) if sufficient holders of PG&E Corp. Common Interests timely agree to support the Plan as set forth below. |
|  | If holders of PG&E Corp. Common Interests decline to participate in the Rights Offering the Ad Hoc Subrogation Group is confident it will either (a) find other parties willing to participate in the Rights Offering, including existing stakeholders and/or outside parties, or (b) eliminate the need for further capital through additional sources of funding. |
| Mandatory Convertible Preferred | On the Effective Date, PG&E Corp. shall issue $14.2 billion of Mandatory Convertible Preferred to holders of Subrogation Claims.[8] |
|  | The Mandatory Convertible Preferred shall have ten (10) mandatory conversion |

---

[8] The issuance of Mandatory Convertible Preferred may be increased if the Settlement Trust is funded (at least in part) with Mandatory Convertible Preferred.

| | |
|---|---|
| | periods, each occurring on the first Business Day after: |
| | <ul><li>The three (3) month anniversary of the Effective Date;</li><li>The six (6) month anniversary of the Effective Date;</li><li>The nine (9) month anniversary of the Effective Date;</li><li>The twelve (12) month anniversary of the Effective Date;</li><li>The fifteen (15) month anniversary of the Effective Date;</li><li>The eighteen (18) month anniversary of the Effective Date;</li><li>The twenty-one (21) month anniversary of the Effective Date;</li><li>The twenty-four (24) month anniversary of the Effective Date</li><li>The twenty-seven (27) month anniversary of the Effective Date</li><li>The thirty (30) month anniversary of the Effective Date (collectively, the "Conversion Dates").</li></ul>One-tenth (1/10th) of the total issued Mandatory Convertible Preferred (plus all accrued dividends outstanding as of each Conversion Date) shall mandatorily convert into New Common Equity on each of the Conversation Dates as set forth below:<ul><li>On each of the first and second Conversion Dates, one-tenth (1/10th) of the total issued Mandatory Convertible Preferred (plus all accrued dividends outstanding through the applicable Conversion Date) shall convert into New Common Equity at the New Equity Capital Issuance Value (defined below).</li><li>On each of the final eight Conversion Dates, one-tenth (1/10th) of the total issued Mandatory Convertible Preferred (plus all accrued dividends outstanding through the applicable Conversion Date) shall convert into New Common Equity at a 15% discount to the trailing 20 New York Stock Exchange trading day volume weighted average price of the New Common Equity at such time.</li></ul>Following the second Conversion Date, holders of Mandatory Convertible Preferred shall have the option (commencing 20 New York Stock Exchange trading days after the prior Conversion Date and prior to the next Conversion Date) to convert the amount of Mandatory Convertible Preferred that will mandatorily convert at the next Conversion Date at a 15% discount to the trailing 20 New York Stock Exchange trading day volume weighted average price of the New Common Equity at such time. For the avoidance of doubt, following the final Conversion Date, all Mandatory Convertible Preferred shall have been converted into New Common Equity.<br><br>Mandatory Convertible Preferred shall accrue a quarterly dividend which shall be paid in kind at a 8.0% annual rate.<br><br>The Mandatory Convertible Preferred shall be registered and/or issued pursuant to section 1145 of the Bankruptcy Code (as determined by the Ad Hoc Subrogation Group) and tradeable within a timeline consistent with any required regulatory approvals. |
| Rights Offering | Subject to the condition described in the following paragraph, the holders of PG&E Corp. Common Interests shall have the exclusive opportunity to participate in the recapitalization of the Debtors via a rights offering for up to $[●] billion of New Common Equity (the "Rights Offering"), based on a fixed reorganized equity value of $[●] billion (the "New Equity Capital Issuance Value"). |

