WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**SECOND OMNIBUS MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C § 365(a), FED. R. BANKR. P. 6006, AND B.L.R. 6006-1 FOR AN ORDER (I) APPROVING ASSUMPTION OF CONTRACTS IN CONNECTION WITH THE COMMUNITY PIPELINE SAFETY INITIATIVE AND (II) GRANTING RELATED RELIEF ("CPSI AGREEMENT ASSUMPTION MOTION")**<br><br>Date:  August 14, 2019<br>Time:  9:30am (Pacific Time)<br>Place:  United States Bankruptcy Court<br>　　　Courtroom 17, 16th Floor<br>　　　San Francisco, CA 94102<br>Judge: Hon. Dennis Montali<br><br>**Objection Deadline:** August 7, 2019, 4pm (Pacific Time) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

> **NOTICE TO COUNTERPARTIES**
>
> **A list of the CPSI Agreements (as defined below) identified by a unique identifier (a "CPSI ID") is annexed hereto as <u>Exhibit B</u>. Counterparties to the CPSI Agreements have received, together with this motion, a letter which identifies which CPSI ID corresponds to their CPSI Agreement. Counterparties receiving this motion should locate their CPSI ID and the contract listed in <u>Exhibit B</u>.**

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to section 365(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6006-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), for an order (i) approving the Utility's assumption of certain agreements entered into with landowners in connection with the Community Pipeline Safety Initiative (the "**CPSI**"), which agreements provide the Utility necessary access to land on which the Utility's gas transmission pipelines are located to carry out critical vegetation removal and other clearing projects that ensure the Utility and emergency services providers can access the Utility's gas transmission pipelines (collectively, the "**CPSI Agreements**") and (ii) make cure payments totaling $469,865.00 (with an average payment of $5,730.06 per CPSI Agreement providing for monetary compensation) in connection with the CPSI Agreements.

In support of the Motion, the Utility submits the Declaration of Joe Echols (the "**Echols Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Order**").

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

## III. THE COMMUNITY SAFETY PIPELINE INITIATIVE

The Utility operates a vast gas pipeline system which delivers pressurized natural gas through approximately 6,600 miles of transmission pipelines and 42,000 miles of distribution pipelines throughout the state of California (the "**Pipeline System**"). *See* Echols Declaration ¶ 5. In operating the Pipeline System, the Utility's first and primary concern is ensuring the safety of its customers and

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

other community residents in the areas in which the Pipeline System is located. In connection with the operation of the Pipeline System, the Utility is required to comply with various federal, state, and local safety and operational regulations, including federal regulations that require gas pipeline operators continuously monitor its pipeline system and remedy any segments in unsatisfactory condition as well as a state mandate that "each gas corporation place [the] safety of the public and gas corporation employees as [its] top priority." *See* California Public Utilities Code § 963(b)(3), *see also* 49 C.F.R. § 192.613.

As a part of its multi-faceted efforts to ensure the safe operation of the Pipeline System, in 2013, the Utility implemented the CPSI program.[1] The first step of the CPSI program was a comprehensive survey of the Pipeline System. *See* Echols Declaration ¶ 6. This inspection process identified situations where structures and vegetation were located too close to the pipelines, which, left undisturbed, could delay critical access for first responders and safety crews in emergency situations or threaten the integrity of the Pipeline System. *See id.* Once identified, the Utility begun undertaking projects to remove these obstructions. *See id.*

The Utility has two primary types of active CPSI projects: (i) projects where the Utility is working with municipalities and private property owners to address – either by removing or relocating – structures built over or near transmission pipelines which are located within the Utility's right-of-ways and could interfere with access to the pipeline and its safe operation (the "**Structure Projects**") and (ii) projects where the Utility is working with municipalities and private property owners to clear vegetation (*e.g.*, trees and brush) from the area above the transmission pipelines that could impede access for critical maintenance work or in the event of an emergency (the "**Vegetation Projects**" and, together with the Structure Projects, the "**CPSI Projects**"). *See id.* ¶ 7. In addition, trees and other vegetation located in close proximity to the gas pipelines can interfere with the Utility's ability to monitor the area and ensure the pipeline is operating safely as well as increase the likelihood of third parties inadvertently digging into and damaging the pipeline. *See id.*

