WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C.
(ray.schrock@weil.com) (*pro hac vice*)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF JOE ECHOLS IN SUPPORT OF CPSI AGREEMENT ASSUMPTION MOTION**<br><br>Date: August 14, 2019<br>Time: 9:30am (Pacific Time)<br>Place: United States Bankruptcy Court<br>    Courtroom 17, 16th Floor<br>    San Francisco, CA 94102<br>Judge: Hon. Dennis Montali<br><br>**Objection Deadline:** August 7, 2019, 4pm (Pacific Time) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Joe Echols, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.    I am a Manager, Vegetation Management, at Pacific Gas and Electric Company (the "**Utility**" and, together with PG&E Corporation, the "**Debtors**"). I joined the Utility in 2010 and held a number of positions in the Utility, including Manager, Land Department & Community Pipeline Safety Initiative, and Supervisor, Land Department. I am a certified Senior Right of Way professional.

2.    I am knowledgeable and familiar with the Utility's day-to-day operations and, specifically, the Utility's Community Pipeline Safety Initiative (the "**CPSI**") program.

3.    I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Second Omnibus Motion of Debtors Pursuant to 11 U.S.C § 365(a), Fed. R. Bankr. P. 6006, and B.L.R. 6006-1 for an Order (i) Approving The Utility's Assumption of Contracts in Connection with the Community Pipeline Safety Initiative and (ii) Granting Related Relief* (the "**Motion**").[1]

4.    The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' other employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify to the facts set forth in this Declaration.

## THE COMMUNITY SAFETY PIPELINE INITIATIVE

5.    The Utility operates a vast gas pipeline system which delivers pressurized natural gas through approximately 6,600 miles of transmission pipelines and 42,000 miles of distribution pipelines throughout the state of California (the "**Pipeline System**"). In operating the Pipeline System, the Utility's first and primary concern is ensuring the safety of its customers and other community residents in the areas in which the Pipeline System is located. In connection with the operation of the Pipeline System, the Utility is required to comply with various federal, state, and local safety and

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

operational regulations, including federal regulations that require gas pipeline operators continuously monitor its pipeline system and remedy any segments in unsatisfactory condition as well as a state mandate in California Public Utilities Code § 963(b)(3) that "each gas corporation place [the] safety of the public and gas corporation employees as [its] top priority."

6. As a part of its multi-faceted efforts to ensure the safe operation of the Pipeline System, in 2013, the Utility implemented the CPSI program.[2] The first step of the CPSI program was a comprehensive survey of the Pipeline System. This inspection process identified situations where structures and vegetation were located too close to the pipelines, which, left undisturbed, could delay critical access for first responders and safety crews in emergency situations or threaten the integrity of the Pipeline System. Once identified, the Utility begun undertaking projects to remove these obstructions.

7. The Utility has two primary types of active CPSI projects: (i) projects where the Utility is working with municipalities and private property owners to address – either by removing or relocating – structures built over or near transmission pipelines which are located within the Utility's right-of-ways and could interfere with access to the pipeline and its safe operation (the "**Structure Projects**") and (ii) projects where the Utility is working with municipalities and private property owners to clear vegetation (*e.g.*, trees and brush) from the area above the transmission pipelines that could impede access for critical maintenance work or in the event of an emergency (the "**Vegetation Projects**" and, together with the Structure Projects, the "**CPSI Projects**"). In addition, trees and other vegetation located in close proximity to the gas pipelines can interfere with the Utility's ability to monitor the area and ensure the pipeline is operating safely as well as increase the likelihood of third parties inadvertently digging into and damaging the pipeline.

8. The CPSI Agreements cover some of the last CPSI projects that need to be completed. Following completion of the CPSI program, the Utility will continue to monitor the Pipeline

---

[2] Partially in response to the Utility's establishment of the CPSI program in 2013, the California Public Utilities Commission (the "**CPUC**") amended General Order No. 112-F in 2015 to include rule 143.5, which requires utilities to arrange for the removal of buildings or other encroachments built over pipeline facilities.

System through ongoing aerial and ground-based surveillance, and rectify any new obstructions to access to the Pipeline System on an as-needed basis.

## THE CPSI AGREEMENTS

9.    The Utility typically has easements on the properties where its gas transmission pipelines are located, giving it the legal right to access these properties and carry out the CPSI Projects. To gain access to the relevant properties, the Utility typically seeks and obtains a landowner's consent. Absent such consent, the Utility would be required to enforce its right of access under the easements through time-consuming and potentially costly litigation.  Accordingly, to help facilitate consensual access, and because the CPSI Projects often require removal of structures or vegetation located on private or municipal property, some property owners seek, and the Utility will agree to provide them with, compensation to complete the CPSI Projects.  This compensation is typically in the form of cash and/or replacement vegetation.

