1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                    -oOo-

4   In Re:                      ) Case No. 19-30088
                                ) Chapter 11
5   PG&E CORPORATION AND PACIFIC )
    GAS AND ELECTRIC COMPANY     ) San Francisco, California
6                                ) Wednesday, July 24, 2019
                        Debtors. ) 9:30 AM
7   _____ )
                                    MOTION FOR RELIEF FROM STAY
8                                   FILED BY ADAM CRONIN [2579];

9                                   MOTION OF THE AD HOC
                                    COMMITTEE OF SENIOR UNSECURED
10                                  NOTEHOLDERS TO TERMINATE THE
                                    DEBTORS' EXCLUSIVE PERIODS
11                                  PURSUANT TO SECTION
                                    1121(D)(1) OF THE BANKRUPTCY
12                                  CODE FILED BY AD HOC
                                    COMMITTEE OF SENIOR UNSECURED
13                                  NOTEHOLDERS OF PACIFIC GAS
                                    AND ELECTRIC COMPANY [2741];
14
                                    APPLICATION PURSUANT TO 11
15                                  U.S.C. SECTIONS 327 AND 328
                                    FOR AN ORDER AUTHORIZING
16                                  EMPLOYMENT AND RETENTION OF
                                    DELOITTE & TOUCHE LLP AS
17                                  INDEPENDENT AUDITOR AND
                                    ADVISOR TO THE DEBTORS, NUNC
18                                  PRO TUNC TO THE PETITION DATE
                                    [2197];
19
                                    STATUS CONFERENCE RE MOTIONS
20                                  FOR RELIEF FROM STAY DKT
                                    #2904 AND 2863 AND ESTIMATION
21                                  MOTION DKT #3091.

22               TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE DENNIS MONTALI
23             UNITED STATES BANKRUPTCY JUDGE

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1
    APPEARANCES:
 2  For the Debtors:        STEPHEN KAROTKIN, ESQ.
                            RAY C. SCHROCK, P.C.
 3                          MATTHEW GOREN, ESQ.
                            JESSICA LIOU, ESQ.
 4                          THEODORE E. TSEKERIDES, ESQ.
                            Weil, Gotshal & Manges LLP
 5                          767 Fifth Avenue
                            New York, NY 10153
 6                          (212)310-8350

 7                          KEVIN J. ORSINI, ESQ.
                            Cravath, Swaine & Moore LLP
 8                          825 Eighth Avenue
                            New York, NY 10019
 9                          (212)474-1596

10                          PETER J. BENVENUTTI, ESQ.
                            Keller & Benvenutti LLP
11                          650 California Street
                            Suite 1900
12                          San Francisco, CA 94108
                            (415)364-6798
13
    For Official Creditors'  GREGORY BRAY, ESQ.
14  Committee:              Milbank LLP
                            2029 Century Park East
15                          33rd Floor
                            Los Angeles, CA 90067
16                          (424)386-4470

17                          ANDREW LEBLANC, ESQ.
                            Milbank LLP
18                          1850 K Street NW
                            Suite 1100
19                          Washington, DC 20006
                            (202)835-7574
20
                            DENNIS F. DUNNE, ESQ.
21                          Milbank LLP
                            55 Hudson Yards
22                          New York, NY 10001
                            (212)530-5770
23

24

25
```

```
 1   For Ad Hoc Group of          MATTHEW A. FELDMAN, ESQ.
     Subrogation Claimants:       BENJAMIN P MCCALLEN, ESQ.
 2                                Willkie Farr & Gallagher LLP
                                  787 Seventh Avenue
 3                                New York, NY 10019
                                  (212)728-8182
 4
     For Equity Holders:          BRUCE BENNETT, ESQ.
 5                                JAMES O. JOHNSTON, ESQ.
                                  Jones Day
 6                                555 South Flower Street
                                  Fiftieth Floor
 7                                Los Angeles, CA 90071
                                  (213)489-3939
 8
     For Ad Hoc Group of          MICHAEL S. STAMER, ESQ.
 9   Bondholders:                 DAVID H. BOTTER, ESQ.
                                  ABID QURESHI, ESQ.
10                                Akin Gump Strauss Hauer & Feld LLP
                                  One Bryant Park
11                                New York, NY 10036
                                  (212)872-1000
12
                                  ASHLEY VINSON CRAWFORD, ESQ.
13                                Akin Gump Strauss Hauer & Feld LLP
                                  580 California Street
14                                Suite 1500
                                  San Francisco, CA 94104
15                                (415)765-9500

16   For Lead Plaintiffs in       RANDY MICHELSON, ESQ.
     Federal Action:              Michelson Law Group
17                                100 Pine Street
                                  Suite 2450
18                                San Francisco, CA 94111
                                  (415)512-8600
19
     For California Public        ALAN W. KORNBERG, ESQ.
20   Utilities Commission:        Paul, Weiss, Rifkind, Wharton &
                                  Garrison LLP
21                                1285 Avenue of the Americas
                                  New York, NY 10019
22                                (212)373-3209

23

24

25
```

```
1   For Sonoma Clean Power      G. LARRY ENGEL, ESQ.
    Authority:                  Engel Law, PC
2                               12116 Horseshoe Lane
                                Nevada City, CA 95959
3                               (415)370-5943

4   For BOKF, N.A.:             ANDREW I. SILFEN, ESQ.
                                Arent Fox LLP
5                               1301 Avenue of the Americas
                                42nd Floor
6                               New York, NY 10019
                                (212)484-3900
7
    For HoldCo Lender Group:    MICHAEL LAUTER, ESQ.
8                               Sheppard Mullin Richter & Hampton
                                LLP
9                               Four Embarcadero Center
                                17th Floor
10                              San Francisco, CA 94111
                                (415)434-9100
11
                                AMY CATON, ESQ.
12                              Kramer Levin Naftalis & Frankel
                                LLP
13                              1177 Avenue of the Americas
                                New York, NY 10036
14                              (212)715-7772

15  For Official Committee of   ROBERT A. JULIAN, ESQ.
    Tort Claimants:             CECILY A. DUMAS, ESQ.
16                              Baker & Hostetler LLP
                                11601 Wilshire Boulevard
17                              Suite 1400
                                Los Angeles, CA 90025
18                              (310)442-8887

19
    For Wildfire Victims:       DARIO DE GHETALDI, ESQ.
20                              Corey, Luzaich, de Ghetaldi &
                                Riddle LLP
21                              700 El Camino Real
                                Millbrae, CA 94030
22                              (650)871-5666

23

24

25
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For Governor of California   MATTHEW L. HINKER, ESQ.
     and Department of Finance    O'Melveny & Myers LLP
 2   of State of California:      7 Times Square
                                  New York, NY 10036
 3                                (212)326-2000

 4   For Adam Cronin:             ADAM CRONIN, Pro Se

 5

 6

 7

 8

 9

10

11

12

13

14

15

16
     Court Recorder:             JOHN BOLTS
17                               United States Bankruptcy
                                 Court
18                               450 Golden Gate Avenue
                                 16th Floor
19                               San Francisco, CA 94102

20   Transcriber:               PENINA WOLICKI
                                eScribers, LLC
21                              7227 N. 16th Street
                                Suite #207
22                              Phoenix, AZ 85020
                                (973)406-2250
23
     Proceedings recorded by electronic sound recording;
24   transcript provided by transcription service.

