1  Jennifer Machlin Cecil (SBN#294806)
   Jcecil@winston.com
2  WINSTON & STRAWN LLP
3  101 California Street, 35th Floor
   San Francisco, CA 94111-5840
4  Telephone: (415) 591-1000
   Facsimile: (415) 591-1400
5
6  David Neier (*admitted pro hac vice*)
   dneier@winston.com
7  WINSTON & STRAWN LLP
   200 Park Avenue, 40th Floor
8  New York, NY 10166-4193
   Telephone: (212) 294-6700
9  Facsimile: (212) 294-4700
10
   *Attorneys for First Solar, Inc.*
11 *and Willow Springs Solar 3, LLC*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors. | Bankruptcy Case No. 19 - 30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**MOTION AND MEMORANDUM OF FIRST SOLAR, INC., FOR ENTRY OF AN ORDER CONFIRMING SAFE HARBOR PROTECTION UNDER 11 U.S.C. §§ 362(b)(6) AND 556** |
| ☐ Affects PG&E Corporation<br><br>☒ Affects Pacific Gas and Electric Company<br><br>☐ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | **Hearing Date:**     **August 28, 2019**<br>**Time:**     **9:30 a.m. (P.T.)**<br><br>Courtroom:    Hon. Dennis Montali<br>                 450 Golden Gate A venue<br>                 16th Floor, Courtroom 17<br>                 San Francisco, CA 94102<br><br>**Objections Due:**   August 21, 2019, 4:00 (P.T.) |

# **TABLE OF CONTENTS**

JURISDICTION .................................................................................................................... 5
PRELIMINARY STATEMENT ........................................................................................... 6
FACTS ................................................................................................................................... 6
LEGAL ARGUMENT ........................................................................................................... 7
    A.   The Forward Contract Test .................................................................................. 9
    B.   The PPA is a Forward Contract ........................................................................ 11
    C.   First Solar and PG&E are both Forward Contract Merchants ............................ 13
NOTICE ............................................................................................................................... 15
CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*BCP Liquidating, LLC v. Bridgeline Gas Mktg., LLC (In re Borden Chems. & Plastics Operating L.P.)*,
336 B.R. 214 (Bankr. D. Del. 2006) ...................................................................................13

*Calpine Energy Servs., L.P. v. Reliant Energy Elec. Sols., L.L.C. (In re Calpine Corp.)*,
No. 08-125l(BRL), 2009 WL 1578282 (Bankr. S.D.N.Y. May 7, 2009) .........................8

*Commodity Futures Trading Comm'n v. My Big Coin Pay, Inc.*,
334 F. Supp. 3d 492 (D. Mass. 2018) ..................................................................................9

*Conroy v. Andeck Res. '81 Year-End Ltd.*,
137 Ill. App. 3d 375, 484 N.E.2d 525 (1985) .....................................................................9

*Harris v. County of Orange*,
682 F.3d 1126 (9th Cir. 2012) ...........................................................................................12

*In re FirstEnergy Sols. Corp.*,
596 B.R. 631 (Bankr. N.D. Ohio 2019) ............................................................................11

*In re Mirant Corp.*,
303 B.R. 319 (Bankr. N.D. Tex. 2003) ...............................................................................8

*In re Mirant Corp.*
310 B.R. 548 (Bankr. N.D. Tex. 2004) ......................................................................14, 15

*In re Nat'l Gas Distributors, LLC*,
556 F.3d 247 (4th Cir. 2009) .............................................................................................10

*Lightfoot v. MXEnergy Elec., Inc. (In re MBS Mgmt. Servs., Inc.)*,
432 B.R. 570 (Bankr. E.D. La. 2010) ...............................................................................11

*McKittrick v. Gavilon, LLC (In re Cascade Grain Prod., LLC)*,
465 B.R. 570 (Bankr. D. Or. 2011) ...................................................................................12

*Puget Sound Energy, Inc. v. Pac. Gas and Elec. Co. (In re Pac. Gas and Elec. Co.)*,
271 B.R. 626 (N.D. Cal. 2002) ....................................................................................10, 11

