Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>       **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                            **Debtors.**<br><br>☐ Affects PG& E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO COMPEL PRODUCTION OF THIRD-PARTY CONTRACTOR DOCUMENTS**<br><br>Date:      August 9, 2019 (requested)<br>Time:      11:30 a.m. (Pacific Time)<br>Place:     United States Bankruptcy Court<br>             Courtroom 17, 16 Floor<br>             San Francisco, CA  94102<br><br>Objection Deadline: To be determined (or August 2, 2019 at 4:00 p.m. (requested)) |

The Official Committee of Tort Claimants (the "**TCC**"), by and through its undersigned counsel, hereby submits this Motion to Compel (the "**Motion**") PG&E Corporation and Pacific Gas & Electric Company (collectively, the "**Debtors**") to produce documents. For several months, the TCC has sought documents from Debtors relating to their third-party contractors' potential responsibility for the 2018 Camp Fire, and this Court has already ordered Debtors to produce them. Critical responsive documents in Debtors' possession still have not been produced—namely, all third-party, non-vegetation-related inspection records and documentation of repair work related to the Caribou-Palermo Transmission Line. The federal judge overseeing PG&E's probation received pertinent inspection and repair documents back in December 2018. The recent Wall Street Journal exposé identified yet more responsive documents. Debtors cannot seem to bring themselves to produce any of these documents to the TCC. Thus, the TCC needs another order compelling production from Debtors. In support thereof, the TCC states as follows:

# I. BACKGROUND

### A. The November 2018 Camp Fire

The November 2018 Camp Fire in Butte County was the most destructive wildfire in California history. It burned at a rate of 30 football fields per minute and melted the aluminum wheels off cars—at least seven people died in their vehicles trying to escape the blaze.[1] There were 85 total deaths, over 14,000 homes destroyed, over 5000 other buildings destroyed, and over 153,300 acres of land burned. The Camp Fire wiped the town of Paradise off the map.

On February 28, 2019, PG&E said it was probable that PG&E's equipment would be determined to be the cause of the Camp Fire.[2] The fire was first observed in the early morning on November 8, 2019 in the vicinity of Tower :27/222 on PG&E's geriatric Caribou-Palermo 115 kV Transmission Line.[3] Notably, Tower :27/222 was built around the time of World War I and was in

---

[1] *See* Mireya Villareal, *California's Camp Fire burned hot enough to melt aluminum in cars*, CBSNews.com (November 12, 2018), https://www.cbsnews.com/news/californias-camp-fire-burned-hot-enough-to-melt-aluminum-in-cars/.

[2] *See* Press Release, PG&E, PG&E Corporation Provides Update on Financial Impact of 2017 and 2018 Wildfires (February 28, 2019), https://www.sec.gov/Archives/edgar/data/75488/000119312519055751/d710309dex991.htm.

[3] *See id.*

service nearly 25 years beyond its admitted useful life.[4] On November 14, PG&E personnel observed a broken C-hook attached to a separated suspension insulator on Tower :27/222 that was connected to the tower arm.[5] On May 15, 2019, the California Department of Forestry and Fire Protection ("CAL FIRE") reported that it had determined that the Camp Fire was caused by PG&E's electrical transmission lines.[6]

**B.     The TCC's Rule 2004 Request for Caribou-Palermo-Related Documents**

On April 30, the TCC filed a Rule 2004 Application containing 25 requests for documents. *See* Rule 2004 Application attached as **Exhibit A** to the Declaration of Kody Kleber ("**Kleber Decl**."). At issue here is the 25th Request, which provides as follows:

> 25. For each Third-Party Contractor who performed work on any portion of the Caribou-Palermo Line, which included Tower 22/227 from 2009 through 2019, separately label, by Third-Party Contractor, and produce:
>
> a) All agreements and contracts between the Debtor(s) and each Third-Party Contractor, including without limitation, any agreement or contract relating to indemnity, insurance, or liability.
>
> b) Each agreement between any Debtor and any Third-Party Contractor which required the inspection of the C-Hook on Tower 22/227, which the Debtors have identified as having failed on November 8, 2018;
>
> c) To the extent not set forth in the documents responsive to Request 2(a), all documents that describe the scope of services the Third-Party Contractor agreed to provide to the Debtor(s);
>
> d) To the extent not set forth in the documents responsive to Request 2(a) or 2(b), all documents that describe the work performed by the Third-Party Contractor;
>
> e) All documents that contain the analyses, findings, summaries, impressions, recommendations, and/or other work-product of each of the Third-Party Contractors, including without limitation any Risk Assessments.

