# EXHIBIT B

# BakerHostetler

Baker & Hostetler LLP

1801 California Street
Suite 4400
Denver, Colorado 80202-2662

T 303.861.0600
F 303.861.7805
www.bakerlaw.com

Lars H. Fuller
direct dial: 303.764.4114
lfuller@bakerlaw.com

June 25, 2019

**VIA E-MAIL (KORSINI@CRAVATH.COM)**

Kevin Orsini
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Re:     *PG&E Discovery Responses (PG&E Chapter 11 Proceedings, N.D. Cal. No. 19-30088)*

Dear Counsel:

We are in receipt of the document productions (PGE-BK-VOL001 and PGE-BK-VOL002) dated June 12, 2019 and June 19, 2019 on behalf of Pacific Gas & Electric Company and PG&E Corporation (collectively "PG&E"). We are writing to identify certain deficiencies in those initial productions, and to clarify the scope and timeline of PG&E's remaining document productions, many of which have been outstanding for a month or more.

## A.  March 8, 2019 Management Requests

On March 8, 2019, the Tort Claimants Committee ("TCC") submitted 32 requests for documents ("Management Requests") to PG&E. Those requests were re-numbered and prioritized in a March 13, 2019 letter. On April 28, 2019, the parties held a telephonic meet-and-confer at which counsel for PG&E indicated that PG&E would be willing to produce documents responsive to all but six of the requests (Request Nos. 4, 5, 10, 11, 12, and 26).

On April 30, 2019, the TCC submitted a letter to Judge Montali summarizing the parties' dispute, and attached as Exhibit C to that letter a chart of the Management Requests, with a column noting the current status of each request. A copy of that chart is attached as Exhibit 1.

On May 28, 2019, Judge Montali ordered PG&E to produce documents responsive to the disputed requests. A copy of that order is attached as Exhibit 2.

*Atlanta     Chicago     Cincinnati     Cleveland     Columbus     Costa Mesa     Denver*
*Houston     Los Angeles     New York     Orlando     Philadelphia     Seattle     Washington, DC*

Case: 19-30088    Doc# 3206-2    Filed: 07/25/19    Entered: 07/25/19 19:39:38    Page 2
of 56

Thus, PG&E has either agreed to or has been compelled to produce documents responsive to all 32 Management Requests. Almost two months have passed since PG&E first agreed to produce documents and almost one month since the Court ordered the remaining production. Yet PG&E has failed to produce documents responsive to more than half of the Management Requests. And the productions PG&E have made are deficient as stated in more detail below.

**1. Requests 7, 8, 9, 14, 15, 16, 19 and 20**

PG&E purports to include documents in its first two productions relating to Management Requests 7, 8, 9, 14, 15, 16, 19 and 20. Yet the productions are incomplete or include documents referencing the requested material without including the requested material itself. For example, Management Request 16 seeks "[a]ll notifications to insurers of claims threatened or asserted" against PG&E or its directors and officers. But PG&E's production contained only e-mails summarizing the notifications, and did not include the actual notifications to PG&E's insurers. Similarly, Management Request 7 seeks "ethics policies, codes of conduct, employee handbooks, and similar policies and procedures that apply to the Company's and/or affiliates' directors, officers and/or employees." Yet PG&E produced at least one policy without its 10 referenced attachments detailing the procedures implementing the policy (see PGE-BK-0000000376-389). Please confirm when you will correct these deficiencies and when you anticipate completing production of documents responsive to these Management Requests.

**2. Requests 28, 29 and 32**

PG&E also "produced" documents responsive to Management Requests 28, 29, and 32 by providing hyperlinks that purport to contain documents responsive to the Requests. Not only are these hyperlinks an improper means of production, several of the hyperlinks are inaccessible because they are broken or link to pages containing multiple documents. In lieu of hyperlinks, please provide copies of documents you contend are responsive to these Management Requests and confirm when you anticipate completing production of documents responsive to these Management Requests.

**3. Requests 4, 5, 6, 10, 11, 12, 13, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30 and 31**

PG&E has not produced any documents responsive to Management Requests 4, 5, 6, 10, 11, 12, 13, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, or 31. Please confirm when you anticipate completing production of documents responsive to these Management Requests. To the extent PG&E is withholding documents subject to the entry of an appropriate protective order, we note that the vast majority of documents in PG&E's recent productions have already been designated confidential or professional eyes only (PEO). Thus, we expect that PG&E will continue its production of documents even in the absence of a formal protective order. However, to the extent documents are being withheld based on confidentiality, please confirm whether PG&E will immediately produce such documents upon the entry of a protective order.

### 4. Requests 1, 2 and 3

PG&E's productions do not include any documents relating to Requests 1, 2, or 3. However, it appears PG&E has produced material responsive to these requests via its Financial Advisor data room. Please confirm when PG&E anticipates it will complete its production of the documents responsive to these requests.

## B. April 30, 2019 Rule 2004 Requests

On April 30, 2019, the TCC filed a Rule 2004 Application containing 25 additional requests for documents. A copy of that 2004 Application is attached as Exhibit 3 ("April 30 Request"). Prior to filing its 2004 Application, the TCC sent copies of those requests to PG&E, and on April 29, 2019, PG&E agreed to produce documents responsive to Request Nos. 1 through 24 and subparts (a), (b), and (f) of Request 25, but objected to subparts (c), (d), (e), (g), and (h) of Request 25. On May 28, 2019, Judge Montali entered an order compelling PG&E to produce documents responsive to the disputed requests. (May 28, 2019 Order, Ex. 2). Thus, PG&E has either agreed to or been compelled to produce documents responsive to all 25 categories in the April 30 Request.

Despite agreeing to produce the bulk of the documents two months ago, and being ordered to produce the remaining documents one month ago, PG&E's productions contain documents responsive to only two of the April 30 Requests, and those productions are deficient. For example, PG&E's June 12, 2019 production purports to include documents responsive to Requests 4 and 25, which seek copies of third-party contractor agreements, reports, and insurance policies. But the production contained documents relating to only three third-party contractors, and did not contain copies of insurance policies.

Additionally, many of the documents in the production appear to be duplicates or are incomplete.[1] Please confirm when you will correct these deficiencies and when you anticipate completing production of documents responsive to Requests 4 and 25. Additionally, please confirm when PG&E will complete its production of documents responsive to the remaining 23 Requests. As stated above, to the extent documents are being withheld pending the entry of a protective order, please confirm whether PG&E will immediately produce these documents upon the entry of such an order.

## C. June 12, 2019 Rule 2004 Requests

On June 12, the Court granted the TCC's second 2004 Application with two additional requests for insurance-related documents. A copy of that 2004 Application and Order is attached as Exhibit 4. Please confirm whether PG&E will produce these documents on or before June 27, 2019.

---

[1] For example, PGE-BK-0000002287-2288 states that it contains 8 pages but only 2 pages were produced. PGE-BK-0000002772-2821 states that it contains 70 pages but only 50 pages were produced. PGE-BK-0000002877 states that it contains 8 pages but only 1 page was produced.

**D. March 5, 2019 Informal Requests**

On March 5, 2019, in an email from Bob Julian, the TCC submitted five numbered requests for information concerning PG&E's insurance policies and complaints filed against the company. A copy of that March 5 email is attached as Exhibit 5.

PG&E did not object to these requests, and in fact produced certain responsive information in a letter dated April 8, 2019. Based on our review of documents produced to date, however, it does not appear that PG&E has produced all documents responsive to these requests. For example, in your April 8, 2019 letter, you claim that PG&E has exhausted its insurance coverage for the 2015 Butte Fire, but provide no summary of that coverage. Please confirm when PG&E will complete its production of documents responsive to these requests.

In summary, please confirm no later than June 28 when PG&E will correct the deficiencies in its recent productions as detailed herein; when PG&E will complete its productions of documents responsive to the Management Requests, the April 30 Request, the June 12 2004 Request and the March 5 Informal Requests; and to the extent PG&E is withholding any documents responsive to these requests subject to the entry of a protective order, whether PG&E will immediately produce documents upon entry of a protective order by the Court.

