1

Jennifer Machlin Cecil (SBN#294806)
Jcecil@winston.com
2
WINSTON & STRAWN LLP
101 California Street, 35th Floor
3
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
4
Facsimile: (415) 591-1400
5

6
David Neier (*admitted pro hac vice*)
dneier@winston.com
7
WINSTON & STRAWN LLP
200 Park Avenue, 40th Floor
8
New York, NY 10166-4193
Telephone: (212) 294-6700
9
Facsimile: (212) 294-4700

10
*Attorneys for Global Ampersand LLC*

11

**UNITED STATES BANKRUPTCY COURT**
12

**NORTHERN DISTRICT OF CALIFORNIA**
13

**SAN FRANCISCO DIVISION**
14

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19 - 30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 (Lead Case) *(Jointly Administered)* |
| **-and-** | **RESPONSE OF CLAIMANT GLOBAL AMPERSAND LLC TO OBJECTION OF DEBTORS TO CLAIM ASSERTED BY CLAIMANT PURSUANT TO 11 U.S.C. § 503(b)(9)** |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | |
| ☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | **Hearing Date:** **August 14, 2019**<br>**Time:** **9:30 a.m. (P.T.)**<br><br>Courtroom: Hon. Dennis Montali<br>450 Golden Gate A venue<br>16th Floor, Courtroom 17<br>San Francisco, CA 94102<br><br>**Objections Due: July 31, 2019, 4:00 (P.T.)** |

27

28

Global Ampersand LLC ("Global") responds to the *Debtors' First Omnibus Report and Objection to Claims Asserted pursuant to 11 U.S.C. § 503(B)(9)* dated July 8, 2019 [Docket No. 2896] (the "Objection") and respectfully states as follows:[1]

## I.  BACKGROUND

Global Ampersand is a small power producer that supplies renewable power pursuant to power purchase agreements (the "PPAs") to the Utility from two biomass facilities located in Chowchilla and El Nido, California.  Pursuant to the PPAs, Global is restricted from selling power from these facilities to anyone other than the Utility.

On January 25, 2019, Global received a single prepayment from the Utility of $1,572,460.33 (the "Prepayment") for power that has already been supplied, but prior to the date when payment for that power would be due under the PPAs, and for power to be supplied during the remaining days of January 2019.  At the end of January, based on the power actually supplied, the amount that should have been paid to Global was $1,587,658.08.  In other words, the Debtors underpaid Global by $15,197.75.[2]

Subsequent to the Petition Date, the Debtors decided to "allocate" the prepetition January Prepayment (i) between the El Nido and Chowchilla facilities and (ii) between prepetition and postpetition power supplied to the Utility.  As a result of the Debtors' allocation method, the Debtors determined that it should deduct $177,274.85 from amounts paid to be paid postpetition to Global for February electricity.  In other words, subsequent to the Petition Date, the Utility determined to use the prepetition Prepayment to cover postpetition deliveries, and to "allocate" the prepetition Prepayment

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.  Global is filing a separate motion allowing it to file the exhibits under seal as they contain information that the Debtors consider confidential commercial pricing information.

[2] *See* Exhibit 2 – PG&E Email dated February 26, 2019 in which Debtors calculate the January 2019 net position of $125,460.82 (due to Global) for El Nido and ($110,263.07) for Chowchilla.  According to the Debtors, Global was due $15,197.75, but instead the Debtors stated that they would reduce Global's postpetition February payment by applying the Prepayment amounts of $110,263.07 and $67,011.78.

between the Chowchilla and El Nido. This increased Global's prepetition claim from $15,197.75 to $192,472.60. Below is a chart that was prepared by the Debtors illustrating the results of Debtors' "allocation" method:

| El Nido | Total Amount | 1/1/19 - 1/28/19 | 1/29/19 - 1/31/19 |
|---|---|---|---|
| 2019 January Actuals | $817,915.84 | $817,915.84 | $0.00 |
| January 2019 Pre-payment | $692,455.02 | $625,443.24 | $67,011.78 |
| January 2019 Net Position | $125,460.82 | $192,472.60 | ($67,011.78) |

| Chowchilla | Total Amount | 1/1/19 - 1/28/19 | 1/29/19 - 1/31/19 |
|---|---|---|---|
| 2019 January Actuals | $769,742.24 | $679,567.69 | $90,174.54 |
| January 2019 Pre-payment | $880,005.31 | $794,843.51 | $85,161.80 |
| January 2019 Net Position | ($110,263.07) | ($115,275.82) | $5,012.74 |

*See* Exhibit 2.

