WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br> - and - <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> Debtors. <br><br> ☐ Affects PG&E Corporation <br> ☒ Affects Pacific Gas and Electric Company <br> ☐ Affects both Debtors <br><br> *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **THIRD OMNIBUS MOTION PURSUANT TO 11 U.S.C § 365(a), FED. R. BANKR. P. 6006, AND B.L.R. 6006-1 TO APPROVE THE UTILITY'S ASSUMPTION OF CERTAIN CONTRACT PRICE DISCOUNTED ENERGY PROCUREMENT AGREEMENTS (THE "DISCOUNTED EP ASSUMPTION MOTION")** <br><br> Hearing Date: August 28, 2019 <br> Hearing Time: 9:30am (Pacific Time) <br> Place: United States Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 <br> Judge: Hon. Dennis Montali <br><br> Objection Deadline: August 14, 2019, at 4:00 p.m. (Pacific Time) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

> **NOTICE TO CONTRACT COUNTERPARTIES**
>
> The counterparties to each of the EP Agreements (as defined below) to be assumed by Pacific Gas and Electric Company pursuant to this Motion are identified on **Exhibit B** hereto. If you have received this Motion and you are a counterparty to an EP Agreement with Pacific Gas and Electric Company, please review **Exhibit B** to determine if this Motion affects your rights thereunder.

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to section 365(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6006-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), for an order approving the Utility's assumption of each of the EP Agreements (as defined below), each as amended pursuant to the applicable EP Amendment (as defined below) to incorporate a price reduction of approximately ten percent (10%) and other agreed upon modifications set forth therein.

In support of the Motion, the Debtors submit the Declaration of Marino Monardi (the "**Monardi Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

**Table of Contents**

I. JURISDICTION .................................................................................................6

II. BACKGROUND ................................................................................................6

III. THE EP AGREEMENTS ...................................................................................6

IV. ASSUMPTION OF THE EP AGREEMENTS IS IN THE BEST INTERESTS OF THE UTILITY, ITS CREDITORS, AND ALL PARTIES IN INTEREST.............10

V. REQUIREMENTS OF BANKRUPTCY RULE 6006 ..................................................13

VI. NOTICE..........................................................................................................13

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*,
    476 F.3d 665 (9th Cir. 2007) .................................................................................................. 12

*In re Am. Suzuki Motor Corp.*,
    494 B.R. 466 (Bankr. C.D. Cal. 2013) ..................................................................................... 11

*Bakery, Confectionary & Tobacco Workers Int'l Union v. Kirkpatrick (In re Kirkpatrick)*,
    34 B.R. 767 (B.A.P. 9th Cir. 1983) .......................................................................................... 11

*Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*,
    204 F.3d 1276 (9th Cir., 2000) ................................................................................................ 11

*In re MF Glob. Holdings Ltd.*,
    466 B.R. 239 (Bankr. S.D.N.Y. 2012) ..................................................................................... 11

*In re Miller*,
    No. 15-61159-12, 2016 WL 1316763 (Bankr. D. Mont. Apr. 1, 2016) .................................... 11

*NLRB v Bildisco & Bildisco*,
    465 U.S. 513 (1984) ................................................................................................................. 11

*Pac. Shores Dev. v. At Home Corp. (In re At Home Corp.)*,
    292 B.R. 195 (N.D. Cal. 2003), *aff'd*, 392 F.3d 1064 (9th Cir. 2004) ..................................... 11

*Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*,
    503 F.3d 933 (9th Cir. 2007) ................................................................................................... 11

**Statutes**

11 U.S.C § 365(a) .......................................................................................................................... 11, 12

11 U.S.C. §§ 1107(a) and 1108 ............................................................................................................ 6

28 U.S.C. §§ 157 and 1334 ................................................................................................................... 6

28 U.S.C. §§ 1408 and 1409 ................................................................................................................. 6

California Public Utilities Code sections 3291(b)(1)(D) and 3292(b)(1)(D) ..................................... 12

**Other Authorities**

Fed. R. Bankr. P. 1015(b) ..................................................................................................................... 6

Fed. R. Bankr. P. 2002 .................................................................................................................... 14

Fed. R. Bankr. P. 6006(e) ............................................................................................................... 13

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

## III. THE EP AGREEMENTS

In the ordinary course of its operations, the Utility is party to various types of energy procurement agreements, including, without limitation, (a) power purchase agreements, pursuant to which the Utility purchases electric power from generators, and (b) capacity storage agreements, which provide the Utility access to capacity from energy storage facilities.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

The Utility routinely and continuously evaluates its energy procurement agreements in light of, among other things, the Utility's operations, market conditions, pricing, the needs of the Utility's customers, the regulatory requirements imposed on the Utility, and to ensure the Utility is safely and reliably delivering power. As part of that evaluation, the Utility has identified the EP Agreements for assumption in the Chapter 11 Cases. Following discussions with the EP Counterparties (as defined herein), the Utility and each of the respective counterparties have agreed that, in exchange for assumption of the applicable EP Agreement, the parties will enter into the EP Amendments described below, which include valuable discounts for the Utility.

