1                    UNITED STATES BANKRUPTCY COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3                          -oOo-

4  In Re:                  ) Case No. 19-30088
                            ) Chapter 11

5  PG&E CORPORATION AND PACIFIC   )
    GAS AND ELECTRIC COMPANY,     ) San Francisco, California

6                          ) Wednesday, July 31, 2019
                Debtors.  ) 9:30 AM

7  _____   )
                           MOTION FOR RELIEF FROM STAY

8                            FILED BY PHILIP VERWEY
                            [1141]; MOTION FOR RELEF FROM

9                            STAY FILED BY MARTA MESTER
                            [3036]; MOTION FOR RELIEF

10                           FROM STAY FILED BY DAN CLARKE
                            [2823]

11

12                  TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE DENNIS MONTALI

13               UNITED STATES BANKRUPTCY JUDGE

14  APPEARANCES:
    For the Debtor:          PETER J. BENVENUTTI, ESQ.

15                           Keller & Benvenutti LLP
                           650 California Street

16                           Suite 1900
                           San Francisco, CA 94108

17                           (415)364-6798

18  For Philip Verwey Farms:   ANNIE DUONG, ESQ.
                           McCormick Barstow LLP
                           7647 North Fresno Street

19                           Fresno, CA 93720
                           (559)433-1300

20

21  For Official Creditors'    GREGORY A. BRAY, ESQ.
    Committee:              (Telephonically)

22                           DANIEL B. DENNY, ESQ.
                           (Telephonically)

23                           Milbank LLP
                           2029 Century Park East

24                           33rd Floor
                           Los Angeles, CA 90067

25                           (424)386-4000

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1   For Official Creditors'     ALAN J. STONE, ESQ.
     Committee:                  (Telephonically)
 2                               Milbank LLP
                                 55 Hudson Yards
 3                               New York, NY 10001
                                 (212)530-5000
 4   For Stroock & Stroock &     EREZ E. GILAD, ESQ.
     Lavan LLP:                  (Telephonically)
 5                               Stroock & Stroock & Lavan LLP
                                 180 Maiden Lane
 6                               New York, NY 10038
                                 (212)806-6006
 7
     For Stroock & Stroock &     FRANK A. MEROLA, ESQ.
 8   Lavan LLP:                  (Telephonically)
                                 Stroock & Stroock & Lavan LLP
 9                               2029 Century Park East
                                 Los Angeles, CA 90067
10                               (310)556-5800

11   For CPUC:                   BRIAN S. HERMANN, ESQ.
                                 (Telephonically)
12                               ALAN W. KORNBERG, ESQ.
                                 (Telephonically)
13                               Paul, Weiss, Rifkind, Wharton &
                                 Garrison LLP
14                               1285 Avenue of the Americas
                                 New York, NY 10019
15                               (212)373-3545

16   For BlueMountain:           MICHAEL H. STRUB, JR., ESQ.
                                 (Telephonically)
17                               Irell & Manella LLP
                                 1800 Avenue of the Stars
18                               Suite 900
                                 Los Angeles, CA 90067
19                               (310)277-1010

20   For BlueMountain:           JOHN H. VERAJA, ESQ.
                                 (Telephonically)
21                               Cleary Gottlieb Steen & Hamilton
                                 LLP
22                               One Liberty Plaza
                                 New York, NY 10006
23                               (212)225-2000

24

25
```

escribers
(973)406-2250 | operations@escribers.net | www.escribers.net

```
 1
    Court Recorder:              JOHN BOLTS
 2                               United States Bankruptcy
                                 Court
 3                               450 Golden Gate Avenue
                                 16th Floor
 4                               San Francisco, CA 94102

 5  Transcriber:                 JENNIFER NAUS
                                 eScribers, LLC
 6                               7227 N. 16th Street
                                 Suite #207
 7                               Phoenix, AZ 85020
                                 (973)406-2250
 8

 9  Proceedings recorded by electronic sound recording;
    transcript provided by transcription service.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PG&E Corporation; Pacific Gas & Electric Company

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, JULY 31, 2019, 9:33 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE CLERK:  All rise.  Court is now in session.  The

5    Honorable Dennis Montali presiding.

6            THE COURT:  Good morning.

7            MR. BENVENUTTI:  Good morning, Your Honor.

8            THE COURT:  Please be seated.  Mr. Benvenutti, where's

9    the crowd?  You usually have a cast of thousands here.

10           MR. BENVENUTTI:  Well, I was just remarking on that to

11   Ms. Parada, but more significantly, we don't seem to have my

12   opponent who hopefully is on her way.

13           THE COURT:  Well, is she on the phone?

14           THE CLERK:  No.

15           THE COURT:  Okay.  Well, have we heard anything from?

16           THE CLERK:  I have a voice mail -- email from her, but

17   I can't listen to it, so.

18           THE COURT:  Do you want to go and listen to it?

19           THE CLERK:  I'm trying to set up a telephonic --

20           THE COURT:  Pardon?

21           THE CLERK:  She probably missed the court call.

22           THE COURT:  Well, I mean if you --

23           THE CLERK:  Yeah, I can go in and look.

24           THE COURT:  -- you want to just go and look?  Okay.

25   Well, should we go off the record, I guess?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1      THE CLERK:  Yes.

2      THE COURT:  Yeah, okay.

3      MR. BENVENUTTI:  Yes, please.

4      THE COURT:  Mr. Bolts, take us off the record for a

5  moment?

6      (Recess from 9:34 a.m., until 9:36 a.m.)

7      THE CLERK:  The matter of PG&E Corporation.

8      THE COURT:  All right.  Appearances, please.  Counsel,

9  Ms. --

10      MS. DUONG:  This is Annie Duong, appearing for Philip

11  Verwey Farm.

12      THE COURT:  Okay, Ms. Duong.  Good morning.

13      MR. BENVENUTTI:  Good morning, Your Honor.  Peter

14  Benvenutti on behalf of the debtors.

15      THE COURT:  So let me say that I am amazed at the

16  enormous amount of paperwork on this for what is an extremely

17  narrow question.  So Ms. Duong, you filed a paper that wasn't

18  really anticipated.  But what you didn't say in what you filed

19  yesterday is your client's response to Mr. Benvenutti's

20  suggestion that perhaps all we need here is an agreement that

21  as to the claims that are asserted by PG&E against its

22  customer, which would be one of your clients, we can just

23  maintain the status quo.

24      He said it perhaps a little differently, but that's

25  really what you mean, right, Mr. Benvenutti?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1    MR. BENVENUTTI:  Yes.  Yes, it is, Your Honor.

2    THE COURT:  So Ms. Duong, as I read the papers,

3    although you kind of throw in there in one of these late briefs

4    your client does business in many forms, that's very

5    interesting, but it's not very relevant.  So the way I see it,

6    there is about a hundred and -- I've got the specific numbers,

7    130,000 dollars that is billed to one entity, Hanford, just a

8    few hundred dollars that's billed to Madeira, and the

9    difference presumably is billed to the debtor -- I mean, I'm

10   sorry, your client, not the debtor, Mr. Verwey.

11   And you haven't had -- in the six months of the

12   bankruptcy, he hasn't received a threat or a demand or a

13   cancellation threat about anything for paying that claim, has

14   he?

15   MS. DUONG:  He has, Your Honor.

16   THE COURT:  He has?

17   MS. DUONG:  Yes, he has.  He has gotten notices from

18   PG&E's risk department --

19   THE COURT:  Okay.

20   MS. DUONG:  -- as well as their claims department.

21   THE COURT:  But have you considered just exploring

22   with opposing counsel just an agreement that maintains the

23   status quo as to that amount while all this other stuff gets

24   worked out?

25   MS. DUONG:  Absolutely.  We actually entered into an

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1    interim agreement --

2        THE COURT:  Um-hum.

3        MS. DUONG:  -- in which we were to basically suspend

4    and keep the status quo for a certain period of time in order

5    to actually explore the different issues such as liability and

6    the disputes as to the amount.

7        THE COURT:  Well, but let's try it a different way.

8    So leave aside the threat, and I certainly understand; whether

9    your client runs a dairy or just lives in his house, it doesn't

10   really matter, if the utility says we're going to turn off your

11   service if you don't pay, that's a threat.  I don't make light

12   of it.  But six months later it hasn't happened.

13        So what I am going to tell you is forget the threat of

14   turning off the switch.  What would you do, and your response

15   be if PG&E filed a lawsuit against your client to recover the

16   amount that has been billed to one or more of your clients;

17   what would your response be?  I don't mean the legal words, I

18   mean what would -- as a layperson, what would your response be?

19        MS. DUONG:  I mean our response would be that we would

20   have to defend it.

21        THE COURT:  No, no.  But wouldn't it be yeah, we owe

22   the debt, but we have claims that offset.

23        MS. DUONG:  Right.

24        THE COURT:  I mean that's what a nonlawyer would even

25   say.  Why do I have to pay 390,000 or 260,000 or some other

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1    thousand if they -- they owe me a million dollars?

