| | |
|---|---|
| Dennis F. Dunne (admitted *pro hac vice*)<br>Samuel A. Khalil (admitted *pro hac vice*)<br>MILBANK LLP<br>55 Hudson Yards<br>New York, New York 10001-2163<br>Telephone: (212) 530-5000<br>Facsimile: (212) 530-5219<br><br>and<br><br>Gregory A. Bray (SBN 115367)<br>Thomas R. Kreller (SBN 161922)<br>MILBANK LLP<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067<br>Telephone: (424) 386-4000<br>Facsimile: (213) 629-5063<br><br>*Counsel for the Official Committee<br>of Unsecured Creditors* | |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING THE AD HOC GROUP OF SUBROGATION CLAIMS HOLDERS' MOTION TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS PURSUANT TO SECTION 1121(d)(1) OF THE BANKRUPTCY CODE**<br><br>Date: August 13, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re: Docket No. 3147 |

The Official Committee of Unsecured Creditors (the "Official Committee") respectfully submits this statement in response to the *Motion of the Ad Hoc Group of Subrogation Claim Holders to Terminate the Debtors' Exclusive Periods Pursuant to Section 1121(d)(1) of the Bankruptcy Code* (the "Subrogation Group's Exclusivity Motion") [Docket No. 3147] filed by the Ad Hoc Group of Subrogation Claim Holders (the "Subrogation Group").[1]

**STATEMENT**

1. The Subrogation Group's Exclusivity Motion requests that the Court terminate the Debtors' exclusivity periods to permit the Subrogation Group to file a plan of reorganization described in that motion.

2. The Court had previously received and considered, on a preliminary basis, a similar request from the Ad Hoc Committee of Senior Unsecured Noteholders (the "Noteholders' Group"). At the July 24, 2019 hearing (the "Hearing") on the *Motion of the Ad Hoc Committee of Senior Unsecured Noteholders to Terminate the Debtors' Exclusive Periods Pursuant to Section 1121(d)(1) of the Bankruptcy Code* (the "Noteholders' Exclusivity Motion") [Docket No. 2741], the Court reiterated that credible, potentially confirmable plan proposals from parties in interest would be taken seriously so long as such proposals contained the "big ticket items"[2] and were made by proponents having the financial wherewithal to achieve plan confirmation.[3]

3. The Court ultimately decided to continue the Hearing to provide the various parties an opportunity to attempt to negotiate a protocol to govern the submission of chapter 11 plans. Thus, the protocol negotiations, the Noteholders' Exclusivity Motion and the Subrogation Group's Exclusivity Motion are all currently in play.

---

[1] Capitalized terms used in this summary have the meanings ascribed to them in the Subrogation Group's Exclusivity Motion.

[2] July 24, 2019 Hr'g Tr. at 75-76.

[3] Id. at 84.

4. At present, however, no such protocol is in place. To the extent that a protocol is established, it is of course possible that the term sheet attached to the Subrogation Group's Exclusivity Motion (the "<u>Subrogation Term Sheet</u>") would be made subject to such protocol. In the absence of such a protocol, however, the Official Committee makes this statement regarding the Subrogation Group's Exclusivity Motion and the Subrogation Term Sheet.

5. As a general matter, the Official Committee welcomes the parties to these cases to propose practical and feasible plans of reorganization. Competition is likely to improve the overall outcome for creditors and other stakeholders. Any competitive process, however, must be managed to protect against the potential distraction of plans that are not credible or potentially confirmable by June 30, 2020. A fundamental requirement to meet this standard must be some adequate level of committed funding. As currently proposed, the Subrogation Term Sheet does not pass this test.

6. Since the filing of the Subrogation Group's Exclusivity Motion, the Official Committee's advisors have analyzed and conducted diligence with respect to the Subrogation Term Sheet. While this diligence continues, the Official Committee has significant concerns that the Subrogation Group's proposal does not yet amount to a "credible, potentially confirmable plan" in its current iteration. The most significant deficiency in the Subrogation Term Sheet is its lack of feasibility – specifically, it is predicated on a multi-billion dollar rights offering, but there is no indication of who will actually provide or backstop that funding, let alone any level of commitment to do so. This multi-billion dollar funding hole in the Subrogation Term Sheet is significant, especially when compared to the Noteholders' term sheet, which features a committed investment of $22 billion dollars underwritten by certain specified members of the Noteholders' Group.

7. The Subrogation Group may argue that investors will be eager to fund its rights offering. The Official Committee, however, is concerned that such interest may be tepid at best as the proposal is presently constructed for several reasons. First, the rights offering is limited solely to the existing equity holders. Second, the amount of the recovery (approximately $15.8 billion) the Subrogation Group is projecting for its members and for the other subrogation claimants is exceedingly large. Third, the form of such recovery for subrogation claimants is largely (90%) convertible preferred equity (the "Mandatory Convertible Preferred Equity"), which would create a risk of material future dilution of the common stock being offered in the rights offering. Taken together, these factors might well dampen any interest of any potential investors deciding whether to invest the billions of dollars needed to fund the Subrogation Group's proposal.

8. Accordingly, the Official Committee believes that the Court should deny the relief sought in the Subrogation Group's Exclusivity Motion without prejudice to the Subrogation Group's right to come forward again in the future if it has the major components of a plan of reorganization further developed and committed in a timely manner.

[*Remainder of Page Left Intentionally Blank*]

## **CONCLUSION**

For the reasons set forth above, the Official Committee does not believe that a plan based on the Subrogation Term Sheet, is its current iteration, would be credible and potentially confirmable. The Official Committee therefore respectfully requests, in the absence of a plan protocol, that the Court deny the Subrogation Group's Exclusivity Motion without prejudice and grant such other and further relief as may be just and appropriate. To the extent the Subrogation Group obtains committed financing for its plan, adjusts downward its estimation of subrogation claims and/or makes other material changes, the Official Committee reserves the right to amend this statement.

Dated: August 6, 2019

**MILBANK LLP**
*/s/Gregory A. Bray*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*