WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF JOHN BOKEN IN SUPPORT OF SECOND LEASE EXTENSION MOTION**<br><br>Date: August 27, 2019<br>Time: 9:30am, Pacific Time<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Objection Deadline**: August 20, 2019<br>4:00 p.m. (Pacific Time) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, John Boken, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Managing Director in the Turnaround and Restructuring Services practice of AlixPartners, LLP, an affiliate of both AlixPartners, LLC and AP Services, LLC, ("**APS**"), which provides interim management services to PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"). I currently serve as the Deputy Chief Restructuring Officer for the Debtors as authorized by this Court by Order dated April 9, 2019 [Docket No. 1299].[1]

2. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

3. This Declaration is submitted in support of the *Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 365(d)(4) and B.L.R. 6006-1 Further Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* (the "**Motion**")[2] filed contemporaneously herewith.

---

[1] My education, background, and professional experience is described in the *Declaration of John Boken in Further Support of First Day Motions and Related Relief* [Docket No. 653] at 2–3.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

## The Debtors' Unexpired Leases

4. As set out in the Initial Extension Motion, the Debtors are party to over 100 Unexpired Leases for, among other things, offices, warehouses, parking and storage yards, aircraft hangars and data centers.

5. Following this Court's approval of the Initial Extension Motion, the Debtors sought consents for further extensions of time to assume or reject certain Unexpired Leases. The Debtors have entered into a number of stipulations with lessors who consent to such an extension for all Unexpired Leases to which they are party (collectively, the "**Consenting Lessors**") and continue to be in discussions with other lessors who contemplate providing similar extensions for the Unexpired Leases to which they are party.

6. The Debtors require additional time beyond the initial extension of August 27, 2019, to make a reasoned determination regarding whether to assume or reject the Extension Leases. Such an evaluation will necessarily include an assessment of which of the Extension Leases will be required for the ongoing operation of the Debtors' business and whether any Extension Leases could generate value by reason of an assignment or other disposition thereof.

## Basis for Extension of Time to Assume or Reject Unexpired Leases

7. These Chapter 11 Cases are among the largest and most complex chapter 11 filings in recent U.S. history. The Debtors employ approximately 24,000 employees and operate one of the largest electricity and natural gas utilities in the United States – servicing approximately 16 million customers throughout a 70,000-square-mile service area in northern and central California. The size and complexity of the Debtors' business, assets, regulatory framework, employee relationships, vendor relationships, and financing arrangements are self-evident. Since the filing of these Chapter 11 Cases, the Debtors have expended significant time and effort on ensuring the essential services it provides continues uninterrupted and have successfully stabilized their business operations and liquidity profile by restoring normal trade credit terms and virtually eliminating demands for cash collateral and other forms of credit enhancement that were rampant

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

at the inception of these cases. With this initial phase of the Chapter 11 Cases behind them, the Debtors are keenly focused on further advancing discussions regarding a chapter 11 plan while continuing to safely and reliably operate their business during the current wildfire season.

8. I believe that requiring the Debtors to assume or reject the Extension Leases at this time is premature without further clarity regarding the terms of a potential chapter 11 plan. The Debtors have made substantial progress since the filing of the Initial Extension Motion towards the development of a chapter 11 plan, including:

- Achieving key settlements with the 18 public governmental entities in the Northern California wildfire districts that resolve all of their wildfire claims for an aggregate amount of $1 billion;
- Engaging in ongoing negotiations and discussions with the other two wildfire claimants' constituencies in an effort to achieve a consensual resolution of their claims to be embodied in a chapter 11 plan;
- Setting a bar date of October 21, 2019 for filing claims;
- Filing an estimation motion to establish the Debtors' aggregate liability for wildfire claims that are to be treated under a chapter 11 plan; and
- Engaging in regular weekly meetings with the California Public Utilities Commission to assure that all issues within the jurisdiction and authority of the Commission are timely and comprehensively addressed in the context of a chapter 11 plan.

