Dario de Ghetaldi – Bar No. 126782
Amanda L. Riddle – Bar No. 215221
Steven M. Berki – Bar No. 245426
Sumble Manzoor – Bar No. 301704
**COREY, LUZAICH,**
**DE GHETALDI & RIDDLE LLP**
700 El Camino Real
P.O. Box 669
Millbrae, CA 94030-0669
Telephone: (650) 871-5666
Facsimile: (650) 871-4144
deg@coreylaw.com
alr@coreylaw.com
smb@coreylaw.com
sm@coreylaw.com

Michael S. Danko – Bar No. 111359
Kristine K. Meredith – Bar No. 158243
Shawn R. Miller – Bar No. 238447
**DANKO MEREDITH**
333 Twin Dolphin Drive, Suite 145
Redwood Shores, CA 94065
Telephone: (650) 453-3600
Facsimile: (650) 394-8672
mdanko@dankolaw.com
kmeredith@dankolaw.com
smiller@dankolaw.com

Eric Gibbs – Bar No. 178658
Dylan Hughes – Bar No. 209113
**GIBBS LAW GROUP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com

Attorneys for Fire Victim Claimants
Barbara Thompson and Raymond Breitenstein

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PG&E CORPORATION and<br>PACIFIC GAS AND ELECTRIC<br>COMPANY,<br><br>        Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br>*All papers shall be filed in the Lead Case,<br>No. 19-30088 (DM) | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>   (Jointly Administered)<br><br>**REPLY IN SUPPORT OF JOINDER IN MOTION OF OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR RELIEF FROM AUTOMATIC STAY TO PERMIT STATE COURT JURY TRIAL OF 2017 TUBBS WILDFIRE CLAIMS (Docket Nos. 2842-2851)**<br><br>Date:   August 14, 2019<br>Time:  9:30 a.m.<br> Place:  United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................6

II. DISCUSSION ......................................................................................................6

    A.   THE RIGHT TO TRIAL PREFERENCE UNDER CALIFORNIA LAW IS A SUBSTANTIVE RIGHT THAT IS BOTH ABSOLUTE AND MANDATORY ....6

    B.   DEBTORS MAY NOT USE THE BANKRUPTCY PROCESS TO ABRIDGE CREDITORS' SUBSTANTIVE RIGHTS THAT ARISE UNDER STATE LAW..8

    C.   THE EVIDENCE WILL SHOW THAT DEBTORS' ACTIONS WERE MALICIOUS AND WILLFUL .............................................................................9

        1.   The Debtors' Equipment Set Not One, But Two Fires that Developed into the Tubbs Fire ......................................................................................9

        2.   The Debtors Intentionally Failed to Cut Power to High Fire Danger Areas on the Night of October 8, 2017 .........................................................11

    D.   THE BANKRUPTCY COURT IS NOT AUTHORIZED TO AWARD PUNITIVE DAMAGES OR RULE ON PERSONAL INJURY CLAIMS ................................12

        1.   The Bankruptcy Court Lacks Authority to Award Exemplary Damages or Non-Compensatory Fines ...........................................................................12

        2.   Moving Parties Have Nondischargeable Claims for Several Distinct and Cumulative Types of Exemplary Damages .................................................12

        3.   Claims for Personal Injury ........................................................................13

        4.   Claims for Nuisance and Trespass ............................................................14

        5.   The Same Trier Of Fact Must Determine Both Liability And Damages Where Punitive Damages Are Sought .......................................................15

    E.   MOVING PARTIES' CLAIMS ARE NONDISCHARGEABLE .........................16

III. CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Acadia, California, Ltd. v. Herbert*, 54 Cal.2d 328, 5 Cal.Rptr. 686, 353 P.2d 294 (1960)............... 14

*Adams v. Murakami*, 54 Cal.3d 105, 284 Cal.Rptr. 318, 813 P.2d 1348 (1991) ............................... 15

*Barmas, Inc. v. Superior Court*, 92 Cal.App.4th 372, 112 Cal.Rptr.2d 71 (2001) ...................... 15, 16

*Carey v. Piphus*, 435 U.S. 247, 93 S.Ct. 1042, 55 L.Ed.2d 252 (1978) ........................................ 14

*City of El Monte v. Superior Court*, 29 Cal.App.4th 272, 34 Cal.Rptr.2d 490 (1994) ...................... 15

*City of San Jose v. Superior Court*, 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d  701 (1974) ......... 14

