EDWARD J. TREDINNICK (#84033)
GREENE RADOVSKY MALONEY
SHARE & HENNIGH LLP
One Front Street, Suite 3200
San Francisco, California 94111-4106
Telephone: (415) 981-1400
Facsimile: (415) 777-4961
E-mail: etredinnick@greeneradovsky.com

Attorneys for Creditor,
City and County of San Francisco

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>-and-<br><br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>Debtors,<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Case No.: 19-30088-DM<br><br>Chapter 11<br><br>**OBJECTION OF THE CITY AND COUNTY OF SAN FRANCISCO TO DEBTORS' MOTION PURSUANT TO 11 USC §§105(a) AND 502(c) FOR ESTABLISHMENT OF WILDFIRE CLAIMS ESTIMATION PROCEDURES.**<br><br>DATE: August 14, 2019<br>TIME: 9:30 am<br>PLACE: Courtroom 17<br>  450 Golden Gate Avenue, 16th Fl.<br>  San Francisco, California<br>JUDGE: Hon. Dennis Montali<br><br>RELATED DOCKET NOS: 3091 |

  The City and County of San Francisco (**"San Francisco"**), a creditor and interested party in

the above-captioned chapter 11 cases of Pacific Gas and Electric Company (the **"Utility"**) and PG&E

Corporation (**"PG&E"** and, together with the Utility, the **"Debtors"**), objects to Debtors' Motion

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

553170

Case: 19-30088    Doc# 3412    Filed: 08/07/19    Entered: 08/07/19 12:17:29    Page 1 of 9

Case No. 19-30088-DM

Pursuant to 11 U.S.C. §§ 105(a) and 502(c) for the Establishment of Wildfire Claims Estimation Procedures [Dkt. No. 3091] (the **"Motion"**).

San Francisco recognizes that pursuant to section 502(c) of the United States Bankruptcy Code the Court must estimate contingent and unliquidated claims when the fixing or liquidation of such claims would unduly delay the administration of the case, and that the Court has broad latitude to do so.

While there are numerous issues regarding whether this Court, or any court, should undertake the estimation of the wildfire claims at this juncture of the case, San Francisco at this time only objects to Debtors' Motion on the specific ground that they have not provided sufficient justification for this Court to consider disregarding state law applying inverse condemnation to privately-owned utilities. Scheduling briefing and a hearing on an issue that is established law makes little sense and would be an unnecessary drain on parties' and the Court's limited resources. In addition, parties agree that time is of the essence due to AB 1054's statutory deadline of June 30, 2020. Spending two months on additional proceedings related to inverse condemnation is not an efficient or effective use of time or resources, especially in light of the tremendous effort that parties acknowledge it will take to otherwise determine the amount of wildfire claims in this case. If, however, the Court grants Debtors' request to consider the applicability of inverse condemnation, San Francisco requests to be heard on the issue of inverse condemnation in any claims estimation procedure that is adopted by this Court or in any other proceedings that the Court adopts for the determination of claims in this case.

In support hereof, San Francisco respectfully represents as follows:

## OBJECTION

I. <u>San Francisco's Interest in this Motion.</u>

San Francisco is interested in the Motion as a creditor and potential creditor of the Debtors. The Utility has a great deal of infrastructure in the City that could result in non-wildfire inverse condemnation actions against the Utility, including electrical lines, both underground and on the street, transformers, substations, and gas pipelines. Therefore, San Francisco, along with other public entities, have a strong interest in ensuring that inverse condemnation strict liability continues to apply to privately-owned utilities so that financial responsibility for the Utility's actions does not shift to

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

553170

Case: 19-30088    Doc# 3412    Filed: 08/07/19    Entered: 08/07/19 12:17:29    Page 2 of 9

Case No. 19-30088-DM

public entities and property owners. (S*ee,* San Francisco Board of Supervisors Res. No. 44-19, Resolution establishing the City's position regarding liability for utility wildfire costs and urging California legislators and regulators to protect California consumers by ensuring that investor-owned utilities are held responsible for the consequences of their actions.[1]) Without strict liability for damage caused by privately-owned utilities, individual property owners and local governments would need more lengthy and expensive litigation to recover costs because they would first need to prove negligence. Without the application of inverse condemnation it is more likely damages would remain with no responsible party required to pay for them. Local governments would need to step in to assist their constituents in repairing damage and restoring their homes and businesses.

San Francisco is also interested in the Motion as a local governmental unit interested in potentially acquiring assets of the Utility.[2] It is vital to the interests of San Francisco, as well as many other parties in this case, that any estimation of damages results in a confirmable plan that allows for accurate valuation of the Utility's assets. San Francisco does not believe that the Debtors' request for the Court to ignore applicable state law will result in a realistic or supportable estimation of claims, and could, instead, lead to a severe underestimation of claims to the detriment of all creditors, including wildfire victims and local governments.

