AKIN GUMP STRAUSS HAUER & FELD LLP

Michael S. Stamer (*pro hac vice*)
Ira S. Dizengoff (*pro hac vice*)
David H. Botter (*pro hac vice*)
Abid Qureshi (*pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:     (212) 872-1000
Facsimile:     (212) 872-1002
Email:         mstamer@akingump.com
               idizengoff@akingump.com
               dbotter@akingump.com
               aqureshi@akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP

Ashley Vinson Crawford (SBN 257246)
580 California Street
Suite 1500
San Francisco, CA 94104
Telephone:     (415) 765-9500
Facsimile:     (415) 765-9501
Email:         avcrawford@akingump.com

*Counsel to the Ad Hoc Committee of Senior Unsecured
Noteholders of Pacific Gas and Electric Company*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>   **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                **Debtors.**<br><br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>*\*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**THE AD HOC COMMITTEE OF SENIOR UNSECURED NOTEHOLDERS' JOINDER AND RESPONSE TO THE DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c) FOR THE ESTABLISHMENT OF WILDFIRE CLAIMS ESTIMATION PROCEDURES AND RESPONSE TO THE COURT'S QUESTIONS RAISED AT THE JULY 24, 2019 HEARING**<br><br>**Hearing**<br>Date:   August 14, 2019<br>Time:   9:30 a.m. (Pacific Time)<br>Place:   Courtroom 17<br>        450 Golden Gate Ave, 16th Floor<br>        San Francisco, CA 94102<br><br>Re: Docket No. 3091 |

# TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION ..................................................................................................1

II. JOINDER ...........................................................................................................3

III. RESPONSE TO THE COURT'S QUESTIONS RAISED AT THE
     JULY 24, 2019 HEARING ..................................................................................6

    A.  The Bankruptcy Court and the District Court Can Cap the Debtors'
        Aggregate Liability for All Unliquidated Wildfire Claims, Including
        Personal Injury and Wrongful Death Claims Through the Estimation
        Process. ..................................................................................................6

        1.  The District Court may estimate personal injury tort and wrongful death
            claims for purposes of distribution without a jury trial and can impose an
            aggregate cap on claims. .............................................................8

        2.  The Bankruptcy Court may conduct the estimation proceedings and
            submit a report and recommendation to the District Court for the
            appropriate estimation of personal injury tort and wrongful death claims
            and aggregate cap. .......................................................................9

        3.  The Bankruptcy Court and the District Court may jointly conduct the
            estimation proceedings and issue a final order setting a cap on the
            aggregate amount of allowed claims ..........................................10

        4.  The Bankruptcy Court and the District Court should jointly conduct these
            estimation proceedings ...............................................................11

    B.  Factual Issues Can Be Resolved in The Estimation Proceedings Without
        Violating Any Claimants' Right to a Jury Trial ......................................12

    C.  The Estimation Proceedings Can Begin Before the Claims Bar Date. ..........13

    D.  Only Those Claims That Allege Actual, Physical Injury Qualify as "Personal
        Injury Tort" Claims Under 28 U.S.C. § 157(B)(2)(B). ...................................15

**Cases**

*In re A.H. Robins Co., Inc.,*
    88 B.R. 742, *aff'd*, 880 F.2d 694 (4th Cir. 1989)...................................................10

*A.H. Robins Co. v. Piccinin,*
    788 F.2d 994 (4th Cir. 1986) ..........................................................................3

*Adelson v. Smith (In re Smith),*
    389 B.R. 902 (Bankr. D. Nev. 2008) ..............................................................16

*In re Aquaslide 'N' Dive Corp.,*
    85 B.R. 545 (B.A.P. 9th Cir. 1987).................................................................12

*In re Armstrong World Indus., Inc.,*
    320 B.R. 523 (D. Del.), *aff'd*, 432 F.3d 507 (3d Cir. 2005) ...........................10

*In re Armstrong World Indus., Inc.,*
    348 B.R. 136 (D. Del. 2006).............................................................................10

*In re Atron, Inc.,*
    172 B.R. 541 (Bankr. W.D. Mich. 1994).........................................................17

*Barstad v. CNU of Texas, LLC,*
    No. SA-17-CV-00581-OLG, 2017 WL 7789541 (W.D. Tex. Dec. 19, 2017) ...............10

*Bertholet v. Harman,*
    126 B.R. 413 (Bankr. D.N.H. 1991) ...............................................................17

*In re Chateaugay Corp.,*
    111 B.R. 67 (Bankr. S.D.N.Y. 1990), *aff'd*, 130 B.R. 403 (S.D.N.Y. 1991), *aff'd in part, rev'd in part*, 961 F.2d 378 (2d Cir. 1992)...............................................7

*In re City of San Bernardino, Cal.,*
    No. 5:15-CV-00815-ODW, 2015 WL 6957998 (C.D. Cal. Nov. 10, 2015)..............15, 16

*In re Cohen,*
    107 B.R. 453 (S.D.N.Y. 1989)...................................................................15, 16

*In re Corey,*
    892 F.2d 829 (9th Cir. 1989) ..........................................................................12

*In re Dow Corning Corp.,*
    211 B.R. 545 (Bankr. E.D. Mich. 1997)........................................................5, 8

*In re Dow Corning Corp.,*
    215 B.R. 346 (Bankr. E.D. Mich.)...................................................................12

*In re Dow Corning Corp.,*
    244 B.R. 721 (Bankr. E.D. Mich. 1999), *rev'd on other grounds,*
    255 B.R. 445 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002) ........................8

*In re Eagle-Picher Indus., Inc.*,
189 B.R. 681 (Bankr. S.D. Ohio 1995)................................................................. 10, 14

*In re Fed.-Mogul Glob., Inc.*,
330 B.R. 133 (D. Del. 2005)..................................................................................... 3, 8

*In re of Ford*,
967 F.2d 1047 (5th Cir. 1992)....................................................................................... 4

*In re G-I Holdings, Inc.*,
295 B.R. 211 (D.N.J. 2003)........................................................................................... 7

*In re G-I Holdings, Inc.*,
323 B.R. 583 (Bankr. D.N.J. 2005) ............................................................. 3, 9, 12, 13

*In re G-I Holdings Inc.*,
420 B.R. 216 (D.N.J. 2009) ................................................................................. 10, 13

*Gabor v. Deshler*,
No. 17-CV-01524-LHK, 2017 WL 4151042 (N.D. Cal. Sept. 19, 2017)...................... 4

*In re: Garlock Sealing Technologies LLC, et al.*,
No. 10-BK-31607, 2013 WL 7864919 (Bkrtcy.W.D.N.C. Dec. 30, 2013) ................... 14

*In re Garlock Sealing Techs. LLC*,
504 B.R. 71 (Bankr. W.D.N.C. 2014).................................................................. 10, 14

