| | |
|---|---|
| XAVIER BECERRA, SBN 118517<br>Attorney General of California<br>MARGARITA PADILLA, SBN 99966<br>Supervising Deputy Attorney General<br>JAMES POTTER, SBN 166992<br>Deputy Attorney General<br>1515 Clay Street, 20th Floor<br>P.O. Box 70550<br>Oakland, CA 94612-0550<br>Telephone: (510) 879-0815<br>Fax: (510) 622-2270<br>Margarita.Padilla@doj.ca.gov<br>James.Potter@doj.ca.gov | XAVIER BECERRA, SBN 118517<br>Attorney General of California<br>DANETTE VALDEZ, SBN 141780<br>ANNADEL ALMENDRAS, SBN 192064<br>Supervising Deputy Attorneys General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004<br>Telephone: (415) 510-3367<br>Fax: (415) 703-5480<br>Danette.Valdez@doj.ca.gov<br>Annadel.Almendras@doj.ca.gov |

STEVEN H. FELDERSTEIN, SBN 059678
PAUL J. PASCUZZI, SBN 148810
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Fax: (916) 329-7435
sfelderstein@ffwplaw.com
ppascuzzi@ffwplaw.com

Attorneys for California Department of Forestry
and Fire Protection, et al.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>   - and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                 Debtors.<br><br>☐   Affects PG&E Corporation<br>☐   Affects Pacific Gas and Electric Company<br>☑   Affects both Debtors | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>Date:   August 14, 2019<br>Time:  9:30 a.m.<br>Ctrm:  17<br>Judge: Dennis Montali |

**RESPONSE OF THE CALIFORNIA STATE AGENCIES TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c) FOR THE ESTABLISHMENT OF WILDFIRE CLAIMS ESTIMATION PROCEDURES [DOCKET NO. 3091]**

The California Department of Forestry and Fire Protection ("CAL FIRE"), California Department of Toxic Substances Control ("DTSC"), California Governor's Office of Emergency Services ("Cal OES"), California Department of Veterans Affairs ("CalVet"), California State University ("Cal State University"), and California Department of Parks and Recreation ("State Parks") (collectively, the "California State Agencies") hereby file this response to the Debtors' motion to establish procedures for the estimation of Wildfire Claims[1] (the "Estimation Motion") [Docket No. 3019] based on the following:

**INTRODUCTION**

1. The California State Agencies appreciate the need for urgency to resolve the Debtors' bankruptcy proceedings pursuant to a chapter 11 plan by June 30, 2020, so that the Debtors can participate in the Wildfire Fund created by the recently enacted legislation in A.B. 1054. However, any process for estimation of Wildfire Claims must be fair and equitable to all, including any agencies of the state of California, to the extent any such agencies hold Wildfire Claims that are "unliquidated" or "contingent" under section 502(c).

2. With respect to Phase 3 of the proposed estimation process, and as discussed in more detail below, the California State Agencies filing this response believe they will not have unliquidated or contingent Wildfire Claims within the meaning of section 502(c) of the Bankruptcy Code. However, because the California State Agencies are still in the process of preparing their claims, there is a chance that some state agency claims might fall within the purview of section 502(c), and therefore, the California State Agencies file this response. In addition, the California State Agencies do not know whether the Debtors or Committees will contend that any Wildfire-related claims held by the state agencies are unliquidated or contingent and subject to estimation. If so, the Court will need to determine whether such claims are unliquidated or contingent. For these reasons, the California State Agencies (and any other state agency that may be determined to hold an unliquidated or contingent Wildfire Claim) reserve the right to participate in further court proceedings regarding the fair and proper procedures for Phase

---

[1] Capitalized terms not otherwise defined shall have the same meaning as in the Estimation Motion.

3 of the estimation process.

3. The California State Agencies also reserve the right to brief the issues raised in Phase 1 (inverse condemnation determination) and Phase 2 (Tubbs Fire liability). In addition, CAL FIRE is concerned about the potential discovery burden on it, particularly with respect to the determination of the Debtors' liability for the Tubbs Fire, but also with respect to the other Wildfires. As set forth below, CAL FIRE requests the assistance of this Court to coordinate discovery directed at CAL FIRE to minimize duplication, unnecessary expense, and undue burden on CAL FIRE.

