Rebecca Weissman (No. 322402)
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, California 94104
Telephone: 415.262.4500
Facsimile: 415.262.4555
rebecca.weissman@dechert.com

Allan S. Brilliant (*pro hac vice*)
Shmuel Vasser (*pro hac vice*)
Alaina R. Heine (*pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: 212.698.3500
Facsimile: 415.698.3599
allan.brilliant@dechert.com
shmuel.vasser@dechert.com
alaina.heine@dechert.com

*Attorneys for State Farm Mutual Automobile Insurance Company and its affiliates and subsidiaries*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION and PACIFIC GAS & ELECTRIC COMPANY,<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>x Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Case No. 19-30088 (DM)<br>Chapter 11<br>Jointly Administered<br><br>**OBJECTION AND JOINDER TO THE AD HOC GROUP OF SUBROGATION CLAIM HOLDERS' OBJECTION TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c) FOR THE ESTABLISHMENT OF WILDFIRE CLAIMS ESTIMATION PROCEDURES**<br><br>**Hearing Date and Time**: August 14, 2019 at 9:30 a.m. (PT)<br>**Hearing Location**: 450 Golden Gate Ave., San Francisco, CA, Courtroom 17<br>**Judge**: Hon. Dennis Montali<br>**Related Docket Nos**: 3091, 3419 |

State Farm Mutual Automobile Insurance Company and its affiliates and subsidiaries (collectively, "State Farm"), as creditors and parties in interest in the above-captioned chapter 11 cases of Pacific Gas and Electric Company (the "Utility") and PG&E Corporation ("PG&E" and, together with the Utility, the "Debtors"), by and through its undersigned counsel, hereby file this objection (the "Objection") to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 502(c) for the Establishment of Wildfire Claims Estimation Procedures* [ECF No. 3091] (the "Estimation Motion"),[1] and joinder (the "Joinder") to the *Ad Hoc Group of Subrogation Claim Holders' Objection to Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 502(c) for the Establishment of Wildfire Claims Estimation Procedures* (the "Subrogation Group Objection") [ECF No. 3419]. In support of the Objection and Joinder, State Farm respectfully sets forth and represents as follows:

**OBJECTION AND JOINDER**

State Farm is one of the largest property and casualty insurers in the State of California. State Farm is believed to be the insurer holding the most insurance subrogation claims against the Debtors. State Farm is a member of the Ad Hoc Group of Subrogation Claim Holders (the "Subrogation Group"). State Farm's claims are in the billions of dollars.[2]

**Background**

On July 3, 2019, the Subrogation Group filed the *Motion of the Ad Hoc Group of Subrogation Claim Holders for Relief from the Automatic Stay* (the "Subrogation Group Lift Stay Motion") [ECF No. 2863]. On July 15, 2019, State Farm filed the *Joinder to the Motion of the Ad Hoc Group of Subrogation Claim Holders for Relief from the Automatic Stay* (the "State Farm

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed to it in Estimation Motion.

[2] *Third Amended Verified Statement of the Ad Hoc Group of Subrogation Claim Holders Pursuant to Bankruptcy Rule 2019* [ECF No. 3020].

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25936711

Lift Stay Joinder") [ECF No. 2983].

On July 18, 2019 the Debtors filed the Estimation Motion. The Estimation Motion requests that the Court consider issues related to the 2015, 2017, and 2018 Northern California Wildfires, including the Tubbs Fire (collectively, the "Wildfire Claims"), in three separate phases.

On July 24, 2019, this Court held a hearing and adjourned the Subrogation Group Lift Stay Motion, the State Farm Lift Stay Motion, and the Estimation Motion to be heard collectively on August 14, 2019.

**Objection**

State Farm files this Objection because the Estimation Motion will not advance these chapter 11 cases, but instead will waste this Court's and the parties' valuable time and resources. In the Estimation Motion, the Debtors seek to estimate the Wildfire Claims only for voting and plan feasibility, but fail to explain how an estimation process for these purposes would actually advance any of these goals. *See* Estimation Motion at 15.

*Voting Issues will not be Advanced*

While the Debtors argue that the estimation of Wildfire Claims is for voting purposes, the Estimation Motion provides no details as to the Debtors' approach on voting in these cases. *Id.* Under sections 502(a) and 502(b) of the Bankruptcy Code, claims filed under section 501 are deemed allowed unless objected to, and therefore would be entitled to vote to accept or reject any eventual plan of reorganization. 11 U.S.C. §§ 502(a), (b). Debtors in the past have used estimation for purposes of voting, *In re Trident Shipworks, Inc.*, 247 B.R. 513, 514-15 (Bankr. M.D. Fla. 2000), but the Debtors here have not indicated how the individually filed claims will be counted for voting purposes under section 1122 of the Bankruptcy Code, in light of the aggregate estimation of Wildfire Claims proposed by the Debtors. Accordingly, the Debtors have failed to establish that estimation for voting purposes will advance these cases in any material way.

