| 1 | Bruce S. Bennett (SBN 105430)
| 2 | Joshua M. Mester (SBN 194783)
| | James O. Johnston (SBN 167330)
| 3 | JONES DAY
| | 555 South Flower Street
| | Fiftieth Floor
| 4 | Los Angeles, CA 90071.2300
| | Telephone: (213) 489-3939
| 5 | Facsimile: (213) 243-2539
| | E-mail: bbennett@jonesday.com
| 6 | jmester@jonesday.com
| | jjohnston@jonesday.com
| 7 |
| | *Attorneys for PG&E Shareholders*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br>PG&E CORPORATION<br>    - and -<br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                     Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**STATEMENT OF CERTAIN PG&E SHAREHOLDERS IN SUPPORT OF DEBTORS' MOTION FOR THE ESTABLISHMENT OF WILDFIRE CLAIMS ESTIMATION PROCEDURES**<br><br>Date: August 14, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       450 Golden Gate Avenue<br>       San Francisco, CA 94102<br><br>Re: Docket No. 3091 |

Certain owners of common stock of PG&E Corporation (the "PG&E Shareholders")[1] hereby file this statement of support for the *Debtors' Motion Pursuant To 11 U.S.C. §§ 105(a) And 502(c) For The Establishment Of Wildfire Claims Estimation Procedures* [ECF 3091] (the "Motion").

**STATEMENT OF SUPPORT**

Out of all the discord and divergent views in this case, one clear consensus emerges: the unliquidated wildfire claims against PG&E – especially those relating to the Tubbs fire – must be quantified as rapidly and comprehensively as possible.

PG&E says that "[t]he fundamental issue that needs to be resolved in order for the Debtors to emerge from Chapter 11 is the value of the tens of thousands of unadjudicated, unliquidated Wildfire Claims to be addressed in a Chapter 11 plan." Motion at 1. The Tort Claimants Committee (the "TCC") agrees that "the parties cannot adequately capitalize a Trust, negotiate a consensual plan, or litigate a contested plan confirmation without resolving PG&E's liability for the Tubbs Fire Claims." [ECF 2855 at 7] ("TCC Motion"). The Ad Hoc Committee of Subrogation Claim Holders (the "Subrogation Group") asserts that a determination of liability for the Tubbs fire "is a gating issue for any consensual resolution of the wildfire claims against PG&E" and, hence, a necessary predicate for "mov[ing] these bankruptcy cases toward a confirmable plan of reorganization expeditiously and efficiently." [ECF 2863-1 at 1] ("Subrogation Motion").

From that point of consensus, however, the parties have suggested two diametrically opposite paths. By the Motion, PG&E proposes a comprehensive three-stage process for estimating *all* of its wildfire liabilities in a timely manner, thereby enabling stakeholders to

---

[1] The PG&E Shareholders are the entities identified on Exhibit A to the *Second Amended Verified Statement Of Jones Day Pursuant To Federal Rule Of Bankruptcy Procedure 2019* [ECF 3158], excluding Abrams Capital Management, LP, on behalf of certain funds and accounts, and Knighthead Capital Management, LLC, on behalf of certain funds and accounts. The PG&E Shareholders are acting in their individual capacities but authorized the filing of this single submission for the purpose of administrative efficiency. Each of the PG&E Shareholders is expressing its independent views, and counsel does not have the actual or apparent authority to obligate any one entity to act in concert with any other entity with respect to PG&E equity securities. The PG&E Shareholders have not agreed to act in concert with respect to their respective interests in PG&E equity securities.

negotiate a plan and resolve these cases by the critical June 30, 2020 deadline. By their companion motions for relief from stay, in contrast, the TCC and Subrogation Group propose to litigate in state court a handful of the thousands of claims arising from the Tubbs fire, leaving the balance of Tubbs claims and all claims relating to other fires to be addressed at some unspecified future date.

The Court has recognized that the issues presented by these pending requests are "inexorably linked." [ECF 3121 at 2]. Simply put, the parties cannot proceed down both suggested paths simultaneously. For wildfire claims, there must be centralized estimation or piecemeal litigation; there cannot be both. The Motion conclusively demonstrates that estimation, not litigation, is the legal and practical answer on the facts now before the Court. The PG&E Shareholders therefore strongly support the Motion and ask the Court to grant the relief requested.

First and foremost, Congress has spoken on this precise issue. Section 502(c) of the Bankruptcy Code commands that the Court "shall" estimate any and all unliquidated claims, "the fixing or liquidation of which . . . would unduly delay the administration of the case." 11 U.S.C. § 502(c); *see, e.g.*, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir. 1986) (estimation "is a mandatory obligation of the bankruptcy court" when claims liquidation would unduly delay the case). No one seriously suggests that PG&E could litigate all of the tens of thousands of wildfire claims without unduly delaying administration of these cases. Such litigation literally would take years to conclude, during which time PG&E's creditors would remain unpaid and PG&E's ability to participate in the newly created wildfire insurance fund would vanish. Motion at 3-4 ("Litigating claims individually would take years, impede the successful reorganization of the Debtors, delay distributions to wildfire victims and all other creditors and preclude PG&E from participating in the wildfire fund."). The Court therefore has an "affirmative duty" to proceed with estimation. 4 COLLIER ON BANKRUPTCY ¶ 502.04[2] (16th ed. 2019) ("The language of section 502(c) is mandatory and places upon the court an affirmative duty to estimate unliquidated claims when appropriate.").

