<u>**Appendix C**</u>

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C., 20549
FORM 10-Q

(Mark One)

[X] QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the quarterly period ended March 31, 2019

OR

[ ] TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

| Commission File Number | Exact Name of Registrant as Specified in its Charter | State or Other Jurisdiction of Incorporation | IRS Employer Identification Number |
|---|---|---|---|
| 1-12609 | PG&E Corporation | California | 94-3234914 |
| 1-2348 | Pacific Gas and Electric Company | California | 94-0742640 |

| | |
|---|---|
| PG&E Corporation<br>77 Beale Street<br>P.O. Box 770000<br>San Francisco, California 94177 | Pacific Gas and Electric Company<br>77 Beale Street<br>P.O. Box 770000<br>San Francisco, California 94177 |

Address of principal executive offices, including zip code

| | |
|---|---|
| PG&E Corporation<br>(415) 973-1000 | Pacific Gas and Electric Company<br>(415) 973-7000 |

Registrant's telephone number, including area code

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

PG&E Corporation: [X] Yes [ ] No
Pacific Gas and Electric Company: [X] Yes [ ] No

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files).

PG&E Corporation: [X] Yes [ ] No
Pacific Gas and Electric Company: [X] Yes [ ] No

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

PG&E Corporation:
[X] Large accelerated filer     [ ] Accelerated filer
[ ] Non-accelerated filer
[ ] Smaller reporting company     [ ] Emerging growth company

Pacific Gas and Electric Company:
[ ] Large accelerated filer     [ ] Accelerated filer
[X] Non-accelerated filer
[ ] Smaller reporting company     [ ] Emerging growth company

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act.

PG&E Corporation: [ ]
Pacific Gas and Electric Company: [ ]

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

PG&E Corporation: [ ] Yes [X] No
Pacific Gas and Electric Company: [ ] Yes [X] No

Case: 19-30088    Doc# 3431-3    Filed: 08/07/19    Entered: 08/07/19 15:14:42    Page 1 of 138

The Utility has submitted 23 electric incident reports to the CPUC associated with the 2017 Northern California wildfires where Cal Fire or the Utility has identified a site as potentially involving the Utility's facilities in its investigation and the property damage associated with each incident exceeded $ 50,000 . The information contained in these reports is factual and preliminary and does not reflect a determination of the causes of the fires.

**Third-Party Claims, Investigations and Other Proceedings Related to the 2018 Camp Fire and 2017 Northern California Wildfires**

If the Utility's facilities, such as its electric distribution and transmission lines, are determined to be the substantial cause of one or more fires, and the doctrine of inverse condemnation applies, the Utility could be liable for property damage, business interruption, interest and attorneys' fees without having been found negligent. California courts have imposed liability under the doctrine of inverse condemnation in legal actions brought by property holders against utilities on the grounds that losses borne by the person whose property was damaged through a public use undertaking should be spread across the community that benefited from such undertaking, and based on the assumption that utilities have the ability to recover these costs from their customers. Further, California courts have determined that the doctrine of inverse condemnation is applicable regardless of whether the CPUC ultimately allows recovery by the utility for any such costs. The CPUC may decide not to authorize cost recovery even if a court decision were to determine that the Utility is liable as a result of the application of the doctrine of inverse condemnation. (See "Loss Recoveries-Regulatory Recovery" below for further information regarding potential cost recovery related to the wildfires, including in connection with SB 901.)

In addition to claims for property damage, business interruption, interest and attorneys' fees, the Utility could be liable for fire suppression costs, evacuation costs, medical expenses, personal injury damages, punitive damages and other damages under other theories of liability, including if the Utility were found to have been negligent.

Further, the Utility could be subject to material fines, penalties, or restitution orders if the CPUC or any law enforcement agency were to bring an enforcement action, including a criminal proceeding, and it were determined that the Utility had failed to comply with applicable laws and regulations.

As of January 28, 2019, PG&E Corporation and the Utility are aware of approximately 100 complaints on behalf of at least 4,200 plaintiffs related to the 2018 Camp fire, nine of which seek to be certified as class actions. The pending civil litigation against PG&E Corporation and the Utility related to the 2018 Camp fire, which is currently stayed as a result of the commencement of the Chapter 11 Cases, includes claims under multiple theories of liability, including inverse condemnation, trespass, private nuisance, public nuisance, negligence, negligence per se, negligent interference with prospective economic advantage, negligent infliction of emotional distress, premises liability, violations of the Public Utilities Code, violations of the Health & Safety Code, malice and false advertising in violation of the California Business and Professions Code. The plaintiffs principally assert that PG&E Corporation's and the Utility's alleged failure to maintain and repair their distribution and transmission lines and failure to properly maintain the vegetation surrounding such lines were the causes of the 2018 Camp fire. The plaintiffs seek damages and remedies that include wrongful death, personal injury, property damage, evacuation costs, medical expenses, establishment of a class action medical monitoring fund, punitive damages, attorneys' fees and other damages. PG&E Corporation's and the Utility's obligations with respect to such claims are expected to be determined through the Chapter 11 process.

