WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251
*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                      Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(c) FOR ENTRY OF AN ORDER (I) APPROVING DEBTORS' INCENTIVE PROGRAM FOR CERTAIN KEY EMPLOYEES AND (II) GRANTING RELATED RELIEF**<br><br>Related Doc: Dkt. No. 2664<br><br>Date:    August 9, 2019<br>Time:   11:30 a.m. (Pacific Time)<br>Place:   United States Bankruptcy Court<br>           Courtroom 17, 16th Floor<br>           San Francisco, CA 94102 |

# MEMORANDUM OF POINTS AND AUTHORITIES

The Debtors[1] submit this Reply in further support of the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(c) for Entry of an Order (I) Approving Debtors' Incentive Program for Certain Key Employees and (II) Granting Related Relief* [Dkt. No. 2664] (the "**Motion**") and in response to the Objections of the Official Committee of Tort Claimants (the "**Tort Claimants Committee**") [Dkt. No. 3030]; the United States Trustee (the "**U.S. Trustee**") [Dkt. No. 3029]; the Utility Reform Network ("**TURN**") [Dkt. No. 3035]; James M. Eaneman, Sr. [Dkt. No. 2778]; the City and County of San Francisco ("**CCSF**") [Dkt. No. 3029] (joinder); and the Plaintiffs' Executive Committee [Dkt. No. 3086] (joinder) (collectively, the "**Objections**," and the filing parties, the "**Objectors**").

---

[1] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

## I. PRELIMINARY STATEMENT

The Debtors operate a large, complex, and heavily regulated enterprise to provide safe and reliable gas and electric service to their 16 million customers. A fundamental element of properly operating the Debtors' business is ensuring their key officers are appropriately incentivized to drive safety, financial, and operational performance. This is particularly true at this critical stage in these Chapter 11 Cases, when the Debtors are advancing forward toward a viable chapter 11 plan that maximizes value for all stakeholders and continuing critical efforts to "harden" their system to avoid future wildfires.

The KEIP was designed with the assistance of the Debtors' advisors to ensure that key officers are motivated to meet and exceed a variety of performance targets and thereby have the opportunity to earn market compensation. As stated in the Motion, to place a greater emphasis on safety, the Debtors' newly-constituted Compensation Committee of the Board determined that KEIP Awards should be subject to a downward modifier if the Debtors fail to meet the threshold or target performance metric most closely aligned with wildfire safety.

As with the 2019 STIP previously approved by the Court, the KEIP is entirely incentive-based and highly prioritizes safety performance metrics by giving them a 65% weighting. Further, as with the 2019 STIP, KEIP Awards can be eliminated for any reason, in the total discretion of the Compensation Committee or Board, and such discretion applies to the entire program or on an individual participant basis.

The KEIP is consistent with the Debtors' customary prepetition incentive programs, which are a basic element of the KEIP Participant's market compensation. Indeed, as noted in the Friske Declaration, if the KEIP is not approved, total direct compensation for the KEIP Participants will only reflect current base salaries, which are significantly below median market total direct compensation levels.

The Debtors have actively engaged with the Official Committee of Unsecured Creditors (the "**Creditors Committee**") and the Tort Claimants Committee to discuss the KEIP and related

performance metrics. In response, the Creditors Committee has made certain informal requests with respect to the proposed KEIP. As a result of these discussions, the Debtors have agreed to the following modifications of the KEIP.

1. If earned and vested, the performance-based restricted stock unit ("**PRSU**") awards shall be settled on or after the effective date of a chapter 11 plan of reorganization confirmed in these Chapter 11 Cases in equity of the reorganized PG&E Corporation to be issued thereunder at the value contemplated by such plan of reorganization;

2. To the extent required to comply with the executive compensation provisions of Assembly Bill 1054, including section 8389 of the Public Utilities Code, as they may be amended or supplemented, the Debtors shall modify the terms of the KEIP;

3. Upon a decision by the Compensation Committee or Board, as applicable, to approve a new participant in the KEIP, the Debtors shall provide the advisors of the Official Committee of Unsecured Creditors (the "**Creditors Committee**") with the identity, job title, job responsibilities and compensation of any such new participant at least seven (7) business days prior to the new participant's inclusion in the KEIP;

4. The Debtors shall provide the advisors of the Creditors Committee with the calculations underlying the proposed settlement of any KEIP Awards at least seven (7) business days prior to the settlement of the KEIP Awards; and

5. A copy of any information provided pursuant to this Order to the advisors of the Creditors Committee shall also be provided to the advisors of the Tort Claimants Committee.

