WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251
*Attorneys for Debtors*
*and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>    **- and -**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                **Debtors.**<br><br>☒Affects PG&E Corporation<br><br>☐Affects Pacific Gas and Electric Company<br><br>☐Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363 AND 105(a) FOR AN ORDER APPROVING TERMS OF EMPLOYMENT FOR NEW CHIEF EXECUTIVE OFFICER AND PRESIDENT OF PG&E CORPORATION**<br><br>Related Doc: Dkt. No. 2662<br><br><br>Date:    August 9, 2019<br>Time:   9:30 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA 94102 |

# TABLE OF CONTENTS

I.   JURISDICTION ........................................................................................................2

II.  PRELIMINARY STATEMENT ...............................................................................2

III. THE SEVERANCE PAYMENT IN MR. JOHNSON'S COMPENSATION
     PACKAGE COMPLIES WITH SECTION 503(C)(2) .................................................3

IV.  THE TRANSITION PAYMENT IS APPROPRIATE ......................................................4

V.   CONCLUSION...........................................................................................................5

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re MGM Studios Inc.*,
    459 B.R. 550 (Bankr. S.D.N.Y. 2011)........................................................................4

*Pettibone Corp. v. Easley*,
    935 F.2d 120 (7th. Cir. 1991)..................................................................................4

*Southwest Marine, Inc. v. Danzig*,
    217 F.3d 1128 (9th Cir. 2000)................................................................................4

*In re TCI 2 Holdings*,
    428 B.R. 117 (Bankr. D.N.J. 2010)........................................................................4

**Statutes**

11 U.S.C. § 105(a) ..........................................................................................................1

11 U.S.C. § 363 ...............................................................................................................1

11 U.S.C. § 503(c)(2)................................................................................................2, 3, 4

28 U.S.C. § 157(b) ..........................................................................................................2

28 U.S.C. § 1334 .............................................................................................................2

28 U.S.C. § 1408 .............................................................................................................2

28 U.S.C. § 1409 .............................................................................................................2

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## MEMORANDUM OF POINTS AND AUTHORITIES

The Debtors[1] submit this Reply in further support of the *Motion of Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a), for an Order Approving Terms of Employment for New Chief Executive Officer and President of PG&E Corporation* (Docket No. 2662) ("**CEO Motion**" or "**Motion**") and in response to the Objections of the United States Trustee (the "**U.S. Trustee**") (Docket No. 3032) ("**UST Objection**"), and Ghost Ship Warehouse Plaintiffs' Executive Committee (Docket No. 3085) (collectively, the "**Objections**").

---

[1] All capitalized terms used in this memorandum have the meanings assigned to them in the Debtors' CEO Motion, Docket No. 2662, unless otherwise noted.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I.      **JURISDICTION**

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016) and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

II.     **PRELIMINARY STATEMENT**

Notably, neither the Official Unsecured Creditors nor the Official Tort Claimants Committee has objected to the CEO Motion. Indeed, no party has raised a credible challenge to the Debtors' business judgment that Mr. Johnson is the right leader to guide PG&E through these complex and challenging Chapter 11 Cases. Mr. Johnson brings with him an extensive and proven record of prioritizing safety and operational excellence, most recently demonstrated by his time as President and CEO of the Tennessee Valley Authority where under his leadership it achieved its best safety records in its 85-year history.

The only substantive objection to the CEO Motion is that filed by the U.S. Trustee that takes issue with Mr. Johnson's compensation package. In particular, the U.S. Trustee argues that the severance payment must comply with restrictions of section 503(c)(2) of the Bankruptcy Code, even if Mr. Johnson is severed months or years after the Debtors emerge from Chapter 11. Second, the U.S. Trustee argues that the Debtors have not demonstrated that Mr. Johnson's compensation package in its entirety is justified under the facts and circumstances under these Chapter 11 Cases solely on the basis that the Debtors have not provided sufficient information to address whether the transition payment is consistent with industry standards.

First, as indicated in the Debtors' CEO Motion, any severance payment made to Mr. Johnson during the pendency of the Chapter 11 cases will comply with 11 U.S.C. § 503(c)(2) of the Bankruptcy Code.

Second, as detailed in the attached Supplemental Declaration from Mr. Friske ("**Supp. Friske Decl.**"), Mr. Johnson's transition payment is actually below the average transition payment awarded by large public companies to recruit CEOs, and the inclusion of a transition payment itself is a common part of compensation packages for senior executives who are asked to relocate across the country for a new job.

The Debtors have demonstrated that Mr. Johnson's compensation package is in line with market practice for CEO compensation and appropriate under the challenging circumstances facing the Debtors. Mr. Johnson will further the Debtors' key strategic goals of improving safety and expediting emergence from chapter 11. Mr. Johnson's compensation package is reasonable, appropriate, and should be approved.

