| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Ray C. Schrock, P.C. (*pro hac vice*)<br>(ray.schrock@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | CRAVATH, SWAINE & MOORE LLP<br>Paul H. Zumbro (*pro hac vice*)<br>(pzumbro@cravath.com)<br>Kevin J. Orsini (*pro hac vice*)<br>(korsini@cravath.com)<br>Omid H. Nasab (*pro hac vice*)<br>(onasab@cravath.com)<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212 474 1000<br>Fax: 212 474 3700 |

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>  **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DEBTORS' OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS TO COMPEL PRODUCTION OF THIRD-PARTY CONTRACTOR DOCUMENTS**<br><br>Re: Dkt. 3205<br>Date: August 27, 2019<br>Time: 9:30 a.m. PST<br>Place: United States Bankruptcy Court<br>     Courtroom 17, 16th Floor<br>     San Francisco, CA 94102<br><br>Objection Deadline: August 13, 2019 |

PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") submit this Objection to the Motion to Compel Production of Third-Party Contractor Documents filed by the Official Committee of Tort Claimants (the "**TCC**") [Dkt. 3205] (the "**Motion to Compel**" or "**Motion**").

## PRELIMINARY STATEMENT

Through the Motion, the TCC seeks to compel the production of documents that it either already has, are not responsive to the request that forms the basis for the Motion or the Debtors have already repeatedly told the TCC have not been located after a reasonable search of the Debtors' files. The Motion, which appears to serve more as a vehicle for the TCC to make unfounded accusations of delay against the Debtors and dive into the merits of certain liability issues than the presentation of legitimate discovery disputes, should be denied.

In their *Ex Parte* Application Pursuant to Bankruptcy Rule 2004 for Orders Authorizing Production of Documents, dated April 30, 2019 [Dkt. 1767] (the "**Rule 2004 Application**"), the TCC requested documents from the Debtors related to certain third party contractors who performed work that may be related to the 2017 North Bay Fires and the 2018 Camp Fire to evaluate "the existence of potential claims for relief and sources of recovery against the Debtors' third-party contractors" which "may supplement the Debtors' assets and serve as a source of payment of the fire claims". (Rule 2004 Application at 2.) In particular, the TCC's Rule 2004 Application sought contracts and insurance policies from PG&E's third party contractors who performed vegetation management (Rule 2004 Application, App'x. A at 8), inspections, maintenance or repairs on distribution or transmission lines, (*id.* at 7) and/or risk assessments (*id.* at 8) (collectively defined in the Rule 2004 Application as "**Third Party Contractors**").

For the Camp Fire, the TCC also requested the following for the entire 55-mile Caribou-Palermo 115kV transmission line (the "**Caribou-Palermo line**") from 2009 through 2019:

"For each Third-Party Contractor who performed work on any portion of the Caribou-Palermo Line, which included Tower 22/227 [*sic*] from 2009 through 2019, separately label, by Third-Party Contractor, and produce:

a) All agreements and contracts between the Debtor(s) and each Third-Party Contractor, including without limitation, any agreement or contract relating to indemnity, insurance, or liability.

b) Each agreement between any Debtor and any Third-Party Contractor which required the inspection of the C-Hook on Tower 22/227 [*sic*], which the Debtors have identified as having failed on November 8, 2018;

c) To the extent not set forth in the documents responsive to Request 2(a), all documents that describe the scope of services the Third-Party Contractor agreed to provide to the Debtor(s);

d) To the extent not set forth in the documents responsive to Request 2(a) or 2(b), all documents that describe the work performed by the Third-Party Contractor;

e) All documents that contain the analyses, findings, summaries, impressions, recommendations, and/or other work-product of each of the Third-Party Contractors, including without limitation any Risk Assessments.

f) All insurance policies that may provide coverage for claims arising from the work of each of the Third-Party Contractors.

g) Each writing which documents any inspection performed of Tower 22/227 [*sic*] at anytime from January 1, 2009 to and including April 24, 2019.

h) Each writing which sets forth the result of any inspection performed on Tower 22/227 [*sic*] at anytime from January 1, 2009 to and including April 24, 2019." (Rule 2004 Application, App'x. A at 19.)

Pursuant to the Court's May 28, 2019 Order Following Discovery Conference Held May 8, 2019 [Dkt. 2255] (the "**May 28 Order**"), the date range for these requests was narrowed to documents from 2009 through November 8, 2018. (May 28 Order at ¶ 1).

