1                 UNITED STATES BANKRUPTCY COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3                             -oOo-

4    In Re:                      ) Case No. 19-30088
                                 ) Chapter 11
5    PG&E CORPORATION AND PACIFIC )
     GAS AND ELECTRIC COMPANY     ) San Francisco, California
6                                 ) Wednesday, August 14, 2019
                      Debtors.    ) 9:30 AM
7    _____ )
                                    MOTION FOR RELIEF FROM STAY,
8                                   FILED BY AD HOC GROUP OF
                                    SUBROGATION CLAIM HOLDERS
9                                   [2863]

10                                  AMENDED MOTION FOR RELIEF
                                    FROM STAY, FILED BY OFFICIAL
11                                  COMMITTEE OF TORT CLAIMANTS
                                    [2904]
12
                                    DEBTORS' FIRST OMNIBUS REPORT
13                                  AND OBJECTION TO CLAIMS
                                    ASSERTED PURSUANT TO 11
14                                  U.S.C. SECTION 503(B)(9)
                                    [2896]
15
                                    DEBTORS' MOTION PURSUANT TO
16                                  11 U.S.C. SECTIONS 105(A) AND
                                    502(C), FOR THE ESTABLISHMENT
17                                  OF WILDFIRE CLAIMS ESTIMATION
                                    PROCEDURES [3091]
18
                       TRANSCRIPT OF PROCEEDINGS
19                 BEFORE HONORABLE DENNIS MONTALI
                   UNITED STATES BANKRUPTCY JUDGE
20
     APPEARANCES:
21   For the Debtors:          STEPHEN KAROTKIN, ESQ.
                               MATTHEW GOREN, ESQ.
22                             Weil, Gotshal & Manges LLP
                               767 Fifth Avenue
23                             New York, NY 10153
                               (212) 310-8000
24

25

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

```
 1    For Debtors (cont'd.):      JANE KIM, ESQ.
                                  Keller & Benvenutti LLP
 2                                650 California Street
                                  Suite 1900
 3                                San Francisco, CA 94108
                                  (415) 796-0709
 4
                                  KEVIN J. ORSINI, ESQ.
 5                                PAUL H. ZUMBRO, ESQ.
                                  Cravath, Swaine & Moore LLP
 6                                825 Eighth Avenue
                                  New York, NY 10019
 7                                (212) 474-1000

 8    For the Official Committee  GREGORY A. BRAY, ESQ.
      of Unsecured Creditors:     Milbank LLP
 9                                2029 Century Park East
                                  33rd Floor
10                                Los Angeles, CA 90067
                                  (424) 386-4302
11
                                  ANDREW M. LEBLANC, ESQ.
12                                Milbank LLP
                                  1850 K Street, NW
13                                Suite 1100
                                  Washington, DC 20006
14                                (202) 835-7574

15    For the Official Committee  ROBERT A. JULIAN, ESQ.
      of Tort Claimants:          Baker & Hostetler LLP
16                                11601 Wilshire Boulevard
                                  Suite 1400
17                                Los Angeles, CA 90025
                                  (310) 442-8887
18
      For the Ad Hoc Committee    ASHLEY VINSON CRAWFORD, ESQ.
19    of Bondholders:             Akin Gump Strauss Hauer & Feld LLP
                                  580 California Street
20                                Suite 1500
                                  San Francisco, CA 94104
21                                (415) 765-9561

22    For the Ad Hoc Group of     BENJAMIN P. MCCALLEN, ESQ.
      Subrogation Claim Holders:  Willkie Farr & Gallagher LLP
23                                787 Seventh Avenue
                                  New York, NY 10019
24                                (212) 728-8651

25
```

```
 1   For California Department   PAUL J. PASCUZZI, ESQ.
     of Toxic Control:          Felderstein Fitzgerald Willoughby
 2                               Pascuzzi & Rios LLP
                                500 Capitol Mall
 3                              Suite 2250
                                Sacramento, CA 95814
 4                              (916) 329-7400

 5   For the City and County of EDWARD J. TREDINNICK, ESQ.
     San Francisco:             Greene Radovsky Maloney Share &
 6                               Hennigh LLP
                                1 Front Street
 7                              Suite 3200
                                San Francisco, CA 94111
 8                              (415) 981-1400

 9   For Equity Holders:        BRUCE BENNETT, ESQ.
                                Jones Day
10                              555 South Flower Street
                                50th Floor
11                              Los Angeles, CA 90071
                                (213) 243-2382
12
     For Lisa Delaine Allain,   STEVEN M. CAMPORA, ESQ.
13   Thomas Atkinson, Chippewa  Dreyer Babich Buccola Wood
     Pest Control, Inc., Lara    Campora, LLP
14   Balas, Adam Balogh, Brian  20 Bicentennial Circle
     Bolton, Sharon Britt and   Sacramento, CA 95826
15   Heather Blowers:           (916) 379-3500

16   For Michael Marroquin:     DANIEL TUREK, ESQ.
                                Rodriguez & Associates, A
17                               Professional Law Corporation
                                2020 Eye Street
18                              Bakersfield, CA 93301
                                (661) 323-1400
19
     For North Bay Cases:       FRANK M. PITRE, ESQ.
20                              Cotchett, Pitre & McCarthy, LLP
                                840 Malcolm Road
21                              Suite 200
                                Burlingame, CA 94010
22                              (650) 697-6000

23

24

25
```

```
 1   For North Bay Cases          MICHAEL A. KELLY, ESQ.
     (cont'd.):                   Walkup, Melodia, Kelly &
 2                                 Schoenberger
                                  650 California Street
 3                                San Francisco, CA 94108
                                  (415) 889-2919
 4
     For State Farm Mutual        ALLAN S. BRILLIANT, ESQ.
 5   Insurance Company:           Dechert LLP
                                  Three Bryant Park
 6                                1095 Avenue of the Americas
                                  New York, NY, 10036
 7                                (212) 698-3600

 8   For U.S. TelePacific         DANIEL E. VAKNIN, ESQ.
     Corp.:                       Macdonald Fernandez LLP
 9                                221 Sansome Street
                                  3rd Floor
10                                San Francisco, CA 94104
                                  (415) 362-0449
11
     For Various Fire Victims:    GERALD SINGLETON, ESQ.
12                                Singleton Law Firm, APC
                                  450 A Street
13                                5th Floor
                                  San Diego, CA 92101
14                                (760) 697-1330

15   For Wildfire Victims:        DARIO DE GHETALDI, ESQ.
                                  Corey, Luzaich, de Ghetaldi &
16                                 Riddle LLP
                                  700 El Camino Real
17                                Millbrae, CA 94030
                                  (650) 871-5666
18

19

20   Court Recorder:             LORENA PARADA

21   Transcriber:                CLARA RUBIN
                                 eScribers, LLC
22                               7227 N. 16th Street
                                 Suite #207
23                               Phoenix, AZ 85020
                                 (973)406-2250
24

     Proceedings recorded by electronic sound recording;
25   transcript provided by transcription service.
```

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    SAN FRANCISCO, CALIFORNIA, WEDNESDAY, AUGUST 14, 2019, 9:30 AM

2                              -oOo-

3         (Call to order of the Court.)

4              THE CLERK:  All rise.  Court is now in session, the

5    Honorable Dennis Montali presiding.

6              THE COURT:  Good morning, everyone.  Please be seated.

7              IN UNISON:  Good morning, Your Honor.

8              THE CLERK:  Matter of PG&E Corporation.

9              THE COURT:  All right, a comment about the logistics.

10   I'm sorry about the crowd.  This is the first time, I think, in

11   the PG&E hearings we've had the overflow courtroom, Judge

12   Blumenstiel's courtroom, not available.  As of a few minutes

13   ago, there were a couple of spaces down on the media center,

14   first floor, if anyone would rather go down there and be

15   seated.  And I'm going to try to work with our Clerk of Court

16   to see if we can arrange for an alternative overflow courtroom

17   for the future.

18             Just so you know; those of you familiar with the

19   building here, the district judges have somewhat larger

20   courtrooms, and they've offered one or more of them to me, but

21   we don't have the ability to transport the electronics and the

22   recording (sic).  So this is home to stay.  But I'm going to

23   see if we can't make some other arrangements so we don't have

24   this kind of congestion.

25             And for the couple people standing, I don't mind if

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  you sit on the floor like you're at the airport.  This is not

2  kindergarten; you don't have to sit around in a circle.  And I

3  also don't mind if the gentlemen, particularly, sitting on the

4  floor want to take their jackets off; the women, if they want

5  to do something to be more casual.  Do what you want.  This

6  is -- we're here to do something more than have to dress

7  formally.

8          So let's just do the best we can.  I'm sorry about the

9  crowd.

10         Now, Ms. Kim, I see you here.  Are you here somewhere?

11 Do you want me to call the 503(b)(9) matter just to see if

12 there's any response, or just to declare a default as to --

13 nonresponsive?  What's your --

14         MS. KIM:  Yeah --

15         THE COURT:  -- pleasure?

16         MS. KIM:  Sure.  Mr. Goren is here to answer any of

17 the questions that you have on it and --

18         THE COURT:  I don't have any questions.  I just want

19 to -- I want to make sure we take care of what you're expecting

20 me to.  So --

21         MR. GOREN:  That's fine, Your Honor.  Either way.

22         THE COURT:  Well, let's --

23         MR. GOREN:  With respect to all of the objections --

24         THE COURT:  -- let's just -- for the record, the

25 debtors filed motions under Section 503(b)(9) some time ago,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  and a number of people have responded and the debtors' counsel

2  have worked on stipulations to put many of them over to a later

3  hearing.  Are there any parties here in the court or on the

4  phone that wish to be heard on the 503(b)(9) motions or

5  objections to claims?

6          Yes, sir.  Just -- I need a name and an appearance.

7  Good morning.

8          MR. VAKNIN:  Daniel Vaknin on behalf of U.S.

9  Pacific -- sorry, TelePacific.  Yeah, we're in agreement with

10  the amended proposed order.  I just want to say that on the

11  record.

12          THE COURT:  Okay.  All right, well, then I'll just go

13  ahead and we'll process the order that's been uploaded for --

14  that takes care of everyone.  Thank you.  And then --

15          MR. VAKNIN:  Thank you, Your --

16          THE COURT:  -- we won't -- there's no action for

17  the -- taken on that.

18          So where's Mr. Karotkin?  Mr. Orsini, you in the front

19  chair today?  Is that it?

20          MR. ORSINI:  I am, Your Honor.  Good morning.

21          THE COURT:  Do you want to -- do you have any

22  announcements or --

23          MR. ORSINI:  Housekeeping matters to begin, Your

24  Honor.

25          THE COURT:  Yeah.

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  I believe Your Honor's order allocated

2     forty-five minutes for us.

3          THE COURT:  Wait one second.  What?

4          THE CLERK:  An appearance for the --

5          THE COURT:  Yeah.  Okay.

6          MR. ORSINI:  Yes.

7          THE COURT:  Appearance for the record.

8          MR. ORSINI:  Kevin Orsini, Cravath, Swaine & Moore, on

9     behalf of the debtors.

10         THE COURT:  Yeah, you want me to -- you okay with that

11    allocation?

12         MR. ORSINI:  Forty-five minutes is fine, Your Honor,

13    for the opening.  I will allocate fifteen minutes in total to

14    three other stakeholders who would like to argue in support of

15    our motion --

16         THE COURT:  Okay.

17         MR. ORSINI:  -- the UCC, the equity holders

18    represented by Mr. Bennett, and the ad hoc bondholders

19    represented by Akin Gump.  They've requested five minutes each

20    and we've agreed to provide them with that time.

21         THE COURT:  Okay, and then --

22         MR. ORSINI:  Which would --

23         THE COURT:  That's fine.

24         MR. ORSINI:  -- leave me with thirty minutes, by my

25    calculation.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  All right.  And I have a couple of more

2     specific questions than I might have asked in the past.  I can

3     do them ahead of time or I can wait.  What's your pleasure?

4          MR. ORSINI:  I'm happy to hear your questions first,

5     Your Honor.  I think if you have questions, those are the most

6     important things for me to address.  There're other points I'm

7     sure I'll want to make.

8          THE COURT:  Well, of course I want you to talk about

9     whatever you want to talk about, but there still is confusion

10    in my mind, and perhaps even in reading the opposition to the

11    estimation motion.  And let's all agree that the estimation

12    motion and the motions for relief from stay have a lot of

13    overlap, and we've -- I've said several times they were all

14    interrelated, and some of the legal arguments are the same.

15         But here's the question:  So, bankruptcy lawyers know

16    about estimation under 502.  There may be some attorneys who

17    are not well-versed in the Bankruptcy Code and not familiar

18    with what I think is a fairly unique process in the bankruptcy

19    world.  But the way I see it for -- particularly for your

20    phases 1 and 2 -- phase 1, as you've proposed, is a legal

21    question, but it's still something that comes in the context of

22    the 502(b) estimation.  And phase 2 is obviously a bigger

23    question, having to do with the Tubbs fire.

24         And so my -- here's my question:  for each of those --

25    perhaps the answer's different for the two -- is it an

PG&E Corp., Pacific Gas and Electric Co.

1   estimation or is it the end of the story?  In other words --

2   let's take the easy one.  Let's take the inverse condemnation.

3   Your position is that that law should be ignored or that's the

4   way the TCC and the courts of appeal in California have

5   interpreted it.  And obviously there're a number of parties

6   that disagree with that.  That seems like a question of law.

7           So let's -- leave aside how we get there.  Suppose

8   we're here and -- I've heard the arguments and I'm ready to

9   rule.  And it doesn't matter what my ruling is.  Is it still

10  part of estimation?  Am I just estimating and predicting

11  what -- not what the California Supreme Court would do but what

12  would happen if it were a full trial?  In other words, what I'm

13  trying to get is what do we do with a pure legal question in an

14  estimation hearing?

15          MR. ORSINI:  So I think, Your Honor, from our

16  perspective -- and let me just step back for a second.  The

17  three-phased approach that we came up with was really guided by

18  at least two motivating principles; one was to address key

19  gating issues as quickly as we possibly could.

20          THE COURT:  Okay.

21          MR. ORSINI:  We all know we have the time constraints,

22  and there are some issues we thought we could address sooner

23  rather than later, including potentially before the bar date;

24  another issue we can discuss, because I --

25          THE COURT:  Well, but that's a minor issue --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  Right.

2          THE COURT:  -- by comparison, so --

3          MR. ORSINI:  And the second point, Your Honor, was, if

4    you get to those gating issues sooner rather than later, it

5    obviously helps the parties start to value their claims.

6          And so I think -- on your specific question on the

7    inverse-condemnation legal issue, I think in the context of

8    estimation Your Honor would have a choice; Your Honor would be

9    able to estimate it as a percentage-likely outcome of where we

10   land if we were to litigate this all the way through the state-

11   court system.  However, I also think it's inherently within the

12   Court's authority to make a ruling on inverse condemnation.  It

13   is a legal issue, as Your Honor notes.  It's a legal issue that

14   doesn't require any discovery.  And in the estimation context,

15   it could also be viewed as effectively a disallowance of

16   inverse-condemnation claims --

17         THE COURT:  Well, okay, but again, we're back to -- I

18   could say I agree with you, end of story.  But it seems to me

19   that "end of story" means end of story, the Tubbs-fire case is

20   gone.  Right?

21         MR. ORSINI:  So I think --

22         THE COURT:  Or unless some claimants, whether they be

23   individual as part of the estimation process, could argue

24   somehow, even if the legal principle has been set aside,

25   there's still a theory.  But do you think -- would that still

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    be open for discussion or not?

2          MR. ORSINI:  So with respect to the inverse-

3    condemnation issue, Your Honor, I think --

4          THE COURT:  Um-hum.

5          MR. ORSINI:  -- if you decide that issue, that issue

6    is done.

7          THE COURT:  And if I decide it adverse to the debtor,

8    then the debtor has to defend on the question -- well, no, it

9    seems to me, then, the sixty-four-dollar question is, is the

10   CAL FIRE report right or is it some -- are other theories

11   right?  And then we're back to the more traditional estimation

12   process.

13         MR. ORSINI:  With respect to the Tubbs fire, that's

14   correct, Your Honor.

15         THE COURT:  Right, but the --

16         MR. ORSINI:  There would also be issues with respect

17   to the other fires of phase 3.

18         THE COURT:  Well, I'll leave the other fires aside for

19   the moment and I'll leave phase 3.  I'm still back to the point

20   where, when you start in the Code for what a bankruptcy court

21   can do for estimation --

22         MR. ORSINI:  Um-hum.

23         THE COURT:  -- it doesn't say, like a court could do

24   on a summary judgment, I can rule -- the court can rule up or

25   down on a legal question.  Now, obviously it's part of it.  And

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1 part of the estimation might be please estimate this claim at

2 zero because I have a one-hundred-percent bulletproof defense

3 to it:  statute of limitations or some easy one.

4         Okay, so now let's go --

5         MR. ORSINI:  Well --

6         THE COURT:  Go ahead.

7         MR. ORSINI:  And on that point, Your Honor, on statute

8 of limitations, I think it's the same type of argument as

9 relates to inverse condemnation.  It's a legal argument.

10         THE COURT:  So let's --

11         MR. ORSINI:  And --

12         THE COURT:  -- let's do something else again that I

13 do, because it helps me; I don't know, others might not

14 appreciate this.  But when I have to deal with 40- or 50,000

15 persons who suffered personal or property damage in a series of

16 fires, that's more complex than one case of one person that has

17 suffered one injury.

18         So if we had a Chapter 7 case and a claim filed by a

19 person who claims to have been injured, either a tort injury or

20 even a contractual injury -- let's say I'm in bankruptcy and

21 you have been infringing on an intellectual-property right that

22 I have, and I have a claim against you for millions of dollars.

23 But -- I'm sorry, that you then file bankruptcy and say, "We

24 can't determine it specifically.  The Court has to estimate

25 it."

PG&E Corp., Pacific Gas and Electric Co.

1      MR. ORSINI:  Um-hum.

2      THE COURT:  So in a case like that, how the estimation

3 takes place is quite variable.  But at the end of the day, the

4 estimation, for virtually all purposes, is over with.  The

5 estimator -- the Court says, "I estimate Mr. Orsini's liability

6 as twenty million dollars" or "I estimate it at zero," or I go

7 through the analysis of, well, he's probably got a hundred-

8 percent -- I mean a fifty-percent chance of winning his

9 million-dollar claim, so I'll estimate it at 500,000.  But any

10 of those choices, we're done; right?

11      MR. ORSINI:  That's correct, Your Honor, and --

12      THE COURT:  Okay.

13      MR. ORSINI:  -- and I think in this context, just

14 stepping back -- because here we do have the much more complex

15 scenario --

16      THE COURT:  Um-hum.

17      MR. ORSINI:  -- where we have, at minimum, 40- to

18 50,000 claims.

19      THE COURT:  Right.

20      MR. ORSINI:  And I'll get to how many of those are

21 actually personal-injury claims --

22      THE COURT:  No, that's a much different question --

23      MR. ORSINI:  It's a different issue --

24      THE COURT:  -- and I want to --

25      MR. ORSINI:  -- but I'll get to that.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  -- defer that to later.

2      MR. ORSINI:  But on this issue in particular, Your

3  Honor, I think there's broad consensus among all the

4  stakeholders, as there has to be, that we can't possibly

5  liquidate all of these claims.

6      THE COURT:  No, no, I understand.

7      MR. ORSINI:  So, estimation's absolutely required.

8      THE COURT:  I understand.

9      MR. ORSINI:  And the result of what would happen --

10  let's stick with phase 2 and Tubbs, for example.  The result as

11  to what would happen at the end of that, I think, could differ

12  depending upon what type of claim we're talking about.  You

13  heard Mr. Feldman --

14      THE COURT:  Well, that's right.  Of course, I --

15      MR. ORSINI:  You heard Mr. Feldman admit that to you

16  yesterday with respect to the subrogation claims, which there's

17  no argument that those are outside of this Court's core

18  jurisdiction.

19      THE COURT:  No, I understand.

20      MR. ORSINI:  Those would be over.  With respect to the

21  individual claims that are not property claims -- I'm not going

22  to get into that piece of the argument right now -- what we're

23  asking the Court to do -- and I think this is a very, very

24  critical point.  What we're asking the Court to do with respect

25  to phase 2 as well as ultimately phase 3 is to estimate whether

PG&E Corp., Pacific Gas and Electric Co.

1   or not there's a likelihood of liability with respect to the

2   claims of all of the claimants here.

3           And with respect to the individuals and in particular

4   the personal-injury claims, this doesn't strip them of a jury-

5   trial right.

6           THE COURT:  Well, but I want to -- I want to -- that's

7   another question we can come back to later.  But I'm still

8   trying to make sure I'm clear as to how the estimation process

9   works, and that's why intentionally I wanted to stay away from

10  the jury entitlement, because, as some of us know, and maybe

11  some people don't agree, if we bring in a personal-injury

12  claim, maybe the simple solution is a different judge.  But

13  that's not --

14          MR. ORSINI:  Right.

15          THE COURT:  -- for today.

16          So what I'm trying to do is this; stick with my

17  hypothetical:  So we have one claim in one simple bankruptcy,

18  but the issues raised by the claimant are:  was the claim

19  barred by the statute of limitations; was there some legal

20  theory that would immunize the party; was there a factual

21  question that would require, absent bankruptcy, three years of

22  discovery and delay.  And the answer to -- seems to me that the

23  bankruptcy judge says, well, it's certainly unliquidated and it

24  certainly will delay the administration of the case, therefore

25  I factor in the legal question, the legal argument, the

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    uncertainties, the likelihood of prevailing, et cetera, and I

2    come to a conclusion from zero to a million dollars or anywhere

3    in between.

4         MR. ORSINI:  Right.

5         THE COURT:  How we get to that number is not for

6    today.

7         MR. ORSINI:  Sure.

8         THE COURT:  So then you agree that -- and obviously,

9    if others have a different view, I'll hear from them -- that

10   when we talk about phases 1 and 2, we're talking about

11   components of the estimation -- well, phase 3 also, but, I

12   mean, at least the first two.  But phase 2 is critical because

13   it has the Tubbs question.

14        MR. ORSINI:  That's right, Your Honor.

15        THE COURT:  All right, so does that mean, then, if

16   I -- again, let's assume that it's I, but, if you need to

17   substitute an Article III judge, fine.  For these purposes,

18   same question.  If the decision-maker says, "Mr. Orsini's

19   smoking an illegal substance," the inverse-condemnation

20   doctrine is alive and well, so he loses on that one.  But on

21   the fire one, we've got -- on the Tubbs fire, we've got

22   different opinions.  Was it the CAL report that's dispositive?

23   Was it -- is it the other alternative?  Is there some other in

24   between?  The decision still turns on that ultimate question:

25   is PG&E liable or not?  Right?

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  Absolutely, Your Honor.

2          THE COURT:  Is that something that can be done and

3 arranged?  I mean, the TCC, perhaps in their relief-from-stay

4 motion -- maybe it's this one -- they seem to say it's all or

5 nothing.  But is it all or nothing?  Can the estimator say,

6 "Based upon percentages, I would say the liability would be X"?

7 And X could be forty percent of the spread; right?

8          MR. ORSINI:  So our position, Your Honor, is very much

9 that it will be nothing.  But --

10         THE COURT:  I know.

11         MR. ORSINI:  -- can it be something other than

12 nothing, and not one hundred percent?  The answer, I think, is

13 obviously yes.  That is inherently --

14         THE COURT:  Because 502 permits that.

15         MR. ORSINI:  Because 502 permits that.  And actually,

16 if you look at all the estimation cases and particularly in the

17 asbestos context, a lot of times courts will estimate

18 likelihood of success at something other than zero or one.

19         THE COURT:  Right, but as you know --

20         MR. ORSINI:  It's something in between.

21         THE COURT:  -- one of the -- one of the seminal cases

22 in this whole area when the law was fairly new was the Bittner

23 case.  And --

24         MR. ORSINI:  Yes, Your Honor.

25         THE COURT:  -- as I recall, the Bittner case did the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    analysis and said, zero, end of story.  And to a lot of

2    nonbankruptcy people, they probably thought -- well, that got

3    resolved later at a trial.  But the way I read it, there is no

4    later if you have that kind of case.  Right?  If you have --

5    certainly in a Chapter 7, but maybe in a Chapter 11 with a

6    discharge -- and again, I want to put the personal-injury thing

7    to see whether that has to be treated differently -- it's all

8    over, right?

9            MR. ORSINI:  So you're talking -- we put personal

10   injury aside.

11           THE COURT:  Yeah.

12           MR. ORSINI:  Now we're just talking property claims?

13           THE COURT:  Um-hum.

14           MR. ORSINI:  Yes, Your Honor.

15           THE COURT:  Okay.  So my last preliminary question,

16   then I'll shut up for a while -- and maybe I just missed this

17   in the papers, but where in phase 3 is the Ghost Ship trial --

18   Ghost Ship fire, not trial; excuse me.  I just read this

19   morning the jury's out on the seventh day today in the criminal

20   trial.  But I -- there's a lot of focus in the papers, about

21   the wildfires --

22           MR. ORSINI:  Um-hum.

23           THE COURT:  -- certainly Tubbs.  But is Ghost Ship, in

24   your mind, part of the phase 3 as well?

25           MR. ORSINI:  Not as part of our proposal, Your Honor.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  We think --

2      THE COURT:  Well, then what do we do with it?

3      MR. ORSINI:  Well, that's a good question, Your Honor.

4  We could ultimately fold it into phase 3 if we needed to.  We

5  think that's one where the liability is even more attenuated

6  than in any of the other cases.

7      THE COURT:  Well, yeah, but somebody --

8      MR. ORSINI:  And --

9      THE COURT:  -- has to --

10     MR. ORSINI:  And if --

11     THE COURT:  -- come to terms with it.

12     MR. ORSINI:  -- if we cannot resolve that claim, Your

13  Honor, that one, I think, can be dealt with in its own

14  estimation process that would require very little time by the

15  Court.

16     THE COURT:  Well --

17     MR. ORSINI:  It's obviously an important claim --

18     THE COURT:  -- I don't know whether --

19     MR. ORSINI:  -- for the victims.

20     THE COURT:  I mean, does AB 1054 cover the Ghost Ship

21  fire?  Again --

22     MR. ORSINI:  I --

23     THE COURT:  -- it's a fire --

24     MR. ORSINI:  I --

25     THE COURT:  -- and it's a tragedy, but it's not --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      MR. ORSINI:  I don't --

2      THE COURT:  -- called a wildfire.

3      MR. ORSINI:  I don't believe so, Your Honor.

4      THE COURT:  Well, okay.

5      MR. ORSINI:  I'd have to -- I'd have to examine that

6  more.  But my understanding, the read of 1054, is that it's

7  related to the wildfire victims.

8      THE COURT:  We don't have to decide that today.  And

9  there may be lawyers here in the room that have strong feelings

10  (ph.) one way or the other.  I don't want to waste time on it

11  today.  The point is -- and we spend all of -- most of

12  yesterday and a lot of today looking at that June 30th clock

13  and wondering is it going to be state court, is it going to be

14  this court, is it going to be a district court, is it going to

15  be something else.  I don't want to say, "Oh, by the way, we

16  forgot about Ghost Ship" and have --

17      MR. ORSINI:  Oh, and I understand that, Your Honor.

18  And the way we thought about this as we were constructing the

19  motion, because we thought about this issue -- as Your Honor

20  said yesterday, we're here in this court because of the '17 and

21  '18 wildfires.  The Ghost Ship fire can be treated in a variety

22  of ways.  One possibility might even be to allow those claims

23  to ride through.

24      THE COURT:  Well, that's right.  That --

25      MR. ORSINI:  So we -- I don't think any of that's been

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    decided yet, which is why we focused this motion on the

2    wildfires.

3           THE COURT:  Well, but it seemed -- okay, that's good

4    enough for me.  And I don't know that -- I don't know that

5    anybody else could force on the debtor an explanation that it

6    doesn't want to make.  I guess the question is, at some point

7    if we get to there, the debtors will have to decide -- well,

8    excuse me, let me not act like it's out there in the future.

9    If sometime in the near future there is scheduling of phase 3,

10   the question that I would ask if I'm the scheduler is, is Ghost

11   Ship in or out?  And somebody on your side will have to say --

12   and --

13          MR. ORSINI:  And our view, as I stand here right now,

14   is it's out.

15          THE COURT:  I got you.  Okay.  Well, I've got some

16   other questions, but let me be quiet for a while because I've

17   used up some of your thirty minutes.

18          MR. ORSINI:  No problem, Your Honor.

19          So, in terms of opening remarks, Your Honor, I want to

20   start today actually precisely where you started yesterday,

21   which is, we all understand the reason we're here is because of

22   the tragic 2017 and 2018 wildfires.  We know that entire towns

23   were destroyed, people's lives were changed forever.  We can't

24   lose sight of that.  And the reason we're in this bankruptcy

25   court is to try to find the quickest and most efficient way to

PG&E Corp., Pacific Gas and Electric Co.

1  provide compensation to those wildfire victims who are entitled

2  to compensation.  And we made clear from the first day of these

3  cases that that's what we want to do.  We had made tremendous

4  efforts, between the filing and today, to try to resolve these,

5  because I think all of us, the Court included, would love for

6  this to be resolved consensually.

7      You heard Mr. Karotkin and Mr. Feldman yesterday

8  acknowledge that we are in very active discussions with the

9  subrogation insurers.  If Your Honor read our financial

10  statements that were issued last Friday, you'd see that, as of

11  the date of that filing -- I'm sure you have plenty of other

12  things to read, Your Honor.  But as of the date of that filing,

13  we had made an offer to the subrogation insurers, of 8.5

14  billion dollars to resolve their claims.

15      THE COURT:  Well, you shouldn't be telling me about --

16      MR. ORSINI:  No, Your Honor --

17      THE COURT:  -- the settlement discussion.

18      MR. ORSINI:  -- this --

19      THE COURT:  I mean, if it's public, obviously --

20      MR. ORSINI:  This is all public.

21      THE COURT:  Okay.

22      MR. ORSINI:  This is all public, Your Honor.

23      And we haven't gotten there yet with the subrogation

24  insurers, but we're going to continue, and we're going to

25  continue regardless of what Your Honor's ruling is today.

PG&E Corp., Pacific Gas and Electric Co.

1    We've also tried very hard to resolve the individual

2 claims.  And again, this is another public number.  We have

3 offered, to date, to fund a trust of up to seven-and-a-half

4 billion dollars to cover the individual claims.

5    And just to put that number in context -- to put that

6 number in context, if you look at the Camp fire, for example,

7 where the average home value pre-fire was roughly 300,000

8 dollars or less, and you think about a 7-and-a-half billion-

9 dollar trust and you allocate a significant piece of that to

10 Camp victims, and you add to that what the victims have already

11 recovered from their insurers, it's an average recovery of over

12 a million dollars a household; three to four times the pre-fire

13 property value.

14    The problem we face is we are very far apart.  And

15 that's why we filed this motion.  You heard -- you've heard

16 from the TCC that they believe their total damages figure is

17 fifty-four billion dollars.  There's actually no analysis

18 behind that; they've conceded that.  It's a simple math

19 exercise, looking at a different fire.

20    And so the reason we've come here with the estimation

21 procedure we proposed is to try to get the parties to close

22 that gap and to have a mechanism, if we can't close that gap,

23 to ultimately resolve these claims.

24    THE COURT:  But you agree with me that if we -- it

25 seems to me, regardless of how I rule on the exclusivity

PG&E Corp., Pacific Gas and Electric Co.

1    motions, and maybe dependent upon relief from stay, but maybe

2    not, we've got to get on with an estimation.

3              MR. ORSINI:  A hundred percent, Your Honor.

4              THE COURT:  And on the morning of the estimation

5    trial, if you announce there's a settlement, you will --

6              MR. ORSINI:  I --

7              THE COURT:  -- be welcomed with --

8              MR. ORSINI:  I think we've all seen that before.

9              THE COURT:  -- open arms by somebody.  But --

10             MR. ORSINI:  I think we've all seen that before.

11             THE COURT:  But the point is we have to get on with

12   it.  And it seems to me that, no matter what, one plan or two

13   plans or three plans, estimation has to get --

14             MR. ORSINI:  The --

15             THE COURT:  -- up in the queue; right?

16             MR. ORSINI:  The ad hoc bondholder plan is entirely

17   contingent upon an estimation hearing.  Mr. Feldman's plan has

18   holes in it that will have to be subject to estimation.

19             THE COURT:  But it still has --

20             MR. ORSINI:  Our plan --

21             THE COURT:  -- an estimation --

22             MR. ORSINI:  -- will require estima -- you cannot

23   escape the fact --

24             THE COURT:  Right.

25             MR. ORSINI:  -- that we have to estimate here and we

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    have to get started.  And there've actually been --

2                THE COURT:  Okay.

3                MR. ORSINI:  -- I think, three key statements made by

4    stakeholders, that are relevant to both this motion and the

5    interrelated Tubbs motion, over the previous week or so.  The

6    first one was when Mr. Kornberg was in this courtroom last week

7    on behalf of the CPUC.  And he made clear that, for them to run

8    their process, they need a plan before them --

9                THE COURT:  Yeah.

10               MR. ORSINI:  -- sometime in the January time frame.

11               THE COURT:  No, I know.  I know.

12               MR. ORSINI:  You heard Ms. Dumas yesterday say, until

13   we get Tubbs resolved, until we get into some estimation of the

14   ultimate damages and guidance from a court, they're not even in

15   a position to begin to evaluate whether to support a plan.

16               And as it relates to the Tubbs lift-stay motion, as

17   the TCC has conceded, the earliest that trial could start, in

18   an ideal world, which this is not -- the earliest that trial

19   could start is January.

20               THE COURT:  No, I know that --

21               MR. ORSINI:  And so we don't --

22               THE COURT:  -- and I -- that's on my list --

23               MR. ORSINI:  Right.

24               THE COURT:  -- to ask --

25               MR. ORSINI:  And so, Your Honor -- so --

                PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  -- someone on the other side.

2          MR. ORSINI:  -- I come back to exactly what you just

3    said, which is that we have to get going with estimation.

4    Everybody concedes that.  We need to start now.

5          So we have way too many pages of briefs.  There are a

6    whole host of issues that have been put in; I couldn't even

7    hope to touch all of them.  I think there're key issues that I

8    would like to address, subject to Your Honor's additional

9    questions.

10         THE COURT:  Well, and let me interrupt you again.  The

11   inverse-condemnation one --

12         MR. ORSINI:  Yes.

13         THE COURT:  -- again, without expressing my own

14   opinion, because I only read the briefs, it's -- I don't --

15   this is going to sound wrong, so I better be careful what I

16   say.  It's a big issue, but it's not a difficult one to put my

17   arms around and to brief and to think about how to deal with

18   it, because it's a pure legal question.

19         MR. ORSINI:  It's a hundred-percent right, Your Honor,

20   which is why it's --

21         THE COURT:  And --

22         MR. ORSINI:  -- dealt with often --

23         THE COURT:  But the --

24         MR. ORSINI:  -- on either a summary-adjudication

25   motion --

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  Right.  But the question --

2      MR. ORSINI:  -- or a motion to dismiss.

3      THE COURT:  But the question is why can't it be phased

4  later?  In other words, anything that I make -- anything

5  that -- any decision that's made by the bankruptcy court or the

6  district court at the trial level, if there's appeals, just

7  like in the state court -- I mean --

8      MR. ORSINI:  Right.

9      THE COURT:  -- I must have read five times in these

10  papers that -- can't go to state court, because there might be

11  appeals.  Nobody mentioned that there might also be appeals

12  here.  I like to think nobody ever appeals my decisions, but

13  that's not true.

14      MR. ORSINI:  Two --

15      THE COURT:  So the point --

16      MR. ORSINI:  Two reasons, Your Honor --

17      THE COURT:  -- the point is --

18      MR. ORSINI:  -- if I can just --

19      THE COURT:  Yeah.  Go ahead.

20      MR. ORSINI:  -- if I can address that question right

21  off the bat --

22      THE COURT:  Yeah.

23      MR. ORSINI:  -- on inverse condemnation, because I

24  think it's easy to dispose with.

25      THE COURT:  Yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  Number one, Your Honor's going to have to

2     address it.

3          THE COURT:  Okay.

4          MR. ORSINI:  It's a critical gating question.  There's

5     some suggestion that it's actually not that material of a

6     difference whether there's inverse or not.  People wouldn't be

7     fighting so hard about it if that were true.

8          THE COURT:  Well, okay, but what if I didn't decide

9     anything?  What if the California Supreme Court tomorrow

10    announced that they just repealed inverse condemnation?  What

11    do we do about the Tubbs -- is phase 2 over?

12         MR. ORSINI:  No.  Phase 2 is not over, because you

13    still have negligence claims with respect to Tubbs.  So inverse

14    condemnation is --

15         THE COURT:  Even if the CAL FIRE report -- well,

16    because you still have that uncertainty as to who caused it;

17    right?

18         MR. ORSINI:  We -- well, we don't believe there's

19    uncertainty as to cause.  We have arguments that the CAL FIRE

20    report was wrong.

21         THE COURT:  No --

22         MR. ORSINI:  So even --

23         THE COURT:  -- I know that.

24         MR. ORSINI:  -- if Your Honor --

25         THE COURT:  No, but I'm -- let me rephrase my question

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    more specifically.  If inverse condemnation is reversed --

2              MR. ORSINI:  It's gone.

3              THE COURT:  -- and -- let's say, by the California

4    Supreme Court this week, then the bankruptcy court doesn't have

5    to deal with it, but you still have to defend the theories that

6    are alleged that PG&E was negligent --

7              MR. ORSINI:  I absolutely --

8              THE COURT:  -- anyway.

9              MR. ORSINI:  -- do, Your Honor, but the reason why

10   it's important whether it's California Supreme Court, which

11   it's not going to be, because it's not before them, or this

12   court to deal with that upfront is because the difference

13   between a strict-liability standard and a negligence standard

14   and the impact that the relevant standard will have on, among

15   other things, settlement positions is obvious.

16             THE COURT:  Well, of course it's obvious, but we're

17   back to -- we're back to estimation, because the -- regardless

18   of what happens on inverse condemnation, whether a judge makes

19   a legal question, it's one of those estimation questions that

20   is simple, because it's a legal question.

21             MR. ORSINI:  Yes, Your Honor.

22             THE COURT:  But as we just discussed, the estimation

23   of a situation where liability has to be proven or not

24   proven -- it's complicated and it's --

25             MR. ORSINI:  It is.

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  -- it's still an estimation.  So suppose

2    the California Supreme Court says, "No, the doctrine applies."

3          MR. ORSINI:  Um-hum.

4          THE COURT:  You still have to win the estimation -- I

5    mean the phase 2 trial or you suffer the same consequences;

6    right?

7          MR. ORSINI:  Correct, Your Honor.

8          THE COURT:  So for estimation purposes, is the strict

9    liability or the negligence liability at all different?

10          MR. ORSINI:  Well, first of all, there are whole

11    categories of damages --

12          THE COURT:  Yeah, I know.

13          MR. ORSINI:  -- that are only available under inverse,

14    and those are the -- that category of damages is attorneys'

15    fees.  There're statutory attorneys' fees for the trial lawyers

16    if they prove inverse condemnation.  And that -- if you just

17    look at the bondholder plan --

18          THE COURT:  Well, that's a lot of money.

19          MR. ORSINI:  -- it's billions of dollars --

20          THE COURT:  Well, yes, I understand.

21          MR. ORSINI:  -- is what they're seeking.  So that's

22    point number one.  But point number two, Your Honor -- you're

23    absolutely right that we still have to go to the estimation

24    process, and we still have to deal with the causation, we still

25    have to deal with the negligence.  The reason we put inverse

PG&E Corp., Pacific Gas and Electric Co.

1    upfront is because, as you said, it's simple to deal with

2    because it's a legal issue and, two, we do think, if Your Honor

3    were to agree with us, that would have a material impact upon

4    people's settlement posture --

5            THE COURT:  Well --

6            MR. ORSINI:  -- and help drive us towards --

7            THE COURT:  -- but if I agree with --

8            MR. ORSINI:  -- a consensual resolution.

9            THE COURT:  -- if I disagree with you, that might have

10   an --

11           MR. ORSINI:  Also true.

12           THE COURT:  -- impact too.

13           MR. ORSINI:  That's the risk we're taking.

14           THE COURT:  Okay.

15           MR. ORSINI:  That --

16           THE COURT:  But what I'm getting at is this, and now

17   this is why I want to get to that -- it's the morning of phase

18   2.  And --

19           MR. ORSINI:  Um-hum.

20           THE COURT:  -- once again, let's not worry about who

21   the person in the black robe is.  Let's talk about what the

22   assignment is.  And that person in the black robe is either

23   going to preside over a three-week trial or a two-week trial or

24   a six- -- four-week trial.  I doubt that it's going to be the

25   kind of trial that some of the PI lawyers believe exist,

PG&E Corp., Pacific Gas and Electric Co.

1    because I don't think the Bankruptcy Code anticipates that.

2    And you and I have read the cases.  There have been cases where

3    judges have held mini-trials for half a day or one expert per

4    side.

5            Now -- but it would seem to me the estimator has to

6    then take into account all these variables and make a best-

7    judgment call.

8            MR. ORSINI:  That's correct, Your Honor.

9            THE COURT:  And it's not anything more -- it's not

10   clear and convincing, it's not preponderance of the evidence;

11   it's whatever the estimation persuades the trier of fact;

12   right?

13           MR. ORSINI:  That's right, Your Honor.

14           THE COURT:  Yeah, and that's why you get back --

15   that's why Bittner, for example, is so interesting, because

16   it's one of those things where it's zero.  I mean, it's like

17   baseball arbitration, except it's zero.

18           MR. ORSINI:  Right.

19           THE COURT:  Right?

20           MR. ORSINI:  But it's absolutely within your power --

21   or, let's say, the estimator's power to do that.  That's the

22   separate question.

23           THE COURT:  So --

24           MR. ORSINI:  So have I addressed your question on

25   inverse?

operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Well, I guess what I'm saying is this:  I

2    understand that a trial-court ruling on the inverse question

3    has a big swing as to a portion of stuff.

4          MR. ORSINI:  Um-hum.

5          THE COURT:  It still leaves open a big question about

6    what is being determined by the estimator, under 502, on Tubbs.

7    And that then gets to punitives and exemplary and attorneys'

8    fees and contrib -- all the other things that might be part of

9    a huge multi-week trial in a superior court or in --

10          MR. ORSINI:  I --

11          THE COURT:  -- a civil matter.

12          MR. ORSINI:  I completely agree with Your Honor that,

13    even if we resolve inverse today, whichever way Your Honor

14    rules, there're a lot of complicated issues left for phase 2.

15    Our proposed approach is simply -- to use a phrase that's been

16    used a couple times in this courtroom in the last couple days,

17    there's a lot of wood to chop.  And so we're trying to chop as

18    much as we --

19          THE COURT:  Well, I know, but you only --

20          MR. ORSINI:  -- can now.

21          THE COURT:  -- put three weeks' worth of wood in the

22    pile, and that's your proposal and, if acceptable, that's what

23    the estimator would do.  And if the estimator believes that the

24    better thing to do is to have just competing experts testify,

25    that's -- I mean, that's what all this very, very broad

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp., Pacific Gas and Electric Co.

1    discretionary call by the trial -- by the judge is --

2              MR. ORSINI:  Um-hum.

3              THE COURT:  -- so important, right?

4              MR. ORSINI:  That's right, Your Honor.

5              THE COURT:  And that's -- and I'm saying this not to

6    criticize our colleagues who don't come to bankruptcy very

7    often.  But as I read papers from the traditional and very

8    qualified and capable personal-injury lawyers, I don't think

9    they appreciate what the estimation process is, and so I want

10   to make sure at least I'm understanding it correctly.  And I

11   welcome their counsel, their bankruptcy counsel, or themselves,

12   to tell me if they think I got it wrong.

13             But I've done over the years not a lot of work under

14   502, because there isn't a lot of work, but I've read a lot

15   about it and I know what the -- stakes are high, but they're

16   not a trial.

17             MR. ORSINI:  You and I are on the same page, Your

18   Honor.

19             THE COURT:  Okay.

20             MR. ORSINI:  I've done fewer of those than you have.

21   But I, too, have read the cases and I have "Karotkin on

22   Bankruptcy" on call.

23             And so --

24             THE COURT:  I could give you a better source.

25        (Laughter.)

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT: No, I'm sorry, Mr. Karotkin.

2    MR. ORSINI: We could talk about that later --

3    THE COURT: I didn't mean that.

4    MR. ORSINI: -- Your Honor. Thank you.

5    THE COURT: That was not true.

6    MR. ORSINI: So, look, I think that segues into the

7 bigger question here, and I think it also reflects a

8 misunderstanding of both what the Bankruptcy Code provides and

9 what estimation is. On this question of a capped trust and

10 jury trials and whether or not we're trying to strip claimants

11 of their rights to a jury trial as been (sic) suggested in the

12 papers, in the San Francisco Chronicle, we're not. Okay?

13    THE COURT: Well, that's one of the things I'm going

14 to make sure we're clear on, too. So I'm ready to go to more

15 questions if you will let me.

16    MR. ORSINI: Please, Your Honor.

17    THE COURT: Okay, so let's take one that I think is

18 very, very difficult for me to even think about. And you've

19 heard it -- you've heard it in some discussions, it's in some

20 of the briefs: the world of personal injury and wrongful

21 death. We all learned torts in law school. And so you know,

22 and I think the OCC as well as the debtors, having addressed

23 this in the brief, and certainly the TCC has addressed it --

24 where does emotional distress come within that litany or that

25 coupling of those two words? And again, I will concede for the

PG&E Corp., Pacific Gas and Electric Co.

1    moment that there may be other things that don't fit the label

2    of emotional distress, that experienced tort lawyers, personal-

3    injury lawyers, would easily know is part of it.

4           So if we divide the universe that's found under -- in

5    Section 28 U.S.C. 157(b) --

6           MR. ORSINI:  (2).

7           THE COURT:   --  (2), the Court -- bankruptcy court

8    cannot estimate for distribution personal-injury, tort, and

9    wrongful-death claims.  And most of the other side says that

10   includes emotional distress.  So my first question is who makes

11   that decision?  In other words, if the decision is made, as

12   part of the estimation, to have a district judge make the

13   distribution decision, does that district judge also decide the

14   emotional-distress in-or-out question or is that the bankruptcy

15   judge's duty?

16          MR. ORSINI:  Your Honor, my view is --

17          THE COURT:  The statute's quiet on the subject.

18          MR. ORSINI:  My view -- and I think it's supported by

19   the case law -- is that's a decision for you to make.

20          THE COURT:  As part of the, sort of the, pre-trial

21   teeing-up the question?

22          MR. ORSINI:  As part of the pre-trial teeing-up.

23   Frankly, it could be as part of ruling on this motion, because

24   it raises potentially -- and we don't actually think it does.

25   I'll get to that question in a minute.  But it raises

PG&E Corp., Pacific Gas and Electric Co.

1  potentially the judicial-officer question.

2          But if you look at a variety of the cases that are

3  cited by both sides, it is, I think, almost uniformly -- but I

4  won't say "uniformly", because there're a lot of cases -- the

5  bankruptcy judge who's making this determination.  And

6  sometimes it's in the context of estimation, sometimes it's in

7  the context of dischargeability under Chapter 13 --

8          THE COURT:  Well, I know, on --

9          MR. ORSINI:  -- but -- and so I believe --

10          THE COURT:  That's -- dischargeability's easy --

11          MR. ORSINI:  Right.  We --

12          THE COURT:  -- because --

13          MR. ORSINI:  But we believe --

14          THE COURT:  -- nobody says a district judge needs to

15  do that.

16          MR. ORSINI:  We believe, even in this context, the

17  bankruptcy court -- Your Honor -- has the ability to make the

18  decision as to what is and is not intended by the words

19  "personal-injury tort" in 28 U.S.C. 157(b)(2).

20          THE COURT:  Well, and the briefs on the other side

21  suggest a broader approach.  You're suggesting a narrow

22  approach.

23          MR. ORSINI:  Right.  We don't agree on what the answer

24  to that question is, but I don't -- I didn't see any suggestion

25  that Your Honor can't answer that question.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  Well, I don't -- no, I don't think anybody

2  addressed it.  But I addressed it, because, like -- look,

3  I'm -- if I am going to make a recommendation to a district

4  court to withdraw the reference in part --

5    MR. ORSINI:  Um-hum.

6    THE COURT:  I mean, I guess I could make a

7  recommendation to drop the whole thing and then I could take

8  the next couple of months off.  -- I have to be able to -- and

9  by the way, anything that I say that I might do, obviously any

10  party could do.  So any party could make a motion today to

11  withdraw a part or all of the reference.

12    MR. ORSINI:  Um-hum.

13    THE COURT:  But I'm assuming that I have the

14  responsibility -- and certainly our Local Rules contemplate

15  that the bankruptcy judge is supposed to take care of the pre-

16  trial things that happen, until the matter is ready to go to

17  the district judge.

18    I -- again, some of the local lawyers would know that

19  I was involved in several of the major-law-firm bankruptcy

20  cases.  Every managing partner in the United States knows about

21  me, for that.  But in the Heller bankruptcy in this court, I

22  presided over all the pre-trial, every aspect:  motions and

23  everything else.  But because some of the defendants did not

24  consent to the jury, following the rules, I got the matter all

25  ready to go, to what I thought was ready -- and the litigants

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  agreed, too, that it was ready to be sent to the district court

2  to try it.

3        So I did all the preliminaries and then I made a

4  recommendation for withdrawal, and the district judge took it

5  and then he did something that I didn't agree with.  But that

6  was something else again.

7        MR. ORSINI:  No, Your Honor, we agree that --

8        THE COURT:  So, therefore --

9        MR. ORSINI:  -- you are the authority.

10        THE COURT:  -- Mr. Orsini, to get back to it, your

11  view is that I would say to -- as -- well, as part of my

12  recommendation to the district court, it's time for you to

13  withdraw the reference, because I've had the preliminaries,

14  I've dealt with the legal issues, and, by the way, I've dealt

15  with a piece of the personal-injury and wrongful-death analysis

16  by saying that that includes or excludes emotional distress and

17  anything related to it.  And that's your view is that would be

18  what I would do.  And then presumably, the district court, I

19  guess, would take what is left and act on it.

20        MR. ORSINI:  Our view, Your Honor, is we don't have to

21  get to that point, because you have the power to do all of

22  this.  But that's a different question.  If Your Honor

23  concludes that some of this has to go upstairs, then, yes, the

24  process you've articulated, we agree, is the right approach.

25        THE COURT:  Okay.  Okay.  And I presume you know this,

PG&E Corp., Pacific Gas and Electric Co.

1    I mean, because you've said it, because the papers say it:

2    we're back to the estimation.  Whether it's a district judge or

3    bankruptcy judge, the parties will weigh in on how they think

4    the estimation should proceed.

5            MR. ORSINI:  Um-hum.

6            THE COURT:  But it's pretty much the discretion of the

7    court.

8            MR. ORSINI:  As to how the process works?  Hundred

9    percent --

10           THE COURT:  Well, yes.

11           MR. ORSINI:  -- Your Honor.

12           THE COURT:  I use --

13           MR. ORSINI:  Hundred percent.

14           THE COURT:  -- the hypothetical of one witness per

15   side, three-day -- I mean three-week trial.  Some judges have

16   times.  I believe, in the Archdiocese (sic) of Portland case,

17   the judge, unless I'm confusing that with Dow -- I forget which

18   one of them, the judge just allocated time to both sides.

19           MR. ORSINI:  Right.

20           THE COURT:  I mean, there're all sorts of things to

21   do.  But at the end of the day when it's done, the judge says,

22   "I estimate the liability," if it's my hypothetical, "Orsini's

23   claim is 500,000 dollars," or "I estimate that all of the

24   victims of the fires" or a particular fire, is whatever figure

25   I estimate.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  That's all correct, Your --

2          THE COURT:  So the TCC, in its papers, says we have to

3    have hearings for every fire.  Is it a different estimation

4    hearing for every fire, or is it, in the aggregate, all the

5    fires?

6          MR. ORSINI:  Again, I think that's a question that's

7    entirely up to Your Honor.

8          THE COURT:  It's part of the estimat --

9          MR. ORSINI:  Our --

10         THE COURT:  -- part of the estimation question.

11         MR. ORSINI:  As part of the estimation process and the

12   inherent discretion that Your Honor has, or whomever the

13   estimator, to use your language, is.  And so that would be up

14   to you.  We'll follow your lead.

15         Our view is that this is all part of a single

16   estimation process to estimate the 2017 and 2018 wildfire

17   claims.  And so we don't need it formally to be we have a

18   hearing today on the Atlas fire, a separate hearing, for formal

19   purposes, tomorrow on the Cascade fire.  We do think there will

20   be fire-specific issues, but we think it's part of the overall

21   estimation process to get to the --

22         THE COURT:  But --

23         MR. ORSINI:  -- aggregate liabilities.

24         THE COURT:  But your view, Mr. Orsini, is that when

25   the matter's submitted for decision by that judge, it's one

PG&E Corp., Pacific Gas and Electric Co.

1  figure, not twenty figures?

2          MR. ORSINI:  Well, Your Honor, I don't --

3          THE COURT:  Or is that -- is that correct?

4          MR. ORSINI:  I don't know, Your Honor.

5          THE COURT:  Okay.

6          MR. ORSINI:  I don't think that -- to be candid, I

7  don't think we've solved that question yet.  And part of the

8  reason why our phase 3 is, to criticize my own plan, a little

9  bit of a kick-the-can-down-the-road, is we need to get started,

10 in our views, on 1 and 2, but we wanted to meet and confer with

11 all the stakeholders, to figure out if there's a way to

12 simplify, because it will be easier if we don't have to go fire

13 by fire.  There may be circumstances in which we do.

14         THE COURT:  Well --

15         MR. ORSINI:  And I think that issue is still open,

16 Your Honor.

17         THE COURT:  -- again, we're back to my assignment.  If

18 my assignment is to do it, then, fine, I'll do it.  If my

19 assignment is to tee it up for another judge to take some or

20 all of it --

21         MR. ORSINI:  Um-hum.

22         THE COURT:  -- because I'm sure there are people that

23 agree -- don't agree with you that I can somehow dice it into

24 parts and say, okay, we'll set aside the PI and wrongful death

25 but we'll do everything else over here.  There're a lot of

PG&E Corp., Pacific Gas and Electric Co.

1    people in this room that probably don't agree with that.

2    And -- but in any event, it would seem to me that if I have to

3    make the recommendation to the district judge, I have to --

4              MR. ORSINI:  This would be part of that.

5              THE COURT:  -- articulate --

6              MR. ORSINI:  Yes, Your Honor.

7              THE COURT:  -- what I believe he or she should -- will

8    be inheriting.

9              MR. ORSINI:  Yes, Your Honor.

10             THE COURT:  Okay.

11             MR. ORSINI:  Yes, Your Honor.

12             THE COURT:  Okay.  Well, I -- let's see; the way we

13   are on the time -- I've been using up almost all your time.

14   Shall we --

15             MR. ORSINI:  Your questions are the important ones,

16   Your Honor.  But if I could for a moment, just for one

17   moment --

18             THE COURT:  Yeah.

19             MR. ORSINI:  -- kind of segue off what we were just

20   discussing.

21             THE COURT:  Sure.  Sure.

22             MR. ORSINI:  The TCC, in particular, has set the

23   dispute up as to whether or not there is an ability for this

24   Court or the court upstairs to use estimation for the purposes

25   of creating a capped trust.  And there's a subquestion, within

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   that, of which judge has to do which piece of it, and a further

2   subquestion as to what's personal injury and what's not.

3           But let me stay with the headline, the headline

4   question of can one of this Court or the court upstairs

5   estimate these claims, all of these claims, for the purposes of

6   creating a capped trust?  The answer to that question is

7   unambiguously yes.  There's not a single case that is cited, in

8   a single one of the hundreds of pages of briefing, that says

9   that is not available.  The two cases they rely on the most --

10  and I won't spend time on it, because I know Your Honor has

11  read them.  But the two cases they cite the most are the

12  Portland case and the Dow case.

13          The Dow case is dicta.  It explicitly says they don't

14  need to reach that issue.  The Portland case does suggest that

15  Your Honor couldn't do that, but makes it very clear that the

16  district court could do that with respect to the personal-

17  injury claims.

18          THE COURT:  Well, but do what?

19          MR. ORSINI:  Estimate the claims --

20          THE COURT:  Yeah?

21          MR. ORSINI:  -- for the purposes of creating a capped

22  trust --

23          THE COURT:  Right.

24          MR. ORSINI:  -- which is then the recourse --

25          THE COURT:  Right.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      MR. ORSINI:  -- for the claimants, post-emergence, to

2  liquidate their claims.

3      THE COURT:  But what does that mean, to liquidate the

4  claims?

5      MR. ORSINI:  So what that means, to liquidate their

6  claims, can take a variety of forms.

7      THE COURT:  Well, but that's what I think is a very

8  critical question, because --

9      MR. ORSINI:  Yes, Your Honor.  And so I'll address it.

10      So the way that these trusts typically work, and the

11  way we would foresee this trust working here, would be that --

12  let's pick a number.  Your Honor says ten billion dollars goes

13  into these trusts post-confirmation.  At that point, there will

14  be trustees appointed, there will be matrices developed in

15  coordination with the TCC, with the lawyers for the individual

16  claimants, and the trustee, to come up with basically a

17  settlement offer --

18      THE COURT:  Right.  No, I'm --

19      MR. ORSINI:  -- here's your allocation --

20      THE COURT:  Well, that's --

21      MR. ORSINI:  -- you could take that --

22      THE COURT:  But that goes all the way back --

23      MR. ORSINI:  And --

24      THE COURT:  -- to even pre-524 --

25      MR. ORSINI:  Absolutely.

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  -- (g) asbestos --

2          MR. ORSINI:  And if people like that, they take it,

3    and they get paid quickly.  If people don't like that, there're

4    other mechanisms.  And at the end of road -- and this is the

5    critical point; at the end of the road, if they're not

6    comfortable with the matrix or potentially a mediation, they

7    have the right -- they still have the right to go to California

8    state court, pursue a jury trial to have that jury liquidate

9    their claim.  And then once they have that verdict that says,

10   your claim is worth 100,000 dollars, they walk over to the

11   trust, present that claim, and they get paid.

12         THE COURT:  Yeah, but what if the trust is not --

13   doesn't that mean, therefore, there's a redistribution of

14   what's in the trust?  That's what I think is unclear, and I

15   need you to help me.

16         So you're the trustee and you are sitting on three --

17   well, again, I want to go back to a simple case, okay?

18         MR. ORSINI:  Okay.

19         THE COURT:  You're sitting on 100,000 dollars and you

20   believe that there're ten claimants and you come up with a

21   matrix to divide up how that 100,000 is going to be shared

22   among ten people.

23         MR. ORSINI:  Um-hum.

24         THE COURT:  But one of the ten says, "I want my jury

25   trial."

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  Yep.

2          THE COURT:  And he goes to trial and he gets a

3    500,000-dollar judgment.  Does he get -- does that 500,000 go

4    into the 100,000 pot, or does it go -- stay outside and he

5    tries to collect it somewhere else?  Because that's --

6          MR. ORSINI:  No.  It stays --

7          THE COURT:  -- what's unclear.

8          MR. ORSINI:  -- within the pot.

9          THE COURT:  Well, then the point is --

10         MR. ORSINI:  And this --

11         THE COURT:  -- then the point is it is a cap.

12         MR. ORSINI:  It is -- I'm not disputing that it's a

13   cap.  It's a hundred percent a cap.

14         THE COURT:  Okay.

15         MR. ORSINI:  And that is exactly what has happened in

16   every one of the --

17         THE COURT:  Then -- I know, but --

18         MR. ORSINI:  -- asbestos cases.  It's what happened

19   in --

20         THE COURT:  -- but I got to --

21         MR. ORSINI:  -- Portland.

22         THE COURT:  But I have to know what happens in this

23   case.

24         MR. ORSINI:  Right.  And what happens in this case,

25   Your Honor, I think, is exactly what happened in all of those.

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  It's not what happened in Corning, though.

2          MR. ORSINI:  Okay -- actually it is, Your Honor.

3          THE COURT:  Well --

4          MR. ORSINI:  At the end of the whole process in

5     Corning, the court estimated a present-value amount that needed

6     to go into a trust to fund the breast-implant claims.  And

7     there were objectors who said, I don't think this is going to

8     be enough.  And the court said very clearly, in the

9     confirmation order, listen, we went through an estimation

10    process, the court made a determination that it believes the

11    estimated amount that's going into the trust is enough.  And

12    while there's some risk that the trust ultimately won't be

13    enough, that's the court's job:  to try and prevent against

14    that risk and --

15         THE COURT:  Okay.

16         MR. ORSINI:  -- come up with a number --

17         THE COURT:  Okay.

18         MR. ORSINI:  -- that provides recourse.

19         THE COURT:  And I think Ms. Dumas made the statement

20    some time ago, and I -- it's been on my mind.  There's a simple

21    solution:  don't put a cap or have it so high that you got

22    everybody accounted for.  That's obviously not your intention

23    and that's not the bondholders' or the subrogation's plan at

24    the moment.

25         No, but what that means is that, if you get -- if you

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    get your trust and the class of impaired creditors votes --

2              MR. ORSINI:  Um-hum.

3              THE COURT:  -- that's fine; you've got yourself that

4    confirmation item out of the way.

5              MR. ORSINI:  Right.

6              THE COURT:  But if there's one person, just one

7    person, who says, "I want my jury," that person gets his jury

8    somewhere, sometime, but all he does is goes back into the pot;

9    he doesn't have -- it doesn't pass through like --

10             MR. ORSINI:  That's --

11             THE COURT:  You even said that maybe the company will

12   choose to let the Ghost Ship people pass through, which is your

13   choice.  But for the vast majority of victims of the wildfires,

14   their choice is to have their jury trial, but it's still going

15   to go back into the pool.

16             MR. ORSINI:  That's right, Your Honor.  And this is --

17             THE COURT:  Okay.

18             MR. ORSINI:  -- this is not novel.  This is exactly --

19             THE COURT:  Well, I know it's not novel, but it's one

20   of those things that wasn't so clear.

21             MR. ORSINI:  I understand, Your Honor.

22             THE COURT:  And that's why I asked Mr. Karotkin before

23   to be prepared to explain what was in a footnote in the prior

24   brief, and you're explaining it and --

25             MR. ORSINI:  That's why he sent me up here, Your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    Honor.

2              THE COURT:  Yeah -- no, no, I'm not negotiating with

3    you.  I just want to make sure I know what the rules are.

4              MR. ORSINI:  No, you absolutely understand correctly

5    what we have in mind, Your Honor.

6              THE COURT:  So -- but a number of the lawyers on the

7    other side have cited over and over again 157(b)(5) and 28

8    U.S.C. 1411.

9              MR. ORSINI:  Right.

10             THE COURT:  Is that just hollow?  Does that just mean

11   it's good news, bad news:  the good news is you get your jury

12   trial; the bad news is it doesn't make much difference?

13             MR. ORSINI:  Well, I would --

14             THE COURT:  I mean, that's what it sounds like.

15             MR. ORSINI:  No, no, I don't agree with that, Your

16   Honor.  It's not that it doesn't make much difference.  You

17   have the opportunity to go against the trust.  And in

18   estimating the amount that goes into the trust, the Court is

19   looking at what are the likely outcomes of those cases.

20             THE COURT:  I know, but we're back to the relevance

21   and the significance of the estimation process.

22             MR. ORSINI:  Right.  And on this point, Your Honor --

23   I think that's the critical point -- there is absolutely no

24   right to a jury, with respect to estimation --

25             THE COURT:  I know.

(972) 221-1900 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1       MR. ORSINI:  -- whether it's an estimation --

2       THE COURT:  Well, I --

3       MR. ORSINI:  -- done here or upstairs.

4       THE COURT:  -- I believe that that's what the law

5  says.

6       MR. ORSINI:  That --

7       THE COURT:  I want to hear if anybody says that's not

8  the law.

9       MR. ORSINI:  And, Your Honor, they've said that.  They

10  haven't cited any law that actually supports --

11       THE COURT:  Well --

12       MR. ORSINI:  -- that proposition.

13       THE COURT:  -- when Ms. Dumas -- if she's going to

14  argue, or if Mr. Julian argues, I will ask about a couple of

15  questions in their briefs and see what they meant by that.  But

16  you're making it -- I'm not surprised by your answer; I just

17  want to make sure it's on the table so we all know what --

18  maybe they all know it from you, but I haven't heard it from

19  you before.

20       MR. ORSINI:  Okay.

21       THE COURT:  So 157(b)(5) is kind of meaningless,

22  right?  It says whether you get the district judge in Northern

23  District or some other district.  Here, all the fires were in

24  the Northern District.  So -- or, no, that's not true.

25       MR. ORSINI:  It's not true, actually.

PG&E Corp., Pacific Gas and Electric Co.

1       THE COURT:  There might be some in the Eastern

2  District.

3       MR. ORSINI:  Yeah.

4       THE COURT:  So if some of the fires were in the

5  Eastern District and they go to a trial, the statute says which

6  district it's tried in.  That's about the only thing (b)(5)

7  says, right?

8       MR. ORSINI:  Right.  And that's something that we deal

9  with --

10       THE COURT:  And that's --

11       MR. ORSINI:  -- after emergence.

12       THE COURT:  -- that's --

13       MR. ORSINI:  That's right.

14       THE COURT:  -- not of significance today.

15       MR. ORSINI:  No, it's not.

16       THE COURT:  But what is the reference to 1411?

17       MR. ORSINI:  The reference to 1411 is that you cannot

18  liquidate a claim without preserving a jury right, if one

19  exists.

20       THE COURT:  But --

21       MR. ORSINI:  And we're not running --

22       THE COURT:  Yeah --

23       MR. ORSINI:  -- we're not running afoul of that here,

24  Your Honor.

25       THE COURT:  And you're saying, but one doesn't exist?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  No -- well, no.  I'm --

2          THE COURT:  No -- well, it exists, but for estimation

3     purposes.

4          MR. ORSINI:  Right, for estimation purposes, 1411 does

5     not --

6          THE COURT:  So if we --

7          MR. ORSINI:  -- come into play.

8          THE COURT:  -- if we got all the personal-injury

9     lawyers who've never been in bankruptcy before and we line them

10    up for a little CLE, we'd say, "We got this Section 1411 that

11    preserves things for you, and it preserves your jury right, if

12    one exists.  But by the way, under 157(b)(2), it doesn't

13    exist"?

14         MR. ORSINI:  It does not exist for estimation

15    purposes.

16         THE COURT:  It doesn't exist except to liquidate your

17    claim and put it back into the --

18         MR. ORSINI:  Right, because there's --

19         THE COURT:  -- pool.

20         MR. ORSINI:  -- there's estimation, which is not

21    dealing with a particular claim; it's dealing with the

22    aggregate, where you can't actually liquidate.

23         THE COURT:  Correct.

24         MR. ORSINI:  Where no individual claim is actually

25    valued for distribution, no individual claim is actually

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   liquidated.  We're estimating an aggregate to ensure that

2   there's an adequate pool of sum -- of money for the eventual

3   liquidation post-confirmation.  And the jury-trial right runs

4   through right with that trust.

5          THE COURT:  So in my hypothetical where you're the

6   only claimant because you have an intellectual-property claim

7   against the bankruptcy trustee, the court will estimate your

8   claim.  If Mr. Karotkin happens to also have a claim for

9   personal injury, maybe he gets his jury right preserved.  But

10  at the end of the day, Mr. Karotkin's claim and your claim are

11  shared and dealt with pari passu or pro rata out of the fund.

12  Neither one of you -- yours because it's been estimated

13  without -- with the bankruptcy judge; his because maybe it's an

14  Article III judge, maybe it's not.  Either way, the estimation

15  is, at the end of the day, for the amount of money you're going

16  to -- maximum amount of money you're going to recover.

17         MR. ORSINI:  So in Your Honor's --

18         THE COURT:  Right?

19         MR. ORSINI:  -- hypothetical where it's an individual

20  claim, I suppose the answer's yes.

21         THE COURT:  Right.

22         MR. ORSINI:  But I think the important thing to

23  emphasize here is we're not talking about individual claims.

24         THE COURT:  No, I know that, but --

25         MR. ORSINI:  We're talking about the aggregate --

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  -- but that's because you have --

2          MR. ORSINI:  Too many.

3          THE COURT:  -- tens of thousands of them.

4          MR. ORSINI:  Right.  Exactly right.

5          THE COURT:  But in my hypothetical, you only had two.

6          MR. ORSINI:  Right.

7          THE COURT:  But the same result applies.

8          MR. ORSINI:  Well, I think the result's actually a

9  little bit different, because in the hypothetical you've

10 described, you were actually fixing a value to my claim, you're

11 fixing a value to Mr. Karotkin's claim, presumably less than

12 the value of my claim --

13         THE COURT:  But I figured -- but I set the pot ahead

14 of time.

15         MR. ORSINI:  You set the pot ahead of time --

16         THE COURT:  I didn't liquidate your --

17         MR. ORSINI:  -- with that calculation.

18         THE COURT:  -- your intellectual-property claim or his

19 tort claim.  But I said, guess what, guys, you got 100,000,

20 that's all you're going to share.

21         MR. ORSINI:  And that's what happened in Portland

22 ultimately.

23         THE COURT:  And that's what happens in the real

24 world --

25         MR. ORSINI:  Yes.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  -- in -- every single time you ever do an

2    estimation like this.

3    MR. ORSINI:  Yes, Your Honor.  Yes, Your Honor.

4    So, look, on this broader question of which judicial

5    officer has to decide the issue, there are really two questions

6    in my mind; number one is, is the type of estimation that we're

7    talking about an estimation for distribution purposes?

8    THE COURT:  Um-hum.

9    MR. ORSINI:  Because if it's not, we don't have to

10   talk about 157(b)(2).

11   THE COURT:  But isn't it?

12   MR. ORSINI:  I don't believe it is, Your Honor.  I

13   don't believe it is, because it goes back to the point that

14   we're not in a hypothetical where it's one or two claims.

15   THE COURT:  Right.

16   MR. ORSINI:  No individual claim is fixed for

17   distribution.  No individual claim is valued.  The distribution

18   liquidation happens later.

19   And so while -- look, what I'm arguing is not what

20   Judge Perris found, right?  In the Portland case, she rejected

21   my argument.  Respectfully, I think she was wrong about that.

22   And if you look at all of the other cases that have dealt with

23   capped trusts, in the asbestos context in particular, they did

24   exactly that.  And because we're not actually distributing

25   anything to any particular claimant, we don't believe 157(b)(2)

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    even applies, and Your Honor can do it all.

2          But if Your Honor doesn't believe that, if Your Honor

3    doesn't agree, that doesn't mean we're in a scenario with no

4    capped trust.  It certainly doesn't mean that we're in a

5    scenario where we're going now to state court to try the Tubbs

6    claims.

7          THE COURT:  Well, if I am persuaded to grant relief

8    from stay -- and maybe that happens, but maybe that's not the

9    end of the stay.  I mean, maybe we still have to deal with the

10   estimation.  I think you made that clear.

11         MR. ORSINI:  Well, we absolutely still have to deal

12   with the estimation.

13         THE COURT:  Right.

14         MR. ORSINI:  And that's one of the big reasons why

15   Your Honor shouldn't grant the stay relief.  But that's my

16   argument for this afternoon.

17         THE COURT:  Right.

18         MR. ORSINI:  But the point, Your Honor, is, if you

19   decide that Judge Perris was right, that estimation, for the

20   purposes of creating a capped trust, is tantamount to

21   distribution for personal-injury claims.  It's not the end of

22   the story.  That just means, as Your Honor's put it, which

23   judicial officer --

24         THE COURT:  Okay --

25         MR. ORSINI:  -- is dealing with it.

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  -- but let's defer that --

2          MR. ORSINI:  Okay.

3          THE COURT:  -- and let's come back to, okay, when does

4    this distribution analysis take place.  Let's suppose that

5    we're going to follow Judge Perris' rule.

6          MR. ORSINI:  Um-hum.

7          THE COURT:  When does it happen?  In other words, now

8    it's June 29th, plan's ready to be confirmed, and the -- this

9    Court has determined the amounts for plan purposes.

10         MR. ORSINI:  Yes, Your Honor.

11         THE COURT:  When do you do the distrib -- and now it's

12   July 1st --

13         MR. ORSINI:  When do you figure out the matrix?

14         THE COURT:  -- and the plan's effective and

15   everything's ready to go.  When does the -- does somebody do

16   the distribution analysis?

17         MR. ORSINI:  You could do that in a variety of

18   different ways, Your Honor.  We --

19         THE COURT:  But when and how?

20         MR. ORSINI:  We -- well, one way is --

21         THE COURT:  Leave aside again who the judge is.

22         MR. ORSINI:  One way is -- and it may not even involve

23   the judge.  Whichever judge it is.

24         THE COURT:  Well, of course --

25         MR. ORSINI:  One --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1       THE COURT:  -- any compromise doesn't involve --

2       MR. ORSINI:  Right, if you compromise.  Or another

3  possibility is, if Your Honor or the judge upstairs has decided

4  that it's X billion dollars that's going into the trust, that

5  that's sufficient, a determination Your Honor's going to have

6  to make, no matter what, because of 1054, that the wildfire

7  victims are being paid in full -- it could be set up so that

8  the ultimate distribution mechanism of that X billion dollars

9  is something that's done by the trustee who's appointed to

10  manage that trust.

11       So it could be done after the fact, by the trustee,

12  working with the TCC and potentially the reorganized debtors,

13  or it could be done in advance if there's no agreement on how

14  it's done in advance.

15       THE COURT:  But every time you say "agreement", I'm on

16  board.  But what if there's no agreement?  And let's take

17  our -- let's take our minority -- let's say you get class

18  acceptance of the fund --

19       MR. ORSINI:  Um-hum.

20       THE COURT:  -- under a cap, and the minority -- a

21  smaller number of victims say, "I want my jury.  I want an

22  Article III judge to determine the distribution component."

23  When does that happen?

24       MR. ORSINI:  When does that happen?  Post-

25  confirmation, Your Honor.

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  And in what context?  In other words, if a

2  jury or an Article III judge determines the entitlement,

3  somebody then -- isn't it just a pure mathematical calculation

4  of what the distribution is?

5    MR. ORSINI:  Yes.

6    THE COURT:  Well, so it --

7    MR. ORSINI:  If --

8    THE COURT:  -- it could be done by an ATM machine.

9  No, I mean, it's --

10    MR. ORSINI:  Well, it'll --

11    THE COURT:  Could be done by computer.

12    MR. ORSINI:  It'll be done -- it'll be done by the

13  trustee.  That'll be part of the trustee's role.

14    THE COURT:  I know, but it's just a -- it's just a

15  pure math calculation.  It's --

16    MR. ORSINI:  At that point it is.

17    THE COURT:  It's -- the numerator is how many

18  claimants and the denominator's how much money you have.  End

19  of story, right?

20    MR. ORSINI:  Well, no, I think it's more complicated

21  than that, Your Honor.  I think -- because the trust will

22  ultimately be funding the claims of disparate sets of wildfire

23  plaintiffs, some of whom lost an outbuilding that wasn't

24  insured, some of whom lost a house.  Someone may have --

25    THE COURT:  Well --

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  -- lost a home that's worth X dollars --

2          THE COURT:  Right, but that's -- we're back to our --

3     there's separate analysis per fire and then per --

4          MR. ORSINI:  I think this is a slightly different

5     issue --

6          THE COURT:  Okay.

7          MR. ORSINI:  -- Your Honor.

8          THE COURT:  All right.  Maybe it is.

9          MR. ORSINI:  There's the issue of the different

10    situations fire by fire.  But then for each fire, you're going

11    to have potentially thousands, depending upon the size of the

12    fire, of differently situated claimants --

13         THE COURT:  Yes.  Okay.

14         MR. ORSINI:  -- who post-confirmation will be able to

15    go to the trust that's been created based upon your estimation,

16    and they will be able to accept either the immediate cash

17    payout based on a matrix that the trustee approves --

18         THE COURT:  Okay.  No, I understand your point.

19    Then --

20         MR. ORSINI:  Yeah.

21         THE COURT:  Then -- so for Victim A, you say, you only

22    lost a --

23         MR. ORSINI:  Right.

24         THE COURT:  -- broken-down trailer.  And, Victim B,

25    you suffered the loss of your home, and your personal injuries

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    and all these other things.  And you have a different number to

2    put into the matrix.  And then that -- those two victims are

3    given a choice:  take that money or wait and --

4            MR. ORSINI:  Have a trial.

5            THE COURT:  -- have your claim -- whether it's

6    superior court or district -- I got you.

7            MR. ORSINI:  Right.

8            THE COURT:  Okay.

9            MR. ORSINI:  Okay?

10           THE COURT:  All right, well, why don't we let the

11   other people speak, because this isn't --

12           MR. ORSINI:  Do you want to hear --

13           THE COURT:  -- exactly the way --

14           MR. ORSINI:  Do you want to hear me on what is

15   personal injury and what is not, or should I wait to address

16   that in rebuttal?

17           THE COURT:  Well, I think I know that the issues are

18   there, and I read it in the briefs.  I -- I mean, I understand

19   your point.  Why don't -- I mean, I -- I guess -- look, I don't

20   know that it's a decision I have to make today.  In other

21   words, I -- do you think I do?  I mean, if I -- you've

22   virtually stated that your opening proposal is your motion for

23   estimation.  But if I were to say, "Fine, I'm going to grant

24   it," that doesn't mean it kicks into play; it means we have a

25   discussion about the details.

(970) 834-0601 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1     MR. ORSINI:  And that's why we called it an

2  estimation-procedures motion, Your Honor.  That's exactly

3  right.  I agree with that.

4     THE COURT:  Well, I understand, but I don't think

5  that --

6     MR. ORSINI:  I don't think you have to reach this

7  issue today, because ultimately, however the Court defines the

8  box of personal-injury claims, whether it's as broad as they

9  argue or as narrow as we argue --

10     THE COURT:  Well --

11     MR. ORSINI:  -- that relates to the judicial- --

12     THE COURT:  Yeah.

13     MR. ORSINI:  -- officer question.

14     THE COURT:  I mean, let me give you a preview of

15  coming attractions, okay?  I'm going to -- I'm going to rule

16  one way or the other on the exclusivity.  I still have to

17  address today's motion for estimation.  And I'm going to rule

18  one way or the other on relief from stay.  I don't think, if I

19  were to grant the motion for relief from stay, we table the

20  estimation.  I think you've agreed -- I think most of the

21  lawyers probably agree.

22     So to me, the issue that standalone is estimation --

23  and we hear these discussions and then we probably have to have

24  a further hearing after there's some meet-and-confer and people

25  start to talk about it.  I mean, I can say I don't think I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   should do this or I do that, but I don't -- I'm not prepared to

2   make anything concrete.  In other words, obviously, if I'm

3   persuaded to grant relief from stay, that's going to influence

4   the estimation decision.

5            So I would anticipate a hearing in the very near

6   future, to discuss the mechanics of estimation with details

7   like, okay, when's the briefing going to be on this, when's the

8   pre-trial, when's the discovery, et cetera, et cetera.

9            MR. ORSINI:  Um-hum.

10           THE COURT:  Okay, I hope that's clear enough for now.

11           MR. ORSINI:  I understand, Your Honor.

12           THE COURT:  I think it's -- is it consistent with your

13   understanding?  You didn't go expecting to come out of here

14   with your scheduling order for estimation, did you?

15           MR. ORSINI:  I understand there're still issues to be

16   discussed, Your Honor.  Thank you.

17           THE COURT:  Well, but I'm not making light of this.

18           MR. ORSINI:  No, no, I understand --

19           THE COURT:  There are --

20           MR. ORSINI:  -- very much what you're saying.

21           THE COURT:  -- a number of issues -- the fact that I

22   have the questions -- I mean, I suspect other people have

23   questions of, okay, even if there's an estimation, what are we

24   doing about all these other things?  And many of the opposing

25   papers certainly teed up the question.  I didn't make them all

(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corp., Pacific Gas and Electric Co.

1   up.  I read many of the papers filed by other people.

2            MR. ORSINI:  Understood, Your Honor.  And --

3            THE COURT:  Okay.

4            MR. ORSINI:  And it comes back to what was our purpose

5   in filing the motion --

6            THE COURT:  Yeah.

7            MR. ORSINI:  -- which is --

8            THE COURT:  Fine.

9            MR. ORSINI:  -- we have to get moving.  And so --

10           THE COURT:  I agree.

11           MR. ORSINI:  -- I think we're on the same page.

12           THE COURT:  Okay.

13           MR. ORSINI:  Thank you, Your Honor.

14           THE COURT:  Let's see.  So, OCC.  Sorry, we -- I took

15  a lot of Mr. Orsini's time, but --

16           MR. LEBLANC:  Yeah.

17           THE COURT:  -- this is important.  So --

18           MR. LEBLANC:  Yes, Your Honor.  Andrew Leblanc of

19  Milbank Tweed -- Milbank -- sorry -- on behalf of the official

20  committee.

21           Your Honor, I'll be brief because you did --

22           THE COURT:  You can go back with your old name if you

23  want to.

24           MR. LEBLANC:  Well, not a fight to have with Your

25  Honor about that.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1       I'll be brief because Mr. Orsini did cover a lot of

2  it, and I want to mainly respond to Your Honor's -- any

3  questions that Your Honor may have for us.  But our role here,

4  and this has been discussed over the last several hearings --

5  we are -- we're truly stewards of this process, trying to get

6  the process right, to move this forward.

7       To be clear, the July -- or the June 30th deadline has

8  a lot that's playing in this.  But there are other components

9  of -- even before AB 1054 was passed, there was an absolute

10 need for us to process through this case as quickly as

11 possible.  And the debtors' motion is an effort to do that.

12 And nobody meaningfully disagrees with that.

13      And here I think it's impossible to not talk about the

14 two motions that are on for hearing --

15      THE COURT:  Um-hum.

16      MR. LEBLANC:  -- together, because you really do have

17 in some respects a choice, at least as it relates to the Tubbs

18 question as to whether or not you use the process proposed by

19 the tort-claim committee and the individual plaintiffs and the

20 subrogation claimants, of going to state court, or you do so

21 through the estimation process.

22      And we have to keep in mind -- keep our eye on the

23 ball here, and that is, yes, we have a June 30th deadline.  We

24 also need to process these cases so that people can get money.

25 And that's been our mantra from the beginning, trying to push

PG&E Corp., Pacific Gas and Electric Co.

1   this process as quickly as possible, within the bounds of

2   reason, to try to get to a resolution.

3         We have real concerns about the lift-stay motion as an

4   alternative to an estimation proceeding.  And the concerns

5   there Mr. Orsini began to talk about, and Your Honor, I think,

6   also talked about it a little bit:  what everyone concedes on

7   their side.  But in the best of circumstances, they get to what

8   looks like a four-week trial starting sometime in January,

9   after which you get a jury verdict, which can go one of two

10  ways with respect to the liability:  either PG&E wins, in which

11  case it literally has resolved nothing in these cases, because

12  I'm certain that the TCC and any individual plaintiff would say

13  that they would not -- they would view themselves as still free

14  to challenge that.  They wouldn't be bound by that decision

15  if --

16         THE COURT:  Oh, would they be?

17         MR. LEBLANC:  Well, I think, as a matter of law, they

18  would not be.  And so --

19         THE COURT:  Okay.

20         MR. LEBLANC:  -- it would resolve --

21         THE COURT:  Okay.

22         MR. LEBLANC:  -- literally nothing if they lost.  But

23  if -- even if they won, even if the litigants in that case won

24  against PG&E, you then would have a liability determination,

25  but you still would have to start a process for estimation for

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    the thousands and thousands of claims that are not part of that

2    preference process.  And nobody on that side --

3           THE COURT:  Well, but you --

4           MR. LEBLANC:  -- disputes that.

5           THE COURT:  I mean, again, we're really kind of more

6    on the relief from stay.  But if a jury, whether it be the

7    original eight people that the TCC asked for, or I think the

8    count was up to thirteen when the --

9           MR. LEBLANC:  Thirteen.

10          THE COURT:  -- when the subro and then a number of

11   other people weighed in.  Doesn't matter.  Some number of

12   jurors whacked PG&E big-time.  I suspect PG&E would get the

13   message.  And that might influence a more active discussion, if

14   not a principle of a claim preclusion --

15          MR. LEBLANC:  It may --

16          THE COURT:  -- or, no -- or issue --

17          MR. LEBLANC:  Well, no --

18          THE COURT:  -- issue preclusion.

19          MR. LEBLANC:  Issue preclusion, at least with respect

20   to liability.  But there'll be no --

21          THE COURT:  Correct.

22          MR. LEBLANC:  -- determination by that jury, as to the

23   damages for any of the other --

24          THE COURT:  No, I --

25          MR. LEBLANC:  -- thousands of claimants.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  No, I understand.

2      MR. LEBLANC:  And so my point is simply this:  that

3  even in the best of worlds, if that trial concludes itself in

4  February -- and again, in the best of worlds for them, they

5  prevail in that trial --

6      THE COURT:  Um-hum.

7      MR. LEBLANC:  -- you then have to start an estimation

8  process with respect to the thousands of other claimants in

9  this case, which means that you are starting an estimation

10  process, at the earliest, in sort of the March --

11      THE COURT:  No --

12      MR. LEBLANC:  -- time frame.

13      THE COURT:  I understand.

14      MR. LEBLANC:  And the point there, Your Honor, is

15  simply that we don't have the luxury of that time, not only

16  because of AB 1054.  Even if that wasn't there, none of us want

17  this case to linger past another fire season -- or into another

18  fire season, to create the risk and uncertainty of

19  distributions to everybody.  And nobody thinks that this

20  case -- and us included, and the TCC, I'm certain, included,

21  thinks that distribution should not be made before the end of

22  next year or sometime thereafter, to all of the individuals who

23  are owed money, both the victims and the unsecured creditors at

24  large.  And that's what that process would necessarily set up.

25      And so in our mind, Your Honor, the -- and everybody

(970) 701-311  operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    cited to the fact that estimation is mandatory if you make the

2    conclusion that liquidation would unduly delay.  And that's the

3    choice that --

4            THE COURT:  I don't think anyone --

5            MR. LEBLANC:  -- you have, and --

6            THE COURT:  -- has really argued that piece of it;

7    have they?  I don't --

8            MR. LEBLANC:  I'm sorry, Your Honor?

9            THE COURT:  I don't believe any of the papers made

10   that argument.

11           MR. LEBLANC:  No, I think everyone -- every one that I

12   read said that, under 502(c) --

13           THE COURT:  Yeah.

14           MR. LEBLANC:  -- it's manda -- "shall" --

15           THE COURT:  Right, right.

16           MR. LEBLANC:  -- "shall estimate".

17           THE COURT:  No, I'm agreeing.

18           MR. LEBLANC:  Right.

19           THE COURT:  I'm just --

20           MR. LEBLANC:  Okay -- yeah.

21           THE COURT:  I'm just restating it.  I read --

22           MR. LEBLANC:  Oh.

23           THE COURT:  -- a lot of briefs.  And certainly if

24   there's a lawyer in this courtroom that believes that the

25   record reflects that there can't be an estimation because the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    predicate isn't there --

2           MR. LEBLANC:  Right.  Well --

3           THE COURT:  -- I'll listen to them.

4           MR. LEBLANC:  And that's my point, Your Honor.  Even

5    with respect to Tubbs, when you walk through the best-of-worlds

6    scenario for them with respect to the lift-stay motion in

7    Tubbs, it proves the point that, in the circumstances of this

8    case, both with the deadline but, more importantly, with the

9    need to resolve this case and to get the money out -- that that

10   would unduly delay these cases, under these circumstances.  And

11   we can't afford that.

12          And so when Your Honor -- Your Honor, in our view, has

13   to consider, as it relates to the estimation of liability, the

14   two proposals:  either have that resolved at the state-court

15   level for a handful of people, in a way that may or may not be

16   preclusive, or do it through a collective action.  The entire

17   purpose of a bankruptcy process is to have this collective

18   action.  There's really no choice as between the two.

19          And so --

20          THE COURT:  And -- yeah; no, I understand.  So from

21   the committee's point of view, you agree with Mr. Orsini that I

22   ought to tee up the inverse-condemnation issue earlier?

23          MR. LEBLANC:  We -- Your Honor, we --

24          THE COURT:  You think it can be done before the claims

25   deadline?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. LEBLANC:  Right.  We didn't take issue with that

2   portion of their proposal.  I think you could do it in a number

3   of different ways.  We've heard Your Honor.  We may have taken

4   issue with that when it was proposed, but we've also heard Your

5   Honor say several times that -- and I don't want to -- again,

6   not to make light of it, and I think Your Honor even said it

7   today, that's a boxed issue.  You can put your arms around that

8   issue.  It's a pure issue of law.  It's not a -- it's not a --

9   it's not a --

10          THE COURT:  Yeah, I didn't say it's a hard -- that

11  it's an easy issue.  Some on the other --

12          MR. LEBLANC:  I agree.

13          THE COURT:  -- side think it's a no-brainer.  I don't

14  know that.  But my question is, do you think I could do it

15  before the claims bar date?

16          MR. LEBLANC:  I -- we do think you can do it before

17  the claims bar date, Your Honor.  The people who -- the issue

18  of the claims bar date is just one of individual claimants

19  being given the opportunity to file.  We think that's a due-

20  process question only.  And there's no question that people are

21  on notice of the existence of this case.

22          THE COURT:  Well, but there may be some people that

23  aren't on notice because they are just now learning about the

24  claims bar date.  And so I guess my question -- sure, we have

25  well-represented -- two committees:  one official committee and

PG&E Corp., Pacific Gas and Electric Co.

1  one ad hoc committee, of -- two together represent a vast

2  number of victims of this fire.  And they know.  But if there's

3  a victim out there somewhere who shows up on October 20th, I

4  guess I have to make sure that, if I've made a ruling,

5  particularly if it's adverse to the side of the victims and

6  favorable to PG&E -- I mean, I'm not worried about PG&E not

7  having notice; I'm worried about is it proper to rule in favor

8  of PG&E if they persuade me, when even one claimant didn't even

9  know about it?

10         MR. LEBLANC:  Right.  We believe --

11         THE COURT:  That --

12         MR. LEBLANC:  We believe it is -- as a matter of due

13  process, we think there is adequate notice.  There is a cadre

14  of certainly Northern California's, California's, and probably

15  the nation's, best plaintiff's lawyers who are aligned on that

16  side, are even sitting in this courtroom.  They're all aware of

17  it.  There will be --

18         THE COURT:  No, I know they are.

19         MR. LEBLANC:  -- adequate representation.  But, Your

20  Honor, we've also suggested in our papers -- because, Your

21  Honor, we had understood Your Honor to ask that question more

22  directly about the Tubbs consideration, because that's a fact

23  issue as opposed to the --

24         THE COURT:  Oh, yeah.  Well, the Tubbs is much diff --

25         MR. LEBLANC:  -- inverse condemnation, which is a pure

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp., Pacific Gas and Electric Co.

1    issue of law.

2            THE COURT:  Right.

3            MR. LEBLANC:  But with respect to either of them, if

4    Your Honor made the decision to delay those decisions until

5    the -- and I think, from the Tubbs perspective, what the

6    debtors have proposed is an early October trial.  If that were

7    delayed by a few weeks, as long as we can have -- and I think

8    even the subrogation -- and I know this to be true; even the

9    subrogation claimants are looking for an estimation of the

10   totality of it, in the January -- in the December-to-January

11   time frame.

12           THE COURT:  Yeah.

13           MR. LEBLANC:  So even if Your Honor gave some

14   flexibility to that schedule, to allow the bar date to pass, to

15   avoid any concern about that one claimant out there who isn't

16   represented by one of the lawyers who's involved in the case

17   today, that would be fine.

18           THE COURT:  Look, I --

19           MR. LEBLANC:  We don't think you have to do that,

20   though.

21           THE COURT:  Look, I -- my problem here is I can't

22   solve the problem by pretending that some victim is going to

23   surface on October 21st, and tell him, "By the way, on October

24   24th we're having a hearing on inverse condemnation."  That's

25   not due process.  I mean, if I'm denying it, I'm denying it

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp., Pacific Gas and Electric Co.

1    either way.  The question is -- and it seems to me that the

2    fact that the official and ad hoc committees are very much in

3    play in the discussion, and all of their aligned fellow

4    colleagues are too -- I don't worry about that.  I -- it's just

5    a question of how to make it all schedule -- and --

6                    MR. LEBLANC:  Yeah.

7                    THE COURT:  And the bigger question on the estimation

8    is this thing that I just talked to Mr. Orsini about:  who's

9    going to do the estimating?

10                   MR. LEBLANC:  No, no, I understand --

11                   THE COURT:  Okay.

12                   MR. LEBLANC:  -- Your Honor.  And that -- I think,

13   we've obviously offered our view on that in our papers, and I

14   do think that what the debtors have proposed with the -- a

15   period of time before there's a scheduling conference or status

16   conference, during which the parties can meet and confer.

17                   And I think what's important, Your Honor, is if you

18   render a decision today that says we are going to have an

19   estimation process of all of these things, we're going to do it

20   in the way the debtors have suggested or tweak it a little bit,

21   either we're going to consider inverse condemnation as part of

22   phase 2 or do something different than that, and Your Honor

23   reaches the conclusion that you're not going to lift the stay

24   with respect to those other proceedings, then the parties --

25   recognizing that that process is going to happen, the parties

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    will come together to try to figure out how to make that

2    process work.

3              Failing that, of course, Your Honor can enter rulings,

4    but I think if everybody knows that's the process we're going

5    to use and we're not going to use an alternative process of a

6    lift-stay, the parties will come together and figure out --

7              THE COURT:  Okay --

8              MR. LEBLANC:  -- how to make that work.

9              THE COURT:  -- that's fine.  And I'm not going to

10   waste anyone's time today to get down into the nitty gritty

11   of --

12             MR. LEBLANC:  Right.

13             THE COURT:  -- what's going to happen on October 7

14   versus October something else in this thing.  That's too much

15   of a --

16             MR. LEBLANC:  I think everybody --

17             THE COURT:  -- granular, at the moment.

18             MR. LEBLANC:  -- will tell you -- even those that

19   oppose the motion will tell you that if you rule in that way,

20   the parties will come together and figure out --

21             THE COURT:  The bigger question is --

22             MR. LEBLANC:  -- how that's going to work.

23             THE COURT:  -- the obvious one of whether I can do it

24   and, if not, who should do it and so on.  Okay.

25             MR. LEBLANC:  Correct.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1        THE COURT:  All right.

2        MR. LEBLANC:  And I've used more of my time, Your

3   Honor --

4        THE COURT:  Well, I know, but I'm --

5        MR. LEBLANC:  -- so thank you.

6        THE COURT:  -- I'm the one that's using it up for you.

7   Thanks very much.

8        MR. LEBLANC:  I appreciate your time --

9        THE COURT:  Okay.

10       MR. LEBLANC:  -- Your Honor.

11       THE COURT:  Mr. Bennett, are you going to speak?

12       MR. BENNETT:  Rather than to repeat what others said,

13   I'll save my time for rebuttal.

14       THE COURT:  Rebuttal?  But --

15       MR. BENNETT:  After the -- after the opposition.  The

16   reply.

17       THE COURT:  You mean, well, you -- well, you're

18   sharing with Mr. Orsini on the rebuttal?

19       MR. BENNETT:  Yes.

20       THE COURT:  Okay.  All right.

21       And, well, is there -- was there another third party

22   that wanted to be heard on -- in the motion?

23       Yeah, okay.

24       UNIDENTIFIED SPEAKER:  Yes, Your Honor, the ad hoc

25   bond group.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1            THE COURT:  Right.

2            MS. CRAWFORD:  Good morning, Your Honor.  Ashley

3   Crawford, Akin Gump Strauss Hauer & Feld on behalf of the ad

4   hoc --

5            THE COURT:  Good morning, Ms. Crawford.

6            MS. CRAWFORD:  -- committee of senior unsecured

7   noteholders.

8            Look, Your Honor, I think the last question that you

9   just discussed -- and I hope Mr. Leblanc is correct that if

10  Your Honor were to rule in favor of estimation that the parties

11  could come together and figure out some of these critical

12  issues that we've been talking about today, but I think we put

13  something together in our papers that I think actually is

14  really the only path to potentially avoid a number of these

15  legal issues that will ultimately get to the goal that you

16  started the hearing with yesterday, which is to find a way to

17  make the bankruptcy process work, to get the wildfire victims

18  the recovery that they deserve, properly and promptly.

19           All parties agree that the estimation is going to have

20  to happen, here, and I think all parties have agreed that this

21  Court could conduct those estimation proceedings jointly with

22  the district court.  And we think that that is the path that

23  has a number of benefits to this Court.  Number one --

24           THE COURT:  Do you mean in phases or the two-judge

25  approach?  What do you mean, you know --

PG&E Corp., Pacific Gas and Electric Co.

1    MS. CRAWFORD:  I think that you could do all of the

2   phases with the two-judge approach.  I don't think it it's

3   necessarily required.

4    THE COURT:  Do you know who my seatmate is going to

5   be?

6    MS. CRAWFORD:  I don't.  I think it would be done by

7   the district-court assignment procedures, Your Honor.  But I --

8   this has been done before.  They did this in the H. Robbins

9   (ph.) case.

10    THE COURT:  Well, I know of that, but it was a little

11   different then.  I know.

12    MS. CRAWFORD:  I think that's right, Your Honor,

13   but --

14    THE COURT:  Yeah.

15    MS. CRAWFORD:  -- I think that there are a lot of

16   issues that we've talked about.  There will be, potentially,

17   long litigation and even appeals over whether or not certain

18   types of emotional distress claims are considered personal-

19   injury --

20    THE COURT:  But what I said --

21    MS. CRAWFORD:  -- tort claims here.

22    THE COURT:  -- to you before is if there's going to be

23   appeals, then there are all sorts of consequences or not.  I

24   mean, because if there's an appeal, then there's the question

25   of stay pending appeal, and if there's a stay pending appeal,

PG&E Corp., Pacific Gas and Electric Co.

1    then we might as well -- you know.  Well, here's a -- here's a

2    pure question for you.

3            MS. CRAWFORD:  Um-hum.

4            THE COURT:  Suppose a district judge and a bankruptcy

5    judge are sitting together and make a decision and the district

6    judge makes the decision, where does the appeal go?

7            MS. CRAWFORD:  Well, I think, it -- Your Honor, it

8    would go the Bankruptcy Appellate Panel, correct?

9            THE COURT:  No, come on.

10           UNIDENTIFIED SPEAKER:  No.

11           THE COURT:  Here is -- here is your assigned

12   bankruptcy judge.  Next to me is my assigned district judge.  I

13   won't give this judge a name, I'll just identify.  And this

14   judge announces:  you know, Orsini is right.  The inverse-

15   condemnation rule is toast.

16           Now, I suspect that a few people won't like that

17   ruling.  Where do they appeal it?  I don't -- listen, I don't

18   know the answer.  I assume they appeal to the Ninth Circuit.  I

19   don't know what -- I assume, for example, in a more typical

20   case, if a district judge withdraws the reference for any

21   number of reasons --

22           MS. CRAWFORD:  Um-hum.

23           THE COURT:  -- the appeal is to the court of appeals.

24   There is --

25           MS. CRAWFORD:  Right.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  -- no procedure that I know of that an

2 Article III judge's decision is appealed to his chamber-mate

3 down the hall.  I don't think that happens.

4      MS. CRAWFORD:  Correct.

5      THE COURT:  And clearly, if the bankruptcy judge makes

6 a decision, the appellant has an option.  Obviously, it would

7 presumably go to the district judge in that fact.  And I don't

8 know the answer.  But to me, the point is that whether I'm

9 doing it or the district judge is doing it, if there's an

10 appeal and a stay pending appeal, then we can, I presume, not

11 assume, that anybody can make the deadlines for, maybe, 1040 --

12 1504 -- 1504.  Whatever the number is.  1054.  I could be wrong

13 about that, but it's -- to me, it's one of the imponderables

14 about can this all work on the kind of time schedule that we're

15 on?

16      Which is the same is true in the state court, as you

17 read in the papers, that if there's an a -- if I grant relief

18 from stay and a -- there's an appeal filed in the state court,

19 what do -- what do we do with the process here?

20      Anyway, go back, Ms. Crawford, to what you were

21 saying.

22      MS. CRAWFORD:  Sure, and the -- my point, Your Honor,

23 is that I think that we avoid all -- a number of the legal

24 issues that could lead to an appeal, whether Your Honor makes

25 the decisions here with respect to, for example, whether or not

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    emotional distress claims are personal-injury torts or not.

2    Because it -- and if you're bifurcating the proceedings where

3    you conduct some portion of the estimation proceedings and the

4    district court conducts some portion of the estimation

5    proceedings, I do think, Your Honor, that the point is that you

6    do potentially avoid some of those appellate risks because you

7    don't have to make those decisions if you sit jointly together

8    to conduct the --

9            THE COURT:  Yeah, I don't --

10           MS. CRAWFORD:  -- estimation proceedings.

11           THE COURT:  I mean, I wish I could share your

12   optimism, but I don't because parties have the right to appeal

13   and we can't make them give that up unless they -- unless they

14   give it up as a matter of choice because they want to move

15   forward, but I -- it's not for me.  Trial judges don't get

16   involved in telling people the ramifications of their decision

17   on appeal.

18           MS. CRAWFORD:  No, Your Honor, and that's not my

19   point, that people would have to give up -- give up their

20   appellate right.  My point is that I think the debtors have

21   cited cases, we have cited cases, the TCC has acknowledged that

22   a joint proceeding is permissible in this --

23           THE COURT:  Oh, yes.

24           MS. CRAWFORD:  -- circumstance.

25           THE COURT:  I agree.

PG&E Corp., Pacific Gas and Electric Co.

1          MS. CRAWFORD:  That's simply my point, Your Honor --

2          THE COURT:  Okay.

3          MS. CRAWFORD:  -- and that you don't have to get to

4   some of these other issues.  You avoid the duplication of

5   having part of the proceedings conducted in this court, where,

6   potentially, Your Honor hears much of the estimation

7   proceedings and makes findings of fact and conclusions of law

8   to the district court.

9          THE COURT:  Yeah, I know, and that's cumbersome, too.

10  But at --

11         MS. CRAWFORD:  Right, and you --

12         THE COURT:  But at least there's no -- there's no

13  doubt about the appellate track that it -- but it doesn't -- it

14  doesn't lend itself to a quick disposition.  Right?  In other

15  words, imagine an issue that doesn't implicate the -- well, no,

16  that does -- that does implicate the non-core.  Sure, if we

17  take a traditional non-core matter, if I handle -- do that and

18  make a decision -- make a recommendation, which is what Judge

19  Parris said could happen --

20         MS. CRAWFORD:  Um-hum.

21         THE COURT:  -- what some of the papers here say.  It's

22  an alternative, it's just that it may be cumbersome.  And I

23  think you're arguing that the two-judge process is probably

24  more efficient than the two-step, proposed findings and

25  referral -- I mean decision by the district judge.

PG&E Corp., Pacific Gas and Electric Co.

1          MS. CRAWFORD:  Yeah, exactly, Your Honor.  I --

2          THE COURT:  Yeah.

3          MS. CRAWFORD:  -- think it's more efficient --

4          THE COURT:  Okay.

5          MS. CRAWFORD:  -- and it's -- it would be more

6     efficient than bifurcating --

7          THE COURT:  But more --

8          MS. CRAWFORD:  -- as well.

9          THE COURT:  -- even more efficient is to have a

10    district judge take the whole thing.

11         MS. CRAWFORD:  I suppose, Your Honor, but I --

12         THE COURT:  I'm not -- I mean, I'm not being cavalier

13    about this.  I mean, I -- it takes away this issue of multiple

14    steps for the one inquiry.  And --

15         MS. CRAWFORD:  It does, Your Honor, but I -- you said

16    from the beginning of this case that the most -- the core issue

17    in this case is resolving these wildfire claims.

18         THE COURT:  Um-hum.

19         MS. CRAWFORD:  And you ultimately will have to do a

20    number of things to make sure that these cases get through the

21    reorganization process.  And to take that process completely

22    away from you, I think, upsets that balance.  And there's --

23         THE COURT:  It may.

24         MS. CRAWFORD:  -- a way to do it --

25         THE COURT:  And you and I may think that I can solve

PG&E Corp., Pacific Gas and Electric Co.

1   all these problems, I just don't have the choice of making the

2   decision that I can make the decision.  In other words, it's

3   not my call.  But I appreciate your point on it.

4              MS. CRAWFORD:  Yes, Your Honor.  And you know, I

5   think, look, we will obviously work with the parties, depending

6   on the outcome of the hearing today if your decision is for

7   estimation, and propose this as an option because we do think

8   it's something that should be considered.

9              THE COURT:  Okay.  Thank you --

10             MS. CRAWFORD:  Thank you.

11             THE COURT:  -- very much, Ms. Crawford.

12             All right, are we ready for --

13             Mr. Julian, you're sitting in the first chair.  Are

14  you going to make the argument today?  Or -- I think we're

15  ready to go to your side.

16             MR. JULIAN:  Yes, Your Honor.  Well, let's see.  With

17  their forty-five minutes, we've gone an hour and twenty.  And

18  what I'd like to -- we've heard their arguments.  What I'd like

19  to do, since I have six requests from six different groups to

20  divide up our hour --

21             THE COURT:  Yeah, and I'll be -- I, obviously, will be

22  flexible with the time.  I'm the cause of taking a lot of time,

23  and we --

24             MR. JULIAN:  No problem.

25             THE COURT:  -- we're going to take as much time as we

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   need on these cases.  So --

2          MR. JULIAN:  Your Honor, may we have a five-minute

3   break, then, so I can organize that group?

4          THE COURT:  Well, let's make it ten so that people can

5   just, at least, have personal convenience.  Why don't -- well,

6   by that clock, we'll make it about, well, five after --

7          MR. BENNETT:  Thank you, Your Honor.

8          THE COURT:  -- 11.  Okay.  Thank you.

9          (Recess from 10:51 a.m., until 11:08 a.m.)

10          THE CLERK:  Court is back in session.

11          THE COURT:  My staff told me that some people are

12   having trouble hearing me.  I'll try to get closer to the

13   microphone.  And don't be bashful if you're in the courtroom

14   and you're not hearing me; you can wave and I'll do my best.

15          All right.  Mr. Julian, what's your pleasure?  And the

16   time is not rigid.  Obviously, I'm going to give you as much

17   time as the other side had appropriate.

18          MR. JULIAN:  Your Honor, what I'd like to do is make

19   up -- we have six other parties who are going to talk, most of

20   their time is limited.  Subrogated claimants will have about

21   fifteen minutes.  We have public entities, San Francisco.  I

22   think we can all accommodate them.  Mr. Singleton wants five

23   minutes.  We can all accommodate them.

24          My proposal is if we run over a little bit of what

25   Your Honor had in mind, that we can always take some time out

PG&E Corp., Pacific Gas and Electric Co.

1    of the Tubbs relief from stay because there's a great overlap

2    in what we're going to do today.

3             THE COURT:  There is.  I agree.

4             MR. JULIAN:  But what I would like to -- and for the

5    record, Robert Julian of Baker Hostetler appearing on behalf of

6    the official committee of tort claimants.

7             What I'd like to do, Your Honor, if I may start and

8    hand off a couple of the arguments to some of the lawyers who'd

9    like to speak because they have some important information to

10   convey to you.

11            THE COURT:  That's fine.

12            MR. JULIAN:  For my part today, I have a lot of time

13   that I would like to spend with you on the questions that you

14   asked Mr. Orsini with respect to estimation, scope of the

15   hearing, jurisdiction, and how you can handle this monster.

16            You have the unenviable responsibility to do something

17   that has not yet been done in mass tort bankruptcies, which is

18   to -- or this Court, I should say, has the responsibility to

19   estimate claims that have never been estimated in this type or

20   nature.

21            Let's face it, in the asbestos cases, the estimation

22   was done on the basis of very discreet and well-settled

23   settlement history for the three types of asbestos injuries:

24   mesothelioma, lung cancer, and asbestosis.  Actually, there

25   were two types of asbestosis:  serious and non-serious, which

PG&E Corp., Pacific Gas and Electric Co.

1   resulted in a nominal payment.  But still, there was a

2   well-determined settlement history that helped the parties

3   estimate.

4        And in the estimation of those claims, Congress made

5   sure the plans provided for recapitalization and of the

6   overwhelming support of the victims.

7        In the product liability cases, the cases have been

8   some for two compared to this; one issue in Dow Corning.

9        THE COURT:  One issue, yeah.

10       MR. JULIAN:  One causation issue.

11       THE COURT:  One causation.  And like the same with

12  your Dalkon Shield, right?

13       MR. JULIAN:  Dalkon Shield.

14       THE COURT:  Yeah.

15       MR. JULIAN:  As we identified in Exhibit B to our

16  estimation brief, each of these fires has twenty different

17  factual issues with respect to negligence:  prudent care of the

18  equipment, prudent policies dealing with the energization,

19  prudent hiring of inspectors and managers.  And there are

20  seventeen to twenty-one fires I count -- debtor says

21  twenty-one.  We sometimes lump it as seventeen because the Nuns

22  fire, which came within two blocks of my house, includes the

23  Norrbom fire, Kenwood, and others.  Five fires there.

24       So when you look at it compared to Dow Corning, you

25  have 400 of those issues when you multiple the 20 times the 20.

(970) 431-1 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    And I think we do ourselves a disservice in proceeding to talk

2    about any of my issues today that I want to talk to you about

3    without first understanding what exactly is involved in trying

4    or estimating an inverse-condemnation liability claim, question

5    one.

6          Question two, what exactly is involved in trying or

7    estimating negligence, nuisance, and trespass claims, all which

8    are different and have different damages as to the issues?

9          And so what I would like to do at this time, as part

10   of my case, is to have two lawyers, the co-lead counsel from

11   the North Bay fire cases come up and describe the issues that

12   their client's representing to this Court and their proofs of

13   claim on an inverse on the one hand and negligence, nuisance,

14   and trespass and some other claims on the other hand.

15         Not for the purpose, Your Honor, of explaining to you

16   that that issues have to be tried here, estimated here, like

17   they would be in a stay court, solely for the purpose of

18   identifying the factual and legal issues that would form the

19   basis for what I'm going to say in a moment about estimation

20   and the amount of time I need for discovery, were some claims

21   to be estimated in this court or the district court.

22         So without further ado, Your Honor, I would like to

23   ask --

24         THE COURT:  Well, before you ask them --

25         MR. JULIAN:  Yes.

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  -- just one question.  You heard my

2  colloquy with Mr. Orsini about what I've learned -- and I'm

3  sure you know well too -- from other cases on estimation.

4  There's this range of things that in discretion you do.  You

5  can do anywhere from the kind of percentage protection to many

6  trials to competing experts.  Do you agree that the trier of

7  fact, without deciding who that person is, does have the

8  discretion to set the ground rules for the estimation process?

9  DO you agree?  Or I mean, is that something that's an issue in

10  and of itself?  And I --

11    MR. JULIAN:  It's --

12    THE COURT:  And then I --

13    MR. JULIAN:  It depends.  And if I --

14    THE COURT:  Okay.

15    MR. JULIAN:  If I may answer it this way, first we

16  have to decide -- ask the question, what is the purpose of

17  estimation?  The Bittner case that you discussed with Mr.

18  Orsini, makes my case.  In Bittner, the issue was whether or

19  not the claimant's claims would be estimated at zero, a

20  hundred, or somewhere in between --

21    THE COURT:  Right.

22    MR. JULIAN:  -- for the purposes of voting.  And the

23  circuit court said, in Bittner, that the battle was whether or

24  not the amount of the claim would permit the shareholders to

25  control the voting in the case.  And then said, basically --

PG&E Corp., Pacific Gas and Electric Co.

1  I'm paraphrasing in my words -- if we get it wrong, no harm, no

2  foul.  Why?  Because they can always get whatever they want in

3  liquidation.

4         That's the difference between -- and now I'm answering

5  one of my questions, but I'll do it now before I call Mr. Pitre

6  up.  Your Honor, you've been doing this for forty --

7         THE COURT:  Don't remind me.

8         MR. JULIAN:  -- forty-five years.

9         THE COURT:  Longer than you have.

10         MR. JULIAN:  That's true.

11         THE COURT:  But not much longer.  Come on, I know what

12  you --

13         MR. JULIAN:  Not much longer.  I remember our

14  bankruptcy bar lunches had nine people in them when we

15  started -- when I started in '79.

16         THE COURT:  Yeah, we only had eight when I started

17  then we got you; you joined after that.

18         MR. JULIAN:  Yes, I did.

19         But in terms of feasibility in a typical case where

20  PG&E is going to get reorganized and live again and --

21         THE COURT:  Yeah, I mean, liquidation's not a real --

22         MR. JULIAN:  It's not.

23         THE COURT:  -- real good alternative here, right?

24         MR. JULIAN:  Yeah, all the contract claims and even

25  the tort claims are getting paid in full.  You made the point,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  and PG&E won, saying I'm going to send these cases down to

2  state court because you're going to pay them in full.  Who

3  cares?  Well, you didn't say "who cares", but that was the

4  effect of it.  And so --

5          THE COURT:  But as you remember, as much as the

6  victims in that case suffered their harms, it was very much a

7  small piece of the --

8          MR. JULIAN:  Yes.

9          THE COURT:  -- reason why -- it wasn't the reason why

10  the company was in bankruptcy, so.

11          MR. JULIAN:  So it is error, in my view, to cite

12  Bittner as controlling authority for estimation of how much

13  money is going to be paid to these victims because Bittner

14  specifically said, if it's for liquidation, no harm, no foul.

15  You know why?  Because the claim is going to ride through the

16  bankruptcy case, the Bittner claim.

17          THE COURT:  Now, Mr. Julian, in preparing for

18  today, --- before Mr. Orsini was even here, I mean, in the

19  courtroom -- in reading the briefs and thinking about it,

20  Bittner's just one of those seminal cases because it was one of

21  the first.  I didn't go back and re-read it and I didn't recall

22  one way or the other.  I think the statute got changed.  And

23  the statute now says -- I believe it's pre-Amendment 157,

24  wasn't it?  I'm pretty sure it was, but I could be wrong.  But

25  157 says what the estimation is for.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. JULIAN:  Yes.

2          THE COURT:  And so if Bittner -- I don't -- let me try

3   it this way.  I don't read the statute to say the estimation is

4   just for the purpose of voting.  It's for something else for

5   confirmation, so.  And I don't -- listen, I'm not trying to

6   discourage you from asking your co-counsel to come up here --

7   and I want to hear from them -- but this is not the first

8   hearing in the first day of a trial where they will talk about

9   all they're going to prove at trial.  The question -- and you

10  can help them -- is what are they going to prove at the

11  estimation hearing?  And for today's purposes, we don't even

12  know who's going to preside over that hearing, how long it's

13  going to take, what are the ground rules, but it's the

14  estimation hearing, not the trial, right?  And we agree on

15  that?

16          MR. JULIAN:  We agree on that --

17          THE COURT:  Okay.

18          MR. JULIAN:  -- and I stressed that to them.

19          THE COURT:  Okay.

20          MR. JULIAN:  And I can't answer any of those questions

21  without an appreciation of what really is involved in inverse;

22  and I have a big discussion on inverse --

23          THE COURT:  Okay.

24          MR. JULIAN:  -- about what you can and cannot do.  And

25  I need Mr. Pitre to come up --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  No, I -- they're welcome to be here.

2    MR. JULIAN:  Thank you, Your Honor.

3    THE COURT:  Okay.

4    MR. JULIAN:  So Frank Pitre of the Cotchett firm, Your

5  Honor, will --

6    THE COURT:  Mr. Pitre's been --

7    MR. JULIAN:  -- speak on behalf of the North Bay Fire

8  litigants.

9    THE COURT:  Mr. Pitre's been here before.  Good

10  morning, Mr. Pitre.  Nice to see you.

11    MR. PITRE:  Good morning, Your Honor.  It's a

12  pleasure.  I will apologize, I am not a bankruptcy lawyer.

13    THE COURT:  You don't have to apologize.

14    MR. PITRE:  I am a trial lawyer who does handle

15  personal-injury cases and practices in front of this

16  district --

17    THE COURT:  I know who you are.

18    MR. PITRE:  -- handling other types of cases.

19    THE COURT:  And I don't know you personally, but I

20  know your reputation, so.

21    MR. PITRE:  Well, thank you.

22    The question I had, Your Honor, is the question that

23  you started out with, with Mr. Orsini, which I think deserves

24  to be answered a little more clearly.

25    And that question was, assuming, Mr. Orsini, that this

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    Court rules that inverse condemnation is a viable claim under

2    California law -- assuming this Court says that inverse

3    condemnation applies to an investor-owned utility -- after

4    we've decided that, what do we try next on morning of day two?

5    And this is what I did not hear:  I want to know whether PG&E

6    will admit to liability on a factual basis; they admit that

7    they are liable under inverse condemnation for causing fires.

8    Take away the legal issue; the legal issue is a constitutional

9    issue.  It should not apply to an investor-owned utility; Court

10   rules, says it applies.

11          Now, we're on day two, what is the disputed factual

12   issue that is left and set aside damages?

13          THE COURT:  Mr. Pitre, I didn't -- I violated my own

14   rule.  I had a list of questions for Mr. Orsini, and I didn't

15   ask him the very question that you're asking.  And so I will

16   ask him, and you can ask him.

17          But I tell you what I think the answer should be, not

18   what it will be.  The answer should be, day two is where you're

19   up to put on your damage claim.  That the plaintiff -- or the

20   defendant, in an estimation trial, the debtor -- again, I don't

21   think estimation trials have plaintiffs and defendants, so I

22   have to get you out of that mindset.  I think the debtor says

23   I -- my equipment caused the fire and California law says I'm

24   strictly liable, so now it's up for the plaintiff or the

25   creditors or the TCC to tell me what their damages are.

PG&E Corp., Pacific Gas and Electric Co.

1          Now, Mr. Orsini, can differ with that, if he does, but

2     that's what I would think has to be the answer.

3          MR. PITRE:  I would love to get that answer

4     directly --

5          THE COURT:  Okay.

6          MR. PITRE:  -- from PG&E on -- if I heard what the

7     Court said -- that the second thing that happens on morning,

8     day two, we call our witnesses on damages.  Thank you.

9          THE COURT:  But --

10         MR. PITRE:  I would ask Mr. Orsini --

11         THE COURT:  But wait.  But wait.  Let me --

12         MR. PITRE:  -- to answer.  Yep.

13         THE COURT:  Let me clear on something to you --

14         MR. PITRE:  Yes.

15         THE COURT:  -- because I don't have your experience

16    with personal injury.  I took Prosser on Torts when I was in

17    law school before Mr. Julian was even thinking about going to

18    law school, and I was actually going to ask you when you were

19    in law school.

20         But my recollection is that a plaintiff has to prove

21    damages, and the most liable defendant in the world doesn't

22    have any liability if the plaintiff doesn't have any damages,

23    leaving aside other things.  So that means if we were at a

24    traditional trial and you were putting on your case, you would

25    put on your client's damages; my client lost his home, my

PG&E Corp., Pacific Gas and Electric Co.

1   client lost his house, my client lost his spouse.  And you

2   would prove that, and that would be the inquiry.

3         And the defendant has already admitted to liability

4   and has already been presented with an adverse ruling on the

5   legal question.  I would think that the debtor, also known as

6   defendant, could cross-examine your witness and could challenge

7   all the calculations of your client's damages.  But I don't

8   think there's anything left to try.  It's certainly in an

9   estimation trial based upon what he said about his client's

10  role of the -- the way they come out on the analysis.

11        MR. PITRE:  I agree with you.

12        THE COURT:  Okay.

13        MR. PITRE:  I agree with you.

14        THE COURT:  We'll ask him.

15        MR. PITRE:  But let's ask -- let's get the answer to

16  that question because I think that will help expedite where we

17  we're going.

18        THE COURT:  Mr. Orsini, do you want to change the

19  procedures here and just answer that question?  Am I wrong or

20  right on that one?

21        MR. ORSINI:  Respectfully, I think you're wrong on

22  that one, Your Honor.

23        THE COURT:  So what --

24        MR. ORSINI:  So --

25        THE COURT:  What are you putting on --

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  Couple things --

2          THE COURT:  -- on day two of the trial?

3          MR. ORSINI:  So if Your Honor determines that inverse

4    condemnation can apply to an investor on utility -- okay?

5          THE COURT:  Um-hum.

6          MR. ORSINI:  There are still questions as to whether

7    or not we are even liable under inverse condemnation.

8          THE COURT:  Okay.

9          MR. ORSINI:  Some of those --

10          THE COURT:  Okay.

11          MR. ORSINI:  Some of those are fire-specific and

12    involve a question as to whether or not the specific spot where

13    the fire started is a spot that was on lines built for the

14    public good or for a private good.

15          THE COURT:  Okay.  So we can stop right there.  So you

16    have some case in chief to put on in your --

17          MR. ORSINI:  Yes, Your Honor.

18          THE COURT:  So without getting into the

19    plaintiff/defendant, if you're the debtor, you're opening

20    argument -- if I'm the presiding judge and I decide we're going

21    to do it that way, you have to go first, whether you only have

22    two hours or two weeks, you have to put on more evidence than

23    what I thought was --

24          MR. ORSINI:  I think that's right, Your Honor, both

25    with respect to inverse condemnation, and we're still going to

(970)001-9110 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    have to deal with the negligence issues because there are

2    different damages --

3              THE COURT:  But --

4              MR. ORSINI:  -- that come with negligence.

5              THE COURT:  No, but it -- doesn't damages -- isn't

6    that what they have to prove, their damages?

7              MR. ORSINI:  Well, they have to prove their amount of

8    damages, Your Honor.

9              THE COURT:  Yeah.  Right.

10             MR. ORSINI:  But before they can prove their amount,

11   they have to prove entitlement.  And there are categories --

12             THE COURT:  But what --

13             MR. ORSINI:  -- of damages --

14             THE COURT:  But what do you have to prove?  That's

15   what I want to get.  So what I'm doing is bankruptcy magic

16   and --

17             MR. ORSINI:  Well, I --

18             THE COURT:  -- and turning the sequence around --

19             MR. ORSINI:  Right.

20             THE COURT:  -- and putting you up first.  So you were

21   up first, it's day one, and I've ruled that the inverse-

22   condemnation doctrine is alive and well, and I note that the

23   record is that you've conceded that your client's equipment

24   caused the fire -- the particular fire that we're talking

25   about.  What's your next proof?  That's really what I'm --

(972) 808-1111 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  Our next proof at that point -- and I'm

2     not going to get into whose --

3          THE COURT:  No.

4          MR. ORSINI:  -- burden of proof is it --

5          THE COURT:  No.

6          MR. ORSINI:  -- but whose -- what our next proof would

7     be -- what evidence would I then introduce?

8          THE COURT:  Um-hum.

9          MR. ORSINI:  If it's one of --

10          THE COURT:  Just general.

11          MR. ORSINI:  If it's --

12          THE COURT:  General category.

13          MR. ORSINI:  If it's one of the fires for which we

14     have this argument that the particular line doesn't qualify for

15     inverse, I'll give you evidence on that.  I'd also give you

16     evidence that even if this tree hit that line at that

17     particular point, we were not negligent --

18          THE COURT:  Okay.

19          MR. ORSINI:  -- in failing to remove that tree.

20          THE COURT:  Okay.  Then you're going to -- then if

21     we -- okay.

22          So, Mr. Pitre, I'm going to let Mr. Orsini down.  I

23     thought it was simpler; it's not.

24          MR. PITRE:  It is not, Your Honor.

25          THE COURT:  Without asking him to go for a long time

PG&E Corp., Pacific Gas and Electric Co.

1    that he believes he's got more things he can establish and --

2         MR. PITRE:  Well, that's pretty important, Your Honor,

3    because if somebody comes into this courtroom and says to this

4    Court that they can do this through an estimation process, I

5    think one of the issues that we need to grapple with is, what

6    are the disputed issues that are going to be part of that

7    estimation process on liability?

8         THE COURT:  But this is what we get back to my

9    discussion with Mr. Julian.  Congress didn't give us a lot of

10   guidance and it didn't -- it clearly didn't say that it's the

11   same thing you'd have if you were in a multi-week jury trial in

12   state court; it's not the same.  It's an estimation.  And

13   the -- as I read the cases, the trier of fact has enormous

14   discretion.  And they might say, Orsini gets one witness to

15   talk about maintenance of the lines; and you get one witness to

16   rebut that.  All we're doing is estimating.  Anyway --

17        MR. PITRE:  Judge --

18        THE COURT:  -- go ahead now with your -- I don't want

19   to --

20        MR. PITRE:  -- but here's the problem --

21        THE COURT:  Okay.

22        MR. PITRE:  -- what I just heard is there was not an

23   identification of any fire, any fire, for which PG&E would

24   admit liability in inverse condemnation.  That means, Your

25   Honor, that there are twenty-two separate fires for which there

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  will have to be a triable issue before this Court or some other

2  venue on whether or not a public improvement, an electrical

3  line, the conductors, a power pole, a transformer, a hook on a

4  transmission tower was the cause, a substantial factor in

5  causing real property and personal property damage.  Twenty-two

6  separate fires.

7          Your Honor, if there's one thing I know about the

8  rules of evidence, I cannot get an expert to get up on the

9  stand and say that I can tell you that there is causation in

10 twenty-two fires without having what I call "admissible

11 evidence":  observations from the people who were on the ground

12 who looked and saw the physical evidence, observations with

13 people who may have seen bits and pieces of where arching took

14 place so they can pinpoint the point of the fire, all those

15 people who assembled photographs and took them and can

16 authenticate them --

17          THE COURT:  Well, let me stop you.  What you're

18 telling me is, if there were no bankruptcy and this was your --

19 you were prosecuting for your plaintiff/client against Mr.

20 Orsini, your case in chief would have all that kind of stuff in

21 it to make your case, right?

22          MR. PITRE:  What PG&E is disputing --

23          THE COURT:  No, I --

24          MR. PITRE:  -- all of that.

25          THE COURT:  -- I understand.  I'm just --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. PITRE:  So --

2          THE COURT:  I'm agreeing with you --

3          MR. PITRE:  Sure.

4          THE COURT:  -- that's what you get, and I don't

5     know -- all I know is what I said before.  I think Congress

6     told us we have to make this estimation because when -- you're

7     making the case for what the statute said -- when there would

8     be a delay if we actually do the determination.  Estimation

9     will be an undue delay.

10         So if it's a delay for one individual who suffered med

11    malpractice in a case against a surgeon who's in bankruptcy,

12    then it is all the more an undue delay for tens of thousands of

13    people that have suffered the kind of tragedies that they've

14    suffered here.

15         All the -- that's -- unfortunately, that's all the

16    more reason why the estimation has to be a compressed best

17    judgment.  And Judge Perris in the case, and I believe the

18    judge in Corning -- yeah, Corning -- said the same thing, the

19    judge trial court has to err on the upside to protect the

20    victims.  But that's about all I know is what the guidance is.

21         MR. PITRE:  Judge, the victims aren't being protected

22    if PG&E has access to all the evidence, and PG&E has collected

23    that, and the tort victims --

24         THE COURT:  Oh, I know.

25         MR. PITRE:  -- haven't had any evidence.

PG&E Corp., Pacific Gas and Electric Co.

1        THE COURT:  I -- Mr. Pitre, I --

2        MR. PITRE:  So let's just go back --

3        THE COURT:  I don't disagree.

4        MR. PITRE:  I don't think expediency under the federal

5   rules in trying to get something done sacrifices due-process

6   rights of individuals to collect evidence --

7        THE COURT:  I don't disagree with you.

8        MR. PITRE:  -- to prove their case.

9        THE COURT:  The question --

10        MR. PITRE:  And --

11        THE COURT:  The question is, what is enough evidence

12   to prepare for an estimation trial?  And again, I wish I had a

13   magic formula to tell you I know.  I don't know the answer.

14        MR. PITRE:  And that's why, Your Honor, I think it's

15   premature to say we're going to have an estimation trial when

16   we don't know, and haven't had defined for us, the issues that

17   will be tried as to each individual fire.

18        So we could have an intelligent discussion to be able

19   to talk about what is necessary to allow people to have due

20   process to collect the evidence that is necessary to put on a

21   truncated trial, no matter where we go.  But right now, there's

22   no plan from PG&E that accounts for the fact that they intend

23   to dispute liability in inverse condemnation factually.

24        THE COURT:  Am I correct -- educate me on state law

25   procedure, or even in a federal court, civil -- there's no

PG&E Corp., Pacific Gas and Electric Co.

1  counterpart to this animal called estimation, is there, in

2  state or federal practice?

3          MR. PITRE:  Not that I'm aware of, Your Honor.

4          THE COURT:  I mean, maybe -- how about in class action

5  litigation?  Well, maybe -- it may be it's the threat of it.

6  But I mean, even in the most complicated class action that

7  involves -- particularly that involves personal injury -- and I

8  don't want to judge Brier and --

9          MR. PITRE:  Sure.

10          THE COURT:  -- the defective Volkswagens because they

11  were just cars.  But in a -- in some of the large cases that

12  you or your colleagues have been involved, there's no

13  counterpart.  502(c) exists all by itself in the bankruptcy

14  world, right?

15          MR. PITRE:  There's no counterpart --

16          THE COURT:  Yeah.

17          MR. PITRE:  -- to 502(c), however, in each and every

18  one of the instances this Court has just mentioned, admissible

19  evidence needs to be provided to --

20          THE COURT:  No, I know.  I know.

21          MR. PITRE:  -- whoever.

22          THE COURT:  I know.

23          MR. PITRE:  So the question, really, I think we're --

24  where, I think, we're perhaps missing one another is I

25  understand that 502(c) is a truncated process.  But I also

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    understand that the rules of evidence apply, even though it's a

2    truncated proceeding.  And the issue is if we're going to adopt

3    estimation as a process.  We're dealing with estimation dealing

4    with twenty-two separate fires --

5           THE COURT:  Yes, I understand.

6           MR. PITRE:  -- and all of the various factual evidence

7    that deals with causation in each and every one if, I

8    understand, that PG&E contests causation, substantial factor,

9    for inverse alone.  We haven't gotten to negligence.

10          THE COURT:  Yeah, we haven't even got to the next one.

11   No, I understand that.  So then -- but if Mr. Orsini and his

12   client threw in the towel on this issue and it was your job to

13   put on the plaintiff's case, if you will, but you had to do it

14   in this estimation construction, you don't have quite the need

15   for the kind of discovery you're talking about.

16          MR. PITRE:  Right.

17          THE COURT:  You still have to -- you have to be

18   prepared to prove up, again, in the aggregate, your client's

19   type of damages too.

20          MR. PITRE:  That is correct.

21          THE COURT:  Yeah.  Okay.

22          MR. PITRE:  And we would focus only -- Your Honor,

23   just so we can have it clear, when we talk about inverse, we're

24   talking about economic damages, we're talking about damage to

25   real property, damage to person property.  You're talking about

PG&E Corp., Pacific Gas and Electric Co.

1    things like reforestation.  There are -- they're all property.

2    They have nothing to do with non-economic damages --

3         THE COURT:  No, I know that.

4         MR. PITRE:  -- which -- and just for the Court's

5    information, when you look at the total damages that are being

6    estimated, about fifty percent are economic, about fifty

7    percent are non-economic.

8         The Tubbs case -- just to pick that case -- the

9    damages for Tubbs, economic and non-economic, are about

10   one-third of the overall value.  So when we are talking about a

11   process, even if we have just Tubbs, you still have two-thirds

12   of the overall evaluation that needs to be done to be able to

13   get valuation on a, what I call, global basis.  It's

14   information that has to be factored into because -- and Mr.

15   Kelly is going to talk about negligence and the impact that has

16   on any estimation proceeding -- what we're talking about is:

17   how do we estimate the whole in the most efficient way

18   possible?

19        Now, PG&E has put folks into a whipsaw.  On the one

20   hand, what they say is they want to start these trials right

21   away; on the other hand, they haven't given us any of the

22   discovery that's necessary to prove, even in a truncated

23   proceeding, what needs to be proved to establish causation and

24   liability.

25        So, Your Honor, I heard Mr. Orsini -- and I hate to

PG&E Corp., Pacific Gas and Electric Co.

1   get involved in a situation where it's he said, she said -- but

2   when Mr. Orsini says, we offered somebody 7.5 billion

3   dollars -- just to put that in context and just to deal only

4   with property damage -- what he's saying is, for the North Bay

5   Fire cases, if he looked only at their cost to rebuild, they

6   averaged -- according to his estimation numbers -- 250 to 300

7   dollars a square foot, which you cannot do anything in the

8   North Bay for less than 500 to 700 dollars a square foot.  That

9   has nothing to do with what's going on here.

10      What is going on here is very simple.  It's called

11  whip-sawing people by saying, I want a deadline to try cases,

12  not providing them any discovery, and then saying we're going

13  to have a truncated trial on twenty-two fires.  That cannot be

14  done.  That is not expediency that benefits the victims because

15  there're valuable rights to due process are being eradicated.

16      So I would just suggest that we proceed first with

17  understanding what needs to be tried, what needs to be done,

18  and then develop a plan in whatever venue that that shakes out

19  to be, but certainly not one that is before this Court today.

20      THE COURT:  Well, Mr. Pitre --

21      MR. PITRE:  I think Mr. Kelly needs to talk about --

22      THE COURT:  -- I wasn't going to suggest all the

23  details today.  This is why we're having this discussion.  But

24  I appreciate your comments.

25      MR. PITRE:  Thank you.

(979)994-3100 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  And, Mr. Julian, you said Mr. Kelly wishes

2  to be heard?

3    MR. JULIAN:  Yes, Your Honor.

4    THE COURT:  Okay.  Mr. Kelly?  Good morning.

5    MR. KELLY:  Good morning, Your Honor.  Michael Kelly,

6  Walkup, Melodia, Kelly & Schoenberger.  And I appreciate having

7  the opportunity to speak to the Court.

8    THE COURT:  Nice to have you.

9    MR. KELLY:  I wanted -- and I'm a P.I. lawyer.

10    THE COURT:  I know you are.

11    MR. KELLY:  And I actually --

12    THE COURT:  Yeah, same category as Mr. Pitre.  I

13  haven't seen you personally, but I know you by reputation.

14    MR. KELLY:  And I will not make an opening statement;

15  that isn't my purpose, wasn't why I came here.  But what I did

16  come here to do was to hopefully give the Court information

17  that is helpful in making decisions about timing and about

18  estimation and about fairness.

19    I sat here and I listened to people on the other side

20  talk about getting this done quickly and expediently.  But

21  fundamentally, this should be about doing it fairly and justly,

22  and I know this Court knows that.

23    And what we have here -- because I have been here

24  since the day after the fire.  I've been involved in the cases

25  for two years. -- we have had a consistent pattern of PG&E

PG&E Corp., Pacific Gas and Electric Co.

1   appearing and saying, we really want to take care of people,

2   and slow playing this case to a place now where they want to

3   compress and jam the victims into a position where they are

4   unable to prove their case.

5        Most telling about that is the estimation motion

6   itself, Your Honor, which made no mention of negligence.

7   Negligence has to be proved in this case, and I appreciate it

8   doesn't get proved -- as you have told both myself, Mr. Petri,

9   and the other people here -- as it would in a superior court.

10       But negligence is mandatory because to recover for

11  personal injury, negligence must be proven; that deals with

12  conduct, the conduct with the debtor.

13       THE COURT:  And what about if it's proven that it's

14  likely?  I mean, isn't that, again, the point?  Likely versus

15  not likely, I mean?  That's not very precise, but it's

16  something.

17       MR. KELLY:  Which is likely or not likely, Your Honor?

18       THE COURT:  That they were negligent.

19       MR. KELLY:  Yes, Your Honor, I understand.  You're

20  talking about whatever your burden of proof is for estimation.

21  But my point is this, that we have the burden of proof of

22  proving that they fail to exercise reasonable care in the

23  operation, the management, the maintenance, the control of --

24       THE COURT:  I think what I'm trying to tell you is the

25  same thing I said before.  I think we live in a different world

(972) 406-5880 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  under this 502 section, and it isn't the traditional rules.

2  And so you said you weren't going to make an opening statement,

3  and I understood what you were saying, but if we were at the

4  first day of trial of negligence, you would be laying out all

5  of the proof that you were going to put in, and it would be an

6  enormous amount of stuff, but you would make a prima facie case

7  of negligence.

8         And then it would be up to the defendant to show why

9  they weren't negligent, and six weeks later a jury or a court

10 would file, but under an estimation proceeding there is this

11 expedited process of convincing the trier of fact why you

12 should estimate one -- I don't -- I didn't make up the rules.

13        MR. KELLY:  No.  And I'm not --

14        THE COURT:  That's what we're stuck with.

15        MR. KELLY:  I'm sorry to interrupt.

16        THE COURT:  No.  You go ahead.

17        MR. KELLY:  I'm not suggesting the Court made up the

18 rules.  What I'm suggesting is that the deaths of the 130

19 people, their heirs are entitled to bring forth a case, whether

20 it is compressed or estimated, that includes every available

21 cause of action, and for death and for injury and for doubling

22 and tripling damage to forests and for doubling damage to

23 agriculture, negligence is a critical piece of what must be

24 proved.

25        And I need to tell you that we asked PG&E to tell us

(973) 406-2250 | operations@escribers.net | www.escribers.net

                 PG&E Corp., Pacific Gas and Electric Co.

1    in each case, will you agree that you agree to causation and

2    negligence for twenty-two fires?  We will not.  Will you agree

3    that you were negligent in twenty-two of these fires?  We will

4    not.

5              THE COURT:  I understand.  I understand.

6              MR. KELLY:  Will you agree that you will forego

7    damages?  We will not.  So now, we are faced with a defendant

8    who says we have to do a lot of chopping wood.  We haven't even

9    been giving any kindling, Your Honor.  We don't have a Presto

10   log, which I'm not even sure are still made.

11             THE COURT:  They're probably --

12             MR. KELLY:  That's what happens when you get out of

13   law school.

14             THE COURT:  -- politically incorrect to have them.

15             MR. KELLY:  Yes.  In 1976, we had them, Your Honor.

16             THE COURT:  Yeah, I know.  We tried to light them too.

17   I remember that, but --

18             MR. KELLY:  But the point is there is nothing for us

19   to chop.  I'm sure the vision of us swinging our axes at air

20   would be great for Mr. Karotkin or Mr. Orsini, but that's

21   really where they're putting the victim.

22             So this is my point, to tell us we're going to give

23   you nothing for two years, now we want you to have a compressed

24   estimation trial on every theory of action to entitle your

25   clients to the recoverable damages they're entitled to for

(979) 361-1800 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    nuisance --

2    THE COURT:  Well, again, I want to stop you, not

3    because I don't care about what you're saying.  I want to -- I

4    need guidance from both sides as to how -- and just for the

5    moment, pretend -- forget about district judges, and forget

6    about superior court -- how I'm supposed to go about my duty of

7    doing all the things you need to do, and at the same time,

8    carry out the message from the statute to make this estimate.

9    So and clearly, you need some evidence, and clearly, you

10   need -- and you shouldn't be held up from it, but what I can't

11   decide, because I don't know yet, what's enough evidence to

12   make up your case.  It's not what you --

13   MR. KELLY:  So --

14   THE COURT:  -- get to prepare your trial in superior

15   court.  And same with the defense, I mean, they have to

16   carry -- they have to establish a probability of their defense.

17   I don't know the answer.

18   MR. KELLY:  No.  And I wouldn't expect this Court to

19   know the answer without asking the question, and I appreciate

20   the question, but that --

21   THE COURT:  And I can ensure you a district judge who

22   knows less about bankruptcy than I do will have, I assume have

23   the same question.  He or she will have --

24   MR. KELLY:  I think these are the right questions,

25   Your Honor.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Yeah, they are.  I agree.  They are.

2          MR. KELLY:  Okay.

3          THE COURT:  Okay.

4          MR. KELLY:  Well, I'm glad you agree since they were

5  your questions.  I'm in --

6          THE COURT:  I can answer --

7          MR. KELLY:  -- sometimes in a parallel universe.

8  Currently, apparently, I'm a --

9          THE COURT:  Are you old --

10          MR. KELLY:  -- Habitrail wheel.

11          THE COURT:  Are you old enough to remember Carnac and

12  Johnny Carson because we --

13          MR. KELLY:  Of course I am, Your Honor.  If you hand

14  me a card, I will put it on my forehead.

15          THE COURT:  And we can give the answers.

16          MR. KELLY:  We can give the answers.

17          THE COURT:  Here's the answer.  What's the question?

18  All right.  Let's get --

19          MR. KELLY:  Your question must be in the form of an

20  answer.

21          THE COURT:  Let's get back to our assignment, Mr.

22  Kelly.

23          MR. KELLY:  Well, here's the question, which is what

24  is the most intelligent way for the Court to be able to

25  determine how much evidence is enough evidence.  I think the

PG&E Corp., Pacific Gas and Electric Co.

1   answer to that question requires to Court to know what are the

2   individual theories, what are the individual defenses?  This is

3   the first time we've had Mr. Orsini actually say, well,

4   actually, when we said we would admit causation, we weren't

5   admitting anything.  And admitting causation in inverse has

6   nothing to do with admitting causation in negligence, which is

7   a different thing, doesn't necessarily mean the equipment is

8   involved.  It has to do with people's conduct.

9          So a rational way to do this, it seems to me -- and by

10  the way, I believe two things can be equally true such as you

11  can begin an estimation process for damages while we try subs

12  liability and we determine these other questions.  There's no

13  reason we have to adopt the Orsini tri-phase, which, as I was

14  listening to it, doesn't even begin to get the victims who he

15  wants to have the money so soon until some cap trust is set up

16  in two years.  So --

17         THE COURT:  What would --

18         MR. KELLY:  Excuse me.

19         THE COURT:  What would --

20         MR. KELLY:  Only one year.  I hear Mr. Karotkin saying

21  it wasn't two.

22         THE COURT:  Well, I don't know.  I heard what -- it is

23  what it is.  But no, I understand.  We're going to talk more

24  specifically on the relief of stay, but I'm not -- they are --

25  how many times have we agreed?  They're all part of the same

PG&E Corp., Pacific Gas and Electric Co.

1    inquiry.

2         MR. KELLY:  So it seems to me the question is, what do

3    you deny?  What needs to be proved?  What do you deny?  How

4    many witnesses do you think it takes?  What proof and discovery

5    has to be done?  We could sit here, roll up our sleeves.  We

6    can hammer that out.  Now, you know --

7         THE COURT:  Right.  I think that's true.

8         MR. KELLY:  I don't think you can decide that off

9    these briefs.

10        THE COURT:  But, Mr. Kell -- well, that may be true.

11   But if I were to deny a relief from stay, we still have to

12   hammer it out.  It still has to be hammered out.  And you and

13   your clients still are entitled to fair treatment and due

14   process.  We just have to define how it's all executed.  That's

15   all.

16        I mean, I don't think I have an option there.  Of

17   course, I have an option to grant relief from stay, but even

18   your side has not said -- and we don't have an estimation

19   process.  I mean --

20        MR. KELLY:  Absolutely.

21        THE COURT:  Right.  So --

22        MR. KELLY:  And in fact, Your Honor --

23        THE COURT:  So --

24        MR. KELLY:  -- my question --

25        THE COURT:  Yeah.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1            MR. KELLY: -- you could grant relief to trial

2 liability and causation and we would get all this done

3 simultaneously. It is possible. It's actually been done.

4            THE COURT: Yeah.

5            MR. KELLY: Since -- there are hundreds of thousands

6 of lawyers working for the defense. We can get more than one

7 thing done at a time.

8            THE COURT: I know. But it -- but Mr. Julian made the

9 point is this kind of estimation hasn't been done before.

10            MR. KELLY: Well, it seems to me that if anybody could

11 figure it out, it would be you, especially with the help of

12 myself and Mr. Pitre because there has yet to be a problem that

13 one Italian and one Irishman and one smart person couldn't

14 solve.

15            THE COURT: Okay. That takes care of you.

16            MR. KELLY: I get it. Thank you, Your Honor.

17            THE COURT: So what if I have told you I'm Irish and

18 Italian?

19            MR. KELLY: Then I would say you overcame a remarkable

20 and difficult childhood.

21            THE COURT: But it's true.

22            UNIDENTIFIED SPEAKER: I'd like the record to be clear

23 that he made that same comment when I shared my ethnicity.

24            THE COURT: Mr. Kelly, I am Irish-Italian, and unlike

25 Mr. -- and like Mr. Orsini, both of our names end in I. So --

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1       MR. KELLY:  Is there where I tell you where an appeal

2  goes to whether it goes to bankruptcy or the Ninth Circuit.

3       THE COURT:  I wouldn't know.  I've never been

4  appealed.

5       MR. KELLY:  Well, and neither have I.  So we have that

6  in common.

7       THE COURT:  Mr. Kelly, what judges learn is that just

8  because you're reversed on appeal doesn't mean you were wrong.

9       MR. KELLY:  Right.  It's the same thing I think when

10 juries come back against me, Your Honor.

11      THE COURT:  Okay.  Mr. Julian, we're going to get back

12 to business here.

13      Who's next on your list?

14      MR. JULIAN:  I am, Your Honor.

15      I would like to address two, what I believe, are

16 straightforward legal issues that I believe I can resolve

17 rather quickly.

18      The phase 1 request by the debtors is for you to

19 determine whether the California Supreme Court would overturn

20 the California appellate court decisions.

21      THE COURT:  Right.

22      MR. JULIAN:  And they have misconstrued the Supreme

23 Court -- the U.S. Supreme Court case on that.  The U.S. Supreme

24 Court in West v. American Telegraph stated that when the state

25 supreme court has denied review of the appeal issue in

PG&E Corp., Pacific Gas and Electric Co.

1   question, the federal court may not address it.  They have

2   construed that case to say that when the state supreme court

3   has denied review, it's merely a data point as to whether the

4   federal court should decide what the supreme court would do.

5           Au contraire.  Here's --

6           THE COURT:  What about -- I can't keep track of all

7   the titles, the names -- the case involving San Diego Gas &

8   Electric that's on before the U.S. Supreme Court for cert?  Is

9   that the same issue or different issue.  I forgot the name.  It

10  was just in the brief.

11          MR. JULIAN:  It's a related but different issue to my

12  point.

13          THE COURT:  Pardon?

14          MR. JULIAN:  Related but different.

15          THE COURT:  Because I don't know the issue.  I just

16  can't read all the --

17          MR. JULIAN:  Right now, right now -- first let me

18  address what the United States Supreme Court has said and then

19  let me tell you about PG&E's loss of this issue repeatedly in

20  the state court, the appellate court, and the supreme court.

21          THE COURT:  I'm going to let you do that, but I'm

22  going to stop for a minute and say, if you're so confident

23  about that, why don't we just beat them on a motion?  Why don't

24  we just brief it be done?  In other words, I mean, it's like --

25  Mr. Julian, it's like when we get ready to go to a trial and

PG&E Corp., Pacific Gas and Electric Co.

1    one guys says, I can win this case without going to trial.  I

2    say, then make a motion for summary judgment.  So if I ask for

3    cross briefing on this question and you have the slam dunk,

4    we're done.

5         MR. JULIAN:  Well, it's a difference between a three-

6    page brief and a thirty-page brief.

7         THE COURT:  Well, but I'll read it either way.  My

8    point is it's a getting issue and you feel very confident, and

9    I think Ms. Dumas made a comment about it earlier.  So there's

10   no question in my mind that your side is very confident.  Mr.

11   Orsini and his colleagues know what happens if you make a

12   frivolous, unsupported legal argument that should have

13   consequences.  I'm going to assume that he will make an

14   argument that would pass that kind of muster, and there it is.

15   You will have his brief, and he will have his brief, and I'll

16   decide it.

17        I mean, seriously.  I'm not kidding.  Like we deal in

18   bankruptcies cases all the time, Mr. Julian, you know that if a

19   party is adverse to you and he says, I can win under this

20   theory or that theory, and you say, you know what?  The Ninth

21   Circuit decided the X case, and this is my slam dunk, I'll say

22   then brief it, or say, that's the end of it.  We're done.

23        MR. JULIAN:  You can do it that way.  I just think

24   it's a waste of time when the U.S. Supreme Court says, when the

25   supreme court of a state has denied a petition for review --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  I --

2          MR. JULIAN:  -- which they have twice --

3          THE COURT:  I agree.  It sounds like a winning

4    argument.

5          MR. JULIAN:  All right.

6          THE COURT:  And you don't need thirty pages.

7          MR. JULIAN:  May I move to --

8          THE COURT:  No, no.  I just wanted you to tell me why

9    that isn't a very efficient way to do it because I'd be

10   inclined to do it.  I'd be happy to do it that way.

11         MR. JULIAN:  Well --

12         THE COURT:  You can think about it.

13         MR. JULIAN:  Because they've proposed it in the middle

14   of a trial I'm supposed to be in.

15         THE COURT:  Well, I mean, no.  You're in the middle of

16   an estimation motion, and the proposal is let's break this down

17   into parts.  Mr. Kelly and Mr. Pitre certainly made their point

18   about phases 2 and 3, and you believe that -- and I believe

19   that Mr. Tredinnick for the City, same thing.

20         Your papers make it sound like you can't lose it.  So

21   fine.  Let's go be done and make them lose it.  I don't know.

22   I don't know the law.  I do know the law on what lower courts

23   can do.  I just within the last few weeks issued a decision in

24   a matter here in our court where I raised that issue.  It had

25   nothing to do with PG&E and nothing to do with this legal

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  principle, but it was what I speculated in writing what the

2  California Supreme Court would rule on this particular issue

3  that I addressed just weeks ago.  So I'm up on the issue on how

4  to attack the issue.  You need to tell me how to put the issue

5  to bed once and for all.

6         MR. JULIAN:  I don't think the parties need to brief

7  it in light of the Supreme Court's 1940 decision that says,

8  when the highest court --

9         THE COURT:  Do you want to submit it on this?  You

10 want me to submit it on this brief?  I mean, I'd thought you

11 want to brief it.  And if you want to submit it on the brief,

12 I'll --

13        MR. JULIAN:  I don't think there's need for briefing.

14        THE COURT:  Do you want to submit it?

15        MR. JULIAN:  I will submit that point on the need for

16 briefing on that Supreme Court case, yes.

17        THE COURT:  Well, no.  But do you want to submit the

18 question that inverse condemnation is alive and well, if you

19 will, then binding on the utility and the debtor.

20        MR. JULIAN:  I --

21        THE COURT:  I mean, if you -- Mr. Julian, I'm not

22 playing games with you.  If you want to have time and you want

23 me to say, we're going to handle phase 1 by an exchange of

24 briefs in due course, I will do it.

25        MR. JULIAN:  You signal the way you want to go.  I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    want to move to the next point.

2        THE COURT:  You agree, don't you, that I can make that

3    decision?  That's not an Article III question; do you agree?  I

4    mean, do you agree that --

5        MR. JULIAN:  I think what you're -- that's a different

6    question.  That's a --

7        THE COURT:  I'll rephrase the question.  If I ask your

8    side and the debtor to brief the question of whether inverse

9    condemnation as a matter of law is applicable to this debtor,

10   these debtors, do you agree that I can be the decider of that

11   question?

12       MR. JULIAN:  Yes.  After the bar date passes because

13   the issue is, is it a court proceeding or not?  It becomes a

14   court proceeding binding on claimants once they've filed their

15   claims, and so you don't know.  You can't make that decision,

16   in my view, until the bar date passes and the claimants

17   establish for you that you're estimating their claims as a

18   court proceeding is core because they've submitted to the

19   jurisdiction by filing proofs of claim.

20       THE COURT:  I think what I'm doing is I'm asking if

21   you differ with my ability to decide one component of the

22   estimation?

23       MR. JULIAN:  Or proceeding after October 21, in my

24   view.

25       THE COURT:  Okay.  Okay.  Go ahead to the next point.

PG&E Corp., Pacific Gas and Electric Co.

1    MR. JULIAN:  The second question that you asked us to

2  look at is personal injury, and I have six responses to that.

3  The debtors' reply brief on estimation states that Your Honor

4  should look at the legislative history as explained by their

5  favorite case, the Gawker case, that discussed the fact that

6  the legislative history to the 1994 statutes showed that what

7  Congress was trying to do in adopting the personal-injury

8  statute was respond to the asbestos plaintiffs' bars request to

9  have special --

10    THE COURT:  Wait one second.  We're getting a little

11  buzzing on here.  Are you getting that?  Do you hear that?  See

12  if it's this unit or something else.  Well, maybe it's just my

13  speaker here.

14    Okay.  Go ahead, Mr. Julian.

15    MR. JULIAN:  And the point they made, Your Honor, was

16  that Congress was responding to the asbestos plaintiffs' bar's

17  request for jury trials with respect to personal-injury claims.

18  And so their point was it came from the asbestos plaintiffs'

19  bar, and so you ought to look at the types of personal-injury

20  cases that they were prosecuting.

21    And as we all know, Manville and UNR were the two big

22  asbestos cases that lent themselves to the 1994 legislation,

23  and they're right about the plaintiffs' bar.  So I think all we

24  have to do is look at the plaintiff's definition of personal-

25  injury claims in the Manville and UNR claims of reorganization

(971) 224-1611 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  to see what they were talking about.

2       And the UNR explanation of personal-injury claim's

3  definition is that 143 Bankruptcy Reporter 506 at page 513, the

4  1992 case that preceded the legislation by a year-and-a-half.

5  And the plaintiff bar's definition of an asbestos disease claim

6  was quote, "all liability for personal injury (where there's

7  physical, emotional, or otherwise)".

8       In other words, they're right.  The plaintiffs' bar

9  requested Congress to adopt the personal-injury statute for

10  their claims, and they defined them in the Manville and UNR

11  plans as personal injury, meaning physical, emotional, or

12  otherwise.  That's point one.

13       Point two is when Congress wanted personal injury to

14  mean personal bodily injury, Congress said just that in Section

15  523(d)11(b) of the Code dealing with exemptions for quote,

16  "personal bodily injury" claims.  That's 523(d)11(d).

17            UNIDENTIFIED SPEAKER:  522.

18            MR. JULIAN:  I'm sorry.  522.  Thank you.

19            522 deals with exemptions.

20            THE COURT:  And you're looking at 522(b)11?  Okay.

21  You might have cited that in the papers.  I didn't remember

22  everything.  I just couldn't read everything, but I'll make a

23  note of it.  So, if you --

24            MR. JULIAN:  522(d)11.

25            THE COURT:  B?  522(b) --

PG&E Corp., Pacific Gas and Electric Co.

1          MR. JULIAN:  Capital D reads --

2          THE COURT:  Oh, D, okay.

3          MR. JULIAN:  Yeah, of payment.  Here's what's exempt.

4    The payment --

5          THE COURT:  Yeah.  I'm familiar.

6          MR. JULIAN:  Yeah.  And that's --

7          THE COURT:  Personal bodily injury not including --

8          MR. JULIAN:  Yeah.

9          THE COURT:  -- pain and suffering or compensation.

10         MR. JULIAN:  And the Grossman court in the Ninth

11   Circuit found that to be persuasive in deciding that personal

12   injury was defined as I said.

13         The third reason is that all of the Ninth Circuit

14   cases, lower court, include a motion for stress in Section 157

15   personal-injury claims, as I think you know.  And --

16         THE COURT:  Well, there's no controlling cases there.

17         MR. JULIAN:  Pardon?

18         THE COURT:  There's no controlling case.

19         MR. JULIAN:  Yes.

20         THE COURT:  I mean, the briefs are the -- I forget

21   whether it's the OCC or the debtor because the briefs are

22   overlapping, but there are a couple of summaries, and there's

23   an analysis and Gawker is -- they take issue with Gawker, and

24   you take the other side.

25         I mean, the case law that both sides have cited, if

PG&E Corp., Pacific Gas and Electric Co.

1    I'm not mistaken, there's no binding precedent.  I just have to

2    decide whether there's enough evidence to be there.  And again,

3    I'll go back to your -- it's the same question I asked you

4    about inverse condemnation.  Do you agree that I, as a non-

5    Article III judge, can make the decision that personal

6    injury -- excuse me -- that emotional distress and any related

7    tort falls in or out of the statue here of the 5 -- 157(b)2?

8           MR. JULIAN:  You may make the decision.  And as I

9    state in the last page of our brief, with respect to --

10   estimation decisions with respect to the inverse-condemnation

11   claim, that's a core proceeding in my view once the bar date

12   passes.

13          THE COURT:  So --

14          MR. JULIAN:  But with respect to the rest of the

15   personal-injury claims, I believe that's a noncore

16   determination.

17          THE COURT:  I understand.  I understand.  I just

18   want -- look, the briefing and the reading of the statute,

19   you'll never see the word, emotional distress, and of course,

20   so if Congress had said, emotional distress is core or is

21   noncore, we wouldn't have this debate.  I have to decide

22   whether I believe it's in or out.

23          So to put it in simple terms, I think to get it right,

24   you're agreeing with -- or saying that at least if we get past

25   the bar date that as a core matter I have the statutory

PG&E Corp., Pacific Gas and Electric Co.

1   authority to decide whether inverse condemnation is or is not a

2   viable legal issue that can be invoked here or defended.  I

3   mean, you know what I mean.  It's binds on the privately owned

4   utility or it's not.

5           And similarly, in an estimation trial, I can either

6   include as part of personal injury and wrongful death,

7   emotional distress, or exclude.  Either way -- so if we have a

8   victim who has suffered emotional distress and there's no

9   question in my mind, you've made the point abundantly clear,

10  and I know what anybody knows, there are enormous emotional

11  distress claimants.

12          I can decide whether it requires the Article III

13  decision maker or if it can be done by someone who isn't an

14  Article III.  That's all.

15          MR. JULIAN:  It's a noncore proceeding.

16          THE COURT:  Yeah.

17          MR. JULIAN:  You typically do it, yes.

18          THE COURT:  Okay.

19          MR. JULIAN:  But, Your Honor --

20          THE COURT:  We're together on that --

21          MR. JULIAN:  I'd like --

22          THE COURT:  -- issue.  Go ahead.

23          MR. JULIAN:  I'd like to explain why their favorite

24  case, Gawker, says the claims in this case are personal injury.

25  Gawker says at 571 B.R., page 625, that 157(b)(2)(b) is, and I

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  quote, "limited to claims involving bodily injury, physical

2  trauma, and/or a severe psychiatric impairment beyond mere

3  shame and humiliation", and as you know from the doctors -- let

4  me read it again.  "Psychiatric impairment," that's emotional

5  distress "beyond humiliation and shame".

6       In other words, what happened in Gawker, the judge

7  said, look, the fellow felt humiliated when he lost his

8  copyright.  But what we have here as shown by our brief and Dr.

9  Pittman's (ph.) declaration watching the videos of the people

10  suffocating --

11       THE COURT:  I read Dr. Pittman's declaration.  It's

12  quite impressive.

13       MR. JULIAN:  Yeah.  It's not shame and humiliation for

14  fleeing the fire and thinking you're going to die and

15  suffocate.

16       THE COURT:  Understood.

17       MR. JULIAN:  It's severe --

18       THE COURT:  Understood.

19       MR. JULIAN:  -- using the word of Gawker, psychiatric

20  impairment.  So even using Gawker, the Gawker decision itself,

21  we have personal-injury claims in this case.  That's point

22  four.

23       THE COURT:  Yeah.  But what that means to me is that

24  you make a persuasive argument that your client suffered these

25  types of horrible tragedies need to have their claim estimated

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   for distribution purposes by an Article III judge. The

2   question is whether it can be estimated for confirmation

3   purposes. And again, we're back to the whole question of the

4   cap and the noncap.

5           Do you want to address those --

6           MR. JULIAN: Yes.

7           THE COURT: -- issues, Mr. Orsini?

8           Okay. If you want to go with something else, fine. I

9   need to get your response to Mr. Orsini's view of what happens

10  to a claimant who doesn't consent to participate in a trust and

11  has his or her jury right, whether it be in the district court

12  or in the superior court.

13          MR. JULIAN: So I'd start one step back, which is if

14  PG&E said to us here, these claims ride through the bankruptcy

15  in a trust or otherwise, and whatever their liquidated amount,

16  we'll pay them in full, whatever it is, you wouldn't hear a

17  peep out of me.

18          THE COURT: No, I know.

19          MR. JULIAN: And if they wanted to say, we'll

20  estimate. We'll estimate for it, and we'll have a ten-day

21  trial, twenty-trial, whatever you want, you wouldn't hear a

22  peep out of me because of what the Bittner case says, common

23  sense. If there's a mistake in estimation, it's no harm, no

24  foul. I --

25          THE COURT: But again, I don't think we can bank on

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   the Bittner dicta for this case which isn't --

2         MR. JULIAN:  So what do you -- so what I think you

3   ought to do?

4         THE COURT:  -- isn't being liquidated.

5         MR. JULIAN:  Right.

6         THE COURT:  Well, no.  But I want you to tell me

7   whether you agree or disagree with Mr. Orsini.  I'll restate

8   and make sure I got it right.

9         Mr. Orsini said, if a victim of the fire does not

10  formally consent to participate in the trust and wishes to have

11  his or her day in court elsewhere in front of a jury -- let's

12  take the more typical jury, superior court -- and gets a

13  judgment of substantial sums of money, that sum of money is put

14  into the trust, and the victim gets the pro rata share with

15  that claim for that victim liquidated to the penny, whereas all

16  the other victims are not necessarily liquidated to the penny.

17        And what Mr. Orsini also said, not committing, but

18  said, maybe, maybe the company's position will be for the

19  victims of the Ghost Ship fire, they will ride through.  He

20  didn't say for sure, but he just raised it because I raised

21  Ghost Ship as being so different in terms of -- not in terms of

22  the tragedy, but in terms of the causation and all the other

23  things.

24        So my question to you is if I go with this estimation

25  and it estimates for purposes of a plan, do you understand that

(970) 712-0111 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  any individual claims that is determined by a jury still goes

2  into the fund?  Do you agree with that or disagree with that?

3           MR. JULIAN:  If that's what the plan says, but --

4           THE COURT:  Yeah.

5           MR. JULIAN:  -- I think these plans say that all

6  claims -- all those claims are -- they've said it in their

7  papers.  All claims will be channeled to the trust.

8           THE COURT:  Right.

9           MR. JULIAN:  So the plan that they have explained and

10 the bondholders have explained and several has explained is all

11 claims are channeled to the trust, the answer is yes.  That

12 jury-trial claimant's claim is in the trust.  It gets

13 liquidated in one of four ways:  settlement, mediation, speedy

14 arbitration, or jury trial.  That's the way they all work.

15          THE COURT:  Right.

16          MR. JULIAN:  And so if there's --

17          THE COURT:  But it doesn't pass through?

18          MR. JULIAN:  Pardon me?

19          THE COURT:  It doesn't pass through.

20          MR. JULIAN:  It doesn't pass through.  If there's one

21 of them and it's more than you estimated, who cares?

22          THE COURT:  Well, no --

23          MR. JULIAN:  But if there's a whole bunch of them --

24          THE COURT:  That claimant cares, but that's --

25          MR. JULIAN:  No.  But you're not estimating

PG&E Corp., Pacific Gas and Electric Co.

1    individually.  You're estimating in the aggregate.

2           THE COURT:  But that's what I'm saying.  If there is

3    a -- if leaving aside all the issues that Mr. Pitre and Mr.

4    Kelly raised impressive arguments about, if at the end of the

5    day, not by consent, but by judicial decree, there is a

6    determination that the trust is -- pick a number, twenty

7    billion dollars.  That means everybody that opts into that

8    trust is going to be participating in the matrix and there's a

9    twenty-billion-dollar cap.

10          But it also means that if you have one claimant who

11   doesn't opt in and takes his or her case to a jury and gets a

12   twenty-million-dollar judgment, that twenty million goes into

13   the trust and gets maybe some lesser amount than twenty

14   million, and that means in the cap trust, but the jury ride is

15   predicted.  The distribution isn't changed.  Do you agree?  Do

16   you agree that that's the way --

17          MR. JULIAN:  That the jury=trial --

18          THE COURT:  -- that's the way they read it?

19          MR. JULIAN:  The jury-trial --

20          THE COURT:  I think that's the way Mr. Orsini argued

21   it, and he can correct me if I got it wrong.  What do you

22   think?

23          MR. JULIAN:  The jury-trial right is not impaired.

24   The recovery is.

25          THE COURT:  Right.

(970) 989-0341   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. JULIAN:  So you will end up with what they want,

2    with what equity wants.

3          THE COURT:  But is it what you think is the right

4    result?  What does the law require?  What happens after we've

5    made -- after a court has made the estimation, what happens to

6    the individual person who takes the case to a jury and gets the

7    twenty-million-dollar judgment?

8          MR. JULIAN:  He gets whatever percentage the trust

9    agreement says he should get.

10          THE COURT:  And you agree with that?

11          MR. JULIAN:  That's --

12          THE COURT:  Okay.

13          MR. JULIAN:  I can't tell you --

14          THE COURT:  I'm not -- look, I'm not asking you to

15    agree and --

16          MR. JULIAN:  I can't tell you until I see the trust

17    agreement, but that's the way they typically work.

18          THE COURT:  Mr. Julian, I know, but you agree that

19    that's what the law requires?  That's all I'm asking.  I'm not

20    trying to play games with you.

21          MR. JULIAN:  In my view, the law could not require

22    that because at plan confirmation, if the committee doesn't

23    consent and it's crammed down --

24          THE COURT:  I didn't -- I'm assuming the committee

25    consents, but one -- the committee -- the consent by the

PG&E Corp., Pacific Gas and Electric Co.

1   committee isn't binding on an individual --

2           MR. JULIAN:  If everyone consents, Your Honor, and the

3   trust -- it would go into trust and be paid out of the trust.

4           THE COURT:  I just said, every single claimant isn't

5   bound by the position of the committee, is it?

6           MR. JULIAN:  No.

7           THE COURT:  No.

8           MR. JULIAN:  They would have their --

9           THE COURT:  No, no.  Stop right there.  Let's suppose

10  despite all the complaints that you and your colleagues have

11  made that nobody is talking to you, let's suppose they talk or

12  let's suppose I talk and say, the estimation is twenty billion

13  dollars, and let's suppose one victim of one fire says, I don't

14  want to participate.  I want my jury trial.  And so that person

15  gets his jury trial and gets a jury verdict of twenty million

16  or thirty million or a hundred million.  Whatever that number

17  is, it goes into the math --

18          MR. JULIAN:  Yes.

19          THE COURT:  The numerator over the denominator --

20          MR. JULIAN:  Yes.

21          THE COURT:  -- of the fund.  And you appear to

22  acknowledge that that is so?

23          MR. JULIAN:  That's the way it would work, and the

24  question is are the total claims, they are thirty or forty

25  billion, and you've left them with twenty.  That's the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  unfairness.

2       THE COURT:  But isn't that the nature of the

3  estimation process?  Isn't that -- I mean, isn't that what

4  we're all stuck with?  You and I are not victims, but we as

5  lawyers and judges, and your client victims, unfortunately for

6  them, that's the consequence.  That's all the more reason to

7  make sure the trust is bigger rather than smaller if that can

8  be done.

9       MR. JULIAN:  If that's the way it works, that's the

10 way the statute reads --

11      THE COURT:  But look, contrast that.  Suppose, for its

12 own reasons, the company decides to treat the Ghost Ship fire

13 differently, because it is different.

14      What I heard Mr. Orsini say is maybe the company's

15 view will be the Ghost Ship victims get what they get outside

16 the trust which means if a Ghost Ship fire victim proves that

17 he or she suffered twenty million dollars caused by PG&E, that

18 person has a claim for twenty million dollars, regardless of

19 whatever the trust would have had the person participated in

20 the trust.

21      MR. JULIAN:  Yes.

22      THE COURT:  Well, "yes" means you accept -- I take it

23 that means you're agreeing with the analysis?  And I want you

24 to -- again, I'm not trying to trip you up.  I'm trying to make

25 sure there is agreement with you and Mr. Orsini as to the way

                PG&E Corp., Pacific Gas and Electric Co.

1    the law works.  I think you're right, but I don't want to -- I

2    don't want to make it sound like I'm trying to set you up.  I

3    want to -- I want you to tell me you agree --

4            MR. JULIAN:  My answer is it depends on what the plan

5    and the trust agreement says.

6            THE COURT:  Okay.  Okay.  We'll leave it at that.

7            MR. JULIAN:  Which is speculative now.

8            THE COURT:  Let's leave it at that.

9            And, Mr. Orsini, I invite you, when you come back up,

10   to clarify anything if I've misstated your client's position or

11   your interpretation of the way the bankruptcy laws work here.

12           So, Mr. Julian, do you want to have some more -- do

13   you have some more things you want to cover?

14           MR. JULIAN:  Yes, I think Mr. Pitre and Mr. Kelly have

15   covered the due-process point.  I will just say -- I'm going to

16   personalize this in terms of what I have to do to get -- at an

17   estimation hearing.  I get it.  It's not putting on the same

18   case they put in state court.  But you just -- but I've got to

19   put on a case.

20           THE COURT:  Okay.  By the way, was there an estimation

21   hearing in A.H. Robins?

22           MR. JULIAN:  There was.

23           THE COURT:  And did the judge set some ground rules?

24   And whether it was one or two, I don't care.  It wasn't a

25   traditional trial, right?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. JULIAN:  No.

2          THE COURT:  It was something to do what 502 said has

3     to be done.

4          MR. JULIAN:  There were questionnaires; there were

5     expert witnesses.  Again, much different case; very simple.

6          THE COURT:  Much different case, but the judge started

7     the hearing and ended the hearing by saying these are the rules

8     for estimation.

9          MR. JULIAN:  Right.

10          THE COURT:  And well, I don't care what they were.

11     They weren't what those -- Mr. Pitre and Mr. Kelly are used to

12     doing when they try a case before state courts or juries.

13          MR. JULIAN:  A. H. Robins makes the case.  It was one

14     issue.  You've heard Mr. Orsini say today how they're going

15     through every fire and say his client did this.

16          THE COURT:  No, I know.  I know.

17          MR. JULIAN:  I have to get witnesses to talk about

18     each one.

19          THE COURT:  Well, we're going to talk later about how

20     the estimation trial should be conducted and what are the

21     ground rules, and what's --

22          MR. JULIAN:  So today there won't be a trial date

23     set -- or estimation hearing dates?

24          THE COURT:  No, they won't.

25          MR. JULIAN:  Then I can leave due process, Your Honor,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   move on to something else.

2         THE COURT:  No, I thought I made it clear

3   before.  Maybe I didn't or maybe you didn't understand me.  I

4   thought I said regardless of how I make -- how I rule on

5   exclusivity, which is really much more separate, and relief

6   from stay, I still don't have to -- we have to deal with the

7   assignment of the estimation process.  Yeah.

8         MR. JULIAN:  So I put myself in your shoes the other

9   day, partly because Ms. Dumas insisted on it, and --

10         THE COURT:  Don't take her advice on that; you

11   should've let her make the argument.  Anyway, what did she tell

12   you to do?

13         MR. JULIAN:  How would you do it if you were the

14   judge?  Be fair to the judge.  And so that's why we wrote our

15   roadmap.  We came up with this idea.

16         First of all, as you heard, Tubbs is huge in terms of

17   what has to be done.  Mr. Orsini, himself, has asked you to

18   schedule three weeks of hearings on estimation.  That's

19   estimation; that's not trial.

20         THE COURT:  I know.

21         MR. JULIAN:  Three weeks.

22         THE COURT:  That's estimation.  I know.

23         MR. JULIAN:  And my view is all the other issues for

24   all the other fires are just as complicated at Tubbs, now that

25   you've heard that negligence encompasses everything, right?

(97) operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Well, I heard today what I heard.  I

2   thought it was more precise.

3          MR. JULIAN:  Well, that's what they hoodwink.  By the

4   way, you probably read their brief and their 10Q and the Welles

5   Declaration the same way I did.  Which was, the Welles

6   Declaration -- their 10Q, Your Honor -- said if their equipment

7   is a substantial cause, it's strict liability -- right there in

8   their 10Q on their Wells Declaration.  Strict liability if

9   they're a substantial cause.

10          Mr. Orsini put in the word "cause" and had us all

11   thinking he had agreed to something.  This is the standard

12   hoodwink that they do, but I'm going to address what I think

13   you should do.

14          THE COURT:  Well, let's not personalize it.  We're

15   dealing with how to fix it going forward, so --

16          MR. JULIAN:  Okay.  So I -- we recommend Tubbs be

17   tried for all the reasons:  discovery referee, judge is used to

18   dealing with jury trials, instructions, managing a jury -- you

19   can get good data.  As Judge Perris said, when something like

20   that is tried, at least we now know, and the parties can

21   negotiate off that.  So you get Tubbs off your plate that way.

22          And then I thought, how can we make your life easier,

23   Judge Montali's --

24          THE COURT:  I don't care about making my life easier.

25   I want to do my job, so let's --

PG&E Corp., Pacific Gas and Electric Co.

1       MR. JULIAN:  Well, I'm talking about streamlining the

2   litigation.

3       THE COURT:  Okay.  Okay.

4       MR. JULIAN:  Let's put it -- instead of making your

5   life easier, let's use the word "streamlining the litigation".

6       I tried to think of a way that to avoid the district-

7   court conundrum of two judges sitting for de novo review.  So

8   what we suggested was, if the inverse-condemnation damage

9   portion of the case was going to be simple -- which I now

10  understand it's not -- then you could do that as a core

11  proceeding.  And because it encompasses many of the damages,

12  you could have the parties do that as a core proceeding.

13      So let me modify that now, because I now know with the

14  change of tune here, that it's a bigger case than we thought.

15  There is a way -- and Mr. Kelly averted to it a moment ago --

16  we could estimate damages.  What are the damages over the next

17  four months?  It doesn't matter when Tubbs is tried because

18  damages are being estimated.  Tubbs comes in and --

19      THE COURT:  Well, don't you think because the size --

20  I mean, Tubbs is such a monster compared to all the fires in

21  terms of total damage, and that it kind of almost has to be

22  addressed?

23      MR. JULIAN:  No, because Your Honor, I've got the

24  experts; I'm working with them.

25      THE COURT:  Well, I know but -- I know you are; I'm

(972) 499-5833 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   sure you are, but the damage is for Tubbs.

2           MR. JULIAN:  You just throw them in into the matrix.

3   You got the GS -- you got the real property data already.  You

4   could do this in four to five months.  You could do it in

5   December and January; the Tubbs trial could take place in

6   January.

7           You're estimating the --

8           THE COURT:  What happened -- okay, look.  I didn't

9   think we were going to do this, but what happens if the jury

10  comes in for PG&E in Tubbs trial?

11          MR. JULIAN:  I would say would Judge Perris said.

12  It's data -- better data than you have now.

13          THE COURT:  Well, yeah, but what happens?

14          MR. JULIAN:  Oh.

15          THE COURT:  Okay.  Now, we're back on the next morning

16  for the estimation trial, and Mr. Kelly comes in or Mr. Pitre

17  comes in and says we just lost the Tubbs trial for our test

18  jury.  Do we then take off --

19          MR. JULIAN:  That verdict --

20          THE COURT:  Well, yeah, that verdict gets taken, but

21  every other plaintiff's lawyer in the room is going to say, I

22  could've won that case.

23          But the trial judge says, well, hmm, that's a big

24  factor.  They don't throw a pitman at you and say you're

25  estimated at zero, but it's got to be a low number.  It's got

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    to be a real low number, and is that a good thing to do?

2            MR. JULIAN:  No.  This is done all the time, Your

3    Honor.

4            THE COURT:  Well, this case isn't done all time, so --

5            MR. JULIAN:  Well, but I'm going to explain it.

6            THE COURT:  Okay.

7            MR. JULIAN:  If there were ten trials that took place

8    and ten settlements --

9            THE COURT:  Um-hum.

10           MR. JULIAN:  -- the bankruptcy trial would look at

11   those and say, great weight is afforded to those.

12           THE COURT:  Correct.

13           MR. JULIAN:  And it's as Judge Perris said:  that's

14   data that is going to be influential in resolving this.  It's

15   better than having an advisory trial.

16           THE COURT:  There's no question that it's data and it

17   might motivate settlements.  The question is, it would have --

18   it would seem to me if the trial -- if I were the trial judge

19   determining the estimation, and I just got told PG&E won the

20   Tubbs trial, there would be a huge swing.  And you're saying,

21   okay, I mean, that's a data point.  It's a big data point.

22           MR. JULIAN:  That's the data point.  I can't

23   contradict it --

24           THE COURT:  Okay.

25           MR. JULIAN:  -- after arguing for it.

PG&E Corp., Pacific Gas and Electric Co.

1        THE COURT:  All right.

2        MR. JULIAN:  I mean --

3        THE COURT:  So, all right.  So I got your roadmap;

4   that's the roadmap.  Go to Tubbs assuming that we get a verdict

5   in and et cetera.

6        MR. JULIAN:  Well, the most important thing is when

7   we -- I hope we come back to you for more estimation

8   procedures.  And what I believe they have to do is standard.

9   They have to identify all the factual and legal issues that are

10  going to be estimated.  And I'm not suggesting, Your Honor, a

11  trial, so --

12       THE COURT:  Okay.

13       MR. JULIAN:  -- that has to be done --

14       THE COURT:  But then I owe it to you to make sure you

15  got what I said three times -- I'll say it a fourth time:  I'm

16  not setting an estimation trial today.  I'm going to figure out

17  these other questions.  We're identifying -- this discussion

18  that we're having this morning is identifying a whole bunch of

19  issues that -- maybe they're all in the brief; maybe they're

20  not.  But if I'm going to be in charge of managing this case, I

21  now know what we're going to have a schedule for this, this,

22  and this.  And right high on the to-do list for Mr. Orsini is

23  get this discovery issue straightened out, so --

24       MR. JULIAN:  Yes.

25       THE COURT:  -- we can decide.  And again, I'll

PG&E Corp., Pacific Gas and Electric Co.

1    repeat:  if I'm presiding over the estimation trial, my job is

2    to say what the rules are, and I'm not going to do it in two

3    hours per side.  I don't know what I'm going to do, but I know

4    we're going to do everything possible to make it proper and

5    fair and the way I'm supposed to do it.  So leave it at that.

6              MR. JULIAN:  I will offer up --

7              THE COURT:  You got to trust me.  You got to trust me.

8    That's what I'll try to do if I'm doing it.

9              MR. JULIAN:  I will offer up one observation.  I know

10   you have many different alternatives that you could use here.

11   If you were to use the alternative of -- as you know in our

12   brief, we thought you should be the master judge.

13             THE COURT:  You listed -- oh, yeah, you -- that was

14   your master judge.  I don't know how I would do that, but you

15   want to talk about it now or deal with it later on the relief

16   from stay?  I mean, it's -- again, it's a little of each.

17             MR. JULIAN:  A little on relief from stay.

18             THE COURT:  Yeah.

19             MR. JULIAN:  But as to estimation my only point would

20   be this:  if you were to be the master judge, as I suggested,

21   and you were to estimate Tubbs, the data review on that is

22   mammoth.  And I believe, if you look at the days to de novo

23   review in the district court, rare as it is, that we're looking

24   at a longer time period than if we just sent the case to state

25   court for a Tubbs trial.

PG&E Corp., Pacific Gas and Electric Co.

1  THE COURT:  Okay.  Listen, Mr. Julian, and I'm going

2  to interrupt our colloquy here and offer something that I want

3  everybody to think about.  And I am not asking for any response

4  to what I'm about to say until a little bit later.  And I'm

5  going to look to the counsel for the creditors' committee for a

6  homework assignment, okay?

7  So in reading the papers, what the TCC said very

8  emphatically is that -- and including this notion of working

9  with the superior-court judge in the Tubbs trial -- is well,

10  the basic bankruptcy choices are:  have proposed findings and

11  conclusions; have as an alternative -- as prior counsel, Ms.

12  Crawford (ph.) said, have a two-judge trial -- I just know

13  that's awkward, even if you did it in Robins; and the third

14  one, I believe, was to refer to the district court.

15  I have a fourth choice.  And I'm just going to put

16  this out.  Nobody in the papers suggested choice four, and so

17  what I'm going to tell you is that I want the two committees --

18  I mean, I'm sorry, the TCC and the ad hoc committee -- and this

19  is not to minimize the role of the bondholder group, but

20  particularly, and -- let me -- I know I'm confusing the point.

21  Let me start over again.

22  I want focus by the debtor's counsel and advisors, the

23  TCC counsel and advisors, and the ad hoc subrogation committee

24  and its advisors -- but ad hoc subrogation, not in the context

25  of exclusivity, but in the context of representing an enormous

(970) 420-1096 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    class of people -- of victims who then were paid by insurance

2    companies, and now we have insurance companies under the

3    subrogation rights.  In other words, to think of it in terms of

4    the plan outlines as the two significantly impaired classes.

5              I would like the three groups to reflect on whether

6    they would be willing to consent to the entire estimation trial

7    in this court without the Article III judge.  And here's why

8    I'm going to suggest it, and here's why I don't want to hear

9    any discussion about it.

10             First of all, I believe the law permits consent to a

11   non-Article III judge hearing some of these matters by consent.

12   I don't think there's any prohibition because there are a

13   million things in the bankruptcy law and rule where people can

14   waive their right to Article III judge.

15             Secondly, for all the reasons we stated, there are

16   complications involved with two judges, proposed findings and

17   conclusions, appellate review, and so on.

18             Thirdly, I think that although it's my job if I am --

19   if the parties are willing to consent, then they have to trust

20   me that I will do my job.  And so some of these issues about

21   personal injury and wrongful death, does it include emotional

22   distress or not, go away.

23             And so what I'm going to ask the official creditors'

24   committee counsel to do is simply, after the hearings today, to

25   have a period of time when the three groups discuss privately

(979) 824-9337 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    with themselves and report to counsel for the official

2    creditors' committee to report either all parties are agreed or

3    there is not unanimous consent.  I don't want to know who

4    agreed or disagreed.

5          If I get -- and I'm just, in effect, creating the

6    official creditors' committee counsel to act like a mediator

7    might.  I'm not really asking them to do the mediation; I'm

8    just taking a significant player who isn't on this position as

9    direct.  But if the tort committee and its counsel, and the

10   debtors and their counsel, and the ad hoc subrogation committee

11   and their counsel believe that a most-efficient way to do the

12   estimation is one judge -- this one in this courtroom -- then

13   I'm game to give it a try, and we eliminate a lot of problems.

14   We might create more, but it's different.

15         The reason why I don't want a response is that I want

16   you all to think about it.  I want you to feel absolutely one

17   hundred percent comfortable of advising your clients to say no,

18   and all you have to do is tell the official creditors'

19   committee counsel.  And all I want from him -- and I'm not

20   naming who, because of all the different -- you all know who

21   represents them; the different lawyers appearing for different

22   times, so Mr. Leblanc and Mr. Dunne or Mr. -- the other one --

23   Bray.  It doesn't matter who it is.  I just want somebody to

24   say they've all agreed and if that's the answer, than that's

25   going to change the outcome, and I won't be making any proposed

PG&E Corp., Pacific Gas and Electric Co.

1    recommendation.  If there's even one dissent, I don't want to

2    know who dissented.  So I'll get the response back and suggest

3    this in the next few days.

4         So it has nothing to do with my decision.  The

5    decision's on the relief from stay and estimation have nothing

6    to do with this issue.  My purpose in making this proposal,

7    frankly, is to eliminate some of the issues that wouldn't even

8    exist if President Trump decided to give me Article III status

9    tomorrow or I decided to -- or any of you had decided to make a

10   motion to withdraw the reference and the district judge agreed.

11        You'll recall that, already in this case, there was a

12   motion to withdraw the reference, and I made a recommendation

13   to the district judge not to take it, and that judge took my

14   advice and -- again, without getting into the correctness of my

15   decision, I made a decision and moved on.  So if everybody

16   agrees that I can do it, I'll do it.  And I don't know what the

17   outcome will be.

18        So with that, I don't -- I really -- I don't want any

19   discussion about this.  It's not a secret; I'm not asking

20   anybody to pretend that I didn't say it.  I just don't want to

21   have any public discussion about it because I think that there

22   may be somebody in here that says, that guy's crazy; I wouldn't

23   trust him with anything.  Then all you have to do is say no and

24   there's no consent, and I will deal with the question of what

25   the rules require me to do by way of a recommendation for

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp., Pacific Gas and Electric Co.

1   withdraw of the reference.

2           So unless you have anything further, Mr. Julian, on

3   what we've been talking about, I'll take whatever counsel wants

4   to be heard that we didn't call, and then I'll let Mr. Orsini

5   have the closing discussion, and then we'll take a break.

6           MR. MCCALLEN:  Good morning, Your Honor.  Benjamin

7   McCallen, Willkie Farr & Gallagher --

8           THE COURT:  Mr. McCallen.

9           MR. MCCALLEN:  -- on behalf of the ad hoc subrogation

10  group.

11          Your Honor, I'm going to limit my remarks in this

12  portion of the hearing to estimation.  Although as Your Honor

13  pointed out and rightly noted, there is a lot of overlap here

14  between estimation and lifting the stay.

15          THE COURT:  Right.

16          MR. MCCALLEN:  But I do want to make one observation

17  at the outset about lifting the stay, and that is to respond to

18  comments made by the committee.  And there were statements in

19  the debtor's brief, as well as in the equity holders' brief

20  that somehow, Your Honor is faced with a either/or decision on

21  lifting the stay and estimation.

22          THE COURT:  Well, no, actually, I saw that was one of

23  the suggestions; it could be both.  So I didn't consider it

24  only or either/or.

25          MR. MCCALLEN:  Absolutely.  And just for one second to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    put it in context, Your Honor, because there's also been

2    discussions about appeals and what effect that would have.  And

3    the bottom line is -- and I think Your Honor said it earlier in

4    the context of setting one of the cases -- it's probably the

5    most valuable data point that this court could have in terms of

6    measuring the total damages that the debtor's would be liable

7    for outside of bankruptcy, because that's the purpose of

8    estimation is to figure out what would the damages be outside

9    of bankruptcy for the Tubbs fire.

10        The individual tort victims have that trial right

11   under the state-court law.  And in addition to it being

12   consistent with their trial right, it's also the fairest

13   outcome in terms of, obviously, it's impossible to liquidate

14   all the claims and to give all the individuals their trial

15   rights, but to have that -- a representative sample, take the

16   issue of Tubbs causation to trial, and to have a jury render a

17   verdict on that, is this -- we would posit -- is the single-

18   most valuable data point that this Court could have on what's

19   going to be the most contested issue -- one of the most

20   contested, if not the most contested issue -- in any

21   proceedings in front of Your Honor, which is what are the

22   liabilities for the Tubbs fire.

23        THE COURT:  Okay.  On that, Mr. McCallen, I agree.

24   This is so intertwined that it's important for you to say it,

25   but I need you or Mr. Kelly or Mr. Pitre or somebody, after the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  break, to give me much more detail on how it would really

2  happen.  What would really happen?  It doesn't just magically

3  happen four months from tomorrow that there's a trial, so

4  somebody has to tell me more detail, what the scenario would

5  be.

6          MR. MCCALLEN:  You mean in terms of the process of how

7  we'd get to the trial or --

8          THE COURT:  Yeah, I mean, I can sign an order this

9  afternoon that grants relief from stay.  And reading some of

10 the briefs, one would think that four months from tomorrow

11 there might be a jury trial starting in Judge Karnow's court,

12 and somehow I don't think it actually happens that way.  So I

13 need you or one of the other litigators to tell me how it'd

14 happen.

15         MR. MCCALLEN:  Sure.

16         THE COURT:  And I'm doing what I told Mr. Julian and

17 he and I do:  we're answering -- and Kelly:  we answer our own

18 questions.  But I have to know when that trial starts, but also

19 when it ends.

20         MR. MCCALLEN:  Um-hum.

21         THE COURT:  And what is the likely time frame when

22 that data point happens, and no one can tell me that June 30th

23 is going to move, so it's still June 30th either way unless

24 the --

25         MR. MCCALLEN:  Sure.  Sure.

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  -- Governor and company tell me they've

2   changed it.

3          MR. MCCALLEN:  I think there's two elements to that,

4   is what will be happening in this court and what's happening in

5   state court, so let me talk about --

6          THE COURT:  Yeah, but --

7          MR. MCCALLEN:  -- this court first.

8          THE COURT:  -- as you pointed out, that's a mega data

9   point.

10         MR. MCCALLEN:  Exactly.

11         THE COURT:  Okay.  But if I'm told, well, you're going

12  to get that data point in April, that's not very helpful.

13         MR. MCCALLEN:  Understood.  And so let me -- I know

14  there was a mountain of paper filed by all the parties here.

15         THE COURT:  Okay.

16         MR. MCCALLEN:  And so let me start, then, by framing

17  for Your Honor, what it is that we and our papers said that we

18  think the Court should be doing going forward because it's

19  different than what the debtors say.

20         Let me begin by saying we're not contesting that

21  estimation is going to be appropriate in these cases.  There's

22  going to have be estimation.  There's non-Tubbs fires and the

23  issue, at the very least, of negligence in those cases.  And

24  then even in Tubbs, Your Honor, although we think there should

25  be a jury trial, all of the plaintiffs are not going to have

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    jury trials; there's only going to be a handful.

2          THE COURT:  Well, do you -- but you're using plural.

3    So there's going to be more one trial, in your opinion?

4          MR. MCCALLEN:  Well, it's partly up to Your Honor, and

5    partly up to the state court.  But I understand, the TCC is --

6          THE COURT:  Well, no, it's not up to me.  If I grant

7    relief from stay, I don't think I grant it for certain people,

8    I mean --

9          MR. MCCALLEN:  Well, you have --

10          THE COURT:  Or maybe I do.

11          MR. MCCALLEN:  -- you have a motion in front of you to

12    grant it for eight to -- I think it's now thirteen people as

13    Your Honor said.

14          THE COURT:  Yeah, but a bunch of other people have --

15    I thought -- well, okay, it's at least thirteen because your

16    group had, I think, five, and TCC had the first eight.

17          MR. MCCALLEN:  Well, to clarif --

18          THE COURT:  It doesn't matter.  There's at least

19    eight, at least that number, and I thought the count was up to

20    about thirty-five.

21          And there are some -- Mr. McCallen, what I'm trying to

22    say is --

23          MR. MCCALLEN:  Um-hum.

24          THE COURT:  -- if I grant relief from stay for the

25    parties that made the motion or joined the motion, I don't know

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    whether that means there will be one trial or multiple trials

2    in superior court.  But that's what I need some help on from

3    somebody when I'm making my decisions after it's fully

4    discussed this afternoon.

5              MR. MCCALLEN:  Sure.

6              THE COURT:  Okay.  Sorry.  I didn't mean to belabor

7    the point.

8              MR. MCCALLEN:  Sure.  So let me go back and say what

9    our proposal is with respect to this court first, and then I'll

10   talk about --

11             THE COURT:  Okay.

12             MR. MCCALLEN:  -- the state court.

13             With respect to what goes in this court, we actually

14   take, I think, a very simple approach that is prudent, which

15   is, as Your Honor said, this cannot and should not be decided

16   today.

17             The debtors have put forward a proposal.  and I'm

18   going to spend the bulk of my time today talking about three

19   reasons why their proposal doesn't work and shouldn't be

20   adopted by this Court.

21             What the Court should do is it should send the parties

22   to talk, which is kind of what the debtors say about phase 3;

23   but the whole thing, right?  We have not put forward an

24   alternative proposal.  The TCC, Mr. Pitre, Mr. Kelly all raise

25   valid points about the level of complexity of the issues that

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    are going to be in front of Your Honor.  We have thoughts about

2    how that should be tried; I'm sure they do.  I'm sure Mr.

3    Orsini and the debtors do, as well as potentially other

4    parties.

5           So let us talk, see if we can narrow the issues, talk

6    about witnesses, talk about potential stipulated issues of

7    fact.  What are -- and, Your Honor, I'm just a little bit spit-

8    balling here, but the fact of the matter is is that there are

9    twenty-odd fires here.

10          THE COURT:  Right.

11          MR. MCCALLEN:  Do we need to have evidence on all of

12   those fires?  I'm not taking a position one way or another, but

13   I think I have ideas, and I'm sure other counsel have ideas --

14          THE COURT:  Well, that's --

15          MR. MCCALLEN:  -- that we can streamline this.

16          THE COURT:  -- that comes under talk.

17          MR. MCCALLEN:  Right.  So send us back and talk.  Let

18   us see if we can -- let's see if we can narrow the divide

19   between where the parties are in terms of timing, scope; and

20   then we can come back to Your Honor, solely to talk about that

21   and what the issues for the proceeding --

22          THE COURT:  Well, one --

23          MR. MCCALLEN:  -- would be.

24          THE COURT:  What I said earlier, if you heard me, that

25   regardless of what I do on the other motions, I expect we'd

PG&E Corp., Pacific Gas and Electric Co.

1   have another hearing fairly soon on estimation, whatever.  And

2   so you've, in effect, repeated the same thing.  So between

3   today and whenever that other hearing is, there's going to be

4   some talk.  I hope I --

5          MR. MCCALLEN:  Sure.

6          THE COURT:  -- don't have to order it, but I will

7   order it if I have to.

8          MR. MCCALLEN:  So then let me address then, the two --

9          THE COURT:  The other two.

10          MR. MCCALLEN:  -- the two phases that they say should

11   happen outside of this talking process and coming back, because

12   they say, all right, we'll talk, but let's do IC and let's do

13   Tubbs first, is their view.

14          So, Your Honor, three infirmities with what they

15   propose.  The first is that this plan would have this Court

16   adjudicating two of the three phrases by October and in doing

17   so, adjudicating -- and if the debtors get their way --

18   affecting disallowing billions of dollars of claims before the

19   bar date.

20          THE COURT:  I don't think that's true.  I thought they

21   wanted the inverse-condemnation thing done, but I -- look, I

22   got you.  I think the three-week window overlaps the bar date,

23   but that window isn't going to work for a variety of reasons,

24   but that doesn't mean there isn't --

25          MR. MCCALLEN:  Sure.

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  -- some alternative.

2          MR. MCCALLEN:  Just to --

3          THE COURT:  Yeah.

4          MR. MCCALLEN:  -- be specific --

5          THE COURT:  Yeah.

6          MR. MCCALLEN:  -- they propose, I believe, October 7th

7   for the start of the Tubbs trial --

8          THE COURT:  Right.  Yes.

9          MR. MCCALLEN:  -- lasting three weeks, which would go

10  right up until the bar date.

11         THE COURT:  Yeah.  Yeah, I understand.

12         MR. MCCALLEN:  And they say, if they get their way,

13  you will estimate those claims at zero.  That's effectively

14  disallowing those claims.

15         THE COURT:  Well, I mean, I don't -- I didn't -- I

16  mean, an advocate would say, I'm going to win my case; but I

17  didn't see that they are predicting zero, but maybe they are.

18  Maybe -- I just look at the schedule.  Go ahead with your

19  point.

20         MR. MCCALLEN:  Well, you can also ask Mr. Orsini's

21  prediction on that one.

22         THE COURT:  Well, sure.  I mean, any good lawyer's --

23         MR. MCCALLEN:  But I think that's certainly what

24  they're arguing for.

25         THE COURT:  -- going to say, I'm going to win my case,

PG&E Corp., Pacific Gas and Electric Co.

1    not, I'm going to lose my case.

2              MR. MCCALLEN:  Sure.

3              THE COURT:  But --

4              MR. MCCALLEN:  But to come back, Your Honor, this is

5    unprecedented as far as I'm aware.  I've looked at the case;

6    the debtors cite one case.  They cite the Garlock case from the

7    Western District of North Carolina, and in that decision, the

8    court is clear that it was estimating solely for the purposes

9    of plan feasibility, and the court was equally clear that they

10   were not allowing or disallowing any claims on the basis of

11   those proceedings.

12             And as I said, here, in contrast, they are seeking to

13   adjudicate the merits of billions of dollars of claims before

14   the date by which this Court previously ordered those parties

15   had to come to the court to be heard.  So it's a little bit

16   of -- we're obviously -- this case is creating a lot of

17   situations that many people have not dealt with before in their

18   career, so I appreciate that that --

19             THE COURT:  I think every one of us, probably.

20             MR. MCCALLEN:  So I appreciate that the law is

21   sometimes not going to provide us direct answers, but it has

22   to, obviously, guide our decisions.

23             THE COURT:  Right.

24             MR. MCCALLEN:  And I think from a prudential

25   perspective, Your Honor, when you start thinking about the June

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    2020 deadline we have, and appellate risk, and what a decision

2    from the district court or the Ninth Circuit overturning a

3    particular decision in this case, the effect it could have on

4    that time line, the cost benefits just don't make sense.

5    There's no sense to run the risk of adjudicating those claims

6    before the bar date, when if --

7    THE COURT:  And I think you're preaching to the choir

8    here.

9    MR. MCCALLEN:  Okay.

10   THE COURT:  I'm not -- I thought it was clear in my

11   discussion with Mr. Julian, but the bar date is important, but

12   that doesn't mean I'm persuaded that we start the trial the day

13   after, either.

14   MR. MCCALLEN:  Of course.

15   THE COURT:  Because that's a kind of pretend due

16   process --

17   MR. MCCALLEN:  Of course.

18   THE COURT:  -- to tell somebody on the last day your

19   claim is filed that the next day your process is being denied

20   you.

21   MR. MCCALLEN:  Sure.  Let me move forward to what

22   it --

23   THE COURT:  It actually just -- it seems to me what it

24   does is, it puts an outer limit on the number of claimants,

25   leaving aside any who might have the benefit of late-filed

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp., Pacific Gas and Electric Co.

1    claim.  And we have a very liberal rule in the Ninth Circuit

2    for late-filed claims, so it's entirely possible that the bar

3    date will have some exceptions built into it.  But that's for

4    another day, and that's not the estimation problem.

5                    MR. MCCALLEN:  So then let me move on then, Your

6    Honor, to what I think is, from my perspective, problem number

7    one with the debtor's proposal, which is the debtors want the

8    Court to disentangle or to try to disentangle Tubbs from the

9    other fires.  And they say, do Tubbs first in phase 2, and then

10   in phase 3, come back and do all of the other fires, basically

11   everything that's left over after inverse condemnation and the

12   Tubbs issues.

13                   THE COURT:  Well, I mean, is that right?  If PG&E goes

14   and loses its position in Tubbs by a determination that it was

15   negligent, isn't there still that we then add Tubbs to the mix

16   for all the fires that are part of phase 3?

17                   I mean, I didn't understand that their proposal was

18   somehow we were finished with Tubbs if we -- in phase 2; I

19   mean, maybe if PG&E wins that's one thing, but --

20                   MR. MCCALLEN:  Sure.

21                   THE COURT:  -- not if they lose.

22                   MR. MCCALLEN:  So I think damages, under their

23   proposal, for all fires is in phase 3.

24                   THE COURT:  Yeah.

25                   MR. MCCALLEN:  Two issues on Tubbs --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1        THE COURT:  That's what I thought, too.

2        MR. MCCALLEN:  Yeah.  Two Tubbs issues, though --

3        THE COURT:  Um-hum.

4        MR. MCCALLEN:  -- are going to be heard in isolation.

5   Causation, that is what is the cause of the Tubbs fire, which

6   is a very significant issue --

7        THE COURT:  Um-hum.

8        MR. MCCALLEN:  -- and then two is going to be

9   negligence.  Was there evidence -- if we can prove that PG&E

10  caused the fire, are we also able to prove that they were

11  negligent in causing the fire?  Those two issues are both going

12  to be heard in the standalone phase 2; that's my understanding.

13       THE COURT:  Right.

14       MR. MCCALLEN:  Um-hum.

15       THE COURT:  Right.  That's what I thought.  And not

16  the number of dollars that any particular -- or in the

17  aggregate all the Tubbs victims --

18       MR. MCCALLEN:  Correct.

19       THE COURT:  -- suffered.

20       MR. MCCALLEN:  Correct.  But my point is a slightly

21  different one, Your Honor, which is that the negligence issue

22  which is going to touch on Tubbs is going to be very closely

23  related to the negligence evidence that the court would hear

24  with respect to non-Tubbs fires -- the twenty-odd fires that

25  aren't Tubbs.

PG&E Corp., Pacific Gas and Electric Co.

1    So here's the situation I'm trying to avoid, Your

2 Honor.  Let's just use the debtor's dates because they threw

3 them out there.  There's a Tubbs trial, phase 2, that starts in

4 October.  Evidence is presented about the cause of that fire,

5 and evidence is presented about PG&E's negligence with respect

6 to that fire.

7    Let's say the Court hears that evidence, and it's

8 going to involve issues like vegetation management:  did PG&E

9 satisfy their standard of care in terms of taking care of

10 vegetation in and around the origin point of the fire?  Or were

11 they negligent in doing so, failing to remove diseased trees,

12 failing to take down trees or to cut around power lines, issues

13 like that.

14    That would all be heard under the debtor's proposal by

15 you alone with respect to Tubbs only, in phase 2.

16    THE COURT:  Right.

17    MR. MCCALLEN:  Then, a couple months later, we'll come

18 back as part of phase 3, and among the issues to be heard would

19 be negligence with respect to all of the other fires, what I

20 call the systemic negligence at PG&E.  And so not only is it

21 inefficient, Your Honor, to hear evidence related to negligence

22 solely as to Tubbs in a standalone phase and then to hear it

23 again later -- there's going to be overlap -- it's not only

24 negligent, but it's also potentially problematic, because what

25 they're trying to do, Your Honor, is they're trying to get you

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    to make a decision about negligence-related issues with only

2    certain of the facts in front of you.

3            You could decide the negligence issue -- say you

4    decided for PG&E; you hear the negligence related to Tubbs, and

5    you say I don't think there's sufficient evidence of negligence

6    here, so I'm not going to find negligence on Tubbs.

7            THE COURT:  It sounds to me like you're leading up to

8    we got to put all the negligence issues together.

9            MR. MCCALLEN:  We got to put all of these issues

10   together.

11           THE COURT:  Well, yeah, and I think that's in your

12   papers, too.

13           MR. MCCALLEN:  Exactly, Your Honor.

14           THE COURT:  I think your argument, which I did read --

15   I read a lot of things; I just can't keep all of it straight --

16   is do one trial, not three.

17           MR. MCCALLEN:  Absolutely, Your Honor.

18           THE COURT:  And I don't imagine you feel quite the

19   same way about the legal question on inverse condemnation?

20           MR. MCCALLEN:  Well, actually I think it should go

21   to --

22           THE COURT:  Because that's not a trial; that's a legal

23   argument.

24           MR. MCCALLEN:  Well, so a couple of things on that,

25   Your Honor, because I'm not sure that I actually agree with

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    everything that's been said about inverse condemnation.

2         So I'm not going to repeat Mr. Julian's arguments on

3    the legal points.  We have them in front of Your Honor; we

4    think the law is clear.  And I heard what Your Honor said, was,

5    all the more reason to do it standalone up front.

6         THE COURT:  Right.

7         MR. MCCALLEN:  But there's a couple other

8    considerations that I think Your Honor should think about.

9         The first couple, again, are prudential issues.  I

10   think the most significant from my perspective is no one -- I

11   don't think anybody's contesting at this point that the law in

12   California is pretty well settled; it is what it is.  And so

13   what the debtors are asking Your Honor to do is to determine

14   quickly, up front, the extent to which you think the California

15   Supreme Court, if faced with this issue, would rule in their

16   favor.

17        And I would suggest, respectfully, Your Honor, that in

18   a situation like this where your decision is going to have --

19   is going to be looked to by parties even outside of the

20   bankruptcy context --

21        THE COURT:  Yes, I know.

22        MR. MCCALLEN:  -- one should exercise caution before

23   entering into the project that the debtors want to.  And my

24   point is simply this:  there are many things that could happen

25   between now and early October when they have you hear this

PG&E Corp., Pacific Gas and Electric Co.

1   issue, and between that point and January or February or

2   whatever the date the Court chooses for a final hearing in this

3   case, there's a lot of things that could happen which could

4   mean that Your Honor doesn't haven't to hear that issue.

5           THE COURT:  Well --

6           MR. MCCALLEN:  Doesn't have to decide that issue.

7           THE COURT:  Well, sure.  I mean, the obvious one is

8   consensual resolution.  And maybe there's --

9           MR. MCCALLEN:  Sure.

10          THE COURT:  -- some other ones that I'm not --

11          MR. MCCALLEN:  Exactly.

12          THE COURT:  -- thinking about.

13          MR. MCCALLEN:  And so there's really not -- and so

14  then the question becomes, all right, well, it's clear it'd be

15  better not to have to reach the issue.  So --

16          THE COURT:  Yeah, but --

17          MR. MCCALLEN:  -- what do we gain by reaching it?

18          THE COURT:  -- as you know, one of the best settlement

19  tools is a trial date, so -- another great settlement tool is a

20  dispositive motion date.  Another great one is the possibility

21  of competing plans.

22          MR. MCCALLEN:  Yeah, Your Honor, but they're cherry-

23  picking issues here that they think are beneficial to their

24  case to have them heard --

25          THE COURT:  Okay.

PG&E Corp., Pacific Gas and Electric Co.

1    MR. MCCALLEN:  -- up front as opposed to other issues

2  that could be presented from the other side.

3    THE COURT:  I'm going to cut you off again.  Not that

4  I don't want to hear from you, but to me, this is the kind of

5  argument that gets after the talk session and at the next

6  session when the only order of business is how do I go about

7  this estimation process?  And if the parties consent and come

8  to a consensual procedural agreement that you're advocating,

9  I'm not going to second-guess them.  If you're still

10 advocating, let's do it together, I'll listen to the arguments

11 and do it.

12    And I mean, to some extent, I'm -- maybe this isn't

13 what Mr. Julian wanted, but this discussion today on that issue

14 is a preview for what needs to be then focused more

15 specifically at the next hearing to say, okay -- because it

16 gets to the question of which judge and all of the other points

17 that I've asked --

18    MR. MCCALLEN:  Sure.

19    THE COURT:  -- you to think about.  And meanwhile, I'm

20 thinking about, what do I do if there is no consent, as I

21 suggested.  And so I have to focus on what comes next.

22    So your suggestion goes into the hopper, but I want it

23 to go into the colloquy that you have with the other two

24 significant players.

25    MR. MCCALLEN:  Of course, Your Honor.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1        THE COURT:  Yeah.

2        MR. MCCALLEN:  If that's the case, and if the next

3   step from here is to go and talk about the next step, then I

4   can cede the podium, and we'll --

5        THE COURT:  Well, when you think about it in terms of

6   preparing and reading these briefs, it's just -- every time I

7   read something, there's a new wrinkle to it.  So I mean, I

8   didn't have occasion to even drill down on these questions of

9   some of these issues until days ago, so --

10        MR. MCCALLEN:  Sure.

11        THE COURT:  -- it just -- and I can't keep up with it.

12   But I'm happy to have the target keep moving because maybe

13   people come to a resolution of it.

14        So let me -- so if you're okay, we'll hold it at that.

15   I mean, I want you to feel comfortable, and I hope Mr. Julian

16   got the message:  you're not going to go out of here today

17   with, okay, the estimation trial starts on October 7th --

18        MR. MCCALLEN:  Um-hum.  And that --

19        THE COURT:  -- and the three-week trial that Mr.

20   Orsini wants starts whatever date he suggested.  It's just not

21   going to happen.

22        So this is more like a pre-trial that we'd be having,

23   except now we're going to -- it's like a pre-trial of our

24   estimation hearing.

25        And seriously, we're back to the question of, all

PG&E Corp., Pacific Gas and Electric Co.

1    right, if I'm going to be making a recommendation to the

2    district court, I have to tell the district judge what I'm

3    recommending, so -- okay.

4            MR. MCCALLEN:  Understood, Your Honor.

5            THE COURT:  All right.

6            MR. MCCALLEN:  Thank you very much.

7            THE COURT:  I'll tell you what, I had wonderful ideas

8    about timing.  I'd like to hear the other counsel who want to

9    be heard on the TCC side.

10           And, Mr. Orsini, unless you think it would be a

11   miscarriage of justice, I think I'll then declare the

12   lunchbreak, and then when we resume, I'll let you make your

13   closing argument, and then we'll turn directly to the relief

14   from stay.

15           Let me hear from the counsel that want to be heard in

16   opposition to the motion first, and then we're going to take

17   our break.

18           MR. MARSHACK:  Thank you, Your Honor.  Richard

19   Marshack, Marshack Hayes.  I represent -- I'm counsel with Mr.

20   Singleton.

21           THE COURT:  Yeah.

22           MR. MARSHACK:  And we represent 5,200 victims --

23           THE COURT:  I know the background.  I know who you

24   are.

25           MR. MARSHACK:  Thank you.  I'll make my points brief,

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    and then Mr. Singleton will take over.  He's my Mr. Pitre, if

2    you will.

3            Judge, preliminary comment.  It's an absolute pleasure

4    to watch how hard this Court is working to get it right.  We

5    believe that 502 is a wonderful, wonderful tool under the right

6    circumstances.  We don't have the right circumstances here,

7    Your Honor.  This Court should not grant the motion to

8    estimate.

9            This would be a --

10           THE COURT:  Okay.  That's a new approach.

11           MR. MARSHACK:  The -- if we --

12           THE COURT:  I don't think I have a choice, but you

13   tell me --

14           MR. MARSHACK:  I understand it.  If we didn't have

15   a -- and we'll address that.  If -- I think the Court

16   absolutely does have a choice, but if --

17           THE COURT:  Well, the word "shall" is in the statute.

18   But go ahead, make your point.

19           MR. MARSHACK:  Well, I believe the TCC argued, if I

20   read their brief correctly, that we should do estimation.

21           THE COURT:  Go ahead.  Thank you.  What do you want me

22   to say?  I mean, I've read as much as I can, Mr. Marshack.

23   Just tell me what you believe I should do.

24           MR. MARSHACK:  If the Court did not have a June 30th

25   deadline, then we could do justice.  Then there could be a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   very, very good estimation trial.  But for some reason, we're

2   living under a June 30th deadline, and we are treating that as

3   an absolute.  And, Your Honor, you can't not take AB-1054 and

4   say because of 1054, we're going to abrogate due process.  We

5   can't do that.  We can't let the state legislature rewrite the

6   laws of due process.

7           We have to prove causation in twenty-one fires.  And

8   you talked about, what does that evidence --

9           THE COURT:  Well, but look, I had the same discussion

10  with Mr. Pitre and Mr. Kelly; what you have to prove maybe

11  isn't the kind of proof that you would prove if you were in a

12  state court.

13          MR. MARSHACK:  And Mr. Singleton addressed that issue

14  but what Mr. Pitre said and what Mr. Julian said was, you just

15  can't have one witness, you can't have two witnesses.

16          THE COURT:  Well, but that's -- who says what the

17  rules are?  I mean, I understand your point and I'm not going

18  to pretend that it isn't important, but you know what, it --

19  you may -- there may be certain things that are completely

20  antithetical to what you gentlemen, as state-court litigators,

21  are used to.  Because as I said -- I think I got an

22  acknowledgment on the other side -- this 502 guy doesn't exist

23  out in -- outside the bankruptcy world.

24          MR. MARSHACK:  And --

25          THE COURT:  And so -- but we're stuck with it unless

PG&E Corp., Pacific Gas and Electric Co.

1　there's a legal argument that I should ignore it.  But, Mr.

2　Marshack, what you're telling me, I think, is just put 502 on

3　the table -- on the side; let -- I presume what you're then

4　going to say, let relief of stay go forward, and 1054 be

5　damned.  If they get the problem solved, fine; if not, that's

6　okay too.

7　　　　　　MR. MARSHACK:  I am saying that --

8　　　　　　THE COURT:  But I'm not ready to do that.

9　　　　　　MR. MARSHACK:  I am saying it.  I'm saying there are

10　alternatives that Mr. Singleton will talk about.

11　　　　　　THE COURT:  Okay.

12　　　　　　MR. MARSHACK:  But what I'm really saying is, there's

13　an overriding due-process issue here, and I'll just give you

14　one example.

15　　　　　　THE COURT:  But --

16　　　　　　MR. MARSHACK:  Discovery.

17　　　　　　THE COURT:  -- you're -- go ahead.  Make the --

18　　　　　　MR. MARSHACK:  Discovery.  Does anybody in this

19　courtroom really think that PG&E is going to comply and give us

20　everything we need by the estimation trial date?  Nobody in

21　this courtroom believes that.

22　　　　　　THE COURT:  No.  No.  But I think that they're going

23　to comply and give them -- give you everything I order them to

24　do, or else they won't have their case.  And I need help from

25　you and the others to tell me what to order.  But it isn't --

PG&E Corp., Pacific Gas and Electric Co.

1    it isn't -- we're not pretending we're in superior court.

2              So, Mr. Singleton, you seem to be -- the two of you

3    together --

4              MR. SINGLETON:  Right.

5              THE COURT:  -- I -- we want you both, but make your

6    pitch, please.

7              MR. SINGLETON:  Thank you, Your Honor.  And I don't

8    want to delay everybody from lunch.  Let me --

9              THE COURT:  No.  That's okay.

10             MR. SINGLETON:  Okay.

11             THE COURT:  I just -- I want to get to what I have to

12   deal with here.

13             MR. SINGLETON:  Understood.  I think Mr. Kelly and Mr.

14   Pitre touched on all the salient points, and they did it very

15   emphatically.  And I want to just address an issue that I think

16   may be lost in the mix here.

17             The Court absolutely has the right, as we understand,

18   under the estimation procedures to make it a truncated

19   procedure.  So we don't have to have -- and I know Mr. Kelly

20   and Mr. Pitre understand this -- we don't have to have the same

21   type of proof that we would have to have in superior court.

22   What I think bothers us is that we don't have the discovery

23   that we need even to put on the truncated --

24             THE COURT:  No, I know, and I've heard that before.

25             MR. SINGLETON:  Exactly.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  I've heard it from several of you.  And I

2  got the message.

3      MR. SINGLETON:  Understood.  Right.  But here's the

4  issue that I think is concerning me and I think is concerning

5  everyone.  We cannot be ready for estimation trials, even if

6  they're in a truncated form, on negligence on twenty-four

7  fires, which is what PG&E says is on the table, by June 30,

8  2020.

9      THE COURT:  Well, then why don't we just call it a

10  day?  I mean, I have no option, sir.  I don't have an option.

11  Unless -- if this is a motion to table the estimation, you can

12  make it, but I'm not going to grant it because I believe that

13  the statute requires me to do my best.

14      Now, let me say that if for some reason, whether it's

15  through mischief or just the magnitude of the problem, we can't

16  meet that deadline, then that's unfortunate.  But I said before

17  at a prior hearing, I don't know if you were here, I am

18  committed, as long as I am able to to make sure that the

19  bankruptcy process doesn't slow the system down.

20      So as the person in charge of the bankruptcy process,

21  I'm pushing forward on the estimation in the best way I can

22  until I reach the inevitable or in -- reluctant conclusion that

23  it can't be done.  And I haven't -- I'm not there yet.

24      MR. SINGLETON:  And, Your Honor, I think this is what

25  I would propose.  Obviously, 502(c) says "shall", but it also

PG&E Corp., Pacific Gas and Electric Co.

1   says, undue delay.  And I think that's the key here, is what

2   does undue delay mean in this context?

3           THE COURT:  And what do you say it means?

4           MR. SINGLETON:  Well, for example, when I had the

5   opportunity to question the CFO of PG&E under oath at the

6   creditor's meeting, I asked him, how long it would be?  And he

7   said, it will be three to five years before we liquidate these

8   cases.

9           THE COURT:  And isn't that undue delay?  Would you

10  like to tell your clients that they're going to get a -- their

11  first payment in five years?

12          MR. SINGLETON:  Well, I wouldn't like to tell them

13  five years, but I --

14          THE COURT:  Well, that's what you're telling them.

15          MR. SINGLETON:  Well, I -- respectfully, Your Honor,

16  what I'm saying is on the one hand we have PG&E now arguing

17  it's got to be ten months.  And on the other hand --

18          THE COURT:  No.  The California legislature said it,

19  and you're the first person to come to the podium that sort of

20  implies that maybe we should just ignore that deadline.

21          MR. SINGLETON:  Your Honor, I'm not --

22          THE COURT:  And I'm not with you on that point.

23          MR. SINGLETON:  And I'm not saying we should ignore

24  it.  What I'm saying is this.  PG&E's argument, with all due

25  respect, is that because we have this 1054 bill which gives

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  them a 10.5-billion-dollar gift from the rate payers, we have

2  to cancel or abrogate due process for the victims.  And --

3      THE COURT:  Mr. Singleton, you're not making any

4  points with me.  I -- my job is to apply due process, but I'm

5  following 502 until I'm told -- until I figure out it can't be

6  done.  I'm just not going to do it.

7      MR. SINGLETON:  Your Honor, all I'm saying is this.

8  If we set out a time table for realistic deadlines, and that

9  means that some of the negligence trials would have to take

10  place after June 30, 2020, then the burden shifts.  Now rather

11  than the wildfire victims getting the short end of the stick

12  and having due process abrogated, PG&E has to decide whether or

13  not they want to contest negligence in fires where everybody

14  knows they're negligent.

15      THE COURT:  I understand.  And I'm telling you, you're

16  just wasting my time and yours.  I am not going to put this

17  case on the back burner, until all these trials go on their

18  way.  I'm going to go forward with the 502 process, either in

19  parallel with the request that's been made for relief on Tubbs

20  or not, until I reach the conclusion, or I'm told by a higher

21  court, that it's just not going to happen.  And if I have to

22  make the decision that the bankruptcy component of this complex

23  reorganization is not going to be able to live up to the

24  statutory deadline, then I'll take the consequences.  But I'm

25  not there on August 14th.

operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. SINGLETON:  Understood, Your Honor.

2          THE COURT:  Okay.

3          MR. SINGLETON:  And really, that's all we're saying --

4          THE COURT:  Okay.

5          MR. SINGLETON:  -- is that rather than setting a short

6    time line as PG&E has requested, it will take us a good six to

7    nine months, if not longer, to get the discovery we need.  So

8    we would like the estimation trial later on --

9          THE COURT:  I think you're doing the same thing that I

10   said at the outset.  I don't mean to offend --

11         MR. SINGLETON:  Sure.

12         THE COURT:  -- or be insulting to lawyers who make

13   their living successfully outside of the bankruptcy court.

14   We're here now.

15         MR. SINGLETON:  Understood.

16         THE COURT:  And the rules are different.  And the

17   attitude is different.  And the mindset is different.  And

18   hopefully, the adherence to due process is not different.  But

19   it's a different rule.

20         MR. SINGLETON:  Understood, Your Honor.

21         THE COURT:  And so let's not --

22         MR. SINGLETON:  I'll move on.

23         THE COURT:  Okay.

24         MR. SINGLETON:  The other issue that I wanted to

25   address, which -- Your Honor asked a logistical question.  I

(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corp., Pacific Gas and Electric Co.

1  can answer it for you.  What happens if the Court grants the

2  relief from stay logistically?

3           What would happen is as soon as that case was

4  transferred over to superior court, we would get a date from

5  the clerk to file --

6           THE COURT:  Okay.

7           MR. SINGLETON:  -- the motion for preference in trial

8  setting.  That typically takes about twenty-one to twenty-eight

9  days.  When that is heard, the judge enters an order and the

10  trial must take place within 120 days.  So realistically, that

11  would be heard next month.  The trial would happen in January.

12           THE COURT:  And it would grant it, just when it's

13  submitted?  There'd be no opposition?

14           MR. SINGLETON:  Typically --

15           THE COURT:  Look, again, I don't know why we're doing

16  this.  You didn't seem to --

17           MR. SINGLETON:  Okay.

18           THE COURT:  -- get the message.  This is really about

19  relief from stay.  I raised the question before.  We start with

20  the record showing that there is already in place a preference

21  order dealing with the Atlas fire.  Now, I'm sure Judge Karnow

22  or whatever judge makes the decision will be told why that's

23  not right.

24           But I am not turning this into another version of -- I

25  mean, let me rephrase that.  I asked for advice and I'll listen

PG&E Corp., Pacific Gas and Electric Co.

1    to your suggestion as to what you think the time frame will be

2    if I grant a relief from stay.  But I'd rather we defer that

3    later.  So --

4              MR. SINGLETON:  That's fine.

5              THE COURT:  -- Mr. Singleton, you've made the pitch

6    that you believe I should defer and delay 502 process.  I am

7    not going to do that.  I'm going to stick with what I told all

8    the other parties earlier; I'm planning to -- whether there are

9    competing plans and whether there are grants for relief from

10   stay, there is still going to be a scheduling of an estimation,

11   sooner rather than later.

12             You're welcome to share your views with the counsel.

13   You heard Mr. McCallen suggest that he wants people to talk.  I

14   hope they'll invite you to talk as a courtesy, if nothing else.

15   And I will listen to your views when we next convene to talk

16   about how is this trial going to go forward --

17             MR. SINGLETON:  Thank you, Your Honor.

18             THE COURT:  -- or the estimation hearing.

19             Okay.  Thank you.

20             MR. MARSHACK:  Thank you, Your Honor.  And one more

21   point is, should the Court decide to -- the Court's going to go

22   forward with an estimation trial.  Should they do so, I'd like

23   the Court to keep in mind who gets to participate.  The SLF

24   group has 5,200 claimants and they would like to participate

25   actively at the trial.

(970) 286-9290 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Yeah, I haven't even thought about that.

2    The debtor made the motion.  We'll -- anybody who -- when I

3    determine when there'll be, then what I'll call the pre-trial

4    or the scheduling on the 502 estimation, you're certainly

5    welcome to participate and be heard.

6          MR. MARSHACK:  Thank you, Your Honor.

7          THE COURT:  Okay.

8          Mr. Pascuzzi, have you been standing this whole time

9    or did you get a seat?

10          MR. PASCUZZI:  No, Your Honor.  I was hoping to get up

11    here quickly.  Paul Pascuzzi, Felderstein Fitzgerald Willoughby

12    Pascuzzi & Rios.  Your Honor, we're co-counsel with the

13    California Attorney General's Office.

14          We filed a response.  The state agencies listed it at

15    docket 3421 --

16          THE COURT:  Yeah.  But you're already focusing on

17    liquidate it or not, right?

18          MR. PASCUZZI:  Yes, Your Honor.  It's just an issue

19    that's going to have to be addressed in connection with the

20    process, whether these agencies with statutory based claims for

21    the most part are --

22          THE COURT:  But how -- I mean, yeah, I don't know

23    how -- I was interested in the argument, but I mean, what do

24    you want to do?  What should I do?

25          MR. PASCUZZI:  Your Honor, you don't have to do

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   anything right now.  It's part of what will occur, I think, as

2   the process goes forward.  This will be an issue that will have

3   to be addressed.

4        THE COURT:  Yeah, but in terms of scheduling, you

5   heard Mr. Singleton say that he wants to be there when we have

6   this estimation.  I presume you want to be there if someone is

7   going to be estimating some of your clients' claims?

8        MR. PASCUZZI:  Right.

9        THE COURT:  And if the other side says, sure, we owe

10  the department of such and such, X dollars, there's nothing to

11  talk about.  These are your figures.

12       MR. PASCUZZI:  Right, Your Honor.  And I think the

13  issue will be when the claims are filed, to determine whether

14  they are in fact subject to estimation under 502(c) as

15  unliquidated.

16       THE COURT:  But don't we start by looking at the

17  claim?

18       MR. PASCUZZI:  Right.  Which hasn't been filed yet.

19       THE COURT:  And if the claim says, we suffered a fire

20  and we haven't calculated the damage, that's sort of

21  unliquidated to me.

22       MR. PASCUZZI:  And I don't think they will.

23       THE COURT:  You're too experienced of a bankruptcy

24  lawyer to know the difference between unliquidated and

25  contingent.  So it's not contingent and it may be disputed, but

(971) 701-0600 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    that's not the test either.

2        MR. PASCUZZI:  Right.

3        THE COURT:  So unliquidated is a pretty easy term to

4    me.

5        MR. PASCUZZI:  Understood, Your Honor.

6        THE COURT:  Okay.

7        MR. PASCUZZI:  And we raise the issue and the debtor's

8    papers said -- they contended they were unliquidated and

9    subject to estimation.  I'm just telling the Court, that's

10   going to be an issue that we'll have to deal with as part of

11   this.

12       THE COURT:  It seems to me that this is kind of

13   another sub-battle that's not unlike the thing that I had a

14   discussion with Mr. Julian about.  That it could -- if we had

15   to do it, we could actually have a summary judgment motion to

16   determine whether the claim is liquidated or unliquidated.  It

17   would be kind of an interlocutory order, but it -- I have a lot

18   of trouble wondering how there would be any doubt about it, one

19   or the other, between experienced counsel.  So --

20       MR. PASCUZZI:  Your Honor, if you look at CAL FIRE's

21   claims, they're fire suppression, cost reimbursements, they're

22   statutory, they're completely distinguishable from the types of

23   claims that the tort committee constituents have.  So --

24       THE COURT:  Right.  Right.  I'm getting it and --

25       MR. PASCUZZI:  -- then they will be, you know, to-the-

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corp., Pacific Gas and Electric Co.

1    penny calculated.  So --

2            THE COURT:  But if they're to the penny, they don't

3    seem unliquidated.

4            MR. PASCUZZI:  Exactly.  That's our point, Your Honor.

5            THE COURT:  And if the debtor wants to dispute them,

6    they can file a claim objection.

7            MR. PASCUZZI:  Exactly.

8            THE COURT:  And if the debtor wants me to estimate

9    them -- well, let's cross that bridge when we come to it.

10           MR. PASCUZZI:  Exactly, Your Honor.

11           THE COURT:  Mr. Tredinnick, you're going to tell me to

12   deal with the inverse condemnation -- oh, are you done?

13           MR. PASCUZZI:  No, I'm not.  Just the only other part

14   was the --

15           THE COURT:  Okay.

16           MR. PASCUZZI:  -- CAL FIRE discovery issue.  I raised

17   it last time at our last hearing about discovery.  There's

18   going to need to be coordination regarding discovery on CAL

19   FIRE.  So we're here --

20           THE COURT:  Well, I mean, did you make any progress?

21   You haven't complained about anything?

22           MR. PASCUZZI:  No, no, Your Honor.  I just -- we're

23   anticipating that's going to be a big issue with a lot of

24   parties with -- seeking a lot of information.  And we're here

25   to work in good faith on that, at that stage of the process,

                    PG&E Corp., Pacific Gas and Electric Co.

1    Your Honor.

2              THE COURT:  Okay.  I got it.

3              MR. PASCUZZI:  Thank you.

4              THE COURT:  Thank you.

5              Mr. Tredinnick, I read your briefs.  You want to be

6    heard on the inverse condemnation?

7              MR. TREDINNICK:  Yes, Your Honor.  Edward Tredinnick,

8    Greene Radovsky, on behalf of the City and County of San

9    Francisco.

10             I'll keep it simple.  Inverse condemnation is

11   important to the City.  We feel like we should be able to have

12   a say in --

13             THE COURT:  That isn't -- do you agree with Mr. Julian

14   and the discussion we had?  I mean, is it something that could

15   be just dealt with by a motion?

16             MR. TREDINNICK:  I agree.

17             THE COURT:  And obviously you're a proponent of --

18   it's alive and well --

19             MR. TREDINNICK:  Yeah.

20             THE COURT:  -- so the simple solution to me would be

21   to coordinate with Mr. Julian and -- I mean, I haven't decided

22   what to do, but I'm certainly going to presume that the right

23   thing to do is tee it up, perhaps after the bar date as

24   suggested, and have a briefing schedule and get on with it.

25             MR. TREDINNICK:  I don't think we have any quarrel

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   with that just as long as we can be involved in that process.

2   Obviously, we would coordinate with the tort-claims committee,

3   if that's the appropriate way to go.

4           THE COURT:  Well --

5           MR. TREDINNICK:  We don't want to add any more papers

6   to the process.

7           THE COURT:  I think you have to just make sure Mr.

8   Orsini or one of the lawyers working with him knows your

9   number.  So that -- because they're the moving party, they want

10  the estimation.  They suggested phase 1, and it's not worth

11  spending a lot of time saying when.  If my comments aren't

12  already pretty clear, I think I am of the view it has to be

13  after the bar date, but that's not a huge difference.  And the

14  other side can argue to me why it should be earlier, but I'm

15  not -- I'm not likely to agree with them.

16          But what I would anticipate would be -- well, I'll

17  just make it clear.  Mr. Orsini, when we talk about scheduling,

18  make sure Mr. Tredinnick and anybody else who's identified as a

19  prospective opponent on this legal question is in the

20  discussion.

21          And, Mr. Tredinnick, my message to you is, make sure

22  you coordinate your position with Mr. Julian or anyone else so

23  the court judge doesn't read the same brief twice.  One brief

24  signed by two good lawyers is better than two briefs signed by

25  the same two lawyers that aren't twice as good or double

PG&E Corp., Pacific Gas and Electric Co.

1    better.  Okay?

2           MR. TREDINNICK:  Message received.

3           THE COURT:  Okay.

4           MR. TREDINNICK:  Thank you, Your Honor.

5           THE COURT:  Mr. Orsini, can you live with a break or

6    do you want to have your closing now and --

7           MR. ORSINI:  I'll try to make this easy, Your Honor.

8    Subject to any questions from the Court, we have nothing

9    further to add on this motion.  I understand the Court's point

10   that there will be further discussions about scheduling, but

11   we'd ask that the Court enter an order setting forth that

12   estimation will proceed so that we could have those

13   conversations and come back.

14          THE COURT:  Well, I mean, setting an order that says

15   estimation will proceed, if there's some magic to having it by

16   order -- I hope that if I recite, then I expect the principal

17   counsel to meet and confer and be ready to talk about

18   scheduling the specifics of the estimation and -- at the next

19   hearing.

20          And look, you have to do whatever you can do to make

21   sure that at the next hearing, I don't hear this repeated,

22   repeated objection to your side providing discovery.  I know

23   that you said you have.  And again, I'm not going to criticize

24   the state-court lawyers for forgetting this isn't pre-trial in

25   a superior-court trial; it's pre-trial if you will, in an

PG&E Corp., Pacific Gas and Electric Co.

1    estimation proceeding.  But they have to have the benefit of

2    discovery, particularly on these issues that you're not

3    inclined to give.  Now, you might want to go back and decide

4    whether you're going to give up on some of these issues, and

5    I'm not going to tell you how to represent your client; you

6    know how to do it.  So okay.  With that --

7              MR. ORSINI:  I understand your point on that, Your

8    Honor.  I think as I made clear last week when we were on the

9    phone, we're amenable to discovery and we're ready to sit down

10   and have that plan put in place.

11             THE COURT:  Yeah.

12             I didn't laugh.

13             No, but I --

14             MR. ORSINI:  Those who were laughing forget the fact

15   that they already have seven million pages of discovery.

16             THE COURT:  No.  No.

17             MR. ORSINI:  And that they've had the opportunity to

18   make many inspections, but --

19             THE COURT:  Let's not go on to that.  What I'm doing

20   is saying that in the near future, and I define "near" to be in

21   the next few days or not much more than that, I will have a

22   hearing where the primary focus will be scheduling the

23   estimation.

24             Now, in fairness, I haven't decided what that

25   includes.  You've heard my view about teeing up the pure legal

PG&E Corp., Pacific Gas and Electric Co.

1    question and timing, and that shouldn't be a very difficult to

2    do.  And I'll assume, notwithstanding Mr. Julian's optimism,

3    you still believe you can make a good-faith, credible argument

4    to the contrary.  So we'll leave it at that.

5            And you've heard Mr. McCallen's suggestion that maybe

6    we got to take the Tubbs piece of phase 2 and make it part of

7    phase 3.  That's open for discussion.

8            Oh, one other thing that I didn't mention to any of

9    you today.  There was an ex parte motion from the TCC about

10   settling on -- setting a hearing on this issue of the jury

11   entitlement and the preservation, and you opposed that motion.

12           I am not going to act on it.  I'm going to take it up

13   at the next hearing to see if there's really an issue.  It

14   seemed to me there is no issue.  You conceded there's no issue

15   on the question of filling out questionnaires.  So that

16   suggests to me that maybe you still believe that filing a claim

17   triggers some sort of consequence.  I don't know what's left.

18           My point is that at the scheduling hearing when we are

19   scheduling all these other things, I want to schedule whether

20   anybody still really has an argument about the right.

21           But, Mr. Julian, there's two sides to this.  I think

22   the motion that you filed cites 28 U.S.C. 1411 but I think the

23   discussion we all had this morning suggests that it's sort of

24   superseded by the estimation process, depending -- and again,

25   this is not the judicial officer question.  It's the way the

(970) 691-8707 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   section works and the way the case law tells us.

2          So I'll leave it at that.  I don't need any colloquy

3   about it.  Be prepared to tell me what's ripe for adjudication

4   on that issue, if there's anything left to be ripe about.

5          I'll see you at 2:30.

6          MR. ORSINI:  Thank you, Your Honor.

7          THE COURT:  And we'll deal with the relief from stay

8   motions.

9          UNIDENTIFIED SPEAKER:  Thank you.

10         THE COURT:  Thank you, everyone.

11      (Recess from 1:10 p.m., until 2:37 p.m.)

12         THE CLERK:  All rise.

13         THE COURT:  My courtroom deputy didn't think I was

14  coming in; she thought I'd left.  Please be seated.

15         Let me go through a couple minor scheduling items that

16  I kind of thought about.  I said as we broke that I'm going

17  to -- no matter what I do with the other motions, for

18  estimation we're going to go to a status conference and so on.

19  So I'm planning on setting that for two weeks from yesterday,

20  one our regular days; that's August 27th at 9:30.

21         And for calendaring purposes, whether we call it the

22  continued hearing on the estimation or a status conference,

23  it's to talk about the things that are going to take place at

24  the estimation process.

25         And so everything is still up for discussion.  Phase

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1, whether it's three phases, whether it's, as Mr. McCallen

proposed, one phase; whether we bifurcate it different ways and

so on and whether or not there's relief from stay.

And I'm also going to set, on that same calendar, the

27th at 9:30, a hearing, if necessary, on what we'll call the

TCC motion regarding the preservation of jury-trial rights.  I

have a feeling that is going to be a nonissue, but who knows.

And so what I'm going to ask is no later than one week prior,

which is the 20th, that I get simultaneous briefs from the

debtors and the TCC.  I don't think I need any other briefs,

but if anybody else wants to weigh in, I'll come to that.  And

I want to limit the pages for that one because it's a narrow

issue.  So no more than ten pages.  Even that's not very

limiting.

But one of the things that I understand, many of you

have to -- and are trained in good practice, I guess, is to

reinvent all the things.  I can remember in the first case,

those of you that were with us in the first case, PG&E suffered

so many abuses, in its mind, at the hands of Enron and some of

the other big companies that every single brief opened with

about an eight-page dissertation on the evil empire and all the

bad things that have been done to the debtor.

So I finally asked everybody to put it all into a

footnote referencing some of their prior dockets, so I didn't

have to read the same eight pages all over again.  So at some

                PG&E Corp., Pacific Gas and Electric Co.

1   point, I might do that.  And the same thing here; you don't

2   have to tell me this case was filed on the date it was filed,

3   and that the debtors in possession, and when the committees

4   were appointed.  But that's that.

5           I'd like, on the 19th, which is a week from today,

6   right?  If I've got my dates right.  Oh, not it's not.

7           IN UNISON:  No.

8           THE COURT:  No, it's not.  No, it's not.  It's Monday

9   the 19th.

10          UNIDENTIFIED SPEAKER:  It's Monday.

11          THE COURT:  I'd like counsel for the creditor's

12  committee -- and again I made it clear is I didn't designate

13  any particular counsel, but that's the date I'd like a brief

14  statement placed on the docket that the two fire group

15  committees and the debtors have agreed that all matters can be

16  decided by the bankruptcy judge, or there has not been a

17  unanimity on that issue, without disclosing where people were

18  on that subject.

19          I left the bench yesterday, and then today at midday,

20  assuming that perhaps even by the end of today, I would be able

21  to announce a ruling on the two exclusivity motions and the two

22  relief from stays.  That's just not something I can do anymore.

23          So I will tell you that I intend to issue a short,

24  written ruling on those four motions, the two exclusivity

25  motions and the two relief from stay motions, without

PG&E Corp., Pacific Gas and Electric Co.

1    elaboration, but at least try to state in -- succinctly my

2    reasoning.  My goal is to attempt to get that out by Friday.

3    More likely, it might be Monday; that's my deadline.

4         And so I -- to the extent that members of the media

5    have been following, and I read in the paper I'm supposed to

6    issue a ruling today, but it's more important that we take the

7    time for all of the issues to be absorbed.  That's my goal.

8         And also, sometime prior to August 27th, I will

9    attempt to lay out what I will call sort of a tentative ruling.

10   That's perhaps not exactly the right word, but tentative --

11   we'll call it a tentative ruling on what will be my view on

12   what should be done in our estimation process.

13        In other words, I will reflect on what I've heard from

14   all of you today about should we separately brief the kind of

15   inverse-condemnation issue.  Should we separately split Tubbs

16   into negligence versus damages?  Should we roll the three into

17   one?  You know, all the things that we talked about today.  And

18   it will be really in the nature of talking points, if I can use

19   that term that other organizations use, for focusing the

20   discussion on the 27th about a status conference.  And I'm

21   going to, of course, take counsel's suggestion that I direct

22   the parties to talk to one another and I'm not going to issue

23   an order.  You're responsible lawyers representing your

24   clients.  I don't have to tell you how to do that.

25        I expect that the discussions of timing and discovery

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   and to see if there's any agreement to focus on any of the

2   aspects that are relevant to the estimation -- I presume Mr.

3   Singleton and his comments notwithstanding, the message was

4   clear that I intend to, at least, attempt to go forward on an

5   estimation process consistent with what we were talking about.

6   That is not say that I've agreed with any specific points that

7   Mr. Orsini argued or disagree; it's just open for discussion.

8   I debated even squeezing that into an earlier time, but I

9   realize that all of you are doing all of the important things

10  you're doing, not only for this case but other responsibilities

11  and travel and what have you.

12          So that's the goal, 27th.

13          And so with that, I will go to the relief from stay

14  items that are on the calendar, unless, Mr. Orsini, you or any

15  of the principal counsel believe I've either left something

16  unattended to or needs for me to say anything.  Mr. Orsini?

17          MR. ORSINI:  I don't believe so, Your Honor.

18          THE COURT:  Okay.  Mr. Julian?

19          MR. JULIAN:  Fine, Your Honor.

20          THE COURT:  Okay.  And I --

21          MR. DE GHETALDI:  Relief from stay, Your Honor?

22          THE COURT:  We're coming to that.  That's what I'm

23  coming to.

24          MR. DE GHETALDI:  Okay.

25          THE COURT:  That's --

PG&E Corp., Pacific Gas and Electric Co.

1      MR. DE GHETALDI:  I've got something to say on that

2  then.

3      THE COURT:  I know you do and so do I.  Now we're

4  about to call it.

5      MR. DE GHETALDI:  I thought you weren't going to call

6  it, Your Honor.  That's what I -- my mistake.

7      THE COURT:  No, I think you misunderstand, Mr. de

8  Ghetaldi.

9      So consistent with what I said, I said that -- I said

10  that the moving parties will have, I think, forty-five minutes,

11  right?  Isn't that what I said?  Forty-five minutes for opening

12  arguments.

13      So, Mr. Julian, have you divided up the territory?  I

14  mean, it's much of what we talked about before.  The difference

15  is, we're doing them together, and so we're not doing it twice,

16  and we'll just take whatever time we want.  Okay.  You okay

17  with that?

18      MR. JULIAN:  Yes, Your Honor.

19      THE COURT:  Okay.

20      MR. JULIAN:  Robert Julian for the official committee

21  of tort claimants.

22      Your Honor, I will address simply three bankruptcy

23  issues and then turn it over to the state-court lawyers who, on

24  behalf of their thirteen Tubbs fire individual plaintiffs,

25  joined in the relief from stay motion as parties, as moving

PG&E Corp., Pacific Gas and Electric Co.

1  parties too.

2      I have the following three comments, Your Honor.

3  First, we filed this motion primarily because we're dealing

4  with a capped trust that has been promised by the debtor and

5  other parties that is at risk of underfunding by reason of an

6  estimation process that, because it's capped, is for purposes

7  of distribution.

8      In our read of the cases -- and common sense, in our

9  view -- is that when dealing with estimation for purposes of

10 establishing the funding of a capped trust that could put the

11 plaintiffs at risk of underfunding when everyone else is being

12 paid in full, the Court, prudently, should adopt special

13 procedures to estimate.  Among them are relief from stay; try

14 jury trials where causation is at issue; estimating high, as

15 Judge Perris stated; mini-trials and advisory jury trials.

16 Because the Tubbs liability issue is a gating issue in this

17 case -- meaning they can't resolve funding of a trust or

18 agreeing on a consensual plan; everyone agrees to that -- we've

19 picked Tubbs because it's the most important case and it is a

20 gating issue.

21     So the short point for number one is, we believe that

22 while the Court's discretion on estimation is broad, we believe

23 the cases establish that in this unique circumstance,

24 discretion, when these facts are present, should be exercised

25 one way in using specialized procedures, relief from stay being

PG&E Corp., Pacific Gas and Electric Co.

1    one of them.

2          The second reason that we believe relief from stay is

3    required, as a matter of the proper exercise of discretion, is

4    that where causation is at issue for an entire set of claims,

5    that could bankrupt the capped trust, or even if there's not a

6    capped trust, the Court should not estimate how a jury would

7    decide those claims.  The Court should permit a jury to do it

8    itself.

9          THE COURT:  That's sort of what Judge Perris talked

10   about in --

11         MR. JULIAN:  Yes.

12         THE COURT:  -- the Corning case, right?

13         MR. JULIAN:  Yes.  And the third reason has nothing to

14   do with the proper exercise of discretion.  It has to do with

15   the tort committee's ability to obtain consent for a consensual

16   plan or a plan in a cramdown confirmation battle.  And in that

17   regard, we reviewed the cases, especially the ones that the

18   debtor's cited to you in their reply estimation brief, and we

19   noticed a couple of things.

20         First, those cases had an estimation procedure

21   consented to by the tort committee.

22         Second, those cases had plans with capped trusts,

23   which were consensual plans because the victim's

24   representative, which is the tort committee, was a plan

25   proponent.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    And third, the victims voted overwhelmingly for the

2    plan with the capped trust.  In the Dow Corning case, it was

3    ninety-five percent.  Debtors point out that was a cramdown.

4    In essence, you had a renegade law firm that didn't agree with

5    everyone else in the case.  We might even see such a renegade

6    law firm in this case.

7    THE COURT:  Never happen.

8    MR. JULIAN:  But, Your Honor, for us, that's why we

9    say we believe that confirmation of a plan with a capped trust

10   that is not a consensual plan, where all the creditors are paid

11   in full and equity retains some interest, are not confirmable

12   under the fair, or anti-discrimination clause, absolute

13   priority rule, and the discharge rule that Judge Perris and

14   Judge Spector focused upon in Dow Corning.

15   And we say that because an estimation that is too low

16   or inaccurate could end up in your hypothetical that you asked

17   me a moment ago, with the jury-trial claimants coming back into

18   the trust, bankrupting the trust, or not having enough money to

19   be paid in full where everyone else was being paid in full.

20   So with that in mind, because of those three reasons,

21   we went to the North Bay group and suggested that the Tubbs

22   case had to be tried.  The Atlas case is stayed by the

23   automatic stay; can't go forward.

24   THE COURT:  Well, so is the Tubbs.  I mean, they're

25   both stayed.  I mean, Butte is --

PG&E Corp., Pacific Gas and Electric Co.

1          MR. JULIAN:  Yes.

2          THE COURT:  They're all stayed, but --

3          MR. JULIAN:  But --

4          THE COURT:  -- you want relief on this.

5          MR. JULIAN:  With the preference statute being what it

6    is in California, there can be speed.  And so we joined

7    together with the North Bay group --

8          THE COURT:  So if I can interrupt you.  You believe

9    that if I grant relief as you asked, the Atlas matter stays

10   stayed because no one's asked me to grant relief on the Atlas

11   fire.

12         MR. JULIAN:  Yes.

13         THE COURT:  Okay.

14         MR. JULIAN:  And so, Your Honor, now what I'd like to

15   do, with that bankruptcy background in mind as the backdrop, is

16   turn the podium over to the lead counsel for the North Bay

17   group.

18         THE COURT:  One second.  No, I have one more question

19   of you, go ahead.  Well, my question --

20         MR. JULIAN:  To address the Tubbs case issues that

21   you've asked for briefing on and they're ready to address them.

22         THE COURT:  Right.  And I want that.  But now I want

23   to go back to you with one bankruptcy question.  If I grant

24   relief from stay for the Tubbs trial, it's not really an

25   estimation at all, is it?  It's much like the legal argument on

PG&E Corp., Pacific Gas and Electric Co.

1   the inverse condemnation we talked about.  There's nothing more

2   to estimate.

3          In other words, if the Tubbs trial goes forward,

4   leaving aside all the timing and the potential appeal, if the

5   issue of Tubbs, at least, negligence, it's a done deal.  It's

6   the law of the case.  It's a component of estimation, because

7   obviously --

8          MR. JULIAN:  That's the way we view it.

9          THE COURT:  Yeah.  But it's -- but I guess you view it

10  then -- at the end of the day, the jury comes in and says PG&E

11  is -- was negligent or wasn't negligent.  And if it was

12  negligent, then what?  We don't get to the measure of damages

13  or we get to the damages to the particular plaintiffs in that

14  case, right?

15         So if we have eight or fifteen, it doesn't matter, if

16  the jury says PG&E was negligent and the eight each are owed X

17  dollars, then at least as to those eight, there's no more --

18  they're done.  They're liquidated at that point.

19         MR. JULIAN:  They are.  And the decision -- the

20  verdict on -- the judge's decision inverse and the jury's

21  verdict on negligence, nuisance, and trespass, and the dollar

22  components inform estimation --

23         THE COURT:  Right.

24         MR. JULIAN:  -- on all those elements because it's a

25  Bellwether case.

PG&E Corp., Pacific Gas and Electric Co.

1        THE COURT:  Yes.  It's a Bellwether case.  And what

2   isn't done yet -- I mean, isn't finished yet is an estimate of

3   the damages -- well, I'm sorry, excuse me, the estimate of the

4   damage of all the other ones --

5        MR. JULIAN:  Yes.

6        THE COURT:  -- because the Court presumably takes a --

7   well, to use the datapoint phase.  If the datapoint is A, if

8   this jury found PG&E liable and awarded damages of this amount

9   to these eight people, then there's a datapoint to estimate

10  what would be the liability beyond that.

11       MR. JULIAN:  Yes.  Yes.  And there's a datapoint for

12  the value of the tree which some people find it hard to believe

13  that restoring oak trees in Sonoma is 150- to 200,000 dollars.

14  I'm just --

15       THE COURT:  Well, it doesn't matter what it is.  It's

16  something.

17       MR. JULIAN:  But they're datapoints as a Bellwether

18  trial.

19       THE COURT:  But what does it do for the Atlas fire or

20  the -- again, I can't keep track, the Camp fire or any of the

21  other fires?  I don't know how we get there.  So you're -- are

22  you saying that that's enough of a datapoint or are we back to

23  we need twenty different trials?

24       MR. JULIAN:  Two answers.  As to the damage

25  components, those are datapoints for all the other fires, for

PG&E Corp., Pacific Gas and Electric Co.

1    trees, square foot, depending upon the area --

2              THE COURT:  Well, and --

3              MR. JULIAN:  -- if the communities are different.

4              THE COURT:  And injury to the victims.

5              MR. JULIAN:  And injuries fleeing the fire.  You now

6    have some information.

7              THE COURT:  No.  But it's important that we're talking

8    about some of -- without getting into the fine point of what is

9    personal injury -- I certainly know what wrongful death is.

10   But a jury's determination is there was a death.  The victim's

11   family is awarded damages of some amount.  That is a marker, a

12   datapoint, for the wrongful death of another victim of another

13   fire or even of the very same fire.

14             MR. JULIAN:  Precisely.

15             THE COURT:  Okay.

16             MR. JULIAN:  Yes.

17             THE COURT:  Got you.

18             All right.  With that, I appreciate the clarification

19   of your view on the bankruptcy issues.  And I'll let your

20   colleagues help me out.

21             MR. JULIAN:  Thank you, Your Honor.

22             THE COURT:  Good afternoon.

23             MR. CAMPORA:  Good afternoon, Your Honor.  Another

24   trial lawyer, not a bankruptcy lawyer.

25             THE COURT:  I need a name, please.

PG&E Corp., Pacific Gas and Electric Co.

1          MR. CAMPORA:  My name is Steve Campora.

2          THE COURT:  Oh, Mr. Campora.  Yeah, I've seen your

3    name.

4          MR. CAMPORA:  Dreyer Babich Buccola Wood Campora, Your

5    Honor.

6          You asked earlier today what it would look like if

7    today you granted a motion for relief of stay and how we would

8    proceed.  And I want to give you an outline of how I think we

9    could proceed.  And I have some questions for PG&E about how

10   they would cooperate with that procedure, if they truly want to

11   get things done timely.  So let's assume --

12         THE COURT:  Well, let's stick with the traditional

13   format --

14         MR. CAMPORA:  Okay.

15         THE COURT:  -- and make the presentation to me.  And

16   I'll ask your opponent to respond when they're --

17         MR. CAMPORA:  Absolutely.

18         THE COURT:  -- making their argument.

19         MR. CAMPORA:  So, Your Honor, today we got an order

20   from this Court, granting relief of stay.  Tomorrow it will be

21   filed in the San Francisco Superior Court.  And we would

22   immediately contact the superior court, including Judge Jackson

23   who is now the JCCP judge in San Francisco.

24         And we would ask for a date for the hearing of a

25   motion for preference on two grounds, one being Code of Civil

PG&E Corp., Pacific Gas and Electric Co.

1  Procedure Section 36(a) which is a person over seventy with an

2  infirmity.

3          THE COURT:  Uh-huh.

4          MR. CAMPORA:  The other ground is Section (e), Your

5  Honor, which recognizes that a superior court always has

6  control of its calendar.  And it says when, in the interest of

7  justice, it's apparent to the court that preference should be

8  granted, it can grant preference.

9          THE COURT:  So just to procedures, without getting

10  into the details, you don't -- you just make contact to the

11  clerk?  You don't file something that goes into --

12          MR. CAMPORA:  We would say we'd ask for the date for

13  the hearing, Your Honor.

14          THE COURT:  Uh-huh.

15          MR. CAMPORA:  The problem -- if I'm doing it, if I'm

16  one of the people doing it, I will ask the Court for a day for

17  an ex parte application.  I have to give twenty-four hours'

18  notice.  I'll ask for an ex parte application for an order

19  shortening time.

20          THE COURT:  And what do you get if you don't have an

21  order to shorten time?

22          MR. CAMPORA:  Sixteen court days.

23          THE COURT:  Sixteen court days?

24          MR. CAMPORA:  I have to give sixteen court days'

25  notice, Your Honor.

PG&E Corp., Pacific Gas and Electric Co.

1        THE COURT:  Okay.

2        MR. CAMPORA:  So if I get an order shortening time,

3   we'll have the motion heard on short notice.  Perhaps our

4   opponents will stipulate to an order shortening time.  And then

5   if we can establish that the people are entitled to a

6   preference under 36(a), it's mandatory that it be granted.

7        THE COURT:  No.  I understand.

8        MR. CAMPORA:  And then the Court has to --

9        THE COURT:  What --

10        MR. CAMPORA:  -- set a trial date.

11        THE COURT:  Stop for a minute.  I don't know.  You do.

12   I don't know, and I don't need to know.

13        MR. CAMPORA:  Sure.

14        THE COURT:  But what do courts do generally with these

15   mandatory things when they're backed up with a criminal

16   calendar or any other things that make mandatory impossible?

17   Is there --

18        MR. CAMPORA:  Your Honor, there's a --

19        THE COURT:  -- a workaround?

20        MR. CAMPORA:  There's a case, a recent case, called

21   Koch-Ash v. Superior Court at 180 Cal.App.3d 689, 694 that says

22   your calendar doesn't matter, court; you have an obligation to

23   do this in the 120 days.

24        THE COURT:  Okay.  So your view is let's say no

25   shortened time, tomorrow is -- well, whether you file it

PG&E Corp., Pacific Gas and Electric Co.

1   tomorrow.  I mean, you file it soon.  And then within two to

2   three weeks, with luck and whatever sixteen court days are,

3   three days -- three weeks, four weeks, then there's a hearing

4   before whoever the judge is, Judge Jackson or whatever.  And

5   then he or she -- Judge Jackson makes a ruling.  And the ruling

6   would then be trial must start in 120 days.

7           MR. CAMPORA:  It has to be within 120 days of the date

8   of the hearing.

9           THE COURT:  Okay.

10          MR. CAMPORA:  And I -- from my experience, I can't

11  imagine, Judge, that if we went to San Francisco Superior Court

12  with an order for relief of stay under these circumstances,

13  that a superior-court judge, knowing that there is how -- the

14  30,000, 40,000, 50,000 fire victims who are trying to get this

15  matter done, would say I'm not going to -- the interest of

16  justice don't require that we have this matter done as quickly

17  as possible.

18          THE COURT:  And you're -- I take it, as counsel who

19  might be doing this, that the presence of Judge Karnow's ruling

20  on that was irrelevant because it's state.

21          MR. CAMPORA:  The --

22          THE COURT:  Or is there -- or let me -- why don't we

23  say this?  Doesn't stand in the way and that you believe that

24  the court would be, if not obligated, would, in fact, set Tubbs

25  for trial.

(979) 799-3789 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    MR. CAMPORA:  Absolutely, Your Honor.  The only cases

2  that will have relief of stay are those that have made the

3  motion to you.

4    THE COURT:  Well --

5    MR. CAMPORA:  So that's the one you're granting

6  relief.

7    THE COURT:  Yeah.  Okay.  I just want to make sure

8  we're clear on that.  And what's the trial estimate?

9    MR. CAMPORA:  Well, Your Honor, that's in large part

10  dependent on our opponent and what we can agree or not agree on

11  in terms of facts.

12    In addition, Your Honor, I would suggest to this Court

13  that we would suggest to the JCCP or to the trial judge,

14  whoever is assigned, that we could bifurcate the trial in order

15  to get the answer.  We'd have the same jury for the entire

16  trial, but we could bifurcate the trial on liability.  The

17  judge would rule us to inverse.  The jury would rule us in

18  negligence.

19    If the jury -- if liability is established, we would

20  then go forward and do the damages.  So it could be done so

21  that the liability part gives you an answer sooner and then the

22  damages second.

23    THE COURT:  Well, okay.  So let's say this motion is

24  heard on or about Labor Day.  Trial, mandatory trial.  Maybe

25  the judge would set it the next two weeks out.

PG&E Corp., Pacific Gas and Electric Co.

1          MR. CAMPORA:  Yeah.  It's --

2          THE COURT:  But --

3          MR. CAMPORA:  The 120 days is an outside, not a --

4          THE COURT:  I got it.  I got it.

5          MR. CAMPORA:  Right.

6          THE COURT:  So that means September, October,

7    November, December.  You're in trial around the end of the

8    year.  And you're -- what's your estimate of trial time for the

9    liability issue?

10         MR. CAMPORA:  Okay.  That -- like I said earlier --

11         THE COURT:  Yeah.

12         MR. CAMPORA:  -- Your Honor, that depends in large

13   part on what agreements we can make or not make with --

14         THE COURT:  Okay.

15         MR. CAMPORA:  -- Pacific Gas Electric Company.  Mr.

16   Kelly is going to talk a little bit after me about the issues

17   and the timing of the trial itself, the length of time.

18         But again, my -- our position would be that, whatever

19   the time is for the liability, which I think we could get done

20   relatively quickly -- relatively quickly, given the issues that

21   need to be tried --

22         THE COURT:  Give me a guess.  A week, two weeks, two

23   days?  I mean --

24         MR. CAMPORA:  No.  I'm --

25         THE COURT:  How long does it --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    MR. CAMPORA:  My estimate --

2    THE COURT:  How long does it take --

3    MR. CAMPORA:  My estimate for trial --

4    THE COURT:  -- to select --

5    MR. CAMPORA:  -- for liability would be three to four

6    weeks.

7    THE COURT:  How long does it take to select a jury?

8    Again, I'm out of my element.

9    MR. CAMPORA:  Well, Your Honor --

10   THE COURT:  If I ever have a jury, we can select them

11   quickly.  But in the superior court --

12   MR. CAMPORA:  Judges --

13   THE COURT:  -- what's the selection time?

14   MR. CAMPORA:  Judges in the superior court have the

15   right to control jury selection and the time we have to select

16   jurors.  That's also that something that could be controlled by

17   the trial judge.

18   THE COURT:  But what's the range?  I mean, what's

19   your --

20   MR. CAMPORA:  I'm just saying we picked a -- I've

21   picked juries in complex cases in two days, two to three days.

22   THE COURT:  Okay.  So again, we're around the best

23   case January, early January.

24   MR. CAMPORA:  It'll be 120 days from whenever we have

25   the hearing.  Yes, sir.

PG&E Corp., Pacific Gas and Electric Co.

1       THE COURT:  Well, I understand.  I understand.

2       MR. CAMPORA:  And again, that's the outside date.

3       THE COURT:  Okay.

4       MR. CAMPORA:  So -- and then we get the result for the

5  liability and the damages, all of which gives you information.

6       THE COURT:  That -- well, if you're passing it off to

7  one of your cocounsel to estimate the jury trial, I mean, the

8  time for the trial and --

9       MR. CAMPORA:  Mr. Kelly is going to address that for

10 you.

11      THE COURT:  Okay.  But, I mean, I'm just doing the

12 math here.

13      MR. CAMPORA:  Sure.

14      THE COURT:  And he can help me with that.  But --

15      MR. CAMPORA:  Well, Your Honor, the one thing I would

16 say on that issue is PG&E has repeatedly said their interest

17 here is getting these things done quickly for the victims.  And

18 they also have an interest in getting this done before June

19 30th of -- June of next year.

20      THE COURT:  Right.  That's right.

21      MR. CAMPORA:  How quickly this happens, how much

22 cooperation there is is in large part in their hands as well.

23      THE COURT:  No.  I --

24      MR. CAMPORA:  If they're going to --

25      THE COURT:  I understand that.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    MR. CAMPORA:  If they're going to contest this on

2  every issue and every motion and everything, that's their

3  issue.  They're the ones that need to be done by June of next

4  year to participate --

5    THE COURT:  Well --

6    MR. CAMPORA:  -- in the wildfire fund.

7    THE COURT:  -- but be careful what you wish for

8  because this -- I don't know whether this is an argument to

9  deny relief from stay or grant relief from stay.  But it looks

10  to me like it's your best case -- even without a lot of

11  scorched earth opposition, best case you're going to be at

12  trial in January, maybe earlier.  But again, I --

13    MR. CAMPORA:  I guess they got to --

14    THE COURT:  And if -- when Mr. Kelly tells me how long

15  the jury trial is estimated to be, if he tells me --

16    MR. CAMPORA:  Sure.

17    THE COURT:  -- four weeks, that's --

18    MR. CAMPORA:  Well --

19    THE COURT:  -- that's another month to add on this.

20    MR. CAMPORA:  Judge, let's assume that PG&E cooperates

21  fully and we get our discovery done in less than 120 days and

22  we go to the trial court and say, do you know what, we can go

23  sooner, those are all issues that will be handled if the

24  matter -- relief of stay is lifted.

25    MR. CAMPORA:  Before you leave the podium, Mr. Julian,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    which of your colleagues is going to talk about the issue of

2    coordination, whether the role --

3         MR. JULIAN:  Mr. Pitre.

4         THE COURT:  Oh, Mr. Pitre is going to talk about that?

5    Okay.  That's fine.  I just wanted to get the right lawyer to

6    ask.

7         MR. JULIAN:  Thank you, Your Honor.

8         THE COURT:  Okay.

9         Mr. Pitre, are you up next or are you --

10        MR. PITRE:  Mr. Kelly.

11        THE COURT:  Oh, Mr. Kelly.

12        MR. KELLY:  Because I'm forgetful, Your Honor.  Mr.

13   Pitre will undoubtedly get that.

14        Let me just ask -- answer a couple of the questions

15   here and also address a couple of things in the briefs.

16        Your question, a reasonable question, about what if

17   the judge has a backed up criminal calendar, in the San

18   Francisco Superior Court, the same judge does not handle a

19   civil and a criminal matter.

20        THE COURT:  Okay.  Again, I don't know -- I mean, I

21   know -- I'll take whatever your answer is.

22        MR. KELLY:  Yeah.  No, no, no.

23        THE COURT:  If the other side disagrees, they'll tell

24   me.

25        MR. KELLY:  And I --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  I just don't know.  And what I want to

2 tell you is I just sort of understood that criminal takes

3 precedent over civil; therefore, what do you do about this

4 statutory thing?  And if the answer is there's enough judges to

5 go around, then that's the answer.

6    MR. KELLY:  That's right.  And not only is there

7 enough judges to go around, Your Honor, but the JCCP

8 assignment, originally to Judge Karnow, now sitting with Judge

9 Jackson, permits Judge Jackson to either retain the case or

10 assign it to another judge in the court --

11    THE COURT:  Uh-huh.

12    MR. KELLY:  -- who is sitting in civil.  IN fact, it

13 could be Judge Karnow who is now sitting general civil.

14    THE COURT:  Okay.

15    MR. KELLY:  So in terms of --

16    THE COURT:  Your view and Mr. Campora's view is that

17 get to that judge, the judge will be bound to follow the

18 statute and send it out to a trial no later than the date we've

19 been talking about.

20    MR. KELLY:  That's right.

21    THE COURT:  Okay.

22    MR. KELLY:  And the second thing is, in the papers,

23 there is a suggestion -- there's great irony here, and I'm sure

24 it's not lost on the Court, that if PG&E gets its plan, it gets

25 to an estimation with no discovery on our part in seven weeks.

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    If we want to shine the light of day on the facts in the case

2    so that twenty-five percent of the victims can actually see

3    what happened, they want to fight, as you used the term,

4    scorched earth and oppose at every opportunity and slow things

5    down.

6         So it's worth listening to Mr. Campora's thoughts

7    which is, of course, anything people stipulate to can be done

8    in a more rapid fashion.

9         THE COURT:  Well, but --

10        MR. KELLY:  So --

11        THE COURT:  Go ahead.

12        MR. KELLY:  So the opposing papers suggest, oh, there

13   has to be a trial on the issue of preference suitability.  It's

14   not true.  And I'm not surprised that Mr. Orsini doesn't know

15   that.  He doesn't practice in the state courts in California.

16   This is decided on affidavits.  That there is going to be long

17   motions on expert witness qualification, it doesn't happen in

18   the state of California.  I'm not surprised Mr. Orsini doesn't

19   know that.  He doesn't practice here.  And so on and so forth

20   in terms of suggesting why there would be delay.

21        Realistically, Your Honor, in terms of federal-state

22   coordination, I've been really privileged to be in a lot of

23   litigations where the federal court judge picks up the phone,

24   calls Judge Garrett Wong who's across the street and says I

25   have this issue, we need to try this case, there's a JCCP, it

PG&E Corp., Pacific Gas and Electric Co.

1    was handled by Judge Karnow, should I talk to you, should I

2    talk to Judge Jackson about how we should send it back.

3            With reference to the Atlas question, which was a fair

4    question, it was not set as a preference or special setting.

5    So it's as though its date came, went, and doesn't exist.

6            THE COURT:  Okay.

7            MR. KELLY:  There are no -- essentially no pending

8    trial dates.

9            In terms of other special procedures, certainly the

10   Court could say, well, you could bifurcate liability and

11   damages.  That would shorten the trial.  I don't -- we talked

12   about Karnak earlier.  I don't have the card in my forehead, so

13   I'm not going to say twenty days, what's the question, Your

14   Honor.

15           I think, realistically, you pick this jury in two days

16   or less.  You have a day of final arguments at the end.  You

17   have forty-five hours each.  I think you're probably at four

18   weeks.  Could you shorten it up by bifurcating liability and

19   damage?  You could.

20           Now, on the issue of --

21           THE COURT:  Okay.  So just we're clear, then best

22   case, you're into February for a verdict.

23           MR. KELLY:  Right.  And I'm coming to that in a

24   moment.

25           THE COURT:  Okay.  Okay.

PG&E Corp., Pacific Gas and Electric Co.

1      MR. KELLY:  And I'll just stay there right now because

2  there was an argument made this morning I think by Mr.

3  Singleton.  So I think this is really important.  1054 was not

4  for PG&E's benefit.  1054 was intended to benefit the victims.

5  PG&E has done a wonderful job or redefining the narrative, kind

6  of the, oh, poor me that it's gone through since the very first

7  buyer.  Oh, we have to get out.  Oh, we have to get in that --

8  we have to get that insurance.  We need that for us.

9      Your Honor, twenty-six percent of all losses;

10 twenty-two deaths, more deaths than any other North Bay fire;

11 36,000, more acres than any other fire; 5,600 structures, more

12 structures than any other fire is in Tubbs.

13     Those people have the right to have the light of day

14 shined on the facts and shined on PG&E's behavior and its

15 conduct.  I know the -- I heard 502.  I understand that.  But

16 there is an issue here with respect to the people's right to

17 know what this defendant did.  And the only way that it's ever

18 going to happen is to relieve the stay, let the facts be played

19 out in front of the public.

20     And to the extent that PG&E doesn't like that, we are

21 not the people -- we are not the ones who killed everyone, who

22 burned everyone up.  And they know the report is flawed.  They

23 know they monkeyed with the evidence.  They know what's going

24 on.  And we believe that from a justice and transparency point

25 of view as opposed to the quickie efficiency point of view,

PG&E Corp., Pacific Gas and Electric Co.

1 that the people who suffer these losses are entitled to have

2 this trial be public.

3 And I believe Mr. Campora is right. A judge could say

4 I want this case over in three-and-a-half weeks. Lord knows

5 there are Article III judges who have given less time perhaps

6 not on as complicated cases.

7 THE COURT: There are probably some bankruptcy judges

8 that have done that too, not in a case --

9 MR. KELLY: Well --

10 THE COURT: -- of this complexity.

11 MR. KELLY: -- perhaps. I wouldn't know any. But, of

12 course, I'm --

13 THE COURT: Well, but you already admitted --

14 MR. KELLY: -- just a PI lawyer.

15 THE COURT: -- that you don't know any anyway.

16 MR. KELLY: That's right.

17 THE COURT: Okay.

18 MR. KELLY: And so my point is I think there are

19 special procedures. And I think bifurcation of liability and

20 damage is one.

21 But the other thing I wanted to say was there was some

22 question about will there be twenty clients or thirty clients,

23 this is not going to be a Bellwether. But the point and the

24 reason for the preference was to remove discretion to set a

25 trial date beyond 120 days. It wasn't necessarily to mirror a

PG&E Corp., Pacific Gas and Electric Co.

1    specific case.  We tried to pick examples, as I'm sure the

2    other lawyers did, where the judge has to grant the preference.

3          Now, whether that judge decides to try three or five,

4    we are not demanding anything other than a trial date to try

5    the liability in Tubbs, to shine the light on the truth.

6          THE COURT:  Well, I'm troubled by this shine the light

7    on truth as distinguished from establishing liability because I

8    don't want to sound like I'm insensitive to these broad

9    questions that you're describing, but I do have a statute that

10   this debtor and any other debtor has available and a mandatory

11   provision of doing things.

12         Now, granted, I can do both.  It's not all or nothing.

13   I can have an estimation and grant relief from stay.  And you

14   and your colleagues are making a good argument about it.

15         But I'm having trouble knowing whether I'm supposed to

16   make a decision because of these very important issues that are

17   not relevant to the bankruptcy inquiry.  They certainly are

18   relevant to the social as a Northern California resident, as

19   people who had suffers some damages.  They're all important.

20   But I don't think they're bankruptcy --

21         MR. KELLY:  Well, I think they are --

22         THE COURT:  -- court issues.

23         MR. KELLY:  Yeah.  And I would --

24         THE COURT:  And that's my problem.

25         MR. KELLY:  I would differ on this basis which is --

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  Okay.

2      MR. KELLY:  -- if the aim of the Court is to get it

3  right and not have this be one of the great tragedies of all

4  time, which is first the people are wronged and then the

5  estimation is wrong, then having a trial where all of the facts

6  and expert opinion based upon all the facts and testimony from

7  the knowledgeable corporate people are tested and vetted by

8  jurors is a safeguard to make sure that the estimation

9  ultimately gets it right.

10      THE COURT:  Well, then how -- what -- then help me on

11  the statements made in the TCC brief.  Again, I don't know

12  which of you was the contributor to this thing about which the

13  Court --

14      MR. KELLY:  All I know is I don't write well, Your

15  Honor.  So --

16      THE COURT:  Well, I wasn't talking about the grammar.

17  I'm talking about the concept of coordinating --

18      MR. KELLY:  Oh, I was thinking about the thinking.

19  I'm not good at that.

20      THE COURT:  -- coordinating and supervising.  There's

21  a statement made about I'm supposed to supervise the superior

22  court.  I don't think that's appropriate.  What is meant by

23  that?

24      MR. KELLY:  Well, and I think that probably was an

25  overstatement.  What --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  What do you -- let's suppose that I accept

2  your arguments and your colleagues' and I grant relief from

3  stay.  And meanwhile, I go forward with our estimation issue.

4  What's -- and I'm not one to pick up the phone and call another

5  judge.  That's not to say I haven't done it and wouldn't do it

6  if for a reason.

7    What's your take on the interaction, if any, that

8  should exist?

9    MR. KELLY:  My take, Your Honor, actually is that this

10  would be an exception to where the Court should be both

11  comfortable and interested in picking up the phone once a week

12  or more frequently.

13    THE COURT:  And asking what?

14    MR. KELLY:  Are we getting -- are we on track, are we

15  on schedule, are we --

16    THE COURT:  And what if I don't like the answer?

17    MR. KELLY:  Then I think you call us in here and the

18  other judge calls us in or you tell the other judge this has to

19  be done.  That's what happens in reality when you have federal

20  and state cases going in parallel.  I just finished --

21    THE COURT:  Well --

22    MR. KELLY:  -- such a case.

23    THE COURT:  -- you're talking to the only bankruptcy

24  judge that I know that ever invited a superior-court judge to

25  come over and sit with me.  And I did it twice.  They're both

(972) 503-41 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    still -- well, one of them is still sitting on the superior

2    court, Judge Robertson.  He was a rookie judge, and I was.  And

3    we were both getting fairly inconsistent --

4              MR. KELLY:  That must have been before the Heller

5    bankruptcy, Your Honor.

6              THE COURT:  It was before all the big law firm

7    bankruptcies.  There were a couple of little law firm

8    bankruptcies.

9              But the point is, and this is important to me, the --

10   I was getting the story, Your Honor, I'm not trial lawyer, I

11   don't know.  And I found out later that Judge Robertson was

12   getting that, well, I'm not the bankruptcy lawyer, I don't

13   know.  So I called Judge Robertson and said would you like to

14   come over and sit in the bankruptcy court with me.  And he did.

15   And we heard the same -- we heard one story from two lawyers.

16             I did the same thing with Judge Cahill again.  So I've

17   done it twice.

18             I'm not opposed to it.  The question is what happens

19   next.  And that was much different.  It wasn't to second-guess

20   or try to wonder what's going on in another court.  That was a

21   case of getting the same information from people.  So --

22             MR. KELLY:  And I think this is much the same thing.

23   The case I was referring to that involved Johnson & Johnson

24   recently, the federal, district, MDL judge came and sat in San

25   Francisco in our JCCP hearings as we discussed evidence

PG&E Corp., Pacific Gas and Electric Co.

1  rulings, the collection of evidence, the progress of discovery.

2         So I think we would be in favor of having you --

3  supervise is the inappropriate word because I don't think

4  there's a question of who outranks who -- but certainly be

5  involved with co-management of what's going forward.

6         THE COURT:  Well, let's worry about that if it comes.

7  If I'm persuaded to grant relief, I might need some guidance on

8  whether it's appropriate.  I don't -- I'm not suggesting any

9  impropriety or offering to engage in any.  It's -- I still

10 don't know what the role -- remember, we're taught -- and I

11 don't know -- I don't speak for Article III judges, but I would

12 imagine where one Article III judge might do that, another one

13 won't.  It's probably very personal to the judges.  And I

14 suspect that's probably true with the state-court judges.

15        So we'll leave that aside.  Okay.

16        Anything more, Mr. Kelly?

17        MR. KELLY:  No.

18        THE COURT:  Mr. Julian, what do you got next for me?

19        MR. JULIAN:  Mr. Pitre.

20        THE COURT:  Oh, Mr. Pitre.  Sorry.

21        MR. PITRE:  Briefly, Your Honor.

22        I agree with the Court's struggle with this whole

23 issue because I sense from the Court, just like many of us in

24 the courtroom, is that we like to have control over things.

25 And we want to make sure that things are managed --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  I'm not a control freak, if that's what

2     you're saying.

3          MR. PITRE:  Well, I -- not to suggest you're a control

4     freak.  But control over process, where this Court is

5     concerned, that it has a mandate under 1054, that as we heard

6     in the courtroom the other day, the CPUC said it's going to

7     take us about six months to be able to go through and process

8     whether or not whatever proposal comes out of this Court is

9     going to be neutral to rate payers.

10          And I can see the Court's struggle with saying I have

11     all these moving pieces, and I need to be able to meet a time

12     frame that is being imposed on me and do justice and try to

13     resolve fair compensation.

14          So here is the issue I come up with, Judge.  This

15     Court can be the quarterback, but it needs help in resources.

16     When I look at this case and I look at resources and I look at

17     all the work that has to be done, I come back and say how can

18     the Court do all the things that it's required to do by itself

19     and manage all the things that are being thrown out it.  And as

20     the Court said the other day, when it gives briefs, at the last

21     minute at midnight, there are thirty pages.

22          So the question that I have, Judge, is how do we do

23     justice by the victims, do justice by all the parties?  And we

24     only have one judge.  So I look at this.  And I say, well, we

25     have procedures in the Manual for Complex Litigation.  And,

                    PG&E Corp., Pacific Gas and Electric Co.

1    Judge, this is an unprecedented case.  I don't think anybody

2    has dealt with the volume of issues and the time constraints

3    that have been imposed on this Court.  I can't find it.

4            THE COURT:  It's on everybody.  It's not just this

5    Court.

6            MR. PITRE:  It is.

7            THE COURT:  It's everybody.

8            MR. PITRE:  And that's why I'm saying --

9            THE COURT:  We're in it together.

10           MR. PITRE:  -- when we have an unprecedented case

11   before us, we have to be very creative in our thinking.  And my

12   suggestion to the Court is why not utilize the resources of a

13   state court.  It is set up to apply California law every day of

14   the week to mass torts, to manage mass torts, to be able to do

15   all these difficult things in trying to manage a Tubbs case.

16   That's all we're talking about right now.  Tubbs.

17           How do you try Tubbs and get a datapoint, and a very

18   influential datapoint, that will assist the Court, lay the

19   groundwork for foundation?  It's not the be all and end all,

20   but it's a very important datapoint.

21           THE COURT:  Okay.  So let me stop you again.

22           MR. PITRE:  Yes.

23           THE COURT:  You're going to tell me you're not the

24   bankruptcy lawyer, and you've got a couple of very capable ones

25   at the table with you.  But you're up.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. PITRE:  Thank you.

2          THE COURT:  So it's February.  And I've told Mr.

3    Orsini what's the story, I thought we were going to have an

4    estimation trial done by now.  And if you heard -- you were --

5    were you --

6          MR. PITRE:  I heard --

7          THE COURT:  Were you here yesterday?

8          MR. PITRE:  Yes, I was.

9          THE COURT:  Okay.  So if you heard this time line

10   about it and their collective answer is, well, we're waiting

11   for the result over in superior court, I mean, am I -- is that

12   what I'm supposed to say is okay?

13         MR. PITRE:  No.

14         THE COURT:  And this notion that, well, 1054s for the

15   victims, I understand that.  But nobody -- nobody has told me

16   to ignore 1054.  And Mr. Orsini is going to have his views

17   about it, and I defer it with him.

18         So what do I do if we come to all stop and Mr.

19   Kornberg comes out and says I thought you guys were going to

20   pass the ball to the CPC because we need six months and I go,

21   well, we're waiting for the jury --

22         MR. PITRE:  Sure.

23         THE COURT:  -- across the street?  I mean, Mr. Pitre,

24   I need --

25         MR. PITRE:  May I respond?

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Yes, by all means.

2          MR. PITRE:  Thank you.

3          THE COURT:  Give me the roadmap.

4          MR. PITRE:  If I was -- if I had a wand and I could

5   help formulate a plan -- and I don't want to go outside the

6   Court's purview.  But as we talked about, there are twenty-two

7   fires.

8          THE COURT:  H-huh.

9          MR. PITRE:  Break the twenty-two fires down, they

10  break down to five fires that make up ninety-two percent of all

11  of the total damages.  So you have the Camp fire.  You have the

12  Tubbs fire.  You have the Nuns complex.  You have Atlas.  And

13  you have Redwood fire.  Five cases, ninety-two percent total

14  value of claims.

15         We are people who can walk and chew gum at the same

16  time, me.  While people are trying a Tubbs case on liability,

17  which poses the most difficult, we can have parallel tracks.

18  And what I would do is start to look at some of these other

19  trials, an Atlas trial, do an estimation on liability,

20  causation -- I don't know what they're all going to contest.

21         THE COURT:  You mean bankruptcy court?

22         MR. PITRE:  Sure.  Keep that going on.  At the same

23  end, let's do a foldout.  Let's take Atlas.  We start with

24  Atlas.  The Court sets a trial for estimation and values on

25  Atlas.  That's going on while there's a trial over on Tubbs in

PG&E Corp., Pacific Gas and Electric Co.

1  San Francisco Superior Court.  I don't know how many days

2  that's going to be.  We're going to have to go through the

3  evidence.  Phase 1.  You put on your valuation expert.  What

4  are the damages for the Atlas fire?

5          THE COURT:  Well, right now --

6          MR. PITRE:  Now you go to the next phase.

7          THE COURT:  Let me stop you again.

8          MR. PITRE:  Okay.

9          THE COURT:  Over in the superior court, they don't

10  have this concept of estimation.

11          MR. PITRE:  True.

12          THE COURT:  They have it -- it's trial.

13          MR. PITRE:  Here.

14          THE COURT:  Now, maybe you bifurcate it the way Mr.

15  Campora said.  But it's still -- there's no animal called an

16  estimation.  So --

17          MR. PITRE:  Correct.

18          THE COURT:  So --

19          MR. PITRE:  In this court.  In this court.

20  Estimation --

21          THE COURT:  Right.

22          MR. PITRE:  What I heard this Court say this

23  morning --

24          THE COURT:  The superior court doesn't have that tool

25  available.

PG&E Corp., Pacific Gas and Electric Co.

1        MR. PITRE:  That is true.

2        THE COURT:  So you're -- yes.  We, the bankruptcy

3   world, have this little guy called 502 --

4        MR. PITRE:  Correct.

5        THE COURT:  -- called estimate.  So you want me --

6   you're telling me that you would suggest, well, Tubbs is in

7   front of a jury across the street, we should be doing our

8   estimate for one of the fires.  So it sounds like you're

9   arguing for the multiple --

10       MR. PITRE:  Phasing --

11       THE COURT:  -- the seriatim estimation --

12       MR. PITRE:  Phasing --

13       THE COURT:  -- for the big fires.

14       MR. PITRE:  As I said, walk and chew gum.  You can

15   have a trial going on in one court, which is the most

16   significant one because there's disputed issues of liability

17   that has significant impact.  On the others, once we've had a

18   discussion with PG&E so we understand what evidence is

19   necessary to do that, we can discuss a rolled out phase program

20   where one could be estimating both the liability and damages on

21   the other trials.  So you've not -- so what you're doing is

22   you're building off a phase approach and building the overall

23   damage model, so the only piece you're waiting for for

24   information is Tubbs.  Now --

25       THE COURT:  So at least your argument is that, of the

(973) 406-2250 | operations@escribers.net | www.escribers.net

                    PG&E Corp., Pacific Gas and Electric Co.

1    five major -- well, they're all major, if you're a victim of

2    it.  But in terms of the overall, one of them is before a jury

3    with a bellwether.  Just a bellwether, though.

4              MR. PITRE:  That's correct.

5              THE COURT:  And four of them are here for estimation

6    by -- again, for all -- what I'm going to say for all

7    bankruptcy purposes.  So there is -- it's not a bellwether.  It

8    is it.

9              MR. PITRE:  For --

10             THE COURT:  And that's what your advocating.

11             MR. PITRE:  Well, if I'm going to understand the

12   estimation process -- I'm not a bankruptcy lawyer -- is to set

13   what is the capped amount at some point, and I have an issue

14   with the capped, obviously.

15             THE COURT:  Well, no, it's not a capped amount.  It's

16   an amount.

17             MR. PITRE:  Yes.

18             THE COURT:  Period.  And then caps are what happens

19   later.

20             MR. PITRE:  Correct.

21             THE COURT:  In other words, you don't -- and again, if

22   Mr. Julian thinks I got it wrong, he'll say so.  But to my way

23   of thinking if I accept your proposal and just pick Atlas

24   because that's the name that I mentioned yesterday, we have an

25   estimation for Atlas, and whether that's a two-experts

PG&E Corp., Pacific Gas and Electric Co.

1    testimony or two days of testimony or five days of testimony or

2    whatever, at the end of that process, my role -- again leave

3    aside whether a district judge gets involved -- is to say the

4    estimated component of the bundle of what -- excuse me -- the

5    estimated liability of PG&E is a certain dollar amount.

6              MR. PITRE:  Yes.

7              THE COURT:  And then we're done.  That's it for Atlas.

8    I mean --

9              MR. PITRE:  That's the only --

10             THE COURT:  -- do you understand that?  I mean, that's

11   the way I read it, and that's the way I think Mr. Julian was

12   discussing it and Mr. Orsini.  So we're done estimation for

13   Atlas.

14             MR. PITRE:  That's the only way I can see that you can

15   have this process done, done quickly, given this Court's

16   inclination to have an estimation hearing with the exception --

17             THE COURT:  It's not my inclination.  It's my reading

18   of the law.

19             MR. PITRE:  I understand, Your Honor, and following

20   this Court's following the law under 502 and understanding that

21   Tubbs presents the most complex of all the issues of causation

22   and liability that I am suggesting that that can operate on a

23   parallel track --

24             THE COURT:  Yeah, no I --

25             MR. PITRE:  -- with estimation.

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  No, you made that clear.  What you're

2    adding to the conversation is other fires, and I mean, if I

3    could -- if there were only one fire, only Tubbs, the issue

4    might be is it better to send it to trial or forget the trial

5    and do the estimation.  Obviously, I know what PG&E will argue,

6    but that might be what we're talking about.  And maybe that's a

7    winning argument if it's in fact doable to be able to meet the

8    statutory predicate of don't unduly delay the administration of

9    the case.  But that's itself a very, very amorphous term and

10   gets us back to the whole question of AB1054.

11   And by the way, all the other victims who hold

12   liquidated claims, all the other trade creditors, all the other

13   banks -- and I know there's not a lot of sympathy for banks --

14   but they are all beneficiaries of this bankruptcy, and like it

15   not they all have the same relative priority with one another.

16   So you got to take that into account.

17   In other words, I believe Congress told the bankruptcy

18   judges you have to estimate these things because you can't keep

19   the collective mass waiting.  Now, here, we're way out of

20   balance from any typical.  We have enormous numbers of people

21   who are victims of a tort.  They didn't choose to be claims.

22   And in most bankruptcies, most of the claimants chose to be

23   creditors; not all the cases but --

24   So that's the tradeoff.

25   MR. PITRE:  Yeah, my concern, Judge, is that it has

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    been expressed -- and I don't think I need to say it again but

2    just to make it clear.  My only concern with this process is we

3    either comply with 1054, or we face a constitutional challenge

4    that somehow it violates somebody's due process, and in the

5    whole scheme of things, we lose sight of the fact that people

6    need to be compensated promptly.  But here's the most important

7    word that gets left out.  Not only compensated promptly but

8    fairly.  How do we build the process to ensure that the

9    individuals in whatever process that we use have a fair

10   opportunity to present the evidence that is necessary to follow

11   the law and have a decision-maker determine whether or not

12   they've proved their case to entitlement to just compensation

13   or not?  And the only way I can understand or configure to do

14   it is we have to use more resources on those really difficult

15   issues, because the issues on management of Tubbs is going to

16   be dealing with a lot of pre-trial issues, a lot of evidentiary

17   issues, a lot things that crop up.  And I believe, in my humble

18   opinion, that if we have a court that is experienced -- this

19   Court uses the word "toolbox".  What are the tools that you

20   have to do this?  The state court, when it comes to that --

21              THE COURT:  No, listen, I --

22              MR. PITRE:  -- has a very big toolbox.

23              THE COURT:  We send things to them all the time.

24              MR. PITRE:  Right.

25              THE COURT:  Unlawful retainer and stuff like that, but

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  how do you reconcile the statutory priority with the complexity

2  of pre-trial?  In other words --

3         MR. PITRE:  Well, it's got to be done within the time,

4  but all I'm saying is --

5         THE COURT:  Okay, but what --

6         MR. PITRE:  -- we're going to need access to people.

7         THE COURT:  But how do you do it if -- I take it even

8  the party entitled to the statutory priority can waive it?

9         MR. PITRE:  Judge, I --

10        THE COURT:  Well, no --

11        MR. PITRE:  -- this is not something that's waivable.

12  It's mandatory.

13        THE COURT:  Well, but if the plaintiff is eighty years

14  old --

15        MR. PITRE:  Right.

16        THE COURT:  -- the plaintiff's lawyer needs more time

17  to prepare.  I doubt -- the plaintiff isn't forced to go to

18  trial, is he?

19        MR. PITRE:  Judge, in my humble opinion, it's a

20  mandatory statute.

21        THE COURT:  So what --

22        MR. PITRE:  This person's titled to their day in

23  court.

24        THE COURT:  But what I just said is if the person who

25  wants more time --

PG&E Corp., Pacific Gas and Electric Co.

1          MR. PITRE:  They're entitled to one extension of

2    thirty days.

3          THE COURT:  Okay.

4          MR. PITRE:  Not more.

5          THE COURT:  So I'm not trying to tell you that I would

6    like --

7          MR. PITRE:  Sure.

8          THE COURT:  -- to act like I'm a superior-court judge

9    with that experience.  Just like you guys like to come in here

10   and say, I don't do bankruptcy.  You know what?  I don't do

11   state court.  So I don't, and I don't intend to, or pretend to,

12   but I'm trying to just understand how it works.

13         MR. PITRE:  Sure.

14         THE COURT:  So sure, I can appreciate your comments

15   about the pre-trial complexity.  The bankruptcy courts

16   generally don't have the kind of pre-trial complexity that

17   state court have or that district judges have.  I mean, talk to

18   one of the district judges about a patent case, and you know

19   what happens.  My God, they're -- okay, so and they look at me

20   and say, boy, you don't have to do patents.  And I don't have

21   to do criminal, and I don't have to do a lot of things.

22         So it's true.  It is not something that we do very

23   often if at all, but that's not the point.  That's the point of

24   the estimation process.

25         MR. PITRE:  Understood.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  And in a less complex case, it's a very

2   useful tool and very effective tool.  So --

3    MR. PITRE:  And my only point is that the state-court

4   judges deal with these issues every day of the week.

5    THE COURT:  Um-hum, I know.

6    MR. PITRE:  And they have resources to assist them to

7   manage all of these pre-trial issues so that they do not waste

8   time and do not extend the time.  And all I am suggesting is

9   that with Tubbs, the resources that are going to be needed to

10  manage that complex issue are available, the toolbox is there,

11  and the resources are there.

12    THE COURT:  Okay.  I've got you.

13    MR. PITRE:  Thank you, Your Honor.

14    THE COURT:  Thanks.

15    Mr. de Ghetaldi, you've been patient, so come on up,

16  please.  And I did read your separate memorandum, and I'm aware

17  of what your theories are.

18    MR. DE GHETALDI:  Good.  So, Your Honor, I think that

19  there is a gaping issue --

20    THE COURT:  But listen, let me tell you.  Don't waste

21  your time on things like nondischargeability --

22    MR. DE GHETALDI:  I'm not.

23    THE COURT:  -- and discharge --

24    MR. DE GHETALDI:  I'm not.

25    THE COURT:  -- because it's not a bankruptcy issue.

PG&E Corp., Pacific Gas and Electric Co.

1        MR. DE GHETALDI:  I'm not.

2        THE COURT:  Okay.

3        MR. DE GHETALDI:  I know.  And I admit that I am

4   fumbling a little bit --

5        THE COURT:  You're not.

6        MR. DE GHETALDI:  -- in this world, Your Honor.

7        THE COURT:  You're not.  You're not.

8        MR. DE GHETALDI:  I am, and I admit it, and I know it.

9   But one thing that I am hearing, as we go through this process,

10  as I'm hearing that clock ticking, and I'm here today for this

11  purpose:  because I've got one client who is about to become

12  eighty-nine years old.  He has cancer.  I have another client

13  who's ninety-seven years old, and she's about to become ninety-

14  eight.  And they're two of the parties that the TCC designated

15  on our --

16       THE COURT:  They're within the group of eight?

17       MR. DE GHETALDI:  Yes, they are, Your Honor.

18       THE COURT:  Okay.

19       MR. DE GHETALDI:  Yes.  And if you'll recall, we made

20  the original joinder request because the Court had expressed

21  concern over whether the committee had standing to raise this

22  issue.

23       THE COURT:  Yeah, no one raised that.  I mean --

24       MR. DE GHETALDI:  All right.

25       THE COURT:  -- that was easily solved.

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          MR. DE GHETALDI:  Okay, and so --

2          THE COURT:  So tell me what your fellow colleagues

3    didn't raise that you'd like to raise.

4          MR. DE GHETALDI:  Happy to, Your Honor.

5          THE COURT:  Okay.

6          MR. DE GHETALDI:  First of all, let me clarify one

7    thing about the extension that's possible under Section 36.

8    Under Section 36(f), there's only one fifteen-day extension

9    available, and that is if a party has a physical disability.

10          But, Your Honor, I ask the Court -- and I know the

11    Court's read it, but I would ask the Court to review the

12    quotations that we provided from the half a dozen cases,

13    Swaithes, Rice, Kline, Koch-Ash, Looney, Laborers

14    International, that discuss the legislative intent behind

15    Section 36.

16          THE COURT:  Oh, let me stop you.  I couldn't be -- I'm

17    completely impressed you've made the case, with one exception.

18    And you're talking to a bankruptcy court --

19          MR. DE GHETALDI:  Um-hum.

20          THE COURT:  -- that imposes the automatic stay or

21    enforces the automatic stay thousands of times a week, and no

22    one has ever come in and said the stay doesn't apply or I'm

23    entitled to relief from stay because of the substantive nature

24    of the state law.  The automatic stay is federal, and it

25    preempts state law, and I am willing to --

PG&E Corp., Pacific Gas and Electric Co.

1      MR. DE GHETALDI:  Well, it --

2      THE COURT:  Listen, I'm willing to listen to your

3  argument and the other counsels' arguments as to why I should

4  grant relief from stay for all the reasons that you've stated.

5  But the notion of supremacy or substantive California law isn't

6  a persuasive argument, because the federal law stays the matter

7  and relief from stay is not determined upon an underlying

8  substantive right, because that's what everybody says.

9      You have very sympathetic clients.  I am sympathetic.

10  I acknowledge them, their age, they're victims, they're all --

11  but the question is whether I should grant relief from stay.

12  It's not mandated, because they have state law preferences.

13  The only federal authority you cited is a Supreme Court case,

14  which normally is a good authority, but only if it's on point.

15  And the Illinois Revenue case is all about which rules of

16  construction you have in tax laws.  So there just is no

17  authority that says the federal court is bound by the state

18  substantive entitlements for priority.  It doesn't exist; you

19  have incited any authority.

20      MR. DE GHETALDI:  I agree, Your Honor.  I looked.  I

21  looked, but just because there's not authority and just because

22  nobody has brought this issue to a court before does not mean

23  that the issue should be dismissed out of hand.

24      THE COURT:  No, it's not.  The issue needs to be

25  addressed exactly the way you and the others have addressed it.

PG&E Corp., Pacific Gas and Electric Co.

1   I'm not saying your argument -- I'm saying that the collective

2   group -- you, the gentleman that appeared Mr. Julian, and Ms.

3   Dumas, everyone has made the point.  This is not a new

4   argument.  I will grant relief from stay or not, but not

5   because it's a statutory substantive right, because it doesn't

6   make any difference.  The question is whether there's cause for

7   relief from stay.

8            MR. DE GHETALDI:  Okay.

9            THE COURT:  Okay?

10           MR. DE GHETALDI:  Okay.  I understand the Court's

11  point.

12           THE COURT:  Okay.

13           MR. DE GHETALDI:  But my point is, Your Honor, that if

14  the Court denies relief from stay --

15           THE COURT:  Um-hum.

16           MR. DE GHETALDI:  -- then the Court has eviscerated

17  the state-court substantive right to a speedy trial for persons

18  who are in danger of not being able to get any relief.

19           THE COURT:  Well --

20           MR. DE GHETALDI:  We've already had, Your Honor --

21           THE COURT:  Well --

22           MR. DE GHETALDI:  We've already had a handful of

23  clients die.

24           THE COURT:  I'm sure you have.

25           MR. DE GHETALDI:  And so --

of 341   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT: Mr. de Ghetaldi, I'm trying to make the

2 point here that there are lots of arguments that suggest why

3 relief from stay should be granted, but one of them that I

4 don't think is persuasive is that there's a substantive right

5 for relief from stay, because Congress didn't say those are the

6 rules. Cause is one of those amorphous things, and you make a

7 very persuasive argument for one of the factors.

8    But I have to balance that against the balance of it,

9 and I promise you I'm going to make my best judgment, and your

10 argument make you lose the motion, because I don't know that

11 you're going to lose the motion. I'm just going to take in

12 exactly what we're spending the day on today, but this is where

13 I have this point.

14    And you made the point some time ago, when you said

15 that you'd filed a brief on the substantive right. And I

16 looked forward to getting it, and I read it, and I simply

17 disagree that it's dispositive, but I don't question anything

18 you've said about California law. I just don't think it

19 translates to a matter of federal law you must have relief from

20 stay.

21    MR. DE GHETALDI: Okay, and --

22    THE COURT: You've made a very good argument on why

23 your client should have it, not that they are absolutely

24 entitled to it. That's all.

25    MR. DE GHETALDI: And I've made the point, Your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    Honor --

2              THE COURT:  You have.

3              MR. DE GHETALDI:  -- that I think the Court is

4    required to grant relief from stay, and I understand that

5    there's a difference, but I've made the record, and I thank

6    you.

7              THE COURT:  There are a number of points in the

8    bankruptcy law where the stay is vacated automatically, and

9    they happen or never applied in the first place.

10             MR. DE GHETALDI:  Understood.

11             THE COURT:  But most of the law has it down to

12   consider the factors, and -- anyway, let's leave it at that.  I

13   don't want to make it sound like I'm lecturing you.  I want to

14   make sure we're clear on what the grounds are, and I don't

15   think it rises to a statutory entitlement, but that's not your

16   point.  I got it.

17             MR. DE GHETALDI:  I always appreciate the continuing

18   education opportunity, Your Honor.

19             THE COURT:  Well, so do I from you.

20             MR. DE GHETALDI:  Thank you.

21             THE COURT:  Okay.  Mr. McCallen?

22             MR. MCCALLEN:  Good afternoon, Your Honor.  For the

23   record -- my apologies.  For the record, Benjamin McCallen,

24   Willkie Farr & Gallagher on behalf of the ad hoc subrogation

25   group.  Your Honor, I'll try to be direct and get directly to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   the arguments and try not to repeat anything that's been said

2   so far.

3           Your Honor, what I would start with is urge the Court

4   to look at the lift-stay motion from a pure cost benefit

5   perspective, and I want to highlight first what I think are the

6   significant benefits that would come from lifting the stay.

7           As I see it, the first significant benefit is

8   something we've talked a lot about, so I won't repeat it much,

9   which is to say the valuable data point that the Court would

10  gain with respect to liability on Tubbs.  And that would --

11  Your Honor asked a couple of questions.  You said, is that the

12  end of it for Tubbs, was the first question, and would that

13  impact other fires.  And the short answer is, it is certainly

14  very likely.  I think that the jury's findings would bear upon

15  other fire issues, for example --

16          THE COURT:  To motivate people one way or the other,

17  though, right?

18          MR. MCCALLEN:  I'm sorry?

19          THE COURT:  To motivate people to reexamine their

20  positions, either stronger or --

21          MR. MCCALLEN:  Absolutely, and I mean --

22          THE COURT:  Stronger or weaker.

23          MR. MCCALLEN:  But it's even more than that, Your

24  Honor, because one specific legal issue I anticipate would go

25  to a state-court jury would be negligence with respect to

(973) 406-2250 | operations@escribers.net | www.escribers.net

                PG&E Corp., Pacific Gas and Electric Co.

1    PG&E's conduct around, I mentioned earlier, vegetation

2    management --

3              THE COURT:  Right.

4              MR. MCCALLEN:  -- and things like that.

5              THE COURT:  Right.

6              MR. MCCALLEN:  That's going to be an issue for other

7    fires.  I think it would valuable for the Court to have that

8    jury verdict on that issue.

9              And then on the issue of would it be dispositive of

10   the claims that come -- once the jury makes a determination

11   there?  I think there's two ways of answering that.  The short

12   legal answer is from a collateral estoppel point of view.  I

13   think that both sides would have arguments that it is not, but

14   as a practical matter, Your Honor, I think that no matter what

15   the jury does on the Tubbs-related issues, we'd obviously have

16   to be very careful in choosing our words when we came back to

17   Your Honor, if we were suddenly saying --

18             THE COURT:  Or back to another trial in state court,

19   right?  I mean a good trial lawyer who loses the first time

20   might worry about losing the second time.

21             MR. MCCALLEN:  Well, that's actually true, and I mean

22   it --

23             THE COURT:  Right.

24             MR. MCCALLEN:  -- it's one of the interesting things,

25   Your Honor, is as we've talked about the law in estimation is

PG&E Corp., Pacific Gas and Electric Co.

1  that the Court should do its best to predict what would happen

2  absent a PG&E bankruptcy.

3         THE COURT:  Um-hum.

4         MR. MCCALLEN:  The interesting thing here is that an

5  element of what would have happened absent bankruptcy is that

6  PG&E face the threat of serial trials on this issue.

7  They're --

8         THE COURT:  No, I know that, and I understand.

9         MR. MCCALLEN:  There is no res judicata or collateral

10  estoppel as to plaintiffs, so they would just keep trying it

11  and trying and trying it.  So that's something you don't have

12  to get into today, Your Honor, but it is an important point.

13         THE COURT:  But, no, that's what I -- I mean, I assume

14  that, but again people get beat over the head too many times,

15  they finally come to the table and negotiate, too.

16         MR. MCCALLEN:  Right.  Of course.  And this brings me

17  to --

18         THE COURT:  But plaintiffs who lose sometimes come to

19  the table asking for less, so we're all the same.

20         MR. MCCALLEN:  Of course.  And our point is we're

21  willing to try that.  That's what we want.  We want the chance

22  to go to a jury and try --

23         THE COURT:  Right.

24         MR. MCCALLEN:  -- and try that.

25         The second significant benefit, Your Honor, is the

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    potential of lifting the stay, leading to a resolution of, if

2    not all, many issues in this case.  I'd imagine that Your

3    Honor's -- among the many issues on your plate, you're probably

4    trying to think of how can this case be pushed towards some

5    sort of consensual resolution.

6         I don't think there's any issue that is more likely to

7    bring the people together to the bargaining table and to come

8    up with a solution than either the threat of a jury trial or an

9    actual jury verdict.  So there is significant value to the case

10   in that forum as well, our Honor.

11        THE COURT:  Well, yeah, I understand that's true.

12        MR. MCCALLEN:  And then --

13        THE COURT:  I suspect there's also -- you know,

14   there's been an estimation determination, might also be

15   persuasive.

16        MR. MCCALLEN:  Of course, Your Honor, I mean, I'm just

17   saying I think there's significant value of that.  And then --

18        THE COURT:  No, I agree with that.  I understand.

19        MR. MCCALLEN:  -- on the other side of the ledger is

20   what are the costs of doing it?  And I would argue that there

21   is no significant downside to lifting the stay, for this

22   reason.  Your Honor has heard a lot of arguments about when --

23   you know, how much time people need to address different

24   issues.  At the end of the day, I'd imagine when we get back in

25   front of you at the end of August, we're going to have a

PG&E Corp., Pacific Gas and Electric Co.

1  conversation about timing issues.

2      THE COURT:  Yeah, we are.

3      MR. MCCALLEN:  And Your Honor's going to make some

4  decisions about which issues it'll hear the district court and

5  on what time frame.  At the end of the day, you're going to

6  make those decisions.  Either the state-court jury trial

7  happens in time such that Your Honor can use it as part of its

8  decision-making process, or they don't.  And if they don't, we

9  will proceed in parallel.  As Mr. Pitre said, we'll walk and

10  chew gum at the same time -- easier for him to say than me.

11  But we will proceed and be prepared to try those issues in this

12  court.  And if they don't get tried there, we'll do it here.

13      THE COURT:  So you think that if I granted relief from

14  stay for -- I think your group is the five that got added to

15  the eight, right?

16      MR. MCCALLEN:  Well, no.  To clarify, Your Honor --

17      THE COURT:  Or, no.

18      MR. MCCALLEN:  So we --

19      THE COURT:  That's right, you're not.  Excuse me.

20      MR. MCCALLEN:  Yeah.

21      THE COURT:  That's right.  You're from the

22  subrogation; you don't have them.

23      But -- so in effect, you -- well, what am I getting

24  at?  You want relief from stay for the same plaintiffs that the

25  committee wants.

PG&E Corp., Pacific Gas and Electric Co.

1    MR. MCCALLEN:  That's correct, Your Honor.

2    THE COURT:  Yeah, okay.

3    MR. MCCALLEN:  We actually had joinders filed by the

4  individual insurers --

5    THE COURT:  Yeah.

6    MR. MCCALLEN:  -- who insured those parties.

7    THE COURT:  Yeah, again, pardon me for just not

8  keeping track of all the players.

9    MR. MCCALLEN:  No, it's actually --

10    THE COURT:  I need a program with numbers.

11    MR. MCCALLEN:  It's actually a really significant

12  point, so I'm glad Your Honor raised it.  And really, the

13  argument is, it's the TCC preference plaintiffs --

14    THE COURT:  Yeah.

15    MR. MCCALLEN:  -- who the had the statutory right to

16  trial.

17    THE COURT:  Correct.  Of course.

18    MR. MCCALLEN:  As a matter of California law, those

19  subrogation claims need to be brought together with the

20  underlying claims.  And so our motion, in effect, is to say, if

21  Your Honor lifts the stay with respect to those plaintiffs,

22  Your Honor should lift the stay with respect to my clients as

23  well so that they can participate in those trials as well.

24  Because, Your Honor, to the extent that you have a jury verdict

25  on those particular fires and those particular plaintiffs, you

(972) 581-0581 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    don't want to have inconsistent adjudications.

2         THE COURT:  So let's suppose that that happens, and

3    you're the two groups with one fire, with one group of

4    plaintiffs for two -- the two things you said -- is underway,

5    or about to be underway, and we are at the point of having the

6    estimation.  What's the assignment for the judge to do?  Wait

7    until the jury verdict comes in, or pretend that it's not even

8    going to happen, and go ahead and pick a number, rendering the

9    jury verdict almost irrelevant.  I mean, that's not a good way

10   to do it either, is it?

11        MR. MCCALLEN:  I suspect, Your Honor, that if we find

12   ourselves in that situation, that it won't appear to be such a

13   stark black and white decision as that.

14        THE COURT:  Well --

15        MR. MCCALLEN:  In the sense that --

16        THE COURT:  But why wouldn't it be?  In other words,

17   what do you tell the superior-court judge who says, good

18   morning, we're going to have our jury trial today.  And you

19   say, you know what, Judge, the bankruptcy court just made an

20   estimation of what the liability is.

21        MR. MCCALLEN:  Well, here's something I would say,

22   Your Honor, is that I suspect by the time -- let's assume Your

23   Honor lifts the stay --

24        THE COURT:  Um-hum.

25        MR. MCCALLEN:  -- and the parties go back to

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  California superior court.  I suspect at some point pretty soon

2  after that were to happen, Your Honor would make a decision

3  about how you see these estimation proceedings going forward.

4          THE COURT:  Well, no.  That's something I intend to

5  address in the next several days, not in the next several

6  months.  I mean, that's what I said to you this morning.

7          MR. MCCALLEN:  Absolutely, Your Honor.  And so that is

8  information that could be taken back to the California superior

9  court for its consideration, to under --

10         THE COURT:  Well, how?  I mean, what, to the superior

11  court, would you please move this up even faster because the

12  bankruptcy court is doing this other thing?  Maybe that's what

13  Mr. Pitre or Mr. Kelly --

14         MR. MCCALLEN:  That is --

15         THE COURT:  -- were thinking about, but I didn't

16  understand that.

17         MR. MCCALLEN:  No, absolutely, Your Honor.  I would

18  certainly go to the state court and say -- explain the

19  circumstances, right?  And Mr. Campora alluded to this too in

20  terms of going there, seeking ex parte relief, getting in front

21  of the judge even sooner than the typical sixteen days.  And I

22  would say -- you know, parenthetically, Your Honor, the debtors

23  noted in their papers, they said, oh, you know, it's really

24  complicated, Your Honor, these plaintiffs are not really

25  preference plaintiffs, there's going to be an issue about

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    whether that's granted.  I was kind of flabbergasted by that,

2    Your Honor, because I thought to myself, well, if Judge Montali

3    lifts the stay saying that he thinks there's value in having a

4    state jury-trial this issue, I would assume that we will be

5    walking down to state court arm in arm with the debtors, on

6    consent, on a preference motion, saying to the judge, let's get

7    in front of you as soon as possible, here's what's going on in

8    the bankruptcy court, to the state-court judge.

9         Explain that, explain the timing issues.  At that

10   point maybe we have the benefit of Your Honor's ruling in terms

11   of how you see estimation happening.  And I actually would be

12   optimistic that the state superior court would take those

13   issues into consideration in setting a jury-trial date.

14        THE COURT:  All right.  Okay.  Maybe.  Again, I need

15   your advice.

16        MR. MCCALLEN:  And the final issue, Your Honor, that I

17   want to hit on, and then I'll sit down, which is that with

18   respect to the jury-trial issue and lifting the stay, you know,

19   you've heard about the CAL FIRE report.

20        THE COURT:  Right.

21        MR. MCCALLEN:  We previewed some of the evidentiary

22   issues and some of the evidence that's been uncovered in our

23   brief.  In particular, Your Honor, with respect to the CAL FIRE

24   report, that report does not place the area of origin near PG&E

25   equipment, but we actually are in possession of compelling

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   evidence of an area of origin that is on PG&E lines, caused by

2   PG&E equipment.  This includes the arc flash video that we --

3            THE COURT:  Well, yeah, but why are we talking about

4   this?  That's part of your case.  And if we go to trial on

5   Tubbs here, that'll be part of the estimation, and if you get

6   relief from stay, it'll be part of your presentation there.

7   But I don't know that it's helpful now, because, you know, as

8   soon as you say that, I'm going to ask -- the other side will

9   tell me that's --

10           MR. MCCALLEN:  Of course.  And my only issue on that,

11  Your Honor, and I won't belabor it, is obviously that's an

12  issue which under state law, absent bankruptcy, would be

13  decided by a jury of Californians.

14           THE COURT:  Of course.  No question.

15           MR. MCCALLEN:  And it's --

16           THE COURT:  No question.

17           MR. MCCALLEN:  There are going to be significant

18  factual issues there, Your Honor.  And under the circumstances,

19  we think that the debtors' plan to foist that solely upon the

20  courts without the guidance of any California juries is not the

21  prudent way to go, and that it would be good to have that data

22  point.  Thank you, Your Honor.

23           THE COURT:  Okay, is that Mr. Singleton?  You're back?

24           MR. SINGLETON:  Thank you, Your Honor.  Just one

25  minute.  I don't have anything to add substantively; I thought

PG&E Corp., Pacific Gas and Electric Co.

1    my colleagues did an excellent job.  I just wanted to make

2    sure, because the numbers have been -- there was eight, there

3    was thirteen.  We had a motion for joinder where we had five,

4    and I just wanted to make sure that --

5              THE COURT:  But they're all statutory preference,

6    right?

7              MR. SINGLETON:  Exactly.  I just wanted to make sure

8    they would be included in whatever the ruling was, to lift the

9    stay or not lift the stay.

10             THE COURT:  Well, Mr. Singleton, as I've said

11   oftentimes, I find it very difficult to keep up with so many

12   things changing all the time, but I'm doing my best.  And

13   clearly, if I am persuaded that the people who are entitled to

14   the kind of priority that the other counsel were talking

15   about -- and you have made a motion, I will do my best to

16   remember to get them in right.  Or if I don't, I assume you'll

17   make sure that I get it right.

18             MR. SINGLETON:  Your Honor, I assumed that was the

19   case.  I know you have a lot to keep track of.  I just wanted

20   to raise that point.  Thank you very much.

21             THE COURT:  Okay.  All right, anyone else want to be

22   heard for the moving -- or, the opening portion of the case?

23             MR. BRILLIANT:  Good afternoon, Your Honor, I'll be

24   brief.  Allan Brilliant, on behalf of State Farm Mutual

25   Insurance Company.

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Oh, yes, Mr. Brilliant, I did see a brief

2    from you.  And I thank you for coming.

3          MR. BRILLIANT:  Yes, Your Honor.  I'll be very quick,

4    Your Honor.  I think one of the points -- I think the key point

5    here is, we believe that lifting the stay will in all

6    circumstances be of benefit to the Court.  We also think it's

7    going to be of benefit to the process.

8          I think, you know, as counsel said, the key here is to

9    have a result from Your Honor and from the whole bankruptcy

10   process which is fair and which people accept as being done

11   with due process and that takes care of all the appropriate

12   rights of all the parties.  State Farm feels very strongly that

13   its insureds, many of which -- a couple of which are parties in

14   the motion to lift stay, should have the right to a jury trial.

15   We feel very strongly that CAL FIRE was wrong with respect to

16   the report.  We believe there is liability here.  We think that

17   the best trier of fact for this issue would in fact be a jury;

18   it is the type of causation issues that juries deal with all

19   the time, with no disrespect to Your Honor.

20         THE COURT:  No, it's not.  It's not respect.

21         MR. BRILLIANT:  It's not what Your Honor does.

22         THE COURT:  It's no secret, it's a different job.  I

23   understand.

24         MR. BRILLIANT:  And, Your Honor, we don't --

25         THE COURT:  I'm not offended.

PG&E Corp., Pacific Gas and Electric Co.

1    MR. BRILLIANT:  Yeah, and we don't believe, Your

2  Honor, that it will delay things.  We think that Your Honor has

3  a lot of tools in your toolbox to deal with this.  Your Honor,

4  in your motion to lift the stay -- in your order requiring the

5  lifting of the stay, you could put, you know, requirements on

6  the state court if you wanted to.

7    THE COURT:  Well, see, that's what I was talking to

8  the other folks about.  I don't have this -- I have this notion

9  that we need to have our lines drawn.  I mean, the suggestion

10  for some cases, maybe there should be some communication, maybe

11  that's okay, and I even admitted to having done it a couple

12  times.  But to start telling another court how to do things is

13  not --

14    MR. BRILLIANT:  I'm not suggesting --

15    THE COURT:  -- not right.

16    MR. BRILLIANT:  I'm not suggesting that Your Honor say

17  how to do things, but Your Honor may want to tell them when it

18  needs to be done.  You could -- and you don't even have to make

19  it as an order, Your Honor.  Obviously --

20    THE COURT:  I'll tell them about the estimation

21  process and how --

22    MR. BRILLIANT:  Well --

23    THE COURT:  -- we can -- and they ought to try it over

24  there.

25    MR. BRILLIANT:  Well, you could -- but I think, Your

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   Honor, what you could do is you could say in the order that

2   you're having an estimation process.  As part of the estimation

3   process you're lifting the stay, you know, with the

4   expectation, or the hope, however Your Honor wanted to do it.

5           I understand you don't want to put your finger on the

6   scale or tell another judge what they have to do, but you could

7   give the court some guidance as to what you hope will be done

8   and what it would be used for.

9           And then the last thing, Your Honor, to answer a

10  question you asked to the ad hoc subrogation group's counsel.

11  I think no matter what happens, the jury trial would not be a

12  waste, even if for some reason it was delayed and it took a

13  little bit longer than Your Honor had hoped.  And I don't

14  believe that would be the case.  I agree with Mr. McCallen that

15  by the time, in this case, you did whatever discovery needed to

16  be done, and the time you dealt with all the other issues you

17  were -- needed to do, by that time you'd probably have -- the

18  jury trial would be up and running in any event.  And so I

19  don't think there would be loss of time.

20          But to the extent there was and Your Honor had to go

21  forward and do an estimation without the benefit of that, you'd

22  have certain parties who would have gone to a jury trial, they

23  would have gotten a verdict, and that would just determine what

24  they got out of whatever pot was created, you know, under a

25  plan of reorganization.  So I don't think it would in any

PG&E Corp., Pacific Gas and Electric Co.

1    circumstances be a waste of the time of the state court or the

2    jury or that process.

3            But, Your Honor, what I would say is, at the end of

4    the day here, you want to have a process that not only is just

5    and is fair, but appears to all the parties, including the

6    individual plaintiffs, that it was a fair process, that they

7    got their chance in front of a jury and that they got a

8    verdict.

9            THE COURT:  Okay, thank you, Mr. Brilliant.

10           MR. BRILLIANT:  Thank you, Your Honor.

11           THE COURT:  I'm going to take a break now.  And we

12   didn't schedule this exactly, but people need -- we've been

13   going for nearly an hour-and-a-half.  I'll be back in about ten

14   minutes, and we'll go to the other side.

15           And you have an hour, Mr. Orsini, that was the deal we

16   had, and we'll stick with that, okay?

17           See you in ten minutes everyone.

18       (Recess from 3:57 p.m., until 4:13 p.m.)

19           THE COURT:  Okay.  Please be seated.  Back to

20   business.

21           Mr. Orsini.

22           MR. ORSINI:  Good afternoon, Your Honor.  For the

23   record, Kevin Orsini, Cravath, Swaine & Moore on behalf of the

24   debtors.

25           There was one word that was strikingly absent from

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    every presentation the Court just heard.  That word is Curtis.

2    It's the case that actually lays out the factors that are

3    relevant to the Court's assessment of whether or not to lift

4    the stay.  Instead, what the Court heard quite a bit about was

5    from a series of state-court trial lawyers, one of which I

6    apparently am not, that they would --

7              THE COURT:  Well, some --

8              MR. ORSINI:  -- prefer --

9              THE COURT:  -- other state, I guess.

10             MR. ORSINI:  They would prefer that the Tubbs issue be

11   tried in a state court.  There were articulated concerns about

12   this Court's ability to get it right, and there was the

13   suggestion that unless we send this to state court, people

14   won't believe that this was a fair process, and it won't see

15   the light of day.

16             Well, this is not a dark room, Your Honor.  You know

17   far better than I that the light of day shines brightly in

18   here.  We have Mr. Morris from the San Francisco Chronicle who

19   chronicles everything we say every day that we're here.

20   Congress has made a determination that the way to resolve these

21   issues, particularly when you have as many stakeholders here as

22   you do, Your Honor, as you noted all of whom are entitled to

23   equal rights, is to deal with this through the estimation

24   process.  And so they bear a heavy burden to establish that we

25   should override that congressional intent and we should send

(971) 344-1 operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    this case back down to the state-court system.  And, Your

2    Honor, I respectfully submit they haven't come close to meeting

3    that burden.

4         So let's talk about why.  There's really two reasons.

5    One, can it be done in time to matter, and two, if it is done

6    in time, what is the ultimate result of it?  What does it get

7    us?

8         Number one, can it be done in time.  They've argued

9    that in the best of worlds, we have a jury verdict on causation

10   in Tubbs some time in February.

11        THE COURT:  No, I don't think that's fair.  I think

12   they said that's if the 120 days are maxed, that it could be a

13   shorter period of time.

14        MR. ORSINI:  Your Honor, there's a lot of

15   inconsistency in the arguments here.  We heard all the

16   arguments around estimation, that they need months of discovery

17   in order to move forward with these cases, that I've been

18   stymieing their efforts to get discovery, Mr. Singleton to the

19   extreme of saying he needs six to nine months to prepare

20   anything for trial.

21        I think the idea that we're going to wind up in a

22   trial that begins in state court earlier than January, there's

23   absolutely no record to support that.

24        THE COURT:  I'm only focusing on the 120 can be less,

25   based upon what --

PG&E Corp., Pacific Gas and Electric Co.

1          MR. ORSINI:  Right.  And --

2          THE COURT:  -- they all said about the statutory

3     preference, that's all.

4          MR. ORSINI:  And it can be, but it won't be.  There's

5     no reason to believe that it will be.  And we certainly can't

6     wager a case of this significance, with this many stakeholders

7     on the idea that we'll start earlier.

8          The other reality is they're suggesting that the trial

9     can be done in four weeks.  Your Honor, that's a complete

10    about-face from the positions that they took in state court

11    before these bankruptcy proceedings.  I understand why they're

12    saying it now, but it's just not true, okay?

13         You heard a couple of them stand up here and say, this

14    case is more complex than the Atlas fire case.  You know what

15    they estimated the Atlas fire case would take in state court?

16    Eight to twelve weeks.  How we've suddenly gone from eight to

17    twelve weeks, for what is apparently a less complicated trial,

18    to four weeks to try the Tubbs case makes no sense.  This case

19    cannot be tried in a state-court system in four weeks; it's

20    just not going to happen.  So best --

21         THE COURT:  So are you telling me, suppose you were

22    before the superior-court judge and she says to you, okay,

23    what's the trial time?  You're going to tell her that, from the

24    defense side, you're going to -- your side's going take

25    whatever, take your portion of twelve weeks?

PG&E Corp., Pacific Gas and Electric Co.

1    MR. ORSINI:  I'm going to tell the judge that it's

2  going to take a total of eight to twelve weeks, that we believe

3  our side of the case will be four to six weeks.  Absolutely,

4  Your Honor.  Which is exactly what we told the state court

5  before.

6    THE COURT:  But the suggestion was made that the

7  plaintiffs could ask the state judge to bifurcate the state-

8  court process, right?

9    MR. ORSINI:  Even if we bifurcate the state-court

10 process, Your Honor, the causation issue, the liability issue

11 is still going to take a minimum of a month; minimum of a

12 month.  And I believe that's what Mr. Kelly said.  I actually

13 believe it's going to take longer than that.

14    The problem -- the real problem, Your Honor, is we

15 just don't know and we just can't know.  Now, I know what I'm

16 going to hear when the trial lawyers stand back up here.

17 They're going to say, there's PG&E trying to delay things

18 again.  No, Your Honor, we have a fiduciary obligation to our

19 stakeholders to actually try to get it right.  And if we're in

20 a state-court system, we can't have an abbreviated trial

21 because it's a state-court trial, not an estimation process.

22    Estimation absolutely can be done faster, as Your

23 Honor said, for all the reasons Your Honor said.  But the

24 reality is we're not going to get done with a trial, even on

25 causation, until, in the best of all worlds, February.

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  Well, what happens if you are down before

2  the superior court right after Labor Day and Mr. Pitre or Mr.

3  Kelly, or whichever gentleman gets the nod, tells the judge, we

4  want to go to trial in thirty day, thirty-five, forty-five

5  days?  I mean, the judge would have that discretion, right?

6    MR. ORSINI:  Sure, the judge would have that

7  discretion.

8    First of all, if we're going to trial against twenty

9  preference plaintiffs, there's a lot of discovery we have to

10 take of these individuals because it will involve the

11 liquidation of their claims, all of which is pushed out until

12 the actual beginning of trial.

13    THE COURT:  Well, only if it's not bifurcated.

14    MR. ORSINI:  Well, even if it's bifurcated, we still

15 need to take that discovery, number one.

16    THE COURT:  Well, yeah.  But maybe not on liability.

17    MR. ORSINI:  Well, there's still --

18    THE COURT:  If the lawyers say to the superior-court

19 judge, got to be in tandem here with the bankruptcy court, so

20 we would like to split this down to a liability versus damages,

21 and we would like you to try to liability case.

22    MR. ORSINI:  And, Your Honor, I was --

23    THE COURT:  I mean, that could be.  I mean --

24    MR. ORSINI:  It could be.

25    THE COURT:  -- I don't pretend to know the state

PG&E Corp., Pacific Gas and Electric Co.

1    procedure like these folks do, but if it could be, then you

2    don't have to be taking discovery of the individual plans,

3    right?

4         MR. ORSINI:  Yeah.  Your Honor, a lot of things could

5    be.

6         THE COURT:  Yeah, right.

7         MR. ORSINI:  I think the reality is, we can't afford

8    to roll the dice.  We certainly can't afford Mr. McCallen's

9    approach of, well, we'll see what happens.  If we get there,

10   maybe you call up the state-court judge and you tell him to

11   move faster, which obviously Your Honor's not going to do, or

12   we spend all of this time doing state-court discovery, getting

13   ready for a trial, and it turns out at the last minute we pull

14   the plug and we do estimation here.

15        THE COURT:  Well --

16        MR. ORSINI:  The stakeholders can't afford that.

17        THE COURT:  -- let me remind you that discovery

18   doesn't have a state or federal label on it.  Discovery's

19   discovery and facts are facts.

20        MR. ORSINI:  I do understand that Your Honor.

21        THE COURT:  Okay.

22        MR. ORSINI:  But Your Honor also made clear earlier

23   today that there's a difference between the discovery that's

24   necessary for an abbreviated --

25        THE COURT:  No, that's true.

of 341   operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      MR. ORSINI:  -- estimation hearing --

2      THE COURT:  That's true.

3      MR. ORSINI:  -- versus a state-court jury trial, which

4  is what they're asking for.

5      THE COURT:  And we're all on the same page with that.

6      MR. ORSINI:  And so, Your Honor, all I can go on is

7  based upon what they said in their pleadings and what they've

8  said up here, right?  What they said in their pleading is, they

9  believe the trial will start in January.  Right?  That's what

10  they said in their papers to the Court.  I didn't hear anything

11  different here today.  I heard maybe it could be sooner, okay?

12      THE COURT:  Well, I think that --

13      MR. ORSINI:  They're saying maybe if PG&E's --

14      THE COURT:  I think they said it has to start by

15  January if they start the clock running immediately.  If I

16  said, I'll grant relief from stay a month from now, by

17  definition the statutory limits are another month.

18      MR. ORSINI:  Yes, Your Honor.

19      THE COURT:  Okay.

20      MR. ORSINI:  But I don't hear any guarantees from any

21  of these plaintiffs that we're going to have that trial

22  starting in thirty days or sixty days.  They can't give you

23  those guarantees.  Those guarantees are impossible, okay?

24      And as it relates to the preference, we have an

25  obligation to make sure that we're going to trial against

PG&E Corp., Pacific Gas and Electric Co.

1    people who actually have a statutory preference right.

2         THE COURT:  Well --

3         MR. ORSINI:  And the bigger issue, Your Honor, is --

4    and this gets to even if we can get it done in time, which we

5    can't; Mr. Kornberg said January.  We can't be having the jury

6    verdict in February, okay?

7         The question of what do we get at the end of the day.

8    What we get at the end of the day is a single, unrepresentative

9    test case.  There were extensive procedures worked out in state

10   court to establish what type of plaintiffs would go to trial in

11   what type of case.

12        THE COURT:  But that was the Karnow decision that had

13   to do with statutory preference.

14        MR. ORSINI:  Well, first of all, there was the Karnow

15   decision that had to do with statutory preference; there was

16   also a stipulated order between the parties that they would

17   identify the right plaintiffs to go to trial because a

18   preference trial is not representative.  Those aren't just my

19   words, Your Honor.

20        THE COURT:  Yeah, no, I -- okay.  Do they say it?

21        MR. ORSINI:  They said that, okay?  In state court, as

22   Your Honor may have picked up on, there's a little bit of a

23   divide between Mr. Singleton's firm and some of the other firms

24   here.  And Mr. Singleton, in the state-court action, sought to

25   jump to the head of the line with his own preference.  And

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  here's what Mr. Pitre said.

2       Okay, Mr. Pitre said to the state court that we needed

3  to make sure we had representative test cases and that -- this

4  is a direct quote -- "If all we did was try one case, and it

5  was a preference case, it teaches us nothing."  Those are Mr.

6  Pitre's words.  I agree with those words.

7       If we find ourselves in a scenario where we get to the

8  end of a jury trial on causation or a bifurcated jury trial,

9  and I win -- which I will because CAL FIRE has already

10 concluded that we did not start that fire; the only fire where

11 they said that.

12      THE COURT:  Talk a little less loud.  I'll turn you

13 down here.

14      MR. ORSINI:  Oh, sorry, Your Honor.  Yes.  I don't

15 think anybody ever has a hard time hearing me.

16      THE COURT:  Well, no.

17      MR. ORSINI:  If we win that trial, do you think these

18 claimants are going to come back here and say, you're right,

19 Your Honor, we lost, so let's estimate it zero?

20      THE COURT:  Well, but that's bellwether notion, right?

21      MR. ORSINI:  Right.  But bellwether isn't a single,

22 unrepresentative trial.

23      THE COURT:  But wait a minute.  I guess what I'm

24 missing here is if your client was negligent, it was negligent

25 to a twenty-five-year-old marathon runner and an eighty-five-

PG&E Corp., Pacific Gas and Electric Co.

1  year-old person who is in a rest home.  You're just as

2  negligent.  So what difference does it make, the

3  characteristics and the physical condition of the plaintiff?  I

4  can't imagine anything.

5          MR. ORSINI:  It makes a tremendous difference --

6          THE COURT:  At least in --

7          MR. ORSINI:  -- Your Honor, to the jury pool.  It

8  absolutely does.

9          THE COURT:  Well, it may to the --

10          MR. ORSINI:  Which is exactly why their strategy is

11  tee up --

12          THE COURT:  It may to the jury pool, but if the issue

13  is was your client negligent --

14          MR. ORSINI:  Um-hum.

15          THE COURT:  -- I like to think that this case doesn't

16  turn on which jury pool is it, but I have trouble understanding

17  why that isn't very informative, to the same extent, by the

18  way, if a jury, on behalf of a bunch of eighty-five-year-old

19  people who are in rest homes, finds that your client was not

20  negligent.

21          MR. ORSINI:  There's a reason, Your Honor --

22          THE COURT:  There's a message there.

23          MR. ORSINI:  There's a reason, Your Honor, that the

24  state court required a system that had a representative cross-

25  section of the plaintiffs --

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  But, Mr. Orsini --

2          MR. ORSINI:  -- and not just --

3          THE COURT:  -- there was no bankruptcy then.

4          MR. ORSINI:  I understand that, but --

5          THE COURT:  And --

6          MR. ORSINI:  -- it doesn't change the --

7          THE COURT:  -- Judge Karnow never heard of Section

8     502.

9          MR. ORSINI:  But it does not change the fact -- it

10    does not change the fact that the reason that the Court

11    required that representative cross-section was so that it would

12    be a representative test case, point number one.

13         Point number two.  Point number two is, a single jury

14    verdict is not how mass tort bellwether cases work, even in

15    bankruptcy.  And if you look at the GM ignition switch case,

16    for instance, bankruptcy litigation, the Court did send cases

17    to bellwether trials.  There were, in my understanding, close

18    to if not more than twenty of them.  You need multiple data

19    points for them to actually be informative as to where you're

20    going to wind up.

21         THE COURT:  Be careful what you ask for; you might get

22    twenty more motions for relief from stay there.

23         MR. ORSINI:  We might, Your Honor, which again, is

24    impossible in the current circumstances, and that's the

25    problem.  We have to deal with what we're facing.  What we're

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   facing is, we know we have to go to estimation.  What we're

2   facing is, we know we have to get this done quickly.  The

3   proposal that they've put forth is to go to a single jury trial

4   that is not going to be done in time, that even if -- it

5   doesn't matter who wins, we're going to be back in an

6   estimation hearing before Your Honor.  And whomever lost --

7           THE COURT:  Well, but -- stop there for a minute.  You

8   don't think at that estimation trial, or it's not a trial --

9   well, the proceeding, it's an --

10          MR. ORSINI:  Hearing

11          THE COURT:  -- estimation -- you don't think that one

12  side or the other would get before me what the verdict was --

13          MR. ORSINI:  No, of course they would.

14          THE COURT:  -- across the street?

15          MR. ORSINI:  Of course they would.

16          THE COURT:  Right.

17          MR. ORSINI:  And then the other side would explain to

18  you why the jury got it wrong:  because the judge made this

19  erroneous finding with respect to this piece of evidence;

20  because this particular pre-trial ruling went the wrong way.

21  And we're both going to be back here, whomever loses, arguing

22  all of that to you, or whomever the judicial officer is.

23          THE COURT:  You know, Mr. Orsini, I don't think I knew

24  you before you came into this case, but in my prior -- not even

25  my prior life.  In this life, I've worked as an appellate judge

PG&E Corp., Pacific Gas and Electric Co.

1    for ten years, and we had a rule in the Bankruptcy Appellate

2    Panel that the first rule of appellate practice is win at

3    trial.

4            MR. ORSINI:  I agree with that.

5            THE COURT:  And so --

6            MR. ORSINI:  I'm a trial lawyer; I definitely agree

7    with that, Your Honor.

8            THE COURT:  Right.

9            MR. ORSINI:  I definitely agree with that.

10           THE COURT:  So I'll say it again:  the first rule of

11   appellate practice is win at trial.  So I'll have a variation

12   on that:  the first rule of estimation trials is have won at

13   trial.  Right?

14           MR. ORSINI:  Absolutely, Your Honor.

15           THE COURT:  Okay.  So if we're in here on our 502

16   estimation --

17           MR. ORSINI:  Um-hum.

18           THE COURT:  -- and Mr. Pitre is smoking a big cigar

19   and says, I just brought in a jury verdict for X million

20   dollars with my test plaintiff, I'm not going to ignore that.

21           MR. ORSINI:  No, I know you're not going to ignore it,

22   but we're going to be in March.

23           THE COURT:  Okay.

24           MR. ORSINI:  Okay?  At which point --

25           THE COURT:  I understand that point.

PG&E Corp., Pacific Gas and Electric Co.

1        MR. ORSINI:  -- we're going to still have to have an

2    estimation hearing.

3        THE COURT:  Um-hum.  I agree.  I agree.

4        MR. ORSINI:  Okay.  I also -- I don't understand what

5    the subrogation position is because we heard Mr. McCallen

6    earlier this morning say that we couldn't phase Tubbs out from

7    the other fires because they're too interrelated, and there are

8    too many overlapping issues.  Then he stands up and says that

9    you ought to separate Tubbs out and send it to an entirely

10   different court to be tried.  So the subro position is

11   incoherent.

12       And the other point, Your Honor, with respect to the

13   subrogation insurers is, we could object to their claims in

14   this court or in the estimation hearing, as Mr. Feldman

15   conceded the other day.  You absolutely have the ability to do

16   the thumbs up, thumbs down.

17       Look, the basic point, Your Honor, is, is some data

18   better than no data?  Perhaps, okay.  However, you have to look

19   at the costs that come with it.  The cost of taking out of this

20   Court's hands one of the most critical gatekeeping issues in

21   this case, setting it on a schedule that might actually be a

22   bridge to nowhere because we can't get it done in time that

23   matters, to then still have to come back and do an estimation

24   hearing regardless of who wins on that fire before this Court,

25   all in a scenario in which we're supposed to be done with this

                PG&E Corp., Pacific Gas and Electric Co.

1    by January.

2            We can't afford to make these gambles.  And candidly,

3    Your Honor, we have enough issues that we need to be dealing

4    with that we should all be dealing with those issues in this

5    court.  We have the absolute confidence that the Court has the

6    statutory ability, the bankruptcy tool kit to estimate the

7    Tubbs claims, that they will see the light of day in this

8    Court, that the stakeholders will be prejudiced, not

9    benefitted, by sending us back to the state-court system for

10   this one, unrepresentative test trial, and that ultimately, the

11   jury-trial right remains preserved for cases post-confirmation,

12   where they can seek remedy from the trust.

13           If the Court has no further questions, I don't think I

14   have any other points to add.

15           THE COURT:  Well, is anyone else going to join you

16   today for this argument?  Because I reserved that other time

17   for, well --

18           MR. BRAY:  Your Honor --

19           THE COURT:  Committee?

20           MR. BRAY:  -- might I have a minute?

21           Yeah.  Well, I think -- look, I got -- Mr. Orsini was

22   given an hour.

23           MR. BRAY:  Well, I sure won't use the rest of that.

24   Gregory Bray, Your Honor, Milbank.

25           THE COURT:  Go ahead.

(979) 525-1201 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      MR. BRAY:  Counsel for the UCC.

2      THE COURT:  Make your argument.  We'll come back in

3  about forty-five minutes.  You keep going with the argument.

4      MR. BRAY:  There we go.  Perfect.

5      Your Honor, I'm not going to repeat what Mr. Orsini

6  said or what was in our papers.  As I listen to what was argued

7  to you by the movants, I wrote down that they're asking you to

8  trust in a process with another court you will have little or

9  no control over and could seriously jeopardize your ability to

10  confirm what may be your plan of reorganization by the end of

11  June.

12      THE COURT:  Not my plan.

13      MR. BRAY:  Well, I say "yours", the one that you will

14  be asked to confirm.  In other words, it's this Court's

15  jurisdiction and right to confirm a plan.

16      THE COURT:  But look, if this bankruptcy had been

17  filed and there already was a trial scheduled for --

18      MR. BRAY:  Right.

19      THE COURT:  -- August, maybe I would have granted

20  relief from stay.  I mean, I denied motions for some other

21  matters, but they were -- you know what they were.  They were

22  discrete matters, and I'll probably be asked again to grant

23  relief.

24      But you want me to presume that if this so-called test

25  case would have been tried some months ago that I would have

PG&E Corp., Pacific Gas and Electric Co.

1    not granted relief from stay?

2            MR. BRAY:  But --

3            THE COURT:  I don't know.

4            MR. BRAY:  -- I agree that might have been different.

5    Right.

6            MR. BRAY:  But that's not the situation.

7            THE COURT:  No.  It's not the situation now.

8            MR. BRAY:  We're not even close to that.  In fact,

9    what I've heard, it's the most important case or element of

10   this process, and it just struck me that this Court, for the

11   sake of consistency -- and you want to talk about due process

12   or fair process or whatever process -- that if it's that

13   important, that it really should be this Court as part of the

14   estimation process it sets, in fairness to the rest of the

15   creditors, in fairness to the other wildfire claimants, to

16   essentially have the same process govern or dictate the

17   allowance of those claims, of this claim in particular, of any

18   claim --

19           THE COURT:  You know, yesterday --

20           MR. BRAY:  -- because it is so important.

21           THE COURT:  -- yesterday morning, when I made opening

22   remarks, I said that the bankruptcy lawyers use words that

23   nobody's ever heard of before, and certainly estimation's one

24   of them --

25           MR. BRAY:  Correct.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  -- as even our colleagues in the state

2    court never heard of the concept very much.

3    MR. BRAY:  And they probably hope they never do again.

4    THE COURT:  Yeah.  And so it's hard for me to tell Ms.

5    Dumas and Mr. Julian, tell your committee and tell your victims

6    due process here doesn't mean a jury trial and doesn't mean

7    tell it to your peers and doesn't mean, even, the full day in

8    court.  It means whatever the bankruptcy judge decides is

9    sufficient to do this magical guess.

10    MR. BRAY:  Correct.  Based upon a statutory

11    authority --

12    THE COURT:  Well, based upon the --

13    MR. BRAY:  -- Congress has cloaked you with.

14    THE COURT:  I know.

15    MR. BRAY:  And even the comment about the jury trial,

16    Your Honor, as I heard it, no one's being deprived of a jury

17    trial with respect to their individual claim.  I thought the --

18    THE COURT:  No, Mr. Julian --

19    MR. BRAY:  -- debtor was clear about that.

20    THE COURT:  -- Mr. Julian made it -- I think he

21    responded, and --

22    MR. BRAY:  Yeah.

23    THE COURT:  -- that was the answer that I heard.

24    MR. BRAY:  They'll still have their day.  You're just

25    being asked to basically -- what goes into the trust, not to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    decide anyone's particular claim.

2         My only point being this:  one of the first

3    appearances I made before was on the stay motion and it was and

4    remains the committee's view that this Court has the statutory

5    authority and now the experience with this case and is, in our

6    judgment, best-suited to decide the allowance of claims.

7         THE COURT:  But bankruptcy judges and federal district

8    courts perhaps less, we are -- sometimes we do let something go

9    elsewhere.  I mean, perfect example is in a fraud case that's

10   got multiple parties.  And all we have to do is to do

11   dischargeability.  So go back, finish that matter over there,

12   come back --

13        MR. BRAY:  But that's not this case.

14        THE COURT:  -- and then I'll tell you -- I mean,

15   just -- but take the concept.  The concept is, well, sure,

16   there is some reasons why we can't handle the case via third

17   parties, or whatever, but sometimes it's, they know how to do

18   that better.  They're more experienced.  And particularly if

19   there's a jury issue, because you don't have that issue.  And

20   we're not talking about --

21        MR. BRAY:  I understand.

22        THE COURT:  -- the bankruptcy judge, we're talking

23   about whether it's related or core or noncore.

24        MR. BRAY:  These issues, the estimation of these

25   claims, is essentially why the company filed for bankruptcy, in

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  a nutshell.

2         THE COURT:  No, I -- well.

3         MR. BRAY:  It is the central issue.

4         THE COURT:  Well, I think it would be more accurate to

5  say the company filed bankruptcy because of the fires.

6         MR. BRAY:  Yes.  But to resolve -- the company chose

7  this forum to resolve those claims, and this Court has the

8  unique statutory ability to act and to do that in a fair and

9  efficient fashion and still try to satisfy and meet the June 30

10  deadline.  I was struck --

11         THE COURT:  Well, you're kind of mixing apples and

12  oranges here.  There was no June 30th deadline in January.

13         MR. BRAY:  But there is.

14         THE COURT:  Yeah, I know.  But the company had two

15  choices on January 29th in the morning or at midnight:  file

16  the bankruptcy, or face whatever was the next --

17         MR. BRAY:  That's right.

18         THE COURT:  -- the next mess in --

19         MR. BRAY:  And the company chose this forum.

20         THE COURT:  Yeah, I understand.

21         MR. BRAY:  Yeah.

22         THE COURT:  But it took it with all of its warts and

23  benefits, and obviously the toolbox.  There's a 502 tool --

24         MR. BRAY:  Right.

25         THE COURT:  -- in the toolbox.

PG&E Corp., Pacific Gas and Electric Co.

1    MR. BRAY:  Which vests this Court with the right to

2 decide and estimate claims of this type in order to aid the

3 Court in confirmation of a plan that we all know we should do

4 everything we can to do by the end of June.

5    I understand that the movants almost express disdain

6 for 1054.  I don't think anyone else shares that view,

7 including the Court.  And I think it's incumbent upon all of us

8 to try to meet that deadline.

9    THE COURT:  What do you think happens if -- again, I

10 go back to you because each time you or your colleagues from

11 your firm make the argument, I enjoy the -- well, I don't mean

12 to say that -- I'm hearing it from someone who has a lesser

13 stake in terms of the outcome on the plan battles, unless I let

14 exclusivity terminate and somebody comes up with a way of

15 impairing your class --

16    MR. BRAY:  Right.

17    THE COURT:  -- cutting them down.  But what I'm

18 getting it is -- well, I'm not sure what I'm getting at.

19    But yeah, okay.  So what happens if the deadline is

20 missed, do you think?  And I don't want to know what you tell

21 your clients, but what do you tell your clients about what

22 happens if the 1054 deadline is not met?

23    MR. BRAY:  I think we don't have an investment grade

24 company.  It's going to be very difficult to exit bankruptcy,

25 and all the creditors will lose.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  And there won't be a distribution.

2          MR. BRAY:  For anyone.

3          THE COURT:  Well, there won't --

4          MR. BRAY:  The entire complexion of this case --

5          THE COURT:  -- be a distribution any --

6          MR. BRAY:  -- will change.

7          THE COURT:  -- earlier than there might have been;

8   isn't that true?  Is that a fair way to say it, or is that

9   wrong?  In other words, we heard that --

10         MR. BRAY:  It will delay everything.

11         THE COURT:  Yes.  We heard this morning that maybe by

12  the end of the year, if we have a confirmed plan consistent

13  with 1054, there will be a distribution to the victims and

14  other creditors.  And I gather your view is that you can't

15  predict what kind of distribution would occur if there's no

16  1054?

17         MR. BRAY:  No.  I agree with that.  My prediction

18  would be it would be much longer, it would entirely change the

19  complexion of this case.  The prospects and the means of

20  raising the capital you'll need to exit bankruptcy would be

21  dramatically changed.  You could cross your fingers and hope

22  that the legislature moves the date, but I think that that --

23         THE COURT:  Okay.

24         MR. BRAY:  -- would be a perilous risk to take.

25         THE COURT:  What's the -- from your point of view,

PG&E Corp., Pacific Gas and Electric Co.

1   though, again, from the unsecured creditors' committee point of

2   view, what's the disadvantage from taking the chance to let the

3   trial go forward to see what happens?  In other words, sure,

4   Mr. Orsini said about all these horrible things that will

5   happen, but what if we get through all those horribles and

6   there is a jury verdict, one way or the other?  I don't have to

7   say an up or down; there is one.  Doesn't that change the

8   dynamics of the plan process and the outcome?

9           MR. BRAY:  I think it's going to be in the eye of the

10  beholder, Your Honor.  Yes, it certainly is going to change the

11  outcome, but I think its significance will depend upon in whose

12  favor it changed.

13          THE COURT:  Right.  It will certainly change -- if I'm

14  supposed to make the estimation judgment and I haven't made it

15  by then, it can't be ignored; it's another data point.

16          MR. BRAY:  But it is a data point, but there are --

17  for example, I heard some argument that we should parallel

18  track.

19          THE COURT:  Well, that's --

20          MR. BRAY:  I heard another argument that we should do

21  it in a linear fashion.

22          THE COURT:  Um-hum.

23          MR. BRAY:  I don't even know what the procedure would

24  be if you're going to wait to begin estimation until, say,

25  February and --

(973)406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Well, again, I'm --

2          MR. BRAY:  -- we have a June deadline.  That's --

3          THE COURT:  -- keeping the state-court lawyers -- I'm

4     getting them mixed up from my notes, but certainly one

5     suggestion was made that the --

6          MR. BRAY:  Right, we run parallel tracks.

7          THE COURT:  Well, for the five of the largest fires:

8     Nuns, Atlas, Sequoia?  No, was that it?  They know which ones.

9     Camp.

10          MR. BRAY:  Right.

11          THE COURT:  I mean, that's like bellwether spades, I

12     mean, in square, right?

13          MR. BRAY:  So why can't we estimate those here?

14          THE COURT:  Yeah, right.

15          MR. BRAY:  And why can't we estimate Tubbs with it?

16     Pick the five, plus Tubbs, and estimate those.  I mean, there

17     are all sorts of ways you can manage the process to give you

18     the comfort that I think you're looking for that you're doing

19     the right thing.  I understand that that's the paramount issue

20     here, and we share the concern, but there are ways to do it

21     where you keep control of the process.

22          THE COURT:  Okay.  I'm going to keep getting you to

23     answer my questions because, for the moment, you still are in

24     that in-between.  Let's say that I commit -- or my Article III

25     colleagues commit, if there is going to be one -- to be fair,

PG&E Corp., Pacific Gas and Electric Co.

1   which of course goes without saying, but does it appear fair?

2   Does it appear fair if there isn't a jury and there isn't

3   somebody who gets to hear the actual witnesses and the actual

4   victims tell how they went through these kinds of things that

5   jurors would listen to and would respond to?

6           MR. BRAY:  But we're not taking that --

7           THE COURT:  I mean, it's not to say that I wouldn't.

8           MR. BRAY:  -- right away, Your Honor.

9           THE COURT:  It's not to say that I or a judge sitting

10  at an estimation trial wouldn't.  The question is whether it

11  would even be part of the plan, part of the estimation trial?

12          Certainly on a trial over at the superior court with

13  twelve jurors sitting and listening to some of these victims

14  talk about what they went through is important.

15          MR. BRAY:  I'm not going to -- certainly that's a key

16  element of our judicial system; I'm not going to deny that.

17  But I'll go back to the point that Congress, in this situation,

18  has vested you with the statutory authority, using the word

19  "shall", as you pointed out, estimate.  Now, I know you can

20  still lift the stay and go around that, but equally important

21  is the bankruptcy process and the fair but swift resolution of

22  the claims in the entirety to try to meet the 6/30 deadline.

23          And again, it's not that there won't be a jury trial.

24  Let's just say whatever -- for sake of argument, there's a

25  trust a there's money in it; the individual wildfire victims

PG&E Corp., Pacific Gas and Electric Co.

1  still have the right to a jury trial.  The jury can hear their

2  story.  The jury can hear the harm that's befallen them.  And

3  it will go to the most serious issue, which is damages.  And

4  when the jury hears that, if they award the damages, then the

5  trust is there, hopefully, to fund that.

6      THE COURT:  But the jury won't be told what the

7  fraction, the denominator and the numerator are, to make the --

8      MR. BRAY:  I don't know that.  I don't know the answer

9  to that.

10     THE COURT:  But look, don't you also know that there's

11 a chance that it won't be a hundred cents on the dollar?  It

12 will be a percentage of a fund that maybe it was

13 underestimated.

14     MR. BRAY:  And I think you're best situated to make

15 that decision after you've heard all the evidence with respect

16 to liability and damages.  For that reason --

17     THE COURT:  I know, but --

18     MR. BRAY:  -- I actually think it's important --

19     THE COURT:  -- I'm not debating with you as though

20 you're my opponent.  You're not.

21     MR. BRAY:  No, no.  I understand.

22     THE COURT:  We're just having --

23     MR. BRAY:  Yeah.

24     THE COURT:  -- a discussion about how this thing

25 works.  And how it works is it's good news, bad news as I say.

eScribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    You've got your jury; you've got twelve of your peers.  And you

2    can come in with a twenty-million-dollar judgment and feel good

3    about it until your lawyer tells you that you're going to get a

4    tenth of that because there is only -- because of the limited

5    funds.

6         Now, maybe your lawyer would have told you ahead of

7    time that for a sure thing and for a stipulated amount or the

8    matrix, whatever, you're going to get more, and now you're

9    getting less.

10        MR. BRAY:  But I don't think even the process that the

11   plaintiffs would use would change that.  You're still going to

12   be asked at the end of the day to -- even if you have that

13   marker, you're still going to be asked to extrapolate from that

14   marker a number.  And so no matter what we do, I think that we

15   are all going to be asking you to make that decision.

16        If it were me, I certainly don't -- I would want to

17   hear all the evidence.  I would want to hear liability and

18   damages.

19        THE COURT:  Well, wait a minute.

20        MR. BRAY:  I would want to hear --

21        THE COURT:  You mean it if were you --

22        MR. BRAY:  -- everything, if I was going to set the

23   pot.

24        THE COURT:  You mean in my position?

25        MR. BRAY:  Yes.

PG&E Corp., Pacific Gas and Electric Co.

1    THE COURT:  Oh.  Well, yeah.  Okay.  But I don't --
2  but then we're back to, well, then, let's not have an
3  estimation; why don't we just have the whole trial here.  We
4  can't do that.
5    MR. BRAY:  No, I understand.  We have to have a
6  different structure.
7    THE COURT:  And by the way, again, this is not a
8  judicial officer issue.  If an Article III judge is sitting in
9  this same role, he or she is supposed to make an estimate --
10    MR. BRAY:  That's right.
11    THE COURT:  -- not have the eight- to ten-week trial
12  that Mr. Orsini was predicting, but rather some other length of
13  trial --
14    MR. BRAY:  That's right.
15    THE COURT:  -- with some other degree of proof or
16  preparation that --
17    MR. BRAY:  What the Court thinks is fair under the
18  circumstances.
19    THE COURT:  Right.  And so there's no assurance, then,
20  it seems to me, other than err on the high side, that a jury
21  verdict two years later will reward the creditor, the victim,
22  in bankruptcy terms, a hundred cents on the dollar, right?
23    MR. BRAY:  And that's the risk that we all run by
24  asking you to decide the issue.
25    THE COURT:  Right.

(972)xxx-xxxx | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    MR. BRAY:  You're going to make the decision about
2  what the size of the pot is.  And I think you've been very
3  clear that you have concerns about that, but I think that's for
4  another day, after you've heard argument and all the evidence,
5  but I think that we're collectively saying, we'll take that
6  risk.
7    THE COURT:  Okay.  I got it.  Thank you, Mr. Bray.
8    MR. BRAY:  Thank you, Your Honor.
9    THE COURT:  Mr. Orsini, is there anyone else?  Well, I
10  guess I don't have to ask you.
11    Does anyone else want to speak on behalf of the
12  debtor's position here?
13    Okay.  Mr. Julian, I guess we're ready to go under the
14  order that I issued.  We're going to reserve up to thirty
15  minutes, so tell me what you need.
16    MR. JULIAN:  Three minutes.
17    THE COURT:  Well, I mean, you can have what you want.
18    MR. JULIAN:  Your Honor, my closing argument would be
19  every one of those statements you just made to Mr. Bray, so.  I
20  think you hit the nail on the head.  I really want to rise to
21  say just two things.  This is a case that presents substantial
22  cause for relief from stay for all the reasons you just
23  discussed with Mr. Bray, and I really just want to talk about
24  one timing issue.
25    I heard in the dialogue between you and Mr. Orsini,

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    and actually Mr. Kelly and Mr. Pitre were up here, a concern

2    about a January trial date.  December, January, February, there

3    was discussion about that.  It sounded to me like we were

4    within three or four weeks of an issue of concern.

5            I'd just like to remind the Court that I filed this

6    motion on July 2, ten days before the Governor signed AB1054,

7    before I even knew it was going to happen.  And then we had

8    PG&E's request to continue my July 24 hearing date three weeks.

9    And in your order -- I'm not complaining, by the way, I just --

10           THE COURT:  You can complain.

11           MR. JULIAN:  -- want to make the record clear.

12           THE COURT:  You can complain if you want.

13           MR. JULIAN:  Your order of July 22 states exactly what

14   I was concerned about:  "The TCC is concerned about any delays

15   that might affect the individual claimants' trial preference

16   entitlements.  But a three-week delay is not fatal,

17   particularly if the outcome the Court reaches proves to be in

18   their favor".  And I thank you for that comment.

19           I would just like to say that that, plus your comment

20   the other day when the exclusivity termination motions first

21   came up, when you said you can move quickly next spring and get

22   the job done, I know you can.  I don't think the timing issues

23   are going to be a problem in this case with respect to this

24   motion, and I would request that the motion be heard on the

25   merits.  There's substantial cause, for all the reasons you

PG&E Corp., Pacific Gas and Electric Co.

1 just mentioned to Mr. Bray.

2 THE COURT: When you say motion be heard on the

3 merits, what do you mean by that?

4 MR. JULIAN: That the relief from stay motion be heard

5 on the merits, without regard to the timing concerns about

6 February and March.

7 THE COURT: Well, I'm sorry. I'm confused. How can I

8 not take into account the arguments? People said, I have to --

9 my decision is up or down on this question, right?

10 MR. JULIAN: Yes, but I think we shouldn't be

11 prejudiced by the three- or four-week delay.

12 THE COURT: No. No, you shouldn't be. But that's why

13 I couldn't tell whether you were -- you said you weren't

14 complaining, but maybe you are complaining. That's okay. Do

15 you believe your clients' rights were prejudiced by that three-

16 week delay? I mean, I think --

17 MR. JULIAN: If the three or four weeks makes a

18 difference, then my only point is PG&E brought this on, the

19 three-week delay, themselves by asking for continuance.

20 THE COURT: Well, but I'll take the responsibility for

21 making the decision. My recollection, in part, was because the

22 subrogation motion was right in the pipeline behind it. I may

23 be wrong about that, but I'm pretty sure that that was part of

24 the decision, wasn't it, and to match it up with the

25 estimation?

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    MR. JULIAN:  No.  They were on calendar for July 24

2  with us, too.  Oh, I see what you're saying.

3    THE COURT:  I thought --

4    MR. JULIAN:  No, no, you're --

5    THE COURT:  I'd have to go back and remember.  Look, I

6  wish I could remember everything I did; tell me what I said.

7  We were trying to match them up.

8    MR. JULIAN:  No, you were trying to match up my motion

9  for relief from stay with the estimation motion.

10    THE COURT:  And the subrogation motion.

11    MR. JULIAN:  I don't believe so.

12    THE COURT:  Well, okay.  I may be wrong.  I don't --

13    MR. JULIAN:  Anyway, Your Honor, it's been a good

14  argument.  Thank you for spending all day with us.

15    THE COURT:  It's my pleasure.  Thank you for spending

16  all day with me, all of you.

17    MR. JULIAN:  And the matter's submitted, Your Honor.

18    THE COURT:  Yeah, the matter's submitted.  I'll try to

19  keep up my commitment to --

20    MR. JULIAN:  Oh, Mr. Pitre -- Your Honor, do we still

21  have some time left?

22    THE COURT:  Yeah, you do.

23    MR. JULIAN:  Mr. Pitre?

24    THE COURT:  You have plenty of time left.

25    Mr. Pitre, do you want to --

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    MR. JULIAN:  We have twenty-eight minutes left, if you

2  want to use it.

3    THE COURT:  But, Mr. Julian, I haven't been -- this is

4  not like Jeopardy.  I don't have the clock running on you.

5    So, Mr. Pitre, what can I do for you?

6    MR. PITRE:  Very briefly, Your Honor.  The first point

7  I'd like to make is the estimate for trial in this case.  Mr.

8  Orsini seemed to suggest that the plaintiffs were manufacturing

9  or somehow exaggerating on the time required for trial.  I have

10  the brief that was submitted by PG&E in regard to the trial

11  plan that had been submitted to Judge Karnow.  And just to put

12  this in context, Your Honor, there were competing plans

13  submitted by PG&E and by the individual plaintiffs as to which

14  trial to tee up first.

15    THE COURT:  Um-hum.

16    MR. PITRE:  The plaintiffs had proposed that the Atlas

17  trial be tried first.  PG&E had proposed that the Tubbs trial

18  be tried first.  And in connection with PG&E's plan for the

19  Tubbs trial, what they estimated is that that trial would take

20  between 107 to 120 hours, but that included time to try the

21  bellwether plaintiff cases.

22    Now, the idea at that time to Judge Karnow was to have

23  a sufficient number of bellwether cases so that the Court could

24  begin by having a jury trial to have information that could be

25  used by the parties to help assess what the values were:

PG&E Corp., Pacific Gas and Electric Co.

1    property losses, noneconomic damages, which were the most

2    difficult.

3            So if I subtract out the time that PG&E said would be

4    required to do the bellwether damage cases, what I come to is

5    96 hours to 106 hours, which if you give six hours per day of

6    trial time comes out to sixteen days to seventeen days; so

7    that's three weeks and a half, fully consistent with a trial,

8    if we believe PG&E's trial estimate, on a trial that can be

9    done for Tubbs within three weeks to three-and-a-half weeks.

10           THE COURT:  Is that a correct number, the six hours?

11   Is that really a realistic jury-trial day?  I don't know.  It

12   seems high to me, but I don't know.

13           MR. PITRE:  That's what traditionally has been used --

14           THE COURT:  Well, that's why I'm asking you.

15           MR. PITRE:  That's traditionally what at least I have

16   used with judges in how much time to plan so that they can set

17   out how much trial time you get.  So if a judge says you're

18   only going to get five-and-a-half hours, depending on that

19   judge's trial schedule, we adjust it that half hour per day.

20           THE COURT:  Yeah, I understand.  But sometimes, well,

21   with a jury there, are they typically a five-day week or four?

22           MR. PITRE:  Five days a week, Your Honor.

23           THE COURT:  Five a week?  So what are you telling me

24   that -- bottom line, translate that for me.

25           MR. PITRE:  Sure.

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  What is PG&E saying their time to trial on

2  Tubbs would be, in terms --

3      MR. PITRE:  Three-and-a-half weeks.

4      THE COURT:  Three-and-a-half weeks?  For their case,

5  or for the total?

6      MR. PITRE:  The whole case.

7      THE COURT:  The whole case.

8      MR. PITRE:  The whole case.  So what I'm saying to

9  this Court is, to the extent that Mr. Orsini is suggesting that

10  this case is going to take six to eight weeks when Mr. Orsini,

11  on behalf of his client, told the superior-court judge that

12  this case could be tried both sides -- I assume that was a

13  good-faith estimate -- within three-and-a-half weeks, that I

14  trust that he was being candid, and I trust he was being

15  honest.

16      I also suggest that a court has at its disposal, as

17  you know, Your Honor -- Judge Walker was famous for it -- which

18  was to impose time limits on people.

19      THE COURT:  No, the bankruptcy judges, and this one,

20  have done them.  I'm not a fan of them, but I've done them.

21      MR. PITRE:  And I think in a case like this, there is

22  no question that I, Mr. Kelly, Mr. Campora, whoever's trying

23  that case is going to ask that trial limits be imposed.

24      There are rules you go through.  You ask people about

25  time for each witness.  Why that witness is relevant.  Why that

PG&E Corp., Pacific Gas and Electric Co.

1  witness isn't going to copy --

2          THE COURT:  Well, again, now you're back in state

3  court.

4          MR. PITRE:  Yes, I am.

5          THE COURT:  Because the fact that I or other

6  bankruptcy judges may do timed trials doesn't mean anything.

7  It's these estimation trials versus the trial time.

8          MR. PITRE:  That is correct.

9          THE COURT:  So okay.

10         MR. PITRE:  So let's just go back to --

11         THE COURT:  So what you're saying again --

12         MR. PITRE:  I'm trying to --

13         THE COURT:  -- is you believe your opponent told the

14  superior court three- to four-week trial --

15         MR. PITRE:  That is correct.

16         THE COURT:  -- bellwether trial.

17         MR. PITRE:  I'm trying to address the Court's point --

18         THE COURT:  Yeah.

19         MR. PITRE:  -- that somehow or other, if we go over to

20  state court, one cannot manage a time restriction so that the

21  Court could have some assurance that, with time limits imposed,

22  using good-faith estimates by PG&E at the time they submitted,

23  that this is a case called the Tubbs trial that could be tried

24  within three to three-and-a-half weeks.

25         THE COURT:  And did you agree with that?  In other

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1   words --

2            MR. PITRE:  We did not agree that the Tubbs trial

3   should be the case.

4            THE COURT:  Okay.

5            MR. PITRE:  So we proposed the Atlas trial, a

6   different case.

7            THE COURT:  Yeah, I know.  But so there was no

8   discussion on your side to respond to the Orsini prediction for

9   Tubbs?  It just doesn't -- so he was suggesting Tubbs at that

10  time, and you were suggesting Atlas --

11           MR. PITRE:  That is correct.

12           THE COURT:  -- and you got what you asked for.

13           MR. PITRE:  There was no judicial determination --

14           THE COURT:  Okay.

15           MR. PITRE:  -- of who was right, in terms of their

16  trial estimates.

17           THE COURT:  I mean, but judges don't usually make that

18  kind of decision, do they?  They rely on the experience and the

19  good will and the good integrity of the lawyers to make the

20  estimates.

21           MR. PITRE:  Well, I wish that were true sometimes,

22  Judge, but I have seen judges in trials who say, I understand

23  that you think you want fifty hours to try this case; I'm

24  allotting twenty hours.

25           THE COURT:  No, I know that.  I know that, and we do

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1    that in this court too.

2         MR. PITRE:  True.

3         THE COURT:  But what I'm getting at is that presumably

4    there was a good-faith statement by an officer of the court --

5    you on one side and Mr. Orsini on the other -- telling that

6    court what each of you estimated for your case for what now is

7    academic unless I grant relief from stay as to Tubbs.

8         MR. PITRE:  That is correct.

9         THE COURT:  And if I grant relief as to Tubbs, leaving

10   aside the suggestion that I should somehow communicate with the

11   superior-court judge, you lawyers who are going to be trying

12   the case will have your discussion with that judge about

13   everything about those things.

14        MR. PITRE:  That is correct, Your Honor.

15        THE COURT:  Okay.  I've got you.

16        MR. PITRE:  The next point that I'd like to make is,

17   it's always interesting to me when somebody, a party, like the

18   gentleman who just spoke, who is not at risk for living with

19   the consequence of what the verdict may be or the consequence

20   of what an estimation trial will be, seems to suggest that this

21   Court should act one way or the other.  The people who live

22   with that decision are the people who are the fire victims.

23   The fire victims got brought into this court because PG&E

24   decided to use this court as a litigation tactic to avoid what

25   it saw as an exposure to liability.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      Now, all I'm saying is, Judge, the most important

2 people who need to believe in the process are the fire victims

3 because they will live with the outcome of a bad result.  And

4 if they aren't accorded the opportunity to have a jury

5 determine that -- and, Your Honor, this has nothing to do with

6 this Court.  What it has a lot to do is that confidence that

7 people will take from the fact that they had a full and fair

8 opportunity to try their case and to have people who don't know

9 anything about whether there is enough money or not to their

10 verdict, they're not influenced by whether their verdict will

11 send a signal, and that signal will be used and multiplied and

12 somehow have an impact on whether or not there is enough money

13 to resolve all cases.

14      They make a decision.  A decision that is

15 uninfluenced, that is not biased.  And when they make that

16 decision, I submit to this Court the issue they make on

17 liability and causation is one that is free from all of the

18 noise that may surround this bankruptcy court in terms of the

19 impact.  And if we are going to live with the risk and the

20 outcome, a suggestion that I have is that a jury trial is one

21 that will render the confidence in the result, bad or good.

22 Because any lawyer who is a plaintiff lawyer who doesn't come

23 out and say we tried our best case and we lost and doesn't come

24 back and readjust themselves and say, I cannot come in with the

25 same degree of confidence in the estimation of what the value

PG&E Corp., Pacific Gas and Electric Co.

1    is is not being, in my view, a lawyer that is practicing law to

2    understand the impact of what it means to all his other

3    clients.

4         And all I'm suggesting is I believe that the most

5    important thing we can do to have confidence is to allow a jury

6    to make that determination with all of the protections and

7    protocols that we have talked about.

8         That's it, Your Honor.  Thank you.

9         THE COURT:  No.  Stay there for a minute.  I agree

10   with you for those eight or thirteen or whatever number of

11   people who are in front of the jury.  And as I even said

12   before, I think I was saying to Mr. Orsini, or Mr. Bray, that

13   isn't it important that those victims tell their fellow people,

14   whatever the correct phrase is for equal people from the county

15   or from the area on a jury, but it only is for that number of

16   people.  So the rest of the hundreds and thousands of victims

17   won't have that right as long as this bankruptcy and the

18   bankruptcy laws dictate the outcome.

19        So it may well be, there'll be a bellwether.  It may

20   well be that there'll be a very favorable verdict in favor of

21   the plaintiffs if it goes forward.  And it may well be that

22   either the estimator or the company itself will have to make a

23   much more generous kind of pot, if you will, a trust.  But

24   there won't be anybody else going for a trial, a trial and a

25   jury, except for those ones that might want to do it even

PG&E Corp., Pacific Gas and Electric Co.

1    though it will have no economic impact on it.  Right?  I mean,

2    isn't that true?

3              MR. PITRE:  Well, I differ --

4              THE COURT:  Okay.

5              MR. PITRE:  -- from the Court's opinion.

6              THE COURT:  Okay.

7              MR. PITRE:  Because it's not the number that comes

8    out.  Yes, the number has some importance.  But the most

9    important thing is the liability finding.  Because the --

10             THE COURT:  Yeah.

11             MR. PITRE:  -- Tubbs case is a case that has had such

12   notoriety, primarily because PG&E wants to always tout it and

13   say it's important without getting involved to what it is, the

14   most important thing is if a jury comes back and says PG&E's

15   employees destroyed evidence.  The CAL FIRE report did not

16   consider evidence of what happened at Pole 773; it's a pole

17   down from where the actual site that is suspected, the zinc

18   (ph.) property, of where the fire may have originated.  If it

19   is determined by that jury that the entire way in which

20   causation was assessed and that critical evidence was

21   destroyed, that is going to send a very loud message to PG&E in

22   these proceedings regarding how they treat the rest of the

23   Tubbs cases.

24             THE COURT:  No, I thought I --

25             MR. PITRE:  That's what's important.

(97) operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  I thought I was agreeing with that very

2  same thing.  So that --

3      MR. PITRE:  Yes.

4      THE COURT:  -- the victims who are able to tell their

5  story and the jury who listens to that story and responds with

6  a favorable ruling, those are all good things from your side.

7  And it's also a good thing from your side if the message is

8  loud and clear such that either the Court estimating or PG&E

9  consensually agreeing to a much more generous -- a better

10  recovery than, perhaps, they would try to do otherwise.

11      But the notion of other victims going before other

12  juries is still a much different proposition.  So I will --

13      MR. PITRE:  It is.

14      THE COURT:  -- accept and I take your word for it

15  because it doesn't have to -- you don't have to be an

16  experienced lawyer or judge; it's human.  You're describing a

17  human condition in a situation that I understand.  But I also

18  believe I am right that that doesn't mean anybody else is going

19  to go before a jury unless it's only for that so-called

20  estimation, just to figure out the number for you in the pool.

21      Anyway, I don't want to make any more statements.

22      MR. PITRE:  An important note, Your Honor, I agree

23  with you.  It is a very important, in fact critical,

24  information point.  That, I don't think anybody can disagree

25  with.

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1          THE COURT:  Yeah.  Okay.

2          MR. PITRE:  Thank you, Your Honor.

3          THE COURT:  All right.  I'm going to thank everyone

4    for the long day and the hard work, as I did yesterday.  And I

5    will try to keep my commitment to you that I made when we

6    resumed after lunch to dispose of at least the four motions --

7    the exclusivity motion and relief from stay motions -- within

8    the time frame I indicated.  And to the extent that the

9    estimation is going to be influenced, particularly by the

10   relief from stay rulings and other aspects that we've discussed

11   more specifically that pertain to estimation, I will take that

12   up when we meet again on this point.

13          So once again, to review what I asked for, I asked

14   for -- I was scheduling on the 27th of August at 9:30, along

15   with the other calendar, the few other matters on the calendar,

16   is the status conference on whatever shape or form the

17   estimation is going to start to take.  I'm insisting, without a

18   formal order, that the principal counsel meet and confer before

19   then to discuss the contours of what either they agree or they

20   don't agree but want me to try to resolve about that; that on

21   the same day, we will have whatever is necessary for the motion

22   to preserve the jury rights, that was framed in the motion by

23   the TCC, and for that I want short, simultaneous briefs by the

24   20th.

25          Separately, my proposal regarding consent or lack of

PG&E Corp., Pacific Gas and Electric Co.

1    consent about having me as the bankruptcy judge, rather than

2    another judge involved, in all or in part, that just be

3    communicated in brief form in the manner I said by the 19th of

4    August.

5             And with that, I will send you on your way, and thank

6    you.

7             Mr. Orsini, you have a --

8             MR. ORSINI:  One quick issue, Your Honor.  And I hate

9    to raise at 5:05 --

10            THE COURT:  That's okay.

11            MR. ORSINI:  -- to raise this, but as we're talking

12   about scheduling.  As I mentioned earlier, during the

13   estimation argument, we have reached agreement with the state-

14   court plaintiff leadership on the BrownGreer database --

15            THE COURT:  Okay.

16            MR. ORSINI:  -- and a mechanism for getting access to

17   that for us, as well as the UCC, as well as to set up protocols

18   to see if we can continue mediations to come up with common

19   valuation efforts.

20            I've been working very close with Mr. Skikos, who

21   you've heard from before on these issues.  Our hope was to sort

22   of present that to the Court today --

23            THE COURT:  Okay.

24            MR. ORSINI:  -- and then submit an order.  But late in

25   the day, so I don't know if Your Honor would be amenable to a

(973) 406-2250 | operations@escribers.net | www.escribers.net

PG&E Corp., Pacific Gas and Electric Co.

1  teleconference sometime between now and the next conference

2  where we could take that issue up?

3          THE COURT:  Whatever you want.  Look, I've got a lot

4  of people who have been here all day.  I've got a staff of

5  people that --

6          MR. ORSINI:  Right.

7          THE COURT:  -- have been here.

8          MR. ORSINI:  That's why I don't want to do it now,

9  Your Honor.  So if Your Honor would be amenable to a short

10  teleconference, it would probably take no more than thirty

11  minutes so we could present the order.

12          THE COURT:  And how many attorneys get to participate?

13          MR. ORSINI:  Well, I mean --

14          THE COURT:  I'll tell you what.  Do whatever you want.

15          MR. ORSINI:  I think me and Mr. Skikos could address

16  it.

17          THE COURT:  If you've reached a resolution, that's

18  fine.  If you think it's important to have a conference, I'll

19  do whatever you ask.  If it can be done by just a written

20  stipulation that you file, that's okay.  You gentlemen make the

21  call on that.

22          MR. ORSINI:  Why don't we start with a written

23  stipulation, Your Honor.

24          THE COURT:  Yeah.

25          MR. ORSINI:  And if --

PG&E Corp., Pacific Gas and Electric Co.

1      THE COURT:  What you're comfortable with.

2      MR. ORSINI:  -- Your Honor, has questions, we could

3  have a conference.

4      THE COURT:  My courtroom deputy, Ms. Parada, knows the

5  drill for setting up telephonic conferences.  The only thing

6  that's different about this case is in order -- because there's

7  so many people that are tracking everything that goes on, I

8  can't --

9      MR. ORSINI:  We'll file the request on the docket.

10      THE COURT:  I can't just do it the simple way.  But

11  we'll do whatever's necessary to keep it that way.  And I'm

12  glad you reached a resolution of that; glad to hear it.

13      MR. ORSINI:  As are we.  Thank you, Your Honor.

14      THE COURT:  Okay.  Thank you, everyone.  Have a good

15  evening.

16     (Whereupon these proceedings were concluded at 5:06 PM)

17

18

19

20

21

22

23

24

25

(973)406-2250 | operations@escribers.net | www.escribers.net

1                    C E R T I F I C A T I O N

2

3    I, Clara Rubin, certify that the foregoing transcript is a true

4    and accurate record of the proceedings.

5

6

7

8

9

10

11   _____

12   /s/ CLARA RUBIN

13

14   eScribers

15   7227 N. 16th Street, Suite #207

16   Phoenix, AZ 85020

17

18   Date:  August 16, 2019

19

20

21

22

23

24

25


(973) 406-2250 | operations@escribers.net | www.escribers.net

## A

**AB (3)**
20:20;67:9;70:16
**AB1054 (2)**
231:10;286:6
**AB-1054 (1)**
172:3
**abbreviated (2)**
260:20;262:24
**ability (10)**
5:21;38:17;44:23;
124:21;197:15;257:12;
270:15;271:6;272:9;
276:8
**able (18)**
11:9;39:8;62:14,16;
105:18;108:12;115:24;
163:10;175:18;177:23;
185:11;192:20;223:7,
11;224:14;231:7;
239:18;298:4
**about-face (1)**
259:10
**abrogate (2)**
172:4;177:2
**abrogated (1)**
177:12
**absent (5)**
16:21;244:2,5;
251:12;256:25
**absolute (5)**
67:9;171:3;172:3;
198:12;271:5
**absolutely (27)**
15:7;18:1;30:7;
31:23;33:20;46:25;
51:4,23;58:11;117:20;
149:16;151:25;165:17;
171:16;174:17;203:17;
207:1;240:23;242:21;
249:7,17;258:23;
260:3,22;266:8;
269:14;270:15
**absorbed (1)**
193:7
**abundantly (1)**
129:9
**abuses (1)**
191:19
**academic (1)**
294:7
**accept (6)**
62:16;137:22;220:1;
229:23;253:10;298:14
**acceptable (1)**
34:22
**acceptance (1)**
60:18
**access (3)**
104:22;233:6;300:16
**accommodate (2)**

87:22,23
**accorded (1)**
295:4
**according (1)**
109:6
**account (3)**
33:6;231:16;287:8
**accounted (1)**
49:22
**accounts (1)**
105:22
**accurate (1)**
276:4
**acknowledge (3)**
23:8;136:22;238:10
**acknowledged (1)**
83:21
**acknowledgment (1)**
172:22
**acres (1)**
216:11
**across (4)**
214:24;225:23;
228:7;268:14
**act (7)**
22:8;40:19;149:6;
189:12;234:8;276:8;
294:21
**action (8)**
7:16;72:16,18;106:4,
6;112:21;113:24;
264:24
**active (2)**
23:8;69:13
**actively (1)**
180:25
**actual (5)**
245:9;261:12;281:3,
3;297:17
**actually (47)**
14:21;18:15;22:20;
24:17;26:1;29:5;37:24;
49:2;52:10,25;54:22,
24,25;56:8,10;57:24;
79:13;88:24;97:18;
104:8;110:11;116:3,4;
118:3;151:22;153:12;
156:13;161:23;165:20,
25;183:15;214:2;
220:9;243:21;247:3,9,
11;250:11,25;257:2;
260:12,19;264:1;
267:19;270:21;282:18;
286:1
**ad (13)**
8:18;25:16;74:1;
76:2;78:24;79:3;
147:18,23,24;149:10;
151:9;241:24;255:10
**add (7)**
24:10;162:15;186:5;
187:9;211:19;251:25;
271:14

**added (1)**
246:14
**adding (1)**
231:2
**addition (2)**
152:11;207:12
**additional (1)**
27:8
**address (27)**
9:6;10:18,22;27:8;
28:20;29:2;46:9;63:15;
64:17;119:15;120:1,
18;131:5;141:12;
158:8;171:15;174:15;
178:25;195:22;199:20,
21;210:9;212:15;
245:23;249:5;292:17;
301:15
**addressed (12)**
33:24;36:22,23;39:2,
2;123:3;142:22;
172:13;181:19;182:3;
238:25,25
**adequate (3)**
55:2;74:13,19
**adherence (1)**
178:18
**adjudicate (1)**
160:13
**adjudicating (3)**
158:16,17;161:5
**adjudication (1)**
190:3
**adjudications (1)**
248:1
**adjust (1)**
290:19
**administration (2)**
16:24;231:8
**admissible (2)**
103:10;106:18
**admit (7)**
15:15;96:6,6;102:24;
116:4;236:3,8
**admitted (3)**
98:3;217:13;254:11
**admitting (3)**
116:5,5,6
**ado (1)**
90:22
**adopt (4)**
107:2;116:13;126:9;
196:12
**adopted (1)**
156:20
**adopting (1)**
125:7
**advance (2)**
60:13,14
**adverse (4)**
12:7;74:5;98:4;
121:19
**advice (4)**

140:10;150:14;
179:25;250:15
**advising (1)**
149:17
**advisors (3)**
147:22,23,24
**advisory (2)**
144:15;196:15
**advocate (1)**
159:16
**advocating (3)**
168:8,10;229:10
**affect (1)**
286:15
**affecting (1)**
158:18
**affidavits (1)**
214:16
**afford (5)**
72:11;262:7,8,16;
271:2
**afforded (1)**
144:11
**afoul (1)**
53:23
**afternoon (8)**
58:16;153:9;156:4;
202:22,23;241:22;
252:23;256:22
**again (76)**
11:17;13:12;17:16;
19:6;20:21;24:2;27:10,
13;32:20;36:25;39:18;
40:6;42:6;43:17;47:17;
51:7;59:21;69:5;70:4;
73:5;92:20;96:20;
105:12;107:18;111:14;
114:2;128:2;130:4;
131:3,25;137:24;
139:5;145:25;146:16;
147:21;150:14;164:23;
166:9;168:3;179:15;
187:23;189:24;191:25;
192:12;201:20;208:18;
209:8,22;210:2;
211:12;212:20;219:11;
221:16;224:21;227:7;
229:6,21;230:2;232:1;
244:14;247:7;250:14;
260:18;267:23;269:10;
272:22;274:3;277:9;
279:1;280:1;281:23;
284:7;292:2,11;
299:12,13
**against (11)**
13:22;49:13;51:17;
55:7;68:24;103:19;
104:11;119:10;240:8;
261:8;263:25
**age (1)**
238:10
**agencies (2)**
181:14,20

**aggregate (3)**
42:4,23;54:22;55:1,
25;107:18;134:1;
163:17
**ago (9)**
5:13;6:25;49:20;
123:3;142:15;169:9;
198:17;240:14;272:25
**agree (77)**
9:11;11:18;16:11;
17:8;24:24;32:3,7;
34:12;38:23;40:5,7,24;
43:23,23;44:1;51:15;
58:3;64:3,21;66:10;
72:21;73:12;79:19;
83:25;88:3;91:6,9;
94:14,16;98:11,13;
113:1,1,2,6;115:1,4;
122:3;124:2,3,4,10;
128:4;132:7;133:2;
134:15,16;135:10,15,
18;138:3;152:23;
165:25;185:13,16;
186:15;198:4;207:10,
10;222:22;238:20;
245:18;255:14;265:6;
269:4,6,9;270:3,3;
273:4;278:17;292:25;
293:2;296:9;298:22;
299:19,20
**agreed (12)**
8:20;40:1;64:20;
79:20;116:25;141:11;
149:2,4,24;150:10;
192:15;194:6
**agreeing (9)**
71:17;104:2;128:24;
137:23;196:18;298:1,9
**agreement (11)**
7:9;60:13,15,16;
135:9,17;137:25;
138:5;168:8;194:1;
300:13
**agreements (1)**
208:13
**agrees (2)**
150:16;196:18
**agriculture (1)**
112:23
**AH (1)**
138:21
**ahead (20)**
7:13;9:3;13:6;28:19;
56:13,15;102:18;
112:16;124:25;125:14;
129:22;159:18;171:18,
21;173:17;199:19;
214:11;248:8;271:25;
283:6
**aid (1)**
277:2
**aim (1)**
219:2

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 304
of 341

**air (1)**
  113:19
**airport (1)**
  6:1
**Akin (2)**
  8:19;79:3
**aligned (2)**
  74:15;76:3
**alive (4)**
  17:20;100:22;
  123:18;185:18
**Allan (1)**
  252:24
**alleged (1)**
  30:6
**allocate (2)**
  8:13;24:9
**allocated (2)**
  8:1;41:18
**allocation (2)**
  8:11;46:19
**allotting (1)**
  293:24
**allow (4)**
  21:22;75:14;105:19;
  296:5
**allowance (2)**
  273:17;275:6
**allowing (1)**
  160:10
**alluded (1)**
  249:19
**almost (5)**
  38:3;44:13;142:21;
  248:9;277:5
**alone (2)**
  107:9;164:15
**along (1)**
  299:14
**alternative (10)**
  5:16;17:23;68:4;
  77:5;84:22;92:23;
  146:11;147:11;156:24;
  159:1
**alternatives (2)**
  146:10;173:10
**although (3)**
  148:18;151:12;
  154:24
**always (6)**
  87:25;92:2;204:5;
  241:17;294:17;297:12
**amenable (3)**
  188:9;300:25;301:9
**amended (1)**
  7:10
**American (1)**
  119:24
**among (6)**
  15:3;30:14;47:22;
  164:18;196:13;245:3
**amorphous (1)**
  231:9;240:6

**amount (19)**
  49:5,11;51:18;55:15,
  16;90:20;91:24;100:7,
  10;112:6;131:15;
  134:13;201:8;202:11;
  229:13,15,16;230:5;
  283:7
**amounts (1)**
  59:9
**analysis (10)**
  14:7;19:1;24:17;
  40:15;59:4,16;62:3;
  98:10;127:23;137:23
**and/or (1)**
  130:2
**Andrew (1)**
  66:18
**animal (2)**
  106:1;227:15
**announce (2)**
  25:5;192:21
**announced (1)**
  29:10
**announcements (1)**
  7:22
**announces (1)**
  81:14
**answered (1)**
  95:24
**answer's (2)**
  9:25;55:20
**anticipate (3)**
  65:5;186:16;242:24
**anticipates (1)**
  33:1
**anticipating (1)**
  184:23
**anti-discrimination (1)**
  198:12
**antithetical (1)**
  172:20
**anymore (1)**
  192:22
**apart (1)**
  24:14
**apologies (1)**
  241:23
**apologize (2)**
  95:12,13
**apparent (1)**
  204:7
**apparently (3)**
  115:8;257:6;259:17
**appeal (18)**
  10:4;80:24,25,25;
  81:6,17,18,23;82:10,
  10,18,24;83:12,17;
  119:1,8,25;200:4
**appealed (2)**
  82:2;119:4
**appeals (8)**
  28:6,11,11,12;80:17,
  23;81:23;152:2

**appear (4)**
  136:21;248:12;
  281:1,2
**appearance (3)**
  7:6;8:4,7
**appearances (1)**
  275:3
**appeared (1)**
  239:2
**appearing (3)**
  88:5;111:1;149:21
**appears (1)**
  256:5
**appellant (1)**
  82:6
**Appellate (12)**
  81:8;83:6,20;84:13;
  119:20;120:20;148:17;
  161:1;268:25;269:1,2,
  11
**apples (1)**
  276:11
**applicable (1)**
  124:9
**application (2)**
  204:17,18
**applied (1)**
  241:9
**applies (5)**
  31:2;56:7;58:1;96:3,
  10
**apply (6)**
  96:9;99:4;107:1;
  177:4;224:13;237:22
**appointed (3)**
  46:14;60:9;192:4
**appreciate (13)**
  13:14;35:9;78:8;
  86:3;109:24;110:6;
  111:7;114:19;160:18,
  20;202:18;234:14;
  241:17
**appreciation (1)**
  94:21
**approach (11)**
  10:17;34:15;38:21,
  22;40:24;79:25;80:2;
  156:14;171:10;228:22;
  262:9
**appropriate (6)**
  87:17;154:21;186:3;
  219:22;222:8;253:11
**approves (1)**
  62:17
**April (1)**
  154:12
**arbitration (2)**
  33:17;133:14
**arc (1)**
  251:2
**Archdiocese (1)**
  41:16
**arching (1)**

103:13
**area (5)**
  18:22;202:1;250:24;
  251:1;296:15
**argue (8)**
  8:14;11:23;52:14;
  64:9,9;186:14;231:5;
  245:20
**argued (6)**
  71:6;134:20;171:19;
  194:7;258:8;272:6
**argues (1)**
  52:14
**arguing (7)**
  57:19;84:23;144:25;
  159:24;176:16;228:9;
  268:21
**argument (51)**
  13:8,9;15:17,22;
  16:25;57:21;58:16;
  71:10;86:14;99:20;
  101:14;121:12,14;
  122:4;130:24;140:11;
  165:14,23;168:5;
  170:13;173:1;176:24;
  181:23;189:3,20;
  199:25;203:18;211:8;
  216:2;218:14;228:25;
  231:7;238:3,6;239:1,4;
  240:7,10,22;247:13;
  271:16;272:2,3;
  277:11;279:17,20;
  281:24;285:4,18;
  288:14;300:13
**arguments (19)**
  9:14;10:8;29:19;
  86:18;88:8;134:4;
  166:2;168:10;195:12;
  215:16;220:2;238:3;
  240:2;242:1;243:13;
  245:22;258:15,16;
  287:8
**arm (2)**
  250:5,5
**arms (3)**
  25:9;27:17;73:7
**around (13)**
  6:2;27:17;73:7;
  100:18;164:10,12;
  208:7;209:22;213:5,7;
  243:1;258:16;281:20
**arrange (1)**
  5:16
**arranged (1)**
  18:3
**arrangements (1)**
  5:23
**Article (18)**
  17:17;55:14;60:22;
  61:2;82:2;124:3;128:5;
  129:12,14;131:1;
  148:7,14;150:8;217:5;
  222:11,12;280:24;

284:8
**articulate (1)**
  44:5
**articulated (2)**
  40:24;257:11
**asbestos (11)**
  18:17;47:1;48:18;
  57:23;88:21,23;125:8,
  16,18,22;126:5
**asbestosis (2)**
  88:24,25
**Ashley (1)**
  79:2
**aside (14)**
  10:7;11:24;12:18;
  19:10;43:24;59:21;
  96:12;97:23;134:3;
  161:25;200:4;222:15;
  230:3;294:10
**aspect (1)**
  39:22
**aspects (2)**
  194:2;299:10
**assembled (1)**
  103:15
**assess (1)**
  289:25
**assessed (1)**
  297:20
**assessment (1)**
  257:3
**assign (1)**
  213:10
**assigned (3)**
  81:11,12;207:14
**assignment (10)**
  32:22;43:17,18,19;
  80:7;115:21;140:7;
  147:6;213:8;248:6
**assist (2)**
  224:18;235:6
**assume (14)**
  17:16;81:18,19;
  82:11;114:22;121:13;
  189:2;203:11;211:20;
  244:13;248:22;250:4;
  252:16;291:12
**assumed (1)**
  252:18
**assuming (6)**
  39:13;95:25;96:2;
  135:24;145:4;192:20
**assurance (2)**
  284:19;292:21
**Atlas (23)**
  42:18;179:21;
  198:22;199:9,10;
  201:19;215:3;226:12,
  19,23,24,25;227:4;
  229:23,25;230:7,13;
  259:14,15;280:8;
  289:16;293:5,10
**ATM (1)**

Case: 19-30088   Doc# 3563   Filed: 08/15/19   Entered: 08/15/19 18:13:37   Page 305
of 341

61:8
**attack (1)**
    123:4
**attempt (3)**
    193:2,9;194:4
**attenuated (1)**
    20:5
**attitude (1)**
    178:17
**Attorney (1)**
    181:13
**attorneys (2)**
    9:16;301:12
**attorneys' (3)**
    31:14,15;34:7
**attractions (1)**
    64:15
**Au (1)**
    120:5
**AUGUST (8)**
    5:1;177:25;190:20;
    193:8;245:25;272:19;
    299:14;300:4
**authenticate (1)**
    103:16
**authority (12)**
    11:12;40:9;93:12;
    129:1;238:13,14,17,19,
    21;274:11;275:5;
    281:18
**automatic (4)**
    198:23;237:20,21,24
**automatically (1)**
    241:8
**available (8)**
    5:12;31:13;45:9;
    112:20;218:10;227:25;
    235:10;237:9
**average (2)**
    24:7,11
**averaged (1)**
    109:6
**averted (1)**
    142:15
**avoid (8)**
    75:15;79:14;82:23;
    83:6;84:4;142:6;164:1;
    294:24
**award (1)**
    282:4
**awarded (2)**
    201:8;202:11
**aware (4)**
    74:16;106:3;160:5;
    235:16
**away (7)**
    16:9;85:13,22;96:8;
    108:21;148:22;281:8
**awkward (1)**
    147:13
**axes (1)**
    113:19

# B

**b5 (1)**
    53:6
**Babich (1)**
    203:4
**back (82)**
    10:16;11:17;12:11,
    19;14:14;16:7;27:2;
    30:17,17;33:14;40:10;
    41:2;43:17;46:22;
    47:17;50:8,15;51:20;
    54:17;57:13;59:3;62:2;
    66:4,22;82:20;87:10;
    93:21;102:8;105:2;
    115:21;119:10,11;
    128:3;131:3,13;138:9;
    143:15;145:7;150:2;
    156:8;157:17,20;
    158:11;160:4;162:10;
    164:18;169:25;177:17;
    187:13;188:3;198:17;
    199:23;201:22;215:2;
    223:17;231:10;243:16,
    18;245:24;248:25;
    249:8;251:23;256:13,
    19;258:1;260:16;
    265:18;268:5,21;
    270:23;271:9;272:2;
    275:11,12;277:10;
    281:17;284:2;288:5;
    292:2,10;295:24;
    297:14
**backdrop (1)**
    199:15
**backed (2)**
    205:15;212:17
**background (2)**
    170:23;199:15
**bad (6)**
    51:11,12;191:22;
    282:25;295:3,21
**Baker (1)**
    88:5
**balance (4)**
    85:22;231:20;240:8,
    8
**ball (2)**
    67:23;225:20
**balling (1)**
    157:8
**bank (1)**
    131:25
**bankrupt (1)**
    197:5
**bankruptcies (5)**
    88:17;121:18;221:7,
    8;231:22
**bankruptcy (116)**
    9:15,17,18;12:20;
    13:20,23;16:17,21,23;
    22:24;28:5;30:4;33:1;

35:6,11,22;36:8;37:7,
14;38:5,17;39:15,19,
21;41:3;54:9;55:7,13;
72:17;79:17;81:4,8,12;
82:5;92:14;93:10,16;
95:12;100:15;103:18;
104:11;106:13;114:22;
119:2;126:3;131:14;
138:11;144:10;147:10;
148:13;152:7,9;
166:20;172:23;175:19,
20;177:22;178:13;
182:23;192:16;195:22;
199:15,23;202:19,24;
217:7;218:17,20;
220:23;221:5,12,14;
224:24;226:21;228:2;
229:7,12;231:14,17;
234:10,15;235:25;
237:18;241:8;244:2,5;
248:19;249:12;250:8;
251:12;253:9;259:11;
261:19;267:3,15,16;
269:1;271:6;272:16;
273:22;274:8;275:7,
22,25;276:5,16;
277:24;278:20;281:21;
284:22;291:19;292:6;
295:18;296:17,18;
300:1
**bankrupting (1)**
    198:18
**banks (2)**
    231:13,13
**bar (22)**
    10:23;73:15,17,18,
    24;75:14;92:14;
    124:12,16;125:19,23;
    126:8;128:11,15;
    158:19,22;159:10;
    161:6,11;162:2;
    185:23;186:13
**bargaining (1)**
    245:7
**barred (1)**
    16:19
**bars (1)**
    125:8
**bar's (2)**
    125:16;126:5
**baseball (1)**
    33:17
**Based (10)**
    18:6;62:15,17;98:9;
    181:20;219:6;258:25;
    263:7;274:10,12
**bashful (1)**
    87:13
**basic (2)**
    147:10;270:17
**basically (4)**
    46:16;91:25;162:10;
    274:25

**basis (6)**
    88:22;90:19;96:6;
    108:13;160:10;218:25
**bat (1)**
    28:21
**battle (2)**
    91:23;197:16
**battles (1)**
    277:13
**Bay (8)**
    90:11;95:7;109:4,8;
    198:21;199:7,16;
    216:10
**bear (2)**
    242:14;257:24
**beat (2)**
    120:23;244:14
**become (2)**
    236:11,13
**becomes (2)**
    124:13;167:14
**bed (1)**
    123:5
**befallen (1)**
    282:2
**began (1)**
    68:5
**begin (7)**
    7:23;26:15;116:11,
    14;154:20;279:24;
    289:24
**beginning (3)**
    67:25;85:16;261:12
**begins (1)**
    258:22
**behalf (16)**
    7:8;8:9;26:7;66:19;
    79:3;88:5;95:7;151:9;
    185:8;195:24;241:24;
    252:24;256:23;266:18;
    285:11;291:11
**behavior (1)**
    216:14
**behind (3)**
    24:18;237:14;287:22
**beholder (1)**
    279:10
**belabor (2)**
    156:6;251:11
**believes (5)**
    34:23;49:10;71:24;
    102:1;173:21
**Bellwether (17)**
    200:25;201:1,17;
    217:23;229:3,3,7;
    265:20,21;267:14,17;
    280:11;289:21,23;
    290:4;292:16;296:19
**bench (1)**
    192:19
**beneficial (1)**
    167:23
**beneficiaries (1)**

231:14
**benefit (11)**
    161:25;188:1;216:4,
    4;242:4,7;244:25;
    250:10;253:6,7;255:21
**benefits (5)**
    79:23;109:14;161:4;
    242:6;276:23
**benefitted (1)**
    271:9
**Benjamin (2)**
    151:6;241:23
**Bennett (2)**
    8:18;78:11,12,15,19;
    87:7
**best (24)**
    6:8;68:7;70:3,4;
    74:15;87:14;104:16;
    167:18;175:13,21;
    209:22;211:10,11;
    215:21;240:9;244:1;
    252:12,15;253:17;
    258:9;259:20;260:25;
    282:14;295:23
**best- (1)**
    33:6
**best-of-worlds (1)**
    72:5
**best-suited (1)**
    275:6
**better (13)**
    27:15;34:24;35:24;
    143:12;144:15;167:15;
    186:24;187:1;231:4;
    257:17;270:18;275:18;
    298:9
**beyond (4)**
    130:2,5;201:10;
    217:25
**biased (1)**
    295:15
**bifurcate (7)**
    191:2;207:14,16;
    215:10;227:14;260:7,9
**bifurcated (3)**
    261:13,14;265:8
**bifurcating (3)**
    83:2;85:6;215:18
**bifurcation (1)**
    217:19
**big (14)**
    27:16;34:3,5;58:14;
    94:22;125:21;143:23;
    144:21;184:23;191:20;
    221:6;228:13;232:22;
    269:18
**bigger (7)**
    9:22;36:7;76:7;
    77:21;137:7;142:14;
    264:3
**big-time (1)**
    69:12
**bill (1)**

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 306
of 341

176:25
**billion (10)**
23:14;24:4,17;46:12;
60:4,8;109:2;134:7;
136:12,25
**billion- (1)**
24:8
**billions (3)**
31:19;158:18;160:13
**binding (4)**
123:19;124:14;
128:1;136:1
**binds (1)**
129:3
**bit (13)**
43:9;56:9;68:6;
76:20;87:24;147:4;
157:7;160:15;208:16;
236:4;255:13;257:4;
264:22
**bits (1)**
103:13
**Bittner (12)**
18:22,25;33:15;
91:17,18,23;93:12,13,
16;94:2;131:22;132:1
**Bittner's (1)**
93:20
**black (3)**
32:21,22;248:13
**blocks (1)**
89:22
**Blumenstiel's (1)**
5:12
**board (1)**
60:16
**bodily (4)**
126:14,16;127:7;
130:1
**bond (1)**
78:25
**bondholder (3)**
25:16;31:17;147:19
**bondholders (2)**
8:18;133:10
**bondholders' (1)**
49:23
**both (23)**
26:4;36:8;38:3;
41:18;70:23;72:8;
99:24;111:8;114:4;
118:25;127:25;151:23;
163:11;174:5;198:25;
218:12;220:10,25;
221:3;228:20;243:13;
268:21;291:12
**bothers (1)**
174:22
**bottom (2)**
152:3;290:24
**bound (4)**
68:14;136:5;213:17;
238:17

**bounds (1)**
68:1
**box (1)**
64:8
**boxed (1)**
73:7
**boy (1)**
234:20
**BR (1)**
129:25
**Bray (74)**
149:23;271:18,20,
23,24;272:1,4,13,18;
273:2,4,6,8,20,25;
274:3,10,13,15,19,22,
24;275:13,21,24;276:3,
6,13,17,19,21,24;
277:1,16,23;278:2,4,6,
10,17,24;279:9,16,20,
23;280:2,6,10,13,15;
281:6,8,15;282:8,14,
18,21,23;283:10,20,22,
25;284:5,10,14,17,23;
285:1,7,8,19,23;287:1;
296:12
**break (9)**
87:3;122:16;151:5;
153:1;170:17;187:5;
226:9,10;256:11
**breast-implant (1)**
49:6
**bridge (2)**
184:9;270:22
**brief (41)**
27:17;36:23;50:24;
66:21;67:1;89:16;
120:10,24;121:6,6,15,
15,22;123:6,10,11,11;
124:8;125:3;128:9;
130:8;141:4;145:19;
146:12;151:19,19;
170:25;171:20;186:23,
23;191:20;192:13;
193:14;197:18;219:11;
240:15;250:23;252:24;
253:1;289:10;300:3
**briefing (8)**
45:8;65:7;121:3;
123:13,16;128:18;
185:24;199:21
**Briefly (2)**
222:21;289:6
**briefs (21)**
27:5,14;36:20;38:20;
52:15;63:18;71:23;
93:19;117:9;123:24;
127:20,21;153:10;
169:6;185:5;186:24;
191:9,10;212:15;
223:20;299:23
**Brier (1)**
106:8
**brightly (1)**

257:17
**BRILLIANT (13)**
252:23,24;253:1,3,
21,24;254:1,14,16,22,
25;256:9,10
**bring (3)**
16:11;112:19;245:7
**brings (1)**
244:16
**broad (5)**
15:3;34:25;64:8;
196:22;218:8
**broader (2)**
38:21;57:4
**broke (1)**
190:16
**broken-down (1)**
62:24
**brought (5)**
238:22;247:19;
269:19;287:18;294:23
**BrownGreer (1)**
300:14
**Buccola (1)**
203:4
**build (1)**
232:8
**building (3)**
5:19;228:22,22
**built (2)**
99:13;162:3
**bulk (1)**
156:18
**bulletproof (1)**
13:2
**bunch (4)**
133:23;145:18;
155:14;266:18
**bundle (1)**
230:4
**burden (6)**
101:4;111:20,21;
177:10;257:24;258:3
**burned (1)**
216:22
**burner (1)**
177:17
**business (3)**
119:12;168:6;256:20
**Butte (1)**
198:25
**buyer (1)**
216:7
**buzzing (1)**
125:11

**C**

**cadre (1)**
74:13
**Cahill (1)**
221:16
**CAL (12)**

12:10;17:22;29:15,
19;183:20;184:16,18;
250:19,23;253:15;
265:9;297:15
**CalApp3d (1)**
205:21
**calculated (2)**
182:20;184:1
**calculation (4)**
8:25;56:17;61:3,15
**calculations (1)**
98:7
**calendar (9)**
191:4;194:14;204:6;
205:16,22;212:17;
288:1;299:15,15
**calendaring (1)**
190:21
**CALIFORNIA (28)**
5:1;10:4,11;29:9;
30:3,10;31:2;47:7;
96:2,23;119:19,20;
123:2;166:12,14;
176:18;181:13;199:6;
214:15,18;218:18;
224:13;238:5;240:18;
247:18;249:1,8;251:20
**Californians (1)**
251:13
**California's (2)**
74:14,14
**Call (24)**
5:3;6:11;33:7;35:1,
22;86:3;92:5;97:8;
103:10;108:13;151:4;
164:20;175:9;181:3;
190:21;191:5;193:9,
11;195:4,5;220:4,17;
262:10;301:21
**called (10)**
21:2;64:1;106:1;
109:10;205:20;221:13;
227:15;228:3,5;292:23
**calls (2)**
214:24;220:18
**came (10)**
10:17;89:22;110:15;
125:18;140:15;215:5;
221:24;243:16;268:24;
286:21
**Camp (5)**
24:6,10;201:20;
226:11;280:9
**CAMPORA (59)**
202:23;203:1,1,2,4,4,
14,17,19;204:4,12,15,
22,24;205:2,8,10,13,
18,20;206:7,10,21;
207:1,5,9;208:1,3,5,10,
12,15,24;209:1,3,5,9,
12,14,20,24;210:2,4,9,
13,15,21,24;211:1,6,
13,16,18,20,25;217:3;

227:15;249:19;291:22
**Campora's (2)**
213:16;214:6
**can (174)**
5:16;6:8;9:2,3;
10:24;12:21,24,24;
16:7;18:2,5,11;20:13;
21:21;28:18,20;34:20;
43:23;45:4;46:6;58:1;
64:25;66:22;67:24;
68:9;72:24;73:7,16;
75:7;76:16;77:3,23;
82:10,11,14;85:25;
86:2;87:3,4,14,22,23,
25;88:15;91:5;92:2;
94:10,24;96:16;97:1;
99:4,15;100:10;102:1,
4;103:9,14,15;107:23;
114:21;115:6,15,16;
116:10,11;117:6,8;
118:6;119:16;121:1,
19,23;122:12,23;124:2,
10;128:5;129:2,5,12,
13;131:2,25;134:21;
137:7;139:25;141:19,
20,22;145:25;148:13;
150:16;153:8,22;
157:5,15,18,18,20;
159:20;163:9;169:4;
171:22;175:11,21;
179:1;184:6;186:1,14;
187:5,20;189:3;
191:17;192:15,22;
193:18;199:6,8;204:8;
205:5;207:10;208:13;
209:10;210:14;211:22;
214:2,7;218:12,13;
223:10,15,17;226:15,
17;228:14,19;230:14,
14,22;232:13;233:8;
234:14;245:4;246:7;
247:23;254:23;258:5,
8,24;259:4,9;260:22;
263:6;264:4;271:12;
277:4;280:17;281:19;
282:1,2;283:2;285:17;
286:10,12,21,22;287:7;
289:5;290:8,16;296:5;
298:24;300:18;301:19
**cancel (1)**
177:2
**cancer (2)**
88:24;236:12
**candid (2)**
43:6;291:14
**candidly (1)**
271:2
**cap (9)**
48:11,13,13;49:21;
60:20;116:15;131:4;
134:9,14
**capable (2)**
35:8;224:24

Min-U-Script®
Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 307
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(4) billion - capable
of 341

**Capital (2)**
127:1;278:20
**capped (18)**
36:9;44:25;45:6,21;
57:23;58:4,20;196:4,6,
10;197:5,6,22;198:2,9;
229:13,14,15
**caps (1)**
229:18
**card (2)**
115:14;215:12
**care (14)**
6:19;7:14;39:15;
89:17;111:1,22;114:3;
118:15;138:24;139:10;
141:24;164:9,9;253:11
**career (1)**
160:18
**careful (4)**
27:15;211:7;243:16;
267:21
**cares (4)**
93:3,3;133:21,24
**Carnac (1)**
115:11
**Carolina (1)**
160:7
**carry (2)**
114:8,16
**cars (1)**
106:11
**Carson (1)**
115:12
**Cascade (1)**
42:19
**case (205)**
11:19;13:16,18;14:2;
16:24;18:23,25;19:4;
37:19;41:16;45:7,12,
12,13,14;47:17;48:23,
24;57:20;67:10;68:11,
23;70:9,17,20;72:8,9;
73:21;75:16;80:9;
81:20;85:16,17;90:10;
91:17,18,25;92:19;
93:6,16;97:24;99:16;
103:20,21;104:7,11,17;
105:8;107:13;108:8,8;
111:2,4,7;112:6,19;
113:1;114:12;119:23;
120:2,7;121:1,21;
123:16;125:5,5;126:4;
127:18,25;129:24,24;
130:21;131:22;132:1;
134:11;135:6;138:18,
19;139:5,6,12,13;
142:9,14;143:22;
150:11;159:16,25;
160:1,5,6,6,16;161:3;
167:3,24;169:2;
173:24;177:17;179:3;
190:1;191:17,18;

192:2;194:10;196:17,
19;197:12;198:2,5,6,
22,22;199:20;200:6,14,
25;201:1;205:20,20;
209:23;211:10,11;
213:9;214:1,25;
215:22;217:4,8;218:1;
220:22;221:21,23;
223:16;224:1,10,15;
226:16;231:9;232:12;
234:18;235:1;237:17;
238:13,15;245:2,4,9;
251:4;252:19,22;
255:14,15;257:2;
258:1;259:6,14,14,14,15,
18,18;260:3;261:21;
264:9,11;265:4,5;
266:15;267:12,15;
268:24;270:21;272:25;
273:9;275:5,9,13,16;
278:4,19;285:21;
286:23;289:7;291:4,6,
7,8,10,12,21,23;
292:23;293:3,6,23;
294:6,12;295:8,23;
297:11,11;302:6
**cases (68)**
18:16,21;20:6;23:3;
33:2,2;35:21;38:2,4;
39:20;45:9,11;48:18;
51:19;57:22;67:24;
68:11;72:10;83:21,21;
85:20;87:1;88:21;89:7,
7;90:11;91:3;93:1,20;
95:15,18;102:13;
106:11;109:5,11;
110:24;121:18;125:20,
22;127:14,16;152:4;
154:21,23;176:8;
196:8,23;197:17,20,22;
207:1;209:21;217:6;
220:20;226:13;231:23;
237:12;254:10;258:17;
265:3;267:14,16;
271:11;289:21,23;
290:4;295:13;297:23
**cash (1)**
62:16
**casual (1)**
6:5
**categories (2)**
31:11;100:11
**category (3)**
31:14;101:12;110:12
**causation (27)**
31:24;89:10,11;
103:9;107:7,8;108:23;
113:1;116:4,5,6;118:2;
132:22;152:16;163:5;
172:7;196:14;197:4;
226:20;230:21;253:18;
258:9;260:10,25;
265:8;295:17;297:20

**cause (13)**
29:19;86:22;103:4;
112:21;141:7,9,10;
163:5;164:4;239:6;
240:6;285:22;286:25
**caused (6)**
29:16;96:23;100:24;
137:17;163:10;251:1
**causing (3)**
96:7;103:5;163:11
**caution (1)**
166:22
**cavalier (1)**
85:12
**cede (1)**
169:4
**center (1)**
5:13
**central (1)**
276:3
**cents (2)**
282:11;284:22
**cert (1)**
120:8
**certain (8)**
68:12;70:20;80:17;
155:7;165:2;172:19;
230:5;255:22
**certainly (31)**
16:23,24;19:5,23;
36:23;39:14;58:4;
65:25;71:23;74:14;
98:8;109:19;122:17;
159:23;181:4;185:22;
202:9;215:9;218:17;
222:4;242:13;249:18;
259:5;262:8;273:23;
279:10,13;280:4;
282:12,15;283:16
**cetera (4)**
17:1;65:8,8;145:5
**CFO (1)**
176:5
**chair (2)**
7:19;86:13
**challenge (3)**
68:14;98:6;232:3
**chamber-mate (1)**
82:2
**chance (5)**
14:8;244:21;256:7;
279:2;282:11
**change (12)**
98:18;142:14;
149:25;267:6,9,10;
278:6,18;279:7,10,13;
283:11
**changed (6)**
22:23;93:22;134:15;
154:2;278:21;279:12
**changing (1)**
252:12
**channeled (2)**

133:7,11
**Chapter (4)**
13:18;19:5,5;38:7
**characteristics (1)**
266:3
**charge (2)**
145:20;175:20
**cherry- (1)**
167:22
**chew (3)**
226:15;228:14;
246:10
**chief (2)**
99:16;103:20
**childhood (1)**
118:20
**choice (13)**
11:8;50:13,14;63:3;
67:17;71:3;72:18;
83:14;86:1;147:15,16;
171:12,16
**choices (3)**
14:10;147:10;276:15
**choir (1)**
161:7
**choose (2)**
50:12;231:21
**chooses (1)**
167:2
**choosing (1)**
243:16
**chop (3)**
34:17,17;113:19
**chopping (1)**
113:8
**chose (3)**
231:22;276:6,19
**Chronicle (2)**
36:12;257:18
**chronicles (1)**
257:19
**cigar (1)**
269:18
**circle (1)**
6:2
**Circuit (8)**
81:18;91:23;119:2;
121:21;127:11,13;
161:2;162:1
**circumstance (2)**
83:24;196:23
**circumstances (13)**
43:13;68:7;72:7,10;
171:6,6;206:12;
249:19;251:18;253:6;
256:1;267:24;284:18
**cite (4)**
45:11;93:11;160:6,6
**cited (11)**
38:3;45:7;51:7;
52:10;71:1;83:21,21;
126:21;127:25;197:18;
238:13

**cites (1)**
189:22
**City (3)**
122:19;185:8,11
**civil (7)**
34:11;105:25;
203:25;212:19;213:3,
12,13
**claim (59)**
13:1,18,22;14:9;
15:12;16:12,17,18;
20:12,17;41:23;47:9,
10,11;53:18;54:17,21,
24,25;55:6,8,8,10,10,
20;56:10,11,12,18,19;
57:16,17;63:5;69:14;
90:4,13;91:24;93:15,
16;96:1,19;124:19;
126:5;128:11;130:25;
132:15;133:12;137:18;
161:19;162:1;182:17,
19;183:16;184:6;
189:16;273:17,18;
274:17;275:1
**claimant (9)**
16:18;55:6;57:25;
74:8;75:15;131:10;
133:24;134:10;136:4
**claimants (25)**
11:22;16:2;36:10;
46:1,16;47:20;61:18;
62:12;67:20;69:25;
70:8;73:18;75:9;87:20;
88:6;124:14,16;
129:11;161:24;180:24;
195:21;198:17;231:22;
265:18;273:15
**claimants' (1)**
286:15
**claimant's (2)**
91:19;133:12
**claims (102)**
7:5;11:5,16;13:19;
14:18,21;15:5,16,21,
21;16:2,4;19:12;21:22;
23:14;24:2,4,23;29:13;
37:9;42:17;45:5,5,17,
19;46:2,4,6;49:6;
55:23;57:14;58:6,21;
61:22;64:8;69:1;72:24;
73:15,17,18,24;80:18,
21;83:1;85:17;88:19;
89:4;90:7,14,20;91:19;
92:24,25;124:15,17;
125:17,25,25;126:10,
16;127:15;128:15;
129:24;130:1,21;
131:14;133:1,6,6,7,11;
136:24;152:14;158:18;
159:13,14;160:10,13;
161:5;162:2;181:20;
182:7,13;183:21,23;
197:4,7;226:14;

Min-U-Script®

Case: 19-30088   Doc# 3563   Filed: 08/15/19   Entered: 08/15/19 18:13:37   Page 308
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(5) Capital - claims

231:12,21;243:10;
  247:19,20;261:11;
  270:13;271:7;273:17;
  275:6,25;276:7;277:2;
  281:22
**claim's (1)**
  126:2
**clarif (1)**
  155:17
**clarification (1)**
  202:18
**clarify (3)**
  138:10;237:6;246:16
**class (6)**
  50:1;60:17;106:4,6;
  148:1;277:15
**classes (1)**
  148:4
**clause (1)**
  198:12
**CLE (1)**
  54:10
**clear (35)**
  16:8;23:2;26:7;
  33:10;36:14;45:15;
  50:20;58:10;65:10;
  67:7;97:13;107:23;
  118:22;129:9;140:2;
  160:8,9;161:10;166:4;
  167:14;186:12,17;
  188:8;192:12;194:4;
  207:8;215:21;231:1;
  232:2;241:14;262:22;
  274:19;285:3;286:11;
  298:8
**clearly (7)**
  49:8;82:5;95:24;
  102:10;114:9,9;252:13
**CLERK (8)**
  5:4,8,15;8:4;87:10;
  179:5;190:12;204:11
**client (15)**
  97:25;98:1,1;107:12;
  130:24;137:5;139:15;
  188:5;236:11,12;
  240:23;265:24;266:13,
  19;291:11
**clients (13)**
  113:25;117:13;
  149:17;176:10;193:24;
  217:22,22;238:9;
  239:23;247:22;277:21,
  21;296:3
**clients' (2)**
  182:7;287:15
**client's (7)**
  90:1;97:25;98:7,9;
  100:23;107:18;138:10
**cloaked (1)**
  274:13
**clock (5)**
  21:12;87:6;236:10;
  263:15;289:4

**close (6)**
  24:21,22;258:2;
  267:17;273:8;300:20
**closely (1)**
  163:22
**closer (1)**
  87:12
**closing (5)**
  151:5;170:13;187:6;
  285:18
**cocounsel (1)**
  210:7
**co-counsel (2)**
  94:6;181:12
**Code (6)**
  9:17;12:20;33:1;
  36:8;126:15;203:25
**co-lead (1)**
  90:10
**collateral (2)**
  243:12;244:9
**colleagues (13)**
  35:6;76:4;106:12;
  121:11;136:10;202:20;
  212:1;218:14;237:2;
  252:1;274:1;277:10;
  280:25
**colleagues' (1)**
  220:2
**collect (3)**
  48:5;105:6,20
**collected (1)**
  104:22
**collection (1)**
  222:1
**collective (5)**
  72:16,17;225:10;
  231:19;239:1
**collectively (1)**
  285:5
**colloquy (4)**
  91:2;147:2;168:23;
  190:2
**co-management (1)**
  222:5
**comfort (1)**
  280:18
**comfortable (5)**
  47:6;149:17;169:15;
  220:11;302:1
**coming (8)**
  64:15;158:11;
  190:14;194:22,23;
  198:17;215:23;253:2
**comment (7)**
  5:9;118:23;121:9;
  171:3;274:15;286:18,
  19
**comments (6)**
  109:24;151:18;
  186:11;194:3;196:2;
  234:14
**commit (2)**

280:24,25
**commitment (2)**
  288:19;299:5
**committed (1)**
  175:18
**committee (32)**
  66:20;67:19;73:25;
  74:1;79:6;88:6;135:22,
  24,25;136:1,5;147:5,
  18,23;148:24;149:2,6,
  9,10,19;151:18;
  183:23;186:2;192:12;
  195:20;197:21,24;
  236:21;246:25;271:19;
  274:5;279:1
**committees (5)**
  73:25;76:2;147:17;
  192:3,15
**committee's (3)**
  72:21;197:15;275:4
**committing (1)**
  132:17
**common (4)**
  119:6;131:22;196:8;
  300:18
**communicate (1)**
  294:10
**communicated (1)**
  300:3
**communication (1)**
  254:10
**communities (1)**
  202:3
**companies (3)**
  148:2,2;191:20
**company (13)**
  50:11;93:10;137:12;
  154:1;208:15;252:25;
  275:25;276:5,6,14,19;
  277:24;296:22
**company's (2)**
  132:18;137:14
**compared (3)**
  89:8,24;142:20
**comparison (1)**
  11:2
**compelling (1)**
  250:25
**compensated (2)**
  232:6,7
**compensation (5)**
  23:1,2;127:9;223:13;
  232:12
**competing (5)**
  34:24;91:6;167:21;
  180:9;289:12
**complain (2)**
  286:10,12
**complained (1)**
  184:21
**complaining (3)**
  286:9;287:14,14
**complaints (1)**

136:10
**complete (1)**
  259:9
**completely (5)**
  34:12;85:21;172:19;
  183:22;237:17
**complex (10)**
  13:16;14:14;177:22;
  209:21;223:25;226:12;
  230:21;235:1,10;
  259:14
**complexion (2)**
  278:4,19
**complexity (5)**
  156:25;217:10;
  233:1;234:15,16
**complicated (8)**
  30:24;34:14;61:20;
  106:6;140:24;217:6;
  249:24;259:17
**complications (1)**
  148:16
**comply (3)**
  173:19,23;232:3
**component (5)**
  60:22;124:21;
  177:22;200:6;230:4
**components (4)**
  17:11;67:8;200:22;
  201:25
**compress (1)**
  111:3
**compressed (3)**
  104:16;112:20;
  113:23
**compromise (2)**
  60:1,2
**computer (1)**
  61:11
**concede (1)**
  36:25
**conceded (5)**
  24:18;26:17;100:23;
  189:14;270:15
**concedes (2)**
  27:4;68:6
**concept (5)**
  219:17;227:10;
  274:2;275:15,15
**concern (7)**
  75:15;231:25;232:2;
  236:21;280:20;286:1,4
**concerned (3)**
  223:5;286:14,14
**concerning (2)**
  175:4,4
**concerns (5)**
  68:3,4;257:11;285:3;
  287:5
**concluded (2)**
  265:10;302:16
**concludes (2)**
  40:23;70:3

**conclusion (5)**
  17:2;71:2;76:23;
  175:22;177:20
**conclusions (3)**
  84:7;147:11;148:17
**concrete (1)**
  65:2
**condemnation (34)**
  10:2;11:12;12:3;
  13:9;28:23;29:10,14;
  30:1,18;31:16;74:25;
  75:24;76:21;81:15;
  96:1,3,7;99:4,7,25;
  100:22;102:24;105:23;
  123:18;124:9;128:4;
  129:1;162:11;165:19;
  166:1;184:12;185:6,
  10;200:1
**condition (2)**
  266:3;298:17
**conduct (8)**
  79:21;83:3,8;111:12,
  12;116:8;216:15;243:1
**conducted (2)**
  84:5;139:20
**conductors (1)**
  103:3
**conducts (1)**
  83:4
**confer (4)**
  43:10;76:16;187:17;
  299:18
**conference (9)**
  76:15,16;190:18,22;
  193:20;299:16;301:1,
  18;302:3
**conferences (1)**
  302:5
**confidence (5)**
  271:5;295:6,21,25;
  296:5
**confident (3)**
  120:22;121:8,10
**configure (1)**
  232:13
**confirm (3)**
  272:10,14,15
**confirmable (1)**
  198:11
**confirmation (9)**
  49:9;50:4;60:25;
  94:5;131:2;135:22;
  197:16;198:9;277:3
**confirmed (2)**
  59:8;278:12
**confused (1)**
  287:7
**confusing (2)**
  41:17;147:20
**confusion (1)**
  9:9
**congestion (1)**
  5:24

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(6) claim's - congestion

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 309
of 341

**Congress (14)**
89:4;102:9;104:5;
125:7,16;126:9,13,14;
128:20;231:17;240:5;
257:20;274:13;281:17
**congressional (1)**
257:25
**connection (2)**
181:19;289:18
**consensual (8)**
32:8;167:8;168:8;
196:18;197:15,23;
198:10;245:5
**consensually (2)**
23:6;298:9
**consensus (1)**
15:3
**consent (18)**
39:24;131:10;
132:10;134:5;135:23,
25;148:6,10,11,19;
149:3;150:24;168:7,
20;197:15;250:6;
299:25;300:1
**consented (1)**
197:21
**consents (2)**
135:25;136:2
**consequence (4)**
137:6;189:17;
294:19,19
**consequences (4)**
31:5;80:23;121:13;
177:24
**consider (5)**
72:13;76:21;151:23;
241:12;297:16
**consideration (3)**
74:22;249:9;250:13
**considerations (1)**
166:8
**considered (2)**
80:18;86:8
**consistency (1)**
273:11
**consistent (7)**
65:12;110:25;
152:12;194:5;195:9;
278:12;290:7
**constituents (1)**
183:23
**constitutional (2)**
96:8;232:3
**constraints (2)**
10:21;224:2
**constructing (1)**
21:18
**construction (2)**
107:14;238:16
**construed (1)**
120:2
**contact (2)**
203:22;204:10

**contemplate (1)**
39:14
**contended (1)**
183:8
**contest (3)**
177:13;211:1;226:20
**contested (3)**
152:19,20,20
**contesting (2)**
154:20;166:11
**contests (1)**
107:8
**context (20)**
9:21;11:7,14;14:13;
18:17;24:5,6;38:6,7,
16;57:23;61:1;109:3;
147:24,25;152:1,4;
166:20;176:2;289:12
**contingent (2)**
25:17;182:25,25
**continuance (1)**
287:19
**continue (4)**
23:24,25;286:8;
300:18
**continued (1)**
190:22
**continuing (1)**
241:17
**contours (1)**
299:19
**contract (1)**
92:24
**contractual (1)**
13:20
**contradict (1)**
144:23
**contraire (1)**
120:5
**contrary (1)**
189:4
**contrast (2)**
137:11;160:12
**contrib (1)**
34:8
**contributor (1)**
219:12
**control (10)**
91:25;111:23;204:6;
209:15;222:24;223:1,
3,4;272:9;280:21
**controlled (1)**
209:16
**controlling (3)**
93:12;127:16,18
**conundrum (1)**
142:7
**convene (1)**
180:15
**convenience (1)**
87:5
**conversation (2)**
231:2;246:1

**conversations (1)**
187:13
**convey (1)**
88:10
**convincing (2)**
33:10;112:11
**cooperate (1)**
203:10
**cooperates (1)**
211:20
**cooperation (1)**
210:22
**coordinate (3)**
185:21;186:2,22
**coordinating (2)**
219:17,20
**coordination (4)**
46:15;184:18;212:2;
214:22
**copy (1)**
292:1
**copyright (1)**
130:8
**core (9)**
15:17;85:16;124:18;
128:11,20,25;142:10,
12;275:23
**Corning (9)**
49:1,5;89:8,24;
104:18,18;197:12;
198:2,14
**corporate (1)**
219:7
**Corporation (1)**
5:8
**correctly (3)**
35:10;51:4;171:20
**correctness (1)**
150:14
**cost (5)**
109:5;161:4;183:21;
242:4;270:19
**costs (2)**
245:20;270:19
**Cotchett (1)**
95:4
**counsel (33)**
7:1;35:11,11;90:10;
147:5,11,22,23;148:24;
149:1,6,9,10,11,19;
151:3;157:13;170:8,
15,19;180:12;183:19;
187:17;192:11,13;
194:15;199:16;206:18;
252:14;253:8;255:10;
272:1;299:18
**counsels' (1)**
238:3
**counsel's (1)**
193:21
**count (3)**
69:8;89:20;155:19
**counterpart (3)**

106:1,13,15
**County (2)**
185:8;296:14
**couple (24)**
5:13,25;9:1;34:16,
16;39:8;52:14;88:8;
99:1;127:22;164:17;
165:24;166:7,9;
190:15;197:19;212:14,
15;221:7;224:24;
242:11;253:13;254:11;
259:13
**coupling (1)**
36:25
**course (24)**
9:8;15:14;30:16;
59:24;77:3;115:13;
117:17;123:24;128:19;
161:14,17;168:25;
193:21;214:7;217:12;
244:16,20;245:16;
247:17;251:10,14;
268:13,15;281:1
**Court (1557)**
5:3,4,6,9,15;6:15,18,
22,24;7:3,12,16,21,25;
8:3,5,7,10,16,21,23;
9:1,8;10:11,20,25;11:2,
11,17,22;12:4,7,15,18,
20,23,23,24;13:6,10,
12,24;14:2,5,12,16,19,
22,24;15:1,6,8,14,19,
23,24;16:6,15;17:5,8,
15;18:2,10,14,19,21,
25;19:11,13,15,23;
20:2,7,9,11,15,16,18,
20,23,25;21:2,4,8,13,
14,14,20,24;22:3,15,
25;23:5,15,17,19,21;
24:24;25:4,7,9,11,14,
20,22,24;27:1,10,13,
21,23;28:1,3,5,6,7,9,10,
15,17,19,22,25;29:3,8,
9,15,21,23,25;30:3,4,4,
8,10,12,16,22;31:1,2,4,
8,12,18,20;32:5,7,9,12,
14,16,20;33:9,14,19,
23;34:1,5,9,11,19,21;
35:3,5,19,24;36:1,3,5,
13,17;37:7,7,7,17,20;
38:8,10,12,14,17,20;
39:1,4,6,13,21;40:1,8,
10,12,18,25;41:6,7,10,
12,14,20;42:2,8,10,22,
24;43:3,5,14,17,22;
44:5,7,10,12,18,21,24,
24;45:4,4,16,18,20,23,
25;46:3,7,18,20,22,24;
47:1,8,12,19,24;48:2,7,
9,11,14,17,20,22;49:1,
3,5,8,10,15,17,19;50:3,
6,11,17,19,22;51:2,6,

10,14,18,20,25;52:2,4,
7,11,13,21;53:1,4,10,
12,14,16,20,22,25;
54:2,6,8,16,19,23;55:5,
7,18,21,24;56:1,3,5,7,
13,16,18,23;57:1,8,11,
15;58:5,7,13,17,24;
59:1,3,7,9,11,14,19,21,
24;60:1,15,20;61:1,6,8,
11,14,17,25;62:2,6,8,
13,18,21,24;63:5,6,8,
10,13,17;64:4,7,10,12,
14;65:10,12,17,19,21;
66:3,6,8,10,12,14,17,
22;67:15,20;68:16,19,
21;69:3,5,10,16,18,21,
24;70:1,6,11,13;71:4,6,
9,13,15,17,19,21,23;
72:3,20,24;73:10,13,
22;74:11,18,24;75:2,
12,18,21;76:7,11;77:7,
9,13,17,21,23;78:1,4,6,
9,11,14,17,20;79:1,5,
21,22,23,24;80:4,10,
14,20,22;81:4,9,11,23,
23;82:1,5,16,18;83:4,9,
11,23,25;84:2,5,8,9,12,
21;85:2,4,7,9,12,18,23,
25;86:9,11,21,25;87:4,
8,10,11;88:3,11,18;
89:9,11,14;90:12,17,
21,21,24;91:1,12,14,
21,23;92:7,9,11,16,21,
23;93:2,5,9,17;94:2,17,
19,23;95:1,3,6,9,13,17,
19;96:1,2,9,13;97:5,7,
9,11,13,15;98:12,14,
18,23,25;99:2,5,8,10,
15,18;100:3,5,9,12,14,
18,20;101:3,5,8,10,12,
18,20,25;102:4,8,12,
18,21;103:1,17,23,25;
104:2,4,19,24;105:1,3,
7,9,11,24,25;106:4,10,
16,18,20,22;107:5,10,
17,21;108:3;109:19,20,
22;110:1,4,7,8,10,12,
16,22;111:9,13,18,24;
112:9,14,16,17;113:5,
11,14,16;114:2,6,14,
15,18,21;115:1,3,6,9,
11,15,17,21,24;116:1,
17,19,22;117:7,10,21,
23,25;118:4,8,15,17,
21,24;119:3,7,11,19,
20,21,23,23,24,25;
120:1,2,4,4,6,8,13,15,
18,20,20,20,21;121:7,
24,25;122:1,3,6,8,12,
15,24;123:2,8,9,14,16,
17,21;124:2,7,13,14,
18,20,25;125:10;
126:20,25;127:2,5,7,9,

Case: 19-30088   Doc# 3563   Filed: 08/15/19   Entered: 08/15/19 18:13:37   Page 310
of 341

10,14,16,18,20;128:13,
17;129:16,18,20,22;
130:11,16,18,23;131:7,
11,12,18,25;132:4,6,
11,12;133:4,8,15,17,
19,22,24;134:2,18,20,
25;135:3,5,10,12,14,
18,24;136:4,7,9,19,21;
137:2,11,22;138:6,8,
18,20,23;139:2,6,10,
16,19,24;140:2,10,20,
22;141:1,14,24;142:3,
7,19,25;143:8,13,15,
20;144:4,6,9,12,16,24;
145:1,3,12,14,25;
146:7,13,18,23,25;
147:1,14;148:7;151:8,
15,22;152:5,18,23;
153:8,11,16,21;154:1,
4,5,6,7,8,11,15,18;
155:2,5,6,10,14,18,24;
156:2,6,9,11,12,13,20,
21;157:10,14,16,22,24;
158:6,9,15,20;159:1,3,
5,8,11,15,22,25;160:3,
8,9,14,15,19,23;161:2,
7,10,15,18,23;162:8,
13,21,24;163:1,3,7,13,
15,19,23;164:7,16;
165:7,11,14,18,22;
166:6,15,21;167:2,5,7,
10,12,16,18,25;168:3,
19;169:1,5,11,19;
170:2,5,7,21,23;171:4,
7,10,12,15,17,21,24;
172:9,12,16,25;173:8,
11,15,17,22;174:1,5,9,
11,17,21,24;175:1,9;
176:3,9,14,18,22;
177:3,15,21;178:2,4,9,
12,13,16,21,23;179:1,
4,6,12,15,18;180:5,18,
21,23;181:1,7,16,22;
182:4,9,16,19,23;
183:3,6,9,12,24;184:2,
5,8,11,15,20;185:2,4,
13,17,20;186:4,7,23;
187:3,5,8,11,14;
188:11,16,19;190:7,10,
13;192:8,11;194:18,20,
22,25;195:3,7,19;
196:12;197:6,7,9,12;
198:7,24;199:2,4,8,13,
18,22;200:9,23;201:1,
6,6,15,19;202:2,4,7,15,
17,22,25;203:2,12,15,
18,20,21,22;204:3,5,7,
9,14,16,20,22,23,23,24;
205:1,7,8,9,11,14,19,
21,22,24;206:2,9,11,
18,22,24;207:4,7,12,
23;208:2,4,6,11,14,22,
25;209:2,4,7,10,11,13,

14,18,22;210:1,3,6,11,
14,20,23,25;211:5,7,
14,17,19,22;212:4,8,
11,18,20,23;213:1,10,
11,14,16,21,24;214:9,
11,23;215:6,10,21,25;
217:7,10,13,15,17;
218:6,22,22,24;219:1,
2,10,13,16,20,22;
220:1,10,13,16,21,23;
221:2,6,14,20;222:6,
18,20,23;223:1,4,8,15,
18,20;224:3,4,5,7,9,12,
13,18,21,23;225:2,7,9,
11,14,23;226:1,3,8,21,
21,24;227:1,5,7,9,9,12,
14,18,19,19,21,22,24,
24;228:2,5,11,13,15,
25;229:5,10,15,18,21;
230:7,10,17,24;231:1;
232:18,19,20,21,23,25;
233:5,7,10,13,16,21,23,
24;234:3,5,8,11,14,17;
235:1,5,12,14,20,23,
25;236:2,5,7,16,18,20,
23,25;237:2,5,10,11,
16,18,20;238:2,13,17,
22,24;239:9,12,14,15,
16,19,21,24;240:1,22;
241:2,3,7,11,19,21;
242:3,9,16,19,22;
243:3,5,7,18,18,23;
244:1,3,8,13,18,23;
245:11,13,18;246:2,4,
12,13,17,19,21;247:2,
5,7,10,14,17;248:2,14,
16,19,24;249:1,4,9,10,
11,12,15,18;250:5,8,
12,14,20;251:3,14,16,
23;252:5,10,21;253:1,
6,20,22,25;254:6,7,12,
15,20,23;255:7;256:1,
9,11,19;257:1,4,7,9,11,
13;258:11,22,24;259:2,
10,15,21;260:4,6,8;
261:1,2,13,16,18,19,23,
25;262:6,15,17,21,25;
263:2,5,10,12,14,19;
264:2,10,12,20,21;
265:2,12,16,20,23;
266:6,9,12,15,22,24;
267:1,3,5,7,10,16,21;
268:7,11,14,16,23;
269:5,8,10,15,18,23,
25;270:3,10,14,24;
271:5,5,8,13,15,19,25;
272:2,8,12,16,19;
273:3,7,10,13,19,21;
274:1,2,4,8,12,14,18,
20,23;275:4,7,14,22;
276:2,4,7,11,14,18,20,
22,25;277:1,3,7,9,17;
278:1,3,5,7,11,23,25;

279:13,19,22;280:1,3,
7,11,14,22;281:7,9,12;
282:6,10,17,19,22,24;
283:19,21,24;284:1,7,
11,15,17,19,25;285:7,
9,17;286:5,10,12,17;
287:2,7,12,20;288:3,5,
10,12,15,18,22,24;
289:3,15,23;290:10,14,
20,23;291:1,4,7,9,16,
19;292:2,3,5,9,11,13,
14,16,18,20,21,25;
293:4,7,12,14,17,25;
294:1,3,4,6,9,15,21,23,
24;295:6,16,18;296:9;
297:4,6,10,24;298:1,4,
8,14;299:1,3;300:10,
14,15,22,23;301:3,7,
12,14,17,24;302:1,4,
10,14

**courtesy (1)**
180:14

**courtroom (17)**
5:11,12,16;26:6;
34:16;71:24;74:16;
87:13;93:19;102:3;
149:12;173:19,21;
190:13;222:24;223:6;
302:4

**courtrooms (1)**
5:20

**courts (9)**
10:4;18:17;122:22;
139:12;205:14;214:15;
234:15;251:20;275:8

**Court's (21)**
11:12;15:17;49:13;
108:4;123:7;180:21;
187:9;196:22;222:22;
223:10;226:6;230:15,
20;237:11;239:10;
257:3,12;270:20;
272:14;292:17;297:5

**cover (4)**
20:20;24:4;67:1;
138:13

**covered (1)**
138:15

**CPC (1)**
225:20

**CPUC (2)**
26:7;223:6

**cramdown (2)**
197:16;198:3

**crammed (1)**
135:23

**Cravath (2)**
8:8;256:23

**CRAWFORD (35)**
79:2,3,5,6;80:1,6,12,
15,21;81:3,7,22,25;
82:4,20,22;83:10,18,
24;84:1,3,11,20;85:1,3,

5,8,11,15,19,24;86:4,
10,11;147:12

**crazy (1)**
150:22

**create (2)**
70:18;149:14

**created (2)**
62:15;255:24

**creating (6)**
44:25;45:6,21;58:20;
149:5;160:16

**creative (1)**
224:11

**credible (1)**
189:3

**creditor (1)**
284:21

**creditors (9)**
50:1;70:23;96:25;
198:10;231:12,23;
273:15;277:25;278:14

**creditors' (6)**
147:5;148:23;149:2,
6,18;279:1

**creditor's (2)**
176:6;192:11

**criminal (6)**
19:19;205:15;
212:17,19;213:2;
234:21

**critical (11)**
15:24;17:12;29:4;
46:8;47:5;51:23;79:11;
112:23;270:20;297:20;
298:23

**criticize (3)**
35:6;43:8;187:23

**crop (1)**
232:17

**cross (3)**
121:3;184:9;278:21

**cross- (1)**
266:24

**cross-examine (1)**
98:6

**cross-section (1)**
267:11

**crowd (2)**
5:10;6:9

**cumbersome (2)**
84:9,22

**current (1)**
267:24

**Currently (1)**
115:8

**Curtis (1)**
257:1

**cut (2)**
164:12;168:3

**cutting (1)**
277:17

## D

**Dalkon (2)**
89:12,13

**damage (18)**
13:15;96:19;103:5;
107:24,25;109:4;
112:22,22;142:8,21;
143:1;182:20;201:4,
24;215:19;217:20;
228:23;290:4

**damages (53)**
24:16;26:14;31:11,
14;69:23;90:8;96:12,
25;97:8,21,22,25;98:7;
100:2,5,6,8,13;107:19,
24;108:2,5,9;113:7,25;
116:11;142:11,16,16,
18;152:6,8;162:22;
193:16;200:12,13;
201:3,8;202:11;
207:20,22;210:5;
215:11;218:19;226:11;
227:4;228:10;261:20;
282:3,4,16;283:18;
290:1

**damned (1)**
173:5

**danger (1)**
239:18

**Daniel (1)**
7:8

**dark (1)**
257:16

**data (23)**
120:3;141:19;143:3,
12,12;144:14,16,21,21,
22;146:21;152:5,18;
153:22;154:8,12;
242:9;251:21;267:18;
270:17,18;279:15,16

**database (1)**
300:14

**datapoint (9)**
201:7,7,9,11,22;
202:12;224:17,18,20

**datapoints (2)**
201:17,25

**date (44)**
10:23;23:11,12;24:3;
73:15,17,18,24;75:14;
124:12,16;128:11,25;
139:22;158:19,22;
159:10;160:14;161:6,
11;162:3;167:2,19,20;
169:20;173:20;179:4;
185:23;186:13;192:2,
13;203:24;204:12;
205:10;206:7;210:2;
213:18;215:5;217:25;
218:4;250:13;278:22;
286:2,8

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 311
of 341

**dates (4)**
139:23;164:2;192:6;
215:8
**day (62)**
14:3;19:19;23:2;
33:3;41:21;55:10,15;
94:8;96:4,11,18;97:8;
99:2;100:21;110:24;
112:4;132:11;134:5;
140:9;161:12,18,19;
162:4;175:10;200:10;
204:16;207:24;214:1;
215:16;216:13;223:6,
20;224:13;233:22;
235:4;240:12;245:24;
246:5;256:4;257:15,
17,19;261:2,4;264:7,8;
270:15;271:7;274:7,
24;283:12;285:4;
286:20;288:14,16;
290:5,11,19;299:4,21;
300:25;301:4
**days (38)**
34:16;146:22;150:3;
169:9;179:9,10;
188:21;190:20;204:22,
23;205:23;206:2,3,6,7;
208:3,23;209:21,21,24;
211:21;215:13,15;
217:25;227:1;230:1,1;
234:2;249:5,21;
258:12;261:5;263:22,
22;286:6;290:6,6,22
**days' (1)**
204:24
**de (38)**
142:7;146:22;
194:21,24;195:1,5,7;
235:15,18,22,24;236:1,
3,6,8,17,19,24;237:1,4,
6,19;238:1,20;239:8,
10,13,16,20,22,25;
240:1,21,25;241:3,10,
17,20
**deadline (19)**
67:7,23;72:8,25;
109:11;161:1;171:25;
172:2;175:16;176:20;
177:24;193:3;276:10,
12;277:8,19,22;280:2;
281:22
**deadlines (2)**
82:11;177:8
**deal (27)**
13:14;27:17;30:5,12;
31:24,25;32:1;53:8;
58:9,11;100:1;109:3;
121:17;140:6;146:15;
150:24;174:12;183:10;
184:12;190:7;200:5;
235:4;253:18;253:4;
256:15;257:23;267:25
**dealing (15)**

54:21,21;58:25;
89:18;107:3,3;126:15;
141:15,18;179:21;
196:3,9;232:16;271:3,
4
**deals (3)**
107:7;111:11;126:19
**dealt (10)**
20:13;27:22;40:14,
14;55:11;57:22;
160:17;185:15;224:2;
255:16
**death (8)**
36:21;43:24;112:21;
129:6;148:21;202:9,
10,12
**deaths (3)**
112:18;216:10,10
**debate (1)**
128:21
**debated (1)**
194:8
**debating (1)**
282:19
**debtor (21)**
12:7,8;22:5;89:20;
96:20,22;98:5;99:19;
111:12;123:19;124:8,
9;127:21;181:2;184:5,
8;191:22;196:4;
218:10,10;274:19
**debtors (28)**
6:25;8:9;22:7;36:22;
60:12;75:6;76:14,20;
83:20;119:18;124:10;
149:10;154:19;156:17,
22;157:3;158:17;
160:6;162:7;166:13,
23;191:10;192:3,15;
198:3;249:22;250:5;
256:24
**debtors' (4)**
7:1;67:11;125:3;
251:19
**debtor's (9)**
147:22;151:19;
152:6;162:7;164:2,14;
183:7;197:18;285:12
**December (3)**
143:5;208:7;286:2
**December-to-January (1)**
75:10
**decide (30)**
12:5,7;21:8;22:7;
29:8;37:13;57:5;58:19;
91:16;99:20;114:11;
117:8;120:4;121:16;
124:21;128:2,21;
129:1,12;145:25;
165:3;167:6;177:12;
180:21;188:3;197:7;
275:1,6;277:2;284:24
**decided (15)**

22:1;60:3;96:4;
121:21;150:8,9,9;
156:15;165:4;185:21;
188:24;192:16;214:16;
251:13;294:24
**decider (1)**
124:10
**decides (3)**
137:12;218:3;274:8
**deciding (2)**
91:7;127:11
**decision (60)**
17:24;28:5;37:11,11,
13,19;38:18;42:25;
63:20;65:4;68:14;75:4;
76:18;81:5,6;82:2,6;
83:16;84:18,25;86:2,2,
6;122:23;123:7;124:3,
15;128:5,8;129:13;
130:20;150:4,15,15;
151:20;160:7;161:1,3;
165:1;166:18;177:22;
179:22;200:19,20;
218:16;248:13;249:2;
264:12,15;282:15;
283:15;285:1;287:9,
21,24;293:18;294:22;
295:14,14,16
**decision-maker (2)**
17:18;232:11
**decision-making (1)**
246:8
**decisions (11)**
28:12;75:4;82:25;
83:7;110:17;119:20;
128:10;156:3;160:22;
246:4,6
**decision's (1)**
150:5
**declaration (5)**
130:9,11;141:5,6,8
**declare (2)**
6:12;170:11
**decree (1)**
134:5
**default (1)**
6:12
**defective (1)**
106:10
**defend (2)**
12:8;30:5
**defendant (7)**
96:20;97:21;98:3,6;
112:8;113:7;216:17
**defendants (2)**
39:23;96:21
**defended (1)**
129:2
**defense (5)**
13:2;114:15,16;
118:6;259:24
**defenses (1)**
116:2

**defer (5)**
15:1;59:1;180:2,6;
225:17
**define (2)**
117:14;188:20
**defined (3)**
105:16;126:10;
127:12
**defines (1)**
64:7
**definitely (2)**
269:6,9
**definition (4)**
125:24;126:3,5;
263:17
**degree (2)**
284:15;295:25
**delay (23)**
16:22,24;71:2;72:10;
75:4;104:8,9,10,12;
174:8;176:1,2,9;180:6;
214:20;231:8;254:2;
260:17;278:10;286:16;
287:11,16,19
**delayed (2)**
75:7;255:12
**delays (1)**
286:14
**demanding (1)**
218:4
**denied (5)**
119:25;120:3;
121:25;161:19;272:20
**denies (1)**
239:14
**Dennis (1)**
5:5
**denominator (2)**
136:19;282:7
**denominator's (1)**
61:18
**deny (5)**
117:3,3,11;211:9;
281:16
**denying (2)**
75:25,25
**department (1)**
182:10
**depend (1)**
279:11
**dependent (2)**
25:1;207:10
**depending (6)**
15:12;62:11;86:5;
189:24;202:1;290:18
**depends (3)**
91:13;138:4;208:12
**deprived (1)**
274:16
**deputy (2)**
190:13;302:4
**describe (1)**
90:11

**described (1)**
56:10
**describing (2)**
218:9;298:16
**deserve (1)**
79:18
**deserves (1)**
95:23
**designate (1)**
192:12
**designated (1)**
236:14
**despite (1)**
136:10
**destroyed (3)**
22:23;297:15,21
**detail (2)**
153:1,4
**details (4)**
63:25;65:6;109:23;
204:10
**determination (15)**
38:5;49:10;60:5;
68:24;69:22;104:8;
128:16;134:6;162:14;
202:10;243:10;245:14;
257:20;293:13;296:6
**determine (12)**
13:24;60:22;115:25;
116:12;119:19;166:13;
181:3;182:13;183:16;
232:11;255:23;295:5
**determined (5)**
34:6;59:9;133:1;
238:7;297:19
**determines (2)**
61:2;99:3
**determining (1)**
144:19
**develop (1)**
109:18
**developed (1)**
46:14
**dialogue (1)**
285:25
**dice (2)**
43:23;262:8
**dicta (2)**
45:13;132:1
**dictate (2)**
273:16;296:18
**die (2)**
130:14;239:23
**Diego (1)**
120:7
**diff (1)**
74:24
**differ (5)**
15:11;97:1;124:21;
218:25;297:3
**difference (2)**
29:6;30:12;51:12,16;
92:4;121:5;182:24;

Min-U-Script®

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 312
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(9) dates - difference

186:13;195:14;239:6;
241:5;262:23;266:2,5;
287:18
**different (58)**
9:25;14:22,23;16:12;
17:9;22,24;19:31:9;
40:22;42:3;56:9;59:18;
62:4,9;63:1;73:3;
76:22;80:11;86:19;
89:16;90:8,8;100:2;
111:25;116:7;120:9,
11,14;124:5;132:21;
137:13;139:5,6;
146:10;149:14,20,21,
21;154:19;163:21;
178:16,17,17,18,19;
191:2;201:23;202:3;
221:19;245:23;253:22;
263:11;270:10;273:4;
284:6;293:6;298:12;
302:6
**differently (3)**
19:7;62:12;137:13
**difficult (10)**
27:16;36:18;118:20;
189:1;224:15;226:17;
232:14;252:11;277:24;
290:2
**direct (5)**
149:9;160:21;
193:21;241:25;265:4
**directly (4)**
74:22;97:4;170:13;
241:25
**disability (1)**
237:9
**disadvantage (1)**
279:2
**disagree (9)**
10:6;32:9;105:3,7;
132:7;133:2;194:7;
240:17;298:24
**disagreed (1)**
149:4
**disagrees (2)**
67:12;212:23
**disallowance (1)**
11:15
**disallowing (3)**
158:18;159:14;
160:10
**discharge (3)**
19:6;198:13;235:23
**dischargeability (2)**
38:7;275:11
**dischargeability's (1)**
38:10
**disclosing (1)**
192:17
**discourage (1)**
94:6
**discovery (35)**
11:14;16:22;65:8;

90:20;107:15;108:22;
109:12;117:4;141:17;
145:23;173:16,18;
174:22;178:7;184:16,
17,18;187:22;188:2,9,
15;193:25;211:21;
213:25;222:1;255:15;
258:16,18;261:9,15;
262:2,12,17,19,23
**Discovery's (1)**
262:18
**discreet (1)**
88:22
**discrete (1)**
272:22
**discretion (12)**
41:6;42:12;91:4,8;
102:14;196:22,24;
197:3,14;217:24;
261:5,7
**discretionary (1)**
35:1
**discuss (6)**
10:24;65:6;148:25;
228:19;237:14;299:19
**discussed (10)**
30:22;65:16;67:4;
79:9;91:17;125:5;
156:4;221:25;285:23;
299:10
**discussing (2)**
44:20;230:12
**discussion (30)**
12:1;23:17;63:25;
69:13;76:3;94:22;
102:9;105:18;109:23;
145:17;148:9;150:19,
21;151:5;161:11;
168:13;172:9;183:14;
185:14;186:20;189:7,
23;190:25;193:20;
194:7;228:18;282:24;
286:3;293:8;294:12
**discussions (6)**
23:8;36:19;64:23;
152:2;187:10;193:25
**disdain (1)**
277:5
**disease (1)**
126:5
**diseased (1)**
164:11
**disentangle (2)**
162:8,8
**dismiss (1)**
28:2
**dismissed (1)**
238:23
**disparate (1)**
61:22
**disposal (1)**
291:16
**dispose (2)**

28:24;299:6
**disposition (1)**
84:14
**dispositive (4)**
17:22;167:20;
240:17;243:9
**dispute (3)**
44:23;105:23;184:5
**disputed (4)**
96:11;102:6;182:25;
228:16
**disputes (1)**
69:4
**disputing (2)**
48:12;103:22
**disrespect (1)**
253:19
**dissent (1)**
150:1
**dissented (1)**
150:2
**dissertation (1)**
191:21
**disservice (1)**
90:1
**distinguishable (1)**
183:22
**distinguished (1)**
218:7
**distress (14)**
36:24;37:2,10;40:16;
80:18;83:1;128:6,19,
20;129:7,8,11;130:5;
148:22
**distrib (1)**
59:11
**distributing (1)**
57:24
**distribution (20)**
37:8,13;54:25;57:7,
17,17;58:21;59:4,16;
60:8,22;61:4;70:21;
131:1;134:15;196:7;
278:1,5,13,15
**distributions (1)**
70:19
**district (53)**
5:19;21:14;28:6;
37:12,13;38:14;39:3,
17;40:1,4,12,18;41:2;
44:3;45:16;52:22,23,
23,24;53:2,5,6;63:6;
79:22;81:4,5,12,20;
82:7,9;83:4;84:8,25;
85:10;90:21;95:16;
114:5,21;131:11;
146:23;147:14;150:10,
13;160:7;161:2;170:2,
2;221:24;230:3;
234:17,18;246:4;275:7
**district- (1)**
142:6
**district-court (1)**

80:7
**divide (5)**
37:4;47:21;86:20;
157:18;264:23
**divided (1)**
195:13
**doable (1)**
231:7
**docket (3)**
181:15;192:14;302:9
**dockets (1)**
191:24
**doctors (1)**
130:3
**doctrine (3)**
17:20;31:2;100:22
**dollar (5)**
24:9;200:21;230:5;
282:11;284:22
**dollars (30)**
13:22;14:6;17:2;
23:14;24:4,8,12,17;
31:19;41:23;46:12;
47:10,19;60:4,8;62:1;
109:3,7,8;134:7;
136:13;137:17,18;
158:18;160:13;163:16;
182:10;200:17;201:13;
269:20
**done (93)**
12:6;14:10;18:2;
35:13,20;41:21;52:3;
60:9,11,13,14;61:8,11,
12,12;72:24;80:6,8;
88:17,22;105:5;
108:12;109:14,17;
110:20;117:5;118:2,3,
7,9;120:24;121:4,22;
122:21;129:13;137:8;
139:3;140:17;144:2,4;
145:13;158:21;175:23;
177:6;184:12;191:22;
193:12;200:5,18;
201:2;203:11;206:15,
16;207:20;208:19;
210:17,18;211:3,21;
214:7;216:5;217:8;
220:5,19;221:17;
223:17;225:4;230:7,
12,15,15;233:3;
253:10;254:11,18;
255:7,16;258:5,5,8;
259:9;260:22,24;
264:4;268:2,4;270:22,
25;286:22;290:9;
291:20,20;301:19
**double (1)**
186:25
**doubling (2)**
112:21,22
**doubt (1)**
32:24;84:13;183:18;
233:17

**Dow (7)**
41:17;45:12,13;89:8,
24;198:2,14
**down (29)**
5:13,14;12:25;77:10;
82:3;93:1;101:22;
122:16;135:23;164:12;
169:8;175:19;188:9;
214:5;226:9,10;
241:11;250:5,17;
258:1;261:1,20;
265:13;270:16;272:7;
277:17;279:7;287:9;
297:17
**downside (1)**
245:21
**dozen (1)**
237:12
**Dr (2)**
130:8,11
**dramatically (1)**
278:21
**drawn (1)**
254:9
**dress (1)**
6:6
**Dreyer (1)**
203:4
**drill (2)**
169:8;302:5
**drive (1)**
32:6
**drop (1)**
39:7
**due (19)**
74:12;75:25;105:19;
109:15;117:13;123:24;
139:25;161:15;172:4,
6;176:24;177:2,4,12;
178:18;232:4;253:11;
273:11;274:6
**due- (1)**
73:19
**due-process (3)**
105:5;138:15;173:13
**Dumas (7)**
26:12;49:19;52:13;
121:9;140:9;239:3;
274:5
**dunk (2)**
121:3,21
**Dunne (1)**
149:22
**duplication (1)**
84:4
**during (2)**
76:16;300:12
**duty (2)**
37:15;114:6
**dynamics (1)**
279:8

Min-U-Script®
Case: 19-30088   Doc# 3563   Filed: 08/15/19   Entered: 08/15/19 18:13:37   Page 313
of 341
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(10) different - dynamics

# E

191:21

**earlier (18)**
72:22;121:9;152:3;
157:24;180:8;186:14;
194:8;203:6;208:10;
211:12;215:12;243:1;
258:22;259:7;262:22;
270:6;278:7;300:12

**earliest (3)**
26:17,18;70:10

**early (3)**
75:6;166:25;209:23

**earth (2)**
211:11;214:4

**easier (5)**
43:12;141:22,24;
142:5;246:10

**easily (2)**
37:3;236:25

**Eastern (2)**
53:1,5

**easy (7)**
10:2;13:3;28:24;
38:10;73:11;183:3;
187:7

**economic (4)**
107:24;108:6,9;
297:1

**educate (1)**
105:24

**education (1)**
241:18

**Edward (1)**
185:7

**effect (7)**
93:4;149:5;152:2;
158:2;161:3;246:23;
247:20

**effective (2)**
59:14;235:2

**effectively (2)**
11:15;159:13

**efficiency (1)**
216:25

**efficient (8)**
22:25;84:24;85:3,6,
9;108:17;122:9;276:9

**effort (1)**
67:11

**efforts (3)**
23:4;258:18;300:19

**eight (19)**
69:7;92:16;155:12,
16,19;191:25;200:15,
16,17;201:9;236:14,
16;246:15;252:2;
259:16,16;260:2;
291:10;296:10

**eight- (1)**
284:11

**eight-page (1)**

**eighty (1)**
233:13

**eighty-five- (1)**
265:25

**eighty-five-year-old (1)**
266:18

**eighty-nine (1)**
236:12

**Either (29)**
6:21;13:19;27:24;
32:22;55:14;62:16;
68:10;72:14;75:3;76:1,
21;121:7;129:5,7;
149:2;153:23;161:13;
177:18;183:1;194:15;
213:9;232:3;242:20;
245:8;246:6;248:10;
296:22;298:8;299:19

**either/or (2)**
151:20,24

**elaboration (1)**
193:1

**Electric (2)**
120:8;208:15

**electrical (1)**
103:2

**electronics (1)**
5:21

**element (4)**
209:8;244:5;273:9;
281:16

**elements (2)**
154:3;200:24

**eliminate (2)**
149:13;150:7

**else (27)**
13:12;21:15;22:5;
39:23;40:6;43:25;48:5;
77:14;94:4;125:12;
131:8;140:1;173:24;
180:14;186:18,22;
191:11;196:11;198:5,
19;252:21;271:15;
277:6;285:9,11;
296:24;298:18

**elsewhere (2)**
132:11;275:9

**emergence (1)**
53:11

**emotional (16)**
36:24;37:2,10;40:16;
80:18;83:1;126:7,11;
128:6,19,20;129:7,8,
10;130:4;148:21

**emotional-distress (1)**
37:14

**emphasize (1)**
55:23

**emphatically (2)**
147:8;174:15

**empire (1)**
191:21

**employees (1)**
297:15

**encompasses (2)**
140:25;142:11

**end (42)**
10:1;11:18,19,19;
14:3;15:11;19:1;41:21;
47:4,5;49:4;55:10,15;
58:9,21;61:18;70:21;
118:25;121:22;134:4;
135:1;177:11;192:20;
198:16;200:10;208:7;
215:16;224:19;226:23;
230:2;242:12;245:24,
25;246:5;256:3;264:7,
8;265:8;272:10;277:4;
278:12;283:12

**ended (1)**
139:7

**ends (1)**
153:19

**energization (1)**
89:18

**enforces (1)**
237:21

**engage (1)**
222:9

**enjoy (1)**
277:11

**enormous (5)**
102:13;112:6;
129:10;147:25;231:20

**enough (17)**
22:4;49:8,11,13;
65:10;105:11;114:11;
115:11,25;128:2;
198:18;201:22;213:4,
7;271:3;295:9,12

**Enron (1)**
191:19

**ensure (3)**
55:1;114:21;232:8

**enter (2)**
77:3;187:11

**entering (1)**
166:23

**enters (1)**
179:9

**entire (7)**
22:22;72:16;148:6;
197:4;207:15;278:4;
297:19

**entirely (5)**
25:16;42:7;162:2;
270:9;278:18

**entirety (1)**
281:22

**entities (1)**
87:21

**entitle (1)**
113:24

**entitled (12)**
23:1;112:19;113:25;

117:13;205:5;217:1;
233:8;234:1;237:23;
240:24;252:13;257:22

**entitlement (6)**
16:10;61:2;100:11;
189:11;232:12;241:15

**entitlements (2)**
238:18;286:16

**equal (2)**
257:23;296:14

**equally (3)**
116:10;160:9;281:20

**equipment (7)**
89:18;96:23;100:23;
116:7;141:6;250:25;
251:2

**equity (4)**
8:17;135:2;151:19;
198:11

**eradicated (1)**
109:15

**err (2)**
104:19;284:20

**erroneous (1)**
268:19

**error (1)**
93:11

**escape (1)**
25:23

**especially (2)**
118:11;197:17

**essence (1)**
198:4

**essentially (3)**
215:7;273:16;275:25

**establish (8)**
102:1;108:23;
114:16;124:17;196:23;
205:5;257:24;264:10

**established (1)**
207:19

**establishing (2)**
196:10;218:7

**estima (1)**
25:22

**estimat (1)**
42:8

**estimate (55)**
11:9;13:1,24;14:5,6,
9;15:25;18:17;25:25;
37:8;41:22,23,25;
42:16;45:5,19;55:7;
71:16;88:19;89:3;
108:17;112:12;114:8;
131:20,20;142:16;
146:21;159:13;171:8;
184:8;196:13;197:6;
200:2;201:2,3,9;207:8;
208:8;209:1,3;210:7;
228:5,8;231:18;
265:19;271:6;277:2;
280:13,15,16;281:19;
284:9;289:7;290:8;

291:13

**estimated (21)**
49:5,11;55:12;88:19;
90:16,21;91:19;108:6;
112:20;130:25;131:2;
133:21;142:18;143:25;
145:10;211:15;230:4,
5;259:15;289:19;294:6

**estimates (4)**
132:25;292:22;
293:16,20

**estimating (16)**
10:10;51:18;55:1;
76:9;90:4,7;102:16;
124:17;133:25;134:1;
143:7;160:8;182:7;
196:14;228:20;298:8

**estimation (268)**
9:11,11,16,22;10:1,
10,14;11:8,14,23;
12:11,21;13:1;14:2,4;
16:8;17:11;18:16;
20:14;24:20;25:2,4,13,
17,18,21;26:13;27:3;
30:17,19,22;31:1,4,8,
23;33:11;35:9;36:9;
37:12;38:6;41:2,4;
42:3,10,11,16,21;
44:24;49:9;51:21,24;
52:1;54:2,4,14,20;
55:14;57:2,6,7;58:10,
12,19;62:15;63:23;
64:17,20,22;65:4,6,14,
23;67:21;68:4,25;70:7,
9;71:1,25;72:13;75:9;
76:7,19;79:10,19,21;
83:3,4,10;84:6;86:7;
88:14,21;89:4,16;
90:19;91:3,8,17;93:12,
25;94:3,11,14;96:20,
21;98:9;102:4,7,12;
104:6,8,16;105:12,15;
106:1;107:3,3,14;
108:16;109:6;110:18;
111:5,20;112:10;
113:24;116:11;117:18;
118:9;122:16;124:22;
125:3;128:10;129:5;
131:23;132:24;135:5;
136:12;137:3;138:17,
20;139:8,20,23;140:7,
18,19,22;143:16;
144:19;145:7,16;
146:1,19;148:6;
149:12;150:5;151:12,
14,21;152:8;154:21,
22;158:1;162:4;168:7;
169:17,24;171:20;
172:1;173:20;174:18;
175:5,11,21;178:8;
180:10,18,22;181:4;
182:6,14;183:9;
186:10;187:12,15,18;

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 314
of 341

188:1,23;189:24;
190:18,22,24;193:12;
194:2,5;196:6,9,22;
197:18,20;198:15;
199:25;200:6,22;
213:25;218:13;219:5,
8;220:3;225:4;226:19,
24;227:10,16,20;
228:11;229:5,12,25;
230:12,16,25;231:5;
234:24;243:25;245:14;
248:6,20;249:3;
250:11;251:5;254:20;
255:2,2,21;257:23;
258:16;260:21,22;
262:14;263:1;268:1,6,
8,11;269:12,16;270:2,
14,23;273:14;275:24;
279:14,24;281:10,11;
284:3;287:25;288:9;
292:7;294:20;295:25;
298:20;299:9,11,17;
300:13

**estimation-procedures (1)**
64:2

**estimation's (2)**
15:7;273:23

**estimator (8)**
14:5;18:5;33:5;34:6,
23,23;42:13;296:22

**estimator's (1)**
33:21

**estoppel (2)**
243:12;244:10

**et (4)**
17:1;65:8,8;145:5

**ethnicity (1)**
118:23

**evaluate (1)**
26:15

**evaluation (1)**
108:12

**even (92)**
9:10;11:24;13:20;
20:5;21:22;26:14;27:6;
29:15,22;34:13;36:18;
38:16;46:24;50:11;
58:1;59:22;65:23;67:9;
68:23,23;70:3,16;72:4;
73:6;74:8,8,16;75:8,8,
13;77:18;80:17;85:9;
92:24;93:18;94:11;
97:17;99:7;101:16;
105:25;106:6;107:1,
10;108:11,22;113:8,
10;116:14;117:17;
130:20;147:13;150:1,
7;154:24;166:19;
169:8;174:23;175:5;
181:1;191:13;192:20;
194:8;197:5;198:5;
202:13;211:10;233:7;
242:23;248:7;249:11,

21;254:11,18;255:12;
260:9,24;261:14;
264:4;267:14;268:4,
24;273:8;274:1,7,15;
279:23;281:11;283:10,
12;286:7;296:11,25

**evening (1)**
302:15

**event (2)**
44:2;255:18

**eventual (1)**
55:2

**Everybody (15)**
27:4;49:22;70:19,25;
77:4,16;134:7;147:3;
150:15;174:8;177:13;
191:23;224:4,7;238:8

**everyone (17)**
5:6;7:14;68:6;71:11;
136:2;175:5;190:10;
196:11,18;198:5,19;
216:21,22;239:3;
256:17;299:3;302:14

**everything's (1)**
59:15

**evidence (45)**
33:10;99:22;101:7,
15,16;103:8,11,12;
104:22,25;105:6,11,20;
106:19;107:1,6;114:9,
11;115:25,25;128:2;
157:11;163:9,23;
164:4,5,7,21;165:5;
172:8;216:23;221:25;
222:1;227:3;228:18;
232:10;250:22;251:1;
268:19;282:15;283:17;
285:4;297:15,16,20

**evidentiary (2)**
232:16;250:21

**evil (1)**
191:21

**eviscerated (1)**
239:16

**ex (4)**
189:9;204:17,18;
249:20

**exactly (26)**
27:2;48:15,25;50:18;
56:4;57:24;63:13;64:2;
85:1;90:3,6;154:10;
165:13;167:11;174:25;
184:4,7,10;193:10;
238:25;240:12;252:7;
256:12;260:4;266:10;
286:13

**exaggerating (1)**
289:9

**examine (1)**
21:5

**example (10)**
15:10;24:6;33:15;
81:19;82:25;173:14;

176:4;242:15;275:9;
279:17

**examples (1)**
218:1

**excellent (1)**
252:1

**except (4)**
33:17;54:16;169:23;
296:25

**exception (3)**
220:10;230:16;
237:17

**exceptions (1)**
162:3

**exchange (1)**
123:23

**exclude (1)**
129:7

**excludes (1)**
40:16

**exclusivity (9)**
24:25;64:16;140:5;
147:25;192:21,24;
277:14;286:20;299:7

**excuse (7)**
19:18;22:8;116:18;
128:6;201:3;230:4;
246:19

**executed (1)**
117:14

**exemplary (1)**
34:7

**exempt (1)**
127:3

**exemptions (2)**
126:15,19

**exercise (5)**
24:19;111:22;
166:22;197:3,14

**exercised (1)**
196:24

**Exhibit (1)**
89:15

**exist (10)**
32:25;53:25;54:13,
14,16;150:8;172:22;
215:5;220:8;238:18

**existence (1)**
73:21

**exists (4)**
53:19;54:2,12;
106:13

**exit (2)**
277:24;278:20

**expect (4)**
114:18;157:25;
187:16;193:25

**expectation (1)**
255:4

**expecting (2)**
6:19;65:13

**expediency (2)**
105:4;109:14

**expediently (1)**
110:20

**expedite (1)**
98:16

**expedited (1)**
112:11

**experience (5)**
97:15;206:10;234:9;
275:5;293:18

**experienced (6)**
37:2;182:23;183:19;
232:18;275:18;298:16

**expert (6)**
33:3;103:8;139:5;
214:17;219:6;227:3

**experts (3)**
34:24;91:6;142:24

**explain (7)**
50:23;129:23;144:5;
249:18;250:9,9;268:17

**explained (4)**
125:4;133:9,10,10

**explaining (2)**
50:24;90:15

**explanation (2)**
22:5;126:2

**explicitly (1)**
45:13

**exposure (1)**
294:25

**express (1)**
277:5

**expressed (2)**
232:1;236:20

**expressing (1)**
27:13

**extend (1)**
235:8

**extension (3)**
234:1;237:7,8

**extensive (1)**
264:9

**extent (9)**
166:14;168:12;
193:4;216:20;247:24;
255:20;266:17;291:9;
299:8

**extrapolate (1)**
283:13

**extreme (1)**
258:19

**eye (2)**
67:22;279:9

**F**

**face (5)**
24:14;88:21;232:3;
244:6;276:16

**faced (3)**
113:7;151:20;166:15

**facie (1)**
112:6

**facing (3)**
267:25;268:1,2

**fact (31)**
25:23;33:11;60:11;
65:21;71:1;74:22;76:2;
82:7;84:7;91:7;102:13;
105:22;112:11;117:22;
125:5;157:7,8;182:14;
188:14;206:24;213:12;
231:7;232:5;253:17,
17;267:9,10;273:8;
292:5;295:7;298:23

**factor (4)**
16:25;103:4;107:8;
143:24

**factored (1)**
108:14

**factors (3)**
240:7;241:12;257:2

**facts (10)**
165:2;196:24;
207:11;214:1;216:14,
18;219:5,6;262:19,19

**factual (8)**
16:20;89:17;90:18;
96:6,11;107:6;145:9;
251:18

**factually (1)**
105:23

**fail (1)**
111:22

**Failing (4)**
77:3;101:19;164:11,
12

**fair (21)**
117:13;140:14;
146:5;198:12;215:3;
223:13;232:9;253:10;
256:5,6;257:14;
258:11;273:12;276:8;
278:8;280:25;281:1,2,
21;284:17;295:7

**fairest (1)**
152:12

**fairly (6)**
9:18;18:22;110:21;
158:1;221:3;232:8

**fairness (4)**
110:18;188:24;
273:14,15

**faith (1)**
184:25

**falls (1)**
128:7

**familiar (3)**
5:18;9:17;127:5

**family (1)**
202:11

**famous (1)**
291:17

**fan (1)**
291:20

**far (4)**

Min-U-Script®

Case: 19-30088   Doc# 3563   Filed: 08/15/19   Entered: 08/15/19 18:13:37   Page 315
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(12) estimation-procedures - far

24:14;160:5;242:2;
257:17
**Farm (2)**
252:24;253:12
**Farr (2)**
151:7;241:24
**fashion (3)**
214:8;276:9;279:21
**faster (3)**
249:11;260:22;
262:11
**fatal (1)**
286:16
**favor (7)**
74:7;79:10;166:16;
222:2;279:12;286:18;
296:20
**favorable (3)**
74:6;296:20;298:6
**favorite (2)**
125:5;129:23
**feasibility (2)**
92:19;160:9
**February (10)**
70:4;167:1;215:22;
225:2;258:10;260:25;
264:6;279:25;286:2;
287:6
**federal (15)**
105:4,25;106:2;
120:1,4;214:23;
220:19;221:24;237:24;
238:6,13,17;240:19;
262:18;275:7
**federal-state (1)**
214:21
**feel (7)**
121:8;149:16;
165:18;169:15;185:11;
253:15;283:2
**feeling (1)**
191:7
**feelings (1)**
21:9
**feels (1)**
253:12
**fees (3)**
31:15,15;34:8
**Feld (1)**
79:3
**Felderstein (1)**
181:11
**Feldman (4)**
15:13,15;23:7;
270:14
**Feldman's (1)**
25:17
**fellow (4)**
76:3;130:7;237:2;
296:13
**felt (1)**
130:7
**few (7)**

5:12;75:7;81:16;
122:23;150:3;188:21;
299:15
**fewer (1)**
35:20
**fiduciary (1)**
260:18
**fifteen (3)**
8:13;87:21;200:15
**fifteen-day (1)**
237:8
**fifty (3)**
108:6,6;293:23
**fifty-four (1)**
24:17
**fifty-percent (1)**
14:8
**fight (2)**
66:24;214:3
**fighting (1)**
29:7
**figure (14)**
24:16;41:24;43:1,11;
59:13;77:1,6,20;79:11;
118:11;145:16;152:8;
177:5;298:20
**figured (1)**
56:13
**figures (2)**
43:1;182:11
**file (11)**
13:23;73:19;112:10;
179:5;184:6;204:11;
205:25;206:1;276:15;
301:20;302:9
**filed (22)**
6:25;13:18;24:15;
66:1;82:18;124:14;
154:14;161:19;181:14;
182:13,18;189:22;
192:2,2;196:3;203:21;
240:15;247:3;272:17;
275:25;276:5;286:5
**filing (6)**
23:4,11,12;66:5;
124:19;189:16
**filling (1)**
189:15
**final (3)**
167:2;215:16;250:16
**finally (2)**
191:23;244:15
**financial (1)**
23:9
**find (8)**
22:25;79:16;165:6;
201:12;224:3;248:11;
252:11;265:7
**finding (2)**
268:19;297:9
**findings (2)**
84:7,24;147:10;
148:16;242:14

**finds (1)**
266:19
**fine (19)**
6:21;8:12,23;17:17;
43:18;50:3;63:23;66:8;
75:17;77:9;88:11;
122:21;131:8;173:5;
180:4;194:19;202:8;
212:5;301:18
**finger (1)**
255:5
**fingers (1)**
278:21
**finish (1)**
275:11
**finished (3)**
162:18;201:2;220:20
**fire (95)**
9:23;12:10,13;17:21,
21;19:18;20:21,23;
21:21;24:6,19;29:15,
19;41:24;42:3,4,18,19;
43:12,13;62:3,10,10,
10,12;70:17,18;74:2;
89:22,23;90:11;95:7;
96:23;99:13;100:24,
24;102:23,23;103:14;
105:17;109:5;110:24;
130:14;132:9,19;
136:13;137:12,16;
139:15;152:9,22;
163:5,10,11;164:4,6,
10;179:21;182:19;
183:21;184:16,19;
192:14;195:24;199:11;
201:19,20;202:5,13,13;
206:14;216:10,11,12;
226:11,12,13;227:4;
231:3;242:15;248:3;
250:19,23;253:15;
259:14,15;265:9,10,10;
270:24;294:22,23;
295:2;297:15,18
**fires (48)**
12:17,18;13:16;
41:24;42:5;52:23;53:4;
89:16,20,23;96:7;
101:13;102:25;103:6,
10;107:4;109:13;
113:2,3;140:24;
142:20;154:22;157:9,
12;162:9,10,16,23;
163:24,24;164:19;
172:7;175:7;177:13;
201:21,25;226:7,9,10;
228:8,13;231:2;
242:13;243:7;247:25;
270:7;276:5;280:7
**FIRE's (1)**
183:20
**fire-specific (2)**
42:20;99:11
**firm (7)**

95:4;198:4,6;221:6,
7;264:23;277:11
**firms (1)**
264:23
**first (56)**
5:10,14;9:4;17:12;
23:2;26:6;31:10;37:10;
86:13;90:3;91:15;
93:21;94:7,8;99:21;
100:20,21;109:16;
112:4;116:3;120:17;
140:16;148:10;154:7;
155:16;156:9;158:13,
15;162:9;166:9;
170:16;176:11,19;
191:17,18;196:3;
197:20;216:6;219:4;
237:6;241:9;242:5,7,
12;243:19;261:8;
264:14;269:2,10,12;
275:2;286:20;289:6,
14,17,18
**fit (1)**
37:1
**Fitzgerald (1)**
181:11
**five (21)**
8:19;28:9;87:6,22;
89:23;143:4;155:16;
176:7,11,13;218:3;
226:10,13;229:1;
230:1;246:14;252:3;
280:7,16;290:22,23
**five-and-a-half (1)**
290:18
**five-day (1)**
290:21
**five-minute (1)**
87:2
**fix (1)**
141:15
**fixed (1)**
57:16
**fixing (2)**
56:10,11
**flabbergasted (1)**
250:1
**flash (1)**
251:2
**flawed (1)**
216:22
**fleeing (2)**
130:14;202:5
**flexibility (1)**
75:14
**flexible (1)**
86:22
**floor (3)**
5:14;6:1,4
**focus (6)**
19:20;107:22;
147:22;168:21;188:22;
194:1

**focused (3)**
22:1;168:14;198:14
**focusing (3)**
181:16;193:19;
258:24
**foist (1)**
251:19
**fold (1)**
20:4
**foldout (1)**
226:23
**folks (3)**
108:19;254:8;262:1
**follow (4)**
42:14;59:5;213:17;
232:10
**following (6)**
39:24;177:5;193:5;
196:2;230:19,20
**foot (3)**
109:7,8;202:1
**footnote (2)**
50:23;191:24
**force (1)**
22:5
**forced (1)**
233:17
**forego (1)**
113:6
**forehead (2)**
115:14;215:12
**foresee (1)**
46:11
**forests (1)**
112:22
**forever (1)**
22:23
**forget (6)**
41:17;114:5,5;
127:20;188:14;231:4
**forgetful (1)**
212:12
**forgetting (1)**
187:24
**forgot (2)**
21:16;120:9
**form (5)**
90:18;115:19;175:6;
299:16;300:3
**formal (2)**
42:18;299:18
**formally (1)**
6:7;42:17;132:10
**format (1)**
203:13
**forms (1)**
46:6
**formula (1)**
105:13
**formulate (1)**
226:5
**forth (4)**
112:19;187:11;

Min-U-Script®

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 316
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(13) Farm - forth

**214:**19;268:3
**forty (3)**
  18:7;92:6;136:24
**forty-five (9)**
  8:2,12;86:17;92:8;
  195:10,11;215:17;
  261:4;272:3
**forum (3)**
  245:10;276:7,19
**forward (25)**
  67:6;83:15;141:15;
  154:18;156:17,23;
  161:21;173:4;175:21;
  177:18;180:16,22;
  182:2;194:4;198:23;
  200:3;207:20;220:3;
  222:5;240:16;249:3;
  255:21;258:17;279:3;
  296:21
**foul (3)**
  92:2;93:14;131:24
**found (5)**
  37:4;57:20;127:11;
  201:8;221:11
**foundation (1)**
  224:19
**four (22)**
  24:12;130:22;
  133:13;142:17;143:4;
  147:16;153:3,10;
  192:24;206:3;209:5;
  211:17;215:17;229:5;
  259:9,18,19;260:3;
  286:4;287:17;290:21;
  299:6
**fourth (2)**
  145:15;147:15
**four-week (4)**
  32:24;68:8;287:11;
  292:14
**fraction (1)**
  282:7
**frame (8)**
  26:10;70:12;75:11;
  153:21;180:1;223:12;
  246:5;299:8
**framed (1)**
  299:22
**framing (1)**
  154:16
**FRANCISCO (11)**
  5:1;36:12;87:21;
  185:9;203:21,23;
  206:11;212:18;221:25;
  227:1;257:18
**Frank (1)**
  95:4
**Frankly (2)**
  37:23;150:7
**fraud (1)**
  275:9
**freak (2)**
  223:1,4

**free (2)**
  68:13;295:17
**frequently (1)**
  220:12
**Friday (2)**
  23:10;193:2
**frivolous (1)**
  121:12
**front (18)**
  7:18;95:15;132:11;
  152:21;155:11;157:1;
  165:2;166:3,5,14;
  168:1;216:19;228:7;
  245:25;249:20;250:7;
  256:7;296:11
**full (11)**
  10:12;60:7;92:25;
  93:2;131:16;196:12;
  198:11,19,19;274:7;
  295:7
**fully (3)**
  156:3;211:21;290:7
**fumbling (1)**
  236:4
**fund (9)**
  24:3;49:6;55:11;
  60:18;133:2;136:21;
  211:6;282:5,12
**fundamentally (1)**
  110:21
**funding (3)**
  61:22;196:10,17
**funds (1)**
  283:5
**further (7)**
  45:1;64:24;90:22;
  151:2;187:9,10;271:13
**future (5)**
  5:17;22:8,9;65:6;
  188:20

## G

**gain (2)**
  167:17;242:10
**Gallagher (2)**
  151:7;241:24
**gambles (1)**
  271:2
**game (1)**
  149:13
**games (2)**
  123:22;135:20
**gap (2)**
  24:22,22
**gaping (1)**
  235:19
**Garlock (1)**
  160:6
**Garrett (1)**
  214:24
**Gas (2)**
  120:7;208:15

**gatekeeping (1)**
  270:20
**gather (1)**
  278:14
**gating (5)**
  10:19;11:4;29:4;
  196:16,20
**gave (1)**
  75:13
**Gawker (9)**
  125:5;127:23,23;
  129:24,25;130:6,19,20,
  20
**general (3)**
  101:10,12;213:13
**generally (2)**
  205:14;234:16
**General's (1)**
  181:13
**generous (2)**
  296:23;298:9
**gentleman (3)**
  239:2;261:3;294:18
**gentlemen (3)**
  6:3;172:20;301:20
**gets (27)**
  34:7;48:2;50:7;55:9;
  102:14;132:12,14;
  133:12;134:11,13;
  135:6,8;136:15,15;
  143:20;168:5,16;
  180:23;213:24,24;
  219:9;230:3;231:10;
  232:7;261:3;264:4;
  281:3
**GHETALDI (36)**
  194:21,24;195:1,5,8;
  235:15,18,22,24;236:1,
  3,6,8,17,19,24;237:1,4,
  6,19;238:1,20;239:8,
  10,13,16,20,22,25;
  240:1,21,25;241:3,10,
  17,20
**Ghost (13)**
  19:17,18,23;20:20;
  21:16,21;22:10;50:12;
  132:19,21;137:12,15,
  16
**gift (1)**
  177:1
**given (7)**
  63:3;73:19;108:21;
  208:20;217:5;230:15;
  271:22
**gives (4)**
  176:25;207:21;
  210:5;223:20
**giving (1)**
  113:9
**glad (4)**
  115:4;247:12;
  302:12,12
**global (1)**

**108:**13
**GM (1)**
  267:15
**goal (4)**
  79:15;193:2,7;
  194:12
**God (1)**
  234:19
**goes (21)**
  46:12,22;48:2;50:8;
  51:18;57:13;119:2,2;
  133:1;134:12;136:17;
  156:13;162:13;168:22;
  182:2;200:3;204:11;
  274:25;281:1;296:21;
  302:7
**Good (50)**
  5:6,7;7:7,20;20:3;
  22:3;51:11,11;79:2,5;
  92:23;95:9,11;99:14,
  14;110:4,5;141:19;
  144:1;151:6;159:22;
  172:1;178:6;184:25;
  186:24,25;191:16;
  202:22,23;218:14;
  219:19;235:18;238:14;
  240:22;241:22;243:19;
  248:9,17;251:21;
  252:23;256:22;282:25;
  283:2;288:13;293:19,
  19;295:21;298:6,7;
  302:14
**good-faith (4)**
  189:3;291:13;
  292:22;294:4
**Goren (3)**
  6:16,21,23
**govern (1)**
  273:16
**Governor (2)**
  154:1;286:6
**grade (1)**
  277:23
**grammar (1)**
  219:16
**grant (33)**
  58:7,15;63:23;64:19;
  65:3;82:17;117:17;
  118:1;155:6,7,12,24;
  171:7;175:12;179:12;
  180:2;199:9,10,23;
  204:8;211:9;218:2,13;
  220:2;222:7;238:4,11;
  239:4;241:4;263:16;
  272:22;294:7,9
**granted (9)**
  203:7;204:8;205:6;
  218:12;240:3;246:13;
  250:1;272:19;273:1
**granting (2)**
  203:20;207:5
**grants (3)**
  153:9;179:1;180:9

**granular (1)**
  77:17
**grapple (1)**
  102:5
**great (7)**
  88:1;113:20;144:11;
  167:19,20;213:23;
  219:3
**Greene (1)**
  185:8
**Gregory (1)**
  271:24
**gritty (1)**
  77:10
**Grossman (1)**
  127:10
**ground (6)**
  91:8;94:13;103:11;
  138:23;139:21;204:4
**grounds (2)**
  203:25;241:14
**groundwork (1)**
  224:19
**group (15)**
  78:25;87:3;147:19;
  151:10;155:16;180:24;
  192:14;198:21;199:7,
  17;236:16;239:2;
  241:25;246:14;248:3
**groups (4)**
  86:19;148:5,25;
  248:3
**group's (1)**
  255:10
**GS (1)**
  143:3
**guarantees (3)**
  263:20,23,23
**guess (7)**
  22:6;34:1;39:6;
  40:19;56:19;63:19;
  73:24;74:4;191:16;
  200:9;208:22;211:13;
  257:9;265:23;274:9;
  285:10,13
**guidance (7)**
  26:14;102:10;
  104:20;114:4;222:7;
  251:20;255:7
**guide (1)**
  160:22
**guided (1)**
  10:17
**gum (3)**
  226:15;228:14;
  246:10
**Gump (2)**
  8:19;79:3
**guy (2)**
  172:22;228:3
**guys (4)**
  56:19;121:1;225:19;
  234:9

Min-U-Script®    Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 317
                                              eScribers, LLC | (973) 406-2250                         (14) forty - guys
                                              operations@escribers.net | www.escribers.net            of 341

**guy's (1)**
150:22

# H

**Habitrail (1)**
115:10
**half (4)**
33:3;237:12;290:7,
19
**hall (1)**
82:3
**hammer (2)**
117:6,12
**hammered (1)**
117:12
**hand (9)**
88:8;90:13,14;
108:20,21;115:13;
176:16,17;238:23
**handful (4)**
72:15;155:1;239:22
**handle (6)**
84:17;88:15;95:14;
123:23;212:18;275:16
**handled (2)**
211:23;215:1
**handling (1)**
95:18
**hands (3)**
191:19;210:22;
270:20
**happen (32)**
10:12;15:9,11;39:16;
59:7;60:23,24;76:25;
77:13;79:20;84:19;
153:2,2,3,14;158:11;
166:24;167:3;169:21;
177:21;179:3,11;
198:7;214:17;216:18;
241:9;244:1;248:8;
249:2;259:20;279:5;
286:7
**happened (10)**
48:15,18,25;49:1;
56:21;130:6;143:8;
214:3;244:5;297:16
**happening (3)**
154:4,4;250:11
**happens (33)**
30:18;48:22,24;55:8;
56:23;57:18;58:8;82:3;
97:7;113:12;121:11;
131:9;135:4,5;143:9,
13;153:12,22;179:1;
210:21;220:19;221:18;
229:18;234:19;246:7;
248:2;255:11;261:1;
262:9;277:9,19,22;
279:3
**happy (4)**
9:4;122:10;169:12;
237:4

**hard (8)**
24:1;29:7;73:10;
171:4;201:12;265:15;
274:4;299:4
**harm (4)**
92:1;93:14;131:23;
282:2
**harms (1)**
93:6
**hate (2)**
108:25;300:8
**Hauer (1)**
79:3
**Hayes (1)**
170:19
**head (3)**
244:14;264:25;
285:20
**headline (2)**
45:3,3
**hear (34)**
9:4;17:9;52:7;63:12,
14;64:23;94:7;96:5;
116:20;125:11;131:16,
21;148:8;163:23;
164:21,22;165:4;
166:25;167:4;168:4;
170:8,15;187:21;
246:4;260:16;263:10,
20;281:3;282:1,2;
283:17,17,20;302:12
**heard (85)**
7:4;10:8;15:13,15;
23:7;24:15,15;26:12;
36:19,19;52:18;73:3,4;
78:22;86:18;91:1;97:6;
102:22;108:25;110:2;
116:22;137:14;139:14;
140:16,25;141:1,1;
151:4;157:24;160:15;
163:4,12;164:14,18;
166:4;167:24;170:9,
15;174:24;175:1;
179:9,11;180:13;
181:5;182:5;185:6;
188:25;189:5;193:13;
205:3;207:24;216:15;
221:15,15;223:5;
225:4,6,9;227:22;
245:22;250:19;252:22;
257:1,4;258:15;
259:13;263:11;267:7;
270:5;273:9,23;274:2,
16,23;278:9,11;279:17,
20;282:15;285:4,25;
286:24;287:2,4;300:21
**hearing (59)**
7:3;10:14;25:17;
42:4,18,18;64:24;65:5;
67:14;75:24;79:16;
86:6;87:12,14;88:15;
94:8,11,12,14;138:17,
21;139:7,7,23;148:11;

151:12;158:1,3;167:2;
168:15;169:24;175:17;
180:18;184:17;187:19,
21;188:22;189:10,13,
18;190:22;191:5;
203:24;204:13;206:3,
8;209:25;230:16;
236:9,10;263:1;
265:15;268:6,10;
270:2,14,24;277:12;
286:8
**hearings (6)**
5:11;42:3;67:4;
140:18;148:24;221:25
**hears (3)**
84:6;164:7;282:4
**heavy (1)**
257:24
**heirs (1)**
112:19
**held (2)**
33:3;114:10
**Heller (2)**
39:21;221:4
**help (13)**
32:6;47:15;94:10;
98:16;118:11;156:2;
173:24;202:20;210:14;
219:10;223:15;226:5;
289:25
**helped (1)**
89:2
**helpful (3)**
110:17;154:12;251:7
**helps (2)**
11:5;13:13
**here's (18)**
9:15,24;46:19;81:1,
1;102:20;115:17,23;
120:5;127:3;148:7,8;
164:1;175:3;232:6;
248:21;250:7;265:1
**H-huh (1)**
226:8
**high (6)**
35:15;49:21;145:22;
196:14;284:20;290:12
**higher (1)**
177:20
**highest (1)**
123:8
**highlight (1)**
242:5
**himself (1)**
140:17
**hiring (1)**
89:19
**history (4)**
88:23;89:2;125:4,6
**hit (3)**
101:16;250:17;
285:20
**hmm (1)**

143:23
**hoc (13)**
8:18;25:16;74:1;
76:2;78:24;79:4;
147:18,23,24;149:10;
151:9;241:24;255:10
**hold (2)**
169:14;231:11
**holders (1)**
8:17
**holders' (1)**
151:19
**holes (1)**
25:18
**hollow (1)**
51:10
**home (6)**
5:22;24:7;62:1,25;
97:25;266:1
**homes (1)**
266:19
**homework (1)**
147:6
**honest (1)**
291:15
**Honor (419)**
5:7;6:21;7:20,24;
8:12;9:5;10:15;11:3,8,
8,13;12:3,14;13:7;
14:11;15:3;17:14;18:1,
8,24;19:14,25;20:3,13;
21:3,17,19;22:18,19;
23:9,12,16,22;25:3;
26:25;27:19;28:16;
29:24;30:9,21;31:7,22;
32:2;33:8,13;34:12,13;
35:4,18;36:4,16;37:16;
38:17,25;40:7,20,22;
41:11;42:7,12;43:2,4,
16;44:6,9,11,16;45:10,
15;46:9,12;48:25;49:2;
50:16,21;51:1,5,16,22;
52:9;53:24;57:3,3,12;
58:1,2,2,15,18;59:10,
18;60:3,25;61:21;62:7;
64:2;65:11,16;66:2,13,
18,21,25;67:3;68:5;
70:14,25;71:8;72:4,12,
12,23;73:3,5,6,17;
74:20,21,21;75:4,13;
76:12,17,22;77:3;78:3,
10,24;79:2,8,10;80:7,
12;81:7;82:22,24;83:5,
18;84:1,6;85:1,11,15;
86:4,16;87:2,7,18,25;
88:7;90:15,22;92:6;
95:2,5,11,22;98:22;
99:3,17,24;100:8;
101:24;102:2,25;
103:7;105:14;106:3;
107:22;108:25;110:3,
5;111:6,17,19;113:9,
15;114:25;115:13;

117:22;118:16;119:10,
14;125:3,15;129:19;
136:2;139:25;141:6;
142:23;144:3;145:10;
151:6,11,12,20;152:1,
3,21;154:17,24;155:4,
13;156:15;157:1,7,20;
158:14;160:4,25;
162:6;163:21;164:2,
21,25;165:13,17,25;
166:3,4,8,13,17;167:4,
22;168:25;170:4,18;
171:7;172:3;174:7;
175:24;176:15,21;
177:7;178:1,20,25;
180:17,20;181:6,10,12,
18,25;182:12;183:5,
20;184:4,10,22;185:1,
7;187:4,7;188:8;190:6;
194:17,19,21;195:6,18,
22;196:2;198:8;
199:14;202:21,23;
203:5,19;204:5,13,25;
205:18;207:1,9,12;
208:12;209:9;210:15;
212:7,12;213:7;
214:21;215:14;216:9;
219:15;220:9;221:5,
10;222:21;230:19;
235:13,18;236:6,17;
237:4,10;238:20;
239:13,20;241:1,18,22,
25;242:3,11,24;243:14,
17,25;244:12,25;
245:10,16,22;246:7,16;
247:1,12,21,22,24;
248:11,22,23;249:2,7,
17,22,24;250:2,16,23;
251:11,18,22,24;
252:18,23;253:3,4,9,
19,21,24;254:2,2,3,16,
17,19;255:1,4,9,13,20;
256:3,10,22;257:16,22;
258:2,14;259:9;260:4,
10,14,18,23,23;261:22;
262:4,20,22;263:6,18;
264:3,19,22;265:14,19;
266:7,21,23;267:23;
268:6;269:7,14;
270:12,17;271:3,18,24;
272:5;274:16;279:10;
281:8;285:8,18;
288:13,17,20;289:6,12;
290:22;291:17;294:14;
295:5;296:8;298:22;
299:2;300:8,25;301:9,
9,23;302:2,13
**Honorable (1)**
5:5
**Honor's (12)**
8:1;23:25;27:8;29:1;
55:17;58:22;60:5;67:2;
245:3;246:3;250:10;

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(15) guy's - Honor's

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 318
of 341

262:11
**hoodwink (2)**
141:3,12
**hook (1)**
103:3
**hope (13)**
27:7;65:10;79:9;
145:7;158:4;169:15;
180:14;187:16;255:4,
7;274:3;278:21;300:21
**hoped (1)**
255:13
**hopefully (3)**
110:16;178:18;282:5
**hoping (1)**
181:10
**hopper (1)**
168:22
**horrible (2)**
130:25;279:4
**horribles (1)**
279:5
**host (1)**
27:6
**Hostetler (1)**
88:5
**hour (5)**
86:17,20;256:15;
271:22;290:19
**hour-and-a-half (1)**
256:13
**hours (11)**
99:22;146:3;215:17;
289:20;290:5,5,5,10,
18;293:23,24
**hours' (1)**
204:17
**house (3)**
61:24;89:22;98:1
**household (1)**
24:12
**Housekeeping (1)**
7:23
**huge (4)**
34:9;140:16;144:20;
186:13
**human (2)**
298:16,17
**humble (2)**
232:17;233:19
**humiliated (1)**
130:7
**humiliation (3)**
130:3,5,13
**hundred (10)**
18:12;25:3;41:8,13;
48:13;91:20;136:16;
149:17;282:11;284:22
**hundred- (1)**
14:7
**hundred-percent (1)**
27:19
**hundreds (3)**

45:8;118:5;296:16
**hypothetical (9)**
16:17;41:14,22;55:5,
19;56:5,9;57:14;
198:16

# I

**IC (1)**
158:12
**idea (4)**
140:15;258:21;
259:7;289:22
**ideal (1)**
26:18
**ideas (3)**
157:13,13;170:7
**identification (1)**
102:23
**identified (2)**
89:15;186:18
**identify (3)**
81:13;145:9;264:17
**identifying (3)**
90:18;145:17,18
**ignition (1)**
267:15
**ignore (6)**
173:1;176:20,23;
225:16;269:20,21
**ignored (2)**
10:3;279:15
**III (19)**
17:17;55:14;60:22;
61:2;82:2;124:3;128:5;
129:12,14;131:1;
148:7,11,14;150:8;
217:5;222:11,12;
280:24;284:8
**illegal (1)**
17:19
**Illinois (1)**
238:15
**imagine (7)**
84:15;165:18;
206:11;222:12;245:2,
24;266:4
**immediate (1)**
62:16
**immediately (2)**
203:22;263:15
**immunize (1)**
16:20
**impact (10)**
30:14;32:3,12;
108:15;228:17;242:13;
295:12,19;296:2;297:1
**impaired (3)**
50:1;134:23;148:4
**impairing (1)**
277:15
**impairment (3)**
130:2,4,20

**implicate (2)**
84:15,16
**implies (1)**
176:20
**imponderables (1)**
82:13
**importance (1)**
297:8
**important (42)**
9:6;20:17;30:10;
35:3;44:15;55:22;
66:17;76:17;88:9;
102:2;145:6;152:24;
161:11;172:18;185:11;
193:6;194:9;196:19;
202:7;216:3;218:16,
19;221:9;224:20;
232:6;244:12;273:9,
13,20;281:14,20;
282:18;295:1;296:5,
13;297:9,13,14,25;
298:22,23;301:18
**importantly (1)**
72:8
**impose (1)**
291:18
**imposed (4)**
223:12;224:3;
291:23;292:21
**imposes (1)**
237:20
**impossible (5)**
67:13;152:13;
205:16;263:23;267:24
**impressed (1)**
237:17
**impressive (2)**
130:12;134:4
**impropriety (1)**
222:9
**improvement (1)**
103:2
**inaccurate (1)**
198:16
**inappropriate (1)**
222:3
**in-between (1)**
280:24
**incited (1)**
238:19
**inclination (2)**
230:16,17
**inclined (2)**
122:10;188:3
**include (3)**
127:14;129:6;148:21
**included (5)**
23:5;70:20,20;252:8;
289:20
**includes (6)**
37:10;40:16;89:22;
112:20;188:25;251:2
**including (6)**

10:23;127:7;147:8;
203:22;256:5;277:7
**incoherent (1)**
270:11
**inconsistency (1)**
258:15
**inconsistent (2)**
221:3;248:1
**incorrect (1)**
113:14
**incumbent (1)**
277:7
**indicated (1)**
299:8
**individual (30)**
11:23;15:21;24:1,4;
46:15;54:24,25;55:19,
23;57:16,17;67:19;
68:12;73:18;104:10;
105:17;116:2,2;133:1;
135:6;136:1;152:10;
195:24;247:4;256:6;
262:2;274:17;281:25;
286:15;289:13
**individually (1)**
134:1
**individuals (6)**
16:3;70:22;105:6;
152:14;232:9;261:10
**inefficient (1)**
164:21
**inevitable (1)**
175:22
**infirmities (1)**
158:14
**infirmity (1)**
204:2
**influence (2)**
65:3;69:13
**influenced (1)**
295:10;299:9
**influential (1)**
144:14;224:18
**inform (1)**
200:22
**information (12)**
88:9;108:5,14;
110:16;184:24;202:6;
210:5;221:21;228:24;
249:8;289:24;298:24
**informative (2)**
266:17;267:19
**infringing (1)**
13:21
**inherent (1)**
42:12
**inherently (2)**
11:11;18:13
**inheriting (1)**
44:8
**injured (1)**
13:19
**injuries (3)**

62:25;88:23;202:5
**injury (31)**
13:17,19,20;19:10;
36:20;37:3;45:2,17;
55:9;63:15;80:19;
97:16;106:7;111:11;
112:21;125:2,25;
126:6,11,13,14,16;
127:7,12;128:6;129:6,
24;130:1;148:21;
202:4,9
**in-or-out (1)**
37:14
**inquiry (4)**
85:14;98:2;117:1;
218:17
**insensitive (1)**
218:8
**insisted (1)**
140:9
**insisting (1)**
299:17
**inspections (1)**
188:18
**inspectors (1)**
89:19
**instance (1)**
267:16
**instances (1)**
106:18
**instead (2)**
142:4;257:4
**instructions (1)**
141:18
**insulting (1)**
178:12
**insurance (4)**
148:1,2;216:8;
252:25
**insured (2)**
61:24;247:6
**insureds (1)**
253:13
**insurers (6)**
23:9,13,24;24:11;
247:4;270:13
**integrity (1)**
293:19
**intellectual-property (3)**
13:21;55:6;56:18
**intelligent (2)**
105:18;115:24
**intend (5)**
105:22;192:23;
194:4;234:11;249:4
**intended (2)**
38:18;216:4
**intent (2)**
237:14;257:25
**intention (1)**
49:22
**intentionally (1)**
16:9

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 319
of 341

interaction (1)
220:7
interest (5)
198:11;204:6;
206:15;210:16,18
interested (2)
181:23;220:11
interesting (4)
33:15;243:24;244:4;
294:17
interlocutory (1)
183:17
International (1)
237:14
interpretation (1)
138:11
interpreted (1)
10:5
interrelated (3)
9:14;26:5;270:7
interrupt (4)
27:10;112:15;147:2;
199:8
intertwined (1)
152:24
into (56)
15:22;20:4;26:13;
33:6;36:6;43:23;46:13;
48:4;49:6,11;50:8,15;
51:18;54:7,17;60:4;
63:2,24;70:17;77:10;
99:18;101:2;102:3;
108:14,19;111:3;
122:17;132:14;133:2;
134:7,12;136:3,17;
143:2;150:14;162:3;
166:23;168:22,23;
179:24;191:23;193:16,
16;194:8;198:17;
202:8;204:10,11;
215:22;231:16;244:12;
250:13;268:24;274:25;
287:8;294:23
introduce (1)
101:7
inverse (46)
10:2;11:12;13:9;
28:23;29:6,10,13;30:1,
18;31:13,16,25;33:25;
34:2,13;74:25;75:24;
76:21;90:13;94:21,22;
96:1,2,7;99:3,7,25;
101:15;102:24;105:23;
107:9,23;116:5;
123:18;124:8;128:4;
129:1;162:11;165:19;
166:1;184:12;185:6,
10;200:1,20;207:17
inverse- (3)
12:2;81:14;100:21
inverse-condemnation (10)
11:7,16;17:19;27:11;
72:22;90:4;128:10;

142:8;158:21;193:15
investment (1)
277:23
investor (1)
99:4
investor-owned (2)
96:3,9
invite (2)
138:9;180:14
invited (1)
220:24
invoked (1)
129:2
involve (5)
59:22;60:1;99:12;
164:8;261:10
involved (17)
39:19;75:16;83:16;
90:3,6;94:21;106:12;
109:1;110:24;116:8;
148:16;186:1;221:23;
222:5;230:3;297:13;
300:2
involves (1)
106:7,7
involving (2)
120:7;130:1
Irish (1)
118:17
Irish-Italian (1)
118:24
Irishman (1)
118:13
irony (1)
213:23
irrelevant (2)
206:20;248:9
isolation (1)
163:4
issue (160)
10:24,25;11:7,13,13;
12:3,5,5;14:23;15:2;
21:19;27:16;32:2;
43:15;45:14;57:5;62:5,
9;64:7,22;69:16,18,19;
72:22;73:1,4,7,8,8,11,
17;74:23;75:1;84:15;
85:13,16;89:8,9,10;
91:9,18;96:8,8,9,12;
103:1;107:2,12;
119:25;120:9,9,11,15,
19;121:8;122:24;
123:2,3,4,4;124:13;
127:23;129:2,22;
139:14;145:23;150:6;
152:16,19,20;154:23;
163:6,21;165:3;
166:15;167:1,4,6,15;
168:13;172:13;173:13;
174:15;175:4;178:24;
181:18;182:2,13;
183:7,10;184:16,23;
189:10,13,14,14;190:4;

191:13;192:17,23;
193:6,15,22;196:14,16,
16,20;197:4;200:5;
208:9;210:16;211:2,3;
212:1;214:13,25;
215:20;216:16;220:3;
222:23;223:14;229:13;
231:3;235:10,19,25;
236:22;238:22,23,24;
242:24;243:6,8,9;
244:6;245:6;249:25;
250:4,16,18;251:10,12;
253:17;257:10;260:10,
10;264:3;266:12;
275:19,19;276:3;
280:19;282:3;284:8,
24;285:24;286:4;
295:16;300:8;301:2
issued (3)
23:10;122:23;285:14
issues (97)
10:19,22;11:4;12:16;
16:18;27:6,7;34:14;
40:14;42:20;63:17;
65:15,21;79:12,15;
80:16;82:24;84:4;
89:17,25;90:2,8,11,16,
18;100:1;102:5,6;
105:16;119:16;131:7;
134:3;140:23;145:9,
19;148:20;150:7;
156:25;157:5,6,21;
162:12,25;163:2,11;
164:8,12,18;165:1,8,9;
166:9;167:23;168:1;
169:9;188:2,4;193:7;
195:23;199:20;202:19;
208:16,20;211:23;
218:16,22;224:2;
228:16;230:21;232:15,
15,16,17;235:4,7;
242:15;243:15;245:2,
3,24;246:1,4,11;250:9,
13,22;251:18;253:18;
255:16;257:21;270:8,
20;271:3,4;275:24;
286:22;300:21
Italian (2)
118:13,18
item (1)
50:4
items (2)
190:15;194:14

## J

jackets (1)
6:4
Jackson (6)
203:22;206:4,5;
213:9,9;215:2
jam (1)
111:3

January (20)
26:10,19;68:8;75:10;
143:5,6;147:1;179:11;
209:23,23;211:12;
258:22;263:9,15;
264:5;271:1;276:12,
15;286:2,2
JCCP (5)
203:23;207:13;
213:7;214:25;221:25
jeopardize (1)
272:9
Jeopardy (1)
289:4
job (11)
49:13;107:12;
141:25;146:1;148:18,
20;177:4;216:5;252:1;
253:22;286:22
Johnny (1)
115:12
Johnson (2)
221:23,23
join (1)
271:15
joinder (2)
236:20;252:3
joinders (1)
247:3
joined (4)
92:17;155:25;
195:25;199:6
joint (1)
83:22
jointly (2)
79:21;83:7
Judge (179)
5:11;16:12,23;17:17;
30:18;35:1;37:12,13;
38:5,14;39:15,17;40:4;
41:2,3,17,18,21;42:25;
43:19;44:3;45:1;52:22;
55:13,14;57:20;58:19;
59:5,21,23,23;60:3,22;
61:2;81:4,5,6,12,12,13,
14,20;82:5,7,9;84:18,
25;85:10;99:20;
102:17;104:17,18,19,
21;106:8;114:21;
128:5;130:6;131:1;
138:23;139:6;140:14,
14;141:17,19,23;
143:11,23;144:13,18;
146:12,14,20;147:9;
148:7,11,14;149:12;
150:10,13,13;153:11;
168:16;170:2;171:3;
179:9,21,22;186:23;
192:16;196:15;197:9;
198:13,14;203:22,23;
206:4,4,5,11,13,19;
207:13,17,25;209:17;
211:20;212:17,18;

213:8,8,9,10,13,17,17;
214:23,24;215:1,2;
217:3;218:2,3;220:5,
18,18,24,24;222:12;
223:14,22,24;224:1;
230:3;231:25;233:9,
19;234:8;248:6,17,19;
249:21;250:2,6,8;
255:6;259:22;260:1,7;
261:3,5,6,19;262:10;
267:7;268:18,25;
274:8;275:22;281:9;
284:8;289:11,22;
290:17;291:11,17;
293:22;294:11,12;
295:1;298:16;300:1,2
judges (28)
5:19;33:3;41:15;
83:15;114:5;119:7;
137:5;142:7;148:16;
209:12,14;213:4,7;
217:5,7;222:11,13,14;
231:18;234:17,18;
235:4;275:7;290:16;
291:19;292:6;293:17,
22
judge's (4)
37:15;82:2;200:20;
290:19
judgment (13)
12:24;33:7;48:3;
104:17;121:2;132:13;
134:12;135:7;183:15;
240:9;275:6;279:14;
283:2
judicata (1)
244:9
judicial (8)
57:4;58:23;134:5;
189:25;268:22;281:16;
284:8;293:13
judicial- (1)
64:11
judicial-officer (1)
38:1
Julian (225)
52:14;86:13,16,24;
87:2,15,18;88:4,5,12;
89:10,13,15;90:25;
91:11,13,15,22;92:8,
10,13,18,22,24;93:8,
11,17;94:1,16,18,20,
24;95:2,4,7;97:17;
102:9;110:1,3;118:8;
119:11,14,22;120:11,
14,17,25;121:5,18,23;
122:2,5,7,11,13;123:6,
13,15,20,21,25;124:5,
12,23;125:1,14,15;
126:18,24;127:1,3,6,8,
10,17,19;128:8,14;
129:15,17,19,21,23;

Min-U-Script®

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 320
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(17) interaction - Julian

130:13,17,19;131:6,13,
19;132:2,5;133:3,5,9,
16,18,20,23,25;134:17,
19,23;135:1,8,11,13,
16,18,21;136:2,6,8,18,
20,23;137:9,21;138:4,
7,12,14,22;139:1,4,9,
13,17,22,25;140:8,13,
21,23;141:3,16;142:1,
4,23;143:2,11,14,19;
144:2,5,7,10,13,22,25;
145:2,6,13,24;146:6,9,
17,19;147:1;151:2;
153:16;161:11;168:13;
169:15;172:14;183:14;
185:13,21;186:22;
189:21;194:18,19;
195:13,18,20,20;
197:11,13;198:8;
199:1,3,5,12,14,20;
200:8,19,24;201:5,11,
17,24;202:3,5,14,16,
21;211:25;212:3,7;
222:18,19;229:22;
230:11;239:2;274:5,
18,20;285:13,16,18;
286:11,13;287:4,10,17;
288:1,4,8,11,13,17,20,
23;289:1,3
**Julian's (2)**
    166:2;189:2
**July (6)**
    59:12;67:7;286:6,8,
    13;288:1
**jump (1)**
    264:25
**June (19)**
    21:12;59:8;67:7,23;
    153:22,23;160:25;
    171:24;172:2;175:7;
    177:10;210:18,19;
    211:3;272:11;276:9,
    12;277:4;280:2
**juries (6)**
    119:10;139:12;
    209:21;251:20;253:18;
    298:12
**jurisdiction (4)**
    15:18;88:15;124:19;
    272:15
**jurors (5)**
    69:12;209:16;219:8;
    281:5,13
**jury (122)**
    16:10;36:10,11;
    39:24;47:8,8,24;50:7,7,
    14;51:11,24;53:18;
    54:11;55:9;60:21;61:2;
    68:9;69:6,22;102:11;
    112:9;125:17;131:11;
    132:11,12;133:1,14;
    134:11,14;135:6;
    136:14,15,15;141:18,

18;143:9,18;152:16;
153:11;154:25;155:1;
189:10;196:14,15;
197:6,7;200:10,16;
201:8;207:15,17,19;
209:7,10,15;210:7;
211:15;215:15;225:21;
228:7;229:2;242:25;
243:8,10,15;244:22;
245:8,9;246:6;247:24;
248:7,9,18;251:13;
253:14,17;255:11,18,
22;256:2,7;258:9;
263:3;264:5;265:8,8;
266:7,12,16,18;267:13;
268:3,18;269:19;
274:6,15,16;275:19;
279:6;281:2,23;282:1,
1,2,4,6;283:1;284:20;
289:24;290:21;295:4,
20;296:5,11,15,25;
297:14,19;298:5,19;
299:22
**jury- (1)**
    16:4
**jury=trial (1)**
    134:17
**jury's (4)**
    19:19;200:20;
    202:10;242:14
**jury-trial (11)**
    55:3;133:12;134:19,
    23;191:6;198:17;
    250:4,13,18;271:11;
    290:11
**justice (8)**
    170:11;171:25;
    204:7;206:16;216:24;
    223:12,23,23
**justly (1)**
    110:21

## K

**Karnak (1)**
    215:12
**Karnow (9)**
    179:21;213:8,13;
    215:1;264:12,14;
    267:7;289:11,22
**Karnow's (2)**
    153:11;206:19
**Karotkin (8)**
    7:18;23:7;35:21;
    36:1;50:22;55:8;
    113:20;116:20
**Karotkin's (2)**
    55:10;56:11
**keep (20)**
    67:22,22;120:6;
    165:15;169:11,12;
    180:23;185:10;201:20;
    226:22;231:18;244:10;

252:11,19;272:3;
280:21,22;288:19;
299:5;302:11
**keeping (2)**
    247:8;280:3
**Kell (1)**
    117:10
**Kelly (103)**
    108:15;109:21;
    110:1,4,5,5,6,9,11,14;
    111:17,19;112:13,15,
    17;113:6,12,15,18;
    114:13,18,24;115:2,4,
    7,10,13,16,19,22,23;
    116:18,20;117:2,8,20,
    22,24;118:1,5,10,16,
    19,24;119:1,5,7,9;
    122:17;134:4;138:14;
    139:11;142:15;143:16;
    152:25;153:17;156:24;
    172:10;174:13,19;
    208:16;210:9;211:14;
    212:10,11,12,22,25;
    213:6,12,15,20,22;
    214:10,12;215:7,23;
    216:1;217:9,11,14,16,
    18;218:21,23,25;219:2,
    14,18,24;220:9,14,17,
    22;221:4,22;222:16,
    17;249:13;260:12;
    261:3;286:1;291:22
**Kenwood (1)**
    89:23
**Kevin (2)**
    8:8;256:23
**key (7)**
    10:18;26:3;27:7;
    176:1;253:4,8;281:15
**kicks (1)**
    63:24
**kick-the-can-down-the-road (1)**
    43:9
**kidding (1)**
    121:17
**killed (1)**
    216:21
**Kim (3)**
    6:10,14,16
**kind (30)**
    5:24;19:4;32:25;
    44:19;52:21;69:5;
    82:14;91:5;103:20;
    104:13;107:15;118:9;
    121:14;142:25;161:15;168:4;172:11;
    183:12,17;190:16;
    193:14;216:5;234:16;
    250:1;252:14;276:11;
    278:15;293:18;296:23
**kindergarten (1)**
    6:2
**kindling (1)**
    113:9

**kinds (1)**
    281:4
**kit (1)**
    271:6
**Kline (1)**
    237:13
**knew (2)**
    268:23;286:7
**knowing (2)**
    206:13;218:15
**knowledgeable (1)**
    219:7
**known (1)**
    98:5
**knows (10)**
    39:20;77:4;110:22;
    114:22;129:10;177:14;
    186:8;191:7;217:4;
    302:4
**Koch-Ash (2)**
    205:21;237:13
**Kornberg (3)**
    26:6;225:19;264:5

## L

**label (2)**
    37:1;262:18
**Labor (2)**
    207:24;261:2
**Laborers (1)**
    237:13
**lack (1)**
    299:25
**land (1)**
    11:10
**language (1)**
    42:13
**large (5)**
    70:24;106:11;207:9;
    208:12;210:22
**larger (1)**
    5:19
**largest (1)**
    280:7
**last (15)**
    19:15;23:10;26:6;
    34:16;67:4;79:8;
    122:23;128:9;161:18;
    184:17,17;188:8;
    223:20;255:9;262:13
**lasting (1)**
    159:9
**late (1)**
    300:24
**late-filed (2)**
    161:25;162:2
**later (24)**
    7:2;10:23;11:4;15:1;
    16:7;19:3,4;28:4;36:2;
    57:18;112:9;139:19;
    146:15;147:4;164:17,
    23;178:8;180:3,11;

191:8;213:18;221:11;
229:19;284:21
**laugh (1)**
    188:12
**laughing (1)**
    188:14
**Laughter (1)**
    35:25
**law (56)**
    10:3,6;18:22;36:21;
    37:19;52:4,8,10;68:17;
    73:8;75:1;84:7;96:2,
    23;97:17,18,19;
    105:24;113:13;122:22,
    22;124:9;127:25;
    135:4,19,21;138:1;
    148:10,13;152:11;
    160:20;166:4,11;
    190:1;198:4,6;200:6;
    221:6,7;224:13;
    230:18,20;232:11;
    237:24,25;238:5,6,12;
    240:18,19;241:8,11;
    243:25;247:18;251:12;
    296:1
**laws (4)**
    138:11;172:6;
    238:16;296:18
**lawyer (23)**
    71:24;95:12,14;
    110:9;143:21;182:24;
    202:24,24;212:5;
    217:14;221:10,12;
    224:24;229:12;233:16;
    243:19;269:6;283:3,6;
    295:22,22;296:1;
    298:16
**lawyers (35)**
    9:15;21:9;31:15;
    32:25;35:8;37:2,3;
    39:18;46:15;51:6;54:9;
    64:21;74:15;75:16;
    88:8;90:10;118:6;
    137:5;149:21;178:12;
    186:8,24,25;187:24;
    193:23;195:23;218:2;
    221:15;257:5;260:16;
    261:18;273:22;280:3;
    293:19;294:11
**lawyer's (1)**
    159:22
**lay (2)**
    193:9;224:18
**laying (1)**
    112:4
**lays (1)**
    257:2
**lead (3)**
    42:14;82:24;199:16
**leadership (1)**
    300:14
**leading (2)**
    165:7;245:1

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 321
of 341

**learn (1)**
119:7
**learned (2)**
36:21;91:2
**learning (1)**
73:23
**least (21)**
10:18;17:12;35:10;
67:17;69:19;84:12;
87:5;128:24;141:20;
154:23;155:15,18,19;
193:1;194:4;200:5,17;
228:25;266:6;290:15;
299:6
**leave (15)**
8:24;10:7;12:18,19;
59:21;138:6,8;139:25;
146:5;189:4;190:2;
211:25;222:15;230:2;
241:12
**leaves (1)**
34:5
**leaving (5)**
97:23;134:3;161:25;
200:4;294:9
**LEBLANC (55)**
66:16,18,18,24;
67:16;68:17,20,22;
69:4,9,15,17,19,22,25;
70:2,7,12,14;71:5,8,11,
14,16,18,20,22;72:2,4,
23;73:1,12,16;74:10,
12,19,25;75:3,13,19;
76:6,10,12;77:8,12,16,
18,22,25;78:2,5,8,10;
79:9;149:22
**lecturing (1)**
241:13
**ledger (1)**
245:19
**left (15)**
34:14;40:19;96:12;
98:8;136:25;162:11;
189:17;190:4,14;
192:19;194:15;232:7;
288:21,24;289:1
**legal (37)**
9:14,20;10:13;11:7,
13,13,24;12:25;13:9;
16:19,25,25;27:18;
30:19,20;32:2;40:14;
79:15;82:23;90:18;
96:8,8;98:5;119:16;
121:12;122:25;129:2;
145:9;165:19,22;
166:3;173:1;186:19;
188:25;199:25;242:24;
243:12
**legislation (2)**
125:22;126:4
**legislative (3)**
125:4,6;237:14
**legislature (3)**

172:5;176:18;278:22
**lend (1)**
84:14
**length (2)**
208:17;284:12
**lent (1)**
125:22
**less (14)**
24:8;56:11;109:8;
114:22;211:21;215:16;
217:5;235:1;244:19;
258:24;259:17;265:12;
275:8;283:9
**lesser (2)**
134:13;277:12
**level (3)**
28:6;72:15;156:25
**liabilities (2)**
42:23;152:22
**liability (58)**
14:5;16:1;18:6;20:5;
30:23;31:9,9;41:22;
68:10,24;69:20;72:13;
89:7;90:4;96:6;97:22;
98:3;102:7,24;105:23;
108:24;116:12;118:2;
126:6;141:7,8;196:16;
201:10;207:16,19,21;
208:9,19;209:5;210:5;
215:10,18;217:19;
218:5,7;226:16,19;
228:16,20;230:5,22;
242:10;248:20;253:16;
260:10;261:16,20,21;
282:16;283:17;294:25;
295:17;297:9
**liable (7)**
17:25;96:7,24;97:21;
99:7;152:6;201:8
**liberal (1)**
162:1
**life (5)**
141:22,24;142:5;
268:25,25
**lift (8)**
76:23;247:22;252:8,
9;253:14;254:4;257:3;
281:20
**lifted (1)**
211:24
**lifting (10)**
151:14,17,21;242:6;
245:1,21;250:18;
253:5;254:5;255:3
**lifts (3)**
247:21;248:23;250:3
**lift-stay (5)**
26:16;68:3;72:6;
77:6;242:4
**light (11)**
65:17;73:6;113:16;
123:7;214:1;216:13;
218:5,6;257:15,17;

271:7
**likelihood (3)**
16:1;17:1;18:18
**likely (11)**
51:19;111:14,14,15,
17,17;153:21;186:15;
193:3;242:14;245:6
**limit (3)**
151:11;161:24;
191:12
**limitations (3)**
13:3,8;16:19
**limited (3)**
87:20;130:1;283:4
**limiting (1)**
191:14
**limits (4)**
263:17;291:18,23;
292:21
**line (10)**
54:9;101:14,16;
103:3;152:3;161:4;
178:6;225:9;264:25;
290:24
**linear (1)**
279:21
**lines (5)**
99:13;102:15;
164:12;251:1;254:9
**linger (1)**
70:17
**liquidate (12)**
15:5;46:2,3,5;47:8;
53:18;54:16,22;56:16;
152:13;176:7;181:17
**liquidated (9)**
55:1;131:15;132:4,
15,16;133:13;183:16;
200:18;231:12
**liquidation (6)**
55:3;57:18;71:2;
92:3;93:14;261:11
**liquidation's (1)**
92:21
**list (4)**
26:22;96:14;119:13;
145:22
**listed (2)**
146:13;181:14
**listen (14)**
49:9;72:3;81:17;
94:5;147:1;168:10;
179:25;180:15;232:21;
235:20;238:2,2;272:6;
281:5
**listened (1)**
110:19
**listening (3)**
116:14;214:6;281:13
**listens (1)**
298:5
**litany (1)**
36:24

**literally (2)**
68:11,22
**litigants (3)**
39:25;68:23;95:8
**litigate (1)**
11:10
**litigation (7)**
80:17;106:5;142:2,5;
223:25;267:16;294:24
**litigations (1)**
214:23
**litigators (2)**
153:13;172:20
**little (23)**
20:14;43:8;54:10;
56:9;68:6;76:20;80:10;
87:24;95:24;125:10;
146:16,17;147:4;
157:7;160:15;208:16;
221:7;228:3;236:4;
255:13;264:22;265:12;
272:8
**live (7)**
92:20;111:25;
177:23;187:5;294:21;
295:3,19
**lives (1)**
22:23
**living (3)**
172:2;178:13;294:18
**Local (2)**
39:14,18
**log (1)**
113:10
**logistical (1)**
178:25
**logistically (1)**
179:2
**logistics (1)**
5:9
**long (14)**
75:7;80:17;94:12;
101:25;175:18;176:6;
186:1;208:25;209:2,7;
211:14;214:16;296:17;
299:4
**Longer (8)**
92:9,11,13;146:24;
178:7;255:13;260:13;
278:18
**look (14)**
18:16;24:6;31:17;
36:6;38:2;39:2;57:4,
19,22;63:19;75:18,21;
79:8;86:5;89:24;108:5;
125:2,4,19,24;128:18;
130:7;135:14;137:11;
143:8;144:10;146:22;
147:5;158:21;159:18;
172:9;179:15;183:20;
187:20;203:6;223:16,
16,16,24;226:18;
234:19;242:4;267:15;

270:17,18;271:21;
272:16;282:10;288:5;
301:3
**looked (7)**
103:12;109:5;160:5;
166:19;238:20,21;
240:16
**looking (8)**
21:12;24:19;51:19;
75:9;126:20;146:23;
182:16;280:18
**looks (2)**
68:8;211:9
**Looney (1)**
237:13
**Lord (1)**
217:4
**lose (10)**
22:24;122:20,21;
160:1;162:21;232:5;
240:10,11;244:18;
277:25
**loses (2)**
17:20;162:14;
243:19;268:21
**losing (1)**
243:20
**loss (3)**
62:25;120:19;255:19
**losses (3)**
216:9;217:1;290:1
**lost (15)**
61:23,24;62:1,22;
68:22;97:25;98:1,1;
130:7;143:17;174:16;
213:24;265:19;268:6;
295:23
**lot (47)**
9:12;18:17;19:1,20;
21:12;31:18;34:14,17;
35:13,14,14;38:4;
43:25;66:15;67:1,8;
71:23;80:15;86:22;
88:12;102:9;113:8;
149:13;151:13;160:16;
165:15;167:3;183:17;
184:23,24;186:11;
211:10;214:22;231:13;
232:16,16,17;234:21;
242:8;245:22;252:19;
254:3;258:14;261:9;
262:4;295:6;301:3
**lots (1)**
240:2
**loud (3)**
265:12;297:21;298:8
**love (2)**
23:5;97:3
**low (3)**
143:25;144:1;198:15
**lower (2)**
122:22;127:14
**luck (1)**

Case: 19-30088   Doc# 3563   Filed: 08/15/19   Entered: 08/15/19 18:13:37   Page 322
of 341

206:2
**lump (1)**
89:21
**lunch (2)**
174:8;299:6
**lunchbreak (1)**
170:12
**lunches (1)**
92:14
**lung (1)**
88:24
**luxury (1)**
70:15

# M

**machine (1)**
61:8
**magic (3)**
100:15;105:13;
187:15
**magical (1)**
274:9
**magically (1)**
153:2
**magnitude (1)**
175:15
**mainly (1)**
67:2
**maintenance (2)**
102:15;111:23
**major (2)**
229:1,1
**majority (1)**
50:13
**major-law-firm (1)**
39:19
**maker (1)**
129:13
**makes (15)**
30:18;37:10;45:15;
81:6;82:5,24;84:7;
91:18;139:13;179:22;
206:5;243:10;259:18;
266:5;287:17
**making (16)**
38:5;52:16;65:17;
86:1;104:7;110:17;
141:24;142:4;149:25;
150:6;156:3;170:1;
177:3;203:18;218:14;
287:21
**malpractice (1)**
104:11
**mammoth (1)**
146:22
**manage (8)**
60:10;223:19;
224:14,15;235:7,10;
280:17;292:20
**managed (1)**
222:25
**management (4)**

111:23;164:8;
232:15;243:2
**managers (1)**
89:19
**managing (3)**
39:20;141:18;145:20
**manda (1)**
71:14
**mandate (1)**
223:5
**mandated (1)**
238:12
**mandatory (9)**
71:1;111:10;205:6,
15,16;207:24;218:10;
233:12,20
**manner (1)**
300:3
**mantra (1)**
67:25
**Manual (1)**
223:25
**manufacturing (1)**
289:8
**Manville (3)**
125:21,25;126:10
**many (29)**
7:2;14:20;27:5;56:2;
61:17;65:24;66:1;91:5;
116:25;117:4;142:11;
146:10;160:17;166:24;
188:18;191:15,19;
222:23;227:1;244:14;
245:2,3;252:11;
253:13;257:21;259:6;
270:8;301:12;302:7
**marathon (1)**
265:25
**March (3)**
70:10;269:22;287:6
**marker (3)**
202:11;283:13,14
**MARSHACK (20)**
170:18,19,19,22,25;
171:11,14,19,22,24;
172:13,24;173:2,7,9,
12,16,18;180:20;181:6
**mass (5)**
88:17;224:14,14;
231:19;267:14
**master (3)**
146:12,14,20
**match (3)**
287:24;288:7,8
**material (2)**
29:5;32:3
**math (4)**
24:18;61:15;136:17;
210:12
**mathematical (1)**
61:3
**matrices (1)**
46:14

**matrix (8)**
47:6,21;59:13;62:17;
63:2;134:8;143:2;
283:8
**Matter (41)**
5:8;6:11;10:9;25:12;
34:11;39:16,24;60:6;
68:17;69:11;74:12;
83:14;84:17;105:21;
122:24;124:9;128:25;
142:17;149:23;155:18;
157:8;190:17;197:3;
199:9;200:15;201:15;
205:22;206:15,16;
211:24;212:19;238:6;
240:19;243:14,14;
247:18;255:11;258:5;
268:5;275:11;283:14
**matters (7)**
7:23;148:11;192:15;
270:23;272:21,22;
299:15
**matter's (1)**
42:25;288:17,18
**maxed (1)**
258:12
**maximum (1)**
55:16
**may (44)**
9:16;21:9;37:1;
43:13;59:22;61:24;
67:3;69:15;72:15,15;
73:3,22;84:22;85:23,
25;87:2;88:7;91:15;
103:13;106:5;117:10;
120:1;122:7;128:8;
150:22;172:19,19;
174:16;182:25;225:25;
254:17;264:22;266:9,
12;272:10;287:22;
288:12;292:6;294:19;
295:18;296:19,19,21;
297:18
**maybe (57)**
16:10,12;18:4;19:5,
16;25:1,1;50:11;52:18;
55:9,13,14;58:8,8,9;
62:8;82:11;106:4,5;
125:12;132:18,18;
134:13;137:14;140:3,
3;145:19,19;155:10;
159:17,18;162:19;
167:8;168:12;169:12;
172:10;176:20;189:5,
16;207:24;211:12;
227:14;231:6;249:12;
250:10,14;254:10,10;
261:16;262:10;263:11,
13;272:19;278:11;
282:12;283:6;287:14
**MCCALLEN (125)**
151:6,7,8,9,16,25;
152:23;153:6,15,20,25;

154:3,7,10,13,16;
155:4,9,11,17,21,23;
156:5,8,12;157:11,15,
17,23;158:5,8,10,25;
159:2,4,6,9,12,20,23;
160:2,4,20,24;161:9,
14,17,21;162:5,20,22,
25;163:2,4,8,14,18,20;
164:17;165:9,13,17,20,
24;166:7,22;167:6,9,
11,13,17,22;168:1,18,
25;169:2,10,18;170:4,
6;180:13;191:1;
241:21,22,23;242:18,
21,23;243:4,6,21,24;
244:4,9,16,20,24;
245:12,16,19;246:3,16,
18,20;247:1,3,6,9,11,
15,18;248:11,15,21,25;
249:7,14,17;250:16,21;
251:10,15,17;255:14;
270:5
**McCallen's (2)**
189:5;262:8
**MDL (1)**
221:24
**mean (151)**
14:8;17:12,15;18:3;
20:20;23:19;28:7;31:5;
33:16;34:25;36:3;39:6;
41:1,15,20;46:3;47:13;
51:10,14;58:3,4,9;
61:9;63:18,19,21,24;
64:14,25;65:22;69:5;
74:6;75:25;78:17;
79:24,25;80:24;83:11;
84:25;85:12,13;91:9;
92:21;93:18;106:4,6;
111:14,15;114:15;
116:7;117:16,19;
119:8;120:24;121:17;
122:15;123:10,21;
124:4;126:14;127:20,
25;129:3,3;137:3;
142:20;144:21;145:2;
146:16;147:18;153:6,
8;155:8;156:6;158:24;
159:15,16,22;161:12;
162:13,17,19;167:4,7;
168:12;169:7,15;
171:22;172:17;175:10;
176:2;178:10;179:25;
181:22,23;184:20;
185:14,21;187:14;
195:14;198:24,25;
201:2;206:1;208:23;
209:18;210:7,11;
212:20;225:11,23;
226:21;230:8,10;
231:2;234:17;236:23;
238:22;242:21;243:19,
21;244:13;245:16;
248:9;249:6,10;254:9;

261:5,23,23;272:20;
274:6,6,7;275:9,14;
277:11;280:11,12,16;
281:7;283:21,24;
285:17;287:3,16;
292:6;293:17;297:1;
298:18;301:13
**meaning (2)**
126:11;196:17
**meaningfully (1)**
67:12
**meaningless (1)**
52:21
**means (23)**
11:19;46:5;49:25;
58:22;63:24;70:9;
97:23;102:24;130:23;
134:7,10,14;137:16,22,
23;156:1;176:3;177:9;
208:6;226:1;274:8;
278:19;296:2
**meant (2)**
52:15;219:22
**meanwhile (2)**
168:19;220:3
**measure (1)**
200:12
**measuring (1)**
152:6
**mechanics (1)**
65:6
**mechanism (3)**
24:22;60:8;300:16
**mechanisms (1)**
47:4
**med (1)**
104:10
**media (2)**
5:13;193:4
**mediation (3)**
47:6;133:13;149:7
**mediations (1)**
300:18
**mediator (1)**
149:6
**meet (11)**
43:10;76:16;175:16;
187:17;223:11;231:7;
276:9;277:8;281:22;
299:12,18
**meet-and-confer (1)**
64:24
**meeting (2)**
176:6;258:2
**mega (1)**
154:8
**Melodia (1)**
110:6
**members (1)**
193:4
**memorandum (1)**
235:16
**mention (2)**

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 323
of 341

111:6;189:8
**mentioned (6)**
28:11;106:18;
229:24;243:1;287:1;
300:12
**mere (1)**
130:2
**merely (1)**
120:3
**merits (4)**
160:13;286:25;
287:3,5
**mesothelioma (1)**
88:24
**mess (1)**
276:18
**message (11)**
69:13;114:8;169:16;
175:2;179:18;186:21;
187:2;194:3;266:22;
297:21;298:7
**met (1)**
277:22
**Michael (1)**
110:5
**microphone (1)**
87:13
**midday (1)**
192:19
**middle (2)**
122:13,15
**midnight (2)**
223:21;276:15
**might (38)**
9:2;13:1,13;21:22;
28:10,11;32:9;34:8;
39:9;53:1;69:13;81:1;
102:14;126:21;144:17;
149:7,14;153:11;
161:25;188:3;192:1;
193:3;198:5;206:19;
222:7,12;231:4,6;
243:20;245:14;267:21,
23;270:21;271:20;
273:4;278:7;286:15;
296:25
**Milbank (3)**
66:19,19;271:24
**million (13)**
14:6;17:2;24:12;
134:12,14;136:15,16,
16;137:17,18;148:13;
188:15;269:19
**million-dollar (1)**
14:9
**millions (1)**
13:22
**mind (16)**
5:25;6:3;9:10;19:24;
49:20;51:5;57:6;67:22;
70:25;87:25;121:10;
129:9;180:23;191:19;
198:20;199:15

**mindset (2)**
96:22;178:17
**minimize (1)**
147:19
**minimum (3)**
14:17;260:11,11
**mini-trials (2)**
33:3;196:15
**minor (2)**
10:25;190:15
**minority (2)**
60:17,20
**minute (11)**
37:25;120:22;
205:11;223:21;251:25;
262:13;265:23;268:7;
271:20;283:19;296:9
**minutes (19)**
5:12;8:2,12,13,19,
24;22:17;86:17;87:21,
23;195:10,11;256:14,
17;272:3;285:15,16;
289:1;301:11
**mirror (1)**
217:25
**miscarriage (1)**
170:11
**mischief (1)**
175:15
**misconstrued (1)**
119:22
**missed (2)**
19:16;277:20
**missing (2)**
106:24;265:24
**misstated (1)**
138:10
**mistake (2)**
131:23;195:6
**mistaken (1)**
128:1
**misunderstand (1)**
195:7
**misunderstanding (1)**
36:8
**mix (2)**
162:15;174:16
**mixed (1)**
280:4
**mixing (1)**
276:11
**model (1)**
228:23
**modify (1)**
142:13
**moment (12)**
12:19;37:1;44:16,17;
49:24;77:17;90:19;
114:5;142:15;198:17;
215:24;280:23
**Monday (3)**
192:8,10;193:3
**money (17)**

31:18;55:2,15,16;
61:18;63:3;67:24;
70:23;72:9;93:13;
116:15;132:13,13;
198:18;281:25;295:9,
12
**monkeyed (1)**
216:23
**monster (2)**
88:15;142:20
**Montali (2)**
5:5;250:2
**Montali's (1)**
141:23
**month (6)**
179:11;211:19;
260:11,12;263:16,17
**months (14)**
39:8;142:17;143:4;
153:3,10;164:17;
176:17;178:7;223:7;
225:20;249:6;258:16,
19;272:25
**Moore (2)**
8:8;256:23
**more (78)**
5:20;6:5,6;9:1;
12:11;13:16;14:14;
20:5;21:6;30:1;33:9;
36:14;61:20;69:5,13;
72:8;74:21;78:2;81:19;
84:24;85:3,5,7,9;
95:24;99:22;102:1;
104:12,16;116:23;
118:6;132:12;133:21;
137:6;138:12,13;
140:5;141:2;145:7;
149:14;153:1,4;155:3;
166:5;168:14;169:22;
180:20;186:5;188:21;
191:13;193:3,6;
199:18;200:1,17;
214:8;216:10,11,11;
220:12;222:16;232:14;
233:16,25;234:4;
242:23;245:6;259:14;
267:18,22;275:18;
276:4;283:8;296:23;
298:9,21;299:11;
301:10
**morning (27)**
5:6,7;7:7,20;19:19;
25:4;32:17;79:2,5;
95:10,11;96:4;97:7;
110:4,5;143:15;
145:18;151:6;189:23;
216:2;227:23;248:18;
249:6;270:6;273:21;
276:15;278:11
**Morris (1)**
257:18
**most (38)**
9:5;21:11;22:25;

37:9;45:9,11;64:20;
85:16;87:19;97:21;
106:6;108:17;111:5;
115:24;145:6;152:5,
18,19,19,20;166:10;
181:21;196:19;226:17;
228:15;230:21;231:22,
22;232:6;241:11;
270:20;273:9;282:3;
290:1;295:1;296:4;
297:8,14
**most-efficient (1)**
149:11
**motion (77)**
8:15;9:11,12;18:4;
21:19;22:1;24:15;26:4,
5,16;27:25;28:2;37:23;
39:10;63:22;64:2,17,
19;66:5;67:11;68:3;
72:6;77:19;78:22;
111:5;120:23;121:2;
122:16;127:14;150:10,
12;155:11,25,25;
167:20;170:16;171:7;
175:11;179:7;181:2;
183:15;185:15;187:9;
189:9,11,22;191:6;
195:25;196:3;203:7,
25;205:3;207:3,23;
211:2;240:10,11;
242:4;247:20;250:6;
252:3,15;253:14;
254:4;275:3;286:6,24,
24;287:2,4,22;288:8,9,
10;299:7,21,22
**motions (19)**
6:25;7:4;9:12;25:1;
39:22;67:14;157:25;
190:8,17;192:21,24,25,
25;214:17;267:22;
272:20;286:20;299:6,7
**motivate (3)**
144:17;242:16,19
**motivating (1)**
10:18
**mountain (1)**
154:14
**movants (2)**
272:7;277:5
**move (13)**
67:6;83:14;122:7;
124:1;140:1;153:23;
161:21;162:5;178:22;
249:11;258:17;262:11;
286:21
**moved (1)**
150:15
**moves (1)**
278:22
**moving (7)**
66:9;169:12;186:9;
195:10,25;223:11;
252:22

**much (45)**
14:14,22;18:8;34:18;
41:6;51:12,16;61:18;
65:20;74:24;76:2;
77:14;78:7;84:6;86:11,
25;87:16;92:11,13;
93:5,6,12;115:25;
139:5,6;140:5;153:1;
170:6;171:22;188:21;
195:14;199:25;210:21;
221:19,22;242:8;
245:23;252:20;274:2;
278:18;290:16,17;
296:23;298:9,12
**multiple (6)**
85:13;89:25;156:1;
228:9;267:18;275:10
**multiplied (1)**
295:11
**multi-week (2)**
34:9;102:11
**must (8)**
28:9;111:11;112:23;
115:19;179:10;206:6;
221:4;240:19
**muster (1)**
121:14
**Mutual (1)**
252:24
**myself (4)**
111:8;118:12;140:8;
250:2

**N**

**nail (1)**
285:20
**name (8)**
7:6;66:22;81:13;
120:9;202:25;203:1,3;
229:24
**names (2)**
118:25;120:7
**naming (1)**
149:20
**narrative (1)**
216:5
**narrow (5)**
38:21;64:9;157:5,18;
191:12
**nation's (1)**
74:15
**nature (4)**
88:20;137:2;193:18;
237:23
**near (5)**
22:9;65:5;188:20,20;
250:24
**nearly (1)**
256:13
**necessarily (5)**
70:24;80:3;116:7;
132:16;217:25

Min-U-Script®

Case: 19-30088   Doc# 3563   Filed: 08/15/19   Entered: 08/15/19 18:13:37   Page 324
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(21) mentioned - necessarily

**necessary (9)**
105:19,20;108:22;
191:5;228:19;232:10;
262:24;299:21;302:11
**need (66)**
7:6;17:16;26:8;27:4;
42:17;43:9;45:14;
47:15;67:10,24;72:9;
87:1;90:20;94:25;
102:5;107:14;112:25;
114:4,7,9,10;122:6;
123:4,6,13,15;130:25;
131:9;152:25;153:13;
156:2;157:11;173:20,
24;174:23;178:7;
184:18;190:2;191:10;
201:23;202:25;205:12;
208:21;211:3;214:25;
216:8;222:7;223:11;
225:20,24;232:1,6;
233:6;245:23;247:10,
19;250:14;254:9;
256:12;258:16;261:15;
267:18;271:3;278:20;
285:15;295:2
**needed (6)**
20:4;49:5;235:9;
255:15,17;265:2
**needs (15)**
38:14;106:19;
108:12,23;109:17,17,
21;117:3;168:14;
194:16;223:15;233:16;
238:24;254:18;258:19
**negligence (42)**
29:13;30:13;31:9,25;
89:17;90:7,13;100:1,4;
107:9;108:15;111:6,7,
10,11;112:4,7,23;
113:2;116:6;140:25;
154:23;163:9,21,23;
164:5,19,20,21;165:3,
4,5,6,8;175:6;177:9,13;
193:16;200:5,21;
207:18;242:25
**negligence-related (1)**
165:1
**negligent (19)**
30:6;101:17;111:18;
112:9;113:3;162:15;
163:11;164:11,24;
177:14;200:11,11,12,
16;265:24,24;266:2,13,
20
**negotiate (2)**
141:21;244:15
**negotiating (1)**
51:2
**Neither (2)**
55:12;119:5
**neutral (1)**
223:9
**new (4)**

18:22;169:7;171:10;
239:3
**news (6)**
51:11,11,11,12;
282:25,25
**next (40)**
39:8;70:22;81:12;
96:4;100:25;101:1,6;
107:10;119:13;124:1,
25;142:16;143:15;
150:3;161:19;168:5,
15,21;169:2,3;179:11;
180:15;187:18,21;
188:21;189:13;207:25;
210:19;211:3;212:9;
221:19;222:18;227:6;
249:5,5;276:16,18;
286:21;294:16;301:1
**Nice (1)**
95:10;110:8
**nine (3)**
92:14;178:7;258:19
**ninety- (1)**
236:13
**ninety-five (1)**
198:3
**ninety-seven (1)**
236:13
**ninety-two (2)**
226:10,13
**Ninth (7)**
81:18;119:2;121:20;
127:10,13;161:2;162:1
**nitty (1)**
77:10
**Nobody (12)**
28:11,12;38:14;
67:12;69:2;70:19;
136:11;147:16;173:20;
225:15,15;238:22
**nobody's (1)**
273:23
**no-brainer (1)**
73:13
**nod (1)**
261:3
**noise (1)**
295:18
**nominal (1)**
89:1
**non- (1)**
128:4
**non-Article (1)**
148:11
**nonbankruptcy (1)**
19:2
**noncap (1)**
131:4
**noncore (4)**
128:15,21;129:15;
275:23
**non-core (2)**
84:16,17

**nondischargeability (1)**
235:21
**none (1)**
70:16
**noneconomic (1)**
290:1
**non-economic (3)**
108:2,7,9
**nonissue (1)**
191:7
**nonresponsive (1)**
6:13
**non-serious (1)**
88:25
**non-Tubbs (2)**
154:22;163:24
**normally (1)**
238:14
**Norrbom (1)**
89:23
**North (9)**
90:11;95:7;109:4,8;
160:7;198:21;199:7,
16;216:10
**Northern (4)**
52:22,24;74:14;
218:18
**note (3)**
100:22;126:23;
298:22
**noted (3)**
151:13;249:23;
257:22
**noteholders (1)**
79:7
**notes (2)**
11:13;280:4
**notice (7)**
73:21,23;74:7,13;
204:18,25;205:3
**noticed (1)**
197:19
**notion (6)**
147:8;225:14;238:5;
254:8;265:20;298:11
**notoriety (1)**
297:12
**notwithstanding (2)**
189:2;194:3
**novel (2)**
50:18,19
**November (1)**
208:7
**novo (2)**
142:7;146:22
**nowhere (1)**
270:22
**nuisance (4)**
90:7,13;114:1;
200:21
**number (52)**
7:1;10:5;17:5;24:2,5,
6;29:1;31:22,22;46:12;

49:16;51:6;57:6;60:21;
63:1;65:21;69:10,11;
73:2;74:2;79:14,23,23;
81:21;82:12,23;85:20;
134:6;136:16;143:25;
144:1;155:19;161:24;
162:6;163:16;186:9;
196:21;241:7;248:8;
258:8;261:15;267:12,
13,13;283:14;289:23;
290:10;296:10,15;
297:7,8;298:20
**numbers (4)**
109:6;231:20;
247:10;252:2
**numerator (3)**
61:17;136:19;282:7
**Nuns (3)**
89:21;226:12;280:8
**nutshell (1)**
276:1

**O**

**oak (1)**
201:13
**oath (1)**
176:5
**object (1)**
270:13
**objection (2)**
184:6;187:22
**objections (2)**
6:23;7:5
**objectors (1)**
49:7
**obligated (1)**
206:24
**obligation (3)**
205:22;260:18;
263:25
**observation (2)**
146:9;151:16
**observations (2)**
103:11,12
**obtain (1)**
197:15
**obvious (4)**
30:15,16;77:23;
167:7
**obviously (30)**
9:22;10:5;11:5;
12:25;17:8;18:13;
20:17;23:19;39:9;
49:22;65:2;76:13;82:6;
86:5,21;87:16;152:13;
160:16,22;175:25;
185:17;186:2;200:7;
229:14;231:5;243:15;
251:11;254:19;262:11;
276:23
**OCC (3)**
36:22;66:14;127:21

**occasion (1)**
169:8
**occur (2)**
182:1;278:15
**October (13)**
74:3;75:6,23,23;
77:13,14;124:23;
158:16;159:6;164:4;
166:25;169:17;208:6
**off (12)**
6:4;28:21;39:8;
44:19;88:8;117:8;
141:21,21;143:18;
168:3;210:6;228:22
**offend (1)**
178:10
**offended (1)**
253:25
**offer (5)**
23:13;46:17;146:6,9;
147:2
**offered (4)**
5:20;24:3;76:13;
109:2
**offering (1)**
222:9
**Office (1)**
181:13
**officer (7)**
57:5;58:23;64:13;
189:25;268:22;284:8;
294:4
**official (5)**
66:19;73:25;76:2;
88:6;148:23;149:1,6,
18;195:20
**often (3)**
27:22;35:7;234:23
**oftentimes (1)**
252:11
**old (6)**
66:22;115:9,11;
233:14;236:12,13
**once (9)**
32:20;47:9;123:5;
124:14;128:11;220:11;
228:17;243:10;299:13
**one (232)**
5:20;8:3;10:2,18;
13:3,16,16,17;16:17,
17;17:20,21;18:4,12,
18,21,21;20:5,13;
21:10,22;25:12;26:6;
27:11,16;29:1;30:19;
31:22;33:3,16;36:13,
17;41:14,18;42:25;
44:16;45:4,8;47:24;
48:16;50:6,6,19;53:18,
25;54:12;55:12;57:6,
14;58:14;59:20,22,25;
64:16,18;68:9;71:11;
73:18,25;74:1,8;75:15,
16;77:23;78:6;79:23;

Min-U-Script®

Case: 19-30088   Doc# 3563   Filed: 08/15/19   Entered: 08/15/19 18:13:37   Page 325
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(22) necessary - one

82:13;85:14;89:8,9,10,
11;90:5,13;91:1;92:5;
93:20,20,22;98:20,22;
100:21;101:9,13;
102:5,14,15;103:7;
104:10;106:18,24;
107:7,10;108:19;
109:19;112:12;116:20;
118:6,13,13,13;121:1;
124:21;125:10;126:12;
131:13;133:13,20;
134:10;135:25;136:13,
13;138:24;139:13,18;
146:9;147:14;149:12,
12,16,22;150:1;151:16,
22,25;152:4,19;153:10,
13,22;155:3;156:1;
157:12,22;159:21;
160:6,19;162:7,19;
163:21;165:16;166:10,
22;167:7,18,20;
172:15;173:14;176:16;
180:20;183:18;186:8,
23;189:8;190:20;
191:2,8,12,15;193:17,
22;196:21,25;197:1;
199:18,18,23;203:25;
204:16;207:5;210:7,
15;217:20;219:3;
220:4;221:1,15;
222:12,12;223:24;
228:8,15,16,20;229:2;
231:3,15;234:1,18;
236:9,11,23;237:6,8,
17,22;240:3,6,7;
242:16,24;243:24;
248:3,3;251:24;253:4;
256:25;257:5;258:5,8;
261:15;265:4;267:12;
268:11;270:20;271:10;
272:13;273:23;275:2;
279:6,7;280:4,25;
285:19,24;291:19;
292:20;294:5,21;
295:17,20;300:8

**one-hundred-percent (1)**
13:2

**ones (9)**
44:15;167:10;
197:17;201:4;211:3;
216:21;224:24;280:8;
296:25

**one's (2)**
199:10;274:16

**one-third (1)**
108:10

**only (55)**
27:14;31:13;34:19;
53:6;55:6;56:5;62:21;
70:15;73:20;79:14;
92:16;99:21;107:22;
109:3,5;116:20;
146:19;151:24;155:1;

164:15,20,23;165:1;
168:6;184:13;194:10;
207:1;213:6;216:17;
220:23;223:24;228:23;
230:9,14;231:3,3;
232:2,7,13;235:3;
237:8;238:13,14;
251:10;256:4;258:24;
261:13;265:10;275:2;
283:4;287:18;290:18;
296:15;298:19;302:5

**oOo- (1)**
5:2

**open (6)**
12:1;25:9;34:5;
43:15;189:7;194:7

**opened (1)**
191:20

**opening (9)**
8:13;22:19;63:22;
99:19;110:14;112:2;
195:11;252:22;273:21

**operate (1)**
230:22

**operation (1)**
111:23

**opinion (6)**
27:14;155:3;219:6;
232:18;233:19;297:5

**opinions (1)**
17:22

**opponent (5)**
186:19;203:16;
207:10;282:20;292:13

**opponents (1)**
205:4

**opportunity (10)**
51:17;73:19;110:7;
176:5;188:17;214:4;
232:10;241:18;295:4,8

**oppose (2)**
77:19;214:4

**opposed (5)**
74:23;168:1;189:11;
216:25;221:18

**opposing (2)**
65:24;214:12

**opposition (5)**
9:10;78:15;170:16;
179:13;211:11

**opt (1)**
134:11

**optimism (2)**
83:12;189:2

**optimistic (1)**
250:12

**option (6)**
82:6;86:7;117:16,17;
175:10,10

**opts (1)**
134:7

**oranges (1)**
276:12

**order (39)**
5:3;7:10,13;8:1;
49:9;65:14;153:8;
158:6,7;168:6;173:23,
25;179:9,21;183:17;
187:11,14,16;193:23;
203:19;204:18,21;
205:2,4;206:12;
207:14;254:4,19;
255:1;258:17;264:16;
277:2;285:14;286:9,
13;299:18;300:24;
301:11;302:6

**ordered (1)**
160:14

**organizations (1)**
193:19

**organize (1)**
87:3

**origin (3)**
164:10;250:24;251:1

**original (2)**
69:7;236:20

**originally (1)**
213:8

**originated (1)**
297:18

**Orsini (467)**
7:18,20,23;8:1,6,8,8,
12,17,22,24;9:4;10:15,
21;11:1,3,21;12:2,5,13,
16,22;13:5,7,11;14:1,
11,13,17,20,23,25;
15:2,7,9,15,20;16:14;
17:4,7,14;18:1,8,11,15,
20,24;19:9,12,14,22,
25;20:3,8,10,12,17,19,
22,24;21:1,3,5,17,25;
22:13,18;23:16,18,20,
22;25:3,6,8,10,14,16,
20,22,25;26:3,10,12,
21,23,25;27:2,12,19,
22,24;28:2,8,14,16,18,
20,23;29:1,4,12,18,22,
24;30:2,7,9,21,25;31:3,
7,10,13,19,21;32:6,8,
11,13,15,19;33:8,13,
18,20,24;34:4,10,12,
20;35:2,4,17,20;36:2,4,
6,16;37:6,16,18,22;
38:9,11,13,16,23;39:5,
12;40:7,9,10,20;41:5,8,
11,13,19;42:1,6,9,11,
23,24;43:2,4,6,15,21;
44:4,6,9,11,15,19,22;
45:19,21,24;46:1,5,9,
19,21,23,25;47:2,18,
23;48:1,6,8,10,12,15,
18,21,24;49:2,4,16,18;
50:2,5,10,16,18,21,25;
51:4,9,13,15,22;52:1,3,
6,9,12,20,25;53:3,8,11,
13,15,17,21,23;54:1,4,

7,14,18,20,24;55:17,
19,22,25;56:2,4,6,8,15,
17,21,25;57:3,9,12,16;
58:11,14,18,25;59:2,6,
10,13,17,20,22,25;
60:2,19,24;61:5,7,10,
12,16,20;62:1,4,7,9,14,
20,23;63:4,7,9,12,14;
64:1,6,11,13;65:9,11,
15,18,20;66:2,4,7,9,11,
13;67:1;68:5;72:21;
76:8;78:18;81:14;
88:14;91:2,18;93:18;
95:23,25;96:14;97:1,
10;98:18,21,24;99:1,3,
6,9,11,17,24;100:4,7,
10,13,17,19;101:1,4,6,
9,11,13,19,22;102:14;
103:20;107:11;108:25;
109:2;113:20;116:3,
13;118:25;121:11;
131:7;132:7,9,17;
134:20;137:14,25;
138:9;139:14;140:17;
141:10;145:22;151:4;
157:3;169:20;170:10;
186:8,17;187:5,7;
188:7,14,17;190:6;
194:7,14,16,17;214:14,
18;225:3,16;230:12;
256:15,21,22,23;257:8,
10;258:14;259:1,4;
260:1,9;261:6,14,17,
22,24;262:4,7,16,20,
22;263:1,3,6,13,18,20;
264:3,14,21;265:14,17,
21;266:5,7,10,14,21,
23;267:1,2,4,6,9,23;
268:10,13,15,17,23;
269:4,6,9,14,17,21,24;
270:1,4;271:21;272:5;
279:4;284:12;285:9,
25;289:8;291:9,10;
293:8;294:5;296:12;
300:7,8,11,16,24;
301:6,8,13,15,22,25;
302:2,9,13

**Orsini's (6)**
14:5;17:18;41:22;
66:15;131:9;159:20

**others (7)**
13:13;17:9;78:12;
89:23;173:25;228:17;
238:25

**otherwise (4)**
126:7,12;131:15;
298:10

**ought (5)**
72:22;125:19;132:3;
254:23;270:9

**ourselves (3)**
90:1;248:12;265:7

**out (77)**

19:19;22:8,11,14;
43:11;50:4;55:11;
59:13;65:13;72:9;74:3;
75:15;77:1,6,20;79:11;
87:25;95:23;96:22;
98:10;109:18;112:4;
113:12;114:8;117:6,
12,12;118:11;128:7,
22;131:17,22;136:3;
145:16,23;147:16;
151:13;152:8;154:8;
164:3;169:16;172:23;
177:5,8;189:15;193:2,
9;198:3;202:20;
207:25;209:8;213:18;
216:7,19;221:11;
223:8,19;225:19;
228:19;231:19;232:7;
238:23;255:24;257:2;
261:11;262:13;264:9;
270:6,9,19;281:19;
290:3,6,17;295:23;
297:8;298:20

**outbuilding (1)**
61:23

**outcome (12)**
11:9;86:6;149:25;
150:17;152:13;277:13;
279:8,11;286:17;
295:3,20;296:18

**outcomes (1)**
51:19

**outer (1)**
161:24

**outline (1)**
203:8

**outlines (1)**
148:4

**outranks (1)**
222:4

**outset (2)**
151:17;178:10

**outside (12)**
15:17;48:4;137:15;
152:7,8;158:11;
166:19;172:23;178:13;
208:3;210:2;226:5

**over (46)**
7:2;14:4;15:20;19:8;
24:11;26:5;29:11,12;
32:23;35:13;39:22;
43:25;47:10;51:7,7;
67:4;80:17;87:24;
94:12;136:19;142:16;
146:1;147:21;162:11;
171:1;179:4;191:25;
195:23;199:16;204:1;
213:3;217:4;220:25;
221:14;222:24;223:4;
225:11;226:25;227:9;
236:21;244:14;254:23;
272:9;275:11;281:12;
292:19

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 326
of 341

**overall (5)**
    42:20;108:10,12;
    228:22;229:2
**overcame (1)**
    118:19
**overflow (2)**
    5:11,16
**overlap (4)**
    9:13;88:1;151:13;
    164:23
**overlapping (2)**
    127:22;270:8
**overlaps (1)**
    158:22
**override (1)**
    257:25
**overriding (1)**
    173:13
**overstatement (1)**
    219:25
**overturn (1)**
    119:19
**overturning (1)**
    161:2
**overwhelming (1)**
    89:6
**overwhelmingly (1)**
    198:1
**owe (2)**
    145:14;182:9
**owed (2)**
    70:23;200:16
**own (7)**
    20:13;27:13;43:8;
    96:13;137:12;153:17;
    264:25
**owned (1)**
    129:3

**P**

**Pacific (2)**
    7:9;208:15
**page (7)**
    35:17;66:11;121:6;
    126:3;128:9;129:25;
    263:5
**pages (8)**
    27:5;45:8;122:6;
    188:15;191:12,13,25;
    223:21
**paid (11)**
    47:3,11;60:7;92:25;
    93:13;136:3;148:1;
    196:12;198:10,19,19
**pain (1)**
    127:9
**Panel (2)**
    81:8;269:2
**paper (2)**
    154:14;193:5
**papers (29)**
    19:17,20;28:10;35:7;

36:12;41:1;42:2;65:25;
66:1;71:9;74:20;76:13;
79:13;82:17;84:21;
122:20;126:21;133:7;
147:7,16;154:17;
165:12;183:8;186:5;
213:22;214:12;249:23;
263:10;272:6
**Parada (1)**
    302:4
**parallel (8)**
    115:7;177:19;
    220:20;226:17;230:23;
    246:9;279:17;280:6
**paramount (1)**
    280:19
**paraphrasing (1)**
    92:1
**Pardon (4)**
    120:13;127:17;
    133:18;247:7
**parenthetically (1)**
    249:22
**pari (1)**
    55:11
**Parris (1)**
    84:19
**part (54)**
    10:10;11:23;12:25;
    13:1;19:24,25;34:8;
    37:3,12,20,22,23;39:4,
    11;40:11;42:8,10,11,
    15,20;43:7;44:4;61:13;
    69:1;76:21;84:5;88:12;
    90:9;102:6;116:25;
    129:6;162:16;164:18;
    181:21;182:1;183:10;
    184:13;189:6;207:9,
    21;208:13;210:22;
    213:25;246:7;251:4,5,
    6;255:2;273:13;
    281:11,17;287:21,23;
    300:2
**parte (4)**
    189:9;204:17,18;
    249:20
**participate (9)**
    131:10;132:10;
    136:14;180:23,24;
    181:5;211:4;247:23;
    301:12
**participated (1)**
    137:19
**participating (1)**
    134:8
**particular (21)**
    15:2;16:3;41:24;
    44:22;54:21;57:23,25;
    100:24;101:14,17;
    123:2;161:3;163:16;
    192:13;200:13;247:25,
    25;250:23;268:20;
    273:17;275:1

**particularly (11)**
    6:3;9:19;18:16;74:5;
    106:7;147:20;188:2;
    257:21;275:18;286:17;
    299:9
**parties (49)**
    7:3;10:5;11:5;24:21;
    41:3;76:16,24,25;77:6,
    20;79:10,19,20;83:12;
    86:5;87:19;89:2;123:6;
    141:20;142:12;148:19;
    149:2;154:14;155:25;
    156:21;157:4,19;
    160:14;166:19;168:7;
    180:8;184:24;193:22;
    195:10,25;196:1,5;
    223:23;236:14;247:6;
    248:25;253:12,13;
    255:22;256:5;264:16;
    275:10,17;289:25
**partly (3)**
    140:9;155:4,5
**partner (1)**
    39:20
**parts (2)**
    43:24;122:17
**party (9)**
    16:20;39:10,10;
    78:21;121:19;186:9;
    233:8;237:9;294:17
**Pascuzzi (22)**
    181:8,10,11,12,18,
    25;182:8,12,18,22;
    183:2,5,7,20,25;184:4,
    7,10,13,16,22;185:3
**pass (8)**
    50:9,12;75:14;
    121:14;133:17,19,20;
    225:20
**passed (1)**
    67:9
**passes (3)**
    124:12,16;128:12
**passing (1)**
    210:6
**passu (1)**
    55:11
**past (3)**
    9:2;70:17;128:24
**patent (1)**
    234:18
**patents (1)**
    234:20
**path (2)**
    79:14,22
**patient (1)**
    235:15
**pattern (1)**
    110:25
**Paul (1)**
    181:11
**pay (2)**
    93:2;131:16

**payers (2)**
    177:1;223:9
**payment (4)**
    89:1;127:3,4;176:11
**payout (1)**
    62:17
**peep (2)**
    131:17,22
**peers (2)**
    274:7;283:1
**pending (4)**
    80:25;25;82:10;
    215:7
**penny (4)**
    132:15,16;184:1,2
**people (91)**
    5:25;7:1;16:11;19:2;
    29:6;43:22;44:1;47:2,
    3,22;50:12;63:11;
    64:24;65:22;66:1;
    67:24;69:7,11;72:15;
    73:17,20,22;81:16;
    83:16,19;87:4,11;
    92:14;103:11,13,15;
    104:13;105:19;109:11;
    110:19;111:1,9;
    112:19;130:9;148:1,
    13;155:7,12,14;
    160:17;169:13;180:13;
    192:17;201:9,12;
    204:16;205:5;214:7;
    216:13,21;217:1;
    218:19;219:4,7;
    221:21;226:15,16;
    231:20;232:5;233:6;
    242:16,19;244:14;
    245:7,23;252:13;
    253:10;256:12;257:13;
    264:1;266:19;287:8;
    291:18,24;294:21,22;
    295:2,7,8;296:11,13,
    14,16;301:4,5;302:7
**people's (4)**
    22:23;32:4;116:8;
    216:16
**per (7)**
    33:3;41:14;62:3,3;
    146:3;290:5,19
**percent (15)**
    14:8;18:7,12;25:3;
    41:9,13;48:13;108:6,7;
    149:17;198:3;214:2;
    216:9;226:10,13
**percentage (3)**
    91:5;135:8;282:12
**percentage-likely (1)**
    11:9
**percentages (1)**
    18:6
**Perfect (2)**
    272:4;275:9
**perhaps (13)**
    9:10,25;18:3;106:24;

185:23;192:20;193:10;
205:3;217:5,11;
270:18;275:8;298:10
**perilous (1)**
    278:24
**period (5)**
    76:15;146:24;
    148:25;229:18;258:13
**permissible (1)**
    83:22
**permit (2)**
    91:24;197:7
**permits (4)**
    18:14,15;148:10;
    213:9
**Perris (9)**
    57:20;58:19;104:17;
    141:19;143:11;144:13;
    196:15;197:9;198:13
**Perris' (1)**
    59:5
**person (19)**
    13:16,19;32:21,22;
    50:6,7,7;91:7;107:25;
    118:13;135:6;136:14;
    137:18,19;175:20;
    176:19;204:1;233:24;
    266:1
**personal (26)**
    13:15;19:9;36:20;
    45:2;55:9;62:25;63:15;
    87:5;97:16;103:5;
    106:7;111:11;125:2;
    126:6,11,13,14,16;
    127:7,11;128:5;129:6,
    24;148:21;202:9;
    222:13
**personal- (4)**
    37:2;45:16;80:18;
    125:24
**personal-injury (21)**
    14:21;16:4,11;19:6;
    35:8;37:8;38:19;40:15;
    54:8;58:21;64:8;83:1;
    95:15;125:7,17,19;
    126:2,9;127:15;
    128:15;130:21
**personalize (2)**
    138:16;141:14
**personally (2)**
    95:19;110:13
**persons (2)**
    13:15;239:17
**person's (1)**
    233:22
**perspective (6)**
    10:16;75:5;160:25;
    162:6;166:10;242:5
**persuade (1)**
    74:8
**persuaded (5)**
    58:7;65:3;161:12;
    222:7;252:13

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 327
of 341

**persuades (1)**
33:11
**persuasive (6)**
127:11;130:24;
238:6;240:4,7;245:15
**pertain (1)**
299:11
**petition (1)**
121:25
**Petri (1)**
111:8
**PG&E (71)**
5:8,11;17:25;30:6;
68:10,24;69:12,12;
74:6,6,8;92:20;93:1;
96:5;97:6;102:23;
103:22;104:22,22;
105:22;107:8;108:19;
110:25;112:25;122:25;
131:14;137:17;143:10;
144:19;162:13,19;
163:9;164:8,20;165:4;
173:19;175:7;176:5,
16;177:12;178:6;
191:18;200:10,16;
201:8;203:9;210:16;
211:20;213:24;216:5,
20;228:18;230:5;
231:5;244:2,6;250:24;
251:1,2;260:17;
287:18;289:10,13,17;
290:3;291:1;292:22;
294:23;297:12,21;
298:8
**PG&E's (11)**
120:19;164:5;
176:24;216:4,14;
243:1;263:13;286:8;
289:18;290:8;297:14
**ph (5)**
21:10;80:9;130:9;
147:12;297:18
**phase (44)**
9:20,22;12:17,19;
15:10,25,25;17:11,12;
19:17,24;20:4;22:9;
29:11,12;31:5;32:17;
34:14;43:8;76:22;
119:18;123:23;156:22;
162:9,10,16,18,23;
163:12;164:3,15,18,22;
186:10;189:6,7;
190:25;191:2;201:7;
227:3,6;228:19,22;
270:6
**phased (1)**
28:3
**phases (7)**
9:20;17:10;79:24;
80:2;122:18;158:10;
191:1
**Phasing (2)**
228:10,12

**phone (5)**
7:4;188:9;214:23;
220:4,11
**photographs (1)**
103:15
**phrase (2)**
34:15;296:14
**phrases (1)**
158:16
**physical (6)**
103:12;126:7,11;
130:1;237:9;266:3
**PI (4)**
32:25;43:24;110:9;
217:14
**pick (9)**
46:12;108:8;134:6;
215:15;218:1;220:4;
229:23;248:8;280:16
**picked (4)**
196:19;209:20,21;
264:22
**picking (2)**
167:23;220:11
**picks (1)**
214:23
**piece (10)**
15:22;24:9;40:15;
45:1;71:6;93:7;112:23;
189:6;228:23;268:19
**pieces (2)**
103:13;223:11
**pile (1)**
34:22
**pinpoint (1)**
103:14
**pipeline (1)**
287:22
**pitch (2)**
174:6;180:5
**pitman (1)**
143:24
**Pitre (174)**
92:5;94:25;95:4,10,
11,14,18,21;96:13;
97:3,6,10,12,14;98:11,
13,15;101:22,24;102:2,
17,20,22;103:22,24;
104:1,3,21,25;105:1,2,
4,8,10,14;106:3,9,15,
17,21,23;107:6,16,20,
22;108:4;109:20,21,
25;110:12;118:12;
122:17;134:3;138:14;
139:11;143:16;152:25;
156:24;171:1;172:10,
14;174:14,20;212:3,4,
9,10,13;222:19,20,21;
223:3;224:6,8,10,22;
225:1,6,8,13,22,23,25;
226:2,4,9,22;227:6,8,
11,13,17,19,22;228:1,
4,10,12,14;229:4,9,11,

17,20;230:6,9,14,19,
25;231:25;232:22,24;
233:3,6,9,11,15,19,22;
234:1,4,7,13,25;235:3,
6,13;246:9;249:13;
261:2;265:1,2;269:18;
286:1;288:20,23,25;
289:5,6,16;290:13,15,
22,25;291:3,6,8,21;
292:4,8,10,12,15,17,
19;293:2,5,11,13,15,
21;294:2,8,14,16;
297:3,5,7,11,25;298:3,
13,22;299:2
**Pitre's (3)**
95:6,9;265:6
**Pittman's (2)**
130:9,11
**place (13)**
14:3;59:4;103:14;
111:2;143:5;144:7;
177:10;179:10,20;
188:10;190:23;241:9;
250:24
**placed (1)**
192:14
**plaintiff (13)**
68:12;96:19,24;
97:20,22;126:5;
233:13,17;266:3;
269:20;289:21;295:22;
300:14
**plaintiff/client (1)**
103:19
**plaintiff/defendant (1)**
99:19
**plaintiffs (28)**
61:23;67:19;96:21;
154:25;195:24;196:11;
200:13;244:10,18;
246:24;247:13,21,25;
248:4;249:24,25;
256:6;260:7;261:9;
263:21;264:10,17;
266:25;283:11;289:8,
13,16;296:21
**plaintiffs' (5)**
125:8,16,18,23;
126:8
**plaintiff's (5)**
74:15;107:13;
125:24;143:21;233:16
**plan (43)**
25:12,16,17,20;26:8,
15;31:17;43:8;49:23;
59:9;105:22;109:18;
132:25;133:3,9;
135:22;138:4;148:4;
158:15;160:9;188:10;
196:18;197:16,16,24;
198:2,9,10;213:24;
226:5;251:19;255:25;
272:10,12,15;277:3,13;

278:12;279:8;281:11;
289:11,18;290:16
**planning (2)**
180:8;190:19
**plans (11)**
25:13,13;89:5;
126:11;133:5;167:21;
180:9;197:22,23;
262:2;289:12
**plan's (2)**
59:8,14
**plate (2)**
141:21;245:3
**play (4)**
54:7;63:24;76:3;
135:20
**played (1)**
216:18
**player (1)**
149:8
**players (2)**
168:24;247:8
**playing (3)**
67:8;111:2;123:22
**pleading (1)**
263:8
**pleadings (1)**
263:7
**Please (9)**
5:6;13:1;36:16;
174:6;190:14;202:25;
235:16;249:11;256:19
**pleasure (6)**
6:15;9:3;87:15;
95:12;171:3;288:15
**plenty (2)**
23:11;288:24
**plug (1)**
262:14
**plural (1)**
155:2
**plus (2)**
280:16;286:19
**pm (5)**
190:11,11;256:18,
18;302:16
**podium (4)**
169:4;176:19;
199:16;211:25
**point (136)**
11:3;12:19;13:7;
15:24;21:11;22:6;
25:11;28:15,17;31:22,
22;40:21;46:13;47:5;
48:9,11;51:22,23;
57:13;58:18;61:16;
62:18;63:19;70:2,14;
72:4,7,21;82:8,22;83:5,
19,20;84:1;86:3;92:25;
101:1,17;103:14;
111:14,21;113:18,22;
118:9;120:3,12;121:8;
122:17;123:15;124:1,

25;125:15,18;126:12,
13;129:9;130:21;
138:15;144:21,21,22;
146:19;147:20;152:5,
18;153:22;154:9,12;
156:7;159:19;163:20;
164:10;166:11,24;
167:1;171:18;172:17;
176:22;180:21;184:4;
187:9;188:7;189:18;
192:1;196:21;198:3;
200:18;202:8;216:24,
25;217:18,23;221:9;
229:13;234:23,23;
235:3;238:14;239:3,
11,13;240:2,13,14,25;
241:16;242:9;243:12;
244:12,20;247:12;
248:5;249:1;250:10;
251:22;252:20;253:4;
267:12,13,13;269:24,
25;270:12,17;275:2;
278:25;279:1,15,16;
281:17;287:18;289:6;
292:17;294:16;298:24;
299:12
**pointed (3)**
151:13;154:8;281:19
**points (13)**
9:6;156:25;166:3;
168:16;170:25;174:14;
177:4;193:18;194:6;
241:7;253:4;267:19;
271:14
**pole (3)**
103:3;297:16,16
**policies (1)**
89:18
**politically (1)**
113:14
**pool (7)**
50:15;54:19;55:2;
266:7,12,16;298:20
**poor (1)**
216:6
**portion (6)**
34:3;73:2;83:3,4;
142:9;151:12;252:22;
259:25
**Portland (6)**
41:16;45:12,14;
48:21;56:21;57:20
**poses (1)**
226:17
**posit (1)**
152:17
**position (16)**
10:3;18:8;26:15;
111:3;132:18;136:5;
138:10;149:8;157:12;
162:14;186:22;208:18;
270:5,10;283:24;
285:12

Min-U-Script®

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 328
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(25) persuades - position

**positions (3)**
30:15;242:20;259:10
**possession (2)**
192:3;250:25
**possibility (3)**
21:22;60:3;167:20
**possible (9)**
67:11;68:1;108:18;
118:3;146:4;162:2;
206:17;237:7;250:7
**possibly (2)**
10:19;15:4
**Post- (1)**
60:24
**post-confirmation (4)**
46:13;55:3;62:14;
271:11
**post-emergence (1)**
46:1
**posture (1)**
32:4
**pot (9)**
48:4,8;50:8;56:13,
15;255:24;283:23;
285:2;296:23
**potential (3)**
157:6;200:4;245:1
**potentially (12)**
10:23;37:24;38:1;
47:6;60:12;62:11;
79:14;80:16;83:6;84:6;
157:3;164:24
**power (5)**
33:20,21;40:21;
103:3;164:12
**practical (1)**
243:14
**practice (6)**
106:2;191:16;
214:15,19;269:2,11
**practices (1)**
95:15
**practicing (1)**
296:1
**pre- (1)**
39:15
**pre-524 (1)**
46:24
**preaching (1)**
161:7
**pre-Amendment (1)**
93:23
**preceded (1)**
126:4
**precedent (2)**
128:1;213:3
**precise (2)**
111:15;141:2
**precisely (2)**
22:20;202:14
**preclusion (3)**
69:14,18,19
**preclusive (1)**

72:16
**predicate (2)**
72:1;231:8
**predict (2)**
244:1;278:15
**predicted (1)**
134:15
**predicting (3)**
10:10;159:17;284:12
**prediction (3)**
159:21;278:17;293:8
**preempts (1)**
237:25
**prefer (2)**
257:8,10
**preference (26)**
69:2;179:7,20;199:5;
203:25;204:7,8;205:6;
214:13;215:4;217:24;
218:2;247:13;249:25;
250:6;252:5;259:3;
261:9;263:24;264:1,
13,15,18,25;265:5;
286:15
**preferences (1)**
238:12
**pre-fire (2)**
24:7,12
**prejudiced (3)**
271:8;287:11,15
**preliminaries (2)**
40:3,13
**preliminary (2)**
19:15;171:3
**premature (1)**
105:15
**preparation (1)**
284:16
**prepare (4)**
105:12;114:14;
233:17;258:19
**prepared (5)**
50:23;65:1;107:18;
190:3;246:11
**preparing (2)**
93:17;169:6
**preponderance (1)**
33:10
**presence (1)**
206:19
**present (5)**
47:11;196:24;
232:10;300:22;301:11
**presentation (3)**
203:15;251:6;257:1
**presented (4)**
98:4;164:4,5;168:2
**presents (2)**
230:21;285:21
**present-value (1)**
49:5
**preservation (2)**
189:11;191:6

**preserve (1)**
299:22
**preserved (2)**
55:9;271:11
**preserves (2)**
54:11,11
**preserving (1)**
53:18
**preside (2)**
32:23;94:12
**presided (1)**
39:22
**President (1)**
150:8
**presiding (3)**
5:5;99:20;146:1
**Presto (1)**
113:9
**presumably (5)**
40:18;56:11;82:7;
201:6;294:3
**presume (7)**
40:25;82:10;173:3;
182:6;185:22;194:2;
272:24
**pretend (7)**
114:5;150:20;
161:15;172:18;234:11;
248:7;261:25
**pretending (2)**
75:22;174:1
**pre-trial (15)**
37:20,22;39:22;65:8;
169:22,23;181:3;
187:24,25;232:16;
233:2;234:15,16;
235:7;268:20
**pretty (8)**
41:6;93:24;102:2;
166:12;183:3;186:12;
249:1;287:23
**prevail (1)**
70:5
**prevailing (1)**
17:1
**prevent (1)**
49:13
**preview (2)**
64:14;168:14
**previewed (1)**
250:21
**previous (1)**
26:5
**previously (1)**
160:14
**prima (1)**
112:6
**primarily (2)**
196:3;297:12
**primary (1)**
188:22
**principal (3)**
187:16;194:15;

299:18
**principle (3)**
11:24;69:14;123:1
**principles (1)**
10:18
**prior (8)**
50:23;147:11;
175:17;191:8,24;
193:8;268:24,25
**priority (6)**
198:13;231:15;
233:1,8;238:18;252:14
**private (1)**
99:14
**privately (2)**
129:3;148:25
**privileged (1)**
214:22
**pro (2)**
55:11;132:14
**probability (1)**
114:16
**probably (21)**
14:7;19:2;44:1;
64:21,23;74:14;84:23;
113:11;141:4;152:4;
160:19;215:17;217:7;
219:24;222:13,14;
245:3;255:17;272:22;
274:3;301:10
**problem (17)**
22:18;24:14;75:21,
22;86:24;102:20;
118:12;162:4,6;173:5;
175:15;204:15;218:24;
260:14,14;267:25;
286:23
**problematic (1)**
164:24
**problems (2)**
86:1;149:13
**procedural (1)**
168:8
**procedure (9)**
24:21;82:1;105:25;
174:19;197:20;203:10;
204:1;262:1;279:23
**procedures (11)**
80:7;98:19;145:8;
174:18;196:13,25;
204:9;215:9;217:19;
223:25;264:9
**proceed (8)**
41:4;109:16;187:12,
15;203:8,9;246:9,11
**proceeding (18)**
68:4;83:22;90:1;
107:2;108:16,23;
112:10;124:13,14,18,
23;128:11;129:15;
142:11,12;157:21;
188:1;268:9
**proceedings (14)**

76:24;79:21;83:2,3,
5,10;84:5,7;152:21;
160:11;249:3;259:11;
297:22;302:16
**process (123)**
7:13;9:18;11:23;
12:12;16:8;20:14;26:8;
31:24;35:9;40:24;41:8;
42:11,16,21;49:4,10;
51:21;67:5,6,10,18,21,
24;68:1,25;69:2;70:8,
10,24;72:17;73:20;
74:13;75:25;76:19,25;
77:2,4,5;79:17;82:19;
84:23;85:21,21;91:8;
102:4,7;105:20;
106:25;107:3;108:11;
109:15;112:11;116:11;
117:14,19;137:3;
139:25;140:7;153:6;
158:11;161:16,19;
168:7;172:4,6;175:19,
20;177:2,4,12,18;
178:18;180:6;181:20;
182:2;184:25;186:1,6;
189:24;190:24;193:12;
194:5;196:6;223:4,7;
229:12;230:2,15;
232:2,4,8,9;234:24;
236:9;246:8;253:7,10,
11;254:21;255:2,3;
256:2,4,6;257:14,24;
260:8,10,21;272:8;
273:10,11,12,14,16;
274:6;279:8;280:17,
21;281:21;283:10;
295:2
**product (1)**
89:7
**program (2)**
228:19;247:10
**progress (2)**
184:20;222:1
**prohibition (1)**
148:12
**project (1)**
166:23
**promise (1)**
240:9
**promised (1)**
196:4
**promptly (3)**
79:18;232:6,7
**proof (11)**
100:25;101:1,4,6;
111:20,21;112:5;
117:4;172:11;174:21;
284:15
**proofs (2)**
90:12;124:19
**proper (2)**
74:7;146:4;197:3,14
**properly (1)**

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 329
of 341

79:18
**property (13)**
13:15;15:21;19:12;
24:13;103:5,5;107:25,
25;108:1;109:4;143:3;
290:1;297:18
**proponent (2)**
185:17;197:25
**proposal (19)**
19:25;34:22;63:22;
73:2;87:24;122:16;
150:6;156:9,17,19,24;
162:7,17,23;164:14;
223:8;229:23;268:3;
299:25
**proposals (1)**
72:14
**propose (4)**
86:7;158:15;159:6;
175:25
**proposed (17)**
7:10;9:20;24:21;
34:15;67:18;73:4;75:6;
76:14;84:24;122:13;
147:10;148:16;149:25;
191:2;289:16,17;293:5
**proposition (2)**
52:12;298:12
**prosecuting (2)**
103:19;125:20
**prospective (1)**
186:19
**prospects (1)**
278:19
**Prosser (1)**
97:16
**protect (1)**
104:19
**protected (1)**
104:21
**protection (1)**
91:5
**protections (1)**
296:6
**protocols (2)**
296:7;300:17
**prove (19)**
31:16;94:9,10;97:20;
98:2;100:6,7,10,11,14;
105:8;107:18;108:22;
111:4;163:9,10;172:7,
10,11
**proved (6)**
108:23;111:7,8;
112:24;117:3;232:12
**proven (4)**
30:23,24;111:11,13
**proves (3)**
72:7;137:16;286:17
**provide (3)**
8:20;23:1;160:21
**provided (3)**
89:5;106:19;237:12

**provides (2)**
36:8;49:18
**providing (2)**
109:12;187:22
**proving (1)**
111:22
**provision (1)**
218:11
**prudent (5)**
89:17,18,19;156:14;
251:21
**prudential (2)**
160:24;166:9
**prudently (1)**
196:12
**psychiatric (3)**
130:2,4,19
**public (10)**
23:19,20,22;24:2;
87:21;99:14;103:2;
150:21;216:19;217:2
**pull (1)**
262:13
**punitives (1)**
34:7
**pure (9)**
10:13;27:18;61:3,15;
73:8;74:25;81:2;
188:25;242:4
**purpose (10)**
66:4;72:17;90:15,17;
91:16;94:4;110:15;
150:6;152:7;236:11
**purposes (23)**
14:4;17:17;31:8;
42:19;44:24;45:5,21;
54:3,4,15;57:7;58:20;
59:9;91:22;94:11;
131:1,3;132:25;160:8;
190:21;196:6,9;229:7
**pursue (1)**
47:8
**purview (1)**
226:6
**push (1)**
67:25
**pushed (2)**
245:4;261:11
**pushing (1)**
175:21
**put (50)**
7:2;19:6,9;24:5,5;
27:6,16;31:25;34:21;
49:21;54:17;58:22;
63:2;73:7;79:12;96:19;
97:25;99:16,22;
105:20;107:13;108:19;
109:3;112:5;115:14;
123:4;128:23;132:13;
138:18,19;140:8;
141:10;142:4;147:15;
152:1;156:17,23;
165:8,9;173:2;174:23;

177:16;188:10;191:23;
196:10;227:3;254:5;
255:5;268:3;289:11
**puts (1)**
161:24
**putting (5)**
97:24;98:25;100:20;
113:21;138:17

**Q**

**qualification (1)**
214:17
**qualified (1)**
35:8
**qualify (1)**
101:14
**quarrel (1)**
185:25
**quarterback (1)**
223:15
**questionnaires (2)**
139:4;189:15
**queue (1)**
25:15
**quick (3)**
84:14;253:3;300:8
**quickest (1)**
22:25
**quickie (1)**
216:25
**quickly (17)**
10:19;47:3;67:10;
68:1;110:20;119:17;
166:14;181:11;206:16;
208:20,20;209:11;
210:17,21;230:15;
268:2;286:21
**quiet (2)**
22:16;37:17
**quite (5)**
14:3;107:14;130:12;
165:18;257:4
**quotations (1)**
237:12
**quote (7)**
126:6,15;130:1;
265:4

**R**

**Radovsky (1)**
185:8
**raise (8)**
156:24;183:7;
236:21;237:3,3;
252:20;300:9,11
**raised (9)**
16:18;122:24;
132:20,20;134:4;
179:19;184:16;236:23;
247:12
**raises (2)**

37:24,25
**raising (1)**
278:20
**ramifications (1)**
83:16
**range (2)**
91:4;209:18
**rapid (1)**
214:8
**rare (1)**
146:23
**rata (2)**
55:11;132:14
**rate (2)**
177:1;223:9
**rather (12)**
5:14;10:23;11:4;
78:12;119:17;137:7;
177:10;178:5;180:2,
11;284:12;300:1
**rational (1)**
116:9
**reach (5)**
45:14;64:6;167:15;
175:22;177:20
**reached (3)**
300:13;301:17;
302:12
**reaches (2)**
76:23;286:17
**reaching (1)**
167:17
**read (40)**
19:3,18;21:6;23:9,
12;27:14;28:9;33:2;
35:7,14,21;45:11;
63:18;66:1;71:12,21;
82:17;94:3;102:13;
120:16;121:7;126:22;
130:4,11;134:18;
141:4;165:14,15;
169:7;171:20,22;
185:5;186:23;191:25;
193:5;196:8;230:11;
235:16;237:11;240:16
**reading (7)**
9:10;93:19;128:18;
147:7;153:9;169:6;
230:17
**readjust (1)**
295:24
**reads (2)**
127:1;137:10
**ready (18)**
10:8;36:14;39:16,25,
25;40:1;59:8,15;86:12,
15;120:25;173:8;
175:5;187:17;188:9;
199:21;262:13;285:13
**real (9)**
56:23;68:3;92:21,23;
103:5;107:25;143:3;
144:1;260:14

**realistic (2)**
177:8;290:11
**realistically (3)**
179:10;214:21;
215:15
**reality (4)**
220:19;259:8;
260:24;262:7
**realize (1)**
194:9
**really (38)**
10:17;57:5;67:16;
69:5;71:6;72:18;79:14;
94:21;100:25;106:23;
111:1;113:21;140:5;
149:7;150:18;153:1,2;
167:13;173:12,19;
178:3;179:18;189:13,
20;193:18;199:24;
214:22;216:3;232:14;
247:11,12;249:23,24;
258:4;273:13;285:20,
23;290:11
**reason (29)**
22:21,24;24:20;30:9;
31:25;43:8;68:2;93:9,
9;104:16;116:13;
127:13;137:6;149:15;
166:5;172:1;175:14;
196:5;197:2,13;
217:24;220:6;245:22;
255:12;259:5;266:21,
23;267:10;282:16
**reasonable (2)**
111:22;212:16
**reasoning (1)**
193:2
**reasons (15)**
28:16;58:14;81:21;
137:12;141:17;148:15;
156:19;158:23;198:20;
238:4;258:4;260:23;
275:16;285:22;286:25
**rebuild (1)**
109:5
**rebut (1)**
102:16
**rebuttal (4)**
63:16;78:13,14,18
**recall (4)**
18:25;93:21;150:11;
236:19
**recapitalization (1)**
89:5
**received (1)**
187:2
**recent (1)**
205:20
**recently (1)**
221:24
**Recess (1)**
87:9;190:11;256:18
**recite (1)**

Min-U-Script®

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 330
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(27) property - recite

187:16
**recognizes (1)**
204:5
**recognizing (1)**
76:25
**recollection (2)**
97:20;287:21
**recommend (1)**
141:16
**recommendation (10)**
39:3,7;40:4,12;44:3;
84:18;150:1,12,25;
170:1
**recommending (1)**
170:3
**reconcile (1)**
233:1
**record (14)**
6:24;7:11;8:7;71:25;
88:5;100:23;118:22;
179:20;241:5,23,23;
256:23;258:23;286:11
**recording (1)**
5:22
**recourse (2)**
45:24;49:18
**recover (2)**
55:16;111:10
**recoverable (1)**
113:25
**recovered (1)**
24:11
**recovery (5)**
24:11;79:18;134:24;
298:10
**redefining (1)**
216:5
**redistribution (1)**
47:13
**Redwood (1)**
226:13
**reexamine (1)**
242:19
**refer (1)**
147:14
**referee (1)**
141:17
**reference (10)**
39:4,11;40:13;53:16,
17;81:20;150:10,12;
151:1;215:3
**referencing (1)**
191:24
**referral (1)**
84:25
**referring (1)**
221:23
**reflect (2)**
148:5;193:13
**reflects (2)**
36:7;71:25
**reforestation (1)**
108:1

**regard (3)**
197:17;287:5;289:10
**regarding (4)**
184:18;191:6;
297:22;299:25
**regardless (7)**
23:25;24:25;30:17;
137:18;140:4;157:25;
270:24
**regular (1)**
190:20
**reimbursements (1)**
183:21
**reinvent (1)**
191:17
**rejected (1)**
57:20
**related (9)**
21:7;40:17;120:11,
14;128:6;163:23;
164:21;165:4;275:23
**relates (6)**
13:9;26:16;64:11;
67:17;72:13;263:24
**relative (1)**
231:15
**relatively (2)**
208:20,20
**relevance (1)**
51:20
**relevant (7)**
26:4;30:14;194:2;
218:17,18;257:3;
291:25
**relief (81)**
9:12;25:1;58:7,15;
64:18,19;65:3;69:6;
82:17;88:1;116:24;
117:11,17;118:1;
140:5;146:15,17;
150:5;153:9;155:7,24;
170:13;173:4;177:19;
179:2,19;180:2,9;
190:7;191:3;192:22,
25;194:13,21;195:25;
196:13,25;197:2;
199:4,9,10,24;203:7,
20;206:12;207:2,6;
211:9,9,24;218:3;
220:2;222:7;237:23;
238:4,7,11;239:4,7,14,
18;240:3,5,19;241:4;
246:13,24;249:20;
251:6;263:16;267:22;
272:20,23;273:1;
285:22;287:4;288:9;
294:7,9;299:7,10
**relief-from-stay (1)**
18:3
**relieve (1)**
216:18
**reluctant (1)**
175:22

**rely (2)**
45:9;293:18
**remains (2)**
271:11;275:4
**remarkable (1)**
118:19
**remarks (3)**
22:19;151:11;273:22
**remedy (1)**
271:12
**remember (10)**
92:13;93:5;113:17;
115:11;126:21;191:17;
222:10;252:16;288:5,6
**remind (3)**
92:7;262:17;286:5
**remove (3)**
101:19;164:11;
217:24
**render (3)**
76:18;152:16;295:21
**rendering (1)**
248:8
**renegade (2)**
198:4,5
**reorganization (5)**
85:21;125:25;
177:23;255:25;272:10
**reorganized (2)**
60:12;92:20
**repealed (1)**
29:10
**repeat (6)**
78:12;146:1;166:2;
242:1,8;272:5
**repeated (3)**
158:2;187:21,22
**repeatedly (2)**
120:19;210:16
**rephrase (3)**
29:25;124:7;179:25
**reply (3)**
78:16;125:3;197:18
**report (12)**
12:10;17:22;29:15,
20;149:1,2;216:22;
250:19,24,24;253:16;
297:15
**Reporter (1)**
126:3
**represent (4)**
74:1;170:19,22;
188:5
**representation (1)**
74:19
**representative (7)**
152:15;197:24;
264:18;265:3;266:24;
267:11,12
**represented (3)**
8:18,19;75:16
**representing (3)**
90:12;147:25;193:23

**represents (1)**
149:21
**reputation (2)**
95:20;110:13
**request (8)**
119:18;125:8,17;
177:19;236:20;286:8,
24;302:9
**requested (3)**
8:19;126:9;178:6
**requests (1)**
86:19
**require (8)**
11:14;16:21;20:14;
25:22;135:4,21;
150:25;206:16
**required (9)**
15:7;80:3;197:3;
223:18;241:4;266:24;
267:11;289:9;290:4
**requirements (1)**
254:5
**requires (4)**
116:1;129:12;
135:19;175:13
**requiring (1)**
254:4
**re-read (1)**
93:21
**res (1)**
244:9
**reserve (1)**
285:14
**reserved (1)**
271:16
**resident (1)**
218:18
**resolution (9)**
32:8;68:2;167:8;
169:13;245:1,5;
281:21;301:17;302:12
**resolve (16)**
20:12;23:4,14;24:1,
23;34:13;68:20;72:9;
119:16;196:17;223:13;
257:20;276:6,7;
295:13;299:20
**resolved (5)**
19:3;23:6;26:13;
68:11;72:14
**resolving (2)**
85:17;144:14
**resources (7)**
223:15,16;224:12;
232:14;235:6,9,11
**respect (48)**
6:23;12:2,13,16;
15:16,20,24;16:1,3;
29:13;45:16;51:24;
68:10;69:19;70:8;72:5,
6;75:3;76:24;82:25;
88:14;89:17;99:25;
125:17;128:9,10,14;

156:9,13;163:24;
164:5,15,19;176:25;
216:16;242:10,25;
247:21,22;250:18,23;
253:15,20;268:19;
270:12;274:17;282:15;
286:23
**Respectfully (5)**
57:21;98:21;166:17;
176:15;258:2
**respects (1)**
67:17
**respond (5)**
67:2;125:8;151:17;
203:16;225:25;281:5;
293:8
**responded (2)**
7:1;274:21
**responding (1)**
125:16
**responds (6)**
298:5
**response (6)**
6:12;131:9;147:3;
149:15;150:2;181:14
**responses (1)**
125:2
**responsibilities (1)**
194:10
**responsibility (4)**
39:14;88:16,18;
287:20
**responsible (1)**
193:23
**rest (7)**
128:14;266:1,19;
271:23;273:14;296:16;
297:22
**restate (1)**
132:7
**restating (1)**
71:21
**restoring (1)**
201:13
**restriction (1)**
292:20
**result (10)**
15:9;10;56:7;135:4;
210:4;225:11;253:9;
258:6;295:3,21
**resulted (1)**
89:1
**result's (1)**
56:8
**resume (1)**
170:12
**resumed (1)**
299:6
**retain (2)**
213:9
**retainer (1)**
232:25
**retains (1)**

Min-U-Script®
Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 331
of 341
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(28) recognizes - retains

198:11
**Revenue (1)**
238:15
**reversed (2)**
30:1;119:8
**review (9)**
119:25;120:3;
121:25;142:7;146:21,
23;148:17;237:11;
299:13
**reviewed (1)**
197:17
**reward (1)**
284:21
**rewrite (1)**
172:5
**Rice (1)**
237:13
**Richard (1)**
170:18
**ride (5)**
21:23;93:15;131:14;
132:19;134:14
**right (287)**
5:9;7:12;9:1;11:1,
20;12:10,11,15;13:21;
14:10,19;15:14,22;
16:5,14;17:4,14,15,25;
18:7,19;19:4,8;21:24;
22:13;25:15,24;26:23;
27:19;28:1,8,20;29:17;
31:6,23;33:12,13,18,
19;35:3,4;38:11,23;
40:24;41:19;45:23,25;
46:18;47:7,7;48:24;
50:5,16;51:9,22,24;
52:22;53:7,8,13,18;
54:4,11,18;55:3,4,9,18,
21;56:4,4,6;57:15,20;
58:13,17,19;60:2;
61:19;62:2,8,23;63:7,
10;64:3;67:6;71:15,15,
18;72:2;73:1;74:10;
75:2;77:12;78:1,20;
79:1;80:12;81:14,25;
83:12,20;84:11,14;
86:12;87:15;89:12;
91:21;92:23;94:14;
98:20;99:15,24;100:9,
19;103:21;105:21;
106:14;107:16;108:20;
114:24;115:18;117:7,
21;119:9,21;120:17,
17;122:5;125:23;
126:8;128:23;131:11;
132:5,8;133:8,15;
134:23,25;135:3;
136:9;138:1,25;139:9;
140:25;141:7;145:1,3,
22;148:14;151:15;
152:10,12;156:23;
157:10,17;158:12;
159:8,10;160:23;

162:13;163:13,15;
164:16;166:6;167:14;
170:1,5;171:4,5,6;
174:4,17;175:3;
179:23;181:17;182:1,
8,12,18;183:2,24,24;
185:22;189:20;192:6,
6;193:10;195:11;
197:12;199:22;200:14,
23;202:18;208:5;
209:15;210:20,20;
212:5;213:6,20;
215:23;216:1,13,16;
217:3,16;219:3,9;
224:16;227:5,21;
232:24;233:15;236:24;
238:8;239:5,17;240:4,
15;242:17;243:3,5,19,
23;244:16,23;246:15,
19,21;247:15;249:19;
250:14,20;252:6,16,17,
21;253:14;254:15;
257:12;259:1;260:8,
19;261:2,5;262:3,6;
263:8,9;264:1,17;
265:18,20,21;268:16;
269:8,13;271:11;
272:15,18;273:5;
276:17,24;277:1,16;
279:13;280:6,10,12,14,
19;281:8;282:1;
284:10,14,19,22,25;
287:9,22;293:15;
296:17;297:1;298:18;
299:3;301:6
**rightly (1)**
151:13
**rights (10)**
36:11;105:6;109:15;
148:3;152:15;191:6;
253:12;257:23;287:15;
299:22
**rigid (1)**
87:16
**Rios (1)**
181:12
**ripe (2)**
190:3,4
**rise (3)**
5:4;190:12;285:20
**rises (1)**
241:15
**risk (13)**
32:13;49:12,14;
70:18;161:1,5;196:5,
11;278:24;284:23;
285:6;294:18;295:19
**risks (1)**
83:6
**road (2)**
47:4,5
**roadmap (4)**
140:15;145:3,4;

226:3
**Robbins (1)**
80:8
**robe (2)**
32:21,22
**Robert (2)**
88:5;195:20
**Robertson (3)**
221:2,11,13
**Robins (3)**
138:21;139:13;
147:13
**role (8)**
61:13;67:3;98:10;
147:19;212:2;222:10;
230:2;284:9
**roll (3)**
117:5;193:16;262:8
**rolled (1)**
228:19
**rookie (1)**
221:2
**room (4)**
21:9;44:1;143:21;
257:16
**roughly (1)**
24:7
**rule (26)**
10:9;12:24,24;24:25;
59:5;64:15,17;74:7;
77:19;79:10;81:15;
96:14;123:2;140:4;
148:13;162:1;166:15;
178:19;198:13,13;
207:17,17;269:1,2,10,
12
**ruled (1)**
100:21
**rules (24)**
34:14;39:14,24;51:3;
91:8;94:13;96:1,10;
103:8;105:5;107:1;
112:1,12,18;138:23;
139:7,21;146:2;
150:25;172:17;178:16;
238:15;240:6;291:24
**ruling (20)**
10:9;11:12;23:25;
34:2;37:23;74:4;81:17;
98:4;192:21,24;193:6,
9,11;206:5,5,19;
250:10;252:8;268:20;
298:6
**rulings (3)**
77:3;222:1;299:10
**run (5)**
26:7;87:24;161:5;
280:6;284:23
**runner (1)**
265:25
**running (5)**
53:21,23;255:18;
263:15;289:4

**runs (1)**
55:3

---

**S**

**sacrifices (1)**
105:5
**safeguard (1)**
219:8
**sake (2)**
273:11;281:24
**salient (1)**
174:14
**same (55)**
9:14;13:8;17:18;
31:5;35:17;56:7;66:11;
82:16;89:11;102:11,
12;104:18;110:12;
111:25;114:7,15,23;
116:25;118:23;119:9;
120:9;122:19;128:3;
138:17;141:5;158:2;
165:19;172:9;174:20;
178:9;186:23,25;
191:4,25;192:1;
202:13;207:15;212:18;
221:15,16,21,22;
226:15,22;231:15;
244:19;246:10,24;
263:5;266:17;273:16;
284:9;295:25;298:2;
299:21
**sample (1)**
152:15
**SAN (12)**
5:1;36:12;87:21;
120:7;185:8;203:21,
23;206:11;212:17;
221:24;227:1;257:18
**sat (2)**
110:19;221:24
**satisfy (2)**
164:9;276:9
**save (1)**
78:13
**saw (3)**
103:12;151:22;
294:25
**saying (53)**
34:1;35:5;40:16;
53:25;65:20;82:21;
93:1;109:4,11,12;
111:1;112:3;114:3;
116:20;128:24;154:20;
139:7;144:20;154:20;
173:7,9,9,12;176:16,
23,24;177:7;178:3;
186:11;188:20;201:22;
209:20;223:2,10;
224:8;233:4;239:1,1;
243:17;245:17;250:3,
6;258:19;259:12;
263:13;281:1;285:5;

288:2;291:1,8;292:11;
295:1;296:12
**scale (1)**
255:6
**scenario (7)**
14:15;58:3,5;72:6;
153:4;265:7;270:25
**schedule (12)**
75:14;76:5;82:14;
140:18;145:21;159:18;
185:24;189:19;220:15;
256:12;270:21;290:19
**scheduled (1)**
272:17
**scheduler (1)**
22:10
**scheduling (15)**
22:9;65:14;76:15;
180:10;181:4;182:4;
186:17;187:10,18;
188:22;189:18,19;
190:15;299:14;300:12
**scheme (1)**
232:5
**Schoenberger (1)**
110:6
**school (5)**
36:21;97:17,18,19;
113:13
**scope (2)**
88:14;157:19
**scorched (2)**
211:11;214:4
**season (2)**
70:17,18
**seat (1)**
181:9
**seated (4)**
5:6,15;190:14;
256:19
**seatmate (1)**
80:4
**second (14)**
8:3;10:16;11:3;97:7;
125:1,10;151:25;
197:2,22;199:18;
207:22;213:22;243:20;
244:25
**second-guess (2)**
168:9;221:19
**Secondly (1)**
148:15
**secret (2)**
150:19;253:22
**Section (14)**
6:25;37:5;54:10;
112:1;126:14;127:14;
190:1;204:1,4;237:7,8,
15;266:25;267:7
**seek (1)**
271:12
**seeking (4)**
31:21;160:12;

Min-U-Script®

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 332
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(29) Revenue - seeking

184:24;249:20

**seem (7)**
18:4;33:5;44:2;
144:18;174:2;179:16;
184:3

**seemed (3)**
22:3;189:14;289:8

**seems (15)**
10:6;11:18;12:9;
16:22;24:25;25:12;
76:1;116:9;117:2;
118:10;161:23;183:12;
284:20;290:12;294:20

**segue (1)**
44:19

**segues (1)**
36:6

**select (4)**
209:4,7,10,15

**selection (2)**
209:13,15

**seminal (2)**
18:21;93:20

**send (14)**
93:1;156:21;157:17;
213:18;215:2;231:4;
232:23;257:13,25;
267:16;270:9;295:11;
297:21;300:5

**sending (1)**
271:9

**senior (1)**
79:6

**sense (7)**
131:23;161:4,5;
196:8;222:23;248:15;
259:18

**sent (3)**
40:1;50:25;146:24

**separate (9)**
33:22;42:18;62:3;
102:25;103:6;107:4;
140:5;235:16;270:9

**separately (3)**
193:14,15;299:25

**September (1)**
208:6

**sequence (1)**
100:18

**Sequoia (1)**
280:8

**serial (1)**
244:6

**seriatim (1)**
228:11

**series (2)**
13:15;257:5

**serious (2)**
88:25;282:3

**seriously (3)**
121:17;169:25;272:9

**session (4)**
5:4;87:10;168:5,6

**set (26)**
11:24;43:24;44:22;
56:13,15;60:7;70:24;
91:8;96:12;116:15;
138:2,23;139:23;
177:8;191:4;197:4;
205:10;206:24;207:25;
215:4;217:24;224:13;
229:12;283:22;290:16;
300:17

**sets (3)**
61:22;226:24;273:14

**setting (12)**
145:16;152:4;178:5;
179:8;187:11,14;
189:10;190:19;215:4;
250:13;270:21;302:5

**settled (1)**
166:12

**settlement (10)**
23:17;25:5;30:15;
32:4;46:17;88:23;89:2;
133:13;167:18,19

**settlements (2)**
144:8,17

**settling (1)**
189:10

**seven (2)**
188:15;213:25

**seven-and-a-half (1)**
24:3

**seventeen (3)**
89:20,21;290:6

**seventh (1)**
19:19

**seventy (1)**
204:1

**several (8)**
9:13;39:19;67:4;
73:5;133:10;175:1;
249:5,5

**severe (2)**
130:2,17

**shakes (1)**
109:18

**Shall (6)**
44:14;71:14,16;
171:17;175:25;281:19

**shame (3)**
130:3,5,13

**shape (1)**
299:16

**share (5)**
56:20;83:11;132:14;
180:12;280:20

**shared (3)**
47:21;55:11;118:23

**shareholders (1)**
91:24

**shares (1)**
277:6

**sharing (1)**
78:18

**Shield (2)**
89:12,13

**shifts (1)**
177:10

**shine (3)**
214:1;218:5,6

**shined (2)**
216:14,14

**shines (1)**
257:17

**Ship (13)**
19:17,18,23;20:20;
21:16,21;22:11;50:12;
132:19,21;137:12,15,
16

**shoes (1)**
140:8

**short (9)**
177:11;178:5;
192:23;196:21;205:3;
242:13;243:11;299:23;
301:9

**shorten (2)**
204:21;215:11,18

**shortened (1)**
205:25

**shortening (3)**
204:19;205:2,4

**shorter (1)**
258:13

**show (1)**
112:8

**showed (1)**
125:6

**showing (1)**
179:20

**shown (1)**
130:8

**shows (1)**
74:3

**shut (1)**
19:16

**sic (3)**
5:22;36:11;41:16

**side (40)**
22:11;27:1;33:4;
37:9;38:20;41:15;51:7;
68:7;69:2;73:13;74:5,
16;86:15;87:17;
110:19;117:18;121:10;
124:8;127:24;146:3;
168:2;170:9;172:22;
173:3;182:9;186:14;
187:22;212:23;245:19;
251:8;256:14;259:24;
260:3;268:12,17;
284:20;293:8;294:5;
298:6,7

**sides (7)**
38:3;41:18;114:4;
127:25;189:21;243:13;
291:12

**side's (1)**

259:24

**sight (2)**
22:24;232:5

**sign (1)**
153:8

**signal (3)**
123:25;295:11,11

**signed (3)**
186:24,24;286:6

**significance (4)**
51:21;53:14;259:6;
279:11

**significant (15)**
24:9;149:8;163:6;
166:10;168:24;228:16,
17;242:6,7;244:25;
245:9,17,21;247:11;
251:17

**significantly (1)**
148:4

**similarly (1)**
129:5

**simple (15)**
16:12,17;24:18;
30:20;32:1;47:17;
49:20;109:10;128:23;
139:5;142:9;156:14;
185:10,20;302:10

**simpler (1)**
101:23

**simplify (1)**
43:12

**simply (8)**
34:15;70:2,15;84:1;
148:24;166:24;195:22;
240:16

**simultaneous (2)**
191:9;299:23

**simultaneously (1)**
118:3

**single (10)**
42:15;45:7,8;57:1;
136:4;191:20;264:8;
265:21;267:13;268:3

**single- (1)**
152:17

**Singleton (44)**
87:22;170:20;171:1;
172:13;173:10;174:2,
4,7,10,13,25;175:3,24;
176:4,12,15,21,23;
177:3,7;178:1,3,5,11,
15,20,22,24;179:7,14,
17;180:4,5,17;182:5;
194:3;216:3;251:23,
24;252:7,10,18;
258:18;264:24

**Singleton's (1)**
264:23

**sit (8)**
6:1,2;83:7;117:5;
188:9;220:25;221:14;
250:17

**site (1)**
297:17

**sitting (14)**
6:3;47:16,19;74:16;
81:5;86:13;142:7;
213:8,12,13;221:1;
281:9,13;284:8

**situated (2)**
62:12;282:14

**situation (9)**
30:23;109:1;164:1;
166:18;248:12;273:6,
7;281:17;298:17

**situations (2)**
62:10;160:17

**six (13)**
86:19,19;87:19;
112:9;125:2;178:6;
223:7;225:20;258:19;
260:3;290:5,10;291:10

**six- (1)**
32:24

**Sixteen (6)**
204:22,23,24;206:2;
249:21;290:6

**sixty (1)**
263:22

**sixty-four-dollar (1)**
12:9

**size (3)**
62:11;142:19;285:2

**Skikos (2)**
300:20;301:15

**slam (2)**
121:3,21

**sleeves (1)**
117:5

**SLF (1)**
180:23

**slightly (2)**
62:4;163:20

**slow (3)**
111:2;175:19;214:4

**small (1)**
93:7

**smaller (2)**
60:21;137:7

**smart (1)**
118:13

**smoking (2)**
17:19;269:18

**so-called (2)**
272:24;298:19

**social (1)**
218:18

**solely (5)**
90:17;157:20;160:8;
164:22;251:19

**solution (4)**
16:12;49:21;185:20;
245:8

**solve (3)**
75:22;85:25;118:14

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 333
of 341

**solved (3)**
43:7;173:5;236:25
**somebody (12)**
20:7;22:11;25:9;
59:15;61:3;102:3;
109:2;149:23;150:22;
152:25;153:4;156:3;
161:18;277:14;281:3;
294:17
**somebody's (1)**
232:4
**somehow (10)**
11:24;43:23;151:20;
153:12;162:18;232:4;
289:9;292:19;294:10;
295:12
**someone (5)**
27:1;61:24;129:13;
182:6;277:12
**sometime (7)**
22:9;26:10;50:8;
68:8;70:22;193:8;
301:1
**sometimes (10)**
38:6,6;89:21;115:7;
160:21;244:18;275:8,
17;290:20;293:21
**somewhat (1)**
5:19
**somewhere (5)**
6:10;48:5;50:8;74:3;
91:20
**Sonoma (1)**
201:13
**soon (7)**
116:15;158:1;179:3;
206:1;249:1;250:7;
251:8
**sooner (7)**
10:22;11:4;180:11;
207:21;211:23;249:21;
263:11
**sorry (17)**
5:10;6:8;7:9;13:23;
36:1;66:14,19;71:8;
112:15;126:18;147:18;
156:6;201:3;222:20;
242:18;265:14;287:7
**sort (11)**
37:20;70:10;176:19;
182:20;189:17,23;
193:9;197:9;213:2;
245:5;300:21
**sorts (3)**
41:20;80:23;280:17
**sought (1)**
264:24
**sound (5)**
27:15;122:20;138:2;
218:8;241:13
**sounded (1)**
286:3
**sounds (4)**

51:14;122:3;165:7;
228:8
**source (1)**
35:24
**spaces (1)**
5:13
**spades (1)**
280:11
**speak (7)**
63:11;78:11;88:9;
95:7;110:7;222:11;
285:11
**SPEAKER (7)**
78:24;81:10;118:22;
125:13;126:17;190:9;
192:10
**special (5)**
125:9;196:12;215:4,
9;217:19
**specialized (1)**
196:25
**specific (7)**
9:2;11:6;99:12;
159:4;194:6;218:1;
242:24
**specifically (6)**
13:24;30:1;93:14;
116:24;168:15;299:11
**specifics (1)**
187:18
**Spector (1)**
198:14
**speculated (1)**
123:1
**speculative (1)**
138:7
**speed (1)**
199:6
**speedy (2)**
133:13;239:17
**spend (5)**
21:11;45:10;88:13;
156:18;262:12
**spending (4)**
186:11;240:12;
288:14,15
**spit- (1)**
157:7
**split (2)**
193:15;261:20
**spoke (1)**
294:18
**spot (2)**
99:12,13
**spouse (1)**
98:1
**spread (1)**
18:7
**spring (1)**
286:21
**square (4)**
109:7,8;202:1;
280:12

**squeezing (1)**
194:8
**staff (2)**
87:11;301:4
**stage (1)**
184:25
**stake (1)**
277:13
**stakeholders (9)**
8:14;15:4;26:4;
43:11;257:21;259:6;
260:19;262:16;271:8
**stakes (1)**
35:15
**stand (5)**
22:13;103:9;206:23;
259:13;260:16
**standalone (4)**
64:22;163:12;
164:22;166:5
**standard (6)**
30:13,13,14;141:11;
145:8;164:9
**standing (3)**
5:25;181:8;236:21
**stands (1)**
270:8
**stark (1)**
248:13
**start (31)**
11:5;12:20;22:20;
26:17,19;27:4;64:25;
68:25;70:7;88:7;
108:20;131:13;147:21;
154:16;159:7;160:25;
161:12;179:19;182:16;
206:6;226:18,23;
242:3;254:12;259:7;
263:9,14,15;265:10;
299:17;301:22
**started (10)**
22:20;26:1;43:9;
79:16;92:15,15,16;
95:23;99:13;139:6
**starting (4)**
68:8;70:9;153:11;
263:22
**starts (4)**
153:18;164:3;
169:17,20
**state (66)**
21:13;28:7,10;47:8;
58:5;67:20;82:16,18;
93:2;102:12;105:24;
106:2;119:24;120:2,
20;121:25;128:9;
138:18;139:12;146:24;
154:5;155:5;156:12;
172:5,12;181:14;
193:1;206:20;214:15,
18;220:20;224:13;
232:20;234:11,17;
237:24,25;238:12,17;

243:18;249:18;250:4,
5,12;251:12;252:24;
253:12;254:6;256:1;
257:9,11,13;258:22;
259:10,15;260:4,7;
261:25;262:18;264:9,
21;265:2;266:24;
274:1;292:2,20
**state- (3)**
11:10;260:7;300:13
**state-court (23)**
72:14;152:11;
172:20;187:24;195:23;
222:14;235:3;239:17;
242:25;246:6;250:8;
257:5;258:1;259:19;
260:9,20,21;262:10,12;
263:3;264:24;271:9;
280:3
**stated (5)**
63:22;119:24;
148:15;196:15;238:4
**statement (6)**
49:19;110:14;112:2;
192:14;219:21;294:4
**statements (6)**
23:10;26:3;151:18;
219:11;285:19;298:21
**States (4)**
39:20;120:18;125:3;
286:13
**statue (1)**
128:7
**status (6)**
76:15;150:8;190:18,
22;193:20;299:16
**statute (19)**
13:3,7;16:19;53:5;
93:22,23;94:3;104:7;
114:8;125:8;126:9;
128:18;137:10;171:17;
175:13;199:5;213:18;
218:9;233:20
**statutes (1)**
125:6
**statute's (1)**
37:17
**statutory (23)**
31:15;128:25;
177:24;181:20;183:22;
213:4;231:8;233:1,8;
239:5;241:15;247:15;
252:5;259:2;263:17;
264:1,13,15;271:6;
274:10;275:4;276:8;
281:18
**stay (109)**
5:22;9:12;16:9;25:1;
45:3;48:4;58:8,9,15;
64:18,19;65:3;69:6;
76:23;80:25;82:8,10,
18;88:1;90:17;116:24;
117:11,17;140:6;

146:16,17;150:5;
151:14,17,21;153:9;
155:7,24;170:14;
173:4;179:2,19;180:2,
10;190:7;191:3;
192:25;194:13,21;
195:25;196:13,25;
197:2;198:23;199:24;
203:7,20;206:12;
207:2;211:9,9,24;
216:1,18;218:13;
220:3;237:20,21,22,23,
24;238:4,7,11;239:4,7,
14;240:3,5,20;241:4,8;
242:6;245:1,21;
246:14,24;247:21,22;
248:23;250:3,18;
251:6;252:9,9;253:5,
14;254:4,5;255:3;
257:4;263:16;267:22;
272:20;273:1;275:3;
281:20;285:22;287:4;
288:9;294:7;296:9;
299:7,10
**stayed (4)**
198:22,25;199:2,10
**stays (4)**
48:6;192:22;199:9;
238:6
**step (4)**
10:16;131:13;169:3,
3
**stepping (1)**
14:14
**steps (1)**
85:14
**Steve (1)**
203:1
**stewards (1)**
67:5
**stick (6)**
15:10;16:16;177:11;
180:7;203:12;256:16
**still (64)**
9:9,21;10:9;11:25,
25;12:19;16:7;17:24;
25:19;29:13,16;30:5;
31:1,4,23,24,24;34:5;
43:15;47:7;50:14;58:9,
11;64:16;65:15;68:13,
25;89:1;99:6,25;
107:17;108:11;113:10;
117:11,12,13;133:1;
140:6;153:23;162:15;
168:9;180:10;189:3,
16,20;190:25;221:1,1;
222:9;227:15;260:11;
261:14,17;270:1,23;
274:24;276:9;280:23;
281:20;282:1;283:11,
13;288:20;298:12
**stipulate (2)**
205:4;214:7

Min-U-Script®

Case: 19-30088    Doc# 3563    eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Filed: 08/15/19    Entered: 08/15/19 18:13:37

(31) solved - stipulate

Page 334
of 341

**stipulated (3)**
157:6;264:16;283:7
**stipulation (2)**
301:20,23
**stipulations (1)**
7:2
**stop (11)**
99:15;103:17;114:2;
120:22;136:9;205:11;
224:21;225:18;227:7;
237:16;268:7
**story (13)**
10:1;11:18,19,19;
19:1;58:22;61:19;
221:10,15;225:3;
282:2;298:5,5
**straight (1)**
165:15
**straightened (1)**
145:23
**straightforward (1)**
119:16
**strategy (1)**
266:10
**Strauss (1)**
79:3
**streamline (1)**
157:15
**streamlining (2)**
142:1,5
**street (4)**
214:24;225:23;
228:7;268:14
**stress (1)**
127:14
**stressed (1)**
94:18
**strict (3)**
31:8;141:7,8
**strict-liability (1)**
30:13
**strictly (1)**
96:24
**strikingly (1)**
256:25
**strip (2)**
16:4;36:10
**strong (1)**
21:9
**stronger (2)**
242:20,22
**strongly (2)**
253:12,15
**struck (2)**
273:10;276:10
**structure (1)**
284:6
**structures (2)**
216:11,12
**struggle (2)**
222:22;223:10
**stuck (3)**
112:14;137:4;172:25

**stuff (4)**
34:3;103:20;112:6;
232:25
**stymieing (1)**
258:18
**sub-battle (1)**
183:13
**subject (7)**
25:18;27:8;37:17;
182:14;183:9;187:8;
192:18
**submit (9)**
123:9,10,11,14,15,
17;258:2;295:16;
300:24
**submitted (9)**
42:25;124:18;
179:13;288:17,18;
289:10,11,13;292:22
**subquestion (2)**
44:25;45:2
**subro (2)**
69:10;270:10
**Subrogated (1)**
87:20
**subrogation (20)**
15:16;23:9,13,23;
67:20;75:8,9;147:23,
24;148:3;149:10;
151:9;241:24;246:22;
247:19;255:10;270:5,
13;287:22;288:10
**subrogation's (1)**
49:23
**subs (1)**
116:11
**substance (1)**
17:19
**substantial (7)**
103:4;107:8;132:13;
141:7,9;285:21;286:25
**substantive (8)**
237:23;238:5,8,18;
239:5,17;240:4,15
**substantively (1)**
251:25
**substitute (1)**
17:17
**subtract (1)**
290:3
**success (1)**
18:18
**successfully (1)**
178:13
**succinctly (1)**
193:1
**suddenly (2)**
243:17;259:16
**suffer (2)**
31:5;217:1
**suffered (13)**
13:15,17;62:25;93:6;
104:10,13,14;129:8;

130:24;137:17;163:19;
182:19;191:18
**suffering (1)**
127:9
**suffers (1)**
218:19
**sufficient (4)**
60:5;165:5;274:9;
289:23
**suffocate (1)**
130:15
**suffocating (1)**
130:10
**suggest (17)**
38:21;45:14;109:16,
22;148:8;150:2;
166:17;180:13;207:12,
13;214:12;223:3;
228:6;240:2;289:8;
291:16;294:20
**suggested (11)**
36:11;74:20;76:20;
142:8;146:20;147:16;
168:21;169:20;185:24;
186:10;198:21
**suggesting (15)**
38:21;112:17,18;
145:10;214:20;222:8;
230:22;235:8;254:14,
16;259:8;291:9;293:9,
10;296:4
**suggestion (14)**
29:5;38:24;168:22;
180:1;189:5;193:21;
213:23;224:12;254:9;
257:13;260:6;280:5;
294:10;295:20
**suggestions (1)**
151:23
**suggests (2)**
189:16,23
**suitability (1)**
214:13
**sum (2)**
55:2;132:13
**summaries (1)**
127:22
**summary (3)**
12:24;121:2;183:15
**summary-adjudication (1)**
27:24
**sums (1)**
132:13
**superior (32)**
34:9;63:6;111:9;
114:6,14;131:12;
132:12;156:2;174:1,
21;179:4;203:21,22;
204:5;205:21;206:11;
209:11,14;212:18;
219:21;221:1;225:11;
227:1,9,24;249:1,8,10;
250:12;261:2;281:12;

292:14
**superior-court (10)**
147:9;187:25;
206:13;220:24;234:8;
248:17;259:22;261:18;
291:11;294:11
**superseded (1)**
189:24
**supervise (2)**
219:21;222:3
**supervising (1)**
219:20
**support (4)**
8:14;26:15;89:6;
258:23
**supported (1)**
37:18
**supports (1)**
52:10
**Suppose (14)**
10:7;31:1;55:20;
59:4;81:4;85:11;136:9,
11,12,13;137:11;
220:1;248:2;259:21
**supposed (11)**
39:15;114:6;122:14;
146:5;193:5;218:15;
219:21;225:12;270:25;
279:14;284:9
**suppression (1)**
183:21
**supremacy (1)**
238:5
**Supreme (22)**
10:11;29:9;30:4,10;
31:2;119:19,22,23,23,
25;120:2,4,8,18,20;
121:24,25;123:2,7,16;
166:15;238:13
**Sure (87)**
6:16,19,9:7;16:8;
17:7;23:11;35:10;
36:14;43:22;44:21,21;
51:3;52:17;73:24;74:4;
82:22;84:16;85:20;
89:5;91:3;93:24;104:3;
106:9;113:10,19;
132:8,20;137:7,25;
143:1;145:14;153:15,
25,25;156:5,8;157:2,2,
13;158:5,25;159:22;
160:2;161:21;162:20;
165:25;167:7,9;
168:18;169:10;175:18;
178:11;179:21;182:9;
186:7,18,21;187:21;
205:13;207:7;210:13;
211:16;213:23;218:1;
219:8;222:25;225:22;
226:22;234:7,13,14;
239:24;241:14;252:2,
4,7,17;261:6;263:25;
265:3;271:23;275:15;

277:18;279:3;283:7;
287:23;290:25
**surface (1)**
75:23
**surgeon (1)**
104:11
**surprised (3)**
52:16;214:14,18
**surround (1)**
295:18
**suspect (8)**
65:22;69:12;81:16;
222:14;245:13;248:11,
22;249:1
**suspected (1)**
297:17
**Swaine (2)**
8:8;256:23
**Swaithes (1)**
237:13
**swift (1)**
281:21
**swing (2)**
34:3;144:20
**swinging (1)**
113:19
**switch (1)**
267:15
**sympathetic (2)**
238:9,9
**sympathy (1)**
231:13
**system (8)**
11:11;175:19;258:1;
259:19;260:20;266:24;
271:9;281:16
**systemic (1)**
164:20

**T**

**table (10)**
52:17;64:19;173:3;
175:7,11;177:8;
224:25;244:15,19;
245:7
**tactic (1)**
294:24
**talk (58)**
9:8,9;17:10;32:21;
36:2;57:10;64:25;
67:13;68:5;87:19;90:1,
2;94:8;102:15;105:19;
107:23;108:15;109:21;
110:20;116:23;136:11,
12;139:17,19;146:15;
154:5;156:10,22;
157:5,5,6,16,17,20;
158:4,12;168:5;169:3;
173:10;180:13,14,15;
182:11;186:17;187:17;
190:23;193:22;208:16;
212:1,4;215:1,2;

Min-U-Script®

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 335
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(32) stipulated - talk

234:17;258:4;265:12;
273:11;281:14;285:23
**talked (13)**
  68:6;76:8;80:16;
172:8;193:17;195:14;
197:9;200:1;215:11;
226:6;242:8;243:25;
296:7
**talking (38)**
  15:12;17:10;19:9,12;
55:23,25;57:7;79:12;
100:24;107:15,24,24,
25;108:10,16;111:20;
126:1;136:11;142:1;
151:3;156:18;158:11;
193:18;194:5;202:7;
213:19;219:16,17;
220:23;224:16;236:4;
237:18;251:3;252:14;
254:7;275:20,22;
300:11
**tandem (1)**
  261:19
**tantamount (1)**
  58:20
**target (1)**
  169:12
**taught (1)**
  222:10
**tax (1)**
  238:16
**TCC (30)**
  10:4;18:3;24:16;
26:17;36:23;42:2;
44:22;46:15;60:12;
68:12;69:7;70:20;
83:21;96:25;147:7,18,
23;155:5,16;156:24;
170:9;171:19;189:9;
191:6,10;219:11;
236:14;247:13;286:14;
299:23
**teaches (1)**
  265:5
**tee (5)**
  43:19;72:22;185:23;
266:11;289:14
**teed (1)**
  65:25
**teeing (1)**
  188:25
**teeing-up (2)**
  37:21,22
**teleconference (2)**
  301:1,10
**Telegraph (1)**
  119:24
**TelePacific (1)**
  7:9
**telephonic (1)**
  302:5
**telling (13)**
  23:15;83:16;103:18;

111:5;173:2;176:14;
177:15;183:9;228:6;
254:12;259:21;290:23;
294:5
**tells (5)**
  190:1;211:14,15;
261:3;283:3
**ten (13)**
  46:12;47:20,22,24;
87:4;144:7,8;176:17;
191:13;256:13,17;
269:1;286:6
**ten-day (1)**
  131:20
**tens (2)**
  56:3;104:12
**tentative (3)**
  193:9,10,11
**tenth (1)**
  283:4
**ten-week (1)**
  284:11
**term (4)**
  183:3;193:19;214:3;
231:9
**terminate (1)**
  277:14
**termination (1)**
  286:20
**terms (31)**
  20:11;22:19;92:19;
128:23;132:21,21,22;
138:16;140:16;142:21;
148:3;152:5,13;153:6;
157:19;164:9;169:5;
182:4;207:11;213:15;
214:20,21;215:9;
229:2;249:20;250:10;
277:13;284:22;291:2;
293:15;295:18
**territory (1)**
  195:13
**test (8)**
  143:17;183:1;264:9;
265:3;267:12;269:20;
271:10;272:24
**tested (1)**
  219:7
**testify (1)**
  34:24
**testimony (4)**
  219:6;230:1,1,1
**Thanks (2)**
  78:7;235:14
**That'll (2)**
  61:13;251:5
**theories (4)**
  12:10;30:5;116:2;
235:17
**theory (5)**
  11:25;16:20;113:24;
121:20,20
**thereafter (1)**

70:22
**There'd (1)**
  179:13
**therefore (4)**
  16:24;40:8;47:13;
213:3
**there'll (4)**
  69:20;181:3;296:19,
20
**There're (12)**
  9:6;10:5;27:7;31:15;
34:14;38:4;41:20;
43:25;47:3,20;65:15;
109:15
**there've (1)**
  26:1
**thinking (12)**
  93:19;97:17;130:14;
141:11;160:25;167:12;
168:20;219:18,18;
224:11;229:23;249:15
**third (6)**
  78:21;127:13;
147:13;197:13;198:1;
275:16
**Thirdly (1)**
  148:18
**thirteen (7)**
  69:8,9;155:12,15;
195:24;252:3;296:10
**thirty (12)**
  8:24;22:17;122:6;
136:16,24;217:22;
223:21;234:2;261:4;
263:22;285:14;301:10
**thirty-five (2)**
  155:20;261:4
**thirty-page (1)**
  121:6
**though (10)**
  49:1;75:20;107:1;
163:2;215:5;229:3;
242:17;279:1;282:19;
297:1
**thought (32)**
  10:22;19:2;21:18,19;
39:25;99:23;101:23;
123:10;140:2,4;141:2,
22;142:14;146:12;
155:15,19;158:20;
161:10;163:1,15;
181:1;190:14,16;
195:5;225:3,19;250:2;
251:25;274:17;288:3;
297:24;298:1
**thoughts (2)**
  157:1;214:6
**thousands (10)**
  56:3;62:11;69:1,1,
25;70:8;104:12;118:5;
237:21;296:16
**threat (3)**
  106:5;244:6;245:8

**three (37)**
  8:14;16:21;24:12;
25:13;26:3;34:21;
47:16;88:23;140:18,
21;145:15;148:5,25;
156:18;158:14,16;
159:9;165:16;176:7;
191:1;193:16;195:22;
196:2;198:20;206:2,3,
3;209:5,21;218:3;
285:16;286:4,8;
287:17;290:7,9;292:24
**three- (4)**
  121:5;287:11,15;
292:14
**three-and-a-half (6)**
  217:4;290:9;291:3,4,
13;292:24
**three-day (1)**
  41:15
**three-phased (1)**
  10:17
**three-week (6)**
  32:23;41:15;158:22;
169:19;286:16;287:19
**threw (2)**
  107:12;164:2
**throw (2)**
  143:2,24
**thrown (1)**
  223:19
**thumbs (2)**
  270:16,16
**ticking (1)**
  236:10
**timed (1)**
  292:6
**timely (1)**
  203:11
**times (14)**
  9:13;18:17;24:12;
28:9;34:16;41:16;73:5;
89:25;116:25;145:15;
149:22;237:21;244:14;
254:12
**timing (12)**
  110:17;157:19;
170:8;189:1;193:25;
200:4;208:17;246:1;
250:9;285:24;286:22;
287:5
**titled (1)**
  233:22
**titles (1)**
  120:7
**toast (1)**
  81:15
**today (57)**
  7:19;16:15;17:6;
19:19;21:8,11,12;
22:20;23:4,25;34:13;
39:10;42:18;53:14;
63:20;64:7;73:7;75:17;

76:18;77:10;79:12;
86:6,14;88:2,12;90:2;
93:18;109:19,23;
139:14,22;141:1;
145:16;148:24;156:16,
18;158:3;168:13;
169:16;189:9;192:5,
19,20;193:6,14,17;
203:6,7,19;236:10;
240:12;244:12;248:18;
262:23;263:11;271:16;
300:22
**today's (2)**
  64:17;94:11
**to-do (1)**
  145:22
**together (19)**
  67:16;74:1;77:1,6,
20;79:11,13;81:5;83:7;
129:20;165:8,10;
168:10;174:3;195:15;
199:7;224:9;245:7;
247:19
**told (19)**
  87:11;104:6;111:8;
118:17;144:19;153:16;
154:11;177:5,20;
179:22;180:7;225:2,
15;231:17;260:4;
282:6;283:6;291:11;
292:13
**tomorrow (8)**
  29:9;42:19;150:9;
153:3,10;203:20;
205:25;206:1
**took (4)**
  40:4;66:14;97:16;
103:13,15;144:7;
150:13;255:12;259:10;
276:22
**tool (7)**
  167:19;171:5;
227:24;235:2,2;271:6;
276:23
**toolbox (6)**
  232:19,22;235:10;
254:3;276:23,25
**tools (3)**
  167:19;232:19;254:3
**tort (20)**
  13:19;37:2,8;38:19;
56:19;80:21;88:6,17;
92:25;104:23;128:7;
149:9;152:10;183:23;
195:21;197:15,21,24;
231:21;267:14
**tort-claim (1)**
  67:19
**tort-claims (1)**
  186:2
**torts (5)**
  36:21;83:1;97:16;
224:14,14

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 336
of 341

**total (10)**
  8:13;24:16;108:5;
  136:24;142:21;152:6;
  226:11,13;260:2;291:5
**totality (1)**
  75:10
**to-the- (1)**
  183:25
**touch (2)**
  27:7;163:22
**touched (1)**
  174:14
**tout (1)**
  297:12
**towards (2)**
  32:6;245:4
**towel (1)**
  107:12
**tower (1)**
  103:4
**towns (1)**
  22:22
**track (8)**
  84:13;120:6;201:20;
  220:14;230:23;247:8;
  252:19;279:18
**tracking (1)**
  302:7
**tracks (2)**
  226:17;280:6
**trade (1)**
  231:12
**tradeoff (1)**
  231:24
**traditional (7)**
  12:11;35:7;84:17;
  97:24;112:1;138:25;
  203:12
**traditionally (2)**
  290:13,15
**tragedies (3)**
  104:13;130:25;219:3
**tragedy (2)**
  20:25;132:22
**tragic (1)**
  22:22
**trailer (1)**
  62:24
**trained (1)**
  191:16
**transferred (1)**
  179:4
**transformer (1)**
  103:3
**translate (1)**
  290:24
**translates (1)**
  240:19
**transmission (1)**
  103:4
**transparency (1)**
  216:24
**transport (1)**

**5:21**
**trauma (1)**
  130:2
**travel (1)**
  194:11
**treat (2)**
  137:12;297:22
**treated (2)**
  19:7;21:21
**treating (1)**
  172:2
**treatment (1)**
  117:13
**Tredinnick (13)**
  122:19;184:11;
  185:5,7,7,16,19,25;
  186:5,18,21;187:2,4
**tree (3)**
  101:16,19;201:12
**trees (4)**
  164:11,12;201:13;
  202:1
**tremendous (2)**
  23:3;266:5
**trespass (3)**
  90:7,14;200:21
**triable (1)**
  103:1
**trial (240)**
  10:12;16:5;19:3,17,
  18,20;25:5;26:17,18;
  28:6;31:5,15;32:23,23,
  24,25;34:9;35:1,16;
  36:11;39:16;41:15;
  47:8,25;48:2;50:14;
  51:12;53:5;63:4;68:8;
  70:3,5;75:6;83:15;
  94:8,9,14;95:14;96:20;
  97:24;98:9;99:2;
  102:11;104:19;105:12,
  15,21;109:13;112:4;
  113:24;114:14;118:1;
  120:25;121:1;122:14;
  129:5;131:21;133:14;
  136:14,15;138:25;
  139:20,22;140:19;
  143:5,10,16,17,23;
  144:10,15,18,18,20;
  145:11,16;146:1,25;
  147:9,12;148:6;
  152:10,12,14,16;153:3,
  7,11,18;154:25;155:3;
  156:1;159:7;161:12;
  164:3;165:16,22;
  167:19;169:17,19;
  172:1;173:20;178:8;
  179:7,10,11;180:16,22,
  25;187:25;199:24;
  200:3;201:18;202:24;
  205:10;206:6,25;
  207:8,13,14,16,16,24,
  24;208:7,8,17;209:3,
  17;210:7,8;211:12,15,

  22;213:18;214:13;
  215:8,11;217:2,25;
  218:4;219:5;221:10;
  225:4;226:19,24,25;
  227:12;228:15;231:4,
  4;233:18;239:17;
  243:18,19;245:8;
  246:6;247:16;248:18;
  251:4;253:14;255:11,
  18,22;257:5;258:20,
  22;259:8,17,23;260:16,
  20,21,24;261:4,8,12;
  262:13;263:3,9,21,25;
  264:10,17,18;265:8,8,
  17,22;268:3,8,8;269:3,
  6,11,13;271:10;
  272:17;274:6,15,17;
  279:3;281:10,11,12,23;
  282:1;284:3,11,13;
  286:2,15;289:7,9,10,
  14,17,17,19,19,24;
  290:6,7,8,8,17,19;
  291:1,23;292:7,14,16,
  23;293:2,5,16;294:20;
  295:20;296:24,24
**trial-court (1)**
  34:2
**trials (24)**
  36:10;91:6;96:21;
  108:20;125:17;141:18;
  144:7;155:1;156:1;
  175:5;177:9,17;
  196:14,15;201:23;
  226:19;228:21;244:6;
  247:23;267:17;269:12;
  292:6,7;293:22
**tried (24)**
  24:1;53:6;90:16;
  105:17;109:17;113:16;
  141:17,20;142:6,17;
  157:2;198:22;208:21;
  218:1;246:12;257:11;
  259:19;270:10;272:25;
  289:17,18;291:12;
  292:23;295:23
**trier (5)**
  33:11;91:6;102:13;
  112:11;253:17
**tries (1)**
  48:5
**triggers (1)**
  189:17
**trip (1)**
  137:24
**tri-phase (1)**
  116:13
**tripling (1)**
  112:22
**trouble (4)**
  87:12;183:18;
  218:15;266:16
**troubled (1)**
  218:6

**true (28)**
  28:13;29:7;32:11;
  36:5;52:24,25;75:8;
  82:16;92:10;116:10;
  117:7,10;118:21;
  158:20;214:14;222:14;
  227:11;228:1;234:22;
  243:21;245:11;259:12;
  262:25;263:2;278:8;
  293:21;294:2;297:2
**truly (2)**
  67:5;203:10
**Trump (1)**
  150:8
**truncated (8)**
  105:21;106:25;
  107:2;108:22;109:13;
  174:18,23;175:6
**trust (66)**
  24:3,9;36:9;44:25;
  45:6,22;46:11;47:11,
  12,14;49:6,11,12;50:1;
  51:17,18;55:4;58:4,20;
  60:4,10;61:21;62:15;
  116:15;131:10,15;
  132:10,14;133:7,11,12;
  134:6,8,13,14;135:8,
  16;136:3,3,3;137:7,16,
  19,20;138:5;146:7,7;
  148:19;150:23;196:4,
  10,17;197:5,6;198:2,9,
  18,18;271:12;272:8;
  274:25;281:25;282:5;
  291:14,14;296:23
**trustee (7)**
  46:16;47:16;55:7;
  60:9,11;61:13;62:17
**trustees (1)**
  46:14
**trustee's (1)**
  61:13
**trusts (4)**
  46:10,13;57:23;
  197:22
**truth (2)**
  218:5,7
**try (49)**
  5:15;22:25;23:4;
  24:21;40:2;49:13;58:5;
  68:2;77:1;87:12;94:2;
  96:4;98:8;109:11;
  116:11;139:12;146:8;
  149:13;162:8;187:7;
  193:1;196:13;214:25;
  218:3,4;221:20;
  223:12;224:17;241:25;
  242:1;244:21,22,24;
  246:11;254:23;259:18;
  260:19;261:21;265:4;
  276:9;277:8;281:22;
  288:18;289:20;293:23;
  295:8;298:10;299:5,20
**trying (38)**

  10:13;16:8,16;34:17;
  36:10;67:5,25;90:3,6;
  94:5;105:5;111:24;
  125:7;135:20;137:24,
  24;138:2;155:21;
  164:1,25,25;206:14;
  224:15;226:16;234:5,
  12;240:1;244:10,11,
  11;245:4;260:17;
  288:7,8;291:22;
  292:12,17;294:11
**Tubbs (112)**
  9:23;12:13;15:10;
  17:13,21;19:23;26:5,
  13,16;29:11,13;34:6;
  58:5;67:17;72:5,7;
  74:22,24;75:5;88:1;
  108:8,9,11;140:16,24;
  141:16,21;142:17,18,
  20;143:1,5,10,17;
  144:20;145:4;146:21,
  25;147:9;152:9,16,22;
  154:24;158:13;159:7;
  162:8,9,12,14,15,18,
  25;163:2,5,17,22,25;
  164:3,15,22;165:4,6;
  177:19;189:6;193:15;
  195:24;196:16,19;
  198:21,24;199:20,24;
  200:3,5;206:24;
  216:12;218:5;224:15,
  16,17;226:12,16,25;
  228:6,24;230:21;
  231:3;232:15;235:9;
  242:10,12;251:5;
  257:10;258:10;259:18;
  270:6,9;271:7;280:15,
  16;289:17,19;290:9;
  291:2;292:23;293:2,9,
  9;294:7,9;297:11,23
**Tubbs-fire (1)**
  11:19
**Tubbs-related (1)**
  243:15
**tune (1)**
  142:14
**turn (5)**
  170:13;195:23;
  199:16;265:12;266:16
**turning (2)**
  100:18;179:24
**turns (2)**
  17:24;262:13
**tweak (1)**
  76:20
**Tweed (1)**
  66:19
**twelve (6)**
  259:16,17,25;260:2;
  281:13;283:1
**twenty (19)**
  14:6;43:1;86:17;
  89:16;134:6,12,13;

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 337
of 341

136:12,15,25;137:17,
18;201:23;215:13;
217:22;261:8;267:18,
22;293:24
**twenty-billion-dollar (1)**
134:9
**twenty-eight (2)**
179:8;289:1
**twenty-five (1)**
214:2
**twenty-five-year-old (1)**
265:25
**twenty-four (2)**
175:6;204:17
**twenty-million-dollar (3)**
134:12;135:7;283:2
**twenty-odd (2)**
157:9;163:24
**twenty-one (4)**
89:20,21;172:7;
179:8
**twenty-six (1)**
216:9
**twenty-trial (1)**
131:21
**twenty-two (10)**
102:25;103:5,10;
107:4;109:13;113:2,3;
216:10;226:6,9
**twice (6)**
122:2;186:23,25;
195:15;220:25;221:17
**two (92)**
9:25;10:18;17:12;
25:12;28:14,16;31:22;
32:2;36:25;45:9,11;
56:5;57:5,14;63:2;
67:14;68:9;72:14,18;
73:25;74:1;88:25;89:8,
22;90:6,10;96:4,11,18;
97:8;99:2,22,22;
110:25;113:23;116:10,
16,21;119:15;125:21;
126:13;138:24;142:7;
146:2;147:17;148:4,
16;154:3;158:8,9,10,
16;162:25;163:2,8,11;
168:23;172:15;174:2;
186:24,24,25;189:21;
190:19;192:14,21,21,
24,25;201:24;203:25;
206:1;207:25;208:22,
22;209:21,21;215:15;
221:15;230:1;236:14;
243:11;248:3,4,4;
258:4,5;267:13,13;
276:14;284:21;285:21
**two-experts (1)**
229:25
**two-judge (4)**
79:24;80:2;84:23;
147:12
**two-step (1)**

84:24
**two-thirds (1)**
108:11
**two-week (1)**
32:23
**type (10)**
13:8;15:12;57:6;
88:19;107:19;174:21;
253:18;264:10,11;
277:2
**types (7)**
80:18;88:23,25;
95:18;125:19;130:25;
183:22
**typical (5)**
81:19;92:19;132:12;
231:20;249:21
**typically (6)**
46:10;129:17;
135:17;179:8,14;
290:21

**U**

**UCC (3)**
8:17;272:1;300:17
**ultimate (4)**
17:24;26:14;60:8;
258:6
**ultimately (11)**
15:25;20:4;24:23;
49:12;56:22;61:22;
64:7;79:15;85:19;
219:9;271:10
**Um-hum (45)**
12:4,22;14:1,16;
19:13,22;31:3;32:19;
34:4;35:2;39:5,12;
41:5;43:21;47:23;50:2;
57:8;59:6;60:19;65:9;
67:15;70:6;81:3,22;
84:20;85:18;99:5;
101:8;144:9;153:20;
155:23;163:3,7,14;
169:18;235:5;237:19;
239:15;244:3;248:24;
266:14;269:17;270:3;
279:22;289:15
**unable (1)**
111:4
**unambiguously (1)**
45:7
**unanimity (1)**
192:17
**unanimous (1)**
149:3
**unattended (1)**
194:16
**uncertainties (1)**
17:1
**uncertainty (3)**
29:16,19;70:18
**unclear (2)**

47:14;48:7
**uncovered (1)**
250:22
**under (41)**
6:25;9:16;31:13;
34:6;35:13;37:4;38:7;
54:12;60:20;71:12;
72:10;96:1,7;99:7;
105:4;112:1,10;
121:19;148:2;152:11;
157:16;162:22;164:14;
171:5;172:2;174:18;
176:5;182:14;198:12;
205:6;206:12;223:5;
230:20;237:7,8;249:9;
251:12,18;255:24;
284:17;285:13
**underestimated (1)**
282:13
**underfunding (2)**
196:5,11
**underlying (2)**
238:7;247:20
**Understood (16)**
66:2;74:21;112:3;
130:16,18;154:13;
170:4;174:13;175:3;
178:1,15,20;183:5;
213:2;234:25;241:10
**underway (2)**
248:4,5
**undoubtedly (1)**
212:13
**undue (5)**
104:9,12;176:1,2,9
**unduly (3)**
71:2;72:10;231:8
**unenviable (1)**
88:16
**unfairness (1)**
137:1
**unfortunate (1)**
175:16
**unfortunately (2)**
104:15;137:5
**UNIDENTIFIED (6)**
78:24;81:10;118:22;
126:17;190:9;192:10
**uniformly (2)**
38:3,4
**uninfluenced (1)**
295:15
**unique (3)**
9:18;196:23;276:8
**UNISON (2)**
5:7;192:7
**unit (1)**
125:12
**United (2)**
39:20;120:18
**universe (2)**
37:4;115:7
**Unlawful (1)**

232:25
**unless (14)**
11:22;41:17;83:13,
13;151:2;153:23;
170:10;172:25;175:11;
194:14;257:13;277:13;
294:7;298:19
**unlike (2)**
118:24;183:13
**unliquidated (8)**
16:23;182:15,21,24;
183:3,8,16;184:3
**unprecedented (3)**
160:5;224:1,10
**UNR (4)**
125:21,25;126:2,10
**unrepresentative (3)**
264:8;265:22;271:10
**unsecured (3)**
70:23;79:6;279:1
**unsupported (1)**
121:12
**up (120)**
10:17;12:24;19:16;
22:17;24:3;25:15;42:7,
13;43:19;44:13,23;
46:16;47:20,21;49:16;
50:25;54:10;60:7;
65:25;66:1;69:8;70:24;
72:22;74:3;78:6;83:13,
14,19,19;86:20;87:19;
90:11;92:6;94:6,25;
96:19,24;100:20,21;
103:8;107:18;112:8,
12,17;114:10,12;
116:15;117:5;123:3;
135:1;137:24;138:2,9;
140:15;146:6,9;155:4,
5,6,19;159:10;165:7;
166:5,14;168:1;
169:11;177:23;181:10;
185:23;188:4,25;
189:12;190:25;195:13;
198:16;205:15;212:9,
17;214:23;215:18;
216:22;220:4,11;
223:14;224:13,25;
226:10;232:17;235:15;
245:8;249:11;252:11;
255:18;258:21;259:13;
260:16;262:10;263:8;
264:22;266:11;267:20;
270:8,16;277:14;
279:7;280:4;285:14;
286:1,21;287:9,24;
288:7,8,19;289:14;
299:12;300:17,18;
301:2;302:5
**upfront (2)**
30:12;32:1
**uploaded (1)**
7:13
**upon (20)**

15:12;18:6;25:1,17;
32:3;62:11,15;98:9;
198:14;202:1;219:6;
238:7;242:14;251:19;
258:25;263:7;274:10,
12;277:7;279:11
**upsets (1)**
85:22
**upside (1)**
104:19
**upstairs (5)**
40:23;44:24;45:4;
52:3;60:3
**urge (1)**
242:3
**USC (4)**
37:5;38:19;51:8;
189:22
**use (22)**
34:15;41:12;42:13;
44:24;67:18;77:5,5;
142:5;146:10,11;
164:2;193:18,19;
201:7;232:9,14;246:7;
271:23;273:22;283:11;
289:2;294:24
**used (12)**
22:17;34:16;78:2;
139:11;141:17;172:21;
214:3;255:8;289:25;
290:13,16;295:11
**useful (1)**
235:2
**uses (1)**
232:19
**using (8)**
44:13;78:6;130:19,
20;155:2;196:25;
281:18;292:22
**usually (1)**
293:17
**utility (5)**
96:3,9;99:4;123:19;
129:4
**utilize (1)**
224:12

**V**

**vacated (1)**
241:8
**Vaknin (3)**
7:8,8,15
**valid (1)**
156:25
**valuable (5)**
109:15;152:5,18;
242:9;243:7
**valuation (3)**
108:13;227:3;300:19
**value (13)**
11:5;24:7,13;56:10,
11,12;108:10;201:12;

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(35) twenty-billion-dollar - value

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 338
of 341

226:14;245:9,17;
250:3;295:25
**valued (2)**
54:25;57:17
**values (2)**
226:24;289:25
**variable (1)**
14:3
**variables (1)**
33:6
**variation (1)**
269:11
**variety (5)**
21:21;38:2;46:6;
59:17;158:23
**various (1)**
107:6
**vast (2)**
50:13;74:1
**vegetation (3)**
164:8,10;243:1
**venue (2)**
103:2;109:18
**verdict (28)**
47:9;68:9;136:15;
143:19,20;145:4;
152:17;200:20,21;
215:22;243:8;245:9;
247:24;248:7,9;
255:23;256:8;258:9;
264:6;267:14;268:12;
269:19;279:6;284:21;
294:19;295:10,10;
296:20
**version (1)**
179:24
**versus (6)**
77:14;111:14;
193:16;261:20;263:3;
292:7
**vested (1)**
281:18
**vests (1)**
277:1
**vetted (1)**
219:7
**via (1)**
275:16
**viable (2)**
96:1;129:2
**Victim (14)**
62:21,24;74:3;75:22;
113:21;129:8;132:9,
14,15;136:13;137:16;
202:12;229:1;284:21
**victims (57)**
20:19;21:7;23:1;
24:10,10;41:24;50:13;
60:7,21;63:2;70:23;
74:2,5;79:17;89:6;
93:6,13;104:20,21,23;
109:14;111:3;116:14;
132:16,19;137:4,5,15;

148:1;152:10;163:17;
170:22;177:2,11;
198:1;202:4;206:14;
210:17;214:2;216:4;
223:23;225:15;231:11,
21;238:10;275:6;
278:13;281:4,13,25;
294:22,23;295:2;
296:13,16;298:4,11
**victim's (2)**
197:23;202:10
**video (1)**
251:2
**videos (1)**
130:9
**view (41)**
17:9;22:13;37:16,18;
40:11,17,20;42:15,24;
68:13;72:12,21;76:13;
93:11;124:16,24;
128:11;131:9;135:21;
137:15;140:23;158:13;
186:12;188:25;193:11;
196:9;200:8,9;202:19;
205:24;213:16,16;
216:25,25;243:12;
275:4;277:6;278:14,
25;279:2;296:1
**viewed (1)**
11:15
**views (4)**
43:10;180:12,15;
225:16
**violated (1)**
96:13
**violates (1)**
232:4
**virtually (2)**
14:4;63:22
**vision (1)**
113:19
**Volkswagens (1)**
106:10
**volume (1)**
224:2
**voted (1)**
198:1
**votes (1)**
50:1
**voting (3)**
91:22,25;94:4

---

# W

**wager (1)**
259:6
**Wait (11)**
8:3;9:3;63:3,15;
97:11,11;125:10;
248:6;265:23;279:24;
283:19
**waiting (4)**
225:10,21;228:23;

231:19
**waivable (1)**
233:11
**waive (2)**
148:14;233:8
**walk (5)**
47:10;72:5;226:15;
228:14;246:9
**Walker (1)**
291:17
**walking (1)**
250:5
**Walkup (1)**
110:6
**wand (1)**
226:4
**wants (13)**
87:22;116:15;135:2;
151:3;169:20;180:13;
182:5;184:5,8;191:11;
233:25;246:25;297:12
**warts (1)**
276:22
**waste (7)**
21:10;77:10;121:24;
235:7,20;255:12;256:1
**wasting (1)**
177:16
**watch (1)**
171:4
**watching (1)**
130:9
**wave (1)**
87:14
**way (107)**
6:21;9:19;10:4;
11:10;19:3;21:10,15,
18;22:25;27:5;34:13;
39:9;40:14;43:11;
44:12;46:10,11,22;
50:4;54:12;55:14;
59:20,22;63:13;64:16,
18;72:15;75:23;76:1,
20;77:19;79:16;85:24;
91:15;93:22;94:3;
98:10;99:21;108:17;
115:24;116:9,10;
121:7,23;122:9,10;
123:25;129:7;133:14;
134:16,18,20;135:17;
136:23;137:9,10,25;
138:11,20;141:4,5,21;
142:6,15;146:5;
149:11;150:25;153:12,
23;157:12;158:17;
159:12;165:19;175:21;
177:18;186:3;189:25;
190:1;196:25;200:8;
206:23;216:17;227:14;
229:22;230:11,11,14;
231:11,19;232:13;
238:25;242:16;248:9;
251:21;257:20;266:18;

268:20;277:14;278:8;
279:6;284:7;286:9;
294:21;297:19;300:5;
302:10,11
**ways (9)**
21:22;59:18;68:10;
73:3;133:13;191:2;
243:11;280:17,20
**weaker (1)**
242:22
**WEDNESDAY (1)**
5:1
**week (15)**
26:5,6;30:4;188:8;
191:8;192:5;208:22;
220:11;224:14;235:4;
237:21;287:16;290:21,
22,23
**weeks (38)**
75:7;99:22;112:9;
122:23;123:3;140:18,
21;159:9;190:19;
206:2,3,3;207:25;
208:22;209:6;211:17;
213:25;215:18;217:4;
259:9,16,17,18,19,25;
260:2,3;286:4,8;
287:17;290:7,9,9;
291:3,4,10,13;292:24
**weeks' (1)**
34:21
**weigh (2)**
41:3;191:11
**weighed (1)**
69:11
**weight (1)**
144:11
**welcome (4)**
35:11;95:1;180:12;
181:5
**welcomed (1)**
25:7
**well-determined (1)**
89:2
**Welles (2)**
141:4,5
**well-represented (1)**
73:25
**Wells (1)**
141:8
**well-settled (1)**
88:22
**well-versed (1)**
9:17
**weren't (6)**
112:2,9;116:4;
139:11;195:5;287:13
**West (1)**
119:24
**Western (1)**
160:7
**whacked (1)**
69:12

**whatever's (1)**
302:11
**What's (23)**
6:13;9:3;45:2,2;
47:14;48:7;76:17;
77:13;87:15;100:25;
109:9;114:11;115:17;
127:3;139:21;152:18;
154:4;189:17;190:3;
207:8;208:8;209:13,
18,18;215:13;216:23;
220:4,7;221:20;222:5;
225:3;248:6;250:7;
259:23;278:25;279:2;
297:25
**wheel (1)**
115:10
**whenever (2)**
158:3;209:24
**when's (3)**
65:7,7,8
**whereas (1)**
132:15
**where's (1)**
7:18
**Whereupon (1)**
302:16
**whichever (3)**
34:13;59:23;261:3
**whipsaw (1)**
108:19
**whip-sawing (1)**
109:11
**white (1)**
248:13
**who'd (1)**
88:8
**whoever's (1)**
291:22
**whole (20)**
18:22;27:6;31:10;
39:7;49:4;85:10;
108:17;131:3;133:23;
145:18;156:23;181:8;
222:22;231:10;232:5;
253:9;284:3;291:6,7,8
**whomever (4)**
42:12;268:6,21,22
**who's (10)**
38:5;60:9;75:16;
76:8;94:12;104:11;
119:13;186:18;214:24;
236:13
**whose (3)**
101:2,6;279:11
**who've (1)**
54:9
**wildfire (12)**
21:2,7;23:1;42:16;
60:6;61:22;79:17;
85:17;177:11;211:6;
273:15;281:25
**wildfires (5)**

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 339
of 341

**willing (5)**
148:6,19;237:25;
238:2;244:21
**Willkie (2)**
151:7;241:24
**Willoughby (1)**
181:11
**win (9)**
31:4;121:1,19;
159:16,25;265:9,17;
269:2,11
**wind (2)**
258:21;267:20
**window (2)**
158:22,23
**winning (3)**
14:8;122:3;231:7
**wins (4)**
68:10;162:19;268:5;
270:24
**wish (6)**
7:4;83:11;105:12;
211:7;288:6;293:21
**wishes (2)**
110:1;132:10
**withdraw (6)**
39:4;11;40:13;
150:10,12;151:1
**withdrawal (1)**
40:4
**withdraws (1)**
81:20
**within (18)**
11:11;33:20;36:24;
44:25;48:8;68:1;89:22;
122:23;179:10;206:1,
7;233:3;236:16;286:4;
290:9;291:13;292:24;
299:7
**without (25)**
27:13;53:18;55:13;
90:3,22;91:7;94:21;
99:18;101:25;103:10;
114:19;121:1;148:7;
150:14;192:17,25;
202:8;204:9;211:10;
251:20;255:21;281:1;
287:5;297:13;299:17
**witness (9)**
41:14;98:6;102:14,
15;172:15;214:17;
291:25,25;292:1
**witnesses (7)**
97:8;117:4;139:5,17;
157:6;172:15;281:3
**women (1)**
6:4
**won (6)**
68:23,23;93:1;
143:22;144:19;269:12
**wonder (1)**

221:20
**wonderful (4)**
170:7;171:5,5;216:5
**wondering (2)**
21:13;183:18
**Wong (1)**
214:24
**wood (4)**
34:17,21;113:8;
203:4
**word (13)**
128:19;130:19;
141:10;142:5;171:17;
193:10;222:3;232:7,
19;256:25;257:1;
281:18;298:14
**words (32)**
10:1,12;28:4;36:25;
37:11;38:18;59:7;61:1;
63:21;65:2;84:15;86:2;
92:1;120:24;126:8;
130:6;148:3;193:13;
200:3;229:21;231:17;
233:2;243:16;248:16;
264:19;265:6,6;
272:14;273:22;278:9;
279:3;293:1
**work (20)**
5:15;35:13,14;46:10;
77:2,8,22;79:17;82:14;
86:5;133:14;135:17;
136:23;138:11;156:19;
158:23;184:25;223:17;
267:14;299:4
**workaround (1)**
205:19
**worked (3)**
7:2;264:9;268:25
**working (8)**
46:11;60:12;118:6;
142:24;147:8;171:4;
186:8;300:20
**works (8)**
16:9;41:8;137:9;
138:1;190:1;234:12;
282:25,25
**world (10)**
9:19;26:18;36:20;
56:24;97:21;106:14;
111:25;172:23;228:3;
236:6
**worlds (4)**
70:3,4;258:9;260:25
**worried (2)**
74:6,7
**worry (4)**
32:20;76:4;222:6;
243:20
**worth (5)**
34:21;47:10;62:1;
186:10;214:6
**wrinkle (1)**
169:7

**write (1)**
219:14
**writing (1)**
123:1
**written (3)**
192:24;301:19,22
**wrong (19)**
27:15;29:20;35:12;
57:21;82:12;92:1;
93:24;98:19,21;119:8;
134:21;219:5;229:22;
253:15;268:18,20;
278:9;287:23;288:12
**wronged (1)**
219:4
**wrongful (6)**
36:20;43:24;129:6;
148:21;202:9,12
**wrongful-death (2)**
37:9;40:15
**wrote (2)**
140:14;272:7

**Y**

**year (6)**
70:22;116:20;208:8;
210:19;211:4;278:12
**year-and-a-half (1)**
126:4
**year-old (1)**
266:1
**years (14)**
16:21;35:13;92:8;
110:25;113:23;116:16;
176:7,11,13;233:13;
236:12,13;269:1;
284:21
**Yep (2)**
48:1;97:12
**yesterday (14)**
15:16;21:12,20;
22:20;23:7;26:12;
79:16;190:19;192:19;
225:7;229:24;273:19,
21;299:4

**Z**

**zero (12)**
13:2;14:6;17:2;
18:18;19:1;33:16,17;
91:19;143:25;159:13,
17;265:19
**zinc (1)**
297:17

**1**

**1 (9)**
9:20,20;17:10;43:10;
119:18;123:23;186:10;
191:1;227:3

**1:10 (1)**
190:11
**10.5-billion-dollar (1)**
177:1
**10:51 (1)**
87:9
**100,000 (5)**
47:10,19,21;48:4;
56:19
**1040 (1)**
82:11
**1054 (18)**
20:20;21:6;60:6;
67:9;70:16;82:12;
172:4;173:4;176:25;
216:3,4;223:5;225:16;
232:3;277:6,22;
278:13,16
**1054s (1)**
225:14
**106 (1)**
290:5
**107 (1)**
289:20
**10Q (3)**
141:4,6,8
**11 (2)**
19:5;87:8
**11:08 (1)**
87:9
**120 (11)**
179:10;205:23;
206:6,7;208:3;209:24;
211:21;217:25;258:12,
24;289:20
**13 (1)**
38:7
**130 (1)**
112:18
**14 (1)**
5:1
**1411 (6)**
51:8;53:16,17;54:4,
10;189:22
**143 (1)**
126:3
**14th (1)**
177:25
**150- (1)**
201:13
**1504 (2)**
82:12,12
**157 (3)**
93:23,25;127:14
**157b (1)**
37:5
**157b2 (5)**
38:19;54:12;57:10,
25;128:7
**157b2b (1)**
129:25
**157b5 (2)**
51:7;52:21

**17 (1)**
21:20
**18 (1)**
21:21
**180 (1)**
205:21
**1940 (1)**
123:7
**1976 (1)**
113:15
**1992 (1)**
126:4
**1994 (2)**
125:6,22
**19th (3)**
192:5,9;300:3
**1st (1)**
59:12

**2**

**2 (23)**
9:20,22;15:10,25;
17:10,12;29:11,12;
31:5;32:18;34:14;37:6,
7;43:10;76:22;122:18;
162:9,18;163:12;
164:3,15;189:6;286:6
**2:30 (1)**
190:5
**2:37 (1)**
190:11
**20 (2)**
89:25,25
**200,000 (1)**
201:13
**2017 (2)**
22:22;42:16
**2018 (2)**
22:22;42:16
**2019 (1)**
5:1
**2020 (3)**
161:1;175:8;177:10
**20th (3)**
74:3;191:9;299:24
**21 (1)**
124:23
**21st (1)**
75:23
**22 (1)**
286:13
**24 (2)**
286:8;288:1
**24th (1)**
75:24
**250 (1)**
109:6
**27th (6)**
190:20;191:5;193:8,
20;194:12;299:14
**28 (4)**
37:5;38:19;51:7;

Min-U-Script®

Case: 19-30088   Doc# 3563   Filed: 08/15/19   Entered: 08/15/19 18:13:37   Page 340
of 341

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

(37) willing - 28

189:22
**29th (2)**
59:8;276:15

## 3

**3 (16)**
12:17,19;15:25;
17:11;19:17,24;20:4;
22:9;43:8;122:18;
156:22;162:10,16,23;
164:18;189:7
**3:57 (1)**
256:18
**30 (3)**
175:7;177:10;276:9
**30,000 (1)**
206:14
**300 (1)**
109:6
**300,000 (1)**
24:7
**30th (9)**
21:12;67:7,23;
153:22,23;171:24;
172:2;210:19;276:12
**3421 (1)**
181:15
**36 (2)**
237:7,15
**36,000 (1)**
216:11
**36a (2)**
204:1;205:6
**36f (1)**
237:8

## 4

**4:13 (1)**
256:18
**40- (2)**
13:14;14:17
**40,000 (1)**
206:14
**400 (1)**
89:25

## 5

**5 (1)**
128:7
**5,200 (2)**
170:22;180:24
**5,600 (1)**
216:11
**5:05 (1)**
300:9
**5:06 (1)**
302:16
**50,000 (3)**
13:14;14:18;206:14
**500 (1)**

109:8
**500,000 (3)**
14:9;41:23;48:3
**500,000-dollar (1)**
48:3
**502 (20)**
9:16;18:14,15;34:6;
35:14;112:1;139:2;
171:5;172:22;173:2;
177:5,18;180:6;181:4;
216:15;228:3;230:20;
267:8;269:15;276:23
**502b (1)**
9:22
**502c (6)**
71:12;106:13,17,25;
175:25;182:14
**503b9 (3)**
6:11,25;7:4
**506 (1)**
126:3
**513 (1)**
126:3
**522 (3)**
126:17,18,19
**522b (1)**
126:25
**522b11 (1)**
126:20
**522d11 (1)**
126:24
**523d11b (1)**
126:15
**523d11d (1)**
126:16
**571 (1)**
129:25

## 6

**6/30 (1)**
281:22
**625 (1)**
129:25
**689 (1)**
205:21
**694 (1)**
205:21

## 7

**7 (3)**
13:18;19:5;77:13
**7.5 (1)**
109:2
**700 (1)**
109:8
**773 (1)**
297:16
**79 (1)**
92:15
**7-and-a-half (1)**
24:8

**7th (2)**
159:6;169:17

## 8

**8.5 (1)**
23:13

## 9

**9:30 (4)**
5:1;190:20;191:5;
299:14
**96 (1)**
290:5

Case: 19-30088    Doc# 3563    Filed: 08/15/19    Entered: 08/15/19 18:13:37    Page 341
of 341