

Signed and Filed: August 16, 2019

_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Bankruptcy Case No. 19-30088-DM |
| PG&E CORPORATION, | |
| - and - | Chapter 11 |
| PACIFIC GAS AND ELECTRIC COMPANY, | Jointly Administered |
| Debtors. | |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | |
| * All papers shall be filed in the Lead Case, No. 19-30088 (DM). | |

## MEMORANDUM DECISION REGARDING
## MOTIONS TO TERMINATE EXCLUSIVITY

I.     INTRODUCTION

    Before this court are two motion to terminate Debtors' exclusivity periods for filing a Chapter 11 Plan and Disclosure Statement. The Ad Hoc Committee of Senior Unsecured Noteholders filed their motion on June 25, 2019 (dkt. #2741). The Ad Hoc Group of

-1-

Subrogation Claim Holders filed their motion on July 23, 2019 (dkt. #3147) (together the "Motions"). The Motions came on for hearing on August 13, 2019 and then were submitted. For the reasons that follow, the Motions will be DENIED.

This court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157(b) and 1334(b). These are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

Pursuant to 11 U.S.C. § 1121, a debtor has an exclusive right to file a plan within the first 120 days of a bankruptcy case.[1] The Bankruptcy Court may modify this time period for cause. 11 U.S.C. § 1121(d)(1). "Cause" is not defined in the Bankruptcy Code, and is a fact-specific inquiry largely within the discretion of the bankruptcy court. *See In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002*); In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (using a nine factor test to consider whether cause had been established).

The court granted Debtors' first motions to extend exclusivity on May 22, 2019 (dkt. #2226). The Motions now seek to terminate the first extension periods before they end on September 26, 2019 if no plan is filed by Debtors.

II.     DISCUSSION

When the Motions were filed, perhaps even before that when the court first considered extending exclusivity, it seemed likely that it would be terminated for a variety of reasons, not the least of which is that this court did exactly that in the previous Pacific Gas and Electric Company bankruptcy and has done it on other occasions with other debtors. Further, comments from many parties as well as the California Public Utilities Commission and the Governor's office were that competition is best facilitated with the termination of exclusivity.

More important to the court, the parties, the fire victims, and all other concerned citizens of Northern California, is to find a clear path to reach the goal of compensation for the fire victims who are involuntary creditors of these debtors as well as for the contractual claims of their voluntary creditors.

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

Even during the arguments on the Motions on August 13, 2019, nothing changed and it seemed likely that the court would open the door at least to the proponents of the two Motions. That is so notwithstanding the August 12th filings by Debtors of their Debtors' Supplemental Statement, etc. that outlines their exit strategy (Dkt. No. 3512).

On further reflection, not only because of the exigencies of these cases but because of the statutory presumption in favor of debtors' exclusivity (at least for a time), coupled with the prospective timetable now laid out in Debtors' Supplement Statement, persuades the court that the best choice is to leave the Debtors' exclusivity in place for them to proceed with their proposed resolution.

The two competing plans reflected in the Motions and the outline of theirs by the Debtors all involve what looms on the horizon as a complicated process to estimate the enormous amount of money that must be dedicated to the compensation of the fire victims and their insurers as a matter of fairness, compliance with the Bankruptcy Code's order of priorities, and the mandate of recent California legislation, AB 1054.

Competing plans are tempting, and no doubt produce a feast for lawyers, accountants, investment bankers and others, not to mention the intellectual challenges to the court. But the inescapable fact is that the fire victims and their insurers should not need to wait for conclusion of expensive, lengthy and uncertain disputes that only indirectly concern them. Bankruptcy issues such as the absolute priority rule, cramdown of equity, super priorities and impairment. are all exciting challenges for bankruptcy practitioners but they have little or nothing to do with compensating victims of enormous and unimaginable tragedies. If there were no victims to attend to, then perhaps the battles that would be fought would be the bankruptcy equivalent of a proxy fight or a hostile takeover. That outcome, however, is of no benefit to the victims and is antithetical to the court's and other parties' repeated stated goal of compensating the victims.

At the start of the hearing on August 14th, the court restated that number one priority and goal. Proponents of the two competing plans and those in favor of opening the door to even more competition reminded the court of its "credible and confirmable" standard for consideration of termination of exclusivity. The Ad Hoc Committee of Senior Unsecured Noteholders and the Ad Hoc Group of Subrogation Claim Holders have both met those

-3-

standards. The court has no doubt that their hard bargaining would result in refinement if not resolution of some of the contests described above  That the outcome might have produced competing accepted and confirmed plans, resulting in U.S.C. § 1129(c)'s rarely invoked court consideration of the preferences of creditors and equity security holders in determining which plan to confirm.

At the present time there is no purpose in engaging in such an exercise.  The Debtors have placed before all a proposal that, if coaxed and guided to maturity should result in a proper outcome for all creditors without needing to deal with all of these other issues.

For all the foregoing reasons, and with thanks to the Ad Hoc Committee of Senior Unsecured Noteholders and to the Ad Hoc Group of Subrogation Claim Holders for their enormous efforts and contributions, the court has decided to exercise its discretion and leave those efforts unfulfilled while the Debtors proceed with theirs.   That is the best of the choices presented.

The court is concurrently issuing separate orders denying each of the Motions for the reasons stated in this memorandum decision.

**\*\*\* END OF MEMORANDUM DECISION\*\*\***

**COURT SERVICE LIST**