WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐Affects Pacific Gas and Electric Company
☒ Affects both Debtors

** All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Bankruptcy Case No. 19-30088 (DM)
Chapter 11
(Lead Case) (Jointly Administered)

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363 AND 105(a) AND FED R. BANKR. P. 2002 FOR AUTHORITY TO ESTABLISH DE MINIMIS ASSET SALE PROCEDURES**

**"DE MINIMIS ASSET SALE PROCEDURES MOTION"**

Date: Sept. 10, 2019
Time: 9:30 a.m. (Pacific Time)
Place: United States Bankruptcy Court
Courtroom 17, 16th Floor
San Francisco, CA 94102

**Objection Deadline**: Sept. 3, 2019
4:00 p.m. (Pacific Time)

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 363 and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order authorizing and establishing expedited procedures (the "**De Minimis Asset Sale Procedures**") to (a) sell or transfer in the ordinary course of the Debtors' business and without further order of the Court certain assets, including any rights or interests therein, that are no longer of any use to the Debtors' business and are of relatively *de minimis* value compared to the Debtors' total asset base (the "**De Minimis Assets**"; and the sales of such De Minimis Assets, the "**De Minimis Asset Sales**") and (b) pay all necessary fees and expenses incurred by the Debtors in connection with the De Minimis Asset Sales. In support of the Motion, the Debtors submit the declaration of John Boken, filed contemporaneously herewith.

A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

# TABLE OF CONTENTS

I. Jurisdiction ........ 6

II. Background ........ 6

III. The De Minimis Asset Sale Procedures ........ 6

IV. Basis for Relief Requested ........ 11

a. The Court Should Approve the Proposed De Minimis Asset Sale Procedures Pursuant to Sections 363 and 105(a) of the Bankruptcy Code as a Sound Exercise of the Debtors' Business Judgment ........ 11

b. The De Minimis Asset Sale Procedures Satisfy the Notice and Hearing Requirements Under Section 363(b)(1) ........ 14

c. The Proposed De Minimis Asset Sale Procedures Satisfy the Requirements of Section 363(f) and Allow the Debtors to Sell or Transfer Property Free and Clear ........ 15

V. Request for Bankruptcy Rule 6004 Waivers ........ 17

VI. Notice ........ 17

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870 (9th Cir. 2008) ..... 13

*In re Borders Grp., Inc.*, 453 B.R. 477 (Bankr. S.D.N.Y. 2011) ..... 14, 17

*In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) ..... 14

*In re Commercial Mortg. & Fin. Co.*, 414 B.R. 389 (Bankr. N.D. Ill. 2009) ..... 13

*In re Enron Corp.*, Case No. 01–16034 (AJG), 2003 WL 21755006 (Bankr. S.D.N.Y. July 28, 2003) ..... 17

*In re First Prot., Inc.*, 440 B.R. 821 (B.A.P. 9th Cir. 2010) ..... 12

*United States ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592 (M.D. Tenn. 1990) ..... 14

*In re Integrated Res., Inc.*, 147 B.R. 650 (Bankr. S.D.N.Y. 1992) ..... 15

*In re Johns-Manville Corp.*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986) ..... 14

*In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) ..... 14

*Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.)*, 184 B.R. 74 (B.A.P. 9th Cir. 1995) ..... 14

*Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414 (N.D. Ill. 1995) ..... 14

*Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*, 114 F.3d 379 (2d Cir. 1997) ..... 13

*Meoli v. Am. Med. Serv. of San Diego*, 287 B.R. 808 (S.D. Cal. 2003) ..... 12

*In re MF Glob. Inc.*, 467 B.R. 726 (Bankr. S.D.N.Y. 2012) ..... 17

*In re MF Glob. Ltd.*, 535 B.R. 596 (Bankr. S.D.N.Y. 2015) ..... 15

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

*Morgan Olson L.L.C. v. Frederico* (*In re Grumman Olson Indus., Inc.*), 467 B.R. 694 (S.D.N.Y. 2012) ... 15, 16

