WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**DECLARATION OF JOHN BOKEN IN SUPPORT OF (I) DE MINIMIS CLAIMS SETTLEMENT PROCEDURES MOTION AND (II) DE MINIMIS ASSET SALE PROCEDURES MOTION** |

I, John Boken, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

I am a Managing Director in the Turnaround and Restructuring Services practice of AlixPartners, LLP, which is an affiliate of both AlixPartners, LLC and AP Services, LLC, which provides interim management services to PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors-in-possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"). I currently serve as the Deputy Chief Restructuring Officer for the Debtors as authorized by this Court by Order dated April 9, 2019 [Docket No. 1299].[1]

This Declaration is submitted in support of (i) the *Motion of Debtors Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed R. Bankr. P. 9019 for Authority to Establish Procedures to Settle and Compromise Certain Claims and Causes of Action* (the "**Claims Settlement Procedures Motion**"), and (ii) the *Motion of Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a) and Fed R. Bankr. P. 2002 for Authority to Establish De Minimis Asset Sale Procedures* (the "**De Minimis Asset Sale Procedures Motion**").[2]

I am knowledgeable and familiar with the Debtors' day-to-day operations. I am authorized to submit this Declaration on behalf of the Debtors. The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' other employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify to the facts set forth in this Declaration.

**I. De Minimis Settlement Procedures Motion**

In the ordinary course of operating a business of the Debtors' size, scope, and complexity,

---

[1] My education, background, and professional experience is described in the Declaration of John Boken in Further Support of First Day Motions and Related Relief [Docket No. 653] at 2–3.

[2] Capitalized terms used but not otherwise defined in this Declaration have the meanings given in the respective Motions.

disputes commonly arise between the Debtors and other parties concerning a variety of issues and matters. These disputes include, but are not limited to, personal injury and property claims, landlord disputes, licensing disputes, contract claims, and other claims regarding accounts receivables and payables. As a result, the Debtors hold, or expect to hold, various claims and causes of action ("**Claims**") against numerous third parties that the Debtors have asserted or could assert through litigation, administrative action, or arbitration in appropriate forums. Similarly, third parties hold, or may hold in the future, Claims against the Debtors that such third parties have asserted or may assert during the Chapter 11 Cases, including filed proofs of claim, scheduled Claims, and administrative expense Claims. To date, approximately 3,300 non-wildfire related Claims have been filed in these Chapter 11 Cases by approximately 2,400 creditors. In my experience, it would be more cost efficient to resolve these Claims consensually than to engage in costly litigation over what, in many instances, are relatively small or de minimis amounts.

By filing the Settlement Procedures Motion, the Debtors are seeking authority to resolve certain non-wildfire-related Claims by compromise or settlement without obtaining further approval from the Court. The Debtors propose the following procedures (the "**Settlement Procedures**") for the settlement and compromise of Claims as described below (each, a "**Settlement**"):

(a) The Debtors shall be authorized to settle any and all Claims asserted against the Debtors without prior approval of, or notice to, the Court or any other party in interest whenever the aggregate amount to be allowed for an individual Claim (the "**Settlement Amount**") is less than or equal to $1 million (a "***De Minimis* Settlement Amount**"); *provided, however*, *De Minimis* Settlement Amounts shall not include any Settlement of a Claim (i) to which any present or former insider of the Debtors is a party or (ii) that includes a release by any of the Debtors of a Claim they may have against the holder of a Claim pursuant to chapter 5 of the Bankruptcy Code.

(b) If the Settlement Amount for a Claim is not a *De Minimis* Settlement Amount but is less than or equal to $10 million, the Debtors shall provide notice of the proposed Settlement on a confidential, professionals' eyes only basis, to: (i) the U.S. Trustee, (ii) counsel for each of the Committees, and (iii) any party to the Settlement (each a "**Reviewing Party**," and collectively, the "**Reviewing Parties**") specifying (1) the identity of the other party to the Settlement, (2) a summary of the dispute, including proof of claim numbers, if any, and the

types of Claims asserted, (3) the terms and amounts for which such Claims have been settled, including the priority of such settled claim, (4) whether the Debtors are seeking to release any Claims against creditors or third parties, (5) an explanation of why the Settlement is favorable to the Debtors, their estates, and their creditors, and (6) copies of any proposed Settlement or documents supporting the Settlement.

