WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br> - and - <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> **Debtors.** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> * *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **FOURTH OMNIBUS MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C § 365(a), FED. R. BANKR. P. 6006, AND B.L.R. 6006-1 FOR AN ORDER (I) APPROVING ASSUMPTION OF ENVIRONMENTAL AGREEMENTS AND (II) GRANTING RELATED RELIEF ("ENVIRONMENTAL AGREEMENTS ASSUMPTION MOTION")** <br><br> Date: September 24, 2019 <br> Time: 9:30am (Pacific Time) <br> Place: United States Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 <br> Judge: Hon. Dennis Montali <br><br> **Objection Deadline:** September 10, 2019, 4:00pm (Pacific Time) |

> **NOTICE TO CONTRACT COUNTERPARTIES**
>
> A list of the Environmental Agreements (as defined below) is annexed hereto as **Exhibit B**. Counterparties receiving this motion should locate their respective Environmental Agreement(s) by their last name, as listed in **Exhibit B**.

PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (this "**Motion**"), pursuant to section 365(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6006-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), for an order (i) approving the Debtors' assumption of agreements with four (4) counterparties thereto (collectively, the "**Owners**") that provide the Debtors access to the Owners' property to carry out environmental investigation and, in certain instances, land remediation and restoration obligations (collectively, and as amended from time to time, the "**Environmental Agreements**") and (ii) granting related relief.

In support of the Motion, the Debtors submit the Declaration of Margaret A. Pietrasz (the "**Pietrasz Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

As further described in the Wells Declaration, in connection with the first day relief requested by the Debtors, the Debtors filed a motion seeking authority, but not direction, to maintain certain of their customer programs, including certain environmental remediation programs that related to the Environmental Agreements (the "**Customer Programs Motion**"). *See* Docket No. 16. On February 20, 2019, the Owners filed an objection to the Customers Program Motion. *See* Docket No. 527. In connection with the consensual resolution of the Objection, the Owners and the Debtors agreed, among other things, to make a determination whether to assume or reject the Environmental

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Agreements by an agreed upon date. *See* Customer Programs Motion Hearing Trans., 4:6 to 6:15 (Mar. 12, 2019). On March 12, 2019, the Debtors obtained final Court approval of the Customer Programs Motion. *See* Docket No. 843.

### III. THE ENVIRONMENTAL AGREEMENTS[1]

The Environmental Agreements[2] collectively govern the terms by which the Debtors will perform certain investigation, remediation, and restoration obligations relating to specific tracts of land which the respective Owners own or on which they reside. Under the Environmental Agreements, the Debtors' ongoing obligations generally include, among other things: (i) routine or discrete investigation of the property for potential contaminants relating to prior utility facilities located on or near such property; (ii) if contaminants associated with the former utility facilities are located on the property, remediation activities to remove or otherwise remediate such contaminants from the property to reduce the risk of possible future exposure to any such contaminants; and (iii) to the extent reasonably possible following either investigation or remediation, the restoration of the Owners' property to its prior condition before the investigation or remediation occurred (collectively, the "**Agreement Obligations**"). With oversight from the California Department of Toxic Substances Control (a division of the California Environmental Protection Agency, the "**DTSC**"), the Debtors and their employees and contractors work in close conjunction with the Owners to determine the most appropriate scope of and timing for the Debtors' performance of the Agreement Obligations. The Environmental Agreements cover the period of time required to complete the applicable Agreement Obligations, subject to mutually agreed extensions of time as may be needed.

Each of the Owners owns property that may have been or was affected by potential contaminants generated in the course of operations of former utility facilities located on or near such property. The Debtors entered into the Environmental Agreements with the Owners in an effort to determine whether such contaminants exist on the property, and if so, to remediate such property for the benefit of the Owners and the surrounding environment. The Environmental Agreements are typically

---

[1] The summaries of the Environmental Agreements contained herein are qualified in their entirety by the terms of the underlying agreements, and in the event of any inconsistencies, the agreements govern.

[2] Copies of the Environmental Agreements will be provided, upon request, on a confidential basis to counsel for the Committees and for the U.S. Trustee.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

accompanied by either an attached general memorandum of understanding or other scope of work, negotiated by the parties, whereby the respective Owner identifies specific investigation or remediation and restoration activities.

As an example, certain of the Environmental Agreements relate solely to the investigation of an Owner's land (such agreements, the "**Investigation Agreements**"). Under the Investigation Agreements, the Debtors agree to take soil and soil vapor samples in different locations in an effort to identify which, if any, chemicals associated with past utility operations are present. If chemicals in sufficient quantities are determined to exist on the property, the Owner and the Debtors then agree to specific remediation and restoration activities the Debtors must perform. These specifics are generally set forth in a memorandum of understanding which ultimately is the basis of and attached to an agreement relating to remediation and restoration activities (the "**Remediation Agreements**").

