**Entered on Docket**
**August 21, 2019**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: August 21, 2019

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>    - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>*  All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |

**RECOMMENDATION FOR WITHDRAWAL OF REFERENCE OF PROCEEDING IN PART**

To: Honorable Phyllis J. Hamilton,
    Chief United States District Judge

    A. INTRODUCTION

    I am the assigned bankruptcy judge in the chapter 11 reorganization cases of PG&E Corporation and Pacific Gas and Electric Company (together "Debtors" or "PG&E") (Case Nos. 19-30088-DM and 19-30089-DM). I am making this recommendation to

-1-

you pursuant to B.L.R. 5011-2(b), the local rule that permits me as a bankruptcy judge to make such a recommendation.

B. BACKGROUND

These bankruptcy cases were filed on January 29, 2019. The filings were precipitated by the Northern California wildfires that caused billions of dollars of damage claims asserted or expected to be asserted against PG&E by victims who have suffered extensive property, personal injury and wrongful death claims (tort claims) and by insurers who have already paid or are obligated to pay billions of dollars of property damage claims to victims (subrogation claims).

Last month the Governor of California signed legislation (AB-1054) that establishes a multi-billion dollar fund for dealing with future wildfires. While the legislation is complex, the critical component for present purposes is that it gives PG&E until June 30, 2020, to emerge from chapter 11 and to deal with these massive wildfire claims. To that end, PG&E has stated recently that it intends to file proposed plans of reorganization on or about September 9, 2019, and has laid out a timeline intended to reach the goal of confirming chapter 11 plans by that deadline. While that may seem a long way in the future, and no doubt is far too long for thousands of victims, the complexity of these chapter 11 cases, the requirements of chapter 11 and the need for parallel hearings and rulings by the California Public Utilities Commission (most of which pertain to regulatory matters and contractual obligations that exist apart from the wildfire claims) impose very difficult time limits on all parties, including the court.

Because it would be impossible to liquidate thousands of tort claims in a matter or months, or possibly years, PG&E needs to implement the bankruptcy procedure for estimation of its unliquidated claims for its reorganization purposes.

C.  APPLICABLE LAW

Section 502(c) of the Bankruptcy Code (11 U.S.C. § 502(c)) states that there shall be

> "…estimated for purpose of allowance . . . any contingent or unliquidated claim, the fixing or liquidation of which . . . would unduly delay the administration of the case."

28 U.S.C. § 157(b)(1) permits bankruptcy judges to determine core proceedings; under subsection (b)(2)(B), core proceedings include

> "estimation of claims . . . for the purposes of confirming a plan under chapter 11 . . . but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under Title 11."

28 U.S.C. § 157(b)(2)(O) delegates to bankruptcy judges other core proceedings affecting liquidation of assets . . . "except personal injury tort or wrongful death claims."

28 U.S.C. § 157(b)(3) directs that the bankruptcy judge shall determine whether a proceeding is a core proceeding or as a proceeding that is otherwise related to a case under Title 11 (a non-core proceeding).

//
//
//
//

-3-

D. DISCUSSION

1. Estimation Generally[1].

Bankruptcy Code Section 502(c) does not provide specific guidance to the court as to the process for estimating unliquidated claims. All parties seem to agree, however, that liquidating thousands of claims in these chapter 11 cases would unduly delay them.

A bankruptcy court has core jurisdiction to estimate unliquidated claims that are not personal injury tort or wrongful death claims.

2. Estimation for "Purposes of Confirming a Plan" and for "Purposes of Distribution".

The Debtors are expected to propose reorganization plans that will involve a limited or "capped" fund for distribution to the wildfire victims and their insurers after plan confirmation and thus provide for the discharge of preconfirmation wildfire liabilities. Consequently, the estimation of the amount of money to be capped is critical for a variety of reasons; in particular it is necessary to assure that the amount is reasonably likely to provide for full satisfaction of the victims' claims for which it is established.

The cases are inconclusive (and none binding in this circuit) on whether the "purposes of confirming a plan" language in the statute is adequate to protect countless wildfire victims who have personal injury and wrongful death claims. Some

---

[1] *See* S. Elizabeth Gibson, *Judicial Management of Mass Tort Bankruptcy Cases* (Fed. Jud. Ctr. 2005), pp. 88-100, for helpful background information and a more detailed explanation of the estimation process.

