**Exhibit 1-A**

**Engagement Letter**

**WillisTowers Watson I.I'I'I.I**

December 10, 2018

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention: Stephen Karotkin

Dear Mr. Karotkin,

We appreciate the opportunity to be considered as an advisor to PG&E Corporation and its affiliates (collectively, "PG&E" or the "Company"). As discussed, while we will serve PG&E during the course of our engagement, we will formally contract with Weil, Gotshal & Manges LLP ("Weil"). This agreement will confirm the proposed terms of the engagement of Towers Watson Delaware Inc. or any of its affiliates ("Willis Towers Watson," "we" or "us"), by Weil, on behalf of PG&E. Weil, as counsel to and on behalf of the Company, seeks to retain Willis Towers Watson to provide certain compensation-related consulting and advisory services (the "Services") that are necessary for Weil to render legal advice to the company, and it is the parties' intent that all of the Services are privileged and protected by the Attorney Work Product Privilege, Attorney-Client Privilege, and other applicable privilege doctrines available under applicable law. Weil is interested in having Willis Towers Watson work with Weil, PG&E's management, its Board of Directors (as appropriate) and its other advisors in connection with its engagement. Specific services to be provided will be agreed to by Weil and Willis Towers Watson.

### *Staffing*

Doug Friske will lead the engagement for Weil, on behalf of the Company, and will be responsible for the quality of all deliverables. Doug is a Managing Director in Willis Towers Watson's executive compensation practice and has significant experience providing compensation-related consulting services. Other consultants from Willis Towers Watson's rewards line of business will assist on the engagement, as required.

### *Timing*

We are prepared to begin the engagement immediately.

### *Terms and Conditions of Engagement*

The Services that Willis Towers Watson provides to Weil, on behalf of PG&E, will be provided subject to the Terms and Conditions contained in Attachment 1 to this letter.

Doug Friske
Managing Director
233 South Wacker Drive
Suite 1800
Chicago IL 60606

T +1 312 873 1963
E doug.friske@willistowerswatson.com
W willistowerswatson.com

Proprietary and Confidential. For authorized Willis Towers Watson employees and clients only. Not suitable for use by unauthorized recipient or for unintended purpose.
Towers Watson Delaware Inc.

**Willis Towers Watson**

Stephen Karotkin
Weil, Gotshal & Manges LLP
December 10, 2018

*Fees and Expenses*

We will charge the Company on a time and expense basis as provided herein and in Attachment 1. Payment of the fees for our estimated hourly time charges will be by an initial retainer in the amount of $150,000. It will be payable immediately upon execution of this letter agreement. As the remaining balance under this retainer falls below $5,000, based on Services provided, we will invoice PG&E for an additional $50,000 retainer on the same terms as above.

Our billing rates are evaluated annually to ensure they are consistent with market practice and may change over time. The current hourly rates for the levels of personnel expected to work on this matter are as follows:

- Managing Director: $1,000 - $1,200
- Senior Director: $800 - $1,000
- Director: $600 - $800
- Analyst / Other Associates: $300 - $600

Weil shall under no circumstances be obligated to pay any compensation, expense, reimbursement, indemnification, or other amounts payable pursuant to this agreement or the provisions set forth in Attachment 1. Willis Towers Watson is being retained by Weil to provide advice to assist Weil in Weil's provision of legal services to the Company, and Willis Towers Watson's fees and expenses will be paid by the Company. For the avoidance of doubt, notwithstanding anything herein to the contrary, Weil shall not be responsible for any such amounts and Willis Towers Watson shall look only to the Company for payment hereunder.

We will track the actual provision of Services by monitoring the number of hours worked by our personnel, as well as hourly time charges. We will provide Weil, on behalf of the Company, and the Company, if requested, with a review and analysis of the actual provision of Services on a quarterly basis.

Each invoice is to be paid by electronic transfer of funds to the account below. Please enter the Invoice Number on the Company's wire payable to Towers Watson Delaware, Inc.

