Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## Exhibit 1-B

**Master Services Agreement**




# Contract Change Order

This is Change Order ("CO") No. 2 to Contract No. 4400009506 dated 1/1/2015 between the below-named Contractor ("Contractor"), a Delaware Corporation, and Pacific Gas and Electric Company ("PG&E"), a California corporation with its headquarters located at 77 Beale Street, San Francisco, California 94105.  Contractor shall perform all Work under this Contract, as amended by this Change Order, pursuant to and in accordance with the terms and conditions of the Contract.

| | | |
|---|---|---|
| Contractor's Legal Name: | Towers Watson Delaware Inc. | This Contract Change Order consists of 52 page(s). |
| Contractor's Address: | 1500 Market St. | |
| | Philadelphia, PA 19102 | |
| Project Name: | Towers Watson Actuarial &  Other Consulting Services MSA | |
| Job Location: | PG&E General Offices and Contractor's Own Offices | |

**CHANGES:  The Parties hereby modify the Contract referenced above as follows:**

Extend expiration date from August 15, 2017 to August, 31 2020, the new contract expiration date.

The Contract expiration date is hereby extended from August15, 2017, to August 31, 2020.  The Parties specifically agree that this Contract shall be deemed to have been in effect continuously and without interruption since the original effective date of February 12, 2015.

Delete Attachment 1, Specific Conditions and replace with Revised Attachment 1, Specific Conditions

Delete Attachment 2, General Conditions and replace with Revised Attachment 2, General Conditions

**ATTACHMENTS:  The following are attached to this Contract Change Order and incorporated herein by this reference.**

Attachment No. 1 Revised Specific Conditions,  pages, 3-23
Attachment No.  2 – Revised General Conditions, pages 24-52

| PRICING CHANGES: | | |
|---|---|---|
| | Previous Total Contract Value: | $ Sum or all Contract Work Authorizations (CWAs) |
| | Addition or Deduction: | $ Sum or all Contract Work Authorizations (CWAs) |
| | Revised Total Contract Value: | $ Sum of all Contract Work Authorizations (CWAs) |

All other terms and conditions of the Contract, as it may have been amended by previous Contract Change Order(s), if any, shall remain the same.

**THE PARTIES, BY SIGNATURE OF THEIR AUTHORIZED REPRESENTATIVES, HEREBY AGREE TO THE TERMS OF THIS CONTRACT CHANGE ORDER.**

| PACIFIC GAS AND ELECTRIC COMPANY | | CONTRACTOR: Towers Watson Delaware Inc. | |
|---|---|---|---|
| Signature | e-Signed by Richard Cordova on 2017-08-24 17:25:59 GMT | Signature | *Maureen Tarantello* |
| Name | Richard Cordova | Name | Maureen Tarantello |
| Title | Portfolio Manager, Sourcing Operations | Title | Western Regional Leader |
| Date | August 24, 2017 | Date | August 16, 2017 |

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 2 of 53



| ADMINISTRATION | | | |
|---|---|---|---|
| PG&E Negotiator | Kathleen Elliott/Rita Manzana | Contractor Representative | Tom Matthews |
| Phone | 415-973-5585/415-972-5463 | Phone | 415-733-4145 |
| Email: | kme8@pge.com/RUMU@pge.com | Email: | tom.matthews@willistowerswatson.com |
| Accounting Reference | | | |

| INTERNAL PG&E USE ONLY | | |
|---|---|---|
| Distribution Date | | |
| Distribution of Copies | ☐ Document Services (Signed Original Copy) Mail Code N5D 245 MARKET ST., SAN FRANCISCO | ☐ Contractor (Signed Original Copy) |
| | ☐ Work Supervisor | ☒ Manager  Janet Ogata |
| | ☐ Invoice Approver | ☐ Supervisor |
| | ☐ V.P. | ☐ Sourcing/ Purchasing |
| | ☐ Director | ☐ Law |

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 3 of 53

# REVISED ATTACHMENT 1
## SPECIFIC CONDITIONS

### Consulting Services

### Table of Contents

Section One - Introduction and Purpose ................................................................. 2
Section Two - Definitions ......................................................................................... 2
Section Three – General Provisions ......................................................................... 4
Section Four – Statement of Work ............................................................................ 5
Exhibit A - Contract Work Authorization Supplemental Terms ............................... 9
Exhibit B - Statement of Work Template Requirements ......................................... 13
Exhibit B1 –Sample Resource Schedule and Budget. ........................................... 14
Exhibit C – Bill Rate Table and Other Commercial Terms ....................................... 2
Exhibit D – Firm Activity Report .............................................................................. 4
Exhibit E – Project Scorecard .................................................................................. 5

6265423 3

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 4 of 53

Section One - Introduction and Purpose

1.1     These Specific Conditions establish the terms and conditions under which, Towers Watson Delaware, Inc. ("Consultant") shall provide Pacific Gas and Electric Company ("PG&E"), a subsidiary of PG&E Corporation ("PG&E Corporation), with Services described at Section 4.1. Each assigned Project will follow general steps for completion as described in these Specific Conditions and/or in each Contract Work Authorization ("CWA").

1.2     The Consultant's personnel shall provide these Services on specific assigned projects(s) using applicable Typical Timing milestones as stated in each project or projects,  CWAs and as follows:
- Start of Project
- Data collection design complete
- Evaluation design complete
- Data collection begins
- Data collection complete
- Specific data collection issues (e.g., pilot testing, executive interviews)
- Data Analysis complete
- Preliminary results available
- Solutions and ROI developed
- Implementation started
- Implementation complete
- Phases complete
- Reports developed and implemented
- Project turned over date
- Presentation to management

1.3 CONTRACT TERM

 This Master Services Agreement shall become effective on January 1, 2015.  Contract completion date is extended by mutual agreement of the parties through August 31, 2020 unless further extended by mutual agreement of the parties.  If any CWAs are still in progress as of August 31, 2020 (or any contract extension), the applicable CWA shall continue in effect until (a) such services or deliverables are completed in accordance with the requirements of such CWA, (b) the CWA is terminated in accordance with Section 8 of the General Conditions or (c) the parties mutually agree to terminate the project.

1.4 CONFLICT BETWEEN TERMS

Should a conflict exist between the General Conditions and the Specific Conditions, the Specific Conditions shall control.  Should a conflict exist between the Specific Conditions or General Conditions and any applicable CWA, the CWA shall control only for purposes of that specific project.  Should a conflict exist between the Specific Conditions or General Conditions and the applicable federal, state or local law, rule regulation, order or code, the law, rule, regulation order or code shall control.  Varying degrees of stringency among the General Conditions, Specific Conditions, Attachments (including any CWAs), laws, rules, regulations, orders or codes are not deemed conflicts and the most stringent requirements shall control.

Section Two - Definitions

6265423 3

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 5 of 53

The definitions in the General Conditions, Section 1.0, "Definitions," are supplemented with the terms defined below:

2.1.    Contract Documents: all documents included as part of the Contract, as more specifically defined and described in the Contract.

2.2.    Final Completion Date: the date upon which (i) the Project has been fully completed (including, if applicable, punch list items) and accepted by PG&E's Work Supervisor, (ii) if applicable, certificates of completion have been issued for the entire Project and all conditions to final certificate of completion have been satisfied, (iii) the Consultant has properly completed all of its services required to be completed prior to the Final Completion Date hereunder to PG&E's reasonable satisfaction, and (iv) all Project Costs have been accounted for, and final payment to the Consultant has been approved by PG&E Work Supervisor and paid to Consultant.

2.3.    PG&E Relationship Manager: the PG&E employee representing PG&E's interest in connection with this Master Service Agreement.

2.4.    PG&E Work Supervisor: the PG&E employee representing PG&E's interest in connection with a CWA.  Each CWA issued will describe a project and the Project Manager's duties related to the project and will identify PG&E's Work Supervisor.

2.5.    Project: the assignment that will be described in a CWA accompanied by a technical specification, statement of work, and/or requirements document that includes the Project Budget, project contingency reserve, project cost, project schedule and the Final  Completion Date.

2.6.    Consultant's Project Manager: the meaning set forth in Section 4.4.

2.7.    Project Schedule: a complete written schedule indicating the sequence and duration of various activities.  The Project Schedule shall establish dates by which any information is to be provided or tasks are to be accomplished by Consultant.  A Sample Project Schedule is attached hereto as Exhibit B, Sample Project Budget/Sample Project Schedule to this Contract.  The Project Schedule shall be revised and updated, subject to approval by the PG&E Work Supervisor, as provided in a CWA.  The Project Schedule is for the administrative and management convenience of PG&E Work Supervisor, PG&E and Consultant's Project Manager and may not be relied upon by any Consultant in any way to establish any claims whatsoever, including claims for disruption or delay.  The parties will each use reasonable efforts to comply with the Project Schedule including, without limitation, working together in good faith to adjust the Project Schedule as necessary to minimize the impact of any delays.

2.8.    Services: the services described at Section 4.1.

2.9.    Site: the physical location where the work will be performed.

6265423.3

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 6 of 53

Section Three – General Provisions

3.1.　Coordination with PG&E. Consultant's performance of its obligations under this Contract may require close coordination with various PG&E departments and other PG&E consultants. In the event that any PG&E employee or user group is causing a delay or a deviation from the expected quality or cost of the Project, Consultant shall (a) promptly give notice thereof to the PG&E Work Supervisor, (b) note the delay or deviation in the project status report, and (c) assist PG&E in resolving the issue on a timely basis.

3.2.　The Consultant shall assign Project team members including but not limited to, Consultant's Project Managers and employees of various qualifications. The Consultant shall provide these services, at PG&E's discretion, during the design, budgeting, implementation, and turn over to PG&E management phases of assigned Projects.

3.3.　Contract Work Authorization ("CWA"). The Services shall be performed by Consultant only after the execution of a CWA, or other internal forms of approval, by Consultant and PG&E. The terms and conditions of this Contract shall apply independently to each CWA. The issuance of any CWA shall not commit PG&E to any future services by Consultant.

3.4　PG&E may issue a CWA to Consultant as a direct-award or through a competitive bidding process. PG&E SHALL NOT BE LIABLE FOR ANY COSTS INCURRED BY CONSULTANT IN PREPARATION OF A PROPOSAL OR FOR OTHER "MARKETING" EFFORTS PUT FORTH BY CONSULTANT.

3.5.　CWA Term. Services performed under any CWA not completed within the effective term of this Contract shall terminate at the conclusion of the term specified in the CWA and any modifications thereto. This Contract shall govern Consultant's and PG&E's rights and obligations with respect to said CWA to the same extent as if the CWA was completed during the term of this Contract.

3.6.　Modification. PG&E and Consultant will address changes to a CWA by issuing a Change Order to the CWA. Unless expressly authorized in the modified CWA, all the terms of the original CWA and any previous CWA modifications shall remain in full force and effect.

3.7.　If during the performance of a Project task, the task's schedule cannot be met, Consultant shall without unreasonable delay, but within 5 business days, notify PG&E's Work Supervisor. Both Consultant and PG&E shall agree upon a corrective course of action and a new schedule, as appropriate.

3.8.　Upon request by PG&E, Consultant shall inform PG&E of the status of all Projects and development activities at PG&E ("Firm Activity Report"), submit current project evaluations ("Project Scorecard"), and meet with PG&E's Relationship Manager to discuss this Master Service Agreement. PG&E shall limit its request to once per calendar quarter.

3.9　Consultant's service activity and spend with PG&E Corporation shall be deemed one and the same with PG&E for collective governance and management under this MSA. Unless

Case: 19-30088　Doc# 3650-2　Filed: 08/21/19　Entered: 08/21/19 16:58:41　Page 7 of 53

otherwise mutually agreed-to, the terms set forth in this agreement shall extend and be made applicable to all related work provided for the benefit of PG&E Corporation.

Section Four – Statement of Work

4.1.    Consultant shall provide PG&E with comprehensive Services including actuarial, underwriting, compensation consulting, communications consulting, and benefits consulting and support in the functional areas outlined further in this section.  Details of each engagement will be outlined in a CWA and any related proposal:

1.  Regulatory proceeding testimony and support including: General Rate Case, Pension Recovery Mechanism and affiliated compliance proceedings

2.  Union Negotiations and contract administration

3.  Pension & 401K benefits, including actuarial support work for the Retirement Plan (defined benefit plan) and PBOP Medical and Life.

4.  Workers Compensation actuarial support work

5.  Health & Welfare benefits

6.  Nonqualified (executive) benefits

7.  Health Care Experience Monitoring and Forecasting

8.  Benchmarking and comparative data including BenVal

9.  Pricing and actuarial analysis of benefit plan changes due to company-initiated, legal or financial accounting changes

10. Compensation consulting – including benchmarking

11. Communications/change management work

12. Rx Collaborative, including pharmaceutical analytics, benchmarking, audit and purchasing

13. Other special projects

4.2.    Consultant shall perform the work activities within any mutually agreed-to budget or fixed-fee and in a timely, orderly and safe manner.  For Services performed on a time and expense basis, Consultant will provide PG&E with an estimate of the fees to perform the Services.  If Consultant concludes that its fees will exceed the estimate, Consultant will promptly discuss the situation with PG&E and provide an estimate of the amount of fees in excess of the initial estimate to complete the Services.  If PG&E is unwilling to pay such excess, the parties will discuss limiting the scope of the Services to reduce the amount of such fees as may be agreed to by PG&E.  If PG&E does not agree to pay the excess amount or to change such scope, either party will have the right to terminate the CWA by giving written notice to the other party.  Consultant shall allow necessary time for all PG&E required reviews to meet the Project Schedule and deadlines.

6265423 3

4.3.    As soon as possible after the Consultant's receipt of a fully executed CWA, the Consultant shall hold a Kickoff meeting, (unless mutually agreed upon otherwise), that shall be scheduled with PG&E to affirm communications and Project performance criteria. The Kickoff meeting will confirm PG&E's quality standards and project objectives and include the following discussions:

> 4.3.1.    Establish the formal communication plan, meetings, conference calls and status reports.
>
> 4.3.2.    Exchange contact information.
>
> 4.3.3.    Review safety and security issues.
>
> 4.3.4.    Review roles and responsibilities.
>
> 4.3.5.    Confirm and review the project scope.
>
> 4.3.6.    Review Project schedule.
>
> 4.3.7.    Discuss required review meetings and deliverables.
>
> 4.3.8.    Review procurement process.
>
> 4.3.9.    Confirm Deliverable Milestones.
>
> 4.3.10.  Review performance and acceptance test criteria.
>
> 4.3.11.  Confirm Final Completion Date and Project closure and hand over (transition) criteria.

4.4.    For each Project, PG&E will assign a PG&E Work Supervisor and Consultant will assign a Consultant's Project Manager who shall have overall responsibility for the project for their respective organization for Project execution and lead their respective organizations' teams. PG&E's Work Supervisor and Consultant's Project Manager shall coordinate activities specified in the CWA and will act as the primary interfaces between PG&E and the Consultant's project team.

4.5.    The Consultant's and PG&E's teams shall work effectively together to coordinate all activities, meetings and deliverables for both teams for a seamless integration for each Project. Projects updates will be based on a Green, Yellow, or Red scorecard. If the project becomes Yellow or Red, Consultant's Project Manager and PG&E's Work Supervisor will meet as soon as practicable to determine a corrective course of action.

4.6    The Consultant shall manage, monitor and coordinate all Project activities as applicable, including any consultants and Subcontractors, and coordinate the assigned Project-related activities of PG&E.

4.7.    The Consultant is responsible to develop a Project Schedule as a Milestone Deliverable. All activities associated with a Project will be directed by a Project Schedule. The Project Schedule will be constructed based on a mutual agreement between the Consultant and PG&E. A preliminary Project Schedule will be provided upon the Consultant's delivery of a Project quotation and/or proposal. All Project Schedules will be constructed based on Milestone Deliverables. A Project Schedule will serve as an initial deliverable and will be subject to PG&E review and acceptance prior to beginning any substantive work or subsequent Milestone Deliverable. The approved Project Schedule shall include detailed tasks and milestone and

6265423 3

deliverable activities, including, deliverable expectation management, PG&E reviews and acceptance activities.

4.8. The Consultant shall use its best efforts as commercially acceptable in the industry to provide prompt attention and diligence to all safety and security issues, as applicable, associated with a Project. The Consultant's Project Manager will identify all issues with potential schedule impact as soon as practicable, and communicate issues to PG&E for prompt resolution.

4.9. The Consultant's Project Manager shall provide PG&E with reports detailing the Project(s) progress, including: updated schedules, progress of all activities and deliverables, budget, cash flow, safety, reliability, supplier diversity, action items, open items, and potential Change Orders, as well as any issues and the strategies and resolutions thereof. The applicable CWA shall specify the frequency and content of these reports. Consultant shall propose in a Statement of Work ("SOW"), project management activities appropriate to the Project and the underlying key tasks or work streams with progress reporting occurring at an agreed-upon frequency.

