Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:	628.208.6434
Facsimile:	310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:	310.442.8875
Facsimile:	310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official
Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>　　　　　　　　　　　**Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF MATTHEW J. DUNDON IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO 11 U.S.C. § 1103 AND FED. R. BANKR. P. 2014 AND 5002 TO RETAIN AND EMPLOY DUNDON ADVISERS LLC *NUNC PRO TUNC* FROM MARCH 1, 2019 TO APRIL 29, 2019**<br><br>Date: September 24, 2019<br>Time:　9:30 a.m. (Pacific Time)<br>Place:　United States Bankruptcy Court<br>　　　　Courtroom 17, 16th Floor<br>　　　　San Francisco, CA 94102<br>**Objections Due: September 17, 2019**<br>　　　　　　4:00 p.m. (Pacific Time) |

Pursuant to section 1746 of title 28 of the United States Code, I, Matthew Dundon, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am a Principal of Dundon Advisers LLC ("**Dundon**"), which has its principal office at 440 Mamaroneck Avenue, Harrison, New York 10528. I am authorized to execute this declaration on behalf of Dundon. Unless otherwise stated in this declaration (the "**Declaration**"), I have personal knowledge of the facts set forth herein

2. I submit this Declaration in support of the Application (the "**Application**") of the Official Committee of Tort Claimants (the "**TCC**") of PG&E Corporation and Pacific Gas and Electric Company (collectively the "**Debtors**") for the entry of an order authorizing the TCC to retain and employ Dundon as financial advisor to the TCC, *nunc pro tunc* from March 1, 2019 to and including April 29, 2019, pursuant to section 1103(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and in accordance with the terms and conditions set forth in the engagement letter between the TCC and Dundon dated April 15, 2019 (the "**Engagement Letter**").

3. Dundon is a financial advisory firm whose professionals' experience with distressed assets and the bankruptcy process goes back to the 1990's, and which has a leading national platform particularly focused on litigation claims in bankruptcy. During and prior to the active period of its engagement for the TCC, Dundon was or had recently been (a) financial adviser to (i) the Official Committees of Unsecured Creditors appointed in the *Open Road Films, BeavEx, SIW Holdings*, and *LBI Media* cases in the District of Delaware, the *Frank Theatres* cases in the District of New Jersey, the *All American Oil and Gas cases in the Western District of Texas* and (ii) the debtors in the *Hilltop Energy* cases in Delaware, and (b) co-financial adviser to (i) the Official Committees of Unsecured Creditors in the *1 Global* cases in the Southern District of Florida and *Aralez Pharmaceuticals* cases in the Southern District of New York and (ii) the estate funded and court appointed Ad Hoc Noteholder Group in the *Woodbridge Group* cases in the District of Delaware. All of the foregoing are highly complex Chapter 11 cases. In addition to its

service as a financial adviser to committees and debtors, Dundon's clients with class, collective, and other representative or individual litigation claims against debtors have been appointed to seventeen (17) official committees of unsecured creditors since April 2016, and Dundon has taken an active role in the activities of many of those committees. Energy cases are significant among these, including *First Energy Solutions* (the largest recent utility Chapter 11 cases preceding these cases), *Rex Energy* and *PetroQuest Energy*. These cases also include the largest California case in many years before the commencement of these cases, *Verity Health System*, as well as one of the largest active cases in the country in the period preceding the filing of these cases, *Sears Holdings*. Dundon also provides financial advisory and investment management services in other bankruptcy and non-bankruptcy contexts. Subsequent to the conclusion of the active period of its engagement to the TCC, Dundon was engaged as financial adviser to numerous other official committees of unsecured creditors and other clients in relation to bankruptcy and otherwise.

4. Leadership in these cases for Dundon was provided by (1) firm Principal Matthew Dundon, who has more than twenty (20) years' of experience in credit origination and restructuring in law firms, securities brokerages, and hedge funds, (2) firm Managing Director Alex Mazier, who has more than twenty (20) years' of experience in investment management and restructuring, and is a leading energy and utility expert, and (3) firm Senior Adviser Laurence Pelosi, who has more than twenty (20) years' of experience with California real estate, finance and public policy. John Roussey also contributed to the engagement.

