**DIEMER & WEI, LLP**
Kathryn S. Diemer (#133977)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Telephone: (408) 971-6270
Facsimile: (408) 971-6271
Email: kdiemer@diemerwei.com


**WILLKIE FARR & GALLAGHER LLP**
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Benjamin P. McCallen (*pro hac vice*)
Joseph G. Davis
Antonio Yanez, Jr. (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
  jminias@willkie.com
  bmccallen@willkie.com
  jdavis@willkie.com
  ayanez@willkie.com

*Counsel for the Ad Hoc Group of Subrogation Claim Holders*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION** <br><br> -and- <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br> **Debtors.** <br><br> ☐ Affects PG&E Corporation <br><br> ☐ Affects Pacific Gas and Electric Company | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **STATEMENT OF THE AD HOC GROUP OF SUBROGATION CLAIM HOLDERS REGARDING AUGUST 27, 2019 STATUS CONFERENCE ON ESTIMATION** <br><br> Date: August 27, 2019 <br> Time: 9:30 a.m. (Pacific Time) |

■ Affects both Debtors

*All papers shall be filed in the Lead Case, No. 19-30088 (DM)*

Place:  United States Bankruptcy Court
        Courtroom 17, 16th Floor
        San Francisco, CA 94102

The Ad Hoc Group of Subrogation Claim Holders ("**Ad Hoc Subrogation Group**") submits this Statement in advance of the status conference set for August 27, 2019 to address various issues posed by the Court, as well as additional issues it respectfully suggests should be discussed at the conference.

## *Debtors' Identification of Disputed Claims and Anticipated Defenses*

In an August 22, 2019 letter (the "**August 22 Letter**") to the parties, the Debtors proposed that the Official Committee of Tort Claimants (the "TCC") and the Ad Hoc Subrogation Group file opening briefs in the estimation proceedings "identifying in advance of the hearings the legal and factual issues relating to liability that *they believe* are in dispute." (Ex. A at 2 (emphasis supplied).) Such an approach flies in the face of the procedures ordinarily governing the resolution of disputed claims in bankruptcy and is both inefficient and improper.

It makes no practical sense for the TCC and the Ad Hoc Subrogation Group to prepare factual and legal support for briefing based on the challenges they "believe" the Debtors will raise to liability for fires that, at least in some cases (although the Debtors obfuscate which ones), the Debtors admit they started. Having moved to challenge wildfire-related claims in an estimation proceeding, the Debtors must have a clear understanding of the aspects of those claims they intend to dispute, and it is their burden to provide that information now.

The Ad Hoc Subrogation Group therefore agrees with the TCC that the first step in framing any estimation proceeding is for the Debtors to identify the grounds for their objections to the wildfire claims—to identify and clarify the defenses to liability that they intend to raise and any factual or legal defenses to those claims (or elements of claims) they intend to raise, with respect to both liability and damages, for each wildfire. The TCC has served interrogatories on

the Debtors seeking such information with respect to the underlying claims for liability, and the Ad Hoc Subrogation Group supplemented those questions in a letter to counsel for the Debtors asking the Debtors to specify which elements of subrogation damages the Debtors intend to dispute at trial. The Debtors should respond to those inquiries, formally or informally, as soon as practicable.

It is fundamental that a proof of claim is deemed allowed unless a party in interest objects, and that even where an objection to a claim is filed, a proof of claim executed and filed in accordance with the bankruptcy rules is *prima facie* proof of the validity and amount of the claim. See 11 U.S.C. § 502(b); Bankruptcy Rule 3001(f); *In re S. California Plastics, Inc.*, 165 F.3d 1243, 1248 (9th Cir. 1999); *In re Wallace*, 690 F. App'x 988, 989 (9th Cir. 2017). Although there may be cause for estimating the wildfire claims in this case, there is no cause for allowing the Debtors to run away from their obligation to set forth the legal and factual bases for objecting to the wildfire claims (especially where, as described below, the Debtors are not contesting causation for all but one of the wildfires).

