WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br> - and - <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> * All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Bankruptcy Case No. 19-30088 (DM) <br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **DECLARATION OF MARK REDFORD IN SUPPORT OF LEASE ASSUMPTION MOTION** <br><br> Date: September 24, 2019 <br> Time: 9:30am (Pacific Time) <br> Place: United States Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 <br> Judge: Hon. Dennis Montali <br><br> **Objection Deadline:** September 10, 2019, 4pm (Pacific Time) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Mark Redford, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Principal Real Estate Transaction Manager in the Corporate Real Estate Strategy & Services department ("**CRESS**") of Pacific Gas and Electric Company (the "**Utility**" and, together with PG&E Corporation, the "**Debtors**"), and have served in my current role since 2017. I was first employed by the Utility between 2007 and 2016 and held a number of positions in the Utility, including Supervisor, Corporate Real Estate Transactions Department and Corporate Real Estate Transactions Specialist. After a brief departure in 2016, I rejoined the Utility in 2017. I hold a Bachelor of Science in Planning and Resource Management (Urban Planning) from Brigham Young University.

2. I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Fifth Omnibus Motion of the Debtors Pursuant to 11 U.S.C § 365(a), Fed. R. Bankr. P. 6006, and B.L.R. 6006-1 for an Order Approving Assumption of Certain Real Property Leases* (the "**Motion**").[1]

3. I am knowledgeable and familiar with the Debtors' day-to-day operations and, specifically, the Debtors' portfolio of real property leases and land-related agreements managed by CRESS. The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' other employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**THE DEBTORS' REAL PROPERTY LEASES**

4. The Debtors are party to numerous real property leases and land-related agreements providing for the Debtors' access to, among other things, offices, warehouses, parking and storage yards, aircraft hangars, data centers, telecommunications facilities, and gas and electric generation and transmission infrastructure, which are used by the Debtors in connection with their

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

ongoing business operations. I understand that the Debtors received an extension of the deadline to assume their nonresidential real property leases until August 27, 2019.

5. By the Motion, the Debtors seek to assume certain of their nonresidential real property leases and other land-related agreements (collectively, the "**Real Property Leases**") where the Debtors have determined that assumption is in the best interests of the Debtors and their estates. A schedule of the Real Property Leases to be assumed by the Debtors pursuant to the Motion along with any Cure Payments to be made in connection with the assumption is set forth on **Exhibit B** to the Motion.

6. If the Debtors are not granted authority to assume the Real Property Leases by the Motion, I understand that the Real Property Leases may be deemed rejected and the Debtors will be obligated to immediately surrender the Leased Properties to the applicable lessor.

7. I am familiar with only those Real Property Leases managed by CRESS and listed in **Table B-1** of **Exhibit B** of the Motion (the "**CRESS Leases**"), which are unexpired either according to the lease's stated terms or as a result of the parties' continuation of the lease on a month-to-month basis beyond the stated term. The CRESS Leases include leases to offices, warehouses, construction sites, parking lots, storage yards, aircraft hangars, and data centers.

8. I believe the assumption of the CRESS Leases is in the Debtors' best interests and represents a sound exercise of the Debtors' business judgment for the following reasons:

    a. the Leased Properties which are the subject of the CRESS Leases (the "**CRESS Properties**") are necessary for the Debtors' uninterrupted and safe operation of their business, as such leases generally (i) are required to facilitate the Debtors' customer service operations in key locations, (ii) operate as critical construction, repair, storage, or safety inspection sites that would be impractical and inefficient to relocate, and (iii) support, regional, or project management offices and back-office data centers that would be difficult and costly to relocate in short order;

    b. it would be costly, disruptive and/or impractical to obtain new premises on which to locate the Debtors' critical infrastructure if the CRESS Leases were deemed rejected and surrendered, as in many instances, (i) the uses provided by the CRESS Properties would likely cease in whole or in part for the duration of

locating and entering into a replacement lease or (ii) any benefit of relocating to another property, to the extent such benefit exists, will likely be outweighed by the tangible costs and time it takes to find an appropriate alternative property and to mitigate the disruption caused to the Debtors' business operations by a deemed rejection;

  c. in some cases, the Debtors operate customer service offices from the CRESS Properties, which they do not have the regulatory authority to close; and

  d. in some cases, the Real Property Leases provide for below-market rent for the benefit of the Debtors, and may provide value to the Debtors' estates either as a part of their ongoing business operations or through a subsequent assignment to a third party for value.

9. To the extent that any rental savings could be achieved by rejecting any one of the CRESS Leases and acquiring new property – or obtaining a new lease in its place – I believe that such savings would be immaterial, particularly in light of (a) the expenses that the Debtors would incur in moving their equipment and fixtures to a new location, (b) the time, cost, and difficulty of finding a replacement lease, (c) the adverse impact and interruption to the Debtors' business operations unless and until the Debtors are able to negotiate a new lease, and (d) the potential claims for damages arising from the rejection of any of the CRESS Leases.

10. If the relief sought by the Motion is not granted and the CRESS Leases are deemed rejected, I believe the Debtors could face numerous adverse consequences. The Debtors may be forced to relocate their business operations to new premises on short notice and at potentially great expense or, in the event that relocation is not possible, they may be required to re-lease the CRESS Properties on less economically attractive terms than those contained in the current CRESS Leases. In addition, to the extent that any of the CRESS Leases have better-than-market terms, the Debtors and their estates will be deprived of the benefit of those terms and the opportunity to realize any potential value from a subsequent assignment of the CRESS Leases if the Debtors determine in the future they no longer have a business use for such leases.

## CURE AMOUNTS AND ADEQUATE ASSURANCE

11. I have, with the assistance of the Debtors' financial advisors, reviewed the Debtors' books and records in respect of the CRESS Leases and identified any prepetition defaults requiring cure under section 365(b) of the Bankruptcy Code. Where I have identified such defaults, I have calculated a monetary amount that I believe will satisfy the defaults, which amounts are listed in **Exhibit B**. In some circumstances, the Debtors are obligated under the terms of the CRESS Leases to remove liens that have been placed on the Leased Properties by third parties (the "**Liens**"). Where I have identified a Lien on a CRESS Property, such Lien is reflected in **Exhibit B** of the Motion.

12. I believe that the Debtors have sufficient financial capacity to meet their obligations under the CRESS Leases, including through the Debtors' access to the $5.5 billion debtor-in-possession financing facility approved by the Bankruptcy Court, which, as I understand it, was intended to satisfy the Debtors' liquidity needs through December 2020. I further understand that the Debtors have timely performed their postpetition obligations under the CRESS Leases, have remained current on such obligations since the Petition Date, and remain willing to do so following the assumption of the CRESS Leases.

13. Given the matters set out above, I believe the relief requested in the Motion should be granted, and assumption of the CRESS Leases approved as a sound exercise of the Debtors' business judgment.

[*Remainder of this page is intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at San Ramon, California on __August 27, 2019__.

_____
Mark Redford

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119