

**Signed and Filed: August 30, 2019**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>   - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>        Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered<br><br>Date:   August 9, 2019<br>Time:  11:30 a.m. (PT)<br>Place:  United States Bankruptcy Court<br>          Courtroom 17, 16th Floor<br>          San Francisco, CA  94102 |

## ORDER DENYING MOTION TO APPROVE KEIP

Debtors filed a Motion for Entry of an Order Approving Debtors' Incentive Program for Certain Key Employees (dkt. 2664) (the "Motion") on June 19, 2019.  Objections were filed, and the matter came on for hearing on August 9, 2019.  Appearances were as stated on the record.  The matter was subsequently submitted.

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

Debtors move under 11 U.S.C. § 503[1] to authorize payments to twelve identified executives, (the "Participants") leaving room for two additional participants if they are hired or elevated to the appropriate position. Debtors claim that the Key Employee Incentive Program (the "KEIP") should be approved because it is primarily incentivizing, not retentive, and is justified by the facts and circumstances of this case. Several parties objected to the Motion, including the United States Trustee (the "UST") (dkt. #3029), the Official Committee of Tort Claimants (dkt. #3030)[2], and The Utility Reform Network (dkt. #3035).[3] The court concludes that Debtors have not shown the KEIP to be primarily incentivizing, and thus it does not pass muster under § 503(c)(1). Consequently, there is no need to conduct an analysis under § 503(c)(3), but in the interest of a complete analysis, the court will do so.

For the reasons stated herein, the Motion is DENIED.

**The KEIP**

The evaluation period extends from January 1, 2019, through December 31, 2019, and the awards consist of 50% cash and 50% performance-based restricted stock units. Depending on the level of achievement, the payout could range from $5.4 million to $16 million. The relevant performance metrics are summarized on pages 12-13 of the Motion and will be discussed below.

//
//
//

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] The City and County of San Francisco joined this objection (dkt. #3059).

[3] The Plaintiffs' Executive Committee appointed by the Superior Court of the State of California in the Ghost Ship Warehouse Fire also filed a joinder to all these objections (dkt. #3086). A letter to the court was also filed in opposition to the Motion (dkt. #2778).

-2-

Case: 19-30088    Doc# 3773    Filed: 08/30/19    Entered: 08/30/19 15:32:35    Page 2 of 7

**Analysis**

*(1) Whether § 503(c)(1) Applies*

Per § 503(c)(1), specific evidentiary standards must be met before a payment can be made for the purposes of retaining a debtor's insider. If a debtor shows that the payments are not being made to retain an insider, the debtor may avoid the requirements of § 503(c)(1) and instead be evaluated under § 503(c)(3). *See In re Residential Capital, LLC*, 478 B.R. 154, 170 (Bankr. S.D.N.Y. 2012). Section 503(c)(3) allows such payments, made outside of the ordinary course of business, to the extent they are justified by the facts and circumstances of the case.

As a preliminary matter, Participants are executives and Debtors do not appear to contest their status as insiders. [4] *See* § 101(31)(B); *see also In re Foothills Texas, Inc.*, 408 B.R. 573, 583 (Bankr. D. Del. 2009) ("a person holding the title of an officer, including a vice president, is presumptively what he or she appears to be—an officer and, thus, an insider. To overcome that presumption requires the submission of evidence sufficient to establish that the officer does not, in fact, participate in the management of the debtor.").

Debtors argue that the KEIP escapes § 503(c)(1) review because it is primarily incentivizing and rewards the Participants for performance. They stress that the KEIP only pays the Participants if they reach a set of targeted metrics and argue that any retentive element of the KEIP does not bar its characterization as primarily incentivizing. They also assert that the KEIP goals are not so easy to achieve so as to render the KEIP non-incentivizing.

The UST opposes, among others, asserting that Debtors have not shown that the KEIP is incentivizing. Specifically, the UST argues that it is unclear how performance is tied to the metrics, and that the metrics do not appear challenging.

Debtors propose a set of metrics that mirror the metric proposed by the earlier Short Term Incentive Plan ("STIP") which was approved by this court to compensate approximately 10,000 employees for performance related to safety, customer satisfaction, and financial performance. The payout levels are as follows:

---

[4] Debtor refers to the Participants as their "most senior officers" (Motion, p. 8).

-3-

- **Below Threshold KEIP Performance**: If threshold performance is not achieved, there is no award.
- **Threshold KEIP Performance**: 50% of the Target KEIP Award is earned if Debtors meet but do not exceed the threshold performance levels.
- **Target KEIP Performance**: 100% of the Target KEIP Award is earned if Debtors achieve, but do not exceed target performance levels.
- **Maximum KEIP Performance**: 150% of Target KEIP Awards is earned if Debtors meet maximum performance levels.

