1  SCOTT H. McNUTT (CSBN 104696)
   324 Warren Road
2  San Mateo, California 94402
   Telephone: (415) 760-5601
3  Email: shm@ml-sf.com

4  Counsel to the Fee Examiner

5

6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11  In re                              Bankruptcy Case
                                       No. 19-30088 (DM)
12  PG&E CORPORATION,                  (Lead Case)
                                       (Jointly Administered)
13         - and -
                                       Chapter 11
14  PACIFIC GAS AND ELECTRIC
    COMPANY,                           **EX PARTE APPLICATION OF FEE**
15                                     **EXAMINER TO SET STATUS**
           Debtors.                    **CONFERENCE RE SCHEDULING**
16                                     **HEARINGS ON FEE APPLICATIONS**
    ☐ Affects PG&E Corporation         **AND RELATED ISSUES**
17  ☐ Affects Pacific Gas and Electric Company
    ☒ Affects both Debtors            Date:  [To be Set by Court]
18                                     Time:
    * All papers shall be filed in the Lead Case,   Place:
19  No. 19-30088 (DM)
                                       Judge:   Hon. Dennis Montali
20

21

22                      I.  **INTRODUCTION**

23        Bruce A. Markell, the Court Appointed Fee Examiner  (the "Fee Examiner') in these

24  jointly administered bankruptcy cases, asks the Court to set a Status Conference to discuss

25  scheduling issues concerning the interim fee applications currently pending, as well as to establish

26  a procedure for scheduling all interim and final fee applications to be considered in the future.

27  The Fee Examiner proposes September 25, 2019 as an appropriate date for the Status Conference.

28

In addition, the Fee Examiner has noted that there are a small number of issues that affect all interim fee applications.  The Fee Examiner and fee applicants will benefit from knowing the Court's views on how best to resolve these issues.  These issues are described more fully below.

## II.  STATUS OF INTERIM FEE APPLICATIONS

Three documents control the Court's consideration of Interim Fee Applications.  These are:

1)  Order Pursuant to 11 U.S.C. Sections 331 and 105(a) and FRBP 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, Entered February 28, 2019 [Doc. No. 701] (the "Interim Procedures Order").  Attached hereto as Exhibit 1.

2)  Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses, Entered May 29, 2019 [Doc. No. 2267] (the "Order Appointing Fee Examiner").  Attached hereto as Exhibit 2.

3)  Notice by Fee Examiner of the Terms of Protocol Regarding Submission of Fee Applications As Required by Order Employing Fee Examiner, Entered  August 30, 2019 [Doc. No. 3762] (the "Protocol").  Attached hereto as Exhibit 3.

The Interim Procedures Order provides that "At four-month intervals or such other intervals convenient to the Court, Retained Professionals may file with the Court an application (an "Interim Application").  See Interim Procedures Order P.5.  The Interim Procedures Order goes on to set the first opportunity to file an Interim Application as July 15, 2019 (45 days following May 31, 2019, defined as "The Initial Interim Fee Period"). See Interim Procedures Order ¶ 5.

Under the Order Appointing Fee Examiner, a process is established whereby the Fee Examiner produces an "Initial Report." See Order appointing Fee Examiner, ¶ 6(e).  After discussions with the Applicant, the Fee Examiner is to file a "Final Report."  See Order

EX PARTE APPLICATION

Appointing Fee Examiner, ¶ 6(g). Applicant then may file a "Final Response." <u>See</u> Order Appointing Fee Examiner, ¶ 7. Thereafter, a hearing is scheduled as follows: "If applicable, hearings on the Applications shall be scheduled by the Court in consultation with Debtor's Counsel after the filing of the applicable final reports by the Fee Examiner." <u>See</u> Order Appointing Fee Examiner, ¶ 9.

As it turns out, the Retained Professionals have been inconsistent in their adherence to these orders. No professional for the debtor, or any other professional, has thus far undertaken the task of coordinating hearings on interim applications. In fact, some professionals have requested the Fee Examiner obtain an Order more fully defining the process. For the benefit of the Retained Professionals, the Court and the Fee Examiner, the Fee Examiner believes that a common set of expectations should be established as to how this process moves forward.

There are 23 retained professionals in these cases. Of these, only 8 have filed interim fee applications. Some filed by July 15, others filed later. Some followed the correct course and set no hearing dates while others set a hearing date. This date serves no purpose, as the interim applications are not yet ripe for disposition. Nonetheless, the Fee Examiner must now object to such dates, or seek a withdrawal by the applicant. The Fee Examiner has prepared a chart (the "Chart") summarizing all orders authorizing employment, as well as interim applications filed to date. The Chart is attached as Exhibit 4.

The Fee Examiner is engaged in many constructive discussions with fee applicants. The Fee Examiner hopes to reach a compromise on most issues with a number of applicants. The Fee Examiner believes the current, confused scheduling situation can easily be clarified at a Status Conference, as requested by this Application. The Fee Examiner will there take the position that no hearing should be set except under the provisions of Paragraph 9 of the Order Appointing Fee Examiner, i.e., after a final report, in coordination with the Debtors counsel. If a fee applicant and the Fee Examiner have reached a compromise, then a hearing should be set on the same basis and be coordinated so that hearings are grouped to advance judicial economy.

The Fee Examiner also makes the following proposal, and requests the court to approve, the following procedures for future cycles of interim fee applications:

- Each interim application filed after the date of the status conference shall be filed on a date set by the court as requested and suggested by the Fee Examiner.
- If an interim application is not filed by that date, then the applicant will defer until the next interim period.
- The hearing dates on the interim applications will be grouped into three blocks as follows:
  - The "core" debtors' counsel and committee counsel (Keller Benvenutti, Weil Gotschal, Cravath, Milbank, and Baker Hostetler);
  - Debtors' other legal counsel subject to fee examination; and
  - Non-legal professionals.
- The Fee Examiner proposes that each "block" be set for hearing on a different day.

### III. ISSUES OF COMMON APPLICATION ACROSS ALL INTERIM FEE APPLICATIONS

A small number of issues have been raised that are common to most fee applications. These issues should be capable of resolution via discussion with the Court. Some issues may require a formal briefing process, depending on the demands of the fee applicants.

These are as follows, although fee applicants can and should raise others at the status conference.

A) Duplication and Overlap

The Fee Examiner has informed all counsel that issues of duplication and overlap cannot be evaluated until all counsel have submitted interim fee applications, and maybe not until final fee applications. The Fee Examiner cannot evaluate these issues until the universe of fees is known. For this reason, the Fee Examiner reserves analysis of all issues of duplication and overlap. On this point, the Fee Examiner would simply request concurrence by the Court with this non-waiver position

B) Compensation for Non-Working Travel

The Fee Examiner has taken the position set forth in Paragraph 17 of the Court's 2014

EX PARTE APPLICATION

"Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees" that non-working travel time is not compensable. All professionals have objected. This item currently accounts for over $1 million of the various fee applications.

The Fee Examiner and the professionals would benefit from any guidance the Court would like to share, and would suggest if there is doubt that a hearing be set on that issue in connection with an actual fee application, and that all concerned professionals may comment.

C) Treatment of Redacted Time Entries

A number of fee applicants have objected to the Fee Examiner's Protocol in that it disallows all time that is redacted. See Protocol at 5.1.4. The Fee Examiner believes such time can only be allowed when unredacted, or when subject to appropriate confidentiality and privilege controls, the substance of the redacted entry can be reviewed.

The Fee Examiner has encouraged fee applicants to seek relief from this Court if they disagree with the Protocol. The Fee Examiner has also incorporated into the Protocol citation to In re Las Vegas Monorail, 458 B.R. 553 (Bankr. D. Nev. 2011). The Fee Examiner believes this opinion sets forth useful suggestions on obtaining approval of redacted time entries and expenses.

If the Court has suggestions regarding review of the redacted entries under Federal Rule of Evidence 104 or other similar authority, such that no privilege is lost, the Fee Examiner believes the review of the redacted entries will be streamlined, and objections minimized.

D) Compensation for Employment Applications

The Fee Examiner has been impressed by the amount charged for obtaining Court approval of Employment. In one interim application, these fees approached $200,000. The Fee Examiner believes fees for this task should be capped. In this regard, the Fee Examiner would also solicit the Court's views.

