US Bankruptcy Court
Mailbox 36099
450 Golden Gate Ave.
San Francisco, CA, 94102

William B. Abrams
1519 Branch Owl Pl.
Santa Rosa, CA, 95409
(707) 397-5727

FILED
SEP 17 2019
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

RE: Case Number 19-30088-DM

September 12, 2019

To the Honorable Judge Montali:

Your Honor, as a follow up to my prior letter filed on September 6, 2019 urging a court trial for Tubbs Fire Survivors, I am writing to respectfully request the opportunity to provide testimony at this phase of the bankruptcy proceeding. I have been increasingly concerned about the longer-term implications the bankruptcy process has on the future of my family, our communities and our state. Unfortunately, the bankruptcy deal-making process has yielded legislation and regulation that leaves us all at greater risk to the next round of PG&E caused wildfires. PG&E continues to advance a financial risk reduction strategy that will leave our state and future wildfire victims more exposed. If this strategy continues unchecked, future wildfire survivors that will come before your Honor will be irreparably harmed.

Since the wildfires of 2017, myself and other wildfire survivors have advocated for increased safety and wildfire mitigation performance across our communities including to advance solutions to address alert/warning, home hardening, vegetation management and other common-sense solutions and reforms. As we work to improve the safety and financial security of our communities, PG&E works to avoid safety accountability, advance short-term financial gains and get out of bankruptcy. In every proceeding of which they are a part, PG&E actively leverages the bankruptcy proceeding to obfuscate and divert attention from their safety responsibilities as a public utility. Please, consider the following strategic efforts and implications of the PG&E accountability avoidance campaign as just a few examples of how they are leveraging the bankruptcy process to further their investor's short-term financial gains at the expense of our long-term safety and security:

- **Legislation to Reduce PG&E Safety and Accountability** – Due to the high-dollar amounts at stake in the bankruptcy proceeding, lobbying efforts and backroom negotiations around AB-1054 and now AB-235 have compromised the safety and security of our communities. Clearly, the tradeoffs through these bills have been negotiated to make it easier for PG&E to payoff claimants like me in exchange for less restrictive safety regulation and less corporate accountability for future wildfires. Claimant Attorney Lobbyists in favor of AB-1054 in the legislative hearings stated unequivocally that their support of this legislation was because "it (AB-1054) provides major leverage in our negotiations with PG&E". Yes, AB-1054, AB-235 and other legislative efforts get support from bankruptcy attorneys representing wildfire survivor interests because it provides greater certainty for short-term bankruptcy payouts. Unfortunately, this is achieved at the expense of our longer-term safety and financial security. <u>AB-1054 deprioritized safety regulations and moved us from a annually required wildfire mitigation plan for PG&E that focused on performance-metrics in phase 2 to a triennial plan that has zero safety performance-metric requirements required by the legislation.</u> Furthermore, AB-1054 reduces the "reasonableness" standard and the authority/discretion for the California Public Utilities Commission to provide appropriate oversight. I want PG&E to be financially strong, executives to receive fair performance-based bonuses and for my family and other survivors to receive fair and just payment for the damages and pain caused by PG&E. However, this need not and should not be at the expense of community safety and corporate responsibility and not at the expense of future wildfire survivors.

- **Reduction in Regulatory Oversight** – Unfortunately, the bankruptcy process has driven PG&E to negotiate a new regulatory frameworks to alleviate their self-induced financial ills at the expense of safety and accountability for future wildfires. I have been granted party status by the CPUC in the wildfire related proceedings and have a close view of PG&E's efforts. Across many CPUC proceedings, PG&E is working to reduce transparency and regulatory oversight to ensure greater short-term financial strength for the company. Please, consider just these three examples across the many proceedings where PG&E strives to reduce their safety accountability:

    1. **Wildfire Mitigation Plan Proceeding (R.18-10-007)** – PG&E files amendments designed to strip away "~~results~~" and safety standards as the basis of their plans when failing their own quality assurance standards. They then propose metrics designed to obscure underlying problems (deferred maintenance, lack of safety standards, etc.). Of course, these efforts are being challenged by the CPUC and parties to the proceeding but the fact that they filed these amendments circumventing processes (after party comments due and conveniently less than 2-hours after the CPUC

awarded PG&E $373M in ratepayer reimbursement) demonstrates their continued orientation to avoid accountability. PG&E Amendment - http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M283/K824/283824582.PDF

