WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
ray.schrock@weil.com
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) FOR AUTHORITY TO ENTER INTO, PERFORM UNDER AND MAKE PAYMENTS UNDER CERTAIN CONSULTING CONTRACTS WITH MCKINSEY & COMPANY, INC. UNITED STATES**<br><br>Date: November 19, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>**Objection Deadline:**<br>**November 12, 2019 at 4:00 p.m. (PT)** |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Application (the "**Application**"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for authority to enter into, perform under, and make payments under three consulting and operational contracts (as may be amended and supplemented from time to time, the "**Service Contracts**") with McKinsey & Company, Inc. United States ("**McKinsey**").

A proposed form of order approving the relief requested in the Application is attached hereto as **Exhibit A** (the "**Proposed Order**").

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

The Debtors are filing this Application out of an abundance of caution in order to satisfy McKinsey's concerns regarding providing such crucial services to the Debtors during their bankruptcy cases without obtaining Court approval.  As described in more detail herein, while the Debtors view McKinsey's services as critical to their core business operations, they do not believe that McKinsey is performing work as a "professional" in the sense that would typically require an application for employment pursuant to section 327(a) of the Bankruptcy Code.  The Debtors also believe that the entry into, and performance under, these three Service Contracts are ordinary course of business transactions that would not require court approval under section 363(b) of the Bankruptcy Code.  Nevertheless, in an abundance of caution and in light of certain litigation involving McKinsey in matters unrelated to these Chapter 11 Cases (described further below), McKinsey indicated to the Debtors that it was unwilling to accept payment for its post-petition services unless the Debtors agreed to bring the Service Contracts to this Court's attention and seek Court authority to enter into and perform under the Service Contracts. Therefore, while the Debtors believe that they do not require Court approval pursuant to section 363 of the Bankruptcy Code, the Debtors are filing this Application to address McKinsey's desire for transparency.  In addition, McKinsey has indicated to the Debtors that it is willing – voluntarily and proactively – to file disclosures of its connections in these Chapter 11 Cases for the sake of full transparency, despite not being a "professional" that would typically require disclosures pursuant to Rule 2014.

## II.  JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## III. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**").  On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263].

## IV. MCKINSEY'S QUALIFICATIONS; HISTORY OF MCKINSEY'S CONSULTING ROLE

Well before the commencement of these Chapter 11 Cases, the Debtors contracted with McKinsey to provide ordinary-course consulting services related to improving their gas operations business unit.  The Debtors chose to work with McKinsey based on McKinsey's long track record for driving business improvement in the gas business, and the Debtors wish to continue and extend that business relationship as described herein. McKinsey is a global, full service consulting firm with over 30,000 employees operating in 130 cities and 65 countries. McKinsey draws on unmatched industry and functional expertise to provide consulting work for companies.  Its employees have extensive experience in improving the operational performance of companies.  Particularly relevant to this Application, McKinsey has extensive experience in assisting electric and gas utilities to achieve significantly better operating performance, better safety, lower costs, higher capital productivity, better customer satisfaction, improved quality of work, and improved reliability, among other benefits.

McKinsey has provided consulting services to the Debtors since 2006.  Such historical services

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

include, among other things, efforts to improve the Debtors' gas operations performance, information technology, and customer care performance. As a result of the extensive pre-petition services provided to the Debtors, McKinsey has acquired significant knowledge of the Debtors and their businesses, and familiarity with the Debtors' financial affairs (cost structure, capital requirements), operations (work packages, unit rates, and priorities), and related matters, including their digital infrastructure and recently implemented safety measures. Likewise, in providing prepetition services to the Debtors, McKinsey's consultants have worked closely with the Debtors' management and their other advisors. Consequently, McKinsey has developed experience and expertise regarding the Debtors and their operations that will assist McKinsey in providing effective and efficient operational and other services to the Debtors. The Debtors, therefore, submit that the retention of McKinsey on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## V. SCOPE OF SERVICES UNDER THE SERVICE CONTRACTS

Prior to the Petition Date, in the ordinary course of their business and unrelated to the Debtors' restructuring efforts, the Debtors entered into two Service Contracts with McKinsey pursuant to which consulting services were performed post-petition. These two pre-petition Service Contracts consist of a (i) Gas Stewardship contract dated February 23, 2017 and (ii) Digital Locate and Mark contract dated October 16, 2018. The terms and conditions of the Service Contracts were negotiated at arms' length and reflect the parties' mutual agreement as to the substantial efforts that will be required under these engagements, as well as the significant benefits provided to the Debtors as result of the Service Contracts.

