**EXHIBIT A**

Case: 19-30088    Doc# 3922-1    Filed: 09/17/19    Entered: 09/17/19 17:16:36    Page 1 of 5

1. **Application to All Fire Related Claimants.** The parties acknowledge that there were agreements, orders, and protections entered in the North Bay JCCP, portions of which are incorporated below. This agreement shall apply equally to all fire related cases, including Camp, Butte, and Ghost Ship. The parties understand that the Ghost Ship fire claimants are also using Brown Greer.

2. **Plaintiffs.** All Plaintiffs' counsel who have participated in BrownGreer and wish to participate in BrownGreer shall: (a) register their retained cases on the BrownGreer system; (b) allow BrownGreer to share case-specific registration data[1] with PG&E for all cases in the BrownGreer system; (c) continue efforts to collect with their clients CMO 5 damages information and input this information into the BrownGreer portal; (d) allow BrownGreer to generate CMO 5 reports (using the same format implemented under CMO 2) to share with PG&E; (e) engage in subrogation data sharing with PG&E under terms of CMO 5; and (f) engage in subrogation claims file (document) sharing with PG&E under the terms of CMO 5.

    a. **Secure Platform.** BrownGreer will open secure platforms for PG&E and authorized representatives of the Official Committee of Unsecured Creditors and TCC consistent with CMO 5, to store and maintain the uploads of information provided under this agreement.

    b. **Use of Information.** The purpose of this agreement is to allow the parties to more rapidly exchange information to come to a consensual resolution. In order to speed the exchange of information, the parties recognize that individual claims are being built in stages, often under difficult circumstances, and that the information contained in the BrownGreer portal, and provided to PG&E under these agreements, is fluid and subject to amendment and change. It is inadmissible in any proceeding in this bankruptcy except as permitted by Paragraph 9—Post Bar Date Procedures.

3. **Proof of Claim Forms.** All claims of individual fire-related victims that are currently reflected in the BrownGreer system will be submitted officially to Prime Clerk using the court-approved proof of claim form as soon as possible. Prime Clerk shall communicate and work directly with BrownGreer to facilitate the upload of claim forms to Prime Clerk. Furthermore, Prime Clerk will provide to BrownGreer fire-related proof of claim forms that have not originated with BrownGreer

4. **Subrogation.** Subrogation shall continue to comply with the terms of CMO 5.

5. **Agreed Protections.** Each individual plaintiff whose claim is registered with BrownGreer and who has not yet submitted a claim in the Chapter 11 proceedings is entitled to the following protections. For any proof of claim uploaded by BrownGreer onto Prime Clerk between the date of this agreement and the Bar Date, and absent further order of the Court: (a) no party shall assert a procedural defect or an objection

---

[1] As described in CMO 5 III. A. and III. B.

1

or use the information voluntarily provided under CMO 5 against the plaintiff in any filing, claim or proceeding at any time prior to the Bar Date; (b) the individual claimant shall have an automatic right to amend the Proof of Claim or any CMO 5 data between now and the bar date[2]; (c) no party shall seek discovery of any form from the individual plaintiff concerning the damages alleged by that plaintiff prior to the bar date; and (d) because the BrownGreer database is being used between the date of this Agreement and the Bar Date to foster settlement discussions, no party shall publicly disclose prior to the bar date any of the information uploaded into the BrownGreer database. All discussions among the parties concerning the valuation efforts described below will also be covered by the mediation privilege (FRE 408).

6. **Common Valuation Efforts.** PG&E and the state court plaintiffs' leadership agree to begin, as soon as possible, identifying a mutually agreed upon subset of claims that the parties can use to try to arrive at a common valuation through mediation that will enable a global resolution of the individual fire-related claims of at least those claimants represented by counsel that is using the BrownGreer database. PG&E and the state court plaintiffs' leadership agree to appoint a mutually agreed upon panel of qualified mediators to preside over these valuation efforts.

7. **Documents.** The current information in BrownGreer will not be the exclusive source of information used to conduct the common valuation efforts described in the preceding paragraph. It is expected that there will be a mutual exchange of information consistent with the good faith necessary to be successful here. With respect to the cases identified for mediation in Paragraph 6, and in order to speed this process of resolving claims, PG&E and the state court plaintiffs' leadership will agree to damages information, including but not limited to supporting documentation, that will be made available through the BrownGreer system as soon as possible, to facilitate mediation discussions.

   A. With respect to property damage claims, the supporting information and documentation will include, for example and where available:

      i. Proof of ownership (titles, deeds, etc.)

      ii. Property appraisals

      iii. Lease / rental agreements (for renters)

      iv. Invoices, receipts and estimates where available concerning clean-up and rebuilding efforts (*e.g.*, construction estimates of costs to rebuild, invoices for services to restore property)

      v. Photographs (*e.g.*, images showing proof of condition of property before and after alleged physical damage,

---

[2] This should not be read to limit or abrogate the rights of these creditors to otherwise amend or supplement their claims information as allowed under bankruptcy procedures.

Case: 19-30088    Doc# 3922-1    Filed: 09/17/19    Entered: 09/17/19 17:16:36    Page 3 of 5

B. Once PG&E and the state court plaintiffs' leadership have agreed to the list of necessary information and documentation that will be used to enable valuation discussions, all plaintiffs participating in BrownGreer (regardless of whether their particular claims are part of the mediation efforts described in Paragraph 6) will work in good faith to load that information in their possession into BrownGreer prior to the Bar Date to aid in further valuation discussions. The parties acknowledge that this work can be conducted on a rolling basis so that the claims can be built in stages.

8. **Privileged Communications.** Pursuant to the parties' agreement, the communication, transmission, or dissemination of information of common interest among Plaintiffs' counsel or separately among Defendants' counsel shall be protected by the attorney-client privilege, the protections afforded by the attorney work product doctrine, the protections afforded to material prepared for litigation or any other privilege to which a party may otherwise be entitled. Further, cooperative efforts to reach a consensual resolution shall be subject to a mediation privilege and shall not be used or disclosed in any way other than as part of those efforts.

9. **Post Bar Date Procedures.** The parties acknowledge there are significant cooperative efforts to be commenced under unique and difficult circumstances for the individuals impacted by these fires. One of the goals of this agreement is to allow for the fire victims to build their claims in stages and to avoid duplication of formal discovery efforts (to the extent these efforts become necessary) The parties agree to meet and confer on any alterations of, or extension to, this Agreement promptly after the Bar Date and any formal discovery plan applicable to all fire victims. After the Bar Date, and notwithstanding anything contained herein to the contrary, any information or documents that have been loaded into Brown Greer shall be made available for use in these bankruptcy proceedings to the maximum extent permitted by the governing Federal procedural and evidentiary rules, including but not limited to in any estimation proceedings.

10. **Good Faith and Fair Dealing.** The parties recognized that there are over 30,000 claims in the BrownGreer system with the overwhelming majority uploaded voluntarily after the bankruptcy filing. The plaintiffs are encouraged to process information on a rolling basis, consistent with their efforts between the bankruptcy filing and the date of this agreement.

11. **Costs of Implementation.** The parties agree that PG&E's bankruptcy estate will pay for the costs of mediation and of developing and maintaining the BrownGreer claims database.

12. **Discovery**: Nothing in this agreement shall limit any party's ability to seek or conduct discovery on any issues at any time except for the limitation on damages discovery directly from an individual claimant as set forth in Paragraph 5(c) above.

13. **Court Order.** The parties will jointly submit an order to the court consistent with the terms of this agreement.