SCOTT H. McNUTT (CSBN 104696)
324 Warren Road
San Mateo, California 94402
Telephone: (415) 760-5601
Email: shm@ml-sf.com

Counsel to the Fee Examiner

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>       - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>            Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM)<br><br>,,, | Bankruptcy Case<br>No. 19-30088 (DM)<br>(Lead Case)<br>(Jointly Administered)<br><br>Chapter 11<br><br>**MOTION TO APPROVE FEE PROCEDURES**<br><br>Date:   October 8, 2019<br>Time:   10:00 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>           Courtroom 17,<br>……….450 Golden Gate Avenue<br>……….16th Floor<br>           San Francisco, CA<br><br>Judge:   Hon. Dennis Montali |

## I. PLEASE TAKE NOTICE

By this Motion, Bruce Markell, the Court Appointed Fee Examiner, asks the Court for an order impacting all parties seeking the award of fees from the bankruptcy estate in these bankruptcy cases. Attached hereto as Exhibit 1 is a chart of parties (the "Chart) that have filed

applications for employment in these bankruptcy cases, as well as those who have filed applications for interim compensation (henceforth referred to as "Fee Applicants" or "Respondents").

**PLEASE TAKE FURTHER NOTICE.** THE PARTIES NAMED IN EXHIBIT 1 ARE RESPONDENTS TO THE RELIEF REQUESTED IN THIS MOTION. THE FEE EXAMINER CALLS TO THE ATTENTION OF ALL RESPONDENTS THAT THE ORDER REQUESTED BY THE FEE EXAMINER WILL HAVE AN IMPACT ON THE AWARD OF FEES AND EXPENSES. THE PROCEDURES BEING RECOMMENDED BY THE FEE EXAMINER, AS WELL AS THE OTHER RELIEF SOUGHT BY THE FEE EXAMINER, WHEN ORDERED BY THE COURT, WILL BE BINDING ON THE RESPONDENTS IN THESE CASES.

**PLEASE TAKE FURTHER NOTICE.** ANY ORDER ENTERED BY THE COURT WILL BE BINDING ON RESPONDENTS IN THESE CASES AND ANY OBJECTIONS OR OTHER RESPONSE BY RESPONDENTS WILL BE WAIVED IF NOT TIMELY MADE. THE COURT HAS PREVIOUSLY ORDERED THAT ALL RESPONSES ARE DUE NO LATER THAN OCTOBER 1, 2019. See, Order Setting Motion To Approve Fee Procedures, Entered September 17, 2019 [Doc. No. 3918].

**PLEASE TAKE FURTHER NOTICE.** THE FEE EXAMINER SPECIFICALLY CALLS TO THE ATTENTION OF ALL RESPONDENTS THE FOLLOWING:

THE PUBLISHED GUIDELINES FOR COMPENSATION AND EXPENSE REIMBURSEMENT OF PROFESSIONALS AND TRUSTEES (the "Guidelines"); and

PRACTICES AND PROCEDURES IN JUDGE MONTALI'S COURT, ESPECIALLY PARAGRAPHS II, J AND III, I (RE TRAVEL AND CONFLICTS CHECKS/ ETHICAL WALLS) ("Judge Montali's Local Rules").

The Guidelines and Judge Montali's local rules are both available on this Court's website.

## II.  INTRODUCTION

The Fee Examiner in these jointly administered bankruptcy cases moves this Court for an order establishing procedures for scheduling hearings on the interim fee applications currently pending, as well as to establish a procedure for scheduling all interim and final fee applications to be considered in the future.

In addition, the Fee Examiner moves the Court for an Order determining certain issues of general application to interim and final fee applications.

III. **MOTION TO ESTABLISH PROCEDURES FOR SCHEDULING HEARINGS ON INTERIM FEE APPLICATIONS**

Three documents control the Court's consideration of Interim Fee Applications. These are:

1) Order Pursuant to 11 U.S.C. Sections 331 and 105(a) and FRBP 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, Entered February 28, 2019 [Doc. No. 701] (the "Interim Procedures Order").

2) Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses, Entered May 29, 2019 [Doc. No. 2267] (the "Order Appointing Fee Examiner").

