**DIEMER & WEI, LLP**
Kathryn S. Diemer (#133977)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Telephone: 408-971-6270
Facsimile: 408-971-6271
Email: kdiemer@diemerwei.com

**WILLKIE FARR & GALLAGHER LLP**
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Benjamin P. McCallen (*pro hac vice*)
Daniel I. Forman (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
       jminias@willkie.com
       bmccallen@willkie.com
       dforman@willkie.com

*Counsel for Ad Hoc Group of Subrogation Claim Holders*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>     -and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>               **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the lead case, No. 19-30088 (DM)* | Chapter 11<br>Bankr. Case No. 19-30088 (DM)<br>(Jointly Administered)<br><br>**REPLY OF THE AD HOC GROUP OF SUBROGATION CLAIM HOLDERS TO THE STATUS CONFERENCE STATEMENT OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS**<br><br>Date:    September 24, 2019<br>Time:   9:30 a.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>            Courtroom 17, 16th Floor<br>            San Francisco, CA 94102 |

The Ad Hoc Group of Subrogation Claim Holders (the "**Ad Hoc Subrogation Group**") in the above-captioned chapter 11 cases of PG&E Corporation and Pacific Gas and Electric Company (collectively, "**PG&E**"), by its attorneys Willkie Farr & Gallagher LLP and Diemer & Wei, LLP, hereby submits this reply (the "**Reply**") in response to assertions made by the Official Committee of Tort Claimants (the "**TCC**") in its filing styled "Status Conference Statement" [Docket No. 3931] ("**TCC Statement**"). The TCC Statement, which is a reaction to an agreement in principle between the Ad Hoc Subrogation Group and PG&E (the "**Proposed Settlement**"), inappropriately invites the Court to address arguments that the TCC is raising for the first time, divorced from any pending motion. This Reply briefly addresses some of those arguments to point out their most obvious flaws and inconsistencies, but the Ad Hoc Subrogation Group reserves the right to respond in more detail should any of the issues prematurely raised in the TCC Statement become ripe for adjudication.

On September 13, 2019, the Ad Hoc Subrogation Group announced the Proposed Settlement, which paves the way for all the claim holders in these bankruptcy cases to be fully compensated, including the wildfire victims. Under the terms of the Proposed Settlement, which remains subject to definitive documentation and court approval, PG&E would pay $11 billion to resolve the Ad Hoc Subrogation Group's claims, far less than the approximately $20 billion that members hold in unsecured claims against PG&E arising from insurance payments that have been made and will be made to wildfire victims. This substantial discount, which is being offered by the stakeholders that already have contributed most significantly to compensating wildfire victims, should facilitate PG&E's ability to provide additional compensation to victims, regardless of whether they were insured.

Central to the Proposed Settlement—which the parties expect will be filed with the Court for approval shortly—is that the wildfire victims must be made whole. As will become clear once this filing occurs, in the event wildfire victims do not receive the full estimated value of their claims against PG&E, or that PG&E is rendered insolvent because of its wildfire liabilities, the Proposed Settlement can be terminated by the Ad Hoc Subrogation Group. The Proposed Settlement dramatically advances PG&E's reorganization through resolving the claims of one of the two

impaired creditor classes in these cases, and creates opportunity for the members of the other impaired class to have their claims paid in full. Thus it comes as no surprise that the Proposed Settlement reportedly has been characterized as a step in the right direction by an attorney who represents thousands of wildfire victims.[1]

Nevertheless, before the Ad Hoc Subrogation Group and PG&E even submitted the Proposed Settlement to this Court, the TCC began attacking it. The TCC principally argues that California's made-whole rule prohibits the Ad Hoc Subrogation Group from settling their claims with PG&E until all of the wildfire victims are made whole for all losses associated with the wildfires, including uninsured losses, such as emotional distress damages. *See* TCC Statement at 3-4. The TCC goes on to argue that treating the Subrogation Claims on equal priority with the wildfire victims violates the "absolute priority" rule of section 1129(b) because the made-whole rule subordinates most or all Subrogation Claims to all claims of wildfire victims who have not yet been made whole. *See id.* at 4.

As an initial matter, these arguments are entirely premature. The Proposed Settlement is not yet before the Court, and the Court has not resolved any of the wildfire victims' claims. Therefore, there is no record upon which any individual claimants could argue that they have not been made whole. But even in the unlikely event that the made-whole exception applies at all,[2] the TCC misstates the law in California, as the very case that the TCC cites for this proposition, *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010), makes clear.

*Chandler*, the only decision cited by the TCC on the made-whole rule, confirms that the rule has no application in the circumstances present here. *Id*. In *Chandler*, an insured driver, who had received reimbursement from an insurer for costs associated with a car accident but had suffered additional

---

[1] "The Latest: Victims' attorney: PG&E $11B settlement positive," The Associated Press (Sept. 13, 2019, 4:14pm), https://www.sanluisobispo.com/news/business/article235067667.html.

