WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br>**PG&E CORPORATION,**<br>- and -<br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DEBTORS' STATUS CONFERENCE STATEMENT**<br><br>Date: September 24, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102 |

PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases, hereby submit this statement in connection with the status conference to be held on September 24, 2019, and in reply to the *Status Conference Statement of the Official Committee of Tort Claimants*, filed on September 18, 2019 [Dkt. No. 3931].

On September 9, 2019, the Debtors filed their *Joint Chapter 11 Plan of Reorganization* [Docket No. 3841]. The filing of the Plan was an important step in the process toward compensating wildfire victims and emerging from Chapter 11 by June 30, 2020, as required under AB 1054 for PG&E's participation in California's newly-established wildfire insurance fund. The Debtors' Plan is confirmable, it complies with the Bankruptcy Code, and it satisfies the requirements of AB 1054.

Since filing the Plan, the Debtors have continued to make significant progress in these cases. On September 13, 2019, the Debtors announced an agreement in principle with the Ad Hoc Group of Subrogation Claim holders, which represents holders of approximately 85% of the insurance subrogation claims related to the 2017 and 2018 Northern California Wildfires (the "**Wildfires**"), to resolve their claims pursuant to the Plan for the aggregate amount of $11 billion. Over this past weekend, the Debtors executed definitive settlement documentation with the subrogation claim holders, and this morning the Debtors filed the Debtors' *First Amended Joint Chapter 11 Plan of Reorganization* [Dkt. No. 3966] (the "**First Amended Plan**"), which incorporates that settlement. The agreement with the subrogation claim holders follows the June 19, 2019, settlement between the Debtors and 18 public entities in the areas affected by the Wildfires to resolve their claims for a total of $1 billion, also to be implemented pursuant to the First Amended Plan. The Debtors remain committed to working with the TCC and the individual wildfire claimants to fairly and reasonably resolve their claims and, as the Court is aware, estimation proceedings concerning those claims are now taking place in the District Court.

The Debtors also announced this morning that they have received aggregate equity commitments in excess of their $14 billion target amount from a broad array of investors, including current shareholders. (*See* Sept. 23 Press Release, attached hereto as Exhibit A.) Those equity

commitments will serve as the foundation for the equity portion of PG&E's exit financing package that will fund the First Amended Plan and PG&E's successful emergence from Chapter 11.

The purpose of the September 24 status conference, as this Court explained at the hearing on August 27, is to address procedural matters associated with the Debtors' Plan. (*See* Aug. 27 Hr'g Tr. at 166:19-24 ("I'm not inviting anybody to do anything. I'm sure those who want to take [the Debtors' plan] and criticize it can do so, but at our follow-up status conference my intention then will be to hear where we go from there in terms of procedural settings").) This Court further indicated that it would not expect any filings in connection with this status conference (*id.* at 126:5) and also stated: "And I know you're going to want to ask to deal with the exclusivity issue. I wouldn't worry about that for now. If [the Debtors] file the plan in the manner that we have discussed, [they]'ve met that benchmark, and that triggers [their] next grace period under the statute." (*Id.* at 167:5-9 .)

As the Court is aware, on September 19, the Ad Hoc Committee of Senior Unsecured Noteholders (the "**Ad Hoc Committee**") led by Elliott Management Corporation, and the Official Committee of Tort Claimants (the "**TCC**") filed a joint motion to terminate the Debtors' exclusivity periods (the "**Second Exclusivity Motion**") so that they may file an alternative plan of reorganization (the "**Elliott Plan**"). [Dkt. No. 3940.] The Second Exclusivity Motion also includes the TCC new contention that the fire claims are "valued at $24 billion" in the aggregate [Dkt. No. 3941 at 2], down $30 billion from the TCC's previous unsupported assertion that the value of those claims "exceed[s] $54 billion" [Dkt. No. 2855 at 19]. This Court declined those parties' request to have the Second Exclusivity Motion heard at tomorrow's status conference, however, explaining that there "is simply not enough time for the court to study and understand the details of the request and opposition, nor for the Debtors to prepare a meaningful response." [Dkt. No. 3947 at 2.] The Court instead scheduled a hearing on the Second Exclusivity Motion for October 8, 2019.

The Debtors will address the fundamental flaws with the Elliott Plan at the appropriate time. As the Court has made clear, the September 24 status conference on the Debtors' Plan is not an appropriate forum for addressing the Elliott Plan or the Second Exclusivity Motion, which are scheduled to be heard on October 8.

Lastly, the TCC's argument that the make-whole doctrine permits or requires the subordination of subrogation claims to individual claims has no merit whatsoever. In the first place, under the Debtors' plan, all individual fire claims will be satisfied in full "in the amounts agreed upon in any pre-insolvency proceeding settlement agreements or any post-insolvency settlement agreements, authorized by the court through an estimation process or otherwise allowed by the court," as required by AB 1054. In other words, all fire claimants will be made whole. Even if that were not the case, as explained in the Reply of the Ad Hoc Group of Subrogation Claim Holders [Dkt. No. 3961], the made-whole obligation is limited to the obligation of an *individual* property insurer to its individual insured for claims arising out of its payments to that insured, and the TCC cites no authority, because there is none, to suggest that there may be a wholesale general subordination of subrogation claims of *all* insurers to the tort claims of *all* insureds, as well as to the claims of individuals who were uninsured. For these and a host of other reasons, the TCC's arguments that all subrogation claims must be subordinated to individual claims are inconsistent with state and federal law.

* * *

The Debtors look forward to addressing any questions the Court may have related to the Debtors Amended Plan at tomorrow's status conference.

Dated: September 23, 2019

**WEIL, GOTSHAL & MANGES LLP**
**CRAVATH, SWAINE & MOORE LLP**
**KELLER & BENVENUTTI LLP**

/s/ *Stephen Karotkin*

Stephen Karotkin

*Attorneys for Debtors and Debtors in Possession*