WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**In re:**

**PG&E CORPORATION,**

**- and -**

**PACIFIC GAS AND ELECTRIC COMPANY,**

**Debtors.**

☐ Affects PG&E Corporation
☐ Affects Pacific Gas and Electric Company
☒ Affects both Debtors

** All papers shall be filed in the Lead Case, No. 19-30088 (DM).*

Bankruptcy Case No. 19-30088 (DM)

Chapter 11

(Lead Case)
(Jointly Administered)

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 1121(d) TO FURTHER EXTEND EXCLUSIVE PERIODS**

**("SECOND EXCLUSIVITY EXTENSION MOTION")**

Date: October 23, 2019
Time: 10:00 a.m. (Pacific Time)
Place: United States Bankruptcy Court
Courtroom 17, 16th Floor
San Francisco, CA 94102
Objection Deadline: October 16, 2019, 4:00pm (Pacific Time)

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), for a further extension of (a) the Exclusive Filing Period (as defined below) to and including November 29, 2019, and (b) the Exclusive Solicitation Period (as defined below) to and including January 28, 2020, without prejudice to the Debtors' right to seek additional extensions of such periods.[1]

In support of this Motion, the Debtors submit the *Declaration of John Boken In Support of Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) to Further Extend Exclusive Periods* (the "**Boken Declaration**") filed contemporaneously herewith. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Order**").

[1] Pursuant to the Second Amended Order Implementing Certain Notice and Case Management Procedures [Docket No. 1996] (the "**Case Management Order**"), if a motion to extend the time to take any action is filed consistent with the Case Management Order before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"), or the provisions of any Order entered by the Court, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## TABLE OF CONTENTS

I. JURISDICTION ....................................................6

II. BACKGROUND ....................................................6

III. PRELIMINARY STATEMENT ....................................................6

IV. RELIEF REQUESTED....................................................7

V. BASIS FOR RELIEF REQUESTED ....................................................8

A. (i) The Debtors' Chapter 11 Cases Are Large and Complex, (ii) Considerable Good Faith Progress Has Been Made to Achieve the Objectives of Chapter 11, and (iii) There Has Not Been Sufficient Time to Permit the Debtors to Prosecute Their Chapter 11 Plan....................................................12

B. The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands. ....................................................14

C. The Debtors Are Making Required Postpetition Administrative Expense Payments As They Come Due and Have the Ability to Continue to Do So....................................................14

VI. CONCLUSION....................................................15

VII. NOTICE....................................................15

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*, 352 B.R. 578 (Bankr. S.D.N.Y. 2006) ............ 10, 11, 14

*In re Borders Grp., Inc.*, 460 B.R. 818 (Bankr. S.D.N.Y. 2011) ............ 10

*In re Catholic Bishop of N. Alaska*, No. F08-00110-DMD, 2009 WL 8412171 (Bankr. D. Alaska Sept. 11, 2009) ............ 11

*In re Covus Corp.*, 122 B.R. 685 (Bankr. E.D. Va. 1991) ............ 9

*In re Dow Corning Corp.*, 208 B.R. 661 (Bankr. E.D. Mich. 1997) ............ 10

*In re Express One Int'l, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996) ............ 10, 11

*In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. 444 (B.A.P. 9th Cir. 2002) ............ 10

*In re Hermanos Torres Perez, Inc.*, 491 B.R. 316 (Bankr. D.P.R. 2010) ............ 9

*In re McLean Indus., Inc.*, 87 B.R. 830 (Bankr. S.D.N.Y. 1987) ............ 11

*In re New Meatco Provisions, LLC*, No. 2:13-BK-22155-PC, 2014 WL 917335 (Bankr. C.D. Cal. Mar. 10, 2014) ............ 11

*In re Texaco Inc.*, 76 B.R. 322 (Bankr. S.D.N.Y. 1987) ............ 12, 14

*In re United Press Int'l, Inc.*, 60 B.R. 265 (Bankr. D.D.C. 1986) ............ 9, 11

**Statutes**

28 U.S.C. §§ 157 and 1334 ............ 6

28 U.S.C. § 157(b) ............ 6

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

28 U.S.C. §§ 1408 and 1409 .......... 6

Bankruptcy Code sections 1107(a) and 1108 .......... 6

Bankruptcy Code section 1121 .......... 7, 9, 10, 14

Bankruptcy Code Section 1121(b) .......... 7, 9

Bankruptcy Code Section 1121(c) .......... 7, 9

Bankruptcy Code section 1121(d) .......... 7, 8, 9, 10

**Other Authorities**

Bankruptcy Rule 1015(b) .......... 6

Bankruptcy Rule 2002 .......... 15

H.R. Rep. No. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 .......... 10, 12

Local Rule 5011-1(a) .......... 6

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D Cal) .......... 6

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**TCC**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

