BAKER & HOSTETLER LLP

Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone: (628) 208-6434
Facsimile: (310) 820-8859
Email: rjulian@bakerlaw.com
cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025
Telephone: (310) 820-8800
Facsimile: (310) 820-8859
Email: esagerman@bakerlaw.com
lattard@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

AKIN GUMP STRAUSS HAUER & FELD LLP

Michael S. Stamer (*pro hac vice*)
Ira S. Dizengoff (*pro hac vice*)
David H. Botter (*pro hac vice*)
Abid Qureshi (*pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: mstamer@akingump.com
idizengoff@akingump.com
dbotter@akingump.com
aqureshi@akingump.com

Ashley Vinson Crawford (SBN 257246)
580 California Street
Suite 1500
San Francisco, CA 94104
Telephone: (415) 765-9500
Facsimile: (415) 765-9501
Email: avcrawford@akingump.com

*Counsel to the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br><br>**NOTICE OF FILING OF AMENDED JOINT PLAN TERM SHEET** |

PLEASE TAKE NOTICE that on September 19, 2019, the Official Committee of Tort Claimants (the "TCC") in the above-captioned chapter 11 cases and the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company (the "Ad Hoc Committee") filed the *Joint Motion of the Official Committee of Tort Claimants and Ad Hoc Committee of Senior Unsecured Noteholders to Terminate the Debtors' Exclusive Periods Pursuant to Section 1121(d)(1) of the Bankruptcy Code* [Docket No. 3940] (the "Joint Exclusivity Termination Motion"). The TCC and Ad Hoc Committee's joint plan term sheet (the "Joint Plan Term Sheet") was attached as Exhibit B to the Joint Exclusivity Termination Motion.

PLEASE TAKE FURTHER NOTICE that at the status conference on September 24, 2019, the Court directed the Ad Hoc Committee to file an amended Joint Plan Term Sheet (the "Amended Joint Plan Term Sheet") by close of business on September 25, 2019.

PLEASE TAKE FURTHER NOTICE that attached hereto as **Exhibit A** is the Amended Joint Plan Term Sheet. A blackline version of the Amended Joint Plan Term Sheet, which identifies modifications made to the Joint Plan Term Sheet filed on September 19, 2019, is attached hereto as **Exhibit B**. The Amended Joint Plan Term Sheet is subject to TCC approval.

Dated: September 25, 2019

**BAKER & HOSTETLER LLP**

By: /s/ *Cecily A. Dumas*
  Robert A. Julian (SBN 88469)
  Cecily A. Dumas (SBN 111449)
  Eric E. Sagerman (SBN 155496)
  Lauren T. Attard (SBN 320898)

*Counsel to the Official Committee of Tort Claimants*

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: /s/ *Ashley Vinson Crawford*
  Ashley Vinson Crawford (SBN 257246)
  Michael S. Stamer (*pro hac vice*)
  Ira S. Dizengoff (*pro hac vice*)
  David H. Botter (*pro hac vice*)
  Abid Qureshi (*pro hac vice*)

*Counsel to the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company*

# **Exhibit A**

Amended Joint Plan Term Sheet

*THIS IS NOT A SOLICITATION OF A VOTE ON A PLAN OF REORGANIZATION. SUCH A SOLICITATION MAY ONLY OCCUR FOLLOWING APPROVAL BY THE BANKRUPTCY COURT OF A DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE*

*In re PG&E Corporation* **and** *Pacific Gas and Electric Company*

**Term Sheet for Plan of Reorganization**

September 25, 2019

This term sheet (the "**Term Sheet**") is proposed by the Official Committee of Tort Claimants (the "**TCC**") and the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company (the "**Ad Hoc Committee**") and sets forth certain of the principal terms and conditions for the proposed reorganization (the "**Reorganization**") of PG&E Corporation and Pacific Gas and Electric Company, each of which commenced cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") on January 29, 2019 (the "**Petition Date**"). The Reorganization contemplated herein shall be implemented pursuant to a proposed joint chapter 11 plan of reorganization (the "**Plan**").

**THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY PLAN, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, ONLY WILL BE MADE IN COMPLIANCE WITH APPLICABLE PROVISIONS OF ALL APPLICABLE LAW. THIS TERM SHEET DOES NOT ADDRESS ALL TERMS THAT WOULD BE REQUIRED IN CONNECTION WITH ANY POTENTIAL TRANSACTIONS REFERENCED HEREIN, AND THE ENTRY INTO OR THE CREATION OF ANY BINDING AGREEMENT IS SUBJECT TO THE EXECUTION OF DEFINITIVE DOCUMENTATION IN FORM AND SUBSTANCE CONSISTENT WITH THIS TERM SHEET AND OTHERWISE ACCEPTABLE TO THE AD HOC COMMITTEE AND/OR THE PG&E CORP. NEW MONEY COMMITMENT GROUP (AS DEFINED HEREIN).**

**THIS TERM SHEET IS BASED SOLELY ON PUBLICLY AVAILABLE INFORMATION.**

*THIS IS NOT A SOLICITATION OF A VOTE ON A PLAN OF REORGANIZATION.  SUCH A SOLICITATION MAY ONLY OCCUR FOLLOWING APPROVAL BY THE BANKRUPTCY COURT OF A DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE*

| PLAN OVERVIEW[1] | |
|---|---|
| **Debtors** | PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**" and together with PG&E Corp., the "**Debtors**").  Following the occurrence of the effective date of the Plan (the "**Effective Date**"), PG&E Corp. and the Utility will be referred to herein as "**Reorganized PG&E Corp.**" and the "**Reorganized Utility**," respectively, and collectively as the "**Reorganized Debtors**." |
| **Transaction Overview** | As set forth in greater detail herein, the Plan shall provide for: <br><br> • $29.2 billion in new money investments in exchange for common stock of Reorganized PG&E Corp. (representing approximately 59.3% of the outstanding common stock of Reorganized PG&E Corp. on a fully diluted basis), new debt of Reorganized PG&E Corp. and new debt of the Reorganized Utility, in each case as described herein; <br><br> • The proceeds of the new money investments shall be used to (a) pay in full outstanding DIP Financing Facility Claims (as defined below), (b) pay in full all Utility bond, term loan and revolving debt maturing prior to December 31, 2022[2], (c) fund the creation of two trusts for the purpose of paying certain fire claims related to those Northern California fires listed in **Schedule 1** attached hereto with $25.5 billion, consisting of $12.75 billion in cash and $12.75 billion in shares of common stock of Reorganized PG&E Corp. (at plan value), which will represent approximately 40.6% of the outstanding common stock of Reorganized PG&E Corp. on a fully diluted basis, (collectively, the "**Aggregate Fire Consideration**"), and (d) fund the Debtors' contribution of $5.0 billion, which amount consists of both the Debtors' initial and first annual contributions, to the long-term California statewide wildfire fund created for purposes of paying future utility-related wildfires in California (the "**Wildfire Fund**"); <br><br> • The two trusts to receive the Aggregate Fire Consideration will be  (i) a trust for the purpose of paying certain fire claims related to those Northern California fires listed in **Schedule 1** attached hereto (the "**Fire Victim Claims Trust**"), funded with $14.5 billion and certain other fire consideration as set forth herein to be contributed to the Fire Victim Claims Trust (collectively, the "**Aggregate Fire Victim Consideration**") and (ii) a trust for the purpose of paying insurance subrogation claims related to those Northern California fires listed in **Schedule 1** attached hereto (the "**Subrogation Claims Trust**"), funded with $11.0 billion (the "**Aggregate Subrogation Consideration**"); <br><br> • Reinstatement in full of the Long-Term Utility Unsecured Notes; and <br><br> • Payment of all trade claims in the ordinary course of business and assumption |

---

[1] This document is based on publicly available information regarding the Debtors as of June 25, 2019.  Certain of the terms for the Plan included herein are subject to change depending upon the Debtors' financial performance over the remainder of the Chapter 11 Cases including, but not limited, to its cash generation and borrowings under the DIP Financing Facility.

[2] Includes the Utility Unsecured Revolving Credit Facility Claims, Utility Unsecured Term Loan Claims, Short-Term Utility Unsecured Notes Claims and Utility Pollution Control Bond-Related Claims, each as defined below.

|  | and/or continuation of pension-related obligations. |
|---|---|

| PLAN TREATMENT OF PG&E CORP. AND UTILITY CLAIMS | |
|---|---|
| **Unclassified Claims** | |
| **Claim** | **Treatment** |
| **DIP Financing Facility Claims** | Each holder of a claim under the Senior Secured Superpriority Debtor-in-Possession Credit, Guaranty and Security Agreement, dated as of February 1, 2019 (the "DIP Financing Facility," and the claims arising thereunder, the "DIP Financing Facility Claims") shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such DIP Financing Facility Claim, payment in full in cash on the Effective Date. |
| **Administrative Expense Claims** | Each holder of an allowed administrative expense claim against the Debtors under section 507(a)(2) of the Bankruptcy Code (other than DIP Financing Facility Claims) (the "**Administrative Expense Claims**") shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Administrative Expense Claim, cash equal to the allowed amount of such Administrative Expense Claim on the later of (i) the Effective Date or as soon thereafter as is reasonably practicable, and (ii) the date such Administrative Expense Claim becomes an allowed Administrative Expense Claim or as soon thereafter as is reasonably practicable. |
| **Priority Tax Claims** | Each holder of an allowed claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the type specified in section 507(a)(8) of the Bankruptcy Code against any Debtor (the "**Priority Tax Claims**") shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Priority Tax Claim, (a) cash equal to the amount of such allowed Priority Tax Claim on the later of (i) the Effective Date or as soon thereafter as is reasonably practicable and (ii) the date such Priority Tax Claim becomes an allowed Priority Tax Claim or as soon thereafter as is reasonably practicable, or (b) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |

| PG&E Corp. Claims | | | |
|---|---|---|---|
| **Claim** | **Classification/Treatment/Voting** | **Estimated Allowed Claims** | **Estimated % Recovery** |
| **Class 1A: Other PG&E Corp. Priority Claims** | *Classification*: Holders of allowed claims against PG&E Corp. entitled to priority under section 507(a) of the Bankruptcy Code (other than DIP Financing Facility Claims, Administrative Expense Claims and Priority Tax Claims) (the "**Other PG&E Corp. Priority Claims**"). | [TBD] | 100% |

Case: 19-30088    Doc# 4006    Filed: 09/25/19    Entered: 09/25/19 17:09:17    Page 6 of 77

|  |  |  |  |
|---|---|---|---|
|  | ***Treatment***: Each holder of an allowed Other PG&E Corp. Priority Claim against PG&E Corp. shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other PG&E Corp. Priority Claim, (i) cash in an amount equal to such allowed claim on the Effective Date or as soon thereafter as is reasonably practicable, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.<br><br>***Voting***: Unimpaired – deemed to accept. |  |  |
| **Class 2A: Other PG&E Corp. Secured Claims** | ***Classification***: Holders of claims (other than DIP Financing Facility Claims) (the "**Other PG&E Corp. Secured Claims**") that are secured by valid, perfected and enforceable liens on property in which PG&E Corp. has an interest or that are subject to setoff pursuant to section 553 of the Bankruptcy Code.<br><br>***Treatment***: Each holder of an allowed Other PG&E Corp. Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other PG&E Corp. Secured Claim, (i) retention of its Other PG&E Corp. Secured Claim and any properly perfected and valid liens; (ii) payment in full in cash, including the payment of any interest allowed and payable under section 506(b) of the Bankruptcy Code, on the Effective Date or as soon thereafter as is reasonably practicable, or (iii) treatment of such allowed Other PG&E Corp. Secured Claim in any other manner that renders the claim unimpaired, including reinstatement under section 1124(2) of the Bankruptcy Code.<br><br>***Voting***: Unimpaired – deemed to accept. | [TBD] | 100% |
| **Class 3A: PG&E Corp. Unsecured Revolving Credit Facility Claims** | ***Classification***: Holders of claims arising under the Second Amended and Restated Credit Agreement, dated as of April 27, 2015, by and between PG&E Corp. and Citibank, N.A., as administrative agent (the "**PG&E Corp. Unsecured Revolving Credit Agreement**"), in the aggregate principal amount of up to $300 million (the "**PG&E Corp. Unsecured Revolving Credit Facility Claims**").<br><br>***Treatment***: On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed PG&E Corp. Unsecured Revolving Credit Facility Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such | Appx. $300 million | 100% |

4

| | | | |
|---|---|---|---|
| | allowed PG&E Corp. Unsecured Revolving Credit Facility Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the PG&E Corp. Unsecured Credit Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate.<br><br>*Voting*: Unimpaired – deemed to accept. | | |
| **Class 4A: PG&E Corp. Unsecured Term Loan Claims** | *Classification*: Holders of claims arising under the Term Loan Agreement, dated as of April 16, 2018, by and between PG&E Corp. and Mizuho Bank, Ltd., as administrative agent (the "**PG&E Corp. Unsecured Term Loan Credit Agreement**"), in the aggregate principal amount of $350 million (the "**PG&E Corp. Unsecured Term Loan Claims**").<br><br>*Treatment*: On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed PG&E Corp. Unsecured Term Loan Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed PG&E Corp. Unsecured Term Loan Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the PG&E Corp. Unsecured Term Loan Credit Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate.<br><br>*Voting*: Unimpaired – deemed to accept. | Appx. $350 million | 100% |
| **Class 5A: PG&E Corp. General Unsecured Claims** | *Classification*: Holders of general unsecured claims (other than Other PG&E Corp. Priority Claims, PG&E Corp. Unsecured Revolving Credit Facility Claims and PG&E Corp. Unsecured Term Loan Claims) against PG&E Corp. (the "**PG&E Corp. General Unsecured Claims**")<br><br>*Treatment*: Each holder of an allowed PG&E Corp. General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed PG&E Corp. General Unsecured Claim, cash in an amount equal to the allowed PG&E Corp. General Unsecured Claim, together with accrued and unpaid interest from the Petition Date through the Effective Date at the applicable contract rate or, in the absence of a contract rate, the Federal Judgement Rate, on the earlier of (i) | [TBD] | 100% |

5

| | | | |
|---|---|---|---|
| | the Effective Date or as soon thereafter as is reasonably practicable or (ii) as soon as reasonably practicable following the date such PG&E Corp. General Unsecured Claim becomes an allowed PG&E Corp. General Unsecured Claim.<br><br>***Voting:*** Unimpaired – deemed to accept. | | |
| **Class 6A: PG&E Corp. Intercompany Claims** | ***Classification:*** Claims held by the Utility or any non-Debtor affiliate of PG&E Corp. against PG&E Corp. (the "**PG&E Corp. Intercompany Claims**").<br><br>***Treatment:*** All allowed PG&E Corp. Intercompany Claims, if any, shall be reinstated, compromised or cancelled at the election of the Debtors (with the consent of the Ad Hoc Committee, not to be unreasonably withheld), such that the PG&E Corp. Intercompany Claims are treated in a tax-efficient manner.<br><br>***Voting:*** Unimpaired – deemed to accept. | [TBD] | 100% |
| **Class 7A: PG&E Corp. Preferred Interests** | ***Classification***: Holders of outstanding preferred interests in PG&E Corp. (the "**PG&E Corp. Preferred Interests**").<br><br>***Treatment***: Holders of allowed PG&E Corp. Preferred Interests shall retain ownership of all PG&E Preferred Interests in Reorganized PG&E Corp. (including any associated liquidation preference).<br><br>***Voting***: Unimpaired – deemed to accept. | N/A | 100% |
| **Class 8A: PG&E Corp. Common Interests** | ***Classification***: Holders of outstanding common interests in PG&E Corp. (the "**PG&E Corp. Common Interests**")<br><br>***Treatment***: Holders of allowed PG&E Corp. Common Interests shall retain ownership of all PG&E Corp. Common Interests in Reorganized PG&E Corp. (the "**Reorganized PG&E Corp. Common Stock**"), subject to dilution on account of the Reorganized PG&E Corp. Common Stock issued pursuant to the New Money Reorganized PG&E Corp. Common Stock Issuance.<br><br>***Voting***: Impaired – entitled to vote. | N/A | [TBD]% |

Case: 19-30088    Doc# 4006    Filed: 09/25/19    Entered: 09/25/19 17:09:17    Page 9 of 77

| | | | |
|---|---|---|---|
| | Each holder of a PG&E Corp. Common Interest shall have the opportunity to commit for its pro rata share of 5% of the PG&E Corp. New Money Investment (as defined herein). | | |

| Utility Claims | | | |
|---|---|---|---|
| **Claim** | **Classification/Treatment/Voting** | **Estimated Allowed Claims** | **Estimated % Recovery** |
| **Class 1B: Other Utility Priority Claims** | *Classification*: Holders of allowed claims against the Utility entitled to priority under section 507(a) of the Bankruptcy Code (other than DIP Financing Facility Claims, Administrative Expense Claims and Priority Tax Claims) (the "**Other Utility Priority Claims**"). <br><br> *Treatment*: Each holder of an allowed Other Utility Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other Utility Priority Claim, (i) cash in an amount equal to such allowed Other Utility Priority Claim on the Effective Date or as soon as practicable thereafter, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. <br><br> *Voting*: Unimpaired – deemed to accept. | [TBD] | 100% |
| **Class 2B: Other Utility Secured Claims** | *Classification*: Holders of claims (other than DIP Financing Facility Claims) that are secured by valid, perfected and enforceable liens on property in which the Utility has an interest or that are subject to setoff pursuant to section 553 of the Bankruptcy Code (the "**Other Utility Secured Claims**"). <br><br> *Treatment*: Each holder of an allowed Other Utility Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other Utility Secured Claim, (i) retention of its Other Utility Secured Claim and any properly perfected and valid liens, (ii) payment in full in cash, including the payment of any interest allowed and payable under section 506(b) of the Bankruptcy Code, on the Effective Date or as soon thereafter as is reasonably practicable, or (iii) treatment of such allowed Other Utility Secured Claim in any other manner that renders the Other Utility Secured Claim | [TBD] | 100% |

