WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION,** <br><br> - and - <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br> Debtors. <br><br> ☐ Affects PG&E Corporation <br> ☐ Affects Pacific Gas and Electric Company <br> ☒ Affects both Debtors <br><br> * *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 <br><br> (Lead Case) <br> (Jointly Administered) <br><br> **DECLARATION OF JOHN BOKEN IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 1121(d) TO FURTHER EXTEND EXCLUSIVE PERIODS** <br><br> Hearing Date: October 23, 2019 <br> Time: 10 a.m. (Pacific Time) <br> Place: United States Bankruptcy Court <br> Courtroom 17, 16th Floor <br> San Francisco, CA 94102 <br> Judge: Hon. Dennis Montali |

I, John Boken, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am a Managing Director in the Turnaround and Restructuring Services practice of AlixPartners, LLP, an affiliate of both AlixPartners, LLC and AP Services, LLC, which provides interim management services to PG&E Corporation and Pacific Gas and Electric Company, as debtors and debtors-in-possession (collectively, "**PG&E**" or the "**Debtors**")[1] in the above-captioned Chapter 11 Cases (the "**Chapter 11 Cases**"). I currently serve as the Deputy Chief Restructuring Officer for the Debtors as authorized by this Court by Order dated April 9, 2019 [Docket No. 1299].[2]

2. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors. I submit this Declaration in support of the *Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) to Further Extend Exclusive Periods* (the "**Motion**") filed contemporaneously herewith.

3. These Chapter 11 Cases are among the largest chapter 11 filings in U.S. history. The Debtors employ approximately 24,000 employees and operate one of the largest electricity and natural gas utilities in the United States – servicing approximately 16 million customers throughout a 70,000-square-mile service area in northern and central California. The Debtors own and operate approximately 136 generating facilities, nine (9) natural gas compressor stations, over 120,000 circuit miles of electric transmission and distribution lines, and nearly 50,000

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2] My education, background, and professional experience is described in the *Declaration of John Boken in Further Support of First Day Motions and Related Relief* [Docket No. 653] at 2–3.

miles of natural gas transmission and distribution pipelines. The Debtors have approximately $51.7 billion in prepetition liabilities on a book value basis, and potentially thousands of claims arising out of or relating to the wildfires that occurred in Northern California in 2017 and 2018.

4. I believe the Debtors have made significant progress in the administration of these Chapter 11 Cases. During the initial stages of these Chapter 11 Cases, the Debtors' resources were devoted to successfully assuring a smooth transition into chapter 11 and minimizing the business disruptions normally attendant thereto, and maintaining relationships with the Debtors' business partners. During this period, the Debtors have interfaced extensively with the official and unofficial committees functioning in these cases, responding to a multitude of requests for information. The number of parties that have appeared in these Chapter 11 Cases and the number of hearings and contested matters that have been held before the Court are both significant. Establishing a bar date and noticing procedures alone took several months, with the bar date being set for October 21, 2019, which the Debtors hope will provide additional pertinent information for the Debtors' Plan process.

5. The Debtors have made substantial progress in the Plan process. The Debtors have achieved two critical settlements of their wildfire liabilities to be satisfied and discharged pursuant to their Plan. The first settlement fully resolves all of the wildfire claims held by the 18 settling Public Entities for the aggregate amount of $1 billion. The second settlement fully resolves all of the claims held by Subrogation Claimants in the asserted amount of approximately $20 billion for consideration in the amount of $11 billion, representing a 45% reduction.

6. The Debtors filed their Plan on September 9, 2019, and then filed an Amended Plan on September 23, 2019. The Plan encompasses the two settlements discussed above and also is backed by equity commitments of at least $14 billion, which serve as the foundation for the equity portion of a comprehensive financing package that will fund the plan and the Debtors' timely emergence from chapter 11. The CPUC review process is also underway, and I believe the Debtors' Plan is on track to meet the June 30, 2020 deadline imposed by AB 1054.

7. Notwithstanding the progress outlined above, certain contingencies still exist that warrant the requested extensions. These include getting more clarity on the magnitude of the wildfire liabilities held by the constituency represented by the TCC to be addressed in the Plan. This is the subject of ongoing proceedings before the United States District Court, the California Superior State Court, as well as this Court. There are also certain other preliminary Plan-related issues raised by the Court, including whether wildfire claims asserted by certain public or private entities are subject to estimation, and postpetition interest rate and make-whole issues related to funded debt claims and their proposed treatment under the Plan. In light of these issues and contingences, filing a proposed Disclosure Statement with respect to the Debtors' Plan is still premature. I believe the Debtors have made substantial progress in the administration of these Chapter 11 Cases and the Exclusive Periods should be extended as requested so the Debtors can have the opportunity to continue this progress and achieve a timely and successful emergence from chapter 11.

8. The Debtors are not seeking an extension of the Exclusive Periods as a negotiation tactic to delay the administration of these Chapter 11 Cases or to hold creditors hostage to an unsatisfactory plan proposal. Rather, the requested extensions recognize the current posture of these cases and the time needed for the Debtors to successfully complete their Plan process.

9. I believe that the termination of the Exclusive Periods and the threat of multiple plans would lead to unnecessary adversarial situations, a potential crisis in confidence among the Debtors' customers, employees, business partners, and other economic stakeholders, and the attendant deterioration in value of the Debtors' business enterprise, to the detriment and prejudice of all parties in interest. I also believe that termination of the Exclusive Periods likely would jeopardize meeting the June 30, 2020 AB 1054 deadline and the Debtors' ability to participate in the go-forward wildfire fund.

10. The Debtors have obtained a $5.5 billion DIP facility, are current on payment of their postpetition obligations, and have sufficient liquidity to pay their undisputed administrative expenses in the ordinary course.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct and that this Declaration was executed in San Francisco, California, on September 25, 2019.

*/s/ John Boken*
By: John Boken