Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

and

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF THE JOINT MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS AND AD HOC COMMITTEE OF SENIOR UNSECURED NOTEHOLDERS TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS**<br><br>Date: October 7, 2019<br>Time: 1:30 p.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re: Docket No. 3940 |

The Official Committee of Unsecured Creditors (the "Official Committee") respectfully submits this statement (this "Statement") in support of the *Joint Motion to Terminate the Debtors' Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (the "Motion") [Docket No. 3940], filed jointly by the Official Committee of Tort Claimants (the "TCC") and the Ad Hoc Committee of Senior Unsecured Noteholders (the "Ad Hoc Group" and, together with the TCC, the "Movants").[1]

**STATEMENT**

1. As the Court is aware, in recent weeks there have been several noteworthy developments in these cases. Driven by the June 30, 2020 bankruptcy resolution deadline established by A.B. 1054 but also fueled by competition between potential plan proponents, parties have put forward two materially more developed plan proposals, each based on significant proposed settlements of wildfire-related claims. The Official Committee believes that the competitive forces that have created the current positive momentum are vital for a successful outcome in these cases. These developments reflect considerable progress, but further work remains to be done on all fronts. For this reason, the Official Committee agrees with the Movants that exclusivity should be terminated to allow those parties to continue to push forward with their plan proposal (the "AHG/TCC Plan").

2. The AHG/TCC Plan represents a significant step forward in these cases—for the first time, a plan is being proposed that pays all unsecured claims, including wildfire claims, in full, is supported by the TCC, a fiduciary for all wildfire claimants, and is backed by evidence of substantial committed financing. Moreover, the AHG/TCC Plan does not require, and is not conditioned on, a lengthy and uncertain estimation process and a state court trial with respect to the Tubbs Fire that will cost tens of millions of dollars. By agreeing to a $25.5 billion cap on

---

[1]   Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

wildfire claims, the TCC has accepted what the parties believe is the maximum amount that can be paid by the Debtors' estates, while still ensuring that these estates remain solvent. And it is important to note that embedded in this cap is a separate trust for the holders of subrogation claims in the amount of $11 billion dollars, the precise amount in which the Debtors propose to settle with these claimants. While the Official Committee sees much to commend in the AHG/TCC Plan, it nonetheless remains under review, and the Official Committee's consideration of the AHG/TCC Plan itself remains subject to ongoing due diligence. Accordingly, while the Official Committee fully supports termination of exclusivity to permit the AHG/TCC Plan to move forward, the Official Committee does not yet endorse the AHG/TCC Plan at this time.

3. From the perspective of all unsecured creditors, the Debtors' Plan stands in relatively stark contrast to the AHG/TCC Plan. In its October rulings on exclusivity, lifting of the automatic stay with respect to the Tubbs Fire trial and setting in motion the process going forward for estimation, the Court made crystal clear its view that resolution of the wildfire claims and payment of the individual victims is the Court's paramount objective in these cases. The Ad Hoc Group and the TCC took that guidance to heart, got in a room and reached a fair and reasonable agreement that stands to benefit all creditors. The Debtors, on the other hand, chose instead to focus their efforts on a bilateral settlement with a single group of institutional creditors.

4. Rather than providing a clear and smooth pathway to full creditor recoveries, the Debtors' Plan is instead intent on preserving value for the prepetition equity holders and "rolls the dice" on the solvency issue by requiring that the estimation process and the Tubbs Fire trial proceed, thereby subjecting the estates' unsecured creditors to the possibility that the resulting claims will exceed the $8.4 billion cap embedded in the Debtors' Plan.[2] As a creditor fiduciary,

---

[2] In its efforts to protect existing equity holders, the Debtors' Plan also makes inevitable litigation with creditors over issues of creditor entitlement to postpetition interest at the contract rate and payment on account of make-whole provisions. The AHG/TCC Plan, in contrast, would honor those contractual entitlements and resolve these issues in the creditors' favor.

the Official Committee does not believe unsecured creditor recoveries should be exclusively tied to such a plan. To the contrary, the Official Committee submits that a competitive process between the Debtors' Plan and the AHG/TCC Plan is beneficial to all parties, except perhaps old equity itself.

5. Accordingly, the Official Committee believes that exclusivity should be terminated to allow the AHG/TCC Plan to move forward in parallel with the Debtors' Plan, in the belief that the competition may result in the Debtors becoming more transparent and cooperative, and will continue to generate improvements in both plans that serve to increase the likelihood of a successful outcome in these cases.[3]

6. Finally, the Official Committee also believes that allowing the competing plans to go forward (at the same time and on terms to be determined by the Court) will also provide the best opportunity for a global resolution by the parties themselves or through a mediator. Having both plans filed will also permit the CPUC to begin its review process with respect to each plan, thus avoiding a rush should the AHG/TCC Plan ultimately be the plan that the Court wishes to confirm.

[*Remainder of Page Left Intentionally Blank*]

---

[3] The Court has repeatedly heard from various creditor groups in these cases, including the Official Committee, of the Debtors' lack of disclosure and refusal to engage on virtually all important matters. The only lever that appears to have been effective in pressuring the Debtors to attempt to move the plan process forward has been the ongoing threat of an alternative plan. This simple fact provides further justification for granting the Motion.

# CONCLUSION

7. For the reasons set forth above, the Official Committee respectfully requests that the Court grant the Motion and such other relief as may be appropriate.

Dated: October 1, 2019

**MILBANK LLP**

*/s/Gregory A. Bray*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*