1  Dennis F. Dunne (admitted *pro hac vice*)
   Samuel A. Khalil (admitted *pro hac vice*)
2  MILBANK LLP
   55 Hudson Yards
3  New York, New York 10001-2163
   Telephone: (212) 530-5000
4  Facsimile: (212) 530-5219

5  and

6  Gregory A. Bray (SBN 115367)
   Thomas R. Kreller (SBN 161922)
7  MILBANK LLP
   2029 Century Park East, 33rd Floor
8  Los Angeles, CA 90067
   Telephone:  (424) 386-4000
9  Facsimile:  (213) 629-5063

10 *Counsel for the Official Committee
   of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Case No. 19-30088 (DM) |
| **PG&E CORPORATION** | Chapter 11 |
| - and - | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| Debtors. | **RESPONSE OF MILBANK LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, TO THE FEE EXAMINER'S MOTION FOR APPROVAL OF FEE PROCEDURES** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Date:  October 7, 2019<br>Time:  1:30 p.m. (Pacific Time)<br>Place:  United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Re:  Docket No. 3950 |

Milbank LLP ("Milbank"), counsel to the Official Committee of Unsecured Creditors (the "Official Committee"), respectfully submits this response to the *Motion to Approve Fee Procedures* (the "Motion")[1] [Docket No. 3950] filed by Bruce Markell, the fee examiner appointed by the Court in these cases (the "Fee Examiner").[2]

**RESPONSE**

1. The Fee Examiner seeks an order: (i) establishing procedures for scheduling hearings on interim and final fee applications filed and to be filed in these chapter 11 cases and (ii) determining certain issues generally applicable to all such fee applications. Milbank responds to each issue potentially relevant to Milbank's fee applications.[3]

    A. Duplication and Overlap

2. The Fee Examiner seeks to reserve his rights to object to fees that may implicate duplication and overlap of effort. Milbank generally does not take issue with this reservation of the Fee Examiner's rights and likewise reserves all of its rights with respect to any fees potentially raising such issues. However, Milbank proposes that, following the Court's disposition of an interim fee application, the Fee Examiner may not interpose any new objection to fees or expenses that are the subject of the resolved interim fee application until those fees or expenses are presented in a final fee application.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[2] Milbank reserves its right to respond to any issues not raised in the Motion. In particular, without limiting the generality of the foregoing, on September 27, 2019, the United States Trustee (the "UST") filed its *Response to Motion to Approve Fee Procedures and Comments Regarding First Interim Fee Applications* [Docket No. 4025], which raised a host of new issues and potential relief not addressed or requested in the Motion. To the extent the UST seeks any affirmative relief or guidance from the Court, such a request must be the subject of a procedurally proper motion, with appropriate notice, an opportunity to object and a hearing. As such, Milbank will not be addressing the various issues raised by the UST at this time.

[3] Milbank has also coordinated with counsel to the Debtors and generally supports the *Retained Professionals' Joint Response to Motion to Approve Fee Procedures and Fee Examiner Protocol* filed by counsel on October 1, 2019.

B. <u>Compensation for Non-Working Travel</u>

3. The Fee Examiner takes the position that Retained Professionals should not be compensated for time associated with non-working travel necessitated by these cases. However, under this Court's practices and procedures, up to four (4) hours of such time per roundtrip is compensable. <u>See</u> Practices and Procedures in Judge Montali's Court dated July 2018. Moreover, the Court's practices and procedures contemplate an upward adjustment in appropriate circumstances.

4. Many jurisdictions compensate professionals for travel time at half of their normal hourly rate. <u>See, e.g.</u>, <u>In re Teraforce Tech. Corp.</u>, 347 B.R. 838 (Bankr. N.D. Tex. 2006) (explaining that in the Northern District of Texas "[t]ravel time is compensable at one-half rates, but work actually done during travel is fully compensable."); <u>In re Rohrbaugh</u>, 2014 WL 4956647, at *5 (Bankr. M.D. Pa. Oct. 1, 2014) ("[C]ompensation for travel time at half the normal hourly rate seems eminently fair and appropriate."); <u>see also</u> Del. Bankr. L.R. 2016-2 ("Travel time during which no work is performed . . . may be billed at no more than 50% of regular hourly rates.").

5. Given the extensive travel required and the substantial concomitant opportunity cost, Milbank believes that the non-working time of its personnel should be compensated at 50% of the particular professional's ordinary and customary rates in effect on the relevant date.

6. Indeed, the Fee Examiner recognizes that the disallowance of all fees associated with non-working travel "is controversial and not supported by the majority of cases." Motion at 9. Nonetheless, the Fee Examiner offers the following justifications for his controversial approach: (i) compensation for non-working travel results in hidden increases to hourly rates because the underlying task for which the attorney is traveling is not explicitly "grossed-up" to take into account the non-working travel fees; (ii) paying for lost opportunity costs is not beneficial to the

estate; and (iii) the calculation of non-working travel time is random with respect to the benefit to the estate. None of these arguments is persuasive.

