1 Richard A Marshack, SBN 107291
rmarshack@marshackhays.com
2 MARSHACK HAYS LLP
870 Roosevelt, Irvine, CA 92620
3 Tel: 949-333-7777 -/- Fax: 949-333-7778

4

Gerald Singleton, SBN 208783
5 Gary LoCurto, SBN 270372
SINGLETON LAW FIRM, APC
6 450 A Street, 5th Floor
San Diego, CA 92101
7 Tel: (619) 771-3473
Fax: (619) 255-1515
8 Email: gerald@slffirm.com
      glocurto@slffirm.com
9
Attorneys for SLF Fire Victim Claimants

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PG&E CORPORATION,<br><br>   and,<br><br>PACIFIC GAS & ELECTRIC COMPANY,<br><br>   Debtors.<br><br>Affects:<br><br>☐   PG&E Corporation<br>☐   Pacific Gas & Electric Company<br>☒   Both Debtors<br><br>* All papers shall be filed in Lead Case, No. 19-30088 (DM). | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case Jointly Administered)<br><br>PARTIAL OPPOSITION TO AND JOINDER/RESPONSE TO MOTION OF THE TCC AND AD HOC COMMITTEE OF SENIOR NOTEHOLDERS TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS<br><br>[Docket No. 2741]<br><br>Hearing:<br>Date:    October 7, 2019<br>Time:    1:30 p.m.<br>Ctrm;    17, 16th Floor<br>Place:   United States Bankruptcy Court<br>         San Francisco, CA 94102 |

TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT

JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED

PARTIES:

///

The Singleton Law Firm ("SLF") and Marshack Hays LLP, together with several other firms, represent approximately 5,700 victims of the fires started by PG&E in 2015 ("Butte Fire"), 2017 (the twenty fires generally referred to as the "North Bay" and "Wind Complex Fires") and 2018 ("Camp Fire").[1] The SLF Claimants submit this response ("Response") to the Motion of the Tort Claimants Committee ("TCC") and the Ad Hoc Committee of Senior Unsecured Noteholders ("Ad Hoc Committee") to Terminate the Debtors' Exclusive Period ("Exclusivity Motion"), filed on September 19, 2019, as Docket No. 3940 ("Motion").

## I. Summary of Argument

<u>SLF Claimants Joinder/Response</u> – SLF believes exclusivity should be terminated.

<u>SLF Claimant Opposition to the TCC and Ad Hoc Committee Motion</u>- SLF believes exclusivity should be terminated not just for the TCC/Ad Hoc Committee but for all parties in interest.

The Motion seeks to terminate the exclusivity period for filing and pursuing confirmation of a chapter 11 plan – but *only* for the TCC and Ad Hoc Committee. Against the backdrop of AB 1054 ("WildFire Recovery Fund"), terminating exclusivity and allowing competing plans will ensure Debtors have a fighting chance of exiting bankruptcy before June 30, 2020 - *but not to the detriment of Wildfire Victims receiving less on account of their claims.* If exclusivity is not terminated, and Debtor is unable to propose a plan that is confirmable, future Wildfire Victims may well lose the ability to tap into the WildFire Recovery Fund. In fact, all real parties in interest should be allowed to propose a plan to expedite the confirmation process and ensure Wildfire Victims are receiving the maximum value for their claims.

## II. Procedural Background[2]

On September 9, 2019, as Dk. No. 3841, the Debtors filed their initial Chapter 11 Plan ("Initial Plan"). Separately, as Dk. No. 3844, Debtors filed a summary of the key elements of the

---

[1] The claimants are jointly referred to as the "SLF Claimants."
[2] For brevity, SLF Claimants will only recite the pleadings relevant to the Motion at issue and avoid rehashing the lengthy background of this case.

2

SLF CLAIMANTS' OPPOSITION AND JOINDER/RESPONSE TO MOTION OF TORT CLAIMANTS COMMITTEE OF UNSECURED NOTEHOLDERS TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS

Initial Plan.

