WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case) (Jointly Administered)<br><br>**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363 AND 105(a) FOR AN ORDER APPROVING TERMS OF EMPLOYMENT FOR NEW CHIEF EXECUTIVE OFFICER AND PRESIDENT OF PACIFIC GAS AND ELECTRIC COMPANY**<br><br>**"UTILITY CEO MOTION"**<br><br>Date: October 22, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>Objection Deadline: October 15, 2019<br>4:00 p.m. (Pacific Time) |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 363 and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order approving the terms of employment for Andrew M. Vesey as Chief Executive Officer ("**CEO**") and President of the Utility. In support of the Motion, the Debtors submit the Declarations of Dinyar Mistry, Senior Vice President of Human Resources at PG&E (the "**Mistry Declaration**") and of Lane Ringlee, Managing Partner at Pay Governance LLC ("**PG**") (the "**Ringlee Declaration**"), filed contemporaneously herewith.

A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

# TABLE OF CONTENTS

I. JURISDICTION ......................................................................................................... 6

II. BACKGROUND ........................................................................................................ 6

III. PRELIMINARY STATEMENT ................................................................................ 6

IV. THE UTILITY'S APPOINTMENT OF A NEW CHIEF EXECUTIVE OFFICER ................... 8

    A. The Chief Executive Officer Candidate Search ............................................. 8

    B. Mr. Vesey's Qualifications ............................................................................. 8

V. TERMS OF EMPLOYMENT ..................................................................................... 9

VI. THE 2019 PERFORMANCE METRICS .................................................................. 11

VII. BASIS FOR RELIEF REQUESTED ........................................................................ 12

VIII. REQUEST FOR 6004(h) WAIVER .......................................................................... 15

IX. NOTICE .................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 240 N. Brand Partners, Ltd.*,
200 B.R. 653 (B.A.P. 9th Cir. 1996)...............................................................................................13

*In re Adelphia Commc'ns. Corp.*,
Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Mar. 7, 2003).............................................................16

*In re Calpine Corp.*,
Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 15, 2005) ............................................................16

*In re Chassix Holdings, Inc.*,
Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 20, 2015) ...........................................................16

*In re Ernst Home Ctr., Inc.*,
209 B.R. 974 (Bankr. W.D. Wash. 1997) .......................................................................................13

*Gantler v. Stephens*,
965 A.2d 695 (Del. 2009) ..............................................................................................................13

*In re Mirant Corp.*,
Case No. 03-46591 (DML) (Bankr. N.D. Tex. Nov. 23, 2005).........................................................16

*In re Pace*,
67 F.3d 187 (9th Cir. 1995) ...........................................................................................................14

*In re PG&E Corp. and Pacific Gas and Electric Co.*,
Case No. 19-30088 (DM) (Bankr. N.D. Cal. Aug 14, 2019)............................................................15

*In re Saxman*,
325 F.3d 1168 (9th Cir. 2003) .......................................................................................................14

*In re WorldCom, Inc.*,
Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Dec. 16, 2002)............................................................16

**Statutes**

11 U.S.C. § 105(a) ................................................................................................................ 2, 12, 13, 14

11 U.S.C. § 363 ............................................................................................................ 2, 13, 12, 14, 15, 16

11 U.S.C. § 503(c) ................................................................................................................... 5, 12, 15

11 U.S.C. § 1107(a) ..............................................................................................................................7

11 U.S.C. § 1108 ................................................................................................................................57

28 U.S.C. § 157 ............................................................................................................................. 7

28 U.S.C. § 1334 ........................................................................................................................... 7

28 U.S.C. § 1408 ........................................................................................................................... 7

28 U.S.C. § 1409 ........................................................................................................................... 7

**Other Authorities**

Bankruptcy Local Rules for the United States District Court for the Northern District of
    California Rule 5011-1(a) ......................................................................................................... 7

Bankruptcy Rule 1015(b) ............................................................................................................... 7

Bankruptcy Rule 2002 ........................................................................................................... 15, 17

