WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>PG&E CORPORATION,<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                  Debtors.<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br><br>No. 19-30088 (DM) Chapter 11<br><br>(Lead Case)(Jointly Administered)<br><br>**DECLARATION OF LANE T. RINGLEE IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363 AND 105(a) FOR AN ORDER APPROVING TERMS OF EMPLOYMENT FOR NEW CHIEF EXECUTIVE OFFICER AND PRESIDENT OF PACIFIC GAS AND ELECTRIC COMPANY**<br><br>Date: October 22, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>       Courtroom 17, 16th Floor<br>       San Francisco, CA 94102 |

I, Lane T. Ringlee, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

I am a Managing Partner at Pay Governance LLC ("**PG**"). PG has been retained by PG&E Corp. (together with Pacific Gas and Electric Company, "**PG&E**" or the "**Debtors**") to provide compensation consulting services to the Debtors. I am familiar with the Debtors' employment compensation practices as described in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 363 and 105(a) for an Order Approving Terms of Employment for New Chief Executive Officer and President of Pacific Gas and Electric Company* (the "**Motion**") filed contemporaneously herewith. I submit this Declaration (the "**Declaration**") in support of the Motion.[1]

The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinion, on information that I have from the Debtors' books and records, the Debtors' employees, the Debtors' advisors and their employees, or from other members of the PG team working under my supervision or direction. I have overseen a compensation consulting team since September 2014 that has provided various executive and board compensation consulting services to the Debtors.

For the reasons described below, it is my opinion that Mr. Vesey's proposed compensation arrangement is reasonable and consistent with market practice. I am not being specifically compensated for this testimony other than through payments received by PG as a professional in the ordinary course. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

**I.    Background and Qualifications**

I received my B.S. degree from the University of California, Berkeley and M.B.A from Cornell University. Prior to joining Pay Governance LLC, I held regional management positions with the executive compensation practices of Towers Perrin and Towers Watson.

PG is an international professional services firm that provides a wide range of executive

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

compensation consulting services to hundreds of clients, including expert analysis of executive and management compensation. PG's national team has expertise in accounting, tax, equity/long term incentive valuation, and supplemental retirement plans, as well as in advising on proxy statement modeling and policies.

My responsibilities at PG primarily involve advising clients on the design and implementation of executive compensation programs, as well as incentive plans and rewards strategies. I have extensive experience in managing compensation assignments for major corporations. Some of these engagements include, among other things, developing and implementing total compensation strategies, advising boards and senior management on the design and structure of executive and board compensation programs, and selecting performance criteria and calibrating performance levels for incentive plans. Furthermore, I frequently work with boards and top management teams of globally prominent organizations across various industry segments on various compensation related matters.

## II. PG's Involvement with the Debtors

Since PG was retained by the Debtors on March 21, 2019, my team and I have familiarized ourselves with the Debtors' executive and Board compensation practices. PG has prepared for and attended Compensation Committee meetings of the Board of PG&E Corp., assisted with compensation benchmarking, and prepared reports summarizing PG's conclusions and recommendations. At the start of our engagement, PG discussed with the Debtors and their advisors the Debtors' past financial performance and their historical pay practices relating to senior management.

I have assisted the Debtors with benchmarking executive and board of directors compensation, designing short- and long-term incentive plans, understanding executive compensation trends at the largest investor-owned utilities, developing pay recommendations for promoted and newly-hired executives, and structuring executive compensation policies and plans such as stock ownership requirements and claw-back policies.

## III. Mr. Vesey's Terms of Employment

Pursuant to the Motion, the Debtors seek approval of Mr. Vesey's employment terms. The following is a summary of the material economic terms of Mr. Vesey's current proposed

compensation:

| Category | Description |
|---|---|
| Base Salary | ● Annualized base salary of $1 million. |
| Transition Payment | ● One-time cash transition payment of $1 million.[2] |
| 2019 Equity Incentive Awards | ● Equity awards will consist of (i) time-based restricted stock units ("**RSUs**") and (ii) performance-based restricted stock units ("**PRSUs**"). [3]<br><br>● <u>RSUs and PRSUs</u>. Equity awards with a target annual value of $2 million, which amount will be prorated based upon the five-month period Mr. Vesey will be employed at the Utility in 2019 and equals approximately $830,000. 25% of such award will consist of RSUs that are not performance-based and 75% of such award will consist of PRSUs that are performance-based. The awards will be granted as soon as practicable after the Court's entry of an Order approving this Motion.[4]<br><br>● The award of RSUs will vest in three equal installments on each of the first three anniversaries of the date of the grant.<br><br>● The award of PRSUs will be subject to the 2019 performance-based vesting metrics (the "**2019 Performance Metrics**") described below. The PRSUs will have a performance period beginning on July 1, 2019 and ending on December 31, 2019. |
| Anti-Dilution | ● All equity incentive compensation will be subject to anti-dilution provisions upon a spin-off to shareholders and in connection with a rights offering to shareholders or other transactions in which shareholders are subject to the same anti-dilution protections as Mr. Vesey. |
| Severance[5] | ● Mr. Vesey will be entitled to the general severance benefits available to executive officers through the Officer Severance Policy.<br>● Upon termination by the Utility (other than for "Cause"), Mr. Vesey may be eligible for cash severance payments and other post-employment benefits. The Officer Severance Policy provides |

---

[2] Subject to claw-back and repayment in the event Mr. Vesey resigns or is terminated for "Cause" within 12 months of his start date or August 19, 2020. "Cause" is defined in the PG&E Corp. 2012 Officer Severance Policy, under which the Utility is a participating employer (the "**Officer Severance Policy**").

