| | | |
|---|---|---|
| 1 | WEIL, GOTSHAL & MANGES LLP | CRAVATH, SWAINE & MOORE LLP |
| 2 | Stephen Karotkin (*pro hac vice*) (stephen.karotkin@weil.com) | Paul H. Zumbro (*pro hac vice*) (pzumbro@cravath.com) |
| 3 | Ray C. Schrock, P.C. (*pro hac vice*) (ray.schrock@weil.com) | Kevin J. Orsini (*pro hac vice*) (korsini@cravath.com) |
| 4 | Jessica Liou (*pro hac vice*) (jessica.liou@weil.com) | Omid H. Nasab (*pro hac vice*) (onasab@cravath.com) |
| 5 | 767 Fifth Avenue New York, NY 10153-0119 | 825 Eighth Avenue New York, NY 10019 |
| 6 | Tel: 212 310 8000 Fax: 212 310 8007 | Tel: 212 474 1000 Fax: 212 474 3700 |
| 7 | KELLER & BENVENUTTI LLP | MUNGER, TOLLES & OLSON LLP |
| 8 | Tobias S. Keller (#151445) (tkeller@kellerbenvenutti.com) | Brad Brian (#79001) (Brad.Brian@mto.com) |
| 9 | Jane Kim (#298192) (jkim@kellerbenvenutti.com) | Thomas B. Walper (#96667) (thomas.walper@mto.com) |
| 10 | 650 California Street, Suite 1900 San Francisco, CA 94108 | Henry Weissmann (#132418) (henry.weissmann@mto.com) |
| 11 | Tel: 415 496 6723 Fax: 650 636 9251 | Bradley Schneider (#235296) (bradley.schneider@mto.com) |
| 12 | | Seth Goldman (#223428) (seth.goldman@mto.com) |
| 13 | | 350 South Grand Avenue, Fiftieth Floor Los Angeles, CA 90071 |
| 14 | | Tel:  213 683 9100 Fax: 213 683 3702 |

*Attorneys for Debtors and Debtors in Possession*
*Additional Counsel Listed on Following Page*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 (Lead Case) (Jointly Administered) |
| - and - | |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **RETAINED PROFESSIONALS' JOINT RESPONSE TO MOTION TO APPROVE FEE PROCEDURES AND FEE EXAMINER PROTOCOL** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | Date:   October 7, 2019 Time:  1:30 p.m. PST Place:  United States Bankruptcy Court |
| ☒ Affects both Debtors | Courtroom 17, 16th Floor San Francisco, CA 94102 |
| * *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Re:   Docket Nos. 701, 2267, 2231, 3762, 3898, 3918, 3950 |

| | |
|---|---|
| COBLENTZ PATCH DUFFY & BASS LLP | GROOM LAW GROUP, CHARTERED |
| Gregg M. Ficks (#148093) | David N. Levine |
| (ef-gmf@cpdb.com) | (dlevine@groom.com) |
| One Montgomery Street, Suite 3000 | 1701 Pennsylvania Avenue, NW |
| San Francisco, CA 94104-5500 | Washington, DC 20006-5811 |
| Tel: 415 391 4800 | Tel: 202 861 5436 |
| Fax: 415 989 1663 | Fax: 202 659 4503 |

*Special Counsel to Debtors*
*and Debtors in Possession*

JENNER & BLOCK LLP
Randall E. Mehrberg
(rmehrberg@jenner.com)
Angela M. Allen
(aallen@jenner.com)
353 N. Clark Street
Chicago, IL 60654
Tel: 312 222 9350
Fax: 312 527 0484

*Special Corporate Defense & Energy Counsel*
*for Debtors and Debtors in Possession*

SIMPSON THACHER & BARTLETT LLP
Jonathan Sanders (#228785)
2475 Hanover Street
Palo Alto, CA 94304
Tel: 650 251 5000
Fax: 650 251 5002

Michael H. Torkin
Nicholas Goldin
Kathrine A. McLendon
Jamie J. Fell
425 Lexington Avenue
New York, NY 10017
Tel: 212 455 2000
Fax: 212 455 2502

*Counsel for the Board of Each of PG&E*
*Corporation and Pacific Gas and Electric*
*Company and for Certain Current and Former*
*Independent Directors*

BAKER & HOSTETLER LLP
Robert A. Julian (#88469)
(rjulian@bakerlaw.com)
Cecily A. Dumas (#111449)
(cdumas@bakerlaw.com)
160 Battery Street, Suite 100
San Francisco, CA 94111
Tel: 628 208 6434
Fax: 310 820 8859

Eric E. Sagerman (#155496)
(esagerman@bakerlaw.com)
Lauren T. Attard (#320898)
(lattard@bakerlaw.com)
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025
Tel: 310 820 8800
Fax: 310 820 8859

Elizabeth A. Green (*pro hac vice*)
(egreen@bakerlaw.com)
200 S Orange Avenue, Suite 2300
Orlando, FL 32801
Tel: 407 649 4036

*Attorneys for the Official Committee of*
*Tort Claimants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................4

PRELIMINARY STATEMENT .............................................................................5

PROCEDURAL HISTORY.....................................................................................7

ARGUMENT .........................................................................................................10

I.    The Principles for Reviewing Professional Fees in Bankruptcy Are Set by Congress. ..........10

II.    The Protocol and Motion Impermissibly Depart from the Judgment of Congress by Imposing More Onerous Restrictions on Professional Compensation. ....................................12

      A.    The Protocol and Motion Improperly Limit Fees Spent Preparing Fee and Retention Applications........................................................................................12

      B.    The Protocol and Motion Improperly Prohibit All Compensation for Non-Working Travel Time, Even at Reduced Rates. ..............................................16

