WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>          **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF MARINO MONARDI IN SUPPORT OF THE UTILITY'S SECOND DISCOUNTED EP ASSUMPTION MOTION**<br><br>Hearing Date:  November 13, 2019<br>Hearing Time:  10:00am (Pacific Time)<br>Place:        United States Bankruptcy Court<br>                Courtroom 17, 16th Floor<br>                San Francisco, CA 94102<br>Judge:        Hon. Dennis Montali<br><br>Objection Deadline: October 30, 2019<br>                   4:00 p.m. (Pacific Time) |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

I, Marino Monardi, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Director, Energy Procurement and Policy Division, at Pacific Gas and Electric Company (the "**Utility**" and, together with PG&E Corporation, the "**Debtors**").

2. I am knowledgeable and familiar with the Utility's day-to-day operations and, specifically, the Utility's energy procurement agreements.

3. I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Sixth Omnibus Motion Pursuant to 11 U.S.C. § 365(a), Fed. R. Bankr. P. 6006, and B.L.R. 6006-1 to Approve the Utility's Assumption of Certain Contract Price Discounted Energy Procurement Agreements* (the "**Motion**").[1]

4. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

## THE EP AGREEMENTS

5. In the ordinary course of its operations, the Utility is party to various types of energy procurement agreements, including, without limitation, (a) power purchase agreements, pursuant to which the Utility purchases electric power from generators, and (b) capacity storage agreements, which provide the Utility access to capacity from energy storage facilities.

6. The Utility routinely and continuously evaluates its energy procurement agreements in light of, among other things, the Utility's operations, market conditions, pricing, the needs of the Utility's customers, the regulatory requirements imposed on the Utility, and to ensure the

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

Utility is safely and reliably delivering power. As part of that evaluation, the Utility has identified the EP Agreements for assumption in the Chapter 11 Cases. Following discussions with the EP Counterparties, the Utility and each of the respective counterparties have agreed that, in exchange for assumption of the applicable EP Agreement, the parties will enter into the EP Amendments described below, which include valuable discounts for the Utility.

7. It is my understanding that the effectiveness of each of the EP Amendments and assumption of the EP Agreements pursuant to the Motion is conditioned upon the Utility obtaining the necessary approvals from the Bankruptcy Court and California Public Utility Commission (the "**CPUC**"). Accordingly, contemporaneously herewith, the Utility is seeking CPUC approval for the EP Amendments; however, to the extent such approval is not obtained prior to the hearing on the Motion, the Utility requests that the Court approve the Utility's assumption of the EP Agreements, as amended, subject to CPUC approval. Pursuant to the EP Amendments, in the event CPUC approval is not attained within one hundred and eighty (180) days from the date approval is sought from the CPUC or the date of the Motion (whichever is later), either party may terminate the applicable EP Amendment and the assumption of the applicable EP Agreement shall be null and void. The EP Agreements and the EP Amendments are discussed in further detail below.

## THE POWER PURCHASE AGREEMENT

8. To enable the Utility to provide power to its customers and meet regulatory requirements, the Utility is party to various power purchase agreements (each, a "**PPA**") with developers and operators of power generation facilities and projects. Pursuant to the Motion, the Utility is seeking to assume that certain Power Purchase Agreement, between the Utility and Java Solar, LLC ("**Java**") dated December 18, 2015 (as previously amended by the First Amendment dated July 19, 2017, the "**Java PPA**"), as amended by the PPA Amendment Agreement (as defined below).

9. A copy of the form of the Java PPA is available at https://www.pge.com/en_US/for-our-business-partners/floating-pages/sixth-renewable-auction-mechanism/sixth-renewable-

auction-mechanism.page?ctx=large-business.   Aside from confidential commercial terms, I understand that the Java PPA is substantially similar to the form.

10.     The Java PPA is a long-term purchase agreement, pursuant to which the Utility will purchase electric power generated by a generation facility or project operated by Java.   The generation project that will generate the power to be purchased by the Utility pursuant to the Java PPA is currently under development and not yet operational and, as a result, Java has not yet commenced delivering power to the Utility.  Upon completion of the generation project, pursuant to the terms of the Java PPA, the Utility will purchase power from Java for a period of seventeen years and three months, on a dollar per megawatt hour basis.  Consequently, the Utility has no outstanding obligations to Java under the Java PPA, and no cure amounts are owed or payable in connection with the assumption of the Java PPA as proposed pursuant to the Motion.

11.     It is my understanding that Java entered into the Java PPA prior to the completion of the generation project in part because Java uses projected future revenue from the Java PPA to facilitate the development and construction of the project.

