WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**DEBTORS' RESPONSE AND OBJECTION TO TCC'S APPLICATION TO EXPAND THE SCOPE OF BAKER & HOSTETLER LLP'S RETENTION**<br><br>[Relates to Dkt. Nos. 934 and 4018]<br><br>Date: October 22, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>   Courtroom 17, 16th Floor<br>   San Francisco, CA 94102 |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this response and objection (the "**Objection**") to the *Application of the Official Committee of Tort Claimants for Entry of an Order (i) Confirming the Scope of Employment of Baker & Hostetler LLP, or Alternatively (ii) Amending the Order Approving Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002, for an Order Authorizing Retention and Employment of Baker & Hostetler LLP, Effective as of February 15, 2019 (Doc. No. 1331)* [Dkt. No. 4018] (the "**TCC Application**").[1]

---

[1] Capitalized terms used but not herein defined shall have the meanings ascribed to such terms in the TCC Application.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Preliminary Statement**

Pursuant to the TCC Application, the Tort Claimant Committee (the "**TCC**") seeks authority to have its attorneys, Baker & Hostetler LLP ("**Baker**"), fully participate in the State Court Litigation relating to the Tubbs Fire, where it acknowledges that it is not a party. Moreover, the TCC seeks to have Baker "draft pleadings and memoranda in connection with the State Court Litigation, assist in discovery, and participate in the litigation, including paying costs associated with the State Court Litigation…[and] Baker anticipates that some of the pleadings and memoranda may be filed by the plaintiffs in the State Court Litigation." TCC Application ¶ 12. In addition, the TCC Application states that "there will be a number of expert witnesses that will be employed in connection with the State Court Litigation…[and] Baker intends to employ the experts required for the State Court Litigation…[and] expert costs will be reflected on Baker's invoices, fee statements and fee applications as a cost and paid as a pass through cost by Baker." Id. at ¶ 15. The TCC Motion goes on to state: "Some of the aforementioned expert witnesses have or will be retained by counsel for the State Court Litigation plaintiffs, but will be paid [by the Debtors' estates]." Id.

Accordingly, what the TCC Application asks this Court to approve is for the Debtors' estates and all other parties in interest to bankroll the costs that individual plaintiffs otherwise would incur in the State Court Litigation to prosecute their own claims against the Debtors. The TCC Application seeks to do this even while acknowledging that the TCC itself is not a party to the State Court Litigation and, accordingly, has no standing to participate. Because it is not a party, the TCC does not (and cannot) contend that Baker will perform services beyond those that are already being performed by numerous capable plaintiffs' lawyers whose clients *are* parties. Rather, the TCC apparently seeks to have Baker ghost-write pleadings to be "filed by the plaintiffs" who are already competently represented and thereby shift to the Debtors' estates costs that otherwise would be incurred by those plaintiffs in the prosecution of their own claims. The TCC proposes to carry out this cost-shifting, at the expense of the Debtors' estates, even for the costs of expert witnesses who *already* have been retained by those State Court plaintiffs. Notably, the TCC Application cites no authority for the extraordinary relief it is seeking because no such authority exists.

As noted in this Court's order modifying the stay with respect to the State Court Litigation, the automatic stay was modified solely as to the alleged Preference Plaintiffs listed on Schedules A and B to the order to "prosecute their claims…against the Debtors." Dkt No. 3644 at ¶ 1. The order did not authorize the TCC to participate in those preference trials, much less to front the costs of litigation of those trials and impose all of those costs on the Debtors' estates.

As this Court is well-aware, in circumstances where the automatic stay is modified to permit prepetition litigation to proceed, that litigation proceeds in the normal course, with the parties bearing their own costs. It is not an opportunity for those parties asserting claims against a debtor to impose their costs of litigation on the debtor's estate, nor should that be permitted.

Here, the TCC's motivation is clear. It seeks authority for its attorneys to effectively litigate the individual preference claims, draft pleadings and memoranda, and retain and pay experts in the place of the plaintiffs' attorneys, all to be funded by the Debtors' estates. This is completely unprecedented and inappropriate, and should not be countenanced by the Court.

