Andrew I. Silfen (*pro hac vice*)
Beth M. Brownstein (*pro hac vice*)
**ARENT FOX LLP**
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: andrew.silfen@arentfox.com
        beth.brownstein@arentfox.com

Aram Ordubegian (SBN 185142)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA 94105
Telephone: (415) 757-5500
Facsimile: (415) 757-5501
Email: aram.ordubegian@arentfox.com

*Counsel for BOKF, NA, solely in its capacity as Indenture Trustee*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | Chapter 11 |
| - and – | (Lead Case) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | (Jointly Administered) |
| **Debtors.** | **OBJECTION OF BOKF, NA AS INDENTURE TRUSTEE TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH THE CONSENTING SUBROGATION CLAIMHOLDERS, (II) APPROVING THE TERMS OF THE SETTLEMENT WITH SUCH CONSENTING SUBROGATION CLAIMHOLDERS, INCLUDING THE ALLOWED SUBROGATION CLAIM AMOUNT, AND (III) GRANTING RELATED RELIEF** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☑ Affects both Debtors<br>* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |

AFDOCS/21099362.5

**Hearing**
Date: October 23, 2019
Time: 10:00 a.m. (Pacific time)
Place: Courtroom 17
    450 Golden Gate Ave, 16th Floor
    San Francisco, CA 94102

BOKF, NA ("BOKF"), in its capacity as successor indenture trustee (the "Trustee") under the Indentures dated as of (i) April 22, 2005 Supplementing, Amending and Restating the Indenture of Mortgage Dated March 11, 2004 (ii) November 29, 2017 and (iii) August 6, 2018, each as supplemented or amended, pursuant to which Pacific Gas and Electric Company issued the senior notes (the "Senior Notes"), by and through its counsel, Arent Fox LLP, hereby objects the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors to Enter Into Restructuring Support Agreement with the Consenting Subrogation Claimholders, (II) Approving the Terms of the Settlement with Such Consenting Subrogation Claimholders, including the Allowed Subrogation Claim Amount, and (III) Granting Related Relief* [Docket No. 3992] (the "Motion").[1] In support of its objection, BOKF states as follows:

## PRELIMINARY STATEMENT

By their Motion, the Debtors seek approval of a contract for *de facto* exclusivity of their Plan cloaked in the vernacular of a settlement agreement. The settlement, if approved as is, will disrupt the dual-plan process and undermine the decision of this Court in terminating exclusivity. Neither § 363(b) of the Bankruptcy Code nor Fed. R. Bankr. P. 9019 ("Rule 9019") permit the Debtors to contract around the Bankruptcy Code and this Court's Order by locking in votes against the alternative plan of the TCC and Ad Hoc Noteholder Group ("the "Alternative Plan").

The Court's Order terminating exclusivity envisioned that a "dual-track plan course going forward may facilitate negotiations for a global resolution and narrow the issues which are in legitimate dispute." *See* Doc. No. 4167, p. 3. The proposed Restructuring Support Agreement ("RSA") undermines that vision by, among other things, stifling negotiations, restricting and

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion.

dictating which constituencies may engage in discussions, and obstructing creditors from considering other options before disclosure statements have been approved. The RSA further gives Consenting Creditors undue leverage over the direction of these cases and contemplates a case altering administrative claim and an unresolved $20+ billion unsecured claim in the event the RSA is terminated for certain reasons. Unfortunately, as a result, the potential benefits from a fixed $11 billion Allowed Subrogation Claim Amount are outweighed by the adverse impact such extraneous RSA provisions would unquestionably have on a two-plan (or even a one plan) process. Unless such deficiencies are adequately addressed, the Motion should be denied.

