| | |
|---|---|
| 1 | UNITED STATES DEPARTMENT OF JUSTICE |
| | CIVIL DIVISION |
| 2 | JOSEPH H. HUNT |
| | Assistant Attorney General |
| 3 | RUTH A. HARVEY |
| | Director |
| 4 | KIRK MANHARDT |
| | Deputy Director |
| 5 | MATTHEW J. TROY (GABN 717258) |
| | Senior Trial Counsel |
| 6 | P.O. Box 875 |
| | Ben Franklin Station |
| 7 | Washington, DC 20044-0875 |
| | Telephone: (202) 514-9038 |
| 8 | E-mail: matthew.troy@usdoj.gov |
| 9 | DAVID L. ANDERSON (CABN 149604) |
| | United States Attorney |
| 10 | ROBIN M. WALL (CABN 235690) |
| | Assistant United States Attorney |
| 11 | |
| | Attorneys for the United States of America |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Bankruptcy Case |
| **PG&E CORPORATION** | ) No. 19-30088 (DM) |
| | ) |
| - and - | ) Chapter 11 |
| | ) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | ) (Lead Case) |
| | ) |
| | ) (Jointly Administered) |
| **Debtors.** | ) |
| | ) Date: October 23, 2019 |
| | ) Time: 10:00 a.m. |
| | ) Place: United States Bankruptcy Court |
| ☐ Affects PG&E Corporation | ) 450 Golden Gate Avenue |
| ☐ Affects Pacific Gas and Electric Company | ) Courtroom 17 |
| ■ Affects both Debtors | ) San Francisco, CA 94102 |
| | ) Judge: Hon. Dennis Montali |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | ) RE: Docket No. 3992 |
| | ) |

**OBJECTION OF THE UNITED STATES OF AMERICA TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 6004 AND 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO RESTRUCTURING SUPPORT AGREEMENT WITH THE CONSENTING SUBROGATION CLAIMHOLDERS, (II) APPROVING THE TERMS OF SETTLEMENT WITH SUCH CONSENTING SUBROGATION CLAIMHOLDERS,**

**INCLUDING THE ALLOWED SUBROGATION CLAIM AMOUNT,
AND (III) GRANTING RELATED RELIEF**

The United States of America, on behalf of various federal agencies, hereby objects to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors to Enter into Restructuring Support Agreement with the Consenting Subrogation Claimholders, (II) Approving the Terms of Settlement with Such Consenting Subrogation Claimholders, Including the Allowed Subrogation Claim Amount and (III) Granting Related Relief* (the "Motion").[1]

**Preliminary Statement**

In seeking approval for the single largest claims settlement to date in these cases constituting a "pivotal development and accomplishment," *Motion* at 8, the Motion uses an impenetrable array of defined terms cross-referenced and incorporated over four different documents – the Motion, the Plan, the RSA, and the Settlement Term Sheet – making it nearly impossible to discern precisely what relief the Debtors are asking from the Court. The lack of clarity alone justifies denying the Motion. Notwithstanding this, however, certain key elements of the settlement stand out as objectionable and impermissible under the Bankruptcy Code. Therefore, the proposed settlement falls below the lowest point of the range of reasonableness under Bankruptcy Rule 9019, and the Court should deny the Motion.

**The Court Should Deny the Motion**

**I.     The RSA Releases Claims Not Held by the Subrogation Claim Holders**

The Settlement Term Sheet, which is itself an exhibit to Exhibit A (the RSA) to the Motion, states that the settlement "will resolve **all** claims against the Debtors (as such term is defined in the section 101(5) of the Bankruptcy Code) **related to or in any way arising from the wildfires** set forth on Schedule 1 that occurred in Northern California in 2017 and 2018 that arose from **subrogation**

---

[1] Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion and accompanying exhibits.

**(whether such subrogation is contractual, equitable or statutory), assignment (whether such assignment is contractual, equitable or statutory), or otherwise** in connection with payments made or to be made by the applicable insurer to insured tort victims." *Motion*, Ex. A at Ex A. at 1 (emphasis added). This definition of "Subrogation Claims" from the Settlement Term Sheet is then incorporated into the RSA, *Motion*, Ex. A at 5, and forms the crux of the RSA – an agreement to settle the Subrogation Claims for an aggregate allowed claim of $11 billion, *id.*, Ex. A at 11. The definition of the Subrogation Claims is, however, broad enough to encompass all possible subrogation claims regardless of who holds them or whether those claims are in connection with payments made by insurers to insured tort victims. In other words, the Consenting Creditors, who are the signatories to the RSA, *id.* at Ex. A at 1, are purporting to settle claims that they do not hold and do not have the authority to settle.

The United States informally raised this objection with counsel for the Debtors and believes that the Debtors are amenable to inserting language in an approval order that the definition of Subrogation Claims does not include the claims of any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) and that any such claims are not subject to compromise under the Subrogation Claims Settlement or RSA. To date, however, the United States has not seen a proposed order containing such language and therefore, reserves its right to press this objection at the hearing on the Motion.

