Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.442.8800
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

Elizabeth A. Green (*pro hac vice*)
BAKER & HOSTETLER LLP
200 S. Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone:    407.649.4036
Email: egreen@bakerlaw.com

Elyssa S. Kates (*pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone:    212.589.4200
Email: ekates@bakerlaw.com

*Counsel for Official Committee of Tort Claimants*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION** <br><br>    -and- <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br>                     Debtors. <br><br> ☐  Affects PG&E Corporation <br><br> ☐  Affects Pacific Gas and Electric Company <br><br> ■  Affects both Debtors <br><br> *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **REPLY IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR ENTRY OF AN ORDER (I) CONFIRMING THE SCOPE OF EMPLOYMENT OF BAKER & HOSTETLER LLP, OR ALTERNATIVELY (II) AMENDING THE ORDER APPROVING APPLICATION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO 11 U.S.C. § 1103 AND FED. R. BANKR. P. 2014 AND 5002, FOR AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF BAKER & HOSTETLER LLP, EFFECTIVE AS OF FEBRUARY 15,** |

**2019 (THE "RETENTION ORDER") (RELATED DKT. NOS. 1331, 4018 & 4210)**

Date: October 22, 2019
Time: 10:00 a.m. (Pacific Time)
Place: United States Bankruptcy Court
Courtroom 17, 16th Floor
San Francisco, CA 94102
**Objections Due: October 15, 2019**
4:00 p.m. (Pacific Time)

The Official Committee of Tort Claimants (the "**TCC**")[1] of PG&E Corporation and Pacific Gas and Electric Company (the "**Debtors**") for its reply (the "**Reply**")[2] in support of its Application of the Official Committee of Tort Claimants for Entry of an Order (I) Confirming the Scope of Employment of Baker & Hostetler LLP, or Alternatively (II) Amending the Order Approving Application of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2014 and 5002, for an Order Authorizing Retention and Employment of Baker & Hostetler LLP Effective as of February 15, 2019 (the "**Application**") (Dkt. No. 4018), and in response to the Debtors' Response and Objection to TCC's Application to Expand the Scope of Baker & Hostetler LLP's Retention (the "**Objection**") (Dkt. No. 4210), respectfully states as follows:

1. In the Objection, the Debtors oppose the entry of an order confirming the scope of Baker & Hostetler LLP's ("Baker") employment or alternatively, expanding the scope of that employment to include representation of the TCC in connection with the California North Bay Fire Cases, JCCP 4955 (the "State Court Litigation"). The Debtors' opposition is based on a mistaken supposition that Baker will be litigating individual claims rather than representing the interests of the TCC in a manner consistent with the TCC's duties under section 1103(c) of the Bankruptcy Code. The Debtors also object due to the forum of the State Court Litigation. However, as set forth in the Application, and as fully explained below, the representation and services Baker has provided the TCC since the order lifting the stay, and seeks confirmation that it can continue to

---

[1] Capitalized terms used but not defined in this Reply shall have the meanings ascribed to such terms in the Application.
[2] In the Application, the TCC reserved the right to file a brief and memorandum of law in response to any objection to this Application. Application at 24. This Reply is filed in accordance therewith.

1

provide to the TCC benefit the TCC and tort claimants as a whole. Baker has not, does not, and will not represent any individual creditor's interest in the State Court Litigation. The Debtors' Objection is wholly without merit and must be overruled.

