Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:     310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.442.8800
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for Official
Committee of Tort Claimants*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>        **Debtors.**<br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF ROGER K. PITMAN, M.D.** |

I, Roger K. Pitman, M.D., declare and state as follows:

1. I am a psychiatrist with over 50 years of experience practicing medicine. I have spent my career diagnosing, treating, and researching Post Traumatic Stress Disorder ("PTSD") and other stress- and trauma-related mental disorders. I am the Director of the PTSD Research Laboratory at the Massachusetts General Hospital, which performs psychobiological research into the assessment, pathophysiology, prevention, and treatment of PTSD. I am also a Professor of Psychiatry at the Harvard Medical School, where I supervise medical students, psychiatric residents, psychology trainees, and junior faculty. I am certified by the American Board of Psychiatry and Neurology in the Specialty of Psychiatry and the Subspecialty of Forensic Psychiatry. My qualifications and background are explained further in my prior declaration submitted to the Court on August 7, 2019 ("August 7 Declaration").

2. As summarized in the August 7 Declaration, I have reviewed accounts of the fires and wildfires that destroyed areas of Northern California which are at issue in this matter, specifically, the fire referred to as the "Camp Fire" in November 2018 and the fires referred to as the "North Bay Fires" in 2017 ( collectively referred to as the "Fires"). I have reviewed coverage of the Fires from major newspapers and media outlets, I have reviewed narratives describing events that occurred during the Fires, and I have also watched videos of claimants escaping. I understand that many of these claimants physically encountered the Fires, had seconds to flee impending flames, were stuck in traffic with family members (some of whom were children or elderly) while they attempted to flee, and watched loved ones and others suffer or die from the Fires.

3. Through these accounts and others, I understand that many claimants experienced and/or witnessed a significant level of traumatic exposure, in which they either suffered or feared suffering burns on their body and/or believed they or family members would die or suffer serious physical injury as a result of the Fires. Specific examples of these accounts are summarized in my August 7 Declaration.

4. Based on my understanding of the conditions to which many of the claimants were exposed, it is my opinion, as explained in my August 7 Declaration, that a substantial

-2-

portion of the claimants already have developed, or will develop, PTSD. Claimants who do not meet the full diagnostic criteria for PTSD, may have already developed, or will develop, (a) "partial PTSD," "subsyndromal PTSD," or "subthreshold PTSD"; and/or (b) a DSM-5 Adjustment Disorder or other mental disorder, such as Major Depressive Disorder ("MOD"), or Anxiety Disorder. Persons in any of these latter groups often suffer from clinically significant distress and/or functional impairment and may also show some of the same physical manifestations as PTSD, which are described in more detail in my August 7 Declaration.

5. Counsel for the Official Committee of Tort Claimants ("TCC") have now asked me to consider whether the occurrence of PTSD and/or other trauma- and stress-related mental disorders among claimants could interfere with their ability to submit their proof of claim ("POC") by the current October 21, 2019 deadline.

6. I have reviewed a copy of the POC. It is my professional opinion that PTSD and/or other trauma- and stress-related mental disorders, which cause clinically significant distress and/or functional impairment, would interfere with many claimants' ability to review, complete, and submit the POC by the October 21 deadline. Extending this deadline would provide additional time for claimants to become educated regarding the nature of the mental disorders they may be suffering from. Extending the deadline would also allow more time for claimants to seek professional diagnostic opinions and treatment. This would put them in a position to complete their POCs more accurately.

7. PTSD is an underrecognized condition. Many victims of psychological trauma who would qualify for this diagnosis do not step forward for recognition, diagnosis, and treatment, for at least two reasons.

8. First, a feature of PTSD is "Avoidance of ... reminders ... that arouse distressing memories, thoughts, or feelings about ... the traumatic event."[1,271] Because it is painful to remember, many PTSD sufferers will go out of their way not to think about it. They may not discuss it with others. They may switch the channel when they start to see or read news about it. Because of this avoidance, many victims of the fires may not even have become aware of the

-3-

opportunity to file a claim. Alternately, the prospect of having to do so, and set down in writing what happened to them, may be so anxiety-provoking that they can't get themselves do it alone.

9. Second, some victims do not make the connection between the emotional problems they are experiencing and the traumatic event.[2] Some do not understand that their problems constitute symptoms and signs of a mental disorder. Some believe that PTSD only happens in combat veterans, so it can't apply to them. Some fear the humiliation and stigmatization that may result from being labelled mentally ill. Some are simply in denial.

10. It is also officially recognized that "there may be a delay of months, or even years, before the criteria for the [PTSD] diagnosis are met."[1,p.276] This has led to the inclusion of the subtype, "With delayed expression" in the DSM-5 PTSD criteria.[1,p.274]

11. In light of the above, it is not surprising that psychiatric epidemiologic surveys have found that the majority of persons with PTSD in the community go untreated and unidentified by any service or professional organization. Racial and ethnic minorities are less likely to be identified than whites.[3] Even among persons with PTSD in the past 12 months, only about half seek help.[4] These data underscore the need for outreach efforts.

12. The POC requires claimants to provide information about their experiences with the Fires, including remembering their evacuation, describing the harms to themselves and their family members, and itemizing the damages they are claiming for each of the types of harms sustained by themselves and family members. The POC also requests that claimants gather and provide documentation regarding their harms, damages, and claims. As explained above, the avoidance reminder feature of PTSD could make many claimants avoid recounting their experiences, as is necessary to complete the POC. Also, claimants who have not been diagnosed or whose expression has not yet been manifested, such as victims of the Camp fire less than a year ago, may not yet recognize their impairment.

13. In light of the above factors that militate against PTSD patients coming forward for diagnosis and treatment, PTSD and other trauma- and stress-related mental disorders among many claimants may be expected to interfere with their ability to complete the POC by the

- 4 -

October 21 deadline. Time beyond the deadline is necessary for further diagnosing and treating these disorders and educating claimants.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 17th day of October in Charlestown Massachusetts.

_____
Roger K. Pitman, M.D.

References

1. American Psychiatric Association. *Diagnostic and Statistical Manual of Mental Disorders*. Washington, D.C., 2013.

2. Grinage BD. Diagnosis and management of post-traumatic stress disorder. *Amerian Family Physician* 2003;68:2401-2408.

3. Roberts AL, Gilman SE, Breslau J, Breslau N, Koenen KC. Race/ethnic differences in exposure to traumatic events, development of post-traumatic stress disorder, and treatment-seeking for post-traumatic stress disorder in the United States. *Psychological Medicine* 2011;41:71-83.

4. Koenen KC, Ratanatharathorn A, Ng L, et al. Posttraumatic stress disorder in the World Mental Health Surveys. *Psychological Medicine* 2017;47:2260-2274.