Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>     -and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>               **Debtors.**<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11 (Lead Case)<br>(Jointly Administered)<br><br>**REDACTED DECLARATION OF JAMES DRINKHALL**<br><br>Date:     November 13, 2019<br>Time:    10:00 a.m. (Pacific Time)<br>Place:    United States Bankruptcy Court<br>             Courtroom 17, 16th Floor<br>             San Francisco, CA 94102 |

# REDACTED DECLARATION OF JAMES DRINKHALL

I, James Drinkhall, pursuant to 28 U.S.C. § 1746, declare the following under penalty of perjury:

1. I am an investigator for Baker & Hostetler, LLP, in connection with the above-captioned Pacific Gas & Electric chapter 11 cases (the "Cases"), under the direction of Robert Julian ("Julian"), counsel for the Official Committee of Tort Claimants (the "TCC") in the Cases.

2. I submit this Declaration in support of the TCC's motion for entry of an order extending the bar date.

3. Except where specifically noted, all statements in this Declaration are based upon (a) my personal knowledge developed during the course of my engagement with the TCC, (b) my discussions with advisors of other parties in interest in these chapter 11 cases, and (c) my review of relevant documents and/or my professional opinion based upon my experience. If called to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents and/or professional opinion.

4. On Saturday, October 12, 2019, Julian and I visited the FEMA temporary housing facility established for survivors of the Camp Fire, in Gridley, California. It is a large and grim facility with mobile units arranged in rows like boxcars, and no vegetation or gardens of any kind. Our purpose in the visit was to speak with fire victims who have found refuge in the camp, learn whether or not they had filed claims in the Cases, and if not, the reasons for that. We spoke randomly to five residents who were survivors of the Camp Fire, all five of whom had been renters with no insurance to help them find replacement housing or possessions.

5. Two of the residents informed me in our discussions that they had hired lawyers who had filed claims on their behalf in the Cases. The other three residents informed me that they had not filed claims in the Cases. I believe that detail about these interviews would help to explain some of the reasons why many fire victims have not filed claims, by allowing them to describe the trauma that they have experienced, and how it affects their daily lives. None of the residents we spoke to stated that they had received information about the Cases or the claims process, and had simply decided not to file a claim. In each case, their explanations demonstrated

a lack of knowledge, misunderstandings, or, overwhelmingly, an inability to deal with issues related to the fires because of the ongoing and debilitating trauma.

6. [Jane Doe 1]: [Jane Doe 1] is a resident of the FEMA camp who has not filed a claim in the PG&E Cases. She would only speak with me by telephone, even though I was only two mobile home units away at the time, as she informed me that she "could not spend five minutes meeting with you" because "I have to take care of my cat." She said she had not been contacted by anyone about the Cases, or the possibility of filing a proof of claim in the Cases, and had no knowledge of her right to do so until told during our phone conversation. Once informed of her right to file a claim, she stated that "I intend to; PGE owes us that," but it is my impression from our conversation that she may be unable or incapable of doing so prior to the bar date. During our conversation, [Jane Doe 1] jumped back and forth among several subjects, all revolving around the anxiety she felt about escaping the Camp Fire as it swept into Paradise in November 2017. Compiled from portions of her conversation on various subjects and incidents, she related to me that "I have been diagnosed with PTSD . . . I lost everything I owned . . . I can't look at a candle flame without thinking of fire. I almost burned to death. Those flames were five feet away from me and I was trapped in my apartment for an hour trying to get out. I was saved only because of neighbors (she later said it was her roommate) . . . my anxiety is mostly caused by the fire, not having to live in these FEMA units . . . during that fire, I saw people trapped in cars . . . I ran up and down the street trying to get help . . . there were people burned to death on Edgewood (Lane, the street where her apartment building was located)." One of [Jane Doe 1]'s neighbors described her to me as suffering from "severe PTSD." The impression I had from my conversation with [Jane Doe 1] is that she will be unable to file a proof of claim in the Cases without assistance, and that she may be unable to locate that assistance on her own.

