HOLLAND & KNIGHT LLP
Thomas D. Leland (pro hac vice)
Leah E. Capritta (pro hac vice)
1801 California Street, Suite 5000
Denver, Colorado 80202
Telephone (303) 974-6660
Facsimile (303) 974-6659
Email: thomas.leland@hklaw.com
       leah.capritta@hklaw.com

HOLLAND & KNIGHT LLP
Vince Farhat (SBN 183794)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450
Email: vince.farhat@hklaw.com

Attorneys for
TIGER NATURAL GAS, INC.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>               Debtor. | CASE NO. 19-30089 (DM)<br><br>Chapter 11<br><br>**TIGER NATURAL GAS, INC.'S MOTION FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    November 13, 2019<br>Time:   10:00 AM<br>Judge:  Hon. Dennis Montali<br>Ctrm:   17 |

#71012689_v3

1
MOTION FOR RELIEF FROM THE AUTOMATIC STAY    CASE NO. 19-30089 (DM)

## Table of Contents

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | STATEMENT OF ISSUE TO BE DETERMINED | 2 |
| III. | STATEMENT OF FACTS | 2 |
| IV. | LEGAL STANDARD | 6 |
| V. | ARGUMENT | 8 |
| | A. WHETHER RELIEF WILL RESULT IN COMPLETE RESOLUTION OF THE ISSUES | 8 |
| | B. LACK OF INTERFERENCE WITH THE BANKRUPTCY CASE | 9 |
| | C. DEBTOR PG&E IS A FIDUCIARY | 9 |
| | D. THE DISTRICT COURT HAS THE EXPERIENCE AND EXPERTISE TO RESOLVE TIGER'S CLAIMS | 10 |
| | E. THE TIGER ACTION INVOLVES THIRD PARTIES AND DEBTOR PG&E IS A CONDUIT OF NATURAL GAS | 10 |
| | F. THE TIGER LITIGATION WILL NOT PREJUDICE OTHER CREDITORS | 11 |
| | G. JUDICIAL ECONOMY WEIGHS IN FAVOR OF RELIEF FROM STAY | 11 |
| | H. PROGRESS OF LITIGATION IN THE DISTRICT COURT CASE | 12 |
| | I. A BALANCING OF THE RELATIVE HARDSHIPS WEIGHS IN FAVOR OF GRANTING RELIEF FROM STAY | 12 |
| VI. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*In re Baleine*, LP, BK 13-27610 MH, 2015 WL 5979948
    (C.D. Cal. Oct. 13, 2015)......................................................................8, 9, 11, 12

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)..................................................8, 9

*In re Kronemyer*, 405 B.R. 915 (9th Cir.BAP 2009) ...........................................7, 8

*In re Plumberex*, 311 B.R. 551 (2004) ......................................................................8

*In re Tiger Natural Gas, Inc. v. Pacific Gas and Electric
    Company, et al.*, Case No. 4:16-CV-06711 (JSW) ...............................................2

*In re Todd Shipyards Corp.*, 92 B.R. 600 (Bankr. D. N.J. 1988)......................9, 12

*In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166
    (9th Cir. 1990) ...................................................................................................6, 7

**Statutes**

11 U.S.C. § 362(d)......................................................................................................6

Bankruptcy Code section 362(a) ...............................................................................6

TO THE DEBTOR, THE TRUSTEE AND ALL OTHER INTERESTED PARTIES OF RECORD:

PLEASE TAKE NOTICE THAT Tiger Natural Gas, Inc. ("Tiger") hereby files this Motion for Relief from the Automatic Stay and Memorandum of Points and Authorities in support in the above-entitled Chapter 11 case.

This Motion is based on the accompanying Declaration of Leah E. Capritta and Request for Judicial Notice, the points and authorities set forth below, and on such other and further evidence and matters that the Court may consider at the hearing of the Motion.

PLEASE TAKE FURTHER NOTICE THAT the debtor and respondent Pacific Gas and Electric Company (the "Debtor" or "PG&E") may appear personally or by counsel at the preliminary hearing of this matter. The Debtor will not be required to, but may, file responsive pleadings, points and authorities, and declarations for any preliminary hearing.

