HOLLAND & KNIGHT LLP
Thomas D. Leland
Leah E. Capritta
1801 California Street, Suite 5000
Denver, Colorado 80202
Telephone (303) 974-6660
Facsimile (303) 974-6659
Email: thomas.leland@hklaw.com
　　　　leah.capritta@hklaw.com

HOLLAND & KNIGHT LLP
Vince Farhat (SBN 183794)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450
Email: vince.farhat@hklaw.com

Attorneys for
UNITED ENERGY TRADING, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>　　　　　　Debtor. | CASE NO. 19-30089 (DM)<br><br>Chapter 11<br><br>**UNITED ENERGY TRADING, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:　March 7, 2019<br>Time:　9:30 AM<br>Judge:　Hon. Dennis Montali<br>Ctrm:　17 |

**POINTS & AUTHORITIES**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF ISSUE TO BE DETERMINED ...........................................1

    *United Energy Trading, LLC v. Pacific Gas and Electric Company, et al.*,
        Case No. 3:15-CV-02383 (RS) ..........................................................................1

III. STATEMENT OF FACTS ....................................................................................1

    Fed. R. Evid. 702 ........................................................................................................4

    *Daubert v. Merrell Dow Pharm., Inc.*,
        509 U.S. 579 (1993) ...........................................................................................4

IV. LEGAL STANDARD ............................................................................................5

    11 U.S.C. § 362(a) .....................................................................................................5

    11 U.S.C. § 362(d) .....................................................................................................5

    *In re Tucson Estates, Inc.*,
        912 F. 2d 1162 (9th Cir. 1990) ..................................................................5, 6

    *In re Kronemyer*,
        405 B.R. 915 (9th Cir. BAP 2009) ................................................................6, 7

    *In re Plumberex*,
        311 B.R. 551 (2004) ..........................................................................................7

    *In re Curtis*,
        40 B.R. 795 (Bankr. D. Utah 1984) .................................................................7

    11 U.S.C. § 362(d)(1) ................................................................................................7

    *In re Baleine*,
        LP, BK 13-27610 MH, 2015 WL 5979948 (C.D. Cal. Oct. 13, 2015) ........7

V. ARGUMENT ............................................................................................................7

    11 U.S.C. § 362(d)(1) ................................................................................................7

    A. WHETHER RELIEF WILL RESULT IN COMPLETE RESOLUTION OF THE ISSUES ...............................................................................................7

    B. LACK OF INTERFERENCE WITH THE BANKRUPTCY CASE ................7

    *In re Curtis*,
        40 B.R. 795 (Bankr. D. Utah 1984) .................................................................8

    *In re Baleine*,
        LP, BK 13-27610 MH, 2015 WL 5979948 (C.D. Cal. Oct. 13, 2015) ........8

| | | |
|---|---|---|
| | *In re Todd Shipyards Corp.*, 92 B.R. 600 (Bankr. D. N.J. 1988) | 8 |
| | *In re Santa Clara Cnty. Fair Ass'n*, 180 B.R. 564 (B.A.P. 9th Cir. 1995) | 8 |
| C. | DEBTOR PG&E IS A FIDUCIARY | 8 |
| D. | THE DISTRICT COURT HAS THE EXPERIENCE AND EXPERTISE TO RESOLVE UET'S CLAIMS | 8 |
| E. | THE DISTRICT COURT CASE INVOLVES THIRD PARTIES AND DEBTOR PG&E IS A CONDUIT OF NATURAL GAS | 9 |
| F. | THE UET LITIGATION WILL NOT PREJUDICE OTHER CREDITORS | 9 |
| G. | JUDICIAL ECONOMY WEIGHS IN FAVOR OF RELIEF FROM STAY | 10 |
| | *In re Baleine*, LP, BK 13-27610 MH, 2015 WL 5979948 (C.D. Cal. Oct. 13, 2015) | 10 |
| H. | PROGRESS OF LITIGATION IN THE DISTRICT COURT CASE | 10 |
| I. | A BALANCING OF THE RELATIVE HARDSHIPS WEIGHS IN FAVOR OF GRANTING RELIEF FROM STAY | 11 |
| | *In re Todd Shipyards Corp.*, 92 B.R. 600 (Bankr. D. N.J. 1988) | 11 |
| VI. | CONCLUSION | 11 |

TO THE DEBTOR, THE TRUSTEE AND ALL OTHER INTERESTED PARTIES OF RECORD:

PLEASE TAKE NOTICE THAT United Energy Trading, LLC ("UET") hereby files this Motion and Memorandum of Points and Authorities in support from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(1) in the above-entitled Chapter 11 case.

