CAIRNCROSS & HEMPELMANN
JOHN RIZZARDI (*pro hac vice* pending)
CHRISTOPHER L. YOUNG (*pro hac vice* pending)
524 Second Avenue, Suite 500
Seattle, WA 98104-2323
Telephone: 206-254-4444
Facsimile: 206-587-2308
JRizzardi@cairncross.com
CYoung@cairncross.com
*Attorneys for Plaintiff*

THOMAS MELONE (*pro hac vice*)
ALLCO RENEWABLE ENERGY LIMITED
1740 Broadway, 15th Floor
New York, NY 100195
Telephone: (212) 681-1120
Facsimile: (801) 858-8818
Thomas.Melone@AllcoUS.com
*Attorneys for Plaintiff*

FUTTERMAN DUPREE DODD CROLEY MAIER LLP
JAMIE L. DUPREE (158105)
JAIME G. TOUCHSTONE (233187)
601 Montgomery Street, Suite 333
San Francisco, CA 94111
Telephone: (415) 399-3906
Facsimile: (415) 399-3838
jdupree@fddcm.com
jtouchstone@fddcm.com
*Local Attorneys for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors, | Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered) |
| WINDING CREEK SOLAR LLC, FOOTHILL SOLAR LLC, HOLLISTER SOLAR LLC, VINTNER SOLAR LLC, BEAR CREEK SOLAR LLC, and ALLCO RENEWABLE ENERGY LIMITED<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Defendant. | **Adv. Pro. No. 19-\_\_\_\_\_ (DM)**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

## NATURE OF THE ACTION

1. This case concerns the Plaintiffs' right to sell energy and capacity from its solar electric generating facilities to Pacific Gas and Electric Company ("PG&E") pursuant to section 210 of the Public Utility Regulatory Policies Act, Pub. L. No. 95-617, 92 Stat. 3117 ("PURPA"), Cal. Pub. Util. Code section 399.20, and PG&E's filed tariffs.

2. The Plaintiffs offered to sell the energy and capacity for a 20-year term from various solar generating facilities to PG&E using contracts and rates published under PG&E tariffs that were in effect when the offers were made. Those tariffs were implemented by PG&E in order to comply with its independent obligations under its "must-take" obligation imposed by federal and state law under section 210 of PURPA and Cal. Pub. Util. Code section 399.20. When Plaintiffs' made those offers a legally enforceable obligation was formed obligating PG&E to purchase the energy and capacity at those rates and terms.

3. PG&E refused to execute written contracts evidencing its obligation to purchase the energy and capacity from those facilities for one simple reason—the PG&E tariffs included an unlawful attempt to cap its "must-take" obligation to purchase.

4. The cap on PG&E's obligation to purchase energy and capacity from Plaintiffs' facilities has now been declared unlawful. *See Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 2017 U.S. Dist. LEXIS 201893 (N.D. Cal. Dec. 6, 2017) (Donato, J.) *aff'd, Winding Creek Solar LLC v. Peterman*, 932 F.3d 861 (9th Cir. 2019). *Id.* at 865 (a "cap on the amount of energy utilities must purchase from QFs is impermissible under PURPA's must-take provision. [With a cap], a utility could purchase less energy than a QF makes available, an outcome forbidden by PURPA.")

5. Plaintiffs bring this action seeking damages, and in the alternative for injunctive relief requiring PG&E to enter into the contracts the Plaintiffs were entitled to receive but for the unlawful cap.

**PARTIES**

6. Plaintiff Winding Creek Solar LLC ("Winding Creek") is the owner and developer of a 1.0-megawatt solar project located at 17016 North Jack Tone Road in Lodi, California ("the Lodi facility"). Allco Finance Limited is the sole member of Plaintiff.

7. Plaintiffs Foothill Solar LLC, Kettleman Solar LLC, Hollister Solar LLC, Vintner Solar LLC, Bear Creek Solar LLC and Allco Renewable Energy Limited are the respective owners and developers of the solar electric generating facilities listed on Exhibit A attached hereto.

8. Each Plaintiff is a "qualifying small power producer" because each is the "owner" of a "qualifying small power production facility." 16 U.S.C. § 796(17)(D). Each facility is a "qualifying small power production facility" or "QF."[1]

9. Defendant Pacific Gas and Electric Company is an investor-owned utility providing electric service throughout northern and central California.

