Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel to the Official Committee of Tort Claimants*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** <br><br> **PG&E CORPORATION** <br><br> -and- <br><br> **PACIFIC GAS AND ELECTRIC COMPANY,** <br><br>           **Debtors.** <br><br> ☐ Affects PG&E Corporation <br><br> ☐ Affects Pacific Gas and Electric Company <br><br> ■ Affects both Debtors <br><br> *All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM) <br><br> Chapter 11 <br> (Lead Case) <br> (Jointly Administered) <br><br> **PLAN SCHEDULE STATEMENT OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS** <br><br> Date:    October 23, 2019 <br> Time:   9:30 a.m. (Pacific Time) <br> Place:  United States Bankruptcy Court <br>           Courtroom 17, 16th Floor <br>           San Francisco, CA 94102 |

The Official Committee of Tort Claimants ("**TCC**") in the chapter 11 cases ("**Cases**") of PG&E Corporation ("**Holdco**") and Pacific Gas and Electric Company (the "**Utility**," and collectively with Holdco, the "**Debtors**" or "**PG&E**"), hereby requests that the Court permit the TCC/Ad Hoc Bondholder ("**AHB**") joint plan of reorganization to proceed to confirmation before the Debtors' plan, and in support of its request respectfully represents the following:

1. The TCC started its responsibilities in these Cases with a mind open to working collaboratively with the Debtors. This was despite the warnings of wildfire claims lawyers that based on their experience they believed that the Debtors would not act fairly toward wildfire victims, even in their post-petition role as fiduciaries to victims.

2. Unfortunately, as the TCC and other parties in these Cases now realize, the Debtors have not and will not serve their fiduciary roles, but instead are single-mindedly facilitating the parochial interests of the investors to preserve the value of equity holdings. The Debtors have shown they cannot be trusted by this Court to steward the Cases as honest brokers.

3. Had the Debtors been acting as fiduciaries, they would have proposed a plan that provides that a resolution trust for wildfire claims will be funded with cash in the amount estimated by the Court or agreed to by the parties. That is the mandate of AB 1054.

4. Instead, the Debtors continue to insist on capping payment of the class designated in the plan as "Other Wildfire Claims" (consisting of victim and certain State and federal wildfire-related tort claims) at $8.4 billion (although with $6.9 billion committed financing) even though the outcome of the estimation will likely be far higher.

5. It is clear that the Debtors base their cap on the amount of financing they can raise without diluting equity value. This approach is backwards. The Debtors will not increase the amount as a result of mediation or settlement discussions because their goal is to preserve equity value. Debtors have chosen a litigation role to protect investors instead of a fiduciary role to protect victims.

6. In attempting to justify their public assertion of a low value of claims, the Debtors rely on the fig leaf of the advice of their litigation counsel and paid experts. With due respect to their skills, the Debtors' advisors consistently misconstrue applicable law.

7. Here is one example: Debtors' counsel sanctimoniously intones that under applicable California law, homeowners in Paradise, California, and other affected communities are limited in their recoveries to the lesser of diminution of value of their properties or replacement cost. Say a home destroyed in the Camp Fire had a value before the fire of $300,000, and now the uninhabitable lot is worth $25,000. PG&E values this victim's claim at the diminution value of $275,000 less any insurance received. In contrast, if this homeowner wants to rebuild, they are subject to years of delay because all municipal services of water, electricity, garbage collection, wireless networks, etc., have all been destroyed because 80% of the community was burned. The homeowner also faces surge pricing (which is not covered by insurance) for builders and other contractors because of the magnitude of the destruction of an entire community. The cost associated with delay and surge pricing is much higher than $275,000 and may ultimately result in a loss of use and replacement cost claim two to three times that amount. Recovery of the full amount it takes to restore the victim to what he had before the fire is reasonable and fair, in contrast to PG&E's lowball payment which results in undercompensated victims, economic waste of hundreds of uninhabitable lots and a windfall to PG&E.

8. Debtors' litigation counsel referred to a hypothetical $1,000,000 damages claim by Camp Fire victims in open court a hearing last summer, implying that the amount is excessive and presumably driven by greed. **But, why should a Camp Fire victim be limited to a $275,000 diminution award when PG&E deprived them of the choice to immediately rebuild their home by burning down their entire town**? Those who moved were forced to. California law does not support PG&E's low number and PG&E knows it.

9. These legal and factual issues among others will be addressed by the district court in the estimation proceedings if the Debtors' plan goes forward. For this Court's edification, though, the disposition in favor of victims of the damages issue described above alone is worth over a billion dollars. Even more egregious is PG&E's miniscule valuation of people's emotional distress from fleeing walls of flames and facing death. PG&E treats this element of damage as though the victims' experience was no more traumatic than being in a fender bender. PG&E's litigation position on trauma is truly disgraceful.

10. Instead of squarely facing the legal and moral deficiencies of their litigation positions (arguing that inverse condemnation doesn't apply to an IOU is another loser), the Debtors hawk their lowball estimate to the press, California Public Utilities Commission, Legislature and Governor of the State of California without shame in order to sell their plan and salvage equity value. That, and disparage the AHB hedge funds, as though the hedge funds whose interests they are protecting are any different. And, finally, accuse victims and their lawyers of being greedy, and rely on the hope that victims will not find their way to file claims (the "participation rate" bugaboo). The Court should not allow such behavior by fiduciaries.

- 4 -

11. The TCC contends that the Debtors' refusal to propose a plan that pays victims in whatever amount the estimation shows is owed is a breach of fiduciary duty and disqualifies the Debtors' plan from consideration on a schedule having primacy or equality with the TCC/AHB plan. The most valid path forward is a fast track of the TCC/AHB plan.

12. The TCC doesn't assert that there is a perfect solution for victims, ratepayers and the State of California to PG&E's mismanagement of its electrical system. The TCC has only been able to conclude that the hopes for fairness it brought to the bankruptcy process in February 2019 will never be realized with these Debtors in control.

Dated: October 21, 2019

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Cecily A. Dumas*
      Cecily A. Dumas

*Counsel to the Official Committee of Tort Claimants*