**Exhibit A**

**Willkie Letter**

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 21, 2019

**VIA EMAIL**

| | | |
|---|---|---|
| Robert A. Julian<br>Cecily A. Dumas<br>Baker & Hostetler LLP<br>1160 Battery Street, Suite 100<br>San Francisco, CA 94111 | Dennis F. Dunne<br>Samuel A. Khalil<br>Milbank LLP<br>55 Hudson Yards<br>New York, NY 10001 | Michael S. Stamer<br>David H. Botter<br>Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036 |
| Andrew I. Silfen<br>Beth M. Brownstein<br>Arent Fox LLP<br>1301 Avenue of the Americas, 42nd Floor<br>New York, NY 10019 | Joseph H. Hunt<br>Ruth A. Harvey<br>P.O. Box 875<br>Ben Franklin Station<br>Washington, DC 20044-0875 | Xavier Becerra<br>Margarita Padilla<br>1515 Clay Street, 20th Floor<br>P.O. Box 70550<br>Oakland, CA 94612-0550 |
| Rebecca J. Winthrop<br>Norton Rose Fulbright US LLP<br>555 South Flower Street, 41st Floor<br>Los Angeles, CA 90071 | Timothy S. Laffredi<br>United States Department of Justice<br>Office of the U.S. Trustee<br>450 Golden Gate Avenue, Suite 05-0153<br>San Francisco, CA 94102 | |

Re:   In re PG&E Corp. and Pacific Gas and Electric Company, Case No. 19-30088 (DM)

Dear Counsel:

We have reviewed your objections to the pending motion to approve the settlement of subrogation claims and associated restructuring support agreement between the PG&E Corporation and Pacific Gas and Electric Company (the "Debtors") and the holders of subrogation claims (the "RSA"). In an effort to limit the issues in dispute ahead of this week's hearing, the Ad Hoc Subrogation Group makes the following representations, which we understand to be consistent with the Debtors' understanding of the RSA. With the following clarifications, we hope to address many of the concerns raised in your objections, and therefore significantly narrow the issues that need to argued before the Court:

1. ***Plan Negotiations/Global Settlement:*** Consistent with Judge Montali's stated desire to "facilitate negotiations for a global resolution and narrow the issues which are in

legitimate dispute,"[1] nothing in the RSA precludes the Debtors and the Ad Hoc Subrogation Group from negotiating together with any other creditor constituencies or participating in mediation to achieve global consensus. In fact, the settlement of subrogation claims for $11 billion resolves one of the few remaining major open issues, and brings the cases one step closer to resolution.

2. *Consequences of Insolvency:* It was never the parties' intention to require the Debtors to file a plan that would pay subrogation claimants $11 billion in cash on $11 billion of allowed claims if the Debtors are insolvent. Therefore, we are willing to clarify in an amendment to the RSA or the order approving the RSA, that if the Court determines the Debtors are insolvent, the Debtors will no longer be required to:

   a. file a plan that pays subrogation claimants $11 billion in cash on $11 billion of allowed claims;

   b. require that individual claimants in connection with a voluntary settlement release made whole claims per section 3(a)(iii) of the RSA for the portion of their allowed claims against the Debtors' estates that are not fully satisfied under the revised plan; or

   c. pursue a plan or confirmation order with the finding set forth in section 3(a)(v)(A) of the RSA.[2]

If the Court determines the Debtors are insolvent and the Debtors file a revised plan that does not pay the subrogation claimants $11 billion in cash, the Consenting Creditors would be free to vote for or against any such revised plan. For the avoidance of doubt, subject to the right to terminate the RSA and seek a higher claim as provided in the RSA, the subrogation claims will continue to be allowed in the aggregate amount of $11 billion.

3. *Releases:* Three clarifications with respect to the releases referenced in section 3(a)(iii) of the RSA and Section 10.9(b) of the draft plan attached to the RSA:

---

[1] *Order Granting Joint Motion of the Official Committee of Tort Claimants and the Ad Hoc Committee of Senior Unsecured Noteholders to Terminate the Debtors' Exclusive Periods Pursuant ot Section 1121(d)(1) of the Bankruptcy Code* [Docket No. 4167].

[2] Section 3(a)(v)(A) of the RSA provides as follows:

Subject to the terms and conditions hereof, for the duration of the Support Period, the Company shall . . . (v) propose and pursue the Plan and seek entry of a Confirmation Order that contain (and the Plan and Confirmation Order shall contain) the following provisions, findings and orders, as applicable in substantially the form set forth below (the "Findings and Orders"): (A) the Bankruptcy Court "has determined that the resolution of the insolvency proceeding provides funding or establishes reserves for, provides for assumption of, or otherwise provides for satisfying any prepetition wildfire claims asserted against the electrical corporation in the insolvency proceeding in the amounts agreed upon in any pre-insolvency proceeding settlement agreements or any post-insolvency settlement agreements, authorized by the court through an estimation process or otherwise allowed by the court."

*First.* As previously communicated to counsel to the Official Committee of Tort Claimants (the "TCC") in person at the October 7 hearing, and in writing by letter dated October 8, the releases of subrogation claim holders are intended to narrowly address claims related to the bankruptcy and the Debtors' restructuring and any made whole claims that may be asserted relating to the 2017 and 2018 wildfires by individual plaintiffs who elect to settle their claims against the Debtors or a post-effective date trust (individually or as a group). There is no intention to impose a release of ordinary-course insurance claims by insureds arising under their insurance policies.

*Second.* The Ad Hoc Subrogation Group would support revising the Debtors' plan to require claimants to opt-in to releases, consistent with the Bondholders/TCC's plan, at least with respect to any release of subrogation claimants under the plan.

*Third.* Per section 3(a)(iii) of the RSA, payments to individual holders of wildfire claims that *settle* their claims against the Debtors or a post-effective date trust (individually or as a group) will be conditioned on executing a release of any made whole claims against insurers and their assignees. Individual plaintiffs that litigate their claims to judgment will have no such requirement. We expect to work with the TCC to ensure the form release is drafted to narrowly address only its intended purpose.

4. **RSA Amendments:** material RSA amendments will be noticed to the Court and parties in interest with an opportunity to respond, to make sure any material adjustment to the settlement passes muster under the applicable legal standard.

Very truly yours,

Matthew A. Feldman

CC: Stephen Karotkin, Esq.
Kevin Orsini, Esq.
Ad Hoc Subrogation Group Steering Committee