**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Louis Gottlieb
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
140 Broadway
New York, New York 10005

*Lead Counsel to Lead Plaintiff and the Proposed Class*

**MICHELSON LAW GROUP**
Randy Michelson (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, California 94104

*Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin *(pro hac vice)*
Andrew Behlmann *(pro hac vice)*
One Lowenstein Drive
Roseland, New Jersey 07068

*Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

*Additional counsel listed on Exhibit A*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and –<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors.<br><br>☒ Affects Both Debtors<br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company | Case No. 19-30088 (DM) (Lead Case)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br><br><br>**SECURITIES LEAD PLAINTIFF'S LIMITED OBJECTION TO FOURTH MONTHLY FEE STATEMENT OF SIMPSON THACHER & BARTLETT LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF JULY 1, 2019 THROUGH JULY 31, 2019 [ECF NO. 4032]**<br><br>**Objection Deadline:** October 21, 2019<br>4:00 PM<br><br>(No hearing set) |

Public Employees Retirement Association of New Mexico ("Lead Plaintiff" or "PERA"), the court-appointed lead plaintiff in the securities class action captioned as *In re PG&E Corporation Securities Litigation*, Case No. 18-03509 (the "Securities Litigation") pending in the U.S. District Court for the Northern District of California (the "District Court"), on behalf of itself and the proposed class it represents in the Securities Litigation (the "Class"), together with York County on behalf of the County of York Retirement Fund, City of Warren Police and Fire Retirement System, and Mid-Jersey Trucking Industry & Local No. 701 Pension Fund, hereby submit this limited and continuing objection (the "Limited Objection") to the *Fourth Monthly Fee Statement of Simpson Thacher & Bartlett LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period of July 1, 2019 Through July 31, 2019* (the "Fourth Fee Statement") [ECF No. 4032] filed by Simpson Thacher & Bartlett LLP ("Simpson Thacher") in connection with its representation of certain defendants in the Securities Litigation who are current and former independent directors (the "Independent Director Defendants") of the debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). In support of this Limited Objection, Lead Plaintiff relies upon the declaration of Ty R. Sagalow submitted herewith (the "Sagalow Decl.") and respectfully states as follows:

## PRELIMINARY STATEMENT

Through its Fourth Fee Statement, Simpson Thacher seeks interim payment from the Debtors on account of at least $28,741 of legal fees for services provided to certain of the Independent Director Defendants in connection with their defense in the Securities Litigation during the month of June 2019 (the "Disputed Fees"). Payment of the Disputed Fees on behalf of the Independent Director Defendants is impermissible because the Debtors' alleged obligation to indemnify the Independent Director Defendants gives rise to, at best, unsecured prepetition claims subject to subordination pursuant to section 510(b) of the Bankruptcy Code. Payment of such claims during the Debtors' bankruptcy cases violates the absolute priority rule and would prejudice Lead Plaintiff and the Class, whose claims are of greater or equal priority to the Independent Director Defendants' alleged indemnification claims and are not anticipated to be paid in full as will the Debtors' other, senior creditors. Further, Lead Plaintiff believes that

resolution of this issue can simplify and focus insurance coverage issues and therefore improve the chances of settlement of the Securities Litigation against the Individual Defendants.

On the other hand, denial of Simpson Thacher's request for payment of the Disputed Fees will not prejudice the Independent Director Defendants in any way or leave them without a source of payment for their defense costs. Under the terms of the Debtors' D&O liability insurance policies, the Independent Director Defendants' reasonable and necessary defense costs, are covered directly by substantial "Side A" insurance *from the first dollar* if the Debtors do not indemnify the Independent Director Defendants (which, as discussed below, they cannot). The Debtors, as debtors in possession, owe fiduciary duties to all creditors, including Lead Plaintiff and the Class. While the Disputed Fees in the Fourth Fee Statement may not yet be particularly significant in the context of this case, the Independent Director Defendants' legal fees in the Securities Litigation are certain to grow as the Securities Litigation proceeds. Squandering estate assets by paying legal fees where first-dollar insurance coverage is available, instead of pursuing payment from that insurance, contravenes those duties. Accordingly, the Court should enter an order (a) finding that the Debtors are prohibited, as a matter of law, from paying the Disputed Fees or any other defense costs incurred by the Independent Director Defendants or any other non-Debtor defendants in the Securities Litigation and (b) directing the Debtors and Independent Director Defendants to seek payment of reasonable and necessary fees from their D&O insurance carriers under the "Side A" coverage.

