AKIN GUMP STRAUSS HAUER & FELD LLP

Michael S. Stamer (*pro hac vice*)
Ira S. Dizengoff (*pro hac vice*)
David H. Botter (*pro hac vice*)
Abid Qureshi (*pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone:     (212) 872-1000
Facsimile:     (212) 872-1002
Email:          mstamer@akingump.com
                idizengoff@akingump.com
                dbotter@akingump.com
                aqureshi@akingump.com

AKIN GUMP STRAUSS HAUER & FELD LLP

Ashley Vinson Crawford (SBN 257246)
580 California Street
Suite 1500
San Francisco, CA 94104
Telephone:     (415) 765-9500
Facsimile:     (415) 765-9501
Email:          avcrawford@akingump.com

*Counsel to the Ad Hoc Committee of Senior Unsecured
Noteholders of Pacific Gas and Electric Company*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>       **-and-**<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>                          Debtors.<br><br><br><br><br>☐ Affects PG&E Corporation<br><br>☐ Affects Pacific Gas and Electric Company<br><br>☒ Affects both Debtors<br><br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case)<br><br>(Jointly Administered)<br><br>**STATEMENT OF THE AD HOC COMMITTEE OF SENIOR UNSECURED NOTEHOLDERS REGARDING STATUS CONFERENCE ON COMPETING PLANS OF REORGANIZATION**<br><br><br><br>**Hearing**<br>Date:    October 23, 2019<br>Time:    10:00 a.m. (Pacific Time)<br>Place:   Courtroom 17<br>         450 Golden Gate Ave, 16th Floor<br>         San Francisco, CA 94102<br><br>**Re: Docket No. 4167, 4257** |

The Ad Hoc Committee of Senior Unsecured Noteholders of Pacific Gas and Electric Company (the "Ad Hoc Committee")[1] in the above-captioned chapter 11 cases of Pacific Gas and Electric Company (the "Utility") and PG&E Corporation ("PG&E" and, together with the Utility, the "Debtors"), by its undersigned counsel, Akin Gump Strauss Hauer & Feld LLP, hereby submits this statement in advance of the status conference scheduled for October 23, 2019 regarding the competing plans of reorganization. The Ad Hoc Committee respectfully states the following:

## STATEMENT

1.      It is in the best interests of the Debtors' estates, the tens of thousands of fire victims waiting for payment of their claims, as well as all other creditors of the estates, for a plan of reorganization that meets the requirements of A.B. 1054 to be confirmed well in advance of the June 30, 2020 deadline. In order to maximize the likelihood of satisfying the A.B. 1054 deadline, the Court should implement a confirmation schedule that allows the plan of reorganization jointly proposed by the Official Committee of Tort Claimants (the "TCC") and the Ad Hoc Committee (the "TCC/AHC Plan") [Docket No. 4257],[2] to proceed to solicitation and confirmation *ahead* of the Debtors' amended plan of reorganization (the "Debtor Plan") [Docket No. 3966].

2.      Pursuant to the Court's order terminating the Debtors' exclusive right to file and solicit a plan of reorganization (the "Exclusivity Decision") [Docket No. 4167], the parties met and conferred on a solicitation and confirmation schedule for the competing plans, but such effort was unsuccessful. It is clear that the parties disagree with respect to the timeline for these cases. The Debtors' proposed schedule would have the disclosure statement process and solicitation begin *after* the conclusion of the estimation proceeding currently pending in the District Court, which would result in a confirmation hearing beginning in early June, precariously close to the June 30, 2020 deadline under A.B. 1054. The reason the Debtors seek such an extended schedule is now abundantly clear: the financing for the Debtor Plan and, therefore, its viability, hinges entirely on a favorable result in the estimation proceeding and the Tubbs Fire trial pending in California Superior Court. However, the Debtors' and

---

[1]  The Ad Hoc Committee filed an amended verified statement pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure on October 21, 2019 [Docket No. 4369].

[2]  All capitalized terms used but not defined herein shall have the meanings ascribed to them in the TCC/AHC Plan.

their equity holders' strategy, which can only be successful if the Fire Victim Claims (including all claims of non-settling governmental/public entities) are estimated at less than $6.9 billion to comply with the financing commitments for the Debtor Plan,[3] jeopardizes the successful reorganization of the estates and forces the fire victims and other creditors to bear unacceptable risk solely to benefit the Debtors' shareholders.

3.      On the other hand, as this Court is aware, the TCC/AHC Plan and the committed financing for the plan, is not tied to a particular result being obtained in the estimation proceeding.  As the TCC/AHC Plan provides for a settlement of the aggregate amount of Fire Victim Claims, the plan can be confirmed by this Court pursuant to section 1129 of the Bankruptcy Code, without estimation. Under the Ad Hoc Committee's proposed timeline, as illustrated in Scenario 1 in **Exhibit A**[4] attached hereto, the TCC and Ad Hoc Committee can file a disclosure statement in early November, obtain approval of the disclosure statement in December, solicit votes immediately thereafter and proceed to confirmation of the TCC/AHC Plan *before* the start of the estimation trial.

