WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088 (DM)<br>Chapter 11 (Lead Case)<br>(Jointly Administered)<br><br>**DEBTORS' PRELIMINARY RESPONSE TO PLAN SCHEDULING STATEMENT OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS**<br><br>[Related to Dkt. No. 4333]<br>Date: October 23, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>      Courtroom 17, 16th Floor<br>      San Francisco, CA 94102<br>Judge: Hon. Dennis Montali |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**"), submit this preliminary response to the Plan Schedule Statement of the Official Committee of Tort Claimants (the "**TCC**") [Docket No. 4333] (the "**TCC Statement**"). Earlier this morning, the Ad Hoc Noteholders Committee filed a similar "statement" with respect to which the Debtors reserve all rights.

What has become patently clear is that rather than engaging in a good faith effort to comply with the Court's directive to agree with the Debtors on (a) a briefing schedule as to the issues of the appropriate rate of postpetition interest and the applicability of make-whole premiums, and (b) a schedule as to how competing plans should move forward, the TCC and the Ad Hoc Noteholders Committee intentionally delayed and frustrated this effort in a strategic ploy designed to promote their attempt to move their competing plan forward ahead of the Debtors, after having stated to the Court that the competing plans should move forward together. Hr'g Tr. (Oct. 7, 2019), at 70: 13-21. They have done this because they are not satisfied with the termination of exclusivity; instead, the TCC and the Ad Hoc Noteholders Committee now seek to usurp exclusivity for themselves in direct contravention of section 1121 of the Bankruptcy Code.

Prior to the Court's decision lifting exclusivity, the Ad Hoc Noteholders Committee and the TCC had largely agreed to a briefing schedule concerning the postpetition interest and make-whole premium issues, as noted in Mr. Karotkin's letter to the Court, dated October 16, 2019, a copy of which is annexed hereto as **Exhibit A**. After the Court's exclusivity order, the Akin firm, counsel for the Ad Hoc Noteholders Committee, advised the Debtors that it was backing away from the foregoing schedule because it viewed circumstances as having changed by reason of the Court's termination of the Debtors' exclusive periods, but nevertheless assured the Debtors they would propose a comprehensive schedule for discussion to address all issues relating to the prosecution of competing plans. Despite that assurance, and despite the Debtors' repeated requests for Akin's promised schedule, it never was forthcoming. Rather, only after the Debtors insisted on a phone call to discuss the status of the matter and to meet and confer as directed by the Court, were the Debtors advised in the afternoon of October 21, 2019 that no proposed schedule would be forthcoming and that the Ad Hoc Noteholders Committee intended to file

its pleading seeking to advance its plan ahead of the Debtors. A summary of the chronology of emails with respect to the foregoing is annexed hereto as **Exhibit B**.

The TCC Statement is premised primarily on unsupported attacks on the Debtors, and on the TCC's view as to the magnitude of their constituency's claims. Notably, of course, the latter issue is the substance of the ongoing estimation hearings and the Tubbs trial, which admittedly are fundamental to the consideration and solicitation of both plans. **Indeed, any suggestions that estimation is not required by the TCC/Ad Hoc Noteholder plan simply is wrong.** At a minimum, the TCC/Ad Hoc Noteholder plan requires estimation of the claims held by the TCC's constituency in order to determine whether the TCC/Ad Hoc Noteholder plan can satisfy the absolute priority rule. Moreover, estimation is also required under the TCC/Ad Hoc Noteholder Plan to determine the ultimate amount of the consideration to be provided to the class of individual wildfire claimants. Indeed, as Ms. Dumas stated at the October 7, 2019 hearing before the Court:

> Ms. Dumas: Let me just clarify something that I don't think we realized until we read the briefs over the weekend, and saw argument related to overpayment in the fox guarding the henhouse and the like, which is something that, honestly, never occurred to us. So let me make clear right now, that under no circumstances do the tort claimants intend to seek payment that's in excess of what's allowable under the law, <u>that is what is estimated by Judge Donato</u>. So what the term sheet needs to be corrected to clarify that, we will do so.

Hr'g Tr. (Oct. 7, 2019), at 80: 9-17 (emphasis supplied).

For either the Ad Hoc Noteholders Committee or the TCC to suggest that estimation is somehow now not required for their plan, simply belies the clear facts and representations they have previously made to the Court. This alone is fatal to the Ad Hoc Noteholders Committee's proposed schedule, which posits confirmation hearings approximately one month **before** estimation proceedings even begin. Their proposed schedule also completely ignores required CPUC approvals, including the additional complexities to that process as a result of the change of control that the TCC/Ad Hoc Noteholder plan encompasses.

Moreover, the TCC Statement ignores that the Debtors' Plan is, in fact, conditioned on compliance with A.B. 1054 (*See* Sections 6.9, 9.2) and, as the Court has appropriately recognized on a number of occasions, once the estimation proceedings are concluded, the Debtors' Plan **will be amended**

1 **to reflect the same**, including to the extent any increase in the size of the wildfire victims trust might be required as a result of estimation. To the extent necessary, financing commitments will be appropriately updated at that time as well. As the TCC must recognize, no financial institution will provide financial commitments in an unlimited amount in anticipation of what might be the result of an estimation hearing.

The Debtors, as fiduciaries for all economic stakeholders, cannot simply succumb to the TCC's demands as to the amount of the wildfire claims held by its constituency, particularly where, to date, no specific claims information has been provided and the bar date just passed yesterday. As stated, that is the purpose of the estimation hearing. Unlike the TCC and the Ad Hoc Noteholders—who represent only their own interests—the Debtors do not have the luxury of giving away any constituent's financial interests in these cases; instead, the Debtors' fiduciary duties to all stakeholders obligate them to ensure that no creditor is provided more than fair compensation, particularly where—as here—no information has been provided to support the value of the claims demanded by the TCC, and the Ad Hoc Noteholders are seeking to enrich themselves with unjustified equity discounts, rates of interest, and reinstatement under the TCC/Ad Hoc Noteholders plan.

Under the circumstances of these cases, one thing is clear – if competing plans are to proceed, they should proceed on the same schedule. In this regard, it is also clear that no disclosure statement that can satisfy the requirements of section 1125 can be finalized until the estimation proceedings are concluded and all parties can be made aware of the magnitude of claims to be addressed in any plan. Any attempt to have the TCC/Ad Hoc Noteholder plan proceed first ignores this fundamental premise and, moreover, turns exclusivity on its head.

Lastly, there is no reason whatsoever why the briefing schedule on the postpetition interest rate and the make whole premium issues should be further delayed. The termination of the exclusive periods did not change the landscape in this regard at all and, as the Court noted, it is in the interest of all parties to have these issues decided promptly. Indeed, putting these issues before the Court, may lead to productive discussions towards a global settlement.

Dated: October 22, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/*Stephen Karotkin*
      Stephen Karotkin

*Attorneys for Debtors
and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119