| | If holders of at least 66% of the PG&E Corp. Common Interests decide to participate and support confirmation of the Plan described herein by signing a plan support agreement (in form and substance acceptable to the Ad Hoc Subrogation Group) no later than September 30, 2019, the Rights Offering shall be open to all holders of existing PG&E Corp. Common Interests.  If there is a group of equity holders that is willing, and has the ability, to commit to and fund the purchase of the New Common Equity offered through the Rights Offering (as determined by the Ad Hoc Subrogation Group), that group may be offered the opportunity to backstop the Rights Offering. Backstop parties for the Rights Offering shall receive a backstop fee of 3.0%, paid in New Common Equity. |
| | If equity holders holding sufficient existing PG&E Corp. Common Interests fail to timely support confirmation of the Plan, the right to participate in, and backstop, the Rights Offering shall be rescinded (or reallocated in the discretion of the Ad Hoc Subrogation Group) and additional sources of funding may be pursued to the extent required under the plan. |

### Other Terms

| | |
|---|---|
| Wildfire Safety Program | The Reorganized Debtors shall adopt a wildfire safety program in  amount  and scope acceptable to the  Ad Hoc Subrogation Group (in consultation with subject matter experts and stakeholders) (the "Wildfire Safety Program") that prioritizes investment in fire mitigation and loss containment for residents in high risk wildfire areas, and executive compensation shall be appropriately linked to the Wildfire Safety Program. |
| Regulatory Approval | Prior to the Effective Date, and the extent necessary, the Debtors shall obtain all necessary regulatory approvals needed to effectuate the Restructuring, including, any necessary antitrust approvals and approvals provided by the Federal Energy Regulatory Commission, the California Public Utilities Commission, and the Nuclear Regulatory Commission. |
| Releases and Exculpation | The Plan shall provide customary releases (including third party releases to the extent permitted under applicable law) and exculpation provisions, in each case, to the fullest extent permitted by law and effective as of the Effective Date, for the benefit of the Debtors, the reorganized Debtors, the Ad Hoc Subrogation Group and its members, any official committees appointed in the Chapter 11 Cases and their members, and such entities' respective current and former affiliates, and such entities' and their current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. |
| | The releases shall include (but not be limited to) a full release of Wildfire Claims against the Debtors and Reorganized Debtors, and any claims against the members of Class 1A alleging that the claimant has not been made whole by consummation of the Plan. |
| Corporate Governance | Upon the Effective Date and until the first Business Day after the thirty (30) month anniversary of the Effective Date ("Initial Term"), the board of directors (the "New PG&E Corp. Board") of the Reorganized Debtors shall consist of 9 members.  The Chief Executive Officer of the Reorganized Debtors shall serve on the New PG&E |

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 16 of 22

| | |
|---|---|
| | Corp. Board. The remaining directors of the New PG&E Corp. Board shall be appointed on the Effective Date and the Ad Hoc Subrogation Group shall work with IBEW Local 1245, TURN (on behalf of the ratepayers), and the Tort Claimants Committee to develop an appropriate board composition. |
| | To the extent a vacancy arises on the New PG&E Corp. Board during the Initial Term, the remaining members of the New PG&E Corp. Board shall designate a replacement director to serve out the remainder of the Initial Term. Following the Initial Term, members of the board of directors of Reorganized Debtors shall be elected annually. |
| | The board of directors of the Reorganized Utility (the "New Utility Board" and together with the New PG&E Corp. Board, the "New Boards") will consist of the same nine (9) members of the New PG&E Corp. Board. The chairperson of the New PG&E Corp. Board shall not be the chairperson of the New Utility Board. |
| Utility Rates to Consumers | The Plan shall be rate-neutral to end-market consumers in California on a net basis. |
| Key Employee Matters | The Reorganized Debtors shall negotiate with the International Brotherhood of Electrical Workers ("**IBEW**") and Local Union No. 1245 of the International Brotherhood of Electrical Workers ("**Local 1245**") with respect to extending the two (2) Collective Bargaining Agreements currently in place between Pacific Gas & Electric Company and Local 1245 (the IBEW Physical Agreement and the IBEW Clerical Agreement, collectively the "**IBEW CBAs**") with such negotiations to emphasize the Reorganized Debtors' and Local 1245's commitment to maintaining a spirit of cooperation between labor and management. |
| Other Employee Matters | Compensation-related agreements between and of the Debtors and any directors, officers and employees of the Debtors existing as of the Effective Date, including any indemnification and severance obligations, short term incentive plan and other incentive plans, with the exception of the revisions set forth herein, existing as of the Effective Date, shall be assumed by the Reorganized Debtors. |
| | The New Boards shall revise the long term incentive compensation programs of the Reorganized Debtors by increasing the proportion of LTIP awards subject to performance-based vesting criteria. Performance criteria for LTIP awards will be modified by increasing/implementing performance weightings that are based on achievement of public safety, infrastructure hardening and other related strategic long term objectives consistent with the Wildfire Safety Program. |
| Pension Matters | Upon the Effective Date, the Reorganized Debtors shall assume and continue to maintain the PG&E Retirement Plan under its current terms, except to the extent any amendment is required by law, and shall make any and all contributions necessary to satisfy the minimum funding requirements under ERISA Section 302 and Internal Revenue Code Section 430. |
| Executory Contracts and Unexpired Leases | All executory contracts and unexpired leases not expressly listed for rejection on an exhibit to the Plan, or previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court shall be deemed assumed as of the Effective Date. |
| | The Debtors or Reorganized Debtors, as applicable, may later, amend, modify, or supplement the list of assumed executory contracts an unexpired leases and the schedules of executory contracts an unexpired leases with respect to the Debtors or Reorganized Debtors, as applicable, at any time, through and including 45 days after the Effective Date. |