---

[1] Partially in response to the Utility's establishment of the CPSI program in 2013, the California Public Utilities Commission (the "**CPUC**") amended General Order No. 112-F in 2015 to include rule 143.5, which requires utilities to arrange for the removal of buildings or other encroachments built over pipeline facilities.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The CPSI Agreements cover some of the last CPSI projects that need to be completed. Following completion of the CPSI program, the Utility will continue to monitor the Pipeline System through ongoing aerial and ground-based surveillance, and rectify any new obstructions to access to the Pipeline System on an as-needed basis. *See id.* ¶ 8.

## IV. THE CPSI AGREEMENTS

The Utility typically has easements on the properties where its gas transmission pipelines are located, giving it the legal right to access these properties and carry out the CPSI Projects. To gain access to the relevant properties, the Utility typically seeks and obtains a landowner's consent. *See id.* ¶ 9. Absent such consent, the Utility would be required to enforce its right of access under the easements through time-consuming and potentially costly litigation. Accordingly, to help facilitate consensual access, and because the CPSI Projects often require removal of structures or vegetation located on private or municipal property, some property owners seek, and the Utility will agree to provide them with, compensation to complete the CPSI Projects. *See id.* This compensation is typically in the form of cash and/or replacement vegetation. *See id.*

The Utility and the property owner typically memorialize the scope of the project and associated compensation in a letter agreement styled as an *Action Plan for Safety Work Near Gas Pipeline,* an *Action Plan for Vegetation Removal*, or similar title (the "**Action Plan Letters**"). *See id.* ¶ 10. The Action Plan Letters generally each include, among other things, the following key terms: (a) the items to be removed; (b) the scope of work to be undertaken by the Utility; (c) any compensation to be provided or paid by the Utility; and (d) an agreement by the property owner to permit the Utility to enter the property to take the necessary steps to complete the project. *See id.* An example of the form of an Action Plan Letter appears as **Exhibit A** to the Echols Declaration.

In some cases, rather than an Action Plan Letter, the agreement between the property owner and the Utility is documented in a less formal *Gas Transmission Work Authorization Form* or similar title (the "**Informal Agreements**"). *See id.* ¶ 11. The Informal Agreements contain similar terms to Action Plan Letters but in less detail. *See id.* An example of the form of an Informal Agreement appears as **Exhibit B** to the Echols Declaration.

In other circumstances, generally where compensation over $20,000 is to be paid by the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Utility, the Utility enters into a more detailed agreement with the property owner titled as a "*Confidential Settlement Agreement and General Release*" or similar agreement (the "**Long-form Agreements**"). *See id.* ¶ 12. The Long-form Agreements generally each include, among other things, the following key terms: (a) an agreement by the property owner to allow the Utility to enter the property and undertake the relevant CPSI Projects or an agreement that the property owner will take the necessary steps to complete the project(s); (b) a settlement payment to the property owner, either payable in full upon completion of the project(s), or partially payable on execution of the Long-form Agreement, with the balance paid following the completion of the project; (c) a release from the property owners for the benefit of the Utility; and (d) an obligation on the property owner to maintain the Utility's easement free of structures and certain vegetation. *See id*. An example of the form of a Long-form Agreement appears as **Exhibit C** to the Echols Declaration.

The Utility enters into Action Plan Letters, Informal Agreements, and Long-form Agreements on a regular basis, including postpetition, in the ordinary course of its business. *See id.* ¶ 13. As further outlined below, the assumption of the CPSI Agreements pursuant to this motion is intended to ensure the Utility can perform under agreements which were executed prepetition but are yet to be fully performed.

## V. COMPLETION OF THE CPSI PROJECTS

The Utility has identified 92 Action Plan Letters, 1 Informal Agreement, and 5 Long-form Agreements which were entered into prior to the Petition Date where either (i) the project has not yet been completed and no payments or provision of nonmonetary compensation has been provided or (ii) the project has not yet been completed, an initial payment to the property owner has been paid, and the balance of the payment is due upon project completion. *See id.* ¶ 14. A list of the counterparties to, and the contemplated consideration under, each CPSI Agreement appears as **Exhibit B** to this Motion. The total monetary compensation contemplated to be paid under the CPSI Agreements that are the subject of this Motion is $469,865.00, with an average payment of $5,730.06 per CPSI Agreement providing for monetary compensation. *See id*.