10.   The Utility and the property owner typically memorialize the scope of the project and associated compensation in a letter agreement styled as an *Action Plan for Safety Work Near Gas Pipeline,* an *Action Plan for Vegetation Removal*, or similar title (the "**Action Plan Letters**").  The Action Plan Letters generally each include, among other things, the following key terms: (a) the items to be removed; (b) the scope of work to be undertaken by the Utility; (c) any compensation to be provided or paid by the Utility; and (d) an agreement by the property owner to permit the Utility to enter the property to take the necessary steps to complete the project.  An example of the form of an Action Plan Letter is attached hereto as <u>**Exhibit A**</u>.

11.   In some cases, rather than an Action Plan Letter, the agreement between the property owner and the Utility is documented in a less formal *Gas Transmission Work Authorization Form* or similar title (the "**Informal Agreements**").  The Informal Agreements contain similar terms to Action Plan Letters but in less detail.  An example of the form of an Informal Agreement is attached hereto as <u>**Exhibit B.**</u>

12.   In other circumstances, generally where compensation over $20,000 is to be paid by the Utility, the Utility enters into a more detailed agreement with the property owner titled as a "*Confidential Settlement Agreement and General Release*" or similar agreement (the "**Long-form**

**Agreements**").  The Long-form Agreements generally each include, among other things, the following key terms: (a) an agreement by the property owner to allow the Utility to enter the property and undertake the relevant CPSI Projects or an agreement that the property owner will take the necessary steps to complete the project(s); (b) a settlement payment to the property owner, either payable in full upon completion of the project(s), or partially payable on execution of the Long-form Agreement, with the balance paid following the completion of the project; (c) a release from the property owners for the benefit of the Utility; and (d) an obligation on the property owner to maintain the Utility's easement free of structures and certain vegetation.  An example of the form of a Long-form Agreement is attached hereto as **Exhibit C**.

13.  The Utility enters into Action Plan Letters, Informal Agreements, and Long-form Agreements on a regular basis, including postpetition, in the ordinary course of its business.  As further outlined below, the assumption of the CPSI Agreements pursuant to the Motion is intended to ensure the Utility can perform under agreements which were executed prepetition but are yet to be fully performed.

## COMPLETION OF THE CPSI PROJECTS

14.  The Utility has identified 92 Action Plan Letters, 1 Informal Agreement, and 5 Long-form Agreements which were entered into prior to the Petition Date where either (i) the project has not yet been completed and no payments or provision of nonmonetary compensation has been provided or (ii) the project has not yet been completed, an initial payment to the property owner has been paid, and the balance of the payment is due upon project completion.  A list of the counterparties to, and the contemplated consideration under, each CPSI Agreement appears as **Exhibit B** to the Motion.  The total monetary compensation contemplated to be paid under the CPSI Agreements that are the subject of the Motion is $469,865.00, with an average payment of $5,730.06 per CPSI Agreement providing for monetary compensation.

15.  The Utility seeks to assume the CPSI Agreements so that the Utility can carry out critical CPSI Projects that are necessary for ensuring the safe operation of the Pipeline System.  The Utility expects that if it sought to exercise its rights under the CPSI Agreements absent assurances that the property owners will be entitled to payment per the terms of the CPSI Agreements, it would likely

face resistance, and a potentially protracted and expensive process, in obtaining the requisite consent to access the pipelines. A failure in timely completing the CPSI Projects could (i) result in a breach of the applicable regulatory requirements and (ii) cause a significant risk to public safety, as the Utility and emergency services will be hindered from accessing portions of their gas transmission lines in the event of a natural disaster or other emergency.

16. The Utility seeks to assume the CPSI Agreements to ensure the continued safe operation of its gas transmission pipeline network and that it is in compliance with the applicable regulatory requirements as outlined above. The CPSI program is one of many important programs necessary to ensure access to the Pipeline System for monitoring and repairs and in the event of a natural disaster or other emergency. The program also minimizes the risk of inadvertent damage caused by overgrown vegetation or third parties working near the pipeline. Given the size and importance of the Pipeline System, the ability to safely operate and maintain the system is fundamental to the continued success of the Utility's business. I believe that permitting the Utility to perform under the CPSI Agreement helps to preserve the value of the Pipeline System and, more broadly, the Debtors' Utility business, to the benefit of its creditors, shareholders and other stakeholders. Accordingly, I believe the relief requested in the Motion should be approved as a sound exercise of the Utility's business judgment.

[*Remainder of this page is intentionally left blank*]

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at San Ramon, California on July 24, 2019.

/s/ Joe Echols
Joe Echols

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119