25
```

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, JULY 24, 2019, 9:31 AM

2                              -oOo-

3       (Call to order of the Court.)

4            THE COURT:  Good morning, everyone.  Full house.

5            Mr. Karotkin, good morning.

6            MR. KAROTKIN:  Good morning, sir.

7            THE COURT:  Any reason -- should we stick with the

8    posted agenda, or do we have any changes?

9            MR. KAROTKIN:  No, I think we can do that.  I would

10   just like to advise the Court that with respect to item number

11   2, the Deloitte retention application, that's been resolved,

12   and the Office of the United States Trustee has advised that I

13   can tell you they've withdrawn their objection.

14           THE COURT:  It's a good thing.

15           Well, I was going to comment on your opposition, which

16   cited a bunch of out-of-area cases without telling me what

17   courts they were in and didn't say anything about a Ninth

18   Circuit controlling case.  But in view of the withdrawal, I'll

19   grant the motion.  So we'll take that out of order and take

20   care of it.

21           MR. KAROTKIN:  Okay.  I believe, Your Honor, with

22   respect to item 1, Mr. Benvenutti will be --

23           THE COURT:  Okay.

24           MR. KAROTKIN:  -- addressing the Court.

25           THE COURT:  Um-hum.  Is Mr. Cronin here this morning?

PG&E Corp. And Pacific Gas And Electric Company

1  Any sign of Adam Cronin?

2          MR. KAROTKIN:  There he is.

3          THE COURT:  Mr. Cronin, all right.  We're going to

4  take your case first, Mr. Cronin.

5          And Mr. Benvenutti, you're up for that?

6          MR. BENVENUTTI:  Yes, I am, Your Honor.

7          THE COURT:  Okay, Mr. Cronin, sorry, come up to the

8  podium, please.  Did you get the message from my clerk about

9  the schedule today?

10          MR. CRONIN:  I did, Your Honor.

11          THE COURT:  Okay.  So why don't you go ahead and tell

12  me why you should get relief from stay.  And let me ask you in

13  advance, did you see the decisions that I've posted in the case

14  earlier on a couple of other cases?

15          MR. CRONIN:  I have.

16          THE COURT:  Okay.  So go ahead and tell me why, and

17  we're going to keep your time somewhat limited here.

18          MR. CRONIN:  Okay.  I'm requesting relief from the

19  automatic stay because in response to what PG&E's objection is,

20  I believe that my case is more similar to -- in terms of the

21  context that this Court used to grant relief from stay to the

22  CCSF case.

23          THE COURT:  And why do you think that's so?

24          MR. CRONIN:  Because this Court reasoned that -- let

25  me -- so PG&E wrongfully suggests in the Gelman decision that

PG&E Corp. And Pacific Gas And Electric Company

1   the Gelman decision is or should be applicable to all

2   individual cases categorized similar to mine.  This Court

3   previously stated that the Court must analyze each such request

4   for relief on a case-by-case basis.

5       THE COURT:  Well, that's true.  I agree.  I do.

6       MR. CRONIN:  So in the -- excuse me -- in the CCSF

7   case, the -- the Court reasoned that the lengthy litigation

8   between CC -- CCSF and PG&E before the Federal Energy

9   Regulatory Commission justified relief from stay.  That

10  litigation before a specialized tribunal will take far longer,

11  and it is arguably more complex than the Gelman and Valero

12  litigation.

13      THE COURT:  Right.  Right.

14      MR. CRONIN:  Although my case is not being heard by a

15  specialized tribunal like FERC, my case was investigated and

16  granted legal -- legal authority by the -- by the DFEH, which

17  is a specialized governing agency, to pursue actionable claims

18  in a state -- state court forum.

19      THE COURT:  Right.  But you're on your own now in the

20  state court.  I mean, it's the superior court --

21      MR. CRONIN:  Um-hum.

22      THE COURT:  -- you versus the company.  And the issue

23  is going to be resolved one way or the other in favor -- in

24  your favor or against you, right?

25      MR. CRONIN:  Right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    THE COURT:  Okay.  So it's no long -- I mean, I'm not

2  suggesting the superior court isn't an appropriate court, but

3  it's not a specialized court like the --

4    MR. CRONIN:  Right.

5    THE COURT:  -- Federal Energy Commission.

6    MR. CRONIN:  Right.

7    THE COURT:  Okay.

8    MR. CRONIN:  But their -- the Gelman and Valero cases

9  are almost done.  Mine are in the early stages of litigation.

10  The Gelman and Valero cases are based on single incidences,

11  whereas mine has literally hundreds of issues and individuals

12  that need to be investigated that span a time frame  of a year

13  and --

14    THE COURT:  But you're only in there on your own,

15  right?  I mean, you -- it's not a class action.  It's your --

16    MR. CRONIN:  It's --

17    THE COURT:  -- your complaint against the utility.

18    MR. CRONIN:  Right.

19    THE COURT:  Right?  Your former employer?

20    MR. CRONIN:  Right.

21    THE COURT:  Okay.  But I mean, so what would happen --

22  if you get relief from stay and the matter goes forward, what

23  are you going to do?  How do you present your case?  You

24  present your case and --

25    MR. CRONIN:  Um-hum.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1      THE COURT:  -- how you are claimed you are harmed, and

2  the company responds, and the court decides, right?

3      MR. CRONIN:  Right.  But the -- this Court makes the

4  argument that the CCSF case is going to be much lengthier and

5  much more complex than the Gelman and Valero cases, which is

6  also, I would argue, applicable to my case as well.

7      THE COURT:  Okay.  You did file a proof of claim in

8  the case here, right?

9      MR. CRONIN:  Yes.

10      THE COURT:  Okay.  All right.  Well, let me hear what

11  Mr. Benvenutti has to say, and I'll give you a little time to

12  respond after you hear from him.  And I can get one of these

13  other gentlemen to let you have a chair.  You don't have to --

14  is there room -- someone make room for Mr. Cronin to be seated

15  there?

16      MR. BENVENUTTI:  He can sit -- he can sit in my chair,

17  Your Honor.

18      THE COURT:  Okay.  All right, Mr. Benvenutti?

19      MR. BENVENUTTI:  Yes, thank you.  Good morning, Your

20  Honor.  Peter Benvenutti for the debtors.

21      As the Court knows, this is a pre-petition claim,

22  employment discrimination, wrongful termination, privacy -- as

23  Mr. Cronin described it.  The litigation is in the early

24  stages.  There's a demurrer hearing pending in the superior

25  court when the case -- when the bankruptcy cases were filed.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    No trial date is set or close.  Mr. Cronin filed a proof of

2    claim, as the Court heard.

3         The claim process is designed to resolve these kinds

4    of disputes.  It's more efficient, more economical, for both

5    parties, particularly given that virtually all of these kinds

6    of disputes ultimately settle.

7         THE COURT:  Is there a jury issue?  Did he --

8         MR. BENVENUTTI:  He hasn't asserted one, Your Honor.

9    It's not evident on the face of the papers that it's a jury

10   issue.

11        THE COURT:  Does the proof of claim take away that

12   option or not?

13        MR. BENVENUTTI:  It would take away the option unless

14   he has a right and asserts the right.

15        THE COURT:  So there's no affirmative demand for jury?

16        MR. BENVENUTTI:  There's no affirmative --

17        THE COURT:  Okay.

18        MR. BENVENUTTI:  -- demand for jury that I'm aware of,

19   Your Honor.  So --

20        THE COURT:  All right.

21        MR. BENVENUTTI:  -- this is against the backdrop, as

22   the Court knows, of the approach the court articulated in the

23   Gelman and Valero decisions, which distilled to its essence, is

24   debtors are entitled to breathing space in view of the

25   complexity of the organization.

PG&E Corp. And Pacific Gas And Electric Company

1    The Court can take judicial notice of the activity

2    that's going on in the case toward reorganization.  And the

3    Court said in the Gelman and Valero decisions, essentially,

4    that the breathing space will last at least until September,

5    and the Court will revisit the question with respect to those

6    claims in September.  And I don't presume to pre-judge what the

7    Court's going to say at that point.

8    But the question, I think, for the Court is:  is there

9    anything about Mr. Cronin's case today that constitutes the

10   kind of compelling circumstances that the Court referenced in

11   the Gelman case and the Gelman decision that would warrant

12   giving his case the kind of special treatment he's asking for

13   and relief from stay so that it can go forward.

14   He hasn't made that kind of a showing.  He hasn't

15   demonstrated, for that matter, I believe, a prima facie case

16   for relief from stay, unlike the claimants in Gelman and

17   Valero.

18   The Curtis factors illustrate why this is not

19   appropriate for relief from stay:  early stages of the

20   litigation; no trial date set; not close; no insurance; no

21   specialized tribunal; litigation won't result in complete

22   resolution of the claim -- as in Gelman, he'd still have to

23   have the claim allowed and come back to the bankruptcy court to

24   get paid; it's definitely not more economical or efficient or

25   better use of judicial resources; and then there's a balance of

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    harms.

2           Little harm, if any, to Mr. Cronin, to have him

3    litigate his claim through the objection process in the

4    bankruptcy court.  The risk to the debtors, aside from

5    diversion of attention, which is not huge in this case,

6    obviously, but it's the floodgates issue.  If Mr. Cronin's

7    claim qualifies for relief from stay, it's going to be very

8    difficult to find any litigation pending in state court that

9    doesn't.

10          So I think this is -- I would hope the Court sees this

11   as a very clear case.  He should not be granted relief from

12   stay, certainly at this time, and instead he should be directed

13   to rely upon the claims process.

14          THE COURT:  Okay.  Mr. Cronin, you have a chance to

15   respond.  And I want you to understand that the case is

16   important to you so it's important to me.  And the fact that

17   there are lots of people here and we've got other matters on

18   the table, it's the point, I have to -- it's an up-or-down

19   question on your issue.  But what have you heard that Mr.

20   Benvenutti says that --

21          MR. CRONIN:  Your Honor, I did demand a --

22          THE COURT:  -- would still persuade me to do what he

23   doesn't want me to do.

24          MR. CRONIN:  I did demand a jury trial in my case.  I

25   have the legal right to one.  I want to pursue that.  As I

PG&E Corp. And Pacific Gas And Electric Company

1   mentioned previously, the DFEH had gone through this.

2   They've --

3           THE COURT:  Well, that -- you don't have to repeat

4   that, because that's history.  I mean --

5           MR. CRONIN:  Right.

6           THE COURT:  -- it's not relevant anymore.  It's a

7   predicate for you to have filed your suit.  I don't know what

8   the company's responses are.  And if somehow it believes that

9   you lost some rights, you can raise those issues, if the matter

10  goes forward in state court.

11          MR. CRONIN:  Um-hum.

12          THE COURT:  Do you understand how the claims process

13  will work here, and if there's an objection to your claim, do

14  you know -- do you understand how that works?

15          MR. CRONIN:  Yeah, I'm aware, and I'm undoubted that

16  they will object to my claim.  I would like to preserve my

17  right to a trial.

18          THE COURT:  Well, no --

19          MR. CRONIN:  That's --

20          THE COURT:  -- by ruling -- if I rule against you

21  today, no one's denying you rights to preserve arguments.

22  You're not waiving any arguments.

23          MR. CRONIN:  Right.

24          THE COURT:  You're simply perhaps not persuading me to

25  let you go forward.  It's just -- then we just maintain the

                PG&E Corp. And Pacific Gas And Electric Company

1   status quo --

2           MR. CRONIN:  Well --

3           THE COURT:  -- and your rights are what they are.

4           MR. CRONIN:  Well, to give you a little background,

5   Your Honor, the -- there is procedural history related to this

6   case.

7           THE COURT:  Um-hum.

8           MR. CRONIN:  In a case that I filed while I was still

9   employed in May of 2016 for the same incidences, that was going

10  on for almost a year, and we still didn't have a trial date

11  set, at that time.

12          THE COURT:  But that's not -- that's not relevant to

13  today's motion.

14          MR. CRONIN:  Right but -- right.  But my point is he

15  had made the argument that the case will settle.  And PG&E

16  doesn't settle.  That's -- that's what I've learned, but --

17          THE COURT:  PG&E is in bankruptcy now --

18          MR. CRONIN:  Right.

19          THE COURT:  -- and a lot -- a lot of things are a

20  little different now.  I won't say they will or won't.

21          MR. CRONIN:  Right.

22          THE COURT:  Okay.  Well, Mr. Cronin, I understand your

23  point.  The fact that I told you I will consider your -- and I

24  am considering your case on its own merits, I am, I don't

25  believe your analysis of your situation resembles the situation

PG&E Corp. And Pacific Gas And Electric Company

1    involved in the City and FERC.  That's a highly complicated,

2    multiyear, complex, ongoing thing.  Yours is important to you,

3    as I say, but it's a discrete issue.

4         I think given the circumstances and what I've

5    explained in Gelman -- Gelman and Valero, those sides will be

6    back asking me to revisit that question again.  So and I will

7    do so when requested.  But I think Mr. Benvenutti's got the

8    persuasive argument here, and you -- it's important to you, but

9    I don't think I can put you up to the front of the queue, if

10    you will, for the --

11         MR. BENVENUTTI:  Your Honor, I'm sorry.

12         THE COURT:  Turn that phone off, please.

13         MR. BENVENUTTI:  I thought I turned this off.

14         THE COURT:  If he answers the phone, I'll rule against

15    him.

16         MR. CRONIN:  Please do.

17         THE COURT:  So Mr. Cronin, I'm sympathetic to your

18    plight, but unfortunately these things are complex, and you

19    haven't really made the case to make a departure from what has

20    got to be the rule for the time being, so I'm going to deny

21    your motion.  I'm not going to continue it to another date,

22    because again, there's a lot of things happening in this

23    bankruptcy, and maybe there'll be a more satisfactory

24    resolution that will leave your case ready to go back to

25    superior court.  Maybe it'll be resolved in the bankruptcy.

PG&E Corp. And Pacific Gas And Electric Company

1  Maybe there will be a compromise.

2  But I think, given the circumstances, to give you

3  relief from stay now isn't really justified under the factors

4  that Mr. Benvenutti and the company have set forth.  So I'm

5  going to go ahead and ask him to submit a fairly form order --

6  form in the sense that it will recite that for the reasons

7  stated on the record today, which I'm stating on the record,

8  your motion is denied.  And it goes without saying that that

9  doesn't decide any other rights.  It simply says for now you

10  remain subject to the automatic stay.

11  I appreciate your effort.  I appreciate your being

12  here and explaining yourself.  And that's the Court's ruling.

13  Okay?  Thank you very much.

14  MR. BENVENUTTI:  Thank you, Your Honor.

15  THE COURT:  All right.

16  MR. BENVENUTTI:  And apologies for my phone going off.

17  THE COURT:  Well, you didn't answer it, so --

18  MR. BENVENUTTI:  I did think -- I did think I turned

19  it off.

20  THE COURT:  -- there were no consequences.

21  One second.  Mr. Karotkin, you recall I said I wanted

22  to devote a few minutes here just to talk about what's on the

23  agenda coming up.  Is that still something that you think would

24  be appropriate for me to deal with the relief from stay

25  motions?

PG&E Corp. And Pacific Gas And Electric Company

1        MR. KAROTKIN:  Yes, yes.

2        THE COURT:  Or not?

3        MR. KAROTKIN:  I think that -- no, that's the next

4    item.  And I think you wanted to --

5        THE COURT:  Yeah.

6        MR. KAROTKIN:  -- you indicated to have some thoughts

7    in the status conference on the --

8        THE COURT:  Well, obviously -- I'm going to state the

9    obvious to anyone following this case.  The complexity -- the

10   interplay, rather, of relief from stay by the fire victims or

11   the subrogation claims, motions for exclusivity, motions for

12   estimation of claims, they are all complex by themselves, but

13   they all are interrelated.  And I resisted and debated

14   internally on how to take them together, and of course, the

15   argument that I heard from the TCC was that they wanted to have

16   the matters on the relief from stay heard today to be -- to the

17   extent that they relate to the exclusivity motion.

18        I declined that.  And when we come to the exclusivity

19   motion, I'll hear from their counsel as to what I should do

20   about that.  But -- and I also want to say that when I consider

21   the two motions for relief from stay and the motion for the

22   estimation process, I am reminded yet again on how they are

23   interacting with the legislation, with the pressures on the

24   court and all the parties, and the necessary importance of

25   getting this case out the door successfully.

PG&E Corp. And Pacific Gas And Electric Company

1    But that being said, I'm going to give you just a few

2  comments that I would like no response to today, but as the

3  various parties file either additional briefs or respond briefs

4  to the existing motions, I'd like you to address them.  I'll

5  try to be brief, and I'll try to make these very succinct.

6    They are by no means dispositive of everything on my

7  mind, but they are things that, at least when I read those

8  three motions and the responses, I was forced to say:  I got to

9  have some more guidance from the parties and their counsel.

10    So my comments, then, are on about five subjects.

11  They relate -- without delineating who and how, they relate to

12  the two motions for relief from stay, the subrogation motion,

13  the TCC motion, and also the debtors' estimation motion.  And I

14  will -- I'll give you my thoughts, and then I'll give you some

15  further thoughts on how I'd like you to address these.

16    So the first couple relate, perhaps, more specifically

17  to the debtor -- debtors.  And one of the two relates more

18  specifically to a statement made in the estimation motion on

19  page 22 -- and that's 22 of the footer.  Some of the -- some of

20  the pleadings, of course, have two numbers.  And so when I look

21  at the docket item, it's docket number 3091 -- I'm sorry --

22  yeah, 3091, page 22 of 33, there is a statement made in the

23  paragraph beginning at line 4 and also at footnote 10.  And I

24  need -- in the responsive briefs, I need more clarification

25  from the debtor or the debtors' counsel, what is meant by

PG&E Corp. And Pacific Gas And Electric Company

1    what's in those references.

2          And what I mean specifically, then look at the -- at

3    line 6 on page 22, the statement is made, "There is no question

4    that estimating the wildfire claims is permissible for at least

5    some purposes, including voting and plan feasibility, which is

6    all that is proposed here."

7          And then the footnote goes to say that addressing that

8    issue would involve deciding a variety of issues not presented

9    by the motion, whether the claims for emotional distress are

10   involved; whether finding a -- excuse me -- funding a

11   resolution of personal injury claims with a limited trust as

12   part of a confirmed plan amounts to de facto litigation.

13         There's nothing in the footnote and minimal in the

14   text that even discusses the Dow Corning and the two

15   Archdiocese cases -- the two reported Portland decisions and

16   the -- excuse me -- the San Diego decision that address the

17   very issue of the impact of fixing amounts in a liquidation

18   estimation, subject to cap.  Again, there may -- the Corning

19   case is cited in page 22, but not for the point that I made.

20         And so I just need some clarification.  So let's put

21   it more specifically.  Just suppose that this Court does agree

22   to estimate the debtors' liability for the Tubbs fire, and

23   let's assume that there is an estimation of X dollars, what

24   happens to an individual claimant's rights -- an individual

25   claimant who is entitled to a jury trial?  Are they a separate

PG&E Corp. And Pacific Gas And Electric Company

1    class?  Are they paid in full if their claims are fixed?  Are

2    they left into the class?  In other words, what does it mean,

3    and is there some merit to the statement that if their claims

4    are determined by a jury or by a district court that it'll

5    somehow end up as part of the claim or the class estimation, in

6    any event?

7             So that's one question.  The second question is the

8    motion for estimation has a very complicated process of going

9    through the estimation in phases.  And again, anyone who's read

10   the brief and certainly Mr. Karotkin and his colleagues have

11   written the brief, so I don't need to go into detail about

12   phase 1 and phase 2.

13            But phase 1 appears to be a pure legal question, and

14   phase 2 to be a factual question.  And so my rhetorical

15   question is, how could I even begin that trial before the

16   claims bar date, as a matter of due process?  The proposal in

17   the estimation motion is that we have a trial beginning October

18   7th -- we'll deal later with whether that date is realistic or

19   necessary.

20            But in any event, it's before the claims bar date.

21   And so I'm struggling in my mind to know how, if there were no

22   opposition, and I had to do what's been proposed, how I could

23   possibly even begin phases 1 or 2 before I don't even -- before

24   the people who are before the Court as claimants are even

25   identified in a final sense.

PG&E Corp. And Pacific Gas And Electric Company

1    Okay.  A couple of specific questions for the TCC and

2  the subrogation committee.  When you file your further papers I

3  need to have an estimated timeline of what would happen if

4  relief from stay were granted.  And again, the response might

5  be slightly different for the two claimants -- two groups.  I'm

6  not sure they will be.  But I need to get a better sense --

7  assuming I issued an order as requested at the continued

8  hearing, what happens next?  When does -- when specifically is

9  it expected to go to the superior court?  And does that mean --

10  does that mean the San Francisco Superior Court or another

11  superior court; because there have been other courts involved?

12    When is that matter likely to be heard, if it's

13  opposed?  And if it is heard and the superior court grants

14  preference to the thirteen persons in the two claims -- again,

15  it might be slightly different for the eight people who are

16  identified in the TCC motion, and perhaps in the five who are

17  identified in the subrogation motion -- I think I got the

18  numbers right -- in any event, I need to know when it will take

19  place?  When is it likely?

20    None of you can predict nor do I expect you to predict

21  what an assigned superior court judge, who maybe hasn't even

22  been identified yet -- I don't know -- what he or she will do

23  or his or her calendar will be like.  But I need a best

24  judgment from experienced trial counsel, from knowing what they

25  know about the consolidated fire cases that existed before

PG&E Corp. And Pacific Gas And Electric Company

1    bankruptcy, when are they likely to go to trial, and when are

2    they likely to -- excuse me -- how long are they likely to be

3    tried?

4         Second question for the same group.  And that is

5    perhaps more directed to the TCC's argument, is why should I

6    assume that the court's decision -- the state court's decision,

7    either in the Tubbs case, if that goes first, or the Atlas

8    case, if the trial court gets -- if there is relief from stay,

9    and the trial court chooses to stick with Atlas -- oh, I'm

10   sorry.  I'm confusing my notes here.

11        Why should I assume that the Tubbs trial will be put

12   ahead of the Atlas fire, since the superior court has already

13   made the ruling that many of you are very familiar with, that

14   the Atlas trial goes first and the Atlas trial covers a lot of

15   procedures and a lot of different kinds of plaintiffs?  And so

16   I need the best judgment to help me inform me on my decision,

17   if I were to grant relief from stay, why does it follow that

18   the Tubbs trial is likely to be put ahead of the line and the

19   preferences that are alleged by the victims of that fire are

20   respected?  And if so, then, when is it all going to happen?

21        And then, now, this is a question that's a little more

22   specific to the TCC.  On page 12 of its motion, why should I

23   assume that the Tubbs trial, if it goes forward in the way that

24   the TCC has asked for, that it will "resolve all fire claims"?

25   Or why should I assume that it's an all-or-nothing proposition?

(973) 406-2250  operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1  Is there not an in between that might happen?

2        And I realize that that's somewhat just dealing with

3  speculation and rhetoric, but I need to get some best judgment

4  as to what those phrases mean.

5        And sure, any experienced lawyer will tell me that

6  maybe people will reach a settlement and maybe there'll be a

7  resolution.  That's fine.  But the point is, this notion that

8  it's all or nothing, particularly if I'm persuaded not to grant

9  relief from stay and am persuaded to conduct an estimation

10  trial, either alone, to the extent that I have authority to do

11  so, or in connection with a district court?  If so, why -- is

12  estimation on all or nothing?  I don't know that it is.  It may

13  be nothing more than a best judgment of a figure, but somebody

14  needs to give me more guidance on that.

15        The final category of questions is really for all

16  parties.  This is perhaps more philosophical, but it's still

17  something that's working on my mind, and I need help from all

18  of you.

19        So we all know that 28 U.S.C. 157(b)(2)(B) limits the

20  bankruptcy court's ability to liquidate or estimate

21  unliquidated personal injury tort or wrongful death claims.

22  Now, many of you quote the statute and pick there from the

23  statute the word "contingent" as well.  I don't think the word

24  "contingent" is relevant anymore.  There's nothing contingent

25  about the fires that have occurred.  They occurred.  And for

PG&E Corp. And Pacific Gas And Electric Company

1  the most part, the claims are unliquidated, and of course,

2  particularly with Tubbs, they are disputed.  But "contingent"

3  is off the table, in my book.

4       But it doesn't matter.  The statute says what this

5  Court can do.  And I understand.  There's no question.  I can't

6  change the statute and I don't intend to or to try.

7       But unliquidated personal injury tort or wrongful

8  death claims, for purposes of distribution.  So here's my

9  question.

10      Where does emotional distress or any phrase like

11 emotional distress fall in that separation of powers and

12 authority?  In other words, is emotional distress -- and again,

13 I don't want to be locked into the phrase "emotional distress",

14 because there may be another proper term, whether it's in

15 Prosser on Torts or in the Witkin or in the law generally, that

16 describes the kind of damage that doesn't lend itself to actual

17 physical damages, like a burn or a death, but rather the

18 emotional type of thing.  We all know what that means.  Does it

19 fall in or out of the phrase as found in the statute?

20      And I don't know the answer.  And I don't know -- and

21 I haven't independently researched it.  So if there's a way to

22 understand this, you can all help me.

23      Finally, related to the same question is this.  Can --

24 and I was guided in part in reading some of the state court

25 coordination orders.  Again, I'm sorry if I can't keep track of

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    them all.  But those of you, particularly the nonbankruptcy

2    lawyers who are involved in the state court litigation, you'll

3    recall that -- I believe it's in the Atlas fire -- there's a

4    pre-trial order that sort of breaks the kinds of plaintiffs

5    into different categories from those who lost undeveloped

6    property, to those who lost property that they owned, to those

7    who lost property where they rented, to -- and then to the

8    extreme, those who lost loved ones or suffered physical

9    personal injury.

10           So my question is, is there -- is it permissible for

11   part of the estimation process to bifurcate the claims?  This

12   is really a variation of the question I gave you before about

13   how to interpret 28 U.S.C. 157.  And that is, could the

14   bankruptcy court determine on an estimation, under 502(c),