**Statutes**

7 U.S.C. § 1a(9) (Commodity Exchange Act) ...........................................................................9

11 U.S.C. § 101(25), (26) ................................................................................................. *passim*

11 U.S.C. § 105 ............................................................................................................................14

11 U.S.C. § 362(b)(6) ................................................................................................................ *passim*

11 U.S.C. § 363 ............................................................................................................................14

11 U.S.C. § 364 ............................................................................................................................14

11 U.S.C. § 365 .........................................................................................................................6, 7

11 U.S.C. § 365(e)(l) .....................................................................................................................8

11 U.S.C. § 556 .................................................................................................................. *passim*

11 U.S.C. §§ 761(1), (8) ...........................................................................................................9, 11

28 U.S.C. §§ 157 ...........................................................................................................................5

28 U.S.C. § 157(b) ........................................................................................................................5

28 U.S.C. § 1334 ...........................................................................................................................5

28 U.S.C. § 1408 ...........................................................................................................................5

28 U.S.C. § 1409 ...........................................................................................................................5

Securities Exchange Act of 1934 § 13 ........................................................................................14

Securities Exchange Act of 1934 § 15(d) ...................................................................................14

**Other Authorities**

Fed. R. Bankr. P. Rule 4001(a)(1) ............................................................................................5, 6

Fed. R. Bankr. P. Rule 6003 and 6004 ........................................................................................14

Fed. R. Evid. Rule 201 ................................................................................................................12

First Solar, Inc. ("First Solar") by and through its undersigned counsel, submits this motion and memorandum of points and authorities (the "Safe Harbor Motion") for entry of an order confirming that (1) the Power Purchase Agreement (the "PPA") between Willow Springs Solar 3, LLC ("Willow Springs 3"), a wholly-owned subsidiary of First Solar, on the one hand, and Pacific Gas and Electric Company ("PG&E," and together with PG&E Corporation, the "Debtors"), on the other hand, is subject to the safe harbor provisions codified in sections 362(b)(6) and 556 of title 11 of the United States Code (the "Bankruptcy Code") such that (2) the automatic stay does not apply to bar Willow Springs 3 from exercising its contractual rights under the PPA, including its contractual right to cause the liquidation, termination or acceleration of the PPA or to offset or net out any termination value, payment amount or other transfer obligation arising under or in connection with the PPA.

First Solar notes that this motion is substantially similar to the *Motion and Memorandum of Enel Green Power North America for Entry of an Order Confirming Safe Harbor Protection under 11 U.S.C. §§ 362(b)(6) and 556.* [Docket No. 481] and the *Motion and Memorandum of Esvolta, LP for Entry of an Order Confirming Safe Harbor Protection Under* 11 *U.S.C. §§ 362(b)(6) and 556* [Docket No. 977], which motions requested substantially similar relief. In support of this motion, First Solar respectfully represents the following:

**JURISDICTION**

1. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,* General Order 24 (N.D. Cal.), and 5011-l(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules").

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for this motion are 11 U.S.C. §§ 362(b)(6) and 556, Rule 4001(a)(l) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Bankruptcy Local Rule 4001-1.

**PRELIMINARY STATEMENT**

3.  First Solar requests an order confirming that the safe harbor protections under sections 362(b)(6) and 556 of the Bankruptcy Code apply to allow Willow Springs 3 to enforce its contractual rights under the PPA, including its right to terminate the PPA.

4.  Pursuant to the PPA, Willow Springs 3 has contracted to construct a 75 MW solar facility in Kern County, California (the "Facility") that will provide power to PG&E. Pursuant to the PPA, Willow Springs 3 posted development security to PG&E in the form of letters of credit.

5.  Pursuant to the PPA, Willow Springs 3 has expended substantial amounts and will be required to expend millions of dollars in additional development costs over the next several months to comply with its obligations under the PPA.

6.  However, as a result of PG&E's recent Chapter 11 filing, PG&E may at any time decide that it no longer wants the Facility and may exercise its right under section 365 of the Bankruptcy Code to reject the PPA. As a result, First Solar has no choice but to request that the Court confirm Willow Spring's contractual right under the Bankruptcy Code safe harbor protections set forth in sections 362(b)(6) and 556 of the Bankruptcy Code to terminate the PPA.