---

[4] See Jill Cowan, *What One Old Tower Says About PG&E's Lax Safety Culture*, NYTimes.com (March 20, 2019), https://www.nytimes.com/2019/03/20/us/tower-pge-safety-culture-camp-fire.html.
[5] *See* February 28, 2019 PG&E Press Release.
[6] *See* News Release, CAL FIRE, CAL FIRE Investigators Determine Cause of the Camp Fire (May 15, 2019), https://www.fire.ca.gov/media/5038/campfire_cause.pdf.

f) All insurance policies that may provide coverage for claims arising from the work of each of the Third-Party Contractors.

g) Each writing which documents any inspection performed of Tower 22/227 at anytime from January 1, 2009 to and including April 24, 2019.

h) Each writing which sets forth the result of any inspection performed on Tower 22/227 at anytime from January 1, 2009 to and including April 24, 2019.

Debtors initially refused to produce documents responsive to Request Nos. 25(c), (d), (e), (g), and (h). The Court held a discovery conference on May 8, 2019 concerning outstanding discovery, including Request No. 25. Then, on May 28, 2019, this Court ordered Debtors to produce documents responsive to Request No. 25 in its entirety. *See* Doc. No. 2255.

**C.     Identified Production Deficiencies**

After the Court's Order, Debtors proceeded to slow-walk production of documents responsive to all the 2004 requests, and specifically Request No. 25. As of June 25, 2019 (two months later), Debtors had produced documents relating to only three of their third-party contractors, and all in the area of vegetation management. *See* June 25, 2019 Letter to Debtors attached as **Exhibit B** to Kleber Decl. As noted, the Camp Fire was not caused by vegetation management failures, it was caused by transmission line failures.

In their letter dated June 29, 2019, Debtors' counsel represented that "PG&E expects to produce work records for . . . contractors who performed risk assessments by July 12." *See* June 29, 2019 Letter to TCC attached as **Exhibit C** to Kleber Decl. However, as of the date of this Motion, Debtors have produced zero documents that relate to McKinsey & Company, much less contain the results of McKinsey's work on behalf of PG&E. This is a particularly conspicuous omission considering McKinsey's involvement in PG&E's "Risk Informed Budget Allocation" analysis that assigned a low safety/reliability impact score to the Caribou-Palermo Line:

> **Caribou Palermo:** <200 score because there is no likely large environmental event (if structures fail, it will be likely due to heavy rain and no wildfires are possible then). Also no likely public safety issue with live wires down because it is in a remote area. Reliability score is not that high because although the likelihood of failed structures happening is high, the affected customers are likely in the order of >1K.

Several McKinsey personnel were included on this email exchange.[7] *See* Email Chain dated February 2014, publicly filed in Case No. 3:14-cr-00178-WHA, attached as **Exhibit D** to Kleber Decl.

Debtors' counsel's June 29, 2019 letter further indicated that PG&E would produce their contractors insurance policies by that date if PG&E had them in its possession. *See* **Exhibit C**. As of the date of this Motion, Debtors have produced none.

Debtors' counsel's June 29, 2019 letter then stated that identifying and producing responsive "electrical services" contractor documents would run beyond July 12, because the "substantial geographic and temporal scope" of the request was "time-consuming and burdensome." *See id.* This statement is an eyebrow-raiser, as Debtors should have been rounding up all of its documentation concerning which third-party contractors did what, and where, on the Caribou-Palermo Line starting around 6:30 AM on November 8, 2018.