Sincerely,

Lars H. Fuller
Counsel

Attachments

# EXHIBIT 1

EXHIBIT C

| Priority Tier | Req. No. | Request | Discussion During Meet & Confer | Relief Requested Following Meet & Confer |
|---|---|---|---|---|
| **PRIORITY 1** | 1 | Business plans prepared by or for the Company during the applicable period. | This Request will be handled by the Parties' Financial Advisors. | No Ongoing Dispute |
| | 2 | Reports, studies, briefings, valuations, analyses and similar documents prepared by advisors, appraisers, investment bankers, consultants, lawyers, accountants, auditors, investigators, and professionals for the Company, or any of their respective boards or committees, during the applicable period, regarding the value of the Company or the safety of the Company's transmission and distribution lines. | This Request will be handled by the Parties' Financial Advisors. | No Ongoing Dispute |
| **PRIORITY 2** | 3 | Articles of Incorporation and By-Laws of the Company and each of its affiliates (collectively, "the Company"). | This Request will be handled by the Parties' Financial Advisors. | No Ongoing Dispute |
| | **4** | Board packages and board meeting agenda delivered to the Company's board members for board meetings scheduled to occur during the three year period preceding the bankruptcy filing and the post-bankruptcy filing period of time ("the applicable period"). | Debtors' counsel indicated this request was overly broad and suggested limiting it to board packages agendas that related only to insider payments and dividends.<br><br>TCC's counsel did not agree to narrow the request by subject matter. | **No Agreement Reached, Court Action Needed** |
| | **5** | The Company's Board of Directors Minute Book, including minutes of board of director meetings, resolutions and unanimous consents prepared or signed during the applicable period. | Debtors' counsel indicated this request was overly broad and suggested limiting it to board packages agendas that related only to insider payments and dividends.<br><br>TCC's counsel did not agree to narrow the request by subject matter. | **No Agreement Reached, Court Action Needed** |
| | 6 | All memoranda and other documents that describe how directors should exercise their responsibilities. | Debtors will produce all responsive, non-privileged documents. | No Ongoing Dispute |
| | 7 | All ethics policies, codes of conduct, employee handbooks, and similar policies and procedures that apply to the Company's and/or affiliates' directors, officers and/or employees. | Debtors will produce all responsive documents. | No Ongoing Dispute |
| | 8 | All ethics policies, codes of conduct, employee handbooks, and similar policies and procedures that apply to the Company's and/or affiliates' directors, officers and/or employees. | Debtors will produce all responsive documents. | No Ongoing Dispute |
| | 9 | The charter and other documents that establish committees of the Company or the Board, including all documents that establish the purpose, policies and procedures of such committees. Such committees include but are not limited to the following Committees: Audit, Compensation, Governance, Safety. | Debtors will produce all responsive documents. | No Ongoing Dispute |
| | 10 | The Company's minutes and summaries of meetings, discussions and resolutions of the Company's and the Board's respective committees, including without limitation the audit and compensation committee meetings during the applicable period. | Debtors' counsel indicated this request was overly broad and suggested limiting it to board packages agendas that related only to insider payments and dividends.<br><br>TCC's counsel does not agree to narrow this Request by subject matter. | **No Agreement Reached, Court Action Needed** |

**EXHIBIT C**

| Priority Tier | Req. No. | Request | Discussion During Meet & Confer | Relief Requested Following Meet & Confer |
|---|---|---|---|---|
| **PRIORITY 3** | 11 | All reports prepared by or at the request of any special litigation committee or committee of the Board of the Company, or any investigation or audit team, including without limitation all audit committee reports and analyses. | The TCC offered to narrow this request to only those documents relevant to dividends, wildfire claims, insider transactions, and wildfire safety. Debtors agreed to produce all responsive documents on the narrowed issues of dividends, wildfire claims and insider transactions, but *not* wildfire safety.<br><br>TCC's counsel does not agree to narrow this Request to exclude wildfire safety. | **No Agreement Reached, Court Action Needed** |
| | 12 | All investigation reports prepared by the Company's counsel, auditors or investigators. | The TCC offered to narrow this request to only those documents relevant to dividends, wildfire claims, insider transactions, and wildfire safety. Debtors agreed to produce all responsive documents on the narrowed issues of dividends, wildfire claims and insider transactions, but *not* wildfire safety.<br><br>TCC's counsel does not agree to narrow this Request to exclude wildfire safety. | **No Agreement Reached, Court Action Needed** |
| | 13 | All reports that address misuse of funds or Company property by Company directors, officers or employees. | The Parties agreed to narrow this request to reports relevant to officers and directors only. Once narrowed, Debtors agreed to produce all responsive documents. | No Ongoing Dispute |
| | 14 | Complaints filed or threatened against the Company or its directors and officers during the applicable period, to the extent the complaints allege any of the following: (a) breach of fiduciary duty; (b) mismanagement; (c) waste; (d) securities claims; or (e) damages in excess of $1 million. | The Parties agreed to narrow this request to all filed complaints, official or formal demands, and to eliminate subpart (e) regarding damages in excess of $1 million. Once narrowed, Debtors agreed to produce all responsive documents. | No Ongoing Dispute |
| | 15 | Complaints filed by the Company or by anyone on the Company's behalf against any person, to the extent the complaints allege any of the following: (a) claims for a determination of insurance coverage in favor of the Company or any of its directors or officers; (b) claims for breach of fiduciary duty allegedly owed by any person to the Company; (c) claims against any of the Company's attorneys, auditors, accountants, advisors, investment bankers or any other professional; (d) claims against any of the Company's shareholders. | Debtors agreed to produce all responsive documents. | No Ongoing Dispute |
| | 16 | All notifications to insurers of claims threatened or asserted against the Company or its directors and officers during the applicable period. | The Parties agreed to narrow this request to only those documents relevant to dividends, wildfire claims, wildfire safety, and insider transactions. Once narrowed, Debtors agreed to produce all responsive documents. | No Ongoing Dispute |
| | 17 | Consent that the Committee may have access to the documents that the Company produced in the 2015 Butte Fire litigation and the 2017 North Bay Fire Litigation, including the documents that are subject to a protective order in that litigation. | Debtors agreed to provide load files or allow access to previously produced files in state court litigation, subject to further discussions regarding smart meter data and expanded confidentiality agreement and/or non-disclosure agreement that allows disclosure to counsel for individual TCC members. | Dispute On Hold Pending Agreement to Revised Terms |

EXHIBIT C

| Priority Tier | Req. No. | Request | Discussion During Meet & Confer | Relief Requested Following Meet & Confer |
|---|---|---|---|---|
| **PRIORITY 4** | 18 | All audit committee directives to officers and/or employees directing them to take action or correct matters. | The Parties agreed to narrow this request to only those documents relevant to dividends, wildfire claims, wildfire safety, and senior officers and directors. Once narrowed, Debtors agreed to produce all responsive documents. | No Ongoing Dispute |
| | 19 | Compensation, bonus, severance, and benefit policies for the Company's officers and directors in effect during the applicable period. | The Parties agreed to narrow this request to reports relevant to officers and directors only. Once narrowed, Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |
| | 20 | All stock option plans, pension plans, deferred compensation plans, and Rabbi Trusts that benefit any of the officers or directors of the Company or its affiliates. | The Parties agreed to narrow this request to reports relevant to officers and directors only. Once narrowed, Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |
| | 21 | All agreements entered into between the Company and its officers and directors during the applicable period, including without limitation all employment and bonus agreements between the Company and its senior officers. | Debtors agreed to produce all responsive documents. | No Ongoing Dispute |
| | 22 | Copies of each agreement between the Company and each of the following persons: (a) directors of the Company; (b) officers of the Company; and (c) significant shareholders (shareholders holding 5% or more of the Company's common stock). | The Parties agreed to narrow this request to reports relevant to officers and directors only. Once narrowed, Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |
| | 23 | Any report that summarizes trades of the Company's stock during the applicable period by the Company's significant shareholders (shareholders holding 5% or more of the Company's common stock), directors or officers. | The Parties agreed to narrow this request to reports relevant to officers and directors only. Once narrowed, Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |
| | 24 | All settlement agreements entered into between the Company and any of its officers and directors during the applicable period. | The Parties agreed to narrow this request to reports relevant to officers and directors only. Once narrowed, Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |
| | 25 | All releases granted by the Company, of any claims against its officers and directors, during the applicable period. | The Parties agreed to narrow this request to reports relevant to officers and directors only. Once narrowed, Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |
| | **26** | All ratifications of the Company's officers' and directors' actions, granted during the applicable period. | Debtors did not indicate whether they would produce responsive documents. | **No Agreement Reached, Court Action Needed** |
| | 27 | All resignation letters or notices provided by the Company's officers and directors to the Company or the Board during the applicable period. | The TCC clarified this Requests seeks all writings regarding resignations or terminations for senior officers and directors. Subject to this clarification, Debtors agreed to produce all responsive documents. | No Ongoing Dispute |