Although nothing in the PPAs allows the Utility to allocate payments among the facilities with different PPAs in this manner, as a result of the "allocation" the Utility made "adjustments" to its postpetition February payments to Global of $110,263.07[3] was attributed to the Chowchilla January prepetition Prepayment and $67,011.78[4] was attributed to the El Nido prepetition Prepayment. As a result, even though Global had received the Prepayment, Global's net position was transformed into a prepetition amount owed to it of $192,472.60 for electricity delivered prepetition to Debtors from the El Nido facility.[5]

According to Debtors' own calculations, Global delivered $817,915.84 worth of electricity during the period from January 1, 2019 to January 28, 2019, but the Debtors only paid Global

---

[3] *See* Exhibit 3 – Chowchilla February 2019 CP invoice reconciliation of the Chowchilla facility prepared by Debtors. The reconciliation shows that Debtors deducted $110,263.07 from the February postpetition payment as an adjustment for the prepetition January 2019 period. See Summary Tab, row 26, column E.

[4] *See* Exhibit 4 El Nido February 2019 CP invoice reconciliation of the El Nido facility prepared by Debtors. The reconciliation shows that Debtors deducted $67,011.78 from the February postpetition payment as an adjustment for prepetition January 2019 period. See Summary Tab, row 26, column E.

[5] *See* Exhibit 2 email dated February 26, 2019 from PG&E employee Jarreau Tuiasosopo showing the net amount due for electricity delivered pre-petition by El Nido of $192,472.60.

$625,443.24 for that same electricity leaving a net balance of $192,472.60.[6]  As a result Global filed a timely 503(b)(9) claim in order to recover full payment for electricity delivered twenty days prior to Petition Date.  *See* Claim No. 1842.

## II.    Objection

In the first PG&E bankruptcy, the District Courts for the Northern District of California affirmed the decision of this Court that electricity is a "good".  *See Puget Sound Energy, Inc. v. Pacific Gas and Electric Company (In re Pacific Gas and Electric Company)*, 271 B.R. 626, 640 (N.D. Cal. 2002) (citing numerous cases in support of conclusion that electricity is a good).  The conclusion of the District Court that electricity is a good was reached at the request of PG&E.  PG&E is therefore estopped by both *res judicata* and judicial estoppel from arguing otherwise.  Because electricity is a good, Global has an administrative expense claim for all unpaid power delivered to the Utility during the § 503(b)(9) period, from January 9 to the Petition Date, January 29, 2019.

The PPAs between Global and the Utility provide that a delivery constitutes all electricity produced from the El Nido facility as measured in megawatt hours at the revenue meter.  El Nido's revenue meter is located at the El Nido facility.  Pursuant to the PPAs, immediately after the electricity passes through the meter, the electricity is delivered to the Utility.  That is consistent with the affirmance by the District Court of this Court's ruling in the first PG&E bankruptcy with respect to when delivery occurs.  According to the District Court:

> In most cases this will mean the electricity must be delivered to the customer's premises, to the point where it is metered, although the many variations in electrical systems prevent our drawing a 'bright line' at a particular point." *Pierce v. Pacific Gas & Electric*, 166 Cal.App.3d 68, 84, 212 Cal.Rptr. 283 (Cal. Ct. App.1 985); *see also Fong v. Pacific Gas & Electric*, 199 Cal.App.3d 30, 38, 245 Cal.Rptr. 436 (Cal. Ct. App. 1988) ("[E]lectricity does not become a product once it is delivered to plaintiffs' premises, i.e., the moment the wires cross plaintiffs' property line. Instead, the test is

---

[6] *See* Exhibit 1 – El Nido January 2019 CP invoice reconciliation of the El Nido facility prepared by Debtors.  The reconciliation shows that the Monthly TOD Payment for electricity delivered from 1/1/19 to 1/28/19 should have been $817,915.84 (See Summary Tab, line 21, column F).  The Debtors actually paid only $625,443.24 for this electricity (*See* Summary Tab, line 27, column F).

whether the electricity has been metered.") (citation omitted). The electricity at issue here clearly meets that standard. It passed from PG&E's lines to Puget's, was metered, was available to Puget in a voltage marketable from one power company to another and was immediately usable by Puget. It would be a product for strict liability purposes. It is by extension a good.