The effectiveness of each of the EP Amendments and assumption of the EP Agreements pursuant to this Motion is conditioned upon the Utility obtaining the necessary approvals from the Bankruptcy Court and California Public Utility Commission (the "**CPUC**"). Accordingly, contemporaneously herewith, the Utility is seeking CPUC approval for the EP Amendments but, to the extent such approval is not obtained prior to the hearing on this Motion, the Utility requests that the Court approve the Utility's assumption of the EP Agreements, as amended, subject to CPUC approval. Pursuant to the EP Amendments, in the event CPUC approval is not attained within one hundred and eighty (180) days from the date approval is sought from the CPUC or the date of this Motion (whichever is later), either party may terminate the applicable EP Amendment and the assumption of the applicable EP Agreement shall be null and void. The various EP Agreements and the EP Amendments are discussed in further detail below.

A.  **The Power Purchase Agreements**

To enable the Utility to provide power to its customers and meet regulatory requirements, the Utility is party to various power purchase agreements (each, a "**PPA**") with developers and operators of power generation facilities and projects. Pursuant to this Motion, the Utility is seeking to assume the following three (3) PPAs, each as amended by the applicable PPA Amendment Agreements (as defined below):

- Power Purchase Agreement between the Utility and Re Gaskell West 3 LLC dated September 22, 2017 (the "**Gaskell 3 PPA**");

- Power Purchase Agreement between the Utility and Re Gaskell West 4 LLC dated September 22, 2017 (the "**Gaskell 4 PPA**"); and

- Power Purchase Agreement between the Utility and Re Gaskell West 5 LLC dated September 22, 2017 (the "**Gaskell 5 PPA**" and, together with the Gaskell 3 PPA and the Gaskell 4 PPA, the "**PPAs**").[1]

The PPAs are long-term purchase agreements pursuant to which the Utility will purchase electric power generated by a generation facility or project operated by the respective counterparty to the PPAs (collectively, the "**PPA Counterparties**"). The generation projects that will generate the power to be purchased by the Utility pursuant to the PPAs, however, are currently under development and not yet operational and, as a result, the PPA Counterparties have not yet commenced delivering power to the Utility.[2] Upon completion of the generation projects, pursuant to the terms of the respective PPAs, the Utility will purchase power from the PPA Counterparties for a period of fifteen years, on a dollar per megawatt hour basis. Consequently, the Utility has no outstanding obligations to the PPA Counterparties under the PPAs, and no cure amounts are owed or payable in connection with the assumption of the PPAs as proposed pursuant to this Motion.

In connection with the proposed assumption of the PPAs, the Utility has negotiated favorable amendments to the PPAs with the PPA Counterparties. These amendments are memorialized in agreements between the Utility and the respective PPA Counterparty (the "**PPA Amendment Agreements**"). Among other things, the Utility and the PPA Counterparties have agreed to a ten percent (10%) discount to the respective per megawatt hour purchase price of power under each PPA. Additionally, the Utility and the PPA Counterparties have agreed to extend project and construction related deadlines in each PPA, and consequently, the time by which the Debtors would be obligated to

---

[1] A copy of the form of the PPAs available at https://www.pge.com/pge_global/common/pdfs/for-our-business-partners/energy-supply/electric-rfo/wholesale-electric-power-procurement/2017%20PV/PGE_2017_PV_PPA_final.docx. Copies of the actual PPAs and the PPA Amendment Agreements will be provided on a confidential basis to the U.S. Trustee and counsel to the Committees.

[2] The PPA Counterparties entered into the PPAs prior to the completion of the respective generation projects because the PPA Counterparties use projected future revenue from the PPAs to obtain financing for the development and construction of the projects.

commence purchasing power, by up to 24 months.

B. **The Energy Storage Agreements.**

To enable the Utility to comply with applicable regulatory requirements related to storage capacity and resource adequacy, the Utility is party to various energy storage agreements with various counterparties that provide energy storage services. Pursuant to this Motion, the Utility is seeking to assume the following two (2) energy storage agreements, each as amended by the applicable ESA Amendment Agreements (as defined below):

- Behind the Retail Meter Capacity Storage Agreement between the Utility and mNOC AERS LLC ("**mNOC**"), dated June 1, 2018, as previously amended by letters dated October 11, 2018 and November 27, 2018 (the "**mNOC ESA**"); and

- Energy Storage Resource Adequacy Agreement between the Utility and Hummingbird Energy Storage, LLC ("**Hummingbird**"), dated June 1, 2018, as previously amended by letters dated October 11, 2018, November 27, 2018 and March 28, 2019, (the "**Hummingbird ESA**" together with the mNOC ESA, the "**ESAs**,"[3] and, collectively with the PPAs, the "**EP Agreements**").