2         MS. DUONG:  Absolutely, that's exactly the basis.

3         THE COURT:  So that's -- why can't we just focus on

4    that and say that at least the 264,000 -- I mean, I have to say

5    that the 126,000 billed to Hanford doesn't lend itself to a

6    traditional set-off even if your client does business in

7    multiple different entities.  That's perfectly fine.  Nothing

8    wrong with that, but the only -- PG&E has the right -- assume

9    for a moment that it has the right to file suit or to take

10   action against its customer who hasn't paid.  Hanford is a

11   customer who hasn't paid, so there's nothing that bankruptcy

12   law does about that.  So to the extent that -- because it's a

13   defense, that's all.  It's just a defense.  It's not an

14   exercise of set-off.  I mean, it is, but there's nothing to do,

15   right; don't you agree?

16        MS. DUONG:  I wouldn't argue as to the interconnection

17   invoices.

18        THE COURT:  Okay.

19        MS. DUONG:  I think the focus of more of the usage

20   charges, and I think that's what they're even more concerned

21   about, Mr. Verwey.

22        THE COURT:  Okay, understood.  So what neither of you

23   addressed and is, I don't think, is that although there is a

24   lot of back and forth about the law, including one of you had

25   the good sense to cite one of my own cases -- thank you, not

PG&E Corporation; Pacific Gas & Electric Company

1  that it makes any difference -- the law treats an offset right

2  as a secured claim, the equivalent of a secured claim.  So your

3  client claims -- again I'll focus on Verwey Farm, PVF -- claims

4  to have been damaged by PG&E for a variety of reasons that are

5  in the record.  And someday, and by settlement or litigation or

6  something, there will be a resolution of that.

7       But in the meantime, you client says because I have a

8  claim that you have caused me harm, I don't have to pay you

9  what you owe me.  But that's like saying I have a secured claim

10 because a right of set-off is the equivalent of a secured

11 claim.

12      So what happens if a debtor wants to use collateral

13 subject to a secured claim; do you know the answer?

14      MS. DUONG:  No.

15      THE COURT:  The debtor has to provide adequate

16 protection to make sure that the security isn't impaired.  So

17 Mr. Benvenutti, for the client, says we can come up with an

18 adequate protection agreement, which is another way of saying

19 we'll maintain the status quo for the offset.

20      So it's not whether you exercise offset or not; you

21 just protect the 264,000 dollars until you either reach an

22 agreement or there is a judicial determination or arbitration;

23 however you get to it, there is a final accounting of how much

24 the parties owe each other.  End of story.

25      And if your client proves that it suffered damages in

(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corporation; Pacific Gas & Electric Company

1   excess of the 264, end of story.  PG&E pays you the difference

2   or pays you something when it emerges from bankruptcy with a

3   plan.

4           If you lose, your client has to pay PG&E the

5   undisputed usage charge.  Nothing fancy about that, right?

6           MS. DUONG:  Right.  But I think --

7           THE COURT:  Any problem with that?

8           MS. DUONG:  I do find some issue with that, merely

9   because -- and it kind of comes to the agreement that we kind

10  of reached outside of this, so I don't want to bring too many

11  details in --

12          THE COURT:  No.

13          MS. DUONG:  -- but essentially is that there was an

14  agreement, and we did have an agreement that no attempts would

15  be while during -- pending --

16          THE COURT:  But I don't want you to go there.  What I

17  am saying is if we had the simple case.  Forget that whole

18  history.  You get a bill from PG&E at your home, and PG&E says

19  your overdue 50 dollars, and you call back the service desk and

20  you say but you guys owe me 150 dollars because of that payment

21  I had to make to you for something.  And somebody says, hey,

22  that's right.  We net it out and you get a refund for 100

23  dollars.  Done.  So we just add some zeros here and add some

24  other entities and put it in a bankruptcy; it's the same

25  concept.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1      MS. DUONG:  But I don't think that that would

2    necessarily be adequate protection either, even just --

3      THE COURT:  Why wouldn't it if you don't have to pay

4    it?

5      MS. DUONG:  Right.  But that's assuming that

6    everything kind of runs along and trickles down the line.

7      THE COURT:  Why?

8      MS. DUONG:  There were instances --

9      THE COURT:  No, no.  Tell my why that is so, because

10    I -- look, you're -- and I'm going to let you answer the

11    question.  This started way back months ago.  You filed a

12    motion for relief from stay.  To do what?  To exercise your

13    set-off rights, which is, if we use bankruptcy labels, it's

14    treat my claim against PG&E as a secured claim.  That's the

15    functional equivalent.

16      Where it gets more complicated is months go by and

17    more briefing, and then in a reply or opposition you say, oh,

18    by the way, can we have an injunction?  I mean that's

19    procedurally inappropriate.

20      So what's so complicated about my telling Mr.

21    Benvenutti that -- or asking him to see if he agrees, that why

22    don't we just hold in place what your client would be allowed

23    to set off, or alternatively, grant relief to exercise set-off,

24    but nothing else happens.  You don't -- there's no final

25    accounting.  Nobody -- it just maintains the status quo.

PG&E Corporation; Pacific Gas & Electric Company

1          Now, tell me what is wrong with that?

2          MS. DUONG:  I don't think there is necessarily

3    anything wrong with that.

4          THE COURT:  Okay.

5          MS. DUONG:  But I just don't believe that that is

6    adequate protection.  There is nothing that really stops --

7          For example, say the situation that we agree that from

8    here on out, that no actions will be taken, no shedding off,

9    whatever, right?

10          THE COURT:  Right.  Yeah.

11          MS. DUONG:  But what if during that period, that

12    message doesn't get trickled through and then the power does

13    get shut off?

14          THE COURT:  What if there is no bankruptcy, and you've

15    never heard of me, and you've never heard of set-off, and

16    you've never heard of any of these legal doctrines.  And your

17    client calls you one day and says they just turned off my

18    power; what do I do?  Well, what do you do?

19          I presume there are a hundred things you do, starting

20    by swearing, and you call the CPUC, or you call PG&E, or you

21    say hey, you guys turned off my power; what's the deal, right?

22    Isn't that what you would do if you were in your home and all

23    of a sudden, the power went off?  I mean, leave aside third-

24    party things, and you'd say why are you turning my power off?

25    My bill is current.  I've paid my bill, right?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1          MS. DUONG:  Yeah, but I think the difference is that

2    because of this bankruptcy stay, we would be prevented from

3    taking any of those actions.

4          THE COURT:  Well, think about what you -- again, what

5    you have asked me to do.  If I had -- and I do appreciate that

6    it's a big problem for your client, and I don't make light of

7    it.  But it's only one of countless problems that have gone on

8    with PG&E.

9          But what you've said in some detail in your papers is

10   you just want to do a final reconciliation of account.  You

11   want to prove how PG&E damaged your client and, to the extent

12   you are able to prove that your client was damaged, it should

13   be allowed to pay, to reimburse itself for some of that damage

14   by the money that PG&E is claiming against your client for

15   really unrelated matters.  It's the doctrine of set-off that

16   exists in the common law and California law.

17         So what that means to a layperson is your client

18   doesn't have to pay PG&E while it is trying to vindicate its

19   rights that would, if correct, would satisfy, otherwise, the

20   obligation to pay.

21         So again I'll repeat my question.  If at the end of

22   the day, whether by arbitration, claims resolution, whatever,

23   if it ends up that PG&E damaged your client by -- I want to

24   stay clear of whether it's 900,000 or 300,000 or some --

25   damaged your client by some amount, then that will be the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1     determination that your client is owed that amount, and PG&E is

2     owed its amount which for these purposes looks like it's no

3     more than 264,000 dollars, and those just set off one another.

4     So if you win a judgment for 265,000, they owe you

5     1,000 bucks, and your client doesn't pay the 264.  If you get a

6     judgment for 50,000 dollars, PG&E is going to look to you for

7     264 minus that amount.  That's all this does.  And that -- so

8     what else could you hope for?

9     No, of course, I am not condoning PG&E turning the

10     power off for this reason.  And if they turn the power off for

11     some other reason, there are consequences.  And nobody's

12     endorsing that entitlement.

13     Mr. Benvenutti, have I said anything that is

14     inconsistent with your understanding of the way set-off works

15     and the way these things operate?

16     MR. BENVENUTTI:  No, Your Honor.  And I might add that

17     given that the Court implicitly accepts that PVF has

18     established a prima facie case for set-off with respect to the

19     court claim asserted in PVF's name against --

20     THE COURT:  The 264.

21     MR. BENVENUTTI:  -- the 264.

22     THE COURT:  Yeah.

23     MR. BENVENUTTI:  Right.  I'm confident that we can

24     work out a simple agreement that maintains the status quo and

25     that protects Ms. Duong's client against the risk of collection

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1   efforts by my client.  There was one instance that happened

2   that I am aware of, and it was as a result of miscommunication.

3          THE COURT:  Well, that happens.

4          MR. BENVENUTTI:  And I can't guarantee that that won't

5   happen again, but what I can, I think, guarantee with such an

6   agreement is that we would have in place a clear, simple

7   vehicle for dealing with it if it should happen, and making

8   sure that the intent of that agreement that I am suggesting is

9   enforced.

10         THE COURT:  Ms. Duong, how can you complain about

11  that?  I mean, that -- I mean, really, I understand your client

12  might feel completely spooked by this whole thing, but that's a

13  very traditional, sensible resolution.  And sure, PG&E is a

14  complicated case, and your client's situation is a little

15  unusual and unique.  But when you cut through all of that, it's

16  a very simple application of the principles of set-off as

17  imposed as the bankruptcy law operates it.  And as I say, I --

18  to me, I can't think of a simpler solution for the short term.