9. Additionally, on July 12, 2019, the California State legislature enacted AB-1054 (the "**Wildfire Legislation**") that is fundamental to the proposal of any confirmable plan, and to determine the funding needs for the Debtors' successful exit from chapter 11. That legislation addresses, among other things, the Governor's go-forward wildfire fund, the Debtors' costs and

conditions to participate in the fund, and the treatment of existing wildfire claims under a chapter 11 plan.

10. However, certain key contingencies remain unresolved in these Chapter 11 Cases that would directly impact the formulation of a chapter 11 plan, including most importantly a determination (whether through settlement or estimation) regarding the amount of the Debtors' aggregate wildfire liabilities. Furthermore, the Governor of California indicated when he signed the Wildfire Legislation that further legislative action may be forthcoming, that it was "not the end of the process" and that he "will be doing more in August" when the legislature returns next week. Lastly, the questions of who would be permitted to propose a chapter 11 plan and when, and what such a plan proposal would look like also impact what a restructuring of the Debtors' ongoing business would entail and, accordingly, any decision regarding which Extension Leases the Debtors should elect to assume or reject. Until these contingencies are resolved, I believe it would be premature to require the Debtors to make such a decision now, especially in circumstances where the Consenting Lessors have agreed to an extension of the deadline to make this decision.

11. The Debtors are party to 83 Extension Leases. Because of the size of the Debtors' operations and the complexity of these Chapter 11 Cases, the Debtors must evaluate the Extension Leases involving numerous properties while also (a) attending to the myriad of other issues in connection with the administration of these cases, (b) negotiating and developing a chapter 11 plan that is fair and equitable, (c) focusing on preserving and enhancing going concern value, and (d) continuing to operate and provide safe and reliable gas and electric utility services to 16 million Californians. As a result, the Debtors continue to finalize their evaluation of the economics of the Extension Leases to determine whether the assumption or rejection of each Extension Lease would make sense in light of their overall restructuring and benefit their estates, their creditors, their shareholders, and other parties in interest. Given the limited time and resources available, the

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Debtors' efforts in this respect have been focused on those Unexpired Leases for which they have not been able to obtain consent from a lessor to a further extension.

12. I believe that the deemed rejection of the Debtors' Extension Leases could disrupt the Debtors' ongoing operations and adversely impact the Debtors' restructuring efforts. The Debtors could be required to relocate their employees or critical infrastructure located in the properties leased pursuant to the Extension Leases. Without such relief, I understand that the Debtors will be forced to decide, without being afforded time to adequately consider the value of each Extension Lease and without the resolution of the unresolved issues in connection with their chapter 11 plan outlined above, whether to permanently forfeit their right to assume any Extension Leases, as a result of the "deemed rejected" provision of section 365(d)(4), or be compelled to assume any Extension Leases by August 27, 2019 to avoid deemed rejections, with the resultant imposition of potentially substantial administrative expenses on their estates.

13. The Debtors are committed to remaining current with respect to all undisputed postpetition obligations under the Extension Leases in compliance with section 365(d)(3) of the Bankruptcy Code. I believe that the requested extension does not adversely affect the Debtors' lessors with respect to the Extension Leases, and forcing the Debtors to prematurely decide whether to assume or reject the leases may prejudice the Consenting Lessors if their Extension Leases are rejected. The Debtors will continue evaluating the Extension Leases on an ongoing basis as expeditiously as practicable and will file appropriate motions as soon as informed decisions can be made.

14. In sum, considering the size and complexity of these Chapter 11 Cases, the status of the chapter 11 plan, the number of Extension Leases, the Debtors' payment of its postpetition obligations under the Extension Leases, the adverse effects of not granting the Extension for both the Debtors, the lack of damage to the Consenting Lessors by granting the Extension, and that the Consenting Lessors have consented to the relief being sought in the Motion, I believe that the relief

sought in the Motion is in the best interests of the Debtors, their estates, their creditors, their shareholders, and all parties in interest, and should be granted by the Court.

[*Remainder of page intentionally left blank*]

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Los Angeles, California on  August 6  2019.

_____
John Boken

*[Signature Page to Declaration in Support of Second Lease Extension Motion]*