*Crisci v. Security Ins. Co. of New Haven, Conn.*, 66 Cal.2d 425, 58 Cal.Rptr. 13,
    426 P.2d 173 (1967) ......................................................................................... 14

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128 (9th Cir. 2001) ................ 12

*Heninger v. Dunn*, 101 Cal.App.3d 858, 162 Cal.Rptr. 104 (1980) ......................................... 13

*In re Adams*, 761 F.2d 1422 (9th Cir. 1985) ............................................................ 16

*In re Chateaugay Corp.*, 11 B.R. 67 (Bankr. S.D.N.Y. 1990) ............................................ 14

*In re Dyer*, 322 F.3d 1178 (9th Cir. 2003) ............................................................. 12

*In re Marino*, 577 B.R. 772, 788 (9th Cir. BAP 2017) ................................................... 12

*In re Waterman S.S. Corp.*, 63 B.R. 435  (Bankr. S.D.N.Y. 1986) ....................................... 14

*Kline v. Superior Court*, 227 Cal.App.3d 512, 277 Cal.Rptr. 851 (1991) ................................. 7

*Koch-Ash v. Superior Court,* 180 Cal.App.3d 689, 225 Cal.Rptr. 657 (1986) .............................. 7

*Laborers' International Union of North America v. El Dorado Landscape Co.*,
    208 Cal.App.3d 993, 256 Cal.Rptr. 632 (1989) .......................................................... 8

*Looney v. Superior Court*, 16 Cal.App.4th 521, 20 Cal.Rptr.2d 182 (1993) ............................. 7, 8

*Medo v. Superior Court*, 205 Cal.App.3d 64, 251 Cal.Rptr. 924 (1988) ................................... 15

*Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 1955,
    147 L.Ed.2d 13 (2000) .................................................................................. 8

*Rice v. Superior Court*, 136 Cal.App.3d 81, 185 Cal.Rptr. 853 (1982) .................................. 7

*Scholes v. Lambeth Trucking Co.*, 10 Cal.App.5th 590, 216 Cal.Rptr.3d 794
    (rev. granted 6/21/2017) ............................................................................... 13

*SeaBright Ins. Co. v. US Airways, Inc.*, 52 Cal.4th 590, 129 Cal.Rptr.3d 601,
258 P.3d 737 (2011) ................................................................................................ 11

*Snyder v. Southern California Edison Co.*, 44 Cal.2d 793, 285 P.2d 912 (1955) ............................ 11

*Swaithes v. Superior Court*, 212 Cal.App.3d 1082, 261 Cal.Rptr. 41 (1989) ................................ 7, 8

*Torres v. Automobile Club of So. California*, 15 Cal.4th 771, 63 Cal.Rptr.2d 859,
937 P.2d 290 (1997) ................................................................................................ 15

**Statutes**

11 U.S.C. § 105(a) ................................................................................................ 12

11 U.S.C. § 362(k)(1) ................................................................................................ 12

11 U.S.C. § 523(a)(6) ................................................................................................ 16

11 U.S.C. § 523(a)(9) ................................................................................................ 16

11 U.S.C. § 524 ................................................................................................ 12

28 U.S.C. 157(b)(5) ................................................................................................ 14

California Civil Code § 3294 ................................................................................ 9, 12, 13

California Civil Code § 3295(d) ................................................................................ 15

California Civil Code § 3340 ................................................................................ 13

California Civil Code § 3346 ................................................................................ 13

California Code of Civil Procedure § 36 ................................................................ 6, 7, 8, 17

California Code of Civil Procedure § 36(a) ................................................................ 6

California Code of Civil Procedure § 36(f) ................................................................ 7

California Code of Civil Procedure § 377.34 ................................................................ 8

California Code of Civil Procedure § 389 ................................................................ 6

California Code of Civil Procedure § 733 ................................................................ 13

California Code of Regulations § 1252 ................................................................ 9

California Code of Regulations § 1255 ................................................................ 9

California Public Resources Code § 4292 ................................................................ 9, 10

California Public Utilities Code § 2106 ................................................................ 12, 13

California Public Utilities Code § 2109 ................................................................ 13

California Public Utilities Code §§ 2105-2106 ............................................................. 9

**Rules**

Federal Rules of Evidence 802 ....................................................................................... 9

Federal Rules of Evidence 805 ....................................................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5

# I.  INTRODUCTION

Fire Victim Claimants Barbara Thompson and Raymond Breitenstein are two of the victims of the 2017 Tubbs Fire for which the Official Committee of Tort Claimants (the "TCC") has moved for an order terminating the automatic stay to allow certain victims to move for trial preference in the California North Bay Fire Cases, JCCP 4955 (the "Coordinated Action"), pursuant to California Code of Civil Procedure § 36 (the "TCC Motion").