II. <u>Debtors Have Not Provided Sufficient Justification for the Court to Consider Disregarding Applicable State Law.</u>

   a. <u>Any claim estimation in this Court must apply applicable state law.</u>

It is axiomatic that claims in bankruptcy cases are allowed or disallowed under applicable law, whether state or federal. 11 U.S.C. § 502(b)(1), *Travelers Casualty and Surety Co. of America v. Pacific Gas and Elec. Co.*, U.S.2007, 127 S.Ct. 1199, 549 U.S. 443, 167 L.Ed.2d 178, (when the Bankruptcy Code uses the word "claim" it is usually referring to a right to payment recognized under state law).

In estimating wildfire claims this Court must follow applicable California law. As the court in

---

[1] https://sfbos.org/sites/default/files/r0044-19.pdf
[2] *See* San Francisco Public Utilities Commission's *Preliminary Report on Electric Service Options* (May 2019), https://sfwater.org/modules/showdocument.aspx?documentid=13736.

*In re Roman Archbishop of Portland in Oregon* wrote regarding the estimation of claims:

> A creditor's entitlements under non-bankruptcy law are enforced in bankruptcy, unless they are modified by some provision of the Bankruptcy Code. *In re A.G. Fin. Serv. Ctr., Inc.,* 395 F.3d 410, 413 (7th Cir.2005)(citing *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). "Bankruptcy courts lack authority to alter rules of state law, or depart from those in the Code, to implement their own views of wise policy." *Id.* at 413–414. If a claimant can prove an entitlement … under state law, that entitlement cannot be affected by bankruptcy except as allowed in the Bankruptcy Code.

*In re Roman Archbishop of Portland*, 339 Bankr. Rptr. 215, 226-27 (Bankr. Oregon).

### b. Applicable California case law supports continued application of inverse condemnation to privately-owned utilities.

As acknowledged by Debtors in their Motion, state law regarding the applicability of the doctrine of inverse condemnation to privately-owned utilities is established in two California appellate court cases. *Pacific Bell Tel. Co. v. S. Cal. Edison Co.*, 208 Cal. App. 4th 1400 (Ct. App. 2012) ("*Pacific Bell*"); *Barham v. S. Cal. Edison Co.*, 74 Cal. App. 4th 744 (Ct. App. 1999) ("*Barham*"). Notably, the California Supreme Court denied Petitions for review in both of these cases.

As succinctly described in the *Barham* case, "[a]n inverse condemnation action is an eminent domain action initiated by one whose property was taken for public use, as opposed to by the condemning public agency. As such, the principles of eminent domain law apply to inverse condemnation proceedings." (*Barham*, 74 Cal. App. 4th at 752.) The Utility's authority to condemn property derives from Public Utilities Code section 612, which provides that "[a]n electrical corporation may condemn any property necessary for the construction and maintenance of its electric plant."[3]

It is fundamentally unfair for Debtors to expect that the Utility should reap the benefits of having the power of eminent domain, but should not bear the financial responsibility or consequences associated with its infrastructure and equipment. Any changes to inverse condemnation law should

---

[3] "Electric plant" includes all real estate, fixtures and personal property owned, controlled, operated, or managed in connection with or to facilitate the production, generation, transmission, delivery, or furnishing of electricity for light, heat, or power, and all conduits, ducts, or other devices, materials, apparatus, or property for containing, holding, or carrying conductors used or to be used for the transmission of electricity for light, heat, or power. (Cal. Pub. Util. Code § 217.)

GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP
FOUR EMBARCADERO CTR, SUITE 4000
SAN FRANCISCO, CA 94111

553170

not benefit one sector (privately-owned utilities) at the expense of others. This is especially true as Debtors have continued to profit despite well-known safety problems. (San Francisco Board of Supervisors Res. No. 44-19, at p. 2.)

Debtors argue that inverse condemnation should not apply to privately-owned utilities because they do not have the ability to socialize their costs through taxes, and are not guaranteed cost recovery through rate increases since their rates are subject to the approval of the California Public Utilities Commission ("**CPUC**"). (Motion, at 18.) This argument is misplaced. The fundamental question in inverse condemnation actions is whether private property has been taken or damaged for public use. (Cal. Const., Art 1, § 19.) If so, then just compensation must be paid. (*Id*.) As stated by the court in the *Pacific Bell* case, "[f]or an owner whose property is damaged by the operation of a utility, he or she suffers a disproportionate share of the cost of the public improvement regardless of whether the utility is governmentally or privately owned. We do not believe the happenstance of which type of utility operates in an area should foreclose a property owner's right to just compensation under inverse condemnation for the damage, interest and attorney fees and should limit the property owner to traditional tort remedies." (*Pacific Bell*, 208 Cal. App. 4th at 1408.)