*In re Gary Brew Enter. Ltd.*,
198 B.R. 616 (Bankr. S.D. Cal. 1996) ........................................................................ 16

*In re Gawker Media LLC*,
571 B.R. 612 (Bankr. S.D.N.Y. 2017)................................................................... 16, 17

*In re Granite Broad. Corp.*,
385 B.R. 41 (S.D.N.Y. 2008) ..................................................................................... 12

*Holt v. Green*,
No. 2:15-CV-00407-GMN, 2016 WL 927148 (D. Nev. Mar. 10, 2016)...................... 15

*In re of Interco Inc.*,
137 B.R. 993 (Bankr. E.D. Mo. 1992) ........................................................................... 4

*J T Thorpe Co.*,
No. 02-41487-H5-11, 2003 WL 23354129 (Bankr. S.D. Tex. Jan. 30, 2003) ............... 11

*In re Johns-Manville Corp.*,
45 B.R. 823 (S.D.N.Y. 1984) ........................................................................................ 3

*In re Lang*,
166 B.R. 964 (D. Utah 1994) ...................................................................................... 18

*In re Littles*,
75 B.R. 240 (Bankr. E.D. Pa. 1987) ........................................................................... 18

*In re Lloyd E. Mitchell, Inc.*,
    373 B.R. 416 (Bankr. D. Md. 2007) ................................................................ 14

*Massey Energy Co v. W. Va. Consumers for Justice*,
    351 B.R. 348 (Bankr. E.D. Va. 2006) ...................................................... 15, 16

*In re Mercury Finance Co.*,
    249 B.R. 490 (Bkrtcy.N.D.Ill.,2000) ............................................................ 11

*In re N. Am. Health Care, Inc.*,
    544 B.R. 684 (Bankr. C.D. Cal. 2016) ............................................................. 7

*Nat'l Union Fire Ins. Co. v. Stites Prof. Law Corp.*,
    235 Cal. App. 3d 1718 (1991) ......................................................................... 4

*Perez v. Shook*,
    No. CIV. A. 93-3336, 1993 WL 515775 (E.D. La. Dec. 6, 1993) ................... 17

*In re Residential Capital*,
    LLC, 536 B.R. 566 (Bankr. S.D.N.Y. 2015) ................................................. 17

*In re Roman Catholic Archbishop of Portland in Or.*,
    338 B.R. 414 (Bankr. D. Or. 2006) ............................................................. 5, 6

*In re Roman Catholic Archbishop of Portland in Or.*,
    339 B.R. 215 (Bankr. D. Or. 2006) ............................................................. 6, 9

*In re Roman Catholic Bishop of San Diego*,
    374 B.R. 756 (Bankr. S.D. Cal. 2007) ............................................................. 5

*In re Roman Catholic Bishop of San Diego*,
    No. 07-00989-LA11, 2007 WL 2406899 (S.D. Cal. Aug. 20, 2007) ............... 7

*In re Specialty Prod. Holding Corp.*,
    No. BR 10-11779-JKF, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013) ... 14

*Vandenberg v. Superior Court*,
    21 Cal. 4th 815 (1999) ..................................................................................... 4

*In re W.R. Grace & Co.*,
    355 B.R. 462 (Bankr. D. Del. 2006) ............................................................. 14

**Statutes**

11 U.S.C. § 101(5)(A) ........................................................................................ 14

11 U.S.C. § 105(a) ............................................................................................... 1

11 U.S.C. § 502(c) ..................................................................................... *passim*

11 U.S.C. § 524(g) ............................................................................................. 11

11 U.S.C. § 524(g)(3)(A) ................................................................................... 11

28 U.S.C. § 157 ..................................................................................... 6, 16, 17

28 U.S.C. § 157(b)(2) .................................................................................... 7, 15, 16

28 U.S.C. § 157(b)(2)(B) .................................................................................... *passim*

28 U.S.C. § 157(b)(5) .................................................................................... 17, 18

28 U.S.C. § 157(c) .................................................................................... 10

28 U.S.C. § 157(c)(1) .................................................................................... 9

28 U.S.C. § 157(c)(2) .................................................................................... 7, 9

28 U.S.C. § 157(d) .................................................................................... 3, 8, 10

28 U.S.C. § 1334(c) .................................................................................... 5

28 U.S.C. § 1452(b) .................................................................................... 5

Cal. Code Civ. Proc. §1049 .................................................................................... 4

**Other Authorities**

Fifth Amendment .................................................................................... 8

Black's Law Dictionary (11th ed. 2019) .................................................................................... 17

Fed. R. Bankr. P. 5011(a) .................................................................................... 3

L.R. 5011-2 .................................................................................... 3

The Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company (the "Ad Hoc Committee") in the above-captioned chapter 11 cases of Pacific Gas and Electric Company (the "Utility") and PG&E Corporation ("PG&E" and, together with the Utility, the "Debtors"), by its undersigned counsel, Akin Gump Strauss Hauer & Feld LLP, hereby (i) joins in and responds to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 502(c) for the Establishment of Wildfire Claims Estimation Procedures* [Docket. No. 3091] (the "Debtors' Motion" or "Motion") and (ii) responds to the Court's questions raised at the July 24, 2019 hearing (the "Joinder").[1] In support of its Joinder, the Ad Hoc Committee respectfully states as follows:

## I.  INTRODUCTION

1.  Estimation of the Wildfire Claims is the only path that can ensure the orderly, timely, and equitable resolution of these reorganization cases by the June 30, 2020 legislative deadline.  Given the thousands of pending Wildfire Claims, there can be no doubt that liquidating the Wildfire Claims through trials in state or federal court would unduly delay resolution of these proceedings.  There likewise can be no doubt that the estimation required here must cap the Debtors' total aggregate liability for the Wildfire Claims.  That some of the Wildfire Claims may qualify as "personal injury tort or wrongful death claims" under 28 U.S.C. § 157(b)(2)(B) does not change this fact, nor does it act as a barrier to estimation.  Indeed, courts have properly capped debtors' aggregate tort liability through the estimation process under similar circumstances.

2.  The only real question here is which court – the Bankruptcy Court or the District Court – should conduct the estimation proceedings.  Although the Ad Hoc Committee believes that it is within this Court's authority to estimate the claims at issue, the Ad Hoc Committee believes that to establish a cap on the Wildfire Claims, the most expedient course is to have the Bankruptcy Court conduct the estimation proceedings with the oversight and involvement deemed appropriate by the District Court to enter a final and binding order setting the Debtors' aggregate exposure.  Such joint proceedings will avoid inefficiencies caused by having the District Court enter a final estimation order

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Debtors' Motion.

after having to review de novo proposed findings of fact and conclusions of law from this Court and eliminate the risk of time-consuming appeals, and thereby ultimately ensure that these estimation proceedings are resolved in time for the Debtors to emerge from bankruptcy by the June 30, 2020 legislative deadline.