4. The California State Agencies share the Court's concerns and questions expressed at the hearing on July 24, 2019, regarding the lack of clarity in the Debtors' Estimation Motion as to the purpose and effect of the proposed estimation process. If the Debtors intend to use the proposed estimation process to cap the ultimate distribution to Wildfire Claims under a chapter 11 plan, many issues arise, including but not limited to absolute priority rule issues. The California State Agencies also submit that estimation should be focused on the tort victims' Wildfire Claims, and not be used to limit state agency claims such as fire suppression, regulatory and police power, and environmental remediation claims, as more specifically described below.[2] Thus, the California State Agencies reserve the right to object, argue, and comment further once the Debtors answer the Court's questions and/or in connection with confirmation of any chapter 11 plan.

**RESPONSE**

**A.  Claims of California State Agencies Not Subject to Section 502(c) Estimation**

5. Bankruptcy Code section 502(c) permits the bankruptcy court to, among other things, estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case [.]" 11 U.S.C. § 502(c)(1).

6. Under Ninth Circuit authority, "whether a debt is liquidated turns on whether it is

---

[2] Indeed, when discussing the Wildfire Claims to be estimated, the Motion refers to the "[t]ens of thousands of California residents whose lives have been affected by the Wildfires," "actual damages suffered by the victims," and "compensating victims who deserve compensation." Motion at pp. 1:7-8; 2:1; and 2:17-18.

-2-

subject to 'ready determination and precision in computation of the amount due.'" *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) (referring to the term "liquidated" as used in section 109(e)) (citations omitted). That same definition has been used in the context of interpreting "unliquidated" for section 502(c) purposes. *In re Audre, Inc.*, 202 B.R. 490 (Bankr. S.D. Cal. 1996).

7. "[A] contingent debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" *Fostvedt*, 823 F.2d at 306 (citations omitted). "[A] debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." *Nicholes v. Johnny Appleseed (In re Nicholes)*, 184 B.R. 82, 88 (B.A.P. 9th Cir. 1995) (citing *Fostvedt*). As the *Nicholes* court explained:

> A tort claim ordinarily is not contingent as to liability; the events that gave rise to liability to the tort claim usually have occurred and liability is not dependent on some future event that may never happen. It is immaterial that the tort claim is not adjudicated or liquidated, or that the claim is disputed, or indeed that it has any of the many other characteristics of claims under the Code.

*Nicholes*, 184 B.R. at 88 n.7 (citation omitted). The *Nicholes* analysis has been applied with respect to interpreting "contingent" for section 502(c) purposes. *Audre, Inc.*, 202 B.R. at 492.

8. While the California State Agencies are still in the process of determining claims, most, if not all, of the California State Agencies' respective claims are NOT contingent or unliquidated and thus are NOT subject to estimation. Below is a brief description of the types of Wildfire-related claims that the California State Agencies may have:[3]

    a.    CAL FIRE: Under California law, CAL FIRE is charged with "fire protection, fire prevention . . . of the state's forest, range, and brushland resources . . . associated emergency services, and assistance in civil disasters and other nonfire emergencies" and "[e]nforcing forest and fire laws" in California. Cal. Pub. Res. Code §§ 713, 714. CAL FIRE's fire protection responsibilities include regularly responding to fire emergencies throughout the

---

[3] As noted, the California State Agencies reserve all rights with respect to the claims to be asserted in their official proofs of claim, and the descriptions and statements herein shall not be considered an admission or other limitation on the claims that may be asserted against the Debtors or any other responsible parties with respect to the Wildfires.

-3-

state. CAL FIRE also bears responsibility for investigating the origin and cause of fires that occur in its jurisdiction.

California Health and Safety Code sections 13009 and 13009.1 authorize CAL FIRE to recover certain costs from persons who, negligently or in violation of the law, "set[] a fire, allow[] a fire to be set, or allow[] a fire kindled or attended by him or her to escape onto any public or private property." Cal. Health & Safety Code §§ 13009, 13009.1. Recoverable costs include costs incurred in fighting and suppressing the fire, costs of rescue and emergency medical services, investigation costs, and accounting costs. *Id.* §§ 13009(a), 13009.1(a). The costs are recoverable from the responsible party "in the same manner as . . . an obligation under a contract, express or implied." *Id.* §§ 13009(a), 13009.1(e).

CAL FIRE's claims for cost recovery arising out of the Wildfires are liquidated because they are both readily determinable and are precise computations of the amount due to CAL FIRE. It is CAL FIRE's practice to complete internal processes that precisely compute the amount of CAL FIRE's cost recovery claims with respect to each fire incident at issue. After a fire has been suppressed, a CAL FIRE employee initiates the Activity Reporting Costs ("ARC") Summary for the fire, which is prepared using a CAL FIRE internal ARC software program. The ARC software program imports qualifying, recoverable costs associated with the incident from various accounting programs and processes at CAL FIRE, and once all appropriate costs have been imported, CAL FIRE personnel begin a review and audit of the imported costs associated with the fire. During this review, CAL FIRE personnel collect all finance documents related to the incident, confirm those documents correspond to the charges in the ARC, and adjust the costs claimed in the ARC to ensure compliance with CAL FIRE's cost recovery policies. If a cost is not clearly supported by back-up finance documents or not clearly incurred in relation to the particular fire, CAL FIRE personnel make the cost "not billable," manually writing it off of the ARC. In this way, CAL FIRE personnel review and analyze each and every line item charged to a specific fire.