*Feasibility Issues will not be Advanced*

The Estimation Motion also does not adequately address feasibility, and therefore, will not advance these chapter 11 cases. Feasibility is a critical element of the confirmation of any plan under the Bankruptcy Code by requiring a plan proponent to demonstrate to the court that the debtor will be able to pay its creditors in accordance with the plan of reorganization without risk of a subsequent liquidation or further financial reorganization. *See Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) ("'The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.'") (quoting 5 COLLIER ON BANKRUPTCY ¶ 1129.02[11] at 1129–34 (15th ed. 1984)); 11 U.S.C. § 1129(a)(11) ("Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.").

Accordingly, when a bankruptcy court estimates unliquidated claims for feasibility purposes, it is establishing a value that the debtor is expected to pay as part of its plan of reorganization. *See Matter of Pizza of Hawaii*, 761 F.2d at 1382 (remanding the case to the bankruptcy court to estimate a claim that, at minimum would constitute a fourth of the debtor's cash disbursements under the plan, and indicating that without an estimation, the plan was not feasible); *In re North American Health Care, Inc.*, 544 B.R. 684, 689-90 (Bankr. C.D. Cal. 2016) (finding that the court could estimate claims in the aggregate for plan confirmation purposes "so that [the debtors] can craft a plan of reorganization calculated to satisfy the all-important plan feasibility requirement").

But for the estimation proceedings to truly address feasibility, the estimation of the Wildfire Claims must set a value, or a cap on these claims, so that the Debtors can prove that they

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

meet these obligations as part of the feasibility analysis. *See, e.g.*, *In re Roman Catholic Archbishop of Portland in Or.*, 339 B.R. 215, 219-221 (Bankr. D. Or. 2006) (finding that an estimation that would create a limited fund to pay the tort claims could significantly affect distribution). In the Estimation Motion, however, the Debtors assert that the estimation is not being proposed for distribution purposes, s*ee* Estimation Motion at 15, and remain vague as to their intentions in the objection to the Ad Hoc Group of Subrogation Claim Holders' motion to terminate exclusivity by expressing their plan to satisfy "all wildfire claims in amounts agreed upon or as otherwise *authorized or allowed* by this Court." *See* Debtors' Objection to Motion of Ad Hoc Group of Subrogation Claim Holders to Terminate Exclusive Periods pursuant to Section 112(d) of the Bankruptcy Code [ECF No. 3388 at p. 9] (emphasis added). The absence of reference to the estimated amount of wildfire claims is conspicuous. Thus, proceeding with estimation in this fashion will be an irrelevant, burdensome and unnecessary exercise, which will only serve to waste this Court's valuable resources.

**Joinder**

In addition to its individual objection, State Farm joins the Subrogation Group Objection and agrees that (i) the Debtors' Estimation Motion is fundamentally at odds with the purposes and goals of the estimation process; (ii) the procedures proposed in the Estimation Motion would compel this Court to improperly estimate claims under Section 502(c) before claims are required to be filed, thereby creating an unnecessary appellate risk; (iii) this Court must apply inverse condemnation as it has been established by the California Court of Appeals because the Debtors have not provided any "convincing" evidence that the California Supreme Court would reverse the California Appellate Court decisions; (iv) determining the constitutionality of California's inverse condemnation law would exceed the bankruptcy court's role in an estimation proceeding; (v) this Court should not use the estimation process to determine that certain complex and multi-

billion dollar claims, which caused the Debtors to enter bankruptcy, have no value; (vi) it would be inefficient to estimate the Tubbs claims and then separately estimate the other wildfire claims months later; (vii) this Court should allow a bellwether Tubbs trial to proceed in parallel to an estimation proceeding, which would provide a crucial data point for determining the value of Tubbs claims in any estimation or settlement process; and (viii) this Court should order the Debtors, the Official Committee of Tort Claimants, and the Subrogation Group to meet and confer to create a single estimation process, which would be more efficient and less cumbersome than the Debtors' current estimation procedures without implicating any constitutional concerns.

For the reasons stated herein, State Farm objects to the Debtors' Estimation Motion as well as joins in the Subrogation Group Objection.

**RESERVATION OF RIGHTS**

State Farm reserves the right to raise further and other objections to the Debtors' Estimation Motion at the hearing as may be necessary or appropriate.

DATED: August 7, 2019

    */s/ Shmuel Vasser*
Allan S. Brilliant (*pro hac vice*)
Shmuel Vasser (*pro hac vice*)
Alaina R. Heine (*pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036

-and-

Rebecca Weissman (No. 322402)
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, California 94104

*Attorneys for State Farm Mutual Automobile Insurance Company and its affiliates and subsidiaries*

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6
OBJECTION AND JOINDER

19-30088 (DM)

Case: 19-30088    Doc# 3426    Filed: 08/07/19    Entered: 08/07/19 15:07:44    Page 6 of 6