| | |
|---|---|
|1| Second, and independently, estimation clearly is the most practical and logical way to |
|2| proceed.  Piecemeal litigation in state court would put the brakes on all forward progress in these |
|3| cases as stakeholders await trials of indeterminate length to be conducted by one or more state |
|4| courts with no concern for this reorganization or PG&E's prospects for rehabilitation.  Litigation |
|5| of individual wildfire claims almost certainly would prevent PG&E from resolving these cases by |
|6| the middle of next year, creating immense risk and potentially destroying value. |
|7| Moreover, the California Legislature has required that, if not settled, all of PG&E's |
|8| wildfire liabilities be estimated or allowed *by this Court* by June 30, 2020, as a condition to |
|9| accessing the statewide wildfire insurance fund.  CAL. GOV'T CODE § 3292(b)(1)(B) (as a |
|10| condition to accessing the fund, by not later than June 30, 2020, "[t]he bankruptcy court or a court |
|11| of competent jurisdiction, in the insolvency proceeding, has determined that the resolution of the |
|12| insolvency proceeding provides funding or establishes reserves for, provides for assumption of, or |
|13| otherwise provides for satisfying any prepetition wildfire claims asserted against the electrical |
|14| corporation in the insolvency proceeding in the amounts agreed upon in any pre-insolvency |
|15| proceeding settlement agreements or any post-insolvency settlement agreements, *authorized by* |
|16| *the court through an estimation process or otherwise allowed by the court*") (emphasis added). |
|17| By definition, piecemeal litigation of Tubbs claims in state court would preclude PG&E from |
|18| meeting that condition. |
|19| The TCC's contrary assertion that, if relief from stay is granted, no litigation will take |
|20| place and PG&E will "settle[] all fire claims before trial," TCC Motion at 21, is at once cynical, |
|21| speculative, and illogical.  PG&E's alleged "history" of settling fire cases involves litigation over |
|22| a single fire (Butte) with different facts, different claimants, and different claims.  [ECF 2845 |
|23| ¶ 12].  Most notably, unlike the Butte fire, the Tubbs fire was determined by the official state |
|24| investigators at the California Department of Forestry and Fire Protection (also known as "Cal |
|25| Fire") not to have been caused by PG&E.  Motion at 6.  There is every reason to expect that |
|26| PG&E will contest Tubbs fire claims vigorously, as it has a fiduciary duty to defend against |
|27| claims for which it has no liability.  We cannot imagine how any party in interest or the CPUC or |
|28| |

- 2 -

the State of California could see this differently. It is in no one's interest for PG&E to pay any claims arising from fires started by the conduct of others.

In addition, the TCC similarly cannot explain how a pending trial relating to one fire (Tubbs) somehow would cause PG&E to settle all of the claims it now faces relating to two dozen different fires that occurred at different times over several years across hundreds of miles of PG&E's service territory. At a minimum, the TCC's flimsy speculation of settlement is no basis for taking these cases out of the control of the Court and placing them in the hands of one or more state trial courts.

In any event, estimation will accomplish exactly what the TCC and the Subrogation Group say they want to accomplish – judicial resolution of the threshold "gating" issue of PG&E's liability in respect of the Tubbs fire. *See* TCC Motion at 19 ("The Tubbs Fire is a gating issue in this case. . . . A determination of liability would, 'in one fell swoop,' either dispose of claims or have a favorable impact on settlement prospects."); Subrogation Motion at 1 (The goal of moving toward confirmation "can best be achieved by answering the question that most separates the key parties negotiating a plan: Is PG&E liable for the devastating 2017 Tubbs Fire?"). PG&E specifically proposes – as the second phase of a three-phase estimation protocol – that the Court "estimate the likelihood of success of Wildfire Claims arising out of the Tubbs Fire." Motion, Ex. A ¶ 4. The determination of that critical issue is and should remain the prerogative of the Court.

## CONCLUSION

In its forthcoming brief addressing the Court's questions regarding estimation and responding to whatever objections will be filed in respect of the Motion, PG&E will establish that the Court (possibly with the assistance of the District Court) has the jurisdiction, authority, and responsibility to estimate all of the unliquidated wildfire claims asserted in these cases, including personal injury claims, for purposes of confirmation, feasibility, and the creation of a capped trust from which distributions may be made to wildfire victims as and when their claims are settled or liquidated. The PG&E Shareholders join PG&E's arguments in this regard and, in the interests of judicial economy, do not repeat them here. The PG&E Shareholders urge the Court to grant the

Motion in order to break the logjam in these cases and maximize the prospects of a successful reorganization before June 30, 2020.

Dated: August 7, 2019

JONES DAY

By: /s/ James O. Johnston
James O. Johnston

*Attorneys for PG&E Shareholders*