As of January 28, 2019, PG&E Corporation and the Utility are aware of approximately 750 complaints on behalf of at least 3,800 plaintiffs related to the 2017 Northern California wildfires, five of which seek to be certified as class actions. These cases have been coordinated in the San Francisco County Superior Court. As of the Petition Date, the coordinated litigation was in the early stages of discovery. A trial with respect to the Atlas fire was scheduled to begin on September 23, 2019. The pending civil litigation against PG&E Corporation and the Utility related to the 2017 Northern California wildfires, includes claims under multiple theories of liability, including inverse condemnation, trespass, private nuisance and negligence. This litigation, including the trial date with respect to the Atlas fire, currently is stayed as a result of the commencement of the Chapter 11 Cases. The plaintiffs principally assert that PG&E Corporation's and the Utility's alleged failure to maintain and repair their distribution and transmission lines and failure to properly maintain the vegetation surrounding such lines were the causes of the 2017 Northern California wildfires. The plaintiffs seek damages that include wrongful death, personal injury, property damage, evacuation costs, medical expenses, punitive damages, attorneys' fees and other damages. PG&E Corporation's and the Utility's obligations with respect to such claims are expected to be determined through the Chapter 11 process.

Insurance carriers who have made payments to their insureds for property damage arising out of the 2017 Northern California wildfires have filed 52 subrogation complaints in the San Francisco County Superior Court and the Sonoma County Superior Court as of January 28, 2019. These complaints allege, among other things, negligence, inverse condemnation, trespass and nuisance. The allegations are similar to the ones made by individual plaintiffs. As of January 28, 2019, insurance carriers have filed 39 similar subrogation complaints with respect to the 2018 Camp fire in the Sacramento County Superior Court and the Butte County Superior Court. PG&E Corporation's and the Utility's obligations with respect to such claims are expected to be determined through the Chapter 11 process.

Various government entities, including Yuba, Nevada, Lake, Mendocino, Napa and Sonoma Counties and the Cities of Santa Rosa and Clearlake, also have asserted claims against PG&E Corporation and the Utility based on the damages that these government entities allegedly suffered as a result of the 2017 Northern California wildfires. Such alleged damages include, among other things, loss of natural resources, loss of public parks, property damages and fire suppression costs. The causes of action and allegations are similar to the ones made by individual plaintiffs and the insurance carriers. With respect to the 2018 Camp fire, Butte County has filed similar claims against PG&E Corporation and the Utility, and PG&E Corporation and the Utility expect additional similar claims to be made by other government entities. PG&E Corporation's and the Utility's obligations with respect to such claims are expected to be determined through the Chapter 11 process.

On March 16, 2018, PG&E Corporation and the Utility filed a demurrer to the inverse condemnation cause of action in the 2017 Northern California wildfires litigation. On May 21, 2018, the court overruled the motion. On July 20, 2018, PG&E Corporation and the Utility filed a writ in the Court of Appeal requesting appellate review of the trial court's decision, which was denied on September 17, 2018. On September 27, 2018, PG&E Corporation and the Utility filed a petition for review to the California Supreme Court. On November 14, 2018, the California Supreme Court denied PG&E Corporation's and the Utility's petition for review.

PG&E Corporation and the Utility expect to be the subject of numerous additional claims in connection with the 2018 Camp fire and 2017 Northern California wildfires. PG&E Corporation's and the Utility's obligations with respect to such claims are expected to be determined through the Chapter 11 process.

PG&E Corporation and the Utility are continuing to review the evidence concerning the 2018 Camp fire and 2017 Northern California wildfires. PG&E Corporation and the Utility have not yet had access to all of the evidence collected by Cal Fire as part of its investigations or to many of the investigation reports prepared by Cal Fire. PG&E Corporation and the Utility and plaintiffs are in discussions with Cal Fire about access to the evidence and the remaining reports. No schedule on gaining access has been set. (See "District Attorneys' Offices' Investigations" below for information regarding certain investigations related to the 2018 Camp fire and 2017 Northern California wildfires.)