With the resolution of all issues raised by the Creditors Committee, the remaining Objections make the following assertions:

1. The KEIP Performance Metrics do not adequately address safety issues;

2. The Debtors fail to meet their burden to demonstrate the KEIP is not a retention plan under section 503(c)(1) of the Bankruptcy Code; and

3. The Debtors have not established that the KEIP is justified by the facts and circumstances of the case.

As demonstrated in the Motion and as further demonstrated below, the Objections are without merit and should be overruled. The KEIP was carefully designed to align the interests of the KEIP participants with the Debtors' other employees and to incentivize the KEIP Participants to not only meet

but also exceed challenging performance targets with an enhanced focus on safety. Further, the KEIP is a key element of compensation, enabling the participants to achieve market level compensation, but only if the performance targets are achieved.

## II. THE KEIP PERFORMANCE METRICS PROPERLY INCLUDE SAFETY, FINANCIAL, AND OPERATIONAL TARGETS

The Tort Claimants Committee's assertion that the Performance Metrics should be "revised to a 100% weighting on safety" not only fails to acknowledge the critical role the key employees play in driving the overall value of the Debtors' enterprise, but also completely ignores the significant emphasis that has already been placed on the Debtors' safety metric. As stated in the Motion, the Performance Metrics are designed to ensure that key members of the Debtors' executive officer team are both properly aligned with the Debtors' other employees and properly incentivized to meet and exceed safety, financial, and operational targets through the opportunity to earn market compensation.

The KEIP, similar to the 2019 STIP, heavily prioritizes safety performance metrics by giving them a 65% weighting but goes further than the 2019 STIP by placing additional emphasis on safety through the PSI Modifier. The Compensation Committee extensively considered safety, including wildfire mitigation, in crafting the performance metrics, and included two new performance metrics for wildfire mitigation (*e.g.*, requiring enhanced vegetation management and system hardening measures within high-fire risk areas). Furthermore, the other safety metrics are relevant to other concerns, but still intersect with wildfire mitigation in material ways. For example, the Debtors' metric for Asset Records Duration "is an important aspect of having a safe system" because accurate asset records are crucial to managing a complex gas and electrical system. *See* Mistry Dep. March 19, 2019 at 42:6-7. Similarly, the Serious Injuries and Fatalities Corrective Actions Index applies to a wide range of safety concerns, including wildfires, the installation of new equipment, and the Debtors' nuclear power facilities. *See id.* at 42:15–17 ("The serious injuries and fatalities corrective action deals with the safety of our employees who are critical to maintaining the system.").

As set forth in the Motion, in considering the appropriate metrics, the Compensation Committee looked to the 2019 STIP and then further emphasized safety by adding the PSI Modifier. It is abundantly

clear that safety is a fundamental element of the KEIP metrics and that there is a legitimate business and operational basis for the other metrics as well. The fact that section 8389(e) of the Public Utilities Code relied on by the Tort Claimants Committee suggests that after June 30, 2020 incentive compensation "may include" it being 100% tied to safety performance may be relevant, but hardly is a requirement now or even after June 30, 2020. Further, the Court is well versed in the metrics and how they are implemented, having had a complete tutorial on the same in connection with the hearing on the 2019 STIP.

### III. THE KEIP IS NOT A RETENTION PLAN

The U.S. Trustee and TURN assert that the KEIP should be denied because the Debtors have not met their burden of proving the KEIP is not a retention plan governed by section 503(c)(1) of the Bankruptcy Code fails to acknowledge well established case law.

Courts have repeatedly held that compensation plans that set out specified challenging performance goals are primarily incentivizing. *See, e.g.*, *In re Residential Capital, LLC*, 478 B.R. 154, 171 (Bankr. S.D.N.Y. 2012) ("When a plan is designed to motivate employees to achieve specified performance goals, it is primarily incentivizing, and thus not subject to section 503(c)(1).") (internal citations omitted); *In re Dana Corp.*, 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006) (finding that "[b]y presenting an executive compensation package that properly incentivizes [management] to produce and increase the value of the estate, the Debtors have established that section 503(c)(1) does not apply"). Indeed, all successful incentive programs necessarily have the indirect benefit of incentivizing an employee to remain with the company. *See In re Alpha Natural Resources, Inc.*, 546 B.R. at 356 ("[A] KEIP that merely has some retentive effect should not be analyzed under § 503(c)(1)."); *In re Velo Holdings Inc.*, 472 B.R. 201, 210 (Bankr. S.D.N.Y. 2012) (holding that a purported KEIP will not be deemed retentive simply because it contains "some retentive effect").