## III. THE SEVERANCE PAYMENT IN MR. JOHNSON'S COMPENSATION PACKAGE COMPLIES WITH SECTION 503(C)(2)

The U.S. Trustee argues that the Debtors have not established that the severance payment in Mr. Johnson's compensation package complies with section 503(c)(2) of the Bankruptcy Code. But as the Debtors stated in the CEO Motion, "[a]ny severance payments to be made to Mr. Johnson during the pendency of these Chapter 11 Cases shall be subject to the provisions of the Bankruptcy Code," including obviously section 503(c)(2). CEO Motion at 11 n.6. For the avoidance of doubt, the Debtors agree that if severance is payable, or becomes payable, to Mr. Johnson during the pendency of the Chapter 11 Cases, or if the decision which triggers the severance payment is made during the pendency of the Chapter 11 Cases, the Debtors will comply with section 503(c)(2) of the Bankruptcy Code.

To the extent that the U.S. Trustee is arguing that the restrictions imposed by section 503(c)(2) should apply even when the Debtors have emerged from Chapter 11, the cases cited by the U.S. Trustee do not support that proposition. Indeed, two of the cases cited by the U.S. Trustee

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

are from the American Airlines Chapter 11 case, where the Debtors agreed to a merger and determined while the Company was still in Chapter 11 that the CEO would be terminated at or just after emergence. In this circumstance, the Court recognized that any such severance was coming out of the bankruptcy estate and the severance payment related solely to his service to the Debtors pre-emergence. *See also In re TCI 2 Holdings*, 428 B.R. 117, 172-173 (Bankr. D.N.J. 2010) (holding that 503(c)(2) applied where the Plan provided that officers would serve until the Effective Date of the plan). Here, the Debtors agree that should the severance be triggered by a decision pre-emergence, then 503(c)(2) would apply. But once the Debtors emerge from Chapter 11, the reorganized entity is no longer subject to the provisions of section 503(c)(2) of the Bankruptcy Code. *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th. Cir. 1991) ("[o]nce the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval."); *see also In re MGM Studios Inc.*, 459 B.R. 550, 555 (Bankr. S.D.N.Y. 2011); *Southwest Marine, Inc. v. Danzig*, 217 F.3d 1128, 1140 (9th Cir. 2000) ("As we stated in a different context, once the bankruptcy court confirms a plan of reorganization, the debtor is free to go about its business without further supervision or approval of the court, and concomitantly, without further protection of the court.").

## IV.    THE TRANSITION PAYMENT IS APPROPRIATE

The U.S. Trustee also raises an objection to the transition payment in Mr. Johnson's compensation package.

First, the U.S. Trustee argues that the Debtors have not established that the $3 million transition payment is "consistent with industry standards." CEO Motion at 10 & nn.6-7. As demonstrated in the Supplemental Friske Declaration, Mr. Johnson's transition payment is below standard market practice for large public companies. Following an evaluation of 28 companies that awarded transition payments to newly hired CEOs over the last four years with a median revenue of $4 billion, the Debtors' employment expert, Willis Towers Watson ("WTW") found that the median transition award was $7.0 million. Supp. Friske Decl. at 2. Mr. Johnson's $3 million

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

transition payment is below the 10th percentile of transition payments and well-within the range of reasonableness for the Debtors' peer market. As established by WTW's analysis, Mr. Johnson's transition payment is below-market.

Second, the U.S. Trustee points out that "the Debtors made the Transition Payment *before* they filed the Motion or obtained the Court's approval." But as the U.S. Trustee acknowledges, the Debtors have been transparent that Mr. Johnson's compensation is being paid *subject to Court approval. See* CEO Motion at 10 & n.7. In the event that the Court does not approve parts (or all) of Mr. Johnson's transition payment, Mr. Johnson will voluntarily return those amounts to the Debtors.

Finally, the U.S. Trustee states that the Motion "does not address whether the Debtors are on track to satisfy the metrics" of Mr. Johnson's performance-based compensation, and does not disclose the "financial performance metric." CEO Motion at 10-11. The purpose of this is apparently to determine if the metrics are layups. First, the Court has already had extensive testimony with respect to the metrics in connection with the 2019 STIP hearing and considered whether these same metric are layups. Second, to "address whether the Debtors are on track to satisfy the metrics" would require the disclosure of the Debtors' projected performance, which is neither public nor appropriate to disclose.

As stated, no party with an economic interest in these cases has objected to the relief requested in the CEO Motion. Moreover, as demonstrated above, any legitimate concerns raised by the U.S. Trustee have been addressed. The relief requested in the CEO Motion represents a sound exercise of the Debtors' business judgment and complies in all respects with the provisions of the Bankruptcy Code.

## V. CONCLUSION

For the reasons stated herein and in the Debtors' CEO Motion, the Court should approve the terms of Mr. Johnson's employment.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Dated: August 7, 2019                    **WEIL, GOTSHAL & MANGES LLP**

                                         **KELLER & BENVENUTTI LLP**

                                         By : /s/ *Stephen Karotkin*
                                             Stephen Karotkin

                                         *Attorneys for Debtors and Debtors in*
                                         *Possession*