The Debtors have complied with this request and the May 28 Order. In total, the Debtors identified 23 contractors and produced over 18,000 pages of documents regarding these contractors. Debtors confirmed that their production was complete on July 30, 2019 (Orsini Decl. at Ex. A).[1]

---

[1] The TCC appears to take issue with the fact that the majority of these documents relate to Vegetation Management services, noting that "the Camp Fire was not caused by vegetation management failures". (Mot. to Compel at 4). If that is the TCC's position, it should not have wasted the Debtors' time and resources demanding documents related to vegetation management spanning the entire 55-mile

2

The TCC's primary complaint with respect to the Caribou-Palermo line appears to be their disappointment that PG&E did not produce documents related to inspections conducted by PG&E personnel, not by Third Party Contractors. But these documents are plainly outside the scope of the TCC's requests, which cover "Third-Party Contractor[s] who performed work on any portion of the Caribou-Palermo Line". (*Infra* § A.) The same is true with respect to documents related to general risk assessment work conducted by McKinsey; while it is true that work that McKinsey did for PG&E may have informed work done years later on the Caribou-Palermo line, McKinsey itself was not a "Third-Party Contractor" that performed "work on any portion of the Caribou-Palermo line". (*Infra* § B.) A motion to compel documents that were never even requested is obviously misplaced.

The TCC's remaining complaints, which relate to third party aviation contractors who did not actually perform any electrical services and therefore do not fall within the request at issue (*Infra* § C), third-party insurance policies that the Debtors have already said they do not have (*Infra* § D) and four additional categories of documents that the TCC never even requested from the Debtors (*Infra* § E) are similarly misplaced. The Debtors respectfully request that the Motion be denied.

## ARGUMENT

The Debtors request that the Court deny the TCC's Motion for the reasons that follow:

**A.  The Debtors Have Provided All Responsive Documents for Third Party Contractors Who Performed Electrical Services, Located After a Reasonable Search.**

The TCC's principal complaint in its Motion to Compel is that the Debtors have not produced documents related to electrical inspections performed by contractors on the Caribou-Palermo line. (Mot. to Compel at 6-7.) That is correct. The reason the Debtors have not produced these records is because the relevant inspections were not conducted by contractors. They were conducted by internal PG&E personnel, and are thus not responsive to the TCC's requests, which were designed to

---

Caribou-Palermo line over a 10-year period in their Rule 2004 Application. (Rule 2004 Application, App'x. A, Request 25).

3

gather information about "the existence of potential claims for relief and sources of recovery against the Debtors' *third-party contractors*" which "may supplement the Debtors' assets and serve as a source of payment of the fire claims". (Mot. to Compel at 2.)[2] The Debtors confirmed with the TCC both orally and in writing that electrical inspections were performed internally by PG&E. (Kleber Decl., Ex. I. [Dkt. 3222]). The TCC has wasted the time of both the Court and the Debtors by filing a motion to compel documents that are not even within the scope of their own document requests. Since it filed the Motion, the TCC has provided the Debtors with a separate request for documents concerning these PG&E inspections, and PG&E has agreed to produce those documents, yet the TCC has not withdrawn the Motion. For these reasons, the primary focus of the Motion to Compel was misplaced in the first instance and is now moot.

Similarly, the TCC's assertion that Debtors are withholding responsive documents concerning Third Party Contractors who performed construction, design or consulting services on the Caribou-Palermo line is incorrect. To the extent PG&E could locate any such records, it has produced them. In most cases, PG&E did not locate responsive documents containing the contractors' "analyses, findings, summaries, impressions, recommendations, and/or other work products". (Rule 2004 Application, App'x. A at 24.) This is because typically there are no "analyses", "findings" or other work product generated by contractors who perform these types of services that PG&E would retain. The Debtors have provided what they have been able to locate, a fact that was shared with the TCC before this Motion was filed.

The TCC's citation to a *Wall Street Journal* article as purported evidence of responsive documents PG&E has not produced is misplaced. (Mot. to Compel. at 6.) The "outside consultant" referred to in the *Wall Street Journal* article is Quanta Services Inc. PG&E produced responsive contracts and records relating to Quanta's work to the TCC on July 12, 2019. And, while the TCC cites "documents PG&E provided to the U.S. Forest Service", any relevant documents were prepared

---

[2] It is true that after the November 8, 2018 Camp Fire, PG&E began employing contractors to carry out enhanced inspections as part of its Community Wildfire Safety Program, but this work is unquestionably outside of the May 28 Order's timeframe for PG&E's response, January 1, 2009 through November 8, 2018. (May 28 Order at ¶ 1.)

4

internally by PG&E, not Third Party Contractors, and therefore are not responsive to the single request at issue in this Motion to Compel.