*In re Nellson Nutraceutical, Inc.*, 369 B.R. 787 (Bankr. D. Del. 2007) ... 13

*In re PW, LLC*, 391 B.R. 25 (9th Cir. BAP 2008) ... 17

*In re Roth Am., Inc.*, 975 F.2d 949 (3d Cir. 1992) ... 12, 13

*Watford v. S. Cent. Farm Credit, ACA (In re Watford)*, 159 B.R. 597 (M.D. Ga. 1993) ... 13

**Statutes**

11 U.S.C. § 102(1) ... 15, 16

11 U.S.C. § 105(a) ... 15

11 U.S.C. § 363 ... 7, 8, 9, 11, 12, 13, 14, 15, 17

11 U.S.C. § 1102 ... 16

11 U.S.C. § 1107 ... 7, 12

11 U.S.C. § 1108 ... 7

28 U.S.C. § 157(b) ... 7

28 U.S.C. § 1334 ... 7

28 U.S.C. § 1408 ... 7

28 U.S.C. § 1409 ... 7

**Other Authorities**

Fed. R. Bankr. P. 1015 ... 7

Fed. R. Bankr. P. 2002 ... 16, 18

Fed. R. Bankr. P. 5011-1 ... 7

Fed. R. Bankr. P. 6004 ... 18

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 ... 7

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

### III. THE DE MINIMIS ASSET SALE PROCEDURES

The periodic sale of De Minimis Assets is a necessary, ordinary-course element of the Debtors' business and is beneficial to the Debtors' estates.[1] Prior to the Petition Date, in the ordinary course of

[1] The sale of Real Property Interests, including de minimis Real Property Interests, is not covered by this Motion. The Debtors separately filed a *Motion of Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a) for an Order (i) Authorizing Debtors to (a) Sell, Transfer, Lease or Otherwise Encumber Real Property, (b) Enter into Acquisition, Lease, License, and Permit Agreements Relating to Third-Party Property, (c) Honor Eminent Domain Settlements, in each Case, Subject to Certain Parameters, and*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

business, the Debtors regularly entered into transactions to sell De Minimis Assets that were no longer needed or that had otherwise become obsolete and were not necessary or useful to continue the Debtors' electricity and natural gas operations. These De Minimis Assets include, without limitation, furniture, fixtures, equipment, streetlights, transformers, surplus material from warehouses, scrap metal, vehicles, and other various assets. In addition, prior to the commencement of the Chapter 11 Cases, the Debtors also entered into transactions, from time to time, to sell certain De Minimis Assets relating to their natural gas gathering delivery and electric distribution businesses that were no longer necessary for the operation of their business. The Debtors submit that the continuation of these De Minimis Asset Sales during the Chapter 11 Cases is a necessary and appropriate component of their operations and is in the best interest of the Debtors, their creditors, and all parties in interest.

Accordingly, by this Motion, the Debtors are seeking authority to establish the De Minimis Asset Sale Procedures set forth below to allow them to continue these ordinary course sale transactions, consistent with their prepetition practices, to sell or transfer certain De Minimis Assets, including any rights or interests therein, with the sale price equal to or less than $15,000,000, as calculated within the Debtors' reasonable discretion, in any individual transaction or series of related transactions, to a single buyer or group of related buyers, whether by private sale or by auction, without the need for further Court approval and, to the extent applicable and as set forth below, with liens attaching to the proceeds of such sale or transfer with the same validity, extent, and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer. The Debtors are also seeking authority to pay all necessary fees and expenses incurred in connection with the sale or transfer of De Minimis Assets, including, but not limited to, commission fees to agents, auctioneers, and brokers.

As set forth in the Boken Declaration, the Debtors believe that most of the De Minimis Asset Sales are part of the ordinary course of the Debtors' business and, therefore, permitted under section 363(c) of the Bankruptcy Code without the need for Court authority. The Debtors also believe, however, that potential purchasers may nevertheless request confirmation that the De Minimis Asset

---

*(ii) Granting Related Relief* [Docket No. 1004] (the "**Real Property Motion**"). The Court approved the Real Property Motion on April 25, 2019 [Docket No. 1676].