(c) Within seven (7) business days of receiving the proposed Settlement, the Reviewing Parties may object, or request an extension of time within which to object (which objection or request for an extension of time to object may be in the form of an e-mail from counsel for any Reviewing Party to counsel for the Debtors), to the proposed Settlement. If a timely objection is made by any Reviewing Party, the Debtors may either (i) renegotiate the Settlement and submit a revised notification to the Reviewing Parties or (ii) file a motion with the Court seeking approval of the existing Settlement under Bankruptcy Rule 9019 on no less than twenty-one (21) days' notice. If no timely objection is made by any Reviewing Party or if the Debtors receive written approval of the proposed Settlement from the Reviewing Parties prior to the objection deadline (which approval may be in the form of an e-mail from counsel for each the Reviewing Parties to counsel for the Debtors), then the Debtors may proceed with the Settlement, without prior approval of the Court.

(d) If the Settlement Amount for a claim is not a *De Minimis* Settlement Amount and is greater than $10 million, the Debtors shall be required to seek the approval of the Court pursuant to motion under Bankruptcy Rule 9019 on no less than twenty-one (21) days' notice.

(e) The Debtors may settle Claims where some or all of the consideration is being provided by a third party and/or where the Debtors are releasing Claims against creditors or third parties provided the Debtors otherwise comply with the Settlement Procedures.

(f) Any Settlement that is not authorized pursuant to the foregoing procedures, or pursuant to any other order of the Court, shall be authorized only upon separate order of the Court upon a motion of the Debtors served upon the parties in interest.

(g) On a quarterly basis, on the thirtieth (30th) day after the start of the quarter, beginning on the quarter that starts on October 1, 2019, the Debtors shall file with the Court and serve, pursuant to the Debtors' Case Management Order,[3] a report of all Settlements that the Debtors have entered during the previous quarter pursuant to the Settlement Procedures, but shall not report Settlements if they are the subject of a separate motion pursuant to Bankruptcy Rule 9019. Such reports shall set forth the names of the parties with whom the Debtors

---

[3] Second Amended Order Implementing Certain Notice and Case Management Procedures [Docket No. 1996].

have settled, the relevant proofs of claim numbers, and the amounts for which such Claims have been settled.

(h) For the avoidance of doubt, any Claim settled pursuant to these Settlement Procedures shall be allowed as provided herein and shall be satisfied pursuant to, and as set forth in, a chapter 11 plan for the Debtors as confirmed by the Court.

(i) No Claim arising out of or relating to the Northern California fires shall be settled pursuant to these Settlement Procedures.

(j) Nothing in the Settlement Procedures is intended or should be construed to alter any requirements under the Debtors' insurance policies.

(k) The Debtors reserve the right to seek to modify the Settlement Procedures as they deem appropriate.

Additionally, the Debtors will provide written notice to Prime Clerk LLC ("**Prime Clerk**"), the Debtors' authorized claims and noticing agent, with respect to any proofs of claim filed in these Chapter 11 Cases that are settled pursuant to these Settlement Procedures. If applicable, Prime Clerk will be directed to amend the claims register to reflect the applicable Settlement without further order of the Court.

I believe the Settlement Procedures will allow the Debtors to avoid the time and expense of engaging in piecemeal litigation and/or drafting, filing, and arguing separate motions on account of Settlements involving disputes of relatively *de minimis* amounts and recoveries. I further believe that authorizing the Settlement Procedures will assist the Debtors significantly in their reorganization efforts without the need to unnecessarily expend estate resources. Additionally, I believe the Settlement Procedures will reduce the burden on the Court's docket while protecting the interests of all creditors through the notice and objection procedures.

It is also important to note that the Settlement Procedures contemplate settling and allowing Claims as described above; however, the Debtors are not proposing, pursuant to the De Minimis Claims Settlement Procedures Motion to pay any Settlement Amounts at this time and any Claims settled in accordance with these procedures will be satisfied pursuant to, and as set forth in, a chapter 11 plan for the Debtors as confirmed by the Court.

## II. De Minimis Asset Sale Procedures Motion

In the ordinary course of their business operations, the Debtors routinely enter into *de minimis* sales and transactions, including, without limitation, sales of furniture, fixtures, equipment, streetlights, transformers, surplus material from warehouses, scrap metal, vehicles, and other various assets (collectively, the "**De Minimis Assets**"). Many of these transactions are integral to the Debtors' ability to deliver utility services to its customers and some are ancillary to the Debtors' utility business and provide additional sources of revenue for the Debtors. In entering into these transactions, the Debtors carefully exercise their business judgment by tailoring the terms of such transactions to the current needs of the business. It is my understanding that these types of transactions are ordinary course transactions for the Debtors.