In connection with the Debtors' Agreement Obligations, the Debtors may lease an Owner's property to facilitate its remediation and restoration obligations. The lease provides the Debtors access and use of the land to appropriately remediate and restore the property in exchange for monetary compensation to the Owner. In addition, in conjunction with entering into a Remediation Agreement, the Debtors may also enter into a settlement and release agreement with the Owner, whereby the Owner covenants not to pursue potential claims against the Debtors related to the presence, investigation, or remediation of contaminants on their property associated with the former utility operations, so long as the Debtors agree to remediate and restore such property in accordance with the terms set forth in the applicable Remediation Agreement.

The Environmental Agreements allow the Debtors to continue their investigation and remediation activities under the DTSC-approved remedial action plan and pursuant to its voluntary cleanup agreement,[3] and avoid litigation with home owners. Accordingly, the Debtors seek to assume the Environmental Agreements set forth on **Exhibit B** attached hereto, which are made with the following Owners: (i) Dennis Caselli; (ii) Sam and Catherine Dorrance; (iii) Laura Hart; and (iv) Minh

---

[3] Each such plan and agreement are available to view free of charge online at, respectively: https://www.envirostor.dtsc.ca.gov/public/final_documents2?global_id=60001254&doc_id=60254392 and https://www.envirostor.dtsc.ca.gov/public/final_documents2?global_id=60001254& enforcement_id=60188784.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

and Gurdon Merchant. Each agreement listed on **Exhibit B** includes the names of the applicable Owners, the title of the Environmental Agreement, the date of execution, and any prepetition Agreement Obligations owed to the applicable Owner that must be satisfied or cured for the Debtors to assume such agreement. Each of the Owners have consented to the assumption of their respective Environmental Agreements by the applicable Debtors and the proposed cure amounts for each such agreement as set forth in **Exhibit B**.

### IV. ASSUMPTION OF THE ENVIRONMENTAL AGREEMENTS IS IN THE BEST INTERESTS OF THE DEBTORS, THEIR CREDITORS, AND ALL PARTIES IN INTEREST

The Debtors' assumption of the Environmental Agreements should be approved under section 365(a) of the Bankruptcy Code. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract . . . of the debtor." 11 U.S.C. § 365(a).

The Supreme Court has defined "executory contracts" as contracts "on which performance is due to some extent on both sides." *NLRB v Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984). The Ninth Circuit has similarly described executory contracts as contracts where "one party's failure to perform its obligation would excuse the other party's performance." *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc).*, 503 F.3d 933, 941 (9th Cir. 2007) (citing *Commercial Union Ins. Co. v. Texscan Corp. (In re Texscan Corp.)*, 976 F.2d 1269, 1272 (9th Cir. 1992)). The Environmental Agreements clearly fall within this definition. In each case, there remains material performance obligations due from both the Debtors and the Owners. Unlike in *International Fibercom* or *Texscan*, there is no statutory or contractual basis to require performance by the Owners notwithstanding the Debtors' entry into the Chapter 11 Cases if the Debtors do not perform their obligations.

Bankruptcy Courts generally "approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000); *In re Miller*, No. 15-61159-12, 2016 WL 1316763, at *4

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(Bankr. D. Mont. Apr. 1, 2016).

The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract will benefit the debtor's estate. *See Bakery, Confectionary & Tobacco Workers Int'l Union v. Kirkpatrick (In re Kirkpatrick)*, 34 B.R. 767, 769 (B.A.P. 9th Cir. 1983); *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 292 B.R. 195, 199 (N.D. Cal. 2003), *aff'd*, 392 F.3d 1064 (9th Cir. 2004); *In re Am. Suzuki Motor Corp.*, 494 B.R. 466, 476 (Bankr. C.D. Cal. 2013). Furthermore, "[c]ourts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract or unexpired lease would benefit the debtor's estate." *In re MF Glob. Holdings Ltd.*, 466 B.R. at 242; *In re Miller*, 2016 WL 1316763, at *4 ("Although . . . business judgment is the proper standard for determining whether to permit assumption or rejection of an executory contract or unexpired lease, the court should focus on the business judgment of the trustee or debtor in possession, not on its own business judgment."). The Court should "presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (in the context of a motion to reject under section 365(a)). Only a decision which is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice" runs afoul of the rule. *Id*.

As outlined above and in the Pietrasz Declaration, the Debtors have determined to assume the Environmental Agreements. *See* Pietrasz Declaration ¶ 9. Under applicable California law, the Debtors generally must ensure that they investigate and remediate the properties covered by the Environmental Agreements. *Id.*; *see generally* Cal. Health & Safety Code § 25300 *et seq.* The Debtors' failure to investigate or remediate the properties covered by the Environmental Agreements may expose the Debtors to potential liability and costly litigation. *See* Pietrasz Declaration ¶ 9. To avoid the uncertainty associated with the potential liability and litigation costs, and to assert orderly control over the investigation process, the Debtors took affirmative steps before the Petition Date to enter into the Environmental Agreements and perform their Agreement Obligations, which they have continued to perform on a post-petition basis. *Id.* Performance under the Environmental Agreements has served to

reduce the Debtors' environmental cleanup obligations to foreseeable expectations, a benefit that the Debtors believe should be preserved through the relief sought in this Motion. *Id.*