-4-

conclude that the estimation process is enough to fix the amount of the required fund, leaving for another day the determination of individual claimants' entitlement to a share of that fund as part of the "purposes of distribution" language of the statute. Others recognize that the two concepts cannot be unbundled and that the rights of the tort victims must be protected by the Article III judge's overseeing of that aspect of the non-core estimation process.

I anticipate that as part of that process the supervising judge will consider briefing and argument from the representative committees of tort fire victims and subrogation claimants on the one hand, and the Debtors on the other hand, to fully explain their views on these issues to assist the judge in reaching the right conclusions.

    3.    Personal Injury and Wrongful Death Claims.

The statute is silent as to whether the "unliquidated personal injury tort or and wrongful death claims" language includes or excludes claims arising from emotional distress or similar theories of recovery. Some cases construe the statute narrowly and suggest that emotional distress claims can be excluded from the "estimation for confirmation" analysis; others conclude that the statute should be construed broadly and thus emotional distress claims must be included as part that analysis, rather than considered only in the "purposes of distribution" analysis.

These questions, too, should be the subject of further briefing by the parties and resolved by the Article III judge.
//

4. Property Damage Claims.

Billions of dollars are now claimed or expected to be claimed by insurers who have reimbursed victims for their property losses and thus are subrogated to their claims. There are also millions if not billions of dollars of claims for personal property damages and other losses suffered by all types of governmental agencies. Further, there are no doubt thousands of claimants who have suffered losses of property of all types and do not have personal injury or wrongful death claims.

5. Additional Problems.

PG&E must deal with liabilities arising from more than twenty separate fires, perhaps from as many different causes. Whether just the larger ones are all that are necessary for estimation, or groups of them, or some other approach, must be considered. Because property damage claims, whether held by the original victims or by subrogated parties, may not include personal injury claims of the claimants. That raises the yet unanswered question of whether there should be separate estimation proceedings involving those claims.

My list is by no means complete, but only illustrative of the myriad problems that must be dealt with.

The estimation process will involve determining a correct amount to deal with all of the foregoing to arrive at an estimated amount to be dedicated for the benefit of the victims. Even how to structure the process itself will require consideration of various ways that have been utilized by other courts.[2] And the mere size and breadth of the wildfires and the

---

[2] See Prof. Gibson's examples, *id* at 90.

-6-

claims that will be considered might lead to innovative procedures that have never been attempted before.[3]

E. RECOMMENDATION

I recommend that the District Court order the partial withdrawal of the reference of the Section 502(c) estimation of unliquidated claims arising from the Northern California wildfires. The stakes are very high and these several complex issues are inexorably intertwined. For those reasons I believe that an Article III judge should decide:

1. Under 28 U.S.C. § 157(b)(3), what aspects of the unliquidated claims estimation are core proceedings and what aspects are non-core? In and of itself, that would appear to be a straight forward question the statute leaves to the bankruptcy judge. But because of the intersection of the issues I have outlined and the ramifications of the answers to the questions presented, the Article III judge should make the decision.

2. Whether personal injury and wrongful death claims include or exclude damages due to emotional distress (or any similar theory of recovery)?

---

[3] My recent decision to permit a trial to proceed in San Francisco Superior Court regarding the Tubbs fire was intended, in part, to provide information to inform the tier of fact as to a critical date point as part of the anticipated estimation process.

-7-

3. The schedule for and method of the conduct of the estimation proceedings.[4]

4. The 11 U.S.C. 502(c) estimation of unliquidated personal injury and wrongful death claims against Debtors for all purposes under 28 U.S.C. § 157(b)(2).

F. TIMING

B.L.R. 9015-2(b) deals with the duties of a bankruptcy judge when a party has a right to a jury trial and has made a timely demand. That rule is instructive for a procedure that seems appropriate here. It requires the bankruptcy judge to resolve all pretrial matters including dispositive motions and to report to the District Court when the matter is "suitable for a withdrawal". Because there are numerous pretrial matters pertaining to the estimation process, I recommend that the court order withdrawal of the reference as set forth above, designate the assigned judge, but defer the effective date of that withdrawal until: I have completed those preparatory matters; briefed the assigned judge on the status of these preparations; have been instructed by that judge as to any desired preliminary status conferences to be held, any briefing schedules to be promulgated, possible input from the parties to be solicited, or other procedures to be implemented; and that judge has directed that the partial withdrawal become effective for all purposes.

***END OF RECOMMENDATION***

---

[4] Not included, but as part of the estimation process, is PG&E's contention that California's inverse condemnation doctrine does not apply to it as a privately-owned utility. That will be briefed and argued before me as a matter of law.

-8-