Electronic payment information:

Towers Watson Delaware Inc.
JP Morgan Chase Bank, New York, NY
Transit or ABA # 021 000 021
SWIFT CODE # CHASUS33
Account Number: 600039262

If this letter and the Attachments accurately describe the terms of our engagement, please have an authorized representative of Weil and the Company sign and return **both** this letter and the terms and conditions (Attachment 1) to me.

Willis Towers Watson appreciates the opportunity to be of service to Weil. If Weil or the Company has any questions now or during the course of our engagement, please contact me.

Very truly yours,

Doug Friske
Managing Director

Attachment 1 (Terms & Conditions)

Signed by and on behalf of:

**TOWERS WATSON DELAWARE INC.**

By: _[signature]_

Print Name: Doug Friske

Print Title: Managing Director

Date: December 10, 2018

*Accepted and agreed on behalf of:*

**WEIL, GOTSHAL & MANGES LLP**

By: _[signature]_

Print Name: STEPHEN KAROTKIN

Print Title: Partner

Date: December 10, 2018

**PG&E CORPORATION**

By: _[signature]_

Print Name: JOHN R. SIMON

Print Title: GENERAL Counsel

Date: December 10, 2018

## Attachment 1
## Willis Towers Watson and Weil, Gotshal & Manges LLP
## Terms & Conditions

1. **Parties and Application.** These terms and conditions ("terms") cover all services, advice, work product and other deliverables (collectively, the "services") provided by the Willis Towers Watson entity identified below or any of its affiliates ("Willis Towers Watson", "we", "our" or "us") to Weil, Gotshal & Manges LLP ("Weil") as counsel to, and on behalf of, PG&E and certain of its affiliates (collectively, "PG&E" or the "Company"), and the Company.

   The scope of our services for each project (the "statement of work") will be agreed by Weil, on behalf of the Company, and us in written communications and shall, unless provided otherwise, incorporate these terms.

2. **Fees.** Expenses are charged in addition. We may also charge a technical and administrative fee of 7% of the consulting fees and an administrative fee of 5% of any vendor charges other than travel, unless arrangements are made in advance for charges to be invoiced to and paid by you directly.

   Unless otherwise agreed, we will submit invoices for the Services provided and expenses incurred on a monthly basis. Invoices shall be paid within 30 days of receipt. In the event that invoices are not paid within that time, we shall be entitled to charge a late payment fee of the lesser of 1.0% per month or the maximum allowed by law.

   Any fees or rates quoted or estimated shall be exclusive of income tax or of any sales, ad valorem, value added tax or any similar tax unless such tax is required to be included pursuant to a statutory requirement. If required, WTW will add the relevant tax to the invoice, separately stated, and remit such tax to the appropriate authority.

3. **Our Responsibilities.** We shall provide the services in a professional manner with reasonable skill and care. We will assign to the project team members of our staff with adequate education, training and experience to perform the tasks assigned to them. We will use reasonable endeavors to meet any timetable that we may agree with Weil, on behalf of the Company, and the Company.

   The work product we deliver to Weil, as counsel to and on behalf of PG&E, in connection with the performance of the services will not infringe any intellectual property right of any third party. Unless otherwise expressly agreed in writing, we do not accept any fiduciary or trust responsibilities or liability in connection with the performance of the services. We do not provide legal, accounting or tax advice.

   Weil shall under no circumstances be obligated to pay any compensation, expense, reimbursement, indemnification, or other amounts payable pursuant to this agreement or the provisions set forth herein. Willis Towers Watson is being retained by Weil to provide certain compensation-related consulting and advisory services to assist Weil in Weil's provision of legal services to the Company, and Willis Towers Watson's fees and expenses will be paid by the Company. For the avoidance of doubt, notwithstanding anything herein to the contrary, Weil shall not be responsible for any such amounts and Willis Towers Watson shall look only to the Company for payment hereunder.

4. **The Company's Responsibilities.** The Company will timely provide us with the documentation, information, access to the Company's personnel and cooperation we reasonably require to provide the services. Any delay or failure to provide materials, information or cooperation may result in a revision to any agreed timetable and/or, if we need to do additional work as a result, in additional fees being charged. We will rely on the documentation and information provided to us by the Company or the Company's representatives and do not take responsibility for verifying the accuracy or

completeness of it. Weil and the Company may rely only upon our final work product and not on any drafts or oral statements made by us in the course of the services.