4.10. The Consultant's Project Manager shall prepare and submit to PG&E's Work Supervisor for review and approval, any necessary revisions and updates of the Project Schedule and Project Budget as soon as practicable. No such revisions or updates shall be effective unless and until approved by PG&E in its sole discretion.

4.11. Consultant's Project Manager shall hold Project update meetings with PG&E's project team as required under the approved Project Schedule, and prepare materials related to the meeting agenda and objectives. Update meetings may also be held as the PG&E Work Supervisor and Consultant Project Manager may mutually agree.

4.12. Consultant's Project Manager shall review and approve all Consultant billing rates, fees, overhead, reimbursable, equipment and material charges, percentage completion and retainage (if applicable). All requests for payment should state how funds being paid are to be applied against the approved Project Budget.

4.13. Project Overview. Immediately upon being retained by PG&E, Consultant's Project Manager shall familiarize itself with the Project, and in connection therewith, its services shall include but shall not be limited to the following:

4.13.1. Obtain a thorough and complete understanding as required to successfully complete the Project. Such an understanding may include a detailed knowledge and appreciation of operational processes and serviceability requirements, how the relevant business units are currently organized (including how work assignments are given and how work flows), and the strengths and weaknesses of existing systems, processes and facilities.

4.13.2. Identify aspects of the work which have the potential to disrupt any on-going operations as appropriate. Minimize any interference with such on-going operations.

6265423 3

Case: 19-30088   Doc# 3650-2   Filed: 08/21/19   Entered: 08/21/19 16:58:41   Page 10 of 53

4.13.3.    Provide day-to-day project management, and monitoring and coordination among the Consultant and other consultants, all with the objective of achieving satisfactory and timely completion of the Project.  Perform regular observations and inspections of the work for progress, quality and conformance with the Contract Documents, and exercise professional skill and expertise in order to minimize or avoid defects and deficiencies in the work (provided that Consultant's Project Manager shall not be required routinely to make continuous or exhaustive inspections); immediately report to PG&E in writing, any deviations from the Contract Documents.

4.13.4.    Review the progress schedule, and schedule of values prepared by Consultant and consult with PG&E concerning their acceptability.

6265423 3

INTRODUCTION

1.0     A Contract Work Authorization ("CWA") for Services as requested by Pacific Gas and Electric Company ("PG&E"). A CWA describes work to be performed by Consultant, its personnel and Project Manager(s). Additional services shall be provided only as authorized by in a separate Change Order signed by authorized representatives of PG&E and Consultant.

2.0     DEFINITIONS. The definitions in the Supplemental Specific Conditions and the General Conditions, Section 1.0, "Definitions," are supplemented with the terms defined below:

2.1     Change Order. A Change Order is a revision or modification to the Contract reflected on a PG&E Field Order form or a PG&E Change Order form executed by both parties, issued after the execution of the Contract. Consultant or PG&E may initiate a Change Order request. A Change Order authorizes a change in the work and may authorize an adjustment in the Contract scope, sum or the time(s) of completion.

2.2     "PG&E Authorized Representative": The Pacific Gas and Electric Company employee authorized to sign a Contract Work Authorization.

2.3     Project Budget. The Project Budget is the detailed, line item budget for the estimated Project Costs. A Sample Project Budget is attached as Exhibit B to this Contract. The Project Budget shall be revised and updated, subject to approval by PG&E, as provided in this Contract.

2.4     Project Contingency. The Project Contingency is a reserve for contingencies established in the Project Budget. Amounts shall be charged or credited to the Project Contingency, as reasonably determined by PG&E:

2.4.1   Costs incurred in excess of amounts provided on any other line item in the Project Budget, including unforeseen costs for which provision was not made in the Project Budget, shall be charged to the Project Contingency;

2.4.2   Costs attributable to any Change Orders, excluding only substantial changes in the scope of the Project which are initiated by PG&E, shall be charged or credited to the Project Contingency.

2.5.3   On the Final Completion Date, any budgeted amounts in excess of costs actually incurred shall be credited to the Project Contingency.

3.0     STATEMENT OF WORK AND DELIVERABLES

6265423 3

3.1     Services Provided Under a CWA.     Consultant shall provide consulting services for the Project described in a CWA. A CWA may be more fully set forth and described in one or more supporting Statements of Work.

3.2     Description of Work and Deliverables.     Statement of Work ("SOW") [Exhibit B] describes work to be performed by Consultant and will be referenced in a CWA. A detailed Statement of Work is to be provided by the Consultant and approved by PG&E.

4.0     WORK LOCATION.

Services may be performed at Consultant's place of business and in various locations throughout the Pacific Gas and Electric Company service territory, as required for successful completion of the work described in Section 3.

5.0     FEES AND EXPENSES

5.1     PG&E requests fixed, deliverable or milestone based quotations where feasible supported by the Consultant delivery team's hours, rates, fees and expenses planned to complete the proposed work.  For Statements of Work to be billed on a time and expenses basis, Consultant is paid for time actually spent on a project and work that is delivered to PG&E. All travel and project related expenses will be billed at cost unless otherwise authorized by PG&E. Professional resources, fees and expenses shall be provided according to a planned timeline, deliverable/milestone and utilization schedule as illustrated in Exhibit B1.  Professional rates and budgeted fees shall not exceed those authorized in the Contract and shall clearly demonstrate all applicable adjustments (i.e. discounts, etc.). A CWA is issued with a not-to-exceed amount. subject to Section 4.2 of the Specific Conditions with respect to project budgets. Any unexpended project budget shall be credited to Project Contingency.

5.1.2. Reimbursable Expenses

If expenses are specified and approved in a SOW, Consultant shall, in accordance with the provisions set forth herein, be entitled to monthly reimbursements for travel related and other approved expenses reasonably and properly incurred by Consultant in connection with Consultant's performance of the Services. Consultant shall maintain copies of all receipts for any expense over $100.  Expenses will be billed at Consultant's actual cost and may not include any increase, mark up, burden or uplift.  In no event shall PG&E be obligated to reimburse for any Expenses incurred in excess of the budgeted expense amount specified in the relevant SOW unless explicitly approved in writing by PG&E. Consultant may roll forward unbilled expenses until the final invoice for each Contract Work Authorization is paid.  All pass-through reimbursable expenses will not be subject to early payment discounts or any other rebates. If approved in writing in a SOW, Consultant may charge a fixed percentage expense rate for any services provided on a fixed fee basis, in which case the other provisions of this section and the provisions of sections 5.1.3, 5.1.4, 5.1.5 and 5.1.6 shall not apply.  Any exception to these terms must be justified and approved in writing by PG&E.

5.1.3     Expense Cap

6265423 3

Case: 19-30088     Doc# 3650-2     Filed: 08/21/19     Entered: 08/21/19 16:58:41     Page 13 of 53

Unless otherwise expressly set forth in the applicable SOW and approved CWA, expenses will be capped at a percentage ten percent (10%) of the total services fees for the applicable SOW on engagements.

### 5.1.4 Meals

Reimbursement for meal expenses will be limited to PG&E approved out of town resources only. Consultants will be reimbursed for actual documented meal expenses up to a maximum of fifty dollars ($50.00) per day including tax and tip. This is not a per diem. Consultants will not be reimbursed for alcoholic beverages. Any exception to these terms must be justified and approved in writing by PG&E.

### 5.1.5 Travel

All air travel will be by means other than first or business class, except for flights in excess of eight hours. Consultants shall make flight selections based on the lowest available airfare and may not make a selection based on personnel preference, e.g. airline, type of aircraft, seating preference or frequent flyer program. PG&E will not be charged for Consultant personnel travel time.

### 5.1.6 Hotel

A maximum of $200 per night shall be reimbursable.

5.2    Consultants invoices shall be submitted to the PG&E Work Supervisor at the address listed on the CWA.

6.0    NOTIFICATION    Consultant shall immediately notify PG&E regarding any problems which may significantly affect performance of Services by immediately notifying PG&E's Work Supervisor.

7.0    CONTRACT INTERFACE

In regard to matters relating to a CWA, parties will interface with contacts provided in the CWA.

The following PG&E Employee(s) shall be the primary contact for information related this contract:

a.    Senior Manager – Janet Ogata
      Address: 77 Beale Street, Room 2345, San Francisco, CA 94105
      Telephone: 415-973-5551
      E-mail: JKO1@pge.com

6265423.3

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 14 of 53

b.  Consultant – Tom Matthews, Account Director
    Address: 345 California St – Suite 2000, San Francisco, CA 94104
    Telephone: 415-733-4145
    E-mail: tom.matthews@towerswatson.com

c.  PG&E Strategic Sourcing – Kathleen Elliott
    Address: 245 Market St, Mail Code: N5D, San Francisco, CA 94105
    Telephone: 415-973-5585
    E-mail: kme8@pge.com

d.  PG&E Sourcing Operations – Rita Manzana
    Address: 245 Market St., Mail Code: N5D, San Francisco, CA 94105
    Telephone: 415-972-5463
    E-mail: RUMU@pge.com

6265423 3

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 15 of 53

Exhibit B - Statement of Work Template Requirements

This Statement of Work (SOW) outlines the engagement between Pacific Gas and Electric Company ("PG&E" or "client") with ___ << INSERT CONSULTANT NAME >> ___ to perform the services described below.

The governing MSA for this work is Master Services Agreement #440000XXXX executed on << INSERT DATE >> and supersedes all other oral and written representation, understandings, or agreements relating to the subject matter hereof.

Engagement Objectives and Scope of Services:

**Brief description of the situation, background of initiative, and expected outcome.**

1. **Scope.** Define the initiative, project purpose, key objective(s), impacted line(s) of business/stakeholder(s), and rationale.
2. **Deliverables, Milestones and Acceptance.** Key expected project outcomes, high-level milestones/decision points and the criteria that will be used to accept completion of project work.
3. **Anticipated Timeframe, Project Schedule** [(Exhibit B2) with activities, start and end dates and any key dependencies]
4. **Key Assumptions** [Assumptions used to base proposed team mix, duration of the project, expenses, risk, etc.]
5. **Team/Resource Description** [A description of all team members and resources (including subcontractors), levels and expertise, and their role/contribution to the project and its deliverables. ]
6. **PG&E Role and Responsibilities** [Expectations of PG&E team members, sponsors, and managers to make the project successful]
7. **Professional Fees and Expenses** [Exhibit B1]
8. **PG&E and Consultant Work Supervisor Name, Number and email address**
9. **Work Location(s)**
10. **Other (Consider the following other areas)**. Examples include:
    - Excluded work from scope
    - Consultant's approach, methodology, and tools employed to complete the described work
    - Additional factors unique to this project, special qualifications for personnel performing the work or names of individuals required to perform work
    - Special conditions that need to be considered
    - Special equipment or software required to perform the Work
    - Format requirements for deliverables drawings or reports (hard copy or electronic)
    - Performance Criteria or guarantee including duration of warranty period
    - Time allowed for PG&E review of deliverables before final acceptance

6265423 3

Case: 19-30088   Doc# 3650-2   Filed: 08/21/19   Entered: 08/21/19 16:58:41   Page 16 of 53

Exhibit B1 – Sample Resource Schedule and Budget.

All requisite data must be provided by the Consultant in the format specified by this Exhibit. Any exceptions or deviations from this Exhibit must be approved by PG&E in writing. The completed Exhibit must agree with the detailed project Schedule (Exhibit B2).

Each team member's name, title and approximate contribution to both the overall project (i.e. utilization) and each individual deliverable/milestone shall be specified. Team members who are subcontractors must be clearly identified. Any travel related expenses and discounts extended must be clearly identified and explained. Cross references to the described team members and deliverable/milestones (i.e. in the SOW narrative) must be clear and unambiguous.

Please coordinate with your PG&E Sourcing representative in advance during project planning for additional details and updates to the Exhibit.

## Resource Schedule:

| Resource Title/Name* | Utilization | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Billable Days | | 22 | 20 | 22 | 21 | 22 | 21 | 22 | 22 | 21 | 22 | 21 | 22 | |
| Partner A | 5% | 8 | 100 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 188 |
| Director B | 10% | 16 | 150 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 326 |
| Manager C | 15% | 20 | 200 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 420 |
| Consultant D | 10% | 20 | 200 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 420 |
| Consultant E | 10% | 20 | 200 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 420 |
| Analyst F | 25% | 25 | 200 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 475 |
| Analyst G | 25% | 25 | 200 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 475 |
| Project Total | 100% | | | | | | | | | | | | | |
| Full-time equivalents (FTEs) | | 134 | 1250 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 2724 |
| | | 0.6375 | 7.8125 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | |

*Indicate if subcontractor

6265423 3

Case: 19-30088   Doc# 3650-2   Filed: 08/21/19   Entered: 08/21/19 16:58:41   Page 17 of 53

6265423.3

# Billable Days

| Resource Title/Name | Utilization | 22 Jan | 20 Feb | 22 Mar | 21 April | 22 May | 22 June | 21 July | 22 Aug | 22 Sept | 21 Oct | 22 Nov | 21 Dec | 19 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Partner A | 5% | 8 | 100 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 188 |
| Director B | 10% | 16 | 150 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 326 |
| Manager C | 15% | 20 | 200 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 420 |
| Consultant D | 10% | 20 | 200 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 420 |
| Consultant E | 10% | 20 | 200 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 420 |
| Analyst F | 25% | 25 | 300 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 475 |
| Analyst G | 25% | 25 | 300 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 475 |
| Project Total | 100% | | | | | | | | | | | | | | 2724 |
| Full-Time Equivalents (FTEs) | | 134 | 1250 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | |
| Average FTEs/quarter | | 0.8375 | 7.8125 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | 0.8375 | |

# Project Budget:

## Deliverable/Milestone A

| Resource Title/Name | % of Time | Rate | Adj Rate | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Partner A | 5% | $ 300 | $ 300 | $ 2,400 | $ 30,000 | $ 2,400 | $ 2,400 | | | | | | | | | $ 37,200 |
| Director B | 10% | $ 250 | $ 250 | $ 4,000 | $ 37,500 | $ 4,000 | $ 4,000 | | | | | | | | | $ 49,500 |
| Manager C | 15% | $ 200 | $ 200 | $ 4,000 | $ 40,000 | $ 4,000 | $ 4,000 | | | | | | | | | $ 52,000 |
| Consultant D | 10% | $ 175 | $ 175 | $ 3,500 | $ 35,000 | $ 3,500 | $ 3,500 | | | | | | | | | $ 45,500 |
| Consultant E | 10% | $ 175 | $ 175 | $ 3,500 | $ 35,000 | $ 3,500 | $ 3,500 | | | | | | | | | $ 45,500 |
| Analyst F | 25% | $ 150 | $ 150 | $ 3,750 | $ 30,000 | $ 3,750 | $ 3,750 | | | | | | | | | $ 41,250 |
| Analyst G | 25% | $ 150 | $ 150 | $ 3,750 | $ 30,000 | $ 3,750 | $ 3,750 | | | | | | | | | $ 41,250 |
| Expenses (if applicable) | 100% | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Project Total | | | | $ 24,900 | $ 237,500 | $ 24,900 | $ 24,900 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 312,200 |

## Deliverable/Milestone B

| Resource Title/Name | % of Time | Rate | Adj Rate | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Partner A | 5% | $ 300 | $ 300 | | | | | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 19,200 |
| Director B | 10% | $ 250 | $ 250 | | | | | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 32,000 |
| Manager C | 15% | $ 200 | $ 200 | | | | | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 32,000 |
| Consultant D | 10% | $ 175 | $ 175 | | | | | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 28,000 |
| Consultant E | 10% | $ 175 | $ 175 | | | | | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 28,000 |
| Analyst F | 25% | $ 150 | $ 150 | | | | | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 30,000 |
| Analyst G | 25% | $ 150 | $ 150 | | | | | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 30,000 |
| Expenses (if applicable) | 100% | | | | | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Project Total | | | | $ - | $ - | $ - | $ - | $ 24,900 | $ 24,900 | $ 24,900 | $ 24,900 | $ 24,900 | $ 24,900 | $ 24,900 | $ 24,900 | $ 199,200 |

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 19 of 53

6265423.3

Exhibit B2 – Sample Project Budget/Sample Project Schedule

## SAMPLE PROJECT SCHEDULE

| Task ID Number | Task Name | Duration in Days | Start Date | End Date | Finish Date | Chart Progress | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Q 1 | | | Q 2 | | | Q 3 | | | |
| | | | | | | J | F | M | A | M | J | J | A | S | |

6265423.3



Exhibit C – Bill Rate Table, Fixed Fee Projects and Other Commercial Terms

Consultant will perform work both on a Time and Materials and Fixed Fee basis.