5. I believe that the TCC's selection of Dundon as a financial advisor was based upon, among other things: (a) the TCC's need to retain a financial advisory firm to provide advice relevant to the scope of the TCC's mandate; (b) Dundon's senior professionals' extensive experience and excellent reputation in providing financial advisory services in chapter 11 cases such as these Cases; (c) Dundon's ability to provide advice on a cost-effective and time-sensitive basis (particularly important to tort claimants in these cases); (d) Dundon's particular knowledge and expertise regarding litigation claims in bankruptcy, and the operations of utilities; and (e) Dundon's established history of effective and efficient collaboration with other financial advisers.

6. I also believe that Dundon has a unique blend of case-specific knowledge, relevant experience, and expertise which is one reason why the TCC voted to retain Dundon as its financial advisor, subject to Court approval. This retention was contemplated to be in parallel with retentions of Lincoln Partners Advisors LLC ("**Lincoln**") and Development Specialists, Inc. ("**DSI**"). The proposed scope of Dundon's engagement was to relate to specific areas of concern without substantial duplication of efforts.

7. The employment of Dundon *nunc pro tunc* to March 1, 2019 is justified under the circumstances so that Dundon may be compensated for services it provided to the TCC. Since March 1, 2019, Dundon worked in good faith with the TCC and its counsel to provide services that the TCC believed were necessary to ensure that tort claimants are fully and fairly compensated for their claims in the Cases. Dundon has assisted the TCC with wildfire mitigation issues, legislative developments, claimant communication platform issues, and real estate issues, and has also assisted the TCC with the preparation of the Application and this Declaration.

8. Moreover, as a result of the *Issues to Be Addressed at the April 24 Hearing on Retention Applications* [Docket No. 1587], entered on April 22, 2019, regarding the TCC's retention of two financial advisory firms, the TCC worked with its financial advisors Development Specialists, Inc., Lincoln Partners Advisors LLC and Dundon to further refine the scope of their work for the TCC. The revised scope of DSI and Lincoln's retentions both eliminated overlap of services, and ultimately absorbed Dundon's proposed role in the Cases. Dundon also worked with the TCC to reduce the amount of its fees in light of its shifting role in the Cases.

9. In connection with its proposed retention by the TCC in the Debtors' Cases, Dundon obtained from the TCC and/or its representatives the names of individuals and entities that may be parties in interest (individually a "**Potential Party in Interest**" and collectively the "**Potential Parties in Interest**") in the Cases. Dundon searched the name of each Potential Party in Interest to determine the names of each Potential Party in Interest that has entered into engagement agreements with Dundon since Dundon's founding in 2016. Dundon has not entered into any engagement agreements with any Potential Parties in Interest.

10. In several instances, the names on the list of Potential Parties in Interest were very common and/or generic. As such, it was not possible to identify with certainty whether Dundon has any client relationship to disclose for those specific names.

11. To the extent that this inquiry revealed any contractual connection to Potential Parties in Interest (or their apparent affiliates or entities that Dundon believes to be affiliates, as the case may be), that connection is identified in paragraph 16 below.

12. To the best of my knowledge and belief, each such connection was or is only on matters that are unrelated to the Debtors and these Cases.

13. Dundon may represent, or may have represented, affiliates, equity holders or sponsors of Potential Parties in Interest and Dundon may have worked with, continue to work with, have or had mutual clients with, worked on the same cases, been represented by and/or advised certain accounting and law firms that are Potential Parties in Interest (and, in the case of law firms, may have entered into engagement agreements in which the law firm was named as client although the work was performed for a mutual client of Dundon's and the applicable law firm). Dundon may also represent, or may have represented in the past, committees or groups of lenders or creditors in connection with certain restructuring or refinancing engagements, which committees or groups include, or included, entities that are Potential Parties in Interest. Certain of the Potential Parties in Interest may also be vendors and/or have other non-investment banking relationships with Dundon.