In response, the Debtors protest that the TCC and Ad Hoc Subrogation Group have been litigating these claims for two years and should know what the Debtors dispute. But the Debtors preempted that litigation by filing for bankruptcy protection and submitting themselves to the procedures for challenging proofs of claim, and the litigation the Debtors have initiated is not a continuation of the state court litigation, but an estimation proceeding under the rubric of the claim resolution procedures established under federal bankruptcy law. Indeed, with respect to the Camp Fire (which comprises a large share of the damages in dispute), the automatic stay went into effect before any substantial discovery or litigation had occurred. Moreover, it is an estimation proceeding that the Debtors demand must be accomplished on an exceedingly tight schedule (after having waited over five months to commence it, and having blocked discovery during that time), to accommodate their restructuring and emergence within a matter of months. In that context, the Ad Hoc Subrogation Group and the TCC should not be left to guess which or how much of their claims the Debtors will challenge in the estimation proceedings they initiated.

Case: 19-30088    Doc# 3690    Filed: 08/26/19    Entered: 08/26/19 10:17:16    Page 3 of 8

Requiring the Debtors to provide notice of exactly what they intend to dispute in these expedited estimation proceedings is a basic requirement of due process and consistent with the basic construct of the claim objection process. And these questions are not academic; they are entirely practical. For example, the Debtors have represented to this Court that for purposes of estimation, they "are prepared to agree that as part of their proposed estimation process they will not contest causation with respect to any Wildfire for which the California Department of Forestry and Fire Protection ("CAL FIRE") has concluded PG&E is responsible. That means the Debtors will not contest causation for estimation purposes with respect to the 2018 Camp Fire or any of the 22 separate 2017 North Bay Fires listed in section III.A below, except the 2017 Tubbs Fire." Estimation Procedures Motion at 11 (Doc. 3091). However, the Debtors later stated that they reserved their rights to contest causation with respect to additional fires beyond Tubbs. *Id.* at 18 ("With respect to the Camp Fire, while the Debtors have accepted CAL FIRE's determination that PG&E transmission facilities near Pulga ignited the fire, the Debtors have not formed a conclusion as to whether a second fire ignited nearby as a result of vegetation contact with its electrical distribution lines and reserve all rights concerning that causation issue."). Similarly, at the August 14 hearing on the estimation motion, the Debtors indicated that they may contest causation during the estimation process, along with negligence. Aug. 14 Hr'g Tr. 31:23-25 ("we still have to go to the estimation process, and we still have to deal with the causation, we still have to deal with the negligence"). And the Debtors apparently have cherry-picked certain fires they intend to litigate specifically in estimation because they believe those fires involved other causes (although until the Debtors explain why they selected those fires, we cannot be sure, which is exactly the point).

Similarly, the Debtors so far have refused to identify which elements of the Ad Hoc Subrogation Group's subrogation damages they intend to dispute, and on what basis. The fires caused widespread property damage – residential, commercial, agricultural, horticultural, structural, permanent, temporary, complete, partial, etc. The dozens of insurers responsible for responding to claims acted quickly and effectively to help their insureds deal with the devastation resulting from wildfires that PG&E caused and begin the process of rebuilding. Now the

- 4 -

Debtors, which *seem* to admit they started at least some of the fires that created these insurance claims, have indicated that they intend to challenge the Ad Hoc Subrogation Group's right to recoupment based on those insurance claims, but refuse to say which kinds of insurance payments they will not reimburse or on what basis.

Instead, the Debtors served a massive discovery request on the Ad Hoc Subrogation Group demanding *every* "claim file" for *every* insurance policy connected with *every* fire. They have not explained which pieces of the claims files would be relevant to the aspects of the insurance reimbursements they intend to dispute, or even the categories of data they would expect to be in what they label a "claim file." This is no way to proceed in an expedited hearing. Gathering all information related to every underlying claim from active and on-going insurance relationships from more than 80 insurance carriers, claims arising from payments to thousands of insured victims, is the definition of inefficiency. Instead, the Debtors should identify what aspects of the claims they are challenging and what data they need to support and quantify those challenges, after which the parties can discuss how to approach what certainly will be a logistical challenge even after the issues are narrowed.