Unlike the STIP, the metrics here are modified such that the public safety index portion of the metrics ("PSI") carries more weight because that metric is most closely tied to wildfire prevention. Thus, per the Motion, if the aggregate score for the PSI metric is below threshold performance, the total payment will be reduced by 50%. If the PSI metric is at or above threshold but below target performance level, the total payout will be reduced 25%.

Aside from this modification, Debtors present nothing to demonstrate that these metrics are applicable or even relevant to the Participants. There is nothing to show how the Participants' performance relates to the metrics, and there is no showing that the Participants would further and achieve these goals in any concrete way. In addition, it appears that the metrics are at least partially what some would call a "lay-up": Debtors themselves admit that they have achieved threshold performance in the last decade.[5] *See In re Dana Corp.*, 358 B.R. 567, 583 (Bankr. S.D.N.Y. 2006) (benchmarks for the incentive plan were "difficult targets to reach and are clearly not 'lay-ups'"). At least at the threshold level of performance, it is unclear what, if any, difficulty is present in achieving this performance. *See In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 (Bankr. S.D.N.Y 2012) ("although the KEIP includes incentivizing targets, the lowest levels are well within reach.").

---

[5] "While the Debtors' overall company score has met threshold level each of the past nine years, the Compensation Committee has exercised its discretion across multiple years to reduce executive payouts." (Reply, p. 7). The court is not tempted to rely on the discretion of the Compensation Committee.

In light of the foregoing, the court finds that § 503(c)(1) applies, which the KEIP plainly does not satisfy.

*(2) Section 503(c)(3)*

The UST argues that even if § 503(c)(3) applies, Debtors have not shown that the KEIP is justified by the facts and circumstances of the case because Debtors have failed to satisfy the factors laid out in *In re Dana Corp.*, 358 B.R. at 576, which are:

- Is there a reasonable relationship between the plan proposed and the results to be obtained?
- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?
- Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?
- Is the plan or proposal consistent with industry standards?
- What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?
- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*Id.* at 576–77. Debtors here have made a showing that the scope of the plan is reasonable, that it is consistent with industry standards, and that they conducted some due diligence and received independent professional advice. Consequently, those factors weigh in favor of granting the KEIP.

However, the other factors weigh heavily against that result. There is nothing to indicate a reasonable relationship between the plan and its results because Debtors have not provided evidence of that relationship. The metrics included are the same as the STIP metrics, subject to one unsatisfying modifier that still virtually guarantees a payout, and there is no ascertainable connection between the officers' performance and the metrics. For example, the

-5-

court is still unaware of how each of the Participants specifically contribute to the PSI metric. *See Hawker Beechcraft, Inc.*, 479 B.R. at 313 ("[debtors] did not identify the roles of each member of the [plan] or why, individually or as part of a team, they will contribute services necessary to achieve the targets.").

In addition, whether the cost is reasonable remains to be seen. Debtors face considerable potential liability in impending wildfire litigation and forthcoming estimation proceedings, and it is simply unclear at this stage whether the cost of the KEIP is reasonable in light of these formidable challenges.

In any case, the facts and circumstances of this case are compelling and justify rejection of the KEIP. Debtors filed these chapter 11 cases to deal with their enormous liability from the Northern California wildfires. Within the context of this case, they face suffocating pressures from their creditor committees, regulatory agencies, various other creditor groups, the general public, and governmental agencies to improve substantially their safety practices and successfully reorganize. Outside of this court, they are met with considerable financial incentive presented by the California legislature to exit bankruptcy by June 30, 2020. Finally, the most vital of these incentives remains the pressure to avoid additional loss of life and property and accompanying civil and criminal liability, which can only be achieved by drastically improving Debtors' safety record. Considering the enormous extrinsic motivation faced by Debtors' officer-Participants, there is simply no justification for diverting additional estate funds to incentivize them to do what they should already be doing. Debtors' executives should be satisfactorily motivated by this laundry list of pressures to reform Debtors' corporate behavior and should not require the promise of more cash to bring Debtors up to the task. For these reasons, the court finds that the KEIP is not justified by the facts and circumstances of this case.

However, the court understands that the KEIP may have been justified had it been solely motivated by safety metrics and conditioned only on equity. Consequently, Debtors may file another, similar motion, if it focuses only on safety and premises payout solely on some form of

-6-

equity participation.  Debtors are also advised that the standard in § 503 must be satisfied in order to obtain relief: a set of metrics with no demonstrable relation to the KEIP Participants will likely fail.

*** END OF ORDER ***