In light of the foregoing, the Fee Examiner requests the Court set a Status Conference on a date convenient to the Court.

## IV. SUMMARY

As set forth in more detail above, the Fee Examiner requests a Status Conference, at which time, the Fee Examiner would seek:

1    • An order regularizing the filing and hearing of interim fee applications;

2    • Approval of a standing waiver to object to duplication of effort by professionals

3      even if such effort is subject to a court order approving the work on an interim

4      basis;

5    • Guidance on the allowance or disallowance of non-working travel billing;

6    • Guidance on review of redacted time entries; and

7    • Guidance on fees spent as part of the retention process.

8    DATED: September 16, 2019          SCOTT H. McNUTT

9

10                                      By:    _/s/ Scott H. McNutt_____

11                                             Scott H. McNutt
                                               Counsel to the Fee Examiner
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                      EXHIBIT 1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

EX PARTE APPLICATION



Entered on Docket
**February 28, 2019**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)

2

(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice*)

Signed and Filed: February 27, 2019

3

(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)

4

(matthew.goren@weil.com)|
767 Fifth Avenue

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

5

New York, NY 10153-0119
Tel: 212 310 8000

6

Fax: 212 310 8007

7

8

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)

9

(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)

10

(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900

11

San Francisco, CA 94108
Tel: 415 496 6723

12

Fax: 650 636 9251

13

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

14

**UNITED STATES BANKRUPTCY COURT**

15

**NORTHERN DISTRICT OF CALIFORNIA**

16

**SAN FRANCISCO DIVISION**

17

**In re:**

18

**PG&E CORPORATION,**

Bankruptcy Case
No. 19 -30088 (DM)

19

**- and -**

20

**PACIFIC GAS AND ELECTRIC**
**COMPANY,**

Chapter 11
(Lead Case)
(Jointly Administered)

21

22

**Debtors.**

**ORDER PURSUANT TO 11 U.S.C. §§ 331**
**AND 105(a) AND FED. R. BANKR. P. 2016**

23

☐    Affects PG&E Corporation

**FOR AUTHORITY TO ESTABLISH**
**PROCEDURES FOR INTERIM**

24

☐    Affects Pacific Gas and Electric
Company

**COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES OF**
**PROFESSIONALS**

25

☑    Affects both Debtors

26

*\* All papers shall be filed in the Lead Case,*
*No. 19-30088 (DM).*

27

28

*Sidebar (vertical text, left margin):* Weil, Gotshal & Manges LLP / 767 Fifth Avenue / New York, NY 10153-0119

Upon the Motion, dated February 6, 2019 (the "**Motion**"),[1] of PG&E Corporation ("**PG&E Corp**.") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 331 and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order establishing an orderly and regular process for interim and monthly allowance and payment of compensation and reimbursement of expenses (the "**Interim Compensation Procedures**") for professionals whose services are authorized by this Court pursuant to sections 327 or 1103 of the Bankruptcy Code and who will be required to file applications for allowance of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a), all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Motion as provided to the parties listed therein is reasonable and sufficient, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion and the Wells Declaration (as amended on February 2, 2019 [Docket No. 263]); and this Court having held a hearing on the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, shareholders, and all parties in

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1. The Motion is granted, as provided herein.

2. Except as may otherwise be provided by orders of this Court authorizing the retention of specific professionals, all Retained Professionals and members of any Committee may seek interim payment of compensation and reimbursement of expenses in accordance with the following Interim Compensation Procedures:

*Monthly Fee Statements*

(a) On or after the 30th day of each calendar month, following the month for which compensation is sought, each Retained Professional seeking interim allowance of its fees and expenses may file a monthly statement, which will include the relevant time entry and description and expense detail, with the Court for interim allowance of compensation for services rendered and reimbursement of expenses incurred during the preceding month (a "**Monthly Fee Statement**"). Retained Professionals may submit the first Monthly Fee Statement, covering the period from the Petition Date through February 28, 2019, on or after April 1, 2019.

(b) Each Retained Professional shall properly serve a copy of such Monthly Fee Statement on the following parties (collectively, the "**Notice Parties**"):

(1) the Debtors c/o Pacific Gas & Electric Company, 77 Beale Street, San Francisco, CA 94105 (Attn: Janet Loduca, Esq.);

(2) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. and Rachael Foust, Esq.) and Keller & Benvenutti LLP, 650 California Street, Suite 1900, San Francisco, CA 94108 (Attn: Tobias S. Keller, Esq. and Jane Kim, Esq.);

(3) the Office of the United States Trustee for Region 17, 450 Golden Gate Avenue, 5th Floor, Suite #05-0153, San Francisco, CA 94102 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.);

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

(4)    counsel for the Official Committee of Unsecured Creditors, Milbank LLP, 55 Hudson Yards, New York, NY 10001-2163 (Attn: Dennis F. Dunne, Esq. and Sam A. Khalil, Esq.) and 2029 Century Park East, 33rd Floor, Los Angeles, CA 90067 (Attn: Paul S. Aronzon, Esq., Gregory A. Bray, Esq., and Thomas R. Kreller, Esq.);

(5)    counsel for the Official Committee of Tort Claimants, Baker & Hostetler LLP, 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509 (Attn: Eric Sagerman, Esq. and Cecily Dumas, Esq.); and

(6)    counsel to any other statutory committee appointed in these Chapter 11 Cases.

(c)    Any Retained Professional that fails to file a Monthly Fee Statement for a particular month or months may subsequently submit a consolidated Monthly Fee Statement that includes a request for compensation earned or expenses incurred during previous months. All Monthly Fee Statements will comply with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the Northern District of California*, dated February 19, 2014 (the "**Local Guidelines**"), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**" and, together with the Local Guidelines, collectively, the '**Fee Guidelines**").

(d)    The deadline to object to any Monthly Fee Statement is 4:00 p.m. (prevailing Pacific Time) on the 21st day (or the next business day if such day is not a business day) following the date the Monthly Fee Statement is served (the "**Objection Deadline**").

(e)    To object to a Retained Professional's Monthly Fee Statement, the party must (i) file a written objection on or before the Objection Deadline and (ii) serve the objection upon the affected Retained Professional and the Notice Parties on or before the Objection Deadline.

(f)    Upon the expiration of the Objection Deadline, a Retained Professional may file a certificate of no objection (a "**CNO**") with the Court with respect to any fees and expenses not subject to objection. After a Retained Professional files a CNO, the Debtors will pay the Retained Professional 80% of the fees and 100% of the expenses requested in the applicable Monthly Fee Statement that are not subject to an objection.

(g)     If a portion of the fees and expenses requested in a Monthly Fee Statement is subject to an objection and the parties are unable to reach a consensual resolution, the Retained Professional may (i) request the Court approve the amounts subject to objection or (ii) forego payment of such amounts until the next hearing to consider interim or final fee applications, at which time the Court will adjudicate any unresolved objections.

**Interim Fee Applications**

(a)     At four-month intervals or such other intervals convenient to the Court, Retained Professionals may file with the Court an application (an "**Interim Fee Application**") for interim approval and allowance of compensation and reimbursement of expenses sought by such Retained Professional in its Monthly Fee Statements, including any holdbacks, filed during the preceding interim period (the "**Interim Fee Period**"). The initial Interim Fee Period will include the period from the Petition Date through May 31, 2019.

(b)     Retained Professionals will file their Interim Fee Applications on or before the 45th day, or the next business day if such day is not a business day, following the end of each Interim Fee Period.

(c)     The Interim Fee Application will include a brief description identifying the following:

        (1)     the Monthly Fee Statements that are the subject of the request;

        (2)     the amount of fees and expenses requested;

        (3)     the amount of fees and expenses paid to date or subject to an objection;

        (4)     the deadline for parties to file objections to the Interim Fee Application ("**Additional Objections**"); and

        (5)     any other information requested by the Court or required by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, or the Fee Guidelines.

(d)     Additional Objections to any Interim Fee Application will be filed and served upon the affected Retained Professional and the Notice Parties so as to be received on or before 4:00 p.m. (prevailing Pacific Time) on the 20th day (or the next business day if such day is not a business day), following service of the applicable Interim Fee Application.