2. **Investigation to Determine if PG&E Culture Prioritizes Safety (I.15-08-019)** – PG&E has indicated that due to bankruptcy, the organization has chosen a board of directors that have a strong background in utility financials but not safety. Richard Kelly, managing the board recruitment effort on behalf of PG&E, stated to the CPUC that they have no plans to recruit new board members after bankruptcy who possess greater safety experience and they have no plans to change their internal safety incentive structure. This position is a confirmation that the corporate culture of PG&E if not substantially changed will increase the likelihood that PG&E will be back in bankruptcy without addressing their increasing and underlying wildfire safety risks. (See Kelly Statement at 1:13 http://www.adminmonitor.com/ca/cpuc/workshop/20190415/2/ with attention to Q&A portion)

3. **Wildfire Cost Recovery Proceeding (R.19-01-006)** – PG&E has argued for a cost recovery methodology that foundationally is based upon artificially propping up their credit rating. This methodology does not consider successful wildfire risk mitigation or real harms to customers in determining what costs can be recovered on the backs of ratepayers and taxpayers. Despite the CPUC's decision in PG&E's favor to base cost recovery almost solely on their credit rating, they have appealed the decision because they want more immediate access to the funds prior to exiting bankruptcy. Once again, bankruptcy expediency is prioritized over safety and accountability. PG&E application for rehearing - http://docs.cpuc.ca.gov/PublishedDocs/Efile/G000/M310/K226/310226356.PDF

- **San Francisco's Bid for PG&E Assets** – This is an understandable pursuit for San Francisco given the safety record of PG&E but clearly leaves the rest of us in California at greater risk. The municipalization of our energy grid favors wealthier cities like San Francisco (Healdsburg, Palo Alto, etc.) and leaves PG&E with the areas of highest risk concentrated in Northern California with large expanses of Wildlife Urban Interface (WUI) and High Fire Threat Districts (HFTDs). So, PG&E would have fewer resources and less economies of scale to manage these higher risks. It follows that if San Francisco is successful with their bid they might end up with fewer intracity fires but more smoke pouring across the Bay from those PG&E served communities. Please, consider that this move also exacerbates income-inequality with an added dose of energy and public safety inequality.

I appreciate your Honor's consideration of these issues. Certainly, AB-1054 puts added pressure on all parties to ensure PG&E exits bankruptcy by June, 2020. However, I would encourage parties in this proceeding to take a hard look at the legislative and regulatory consequences that can be directly attributed to the bankruptcy pressures and ask the following questions:

1. Are we inadvertently trading payouts for current wildfire survivors at the expense of future wildfire victims that will have fewer protections and are at increased wildfire risk?
2. Will the efforts of certain stakeholders to drive a quick bankruptcy resolution result in longer-term financial pain for PG&E and the residents across California?
3. Does PG&E have a feasible wildfire mitigation plan and appropriate incentives based on performance-based metrics that will keep them out of a future bankruptcy and increase their accountability and focus on safety?
4. Is the bankruptcy process driving legislation and regulation that leaves us with greater safety risks and a looser regulatory framework that promote less accountability for PG&E?

Please, consider these issues as PG&E executes this well-coordinated and well-funded strategy across their many spheres of influence throughout and beyond our State of California. Also, please consider that residents and wildfire survivors like me are at a significant disadvantage without the resources of PG&E to make their voices heard and influence this bankruptcy proceeding. Our attorneys understandably are promoting strategies that ensure fair, just yet quick payouts for their clients. All the more reason to ensure that wildfire survivors and representatives from consumer safety advocacy organizations have a direct voice in these bankruptcy proceedings. Thank you for considering my request to provide testimony in this phase of the bankruptcy process. I think this wildfire survivor perspective would help all parties understand the trade-offs and compromises more fully as they balance expediency with the efficacy of the decision-making process.

Respectfully Submitted,

William B. Abrams
Sonoma County Resident
On Behalf of the Abrams Family