The Gas Stewardship Service Contract relates to an effort to improve performance for the Debtors' gas operations unit, focused on increasing efficiency, refining organizational structure and capabilities, and achieving unit cost savings and completing more work in certain targeted areas, all while helping to ensure that planned work is completed on schedule. The Gas Stewardship contract is a three-year contract that expires on December 31, 2019, with final payment due in March 2020. To date, McKinsey's work has produced over $600 million of savings for the Debtors.

In connection with this Application, the Debtors also seek authority to enter into an amendment of the Gas Stewardship Service Contract as a result of certain recent management changes. More

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

1    specifically, the Gas Stewardship contract currently sets forth certain specific members of the Debtors'

2    management who serve as McKinsey's primary contacts with the Debtors. In light of certain recent

3    management changes, the Debtors have requested, and McKinsey has agreed, to amend the Gas

4    Stewardship contract to update the list of names who will be the Debtors' designated contacts, subject

5    to approval by this Court.

6          The Digital Locate and Mark Service Contract relates to an effort to assist the Debtors in

7    improving their "locate and mark" program by piloting a digital solution/application for use by PG&E

8    employees. The Debtors' locate and mark program is designed to improve safety by enabling a process

9    by which underground facilities are physically marked by paint aboveground prior to any digging that

10   has been called into the national 811 phone system. The contract was entered into on October 16, 2018

11   and contemplated an intensive effort to help Debtors implement an improved operational digital solution

12   to locate and mark underground PG&E electric and gas lines. The Debtors' goal for this project is to

13   enable PG&E to more effectively obtain access to certain data in a digital solution/application, work

14   toward mobile training to retire older devices used in the locate and mark program, and develop

15   minimum viable product solutions for locate and mark employees. The Debtors consider this contract as

16   essential to the integrity of the its operations because it was entered into with the goal of helping address

17   concerns raised by the California Public Utilities Commission and improves the safety of the public and

18   the Debtors' employees.

19         In light of the substantial value provided by such contract, prior to the April 5, 2019, termination

20   date of the Digital Locate & Mark contract, the Debtors requested that McKinsey extend this Service

21   Contract and continue to perform services to help further develop and improve the Debtors' digital locate

22   and mark program. After engaging in good faith negotiations concerning the Debtors' ongoing needs,

23   the parties agreed to enter into a post-petition Service Contract to supplement the pre-petition Digital

24   Locate and Mark Service Contract (as may be amended and supplemented from time to time, the

25   "**Supplemental Service Contract**"). The Supplemental Service Contract enables the Debtors to further

26   capitalize on the benefits from the pre-petition Digital Locate and Mark service contract and have

27   McKinsey continue to perform such beneficial services for an additional four months through August

28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

17, 2019.[1]  The Debtors believe that the services provided under the Supplemental Service Contract have resulted, and will continue to result, in substantial improvements upon the current locate and mark process, which will improve the Debtors' operations for years to come and help the Debtors better comply with California law and California Public Utility Commission regulatory requirements.

While not directly related to the Chapter 11 Cases, the Debtors view these services as critical to their core business operations.  As set forth below, the Debtors do not believe that McKinsey is performing work as a "professional" in the sense that would typically require an application for employment pursuant to section 327(a) of the Bankruptcy Code because McKinsey is providing operational consulting services rather than serving in any legal, accounting, restructuring advisory, or other similar function, and because McKinsey's work is unrelated to the chapter 11 restructuring. Further, the Debtors believe that entering into a new service contract to extend the time period of an existing agreement, particularly where the Debtors have been working with McKinsey pursuant to various contracts since 2006, is an action within the ordinary course of business that would not typically require court approval under section 363(b) of the Bankruptcy Code.  Nevertheless, in an abundance of caution and in light of certain litigation involving McKinsey in matters unrelated to these Chapter 11 Cases, McKinsey has indicated to the Debtors that it was unwilling to accept payment for its post-petition services unless the Debtors bring the Service Contracts to this Court's attention and seek Court authority to enter into and perform under the Service Contracts as requested herein.  Therefore, while the Debtors believe that the contracts and their engagement of McKinsey are ordinary course and do not require Court approval pursuant to section 363 of the Bankruptcy Code, the Debtors are filing this Application to address McKinsey's concerns.