3) Notice by Fee Examiner of the Terms of Protocol Regarding Submission of Fee Applications As Required by Order Employing Fee Examiner, Entered August 30, 2019 [Doc. No. 3762] (the "Protocol").

The Interim Procedures Order provides that "At four-month intervals or such other intervals convenient to the Court, Retained Professionals may file with the Court an application (an "Interim Application"). See Interim Procedures Order P.5. The Interim Procedures Order goes on to set the first opportunity to file an Interim Application as July 15, 2019 (45 days following May 31, 2019, defined as "The Initial Interim Fee Period"). See Interim Procedures Order ¶ 5.

Under the Order Appointing Fee Examiner, a process is established whereby the Fee

Examiner produces an "Initial Report." See Order appointing Fee Examiner, ¶ 6(e). After discussions with the Applicant, the Fee Examiner is to file a "Final Report." See Order Appointing Fee Examiner, ¶ 6(g). Applicant then may file a "Final Response." See Order Appointing Fee Examiner, ¶ 7. Thereafter, a hearing is scheduled as follows: "If applicable, hearings on the Applications shall be scheduled by the Court in consultation with Debtor's Counsel after the filing of the applicable final reports by the Fee Examiner." See Order Appointing Fee Examiner, ¶ 9.

As it turns out, the Retained Professionals have been inconsistent in their adherence to these orders. No professional for the debtor, or any other professional, has thus far undertaken the task of coordinating hearings on interim applications. By this Motion, the Fee Examiner reluctantly assumes the role of coordinating this process.

As of this writing, there are 23 retained professionals in these cases. Of these, only 9 have filed interim fee applications. Some filed by July 15, others filed later. Some followed the correct course and set no hearing dates while others set a hearing date. Employment Applications and Interim Fee Applications are summarized in the Chart attached as Exhibit 1.

**Wherefore, in light of the foregoing, the Fee Examiner asks the Court to order as follows:**

As to any currently pending interim fee application (defined as any interim fee application filed before October 8, 2019);

- Only the Fee Examiner shall have authority to set a hearing date, and such dates shall be set under the provisions of Paragraph 9 of the Order Appointing Fee Examiner, i.e., after a final report, in coordination with the Debtors counsel, and grouped to advance judicial economy.

- If a fee applicant and the Fee Examiner have reached a compromise, then a hearing should be set on the same basis and be coordinated with other fee hearings, so that hearings are grouped to advance judicial economy.

As to future cycles of interim fee applications, the following procedures should be ordered;

- Interim fee applications shall be considered every four months, as provided for in the Interim Procedures Order. Under that order the first interim fee applications were to be filed by July 15, 2019. Future interim applications may be filed at four month intervals commencing with that date. The next deadline to file an interim fee application shall be November 15, 2019, followed by March 15, 2020, and so on every four months. If an interim fee application is filed after the deadline, it will be deemed filed at the next interval. Each application will cover fees and expenses incurred through the end of the second full month preceding the deadline. For example, the applications filed November 15 shall cover time and expenses through September 30; the applications due March 15, 2020 will cover time and expenses through January 31, 2020.

- In the discretion of the Fee Examiner, the hearing dates on the interim applications will be grouped into three blocks as follows:

  o The "core" debtors' counsel and committee counsel (Keller Benvenutti, Weil Gotschal, Cravath, Milbank, and Baker Hostetler);

  o Debtors' other legal counsel subject to fee examination; and

  o Non-legal professionals.

- The Fee Examiner will determine when each block is set for hearing, attempting to do so in a manner respecting judicial economy and the efficient use of Fee Applicant's time. The Fee Examiner may set each block on a different day. The goal is to group applications such that duplication of effort can be more easily detected (if it exists), and to also spread out the work of the Fee Examiner and his limited staff.

## IV. MOTION FOR ORDER DETERMINING ISSUES OF COMMON APPLICATION ACROSS ALL INTERIM FEE APPLICATIONS

A) Duplication and Overlap

The Fee Examiner has informed all counsel that issues of duplication and overlap as between firms cannot be evaluated until all counsel have submitted interim fee applications, and maybe not until final fee applications. The Fee Examiner cannot evaluate duplication and overlap as between firms until the universe of fees is known and must reserve analysis of the issues of duplication and overlap until these issues have ripened.