[2] The TCC argues that two exceptions to the applicability of the made-whole rule exist. TCC Statement at 4, n.2. As will be demonstrated once this issue is properly before this Court, the second of those exceptions will apply here because the insurers took an active leadership role and participated in litigation against PG&E. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1118 (9th Cir. 2010) ("[T]he made-whole rule does not apply if the insurer participates in prosecuting the claim against the third-party tortfeasor").

uncovered losses, sued the insurer for settling its subrogation claim against the third-party tortfeasor before the insured driver had been made whole. *See id.* at 1116. The driver argued that under the made-whole doctrine his insurer was not permitted to settle with the third-party tortfeasor until he had been reimbursed for all of his losses. *Id.*

Applying California law, the Ninth Circuit rejected the insured's argument, holding that an insurer may recover from the tortfeasor, and has no obligation to make the policyholder whole out of reimbursement proceeds, "unless and until" the insured attempts and fails to recover from the tortfeasor. *Id.* In reaching its decision, the Ninth Circuit expressly adopted the decision of the New York Court of Appeals in *Winkelmann v. Excelsior Ins. Co.*, 650 N.E.2d 841, 845 (N.Y. 1995), which held that "the insurer need not delay its subrogation claim against the third party to avoid impairing the insured's rights." *Chandler*, 598 F.3d at 1119. *Chandler* thus confirms that the made-whole rule does not establish an "absolute priority rule" that prevents the Ad Hoc Subrogation Group from settling before the wildfire victims are made whole, as the TCC contends. *See* TCC Statement at 3. On the contrary, *Chandler* expressly *permits* the Ad Hoc Subrogation Group to settle its subrogation claims with PG&E (and receive the settlement proceeds under a plan) before the wildfire victims' recovery has been established, and it also makes clear that the made-whole exception has no application when the individual claimants have not "sufficiently established," as to any particular subrogation claim, that they have attempted to but failed to recover their underinsured losses from PG&E. *Id.* at 1123.

The TCC has made no showing that the Proposed Settlement forecloses the possibility that the individual wildfire claimants will be made whole. As the TCC acknowledges, any made-whole obligation is limited to the obligation of an *individual* property insurer to its *individual* insured, solely as to the insurer's subrogation claim arising from payments to that insured. *See* TCC Statement at 4. There is no general subordination of the subrogation claims of all insurers to the tort claims of all insureds (let alone to claims of uninsured parties, as many of the TCC's claimants are). Accordingly, resolving whether and to what extent the made-whole rule would apply (in the unlikely event that it applied at all) would require an individualized, claimant-by-claimant analysis—one that cannot take

3

place until individual wildfire victims' losses are determined and until it is clear that they have not been, and will not be, compensated for their losses.[3]

The TCC's argument that the Proposed Settlement violates the absolute priority rule is equally without merit. Never before in these proceedings has the TCC argued to the Court that payments to the Ad Hoc Subrogation Group in the context of a confirmable plan would violate the absolute priority rule. The TCC did not raise absolute priority concerns when the Ad Hoc Subrogation Group filed a term sheet for a proposed plan that would have included payments to the subrogation claimants. Nor did it raise such concerns when the bondholders filed a term sheet for their first proposed plan that included separate treatment for the two classes of wildfire claimants. This omission is hardly surprising; the issue under made-whole is, at most, whether the subrogation claim of an individual insurer arising out of payments to an individual insured is subordinated to that individual insured's claims against the tortfeasor.[4] There is no "absolute priority" issue here, because "absolute priority" deals with the priority of one class of claims or interests over another class—typically, the priority of creditors over equity. Indeed, the very statutory provision on which the TCC relies for its "absolute priority" argument—section 1129(b) of the Code—is phrased in terms of classes. No such issue of "class" priority exists here, because the class of subrogated insurer claims is not subordinated to any class of claims of insureds.

Finally, there is no reason for the TCC to raise its concerns about made whole or the absolute priority rule now. Because PG&E's Plan proposes a recovery for PG&E's current equity, it will not be confirmable unless each class of wildfire claims either receives the full value of the claims in the class, or votes as a class in favor of the Plan. If there is a dissenting class of wildfire claims at

---

[3] Apparently recognizing these facts, the TCC asserts that a misconception among insured wildfire victims may be leading to an erroneously low volume of wildfire claims filed against PG&E. *See* TCC Statement at 5-6. As an initial matter, if fewer proofs of claim have been filed to date than expected, that is not necessarily surprising as the overwhelming majority of claims routinely are filed in the few days prior to the bar date. In addition, it is known that thousands of wildfire victims are represented by the very same counsel who are actively participating in these cases, and are presumably advising the victims of their rights. In any event, the TCC cites no facts or authority (nor are there any) to conclude that the TCC's speculative assertions provide a basis for subordinating $20 billion dollars in claims by the subrogation parties.

[4] The Ad Hoc Subrogation Group does not concede that the made-whole rule, if it applies to the claims asserted by the subrogation claimants, would operate to subordinate such claims in the context of a Chapter 11 plan.

4

confirmation, the Court will have to determine that such class will be paid in full before the equity holders retain any interest in the reorganized PG&E.

In short, the Proposed Settlement complies with California's made-whole rule and absolute priority rule of section 1129(b) precisely because the settlement is premised upon the wildfire victims being paid in full.

Dated: September 21, 2019

**WILLKIE FARR & GALLAGHER LLP**

/s/ *Benjamin P. McCallen*
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Benjamin P. McCallen (*pro hac vice*)
Daniel I. Forman (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
jminias@willkie.com
bmccallen@willkie.com
dforman@willkie.com

**DIEMER & WEI, LLP**
Kathryn S. Diemer (#133977)
100 West San Fernando Street, Suite 555
San Jose, CA 95113
Telephone: (408) 971-6270
Facsimile: (408) 971-6271
Email: kdiemer@diemerwei.com

*Counsel for Ad Hoc Group of Subrogation Claim Holders*