### III. PRELIMINARY STATEMENT

By Order dated May 23, 2019 [Docket No. 2226] (the "**Extension Order**"), the Court extended the Debtors' Exclusive Filing Period to September 26, 2019, and extended the Debtors' Exclusive Solicitation Period to November 26, 2019, in each case, without prejudice to the Debtors' right to seek further extensions of such periods.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

On September 9, 2019, the Debtors filed the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 3841]. On September 23, 2019, the Debtors' filed the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 3966] (as may be further amended, modified, or supplemented, the "**Plan**"). Although the exclusive period to file a chapter 11 plan under section 1121 of the Bankruptcy Code remains in effect, out of an abundance of caution, the Debtors are seeking a further extension of the Exclusive Periods as they continue to prosecute their Plan. The Debtors, of course, are aware of the pending motion filed by the Ad Hoc Committee of Senior Unsecured Noteholders of the Utility and the TCC to terminate exclusivity. This Motion is not intended to circumvent that pending motion and the Debtors will respond separately to such motion.

The Debtors believe the relief being sought in this Motion is appropriate in view of the substantial progress that has been made in these cases, including the filing of the Plan, and in view of the issues that need to be addressed prior to Plan solicitation and a hearing on confirmation of the Plan.

## IV. RELIEF REQUESTED

Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**"). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has an exclusive period of 180 days after the commencement of the chapter 11 case to obtain acceptances of its plan (the "**Exclusive Solicitation Period**"). As provided in the Extension Order, the Debtors' Exclusive Filing Period and Exclusive Solicitation Period were extended to September 26, 2019 and November 26, 2019, respectively (together, the "**Exclusive Periods**"), without prejudice to the Debtors' right to seek further extensions of such periods.

The Debtors request, pursuant to section 1121(d) of the Bankruptcy Code, an extension of the

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Exclusive Filing Period to and including November 29, 2019, and the Exclusive Solicitation Period to and including January 28, 2020, without prejudice to the Debtors' right to seek additional extensions of such periods.

An extension of the Exclusive Periods in these large and complex Chapter 11 Cases as requested herein is appropriate, is in the best interests of the Debtors' economic stakeholders, and is consistent with the intent and purpose of chapter 11 of the Bankruptcy Code. Ample cause exists to grant the Debtors an extension of the Exclusive Periods as, *inter alia*, (i) the Debtors' cases are large and complex – the Utility is one of the largest electricity and natural gas utilities in the United States, with approximately 16 million customers, some 24,000 employees, approximately $51.7 billion in prepetition liabilities on a book value basis, and potentially thousands of claims arising out of or relating to the tragic and catastrophic wildfires that occurred in Northern California in 2017 and 2018; (ii) considerable good faith progress has been made in the administration of the Chapter 11 Cases – including, the filing of the Plan, which encompasses, among other things, two fundamental settlements – one with the Public Entities, and the second with the holders of Subrogation Claims with asserted claims in the approximate amount of $20 billion; and (iii) various issues need to be addressed, including determining the aggregate wildfire liabilities held by the constituency represented by the TCC to be treated in the Plan. These circumstances, in and of themselves, warrant a further extension of the Exclusive Periods.

The relief requested will allow the Debtors to continue to focus on preserving and enhancing going concern value and implementing a financial and operational restructuring that will result in a competitive and sustainable cost and capital structure and achieve the other objectives of these Chapter 11 Cases, including confirmation of the Plan by the June 30, 2020 deadline established in AB 1054.

## V. BASIS FOR RELIEF REQUESTED

Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. *See* 11 U.S.C. § 1121(d) ("on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

section"). However, the 120-day period "may not be extended beyond a date that is 18 months after the [commencement] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [commencement] date." *Id.* § 1121(d)(2).

The Exclusive Periods established by Congress were incorporated in the Bankruptcy Code to afford a debtor a full and fair opportunity to propose a chapter 11 plan and enable solicitation of acceptances of the plan without the deterioration and disruption of a debtor's business that might be caused by the filing of multiple competing plans. To terminate the Exclusive Periods in these Chapter 11 Cases at this juncture would be to defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, affording a debtor the full and fair opportunity to formulate and prosecute its proposed chapter 11 plan.