7

| | | | |
|---|---|---|---|
| | unimpaired, including reinstatement under section 1124(2) of the Bankruptcy Code. *Voting***:** Unimpaired – deemed to accept. | | |
| **Class 3B: Utility Unsecured Revolving Credit Facility Claims** | *Classification***:** Holders of claims arising under the Second Amended and Restated Credit Agreement, dated as of April 27, 2015, by and between the Utility and Citibank, N.A., as administrative agent (the "**Utility Unsecured Revolving Credit Agreement**"), in the aggregate principal amount of up to $3 billion (the "**Utility Unsecured Revolving Credit Facility Claims**"). *Treatment***:** On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Utility Unsecured Revolving Credit Facility Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Utility Unsecured Revolving Credit Facility Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the Utility Unsecured Revolving Credit Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate. *Voting***:** Unimpaired – deemed to accept. | Appx. $2.885 billion | 100% |
| **Class 4B: Utility Unsecured Term Loan Claims** | *Classification***:** Holders of claims arising under the Term Loan Agreement, dated as of February 23, 2018, by and between the Utility and The Bank of Tokyo-Mitsubishi UFJ, Ltd., as administrative agent (the "**Utility Unsecured Term Loan Agreement**"), in the aggregate principal amount of $250 million (the "**Utility Unsecured Term Loan Claims**"). *Treatment***:** On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Utility Unsecured Term Loan Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Utility Unsecured Term Loan Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the Utility Unsecured Term Loan Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate. | Appx. $250 million | 100% |

| | | | |
|---|---|---|---|
| | *Voting*: Unimpaired – deemed to accept. | | |
| **Class 5B: Short-Term Utility Unsecured Notes Claims** | *Classification*: Holders of claims arising under the notes (or the applicable indenture relating thereto) (the "**Short-Term Utility Unsecured Notes**" and the indentures, the "**Short-Term Utility Unsecured Notes Indentures**") maturing on or before December 1, 2022 (the "**Short-Term Utility Unsecured Notes Claims**"), identified in **Schedule 2** hereto.[3]<br><br>*Treatment*: On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Short-Term Utility Unsecured Notes Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Short-Term Utility Unsecured Notes Claim, cash in an amount equal to the sum of (i) outstanding principal and accrued and unpaid interest as of the Petition Date at the contract rate under the applicable Short-Term Utility Unsecured Notes or Short-Term Utility Unsecured Notes Indentures, (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate under the applicable Short-Term Utility Unsecured Notes or Short-Term Utility Unsecured Notes Indentures and (iii) any prepayment premium, makewhole or other similar call protection under the applicable Short-Term Utility Unsecured Notes or Short-Term Utility Unsecured Notes Indentures.<br><br>*Voting*: Unimpaired – deemed to accept. | Appx. $1.75 billion | 100% |
| **Class 6B: Long-Term Utility Unsecured Notes Claims** | *Classification*: Holders of claims arising under any notes (or the applicable indenture relating thereto) (the "**Long-Term Utility Unsecured Notes**" and the indentures, the "**Long-Term Utility Unsecured Notes Indentures**") maturing on or after January 1, 2023 (the "**Long-Term Utility Unsecured Notes Claims**"), identified in **Schedule 3** hereto.[4]<br><br>*Treatment*: On the Effective Date or as soon thereafter as is reasonably practicable, all Long-Term Utility | Appx. $15.8 billion | 100% |

---

[3]  If required, the Plan will provide subclasses for claims arising from each separate issuance of the Short-Term Utility Unsecured Notes.

[4]  If required, the Plan will provide subclasses for claims arising from each separate issuance of the Long-Term Utility Unsecured Notes.

Case: 19-30088    Doc# 4006    Filed: 09/25/19    Entered: 09/25/19 17:09:17    Page 12 of 77

| | | | |
|---|---|---|---|
| | Unsecured Notes shall be reinstated in full.  All Long-Term Utility Unsecured Notes Claims relating to (i) accrued and unpaid interest as of the Petition Date and (ii) accrued and unpaid interest from the Petition Date through the Effective Date, shall be paid in full in cash at the contract rate under the applicable Long-Term Utility Unsecured Notes or Long-Term Utility Unsecured Notes Indentures.<br><br>***Voting***: Unimpaired – deemed to accept. | | |
| **Class 7B: Utility Pollution Control Bond-Related Claims** | *Classification:* Holders of claims arising under (a) the Pollution Control Bonds issued by the California Pollution Control Financing Authority and the California Infrastructure and Economic Development Bank (the "**Utility Pollution Control Bonds**") or (b) related reimbursement obligations from certain letter of credit facilities (the "**PCB Revolving Facilities**") or reimbursement agreements with the Utility (the "**Reimbursement Agreements**") in the aggregate outstanding principal amount of $863 million (the "**Utility Pollution Control Bond-Related Claims**").<br><br>*Treatment:* On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Utility Pollution Control Bond-Related Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Utility Pollution Control Bond-Related Claim, cash in an amount equal to the sum of (i) outstanding principal and accrued and unpaid interest as of the Petition Date at the contract rate under the applicable Utility Pollution Control Bond, PCB Revolving Facility or Reimbursement Agreement, and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate under the applicable Utility Pollution Control Bond, PCB Revolving Facility, or Reimbursement Agreement.<br><br>***Voting***: Unimpaired – deemed to accept. | $863 million | 100% |
| **Class 8B: Utility Intercompany Claims** | *Classification:* Claims held by the PG&E Corp. or any non-Debtor affiliate of PG&E Corp. against the Utility (the "**Utility Intercompany Claims**").<br><br>*Treatment:* All allowed Utility Intercompany Claims, if any, shall be reinstated, compromised or cancelled at the election of the Debtors (with the consent of the Ad Hoc Committee, not to be unreasonably withheld), such that the Utility Intercompany Claims are treated in a tax-efficient manner. | [TBD] | 100% |

10

| | *Voting:* Unimpaired – deemed to accept. | | |
|---|---|---|---|
| **Class 9B: Fire Victim Claims** | *General Procedures:* With respect to all unsecured claims arising out of the prepetition Northern California wildfires and the Ghost Ship fire, including, but not limited to, any accrued and unasserted unsecured claims as of the Effective Date related to the Fires (as defined below), of individuals, businesses, insurance subrogation claimants, nonprofits, charities, and any federal, state and local entities (including governmental and regulatory authorities and agencies) for damages, losses, fines, penalties, punitive and/or exemplary damages, restitution, reimbursement, attorney's fees, costs and/or interest, declaratory and/or injunctive relief (the "**Fire Claims**"), the aggregate maximum amount of consideration to be paid in respect of all Fire Claims will be the Aggregate Fire Consideration.<br><br>The Reorganized Debtors will establish the Fire Victim Claims Trust which will be funded with the Aggregate Fire Victim Consideration and the assignment of rights, claims, and causes of action as described in the Means for Implementation section, including rights under certain 2015/2016 insurance policies of the Debtors. Notwithstanding any other provision herein, the rights in and/or proceeds of the Debtors' 2016 insurance policies that provide coverage to the Debtors in connection with the Ghost Ship fire shall be transferred to the Fire Victim Claims Trust solely for the benefit of victims of the Ghost Ship fire and shall not be used to pay any other allowed claims; provided, however, the parties shall work together to ensure that coverage under the Debtors' 2016 insurance policies shall be available to the Reorganized Debtors to pay claims not related to Ghost Ship.<br><br>The terms and conditions of the Plan and Aggregate Fire Victim Consideration provided to holders of Fire Claims represent a full and final settlement of the Fire Claims, once the Plan is approved, without regard to whether the allowed and/or filed amount of Fire Claims are in excess of or less than the amount of Aggregate Fire Victim Consideration.<br><br>**Fire Victim Claims** – Any Fire Claim that is not a Subrogation Fire Claim (as defined below) or Governmental Fire Claim (as defined below). | $Unknown | Unknown % |

| | | | |
|---|---|---|---|
| | *Treatment*: On the Effective Date, each holder of a Fire Victim Claim that has been allowed in accordance with the procedures for allowance and payment of such claims as set forth in the Means for Implementation section (an "**Allowed Fire Victim Claim**") shall be entitled to a claim against the Fire Victim Claims Trust in full and final satisfaction, compromise, settlement, release, and discharge of such claim.<br><br>Treatment under Class 9B shall exclude Subrogation Fire Claims and Governmental Fire Claims which shall be treated in Classes 10B and 11B respectively.<br><br>*Voting*: Impaired – entitled to vote. | | |
| **Class 10B: Subrogated Fire Claims** | *General Procedures:* The Reorganized Debtors will establish the Subrogation Claims Trust which will be funded with the Aggregate Subrogation Consideration.<br><br>The terms and conditions of the Plan and Aggregate Subrogation Consideration provided to holders of Subrogation Fire Claims (as defined below) represent a full and final settlement of the Subrogation Fire Claims, once the Plan is approved, without regard to whether the allowed and/or filed amount of Subrogation Fire Claims are in excess of or less than the amount of Aggregate Subrogation Consideration.<br><br>**Subrogation Fire Claims** – Any Fire Claim arising by way of subrogation under applicable law or contract on account of amounts incurred (paid and reserved) by an insurer under and pursuant to the terms and coverage provisions of a property & casualty insurance policy (a "**Subrogation Fire Claim**").<br><br>*Treatment:* On the Effective Date, each holder of a Subrogation Fire Claim that has been allowed in accordance with the procedures for allowance and payment of such claims as set forth in the Means for Implementation section (an "**Allowed Subrogation Fire Claim**") shall be entitled to a claim against the Subrogation Claims Trust in full and final satisfaction, compromise, settlement, release, and discharge of such claim. On the Effective Date, as part of the treatment afforded hereunder to the holders of Allowed Subrogation Fire Claims, the Reorganized Debtors shall pay or reimburse the members of the Ad Hoc Subrogation Group for the reasonable, documented and contractual professional fees and expenses of (i) Willkie Farr & Gallagher LLP, (ii) Rothschild & Co., | $11.0 billion | Unknown % |

| | | | |
|---|---|---|---|
| | (iii) Diemer & Wei LLP, (iv) Kekst and Company Incorporated d/b/a Kekst CNC and (v) Wilson Public Affairs up to an aggregate amount of $55 million (which shall include success fees, transaction fees or similar fees).<br><br>***Voting***: Impaired – entitled to vote. | | |
| **Class 11B: Governmental Fire Claims** | ***General Procedures:*** same as apply to Class 9B above.<br><br>The terms and conditions of the Plan and Aggregate Fire Victim Consideration provided to holders of Allowed Governmental Fire Claims represent a full and final settlement of the Allowed Governmental Fire Claims, once the Plan is approved, without regard to whether the allowed and/or filed amount of Allowed Governmental Fire Claims are in excess of or less than the amount of Aggregate Fire Victim Consideration.<br><br>**Governmental Fire Claims** – Any Fire Claim arising in any way from and asserted by a federal, state or local government entity under applicable law or contract.<br><br>***Treatment:*** On the Effective Date, each holder of a Governmental Fire Claim that has been allowed in accordance with the procedures for allowance and payment of such claims as set forth in the Means for Implementation section (an "**Allowed Governmental Fire Claim**") shall be entitled to a claim against the Fire Victim Claims Trust in full and final satisfaction, compromise, settlement, release, and discharge of such allowed claim.<br><br>***Voting***: Impaired – entitled to vote. | $Unknown | Unknown % |
| **Class 12B: Other Utility General Unsecured Claims** | ***Classification***: Holders of general unsecured claims (other than Other Utility Priority Claims, Utility Unsecured Revolving Credit Facility Claims, Utility Unsecured Term Loan Claims, Short-Term Utility Unsecured Notes Claims, Long-Term Utility Unsecured Notes Claims, Fire Claims, and Utility Workers' Compensation Claims) against the Utility (the "**Other Utility General Unsecured Claims**").<br><br>***Treatment***: Each holder of an allowed Other Utility General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other Utility General Unsecured Claim, cash in an amount equal to the allowed Other Utility General Unsecured Claim, | [TBD] | 100% |

| | | | |
|---|---|---|---|
| | together with accrued and unpaid interest from the Petition Date through the Effective Date at the applicable contract rate or, in the absence of a contract rate, the Federal Judgement Rate, on the earlier of (i) the Effective Date or as soon thereafter as is reasonably practicable or (ii) the date such Other Utility General Unsecured Claim becomes an allowed Other Utility General Claim or as soon thereafter as is reasonably practicable.<br><br>*Voting*: Unimpaired – deemed to accept. | | |
| **Class 13B: Utility Workers' Compensation Claims** | *Classification*: Holders of claims against the Utility by employees of the Utility for the payment of workers' compensation benefits under applicable law (the "**Utility Workers' Compensation Claims**").<br><br>*Treatment*: Each allowed Utility Workers' Compensation Claim shall be satisfied in full in the ordinary course of business at such time and in such manner as the Utility is obligated to satisfy such Utility Workers' Compensation Claim under applicable law.<br><br>*Voting*: Unimpaired – deemed to accept. | [TBD] | 100% |
| **Class 14B: Utility Preferred Interests** | *Classification*: Holders of outstanding preferred Interests in the Utility (the "**Utility Preferred Interests**")<br><br>*Treatment*: Holders of allowed Utility Preferred Interests shall retain ownership of all Utility Preferred Interests in the Reorganized Utility (including any associated liquidation preference).<br><br>*Voting*: Unimpaired – deemed to accept. | N/A | 100% |
| **Class 15B: Utility Common Interests** | *Classification*: PG&E Corp. as holder of all outstanding common Interests in the Utility (the "**Utility Common Interests**").<br><br>*Treatment*: The Reorganized PG&E Corp., as holder of the Utility Common Interests, shall retain ownership of all Utility Common Interests in the Reorganized Utility.<br><br>*Voting*: Unimpaired – deemed to accept. | N/A | 100% |

14

| MEANS FOR IMPLEMENTATION | |
|---|---|
| **Fire Victim Claims Trust** | On the Effective Date, the Reorganized Debtors will establish the Fire Victim Claims Trust. The Fire Victim Claims Trust will be funded with the Aggregate Fire Victim Consideration including the assignment of rights, claims, and causes of action as described below in the Means for Implementation section, including rights under certain 2015/2016 insurance policies of the Debtors.<br><br>As part of the Aggregate Fire Victim Consideration, the Debtors shall also assign to the Fire Victim Claims Trust any and all rights, claims, causes of action, and defenses related thereto related directly or indirectly to any of the prepetition fires listed in Schedule 1 (the "**Fires**") that the Debtors may have against any third party, including, without limitation, against vendors, suppliers, third party contractors and consultants (including those who provided services regarding PGE's electrical system, system equipment, inspection and maintenance of the system, and vegetation management), and current and former directors and officers of the Debtors (to be mutually agreed upon by the TCC and the Ad Hoc Committee and included as an annex to the Plan).<br><br>The Fire Victim Claims Trust shall be administered by a trustee (the "**Fire Victim Claims Trustee**") and governed by an oversight committee (the "**Fire Victim Claims Trust Oversight Committee**") selected by the TCC. An agreement (the "**Fire Victim Claims Trust Agreement**") shall establish and set forth the provisions of the Fire Victim Claims Trust. The Fire Victim Claims Trust Agreement shall be in form and substance reasonably acceptable to the TCC.<br><br>The Fire Victim Claims Trustee shall be selected by the TCC. The Fire Victim Claims Trust Oversight Committee shall consist of three members, which shall be selected by TCC.<br><br>The Fire Victim Claims Trustee and the Fire Victim Claims Trust Oversight Committee shall have the authority to retain any advisors for the purpose of carrying out their respective duties under the Fire Victim Claims Trust Agreement.<br><br>Allowance of Claims: The Fire Victim Claims Trust Agreement will provide procedures for the holders of Fire Victim Claims and Allowed Governmental Fire Claims to resolve their claims, at their respective option, via a settlement matrix or allowed claim requirements and procedures approved by the TCC and the Bankruptcy Court as part of plan confirmation, including mediation, streamlined binding arbitration procedures, or a jury trial to the extent a holder of Fire Victim Claims is entitled to such a trial. The Bankruptcy Court would retain jurisdiction over the Fire Victim Claims Trust, Fire Victim Claims Trustee, Fire Victim Claims Oversight Committee, and administration of the Fire Victim Claims Trust, subject to the terms of the Fire Victim Claims Trust Agreement, until the Fire Victim Claims Trust is terminated.<br><br>Payment of Claims and Reserve: Given that the amount of the Fire Victim Claims Trust is limited, the Fire Victim Claims Trustee shall provide for an appropriate payment reserve, in such trustee's reasonable business judgment, to ensure equal payment for all holders of Fire Victim Claims in accordance with applicable law. The |

Case: 19-30088    Doc# 4006    Filed: 09/25/19    Entered: 09/25/19 17:09:17    Page 18 of 77

|  |  |
|---|---|
|  | Fire Victim Claims Trustee shall release reserves only when appropriate and it is clear that claimants will receive equitable distributions as described below.

Unless otherwise ordered by the Bankruptcy Court, in order to maintain an appropriate reserve, the Fire Victim Claims Trustee shall pay one or more interim distributions on Allowed Fire Victim Claims, reserving a final distribution on such claims until the end of Fire Victim Claims Trust administration after equal percentage payments have been made on Allowed Fire Victim Claims.

In the event that there are remaining funds after payment of all claims of the Fire Victim Claims Trust, the excess funds remaining in the Fire Victim Claims Trust shall be paid to the Wildfire Fund. |
| **Subrogation Claims Trust** | On the Effective Date, the Reorganized Debtors will establish the Subrogation Claims Trust. The Subrogation Claims Trust will be funded with the Aggregate Subrogation Consideration.