7. <u>First</u>, as evidenced by Milbank's fee applications filed to date, fees associated with non-working travel time are intentionally segregated under a separate matter number so all parties in interest, including the Fee Examiner, can identify exactly how much time was spent traveling and for what purpose. This is the exact opposite of a "hidden fee."

8. <u>Second</u>, by authorizing compensation for travel time (albeit at half rate), courts have clearly recognized that there is a benefit to the estate from being able to retain professionals of the estate fiduciary's choosing even where such professionals are located outside of the immediate vicinity of the court and have to travel for events that require their participation.

9. <u>Third</u>, there is nothing random to the calculation of non-working travel time if it is appropriately tracked. To the contrary, just like any other task performed by a retained professional, non-working travel time is subject to precise measurement in accordance with the terms of that professional's retention order. Milbank attorneys track non-working time in 6 minute increments in the same manner that they track all of their billable time.

C. Treatment of Redacted Time Entries

10. The Fee Examiner asserts that **all** redacted time entries should be disallowed in their entirety and may only become allowed when unredacted or disclosed to the Court or the Fee Examiner "subject to appropriate confidentiality and privilege controls." Milbank believes that disclosing privileged information is inappropriate and creates the risk of waiving privilege. Accordingly, Milbank routinely redacts privileged material in all chapter 11 cases in which it has served or serves as counsel and has never been required to provide unredacted time entries as a matter of course. However, to the extent the Court agrees with the Fee Examiner, Milbank is prepared to provide the unredacted time entries to the Court or the Fee Examiner, as determined

by the Court, subject to confirmation that any such disclosure will not waive privilege, work product doctrine or similar protection.

D. Compensation for Preparation of Employment Applications

11. Although it is not entirely clear, it appears that the Fee Examiner takes issue with fees incurred in connection with: (i) the retention of the Retained Professionals; (ii) the preparation of fee applications; and (iii) the review of fees charged by other Retained Professionals. If that is, indeed, the case, Milbank believes that the Fee Examiner's concern is unjustified.

12. First, pursuant to Bankruptcy Rule 2014, professionals seeking employment in a chapter 11 case are required to undertake significant due diligence to disclose any and all relationships with potential parties in interest. This is separate and apart from routine conflict checks required prior to any commencing any type of other matter. As evidenced by the Debtors' 214-page checklist, there are close to 10,000 potential parties in interest. Searching for connections with 10,000 parties is a herculean task for any professional firm, which is not required for retentions outside of bankruptcy. As a result, to make qualified professionals available for work on bankruptcy cases, courts award reasonable compensation for such activities. The Fee Examiner's request to cap fees related to retention tasks at 40 times the blended hourly rate for the Retained Professional (*i.e.*, "[o]ne person working full time for a week") demonstrates a profound misunderstanding of the efforts that are necessary in cases of this magnitude to assure full compliance with the disclosure requirements set forth in the Bankruptcy Code and has no precedent in case law or practice. This is particularly unnecessary as the Retained Professionals' fees are already subject to a reasonableness standard.

13. Second, section 330 of the Bankruptcy Code expressly contemplates the allowance of fees incurred in connection with the preparation of fee applications. See 11 U.S.C. § 330(a)(6). While Milbank believes that preparing fee applications should be done in the most efficient and

cost-effective manner as possible, the cap requested by the Fee Examiner is inflexible, does not take into account the dynamic nature of these cases and is not based on any facts.

14.     Third, the Official Committee is an estate fiduciary, and the review of the fees and expenses charged by all Retained Professionals to the estates falls within its mandate to seek to maximize the value of the Debtors' estates for unsecured creditors.

E.     Scheduling Issues

15.     Milbank filed its *Corrected First Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period from February 12, 2019 through May 31, 2019* [Docket No. 3317] on July 22, 2019. Milbank does not take issue with the schedule proposed by the Fee Examiner to have interim fee applications cover four months periods. Milbank does take issue, however, with the Fee Examiner having unfettered discretion to set hearing dates with respect to interim fee applications and fears the leverage this would give him over the parties whose interim fee applications he is reviewing. Moreover, by grouping Milbank with other estate professionals, it will potentially delay payment until all parties have reached agreements with the Fee Examiner. Milbank believes that, as in other large chapter 11 cases, the Debtors should set aside time at regular omnibus hearings to hear the interim fee applications of Retained Professionals who have either reached an agreement with the Fee Examiner or who wish to have their interim fee applications heard by the Court.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

For the reasons set forth above, Milbank respectfully requests that the Court deny the Motion and grant such other relief as may be appropriate.

Dated: October 1, 2019

**MILBANK LLP**

*/s/ Thomas R. Kreller*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*