On September 19, 2019, as Dk No. 3940, the TCC and the Ad Hoc Committee filed the instant Motion seeking to terminate Debtors exclusivity ("Motion"). Four days later, on September 23, 2019, as Dk. No. 3966, Debtors filed their First Amended Joint Chapter 11 Plan of Reorganization ("Amended Plan"). On September 25, 2019, as Dk. No. 4005, Debtors filed a further motion to extend the exclusivity period.

In response, to both the Amended Plan and the Motion, SLF Claimants file this instant response in support of the Motion as well as in *opposition*, in that the SLF Claimants believe that exclusivity should be terminated as to all parties, not just the TCC and the Ad Hoc Committee.

## III. Legal Argument

### A. Terminating Exclusivity to Allow For Market Testing Will Ensure Wildfire Victims Will Receive the Most On Account of Their Claims

Section[3] 1121 provides, the bankruptcy court "may for cause reduce or increase the 120 day period" upon the request of a party in interest and after notice and a hearing. 11 U.S.C. § 1121(d)(1). The determination of whether cause exists to warrant an extension of the statutory time periods is fact specific. *In re Henry Mayo Newhall Mem. Hosp.,* 282 B.R. 444, 453 (B.A.P. 9th Cir. 2002) (citing *In re Dow Corning*, 208 B.R. 661, 670 (Bankr. E.D. Mich 1997)).

Courts have enumerated the following factors to be considered in determining whether cause exists to warrant an extension: (1) the size and complexity of the case; (2) the necessity of sufficient time to negotiate and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) whether the debtor is paying its debts as they come due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiating with creditors; (7) the length of time the case has been pending; (8) whether the debtor is seeking the extension to pressure creditors; and (9) whether unresolved contingencies exist. *Dow Corning*, 208 B.R. at 664-665; see also *Henry Mayo*

---

[3] Unless otherwise indicated, all Chapter and Section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

3

Case: 19-30088 Doc# 4058 Filed: 10/01/19 Entered: 10/01/19 18:29:33 Page 3 of 8

SLF CLAIMANTS' RESPONSE TO AND JOINDER OF MOTION OF TCC AND AD HOC COMMITTEE OF UNSECURED NOTEHOLDERS TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS

*Newhall Mem. Hosp.*, 282 B.R. at 452 (citing the Dow Corning factors). Some courts have held that for the moving party to meet its burden, it must produce affirmative evidence to support a finding of cause. *See In re Parker Street Florist & Garden Center, Inc.*, 31 B.R. 206, 207 (Bankr. D. Mass, 1983) (***debtor's assertion that it did not want the interference of competing plans was found insufficient to make an affirmative showing of cause***).

Terminating Debtors' exclusivity and allowing a competing plan to be advanced would benefit both creditors and the Debtors by fostering goal-oriented negotiations leading to a consensual plan. *In re Pub. Serv. Co.,* 99 B.R. 155, 156 (Bankr. D.N.H. 1989) (termination of the exclusive period created a level playing field and fostered negotiation of a consensual plan.). Separately, if two plans are viable, pursuant to 11 U.S.C. § 1129(c) the Court must consider what is in best interest of creditors. And, in so doing, the court should consider what the creditors believe is in their best interest. While SLF Claimants were unable to find a case exactly on point, the Supreme Court has stated that ". . . a bankruptcy court should not substitute its judgment for that of the creditors, which are entitled to vote on a plan." *In re RAMZ Real Estate Co.*, *LLC*, 510 B.R 712, 719 (Bankr. S.D.N.Y. 2014) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207, 108 S.Ct. 963, 99 L.Ed. 169 (1988). *See also LaSalle*, 526, U.S. at 457 n. 28 ("Congress adopted the view that creditors. . . are . . . better judges of the debtor's economic viability and their own economic self-interest than the courts, trustees, or the SEC").

Having suffered tragic loses due to the PGE fires, the Wildfire Victims are naturally concerned with their personal financial condition. Wildfire Victims will support a plan like that filed by TCC. Wildfire Victims have no incentive to support the Debtors' plan. If the Debtors' plan is the only one that is voted on, Wildfire Victims will probably not support the plan knowing that TCC is offering $14.5 billion to non-subro Wildfire Victims as compared to $8.4 billion offered by the Debtor. If exclusivity is not terminated, SLF Claimants simply would prefer to see the Debtors current plan rejected so that a subsequent plan, similar to TCC's plan, could be confirmed. As proposed, the Amended Plan will inevitably lead to expensive and time-consuming plan-related litigation, without providing an expeditious path towards confirmation.