Bankruptcy Rule 6004(h) .......................................................................................................... 2, 16

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General
    Order 24 .................................................................................................................................... 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No chapter 11 trustee or examiner has been appointed in either of the Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**"). On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

## III. PRELIMINARY STATEMENT

On August 9, 2019, the Board of Directors of the Utility (the "**Board**") appointed Andrew M. Vesey as the new CEO and President of the Utility. Mr. Vesey is a talented leader and seasoned industry professional with more than 35 years of diverse utility industry experience. He has served as a chief executive officer at major energy companies, most recently as Managing Director and Chief Executive Officer of AGL Energy in Australia from 2015 to 2018. Prior to his employment at AGL Energy, Mr.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Vesey spent 11 years at The AES Corporation as Chief Operating Officer, Executive Vice President, and Vice President. AES Corporation is a Fortune 500 global power company providing energy to 14 countries with 2018 revenues of $11 billion.

As CEO and President, Mr. Vesey will be responsible for achieving operational excellence at the Utility through a focus on providing safe and affordable gas and electricity to its customers and first-rate customer care. Mr. Vesey's top priority is stewarding a "safety first" culture through the implementation of major changes designed to further the Utility's existing focus on safety. Mr. Vesey will also be responsible through his leadership for establishing an environment that fosters open communication and ethical business practices and for developing and strengthening relationships with the Utility's business partners and other key stakeholders. Mr. Vesey will report to the Board and work closely with and take direction from PG&E Corp.'s CEO and President, Mr. William Johnson.

The Board believes that Mr. Vesey is the right leader to further improve the Utility's safety culture and operational performance and serve as a strong advocate for clean energy solutions, customer service and affordability.

In connection with Mr. Vesey's appointment as CEO and President of the Utility, the Board approved the terms and conditions of Mr. Vesey's employment, including his proposed compensation. Mr. Vesey's proposed compensation consists of three principal components, each described in greater detail below: (i) Base Salary of $1 million, (ii) Transition Payment of $1 million, and (iii) 2019 Equity Incentive Awards (as defined below) with a prorated target value of approximately $830,000. To further emphasize the Utility's primary objective, the performance-based portion of Mr. Vesey's 2019 Equity Incentive Awards are heavily-weighted to safety. As with Mr. Johnson's employment terms as President and CEO of PG&E Corp., recently approved by the Court, if the Debtors fail during the relevant performance period to meet the threshold or target performance metric most closely aligned with wildfire safety, Mr. Vesey's full performance-based 2019 Equity Incentive Awards will be reduced by 50% or 25%, respectively. Mr. Vesey is being paid his Base Salary and, consistent with the Debtors' customary historical practice and existing policies, has been paid approximately $19,500 in relocation

reimbursements and a perquisite allowance. Mr. Vesey has not been paid the Transition Payment or any other components of his compensation.

## IV. THE UTILITY'S APPOINTMENT OF A NEW CHIEF EXECUTIVE OFFICER

### A. The Chief Executive Officer Candidate Search

The Board selected Mr. Vesey after a thorough search process. Heidrick & Struggles ("**Heidrick**"), a leading executive search firm with extensive knowledge of the utility industry was retained to assist with the search for potential candidates for the Utility CEO position and identified several qualified and experienced individuals for consideration. Mr. Johnson and Mr. Mistry discussed the various candidates with Heidrick and identified four candidates to be interviewed. Mr. Johnson and the Utility's senior leadership team then conducted interviews of the four candidates and, ultimately, selected Mr. Vesey as the best-qualified individual for the position. The Compensation Committee reviewed Mr. Vesey's proposed employment terms as recommended by Mr. Johnson, and consistent with the Compensation Committee's recommendation, the Board voted to approve Mr. Vesey's appointment and employment terms.