[3] The initial award of RSUs and PRSUs will be based on the average closing price of PG&E Corp. common stock for the 15 consecutive trading days immediately preceding his start date of August 19, 2019.

[4] If the grant date of an equity award would occur during a "trading blackout" period, as defined under the Debtors' Insider Trading Policy, then the grant date shall be the first business day after the trading blackout ends.

[5] If Mr. Vesey is terminated by the Utility for "Cause" (*e.g.*, for dishonesty, a criminal offense, or violation of a work rule) or resigns before becoming retirement-eligible, all unvested PRSUs and RSUs will be forfeited for no consideration.

| | | |
|---|---|---|
| | | for the following, unless otherwise set forth in the applicable award agreements:<br>○ Cash severance of one year's salary<br>○ Continued vesting of unvested PRSUs and RSUs for one year<br>○ Limited COBRA benefits and outplacement services<br>● Mr. Vesey has been made aware and has agreed that any Severance payment due and payable to him during the pendency of these Chapter 11 Cases will only be paid in accordance with section 503(c)(2) of the Bankruptcy Code. |
| | Other Customary Benefits | ● <u>Annual Perquisite Allowance</u>: Consistent with the Utility's customary historical practice for senior executives, Mr. Vesey will receive an annual cash allowance of $25,000. For the 2019 year, Mr. Vesey received a reduced allowance of $12,500 to reflect the partial year period of his employment.<br><br>● <u>Relocation Cost Reimbursement</u>: Consistent with the Utility's standard Relocation Assistance Program for Officers, Mr. Vesey received a one-time cash payment of $7,000 to reimburse for expenses incurred in connection with his move to California. |

In assessing the reasonableness of Mr. Vesey's compensation, PG conducted two separate benchmarking analyses to evaluate Mr. Vesey's proposed annual compensation (exclusive of the one-time Transition Payment). First, PG evaluated the compensation of 41 executives serving in the comparable position of Chief Operating Officer ("**COO**") within the energy industry based on survey data from Willis Towers Watson's 2018 Energy Services Survey and size-adjusted the salary data using a regression analysis to align peer energy companies' revenues with that of the Debtors'. My team and I benchmarked COO positions for two reasons: (i) to align with the Utility's historical benchmarking practice for Mr. Vesey's position, which has historically been a COO role, and (ii) to access a larger pool of available data for analysis among peer companies, which will more commonly employ a COO rather than a utility CEO in addition to a parent CEO. Based on our analysis, my team and I determined Mr. Vesey's total annual compensation (exclusive of the one-time Transition Payment) falls below the median total direct compensation of COO's in the energy industry of $3,845,000. Second, my team and I evaluated the publicly available compensation data of utility CEO's at peer utility companies.[6] In doing so, my team and I determined Mr. Vesey's total annual

---

[6] The peer companies include: Exelon Corp., NextEra Energy, Inc., FirstEnergy Corp., Southern California Edison Co., and Entergy Corp.

compensation falls below the median total direct compensation of utility CEOs of $3,373,400. Furthermore, four of the five comparable utility CEOs included in the benchmarking were recently promoted to the CEO position in the past three years, and do not have the same depth of experience in the utility industry as Mr. Vesey. Accordingly, compensation for these utility CEOs, if adjusted for increased experience would likely be higher than the current levels, resulting in a higher median total direct compensation figure as a benchmark against Mr. Vesey's total annual compensation.

Separately, my team and I also analyzed new hire compensation arrangements at large energy companies and general industry companies with annual revenues between $9 billion and $30 billion to determine the reasonableness of the proposed Transition Payment. PG found that one-time transition payments typically amount to over 250% of base pay, which is significantly higher than Mr. Vesey's Transition Payment. Although one-time transition payments are commonly awarded in equity, my team and I concluded paying Mr. Vesey's proposed Transition Payment in cash is reasonable given that it is on the low-end of the competitive range and is not intended to replace any forfeited equity awards from a previous employer. Furthermore, Mr. Vesey's compensation arrangement already heavily focuses on performance through the inclusion of the 2019 Performance-Based Awards. The 2019 Performance-Based Awards align Mr. Vesey's goals and performance with those of the Debtors and provide Mr. Vesey with the opportunity to earn a market rate of compensation, but only if certain performance goals are achieved.

**IV.  Conclusion**

Based on my experience and the benchmarking work my team and I have performed in these cases, I believe that Mr. Vesey's compensation arrangement is reasonable in light of competitive market practice for other companies and comports with industry standards.

Pursuant to section 1746 of title 28 of the United States Code, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: October 1, 2019
Moraga, California

Lane T. Ringlee, Managing Partner
Pay Governance