      C.    The Motion Improperly Interferes with the Court's Prior Scheduling Orders. ..........17

      D.    The Protocol and Motion Improperly Preclude Compensation for Time Entries That Include Any Redactions........................................................................19

      E.    The Protocol and Motion Improperly Impose Additional Unwarranted Barriers to Compensation. ......................................................................................21

CONCLUSION.....................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker Botts LLP v. ASARCO,*
   135 S. Ct. 2158 (2015)...........................................................................13, 14

*In re Nucorp Energy, Inc.,*
   764 F.2d 655 (9th Cir. 1985) ...........................................................10, 11, 13

*In re Thomas,*
   474 F. App'x 500 (9th Cir. 2012) ..................................................................15

*In re Wind N' Wave,*
   509 F.3d 938 (9th Cir. 2007) ..........................................................10, 13, 15

**Statutes & Rules**

11 U.S.C. § 330............................................................................................ passim

Bankruptcy Rule 2016 ........................................................................................8, 14

Rule 5.3 of the New York Rules of Professional Conduct .................................9

**Other Authorities**

*Guidelines for Compensation and Expense Reimbursement of Professionals and*
   *Trustees for the U.S. Bankruptcy Court of the Northern District of California,*
   effective Feb. 19, 2014.............................................................................. passim

The *U.S. Trustee's Guidelines for Reviewing Applications for Compensation and*
   *Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger*
   *Chapter 11 Cases,* effective November 1, 2013, 78 Fed. Reg. No. 116............................... passim

*Practices and Procedures in Judge Montali's Court,* effective July 2018................................6, 15, 16

1    Cravath, Swaine & Moore LLP, Weil, Gotshal & Manges LLP, Keller & Benvenutti
2    LLP, Munger, Tolles & Olson LLP, Jenner & Block, LLP, Coblentz Patch Duffy & Bass LLP, Groom
3    Law Group, Chartered (collectively, "**Debtors' Professionals**"), attorneys for PG&E Corporation
4    ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in
5    possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the
6    "**Chapter 11 Cases**"); Simpson Thacher & Bartlett LLP, attorneys for Debtors' boards of directors
7    and certain former directors; and Baker & Hostetler LLP, attorneys for the Official Committee of Tort
8    Claimants (the "**Tort Claimants Committee**"; together with the Official Committee for Unsecured
9    Creditors, the "**Committees**"; and together with all signatories, the "**Retained Professionals**") jointly
10   submit this response (the "**Response**") to the Motion to Approve Fee Procedures [Docket No. 3950]
11   (the "**Motion**") and the Fee Examiner Protocol [Docket No. 3762, Ex. A] (the "**Protocol**").

**PRELIMINARY STATEMENT**

12
13           The Chapter 11 Cases and the hundreds of stayed and contemplated litigations
14   concerning the 2015 Butte fire, the 2017 North Bay fires and the 2018 Camp fire (collectively, the
15   "**Wildfire Litigations**") are large and complex cases that call for prompt resolution.    The
16   unprecedented scale and scope of the reorganization effort and the administration of claims against
17   the estates required the retention of a large number of bankruptcy, litigation and corporate governance
18   attorneys, as well as other subject matter experts, on behalf of Debtors and the Committees.  Together,
19   these professionals discharge their court-ordered duties sometimes cooperatively, and sometimes
20   through the adversary system, as necessary to move these large and complex cases forward on an
21   expedited basis.
22           The Retained Professionals are entitled to reasonable compensation for the actual and
23   necessary services they render in connection with the Chapter 11 Cases and the Wildfire Litigations.
24   To assist the Court in its determination of whether the Retained Professionals' applications for
25   compensation and reimbursement reflect reasonable fees for actual and necessary services, the Court
26   appointed Professor Bruce A. Markell as the Fee Examiner (the "**Fee Examiner**") in the Chapter 11
27   Cases.  The Court further ordered the Fee Examiner to file with the Court, subject to the Court's review

28

and approval, a protocol detailing the procedures by which the Fee Examiner would conduct his review. The Court ordered that the Fee Examiner's reports would present information relevant to whether fee applications comply with the Bankruptcy Code and the Bankruptcy Rules, as well as whether the Retained Professionals made a good-faith effort to respond to U.S. Trustee requests for information pursuant to the U.S. Trustee Guidelines.[1] But, respectfully, the Protocol and Motion exceed this mandate and seek to impose additional and unnecessary requirements on the Retained Professionals' fee applications not found in any of the Code, Rules or Guidelines.

This Response proceeds in two parts. *First*, as explained below, the Bankruptcy Code, Bankruptcy Rules and the Guidelines[2] all reflect the judgment of Congress that professionals in bankruptcy should be compensated at rates comparable to those they would earn in similarly situated non-bankruptcy work. But the Protocol and Motion generally eschew a comparability analysis in favor of the Fee Examiner's views on, among other things, the hours the Retained Professionals should work each day and the maximum amount of compensation that can be awarded for certain categories of work. These arbitrary restrictions exceed the Fee Examiner's authority and should not be permitted. *Second*, the Response reviews the salient, specific areas of disagreement between the Fee Examiner and the Retained Professionals: (a) the Protocol and Motion inappropriately erect barriers to compensation for fees incurred preparing retention and fee applications; (b) the Fee Examiner inappropriately seeks to disallow compensation for any non-working travel time, even at a discounted rate (a position the Fee Examiner admits "is controversial and not supported by the majority of cases" (Motion at 9), nor is it consistent with the Chambers Guidelines); (c) the Fee Examiner injects

---

[1] The *U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013, 78 Fed. Reg. No. 116 (the "**U.S. Trustee Guidelines**").