12.     In connection with the proposed assumption of the Java PPA, the Utility has negotiated a favorable amendment with Java (the "**PPA Amendment Agreement**").  Among other things, the Utility and Java have agreed to a ten percent (10%) discount to the respective per megawatt hour purchase price of power under the Java PPA.  Additionally, the Utility and Java have agreed to extend project and construction related deadlines in the Java PPA, and consequently, the time by which the Debtors would be obligated to commence purchasing power under the Java PPA as amended, has also been extended by 24 months.

**THE ENERGY STORAGE AGREEMENT**

13.     To enable the Utility to comply with applicable regulatory requirements related to storage capacity and resource adequacy, the Utility is party to various energy storage agreements with various counterparties that provide energy storage services.  Pursuant to the Motion, the Utility is seeking to assume that certain Energy Storage Resource Adequacy Agreement, between the

Utility and Dynegy Marketing and Trade, LLC ("**Dynegy**"), dated June 6, 2018, (as previously amended by letters dated October 11, 2018 and November 27, 2018, the "**Dynegy ESA**", and together with the Java PPA, the "**EP Agreements**"), as amended by the ESA Amendment (as defined below).

14. Copies of the form of the Dynegy ESA are available at https://www.pge.com/en_US/for-our-business-partners/energy-supply/electric-rfo/wholesale-electric-power-procurement/local-sub-area-energy-storage-rfo.page?ctx=large-business. Aside from confidential commercial terms, I understand the Dynegy ESA is substantially similar to the form.

15. The Dynegy ESA is a long-term agreement, pursuant to which the Utility will purchase storage capacity in a battery storage project from Dynegy (together with Java, the "**EP Counterparties**"). The Utility utilizes the Dynegy ESA to meet the resource adequacy requirements (the "**RARs**") imposed on it by the CPUC and other regulators. The RARs ensure that California's load serving entities (including utilities, community choice aggregators, and energy service providers) have sufficient capacity to meet peak electric load demand on their networks, and require that load-serving entities maintain a reserve margin. Like the Java PPA, the energy storage project that is the subject of the Dynegy ESA is currently under development and not yet operational, and Dynegy has not yet commenced providing storage capacity to the Utility. Upon completion of the storage project, the Utility will purchase storage capacity from Dynegy for a period of twenty (20) years, on a dollar per kilowatt-month basis. Consequently, the Utility has no outstanding obligations to Dynegy under the Dynegy ESA and no cure amounts are owed or payable in connection with the assumption of the Dynegy ESA as proposed pursuant to the Motion.

16. In connection with the assumption of the Dynegy ESA, the Utility has negotiated favorable amendments to the Dynegy ESA (the "**ESA Amendment** and, together with the PPA Amendment Agreement, the "**EP Amendments**"). Specifically, with respect to the Dynegy ESA, among other things, the parties have agreed to discounts on the contract price of five percent (5%),

and have agreed to extend project completion milestones in the Dynegy ESA by six (6) months, which will result in a corresponding delay to the Utility's obligations to pay for the additional capacity by approximately six (6) months.

**BASIS FOR ASSUMPTION**

17.     I believe that the Utility's assumption of each of the EP Agreements, as amended, represents a valid exercise of the Utility's business judgment and will benefit the Utility's estate. Energy procurement is a critical aspect of the Utility's business operations.  The Utility is undertaking a careful and thorough review of its portfolio of EP Agreements and has determined that the terms of the EP Agreements, as amended, are reasonable under the circumstances and that maintaining the ongoing, mutually beneficial relationships with the EP Counterparties is in the best interests of the Utility and its estate.  Additionally, the EP Agreements ensure that the Utility continues to have sources of power generated by renewable energy and battery storage capacity, enabling the Utility to comply with the California Renewables Portfolio Standard Program, energy storage compliance requirements, and other related procurement requirements, as required by section 3292(b)(1)(D) of the California Public Utilities Code, as recently amended by Assembly Bill 1054.

18.     The Utility has negotiated considerable discounts to the contract prices under the EP Agreements.  In addition, the Utility has determined that the savings obtained through the discounted contract prices far outweigh the milestone extensions that the Utility is granting to the EP Counterparties under the EP Amendments.  Finally, as discussed above, the assumption of the EP Agreements will not result in any incremental costs to the Debtors' estates because no cure amounts are owed by the Utility to assume the EP Agreements.

19.     Accordingly, for the reasons set forth above and in the Motion, I believe that the assumption of the EP Agreements, as amended, is a valid exercise of the Utility's business judgment, is in the best interest of the Utility, its creditors and other parties in interest, and the relief sought in the Motion should be approved.

1   Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury, that the foregoing

2   is true and correct to the best of my knowledge, information, and belief, and that this declaration was

3   executed at San Francisco, California on        October 15, 2019.

Marino Monardi

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119