## The TCC Application Should Be Denied

Pursuant to the TCC Application, the TCC seeks to expand the scope of Baker's previously approved retention beyond that permitted by the Bankruptcy Code so that the Debtors' estates – their other creditors and stakeholders – finance the cost of a small group of individual claimants litigating the allowance of their claims against the Debtors in a non-bankruptcy forum. Notably, the TCC is not even a party to the litigation and, of course, it does not and cannot represent the individual plaintiffs in the State Court Litigation.[2]

The powers and duties of an official committee appointed under the Bankruptcy Code are set forth in section 1103 of the Bankruptcy Code. An official committee may, among other things, *advise* their constituency of their determinations regarding a chapter 11 plan and perform other services that are in the interests of the *group* represented. 11 U.S.C. § 1103(c); *see also G-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.)*, Civ. No. 02-3626 (SRC), 2008 U.S.

---

[2] At no time when the stay relief was being considered by this Court did the TCC or any of the attorneys for the individual Preference Plaintiffs even suggest to the Court or any other party their intent to have the Debtors' estates fund even a portion of their litigation in state court.

Dist. LEXIS 43218, at *34 (D.N.J. May 30, 2008) (finding "the Committee is a creature of bankruptcy law; it is created solely for the purpose of facilitating the bankruptcy process. Such a committee exists to advise the creditors of their rights and the proper course of action in the Bankruptcy proceeding") (internal citations and quotation marks omitted). Notably, the only provision of the Bankruptcy Code that explicitly authorizes an official committee to participate in litigation is limited to bankruptcy proceedings. Section 1109(b) of the Bankruptcy Code provides, in relevant part, that "[a] party in interest, including… a creditors' committee… may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b); *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 79 n.4 (2d Cir. 2006) (stating that "the phrase 'in a case under this chapter' indicates that § 1109 applies only to bankruptcy proceedings") (internal citations omitted).

Neither the Bankruptcy Code nor applicable law, however, provides any authority for any official committee to litigate the individual claims of creditors within its constituency, let alone use the estate to fund the litigation of such claims in a non-bankruptcy forum. *See In re Cont'l Airlines, Inc.*, 57 B.R. 839, 841 (Bankr. S.D. Tex. 1985) (stating that is clear a debtor is not required to finance claims litigation against itself). Official committees in a bankruptcy case do not have the authority to act as agents or representative plaintiffs for the individual members of the constituency they represent. *See Shaw & Levin v. Gulf & W. Indus., Inc. (In re Bohack Corp.)*, 607 F.2d 258, 262 n.4 (2d Cir. 1979) ("although the creditors committee represents the interests of all creditors, its main function is to advise the creditors of their rights and the proper course of action in the Bankruptcy proceeding."); *see also G-I Holdings, Inc*, 2008 U.S. Dist. LEXIS 43218, at *34 (finding "the powers and duties set forth by § 1102 and § 1103 relate exclusively to proceedings in bankruptcy. For these reasons a committee should be limited to taking actions in connection with the bankruptcy case").

Here, the TCC Application states that the TCC has requested that "Baker draft pleadings and memoranda in connection with the State Court Litigation, assist in discovery, and participate in the litigation, including paying costs associated with the State Court Litigation" and furthers seeks authority for Baker to "employ the experts required for the State Court Litigation"

and to have those "expert costs…reflected on Baker's invoices, fee statements and fee applications as a cost and paid as a pass through cost by Baker." TCC Application at ¶¶ 12, 15. This requested expansion by the TCC is plainly designed to have the Debtors' estates rather than the attorneys representing the individual plaintiffs fund the lion's share of the costs of the State Court Litigation. Of course, the TCC Application cites no authority for the novel relief being requested, nor demonstrates any other cognizable reason why Baker should actively participate in the litigation being pursued by individual plaintiffs, much less have all of those costs borne by the Debtors' estates and other economic stakeholders.

To be clear, the Debtors do not object to the TCC monitoring the State Court Litigation. That, however, hardly equates to a roving mandate for Baker to be a primary litigant in non-bankruptcy tort litigation and a means to force the Debtors' other stakeholders to finance litigation on behalf of a small subset of individual, discrete claims against the Debtors being pursued in state court.