## **OBJECTION**

### I. The RSA Lock-up Restrictions are Impermissible and Undermine Goals of a Two – Plan Process

The RSA prohibits Consenting Creditors from voting for any plan other than the Debtors' Plan and in fact, requires they vote against any alternative. RSA, § 2(a)(iii). Contrary to the Debtors' suggestion in their Motion, the Court did not approve a "similar" lock-up maneuver as part of a restructuring support agreement in the Utility's prior chapter 11 case. Although the Utility sought approval of such a restriction against support of competing plans, the provision drew multiple objections on grounds that it undermined the Court's termination of exclusivity and violated §§ 1121(c)-(d) and 1129(c) of the Bankruptcy Code. *See In re Pacific Gas and Electric Company*, No. 30923 (DM) (Bankr. N.D. Cal.) [Doc. Nos. 5341 and 5343]. In response, the debtors agreed to remove the restriction. *Id*. [Doc. No. 5549].[2] It was only then that the Court approved the pared down support agreement. *Id*. [Doc. No. 5558]. There is no basis for reviving that ill-conceived restriction here.

Pursuant to § 1121(c)-(d) of the Bankruptcy Code, parties in interest other than the Debtors are permitted to file a plan in the event the Debtors' exclusive period for doing so is terminated by operation of law or an order of the Court. In the event exclusivity is terminated and more than one plan meets the requirements for confirmation, the "court shall consider the

---

[2] In their Motion, the Debtors misleadingly cite only to their motion and the Court's Order, foregoing any mention or citation to the docket entry containing the modifications to the plan support agreement ultimately approved.

- 3 -

AFDOCS/21099362.5

preferences of creditors and equity security holders in determining which plan to confirm." 11 U.S.C. § 1129(c). Here, the Court determined that it was appropriate to terminate exclusivity so the TCC and the Ad Hoc Noteholder Group could present their Alternative Plan for consideration by all stakeholders. *See* Doc. Nos. 4167-4168. Allowing the Debtors to consummate the RSA, as presently structured, would directly undermine the Court's Orders and the Bankruptcy Code's mechanisms for consideration of multiples plans.

To be clear: BOKF does not oppose in principle the ability of parties-in-interest to negotiate and build consensus around a plan. But the RSA does much more than that and, indeed, to the opposite effect. Most notably, the RSA *requires* Consenting Creditors to vote against any plan or restructuring proposal other than the Debtors' Plan. RSA, § 2(a)(iii). Moreover, the RSA prohibits Consenting Creditors from even "participat[ing] in the formulation of . . . any Alternative Restructuring or settlement of the Subrogation Claims other than as set forth in the RSA." RSA, § 2(b)(ii). In other words, the RSA indirectly precludes the TCC and Ad Hoc Noteholder Group from engaging in precisely the type of negotiations contemplated by the Orders terminating exclusivity.

## II. The RSA Restrictions Will Obstruct Negotiations and Impede Progress

The RSA also places inappropriate restrictions on the Debtors' ability to negotiate with other creditors and surrenders to the Consenting Creditors an inordinate degree of control over the trajectory these chapter 11 cases. For example, the RSA precludes the Debtors from negotiating priority treatment with other creditors, RSA, § 3(b)(iii); and specifically restricts the Debtors' ability to negotiate with wildfire victims by requiring them to release all claims against present and past Subrogation Claim holders. RSA, §§ 3(a)(iii), (b)(iii). *See generally In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995) ("Sec. 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors").

Even more troubling, perhaps, is that Consenting Creditors are being granted the sole discretion to terminate the RSA if the Debtors turn out to be insolvent. Accordingly, a situation may arise where an insolvent estate will be required to pay an outsized dividend to the Consenting Creditors, thereby lowering the payment to other unsecured creditors (including tort
Arent Fox LLP
Attorneys At Law
Los Angeles

- 4 -

victims) who would otherwise be entitled to the same priority and pro rata distribution. That is unacceptable under any standard. *See In re Miami Metals I, Inc.*, 603 B.R. 531, 537 (Bankr. S.D.N.Y. 2019) (denying approval of plan support agreement under Rule 9019 where participating lenders would have reaped full benefit of settlement regardless of whether plan was confirmed); *In re Braniff Airways, Inc.*, 700 F.3d 935, 939-940 (5th Cir. 1983) (plan support agreement that dictated votes and terms of plan not authorized by § 363(b)).