**II. The RSA Requires the Debtors to Obtain Impermissible Third-Party Releases**

Section 3(a)(iii) of the RSA, *Motion*, Ex. A at 8, requires Debtors "upon entry into any settlement with any holder or holders of **IP Claims** that fixes the amount or terms for satisfaction of an IP Claim . . . [to have] the holder of the IP Claim contemporaneously execute and deliver a release and waive **any and all claims** to the fullest extent permitted by law **against all parties in interest in the Chapter 11 Cases**." (emphasis added). The RSA defines IP Claims as "any Wildfire Claims that is

not a [settling] Public Entities Wildfire Claim or Subrogation Claim," *id*., Ex. A at 4, which is the same definition for "Other Wildfire Claim" under the Plan begging the question of why the RSA had to use a different defined term for the same thing.

As the Court noted at a previous hearing, the claims of the governmental entities arising from the Wildfires, like those of the United States, are Other Wildfire Claims under the Plan falling into Class 5B-III, Utility Other Wildfire Claims. Thus, RSA section 3(a)(iii) requires the United States, if it reaches a settlement with Debtors regarding the United States' claims arising from the Wildfires, to provide the broadest possible release ("any and all claims") to the broadest possible group ("all parties in interest") if the United States wants to be paid under the settlement. The RSA then bakes this Settlement Payment Condition into the Debtors' Plan. *Id*., Ex. A at 9 (section 3(a)(v)). If the United States or any other holder of an IP Claim does not provide such a release, the Debtors cannot settle without breaching the RSA. This key element of the RSA significantly distinguishes it from the settlement and plan support agreement this Court approved in the Utility's prior bankruptcy and upon which the Motion heavily relies to justify approval of the RSA. *Motion* at 20-21.

In essence, under the guise of a settlement subject to Bankruptcy Rule 9019, the RSA imposes a third party release that Ninth Circuit authority bars. *Resorts Int'l, Inc. v. Lowenschuss* (*In re Lowenschuss*), 67 F.3d 1394 (9th Cir. 1995). Such an impermissible limitation on the Debtors' ability to consensually negotiate and resolve claims as part of its reorganization, a fundamental goal and hallmark of chapter 11 reorganization, causes the RSA to fall below even the lowest range of reasonableness as applied under Bankruptcy Rule 9019. *Martin v. Kane* (*In re A & C Properties*), 784 F.2d 1377 (9th Cir. 1986). Specifically, the RSA is neither reasonable nor fair and equitable because instead of preserving the rights of non-parties to the RSA, it prejudices them with the imposition of an otherwise impermissible release. The RSA's third party release requirement also contradicts the Plan, which contains (1) an opt-out option from third party releases, *Plan* at § 1.159(d) (definition of

Releasing Parties) and (2) a purported carve out for governmental units from third party releases, among other things, *id*. at 10.13 ("Special Provisions for Governmental Units"). Accordingly, the Court should deny the Motion.

### III. The RSA Violates Sections 1121 and 1125

The Court just terminated the Debtors' exclusivity under section 1121 as to the TCC. Docket No. 4167. Now, Debtors seek approval of the RSA to (1) lock-up the votes of the holders of the Subrogation Claims in favor of the Plan and against the TCC/BH Plan or any other plan and (2) prevent the holder of those claims from negotiating with the TCC and bondholders or anyone else regarding alternative plans. *Motion*, Ex A. at 7. Under similar circumstances in the Utility's prior bankruptcy, such provisions in the Utility's plan support agreement drew strong objections as being violations of sections 1121 and 1125. *See, e.g.*, *In re Pacific Gas and Electric* Company, Case No. 01-30923 (Bankr. N.D. Cal. March 21, 2002) [Docket No. 5341] (objection of California Public Utilities Commission). Indeed, the Court approved an *amended* plan and support agreement, *id*. [Docket No. 5558], that deleted the voting restrictions with respect to other plans, allowed the settling creditors to negotiate and consider other plans, and deleted the requirement that the settling creditors fully support the Utility's plan, *id*. [Docket No. 5549] (summary of modifications to settlement and support agreement). This Court should treat the RSA no differently and deny the Motion for seeking approval of an agreement that violates sections 1121 and 1125.

### CONCLUSION

For all of the foregoing reasons, the Court should deny the Motion and not approve the RSA.

Date: October 16, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
DAVID L. ANDERSON (CABN 149604)
United States Attorney
ROBIN M. WALL (CABN 235690)
Assistant United States Attorney

/s/ Matthew J. Troy
RUTH A. HARVEY
Director
KIRK MANHARDT
Deputy Director
MATTHEW J. TROY
Senior Trial Counsel
Attorneys for United States

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2019, I electronically filed the foregoing Objection with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ Matthew J. Troy
Matthew J. Troy
Senior Trial Counsel
Attorney for United States