**A.     The Debtors' Objection Contradicts the Debtors' Prior Position and is Contrary to the Court's Rulings**

1.     The Debtors' disingenuous attempt to sever and divorce the State Court Litigation, which addresses the Tubbs Fire, from the estimation proceedings and plan process is contrary to this Court's rulings and statements from the bench. On August 14, 2019, while hearing argument about whether the estimation proceedings and Tubbs Fire liability proceedings could occur simultaneously, the Court noted the parties' longstanding agreement that the proceedings were critically linked. (The Court: "how many times have we agreed? They're all part of the same inquiry.") (Hr'g. Tr. 116-117:23-1, Aug. 14, 2019). Similarly, the Debtors' prior representations to the Court recognize the Tubbs Fire litigation is integral to the bankruptcy cases. On October 7, 2019, during the hearing on the Fee Examiner's Motion to Approve Fee Procedures (Dkt. No. 3950), the Court asked Paul Zumbro, an attorney for the Debtors, "whether it's your firm, or the Weil firm or any other firm, all the professional time being spent either in Tubbs Fire litigation or in Judge Donato's court or in this court or in the FERC litigation or in the CPUC, OAI, its all being billed through the bankruptcy court, right?" (Hr'g. Tr. 21:3-9, Oct. 7, 2019). Mr. Zumbro replied "[T]hat's correct, sir." (Hr'g. Tr. 21:10, Oct. 7, 2019).

2.     In addition to the statements made during hearings, the Estimation Hearings Order provides in part that the orders granting the "Amended Motion for Relief from Stay (Dkt. 2904) and the Ad Hoc Group of Subrogation Claim Holders' Motion for Relief from Stay (Dkt. 2863) certainly moot for the most part one significant aspect of the suggested timetable in the Estimation Motion, namely Phase 2 and the Tubbs Fire." *Id.* at p. 2. The Court also stated that it "envisions two tracks to tracks to confirmation, [including] one which deals with the determination of the amount of any trust (e.g., inverse condemnation ruling; Tubbs fire results; final estimation under 11 U.S.C. § 502(c) etc.)." *Id.* at p. 4. The Estimation Hearings Order also stated that the Court

2

wanted to hear from counsel, including Tubbs Fire litigation counsel, regarding coordination of scheduling for the estimation proceedings and Tubbs Fire trial. *Id.* at p. 4.

3. Finally, in the Debtors' Objection to the Amended Motion of the Official Committee of Tort Claimants for Relief from Automatic Stay to Permit State Court Jury Trial of 2017 Tubbs Wildfire Claims and the Motion of the Ad Hoc Group of Subrogation Claim Holders for Relief from the Automatic Stay (Dkt. No. 3104), the Debtors stated in part that:

> The Debtors, of course, agree with a simple point: there is no single issue that is more central to the resolution of these cases and the Debtors' ability to emerge by June 30, 2020, than estimating the potential liability the Debtors might have for the thousands of unliquidated Tubbs Fire claims. Where the Debtors cannot agree with the TCC and the Subro Group is with respect to their suggestion that this Court should send this 'gating issue,' which is critical to the ability of all stakeholders to 'negotiate and confirm' a plan of reorganization, back to the prepetition landscape of state court litigation, thereby relegating this Court to the status of a mere spectator to the central issue in these Chapter 11 cases."

*Id.* at p. 7.

4. Notwithstanding this Court's rulings, the parties' prior agreement, and the Debtors' representations to the Court, the Debtors now attempt to recharacterize the TCC's role from representing the interests of all tort claimants to representing the interests of individual claimants. (*See*, Objection at p. 5). The Debtors' efforts are inappropriate and the Objection must be overruled. Pursuant to section 1103(c) of the Bankruptcy Code, the TCC is able, among other things, to "participate in the formulation of a plan *** [and] perform such other services as are in the interest of those represented." 11 U.S.C. § 1103(a)(3) & (5). The proceedings in the State Court Litigation are crucial to the formulation of a plan, and the TCC needs its own legal counsel to advise the TCC in this matter. Depriving the TCC of the full ability to protect its interests, and the interests of tort claimants as a whole, in a proceeding that is central to estimation, plan confirmation and recovery, would place the TCC and tort claimants at a disadvantage.

5. Baker's services in connection with the Tubbs Fire and State Court Litigation are entirely consistent with the TCC's fiduciary obligations. Baker was retained to represent the TCC in estimation proceedings and plan confirmation proceedings, and pursuant to the Retention Order and Retention Application, Baker is permitted to represent the TCC in hearings or proceedings

3

before tribunals and courts other than this Court. The scope of Baker's employment also permits it to assist the TCC by preparing pleadings and applications and pursuing or participating in contested matters in furtherance of the TCC's interests.[3] As stated in the Application, Baker's role in the State Court Litigation is limited to those activities which are "necessary to protect the TCC and all Tubbs fire victims' interests" (Application at p. 5). The Debtors' selective quoting of the Application does not change this limit (*See*, Objection at p. 5). Thus, this Application is not about permitting Baker to represent the interests of individual litigants, nor is it about fee shifting (*See*, Objection at p. 3). Indeed, 11 U.S.C. § 1103(a) authorizes a committee to select "one or more attorneys, accountants, or other agents, to represent or perform services for such committee."

### B. There is No Conflict or Potential Conflict of Interest

1. The Debtors attempt to manufacture an imaginary conflict of interest between the TCC and its constituents, on one hand, and the plaintiffs in the State Court Litigation (the "**Plaintiffs**"), on the other.[4] The Court should not countenance the Debtors' attempt at fiction. The TCC has a fiduciary duty to represent the interests of <u>all</u> tort claimants, including those impacted by the Tubbs Fire. These interests are implicated in the State Court Litigation, which will involve, among other things, a determination as to whether the Debtors are liable for the Tubbs Fire. The discovery, motions, trial and other proceedings in the State Court Litigation will involve matters that impact, and significantly overlap with, the estimation proceedings critical to plan formulation and ultimate recovery by the tort claimants. The Plaintiffs' attorneys' obligations are to represent the Plaintiffs and only the Plaintiffs; they cannot speak for the TCC nor can they speak for the entire TCC constituency Baker represents. If anything, the possibility raised by the Debtors that "[t]he interests of an individual Preference Plaintiff may run contrary to other litigants or the TCC's other constituents…" (Response at p. 6) underscores exactly why the TCC must be involved in the State Court Litigation and must also have its own separate representation. Accordingly, the TCC is obligated to and is entitled to fully participate in the State Court Litigation as necessary to protect

---

[3] As stated in the Application, given the wide scope of Baker's retention, Baker believes that it may currently represent the TCC in the State Court Litigation. Nevertheless, due to the unusual procedural posture of these cases, the TCC filed the Application out of an abundance of caution.

[4] One of the Plaintiffs is Greg Wilson, a member of the TCC.

4

the interests of all tort claimants, including the right to pay experts to testify as to the liability for the Tubbs Fire (many of whom will also testify in the estimation proceedings), in order to fulfill the TCC's fiduciary obligation.

2. The cases cited by the Debtors generally hold that a committee cannot represent an individual creditor whose interest conflicts with the interests of a committee's constituents. Of course, this is not remotely what counsel to the TCC is or has been doing in the State Court Litigation since the stay was lifted by this Court. As such, the cases cited by the Debtors are distinguishable. *See, e.g., Adorno & Yoss LLP v. U.S. Tr. (In re 3DFX Interactive, Inc.)*, 2008 Bankr. WL 8448326, *5 (9th Cir. B.A.P. Feb. 6, 2008). The TCC and Baker are continuing to do what they have done since the early days of these cases – they are protecting the interests of all tort claimants.

WHEREFORE, for the reasons stated in the Application, the TCC respectfully requests that this Court overrule the Objection and enter an order, in the form attached to the Application as Exhibit A, (a) authorizing Baker to provide services to the TCC in connection with the State Court Litigation; and (b) granting such other and further relief as is just and proper.

Dated: October 18, 2019　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　BAKER & HOSTETLER LLP

　　　　　　　　　　　　　　　　By:*/s/ Elizabeth A. Green*
　　　　　　　　　　　　　　　　*Counsel for the Official Committee of Tort Claimants*