7. [Jane Doe 2]: Another non-filer that I spoke to was [Jane Doe 2], who is 89 years old. She was unaware that she could file a claim against PG&E in the Cases, and added that "even if I did know, I don't know if I could because I have severe health issues and the trauma of that day blocks my mind and I don't want to think anything about that day."

8.      I learned from our conversation that [Jane Doe 2] requires constant use of an oxygen mask and oxygen tank. Though her raspy voice faltered slightly when she talked continuously for a few minutes at a time, she said she would detail the reasons that "myself, and I think a lot of people from Paradise who went through that day. . . cannot cope with daily life now." She described for me some of her physical ailments, but seemed to consider such ailments a far lesser concern than "that day and how it triggers anxiety" and "exacerbates the pain in my stomach and, oh my god, the nightmares!" She informed me that her declining health now includes COPD, acute and chronic pancreatitis "and other ailments" she did not bother to name. "What affects me most is how I remember, or something triggers my memory. It is so surreal."

9.      [Jane Doe 2] described the events of the Camp Fire, stating that "I was in the Feather River Hospital in Paradise when the fire hit. It was chaos, such chaos, they were trying to get everyone out at once. With my oxygen problems, I couldn't do anything for myself, it was so hard to breathe in all that plus the smoke, I had to keep catching my breath. So helpless."

10.     After taking drags from her oxygen, she continued: "Right outside, they put me in a car with a 19-year-old driver who was crying . . . there were walls of red flame on both sides of the street . . . wind so strong and hot, it was blowing hard, sideways with embers shooting everywhere, wood, branches and metal through the air, propane cans exploding, screaming, sparks falling on and around the cars . . we got to the K-Mart parking lot and hundreds of cars were there . . . then on the highway, three lanes of cars abreast, dead stopped, our car window was hot to touch, I happened to turn around and a car behind us just exploded, then some people jumped out of cars and started running. I thought it was over for me . . . but somehow firetrucks were hosing the road down. It took us four hours to get out." [Jane Doe 2] seemed exhausted after that recitation, and it was obviously very difficult for her to discuss that day. "I relive that in nightmares," [Jane Doe 2] said.

11.     One of the reasons that [Jane Doe 2] gave for having not retained a lawyer to file a claim on her behalf was her stated belief that she would have to pay cash to obtain their services, and that she lives on an SSI income of $900/month. She lacked the money to replace an oxygen concentrator that had been destroyed in the fires, but had been able to obtain a donated

replacement from a local charity. She seemed surprised to learn that it was possible to retain an attorney on contingency. [Jane Doe 2] expressed to me that she wondered how she could take the time to file a claim in the Cases because now it was a struggle to deal with simple, daily life, but she stated that she would file a claim if she had help doing so. She said she had a quiet life in Paradise, a comfortable apartment. "Before all this (the fire), you're in that pace of life. In a flash, it's gone. I'm here in this place (FEMA housing), a sterile internment camp. They won't even let us plant anything." Now, she said, "I'm just about totally disabled. It's hard to think about much . . . I don't feel like this is a home. Where am I going now?" The impression I had from my conversation with [Jane Doe 2] is that she will be unable to file a proof of claim in the Cases without assistance, and that she may be unable to locate that assistance on her own.

12. A third former Paradise resident that I spoke with at the FEMA Camp is [Jane Doe 3]. [Jane Doe 3] had not filed a claim, and explained that she had not done so because of the trauma from the fire and because the recent family tragedy of the death of her son has diverted her attention. As we spoke, she stated that she now intended to hire a lawyer and file a claim in the Case. However, whether or not she succeeds in doing so, it was my impression that she definitely would not have filed a claim had we not visited with her and explained her rights to her.

13. [Jane Doe 3] related that she was not in Paradise the morning of the fire. "I was outside Oroville then because my van broke down (about 15 miles south of Paradise) with my son. It was so dark with smoke. We could look toward Paradise and I could see fire moving east toward where Paradise was. It was going so fast, I just watched it, trying to understand. I never saw fire move so fast. Why?" Her residence was "completely destroyed," she said, along with all contents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Sonoma
October 17, 2019

James Drinkhall