## I. INTRODUCTION

Filed nearly three years ago, Tiger's Complaint details an on-going combination of complex business torts perpetrated by Debtor PG&E, which acts as Tiger's billing and collections agent. Given the District Court's expertise with the facts and legal issues, acquired over four similar cases in the last several years, and the advanced stage of the litigation, Tiger seeks relief from the automatic stay so it may liquidate its damages. Given the status of this Bankruptcy Action, the time is now ripe to allow the case to proceed to trial before the District Court, and the Court should grant Tiger the relief sought in this motion.

## II. STATEMENT OF ISSUE TO BE DETERMINED

1. Whether the Court should modify or lift the automatic stay to permit Tiger to liquidate its claims against Debtor PG&E by advancing the case currently pending in the District of Northern California, styled *Tiger Natural Gas, Inc. v. Pacific Gas and Electric Company, et al.*, Case No. 4:16-CV-06711 (JSW) (the "District Court Case").

## III. STATEMENT OF FACTS

In 1991, California deregulated its retail gas commodity market, giving residential and small commercial customers a choice from whom to buy natural gas, referred to as the "Core Gas Aggregation Program." (Declaration of Leah E. Capritta ("Capritta Decl."), Ex. 1, ¶¶ 25-26.) Under this program, non-utility companies, called Core Transport Agents or "CTAs," deliver volumes of gas to PG&E's Citygate for use by the CTAs' customers. (*Id.*, ¶ 40.) PG&E then delivers the gas to homes and businesses throughout Northern California. (*Id.*, ¶ 28.)

CTAs must pay PG&E both for storage and transportation of the gas (even if the CTA does not use PG&E for these services). (*Id.*, ¶ 40.) Customers also pay PG&E for storage and transportation as well as certain franchise fees. (*Id.*) In addition, PG&E itself continues to sell natural gas; that is, it competes with the CTAs. Creditor Tiger is one such CTA, and continues to operate in PG&E's territory, as it has since 2010. (*Id.*, ¶ 29.)

As a convenience to the consumer, a CTA may elect by right to use Consolidated PG&E Billing, and nearly all CTAs exercise this right. (*Id.*, ¶ 34.) With Consolidated Billing, PG&E sends one bill (called an "energy statement" or a "blue bill") to the customer containing PG&E's delivery charges as well as the CTA's gas commodity charges, all of which are set forth on the first page together with a total amount for the customer to pay. (*Id.*, ¶ 33.) The customer makes one payment to PG&E, at which point PG&E is supposed to send to the CTA its portion of the payment. (*Id.*, ¶ 4.) Aside from providing its rate for the gas to PG&E, the CTA exercises no control over the billing or collection process. (*Id.*, ¶¶ 4,34.)

At all relevant times, PG&E similarly exercised total control over the information provided to CTAs about the status of their customer accounts. (*Id.*, ¶ 44.) PG&E generates both a daily billing report, showing which customers have been billed and the amount that PG&E billed on the CTA's behalf, and a daily payment report, showing only the amount of money that PG&E elects to distribute to the CTA for any customer. (*Id.*, ¶¶ 46-48.) PG&E also disseminates monthly snapshot reports collating the information in the daily billing and payment reports and providing an aging summary of the debt owed to the CTA. (*Id.*)

Finally, PG&E sends a monthly reversal file ostensibly listing accounts "reversed" by PG&E. (*Id.*, ¶ 75.) The reversal indicates to the CTA that the customer has been disconnected or has moved outside of PG&E's territory, and the CTA may now initiate its own collection efforts. (*Id.*, ¶¶ 77-84.) The reversal terminates the CTA's business relationship with the customer. (*Id.*)

Notably, none of these reports showed the total owed by the customer or paid by the customer. (*Id.*, ¶¶ 77-84.) At all times relevant to the District Court Case, PG&E refused to provide any other information to the CTAs (including Tiger) about their joint customers. (*Id.*)

Debtor PG&E's billing and collections system, called "CC&B," serves as the accounting system for the blue bills sent to the customers, the payments received from the parties' joint customer, the payments sent to the CTAs, as well as the reports generated for the CTAs. (*Id.*, ¶45.) CC&B is a complicated Oracle-based system modified by Debtor PG&E for its services. (*Id.*, ¶¶ 45-61.) CC&B utilizes a complicated process for generating blue bills and allocating payments between Debtor PG&E and CTAs. (*Id.*)

On November 18, 2016, Tiger filed a lawsuit against Debtor PG&E in the United States District Court for the Northern District of California in connection with PG&E's fraudulent and deceptive behavior in acting as Tiger's billing and collection agent. (Capritta Decl. ¶ 2.) The Complaint alleges that Debtor PG&E engages in three schemes involving the CC&B system. (*Id.*, Ex. 1, ¶¶ 45-89.) The Payment Withholding Scheme alleges that PG&E retains customer payments in an unlawful manner that tells, inter alia, that the customer simply has not paid. (*Id.*, ¶¶ 45-61.) The Energy Credit Scheme alleges that Debtor PG&E presents energy credits (that PG&E owes to the customer) on the blue bills in a manner that informs the customer not to pay (or to partially pay) the CTA's gas charges. (*Id.*, ¶¶ 62-73.) PG&E's reports to the CTA then lead the CTA to believe that the customer is delinquent (when in fact the customer paid in full or made an appropriate partial payment). (*Id.*, ¶ 67.) In the Reversal Scheme, PG&E reverses accounts even though the customer has paid PG&E or under other unlawful circumstances. (*Id.*, ¶¶ 74-89.) The Complaint alleged claims under RICO, the Sherman Act, intentional and negligent misrepresentation, intentional interference with contract, breach of contract, breach of fiduciary

duty and violation of the California Unfair Competition Law. (*Id*., ¶¶ 90-184.) The Complaint names three PG&E employees individually as defendants: Albert Torres; William Chen; and Tanisha Robinson. (*See id*., Ex. 1.) Judge Jeffrey S. White presides over the District Court Case. (Capritta Decl., ¶3.)

The District Court Case presents complicated fact patterns over several different divisions within Debtor PG&E, a series of complex business torts, and a rubric of procedural and discovery wrangling. (Capritta Decl., ¶ 4.) The parties deposed nine individuals (in addition to the 23 depositions taken in a similar lawsuit initiated by United Energy Trading, LLC) and exchanged hundreds of thousands pages of documents. (Capritta Decl., ¶ 5.) In addition, the parties analyzed millions of transactions from tens of thousands of accounts from the CC&B system, itself a remarkably complex program. (Capritta Decl., ¶ 6.)

In addition, the District Court presided over several discovery issues involving apparent errors and inconsistencies in PG&E's CC&B system. (Capritta Decl., ¶ 8.) On July 31, 2018, Magistrate Judge Sallie Kim ordered PG&E to review a series of pre-selected accounts and provide a "person most knowledgeable" to testify regarding the transactions. (Capritta Decl., ¶ 9.) In the course of prepping its witness, on September 17, 2018, PG&E acknowledged that "certain financial transactions" were missing from all of the CC&B dataset provided by PG&E. (Capritta Decl., ¶ 10.) On October 15, 2018, the Court ordered PG&E to permit a forensic expert to examine CC&B. (Capritta Decl., ¶ 11.) When PG&E curtailed that examination, the Court again ordered two additional days of forensic review, which the parties scheduled to occur on January 28 and 29, 2019.[1] (Capritta Decl., ¶ 12.) While the parties completed the first day, PG&E filed the instant petition early in the morning on January 29, 2019, preventing the second day of examination. (Capritta Decl., ¶ 13.) As the foregoing shows, the course of discovery before the District Court reflects a complicated background. (Capritta Decl., ¶ 14.)

The interplay between the regulatory environment and the legal framework for many of the business torts alleged in the complaint create additional complexity. (Capritta Decl., ¶ 15.)

---

[1] On January 17, 2019, PG&E moved to stay the examination entirely, which the Court denied.

Case: 19-30089    Doc# 4322    Filed: 10/18/19    Entered: 10/18/19 18:29:08    Page 7 of 16

The California Public Utilities Commission regulates both the CTAs and PG&E and issued decisions at various times on which both parties rely for their legal positions. (Capritta Decl., ¶ 16.) The District Court, accordingly, acquired an expertise in these complicated issues. (Capritta Decl., ¶ 17.)

Except for the foregoing forensic examination, fact discovery closed on December 21, 2018. (Capritta Decl., ¶ 18.) Expert discovery would have closed on May 6, 2019. (Capritta Decl., ¶ 19.) Finally, the Court set September 16, 2019, as the first day of trial. (Capritta Decl., ¶ 20.)

On January 29, 2019, the Debtor filed the instant Chapter 11 Petition as Case No. 19-30088 (DM). (Dkt. 1.) At the time of this bankruptcy filing, the following matters pended before the District Court:

    i. Dispositive motions deadline on June 21, 2019;

    ii *Daubert* motions deadline on August 2, 2019;

    iii. Parties' Pre-Trial Conference set for August 19, 2019;

    ii. Motions in Limine; and

    iii. Trial set for September 16, 2019.

(Capritta Decl., ¶ 21.)

On February 27, 2019, the District Court stayed the case in its entirety while PG&E worked its way through the reorganization process. (Capritta Decl., ¶ 22.)

Given the complex nature of the torts alleged, Tiger's claims remain unliquidated. (Capritta Decl., ¶ 23) Tiger had not yet disclosed the findings of its damages experts; however, given the on-going nature of PG&E's actions, that sum has only increased. (Capritta Decl., ¶ 24.) In addition, because PG&E's actions are both fraudulent and intentional, the possibility of exemplary damages and an award of fees and costs exists. (Capritta Decl., ¶ 25.)

## IV. <u>LEGAL STANDARD</u>

Pursuant to section 362(a) of the Bankruptcy Code, a bankruptcy filing imposes an automatic stay of all litigation against the debtor. 11 U.S.C. § 362(a). However, a creditor may

move for relief from automatic stay under 11 U.S.C. § 362(d), which provides that a bankruptcy court "shall grant relief from the stay" upon a showing of "cause." 11 U.S.C. § 362(d); *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). Specifically, Bankruptcy Code § 362(d) provides that:

> On request of a party in interest after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay:
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section if:
>
> (A) the debtor does not have any equity in such property and,
>
> (B) such property is not necessary to an effective reorganization.

"Cause" has no clear definition and is determined on a case-by-case basis. *In re Tucson Estates, Inc.*, 912 F.2d at 1166. Granting or denying relief from stay is a matter of the court's discretion and often involves consideration of numerous factors. *In re Kronemyer*, 405 B.R. 915 (9th Cir.BAP 2009). Those factors include:

1. Will relief result in partial or complete resolution of the issues?
2. Is there a lack of any connection with or interference with the bankruptcy case?
3. Does the foreign proceeding involve the debtor as a fiduciary?
4. Has a special tribunal been established to hear the particular cause of action and does that tribunal have the expertise to hear such cases?
5. Has the debtor's insurance carrier has assumed financial responsibility?
6. Does the action involve third parties and the debtor functions only as a bailee or conduit?
7. Would litigation in the other forum prejudice the interests of other creditors, the creditors committee and other parties?
8. Would the judgment claim arising from the foreign action be subject to equitable subordination?

9. Would success in the nonbankruptcy forum result in a lien avoidable under the bankruptcy code?

10. Would the interests of judicial economy and expeditious and economical determination of litigation be achieved?

11. Have the foreign proceedings progressed to where the parties have prepared for trial?

12. What is the impact of the stay on the parties and the "balance of hurt"?

The Ninth Circuit has recognized that "the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." *In re Kronemyer*, 405 B.R. at 921. While the *Curtis* factors are widely used to determine the existence of "cause," not all of the factors are relevant in every case, nor is a court required to give each factor equal weight. *In re Plumberex*, 311 B.R. 551, 560 (2004). Accordingly, factors 5, 8, and 9 are not relevant here and will not be discussed.

According to the court in *Curtis*, "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Courts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum "if the non-bankruptcy suit involves multiple parties or is ready for trial." *In re Baleine*, LP, BK 13-27610 MH, 2015 WL 5979948, at *7 (C.D. Cal. Oct. 13, 2015) (*citing Plumberex*, 311 B.R. at 556).

V. **ARGUMENT**

Cause exists here to grant Tiger relief from the automatic stay under § 362(d)(1) so that it may continue to pursue its claims against Debtor PG&E in the District Court Case. Upon evaluating these factors, they clearly tip heavily in favor of granting relief from the automatic stay.

A. **WHETHER RELIEF WILL RESULT IN COMPLETE RESOLUTION OF THE ISSUES**

Lifting the stay will allow the District Court Case to proceed in a forum in which complete resolution will be obtained. The District Court has presided over the District Court Case since

May 2015. It now involves one defendant—Debtor PG&E— and three individual defendants and one plaintiff, and several state-law business torts, and the District Court maintains jurisdiction over not only all the parties but the claims at issue, none of which impact this Court's inquiries about the wildfires or PG&E's restructuring of its debt. Accordingly, the first factor tips in favor of the stay.

### B. LACK OF INTERFERENCE WITH THE BANKRUPTCY CASE

The lack of any connection with or interference with the bankruptcy case is "[t]he most important factor in determining whether to grant relief from the automatic stay." *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984). Here, lifting the stay will not negatively affect the bankruptcy case. The bankruptcy case largely involves the reorganization of PG&E's debt and, to no small extent, the management of its liability for wildfire claims and other liability for personal injury and losses. In contrast, the District Court Case alleges tort claims based on Tiger and the Debtor's business relationship and day-to-day dealings, which do not implicate the issues arising in the bankruptcy proceeding.

Further, nothing in the District Court Case will impede the Trustee's ultimate duty to allocate assets among Debtor PG&E's various creditors. Indeed, the Trustee will maintain the ability to liquidate and administer the Debtor's estate. *See In re Baleine,* 2015 WL 5979948, at *8.

"The automatic stay was never intended to preclude a determination of tort liability and attendant damages." *In re Todd Shipyards Corp.*, 92 B.R. 600, 303 (Bankr. D. N.J. 1988). "It was merely intended to prevent a prejudicial dissipation of debtor's assets." *Id*.

In addition, litigation costs to a bankruptcy estate do not compel a court to deny stay relief. *In re Baleine,* 2015 WL 5979948, at *9 (*citing In re Santa Clara Cnty. Fair Ass'n*, 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995)). Here, however, the District Court Case is unlikely to cause significant additional financial burden on the Debtor, which will need to either litigate Tiger's claims here or in the District Court. Indeed, proceeding before the District Court will likely conserve resources given the District Court's familiarity with the issues and the advanced stage of the case. This factor weighs in favor of granting relief from the automatic stay.

### C. DEBTOR PG&E IS A FIDUCIARY

One of Tiger's strongest claims against Debtor PG&E involve Debtor PG&E's status as a fiduciary to Tiger. Tiger alleges, and the District Court already found that, Debtor PG&E's role as Tiger's billing and collections agent constitutes a fiduciary relations. That is, Tiger alleges that Debtor PG&E exercises total control over CC&B and yet improperly bills their joint customers, improperly retains payments owed to Tiger and provides false information to Tiger about those joint customers' accounts, all in breach of Debtor PG&E's fiduciary duty. Lifting the stay, then, will be particularly important given the effects of Debtor PG&E's actions upon Debtor PG&E and Tiger's customers in Northern California. Accordingly, this factor weighs in favor of Tiger.

### D. THE DISTRICT COURT HAS THE EXPERIENCE AND EXPERTISE TO RESOLVE TIGER'S CLAIMS

Notably, the District Court Case represents one of four similar cases filed by CTAs in the Northern District of California against PG&E. While two settled months before Debtor PG&E filed this action, another one—United Energy Trading LLC v. PG&E, et al.[2]—remains in litigation. Magistrate Judge Sallie Kim presided over discovery disputes in each of these cases, and both Judge Seeborg (who presides over the UET action) and Judge White have rendered substantive decisions. Accordingly, although the District Court is not a specialized tribunal, it nevertheless acquired a particular expertise with regard to the legal, regulatory and factual issues at play in the District Court Case. While bankruptcy courts also have experience applying the law of other courts, the amount of time and resources that have already been devoted to the case in the District Court puts it in the best position to continue hearing the case. This factor also tips in favor of lifting the automatic stay.

### E. THE TIGER ACTION INVOLVES THIRD PARTIES AND DEBTOR PG&E IS A CONDUIT OF NATURAL GAS

As noted above, the District Court Case features three individual defendants, and Tiger's claims against them cannot be adjudicated in this Court. For that reason alone, the Court should grant relief from stay.

---

[2] United Energy Trading moves for relief from stay contemporaneously with this motion.

In addition, Debtor PG&E acts as an intermediary billing agent between Tiger's gas customers (who also use PG&E's gas transportation system and are likely PG&E's electrical customers) and Tiger. As result, when a customer pays PG&E, the likely expectation is that PG&E will pay to Tiger its portion of the customer's payment. Similarly, when Debtor PG&E sends the customer a bill showing either an amount due or that a payment was made, the natural expectation by the customer is that the bill is accurate. However, as alleged in the District Court Case, the customer in fact receives inaccurate billing and payment information. The District Court Case involves third parties; accordingly, the interest of the public will be served in permitting Tiger's claims to proceed before the District Court. The ramifications of Debtor PG&E's behavior upon customers tilts this factor in favor of lifting the stay.

### F. THE TIGER LITIGATION WILL NOT PREJUDICE OTHER CREDITORS

Allowing Tiger to proceed with its claims will not prejudice creditors of the estate. As discussed above, the bankruptcy estate cannot be negatively impacted by lifting the stay in the District Court Case nor will other creditors of the bankruptcy estate would be prejudiced by granting relief from stay. Accordingly, this factor weighs in favor of granting relief from stay.

### G. JUDICIAL ECONOMY WEIGHS IN FAVOR OF RELIEF FROM STAY

The conclusion of Tiger's claims against the Debtor in the District Court Case is in the interest of judicial economy because the District Court has been involved with this particular case since its filing in November 2016 (and since May 2015, if one includes the UET action).

Courts consider the relative amount of fees in the foreign proceeding as compared to the bankruptcy action and the amount of time and resources it would require the bankruptcy court to become fully apprised of the issues in the foreign action. *In re Baleine, LP*, at *11. Here, the District Court gained familiarity with all aspects of Tiger's case (as well as the UET action) including the interrelated regulatory and legal issues and the complex discovery background.

Addressing Tiger's claims before the Bankruptcy Court would not further judicial economy given the time and resources that would be required to onboard a new judge to become

#71012689_v3
MOTION FOR RELIEF FROM THE AUTOMATIC STAY
11
CASE NO. 19-30089 (DM)

Case: 19-30088   Doc# 4322   Filed: 10/18/19   Entered: 10/18/19 18:29:08   Page 13 of 16

familiar with the complex legal and factual issues, as well as the complicated discovery background, of the case. Lifting the stay will also prevent the parties from litigating the case in piecemeal fashion. *See In re Baleine, LP,* at *11. Further, at the conclusion of the District Court action, the Bankruptcy Court can determine priority issues and how to divide the assets of the estate. *See In re Baleine, LP,* at *11 (affirming that it is "more appropriate" for the non-bankruptcy court "to first determine the non-bankruptcy issues, *i.e.*, whether a claim exists and the damages therein, if any. After such determination, then the bankruptcy issues become relevant.") Granting relief from the stay would efficiently liquidate Tiger's claims against all defendants in one forum.

### H. PROGRESS OF LITIGATION IN THE DISTRICT COURT CASE

Prior to the commencement of Debtor's Chapter 11 case, the District Court scheduled trial to begin on September 16, 2019, Indeed, the District Court developed a particular expertise in the technology involved, the legal theories at issue, and the various discovery issues between the parties. Accordingly, this factor heavily weighs in favor of granting relief from the automatic stay.

### I. A BALANCING OF THE RELATIVE HARDSHIPS WEIGHS IN FAVOR OF GRANTING RELIEF FROM STAY

The balance of the hardships tilts sharply in favor of granting Tiger relief from the automatic stay to liquidate their claims in the District Court Case as the litigation has already proceeded through fact discovery and to the pre-trial phase. It would be impractical for the Bankruptcy Court to address the claims at issue in the District Court Case due to the nature of the claims and progress of the case in the District Court.

While the Debtor may incur litigation expenses, incurrence of litigation expenses does not weigh against the liquidation of tort claims in another forum. *See In re Todd Shipyard*, *supra*, at 603. The Debtor would not experience significant hardship in proceeding with the District Court Case at this juncture; the hardship, instead, lies with Tiger, who has spent the last three years litigating this case to the end of fact discovery only to be stayed by Debtor's Chapter 11 case. The on-going nature of PG&E's fraudulent acts exacerbate the hardship to Tiger.

PG&E's progress before this Court underscores the hardship to Tiger and the lack of hardship to PG&E itself. Here, the Court recently ended the exclusivity period to allow certain creditors to submit a plan (Dkt. 4167) and denied PG&E's recent motion to extend its exclusivity period (Dkt. 4005). That is, the Court has provided PG&E a full and fair opportunity to assemble and propose its plan without distraction from other litigation. Accordingly, the passage of time irradiated whatever hardship PG&E may have felt, and now appears to be opportune for permitting Tiger relief.

Therefore the Court should grant Tiger's Motion for Relief from Stay and allow the District Court Case to proceed.

## VI. CONCLUSION

For the foregoing reasons, and based upon the evidence set forth in this Motion, the Court should grant relief from the automatic stay to allow Tiger to pursue its claims against the Debtor in the District Court Case.

DATED: October 18, 2019

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:     /s/ *Leah E. Capritta*
    Leah E. Capritta

*Attorneys for United Energy Trading, LL*