This Motion is based on the accompanying Declaration of Leah E. Capritta and Request for Judicial Notice, the points and authorities set forth below, and on such other and further evidence and matters that the Court may consider at the hearing of the Motion.

PLEASE TAKE FURTHER NOTICE THAT the debtor and respondent Pacific Gas and Electric Company (the "Debtor" or "PG&E") may appear personally or by counsel at the preliminary hearing of this matter. The Debtor will not be required to, but may, file responsive pleadings, points and authorities, and declarations for any preliminary hearing.

## I. INTRODUCTION

UET initiated this lawsuit in May 2015 attempting to hold PG&E accountable for its many fraudulent business practices which continue largely unabated to this day. As the District Court's docket entries demonstrate, UET's efforts included not only numerous discovery battles and motions practice, but even an ill-advised and aggressive Rule 11 motion against its attorneys at the outset of the case. Then, just weeks from trial, PG&E filed its petition before this Court. The District Court case remains trial-ready and, given the status of this matter, the time is ripe to grant UET relief from stay so it may finally resolve this matter.

## II. STATEMENT OF ISSUE TO BE DETERMINED

1. Whether the Court should modify or lift the automatic stay to permit UET to liquidate its claims against Debtor PG&E by advancing the case currently pending in the District of Northern California, styled *United Energy Trading, LLC v. Pacific Gas and Electric Company, et al.*, Case No. 3:15-CV-02383 (RS) (the "District Court Case").

## III. STATEMENT OF FACTS

In 1995, California deregulated its retail gas commodity market, giving residential and small commercial customers of choice from whom to buy natural gas, referred to as the "Core

Gas Aggregation Program." (Declaration of Leah E. Capritta ("Capritta Decl.") Ex. 1, ¶¶ 26-27.) Under this program, non-utility companies, called Core Transport Agents or "CTAs," deliver volumes of gas to PG&E's Citygate for use by the CTAs' customers. PG&E then delivers the gas to homes and businesses throughout Northern California. (*Id.*, ¶ 4.)

CTAs must pay PG&E both for storage and transportation of the gas (even if the CTA does not use PG&E for these services). (*Id.*, ¶ 59.) Customers also pay PG&E for storage and transportation as well as certain franchise fees. (*Id.*) In addition, PG&E itself continues to sell natural gas; that is, it competes with the CTAs. Creditor UET is one such CTA, and continues to operate in PG&E's territory, as it has since 2010. (*Id.*, ¶ 30.)

As a convenience to the consumer, a CTA may elect by right to use Consolidated PG&E Billing, and nearly all CTAs exercise this right. (*Id.*, ¶ 35.) With Consolidated Billing, PG&E sends one bill (called an "energy statement" or a "blue bill") to the customer containing PG&E's delivery charges as well as the CTA's gas commodity charges, all of which are set forth on the first page together with a total amount for the customer to pay. (*Id.*) The customer makes one payment to PG&E, at which point PG&E is supposed to send to the CTA its portion of the payment. (*Id.*) Aside from providing its rate for the gas to PG&E, the CTA exercises no control over the billing or collection process. (*Id.*, ¶¶ 45, 132.)

At all relevant times, PG&E similarly exercised total control over the information provided to CTAs about the status of their customer accounts. (*Id.*, ¶ 45.) PG&E generates both a daily billing report, showing which customers have been billed and the amount that PG&E billed on the CTA's behalf, and a daily payment report, showing only the amount of money that PG&E elects to distribute to the CTA for any customer. (*Id.*, ¶¶ 46-62.) PG&E also disseminates monthly snapshot reports collating the information in the daily billing and payment reports and providing an aging summary of the debt owed to the CTA. (*Id.*, ¶¶ 46-50.)

Finally, PG&E sends a monthly reversal file ostensibly listing accounts "reversed" by PG&E. (*Id.*, ¶¶ 46-62.) The reversal indicates to the CTA that the customer has been disconnected or has moved outside of PG&E's territory, and the CTA may now initiate its own

collection efforts. (*Id.*) The reversal terminates the CTA's business relationship with the customer. (*Id.*)

Notably, none of these reports showed the total owed by the customer or paid by the customer. (*Id.*) At all times relevant to the District Court Case, PG&E refused to provide any other information to the CTAs (including UET) about their joint customers. (*Id.*, ¶ 73.) Debtor PG&E's billing and collections system, called "CC&B," serves as the accounting system for the blue bills sent to the customers, the payments received from the parties' joint customer, the payments sent to the CTAs, as well as the reports generated for the CTAs. (*Id.*, ¶¶ 46-62.) CC&B is a complicated Oracle-based system modified by Debtor PG&E for its services. (*Id.*) CC&B utilizes a complicated process for generating blue bills and allocating payments between Debtor PG&E and CTAs. (*Id.*)

On May 28, 2015, UET filed a lawsuit against Debtor in the United States District Court for the Northern District of California against Debtor PG&E in connection with PG&E's fraudulent and deceptive behavior in acting as UET's billing and collection agent. (Capritta Decl., ¶ 3.) The Complaint alleges that Debtor PG&E engages in three schemes involving the CC&B system. The Payment Withholding Scheme alleges that PG&E retains customer payments in an unlawful manner that tells, inter alia, that the customer simply has not paid. (Capritta Decl., Ex. 1, ¶¶ 46-62.) The Energy Credit Scheme alleges that Debtor PG&E presents energy credits (that PG&E owes to the customer) on the blue bills in manner that informs the customer not to pay (or to partially pay) the CTA's gas charges. (*Id.*) PG&E's reports to the CTA then lead the CTA to believe that the customer is delinquent (when in fact the customer paid in full or made an appropriate partial payment). (*Id.*, ¶¶ 63-74.) In the Reversal Scheme, PG&E reverses accounts even though the customer has paid PG&E or under other unlawful circumstances. (*Id.*, ¶ 76.) The Second Amended Complaint (the operative pleading) alleged claims under RICO, the Sherman Act, intentional and negligent misrepresentation, intentional interference with contract, breach of contract, breach of fiduciary duty and violation of the California Unfair Competition Law. (*Id.*, ¶¶ 89-183.) Judge Richard Seeborg presides over the District Court Case. (Capritta Decl., ¶ 2.)

The District Court Case presents complicated fact patterns over several different divisions within Debtor PG&E, a series of complex business torts, and a rubric of procedural and discovery wrangling. (Capritta Decl., ¶ 3.) The parties deposed over 20 individuals, exchanged hundreds of thousands pages of documents. (Capritta Decl., ¶ 4.) In addition, the parties analyzed millions of transactions from tens of thousands of accounts from the CC&B system, itself a remarkably complex program. (Capritta Decl., ¶ 5.) The parties disclosed and deposed several forensic accountants, economists, and other experts. (Capritta Decl., ¶ 6.) The District Court presided over many of these discovery issues. (Capritta Decl., ¶ 7.)

The interplay between the regulatory environment and the legal framework for many of the business torts alleged in the complaint create an additional complexity. (Capritta Decl., ¶ 8.) The California Public Utilities Commission regulates both the CTAs and PG&E and issued decisions at various times on which both parties rely for their legal positions. (Capritta Decl., ¶ 8.) The District Court, accordingly, familiarized itself with these complicated issues. (Capritta Decl., ¶ 8.)

On January 22, 2018, the District Court ruled on the parties' competing motions for summary judgment, with the majority of UET's claims surviving for trial. (Capritta Decl., ¶ 9.) The District Court's Order, in fact, contained several key rulings on how the parties were to address the regulatory environment at trial. (Capritta Decl., ¶ 10.) On October 16, 2018, the District Court denied the parties' dueling motions under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). (Capritta Decl., ¶ 11.) That is, the District Court resolved all significant legal issues prior to trial. (Capritta Decl., ¶ 12.)

On January 29, 2019, the Debtor filed the instant Chapter 11 Petition as Case No. 19-30089 (DM). (Dkt. 1.)[1] At the time of this bankruptcy filing, the following matters pended before the District Court:

---

[1] In addition, on November 27, 2018, the parties attended a settlement conference with Magistrate Judge Elizabeth D. Laporte, from which productive settlement discussions remained ongoing. On or about December 20, 2018, the parties created a terms sheet, and worked thereafter to create a settlement agreement. On January 15, 2019, PG&E published a notice of its intent to initiate this proceeding, and the parties suspended settlement discussions. On May 6, 2019, after inquiry from UET, PG&E confirmed it was "not in a position at this time to discuss settlement of the claims at issue."

1. a. Parties' Pre-Trial Conference set for February 27, 2019;
2. b. Motions in Limine; and
3. c. Trial set for March 11, 2019.

(Capritta Decl., ¶ 13.)

On February 5, 2019, the District Court vacated the pretrial conference and the trial, effectively staying the case while PG&E worked its way through the reorganization process. (Capritta Decl., ¶14.)

Given the complex nature of the torts alleged, UET's claims remain unliquidated. (Capritta Decl., ¶15.) In 2017, when UET disclosed the reports of its experts, its damages totaled approximately $7 million; however, given the on-going nature of PG&E's actions, that sum is likely now significantly higher. (Capritta Decl., ¶15.) In addition, because PG&E's actions are both fraudulent and intentional, the possibility of exemplary damages and an award of fees and costs exists. (Capritta Decl., ¶16.)

## IV. **LEGAL STANDARD**

Pursuant to section 362(a) of the Bankruptcy Code, a bankruptcy filing imposes an automatic stay of all litigation against the debtor. 11 U.S.C. § 362(a). However, a creditor may move for relief from automatic stay under 11 U.S.C. § 362(d), which provides that a bankruptcy court "shall grant relief from the stay" upon a showing of "cause." 11 U.S.C. § 362(d); *In re Tucson Estates, Inc*., 912 F. 2d 1162, 1166 (9th Cir. 1990). Specifically, Bankruptcy Code § 362(d) provides that:

> On request of a party in interest after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay:
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section if:
>
> (A) the debtor does not have any equity in such property and,
>
> (B) such property is not necessary to an effective reorganization.

"Cause" has no clear definition and is determined on a case-by-case basis. *In re Tucson Estates, Inc.*, 912 F.2d at 1166. Granting or denying relief from stay is a matter of the court's discretion and often involves consideration of numerous factors. *In re Kronemyer*, 405 B.R. 915 (9th Cir.BAP 2009). Those factors include:

1. Will relief result in partial or complete resolution of the issues?
2. Is there a lack of any connection with or interference with the bankruptcy case?
3. Does the foreign proceeding involve the debtor as a fiduciary?
4. Has a special tribunal been established to hear the particular cause of action and does that tribunal have the expertise to hear such cases?
5. Has the debtor's insurance carrier has assumed financial responsibility?
6. Does the action involve third parties and the debtor functions only as a bailee or conduit?
7. Would litigation in the other forum prejudice the interests of other creditors, the creditors committee and other parties?
8. Would the judgment claim arising from the foreign action be subject to equitable subordination?
9. Would success in the nonbankruptcy forum result in a lien avoidable under the bankruptcy code?
10. Would the interests of judicial economy and expeditious and economical determination of litigation be achieved?
11. Have the foreign proceedings progressed to where the parties have prepared for trial?
12. What is the impact of the stay on the parties and the "balance of hurt"?

The Ninth Circuit has recognized that "the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." *In re Kronemyer*, 405 B.R. at 921. While the *Curtis* factors are widely used to determine the existence of "cause," not all of the factors are relevant in every case, nor is a court required to give each factor equal weight. *In re Plumberex*, 311 B.R. 551, 560 (2004). Accordingly, factors 5, 8, and 9 are not relevant here and will not be discussed.

According to the court in *Curtis*, "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Courts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum "if the non-bankruptcy suit involves multiple parties or is ready for trial." *In re Baleine*, LP, BK 13-27610 MH, 2015 WL 5979948, at *7 (C.D. Cal. Oct. 13, 2015) (citing *Plumberex*, 311 B.R. at 556).

## V. ARGUMENT

Cause exists here to grant UET relief from the automatic stay under § 362(d)(1) so that it may continue to pursue its claims against Debtor PG&E in the District Court Case. Upon evaluating these factors, it is clear that they tip heavily in favor of granting relief from the automatic stay.

### A. WHETHER RELIEF WILL RESULT IN COMPLETE RESOLUTION OF THE ISSUES

Lifting the stay will allow the District Court Case to proceed in a forum in which complete resolution will be obtained. The District Court has presided over the District Court Case since May 2015. It now involves one defendant—Debtor PG&E—and one plaintiff, and several state-law business torts, and the District Court maintains jurisdiction over not only the parties but the claims at issue, none of which impact this Court's inquiries about the wildfires or PG&E's restructuring of its debt. Accordingly, the first factor tips in favor of the stay.

### B. LACK OF INTERFERENCE WITH THE BANKRUPTCY CASE

The lack of any connection with or interference with the bankruptcy case is "[t]he most important factor in determining whether to grant relief from the automatic stay." *In re Curtis*, 40 B.R.795 (Bankr. D. Utah 1984). Here, lifting the stay will not negatively affect the bankruptcy case. The bankruptcy case largely involves the reorganization of PG&E's debt and, to no small extent, the management of its liability for wildfire claims and other liability for personal injury and losses. In contrast, the District Court Case alleges tort claims based on UET and the

Debtor's business relationship and day-to-day dealings, which do not implicate the issues arising in the bankruptcy proceeding.

Further, nothing in the District Court Case will impede the Trustee's ultimate duty to allocate assets among Debtor PG&E's various creditors. Indeed, the Trustee will maintain the ability to liquidate and administer the Debtor's estate. *See In re Baleine,* 2015 WL 5979948, at *8.

"The automatic stay was never intended to preclude a determination of tort liability and attendant damages." *In re Todd Shipyards Corp.*, 92 B.R. 600, 303 (Bankr. D. N.J. 1988). "It was merely intended to prevent a prejudicial dissipation of debtor's assets." *Id*.

In addition, litigation costs to a bankruptcy estate do not compel a court to deny stay relief. *In re Baleine,* 2015 WL 5979948, at *9 (citing *In re Santa Clara Cnty. Fair Ass'n*, 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995)). Here, however, the District Court Case is unlikely to cause significant additional financial burden on the Debtor, which will need to either litigate UET's claims here or in the District Court. Indeed, proceeding before the District Court will likely conserve resources given the District Court's familiarity with the issues and the advanced stage of the case. This factor weighs in favor of granting relief from the automatic stay.

### C. DEBTOR PG&E IS A FIDUCIARY

One of UET's strongest claims against Debtor PG&E involve Debtor PG&E's status as a fiduciary to UET. UET alleges, and the District Court already found that, Debtor PG&E's role as UET's billing and collections agent constitutes a fiduciary relations. That is, UET alleges that Debtor PG&E exercise total control over CC&B and yet improperly bills their joint customers, improperly retains payments owed to UET and provides false information to UET about those joint customers' accounts, all in breach of Debtor PG&E's fiduciary duty. Lifting the stay, then, will be particularly important given the effects of Debtor PG&E's actions upon Debtor PG&E and UET's customers in Northern California. Accordingly, this factor weighs in favor of UET.

### D. THE DISTRICT COURT HAS THE EXPERIENCE AND EXPERTISE TO RESOLVE UET'S CLAIMS

Notably, the District Court Case represents one of four similar cases filed by CTAs in the Northern District of California against PG&E. While two settled months before Debtor PG&E filed this action, another one—*Tiger Natural Gas, Inc. v. PG&E, et al.*—remains in litigation. Magistrate Judge Sallie Kim presided over discovery disputes in each of these cases, and both Judge White (who presides over the Tiger Action) and Judge Seeborg have rendered substantive decisions. Accordingly, although the District Court is not a specialized tribunal, it nevertheless acquired a particular expertise with regard to the legal, regulatory and factual issues at play in the District Court Case. While bankruptcy courts also have experience applying the law of other courts, the amount of time and resources that have already been devoted to the case in the District Court puts it in the best position to continue hearing the case. This factor also tips in favor of lifting the automatic stay.

### E. THE DISTRICT COURT CASE INVOLVES THIRD PARTIES AND DEBTOR PG&E IS A CONDUIT OF NATURAL GAS

As noted above, Debtor PG&E acts as an intermediary billing agent between UET's gas customers (who also use PG&E's gas transportation system and are likely PG&E's electrical customers) and UET. As result, when a customer pays PG&E, the likely expectation is that PG&E will pay to UET its portion of the customer's payment. Similarly, when Debtor PG&E sends the customer a bill showing either an amount due or that a payment was made, the natural expectation by the customer is that the bill is accurate. However, as alleged in the District Court Case, the customer in fact receives inaccurate the billing and payment information. The District Court Case, involves third parties; accordingly, the interest of the public will be served in permitting UET's claims to proceed before the District Court. The ramifications of Debtor PG&E's behavior upon customers tilts this factor in favor of lifting the stay.

### F. THE UET LITIGATION WILL NOT PREJUDICE OTHER CREDITORS

Allowing UET to proceed with its claims will not prejudice creditors of the estate. As discussed above, the bankruptcy estate cannot be negatively impacted by lifting the stay in the District Court Case nor will other creditors of the bankruptcy estate would be prejudiced by granting relief from stay. Accordingly, this factor weighs in favor of granting relief from stay.

## G. JUDICIAL ECONOMY WEIGHS IN FAVOR OF RELIEF FROM STAY

The conclusion of UET's claims against the Debtor in the District Court Case is in the interest of judicial economy because the District Court has been involved with the case since its filing in May 2015.

Courts consider the relative amount of fees in the foreign proceeding as compared to the bankruptcy action and the amount of time and resources it would require the bankruptcy court to become fully apprised of the issues in the foreign action. *In re Baleine, LP*, at *11. Here, the District Court gained familiarity with all aspects of the District Court Case (as well as the Tiger Action) including the interrelated regulatory and legal issues and the complex discovery background.

Addressing UET's claims before the Bankruptcy Court would not further judicial economy given the time and resources that would be required to onboard a new judge to become familiar with the complex legal and factual issues, as well as the complicated discovery background, of the case. Lifting the stay will also prevent the parties from litigating the case in piecemeal fashion. *See In re Baleine, LP,* at *11. Further, at the conclusion of the District Court action, the Bankruptcy Court can determine priority issues and how to divide the assets of the estate. *See In re Baleine, LP,* at *11 (affirming that it is "more appropriate" for the non-bankruptcy court "to first determine the non-bankruptcy issues, *i.e.*, whether a claim exists and the damages therein, if any. After such determination, then the bankruptcy issues become relevant.") Granting relief from the stay would efficiently liquidate UET's claims against all defendants in one forum.

## H. PROGRESS OF LITIGATION IN THE DISTRICT COURT CASE

Prior to the commencement of Debtor's Chapter 11 case, the District Court scheduled trial to begin on March 11, 2019 (just six weeks after PG&E filed its Petition before this Court), with all significant motions practices resolved. Indeed, the District Court developed a particular expertise in the technology involved, the legal theories at issue, and the various discovery issues between the parties. Accordingly, this factor heavily weighs in favor of granting relief from the automatic stay.

## I. A BALANCING OF THE RELATIVE HARDSHIPS WEIGHS IN FAVOR OF GRANTING RELIEF FROM STAY

The balance of the hardships tilts sharply in favor of granting UET relief from the automatic stay to liquidate their claims in the District Court Case as the litigation has already proceeded through discovery and to the pre-trial phase. It would be impractical for the Bankruptcy Court to address the claims at issue in the District Court Case due to the nature of the claims and progress of the case in the District Court.

While the Debtor may incur litigation expenses, incurrence of litigation expenses does not weigh against the liquidation of tort claims in another forum. *See In re Todd Shipyard*, *supra*, at 603. The Debtor would not experience significant hardship in proceeding with the District Court Case at this juncture; the hardship, instead, lies with UET, who has spent the last four years litigating this case to the brink of trial, only to be stayed by Debtor's Chapter 11 case. The on-going nature of PG&E's fraudulent acts exacerbate the hardship to UET.

PG&E's progress before this Court underscores the hardship to UET and the lack of hardship to PG&E itself. Here, the Court recently ended the exclusivity period to allow certain creditors to submit a plan (Dkt. 4167) and denied PG&E's recent motion to extend its exclusivity period (Dkt. 4005). That is, the Court has provided PG&E a full and fair opportunity to assemble and propose its plan without distraction from other litigation. Accordingly, the passage of time irradiated whatever hardship PG&E may have felt, and now appears to be opportune for permitted UET relief.

Therefore the Court should grant UET's Motion for Relief from Stay and allow the District Court Case to proceed.

## VI. CONCLUSION

For the foregoing reasons, and based upon the evidence set forth in this Motion, the Court should grant relief from the automatic stay to allow UET to pursue its claims against the Debtor in the District Court Case.

DATED: October 18, 2019

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:   /s/ *Leah E. Capritta*
      Leah E. Capritta

*Attorneys for United Energy Trading, LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

#70925783_v3

13
MOTION FOR RELIEF FROM THE AUTOMATIC STAY