**JURISDICTION AND VENUE**

10. This adversary proceeding arises in and relates to PG&E's Chapter 11 Case. The Court has jurisdiction to consider this adversary proceeding and over the claims against PG&E pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Plaintiffs consent to the entry of a final order by the Court in connection with this adversary proceeding to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[1] "[Q]ualifying small power production facilit[ies]" under the statute and "Qualifying Facilities" or "QFs" under regulations of the Federal Energy Regulatory Commission (the "FERC"), *see* 16 U.S.C. §796(17)(C); 18 C.F.R. §292.203.

3

## STATUTORY AND REGULATORY FRAMEWORK

11. Through the Federal Power Act, Congress occupied the field of wholesale electricity sales and assigned to the Federal Power Commission – now the Federal Energy Regulatory Commission ("FERC") – exclusive authority to regulate that field. *See* 16 U.S.C. § 824(b)(1).

12. In 1978, Congress enacted PURPA, which amended the Federal Power Act. Congress's purpose in enacting PURPA was to facilitate the development of renewable energy generation and to reduce the country's reliance on fossil fuels.

13. Prior to the enactment of PURPA, small renewable energy generators had difficulty finding buyers for their output because electric utilities were reluctant to purchase power from non-traditional generation facilities. PURPA addressed that problem by directing FERC to adopt rules *requiring* electric utilities to purchase power generated by, among others, "qualifying small power production facilities," 16 U.S.C. § 824a-3(a), which include facilities designed to produce electricity solely through the use of a renewable fuel source, such as Plaintiffs' facilities.

14. Pursuant to PURPA's directive, FERC provided in its regulations that "[e]ach electric utility shall purchase … any energy and capacity which is made available from a qualifying facility … [d]irectly to the electric utility." 18 C.F.R. § 292.303(a). A utility's obligation to purchase all the output of a qualifying facility that is interconnected with its distribution network is known as a "legally enforceable obligation," or as the Ninth Circuit describes it—PURPA's "must-take" obligation. *See, Winding Creek Solar LLC v. Peterman*, 932 F.3d 861, 865 (9th Cir. 2019). Once the utility's legally enforceable or "must-take" obligation is triggered, the utility becomes bound to purchase any electricity the qualifying facility produces.

15. In California and elsewhere, state regulatory commissions have implemented PURPA by requiring the utility, in light of its must-take obligation, to enter into a power purchase

agreement with the qualifying facility, in which the utility commits to purchase the qualifying facility's electricity for a defined contract term.

16. PURPA also directed FERC to promulgate rules ensuring that "in requiring any electric utility to offer to purchase electric energy from any … qualifying small power production facility, the rates for such purchase" shall not "exceed[] the incremental cost to the electric utility of alternative electric energy." 16 U.S.C. § 824a-3(b).

17. Pursuant to that statutory directive, FERC promulgated a regulation providing that "[r]ates for purchases from new capacity" – that is, from facilities constructed after PURPA's enactment, § 292.304(b)(1) – "shall be in accordance with paragraph (b)(2) of this section," that is, equal to, and not less than, the utility's avoided costs. *Id.* § 292.304(b)(4).

18. FERC's regulations also detail the methodologies that must be used in determining a utility's avoided costs, and provide that the qualifying facility has the option to choose which of two methodologies shall be used in calculating the utility's avoided costs. *Id.* § 292.304(d). When a qualifying facility provides "energy or capacity pursuant to a legally enforceable obligation for the delivery of energy or capacity over a specified term, … the rates for such purchases shall, *at the option of the qualifying facility* exercised prior to the beginning of the specified term, be based on either: (i) The avoided costs calculated at the time of delivery; or (ii) The avoided costs calculated at the time the obligation is incurred." *Id.* § 292.304(d)(2) (emphasis added).

19. The first methodology – "[t]he avoided costs calculated at the time of delivery," *id.* § 292.304(d)(2)(i) – is known in the industry as a "short run avoided cost" ("SRAC") rate, because it can be determined only at the moment that electricity is delivered. Typically, the "short run avoided cost" is calculated on a month-to-month basis, and depends in part upon the fluctuating market price of natural gas or coal. The second methodology – "[t]he avoided costs calculated at the time the obligation is incurred," *id.* § 292.304(d)(2)(ii) – is known in the industry as a "long

1 run avoided cost" ("LRAC") rate, because it is determined at the time the utility incurs the purchase obligation, and is determined for the entire duration of the contract term. A utility's long-run avoided costs are typically calculated through the use of a mathematical model that projects the utility's anticipated avoided costs in the future, accounting for the many variables that might affect those avoided costs.

20. In this case, the PG&E tariffs specified the appropriate LRAC rate applicable at the time its "must-take" obligation to Plaintiffs' arose.

21. PURPA provides that each state's regulatory authority "implement [FERC]'s rule … for each electric utility for which it has ratemaking authority." 16 U.S.C. § 824a-3(f)(1). That provision constitutes a limited exception to FERC's exclusive regulatory authority over wholesale electricity sales. Aside from "implement[ing]" FERC's rules under PURPA, *id.*, however, state regulatory commissions enjoy no authority to regulate wholesale electricity sales.

*California's Implementation of PURPA*

22. AB 1969 was enacted in 2006 adding Section 399.20 to the California Public Utilities Code[2]. Section 399.20(c)(2006) required that all California electrical corporations file a tariff with the Public Utilities Commission (the "CPUC") to purchase the energy produced by an "electric generation facility", which, among other things, was a facility powered by renewable resources (such as solar and wind) and owned by a California water or wastewater public agency. Such a tariff is generically referred to as a feed-in tariff or "FIT" because renewable energy facilities are able to sell their energy to a utility at a fixed price over a long term such as 20 years. Under Section 399.20(e)(2006) each utility was required to make the tariff available to public water or wastewater agencies.

---

[2] AB 1969 (Yee) Stats. 2006, Ch. 731.

## FACTUAL ALLEGATIONS

23. On July 27, 2007, the CPUC issued Decision ("D.") 07-07-027 adopting tariffs and standard contracts for the purchase of the electricity from public agency water and wastewater customers. D.07-07-027 also adopted an additional program for PG&E and Southern California Edison ("SCE") only, based upon similar terms and conditions as the Section 399.20 program for entities that were not water/wastewater agencies (the "Pre-REMAT").[3]

24. In a series of orders in 2012 and 2013, the CPUC amended its PURPA program under section 399.20 and re-named it the Renewable Market Adjusting Tariff or "REMAT."

25. Both PURPA programs and the related PG&E tariffs—the Pre-REMAT and the REMAT—established the contract term—20 years—and the avoided cost prices. But both included the same unenforceable provision—a cap on PG&E's obligations to purchase from QFs, such as Plaintiffs'.

26. Plaintiffs were eligible for and timely submitted all the required contracts and information to PG&E to participate in the Pre-REMAT in 2013, triggering the "must-take" obligation. Plaintiffs were legally entitled to have PG&E execute the contracts for those facilities pursuant to the "must-take" obligation.

27. Plaintiff Winding Creek was eligible for and also timely submitted all the required contracts and information to PG&E to participate in the REMAT in 2013 for its Lodi facility triggering the "must-take" obligation. Plaintiff Winding Creek was legally entitled to have PG&E execute the contract for that facility pursuant to the "must-take" obligation.

28. But for the unlawful cap under the Pre-REMAT, Plaintiffs would have received a contract for each of their facilities listed on Exhibit A at the fixed 20-year rate in effect at that time.

---

[3] D.07-07-027 at 61.

29. But for the unlawful cap under the REMAT, Plaintiff Winding Creek would have received a contract for its Lodi facility at a fixed 20-year base rate of $89.23 per megawatt-hour (as adjusted for the then time-of-use rate).

30. PG&E's refusal to execute those contracts was unlawful and injured Plaintiffs because Plaintiffs have not been able to obtain financing for and construct their facilities, and have lost revenue for all their facilities, and have incurred costs that would not be recoverable without those contracts.

**FIRST CAUSE OF ACTION**
**CLAIM FOR DAMAGES UNDER PURPA, 16 U.S.C. § 824a-3 & 18 C.F.R. Part 292, CAL. PUB. UTIL. CODE § 399.20 AND PG&E'S TARIFFS**

31. Plaintiffs restate and incorporate by reference each and every allegation in Paragraphs 1 through 30 as if fully set forth herein.

32. Plaintiffs were eligible for and timely submitted all the required contracts and information to PG&E to participate in the Pre-REMAT and REMAT, which, under PURPA Section 210, 16 U.S.C. § 824a-3, as interpreted by *Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 2017 U.S. Dist. LEXIS 201893 (N.D. Cal., Dec. 6, 2017) (Donato, J.) *aff'd, Winding Creek Solar LLC v. Peterman*, 932 F.3d 861 (9th Cir. 2019, created a legally enforceable obligation for PG&E to purchase all electric power output from Plaintiffs from the time those legally enforceable obligations were formed at the avoided cost rate set by CPUC at the time the legally enforceable obligation was formed.

33. PG&E was required by PURPA's must-take obligation, 16 U.S.C. § 824a-3(a)(2) & 18 C.F.R. § 292.303(a), Cal. Pub. Util. Code § 399.20 and PG&E'S tariff to execute the contracts for Plaintiffs' facilities at the rates and terms in effect at the time the Plaintiffs triggered the "must-take" legally enforceable obligation.

34. But for the unlawful cap under the Pre-REMAT and REMAT and PG&E's tariffs, Plaintiffs would have received a contract for each of their facilities at the fixed 20-year rate in effect at that time.

35. PG&E refused at the time, and has continued to this day its refusal, to execute the contracts for each of their facilities at the fixed 20-year rate in effect at the time, Plaintiffs' triggered the ongoing and continuous "must-take" obligation. Plaintiffs relied on PG&E's "must-take" obligation in developing and expending costs for its facilities.

36. Under the contracts to which Plaintiffs were entitled they would have received revenue from electricity sales to PG&E in an amount in excess of $600 million.

37. Plaintiffs seek damages in the amount of such lost revenue, costs incurred and, in the alternative, an amount equal to the lost revenue after deducting the estimated cost to build and operate each such facility.

38. Plaintiffs seek the allowance of their claims in an amount equal to such damages, including, to the extent applicable, administrative priority expense claims.

## SECOND CAUSE OF ACTION
## CLAIM FOR INJUNCTIVE RELIEF UNDER PURPA, 16 U.S.C. § 824a-3 & 18 C.F.R. Part 292, CAL. PUB. UTIL. CODE § 399.20 AND PG&E'S TARIFF

39. Plaintiffs restate and incorporate by reference each and every allegation in Paragraphs 1 through 38 as if fully set forth herein

40. In the alternative to the damage remedy, Plaintiffs seek injunctive relief requiring PG&E to enter into contracts for the purchase of energy and capacity from Plaintiffs' facilities or similar alternate facilities at the same terms and prices in effect at the time under the Pre-REMAT or the REMAT, as the case may be, when Plaintiffs' triggered the ongoing and continuous "must-take" obligation.

9
ADVERSARY COMPLAINT OF WINDING CREEK SOLAR LLC, ET AL.
Case: 19-30088    Doc# 4324    Filed: 10/20/19    Entered: 10/20/19 07:35:47    Page 9 of 14

41. Such injunctive relief is appropriate because absent a damage remedy under Count I, the Plaintiffs would suffer irreparable injury.

42. Requiring PG&E to enter the contracts to which Plaintiffs were entitled does no harm to PG&E. It simply put the parties in the position from a contracting standpoint that they should have been in but for the illegal attempt at placing a cap on PG&E's "must-take" obligation.

43. Requiring PG&E to enter the contracts to which Plaintiffs were entitled serves the public interest. Here Congress has declared that the public interest lies in providing the maximum incentive for QF generation, such as Plaintiffs' facilities. It also serves the public interest's urgent need for the world to transition its energy systems away from fossil fuels.

As Judge Goodwin wrote four years ago,

> The current state of affairs . . . reveals a wholesale failure of the legal system to protect humanity from the collapse of finite natural resources by the uncontrolled pursuit of short-term profits. . . . [T]he modern judiciary has enfeebled itself to the point that law enforcement can rarely be accomplished by taking environmental predators to court. . . .
>
> The third branch can, and should, take another long and careful look at the barriers to litigation created by modern doctrines of subject-matter jurisdiction and deference to the legislative and administrative branches of government.

Alfred T. Goodwin, *A Wake-Up Call for Judges*, 2015 Wis. L. Rev. 785, 785-86, 788 (2015). Since Judge Goodwin wrote those words, United Nations scientists have made clear that we have only a decade to take unprecedented steps to reduce fossil fuel consumption.[4]

---

[4] The United Nations Intergovernmental Panel on Climate Change (IPCC) Special Report: *Global Warming of 1.5°C. An IPCC Special Report on the impacts of global warming of 1.5°C above pre-industrial levels and related global greenhouse gas emission pathways, in the context of strengthening the global response to the threat of climate change, sustainable development, and efforts to eradicate poverty.* https://www.ipcc.ch/sr15/.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter an Order:

    a.    Awarding damages in an amount to be proven at trial;

    b.    Allowing Plaintiffs' claims against the Debtors and their bankruptcy estates, as applicable, in the amount of such award of damages;

    c.    In the alternative to the damage remedy, Plaintiffs seek injunctive relief requiring PG&E to enter into contracts for the purchase of energy and capacity from Plaintiffs' facilities or similar alternate facilities at the same terms and prices in effect at the time under the Pre-REMAT or the REMAT, as the case may be;

    d.    Awarding Plaintiffs such further relief as the Court may deem just and equitable.

Dated: October 20, 2019                    Respectfully submitted,

                                          CAIRNCROSS & HEMPELMANN

By: /s/ John Rizzardi
JOHN RIZZARDI (*pro hac vice* pending)
CHRISTOPHER L. YOUNG (*pro hac vice* pending)
Email: JRizzardi@cairncross.com
CYoung@cairncross.com

Dated: October 20, 2019                    /s/ Thomas Melone
Thomas Melone (*pro hac vice*)
*Attorneys for Plaintiff*
Email: Thomas.Melone@AllcoUS.com

# EXHIBIT A

| LIST OF FACILITIES UNDER PRE-REMAT | | | |
|---|---|---|---|
| **Project Owner** | **Name of facility** | **Project size** | **Project Location (approximately)** |
| Allco Renewable Energy Limited | Kettleman Solar 2 | 1.5MW | 14241 East Kettleman Lane, Lodi, CA |
| Allco Renewable Energy Limited | Vintner Solar 2 | 1.5MW | 550 El Pomar Dr., Templeton, CA |
| Winding Creek Solar LLC | Winding Creek Solar | 1.0MW | 17018 North Jack Tone Road, Lodi, CA |
| Foothill Solar LLC | Hollister Solar 2 | 1.5MW | 1830 Buena Vista Road, Hollister, CA |
| Foothill Solar LLC | Vintner Solar 3 | 1.0MW | 552 El Pomar Dr., Templeton, CA |
| Kettleman Solar LLC | Corning Solar 1 | 1.5MW | 112 1st St., Corning, CA |
| Kettleman Solar LLC | Corning Solar 2 | 1.5MW | 108 1st St., Corning, CA |
| Hollister Solar LLC | Corning Solar 3 | 1.5MW | 23007 Aitken Ave., Corning, CA |
| Hollister Solar LLC | Corning Solar 4 | 1.5MW | 23065 Aitken Ave., Corning, CA |
| Vintner Solar LLC | Corning Solar 5 | 1.5MW | 23157 Aitken Ave., Corning, CA |
| Vintner Solar LLC | Corning Solar 6 | 1.5MW | 23049 Neva Ave., Corning, CA |
| Bear Creek Solar LLC | Corning Solar 7 | 1.5MW | 23149 Neva Ave., Corning, CA |
| Bear Creek Solar LLC | Corning Solar 8 | 1.5MW | 23008 Neva Ave., Corning, CA |
| Allco Renewable Energy Limited | Corning Solar 9 | 1.5MW | 23070 Neva Ave., Corning, CA |
| Allco Renewable Energy Limited | Corning Solar 10 | 1.5MW | 23130 Neva Ave., Corning, CA |
| Allco Renewable Energy Limited | Corning Solar 11 | 1.5MW | 23009 Florence Ave., Corning, CA |
| Allco Renewable Energy Limited | Corning Solar 12 | 1.5MW | 23061 Florence Ave., Corning, CA |
| Allco Renewable Energy Limited | Corning Solar 13 | 1.5MW | 23167 Florence Ave., Corning, CA |
| Kettleman Solar LLC | Madera County Solar 1 | 1.5MW | 12568 California 41, Madera, CA |
| Kettleman Solar LLC | Madera County Solar 2 | 1.5MW | 12484 California 41, Madera, CA |
| Hollister Solar LLC | Madera County Solar 3 | 1.5MW | 12362 California 41, Madera, CA |
| Hollister Solar LLC | Madera County Solar 4 | 1.5MW | 12257 California 41, Madera, CA |
| Vintner Solar LLC | Madera County Solar 5 | 1.5MW | 12155 California 41, Madera, CA |
| Vintner Solar LLC | Madera County Solar 6 | 1.5MW | 12085 California 41, Madera, CA |
| Bear Creek Solar LLC | Madera County Solar 7 | 1.5MW | 11969 California 41, Madera, CA |

ADVERSARY COMPLAINT OF WINDING CREEK SOLAR LLC, ET AL.

| Bear Creek Solar LLC | Madera County Solar 8 | 1.5MW | 11873 California 41, Madera, CA |
|---|---|---|---|
| Allco Renewable Energy Limited | Madera County Solar 9 | 1.5MW | 41258 Ave 12, Madera, CA |
| Allco Renewable Energy Limited | Madera County Solar 10 | 1.5MW | 41176 Ave 12, Madera, CA |
| Allco Renewable Energy Limited | Madera County Solar 11 | 1.5MW | 41128 Ave 12, Madera, CA |
| Allco Renewable Energy Limited | Madera County Solar 12 | 1.5MW | 41088 Ave 12, Madera, CA |
| Allco Renewable Energy Limited | Madera County Solar 13 | 1.5MW | 41036 Ave 12, Madera, CA |
| Kettleman Solar LLC | Chowchilla Solar 1 | 1.5MW | 24275 Road 16, Chowchilla, CA |
| Kettleman Solar LLC | Chowchilla Solar 2 | 1.5MW | 24309 Road 16, Chowchilla, CA |
| Hollister Solar LLC | Chowchilla Solar 3 | 1.5MW | 24347 Road 16, Chowchilla, CA |
| Hollister Solar LLC | Chowchilla Solar 4 | 1.5MW | 24381 Road 16, Chowchilla, CA |
| Vintner Solar LLC | Chowchilla Solar 5 | 1.5MW | 24417 Road 16, Chowchilla, CA |
| Vintner Solar LLC | Chowchilla Solar 6 | 1.5MW | 24451 Road 16, Chowchilla, CA |
| Bear Creek Solar LLC | Chowchilla Solar 7 | 1.5MW | 24487 Road 16, Chowchilla, CA |
| Bear Creek Solar LLC | Chowchilla Solar 8 | 1.5MW | 16011 Ave 24 1/2, Chowchilla, CA |
| Allco Renewable Energy Limited | Chowchilla Solar 9 | 1.5MW | 16043 Ave 24 1/2, Chowchilla, CA |
| Allco Renewable Energy Limited | Chowchilla Solar 10 | 1.5MW | 16093 Ave 24 1/2, Chowchilla, CA |
| Allco Renewable Energy Limited | Chowchilla Solar 11 | 1.5MW | 16141 Ave 24 1/2, Chowchilla, CA |
| Allco Renewable Energy Limited | Chowchilla Solar 12 | 1.5MW | 16187 Ave 24 1/2, Chowchilla, CA |
| Allco Renewable Energy Limited | Chowchilla Solar 13 | 1.5MW | 16231 Ave 24 1/2, Chowchilla, CA |
| Kettleman Solar LLC | Tracy Solar 1 | 1.5MW | 30006 S MacArthur Dr., Tracy, CA |
| Kettleman Solar LLC | Tracy Solar 2 | 1.5MW | 29992 S MacArthur Dr., Tracy, CA |
| Hollister Solar LLC | Tracy Solar 3 | 1.5MW | 29960 S MacArthur Dr., Tracy, CA |
| Hollister Solar LLC | Tracy Solar 4 | 1.5MW | 29872 S MacArthur Dr., Tracy, CA |
| Vintner Solar LLC | Tracy Solar 5 | 1.5MW | 29838 S MacArthur Dr., Tracy, CA |
| Vintner Solar LLC | Tracy Solar 6 | 1.5MW | 29756 S MacArthur Dr., Tracy, CA |
| Allco Renewable Energy Limited | Tracy Solar 7 | 1.5MW | 29686 S MacArthur Dr., Tracy, CA |
| Allco Renewable Energy Limited | Tracy Solar 8 | 1.5MW | 29627 S MacArthur Dr., Tracy, CA |

ADVERSARY COMPLAINT OF WINDING CREEK SOLAR LLC, ET AL.

| Allco Renewable Energy Limited | Tracy Solar 9 | 1.5MW | 29565 S MacArthur Dr., Tracy, CA |
| Allco Renewable Energy Limited | Tracy Solar 10 | 1.5MW | 29514 S MacArthur Dr., Tracy, CA |
| Allco Renewable Energy Limited | Tracy Solar 11 | 1.5MW | 29462 S MacArthur Dr., Tracy, CA |
| Allco Renewable Energy Limited | Tracy Solar 12 | 1.5MW | 29358 S MacArthur Dr., Tracy, CA |
| Allco Renewable Energy Limited | Tracy Solar 13 | 1.5MW | 29280 S MacArthur Dr., Tracy, CA |