## BACKGROUND

### A. The D&O Policies

According to the Debtors, two towers of directors' and officers' liability insurance policies issued in 2017 and 2018 (the "D&O Policies") potentially provide coverage for the claims asserted against the Independent Director Defendants and other individual non-Debtor defendants in the Securities Litigation (collectively with the Independent Director Defendants, the "Individual Defendants").[1] *See* Decl. of Elizabeth Collier (the "Collier Decl.") [Adv. Pro.

---

[1] Lead Plaintiff does not believe that coverage with respect to the Securities Litigation is limited to any one tower of D&O Policies and reserves all rights with respect thereto.

No. 19-03039, ECF. No. 3], ¶ 7. The D&O Policies provide three types of insurance coverage ("D&O Coverage"): (a) directly to the Individual Defendants, for losses that the Debtors do not indemnify ("Side A"); (b) to the Debtors, for losses they incur indemnifying the Individual Defendants ("Side B"); and (c) to the Debtors, for losses they incur on account of securities claims made directly against them ("Side C"). *Id.*, Exs. F and G, at 4.

**B. The D&O Policies provide Side A D&O Coverage directly to the Individual Defendants.**

The D&O Policies explicitly provide Side A D&O Coverage directly to the Individual Defendants, not to or through the Debtors. *Id.*, Ex. F and Ex. G, at 4 ("The INSURER ***shall pay on behalf of the DIRECTORS and OFFICERS*** all ULTIMATE NET LOSS for which the INSURED ORGANIZATION has not provided indemnification. . . ."). The D&O Policies further provide that, in the event the Debtors become subject to "FINANCIAL IMPAIRMENT" (a defined term that includes the commencement of these Chapter 11 Cases), "the INSURER shall pay on behalf of the DIRECTORS AND OFFICERS, under [*Side A*], ULTIMATE NET LOSS which would have been indemnified by the INSURED ORGANIZATION but for such FINANCIAL IMPAIRMENT." *Id.* at 16-17.

**C. The D&O Policies have substantial coverage limits, including certain coverage available exclusively to the Individual Defendants.**

The 2017 and 2018 D&O Policies have aggregate coverage limits of $250 million and $300 million, respectively. *See* Decl. of Janaize Markland, [ECF No. 2472], ¶¶ 6, 8. Of that coverage, $50 million (2017) and $100 million (2018) is Side A difference-in-conditions coverage, which the Debtors have referred to as "D&O-dedicated insurance" because it is available exclusively to the Individual Defendants. *Id.* ¶¶ 6, 8.

All other coverage under all of the D&O Policies is subject to clauses that explicitly and fully subordinate all of the Debtors' rights to seek any D&O Coverage under Side B or Side C to the Individual Defendants' Side A D&O Coverage (the "Priority of Payments Clauses"). *See* Collier Decl., Exs. F and G, at 5-6 (section entitled "V. PRIORITY OF PAYMENTS" in 2017 and 2018 primary D&O Policies). The Priority of Payments Clauses explicitly provide that the D&O insurers must pay all claims under Side A before paying any claims under Side B or Side

C, which may be paid "only if and to the extent payment under [Side A] does not exhaust the applicable Limit of Liability." These clauses also expressly provide that where the Individual Defendants incur claims under Side A, the Debtors, even if acting as debtors in possession, "***shall have no interest in or any claim for any payments under this POLICY until***" all claims under Side A have been paid in full. *Id.*, Exs. F and G, at 6. Only then, if any coverage remains, could the Debtors seek Side B or Side C D&O Coverage. *Id.*

### D. The Side A D&O Coverage has no self-insured retention.

Under the express terms of the D&O Policies, the Side A D&O Coverage does not have a retention amount. *See* Collier Decl., Exs. F and G, at 2. Thus, even if the Debtors do not (because, as discussed below, they *cannot*) indemnify the Individual Defendants in connection with the Securities Litigation, the Independent Director Defendants have the immediate right to recover their reasonable and necessary defense costs directly from the insurers under the D&O Policies.

### E. The Simpson Thacher Retention Order

By order entered May 10, 2019 (the "**Simpson Thacher Retention Order**") [ECF No. 1979], the Court authorized the Debtors to pay certain legal fees of Simpson Thacher as counsel to certain current and former independent directors of the Debtors, including but not limited to fees "with respect to (i) representation in ongoing litigation and regulatory inquiries, including matters involving the California Public Utilities Commission, (ii) fact-gathering, and (iii) related matters." The debtors' motion seeking approval to pay Simpson Thacher's fees (the "**Simpson Thacher Retention Motion**" [ECF No. 1182] referred to certain pending litigation, regulatory inquiries, and criminal investigations and proceedings, *but made no mention whatsoever of the Securities Litigation*:

> Simpson Thacher was first engaged in December 2017 to advise the Independent Directors regarding legislation concerning dividends and related issues. Simpson Thacher also has been representing the Independent Directors regarding alleged breaches of fiduciary duties and other claims arising out of the 2017 and 2018 wildfires — including in pending derivative litigation which the plaintiff has asserted will not be stayed during the Chapter 11 Cases. See Plaintiff's Response to Nominal Defendants, PG&E Corporation, and Pacific Gas and Electric Company's Notice of

> Stay of Proceedings, Bowlinger v. Chew et al., No. CGC-18-572326 (Supp. Ct. S.F. City and Country, Feb. 5, 2019). In addition, Simpson Thacher continues to advise the Independent Directors concerning their fiduciary duties.

Simpson Thacher Retention Motion at 4. The Simpson Thacher Retention Motion then described a number of ongoing regulatory inquiries and criminal proceedings. *Id.* at 4-5. Nowhere in this description of the matters for which the Debtor sought authority to pay Simpson Thacher did they indicate that Simpson Thacher intended to seek payment for defense costs in the Securities Litigation through this procedure. The only statement anywhere in the Simpson Thacher Retention Motion that could be even tangentially related to the Securities Litigation was a statement that "[t]he Independent Directors have requested that Simpson Thacher represent and advise them in connection with" a number of categories of issues, including "shareholder and securities-related issues including litigation[.]" *Id.* at 6.

At the hearing on the Simpson Thacher Retention Motion, counsel for Lead Plaintiff expressly reserved rights with respect to payment from the D&O Policies of any defense costs arising in connection with the Securities Litigation – yet, counsel for the Debtors gave no indication whatsoever that they intended to pay any such fees directly from their estates. The first time Lead Plaintiff learned that the Debtors intended to pay the Independent Director Defendants' defense costs instead of appropriately seeking payment directly from Side A D&O Coverage was when the Debtors asserted as much in their reply in further support of their motion to enjoin the continued prosecution of the Securities Litigation against the Independent Director Defendants and other non-Debtors. *See* Reply, Adv. Pro. No. 19-03039 ECF No. 14, at 7. As a result, the Simpson Thacher Retention Order is ambiguous at best with respect to payment by the Debtors of the Independent Director Defendants' defense costs in the Securities Litigation and, in any event, should not be construed in a manner that will allow the Debtors to violate bankruptcy law and their fiduciary duties as debtors in possession.

## F. The Fourth Fee Statement

The following fifteen time entries in the Fourth Fee Statement, with a total billed amount of $28,741.00, relate directly to the Securities Litigation:

| Date | Professional | Narrative | Time | Amount |
|---|---|---|---|---|
| 7/19/2019 | Alcabes, Elisa | Re D&O insurance issues, review PERA opposition to motion to stay securities litigation (0.5). | 0.50 | $ 610.00 |
| 7/20/2019 | Alcabes, Elisa | Re D&O insurance issues, email PG&E (R. Reilly) re: PERA opposition (0.3). | 0.30 | $ 366.00 |
| 7/21/2019 | Alcabes, Elisa | Re D&O insurance issues, email P. Curnin and R. Perrin re: PERA opposition brief and call to discuss same (0.3). | 0.30 | $ 366.00 |
| 7/22/2019 | Alcabes, Elisa | Re D&O insurance issues, review/analyze D&O insurance policies re: arguments asserted in PERA opposition brief (1.0); email to P. Curnin and N. Goldin re: same (0.4); prepare for (0.3) and conference call w/ Weil (K. Kramer and others), P. Curnin, N. Goldin and Latham (R. Perrin) re: reply in further support of stay motion (0.5); follow-up t/cs w/ K. Kramer and N. Goldin re: same (0.4). | 2.60 | $ 3,172.00 |
| 7/22/2019 | Sparks Bradley, Rachel | Review filed opposition re: securities adversary proceeding (1.4); emails w/ N. Goldin and J. Calderon re: same (0.5). | 1.90 | $ 2,080.50 |
| 7/23/2019 | Calderon, Justin | Review securities plaintiffs' opposition to PG&E motion for preliminary injunction (0.9), incl. research of caselaw re: same (3.1). | 4.00 | $ 2,800.00 |
| 7/24/2019 | Alcabes, Elisa | Re D&O insurance issues, tc/email PG&E (R. Reilly) re: insurance issues for reply in further support motion to stay securities litigation (0.5). | 0.50 | $ 610.00 |
| 7/24/2019 | Sparks Bradley, Rachel | Emails w/ N. Goldin re: securities adversary proceeding (0.5); analysis re: same (0.4). | 0.90 | $ 985.50 |
| 7/24/2019 | Calderon, Justin | Further review securities plaintiffs' opposition to PG&E motion for preliminary injunction (0.5), incl. rsrch. of caselaw re: same (2.8). | 3.30 | $ 2,310.00 |
| 7/29/2019 | Alcabes, Elisa | Review/revise draft Reply in further support of stay of Securities Litigation re: D&O insurance arguments (4.7); tc/email company and team re: same (0.3). | 5.00 | $ 6,100.00 |
| 7/29/2019 | Calderon, Justin | Review and revise draft of reply brief ISO motion for preliminary injunction (2.8); email to R. Sparks Bradley re: same (0.2). | 3.00 | $ 2,100.00 |

| Date | Professional | Narrative | Time | Amount |
|---|---|---|---|---|
| 7/29/2019 | Sparks Bradley, Rachel | Review reply brief on adversary proceeding re: securities actions (0.9); emails w/ J. Calderon and E. Alcabes re: same (0.5). | 1.40 | $ 1,533.00 |
| 7/30/2019 | Alcabes, Elisa | Re D&O insurance, further revise draft Reply in further support of stay of Securities Litigation re: D&O insurance issues (1.0); email team re: same (0.3); email Weil team re: same (0.2). | 1.50 | $ 1,830.00 |
| 7/30/2019 | Calderon, Justin | Further review and revise draft of reply ISO motion for preliminary injunction (3.1). | 3.10 | $ 2,170.00 |
| 7/31/2019 | Alcabes, Elisa | Re D&O insurance, review revised draft Reply from Weil (K. Kramer) (0.7); prep mark- up re: same (0.5); email K. Kramer re: same (0.2). | 1.40 | $ 1,708.00 |
| | | | Total | $ 28,741.00 |

*See* Fourth Fee Statement, Ex. D, pp. 28-30.

## LIMITED OBJECTION

Because any indemnification claims against the Debtors by the Independent Director Defendants are unsecured, subordinated, pre-petition claims, the Debtors ***cannot*** indemnify the Independent Director Defendants during the pendency of the Chapter 11 Cases, including by paying the Disputed Fees on their behalf. Instead, the Independent Director Defendants should be required to pursue insurance coverage for their reasonable and necessary defense costs directly from the available Side A D&O Coverage.

**A.  The Independent Director Defendants' claims, if any, for payment of the Disputed Fees are prepetition claims.**

Any claims the Independent Director Defendants might assert for indemnification in connection with the Securities Litigation, including for payment of the Disputed Fees, are prepetition claims. *See, e.g.*, *Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525, 532-33 (9th Cir. 1998); *O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000) ("A claim arises, for purposes of discharge in bankruptcy, at the time of the events giving rise to the claim"); *The Official Comm. of Creditors Holding Unsecured Claims v. Painewebber Inc. (In re De Laurentiis Enter. Grp., Inc.)*, 124 B.R. 305, 308 (C.D. Cal. 1991) (claims for payment of attorneys' fees are a subset of indemnification claims). As a general rule, a claim is only entitled

to administrative expense priority if it arose from a postpetition transaction and substantially benefited the estate. *In re DAK Indus., Inc.*, 66 F.3d 1091, 1094 (9th Cir. 1995).

In *Siegel*, the Ninth Circuit discussed and relied upon its earlier holding, in *In re Christian Life Center*, 821 F.2d 1370 (9th Cir. 1987), that a postpetition indemnification claim based on prepetition services is a prepetition claim, not an administrative expense claim:

> Although the legal fees expended in defending a corporate officer in *In re Christian Life* were actually incurred post-petition, we held that the claim arose pre-petition because the corporation's obligation to indemnify the officer arose from pre-petition services, i.e., it was a form of compensation.
>
> In reaching that conclusion, we emphasized that "it makes no difference that the duty to indemnify the officer for litigation expenses . . . did not accrue until after the petition was filed when the officer incurred those expenses; ***the critical fact is that the claim for indemnity arose from pre-petition services the officer provided the corporation.***"

*Siegel*, 143 F.3d at 533 (quoting *Christian Life Center*, 821 F.2d at 1374) (emphasis added); *see also In re Baldwin-United Corp.*, 43 B.R. 443, 454-56 (S.D. Ohio 1984) (prohibiting advancement of officers' legal fees as an administrative expense under an indemnity agreement for prepetition services).

This area of law is well-settled. *See, e.g.*, *In re Huffy Corp.*, 424 B.R. 295, 305 (Bankr. S.D. Ohio 2010) ("Courts 'have almost universally held that a contractual right to indemnification is a prepetition contingent claim if the contract was executed before the bankruptcy filing.'") (collecting cases); *In re Downey Fin. Corp.*, 428 B.R. 595, 601 n.16 (Bankr. D. Del. 2010) ("Once an organization files for bankruptcy, the Bankruptcy Code prohibits the debtor from indemnifying the officers and directors on an ongoing basis. *See* 11 U.S.C. § 362(a)(3)."); *In re Mid-American Waste Systems, Inc.*, 228 B.R. 816 (Bankr. D. Del. 1999) (holding that the contractual claims of officers and directors for indemnity arose when the contract was executed and were therefore pre-petition, not administrative, claims); *In re Pennsylvania Truck Lines, Inc.*, 189 B.R. 331 (Bankr. E.D. Pa. 1995) (holding that a claim under a prepetition indemnification contract was a prepetition claim even though under applicable state law that claim did not accrue until after the petition date); *In re Amfesco Indus., Inc.*, 81 B.R.

777, 784-86 (Bankr. E.D.N.Y. 1988) (holding that current and former directors' claims for indemnification under a prepetition indemnification agreement were prepetition claims, not administrative expense claims, because the debtor's duty to indemnify arose from the directors' prepetition services and "[a]ll of the operative facts, legal relationships, and conduct of the Applicants upon which is based the threatened litigation occurred pre-petition").

The Ninth Circuit has reached the same result in the analogous context of a request for payment of postpetition attorneys' fees by a debtor pursuant to a provision in a prepetition contract, adopting a Bankruptcy Appellate Panel opinion holding that

> "So long as the right to collect the fees existed pre-petition, the fact that the fees were actually incurred during the postpetition period is not relevant to the determination of whether the creditor has an allowable pre-petition claim for the fees." . . . Postpetition fees can be fairly contemplated when the parties have provided for them in their contracts and thus are contingent claims as of the petition date. . . . As stated by one leading commentator: "In general, if the creditor incurs the attorneys' fees postpetition in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred."

*In re SNTL Corp.*, 571 F. 3d 826, 843-44 (9th Cir. 2009) (quoting *In re New Power Co.*, 313 B.R. 495, 508 (Bankr. N.D. Ga. 2004) and 5 COLLIER ON BANKRUPTCY § 553.03[1][i] (15th ed. 2007)) (adopting B.A.P. opinion).

Here, all of the operative facts, legal relationships, and conduct underlying the Securities Litigation occurred prior to the Petition Date. The charter provisions and board resolutions pursuant to which the Debtors seek to indemnify the Independent Director Defendants were all executed fifteen or more years before the Petition Date. *See* Collier Decl., Exs. B (utility articles of incorporation dated April 12, 2004), C (PG&E Corp. articles of incorporation dated May 29, 2002), D (utility board resolution dated July 19, 1995), and E (PG&E Corp. board resolution dated December 18, 1996). All of the Independent Director Defendants' conduct giving rise to the claims and causes of action asserted against them in the Securities Litigation occurred before the Petition Date.

Most importantly, any duty the Debtors may have to indemnify the Independent Director Defendants arises from their services as directors of the Debtors prior to the Petition Date. As a result, any indemnification claims the Non-Debtor Defendants might assert are ordinary, prepetition, unsecured claims subject to the same claims process as any other ordinary, prepetition, unsecured claims. *See, e.g.*, *In re All Seasons Resorts, Inc.*, 79 B.R. 901, 904 (Bankr. C.D. Cal. 1987) (the debtor's officers could "seek indemnification from [the] debtor, but their claim will be treated like any pre-petition, unsecured claim").

### B. The Independent Director Defendants' alleged indemnification claims are subordinated pursuant to section 510(b) of the Bankruptcy Code.

The claims and causes of action asserted in the Securities Litigation all arise from purchases and sales of securities of the Debtors. Thus, any claims the Independent Director Defendants might assert against the Debtors for indemnification in connection with the Securities Litigation would be statutorily subordinated to all secured, administrative, priority, and unsecured claims against the Debtors pursuant to 11 U.S.C. § 510(b), which provides:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, ***or for reimbursement or contribution allowed under Section 502 on account of such a claim***, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b) (emphasis added); *De Laurentiis*, 124 B.R. 305, 310 (C.D. Cal. 1991) (subordinating underwriter's claim for reimbursement of attorneys' fees incurred in defense of a securities action); *see also In re Touch Am. Holdings, Inc.*, 381 B.R. 95 (Bankr. D. Del. 2008) ("The plain language of this section is broad enough to include indemnification claims for both liabilities and expenses incurred on account of a claim for 'damages arising from the purchase or sale' of the debtor's or its affiliate's securities"); *In re Jacom Computer Servs.*, 280 B.R. 570, 572 (Bankr. S.D.N.Y. 2002) ("[Section] 510(b) intends to subordinate the indemnification claims of officers, directors, and underwriters for both liability and expenses incurred in connection with the pursuit of claims for rescission or damages by purchasers or sellers of the debtor's

securities."); *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816, 829 (Bankr. D. Del. 1999) (subordinating claims of debtor's officers, directors, and underwriters for indemnification of both liability and expenses resulting from securities action by purchasers and sellers of the debtor's securities).

Under Section 510(b), any indemnification claims the Independent Director Defendants might assert against the Debtors would be subordinated to all of PG&E's secured and unsecured funded debt, all administrative expenses and priority unsecured claims, all unsecured trade debt, and all wildfire-related personal injury and property damage claims, all of which must be paid in full before the Independent Director Defendants would be entitled to payment of any of their alleged indemnification claims.

### C. The Disputed Fees should be paid only from Side A D&O Coverage, to the extent they are reasonable and necessary.

As discussed above, the Independent Director Defendants' alleged claims for indemnification from the Debtors are – at the very most – subordinated, unsecured, prepetition claims that are unlikely to be paid in full through any chapter 11 plan.[2] As such, those claims *cannot* be paid by the Debtors during the Chapter 11 Cases, including indirectly through payment of the Disputed Fees on behalf of the Independent Director Defendants. Where the Debtors do not indemnify the Independent Director Defendants (here, because they *cannot* due to their bankruptcy filing), the Side A D&O Coverage provides insurance coverage directly to the Independent Director Defendants, paying their reasonable and necessary defense costs from the first dollar without the need for the Debtors to pay one cent out of pocket. *See* pp. 3-5 above; Sagalow Decl. ¶¶ 12-14. Accordingly, the Court should (a) find that the Debtors are prohibited, as a matter of law, from paying the Disputed Fees or any other defense costs incurred by the Independent Director Defendants or any other non-Debtor defendants in the Securities Litigation and (b) direct the Debtors and Independent Director Defendants to seek payment of their reasonable and necessary fees from the Side A D&O Coverage under the D&O Policies.

---

[2] Any potential indemnification claims may also be subject to disallowance if such claims remain contingent. *See* 11 U.S.C. § 502(e)(1)(B).

## RESERVATION OF RIGHTS

Lead Plaintiff objects to (a) allowance, on an interim or final basis, of any and all defense costs incurred by any non-Debtor defendants in the Securities Litigation, including but not limited to the Independent Director Defendants ("**Non-Debtor Defendant Defense Costs**") and (b) payment by the Debtors, on an interim or final basis, of any Non-Debtor Defendant Defense Costs except pursuant to a confirmed chapter 11 plan. Accordingly, this Limited Objection should be considered a continuing objection to future requests for allowance and/or payment from the Debtors' estates of defense costs by the Independent Director Defendants or any other non-Debtor defendants in the Securities Litigation, whether monthly, interim, or final. To the extent any of the legal fees sought by Simpson Thacher in the Fourth Fee Statement constitute Non-Debtor Defendant Defense Costs but were not itemized in this Limited Objection, such fees constitute Disputed Fees and Lead Plaintiff expressly objects to any allowance and/or payment thereof. Lead Plaintiff also objects to the Disputed Fees, and to any other defense costs for which any Defendants seek payment from the D&O Policies, to the extent that they are not deemed reasonable and necessary by the D&O insurers as required by the Side A D&O Coverage. Failure to identify any Non-Debtor Defendant Defense Costs in this Limited Objection does not constitute a waiver of any rights with respect thereto, including but not limited to the right to object to allowance and/or payment thereof in connection with any interim or final application for compensation.

## CONCLUSION

For all of the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter an order (a) finding that the Debtors are prohibited from paying the Disputed Fees or any other defense costs incurred by the Independent Director Defendants in the Securities Litigation and (b) direct the Debtors and Independent Director Defendants to instead seek payment of the Disputed Fees (to the extent reasonable and necessary), and any other reasonable and necessary defense costs incurred by the Independent Director Defendants in the Securities Litigation, from the Side A D&O Coverage under the D&O Policies.

Dated: October 21, 2019

**LOWENSTEIN SANDLER LLP**
**MICHELSON LAW GROUP**

By: _/s/ DRAFT_
Randy Michelson (SBN 114095)

*Bankruptcy Counsel to Lead Plaintiff and the Class*

# EXHIBIT A
## COUNSEL

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin (*pro hac vice*)
Andrew Behlmann (*pro hac vice*)
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone   973-597-2500
Facsimile   973-597-2333
metkin@lowenstein.com
abehlmann@lowenstein.com

**MICHELSON LAW GROUP**
Randy Michelson, Esq. (SBN 114095)
220 Montgomery Street, Suite 2100
San Francisco, CA 94104
Telephone   415-512-8600
Facsimile   415-512-8601
randy.michelson@michelsonlawgroup.com

*Bankruptcy Counsel to Lead Plaintiff and the Proposed Class*

**LABATON SUCHAROW LLP**
Thomas A. Dubbs
Louis Gottlieb
Carol C. Villegas
Jeffrey A. Dubbin (SBN 287199)
Aram Boghosian
140 Broadway
New York, New York 10005
Telephone   212-907-0700
tdubbs@labaton.com
lgottlieb@labaton.com
cvillegas@labaton.com
jdubbin@labaton.com
aboghosian@labaton.com

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
James M. Wagstaffe (SBN 95535)
Frank Busch (SBN 258288)
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone   415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Liaison Counsel for the Proposed Class*

*Lead Counsel to Lead Plaintiff and the Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Darren J. Robbins (SBN 168593)
Brian E. Cochran (SBN 286202)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone   619-231-1058
darrenr@rgrdlaw.com
bcochran@rgrdlaw.com

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Thomas C. Michaud
79 Alfred Street
Detroit, Michigan 48201
Telephone   313-578-1200
tmichaud@vmtlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
Willow E. Radcliffe (SBN 200089)
Kenneth J. Black (SBN 291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone   415-288-4545
willowr@rgrdlaw.com
kennyb@rgrdlaw.com

*Additional Counsel for the Securities Act Plaintiffs*

# EXHIBIT B
# RESERVATION OF RIGHTS

This Limited Objection and any subsequent pleading, appearance, argument, claim, or suit made or filed by Lead Plaintiff, either individually or for the Class or any member thereof, do not, shall not, and shall not be deemed to:

   a. constitute a submission by Lead Plaintiff, either individually or for the Class or any member thereof, to the jurisdiction of the Bankruptcy Court;

   b. constitute consent by Lead Plaintiff, either individually or for the Class or any member thereof, to entry by the Bankruptcy Court of any final order or judgment, or any other order having the effect of a final order or judgment, in any non-core proceeding, which consent is hereby withheld unless, and solely to the extent, expressly granted in the future with respect to a specific matter or proceeding;

   c. waive any substantive or procedural rights of Lead Plaintiff or the Class or any member thereof, including but not limited to (a) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment, or any other order having the effect of a final order or judgment, on any matter; (b) the right to have final orders and judgments, and any other order having the effect of a final order or judgment, in non-core matters entered only after de novo review by a United States District Court judge; (c) the right to trial by jury in any proceedings so triable herein, in the Chapter 11 Cases, including all adversary proceedings and other related cases and proceedings (collectively, "Related Proceedings"), in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, the Chapter 11 Cases, any Related Proceedings, or the Securities Litigation; (d) the right to seek withdrawal of the bankruptcy reference by a United States District Court in any matter subject to mandatory or discretionary withdrawal; or (e) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which Lead Plaintiff or the Class or any member thereof are or may be entitled under agreements, at law, in equity, or otherwise, all of which are expressly reserved.

For the avoidance of doubt, Lead Plaintiff, on behalf of itself and the Class, does not, and will not impliedly, consent to this Court's adjudication of, including through any order of this Court purporting to adjudicate, release, waive, enjoin, or otherwise impact, the claims of Lead Plaintiff and the Class or any member thereof against any defendant now or hereafter named in the Securities Litigation.