4.      The merits of this approach are clear.  First, the more quickly a plan of reorganization is confirmed, the sooner the paramount goal of these cases, the assurance of a plan that pays the claims of the thousands of fire victims, can be achieved.

5.      Second, confirmation of the TCC/AHC Plan makes the estimation proceeding unnecessary.  As the Debtors asserted in touting their settlement with the Ad Hoc Subrogation Group, estimation "is likely to be a time consuming, expensive, and highly uncertain process involving complicated issues of state and federal law and fact specific issues relating to causation, liability, and damages involving not less than twenty-two separate wildfires and literally thousands of underlying individual loss claims."[5]  While the Debtor Plan would require the estimation of the Fire Victim

---

[3]  The Debtor Plan caps such claims at $8.4 billion.

[4]  For comparative purposes, Exhibit A also includes an illustrative timeline, which the Ad Hoc Committee believes would be similar to the timeline proposed by the Debtors, for simultaneous solicitation and confirmation of the competing plans that contemplates a June 3, 2020 commencement of the confirmation trial.

[5]  *Debtors' Motion Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 for Entry of an Order (I) Authorizing the Debtors to Enter into Restructuring Support Agreement with the Consenting Subrogation Claimholders, (II) Approving the Terms of Settlement with such Consenting Subrogation Claimholders, Including the Allowed Subrogation Claim Amount, and (III) Granting Related Relief* [Docket No. 3992], 22:26-23:1.

Claims, the TCC/AHC Plan obviates the need for estimation, thereby providing certainty to the plan process and ensuring the Debtors' timely emergence from chapter 11 long before June 30, 2020. To confirm the TCC/AHC Plan, all that is required in connection with the Fire Victim Claims is for this Court, in the exercise of its core jurisdiction, to find that the value provided to the Subrogation Wildfire Trust and the Fire Victim Trust is fair and equitable and, therefore, that the TCC/AHC Plan does not violate the absolute priority rule under section 1129(b) of the Bankruptcy Code. This issue is significantly narrower than the purpose of the estimation proceeding, which is to estimate all Fire Victim Claims to establish a binding cap. Moreover, the parties and this Court can utilize and benefit from the work that has already been performed to date in connection with estimation at a confirmation trial that can conclude before the estimation trial is even scheduled to begin on February 18.

6. Third, the TCC/AHC Plan unimpairs all Utility Senior Notes by (i) reinstating the Utility Long-Term Senior Notes and (ii) paying in full the Utility Short-Term Senior Notes, including postpetition interest at the applicable contract rate and a small makewhole premium.[6] This treatment resolves any controversy regarding the Utility noteholders' entitlement to vote and reduces significantly the amounts in dispute relating to postpetition interest and makewhole premiums. Specifically, the disputed amounts under the TCC/AHC Plan total approximately $38 million solely with respect to the Utility Short-Term Senior Notes, while under the Debtor Plan they total more than $5.8 billion for all of the Utility Senior Notes.[7] Rather than establish a separate litigation schedule for the postpetition interest and makewhole premium dispute, these issues can be effectively litigated in connection with confirmation of the TCC/AHC Plan. Therefore, proceeding with the TCC/AHC Plan avoids the need for high-stakes litigation over "sophisticated and rarified bankruptcy issues at the expense of paying fire victims." Exclusivity Decision, 3:4-6.

---

[6] The makewhole premiums payable under the TCC/AHC Plan total approximately $19 million to the holders of the Utility Short-Term Senior Notes Claims.

[7] There is additional postpetition interest payable under the TCC/AHC Plan in respect of other Funded Debt Claims (other than the Utility Senior Notes). The difference between the federal judgment rate and contract rate of interest for these other Funded Debt Claims is approximately $320 million. Such amounts are also *de minimis* in comparison to the amounts at issue under the Debtor Plan.

1    7.    Lastly, and of equal importance, the Ad Hoc Committee's approach provides sufficient

2    time for the CPUC's regulatory approval process.  If the CPUC is unable to complete its regulatory

3    process within the timeline proposed herein, the Ad Hoc Committee submits that post-confirmation

4    regulatory approval is already contemplated by the TCC/AHC Plan.

5    8.    Therefore, for the foregoing reasons, the Ad Hoc Committee respectfully requests that

6    the Court adopt the schedule proposed by the TCC and the Ad Hoc Committee and allow the

7    TCC/AHC Plan to proceed to solicitation and confirmation prior to the Debtor Plan and the estimation

8    proceeding required thereby.

9

10   Dated:  October 22, 2019          **AKIN GUMP STRAUSS HAUER & FELD LLP**

11

12   By: /s/ *Ashley Vinson Crawford*_____
          Ashley Vinson Crawford (SBN 257246)
          Michael S. Stamer (*pro hac vice*)
13        Ira S. Dizengoff (*pro hac vice*)
          David H. Botter (*pro hac vice*)
14        Abid Qureshi (*pro hac vice*)

15

16        *Counsel to the Ad Hoc Committee of Senior Unsecured*
          *Noteholders of Pacific Gas and Electric Company*

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

# Illustrative Chapter 11 Plan Solicitation and Confirmation Timelines