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 17 of 22

| Renewable Energy Power Purchase Agreements | Notwithstanding anything to the contrary in this Term Sheet, the Debtors and Reorganized Debtors, as applicable, shall not reject any renewable energy power purchase agreement. |
|---|---|
| Tax Matters | The Debtors and the Ad Hoc Subrogation Group will work together in good faith and will use commercially reasonable efforts to structure and implement the Restructuring in a tax efficient and cost-effective manner for the Reorganized Debtors and creditors. |
| | Post-Effective Date ownership of PG&E Corp. shall be structured to maximize the usage of go-forward tax attributes to the extent consistent with the Plan. |
| Limitations on Additional Debt Incurrences and Dividends on Common Equity | Following the Effective Date, and until the thirty (30) month anniversary of the Effective Date, the Reorganized Debtors shall be subject to limitations on (a) borrowing funded debt in excess of $[●] that would have priority of payment over any non-converted Mandatory Convertible Preferred, other than to refinance funded debt outstanding as of the Effective Date, and (b) issuing dividends on account of New Common Equity. |
| Conditions Precedent to Emergence | The occurrence of the Effective Date shall be subject to the following conditions precedent; provided that any condition could be waived with the consent of the Ad Hoc Subrogation Group: |

The occurrence of the Effective Date shall be subject to the following conditions precedent; provided that any condition could be waived with the consent of the Ad Hoc Subrogation Group:

- In the event that Class 3A votes to reject the Plan, the Estimated Individual Wildfire Liability shall not exceed $[●] billion.

- The Confirmation Order shall have been entered by the Court in form and substance acceptable to the Ad Hoc Subrogation Group, be in full force and effect and not be subject to any stay or injunction and shall have become a final order.

- All definitive documents relating to the Plan shall be in form and substance acceptable to the Ad Hoc Subrogation Group.

- The Settlement Trust shall have been established, the Trustees shall have been appointed, and the TAC shall be constituted, each in accordance with the terms provided herein.

- The Utility retains debt capacity of 47% of its rate base, and PG&E Corp. shall have sufficient debt capacity to consummate the Plan based on existing rating agency guidance on Investment Grade parameters.

- Conclusion of the Utility's 2020 general rate case and 2019 cost of capital proceeding before the CPUC satisfactory to the Ad Hoc Subrogation Group, or a mutually agreed deferral.

- CPUC approval, including issuance of a financing order, of the overall financing structure, including issuance of new securities under the Plan, if required.

- No final, unappealable order has been entered by any court of competent jurisdiction that determines whether or not (or the extent to which) the Debtors' are liable for causing the 2017 Tubbs Fire.

- No occurrence of an additional wildfire or series of wildfires prior to the Effective Date that, in the aggregate, is reasonably estimated by the Ad Hoc Subrogation Group in good faith to result in more than $[●] of post-petition claims against the Reorganized Debtors.

- All actions, documents, certificates and agreements necessary or appropriate to implement the Plan shall have been effected or executed or deemed executed and delivered, as the case may be, to the required parties and, to the extent required,

Case: 19-30088   Doc# 3147-1   Filed: 07/23/19   Entered: 07/23/19 10:56:24   Page 18 of 22

|  | filed with the applicable governmental units in accordance with applicable laws. |
|  | • All authorizations, consents, regulatory approvals, rulings or documents that are necessary or appropriate to implement and effectuate the Plan shall have been received. |
|  | • Following the Effective Date, the Reorganized Debtors will be eligible to access funds provided by the California Wildfire Insurance Fund. |
|  | • Following the Effective Date, the common stock of PG&E Corporation will continue to be traded on the New York Stock Exchange, or an equivalent major stock exchange satisfactory to the Ad Hoc Subrogation Group. |

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 19 of 22

## **Schedule 1**

### Short-Term Utility Unsecured Notes

1. $550 million principal amount of 3.50% senior notes due October 1, 2020

2. $250 million principal amount of 3.50% senior notes due October 1, 2020

3. $300 million principal amount of 4.25% senior notes due May 15, 2021

4. $250 million principal amount of 3.25% senior notes due September 15, 2021

5. $400 million principal amount of 2.45% senior notes due August 15, 2022

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 20 of 22

**Schedule 2**

Long-Term Utility Unsecured Notes

1. $3,000 million principal amount of 6.05% senior notes due March 1, 2034

2. $700 million principal amount of 5.80% senior notes due March 1, 2037

3. $400 million principal amount of 6.35% senior notes due February 15, 2038

4. $550 million principal amount of 6.25% senior notes due March 1, 2039

5. $550 million principal amount of 5.40% senior notes due January 15, 2040

6. $250 million principal amount of 5.80% senior notes due March 1, 2037

7. $250 million principal amount of 5.40% senior notes due January 15, 2040

8. $250 million principal amount of 4.50% senior notes due December 15, 2041

9. $400 million principal amount of 4.45% senior notes due April 15, 2042

10. $350 million principal amount of 3.75% senior notes due August 15, 2042

11. $375 million principal amount of 3.25% senior notes due June 15, 2023

12. $375 million principal amount of 4.60% senior notes due June 15. 2043

13. $300 million principal amount of 3.85% senior notes due November 15, 2023

14. $500 million principal amount of 5.125% senior notes due November 15, 2043

15. $450 million principal amount of 3.75% senior notes due February 15, 2024

16. $450 million principal amount of 4.75% senior notes due February 15, 2044

17. $350 million principal amount of 3.40% senior notes due August 15, 2024

18. $225 million principal amount of 4.75% senior notes due February 15, 2044

19. $500 million principal amount of 4.30% senior notes due March 15, 2045

20. $400 million principal amount of 3.50% senior notes due June 15, 2025

21. $100 million principal amount of 4.30% senior notes due March 15, 2045

22. $200 million principal amount of 3.50% senior notes due June 15, 2025

23. $450 million principal amount of 4.25% senior notes due March 15, 2046

Case: 19-30088    Doc# 3147-1    Filed: 07/23/19    Entered: 07/23/19 10:56:24    Page 21 of 22

24. $600 million principal amount of 2.95% senior notes due March 1, 2026

25. $400 million principal amount of 4.00% senior notes due December 1, 2046

26. $400 million principal amount of 3.30% senior notes due March 15, 2027

27. $200 million principal amount of 4.00% senior notes due December 1, 2046

28. $1,150 million principal amount of 3.30% senior notes due December 1, 2027

29. $850 million principal amount of 3.95% of senior notes due 204 7

30. $500 million principal amount of 4.25% senior notes due 2023

31. $300 million principal amount of 4.65% senior notes due 2028