The Utility seeks to assume the CPSI Agreements so that the Utility can carry out critical CPSI Projects that are necessary for ensuring the safe operation of the Pipeline System. *See id.* ¶ 15.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Utility expects that if it sought to exercise its rights under the CPSI Agreements absent assurances that the property owners will be entitled to payment per the terms of the CPSI Agreements, it would likely face resistance, and a potentially protracted and expensive process, in obtaining the requisite consent to access the pipelines. *See id.* A failure in timely completing the CPSI Projects could (i) result in a breach of the applicable regulatory requirements and (ii) cause a significant risk to public safety, as the Utility and emergency services will be hindered from accessing portions of their gas transmission lines in the event of a natural disaster or other emergency. *See id.*

## VI. RELIEF REQUESTED

The Utility seeks an order (i) approving the assumption of the CPSI Agreements under section 365(a) of the Bankruptcy Code and (ii) authorization to file this Motion as an omnibus motion to assume multiple contracts pursuant to Bankruptcy Rule 6006(e).

## VII. BASIS FOR RELIEF REQUESTED

The Utility's assumption of the CPSI Agreements should be approved under section 365(a) of the Bankruptcy Code. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract . . . of the debtor." 11 U.S.C. § 365(a).

The Supreme Court has defined "executory contracts" as contracts "on which performance is due to some extent on both sides." *NLRB v Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984). The Ninth Circuit has described executory contracts in similar terms, describing them as contracts where "one party's failure to perform its obligation would excuse the other party's performance." *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc).,* 503 F.3d 933, 941 (9th Cir. 2007), citing *Commercial Union Ins. Co. v. Texscan Corp. (In re Texscan Corp.)*, 976 F.2d 1269, 1272 (9th Cir. 1992). The CPSI Agreements clearly fall within this definition. In each case, there remains material performance obligations on both the Utility and the counterparties under the CPSI Agreements. Unlike in *International Fibercom* or *Texscan*, there is no statutory or contractual basis to force performance by the counterparties if the Utility does not perform its obligations under the CPSI Agreements while in Chapter 11.

Bankruptcy Courts generally "approve motions to assume, assume and assign, or reject

executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir., 2000); *In re Miller,* No. 15-61159-12, 2016 WL 1316763, at *4 (Bankr. D. Mont. Apr. 1, 2016).

The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract will benefit the debtor's estate. *See Bakery, Confectionary & Tobacco Workers Int'l Union v. Kirkpatrick (In re Kirkpatrick)*, 34 B.R. 767, 769 (B.A.P. 9th Cir. 1983); *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.),* 292 B.R. 195, 199 (N.D. Cal. 2003), *aff'd*, 392 F.3d 1064 (9th Cir. 2004) ("Bankruptcy courts generally approve rejection if the debtor demonstrates that the rejection will benefit the estate under a 'business judgment' test."); *In re Am. Suzuki Motor Corp.*, 494 B.R. 466, 476 (Bankr. C.D. Cal. 2013). Furthermore, "[c]ourts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract or unexpired lease would benefit the debtor's estate." *In re MF Glob. Holdings Ltd.*, 466 B.R. at 242; *In re Miller,* 2016 WL 1316763, at *4 ("Although…business judgment is the proper standard for determining whether to permit assumption or rejection of an executory contract or unexpired lease, the court should focus on the business judgment of the trustee or debtor in possession, not on its own business judgment."). The Court should "presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (in the context of a motion to reject under section 365(a)). Only a decision which is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice" runs afoul of the rule. *Id*.

As outlined above and in the Echols Declaration, the Utility seeks to assume the CPSI Agreements to ensure the continued safe operation of its gas transmission pipeline network and compliance with the applicable regulatory requirements as outlined above. *See also* Echols Declaration ¶ 16. The CPSI program is one of many important programs necessary to ensure access to the Pipeline System for monitoring and repairs and in the event of a natural disaster or other emergency. *See id.* The

program also minimizes the risk of inadvertent damage caused by overgrown vegetation or third parties working near the pipeline. *See id.* Given the size and importance of the Pipeline System, the ability to safely operate and maintain the system is fundamental to the continued success of the Utility's business. *See id.* Permitting the Utility to perform under the CPSI Agreements helps to preserve the value of the Pipeline System and, more broadly, the Debtors' Utility business, to the benefit of its creditors, shareholders and other stakeholders.

When assuming an executory contract, section 365(b) of the Bankruptcy Code requires the debtor to cure any defaults under the contract or provide adequate assurance that it will promptly cure these defaults. *See* 11 U.S.C. § 365(b)(1)(A); *see also In re Crummie*, 194 B.R. 230, 237 (Bankr. N.D. Cal. 1996); *In re Heitman*, No. 99-20559, 1999 WL 33486720, at *1 (Bankr. D. Idaho July 22, 1999) ("Additionally, § 365(a) and (b) require Court approval of assumption, and only then upon proof of satisfaction of certain prerequisites regarding cure of defaults and adequate assurance of future performance."). In most cases, there are no current defaults under the CPSI Agreements. In some instances, the Utility may be in default of an obligation to pay monetary compensation on a certain date or time. These defaults will be promptly cured following the grant of relief sought in this Motion by payment of any outstanding amounts owed.

## VIII. REQUEST FOR BANKRUPTCY RULE 6006 WAIVERS

### A. Rule 6006(e) Waiver

The Utility requests authorization pursuant to Bankruptcy Rule 6006(e) to file this Motion as an omnibus motion to assume the CPSI Agreements. As outlined above, (i) the CPSI Agreements are all related to the CPSI program; (ii) the CPSI Agreements follow a small number of standard forms; and (iii) the majority of the CPSI Agreements are of a low value. Accordingly, the Utility believes there is ample cause for an order permitting this Motion to be heard as an omnibus motion to avoid the Utility's estate bearing the cost of numerous, near-identical motions to assume each CPSI Agreement. There is no detriment to any party in interest in having the Motion heard as an omnibus motion.

### B. Rule 6006(f) Waiver

Under Bankruptcy Rule 6006(f), the Utility may join requests for authority to assume multiple executory contracts in one motion if the authorization requested under Bankruptcy Rule 6006(e)

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

is granted. Bankruptcy Rule 6006(f) provides that a motion to assume (or reject) multiple executory contracts or unexpired leases that are not between the same parties shall:

    (1)    state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

    (2)    list parties alphabetically and identify the corresponding contract or lease;

    (3)    specify the terms, including the curing of defaults, for each requested assumption or assignment;

    (4)    specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

    (5)    be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

    (6)    be limited to no more than 100 executory contracts or unexpired leases

The Motion and notice thereof as described herein (i) clearly and conspicuously direct parties to the list of CPSI Agreements and provide sufficient information to determine whether their agreements are covered by the Motion, (ii) specify the consideration owed (and therefore any cure amount), and (iii) is the second omnibus motion filed in the Chapter 11 Cases, therefore largely satisfying the requirements of Bankruptcy Rule 6006(f). The Debtors have organized the list of counterparties and CPSI Agreements by their unique CPSI ID rather than alphabetically, which is more useful to counterparties receiving copies of the Motion in identifying the relevant CPSI Agreement.

For the reasons outlined above, the Utility respectfully submits that its compliance with the requirements of Bankruptcy Rule 6006(f) as described herein is appropriate, satisfies due process, and should be approved as good and sufficient.

## IX. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District

of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) each counterparty to the CPSI Agreements; and (xiii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Utility respectfully submit that no further notice is required.

The Debtors have previously sought relief from this Court to assume other executory contracts, in the *Debtors' Omnibus Motion Pursuant to 11 U.S.C. § 365(a), Fed. R. Bankr. P. 6006, and B.L.R. 6006-1 to Approve the Utility's Assumption of Mutual Assistance Agreements* [Docket No. 2588]. No previous request for the relief sought herein in respect to the CPSI Agreements has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: July 24, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Jessica Liou
      Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*