15   claims that are in that pure property, non-personal-injury-

16   wrongful-death category, and leave to another day or another

17   forum, the calculation of amounts that would give rise to the

18   personal and wrongful death entitlements and/or the emotional

19   distress, if it goes that way?

20           And let me tell you that -- I'm going to go back to

21   that first thing.  I've recently, in another matter,

22   encountered the question of whether emotional distress for

23   state-law purposes fits willful and malicious injury in the

24   523(a)(6) context.  Now, you lawyers who work only on big fancy

25   corporate cases never do dischargeability litigation.  But

PG&E Corp. And Pacific Gas And Electric Company

1    those of us who do all kinds of bankruptcy are quite familiar

2    with 523(a)(6) for dischargeability issues.

3         And the question is:  is a personal injury -- when you

4    get to what will constitute a willful tort for 523(a)(6)

5    purposes, does that include emotional distress?  And I think

6    the cases tend to say yes.  And state law may tend to say yes.

7         But the reason why I asked the question, and the

8    reason that I'm stating in two different ways, is that 28

9    U.S.C. 157 doesn't necessarily import that jurisprudence, so --

10   because it only has to do with the judicial officer's

11   authority.

12        If the President decided to give me an Article III

13   appointment, I guess I could conduct the full trial under 28

14   U.S.C. Section 157.  But he didn't; and I can't.  And therefore

15   it is a question of which judicial officer.  It's not a

16   question of which power.  Because clearly a district judge with

17   life tenure would be given the power to do that.

18        So I'm really getting back to the question that I

19   presumably would ask if I'm supposed to make the call on how to

20   split the matter between what can be done at the bankruptcy

21   court level and what not, and as I say, if there is a

22   permissible theory of bifurcating the estimation process.

23        All right, so I hope I haven't left you more confused

24   because I -- I'll repeat for the third time, I need help on

25   this.  These are difficult questions.  And you are all capable

PG&E Corp. And Pacific Gas And Electric Company

1    lawyers, and you can help me, if it comes to that.

2         In looking at the schedule -- and again, assuming

3    nothing has changed -- there are still responses due on the

4    motions for relief from stay -- I'm sorry, excuse me -- no,

5    I'll rephrase that.  There are responses due from the

6    estimation motion.

7         And what I'm going to do is just fix August 7th for

8    all responses, which I think is the proper day anyway.  But

9    make sure -- and I don't want a separate brief on the things

10   that I just told you.  I want each party who is filing

11   something like the committees that are filing responses, or any

12   other party filing responses to the estimation motion, just

13   include your response to my questions in your response

14   generally.

15        And to the extent that -- from the debtors' point of

16   view, the debtor has the right to reply to anything that it

17   files.  And to the -- let me think about this a minute.  Yeah.

18        I want to make sure that by October -- excuse me --

19   August 7th, that these issues are addressed in what's been

20   filed.

21        I'll say one other thing and then move on.  I've been

22   trying to be liberal in all the requests that come in to

23   chambers to extend deadlines for the benefit of parties.

24   That's great.  But it's impossible for me and my short staff of

25   two law clerks to deal with these enormous briefs that come in

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    twenty-four hours before the hearing, like yesterday.

2             So I am not inclined to extend deadlines as we

3    approach a hearing date, if you expect me to review them and

4    consider them.  I would find it embarrassing to have to come on

5    the bench and say I couldn't read everything that everybody

6    gave me.  But that's one of the problems, that I can't read

7    everything you all are giving me under these late deadlines.

8             So August 7th is when I want these questions answered

9    in connection with everything that people are already going to

10   be responding to or replying to.

11            With that, I will move on and go to the motion for

12   consideration of the exclusivity period, unless there's a

13   change of events here.  Thank you for your time.

14            MR. ORSINI:  Good morning, Your Honor.  Kevin Orsini

15   from Cravath, for the debtors.

16            THE COURT:  Good morning.

17            MR. ORSINI:  Just one clarification.

18            THE COURT:  Yes.

19            MR. ORSINI:  I understand the August 7th date would be

20   the date by which the Court is seeking to have those who are

21   opposing our motion to estimate address all of their issues,

22   including to answer Your Honor's very helpful questions.  With

23   respect to the debtors --

24            THE COURT:  You want to have you reply --

25            MR. ORSINI:  -- addressing those --

PG&E Corp. And Pacific Gas And Electric Company

1      THE COURT:  -- then, in that time frame.

2      MR. ORSINI:  Right.

3      THE COURT:  Well, what's the response time on the

4  estimation motion?  Isn't it prior to the 14th?

5      MR. ORSINI:  I don't know that date off the top of my

6  head.  I guess the question is, if Your Honor is right that

7  August 7th is the date for them to put in their papers, we're

8  happy to put in our reply at whatever date it would make the

9  most sense from the Court's perspective, so that you have the

10  time to digest it.

11      THE COURT:  Well, but here, let's back up.  Forget

12  (sic) I hadn't asked any questions at all.  You filed your

13  estimation motion, and it's set for the 14th?

14      MR. ORSINI:  Correct.

15      THE COURT:  So I believe the response was due fourteen

16  days prior; am I wrong or am I forgetting my own procedure?

17  What's our procedure?

18      UNIDENTIFIED SPEAKER:  I believe it's seven days

19  prior.

20      THE COURT:  Well, okay, if it's seven -- then again,

21  we -- this is why this case is not easy to manage, sometimes,

22  because we have a 28-14-7 sequence for the more traditional

23  adversary matters.  Here we have a 21 and 7 process, if there

24  aren't designated respondents.  But there kind of are.

25      Look, I owe it to you to give you a clear answer on

PG&E Corp. And Pacific Gas And Electric Company

1    this.  Mr. Orsini, why don't I say -- let me look at my

2    calendar for a minute.  That's a Wednesday.  Well, I can't

3    complain about late-minute filings and then tell you that you

4    can't do -- you'll have to do it before you even have a chance

5    to respond.  So make me an offer.

6            MR. ORSINI:  You're putting me in a precarious

7    position, Your Honor.

8            THE COURT:  Well, it's --

9            MR. ORSINI:  Because I'm going pay for this back at

10   the office.

11           THE COURT:  -- it's you or me, babe.

12           MR. ORSINI:  But I'm pulling up the calendar.  So if

13   it's August 7th, I don't want to deign to suggest that the

14   Court would have to work over the weekend on this, but --

15           THE COURT:  I know.  I wouldn't -- nothing's changed.

16           MR. ORSINI:  We could certainly --

17           THE COURT:  You don't think I worked this weekend?

18           MR. ORSINI:  -- certainly by -- I did -- I did see

19   that, Your Honor.  And we appreciate that.

20           We can certainly put something in by August 11th.

21           THE COURT:  Okay.  That's a deal.

22           MR. ORSINI:  If the Court needs more time, I can push

23   it back.

24           THE COURT:  The debtors' response -- I mean, the

25   debtors' response to the motion -- any opposition to the

PG&E Corp. And Pacific Gas And Electric Company

1   estimation motion, including the response that's responsive to

2   my specific questions, is August 11th.

3   　　　　MR. ORSINI:  Thank you, Your Honor.

4   　　　　THE COURT:  So for counsel who are opposing the

5   estimation motion, your response is due in accordance with the

6   normal procedures that were filed.  And I'm sorry to have

7   changed the rules on you.  So that's the deal.

8   　　　　I'm not -- listen, I'm not saying there can't be

9   deadlines extended, I'm just saying, just it's very difficult

10  to get a pile of papers that's hundreds of pages long, twenty-

11  four hours or --

12  　　　　MR. ORSINI:  And we understand that --

13  　　　　THE COURT:  -- thirty-six hours before a hearing.

14  　　　　MR. ORSINI:  -- Your Honor.  There are many of us and

15  one of you, and we have a lot of papers to get through.  So

16  we --

17  　　　　THE COURT:  Well, there are --

18  　　　　MR. ORSINI:  -- certainly -- we certainly appreciate

19  that.

20  　　　　THE COURT:  -- many of you, that's for sure.

21  　　　　MR. ORSINI:  One other point while I'm up here, very

22  briefly, Your Honor, just in the spirit of status conference.

23  　　　　THE COURT:  Yes.

24  　　　　MR. ORSINI:  An additional issue that I foresee

25  potentially coming up when we're together again on the 14th

PG&E Corp. And Pacific Gas And Electric Company

1    that I think is inexorably linked to a lot of these issues,

2    particularly estimation, is what Your Honor has previously

3    called the 800-pound gorilla, the so-called BrownGreer

4    database.

5              THE COURT:  Um-hum.

6              MR. ORSINI:  We're continuing to seek access to that,

7    which is something that --

8              THE COURT:  I'm aware of that.

9              MR. ORSINI:  -- TCC had offered --

10             THE COURT:  Yeah.

11             MR. ORSINI:  -- as part of the claims form

12   discussions, but has now taken the position is outside their

13   possession, custody, or control.

14             We've subpoenaed BrownGreer.  There's no question

15   we're entitled to it.  There's no question it's important

16   information.  And I just wanted to flag for Your Honor that

17   that may be something else we have to talk about that day too.

18             THE COURT:  Well, we have a procedure in place to deal

19   with those matters.  We'll deal with them when we have to.

20             MR. ORSINI:  Thank you, Your Honor.

21             THE COURT:  Mr. Julian, good morning.

22             MR. JULIAN:  Thank you, Your Honor.  Robert Julian for

23   the TCC.

24             Now that Mr. Orsini has brought it up, yes, Your

25   Honor, the plaintiffs and the TCC have been requesting

                PG&E Corp. And Pacific Gas And Electric Company

1    documents for a long time.  I'm not going to argue it.  But we

2    would like Your Honor to set a hearing aside next week if Mr.

3    Orsini -- leadership counsel from the North Bay, and the TCC

4    are not able to agree.  Because we -- whichever way Your Honor

5    goes, discovery of these thousands of pages of documents should

6    start.  And so we'd like to have --

7              THE COURT:  Well, we have -- we have a hearing on the

8    31st on the regular calendar.  And we have a special hearing on

9    the compensation for the 7th, right?  Ms. Brar, right?

10             THE CLERK:  No, the 9th.

11             THE COURT:  The 9th.  The 9th.  So we've got two

12   dates.

13             MR. JULIAN:  The 31st.  Thank you, Your Honor.

14             THE COURT:  I mean, pick them both.

15             MR. JULIAN:  We will.

16             THE COURT:  Just don't pick another one.

17             MR. JULIAN:  Thank you.

18             THE COURT:  All right.  All right, so according to my

19   calculation, all that's left today, unless you want to -- are

20   you coming out of order, or are you waiting for the next

21   motion?

22             UNIDENTIFIED SPEAKER:  Actually, we should probably

23   all come up together.

24             THE COURT:  Mr. Kornberg, I haven't seen you in a

25   while.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1          MR. KORNBERG:  Nice to see you, Your Honor.

2          THE COURT:  Is this an out-of-order request?

3          MR. KORNBERG:  It is an out-of-order request.

4          THE COURT:  All right.  Well, let me get --

5          MR. KORNBERG:  But I'd like to say it's an unusual

6    request.

7          THE COURT:  Let me get appearances.

8          MR. KORNBERG:  Alan Kornberg from Paul, Weiss,

9    Rifkind, Wharton & Garrison, for the California Public

10   Utilities Commission.

11         Your Honor --

12         THE COURT:  And with you?

13         MR. STAMER:  And Your Honor, Mike Stamer from Akin

14   Gump, on behalf of the ad hoc noteholder committee, the movant.

15         THE COURT:  Okay, Mr. Stamer.

16         All right, Mr. Kornberg.

17         MR. KORNBERG:  Your Honor, we do have an unusual

18   request.  The PUC is taking the unusual step of requesting an

19   adjournment of the motion --

20         THE COURT:  Oh, I'm aware of that.  I mean --

21         MR. KORNBERG:  -- which we didn't even respond.  But

22   there are several significant events that have recently

23   occurred that could profoundly affect --

24         THE COURT:  Well, let me interrupt you.  Only to this

25   regard -- does Mr. Stamer -- are you opposing the request?

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1          MR. STAMER:  We are, Your Honor.

2          THE COURT:  Okay.  All right.  So go ahead.

3          MR. STAMER:  And I'm happy to let Mr. Kornberg speak

4      if Your Honor would like --

5          THE COURT:  No, I -- look, Mr. Kornberg and Mr.

6      Karotkin had sent an email, as you all know, to my courtroom

7      deputy, yesterday.  I don't want to have off-the-record

8      conversations about things.  We're on the record, so go ahead

9      and make your -- I take this as an oral motion for an

10     extension.

11         MR. KORNBERG:  It is, Your Honor.

12         THE COURT:  Go ahead.  Let's hear it, then.

13         MR. STAMER:  And Your Honor, I'll sit down --

14         THE COURT:  Yeah, Mr. Stamer, sure.

15         MR. STAMER:  -- and be prepared to respond when Mr. --

16         THE COURT:  Sure.

17         MR. STAMER:  -- Kornberg is --

18         THE COURT:  Sure, okay.

19         MR. KORNBERG:  Thank you.  Your Honor, we've taken

20     this step because there have been several significant events

21     that we think could profoundly affect the course of these

22     Chapter 11 cases.

23         Let me say at the outset that the PUC has been and

24     continues to be keenly interested in the ad hoc noteholder

25     group's plan proposal.  We are very hopeful that its emergence

                PG&E Corp. And Pacific Gas And Electric Company

1   will have a positive impact on these cases.  But we can't view

2   that in isolation.

3           In recent days, as Your Honor is well aware, the ad

4   hoc committee of subrogation claimholders has also filed a

5   motion to terminate exclusivity --

6           THE COURT:  Right.

7           MR. KORNBERG:  -- to pursue the plan described in its

8   term sheet.  And in responsive papers, the tort committee says

9   that it will do the same when it is ready.

10          So this might not be a cause for concern in a typical

11  case.  It actually might be a terrific development in a typical

12  case, but as Your Honor has observed on multiple occasions,

13  this is not a typical case.  And I would go so far to say that

14  this is a very unique case.

15          Let me refer specifically to the recent legislation

16  AB-1054.  The enactment of AB-1054 --

17          THE COURT:  There was already a challenge to it, you

18  know?  Right upstairs.

19          MR. KORNBERG:  The enactment of AB-1054 is a landmark

20  development in helping public utilities cope with devastating

21  wildfire liabilities.  But in the case of PG&E there are

22  strings attached.  Under Section 3291 of that statute, by June

23  30, 2020, PG&E must resolve -- and I'm using the word in the

24  statute -- its Chapter 11 case.

25          THE COURT:  But we mean -- that means confirmation,

PG&E Corp. And Pacific Gas And Electric Company

1    doesn't it?

2         MR. KORNBERG:  That's how I read it, but I'm not the

3    draftsperson.

4         THE COURT:  No, but you are an experienced bankruptcy

5    lawyer and you're a veteran of number one, and so am I.  So I

6    would assume if a plan gets confirmed by that deadline, then

7    the follow-up claims objections, et cetera, et cetera, would

8    happen in the normal course.

9         MR. KORNBERG:  That's how we interpret the statute,

10   Your Honor.

11        THE COURT:  Okay.

12        MR. KORNBERG:  We agree.  We agree with you that

13   it's --

14        THE COURT:  Okay.

15        MR. KORNBERG:  -- should be viewed as confirmation.

16   And again, that resolution or confirmation has to occur by June

17   30 for PG&E to be eligible to participate in the Wildfire Fund.

18        But that's not the only thing that has to happen by

19   June 30, 2020.  By statute, the PUC must also have approved the

20   Chapter 11 plan and the related --

21        THE COURT:  Right.

22        MR. KORNBERG:  -- documents.  And the PUC has to make

23   certain findings required by the statute, including findings

24   relating to the reorganized company's governance structure,

25   adherence to the state's climate goals and procurement

escribers
(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    requirements and whether the plan is neutral to rate payers,

2    and if not, how they should be compensated.

3         So let me very clear.  We want competition here.  The

4    governor has emphatically stated that it's good for California

5    for there to be competition.  The PUC has said that to everyone

6    that will listen to them.  So we do want to have a competitive

7    process which yields the best plan and the best financing for

8    that plan, the most sustainable capital structure, the fairest

9    resolution of wildfire-related claims, the best corporate

10   governance and safety culture, the best outcome for workers,

11   and importantly, the best outcome for rate payers.

12        But Your Honor, we cannot permit competition to turn

13   into chaos.  And I think that is really the challenge that we

14   all face.  How do we manage a competitive plan process in this

15   court, and at the PUC, and not derail a successful resolution

16   by June 2020; and Your Honor, just sitting here this morning

17   listening to all of the difficult and complex issues that

18   require resolution, estimation or relief-from-the-stay matters,

19   not amongst the least of those.

20        So we've come to the judgment, and I believe you'll

21   hear from the governor's office as well, that we do not believe

22   that terminating exclusivity at this time, to permit dueling

23   plans and multiple contested confirmation proceedings, is the

24   right answer.

25        That might work if we had an unlimited amount of time.

PG&E Corp. And Pacific Gas And Electric Company

1    But we don't have an unlimited amount of time.  And

2    accordingly, over the weekend, we reached out to many of the

3    key parties in the case to suggest that we take a little time

4    to explore a potentially better approach.  And that approach,

5    Your Honor, as we would see it and would suggest, and have

6    urged the parties to consider, is to negotiate a protocol for

7    the submission of competing plan proposals, according to what

8    would be a court-approved procedure and a court-approved

9    timeline, so that the desired competition occurs before the

10   Court is asked to confirm a plan and before the PUC is asked to

11   approve it.

12          The goal is to avoid multiple contested confirmation

13   proceedings and all that go with them that could well make

14   resolution of these cases by June 2020 an impossibility.

15          I'm pleased to say, Your Honor -- and I know you will

16   hear from them directly -- that after much arm-twisting, I

17   think the debtors support taking the time to explore this, as

18   does the tort committee, the ad hoc subrogation claimholders

19   committee, and the equity holders that are represented by Jones

20   Day.

21          So my request is actually --

22          THE COURT:  You know, just let me interrupt you for a

23   minute.  I --

24          MR. KORNBERG:  Sure.

25          THE COURT:  -- saw the email that my clerk received,

PG&E Corp. And Pacific Gas And Electric Company

1    and I also, last night, read Mr. Stamer's reply brief.  And it

2    dawned on me, with all the stuff I was trying to read, that the

3    reference was made to the group represented by Jones Day, but I

4    couldn't remember who that was.  And I remembered that Mr.

5    Bennett was one of one counsel.  There's other counsel.  And I,

6    for the moment, didn't remember what Mr. Bennett was, although

7    I saw him and I waved to him this morning, when I drove in.

8            But at least until a moment ago, I didn't remember

9    which law firm was involved for which group.  But I take it the

10   other group that's active here has not been -- not consented

11   that -- forgive me for getting the names mixed up.  But you

12   know who I'm talking about, the other shareholder group.

13           MR. KORNBERG:  Oh, I have not been in touch with them.

14   I don't know if others have.

15           THE COURT:  Oh, it's the -- yeah, Kramer Levin's

16   client, PG&E HoldCo group.

17           MR. KORNBERG:  Yeah, but I believe they are --

18           UNIDENTIFIED SPEAKER:  We can see Amy right here.

19           UNIDENTIFIED SPEAKER:  She just --

20           THE COURT:  But again, gentlemen, I just can't keep

21   track of them all when I'm going through these piles of pages.

22           MR. KAROTKIN:  I don't believe that's a shareholder

23   group.

24           THE COURT:  Okay.

25           MR. KAROTKIN:  And Ms. Caton is rising on --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1          THE COURT:  Oh, okay.

2          MR. KAROTKIN:  -- on your screen.  She represents that

3   group.

4          THE COURT:  Okay.  That's okay.  Okay, thank you.  We

5   don't need -- I don't need to hear from anybody.  I just wanted

6   to make sure I had everybody accounted for.  I was confused and

7   thought that was a shareholder group.

8          MR. KAROTKIN:  She's trying to talk, but he mic's not

9   working.

10          THE CLERK:  Oh, she needs to -- yeah.

11          THE COURT:  What?  Well, you want to be heard?  I

12   mean, I don't need to hear from you now.  I'd rather come back

13   to Mr. Kornberg and have counsel on the phone -- I mean, next

14   door.

15          MR. KAROTKIN:  She's talking anyway.

16          THE COURT:  Okay.  Well, we have some audio problems

17   next door.  But go ahead, finish your point.

18          MR. KORNBERG:  So Your Honor, our request is actually

19   a very, very narrow one.  We would like the Court to adjourn

20   for two weeks the ad hoc noteholder group's motion to terminate

21   exclusivity.  We would like the parties to attempt, during

22   those two weeks, to devise a competing plan proposal protocol,

23   and most importantly, a timeline; if successful, to come back

24   to Your Honor and have that approved; and if not, we can

25   continue the exclusivity motion at that time.

PG&E Corp. And Pacific Gas And Electric Company

1          We do not think that two weeks will prejudice anyone.

2    This effort could result in a constructive process that both

3    promotes competition and keeps these cases on track to confirm

4    the best possible plan by June 2020.  And so that is our very

5    narrow request, Your Honor.  And thank you for --

6          THE COURT:  So let me finish --

7          MR. KORNBERG:  -- letting me speak.

8          THE COURT:  -- the point.  So that would leave on

9    calendar for today's purposes, at least, that we'd have the

10   relief from stay and the estimation motions pending.  If there

11   was a further agreement to adjourn them, then that would -- we

12   could deal with that later.

13         And I take it, Mr. Kornberg, in your view, if there is

14   not a resolution consistent with what you said, and there's no

15   other reason to change the schedule, then on the fourteen --

16   well, in two weeks from now, whatever that date is -- I presume

17   you mean not exactly two weeks, right?  Or do you mean exactly

18   two weeks, or --

19         MR. KORNBERG:  Approximately two weeks.

20         THE COURT:  Yeah, I mean, a continued hearing.  I

21   mean, whether it's thirteenth or the fourteenth or some other

22   day, that's not critical, I take it?  And you would either

23   report that there is progress and everybody on board, or there

24   isn't; in which case presumably I'd hear the arguments on the

25   exclusivity?

PG&E Corp. And Pacific Gas And Electric Company

1      MR. KORNBERG:  Yes, Your Honor.  And the --

2      THE COURT:  And keep in mind that if I -- that if

3  you're successful, that's fine.  If you're unsuccessful, then

4  we have another exclusivity motion in the queue, right?

5      MR. KORNBERG:  At least one, and perhaps there'll be a

6  second one.

7      THE COURT:  Who knows?

8      MR. KORNBERG:  And so Your Honor, that's really one of

9  the reasons that we wanted to be heard on this, before we go

10  down the route of potentially three or four dueling plans and

11  dueling confirmation processes.

12      THE COURT:  Well, I understand.  I don't like the

13  notion of dueling plans either.  But that might be inevitable.

14  Obviously, if I were to -- either if you hadn't make this

15  request or if this request is not successful, I have to make a

16  ruling up or down on the pending motion.  And if I were to

17  grant it, we're open for dueling plans.

18      I mean, it's -- and again, even dueling plans, if

19  they're not chaotic, are not unhelpful, if it can be done

20  efficiently.

21      So be more specific, then.  Would you like me to set

22  it to a date prior to the 14th or -- in other words, let me try

23  to -- let me rephrase my question differently.  You obviously

24  are in a role -- you personally, for your client and the

25  governor's office, are trying to herd the cats, at least, to

PG&E Corp. And Pacific Gas And Electric Company

1    get them in the room.  But presumably that means at a further

2    hearing, if there's success, it would be to schedule yet other

3    things to implement.  I mean, I can't imagine we'd be having a

4    hearing in two weeks and figuring out what the agenda would be

5    for the competitive process.

6              So what specifically would you propose?

7              MR. KORNBERG:  Well, Your Honor, I think we would

8    report back to the Court at the next convenient hearing date,

9    again, approximately two weeks.  We don't -- our intent here

10   was not to prejudice Elliott, to take a short time out to see

11   if we could come up -- to make some order here.

12             We would then come back, and I guess there would have

13   to be a motion to approve -- if we're lucky enough to agree on

14   a protocol, a motion to approve that protocol.  And I think

15   that could be teed up in the --

16             THE COURT:  Listen, if the --

17             MR. KORNBERG:  -- in the ordinary course.

18             THE COURT:  -- if the principal players agree, we can

19   expedite the process.  The last thing in the world we don't

20   need is a motion to set a hearing on a hearing -- on something

21   that everybody agrees with.  We can do it quickly.

22             MR. KORNBERG:  Well, I would think, Your Honor, if we

23   give people an opportunity to respond, you know, ten days to

24   two weeks, at least is my view.  But I'm sure others can weigh

25   in with what they think would be appropriate.

PG&E Corp. And Pacific Gas And Electric Company

1    THE COURT:  Well, okay.  But given what you're dealing

2  with, would it be better to have a hearing such -- say on the

3  9th or on the 31st?  I mean, is the 31st, just a week from now,

4  is that too optimistic?

5    MR. KORNBERG:  I think that might be, Your Honor.

6    THE COURT:  The 9th?

7    MR. KORNBERG:  That would be fine with us.

8    THE COURT:  Well, I'm -- again, I haven't heard from

9  Mr. Stamer.  Maybe he's going to persuade me otherwise.  But

10 I'm going to -- because I have a couple questions for him.  But

11 I'm trying to think about everything else.

12    The one thing we don't need among everything else is

13 lots of lawyers writing lots of briefs that don't have to be

14 written and one judge reading all the briefs that don't have to

15 be read.  And so if there is some sort of interim procedural

16 piece in the next couple of weeks, then we don't need to be

17 having all these briefings that I've just talked to everybody

18 about, in the next few days after that.

19    So I'm really looking for guidance from you on how

20 best to do it.  But let's hear what Mr. Stamer or -- did

21 someone from the governor's office want to be heard on this?

22    MR. KORNBERG:  Yes, I believe so.

23    THE COURT:  Okay.  Good morning.

24    MR. HINKER:  Good morning, Your Honor.  Matthew Hinker

25 from O'Melveny & Myers --

PG&E Corp. And Pacific Gas And Electric Company

1          THE COURT:  I'm sorry, your name again?

2          MR. HINKER:  Matthew Hinker.

3          THE COURT:  Mr. Hinker.

4          MR. HINKER:  Yes.  And Your Honor, my pro hac was

5    filed this morning.

6          THE COURT:  Okay.

7          MR. HINKER:  So apologies for that.

8          THE COURT:  That's no problem.

9          MR. HINKER:  Your Honor, as Mr. Kornberg mentioned,

10   we're asking the Court to adjourn the motion to terminate

11   exclusivity for two weeks to allow the parties to develop a

12   fully competitive, fair, and transparent process.  We believe

13   that a controlled process conducted under the auspices of the

14   bankruptcy court is the most effective way to ensure that the

15   plan process is consistent with the State's objectives of

16   achieving the best result for California, within the time

17   frames.

18          The development of a fully competitive process will

19   allow the potential proposals to be brought forth, including

20   proposals from existing stakeholders, municipalities, third-

21   party purchasers, and any other party that may wish to

22   participate, and will provide for the full and fair evaluation

23   of those proposals in an open and transparent manner.

24          As Mr. Kornberg mentioned, a chaotic and undefined

25   process is unlikely to meet the time frame set forth in

PG&E Corp. And Pacific Gas And Electric Company

1    AB-1054, and it may make it more difficult for other parties to

2    compete with PG&E's existing equity and debt holders.

3         Instead, the governor envisions and would support a

4    process that creates a fair process for interested parties that

5    incorporates checks and balances and is fully transparent and

6    competitive.

7         The various constituents involved in these Chapter 11

8    cases, including the committees, the ad hoc groups, the

9    debtors, and PUC, should be involved in the formation and the

10   development of that process and timeline, and there should be

11   consensus around the process.

12        The governor believes that the parties working

13   together can develop that process over the next two weeks, and

14   it would provide for the fair, transparent, and competitive

15   process to allow -- to follow the time frame set forth in

16   AB-1054.

17        If not, the limited adjournment, we don't believe,

18   would prejudice the parties, and we're hopeful that we can use

19   the limited time to work together in good faith to agree to a

20   process that's in the best interests of all the debtors'

21   constituents, including workers, freight carriers, victims, and

22   the State of California.

23        THE COURT:  Okay.  Thank you, Mr. Hinker.

24        MR. HINKER:  Thank you.

25        THE COURT:  Mr. Stamer?

PG&E Corp. And Pacific Gas And Electric Company

1          MR. KAROTKIN:  Your Honor, at some point I would like

2     to be heard on this as well.

3          THE COURT:  Sure.  Well, go ahead.  Go ahead.  I think

4     you're in the same category.  And I'm putting people who are --

5     I don't want to have everybody in the room saying "me too".  So

6     because I want Mr. Stamer --- if his client agrees, we've got a

7     deal.  But --

8          MR. KAROTKIN:  Your Honor, as Mr. Kornberg noted, he

9     reached out to us over the weekend with this proposal that was

10    initiated by the governor's office and the CPUC.  I wouldn't

11    say he had to twist our arm.  I think that from the debtors'

12    perspective, we think that an orderly process makes sense.  We

13    certainly share the governor's view and the PUC's view that

14    terminating exclusivity to allow competing plans to go forward

15    is not in the best interests of any parties here, will lead to

16    chaos, will lead to value destruction, will lead to a massive

17    litigation; and that's not the most efficient way to proceed

18    here.

19          Keeping in mind what is vitally important to these

20    cases and that is getting a plan confirmed by June 30th, '20,

21    all that's being suggested, Your Honor, today, is a two-week

22    adjournment --

23          THE COURT:  Right.

24          MR. KAROTKIN:  -- to try to see if we can

25    accommodate -- if the parties can accommodate the concerns of

operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1  the governor's office and the CPUC, who are key to the success

2  of these cases.

3         As Mr. Kornberg noted, under the statute that was

4  recently enacted, the CPUC has a multitude of approval rights

5  that have to be addressed over the course of the proceeding,

6  and in order to get this case out of Chapter 11, I think it's

7  very interesting to note, Your Honor, that in a thirty-three

8  page pleading that was filed yesterday by the ad hoc group, the

9  most salient point they make is entirely consistent with what

10 Mr. Kornberg is proposing today.

11        THE COURT:  I noted it.  I marked it and underlined it

12 on page 9.

13        MR. KAROTKIN:  Yeah, well, I don't know what page

14 you're looking at.

15        THE COURT:  We seem to be on the same page.

16        MR. KAROTKIN:  I think it's the same page, page --

17        THE COURT:  The same comment?

18        MR. KAROTKIN:  -- page 5 of their number, which

19 probably is the same page, where they say their plan

20 proposal -- and I'm quoting -- they're saying it's just a

21 proposal, and they say that in italicized type.  And that --

22 again, to use their words -- "modifications can and are

23 expected to be made as the ad hoc committee develops a formal

24 plan and builds a consensus with the other stakeholders."

25        THE COURT:  Well, my comment was --

PG&E Corp. And Pacific Gas And Electric Company

1          MR. KAROTKIN:  Then they go on --

2          THE COURT:  -- my comment was on the next --

3          MR. KAROTKIN:  -- I'm sorry, page 6.

4          THE COURT:  -- page, yes.

5          MR. KAROTKIN:  The following page.

6          THE COURT:  Next page.

7          MR. KAROTKIN:  I'm getting there, Your Honor.  On page

8    6 --

9          THE COURT:  You're reading my notes?

10         MR. KAROTKIN:  I tried to, but I couldn't -- where

11   they cite to Governor Newsom's recent remarks, which again, are

12   entirely consistent with what the governor and the CPUC are

13   asking Your Court (sic) to do, again, a two-week adjournment to

14   consider this, as the ad hoc committee again states in their

15   pleading -- and they quote the governor -- "I think having a

16   process where there's alternative considerations is healthy" --

17   and I hope I'm reading what you made notes about.

18         THE COURT:  No, just the prior sentence.

19         MR. KAROTKIN:  And that this process is now -- with

20   the CPUC -- this precise process is now what the governor and

21   the CPUC are asking you to grant two weeks -- just two weeks to

22   consider --

23         THE COURT:  Right.

24         MR. KAROTKIN:  -- and to submit something to this

25   Court, hopefully on a consensual basis.  And if it's not

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    consensual, no one is asking for Mr. Stamer's clients to

2    prejudice their rights.  If they're unhappy and they don't like

3    it, they can come in on August 9th, which I think is an

4    appropriate date, Your Honor, and say to you, we think this is

5    the dumbest thing in the world, and we would like you, on

6    August 9th, to consider our motion.

7          And Your Honor, we have no issues with that.

8          THE COURT:  Okay.

9          MR. KAROTKIN:  And we think it's appropriate, based

10   on -- they only have a proposal here.

11         THE COURT:  Well, let's not --

12         MR. KAROTKIN:  And I think it's --

13         THE COURT:  -- let's not get into that.  I know what

14   they have, and it's far more elaborate than I ever envisioned

15   when I said term sheet.  When I said term sheet, Mr. Kornberg

16   was here with me, eighteen years ago, and I asked for a term

17   sheet and I got a term sheet.  I didn't get a thirty-five page

18   draft plan.

19         My comment was just one line earlier, at line 4.  "The

20   ad hoc committee welcomes competition from any other party that

21   is willing to file its own motion to terminate exclusivity and

22   make an alternative, credible, and potentially confirmable

23   proposal."

24         So that's just --

25         MR. KAROTKIN:  Well, let's have an orderly process to

PG&E Corp. And Pacific Gas And Electric Company

1    do that.

2                THE COURT:  Yeah.

3                MR. KAROTKIN:  Let's see if in the next two weeks we

4    can come up with an orderly process to do it.  Your Honor --

5                THE COURT:  Okay.

6                MR. KAROTKIN:  -- I know June 30 is a real date.  I

7    don't think two weeks is going to prejudice getting to that

8    date.  And we think that's the right way to proceed.

9                THE COURT:  Okay, Mr. Stamer, you're up.

10               With that kind of backscratching and love --

11               MR. STAMER:  Look, it's a hard act to follow, Your

12   Honor.

13               THE COURT:  It's a love-fest, isn't it?

14               MR. STAMER:  Exactly.  Just for the record, again,

15   Mike Stamer from Akin Gump, on behalf of the ad hoc noteholder

16   committee.  Mr. Kornberg referred to our clients as Elliott.

17   They are actually one of twenty-five members of the ad hoc

18   group.

19               THE COURT:  I'm aware of that.

20               MR. STAMER:  I'd like to address quickly some of the

21   comments that my colleagues from the other side made, and then

22   I'll spend a little time as to why I think an adjournment is

23   not appropriate.

24               So Your Honor, to start, Mr. Kornberg said he's

25   asking -- his statements were in support of a very narrow

PG&E Corp. And Pacific Gas And Electric Company

1    request, which was a two-week adjournment.  I respectfully

2    disagree.  The CPUC is going to object to exclusivity.  He just

3    said that.  That's a substantive objection which --

4              THE COURT:  Wait.  They're going to object to what?

5              MR. STAMER:  To the term -- our motion to the

6    termination of exclusivity.

7              THE COURT:  But they haven't filed anything.

8              MR. STAMER:  They haven't filed anything.  But from

9    this podium --

10             THE COURT:  Well, they're a little late if they

11   have -- if they want to -- if they have opposition.

12             MR. STAMER:  Understood.  I just want to make sure we

13   understand kind of where this is heading.  And --

14             THE COURT:  Well, but so you're not -- you're not

15   getting to me.  There were lots of positions for an against,

16   and the CPUC is silent on the subject.  So I don't hear a

17   motion that opposes or do I hear Mr. Kornberg saying two weeks

18   so we can file a -- weigh in on the motion.  I'm not --

19             MR. STAMER:  Your Honor, I --

20             MR. KORNBERG:  Absolutely not, Your Honor.

21             MR. STAMER:  -- Your Honor, I understand.

22             THE COURT:  He's not going to do that.

23             MR. STAMER:  I understand.

24             THE COURT:  Okay.

25             MR. STAMER:  Your Honor, we object to any adjournment

PG&E Corp. And Pacific Gas And Electric Company

1   of the motion for a number of reasons.  No one is --

2       THE COURT:  Well, give me the reasons.  Because

3   that's --

4       MR. STAMER:  I'm happy to.

5       THE COURT:  -- that's what I have to decide.

6       MR. STAMER:  I'm happy to.

7       THE COURT:  And I don't want to turn this into

8   anything else.  Why shouldn't I continue the hearing two weeks,

9   or if I were to listen to oral argument today, keep the matter

10  under advisement for two weeks?  Same --

11      MR. STAMER:  Your Honor --

12      THE COURT:  Why -- go ahead.

13      MR. STAMER:  I'm sorry.  Everyone is in violent

14  agreement that every day counts.  And in this case, we believe

15  two weeks is a long time and what you heard from Mr. Kornberg

16  is two weeks really isn't two weeks.

17      In order for them to try to pursue this type of

18  protocol, to get it in place, it's at least a month.  And Your

19  Honor, this company needs to at least confirm a plan in

20  approximately eleven months.

21      THE COURT:  No, I know  that.

22      MR. STAMER:  -- eleven months from today.

23      THE COURT:  I know that.  But you know, Mr. Stamer,

24  again, you and I don't have a lot of experience with one

25  another, and as complicated as this case is, I don't feel

PG&E Corp. And Pacific Gas And Electric Company

1   terribly intimidated by the challenge of getting a plan

2   confirmed well before that deadline.  To me, it's all those

3   other things that have to happen, and -- because I'm not a big

4   fan of wasting time on disclosure statements that we don't need

5   and therefore we come down to confirmation.

6          Now, I'll concede the point that that's -- things like

7   estimation trials, if they're supposed to happen, are time-

8   consuming, and certainly contested confirmations by themselves

9   can be time consuming.  But I don't anticipate, to me, June

10  30th, as a problem.  So -- okay?

11         MR. STAMER:  Understood.  And that actually is

12  consistent with our view, that -- and apparently the governor's

13  view, that competition and a process is healthy for these

14  debtors.  Our view is that process needs to happen in

15  connection with and in front of this Court as part of competing

16  plans of reorganization.

17         THE COURT:  But you don't have -- but it doesn't have

18  to be at the end of the day, it can be early in the day.  Your

19  statement that I quoted doesn't say a contested confirmation,

20  it's the parties are willing -- are willing to consider

21  credible, confirmable proposals.  But that doesn't mean we have

22  to have fifteen plans up for confirmation, does it?

23         MR. STAMER:  No, Your Honor.  I completely agree.

24         THE COURT:  Okay.

25         MR. STAMER:  And look, we listened to the Court very

PG&E Corp. And Pacific Gas And Electric Company

1   carefully at the first exclusivity hearing.  We worked very

2   hard --

3            THE COURT:  I know.

4            MR. STAMER:  -- because --

5            THE COURT:  You did.  I agree.

6            MR. STAMER:  -- as you saw in our reply, the company

7   has not made sufficient, if any, progress towards a viable

8   plan.

9            THE COURT:  Well, I'm trying to get --

10           MR. STAMER:  Sure.

11           THE COURT:  -- away from that subject, because I don't

12   want to turn this into that he-said she-said, because --

13           MR. STAMER:  That's fair, Your Honor.

14           THE COURT:  -- it's just not constructive.

15           MR. STAMER:  And I don't mean to -- I don't mean to

16   criticize.

17           THE COURT:  Well --

18           MR. STAMER:  Our view is --

19           THE COURT:  -- I don't either.

20           MR. STAMER:  Thank you.  Our view is -- our view is,

21   Your Honor --

22           THE COURT:  But I will occasionally.

23           MR. STAMER:  -- that -- understood.  As is your right.

24   Our view is, Your Honor, that two weeks, a month, one day, is

25   actually too much time, that this is -- what they're proposing

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1   is really an unprecedented, undocumented, road to nowhere,

2   which actually --

3           THE COURT:  But how do I know that?  How do I know

4   that?  If I called in sick today, because I had a headache and

5   I set the hearings over for two weeks, what would happen?  I

6   mean, I didn't do that, and I didn't -- I'm not threatening

7   that.  But what is going to be different between what you and I

8   are talking about and what the opponents and proponents of

9   exclusivity would be arguing about here if two weeks from now,

10  there isn't a consensus and the governor or Mr. Kornberg throw

11  in their hands or -- you know, give up or whatever?  What is

12  the downside there?

13          MR. STAMER:  Your Honor, I -- look, we are -- we are

14  always interested and willing to talk to people about how to

15  move this process forward.  As Your Honor I'm sure read

16  throughout our reply papers, the company actually hasn't been

17  speaking to anybody.

18          THE COURT:  No, I know that.

19          MR. STAMER:  They haven't --

20          THE COURT:  I --

21          MR. STAMER:  -- they haven't spoken to us.  And our

22  concern, Your Honor, is --

23          THE COURT:  I thought we weren't going to go there.

24          MR. STAMER:  Your Honor, it's actually -- I think it's

25  relevant to where we are.  Look, we are happy -- we're very

of 118   operations@escribers.net | www.escribers.net
(973) 406-2250

                PG&E Corp. And Pacific Gas And Electric Company

1    happy we filed the motion to terminate exclusivity.  We're very

2    happy we came up with what Mr. Karotkin read in our papers, a

3    proposal.  It's a proposal that happens to have twenty-five

4    billion dollars of committed capital.

5            Your Honor, our concern is what is happening here is

6    going to result or it's a -- it's a path towards further

7    entrenchment of the debtor and a perpetual exclusivity.

8            If you -- Your Honor, if you look at paragraph 2 of

9    the email -- I know Your Honor has it.

10           THE COURT:  Yeah, I mean, as I say, I don't like

11   communicating substance by emails, because I don't -- I hate

12   the word "transparent" also.  But we are a court of public

13   record.  And so I don't mind people communicating with my

14   courtroom staff about things like continuances.  But I don't

15   like emails that say substantive matters, because then we get

16   calls from the media or others, and I don't want my staff or

17   any of the court to be involved in that.

18           So I have it.  I --

19           MR. STAMER:  Okay.

20           THE COURT:  -- I have the email, and I'll let you

21   refer to it now, but keep in mind that I don't particularly

22   like it, as a general matter.  But go ahead.

23           MR. STAMER:  Understood.  And Your Honor, we did not

24   respond in kind.

25           THE COURT:  Right.

PG&E Corp. And Pacific Gas And Electric Company

1    MR. STAMER:  We did in fact call your calendar clerk

2  to say that we were not supportive of the --

3    THE COURT:  No, that's fine.

4    MR. STAMER:  -- of the objection, but --

5    THE COURT:  And that's fine.  That's a procedural

6  scheduling matter.

7    MR. STAMER:  Understood.  Your Honor, pursuant to

8  paragraph 2 of the email, the debtors and the CPUC are

9  requesting a two-week adjournment of our hearing on the motion

10  to terminate exclusivity to give the debtors, in consultation

11  with the CPUC, time to formulate a currently nonexistent

12  process and timeline.  Your Honor, if you --

13    THE COURT:  Right, I understand.

14    MR. STAMER:  The text -- and you have it front of you.

15    THE COURT:  I have it in hard copy, old fashioned way;

16  here it is.

17    MR. STAMER:  If I may read it into the record, Your

18  Honor, because I think it is very relevant.

19    THE COURT:  Okay.

20    MR. STAMER:  "During this two-week adjournment, the

21  debtors, in consultation with the CPUC, will formulate a

22  process and timeline to be submitted to the Court for approval

23  pursuant to which the debtors, as fiduciaries for all

24  stakeholders, in consultation with the CPUC and the statutory

25  committees, will consider all proposals with respect to plan

PG&E Corp. And Pacific Gas And Electric Company

1    sponsorship and financing and determine the most appropriate

2    plan for the debtors to propose.  During this process and

3    timeline, the plan exclusive periods will remain intact."

4            So what they're -- and they're very transparent about

5    it; what they're guiding towards is something other than what

6    is specifically contemplated in 1121, which is if someone can

7    establish cause to terminate exclusivity, then the bankruptcy

8    court, in its core jurisdiction, has the ability and should be

9    the one that determines --

10           THE COURT:  You're preaching to the choir.  I'm the

11   one that wrote the book on this, right, and --

12           MR. STAMER:  That's actually --

13           THE COURT:  -- that's why we're here today.

14           MR. STAMER:  That is actually our point.

15           THE COURT:  Yeah.

16           MR. STAMER:  Rather than waste two weeks, waste a

17   month, waste more than a month, because it's not -- I guess

18   there's an unlikely chance that it would be successful, but we

19   don't believe that's the case.  What we should be doing is we

20   should be arguing about whether or not we've satisfied the

21   cause standard and Your Honor's views with respect to what it

22   takes to terminate exclusivity.

23           THE COURT:  Well, then again, this is a question to

24   ask of trial counsel, but what if I listen to your argument

25   today and deny your motion?  Is that better than not ruling on

PG&E Corp. And Pacific Gas And Electric Company

1   it or --

2          MR. STAMER:  Your Honor, it is obviously not better,

3   from my perspective.

4          THE COURT:  Right, but is it better from the -- what's

5   better from the perspective of the entirety of your client's

6   rights but also this entire universe of people that are

7   affected by this bankruptcy?  Isn't it better just to take a

8   short time out?  I mean, your client isn't jeopardized, isn't

9   prejudiced.  Let me not --

10         MR. STAMER:  Sure, sure.

11         THE COURT:  Let me be rude by asking a question and

12  then not letting you answer it and asking another question.

13  Suppose we didn't have this request?  Suppose Mr. Kornberg had

14  never shown up today, and we heard this argument, and during

15  the argument I said, okay, Mr. Stamer, if I grant your motion,

16  what happens next, what would your answer be?

17         MR. STAMER:  Your Honor, what happens next is -- and

18  again, what we're asking for in the motion, which I think

19  addresses the chaos issues --

20         THE COURT:  Um-hum.

21         MR. STAMER:  -- is we believe that we have met the

22  standard --

23         THE COURT:  No, but what happens next?  Just tell me

24  the procedure.

25         MR. STAMER:  I'm very wordy; I'm sorry, Your Honor.

PG&E Corp. And Pacific Gas And Electric Company

1           THE COURT:  I know.  So am I.

2           MR. STAMER:  What happens next is we -- what we're

3    asking for is termination of the exclusive periods --

4           THE COURT:  I know.

5           MR. STAMER:  -- just for us.

6           THE COURT:  I know.

7           MR. STAMER:  Just for us.

8           THE COURT:  I know.

9           MR. STAMER:  And we're not being --

10          THE COURT:  What's the answer to me question?  What

11   happens next?

12          MR. STAMER:  Your question is we file a plan.

13          THE COURT:  Okay.  And a disclosure statement?

14          MR. STAMER:  Of course.

15          THE COURT:  And do we set it for hearing right away?

16          MR. STAMER:  Your Honor --

17          THE COURT:  I mean, if you said, sure, I want a

18   hearing on the disclosure statement in two weeks, I'd say,

19   well, you're not going to get one.

20          MR. STAMER:  Your Honor, we would be willing -- and

21   again, from our perspective, old fashioned, if it's not broke,

22   don't fix it.  We think the way 1121 works is the way it's

23   supposed to work.  And anything else -- I'll get there, Your

24   Honor.  Anything else is a waste of time that is potentially

25   very -- very damaging.  We believe we can deal with the chaos

PG&E Corp. And Pacific Gas And Electric Company

1  with only having people that show up with credible confirmable,

2  potentially confirmable plans.

3          THE COURT:  Yeah, I know.  I know, but look -- it

4  doesn't matter about anyone else.  The number of people, as you

5  know from the responses, want me to terminate exclusivity

6  across the board.  There's no way I'm going to do that.

7  Period.  So you are asking me to terminate for you client.

8  That doesn't mean the debtor doesn't get to have a competing

9  plan.  So if I were to terminate it today, you file a plan

10  tomorrow, Mr. Karotkin and company could be filing a plan the

11  next day or whatever.  And from a case management point of

12  view, there's no way I would have hearings all over the lot.

13  We'd consolidate it and have --

14          MR. STAMER:  Correct.

15          THE COURT:  -- one hearing.  Maybe there'd be one

16  disclosure statement.  One thing.  And the same is true of the

17  ad hoc subrogation committee were allowed to do it, or any

18  other party was allowed to do it.  So what I'm really trying to

19  say to you, politely, is that, even if I granted your motion

20  this afternoon, I don't think anything would happen, from my

21  point of view, for a while.

22          MR. STAMER:  Actually, Your Honor --

23          THE COURT:  Okay?

24          MR. STAMER:  -- it's a very good point, and this is a

25  clarification that I'm happy to make, and that is:  if you

PG&E Corp. And Pacific Gas And Electric Company

1    terminate exclusivity, in accordance with our request --

2         THE COURT:  Um-hum.

3         MR. STAMER:  -- then we, the parties, should be

4    working on a protocol, consistent with 1121, consistent with

5    what all other cases do where exclusivity is terminated, where

6    we talk about, okay, let's work together, let's avoid any

7    inefficiencies.  Let's define what a credible confirmable plan

8    is.  If people -- we'll be back for purposes of dealing with

9    the subrogation group's motion to terminate exclusivity.  We

10   can actually move this process along immediately.

11        THE COURT:  And why is that efficient to have

12   sequential motions to terminate if in fact, with the help of

13   the governor and the CPUC, there can be a consensus either on a

14   protocol, or perhaps on how to tee up the competing plans.

15        In other words, if you're feeling left out because you

16   weren't mentioned in the email, I'm assuming that Mr. Kornberg

17   and the governor's representatives are going to invite you and

18   your client to the table to talk about things in the next two

19   weeks.  And if they're not, they better explain to me why they

20   wouldn't invite you to the table.  Your clients represent a

21   major player in this case, so you ought to be allowed to come

22   to the table, and I suspect you will be.

23        But the point is that, to me, is consistently chaotic

24   if we have, for the next two months, every other week we're

25   going to have a motion to terminate exclusivity from a

PG&E Corp. And Pacific Gas And Electric Company

1  different player. That doesn't make sense either, right?

2  MR. STAMER:  Your Honor, and the last thing I want to

3  do is bring chaos to the courthouse or give you additional

4  fifty or a hundred-page briefs to read.

5  THE COURT:  No big deal.

6  MR. STAMER:  But the fact that there may be other

7  people that come with what they think are credible plans, Your

8  Honor, from our perspective, again, we think competition is

9  good, but it's only competition among parties that are willing

10  to sponsor a plan that can actually get confirmed by --

11  THE COURT:  Well, yes, I understand that.  But the

12  likely candidates are the debtor and the two official

13  committees.  I don't even think the official committee is

14  likely to do it because they're -- but maybe they are.

15  But I don't know, frankly -- and I don't mean this as

16  an insult to other groups, and I'll leave aside -- for the

17  moment, aside equity groups.  I don't believe this is an

18  invitation for anybody in 450 Golden Gate Avenue that wants to

19  file a plan to come to the party and propose one.  But I could

20  be wrong.

21  But the people that are initiating this colloquy, like

22  the CPUC and the governor, they're sophisticated experienced

23  people, including bankruptcy practitioners that know the rules.

24  And there's going to be a natural selection process, I would

25  think, so the major players are at the table.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1          But any way, let's -- to get more specific, tell me

2  how it hurts your client for me to continue this to August 9th

3  or something like that.

4          MR. STAMER:  Your Honor, fundamentally, it hurts our

5  clients because we lose probably more than a month.

6          THE COURT:  Well, you lose between now and August 9th,

7  assuming I rule today or August 9th.

8          MR. STAMER:  That's --

9          THE COURT:  But I might not rule. I mean, I liked your

10  thirty-two page brief, but I only finished reading it at

11  midnight last night, so I might want to take the matter under

12  advisement anyway.  So you might not get a ruling for a while

13  anyway.

14          MR. STAMER:  Your Honor, I understand.  Look, the

15  driving force behind everything that the ad hoc committee has

16  been doing is the desire to move the process forward.  As you

17  read in our brief, we are critical of the debtor.

18          THE COURT:  But I also read in your brief the sentence

19  that I read.

20          MR. STAMER:  Yeah.

21          THE COURT:  We welcome competition.

22          MR. STAMER:  Your Honor, we absolutely welcome

23  competition.

24          THE COURT:  And we're only debating when that

25  competition takes place.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    MR. STAMER:  When and the appropriate forum.

2    THE COURT:  Yeah.

3    MR. STAMER:  And whether or not you can actually have

4  competition if you have perpetual exclusivity for the benefit

5  of the debtor without other parties having the wherewithal and

6  the ability to file their own plan.

7    THE COURT:  But I certainly heard from Mr. Kornberg

8  and the governor's office the invitation to consider people

9  like the ad hoc subrogation committee, perhaps the TCC,

10  certainly the debtor.  I mean, you don't want the debtor to

11  perpetuate exclusivity, but you're not telling them they can't

12  propose a plan, obviously, so --

13    MR. STAMER:  Of course.

14    THE COURT:  -- it's hard for me to imagine that, at

15  least for openers, your client and the subrogation committee

16  and the debtor are three major players that are going to

17  discuss this.

18    And you know what?  If there's no consensus and there

19  are three competing plans -- and when I say plan I mean

20  outlines of plans or term sheets of plans -- and if the parties

21  can't decide it, I'll decide it.  That's why I get the big

22  bucks, right?  I'll decide it if I have to.  But I'm also not

23  opposed, if necessary, to go all the way through to have

24  competing plans.  As much as I think it would be unfortunate,

25  it's obviously an option under the law.  And the equity players

PG&E Corp. And Pacific Gas And Electric Company

1   know it.  Mr. Bennett knows it.  And if he and his clients want

2   to propose a plan, they have a right to do it too, right?

3           MR. STAMER:  Your Honor, I hear the Court loud and

4   clear.  As Your Honor read in our reply, which I won't dwell

5   on, at least not too much, we believe --

6           THE COURT:  Well, you can, I said I finished it at

7   midnight.

8           MR. STAMER:  We believe that our filing -- your

9   comments at the exclusivity hearing, our filing of the motion

10   to terminate exclusivity, the commitment letter we put in, the

11   legislation, whichever everyone is concerned about the

12   deadline, but we can't underestimate how incredibly valuable

13   that is.

14           THE COURT:  Yeah, it is. I agree.

15           MR. STAMER:  That is -- we've got momentum.

16           THE COURT:  To me it's like a judge saying to the

17   litigants, have you guys thought about settling this, and they

18   say, oh, no, we haven't.  And I said, well, I'm going to give

19   you a trial date, and the trial date's next Monday.  And you

20   know what, sometimes they settle on Friday or Sunday.

21           MR. STAMER:  Understand.

22           THE COURT:  So --

23           MR. STAMER:  Your Honor, our concern -- and then I'll

24   sit down and shut up.

25           THE COURT:  No, you don't have to sit down.

PG&E Corp. And Pacific Gas And Electric Company

1    MR. STAMER:  Our concern is that the debtors' behavior

2    here shows what they're doing is they are swinging for the

3    fences to avoid dilution to --

4        (Off-the-record discussion)

5        MR. STAMER:  Our concern is -- and it actually is

6    played out very clearly in their objection to exclusivity.

7    They talk about how they're going to finance their plan, and

8    they talk about an equity investment and what they call equity

9    securitizement.

10        THE COURT:  No, I understand, and you've made a very

11    important point about that, and that's worth discussing when

12    we -- if I have to --

13        MR. STAMER:  And I know Your Honor read it, but

14    they're not -- they haven't been authorized by the legislature

15    or the governor.  They actually were presented and rejected as

16    part of the process that led to 1054.  From our perspective,

17    the only thing that brought the company to life with respect to

18    moving the plan process forward, was the specter of exclusivity

19    being terminated.

20        THE COURT:  No, Mr. Stamer, again, I apologize, for

21    the fifteenth time, to stop talking about the old case.  But a

22    few of us in this room are veterans of the old case.  And I can

23    assure you that there were lawyers on the debtors' side that

24    couldn't believe their ears when I told them I was going to

25    terminate exclusivity.  Ask Mr. Kornberg.  He was here popping

PG&E Corp. And Pacific Gas And Electric Company

1    the champagne.  And you know what?  We got a competing proposal

2    and a mediated result.  So you're preaching to the choir when

3    there's someone that thinks that's a good thing to do.

4            MR. STAMER:  And Your Honor, I could not have made the

5    point more persuasively than you just did.  Our view is we

6    should be talking about exclusivity, terminating it, putting

7    together a protocol, as opposed to a detour to something that

8    is not yet written, is unprecedented in a situation where every

9    day really matters.

10           THE COURT:  I know.  But let's get back to the final

11   question.

12           MR. STAMER:  Sure.

13           THE COURT:  And then I'll let anybody else who wants

14   to be heard.

15           The narrow question that I have is:  where does it

16   hurt?  Tell the doctor where it hurts, when he presses on your

17   knee, when I have to decide, from July 24th to August 9th, just

18   to defer the argument, and on August 9th I'll listen to your

19   whole argument on why I should terminate exclusivity.  So why

20   does it -- what's the problem with that short delay?

21           MR. STAMER:  It hurts all over.

22           THE COURT:  Okay.

23           MR. STAMER:  It hurts --

24           THE COURT:  Then you're beyond hope.

25           MR. STAMER:  We all know that, Your Honor.  But it's

PG&E Corp. And Pacific Gas And Electric Company

1    truly -- look, everyone's focused, we've got really good news

2    on the legislation.  We actually got a little momentum

3    building.  And we'll take some of the credit for it, but the

4    company actually filed their estimation motion, they're

5    actually moving towards what everybody needs, which is a

6    reasonable quantification of the claim.

7           THE COURT:  They took eight whole days to file their

8    estimation motion after the governor signed the bill, if I read

9    the dates correctly.

10          MR. STAMER:  I think they've been working on it for a

11   little while before that.

12          THE COURT:  Probably.  Probably.

13          MR. STAMER:  But Your Honor, again, we don't -- based

14   upon the time frame, based upon the momentum we have, we don't

15   think the case and the parties can spare the nine days.

16          THE COURT:  But what if I heard the argument -- what

17   if we took a break, and I hear the argument, and I say matter

18   submitted, and I just decide I forgot to tell you I have a two-

19   week cruise planned.  I mean, I don't, but I mean, I do have

20   the right to take some time to think about it.  So --

21          MR. STAMER:  Your Honor, you absolutely do.

22          THE COURT:  But it would also be disadvantageous to

23   you, right?  I mean, the only difference between hearing the

24   argument and taking the matter under advisement would be those

25   courtroom watchers who want to see whether I've tipped my hand

PG&E Corp. And Pacific Gas And Electric Company

1   on how I'm thinking about things.  That's all.  And I'm not --

2   I've not made up my mind on these motions.  They're thoroughly

3   briefed and highly litigated and highly significant.

4   But that's the only question.  And given the fact that

5   in the queue is the ad hoc subrogation motion, which I can't

6   ignore, and the debtor doesn't have to file a motion; the

7   debtor gets to file a plan, and they can file one tomorrow or

8   next week or two weeks from now, and it's the same thing.

9   So I guess what I'm really telling you is that, much

10  like I might have granted a continuance if somebody had a

11  personal inconvenience to a party or a litigant or something --

12  this is not the case; nobody made up a phony excuse.  But it

13  seems to me that you haven't really told me -- what you really

14  told me is we'll be back here in two weeks with the same

15  argument.  And I'm saying, okay, well, that's the worst --

16  that's the most horrible thing I can think of, but that's not

17  the end of the world.

18  MR. STAMER:  If Your Honor is in fact going to reserve

19  and give it some time, you're --

20  THE COURT:  No, I --

21  MR. STAMER:  Hard to argue with that, Your Honor.

22  THE COURT:  Believe me, I looked at -- my law clerks

23  and I looked at this yesterday and thought, I've got a thirty-

24  two-page brief that was filed yesterday morning.  Can I get

25  this done?  Well, I got it done.  I read it, I got questions, I

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    underlined language, and I have a series of questions that I

2    was going to present to people.

3          But it seems to me that if there's even a slight

4    chance that there'll be at least some consensus -- again, Mr.

5    Stamer, your client might be the lone wolf here in the sense

6    that there may be a consensus among the two official committees

7    or the debtor or some other group that you don't like, and

8    that's okay.  You're entitled to make your argument.  And I

9    really am not using a deferred decision as leverage.

10         But also, I almost think that how could I -- I mean,

11   if I were to rule on your motion and then come up with the

12   subrogation group's motion, would I have to be consistent?

13   Well, no, I wouldn't have to be.  I could graft one or the

14   other.  But to be inconsistent would be, itself, something I'd

15   have to make sure that was intellectually honest in my own

16   mind.

17         I make one other comment about what you've done here.

18   I don't mean on today's motion; I mean on your paper.  And I

19   made this comment earlier.  When, way back in 2001 or '2,

20   whenever it was when I authorized the CPUC to file a term

21   sheet, I meant a more traditional term sheet.  And I don't

22   remember exactly the document that the CPUC filed, but I do

23   remember that it was enough to persuade me to terminate

24   exclusivity over the debtors' objection.

25         When we had the colloquy here -- and I don't care that

PG&E Corp. And Pacific Gas And Electric Company

1    at the first hearing you said what you said about continuing

2    it, and then now you're criticized for coming back later and

3    changing your tune.  That's okay.  I don't care that you've

4    done that.  But I started to look at the comments and the

5    oppositions to your motion, and you're getting people that are

6    fly-specking it.  Some of the critics of your position are big,

7    big questions.  Some of them are, you know, why did you say

8    this instead of that.  And I'm going, that's the risk of having

9    too detailed a term sheet.  It's almost a draft plan, and that

10   isn't what I contemplated.

11          So I would have almost welcomed a less elaborate term

12   sheet as long as it had the critical terms.  And so it's like

13   if you're going to buy Blackacre, you say what your price for

14   Blackacre is and how much you're going to pay.  You don't have

15   to have the architect's drawings of where the flagpoles going

16   to be placed.  And so that's a lousy metaphor, but what I'm

17   getting at is that if you start with too much specificity then

18   you invite criticism of the specificity.

19          And so you are correct, many of the issues that have

20   been raised by the opponents here are confirmation issues, but

21   many of them are not.  And some of them are fundamental issues:

22   is this, what I call confirmable, as a matter of law?  I'm not

23   going to comment one way or the other, at the moment, but what

24   I'm saying is, that's how I kind of draw the distinction.  You

25   don't need to tell me where the flagpole's going to be.  You

PG&E Corp. And Pacific Gas And Electric Company

1    need to tell me what the price is, and the big ticket items,

2    and that's the end of it.

3            So look, this is a long way of saying I am inclined to

4    grant the request because I don't think there is a real

5    downside to your client.  But this is another way of saying,

6    look, perhaps I need to hear the ad hoc subrogation's group

7    motion at the same time.  And I realize that's compressing some

8    time.  But what I think what I'd prefer to do would be to have

9    a further hearing before the scheduled time for the ad hoc

10   group.  If it means people are going to be filing briefs late,

11   that's a risk.

12           If there's a consensus on the 9th that says there is a

13   procedure that the parties have agreed to, then we're on board.

14   If there is no consensus or your clients have not joined the

15   consensus, then I'll figure out what to do.  So --

16           MR. STAMER:  Your Honor, can I just make two other

17   comments, and then I'll sit down?

18           THE COURT:  Yes.

19           MR. STAMER:  I hear you loud and clear.  It's really

20   just to clear up the record, if I could.

21           THE COURT:  Yeah.

22           MR. STAMER:  Look, we read the comments by the

23   shareholders and the debtors about what we said at the last

24   exclusivity hearing.

25           THE COURT:  Yeah, I don't care.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1      MR. STAMER:  If you look at footnote 4, it kind of

2  took it out of context, didn't give the rest of what we said.

3  But we put it in our reply, so we made sure.  And I didn't want

4  to make a big issue, but Your Honor --

5      THE COURT:  It's in the record.

6      MR. STAMER:  -- Your Honor brought it up.

7      THE COURT:  It's in the record, but you know, the

8  governor has something to do with it in the meantime to, so --

9      MR. STAMER:  Understood.  Understood.  And Your Honor,

10  in the area of no good deed goes unpunished, we, the ad hoc

11  committee, the professionals, spent a tremendous amount of time

12  putting together a very comprehensive term sheet.

13      THE COURT:  You did.  I agree.

14      MR. STAMER:  And we actually had spoken to everyone

15  that would meet with us.  Our view -- the competition and the

16  living, breathing document, we believe that we have presented a

17  credible potentially confirmable plan.  It's not perfect.  We

18  know it's not perfect.  There are issues.  But the point of the

19  welcoming competition and living, breathing document is I've

20  been doing this thirty years, give or take, I think.

21      THE COURT:  You're a rookie.

22      MR. STAMER:  I'm actually -- I'm a pup.  I've never

23  seen the first plan that's filed be the one that's confirmed.

24  So --

25      THE COURT:  Right.

PG&E Corp. And Pacific Gas And Electric Company

1    MR. STAMER:  -- our anticipation is -- our position

2  very clearly is we have a confirmable plan.  There will likely

3  be -- there has to be back and forth to get to confirmation.

4  And I understand Your Honor's point.

5    THE COURT:  I'm just going to repeat it again.

6    MR. STAMER:  Sure.

7    THE COURT:  I think that where you and I perhaps

8  differ, in broad strokes here, is that -- and then you're being

9  an advocate for your client and I'm being the Court that's

10  trying to help.  I don't want the bankruptcy court or the

11  bankruptcy system to be the roadblock.  I want to be out of the

12  way when June 30th comes and everybody is celebrating or

13  blaming someone else. I think we're having a discussion about

14  when that competition should occur.

15    And I don't want to schedule competing confirmation

16  trials in February or March with four rooms full of experts on

17  why the present value of plan A is better than the present

18  value of plan B.  And I think sorting out the players here and

19  getting at least, if not a consensus proposal, a narrowing of

20  proposals, and then simplifying and streamlining the disclosure

21  process and the confirmation journey is more efficient with my

22  judgment on it.

23    And I must say, if out of whatever discussions are had

24  at the urging of the governor and the CPUC, if that leads to

25  solving some of these other problems, the relief from stay

PG&E Corp. And Pacific Gas And Electric Company

1   problems or the estimation problem, or even solves some of the

2   problems, that's progress too.  That's something we can all be

3   thankful for.  So this is a long, long way of saying I don't --

4   I'm going to continue it.  I think what makes sense to me, and

5   I will listen to any other counsel, would be to go back to what

6   I discussed with Mr. Kornberg, a hearing that we have set aside

7   on the 9th for other reasons, but a hearing for a report back

8   from Mr. Kornberg and the governor's office, well, have you got

9   something or not.  And if the answer is not, then I would

10  listen to the arguments on your motion, on the 14th, and

11  concurrently with the motion from the subrogation group

12  which --

13          THE CLERK:  It's set on the 13th.

14          THE COURT:  WE moved that to -- or they set it on the

15  13th, right?

16          THE CLERK:  It was set on the 13th.

17          THE COURT:  Okay.  13th then.

18          MR. STAMER:  Okay.

19          THE COURT:  So let's do it this way for everyone else

20  that wants to be heard.  And again, I apologize to the counsel

21  who tried to speak from the other room.  I call this a

22  tentative ruling.  My tentative ruling is to grant the oral

23  request for the adjournment and to disregard or to disagree and

24  therefore deny Mr. Stamer's opposition.

25          And I will move the hearing on the contested

PG&E Corp. And Pacific Gas And Electric Company

1   exclusivity motion by the ad hoc senior creditors' committee --

2   I'm using the wrong term; you know who we're talking about, Mr.

3   Stamer's client --to the 13th of August at 9:30, with the

4   anticipation that on the 9th of August we'll hear from the

5   CPUC/governor's officers on the efforts to come to some

6   consent.

7   MR. STAMER:  Your Honor, the only clarification or

8   question I have is I think, from our perspective, subject to

9   Your Honor saying no, obviously, they should run coterminous.

10  So we'd like to have our hearing at the same time as the CPUC

11  has to report.

12  THE COURT:  Well, but I think it's a report.  I mean,

13  if -- but does that make sense?  I'll put this to you:  does

14  that make sense if they have something good to report in terms

15  of progress?

16  MR. STAMER:  Understood.

17  THE COURT:  I mean, it's kind of like --

18  MR. STAMER:  Understood, Your Honor.  Understood.

19  THE COURT:  Okay?

20  MR. STAMER:  Okay.

21  THE COURT:  Look, we -- okay, we're done.  All right.

22  Thank you.

23  All right.  We have counsel on the phone -- I mean,

24  next door.  Are you hearing me in there in the other room?

25  MR. DE GHETALDI:  Yes, Your Honor.

(973) 406-2250 operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1          THE COURT:  Okay.  Go ahead.

2          MR. DE GHETALDI:  I'm sitting at the back of the room

3     here, and I missed the segue from the relief from stay --

4          THE COURT:  I know who you are, but you need to state

5     your name for the record.

6          MR. DE GHETALDI:  My name is Dario de Ghetaldi.

7          THE COURT:  Yeah, I know, Mr. de Ghetaldi.  Good

8     morning.  What do you want to say?

9          MR. DE GHETALDI:  Well, along with my cocounsel who

10    are here today, I think we're the three trial counsel on the

11    only preference case that has ever been heard in any of these

12    PG&E matters because a court -- and it's the only trial that

13    ever commenced.  And I wanted to suggest a question, without

14    suggesting the answer, that the Court might be interested in

15    examining.

16         THE COURT:  Well, I want to stick with what's on the

17    agenda right now.  I'll hear you later.  The issue right now is

18    this request to adjourn the contested exclusivity motion.  So

19    are you --

20         MR. DE GHETALDI:  That's --

21         THE COURT:  -- on that subject?  Because if not, I'd

22    rather pass and hear from the other counsel.

23         MR. DE GHETALDI:  No, Your Honor, that's fine.  I just

24    wanted to let you know that I'm here and I'm --

25         THE COURT:  Okay.  I'll come back to you.  Let me

                PG&E Corp. And Pacific Gas And Electric Company

1    finish the agenda on this item.

2            MR. DE GHETALDI:  Thank you.

3            MR. DUNNE:  Good morning, Your Honor.  Dennis Dunne

4    from Milbank on behalf of the official unsecured creditors'

5    committee.  I'll be brief.

6            Your Honor's made your position clear.  We had opposed

7    the request for --

8            THE COURT:  Right.

9            MR. DUNNE:  -- the adjournment principally because

10   we're on the clock, and Your Honor kind of telescoped that

11   issue: what will we lose --

12           THE COURT:  Right.

13           MR. DUNNE:  -- in the next two weeks.  And I wanted to

14   have one suggestion as to what we can do during this two-week

15   period, say, to kind of not be in a position where we could

16   potentially lose time.

17           But in terms of the committee's perspective, I think

18   we share a lot of the objectives that you heard from the CPUC

19   and the debtors.  We've got to keep our eyes on the June 30th,

20   2020 deadline.

21           THE COURT:  Actually, that was kind of why I was

22   surprised that you were opposed to the request, because I sort

23   of regarded your and your client's role as being in the middle

24   of this dispute here.

25           MR. DUNNE:  And so let me -- that's why I'm standing,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    to kind of give you a sense of that, Your Honor.  And we

2    also -- we're not wedded to the bondholder plan.  We agree with

3    the CPUC and the debtors we should want a process that gets to

4    the best plan for all stakeholders.

5         THE COURT:  Right.

6         MR. DUNNE:  The point of disagreement is whether we

7    believe that's likely to occur within a competing plan context

8    or with the board of directors retaining exclusivity to next

9    June 30th, 2020, with the help and the assistance and the

10   oversight of the CPUC.

11        Your Honor made it clear.  Let's spend the next two

12   weeks to try to figure out whether a protocol can work like

13   that.  What we would propose doing, because we can get to

14   August 9th, and a couple of things can happen, right?  On

15   August 9th we could all be in violent agreement.  We stand up

16   here.  Mr. Stamer and I are fine with the protocol.  That's

17   easy, right?  We don't have to talk.

18        THE COURT:  Sure.

19        MR. DUNNE:  We could be in a situation where --

20        THE COURT:  If I have full option.

21        MR. DUNNE:  Right, Your Honor.  Exactly.  We could be

22   in a situation where some parties are supportive of that

23   protocol where exclusivity stays in place and others are not.

24   That would mean Your Honor would then most likely have to rule

25   on the motion to terminate exclusivity if Mr. Stamer's not on

PG&E Corp. And Pacific Gas And Electric Company

1  board with that.

2       What I'd like to work on in the interim is to have an

3  answer to Your Honor's question that works either way, whether

4  you deny the motion or approve the motion.  Deny the motion,

5  exclusivity stays in place.  Mr. Kornberg's protocol is likely,

6  kind of, running out.  Or you grant exclusivity.

7       How do we deal with competing plans in that situation?

8  And we could probably all spend some time trying, over the next

9  two weeks, to have an answer to that in terms of look, there's

10  barriers to entry to this case.  There are billions of dollars

11  of tort claimants.  A plan proponent has to have significant

12  financial wherewithal in order --

13       THE COURT:  Of course.

14       MR. DUNNE:  -- to be able to move forward with the

15  plan.  We can talk about how to have common disclosure

16  statements so that things aren't running amuck with all those

17  processes.

18       THE COURT:  No, I agree.  Absolutely.

19       MR. DUNNE:  And so I think that we could take

20  advantage of the time by having, perhaps, some specificity on

21  that side, so that either way Your Honor pivots, we haven't

22  lost the time, whether there's --

23       THE COURT:  But don't -- do you think, though, again,

24  we're not all lifetime bankruptcy lawyers.  There are a lot of

25  people honoring this case that aren't, including the public,

PG&E Corp. And Pacific Gas And Electric Company

1   and don't you think even a ruling up or down on these motions

2   have significant psychological, if not financial impacts?  And

3   I'm not talking about somebody that just got a hit.  I'm

4   talking about important issues for people's rights.  And if the

5   word goes out across the board that the judge has just denied

6   exclusivity, or granted exclusivity, there are consequences, at

7   least perceptions, right?

8           MR. DUNNE:  No, that's absolutely correct.  There's no

9   doubt about it.

10          THE COURT:  And that --

11          MR. DUNNE:  There's consequences.  I heard Mr. Stamer

12  say that he actually wants a ruling on that.

13          THE COURT:  Right.  Right.

14          MR. DUNNE:  And if we don't get him on board --

15          THE COURT:  But I mean so --

16          MR. DUNNE:  -- with the protocol, there'll be a

17  ruling.

18          THE COURT:  But what if that perception is

19  misunderstood, or what's the value of having a perception?  If

20  I don't state a ruling, that strikes me as better than making a

21  ruling and therefore having one side or the other having to act

22  on it.

23          I realize it's not the ultimate decision, but it's a

24  very critical one for timing purposes.

25          MR. DUNNE:  Correct.  And Your Honor, I'm not asking

PG&E Corp. And Pacific Gas And Electric Company

1    that you issue a ruling now, a preliminary ruling now.  What

2    I'm saying is there's a possibility greater than zero that on

3    August 9th you will be asked to make a ruling on the motion to

4    terminate exclusivity.

5              THE COURT:  Understood.

6              MR. DUNNE:  And we should be prepared --

7              THE COURT:  Well, not on that, no.

8              MR. DUNNE:  -- for what Your Honor's decision is.

9              THE COURT:  No.  On the 13th.

10             MR. DUNNE:  On the 13th.

11             THE COURT:  Because if there's no consensus,

12   procedural consensus, I will have at least the ad hoc

13   subrogation motion competing with the ad hoc committee's motion

14   and whatever the debtor has to say.  I don't know.

15             I mean, again, we can't -- if the debtor decides to

16   file a plan, there's nothing -- it's not an action item, but

17   it's a fact if the debtor does file a plan.

18             So I guess what I'm saying is that my personal view is

19   making a ruling has consequences, and I'm a little concerned

20   about the unintended consequences of such a ruling.

21             MR. DUNNE:  Your Honor, I think that everybody hears

22   that, and I think that that's why people try to get into a room

23   and try to work something out.

24             THE COURT:  Right.

25             MR. DUNNE:  We all know that sometimes you get to

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    consensus, sometimes you don't.

2         THE COURT:  That's right.

3         MR. DUNNE:  If we don't, we're going to find out what

4    Your Honor thinks of the motion on exclusivity.

5         THE COURT:  Well, I mean, I could order you all to

6    mediation too.

7         MR. DUNNE:  You could do a lot of things, yes.

8         THE COURT:  But I'm not going to do that.  And I want

9    the parties, and particularly here with the legislative leader

10   and the administrative leaders taking the lead and trying to

11   bring a consensus rather than the bankruptcy judge.

12        MR. DUNNE:  No, no.  And I understand that, Your

13   Honor.  And I wouldn't be standing here today with this

14   position if the legislature hadn't -- you know, there were lots

15   of helpful aspects of the legislation, but being put on the

16   clock means we --

17        THE COURT:  Right.

18        MR. DUNNE:  It would be -- we would all regret sitting

19   here next June 29th and saying had we only moved a little

20   quicker in the fall --

21        THE COURT:  I agree.

22        MR. DUNNE:  That's what I'm concerned about.

23        THE COURT:  I agree.  I'm well aware of that, and

24   that's why if this were a two-month contingency I wouldn't do

25   it.  But a two-week or so seems a little -- well, it seems a

PG&E Corp. And Pacific Gas And Electric Company

1    little un-risky, not risky.  And as I said, I'll repeat what I

2    personally believe, that the system, to me, doesn't need till

3    next June 30th if everybody lines up and the things happen.

4    And courts schedule things the way they should do.

5         If the CPUC or the governor's office or the FERC or

6    third-party financiers, if they want to slow down the train,

7    that's their business, but my court or my role, as long as I'm

8    doing it, and to the extent that any district judge gets

9    involved in matters that he or she have to do, I want to make

10   sure that the bankruptcy system isn't the hang-up in terms of

11   that clock ticking.

12        MR. DUNNE:  Right.  And specifically with respect to

13   the bondholder group proposal, one of the benefits that they

14   have is they don't need further legislative action for their

15   plan.  There are other plans that have been discussed -- and it

16   may be the debtors, maybe not, maybe the equity -- that would

17   require legislative action.

18        THE COURT:  Right.

19        MR. DUNNE:  Well, one of our concerns is that we put

20   all our eggs in that basket only to find out that the

21   legislature does not do what they failed to do in July, which

22   is authorize tax-exempt bonds to fund that plan.  If they do,

23   great, but if not, we have a plan now that could actually be

24   confirmed, subject to the amendments in light of the usual

25   processes.

(971) 786-2158   operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    THE COURT:  Oh, no, I know.  But that's it.  You're

2  not advocating sticking with exclusivity.  You're advocating

3  break it.  And the only question is well, maybe I will break it

4  in two weeks.

5    MR. DUNNE:  Right.

6    THE COURT:  I mean --

7    MR. DUNNE:  And all I'm saying is that we don't know

8  where Your Honor will be in two weeks.  We don't know where

9  we'll be in two weeks.  We'll have a whole bunch of

10  conversations in two weeks, and we'll come back to you.  I'm

11  saying it's incumbent on the parties to try to make -- because

12  of the deadline -- to try to have a process that works in both

13  ways.

14    THE COURT:  No, don't.  I don't want to mislead you.

15  If Mr. Kornberg and the governor's office hadn't made the

16  request, we would probably be concluding the argument.

17    MR. DUNNE:  Okay.

18    THE COURT:  And I would either have issued an oral

19  ruling on the merits of the motion or promised a prompt

20  disposition.  And that's true if the hearing takes place on

21  August 13th.  Because again, we're back to my role isn't to

22  take this under advisement and write a fifteen-page published

23  opinion that it takes me six weeks to do.  I got to turn this

24  around and get it done.

25    MR. DUNNE:  I understand, Your Honor.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1       THE COURT:  Ms. Dumas, you were asking to be heard.

2  Good morning.  It's still morning.

3       MS. DUMAS: It is still morning.  Good morning, Your

4  Honor.  Cecily Dumas, Baker & Hostetler, on behalf of the

5  official committee of tort claimants.  The TCC wants to

6  acknowledge the sea of financial interests in both courtrooms

7  and understand their concerns about the case, but a brief

8  reminder is needed that the reason we're here in this

9  bankruptcy case is the destruction of neighborhoods and dozens

10  of deaths --

11       THE COURT:  Right.

12       MS. DUMAS:  -- as a consequence of PG&E's conduct.

13       So Mr. Julian and I are in the courtroom.  Mr. Kelly

14  and Mr. Pitre the leadership of the North Bay litigation, Mr.

15  Karotkin, we're here because the biggest problem to be solved

16  in the case is the valuation of tort claims.

17       So I want to make three short points.

18       THE COURT:  Okay.

19       MS. DUMAS:  My first point is that the TCC had already

20  opposed the motion to lift exclusivity for the ad hoc

21  bondholders to file that plan, as the Court has pointed out.

22  The reason that we opposed it is because that plan --

23       THE COURT:  No, I know why.

24       MS. DUMAS:  -- had the capped trust.

25       THE COURT:  Yes, I know why.

(973) 406-2250   operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1    MS. DUMAS:  We appreciate Your Honor's raising that

2  specific issue, that we don't think a plan is confirmable as a

3  matter of law when it has a capped trust that, for all intents

4  and purposes, becomes the cap trust for distribution.  So we

5  will --

6    THE COURT:  Well, but that's the point I want you to

7  brief.

8    MS. DUMAS:  That's what we're going to brief.

9    THE COURT:  Okay.

10    MS. DUMAS:  So that's our first point, and we

11  appreciate the Court's acknowledging that that's the infirmity

12  that needs to get further developed.

13    Second point.  The tort claimants --

14    THE COURT:  Just move away from the mic a little bit.

15  You're just a little louder.

16    MS. DUMAS:  I'm probably spitting into it --

17    THE COURT:  You're doing fine.

18    MS. DUMAS:  -- for those on the phone.

19    THE COURT:  No, you're doing fine.  Okay.  Go ahead.

20    MS. DUMAS:  Second point.  The tort claimants'

21  committee is in support of competition in plan holders.  The

22  tort claimants committee, simply, their interest is to get full

23  fair allowance and payment in full of the claims that result

24  from the losses from the various fires.  So whereas we opposed

25  that specific plan proposed by the bondholders, we have met

PG&E Corp. And Pacific Gas And Electric Company

1    with the bondholders.  We will continue to consider plans

2    proposed by the bondholders as well as any plan that's proposed

3    by the debtors or any other party.

4            THE COURT:  Well, I assume you and your clients are

5    going to be invited to the meeting.

6            MS. DUMAS:  We have, in fact, been invited, and --

7            THE COURT:  Okay.

8            MS. DUMAS:  When we got a call from the California

9    Public Utilities Commission the other day, we figured we

10   probably ought to listen to what it and the governor's office

11   had to say.

12           THE COURT:  Good advice.

13           MS. DUMAS:  Yes, sir.  Third and final point.  There's

14   been a lot of discussion about timing and a lot of discussion

15   about the complexity of issues to resolve and total enterprise

16   value and experts.  From our perspective, the most significant

17   use of time in these cases, everyone's time, is to get to the

18   most fair and efficient way to resolve tort claims.  That can't

19   be rushed through any artificial deadline, although we are

20   hopeful that through the protocol we propose, or such other

21   protocols that the Court and the parties develop that provide

22   for a fair process, consistent with constitutional principles

23   and consistent with 157, are followed.

24           So we, from our limited view of the world, not looking

25   to make an enormous profit or to take over a company, from our

PG&E Corp. And Pacific Gas And Electric Company

1    limited view of the world, the most complicated and dedicated

2    use of time in these proceedings should be the resolution of

3    tort claims, because that's why we're here.  That's the hardest

4    issue to resolve.  Your Honor's being asked to make a

5    determination that the California Supreme Court hasn't made on

6    inverse condemnation as well as many other difficult issues

7    associated with damages --

8              THE COURT:  You know, as challenging as that question

9    is --

10             MS. DUMAS:  -- personal injury torts.

11             THE COURT:  As challenging as that question is, it's

12   an easy question to propose, because it's just a question of

13   law.

14             MS. DUMAS:  Yes, sir.

15             THE COURT:  Okay?

16             MS. DUMAS:  It's also an easy question to reject under

17   applicable law, but --

18             THE COURT:  Yes.

19             MS. DUMAS:  -- we'll get there.

20             THE COURT:  But what I'm getting at is whether I agree

21   or disagree, it's still a legal question, and that's what I'm

22   trying to do and lawyers are trying to do.

23             MS. DUMAS:  Yes.

24             THE COURT:  The factual question, and the questions

25   that you're talking about, or the bigger questions, are much

PG&E Corp. And Pacific Gas And Electric Company

1    different.  So to me the fact that I have to decide what Mr.

2    Karotkin called phase 1, it's okay.  I'll do it.  I'll do it.

3           MS. DUMAS:  Yes.  I mean, we'll get to -- we think

4    it -- not the time to argue it.  We have -- it's got to be

5    phase 3, if at all, but --

6           THE COURT:  Right.

7           MS. DUMAS:  But in any event, I simply want to stress

8    to the Court that what's on our minds -- we know it's on Mr.

9    Karotkin's mind and Mr. Orsini's mind.  It's on our minds.

10   It's on the minds of Mr. Kelly and Mr. Pitre, is how do we get

11   there --

12          THE COURT:  Right.

13          MS. DUMAS:  In a way that's consistent and fair and

14   will be time consuming and complicated.  And we don't want that

15   to get lost --

16          THE COURT:  It's not lost.

17          MS. DUMAS:  -- in all the financial interest concerns

18   about who wins the race to own this company and make a profit.

19          THE COURT:  Ms. Dumas.

20          MS. DUMAS:  That's all I want to say.

21          THE COURT:  The reason why I put the questions to

22   everybody before we even talked about exclusivity was to help

23   me do my job and do my best to make the decision that really

24   comes down to Superior Court or estimation process, and a

25   subset of that is with or without involvement of another

PG&E Corp. And Pacific Gas And Electric Company

1    federal judge.  That I couldn't agree more, that is the

2    fundamental gating question to -- gating is a phrase term, a

3    popular phrase here these days.  And so that's a gating

4    question for your clients and their treatment.

5           MS. DUMAS:  And it involves --

6           THE COURT:  And it's on the agenda as early as we can

7    make it.

8           MS. DUMAS:  Yes, sir.  And it involves, concededly,

9    very difficult issues and areas in which the Court has

10   discretion and areas in which reasonable minds can differ.

11          THE COURT:  No, I understand.

12          MS. DUMAS:  We just want to make sure it's fair, so

13   that the reason we're here, the victims, get paid in full.

14          THE COURT:  And this goes back to the opening question

15   of I need some guidance from your co-counsel as to what would

16   be the timeline and the sequence if I grant relief from stay?

17   It's inconceivable to me that I would grant relief from stay

18   and set an estimation process.

19          MS. DUMAS:  Yes, sir.  The only difficulty --

20          THE COURT:  So to me it comes down to one or the

21   other, and if it's the estimation process, then, as I say, to

22   figure out the responsibility of different judicial officers.

23   That's all.

24          MS. DUMAS:  Yes, sir.  The only difficulty with the

25   Court's suggestion is that my litigation co-counsel, Mr.

PG&E Corp. And Pacific Gas And Electric Company

1    Julian, is very shy and he doesn't like making recommendations

2    to the Court.

3            THE COURT:  That's why I asked you to come up and be

4    heard.

5            MS. DUMAS:  We will fully brief the matters in

6    conjunction with the Court's request.  I thank you, Your Honor.

7            THE COURT:  Thank you.  Anyone else want to be heard?

8            Oh, Mr. Karotkin, did you want to say something

9    further or not?  I'll start with you.

10           Anyone else want to be --

11           MR. KAROTKIN:  No, sir.

12           THE COURT:  Anyone else want to be heard here in this

13   courtroom first, and then I'll see if the other courtroom?

14           All right.  Anyone in the other courtroom?

15           All right.  Well, thank you all for your time.  For

16   the record, the motion of the ad hoc committee of senior

17   unsecured creditors for -- our shorthand term is to terminate

18   exclusivity -- is being continued to Aug. 13th at 9:30, and

19   preparatory to that there will be a hearing on August 9th at

20   9:30.

21           THE CLERK:  I just have 11:30.

22       (Court and clerk confer.)

23           THE COURT:  Okay.  We'll stick with 11:30 on that day.

24           And Mr. de Ghetaldi, I know you want to be heard, but

25   let me just finish on this other point.

PG&E Corp. And Pacific Gas And Electric Company

1    So for the record, we're continuing our -- I mean,

2    we're setting on that August 9th 11:30 calendar, where we

3    already have the motions that have been continued pertaining to

4    the key employee compensation and the CEO's compensation, we

5    are setting, for lack of a better term, a status conference on

6    the request by the CPUC and the governor's office to see if

7    they can come up with some consensus about a procedural

8    proceeding.  It doesn't have a formal name, but that's what

9    we're here for.

10    All right.  So unless anyone else wants to be heard,

11    Mr. de Ghetaldi, you asked to be heard.  And again, I wanted to

12    make sure you were focusing on what was on our agenda, so I'm

13    assuming you want to raise something else  Go ahead.

14    MR. DE GHETALDI:  I was hoping to be on the Court's

15    agenda, Your Honor.  It was just on the issues revolving around

16    the preference motion and the Court's --

17    THE COURT:  Well, but it's not on the calendar.  I

18    just asked for help for what will be argued and heard on August

19    14.

20    MR. DE GHETALDI:  And I understand that, Your Honor.

21    THE COURT:  Okay.

22    MR. DE GHETALDI:  What I would like to do is to

23    suggest to the Court that there is a question that has not been

24    briefed in any of the papers and that the Court did not

25    cover --

PG&E Corp. And Pacific Gas And Electric Company

1          THE COURT:  Okay.  All right.

2          MR. DE GHETALDI:  -- in the questions they laid out.

3          THE COURT:  What's the question then?

4          MR. DE GHETALDI:  Okay.  And it relates to California

5    law with respect to a party's right to preference under Code of

6    Civil Procedure 36(a).  California cases are uniform and strong

7    in holding that the right to preference is absolute, mandatory,

8    and substantive.

9          So I believe that there is an issue as to, among

10   others, the effect of 28 U.S.C. 2075 that says that the

11   bankruptcy, "shall not abridge, enlarge, or modify any

12   substantive right" under state law.  And so I think that that

13   is an issue that is worthy of the Court's --

14         THE COURT:  Well, has that been touched upon in the

15   briefs?  I mean, the motion for relief from stay that was filed

16   by the TCC, and a similar motion by the subrogation group, I

17   believe the debtor has responded, and I hope that someone has

18   addressed that issue.  If it hasn't, then it's not my job to

19   start adding assignments for things that I haven't thought

20   about.  You may have a very good suggestion, but I don't -- if

21   the parties haven't raised it, I don't know what I'm supposed

22   to do about it.

23         MR. DE GHETALDI:  Well, Your Honor, I had prepared a

24   reply brief that I was going to file, until I saw the Court's

25   response to the ex parte request to continue the hearing --

(972) 865-9380 operations@escribers.net | www.escribers.net

PG&E Corp. And Pacific Gas And Electric Company

1          THE COURT:  Okay.

2          MR. DE GHETALDI:  -- which was set for today.

3          THE COURT:  Okay.

4          MR. DE GHETALDI:  And I had raised it in the -- I did

5    not file it, because I was waiting for the Court's order.

6          THE COURT:  Okay.  File it.  File it.

7          MR. DE GHETALDI:  I will.  Thank you.

8          THE COURT:  File it.  Thank God.  And I'll take all

9    the help I can get.

10          MR. DE GHETALDI:  Thank you.

11          THE COURT:  Thank you.  Anyone else?  All right.

12   Thank you all for your time in both courtrooms, and otherwise

13   see you on the -- I'll see some of you next week, and I'll see

14   you on the 9th.

15      (Whereupon these proceedings were concluded at 11:29 AM)

16

17

18

19

20

21

22

23

24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

1                          I N D E X

2    RULINGS:                                        PAGE LINE

3    Debtors' application to employ Deloitte &        6     19

4    Touche, granted.

5    Motion of Mr. Cronin for relief from stay is    16     20

6    denied.

7    Oral motion to adjourn exclusivity hearing is   97      1

8    granted.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3    I, Penina Wolicki, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    _____

9    /s/ PENINA WOLICKI, CET-569

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  July 25, 2019

16

17

18

19

20

21

22

23

24

25

of 118
(973) 406-2250 | operations@escribers.net | www.escribers.net

# A

**AB-1054 (5)**
37:16,16,19;48:1,16
**ability (3)**
24:20;61:8;68:6
**able (2)**
34:4;84:14
**abridge (1)**
98:11
**absolute (1)**
98:7
**Absolutely (5)**
54:20;67:22;72:21;
84:18;85:8
**access (1)**
33:6
**accommodate (2)**
49:25,25
**accordance (2)**
32:5;65:1
**according (2)**
34:18;40:7
**accordingly (1)**
40:2
**accounted (1)**
42:6
**achieving (1)**
47:16
**acknowledge (1)**
90:6
**acknowledging (1)**
91:11
**across (2)**
64:6;85:5
**act (2)**
53:11;85:21
**action (4)**
9:15;86:16;88:14,17
**actionable (1)**
8:17
**active (1)**
41:10
**activity (1)**
12:1
**actual (1)**
25:16
**Actually (26)**
34:22;37:11;40:21;
42:18;53:17;56:11;
57:25;58:2,16,24;
61:12,14;64:22;65:10;
66:10;68:13;70:5,15;
72:2,4,5;77:14,22;
82:21;85:12;88:23
**ad (24)**
35:14;36:24;37:3;
40:18;42:20;48:8;50:8,
23;51:14;52:20;53:15,
17;64:17;67:15;68:9;
73:5;76:6,9;77:10;
80:1;86:12,13;90:20;

96:16
**Adam (1)**
7:1
**adding (1)**
98:19
**additional (3)**
19:3;32:24;66:3
**address (3)**
19:4,15;20:16;29:21;
53:20
**addressed (3)**
28:19;50:5;98:18
**addresses (1)**
62:19
**addressing (3)**
6:24;20:7;29:25
**adherence (1)**
38:25
**adjourn (4)**
42:19;43:11;47:10;
81:18
**adjournment (11)**
35:19;48:17;49:22;
51:13;53:22;54:1,25;
60:9,20;79:23;82:9
**administrative (1)**
87:10
**advance (1)**
7:13
**advantage (1)**
84:20
**adversary (1)**
30:23
**advice (1)**
92:12
**advise (1)**
6:10
**advised (1)**
6:12
**advisement (4)**
55:10;67:12;72:24;
89:22
**advocate (1)**
78:9
**advocating (2)**
89:2,2
**affect (2)**
35:23;36:21
**affected (1)**
62:7
**affirmative (2)**
11:15,16
**afternoon (1)**
64:20
**again (37)**
16:6,22;18:22;20:18;
21:9;22:4,14;25:12,25;
28:2;30:20;32:25;
38:16;41:20;44:18;
45:9;46:8;47:1;50:22;
51:11,13,14;53:14;
55:24;61:23;62:18;
63:21;66:8;70:20;

72:13;74:4;78:5;79:20;
84:23;86:15;89:21;
97:11
**against (6)**
8:24;9:17;11:21;
14:20;16:14;54:15
**agency (1)**
8:17
**agenda (8)**
6:8;17:23;45:4;
81:17;82:1;95:6;97:12,
15
**ago (2)**
41:8;52:16
**agree (18)**
8:5;20:21;34:4;
38:12,12;45:13,18;
48:19;56:23;57:5;
69:14;77:13;83:2;
84:18;87:21,23;93:20;
95:1
**agreed (1)**
76:13
**agreement (3)**
43:11;55:14;83:15
**agrees (2)**
45:21;49:6
**ahead (16)**
7:11,16;17:5;23:12,
18;36:2,8,12;42:17;
49:3,3;55:12;59:22;
81:1;91:19;97:13
**Akin (2)**
35:13;53:15
**Alan (1)**
35:8
**alleged (1)**
23:19
**all-or-nothing (1)**
23:25
**allow (3)**
47:11,19;48:15;
49:14
**allowance (1)**
91:23
**allowed (4)**
12:23;64:17,18;
65:21
**almost (5)**
9:9;15:10;74:10;
75:9,11
**alone (1)**
24:10
**along (2)**
65:10;81:9
**alternative (1)**
51:16;52:22
**Although (3)**
8:14;41:6;92:19
**always (1)**
58:14
**amendments (1)**
88:24

**among (4)**
46:12;66:9;74:6;
98:9
**amongst (1)**
39:19
**amount (3)**
39:25;40:1;77:11
**amounts (3)**
20:12,17;26:17
**amuck (1)**
84:16
**Amy (1)**
41:18
**analysis (1)**
15:25
**analyze (1)**
8:3
**and/or (1)**
26:18
**answered (1)**
29:8
**anticipate (1)**
56:9
**anticipation (2)**
78:1;80:4
**anymore (2)**
14:6;24:24
**apologies (2)**
17:16;47:7
**apologize (2)**
70:20;79:20
**apparently (1)**
56:12
**appearances (1)**
35:7
**appears (1)**
21:13
**applicable (3)**
8:1;10:6;93:17
**application (1)**
6:11
**appointment (1)**
27:13
**appreciate (6)**
17:11,11;31:19;
32:18;91:1,11
**approach (4)**
11:22;29:3;40:4,4
**appropriate (9)**
9:2;12:19;17:24;
45:25;52:4,9;53:23;
61:1;68:1
**approval (2)**
50:4;60:22
**approve (4)**
40:11;45:13,14;84:4
**approved (2)**
38:19;42:24
**Approximately (3)**
43:19;45:9;55:20
**Archdiocese (1)**
20:15
**architect's (1)**

75:15
**area (1)**
77:10
**areas (2)**
95:9,10
**arguably (1)**
8:11
**argue (4)**
10:6;34:1;73:21;
94:4
**argued (1)**
97:18
**arguing (2)**
58:9;61:20
**argument (17)**
10:4;15:15;16:8;
18:15;23:5;55:9;61:24;
62:14,15;71:18,19;
72:16,17,24;73:15;
74:8;89:16
**arguments (4)**
14:21,22;43:24;
79:10
**arm (1)**
49:11
**arm-twisting (1)**
40:16
**around (2)**
48:11;89:24;97:15
**Article (1)**
27:12
**articulated (1)**
11:22
**artificial (1)**
92:19
**aside (3)**
13:4;34:2;66:16,17;
79:6
**aspects (1)**
87:15
**asserted (1)**
11:8
**asserts (1)**
11:14
**assigned (1)**
22:21
**assignments (1)**
98:19
**assistance (1)**
83:9
**associated (1)**
93:7
**assume (7)**
20:23;23:6,11,23,25;
38:6;92:4
**assuming (5)**
22:7;28:2;65:16;
67:7;97:13
**assure (1)**
70:23
**Atlas (1)**
23:7,9,12,14,14;26:3
**attached (1)**

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 102
of 118

37:22
**attempt (1)**
42:21
**attention (1)**
13:5
**audio (1)**
42:16
**Aug (1)**
96:18
**August (24)**
28:7,19;29:8,19;
30:7;31:13,20;32:2;
52:3,6;67:2,6,7;71:17,
18;80:3,4;83:14,15;
86:3;89:21;96:19;97:2,
18
**auspices (1)**
47:13
**authority (4)**
8:16;24:10;25:12;
27:11
**authorize (1)**
88:22
**authorized (2)**
70:14;74:20
**automatic (1)**
7:19;17:10
**Avenue (1)**
66:18
**avoid (3)**
40:12;65:6;70:3
**aware (7)**
11:18;14:15;33:8;
35:20;37:3;53:19;
87:23
**away (5)**
11:11,13;57:11;
63:15;91:14

**B**

**babe (1)**
31:11
**back (25)**
12:23;16:6,24;26:20;
27:18;30:11;31:9,23;
42:12,23;45:8,12;65:8;
71:10;73:14;74:19;
75:2;78:3;79:5,7;81:2,
25;89:10,21;95:14
**backdrop (1)**
11:21
**background (1)**
15:4
**backscratching (1)**
53:10
**Baker (1)**
90:4
**balance (1)**
12:25
**balances (1)**
48:5
**bankruptcy (23)**

10:25;12:23;13:4;
15:17;16:23,25;23:1;
24:20;26:14;27:1,20;
38:4;47:14;61:7;62:7;
66:23;78:10,11;84:24;
87:11;88:10;90:9;
98:11
**bar (2)**
21:16,20
**barriers (1)**
84:10
**based (4)**
9:10;52:9;72:13,14
**basis (2)**
8:4;51:25
**basket (1)**
88:20
**Bay (2)**
34:3;90:14
**becomes (1)**
91:4
**begin (2)**
21:15,23
**beginning (2)**
19:23;21:17
**behalf (1)**
35:14;53:15;82:4;
90:4
**behavior (1)**
70:1
**behind (1)**
67:15
**believes (2)**
14:8;48:12
**bench (1)**
29:5
**benefit (2)**
28:23;68:4
**benefits (1)**
88:13
**Bennett (3)**
41:5,6;69:1
**Benvenutti (20)**
6:22;7:5,6;10:11,16,
18,19,20;11:8,13,16,
18,21;13:20;16:11,13;
17:4,14,16,18
**Benvenutti's (1)**
16:7
**best (16)**
22:23;23:16;24:3,13;
39:7,7,9,10,11;43:4;
46:20;47:16;48:20;
49:15;83:4;94:23
**better (13)**
12:25;22:6;40:4;
46:2;61:25;62:2,4,5,7;
65:19;78:17;85:20;
97:5
**beyond (1)**
71:24
**bifurcate (1)**
26:11

**bifurcating (1)**
27:22
**big (8)**
26:24;56:3;66:5;
68:21;75:6,7;76:1;77:4
**bigger (1)**
93:25
**biggest (1)**
90:15
**bill (1)**
72:8
**billion (1)**
59:4
**billions (1)**
84:10
**bit (1)**
91:14
**Blackacre (2)**
75:13,14
**blaming (1)**
78:13
**board (7)**
43:23;64:6;76:13;
83:8;84:1;85:5,14
**bondholder (2)**
83:2;88:13
**bondholders (4)**
90:21;91:25;92:1,2
**bonds (1)**
88:22
**book (2)**
25:3;61:11
**both (6)**
11:4;34:14;43:2;
89:12;90:6;99:12
**Brar (1)**
34:9
**break (3)**
72:17;89:3,3
**breaks (1)**
26:4
**breathing (4)**
11:24;12:4;77:16,19
**brief (15)**
19:5;21:10,11;28:9;
41:1;67:10,17,18;
73:24;82:5;90:7;91:7,
8;96:5;98:24
**briefed (2)**
73:3;97:24
**briefings (1)**
46:17
**briefly (1)**
32:22
**briefs (9)**
19:3,3,24;28:25;
46:13,14;66:4;76:10;
98:15
**bring (2)**
66:3;87:11
**broad (1)**
78:8
**broke (1)**

63:21
**brought (4)**
33:24;47:19;70:17;
77:6
**BrownGreer (2)**
33:3,14
**bucks (1)**
68:22
**building (1)**
72:3
**builds (1)**
50:24
**bunch (2)**
6:16;89:9
**burn (1)**
25:17
**business (1)**
88:7
**buy (1)**
75:13

**C**

**calculation (2)**
26:17;34:19
**calendar (8)**
22:23;31:2,12;34:8;
43:9;60:1;97:2,17
**CALIFORNIA (9)**
6:1;35:9;39:4;47:16;
48:22;92:8;93:5;98:4,6
**Call (7)**
6:3;27:19;60:1;70:8;
75:22;79:21;92:8
**called (3)**
33:3;58:4;94:2
**calls (1)**
59:16
**came (1)**
59:2
**can (56)**
6:9,13;10:12,16,16;
12:1,13;14:9;16:9;
22:20;25:5,22,23;
27:20;28:1;31:20,22;
41:18;42:24;44:19;
45:18,21,24;48:13,18;
49:24,25;50:22;52:3;
53:4;54:18;56:9,18;
61:6;63:25;65:10,13;
66:10;68:3;69:6;70:22;
72:15;73:7,16,24;
76:16;79:2;82:14;
83:12,13,14;84:15;
95:6,10;97:7;99:9
**candidates (1)**
66:12
**cap (2)**
20:18;91:4
**capable (1)**
27:25
**capital (2)**
39:8;59:4

**capped (1)**
90:24;91:3
**care (4)**
6:20;74:25;75:3;
76:25
**carefully (1)**
57:1
**carriers (1)**
48:21
**case (59)**
6:18;7:4,13,20,22;
8:7,14,15;9:23,24;10:4,
6,8,25;12:2,9,11,12,15;
13:5,11,15,24;15:6,8,
15,24;16:19,24;18:9,
25;20:19;23:7,8;30:21;
37:11,12,13,14,21,24;
40:3;43:24;50:16;54:14,
25;61:19;64:11;65:21;
70:21,22;72:15;73:12;
81:11;84:10,25;90:7,9,
16
**case-by-case (1)**
8:4
**cases (21)**
6:16;7:14;8:2;9:8,
10;10:5,25;20:15;
22:25;26:25;27:6;
36:22;37:1;40:14;43:3;
48:8;49:20;50:2;65:5;
92:17;98:6
**categories (1)**
26:5
**categorized (1)**
8:2
**category (3)**
24:15;26:16;49:4
**Caton (1)**
41:25
**cats (1)**
44:25
**cause (3)**
37:10;61:7,21
**CC (1)**
8:8
**CCSF (4)**
7:22;8:6,8;10:4
**Cecily (1)**
90:4
**celebrating (1)**
78:12
**CEO's (1)**
97:4
**certain (1)**
38:23
**certainly (11)**
13:12;21:10;31:16,
18,20;32:18,18;49:13;
56:8;68:7,10
**cetera (2)**
38:7,7
**chair (1)**
10:13,16

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 103
of 118

**challenge (3)**
37:17;39:13;56:1
**challenging (2)**
93:8,11
**chambers (1)**
28:23
**champagne (1)**
71:1
**chance (4)**
13:14;31:4;61:18;
74:4
**change (3)**
25:6;29:13;43:15
**changed (3)**
28:3;31:15;32:7
**changes (1)**
6:8
**changing (1)**
75:3
**chaos (5)**
39:13;49:16;62:19;
63:25;66:3
**chaotic (3)**
44:19;47:24;65:23
**Chapter (5)**
36:22;37:24;38:20;
48:7;50:6
**checks (1)**
48:5
**choir (2)**
61:10;71:2
**chooses (1)**
23:9
**Circuit (1)**
6:18
**circumstances (3)**
12:10;16:4;17:2
**cite (1)**
51:11
**cited (2)**
6:16;20:19
**City (1)**
16:1
**Civil (1)**
98:6
**claim (13)**
10:7,21;11:2,3,11;
12:22,23;13:3,7;14:13,
16;21:5;72:6
**claimant (1)**
20:25
**claimants (7)**
12:16;21:24;22:5;
84:11;90:5;91:13,22
**claimants' (1)**
91:20
**claimant's (1)**
20:24
**claimed (1)**
10:1
**claimholders (2)**
37:4;40:18
**claims (27)**

8:17;12:6;13:13;
14:12;18:11,12;20:4,9,
11;21:1,3,16,20;22:14;
23:24;24:21;25:1,8;
26:11,15;33:11;38:7;
39:9;90:16;91:23;
92:18;93:3
**clarification (5)**
19:24;20:20;29:17;
64:25;80:7
**class (4)**
9:15;21:1,2,5
**clear (8)**
13:11;30:25;39:3;
69:4;76:19,20;82:6;
83:11
**clearly (3)**
27:16;70:6;78:2
**clerk (9)**
7:8;34:10;40:25;
42:10;60:1;79:13,16;
96:21,22
**clerks (2)**
28:25;73:22
**client (12)**
41:16;44:24;49:6;
62:8;64:7;65:18;67:2;
68:15;74:5;76:5;78:9;
80:3
**clients (8)**
52:1;53:16;65:20;
67:5;69:1;76:14;92:4;
95:4
**client's (2)**
62:5;82:23
**climate (1)**
38:25
**clock (3)**
82:10;87:16;88:11
**close (2)**
11:1;12:20
**cocounsel (1)**
81:9
**co-counsel (2)**
95:15,25
**Code (1)**
98:5
**colleagues (2)**
21:10;53:21
**colloquy (2)**
66:21;74:25
**coming (4)**
17:23;32:25;34:20;
75:2
**commenced (1)**
81:13
**comment (8)**
6:15;50:17,25;51:2;
52:19;74:17,19;75:23
**comments (7)**
19:2,10;53:21;69:9;
75:4;76:17,22
**Commission (4)**

8:9;9:5;35:10;92:9
**commitment (1)**
69:10
**committed (1)**
59:4
**committee (22)**
22:2;35:14;37:4,8;
40:18,19;50:23;51:14;
52:20;53:16;64:17;
66:13;67:15;68:9,15;
77:11;80:1;82:5;90:5;
91:21,22;96:16
**committees (5)**
28:11;48:8;60:25;
66:13;74:6
**committee's (2)**
82:17;86:13
**common (1)**
84:15
**communicating (2)**
59:11,13
**company (11)**
8:22;10:2;17:4;
55:19;57:6;58:16;
64:10;70:17;72:4;
92:25;94:18
**company's (2)**
14:8;38:24
**compelling (1)**
12:10
**compensated (1)**
39:2
**compensation (3)**
34:9;97:4,4
**compete (1)**
48:2
**competing (13)**
40:7;42:22;49:14;
56:15;64:8;65:14;
68:19,24;71:1;78:15;
83:7;84:7;86:13
**competition (17)**
39:3,5,12;40:9;43:3;
52:20;56:13;66:8,9;
67:21,23,25;68:4;
77:15,19;78:14;91:21
**competitive (7)**
39:6,14;45:5;47:12,
18;48:6,14
**complain (1)**
31:3
**complaint (1)**
9:17
**complete (1)**
12:21
**completely (1)**
56:23
**complex (6)**
8:11;10:5;16:2,18;
18:12;39:17
**complexity (3)**
11:25;18:9;92:15
**complicated (5)**

16:1;21:8;55:25;
93:1;94:14
**comprehensive (1)**
77:12
**compressing (1)**
76:7
**compromise (1)**
17:1
**concede (1)**
56:6
**concededly (1)**
95:8
**concern (3)**
37:10;58:22;59:5;
69:23;70:1,5
**concerned (3)**
69:11;86:19;87:22
**concerns (4)**
49:25;88:19;90:7;
94:17
**concluded (1)**
99:15
**concluding (1)**
89:16
**concurrently (1)**
79:11
**condemnation (1)**
93:6
**conduct (3)**
24:9;27:13;90:12
**conducted (1)**
47:13
**confer (1)**
96:22
**conference (3)**
18:7;32:22;97:5
**confirm (3)**
40:10;43:3;55:19
**confirmable (9)**
52:22;56:21;64:1,2;
65:7;75:22;77:17;78:2;
91:2
**confirmation (13)**
37:25;38:15,16;
39:23;40:12;44:11;
56:5,19,22;75:20;78:3,
15,21
**confirmations (1)**
56:8
**confirmed (7)**
20:12;38:6;49:20;
56:2;66:10;77:23;
88:24
**confused (2)**
27:23;42:6
**confusing (1)**
23:10
**conjunction (1)**
96:6
**connection (3)**
24:11;29:9;56:15
**consensual (2)**
51:25;52:1

**consensus (16)**
48:11;50:24;58:10;
65:13;68:18;74:4,6;
76:12,14,15;78:19;
86:11,12;87:1,11;97:7
**consent (1)**
80:6
**consented (1)**
41:10
**consequence (1)**
90:12
**consequences (5)**
17:20;85:6,11;86:19,
20
**consider (11)**
15:23;18:20;29:4;
40:6;51:14,22;52:6;
56:20;60:25;68:8;92:1
**consideration (1)**
29:12
**considerations (1)**
51:16
**considering (1)**
15:24
**consistent (11)**
43:14;47:15;50:9;
51:12;56:12;65:4,4;
74:12;92:22,23;94:13
**consistently (1)**
65:23
**consolidate (1)**
64:13
**consolidated (1)**
22:25
**constituents (2)**
48:7,21
**constitute (1)**
27:4
**constitutes (1)**
12:9
**constitutional (1)**
92:22
**constructive (2)**
43:2;57:14
**consultation (3)**
60:10,21,24
**consuming (3)**
56:8,9;94:14
**contemplated (2)**
61:6;75:10
**contested (6)**
39:23;40:12;56:8,19;
79:25;81:18
**context (4)**
7:21;26:24;77:2;
83:7
**contingency (1)**
87:24
**contingent (4)**
24:23,24,24;25:2
**continuance (1)**
73:10
**continuances (1)**

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 104
of 118

59:14
**continue (7)**
16:21;42:25;55:8;
67:2;79:4;92:1;98:25
**continued (4)**
22:7;43:20;96:18;
97:3
**continues (1)**
36:24
**continuing (3)**
33:6;75:1;97:1
**control (1)**
33:13
**controlled (1)**
47:13
**controlling (1)**
6:18
**convenient (1)**
45:8
**conversations (2)**
36:8;89:10
**coordination (1)**
25:25
**cope (1)**
37:20
**copy (1)**
60:15
**core (1)**
61:8
**Corning (2)**
20:14,18
**corporate (2)**
26:25;39:9
**correctly (1)**
72:9
**coterminous (1)**
80:9
**counsel (15)**
18:19;19:9,25;22:24;
32:4;34:3;41:5,5;
42:13;61:24;79:5,20;
80:23;81:10,22
**counts (1)**
55:14
**couple (6)**
7:14;19:16;22:1;
46:10,16;83:14
**course (10)**
18:14;19:20;25:1;
36:21;38:8;45:17;50:5;
63:14;68:13;84:13
**Court (409)**
6:3,4,7,10,14,23,24;
25;7:3,7,11,16,21,23,
24;8:2,3,5,7,13,18,19,
20,20,22;9:1,2,2,3,5,7,
14,17,19,21;10:1,2,3,7,
10,18,21,25;11:2,7,11,
15,17,20,22,22;12:1,3,
5,8,10,23;13:4,8,10,14,
22;14:3,6,10,12,18,20,
24;15:3,7,12,17,19,22;
16:12,14,17,25;17:15,

17,20;18:2,5,8,24;
20:21;21:4,24;22:9,10,
11,13,21;23:8,9,12;
24:11;25:5,24;26:2,14;
27:21;29:16,18,20,24;
30:1,3,11,15,20;31:8,
11,14,15,17,21,22,24;
32:4,13,17,20,23;33:5,
8,10,18,21;34:7,11,14,
16,18,24;35:2,4,7,12,
15,20,24;36:2,5,12,14,
16,18;37:6,17,25;38:4,
11,14,21;39:15;40:10,
22,25;41:15,20,24;
42:1,4,11,16,19;43:6,8,
20;44:2,7,12;45:8,16,
18;46:1,6,8,23;47:1,3,
6,8,10,14;48:23,25;
49:3,23;50:11,15,17,
25;51:2,4,6,9,13,18,23,
25;52:8,11,13;53:2,5,9,
13,19;54:4,7,10,14,22,
24;55:2,5,7,12,21,23;
56:15,17,24,25;57:3,5,
9,11,14,17,19,22;58:3,
18,20,23;59:10,12,17,
20,25;60:3,5,13,15,19,
22;61:8,10,13,15,23;
62:4,11,20,23;63:1,4,6,
8,10,13,15,17;64:3,15,
23;65:2,11;66:5,11,15,
67:6,9,18,21,24;68:2,7,
14;69:3,6,14,16,22,25;
70:10,20;71:10,13,22,
24;72:7,12,16,22;
73:20,22;76:18,21,25;
77:5,7,13,21,25;78:5,7,
9,10;79:14,17,19;
80:12,17,19,21;81:1,4,
7,12,14,16,21,25;82:8,
12,21;83:5,18,20;
84:13,18,23;85:10,13,
15,18;86:5,7,9,11,24;
87:2,5,8,17,21,23;88:7,
18;89:1,6,14,18;90:1,
11,18,21,23,25;91:6,9,
14,17,19;92:4,7,12,21;
93:5,8,11,15,18,20,24;
94:6,8,12,16,19,21,24;
95:6,9,11,14,20;96:2,3,
7,12,22,23;97:7,11,
23,24;98:1,3,14;99:1,3,
6,8,11
**court-approved (2)**
40:8,8
**courthouse (1)**
66:3
**courtroom (7)**
36:6;59:14;72:25;
90:13;96:13,13,14
**courtrooms (2)**
90:6;99:12
**courts (3)**

6:17;22:11;88:4
**Court's (14)**
12:7;17:12;23:6,6;
24:20;30:9;91:11;
95:25;96:6;97:14,16;
98:13,24;99:5
**cover (1)**
97:25
**covers (1)**
23:14
**CPUC (23)**
49:10;50:1,4;51:12,
20,21;54:2,16;60:8,11,
21,24;65:13;66:22;
74:20,22;78:24;80:10;
82:18;83:3,10;88:5;
97:6
**CPUC/governor's (1)**
80:5
**Cravath (1)**
29:15
**creates (1)**
48:4
**credible (6)**
52:22;56:21;64:1;
65:7;66:7;77:17
**credit (1)**
72:3
**creditors (1)**
96:17
**creditors' (2)**
80:1;82:4
**critical (4)**
43:22;67:17;75:12;
85:24
**criticism (1)**
75:18
**criticize (1)**
57:16
**criticized (1)**
75:2
**critics (1)**
75:6
**Cronin (43)**
6:25;7:1,3,4,7,10,15,
18,24;8:6,14,21,25;9:4,
6,8,16,18,20,25;10:3,9,
14,23;11:1;13:2,14,21,
24;14:5,11,15,19,23;
15:2,4,8,14,18,21,22;
16:16,17
**Cronin's (2)**
12:9;13:6
**cruise (1)**
72:19
**culture (1)**
39:10
**currently (1)**
60:11
**Curtis (1)**
12:18
**custody (1)**
33:13

**D**

**damage (1)**
25:16
**damages (2)**
25:17;93:7
**damaging (1)**
63:25
**Dario (1)**
81:6
**database (1)**
33:4
**date (20)**
11:1;12:20;15:10;
16:21;21:16,18,20;
29:3,19,20;30:5,7,8;
43:16;44:22;45:8;52:4;
53:6,8;69:19
**dates (2)**
34:12;72:9
**date's (1)**
69:19
**dawned (1)**
41:2
**day (14)**
26:16;28:8;33:17;
40:20;41:3;43:22;
55:14;56:18,18;57:24;
64:11;71:9;92:9;96:23
**days (8)**
30:16,18;37:3;45:23;
46:18;72:7,15;95:3
**de (22)**
20:12;80:25;81:2,6,
6,7,9,20,23;82:2;96:24;
97:11,14,20,22;98:2,4,
23;99:2,4,7,10
**deadline (6)**
38:6;56:2;69:12;
82:20;89:12;92:19
**deadlines (4)**
28:23;29:2,7;32:9
**deal (12)**
17:24;21:18;28:25;
31:21;32:7;33:18,19;
43:12;49:7;63:25;66:5;
84:7
**dealing (3)**
24:2;46:1;65:8
**death (4)**
24:21;25:8,17;26:18
**deaths (1)**
90:10
**debated (1)**
18:13
**debating (1)**
67:24
**debt (1)**
48:2
**debtor (18)**
19:17,25;28:16;59:7;
64:8;66:12;67:17;68:5,

10,10,16;73:6,7;74:7;
86:14,15,17;98:17
**debtors (19)**
10:20;11:24;13:4;
19:17;29:15,23;40:17;
48:9;56:14;60:8,10,21,
23;61:2;76:23;82:19;
83:3;88:16;92:3
**debtors' (11)**
19:13,25;20:22;
28:15;31:24,25;48:20;
49:11;70:1,23;74:24
**decide (8)**
17:9;55:5;68:21,21,
22;71:17;72:18;94:1
**decided (1)**
27:12
**decides (2)**
10:2;86:15
**deciding (1)**
20:8
**decision (11)**
7:25;8:1;12:11;
20:16;23:6,6,16;74:9;
85:23;86:8;94:23
**decisions (4)**
7:13;11:23;12:3;
20:15
**declined (1)**
18:18
**dedicated (1)**
93:1
**deed (1)**
77:10
**defer (1)**
71:18
**deferred (1)**
74:9
**define (1)**
65:7
**definitely (1)**
12:24
**deign (1)**
31:13
**delay (1)**
71:20
**delineating (1)**
19:11
**Deloitte (1)**
6:11
**demand (4)**
11:15,18;13:21,24
**demonstrated (1)**
12:15
**demurrer (1)**
10:24
**denied (2)**
17:8;85:5
**Dennis (1)**
82:3
**deny (5)**
16:20;61:25;79:24;
84:4,4

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 105
of 118

**denying (1)**
14:21
**departure (1)**
16:19
**deputy (1)**
36:7
**derail (1)**
39:15
**described (2)**
10:23;37:7
**describes (1)**
25:16
**designated (1)**
30:24
**designed (1)**
11:3
**desire (1)**
67:16
**desired (1)**
40:9
**destruction (2)**
49:16;90:9
**detail (1)**
21:11
**detailed (1)**
75:9
**determination (1)**
93:5
**determine (2)**
26:14;61:1
**determined (1)**
21:4
**determines (1)**
61:9
**detour (1)**
71:7
**devastating (1)**
37:20
**develop (3)**
47:11;48:13;92:21
**developed (1)**
91:12
**development (4)**
37:11,20;47:18;
48:10
**develops (1)**
50:23
**devise (1)**
42:22
**devote (1)**
17:22
**DFEH (2)**
8:16;14:1
**Diego (1)**
20:16
**differ (2)**
78:8;95:10
**difference (1)**
72:23
**different (10)**
15:20;22:5,15;23:15;
26:5;27:8;58:7;66:1;
94:1;95:22

**differently (1)**
44:23
**difficult (7)**
13:8;27:25;32:9;
39:17;48:1;93:6;95:9
**difficulty (1)**
95:19,24
**digest (1)**
30:10
**dilution (1)**
70:3
**directed (2)**
13:12;23:5
**directly (1)**
40:16
**directors (1)**
83:8
**disadvantageous (1)**
72:22
**disagree (3)**
54:2;79:23;93:21
**disagreement (1)**
83:6
**dischargeability (2)**
26:25;27:2
**disclosure (6)**
56:4;63:13,18;64:16;
78:20;84:15
**discovery (1)**
34:5
**discrete (1)**
16:3
**discretion (1)**
95:10
**discrimination (1)**
10:22
**discuss (1)**
68:17
**discussed (2)**
79:6;88:15
**discusses (1)**
20:14
**discussing (1)**
70:11
**discussion (4)**
70:4;78:13;92:14,14
**discussions (2)**
33:12;78:23
**disposition (1)**
89:20
**dispositive (1)**
19:6
**dispute (1)**
82:24
**disputed (1)**
25:2
**disputes (2)**
11:4,6
**disregard (1)**
79:23
**distilled (1)**
11:23
**distinction (1)**

75:24
**distress (8)**
20:9;25:10,11,12,13;
26:19,22;27:5
**distribution (2)**
25:8;91:4
**district (4)**
21:4;24:11;27:16;
88:8
**diversion (1)**
13:5
**docket (2)**
19:21,21
**doctor (1)**
71:16
**document (3)**
74:22;77:16,19
**documents (3)**
34:1,5;38:22
**dollars (3)**
20:23;59:4;84:10
**done (9)**
9:9;27:20;44:19;
73:25,25;74:17;75:4;
80:21;89:24
**door (4)**
18:25;42:14,17;
80:24
**doubt (1)**
85:9
**Dow (1)**
20:14
**down (11)**
36:13;44:10,16;56:5;
69:24,25;76:17;85:1;
88:6;94:24;95:20
**downside (2)**
58:12;76:5
**dozens (1)**
90:9
**draft (2)**
52:18;75:9
**draftsperson (1)**
38:3
**draw (1)**
75:24
**drawings (1)**
75:15
**driving (1)**
67:15
**drove (1)**
41:7
**due (5)**
21:16;28:3,5;30:15;
32:5
**dueling (1)**
39:22;44:10,11,13,
17,18
**Dumas (32)**
90:1,3,4,12,19,24;
91:1,8,10,16,18,20;
92:6,8,13;93:10,14,16,
19,23;94:3,7,13,17,19,

20;95:5,8,12,19,24;
96:5
**dumbest (1)**
52:5
**DUNNE (31)**
82:3,3,9,13,25;83:6,
19,21;84:14,19;85:8,
11,14,16,25;86:6,8,10,
21,25;87:3,7,12,18,22;
88:12,19;89:5,7,17,25
**during (5)**
42:21;60:20;61:2;
62:14;82:14
**dwell (1)**
69:4

**E**

**earlier (3)**
7:14;52:19;74:19
**early (5)**
9:9;10:23;12:19;
56:18;95:6
**ears (1)**
70:24
**easy (4)**
30:21;83:17;93:12,
16
**economical (2)**
11:4;12:24
**effect (1)**
98:10
**effective (1)**
47:14
**efficient (6)**
11:4;12:24;49:17;
65:11;78:21;92:18
**efficiently (1)**
44:20
**effort (2)**
17:11;43:2
**efforts (1)**
80:5
**eggs (1)**
88:20
**eight (2)**
22:15;72:7
**eighteen (1)**
52:16
**either (12)**
19:3;23:7;24:10;
43:22;44:13,14;57:19;
65:13;66:1;84:3,21;
89:18
**elaborate (2)**
52:14;75:11
**eleven (2)**
55:20,22
**eligible (1)**
38:17
**Elliott (2)**
45:10;53:16
**else (16)**

33:17;46:11,12;55:8;
63:23,24;64:4;71:13;
78:13;79:19;96:7,10,
12;97:10,13;99:11
**email (6)**
36:6;40:25;59:9,20;
60:8;65:16
**emails (2)**
59:11,15
**embarrassing (1)**
29:4
**emergence (1)**
36:25
**emotional (9)**
20:9;25:10,11,12,13,
18;26:18,22;27:5
**emphatically (1)**
39:4
**employed (1)**
15:9
**employee (1)**
97:4
**employer (1)**
9:19
**employment (1)**
10:22
**enacted (1)**
50:4
**enactment (2)**
37:16,19
**encountered (1)**
26:22
**end (4)**
21:5;56:18;73:17;
76:2
**Energy (2)**
8:8;9:5
**enlarge (1)**
98:11
**enormous (2)**
28:25;92:25
**enough (2)**
45:13;74:23
**ensure (1)**
47:14
**enterprise (1)**
92:15
**entire (1)**
62:6
**entirely (2)**
50:9;51:12
**entirety (1)**
62:5
**entitled (4)**
11:24;20:25;33:15;
74:8
**entitlements (1)**
26:18
**entrenchment (1)**
59:7
**entry (1)**
84:10
**envisioned (1)**

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.com

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 106
of 118

52:14
**envisions (1)**
48:3
**equity (7)**
40:19;48:2;66:17;
68:25;70:8,8;88:16
**essence (1)**
11:23
**essentially (1)**
12:3
**establish (1)**
61:7
**estimate (3)**
20:22;24:20;29:21
**estimated (1)**
22:3
**estimating (1)**
20:4
**estimation (31)**
18:12,22;19:13,18;
20:18,23;21:5,8,9,17;
24:9,12;26:11,14;
27:22;28:6,12;30:4,13;
32:1,5;33:2;39:18;
43:10;56:7;72:4,8;
79:1;94:24;95:18,21
**et (2)**
38:7,7
**evaluation (1)**
47:22
**even (15)**
20:14;21:15,23,23,
24;22:21;31:4;35:21;
44:18;64:19;66:13;
74:3;79:1;85:1;94:22
**event (2)**
21:6,20;22:18;94:7
**events (3)**
29:13;35:22;36:20
**everybody (11)**
29:5;42:6;43:23;
45:21;46:17;49:5;72:5;
78:12;86:21;88:3;
94:22
**everyone (6)**
6:4;39:5;55:13;
69:11;77:14;79:19
**everyone's (2)**
72:1;92:17
**evident (1)**
11:9
**ex (1)**
98:25
**exactly (5)**
43:17,17;53:14;
74:22;83:21
**examining (1)**
81:15
**exclusive (2)**
61:3;63:3
**exclusivity (53)**
18:11,17,18;29:12;
37:5;39:22;42:21,25;

43:25;44:4;47:11;
49:14;52:1;54:2,6;
57:1;58:9;59:1,7;
60:10;61:7,22;64:5;
65:1,5,9,25;68:4,11;
69:9,10;70:6,18,25;
71:6,19;74:24;76:24;
80:1;81:18;83:8,23,25;
84:5,6;85:6,6;86:4;
87:4;89:2;90:20;94:22;
96:18
**excuse (7)**
8:6;20:10,16;23:2;
28:4,18;73:12
**existed (1)**
22:25
**existing (3)**
19:4;47:20;48:2
**expect (2)**
22:20;29:3
**expected (2)**
22:9;50:23
**expedite (1)**
45:19
**experience (1)**
55:24
**experienced (4)**
22:24;24:5;38:4;
66:22
**experts (2)**
78:16;92:16
**explain (1)**
65:19
**explained (1)**
16:5
**explaining (1)**
17:12
**explore (2)**
40:4,17
**extend (2)**
28:23;29:2
**extended (1)**
32:9
**extension (1)**
36:10
**extent (4)**
18:17;24:10;28:15;
88:8
**extreme (1)**
26:8
**eyes (1)**
82:19

**F**

**face (2)**
11:9;39:14
**facie (1)**
12:15
**fact (10)**
13:16;15:23;60:1;
65:12;66:6;73:4,18;
86:17;92:6;94:1

**facto (1)**
20:12
**factors (2)**
12:18;17:3
**factual (2)**
21:14;93:24
**failed (1)**
88:21
**fair (10)**
47:12,22;48:4,14;
57:13;91:23;92:18,22;
94:13;95:12
**fairest (1)**
39:8
**fairly (1)**
17:5
**faith (1)**
48:19
**fall (3)**
25:11,19;87:20
**familiar (1)**
23:13;27:1
**fan (1)**
56:4
**fancy (1)**
26:24
**far (3)**
8:10;37:13;52:14
**fashioned (2)**
60:15;63:21
**favor (2)**
8:23,24
**feasibility (1)**
20:5
**February (1)**
78:16
**Federal (3)**
8:8;9:5;95:1
**feel (1)**
55:25
**feeling (1)**
65:15
**fences (1)**
70:3
**FERC (3)**
8:15;16:1;88:5
**few (4)**
17:22;19:1;46:18;
70:22
**fiduciaries (1)**
60:23
**fifteen (1)**
56:22
**fifteen-page (1)**
89:22
**fifteenth (1)**
70:21
**fifty (1)**
66:4
**figure (4)**
24:13;76:15;83:12;
95:22
**figured (1)**

92:9
**figuring (1)**
45:4
**file (22)**
10:7;19:3;22:2;
52:21;54:18;63:12;
64:9;66:19;68:6;72:7;
73:6,7,7;74:20;86:16,
17;90:21;98:24;99:5,6,
6,8
**filed (18)**
10:25;11:1;14:7;
15:8;28:20;30:12;32:6;
37:4;47:5;50:8;54:7,8;
59:1;72:4;73:24;74:22;
77:23;98:15
**files (1)**
28:17
**filing (7)**
28:10,11,12;64:10;
69:8,9;76:10
**filings (1)**
31:3
**final (4)**
21:25;24:15;71:10;
92:13
**Finally (1)**
25:23
**finance (1)**
70:7
**financial (4)**
84:12;85:2;90:6;
94:17
**financiers (1)**
88:6
**financing (2)**
39:7;61:1
**find (4)**
13:8;29:4;87:3;
88:20
**finding (1)**
20:10
**findings (2)**
38:23,23
**fine (9)**
24:7;44:3;46:7;60:3,
5;81:23;83:16;91:17,
19
**finish (4)**
42:17;43:6;82:1;
96:25
**finished (2)**
67:10;69:6
**fire (7)**
18:10;20:22;22:25;
23:12,19,24;26:3
**fires (2)**
24:25;91:24
**firm (1)**
41:9
**first (11)**
7:4;19:16;23:7,14;
26:21;57:1;75:1;77:23;

90:19;91:10;96:13
**fits (1)**
26:23
**five (2)**
19:10;22:16
**fix (2)**
28:7;63:22
**fixed (1)**
21:1
**fixing (1)**
20:17
**flag (1)**
33:16
**flagpoles (1)**
75:15
**flagpole's (1)**
75:25
**floodgates (1)**
13:6
**fly-specking (1)**
75:6
**focused (1)**
72:1
**focusing (1)**
97:12
**follow (3)**
23:17;48:15;53:11
**followed (1)**
92:23
**following (2)**
18:9;51:5
**follow-up (1)**
38:7
**footer (1)**
19:19
**footnote (4)**
19:23;20:7,13;77:1
**force (1)**
67:15
**forced (1)**
19:8
**foresee (1)**
32:24
**Forget (1)**
30:11
**forgetting (1)**
30:16
**forgive (1)**
41:11
**forgot (1)**
72:18
**form (3)**
17:5,6;33:11
**formal (2)**
50:23;97:8
**formation (1)**
48:9
**former (1)**
9:19
**formulate (2)**
60:11,21
**forth (5)**
17:4;47:19,25;48:15;

Min-U-Script®

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 107
of 118

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(6) envisions - forth

78:3
**forum (3)**
　8:18;26:17;68:1
**forward (10)**
　9:22;12:13;14:10,25;
　23:23;49:14;58:15;
　67:16;70:18;84:14
**found (1)**
　25:19
**four (3)**
　32:11;44:10;78:16
**fourteen (2)**
　30:15;43:15
**fourteenth (1)**
　43:21
**frame (5)**
　9:12;30:1;47:25;
　48:15;72:14
**frames (1)**
　47:17
**FRANCISCO (2)**
　6:1;22:10
**frankly (1)**
　66:15
**freight (1)**
　48:21
**Friday (1)**
　69:20
**front (3)**
　16:9;56:15;60:14
**Full (9)**
　6:4;21:1;27:13;
　47:22;78:16;83:20;
　91:22,23;95:13
**fully (4)**
　47:12,18;48:5;96:5
**Fund (2)**
　38:17;88:22
**fundamental (1)**
　75:21;95:2
**fundamentally (1)**
　67:4
**funding (1)**
　20:10
**further (9)**
　19:15;22:2;43:11;
　45:1;59:6;76:9;88:14;
　91:12;96:9

**G**

**Garrison (1)**
　35:9
**Gate (1)**
　66:18
**gating (3)**
　95:2,2,3
**gave (2)**
　26:12;29:6
**Gelman (14)**
　7:25;8:1,11;9:8,10;
　10:5;11:23;12:3,11,11,
　16,22;16:5,5

**general (1)**
　59:22
**generally (2)**
　25:15;28:14
**gentlemen (2)**
　10:13;41:20
**gets (5)**
　23:8;38:6;73:7;83:3;
　88:8
**GHETALDI (21)**
　80:25;81:2,6,6,7,9,
　20,23;82:2;96:24;
　97:11,14,20,22;98:2,4,
　23;99:2,4,7,10
**given (6)**
　11:5;16:4;17:2;
　27:17;46:1;73:4
**giving (2)**
　12:12;29:7
**goal (1)**
　40:12
**goals (1)**
　38:25
**God (1)**
　99:8
**goes (12)**
　9:22;14:10;17:8;
　20:7;23:7,14,23;26:19;
　34:5;77:10;85:5;95:14
**Golden (1)**
　66:18
**Good (24)**
　6:4,5,6,14;10:19;
　29:14,16;33:21;39:4;
　46:23,24;48:19;64:24;
　66:9;71:3;72:1;77:10;
　80:14;81:7;82:3;90:2,
　3;92:12;98:20
**gorilla (1)**
　33:3
**governance (2)**
　38:24;39:10
**governing (1)**
　8:17
**governor (14)**
　39:4;48:3,12;51:11,
　12,15,20;58:10;65:13;
　66:22;70:15;72:8;77:8;
　78:24
**governor's (14)**
　39:21;44:25;46:21;
　49:10,13;50:1;56:12;
　65:17;68:8;79:8;88:5;
　89:15;92:10;97:6
**graft (1)**
　74:13
**grant (12)**
　6:19;7:21;23:17;
　24:8;44:17;51:21;
　62:15;76:4;79:22;84:6;
　95:16,17
**granted (6)**
　8:16;13:11;22:4;

64:19;73:10;85:6
**grants (1)**
　22:13
**great (2)**
　28:24;88:23
**greater (1)**
　86:2
**group (17)**
　23:4;41:3,9,10,12,16,
　23;42:3,7;50:8;53:18;
　74:7;76:6,10;79:11;
　88:13;98:16
**groups (4)**
　22:5;48:8;66:16,17
**group's (4)**
　36:25;42:20;65:9;
　74:12
**guess (6)**
　27:13;30:6;45:12;
　61:17;73:9;86:18
**guidance (4)**
　19:9;24:14;46:19;
　95:15
**guided (1)**
　25:24
**guiding (1)**
　61:5
**Gump (2)**
　35:14;53:15
**guys (1)**
　69:17

**H**

**hac (1)**
　47:4
**hand (1)**
　72:25
**hands (1)**
　58:11
**hang-up (1)**
　88:10
**happen (13)**
　9:21;22:3;23:20;
　24:1;38:8,18;56:3,7,
　14;58:5;64:20;83:14;
　88:3
**happening (2)**
　16:22;59:5
**happens (8)**
　20:24;22:8;59:3;
　62:16,17,23;63:2,11
**happy (8)**
　30:8;36:3;55:4,6;
　58:25;59:1,2;64:25
**hard (3)**
　53:11;57:2;60:15;
　68:14;73:21
**hardest (1)**
　93:3
**harm (1)**
　13:2
**harmed (1)**

10:1
**harms (1)**
　13:1
**hate (1)**
　59:11
**head (1)**
　30:6
**headache (1)**
　58:4
**heading (1)**
　54:13
**healthy (2)**
　51:16;56:13
**hear (19)**
　10:10,12;18:19;
　36:12;39:21;40:16;
　42:5,12;43:24;46:20;
　54:16,17;69:3;72:17;
　76:6,19;80:4;81:17,22
**heard (29)**
　8:14;11:2;13:19;
　18:15,16;22:12,13;
　42:11;44:9;46:8,21;
　49:2;55:15;62:14;68:7;
　71:14;72:16;79:20;
　81:11;82:18;85:11;
　90:1;96:4,7,12,24;
　97:10,11,18
**hearing (34)**
　10:24;22:8;29:1,3;
　32:13;34:2,7,8;43:20;
　45:2,4,8,20,20;46:2;
　55:8;57:1;60:9;63:15,
　18;64:15;69:9;72:23;
　75:1;76:9,24;79:6,7,
　25;80:10,24;89:20;
　96:19;98:25
**hearings (2)**
　58:5;64:12
**hears (1)**
　86:21
**help (11)**
　23:16;24:17;25:22;
　27:24;28:1;65:12;
　78:10;83:9;94:22;
　97:18;99:9
**helpful (2)**
　29:22;87:15
**helping (1)**
　37:20
**herd (1)**
　44:25
**here's (1)**
　25:8
**he-said (1)**
　57:12
**highly (3)**
　16:1;73:3,3
**HINKER (10)**
　46:24,24;47:2,2,3,4,
　7,9;48:23,24
**history (2)**
　14:4;15:5

**hit (1)**
　85:3
**hoc (24)**
　35:14;36:24;37:4;
　40:18;42:20;48:8;50:8,
　23;51:14;52:20;53:15,
　17;64:17;67:15;68:9;
　73:5;76:6,9;77:10;
　80:1;86:12,13;90:20;
　96:16
**HoldCo (1)**
　41:16
**holders (1)**
　40:19;48:2;91:21
**holding (1)**
　98:7
**honest (1)**
　74:15
**Honor (133)**
　6:21;7:6,10;10:17,
　20;11:8,19;13:21;15:5;
　16:11;17:14;29:14;
　30:6;31:7,19;32:3,14,
　22;33:2,16,20,22,25;
　34:2,4,13;35:1,11,13,
　17;36:1,4,11,13,19;
　37:3,12;38:10;39:12,
　16;40:5,15;42:18,24;
　43:5;44:1,8;45:7,22;
　46:5,24;47:4,9;49:1,8,
　21;50:7;51:7;52:4,7;
　53:4,12,24;54:19,20,
　21,25;55:11,19;56:23;
　57:13,21,24;58:13,15,
　22,24;59:5,8,9,23;60:7,
　12,18;62:2,17,25;
　63:16,20,24;64:22;
　66:2,8;67:4,14,22;69:3,
　4,23;70:13;71:4,25;
　72:13,21;73:18,21;
　76:16;77:4,6,9;80:7,9,
　18,25;81:23;82:3,10;
　83:1,11,21,24;84:21;
　85:25;86:21;87:4,13;
　89:8,25;90:4;96:6;
　97:15,20;98:23
**honoring (1)**
　84:25
**Honor's (8)**
　29:22;61:21;78:4;
　82:6;84:3;86:8;91:1;
　93:4
**hope (5)**
　13:10;27:23;51:17;
　71:24;98:17
**hopeful (3)**
　36:25;48:18;92:20
**hopefully (1)**
　51:25
**hoping (1)**
　97:14
**horrible (1)**
　73:16

Case: 19-30088　　Doc# 3188　　Filed: 07/25/19　　Entered: 07/25/19 07:54:00　　Page 108
of 118

**Hostetler (1)**
90:4
**hours (2)**
29:1;32:11,13
**house (1)**
6:4
**huge (1)**
13:5
**hundred-page (1)**
66:4
**hundreds (2)**
9:11;32:10
**hurt (1)**
71:16
**hurts (5)**
67:2,4;71:16,21,23

**I**

**identified (4)**
21:25;22:16,17,22
**ignore (1)**
73:6
**III (1)**
27:12
**illustrate (1)**
12:18
**imagine (2)**
45:3;68:14
**immediately (1)**
65:10
**impact (2)**
20:17;37:1
**impacts (1)**
85:2
**implement (1)**
45:3
**import (1)**
27:9
**importance (1)**
18:24
**important (8)**
13:16,16;16:2,8;
33:15;49:19;70:11;
85:4
**importantly (2)**
39:11;42:23
**impossibility (1)**
40:14
**impossible (1)**
28:24
**incidences (2)**
9:10;15:9
**inclined (2)**
29:2;76:3
**include (2)**
27:5;28:13
**including (9)**
20:5;29:22;32:1;
38:23;47:19;48:8,21;
66:23;84:25
**inconceivable (1)**
95:17

**inconsistent (1)**
74:14
**inconvenience (1)**
73:11
**incorporates (1)**
48:5
**incredibly (1)**
69:12
**incumbent (1)**
89:11
**independently (1)**
25:21
**indicated (1)**
18:6
**individual (3)**
8:2;20:24,24
**individuals (1)**
9:11
**inefficiencies (1)**
65:7
**inevitable (1)**
44:13
**inexorably (1)**
33:1
**infirmity (1)**
91:11
**inform (1)**
23:16
**information (1)**
33:16
**initiated (1)**
49:10
**initiating (1)**
66:21
**injury (7)**
20:11;24:21;25:7;
26:9,23;27:3;93:10
**instead (3)**
13:12;48:3;75:8
**insult (1)**
66:16
**insurance (1)**
12:20
**intact (1)**
61:3
**intellectually (1)**
74:15
**intend (1)**
25:6
**intent (1)**
45:9
**intents (1)**
91:3
**interacting (1)**
18:23
**interest (2)**
91:22;94:17
**interested (4)**
36:24;48:4;58:14;
81:14
**interesting (1)**
50:7
**interests (3)**

48:20;49:15;90:6
**interim (2)**
46:15;84:2
**internally (1)**
18:14
**interplay (1)**
18:10
**interpret (2)**
26:13;38:9
**interrelated (1)**
18:13
**interrupt (2)**
35:24;40:22
**intimidated (1)**
56:1
**into (11)**
21:2,11;25:13;26:5;
39:13;52:13;55:7;
57:12;60:17;86:22;
91:16
**inverse (1)**
93:6
**investigated (2)**
8:15;9:12
**investment (1)**
70:8
**invitation (2)**
66:18;68:8
**invite (3)**
65:17,20;75:18
**invited (2)**
92:5,6
**involve (1)**
20:8
**involved (9)**
16:1;20:10;22:11;
26:2;41:9;48:7,9;
59:17;88:9
**involvement (1)**
94:25
**involves (2)**
95:5,8
**isolation (1)**
37:2
**issue (18)**
8:22;11:7,10;13:6,
19;16:3;20:8,17;32:24;
77:4;81:17;82:11;86:1;
91:2;93:4;98:9,13,18
**issued (2)**
22:7;89:18
**issues (19)**
9:11;14:9;20:8;27:2;
28:19;29:21;33:1;
39:17;52:7;62:19;
75:19,20,21;77:18;
85:4;92:15;93:6;95:9;
97:15
**italicized (1)**
50:21
**item (6)**
6:10,22;18:4;19:21;
82:1;86:16

**items (1)**
76:1

**J**

**jeopardized (1)**
62:8
**job (2)**
94:23;98:18
**joined (1)**
76:14
**Jones (2)**
40:19;41:3
**journey (1)**
78:21
**judge (8)**
22:21;27:16;46:14;
69:16;85:5;87:11;88:8;
95:1
**judgment (6)**
22:24;23:16;24:3,13;
39:20;78:22
**judicial (5)**
12:1,25;27:10,15;
95:22
**Julian (4)**
33:21,22,22;34:13,
15,17;90:13;96:1
**JULY (3)**
6:1;71:17;88:21
**June (14)**
37:22;38:16,19;
39:16;40:14;43:4;
49:20;53:6;56:9;78:12;
82:19;83:9;87:19;88:3
**jurisdiction (1)**
61:8
**jurisprudence (1)**
27:9
**jury (7)**
11:7,9,15,18;13:24;
20:25;21:4
**justified (2)**
8:9;17:3

**K**

**Karotkin (41)**
6:5,6,9,21,24;7:2;
17:21;18:1,3,6;21:10;
36:6;41:22,25;42:2,8,
15;49:1,8,24;50:13,16,
18;51:1,3,5,7,10,19,24;
52:9,12,25;53:3,6;
59:2;64:10;90:15;94:2;
96:8,11
**Karotkin's (1)**
94:9
**keenly (1)**
36:24
**keep (1)**
7:17;25:25;41:20;
44:2;55:9;59:21;82:19

**Keeping (1)**
49:19
**keeps (1)**
43:3
**Kelly (2)**
90:13;94:10
**Kevin (1)**
29:14
**key (3)**
40:3;50:1;97:4
**kind (16)**
12:10,12,14;25:16;
30:24;53:10;54:13;
59:24;75:24;77:1;
80:17;82:10,15,21;
83:1;84:6
**kinds (5)**
11:3,5;23:15;26:4;
27:1
**knee (1)**
71:17
**knowing (1)**
22:24
**knows (4)**
10:21;11:22;44:7;
69:1
**Kornberg (57)**
34:24;35:1,3,5,8,8,
16,17,21;36:3,5,11,17,
19;37:7,19;38:2,9,12,
15,22;40:24;41:13,17;
42:13,18;43:7,13,19;
44:1,5,8;45:7,17,22;
46:5,7,22;47:9,24;
49:8;50:3,10;52:15;
53:16,24;54:17,20;
55:15;58:10;62:13;
65:16;68:7;70:25;79:6,
8;89:15
**Kornberg's (1)**
84:5
**Kramer (1)**
41:15

**L**

**lack (1)**
97:5
**laid (1)**
98:2
**landmark (1)**
37:19
**language (1)**
74:1
**last (6)**
12:4;41:1;45:19;
66:2;67:11;76:23
**late (3)**
29:7;54:10;76:10
**late-minute (1)**
31:3
**later (4)**
21:18;43:12;75:2;

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 109
of 118

81:17
**law (12)**
  25:15;27:6;28:25;
  41:9;68:25;73:22;
  75:22;91:3;93:13,17;
  98:5,12
**lawyer (2)**
  24:5;38:5
**lawyers (7)**
  26:2,24;28:1;46:13;
  70:23;84:24;93:22
**lead (4)**
  49:15,16,16;87:10
**leader (1)**
  87:9
**leaders (1)**
  87:10
**leadership (2)**
  34:3;90:14
**leads (1)**
  78:24
**learned (1)**
  15:16
**least (17)**
  12:4;19:7;20:4;
  39:19;41:8;43:9;44:5,
  25;45:24;55:18,19;
  68:15;69:5;74:4;78:19;
  85:7;86:12
**leave (4)**
  16:24;26:16;43:8;
  66:16
**led (1)**
  70:16
**left (4)**
  21:2;27:23;34:19;
  65:15
**legal (5)**
  8:16,16;13:25;21:13;
  93:21
**legislation (5)**
  18:23;37:15;69:11;
  72:2;87:15
**legislative (3)**
  87:9;88:14,17
**legislature (3)**
  70:14;87:14;88:21
**lend (1)**
  25:16
**lengthier (1)**
  10:4
**lengthy (1)**
  8:7
**less (1)**
  75:11
**letter (1)**
  69:10
**letting (2)**
  43:7;62:12
**level (1)**
  27:21
**leverage (1)**
  74:9

**Levin's (1)**
  41:15
**liabilities (1)**
  37:21
**liability (1)**
  20:22
**liberal (1)**
  28:22
**life (2)**
  27:17;70:17
**lifetime (1)**
  84:24
**lift (1)**
  90:20
**light (1)**
  88:24
**liked (1)**
  67:9
**likely (12)**
  22:12,19;23:1,2,2,
  18;66:12,14;78:2;83:7,
  24;84:5
**limited (6)**
  7:17;20:11;48:17,19;
  92:24;93:1
**limits (1)**
  24:19
**line (5)**
  19:23;20:3;23:18;
  52:19,19
**lines (1)**
  88:3
**linked (1)**
  33:1
**liquidate (1)**
  24:20
**liquidation (1)**
  20:17
**listen (9)**
  32:8;39:6;45:16;
  55:9;61:24;71:18;79:5,
  10;92:10
**listened (1)**
  56:25
**listening (1)**
  39:17
**literally (1)**
  9:11
**litigant (1)**
  73:11
**litigants (1)**
  69:17
**litigate (1)**
  13:3
**litigated (1)**
  73:3
**litigation (14)**
  8:7,10,12;9:9;10:23;
  12:20,21;13:8;20:12;
  26:2,25;49:17;90:14;
  95:25
**little (16)**
  10:11;13:2;15:4,20;

23:21;40:3;53:22;
  54:10;72:2,11;86:19;
  87:19,25;88:1;91:14,
  15
**living (2)**
  77:16,19
**locked (1)**
  25:13
**lone (1)**
  74:5
**long (10)**
  9:1;23:2;32:10;34:1;
  55:15;75:12;76:3;79:3,
  3;88:7
**longer (1)**
  8:10
**look (20)**
  19:20;20:2;30:25;
  31:1;36:5;53:11;56:25;
  58:13,25;59:8;64:3;
  67:14;72:1;75:4;76:3,
  6,22;77:1;80:21;84:9
**looked (2)**
  73:22,23
**looking (4)**
  28:2;46:19;50:14;
  92:24
**lose (4)**
  67:5,6;82:11,16
**losses (1)**
  91:24
**lost (8)**
  14:9;26:5,6,7,8;
  84:22;94:15,16
**lot (14)**
  15:19,19;16:22;
  23:14,15;32:15;33:1;
  55:24;64:12;82:18;
  84:24;87:7;92:14,14
**lots (5)**
  13:17;46:13,13;
  54:15;87:14
**loud (2)**
  69:3;76:19
**louder (1)**
  91:15
**lousy (1)**
  75:16
**love (1)**
  53:10
**loved (1)**
  26:8
**love-fest (1)**
  53:13
**lucky (1)**
  45:13

**M**

**maintain (1)**
  14:25
**major (3)**
  65:21;66:25;68:16

**makes (3)**
  10:3;49:12;79:4
**making (3)**
  85:20;86:19;96:1
**malicious (1)**
  26:23
**manage (2)**
  30:21;39:14
**management (1)**
  64:11
**mandatory (1)**
  98:7
**manner (1)**
  47:23
**many (8)**
  23:13;24:22;32:14,
  20;40:2;75:19,21;93:6
**March (1)**
  78:16
**marked (1)**
  50:11
**massive (1)**
  49:16
**matter (17)**
  9:22;12:15;14:9;
  21:16;22:12;25:4;
  26:21;27:20;55:9;
  59:22;60:6;64:4;67:11;
  72:17,24;75:22;91:3
**matters (10)**
  13:17;18:16;30:23;
  33:19;39:18;59:15;
  71:9;81:12;88:9;96:5
**Matthew (2)**
  46:24;47:2
**May (13)**
  15:9;20:18;24:12;
  25:14;27:6;33:17;
  47:21;48:1;60:17;66:6;
  74:6;88:16;98:20
**maybe (12)**
  16:23,25;17:1;22:21;
  24:6,6;46:9;64:15;
  66:14;88:16,16;89:3
**mean (52)**
  8:20;9:1,15,21;14:4;
  20:2;21:2;22:9,10;
  24:4;31:24;34:14;
  35:20;37:25;42:12,13;
  43:17,17,20,21;44:18;
  45:3;46:3;56:21;57:15,
  15;58:6;59:10;62:8;
  63:17;64:8;66:15;67:9;
  68:10,19;72:19,19,23;
  74:10,18,18;80:12,17,
  23;83:24;85:15;86:15;
  87:5;89:6;94:3;97:1;
  98:15
**means (6)**
  19:6;25:18;37:25;
  45:1;76:10;87:16
**meant (2)**
  19:25;74:21

**meantime (1)**
  77:8
**media (1)**
  59:16
**mediated (1)**
  71:2
**mediation (1)**
  87:6
**meet (2)**
  47:25;77:15
**meeting (1)**
  92:5
**members (1)**
  53:17
**mentioned (4)**
  14:1;47:9,24;65:16
**merit (1)**
  21:3
**merits (2)**
  15:24;89:19
**message (1)**
  7:8
**met (2)**
  62:21;91:25
**metaphor (1)**
  75:16
**mic (1)**
  91:14
**mic's (1)**
  42:8
**middle (1)**
  82:23
**midnight (2)**
  67:11;69:7
**might (14)**
  22:4,15;24:1;37:10,
  11;39:25;44:13;46:5;
  67:9,11,12;73:10;74:5;
  81:14
**Mike (2)**
  35:13;53:15
**Milbank (1)**
  82:4
**mind (11)**
  19:7;21:21;24:17;
  44:2;49:19;59:13,21;
  73:2;74:16;94:9,9
**minds (4)**
  94:8,9,10;95:10
**mine (3)**
  8:2;9:9,11
**minimal (1)**
  20:13
**minute (3)**
  28:17;31:2;40:23
**minutes (1)**
  17:22
**mislead (1)**
  89:14
**missed (1)**
  81:3
**misunderstood (1)**
  85:19

Min-U-Script®
Case: 19-30088   Doc# 3188   Filed: 07/25/19   Entered: 07/25/19 07:54:00   Page 110
of 118
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(9) law - misunderstood

**mixed (1)**
  41:11
**modifications (1)**
  50:22
**modify (1)**
  98:11
**moment (4)**
  41:6;8;66:17;75:23
**momentum (3)**
  69:15;72:2,14
**Monday (1)**
  69:19
**month (5)**
  55:18;57:24;61:17,
  17;67:5
**months (3)**
  55:20,22;65:24
**more (30)**
  7:20;8:11;10:5;11:4,
  4;12:24;16:23;19:9,16,
  17,24;20:21;23:5,21;
  24:13,14,16;27:23;
  30:22;31:22;44:21;
  48:1;52:14;61:17;67:1,
  5;71:5;74:21;78:21;
  95:1
**morning (20)**
  6:4,5,6,25;10:19;
  29:14,16;33:21;39:16;
  41:7;46:23,24;47:5;
  73:24;81:8;82:3;90:2,
  2,3,3
**most (13)**
  25:1;30:9;39:8;
  42:23;47:14;49:17;
  50:9;61:1;73:16;83:24;
  92:16,18;93:1
**motion (80)**
  6:19;15:13;16:21;
  17:8;18:17,19,21;
  19:12,13,13,18;20:9;
  21:8,17;22:16,17;
  23:22;28:6,12;29:11,
  21;30:4,13;31:25;32:1,
  5;34:21;35:19;36:9;
  37:5;42:20,25;44:4,16;
  45:13,14,20;47:10;
  52:6,21;54:5,17,18;
  55:1;59:1;60:9;61:25;
  62:15,18;64:19;65:9,
  25;69:9;72:4,8;73:5,6;
  74:11,12,18;75:5;76:7;
  79:10,11;80:1;81:18;
  83:25;84:4,4,4;86:3,13,
  13;87:4;89:19;90:20;
  96:16;97:16;98:15,16
**motions (13)**
  17:25;18:11,11,21;
  19:4,8,12;28:4;43:10;
  65:12;73:2;85:1;97:3
**movant (1)**
  35:14
**move (8)**

**mixed (1)**
  28:21;29:11;58:15;
  65:10;67:16;79:25;
  84:14;91:14
**moved (2)**
  79:14;87:19
**moving (2)**
  70:18;72:5
**much (21)**
  10:4,5;17:13;40:16;
  57:25;68:24;69:5;73:9;
  75:14,17;93:25
**multiple (3)**
  37:12;39:23;40:12
**multitude (1)**
  50:4
**multiyear (1)**
  16:2
**municipalities (1)**
  47:20
**must (4)**
  8:3;37:23;38:19;
  78:23
**Myers (1)**
  46:25

**N**

**name (4)**
  47:1;81:5,6;97:8
**names (1)**
  41:11
**narrow (4)**
  42:19;43:5;53:25;
  71:15
**narrowing (1)**
  78:19
**natural (1)**
  66:24
**necessarily (1)**
  27:9
**necessary (3)**
  18:24;21:19;68:23
**need (27)**
  9:12;19:24,24;20:20;
  21:11;22:3,6,18,23;
  23:16;24:3,17;27:24;
  42:5,5,12;45:20;46:12,
  16;56:4;75:25;76:1,6;
  81:4;88:2,14;95:15
**needed (1)**
  90:8
**needs (7)**
  24:14;31:22;42:10;
  55:19;56:14;72:5;
  91:12
**negotiate (1)**
  40:6
**neighborhoods (1)**
  90:9
**neutral (1)**
  39:1
**news (1)**
  72:1

**Newsom's (1)**
  51:11
**next (31)**
  18:3;22:8;34:2,20;
  42:13,17;45:8;46:16,
  18;48:13;51:2,6;53:3;
  62:16,17,23;63:2,11;
  64:11;65:18,24;69:19;
  73:8;80:24;82:13;83:8,
  11;84:8;87:19;88:3;
  99:13
**Nice (1)**
  35:1
**night (2)**
  41:1;67:11
**nine (1)**
  72:15
**Ninth (1)**
  6:17
**nobody (1)**
  73:12
**nonbankruptcy (1)**
  26:1
**None (1)**
  22:20
**nonexistent (1)**
  60:11
**non-personal-injury- (1)**
  26:15
**nor (1)**
  22:20
**normal (2)**
  32:6;38:8
**North (2)**
  34:3;90:14
**note (1)**
  50:7
**noted (3)**
  49:8;50:3,11
**noteholder (4)**
  35:14;36:24;42:20;
  53:15
**notes (1)**
  23:10;51:9,17
**nothing's (1)**
  31:15
**notice (1)**
  12:1
**notion (2)**
  24:7;44:13
**nowhere (1)**
  58:1
**number (6)**
  6:10;19:21;38:5;
  50:18;55:1;64:4
**numbers (2)**
  19:20;22:18

**O**

**object (4)**
  14:16;54:2,4,25
**objection (8)**

  6:13;7:19;13:3;
  14:13;54:3;60:4;70:6;
  74:24
**objections (1)**
  38:7
**objectives (2)**
  47:15;82:18
**observed (1)**
  37:12
**obvious (1)**
  18:9
**obviously (8)**
  13:6;18:8;44:14,23;
  62:2;68:12,25;80:9
**occasionally (1)**
  57:22
**occasions (1)**
  37:12
**occur (3)**
  38:16;78:14;83:7
**occurred (3)**
  24:25,25;35:23
**occurs (1)**
  40:9
**October (2)**
  21:17;28:18
**off (6)**
  16:12,13;17:16,19;
  25:3;30:5
**offer (1)**
  31:5
**offered (1)**
  33:9
**Office (13)**
  6:12;31:10;39:21;
  44:25;46:21;49:10;
  50:1;68:8;79:8;88:5;
  89:15;92:10;97:6
**officer (1)**
  27:15
**officers (2)**
  80:5;95:22
**officer's (1)**
  27:10
**official (5)**
  66:12,13;74:6;82:4;
  90:5
**off-the-record (2)**
  36:7;70:4
**old (4)**
  60:15;63:21;70:21,
  22
**O'Melveny (1)**
  46:25
**one (46)**
  8:23;10:12;11:8;
  13:25;17:21;19:17;
  21:7;28:21;29:6,17;
  32:15,21;34:16;38:5;
  41:5,5;42:19;44:5,6,8;
  46:12,14;52:1,19;
  53:17;55:1,24;57:24;
  61:9,11;63:19;64:15,

  15,16;66:19;73:7;
  74:13,17;75:23;77:23;
  82:14;85:21,24;88:13,
  19;95:20
**ones (1)**
  26:8
**one's (1)**
  14:21
**ongoing (1)**
  16:2
**only (21)**
  9:14;26:24;27:10;
  35:24;38:18;52:10;
  64:1;66:9;67:10,24;
  70:17;72:23;73:4;80:7;
  81:11,12;87:19;88:20;
  89:3;95:19,24
**oOo- (1)**
  6:2
**open (2)**
  44:17;47:23
**openers (1)**
  68:15
**opening (1)**
  95:14
**opinion (1)**
  89:23
**opponents (2)**
  58:8;75:20
**opportunity (1)**
  45:23
**opposed (8)**
  22:13;68:23;71:7;
  82:6,22;90:20,22;
  91:24
**opposes (1)**
  54:17
**opposing (1)**
  29:21;32:4;35:25
**opposition (5)**
  6:15;21:22;31:25;
  54:11;79:24
**oppositions (1)**
  75:5
**optimistic (1)**
  46:4
**option (4)**
  11:12,13;68:25;
  83:20
**oral (4)**
  36:9;55:9;79:22;
  89:18
**order (12)**
  6:3,19;17:5;22:7;
  26:4;34:20;45:11;50:6;
  55:17;84:12;87:5;99:5
**orderly (3)**
  49:12;52:25;53:4
**orders (1)**
  25:25
**ordinary (1)**
  45:17
**organization (1)**

Min-U-Script®

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 111
of 118

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(10) mixed - organization

11:25
**Orsini (27)**
29:14,14,17,19,25;
30:2,5,14;31:1,6,9,12,
16,18,22;32:3,12,14,
18,21,24;33:6,9,11,20,
24;34:3
**Orsini's (1)**
94:9
**others (5)**
41:14;45:24;59:16;
83:23;98:10
**otherwise (2)**
46:9;99:12
**ought (2)**
65:21;92:10
**out (26)**
6:19;18:25;25:19;
34:20;40:2;45:4,10;
49:9;50:6;62:8;65:15;
70:6;76:15;77:2;78:11,
18,23;83:12;84:6;85:5;
86:23;87:3;88:20;
90:21;95:22;98:2
**outcome (2)**
39:10,11
**outlines (1)**
68:20
**out-of-area (1)**
6:16
**out-of-order (2)**
35:2,3
**outset (1)**
36:23
**outside (1)**
33:12
**over (11)**
31:14;40:2;48:13;
49:9;50:5;58:5;64:12;
71:21;74:24;84:8;
92:25
**oversight (1)**
83:10
**owe (1)**
30:25
**own (8)**
8:19;9:14;15:24;
30:16;52:21;68:6;
74:15;94:18
**owned (1)**
26:6

**P**

**page (20)**
19:19,22;20:3,19;
23:22;50:8,12,13,15,
16,16,18,19;51:3,4,5,6,
7;52:17;67:10
**pages (3)**
32:10;34:5;41:21
**paid (3)**
12:24;21:1;95:13

**paper (1)**
74:18
**papers (9)**
11:9;22:2;30:7;
32:10,15;37:8;58:16;
59:2;97:24
**paragraph (3)**
19:23;59:8;60:8
**part (8)**
20:12;21:5;25:1,24;
26:11;33:11;56:15;
70:16
**parte (1)**
98:25
**participate (2)**
38:17;47:22
**particularly (7)**
11:5;24:8;25:2;26:1;
33:2;59:21;87:9
**parties (28)**
11:5;18:24;19:3,9;
24:16;28:23;40:3,6;
42:21;47:11;48:1,4,12,
18;49:15,25;56:20;
65:3;66:9;68:5,20;
72:15;76:13;83:22;
87:9;89:11;92:21;
98:21
**party (9)**
28:10,12;47:21,21;
52:20;64:18;66:19;
73:11;92:3
**party's (1)**
98:5
**pass (1)**
81:22
**path (1)**
59:6
**Paul (1)**
35:8
**pay (2)**
31:9;75:14
**payers (2)**
39:1,11
**payment (1)**
91:23
**pending (4)**
10:24;13:8;43:10;
44:16
**people (22)**
13:17;21:24;22:15;
24:6;29:9;45:23;49:4;
58:14;59:13;62:6;64:1,
4;65:8;66:7,21,23;
68:8;74:2;75:5;76:10;
84:25;86:22
**people's (1)**
85:4
**perception (2)**
85:18,19
**perceptions (1)**
85:7
**perfect (2)**

77:17,18
**perhaps (11)**
14:24;19:16;22:16;
23:5;24:16;44:5;65:14;
68:9;76:6;78:7;84:20
**period (3)**
29:12;64:7;82:15
**periods (2)**
61:3;63:3
**permissible (3)**
20:4;26:10;27:22
**permit (2)**
39:12,22
**perpetual (2)**
59:7;68:4
**perpetuate (1)**
68:11
**personal (9)**
20:11;24:21;25:7;
26:9,18;27:3;73:11;
86:18;93:10
**personally (2)**
44:24;88:2
**persons (1)**
22:14
**perspective (10)**
30:9;49:12;62:3,5;
63:21;66:8;70:16;80:8;
82:17;92:16
**persuade (3)**
13:22;46:9;74:23
**persuaded (2)**
24:8,9
**persuading (1)**
14:24
**persuasive (1)**
16:8
**persuasively (1)**
71:5
**pertaining (1)**
97:3
**Peter (1)**
10:20
**PG&E (9)**
7:25;8:8;15:15,17;
37:21,23;38:17;41:16;
81:12
**PG&E's (3)**
7:19;48:2;90:12
**phase (6)**
21:12,12,13,14;94:2,
5
**phases (2)**
21:9,23
**philosophical (1)**
24:16
**phone (6)**
16:12,14;17:16;
42:13;80:23;91:18
**phony (1)**
73:12
**phrase (5)**
25:10,13,19;95:2,3

**phrases (1)**
24:4
**physical (2)**
25:17;26:8
**pick (3)**
24:22;34:14,16
**piece (1)**
46:16
**pile (1)**
32:10
**piles (1)**
41:21
**Pitre (2)**
90:14;94:10
**pivots (1)**
84:21
**place (7)**
22:19;33:18;55:18;
67:25;83:23;84:5;
89:20
**placed (1)**
75:16
**plaintiffs (3)**
23:15;26:4;33:25
**plan (61)**
20:5,12;36:25;37:7;
38:6,20;39:1,7,8,14;
40:7,10;42:22;43:4;
47:15;49:20;50:19,24;
52:18;55:19;56:1;57:8;
60:25;61:2,3;63:12;
64:9,9,10;65:7;66:10,
19;68:6,12,19;69:2;
70:7,18;73:7;75:9;
77:17,23;78:2,17,18;
83:2,4,7;84:11,15;
86:16,17;88:15,22,23;
90:21,22;91:2,21,25;
92:2
**planned (1)**
72:19
**plans (18)**
39:23;44:10,13,17,
18;49:14;56:16,22;
64:2;65:14;66:7;68:19,
20,20,24;84:7;88:15;
92:1
**played (1)**
70:6
**player (1)**
65:21;66:1
**players (5)**
45:18;66:25;68:16,
25;78:18
**pleading (2)**
50:8;51:15
**pleadings (1)**
19:20
**please (3)**
7:8;16:12,16
**pleased (1)**
40:15
**plight (1)**

16:18
**podium (2)**
7:8;54:9
**point (30)**
12:7;13:18;15:14,23;
20:19;24:7;28:15;
32:21;42:17;43:8;49:1;
50:9;56:6;61:14;64:11,
21,24;65:23;70:11;
71:5;77:18;78:4;83:6;
90:19;91:6,10,13,20;
92:13;96:25
**pointed (1)**
90:21
**points (1)**
90:17
**politely (1)**
64:19
**popping (1)**
70:25
**popular (1)**
95:3
**Portland (1)**
20:15
**position (7)**
31:7;33:12;75:6;
78:1;82:6,15;87:14
**positions (1)**
54:15
**positive (1)**
37:1
**possession (1)**
33:13
**possibility (1)**
86:2
**possible (1)**
43:4
**possibly (1)**
21:23
**posted (2)**
6:8;7:13
**potential (1)**
47:19
**potentially (8)**
32:25;40:4;44:10;
52:22;63:24;64:2;
77:17;82:16
**power (2)**
27:16,17
**powers (1)**
25:11
**practitioners (1)**
66:23
**preaching (2)**
61:10;71:2
**precarious (1)**
31:6
**precise (1)**
51:20
**predicate (1)**
14:7
**predict (2)**
22:20,20

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 112
of 118

**prefer (1)**
76:8

**preference (5)**
22:14;81:11;97:16;
98:5,7

**preferences (1)**
23:19

**pre-judge (1)**
12:6

**prejudice (5)**
43:1;45:10;48:18;
52:2;53:7

**prejudiced (1)**
62:9

**preliminary (1)**
86:1

**preparatory (1)**
96:19

**prepared (3)**
36:15;86:6;98:23

**pre-petition (1)**
10:21

**present (3)**
9:23,24;74:2;78:17,
17

**presented (3)**
20:8;70:15;77:16

**preserve (2)**
14:16,21

**President (1)**
27:12

**presses (1)**
71:16

**pressures (1)**
18:23

**presumably (3)**
27:19;43:24;45:1

**presume (2)**
12:6;43:16

**pre-trial (1)**
26:4

**previously (3)**
8:3;14:1;33:2

**price (2)**
75:13;76:1

**prima (1)**
12:15

**principal (1)**
45:18

**principally (1)**
82:9

**principles (1)**
92:22

**prior (5)**
30:4,16,19;44:22;
51:18

**privacy (1)**
10:22

**pro (1)**
47:4

**probably (9)**
34:22;50:19;67:5;
72:12,12;84:8;89:16;

91:16;92:10

**problem (5)**
47:8;56:10;71:20;
79:1;90:15

**problems (5)**
29:6;42:16;78:25;
79:1,2

**procedural (1)**
15:5;46:15;60:5;
86:12;97:7

**procedure (7)**
30:16,17;33:18;40:8;
62:24;76:13;98:6

**procedures (2)**
23:15;32:6

**proceed (1)**
49:17;53:8

**proceeding (2)**
50:5;97:8

**proceedings (4)**
39:23;40:13;93:2;
99:15

**process (51)**
11:3;13:3,13;14:12;
18:22;21:8,16;26:11;
27:22;30:23;39:7,14;
43:2;45:5,19;47:12,13,
15,18,25;48:4,4,10,11,
13,15,20;49:12;51:16,
19,20;52:25;53:4;
56:13,14;58:15;60:12,
22;61:2;65:10;66:24;
67:16;70:16,18;78:21;
83:3;89:12;92:22;
94:24;95:18,21

**processes (3)**
44:11;84:17;88:25

**procurement (1)**
38:25

**professionals (1)**
77:11

**profit (2)**
92:25;94:18

**profoundly (2)**
35:23;36:21

**progress (4)**
43:23;57:7;79:2;
80:15

**promised (1)**
89:19

**promotes (1)**
43:3

**prompt (1)**
89:19

**proof (3)**
10:7;11:1,11

**proper (2)**
25:14;28:8

**property (4)**
26:6,6,7,15

**proponent (1)**
84:11

**proponents (1)**

58:8

**proposal (13)**
21:16;36:25;42:22;
49:9;50:20,21;52:10,
23;59:3,3;71:1;78:19;
88:13

**proposals (7)**
40:7;47:19,20,23;
56:21;60:25;78:20

**propose (8)**
45:6;61:2;66:19;
68:12;69:2;83:13;
92:20;93:12

**proposed (5)**
20:6;21:22;91:25;
92:2,2

**proposing (2)**
50:10;57:25

**proposition (1)**
23:25

**Prosser (1)**
25:15

**protocol (14)**
40:6;42:22;45:14,14;
55:18;65:4,14;71:7;
83:12,16,23;84:5;
85:16;92:20

**protocols (1)**
92:21

**provide (3)**
47:22;48:14;92:21

**psychological (1)**
85:2

**Public (5)**
35:9;37:20;59:12;
84:25;92:9

**published (1)**
89:22

**PUC (8)**
35:18;36:23;38:19,
22;39:5,15;40:10;48:9

**PUC's (1)**
49:13

**pulling (1)**
31:12

**pup (1)**
77:22

**purchasers (1)**
47:21

**pure (2)**
21:13;26:15

**purposes (8)**
20:5;25:8;26:23;
27:5;43:9;65:8;85:24;
91:4

**pursuant (2)**
60:7,23

**pursue (4)**
8:17;13:25;37:7;
55:17

**push (1)**
31:22

**put (13)**

16:9;20:20;23:11,18;
30:7,8;31:20;69:10;
77:3;80:13;87:15;
88:19;94:21

**putting (4)**
31:6;49:4;71:6;
77:12

## Q

**qualifies (1)**
13:7

**quantification (1)**
72:6

**queue (3)**
16:9;44:4;73:5

**quicker (1)**
87:20

**quickly (2)**
45:21;53:20

**quite (1)**
27:1

**quo (1)**
15:1

**quote (2)**
24:22;51:15

**quoted (1)**
56:19

**quoting (1)**
50:20

## R

**race (1)**
94:18

**raise (2)**
14:9;97:13

**raised (3)**
75:20;98:21;99:4

**raising (1)**
91:1

**rate (2)**
39:1,11

**rather (6)**
18:10;25:17;42:12;
61:16;81:22;87:11

**reach (1)**
24:6

**reached (2)**
40:2;49:9

**read (20)**
19:7;21:9;29:5,6;
38:2;41:1,2;46:15;
58:15;59:2;60:17;66:4;
67:17,18,19;69:4;
70:13;72:8;73:25;
76:22

**reading (5)**
25:24;46:14;51:9,17;
67:10

**ready (2)**
16:24;37:9

**real (2)**

53:6;76:4

**realistic (1)**
21:18

**realize (3)**
24:2;76:7;85:23

**really (19)**
16:19;17:3;24:15;
26:12;27:18;39:13;
44:8;46:19;55:16;58:1;
64:18;71:9;72:1;73:9,
13,13;74:9;76:19;
94:23

**reason (5)**
6:7;27:7,8;43:15;
90:8;22;94:21;95:13

**reasonable (2)**
72:6;95:10

**reasoned (2)**
7:24;8:7

**reasons (5)**
17:6;44:9;55:1,2;
79:7

**recall (2)**
17:21;26:3

**received (1)**
40:25

**recent (1)**
37:3,15;51:11

**recently (3)**
26:21;35:22;50:4

**recite (1)**
17:6

**recommendations (1)**
96:1

**record (12)**
17:7,7;36:8;53:14;
59:13;60:17;76:20;
77:5,7;81:5;96:16;97:1

**refer (2)**
37:15;59:21

**reference (1)**
41:3

**referenced (1)**
12:10

**references (1)**
20:1

**referred (1)**
53:16

**regard (1)**
35:25

**regarded (1)**
82:23

**regret (1)**
87:18

**regular (1)**
34:8

**Regulatory (1)**
8:9

**reject (1)**
93:16

**rejected (1)**
70:15

**relate (4)**

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 113
of 118

18:17;19:11,11,16
**related (3)**
  15:5;25:23;38:20
**relates (2)**
  19:17;98:4
**relating (1)**
  38:24
**relevant (5)**
  14:6;15:12;24:24;
  58:25;60:18
**relief (28)**
  7:12,18,21;8:4,9;
  9:22;12:13,16,19;13:7,
  11;17:3,24;18:10,16,
  21;19:12;22:4;23:8,17;
  24:9;28:4;43:10;78:25;
  81:3;95:16,17;98:15
**relief-from-the-stay (1)**
  39:18
**rely (1)**
  13:13
**remain (2)**
  17:10;61:3
**remarks (1)**
  51:11
**remember (5)**
  41:4,6,8;74:22,23
**remembered (1)**
  41:4
**reminded (1)**
  18:22
**reminder (1)**
  90:8
**rented (1)**
  26:7
**reorganization (2)**
  12:2;56:16
**reorganized (1)**
  38:24
**repeat (4)**
  14:3;27:24;78:5;
  88:1
**rephrase (2)**
  28:5;44:23
**reply (9)**
  28:16;29:24;30:8;
  41:1;57:6;58:16;69:4;
  77:3;98:24
**replying (1)**
  29:10
**report (6)**
  43:23;45:8;79:7;
  80:11,12,14
**reported (1)**
  20:15
**represent (1)**
  65:20
**representatives (1)**
  65:17
**represented (2)**
  40:19;41:3
**represents (1)**
  42:2

**request (23)**
  8:3;35:2,3,6,18,25;
  40:21;42:18;43:5;
  44:15,15;54:1;62:13;
  65:1;76:4;79:23;81:18;
  82:7,22;89:16;96:6;
  97:6;98:25
**requested (2)**
  16:7;22:7
**requesting (4)**
  7:18;33:25;35:18;
  60:9
**requests (1)**
  28:22
**require (2)**
  39:18;88:17
**required (1)**
  38:23
**requirements (1)**
  39:1
**researched (1)**
  25:21
**resembles (1)**
  15:25
**reserve (1)**
  73:18
**resisted (1)**
  18:13
**resolution (11)**
  12:22;16:24;20:11;
  24:7;38:16;39:9,15,18;
  40:14;43:14;93:2
**resolve (6)**
  11:3;23:24;37:23;
  92:15,18;93:4
**resolved (3)**
  6:11;8:23;16:25
**resources (1)**
  12:25
**respect (9)**
  6:10,22;12:5;29:23;
  60:25;61:21;70:17;
  88:12;98:5
**respected (1)**
  23:20
**respectfully (1)**
  54:1
**respond (8)**
  10:12;13:15;19:3;
  31:5;35:21;36:15;
  45:23;59:24
**responded (1)**
  98:17
**respondents (1)**
  30:24
**responding (1)**
  29:10
**responds (1)**
  10:2
**response (12)**
  7:19;19:2;22:4;
  28:13,13;30:3,15;
  31:24,25;32:1,5;98:25

**responses (8)**
  14:8;19:8;28:3,5,8,
  11,12;64:5
**responsibility (1)**
  95:22
**responsive (3)**
  19:24;32:1;37:8
**rest (1)**
  77:2
**result (6)**
  12:21;43:2;47:16;
  59:6;71:2;91:23
**retaining (1)**
  83:8
**retention (1)**
  6:11
**review (1)**
  29:3
**revisit (2)**
  12:5;16:6
**revolving (1)**
  97:15
**rhetoric (1)**
  24:3
**rhetorical (1)**
  21:14
**Rifkind (1)**
  35:9
**right (95)**
  7:3;8:13,13,19,24,
  25;9:4,6,15,18,19,20;
  10:2,3,8,10,18;11:14,
  14,20;13:25;14:5,17,
  23;15:14,14,18,21;
  17:15;22:18;27:23;
  28:16;30:2,6;34:9,9,18,
  18;35:4,16;36:2;37:6,
  18;38:21;39:24;41:18;
  43:17;44:4;49:23;
  51:23;53:8;57:23;
  59:25;60:13;61:11;
  62:4;63:15;66:1;68:22;
  69:2,2;72:20,23;77:25;
  79:15;80:21,23;81:17,
  17;82:8,12;83:5,14,17,
  21;85:7,13,13;86:24;
  87:2,17;88:12,18;89:5;
  90:11;94:6,12;96:14,
  15;97:10;98:1,5,7,12;
  99:11
**rights (9)**
  14:9,21;15:3;17:9;
  20:24;50:4;52:2;62:6;
  85:4
**rise (1)**
  26:17
**rising (1)**
  41:25
**risk (3)**
  13:4;75:8;76:11
**risky (1)**
  88:1
**road (1)**

58:1
**roadblock (1)**
  78:11
**Robert (1)**
  33:22
**role (4)**
  44:24;82:23;88:7;
  89:21
**rookie (1)**
  77:21
**room (9)**
  10:14,14;45:1;49:5;
  70:22;79:21;80:24;
  81:2;86:22
**rooms (1)**
  78:16
**route (1)**
  44:10
**rude (1)**
  62:11
**rule (7)**
  14:20;16:14,20;67:7,
  9;74:11;83:24
**rules (2)**
  32:7;66:23
**ruling (19)**
  14:20;17:12;23:13;
  44:16;61:25;67:12;
  79:22,22;85:1,12,17,
  20,21;86:1,1,3,19,20;
  89:19
**run (1)**
  80:9
**running (2)**
  84:6,16
**rushed (1)**
  92:19

**S**

**safety (1)**
  39:10
**salient (1)**
  50:9
**same (15)**
  15:9;23:4;25:23;
  37:9;49:4;50:15,16,17,
  19;55:10;64:16;73:8,
  14;76:7;80:10
**SAN (3)**
  6:1;20:16;22:10
**satisfactory (1)**
  16:23
**satisfied (1)**
  61:20
**saw (1)**
  40:25;41:7;57:6;
  98:24
**saying (18)**
  17:8;32:8,9;49:5;
  50:20;54:17;69:16;
  73:15;75:24;76:3,5;
  79:3;80:9;86:2,18;

87:19;89:7,11
**schedule (6)**
  7:9;28:2;43:15;45:2;
  78:15;88:4
**scheduled (1)**
  76:9
**scheduling (1)**
  60:6
**screen (1)**
  42:2
**sea (1)**
  90:6
**seated (1)**
  10:14
**second (6)**
  17:21;21:7;23:4;
  44:6;91:13,20
**Section (2)**
  27:14;37:22
**securitizement (1)**
  70:9
**seek (1)**
  33:6
**seeking (1)**
  29:20
**seem (1)**
  50:15
**seems (4)**
  73:13;74:3;87:25,25
**sees (1)**
  13:10
**segue (1)**
  81:3
**selection (1)**
  66:24
**senior (2)**
  80:1;96:16
**sense (11)**
  17:6;21:25;22:6;
  30:9;49:12;66:1;74:5;
  79:4;80:13,14;83:1
**sent (1)**
  36:6
**sentence (2)**
  51:18;67:18
**separate (2)**
  20:25;28:9
**separation (1)**
  25:11
**September (2)**
  12:4,6
**sequence (2)**
  30:22;95:16
**sequential (1)**
  65:12
**series (1)**
  74:1
**set (18)**
  11:1;12:20;15:11;
  17:4;30:13;34:2;44:21;
  45:20;47:25;48:15;
  58:5;63:15;79:6,13,14,
  16;95:18;99:2

Min-U-Script®     Case: 19-30088   Doc# 3188   eScribers, LLC | (973) 406-2250   Filed: 07/25/19   Entered: 07/25/19 07:54:00   Page 114   **(13) related - set**
operations@escribers.net | www.escribers.net
of 118

**setting (2)**
97:2,5
**settle (1)**
11:6;15:15,16;69:20
**settlement (1)**
24:6
**settling (1)**
69:17
**seven (2)**
30:18,20
**several (2)**
35:22;36:20
**shall (1)**
98:11
**share (2)**
49:13;82:18
**shareholder (3)**
41:12,22;42:7
**shareholders (1)**
76:23
**sheet (10)**
37:8;52:15,15,17,17;
74:21,21;75:9,12;
77:12
**sheets (1)**
68:20
**she-said (1)**
57:12
**short (5)**
28:24;45:10;62:8;
71:20;90:17
**shorthand (1)**
96:17
**show (1)**
64:1
**showing (1)**
12:14
**shown (1)**
62:14
**shows (1)**
70:2
**shut (1)**
69:24
**shy (1)**
96:1
**sic (2)**
30:12;51:13
**sick (1)**
58:4
**side (4)**
53:21;70:23;84:21;
85:21
**sides (1)**
16:5
**sign (1)**
7:1
**signed (1)**
72:8
**significant (6)**
35:22;36:20;73:3;
84:11;85:2;92:16
**silent (1)**
54:16

**similar (3)**
7:20;8:2;98:16
**simplifying (1)**
78:20
**simply (4)**
14:24;17:9;91:22;
94:7
**single (1)**
9:10
**sit (6)**
10:16,16;36:13;
69:24,25;76:17
**sitting (3)**
39:16;81:2;87:18
**situation (6)**
15:25,25;71:8;83:19,
22;84:7
**six (1)**
89:23
**slight (1)**
74:3
**slightly (2)**
22:5,15
**slow (1)**
88:6
**so-called (1)**
33:3
**solved (1)**
90:15
**solves (1)**
79:1
**solving (1)**
78:25
**somebody (3)**
24:13;73:10;85:3
**somehow (2)**
14:8;21:5
**someone (6)**
10:14;46:21;61:6;
71:3;78:13;98:17
**sometimes (4)**
30:21;69:20;86:25;
87:1
**somewhat (2)**
7:17;24:2
**sophisticated (1)**
66:22
**sorry (11)**
7:7;16:11;19:21;
23:10;25:25;28:4;32:6;
47:1;51:3;55:13;62:25
**sort (3)**
26:4;46:15;82:22
**sorting (1)**
78:18
**space (2)**
11:24;12:4
**span (1)**
9:12
**spare (1)**
72:15
**speak (3)**
36:3;43:7;79:21

**SPEAKER (4)**
30:18;34:22;41:18,
19
**speaking (1)**
58:17
**special (2)**
12:12;34:8
**specialized (5)**
8:10,15,17;9:3;12:21
**specific (7)**
22:1;23:22;32:2;
44:21;67:1;91:2,25
**specifically (9)**
19:16,18;20:2,21;
22:8;37:15;45:6;61:6;
88:12
**specificity (3)**
75:17,18;84:20
**specter (1)**
70:18
**speculation (1)**
24:3
**spend (2)**
53:22;83:11;84:8
**spent (1)**
77:11
**spirit (1)**
32:22
**spitting (1)**
91:16
**split (1)**
27:20
**spoken (2)**
58:21;77:14
**sponsor (1)**
66:10
**sponsorship (1)**
61:1
**staff (3)**
28:24;59:14,16
**stages (3)**
9:9;10:24;12:19
**stakeholders (4)**
47:20;50:24;60:24;
83:4
**Stamer (123)**
35:13,13,15,25;36:1,
3,13,14,15,17;46:9,20;
48:25;49:6;53:9,11,14,
15,20;54:5,8,12,19,21,
23,25;55:4,6,11,13,22,
23;56:11,23,25;57:4,6,
10,13,15,18,20,23;
58:13,19,21,24;59:19,
23;60:1,4,7,14,17,20;
61:12,14,16;62:2,10,
15,17,21,25;63:2,5,7,9,
12,14,16,20;64:14,22,
24;65:3;66:2,6;67:4,8,
14,20,22;68:1,3,13;
69:3,8,15,21,23;70:1,5,
13,20;71:4,12,21,23,
25;72:10,13,21;73:18,

21;74:5;76:16,19,22;
77:1,6,9,14,22;78:1,6;
79:18;80:7,16,18,20;
83:16;85:11
**Stamer's (5)**
41:1;52:1;79:24;
80:3;83:25
**stand (1)**
83:15
**standard (2)**
61:21;62:22
**standing (2)**
82:25;87:13
**start (5)**
34:6;53:24;75:17;
96:9;98:19
**started (1)**
75:4
**state (14)**
8:18,18,20;13:8;
14:10;18:8;23:6;25:24;
26:2;27:6;48:22;81:4;
85:20;98:12
**stated (3)**
8:3;17:7;39:4
**state-law (1)**
26:23
**statement (8)**
19:18,22;20:3;21:3;
56:19;63:13,18;64:16
**statements (3)**
53:25;56:4;84:16
**States (2)**
6:12;51:14
**state's (2)**
38:25;47:15
**stating (2)**
17:7;27:8
**status (4)**
15:1;18:7;32:22;
97:5
**statute (11)**
24:22,23;25:4,6,19;
37:22,24;38:9,19,23;
50:3
**statutory (1)**
60:24
**stay (28)**
7:12,19,21;8:9;9:22;
12:13,16,19;13:7,12;
17:3,10,24;18:10,16,
21;19:12;22:4;23:8,17;
24:9;28:4;43:10;78:25;
81:3;95:16,17;98:15
**stays (2)**
83:23;84:5
**step (2)**
35:18;36:20
**stick (4)**
6:7;23:9;81:16;
96:23
**sticking (1)**
89:2

21;74:5;76:16,19,22;
77:1,6,9,14,22;78:1,6;
79:18;80:7,16,18,20;
83:16;85:11
**still (10)**
12:22;13:22;15:8,10;
17:23;24:16;28:3;90:2,
3;93:21
**stop (1)**
70:21
**streamlining (1)**
78:20
**stress (1)**
94:7
**strikes (1)**
85:20
**strings (1)**
37:22
**strokes (1)**
78:8
**strong (1)**
98:6
**structure (2)**
38:24;39:8
**struggling (1)**
21:21
**stuff (1)**
41:2
**subject (7)**
17:10;20:18;54:16;
57:11;80:8;81:21;
88:24
**subjects (1)**
19:10
**submission (1)**
40:7
**submit (2)**
17:5;51:24
**submitted (2)**
60:22;72:18
**subpoenaed (1)**
33:14
**subrogation (15)**
18:11;19:12;22:2,17;
37:4;40:18;64:17;65:9;
68:9,15;73:5;74:12;
79:11;86:13;98:16
**subrogation's (1)**
76:6
**subset (1)**
94:25
**substance (1)**
59:11
**substantive (4)**
54:3;59:15;98:8,12
**success (2)**
45:2;50:1
**successful (5)**
39:15;42:23;44:3,15;
61:18
**successfully (1)**
18:25
**succinct (1)**
19:5
**suffered (1)**
26:8
**sufficient (1)**

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 115
of 118

(14) setting - sufficient

57:7
**suggest (5)**
31:13;40:3,5;81:13;
97:23
**suggested (1)**
49:21
**suggesting (2)**
9:2;81:14
**suggestion (3)**
82:14;95:25;98:20
**suggests (1)**
7:25
**suit (1)**
14:7
**Sunday (1)**
69:20
**superior (11)**
8:20;9:2;10:24;
16:25;22:9,10,11,13,
21;23:12;94:24
**support (4)**
40:17;48:3;53:25;
91:21
**supportive (2)**
60:2;83:22
**suppose (3)**
20:21;62:13,13
**supposed (4)**
27:19;56:7;63:23;
98:21
**Supreme (1)**
93:5
**sure (26)**
22:6;24:5;28:9,18;
32:20;36:14,16,18;
40:24;42:6;45:24;49:3;
54:12;57:10;58:15;
62:10,10;63:17;71:12;
74:15;77:3;78:6;83:18;
88:10;95:12;97:12
**surprised (1)**
82:22
**suspect (1)**
65:22
**sustainable (1)**
39:8
**swinging (1)**
70:2
**sympathetic (1)**
16:17
**system (3)**
78:11;88:2,10

**T**

**table (6)**
13:18;25:3;65:18,20,
22;66:25
**talk (10)**
17:22;33:17;42:8;
58:14;65:6,18;70:7,8;
83:17;84:15
**talked (2)**

46:17;94:22
**talking (9)**
41:12;42:15;58:8;
70:21;71:6;80:2;85:3,
4;93:25
**tax-exempt (1)**
88:22
**TCC (14)**
18:15;19:13;22:1,16;
23:22,24;33:9,23,25;
34:3;68:9;90:5,19;
98:16
**TCC's (1)**
23:5
**tee (1)**
65:14
**teed (1)**
45:15
**telescoped (1)**
82:10
**telling (3)**
6:16;68:11;73:9
**ten (1)**
45:23
**tend (2)**
27:6,6
**tentative (2)**
79:22,22
**tenure (1)**
27:17
**term (17)**
25:14;37:8;52:15,15,
16,17;54:5;68:20;
74:20,21;75:9,11;
77:12;80:2;95:2;96:17;
97:5
**terminate (22)**
37:5;42:20;47:10;
52:21;59:1;60:10;61:7,
22;64:5,7,9;65:1,9,12,
25;69:10;70:25;71:19;
74:23;83:25;86:4;
96:17
**terminated (2)**
65:5;70:19
**terminating (3)**
39:22;49:14;71:6
**termination (3)**
10:22;54:6;63:3
**terms (6)**
7:20;75:12;80:14;
82:17;84:9;88:10
**terribly (1)**
56:1
**terrific (1)**
37:11
**thankful (1)**
79:3
**theory (1)**
27:22
**there'd (1)**
64:15
**therefore (4)**

27:14;56:5;79:24;
85:21
**there'll (5)**
16:23;24:6;44:5;
74:4;85:16
**thinking (1)**
73:1
**third (2)**
27:24;92:13
**third- (1)**
47:20
**third-party (1)**
88:6
**thirteen (1)**
22:14
**thirteenth (1)**
43:21
**thirty (1)**
77:20
**thirty- (1)**
73:23
**thirty-five (1)**
52:17
**thirty-six (1)**
32:13
**thirty-three (1)**
50:7
**thirty-two (1)**
67:10
**thoroughly (1)**
73:2
**though (1)**
84:23
**thought (6)**
16:13;42:7;58:23;
69:17;73:23;98:19
**thoughts (3)**
18:6;19:14,15
**thousands (1)**
34:5
**threatening (1)**
58:6
**three (6)**
19:8;44:10;68:16,19;
81:10;90:17
**throughout (1)**
58:16
**throw (1)**
58:10
**ticket (1)**
76:1
**ticking (1)**
88:11
**till (1)**
88:2
**time- (1)**
56:7
**timeline (8)**
22:3;40:9;42:23;
48:10;60:12,22;61:3;
95:16
**timing (2)**
85:24;92:14

**tipped (1)**
72:25
**today (20)**
7:9;12:9;14:21;17:7;
18:16;19:2;34:19;
49:21;50:10;55:9,22;
58:4;61:13,25;62:14;
64:9;67:7;81:10;87:13;
99:2
**today's (3)**
15:13;43:9;74:18
**together (8)**
18:14;32:25;34:23;
48:13,19;65:6;71:7;
77:12
**told (5)**
15:23;28:10;70:24;
73:13,14
**tomorrow (2)**
64:10;73:7
**took (3)**
72:7,17;77:2
**top (1)**
30:5
**tort (13)**
24:21;25:7;27:4;
37:8;40:18;84:11;90:5,
16;91:13,20,22;92:18;
93:3
**Torts (2)**
25:15;93:10
**total (1)**
92:15
**touch (1)**
41:13
**touched (1)**
98:14
**toward (1)**
12:2
**towards (4)**
57:7;59:6;61:5;72:5
**track (3)**
25:25;41:21;43:3
**traditional (1)**
30:22;74:21
**train (1)**
88:6
**transparent (6)**
47:12,23;48:5,14;
59:12;61:4
**treatment (2)**
12:12;95:4
**tremendous (1)**
77:11
**trial (24)**
11:1;12:20;13:24;
14:17;15:10;20:25;
21:15,17;22:24;23:1,8,
9,11,14,14,18,23;
24:10;27:13;61:24;
69:19,19;81:10,12
**trials (2)**
56:7;78:16

**tribunal (3)**
8:10,15;12:21
**tried (3)**
23:3;51:10;79:21
**true (3)**
8:5;64:16;89:20
**truly (1)**
72:1
**trust (4)**
20:11;90:24;91:3,4
**Trustee (1)**
6:12
**try (11)**
19:5,5;25:6;44:22;
49:24;55:17;83:12;
86:22,23;89:11,12
**trying (12)**
28:22;41:2;42:8;
44:25;46:11;57:9;
64:18;78:10;84:8;
87:10;93:22,22
**Tubbs (6)**
20:22;23:7,11,18,23;
25:2
**tune (1)**
75:3
**Turn (5)**
16:12;39:12;55:7;
57:12;89:23
**turned (2)**
16:13;17:18
**twenty- (1)**
32:10
**twenty-five (2)**
53:17;59:3
**twenty-four (1)**
29:1
**twist (1)**
49:11
**two (53)**
18:21;19:12,17,20;
20:14,15;22:5,5,14;
27:8;28:25;34:11;
42:20,22;43:1,16,17,
18,19;45:4,9,24;47:11;
48:13;51:21,21;53:3,7;
54:17;55:8,10,15,16,
16;57:24;58:5,9;61:16;
63:18;65:18,24;66:12;
73:8,14;74:6;76:16;
82:13;83:11;84:9;89:4,
8,9,10
**two- (1)**
72:18
**two-month (1)**
87:24
**two-page (1)**
73:24
**two-week (7)**
49:21;51:13;54:1;
60:9,20;82:14;87:25
**type (3)**
25:18;50:21;55:17

Case: 19-30088   Doc# 3188   Filed: 07/25/19   Entered: 07/25/19 07:54:00   Page 116
of 118

**typical (3)**
37:10,11,13

**U**

**ultimate (1)**
85:23
**ultimately (1)**
11:6
**Um-hum (8)**
6:25;8:21;9:25;
14:11;15:7;33:5;62:20;
65:2
**undefined (1)**
47:24
**under (15)**
17:3;26:14;27:13;
29:7;37:22;47:13;50:3;
55:10;67:11;68:25;
72:24;89:22;93:16;
98:5,12
**underestimate (1)**
69:12
**underlined (2)**
50:11;74:1
**Understood (11)**
54:12;56:11;57:23;
59:23;60:7;77:9,9;
80:16,18,18;86:5
**undeveloped (1)**
26:5
**undocumented (1)**
58:1
**undoubted (1)**
14:15
**unfortunate (1)**
68:24
**unfortunately (1)**
16:18
**unhappy (1)**
52:2
**unhelpful (1)**
44:19
**UNIDENTIFIED (4)**
30:18;34:22;41:18,
19
**uniform (1)**
98:6
**unintended (1)**
86:20
**unique (1)**
37:14
**United (1)**
6:12
**universe (1)**
62:6
**unless (4)**
11:13;29:12;34:19;
97:10
**unlike (1)**
12:16
**unlikely (2)**
47:25;61:18

**unlimited (2)**
39:25;40:1
**unliquidated (3)**
24:21;25:1,7
**unprecedented (2)**
58:1;71:8
**unpunished (1)**
77:10
**un-risky (1)**
88:1
**unsecured (2)**
82:4;96:17
**unsuccessful (1)**
44:3
**unusual (3)**
35:5,17,18
**up (34)**
7:5,7;16:9;17:23;
21:5;30:11;31:12;
32:21,25;33:24;34:23;
41:11;44:16;45:11,15;
53:4,9;56:22;58:11;
59:2;62:14;64:1;65:14;
69:24;73:2,12;74:11;
76:20;77:6;83:15;85:1;
88:3;96:3;97:7
**upon (4)**
13:13;72:14,14;
98:14
**up-or-down (1)**
13:18
**upstairs (1)**
37:18
**urged (1)**
40:6
**urging (1)**
78:24
**USC (5)**
24:19;26:13;27:9,14;
98:10
**use (5)**
12:25;48:18;50:22;
92:17;93:2
**used (1)**
7:21
**using (3)**
37:23;74:9;80:2
**usual (1)**
88:24
**Utilities (3)**
35:10;37:20;92:9
**utility (1)**
9:17

**V**

**Valero (8)**
8:11;9:8,10;10:5;
11:23;12:3,17;16:5
**valuable (1)**
69:12
**valuation (1)**
90:16

**value (5)**
49:16;78:17,18;
85:19;92:16
**variation (1)**
26:12
**variety (1)**
20:8
**various (3)**
19:3;48:7;91:24
**versus (1)**
8:22
**veteran (1)**
38:5
**veterans (1)**
70:22
**viable (1)**
57:7
**victims (4)**
18:10;23:19;48:21;
95:13
**view (22)**
6:18;11:24;28:16;
37:1;43:13;45:24;
49:13,13;56:12,13,14;
57:18,20,20,24;64:12,
21;71:5;77:15;86:18;
92:24;93:1
**viewed (1)**
38:15
**views (1)**
61:21
**violent (2)**
55:13;83:15
**virtually (1)**
11:5
**vitally (1)**
49:19
**voting (1)**
20:5

**W**

**Wait (1)**
54:4
**waiting (2)**
34:20;99:5
**waiving (1)**
14:22
**wants (6)**
66:18;71:13;79:20;
85:12;90:5;97:10
**warrant (1)**
12:11
**waste (4)**
61:16,16,17;63:24
**wasting (1)**
56:4
**watchers (1)**
72:25
**waved (1)**
41:7
**way (27)**
8:23;23:23;25:21;

26:19;34:4;47:14;
49:17;53:8;60:15;
63:22,22;64:6,12;67:1;
68:23;74:19;75:23;
76:3,5;78:12;79:3,19;
84:3,21;88:4;92:18;
94:13
**ways (2)**
27:8;89:13
**wedded (1)**
83:2
**WEDNESDAY (2)**
6:1;31:2
**week (6)**
34:2;46:3;65:24;
72:19;73:8;99:13
**weekend (4)**
31:14,17;40:2;49:9
**weeks (39)**
42:20,22;43:1,16,17,
18,19;45:4,9,24;46:16;
47:11;48:13;51:21,21;
53:3,7;54:17;55:8,10,
15,16,16;57:24;58:5,9;
61:16;63:18;65:19;
73:8,14;82:13;83:12;
84:9;89:4,8,9,10,23
**weigh (2)**
45:24;54:18
**Weiss (1)**
35:8
**welcome (2)**
67:21,22
**welcomed (1)**
75:11
**welcomes (1)**
52:20
**welcoming (1)**
77:19
**weren't (2)**
58:23;65:16
**Wharton (1)**
35:9
**what's (13)**
17:22;20:1;21:22;
28:19;30:3,17;62:4;
63:10;71:20;81:16;
85:19;94:8;98:3
**whenever (1)**
74:20
**whereas (2)**
9:11;91:24
**Whereupon (1)**
99:15
**wherewithal (2)**
68:5;84:12
**whichever (1)**
34:4;69:11
**whole (3)**
71:19;72:7;89:9
**who's (1)**
21:9
**wildfire (3)**

20:4;37:21;38:17
**wildfire-related (1)**
39:9
**willful (2)**
26:23;27:4
**willing (6)**
52:21;56:20,20;
58:14;63:20;66:9
**wins (1)**
94:18
**wish (1)**
47:21
**withdrawal (1)**
6:18
**withdrawn (1)**
6:13
**within (2)**
47:16;83:7
**without (6)**
6:16;17:8;19:11;
68:5;81:13;94:25
**Witkin (1)**
25:15
**wolf (1)**
74:5
**word (5)**
24:23,23;37:23;
59:12;85:5
**words (5)**
21:2;25:12;44:22;
50:22;65:15
**wordy (1)**
62:25
**work (10)**
14:13;26:24;31:14;
39:25;48:19;63:23;
65:6;83:12;84:2;86:23
**worked (1)**
31:17;57:1
**workers (2)**
39:10;48:21
**working (5)**
24:17;42:9;48:12;
65:4;72:10
**works (4)**
14:14;63:22;84:3;
89:12
**world (5)**
45:19;52:5;73:17;
92:24;93:1
**worst (1)**
73:15
**worth (1)**
70:11
**worthy (1)**
98:13
**write (1)**
89:22
**writing (1)**
46:13
**written (3)**
21:11;46:14;71:8
**wrong (3)**

Min-U-Script®

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 117
of 118

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(16) typical - wrong

30:16;66:20;80:2
**wrongful (4)**
10:22;24:21;25:7;
26:18
**wrongful-death (1)**
26:16
**wrongfully (1)**
7:25
**wrote (1)**
61:11

## Y

**year (2)**
9:12;15:10
**years (2)**
52:16;77:20
**yesterday (5)**
29:1;36:7;50:8;
73:23,24
**yields (1)**
39:7

## Z

**zero (1)**
86:2

## 1

**1 (5)**
6:22;21:12,13,23;
94:2
**10 (1)**
19:23
**1054 (1)**
70:16
**11 (5)**
36:22;37:24;38:20;
48:7;50:6
**11:29 (1)**
99:15
**11:30 (3)**
96:21,23;97:2
**1121 (3)**
61:6;63:22;65:4
**11th (2)**
31:20;32:2
**12 (1)**
23:22
**13th (9)**
79:13,15,16,17;80:3;
86:9,10;89:21;96:18
**14 (1)**
97:19
**14th (5)**
30:4,13;32:25;44:22;
79:10
**157 (4)**
26:13;27:9,14;92:23
**157b2B (1)**
24:19

## 2

**2 (7)**
6:11;21:12,14,23;
59:8;60:8;74:19
**20 (1)**
49:20
**2001 (1)**
74:19
**2016 (1)**
15:9
**2019 (1)**
6:1
**2020 (7)**
37:23;38:19;39:16;
40:14;43:4;82:20;83:9
**2075 (1)**
98:10
**21 (1)**
30:23
**22 (5)**
19:19,19,22;20:3,19
**24 (1)**
6:1
**24th (1)**
71:17
**28 (5)**
24:19;26:13;27:8,13;
98:10
**28-14-7 (1)**
30:22
**29th (1)**
87:19

## 3

**3 (1)**
94:5
**30 (4)**
37:23;38:17,19;53:6
**3091 (2)**
19:21,22
**30th (6)**
49:20;56:10;78:12;
82:19;83:9;88:3
**31st (4)**
34:8,13;46:3,3
**3291 (1)**
37:22
**33 (1)**
19:22
**36a (1)**
98:6

## 4

**4 (3)**
19:23;52:19;77:1
**450 (1)**
66:18

## 5

**5 (1)**
50:18
**502c (1)**
26:14
**523a6 (3)**
26:24;27:2,4

## 6

**6 (3)**
20:3;51:3,8

## 7

**7 (1)**
30:23
**7th (8)**
21:18;28:7,19;29:8,
19;30:7;31:13;34:9

## 8

**800-pound (1)**
33:3

## 9

**9 (1)**
50:12
**9:30 (3)**
80:3;96:18,20
**9:31 (1)**
6:1
**9th (21)**
34:10,11,11;46:3,6;
52:3,6;67:2,6,7;71:17,
18;76:12;79:7;80:4;
83:14,15;86:3;96:19;
97:2;99:14

Min-U-Script®

Case: 19-30088    Doc# 3188    Filed: 07/25/19    Entered: 07/25/19 07:54:00    Page 118
of 118

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(17) wrongful - 9th