**FACTS**

7.  First Solar is a Delaware corporation headquartered in Tempe, Arizona and is a leading global provider of comprehensive photovoltaic ("PV") solar systems which use its advanced module and system technology. First Solar's subsidiary, Willow Springs 3, is a Delaware limited liability company headquartered in San Francisco, California.

8.  PG&E and Willow Springs 3 are parties to the PPA. The PPA generally provides that Willow Springs 3 will construct a 75 megawatt ("MW") PV facility to sell power to PG&E with an

expected delivery date of January 31, 2021 and an outside delivery date of July 31, 2021.[1]

9. In addition, First Solar and Willow Springs 3 have invested in unrecoverable development expenses for site control and land payments, interconnection studies, permit applications (and related consulting costs including engineering, environmental, entitlements and architecture), plus travel and legal fees. In addition to its investments to date, and the project development security described above, First Solar and Willow Springs 3 face significant near-term cash requirements to continue the development of the Facility in order to maintain the schedule required to ensure that Willow Springs 3 does not trigger an "Event of Default" under the PPA.

10. First Solar and Willow Springs 3 thus now find themselves in a difficult dilemma. First Solar and Willow Springs 3 must expend material sums and devote substantial time and resources to fulfill Willow Springs 3's obligations under the PPA. If Willow Springs 3 fails to comply with the PPA, PG&E can declare an Event of Default and draw on the letters of credit that were posted by Willow Springs 3. But First Solar and Willow Springs 3 cannot continue to expend such funds, time and resources so long as PG&E does not assume the PPA. Unfortunately, given the current stage of the bankruptcy proceedings, PG&E has indicated that it is not currently in a position to assume the PPA pursuant to section 365 of the Bankruptcy Code, and needs more time before making a decision one way or the other.

11. If the Court concludes that the safe harbor provisions apply, Willow Springs 3 will have the option of terminating the PPA due to a default by PG&E under Section 5.1(a)(iv), which provides that the filing of a bankruptcy petition by PG&E is an Event of Default.

## **LEGAL ARGUMENT**

12. The Court should confirm that the PPA is protected by the safe harbor provisions of

---

[1] The PPA contains confidential and commercially sensitive information, and, accordingly, First Solar has filed concurrently herewith a motion requesting permission to file the PPA under seal.

sections 362(b)(6) and 556 of the Bankruptcy Code, and that the automatic stay does not apply to bar Willow Springs 3 from exercising its contractual rights in the PPA, including, without limitation, the contractual right to cause the termination of the PPA.

13. Section 362(b) of the Bankruptcy Code provides certain exceptions to the automatic stay provisions contained in section 362(a). Section 362(b)(6) permits the exercise of certain rights by a forward contract merchant, notwithstanding the existence of the automatic stay, upon the exercise of a contractual right to terminate a contract under section 556 of the Bankruptcy Code. Section 556 of the Bankruptcy Code provides, in relevant part:

> The contractual right of a . . . forward contract merchant to cause the liquidation, termination, or acceleration of a . . . forward contract because of a condition of the kind specified in section 365(e)(1) of this title . . . shall not be stayed, avoided or otherwise limited by operation of any provision of this title or by the order of a court in any proceeding under this title.

11 U.S.C. § 556

14. Section 556 of the Bankruptcy Code further defines the contractual rights that may be enforced under this safe harbor exception to the automatic stay, specifically allowing a forward contract merchant to enforce its contractual right to "liquidate, terminate, or accelerate" a forward contract with the debtor according to the provisions in the contract that allow termination, liquidation, or acceleration based on (i) the counterparty becoming insolvent or (ii) the counterparty filing for bankruptcy under Chapter 11. *See* 11 U.S.C. §§ 556, 365(e)(l); *see also Calpine Energy Servs., L.P. v. Reliant Energy Elec. Sols., L.L.C. (In re Calpine Corp.),* No. 08-125l(BRL), 2009 WL 1578282, at *7 (Bankr. S.D.N.Y. May 7, 2009) (holding that section 556, by its terms, limits its reach to those clauses that trigger termination upon the occurrence of a condition specified in bankruptcy section 365(e)(l)).

15. If a party can demonstrate that the Bankruptcy Code's safe harbor protections apply, a party may terminate a contract pursuant to an *ipso facto* clause. *See, e.g., In re Mirant Corp.,* 303 B.R.

319, 327 (Bankr. N.D. Tex. 2003) (holding that even if a contract contains a valid *ipso facto* clause, the automatic stay still applies to prevent unilateral termination of the contract, and the counterparty must seek court's approval to modify the stay before the *ipso facto* clause may be invoked). A party seeking to establish its qualification for the forward contract safe harbor is required to show that (i) the contract satisfies the requirements of a "forward contract," and (ii) a party to the contract falls under the definition of a "forward contract merchant" under the Bankruptcy Code. *See Clear Peak Energy, Inc. v.* S. *Cal. Edison Co. (In re Clear Peak Energy, Inc.),* 488 B.R. 647, 661 (Bankr. D. Ariz. 2013).

### A.     The Forward Contract Test

16.     Section 101 (25) of the Bankruptcy Code defines a "forward contract" as a contract for the purchase, sale, or transfer of a commodity (as defined in Bankruptcy Code section 761(8)) or any similar good, service, article, right, or interest, which is presently or in the future becomes the subject of dealing in the forward contract trade, with a maturity date more than two days after the date the contract is entered into, including a repurchase or reverse repurchase transaction, consignment, lease, swap, hedge transaction, deposit, loan, option or any other similar agreement. *See* 11 U.S.C. § 101(25).

17.     Section 761(8) of the Bankruptcy Code adopts the definition of "commodity" found in the Commodity Exchange Act ("CEA"). *See* 11 U.S.C. §§ 761(1), (8). Section 1a(9) of the CEA defines "commodity" to include "all services, rights, and interests ... in which contracts for future delivery are presently or in the future dealt in." *See* 7 U.S.C. § 1a(9). The term "commodity" is expansive, and the 1974 amendments to the CEA further enlarged the term to cover non-traditional goods and services. *See Conroy v. Andeck Res. '81 Year-End Ltd.,* 137 Ill. App. 3d 375, 380, 484 N.E.2d 525, 530 (1985); *see also Commodity Futures Trading Comm'n v. My Big Coin Pay, Inc.,* 334 F. Supp. 3d 492, 497 (D. Mass. 2018) (noting that Congress sought an expansive definition of commodity in the CEA).

18. In affirming a ruling of this Court, the District Court has held that electricity is a commodity. *Puget Sound Energy, Inc. v. Pac. Gas and Elec. Co.* (*In re Pac. Gas and Elec. Co.*), 271 B.R. 626, 639 (N.D. Cal. 2002) (("Electricity is a commodity which, like other goods, can be manufactured, transported and sold.") (*quoting Baldwin-Lima-Hamilton Corp. v. Superior Court*, 208 Cal.App.2d 803, 819, 25 Cal.Rptr. 798 (Cal.Ct. App. 1962)).

19. Relatively few cases in the Ninth Circuit have addressed the issue of whether a contract qualifies as a forward contract for the purposes of the safe harbor provisions. In the primary decision on point within the Ninth Circuit, the Bankruptcy Court for the District of Arizona determined that a renewable power purchase and sales agreement between a utility and a chapter 11 debtor qualified as a forward contract. *See Clear Peak,* 488 B.R. at 663. In *Clear Peak,* the Bankruptcy Court adopted a test from *In re Nat'l Gas Distributors, LLC,* 556 F.3d 247 (4th Cir. 2009), and looked at four factors in its determination, namely whether: (i) the subject of the contract was a commodity, with substantially all costs of performance attributable to the costs of the underlying commodity; (ii) the contract had a maturity date more than two days after the contracting date; (iii) the quantity and time elements were fixed at the time of contracting; and (iv) the contract had a relationship to the financial markets. *Clear Peak* at 657. Applying these four factors, the court in *Clear Peak* found that the utility's power purchase agreement qualified as a forward contract for purpose of the safe harbor provisions. The court disposed of the first three factors easily, finding that the subject of the agreement, namely, electricity, was a commodity, the timeline manifested a maturity date more than two days after the execution date, and the contract specified a minimum amount of power to be supplied over a specific period of time.

20. On the fourth factor, the *Clear Peak* court found that a substantial relationship to the financial market existed where the principal purpose of the power purchase agreement was to hedge the price the utility was required to pay over the long term. *Id.*

### B. The PPA is a Forward Contract

21. The PPA qualifies as a forward contract. The PPA expressly acknowledges that it is a forward contract within the meaning of the Bankruptcy Code and provides in relevant part that:

> The Parties acknowledge and agree that this Agreement is a "forward contract" (within the meaning of the Bankruptcy Code, as in effect as of the Execution Date).

PPA §10.13.

22. Where parties agree that a contract is a forward contract, a court should not rewrite that agreement to say otherwise. *See e.g. In re Clear Peak Energy*, 488 B.R. at 647. The court in *Clear Peak* rejected debtor's argument that it had been coerced into the acknowledgement that it was a forward contract merchant, and held (a) that the Debtor could have requested that the provision be stricken or reworded; and (b) that the terms and conditions of the contract should control unless there is a legal basis to relieve the party of its contractual duties. *Id*. at 661. The court in *Clear Peak* relied on *Microsoft Corp. v. Motorola, Inc*., 696 F.3d 872, 885 (9th Cir. 2012) (holding that courts should give effect to freely made contractual agreements), and *Kipperman v. Sutherland (In re Bush)*, 356 B.R. 28, 34 (Bankr. S.D. Cal. 2006) (holding that under California law, if contract language is clear and explicit, it governs).

23. In addition, the PPA qualifies as a forward contract under the *Clear Peak* test. The subject of the PPA is electricity, which is a commodity for purposes of section 761(8) of the Bankruptcy Code. Numerous other courts have held electricity to be a "commodity'' for forward contract purposes. *See, e.g. In re Pac. Gas and Elec. Co.*, 271 B.R. at 640 ("Simply put, electricity in this instance is a thing movable at the time of identification to the contract for sale. That is clearly demonstrated by the fact that the Agreement calls for the shipment of specific quantities of electricity."); *see also Lightfoot v. MXEnergy Elec., Inc. (In re MBS Mgmt. Servs., Inc.),* 432 B.R. 570, 574 (Bankr. E.D. La. 2010) (holding that contract which required company to "supply the full requirements" of electricity to debtor was a "forward contract," where the contract involved the sale

of electricity, a commodity); *see also In re FirstEnergy Sols. Corp.,* 596 B.R. 631, 635 (Bankr. N.D. Ohio 2019) (in which both parties specifically stipulated that electricity is a commodity under the Bankruptcy Code, and the bankruptcy court agreed). Thus, the first prong of the test is satisfied.

24. The PPA also satisfies the second and third prongs of *Clear Peak*. The PPA provides for the delivery of 75 MW of electricity for a period of fifteen (15) years from the date of completion of the Facility. *See* PPA Cover Sheet p. 1. *See Clear Peak,* 488 B.R. at 658-659 (finding that the fixed quantity requirement is satisfied so long as the contract anticipates the generation of a minimum quantity of power over a specific period of time). Ninth Circuit case law holds that "maturity date" as used in the definition of forward contract "means the future date at which the commodity must be bought or sold". *See McKittrick v. Gavilon, LLC (In re Cascade Grain Prod., LLC),* 465 B.R. 570, 575 (Bankr. D. Or. 2011). Additionally, the price is set, as payment is made over the fifteen years of the contract term using a fixed price per MW hour. *See* PPA Cover Sheet p. 3.

25. The PPA also satisfies the fourth factor, in that the PPA has a relationship to the financial markets. This PPA required approval by the CPUC, and the primary factor in obtaining regulatory approval is that the PPA provides reasonable terms and conditions, including price. As was the case in *Clear Peak,* PG&E has created a complex network of supply and capacity agreements to continuously provide power to its customers at stable rates. *See* PG&E Corp. and Pacific Gas and Electric Co., Annual Report (form 10-K), at 129 (Feb. 28, 2019) (noting PG&E's use of derivative contracts such as power purchase agreements to manage volatility in customer rates).[2] The PPA was executed as an essential component of that hedging network to ensure availability of renewable electricity at fixed prices.

26. Therefore, the PPA has a substantial connection to the financial markets and satisfies

---

[2] *See Harris v. County of Orange,* 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record") (citations omitted); Fed. R. Evid. 201.

the fourth prong of the forward contract test. In addition, the PPA contains a provision where the parties to the PPA represent that "it is a 'forward contract merchant' within the meaning of the United States Bankruptcy Code (as in effect as of the Execution Date of this Agreement)" and a provision where the "[t]he Parties acknowledge and agree that this Agreement is a 'forward contract' (within the meaning of the Bankruptcy Code, as in effect as of the Execution Date)." PPA §§ 10.2(a)(iii), 10.13.

27. For all of the foregoing reasons, the PPA satisfies each of the four factors of the forward contract test identified by the court in *Clear Peak,* and qualifies for protection under sections 362(b)(6) and 556 of the Bankruptcy Code so as to avoid a negative impact on the financial markets due to the imposition of the automatic stay.

### C. First Solar and PG&E are both Forward Contract Merchants

28. Section 101(26) of the Bankruptcy Code defines a forward contract merchant as an entity in the business of entering into forward contracts as a merchant (or with a merchant) in a commodity or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade. *See BCP Liquidating, LLC v. Bridgeline Gas Mktg., LLC (In re Borden Chems. & Plastics Operating L.P.),* 336 B.R. 214, 225-226 (Bankr. D. Del. 2006) (noting that an entity can qualify as a forward contract merchant for purposes of the safe harbor even if its business is only partially comprised of entering into forward contracts in a commodity); *Clear Peak,* 488 B.R. at 661 (*citing In re Borden*, 336 B.R. at 225 and 5 *Collier on Bankruptcy* § 556.03(2) at 556-6 (15th ed. Rev. 2001)).

29. In *Clear Peak,* the court found that the utility qualified as a forward contact merchant because it entered into contracts with short- and long-term maturity dates for the future delivery of electricity for hedging purposes. *Clear Peak,* 488 B.R. at 661. The *Clear Peak* court reasoned that the language of section 101(26) requires only one party to the contract to be a merchant, and that only contracts to which neither counterparty is a merchant would fail to satisfy the statutory requirement in

the definition of a forward contract merchant. *Id.* Finding that the utility qualified as a forward contract merchant, the *Clear Peak* court held this factor under the section 362(b)(6) safe harbor satisfied. *Id.* at 663; *In re Mirant Corp.* 310 B.R. 548, 570 (Bankr. N.D. Tex. 2004) (finding that a forward contract merchant is a person that, in order to make a profit, engages in the forward contract trade as a merchant or with merchants).

30. Here, the PPA contains a provision where each party to the PPA expressly represents and warrants that "it is a "forward contract merchant" within the meaning of the United States Bankruptcy Code (as in effect as of the Execution Date of this Agreement)." PPA §10.2(a)(iii). In addition, First Solar meets the *Mirant* definition of a forward contract merchant because it entered into the PPA for the purpose of making a profit. Moreover, First Solar (and its subsidiaries, including Willow Springs 3) is a global designer, manufacturer, and seller of PV power systems with $2.5 billion in annual revenue for 2018. *See* Annual Report of First Solar, Inc. Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934. Therefore, First Solar fits squarely within both the statutory definition of a "forward contract merchant" under section 101(26) and *Mirant's* test that a forward contract merchant engage in the forward contract trade as a merchant or with merchants, in order to generate a profit.

31. Bankruptcy Code section 101(26) only requires that one party to the contract be designated as a forward contract merchant and PG&E is indisputably a forward contract merchant. *See Clear Peak,* 488 B.R. at 661 (concluding that because at least one of the parties to the PPA is clearly a Forward Contract Merchant, the requirement under Bankruptcy Code section 362(b)(6) had been met and the safe harbor applied); *see also Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364 and Fed. R. Bankr. P. 6003 and 6004 Authorizing Debtors to (A) Honor Prepetition Obligations to Natural Gas and Electricity Exchange Operators, (B) Grant Administrative Expense Claims and Authorize Posting of Collateral to Exchange Operators, Trading Counterparties, and Future*

*Commission Merchants, (C) Modify the Automatic Stay, and (D) Grant Related Relief*, dated February 27, 2019 [Docket No. 696].

32. Just as the *Clear* Peak court found the utility to be a forward contract merchant for safe harbor purposes, PG&E is also a utility company that is in the business of entering into forward contracts to hedge against price fluctuations in the energy market, and fits the statutory definition of a forward contract merchant under section 101(26) and the *Mirant* test.

33. Because (i) the PPA is a forward contract, and (ii) First Solar and PG&E are forward contract merchants, First Solar respectfully requests that the Safe Harbor Motion be granted and the Court enter an order in the form attached hereto that finds the PPA is protected by the safe harbor provisions codified in sections 362(b)(6) and 556 of the Bankruptcy Code and determine that the automatic stay does not apply to the PPA or to Willow Springs 3 as counterparty to the PPA.

## NOTICE

Notice of this motion is being provided in accordance with the *Second Amended Order Implementing Certain Notice and Case Management Procedures*, entered on May 14, 2019 [Docket No. 1996].

## CONCLUSION

For the foregoing reasons, the Court should issue an order confirming that the PPA is protected by the safe harbor provisions codified in sections 362(b)(6) and 556 of the Bankruptcy Code and that the automatic stay does not apply to prevent Willow Springs 3 from exercising its rights under the PPA and for such other and further relief as the Court may deem just and appropriate.

Dated: July 25, 2019                    WINSTON & STRAWN LLP

By:  /s/ Jennifer Machlin Cecil
Jennifer Machlin Cecil (SBN#294806)
David Neier (*admitted pro hac vice*)

*Attorneys for First Solar, Inc.
and Willow Springs Solar 3, LLC*

## Exhibit A

**Proposed Order**

Jennifer Machlin Cecil (SBN#294806)
Jcecil@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

David Neier (*admitted pro hac vice*)
dneier@winston.com
WINSTON & STRAWN LLP
200 Park Avenue, 40th Floor
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for First Solar, Inc.
and Willow Springs Solar 3, LLC*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION** <br><br> -and- <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> **Debtors.** | Bankruptcy Case No. 19 - 30088 (DM) <br><br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **[PROPOSED] ORDER CONFIRMING SAFE HARBOR PROTECTION PURSUANT TO 11 U.S.C. §§ 362(b)(6) AND 556** |
| ☐ Affects PG&E Corporation <br><br> ☒ Affects Pacific Gas and Electric Company <br><br> ☐ Affects both Debtors <br><br> * All papers shall be filed in the Lead Case, No. 19-30088 (DM) | **Hearing Date:** August 28, 2019 <br> **Time:** 9:30 a.m. (P.T.) <br><br> Courtroom: Hon. Dennis Montali <br> 450 Golden Gate Avenue <br> 16th Floor, Courtroom 17 <br> San Francisco, CA 94102 <br><br> **Objections Due:** August 21, 2019, 4:00 (P.T.) |

Upon the motion of First Solar, Inc. ("First Solar"), for Entry of an Order Confirming Safe Harbor Protection Under 11 U.S.C. §§ 362(b)(6) and 556 (the "Safe Harbor Motion");[1] and this Court having jurisdiction to consider the Safe Harbor Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,* General Order 24 (N.D. Cal.) and Bankruptcy Local Rule 5011-l(a); and consideration of the Safe Harbor Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Safe Harbor Motion as provided to the parties listed therein is reasonable and sufficient under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Safe Harbor Motion; and this Court having determined that First Solar is a forward contract merchant and the PPA is a forward contract, as required under 11 U.S.C. §§ 362(b)(6) and 556 and that the forward contract safe harbor protection applies to the PPA exempting it from imposition of the automatic stay; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Safe Harbor Motion is granted.

2. Willow Springs 3 is hereby authorized, but not directed, to exercise any of it contractual rights at any time pursuant to, in connection with and in accordance with the PPA and 11 U.S.C. § 556.

3. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**\*\*END OF ORDER\*\***

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Safe Harbor Motion.

**EXHIBIT B**

**The PPA [redacted in full]**