Indeed, the Debtors were already motivated to compile some of this pertinent information over seven months ago. After PG&E's felony conviction on five counts of violating pipeline safety regulations and one count of obstruction, PG&E was sentenced to probation in January 2017. On November 27, 2018, the federal district judge overseeing PG&E's probation, William Alsup, ordered PG&E to "[p]rovide an accurate and complete statement of the role, if any, of PG&E in causing and reporting the recent Camp Fire in Butte County…." *See* Judge Alsup's November 27, 2018 Order attached as **Exhibit E** to Kleber Decl. PG&E filed a response to Judge Alsup on December 31, 2018 and attached a "factual report" to "assist the Court in understanding the facts relevant to the potential cause of the Camp Fire." *See* Debtor's Response to Judge Alsup's November 27, 2018 Order attached as **Exhibit F** to Kleber Decl. In connection with its factual report, PG&E produced 800 pages of documents related to the Camp Fire and faulty Caribou-Palermo Transmission Line, including inspection reports, aerial patrols, infrared patrols, and repair records. *See id.* at 8-11. As of the date of this Motion, none of these have been produced to the TCC.

---

[7] Though designated "Confidential," this document is publicly available on the criminal docket for Case No. 3:14-cr-00178-WHA (available here: https://www.docketbird.com/court-documents/USA-v-Pacific-Gas-and-Electric-Company/Exhibit-13/cand-3:2014-cr-00175-276096-01036-013).

**D.     "PG&E Knew for Years Its Lines Could Spark Wildfires, and Didn't Fix Them"**

On July 10, 2019, the Wall Street Journal published an investigative report entitled "PG&E Knew for Years Its Lines Could Spark Wildfires, and Didn't Fix Them" (the "WSJ Report"). *See* Wall Street Journal Report attached as **Exhibit G** to Kleber Decl. That same day, Judge Alsup ordered PG&E to file a public statement responding to the WSJ Report "on a paragraph-by-paragraph basis stating the extent to which each paragraph is accurate." *See* Judge Alsup's July 10, 2019 Order attached as **Exhibit H** to Kleber Decl. Judge Alsup further admonished PG&E for responding to some of the Court's prior questions "by filing thousands of records and leaving it up to the judge to find the needles in the haystacks." *Id.* Thus, Judge Alsup ordered that "the offender must provide a fresh, forthright statement owning up to the true extent of the Wall Street Journal report." *Id.*

It will not surprise this Court to learn that Debtors have produced few, if any, of the documents identified or relied upon in the WSJ Report, such as the many documents PG&E provided to the U.S. Forest Service. Most of these documents are likely to be responsive to Request No. 25, at the very least because they contain analyses, findings, recommendations, and other work product of third-party contractors. *See* **Exhibit A** at Request No. 25(e).

**E.     Another Motion to Compel Is Warranted**

On July 17, 2019, counsel for the TCC sent an email to counsel for Debtors, Kevin Orsini, requesting immediate production of the documents used to create PG&E's above-referenced December 31, 2018 factual report submitted to Judge Alsup. *See* Email Chain dated July 29, 2019 between Debtors and TCC attached as **Exhibit I** to Kleber Decl. Mr. Orsini had previously represented to counsel for the TCC that all the information and documents used to create the factual summary for Judge Alsup came from internal, PG&E-performed inspection and repair work, and not a single third-party contractor. On July 18, Debtors' counsel sent an email reiterating that none of the documents provided to Judge Alsup implicated any third-party contractor work. *See id.*

The TCC is skeptical. The inspection reports, aerial patrols, infrared patrols, and repair records provided to Judge Alsup spanned the course of a decade, and PG&E has historically outsourced significant work in these categories to third parties. PG&E's list of contractors qualified

to do PG&E's work currently stands at 1,875 companies, including dozens, if not hundreds, of electricians, inspectors, and helicopter companies.[8] Also of note, the WSJ Report stated that PG&E "began using drones and helicopters earlier this year to capture images of its transmission structure"—if this is true, how was PG&E conducting aerial patrols with its own personnel and equipment prior to 2019? *See* **Exhibit G**. In July of 2018, PGE issued a press release indicating that it had secured two helicopters through an "exclusive use agreement with PJ Helicopters."[9] The same press release notes: "PG&E has deployed helicopters, usually on a contract basis, for its electric, gas and generation work for many years in support of construction and maintenance activities."[10] These are PG&E's own words. The earliest aerial patrol documented in its factual report to Judge Alsup was back in 2010. *See* **Exhibit F** at 26. Debtors would have the TCC and this Court believe that, even though its helicopter deployment is "usually on a contract basis," with respect to the Caribou-Palermo Line, it has exclusively used its own aircraft dating back at least eight years.

Debtors' July 18 email further stated that Debtors "hope[d] to substantially complete" their production of documents responsive to Request No. 25 by July 19. On July 19, Debtors did make a production of additional documents responsive to the TCC's third-party-related document requests, including Request No. 25. This production included a large number of contracts with third parties, but contained no written documentation or results of such contracted work. Debtors also indicated on July 19 that their production of documents responsive to Request No. 25 was still not complete. As of the filing of this Motion, Debtors have not produced any third-party inspection records for the Caribou-Palermo Line, descriptions of work performed by third-party contractors (or any other third-party work product), or any risk assessment documents specific to the Caribou-Palermo Line.

---

[8] *See* https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=1&cad=rja&uact=8&ved=2ahUKEwj-_NvuuczjAhVDgK0KHTD5A8gQFjAAegQIABAC&url=https%3A%2F%2Fwww.pge.com%2Fincludes%2Fdocs%2Fpdfs%2Fb2b%2Fpurchasing%2Fsuppliers%2FQualified_Contractors.xls&usg=AOvVaw3h16gSb-RIa4oR2iH_7jNs, last updated July 22, 2019.
[9] *See* Press Release, PG&E, PG&E Adds New Heavy-Lift Helicopters to Support Utility Infrastructure Projects and Enhance Wildfire Safety (July 25, 2018), https://www.pge.com/en/about/newsroom/newsdetails/index.page?title=20180725_pge_adds_new_heavy-lift_helicopters_to_support_utility_infrastructure_projects_and_enhance_wildfire_safety.
[10] *Id.*

## II. ARGUMENT AND AUTHORITIES

As this Court knows, any claims against third-party contractors of Debtors would inure to the benefit of the bankruptcy estate. Though the TCC cannot know the full extent to which Debtors' production is deficient, publicly available information reveals obvious production gaps. To date, the TCC has been unable to obtain adequate information from Debtors to evaluate potential claims against third-party contractors in connection with the Caribou-Palermo Line and the Camp Fire—most notably, third-party inspection documents (Request No. 25(g) & (h)), documents evidencing repair work actually performed (Request No. 25(d)), and risk assessment-related documents ((Request No. 25(e)). **Debtors have not produced a single non-vegetation management third-party work order, invoice, or inspection report related to the Caribou-Palermo Line**. Not coincidentally, Debtors' production deficiencies are most glaring with respect to four of the five Request No. 25 categories to which they originally objected. *See* Doc. No. 2255.

The TCC must rely on Debtors to live up to their Court-ordered responsibility to make complete productions, and Debtors have "an obligation to organize the responsive documents in such a manner such that the requesting party may obtain the necessary information." *See Decorator's Rug Warehouse, Inc. v. Zurich American Insurance Co.*, No. CV0909156AHMSSX (C.D. Cal., June 2, 2010) 2010 WL 11597514, at *2. Instead, Debtors have produced waves of tertiary information and only a handful of documents that get to the heart of what the TCC has made abundantly clear it is seeking—documents that show what work third parties performed on PG&E's behalf for the decrepit Caribou-Palermo Line and the 100-year old tower PG&E admits caused the devasting Camp Fire. *See Trade Assocs., Inc. v. Fusion Techs., Inc.*, No. C09-5804 JRB (W.D. Wash., Mar. 21, 2011) 2011 WL 13196082, at *3 (finding the producing party must provide the appropriate documents and not overburden the other party with a "document dump"). The world knows that PG&E failed to adequately maintain and repair the Caribou-Palermo Line, and third-party contractors very likely facilitated this failure. The TCC is entitled to discovery regarding what those contractors actually did.

The TCC requests this Court order Debtors to produce all documents responsive to its Rule 2004 Request No. 25 within fourteen (14) days, including, but not limited to, the following documents the TCC has been able to determine should have been produced:

1. All documents that describe the work performed by third-party contractors on the Caribou-Palermo Line (Request No. 25(d)).

2. All documents that contain the analyses, findings, summaries, impressions, recommendations, and/or other work-product of each of the third-party contractors on the Caribou-Palermo Line, including without limitation any Risk Assessments (Request No. 25(e)).

3. All insurance policies that may provide coverage for claims arising from the work of each third-party contractor on the Caribou-Palermo Line (Request No. 25(f)).

4. All inspection reports and other writings which sets forth inspection results for the Caribou-Palermo Line (Request Nos. 25(g) & (h)).

5. All responsive documents relating to third-party contractors whose work was incorporated into the December 31, 2018 factual report and supporting documentation submitted to Judge Alsup. *See* **Exhibit B**.

6. All responsive documents relating to the "outside consultant [PG&E] hired" that advised PG&E to regularly climb its towers to inspect their condition. *See* **Exhibit G**.

7. All responsive documents submitted to the U.S. Forest Service, federal forest managers, and any other federal officials that describe any work or contain any work product performed by third-party contractors. *See id.*

8. All responsive documents that relate to PG&E's decision to delay safety work on the Caribou-Palermo Line at any point in time. *See id.*

9. All responsive documents relating to PG&E's decision that it needed to replace 49 steel towers "due to age" and hardware and aluminum lines on 57 towers "due to age and integrity" on the Caribou-Palermo Line. *See id.*

10. All responsive documents related to the "enhanced inspections" PG&E began undertaking in December of 2018. *See id.*

11. All responsive documents relating to Debtors' decision "to permanently shut down the Caribou-Palermo Line after assessing the amount of work it would take to operate it safely." *See id.* Debtors cannot plausibly claim they decided to take an entire line out of commission without relying on third-party investigations and consultations.

12. All responsive documents related to Quanta Technology and Quanta Services, Inc., which PG&E commissioned "to assess the age and condition of transmission structures throughout its 70,000-square-mile service area" in 2010. *See id.*

13. All responsive documents related to PG&E's implementation of a risk-based system to prioritize spending projects for transmission line upgrades. *See id.*

14. All responsive documents related to PG&E's improved record-keeping efforts, including, but not limited to, its field inventories and database implementation. *See id.*

15. All responsive documents related to McKinsey & Company, which was commissioned by PG&E to assist with risk assessment of its transmission lines, including the Caribou-Palermo Line. *See* **Exhibit D**.

Finally, to the extent Debtors maintain that no third-party contractors assisted with inspection reports, aerial patrols, infrared patrols, and repair records for the Caribou-Palermo Line cited in their December 31, 2018 factual report to Judge Alsup, the TCC requests that this Court order them to submit an affidavit swearing to that statement under oath.

### III. CONCLUSION

Based on the foregoing, the TCC respectfully requests that this Court enter an order (proposed version attached as **Exhibit 1**) requiring Debtors to produce documents responsive to its 2004 Request No. 25 within fourteen (14) days, and to the extent Debtors maintain that no third-party contractors assisted Debtors with their inspection reports, aerial patrols, infrared patrols, and repairs for the Caribou-Palermo Line cited in their December 31, 2018 factual report to Judge Alsup, the TCC requests that this Court order Debtors to submit an affidavit swearing to that representation under oath within fourteen (14) days.

Dated: July 25, 2019

BAKER & HOSTETLER LLP

By: _____
Kody D. L. Kleber

*Attorneys for The Official Committee of Tort Claimant*