EXHIBIT C

| Priority Tier | Req. No. | Request | Discussion During Meet & Confer | Relief Requested Following Meet & Confer |
|---|---|---|---|---|
| **P R I O R I T Y  5** | 2 8 | All proxy solicitations sent by the Company to shareholders during the applicable period. | Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |
| | 29 | Notices of all shareholder meetings scheduled to be held during the applicable period. | Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |
| | 30 | Minutes of all shareholder meetings held during the applicable period | Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |
| | 31 | The Company's audited and unaudited financial statements covering any portion of the applicable period, and the Company's most recent Balance Sheet and Cash Flow Report. | Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |
| | 32 | All private and public offering memoranda that relate to the sale of securities of the Company, as security is defined by section 101 of the Bankruptcy Code. | Debtors agreed to produce all responsive documents that are not publically available, and to identify the location of those that are publically available. | No Ongoing Dispute |

4

# EXHIBIT 2



Signed and Filed: May 28, 2019

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

1   WEIL, GOTSHAL & MANGES LLP
    Stephen Karotkin (*pro hac vice*)
2   (stephen.karotkin@weil.com)
    Ray C. Schrock, P.C. (*pro hac vice*)
3   (ray.shrock@weil.com)
    Jessica Liou (*pro hac vice*)
4   (jessica.liou@weil.com)
    Matthew Goren (*pro hac vice*)
5   (matthew.goren@weil.com)
6   767 Fifth Avenue
    New York, NY 10153-0119
7   Tel: 212 310 8000
8   Fax: 212 310 8007

9   KELLER & BENVENUTTI LLP
    Tobias S. Keller (#151445)
10  (tkeller@kellerbenvenutti.com)
    Jane Kim (#298192)
11  (jkim@kellerbenvenutti.com)
12  650 California Street, Suite 1900
    San Francisco, CA 94108
13  Tel: 415 496 6723
    Fax: 650 636 9251
14
15  *Attorneys for Debtors*
    *and Debtors in Possession*

16              **UNITED STATES BANKRUPTCY COURT**
17              **NORTHERN DISTRICT OF CALIFORNIA**
18                   **SAN FRANCISCO DIVISION**

19  **In re:**

20  **PG&E CORPORATION**                    Bankruptcy Case
                                            No. 19-30088 (DM)
21          **- and -**
                                            Chapter 11
22  **PACIFIC GAS AND ELECTRIC**            (Lead Case)
    **COMPANY,**                            (Jointly Administered)
23                        **Debtors.**
                                            **ORDER FOLLOWING DISCOVERY**
24  ☐      Affects PG&E Corporation         **CONFERENCE HELD MAY 8, 2019 RE (I) EX**
                                            **PARTE APPLICATION OF THE TORT**
25  ☑      Affects Pacific Gas and Electric **CLAIMANTS COMMITTEE PURSUANT TO**
           Company                          **FED. R. BANKR. P. 2004 FOR ORDERS**
26                                          **AUTHORIZING PRODUCTION OF**
    ☑      Affects both Debtors             **DOCUMENTS, AND (II) INFORMAL**
27  * *All papers shall be filed in the Lead Case,* **DISCOVERY LETTERS**
    *No. 19-30088 (DM).*
28

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), and the Official Committee of Tort Claimants (the "**TCC**"), appeared before this Court on May 8, 2019 for a discovery conference (the "**Discovery Conference**") to discuss (i) the Ex Parte Application of the TCC Pursuant to Bankruptcy Rule 2004 for Orders Authorizing Production of Documents dated April 30, 2019 (the "**2004 Application**"), and (ii) informal discovery correspondence submitted to the Court by the parties including (a) the TCC's letter to the Court dated April 30, 2019 regarding the TCC's request for the Debtors to produce certain "management-related" documents (the "**TCC Letter**"), and (b) the Debtors' letter to the Court dated May 6, 2019 setting forth their positions in response to both the Application and the TCC Letter (the "**Debtors' Response Letter**"). Appearances of counsel were as stated on the record.

Having considered the 2004 Application, the correspondence submitted by the parties, and the arguments at the hearing,

**IT IS HEREBY ORDERED THAT:**

1. The TCC's 2004 Application is granted to the extent set forth herein. The Debtors and the TCC reached agreement on Requests 1 through 24 and Request 25 (a), (b) and (f) of the 2004 Application without intervention of the Court. With respect to Request 25(c), (d), (e), (g) and (h) listed in **Attachment A** to the 2004 Application, the Debtors have agreed and are directed to produce to the TCC, to the extent non-privileged documents exist and are located after a reasonable search, non-privileged documents in response to these Requests from 2009 to November 8, 2018.

2. The Debtors are directed to produce to the TCC, to the extent non-privileged documents exist and are located after a reasonable search, the following non-privileged documents in response to Request 4 listed in **Exhibit C** to the TCC Letter: non-privileged board packages and board meeting agendas delivered to the Debtors' Boards of Directors for board meetings scheduled to occur during the three year period preceding the bankruptcy filing, January 29, 2016 through January 29, 2019, and the post-bankruptcy filing period of time through the date of this Order (the "**Applicable Period**"), on the following subjects: (i) the payment of dividends to holders of equity of PG&E Corp., (ii) the payment of severance to the Debtors' former CEO Geisha Williams, and (iii) the payment of severance

to senior officers to which Section 16 of the Securities Exchange Act would apply and to directors of the Board of Directors of PG&E Corp. or of the Utility ((i)-(iii) collectively, the "**Relevant Subjects**").

3.      The Debtors are directed to produce to the TCC, to the extent non-privileged documents exist and are located after a reasonable search, the following non-privileged documents in response to Request 5 listed in **Exhibit C** to the TCC Letter:  the Debtors' Board of Directors Minute Book, including minutes of board of director meetings, resolutions and unanimous consents prepared or signed during the Applicable Period on the Relevant Subjects.

4.      The Debtors are directed to produce to the TCC, to the extent non-privileged documents exist and are located after a reasonable search, the following non-privileged documents in response to Request 10 listed in **Exhibit C** to the TCC Letter:  the Debtors' minutes and summaries of meetings, discussions and resolutions of the Debtors' and the Board of Directors' respective committees, including without limitation the audit and compensation committee meetings, during the Applicable Period on the Relevant Subjects.

5.      The Debtors are directed to produce to the TCC, to the extent non-privileged documents exist and are located after a reasonable search, the following non-privileged documents in response to Request 11 listed in **Exhibit C** to the TCC Letter:  all formal reports prepared by or at the request of any special litigation committee or committee of the Board of the Debtors, or any investigation or audit team, including without limitation all formal audit committee reports on the Relevant Subjects and the wildfires that occurred during the 2017 and 2018 wildfire seasons.

6.      The Debtors are directed to produce to the TCC, to the extent non-privileged documents exist and are located after a reasonable search, the following non-privileged documents in response to Request 12 listed in **Exhibit C** to the TCC Letter:  all formal investigation reports prepared by the Debtors' counsel, auditors or investigators on the Relevant Subjects and the wildfires that occurred during the 2017 and 2018 wildfire seasons.

7.      The Debtors are directed to produce to the TCC, to the extent non-privileged documents exist and are located after a reasonable search, the following non-privileged documents in response to Request 26 listed in **Exhibit C** to the TCC Letter:  all ratifications of the Debtors' officers and directors' actions, granted in the Applicable Period on the Relevant Subjects.

| | |
|---|---|
| 1 | 8. The Debtors are directed to provide the TCC with a draft Protective Order on or before |
| 2 | May 17, 2019. |
| 3 | |
| | APPROVED AS TO FORM AND CONTENT: |
| 4 | |
| 5 | |
| | Dated: May 28, 2019 |
| 6 | |
| | BAKER & HOSTETLER LLP |
| 7 | |
| | /s/ *Robert Julian* |
| 8 | Robert Julian |
| 9 | *Attorneys for Official Committee of Tort Claimants* |
| 10 | |
| 11 | |
| 12 | ** END OF ORDER ** |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# EXHIBIT 3

Robert A. Julian (SBN 99469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.442.8875
Facsimile:   310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| **-and-** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ORDERS AUTHORIZING PRODUCTION OF DOCUMENTS** |
| □ Affects PG& E Corporation | |
| □ Affects Pacific Gas and Electric Company | |
| ■ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Date: Time:  4:00 p.m. (Pacific Time) Place:  Robert Julian Baker & Hostetler LLP Levi's Place 1160 Battery Street East, Ste. 100 San Francisco, CA 94111 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The Official Committee of Tort Claimants (the "**TCC**"), by and through its undersigned counsel, hereby submits this Ex Parte Application Pursuant to Bankruptcy Rule 2004 for Orders Authorizing Production of Documents (the "**Application**") to secure orders requiring PG&E Corp. and Pacific Gas and Electric Company (collectively, the "**Debtors**" or "**PG&E**") to produce documents as set forth in **Appendix A**, attached hereto.

The TCC represents the largest stakeholders in the case, the victims of the fires caused by the Debtors' equipment and electrical system practices. The TCC contends that the Debtors' third-party contractors are or may be liable to the Debtors and the fire victims for the fire victims' losses and resulting claims against the Debtors, and that the Debtors are not pursuing such claims. The claims against the third-party contractors and recoveries from the contractors and their insurers may supplement the Debtors' assets and serve as a source of payment of the fire claims.

Bankruptcy Rule 2004 permits discovery of the acts, conduct, or property of the Debtors, or to any matter which may affect the administration of the estate, including the existence of potential claims for relief and sources of recovery against the Debtors' third-party contractors who are or may be liable to the Debtors and the fire victims for their losses. By this 2004 Application, the TCC seeks discovery of the identity of the third-party contractors who: (1) inspected, repaired, constructed, maintained and/or evaluated the electrical distribution lines or electrical transmission systems located at the area identified by Cal Fire as the origin of the Fire (as defined in Appendix A); (2) inspected, trimmed, removed, maintained, managed, and/or evaluated—or agreed to inspect, trim, remove, maintain, manage, and/or evaluate—the vegetation along the electrical distribution lines and electrical transmission systems at any area identified by Cal Fire as the area of origin for the Fires; and/or, (3) provided any Risk Assessment (as defined in Appendix A) with regard to any portion of the electrical distribution line or electrical distribution system, including towers, located at the area identified by Cal Fire as the origin of the Fires. The TCC also requests copies of any insurance policies that may provide coverage for claims arising from the work the third-party contractors performed. This discovery is proper and necessary for the TCC to fulfill its obligations to investigate and evaluate claims against the Debtors' third-party contractors and the existence of their insurance policies that the Debtors may

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

use to pay fire claims in this case. During the Continued § 341 Meeting of Creditors in this case that occurred on April 29, 2019, the Debtors' representative testified that the Debtors have not conducted any valuation of claims against third-parties arising out of the fires. Hence such an evaluation is necessary and the TCC is eager to evaluate and identify the claims against the third party contractors that will add value to the estate.

## TIME AND PLACE FOR PRODUCTION

The requested date of the document production is fifteen (15) days from entry of an order granting the Application. Bankruptcy Rule 2004(d) provides as follows:

> (d) Time and Place of Examination of Debtor. The court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates, whether within or without the district wherein the case is pending.

These dates are a reasonable time after the anticipated date of entry.

## NO PRIOR REQUEST FOR RELIEF

No previous application for the relief sought herein has been made to this Court. The TCC reserves the right to conduct further depositions and other discovery, or otherwise, as appropriate.

## CONCLUSION

On April 28, 2019, Counsel for the TCC held a pre-filing telephonic meet and confer with Debtors' counsel on this Application. In subsequent email correspondence, Debtors' counsel stated that the Debtors had no objection to Requests 1-24, inclusive of subparts, and Request 25(a), (b), and (f); and the Debtors objected to Request 25 (c), (d), (e), (g), and (h).

Accordingly, this Application is properly made on an ex parte basis under Local Rule 2004-1(a) and the TCC respectfully requests this Court immediately take notice of the Application and enter an order in substantially the form attached hereto as **Appendix B**, granting the relief requested herein, and such other and further relief as may be just.

1    Dated: April 30, 2019

2

3                                    BAKER & HOSTETLER LLP

4                                      By:    */s/ Robert A. Julian*
                                              Robert Julian

5                                      *Attorneys for The Official Committee of Tort*
6                                      *Claimants*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8 **<u>APPENDIX A</u>**
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Pursuant to Rules 2004 and the Northern District Bankruptcy Local Rules, the TCC requests

2    that Debtors produce the following documents, electronically stored information, and tangible

3    things in their possession, custody, or control for inspection within fifteen (15) days from entry of

4    an order granting the Application, and copying undersigned counsel at the offices of Baker &

5    Hostetler LLP, c/o Robert A. Julian, 1160 Battery Street East, Suite 100, San Francisco, CA 9411,

6    using the Definitions and Instructions below.

7                                          **DEFINITIONS**

8        1.     "And/Or" shall be construed either disjunctively or conjunctively as necessary to

9    bring within the scope of the discovery request all responses that might otherwise be construed to

10   be outside of its scope.

11       2.     The term "communication" means the transmittal of information (in the form of

12   facts, ideas, inquiries, or otherwise).

13       3.     The term "concerning" means relating to, referring to, describing, evidencing, or

14   constituting.

15       4.     The term "Debtors" means Debtor Pacific Gas & Electric Company, and also

16   Debtor PG&E Corporation, both collectively, and individually as a single Debtor.

17       5.     The terms "Document," "document," "electronically stored information," and

18   "tangible things" are defined to be synonymous in meaning and equal in scope to the usage of

19   these terms in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or

20   computerized data compilations, and specifically including e-mails.  A draft or non-identical copy

21   is a separate document within the meaning of this term.

22       6.     The term "Electrical Services" means to have inspected, constructed, repaired,

23   maintained, tested, removed, replaced, and/or designed any distribution and/or transmission line,

24   specifically including the actual lines, the poles and/or towers and any equipment located on any

25   pole and/or tower.

26       7.     The term "Fires" means the following fires, both collectively, and individually as a

27   Fire:

28           a.  Abode Fire

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1        b.   Atlas Fire

2        c.   Blue Fire

3        d.   Camp Fire

4        e.   Cascade Fire

5        f.   Cherokee Fire

6        g.   Honey Fire

7        h.   LaPorte Fire

8        i.   Lobo Fire

9        j.   Maacama Fire

10        k.   McCourtney Fire

11        l.   Norrbom Fire

12        m.  Nuns Fire

13        n.   Oakmont Fire

14        o.   Partrick Fire

15        p.   Pocket Fire

16        q.   Point Fire

17        r.   Potter Valley Fire

18        s.   Pressley Fire

19        t.   Redwood Fire

20        u.   Sullivan Fire

21        v.   Sulphur Fire

22        w.  Tubbs Fire

23        x.   37 Fire

24      8.    The term "Third-Party Contractor" means any individual (who is not an employee

25 of the Debtors) or entity that, on behalf of the Debtors, or at the request of the Debtors:

26        a.   inspected, repaired, constructed, maintained and/or evaluated electrical

27            distribution lines, specifically including, but not limited to the lines themselves

28            and/or all poles and equipment located on the poles, or electrical transmission

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

lines , specifically including the lines themselves, the towers or poles, and all equipment located on the towers or poles, located within the area identified by Cal Fire as the origin of the relevant Fire(s);

    b.  inspected, trimmed, removed, maintained, managed, and/or evaluated—or agreed to inspect, trim, remove, maintain, manage, and/or evaluate—the vegetation along the electrical distribution lines, specifically including, but not limited to the lines themselves and/or all poles and equipment located on the poles, or electrical transmission lines , specifically including the lines themselves, the towers or poles, and all equipment located on the towers or poles, located within the area identified by Cal Fire as the origin of the relevant Fire(s); and

    c.  provided any Risk Assessment (as defined below) with regard to any portion of the electrical distribution lines, specifically including, but not limited to the lines themselves and/or all poles and equipment located on the poles, or electrical transmission lines, specifically including the lines themselves, the towers or poles, and all equipment located on the towers or poles, located within the area identified by Cal Fire as the origin of the relevant Fire(s).

9.    The term "Risk Assessment" means any opinions, information and studies used to prioritize any work, replacement, repair, maintenance, and construction with regard to PG&E facilities.

10.    The term "Vegetation Management Services" includes any pre-inspection, tree trimming, tree removal, quality assurance inspections, quality control inspections, and/or other work relating to the identification of any tree which posed a threat to any PG&E electrical line.

<u>**INSTRUCTIONS FOR DOCUMENT PRODUCTION REQUESTS**</u>

Federal Rules of Civil Procedure 26–37, made applicable to this proceeding pursuant to Bankruptcy Rules 7026–7037, are hereby incorporated by reference and apply to each of the following instructions:

Case: 19-30088    Doc# 3206-2    Filed: 07/25/19    Entered: 07/25/19 12:39:08    Page 24
of 56

1          1.        All Documents shall be identified by the Request(s) to which they are primarily

2 responsive or be produced as they are maintained in the usual course of business.

3          2.        Produce all Documents and all other materials described below in Your actual or

4 constructive possession, custody, or control, including in the possession, custody, or control of a

5 current or former employees, officers, directors, agents, agents' representatives, consultants,

6 contractors, vendors, or any fiduciary or other third parties, wherever those Documents and

7 materials are maintained, including on personal computers, PDAs, wireless devices, or web-based

8 email systems such as Gmail, Yahoo, etc.

9          3.        You must produce all Documents in Your possession, custody, or control, whether

10 maintained in electronic or paper form and whether located on hardware owned and maintained by

11 You or hardware owned and/or maintained by a third-party that stores data on Your behalf. You

12 must produce all such Documents even if they were deleted or in draft form. Without limitation,

13 hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers;

14 cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile

15 storage devices, such as thumb or external hard drives. Electronically stored Documents include

16 any computerized data or content stored on electromagnetic media. Without limitation, types of

17 electronically stored Documents include email, voicemail, instant messages, intranet and internet

18 system data, telephone and cellular telephone calling records, data compilations, spreadsheets,

19 word processing Documents, images, databases, digital photocopier memory, and any other

20 information stored in memory storage devices.

21          4.        Produce the original or duplicate, as such terms are defined by Rule 1001 of the

22 Federal Rules of Evidence, of each Document requested together with all non-identical copies and

23 drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the

24 same manner as the original.

25          5.        Documents not otherwise responsive to these Requests should be produced: (i) if

26 such Documents mention, discuss, refer to, explain, or concern one or more Documents that are

27 called for by these Requests; (ii) if such Documents are attached to, enclosed with, or accompany

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

Documents called for by these Requests; or (iii) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

6. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

7. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

8. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request or part thereof, for each such Document, You must:

   (a) Identify the type, title and subject matter of the Document;

   (b) State the place, date, and manner of preparation of the Document;

   (c) Identify all authors, addressees, and recipients of the Document, including information about such Persons to assess the privilege asserted; and

   (d) Identify the legal privilege(s) and the factual basis for the claim.

9. Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 8 above must be provided.

10. To the extent a Document sought herein was at one time, but is no longer, in your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of. In each instance, Identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, Identify each Person having knowledge of the circumstances of the disposition, and Identify each Person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests are to be identified and produced.

- 5 -

# MANNER OF PRODUCTION

All Documents produced to the Trustee shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

1.  <u>Database load files and production media structure</u>: Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images. Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder. If any of the Documents produced in response to these Requests are designated as confidential pursuant to the Litigation Protective Order, in addition to marking the Documents with the brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the Document has been designated as confidential, as well as native file loading/linking information (where applicable).

2.  <u>Electronic Documents and data, generally</u>: Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

as to allow the Trustee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

3. _Emails and attachments, and other email account-related Documents_: All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Trustee.

4. _Documents and data created or stored in or by structured electronic databases_: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Trustee to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

(a) XML format file(s);

(b) Microsoft SQL database(s);

(c) Access database(s); and/or

(d) fixed or variable length ASCII delimited files.

5. _Spreadsheets, multimedia, and non-standard file types_: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce

- 7 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  those files in native format subject to the other requirements listed herein. Native files may be

2  produced within a separate root-level folder structure on deliverable media entitled "Natives."

3        6.    "Other" electronic Documents: All other Documents and accompanying metadata

4  and embedded data created or stored in unstructured files generated by commercially available

5  software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia)

6  such as, but not limited to, word processing files (such as Microsoft Word), image files (such as

7  Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text

8  format in the order the files are or were stored in the ordinary course of business.

9        7.    Paper Documents: Documents originally created or stored on paper shall be

10  produced in tiff format. Relationships between Documents shall be identified within the Relativity

11  .dat file utilizing document identifier numbers to express parent Document/child attachment

12  boundaries, folder boundaries, and other groupings. In addition, the searchable text of each

13  Document shall be provided as a multi-page text file as provided for by these Requests.

14        **LIST OF DOCUMENT REQUESTED FOR PRODUCTION**

15      1.    For the **Abode Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019,

16          separately label and produce:

17          a)  Each and every written agreement between PG&E and any third person or

18              entity for the performance of any Vegetation Management Services in an

19              area which includes the area identified by Cal Fire as the area of origin of

20              the Abode Fire.

21          b)  Each and every written agreement between PG&E and any third person or

22              entity for the performance of any Electrical Service in an area which includes

23              the area identified by Cal Fire as the area of origin of the Abode Fire.

24          c)  Each insurance policy, issued to any such third person or entity identified in

25              subparts (a) and (b) of the above Request, which names any debtor as an

26              insured.

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.      For the **Atlas Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

     a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the Atlas Fire.

     b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Atlas Fire.

     c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

3.      For the **Blue Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

     a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the Blue Fire.

     b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Blue Fire.

     c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

4.      For the **Camp Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

     a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an

- 9 -

area which includes the area identified by Cal Fire as the area of origin of the Camp Fire.

b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Camp Fire.

c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

5. For the **Cascade Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the Cascade Fire.

b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Cascade Fire.

c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

6. For the **Cherokee Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the Cherokee Fire.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -

b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Cherokee Fire.

c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

7. For the **Honey Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the Honey Fire.

b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Honey Fire.

c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

8. For the **LaPorte Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the LaPorte Fire.

b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the LaPorte Fire.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1           c)   Each insurance policy, issued to any such third person or entity identified in

2              subparts (a) and (b) of the above Request, which names any debtor as an

3              insured.

4  9.     For the **Lobo Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019,

5       separately label and produce:

6           a)   Each and every written agreement between PG&E and any third person or

7              entity for the performance of any Vegetation Management Services in an

8              area which includes the area identified by Cal Fire as the area of origin of

9              the Lobo Fire.

10          b)   Each and every written agreement between PG&E and any third person or

11             entity for the performance of any Electrical Service in an area which includes

12             the area identified by Cal Fire as the area of origin of the Lobo Fire.

13          c)   Each insurance policy, issued to any such third person or entity identified in

14             subparts (a) and (b) of the above Request, which names any debtor as an

15             insured.

16 10.    For the **Maacama Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019,

17      separately label and produce:

18          a)   Each and every written agreement between PG&E and any third person or

19             entity for the performance of any Vegetation Management Services in an

20             area which includes the area identified by Cal Fire as the area of origin of

21             the Maacama Fire.

22          b)   Each and every written agreement between PG&E and any third person or

23             entity for the performance of any Electrical Service in an area which includes

24             the area identified by Cal Fire as the area of origin of the Maacama Fire.

25          c)   Each insurance policy, issued to any such third person or entity identified in

26             subparts (a) and (b) of the above Request, which names any debtor as an

27             insured.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 12 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11. For the **McCourtney Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

    a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the McCourtney Fire.

    b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the McCourtney Fire.

    c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

12. For the **Norrbom Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

    a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the Norrbom Fire.

    b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Norrbom Fire.

    c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

13. For the **Nuns Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

    a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an

- 13 -

| | |
|---|---|
| 1 | area which includes the area identified by Cal Fire as the area of origin of |
| 2 | the Nuns Fire. |
| 3 | b) Each and every written agreement between PG&E and any third person or |
| 4 | entity for the performance of any Electrical Service in an area which includes |
| 5 | the area identified by Cal Fire as the area of origin of the Nuns Fire. |
| 6 | c) Each insurance policy, issued to any such third person or entity identified in |
| 7 | subparts (a) and (b) of the above Request, which names any debtor as an |
| 8 | insured. |
| 9 | 14. For the **Oakmont Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, |
| 10 | separately label and produce: |
| 11 | a) Each and every written agreement between PG&E and any third person or |
| 12 | entity for the performance of any Vegetation Management Services in an |
| 13 | area which includes the area identified by Cal Fire as the area of origin of |
| 14 | the Oakmont Fire. |
| 15 | b) Each and every written agreement between PG&E and any third person or |
| 16 | entity for the performance of any Electrical Service in an area which includes |
| 17 | the area identified by Cal Fire as the area of origin of the Oakmont Fire. |
| 18 | c) Each insurance policy, issued to any such third person or entity identified in |
| 19 | subparts (a) and (b) of the above Request, which names any debtor as an |
| 20 | insured. |
| 21 | 15. For the **Partrick Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, |
| 22 | separately label and produce: |
| 23 | a) Each and every written agreement between PG&E and any third person or |
| 24 | entity for the performance of any Vegetation Management Services in an |
| 25 | area which includes the area identified by Cal Fire as the area of origin of |
| 26 | the Partrick Fire. |
| 27 | |
| 28 | |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1        b) Each and every written agreement between PG&E and any third person or

2        entity for the performance of any Electrical Service in an area which includes

3        the area identified by Cal Fire as the area of origin of the Partrick Fire.

4        c) Each insurance policy, issued to any such third person or entity identified in

5        subparts (a) and (b) of the above Request, which names any debtor as an

6        insured.

7    16.    For the **Pocket Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019,

8    separately label and produce:

9        a) Each and every written agreement between PG&E and any third person or

10       entity for the performance of any Vegetation Management Services in an

11       area which includes the area identified by Cal Fire as the area of origin of

12       the Pocket Fire.

13       b) Each and every written agreement between PG&E and any third person or

14       entity for the performance of any Electrical Service in an area which includes

15       the area identified by Cal Fire as the area of origin of the Pocket Fire.

16       c) Each insurance policy, issued to any such third person or entity identified in

17       subparts (a) and (b) of the above Request, which names any debtor as an

18       insured.

19    17.    For the **Point Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019,

20    separately label and produce:

21       a) Each and every written agreement between PG&E and any third person or

22       entity for the performance of any Vegetation Management Services in an

23       area which includes the area identified by Cal Fire as the area of origin of

24       the Point Fire.

25       b) Each and every written agreement between PG&E and any third person or

26       entity for the performance of any Electrical Service in an area which includes

27       the area identified by Cal Fire as the area of origin of the Point Fire.

28

Case: 19-30088   Doc# 3206-2   Filed: 07/25/19   Entered: 07/25/19 19:39:38   Page 36
of 56
Case: 19-30088   Doc# 3206-7   Filed: 07/25/19   Entered: 07/30/19 12:23:18   Page 26

1         c) Each insurance policy, issued to any such third person or entity identified in

2           subparts (a) and (b) of the above Request, which names any debtor as an

3           insured.

4    18.   For the **Potter Valley Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019,

5        separately label and produce:

6         a) Each and every written agreement between PG&E and any third person or

7           entity for the performance of any Vegetation Management Services in an

8           area which includes the area identified by Cal Fire as the area of origin of

9           the Potter Valley Fire.

10        b) Each and every written agreement between PG&E and any third person or

11          entity for the performance of any Electrical Service in an area which includes

12          the area identified by Cal Fire as the area of origin of the Potter Valley Fire.

13        c) Each insurance policy, issued to any such third person or entity identified in

14          subparts (a) and (b) of the above Request, which names any debtor as an

15          insured.

16   19.   For the **Pressley Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019,

17       separately label and produce:

18        a) Each and every written agreement between PG&E and any third person or

19          entity for the performance of any Vegetation Management Services in an

20          area which includes the area identified by Cal Fire as the area of origin of

21          the Pressley Fire.

22        b) Each and every written agreement between PG&E and any third person or

23          entity for the performance of any Electrical Service in an area which includes

24          the area identified by Cal Fire as the area of origin of the Pressley Fire.

25        c) Each insurance policy, issued to any such third person or entity identified in

26          subparts (a) and (b) of the above Request, which names any debtor as an

27          insured.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20. For the **Redwood Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

    a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the Redwood Fire.

    b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Redwood Fire.

    c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

21. For the **Sullivan Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

    a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the Sullivan Fire.

    b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Sullivan Fire.

    c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

22. For the **Sulphur Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

    a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an

area which includes the area identified by Cal Fire as the area of origin of the Sulphur Fire.

    b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Sulphur Fire.

    c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

23.    For the **Tubbs Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

    a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the Tubbs Fire.

    b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the Tubbs Fire.

    c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

24.    For the **37 Fire**, and for <u>each</u> year beginning in 2014 and ending in 2019, separately label and produce:

    a) Each and every written agreement between PG&E and any third person or entity for the performance of any Vegetation Management Services in an area which includes the area identified by Cal Fire as the area of origin of the 37 Fire.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 18 -

b) Each and every written agreement between PG&E and any third person or entity for the performance of any Electrical Service in an area which includes the area identified by Cal Fire as the area of origin of the 37 Fire.

c) Each insurance policy, issued to any such third person or entity identified in subparts (a) and (b) of the above Request, which names any debtor as an insured.

25. For <u>each</u> Third-Party Contractor who performed work on <u>any</u> portion of the **Caribou-Palermo Line**, which included Tower 22/227 from 2009 through 2019, separately label, <u>by Third-Party Contractor</u>, and produce:

a) All agreements and contracts between the Debtor(s) and each Third-Party Contractor, including without limitation, any agreement or contract relating to indemnity, insurance, or liability.

b) Each agreement between any Debtor and any Third-Party Contractor which required the inspection of the C-Hook on Tower 22/227, which the Debtors have identified as having failed on November 8, 2018;

c) To the extent not set forth in the documents responsive to Request 2(a), all documents that describe the scope of services the Third-Party Contractor agreed to provide to the Debtor(s);

d) To the extent not set forth in the documents responsive to Request 2(a) or 2(b), all documents that describe the work performed by the Third-Party Contractor;

e) All documents that contain the analyses, findings, summaries, impressions, recommendations, and/or other work-product of each of the Third-Party Contractors, including without limitation any Risk Assessments.

f) All insurance policies that may provide coverage for claims arising from the work of each of the Third-Party Contractors.

g) Each writing which documents any inspection performed of Tower 22/227 at anytime from January 1, 2009 to and including April 24, 2019.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      h) Each writing which sets forth the result of any inspection performed on

2           Tower 22/227 at anytime from January 1, 2009 to and including April 24,

3           2019.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 20 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **APPENDIX B**

1  Robert A. Julian (SBN 99469)
   Cecily A. Dumas (SBN 111449)
2  BAKER & HOSTETLER LLP
   1160 Battery Street, Suite 100
3  San Francisco, CA 94111
   Telephone:    628.208.6434
4  Facsimile:    310.820.8859
   Email: rjulian@bakerlaw.com
5  Email: cdumas@bakerlaw.com

6  Eric E. Sagerman (SBN 155496)
   Lauren T. Attard (SBN 320898)
7  BAKER & HOSTETLER LLP
   11601 Wilshire Blvd., Suite 1400
8  Los Angeles, CA 90025-0509
   Telephone:   310.442.8875
9  Facsimile:   310.820.8859
   Email: esagerman@bakerlaw.com
10 Email: lattard@bakerlaw.com

11 *Counsel for Official Committee of Tort Claimants*

12              **UNITED STATES BANKRUPTCY COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                 **SAN FRANCISCO DIVISION**

| 15 **In re:** | Bankruptcy Case<br>No. 19-30088 (DM) |
|---|---|
| 16 **PG&E CORPORATION** | |
| 17    **-and-** | Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| 18 **PACIFIC GAS AND ELECTRIC**<br>**COMPANY,** | |
| 19             **Debtors.** | **ORDER GRANTING THE EX PARTE**<br>**APPLICATION OF THE OFFICIAL** |
| 20 ☐ Affects PG&E Corporation | **COMMITTEE OF TORT CLAIMANTS**<br>**PURSUANT TO FEDERAL RULE OF**<br>**BANKRUPTCY PROCEDURE 2004 FOR** |
| 21 ☐ Affects Pacific Gas and Electric Company | **ORDERS AUTHORIZING**<br>**PRODUCTION OF DOCUMENTS** |
| 22 ■ Affects both Debtors | |
| 23 *All papers shall be filed in the Lead Case,*<br>*No. 19-30088 (DM)* | |
| 24 | |

26      The Court, having reviewed the Ex Parte Application of the Official Committee of Tort

27 Claimants Pursuant to Bankruptcy Rule 2004 for Orders Authorizing Production of Documents

28 filed on April 30, 2019, and after due deliberation and sufficient cause appearing therefor,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1          IT IS HEREBY ORDERED THAT:

2          1.        The Application is granted, as provided herein.

3          2.        The Debtors are directed to produce to the TCC the documents and information

4    described in Appendix A to the Application, without service of a subpoena, fifteen (15) days from

5    entry of this Order, in accordance with the Instructions set forth therein.

6

7                                        **END OF ORDER**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 4

1  Robert A. Julian (SBN 99469)
   Cecily A. Dumas (SBN 111449)
2  BAKER & HOSTETLER LLP
   1160 Battery Street, Suite 100
3  San Francisco, CA 94111
   Telephone:    628.208.6434
4  Facsimile:    310.820.8859
   Email: rjulian@bakerlaw.com
5  Email: cdumas@bakerlaw.com

6  Eric E. Sagerman (SBN 155496)
   Lauren T. Attard (SBN 320898)
7  BAKER & HOSTETLER LLP
   11601 Wilshire Blvd., Suite 1400
8  Los Angeles, CA 90025-0509
   Telephone:   310.442.8875
9  Facsimile:    310.820.8859
   Email: esagerman@bakerlaw.com
10 Email: lattard@bakerlaw.com

11  *Counsel for Official Committee of Tort Claimants*

12  **UNITED STATES BANKRUPTCY COURT**

13  **NORTHERN DISTRICT OF CALIFORNIA**

14  **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 15 **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| 16 **PG&E CORPORATION** | |
| 17    -and- | Chapter 11 (Lead Case) (Jointly Administered) |
| 18 **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| 19                   **Debtors.** | **EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ORDERS AUTHORIZING PRODUCTION OF DOCUMENTS** |
| 20 ☐ Affects PG&E Corporation | |
| 21 ☐ Affects Pacific Gas and Electric Company | |
| 22 ■ Affects both Debtors | |
| 23 *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Date:<br>Time:   4:00 p.m. (Pacific Time)<br>Place:  Robert Julian<br>       Baker & Hostetler LLP |
| 24 | Levi's Place |
| 25 | 1160 Battery Street East, Ste. 100<br>San Francisco, CA 94111 |
| 26 | |

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1     The Official Committee of Tort Claimants (the "**TCC**"), by and through its undersigned

2 counsel, hereby submits this Ex Parte Application Pursuant to Bankruptcy Rule 2004 for Orders

3 Authorizing Production of Documents (the "**Application**") to secure orders requiring PG&E

4 Corp. and Pacific Gas and Electric Company (collectively, the "**Debtors**" or "**PG&E**") to

5 produce documents as set forth below.

6     The TCC represents the largest stakeholders in the case, the victims of the fires caused by

7 the Debtors' equipment and electrical system practices.  The Debtors' insurance coverage is a key

8 source of payment of the fire claims.

9     Bankruptcy Rule 2004 permits discovery of the acts, conduct, or property of the Debtors,

10 or to any matter which may affect the administration of the estate, including the existence and

11 extent of sources of recovery for the fire victims.  By this 2004 Application, the TCC seeks copies

12 of any insurance policies that may provide coverage for claims arising from the fires caused by

13 Debtors. This discovery is proper and necessary for the TCC to fulfill its obligations to

14 investigate and evaluate the insurance policies that the Debtors may use to pay fire claims in this

15 case.

16                    **LIST OF DOCUMENTS REQUESTED FOR PRODUCTION**

17     1.     Complete copies of all insurance policies (including any and all declarations,

18 definitions, exhibits, endorsements, riders, exclusions and amendments) that have provided or

19 may provide coverage for any claim against the Debtors arising from or concerning the Northern

20 California Wildfires. "Northern California Wildfires" shall have the same meaning as used by the

21 Debtors in the Bar Date Motion [Dkt # 1784], pp. 8-9.

22     2.     Complete copies of all insurance policies (including any and all declarations,

23 definitions, exhibits, endorsements, riders, exclusions and amendments) that have provided or

24 may provide coverage for any claim against the Debtors arising from or concerning the Ghost

25 Ship Fire.  "Ghost Ship Fire" shall mean the fire that occurred on December 2, 2016, at the

26 building known as the "Ghost Ship," located at 1315 31st Avenue in the City of Oakland, County

27 of Alameda, State of California.

28

# TIME AND PLACE FOR PRODUCTION

The requested date of the document production is fifteen (15) days from entry of an order

granting the Application. Bankruptcy Rule 2004(d) provides as follows:

> (d) Time and Place of Examination of Debtor. The court may for cause shown and
> on terms as it may impose order the debtor to be examined under this rule at any
> time or place it designates, whether within or without the district wherein the case
> is pending.

These dates are a reasonable time after the anticipated date of entry. Service of the Application is

effective via the Court's electronic notice.

# NO PRIOR REQUEST FOR RELIEF

No previous application for the relief sought herein has been made to this Court. The

TCC reserves the right to conduct further depositions and other discovery, or otherwise, as

appropriate.

# CONCLUSION

Since March 5, 2019, Counsel for the TCC has made multiple informal requests for the

insurance policies described above. But to date, Debtors have provided only summaries of a

subset of the relevant policies.

Accordingly, this Application is properly made on an ex parte basis under Local Rule

2004-1(a) and the TCC respectfully requests this Court immediately take notice of the

Application and enter an order in substantially the form attached hereto as **Appendix A**, granting

the relief requested herein, and such other and further relief as may be just.


Dated: June 7, 2019


BAKER & HOSTETLER LLP

By:     */s/ Robert A. Julian*
      Robert Julian

*Attorneys for The Official Committee of Tort
Claimants*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7
**APPENDIX A**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Robert A. Julian (SBN 99469)
   Cecily A. Dumas (SBN 111449)
2  BAKER & HOSTETLER LLP
   1160 Battery Street, Suite 100
3  San Francisco, CA 94111
   Telephone:    628.208.6434
4  Facsimile:    310.820.8859
   Email: rjulian@bakerlaw.com
5  Email: cdumas@bakerlaw.com

6  Eric E. Sagerman (SBN 155496)
   Lauren T. Attard (SBN 320898)
7  BAKER & HOSTETLER LLP
   11601 Wilshire Blvd., Suite 1400
8  Los Angeles, CA 90025-0509
   Telephone:   310.442.8875
9  Facsimile:   310.820.8859
   Email: esagerman@bakerlaw.com
10 Email: lattard@bakerlaw.com

11 *Counsel for Official Committee of Tort Claimants*

12               **UNITED STATES BANKRUPTCY COURT**

13               **NORTHERN DISTRICT OF CALIFORNIA**

14                  **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 15 **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| 16 **PG&E CORPORATION** | |
| 17   **-and-** | Chapter 11 (Lead Case) (Jointly Administered) |
| 18 **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| 19                          **Debtors.** | **ORDER GRANTING THE EX PARTE APPLICATION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 FOR ORDERS AUTHORIZING PRODUCTION OF DOCUMENTS** |
| 20 □ Affects PG& E Corporation | |
| 21 □ Affects Pacific Gas and Electric Company | |
| 22 ■ Affects both Debtors | |
| 23 *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | |
| 24 | |

25

26         The Court, having reviewed the Ex Parte Application of the Official Committee of Tort

27 Claimants Pursuant to Bankruptcy Rule 2004 for Orders Authorizing Production of Documents

28 filed on May 9, 2019, and after due deliberation and sufficient cause appearing therefor,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    IT IS HEREBY ORDERED THAT:

2    1.    The Application is granted, as provided herein.

3    2.    The Debtors are directed to produce to the TCC the following documents and

4    information, without service of a subpoena, fifteen (15) days from entry of this Order:

5         a.  Complete copies of all insurance policies (including any and all declarations,

6             definitions, exhibits, endorsements, riders, exclusions and amendments) that have

7             provided or may provide coverage for any claim against the Debtors arising from

8             or concerning the Northern California Wildfires. "Northern California Wildfires"

9             shall have the same meaning as used by the Debtors in the Bar Date Motion [Dkt

10            # 1784], pp. 8-9.

11        b.  Complete copies of all insurance policies (including any and all declarations,

12            definitions, exhibits, endorsements, riders, exclusions and amendments) that have

13            provided or may provide coverage for any claim against the Debtors arising

14            from or concerning the Ghost Ship Fire.  "Ghost Ship Fire" shall mean the fire

15            that occurred on December 2, 2016, at the building known as the "Ghost Ship,"

16            located at 1315 31st Avenue in the City of Oakland, County of Alameda, State of

17            California.

18

19                              **END OF ORDER**

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO



1 | Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
2 | BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
3 | San Francisco, CA 94111
Telephone:    628.208.6434
4 | Facsimile:     310.820.8859
Email: rjulian@bakerlaw.com
5 | Email: cdumas@bakerlaw.com

Signed and Filed: June 12, 2019

_Cennis Montal_

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

6 | Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
7 | BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
8 | Los Angeles, CA 90025-0509
Telephone:    310.442.8875
9 | Facsimile:     310.820.8859
Email: esagerman@bakerlaw.com
10 | Email: lattard@bakerlaw.com

11 | *Counsel for Official Committee of Tort Claimants*

12 | ## UNITED STATES BANKRUPTCY COURT

13 | ## NORTHERN DISTRICT OF CALIFORNIA

14 | ## SAN FRANCISCO DIVISION

15 | **In re:**

16 | **PG&E CORPORATION**

17 |     **-and-**

18 | **PACIFIC GAS AND ELECTRIC**
**COMPANY,**
19 |               **Debtors.**

20 | □ Affects PG&E Corporation

21 | □ Affects Pacific Gas and Electric Company

22 | ■ Affects both Debtors

23 | *All papers shall be filed in the Lead Case,
No. 19-30088 (DM)*

24 |

Bankruptcy Case
No. 19-30088 (DM)

Chapter 11
(Lead Case)
(Jointly Administered)

**ORDER GRANTING THE EX PARTE
APPLICATION OF THE OFFICIAL
COMMITTEE OF TORT CLAIMANTS
PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 2004 FOR
ORDERS AUTHORIZING
PRODUCTION OF DOCUMENTS**

25 |

26 |       The Court, having reviewed the Ex Parte Application of the Official Committee of Tort

27 | Claimants Pursuant to Bankruptcy Rule 2004 for Orders Authorizing Production of Documents

28 | filed on May 9, 2019, and after due deliberation and sufficient cause appearing therefor,

- 1 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      IT IS HEREBY ORDERED THAT:

2      1.      The Application is granted, as provided herein.

3      2.      The Debtors are directed to produce to the TCC the following documents and

4 information, without service of a subpoena, fifteen (15) days from entry of this Order:

5            a.    Complete copies of all insurance policies (including any and all declarations,

6               definitions, exhibits, endorsements, riders, exclusions and amendments) that have

7               provided or may provide coverage for any claim against the Debtors arising from

8               or concerning the Northern California Wildfires. "Northern California Wildfires"

9               shall have the same meaning as used by the Debtors in the Bar Date Motion [Dkt

10               # 1784], pp. 8-9.

11            b.    Complete copies of all insurance policies (including any and all declarations,

12               definitions, exhibits, endorsements, riders, exclusions and amendments) that have

13               provided or may provide coverage for any claim against the Debtors arising

14               from or concerning the Ghost Ship Fire. "Ghost Ship Fire" shall mean the fire

15               that occurred on December 2, 2016, at the building known as the "Ghost Ship,"

16               located at 1315 31st Avenue in the City of Oakland, County of Alameda, State of

17               California.

18

19                              **END OF ORDER**

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 5

| From: | Julian, Robert |
|---|---|
| To: | Tobias S. Keller , Esq. (tkeller@kellerbenvenutti.com) |
| Cc: | Dumas, Cecily; Rose, Jorian L.; Woltering, Catherine E.; Workman, Donald A.; Goodman, Eric R.; Sagerman, Eric E. |
| Subject: | Request for insurance policy coverage terms, D & O policies and derivative complaints |
| Date: | Tuesday, March 5, 2019 6:19:36 PM |

Toby,

On behalf of the Tort Claimants Committee, as its counsel, this email requests Pacific Gas and Electric Company and PG&E Corporation (the "Debtors") to produce to the Committee's counsel within the next two weeks the following insurance coverage information and policies, and derivative complaints, without a Rule 2004 examination order, or to inform us this week if the Debtors would respond to such a request only in connection with formal discovery:

1. A copy of the Debtors' amended and supplemental response to the plaintiffs' form interrogatory 4.1, which identifies potential insurance coverage for claims against the Debtors and their contractors arising out of the 2017 North Bay Fires, served on the plaintiffs' lead counsel in California North Bay Fire Cases, CA JCCP 4995.
2. A written identification of the policies of insurance that may provide coverage for any type of claims against the Debtors arising out of the 2015 Butte Fire, the 2016 Ghost Ship Fire, and the 2018 Camp Fire:  the name of the insurer, policy number, type of coverage, term of insurance, and limits of insurance.
3. A written identification of the policies of insurance that may provide coverage for any type of claims against the Debtors' contractors and service providers who provided any construction, maintenance and/or inspection of the Debtors' electrical distribution and transmission lines and/or electrical equipment located in the areas of the 2015 Butte Fire, the 2016 Ghost Ship Fire, and the 2018 Camp Fire:  the name of the insurer, policy number, type of coverage, term of insurance, and limits of insurance.
4. Copies of the policies of insurance that may provide coverage of the Debtors' directors and officers for alleged wrongful acts occurring at any point during the period January 1, 2014 through March 5, 2019.
5. A copy of each derivative complaint allegedly filed on behalf of one or both of the Debtors in an action that is pending.

Thank you,

**Robert Julian**
Partner
_____

BakerHostetler
Levi's Plaza
1160 Battery Street East | Suite 100
San Francisco, CA 94111
T +1. 310.442.8887
F +1. 310 .820.8859

rjulian@bakerlaw.com

bakerlaw.com