*In re Pacific Gas and Electric Company,* 271 B.R. at 639.

Thus, pursuant to the PPAs and to the District Court's affirmance of this Court's ruling, Global delivered $817,915.84 worth of electricity to Debtors in January during the prepetition period. In addition, under U.S. GAAP, payments for goods are generally applied in the order that the goods are delivered and the time of delivery can be readily ascertained by viewing the meter data.[7] Any payment from PG&E for January electricity should have been allocated in the order that the electricity was delivered. *See In re Plastech Engineered Products, Inc.*, 397 B.R. 828, 50 Bankr. Ct. Dec. (CRR) 273 (Bankr. E.D. Mich. 2008) (granting administrative priority status for the readily-ascertainable value of goods received). Therefore, any payment shortfall for electricity delivered from January 1 to January 28, 2019 should have been allocated to electricity delivered at the end of the prepetition period, not over the entire period.

The Utility paid $625,962 for January electricity deliveries for January 1 to January 28, 2019. During that time period, Global actually delivered $817,915.84 worth of electricity to Debtors. The Debtors' payment covered approximately the first twenty-one days of electricity production for the month of January.[8] Therefore, the shortage of $192,472.60 is properly allocated to the period from January 9 to January 28, 2019. In an email dated February 26, 2019 The Utility confirmed the shortage in the §503(b)(9) period prior to the Petition Date of $192,472.60. *See* Ex. 2.

---

[7] *See* Exhibit 1, Imbalance Energy tab, Column I. Column I shows the amount of "delivered" electricity as measured by the "Revenue Meter" for each hour from January 1 to January 31, 2019.

[8] Monthly TOD Payment as calculated for the period of 1/1/19 to 1/28/19 was $817,915.84 or $29,211.28 per day. Payment of $625,443.24 divided by $29,211.28 represents 21.4 days.

5

Thus, based on the PPAs, applicable precedent and GAAP, the amount properly allocated to the twenty days prior to the Petition Date and should be paid under § 503(b)(9) is $192,472.60.

The Debtors seek to disallow and expunge $42,510.22 of Global's § 503(b)(9) claim because the amount does not match the Debtors' books and records. However, the Debtors confirmed via email that the amount due for January electricity generated by El Nido is $192,472.60, not 149,962.38 as Debtors now claim.[9] As the Debtors' email makes clear, had Debtors properly allocated the Prepayment, Global's net prepetition amount due would have been only $15,197.75. Instead, subsequent to the Petition Date, the Debtors deducted $110,263.07 and $67,011.78 from Global's postpetition February payment, thereby increasing the amount due to Global to $192,472.60. The Debtors should not be permitted to disallow or expunge any portion of Global's §503(b)(9) claim.

The Debtors also seek to reclassify $31,557.88 as a general unsecured claim. The Debtors allege that Global's claim includes goods that were not delivered during the period twenty days prior to the Petition Date. Debtors' reclassification should not be allowed as it is a result of Debtors' failure to properly apply the payments in accordance with the PPAs, applicable case law and GAAP. All of the foregoing confirm that payments for goods should be applied in the order that the goods are delivered. Instead of applying its payment for goods based on the order that the goods were delivered, the Debtors used some other unspecified method. This resulted in a portion of the shortfall being allocated by Debtors to the period from January 1 to January 8, 2019 when it should have been allocated to January 21 to January 28, 2019. *See* footnote 5. Had the Debtors allocated the shortfall in accordance with the PPAs, applicable case law and GAAP, all of the shortfall would have been allocated to the twenty-day prepetition § 503(b)(9) period.

---

[9] *See* Exhibit 2.

## III. CONCLUSION

For the foregoing reasons, the Court should (i) deny the Debtors' request to reclassify or expunge any portion of Global's § 503(b)(9) claim, (ii) allow Global's entire 503(b)(9) claim of $195,472.60, (iii) grant such other and further relief as the Court may deem just and appropriate.

Dated: July 31, 2019                              WINSTON & STRAWN LLP

By: /s/ Jennifer Machlin Cecil
Jennifer Machlin Cecil (SBN#294806)
David Neier (*admitted pro hac vice*)

*Attorneys for Global Ampersand LLC*

1

**Exhibit Nos. 1-4**
**(Filed Under Seal)**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8