The ESAs are long term agreements, pursuant to which the Utility will purchase storage capacity in certain battery storage projects from the respective counterparties to the ESAs (the "**ESA Counterparties**" and together with the PPA Counterparties, the "**EP Counterparties**"). The Utility utilizes the ESAs to meet the resource adequacy requirements (the "**RARs**") imposed on it by the CPUC and other regulators. The RARs ensure that California's load serving entities (including utilities, community choice aggregators, and energy service providers) have sufficient capacity to meet peak electric load demand on their networks, and require that load-serving entities maintain a reserve margin. Like the PPAs, the energy storage projects that are the subject of the ESAs are currently under

---

[3] Copies of the forms of the ESA Agreements are available at http://www.pge.com/includes/docs/word_xls/b2b/wholesaleelectricsuppliersolicitation/Energy_Storage_2016/AppendixF2_CapacityStorageAgreement_IssuanceFinal.docx and http://www.pge.com/includes/docs/word_xls/b2b/wholesaleelectricsuppliersolicitation/Energy_Storage_2016/AppendixF3_BTMCapacityStorageAgreement_IssuanceFinal.docx. Copies of the actual ESAs and ESA Amendment Agreements will be provided on a confidential basis to the U.S. Trustee and counsel to the Committees.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

development and not yet operational, and the ESA Counterparties have not yet commenced providing storage capacity to the Utility.[4] Upon completion of the storage projects, the Utility will purchase storage capacity from mNOC and Hummingbird for periods of ten (10) or fifteen (15) years, respectively, on a dollar per kilowatt-month basis. Consequently, the Utility has no outstanding obligations to the ESA Counterparties under the ESAs and no cure amounts are owed or payable in connection with the assumption of the ESAs as proposed pursuant to this Motion.

In connection with the assumption of the ESAs, the Utility has negotiated favorable amendments to the ESAs with the ESA Counterparties. The ESA Amendments are memorialized in amendment agreements between the Utility and the respective ESA Counterparty (the "**ESA Amendment Agreements**" and, together with the PPA Amendment Agreements, the "**EP Amendments**"). Specifically, with respect to the mNOC ESA, among other things, the parties have agreed to discounts on the contract price of approximately eleven percent (11%), and have agreed to extend two project completion milestones in the mNOC ESA by approximately fifteen (15) months, which will result in a corresponding delay to the Utility's obligations to pay for the additional capacity by approximately fifteen (15) months. Similarly, with respect to the Hummingbird ESA, among other things, the parties have agreed to discounts on the contract price of approximately ten percent (10%) and have agreed to extend two project completion milestones in the Hummingbird ESA by twelve (12) months, which will result in a corresponding delay to the Utility's obligations to pay for such capacity by approximately twelve (12) months.

### IV. ASSUMPTION OF THE EP AGREEMENTS IS IN THE BEST INTERESTS OF THE UTILITY, ITS CREDITORS, AND ALL PARTIES IN INTEREST

The Utility's assumption of the EP Agreements, as amended, should be approved under section 365(a) of the Bankruptcy Code. Section 365(a) provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract . . . of the debtor." 11 U.S.C. § 365(a).

---

[4] The ESA Counterparties use the projected future revenue from the ESAs to obtain financing for the development and construction of the energy storage project.

The Supreme Court has defined "executory contracts" as contracts "on which performance is due to some extent on both sides." *NLRB v Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984). The Ninth Circuit has described executory contracts in similar terms, being contracts where "one party's failure to perform its obligation would excuse the other party's performance." *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.),* 503 F.3d 933, 941 (9th Cir. 2007) (citing *Commercial Union Ins. Co. v. Texscan Corp. (In re Texscan Corp.)*, 976 F.2d 1269, 1272 (9th Cir. 1992)). The EP Agreements clearly fall within this definition. In each case, there remains material performance obligations on both the Utility and the EP Counterparties.

Bankruptcy Courts generally "approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir., 2000); *In re Miller,* No. 15-61159-12, 2016 WL 1316763, at *4 (Bankr. D. Mont. Apr. 1, 2016).

The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract will benefit the debtor's estate. *See Bakery, Confectionary & Tobacco Workers Int'l Union v. Kirkpatrick (In re Kirkpatrick)*, 34 B.R. 767, 769 (B.A.P. 9th Cir. 1983); *Pac. Shores Dev. v. At Home Corp. (In re At Home Corp.),* 292 B.R. 195, 199 (N.D. Cal. 2003), *aff'd*, 392 F.3d 1064 (9th Cir. 2004) ("Bankruptcy courts generally approve rejection if the debtor demonstrates that the rejection will benefit the estate under a 'business judgment' test."); *In re Am. Suzuki Motor Corp.*, 494 B.R. 466, 475 n.4 (Bankr. C.D. Cal. 2013). Furthermore, "[c]ourts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract or unexpired lease would benefit the debtor's estate." *In re MF Glob. Holdings Ltd.*, 466 B.R. at 242; *In re Miller,* 2016 WL 1316763, at *4 ("Although the business judgment is the proper standard for determining whether to permit assumption or rejection of an executory contract or unexpired lease, the court should focus on the business judgment of the trustee or debtor in possession, not on its own business judgment."). The Court should "presume that the debtor-in-possession acted

prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (in the context of a motion to reject under section 365(a)). Only a decision which is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice" falls foul of the rule. *Id.*

The Utility's assumption of the EP Agreements, as amended, represents a valid exercise of the Utility's business judgment and will benefit the Utility's estate. Energy procurement is a critical aspect of the Utility's business operations. The Utility is undertaking a careful and thorough review of its portfolio of EP Agreements and has determined that the terms of the EP Agreements, as amended, are reasonable under the circumstances and that maintaining the ongoing, mutually beneficial relationships with the EP Counterparties is in the best interests of the Utility and its estate. Additionally, the EP Agreements ensure that the Utility will continue to have sources of power generated by renewable energy and battery storage capacity, enabling the Utility to comply with the California Renewables Portfolio Standard Program, energy storage compliance requirements, and other related procurement requirements, as required by sections 3291(b)(1)(D) and 3292(b)(1)(D) of the California Public Utilities Code, as recently amended by Assembly Bill 1054.

Moreover, as discussed above and in the Monardi Declaration, the Utility has negotiated considerable discounts to the contract prices under the EP Agreements. The Utility estimates that the nominal value of the aggregate savings achieved pursuant to the EP Amendments is approximately $20 million over the collective life of the EP Agreements. Moreover, the Utility has determined that the savings obtained through the discounted contract price far outweighs the milestone extensions that the Utility is granting to the EP Counterparties under the EP Amendments. Such extensions necessarily arose from the Utility's commencement of the Chapter 11 Cases and the resulting difficulty for the EP Counterparties to obtain the requisite financing to complete the underlying projects. Finally, as discussed above, the assumption of the EP Agreements will not result in any incremental costs to the Debtors' estates because no cure amounts are owed by the Utility to assume the EP Agreements.

As set forth above, assumption of each of the EP Agreements, as amended pursuant to

the applicable EP Amendment, shall be subject to, and conditioned upon, among other things, the Utility obtaining CPUC approval of each of the EP Amendments as provided therein ("**CPUC Approval**"). In the event CPUC Approval is not timely obtained with respect to any EP Amendment (which milestone or deadline may be modified or amended as provided in the applicable EP Amendment), (i) the Utility shall file a notice with the Bankruptcy Court indicating that CPUC Approval has not been obtained with respect to the specific EP Agreement and EP Amendment, and (ii) assumption of the applicable EP Agreement shall be null and void with all of the applicable parties' respective rights reserved.

Accordingly, for the reasons set forth herein, the Utility respectfully submits that the assumption of the EP Agreements, as amended, is a valid exercise of the Utility's business judgment and should be approved.

## V. REQUIREMENTS OF BANKRUPTCY RULE 6006

The Utility requests authorization pursuant to Bankruptcy Rule 6006(e) to file this Motion as an omnibus motion to assume the EP Agreements. As outlined above, the EP Agreements are all energy procurement agreements providing for the purchase or storage of electric power, and the circumstances of, and reason for their assumption are similar. Accordingly, the Utility believes there is ample cause for an order permitting this Motion to be heard as an omnibus motion to avoid the Utility's estate bearing the cost of five (5), separate motions to assume each EP Agreement. There is no detriment to any party in interest in having the Motion heard as an omnibus motion.

## VI. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) the EP Counterparties; and (xiii) those persons who have formally appeared in these Chapter 11 Cases

and requested service pursuant to Bankruptcy Rule 2002. The Utility respectfully submits that no further notice is required.

No previous request for the relief sought herein in respect to the EP Agreements has been made by the Utility to this or any other court.

WHEREFORE the Utility respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Utility's business judgment and in the best interests of its estate, creditors, shareholders, and all other parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: July 31, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By:  /s/ Stephen Karotkin

Stephen Karotkin

*Attorneys for Debtors
and Debtors in Possession*