19         So once again, I'll say it to you.  If there's a

20  stipulated order, and Mr. Benvenutti's client proceeds to

21  violate that order, we have a thing called contempt.

22         But if your client violates the order, we have a thing

23  called contempt too.  So I'd rather not worry about that.  I'd

24  rather say two lawyers representing their clients agree on

25  behalf of -- or with the consent of their clients -- to what is

PG&E Corporation; Pacific Gas & Electric Company

1   a very simple and fairly very traditional kind of status quo.

2   And we can't protect against an accident -- accident of turning

3   off the light, the power, whatever.  But there are remedies if

4   that happens.

5           And again, I'm not really suggesting contempt.  What

6   I'm saying is that if you have a stipulation that maintains the

7   status quo, and then either resolves consensually or otherwise

8   through the claims process, the total amount of claims that

9   your client asserts minus what are proper set-offs -- again, if

10  Hanford suffered the damage and not PVF, then Hanford may be

11  able to have a set-off for its -- the bill to it.  If Hanford

12  didn't suffer damage, then Hanford better pay.

13          Now, Mr. Benvenutti is only addressing, and I'm only

14  addressing, the amount that are legitimately disputed, because

15  you concede that Hanford has a separate bill.  I'm not going to

16  worry about the 500-dollar one.  You haven't given everything

17  away.  It's just a fact.  It's a fact.  Hanford has been billed

18  for 126,000 dollars and hasn't paid it.  And why hasn't it paid

19  it?  Well, maybe as a practical matter, the answer is because

20  there's a way to come up with a global solution.  But in terms

21  of bankruptcy law, this makes sense to me.

22          MS. DUONG:  Okay.

23          MR. BENVENUTTI:  Now, you didn't -- Mr. Benvenutti,

24  can your client go the next step and  put the Hanford claim in

25  the same bundle of rights to maintain the status quo?

PG&E Corporation; Pacific Gas & Electric Company

1    MR. BENVENUTTI:  Not on this showing, Your Honor.  No.

2    At this point, unless we have some reason to understand that

3    Hanford, in fact, can assert a legitimate basis of set-off --

4        THE COURT:  And that it assert damage, right.

5        MR. BENVENUTTI:  Yes.  We can't do that.

6        THE COURT:  Okay.  But I mean, if there's some

7    documentation to support a prima facie case, then you have to

8    take another look at that.

9        MR. BENVENUTTI:  Absolutely.

10       THE COURT:  Again, I think we're back to what would

11   happen if there were no bankruptcy, and PG&E calls up Hanford

12   and says, you owe me 126,000 dollars, and Hanford says, no, you

13   owe me X dollars for the damage had.

14       MR. BENVENUTTI:  Correct.  And if Hanford, in fact,

15   has a basis for claiming that it's owed X dollars, we have to

16   take account of that.

17       THE COURT:  Right.

18       MR. BENVENUTTI:  On this record, I don't think it

19   does.

20       MS. DUONG:  Yeah.  I think the dispute really does

21   come down to, I think, the mechanism for having the adequate

22   protection for Mr. Verwey's properties, but also obviously

23   within this process as well.

24       I think -- and you said it yourself, like, the -- it's

25   not just a fear, but it's a real threat of the damages that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1    could happen if the power were shut off, which is what the

2    basis of the original motion and the original general claims

3    was for.

4         THE COURT:  No.  I understand that.  But to some

5    extent, your client, at the end of the day -- not the end of

6    the day -- today, your client undoubtedly says, we got damaged

7    by a lot of money, and we want to made whole for our damage.

8    There's nothing wrong with saying that, and if he or it can

9    prove its case, it should be made whole.  I don't disagree.

10   But if it can't, then that's life in the big city.  That's what

11   happens.

12        MS. DUONG:  Right.  Right.  And I think I was actually

13   more making a comment and a statement as to the agreement that

14   there would -- or a stipulation for order -- that no action

15   would be taken on these properties in between here and whenever

16   the litigation would presumably occur.

17        THE COURT:  But see, that gets back -- and I don't

18   want to turn this into a lecture from the judge to a lawyer,

19   perhaps, appearing here in my court for the first time -- I

20   think; maybe you have before, but I don't remember -- but

21   that's why you don't put in a reply brief at the last page, by

22   the way, can I have an injunction.  I mean, if you really think

23   PG&E is going to go off and do some bad things to you, get an

24   injunction.  But don't throw it into a reply brief at the end.

25        I mean, sure, again, I'm not going to minimize what

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1    your client must think, and it's ugly, tragic; about twenty

2    years ago, I had a case involving -- I was on the BAP, and I

3    had a case involving a dairy that there was an electrical

4    problem, and some of the cows were electrocuted. And it wasn't

5    funny, but that's what happened.

6          So your client -- some of your livestock, I think,

7    were damaged or injured or killed, right?

8          MS. DUONG: Correct.

9          THE COURT: Yeah. So it's the same history repeating

10   itself. So it's not funny, but if there were no bankruptcy,

11   and PG&E said, Mr. Verwey, you owe us a lot of money, and we're

12   going to turn off your power, and it's too bad if your cows

13   die, you might be down to Superior Court seeking an injunction

14   saying they can't turn off the power because we will suffer

15   harm, blah, blah, blah -- the usual injunction provisions.

16         So the point is you could have; you didn't. That's

17   not the issue. And the narrow issue is, can your client

18   exercise set-off, which is a legal way of saying, can your

19   client not pay what he doesn't think he has to pay because he,

20   in turn, has suffered corresponding or off-setting damages.

21   And as Mr. Benvenutti just stated, PVF at least makes a prima

22   facie case for damages that it has suffered, which is a prima

23   facie -- and by saying prima facie, I don't mean a ruling. It

24   just sounds like a credible argument. 264 owed PG&E, X

25   dollars -- possibly, likely more than 264 owed by PG&E.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1   Nothing could be more obvious than a set-off.

2           So my question to you, or my invitation to you is do

3   that, because that's what I think you're entitled to, and as

4   Mr. Benvenutti said on this record, he cannot concede that

5   there's another 126,000 because if you treat it that way, I'd

6   like to think he's not going to go back to the office and call

7   the client and say, turn off Hanford's power this afternoon.  I

8   would say that that would be surprising and that this is the

9   kind of thing that could be resolved all the way -- maybe not

10  all the way to complete resolution.  But if you can make a case

11  for a prima facie set-off of that 126, I'd be surprised if PG&E

12  would argue about your entitlement to turn the 264 set-off into

13  the total of the 390.  Again, I'm not going to worry about the

14  500 dollars.

15          MR. BENVENUTTI:  Your Honor, may I make this

16  suggestion?

17          THE COURT:  Yes, sir.

18          MR. BENVENUTTI:  I completely agree that this should

19  be done by agreement if at all possible, not by order.  I will

20  assure both the Court and Ms. Duong that PG&E's lawyers have

21  every expectation that PG&E would abide by such an agreement,

22  allowing for the risk of miscommunication, which is why build

23  into the agreement, some mechanism for flagging that issue if

24  it should happen, and dealing with it expeditiously.

25          I would suggest that Ms. Duong and I attempt to work

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1    out such a simple agreement, which I think can be done based on

2    the Court's guidance, and I would be happy to have a continued

3    hearing holding date as assurances to Ms. Duong that will make

4    that happen, and if need be, we'll be back in front of the

5    Court to sort it out at that point.

6          THE COURT:  I'd like to avoid that.  But can you live

7    with that?

8          MS. DUONG:  I think that -- obviously, I haven't

9    consulted my client on --

10         THE COURT:  Right.

11         MS. DUONG:  -- these suggestions.  But I think my -- I

12   think I have an inkling that my client would be more protected

13   and feel more comfortable with a stipulated order.  I think

14   that is much more protection for miscommunications for

15   additional demands and threats, and I think that's especially

16   the spooked -- I think that's what you -- the term you used

17   earlier.  He's especially spooked because power was shut off,

18   because threats were made, because voice messages were left,

19   and emails, and to his staff, to himself.  And because of that,

20   I think the stipulated -- if there was -- if we agree to

21   anything, it would be a stipulation by order.

22         THE COURT:  Okay.  I'm going to -- I'm going to permit

23   that and give you a continued date.  I think I'm a little

24   troubled by the amount of money that, perhaps, has been spent

25   on what still is a fairly narrow issue, but I don't minimize

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1  your client -- particularly the client's anxiety and concerns

2  about this.  And the fact is, you probably would be telling me

3  if your client called you this morning to say they just turned

4  the power off.

5          So I'm going to give you a continued date and ask you

6  to -- Mr. Benvenutti to work out some accommodation -- some

7  resolution that might maintain the status quo.

8          And beyond the status quo, if possible.  I mean, great

9  if this thing could be resolved completely.  As I say, we can't

10 solve the problem, and maybe it's beyond the ability to handle

11 it in this fashion to say what's the total off-setting claim,

12 but maybe there's a way to negotiate that too.  That's for

13 another day.

14         MR. BENVENUTTI:  Your Honor, if I may --

15         THE COURT:  Yeah.

16         MR. BENVENUTTI:  -- there have been attempts to

17 reach --

18         THE COURT:  Right.

19         MR. BENVENUTTI:  -- a global settlement.  Those

20 attempts have been unsuccessful.  Hope always springs eternal.

21 I don't want to convey a false sense of --

22         THE COURT:  No.

23         MR. BENVENUTTI:  -- optimism.  At this point, I think

24 it is likely that there will need to be litigation through the

25 claims objection process to resolve --

23

PG&E Corporation; Pacific Gas & Electric Company

1        THE COURT:  Well, that was my next --

2        MR. BENVENUTTI:  -- PVF's claim.

3        THE COURT:  -- question I had.  I didn't -- and maybe

4   it's in the papers -- have your client -- has the client -- and

5   they filed claims under the -- in the case?  Yeah, I mean, the

6   claim's bar date is still running.  Have they filed a claim

7   yet?

8        MS. DUONG:  Are you asking if they filed proofs of

9   claims?

10       THE COURT:  Yes.

11       MS. DUONG:  Yes, they have.

12       THE COURT:  Okay.

13       MR. BENVENUTTI:  Yeah.  So the agreement that I have

14  in mind would remain in place until there's a resolution of the

15  PVF claim.

16       THE COURT:  Right.  Right.  Yeah, I don't know as I

17  sit here how unconsensual (sic) claims resolution is going to

18  happen.  That's a bigger question that affects more than your

19  client and the dairy problem.  Obviously, it affects tens of

20  thousands of claims in the fire end of the case.  It's on the

21  to-do list of all the principal lawyers and the judge.

22       MS. DUONG:  And I don't doubt that, Your Honor.

23       THE COURT:  And so to the extent that the lawyers and

24  the judge can take care of, either for the short-term or

25  permanently, something that is unrelated to the fire claims,

PG&E Corporation; Pacific Gas & Electric Company

1    then that's progress.

2          So all right.  I'm going to take -- look, Mr.

3    Benvenutti knows the bankruptcy law -- I'm not suggesting you

4    don't.  What I'm saying is, he knows it and how I operate in

5    this case and other cases and bankruptcy judges generally.  And

6    he knows, and I'm sure you know, the fundamental principles of

7    set-off.  And that's why I'm not even getting into this debate

8    about post- and pre-petition and everything else.

9          I take this case, as many of the cases that I deal

10   with in the PG&E case -- how would we handle this if there were

11   no bankruptcy?  And the answer is, I think, if I were a

12   Superior Court judge, and I was having a discussion with you

13   too, Counsel, about this kind of dispute, I think the

14   resolution would be the same.  And there's nothing magic about

15   bankruptcy.  It's just a little more difficult because of the

16   different terminology, and the applicable statutes, and so on.

17         But at the end of the day, it is a recognition of

18   claims that are going both ways:  one of which is undisputed,

19   the other which is disputed -- or the collection.

20         Why don't I do this.  There have been two or three

21   prior hearings.  We don't need to have you come to court and

22   spend money.  And Ms. Duong, you're certainly welcome to appear

23   by phone if you have -- I mean, Mr. Benvenutti didn't have to

24   come very far, but you had to come from Fresno.  So you really

25   ought to take to take advantage of our phones just for your own

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1    sake, but you're welcome here.

2         And I'm going to give you a later date for a holding

3    with the expectation that at least the short-term matter will

4    be resolved.  You can take Mr. Benvenutti's representation that

5    he will do what he, as counsel, can do to make sure that --

6    recommend to his client that nothing untoward happens in the

7    meantime.

8         And your client, for the time being, has the

9    functional equivalent of set-off.  I mean, it's one of these

10   weird things about the bankruptcy law.  You have to get

11   permission to do something the law permits you to do.  And

12   there are cases where people asserting rights of set-off have

13   substantial sums of money, and someone in bankruptcy has little

14   by comparison, and set-off as an offensive weapon.  Here, it is

15   not an offensive weapon.  Your client has acknowledged owing

16   this 390,000 dollars and wants to be vindicated for the off-

17   setting claim.  But beyond that, it's the same deal.

18        So I hope you can reach a temporal resolution and,

19   with luck, a permanent one.

20        MR. BENVENUTTI:  Your Honor, if I may --

21        THE COURT:  Yes, sir.

22        MR. BENVENUTTI:  -- one point of clarification.  I'm

23   not clear whether the Court is telling us that we need to come

24   up with a stipulated order or an agreement.  I strongly prefer

25   the latter for the reasons that the Court previously suggested.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1        THE COURT:  Well, but -- I mean, can't we kind of do

2  an order that makes the status quo?  I mean look, Mr.

3  Benvenutti, if PG&E, or any party, agrees to do something by

4  order and then accidentally errs, there's no consequence.  I

5  mean, there may be consequence, but certainly if your client --

6  there's a misunderstanding, it's not going to be a contempt-

7  type thing.  I mean, I got to -- I think we have to fashion

8  a --

9        MR. BENVENUTTI:  It's a big organization, Your Honor.

10        THE COURT:  It is.

11        MR. BENVENUTTI:  And I've discovered that

12  communication between its component parts is not always as

13  seamless as one would like.

14        THE COURT:  I'm going to -- well, Mr. Benvenutti, I'm

15  going to ask you to use your good judgment and experience to

16  see if you can come up with a -- something that is acceptable

17  to both sides in terms of -- I mean, you have a lot of

18  experience with this in the bankruptcy court, in my court, and

19  if you can come up with language that opposing counsel will

20  agree with and feel comfortable with, then I'd like you to try

21  to do it.  If not, I guess I'll do it.

22        MR. BENVENUTTI:  All right.  Very well, Your Honor.

23        THE COURT:  Okay.

24        MR. BENVENUTTI:  We'll certainly give it a shot.  Does

25  the Court have in mind the middle of August, or the latter part

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1  of August?

2  THE COURT:  Well, I mean, we've got our dates out

3  there.  I mean, with this big organization, how long is it

4  going to take to kind of formalize putting this thing in place?

5  MR. BENVENUTTI:  I don't think -- I don't think it

6  should take long, assuming we can reach agreement on what it

7  says with Ms. Duong and her client.

8  THE COURT:  Well, I mean, we have a calendar in the

9  latter part of August, and as your client's and co-counsel

10  know, our mid-August calendar is getting a little crowded.

11  MR. BENVENUTTI:  Yes.  Yes.

12  THE COURT:  Not to say the other ones aren't.

13  MR. BENVENUTTI:  It's jammed.  Yes, Your Honor.

14  THE COURT:  What's our August date?  The 28th?

15  MS. DUONG:  We have the --

16  MR. BENVENUTTI:  28th would -- 28th would be fine with

17  me, if that works for Ms. Duong.

18  THE COURT:  Oh, Ms. Parada, we have a --

19  THE CLERK:  The 27th and the 28th --

20  THE COURT:  Yeah, but do we have things on either of

21  those dates yet?

22  THE CLERK:  On both.

23  THE COURT:  Which are the kind of more like relief

24  from stay-type stuff?  Is that the 27th?  I mean, we don't --

25  and for example, we -- well, you tell me.  What's on the 27th?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1          THE CLERK:  An application to retain Trident.

2          THE COURT:  Okay.  Ms. Duong, is that date convenient

3   for you?  And again, I -- invitation to do it by phone.

4          MS. DUONG:  Unfortunately, no, the 27th isn't.  I have

5   a conflict.

6          THE COURT:  How about the next day?

7          MS. DUONG:  But the 28th would work.

8          MR. BENVENUTTI:  All right.

9          THE COURT:  Okay.  Again, my invitation to you is

10  twofold.  You're welcome here, but I'd rather save your client

11  some money and let you do this by phone.  It's not going to

12  give Mr. Benvenutti an advantage.

13          And secondly, my other invitation is don't even come

14  back.  Work a deal and convince your client that he should be

15  comfortable with something that is worked out at this level.

16  There is always a risk of something going wrong, but that's the

17  same kind of risk that exists everywhere, and I can't make this

18  entire organization act like two lawyers and one judge coming

19  to a resolution.  It's like, it would be the same with

20  everything we're doing.  Superior Court, out of court, out of

21  bankruptcy, it's the whole bundle.

22          So I'm continuing it to 9:30 on the 28th with the hope

23  that you'll have a resolution.  Okay?

24          MR. BENVENUTTI:  Very well.  Thank you, Your Honor.

25          MS. DUONG:  Thank you, Your Honor.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corporation; Pacific Gas & Electric Company

1      THE COURT:  Good luck.  Thank you for coming, Ms.

2   Duong, and for your presentation.

3      All right.  That's the only matter we have on the PG&E

4   calendar today.  So anyone on the phone and anyone in court,

5   please -- anything else, that's it for PG&E today.

6      (Whereupon these proceedings were concluded at 10:09 AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net

1    C E R T I F I C A T I O N

2

3  I, Jennifer Naus, certify that the foregoing transcript is a

4  true and accurate record of the proceedings.

5

6

7

8  *Jennifer J. Naus*

9

10 _____

11 /s/ JENNIFER NAUS

12

13 eScribers

14 7227 N. 16th Street, Suite #207

15 Phoenix, AZ 85020

16

17 Date:  August 1, 2019

18

19

20

21

22

23

24

25



## A

**abide (1)**
20:21
**ability (1)**
22:10
**able (2)**
13:12;16:11
**Absolutely (3)**
6:25;8:2;17:9
**acceptable (1)**
26:16
**accepts (1)**
14:17
**accident (2)**
16:2,2
**accidentally (1)**
26:4
**accommodation (1)**
22:6
**account (2)**
13:10;17:16
**accounting (2)**
9:23;11:25
**acknowledged (1)**
25:15
**act (1)**
28:18
**action (2)**
8:10;18:14
**actions (2)**
12:8;13:3
**actually (3)**
6:25;7:5;18:12
**add (3)**
10:23,23;14:16
**additional (1)**
21:15
**addressed (1)**
8:23
**addressing (2)**
16:13,14
**adequate (5)**
9:15,18;11:2;12:6;
17:21
**advantage (2)**
24:25;28:12
**affects (2)**
23:18,19
**afternoon (1)**
20:7
**again (12)**
9:3;13:4,21;15:5,19;
16:5,9;17:10;18:25;
20:13;28:3,9
**against (8)**
5:21;7:15;8:10;
11:14;13:14;14:19,25;
16:2
**ago (2)**
11:11;19:2
**agree (6)**

8:15;12:7;15:24;
20:18;21:20;26:20
**agreement (19)**
5:20;6:22;7:1;9:18,
22;10:9,14,14;14:24;
15:6,8;18:13;20:19,21,
23;21:1;23:13;25:24;
27:6
**agrees (2)**
11:21;26:3
**allowed (2)**
11:22;13:13
**allowing (1)**
20:22
**along (1)**
11:6
**alternatively (1)**
11:23
**although (2)**
6:3;8:23
**always (3)**
22:20;26:12;28:16
**amazed (1)**
5:15
**amount (11)**
5:16;6:23;7:6,16;
13:25;14:1,2,7;16:8,
14;21:24
**Annie (1)**
5:10
**anticipated (1)**
5:18
**anxiety (1)**
22:1
**appear (1)**
24:22
**Appearances (1)**
5:8
**appearing (2)**
5:10;18:19
**applicable (1)**
24:16
**application (2)**
15:16;28:1
**appreciate (1)**
13:5
**arbitration (2)**
9:22;13:22
**argue (2)**
8:16;20:12
**argument (1)**
19:24
**aside (2)**
7:8;12:23
**assert (1)**
17:3,4
**asserted (2)**
5:21;14:19
**asserting (1)**
25:12
**asserts (1)**
16:9
**assume (1)**

8:8
**assuming (2)**
11:5;27:6
**assurances (1)**
21:3
**assure (1)**
20:20
**attempt (1)**
20:25
**attempts (3)**
10:14;22:16,20
**August (4)**
26:25;27:1,9,14
**avoid (1)**
21:6
**aware (1)**
15:2
**away (1)**
16:17

## B

**back (8)**
8:24;10:19;11:11;
17:10;18:17;20:6;21:4;
28:14
**bad (2)**
18:23;19:12
**bankruptcy (19)**
6:12;8:11;10:2,24;
11:13;12:14;13:2;
15:17;16:21;17:11;
19:10;24:3,5,11,15;
25:10,13;26:18;28:21
**BAP (1)**
19:2
**bar (1)**
23:6
**based (1)**
21:1
**basically (1)**
7:3
**basis (4)**
8:2;17:3,15;18:2
**behalf (2)**
5:14;15:25
**BENVENUTTI (51)**
4:7,8,10;5:3,13,14,
25;6:1;9:17;11:21;
14:13,16,21,23;15:4;
16:13,23,23;17:1,9,
14,18;19:21;20:4,15,
18;22:6,14,16,19,23;
23:2,13;24:3,23;25:20,
22;26:3,9,11,14,22,24;
27:5,11,13,16;28:8,12,
24
**Benvenutti's (3)**
5:19;15:20;25:4
**better (1)**
16:12
**beyond (3)**
22:8,10;25:17

**big (4)**
13:6;18:10;26:9;
27:3
**bigger (1)**
23:18
**bill (5)**
10:18;12:25,25;
16:11,15
**billed (6)**
6:7,8,9;7:16;8:5;
16:17
**blah (3)**
19:15,15,15
**Bolts (1)**
5:4
**both (4)**
20:20;24:18;26:17;
27:22
**brief (2)**
18:21,24
**briefing (1)**
11:17
**briefs (1)**
6:3
**bring (1)**
10:10
**bucks (1)**
14:5
**build (1)**
20:22
**bundle (2)**
16:25;28:21
**business (2)**
6:4;8:6

## C

**calendar (3)**
27:8,10;29:4
**CALIFORNIA (2)**
4:1;13:16
**Call (6)**
4:3,21;10:19;12:20,
20;20:6
**called (3)**
15:21,23;22:3
**calls (2)**
12:17;17:11
**can (23)**
4:23;5:22;9:17;
11:18;14:23;15:5,10;
16:24;17:3;18:8,22;
19:17,18;20:10;21:1,6;
23:24;25:4,5,18;26:16,
19;27:6
**cancellation (1)**
6:13
**care (1)**
23:24
**case (14)**
10:17;14:18;15:14;
17:7;18:9;19:2,3,22;
20:10;23:5,20;24:5,9,

10
**cases (4)**
8:25;24:5,9;25:12
**cast (1)**
4:9
**caused (1)**
9:8
**certain (1)**
7:4
**certainly (4)**
7:8;24:22;26:5,24
**charge (1)**
10:5
**charges (1)**
8:20
**cite (1)**
8:25
**city (1)**
18:10
**claim (16)**
6:13;9:2,2,8,9,11,13;
11:14,14,14;14:19;16:24;
22:11;23:2,6,15;25:17
**claiming (2)**
13:14;17:15
**claims (16)**
5:21;6:20;7:22;9:3,
3;13:22;16:8,8;18:2;
22:25;23:5,9,17,20,25;
24:18
**claim's (1)**
23:6
**clarification (1)**
25:22
**clear (3)**
13:24;15:6;25:23
**CLERK (11)**
4:4,14,16,19,21,23;
5:1,7;27:19,22;28:1
**client (49)**
6:4,10;7:9,15;8:6;
9:3,7,17,25;10:4;
11:22;12:17;13:6,11,
12,14,17,23,25;14:1,5,
25;15:1,11,20,22;16:9,
24;18:5,6,19;14:6,17,19;
20:7;21:9,12;22:1,3;
23:4,4,19;25:6,8,15;
26:5;27:7;28:10,14
**clients (4)**
5:22;7:16;15:24,25
**client's (4)**
5:19;15:14;22:1;
27:9
**co-counsel (1)**
27:9
**collateral (1)**
9:12
**collection (2)**
14:25;24:19
**comfortable (3)**
21:13;26:20;28:15
**coming (2)**

Case: 19-30088    Doc# 3358    Filed: 08/01/19    Entered: 08/01/19 19:23:08    Page 31
of 37

28:18;29:1
**comment (1)**
  18:13
**common (1)**
  13:16
**communication (1)**
  26:12
**comparison (1)**
  25:14
**complain (1)**
  15:10
**complete (1)**
  20:10
**completely (3)**
  15:12;20:18;22:9
**complicated (3)**
  11:16,20;15:14
**component (1)**
  26:12
**concede (2)**
  16:15;20:4
**concept (1)**
  10:25
**concerned (1)**
  8:20
**concerns (1)**
  22:1
**concluded (1)**
  29:6
**condoning (1)**
  14:9
**confident (1)**
  14:23
**conflict (1)**
  28:5
**consensually (1)**
  16:7
**consent (1)**
  15:25
**consequence (2)**
  26:4,5
**consequences (1)**
  14:11
**considered (1)**
  6:21
**consulted (1)**
  21:9
**contempt (3)**
  15:21,23;16:5
**contempt- (1)**
  26:6
**continued (3)**
  21:2,23;22:5
**continuing (1)**
  28:22
**convenient (1)**
  28:2
**convey (1)**
  22:21
**convince (1)**
  28:14
**Corporation (1)**
  5:7

**corresponding (1)**
  19:20
**Counsel (5)**
  5:8;6:22;24:13;25:5;
  26:19
**countless (1)**
  13:7
**course (1)**
  14:9
**Court (94)**
  4:3,4,6,8,13,15,18,
  20,21,22,24;5:2,4,8,12,
  15;6:2,16,19,21;7:2,7,
  21,24;8:3,18,22;9:15;
  10:7,12,16;11:3,7,9;
  12:4,10,14;13:4;14:17,
  19,20,22;15:3,10;17:4,
  6,10,17;18:4,17,19;
  19:9,13;20:17,20;21:5,
  6,10,22;22:15,18,22;
  23:1,3,10,12,16,23;
  24:12,21;25:21,23,25;
  26:1,10,14,18,18,23,
  25;27:2,8,12,14,18,20,
  23;28:2,6,9,20,20;29:1,
  4
**Court's (1)**
  21:2
**cows (2)**
  19:4,12
**CPUC (1)**
  12:20
**credible (1)**
  19:24
**crowd (1)**
  4:9
**crowded (1)**
  27:10
**current (1)**
  12:25
**customer (3)**
  5:22;8:10,11
**cut (1)**
  15:15

**D**

**dairy (3)**
  7:9;19:3;23:19
**damage (6)**
  13:13;16:10,12;17:4,
  13;18:7
**damaged (7)**
  9:4;13:11,12,23,25;
  18:6;19:7
**damages (4)**
  9:25;17:25;19:20,22
**date (7)**
  21:3,23;22:5;23:6;
  25:2;27:14;28:2
**dates (2)**
  27:2,21
**day (7)**

12:17;13:22;18:5,6;
22:13;24:17;28:6
**deal (4)**
  12:21;24:9;25:17;
  28:14
**dealing (2)**
  15:7;20:24
**debate (1)**
  24:7
**debt (1)**
  7:22
**debtor (4)**
  6:9,10;9:12,15
**debtors (1)**
  5:14
**defend (1)**
  7:20
**defense (2)**
  8:13,13
**demand (1)**
  6:12
**demands (1)**
  21:15
**Dennis (1)**
  4:5
**department (2)**
  6:18,20
**desk (1)**
  10:19
**detail (1)**
  13:9
**details (1)**
  10:11
**determination (2)**
  9:22;14:1
**die (1)**
  19:13
**difference (4)**
  6:9;9:1;10:1;13:1
**different (4)**
  7:5,7;8:7;24:16
**differently (1)**
  5:24
**difficult (1)**
  24:15
**disagree (1)**
  18:9
**discovered (1)**
  26:11
**discussion (1)**
  24:12
**dispute (2)**
  17:20;24:13
**disputed (2)**
  16:14;24:19
**disputes (1)**
  7:6
**doctrine (1)**
  13:15
**doctrines (1)**
  12:16
**documentation (1)**
  17:7

**dollars (16)**
  6:7,8;8:1;9:21;10:19,
  20,23;14:3,6;16:18;
  17:12,13,15;19:25;
  20:14;25:16
**Done (3)**
  10:23;20:19;21:1
**doubt (1)**
  23:22
**down (3)**
  11:6;17:21;19:13
**Duong (48)**
  5:10,10,12,17;6:2,15,
  17,20,25;7:3,19,23;8:2,
  16,19;9:14;10:6,8,13;
  11:1,5,8;12:2,5,11;
  13:1;15:10;16:22;
  17:20;18:12;19:8;
  20:20,25;21:3,8,11;
  23:8,11,22;24:22;27:7,
  15,17;28:2,4,7,25;29:2
**Duong's (1)**
  14:25
**during (2)**
  10:15;12:11

**E**

**earlier (1)**
  21:17
**efforts (1)**
  15:1
**either (5)**
  9:21;11:2;16:7;
  23:24;27:20
**electrical (1)**
  19:3
**electrocuted (1)**
  19:4
**else (4)**
  11:24;14:8;24:8;
  29:5
**email (1)**
  4:16
**emails (1)**
  21:19
**emerges (1)**
  10:2
**End (8)**
  9:24;10:1;13:21;
  18:5,5,24;23:20;24:17
**endorsing (1)**
  14:12
**ends (1)**
  13:23
**enforced (1)**
  15:9
**enormous (1)**
  5:16
**entered (1)**
  6:25
**entire (1)**
  28:18

**entities (2)**
  8:7;10:24
**entitled (1)**
  20:3
**entitlement (2)**
  14:12;20:12
**entity (1)**
  6:7
**equivalent (4)**
  9:2,10;11:15;25:9
**errs (1)**
  26:4
**especially (2)**
  21:15,17
**essentially (1)**
  10:13
**established (1)**
  14:18
**eternal (1)**
  22:20
**even (6)**
  7:24;8:6,20;11:2;
  24:7;28:13
**everywhere (1)**
  28:17
**exactly (1)**
  8:2
**example (2)**
  12:7;27:25
**excess (1)**
  10:1
**exercise (5)**
  8:14;9:20;11:12,23;
  19:18
**exists (2)**
  13:16;28:17
**expectation (2)**
  20:21;25:3
**expeditiously (1)**
  20:24
**experience (2)**
  26:15,18
**explore (1)**
  7:5
**exploring (1)**
  6:21
**extent (4)**
  8:12;13:11;18:5;
  23:23
**extremely (1)**
  5:16

**F**

**facie (6)**
  14:18;17:7;19:22,23,
  23;20:11
**fact (5)**
  16:17,17;17:3,14;
  22:2
**fairly (2)**
  16:1;21:25
**false (1)**

Case: 19-30088    Doc# 3358    Filed: 08/01/19    Entered: 08/01/19 19:23:08    Page 32
of 37

22:21
**fancy (1)**
10:5
**far (1)**
24:24
**Farm (2)**
5:11;9:3
**fashion (2)**
22:11;26:7
**fear (1)**
17:25
**feel (3)**
15:12;21:13;26:20
**few (1)**
6:8
**file (1)**
8:9
**filed (7)**
5:17,18;7:15;11:11;
23:5,6,8
**final (3)**
9:23;11:24;13:10
**find (1)**
10:8
**fine (2)**
8:7;27:16
**fire (2)**
23:20,25
**first (1)**
18:19
**flagging (1)**
20:23
**focus (3)**
8:3,19;9:3
**forget (2)**
7:13;10:17
**formalize (1)**
27:4
**forms (1)**
6:4
**forth (1)**
8:24
**FRANCISCO (1)**
4:1
**Fresno (1)**
24:24
**front (1)**
21:4
**functional (2)**
11:15;25:9
**fundamental (1)**
24:6
**funny (2)**
19:5,10

**G**

**general (1)**
18:2
**generally (1)**
24:5
**gets (3)**
6:23;11:16;18:17

**given (2)**
14:17;16:16
**global (2)**
16:20;22:19
**Good (7)**
4:6,7;5:12,13;8:25;
26:15;29:1
**grant (1)**
11:23
**great (1)**
22:8
**guarantee (2)**
15:4,5
**guess (2)**
4:25;26:21
**guidance (1)**
21:2
**guys (2)**
10:20;12:21

**H**

**handle (2)**
22:10;24:10
**Hanford (14)**
6:7;8:5;10;16:10,10,
11,12,15,17,24;17:3,
11,12,14
**Hanford's (1)**
20:7
**happen (7)**
15:5,7;17:11;18:1;
20:24;21:4;23:18
**happened (3)**
7:12;15:1;19:5
**happens (6)**
9:12;11:24;15:3;
16:4;18:11;25:6
**happy (1)**
21:2
**harm (2)**
9:8;19:15
**heard (4)**
4:15;12:15,15,16
**hearing (1)**
21:3
**hearings (1)**
24:21
**hey (2)**
10:21;12:21
**himself (1)**
21:19
**history (2)**
10:18;19:9
**hold (1)**
11:22
**holding (2)**
21:3;25:2
**home (1)**
10:18;12:22
**Honor (15)**
4:7;5:13;6:1,15;
14:16;17:1;20:15;

22:14;23:22;25:20;
26:9,22;27:13;28:24,
25
**Honorable (1)**
4:5
**hope (4)**
14:8;22:20;25:18;
28:22
**hopefully (1)**
4:12
**house (1)**
7:9
**hundred (3)**
6:6,8;12:19

**I**

**impaired (1)**
9:16
**implicitly (1)**
14:17
**imposed (1)**
15:17
**inappropriate (1)**
11:19
**including (1)**
8:24
**inconsistent (1)**
14:14
**injunction (5)**
11:18;18:22,24;
19:13,15
**injured (1)**
19:7
**inkling (1)**
21:12
**instance (1)**
15:1
**instances (1)**
11:8
**intent (1)**
15:8
**interconnection (1)**
8:16
**interesting (1)**
6:5
**interim (1)**
7:1
**into (6)**
6:25;18:18,24;20:12,
23;24:7
**invitation (4)**
20:2;28:3,9,13
**invoices (1)**
8:17
**involving (2)**
19:2,3
**issue (5)**
10:8;19:17,17;20:23;
21:25
**issues (1)**
7:5

22:14;23:22;25:20;

**J**

**jammed (1)**
27:13
**judge (5)**
18:18;23:21,24;
24:12;28:18
**judges (1)**
24:5
**judgment (3)**
14:4,6;26:15
**judicial (1)**
9:22
**JULY (1)**
4:1

**K**

**keep (1)**
7:4
**killed (1)**
19:7
**kind (11)**
6:3;10:9,9;11:6;
16:1;20:9;24:13;26:1;
27:4,23;28:17
**knows (3)**
24:3,4,6

**L**

**labels (1)**
11:13
**language (1)**
26:19
**last (1)**
18:21
**late (1)**
6:3
**later (2)**
7:12;25:2
**latter (3)**
25:25;26:25;27:9
**law (10)**
8:12,24;9:1;13:16,
16;15:17;16:21;24:3;
25:10,11
**lawsuit (1)**
7:15
**lawyer (1)**
18:18
**lawyers (5)**
15:24;20:20;23:21,
23;28:18
**layperson (2)**
7:18;13:17
**least (3)**
8:4;19:21;25:3
**leave (2)**
7:8;12:23
**lecture (1)**
18:18

**left (1)**
21:18
**legal (3)**
7:17;12:16;19:18
**legitimate (1)**
17:3
**legitimately (1)**
16:14
**lend (1)**
8:5
**level (1)**
28:15
**liability (1)**
7:5
**life (1)**
18:10
**light (3)**
7:11;13:6;16:3
**likely (2)**
19:25;22:24
**line (1)**
11:6
**list (1)**
23:21
**listen (2)**
4:17,18
**litigation (3)**
9:5;18:16;22:24
**little (4)**
5:24;15:14;21:23;
24:15;25:13;27:10
**live (1)**
21:6
**lives (1)**
7:9
**livestock (1)**
19:6
**long (2)**
27:3,6
**look (7)**
4:23,24;11:10;14:6;
17:8;24:2;26:2
**looks (1)**
14:2
**lose (1)**
10:4
**lot (4)**
8:24;18:7;19:11;
26:17
**luck (2)**
25:19;29:1

**M**

**Madeira (1)**
6:8
**magic (1)**
24:14
**mail (1)**
4:16
**maintain (4)**
5:23;9:19;16:25;
22:7

Case: 19-30088    Doc# 3358    Filed: 08/01/19    Entered: 08/01/19 19:23:08    Page 33
of 37

**maintains (4)**
6:22;11:25;14:24;
16:6
**makes (4)**
9:1;16:21;19:21;
26:2
**making (2)**
15:7;18:13
**many (3)**
6:4;10:10;24:9
**matter (5)**
5:7;7:10;16:19;25:3;
29:3
**matters (1)**
13:15
**may (5)**
16:10;20:15;22:14;
25:20;26:5
**maybe (6)**
16:19;18:20;20:9;
22:10,12;23:3
**mean (30)**
4:22;5:25;6:9;7:17,
18,19,24;8:4,14;11:18;
12:23;15:11,11;17:6;
18:22,25;19:23;22:8;
23:5;24:23;25:9;26:1,
2,5,7,17;27:2,3,8,24
**means (1)**
13:17
**meantime (2)**
9:7;25:7
**mechanism (2)**
17:21;20:23
**merely (1)**
10:8
**message (1)**
12:12
**messages (1)**
21:18
**mid-August (1)**
27:10
**middle (1)**
26:25
**might (4)**
14:16;15:12;19:13;
22:7
**million (1)**
8:1
**mind (2)**
23:14;26:25
**minimize (2)**
18:25;21:25
**minus (2)**
14:7;16:9
**miscommunication (2)**
15:2;20:22
**miscommunications (1)**
21:14
**missed (1)**
4:21
**misunderstanding (1)**
26:6

**moment (2)**
5:5;8:9
**money (7)**
13:14;18:7;19:11;
21:24;24:22;25:13;
28:11
**Montali (1)**
4:5
**months (4)**
6:11;7:12;11:11,16
**more (16)**
4:11;7:16;8:19,20;
11:16,17;14:3;18:13;
19:25;20:1;21:12,13,
14;23:18;24:15;27:23
**morning (5)**
4:6,7;5:12,13;22:3
**motion (2)**
11:12;18:2
**much (2)**
9:23;21:14
**multiple (1)**
8:7
**must (1)**
19:1

**N**

**name (1)**
14:19
**narrow (3)**
5:17;19:17;21:25
**necessarily (2)**
11:2;12:2
**need (5)**
5:20;21:4;22:24;
24:21;25:23
**negotiate (1)**
22:12
**neither (1)**
8:22
**net (1)**
10:22
**next (3)**
16:24;23:1;28:6
**Nobody (1)**
11:25
**nobody's (1)**
14:11
**nonlawyer (1)**
7:24
**notices (1)**
6:17
**numbers (1)**
6:6

**O**

**objection (1)**
22:25
**obligation (1)**
13:20
**obvious (1)**

20:1
**obviously (3)**
17:22;21:8;23:19
**occur (1)**
18:16
**off (22)**
4:25;5:4;7:10,14;
11:23;12:8,13,17,21,
23,24;14:3,10,10;16:3;
18:1,23;19:12,14;20:7;
21:17;22:4
**off- (1)**
25:16
**offensive (2)**
25:14,15
**office (1)**
20:6
**offset (4)**
7:22;9:1,19,20
**off-setting (2)**
19:20;22:11
**once (1)**
15:19
**one (17)**
5:22;6:3,7;7:16;8:24,
25;12:17;13:7;14:3;
15:1;16:16;24:18;25:9,
19,22;26:13;28:18
**ones (1)**
27:12
**only (5)**
8:8;13:7;16:13,13;
29:3
**oOo- (1)**
4:2
**operate (2)**
14:15;24:4
**operates (1)**
15:17
**opponent (1)**
4:12
**opposing (2)**
6:22;26:19
**opposition (1)**
11:17
**optimism (1)**
22:23
**order (12)**
4:3;7:4;15:20,21,22;
18:14;20:19;21:13,21;
25:24;26:2,4
**organization (3)**
26:9;27:3;28:18
**original (2)**
18:2,2
**otherwise (2)**
13:19;16:7
**ought (1)**
24:25
**out (11)**
6:24;10:22;12:8;
14:24;21:1,5;22:6;
27:2;28:15,20,20

20:1
**outside (1)**
10:10
**overdue (1)**
10:19
**owe (9)**
7:21;8:1;9:9,24;
10:20;14:4;17:12,13;
19:11
**owed (5)**
14:1,2;17:15;19:24,
25
**owing (1)**
25:15
**own (2)**
8:25;24:25

**P**

**page (1)**
18:21
**paid (2)**
8:10,11;12:25;16:18,
18
**paper (1)**
5:17
**papers (3)**
6:2;13:9;23:4
**paperwork (1)**
5:16
**Parada (2)**
4:11;27:18
**Pardon (1)**
4:20
**part (2)**
26:25;27:9
**particularly (1)**
22:1
**parties (1)**
9:24
**parts (1)**
26:12
**party (2)**
12:24;26:3
**pay (12)**
7:11,25;9:8;10:4;
11:3;13:13,18,20;14:5;
16:12;19:19,19
**paying (1)**
6:13
**payment (1)**
10:20
**pays (2)**
10:1,2
**pending (1)**
10:15
**people (1)**
25:12
**perfectly (1)**
8:7
**perhaps (4)**
5:20,24;18:19;21:24
**period (2)**
7:4;12:11

**permanent (1)**
25:19
**permanently (1)**
23:25
**permission (1)**
25:11
**permit (1)**
21:22
**permits (1)**
25:11
**Peter (1)**
5:13
**PG&E (31)**
5:7,21;7:15;8:8;9:4;
10:1,4,18,18;11:14;
12:20;13:8,11,14,18,
23;14:1,6,9;15:13;
17:11;18:23;19:11,24,
25;20:11,21;24:10;
26:3;29:3,5
**PG&E's (2)**
6:18;20:20
**Philip (1)**
5:10
**phone (5)**
4:13;24:23;28:3,11;
29:4
**phones (1)**
24:25
**place (4)**
11:22;15:6;23:14;
27:4
**plan (1)**
10:3
**Please (4)**
4:8;5:3,8;29:5
**point (5)**
17:2;19:16;21:5;
22:23;25:22
**possible (2)**
20:19;22:8
**possibly (1)**
19:25
**post- (1)**
24:8
**power (14)**
12:12,18,21,23,24;
14:10,10;16:3;18:1;
19:12,14;20:7;21:17;
22:4
**practical (1)**
16:19
**prefer (1)**
25:24
**pre-petition (1)**
24:8
**presentation (1)**
29:2
**presiding (1)**
4:5
**presumably (2)**
6:9;18:16
**presume (1)**

Case: 19-30088    Doc# 3358    Filed: 08/01/19    Entered: 08/01/19 19:23:08    Page 34
of 37

12:19
**prevented (1)**
13:2
**previously (1)**
25:25
**prima (6)**
14:18;17:7;19:21,22,
23;20:11
**principal (1)**
23:21
**principles (2)**
15:16;24:6
**prior (1)**
24:21
**probably (2)**
4:21;22:2
**problem (5)**
10:7;13:6;19:4;
22:10;23:19
**problems (1)**
13:7
**procedurally (1)**
11:19
**proceedings (1)**
29:6
**proceeds (1)**
15:20
**process (3)**
16:8;17:23;22:25
**progress (1)**
24:1
**proofs (1)**
23:8
**proper (1)**
16:9
**properties (2)**
17:22;18:15
**protect (2)**
9:21;16:2
**protected (1)**
21:12
**protection (6)**
9:16,18;11:2;12:6;
17:22;21:14
**protects (1)**
14:25
**prove (3)**
13:11,12;18:9
**proves (1)**
9:25
**provide (1)**
9:15
**provisions (1)**
19:15
**purposes (1)**
14:2
**put (3)**
10:24;16:24;18:21
**putting (1)**
27:4
**PVF (5)**
9:3;14:17;16:10;
19:21;23:15

**PVF's (2)**
14:19;23:2

**Q**

**quo (12)**
5:23;6:23;7:4;9:19;
11:25;14:24;16:1,7,25;
22:7,8;26:2

**R**

**rather (3)**
15:23,24;28:10
**reach (4)**
9:21;22:17;25:18;
27:6
**reached (1)**
10:10
**read (1)**
6:2
**real (1)**
17:25
**really (10)**
5:18,25;7:10;12:6;
13:15;15:11;16:5;
17:20;18:22;24:24
**reason (3)**
14:10,11;17:2
**reasons (2)**
9:4;25:25
**received (1)**
6:12
**Recess (1)**
5:6
**recognition (1)**
24:17
**recommend (1)**
25:6
**reconciliation (1)**
13:10
**record (5)**
4:25;5:4;9:5;17:18;
20:4
**recover (1)**
7:15
**refund (1)**
10:22
**reimburse (1)**
13:13
**relevant (1)**
6:5
**relief (3)**
11:12,23;27:23
**remain (1)**
23:14
**remarking (1)**
4:10
**remedies (1)**
16:3
**remember (1)**
18:20
**repeat (1)**

13:21
**repeating (1)**
19:9
**reply (3)**
11:17;18:21,24
**representation (1)**
25:4
**representing (1)**
15:24
**resolution (11)**
9:6;13:22;15:13;
20:10;22:7;23:14,17;
24:14;25:18;28:19,23
**resolve (1)**
22:25
**resolved (3)**
20:9;22:9;25:4
**resolves (1)**
16:7
**respect (1)**
14:18
**response (5)**
5:19;7:14,17,18,19
**result (1)**
15:2
**retain (1)**
28:1
**right (30)**
5:8,25;7:23;8:8,9,15;
9:1,10;10:5,6,22;11:5;
12:9,10,21,25;14:23;
17:4,17;18:12,12;19:7;
21:10;22:18;23:16,16;
24:2;26:22;28:8;29:3
**rights (4)**
11:13;13:19;16:25;
25:12
**rise (1)**
4:4
**risk (5)**
6:18;14:25;20:22;
28:16,17
**ruling (1)**
19:23
**running (1)**
23:6
**runs (2)**
7:9;11:6

**S**

**sake (1)**
25:1
**same (7)**
10:24;16:25;19:9;
24:14;25:17;28:17,19
**SAN (1)**
4:1
**satisfy (1)**
13:19
**save (1)**
28:10
**saying (9)**

9:9,18;10:17;16:6;
18:8;19:14,18,23;24:4
**seamless (1)**
26:13
**seated (1)**
4:8
**secondly (1)**
28:13
**secured (6)**
9:2,2,9,10,13;11:14
**security (1)**
9:16
**seeking (1)**
19:13
**seem (1)**
4:11
**sense (3)**
8:25;16:21;22:21
**sensible (1)**
15:13
**separate (1)**
16:15
**service (2)**
7:11;10:19
**session (1)**
4:4
**set (3)**
4:19;11:23;14:3
**set-off (20)**
8:6,14;9:10;11:13,
23;12:15;13:15;14:14,
18;15:16;16:11;17:3;
19:18;20:1,11,12;24:7;
25:9,12,14
**set-offs (1)**
16:9
**setting (1)**
25:17
**settlement (2)**
9:5;22:19
**shedding (1)**
12:8
**short (1)**
15:18
**short-term (2)**
23:24;25:3
**shot (1)**
26:24
**showing (1)**
17:1
**shut (3)**
12:13;18:1;21:17
**sic (1)**
23:17
**sides (1)**
26:17
**significantly (1)**
4:11
**simple (6)**
10:17;14:24;15:6,16;
16:1;21:1
**simpler (1)**
15:18

**sit (1)**
23:17
**situation (2)**
12:7;15:14
**six (2)**
6:11;7:12
**solution (2)**
15:18;16:20
**solve (1)**
22:10
**somebody (1)**
10:21
**someday (1)**
9:5
**someone (1)**
25:13
**sorry (1)**
6:10
**sort (1)**
21:5
**sounds (1)**
19:24
**specific (1)**
6:6
**spend (1)**
24:22
**spent (1)**
21:24
**spooked (3)**
15:12;21:16,17
**springs (1)**
22:20
**staff (1)**
21:19
**started (1)**
11:11
**starting (1)**
12:19
**stated (1)**
19:21
**statement (1)**
18:13
**status (12)**
5:23;6:23;7:4;9:19;
11:25;14:24;16:1,7,25;
22:7,8;26:2
**statutes (1)**
24:16
**stay (3)**
11:12;13:2,24
**stay-type (1)**
27:24
**step (1)**
16:24
**still (2)**
21:25;23:6
**stipulated (4)**
15:20;21:13,20;
25:24
**stipulation (3)**
16:6;18:14;21:21
**stops (1)**
12:6

Case: 19-30088    Doc# 3358    Filed: 08/01/19    Entered: 08/01/19 19:23:08    Page 35
of 37

story (2)
  9:24;10:1
strongly (1)
  25:24
stuff (2)
  6:23;27:24
subject (1)
  9:13
substantial (1)
  25:13
sudden (1)
  12:23
suffer (2)
  16:12;19:14
suffered (4)
  9:25;16:10;19:20,22
suggest (1)
  20:25
suggested (1)
  25:25
suggesting (3)
  15:8;16:5;24:3
suggestion (2)
  5:20;20:16
suggestions (1)
  21:11
suit (1)
  8:9
sums (1)
  25:13
Superior (3)
  19:13;24:12;28:20
support (1)
  17:7
sure (6)
  9:16;15:8,13;18:25;
  24:6;25:5
surprised (1)
  20:11
surprising (1)
  20:8
suspend (1)
  7:3
swearing (1)
  12:20
switch (1)
  7:14

**T**

telephonic (1)
  4:19
telling (3)
  11:20;22:2;25:23
temporal (1)
  25:18
tens (1)
  23:19
term (2)
  15:18;21:16
terminology (1)
  24:16
terms (2)

16:20;26:17
third- (1)
  12:23
thousand (1)
  8:1
thousands (2)
  4:9;23:20
threat (6)
  6:12,13;7:8,11,13;
  17:25
threats (2)
  21:15,18
three (1)
  24:20
throw (2)
  6:3;18:24
today (3)
  18:6;29:4,5
to-do (1)
  23:21
total (3)
  16:8;20:13;22:11
traditional (3)
  8:6;15:13;16:1
tragic (1)
  19:1
treat (2)
  11:14;20:5
treats (1)
  9:1
trickled (1)
  12:12
trickles (1)
  11:6
Trident (1)
  28:1
troubled (1)
  21:24
try (2)
  7:7;26:20
trying (2)
  4:19;13:18
turn (8)
  7:10;14:10;18:18;
  19:12,14,20;20:7,12
turned (3)
  12:17,21;22:3
turning (4)
  7:14;12:24;14:9;
  16:2
twenty (1)
  19:1
two (3)
  15:24;24:20;28:18
twofold (1)
  28:10
type (1)
  26:7

**U**

ugly (1)
  19:1

Um-hum (1)
  7:2
unconsensual (1)
  23:17
under (1)
  23:5
understood (1)
  8:22
undisputed (2)
  10:5;24:18
undoubtedly (1)
  18:6
Unfortunately (1)
  28:4
unique (1)
  15:15
unless (1)
  17:2
unrelated (2)
  13:15;23:25
unsuccessful (1)
  22:20
untoward (1)
  25:6
unusual (1)
  15:15
up (8)
  4:19;9:17;13:23;
  16:20;17:11;25:24;
  26:16,19
usage (2)
  8:19;10:5
use (3)
  9:12;11:13;26:15
used (1)
  21:16
usual (1)
  19:15
usually (1)
  4:9
utility (1)
  7:10

**V**

variety (1)
  9:4
vehicle (1)
  15:7
Verwey (5)
  5:11;6:10;8:21;9:3;
  19:11
Verwey's (1)
  17:22
vindicate (1)
  13:18
vindicated (1)
  25:16
violate (1)
  15:21
violates (1)
  15:22
voice (2)

4:16;21:18

**W**

wants (2)
  9:12;25:16
way (15)
  4:12;6:5;7:7;9:18;
  11:11,18;14:14,15;
  16:20;18:22;19:18;
  20:5,9,10;22:12
ways (1)
  24:18
weapon (2)
  25:14,15
WEDNESDAY (1)
  4:1
weird (1)
  25:10
welcome (3)
  24:22;25:1;28:10
what's (5)
  11:20;12:21;22:11;
  27:14,25
whenever (1)
  18:15
where's (1)
  4:8
Whereupon (1)
  29:6
whole (5)
  10:17;15:12;18:7,9;
  28:21
win (1)
  14:4
within (1)
  17:23
words (1)
  7:17
work (5)
  14:24;20:25;22:6;
  28:7,14
worked (2)
  6:24;28:15
works (2)
  14:14;27:17
worry (3)
  15:23;16:16;20:13
wrong (5)
  8:8;12:1,3;18:8;
  28:16

**Y**

years (1)
  19:2
yesterday (1)
  5:19

**Z**

zeros (1)
  10:23

**1**

1,000 (1)
  14:5
10:09 (1)
  29:6
100 (1)
  10:22
126 (1)
  20:11
126,000 (4)
  8:5;16:18;17:12;
  20:5
130,000 (1)
  6:7
150 (1)
  10:20

**2**

2019 (1)
  4:1
260,000 (1)
  7:25
264 (8)
  10:1;14:5,7,20,21;
  19:24,25;20:12
264,000 (3)
  8:4;9:21;14:3
265,000 (1)
  14:4
27th (4)
  27:19,24,25;28:4
28th (6)
  27:14,16,19;28:7,
  22

**3**

300,000 (1)
  13:24
31 (1)
  4:1
390 (1)
  20:13
390,000 (2)
  7:25;25:16

**5**

50 (1)
  10:19
50,000 (1)
  14:6
500 (1)
  20:14
500-dollar (1)
  16:16

**9**

9:30 (1)

Case: 19-30088    Doc# 3358    Filed: 08/01/19    Entered: 08/01/19 19:23:08    Page 36
of 37

28:22
**9:33 (1)**
  4:1
**9:34 (1)**
  5:6
**9:36 (1)**
  5:6
**900,000 (1)**
  13:24

Case: 19-30088    Doc# 3358    Filed: 08/01/19    Entered: 08/01/19 19:23:08    Page 37
of 37