As more fully set forth in their joinder filed (Doc. # 2861), Fire Victim Claimants John Thompson, Matthew Thompson, Peter Thompson, and Stephen Breitenstein are also parties of record in the Coordinated Action and in this pending Chapter 11 proceeding.  They are all indispensable parties under California Code of Civil Procedure § 389 whose joinder in their parents' preference trial would be compulsory and they also seek relief from automatic stay as requested in the TCC motion.

Debtors do not dispute that Barbara Thompson and Raymond Breitenstein are entitled to a preference trial or that their family members who are also victims of the Tubbs Fire would be indispensable parties in that action.  Instead, Debtors suggest that an estimation proceeding would "ensure maximum efficiency" for resolution of all claims – except for claims arising out of the Tubbs Fire. As to the Tubbs Fire, Debtors suggest that "the proper and most expeditious forum for addressing PG&E's responsibility for the Tubbs Fire is this Court, where *all* Wildfire Claimants and all other interested parties can be heard and can participate directly or through formal representative committees with fiduciary duties to their members" with "a hearing on the limited issue of causation of the Tubbs Fire [to be set] on October 7, 2019, or as soon as possible thereafter.  (Doc. # 3091, p. 14:4-10.)

As more fully set forth below, the Thompson and Breitenstein families strongly object to Debtors' suggestions because adopting Debtors' proposal would violate their substantive rights under California law and have this Court estimate claims that it would have no authority to determine in a trial.

# II.  DISCUSSION

## A.  THE RIGHT TO TRIAL PREFERENCE UNDER CALIFORNIA LAW IS A SUBSTANTIVE RIGHT THAT IS BOTH ABSOLUTE AND MANDATORY

It is well settled under California law that the right to trial preference under California Code of Civil Procedure § 36(a) is an ***absolute substantive right***:

Failure to complete discovery or other pre-trial matters does not affect the absolute substantive right to trial preference for those litigants who qualify for preference under subdivision (a) of section 36. The trial court has no power to balance the differing interests of opposing litigants in applying the provision. The express legislative mandate for trial preference is a substantive public policy concern which supersedes such considerations. Accordingly, subdivision (a) of section 36 is mandatory and absolute in its application in civil cases whenever the litigants are 70 years old. [Citations omitted; emphases added.]

*Swaithes v. Superior Court*, 212 Cal.App.3d 1082, 1085-1086, 261 Cal.Rptr. 41 (1989); *accord Rice v. Superior Court*, 136 Cal.App.3d 81, 88, 185 Cal.Rptr. 853 (1982) [Section 36(a) "must be concluded to have the purpose of protecting a substantive right."]; *Kline v. Superior Court*, 227 Cal.App.3d 512, 515-516, 277 Cal.Rptr. 851 (1991).

Trial preference under Section § 36(a) is ***mandatory*** if the statutory conditions are met. *Koch-Ash v. Superior Court*, 180 Cal.App.3d 689, 698-699, 225 Cal.Rptr. 657 (1986) [The trial court's authority and jurisdiction are limited by Section 36, and it lacks the discretion to balance other interests.]; see also *Rice*, *supra,* 136 Cal.App.3d at 86-89 [The Legislature intended Section 36(a) to be mandatory and ignoring the unquestionably controlling authority of the statute is an abuse of discretion.]; *Swaithes*, *supra*, 212 Cal.App.3d at 1086.

The timing of when the trial must be set is specifically, and separately, addressed in the language of California Code of Civil Procedure § 36(f), which states as follows:

"Upon the granting of such a motion for preference, the court shall set the matter for trial not more than 120 days from that date and there shall be no continuance beyond 120 days from the granting of the motion for preference except for physical disability of a party or a party's attorney, or upon a showing of good cause stated in the record."

Furthermore, the interests of other parties, court resources, and hypothetical concerns about "non-mutual collateral estoppel" may not be balanced against the rights of Plaintiffs under Section 36. Recall the unqualified statement of the Court of Appeal in *Swaithes*, *supra,* 212 Cal.App.3d at 1085-1086, "The trial court has ***no power*** to balance the differing interests of opposing litigants in applying the provision. The express legislative mandate for trial preference is a substantive public policy concern which supersedes such considerations. [Emphasis added.]"

The Court in *Looney v. Superior Court*, 16 Cal.App.4th 521, 532, 20 Cal.Rptr.2d 182 (1993), discussed the legislative intent of Section 36:

"There can be little argument that section 36 was enacted for the purpose of assuring that an aged or terminally ill plaintiff would be able to participate in the trial of his or her case and be able to realize redress upon the claim asserted. Such a preference is not only necessary to assure a party's peace of mind that he or she will live to see a particular dispute brought to resolution but it can also have substantive consequences. The party's presence and ability to testify in person and/or assist counsel may be critical to success. In addition, the nature of the ultimate recovery can be adversely affected by a plaintiff's death prior to judgment. (See, e.g., [California Code of Civil Procedure] § 377.34.)"

The *Looney* Court went on to state:

"This is not only the obvious intent of the words used in the statute, it is borne out by the legislative history. The comment to the digest of the legislation relating to section 36 by the Assembly Committee on Judiciary states: 'This Bill would provide an early trial date for persons who because of their advanced age or serious medical problems might die or become incapacitated before their cases come to trial.'"

*Looney*, *supra*, 16 Cal.App.4th at 532, fn. 12; *see also, Swaithes*, *supra*, 212 Cal.App.3d at 1086 ["The legislative intent of § 36 is to safeguard such litigants against the risk of death or incapacity depriving them of the opportunity to have their cases effectively tried and to obtain appropriate recoveries."].

The remedial provision of Section 36(a) is a legislative recognition of the maxim that "justice delayed is justice denied." *Laborers' International Union of North America v. El Dorado Landscape Co.*, 208 Cal.App.3d 993, 1007, 256 Cal.Rptr. 632 (1989).

## B. DEBTORS MAY NOT USE THE BANKRUPTCY PROCESS TO ABRIDGE CREDITORS' SUBSTANTIVE RIGHTS THAT ARISE UNDER STATE LAW

The Debtors may not use the bankruptcy process to abridge these elderly creditors' substantive rights that arise under California state law. The Bankruptcy Rules Enabling Act requires that bankruptcy rules "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075.

"Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code. The basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law. Unless some federal interest requires a different result, there is no reason why the state interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. [Citations and internal quotes omitted.]" *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 1955, 147 L.Ed.2d 13 (2000).

## C. THE EVIDENCE WILL SHOW THAT DEBTORS' ACTIONS WERE MALICIOUS AND WILLFUL

### 1. The Debtors' Equipment Set Not One, But Two Fires that Developed into the Tubbs Fire

The motion of the Ad Hoc Group of Subrogation Claim Holders for Relief from the Automatic Stay (Doc. ## 2863-2865) gives a preview of the evidence that will show that the Tubbs Fire was caused by a high-voltage PG&E distribution line and not by the low-voltage private lines on the Zink property.

Moving parties Barbara Thompson, John Thompson, Matthew Thompson, Peter Thompson, Raymond Breitenstein, and Stephen Breitenstein will be prepared to prove at trial that at 9:20 p.m. on the night of October 8, 2017, the Debtors' high-voltage distribution line along Bennett Lane in Calistoga set not one, but two fires that developed into the Tubbs Fire. These moving parties will further show that they are entitled to exemplary damages under California Civil Code § 3294 and additional cumulative exemplary damages under California Public Utilities Code §§ 2105-2106 for Debtors' knowing and reckless failure to make a 10-foot clearance around a non-exempt pole as required by California Public Resources Code § 4292 and California Code of Regulations §§ 1252 and 1255.[1]

---

[1] Debtors' Motion Pursuant to 11 U.S.C. §§ 105(A) and 502(C) for the Establishment of Wildfire Claims Estimation Procedures (Doc. # 3091) makes a number of references to the Cal Fire Report on the Tubbs Fire. (Doc. # 3019 at: p. 13, fn. 2; p. 16, fn. 4; p. 17, fn. 6, p. 17:3-6, fn. 7; p. 28:21-23, fn. 11, and p. 29:7-24.) Debtors offer many conclusions of fact from the Cal Fire Report, a report that itself is pure inadmissible hearsay. Fed.R.Ev. 802 and 805.

This Court should note that Cal Fire's Investigation Report into the Tubbs Fire, Case number 17CALNU010045, January 24, 2019, ("Report") has not been available on the Cal Fire website for several weeks. The URL, https://calfire.ca.gov/fire_protection/fire_protection_2017_siege, goes to a 404 "Page Not Found" error. It is unknown at this time whether Cal Fire removed the Report from its website because it is under review based on new evidence, a real possibility given that the Report did not consider twenty-six (26) depositions of Tubbs Fire witnesses that were taken before the Report was signed. The witnesses included first responders, eye-witness residents, and PG&E employees. Two hundred and fifteen (215) exhibits were used at those depositions, the vast majority of which were not referenced in the Cal Fire Report. Many depositions relating to the origin and cause of the Tubbs Fire remain to be taken.

In Debtor's December 28, 2018, response to Judge Alsup's initial inquiries, Debtors admitted to receiving notice of a continuing violation of the statutory clearance requirements around "Pole 773" and failed to correct that violation prior to the Tubbs Fire:

> "In the Tubbs Factual Summary, PG&E explained that fuse 773 is the closest fuse upstream of the incident location, located on ["Pole 773"]. That pole is adjacent to Bennett Lane, at the base of the hill on which Ms. Zink's property sits, located south of the main series of structures on Ms. Zink's property. **PG&E has become aware that due to a mapping error, vegetation on the ground beneath the pole with fuse 773 should have been cleared pursuant to Public Resources Code ('PRC') 4292 prior to October 8, 2017, but was not.**[1] [Emphasis added.]"

> Fn. 1: "California Public Resources Code § 4292 requires PG&E to maintain a firebreak of at least ten feet in radius around a utility pole if it is within a State Responsibility Area and has non-exempt equipment installed; a firebreak requires removal of all flammable materials including 'ground litter, duff and dead or desiccated vegetation that will allow fire to spread at ground level. A 2013 map drawn by a contractor mistakenly indicated that the pole with fuse 773 was within a Local Responsibility Area, which does not require a ten-foot firebreak. **This mistake was not corrected prior to October 8, 2017, although it was identified in 2016.** [Emphasis added.]"

(From Ex. ZZ to Debtors' 12/28/2018 Response to Judge Alsup's 11/27/2018 Order.)

Under California law, the duty to maintain the required clearance around non-exempt poles such as Pole 773 is a non-delegable duty, and Debtors cannot foist responsibility for failure to comply with the clearance requirements onto "a contractor." "The nondelegable duties doctrine prevents a party that owes a duty to others from evading responsibility by claiming to have delegated that duty

---

The Court should also note that Debtors and many others misstate the admittedly unusual conclusions of the Report that actually show an inherent bias: (1) "The source of ignition for the wild land fire in the subject area was electrically undetermined because of the severe damage to the electrical equipment in and around 1128 Bennett Ln." (Report, p. 74:19-21.); (2) "[T] the combination of physical evidence, data, witness statements, videos, etc. *do not confirm* that PG&E equipment was the source of ignition. [Emphasis added.]" (Report, p. 74:21-25.); and (3) "Gathered data, evidence, fire indicators, and witness statements established within this investigation, provide *no evidence to disprove* the structure itself or the private conductor line at 1128 Bennett Lane as a cause of the fire. [Emphasis added.]" (Report, p. 77:27-30.)

Finally, California Public Utilities Code § 315 provides in pertinent part: "Neither the order or recommendation of the commission nor any accident report filed with the commission shall be admitted as evidence in any action for damages based on or arising out of such loss of life, or injury to person or property." The Report was cited extensively and seemingly relied upon in the CPUC's Safety Enforcement Division's Incident Investigation Report on the Tubbs Fire dated May 13, 2019. ftp://ftp.cpuc.ca.gov/I19-06-015/I.19-06-015%20October%202017%20NorCal%20Fires/E20171026-01%20Tubbs%20Report%20and%20Attachments%20Redacted.pdf

to an independent contractor hired to do the necessary work. The doctrine applies when the duty preexists and does not arise from the contract with the independent contractor." *SeaBright Ins. Co. v. US Airways, Inc.*, 52 Cal.4th 590, 600-601, 129 Cal.Rptr.3d 601, 258 P.3d 737 (2011). Public utilities owe nondelegable duties to the public, but their liability "'extends only to negligence in the failing to take the necessary precautions, failing to adopt a reasonably safe method, or in failing to produce a result which it is the duty of the employer-contractee to have attained'." *Snyder v. Southern California Edison Co.*, 44 Cal.2d 793, 798 and 801, 285 P.2d 912 (1955).

### 2. The Debtors Intentionally Failed to Cut Power to High Fire Danger Areas on the Night of October 8, 2017

The evidence will show that Debtors maliciously and willfully failed to cut power to high fire danger areas on the night of October 8, 2017, including the area of origin of the Tubbs Fire and other tinder-dry areas of Napa and Sonoma Counties.

This failure was inexcusable and the evidence that would support an award for exemplary damages is overwhelming. Debtors knew that wildfire posed the most significant enterprise risk to PG&E and its customers. The Butte Fire in Calaveras County burned 70,000 acres, killed two people, and destroyed almost 600 residences just two years before. Debtors routinely ignored safety concerns raised by their employees, and punished those employees for raising those concerns, thereby creating a corporate culture of fear. Debtors intentionally refused to follow developing industry standards for cutting power during extreme weather conditions. Debtors anticipated the extreme weather conditions of the night of October 8th over a week before they descended on Northern California yet did nothing of significance to prepare for them or mitigate them.

Debtors literally threw the dice and gambled on the lives and property of the residents of Northern California. It was those residents who lost. Debtors's actions and inactions were not localized, but systemic, and tragically caused rampant destruction of life and property. The twenty-one (21) other North Bay Fires for which Debtors are at fault claimed the lives of at least forty-four (44) people, injured many others, burned over 245,000 acres, and destroyed over 14,700 homes in Sonoma, Napa, Mendocino, Solano, Lake, Butte, Calaveras, Nevada, and Yuba Counties. Try as they might, Debtors cannot ignore or trivialize the facts they are afraid to set in front of a jury.

**D. THE BANKRUPTCY COURT IS NOT AUTHORIZED TO AWARD PUNITIVE DAMAGES OR RULE ON PERSONAL INJURY CLAIMS**

**1. The Bankruptcy Court Lacks Authority to Award Exemplary Damages or Non-Compensatory Fines**

A trial for the Tubbs Fire will require a determination on the issue of punitive damages under California Civil Code § 3294 and exemplary damages under California Public Utilities Code § 2106. These claims cannot be addressed within the bankruptcy process. In fact, the Ninth Circuit has stated that bankruptcy courts are strictly prohibited from assessing any serious punitive damages issues. *In re Marino*, 577 B.R. 772, 788 (9th Cir. BAP 2017) (citing *In re Dyer*, 322 F.3d 1178 (9th Cir. 2003)).

The context in which a bankruptcy court maintains any authority to award non-compensatory fines is limited under 11 U.S.C. § 105(a) to contempt proceedings arising out violations of the automatic stay under 11 U.S.C. § 362(k)(1) or violations of the discharge injunction under 11 U.S.C. § 524. *In re Marino*, 577 B.R. at 788-89. Even within these limited circumstances, bankruptcy courts are further confined to awarding only those non-compensatory damages that are considered "relatively mild," which has been interpreted to mean fines that do not exceed $5,000. *Id.* Neither of these limited circumstances gives rise to a situation where it would be permissible for a bankruptcy court to hear or award the type of serious exemplary damages that would potentially be at stake for the Tubbs Fire victims, given the magnitude of loss involved. In matters where serious penalties and exemplary damages can be imposed, procedural protections, including and especially a jury trial, must be safeguarded. *In re Dyer*, 322 F.3d at 1193-94 (citing *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1138 (9th Cir. 2001)).

Simply stated, "[t]he bankruptcy court is ill-equipped to provide those procedural protections." *Id.* at 1194.

**2. Moving Parties Have Nondischargeable Claims for Several Distinct and Cumulative Types of Exemplary Damages**

Moving Parties have claims for exempary damages under both California Civil Code § 3294 and, because the claims are brought against a public utility, under California Public Utilities Code § 2106.

California Civil Code § 3294 provides:

"In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

California Public Utilities Code § 2106 provides in pertinent part:

"Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person."

As provided in California Public Utilities Code § 2109, Moving Parties' claims for exemplary damages under California Public Utilities 2106 are cumulative of those available under California Civil Code § 3294.

Moving Parties have other claims that carry penalties for statutory violations:

- For wrongful injuries to timber, trees, and underwood pursuant to California Civil Code § 3346. Such claims carry a right to a two or three times multiplier of "the sum as would compensate for the actual detriment. *See Heninger v. Dunn*, 101 Cal.App.3d 858, 869, 162 Cal.Rptr. 104 (1980).[2]

- For damages to trees pursuant to California Code of Civil Procedure § 733. Such claims carry a right to recover treble damages.

- For wrongful injuries to animals pursuant to California Civil Code § 3340. Such claims carry a right to recover exemplary damages.

### 3. Claims for Personal Injury

Similar restrictions exist that confine the bankruptcy court's authority in the context of personal injury and wrongful death claims. "[A] bankruptcy court may not hear proceedings to liquidate or

---

[2] Whether California Civil Code § 3346 applies to wildfire cases is under review by the California Supreme Court. *See Scholes v. Lambeth Trucking Co.*, 10 Cal.App.5th 590, 602, 216 Cal.Rptr.3d 794 (rev. granted 6/21/2017).

estimate personal injury torts or wrongful death claims for the purposes of determining the distribution payable to such claimants." *In re Chateaugay Corp.*, 11 B.R. 67, 72 (Bankr. S.D.N.Y. 1990); *In re Waterman S.S. Corp.*, 63 B.R. 435, 436 (Bankr. S.D.N.Y. 1986) ["28 U.S.C. 157(b)(5) mandates that trial of personal injury or wrongful death claims arising under Title 11 be held in the district court."].

### 4.    Claims for Nuisance and Trespass

The bankruptcy court's inability to hear any personal injury claims further restricts its ability to make any determination on related damages including emotional distress and fear that can arise in claims for nuisance and trespass. *Crisci v. Security Ins. Co. of New Haven, Conn.*, 66 Cal.2d 425, 433, 58 Cal.Rptr. 13, 426 P.2d 173 (1967) ["[I]t is settled in this state that mental suffering constitutes an aggravation of damages when it naturally ensues from the act complained of, and in this connection mental suffering includes nervousness, grief, anxiety, worry, shock, humiliation and indignity as well as the physical pain.  The most common example of the award of damages for mental suffering in addition to other damages is probably where the plaintiff suffers personal injuries in addition to mental distress as a result of either negligent or intentional misconduct by the defendant."]; *see also Carey v. Piphus*, 435 U.S. 247, 263-264, 93 S.Ct. 1042, 55 L.Ed.2d 252 (1978) ["Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff."]

A key component of a nuisance claim under California law is the loss of use and enjoyment of one's property.  "Damages recoverable in a successful nuisance action for injuries to real property include not only diminution in market value but also damages for annoyance, inconvenience, and discomfort [citation]...." *City of San Jose v. Superior Court*, 12 Cal.3d 447, 464, 115 Cal.Rptr. 797, 525 P.2d 701 (1974).

Damages for nuisance or trespass also include damages for fear.  "It is settled that, regardless of whether the occupant of land has sustained physical injury, [a plaintiff] may recover damages for the discomfort and annoyance of himself and the members of his family and for mental suffering occasioned by fear for the safety of himself and his family when such discomfort or suffering has been proximately caused by a trespass or a nuisance.  [Citations.]" *Acadia, California, Ltd. v. Herbert*, 54 Cal.2d 328, 337, 5 Cal.Rptr. 686, 353 P.2d 294 (1960).

### 5. The Same Trier Of Fact Must Determine Both Liability And Damages Where Punitive Damages Are Sought

Even if this Court had authority to makes awards for exemplary damages and/or fines, bifurcation of the Moving Parties' claims into separate liability and damages proceedings is inappropriate. Evidence that is both relevant and required for purposes of making a determination on the issue of punitive damages "*shall* be presented to the same trier of fact that found for the plaintiff and found one or more defendants guilty of malice, oppression, or fraud." California Civil Code § 3295(d) (emphasis added); *see also Adams v. Murakami*, 54 Cal.3d 105, 118, 284 Cal.Rptr. 318, 813 P.2d 1348 (1991) [Evidence of a defendant's financial condition under Section 3295(d) is a prerequisite to an award of punitive damages and that "commonsense concern is itself sufficient to require such evidence as *a matter of state law*." [Emphasis added.].] Such explicit statutory language "leaves no room for the exercise of discretion." *City of El Monte v. Superior Court*, 29 Cal.App.4th 272, 276-277, 34 Cal.Rptr.2d 490 (1994).

Debtors' proposal to bifurcate the Tubbs Fire victims' claims into separate liability and damages proceedings not only cuts against fundamental issues of fairness as to the victims, but also proves problematic for practical reasons as well:

> Punitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud or malice *in the conduct which gave rise to liability in the case.* Thus [] the instruction on punitive damages, tells the jury that in arriving at an award of punitive damages, it is to consider the reprehensibility of the conduct of the defendant and that the punitive damages must bear a reasonable relation to the actual damages. In order for a jury to evaluate the oppression, fraud or malice in the case, it must consider the conduct giving rise to the liability.

*Medo v. Superior Court*, 205 Cal.App.3d 64, 68, 251 Cal.Rptr. 924 (1988); see also *Torres v. Automobile Club of So. California*, 15 Cal.4th 771, 778, 63 Cal.Rptr.2d 859, 937 P.2d 290 (1997).

"By requiring that the bifurcated issues be submitted to a single trier of fact, section 3295(d) promotes judicial economy and avoids delay." *Barmas, Inc. v. Superior Court*, 92 Cal.App.4th 372, 375, 112 Cal.Rptr.2d 71 (2001) ["[T]he same trier of fact requirement in subdivision (d) of Civil Code section 3295 was intended to prevent defendants from having separate juries decide compensatory and punitive damages when a case is bifurcated and, as such, the requirement promotes judicial economy. [Internal quotes omitted.]."]. In requiring the same trier of fact to hear both issues of liability and

damages, "the Legislature was concerned about a defendant getting a second bite as the apple by impaneling a second jury try the question of punitive damages, after one jury had found against the defendant in the first phase of the case." *Barmas, Inc. v. Superior Court*, 92 Cal.App.4th at 375-376.

What Debtors seek here is exponentially more problematic than what was contemplated in the relevant case law discussed above. Debtors not only seek to try the liability and damages portions of the Tubbs Fire separately, but also seek to bypass having a jury decide *either* of these issues by proposing that the bankruptcy court make such determinations in its sole discretion. Granting such a request will undoubtedly prejudice the Tubbs Fire victims by abridging or outright denying them the rights they hold under the laws of the State of California.

### E.    MOVING PARTIES' CLAIMS ARE NONDISCHARGEABLE

Under 11 U.S.C. § 523(a)(6), nondischargeability is not limited to debts arising from awards of punitive damages. Instead, all liabilities resulting from the same willful and malicious injuries are subject to findings of nondischargeability pursuant to 11 U.S.C. § 523, subds. (a)(6) and (a)(9). *In re Adams*, 761 F.2d 1422, 1427-1428 (9th Cir. 1985).

### III.    CONCLUSION

The Thompson's home on their 102-acre parcel in Calistoga was totally destroyed by the Tubbs Fire. The Breitenstein's home and personal property on their 30-acre parcel in Calistoga were totally destroyed by the Tubbs Fire, with the only exception being the pumphouse and chicken coop.

Given the complicated interplay of the multitude of restrictions that exist on the bankruptcy court's authority specific to punitive damages and personal injury claims, as well as the damages that result therefrom, all of which are relevant to the Tubbs Fire victims' claims, the most efficient and expeditious resolution would be to allow the Tubbs Fire victims to proceed with their claims in a state court jury trial.

Experience has shown that the actual resolution of factual issues in court will eventually lead settlement agreements between Debtors and wildfire victims. The spectre of seriatum appeals will hover over any procedure adopted by this Court for resolution of the Tubbs Fire claims. However, the nature of those claims is such that they must be resolved by a trial in a court with jurisdiction to decide them.

1   For all of the foregoing reasons, Barbara Thompson, John Thompson, Matthew Thompson,

2   Peter Thompson, Raymond Breitenstein, and Stephen Breitenstein respectfully request that this Court

3   grant the motion for relief from the automatic stay to allow them to:  (a) file a motion for trial

4   preference pursuant to California Code of Civil Procedure § 36 in the San Francisco Superior Court;

5   and (b) proceed to a jury trial in San Francisco County Superior Court on their claims arising out of

6   the 2017 Tubbs Fire.

7   DATED: August 7, 2019                    Respectfully submitted,

8                                            COREY, LUZAICH, DE GHETALDI & RIDDLE LLP

9

10  By: _____
                                             Dario de Ghetaldi
11                                           Amanda L. Riddle
                                             Steven Berki
12                                           Sumble Manzoor
                                             Attorneys for Indivisual Fire Victim Creditors

13  DANKO MEREDITH
                                             Michael S. Danko
14                                           Kristine K. Meredith
                                             Shawn R. Miller
15                                           Attorneys for Individual Fire Victim Creditors

16  GIBBS LAW GROUP
                                             Eric Gibbs
17                                           Dylan Hughes
                                             Attorneys for Individual Fire Victim Creditors

18

19

20

21

22

23

24

25

26

27

28

17