Even the California Supreme Court cases cited by the Debtors acknowledge that the key consideration in inverse condemnation cases is whether the property owner (not the utility) must bear a disproportionate share of a public undertaking. As stated by the California Supreme Court in *Holtz v. Superior Court*, 475 P.2d 441, 445 (Cal. 1970) (emphasis added)(citation omitted):

> As the Albers opinion carefully made clear, its general rule of compensability did not derive from statutory or common law tort doctrine, but instead rested on the construction, 'as a matter of interpretation and policy' (62 Cal.2d at p. 262, 42 Cal.Rptr. at p. 96, 398 P.2d at p. 128), of our constitutional provision. The relevant 'policy' basis of article I, section 14, was succinctly defined in Clement v. State Reclamation Board (1950) 35 Cal.2d 628, 642, 220 P.2d 897, 905: '**The decisive consideration is whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking.' In other words, the underlying purpose of our constitutional provision in inverse— as well as ordinary—condemnation is 'to distribute throughout the community the loss inflicted upon the individual by the making of the public improvements'** (Bacich v. Board of Control (1943) 23 Cal.2d 343, 350, 144 P.2d 818, 823): **'to socialize the burden * * *—to afford relief to the landowner in cases in which it is unfair to ask him to bear a burden that should be assumed by society'**

GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP
FOUR EMBARCADERO CTR, SUITE 4000
SAN FRANCISCO, CA 94111

553170

In *Albers v. Cty. of Los Angeles*, 398 P.2d 129, 137 (Cal. 1965), the California Supreme Court stated that the important factors for consideration in an inverse condemnation action include: whether the cost of damage can better be absorbed, and with infinitely less hardship, by the taxpayers as a whole **than by the owners of the individual parcels damaged**, and **whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking**. (Emphasis added.)

Debtors attempt to manufacture controversy under state law by misdirecting attention to the Utility's ability to socialize costs associated with taking or damaging private property for the public undertaking of providing power. However, the applicable case law makes it clear that the real focus should be the impact on property owners. In this case, those property owners include the many wildfire victims in the Utility's service territory. Based on the foregoing, there is no justification for the Court to consider disregarding applicable California law in this case.

### c. The CPUC case regarding San Diego Gas & Electric provides no basis for the Court to consider deviating from existing state law.

Debtors rely heavily on statements about inverse condemnation made by CPUC President Michael Picker and Commissioner Martha Guzman Aceves during a CPUC public hearing and in a concurrence to a CPUC decision regarding San Diego Gas & Electric Company ("**SDG&E**"). (Motion, at 19.) Neither this Court, nor any state court, is bound by such statements, nor are they persuasive. (*See*, Public Utilities Code § 310; CPUC Decision 03-08-072, *Order Modifying Decision (D.) 02-12-064 and Denying Rehearing of the Decision, as Modified*, at p. 22 (2003) (noting that "statements made by Commissioners at Commission meeting[s] are not the action of the Commission")[4]; and CPUC Decision 09-09-049, *Order Modifying Resolution E-4227A, and Denying rehearing of Resolution, as Modified,* at pgs. 8-9 (2009).[5])

In the SDG&E case, the CPUC denied SDG&E cost recovery specifically because it found that

---

[4] http://docs.cpuc.ca.gov/PublishedDocs/WORD_PDF/FINAL_DECISION/29272.PDF
[5] http://docs.cpuc.ca.gov/PublishedDocs/WORD_PDF/FINAL_DECISION/107506.PDF

GREENE RADOVSKY MALONEY SHARE & HENNIGH LLP
FOUR EMBARCADERO CTR, SUITE 4000
SAN FRANCISCO, CA 94111

SDG&E had acted **imprudently** in various ways with respect to several wildfires that it had caused.[6] (CPUC Decision 17-11-033, *Decision Denying Application*, at pgs. 70-72, Conclusions of Law 9-16, 19-22, 24-25 (2017).[7]) The SDG&E case indicates that the CPUC can deny cost recovery in cases in which a utility is found to have acted imprudently. It does not stand for the general proposition that the CPUC flatly refuses to allow privately-owned utilities to spread their wildfire costs across ratepayers. (Concurrence of President and Commissioner Michael Picker and Commissioner Martha Guzman Aceves on CPUC Decision 17-11-033, at p. 5, "If the preponderance of the evidence shows that the utility acted prudently, the Commission will allow the utility to recover costs from the ratepayers."[8])

The CPUC's decision concerning SDG&E, and statements made by Commissioners regarding that decision, simply do not provide an adequate basis to consider disregarding existing state law in this case.

III. The Legislature Has Declined to Amend the Applicable Strict Liability Standard.

The applicability of the doctrine of inverse condemnation to privately-owned utilities has been widely recognized, including by the Debtors themselves. A report from the Governor's Strike Force on wildfires stated that "California is unique in extending the concept of inverse condemnation to [investor-owned utilities]" and identified changing the strict liability standard to a fault-based standard as an area of further examination. (*Wildfires and Climate Change: California's Energy Future, A*

---

[6] SDG&E has filed a Petition for Writ of Certiorari in the United States Supreme Court on the CPUC decision. (United States Supreme Court, Docket No. 18-1368, https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/18-1368.html.) In its Petition, SDG&E asks "Whether it is an uncompensated taking for public use in violation of the Fifth and Fourteenth Amendments for a State to impose strict liability for inverse condemnation on a privately owned utility without ensuring that the cost of that liability is spread to the benefitted ratepayers." Debtors raise the same question in their Motion. (Motion, at 20.) Debtors fail to allege facts sufficient to constitute any takings or substantive due process claims. Debtors offer no authority for the proposition that inverse condemnation liability can result in a takings claim against any government entity, nor is the City aware of any. Debtors' claims are also not ripe for review because they do not allege that they have been subject to a final determination regarding the Utility's cost recovery for the 2017 and 2018 fires.

[7] http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M200/K045/200045020.PDF
[8] http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M202/K420/202420814.PDF

*Report from Governor Newsom's Strike Force*, pgs, 30, 37-38 (April 12, 2019).[9]) The Commission on Catastrophic Wildfire Cost and Recovery within the Governor's Office of Planning and Research also issued a report acknowledging the applicability of the doctrine of inverse condemnation to privately-owned utilities and recommended replacing the current strict liability standard under inverse condemnation with a fault-based negligence standard for both privately- and publicly- owned utilities. (*Final Report of the Commission on Catastrophic Wildfire Cost and Recovery*, pgs. 4, 6 (June 17, 2019).[10]) The Wildfire Commission's report also explicitly considered how the Legislature might go about altering judicial interpretation of the California Constitution. (*Id.*, fns. 6-7.)

The Debtors have also been lobbying the Legislature for the past several years to change the strict liability standard under inverse condemnation.[11]

Despite the widespread understanding of the applicability of the inverse condemnation strict liability standard to both publicly- and privately-owned utilities and efforts to change that standard to a fault-based negligence standard, the Legislature has thus far declined to amend applicable state law.[12] By requesting that the Court disregard state law regarding the applicability of inverse condemnation to privately-owned utilities, Debtors ask the Court to do what the Legislature has chosen not to, which is to change the applicable standard from strict liability to negligence at least for privately-owned utilities. Debtors have provided no reason why the Court in this case should do what the Legislature has declined to do.

## CONCLUSION

For the reasons stated herein, San Francisco objects to Debtors' Motion and requests that the Court deny Debtors' request to consider reversing state law applying inverse condemnation to privately-owned utilities and grant further relief as the Court deems appropriate. If the Court grants

---

[9] https://www.gov.ca.gov/wp-content/uploads/2019/04/Wildfires-and-Climate-Change-California%E2%80%99s-Energy-Future.pdf
[10] http://opr.ca.gov/docs/20190618-Commission_on_Catastrophic_Wildfire_Report_FINAL_for_transmittal.pdf
[11] https://www.sfchronicle.com/business/article/Much-quieter-than-they-used-to-be-PG-E-14274356.php; https://www.cnbc.com/2018/07/20/california-could-change-law-to-help-utilities-offset-wildfire-risk.html
[12] https://www.sfchronicle.com/california-wildfires/article/Newsom-doesn-t-want-to-change-strict-wildfire-13905509.php; https://www.latimes.com/politics/la-pol-ca-wildfire-liability-law-gavin-newsom-legislature-20190529-story.html

Case: 19-30088    Doc# 3412    Filed: 08/07/19    Entered: 08/07/19 12:17:29    Page 8 of 9

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

553170

Case No. 19-30088-DM

Debtors' request to consider the applicability of inverse condemnation, San Francisco requests to be allowed to submit a brief in opposition to Debtors' position and to be heard on the issue of inverse condemnation in any claims estimation procedure that is adopted by this Court or in any other proceedings that the Court adopts for the determination of claims in this case.

San Francisco reserves its rights to present further objections to the Motion and join in any other objections to the Motion.

Respectfully submitted,

Dated: August 7, 2019

GREENE RADOVSKY MALONEY
SHARE & HENNIGH LLP

By: _____/s/ Edward Tredinnick_____
Edward J. Tredinnick
Attorneys for Creditor,
City and County of San Francisco

GREENE RADOVSKY
MALONEY SHARE &
HENNIGH LLP
FOUR EMBARCADERO
CTR, SUITE 4000
SAN FRANCISCO, CA
94111

553170

9

Case: 19-30088   Doc# 3412   Filed: 08/07/19   Entered: 08/07/19 12:17:29   Page 9 of 9

Case No. 19-30088-DM