3.     The Ad Hoc Committee further believes that the estimation proceedings should be streamlined into two phases.  Because the Debtors, the TCC, and the Ad Hoc Group of subrogation claim holders (the "Ad Hoc Subrogation Group") appear to agree that liability for the Tubbs Fire is a gating issue that could have a meaningful impact on the parties' ability to negotiate a resolution of the Wildfire Claims, the Ad Hoc Committee believes that the estimation of the Debtors' liability for claims arising from the Tubbs Fire should proceed first on the schedule proposed by the Debtors, and all remaining issues, including the application of inverse condemnation to the Debtors, should be resolved as part of the final estimation proceeding.  Although the Ad Hoc Committee recognizes that scheduling is dependent on the Courts' calendars, the Ad Hoc Committee submits that the following schedule would allow the parties to prepare for and complete the estimation process on a timeline that would best position the Debtors to exit these chapter 11 cases by June 30, 2020:

| Phase 1: Estimation of the Debtors' Liability for Claims Arising from the Tubbs Fire | |
|---|---|
| Proposed pre-hearing schedule | Two weeks after entry of the Proposed Order |
| Hearing on Tubbs Fire | Beginning October 7, 2019, for three weeks |
| Phase 2: Final Estimation Hearing (For Voting, Feasibility and Distribution Purposes) | |
| Proposed pre-hearing schedule, to include briefing schedule on inverse condemnation following Hearing on Tubbs Fire | Three weeks after entry of the Proposed Order |
| Conclusion of estimation hearing | January 15, 2020 |

4.     Therefore, the Ad Hoc Committee proposes that the Court grant the Debtors' Motion, but modify the Debtors' Proposed Order to (i) consolidate the estimation proceedings into two phases and (ii) request that the District Court participate in the estimation proceedings in conjunction with this

Court.[2]

## II.  **JOINDER**

5.      The Ad Hoc Committee agrees with the Debtors' position that estimation is required here because resolution of the unliquidated Wildfire Claims will unduly delay the administration of these cases.  *See* 11 U.S.C. § 502(c); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011–12 (4th Cir. 1986) ("[The] duty of estimation in a proper case under section 502(c) is not a permissive one; it is a mandatory obligation of the bankruptcy court.").  In chapter 11 bankruptcies involving mass tort claims, courts routinely find that estimation is required because trying the individual claims will cause undue delay.  *See, e.g., id.* at 1012-13  (finding that 5,000 personal injury Dalkon Shield claims must be estimated in bankruptcy action before trials, because estimation would facilitate "the real purpose of the proceeding (*i.e.*, a reorganization of the debtor and its continuance as a going business)" and further noting, "The authorities which have considered this question in connection with a complicated products liability situation such as this are all unanimous.  The estimations of the potential and pending claims by the bankruptcy courts should precede any trials of the claims."); *In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133, 154 (D. Del. 2005) (finding trials of unliquidated personal injury and wrongful death asbestos claims would unduly delay administration of bankruptcy such that estimation was required: "[I]n accordance with the underlying principles in bankruptcy of promoting the quick and efficient administration of the estate, the estimation of the aggregate allowable amount on all . . . pending and future asbestos claims will be determined by this Court."); *In re Johns-Manville Corp.*, 45 B.R. 823, 826-27 (S.D.N.Y. 1984) (finding that trying asbestos victims' personal injury claims would unduly delay bankruptcy such that estimation was required because the Court did not "see the sense in ordering the parties to trial until a plan has been developed and until there is reason to believe that the time and expense of potentially 25,000 trials will not deplete the estate and leave other creditors with empty judgments"); *In re G-I Holdings, Inc.*, 323 B.R. 583, 599–600 (Bankr. D.N.J. 2005) (finding estimation of asbestos claims required because liquidation of present and future claims might "take

---

[2] To the extent the Court believes it is necessary, the Court can request that the District Court withdraw the reference in part pursuant to 28 U.S.C. § 157(d) for the limited purpose of overseeing the estimation proceedings, or, alternatively, the parties can file a motion with the District Court requesting withdrawal of the reference in part.  *See* N.D. Cal. Bkrtcy L.R. 5011-2; Fed. R. Bankr. P. 5011(a).

years, actually lifetimes," and "could possibly be the death knell for the successful reorganization of this debtor").

6.      Similarly, here, the delay caused by liquidating the Wildfire Claims through trials would plainly be undue and would frustrate the purpose of these proceedings.  The Debtors entered bankruptcy to ensure an efficient and prompt resolution of the Wildfire Claims by *avoiding* piecemeal litigation through a centralized forum for resolution of the claims.  Estimation in the bankruptcy proceedings was designed for this precise purpose: to "facilitate the speedy and expeditious resolution of claims in bankruptcy courts[,]" *In re  of Interco Inc.*, 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992), and "promote a fair distribution to creditors through a realistic assessment of uncertain claims." *In re of Ford*, 967 F.2d 1047, 1053 (5th Cir. 1992).

7.      Liquidating the Wildfire Claims would unacceptably delay these proceedings and result only in inefficiency, a substantial risk of inconsistent and uncoordinated trial court decisions, multiple appeals, and a gross waste of the estates' resources.  If, for example, the Debtors were to lose the state court action, findings on issues in that case may be asserted as collateral estoppel against the Debtors, but the estoppel may be nonmutual.  *See Vandenberg v. Superior Court*, 21 Cal. 4th 815, 829-30 (1999) (collateral estoppel may be asserted against a defendant that was a party to prior litigation, but it cannot be asserted by a victorious defendant against plaintiffs who were not parties to the litigation).  In other words, each of the Wildfire Claimants would have a separate opportunity to convince a jury that the Debtors are liable for the fires.  Even if the Debtors won ten out of eleven trials, but lost the last, other Wildfire Claimants could use the one adverse verdict against the Debtors for every case thereafter.

8.      The inefficiency and prejudice to the Debtors and all other creditors is even further exacerbated by what would undoubtedly be a lengthy appellate fight over any verdict, as each individual case could take years to become final and non-appealable.   *See Nat'l Union Fire Ins. Co. v. Stites Prof. Law Corp.*, 235 Cal. App. 3d 1718, 1726 (1991); *Gabor v. Deshler*, No. 17-CV-01524-LHK, 2017 WL 4151042, at *11 (N.D. Cal. Sept. 19, 2017) (refusing to apply collateral estoppel because California state court judgment was pending on appeal); *see also* Cal. Code Civ. Proc. §1049 (an action remains pending "until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied").

9.      In addition, waiting for the liquidation of the Wildfire Claims would severely prejudice the interests of all stakeholders.  It is imperative that the Debtors move as expeditiously as possible to exit bankruptcy.  The legislation signed by Governor Newsom on July 12, 2019 requires that these chapter 11 proceedings be resolved by June 30, 2020 in order for the Debtors to access the new Wildfire Fund for future wildfires.  Without the protection of the Wildfire Fund, future wildfires could severely diminish all creditors' recoveries and continue to threaten the financial viability of the Debtors.  Liquidation of the Wildfire Claims through trials would prolong, not hasten, the Debtors' exit from chapter 11.

10.      The Court's decision in *In re Dow Corning Corp.*, 211 B.R. 545 (Bankr. E.D. Mich. 1997), cited by the Official Committee of Tort Claimants ("TCC") in its *Amended Motion of the Official Committee of Tort Claimants for Relief from Automatic Stay to Permit State Court Jury Trial of 2017 Tubbs Wildfire Claims* [Docket No. 2904] ("Stay Motion"), is distinguishable.  There, the Court found that cause did not exist to estimate the unliquidated tort claims pursuant to 502(c) because the parties had not shown that liquidation of those claims would unduly delay the administration of the case.  *Id.* at 562.[3]

11.      The remaining cases the TCC cites in its Stay Motion are likewise inapposite.  In *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 757 (Bankr. S.D. Cal. 2007), the Court did not consider whether estimation was required under § 502(c) and instead addressed whether to remand 42 child sexual abuse adversary proceedings to state court pursuant to 28 U.S.C. § 1452(b).  The Court discussed its potential concerns with estimating the claims only in passing.  Likewise, in *In re Roman Catholic Archbishop of Portland in Or.*, 338 B.R. 414, 419–20 (Bankr. D. Or. 2006), the Court did not consider whether estimation was required under § 502(c) and instead addressed whether to remand sexual abuse adversary proceedings to state court pursuant to 28 U.S.C. § 1334(c) and 28 U.S.C. § 1452(b).  The Court did not address estimation at all, and instead merely noted without discussion, "All parties acknowledge that the claims at issue are 'personal injury tort' claims as that term is used in

---

[3] Moreover, as discussed below, the Court in *In re Dow Corning* ultimately estimated the debtors' total aggregate liability for the tort claimants' personal injury and wrongful death claims over the objection of certain tort claimants.

28 U.S.C. § 157.  Thus, this court cannot liquidate the claims at issue for purposes of distribution, and the claimants' rights to jury trial are preserved in connection with the liquidation of their claims for distribution purposes[.]"  *Id*. at 417.  And in I*n re Roman Catholic Archbishop of Portland in Or.*, 339 B.R. 215 (Bankr. D. Or. 2006), although the Court denied the debtor's request to estimate sexual abuse claims because the debtor intended to use the estimate as a cap on its liability under its proposed plan,[4] the Court also noted that estimation would avoid undue delay.  *Id.* at 221-22.

## III.    RESPONSE TO THE COURT'S QUESTIONS RAISED AT THE JULY 24, 2019 HEARING

12.    At the hearing on July 24, 2019, the Court posed the following questions in response to the Debtors' Motion: (i) can the Court cap the Debtors' aggregate liability through the estimation process; (ii) can the estimation process begin before the claims bar date without violating due process; (iii) are emotional distress claims or damages "personal injury tort" claims under 28 U.S.C. § 157(b)(2)(B); and (iv) can the Court estimate the Wildfire Claims that do not qualify as "personal injury tort or wrongful death" claims under 28 U.S.C. § 157(b)(2)(B) and leave to another day or another forum the personal injury tort and wrongful death claims?  As discussed in detail below, to address the Court's concerns, the Ad Hoc Committee proposes that the Bankruptcy Court and the District Court together should estimate the Debtors' total aggregate liability for all unliquidated Wildfire Claims.

### A.    The Bankruptcy Court and the District Court Can Cap the Debtors' Aggregate Liability for All Unliquidated Wildfire Claims, Including Personal Injury and Wrongful Death Claims Through the Estimation Process.

13.    For all claims, including personal injury tort and wrongful death claims, the Bankruptcy Court has authority to (i) determine whether to allow or disallow claims and (ii) estimate claims for purposes of plan confirmation.  28 U.S.C. § 157(b)(2)(B) (Bankruptcy Court has core jurisdiction to conduct proceedings for the "allowance or disallowance of claims against the estate . . . , and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of

---

[4] Significantly, the Court noted that the Bankruptcy Court could estimate the claims for purposes of distribution by way of proposed findings of fact and conclusions of law to the District Court (*see* Section III.A.2. below).

title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."); s*ee also In re N. Am. Health Care, Inc.*, 544 B.R. 684, 688–89 (Bankr. C.D. Cal. 2016) (explaining that estimation of an unliquidated personal injury claim for the purpose of confirming a plan is a core matter within the Bankruptcy Court's jurisdiction); *In re Roman Catholic Bishop of San Diego*, No. 07-00989-LA11, 2007 WL 2406899, at *4 (S.D. Cal. Aug. 20, 2007) ("[E]stimation of a claim for purposes of *confirming* a plan can be considered a core proceeding completely within the scope of the bankruptcy court's powers.") (emphasis in original); *In re G-I Holdings, Inc.*, 295 B.R. 211, 218–19 (D.N.J. 2003) ("The Committee's proposal aims to estimate G–I Holdings' aggregate asbestos liability for purposes of determining voting shares in the chapter 11 plan confirmation process. This is a core proceeding that should be determined by the Bankruptcy Court."); *In re Chateaugay Corp.*, 111 B.R. 67, 72 (Bankr. S.D.N.Y. 1990), *aff'd*, 130 B.R. 403 (S.D.N.Y. 1991), *aff'd in part, rev'd in part*, 961 F.2d 378 (2d Cir. 1992), and aff'd, 146 B.R. 339 (S.D.N.Y. 1992) ("[T]he estimation of [personal injury and wrongful death] claims by a bankruptcy court for [the purpose of] determining the feasibility of a debtor's plan of reorganization, is permissible and constitutes a 'core' proceeding.") (citations omitted).

14.     The Bankruptcy Court cannot, however, "liquidat[e] or estimate[e] . . . unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution" absent consent of all parties.  28 U.S.C. §§ 157(b)(2)(B), (c)(2).  For personal injury tort and wrongful death claims, estimation for purposes of distribution may be accomplished in several ways.  The *District Court* may estimate, without jury trials, personal injury and wrongful death claims for purposes of distribution, which would include setting a cap on the aggregate available recovery.  The Bankruptcy Court may also do so in the first instance, and make a report and recommendation to the District Court, which would then issue a final order on estimation and set an aggregate cap.  Alternatively, the Bankruptcy Court and the District Court may jointly preside over the estimation hearing and issue a joint ruling on the estimation proceedings.  There is precedent supporting each of these approaches.

1

                 1.     <u>The District Court may estimate personal injury tort and wrongful death claims for purposes of distribution without a jury trial and can impose an aggregate cap on claims.</u>

2

3         15.     District Courts have properly estimated personal injury and wrongful death claims for

4 purposes of distribution without jury trials under the circumstances presented here. For example, in *In*

5 *re Fed.-Mogul Glob., Inc.*, 330 B.R. 133 (D. Del. 2005), the District Court estimated the aggregate

6 value of unliquidated tort claims without a jury trial. There, the District Court, after withdrawing the

7 reference to conduct an estimation hearing pursuant to 157(d),[5] estimated the "aggregate present value

8 of pending and projected future asbestos personal injury and wrongful death claims asserted against"

9 the debtors. *Id.* at 135. The Court explained that *the purpose of the estimation was to quantify the*

10 *Debtor's aggregate personal injury liability for the creation of a trust*, not to determine the merits of

11 individual or class of individual's claims. *Id.* at 154. The Court held that estimation did not require

12 the Court to afford each claimant the procedural protections of the due process clause of the Fifth

13 Amendment, or a trial by jury. The Court stated, "To do otherwise would eviscerate the purposes of

14 the estimation process and place additional financial burdens on the very trust which the Court is trying

15 to create." *Id* at 155.

16         16.     The TCC's assertion that District Courts can only cap aggregate liability through the

17 estimation process with the consent of all creditors is wrong. [*See Objection of the Committee of Tort*

18 *Claimants to Motion of the Ad Hoc Committee of Senior Unsecured Noteholders to Terminate the*

19 *Debtors' Exclusive Periods Pursuant to Section 1121(d)(1) of the Bankruptcy Code* (Docket No. 3069)

20 ("<u>TCC Objection</u>") at 7-10.] The *Dow Corning* Court's statements, relied on heavily by the TCC, that

21 using the estimation process to place a cap on the debtor's aggregate liability is improper because such

22 estimation is the equivalent of liquidation, are merely dicta. In fact, the *Dow Corning* court ultimately

23 *confirmed* a plan of reorganization that established an aggregate fund capping the debtor's liability

24 *over the dissent of certain tort claimants*. *In re Dow Corning Corp.*, 244 B.R. 721, 732-33 (Bankr.

25

26                [5] Section 157(d) provides, "The district court may withdraw, in whole or in part, any case or

27 proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of

28 the United States regulating organizations or activities affecting interstate commerce."

E.D. Mich. 1999), *rev'd on other grounds*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002) (overruling tort claimants' objections to plan's $400 million cap on available damages for personal injury claimants who chose to litigate their claims after finding fund sufficient to pay claims); *In re Dow Corning Corp.*, 255 B.R. 445, 502 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002) (upholding $400 million cap on available damages).

2.    <u>The Bankruptcy Court may conduct the estimation proceedings and submit a report and recommendation to the District Court for the appropriate estimation of personal injury tort and wrongful death claims and aggregate cap.</u>

17.    The Bankruptcy Court can estimate all claims with the consent of the parties.  28 U.S.C. § 157(c)(2).  Moreover, absent such consent, for those claims that qualify as personal injury and wrongful death claims under § 157(b)(2)(B), the Bankruptcy Court can conduct an estimation proceeding for distribution purposes and submit proposed findings of fact and conclusions of law to the District Court for review and entry of an estimation order.  *See* 28 U.S.C. § 157(c)(1).

18.    The Court in *In re Roman Catholic Archbishop of Portland in Or.,* 339 B.R. 215 (Bankr. D. Or. 2006) – a case the TCC relies upon in its Stay Motion – endorsed this procedure.  There, the tort claimants argued that the Bankruptcy Court could not estimate personal injury claims because the debtor sought, through the estimation process, to cap the total funds available to pay the tort claims under its proposed plan of reorganization.  *Id.* at 218-19.  The Court agreed, but indicated that the District Court could properly estimate the personal injury claims for purposes of capping the debtor's liability.  The Court stated, "If [the] debtor decides that it wants to proceed with a plan of reorganization that depends on an aggregate estimation of present child sex abuse claims for purposes of capping the fund from which tort claims will be paid, *I will at the appropriate time prepare a report and recommendation to the district court*."  *Id.* at 221 (emphasis added).  Other Bankruptcy Courts are in accord.  *See, e.g., In re G-I Holdings, Inc.*, 323 B.R. at 611 (Bankr. D.N.J. 2005) ("If . . . this Court approves an estimation proceeding with the intended goal of liquidating contingent or unliquidated personal injury tort or wrongful death claims against the estate for distributional purposes, . . . such a proceeding would fall within the non-core 'related to' jurisdiction of the Court. In such a case, . . . this Court would conduct the estimation proceeding in the first instance and thereafter would submit proposed findings of fact and conclusions of law to the District Court for the entry of a final order, all

in accordance with 28 U.S.C. § 157(c).") (citations omitted)); *Barstad v. CNU of Texas, LLC*, No. SA-17-CV-00581-OLG, 2017 WL 7789541, at *5 (W.D. Tex. Dec. 19, 2017) ("For the non-core matters or any core matters for which the Bankruptcy Court may not enter final judgment, the Bankruptcy Court can handle all pretrial matters and issue findings of fact and conclusions of law for any dispositive motions that this Court will then review de novo."); *see also In re Garlock Sealing Techs., LLC*, 504 B.R. 71, 97 (Bankr. W.D.N.C. 2014) (without discussing the limitations of § 157(b)(2)(B), Bankruptcy Court estimated debtor's aggregate liability for present and future asbestos-related mesothelioma claims at $125 million); *In re Eagle-Picher Indus., Inc.*, 189 B.R. 681, 692 (Bankr. S.D. Ohio 1995), as amended (Dec. 14, 1995) (without discussing the limitations of § 157(b)(2)(B), Bankruptcy Court estimated debtor's aggregate liability for present and future asbestos-related claims at $2.5 billion).

      3.    <u>The Bankruptcy Court and the District Court may jointly conduct the estimation proceedings and issue a final order setting a cap on the aggregate amount of allowed claims.</u>

19.    When appropriate, Bankruptcy Courts and District Courts may jointly handle issues that arise in bankruptcy cases, including jointly conducting estimation proceedings.[6]  For example, in *In re A.H. Robins Co., Inc.*, 88 B.R. 742, *aff'd*, 880 F.2d 694 (4th Cir. 1989), the District Court and the Bankruptcy Court jointly considered the feasibility of the debtor's reorganization plan in support of its motion for confirmation.  After an estimation hearing, the Courts placed a cap on the debtors' aggregate liability for all personal injury claims at $2.475 billion.  *Id.* at 747.

20.    Bankruptcy Courts and District Courts have likewise conducted joint proceedings in other contexts.  *See, e.g., In re G-I Holdings Inc.*, 420 B.R. 216, 231–32 (D.N.J. 2009) ("[P]ursuant to 28 U.S.C. § 157(d), on motion of the Debtors and with the support of the ACC and the Legal Representative, the District Court partially withdrew the reference of the Confirmation Hearing to enable the Bankruptcy Court and the District Court to preside jointly over confirmation."); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 149–50 (D. Del. 2006) (following the debtor's request, the District Judge and the Bankruptcy Judge jointly presided over the confirmation hearing); *In re*

---

[6] To the extent it is necessary, the District Court can withdraw the reference in part to enter an order estimating the personal injury and wrongful death claims.  *See* 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.").

*Armstrong World Indus., Inc.*, 320 B.R. 523, 530 n.16 (D. Del.), *aff'd*, 432 F.3d 507 (3d Cir. 2005) ("Apparently, all parties in the instant case had agreed that the District Court and the Bankruptcy Court should sit jointly at the Confirmation Hearing, in part because the District Court would need to evaluate, i.e., 'issue or affirm,' the channeling injunction set forth in the Plan, as prescribed by 11 U.S.C. § 524(g)(3)(A). Although no order from either the District Court or Bankruptcy Court was issued stating that a joint proceeding must be held, the parties contend that both Courts consented to this procedure."); *In re Mercury Finance Co.*, 249 B.R. 490, 494 (Bkrtcy.N.D.Ill.,2000) (after a party questioned the Bankruptcy Court's jurisdiction over its claims, the Bankruptcy Court "recommended that it hold joint hearings with the District Court. The District Court and the Bankruptcy Court held a joint session wherein the District Court ruled on class certification and settlement and the Bankruptcy Court ruled on the disclosure statement and the plan of reorganization[.]"); *J T Thorpe Co.*, No. 02-41487-H5-11, 2003 WL 23354129, at *1 (Bankr. S.D. Tex. Jan. 30, 2003) (where channeling injunction was sought under 11 U.S.C. § 524(g), which provides that "any proceeding that involves the validity, application, construction or modification of [an] injunction ... may be commenced only in the district court in which such injunction was entered, and such court shall have exclusive jurisdiction over any such proceeding[,]" the hearing on plan confirmation and related motions was heard and considered by the District Court jointly with the Bankruptcy Court).

        4.     <u>The Bankruptcy Court and the District Court should jointly conduct these estimation proceedings.</u>

21.     While any of the above-described approaches would allow for the estimation and ultimate capping of the Wildfire Claims, the Ad Hoc Committee respectfully submits that the most efficient course is for the Bankruptcy Court and the District Court jointly to conduct the estimation proceedings. This approach will alleviate the TCC's concerns over the estimation proceedings resulting in a cap on the Debtors' aggregate liability, thereby eliminating the risk of delay arising from appeal of the Courts' estimation order. Similarly, joint estimation proceedings will avoid the delays, inefficiencies, and wasted resources resulting from bifurcated proceedings. And, importantly, involving the District Court for the limited purpose of conducting joint estimation proceedings will enable this Court to maintain control over the reorganization process. In short, joint estimation

proceedings is the only path that will ensure the estimation proceedings and the chapter 11 cases are finally resolved by the June 30, 2020 deadline.

**B. Factual Issues Can Be Resolved in The Estimation Proceedings Without Violating Any Claimants' Right to a Jury Trial.**

22. Regardless of whether the Bankruptcy Court or the District Court conducts the estimation proceedings, courts can and have estimated personal injury tort and wrongful death claims where causation or other factual issues are in dispute without conducting jury trials.

23. Thus, Bankruptcy Courts have properly (i) ruled on motions for summary judgment involving personal injury and wrongful death claims where liability is disputed and (ii) considered factual liability issues in estimating personal injury and wrongful death claims. *In re Aquaslide 'N' Dive Corp.*, 85 B.R. 545, 549 (B.A.P. 9th Cir. 1987) (affirming Bankruptcy Court's order disallowing personal injury claim on summary judgment, reasoning that the Court "essentially estimated the claim . . . for purposes of confirming a plan under Chapter 11. . . . the bankruptcy court below had the right and duty to estimate these claims, and did not violate the Grzybowskis' right to a trial by jury for the tort claim in doing so."); *In re Granite Broad. Corp.*, 385 B.R. 41, 49 (S.D.N.Y. 2008) ("[T]he Bankruptcy Court properly exercised its jurisdiction in estimating Foster's claims. Even assuming, arguendo, that the Foster Claims are 'personal injury claims,' the Bankruptcy Court was still within its authority to make the threshold determination of whether the Foster Claims are allowable and whether such claims are subject to estimation for all purposes at $0 [because the claims had no basis in fact or law]."); *In re Dow Corning Corp.*, 215 B.R. 346, 352 (Bankr. E.D. Mich.), *supplemented*, 215 B.R. 526 (Bankr. E.D. Mich. 1997) ("[W]e conclude that a bankruptcy court may enter a final order on a motion for summary judgment disallowing a personal injury claim [on causation grounds] without running afoul of the 'but not the liquidation' clause of § 157(b)(2)(B)."); *In re Corey*, 892 F.2d 829, 834 (9th Cir. 1989) (affirming District Court's estimation of claims for emotional distress, among others, pursuant to 11 U.S.C. § 502(c)(1) at zero "[g]iven the highly speculative nature of [the] claims").

24. The Bankruptcy Court addressed this issue in detail in the context of personal injury claims in *In re G-I Holdings, Inc.*, 323 B.R. 583 (Bankr. D.N.J. 2005). *Id.* Among other issues, the

Bankruptcy Court addressed the following question: "If the Court were to approve an estimation proceeding for purposes of plan confirmation and thereafter during the estimation process disallows a particular claim or estimates the claim at $0, does this by definition constitute a 'liquidation' of the particular claim?" *Id.* at 611–12. The Court answered this question in the negative, explaining, "The § 157(b)(2)(B) personal injury exclusion . . . does not limit a bankruptcy court's ability to address substantive issues regarding the validity of claims against the estate as a matter of law." *Id.* at 614–15. The Court concluded,

> Significantly, then, should G–I Holdings challenge the legal validity of any claim or class of claims during the estimation proceeding, which this Court will decide, any such claims challenge may constitute a core proceeding or possibly a non-core related to proceeding under 28 U.S.C. § 157(c)(1) to the extent that the objection would result in the disallowance of any particular claim…. In such a case, this Court would hear the claims objection in the first instance and then submit proposed findings of fact and conclusions of law to the District Court for the District Court to review de novo and enter a final order. While 28 U.S.C. § 157(b)(5) requires the district court to order personal injury tort and wrongful death claims be tried in that court, § 157(b)(5) does not affect pretrial proceedings. Consequently, this Court has jurisdiction to determine any claims objections that G–I Holdings may assert during the course of the estimation proceedings. The only question at that time would be whether this Court could enter a final order or propose findings of fact and conclusions of law to the District Court.

*Id.* (citations omitted).[7]

25. Accordingly, here, the Bankruptcy Court and District Court can, through the estimation process, rule upon the Debtors' factual challenge to liability on causation grounds without violating any claimant's right to a jury trial.

## C. The Estimation Proceedings Can Begin Before the Claims Bar Date.

26. The Bankruptcy Code does not prohibit claims from being estimated before the claims bar date. In the context of estimation, the statute and the courts refer only to estimation of a "claim." A "claim" in this context is not necessarily or solely a proof of claim, but instead a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

---

[7] The Bankruptcy Court ultimately implemented its own estimation approach under which it would estimate the debtor's aggregate liability. *Id.* at 623-25. The Court noted, however, "[o]nce the precise estimation procedure and methodology are determined, and prior to the estimation hearing, the Court may need to resolve . . . whether G–I Holdings can place a statutory cap on damages under § 502(c) of the Code[.]" *Id.* at 625, n.42. It appears that the Court never had to resolve this issue, as the District Court and the Bankruptcy Court together ultimately confirmed a joint plan of reorganization. *In re G-I Holdings Inc.*, 420 B.R. 216 (D.N.J. 2009).

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" that arose prior to the filing of the bankruptcy petition. 11 U.S.C. § 101(5)(A).

27.     Although in practice, estimation motions often are filed after the bar date, the Ad Hoc Committee is not aware of anything preventing the Court from beginning estimation proceedings before the bar date. For example, in *In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416 (Bankr. D. Md. 2007), although a bar date had not been set, the court reasoned that it had discretion under §502(c) and Bankruptcy Rule 3018(a) to allow mass tort claimants to cast a ballot and temporarily allow a claim for voting purposes based on that ballot, and noted that this approach is regularly employed in mass tort cases with a large number of unliquidated claims. *Id.* at 423. In asbestos cases, courts routinely estimate the value and validity of both present *and future* tort claims *before the bar date*. *In re Specialty Prod. Holding Corp.*, No. BR 10-11779-JKF, 2013 WL 2177694, at *25 (Bankr. D. Del. May 20, 2013) (estimating, before the bar date, pending and future personal injury asbestos claims at $1.1 billion net present value); *In re Specialty Products Holding Corp.,* Del. Bankr. 10–11780, Tr. Hr'g Nov. 5, 2013, 40:8–11 (D.I. 4286) (indicating (after estimation order) that the Court was inclined to set a bar date); *see also In re Garlock Sealing Techs.*, *LLC*, 504 B.R. 71, 97 (Bankr. W.D.N.C. 2014) (before setting a bar date, Bankruptcy Court estimated debtor's aggregate liability for present and future asbestos-related mesothelioma claims); *In re: Garlock Sealing Technologies LLC, et al.*, No. 10-BK-31607, 2013 WL 7864919 (Bkrtcy.W.D.N.C. Dec. 30, 2013) (requesting, after estimation hearing, an order establishing a bar date for asbestos claims); *In re Eagle-Picher Indus., Inc.*, 189 B.R. 681, 692 (Bankr. S.D. Ohio 1995), as amended (Dec. 14, 1995) (Bankruptcy Court estimated debtor's aggregate liability for present and future asbestos-related claims).

28.     Similarly, courts have sanctioned the consideration of motions for summary judgment before the bar date. *In re W.R. Grace & Co.*, 355 B.R. 462, 466 (Bankr. D. Del. 2006) (addressing cross motions for summary judgment on whether the presence of the debtor's product creates an unreasonable risk of harm before the claims bar date and explaining, "Prior to a decision on whether to require individual proofs of claim or consider a single proof of claim on behalf of a class, and in order to determine whether a ZAI claims bar date should be established . . . this court decided to address the threshold issue of whether ZAI poses an unreasonable risk of harm[.]").

**D. Only Those Claims That Allege Actual, Physical Injury Qualify as "Personal Injury Tort" Claims Under 28 U.S.C. § 157(B)(2)(B).**

29.     If the District Court and the Bankruptcy Court jointly conduct the estimation proceedings, the distinction between "personal injury tort and wrongful death" claims under 28 U.S.C. § 157(b)(2) and all other Wildfire Claims is immaterial because, as discussed above, the District Court's involvement in the estimation proceedings would obviate any concern over estimating personal injury tort and wrongful death claims.  However, even if the Court declines to conduct joint proceedings, only a limited number of Wildfire Claims qualify as "personal injury tort" claims within the exception outlined in 28 U.S.C. § 157(b)(2)(B).

30.     The Bankruptcy Code does not define the term "personal injury tort[,]" and the Ninth Circuit has not addressed this issue.  Generally, courts have adopted three approaches:

i.      A "narrow view," defining a personal injury tort claim under § 157(b)(2) as a tort claim with trauma or bodily injury and requiring an actual physical injury (or severe psychiatric impairment), *Massey Energy Co v. W. Va. Consumers for Justice*, 351 B.R. 348, 351 (Bankr. E.D. Va. 2006); *In re Cohen*, 107 B.R. 453, 455 (S.D.N.Y. 1989);

ii.     A "broader view" under which "a personal injury tort claim is not limited to a claim involving bodily injury[, and instead] 'embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering[.]'" *In re City of San Bernardino, Cal.*, No. 5:15-CV-00815-ODW, 2015 WL 6957998, at *4 (C.D. Cal. Nov. 10, 2015) (citations omitted); and

iii.    A "middle" or "hybrid view," which looks to whether a claim falls within the purview of a personal injury tort claim under the expansive view, but retains bankruptcy jurisdiction over the claim if it has "earmarks of a financial, business or property tort claim, or a contract claim." *Id.* (citations omitted).

31.     Lower courts in the Ninth Circuit have adopted different approaches to determine whether a particular claim is a "personal injury tort" claim under § 157(b)(2).  *See Holt v. Green*, No.

2:15-CV-00407-GMN, 2016 WL 927148, at *3 (D. Nev. Mar. 10, 2016) (declining to adopt any one of the three approaches and instead finding claims for unjust enrichment, conversion, embezzlement, and others "do not fall within the purview of personal injury tort claims under any of the three views explained above."); *In re City of San Berardino, Cal.*, 2015 WL 6957998, at *4 (finding claim under 42 U.S.C. § 1983 was not a personal injury tort under either the narrow view or the hybrid view because firefighters did not allege physical harm and the essence of the claim was one for economic loss (lost wages), rather than emotional distress); *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 908 (Bankr. D. Nev. 2008) (adopting the middle or hybrid view to find libel claims are personal injury torts under § 157(b)(2)); *In re Gary Brew Enter. Ltd.*, 198 B.R. 616, 620 (Bankr. S.D. Cal. 1996) (adopting the broad view to find that to *all* 42 U.S.C. § 1983 claims were "personal injury torts").

32.     Despite the different approaches taken by other courts, this Court should adopt the narrow view.  In assessing the meaning of "personal injury tort," the term must be read in context. "Here, the relevant statutory provisions couple 'personal injury torts' and 'wrongful death.' 'Wrongful death' refers to '[a] death caused by a tortious injury.'  The term 'personal injury tort' should be construed in a manner meaningfully similar to 'wrongful death,' and require a physical trauma." *In re Gawker Media LLC*, 571 B.R. 612, 621 (Bankr. S.D.N.Y. 2017) (quoting Bryan A. Garner, Black's Law Dictionary 485 (10th ed. 2014)).  Moreover, § 157(b)(2)'s legislative history confirms that Congress intended to limit the claims fitting the personal injury tort exception under § 157.  *See Massey Energy Co.*, 351 B.R. at 351 ( "Congress intended to limit the claims fitting this exception by introducing the narrow, modifying language 'personal injury.'"); *In re Gawker Media LLC*, 571 B.R. at 622 (reviewing legislative history and confirming the "personal injury tort" exception was "intended to be narrow and not derogate from the bankruptcy court's traditional role of resolving claims through the claims resolution process."); *In re Cohen*, 107 B.R. 453, 455 (S.D.N.Y. 1989) (adopting the narrow view and explaining, "There is no legislative history that would bring this plaintiff's claim for a tort without trauma within the statutory exception for a personal injury tort. On the contrary, the legislative history indicates that Congress intended this exception for a 'narrow range' of claims.") (citations omitted).

33.     In contrast, the hybrid view "finds no support in the words of the relevant statutes, any

canon of construction or the legislative history.'" *In re Gawker Media*, 571 B.R. at 623.  Likewise, "the broad interpretation essentially equates 'personal injury tort' with any 'tort,' and renders the limiting phrase 'personal injury' superfluous." *Id.* at 622–23.  Indeed, the broader view strips bankruptcy courts of jurisdiction in the otherwise traditional claims allowance process.  *See In re Atron, Inc*., 172 B.R. 541, 545 (Bankr. W.D. Mich. 1994) (explaining that the court was "unwilling to adopt the broad exception to bankruptcy court jurisdiction urged by Claimant and thus open the door to a mass exodus of the claims allowance process to the district court, an outcome which § 157(b)(5) was enacted to preclude."); *Bertholet v. Harman,* 126 B.R. 413, 416 (Bankr. D.N.H. 1991) (adopting the narrow view because otherwise, "jurisdiction would too easily be lost from this court" and the court could not "believe Congress intended that.").

34.     Under either the hybrid or the narrow view, claims for emotional distress without physical injury do not constitute personal injury torts under § 157 unless the emotional distress claim is the "gravamen" – or the "substantial point or essence of" – the complaint.  Black's Law Dictionary (11th ed. 2019); *Bertholet*, 126 B.R. at 416 ("[I]f a mental distress claim does not involve physical injury, then only if the claim is the gravamen of a complaint would § 157(b)(5) be invoked."); *In re Gawker Media*, 571 B.R. at 623 ("[I]ncidental claims of emotional injury do not suffice to transform a tort claim into a personal injury tort when it otherwise would not be"); *In re Residential Capital*, LLC, 536 B.R. 566, 575–76 (Bankr. S.D.N.Y. 2015) (finding that claims for intentional infliction of emotion distress, "including of the physical manifestations, do not rise to the level of 'trauma or bodily harm,' nor do they rise to the level of the 'traditional, plain-meaning sense' of a 'personal injury tort[.]'") (citations omitted); *In re Atron Inc. of Michigan*, 172 B.R. 541, 544 (Bankr. W.D. Mich. 1994) ("While not minimizing the emotional pain characteristic of job loss, the Claimant in the present case simply does not allege that his emotional suffering reached the level of a personal injury tort.").

35.     For example, where an "action is not a personal injury tort action but merely contains a claim for mental anguish and suffering as one element of plaintiff's consequential damages[,] [s]uch a claim is insufficient to trigger the provisions of § 157(b)(5)."[8] *Perez v. Shook*, No. CIV. A. 93-3336,

---

[8] Section 157(b)(5) provides, "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in

1993 WL 515775, at *1 (E.D. La. Dec. 6, 1993); *see also In re Littles*, 75 B.R. 240, 242 (Bankr. E.D. Pa. 1987) (where the "claim for damages based upon physical and emotional complaints has been pleaded as an element of . . . damages and not as a separate personal injury tort, e.g., intentional or negligent infliction of emotional distress[,]" a claim for damages related to emotional distress is not a "personal injury tort" under § 157(b)(5). Similarly, even where an action asserts a separate claim of emotional distress, the action does not qualify as a "personal injury tort" unless the emotional distress claim is the primary focus of the complaint. *See In re Lang*, 166 B.R. 964, 967 (D. Utah 1994) ("Regardless of whether intentional infliction of emotional distress is a true personal injury tort under § 157(b)(5), Dr. Lang's claims are fundamentally allegations of fraud. Thus, the . . . allegation of emotional distress [is] too tangential to his lawsuit to support withdrawal of the entire matter solely on the basis of the emotional distress claim. Further, Dr. Lang's claim of emotional distress is intimately connected to his claims of fraud, making it impractical and inefficient to withdraw the emotional distress claim by itself.").

36.     Here, the "gravamen" of the Wildfire Claims is the destruction of property caused by the wildfires. To the extent any Wildfire Claimants suffered actual, physical injury or severe psychiatric impairment as a result of the fires, only those Claimants' claims would qualify as "personal injury tort" claims under § 157(b)(2)(B).

## RESERVATION OF RIGHTS

The Ad Hoc Committee reserves the right to raise further arguments concerning the Estimation Motion at the hearing as may be necessary or appropriate.

*[Remainder of page left intentionally blank]*

---

the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

1       **WHEREFORE**, for the foregoing reasons, the Ad Hoc Committee respectfully requests that

2  the Court (i) grant the Estimation Motion as outlined herein, (ii) request that the District Court

3  participate in the estimation proceedings in conjunction with this Court, and (iii) grant such other and

4  further relief as is just, equitable, and proper.

5    Dated: August 7, 2019                               **AKIN GUMP STRAUSS HAUER & FELD LLP**

6                                         By: */s/ Ashley Vinson Crawford*

7                                         Ashley Vinson Crawford (SBN 257246)

8                                       David H. Botter (*pro hac vice*)
                                     Michael S. Stamer (*pro hac vice*)
                                     Ira S. Dizengoff (*pro hac vice*)

9                                       Abid Qureshi (*pro hac vice*)

10                                      *Counsel to the Ad Hoc Committee of Senior*

11                                      *Unsecured Noteholders of Pacific Gas and Electric*
                                     *Company*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28