Once finished, the ARC package, consisting of the ARC Summary, supporting ARC Summary documents, and supporting finance documents, becomes CAL FIRE's record of

recoverable costs related to a specific incident. A complete ARC package lays the foundation for both the reasonableness and amount of CAL FIRE's costs, as required under CAL FIRE's cost recovery statute, and California courts have held that CAL FIRE's ARC "conclusively established" the amount CAL FIRE expended in recoverable fire suppression and investigation activities. *People v. Southern Cal. Edison Co.*, 56 Cal. App. 3d 593, 602-607 (1976). And, the costs described in CAL FIRE's ARCs are generally not subject to substantial revision because defendants opposing CAL FIRE's cost recovery claims cannot make arguments of comparative fault or mitigation of damages to reduce CAL FIRE's costs described in the ARC. *People ex rel. Grijalva v. Superior Court*, 159 Cal. App. 4th 1072, 1077-78 (2008). Accordingly, CAL FIRE's ARC-backed cost recovery claims are liquidated for the purposes of the Debtors' bankruptcy proceedings.

   b. <u>CalVet</u>: CalVet will assert claims for property damage as a result of the Butte and Camp fires. These claims are liquidated and are not contingent because they are for amounts already paid to veterans for their property losses or are for discrete property damage to property owned by CalVet. These amounts are readily determinable in precise amounts based on checks paid to the veterans or cost estimates of labor and materials to rebuild, repair, and clean up the damaged property.

   c. <u>California State University</u>: The Cal State University will assert claims for property damage, economic loss, and emergency response costs arising out of the Tubbs fire and Camp fire. These claims are likely liquidated and are not contingent because the amounts owed have been determined in precise amounts based on amounts already expended.

   d. <u>Cal OES</u>: Cal OES is responsible for the coordination of overall state agency response to disasters, including wildfires and assisting local governments with recovery. Cal OES acts as the "grantee" for federally funded disasters and as "grantor" for the California Disaster Assistance Program. Cal OES ensures state and federal support are provided through various state and local agencies' emergency services. Those services included debris removal,

///

///

emergency protective measures,[4] police patrols of evacuated areas, traffic control, repair of damaged public property, and administration and coordination of emergency services. As part of its mandate, Cal OES likely will assert direct and indirect reimbursement claims against the Debtors for emergency services provided during the various Wildfires. These claims will be based on amounts Cal OES expended. These amounts are expected to be liquidated and are not contingent.

        e.    <u>DTSC</u>: DTSC has police and regulatory powers to enforce environmental laws regarding, *inter alia*, contamination from the release or threatened release of hazardous substances, including the releases of hazardous substances caused by the Debtors from the Wildfires. Cal. Health & Safety Code §§ 25100, 25300. DTSC is one of the California state agencies with authority over the cleanup of contaminated sites. DTSC incurred costs in responding to the releases of hazardous substances from the Wildfires, including removing hazardous substances from residences and other buildings damaged in a Wildfire. Similar to CAL FIRE, DTSC's response costs are determinable and are therefore liquidated. DTSC employs a detailed process to track costs and employee time for responding to cleanup of hazardous substances at each site.

        f.    <u>State Parks</u>: State Parks has a contract claim against the Debtors for failure to pay on a contract. The Debtors entered into a contract with State Parks for use of a state park as a staging area for the Camp Fire. The Debtors issued a check, but cancelled it upon the filing of the bankruptcy. In addition, State Parks will assert claims for economic loss, environmental

---

[4] The regulations promulgated pursuant to the California Disaster Assistance Act (Gov. Code § 8680, et seq.) define "emergency protective measures" to include "search and rescue, demolition of unsafe structures, warning of further risks and hazards, public information on health and safety measures, and actions necessary to remove or to reduce immediate threats to public property, or to private property when in the public interest, or temporary protective measures designed to protect public or private property from further damage." Cal. Code Regs., tit. 19, § 2930, subd. (b). "[T]emporary repairs to damaged buildings or structures," and "reimbursement for the demolition of a damaged public facility," are two of several express examples of emergency protective measures. Cal. Code Regs., tit. 19, § 2930, subds. (d)(2), (d)(4). The regulations promulgated under the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5121 et seq.) define "emergency protective measures" as measures to "save lives, to protect public health and safety, and to protect improved property… ." Code of Federal Regs. tit. 44, § 206.225, subd. (a)(1).

work, and emergency response costs arising out of the Camp fire. Emergency response costs include staff time expended in assisting in evacuation of residents as well as evacuation of cultural resources. These claims are likely liquidated and are not contingent because the amounts owed have been determined in precise amounts based on amounts already expended.

Consequently, the California State Agencies believe that their Wildfire-related claims, and the claims of other state agencies that are related to the Wildfires, will not be unliquidated or contingent, and thus should not be included as part of the estimation of Wildfire Claims as proposed in the Debtors' Estimation Motion. However, it is not clear whether the Debtors' Estimation Motion seeks to estimate these types of claims, which are certainly distinguishable from individual tort victims' claims or subrogation claims of insurers. If the Debtors or the Committees dispute these characterizations, the Court will need to determine (after the bar date) whether particular filed claims related to the Wildfires are unliquidated or contingent.

In the event the respective claims held by the California State Agencies are ordered subject to the Phase 3 estimation, the California State Agencies reserve their rights to: (a) participate in further Court proceedings regarding the proper and fair procedures for Phase 3; (b) request the appointment of an examiner or court expert under Federal Rule of Evidence 706 to aid the Phase 3 estimation process; and (c) object to any cap placed on unsecured Wildfire-related claims for distribution purposes if the cap results in not paying all valid claims in full.

**B.     Anticipated Discovery Issues Related to CAL FIRE**

9.     Regarding Phase 2 proposed by the Estimation Motion, the Debtors identify CAL FIRE as a primary source of the evidence regarding liability for the Tubbs Fire. CAL FIRE requests that the Debtor, the Committees, any other parties participating in Phase 2, and the Court as necessary, coordinate the discovery procedures to minimize the burden on CAL FIRE. It is already apparent that the numerous parties who have a stake in Phase 2 and Phase 3 are aggressively seeking information from CAL FIRE or other governmental units that work with CAL FIRE and are doing so in an uncoordinated, duplicative, and overly burdensome manner. CAL FIRE requests the Court's assistance in ensuring a coordinated and efficient process that does not impose an undue burden on CAL FIRE.

10. An example of a need for the Court's assistance is the recent correspondence filed with the Court from the Tort Claimants Committee ("TCC") and others regarding discovery. On July 26, 2019, the TCC submitted a letter to this Court [Docket No. 3219] that attached a letter from the subrogation plaintiffs and the individual plaintiffs to the Debtors indicating that such plaintiffs intended to take the following depositions: (a) eight CAL FIRE employees in relation to the Tubbs Fire; (b) four CAL FIRE investigators in relation to the Atlas Fire; (c) the CAL FIRE person(s) most knowledgeable with respect to the origin area and causation of the (i) Adobe Fire, (ii) Norrbom Fire, (iii) Nuns Fire, (iv) Oakmont Fire, (v) Partrick Fire, and (vi) Pressley Fire; (d) three CAL FIRE employees in relation to the Redwood/Potter Valley Fire; (e) two CAL FIRE employees in relation to the Sulphur Fire; (f) CAL FIRE investigators in relation to the Pocket Fire; and (g) all CAL FIRE employees charged with investigating and determining the origin and cause of the (i) Point Fire, (ii) Highway 37 Fire, (iii) Cascade Fire, (iv) Cherokee Fire, (v) LaPorte Fire, (vi) Lobo Fire, (vii) McCourtney Fire, and (viii) Camp Fire.

11. In addition to the depositions, the subrogation plaintiffs and the individual plaintiffs seek all native CAL FIRE Lidar, photographs, and video with respect to the (a) Tubbs Fire, (b) Atlas Fire, (c) Point Fire, (d) Highway 37 Fire, (e) Cascade Fire, (f) Cherokee Fire, (g) LaPorte Fire, (h) Lobo Fire, (i) McCourtney Fire, and (j) Camp Fire.

12. Counsel for the SLF Fire Victim Claimants also filed a notice indicating that they intend to serve a subpoena on CAL FIRE on August 9, 2019, seeking the complete unredacted Tubbs Investigation Report, Case Number 17CALNU010045, including all unredacted attachments. Dkt. No. 3218.

13. Last week, a CAL FIRE station in Butte County was served with an extremely broad subpoena seeking numerous categories of documents and information relating to the 2018 Camp Fire, including documents and numerous forms of media from all first responders in the first two days of the Camp Fire, all communications with PG&E personnel, and a series of documents relating to the investigation of the cause of the Camp Fire. Dkt. No. 3341.

14. CAL FIRE reserves all rights to object to such discovery. CAL FIRE requests the assistance of this Court to minimize duplicative, unnecessarily expensive, and burdensome

discovery aimed at CAL FIRE in this bankruptcy proceeding. As a suggestion, CAL FIRE believes it would be appropriate for the Court to initially limit deposition discovery of any CAL FIRE employees to one person per Wildfire to be identified by CAL FIRE and that any such depositions be limited to one day of seven hours per Wildfire. This is consistent with Federal Rule of Civil Procedure 30(b)(6) and (d)(1). If further depositions are necessary regarding a particular fire, a showing of specific need can be made by the requesting party and considered by the Court. With respect to written discovery, because CAL FIRE is in the position of a third party and these proceedings must move quickly, any written discovery should be narrowly tailored and focused on the key information required from CAL FIRE. Moreover, CAL FIRE must be allowed to redact protected personal information (e.g., social security numbers, home addresses), and such written discovery must provide for sufficient time for CAL FIRE to identify and assemble responsive documents. Further, the Court likely will need to address issues that limit discovery in light of the ongoing criminal investigations related to the Camp Fire.

**RESERVATION OF RIGHTS**

15. Neither this objection nor any subsequent appearance, pleading, proof of claim, claim or suit is intended or shall be deemed or construed as:

    a. a consent by the California State Agencies to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the California State Agencies;

    b. a waiver of any right of the California State Agencies to (i) have an Article III judge adjudicate in the first instance any case, proceeding, matter or controversy as to which a Bankruptcy Judge may not enter a final order or judgment consistent with Article III of the United States Constitution, (ii) have final orders in non-core matters entered only after de novo review by a District Court Judge, (iii) trial by jury in any proceeding so triable in the Chapter 11 Cases or in any case, controversy, or proceeding related to the Chapter 11 Cases, (iv) have the United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (v) any and all rights, claims, actions, defenses, setoffs, recoupments or remedies to which the California State Agencies are or may be entitled under

agreements, in law or in equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved hereby; or

    c. a waiver of any objections or defenses that the State of California, the California State Agencies or any other agency, unit or entity of the State of California may have to this Court's jurisdiction over the State of California, the California State Agencies or such other agency, unit or entity based upon the Eleventh Amendment to the United States Constitution or related principles of sovereign immunity or otherwise, all of which objections and defenses are hereby reserved.

## CONCLUSION

The California State Agencies reserve their rights to: (a) have the Court determine whether their claims, and the Wildfire-related claims of other state agencies, are unliquidated or contingent, if there is a dispute over the issue; (b) brief the issues raised in Phase 1 (inverse condemnation determination) and Phase 2 (Tubbs Fire liability); (c) participate in further Court proceedings regarding the proper and fair procedures for Phase 3; (d) request consideration of the appointment of an examiner or court expert under Federal Rule of Evidence 706 to aid the Phase 3 estimation process; and (e) object to any cap placed on unsecured Wildfire-related claims for distribution purposes if the cap does not pay all valid claims in full.

If the Debtors intend the proposed estimation to be used to cap the ultimate distribution to Wildfire Claims under a chapter 11 plan, many issues arise, including but not limited to absolute priority rule issues. The California State Agencies reserve the right to object, argue and comment further once the Debtors answer the Court's questions and/or in connection with confirmation of

///
///
///
///
///
///
///

any chapter 11 plan.

In addition, CAL FIRE requests that the Court coordinate discovery aimed at CAL FIRE to minimize duplication, unnecessary expense and burden on CAL FIRE.

Dated: August 7, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARGARITA PADILLA
Supervising Deputy Attorney General

By: */s/ Paul J. Pascuzzi*
STEVEN H. FELDERSTEIN
PAUL J. PASCUZZI
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
Attorneys for California Department of Forestry and Fire Protection, California Department of Toxic Substances Control, California Governor's Office of Emergency Services, California Department of Veterans Affairs, California State University, and California Department of Parks and Recreation

# PROOF OF SERVICE

I, Lori N. Lasley, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 500 Capitol Mall, Suite 2250, Sacramento, CA 95814. On August 7, 2019, I served the within documents:

**RESPONSE OF THE CALIFORNIA STATE AGENCIES TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c) FOR THE ESTABLISHMENT OF WILDFIRE CLAIMS ESTIMATION PROCEDURES [DOCKET NO. 3091]**

By Electronic Service only via CM/ECF.

*/s/ Lori N. Lasley*
Lori N. Lasley