Regardless of any determinations of cause by Cal Fire with respect to any pre-petition fire, ultimately PG&E Corporation's and the Utility's liability will be resolved through the Chapter 11 process, regulatory proceedings and any potential enforcement proceedings, all of which could take a number of years to resolve. The timing and outcome of these and other potential proceedings are uncertain.

PG&E Corporation and the Utility, as part of their efforts to emerge from bankruptcy, are engaged in discussions with holders of claims related to the 2017 Northern California wildfires and the 2018 Camp Fire in an attempt to reach a global settlement of such claims. PG&E Corporation and the Utility cannot predict the outcome or timing of such discussions. Even if discussions with claimholders were successful, the consummation of such an agreement would likely be contingent on numerous uncertain conditions, including Bankruptcy Court approval and governmental action.

**Potential Losses in Connection with the 2018 Camp Fire and 2017 Northern California Wildfires**

On January 28, 2019, the California Department of Insurance issued a news release announcing an update on property losses in connection with the 2018 wildfires in Southern California (which are not in the Utility's service territory) and the 2018 Camp fire, stating that, as of such date, "more than $ 11.4 billion in insured losses have been reported from the November 2018 fires," of which approximately $ 8.4 billion relates to statewide claims from the 2018 Camp fire. On September 6, 2018, the California Department of Insurance issued a news release announcing that insurers have received nearly 55,000 insurance claims totaling more than $ 12.28 billion in losses, of which approximately $ 10 billion relates to statewide claims from the 2017 Northern California wildfires.

**Proposed Wildfire Assistance Fund**

On May 1, 2019, PG&E Corporation and the Utility filed a motion with the Bankruptcy Court seeking authorization to establish and fund a program (the "Wildfire Assistance Fund") to assist those displaced by the 2018 Camp fire and 2017 Northern California wildfires with the costs of temporary housing and other urgent needs. The Wildfire Assistance Fund is intended to aid certain wildfire claimants who are either uninsured or still in need of assistance for temporary housing expenses or other urgent needs. The Wildfire Assistance Fund would consist of $105 million deposited into a segregated account to be controlled by an independent third-party administrator, who will disburse and administer the funds. The administrator would be responsible for developing the specific eligibility requirements and application procedures for the distribution of the Wildfire Assistance Fund to eligible claimants. Up to $5 million of the Wildfire Assistance Fund could be used to pay administrative expenses. The filing of this motion is not an acknowledgement or admission by PG&E Corporation or the Utility of liability with respect of the 2018 Camp fire and 2017 Northern California wildfires. The motion is scheduled to be heard in the Bankruptcy Court on May 22, 2019. At March 31, 2019, the Utility's Condensed Consolidated Balance Sheet reflected liabilities of $14 billion related to third-party claims in connection with the 2018 Camp fire and 17 of the 2017 Northern California wildfires, which included amounts for temporary housing expenses.

**2015 Butte Fire**

In September 2015, a wildfire (the "2015 Butte fire") ignited and spread in Amador and Calaveras Counties in Northern California. On April 28, 2016, Cal Fire released its report of the investigation of the origin and cause of the 2015 Butte fire. According to Cal Fire's report, the 2015 Butte fire burned 70,868 acres, resulted in two fatalities, destroyed 549 homes, 368 outbuildings and four commercial properties, and damaged 44 structures. Cal Fire's report concluded that the 2015 Butte fire was caused when a gray pine tree contacted the Utility's electric line, which ignited portions of the tree and determined that the failure by the Utility and/or its vegetation management contractors, ACRT Inc. and Trees, Inc., to identify certain potential hazards during its vegetation management program ultimately led to the failure of the tree.

*Third-Party Claims*

On May 23, 2016, individual plaintiffs filed a master complaint against the Utility and its two vegetation management contractors in the Superior Court of California, County of Sacramento. Subrogation insurers also filed a separate master complaint on the same date. The California Judicial Council previously had authorized the coordination of all cases in Sacramento County. As of January 28, 2019, 95 known complaints have been filed against the Utility and its two vegetation management contractors in the Superior Court of California in the Counties of Calaveras, San Francisco, Sacramento, and Amador. The complaints involve approximately 3,900 individual plaintiffs representing approximately 2,000 households and their insurance companies. These complaints are part of, or were in the process of being added to, the coordinated proceeding. Plaintiffs seek to recover damages and other costs, principally based on the doctrine of inverse condemnation and negligence theory of liability. Plaintiffs also seek punitive damages. Several plaintiffs dismissed the Utility's two vegetation management contractors from their complaints. The Utility does not expect the number of claimants to increase significantly in the future, because the statute of limitations for property damage and personal injury in connection with the 2015 Butte fire has expired. Further, due to the commencement of the Chapter 11 Cases, these plaintiffs have been stayed from continuing to prosecute pending litigation and from commencing new lawsuits against PG&E Corporation or the Utility on account of pre-petition obligations. On January 30, 2019, the Court in the coordinated proceeding issued an order staying the action.

On April 28, 2017, the Utility moved for summary adjudication on plaintiffs' claims for punitive damages. The court denied the Utility's motion and the Utility filed a writ with the Court of Appeal of the State of California, Third Appellate District. The writ was granted on July 2, 2018, directing the trial court to enter summary adjudication in favor of the Utility and to deny plaintiffs' claim for punitive damages under California Civil Code Section 3294. Plaintiffs sought rehearing and asked the California Supreme Court to review the Court of Appeal's decision. Both requests were denied. Neither the trial nor appellate courts originally addressed whether plaintiffs can seek punitive damages at trial under Public Utilities Code Section 2106. However, the trial court, in November 2018, denied a motion filed by the Utility that would have confirmed that punitive damages under Public Utilities Code Section 2106 are unavailable. The Utility believes a loss related to punitive damages is unlikely, but possible.

Case: 19-30088   Doc# 2843-3   Filed: 07/02/19   Entered: 07/02/19 15:51:42   Page 56 of 138

Case: 19-30088   Doc# 2434-3   Filed: 07/02/19   Entered: 07/02/19 13:16:28   Page 56 of 138

On June 22, 2017, the Superior Court of California, County of Sacramento ruled on a motion of several plaintiffs and found that the doctrine of inverse condemnation applies to the Utility with respect to the 2015 Butte fire. The court held, among other things, that the Utility had failed to put forth any evidence to support its contention that the CPUC would not allow the Utility to pass on its inverse condemnation liability through rate increases. While the ruling is binding only between the Utility and the plaintiffs in the coordination proceeding at the time of the ruling, others could make similar claims. On January 4, 2018, the Utility filed with the court a renewed motion for a legal determination of inverse condemnation liability, citing the November 30, 2017 CPUC decision denying the San Diego Gas & Electric Company application to recover wildfire costs in excess of insurance, and the CPUC declaration that it will not automatically allow utilities to spread inverse condemnation losses through rate increases.

On May 1, 2018, the Superior Court of California, County of Sacramento issued its ruling on the Utility's renewed motion in which the court affirmed, with minor changes, its tentative ruling dated April 25, 2018. The court determined that it is bound by earlier holdings of two appellate courts decisions, *Barham* and *Pacific Bell* . Further, the court stated that the Utility's constitutional arguments should be made to the appellate courts and suggested that, to the extent the Utility raises the public policy implications of the November 30, 2017 CPUC decision in the San Diego Gas & Electric Company cost recovery proceeding, these arguments should be addressed to the Legislature or CPUC. The Utility filed a writ with the Court of Appeal seeking immediate review of the court's decision. On June 18, 2018, after the writ was summarily denied, the Utility filed a Petition for Review with the California Supreme Court, which also was denied. On September 6, 2018, the court set a trial for some individual plaintiffs to begin on April 1, 2019. The Utility reached agreement with two plaintiffs in the litigation to stipulate to judgment against the Utility on inverse condemnation grounds. The court granted the Utility's stipulated judgment motion on November 29, 2018 and the Utility filed its appeal on December 11, 2018. As a result of the filing of the Chapter 11 Cases, these lawsuits, including the trial and the appeal from the stipulated judgment, are stayed.

In addition to the coordinated plaintiffs, Cal Fire, the OES, the County of Calaveras, and five smaller public entities ( three fire districts, one water district and the California Department of Veterans Affairs) have brought suit or indicated that they intend to do so. The five smaller public entities filed their complaints in August 2018 and September 2018. They have been added to the coordinated proceedings. The Utility has settled the claims of the three fire protection districts.

On April 13, 2017, Cal Fire filed a complaint with the Superior Court of California, County of Calaveras, seeking to recover over $ 87 million for its costs incurred on the theory that the Utility and its vegetation management contractors were negligent, or violated the law, among other claims. On July 31, 2017, Cal Fire dismissed its complaint against Trees, Inc., one of the Utility's vegetation contractors. Cal Fire had requested that a trial of its claims be set in 2019, following any trial of the claims of the individual plaintiffs. On October 19, 2018, the Utility filed a motion for summary judgment arguing that Cal Fire cannot recover any fire suppression costs under the Third District Court of Appeal's decision in *Dep't of Forestry & Fire Prot. v. Howell (2017)* 18 Cal. App. 5th 154. The hearing on that motion was set for January 31, 2019, but the hearing and Cal Fire's case against the Utility are now stayed. Prior to the stay, the Utility and Cal Fire were also engaged in a mediation process.

Also, on February 20, 2018, the County of Calaveras filed suit against the Utility and the Utility's vegetation management contractors to recover damages and other costs, based on the doctrine of inverse condemnation and negligence theory of liability. The County also sought punitive damages. On March 2, 2018, the County served a mediation demand seeking in excess of $ 167 million, having previously indicated that it intended to bring an approximately $ 85 million claim against the Utility. This claim included costs that the County of Calaveras allegedly incurred or expected to incur for infrastructure damage, erosion control, and other costs. The Utility and the County of Calaveras settled the County's claims in November 2018 for $ 25.4 million.

Further, in May 2017, the OES indicated that it intended to bring a claim against the Utility that it estimated to be approximately $ 190 million. This claim would include costs incurred by the OES for tree and debris removal, infrastructure damage, erosion control, and other claims related to the 2015 Butte fire. The Utility has not received any information or documentation from OES since its May 2017 statement. In June 2017, the Utility entered into an agreement with the OES that extends its deadline to file a claim to December 2020.

PG&E Corporation's and the Utility's obligations with respect to such outstanding claims are expected to be determined through the Chapter 11 process.

*Estimated Losses from Third-Party Claims*

In connection with the 2015 Butte fire, the Utility may be liable for property damages, business interruption, interest, and attorneys' fees without having been found negligent, through the doctrine of inverse condemnation.

In addition, the Utility may be liable for fire suppression costs, personal injury damages, and other damages if the Utility is found to have been negligent. While the Utility believes it was not negligent, there can be no assurance that a court would agree with the Utility.

The Utility's assessment of the estimated loss related to the 2015 Butte fire is based on assumptions about the number, size, and type of structures damaged or destroyed, the contents of such structures, the number and types of trees damaged or destroyed, as well as assumptions about personal injury damages, attorneys' fees, fire suppression costs, and certain other damages.

The Utility has determined that it is probable that it will incur a loss of $ 1.1 billion in connection with the 2015 Butte fire. While this amount includes the Utility's assumptions about fire suppression costs (including its assessment of the Cal Fire loss), it does not include any portion of the estimated claim from the OES. The Utility still does not have sufficient information to reasonably estimate any liability it may have for that additional claim.

The process for estimating costs associated with claims relating to the 2015 Butte fire requires management to exercise significant judgment based on a number of assumptions and subjective factors. As more information becomes known, management estimates and assumptions regarding the financial impact of the 2015 Butte fire may result in material increases to the loss accrued.

The following table presents changes in the third-party claims liability since December 31, 2015. The balance for the third-party claims liability is included in Wildfire-related claims in PG&E Corporation's and the Utility's Condensed Consolidated Balance Sheets:

| Loss Accrual (in millions) | |
|---|---:|
| Balance at December 31, 2015 | $ — |
| Accrued losses | 750 |
| Payments [1] | (60) |
| **Balance at December 31, 2016** | **690** |
| Accrued losses | 350 |
| Payments [1] | (479) |
| **Balance at December 31, 2017** | **561** |
| Accrued losses | — |
| Payments [1] | (335) |
| **Balance at December 31, 2018** | **226** |
| Accrued losses | — |
| Payments [1] | (14) |
| **Balance as of March 31, 2019** | **$ 212** |

[1] As of March 31, 2019, the Utility has paid $ 888 million of the $ 904 million in settlements to date in connection with the 2015 Butte fire.

If the Utility records losses in connection with claims relating to the 2015 Butte fire that materially exceed the amount the Utility accrued for these liabilities, PG&E Corporation's and the Utility's financial condition, results of operations, liquidity, and cash flows could be materially affected in the reporting periods during which additional charges are recorded.

*Loss Recoveries*

The Utility has liability insurance from various insurers, that provides coverage for third-party liability attributable to the 2015 Butte fire in an aggregate amount of $ 922 million. The Utility records insurance recoveries when it is deemed probable that a recovery will occur and the Utility can reasonably estimate the amount or its range. Through March 31, 2019, the Utility recorded $ 922 million for probable insurance recoveries in connection with losses related to the 2015 Butte fire. While the Utility plans to seek recovery of all insured losses, it is unable to predict the ultimate amount and timing of such insurance recoveries. In addition, the Utility has received $ 60 million in cumulative reimbursements from the insurance policies of its

Case: 19-30088    Doc# 3431-3    Filed: 08/07/19    Entered: 08/07/19 15:51:42    Page 58 of 138