TURN and the U.S. Trustee assert that without additional information, it is impossible to assess whether the Performance Metrics "present difficult targets and are not lay-ups." *See* U.S. Trustee Objection at 14:5-6. Specifically, they both criticize the Debtors' failure to put forth information about

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

their achievement of threshold performance over the past nine years. As set forth in the hearing on the 2019 STIP, the metrics are designed to be "challenging but achievable." Apr. 23, 2019 Hr'g Tr., 23: 6-7. The Debtors have only achieved their target STIP metrics in five of the past nine years and have never achieved a maximum score, providing further evidence that historically the Debtors have not established metrics that are easily achievable. While the Debtors' overall company score has met threshold level each of the past nine years, the Compensation Committee has exercised its discretion across multiple years to reduce executive payouts. Specifically, in 2010, the Compensation Committee zeroed out the score for all officers. In 2015, the Compensation Committee reduced the score for all employees. In 2016, the Compensation Committee reduced the score of all Senior Vice Presidents; in 2017, the Compensation Committee zeroed out the score of the CEO and CFO; and in 2018, the Compensation Committee zeroed out the score for all employees. Accordingly, consistent with past practice and as stated in Mr. Lowe's testimony with respect to the identical 2019 STIP performance metrics, "it's in [the Compensation Committee's] discretion [*sic*] to zero out the STIP, regardless of what the actual score is." Apr. 23, 2019 Hr'g Tr., 68: 7-8.

The U.S. Trustee also asserts that the Motion fails to provide any information as to whether the Debtors are on track to satisfy the metrics. The U.S. Trustee contends this information is critical, because the Debtors have completed more than 50% of the Performance Period and thus what may have seemed like a challenging target in late April (when the 2019 STIP was approved) may now be a "lay-up." *See* U.S. Trustee Objection at 13:18-19. As described in the Motion, the KEIP utilizes the same metrics as the 2019 STIP with the exception of the PSI Modifier. Unlike the 2019 STIP, however, KEIP Participants' scores are calculated on an annual basis instead of quarterly and the Performance Metrics and weightings were established in the first quarter of the calendar year – months before the Motion was filed by the Debtors. In fact, the Compensation Committee ratified the KEIP months before the scoring results for the second quarter could be certified. The suggestion that the Debtors' applied a "wait and see" approach to provide a lay-up simply does not survive scrutiny.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## IV. PAYMENTS PURSUANT TO KEIP ARE JUSTIFIED BY THE FACTS AND CIRCUMSTANCES OF THE CHAPTER 11 CASES

The U.S. Trustee's contention that the Debtors have failed to establish that payments pursuant to the KEIP are justified by the facts and circumstances of these cases is without merit. As discussed in the Motion, Courts have concluded that whether payments to employees are justified by the "facts and circumstances" of a case is to be determined by application of the same business judgment standard utilized under section 363(b) of the Bankruptcy Code. *See In re Velo Holdings Inc.*, 472 B.R. at 209 (Bankr. S.D.N.Y. 2012) ("[The] 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)."). Courts generally utilize the six-factor test identified in *In re Dana Corp.* when determining if the structure of a compensation proposal and the process for its development meet the business judgment standard. 358 B.R. 567, 576-77. As discussed in detail in the Motion, all of these factors are satisfied as to the KEIP, and the U.S. Trustee's objection establishes nothing to the contrary.

The KEIP was carefully designed to drive performance to achieve critical safety, financial, and operational objectives with additional emphasis on safety. As indicated by WTW, the KEIP falls within the range of competitive practice relative to the Debtors' peer companies. The aggregate target direct total compensation for the KEIP Participants falls within the 25th to 50th percentile of the market. The KEIP comports with industry standards with respect to design and overall cost, including eligibility, the amount and type of awards and the Performance Metrics. And, implementation of the KEIP will provide the participants with the opportunity, solely through performance, to achieve market-based compensation. Under the circumstances, the requirements of section 503(c)(3) clearly are satisfied.

The U.S. Trustee also objects to the KEIP provision that authorizes up to $4 million in KEIP Awards for two additional employees that could be named as KEIP Participants in 2019 whose job roles and responsibilities would have qualified them to participate in the KEIP if they had held such positions at the time of the KEIP's approval. This provision provides the Debtors with needed flexibility to hire or promote employees into the senior ranks and provide those employees with appropriate incentives and the same opportunity to realize market-based compensation as the Debtors' other senior officers.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

This limited authority certainly is appropriate and properly circumscribed to address legitimate business needs.

V.  CONCLUSION

For the reasons stated herein and in the Motion, the Court should approve the KEIP.

Dated: August 7, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ *Stephen Karotkin*
 Stephen Karotkin

*Attorneys for Debtors and Debtors in Possession*