### B. The Debtors Have Provided All Responsive Documents for Third Party Contractors Who Performed Risk Assessments, Located After a Reasonable Search.

The TCC also complains that the Debtors are withholding responsive documents related to risk assessments performed on the Caribou-Palermo line. The Debtors identified two "risk assessments" performed by Third Party Contractors that fall within the scope of the TCC's Rule 2004 Application. The Debtors produced responsive contracts and reports relating to both of these assessments on July 12, 2019, including documents related to the 2010 benchmarking study performed by Quanta Services Inc. referenced in the *Wall Street Journal* article that the TCC cites.

The TCC claims that the Debtors have failed to produce records from McKinsey & Company ("**McKinsey**"), claiming that McKinsey was involved in assessing the Risk Informed Budget Allocation ("**RIBA**") scoring of the Caribou-Palermo line based on the fact that McKinsey personnel were copied on an email about that subject. (Mot. to Compel at 4-5.) The email included as Exhibit D of the TCC's Motion to Compel regarding the RIBA scoring of the Caribou-Palermo line was an assessment performed by PG&E personnel. McKinsey was certainly involved in developing the RIBA scoring model, but not in scoring the Caribou-Palermo line. McKinsey's work therefore falls outside of the scope of a "Risk Assessment" performed on the Caribou-Palermo line, as defined in the TCC's Rule 2004 Application. Nevertheless, the Debtors have no objection to and are willing to respond to reasonable discovery requests regarding RIBA scoring of the Caribou-Palermo line by PG&E in the context of general wildfire liability discovery.

### C. Third Party Contractors Who Performed Transportation Services Are Outside the Scope of the TCC's Rule 2004 Application.

The TCC's Motion to Compel next claims that PG&E is withholding responsive documents relating to work performed by third party helicopter and other aircraft contractors PG&E hired for electrical inspections. (*Id.* at 7.) While PG&E does contract with helicopter and other aircraft

5

providers to facilitate aerial inspections or repairs of its equipment, those contractors simply provide the aircraft and pilot services. They do not conduct the inspections themselves. Instead, the inspections are performed by PG&E personnel that are being transported by the third-party helicopter or aircraft contractors. Providing transportation services is outside the scope of "Electrical Services" as defined in the TCC's Rule 2004 Application, which refers to parties that "inspected, constructed, repaired, maintained, tested, removed, replaced, and/or designed any distribution and/or transmission line". (Rule 2004 Application, App'x. A at 6.) Discovery into the identity of the helicopter or plane pilot would be irrelevant and a waste of time and resources because the TCC has no basis for asserting a claim against Third Party Contractors where the contractor only provided transportation services.

### D. The Debtors Do Not Maintain Copies of Third Party Insurance Policies.

The TCC also complains that the Debtors have not yet produced insurance policies that Third Party Contractors obtain to provide coverage related to work they perform for PG&E. (Mot. to Compel at 5.) As the Debtors have explained to TCC counsel and recently reiterated to the Court in its submission for the August 7, 2019 Discovery Status Conference, PG&E does not typically retain copies of any such insurance policies that are obtained by its Third Party Contractors from third party insurance companies. The Debtors performed a reasonable search and produced all responsive insurance policies that it could find in its possession. PG&E is also still searching for and will produce certificates of liability insurance for Third Party Contractors to the extent PG&E has retained such records. The Debtors obviously cannot produce documents it does not have. If the TCC would like discovery of contractor insurance policies that are not in PG&E's possession, it needs to request those policies from the contractors directly.

### E. The Categories of Documents the TCC Seeks To Compel Are New and/or Outside the Scope of Its Original Rule 2004 Application.

Finally, four of the fifteen categories of documents that the TCC claims the Debtors have not produced in response to Request 25 of their Rule 2004 Application are documents being requested for the first time in the TCC's Motion to Compel. (Mot. to Compel at 9.) Categories 10 and 11 both seek documents related to work that occurred *after* November 8, 2018, which is beyond

6

the time period agreed to by the TCC and Debtors and so ordered by the Court. (May 28 Order at ¶ 1). Categories 13 and 14 demand documents relating to project spending and record-keeping, which are topics that were not included in the Rule 2004 Application. There is thus no basis for the TCC to move to compel the production of these documents. If the TCC would like to request those documents from the Debtors, the Debtors will consider those requests and meet and confer with the TCC.

Dated: August 13, 2019

**WEIL, GOTSHAL & MANGES LLP**
**CRAVATH, SWAINE & MOORE LLP**
**KELLER & BENVENUTTI LLP**

/s/*Kevin J. Orsini*

Kevin J. Orsini

*Attorneys for Debtors and Debtors in Possession*