Sales are authorized by the Bankruptcy Court. Further, the Debtors anticipate that it is possible that some De Minimis Asset Sales may constitute transactions outside the ordinary course of the Debtors' business, thereby requiring this Court's approval pursuant to section 363(b)(1) of the Bankruptcy Code.

Obtaining separate Court approval for each De Minimis Asset Sale would be administratively burdensome to the Court and costly to the Debtors' estates and could eliminate or substantially undermine the economic benefit that would be realized from such sales by the Debtors' estates. In some instances, the usual process for obtaining Court approval for such sales may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time. Accordingly, to alleviate the cost and delay of filing a separate motion for each proposed De Minimis Asset Sale and to eliminate any uncertainty regarding the Debtors' authority to consummate certain sales, the Debtors seek approval of the De Minimis Asset Sale Procedures set forth herein.

To the extent applicable, pursuant to the De Minimis Asset Sale Procedures, the Debtors would be permitted to sell De Minimis Assets that are encumbered by liens or encumbrances only if the transaction satisfies at least one of the five (5) enumerated requirements of section 363(f) of the Bankruptcy Code. Furthermore, the De Minimis Asset Sales would be subject to any applicable restrictions under the Debtors' Debtor-in-Possession Credit Agreement, dated as of February 1, 2019, among Pacific Gas and Electric Company as borrower, PG&E Corporation as guarantor, JPMorgan Chase Bank, N.A. (the "**DIP Agent**"), as administrative agent, and the financial institutions from time to time party thereto (the "**DIP Credit Agreement**"), as approved by the Court by final Order dated March 27, 2019 [Docket No. 1091] (the "**Final DIP Order**"). Pursuant to the procedures set forth below, if the Debtors sell or transfer any De Minimis Assets that are encumbered by liens, such liens would attach only to the proceeds of the sale or transfer with the same validity, extent, and priority as immediately prior to the De Minimis Asset Sale.

Accordingly, the Debtors propose the following De Minimis Asset Sale Procedures:

**1) <u>De Minimis Asset Sales Less than or Equal to $1 million</u>:**

**a.** The Debtors are authorized to sell or transfer any De Minimis Asset for total purchase price that is less than or equal to $1 million (each sale, a "Non-Noticed De Minimis Asset Sale"), without further Court approval and without providing notice of the Non-Noticed De Minimis Sale to any party, whether by private sale or by auction. The

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Debtors are further authorized to take any actions that are reasonable and necessary to close the Non-Noticed De Minimis Sale and obtain the sale proceeds and pay any necessary fees and expenses incurred in connection therewith, including paying all reasonable commissions and fees to third-party sale agents, or auctioneers in connection with the Non-Noticed De Minimis Sale; and

**b.** If any of the De Minimis Assets to be sold or transferred by the Debtors pursuant to a Non-Noticed De Minimis Asset Sale are encumbered by liens (other than assets encumbered solely by liens granted in connection with the DIP Credit Agreement), the Debtors will seek to obtain the consent of the applicable lienholder(s). If the Debtors are unable to obtain the consent of the applicable lienholder(s), the Debtors may seek to sell or transfer the encumbered De Minimis Assets as a Noticed De Minimis Sale (as defined below) in accordance with the procedures below.

**2) De Minimis Asset Sales Greater than $1 million but Less than or Equal to $15 million:**

**a.** For any sale or transfer of De Minimis Assets where the total aggregate purchase price is greater than $1 million but less than or equal to $15 million (a "**Noticed De Minimis Asset Sale**"), the Debtors shall file with the Court a notice of such transaction (the "**Transaction Notice**"), substantially in the form annexed hereto as **Exhibit B** and serve a copy thereof by electronic mail, facsimile, overnight courier, or hand delivery on the Core Notice Parties (as defined below). As set forth on **Exhibit B**, each Transaction Notice will include (i) a description of the De Minimis Asset proposed to be sold or transferred, (ii) the identity of the purchaser or transferee and any relationship such party has with the Debtors, (iii) the identities of any lienholder(s) known to the Debtors as holding liens on or with respect to the De Minimis Asset, (iv) the material economic terms and conditions of the proposed De Minimis Asset Sale (which may be provided by attaching the applicable contract or contracts to the Transaction Notice), (v) any proposed commission, fees, or other similar expenses to be paid in connection with such transaction, and (vi) instructions regarding the procedures for asserting an objection to the Noticed De Minimis Asset Sale;

**b.** The Debtors shall serve any Transaction Notice on (i) counsel to the DIP Agent, (ii) counsel to the Creditors Committee, (iii) counsel to the Tort Claimants Committee (iv) the Office of the U.S. Trustee for Region 17, and (v) any other creditors holding liens on the De Minimis Assets subject to the proposed transaction (collectively, the "**Core Notice Parties**"). The Debtors shall not be required to serve any Transaction Notice on any other parties and no further or additional notice of the proposed Noticed De Minimis Asset Sale shall be required;

**c.** The Core Notice Parties shall have fifteen (15) calendar days after service of a Transaction Notice to file and serve any objections to a Noticed De Minimis Asset Sale (the "**Notice Period**");

**d.** If any material economic term of a Noticed De Minimis Asset Sale is amended or revised after transmittal of the Transaction Notice, but prior to the expiration of the Notice Period, the Debtors shall serve a revised Transaction Notice on the Core Notice Parties describing the material economic terms to be amended or revised. If a revised

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Transaction Notice is required, the Notice Period shall be extended for an additional five (5) calendar days;

**e.** Any objection to a Noticed De Minimis Asset Sale (each, an "**Objection**") must: (i) be in writing; (ii) set forth the name of the objecting party; (iii) provide the basis for the Objection and the specific grounds therefor; (iv) be filed electronically with the Court; and (v) be served on (1) the Debtors, (2) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. and Jessica Liou, Esq.), as counsel to the Debtors, and (3) Keller & Benvenutti LLP, 650 California Street, Suite 1900, San Francisco, CA 94108 (Attn: Tobias S. Keller, Esq. and Jane Kim, Esq.), as co-counsel to the Debtors, all in accordance with the procedures set forth in the *Second Amended Order Implementing Certain Notice and Case Management Procedures* [Docket No. 1996] (the "**Case Management Order**"), so as to be received on or before 4:00 p.m. (Pacific Time) on the last day of the Notice Period;

**f.** If an Objection is properly filed and served: (i) the Objection shall be deemed a request for a hearing on the Noticed De Minimis Asset Sale and the Objection shall be heard at the next scheduled omnibus hearing in these Chapter 11 Cases that is at least ten (10) calendar days after service of the Objection (provided that the Debtors reserve the right to seek a hearing prior to such time); and (ii) the Noticed De Minimis Asset Sale may not proceed absent (1) withdrawal of the Objection or (2) entry of an Order by the Court approving the Noticed De Minimis Asset Sale;

**g.** If no Objection is timely filed and served, (1) such Noticed De Minimis Asset Sale shall be deemed final and fully authorized by the Court, and no additional or further notice or Court approval to consummate the Noticed De Minimis Asset Sale shall be required, and (2) the Debtors shall be authorized to take any actions that are reasonable and necessary to close the Noticed De Minimis Sale and obtain the sale proceeds and pay any necessary fees and expenses incurred in connection therewith, including paying all reasonable commissions and fees to third-party sale agents, or auctioneers in connection with the Noticed De Minimis Sale; and

**h.** The Debtors may consummate a Noticed De Minimis Asset Sale prior to expiration of the Notice Period only if they obtain written consent to such Noticed De Minimis Asset Sale from each party that received a Transaction Notice.

**3) <u>Effects of De Minimis Asset Sales</u>**

**a.** All buyers will take each De Minimis Asset sold by the Debtors pursuant to the De Minimis Asset Sale Procedures subject to the terms of the documentation executed in connection with the applicable De Minimis Asset Sale, which documentation may (but is not required to) include provisions that the buyers are taking the De Minimis Assets "as is" and "where is," without any representations or warranties from the Debtors as to the quality or fitness of such De Minimis Assets. Buyers will, however, take title to the (i) Non-Noticed De Minimis Asset Sales with the consent of any applicable lienholder and (ii) Noticed De Minimis Assets free and clear of any liens or encumbrances pursuant to section 363(f) of the Bankruptcy Code. All such liens or encumbrances shall attach to the proceeds of the applicable Noticed De Minimis

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

> Asset Sale with the same validity, extent, and priority as had attached to the Noticed De Minimis Assets immediately prior to such sale or transfer.

The Debtors submit that continuation of the De Minimis Asset Sales during the Chapter 11 Cases is a reasonable and necessary component of the Debtors' ordinary course operations and establishment of the De Minimis Asset Sale Procedures is, therefore, desirable and in the best interests of the estates, their creditors, and all parties in interest. The sale or transfer of the De Minimis Assets will generate additional value, for the benefit of the Debtors' estates and all parties in interest. These procedures will conserve the Debtors' resources, promote the efficient administration of these Chapter 11 Cases, and make the De Minimis Asset Sales cost-effective in a manner that will provide the most benefit to the Debtors' estates and, accordingly, the Motion should be approved.

## IV. BASIS FOR RELIEF REQUESTED

For the reasons set forth herein, this Court should grant the relief requested and approve the De Minimis Asset Sale Procedures as a sound exercise of the Debtors' business judgment and in the best interests of their estates, creditors, and all parties in interest.

### a. **The Court Should Approve the Proposed De Minimis Asset Sale Procedures Pursuant to Sections 363 and 105(a) of the Bankruptcy Code as a Sound Exercise of the Debtors' Business Judgment**

Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of this section is to provide a debtor with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the Court. *Meoli v. Am. Med. Serv. of San Diego*, 287 B.R. 808, 817 n.3 (S.D. Cal. 2003) (stating that 363(c)(1) is designed to provide "wide-ranging management authority over the debtor"); *see also In re First Prot., Inc.*, 440 B.R. 821, 832–33 (B.A.P. 9th Cir. 2010) (a debtor may "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and to use property of the estate in the ordinary course of business without notice or a hearing" when the debtor's business is being operated under sections 1107 and 1108 of the Bankruptcy Code); *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

from dissipation of the estate's assets.") (citations omitted). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue "routine transactions." *See In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's "making of routine, day-to-day business decisions") (citations omitted).

The Bankruptcy Code does not define "ordinary course of business." *In re Commercial Mortg. & Fin. Co.*, 414 B.R. 389, 393 (Bankr. N.D. Ill. 2009). "Two tests have emerged for determining whether a transaction is within the ordinary course of business for purposes of § 363(c)—the vertical dimension, or creditor's expectation, test, and the horizontal dimension test. If both tests are satisfied, the court must conclude that the challenged transaction occurred in the debtor's ordinary course of business." *Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 879 (9th Cir. 2008). "The vertical dimension, or creditor's expectation test, views the disputed transaction from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit." *Id.* (internal quotations and citations omitted). "Under the horizontal dimension test, the question is whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." *Id.* at 880–81 (internal quotations and citations omitted).

Under both the horizontal test and the vertical test, the Debtors' De Minimis Asset Sales are typical of what the Debtors would normally engage in. *See Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (finding that "ordinary course of business" is meant "to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business.") (quoting *Watford v. S. Cent. Farm Credit, ACA (In re Watford)*, 159 B.R. 597, 599 (M.D. Ga. 1993)); *In re Roth Am., Inc.,* 975 F.2d at 952 (stating that section 363 of the Bankruptcy Code is designed to allow a debtor in possession "flexibility to engage in ordinary transactions without unnecessary . . . oversight"). Under the horizontal test, sales involving De Minimis Assets are typical among utilities and critical to ensure that a utility can efficiently dispose of unused assets that are no longer necessary to ongoing operations. Utilities routinely enter into De Minimis Asset Sales similar to those covered by the procedures proposed herein.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Under the vertical test, creditors' reasonable expectations of a debtor's "ordinary course of business" are based on the "debtor's specific pre-petition business practices and norms and the expectation that the debtor will conform to those practices and norms while operating as a debtor-in-possession." *Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 425 (N.D. Ill. 1995). Thus, a fundamental characteristic of an "ordinary" postpetition business transaction is its similarity to a prepetition business practice. *Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.)*, 184 B.R. 74, 79 (B.A.P. 9th Cir. 1995). The size, nature and type of business, and the size and nature of the transactions in question, are all relevant to determining whether the transactions at issue are ordinary. *United States ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592, 598 (M.D. Tenn. 1990); *In re Johns-Manville Corp.*, 60 B.R. 612, 617 (Bankr. S.D.N.Y. 1986). "Accordingly, a post-petition transaction undertaken by the debtor that is similar in size and nature to pre-petition transactions undertaken by the debtor would be within the ordinary course of business." *Garofalo's*, 186 B.R. at 426. As set forth above and in the Boken Declaration, the Debtors have regularly and routinely entered into De Minimis Asset Sales of similar size, nature, and type of business in connection with their daily operations. Accordingly, the Debtors submit that De Minimis Asset Sales are authorized pursuant to section 363(c) of the Bankruptcy Code.

To the extent the De Minimis Asset Sales would be considered outside of the ordinary course, the Court has authority to approve such sales and the related procedures pursuant to section 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In order to approve the sale of property outside the ordinary course of business, a Bankruptcy Court must "find from the evidence presented before him at the hearing a good business reason to grant such an application." *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Chateaugay Corp.*, 973 F.2d 141, 144–45 (2d Cir. 1992) (affirming that the Bankruptcy Court correctly approved an asset sale under 363(b) using the "good business reason" standard); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("a debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

good faith and in the honest belief that the action taken was in the best interests of the company.'") (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)); *In re MF Glob. Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference.").

Furthermore, the Court has authority to approve the De Minimis Asset Sale Procedures pursuant to section 105 of the Bankruptcy Code, which provides, in relevant part, that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

The Debtors submit that the De Minimis Asset Sale Procedures are both an exercise of sound business judgment and in the best interests of their estates and all parties in interest. As discussed above, the De Minimis Asset Sale Procedures provide for an efficient and cost-effective means of maximizing the value to be realized with respect to the De Minimis Assets. Obtaining Court approval for each De Minimis Asset Sale would be administratively burdensome to the Court, result in unnecessary legal costs, and could significantly reduce the ultimate benefit of the De Minimis Assets to the Debtors' estates. Moreover, the Debtors often face stringent time constraints in meeting the closing deadlines established by interested purchasers, as well as in selling or transferring assets before they significantly decline in value. The De Minimis Asset Sale Procedures will permit the Debtors to be responsive to the needs of interested purchasers (thereby minimizing the risk of lost sales due to delay), while still providing appropriate notice to review the proposed transactions.

**b. The De Minimis Asset Sale Procedures Satisfy the Notice and Hearing Requirements Under Section 363(b)(1)**

The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if appropriate notice and an opportunity for a hearing are given in light of the particular circumstances of a proposed transaction. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances"). Courts have noted that "the notice requirements of bankruptcy law are 'founded in fundamental notions of procedural due process.'" *Morgan Olson L.L.C. v. Frederico* (*In re Grumman Olson Indus., Inc.*), 467 B.R. 694, 706 (S.D.N.Y. 2012) (citations omitted). Due process requires "notice

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (internal quotation marks and citations omitted).

Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty-one (21) days' notice of the proposed sale of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code, unless a debtor shows "cause." *See* Fed. R. Bankr. P. 2002(a)(2) and (i). Once the debtor shows "cause," however, Bankruptcy Rule 2002(a)(2) authorizes this Court to shorten the generally applicable 21-day notice period and direct a method of giving notice other than by mail. *See* Fed. R. Bankr. P. 2002(a)(2). Moreover, this Court is authorized to limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice. *See* Fed. R. Bankr. P. 2002(i).

In addition, the sale or transfer of property outside the ordinary course of business may be authorized without an actual hearing, if no party in interest timely requests such a hearing. *See* 11 U.S.C. § 102(1)(B)(i) (notwithstanding the statutory requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest").

The De Minimis Asset Sale Procedures comply with the hearing requirements of the Bankruptcy Code, as well as due process, by providing the Core Notice Parties with an opportunity to present objections to Noticed De Minimis Asset Sales and to have a hearing. Such Noticed De Minimis Asset Sales may be approved without a hearing if no objection is filed with respect thereto. Furthermore, all known holders of liens will also receive adequate notice and an opportunity to object.

Based on the foregoing, the Debtors submit that sufficient cause exists to implement the De Minimis Asset Sale Procedures and such procedures will improve the efficiency of the sale process for De Minimis Assets and maximize the value of such assets to the Debtors' estates.

**c. The Proposed De Minimis Asset Sale Procedures Satisfy the Requirements of**

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**Section 363(f) and Allow the Debtors to Sell or Transfer Property Free and Clear**

Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (ii) such entity consents; (iii) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f)(1)–(5). Section 363(f) is stated in the disjunctive; therefore, it is only necessary to meet one of the five conditions listed in that section when selling property of the estate. *See In re PW, LLC*, 391 B.R. 25 (9th Cir. BAP 2008) (analyzing only conditions (f)(3) and (f)(5), thus implying the satisfaction of any requirement warrants the sale of property free and clear of liens and interests); *In re Borders Grp., Inc.*, 453 B.R. at 483–84 (noting that the debtor can sell its property "free and clear of any interest" if "at least one" of the five conditions under section 363(f) is met); *see also In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) ("Satisfaction of any of those requirements [of section 363(f)(1)-(5)] suffices to permit the sale of the property free and clear of liens and interests.").

The Debtors submit that the De Minimis Asset Sale Procedures satisfy the requirements of section 363(f) of the Bankruptcy Code. Pursuant to the De Minimis Asset Sale Procedures, to the extent there are any known holders of liens on the De Minimis Assets, the Debtors will provide such parties with a Transaction Notice prior to the disposition of the applicable De Minimis Asset. Absent any objection to a Noticed De Minimis Asset Sale, a holder of a lien or encumbrance shall be deemed to consent to the Noticed De Minimis Asset Sale and such asset may be sold free and clear of such lien. *See In re Borders Grp., Inc.*, 453 B.R. at 484 ("Under section 363(f)(2), a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens."); *see also In re Enron Corp.*, Case No. 01–16034 (AJG), 2003 WL 21755006, at *2 (Bankr. S.D.N.Y. July 28, 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)). As noted above, the interests of a holder of a lien will attach to the proceeds of the sale or transfer, subject to any rights and defenses

of the Debtors with respect thereto. To the extent consent of a lienholder is not obtained or deemed to have been obtained, the Debtors submit that with respect to any proposed transaction, the holder of any lien or other encumbrance could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

## V. REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above, the relief requested herein is in the best interest of the Debtors, their estates, creditors, shareholders, and all other parties. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## VI. NOTICE

Notice of this Motion will be provided to (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties interests, and (ii) the Debtors' such other and further relief as the Court may deem just and appropriate.

Dated: August 16, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: */s/ Matthew P. Goren*
Matthew P. Goren

*Attorneys for Debtors and Debtors in Possession*

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119