By filing the De Minimis Asset Sale Procedures Motion, the Debtors are seeking authority to sell or transfer in the ordinary course of the Debtors' business and without further order of the Court certain De Minimis Assets, including any rights or interests therein, that are no longer of any use to the Debtors' business and are of relatively de minimis value compared to the Debtors' total asset base. The Debtors believe that such transactions are within the ordinary course of business, and therefore, may be entered without first seeking Court approval. Nonetheless, the Debtors are seeking the relief set forth in the De Minimis Asset Sale Procedures Motion in order to provide comfort to counterparties in these transactions and other interest holders.

Pursuant to the De Minimis Asset Sale Procedures Motion, the Debtors are proposing the following De Minimis Asset Sale Procedures:

1) <u>**De Minimis Asset Sales Less than or Equal to $1 million**</u>:

   (a) The Debtors are authorized to sell or transfer any De Minimis Asset for total purchase price that is less than or equal to $1 million (each sale, a "**Non-Noticed De Minimis Asset Sale**"), without further Court approval and without providing notice of the Non-Noticed De Minimis Sale to any party, whether by private sale or by auction. The Debtors are further authorized to take any actions that are reasonable and necessary to close the Non-Noticed De Minimis Sale and obtain the sale proceeds and pay any necessary fees and expenses incurred in connection therewith, including paying all reasonable commissions and fees to third-party sale agents, or auctioneers in connection with the Non-Noticed De Minimis Sale; and

(b) If any of the De Minimis Assets to be sold or transferred by the Debtors pursuant to a Non-Noticed De Minimis Asset Sale are encumbered by liens (other than assets encumbered solely by liens granted in connection with the DIP Credit Agreement), the Debtors will seek to obtain the consent of the applicable lienholder(s). If the Debtors are unable to obtain the consent of the applicable lienholder(s), the Debtors may seek to sell or transfer the encumbered De Minimis Assets as a Noticed De Minimis Sale (as defined below) in accordance with the procedures below.

2) **De Minimis Asset Sales Greater than $1 million but Less than or Equal to $15 million:**

(a) For any sale or transfer of De Minimis Assets where the total aggregate purchase price is greater than $1 million but less than or equal to $15 million (a "**Noticed De Minimis Asset Sale**"), the Debtors shall file with the Court a notice of such transaction (the "**Transaction Notice**"), substantially in the form annexed to the De Minimis Asset Sale Procedures Motion as Exhibit B and serve a copy thereof by electronic mail, facsimile, overnight courier, or hand delivery on the Core Notice Parties (as defined below). As set forth on Exhibit B of the De Minimis Asset Sale Procedures Motion, each Transaction Notice will include (i) a description of the De Minimis Asset proposed to be sold or transferred, (ii) the identity of the purchaser or transferee and any relationship such party has with the Debtors, (iii) the identities of any lienholder(s) known to the Debtors as holding liens on or with respect to the De Minimis Asset, (iv) the material economic terms and conditions of the proposed De Minimis Asset Sale (which may be provided by attaching the applicable contract or contracts to the Transaction Notice), (v) any proposed commission, fees, or other similar expenses to be paid in connection with such transaction, and (vi) instructions regarding the procedures for asserting an objection to the Noticed De Minimis Asset Sale;

(b) The Debtors shall serve any Transaction Notice on (i) counsel to the DIP Agent, (ii) counsel to the Creditors Committee, (iii) counsel to the Tort Claimants Committee (iv) the Office of the U.S. Trustee for Region 17, and (v) any other creditors holding liens on the De Minimis Assets subject to the proposed transaction (collectively, the "**Core Notice Parties**"). The Debtors shall not be required to serve any Transaction Notice on any other parties and no further or additional notice of the proposed Noticed De Minimis Asset Sale shall be required;

(c) The Core Notice Parties shall have fifteen (15) calendar days after service of a Transaction Notice to file and serve any objections to a Noticed De Minimis Asset Sale (the "**Notice Period**");

(d) If any material economic term of a Noticed De Minimis Asset Sale is amended or revised after transmittal of the Transaction Notice, but prior to the

expiration of the Notice Period, the Debtors shall serve a revised Transaction Notice on the Core Notice Parties describing the material economic terms to be amended or revised. If a revised Transaction Notice is required, the Notice Period shall be extended for an additional five (5) calendar days;

(e) Any objection to a Noticed De Minimis Asset Sale (each, an "**Objection**") must: (i) be in writing; (ii) set forth the name of the objecting party; (iii) provide the basis for the Objection and the specific grounds therefor; (iv) be filed electronically with the Court; and (v) be served on (1) the Debtors, (2) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. and Jessica Liou, Esq.), as counsel to the Debtors, and (3) Keller & Benvenutti LLP, 650 California Street, Suite 1900, San Francisco, CA 94108 (Attn: Tobias S. Keller, Esq. and Jane Kim, Esq.), as co-counsel to the Debtors, all in accordance with the procedures set forth in the *Second Amended Order Implementing Certain Notice and Case Management Procedures* [Docket No. 1996] (the "**Case Management Order**"), so as to be received on or before 4:00 p.m. (Pacific Time) on the last day of the Notice Period;

(f) If an Objection is properly filed and served: (i) the Objection shall be deemed a request for a hearing on the Noticed De Minimis Asset Sale and the Objection shall be heard at the next scheduled omnibus hearing in these Chapter 11 Cases that is at least ten (10) calendar days after service of the Objection (provided that the Debtors reserve the right to seek a hearing prior to such time); and (ii) the Noticed De Minimis Asset Sale may not proceed absent (1) withdrawal of the Objection or (2) entry of an Order by the Court approving the Noticed De Minimis Asset Sale;

(g) If no Objection is timely filed and served, (1) such Noticed De Minimis Asset Sale shall be deemed final and fully authorized by the Court, and no additional or further notice or Court approval to consummate the Noticed De Minimis Asset Sale shall be required, and (2) the Debtors shall be authorized to take any actions that are reasonable and necessary to close the Noticed De Minimis Sale and obtain the sale proceeds and pay any necessary fees and expenses incurred in connection therewith, including paying all reasonable commissions and fees to third-party sale agents, or auctioneers in connection with the Noticed De Minimis Sale; and

(h) The Debtors may consummate a Noticed De Minimis Asset Sale prior to expiration of the Notice Period only if they obtain written consent to such Noticed De Minimis Asset Sale from each party that received a Transaction Notice.

3) **Effects of De Minimis Asset Sales**

    (a)    All buyers will take each De Minimis Asset sold by the Debtors pursuant to the De Minimis Asset Sale Procedures subject to the terms of the documentation executed in connection with the applicable De Minimis Asset Sale, which documentation may (but is not required to) include provisions that the buyers are taking the De Minimis Assets "as is" and "where is," without any representations or warranties from the Debtors as to the quality or fitness of such De Minimis Assets. Buyers will, however, take title to the Noticed De Minimis Assets free and clear of any liens or encumbrances pursuant to section 363(f) of the Bankruptcy Code. All such liens or encumbrances shall attach to the proceeds of the applicable Noticed De Minimis Asset Sale with the same validity, extent, and priority as had attached to the Noticed De Minimis Assets immediately prior to such sale or transfer.

I believe the authority sought by the De Minimis Asset Sale Procedures Motion will benefit the Debtors' estates by allowing the Debtors to continue their ordinary business practices for handling De Minimis Asset Sales. I believe that obtaining separate Court approval for each De Minimis Asset Sale would be administratively burdensome to the Court and costly to the Debtors' estates and could eliminate or substantially undermine the economic benefit that would be realized from such sales by the Debtors' estates. In some instances, the usual process for obtaining Court approval for such sales may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time.

It is my understanding that counterparties may want assurance that any potential transactions they enter into with the Debtors are not at risk of being undone by an adverse order of this Court. It is my opinion that an order approving the proposed procedures set forth in the De Minimis Asset Sale Procedures Motion will satisfy most counterparties, thus greatly minimizing the need to seek individual "comfort" orders from the Court, which would be a costly and time-consuming endeavor. For those transactions covered by the De Minimis Asset Sale Procedures, the counterparty will be able to confirm objectively that the transaction is covered by the procedures set forth herein.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct.

Dated: August 16, 2019     San Francisco, California

By: _____
John Boken