The Debtors agreed with the DTSC to act in accordance with an approved remedial action plan. *Id.* ¶ 10. The remedial action plan was formally reviewed and approved by the DTSC and set forth the public plans by which the Debtors, with oversight from the DTSC, will investigate and remediate certain properties, including specifically those covered by the Environmental Agreements. *Id.* Continued performance under the Environmental Agreements permits the Debtors to comply with the Debtors' obligations to the DTSC. *Id.* Indeed, for similar reasons, the Debtors sought and received the relief in the Customer Programs Motion to continue funding amounts in respect of their environmental cleanup responsibilities. *Id.* Among other things, that relief was intended to ensure compliance with California law and to permit the Debtors to continue working with the DTSC and other agencies on various environmental matters. *Id.*

When assuming an executory contract, section 365(b) of the Bankruptcy Code requires the debtor to cure any defaults under the contract or provide adequate assurance that it will promptly cure these defaults. *See* 11 U.S.C. § 365(b)(1)(A); *see also In re Crummie*, 194 B.R. 230, 237 (Bankr. N.D. Cal. 1996); *In re Heitman*, No. 99-20559, 1999 WL 33486720, at *1 (Bankr. D. Idaho July 22, 1999) ("Additionally, § 365(a) and (b) require Court approval of assumption, and only then upon proof of satisfaction of certain prerequisites regarding cure of defaults and adequate assurance of future performance."). The Debtors believe that there are no existing defaults under the Environmental Agreements and, therefore, no outstanding cure obligations owed under the Environmental Agreements. In addition, following entry of an order granting the relief requested in this Motion, to the extent there are disputes under the Environmental Agreements, including those unresolved at the time of this Motion, the Owners and the Debtors reserve their rights to identify and resolve such disputes in the ordinary course of business in accordance with the terms of the Environmental Agreements, and nothing in this Motion or an order granting the relief requested herein shall prejudice the Debtors' or the Owners' rights regarding such disputes.

Accordingly, the Debtors believe the relief requested in this Motion should be approved as a sound exercise of the Debtors' business judgment, and is in the best interest of their estates, creditors,

shareholders, and all other parties in interest.

## V. REQUEST FOR BANKRUPTCY RULE 6006 AUTHORIZATION

### A. Rule 6006(e) Authorization

The Debtors request authorization pursuant to Bankruptcy Rule 6006(e) to file this Motion as an omnibus motion to assume the Environmental Agreements. As outlined above, (i) the Owners are all represented by the same counsel, Stuart G. Gross, and (ii) the Environmental Agreements each relate to the performance of similar or related Agreement Obligations. Accordingly, the Debtors believe there is ample cause for an order permitting this Motion to be heard as an omnibus motion to avoid the Debtors' estates bearing the cost of multiple, near-identical motions to assume the Environmental Agreements. There is no detriment to any party in interest in having the Motion heard as an omnibus motion.

### B. Rule 6006(f) Compliance

Under Bankruptcy Rule 6006(f), the Debtors may join requests for authority to assume multiple executory contracts in one motion if the authorization requested under Bankruptcy Rule 6006(e) is granted. Bankruptcy Rule 6006(f) provides that a motion to assume (or reject) multiple executory contracts or unexpired leases that are not between the same parties shall:

(1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

(2) list parties alphabetically and identify the corresponding contract or lease;

(3) specify the terms, including the curing of defaults, for each requested assumption or assignment;

(4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

(5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

(6) be limited to no more than 100 executory contracts or unexpired leases.

As described herein, this Motion and notice thereof (i) clearly and conspicuously direct the Owners to the list of Environmental Agreements in **Exhibit B** and provide sufficient information in alphabetical

order to determine whether their agreements are covered by this Motion, (ii) specify the cure amounts owed, if any, and (iii) constitute the fourth omnibus motion filed in the Chapter 11 Cases, therefore satisfying the requirements of Bankruptcy Rule 6006(f).

For the reasons outlined above, the Debtors respectfully submit that their compliance with the requirements of Bankruptcy Rule 6006(f) as described herein is appropriate, satisfies due process, and should be approved as good and sufficient.

## VI. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; (xii) each Owner; (xiii) Stuart G. Gross, as counsel to the Owners; and (xiv) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

The Debtors have previously sought relief from this Court to assume other executory contracts. No previous request for the relief sought herein in respect to the Environmental Agreements has been made by the Debtors to this or any other court.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Case: 19-30088   Doc# 3581   Filed: 08/16/19   Entered: 08/16/19 18:55:53   Page 10 of 11

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting (i) the relief requested herein as a sound exercise of the Debtors' business judgment and in the best interests of their estates, creditors, shareholders, and all other parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: August 16, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Jessica Liou
    Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119