5. **Intellectual Property Rights and Work Product.** Weil and the Company shall retain ownership of all original data and materials, and the intellectual property rights in that data, provided to us by Weil, the Company, or the Company's representatives. Weil and the Company will have the right to use, reproduce and adapt the copies of the work product delivered to them for internal purposes within their organizations. We shall retain the intellectual property rights in such work product, and the skills, know-how and methodologies used or acquired by us during the course of providing any services.

    The services we perform, including the work product we deliver to Weil or the Company, are provided solely for the intended purpose, and may not be referenced or distributed to any other party without our prior written consent. Weil and the Company may distribute our work product to their affiliates, provided that they ensure that each such affiliate complies with these terms and the applicable statement of work as if it were a party to them, and Weil and the Company remain responsible for such compliance.

    Weil and the Company shall not refer to us or include any of our work product in any shareholder communication or in any offering materials (or fairness opinion provided by their professional advisers) prepared in connection with the public offering or private placement of any security, unless otherwise agreed in writing.

6. **Confidentiality and Data Privacy.** Each party shall protect all confidential information which the other party provides to it (whether orally, in writing or in any other form) using the same standards as the recipient applies to its own comparable confidential information, but in no event less than reasonable measures.

    Each party's obligations will not apply to information: (i) already known to it at the time of disclosure; (ii) in the public domain or publicly available; (iii) available from a third party who is under no such obligation of confidentiality; or (iv) independently developed by it. Each party may disclose confidential information to its legal advisers to protect its own legitimate interests and to comply with any legal or regulatory requirements. If any court, regulatory authority, professional body or legal process requires the recipient to disclose information covered by this confidentiality obligation, then the recipient may make any such disclosure; provided that the recipient will, if permitted by law, advise the other party promptly of any such requirement and cooperate, at such other party's expense, in responding to it.

    We are a global business and in performing the services we may pass Personal Data within our global network of offices and affiliates and to providers of IT outsourcing who will be subject to appropriate data protection standards. Irrespective of where we receive or hold individually identifiable personal information ("Personal Data") on Weil or the Company's behalf, we confirm that, acting as data processor we will take appropriate technical, physical and organizational/administrative measures to protect that Personal Data against accidental or unlawful destruction or accidental loss or unauthorized alteration, disclosure or access. We will only use that Personal Data for the purposes of providing services to Weil, on behalf of the Company, and the Company, or for other reasonable purposes which are related to the services we provide, unless Weil or the Company instructs us otherwise. Weil, the Company, and Willis Towers Watson shall each comply with the provisions and obligations imposed on each of us by applicable data privacy legislation and regulations.

7. **Limitation of Liability.** If our services do not conform to the requirements agreed between us please notify us promptly and we shall re-perform any non-conforming services at no additional charge or, at our option, refund the portion of the fees paid with respect to such services.

    If re-performance of the services or refund of the applicable fees would not provide an adequate remedy for damages, the aggregate liability of Willis Towers Watson and its employees, directors, officers, agents and subcontractors (the

"related persons") to Weil, on behalf of the Company, or the Company, whether in contract, tort (including negligence), breach of statutory duty or otherwise for any losses arising from or in any way connected with our services shall not exceed in aggregate the greater of (a) $250,000 or (b) the total amount of the fees paid to us for the services provided pursuant to that statement of work during any 12-month period beginning with the commencement of that statement of work, unless otherwise agreed in writing. Nothing in these terms shall exclude or limit the liability of Willis Towers Watson or our related persons in the case of: (a) death or personal injury resulting from our or our related person's negligence; (b) willful misconduct; (c) fraud; or (d) other liability to the extent that the same may not be excluded or limited as a matter of law. In no event shall we or any of our related persons or affiliates be liable for any incidental, special, punitive, or consequential damages of any kind (including, without limitation, loss of income, loss of profits, or other pecuniary loss).

Where we are jointly liable to the Company with another party, we shall to the extent permitted by law only be liable for those losses that correspond directly with our share of responsibility for the losses in question.

8. **Third Parties.** These terms only create rights enforceable by Weil, acting on behalf of the Company, and the Company, and do not create any rights enforceable by any other party.

   We accept no responsibility for any consequences arising from any third party relying on our work product. If we agree to provide our work product to a third party, Weil or the Company are responsible for ensuring that the third party is made aware of the fact that they are not entitled to rely upon it.

   The Company agrees to reimburse us for all costs (including reasonable attorney's fees) that we incur in responding to any requests or demands from third parties, pursuant to legal process or otherwise, for data or information related to the services provided to Weil, on behalf of the Company, or the Company.

9. **Termination.** Either party may terminate a project on 7 days' written notice to the other party. We shall be entitled to be paid for services rendered up to the date of any such termination, and for expenses incurred. Any of these terms that would be reasonably intended to apply after termination will do so.

10. **Miscellaneous.** These terms, together with the statement of work, set out the entire agreement between Weil, the Company, and us concerning the provision of the services. Any modifications of or amendments to these terms or a change to the services must be in writing and agreed by the parties. Should any of these terms be declared void, illegal or otherwise unenforceable, the remainder shall survive unaffected.

    Neither party may assign or delegate any of its rights or obligations to any third party without the prior written consent of the other party. Notwithstanding the foregoing either party may assign or delegate any of its rights and obligations to an affiliate. We reserve the right to employ subcontractors to assist us in providing services and to pass to them any information and materials they need to perform their work. Where we use affiliates or subcontractors to provide the services to Weil, on behalf of the Company, we will remain responsible for the provision of such services.

11. **Dispute Resolution.** The parties agree to work in good faith to resolve any disputes that may arise. If we cannot resolve a dispute the matter will be submitted to nonbinding mediation before either party pursues other remedies. If the governing law is any jurisdiction other than California, the parties hereby waive any right they may have to demand a jury trial.

    If the governing law is that of California, except as otherwise provided below, any controversy or claim arising out of or relating to the Agreement which the parties are unable to resolve between themselves shall be resolved by arbitration in San Diego, California before a panel of three arbitrators in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Each party shall have the right to select one of the arbitrators and the two arbitrators

so selected will agree on the choice of the third arbitrator. Each party will bear the expenses of the arbitrator it selects and one-half of the expenses of the third arbitrator and other costs related to the arbitration. The arbitrators shall provide a decision in writing stating their reasons and rationale for the decision. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Each party hereto hereby consents to personal jurisdiction in the State of California and agrees that venue will be proper in such state and that such state is the most convenient forum for actions or proceedings arising out of any such controversy or claim and consents to the service of process in any such action or proceeding by certified or registered mailing of the summons and complaint therein directed to such party at the address provided. This arbitration process will be the sole and exclusive means for resolving any controversy or claim except for a controversy or claim involving the ownership or use of work product or intellectual property, provided that either party may seek an injunction or other equitable relief if such action is necessary to avoid irreparable damage or to preserve the status quo.

12. **Governing Law.** Any controversy, dispute or claim of any kind between the parties shall be governed by and interpreted in accordance with the laws of the jurisdiction where our office principally responsible for providing services to Weil and the Company is located, without regard to any provisions governing conflicts of laws; provided that if such office is located outside of the US or Canada, the governing law shall be that of the State of New York.

Signed by and on behalf of:

**TOWERS WATSON DELAWARE INC.**

By: _[signature]_
Print Name: Doug Friske
Print Title: Managing Director
Date: December 10, 2018

Accepted and agreed on behalf of:

**WEIL, GOTSHAL & MANGES LLP**

By: _[signature]_
Print Name: STEPHEN KAROTKIN
Print Title: Partner
Date: December 10, 2018

**PG&E CORPORATION**

By: _[signature]_
Print Name: J.NN R. SIMON
Print Title: General Counsel
Date: December 10, 2018