The annual Fixed Fee related work for the term of this agreement includes the actuarial support work associated with the retirement services (Retirement Plan and PBOP Medical and Life) and workers compensation services. This fee will not increase during the term. For the avoidance of doubt, any change to the Fixed Fee and associated scope of services requires mutual written approval by both parties.

Rx Collaborative Pricing: The annual Fixed Fees associated with this work is described in the associated scope of work.

**Hourly Personnel Rates:** Professional fees will be presented and charged on an hourly basis. Proposed and billed hourly rates shall not exceed the amounts below.

| Position Titles | Principal or Equivalent | Senior Consultant | Consultant | Associate | Entry Level Associate | Administrative |
|---|---|---|---|---|---|---|
| **Standard Title Equivalent** | **Partner** | **Principal** | **Manager** | **Associate** | **Entry** | **Administrative** |
| General Human Resources | 760.00 | 720.00 | 590.00 | 425.00 | 340.00 | 175.00 |
| Actuarial | 795.00 | 735.00 | 615.00 | 490.00 | 380.00 | 180.00 |
| General Compensation | 825.00 | 740.00 | 540.00 | 360.00 | 250.00 | 200.00 |
| Executive Compensation | 990.00 | 740.00 | 480.00 | 370.00 | 250.00 | 200.00 |
| Research | 785.00 | 685.00 | 580.00 | 435.00 | 350.00 | 175.00 |
| Health & Welfare | 770.00 | 685.00 | 550.00 | 415.00 | 315.00 | 175.00 |
| Pension /401K | 795.00 | 735.00 | 615.00 | 490.00 | 380.00 | 180.00 |
| Benchmarking | 785.00 | 685.00 | 580.00 | 435.00 | 350.00 | 175.00 |
| Advisory | 740.00 | 650.00 | 510.00 | 370.00 | 255.00 | 180.00 |

**Expenses:** Actual direct expenses will be billed as incurred. Aggregate direct expenses shall not exceed the expense cap specified in the applicable CWA/SOW. Consultant may roll forward unbilled expenses until the final invoice for each Contract Work Authorization.

**Fixed Rates:** Hourly Personnel Rates shall not generally increase for the duration of the agreement, expiring August 31, 2020. Thereafter, Hourly Rates shall be Consultant's then-current standard rates unless the parties otherwise mutually agree in writing. For the avoidance of doubt, any rate increase requires mutual written approval by both parties.

6265423.3



**Diversity Goal:** Consultant is committed to a diverse subcontracting goal as specified in the General Conditions. Fees and expenses for subcontractors will be billed to PG&E at Consultant's cost. Consultant may bill PG&E its Hourly Personnel Rates for Consultant's time required to manage subcontractors and assure the quality of subcontractors' work.

**Continuous Improvement:** For the duration of the contract Consultant shall provide at least two continuous improvement ideas annually for PG&E to consider.

**Discounts:**

- <u>No Bid Discounts</u>: Consultant shall provide a discount of five percent (5%) on all projects that are not subject to a competitive bid process and directly awarded to Consultant. That is, this discount will apply only to discreet work that would be reasonably expected to be otherwise bid to a range of service providers such as work that does not build upon or utilize the analysis, knowledge, and technology that is essential in the ongoing actuarial engagement.

- <u>Tenure Discounts</u>: Consultant shall provide a discount of ten percent (10%) on all projects that
    - are forecasted to continue beyond six (6) months in duration and where the Consultant associate will be assigned to the PG&E project on an 80-100% (defined as working at least 8 hours each day) basis for a continuous period of more than six months.

Discounts described above are based on the hourly rates shown in Exhibit C – as may be updated or otherwise negotiated from time to time.

For avoidance of doubt, the above discounts will generally not apply to the following circumstances for which both parties reserve the right to discuss and mutually agree alternatively in writing:
- Any out of pocket expenses (e.g., travel and project related expenses); or
- Any amounts paid to subcontractors; or
- Unless otherwise mutually agreed in writing, work involving special circumstances e.g. executive compensation consulting to the Compensation Committee, products (e.g. software), administration platforms, and other consulting services not priced on a time and expense basis (e.g. Towers Watson Investment services or Exchange solutions).
- Rx Collaborative Pricing

G265423.3

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 22 of 53



Exhibit D — Firm Activity Report

PG&E may request the information below in MS Excel format, on a quarterly basis. PG&E will initiate the request process. Firm activity includes all activity within PG&E's Corporate or Utility organizations.

**Project Information**

- CWA , PO number or project description
- Project Type
- Project name or short description
- Project status
- PG&E functional area
- PG&E executive sponsor
- PG&E Project Supervisor
- Consultant Project Manager
- Consultant Project Manager's Email
- Active project time (weeks of reporting quarter)
- Number of Full-Time Equivalent employees staffed by level
- Invoiced fees and expenses for the reporting quarter
- Invoiced diverse fees and expenses for the reporting quarter
- Invoiced fees and expenses for the project to date
- CWA authorized spend amount

**Areas of Investment or Opportunity**

- Description of Consultant investment or perceived opportunity
- PG&E functional area
- Current or Desired PG&E contact
- Consultant Project Manager (if applicable)
- Consultant Project Manager's email (if applicable)
- Active investment time (weeks in reporting quarter)
- Number of Full-Time Equivalent employees invested by level

**Issues or Concerns requiring PG&E Relationship Manager Attention**

6265423.3

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 23 of 53



Exhibit E – Project Scorecard

PG&E may request the Consultant Project Manager to complete an evaluation form for each CWA active during the reporting quarter. PG&E will initiate the evaluation process, and Consultant will respond in MS Excel.

Evaluations will consider the following criteria:

- Cost / Program Management: Deliverables, milestones or tasks were completed in the time allotted, are progressing as planned, or are progressing as expected under given conditions.
- Cost / Scope: Deliverables, or progress towards deliverables, align with the Scope of Work defined in the CWA.
- Delivery / Quality: Consultant work products demonstrate value added by Consultant in the form of insights, processes, recommendations, or action steps.
- Delivery / Sustainability: Consultant has worked with PG&E to build capabilities and transfer knowledge.
- Delivery / Fit: Consultant has obtained information and conveyed advice collaboratively and successfully within the context of PG&E's culture.
- Safety: Consultant adheres to safety standards and has embraced PG&E's safety goals.
- Diversity: Consultant is on track to meet stated diverse spend goals.
- Green: Consultant has made efforts to reduce environmental impact of work performed.

6265423 3

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 24 of 53

TABLE OF CONTENTS

GENERAL CONDITIONS

PAGE

1.　DEFINITIONS...................................................................................................................... 1

2.　PERFORMANCE OF THE WORK ...................................................................................... 1

3.　BILLING AND PAYMENT .................................................................................................... 3

4.　INTELLECTUAL PROPERTY.............................................................................................. 6

5.　CONFIDENTIALITY AND USE OF PG&E PROPERTY ...................................................... 6

6.　INDEMNIFICATION, WITHHOLDING AND LIMITATION OF LIABILITY ............................ 9

7.　INSURANCE REQUIREMENTS.......................................................................................... 10

8.　FORCE MAJEURE, CANCELLATION AND TERMINATION OF CONTRACT..................... 11

9.　REQUIREMENTS AND POLICIES...................................................................................... 12

10.　GENERAL PROVISIONS .................................................................................................... 15

Each of the following documents is attached hereto and incorporated herein;

| | |
|---|---|
| APPENDIX NDA | Non-Disclosure Certificate |
| EXHIBIT 1: | PG&E's Supply Chain Responsibility Policy |
| EXHIBIT 1A: | Supply Chain Responsibility - List of Subcontractors and Disbursement Plan |
| EXHIBIT 2 | Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns |
| EXHIBIT 3 | Injury and Illness Prevention Program Compliance Certificate |
| EXHIBIT 4 | PG&E Drug and Alcohol Abuse and Testing Policies |
| EXHIBIT 5 | PG&E Contractor Document Retention and Production Requirements |
| EXHIBIT 5A | Document and Data List |
| EXHIBIT 6 | Audit Rights |
| EXHIBIT 7 | NERC Requirements |
| EXHIBIT 7A | PG&E NERC CIP Program Non-Employee Attestation Form |

1. DEFINITIONS

1.1 Reserved

1.2 "Change Order": A revision or modification to the Contract reflected on a PG&E Field Order form or a PG&E Change Order form executed by both parties.

1.3 "Consultant" or "Contractor": The entity or entities entering into this Contract with PG&E to perform the Work.

1.4 "Contract": This executed master service agreement between PG&E and Consultant, including the cover page signed by each Party, each CWA, the Specific Conditions and these General Conditions, together with any and all attachments and exhibits, all of which together shall constitute the Contract.

1.5 "CWA": Contract Work Authorization. If specified in the Specific Conditions of this Contract, Work may be assigned to Consultant through CWAs which are signed by both PG&E and the Consultant. The terms and conditions of this Contract, as it may be modified or amended, shall apply independently to each CWA executed by both Parties.

1.6 "Day": Unless otherwise specified, reference to a "day" means a calendar day.

1.7 "Party" or "Parties": In the singular, PG&E or Consultant, and in the plural, both PG&E and Consultant.

1.8 "PG&E": Pacific Gas and Electric Company, a California corporation.

1.9 "Subcontract": An agreement between Consultant and Subcontractor or between Subcontractors at any level for a portion of the Work under this Contract.

1.10 "Subcontractor": Party or parties entering into a Subcontract with Consultant or another Subcontractor to perform a portion of the Work covered by the Contract.

1.11 "Work" or "Services": All services (including but not limited to professional, engineering, analytical and other consulting services), labor, supervision, materials, equipment, actions and other requirements to be performed and furnished by Consultant under this Contract.

2. PERFORMANCE OF THE WORK

2.1 INDEPENDENT CONTRACTOR: In assuming and performing the obligations of this Contract, Consultant is an independent contractor and shall not be eligible for any benefits which PG&E may provide its employees, except as expressly provided for in this Contract. All persons, if any, hired by Consultant shall be employees or Subcontractors of Consultant and shall not be construed as employees or agents of PG&E in any respect. Unless otherwise expressly agreed in writing, Consultant does not accept any fiduciary or trust responsibilities or liabilities in connection with the performance of the services. Consultant does not provide legal accounting or tax advice.

2.2 NO GUARANTEE OF WORK: THIS IS NOT AN EXCLUSIVE CONTRACT. THIS CONTRACT DOES NOT GUARANTEE THE CONSULTANT ANY WORK NOR IS THERE ANY GUARANTEE AS TO ANY VOLUME OR DURATION OF WORK. PG&E EXPRESSLY RESERVES ALL ITS RIGHTS, INCLUDING BUT NOT LIMITED TO THE RIGHT TO CONTRACT WITH THIRD PARTIES FOR THE PERFORMANCE OF WORK OF THE TYPE CONTEMPLATED BY THIS CONTRACT; THE RIGHT TO REQUEST PROPOSALS FROM OTHERS WITH OR WITHOUT REQUESTING PROPOSALS FROM CONSULTANT AND THE UNRESTRICTED RIGHT TO PERFORM THE WORK WITH PG&E'S OWN EMPLOYEES.

2.3 PRIOR WORK: Services performed by Consultant pursuant to PG&E's authorization, but before the execution of this Contract, shall be considered as having been performed subject to the provisions of this Contract.

2.4 ADDITIONAL WORK OR CHANGES IN WORK

2.4.1 PROCEDURE FOR ADDITIONAL WORK: BEFORE PROCEEDING WITH ANY WORK INVOLVING POSSIBLE CLAIMS FOR EXTRA COMPENSATION NOT SPECIFIED IN THE CONTRACT, CONSULTANT SHALL SUBMIT IN WRITING TO PG&E A DETAILED ESTIMATE OF THE COST FOR SUCH WORK. Consultant shall provide PG&E with a detailed breakdown and estimated cost of such anticipated contract work, including extensions and Change Orders, as follows: (a) Description of work to be performed, including detailed breakdown by tasks, key milestone and deliverables; (b) Estimated cost of each task, key milestone and deliverable and (c) Expected completion date of each task, key milestone.

2.4.2 APPROVAL NEEDED FOR ADDITIONAL WORK:  Consultant shall not proceed with any such additional work prior to receiving written authorization (which may be via email supported by a CWA) or a Change Order issued to Consultant by PG&E.  CONSULTANT AGREES THAT ALL COSTS FOR ANY SUCH MODIFICATION OR CHANGE THAT IS PERFORMED BY CONSULTANT WITHOUT PG&E'S PRIOR WRITTEN APPROVAL SHALL BE AT CONSULTANT'S SOLE RISK AND EXPENSE.  A formal Change Order issued to Consultant authorizing the additional work is required prior to any compensation. Notwithstanding Sections 2.4.1 and 2.4.2, if the applicable CWA expressly provides a budget for ad hoc or out of scope related services, such additional work may be approved via informal means (for example) email mutually agreed by the parties' project managers in lieu of a formal Change Order or a detailed breakdown.

2.4.3 PG&E CHANGES TO WORK:  PG&E reserves the right to make such changes in Work, specifications, or level of effort, as may be necessary or desirable, and any difference in Contract price resulting from such changes shall be approved in writing by PG&E before the Work is begun.

2.5  REPLACEMENT OF PERSONNEL

2.5.1 BY CONSULTANT: Consultant acknowledges that the removal, replacement, or reassignment of key individuals who are initially assigned by Consultant to perform services under this Contract or applicable CWA and identified therein may result in serious harm and costs to PG&E.  Consultant will make reasonable efforts to maintain continuity in its staffing and will provide PG&E with ample notification if any such changes in key personnel are made. Consultant agrees not to remove, replace or reassign such individuals without the approval of PG&E, whose approval shall not be unreasonably withheld or delayed. Consultant agrees not to charge PG&E for the time spent in familiarizing replacement personnel with the Work.

2.5.2 BY PG&E:  Consultant shall employ personnel qualified to perform the Work.  If PG&E finds Consultant's employee to be unsatisfactory, Consultant shall remove that employee promptly following notification, but within no more than 24 hours unless otherwise approved by PG&E in writing, and promptly arrange a suitable replacement.  For the avoidance of doubt, this provision addresses only the assignment of personnel to PG&E jobs; it does not require the Consultant to terminate the employment of any employee replaced under this section, nor does PG&E endorse or approve, either expressly or impliedly, Consultant's termination of any such employee.

2.6  IMPORTANCE OF SAFETY:  Consultant recognizes and agrees that safety is of paramount importance in the performance of the Work and that Consultant is solely responsible for performing the Work in a safe manner. Consultant shall plan and conduct the Work, and shall require all Subcontractors to perform their portion of the Work, in in accordance with Consultant's safety program and with all applicable local, state and federal rules, regulations, codes, and ordinances to safeguard persons and property from injury.  Consultant further agrees to provide necessary training to its employees and Subcontractors to inform them of the foregoing safety and health rules and standards.  Should PG&E at any time observe Consultant, or any of its Subcontractors, performing the Work in an unsafe manner, or in a manner that may, if continued, become unsafe, then PG&E shall have the right (but not the obligation) to require Consultant to stop the Work affected by the unsafe practice until Consultant has taken corrective action so that the Work performance has been rendered safe.

2.7  LAWFUL DISPOSAL OF SAMPLED AND OTHER WASTE:  Consultant shall direct performance of Work in compliance with reasonable safety and work practices and applicable federal, state, and local laws, rules and regulations including but not limited to, "Occupational Safety and Health Standards" promulgated by the U.S. Secretary of Labor Division of Occupational Safety and Health.  With respect to any on-site work at a PG&E facility, PG&E may designate safety precautions in addition to those in use or proposed by Consultant.  Neither the requirement that Consultant follow said practices and applicable laws, rules and regulations, and any special instructions given by PG&E nor the adherence thereto by Consultant shall relieve Consultant of the sole responsibility to maintain safe and efficient working conditions at Consultant Facilities.

2.8  CORRECTIVE ACTION PLAN:  Except as otherwise provided in this Contract, Consultant shall meet or achieve each milestone for the Work by the applicable milestone date.  If PG&E reasonably believes that Consultant is not making substantial progress, or if Consultant fails to achieve a milestone by the applicable milestone date, and such failure is not attributable to reasons entitling Consultant to a Contract Change Order, then Consultant shall provide for PG&E's approval a corrective action plan that will demonstrate achievement of the milestone at the earliest possible date to minimize delay of the Work schedule.  Such corrective action plan may include, without limitation and to the extent applicable, reasonable evidence of increases in Consultant's work force, increases in the number of shifts, overtime operations, additional days of Work per week, and such

2

other evidence (including milestone schedule analysis) as necessary for the timely completion of the Work. Upon receipt of PG&E's written concurrence, Consultant shall diligently comply with such corrective action plan; provided, however, that PG&E's concurrence shall not affect any of PG&E's rights or Consultant's obligations under this Contract.

2.9 WARRANTY: Consultant warrants to PG&E that the Work under this Contract shall be performed with the degree of skill and care that is required by current, good and sound professional procedures and practices, and in conformance with generally accepted professional standards prevailing at the time the Work is performed so as to ensure that the services performed are in accordance with any mutually agreed upon specifications including, without limitation, any requirements set forth in the applicable CWA. Consultant will use appropriate numbers of personnel with suitable training, education, experience and skill to perform the Work in accordance with the Contract requirements.

2.10 PG&E'S RESPONSIBILITIES: PG&E will timely provide Consultant with the documentation, information, access to PG&E's personnel and cooperation Consultant reasonably requires to provide the Work. Any material delay or failure to provide materials, information or cooperation may result in a revision to any agreed timetable and/or, if Consultant needs to do additional work as a result, in additional fees being charged. Consultant will rely on the documentation and information provided to it by PG&E or PG&E's representatives and does not take responsibility for verifying the accuracy or completeness of it unless agreed to with PG&E. With respect to Services or Work for which a CWA calls for the delivery of a final, written work product to PG&E, PG&E may rely only upon Consultant's final work product and not on any drafts or oral statements made by Consultant in the course of the Work.

3. BILLING AND PAYMENT

3.1 LUMP SUM WORK: The following provisions shall apply to all Work performed on a lump sum basis.

3.1.1 INVOICE SUBMITTAL INSTRUCTIONS: Unless different milestones or payment schedule is set forth in an applicable CWA, Consultant shall submit a monthly invoice to PG&E for compensation earned in the preceding calendar month. Consultant shall submit invoices to PG&E in accordance with the requirements of this Section and with the instructions printed in the Contract or Contract Change Order. The Consultant shall include the Contract number and, if applicable, the Contract Work Authorization number, on the invoice.

3.1.2 INVOICE DEFICIENCIES: Should PG&E determine that Consultant's invoice does not meet the invoicing requirements of this Contract in any material respect; PG&E will notify Consultant of the deficiencies or return the invoice to Consultant with noted deficiencies. Consultant shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Consultant, Consultant shall resubmit a corrected invoice.

3.1.3 PG&E PAYMENT: Unless otherwise specified in an applicable CWA, payment by PG&E to Consultant for Work performed on a lump sum basis will be monthly, in the full amount of the cost of the Work performed less any negotiated percentage withholding, computed in accordance with the terms of the Contract, and satisfactorily completed in accordance with the specifications and other requirements of the Contract during each month. PG&E reserves the right to discount payment(s) (not including taxes or reimbursable out of pocket expenses) to Consultant by 2% of the invoice total amount for payment(s) made to Consultant within 15 days; or receipt of a correct invoice, otherwise, invoices are payable to Consultant within 45 days. All payments will be made, subject to PG&E approval after receipt of a correct invoice. Unless otherwise specified in the applicable CWA payment of any agreed to withholding or other compensation balance of the amount will occur at the end of the Contract after all Work is satisfactorily completed.

3.1.4 FINAL INVOICE: The final invoice shall be marked "FINAL" and must be received by PG&E within 90 days after the end of the month in which the Work is completed. PG&E will not be liable for payment of any late invoices that are received by PG&E beyond the 90 day period.

3.1.5 EXPENSES: Unless the lump sum is expressly indicated in the applicable CWA as inclusive of expenses, Consultant shall also invoice and be reimbursed for pass through expenses incurred in accordance with Sections 3.2.4 through 3.2.7. The "Final Invoice" deadlines above shall not apply to such expenses; provided that Consultant shall use commercially reasonable efforts to promptly process all such invoices.

3.1.6 BILLING RATES AND CONFLICTS: Consultant's lump sum price(s) stated in an applicable CWA shall not change during the term of the CWA unless agreed to in writing by PG&E. Consultant's lump sum price

shall be quoted and substantiated by the Consultants Contract fee schedule approved by PG&E. The Contract fee schedule shall not change during the term of this Contract without prior written approval by PG&E. The lump sum price(s) shall be inclusive of all Consultant's overhead costs, administrative and general fees, and profit. To the extent such lump sum price(s), or any invoice or other billing instrument as provided for in this Article 3, "Billing and Payment", contains terms and conditions which are in addition to or in conflict with the terms and conditions in the applicable CWA or this Contract, whether Specific or General, those terms and conditions in the fee schedule, invoice, or other billing instrument shall be null and void.

3.2 TIME AND MATERIALS AND UNIT PRICE WORK: The following provisions shall apply to all Work performed on a time and materials or unit price basis.

3.2.1 INVOICE SUBMITTAL INSTRUCTIONS: Consultant shall submit invoices to PG&E in accordance with the requirements of this Section and with the instructions printed in the applicable CWA, Contract or Contract Change Order. The Consultant shall include the Contract number and, if applicable, the Contract Work Authorization number, on the invoice.

3.2.2 MONTHLY INVOICE: Consultant shall submit a monthly invoice to PG&E for review and approval of compensation earned and reimbursable expenses incurred in the preceding calendar month. Each invoice shall be broken down by Contract tasks; for each task the invoice shall include the following information:

    (i)    STATUS: Task description, total cost incurred to date, and month completed and date completed.

    (ii)    LABOR: Employee name, employee labor classification, number of hours spent, and applicable billing rate.

    (iii)    REIMBURSABLE EXPENSES: Unit cost and quantity of each item of expense.

3.2.3 BILLING RATES AND CONFLICTS: Consultant's billing rates or fees stated in the Contract fee schedule, Specific Conditions: Exhibit C shall not change during the term of this Contract term or term specified in the fee schedule, whichever is longer, without prior written approval by PG&E. These billing rates and fees shall be inclusive of all Consultant's overhead costs, administrative and general fees, and profit. To the extent any invoice or other billing instrument as provided for in this Article 3, "Billing and Payment", contains terms and conditions which are in addition to or in conflict with the terms and conditions in the applicable CWA and this Contract, whether Specific or General, those terms and conditions in the fee schedule, invoice, or other billing instrument shall be null and void.

    (i)    Overtime hours shall be billed at straight-time rates, unless otherwise approved by PG&E prior to the use of overtime, and limited to those hours for which Consultant's employee is actually compensated. If applicable, Consultant's overhead cost shall not be applied to the premium portion of the overtime cost.

    (ii)    Individuals other than employees of Consultant (nonemployees) retained by Consultant, such as Subcontractors, outside consultants, or agency personnel, shall not be billed as Consultant's employees and shall be shown separately on the invoice. Such nonemployees working in Consultant's established office under Consultant's direct supervision shall be billed to PG&E at the cost charged to Consultant multiplied by 1.05. All other nonemployees shall be billed at Consultant's actual, direct cost.

3.2.4 EXPENSES: All reimbursable expenses shall be reasonable, ordinary, and necessary and shall be billed at cost. All reimbursable expenses other than those listed in this Article shall be authorized in writing by PG&E's authorized representative prior to expenditure by the Consultant. PG&E will not reimburse Consultant for any expenses not so approved.

    (i)    Overhead costs are Consultant's responsibility and will not be reimbursed as expenses. Overhead costs include but are not limited to the following: Miscellaneous costs, such as routine telephone communications, routine copying, electronic mail, facsimile transmissions, computer time and use of in-house technical software.

3.2.5 TRAVEL TIME AND COSTS: All air travel costs within or outside of the United States will be reimbursed only on a coach fare basis and all rental car costs will be reimbursed only on a subcompact rate basis. Travel time to and from the Work site shall be at Consultant's expense unless otherwise set forth in the applicable CWA or mutually agreed in writing.

4

3.2.6 MILEAGE AND USE OF PERSONAL CAR: If Consultant uses its personal car in the performance of Work under the Contract and such use is included as a reimbursable expense, normal commuting such as trips from home to first business stop and from the last business stop to home represents personal use of car and shall not be reimbursed. All other reimbursable mileage shall be at the current IRS rate.

3.2.7 SUPPORTING DOCUMENTATION: For each chargeable expense item over $100, supporting data and documentation shall be maintained in an orderly reportable fashion by invoice and furnished upon request. Although travel receipts need not be attached, Consultant shall retain them for the term of the audit period.

3.2.8 INVOICE DEFICIENCIES: Should PG&E determine that Consultant's invoice does not meet the invoicing requirements of this Contract in any material respect; PG&E will notify Consultant of the deficiencies or return the invoice to Consultant with noted deficiencies. Consultant shall provide to PG&E such documents or information correcting such deficiencies, or for invoices returned to Consultant, Consultant shall resubmit a corrected invoice.

3.2.9 FINAL INVOICE: The final invoice shall be marked "FINAL" and must be received by PG&E within 90 days after completion of the month in which the Work is completed. PG&E will not be liable for payment of any late invoices that are received by PG&E beyond the 90 day period. The "Final Invoice" deadlines above shall not apply to third party expenses; provided that Consultant shall use commercially reasonable efforts to promptly process all such invoices.

3.2.10 UNIT PRICE BASIS: When invoices include Work performed on a unit price basis, Consultant shall attach to the invoice a list stating the unit price item numbers/name, unit prices, quantities, dollar amounts and other information as required to identify the Work.

3.2.11 PG&E PAYMENT: Payment by PG&E to Consultant for Work performed on a time and materials or unit price basis will be monthly, in the full amount due for Work performed less any negotiated percentage withholding, computed in accordance with the terms of the Contract, and satisfactorily completed in accordance with the specifications and other requirements of the Contract during each month including reimbursable expenses, if any. After receipt and approval of the Consultant's itemized invoice, PG&E reserves the right to discount payment(s)(not including taxes or reimbursable out of pocket expenses) to Consultant by 2% of the invoice total amount for payment(s) made to Consultant within 15 days; otherwise, invoices are payable to Consultant within 45 days of receipt of a correct invoice. Unless otherwise specified in the applicable CWA, payment of any agreed to withholding portion of the amount due will occur at the end of the Contract after all Work is satisfactorily completed.

3.3 Reserved

3.4 GENERAL INVOICE REQUIREMENTS: Invoices submitted by Consultant to PG&E for payment must be in accordance with the service contract order/purchase order and include the service contract/purchase order number. All timelines for payment of invoices run from the date a correct invoice is received by PG&E's Accounts Payable Department. All invoices submitted to and accepted by PG&E's Accounts Payable department by 6:00 PM on a business day are considered received that same day.

3.4.1 ELECTRONIC INVOICES: Electronic invoices submitted through PG&E's electronic invoicing system and accepted by PG&E's Accounts Payable department after 6:00 PM may not be considered received until the next business day.

3.4.2 PAPER INVOICES: Paper invoices must be submitted to PG&E's Accounts Payable department at the following address:

PG&E Accounts Payable
PO Box 7760
San Francisco, CA 94120-7760

Paper invoices to be paid by any of the PG&E plan trusts shall instead be submitted to the following address:

PG&E Benefits Department
Attn: Benefits Principal (or relevant project manager if applicable)
77 Beale Street, Mail Code B23H
San Francisco, CA 94105

FOR ANY INVOICES SUBMITTED TO ANY OTHER OFFICE, LOCATION OR ADDRESS, INCLUDING A LOCAL PG&E OFFICE OR THE DEPARTMENT IN CHARGE OF THE WORK, the discount and net due date timelines for invoice payment DO NOT BEGIN until the receiving location has forwarded a correct invoice to PG&E's Accounts Payable department and the invoice has been received and accepted.

3.4.3 OTHER CHARGES: Any fees or rates quoted or estimated are exclusive of any applicable sales or similar taxes. In no event shall PG&E be responsible for taxes incurred on Consultant's income derived from this Contract or any other fees earned by Consultant.

4. INTELLECTUAL PROPERTY

4.1 OWNERSHIP AND USAGE OF DELIVERABLES: PG&E shall retain ownership of all original data and materials, and the intellectual property rights in such data and materials, provided to Consultant by PG&E or PG&E's representatives. Unless otherwise agreed in a specific CWA, PG&E shall own all final work product contracted for and PG&E will have the right to use, reproduce and adapt the copies of the work product delivered to it for internal purposes within PG&E's organization. Consultant shall retain the intellectual property rights in any and all skills, know-how, templates, benchmark data and methodologies used or acquired by it during the course of providing any Services and all components of the final work product to the extent it is of general application or not unique and specific to PG&E.

The Services Consultant performs, including the work product Consultant delivers to PG&E, are provided solely for the intended purpose, and may not be referenced or distributed to any other party without Consultant's prior written consent, which shall not be unreasonably withheld. PG&E may distribute Consultant's work product to PG&E's affiliates, provided that PG&E ensures that each such affiliate complies with these terms and the applicable statement of work as if it were a party to them, and PG&E remains responsible for such compliance.

PG&E shall not refer to Consultant or include any of Consultant's work product in any shareholder communication or in any offering materials (or fairness opinion provided by PG&E's professional advisers) prepared in connection with the public offering or private placement of any security, unless otherwise agreed in writing by Consultant, which agreement shall not be unreasonably withheld

4.2 INFRINGEMENT PROTECTION: See Article 6, Indemnification, Withholding and Limitation of Liability.

4.3 PUBLIC RELEASE OF RESULTS: Consultant agrees not to release any results of the Work that would identify PG&E without first providing PG&E with the material sought to be released and a description of the publication for PG&E's prior approval. Consultant further agrees that no release shall present any material findings not reasonably inferable from the data. Any public release shall acknowledge PG&E's sponsorship of the Work.

4.4 THIRD PARTY LICENSES: Consultant represents and warrants that it shall comply (and ensure that its personnel and subcontractors comply) with all third party licenses, terms of use, policies and procedures that apply to or otherwise govern access to and/or use of any third party materials made available by PG&E to Consultant under this Contract.

5. 4.5 PUBLIC TESTIMONY: It is further agreed between the Parties that, if requested by PG&E, Consultant shall provide testimony before any federal, state or local court, regulatory body or any other public agency to substantiate any Work performed or data, reports, or materials supplied to PG&E. Reasonable fees for such testimony will be negotiated at that time. Any such service would be agreed to by both parties in a separate CWA. CONFIDENTIALITY AND USE OF PG&E PROPERTY

5.1 CONSULTANT'S USE OF PG&E PROPERTY: All records, reports, computer programs, written procedures and similar materials, documents or data, including without limitation energy usage data, employee data and customer-specific information, in whatever form, provided by PG&E for Consultant's use in the performance of Work under this Contract shall remain the confidential property of PG&E and shall be returned to PG&E immediately upon completion of Consultant's use for the performance of the Work or earlier upon the request of PG&E. In the alternative, Consultant may destroy such information, provided that upon request an authorized representative of Consultant certifies the destruction in writing to PG&E.

5.2 NO PUBLICITY: Consultant shall not include PG&E's name, any reference to this Contract, or any reference to PG&E's purchase or use of any products or services provided by Consultant in Consultant's published customer list or in other publicity or advertisement, including internet, without the prior written consent of an officer of PG&E. The fact that the Parties have entered into this Contract does not constitute, nor does it imply in any way, an endorsement of Consultant by PG&E, and Consultant will not state or imply that PG&E

6

endorses, recommends, or vouches for Consultant in any form of written, verbal, or electronic advertisement, communication, or any other business development effort.

### 5.3 CONFIDENTIALITY

5.3.1 In the course of performing the Work under this Contract, a Party ("Recipient") may have access to confidential commercial or personal information ("Confidential Information") of the other Party ("Discloser") including or concerning, but not limited to, information or data concerning PG&E employees, their dependents, and any plan participants (including without limitation, personal health information), PG&E operations, and technological, ratemaking, legislative and personnel matters and practices of PG&E, its parent company, subsidiaries, affiliates, or members of the public. Recipient agrees not to disclose any Confidential Information or otherwise make it available to any other person, including but not limited to any affiliate of PG&E that produces energy or energy-related products or services, without the prior written approval of PG&E. "Customer specific information or data" means customer-related information and data that is subject to the California Public Utilities Commission or other rules, regulations and orders regarding customer privacy pursuant to law, including, without limitation, California Public Utilities Code Section 8380 et seq.

The parties do not anticipate a need for PG&E to make available to Consultant any confidential information regarding members of the public or customer specific information or data. Should such a need arise with respect to a particular project the parties will clearly identify such requirement in the applicable CWA or statement of work.

5.3.2 Recipient agrees that it shall use and shall require its directors, officers, employees, agents, consultants, contractors, or advisors to use the Confidential Information solely for the purposes of performing or receiving services under this Contract. Only Recipient and its directors, officers, employees, agents, consultants, contractors, or advisors who have a direct need to access such Confidential Information in the course of performing services under this Contract shall have access to Confidential Information. Recipient shall not: (i) use the Confidential Information for its or its directors', officers', employees', agents', consultants', contractors', or advisors' own benefit other than for the limited purposes set forth in this Contract, or (ii) disclose the Confidential Information to any person or third party, including with respect to Consultant as Recipient any employee, agent, consultant, contractor or affiliate that produces or provides energy or energy related products or services.

5.3.3 Except as otherwise provided herein, Recipient will keep confidential and not disclose, the Confidential Information to any third party. No Consultant, director, officer, employee, agent, subcontractor, or advisor shall inspect, participate in discussions regarding, or otherwise be granted access to, PG&E Confidential Information unless and until they are bound by confidentiality obligations equivalent to those set forth in this Agreement. If requested by PG&E for specific sensitive projects, Consultant will have the applicable Consultant associate execute a Non-Disclosure Certificate, in the form attached hereto as Appendix NDA, and upon request delivered a true and accurate copy of the signed Non-Disclosure Certificate to PG&E.

5.3.4 Consultant shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information as provided in Section 5.4, SECURITY, below, to protect any personal or confidential information from unauthorized access, destruction, use, modification, or disclosure, and to prohibit the use of the Confidential Information for a secondary commercial purpose without PG&E's consent.

### 5.4 SECURITY. "Security" means the industry standards and techniques, both physical and logical, to ensure that the Confidential Information will not be compromised and shall be kept secure. Security shall include without limitation: a formal information security policy; a disaster recovery plan; password protected workstations at Consultant's premises and the premises of Representatives who access such Confidential Information; a policy on penetration testing; and encryption of Confidential Information as specified in Subsection 5.4.4, below. Consultant represents and warrants that it shall comply with the terms of this Agreement and the security policies described in this Contract, subject to the following:

5.4.1 Prior to PG&E's first transfer of Confidential Information to Consultant, Consultant will comply with industry standard security requirements, including without limitation: a formal information security policy; a disaster recovery policy; password protected workstations at Consultant; a policy on penetration testing; and provide PG&E with documentation of such compliance reasonably satisfactory to PG&E.

7

5.4.2 PG&E and Consultant agree to meet periodically, if requested by PG&E to evaluate Consultant's security measures and to discuss, in good faith, means by which PG&E and Consultant can enhance such protection, if necessary.

5.4.3 Within one month from the execution date of this Contract, Consultant shall have implemented security procedures in accordance with the terms and conditions of this Contract. In the event PG&E determines Consultant has not complied with Security measures, PG&E shall provide written notice to Consultant describing the deficiencies. Consultant shall then have 60 days to cure. If Consultant has not cured the deficiencies within 60 days, PG&E may terminate this Agreement for cause without penalty or liability to Consultant.

5.4.4 Consultant shall implement prior to the delivery of Confidential Information and maintain during the term of this Contract security procedures, practices and controls commensurate to assure that Confidential Information is only accessed by Consultant and its Representatives, and PG&E and its affiliates, and its authorized users, and to safeguard against its unauthorized access, destruction, use, alteration or disclosure of any such data and information. Security controls and safeguards shall include, without limitation, restriction of physical access to such data and information, implementation of logical access controls, sanitization or destruction of media, including hard drives, and establishment of a reasonable and appropriate information security program that at all times will be as vigorous as prevailing industry standards. In addition, Consultant shall update its security procedures, practices, policies and controls so as to keep current with industry standards, including but not limited to ISO 27001 and ISF Standard of Good Practice for Information Security, as applicable. Consultant's AT&T-provided data centers satisfy the standards for a Tier 3 data center facility as specified in the TIA-942 standard published by the Telecommunications Industry Association. Other data centers data used by or on behalf of Consultant to collect, receive and/or store Confidential Information, while not formally accredited to Tier 3 control sets for Facility & Operation, do largely follow these standards as part of Consultant's best practice process. Consultant shall promptly report any unauthorized access or disclosure of Confidential Information to PG&E and shall take all reasonable measures within its control to immediately stop the access or disclosure, prevent recurrences and recover the Confidential Information. PG&E reserves the right to perform onsite security assessments to verify the implementation and ongoing operation and maintenance of security controls provided that any such onsite visits shall be (a) at mutually agreed dates, times and locations, (b) conducted in a manner that does not disrupt Consultant's business operations and (c) subject to Consultant's reasonable security restrictions. At least annually, Consultant shall assist PG&E in obtaining a copy of the then-current SOC 1 Report from the owner of the collocation facility where the Confidential Information is saved and/or stored (at no cost to PG&E) as well as a copy of any other report that documents Consultant's Security requirements set forth herein to the extent such other reports have been prepared with the intention of sharing with Consultant's clients.

5.4.5 SECURITY BREACH. Consultant further covenants and agrees that, if Consultant or its Subcontractors discover that Consultant or any Subcontractor has, directly or indirectly, caused a breach of Security resulting in unauthorized disclosure of any Confidential Information compromising individually identifiable personal data, , Consultant shall: (a) unless restricted by applicable law or law enforcement authorities, promptly upon confirmation notify PG&E, in writing, and provide PG&E a brief summary of the issue, facts and status of Consultant's investigation; (b) the potential number of individuals affected by the Incident; (c) the Confidential Information that may be implicated by the Security Breach; (d) any other information pertinent to PG&E's understanding of the Security breach and the exposure or potential exposure of Confidential Information; (e) investigate such breach or such potential breach, (f) inform PG&E, in writing, of the results of such investigation, and (g) assist PG&E (at Consultant's cost and expense) in maintaining the confidentiality of such Confidential Information. If the natureof the Incident is such that affected individuals are at risk of fraud or identify theft, Consultant agrees to provide, at Consultant's sole cost and expense, appropriate credit monitoring services for all potentially affected individuals for one year, subject to PG&E's prior approval.

5.4.6 NOTIFICATION. If, and only if requested in advance and in writing by PG&E, Consultant will assist PG&E to notify the potentially affected individuals regarding such Incident within a reasonable time period determined by PG&E and in a form as specifically approved in writing by PG&E. In addition, in no event shall Consultant issue or permit to be issued any public statements regarding a Security breach involving Confidential Information that would identify PG&E unless and until PG&E instructs Consultant to do so in writing. Notwithstanding the foregoing, Consultant shall be permitted to make any notifications or disclosures that is required to do by applicable law enforcement authorities.

8

## 6. INDEMNIFICATION, WITHHOLDING AND LIMITATION OF LIABILITY

### 6.1 INDEMNIFICATION

6.1.1 Consultant shall indemnify, hold harmless and defend PG&E, its affiliates, subsidiaries, parent company, officers, directors, and employees(acting in their capacities as such) from and against all third party claims, demands, losses, damages, costs, expenses, and liability (legal, contractual, or otherwise), which arise from or are in any way connected with any: (i) injury to or death of persons, including but not limited to employees of PG&E or Consultant to the extent caused by Consultant's negligence or willful misconduct ; (ii) injury to real property or tangible personal property of PG&E, Consultant, or any third party to the extent caused by Consultant's negligence or willful misconduct; (iii) violation of local, state, or federal common law, statute or regulation, including but not limited to environmental laws or regulations; (iv) strict liability imposed by any law or regulation; (v) a breach of its confidentiality obligations under Article 5.0; (vi) delay or failure to pay any Subcontractor, including but not limited to any demands for payment, invoices, or liens; or (vii) delay or failure to pay any employees, laborers, or other personnel of Consultant or any Subcontractor the compensation, monies, wages, benefits or other payment due or allegedly due; so long as, and only to the extent that, such injury, violation, or strict liability (as set forth in (i) - (vii) above) results from Consultant's performance of, or failure to perform, this Contract, excepting only such loss, damage, cost, expense, liability, payment, strict liability, or violation of law or regulation for which indemnity is not allowed under applicable law.

6.1.2 Consultant acknowledges that any claims, demands, losses, damages, costs, expenses, and liability that arise from or are in any way connected with the release or spill by Consultant of any legally designated hazardous material or waste and arise from or is in any way connected with the Work performed under this Contract, are expressly within the scope of this indemnity. Likewise, the costs, expenses, and legal liability for environmental investigations, monitoring, containment, abatement, removal, repair, cleanup, restoration, remedial work, penalties, and fines arising from strict liability or the violation of any local, state, or federal law or regulation, attorney's fees, disbursements, and other response costs incurred as a result of such releases or spills are expressly within the scope of this indemnity.

6.1.3 Consultant shall, on PG&E's request, defend any action, claim, or suit asserting a claim which might be covered by this indemnity, using counsel reasonably acceptable to PG&E. Consultant's obligations under this Section 6.1 are expressly conditioned upon PG&E giving Consultant prompt notice of any claim, lawsuit or proceeding, allowing Consultant to control the response thereto and defense and settlement thereof, (provided, however, that Consultant shall not be permitted to settle any such claims to the extent such settlement includes an admission of guilt on PG&E's part without first obtaining PG&E's written agreement to such settlement) and cooperating with Consultant in connection with such defense. Consultant shall pay all costs and expenses that may be incurred by PG&E in enforcing this indemnity, including reasonable attorney's fees. To the extent necessary, each Party was represented by counsel in the negotiation and execution of this Contract.

6.2 TAX WITHHOLDING: Consultant represents and warrants that it will withhold all taxes, if any, which are required to be withheld under applicable law with respect to payments to persons hired by Consultant who perform services for PG&E. Consultant shall indemnify and hold PG&E harmless, on an after-tax basis, for any liability incurred by PG&E as a result of Consultant's failure to institute any such required withholding.

6.3 INFRINGEMENT PROTECTION: Consultant represents to PG&E that the material to be prepared under this Contract will not infringe upon the copyright, patent or license, or otherwise violate the proprietary rights, including trade secret rights, of any person or entity. Consultant agrees to defend, indemnify and hold PG&E, its parent company, subsidiaries and/or affiliates, harmless from and against any and all liabilities, costs and damages arising out of any such infringement, and from any suit, demand or claim made against PG&E, its parent company, subsidiaries and/or affiliates, alleging any such infringement or violation. In addition to the foregoing, if there is such a suit, demand or claim, Consultant agrees, as soon as possible, to either (a) procure for PG&E the right to continue using the material, (b) replace the material with non-infringing material or modify it so it becomes non-infringing or (c) if neither (a) nor (b) is feasible, Consultant may require PG&E to cease use of the infringing material and refund to PG&E the fees previously paid to Consultant for such material provided, however that the replaced or modified material shall be equivalent to that contracted for hereunder and reasonably satisfactory to PG&E. Consultant further agrees to pay any final judgment or reasonable settlement offer approved by Consultant resulting from a suit, demand or claim and in the event that a conflict of interest or other circumstances reasonably requires PG&E to engage separate legal counsel, Consultant shall reimburse or pay any reasonable attorney's fees incurred by PG&E in defense against such suit.

Case: 19-30088   Doc# 3650-2   Filed: 08/21/19   Entered: 08/21/19 16:58:41   Page 34
of 53

6.4 LIMITATION OF LIABILITY:  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER PARTY SHALL NOT BE LIABLE UNDER ANY CIRCUMSTANCES, WHETHER IN CONTRACT, TORT, (INCLUDING NEGLIGENCE), EQUITY, BREACH OF STATUTORY DUTY OR OTHERWISE, FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, PUNITIVE, OR EXEMPLARY DAMAGES, EVEN IF SUCH DAMAGES ARE FORESEEABLE, AND REGARDLESS OF WHETHER OR NOT THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS OR UNRECOVERED OVERHEAD.

6.4.1 With respect to Consultant's liability for Work or Services performed under any individual CWA entered into pursuant to this Agreement, the liability of Consultant and its affiliates, employees, directors, officers, agents and subcontractors (the "related persons") to PG&E whether in contract, tort (including negligence), equity, breach of statutory duty or otherwise for any losses arising from or in any way connected with each such CWA shall not exceed in aggregate the greater of (a) $250,000 or (b) the total amount of the fees paid to Consultant for the services provided pursuant to the applicable CWA during any 12-month period beginning with the commencement of that CWA, unless otherwise agreed in writing. Nothing in this Contract shall exclude or limit the liability of Consultant or Consultant's related persons in the case of: (i) death and personal injury resulting from Consultant's or its related person's negligence or willful misconduct; (ii) gross negligence; (iii) willful misconduct; (iv) fraud; (v) other liability to the extent that the same may not be excluded or limited as a matter of law, or (vi) Consultant's indemnification obligations under Section 6 of this Agreement. Where Consultant is jointly liable to PG&E with another party, Consultant shall to the extent permitted by law only be liable for those losses that correspond with Consultant's share of responsibility for the losses in question.

7.  INSURANCE REQUIREMENTS

Consultant shall maintain the following insurance coverage.  Consultant is also responsible for its Subcontractors maintaining sufficient limits of the appropriate insurance coverage.

7.1 WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY

7.1.1 Workers' Compensation insurance or self-insurance indicating compliance with any applicable labor codes, acts, laws or statutes, state or federal, where Consultant performs Work.

7.1.2 Employers' Liability insurance shall not be less than $1,000,000 for injury or death each accident.

7.2 COMMERCIAL GENERAL LIABILITY

7.2.1 Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form, with no coverage deletions.

7.2.2 The limit shall not be less than $1,000,000 each occurrence/$2,000,000 aggregate for bodily injury, property damage and personal injury.

7.2.3 Coverage shall: a) By "Additional Insured" endorsement add as insureds PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, and employees with respect to liability arising out of or connected with the Work performed by or for the Consultant.  (ISO Form CG2010 or equivalent is preferred).  If the Commercial General Liability policy includes a "blanket endorsement by contract," the following language added to the certificate of insurance will satisfy PG&E's additional insured requirement: "PG&E, its affiliates, subsidiaries, and parent company, and PG&E's directors, officers, and employees with respect to liability arising out of the work performed by or for the Consultant are additional insureds under a blanket endorsement."; b) Be endorsed to specify that the Consultant's insurance is primary and that any insurance or self-insurance maintained by PG&E shall not contribute with it.

7.3 BUSINESS AUTO

7.3.1 Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile Liability, code 1 "any auto."

7.3.2 The limit shall not be less than $1,000,000 combined single limit for bodily injury and property damage.

7.4 PROFESSIONAL LIABILITY INSURANCE

7.4.1 Errors and Omissions Liability insurance appropriate to the Consultant's profession.  Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Contract.

7.4.2 The limit shall not be less than $1,000,000 each claim/$2,000,000 aggregate.

10

### 7.5  ADDITIONAL INSURANCE REQUIREMENTS

7.5.1 Before commencing performance of Work, Consultant shall furnish PG&E with certificates of insurance and endorsements of all required insurance for Consultant.

7.5.2 Should any of the above described policies be cancelled before the expiration date thereof, Contractor shall deliver notification to PG&E.

7.5.3  Reserved

7.5.4 Reserved

## 8.  FORCE MAJEURE, CANCELLATION AND TERMINATION OF CONTRACT

8.1  FORCE MAJEURE:  Neither PG&E nor Consultant shall be considered in default in the performance of its obligations under this Contract, except obligations to make payments hereunder for Work previously performed, to the extent that the performance of any such obligation is prevented or delayed by any cause, existing or future, which is beyond the reasonable control, and without the fault or negligence, of the affected Party.  If either Party claims that performance of its obligations was prevented or delayed by any such cause, that Party shall promptly notify the other Party in writing and describe the circumstances preventing or delaying performance.  The Party so claiming a cause-delayed performance shall endeavor, to the extent reasonable, to remove the obstacles which preclude performance.

8.2  CANCELLATION FOR CAUSE:

8.2.1 Either Party  may, at its option, cancel or suspend this Contract or any one or more CWAs upon at least 30 days prior written notice (unless the breach is cured within such time)  for cause including, but not limited to, the following situations: (a) the failure, refusal or inability of the other Party to perform its obligations in accordance with this Contract for any reason (except as specified in the section titled "Force Majeure"); or (b) the other Party has become insolvent, has failed to pay its bills, or has had checks for payment of its bills returned from suppliers and Subcontractors due to insufficient funds; or (c) a legal action is placed against the other Party which, in the first Party's opinion, may interfere with the performance of the Work; or other obligations under this Contract or (d) in PG&E's reasonable opinion, the Work will not be completed in the specified time  for any fixed deadlines in the applicable CWA)and PG&E has requested Consultant to take steps necessary to accomplish the required progress and completion, and Consultant has failed to do so.

8.2.2 Reserved

8.2.3 In the event of such cancellation, PG&E shall pay Consultant for services properly performed prior to the date of cancellation.  In no event shall PG&E be liable for lost or anticipated profits or overhead on uncompleted portions of the Work.  Upon request, and before PG&E will release final payment, Consultant shall deliver to PG&E any final reports, drawings or other documents prepared for PG&E prior to the effective date of such cancellation.  Consultant shall not enter into any agreements, commitments or Subcontracts which would incur significant cancellation costs without prior written approval of PG&E.  Such written approval is a condition precedent to the payment of any cancellation charges by PG&E.

8.2.4 LABOR DISPUTE: In the event of a labor dispute or strike by Consultant's or its Subcontractors' employees which threatens the progress or cost of Work, or PG&E's labor relations, or which disrupts PG&E's operations, or results in a secondary boycott at PG&E's facilities, PG&E reserves the right to suspend or discontinue the Work of the Consultant or any Subcontractor, or cancel the Contract for cause. This paragraph shall be applicable whether or not any Consultant or Subcontractor is directly involved in a labor dispute.

8.3  TERMINATION WITHOUT CAUSE: Either Party may suspend or terminate the Contract or any one or more CWAs, without cause and upon 30 days written notice to the other party.  In the event of termination by PG&E Consultant thereupon shall take whatever action with respect to performance of the Work as will tend to minimize its claim against PG&E, if any.  In the event of termination, PG&E shall be liable to Consultant only for the compensation earned on the Work performed in accordance with the specifications and other requirement of the Contract to the date of termination, and solely in the event of termination by PG&E costs reasonably incurred by Consultant in terminating its operation.  Consultant shall not be entitled to any payment for lost or anticipated profits or overhead on uncompleted portions of the Work.  Any final reports, drawings or other

documents prepared for PG&E prior to the effective date of such termination shall be delivered to PG&E by Consultant upon request and, in the event of termination by Consultant, prior to PG&E's release of its final payment to Consultant.

8.4 CWA TERM AND TERMINATION: The cancellation and termination provisions in this Section shall apply to individual CWAs. If a Party cancels or terminates the Work under a particular CWA or if a particular CWA expires, the remainder of this Contract shall not be affected. In addition, if the term of any one or more CWAs continues beyond the termination date of this Contract, the terms and conditions of this Contract shall continue to apply to those CWAs until final completion and acceptance of the Work.

8.5 ASSISTANCE AND COOPERATION: Commencing upon expiration, or upon notice to Consultant of cancellation or termination of a CWA or this Contract, and continuing for so long as PG&E may reasonably request, Consultant will provide reasonable assistance requested by PG&E to facilitate the orderly transfer of the Work and subject matter of the CWA or Contract, respectively, as directed by PG&E. To the extent that compensation for such assistance is not already provided for by the CWA or Contract, PG&E and Consultant will negotiate reasonable compensation not to exceed Consultant's then-current, standard hourly rates for similar work.

9. REQUIREMENTS AND POLICIES

9.1 PG&E'S SUPPLY CHAIN RESPONSIBILITY POLICY: It is PG&E's policy that small and diverse businesses shall have the maximum practicable opportunity to participate in providing the goods and services purchased by PG&E. Small and diverse businesses include Small Business Enterprises (SBEs); Women, Minority, and Disabled Veteran Business Enterprises (WMDVBEs); and Lesbian, Gay, Bisexual, and Transgender Business Enterprises (LGBTBEs).

9.1.1 Contractor agrees to comply, and to require all Subcontractors and sub-Subcontractors to comply, with PG&E's Supply Chain Responsibility Policy, Exhibit 1, attached hereto and incorporated herein. Contractor shall provide a copy of Exhibit 1 to each prospective Subcontractor.

9.1.2 Contractor shall act in accordance with its completed Subcontracting Plan (Exhibit 1-A, Supply Chain Responsibility – List of Subcontractors and Disbursement Plan, attached hereto and incorporated herein) in the performance of the Work and in the award of all Subcontracts.

9.1.3 In addition, if the Contract exceeds $500,000 ($1 million for construction contracts), Contractor shall comply with Exhibit 2, Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns, attached hereto and incorporated herein, and the Subcontracting Plan must include provisions for implementing the requirements of Exhibit 2.

9.1.4 Each Bidder's Proposal shall describe how Bidder will comply with the requirements of Exhibit 1 if awarded the Work. The requirements of Exhibit 1 and the successful Bidder's response, along with a completed, signed copy of Exhibit 1-A, will be incorporated into the Contract.

9.2 FEDERAL REQUIREMENTS

9.2.1 EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION REGULATIONS POLICY: During the performance of this Contract and to the extent they may be applicable, Consultant agrees to comply with all laws, orders, and regulations included by summary or reference in the following paragraphs

- Executive Order 11246, 41 CFR Part 60-1.4: Equal Opportunity Clause.
- Executive Order 11246, 41 CFR Part 60-1.8: Nonsegregated Facilities.
- Vietnam Era Veterans' Readjustment Assistance Act of 1974, 41 CFR Part 60-250.5.a: Equal Opportunity Clause.
- Vietnam Era Veterans' Readjustment Assistance Act of 1974, 41 CFR Part 60-300.5.a: Equal Opportunity Clause.
- Section 503 of the Rehabilitation Act of 1973, 41 CFR Part 60-741.5.a: Equal Opportunity Clause.

9.2.2 EXECUTIVE ORDER 13496 – EMPLOYEE RIGHTS UNDER THE NATIONAL LABOR RELATIONS ACT. To the extent applicable, the employee notice requirements set forth in 29 C.F.R. Part 471, Appendix A to Subpart A are hereby incorporated by reference into this Contract.

9.3 RESERVED

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 37 of 53

9.4 SUPPLIER CODE OF CONDUCT: CONSULTANT, ITS SUBCONTRACTORS AND THEIR SUPPLIERS AT ALL TIERS, SHALL COMPLY WITH PG&E'S SUPPLIER CODE OF CONDUCT IN THE AWARD AND PERFORMANCE OF ALL CONTRACTS AND SUBCONTRACTS. The Supplier Code of Conduct requires that Consultant and each of its Subcontractors demonstrate a strong commitment to compliance, ethics, and sustainability and supplier diversity as a foundation to successful business. Consultant must complete its Work for PG&E in full compliance with the Supplier Code of Conduct, as it may be modified from time to time. Consultant shall access, read and comply with PG&E's Supplier Code of Conduct and shall make it available to its Subcontractors and suppliers. The Supplier Code of Conduct is hereby incorporated by reference into this Contract. It is available at PG&E's website, www.PGE.com, at the following link: http://www.pge.com/includes/docs/pdfs/b2b/purchasing/suppliers/SupplierCodeofConductPGE.pdf. Consultant will comply with PG&E's Supplier Code of Conduct with respect to any on-site work at a PG&E facility. Consultant confirms that its Code of Business Conduct and Ethics (a copy of which is available at http://investors.willistowerswatson.com/phoenix.zhtml?c=254268&p=irol-govHighlights), applicable to all Consultant associates and suppliers, is consistent with PG&E's Supplier Code of Conduct (as it exists on the date of execution of these General Terms and Conditions).

9.5 CONFLICT OF INTEREST AND BUSINESS ETHICS

9.5.1 REASONABLE CARE: Consultant shall exercise reasonable care and diligence to prevent any actions or conditions which could result in a conflict with PG&E's interest.

9.5.2 OTHER EMPLOYMENT: During the term of this Contract, Consultant or its employees will not accept any employment or engage in any work which compromises the Work to be performed under this Contract.

9.5.3 GIFTS: Consultant or its employees shall not offer or cause to be offered gifts, entertainment, payments, loans and/or other services, benefits or considerations of more than a nominal value to PG&E's employees, their families, vendors, Subcontractors and other third parties.

9.5.4 ACCURATE DOCUMENTATION: All financial statements, reports, billings, and other documents rendered shall properly reflect the facts about all activities and transactions handled for the account of PG&E.

9.5.5 NOTIFICATION: The Consultant shall promptly notify PG&E of any and all material violations of this clause upon becoming aware of such violation.

9.6 AVAILABILITY OF INFORMATION:

9.6.1 PG&E's duly authorized representatives shall have, during the term of the Contract and for three years thereafter, access to Consultant's records as reasonably necessary to verify or review the reimbursable costs and fees invoiced for the services delivered by the Consultant. If PG&E exercises this right, Consultant will make available such records as: (a) Consultant's systems can reasonably generate, and (b) it reasonably supports the amounts charged to PG&E and related services delivered by Consultant. The review must be conducted at mutually convenient times and locations and in a manner that does not reasonably disrupt Consultant's business operations. PG&E agrees to keep information disclosed to it in the course of the review confidential from all third parties, except for its accountants, auditors, or attorneys with a need to know such information and except for any third party participating in the review with Consultant's consent as described below. Consultant understands that PG&E may wish to engage a third party to assist it in conducting the review. No such third party reviewer or auditor may participate in the review unless PG&E obtains Consultant's prior consent, which shall not be unreasonably withheld, and the third party enters into an appropriate and reasonable confidentiality agreement with Consultant. PG&E understands that Consultant will not consent to the participation of any third party offering services or products that materially compete with Consultant's own.

9.6.2 ACCOUNTING: The Consultant's accounts shall be kept in accordance with generally accepted accounting principles in the particular industry and shall be kept in such a manner and in sufficient detail to clearly disclose the basis for charges or allocations to the Contract.

9.6.3 ADJUSTMENTS: Consultant shall promptly adjust any inaccuracy in the billings.

9.6.4 TIME PERIOD: The Consultant shall preserve all such accounts and records for a period of three years after the term of the Contract

9.6.5 SUBCONTRACTORS. In the event that PG&E determines that similar requirements are needed for a particular Subcontractor, then, upon request, Consultant will discuss the matter in good faith with PG&E and the parties will use commercially reasonable efforts to reach a mutually acceptable arrangement.

9.7   INJURY AND ILLNESS PREVENTION PROGRAM: In the performance of the Work under this Contract, Consultant acknowledges that it has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code. Consultant shall ensure that, to the extent applicable to the services provided by the Subcontractor, any Subcontractor hired by Consultant to perform any portion of the Work under this Contract shall also have an effective Injury and Illness Prevention Program. The person with the authority and responsibility for implementing and administering Consultant's Injury and Illness and Prevention Program shall execute the Compliance Certificate, Exhibit 3, attached hereto and incorporated herein.

9.8   PG&E DRUG AND ALCOHOL ABUSE POLICY: PG&E is committed to maintain and promote job safety and health for all workers at its facilities. In addition, PG&E is determined to protect its employees, customers, and the general public while they are on PG&E property from any harm caused by illegal drug and alcohol use by non-PG&E personnel. To accomplish these objectives, PG&E has established a drug and alcohol policy for access to PG&E facilities by its Consultant and Subcontractor personnel. If any personnel of Consultant or its approved Subcontractors perform any Work or services at PG&E offices and/or other PG&E facilities, then Consultant shall comply with PG&E's Drug and Alcohol Abuse and Testing Policies, attached hereto and incorporated herein as Exhibit 4 to these General Conditions

9.9   CALIFORNIA HEALTH AND SAFETY CODE: The California Health and Safety Code requires businesses to provide warnings prior to exposing individuals to materials listed by the Governor as chemicals "known to the State of California to cause cancer, birth defects or reproductive harm." PG&E uses chemicals on the Governor's list at many of its facilities. In addition, many of these chemicals are present at non-PG&E-owned facilities and locations. Accordingly, in performing the Work or services contemplated under this Contract, Consultant, its employees, agents and Subcontractors may be exposed to chemicals on the Governor's list. Consultant is responsible for notifying its employees, agents, and Subcontractors that Work performed hereunder may result in exposures to chemicals on the Governor's list.

9.10  WORK ON PG&E OR PG&E CUSTOMER ASSETS OR PREMISES: The following provisions shall apply to the extent that the Work under the Contract requires any Consultant or Subcontractor personnel (collectively, "Personnel") to have access to PG&E assets, premises, customer property, or logical access to PG&E data or systems (collectively, "Access").

9.10.1  CRIMINAL BACKGROUND CHECKS:

(i)    Consultant warrants and represents that it will not assign any Personnel to work requiring Access unless Consultant has performed a criminal background check on each such individual (either at the time of hiring or during the course of employment). Prior to assigning work requiring Access to any Personnel with one or more criminal convictions during the last seven years, Consultant must consider the gravity of the individual's offense, the time since the conviction, the successful completion of parole/probation, the individual's age at the time of conviction, the number of convictions, and the stability of the individual, including favorable work history. Consultant shall also consider the relation of the offense to the nature of the work the individual will perform.

(ii)   Notwithstanding the foregoing, in no event shall Consultant grant Access to an individual with one or more convictions for a Serious Offense(s), which is defined as violent and sex offenses, crimes against children, domestic violence, fraud, theft (including but not limited to identity theft), embezzlement, all felonies during the last seven years, and/or two or more DUI's in the past three years.

(iii)  Consultant shall maintain documentation related to its criminal background check investigation for all Personnel requiring Access and make it available to PG&E for audit if requested pursuant to the audit provisions of this Contract.

(iv)   Consultant also agrees to notify PG&E if any of its Personnel requiring Access are charged with or convicted of a Serious Offense during the course of a PG&E assignment.

14

9.10.2  FITNESS FOR DUTY:  Consultant shall ensure that its Personnel granted Access report to work fit for duty.  Personnel with Access may not consume alcohol while on duty and/or be under the influence of drugs that impair their ability to work safely.  PG&E expects each supplier to have policies in place that requires their employees report to work in a condition that allows them to perform the work safely.  For example, employees should not be operating equipment under medication that creates drowsiness.  As a federal contractor, PG&E does not recognize nor allow work to be completed under the influence of marijuana, whether or not it is used for medical reasons.

9.10.3  ELIGIBILITY FOR PG&E WORK:  When assigning any Personnel to perform Work requiring Access, Consultant shall submit each person's full name and the last four digits of their social security number to PG&E at the following e-mail address:  RecruitingOperations@pge.com.  PG&E reserves the right to decline to accept any proposed Personnel, in which case Consultant shall promptly propose a replacement.

9.11 NERC REQUIREMENTS:  Pursuant to a directive from the North American Electric Reliability Corporation (NERC), all employees and contractors with Unescorted Access to facilities, systems and functions that PG&E deems critical to the support of the Bulk Electric System ("Critical Facilities and/or Critical Systems") shall undergo employment background screening and training prior to being granted access to these PG&E facilities and/or systems.  Contractor hereby agrees to perform background checks ("Personnel Risk Assessments" or "PRA's") on all Contractor and Subcontractor personnel ("Individuals") with unescorted access to Critical Facilities and/or Critical Systems ("Unescorted Access").  PG&E has included in the category of those with Unescorted Access all Individuals working within PG&E Critical Facilities and/or Critical Systems.  The Parties do not anticipate any Consultant and Subcontractor to fall within this category.  If such a need arises, the Parties will identify such individuals in the applicable CWA or other written confirmation.  To the extent applicable to the Work, Contractor shall comply with the requirements of Exhibits 7 and 7A, attached hereto and incorporated herein.

9.12 DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS:  PG&E is committed to maintain documents and records so as to satisfy applicable legal, contractual and regulatory requirements as well as PG&E's on-going business needs; to enable appropriate records management, provide appropriate retrieval and achieve the proper level of security and privacy.  In furtherance of this commitment, Consultant agrees to comply with the requirements of Exhibits 5 and 5A, attached hereto and incorporated herein.

10. GENERAL PROVISIONS

10.1 AMENDMENTS, SUBCONTRACTS AND ASSIGNMENTS

10.1.1  AMENDMENT:  No provision of the Contract will be deemed amended or waived by either Party without prior written approval in the form of a signed Contract Change Order.  No oral statement will modify or otherwise affect the terms and conditions set forth herein.

10.1.2  SUBCONTRACTS:  Consultant shall not enter into Subcontracts and no Subcontractor shall be permitted to perform Work without the prior written approval of PG&E.  PG&E's approval of any Subcontract shall not relieve Consultant of its obligations to PG&E under this Contract.  Consultant's obligations under this Contract shall apply to any Subcontract, and Consultant shall be responsible to PG&E for any damages to PG&E arising out of Subcontracts not in accordance with this Contract.  Nothing in the Contract or any subcontract shall create any direct contractual relations between a Subcontractor and PG&E.  For avoidance of doubt, the approvals described above shall apply only to subcontracts engaged by Consultant specifically to provide services on a PG&E project and shall not include Consultants general company suppliers or service providers.

10.1.3  ASSIGNMENT:  Neither Party may assign its rights or delegate its duties under this Contract, directly or indirectly, by operation of law or otherwise, without the other Party's prior written consent, except that a party may assign to a corporate affiliate that it controls, is controlled by, or is under common control with, provided that the Party and the affiliate remain obligated under this Contract.  A Party shall not unreasonably withhold condition or delay its consent.  Subject to the foregoing, this Contract shall be binding upon and inure to the benefit of the successors and assigns of the Parties hereto.  Any purported assignment of rights or delegation of duties in violation of this section is void.

10.2 COMPLIANCE WITH LAWS:  Consultant shall comply with all  federal, state and local laws, rules and regulations to the extent applicable to Consultant and/or to the Work or Services performed by Consultant, which may include without limitation, the "Rules Regarding Privacy and Security Protections for Energy Usage Data" adopted by the California Public Utilities Commission in Decision No. 11-07-056, July 28, 2011, and shall

15

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 40
of 53

obtain all applicable licenses and permits for the conduct of its business and the performance of the Work called for in this Contract. Consultant shall comply with all environmental and endangered species requirements and shall conduct its operations in a manner that complies with applicable programs and permits. To the extent Consultant's work is subject to PG&E-specific environmental permits or programs, PG&E will provide Consultant with such permit or program requirements. Unless prohibited by law, Consultant shall hold PG&E harmless from any liability, fine or penalty incurred as a result of Consultant's failure to comply with applicable legal and regulatory requirements.

10.3 REPORTING: In accordance with Section 7912 of the California Public Utilities Code, Consultant agrees to report annually to PG&E upon request, the number of California residents employed by Consultant, calculated on a full-time or full-time equivalent basis, who are personally providing services to PG&E.

10.4 CHOICE OF LAWS: This Contract shall be construed and interpreted in accordance with the laws of the State of California, excluding any choice of law rules which may direct the application of the laws of another jurisdiction. Any controversy or claim arising out of or in any way relating to this Contract which cannot be amicably settled without court action shall be litigated by binding arbitration pursuant to Section 10.5.4.

10.5 DISPUTE RESOLUTION

10.5.1 EXECUTIVE NEGOTIATIONS: The Parties shall attempt in good faith to resolve any dispute arising out of or relating to this Contract promptly by negotiations between a vice president of PG&E or his or her designated representative and an executive of similar authority of Consultant. Either Party may give the other Party written notice of any dispute which has not been resolved at a working level. Within 20 days after delivery of such notice, the executives shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary to exchange information and to attempt to resolve the dispute.

10.5.2 MEDIATION: If the matter has not been resolved within 30 days of the first meeting of the executives, either Party may at any time thereafter request mediation by written notice to the other Party. The mediation shall be conducted by a mutually-agreeable mediator with experience mediating complex commercial disputes. If the matter has not been resolved with 60 days after the request for mediation, then either Party may initiate litigation.

10.5.3 Except as otherwise expressly provided in this Contract, each Party shall continue to perform its obligations under this Contract pending final resolution of any dispute arising out of or relating to this Contract.

10.5.4 Except as otherwise provided below, any controversy or claim arising out of or relating to the Agreement which the Parties are unable to resolve between themselves shall be resolved by arbitration in San Francisco, California before a panel of three arbitrators in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Each Party shall have the right to select one of the arbitrators and the two arbitrators so selected will agree on the choice of the third arbitrator. Each Party will bear the expenses of the arbitrator it selects and one-half of the expenses of the third arbitrator and other costs related to the arbitration. The arbitrators shall provide a decision in writing stating their reasons and rationale for the decision. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Each Party hereto hereby consents to personal jurisdiction in the State of California and agrees that venue will be proper in such state and that such state is the most convenient forum for actions or proceedings arising out of any such controversy or claim .This arbitration process will be the sole and exclusive means for resolving any controversy or claim except for a controversy or claim involving the ownership or use of work product or intellectual property.

10.5.5 CONFIDENTIALITY OF DISPUTE RESOLUTION PROCESS: All negotiations and any mediation conducted pursuant to this provision are confidential and shall be treated as compromise and settlement negotiations, to which Section 1119 of the California Evidence Code shall apply, and Section 1119 is incorporated herein by reference.

10.5.6 PRELIMINARY INJUNCTION: Notwithstanding the foregoing provisions, a Party may seek a preliminary injunction or other provisional judicial remedy if in its judgment such action is necessary to avoid irreparable damage or to preserve the status quo.

10.6 NON-WAIVER: The waiver by either Party of any breach of any term, covenant or condition contained in this Contract, or any default in the performance of any obligations under this Contract, shall not be deemed to be a

16

waiver of any other breach or default of the same or any other term, covenant, condition or obligation. Nor shall any waiver of any incident of breach or default constitute a continuing waiver of the same.

10.7 CAPTIONS AND HEADINGS: Section, paragraph, and other headings contained in this Contract are for reference purposes only and are in no way intended to describe, interpret, define, amplify, or limit the scope, extent or intent of this Contract or any provision.

10.8 ENFORCEABILITY: If any of the provisions or application of any of the provisions, of this Contract are held to be illegal or invalid by a court of competent jurisdiction or arbitrator/mediator, PG&E and Consultant shall negotiate an equitable adjustment in the provisions of this Contract with a view toward effectuating the purpose of this Contract. The illegality or invalidity of any of the provisions, or application of any of the provisions, of this Contract will not affect the legality or enforceability of the remaining provisions or application of any of the provisions of the Contract.

10.9 INTEGRATION: This Contract constitutes the entire agreement and understanding between the Parties as to the subject matter of the Contract. It supersedes all prior or contemporaneous agreements, commitments, representations, writings, and discussions between Consultant and PG&E, whether oral or written, and has been induced by no representations, statements or agreements other than those expressed herein. Neither Consultant nor PG&E shall be bound by any prior or contemporaneous obligations, conditions, warranties or representations with respect to the subject matter of this Contract.

10.10 SURVIVAL: The provisions of this Contract which by their nature should survive expiration, cancellation or other termination of this Contract, including but not limited to provisions regarding warranty, indemnity, insurance, confidentiality, document retention, business ethics and availability of information, shall survive such expiration, cancellation or other termination.

10.11 THIRD PARTIES: This Contract only creates rights enforceable by PG&E and does not create any rights enforceable by any other party. Consultant accepts no responsibility for any consequences arising from any third party relying on Consultant's work product. If Consultant agrees to provide, or permit PG&E to provide, its work product to a third party, PG&E is responsible for ensuring that the third party is made aware of the fact that they are not entitled to rely upon it.

Case: 19-30088   Doc# 3650-2   Filed: 08/21/19   Entered: 08/21/19 16:58:41   Page 42
of 53

**APPENDIX NDA**

**NON-DISCLOSURE CERTIFICATE**

I hereby certify my understanding that access to Confidential Information is provided to me pursuant to the terms and restrictions of the confidentiality provisions of the agreement between Pacific Gas and Electric Company and _____, dated _____, that I have been given a copy of and have read the confidentiality provisions, and that I agree to be bound by all of its terms.

I understand that the contents of the Confidential Information, any notes or other memoranda, or any other form of information that copies or discloses the confidentiality provisions shall not be disclosed to anyone other than in accordance with the confidentiality provisions.

Signed: _____

Print Name: _____

Title: _____

Organization: _____

Date Signed: _____

# EXHIBIT 1

## PG&E'S SUPPLY CHAIN RESPONSIBILITY POLICY

PG&E is committed to supply chain responsibility, including supplier diversity, sustainability, and ethnical supply chain practices:

- PG&E's Supplier Diversity Program, launched in 1981, aims to provide diverse suppliers with economic opportunities to supply products and services to PG&E.
- The Supplier Sustainability Program, launched in 2007, encourages supplier responsibility, excellence and innovation.
- Promoting an ethical supply chain means that ethical supplier performance, including a supplier's efforts in each of the following areas, is an important consideration in supplier selection: health and safety, labor issues, human rights, ethical business conduct, and conflicts of interest.

SUPPLIER AND ITS SUBCONTRACTORS OF ALL TIERS MUST COMPLY WITH PG&E'S SUPPLY CHAIN RESPONSIBILITY POLICY IN THE AWARD OF ALL SUBCONTRACTS. This Policy requires that small and diverse businesses shall have the maximum practicable opportunity to participate in the performance of work, including Small Business Enterprises (SBEs); Women, Minority and Disabled Veteran Business Enterprises (WMDVBEs); and Lesbian, Gay, Bisexual, and Transgender Business Enterprises (LGBTBEs).

In order to be considered for this Contract, the Supplier must comply with the following requirements:

1. Supplier shall provide a copy of this Exhibit 1 to each prospective Subcontractor.

2. Supplier's **subcontracting goal** for this Contract (including any Contract Work Authorizations) is __15__%. If Supplier has multiple contracts with PG&E, Supplier's Subcontracting goal for all PG&E contracts is __15__%.

3. Supplier shall provide upon request a separate, signed prime supplier plan (Exhibit 1A – Supply Chain Responsibility List of Subcontractors and Disbursement Record) consisting of the name, diversity status and estimated spend to be paid to Subcontractors performing work for this Contract. Supplier shall also describe its Supply Chain Responsibility efforts and planned outreach to small, diverse businesses.

4. Qualifying Subcontractors must be certified as follows:

    a. Small Business Enterprises must be registered as a small business with a state or federal agency (e.g. California Department of General Services or Small Business Administration);

    b. Women- and minority-owned businesses must be certified by the California Public Utilities Commission's Supplier Clearinghouse;

    c. Service disabled veteran-owned businesses must be certified by the California Department of General Services; and

    d. Lesbian, gay, bisexual and transgender-owned businesses must be certified by the National Gay and Lesbian Chamber of Commerce (NGLCC®).

5. No later than the 10th of each month, Supplier shall submit its Subcontracting spend with small and diverse Subcontractors using PG&E's electronic reporting system located at the following address: https://cvmas10.cvmsolutions.com/pge/default.asp. To establish a User ID for use in the reporting system, Supplier shall submit a request via email to the following e-mail address: PVB1@pge.com.

6. For contracts exceeding $500,000 (or $1 million for construction), Suppliers must comply with the Policy Regarding Utilization of Small Business Concerns and Small Disadvantaged Business Concerns, as described in Exhibit 2. The Supplier Plan for these contracts must include provisions for implementing the terms of this Exhibit 1.

**Pacific Gas and Electric Company**

# Prime Supplier Subcontracting Plan

The information provided on this form may form the basis of a Statement of Record, against which PG&E may conduct an audit or review to ensure compliance.

**EXHIBIT 1A**

**Prime Contractor/Supplier:** Towers Watson

**Employer Identification # (EIN):** 4440009093

**Name of Preparer:** Tom Matthews

**Telephone:** ( 415 ) 733-4145

**E-Mail:** Tom.matthews@willistowerswatson.com

**PG&E Contract Number (if any):** 4440009093

**PG&E Project/Product:** Benefits Actuarial & Consulting Services

**Is Prime Contractor/Supplier CPUC Clearinghouse Certified?** Yes ☐ No ☒

**VON:**

**Contract Duration (Year):** From: 2017 To: 2020

**Is Prime Contractor/Supplier a Registered Small Business?** Yes ☐ No ☒

**Small Business #:**

| (1) Name of Subcontractor or Supplier | (2) / (2a) Contractor's License # / Expiration Date | (3) Union Signatory? | (4) CPUC VON¹ | (5) Small Business #¹ | (6) Small Business Code | (7) / (7a) Description of Work to be Performed or Major Materials to be Supplied / Excavation Required? | (8) Gold Shovel Status | (9) Risk Level | (10) / (10a) ISN ID# / Prequalified? | (11) Estimated Amount to be Paid |
|---|---|---|---|---|---|---|---|---|---|---|
| Small Diverse Subcontractor, Inc. | 123456 / 12/31/17 | Yes | 99999999 | 1234567 | SBE-DGS | Demolition | Yes | Active | High | 400-111111   Yes | $Example |
| None / NA | | | | | | | | | | | $ |
| | | | | | | | | | | | $ |
| | | | | | | | | | | | $ |
| | | | | | | | | | | | $ |
| | | | | | | | | | | | $ |
| | | | | | | | | | | | $ |
| | | | | | | | | | | | $ |
| | | | | | | | | | | | $ |
| | | | | | | | | | | | $ |

**(12) Total All Subcontractors and Suppliers** $

**(13) Total Self-Performed by Prime Contractor / Supplier:** $

**(14) Total Bid Value:** $

**(15) Total CPUC Clearinghouse Certified:** $

**(16) Total Small Business Certified:** $

**Small Business Code List**

SBE-DGS   A small business certified by the California Department of General Services (DGS)
SBE-SBA   A small business certified by the U.S. Small Business Administration (SBA)
SBE-SBA   A small business certified by another agency that issues a Small Business number
SBE-OTH   A small business certified by another agency that issues a Small Business number

**Signature:** _(signed)_

**Date:** 08/23/2017

I hereby certify that the information listed is true to the best of my knowledge

¹ Subcontractors and Suppliers may have both a CPUC Clearinghouse and a Small Business Certification. Please list both numbers. If a company has more than one Small Business Certification, list the numbers in the following order   (1) DGS, (2) SBA, and (3) any other small business registry where a number is issued.



**Pacific Gas and Electric Company**

## INSTRUCTIONS

Complete items numbered 1-11 and submit with your bid proposal.

(1) Include the complete name of ALL subcontractors Bidder plans to use to support the PG&E contract. Please spell out acronyms.

(2) Include each subcontractor's CPUC Clearinghouse Verification Order Number (VON) as listed in the CPUC Clearinghouse database (if applicable).

(3) Include each subcontractor's Diverse Code (if applicable). **See Diverse Code List below.**

(4) Include each subcontractor's Small Business number (if applicable). **See Small Business instructions below.**

(5) Include each subcontractor's Small Business Code (if applicable). **See Small Business Code List below.**

(6) Include the city, state and zip of each subcontractor.

(7) (A) Provide a brief description of the work each subcontractor will be performing; (B) indicate if the subcontractor will be performing low, medium or high risk work. Refer to PG&E's Contractor Safety Standard (SAFE-3001S), http://www.pge.com/...safetystandard/ for additional information.

(8) Include the estimated amount to be paid to each CPUC Clearinghouse subcontractor with a VON number.

(9) Include the estimated amount to be paid each Small Business subcontractor with a Small Business number.

(10) Total the estimated amount to be paid to each CPUC Clearinghouse subcontractor with a VON number (column 8), then, Total the estimated amount to be paid to each Small Business subcontractor with a Small Business number (column 9).

(11) Divide the estimated total amount to be paid to each CPUC Clearinghouse subcontractor with a VON number (column 8) by the Bid Value to calculate the percentage, then, Divide the estimated total amount to be paid to each Small Business subcontractor with Small Business number (column 9) by the Bid Value to calculate the percentage.

Do not enter an estimated amount for subcontractors without a CPUC Clearinghouse or Small Business Number. Do however, list the name, diverse code (if applicable), address and work description.

## DIVERSE STATUS

To locate the Verification Order Number (VON), diversity status or to find potential subcontractors, access the CPUC Clearinghouse Database: https://www.thesupplierclearinghouse.com/FrontEndSearch/CertifiedDirectory.asp

### Diverse Code List

**WBE** Women Business Enterprise – A business enterprise that is at least 51 percent owned by a woman or women or, in the case of any publicly-owned business, at least 51 percent of the stock of which is owned by one or more women, and whose management and daily business operations are controlled by one or more of those individuals.

**MBE** Minority Business Enterprise – A business enterprise that is at least 51 percent owned by a minority group or groups, or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more minority-group individuals, and whose management and daily business operations are controlled by one or more of those individuals.

**DVBE** The same meaning as defined in subdivision (g) of the Military and Veterans Code and must meet the "Control" criteria. An enterprise which is 51 percent owned by a California Service Disabled Veteran or the stock is 51 percent owned by one or more disabled veterans, and whose management and daily business operations are controlled by one or more of those individuals.

**LGBTBE** A business enterprise that is at least 51 percent owned by a lesbian, gay, bisexual, transgender person or persons, or in the case of any publicly-owned business, at least 51 percent of the stock of which is owned by one or more LGBT person and whose management and daily business operations are controlled by one or more of those individuals.

## SMALL BUSINESS STATUS

To determine Small Business status or to find potential subcontractors, access the following sites:

**DGS** Department of General Services (DGS),
http://www.dgs.ca.gov/pd/Programs/OSDS.aspx

**SBA** Small Business Administration (SBA), https://www.sba.gov/contracting/getting-started-contracting/qualify-small-business

### Small Business Code List

**SBE-DGS** A small business certified by the Department of General Services.

**SBE-SBA** A small business registered by the Small Business Administration.

**SBE-OTH** A small business registered by another agency that issues a Small Business number.

**NOTE:** Subcontractors may have a CPUC Clearinghouse and a Small Business certification. Please list both. If a company has more than one Small Business certification, the order of priority in which to list certifications is as follows: (1) Department of General Services (DGS), (2) Small Business Administration (SBA), (3) Any other small business registry where a number is issued.

The information provided on this Exhibit may form the basis of a Statement of Record, against which PG&E may conduct an audit or review to ensure compliance.

Case: 19-30088    Doc# 3650-2    Filed: 08/21/19    Entered: 08/21/19 16:58:41    Page 46 of 53

# EXHIBIT 2

## POLICY REGARDING UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL DISADVANTAGED BUSINESS CONCERNS

The following policy of the United States shall be adhered to in the performance of this Contract:

a) It is the policy of the United States that small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals shall have the maximum practicable opportunity to participate in performing contracts let by any Federal Agency, including contracts and subcontracts for subsystems, assemblies, components, and related services for major systems. It is further the policy of the United States that prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals.

b) Contractor hereby agrees to carry out this policy in the awarding of subcontracts to the fullest extent consistent with efficient contract performance. Contractor further agrees to cooperate in any studies or surveys as may be conducted by the United States Small Business Administration or the awarding agency of the United States as may be necessary to determine the extent of Contractor's compliance with this clause.

c) As used in this Contract, the term "small business concern" shall mean a small business as defined in Section 3 of the Small Business Act and relevant regulations promulgated pursuant thereto. The term "small business concern owned and controlled by socially and economically disadvantaged individuals" shall mean a small business concern (1) which is at least 51 percent unconditionally owned by one or more socially and economically disadvantaged individuals; or, in the case of any publicly owned business, at least 51 percent of the stock of which is unconditionally owned by one or more socially and economically disadvantaged individuals; and (2) whose management and daily business operations are controlled by one or more of such individuals. This term also means a small business concern that is at least 51 percent unconditionally owned by an economically disadvantaged Indian tribe or Native Hawaiian Organization, or a publicly owned business having at least 51 percent of its stock unconditionally owned by one of these entities which has its management and daily business controlled by members of an economically disadvantaged Indian tribe or Native Hawaiian Organization, and which meets the requirement of 13 CFR Part 124. Contractor shall presume that socially and economically disadvantaged individuals include Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, and other minorities, or any other individual found to be disadvantaged by the Administration pursuant to Section 8(a) of the Small Business Act. Contractor shall presume that socially and economically disadvantaged entities also include Indian Tribes and Native Hawaiian Organizations.

d) Contractor acting in good faith may rely on written representations by its subcontractors regarding their status as either a small business concern or a small business concern owned and controlled by socially and economically disadvantaged individuals.[1]

---

[1] Notwithstanding this provision of the federal statute, all WMDVBE subcontractors must be verified pursuant to the procedures prescribed in Section 2 of CPUC General Order 156, as such procedures may be amended periodically

## EXHIBIT 3

## INJURY AND ILLNESS PREVENTION PROGRAM
### Compliance Certificate

The undersigned is an authorized representative of __Towers Watson Delaware, Inc.__
(Contractor) and hereby certifies to PG&E as follows:

1.  Contractor has an effective Injury and Illness Prevention Program which meets the requirements of all applicable laws and regulations, including but not limited to Section 6401.7 of the California Labor Code, and any Subcontractor hired by Contractor to perform any portion of the Work under this Contract has an effective Injury and Illness Prevention Program; and

2.  The undersigned is the person with the authority and responsibility for implementing and administering Contractor's Injury and Illness Prevention Program.

IN WITNESS WHEREOF, the undersigned has executed this Compliance Certificate.

By: _____

Name: __Maureen Tarantello__

Title: __West Region Leader__

Date Signed: __August 16, 2017__

EXHIBIT 4

## PG&E DRUG AND ALCOHOL ABUSE
## AND TESTING POLICIES

I.  PG&E POLICY

1.0  PREFACE:  PG&E is committed to maintain and promote job safety and health for all workers at its facilities.  In addition, PG&E is determined to protect its employees, customers, and the general public while they are on PG&E property from any harm caused by illegal drug and alcohol use by non-PG&E personnel.  To accomplish these objectives, PG&E has established the following drug and alcohol policy for access to PG&E facilities by its Contractor and Subcontractor personnel.

2.0  COVERAGE:  This policy applies to the personnel of all PG&E Contractors and Subcontractors performing any work or services at PG&E offices and/or any other PG&E facilities.

3.0  POLICY:  PG&E may deny access to, or remove from, its facilities the personnel of any Contractor or Subcontractor, who PG&E has reasonable grounds to believe has:

    3.1  Engaged in alcohol abuse or illegal drug activity which in any way impairs PG&E's ability to maintain safe work facilities, to protect the health and well-being of PG&E employees, customers, and the general public, and to promote the public's confidence in PG&E's service and operations; or

    3.2  Been found guilty, pled guilty, or pled nolo contendere to a charge of sale or distribution of any illegal drug or controlled substance as defined under Federal or California law within the past five years, unless the criminal record was later expunged or sealed by a court order.

4.0  PROHIBITED ACTIVITIES:  The following activities are prohibited at all facilities owned or leased by PG&E:

    4.1  Possessing, furnishing, selling, offering, purchasing, using or being under the influence of illegal drugs or other controlled substances as defined under Federal or California law;

    4.2  Possessing, furnishing, selling, offering, or using alcoholic beverage, or being under the influence of alcohol.

5.0  ACTIONS:  Where reasonable cause exists that paragraph 4 of this policy has been violated, the Contractor or Subcontractor must inform the PG&E representative responsible for the Contract.  The Contractor or Subcontractor is also expected to take any or all of the following actions to the fullest extent they are permitted under governing collective bargaining agreements and/or its applicable security and human resources policies.

    5.1  Search the individual, his or her vehicle, locker, storage area, and personal effects;

    5.2  Require the individual to undergo a medical examination to determine their fitness for duty.  Such examination shall include obtaining a urine and/or blood specimen for drug or alcohol analysis unless the examining physician deems such tests to be inappropriate;

    5.3  Take any other appropriate action to determine if there has been a violation of paragraph 4.  Refusal to comply with a request made under this paragraph shall be grounds for denying access to, or immediate removal from, any PG&E facility.

6.0  PERMISSION TO RE-ENTER:  Any individual who has been denied access to, or removed from, PG&E facilities or violating this policy may obtain permission to enter or reenter provided the individual establishes, to the satisfaction of his or her employer and PG&E, that the previous activity which formed the basis for denying access or removal has been corrected and his or her future conduct will conform with this policy.  PG&E retains the right of final approval for the entry or reentry of any individual previously denied access to or removed from PG&E facilities.

II.  U.S. DEPARTMENT OF TRANSPORTATION REGULATIONS FOR DRUG AND ALCOHOL TESTING OF COMMERCIAL MOTOR VEHICLE DRIVERS AND OF NATURAL GAS PIPELINE WORKERS

1.0  Contractor agrees that, to the extent it may be applicable to this Contract, Contractor shall comply with the U.S. Department of Transportation's (DOT) regulations for (i) commercial motor vehicle drivers, 49 CFR 382, Controlled Substances and Alcohol Use and Testing and (ii) work on gas, hazardous liquid and carbon dioxide pipelines, and liquefied natural gas pipelines, 49 CFR Parts 192, 193 or 195, Control of Drug Use in Natural Gas, Liquefied Natural Gas and Hazardous Pipeline Operations.  Contractor shall establish and maintain a drug and alcohol testing program for its employees consistent with 49 CFR Part 40, Procedures for Transportation Workplace Drug Testing Programs and 49 CFR 199, Drug and Alcohol Testing, as applicable.  Contractor shall ensure that any Subcontractor hired by Contractor to perform any portion of the Work under this Contract that is regulated by 49 CFR 192, 193, 195 or 382 shall also have a drug and alcohol testing program that complies with applicable DOT requirements.

2.0  PG&E's duly authorized representatives, the CPUC, DOT and appropriate agencies shall have, during the term of the Contract and for two years thereafter, access at all reasonable times to Contractor's drug and alcohol testing program records for the purpose of monitoring compliance with DOT regulations.  Contractor shall ensure that any Subcontractor hired by Contractor to perform any portion of the Work regulated by 49 CFR Part 192, 193, 195 or 382 under this Contract shall also provide access to its drug and alcohol testing program records to PG&E's authorized representatives, the CPUC, DOT and appropriate agencies for the purpose of monitoring compliance with DOT regulations.  Failure to comply with this requirement may, at PG&E's option, result in cancellation or termination of existing contracts and the loss of opportunity to bid on future contracts.

**EXHIBIT 5**

## PG&E CONTRACTOR DOCUMENT RETENTION AND PRODUCTION REQUIREMENTS

1. To the extent Contractor retains any documents and data, whether paper or electronic, created, collected or received for PG&E in the course of performing the Work or furnishing the materials under the Contract, including without limitation, documents, data, plans, drawings, diagrams, investigative notes, field notes, tests, photographs, records, calculations, summaries, and reports; provided that Contractor is not required to retain (i) draft versions of final written documents such as reports, presentations, or other written deliverables and (ii) documents that are inconsequential or ancillary to performance and documentation of the project or its deliverables, Contractor shall comply with this Exhibit 5. Collectively, the information shall hereinafter be referred to as "PG&E Contractor Documents."

2. Contractor shall store PG&E Contractor Documents in a secure and organized manner.

3. Upon completion of the Work or furnishing of the materials under the Contract, or upon completion of the Work or furnishing of the materials under each CWA under the Contract ("Work Completion Date"), PG&E will specify which of PG&E Contractor Documents must be transmitted by Contractor to PG&E ("PG&E Records"), provided however, unless otherwise agreed by PG&E:

   a. Contractor may retain archival copies in accordance with its record retention policies and procedures (a) with respect to backup media for which selective deletion of files or data is not feasible and (b) in order to enable it to comply with its professional standards requirements and substantiate the work in the event of a dispute; provided further that any such archival copies shall continue to be subject to the confidentiality obligations under the Agreement for as long as they are retained.

   b. If PG&E Records are kept in electronic form, the following formats are acceptable for transmission to PG&E: (i) PDF, CAD or TIFF for drawings and diagrams and (ii) PDF, MS-Word, MS-Excel or MS-PowerPoint for all other documents. This Section 3.d. shall not abrogate Contractor's obligation to produce PG&E Records in an alternative format (e.g., a native format) if set forth elsewhere in the Contract, in which case Contractor shall produce PG&E Records in each of the formats requested.

4. PG&E Contractor Documents shall be treated as confidential and shall not be disclosed to others unless Contractor is required to produce such documents pursuant to legal or regulatory requirements, in which case Contractor shall give PG&E maximum practicable advance notice prior to any production.

5. Contractor shall maintain a system for back-up of electronic PG&E Contractor Documents (e.g., files or databases) so they will be preserved for retrieval in the event that the originals are lost or destroyed.

6. If Contractor disposes of PG&E Contractor Documents, Contractor shall do so in a confidential and secure manner, whether the format is electronic or paper. Proof of destruction of PG&E Contractor Documents shall be submitted to PG&E upon request.

7. If PG&E provides paper documents to Contractor in order to convert them to digital electronic format, Contractor shall return both the paper documents and the documents converted to digital electronic format to PG&E.

8. . Contractor is responsible for ensuring that its Subcontractors regardless of tier comply with the obligations of Contractor where set forth in this Exhibit 5.

9. The terms and conditions of this Exhibit 5, including Exhibit 5A if attached, shall survive the termination of this Contract.

EXHIBIT 6

AUDIT RIGHTS

Reference Section 9.6

# Exhibit 7

# NERC REQUIREMENTS

Pursuant to a directive from the North American Electric Reliability Corporation (NERC), all employees and contractors with Unescorted Access to facilities, systems and functions that PG&E deems critical to the support of the Bulk Electric System ("Critical Facilities and/or Critical Systems") shall undergo employment background screening and training prior to being granted access to these PG&E facilities and/or systems. Contractor hereby agrees to perform background checks ("Personnel Risk Assessments" or "PRA's") on all Contractor and Subcontractor personnel ("Individuals") with Unescorted Access. PG&E has included in the category of those with Unescorted Access all Individuals working within PG&E Critical Facilities and/or Critical Systems ("Unescorted Access"). The Parties do not anticipate any Contractor and Subcontractor to fall within this category. If such a need arises, the Parties will identify such individuals in the applicable CWA or other written confirmation. Contractor shall perform the following background check and comply with the following provisions for any Work subject to the NERC requirements for Unescorted Access. The background check can have no findings for any of the criteria (i.e., an acceptable background check):

1.  Contractor shall perform a background screening for each Individual that includes each of the following criteria: (i) Social Security Number verification; (ii) City, County, State and Federal Criminal Check for felonies and misdemeanors over the past seven years (in up to three counties where the Individual has lived in the past seven years); (iii) "Global Watch" (check of 19 Federal and International Terrorist Watch lists); (iv) validation of current residence and confirmation of continuous residence at this site for a minimum of the most recent 6 months (confirmed by period of residence, employment, or education at a specific site) and validation of other locations where, during the seven years immediately prior to the date of the criminal check specified in (ii) above, the Individual has resided for six consecutive months or more.

2.  After performing an acceptable background check for each Individual with Unescorted Access, the Contractor shall provide PG&E's Human Resources Department with a Personnel Risk Assessment Attestation Form in the form attached hereto as Exhibit 7A for each Individual on assignment to PG&E prior to the Individual being granted Unescorted Access.

3.  Contractor shall require that each Individual with Unescorted Access complete an initial training and annual PG&E web-based training session on safety, information security, compliance with PG&E codes and procedures including but not limited to CORP-0804 Cyber and Physical Security Awareness training. Contractor shall direct that each Individual complete the PG&E training program by CD or by hard copy format, if Contractor informs PG&E that web based training is not feasible.

4.  After Contractor certifies to PG&E completion of the requirements set forth in paragraphs 1-3 above, PG&E will issue each Individual a keycard to access the designated PG&E facility to which they are assigned and/or logical access to the designated Critical System to which they are assigned. PG&E will deny access to Critical Facilities and/or Critical Systems to any Individual for whom Contractor has not certified completion of the requirements set forth in paragraphs 1-3 above.

5.  Every seven years, Contractor shall perform NERC background screening as described herein for each Individual on continuing assignment to work at PG&E Critical Facilities and/or Critical Systems.

6.  Contractor shall retain documentation supporting the Personnel Risk Assessment Attestation Form for each Individual assigned to PG&E Critical Facilities and/or Critical Systems for a minimum of seven years.

7.  PG&E may request additional information regarding Contractor's background screening methodology. Contractor shall promptly respond to any such auditing requests and activities. PG&E and/or WECC will set the frequency of such requests relating to the Contractor's PRA process and supporting records.

8.  In addition to its other indemnity obligations hereunder, Contractor shall indemnify and hold harmless PG&E for any penalties assessed against PG&E (including but not limited to penalties assessed against PG&E by the Western Electricity Coordinating Council (WECC), NERC or the Federal Energy Regulatory Commission (FERC) for a violation of any NERC reliability standard) caused by Contractor's failure to perform its obligations under this Exhibit.

**Exhibit 7A**

**PG&E NERC CIP PROGRAM**

**NON-EMPLOYEE ATTESTATION FORM**

**COMPLETION OF PERSONNEL RISK ASSESSMENT (PRA) PROCESS**

Please initial next to each line item below to verify that the following Non-Employee has received satisfactory results for each of the required background checks.

Non-Employee Name: _N/A — None –No unescorted access required_

Vendor Name: _N/A — None "_

Requisition and/or PO #: _N/A — None "_

Date NERC Background Check Completed: _N/A — None "_

**Background Investigation – Completed and Passed the Following (Includes International Components When Applicable)** *Initial next to each:*

_N/A_ Criminal Felony / Misdemeanor Search – Past 7 years, all names, all counties off the social trace (incl. past 7 years residency check)

_N/A_ Federal Criminal Search – Past 7 years, all names off the social trace

_N/A_ Prohibited Parties

_N/A_ SSN Trace

_N/A_ SSN Validation

_N/A_ Statewide Criminal Search

By completing and signing this form, Vendor confirms that the background investigation has been executed and satisfactory results received according to PG&E NERC CIP Program specifications for the above stated Non-Employee. All supporting documents must be kept on file with Vendor for a minimum of 7 years following the end of the Vendor's last non-employee's assignment at PG&E. Random audits of supporting documents may be conducted by PG&E or its designee, consistent with its right under the PG&E/Vendor contract, to ensure compliance with the requirements designated in the certification and contract.

☒ **I certify that I am authorized to sign on behalf of the aforementioned Vendor.**

Vendor Representative Signature: _Thomas D Matthews_

Vendor Representative Name: _Thomas D Matthews_

Date Signed: _08/23/2017_

If you have any questions and need additional details regarding this process, please contact the Human Resources Department at nercaccess@pge.com.