14. Although Dundon has researched the Potential Parties in Interest, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that are not included as Potential Parties in Interest and with whom Dundon may maintain business relationships. In addition, as of the date hereof, Dundon has approximately fourteen (14) employees and independent contractors worldwide. It is possible that certain of Dundon's respective members, managers, officers, employees and independent contractors may have had in the past, may currently have, or may in the future have connections to (a) the Debtors, (b) Potential Parties in Interest, or (c) funds or other investment vehicles that may own debt or securities of the Debtors or Potential Parties in Interest.

15. I have determined that connections of Dundon and its employees to Potential Parties in Interest are disclosable as follows, provided I believe none individually or all in the aggregate do or could give rise to any conflict of interest or other impediment to our service to the TCC:

   a. Bank of America formerly employed Alex Mazier;

   b. Barclays by its predecessor, the domestic capital markets business of Lehman Brothers, formerly employed Alex Mazier (this former employment may also be disclosable in connection with Lehman Brothers Commodity Services);

   c. Comcast and General Electric formerly employed John Roussey through his employment with NBC Universal;

   d. Goldman Sachs holds a partnership interest in a Utah residential real estate venture in which Laurence Pelosi holds a general partnership interest;

   e. Carval listed Cargill, and which was a member of the Ad Hoc Committee of Senior Unsecured Noteholders at the time its Rule 2019 statement was filed and may remain such a member, engaged Dundon in relation to the acquisition of interests in class action claims prior to the commencement of these Cases and unrelated to PG&E. Dundon is at present obliged to render no services, and is entitled to receive no payments either definitively or contingently, in connection with such engagement;

   f. Hartford provides Dundon's commercial insurance coverage;

   g. INTL FC Stone, by its predecessor Miller Tabak Roberts Securities, LLC, formerly employed me, Harry Tucker and Eric Reubel (an employee who joined Dundon subsequent to the completion of its work for the TCC);

   h. JP Morgan formerly employed Jonathan Feldman;

   i. Morgan Stanley formerly employed Laurence Pelosi;

   j. Paul, Weiss, Rifkind, Wharton & Garrison LLP formerly employed Peter Hurwitz;

k. Royal Bank of Canada formerly employed Laurence Pelosi and thereafter formerly retained him as an independent contractor;

l. Union Bank of Switzerland formerly employed Phillip Preis, Jr.;

m. Wells Fargo provides Dundon's operating bank accounts; and

n. Western Power & Steam was one of the debtors in the *All American Oil & Gas* cases in connection with which Dundon provided services (concluded February 28, 2019) as Financial Adviser to the Official Committee of Unsecured Creditors.

16. Alex Mazier is an independent non-executive member of the Board of Directors of GenOn. At present, after due inquiry, I are unaware of any current or potential connection between GenOn and PG&E which would be a material concern to the TCC; among other things, GenOn does not supply or compete with PG&E and there is no on-going contract between the parties.[1]

17. Dundon's review of the investments and investors to which it provides investment management services determined that there is no connection with the Potential Parties in Interest, except as otherwise provided herein.

18. Other than as disclosed herein, Dundon has no relationship with the Debtors of which I am aware after due inquiry. Based on the foregoing, I believe Dundon is disinterested as defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors or their estates.

19. The compensation structure set forth in the Application and Engagement Letter were negotiated at arms' length, and are consistent with Dundon's typical compensation for work of this nature.

Dated: August 16, 2019

_____
Matthew J. Dundon
Principal, Dundon Advisers LLC

---

[1] The TCC's counsel sent a letter to counsel for the Debtors on April 4, 2019 requesting further information regarding any unknown and/or executory connection between GenOn and the Debtors. The Debtors' counsel has not provided any further information as to any such connection.