In short, without clarity on which aspects of liability and damages the Debtors are challenging, for which wildfires, there is no way for the parties to come to agreement on the date for the estimation trial, the extent of discovery needed, the number of witnesses, the timing of expert and pre-trial disclosures, or a myriad of other issues relevant to the conduct of the estimation proceeding. Accordingly, the Ad Hoc Subrogation Group respectfully requests that the Court require the Debtors to identify the issues that they believe are in dispute, so that the parties and the Court can develop a schedule for discovery and the estimation trial, as further discussed below.

### *Schedule for Discovery and Estimation Trial*

After the above process occurs, the parties can commence an expedited discovery and pre-trial process. It is the view of the Ad Hoc Subrogation Group that discovery should proceed in three principal stages: (1) document productions, (2) followed by depositions, and (3) followed by

expert discovery (including the exchange of reports and depositions). Thereafter, the parties can engage in customary pre-trial disclosures, including the exchange of exhibits, identification of witnesses and pre-trial briefing, consistent with this Court's procedures and rules. The Ad Hoc Subrogation Group is confident that the parties can meet and confer and agree upon some if not all of these deadlines. However, those deadlines need not be set (and should not be set) until the parties receive further clarification on the timing of the final estimation hearing, as the time allotted for each stage of pretrial proceedings will depend on the hearing schedule.

As previously discussed with the Court, the subrogation parties and individual wildfire claimants propounded a letter to the Debtors on July 1, 2019 identifying the major areas of open discovery. The parties are currently meeting and conferring regarding those categories of discovery, and the Ad Hoc Subrogation Group will consider whether additional requests, formal or informal, are necessary. Any disputes can and will be addressed to the Court promptly. This process has already begun and should continue while the parties and Court continue to work out the details of a pre-trial schedule.

*Scope and Subject Matter of Estimation Trial*

The Debtors' August 22 Letter, which envisions piecemeal briefing of legal issues and six separate evidentiary hearings on individual wildfires, followed by another trial on damages, is wasteful, inefficient and frankly unworkable under the time constraints in place. (Ex. A.) Should the Debtors wish to limit their presentation to certain fires at the estimation hearing, that is their prerogative. However, it would be unfair and imprudent at this early stage for the scope of the hearing and the evidence to be presented to be determined – before necessary disclosures and discovery has occurred. Rather, once a venue and date for the estimation hearing is established, a fair allocation of time among the parties for the estimation hearing can be determined; at that point, the parties can further consider the presentation of evidence based on the issues that are in dispute, as clarified and narrowed through disclosures and discovery.

*Inverse Condemnation Briefing Schedule*

The Court has issued a proposed schedule regarding briefing on the issue of inverse condemnation. The Ad Hoc Subrogation Group generally agrees with that schedule, with slight modification: the Ad Hoc Subrogation Group requests that the Debtors submit their pleadings on this issue by November 1, 2019 (the date the Court has proposed), with all oppositions be filed by November 22, 2019 (a week later than the Court proposed), and any replies be submitted by December 3, 2019.

*Mediation*

The Ad Hoc Subrogation Group welcomes the opportunity to participate in a Court-ordered mediation, as a consensual resolution of all wildfire claims is in the best interests of all stakeholders. The Ad Hoc Subrogation Group proposes that the Court set a date for the parties to agree on a suitable mediator and location for the mediation. The mediation can proceed in parallel with discovery and other pre-trial proceedings.

We look forward to discussing these issues, and any others the Court would like to discuss, at the conference on August 27.

Dated: August 26, 2019

**WILLKIE FARR & GALLAGHER LLP**

/s/ *Benjamin P. McCallen*
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Benjamin P. McCallen (*pro hac vice*)
Joseph G. Davis
Antonio Yanez, Jr. (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Email: mfeldman@willkie.com
jminias@willkie.com
bmccallen@willkie.com
jdavis@willkie.com
ayanez@willkie.com

*Counsel for Ad Hoc Group of Subrogation Claim Holders*