(e)     Each Retained Professional will properly serve its Interim Fee Application and final fee application upon the Notice Parties. Each Retained Professional will properly serve a notice of hearing on its Interim Fee Application and final fee

application on all parties that have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. No further notice shall be necessary.

(f)     The Debtors may request that the Court schedule a hearing on Interim Fee Applications at least once every four months or at such other intervals as the Court deems appropriate. If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application without a hearing.

(g)     A pending objection to compensation or reimbursement of any Retained Professional does not disqualify a Retained Professional from future compensation or reimbursement.

(h)     Any Retained Professional that fails to file a Monthly Fee Statement or an Interim Fee Application when due or permitted will not receive further interim compensation or reimbursement until the Retained Professional submits any outstanding Monthly Fee Statements or Interim Fee Applications. There are no other penalties for failing to file a Monthly Fee Statement or Interim Fee Application.

(i)     Neither (i) the payment of, or the failure to pay, in whole or in part, any interim compensation and reimbursement to a Retained Professional nor (ii) the filing of, or failure to file an objection, will bind any party in interest or the Court with respect to the final allowance of any compensation of fees for services rendered or reimbursement of expenses incurred. All fees and expenses paid to Retained Professionals under these Interim Compensation Procedures are subject to disgorgement until final allowance by the Court.

(j)     No Retained Professional may serve a Monthly Fee Statement or file an Interim Fee Application until the Court enters an order approving the retention of such Professional pursuant to sections 327 or 1103 of the Bankruptcy Code.

(a)     The attorneys for any Committees may, in accordance with the Interim Compensation Procedures, collect and submit statements of expenses, with supporting vouchers, from members of such Committee; *provided that* these reimbursement requests must comply with the Fee Guidelines.

3.     The Debtors shall include all payments to Retained Professionals on their monthly operating reports, detailed so as to state the amount paid to each Retained Professional; *provided that* amounts paid to Ordinary Course Professionals may be stated in the aggregate on any monthly operating reports.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

4.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

5.      The Debtors shall serve a copy of this Order on each of the Retained Professionals.

6.      Notice of hearings to consider Interim Fee Applications and final fee applications shall be limited to the Notice Parties and any party who files a notice of appearance and requests notice in the Chapter 11 Cases.

7.      Nothing contained in this Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Order is not intended to be and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

8.      Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

9.      The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

10.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**END OF ORDER**

1    EXHIBIT 2
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EX PARTE APPLICATION



1  TIMOTHY S. LAFFREDI (WI SBN 1055133)
   Assistant United States Trustee
2  MARTA E. VILLACORTA (NY SBN 4918280)
   Trial Attorney
3  United States Department of Justice
   Office of the U.S. Trustee
4  450 Golden Gate Avenue, Suite 05-0153
   San Francisco, CA  94102
5  Telephone:  (415) 705-3333
   Facsimile:   (415) 705-3379
6  Email: marta.villacorta@usdoj.gov

7  Attorneys for Andrew R. Vara,
   Acting United States Trustee for Region 3[1]

8

Signed and Filed: May 28, 2019

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

9            **UNITED STATES BANKRUPTCY COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
10              **SAN FRANCISCO DIVISION**

11  In re:                                    Bankruptcy Case
                                              No. 19-30088 (DM)
12  **PG&E CORPORATION**,

13        - and -                             Chapter 11

14  **PACIFIC GAS AND ELECTRIC**              (Lead Case)
    **COMPANY**,
15                                            (Jointly Administered)
              **Debtors**.
16  ──────────────────────────────           Date:   May 22, 2019
    ☐  Affects PG&E Corporation              Time:   9:30 a.m.
17  ☐  Affects Pacific Gas and Electric Company   Place:  Hon. Dennis Montali
    ☑  Affects both Debtors                          450 Golden Gate Avenue
18                                                    16th Floor, Courtroom 17
    *All papers shall be filed in the lead case,*    San Francisco, CA  94102
19  *No. 19-30088 (DM)*                              [ECF No. 1370]

20

21  **ORDER APPOINTING FEE EXAMINER AND ESTABLISHING PROCEDURES**
22    **FOR CONSIDERATION OF REQUESTED FEE COMPENSATION AND**
             **REIMBURSEMENT OF EXPENSES**
23

24         Upon consideration of the Motion of the United States Trustee for Order Appointing Fee

25  Examiner and Establishing Procedures for Consideration of Requested Compensation and

26  Reimbursement of Expenses (the "<u>Motion</u>"), the recommendation of the United States Trustee (the

27

28  ─────────────────────
    [1]Andrew R. Vara, Acting United States Trustee for Region 3, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who has recused herself.

"U.S. Trustee") to appoint Bruce A. Markell as the Fee Examiner in these Chapter 11 cases, the *Order Authorizing Debtors to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "Interim Compensation Order", ECF No. 701),[2] the Statement of the Fee Examiner, ECF No. 2231; and given that the size and complexity of the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases") likely will result in the filing of numerous, fee applications; and it appearing that the appointment of a fee examiner is appropriate pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 706 of the Federal Rules of Evidence, Bankruptcy Local Rule 9014-1(b)(1)(D) of the United States Bankruptcy Court for the Northern District of California (the "Local Rules"); and it further appearing that (a) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the U.S. Constitution,

**IT IS HEREBY ORDERED THAT:**

1.      Bruce A. Markell is appointed and shall be employed as the Fee Examiner in these Chapter 11 Cases.  Based upon the Declaration of Bruce A. Markell in Support of the Motion, Professor Markell does not hold or represent an interest adverse to the estate and is a disinterested person as defined under the Bankruptcy Code.

2.      Unless otherwise ordered by this Court, this Order shall apply to all professionals in these Chapter 11 Cases requesting compensation and/or reimbursement of expenses for services rendered pursuant to sections 327, 330 and 331, but excluding (i) ordinary course professionals employed by the Debtors in accordance with the *Order Pursuant to 11 U.S.C. §§ 105(a), 327, 328,*

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Interim Compensation Order.

*and 330 Authorizing the Debtors to Employ Professionals Used in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date* [ECF No. 707] (the "OCP Order"),[3] and (ii) members of the Official Committee of Unsecured Creditors and the Official Committee of Tort Claimants (collectively, the "Committees") appointed in these Chapter 11 Cases, on account of such members' applications for reimbursement of expenses incurred in such capacity.

  3. The terms and conditions of the Interim Compensation Order shall not be modified by this Order, except that: concurrently with the filing of each Monthly Fee Statement, each Interim Fee Application, and each final fee application ("Final Fee Application" and collectively with Monthly Fee Statements and Interim Fee Statements, the "Applications," and each an "Application"), the professional filing such Application ("Applicant") shall send to the Fee Examiner by electronic mail the Application and all supporting documents, in a format or formats set forth in any protocol promulgated by the Fee Examiner ("Protocol"). The Application shall contain the fee detail containing the time entries and the expense detail (the "Fee Detail") in a searchable electronic format specified in any Protocol (such as Ledes). An Applicant need not send the Fee Examiner the Fee Detail for any Interim Fee Application or Final Fee Application if such Applicant has previously submitted all of the Fee Detail relevant to such Interim Fee Application Request or Final Fee Application to the Fee Examiner in an acceptable electronic format, whether in conjunction with the relevant Monthly Fee Application or otherwise. If any Applicant cannot reasonably convert its Fee Detail to one of the electronic formats specified in the Protocol, the Fee Examiner will work with such Applicant to find an appropriate electronic format..

---

[3] To the extent any professionals employed pursuant to the OCP Order are required to file formal fee applications with this Court pursuant to the terms of the OCP Order, the fees and expenses of such professional set forth in such formal fee application shall be reviewed by the Fee Examiner as set forth herein.

4.     All previously filed Applications and related Fee Details shall be provided to the Fee Examiner by each Retained Professional within 21 days of entry of this Order.  All previously filed Applications, all future Applications, and all other documents, notices, or pleadings required to be sent to or served upon any Notice Party under the Interim Compensation Order on and after the date hereof, shall be served upon the Fee Examiner at the following address: Bruce A. Markell, 541 N. Fairbanks Ct., Ste 2200, Chicago, IL 60611-3710; email:  bamexampge@gmail.com.

5.     The Interim Compensation Order is hereby modified to permit the Fee Examiner to have the status of a professional who may object to Applications.  In accordance with the Interim Compensation Order, upon the expiration of the Objection Deadline, each professional (including the Fee Examiner) shall be permitted to file a certificate of no objection with this Court after which the Debtors are authorized to pay each professional an amount equal to the 80% of the fees and 100% of the expenses requested in the Monthly Fee Application that are not subject to an objection pursuant to the procedures set forth in the Interim Compensation Order, including an informal objection or inquiry by the Fee Examiner.

6.     The Fee Examiner shall:

a.   establish, subject to court review and approval, a  Protocol, which shall contain procedures for the submission and consideration of monthly invoices, Interim Fee Applications, and Final Fee Applications filed by each Applicant in these Chapter 11 Cases;

b.   review Monthly Invoices, Interim Fee Applications and Final Fee Applications filed by each Applicant in these Chapter 11 Cases (along with the Fee Detail related thereto), and to the extent possible, the Fee Examiner shall avoid duplicative review;

c.   during the course of his review of an Application, consult, as he deems appropriate, with each Applicant concerning such Application;

d.   during the course of his review of an Application, review, to the extent appropriate, any relevant documents filed in these Chapter 11 Cases to be generally familiar with these Chapter 11 Cases and the dockets;[4]

e.   within twenty-one (21) days after an Applicant files an Interim Fee Application or Final Fee Application, serve an initial report (the "Initial Report") on the Applicant designed to quantify and present factual data relevant to whether the requested fees, disbursements, and expenses are in compliance with the applicable standards of sections 328, 329, 330, and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and whether the Applicant (if required) has made a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013 (the "U.S. Trustee Guidelines");

f.   during the period between service of the Initial Report and filing of the Final Report (as defined below), engage in written communication with each Applicant, the objective of which is to resolve matters raised in the Initial Report and endeavor to reach consensual resolution with each Applicant with respect to that Applicant's requested fees and expenses. The Fee Examiner may also use the resolution process to revise findings contained in the Initial Report. Each Applicant may provide the Fee Examiner with written supplemental information that the Applicant believes is relevant to the Initial Report;

g.   following communications between the Fee Examiner and the Applicant and the Fee Examiner's review of any supplemental information provided by such Applicant in response to the Initial Report, conclude the informal resolution period by filing with this Court a report with respect to each Application (the "Final Report") within fourteen (14) days after the service of the Initial Report. The Final Report shall be in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of each Applicant are in compliance with the applicable standards of section 330 of the Bankruptcy Code and Rule 2016 of the Bankruptcy Rules, and whether the Applicant has made a good faith reasonable effort to comply with the U.S. Trustee Guidelines. ; and

---

[4]The Fee Examiner shall be deemed to have filed a request for notice of papers filed in these cases pursuant to Bankruptcy Rule 2002, and the Fee Examiner shall be served with all such papers.

h.   serve each Final Report on counsel for the Debtors, counsel for the Committees, the U.S. Trustee, and each Applicant whose fees and expenses are addressed in the Final Report.

7.   An Applicant subject to a Final Report may (i) file with this Court a response ("Final Response") to such Final Report no later than twenty-one (21) days after the Fee Examiner's service of a Final Report and request a ruling with respect to any fees and/or expenses to which an objection was made (the "Incremental Amount") at the next interim fee hearing or the final fee hearing or, in the alternative, (ii) defer filing the Final Response and request a ruling at any subsequent fee hearing, so as to allow continuing discussions with the Fee Examiner.  Any Final Response shall be served upon those parties served with the Final Report and the Fee Examiner.

8.   The Fee Examiner, the Applicants, and the Debtors shall use best efforts to have the undisputed portion of Applications allowed by this Court and paid as soon as reasonably practicable, even if the Incremental Amount remains disputed and subject to the procedures set forth above.

9.   An Interim Fee Application or Final Fee Application shall not be considered by this Court prior to review by the Fee Examiner and the submission to this Court of a Final Report specific to such Application, unless the Fee Examiner has expressly stated that such hearing should go forward without the Final Report being filed.  If applicable, hearings on the Applications shall be scheduled by this Court in consultation with the Debtors' counsel after the filing of the applicable Final Reports by the Fee Examiner.

10.   Any of the periods set forth above may be extended with the consent of the Fee Examiner, the applicable Applicant, and Debtors' counsel.  Should an Applicant fail to meet one or more deadlines set forth herein for the review of an Application and, in the reasonable discretion of the Fee Examiner, the Applicant's failure to meet these deadlines does not allow sufficient time for the review process to be completed, such Application shall be heard at a subsequent hearing date.

Nothing herein shall be construed or interpreted to require the filing of Final Reports on all Applications prior to any Application and the Final Report specific thereto being considered by this Court, and the delay or adjournment of consideration of an Application shall not affect the timing of hearings on the Applications of other Applicants.

11.     The Fee Examiner is authorized to notice, defend, or appear in any appeal regarding an Application and to conduct and respond to discovery in connection with any Application, including making himself available for deposition and cross-examination by the Debtors, the Committees, the U.S. Trustee, and other interested parties consistent with Rule 706 of the Federal Rules of Evidence.

12.     The Fee Examiner may retain attorneys and other professionals, assistants, or consultants to the extent he deems it necessary to discharge his duties.  The Fee Examiner's retention of professionals shall be subject to Court approval under standards equivalent to 11 U.S.C. § 327.

13.     If a Retained Professional or its client provides privileged or work product information to the Fee Examiner and identifies the confidential nature of such information to the Fee Examiner, the Fee Examiner shall treat such information as confidential.  The disclosure of such information to the Fee Examiner shall not be deemed to be a waiver by the disclosing party of any applicable work product, attorney client, or other privilege.

14.     The fees and expenses of the Fee Examiner  according to the structure set forth in the Fee Examiner's declaration is approved and shall be subject to application and review pursuant to section 330 of the Bankruptcy Code, Bankruptcy Rule 2016, *the United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees*, the U.S. Trustee Guidelines, and the Interim Compensation Order, and shall be paid from the Debtors' estates as an administrative expense under section 503(b)(2) of the

Bankruptcy Code. The fees paid to the Fee Examiner for his services shall be determined and charged in accordance with sections 327-331 of the Bankruptcy Code and shall not include any success fees. Further, the Fee Examiner's expenses shall be subject to the information detail requirements set forth in Bankruptcy Rule 2016.

15. Counsel for the Debtors shall promptly serve a copy of this Order, in accordance with the Local Rules on (i) the U.S. Trustee, (ii) counsel for the Committees, (iii) the Fee Examiner, (iv) counsel for the legal representative for future personal injury claimants, and (v) each Retained Professional, other than ordinary course professionals, employed by the Debtors or the Committees in these Chapter 11 Cases pursuant to section 327 of the Bankruptcy Code.

16. The Fee Examiner, as an officer of the court, and those employed or paid by him with respect to this appointment shall have the maximum immunity permitted by law from civil actions for all acts taken or omitted in the performance of his duties.

17. Nothing in this Order shall alter or impair the right of the U.S. Trustee or any party in interest to object to Applications subject to this Order. Nothing in this Order shall alter or modify prior orders governing the retention of professionals.

18. The Debtors and the Fee Examiner are authorized to take any and all actions necessary to implement and effectuate the terms of this Order.

19. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20. In the event a chapter 11 trustee is appointed in these cases, such appointment will not terminate or otherwise modify the duties and responsibilities of the Fee Examiner. The Fee Examiner's appointment shall only be terminated or otherwise modified by entry of an Order of the Court.

1

2          21.    This Court shall retain jurisdiction over all matters arising from or related to the

3   interpretation and implementation of this Order.  Notwithstanding any provisions of this Order to

4   the contrary, this Court shall retain the ultimate authority to determine whether fees and expenses

5   requested are necessary and reasonable under section 330 of the Bankruptcy Code.

6

7                                          **END OF ORDER**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    <u>COURT SERVICE LIST</u>

2    Federal Energy Regulatory Commission
3    Attn: General Counsel
     888 First St NE
4    Washington, DC 20426

5    Internal Revenue Service
6    Centralized Insolvency Operation
     2970 Market St
7    Philadelphia, PA 19104-5016

8    John A. Vos
9    1430 Lincoln Avenue
     San Rafael, CA 94901
10
     Office of the United States Attorney
11   for the Northern District of California
     Attn: Bankruptcy Unit
12   Federal Courthouse
13   450 Golden Gate Avenue
     San Francisco, CA 94102
14
15   Placer County Office of the Treasurer-Tax Collector
     Attn: Robert Kanngiesser
16   2976 Richardson Drive
     Auburn, CA 95603
17
18   U.S. Nuclear Regulatory Commission
     Attn: General Counsel
19   U.S. NRC Region IV
     1600 E. Lamar Blvd.
20   Arlington, TX 76011
21
     U.S. Nuclear Regulatory Commission
22   Attn: General Counsel
     Washington, DC 20555-0001
23

24

25

26

27

28

EXHIBIT 3

9

EX PARTE APPLICATION

1  SCOTT H. McNUTT (CSBN 104696)
324 Warren Road
2  San Mateo, California 94402
Telephone: (415) 760-5601
3  Email: shm@ml-sf.com

4  Counsel to the Fee Examiner

5

6

7

8                   UNITED STATES BANKRUPTCY COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11  In re                                  Bankruptcy Case
                                           No. 19-30088 (DM)
12  PG&E CORPORATION,                      (Lead Case)
                                           (Jointly Administered)
13          - and -
                                           Chapter 11
14  PACIFIC GAS AND ELECTRIC
    COMPANY,                               **NOTICE BY FEE EXAMINER OF THE**
15                                         **TERMS OF PROTOCOL REGARDING**
            Debtors.                       **SUBMISSION OF FEE APPLICATIONS**
16                                         **AS REQUIRED BY ORDER**
    ☐ Affects PG&E Corporation             **EMPLOYING FEE EXAMINER**
17  ☐ Affects Pacific Gas and Electric Company  **(DOCKET_NO. 2267)**
    ☒ Affects both Debtors
18                                         [No Hearing Requested]
    * All papers shall be filed in the Lead Case,
19  No. 19-30088 (DM)                      Judge:   Hon. Dennis Montali

20

21          I.  **INTRODUCTION**

22          Bruce A. Markell, is the Court Appointed Fee Examiner (the "Fee Examiner") in the

23  jointly administered bankruptcy cases (the "Chapter 11 Cases") of PG&E Corporation and Pacific

24  Gas & Electric Company (the "Debtors") in accordance with the Order Appointing Fee Examiner

25  and Establishing Procedures for Consideration of Requested Fee Compensation and

26  Reimbursement of Expenses entered may 29, 2019 [Doc. No. 2267] (the *Order Appointing Fee*

27  *Examiner*").  The Fee Examiner appears through his counsel Scott H. McNutt.

28          The *Order Appointing Fee Examiner* requires that "The Fee Examiner shall…establish,

subject to court review and approval, a Protocol, which shall contain procedures for the submission and consideration of monthly invoices, Interim Fee Applications, and Final Fee Applications filed by each Applicant in these Chapter 11 cases…" *Order Appointing Fee Examiner, Para. 6.a.*

PLEASE TAKE NOTICE that the Fee Examiner has prepared the Protocol as required by the Order Appointing Fee Examiner. A true, correct and complete copy of the Protocol is attached hereto as "Exhibit A." A copy of the Protocol has been transmitted to all fee applicants known to the Fee Examiner.

## II. **EFFORTS AT CONSENSUS.**

The Fee Examiner has shared a draft of the Protocol with the Office of the United States Trustee, which provided comments. The Fee Examiner believes that the United States Trustee does not object to the protocol.

The Fee Examiner circulated a draft of the protocol to the principal Debtors' counsel and arranged a conference call to discuss the terms of the Protocol with the principal Debtors counsel. The Fee Examiner made some revisions in response to comments from counsel. However, the Fee Examiner rejected most of the requested revisions.

## III. **RESERVATION OF RIGHT TO OBJECT TO PROTOCOL**

In order to keep the fee application process working expeditiously, the Fee Examiner has put the Protocol in final form, has circulated the protocol to Counsel and informed counsel he expects counsel to comply with the Protocol.

The Fee Examiner has informed counsel that Fee Examiner intends the Protocol to be a statement as to the Fee Examiner's position as to expectations for the submission of fee applications, as well as a statement of the Fee Examiner's beliefs as to the state of the law in various areas. If any fee applicant believes that the Protocol is inconsistent with the application of 11 U.S.C. Sect.330, the fee applicant is free to raise objections to the Protocol at the time of

1 | hearings on fee applications.

2 |      Further, the Fee Examiner reserves the right to vary from the terms of Protocol based upon

3 | the specific facts of a particular situation.

4 |

5 | DATED: August 28, 2019         SCOTT H. McNUTT

6 |

7 |              By:        */s/ Scott H. McNutt*

8 |                    Scott H. McNutt
                   Counsel to the Fee Examiner

9 |

3

NOTICE OF PROTOCOL

EXHIBIT A

# Fee Examiner Protocol for Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company

1. Introduction and Purpose ........................................................................... *1*

2. Timeline for Review and Review Procedures ......................................... *2*

   2.1. Monthly Fee Statements .......................................................... *2*

   2.2. Interim Fee Applications under § 331 .................................... *2*

   2.3. Final Fee Applications ............................................................. *3*

   2.4. Automatic Extension of Time to Comment or Object .......... *3*

   2.5. Amendment of Interim Compensation Order ....................... *3*

3. Information to be Provided ....................................................................... *3*

   3.1. Retention Agreements, Budgets, and Biographical Data ...... *3*

   3.2. Description of Data to be Provided with Each Application .... *4*

       3.2.1. General Information About the Application ..................... 4

       3.2.2. Information Regarding Actual Costs to Budget ............... 4

   3.3. Information Regarding Time Recorded by Billers ................... *4*

   3.4. Information Regarding Expenses for Which Reimbursement is Requested ................. *5*

   3.5. Substantially Accurate Information ........................................ *5*

4. Format and Service of Billing Data ........................................................... *5*

   4.1. Fees ........................................................................................... *5*

   4.2. Expenses .................................................................................... *5*

   4.3. Service ....................................................................................... *6*

       4.3.1. Contents of Service. ......................................................... 6

       4.3.2. Electronic Service Only .................................................... 6

5. Review Standards ........................................................................................ *6*

   5.1. Standards for Fee Applications .............................................. *6*

       5.1.1. Hourly Rates and Other Similar Considerations ........... 6

       5.1.2. Hours for Each Biller ....................................................... 7

       5.1.3. Block Billing ...................................................................... 7

       5.1.4. Vague Entries .................................................................... 7

       5.1.5. Appropriate Staffing ........................................................ 8

       5.1.6. Professionals Who Bill Less Than 10 Hours .................. 8

       5.1.7. Attendance at Meetings and Hearings ........................... 8

       5.1.8. Travel Billing .................................................................... 8

       5.1.9. Fees Related to Fee Requests .......................................... 8

       5.1.10. Fees Related to Modifying Time Entries or Invoices ... 9

       5.1.11. Rate Increases ................................................................ 9

i

**5.2.**   **Standards for Expenses** ..................................................................................... **9**

    5.2.1.   Distinction Between Reimbursable Expenses and Overhead Expenses ................... 9

    5.2.2.   Travel Expenses ...................................................................................................... 9

    5.2.3.   Meals and Food ..................................................................................................... 10

    5.2.4.   Document Production.............................................................................................. 10

    5.2.5.   Other Expenses ...................................................................................................... 11

        5.2.5.1.   Flexible Standards ................................................................................... 11

        5.2.5.2.   Limits on Expenses ................................................................................. 11

*6.*   *Reservations*...............................................................................................*12*

Case: 19-30088    Doc# 3892    Filed: 09/16/19    Entered: 09/16/19 16:58:03    Page 63 of
147

# Fee Examiner Protocol for Chapter 11 Cases of PG&E Corporation and Pacific Gas and Electric Company

## 1. Introduction and Purpose

This document (the "**Protocol**") is presented by Bruce A. Markell, the fee examiner appointed in these cases ("**Fee Examiner**"). It seeks to promote fairness, transparency and certainty in the fee process in the Chapter 11 cases of PG&E Corporation and Pacific Gas and Electric Company, jointly administered under Bankruptcy Case No. 19-30088 (DM) (Bankr. N.D. Cal.) ("**Cases**").

It is the Fee Examiner's belief that fairness, transparency and certainty promote the purpose of any fee examiner – that of providing the Court with sufficient reliable information to enable the Court to make the findings required by the Bankruptcy Code as to the reasonableness of professionals' fees and expenses.

The Court has, in the Interim Compensation Order, Docket #701, entered February 27, 2019 (the "**Initial Order**"),[1] taken steps to regularize the fee process in these Cases. On May 29, 2019, the Court entered its "Order Appointing Fee Examiner And Establishing Procedures For Consideration Of Requested Fee Compensation And Reimbursement Of Expenses," Docket #2267 ("**Fee Examiner Order**"). To the extent that the Initial Order and the Fee Examiner Order (collectively, the "**Order**") establish basic procedures for review and payment of Monthly Fee Statements, Interim Fee Applications and Final Fee Applications (individually, an "**Application**"), this Protocol attempts to integrate and elaborate upon the Fee Examiner's role and standards.

In discharging his duties, the Fee Examiner will, with assistance from his software and data analytics provider, Legal Decoder, Inc. ("**Legal Decoder**") and fee reviewers, analyze, review, and evaluate the underlying billing data, expense data, and professional biographical data (collectively, "**Billing Data**") for each individual recording time (individually, a "**Biller**") in these Cases. As outlined in this Protocol, the process will involve the Fee Examiner's evaluation of, among other things, the performance and efficiency of all Retained Professionals.

This Protocol is intended to supplement and not supplant the (i) Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013; (ii) Bankruptcy Court for the Northern District of California's Guidelines for Compensation and Expense Reimbursement

---

[1] The parties obtained the Initial Order by filing a motion seeking procedures to obtain interim compensation [Dkt. No. 349; filed Feb. 6, 2019] (the "**Motion**"). Capitalized terms not otherwise defined in this Protocol are intended to take the meaning given to them in the Initial Order which, in turn, incorporates capitalized terms used in the Motion.

1

of Professionals and Trustees (Feb. 19, 2014) ("**Local Guidelines**"); or (iii) Practices and Procedures in Judge Montali's Court (July 2018).

## 2.     Timeline for Review and Review Procedures

The Fee Examiner will review Applications according to the timeline set forth in this Section.

### 2.1.     *Monthly Fee Statements*

The Fee Examiner will have standing equivalent to a Notice Party to object to any Monthly Fee Statement.

Each Retained Professional will provide to the Fee Examiner, Legal Decoder and Tracey R. Gallegos (the "**Team Coordinator**") each Monthly Fee Statement concurrently with service of such statements on all other Notice Parties.  In addition, each Retained Professional will also concurrently provide the Billing Data related to the Monthly Fee Statement to the Fee Examiner, Legal Decoder and the Team Coordinator.

### 2.2.     *Interim Fee Applications under § 331*

The Fee Examiner will furnish to each Retained Professional a preliminary report detailing the Fee Examiner's questions and comments on each Application (a "**Draft Report**") for further discussion, if necessary, to resolve outstanding issues.

Discussions with the Fee Examiner will, to the extent practical, be held remotely, using audiovisual tools such as Skype or similar software that permits two-way synchronous communication.  If video is not available, meetings may be conducted by telephone at the election of the Fee Examiner.

The Draft Report and sessions with the Fee Examiner will be considered confidential, and subject to Fed. R. Evid. 408, although, apart from the Draft Report, the parties' written positions may form the basis of, or may be incorporated into, any final application, objection or the Final Report.

At any session with the Fee Examiner, the Retained Professional must be represented by a person who has full authority to adjust proposed fees and expenses without consultation with another person.  Failure to provide such a person will be considered to be bad faith.

After the Retained Professional and the Fee Examiner have discussed the Draft Report, the Fee Examiner will prepare a Final Report for filing with the Court and service upon appropriate parties.

### 2.3. Final Fee Applications

The Fee Examiner will process all Final Fee Requests in the manner provided for Interim Fee Requests, including the provision of a Draft Report. There may be discovery undertaken as necessary to make a final assessment of the reasonableness of all fees and expenses charged.

### 2.4. Automatic Extension of Time to Comment or Object

No Application will be complete, and the time limits contained in the Order will not commence against the Fee Examiner, until (a) the relevant Retained Professional serves and delivers the Billing Data with all required information, and (b) the Billing Data is in the format specified in Section 4.

Until the Fee Examiner has indicated no objection or has filed a formal objection, the Court may set for hearing, but will not hear or enter an order on, any Interim Fee Application or any Final Fee Application. If the Fee Examiner is not provided with the necessary Billing Data related to any Application other than a Monthly Fee Statement, the Fee Examiner is not required to file an indication of no objection or an objection.

### 2.5. Amendment of Interim Compensation Order

The Fee Examiner will request the Court to amend the Initial Order to incorporate the substantive provisions of this Protocol.

## 3. Information to be Provided

### 3.1. Retention Agreements, Budgets, and Biographical Data

As soon as practical after submission of this Protocol to the Court, each Retained Professional must provide to the Fee Examiner, the Team Coordinator and Legal Decoder (collectively the **"Fee Examiner's Team"**):

a. All applicable engagement letters and/or fee agreements with their clients;
b. All approved budgets previously provided to the Office of the United States Trustee;
c. All required invoice data in electronic/digital format (in LEDES format or any other format permitted by Section 4);
d. Professional biographical data for all Billers in electronic/digital format as set forth on Exhibit A (template provided); and
e. All Applications filed to date.

Each Retained Professional approved after the adoption of this Protocol must provide the Fee Examiner's Team with an approved budget and professional biographical data described above, within ten working days after entry of the order approving their retention. All budgets must comply with the Fee Guidelines.

3

All Retained Professionals shall promptly provide the Fee Examiner's Team with any changes or modifications to any previously provided Retention Agreements, Budgets, and Biographical Data.

### 3.2. *Description of Data to be Provided with Each Application*

#### 3.2.1. General Information About the Application

Each Application must provide:

a. A separate list of all Billers whose time is included in the Application (including all shorthand identifications, initials or timekeeper identification numbers) who billed time during the relevant period;
b. The precise time period covered by the Application;
c. A list of all rate increases of any kind—including rate increases due to increasing seniority—by timekeeper and amount, proposed by the Retained Professional since it began working on these cases; and
d. A statement that the Retained Professional's client has (or has not) explicitly consented to any rate increases.

#### 3.2.2. Information Regarding Actual Costs to Budget

For each Application other than a Monthly Fee Statement, each Retained Professional must provide a comparison of actual billings and expenses to budgeted billings and expenses by project category, along with a statement that the Retained Professional's client has already approved the actual expenditures covered by the Application period.

If the actual work billed has varied from the budgeted amount by more than 10% for any project category, the Retained Professional must also provide a reasonable explanation for the variance.

### 3.3. *Information Regarding Time Recorded by Billers*

For each time entry included in each Application, the Retained Professional must supply:

a. The name or other unique identifier for the Biller responsible for such time entry;
b. The amount of time spent by such Biller in tenth of an hour increments or as approved by the Court in the retention order; and
c. A description of the work or task performed by such Biller (together with a summary of the time allocable to such work or task is not otherwise apparent). All such descriptions must be consistent with the standards set forth in Sections 4.1 and 5.1 of this Protocol.

### 3.4. *Information Regarding Expenses for Which Reimbursement is Requested*

For each expense or other item for which the Application requests reimbursement, the Retained Professional must supply for each expense or other item the information requested in Sections 4.2 and 5.2.

### 3.5. *Substantially Accurate Information*

All Applications served on the Fee Examiner must be signed, electronically or otherwise, by an individual with authority to submit and alter invoices. By submitting Billing Data to the Fee Examiner's Team with any Application, that person and the Retained Professional that employs her or him certifies that the Billing Data is substantially accurate and complete, and that, to the best knowledge of the individual and the Retained Professional, the Billing Data contains no untrue statement of a material fact nor does it omit to state a material fact necessary in order to make the other information in the Billing Data not misleading.

## 4. Format and Service of Billing Data

### 4.1. *Fees*

All Retained Professionals must submit Billing Data related to requested fees (including all data entries by Billers) in LEDES (Legal Electronic Data Exchange Standard) format (www.ledes.org). If submitting Billing Data in LEDES format is not possible or poses a hardship for a Retained Professional, Billing Data may be submitted, with prior approval, to the Fee Examiner's Team in another electronic, delimited format (Excel, comma separated values, tab separated values and so forth).

### 4.2. *Expenses*

All Retained Professionals must

a. submit Billing Data related to expenses or other claims for reimbursement in LEDES format or another pre-approved electronic, delimited format.
b. provide legible copies of all receipts for expenses involving airfare, hotels, and meals, as well as for any other expenses exceeding $50; and
c. submit all copies in Adobe Acrobat format (PDF) or another generally used graphic format such as JPG or GIF.

### 4.3. Service

#### 4.3.1. Contents of Service.

Each Retained Professional will serve each Application on each member of the Fee Examiner's Team at the email addresses specified in Section 4.3.2 (unless they receive an indication that another address should be used).

Each Application must be accompanied by Billing Data in the format set forth in Sections 4.1 and 4.2. If it is not, the Fee Examiner is not obligated to begin his review, and the consequences specified in Section 2.4 will apply.

#### 4.3.2. Electronic Service Only

Service on the Fee Examiner and upon Legal Decoder must be electronic means only **and not by hard copy**. Service of documents by email should be sent to:

    a.  The Fee Examiner at bamexampge@gmail.com;
    b.  Legal Decoder at pge@legaldecoder.com; and
    c.  Team Coordinator at traceyrgallegos@gmail.com.

## 5. Review Standards

The Fee Examiner understands that professionals bill their clients regularly and continually. Different practices may arise with respect to different clients. This Section sets forth the Fee Examiner's basic standards with respect to reasonable billing practices in the Cases.

### 5.1. Standards for Fee Applications

Hourly rates should reflect a Biller's experience not only in terms of years as a member of the bar or as a manager or employee of a service provider generally, but also time and experience in restructuring companies. High hourly rates reflect the skills necessary to quickly comprehend business conditions and smoothly bring reorganization tools to solve the problems, whether those solutions are legal, practical, or logical.

#### 5.1.1. Hourly Rates and Other Similar Considerations

The hourly rate for each professional, and the hours billed, are typically not the only considerations in billing. An equally important factor involves whether a Biller handles a task appropriate for his or her experience and skill set level in a customary or benchmarked amount of time. Besides an objective, data driven analysis (on which the Fee Examiner will largely depend on Legal Decoder), there is judgment involved that the aggregate fee requested correlates with the value of the service provided. An aspect of the Fee Examiner's approach to an expert fee analysis is disaggregating work streams into discrete tasks and examining each task's staffing efficiency, workflow efficiency and value.

6

There are other considerations as well. Many firms enter into arrangements with clients under which discounts from hourly billing rates can be, or are, given in return for the opportunity to work on a particular project, or for a degree of exclusivity with respect to future work of a similar nature. Especially with respect to Final Fee Requests, the Fee Examiner may investigate the practices of Retained Professionals, and of professionals generally, with respect to such discounts, and will assess whether such discounts are appropriate in the Cases.

### 5.1.2. Hours for Each Biller

The Fee Examiner will look at how many consecutive 12+ hour days individual billers have billed on the case, not because 12+ hour days are per se unreasonable, but because many sequential long days can lead to professional fatigue and inefficiencies.

For each Biller who records more than 10 hours per month, each Retained Professional shall disclose that individual's total recorded hours on all matters for that month, which may be provided in confidence. This aggregate total should include all time collected by the Retained Professional with respect to the individual and include non-charged time such as firm administration or pro bono work. The Fee Examiner considers this information relevant to the exercise of judgment and professionalism, much the same as the Fee Examiner's request to separately flag individuals who bill more than 12 hours in one day.

### 5.1.3. Block Billing

"Block billing" refers to the practice of "lumping" together of discrete tasks in one entry. If a cumulative time entry is 0.5 hours or below, the Fee Examiner will not ask further questions about the block-billing itself. For all other entries above 0.5 hours, the Retained Professional must indicate the amount of time spent on each task. The Fee Examiner reserves the right to ask a Retained Professional about the underlying tasks whether or not block-billing is involved. For example, even if the cumulative time entry is 0.5 hours or below, if a Retained Professional has billed for clerical work, that time entry will trigger additional questions.

### 5.1.4. Vague Entries

The Fee Examiner will question vague time entries. The more robust the description, the easier it is for the Fee Examiner to provide the Court with an opinion as to the entry's reasonableness. Vague entries such as "attention to file," "review documents," "draft motion," "attend hearing," and "strategize" without additional information are not acceptable.

To the extent that a Retained Professional is concerned about providing information in time entries that might telegraph strategy to other parties in interest, the Retained Professional and the Fee Examiner may enter into a confidentiality agreement to enable the Retained Professional to provide more detailed information.

The Fee Examiner will object to billing or other entries that are marked as "redacted" or otherwise obscured or illegible to a reader. The Fee Examiner understands that occasionally time entries are connected to matters of privilege or confidentiality. In such cases, the Fee Examiner

takes the position regarding approval of payment set forth in *In re* Las Vegas Monorail, 458 B.R.553 (Bankr. D. Nev. 2011), and urges the parties to take advantage of the opinion's suggestions on obtaining approval of such fee and expense requests.

### 5.1.5.    Appropriate Staffing

Staffing choices that indicate a misallocation of resources will trigger additional questions. Potential misallocation may include, but is not limited to:

    a.  the use of higher-billing-rate professionals performing work that usually is performed by lower-billing-rate professionals;

    b.  incremental billing, an example of which would be an unusual series of .1 or .2 time entries for one professional in a short period of time;

    c.  multiple timekeepers appearing at meetings and hearings without an explanation of each timekeeper's role; and

    d.  billing for summer associate work, when the use of a paralegal would have been more efficient.

### 5.1.6.    Professionals Who Bill Less Than 10 Hours

For Billers whose cumulative time on these cases aggregated less than 10 hours or fewer than 10 line item entries for any month, the Fee Examiner will need sufficient information to be able to judge whether the use of that timekeeper was reasonable.

### 5.1.7.    Attendance at Meetings and Hearings

A large number of attendees at a hearing or meeting will trigger questions about the reason for each person's attendance (e.g., whether the Biller had a speaking role or particular expertise that needed to be provided in person, rather than telephonically). Assigning an individual to take notes or minutes is an overhead expense, and not reimbursable.

### 5.1.8.    Travel Billing

Non-working travel time is not compensable. See ¶ 17 of the Local Guidelines.

### 5.1.9.    Fees Related to Fee Requests

If a Draft Report raises issues that a reasonably experienced bankruptcy professional should have anticipated due to a lack of compliance with this Protocol (including providing insufficient information in the Application or the request for unreasonable fees or expenses), then it is the Fee Examiner's position that *Baker Botts L.L.P. v. ASARCO* governs, and those fees on fees shall be considered unreasonable. If, however, the Fee Examiner raises issues in a Draft Report that involve a matter of first impression not covered by common sense or this Protocol, it is reasonable for the Retained Professionals to bill a reasonable amount of time to respond to the Fee Examiner's questions.

8

### 5.1.10. Fees Related to Modifying Time Entries or Invoices

Individuals responsible for billing may make adjustments and amendments to time records after they are processed for billing but before submitting them as part of an Application. If adjustments reduce or eliminate the time for which compensation is requested, they need not be disclosed.

If adjustments materially or significantly modify an included time entry's description, or the amount of time billed for that entry, the time entry is no longer contemporaneous with the provision of service as required by both the United States Trustee's Guidelines and the Local Guidelines. Accordingly, such time entries have lost some of their presumed credibility, and the Retained Professional must separately and specifically disclose all such changes made.

In no event, however, is it reasonable to request compensation for time spent in making these adjustments. This includes time segregating billing entries related to confidential or privileged matters.

### 5.1.11. Rate Increases

Many firms increase rates at the beginning of the calendar year and, in addition, during the calendar year—whether characterized as "step increases" for associates or as "general" or "across the board rate increases." Rate increases, no less than the basic hourly rate itself, whether or not discounted for the circumstances here, are subject to the reasonableness standard. While the market rate for professional services in a difficult and complex case like this is always a factor in setting and reviewing rates, it is not the only factor. That is especially true in the extraordinary environment—legal and practical—of these proceedings. The length of these proceedings cannot be predicted or projected, at least at this point, but rate increases proposed by firms here should be given careful consideration by the professionals before they are submitted as part of the monthly or interim fee process.

## 5.2.    Standards for Expenses

Reimbursement of expenses should reflect reasonable efforts to achieve sensible costs, and not cater to the idiosyncratic preferences of any one Biller.

### 5.2.1. Distinction Between Reimbursable Expenses and Overhead Expenses

In general, overhead and administrative expenses are not reimbursable, nor are infrastructure improvements, rent, utilities, office equipment, furnishings, insurance, custodial fees, internal storage fees, and property taxes.

### 5.2.2. Travel Expenses

Reasonable economy airfare (including "economy plus" or similar seating for transcontinental flights) is normal and reasonable; first-class or business class airfare is not.

Retained Professionals who choose to fly first-class or business class will be reimbursed only for the equivalent (and documented) coach airfare. The Fee Examiner assumes that, for most airfare and lodging, Retained Professionals are able to plan ahead to obtain reasonable rates.

Neither the time nor travel expenses associated with traveling to other offices within a Retained Professional's own firm are reimbursable—except for travel to attend hearings, client meetings or meetings with third parties, or to prepare for them. Meetings should be conducted telephonically or by video conference wherever possible.

Hotel expenses should be limited to reasonable market rates for the locale. Health or athletic facilities, in-room movies, or other entertainment charges are not reimbursable. In addition, in-room dining or other hotel food and beverage charges are subject to the meal guidelines in this Protocol.

### 5.2.3.   Meals and Food

For all meals, the Fee Examiner will need the following information: who attended the meal, whether the meal was a working meal, and whether alcohol was purchased. The following guidelines also apply:

   a.   Alcohol is not a reasonable expense.
   b.   In-office meals must be capped at $20.00 per person per meal and are reimbursable if:
      i.   The professional attends a necessary lunch-hour business meeting related to these cases; or
      ii.   The professional works on these cases after 8:00 p.m. and has worked more than four hours on these cases during the billing day for which meal reimbursement is sought.
   c.   Coffee and snack charges are not reimbursable unless charged in lieu of in office meals allowable under the above-stated guideline.
   d.   All catering orders must be supported by receipts or invoices. Catering invoices (internal and external) must indicate both the number of persons actually attending a business meeting and the amount charged per person.
   e.   Out-of-office meals are capped at $40.00 per person per meal, reimbursable only if the professional has travelled to prepare for or attend a hearing, client or meeting with a third party, or another event. If a professional's attendance at a hearing, meeting, or other event is unnecessary, the Fee Examiner will recommend disallowance of both the professional's fees and associated travel and meal expenses.

Regardless of the number of attendees, please provide receipts for any single meal for which the total bill is more than $200.00 in the aggregate.

### 5.2.4.   Document Production

Distribution of documents electronically is preferred given its cost effectiveness. Retained Professionals must justify expenses related to the production and copying of physical documents. If reasonable, internal photocopying and printing are reimbursable at 10 cents per page for black

and white and, when color copies are necessary, 45 cents per page.[2] If the Retained Professional used an outside service or vendor for copying, it should provide vendor invoices.

Charges for internal printing, converting documents to electronic formats, scanning charges, and charges to convert and upload documents are overhead, and not reimbursable. Similarly, word processing, proofreading, secretarial and other support expenses are not reimbursable, nor are overtime charges related to these activities.

### 5.2.5. Other Expenses

#### 5.2.5.1. Flexible Standards

Certain types of expenses are presumptively unreasonable but may be considered reasonable with sufficient explanation. For example, normally mini-bar expenses are presumptively unreasonable unless restaurants are closed when a Biller needs to have a meal. Luxury hotels (Ritz-Carltons and Four Seasons) are presumptively unreasonable. Midrange hotels (Hyatt, Marriott, and Westin) are presumptively reasonable except when room rates surge for high demand events or seasons.

#### 5.2.5.2. Limits on Expenses

Certain charges and expenses are presumptively unreasonable. These include:

a. Telephone charges—including cellular phone fees and subscriptions, text fees, data fees, and roaming charges, other than actual charges for multi-party calls incurred by counsel in connection with the cases.
b. Subscription, publication, or library charges
c. Office supplies or presentation materials.
d. Clothing, dry-cleaning, accessories, and travel sundries.
e. Local travel expenses (train, bus, subway, mileage, car service, taxi) to or from a professional's home unless a professional has worked at least four hours on these Cases on the day for which the expense is sought and completes that day's work after 9:00 p.m. local time.
f. Tips or other service charges (including housekeeping, valet, concierge, and bell services) unless they are part of another itemized and documented expense (for example, taxi or car service gratuity included on the receipt), and generally are capped at 20% or lower if custom is lower.

---

[2] The Fee Examiner understands that these numbers are lower than set forth in the Local Guidelines. National chains such as Office Max, however, currently offer prices cheaper than set forth in text.

## 6.    Reservations

Failure to object to an Application or Monthly Fee Statement will not bar the Fee Examiner from objecting to time or expenses covered by such requests at a later time; often the worth of a project cannot be determined until it is complete, or a decision is made to modify or abandon it.

Similarly, the Fee Examiner may think that the objectionable part of a Monthly Fee Statement is not greater than the 20% holdback specified in the Initial Order, and thus may reserve all comment or objection until the Retained Professional submits an Application related to that particular month.

12

**Exhibit A – Biographical and Demographic Data on Billers**

A template will be provided to each Retained Professional upon approval of this Protocol.

Name
Highest degree
Year awarded
Non-law graduate degree
Year admitted to bar
Home Office
Non-US law degree
Title/Status:
      Paralegal
      Summer associate/intern
      Law graduate, not yet admitted
      Contract attorney
      Associate
      Of Counsel
      Partner
      Retired Partner
      Administration
      Other (describe)
Assigned department/workgroup
Specialization Certification
Years in bankruptcy department/workgroup

1    EXHIBIT 4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

EX PARTE APPLICATION

**PROFESSIONALS ON DOCKET**

| Docket No. | Professional | Interim Application Date | Interim Application Docket No. |
|---|---|---|---|
| 1978 | Axiom Advisors | | |
| 1331 | Baker & Hostetler | 7/15/2019 | 2995 |
| 2860 | Berman & Todderud | | |
| 2067 | Centerview Partners | | |
| 2926 | Coblentz, Patch, Duffy & Bass | | |
| 1683 | Cravath, Swaine & Moore | 8/23/2019 | 3683 |
| 3190 | Deloitte & Touche LLP | | |
| 1977 | Development Specialists, Inc. | | |
| 2253 | Epiq Corporate Restructuring | | |
| 2252 | FTI Consulting | 7/22/2019 | 3137 |
| 2469 | Groom Law Group | | |
| 1679 | Jenner & Block | | |
| 1306 | Keller 7 Benvenutti | 7/19/2019 | 3099 |
| 2503 | KPMG | 7/15/2019 | 2992 |
| 2229 | Lazard Freres & Co., LLC | | |
| 1976 | Lincoln Partners Advisors, LLC | | |
| 1766 | Milbank | 7/19/2019 | 3107 |
| 2502 | Munger Tolles & Olson | | |
| 2230 | PricewaterhouseCoopers LLP | | |
| 1300 | Prime Clerk | | |
| 1979 | Simpson Thacher & Bartlett | 7/23/2019 | 3157 |
| 1298 | Weil Gotshal | 7/15/2019 | 2988 |
| 3856 | Willis Towers Watson | | |