To the extent the Court finds that the Service Contracts with McKinsey are ordinary course transactions and McKinsey is not a "professional," and no other party objects to that characterization or otherwise objects to the Debtors' performance under the Service Contracts, the Debtors may withdraw the Application, but only subject to a clear understanding and agreement by all stakeholders that there

---

[1] The Debtors subsequently requested that McKinsey amend the Supplemental Service Contract to extend the duration of the critical services provided by McKinsey through December 31, 2019.  On August 16, 2019, McKinsey executed an amendment to the Supplemental Service Contract extending the contract without requiring any additional fees or compensation from the Debtors for the extra four months of services.

1   will be no subsequent arguments or objections concerning the appropriateness of McKinsey providing

2   services to the Debtors pursuant to the Service Contracts. Otherwise, the Debtors respectfully submit

3   that, for the reasons stated herein, the Court should approve the relief requested herein pursuant to

4   sections 363(b) and 105(a) of the Bankruptcy Code in order to address McKinsey's reluctance to provide

5   such crucial services without Court approval.

## VI.     PROFESSIONAL COMPENSATION

Prepetition, the Debtors and McKinsey negotiated distinct, ordinary-course payment structures for each of the prepetition Service Contracts. With respect to the Gas Stewardship Service Contract, McKinsey invoiced the Debtors for $12,938,226.00 before the Petition Date for work done during 2018, with such amounts remaining unpaid as of the date of this Application. As of the Petition Date, a maximum of $17 million of post-petition work remained to be performed through the end of the contract. McKinsey's post-petition compensation is directly correlated with the benefits provided to the Debtors' estates. McKinsey's compensation under the Gas Stewardship Service Contract is not hourly based; rather, it will be calculated by measuring the performance of the Debtors' gas operations against certain saving thresholds within specific operational categories. Thus, the fees earned by McKinsey are not directly attributable to the hours worked and are wholly unrelated to the number of consultants assigned to the Debtors. In addition, the Debtors and McKinsey negotiated the amount of resources and McKinsey consultants that will work full-time for the Debtors per month in order to ensure that the Debtors achieve the full benefit of the Service Contract (which, to date, McKinsey has more than fully complied with). In light of the fact that the Service Contract is based on operational benefits received by the Debtors with threshold levels of McKinsey resources, neither the Debtors nor McKinsey anticipated, nor required, any level of detailed time tracking beyond the threshold levels. While the Gas Stewardship Service Contract expires at the end of 2019, the final payment is not due to McKinsey until March 2020 and will be based on the final performance and benefits of the project as realized by the Debtors at that time. As noted earlier, McKinsey's work has already produced over $600 million of savings for the Debtors pursuant to the Gas Stewardship Service Contract.

With respect to the pre-petition Digital Locate and Mark Service Contract, McKinsey is entitled

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

to a total fee of $4,602,500, again payable upon the achievement of certain milestones.[2]  McKinsey has invoiced the Debtors for $4,165,714.29 before the Petition Date for work done during 2018, of which $262,428.58 was paid prior to the Petition Date, with $3,903,285.71 of such amounts remaining unpaid as of the date of this Application.  McKinsey has incurred unpaid fees totaling $436,785.71 for work performed pursuant to the pre-petition Digital Locate and Mark Service Contract after the Petition Date through the April 5, 2019 termination date.[3]  Pursuant to the post-petition Supplemental Service Contract, McKinsey will be entitled to receive additional payments not to exceed $5.1 million, pursuant to agreed upon schedule of monthly payments.

The Debtors request authority to pay, in the ordinary course of business, all reasonable amounts invoiced by McKinsey for fees and expenses incurred in accordance with the terms and conditions of the Service Contracts, as follows:

> (a) McKinsey shall submit a monthly invoice for each Service Contract specifying the amount billed for its services each month during these Chapter 11 Cases;

> (b) The invoices shall include information regarding the work performed in satisfying the milestones and progress towards upcoming milestones under each Service Contract during that time period;

> (c) An invoice is payable by the Debtors upon receipt and is considered past due after thirty (30) days.

Because McKinsey is not being employed as a professional under section 327 of the Bankruptcy Code, it will not submit quarterly or final fee applications pursuant to sections 300 and 331 of the Bankruptcy Code, or otherwise.

According to the Debtors' books and records, McKinsey is owed $16,817,755 for certain pre-petition services, including services arising under certain expired contracts that are unrelated to the Service Contracts [Docket No. 906-4].  This Application does not seek authority to pay any pre-petition

---

[2] Such milestones were agreed upon as being critical business outcomes to meet the needs of the locate and mark business owners.  As such, similar to the Gas Stewardship Service Contract, the Digital Locate and Mark Service Contract did not contemplate tracking the time of consultants; rather, it was focused on tracking the completion of work towards the Debtors' stated milestones.

[3] On March 27, 2019, the Debtors made a one time payment of $35,000 to McKinsey which related to post-petition invoice number# 37259.  McKinsey returned such funds to the Debtors and explained that McKinsey was not seeking payment of any invoices prior to Court approval of this Application and a determination by the Court that such payment is authorized.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

fees, and such claims, if allowed, would only be payable pursuant to any confirmed plan, assumption order, or any other relevant order of the Court.

According to the Debtors' books and records, during the 90-day period prior to the Petition Date, the Debtors paid McKinsey $1,426,714.29 in the aggregate for professional services performed under the Service Contracts.

## VII.    EFFORTS TO AVOID DUPLICATION OF SERVICES

The services provided by McKinsey will complement, and not duplicate, the services to be rendered by other professionals retained in these Chapter 11 Cases.   McKinsey's services relate to the Debtors' ordinary course operations, including obligations to comply with applicable state law, separate and apart from the various restructuring services provided by the other chapter 11 professionals being retained by the Debtors, including AP Services, LLC as restructuring advisor and Lazard Freres & Co. as investment banker.  Accordingly, there is no other retained professional that can or will provide the critical services that McKinsey is currently providing the Debtors during these cases.

## VIII.   MCKINSEY'S RETENTION BY THE DEBTORS

The Debtors respectfully submit that the retention of McKinsey is not governed by section 327 of the Bankruptcy Code, because McKinsey does not qualify as "professional" as defined in the Bankruptcy Code.   Courts have held that not every person employed by debtors is a "professional person" within the meaning of section 327(a) of the Bankruptcy Code. *See In re Blair*, 329 B.R. 358 (B.A.P. 9th Cir. 2005). A "professional person is one who takes a *central role* in the administration of the bankruptcy estate and in the bankruptcy proceedings" (emphasis added). *Id*.  McKinsey is not taking a central role, "represent[ing] or assist[ing] the [Debtors] in carrying out [their] duties" in these Chapter 11 Cases, 11 U.S.C. §327(a),  nor otherwise providing services related to "the administration of the debtor's estate," *In re Heritage Home Group LLC*, 2018 WL 4684802, at *2, 4 (Bankr. D. Del. 2018) (holding that a consultant was not a "professional" under section 327(a) where consultant was not "intimately involved in the reorganization process"); *see also Elstead v. Nolden (In re That's Entm't Mktg. Grp., Inc.),* 168 B.R. 226, 229 (N.D. Cal. 1994) ("For purposes of interpreting § 327, the term 'professional persons,' is a 'term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate.'");  *In re Brookstone Holdings Corp*., 592 B.R. 27 (Bankr. D. Del.

2018) (finding that a liquidator is not a "professional" that needs to be retained because it has no discretion with respect to the administration of the debtor's chapter 11 case). Courts have recognized duties such as assisting in the negotiation of the debtor's plan, assisting in the adjustment of the debtor/creditor relationship, disposing of assets of the estate, and acquiring assets on behalf of the estate to be "central" to the administration of the estate. *That's Entm't*, 168 B.R. at 230.

As described herein, McKinsey's work for the Debtors does not relate to these Chapter 11 Cases; indeed, the restructuring advisory arm of McKinsey (McKinsey Recovery & Transformation Services U.S., LLC) is not the entity that is engaged by the Debtors. Rather, McKinsey's work arises from Service Contracts formed in the ordinary course of the Debtors' business independent of and pre-dating the Debtors' bankruptcy filing. *See In re Nine West Holdings, Inc.*, 588 B.R. 678, 694 (Bankr. S.D.N.Y. 2018) (holding that CEO and consultant were not professionals under section 327(a) where "[consulting firm] was hired four years before the Petition Date, and, since that time, Mr. Schipani and other [consulting firm] personnel have managed the company, providing services that would be needed independent of any bankruptcy filing"). Nevertheless, out of an abundance of caution, McKinsey has informed the Debtors that it wishes to submit a declaration that discloses potential connections with the various parties in interest to demonstrate that McKinsey does not have a disqualifying conflict of interest with respect to the services being provided to the Debtors, and McKinsey has indicated that it does not wish to accept payment for the post-petition services it is providing until such declaration is filed and this Court approves the terms of the Service Contracts (unless, as noted above, the Debtors exercise their reserved right to withdraw the Application if this Court finds that the Service Contracts with McKinsey are ordinary course transactions and that McKinsey is not a "professional," and therefore that no such declarations or approval are necessary, and no party in interest objects to that finding or the Debtors' performance under the Service Contracts).

As the Court may be aware, Jay Alix has pursued litigation against McKinsey in certain bankruptcy and non-bankruptcy courts unrelated to these Chapter 11 Cases. All courts to date have ruled in McKinsey's favor but the expectation is that this party will continue to pursue litigation against McKinsey, including possibly in this matter. For its part, McKinsey Recovery & Transformation Services U.S., LLC ("**McKinsey RTS**"), an affiliate of McKinsey, has developed and adopted a new

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    protocol developed by Jan Baker and Paul Singerman for review of its connections in bankruptcy cases.

2    *See* Mediator's Notice, *In re Westmoreland Coal Company*, Case No 18-35671 (DRJ) (Bankr. S.D. Tx.),

3    D.I. 1406 at 8. Specifically, on February 21, 2019, the Westmoreland Court granted a joint motion of

4    Westmoreland and McKinsey RTS to defer consideration of Westmoreland's application to retain

5    McKinsey RTS while McKinsey RTS worked with an expert on developing the new disclosure protocol,

6    applied the new protocol to its Rule 2014 disclosures, and filed Rule 2014 disclosures based on the new

7    protocol. *See* Westmoreland D.I. 1427 ¶ 3.

8         The final proposed protocol, the Houston Disclosure Protocol, was filed with the Westmoreland

9    Court on May 31, 2019 (the "**Protocol**"). Westmoreland D.I. 1907. On July 3, 2019, McKinsey RTS

10    and certain of its affiliates filed a new retention application with updated Rule 2014 disclosures in

11    accordance with the Protocol. Westmoreland D.I. 2119.

12         As noted above, McKinsey has indicated to the Debtors that it is willing – voluntarily and

13    proactively – to file disclosures of its connections in these Chapter 11 Cases, even though the nature of

14    its work is ordinary-course and an employment application would not ordinarily be required. Rule 2014,

15    on its face, only applies to applications of "professionals" pursuant to section 327, 1103 and 1114 of the

16    Bankruptcy Code. Nevertheless, in light of the process that McKinsey recently undertook in

17    *Westmoreland* to prepare and file its disclosures in accordance with the Protocol, McKinsey has

18    indicated to the Debtors that it wishes to delay consideration of this Application until such voluntary

19    disclosures can be prepared in accordance with the Protocol (unless, as noted above, the Debtors exercise

20    their reserved right to withdraw the Application if this Court finds that the Service Contracts with

21    McKinsey are ordinary course transactions and that McKinsey is not a "professional," and therefore that

22    no such declarations or approval are necessary, and no party in interest objects to that finding or the

23    Debtors' performance under the Service Contracts).[4] The Debtors are filing this Application at this time

24    in order to provide the Court and all parties in interest with full transparency regarding their entry into

25    the Supplemental Service Contract, and the services being provided by McKinsey to the Debtors and

26    their estates under the Service Contracts.

27

28    [4] These are the same delayed retention procedures that the *Westmoreland* Court approved in connection with McKinsey RTS's retention application under section 327(a) of the Bankruptcy Code.

1      McKinsey has informed the Debtors that it does not wish to be compensated by the Debtors for

2 any post-petition services unless and until the Court approves its retention, and in that context it is clear

3 that the risk of deferring approval of this Application falls on McKinsey, which has been providing

4 services to the Debtors since the Petition Date without compensation and will continue to do so until the

5 hearing on this Application.  Accordingly, the Debtors support McKinsey's request to defer filing its

6 retention disclosures until it can file its disclosures pursuant to the Protocol (unless, as noted above, the

7 Debtors exercise their reserved right to withdraw the Application if this Court finds that the Service

8 Contracts with McKinsey are ordinary course transactions and that McKinsey is not a "professional,"

9 and therefore that no such declarations or approval are necessary, and no party in interest objects to that

10 finding or the Debtors' performance under the Service Contracts).

11 **IX.     BASIS FOR THE RELIEF REQUESTED**

12      The Debtors seek approval of the Service Contracts with McKinsey pursuant to sections 363(b)

13 and 105(a) of the Bankruptcy Code. Under applicable case law, if a debtor's proposed use of its assets

14 pursuant to section 363(b) of the Bankruptcy Code represents a reasonable exercise of the debtor's

15 business judgment, such use should be approved.  *See e.g. Walter v. Sunwest Bank* (*In re Walter*), 83

16 B.R. 14, 19-20 (9th Cir. BAP 1988) (citing *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th

17 Cir. 1986)); *United Retired Pilots Benefit Protection Ass'n v. United Airlines, Inc. (In re UAL Corp.)*,

18 443 F.3d 565, 571 (7th Cir. 2006); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515

19 (7th Cir. 1991); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (noting that courts

20 have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)

21 of the Bankruptcy Code); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d

22 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application

23 expressly find from the evidence presented before him at the hearing a good business reason to grant

24 such an application.").

25      Moreover, the Court may exercise its equitable powers under section 105(a) of the Bankruptcy

26 Code to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to

27 "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

28 title." 11 U.S.C. § 105(a).

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

The decision to perform under the Service Contracts and retain McKinsey constitutes a sound exercise of the Debtors' business judgment. As noted earlier, pursuant to the Service Contracts McKinsey will deliver critical services that will provide significant value to the Debtors and that are in the best interests of all parties in interest in these Chapter 11 Cases. McKinsey is intimately familiar with the Debtors' financial affairs, operations, and related matters. Likewise, in providing prepetition services to the Debtors, McKinsey's consultants have worked closely with the Debtors' management and their other advisors. In addition, no other party will be providing these same services to the Debtors, which only McKinsey is uniquely qualified to provide. The Debtors, therefore, submit that the employment of McKinsey on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects. Accordingly, the Debtors respectfully request that the Application should be approved.

## X.     NOTICE

Notice of this Application will be provided to (i) the Office of the U.S. Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    WHEREFORE, while the Debtors view the entry into, and performance under, the Service

2 Contracts as ordinary course of business transactions that do not require court approval under sections

3 327 or 363(b) of the Bankruptcy Code, out of an abundance of caution the Debtors respectfully request

4 entry of an order granting (i) the relief requested herein as a sound exercise of the Debtors' business

5 judgment and in the best interests of their estates, creditors, shareholders, and all other parties interests,

6 and (ii) such other and further relief as the Court may deem just and appropriate.

7 Dated: September 17, 2019

8                                                              **WEIL, GOTSHAL & MANGES LLP**

9                                                              **KELLER & BENVENUTTI LLP**

10                                                             By:  /s/ *Matthew Goren*
                                                                       Matthew Goren
11
                                                             *Attorneys for Debtors*
12                                                           *and Debtors in Possession*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28