**The Fee Examiner asks this court to order that any interim award of fees to any fee applicant does not waive or otherwise limit the Fee Examiner's right to object at a future date based upon his determination of duplication or overlap as between multiple firms.**

B) Compensation for Non-Working Travel

1. The Issue in This Case

The Interim Fee Applications filed thus far contain time for "non-working travel."[1] The numbers are large, especially since these Applications concern only the first four months. Indeed, for just the four major firms in the case, Weil, Cravath, Milbank, and Baker,[2] an aggregate of 2,780 hours representing over $1 million in charges to the estate have been submitted, as shown by this chart:

---

[1] One exception is Jenner & Block, which has chosen to follow its prepetition agreement and not bill for non-working travel.

[2] In the chart, the time for Baker's non-working travel is not taken from Baker's application. It is the Fee Examiner's estimate from an independent review of Baker's time records. Baker's first interim fee application requests $175,158.50 in reimbursement for 402.4 hours of non-working travel. In discussions with Baker over its interim fee application, the Fee Examiner's estimate has formed the basis of discussions.

| Firm | Hours | Undiscounted Charge to Estate |
|---|---:|---:|
| Weil | 516.6 | $337,370 |
| Cravath | 1,581.20 | $1,274,315 |
| Baker | 496.1 | $223,992 |
| Milbank | 186.8 | $205,946 |
| Totals | 2,780.70 | $2,041,623 |
| Discounted by 50% | | **$1,020,812** |

Many other professionals are also billing for travel to and from San Francisco. The travel is not only from New York, but also from Florida, Ohio, Michigan, Illinois and other parts of California. Many firms charge not only for travelling to Court, but also for travelling between offices of the same firm.

2. The Fee Examiner's Position

The Fee Examiner does not object to billing while traveling if the professional is engaged in activity that benefits the estates. There are tasks that can be done while sitting, such as working on or reading briefs, studying financial projections, or other similar activities. The Fee Examiner also does not object to reasonable expense reimbursement for amounts paid to air carriers and other transportation companies.

What the Fee Examiner *does* object to is billing for travel time when the professional is doing nothing else for an estate. In this regard, the Fee Examiner understands non-working travel to be time spent in transit to an estate-related activity during which the professional does nothing

else related to the estate. It is sitting on a plane watching a movie while flying to San Francisco; it is billing time going cross-town to meet a client or a witness.

The Fee Examiner's Protocol states explicitly and succinctly that he will object to non-working travel. Section 5.1.8 of the Protocol states:

"Non-working travel time is not compensable. See ¶ 17 of the Local Guidelines."

The reference to the Local Guidelines was intentional. Paragraph 17 of the Local Guidelines states:

> **Airplane Travel Time** - Airplane travel time is not compensable, but work actually done during a flight is compensable. If significant airplane travel time is expected in a case, specific guidelines should be obtained for that case.[3]

This Court had indicated a possible modification of this prescription in its Practices and Procedures in Judge Montali's Court (July 2018). Section III.I of that document states:

> **Travel**: Judge Montali generally will allow up to two hours of compensation for non-working airplane travel time to account for inevitable delays for security and administration involved in air travel. Other air travel time is not likely to be compensable, as set forth in Guideline 17 of the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the United States Bankruptcy Court for the Northern District of California (available on the court's website)

Although this guideline states what "generally" will be allowed, no professional at this stage has adopted this two-hour standard in its applications. All have charged their full time, and then the firms have applied for half of the time billed, basing this reduction on asserted United States Trustee guidance, which the Fee Examiner does not believe exists, please see below.

---

[3] The Fee Examiner has also indicated in Section 5.2.2 of the Protocol that "Reasonable economy airfare (including "economy plus" or similar seating for transcontinental flights) is normal and reasonable." The designation of "economy plus" as reasonable was intended, in part, to permit traveling professionals to be able to have some additional room in which to work while flying long distances. After review of the expenses of many firms, however, it appears that many professionals are flying first class, and then writing down the expense. Such choices reinforce the availability of a space while traveling within which reasonable work can be done.

Building on these local rules and guidelines, the Fee Examiner has extended the limitation on non-working travel to any travel time (not just time traveling on planes) during which the professional is not engaged in matters related to these cases. The Protocol, however, does not incorporate the "general" two-hour allowance.

The Fee Examiner understands that his position is controversial and not supported by the majority of cases. See *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008) ("there is not a consensus regarding the billing of travel time under § 330"; and collecting cases); 3 Collier on Bankruptcy ¶ 330.03[16][b] (Henry Sommers & Richard Levin, eds., 16th rev. ed. 2019).

Nothing in any prior case or precedent, however, limits the discretion and authority of this court to construe what reasonable compensation is in these cases. For the reasons set forth below, the Fee Examiner believes that non-working travel should not be compensated.

3.   Non-Working Travel and Section 330(a)

As an initial matter, Section 330(a)(1) of the Code states that the Court may award "reasonable compensation for actual, necessary services." Non-working travel is not reasonable, for at least three reasons:

- it results in hidden increases to hourly rates,
- it compensates the attorney for opportunity cost, rather than for services rendered, and
- it is random in its application.

   a.   Hidden Increases in Hourly Rates

The hidden increase to hourly rates is patent. A task – a court appearance – will cost more per hour if the attorney is flying in from New York, than if the lawyer were in San Francisco to begin with. The hourly cost of the true benefit – the lawyer's actual court time – will not be the

lawyer's stated billing rate. It will have to be grossed-up to take into account the time to fly in and out of San Francisco. And with lawyers billing at $1,600 an hour, and with five-hour transcontinental flights, this could add as much as $16,000 to the cost of an appearance.

### b. Paying for Lost Opportunity Costs Is Not Beneficial to the Estate

Firms have argued that while engaged in travel, the attorney cannot work on other matters, or enjoy leisure time, and thus the lost opportunity costs for these travels should be a charge to the estate. But that argument fails to employ Section 330(a)'s true test: whether there is benefit to the estate. Under that standard, it is irrelevant that a lawyer or the lawyer's firm incurs lost opportunity cost.

### c. Non-Working Travel Time Calculation is Random with Respect to Benefit to the Estate

Finally, even if lost opportunity costs can justify some compensation for non-working travel, the tracking of that time is random. This lack of logic for billing travel time can be seen by examining one of the key assumptions: billing for travel time assumes that the professional would otherwise be billing for just the time traveled; not less or more. In short, there is no connection between the length of travel – which is what is being billed – and the loss of a professional to other endeavors. True opportunity costs would look to when the professional would otherwise end his or her billing day. No firm has provided that information.

It is also random in that billing for non-working travel picks out one activity – travel – and marks it for compensation simply because the lawyer is getting ready to do work that benefits the estate. The same logic that sustains allowing such compensation would also allow lawyers to charge for time for going and coming to work, especially if they are working exclusively on one case.

### 4. Other Justifications

Although paragraph 17 of the Local Guidelines offers professionals the option to suggest other rules or guidelines, no professional has brought to the Fee Examiner's attention any proposal for specific guidelines.

Rather, all professionals have offered that they will reduce non-working travel by 50%. The Fee Examiner rejects this offer. The 50% markdown is loosely defended as either "approved by the United States Trustee in other cases" or "a market-based charge." Neither justification is persuasive.

As far as the Fee Examiner can determine, the United States Trustee does not have a formal 50% discount provision. In its "Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013", the Office of the United States Trustee mentions "non-working travel," and leaves open the possibility that it could be allowed at discounted rates, but never sets a flat 50%, or any other number for that matter. *See* UST Guidelines ¶¶ B.2.k.; B.8.b.xvi.

Indeed, when challenged by a comment that the market permitted undiscounted hourly rates for non-working travel, the Guideline's response was that "These commenters did not provide any support for the contention that sophisticated clients routinely pay . . . full rates for non-working travel."

The United States Trustee has not communicated to the Fee Examiner any understanding or agreement to not object to full or discounted rates for non-working travel in this case. And, to the fee examiner's knowledge, no attorney professional has provided any indication that their

practices on non-working travel in this case is accepted by any, let alone all or even a majority, of their non-bankruptcy clients.

The Fee Examiner believes that the Local Guidelines should be followed. They were in place when all professional were hired, thus reducing or eliminating any reliance argument that professional may have that they expected a more favorable, set of standards.

**For the reasons outlined above, the Fee Examiner asks the Court to order that no compensation is allowed to professionals for non-working travel time.**

C) <u>Treatment of Redacted Time Entries</u>

A number of fee applicants have objected to the Fee Examiner's Protocol in that it disallows all time that is redacted. <u>See</u> Protocol at 5.1.4. The Fee Examiner believes such time can only be allowed when unredacted, or when, subject to appropriate confidentiality and privilege controls, the court (or designate) can review the substance of the redacted entry without destroying any claimed privilege.

The Fee Examiner has encouraged fee applicants to seek relief from this Court if they disagree with the Protocol. The Fee Examiner has also incorporated into the Protocol citation to <u>In re Las Vegas Monorail</u>, 458 B.R. 553 (Bankr. D. Nev. 2011). The Fee Examiner believes this opinion sets forth useful suggestions on obtaining approval of redacted time entries and expenses.

**The Fee Examiner asks this Court to Order that redacted time entries are not compensable unless and until they are unredacted, or the fee applicant has sought and obtained a Court order approving a different procedure, or unless the fee applicant and the Fee Examiner reach an agreement whereby the Fee Examiner can review the redacted time entries subject to an agreement which maintains confidentiality and privilege.**

D) <u>Compensation for Preparation of Employment Applications</u>

For the purposes of this Motion, the Fee Examiner is concerned with the fees incurred obtaining court approval of employment, and ongoing billing activities. The Fee Examiner assumes that other, related issues must be decided in the future, specifically fees incurred in the fee application process, fees incurred responding to objections and fees incurred responding to the Fee Examiner.

As regards employment applications, the Fee Examiner's position is that most billing matters are overhead, and ought not to be charged to the client. It is double-dipping to charge a client for charging a client. This is particularly the case with employment applications.

Although Section 330(a)(6) provides that "compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application," and thus at least impliedly authorizing charging the estate for a lawyer's billing, in this case firms have charged significantly large amounts related to the threshold act of employment of professionals. The following chart indicates the requests from the four major law firms for time related to Employment Applications and ongoing billing activities:

| **Firm** | **Hours** | **Fees** |
|---|---|---|
| Weil | 409.6 | $283,017 |
| Cravath | 671.10 | $480,411 |
| Baker | 823 | $796,780 |
| Milbank | 111.1 | $80,814 |
| Totals | 2,014.80 | $1,641,022 |

The Fee Examiner wants to make clear that not all of this time was incurred preparing employment applications. For example, as the Court may recall, Baker Hostetler incurred a substantial amount of time addressing disputes concerning the employment of a financial advisor. This makes the amount of time in this category unfairly lopsided as regards Baker Hostetler. However, the Fee Examiner does believe a substantial portion of the time reflected in this chart was incurred for preparation of employment applications and ongoing, routine billing matters, such as preparing fee applications and monthly statements- under the Interim Procedures Order, and reviewing the fees of other professionals.

The Fee Examiner objects to the majority of this time as unnecessary. It is particularly troublesome if the firm had previously represented the client prepetition. In these cases, all issues of conflicts should already have been addressed and resolved.

This Court's chambers guidelines are clear that such activity typically should not be allowed. Section III.I. of this Court guides states:

> **Conflicts Checks/Ethical Walls/Change of Firms**: Judge Montali expects counsel to write off, and will normally disallow, time spent identifying, clearing and avoiding conflicts and complying with FRBP 2014(a). Such time is similar to a firm absorbing the time expended on its own efforts to secure a new client, which Judge Montali doubts any professional would bill. . . .

The Fee Examiner is aware that in order to satisfy the requirements of Section 327, both diligence and effort are required, and thus in a case of this size would allow some compensation in order to account for the magnitude of diligence. But not at the levels charged. As a result, the Fee Examiner requests the Court to set presumptive guidelines on billing for retention and billing activities.

Given the diversity of professionals, and their prior experience with the debtors, the Fee Examiner would request a ruling that the presumptively reasonable charge for retention should be

no more than the blended hourly rate for the firm (if the firm partner to associate ratio was 33%) times 40 hours. One person working full time for a week. Amounts above that (or, from the Fee Examiner's perspective, below that) are simple overhead for a firm. These costs are best categorized as a cost of doing business, not unlike the computer used to generate the billing itself, that the firm should absorb.

In a similar fashion, the Fee Examiner believes that ongoing billing activities, such as preparing fee applications and monthly statements, should be limited to a monthly maximum equal to the blended hourly rate times 20 hours. A reasonably organized firm (and the rates charged by the firms in this case are rates that only a reasonably organized firm should charge) should not take more than half a week to prepare a bill, and to monitor other firms' billing activities.

The Fee Examiner requests the Court order these as presumptions. Some cases, especially for Committee Counsel, may warrant additional time. But it should be the applicant's burden to justify the necessity for exceeding the presumptive amount. And that justification has to be more than simply "the time was spent." The estates are entitled to know why excessive time was spent, and to be provided with a reasonable and supportable justification for the excess.

## V. SUMMARY

**Wherefore, in light of the foregoing, the Fee Examiner asks the Court to order as follows:**

As to any currently pending interim fee application (defined as any interim fee application filed before October 8, 2019);

- Only the Fee Examiner shall have authority to set a hearing date, and such dates

shall be set under the provisions of Paragraph 9 of the Order Appointing Fee Examiner, i.e., after a final report, in coordination with the Debtors counsel, and grouped to advance judicial economy.

- If a fee applicant and the Fee Examiner have reached a compromise, then a hearing should be set on the same basis and be coordinated so that hearings are grouped to advance judicial economy.

As to future cycles of interim fee applications, the following procedures should be ordered;

- Interim fee applications shall be considered every four months, as provided for in the Interim Procedures Order. Under that order the first interim fee applications were to be filed July 15, 2019. Future interim applications may be filed at four month intervals commencing with that date. The next opportunity to file an interim fee application shall be November 15, 2019, followed by March 15, 2019, and so on. These dates are to be considered deadlines. If an interim fee application is filed after the deadline, it will be deemed filed at the next interval.

- In the discretion of the Fee Examiner, the hearing dates on the interim applications will be grouped into three blocks as follows:

    o The "core" debtors' counsel and committee counsel (Keller Benvenutti, Weil Gotschal, Cravath, Milbank, and Baker Hostetler);

    o Debtors' other legal counsel subject to fee examination; and

    o Non-legal professionals.

- The Fee Examiner will determine when each block is set for hearing, attempting to do so in a manner respecting judicial economy and the efficient use of Fee Applicant's time.

The Fee Examiner asks this court to order that any interim award of fees to any fee applicant does not waive or otherwise limit the Fee Examiner's right to object at a future date

16 MOTION TO APPROVE FEE PROCEDURE

Case: 19-30088    Doc# 3950    Filed: 09/19/19    Entered: 09/19/19 18:34:46    Page 16 of 18

based upon his determination of duplication or overlap as between multiple firms.

The Fee Examiner asks the Court to order that no compensation is allowed to professionals for non-working travel time.

The Fee Examiner asks this Court to Order that redacted time entries are not compensable unless and until they are unredacted, or the fee applicant has sought and obtained a Court order approving a different procedure, or unless the fee applicant and the Fee Examiner reach an agreement whereby the Fee Examiner can review the redacted time entries subject to an agreement which maintains confidentiality and privilege.

The Fee Examiner asks the Court to Order that the fees incurred for the purpose of securing employment are presumptively limited to 40 hours billed at the firms blended hourly rate (assuming a partner to associate ratio of 33%, subject to adjustment to reflect the actual ratio). As for ongoing billing activities, these are limited to a monthly maximum of 20 hours billed at the firm's blended hourly rate (as defined in the preceding parenthetical).

DATED: September 19, 2019  SCOTT H. McNUTT

By: */s/ Scott H. McNutt*
Scott H. McNutt
Counsel to the Fee Examiner

EXHIBIT 1