Courts have previously held that if a debtor timely files a plan within the Exclusive Filing Period, the debtor continues to maintain exclusivity throughout the Exclusive Solicitation Period and no other party may file a chapter 11 plan during that time. *In re Covus Corp.*, 122 B.R. 685 (Bankr. E.D. Va. 1991) ("If the debtor files a plan within the 120 day period, the debtor is given a period of 180 days, commencing on the date the order of relief is entered, during which the debtor may *solicit acceptances* of its plan. No other person may file a plan during such periods.") (emphasis in original); *In re Hermanos Torres Perez, Inc.*, 491 B.R. 316, 320 (Bankr. D.P.R. 2010) ("Sections 1121(b) and (c) of the Bankruptcy Code contains what is commonly referred to as the "exclusivity period" provisions in a Chapter 11 context. These sections codify those periods of time in which the debtor, and only the debtor, may file a Chapter 11 plan and/or solicit acceptance of the Chapter 11 plan. *Creditors and other parties in interest are barred from filing a competing plan during this time*.") (emphasis supplied); *In re United Press Int'l, Inc.*, 60 B.R. 265, 268 (Bankr. D.D.C. 1986) ("Thus, § 1121(c)(3) can and should be construed as if it read that the exclusive period ends if 'the debtor has filed a plan but that plan has not been accepted' within 180 days (or any extension thereof)."). The foregoing, of course, is consistent with the Extension Order, nevertheless, out of an abundance of caution, the Debtors seek a further extension of the Exclusive Periods pursuant to section 1121(d) as requested herein.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

As stated, section 1121(d) of the Bankruptcy Code empowers a Bankruptcy Court to extend the Exclusive Periods "for cause." The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension. The legislative history of section 1121 indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

In exercising its broad discretion, the Bankruptcy Court may consider a variety of factors to assess the totality of circumstances in each case. *See In re Henry Mayo Newhall Mem'l Hosp.,* 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002) ("The question [of § 1121(d) cause] is inherently fact-specific and calls for a delicate exercise of judgment about which seasoned judges could differ."); *In re Borders Grp., Inc.*, 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996). Those factors include, without limitation:

(i) the size and complexity of the debtor's case;

(ii) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii) the existence of good faith progress towards reorganization;

(iv) the fact that the debtor is paying its bills as they become due;

(v) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi) whether the debtor has made progress in negotiations with its creditors;

(vii) the amount of time which has elapsed in the case;

(viii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(ix) whether an unresolved contingency exists.

*In re New Meatco Provisions, LLC*, No. 2:13-BK-22155-PC, 2014 WL 917335, at *3 (Bankr. C.D. Cal. Mar. 10, 2014); *In re Catholic Bishop of N. Alaska,* No. F08-00110-DMD, 2009 WL 8412171, at *1 (Bankr. D. Alaska Sept. 11, 2009); *Adelphia Commc'ns*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *accord In re Express One*, 194 B.R. at 100 (identifying all of the nine factors as relevant in determining whether cause exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that debtor showed cause to extend exclusive period based upon certain of the nine factors). The exercise of the Court's discretion is not simply a check-off process, but is based upon the totality of the circumstances. The above factors are not the exclusive bases for the exercise of the Court's discretion to extend the exclusive periods, nor must they all be satisfied.

Application of the relevant standards to the indisputable facts of these Chapter 11 Cases demonstrates that more than ample cause exists to grant the Debtors' requested extensions of the Exclusive Periods. The extensions are necessary and appropriate in order for the Debtors to have the opportunity contemplated by the Bankruptcy Code to prosecute their Plan.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### A. (i) The Debtors' Chapter 11 Cases Are Large and Complex, (ii) Considerable Good Faith Progress Has Been Made to Achieve the Objectives of Chapter 11, and (iii) There Has Not Been Sufficient Time to Permit the Debtors to Prosecute Their Chapter 11 Plan.

It is well established that the size and complexity of a debtor's case alone may constitute cause to extend the Exclusive Periods. The legislative history provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963. Similarly, courts have recognized that "[t]he large size of a debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods." *In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

The size and complexity of, and legal issues involved in, these unprecedented Chapter 11 Cases themselves warrant a further extension of the Exclusive Periods as requested. As set forth above, these Chapter 11 Cases are among the largest chapter 11 filings in U.S. history. The Debtors employ approximately 24,000 employees and operate one of the largest electricity and natural gas utilities in the United States – servicing approximately 16 million customers throughout a 70,000-square-mile service area in northern and central California. The Debtors own and operate approximately 136 generating facilities, nine (9) natural gas compressor stations, over 120,000 circuit miles of electric transmission and distribution lines, and nearly 50,000 miles of natural gas transmission and distribution pipelines. The size and complexity of the Debtors' businesses, assets, regulatory framework, employee relationships, vendor relationships, and financing arrangements are self-evident. Moreover, in addition to managing and operating a vast business enterprise, the Debtors must address and resolve in the chapter 11 plan process, the potentially thousands of wildfire claims that have already been asserted and will be asserted against them.

During the initial stages of these Chapter 11 Cases, the Debtors' resources were devoted to successfully assuring a smooth transition into chapter 11 and minimizing the business disruptions normally attendant thereto, and maintaining relationships with the Debtors' business partners. The

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Court is well aware of the number of parties that have appeared in these Chapter 11 Cases, and the number of hearings and contested matters that have been held before the Court. Establishing a bar date and noticing procedures alone took several months, with the bar date being set for October 21, 2019, which the Debtors hope will provide additional pertinent information for the Debtors' Plan process.

Further, the Debtors have made substantial progress in the Plan process. As stated and as the Court is aware, the Debtors have achieved two critical settlements of their wildfire liabilities to be satisfied and discharged pursuant to their Plan. The first settlement fully resolves all of the wildfire claims held by the 18 settling Public Entities for the aggregate amount of $1 billion. The second settlement fully resolves all of the claims held by Subrogation Claimants in the asserted amount of approximately $20 billion for consideration in the amount of $11 billion, representing a 45% reduction.

Moreover, the Debtors filed their Plan on September 23, 2019. The Plan encompasses the two settlements discussed above and also is backed by equity commitments of at least $14 billion, which serve as the foundation for the equity portion of a comprehensive financing package that will fund the Plan and the Debtors' timely emergence from chapter 11. With the CPUC review process also underway, the Debtors' Plan is on track to meet the June 30, 2020 deadline imposed by AB 1054.

Nevertheless, as the Court has recognized, certain contingencies still exist that warrant the requested extensions. These include getting more clarity on the magnitude of the wildfire liabilities held by the constituency represented by the TCC to be addressed in the Plan. This is the subject of ongoing proceedings before the United States District Court, the California Superior State Court, as well as this Court. There are also certain other preliminary Plan-related issues raised by the Court, including whether wildfire claims asserted by certain public or private entities are subject to estimation, and postpetition interest rate and make-whole issues related to funded debt claims and their proposed treatment under the Plan. In light of these issues and contingences, the Court has appropriately recognized that filing a proposed Disclosure Statement with respect to the Debtors' Plan is still premature.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Simply stated, and as the Court has recognized, the Debtors have made substantial progress in the administration of these Chapter 11 Cases. The Exclusive Periods should be extended as requested so the Debtors can have the opportunity to continue this progress and achieve a timely and successful emergence from chapter 11.

**B. The Debtors Are Not Seeking to Use Exclusivity to <u>Pressure Creditors to Submit to the Debtors' Demands</u>.**

It is self-evident that the Debtors are not seeking these extensions to artificially delay the administration of these Chapter 11 Cases or to hold creditors hostage to an unsatisfactory plan proposal. Rather, the requested extensions recognize the current posture of these cases and the time needed for the Debtors to successfully complete their Plan process. The request for extending the Exclusive Periods is not a negotiation tactic, but rather a realistic assessment of the time necessary to, among other things, address the above-described issues so that the Plan solicitation process can appropriately commence,

Additionally, the extensions of the Exclusive Periods as requested will not prejudice any party in interest, but rather will afford the Debtors a realistic opportunity to timely confirm the Plan. Failure to extend the Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the Bankruptcy Code, *i.e.*, to provide the Debtors with a meaningful and reasonable opportunity to pursue a confirmable chapter 11 plan. Conversely, the termination of the Exclusive Periods and the threat of multiple plans would lead to unnecessary adversarial situations, a potential crisis in confidence among the Debtors' customers, employees, business partners, and other economic stakeholders, and the attendant deterioration in value of the Debtors' business enterprise, to the detriment and prejudice of all parties in interest. Further, termination of the Exclusive Periods likely would jeopardize meeting the June 30, 2020 AB 1054 deadline and the Debtors' ability to participate in the go-forward wildfire fund.

**C. The Debtors Are Making Required Postpetition Administrative Expense <u>Payments As They Come Due and Have the Ability to Continue to Do So</u>.**

Courts considering an extension of exclusivity also may assess a debtor's liquidity and ability to pay costs and expenses of administration. *See Adelphia Commc'ns*, 352 B.R. at 587; *Texaco*, 76

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

B.R. at 322. Here, the Debtors have obtained a $5.5 billion DIP facility, are current on payment of their postpetition obligations, and have sufficient liquidity to pay their undisputed administrative expenses in the ordinary course. As such, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of creditors or other parties in interest, and this factor weighs in favor of granting the relief requested.

## VI. CONCLUSION

The Debtors have responded to the exigent demands of these Chapter 11 Cases and have made substantial progress to advance the reorganization process. The Debtors should be afforded a full, fair, and reasonable opportunity to pursue and solicit acceptances of their Plan, as contemplated by chapter 11 of the Bankruptcy Code.

## VII. NOTICE

Notice of this Motion will be provided to (i) the Office of the U.S. Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to TCC; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court, other than the motion resulting in the Extension Order.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein for cause shown and as being in the best interests of their estates, creditors, shareholders, and all other parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

Dated: September 25, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

*/s/ Stephen Karotkin*
Stephen Karotkin

*Attorneys for Debtors and Debtors in Possession*

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119