Members of the Ad Hoc Group of Subrogation Claim Holders (the "**Ad Hoc Subrogation Group**") will enter into a separate agreement (the "**Allocation Agreement**"), which intercreditor agreement shall govern the distribution of the Aggregate Subrogation Consideration to holders of Subrogation Fire Claims in accordance with the relevant recovery percentages assigned to individual wildfires or groups of wildfires. The Reorganized Debtors will not be party to the Allocation Agreement and will not have any input regarding the terms thereof and shall not be bound or otherwise prejudiced by the Allocation Agreement or any terms thereof.

The Subrogation Claims Trust shall be administered by a trustee (the "**Subrogation Claims Trustee**") selected by the Ad Hoc Subrogation Group. An agreement (the "**Subrogation Claims Trust Agreement**") shall establish and set forth the provisions of the Subrogation Claims Trust. The Subrogation Claims Trust Agreement shall be in form and substance reasonably acceptable to the Ad Hoc Subrogation Group. The Subrogation Claims Trustee shall have the authority to retain any advisors for the purpose of carrying out their respective duties under the Subrogation Claims Trust Agreement.

On the Effective Date, an advisory board (the "**Subrogation Claims Trust Advisory Board**") shall be appointed to consult with and advise the Subrogation Claims Trustee. The Subrogation Claims Trust Advisory Board shall consist of three (3) members selected by holders of Subrogation Claims as set forth in the Subrogation Claims Trust Agreement. The Subrogation Trust Advisory Board shall, as and when requested by the Subrogation Claims Trustee, or as otherwise required under the Plan, the Confirmation Order, or the Subrogation Claims Trust Agreement, consult with and advise the Subrogation Claims Trustee as to the administration and management of the Subrogation Claims Trust in accordance with the terms of the Plan, the Confirmation Order and/or the Subrogation Claims Trust Agreement.

On the Effective Date, the Subrogation Claims Trust shall immediately pay holders of Subrogation Fire Claims their allocable share for Subrogation Fire Claims on |

Case: 19-30088   Doc# 4006   Filed: 09/25/19   Entered: 09/25/19 17:09:17   Page 19 of 77

| | |
|---|---|
| | account of amounts paid to insureds prior to the Effective Date (the "**Initial Subrogation Claims Trust Distribution**"). |
| | The remainder of the Aggregate Subrogation Consideration that is not part of the Initial Subrogation Claims Trust Distribution (i.e., the portion of the recovery on account of Subrogation Fire Claims arising from reserved IBNR amounts to individual insureds as of the Effective Date) (the "**Subrogation Recovery Reserve**") shall be held by the Subrogation Claims Trust for the benefit of holders of Subrogation Fire Claims. The Subrogation Claims Trust shall periodically pay subrogation claimants their allocated share for Subrogation Fire Claims on account of amounts paid to insureds after the Effective Date in accordance with the Allocation Agreement. For the avoidance of doubt, to the extent certain fires are over-reserved, and other fires are under-reserved, the Subrogation Claims Trust shall have the ability to reallocate funds to facilitate each subrogation claim recovering the applicable fire by fire payment percentage. |
| | Upon the earlier of (i) 5 years after the Effective Date, or (ii) the Subrogation Claims Trustee's reasonable determination that no more reserves will be paid to insureds, any remaining Subrogation Recovery Reserve shall be distributed pro rata to holders of Subrogation Fire Claims in accordance with the Allocation Agreement. |
| **Channeling Injunction** | The Fire Victim Claims Trust shall be the sole source of recovery for the Fire Claims (other than Subrogation Fire Claims) against the Debtors, and the Subrogation Claims Trust shall be the sole source of recovery for the Subrogation Fire Claims against the Debtors. The Plan and order confirming the Plan (the "**Confirmation Order**") shall (i) channel all Fire Claims (other than Subrogation Fire Claims) against the Debtors to the Fire Victim Claims Trust and (ii) channel all Subrogation Fire Claims against the Debtors to the Subrogation Claims Trust for payment in each case in accordance with the terms and procedures provided therein. The Plan and the Confirmation Order shall bar and enjoin holders of Fire Claims from seeking to recover on account of their Fire Claims against the Reorganized Debtors or any assets of the Reorganized Debtors, except with respect to any and all rights under and the proceeds of the Debtors' insurance policies that provide coverage for the Fires (the "**Channeling Injunction**"). |
| **Contributions to the Wildfire Fund** | On the Effective Date, the Debtors will contribute $5.0 billion, which amount consists of both the Debtors' initial and first annual contributions, to the Fund in order to address future wildfire liability. |
| **SOURCES OF PLAN FUNDING** | |
| **Insurance Rights** | The parties shall work in good faith to determine whether and how to treat the Debtors' insurance policies consistent with this term sheet. |
| | Up to $2.209 billion of the proceeds of 2017/2018 insurance policies of the Debtors will be used as a source of cash funding under the Plan. |
| **Cash on Hand** | $[●] billion of the Debtors' cash on hand on the Effective Date. |

Case: 19-30088   Doc# 4006   Filed: 09/25/19   Entered: 09/25/19 17:09:17   Page 20 of 77

| | |
|---|---|
| **New Money Investment in PG&E Corp.** | On the Effective Date, Reorganized PG&E Corp. shall issue shares of Reorganized PG&E Corp. Common Stock (the "**New Money Reorganized PG&E Corp. Common Stock Issuance**") to the new money investors identified below (the "**PG&E Corp. New Money Investor Group**"), in exchange for $15,512,332,599 in cash (the "**PG&E Corp. New Money Investment**").<br><br>The commitments for the PG&E Corp. New Money Investment shall be provided as follows:<br><br>    1.  50% by the consortium of large Utility bondholders identified in **Schedule 4** attached hereto (the "**PG&E Corp. New Money Commitment Group**");<br>    2.  45% by the members of the Ad Hoc Committee; and<br>    3.  5% by the holders of PG&E Common Interests in Class 8A.<br><br>To the extent that the members of the Ad Hoc Committee and/or holders of PG&E Common Interests in Class 8A do not provide the commitments described above for the PG&E Corp. New Money Investment, the PG&E Corp. New Money Commitment Group will provide commitments covering any such remaining amount. |
| **New PG&E Corp. Senior Unsecured Notes** | On the Effective Date, Reorganized PG&E Corp. shall issue $5.75 billion in new senior unsecured notes (the "**New PG&E Corp. Senior Unsecured Notes**") to the new money investors identified below (the "**New PG&E Corp. Senior Unsecured Notes Investor Group**") in exchange for $5.75 billion in cash (the "**New PG&E Corp. Senior Unsecured Notes Investment**"). The New PG&E Corp. Senior Unsecured Notes shall have terms materially consistent with the terms contained in the term sheet (the "**New PG&E Corp. Senior Unsecured Notes Term Sheet**") attached hereto as **Exhibit 1**.<br><br>The commitments for the New PG&E Corp. Senior Unsecured Notes Investment shall be provided as follows:<br><br>    1.  50% by a consortium of large Utility bondholders identified in **Schedule 5** attached hereto (the "**New PG&E Corp. Senior Unsecured Notes Commitment Group**");<br>    2.  50% by the members of the Ad Hoc Committee.<br><br>To the extent that the members of the Ad Hoc Committee do not provide the commitments described above for the New PG&E Corp. Senior Unsecured Notes Investment, the PG&E Corp. New Money Commitment Group will provide commitments covering any such remaining amount. |
| **New Utility Secured Notes** | The Debtors shall use commercially reasonable efforts to have the Reorganized Utility issue, on the Effective Date, $7,978,610,000 in new secured notes (collectively, the "**New Utility Secured Notes**") to third party investors in exchange for $7,978,610,000 in cash, with the proceeds being used to pay down all existing Utility Unsecured Term Loan Claims, Utility Unsecured Revolving Credit Facility Claims and Short-Term Utility Unsecured Notes Claims. The New Utility Secured Notes issued to third party investors shall have terms that are acceptable to the Ad Hoc Committee and at least as favorable to the Reorganized Utility as the terms contained in the term sheet (the "**New Utility Secured Notes Term Sheet**") attached hereto as **Exhibit 2**. |

| | |
|---|---|
| | In the event that the Reorganized Utility fails to issue all or a portion of the New Utility Secured Notes to third party investors on the Effective Date after using commercially reasonable efforts to do so as described above, on the Effective Date, the Reorganized Utility shall issue New Utility Secured Notes (on terms materially consistent with those contained in the New Utility Secured Notes Term Sheet) in the amount of any such shortfall to the new money investors identified below (the "**Reorganized Utility Secured Notes Investor Group**" and together with the PG&E Corp. New Money Investor Group and the New PG&E Corp. Senior Unsecured Notes Investor Group, the "**Investor Group**")) (on pro rata basis as described in the Amended and Restated Commitment Letter to be executed in connection with this Plan Term Sheet (the "**Commitment Letter**")) in exchange for the equivalent amount of cash (the "**New Utility Secured Notes Investment**"). <br><br> The commitments for the New Utility Secured Notes Investment shall be provided as follows: <br><br> 1. 50% by a consortium of large Utility bondholders identified in **Schedule 6** attached hereto (the "**New Utility Secured Notes Commitment Group**"); <br> 2. 50% by the members of the Ad Hoc Committee. <br><br> To the extent that the members of the Ad Hoc Committee do not provide the commitments described above for the New Utility Secured Notes Investment, the PG&E Corp. New Money Commitment Group will provide commitments covering any such remaining amount. <br><br> The PG&E Corp. New Money Commitment Group and the New PG&E Corp. Senior Unsecured Notes Commitment Group agree to use commercially reasonable efforts to structure the New Money Reorganized PG&E Corp. Common Stock Issuance and the New PG&E Corp. Senior Unsecured Notes in a manner that will facilitate the issuance of the New Utility Secured Notes on customary market terms, including with respect to the fees payable by the Utility in connection therewith. |
| **Backstop Commitment Fees** | In consideration of the agreement to backstop the commitments described above, the following backstop commitment fees (the "**Backstop Commitment Fees**") shall be payable: <br><br> 1. 3.0% of the PG&E Corp. New Money Investment to the PG&E Corp. New Money Commitment Group; and <br> 2. 1.5% of the New PG&E Corp. Senior Unsecured Notes Investment to the New PG&E Corp. Senior Unsecured Notes Commitment Group. <br> 3. 1.5% of the maximum amount of New Utility Secured Notes issuable pursuant to this term sheet ($7,978,610,000) to the New Utility Secured Notes Commitment Group. <br><br> The Backstop Commitment Fees shall be payable by Reorganized PG&E Corp. in cash or Reorganized PG&E Corp. Common Stock at the election of each backstop commitment party. |

19

***THIS IS NOT A SOLICITATION OF A VOTE ON A PLAN OF REORGANIZATION. SUCH A SOLICITATION MAY ONLY OCCUR FOLLOWING APPROVAL BY THE BANKRUPTCY COURT OF A DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE***

| REGULATORY REQUIREMENTS | |
|---|---|
| **FERC** | Prior to the Effective Date, the Debtors and Reorganized Debtors shall receive, as necessary or appropriate, all of the following approvals from the Federal Energy Regulatory Commission ("**FERC**") (collectively, the "**FERC Approvals**"). The Debtors and Reorganized Debtors shall receive a final order, satisfactory to the Ad Hoc Committee, from the FERC granting authorization under Section 203 of the Federal Power Act (the "FPA") to implement the Plan. In addition, if the reorganization results in the transfer of FERC-jurisdictional natural gas assets or hydroelectric assets, the Debtors and Reorganized Debtors shall receive, as necessary or appropriate, approval satisfactory to the Ad Hoc Committee under Section 7 of the Natural Gas Act ("**NGA**") and FPA Section 8, respectively, to transfer those assets. Prior to the Effective Date, the Debtors and Reorganized Debtors shall also receive, if and to the extent necessary or appropriate, a final order from FERC, satisfactory to the Ad Hoc Committee granting authorization under Section 204 of the FPA to issue new securities as provided under the Plan. Finally, prior to the Effective Date, the Debtors and Reorganized Debtors shall receive FERC acceptance, satisfactory to the Ad Hoc Committee, with respect to any new or modified service tariffs under the FPA or NGA necessary or appropriate to implement the Plan, and shall receive approval or acceptance under FPA Section 305 with respect to the creation of any interlocking directorates. |
| **CPUC** | Prior to the Effective Date the Debtors and Reorganized Debtors shall receive all necessary or appropriate approvals, authorizations and final orders from the California Public Utilities Commission ("**CPUC**") required to implement the Plan, to participate in the Wildfire Fund, and to be eligible for the presumption of reasonableness provided in Public Utilities Code section 451.1, in each case satisfactory to the Ad Hoc Committee, including, but not limited to: (a) successful conclusion of the ROE/Cap Structure Proceedings (as defined below); (b) approval of transfer of control over the Utility and any changes to PG&E's corporate structure and authorizations for the Utility to operate as a utility, if required; (c) resolution of claims for monetary fines or penalties under the California Public Utilities Code for conduct prior to the Petition Date, (d) approval (or exemption from approval) of the overall financing structure and securities to be issued under the Plan; (e) approvals and determinations pursuant AB 1054 necessary for participation in the Wildfire Fund, including, but not limited to, a determination that the Plan fully and finally compensates ratepayers in full compliance with Public Utilities Code section 3292(b)(1)(E) throughout the existence of the Wildfire Fund, and (f) approval that the Plan, including in regards to compensation for executive officers, complies with the requirements of Public Utilities Code section 8389 (collectively, the "**CPUC Determinations**"). <br><br> The "**ROE/Cap Structure Proceeding**" shall mean the proceeding(s) before the CPUC governing the authorized return on equity and regulated capital structure of the Utility. A successful conclusion of the ROE/Cap Structure Proceeding for purposes of this proceeding shall mean, either (x) a determination that the current authorized capital structure and a minimum of 10.25% ROE shall be fixed for three (3) years, or (y) a mutually agreed deferral of the Utility's 2020 general rate case and/or cost of capital proceeding before the CPUC for a period of 24 months from the Effective Date of the Plan, with the current authorized capital structure and/or a |

| | |
|---|---|
| | minimum of 10.25% ROE, as relevant, to remain unchanged until expiration of the deferral period. |
| **NRC** | If required, prior to the Effective Date, the Debtors and Reorganized Debtors shall receive approval from the Nuclear Regulatory Commission for the transfer of the license for the Diablo Canyon Power Plant (the "**NRC Approval**"). |
| | **OTHER TERMS** |
| **Releases** | The Plan shall provide for customary release of all claims and causes of action against (i) the Debtors, (ii) each of the members of the Ad Hoc Committee, (iii) the Creditors' Committee and each of its members, (iv) the TCC and each of its members, (v) the Fire Victim Claims Trustee, (vi) the Fire Victim Claims Trust Oversight Committee and each of its members, (vii) the Ad Hoc Subrogation Group and each of its members, (viii) the Subrogation Claims Trustee, (ix) the Subrogation Claims Trust Advisory Board and each of its members, and (x) with respect to each of the foregoing entities in clauses (i) through (ix), such entities' Related Persons[5] (each such entity in foregoing clauses (i) through (x), a "**Released Party**"). |
| | Releases shall be provided by (i) the Debtors, (ii) each of the members of the Ad Hoc Committee, (iii) the Creditors' Committee and each of its members, (iv) the TCC and each of its members, (v) the Fire Victim Claims Trustee, (vi) the Fire Victim Claims Trust Oversight Committee and each of its members, (vii) the Ad Hoc Subrogation Group and each of its members, (viii) the Subrogation Claims Trustee, (ix) the Subrogation Claims Trust Advisory Board and each of its members and (x) with respect to each of the foregoing entities in clauses (i) through (ix), such entities' Related Persons, and (x) all holders of claims and interests against the Debtors, as provided in more detail below (each such entity in foregoing clauses (i) through (x), a "**Releasing Party**"). |
| | The releases to be set forth in the Plan shall include consensual releases from each holder of a claim or interest (as set forth in the "Plan Treatment of PG&E Corp. and Utility Claims" section above) that (i) votes to accept the Plan or (ii) is deemed to accept the Plan, of each Released Party from any claims or causes of action, including any derivative claims asserted or assertable on behalf of any of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates or affiliates or that each other Releasing Party, as applicable, would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any claims or interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring discussions, intercompany transactions between or among the Debtors and/or their Affiliates, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized |

---

[5] "**Related Persons**" with respect to an entity shall mean that entity's current and former affiliates, and such entities' and their current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

Case: 19-30088    Doc# 4006    Filed: 09/25/19    Entered: 09/25/19 17:09:17    Page 24 of 77

|  | |
|---|---|
|  | Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Chapter 11 Cases and related adversary proceedings, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Plan, the disclosure statement to the Plan, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing, or upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date. <br><br> In addition, the Plan shall provide for consensual mutual releases of all claims and causes of action by and between each holder of a Fire Victim Claim (i) who votes to accept the Plan or (ii) is deemed to accept the Plan and each holder of a Subrogation Fire Claim (i) who votes to accept the Plan or (ii) is deemed to accept the Plan, based on or relating to, or in any manner arising from, the fires described in <u>Schedule 1</u>. <br><br> The Plan shall provide for consensual releases to the Released Parties of all claims and causes of action that could be asserted against, or in any way relating to, or arising out of (i) any Debtor, the Reorganized Debtors, their businesses, or their property, (ii) the Chapter 11 Cases, (iv) the formulation, preparation, negotiation, dissemination, implementation, administration, or consummation of the Plan, or (v) any other act or omission in connection with the Chapter 11 Cases. |
| **Exculpation** | The Plan shall provide certain customary exculpation provisions, which shall include a full exculpation from liability in favor of the Debtors, the Ad Hoc Committee and each of its members and their professionals, the Creditors' Committee and each of its members and their professionals, the TCC and each of its members and their professionals, the Ad Hoc Subrogation Group and each of its members and the Related Persons of all of the foregoing parties from any and all claims and causes of action arising on or after the Petition Date and any and all claims and causes of action relating to any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, soliciting, confirming or consummating the Plan, the disclosure statement to the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases or the restructuring of the Debtors, with the sole exception of willful misconduct or gross negligence. |
| **Corporate Governance** | Upon the Effective Date and for a period of two (2) years thereafter, the board of directors of Reorganized PG&E Corp. (the "**New PG&E Corp. Board**") shall consist of nine (9) members. From the second anniversary of the Effective Date through the fifth anniversary of the Effective Date, the New PG&E Board Corp. Board shall consist of at least nine (9) and no more than eleven (11) members. The chief executive officer of Reorganized PG&E Corp. (the "**New PG&E Corp. CEO**") shall be a director on the New PG&E Corp. Board. The New PG&E Corp. CEO shall not be the chairperson of the New PG&E Corp. Board. The remaining directors of the New PG&E Corp. Board shall be appointed on the Effective Date, and thereafter elected annually, in the following manner: |

| | |
|---|---|
| | 1. One (1) director shall be nominated by IBEW Local 1245, on behalf of the employees of Reorganized PG&E Corp.; <br> 2. One (1) director shall be nominated by TURN, on behalf of ratepayers; <br> 3. One (1) director shall be nominated by the Wildfire Fund; and <br> 4. Each other director shall be nominated by the shareholders of Reorganized PG&E Corp. <br><br> The board of directors of the Reorganized Utility (the "**New Utility Board**" and together with the New PG&E Corp., the "**New Boards**") will consist of the same nine (9) members of the New PG&E Corp. Board. The chairperson of the New PG&E Corp. Board shall not be the chairperson of the New Utility Board. <br><br> The New Boards shall consist of a diverse set of individuals (including, among other things, complying with the requirements of California State Bill-826). The majority of the directors of each of the New Boards shall consist of Californians and individuals who have credentialed experience in the areas of utility operations, engineering, safety, regulation and/or clean energy. |
| **Renaming / Rebranding** | For the first 60 days following the Effective Date, all employees of the Reorganized Utility will have the opportunity to submit recommendations for renaming or rebranding the Reorganized Utility. If, after a period of 90 days following the Effective Date, no employee recommendation is selected for renaming or rebranding the Reorganized Utility, the Reorganized Utility shall effect a change of name to "Golden State Power Light & Gas Co.," and the Reorganized PG&E Corp. shall effect a change of name to "GSPL&G Corp." |
| **Prohibition Against Rate Increases** | The Debtors and the Reorganized Debtors will not seek to recover the contributions made to the Fire Victim Claims Trust, the Subrogation Claims Trust or the Wildfire Fund, either directly or indirectly, through rate increases. |
| **Utility Rates to Consumers** | The Plan shall be rate-neutral to end-market consumers in California on a net basis. The Plan will rely on securitization amounts up to similar levels of the securitization bonds issued in 2001. The proceeds of such new securitization bonds will be used for future statewide Wildfire Fund purposes. The proceeds of any new securitization bonds will not be used for the Debtors' or Reorganized Debtors' benefit for plan purposes. |
| **Utility Consumer Rate Credit** | Plan to include sale of certain key real estate assets of the Debtors to previously identified party or parties to allow for up to $1 billion rate credit for the benefit of all PG&E customers, to be applied equally over a period of 10 years from the Effective Date. |
| **Post-Effective Date Management** | The Utility will seek to enter into a long-term management, oversight, O&M or similar contract(s)/agreement(s) with a qualified management team and/or top-tier U.S.-domiciled utility/energy holding company (all previously identified) to oversee and run the Utility beginning on the Effective Date. Such entity or management team may be provided the opportunity to participate in the PG&E Corp. New Money Investment in connection therewith. |
| **Key Corporate Operating** | PG&E agrees not to sell, and will oppose any attempt to municipalize, any portion of the operating business or assets, for a period of (5) years after the Effective Date |

| | |
|---|---|
| **Businesses** | of the Plan; *provided*, however, this provision does not apply to any owned, including currently occupied real estate. For the avoidance of doubt, this restriction will not limit any change in control transaction relating to Reorganized PG&E Corp., including, without limitation, a merger, tender offer or similar transaction. |
| **Key Employee Matters** | Subject to the support of the International Brotherhood of Electrical Workers ("**IBEW**") for the Plan, contingent upon and after confirmation of the Plan, the Reorganized Debtors shall enter into an agreement with Local Union No. 1245 of the International Brotherhood of Electrical Workers ("**Local 1245**") with such agreement to apply only to the period starting on and after the Effective Date, extending the two (2) Collective Bargaining Agreements currently in place between Pacific Gas and Electric Company and Local 1245 (the IBEW Physical Agreement and the IBEW Clerical Agreement, collectively the "**IBEW CBAs**"), until December 31, 2023 with such extension to include (i) a reasonable and appropriate general wage increase for each of the extension years (2022 and 2023) deemed to be appropriate, reasonable, consistent with past practice and included in go-forward allowed rates; (ii) a prohibition on any involuntary layoffs during the term of the extended IBEW CBAs; provided, however such prohibition will not limit any individual employee terminations or displacements and will not apply to contract workforce or non-bargaining unit members; and (iii) reemphasize the Reorganized Debtors' and Local 1245's commitment to maintaining a spirit of cooperation between labor and management. |
| **Other Employee Matters** | Compensation-related agreements between any of the Debtors and any directors, officers and employees of the Debtors existing as of the Effective Date, including any indemnification and severance obligations, short term incentive plan and other incentive plans, with the exception of the revisions set forth herein, existing as of the Effective Date, shall be assumed by the Reorganized Debtors. |
| | The New Boards shall revise the long term incentive compensation programs of Reorganized PG&E Corp. and the Reorganized Utility by increasing the proportion of LTIP awards subject to performance-based vesting criteria. Performance criteria for LTIP awards will be modified by increasing/implementing performance weightings that are based on achievement of public safety, infrastructure hardening and other related strategic long term objectives. |
| | In addition, following the Effective Date, the New PG&E Corp. Board shall further revise the applicable employee compensation programs such that all PG&E Corp. common stock currently held by employees and retirees in pension accounts, 401(k) accounts and company-sponsored plans will be trued-up for any dilution on account of the Plan with new equity issuances within 90 days after the Effective Date. Such equity interests will be structured to comply with all applicable securities laws. |
| **Pension Matters** | Upon the Effective Date, the Reorganized Debtors shall assume and continue to maintain the PG&E Retirement Plan under its current terms, except to the extent any amendment is required by law, and shall make any and all contributions necessary to satisfy the minimum funding requirements under ERISA Section 302 and Internal Revenue Code Section 430. |
| **Executory Contracts and** | All executory contracts and unexpired leases not expressly listed for rejection on an exhibit to the Plan or previously assumed or rejected by order of the Bankruptcy |

| | |
|---|---|
| **Unexpired Leases** | Court shall be deemed assumed as of the Effective Date. |
| | The Debtors or Reorganized Debtors, as applicable, may alter, amend, modify, or supplement the list of assumed executory contracts and unexpired leases and the schedules of executory contracts and unexpired leases with respect to the Debtors or Reorganized Debtors, as applicable, at any time, through and including 45 days after the Effective Date. |
| **Renewable Energy Power Purchase Agreements** | Notwithstanding anything to the contrary in this Term Sheet, the Debtors and Reorganized Debtors shall not reject any renewable energy power purchase agreement. |
| **Tax Matters** | The Debtors and the Ad Hoc Committee will work together in good faith and will use commercially reasonable efforts to structure and implement the Reorganization in a tax efficient and cost-effective manner for the Reorganized Debtors and creditors. |
| | Post-Effective Date ownership of PG&E Corp. shall be structured to maximize the usage of go-forward tax attributes. |
| **Timing / Key Dates** | Emergence from chapter 11 is to be achieved as soon as reasonably practicable, with specific deadlines as follows: |
| | 1. A plan of reorganization materially consistent with the terms provided in this Term Sheet and disclosure statement corresponding to such plan to be filed no later than October 31, 2019; |
| | 2. Order confirming such plan of reorganization entered no later than June 30, 2020; and |
| | 3. Effective date of the plan of reorganization to occur no later than 60 days after the entry of the Confirmation Order. |
| **Conditions Precedent to Effective Date of Plan** | The following conditions must be satisfied in order for the Effective Date to occur: |
| | 1. A plan of reorganization that provides a binding cap on the recoveries to the holders of Fire Claims (including fines, penalties, reimbursement and other similar obligations but excluding Subrogation Fire Claims) that shall not be greater than the Aggregate Fire Victim Consideration shall have been confirmed; |
| | 2. A plan of reorganization that provides a binding cap on the recoveries to the holders of Subrogation Fire Claims that shall not be greater than the Aggregate Subrogation Consideration shall have been confirmed; |
| | 3. the Confirmation Order shall have been entered by the Court in form and substance acceptable to the Ad Hoc Committee and the TCC, be in full force and effect and not be subject to any stay or injunction and shall have become a final order; |
| | 4. all definitive documents relating to the Plan shall be in form and substance acceptable to the Ad Hoc Committee; |
| | 5. the Fire Victim Claims Trust shall have been established in accordance with the terms provided herein and the procedures in connection therewith shall be in form and substance acceptable to the TCC; |

| | |
|---|---|
| | 6. the Fire Victim Claims Trustee shall have been appointed in accordance with the terms provided herein; |
| | 7. the members of the Fire Victim Claims Trust Oversight Committee shall have been appointed in accordance with the terms provided herein; |
| | 8. the Subrogation Claims Trust shall be have been established in accordance with the terms provided herein and the procedures in connection therewith shall be in form and substance acceptable to the Ad Hoc Subrogation Group; |
| | 9. the Subrogation Claims Trustee shall have been appointed in accordance with the terms provided herein; |
| | 10. the members of the Subrogation Trust Advisory Board shall have been appointed in accordance with the terms provided herein; |
| | 11. a Wildfire Fund has been established pursuant to Public Utilities Code section 3292, and the Utility has satisfied (i) the conditions to participate in the Wildfire Fund pursuant to Public Utilities Code sections 3292 and 3293, (ii) the conditions to obtain a safety certification pursuant to Public Utilities Code section 8389, and (iii) any other conditions that are required to participate in the Wildfire Fund and be eligible for the presumption of reasonableness provided in Public Utilities Code section 451.1; |
| | 12. the New PG&E Corp. Common Stock, New PG&E Corp. Senior Unsecured Notes and the New Utility Secured Notes shall have been issued in accordance with the terms provided herein and in a manner acceptable to the Ad Hoc Committee and the TCC; |
| | 13. all actions, documents, certificates and agreements necessary or appropriate to implement the Plan shall have been effected or executed or deemed executed and delivered, as the case may be, to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws; and |
| | 14. all authorizations, consents, regulatory approvals, rulings or documents that are necessary or appropriate to implement and effectuate the Plan (including, but not limited to, the FERC Approvals, the CPUC Determinations, and the NRC Approval) shall have been received. |
| **Conditions Precedent to Funding** | The following conditions must be met in order for the PG&E Corp. New Money Investment, New PG&E Corp. Senior Unsecured Notes Investment, and New Utility Secured Notes Investment to be funded: |
| | 1. A plan of reorganization that provides a binding cap on the recoveries to the holders of Fire Claims (including fines, penalties, reimbursement and other similar obligations but excluding Subrogation Fire Claims) that shall not be greater than the Aggregate Fire Victim Consideration shall have been confirmed and the Effective Date shall have occurred; |
| | 2. A plan of reorganization that provides a binding cap on the recoveries to the holders of Subrogation Fire Claims that shall not be greater than the Aggregate Subrogation Consideration shall have been confirmed; |
| | 3. There shall not have occurred one or more fires in the Debtors' service territory after the Petition Date and prior to January 1, 2020 that is asserted by any person to arise out of the Debtors' activities and that destroys or damages more than 500 dwellings or commercial structures (individually or in the aggregate); |
| | 4. There shall not have occurred one or more fires on or after January 1, 2020 |

|  | destroying or damaging at least 500 dwellings or commercial structures (individually or in the aggregate) within PG&E's service area at a time when the portion of PG&E's system at the location of such fires was not de-energized; |
|---|---|
| 5. | The form of all common equity documents and the plan of reorganization and confirmation order are in form and substance acceptable to the Investor Group; and |
| 6. | Customary closing conditions for an equity and unsecured debt financing including, but not limited to, no material adverse change to PG&E Corp. |
| 7. | All Conditions Precedent to the Effective Date of the Plan, as set forth above, shall have been satisfied. |
| 8. | The Debtors shall have maintained and held in good standing all of their operating licenses, certificates and other regulatory authorizations and approvals necessary to operate the Utility's business with no pending revocations of any such license, certificate, approval or authorization or open proceedings contemplating such revocation. |
| 9. | Each of the conditions to funding under the Commitment Letter shall have been satisfied or waived by all applicable parties thereto. |

27

# SCHEDULE 1

List of Northern California Fires Covered by Fire Victim Claims Trust

1. Butte Fire (2015)
2. 2017 North Bay Fires
    a. LaPorte (La Porte)
    b. McCourtney
    c. Lobo
    d. Honey
    e. Redwood / Potter Valley
    f. Sulphur
    g. Cherokee
    h. 37
    i. Blue
    j. Pocket
    k. Atlas
    l. Cascade
    m. Nuns
    n. Adobe
    o. Norrbom
    p. Pressley
    q. Patrick
    r. Pythian / Oakmont
    s. Maacama
    t. Tubbs
    u. Point
3. Camp Fire (2018)
4. Ghost Ship (2016)

## **SCHEDULE 2**

Short-Term Utility Unsecured Notes

1. $550 million principal amount of 3.50% senior notes due October 1, 2020

2. $250 million principal amount of 3.50% senior notes due October 1, 2020

3. $300 million principal amount of 4.25% senior notes due May 15, 2021

4. $250 million principal amount of 3.25% senior notes due September 15, 2021

5. $400 million principal amount of 2.45% senior notes due August 15, 2022

Case: 19-30088    Doc# 4006    Filed: 09/25/19    Entered: 09/25/19 17:09:17    Page 32 of 77

## **SCHEDULE 3**

Long-Term Utility Unsecured Notes

1.  $375 million principal amount of 3.25% senior notes due June 15, 2023

2.  $500 million principal amount of 4.25% senior notes due August 1, 2023

3.  $300 million principal amount of 3.85% senior notes due November 15, 2023

4.  $450 million principal amount of 3.75% senior notes due February 15, 2024

5.  $350 million principal amount of 3.40% senior notes due August 15, 2024

6.  $400 million principal amount of 3.50% senior notes due June 15, 2025

7.  $200 million principal amount of 3.50% senior notes due June 15, 2025

8.  $600 million principal amount of 2.95% senior notes due March 1, 2026

9.  $400 million principal amount of 3.30% senior notes due March 15, 2027

10. $1,150 million principal amount of 3.30% senior notes due December 1, 2027

11. $300 million principal amount of 4.65% senior notes due August 1, 2028

12. $3,000 million principal amount of 6.05% senior notes due March 1, 2034

13. $700 million principal amount of 5.80% senior notes due March 1, 2037

14. $250 million principal amount of 5.80% senior notes due March 1, 2037

15. $400 million principal amount of 6.35% senior notes due Feb 15, 2038

16. $550 million principal amount of 6.25% senior notes due March 1, 2039

17. $550 million principal amount of 5.40% senior notes due January 15, 2040

18. $250 million principal amount of 5.40% senior notes due January 15, 2040

19. $250 million principal amount of 4.50% senior notes due December 15, 2041

20. $400 million principal amount of 4.45% senior notes due April 15, 2042

21. $350 million principal amount of 3.75% senior notes due August 15, 2042

22. $375 million principal amount of 4.60% senior notes due June 15. 2043

23. $500 million principal amount of 5.125% senior notes due November 15, 2043

24. $450 million principal amount of 4.75% senior notes due February 15, 2044

25. $225 million principal amount of 4.75% senior notes due February 15, 2044

26. $500 million principal amount of 4.30% senior notes due March 15, 2045

27. $100 million principal amount of 4.30% senior notes due March 15, 2045

28. $450 million principal amount of 4.25% senior notes due March 15, 2046

29. $400 million principal amount of 4.00% senior notes due December 1, 2046

30. $200 million principal amount of 4.00% senior notes due December 1, 2046

31. $850 million principal amount of 3.95% of senior notes due December 1, 2047

# **SCHEDULE 4**

PG&E Corp. New Money Commitment Group

1. Apollo Capital Management, L.P.
2. Canyon Capital Advisors LLC
3. Capital Research and Management Company
4. Citadel Advisors LLC
5. Davidson Kempner Capital Management LP
6. Elliott Management Corporation
7. Farallon Capital Management, L.L.C.
8. Oaktree  Fund GP, LLC
9. Pacific Investment Management Company LLC
10. Theater Investor LLC (wholly owned by funds managed by Sculptor Capital LP)
11. Third Point LLC
12. Varde Partners, Inc.

## <u>SCHEDULE 5</u>

New PG&E Corp. Senior Unsecured Notes Commitment Group

1. Apollo Capital Management, L.P.
2. Canyon Capital Advisors LLC
3. Capital Research and Management Company
4. Citadel Advisors LLC
5. Davidson Kempner Capital Management LP
6. Elliott Management Corporation
7. Farallon Capital Management, L.L.C.
8. Oaktree  Fund GP, LLC
9. Pacific Investment Management Company LLC
10. Theater Investor LLC (wholly owned by funds managed by Sculptor Capital LP)
11. Third Point LLC
12. Varde Partners, Inc.

## **SCHEDULE 6**

New Utility Secured Notes Commitment Group

1. Apollo Capital Management, L.P.
2. Canyon Capital Advisors LLC
3. Capital Research and Management Company
4. Citadel Advisors LLC
5. Davidson Kempner Capital Management LP
6. Elliott Management Corporation
7. Farallon Capital Management, L.L.C.
8. Oaktree  Fund GP, LLC
9. Pacific Investment Management Company LLC
10. Theater Investor LLC (wholly owned by funds managed by Sculptor Capital LP)
11. Third Point LLC
12. Varde Partners, Inc.

## **EXHIBIT 1**

New PG&E Corp. Senior Unsecured Notes Term Sheet

Term sheet included in Commitment Letter.

## EXHIBIT 2

New Utility Secured Notes Term Sheet

Term sheet included in Commitment Letter.

1

**Exhibit B**

2   Blackline of Amended Joint Plan Term Sheet

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*THIS IS NOT A SOLICITATION OF A VOTE ON A PLAN OF REORGANIZATION. SUCH A SOLICITATION MAY ONLY OCCUR FOLLOWING APPROVAL BY THE BANKRUPTCY COURT OF A DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE*

*In re PG&E Corporation* **and** *Pacific Gas and Electric Company*

**Term Sheet for Plan of Reorganization**

September 1925, 2019

This term sheet (the "**Term Sheet**") is proposed by the Official Committee of Tort Claimants (the "**TCC**") and the Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company (the "**Ad Hoc Committee**") and sets forth certain of the principal terms and conditions for the proposed reorganization (the "**Reorganization**") of PG&E Corporation and Pacific Gas and Electric Company, each of which commenced cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") on January 29, 2019 (the "**Petition Date**"). The Reorganization contemplated herein shall be implemented pursuant to a proposed joint chapter 11 plan of reorganization (the "**Plan**").

**THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY PLAN, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, ONLY WILL BE MADE IN COMPLIANCE WITH APPLICABLE PROVISIONS OF ALL APPLICABLE LAW. THIS TERM SHEET DOES NOT ADDRESS ALL TERMS THAT WOULD BE REQUIRED IN CONNECTION WITH ANY POTENTIAL TRANSACTIONS REFERENCED HEREIN, AND THE ENTRY INTO OR THE CREATION OF ANY BINDING AGREEMENT IS SUBJECT TO THE EXECUTION OF DEFINITIVE DOCUMENTATION IN FORM AND SUBSTANCE CONSISTENT WITH THIS TERM SHEET AND OTHERWISE ACCEPTABLE TO THE AD HOC COMMITTEE AND/OR THE PG&E CORP. NEW MONEY COMMITMENT GROUP (AS DEFINED HEREIN).**

**THIS TERM SHEET IS BASED SOLELY ON PUBLICLY AVAILABLE INFORMATION.**

| PLAN OVERVIEW[1] | |
|---|---|
| **Debtors** | PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**" and together with PG&E Corp., the "**Debtors**").  Following the occurrence of the effective date of the Plan (the "**Effective Date**"), PG&E Corp. and the Utility will be referred to herein as "**Reorganized PG&E Corp.**" and the "**Reorganized Utility**," respectively, and collectively as the "**Reorganized Debtors**." |
| **Transaction Overview** | As set forth in greater detail herein, the Plan shall provide for: <br><br> • $~~28.4~~29.2 billion in new money investments in exchange for common stock of Reorganized PG&E Corp. (representing approximately ~~58.8~~59.3% of the outstanding common stock of Reorganized PG&E Corp. on a fully diluted basis), new debt of Reorganized PG&E Corp. and new debt of the Reorganized Utility, in each case as described herein; <br><br> • The proceeds of the new money investments shall be used to (a) pay in full outstanding DIP Financing Facility Claims (as defined below), (b) pay in full all Utility bond, term loan and revolving debt maturing prior to December 31, 2022[2], (c) fund the creation of ~~a trust (the "Fire Claims Trust")~~two trusts for the purpose of paying certain fire claims related to those Northern California fires listed in **Schedule 1** attached hereto~~, equal to $24~~ with $25.5 billion, consisting of $12.75 billion in cash and $12.75 billion in shares of common stock of Reorganized PG&E Corp. (~~representing~~at plan value), which will represent approximately ~~39.5~~40.6% of the outstanding common stock of Reorganized PG&E Corp. on a fully diluted basis~~) issued to the Fire Claims Trust and certain other fire consideration as set forth herein (~~, (collectively, the "**Aggregate Fire Consideration**")~~,~~ and (d) fund the Debtors' contribution of $5.0 billion, which amount consists of both the Debtors' initial and first annual contributions, to the long-term California statewide wildfire fund created for purposes of paying future utility-related wildfires in California (the "**Wildfire Fund**"); <br><br> • The two trusts to receive the Aggregate Fire Consideration will be  (i) a trust for the purpose of paying certain fire claims related to those Northern California fires listed in **Schedule 1** attached hereto (the "**Fire Victim Claims Trust**"), funded with $14.5 billion and certain other fire consideration as set forth herein to be contributed to the Fire Victim Claims Trust (collectively, the "**Aggregate Fire Victim Consideration**") and (ii) a trust for the purpose of paying insurance subrogation claims related to those Northern California fires listed in **Schedule 1** attached hereto (the "**Subrogation Claims Trust**"), funded with $11.0 billion (the "**Aggregate** |

---

[1] This document is based on publicly available information regarding the Debtors as of June 25, 2019.  Certain of the terms for the Plan included herein are subject to change depending upon the Debtors' financial performance over the remainder of the Chapter 11 Cases including, but not limited, to its cash generation and borrowings under the DIP Financing Facility.

[2] Includes the Utility Unsecured Revolving Credit Facility Claims, Utility Unsecured Term Loan Claims, Short-Term Utility Unsecured Notes Claims and Utility Pollution Control Bond-Related Claims, each as defined below.

4822-9860-1126.1
Case: 19-30088    Doc# 4006    Filed: 09/25/19    Entered: 09/25/19 17:09:17    Page 42 of 77

| | |
|---|---|
| | **Subrogation Consideration")**: <br>• Reinstatement in full of the Long-Term Utility Unsecured Notes; and <br>• Payment of all trade claims in the ordinary course of business and assumption and/or continuation of pension-related obligations. |

| PLAN TREATMENT OF PG&E CORP. AND UTILITY CLAIMS | |
|---|---|
| **Unclassified Claims** | |
| **Claim** | **Treatment** |
| **DIP Financing Facility Claims** | Each holder of a claim under the Senior Secured Superpriority Debtor-in-Possession Credit, Guaranty and Security Agreement, dated as of February 1, 2019 (the "DIP Financing Facility," and the claims arising thereunder, the "DIP Financing Facility Claims") shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such DIP Financing Facility Claim, payment in full in cash on the Effective Date. |
| **Administrative Expense Claims** | Each holder of an allowed administrative expense claim against the Debtors under section 507(a)(2) of the Bankruptcy Code (other than DIP Financing Facility Claims) (the "**Administrative Expense Claims**") shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Administrative Expense Claim, cash equal to the allowed amount of such Administrative Expense Claim on the later of (i) the Effective Date or as soon thereafter as is reasonably practicable, and (ii) the date such Administrative Expense Claim becomes an allowed Administrative Expense Claim or as soon thereafter as is reasonably practicable. |
| **Priority Tax Claims** | Each holder of an allowed claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the type specified in section 507(a)(8) of the Bankruptcy Code against any Debtor (the "**Priority Tax Claims**") shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Priority Tax Claim, (a) cash equal to the amount of such allowed Priority Tax Claim on the later of (i) the Effective Date or as soon thereafter as is reasonably practicable and (ii) the date such Priority Tax Claim becomes an allowed Priority Tax Claim or as soon thereafter as is reasonably practicable, or (b) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |

| PG&E Corp. Claims | | | |
|---|---|---|---|
| **Claim** | **Classification/Treatment/Voting** | **Estimated Allowed Claims** | **Estimated % Recovery** |
| **Class 1A: Other PG&E Corp. Priority Claims** | *Classification*: Holders of allowed claims against PG&E Corp. entitled to priority under section 507(a) of the Bankruptcy Code (other than DIP Financing Facility Claims, Administrative Expense Claims and Priority Tax Claims) (the "**Other PG&E** | [TBD] | 100% |

3

| | | | |
|---|---|---|---|
| | **Corp. Priority Claims**"). | | |
| | *Treatment*: Each holder of an allowed Other PG&E Corp. Priority Claim against PG&E Corp. shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other PG&E Corp. Priority Claim, (i) cash in an amount equal to such allowed claim on the Effective Date or as soon thereafter as is reasonably practicable, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.<br><br>*Voting*: Unimpaired – deemed to accept. | | |
| **Class 2A: Other PG&E Corp. Secured Claims** | *Classification*: Holders of claims (other than DIP Financing Facility Claims) (the "**Other PG&E Corp. Secured Claims**") that are secured by valid, perfected and enforceable liens on property in which PG&E Corp. has an interest or that are subject to setoff pursuant to section 553 of the Bankruptcy Code.<br><br>*Treatment*: Each holder of an allowed Other PG&E Corp. Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other PG&E Corp. Secured Claim, (i) retention of its Other PG&E Corp. Secured Claim and any properly perfected and valid liens; (ii) payment in full in cash, including the payment of any interest allowed and payable under section 506(b) of the Bankruptcy Code, on the Effective Date or as soon thereafter as is reasonably practicable, or (iii) treatment of such allowed Other PG&E Corp. Secured Claim in any other manner that renders the claim unimpaired, including reinstatement under section 1124(2) of the Bankruptcy Code.<br><br>*Voting*: Unimpaired – deemed to accept. | [TBD] | 100% |
| **Class 3A: PG&E Corp. Unsecured Revolving Credit Facility Claims** | *Classification*: Holders of claims arising under the Second Amended and Restated Credit Agreement, dated as of April 27, 2015, by and between PG&E Corp. and Citibank, N.A., as administrative agent (the "**PG&E Corp. Unsecured Revolving Credit Agreement**"), in the aggregate principal amount of up to $300 million (the "**PG&E Corp. Unsecured Revolving Credit Facility Claims**").<br><br>*Treatment*: On the Effective Date or as soon thereafter as is reasonably practicable, each holder of | Appx. $300 million | 100% |

4

| | | | |
|---|---|---|---|
| | an allowed PG&E Corp. Unsecured Revolving Credit Facility Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed PG&E Corp. Unsecured Revolving Credit Facility Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the PG&E Corp. Unsecured Credit Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate.<br><br>***Voting***: Unimpaired – deemed to accept. | | |
| **Class 4A: PG&E Corp. Unsecured Term Loan Claims** | ***Classification***: Holders of claims arising under the Term Loan Agreement, dated as of April 16, 2018, by and between PG&E Corp. and Mizuho Bank, Ltd., as administrative agent (the "**PG&E Corp. Unsecured Term Loan Credit Agreement**"), in the aggregate principal amount of $350 million (the "**PG&E Corp. Unsecured Term Loan Claims**").<br><br>***Treatment***: On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed PG&E Corp. Unsecured Term Loan Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed PG&E Corp. Unsecured Term Loan Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the PG&E Corp. Unsecured Term Loan Credit Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate.<br><br>***Voting***: Unimpaired – deemed to accept. | Appx. $350 million | 100% |
| **Class 5A: PG&E Corp. General Unsecured Claims** | ***Classification***: Holders of general unsecured claims (other than Other PG&E Corp. Priority Claims, PG&E Corp. Unsecured Revolving Credit Facility Claims and PG&E Corp. Unsecured Term Loan Claims) against PG&E Corp. (the "**PG&E Corp. General Unsecured Claims**")<br><br>***Treatment***: Each holder of an allowed PG&E Corp. General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed PG&E Corp. General Unsecured Claim, cash in an amount equal to the allowed PG&E Corp. General Unsecured Claim, together with accrued and unpaid interest from the | [TBD] | 100% |

4822-9860-1126.1
Case: 19-30088    Doc# 4006    Filed: 09/25/19    Entered: 09/25/19 17:09:17    Page 45 of 77

| | | | |
|---|---|---|---|
| | Petition Date through the Effective Date at the applicable contract rate or, in the absence of a contract rate, the Federal Judgement Rate, on the earlier of (i) the Effective Date or as soon thereafter as is reasonably practicable or (ii) as soon as reasonably practicable following the date such PG&E Corp. General Unsecured Claim becomes an allowed PG&E Corp. General Unsecured Claim.<br><br>***Voting***: Unimpaired – deemed to accept. | | |
| **Class 6A: PG&E Corp. Intercompany Claims** | ***Classification:*** Claims held by the Utility or any non-Debtor affiliate of PG&E Corp. against PG&E Corp. (the "**PG&E Corp. Intercompany Claims**").<br><br>***Treatment:*** All allowed PG&E Corp. Intercompany Claims, if any, shall be reinstated, compromised or cancelled at the election of the Debtors (with the consent of the Ad Hoc Committee, not to be unreasonably withheld), such that the PG&E Corp. Intercompany Claims are treated in a tax-efficient manner.<br><br>***Voting***: Unimpaired – deemed to accept. | [TBD] | 100% |
| **Class 7A: PG&E Corp. Preferred Interests** | ***Classification***: Holders of outstanding preferred interests in PG&E Corp. (the "**PG&E Corp. Preferred Interests**").<br><br>***Treatment***: Holders of allowed PG&E Corp. Preferred Interests shall retain ownership of all PG&E Preferred Interests in Reorganized PG&E Corp. (including any associated liquidation preference).<br><br>***Voting***: Unimpaired – deemed to accept. | N/A | 100% |
| **Class 8A: PG&E Corp. Common Interests** | ***Classification***: Holders of outstanding common interests in PG&E Corp. (the "**PG&E Corp. Common Interests**")<br><br>***Treatment***: Holders of allowed PG&E Corp. Common Interests shall retain ownership of all PG&E Corp. Common Interests in Reorganized PG&E Corp. (the "**Reorganized PG&E Corp. Common Stock**"), subject to dilution on account of the Reorganized PG&E Corp. Common Stock issued pursuant to the New Money Reorganized PG&E Corp. Common Stock Issuance. | N/A | [TBD]% |

6

| | | | |
|---|---|---|---|
| | ***Voting:*** Impaired – entitled to vote.<br><br>Each holder of a PG&E Corp. Common Interest shall have the opportunity to commit for its pro rata share of 5% of the PG&E Corp. New Money Investment (as defined herein). | | |

| Utility Claims | | | |
|---|---|---|---|
| **Claim** | **Classification/Treatment/Voting** | **Estimated Allowed Claims** | **Estimated % Recovery** |
| **Class 1B: Other Utility Priority Claims** | ***Classification:*** Holders of allowed claims against the Utility entitled to priority under section 507(a) of the Bankruptcy Code (other than DIP Financing Facility Claims, Administrative Expense Claims and Priority Tax Claims) (the "**Other Utility Priority Claims**").<br><br>***Treatment:*** Each holder of an allowed Other Utility Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other Utility Priority Claim, (i) cash in an amount equal to such allowed Other Utility Priority Claim on the Effective Date or as soon as practicable thereafter, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.<br><br>***Voting:*** Unimpaired – deemed to accept. | [TBD] | 100% |
| **Class 2B: Other Utility Secured Claims** | ***Classification:*** Holders of claims (other than DIP Financing Facility Claims) that are secured by valid, perfected and enforceable liens on property in which the Utility has an interest or that are subject to setoff pursuant to section 553 of the Bankruptcy Code (the "**Other Utility Secured Claims**").<br><br>***Treatment:*** Each holder of an allowed Other Utility Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other Utility Secured Claim, (i) retention of its Other Utility Secured Claim and any properly perfected and valid liens, (ii) payment in full in cash, including the payment of any interest allowed and payable under section 506(b) of the Bankruptcy Code, on the Effective Date or as | [TBD] | 100% |

7

| | | | |
|---|---|---|---|
| | soon thereafter as is reasonably practicable, or (iii) treatment of such allowed Other Utility Secured Claim in any other manner that renders the Other Utility Secured Claim unimpaired, including reinstatement under section 1124(2) of the Bankruptcy Code.<br><br>*Voting*: Unimpaired – deemed to accept. | | |
| **Class 3B: Utility Unsecured Revolving Credit Facility Claims** | *Classification*: Holders of claims arising under the Second Amended and Restated Credit Agreement, dated as of April 27, 2015, by and between the Utility and Citibank, N.A., as administrative agent (the "**Utility Unsecured Revolving Credit Agreement**"), in the aggregate principal amount of up to $3 billion (the "**Utility Unsecured Revolving Credit Facility Claims**").<br><br>*Treatment*: On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Utility Unsecured Revolving Credit Facility Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Utility Unsecured Revolving Credit Facility Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date under the Utility Unsecured Revolving Credit Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate.<br><br>*Voting*: Unimpaired – deemed to accept. | Appx. $2.885 billion | 100% |
| **Class 4B: Utility Unsecured Term Loan Claims** | *Classification*: Holders of claims arising under the Term Loan Agreement, dated as of February 23, 2018, by and between the Utility and The Bank of Tokyo-Mitsubishi UFJ, Ltd., as administrative agent (the "**Utility Unsecured Term Loan Agreement**"), in the aggregate principal amount of $250 million (the "**Utility Unsecured Term Loan Claims**").<br><br>*Treatment*: On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Utility Unsecured Term Loan Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Utility Unsecured Term Loan Claim, cash in an amount equal to (i) the outstanding principal and accrued and unpaid interest as of the Petition Date | Appx. $250 million | 100% |

8

| | | | |
|---|---|---|---|
| | under the Utility Unsecured Term Loan Agreement and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate.<br><br>*Voting*: Unimpaired – deemed to accept. | | |
| **Class 5B: Short-Term Utility Unsecured Notes Claims** | *Classification*: Holders of claims arising under the notes (or the applicable indenture relating thereto) (the "**Short-Term Utility Unsecured Notes**" and the indentures, the "**Short-Term Utility Unsecured Notes Indentures**") maturing on or before December 1, 2022 (the "**Short-Term Utility Unsecured Notes Claims**"), identified in **Schedule 2** hereto.[3]<br><br>*Treatment*: On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Short-Term Utility Unsecured Notes Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Short-Term Utility Unsecured Notes Claim, cash in an amount equal to the sum of (i) outstanding principal and accrued and unpaid interest as of the Petition Date at the contract rate under the applicable Short-Term Utility Unsecured Notes or Short-Term Utility Unsecured Notes Indentures, (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate under the applicable Short-Term Utility Unsecured Notes or Short-Term Utility Unsecured Notes Indentures and (iii) any prepayment premium, makewhole or other similar call protection under the applicable Short-Term Utility Unsecured Notes or Short-Term Utility Unsecured Notes Indentures.<br><br>*Voting*: Unimpaired – deemed to accept. | Appx. $1.75 billion | 100% |
| **Class 6B: Long-Term Utility Unsecured** | *Classification*: Holders of claims arising under any notes (or the applicable indenture relating thereto) (the "**Long-Term Utility Unsecured Notes**" and the indentures, the "**Long-Term Utility Unsecured Notes** | Appx. $15.8 billion | 100% |

---

[3] If required, the Plan will provide subclasses for claims arising from each separate issuance of the Short-Term Utility Unsecured Notes.

| Notes Claims | **Indentures**") maturing on or after January 1, 2023 (the "**Long-Term Utility Unsecured Notes Claims**"), identified in **Schedule 3** hereto.[4]<br><br>***Treatment***: On the Effective Date or as soon thereafter as is reasonably practicable, all Long-Term Utility Unsecured Notes shall be reinstated in full. All Long-Term Utility Unsecured Notes Claims relating to (i) accrued and unpaid interest as of the Petition Date and (ii) accrued and unpaid interest from the Petition Date through the Effective Date, shall be paid in full in cash at the contract rate under the applicable Long-Term Utility Unsecured Notes or Long-Term Utility Unsecured Notes Indentures.<br><br>***Voting***: Unimpaired – deemed to accept. | | |
|---|---|---|---|
| **Class 7B: Utility Pollution Control Bond-Related Claims** | ***Classification:*** Holders of claims arising under (a) the Pollution Control Bonds issued by the California Pollution Control Financing Authority and the California Infrastructure and Economic Development Bank (the "**Utility Pollution Control Bonds**") or (b) related reimbursement obligations from certain letter of credit facilities (the "**PCB Revolving Facilities**") or reimbursement agreements with the Utility (the "**Reimbursement Agreements**") in the aggregate outstanding principal amount of $863 million (the "**Utility Pollution Control Bond-Related Claims**").<br><br>***Treatment:*** On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an allowed Utility Pollution Control Bond-Related Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Utility Pollution Control Bond-Related Claim, cash in an amount equal to the sum of (i) outstanding principal and accrued and unpaid interest as of the Petition Date at the contract rate under the applicable Utility Pollution Control Bond, PCB Revolving Facility or Reimbursement Agreement, and (ii) accrued and unpaid interest from the Petition Date through the Effective Date at the contract rate under the applicable Utility Pollution Control Bond, PCB Revolving Facility, or Reimbursement Agreement. | $863 million | 100% |

---

[4] If required, the Plan will provide subclasses for claims arising from each separate issuance of the Long-Term Utility Unsecured Notes.

4822-9860-1126.1

| | | | |
|---|---|---|---|
| | *Voting*: Unimpaired – deemed to accept. | | |
| **Class 8B: Utility Intercompany Claims** | *Classification:* Claims held by the PG&E Corp. or any non-Debtor affiliate of PG&E Corp. against the Utility (the "**Utility Intercompany Claims**").<br><br>*Treatment:* All allowed Utility Intercompany Claims, if any, shall be reinstated, compromised or cancelled at the election of the Debtors (with the consent of the Ad Hoc Committee, not to be unreasonably withheld), such that the Utility Intercompany Claims are treated in a tax-efficient manner.<br><br>*Voting*: Unimpaired – deemed to accept. | [TBD] | 100% |
| **Class 9B: Fire Victim Claims** | *General Procedures:* With respect to all unsecured claims arising out of the prepetition Northern California wildfires and the Ghost Ship fire, including, but not limited to, any accrued and unasserted unsecured claims as of the Effective Date related to the Fires (as defined below), of individuals, businesses, insurance subrogation claimants, nonprofits, charities, and any federal, state and local entities (including governmental and regulatory authorities and agencies) for damages, losses, fines, penalties, punitive and/or exemplary damages, restitution, reimbursement, attorney's fees, costs and/or interest, declaratory and/or injunctive relief (the "**Fire Claims**"), the aggregate maximum amount of consideration to be paid in respect of all Fire Claims will be the Aggregate Fire Consideration.<br><br>The Reorganized Debtors will establish the Fire Victim Claims Trust which will be funded with: (i) $12 billion in cash; (ii) $12 billion in shares of common stock of the Reorganized PG&E Corp. (at plan value); and (iii) the Aggregate Fire Victim Consideration and the assignment of rights, claims, and causes of action as described in the Means for Implementation section, including rights under certain 2015/2016 insurance policies of the Debtors (collectively, the "**Aggregate Fire Consideration**"). Notwithstanding any other provision herein, the rights in and/or proceeds of the Debtors' 2016 insurance policies that provide coverage to the Debtors in connection with the Ghost Ship fire shall be transferred to the Fire Victim Claims Trust solely for the benefit of victims of the Ghost Ship fire and shall not be used to pay any other allowed claims; provided, however, the parties shall work together to ensure that | $Unknown | Unknown % |

11

| | | | |
|---|---|---|---|
| | coverage under the Debtors' 2016 insurance policies shall be available to the Reorganized Debtors to pay claims not related to Ghost Ship.<br><br>The terms and conditions of the Plan and Aggregate Fire Victim Consideration provided to holders of Fire Claims represent a full and final settlement of the Fire Claims, once the Plan is approved, without regard to whether the allowed and/or filed amount of Fire Claims are in excess of or less than the amount of Aggregate Fire Victim Consideration.<br><br>**Fire Victim Claims** – Any Fire Claim that is not a Subrogation Fire Claim (as defined below) or Governmental Fire Claim (as defined below).<br><br>*Treatment*: On the Effective Date, each holder of a Fire Victim Claim that has been allowed in accordance with the procedures for allowance and payment of such claims as set forth in the Means for Implementation section (an "**Allowed Fire Victim Claim**") shall be entitled to a claim against the Fire Victim Claims Trust in full and final satisfaction, compromise, settlement, release, and discharge of such claim.<br><br>Treatment under Class 9B shall exclude Subrogation Fire Claims and Governmental Fire Claims which shall be treated in Classes 10B and 11B respectively.<br><br>*Voting*: Impaired – entitled to vote. | | |
| **Class 10B: Subrogated Fire Claims** | *General Procedures:* ~~same as apply to Class 9B above.~~The Reorganized Debtors will establish the Subrogation Claims Trust which will be funded with the Aggregate Subrogation Consideration.<br><br>The terms and conditions of the Plan and Aggregate Subrogation Consideration provided to holders of Subrogation Fire Claims (as defined below) represent a full and final settlement of the Subrogation Fire Claims, once the Plan is approved, without regard to whether the allowed and/or filed amount of Subrogation Fire Claims are in excess of or less than the amount of Aggregate Subrogation Consideration.<br><br>**Subrogation Fire Claims** – Any Fire Claim arising by way of subrogation under applicable law or | $~~Unknown~~11.0 billion | Unknown % |

12

| | | | |
|---|---|---|---|
| | contract on account of amounts incurred (paid and reserved) by an insurer under and pursuant to the terms and coverage provisions of a property & casualty insurance policy (a "**Subrogation Fire Claim**"). | | |
| | *Treatment:* On the Effective Date, each holder of a Subrogation Fire Claim that has been allowed in accordance with the procedures for allowance and payment of such claims as set forth in the Means for Implementation section (an "**Allowed Subrogation Fire Claim**") shall be entitled to a claim against the ~~Fire~~Subrogation Claims Trust in full and final satisfaction, compromise, settlement, release, and discharge of such claim. On the Effective Date, as part of the treatment afforded hereunder to the holders of Allowed Subrogation Fire Claims, the Reorganized Debtors shall pay or reimburse the members of the Ad Hoc Subrogation Group for the reasonable, documented and contractual professional fees and expenses of (i) Willkie Farr & Gallagher LLP, (ii) Rothschild & Co., (iii) Diemer & Wei LLP, (iv) Kekst and Company Incorporated d/b/a Kekst CNC and (v) Wilson Public Affairs up to an aggregate amount of $55 million (which shall include success fees, transaction fees or similar fees). | | |
| | *Voting*: Impaired – entitled to vote. | | |
| **Class 11B: Governmental Fire Claims** | *General Procedures:* same as apply to Class 9B above.<br><br>The terms and conditions of the Plan and Aggregate Fire Victim Consideration provided to holders of Allowed Governmental Fire Claims represent a full and final settlement of the Allowed Governmental Fire Claims, once the Plan is approved, without regard to whether the allowed and/or filed amount of Allowed Governmental Fire Claims are in excess of or less than the amount of Aggregate Fire Victim Consideration.<br><br>**Governmental Fire Claims** – Any Fire Claim arising in any way from and asserted by a federal, state or local government entity under applicable law or contract.<br><br>*Treatment:* On the Effective Date, each holder of a Governmental Fire Claim that has been allowed in accordance with the procedures for allowance and | $Unknown | Unknown % |

13

| | | | |
|---|---|---|---|
| | payment of such claims as set forth in the Means for Implementation section (an "**Allowed Governmental Fire Claim**") shall be entitled to a claim against the Fire Victim Claims Trust in full and final satisfaction, compromise, settlement, release, and discharge of such allowed claim.<br><br>*Voting*: Impaired – entitled to vote. | | |
| **Class 12B: Other Utility General Unsecured Claims** | *Classification*: Holders of general unsecured claims (other than Other Utility Priority Claims, Utility Unsecured Revolving Credit Facility Claims, Utility Unsecured Term Loan Claims, Short-Term Utility Unsecured Notes Claims, Long-Term Utility Unsecured Notes Claims, Fire Claims, and Utility Workers' Compensation Claims) against the Utility (the "**Other Utility General Unsecured Claims**").<br><br>*Treatment*: Each holder of an allowed Other Utility General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such allowed Other Utility General Unsecured Claim, cash in an amount equal to the allowed Other Utility General Unsecured Claim, together with accrued and unpaid interest from the Petition Date through the Effective Date at the applicable contract rate or, in the absence of a contract rate, the Federal Judgement Rate, on the earlier of (i) the Effective Date or as soon thereafter as is reasonably practicable or (ii) the date such Other Utility General Unsecured Claim becomes an allowed Other Utility General Claim or as soon thereafter as is reasonably practicable.<br><br>*Voting*: Unimpaired – deemed to accept. | [TBD] | 100% |
| **Class 13B: Utility Workers' Compensation Claims** | *Classification*: Holders of claims against the Utility by employees of the Utility for the payment of workers' compensation benefits under applicable law (the "**Utility Workers' Compensation Claims**").<br><br>*Treatment*: Each allowed Utility Workers' Compensation Claim shall be satisfied in full in the ordinary course of business at such time and in such manner as the Utility is obligated to satisfy such Utility Workers' Compensation Claim under applicable law.<br><br>*Voting*: Unimpaired – deemed to accept. | [TBD] | 100% |
| **Class 14B:** | *Classification*: Holders of outstanding preferred | | |

14

| | | | |
|---|---|---|---|
| **Utility Preferred Interests** | Interests in the Utility (the "**Utility Preferred Interests**")<br><br>***Treatment***: Holders of allowed Utility Preferred Interests shall retain ownership of all Utility Preferred Interests in the Reorganized Utility (including any associated liquidation preference).<br><br>***Voting***: Unimpaired – deemed to accept. | N/A | 100% |
| **Class 15B: Utility Common Interests** | ***Classification***: PG&E Corp. as holder of all outstanding common Interests in the Utility (the "**Utility Common Interests**").<br><br>***Treatment***: The Reorganized PG&E Corp., as holder of the Utility Common Interests, shall retain ownership of all Utility Common Interests in the Reorganized Utility.<br><br>***Voting***: Unimpaired – deemed to accept. | N/A | 100% |

| | |
|---|---|
| **MEANS FOR IMPLEMENTATION** ||
| **Fire Victim Claims Trust** | On the Effective Date, the Reorganized Debtors will establish the Fire Victim Claims Trust. The Fire Victim Claims Trust will be funded with the Aggregate Fire Victim Consideration ~~will include (i) $12 billion in cash, (ii) $12 billion of shares of common stock of Reorganized PG&E Corp. (at plan value), and (iii)~~including the assignment of rights, claims, and causes of action as described below in the Means for Implementation section, including rights under certain 2015/2016 insurance policies of the Debtors.<br><br>As part of the Aggregate Fire Victim Consideration, the Debtors shall also assign to the Fire Victim Claims Trust any and all rights, claims, causes of action, and defenses related thereto related directly or indirectly to any of the prepetition fires listed in Schedule 1 (the "**Fires**") that the Debtors may have against any third party, including, without limitation, against vendors, suppliers, third party contractors and consultants (including those who provided services regarding PGE's electrical system, system equipment, inspection and maintenance of the system, and vegetation management), and current and former directors and officers of the Debtors (to be mutually agreed upon by the TCC and the Ad Hoc Committee and included as an annex to the Plan).<br><br>The Fire Victim Claims Trust shall be administered by a trustee (the "**Fire Victim Claims Trustee**") and governed by an oversight committee (the "**Fire Victim Claims Trust Oversight Committee**") selected by the TCC. An agreement (the "**Fire Victim Claims Trust Agreement**") shall establish and set forth the provisions of the Fire Victim Claims Trust. The Fire Victim Claims Trust Agreement shall be in form and substance reasonably acceptable to the TCC. |

15

The Fire Victim Claims Trustee shall be selected by the TCC. The Fire Victim Claims Trust Oversight Committee shall consist of three members, which shall be selected by TCC.

The Fire Victim Claims Trustee and the Fire Victim Claims Trust Oversight Committee shall have the authority to retain any advisors for the purpose of carrying out their respective duties under the Fire Victim Claims Trust Agreement.

Allowance of Claims: The Fire Victim Claims Trust Agreement will provide procedures for the holders of Fire Victim Claims and Allowed Governmental Fire Claims to resolve their claims, at their respective option, via a settlement matrix or allowed claim requirements and procedures approved by the TCC and the Bankruptcy Court as part of plan confirmation, including mediation, streamlined binding arbitration procedures, or a jury trial to the extent a holder of Fire Victim Claims is entitled to such a trial. The Bankruptcy Court would retain jurisdiction over the Fire Victim Claims Trust, Fire Victim Claims Trustee, Fire Victim Claims Oversight Committee, and administration of the Fire Victim Claims Trust, subject to the terms of the Fire Victim Claims Trust Agreement, until the Fire Victim Claims Trust is terminated.

Payment of Claims and Reserve: Given that the amount of the Fire Victim Claims Trust is limited, the Fire Victim Claims Trustee shall provide for an appropriate payment reserve, in ~~his~~such trustee's reasonable business judgment, to ensure equal payment for all holders of Fire Victim Claims in accordance with applicable law. ~~Neither the Plan nor the Trust Agreement shall elevate the priority of claims of holders of Subrogation Fire Claims over the claims of holders of~~The Fire Victim Claims ~~regardless of their status as allowed claims. The~~Trust shall release reserves only when appropriate and it is clear that claimants will receive equitable distributions as described below.

Unless otherwise ordered by the Bankruptcy Court, in order to maintain an appropriate reserve, the Fire Victim Claims Trustee shall pay one or more interim distributions on Allowed Fire Victim Claims, reserving a final distribution on such claims until the end of Fire Victim Claims Trust administration after equal percentage payments have been made on Allowed Fire Victim Claims. ~~At that time, at the end of Trust administration, after each Allowed Fire Victim Claim has been paid in full, the Trustee may then and only then pay an Allowed Subrogation Fire Claim(s) that corresponds to the paid in full Allowed Fire Victim Claim.~~

In the event that there are remaining funds after payment of all claims of the Fire Victim Claims Trust, the excess funds remaining in the Fire Victim Claims Trust ~~(the "**Excess Fire Claims Trust Funds**")~~ shall be paid to the Wildfire Fund.

| | |
|---|---|
| **Subrogation Claims Trust** | On the Effective Date, the Reorganized Debtors will establish the Subrogation Claims Trust. The Subrogation Claims Trust will be funded with the Aggregate Subrogation Consideration.<br><br>Members of the Ad Hoc Group of Subrogation Claim Holders (the "**Ad Hoc Subrogation Group**") will enter into a separate agreement (the "**Allocation Agreement**"), which intercreditor agreement shall govern the distribution of the |

4822-9860-1126.1

Aggregate Subrogation Consideration to holders of Subrogation Fire Claims in accordance with the relevant recovery percentages assigned to individual wildfires or groups of wildfires. The Reorganized Debtors will not be party to the Allocation Agreement and will not have any input regarding the terms thereof and shall not be bound or otherwise prejudiced by the Allocation Agreement or any terms thereof.

The Subrogation Claims Trust shall be administered by a trustee (the "**Subrogation Claims Trustee**") selected by the Ad Hoc Subrogation Group. An agreement (the "**Subrogation Claims Trust Agreement**") shall establish and set forth the provisions of the Subrogation Claims Trust. The Subrogation Claims Trust Agreement shall be in form and substance reasonably acceptable to the Ad Hoc Subrogation Group. The Subrogation Claims Trustee shall have the authority to retain any advisors for the purpose of carrying out their respective duties under the Subrogation Claims Trust Agreement.

On the Effective Date, an advisory board (the "**Subrogation Claims Trust Advisory Board**") shall be appointed to consult with and advise the Subrogation Claims Trustee. The Subrogation Claims Trust Advisory Board shall consist of three (3) members selected by holders of Subrogation Claims as set forth in the Subrogation Claims Trust Agreement. The Subrogation Claims Trust Advisory Board shall, as and when requested by the Subrogation Claims Trustee, or as otherwise required under the Plan, the Confirmation Order, or the Subrogation Claims Trust Agreement, consult with and advise the Subrogation Claims Trustee as to the administration and management of the Subrogation Claims Trust in accordance with the terms of the Plan, the Confirmation Order and/or the Subrogation Claims Trust Agreement.

On the Effective Date, the Subrogation Claims Trust shall immediately pay holders of Subrogation Fire Claims their allocable share for Subrogation Fire Claims on account of amounts paid to insureds prior to the Effective Date (the "**Initial Subrogation Claims Trust Distribution**").

The remainder of the Aggregate Subrogation Consideration that is not part of the Initial Subrogation Claims Trust Distribution (i.e., the portion of the recovery on account of Subrogation Fire Claims arising from reserved IBNR amounts to individual insureds as of the Effective Date) (the "**Subrogation Recovery Reserve**") shall be held by the Subrogation Claims Trust for the benefit of holders of Subrogation Fire Claims. The Subrogation Claims Trust shall periodically pay subrogation claimants their allocated share for Subrogation Fire Claims on account of amounts paid to insureds after the Effective Date in accordance with the Allocation Agreement. For the avoidance of doubt, to the extent certain fires are over-reserved, and other fires are under-reserved, the Subrogation Claims Trust shall have the ability to reallocate funds to facilitate each subrogation claim recovering the applicable fire by fire payment percentage.

Upon the earlier of (i) 5 years after the Effective Date, or (ii) the Subrogation Claims Trustee's reasonable determination that no more reserves will be paid to insureds, any remaining Subrogation Recovery Reserve shall be distributed pro rata to holders of Subrogation Fire Claims in accordance with the Allocation Agreement.

4822-9860-1126.1
Case: 19-30088   Doc# 4006   Filed: 09/25/19   Entered: 09/25/19 17:09:17   Page 57
of 77

| | |
|---|---|
| **Channeling Injunction** | The Fire Victim Claims Trust shall be the sole source of recovery for the Fire Claims (other than Subrogation Fire Claims) against the Debtors, and the Subrogation Claims Trust shall be the sole source of recovery for the Subrogation Fire Claims against the Debtors. The Plan and order confirming the Plan (the "**Confirmation Order**") shall (i) channel all Fire Claims (other than Subrogation Fire Claims) against the Debtors to the Fire Victim Claims Trust and (ii) channel all Subrogation Fire Claims against the Debtors to the ~~Fire~~Subrogation Claims Trust for payment in each case in accordance with the terms and procedures provided therein. The Plan and the Confirmation Order shall bar and enjoin holders of Fire Claims from seeking to recover on account of their Fire Claims against the Reorganized Debtors or any assets of the Reorganized Debtors, except with respect to any and all rights under and the proceeds of the Debtors' insurance policies that provide coverage for the Fires (the "**Channeling Injunction**"). |
| **Contributions to the Wildfire Fund** | On the Effective Date, the Debtors will contribute $5.0 billion, which amount consists of both the Debtors' initial and first annual contributions, to the Fund in order to address future wildfire liability. |
| **SOURCES OF PLAN FUNDING** | |
| **Insurance Rights** | The parties shall work in good faith to determine whether and how to treat the Debtors' insurance policies consistent with this term sheet.<br><br>Up to $2.209 billion of the proceeds of 2017/2018 insurance policies of the Debtors will be used as a source of cash funding under the Plan. |
| **Cash on Hand** | $[●] billion of the Debtors' cash on hand on the Effective Date. |
| **New Money Investment in PG&E Corp.** | On the Effective Date, Reorganized PG&E Corp. shall issue shares of Reorganized PG&E Corp. Common Stock (the "**New Money Reorganized PG&E Corp. Common Stock Issuance**") to the new money investors identified below (the "**PG&E Corp. New Money Investor Group**"), in exchange for $~~14,886,190,507~~15,512,332,599 in cash (the "**PG&E Corp. New Money Investment**").<br><br>The commitments for the PG&E Corp. New Money Investment shall be provided as follows:<br><br>1. 50% by the consortium of large Utility bondholders identified in **Schedule 4** attached hereto (the "**PG&E Corp. New Money Commitment Group**");<br>2. 45% by the members of the Ad Hoc Committee; and<br>3. 5% by the holders of PG&E Common Interests in Class 8A.<br><br>To the extent that the members of the Ad Hoc Committee and/or holders of PG&E Common Interests in Class 8A do not provide the commitments described above for the PG&E Corp. New Money Investment, the PG&E Corp. New Money Commitment Group will provide commitments covering any such remaining amount. |

4822-9860-1126.1
Case: 19-30088   Doc# 4006   Filed: 09/25/19   Entered: 09/25/19 17:09:17   Page 58 of 77

| | |
|---|---|
| **New PG&E Corp. Senior Unsecured Notes** | On the Effective Date, Reorganized PG&E Corp. shall issue $~~5.5~~5.75 billion in new senior unsecured notes (the "**New PG&E Corp. Senior Unsecured Notes**") to the new money investors identified below (the "**New PG&E Corp. Senior Unsecured Notes Investor Group**") in exchange for $~~5.5~~5.75 billion in cash (the "**New PG&E Corp. Senior Unsecured Notes Investment**"). The New PG&E Corp. Senior Unsecured Notes shall have terms materially consistent with the terms contained in the term sheet (the "**New PG&E Corp. Senior Unsecured Notes Term Sheet**") attached hereto as **Exhibit 1**. <br><br> The commitments for the New PG&E Corp. Senior Unsecured Notes Investment shall be provided as follows: <br><br>     1.    50% by a consortium of large Utility bondholders identified in **Schedule 5** attached hereto (the "**New PG&E Corp. Senior Unsecured Notes Commitment Group**"); <br>     2.    50% by the members of the Ad Hoc Committee. <br><br> To the extent that the members of the Ad Hoc Committee do not provide the commitments described above for the New PG&E Corp. Senior Unsecured Notes Investment, the PG&E Corp. New Money Commitment Group will provide commitments covering any such remaining amount. |
| **New Utility Secured Notes** | The Debtors shall use commercially reasonable efforts to have the Reorganized Utility issue, on the Effective Date, $7,978,610,000 in new secured notes (collectively, the "**New Utility Secured Notes**") to third party investors in exchange for $7,978,610,000 in cash, with the proceeds being used to pay down all existing Utility Unsecured Term Loan Claims, Utility Unsecured Revolving Credit Facility Claims and Short-Term Utility Unsecured Notes Claims. The New Utility Secured Notes issued to third party investors shall have terms that are acceptable to the Ad Hoc Committee and at least as favorable to the Reorganized Utility as the terms contained in the term sheet (the "**New Utility Secured Notes Term Sheet**") attached hereto as **Exhibit 2**. <br><br> In the event that the Reorganized Utility fails to issue all or a portion of the New Utility Secured Notes to third party investors on the Effective Date after using commercially reasonable efforts to do so as described above, on the Effective Date, the Reorganized Utility shall issue New Utility Secured Notes (on terms materially consistent with those contained in the New Utility Secured Notes Term Sheet) in the amount of any such shortfall to the new money investors identified below (the "**Reorganized Utility Secured Notes Investor Group**" and together with the PG&E Corp. New Money Investor Group and the New PG&E Corp. Senior Unsecured Notes Investor Group, the "**Investor Group**") (on pro rata basis as described in the Amended and Restated Commitment Letter to be executed in connection with this Plan Term Sheet (the "**Commitment Letter**")) in exchange for the equivalent amount of cash (the "**New Utility Secured Notes Investment**"). <br><br> The commitments for the New Utility Secured Notes Investment shall be provided as follows: <br><br>     1.    50% by a consortium of large Utility bondholders identified in **Schedule 6** attached hereto (the "**New Utility Secured Notes Commitment Group**"); |

|  |  |
|---|---|
|  | 2. 50% by the members of the Ad Hoc Committee. |
|  | To the extent that the members of the Ad Hoc Committee do not provide the commitments described above for the New Utility Secured Notes Investment, the PG&E Corp. New Money Commitment Group will provide commitments covering any such remaining amount. |
|  | The PG&E Corp. New Money Commitment Group and the New PG&E Corp. Senior Unsecured Notes Commitment Group agree to use commercially reasonable efforts to structure the New Money Reorganized PG&E Corp. Common Stock Issuance and the New PG&E Corp. Senior Unsecured Notes in a manner that will facilitate the issuance of the New Utility Secured Notes on customary market terms, including with respect to the fees payable by the Utility in connection therewith. |
| **Backstop Commitment Fees** | In consideration of the agreement to backstop the commitments described above, the following backstop commitment fees (the "**Backstop Commitment Fees**") shall be payable: |
|  | 1. 3.0% of the PG&E Corp. New Money Investment to the PG&E Corp. New Money Commitment Group; and<br>2. 1.5% of the New PG&E Corp. Senior Unsecured Notes Investment to the New PG&E Corp. Senior Unsecured Notes Commitment Group.<br>3. 1.5% of the maximum amount of New Utility Secured Notes issuable pursuant to this term sheet ($7,978,610,000) to the New Utility Secured Notes Commitment Group. |
|  | The Backstop Commitment Fees shall be payable by Reorganized PG&E Corp. in cash or Reorganized PG&E Corp. Common Stock at the election of each backstop commitment party. |

| REGULATORY REQUIREMENTS |  |
|---|---|
| **FERC** | Prior to the Effective Date, the Debtors and Reorganized Debtors shall receive, as necessary or appropriate, all of the following approvals from the Federal Energy Regulatory Commission ("**FERC**") (collectively, the "**FERC Approvals**"). The Debtors and Reorganized Debtors shall receive a final order, satisfactory to the Ad Hoc Committee, from the FERC granting authorization under Section 203 of the Federal Power Act (the "FPA") to implement the Plan. In addition, if the reorganization results in the transfer of FERC-jurisdictional natural gas assets or hydroelectric assets, the Debtors and Reorganized Debtors shall receive, as necessary or appropriate, approval satisfactory to the Ad Hoc Committee under Section 7 of the Natural Gas Act ("**NGA**") and FPA Section 8, respectively, to transfer those assets. Prior to the Effective Date, the Debtors and Reorganized Debtors shall also receive, if and to the extent necessary or appropriate, a final order from FERC, satisfactory to the Ad Hoc Committee granting authorization under Section 204 of the FPA to issue new securities as provided under the Plan. Finally, prior to the Effective Date, the Debtors and Reorganized Debtors shall receive FERC acceptance, satisfactory to the Ad Hoc Committee, with respect to any new or modified service tariffs under the FPA or NGA necessary or appropriate to implement the Plan, and shall receive approval or acceptance under FPA Section |

| | |
|---|---|
| | 305 with respect to the creation of any interlocking directorates. |
| **CPUC** | Prior to the Effective Date the Debtors and Reorganized Debtors shall receive all necessary or appropriate approvals, authorizations and final orders from the California Public Utilities Commission ("**CPUC**") required to implement the Plan, to participate in the Wildfire Fund, and to be eligible for the presumption of reasonableness provided in Public Utilities Code section 451.1, in each case satisfactory to the Ad Hoc Committee, including, but not limited to: (a) successful conclusion of the ROE/Cap Structure Proceedings (as defined below); (b) approval of transfer of control over the Utility and any changes to PG&E's corporate structure and authorizations for the Utility to operate as a utility, if required; (c) resolution of claims for monetary fines or penalties under the California Public Utilities Code for conduct prior to the Petition Date, (d) approval (or exemption from approval) of the overall financing structure and securities to be issued under the Plan; (e) approvals and determinations pursuant AB 1054 necessary for participation in the Wildfire Fund, including, but not limited to, a determination that the Plan fully and finally compensates ratepayers in full compliance with Public Utilities Code section 3292(b)(1)(E) throughout the existence of the Wildfire Fund, and (f) approval that the Plan, including in regards to compensation for executive officers, complies with the requirements of Public Utilities Code section 8389 (collectively, the "**CPUC Determinations**").<br><br>The "**ROE/Cap Structure Proceeding**" shall mean the proceeding(s) before the CPUC governing the authorized return on equity and regulated capital structure of the Utility. A successful conclusion of the ROE/Cap Structure Proceeding for purposes of this proceeding shall mean, either (x) a determination that the current authorized capital structure and a minimum of 10.25% ROE shall be fixed for three (3) years, or (y) a mutually agreed deferral of the Utility's 2020 general rate case and/or cost of capital proceeding before the CPUC for a period of 24 months from the Effective Date of the Plan, with the current authorized capital structure and/or a minimum of 10.25% ROE, as relevant, to remain unchanged until expiration of the deferral period. |
| **NRC** | If required, prior to the Effective Date, the Debtors and Reorganized Debtors shall receive approval from the Nuclear Regulatory Commission for the transfer of the license for the Diablo Canyon Power Plant (the "**NRC Approval**"). |
| **OTHER TERMS** | |
| **Releases** | The Plan shall provide for customary release of all claims and causes of action against (i) the Debtors, (ii) each of the members of the Ad Hoc Committee, (iii) the Creditors' Committee and each of its members, (iv) the TCC and each of its members, (v) the Fire Victim Claims Trustee, (vi) the Fire Victim Claims Trust Oversight Committee and each of its members ~~and~~, (vii) the Ad Hoc Subrogation Group and each of its members, (viii) the Subrogation Claims Trust Trustee, (ix) the Subrogation Claims Trust Advisory Board and each of its members, and (x) with respect to each of the foregoing entities in clauses (i) through (~~vii~~ix), such entities' Related Persons[5] (each such entity in foregoing clauses (i) through (~~vii~~ix), a |

---

[5] "**Related Persons**" with respect to an entity shall mean that entity's current and former affiliates, and such entities' and their current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns,

4822-9860-1126.1

"**Released Party**").

Releases shall be provided by (i) the Debtors, (ii) each of the members of the Ad Hoc Committee, (iii) the Creditors' Committee and each of its members, (iv) the TCC and each of its members, (v) the Fire Victim Claims Trustee, (vi) the Fire Victim Claims Trust Oversight Committee and each of its members and, (vii) the Ad Hoc Subrogation Group and each of its members, (viii) the Subrogation Claims Trustee, (ix) the Subrogation Claims Trust Advisory Board and each of its members and (x) with respect to each of the foregoing entities in clauses (i) through (vii ix), such entities' Related Persons, and (viii x) all holders of claims and interests against the Debtors, as provided in more detail below (each such entity in foregoing clauses (i) through (viii x), a "**Releasing Party**").

The releases to be set forth in the Plan shall include consensual releases from each holder of a claim or interest (as set forth in the "Plan Treatment of PG&E Corp. and Utility Claims" section above) that (i) votes to accept the Plan or (ii) is deemed to accept the Plan, of each Released Party from any claims or causes of action, including any derivative claims asserted or assertable on behalf of any of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates or affiliates or that each other Releasing Party, as applicable, would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any claims or interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring discussions, intercompany transactions between or among the Debtors and/or their Affiliates, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Chapter 11 Cases and related adversary proceedings, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Plan, the disclosure statement to the Plan, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing, or upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date.

In addition, the Plan shall provide for consensual mutual releases of all claims and causes of action by and between each holder of a Fire Victim Claim (i) who votes to accept the Plan or (ii) is deemed to accept the Plan and each holder of a Subrogation Fire Claim (i) who votes to accept the Plan or (ii) is deemed to accept the Plan, based on or relating to, or in any manner arising from, the fires described in Schedule 1.

The Plan shall provide for consensual releases to the Released Parties of all claims and causes of action that could be asserted against, or in any way relating to, or arising out of (i) any Debtor, the Reorganized Debtors, their businesses, or their

---

subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

| | |
|---|---|
| | property, (ii) the Chapter 11 Cases, (iv) the formulation, preparation, negotiation, dissemination, implementation, administration, or consummation of the Plan, or (v) any other act or omission in connection with the Chapter 11 Cases. |
| **Exculpation** | The Plan shall provide certain customary exculpation provisions, which shall include a full exculpation from liability in favor of the Debtors, the Ad Hoc Committee and each of its members and their professionals, the Creditors' Committee and each of its members and their professionals, the TCC and each of its members and their professionals, the Ad Hoc Subrogation Group and each of its members and the Related Persons of all of the foregoing parties from any and all claims and causes of action arising on or after the Petition Date and any and all claims and causes of action relating to any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, soliciting, confirming or consummating the Plan, the disclosure statement to the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases or the restructuring of the Debtors, with the sole exception of willful misconduct or gross negligence. |
| **Corporate Governance** | Upon the Effective Date and for a period of two (2) years thereafter, the board of directors of Reorganized PG&E Corp. (the "**New PG&E Corp. Board**") shall consist of nine (9) members. From the second anniversary of the Effective Date through the fifth anniversary of the Effective Date, the New PG&E Board Corp. Board shall consist of at least nine (9) and no more than eleven (11) members. The chief executive officer of Reorganized PG&E Corp. (the "**New PG&E Corp. CEO**") shall be a director on the New PG&E Corp. Board. The New PG&E Corp. CEO shall not be the chairperson of the New PG&E Corp. Board. The remaining directors of the New PG&E Corp. Board shall be appointed on the Effective Date, and thereafter elected annually, in the following manner: |
| | 1. One (1) director shall be nominated by IBEW Local 1245, on behalf of the employees of Reorganized PG&E Corp.; 2. One (1) director shall be nominated by TURN, on behalf of ratepayers; 3. One (1) director shall be nominated by the Wildfire Fund; and 4. Each other director shall be nominated by the shareholders of Reorganized PG&E Corp. |
| | The board of directors of the Reorganized Utility (the "**New Utility Board**" and together with the New PG&E Corp., the "**New Boards**") will consist of the same nine (9) members of the New PG&E Corp. Board. The chairperson of the New PG&E Corp. Board shall not be the chairperson of the New Utility Board. |
| | The New Boards shall consist of a diverse set of individuals (including, among other things, complying with the requirements of California State Bill-826). The majority of the directors of each of the New Boards shall consist of Californians and individuals who have credentialed experience in the areas of utility operations, engineering, safety, regulation and/or clean energy. |
| **Renaming / Rebranding** | For the first 60 days following the Effective Date, all employees of the Reorganized Utility will have the opportunity to submit recommendations for renaming or rebranding the Reorganized Utility. If, after a period of 90 days following the Effective Date, no employee recommendation is selected for renaming or |

4822-9860-1126.1

| | |
|---|---|
| | rebranding the Reorganized Utility, the Reorganized Utility shall effect a change of name to "Golden State Power Light & Gas Co.," and the Reorganized PG&E Corp. shall effect a change of name to "GSPL&G Corp." |
| **Prohibition Against Rate Increases** | The Debtors and the Reorganized Debtors will not seek to recover the contributions made to the ~~Wildfire~~ Fire Victim Claims Trust, the Subrogation Claims Trust or the Wildfire Fund, either directly or indirectly, through rate increases. |
| **Utility Rates to Consumers** | The Plan shall be rate-neutral to end-market consumers in California on a net basis. The Plan will rely on securitization amounts up to similar levels of the securitization bonds issued in 2001. The proceeds of such new securitization bonds will be used for future statewide Wildfire Fund purposes. The proceeds of any new securitization bonds will not be used for the Debtors' or Reorganized Debtors' benefit for plan purposes. |
| **Utility Consumer Rate Credit** | Plan to include sale of certain key real estate assets of the Debtors to previously identified party or parties to allow for up to $1 billion rate credit for the benefit of all PG&E customers, to be applied equally over a period of 10 years from the Effective Date. |
| **Post-Effective Date Management** | The Utility will seek to enter into a long-term management, oversight, O&M or similar contract(s)/agreement(s) with a qualified management team and/or top-tier U.S.-domiciled utility/energy holding company (all previously identified) to oversee and run the Utility beginning on the Effective Date. Such entity or management team may be provided the opportunity to participate in the PG&E Corp. New Money Investment in connection therewith. |
| **Key Corporate Operating Businesses** | PG&E agrees not to sell, and will oppose any attempt to municipalize, any portion of the operating business or assets, for a period of (5) years after the Effective Date of the Plan; *provided*, however, this provision does not apply to any owned, including currently occupied real estate. For the avoidance of doubt, this restriction will not limit any change in control transaction relating to Reorganized PG&E Corp., including, without limitation, a merger, tender offer or similar transaction. |
| **Key Employee Matters** | ~~All PG&E Corp. common stock currently held by employees and retirees in pension accounts, 401(k) accounts and company-sponsored plans will be trued-up for any dilution on account of the Plan with new equity issuances within 90 days after the Effective Date. Such equity interests will be structured to comply with all applicable securities laws.~~ |
| | Subject to the support of the International Brotherhood of Electrical Workers ("**IBEW**") for the Plan, contingent upon and after confirmation of the Plan, the Reorganized Debtors shall enter into an agreement with Local Union No. 1245 of the International Brotherhood of Electrical Workers ("**Local 1245**") with such agreement to apply only to the period starting on the Effective Date, extending the two (2) Collective Bargaining Agreements currently in place between Pacific Gas and Electric Company and Local 1245 (the IBEW Physical Agreement and the IBEW Clerical Agreement, collectively the "**IBEW CBAs**"), until December 31, 2023 with such extension to include (i) a reasonable and appropriate general wage increase for each of the extension years (2022 and 2023) deemed to be appropriate, reasonable, consistent with past practice and included in go-forward allowed rates; (ii) a prohibition on any involuntary layoffs during the term of the extended IBEW CBAs; provided, however such prohibition will not limit any individual employee |

4822-9860-1126.1

| | |
|---|---|
| | terminations or displacements and will not apply to contract workforce or non-bargaining unit members; and (iii) reemphasize the Reorganized Debtors' and Local 1245's commitment to maintaining a spirit of cooperation between labor and management. |
| **Other Employee Matters** | Compensation-related agreements between any of the Debtors and any directors, officers and employees of the Debtors existing as of the Effective Date, including any indemnification and severance obligations, short term incentive plan and other incentive plans, with the exception of the revisions set forth herein, existing as of the Effective Date, shall be assumed by the Reorganized Debtors. |
| | The New Boards shall revise the long term incentive compensation programs of Reorganized PG&E Corp. and the Reorganized Utility by increasing the proportion of LTIP awards subject to performance-based vesting criteria. Performance criteria for LTIP awards will be modified by increasing/implementing performance weightings that are based on achievement of public safety, infrastructure hardening and other related strategic long term objectives. |
| | In addition, following the Effective Date, the New PG&E Corp. Board shall further revise the applicable employee compensation programs such that all PG&E Corp. common stock currently held by employees and retirees in pension accounts, 401(k) accounts and company-sponsored plans will be trued-up for any dilution on account of the Plan with new equity issuances within 90 days after the Effective Date. Such equity interests will be structured to comply with all applicable securities laws. |
| **Pension Matters** | Upon the Effective Date, the Reorganized Debtors shall assume and continue to maintain the PG&E Retirement Plan under its current terms, except to the extent any amendment is required by law, and shall make any and all contributions necessary to satisfy the minimum funding requirements under ERISA Section 302 and Internal Revenue Code Section 430. |
| **Executory Contracts and Unexpired Leases** | All executory contracts and unexpired leases not expressly listed for rejection on an exhibit to the Plan or previously assumed or rejected by order of the Bankruptcy Court shall be deemed assumed as of the Effective Date. |
| | The Debtors or Reorganized Debtors, as applicable, may alter, amend, modify, or supplement the list of assumed executory contracts and unexpired leases and the schedules of executory contracts and unexpired leases with respect to the Debtors or Reorganized Debtors, as applicable, at any time, through and including 45 days after the Effective Date. |
| **Renewable Energy Power Purchase Agreements** | Notwithstanding anything to the contrary in this Term Sheet, the Debtors and Reorganized Debtors shall not reject any renewable energy power purchase agreement. |
| **Tax Matters** | The Debtors and the Ad Hoc Committee will work together in good faith and will use commercially reasonable efforts to structure and implement the Reorganization in a tax efficient and cost-effective manner for the Reorganized Debtors and creditors. |
| | Post-Effective Date ownership of PG&E Corp. shall be structured to maximize the usage of go-forward tax attributes. |

4822-9860-1126.1

| | |
|---|---|
| **Timing / Key Dates** | Emergence from chapter 11 is to be achieved as soon as reasonably practicable, with specific deadlines as follows: <br><br> 1. A plan of reorganization materially consistent with the terms provided in this Term Sheet and disclosure statement corresponding to such plan to be filed no later than October 31, 2019; <br> 2. Order confirming such plan of reorganization entered no later than June 30, 2020; and <br> 3. Effective date of the plan of reorganization to occur no later than 60 days after the entry of the Confirmation Order. |
| **Conditions Precedent to Effective Date of Plan** | The following conditions must be satisfied in order for the Effective Date to occur: <br><br> 1. A plan of reorganization that provides a binding cap on the recoveries to the holders of Fire Claims (including fines, penalties, reimbursement and other similar obligations but excluding Subrogation Fire Claims) that shall not be greater than the Aggregate Fire Victim Consideration shall have been confirmed; <br> 2. A plan of reorganization that provides a binding cap on the recoveries to the holders of Subrogation Fire Claims that shall not be greater than the Aggregate Subrogation Consideration shall have been confirmed; <br> 2.3. the Confirmation Order shall have been entered by the Court in form and substance acceptable to the Ad Hoc Committee and the TCC, be in full force and effect and not be subject to any stay or injunction and shall have become a final order; <br> 3.4. all definitive documents relating to the Plan shall be in form and substance acceptable to the Ad Hoc Committee; <br> 4.5. the Fire Victim Claims Trust shall be have been established in accordance with the terms provided herein and the procedures in connection therewith shall be in form and substance acceptable to the TCC; <br> 5.6. the Fire Victim Claims Trustee shall have been appointed in accordance with the terms provided herein; <br> 6.7. the members of the Fire Victim Claims Trust Oversight Committee shall have been appointed in accordance with the terms provided herein; <br> 8. the Subrogation Claims Trust shall be have been established in accordance with the terms provided herein and the procedures in connection therewith shall be in form and substance acceptable to the Ad Hoc Subrogation Group; <br> 9. the Subrogation Claims Trustee shall have been appointed in accordance with the terms provided herein; <br> 10. the members of the Subrogation Trust Advisory Board shall have been appointed in accordance with the terms provided herein; <br> 7.11. a Wildfire Fund has been established pursuant to Public Utilities Code section 3292, and the Utility has satisfied (i) the conditions to participate in the Wildfire Fund pursuant to Public Utilities Code sections 3292 and 3293, (ii) the conditions to obtain a safety certification pursuant to Public Utilities Code section 8389, and (iii) any other conditions that are required to participate in the Wildfire Fund and be eligible for the presumption of reasonableness provided in Public Utilities Code section 451.1; |

4822-9860-1126.1

| | |
|---|---|
| | 812. the New PG&E Corp. Common Stock, New PG&E Corp. Senior Unsecured Notes and the New Utility Secured Notes shall have been issued in accordance with the terms provided herein and in a manner acceptable to the Ad Hoc Committee and the TCC; |
| | 913. all actions, documents, certificates and agreements necessary or appropriate to implement the Plan shall have been effected or executed or deemed executed and delivered, as the case may be, to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws; and |
| | 1014. all authorizations, consents, regulatory approvals, rulings or documents that are necessary or appropriate to implement and effectuate the Plan (including, but not limited to, the FERC Approvals, the CPUC Determinations, and the NRC Approval) shall have been received. |
| **Conditions Precedent to Funding** | The following conditions must be met in order for the PG&E Corp. New Money Investment, New PG&E Corp. Senior Unsecured Notes Investment, and New Utility Secured Notes Investment to be funded:<br><br>1. A plan of reorganization that provides a binding cap on the recoveries to the holders of Fire Claims (including fines, penalties, reimbursement and other similar obligations but excluding Subrogation Fire Claims) that shall not be greater than the Aggregate Fire Victim Consideration shall have been confirmed and the Effective Date shall have occurred;<br><br>2. A plan of reorganization that provides a binding cap on the recoveries to the holders of Subrogation Fire Claims that shall not be greater than the Aggregate Subrogation Consideration shall have been confirmed;<br><br>23. There shall not have occurred one or more fires in the Debtors' service territory after the Petition Date and prior to January 1, 2020 that is asserted by any person to arise out of the Debtors' activities and that destroys or damages more than 500 dwellings or commercial structures (individually or in the aggregate);<br><br>34. There shall not have occurred one or more fires on or after January 1, 2020 destroying or damaging at least 500 dwellings or commercial structures (individually or in the aggregate) within PG&E's service area at a time when the portion of PG&E's system at the location of such fires was not de-energized;<br><br>45. The form of all common equity documents and the plan of reorganization and confirmation order are in form and substance acceptable to the Investor Group; and<br><br>56. Customary closing conditions for an equity and unsecured debt financing including, but not limited to, no material adverse change to PG&E Corp.<br><br>67. All Conditions Precedent to the Effective Date of the Plan, as set forth above, shall have been satisfied.<br><br>78. The Debtors shall have maintained and held in good standing all of their operating licenses, certificates and other regulatory authorizations and approvals necessary to operate the Utility's business with no pending revocations of any such license, certificate, approval or authorization or open proceedings contemplating such revocation.<br><br>89. Each of the conditions to funding under the Commitment Letter shall have been satisfied or waived by all applicable parties thereto. |

4822-9860-1126.1

*THIS IS NOT A SOLICITATION OF A VOTE ON A PLAN OF REORGANIZATION. SUCH A SOLICITATION MAY ONLY OCCUR FOLLOWING APPROVAL BY THE BANKRUPTCY COURT OF A DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE*

## SCHEDULE 1

List of Northern California Fires Covered by Fire <u>Victim</u> Claims Trust

1. Butte Fire (2015)
2. 2017 North Bay Fires
   a. LaPorte (La Porte)
   b. McCourtney
   c. Lobo
   d. Honey
   e. Redwood / Potter Valley
   f. Sulphur
   g. Cherokee
   h. 37
   i. Blue
   j. Pocket
   k. Atlas
   l. Cascade
   m. Nuns
   n. Adobe
   o. Norrbom
   p. Pressley
   q. Patrick
   r. Pythian / Oakmont
   s. Maacama
   t. Tubbs
   u. Point
3. Camp Fire (2018)
4. Ghost Ship (2016)

*THIS IS NOT A SOLICITATION OF A VOTE ON A PLAN OF REORGANIZATION. SUCH A SOLICITATION MAY ONLY OCCUR FOLLOWING APPROVAL BY THE BANKRUPTCY COURT OF A DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE*

## SCHEDULE 2

Short-Term Utility Unsecured Notes

1. $550 million principal amount of 3.50% senior notes due October 1, 2020

2. $250 million principal amount of 3.50% senior notes due October 1, 2020

3. $300 million principal amount of 4.25% senior notes due May 15, 2021

4. $250 million principal amount of 3.25% senior notes due September 15, 2021

5. $400 million principal amount of 2.45% senior notes due August 15, 2022

29

## SCHEDULE 3

Long-Term Utility Unsecured Notes

1. $375 million principal amount of 3.25% senior notes due June 15, 2023

2. $500 million principal amount of 4.25% senior notes due August 1, 2023

3. $300 million principal amount of 3.85% senior notes due November 15, 2023

4. $450 million principal amount of 3.75% senior notes due February 15, 2024

5. $350 million principal amount of 3.40% senior notes due August 15, 2024

6. $400 million principal amount of 3.50% senior notes due June 15, 2025

7. $200 million principal amount of 3.50% senior notes due June 15, 2025

8. $600 million principal amount of 2.95% senior notes due March 1, 2026

9. $400 million principal amount of 3.30% senior notes due March 15, 2027

10. $1,150 million principal amount of 3.30% senior notes due December 1, 2027

11. $300 million principal amount of 4.65% senior notes due August 1, 2028

12. $3,000 million principal amount of 6.05% senior notes due March 1, 2034

13. $700 million principal amount of 5.80% senior notes due March 1, 2037

14. $250 million principal amount of 5.80% senior notes due March 1, 2037

15. $400 million principal amount of 6.35% senior notes due Feb 15, 2038

16. $550 million principal amount of 6.25% senior notes due March 1, 2039

17. $550 million principal amount of 5.40% senior notes due January 15, 2040

18. $250 million principal amount of 5.40% senior notes due January 15, 2040

19. $250 million principal amount of 4.50% senior notes due December 15, 2041

20. $400 million principal amount of 4.45% senior notes due April 15, 2042

4845-4084-7782.1

4822-9860-1126.1

21. $350 million principal amount of 3.75% senior notes due August 15, 2042

22. $375 million principal amount of 4.60% senior notes due June 15. 2043

23. $500 million principal amount of 5.125% senior notes due November 15, 2043

24. $450 million principal amount of 4.75% senior notes due February 15, 2044

25. $225 million principal amount of 4.75% senior notes due February 15, 2044

26. $500 million principal amount of 4.30% senior notes due March 15, 2045

27. $100 million principal amount of 4.30% senior notes due March 15, 2045

28. $450 million principal amount of 4.25% senior notes due March 15, 2046

29. $400 million principal amount of 4.00% senior notes due December 1, 2046

30. $200 million principal amount of 4.00% senior notes due December 1, 2046

31. $850 million principal amount of 3.95% of senior notes due December 1, 2047

# SCHEDULE 4

PG&E Corp. New Money Commitment Group

1. Apollo Capital Management, L.P.
2. Canyon Capital Advisors LLC
3. Capital Research and Management Company
4. Citadel Advisors LLC
5. Davidson Kempner Capital Management LP
6. Elliott Management Corporation
7. Farallon Capital Management, L.L.C.
8. Oaktree Fund GP, LLC
9. Pacific Investment Management Company LLC
10. Theater Investor LLC (wholly owned by funds managed by ~~OZ Management~~Sculptor Capital LP)
11. Third Point LLC
12. Varde Partners, Inc.

## SCHEDULE 5

New PG&E Corp. Senior Unsecured Notes Commitment Group

1.  Apollo Capital Management, L.P.
2.  Canyon Capital Advisors LLC
3.  Capital Research and Management Company
4.  Citadel Advisors LLC
5.  Davidson Kempner Capital Management LP
6.  Elliott Management Corporation
7.  Farallon Capital Management, L.L.C.
8.  Oaktree  Fund GP, LLC
9.  Pacific Investment Management Company LLC
10. Theater Investor LLC (wholly owned by funds managed by ~~OZ Management~~Sculptor Capital LP)
11. Third Point LLC
12. Varde Partners, Inc.

# SCHEDULE 6

New Utility Secured Notes Commitment Group

1. Apollo Capital Management, L.P.
2. Canyon Capital Advisors LLC
3. Capital Research and Management Company
4. Citadel Advisors LLC
5. Davidson Kempner Capital Management LP
6. Elliott Management Corporation
7. Farallon Capital Management, L.L.C.
8. Oaktree  Fund GP, LLC
9. Pacific Investment Management Company LLC
10. Theater Investor LLC (wholly owned by funds managed by ~~OZ Management~~Sculptor Capital LP)
11. Third Point LLC
12. Varde Partners, Inc.

## EXHIBIT 1

New PG&E Corp. Senior Unsecured Notes Term Sheet

Term sheet included in Commitment Letter.

## EXHIBIT 2

New Utility Secured Notes Term Sheet

Term sheet included in Commitment Letter.

| Summary report: | |
| :---: | :---: |
| **Litera® Change-Pro for Word 10.8.0.80 Document comparison done on 9/25/2019 6:49:08 PM** | |
| **Style name:** Change-Pro Converter | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4822-8222-5054/24/PG&E - Ad Hoc Committee Plan Term Sheet [Post-Reply].docx | |
| **Modified DMS:** nd://4822-8222-5054/33/PG&E - Ad Hoc Committee Plan Term Sheet [Post-Reply].docx | |
| **Changes:** | |
| Add | 129 |
| Delete | 62 |
| Move From | 4 |
| Move To | 4 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 200 |