4

Case: 19-30088   Doc# 4058   Filed: 10/01/19   Entered: 10/01/19 18:29:33   Page 4 of 8

PARTIAL OPPOSITION AND JOINDER/RESPONSE TO MOTION BY THE AD HOC COMMITTEE
OF UNSECURED NOTEHOLDERS TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS

Moreover, pursuant to 11 U.S.C. 1129(c), the Court is "required to '*consider the preferences of creditors and equity security holders in determining which plan to confirm*' because there were two plans proposed during the bankruptcy process." *In re Meruelo Maddux Props.*, 2013 U.S. Dist. Lexis 112105 *33 (C.D. Cal. Aug. 7, 2013). Factors that courts have considered in the context of two competing plans are: (1) the type of plan; (2) treatment of creditors and equity holders; (3) feasibility of the plan; and (4) the preferences of creditors and equity security holders. *In re Holley Garden Apartments, Ltd.,* 238 B.R. 488, 493 (Bankr. M.D. Fla. 1999).

To prevent all the proverbial eggs from being in one basket – the Debtors' Amended Plan – all other real parties in interest (and not just the TCC and the Ad Hoc Committee) should be able to propose their own plans in light of the June 30, 2020 deadline. Moreover, in light of the proposed plan and term sheet of TCC and Ad Hoc Committee with its potential for additional consideration for a potential recovery, it does not appear the Wildfire Victims are going to support the Debtors' Amended Plan. Indeed, as stated in the Motion, as of September 9, 2019, Debtors disclosed that it only had secured $1.5 billion in funding for the proposed Chapter 11 Plan of Reorganization, far short of the $19.4 billion needed. Mot., pg. 10:3-11. It may be the case that the Debtors will be unable to propose a feasible plan. At which point, if exclusivity remains, then all parties will lose precious time in proposing a plan that will likely be supported by the Wildfire Victims.

If the Debtor cannot confirm a plan the benefit of AB 1054 will be lost. A competing plan that pays more will be supported by Wildfire Victims and will allow plan confirmation by June 30, 2020 and thereafter the benefits of AB 1054. Simply put, if the Debtors' plan is not confirmed and there is no other plan similarly situated to be confirmed, then the Debtors participation in the Wildfire Recovery Fund is a forlorn conclusion: the ship will have sailed. Terminating exclusivity and allowing competing plans to proceed will ensure a safety net in the event of the Debtor's failure to confirm its plan.

### B. Violating Absolute Priority Rule Is A Sufficient Basis for Terminating Exclusivity.

With respect to unsecured claims, a plan is fair and equitable if:

(i) the plan provides that each holder of a claim of such class receive or retain on

5

account of such property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property . . .

11 U.S.C. § 1129(b)(2)(B).

First, the "fair and equitable" requirement essentially codifies the absolute priority rule, i.e., "that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a reorganization plan." *Zachary v. California Bank & Trust, 811 F.3d 1191, 1195 (9th Cir. 2016) (citing Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). In *Zachary*, the Ninth Circuit held that the absolute priority rule applied post BAPCPA. *Zachary*, supra, at 1199 ("We conclude today that the BAPCPA amendments do not impliedly repeal the long-standing absolute priority rule."). When a plan does not comply with the absolute priority rule under 11 U.S.C. § 1129(b)(2)(B)(ii) it cannot be confirmed as a matter of law. Allowing a competing plan to be proposed would result in meaningful negotiations and the incorporation of terms designed to provide creditors with a higher recovery, thus ensuring the expeditious development of a confirmable plan. *See, e.g., Bank of America v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 457 (1999) (allowing competing plans is one method of ensuring that property is exposed to the marketplace and tends to increase creditor dividends).

"The absolute priority rule mandates, and *LaSalle* clarifies, that when <u>old equity</u> seeks to retain its share in a reorganized debtor, the debtor must undergo market valuation. One way to satisfy that requirement is through the termination of exclusivity and by allowing competing reorganization plans to be filed." *H.G. Roebuck & Son, Inc. v. Alter Communs., Inc.*, Civil Action No. RDB-11-0157, 2011 U.S. Dist. LEXIS 59781, at *26 (D. Md. June 3, 2011). In this case, Debtors have proposed a plan that allows equity holders to retain their interest but caps the distribution to Wildfire Victims at a number most likely lower than the full amount owed.[4] Debtors'

---

[4] Debtor's Amended Plan was filed approximately one week ago. SLF Claimants are still in the

PARTIAL OPPOSITION AND JOINDER/RESPONSE TO MOTION OF THE AD HOC COMMITTEE
OF UNSECURED NOTEHOLDERS TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS

Amended Plan provides the equity is not impaired and therefore it violates the Absolute Priority Rule. The Amended Plan therefore does not comply with the absolute priority rule under 11 U.S.C. § 1129(b)(2)(B)(ii). Allowing the TCC Plan will, in all probability, garner the support of the only impaired class and would result in confirmation of a plan in time for Debtors to enjoy the benefits of AB 1054.

### C. Impact of AB 1054 Deadline

AB 1054 offers benefits that are quite valuable to Debtors, but those benefits are only available if a plan is confirmed by June 30, 2020. Wildfire Victims will support a plan that pays their claims in full and in all probability will not support a plan that does not pay their claims in full.

If exclusivity is not terminated, the Debtors' Amended Plan is the only plan that will be up for vote and, as written, will not garner the support of Wildfire Victims. Why? Wildfire Victims know $6.1 billion more is available to fund Wildfire Victim claims ($25.5 billion in the TCC compared to $19.4 billion offered by Debtors' Amended Plan. Wildfire Victims will focus on return on their claims and will not focus on future benefits to future fire victims that is provided by AB 1054.

If the Debtors' Amended Plan is the sole plan and is not supported by the Wildfire Victims, the Debtor will lose the benefits of AB 1054.

If there is a competing plan, Fire victims will support the plan that pays at least what the TCC has offer ($25.5 billion). By terminating exclusivity, this court takes a huge step in (i) making sure the benefits of AB 1054 are obtained and (ii) makes sure current fire victims are paid in full.

## IV. Conclusion

For the foregoing reasons, SLF Claimants request that the Motion be granted but not limited to the TCC and the Ad Hoc Committee. Instead SLF Claimants request that exclusivity be terminated in its entirety as to all parties in interest. Again, granting the Motion will not stop the Debtors from pursuing their own Amended Plan. Instead a competing plan will foster negotiations to

---

midst of their analysis. But, thus far, the SLF Claimants have significant concerns that will be raised at the hearing on the instant Motion.

7

SLF CLAIMANTS' JOINDER/RESPONSE TO MOTION OF AD HOC COMMITTEE
OF UNSECURED NOTEHOLDERS TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS

Case: 19-30088    Doc# 4055    Filed: 10/01/19    Entered: 10/01/19 18:29:33    Page 7 of 8

1  ensure maximum benefit for Wildfire Victims while having a "backup" plan ready in the event
2  Debtors' Amended Plan is not confirmed by June 30, 2020.

Dated: October 1, 2019                    MARSHACK HAYS LLP

                                                /s/ Richard A. Marshack
                                          By:_____
                                              RICHARD A. MARSHACK
                                              Attorneys for SINGLETON LAW FIRM
                                              FIRE VICTIM CLAIMANTS


Dated:  October 1, 2019                   SINGLETON LAW FIRM, APC

                                                 /s/ Gerald Singleton
                                          By:_____
                                              GERALD SINGLETON
                                              GARY LOCURTO
                                              Attorneys for SINGLETON LAW FIRM
                                              FIRE VICTIM CLAIMANTS

8

Case: 19-30088    Doc# 4055    Filed: 10/01/19    Entered: 10/01/19 18:29:33    Page 8 of 8

PARTIAL OPPOSITION AND JOINDER/RESPONSE TO MOTION OF AD HOC COMMITTEE
OF UNSECURED NOTEHOLDERS TO TERMINATE THE DEBTORS' EXCLUSIVE PERIODS