### B. Mr. Vesey's Qualifications

Mr. Vesey has extensive experience as a senior officer at electric utilities in the United States and abroad. As stated, prior to joining the Utility, Mr. Vesey served as the Managing Director and CEO of Sydney-based AGL Energy Limited, an integrated Australian energy company serving approximately 3.7 million electric and natural gas customers and operating twenty percent of the country's power generation capacity.

Before AGL, he also served in a number of leadership roles at energy companies such as AES Corporation, as Chief Operating Officer, and Entergy Corporation and Niagara Mohawk Power Corporation, where he served as a senior leader. Mr. Vesey also spent a number of years as an energy industry consultant and leader at firms that included FTI Consulting and Ernst & Young. He also served as Managing Director and Chief Executive Officer of Melbourne-based CitiPower in Australia. Mr. Vesey began his career as a system-planning engineer at Consolidated Edison.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

With extensive past leadership experience, Mr. Vesey is prepared and committed to leading change and delivering results across the Utility's safety and operational areas including the electric, gas, generation and customer teams. Furthermore, it is the Board's judgment that Mr. Vesey is well-equipped to restore confidence in the Utility's safety culture, and to work to maintain and continue to build constructive relationships with regulators and policymakers.

## V. TERMS OF EMPLOYMENT

Initially, the compensation arrangement offered to Mr. Vesey included a base salary, transition payment, and an annual incentive award component. The annual incentive award (payable in cash and equity) if earned, however, would have been payable pursuant to the Debtors' proposed Key Employee Incentive Program, if it were approved by the Court.[1] On August 30, 2019, the Court denied the Debtors' motion seeking approval of the Key Employee Incentive Program [Docket No. 2664] (the "**KEIP Motion**"). Accordingly the Debtors have revised the incentive award component of Mr. Vesey's compensation to provide him with solely equity awards consistent with those previously approved in connection with the approval of Mr. Johnson's compensation arrangement, although, Mr. Vesey is not receiving stock options. On September 26, 2019, the Board formally approved Mr. Vesey's revised employment terms. The following is a summary of the material economic terms of Mr. Vesey's current proposed compensation:

| Category | Description |
| --- | --- |
| Base Salary | • Annualized base salary of $1 million. |
| Transition Payment | • One-time cash transition payment of $1 million.[2] |

---

[1] Mr. Vesey was not hired until after the KEIP Motion (as defined below) was filed and, therefore, was not a named participant. If approved, the KEIP Motion permitted the inclusion of additional participants and Mr. Vesey would have been one such additional participant.

[2] Subject to claw-back and repayment in the event Mr. Vesey resigns or is terminated for "Cause" within 12 months of his start date or August 19, 2020. "Cause" is defined in the PG&E Corp. 2012 Officer Severance Policy, under which the Utility is a participating employer (the "**Officer Severance Policy**").

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

| Category | Description |
|---|---|
| 2019 Equity Incentive Awards | - Equity awards will consist of (i) time-based restricted stock units ("**RSUs**") and (ii) performance-based restricted stock units ("**PRSUs**").[3]<br>- <u>RSUs and PRSUs</u>. Equity awards with a target annual value of $2 million, which amount will be prorated based upon the five-month period Mr. Vesey will be employed at the Utility in 2019 and equals approximately $830,000. 25% of such award will consist of RSUs that are not performance-based and 75% of such award will consist of PRSUs that are performance-based. The awards will be granted as soon as practicable after the Court's entry of an Order approving this Motion.[4]<br>- The award of RSUs will vest in three equal installments on each of the first three anniversaries of the date of the grant.<br>- The award of PRSUs will be subject to the 2019 performance-based vesting metrics (the "**2019 Performance Metrics**") described below. The PRSUs will have a performance period beginning on July 1, 2019 and ending on December 31, 2019. |
| Anti-Dilution | - All equity incentive compensation will be subject to anti-dilution provisions upon a spin-off to shareholders and in connection with a rights offering to shareholders or other transactions in which shareholders are subject to the same anti-dilution protections as Mr. Vesey. |
| Severance[5] | - Mr. Vesey will be entitled to the general severance benefits available to executive officers through the Officer Severance Policy.<br>- Upon termination by the Utility (other than for "Cause"), Mr. Vesey may be eligible for cash severance payments and other post-employment benefits. The Officer Severance Policy provides for the following, unless otherwise set forth in the applicable award agreements:<br>    o Cash severance of one year's salary<br>    o Continued vesting of unvested PRSUs and RSUs for one year<br>    o Limited COBRA benefits and outplacement services<br>- Mr. Vesey has been made aware and has agreed that any Severance payment due and payable to him during the pendency of these |

---

[3] The initial award of RSUs and PRSUs will be based on the average closing price of PG&E Corp. common stock for the 15 consecutive trading days immediately preceding his start date of August 19, 2019.

[4] If the grant date of an equity award would occur during a "trading blackout" period, as defined under the Debtors' Insider Trading Policy, then the grant date shall be the first business day after the trading blackout ends.

[5] If Mr. Vesey is terminated by the Utility for "Cause" (*e.g.*, for dishonesty, a criminal offense, or violation of a work rule) or resigns before becoming retirement-eligible, all unvested PRSUs and RSUs will be forfeited for no consideration.

| Category | Description |
|---|---|
| | Chapter 11 Cases will only be paid in accordance with section 503(c)(2) of the Bankruptcy Code. |
| Other Customary Benefits | - <u>Annual Perquisite Allowance</u>: Consistent with the Utility's customary historical practice for senior executives, Mr. Vesey will receive an annual cash allowance of $25,000. For the 2019 year, Mr. Vesey received a reduced allowance of $12,500 to reflect the partial year period of his employment.<br><br>- <u>Relocation Cost Reimbursement</u>: Consistent with the Utility's standard Relocation Assistance Program for Officers, Mr. Vesey received a one-time cash payment of $7,000 to reimburse for expenses incurred in connection with his move to California. |

The employment terms also include, among other things, customary health, retirement, and other benefits provided to senior executives of the Debtors. Although Mr. Vesey's entire compensation arrangement remains subject to Court approval, the Utility paid Mr. Vesey his annual perquisite allowance and relocation reimbursement in the approximate aggregate amount of $19,500 shortly after Mr. Vesey's start date, consistent with the Utility's historical practice and existing policies. Mr. Vesey is also currently being paid his Base Salary. As stated above, Mr. Vesey has not been paid the Transition Payment or any other components of his compensation.

## VI. THE 2019 PERFORMANCE METRICS

As set forth above, to align Mr. Vesey's performance goals with the overall performance goals of the Debtors and of Mr. Johnson, Mr. Vesey's grant of PRSUs are subject to the same 2019 Performance Metrics and weightings as Mr. Johnson's PRSUs, which are in turn consistent with the 2019 STIP.[6] Mr. Vesey's 2019 grant of PRSUs have a performance period beginning July 1, 2019 and ending December 31, 2019 (collectively, the "**2019 Performance-Based Awards**") and vest after the performance results are certified by the Debtors' Internal Audit team and approved by the Compensation Committee.

The 2019 STIP calculates an overall company score by adding public and employee safety metrics weighted at 65%, financial metrics weighted at 25%, and customer metrics weighted at 10%,

---

[6] The 2019 STIP refers to the Debtors' 2019 Short-Term Incentive Plan, under which approximately 10,000 employees of the Debtors are eligible for awards based on achieving certain performance metrics. The Court approved the 2019 STIP by Order dated April 29, 2019 [Docket No. 1751].

subject to a threshold, target, and maximum for each metric. A summary of the 2019 Performance Metrics and their respective weightings is annexed hereto as **Exhibit B**.

Mr. Vesey's 2019 Performance-Based Awards conform to the following payout ranges:
- Threshold: 50% of target
- Target: 100% of target
- Maximum: 150% of target

As is the case with Mr. Johnson's employment terms, Mr. Vesey's 2019 Performance-Based Awards further emphasize safety and are subject to the Public Safety Index ("**PSI**") modifier, which adjusts overall award payout depending on the Debtors' performance on the PSI metric, the metric most closely aligned with wildfire safety. If for the 2019 performance period, the aggregate score for the PSI metric is below threshold, Mr. Vesey's 2019 Performance-Based Awards across all components will be reduced by 50%. If, for the 2019 performance period, the aggregate score for the PSI metric is at or above threshold but below target, Mr. Vesey's 2019 Performance-Based Awards across all components will be reduced by 25%. As indicated, actual award payout will be based on certified performance results approved by the Compensation Committee.

## VII. BASIS FOR RELIEF REQUESTED

The terms of Mr. Vesey's employment as CEO and President of the Utility should be approved pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use . . . , other than in the ordinary course of business, property of the estate." When construing this and similar provisions of the Bankruptcy Code, Bankruptcy Courts generally approve the use of property of the estate under § 363(b)(1) when a debtor presents a "valid business justification." *In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *see also In re Ernst Home Ctr., Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) (debtor's decision to enter into a transaction outside of the ordinary course under section 363(b)(1) must be based on "its reasonable business judgment"). Importantly, the business judgment rule creates "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Gantler v. Stephens*, 965 A.2d 695, 705 (Del. 2009)

(citation omitted).  Additionally, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *In re Saxman*, 325 F.3d 1168, 1174 (9th Cir. 2003); *In re Pace*, 67 F.3d 187, 193 (9th Cir. 1995).

As stated above, the Utility engaged in a thorough nationwide search for a new Utility CEO to provide the additional leadership necessary for the Utility's long-term success. This search culminated with the appointment of Mr. Vesey who has the appropriate experience to oversee the Utility's complex safety initiatives and business operations.  Mr. Vesey just recently completed his tenure with AGL Energy in Australia, which has millions of electric and natural gas customers and operates twenty percent of the country's power generation capacity. Additionally, Mr. Vesey is deeply dedicated to meeting California's clean energy goals, as demonstrated by his commitment to clean energy during his tenure at AGL Energy.

Moreover, Mr. Vesey's proposed compensation arrangement is reasonable and consistent with market practice.  As set forth in the Ringlee Declaration, PG conducted two separate benchmarking analyses to evaluate Mr. Vesey's proposed annual compensation (exclusive of the one-time Transition Payment).  First, PG evaluated the compensation of 41 executives serving in the comparable position of Chief Operating Officer ("**COO**") within the energy industry based on survey data from Willis Towers Watson's 2018 Energy Services Survey and size-adjusted the salary data using a regression analysis to align peer energy companies' revenues with that of the Debtors'.  PG benchmarked COO positions for two reasons: (i) to align with the Utility's historical benchmarking practice for Mr. Vesey's position, which has historically been a COO role, and (ii) to access a larger pool of available data for analysis among peer companies, which will more commonly employ a COO, rather than a utility CEO in addition to a parent CEO.  Based on its analysis, PG determined Mr. Vesey's total annual compensation (exclusive of the one-time Transition Payment) falls below the median total direct compensation of COO's in the energy industry of $3,845,000.  Second, PG evaluated the publicly available compensation

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

data of utility CEO's at peer utility companies.[7] In doing so, PG determined Mr. Vesey's total annual compensation falls below the median total direct compensation of utility CEOs of $3,373,400. Furthermore, four of the five comparable utility CEOs included in the benchmarking were recently promoted to the CEO position in the past three years, and do not have the same depth of experience in the utility industry as Mr. Vesey. Accordingly, compensation for these utility CEOs, if adjusted for increased experience would likely be higher than the current levels, resulting in a higher median total direct compensation figure as a benchmark against Mr. Vesey's total annual compensation.

Separately, PG also analyzed new hire compensation arrangements at large energy companies and general industry companies with annual revenues between $9 billion and $30 billion to determine the reasonableness of the proposed Transition Payment. PG found that one-time transition payments typically amount to over 250% of base pay, which is significantly higher than Mr. Vesey's Transition Payment. Although one-time transition payments are commonly awarded in equity, PG concluded paying Mr. Vesey's proposed Transition Payment in cash is reasonable given that it is on the low-end of the competitive range and is not intended to replace any forfeited equity awards from a previous employer. Furthermore, Mr. Vesey's compensation arrangement already heavily focuses on performance through the inclusion of the 2019 Performance-Based Awards. The 2019 Performance-Based Awards align Mr. Vesey's goals and performance with those of the Debtors and provide Mr. Vesey with the opportunity to earn a market rate of compensation, but only if certain performance goals are achieved.

The Debtors do not believe that section 503(c)(1) of the Bankruptcy Code, which deals with the retention of insiders, is at all relevant to the relief sought herein. First, the Motion seeks approval of an overall compensation arrangement for a new CEO, not an existing senior executive. Second, there are no retention payments provided for in the proposed compensation arrangements. Lastly, the 2019 Performance-Based Awards clearly are incentive based, as the Court already has recognized in connection with its approval of Mr. Johnson's compensation and the 2019 STIP.

---

[7] The peer companies include: Exelon Corp., NextEra Energy, Inc., FirstEnergy Corp., Southern California Edison Co., and Entergy Corp.

This Court and numerous other Bankruptcy Courts have authorized debtors to employ high-ranking executives to help guide their restructuring process pursuant to section 363 of the Bankruptcy Code. *See, e.g., In re PG&E Corp. and Pacific Gas and Electric Co.*, Case No. 19-30088 (DM) (Bankr. N.D. Cal. Aug 14, 2019) (approving employment terms of CEO of PG&E Corp.); *In re Chassix Holdings, Inc.*, Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 20, 2015) (approving interim chief financial officer and additional personnel); *In re Mirant Corp.*, Case No. 03-46591 (DML) (Bankr. N.D. Tex. Nov. 23, 2005) (approving debtors' entry into employment agreements); *In re Calpine Corp.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 15, 2005) (approving, among others, debtors' entry into employment agreements with chief financial officer and chief restructuring officer); *In re Adelphia Commc'ns. Corp.*, Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Mar. 7, 2003) (approving under section 363 the employment and compensation of the debtors' (a) chairman and chief executive officer, and (b) president and chief operating officer, as "in the best interests of the [d]ebtors, their estate, their creditors and other parties-in interest"); *In re WorldCom, Inc.*, Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Dec. 16, 2002) (authorizing the employment of the president, chief executive officer and chairman of the board of directors as "necessary and in the best interests of the [d]ebtors and their estates").

Accordingly, the Debtors believe the appointment of Mr. Vesey as CEO and President of the Utility is in the best interests of the Utility, its estate, creditors, shareholders, and all parties in interest, and that his compensation arrangement and terms of employment should be approved.

## VIII. REQUEST FOR 6004(h) WAIVER

In order to firmly establish the right leadership and finalize the Debtors' employment relationship with Mr. Vesey, it is important that the relief requested herein be promptly implemented. Thus, the Debtors request a waiver of the 14-day stay (to the extent such stay applies) of an order authorizing the use, sale, or lease of property outside the ordinary course of business under Bankruptcy Rule 6004(h). Accordingly, the Debtors request that the Court find that ample cause exists to grant a waiver of Bankruptcy Rule 6004(h) and waive the stay to the extent it applies.

## IX. NOTICE

Notice of this Motion will be provided to (i) the Office of the U.S. Trustee for Region 17 (Attn:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Andrew R. Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor in possession financing facility; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice is required. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting (i) the relief requested herein as a sound exercise of the Utility's business judgment and in the best interests of its estate, creditors, shareholders, and all other parties in interest, and (ii) such other and further relief as the Court may deem just and appropriate.

Dated: October 1, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By:  /s/ *Stephen Karotkin*
       Stephen Karotkin

*Attorneys for Debtors and Debtors in Possession*