[2] Specifically, the U.S. Trustee Guidelines, *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the U.S. Bankruptcy Court of the Northern District of California*, effective Feb. 19, 2014 (the "**Local Guidelines**") and the *Practices and Procedures in Judge Montali's Court*, effective July 2018 (the "**Chambers Guidelines**") (and, collectively with the U.S. Trustee Guidelines and the Local Guidelines, the "**Guidelines**").

uncertainty and duplication into the Interim Fee Application schedule by reserving the right to object to Interim Fee Applications that the Court has already approved, in perpetuity and concurrently with future Interim Fee Applications, and by penalizing late-filed Interim Fee Applications; and (d) the Fee Examiner's position that any redacted time entry is *per se* not compensable. The Protocol and Motion contain other discrepancies from the Bankruptcy Code and Guidelines or unnecessary prefatory clauses of uncertain meaning, which are summarized briefly in Part II.E below. A markup of all the revisions to the Protocol proposed jointly by the Retained Professionals is attached as **Exhibit A** to the Declaration of Paul H. Zumbro (the "**Zumbro Declaration**") filed herewith, and a clean copy of the Protocol incorporating those edits is attached as **Exhibit B** to the Zumbro Declaration. These proposed revisions were previously suggested by the Retained Professionals to the Fee Examiner to address the issues discussed above; however, the Fee Examiner rejected nearly all such revisions. As explained more fully below, the Court should deny the Motion in part and enter the revised protocol attached as Exhibit B to the Zumbro Declaration.

## PROCEDURAL HISTORY

On February 27, 2019, the Court entered an order establishing procedures for interim compensation and reimbursement of expenses for professionals, which, among other things, set a schedule for the filing of Interim Fee Applications. [Docket No. 701] (the "**Interim Compensation Order**"). On April 12, 2019, the U.S. Trustee moved for the Court to appoint Professor Markell as the Fee Examiner in the Chapter 11 Cases. [Docket No. 1370.] Following the Court's May 22, 2019 hearing, Professor Markell filed a statement in response to the Court's request that he "set[] forth his understanding of his role and responsibilities as Fee Examiner". [Docket No. 2231 at 2.] Professor Markell's statement of duties explained that the "primary purpose" of a fee examiner "is to ensure that all professional fees and expenses comply with Section 330 of the Bankruptcy Code; that is, that such fees and expenses are reasonable, actual, and necessary." [*Id.*, Ex. A, ¶ 1.] His statement further acknowledged the "novel and complex legal issues presented by these cases". [*Id.*, Ex. A, ¶ 2.]

The Court appointed Professor Markell as the Fee Examiner on May 28, 2019. [Docket No. 2267] ("**Order Appointing Fee Examiner**"). The Order Appointing Fee Examiner established a schedule pursuant to which the Fee Examiner would prepare an Initial Report within 21 days of the filing of an Interim Fee Application and file a Final Report within 14 days of service of the Initial Report, each:

> designed to quantify and present factual data relevant to whether the requested fees and expenses of each Applicant are in compliance with the applicable standards of section 330 of the Bankruptcy Code and Rule 2016 of the Bankruptcy Rules, and whether the Applicant has made a good faith reasonable effort to comply with the U.S. Trustee Guidelines.

[Docket No. 2267 ¶ 6(g).] The Court further ordered the Fee Examiner to "establish, subject to court review and approval, a Protocol, which shall contain procedures for the submission and consideration of" fee applications. [*Id.* ¶ 6(a).] The Court ordered that the Fee Examiner "shall use best efforts to have the undisputed portion of Applications allowed by this Court and paid as soon as reasonably practicable." [*Id.* ¶ 8.] The Court retained "the ultimate authority to determine whether fees and expenses requested are necessary and reasonable under section 330 of the Bankruptcy Code." [*Id.* ¶ 21.]

The Fee Examiner filed the Protocol as a "Notice" on August 30, 2019, explaining that he had "rejected most of the requested revisions" proposed jointly by counsel for the Debtors and the Committees. [Docket No. 3762 at 2.] That filing did not seek for the Court to review and approve the Protocol or otherwise seek to modify the Interim Compensation Order. Instead, it explained that the Protocol is "a statement as to the Fee Examiner's position as to expectations for the submission of fee applications, as well as a statement of the Fee Examiner's beliefs as to the state of the law in various areas." [*Id.*] The Fee Examiner invited professionals "to raise objections to the Protocol" at fee application hearings and reserved "the right to vary from the terms of the Protocol". [*Id.* at 2-3.]

On September 16, 2019, the Fee Examiner filed an *Ex Parte* Application describing the need for various relief. [Docket No. 3898.] The Court issued an order the next day, explaining that it was "unwilling to act as quickly or as summarily as the Examiner propose[d]" and ordering the

Fee Examiner to file a motion directing professionals to the Local and Chambers Guidelines. [Docket No. 3918 at 2.] The Fee Examiner's Motion followed.

This Response is filed in opposition to certain of the relief sought in the Motion and additionally objects to the provisions of the Protocol identified herein and in Exhibit A to the Zumbro Declaration, to the extent that the Motion is construed as seeking the Court's approval of the Protocol.

The U.S. Trustee subsequently filed a purported "Response to Motion to Approve Fee Procedures and Comments Regarding First Interim Fee Applications" on September 27, 2019. [Docket No. 4025.] Although styled as a "Response," the U.S. Trustee's filing seeks the Court to order relief in addition to the relief sought in the Motion, and to make that ruling applicable to "any Interim Applications that have already been filed in these cases . . . without regard to the passage of any purported objection period for those applications." [Docket No. 4025 at 21.] That is not appropriate. If the U.S. Trustee seeks relief in addition to that sought by the Fee Examiner, the U.S. Trustee should present those arguments in a motion that permits professionals to respond on an ordinary briefing schedule. The U.S. Trustee's filing raises significant new issues only two business days before the Court ordered responses on the Motion, which does not give the Retained Professionals adequate time to respond. [*See* Docket No. 3918 at 3.] The Retained Professionals accordingly reserve all rights with respect to the issues raised in the U.S. Trustee's filing.[3]

---

[3] Cravath offers the following limited response to the U.S. Trustee's filing to refute any suggestion that law clerks who kept time in these Chapter 11 Cases following their graduation from law school and completion of the bar examination, but prior to their formal admission to the bar, "engaged in the unauthorized practice of law" because their time was charged at the same rate as admitted first-year associates. [Docket No. 4025 at 18.] Certain of the timekeepers listed in Cravath's First Interim Fee Application [Docket No. 3683] were law clerks during the period addressed by the First Interim Fee Application (the "**Cravath Law Clerks**"). [Zumbro Decl. ¶ 5.] The educational requirements to become a law clerk at Cravath are the same as those for associates, including, at a minimum, a law degree. [*Id.* ¶ 6.] All of the Cravath Law Clerks listed in Cravath's First Interim Fee Application [Docket No. 3683] passed the Bar Examination prior to starting work at Cravath, and all have since been admitted to the Bar. [*Id.* ¶ 7.] Prior to their admission to the Bar, Cravath Law Clerks worked under the direct supervision of partners and associates, all of whom are New York-licensed attorneys

**ARGUMENT**

**I.    The Principles for Reviewing Professional Fees in Bankruptcy Are Set by Congress.**

The factors affecting professional compensation in large chapter 11 cases like these are established in the first instance by Congress, which, in section 330 of the Bankruptcy Code, sought "to ensure adequate compensation for bankruptcy attorneys so that highly qualified specialists would not be forced to abandon the practice". *In re Wind N' Wave*, 509 F.3d 938, 943 (9th Cir. 2007) (citing *Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir. 1985)).    The statutory scheme provides for "reasonable compensation for actual, necessary services rendered by" the professional.  11 U.S.C. § 330(a)(1)(A).  In assessing the reasonableness of fees, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:

> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

*Id.* § 330(a)(3).

The touchstone for compensation under section 330 is comparability to compensation outside of bankruptcy.  As the Ninth Circuit explained, "Congress made clear its intent to ensure

---

[*id.* ¶ 8], in accordance with Rule 5.3 of the New York Rules of Professional Conduct.  Cravath Law Clerks have not argued in Court or taken depositions in these Chapter 11 Cases.  [*Id.* ¶ 9.]

competent representation of debtors by requiring compensation of 'attorneys and other professionals serving in a case under Title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services' in non-bankruptcy cases." *Nucorp Energy*, 764 F.2d at 658 (quoting collected legislative history). The Bankruptcy Code and Rules, as supplemented by the Guidelines and the orders of this Court, contain the exclusive set of requirements for compensation for retained professionals in a case under chapter 11. The fact that these are large chapter 11 cases necessarily involving significant professional fees does not change the applicable comparability analysis. Indeed, the U.S. Trustee Guidelines that apply in larger chapter 11 cases likewise use a "comparable services standard" directed at determining whether "the compensation sought is reasonable as compared to the market measured by the billing practices of the applicant and its peers for bankruptcy and non-bankruptcy engagements." 78 Fed. Reg. No. 116 at 36249-50.

The U.S. Trustee, the Court and the Fee Examiner himself have explained that the purpose of the Fee Examiner is "to ensure that professional fees and expenses paid by the estate are reasonable, actual, and necessary, as required by section 330 of the Code." 78 Fed. Reg. No. 116 at 36256; [*see also* Docket No. 2231, Ex. A, ¶ 1; Docket No. 2267 ¶ 6(g)). But the Fee Examiner in practice appears to view his mandate differently, using the Protocol to "integrate and elaborate upon the Fee Examiner's role and standards" (Protocol § 1), "supplement" controlling authority (*id.*), define "bad faith" (*id.* § 2.2), exercise "judgment" regarding "each task's staffing efficiency, workflow efficiency and value" (*id.* § 5.1.1), assess the "professional fatigue" and "judgment and professionalism" of those seeking compensation (*id.* § 5.1.2) and state his "beliefs as to the state of the law in various areas" [Docket No. 3762 at 2]. To the extent that the Fee Examiner seeks in practice to reduce rates to maximize the assets of the estate—such as by calling for categorical rate reductions—that goal, however laudable, conflicts with the Bankruptcy Code as it exists today. Section 330 "repudiate[d] a series of judicial decisions which had held that the compensation of attorneys in bankruptcy proceedings was subject to the overriding concern, unique to bankruptcy cases, of preserving the estate." *Nucorp Energy*, 764 F.3d at 658. The Fee Examiner instead must

follow Congress's judgment in ensuring that compensation for actual and necessary services in bankruptcy cases is comparable to compensation in non-bankruptcy practice.

## II. The Protocol and Motion Impermissibly Depart from the Judgment of Congress by Imposing More Onerous Restrictions on Professional Compensation.

The Protocol and Motion exceed the limitations set by Congress and the Guidelines by erecting new requirements for the Retained Professionals to obtain the compensation to which they would ordinarily be entitled. The Protocol and Motion seek to limit the award of compensation for time spent preparing fee and retention applications below the level contemplated by the Local Guidelines. (Part II.A.) The Protocol and Motion absolutely prohibit the award of even reduced fees for non-working travel time, when the Local and Chambers Guidelines contemplate such compensation. (Part II.B.) The Motion seeks to override the deadlines established in the Court's Order Appointing Fee Examiner, unnecessarily penalizing late-filed fee applications. (Part III.C.) The Protocol and Motion invent a new rule that any time entry redacted in any way is *per se* not compensable. (Part III.D.) Finally, the Protocol contains several other flaws addressed by the Retained Professionals' joint proposed edits. (Part II.E.)

### A. The Protocol and Motion Improperly Limit Fees Spent Preparing Fee and Retention Applications.

The Bankruptcy Code explicitly contemplates awarding compensation for time spent preparing fee applications, which it explains "shall be based on the level and skill reasonably required to prepare the application." 11 U.S.C. § 330(a)(6). The Fee Examiner's view is "that most billing matters are overhead, and ought not to be charged to the client" and that "[i]t is double-dipping to charge a client for charging a client" (Motion at 13), even in bankruptcy cases. But the relevant authorities reject that approach. As the U.S. Trustee Guidelines explain, "[r]easonable charges for preparing interim and final fee applications . . . are compensable, because the preparation of a fee application is not required for lawyers practicing in areas other than bankruptcy as a condition to getting paid." 78 Fed. Reg. No. 116 at 36250. The Ninth Circuit has likewise "found that it was both inconsistent with the policy of the Bankruptcy Reform Act and 'fundamentally inequitable' to demand

that counsel prepare and present extensive fee applications and yet simultaneously 'deny[] compensation for the efforts necessary to comply with those requirements.'" *Wind N' Wave*, 509 F.3d at 943 (quoting *Nucorp*, 764 F.2d at 659). The Protocol and Motion ignore these principles and create two new limitations on compensation for time spent preparing fee applications, both of which are inconsistent with the Code, Rules and Guidelines.

*First*, the Motion seeks a ruling that compensation for "ongoing billing activities, such as preparing fee applications and monthly statements, should be limited to a monthly maximum equal to the blended hourly rate [of the Applicant] times 20 hours". (Motion at 15.) The Local Guidelines, however, state that fees incurred in preparing a fee application "may not exceed five percent of the total amount of fees and costs requested in the application" as a "ceiling". Local Guidelines § 6. The approach taken by the Local Guidelines—a percentage cap, not a flat fee—makes perfect sense. It reflects that the more voluminous and complicated the time entries and invoices that must be reviewed in connection with the filing of a fee application, the more time that must be expended and the greater the resulting compensation awarded. The Fee Examiner's admonition that a "reasonably organized firm . . . should not take more than half a week to prepare a bill, and to monitor other firms' billing activities" (Motion at 15) ignores the scale of the review of time entries required for the filing of fee applications. As explained further below, the preparation of fee applications involves significant time to screen time entries for privileged or confidential information. That is an especially onerous task in these Chapter 11 Cases given that, for example, the first interim fee period for one Retained Professional generated around two thousand pages of time entries. [*See* Docket Nos. 2645-4, 3084-4, 3484-4, 3614-4.] Arbitrarily capping time spent preparing fee applications in the context of the Fee Examiner's litany of other new requirements whipsaws the Retained Professionals, increasing their burden in preparing fee applications on the one hand but denying compensation for that increased effort on the other.[4]

---

[4] The Protocol also provides that if the Fee Examiner "raises issues that a reasonably experienced bankruptcy professional should have anticipated due to a lack of compliance with this Protocol (including providing insufficient information in the Application or the request for unreasonable fees or expenses), then it is the Fee Examiner's position that *Baker Botts LLP v. ASARCO*[, 135 S. Ct. 2158

The Fee Examiner similarly seeks a ruling that time spent preparing a retention application should be limited to 40 hours total of attorney time, multiplied by the applicant's blended rate (Motion at 14-15, 17), and that cap is flawed for the same reasons. Just as with a fee application, a retention application "is not required for lawyers practicing in areas other than bankruptcy as a condition to getting paid." 78 Fed. Reg. No. 116 at 36250. Outside of bankruptcy, clients and their counsel enter into retention agreements in the ordinary course without the need to satisfy the litany of disclosure requirements in the U.S. Trustee Guidelines or file motion papers and attend a hearing seeking court approval of that retention. Accordingly, an arbitrary fixed-hour cap on time spent preparing a retention application denies professionals compensation for substantial time that would be unnecessary in the comparable non-bankruptcy context.[5] The Local Guidelines do not directly address the appropriate amount of fees for time spent preparing a retention application, but the five percent ceiling that applies to the award of fees incurred preparing fee statements and applications can likewise include fees incurred preparing retention applications. That would be a fairer approach, and one that is consistent with the Guidelines.

---

(2015)] governs, and those fees on fees shall be considered unreasonable." (Protocol § 5.1.9.) It is not clear whether the Fee Examiner means that fees incurred in the *initial* preparation of a Fee Application that he subsequently finds deficient are not compensable, or merely whether time spent responding to follow-up questions by the Fee Examiner is not compensable. In any event, both go beyond the holding of *ASARCO*, which stands for the limited proposition that time spent "defending a fee application in court" is not compensable, but "time spent *preparing* a fee application is compensable". 135 S. Ct. at 2167-68. Expanding the holding of *ASARCO* in the manner suggested by the Fee Examiner would be inappropriate.

[5] The Fee Examiner argues that the Chambers Guideline regarding conflict checks supports a 40-hour cap on time spent preparing a retention application. (Motion at 14 (citing Chambers Guidelines § III.I).) That is incorrect. Preparing a retention application involves more than merely checking conflicts. Unlike preparing a retention application with an eye toward satisfying the disclosure requirements of the U.S. Trustee Guidelines or the ongoing disclosure requirements of Bankruptcy Rule 2016, which are unique to bankruptcy practice, conflict checks are routine in non-bankruptcy representations, and such time checking conflicts is "similar to a firm absorbing the time expended on its own efforts to secure a new client". Chambers Guidelines § III.I. To the extent Retained Professionals seek reimbursement for time spent running a conflicts check comparable to non-bankruptcy representations, that time is properly excluded from any award, but that does not justify a presumptive limitation on time spent preparing a retention application writ large.

*Second*, the Protocol states that "[i]n no event . . . is it reasonable to request compensation for time spent in making" adjustments to time entries, including "time segregating billing entries related to confidential or privileged matters." (Protocol § 5.1.10.) But redacting, revising or otherwise reviewing time entries for privileged or confidential information is compensable. The U.S. Trustee Guidelines permit compensating "time spent for redactions" of time entries provided with an Application, so long as such fees are "reasonably proportional to the overall fees sought". 78 Fed. Reg. No. 116 at 36250. Time spent reviewing and redacting or editing time entries to protect privileged or confidential information in bankruptcy cases is compensable for the same reasons that time spent preparing fee applications is compensable. Outside of bankruptcy, professionals do not need to spend time redacting, revising or reviewing time entries for privileged or confidential information as a condition of being paid; time entries need not be publicly filed and can therefore be shared with the client in unredacted form without waiving privilege or revealing confidential information. In chapter 11 cases, by contrast, time entries must be publicly filed, and therefore time spent redacting time entries (or reviewing and revising time entries so as not to reveal privileged information) is necessary to preserve privilege and confidentiality. But the Protocol precludes any compensation for taking these steps. That is precisely the outcome that the Ninth Circuit has held is "inconsistent with the policy of the Bankruptcy Reform Act and 'fundamentally inequitable'". *Wind N' Wave*, 509 F.3d at 943 (citation omitted).

**The Court should (a) rule that fees incurred preparing retention and fee applications and conducting related billing activities may be compensated pursuant to the Fee Examiner's proposed limitations in the Motion or an amount not exceeding five percent of the aggregate fees sought in the applicable interim fee application, whichever is greater; and (b) replace sections 5.1.9 and 5.1.10 of the Protocol with the modified versions shown in Exhibit A to the Zumbro Declaration.**

**B.    The Protocol and Motion Improperly Prohibit All Compensation for Non-Working Travel Time, Even at Reduced Rates.**

The Protocol states that "[n]on-working travel time is not compensable."  (Protocol § 5.1.8; *see also* Motion at 6-12.)  That is not the law.  The Ninth Circuit has explained that "there will be some occasions when travel time can reasonably be reimbursed fully, and other times when it reasonably should be discounted."  *In re Thomas*, 474 F. App'x 500, 502 (9th Cir. 2012) (affirming award of travel time to and from courthouse billed at professional's full hourly rate in Chapter 7 proceeding).  The U.S. Trustee Guidelines explain that the Trustee "*may* object if the applicant seeks compensation at a professional's *full* rate" for non-working travel time, strongly suggesting that partial or reduced compensation is appropriate.  78 Fed. Reg. No. 116 at 36250 (emphases added).  The Chambers Guidelines generally "allow up to two hours of compensation for non-working airplane travel time to account for inevitable delays for security and administration involved in air travel."  Chambers Guidelines ¶ I.  The Fee Examiner points to no authority standing for the proposition that compensation for non-working travel time is prohibited.  Indeed, he concedes that this "position is controversial and not supported by the majority of cases."  (Motion at 9 (collecting cases).)

The Retained Professionals believe that the presumptive two hours of compensation for non-working travel time per trip in the Chambers Guidelines can and should be increased consistent with other authority because of the significant amount of travel required of the Retained Professionals in these Chapter 11 Cases.  Although the Local Guidelines state that "[a]irplane travel time is not compensable" in the ordinary course, they further provide that where "significant airplane travel time is expected in a case, specific guidelines should be obtained for that case."  Local Guidelines ¶ 17.[6]  That is the case here, as many of the lead counsel and other professionals in these cases are based in New York and must frequently travel to California for representation of the Debtors or the Committees

---

[6] The Fee Examiner argues that the Local Guidelines "should be followed" because they "were in place when all professional [*sic*] were hired, thus reducing or eliminating any reliance argument".  (Motion at 12.)  But as explained above, the Local Guidelines permit compensating non-working travel time in cases where significant travel is expected, and the Retained Professionals have also relied on the Chambers Guidelines, which provide a minimum amount of compensation for such time.

in the Bankruptcy Court and other state and federal courts located in California. Moreover, unlike in a typical chapter 11 proceeding, here there are numerous professionals involved in the Wildfire Litigations (and related investigations) who must travel within California to supervise the collection of evidence, interview witnesses, attend depositions and the like. This travel can involve substantial time driving from San Francisco to fire sites or other locations where potentially relevant witnesses live or work. The Local and Chambers Guidelines address only airplane travel; not the ground transportation involved in fact development for the Wildfire Litigations. Compensating non-working travel time in these Chapter 11 Cases at a 50% rate strikes an appropriate balance given the significant travel time—by air or otherwise—that the Retained Professionals have incurred.

Unable to cite any legal authority supporting his position that non-working travel time is never compensable, the Fee Examiner makes several policy arguments. (*See* Motion at 9-12.) But the only relevant consideration is whether travel time by a Retained Professional to a court hearing or deposition is "actual and necessary" to the administration of the estate and "reasonable" as compared to the amounts charged for non-working travel time in comparable non-bankruptcy work. To accept otherwise would allow the Fee Examiner to dictate the Debtors' or Committees' choice of counsel based on geographic location. In any case, these fees are not "hidden". (Motion at 9.) Travel time between New York and California generally takes between seven and ten hours door-to-door, and such time (to the extent the Retained Professional is not actually working on the plane) will be subject to a 50% discount from the professional's standard hourly rates under the Retained Professionals' proposed approach.

**The Court should order that non-working travel time is compensable at 50% of the Retained Professionals' hourly rates.**

### C. The Motion Improperly Interferes with the Court's Prior Scheduling Orders.

The Fee Examiner requests that the Court rule on additional scheduling matters and order that disposition of an Interim Fee Application does not waive the Fee Examiner's ability to continue to object on duplication and overlap grounds. (Motion at 3-6.) While the Court's prior orders

make additional scheduling guidance unnecessary, the Retained Professionals object to two aspects of these requested changes.

*First*, the Protocol provides that the Fee Examiner's "[f]ailure to object to an Application or Monthly Fee Statement will not bar the Fee Examiner from objecting to time or expenses covered by such requests at a later time". (Protocol § 6; *see also* Motion at 6 ("[A]ny interim award of fees to any fee applicant does not waive or otherwise limit the Fee Examiner's right to object at a future date based upon his determination of duplication or overlap as between multiple firms."); *id.* at 16-17.) This language is unnecessary given that, under the Interim Compensation Order, the failure to file an objection does not waive the ability of any party in interest to object to fees in connection with a final fee application. [Docket No. 701 ¶ 2(i).] But permitting the Fee Examiner to lodge objections to prior Interim Fee Applications concurrently with pending Interim Fee Applications in perpetuity could create an untenable circumstance of constant objections, litigation and the looming threat of disgorgement, and in any case disincentivizes the Fee Examiner from completing his work within the time periods specified by the Court. The Retained Professionals propose that, following the Court's disposition of an Interim Fee Application, the Fee Examiner may not interpose a new objection to fees that are the subject of the resolved Interim Fee Application until those fees are presented in a Final Application, consistent with the Interim Compensation Order. This minimizes uncertainty but provides the Fee Examiner and the Court with the opportunity to conduct an holistic examination of the aggregate fees sought by the professionals at the conclusion of these Chapter 11 Cases.

*Second*, the Fee Examiner unnecessarily penalizes professionals for the late filing of Interim Fee Applications by seeking that the Court deem any late-filed Interim Fee Application filed at the next deadline—which may be up to four months later. (Motion at 5 ("If an interim fee application is filed after the deadline, it will be deemed filed at the next interval."); *see also id.* at 16.) The Court's Order Appointing Fee Examiner already contemplates the treatment of late-filed Applications and explains that "in the reasonable discretion of the Fee Examiner, [if] the Applicant's failure to meet these deadlines does not allow sufficient time for the review process to be completed,

such Application shall be heard at a subsequent hearing date." [Docket No. 2267 ¶ 10.] The Fee Examiner should not be able to summarily delay the award of compensation for late-filed Interim Fee Applications by an additional four months before even reviewing the Application to determine whether a review is practicable before the hearing date applicable to that interim period. Indeed, the Court ordered that the Fee Examiner "shall use best efforts to have the undisputed portion of Applications allowed by this Court and paid as soon as reasonably practicable" [Docket No. 2267 ¶ 8]—not automatically deferred.[7] The Court further ordered that the "Debtors may request that the Court schedule a hearing on Interim Fee Applications *at least* once every four months *or at such other intervals as the Court deems appropriate*." [Docket No. 701 ¶ 2(f) (emphasis added).] Given the frequency of hearings in the Bankruptcy Court, it is unnecessary to wait until the next interim period to determine the prior period's fees.

**The Court should order that (a) the Fee Examiner may not interpose a new objection to fees that are the subject of a resolved Interim Fee Application until those fees are presented in a Final Application and (b) as to late-filed Interim Fee Applications, such Applications may be heard, individually or with other late-filed Applications, at any date that is convenient for the Court, the Fee Examiner and the Debtors' Counsel, and need not wait for the conclusion of the following interim period to be heard.**

**D.      The Protocol and Motion Improperly Preclude Compensation for Time Entries That Include Any Redactions.**

The Fee Examiner takes the position that compensation "can only be allowed when [time entries are] unredacted, or when, subject to appropriate confidentiality and privilege controls, the court (or designate [*sic*]) can review the substance of the redacted entry without destroying any

---

[7] This is additionally problematic to the extent that the Fee Examiner seeks to "group" the hearing dates on Interim Fee Applications. (*See* Motion at 5, 16.) The Court ordered that "the delay or adjournment of consideration of an Application shall not affect the timing of hearings on the Applications of other Applicants." [Docket No. 2267 ¶ 10.]

claimed privilege." (Motion at 12; *see also* Protocol § 5.1.4.) This blanket approach should be rejected for two reasons.

*First*, partial redactions of time entries may be necessary to protect privileged or confidential information but nevertheless may preserve the ability of the Fee Examiner and the Court to review their substance. For example, time entries summarizing time spent working with subject matter experts who may testify in the estimation proceeding or in other litigation involving the Debtors might redact the name of the expert if that expert has not yet been disclosed as a potential testifying expert. In such a case, the Fee Examiner and the Court are still able to review the substance of the time entry. But under the blanket prohibition proposed by the Fee Examiner, such time entries "are not compensable unless and until they are unredacted". (Motion at 12.) That approach is arbitrary. If redactions of a time entry prevent the Fee Examiner from identifying the substance of an entry, the Fee Examiner should flag those entries for further explanation by the Retained Professional. If redactions do not interfere with the Fee Examiner's ability to understand the task completed, they should not preclude compensation for that time.

*Second*, the Fee Examiner believes that he and each Applicant should "reach an agreement whereby the Fee Examiner can review the redacted time entries subject to an agreement which maintains confidentiality and privilege." (Motion at 12; *see also* Protocol § 5.1.4 ("[T]he Retained Professional and the Fee Examiner may enter into a confidentiality agreement to enable the Retained Professional to provide more detailed information.").) But executing a side confidentiality agreement is unnecessary because the protection of information shared with the Fee Examiner is already guaranteed by the Court's Order Appointing Fee Examiner. [*See* Docket No. 2267, ¶ 13 ("If a Retained Professional or its client provides privileged or work product information to the Fee Examiner and identifies the confidential nature of such information to the Fee Examiner, the Fee Examiner shall treat such information as confidential.").] Accordingly, this provision should be removed from the Protocol, and the Court should instruct the Fee Examiner to treat as confidential any information designated as privileged or confidential pursuant to the Order Appointing Fee Examiner.

The Court should order that compensation may be granted for time entries that are redacted if the redactions permit the Fee Examiner and the Court to review the material substance of the entry. The Court should strike the portion of Section 5.1.4 of the Protocol requiring the execution of confidentiality agreements as a condition to the Fee Examiner protecting privileged and confidential information.

**E.** **The Protocol and Motion Improperly Impose Additional Unwarranted Barriers to Compensation.**

The Protocol and Motion together contain a litany of requirements that have no basis in the Bankruptcy Code, Rules or Guidelines. A markup showing the Retained Professionals' proposed edits to the Protocol is attached as Exhibit A to the Zumbro Declaration. Certain of those edits are explained briefly below:

- Protocol Section 2.2: This Section requires that "[a]t any session with the Fee Examiner, the Retained Professional must be represented by a person who has full authority to adjust proposed fees and expenses without consultation with another person. Failure to provide such a person will be considered to be bad faith." Professionals, particularly lawyers practicing in a partnership, typically cannot make unilateral determinations on billing rates, fees and similar items without consulting fellow partners. This provision should be modified or removed.

- Protocol Sections 5.1 and 5.1.1: These provisions contain unclear prefatory language that should be removed or reworded. In Section 5.1, the Protocol explains that "[h]ourly rates should reflect a Biller's . . . time and experience in restructuring companies." These Chapter 11 Cases involve substantial non-bankruptcy litigation, investigatory and corporate work and accordingly, "experience in restructuring companies" should not be a reason to reduce fees for such work. Section 5.1.1 discusses efficiency but as explained above, the touchstone of the Fee Examiner's review should be comparability with non-bankruptcy work, not whether a work stream could hypothetically have been more efficient.

- Protocol Section 5.1.2: The second paragraph of this Section requires a disclosure of the "total recorded hours on *all matters* for that month"—*i.e.*, for other matters and other clients unrelated to the Chapter 11 Cases—for each timekeeper included in an Application who bills more than 10 hours in the Chapter 11 Cases per month. The Fee Examiner's role is to ensure that fees sought comply with the Bankruptcy Code, not to superintend how a timekeeper divides her practice across all clients and matters. The second paragraph of Section 5.1.2 should be deleted.

- Protocol Section 5.2.5.1: This section declares certain hotels to be "presumptively unreasonable" and others to be "presumptively reasonable except when room rates surge for high demand events or seasons." The Retained Professionals do not believe this is the most predictable distinction, particularly when travel plans change at the last minute or high demand constrains available choices. As the Local Guidelines explain, "[d]ue to wide variation in hotel

costs in various cities, it is not possible to establish a single guideline for this type of expense." Local Guidelines ¶ 37. Instead, all parties would be better served by a bright-line rule that provides a minimum amount of compensation. The Retained Professionals propose that they may be reimbursed up to a maximum of $600 per night per hotel stay, regardless of the hotel, and that any amount exceeding $600 per night be borne by the professionals. This is consistent with the approach the Protocol takes to first and business-class airfare, for which reimbursement may be obtained at the economy rate, with the balance paid by the professional. (*See* Protocol § 5.2.2.) And this approach reflects the high hotel rates in San Francisco, which have been described as the most expensive in the world.[8]

## CONCLUSION

The requirements for the award of professional fees in bankruptcy were crafted by Congress to treat bankruptcy work commensurate with comparable non-bankruptcy work. Those requirements are supplemented by the Rules and Guidelines. The Protocol and Motion should not impose requirements beyond what Congress has commanded. The Retained Professionals in these Chapter 11 Cases have been working diligently to move these incredibly large and complex cases quickly forward towards emergence confirmation, and they are entitled to reasonable compensation for their services and efforts as set forth by Congress. The Protocol should be modified to conform more closely to the principles Congress chose, and the Motion should be denied in part consistent with this Response.

For the reasons stated above, the Court should deny the Motion in part and enter the revised protocol attached as Exhibit B to the Zumbro Declaration.

---

[8] *See* Nadja Brandt, *San Francisco Hotels are World's Priciest as Rates Surge*, Bloomberg, June 30, 2015, *available at* https://www.bloomberg.com/news/articles/2015-06-30/san-francisco-hotels-are-world-s-priciest-as-rates-surge.

Dated:  October 1, 2019

**CRAVATH, SWAINE & MOORE LLP**

_____/s/ _Paul H. Zumbro_____

*Attorneys for Debtors and Debtors in Possession*


**WEIL, GOTSHAL & MANGES LLP**

_____/s/ _Stephen Karotkin_____

*Attorneys for Debtors and Debtors in Possession*


**KELLER & BENVENUTTI LLP**

_____/s/ _Tobias S. Keller_____

*Attorneys for Debtors and Debtors in Possession*


**MUNGER, TOLLES & OLSON LLP**

_____/s/ _Bradley Schneider_____

*Attorneys for Debtors and Debtors in Possession*


**COBLENTZ PATCH DUFFY & BASS LLP**

_____/s/ _Gregg M. Ficks_____

*Special Counsel to Debtors and Debtors in Possession*


**GROOM LAW GROUP, CHARTERED**

_____/s/ _David N. Levin_____

*Special Counsel to Debtors and Debtors in Possession*

**JENNER & BLOCK LLP**

_____/s/ _Angela M. Allen_____

*Special Corporate Defense & Energy Counsel*
*for Debtors and Debtors in Possession*


**SIMPSON THACHER & BARTLETT LLP**

_____/s/ _Nicholas Goldin_____

*Counsel for the Board of Each of PG&E Corporation and*
*Pacific Gas and Electric Company and for Certain Current*
*and Former Independent Directors*


**BAKER & HOSTETLER LLP**

_____/s/ _Elizabeth A. Green_____

*Attorneys for the Official Committee of*
*Tort Claimants*