Further, by definition and by virtue of the stay relief afforded to the Preference Plaintiffs and not to other tort claimants asserting claims in connection with the wildfires, the Preference Plaintiffs occupy a position separate and distinct from other tort claimants represented by the TCC. Indeed, the Preference Plaintiffs are pursuing *individual* actions against the Debtors with respect to one fire, independent of other tort claimants. The interests of an individual Preference Plaintiff may run contrary to other litigants or the TCC's other constituents, creating an obvious conflict of interest for the TCC.

Courts have disqualified committee counsel for such conflicts and, in some circumstance, when there is even the appearance of a conflict. *See Adorno & Yoss LLP v. U.S. Tr. (In re 3DFX Interactive, Inc.)*, 2008 Bankr. LEXIS 4027, *12-14 (9th Cir. B.A.P. Feb. 6, 2008) (upholding the Bankruptcy Court's decision to disqualify committee counsel when counsel also represented an individual creditor in a matter that had the potential to impact recoveries to other creditors); *see also In re Electro-Optix, U.S.A., Inc.*, 130 B.R. 621, 622 (Bankr. S.D. Fla. 1991) (disqualifying committee counsel because it also represented the largest unsecured creditor in the bankruptcy which representation created "an appearance of impropriety"); *In re Oliver's Stores*,

79 B.R. 588, 590 (Bankr. D.N.J. 1987) (Because the court found it "very likely" that actual conflicts of interest between the creditors' committee and individual committee members could arise, it denied applicants' motion to represent individual creditors.).

In *In re Continental*, in denying an official committee's motion to represent individual claimants and to speak on behalf of those individuals in claims litigation, the Bankruptcy Court found that "it is clear that a debtor is not required to finance litigation against itself designed to maximize claims against the estate." *Cont'l Airlines, Inc.*, 57 B.R. at 841 (citing *Newman & Bisco v. Realty Assocs. Sec. Corp.*, 173 F.2d 609 (2d Cir. 1949); *In re New York, N.H. & H.R. Co.*, 46 F. Supp. 214 (D. Conn. 1942), *aff'd sub nom. Conn. Ry. and Lighting Co. v. Palmer*, 132 F.2d 670 (2d Cir. 1942)). In fact, unlike here where the TCC is seeking to have the Debtors finance litigation in a forum other than the Bankruptcy Court, that case involved claims litigation in the Bankruptcy Court, yet the court still found that allowing the "Committee and its counsel to serve in such a role expands the meaning and intent of the Bankruptcy Code in a manner for which it was neither intended, nor for which there is any clear case precedent to be found." *Id.*

Moreover, for Baker to participate in the litigation, draft pleadings for the plaintiffs, and employ the experts required for the State Court Litigation and have those expert costs paid as a pass through cost, undermines the longstanding bedrock principle known as the American Rule, which states "that the prevailing party may not recover attorneys' fees as costs or otherwise." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). Because the American Rule "has roots in our common law reaching back to at least the 18th century, [courts] will not deviate from the American Rule absent explicit statutory authority." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (internal citations and quotations omitted); *see also In re Dailey*, 289 B.R. 157, 159 (Bankr. D. Mont. 2003) (applying *Alyeska* and the American Rule in the 9th Circuit and stating that the "Supreme Court in *Alyeska* went to considerable lengths to trace the development of the 'American Rule'"); *In re LCO Enterprises, Inc.*, 180 B.R. 567, 569 (B.A.P. 9th Cir. 1995), *aff'd*, 105 F.3d 665 (9th Cir. 1997) (same). Long standing precedent and legal principles make it clear that a party cannot be forced to fund the costs of litigation against itself and neither specific and explicit statutory provisions nor the clear Congressional intent required to

circumvent the American Rule are present here. The fact that the TCC is an official committee does not at all compel a different result here.

## Conclusion

The Debtors and all of their other economic stakeholders should not be required to finance the costs of specific plaintiffs litigating the allowance of their claims against the Debtors in state court. The TCC Application should be denied.

Dated: October 15, 2019

                              **WEIL, GOTSHAL & MANGES LLP**

                              **KELLER & BENVENUTTI LLP**

                        /s/ *Stephen Karotkin*
                            Stephen Karotkin

*Attorneys for Debtors and Debtors in Possession*