Conversely, if the Debtors turn out to be solvent but are nonetheless unable to confirm their Plan, there is no requirement that the Consenting Creditors accept neutral treatment under the Alternative Plan. Rather, the Debtors will only be bound by the $11 billion Allowed Subrogation Claim Amount if an Automatic Termination occurs. Thus, for example, if the Court confirms the Alternative Plan (an optional Termination event), the Consenting Creditors will be able to consensually terminate the RSA and assert a $20+ billion claim. And because the Debtors and Consenting Creditors propose to abandon the claim estimation process upon consummation of the RSA, a situation may arise where the parties are forced to resurrect that process in the Summer of 2020 and substantially delay the Debtors' emergence from chapter 11.

All of this is to say that the RSA is not in best interests of the estate or creditors as a whole. *See In re MGS Marketing*, 111 B.R. 264, 267 (B.A.P. 9th Cir. 1990) (compromises under Rule 9019 must be in the best interest of the estate and fair and equitable to creditors). *See also In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ("requirements of section 363(b) protect the creditors' interest in the assets of the estate"). The RSA obstructs the dual-course plan process, restricts the ability of all plan proponents to negotiate with creditors and reach consensus, empowers a select subset of creditors at the expense of all others, creates unnecessary obstacles to confirmation and effectively re-writes § 1129(c) out of the Bankruptcy Code. Although the Debtors may negotiate support for their own plan, they may not use a settlement to contract around this Court's Orders and impair the rights of the others under the Bankruptcy Code. *See, e.g., In re TCI 2 Holdings LLC*, 428 B.R. 117, 137 (Bankr. N.J. 2010) (debtor may not use settlement to perform end-run around Bankruptcy Code). If the Debtors are permitted to do so in this instance, the solicitation process will inevitably devolve into each plan

proponent locking in votes against competing plans, such that no plan will be able to satisfy the requirements of confirmation. Such an outcome benefits no one.

**III.    The RSA Violates the Solicitation Rules**

The Debtors also appear to be in violation of § 1125(b) of the Bankruptcy Code, which provides that an "acceptance or rejection of a plan may not be solicited after the commencement of the case under this title . . . unless, at the time of or before such solicitation, there is transmitted . . . a written disclosure statement, approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b) (emphasis supplied). Notwithstanding the stock language in the RSA premising acceptance votes on future solicitation, the Debtors plainly did solicit the Consenting Creditors' votes without an approved disclosure statement. This is quite a different posture than the approved support agreement in the Utility's prior chapter 11 case, which was a settlement of the creditors' objection to the disclosure statement. Here, the Debtors' have not sought approval of a disclosure statement. Moreover, the RSA does not similarly premise Consenting Creditors' mandatory votes to reject the Alternative Plan on approval of a disclosure statement and solicitation. Thus, at a minimum, the Debtors improperly solicited rejection votes. *See In re California Fidelity, Inc.*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996) ("Duff violated § 1125(b) by soliciting votes to reject the joint plan before a disclosure statement had been approved"). Such violations and behavior should not be countenanced by this Court.

**CONCLUSION**

In sum, approval of the Motion would contravene and undermine all that this Court set in motion at the last hearing, would be disruptive, and would be a major step backwards in these proceedings. This Court should not approve the settlement unless the improper, impermissible, and harmful provisions are removed, including but not limited to: (a) the prohibition against the Consenting Creditors voting in favor of any plan other than the Debtors' Plan; (b) the requirement that the Consenting Creditors support, vote for, and not impede the Debtors' Plan; (c) the required payment of the Consenting Creditors' professional fees prior to confirmation and outside of a confirmed plan; (d) the prohibition against the Debtors granting priority to any other

- 6 -

unsecured creditors above that granted to the Subrogation Claim holders; and (e) the requirement that the Consenting Creditors vote against and not support any plan other than the Debtors' plan.

For the foregoing reasons, BOKF objects to the Motion and respectfully requests that unless the issues set forth herein are adequately addressed and the impermissible provisions are removed, the Court should enter an order denying approval of the RSA without prejudice.

Dated: October 16, 2019          **ARENT FOX LLP**

By: */s/ Aram Ordubegian*
Aram Ordubegian (SBN 185142)
Andrew I. Silfen (*pro hac vice*)
Beth M. Brownstein (*pro hac vice*)

*Counsel for BOKF, NA, solely in its capacity as Indenture Trustee*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES