WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>* All papers shall be filed in the Lead Case, No. 19-30088 (DM). | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF ANDREW K. WILLIAMS IN SUPPORT OF SECOND LEASE ASSUMPTION MOTION**<br><br>Date: November 19, 2019<br>Time: 10:00 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br>Judge: Hon. Dennis Montali<br><br>**Objection Deadline:** November 5, 2019, 4:00 p.m. (Pacific Time) |

I, Andrew K. Williams, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Vice President of Shared Services of Pacific Gas and Electric Company (the "**Utility**" and, together with PG&E Corporation, the "**Debtors**"). I joined the Utility in 2007 and have held a number of positions since joining, including Senior Director of Labor Relations, Senior Director of Labor Relations and Human Resources, Vice President of Human Resources, Vice President of Safety, Health and Environment, and Vice President of Land and Environmental Management. I earned a Bachelor of Arts in Economics from Louisiana State University in 1987 and a Juris Doctor from Loyola University, New Orleans School of Law in 1990.

2. I am authorized to submit this Declaration (the "**Declaration**") on behalf of the Debtors in support of the *Seventh Omnibus Motion of the Utility Pursuant to 11 U.S.C § 365(a), Fed. R. Bankr. P. 6006, and B.L.R. 6006-1 for an Order Approving Assumption of Certain Real Property Leases* (the "**Motion**").[1]

3. I am knowledgeable and familiar with the Debtors' day-to-day operations and, specifically, the Debtors' portfolio of real property leases. The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and information provided to me by the Debtors' other employees or the Debtors' legal, restructuring, and financial advisors. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

### THE REAL PROPERTY LEASES

4. The Debtors are party to numerous real property leases, which are used by the Debtors in connection with their ongoing business operations. I understand the Debtors received two extensions of the deadline to assume or reject a number of their nonresidential real property leases.

5. For the Real Property Leases herein, I understand the Utility received an extension of the deadline to assume or reject such leases until November 30, 2019.

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

6.      By the Motion, the Utility seeks to assume (i) that certain Amended and Restated Ground Sublease, dated January 15, 2008, originally between Enerland, LLC, as sublessor, and E & L Westcoast, LLC, as sublessee, and subsequently assigned to the Utility, as sublessee, for certain real property located in the County of Colusa, California (the "**Enerland Lease**"); and (ii) that certain Lease, dated March 24, 1988, as subsequently amended, between the Utility and PGE Starpoint, LLC, and several other entities as tenants in common, for the real property located at 650 "O" Street and 705 "P" Street, Fresno, California 93763 (the "**Starpoint Lease**," and together with the Enerland Lease, the "**Real Property Leases**"). A schedule of the Real Property Leases (including the details of all counterparties, amendments and assignments), along with any Cure Payments to be made in connection with the assumption is set forth on **Exhibit B** to the Motion.

7.      As further discussed below, I believe assumption of the Real Property Leases is in the best interest of the Utility and its estate.

8.      If the Utility is not granted authority to assume the Real Property Leases by the Motion, I understand that the Real Property Leases may be deemed rejected, and the Utility may be obligated to immediately surrender the Leased Properties to the respective lessors.

**A. Enerland Lease**

9.      Pursuant to the Enerland Lease, the Utility subleases approximately one hundred (100) acres of land in Colusa County, California (the "**Enerland Property**") for a forty-eight-year term, expiring in 2052. On the Enerland Property, the Utility has constructed and operates the Colusa Generating Station, a 657-megawatt natural gas-powered electric generating facility. The Colusa Generating Station provides safe and reliable energy to meet the needs of more than half-a-million Utility customers and is among the cleanest natural-gas-fueled power plants in California.

10.     Assumption of the Enerland Lease will allow the Utility to continue to operate the Colusa Generating Station, which provides a significant amount of generation capacity—over 8% of the Utility's total net operating capacity of its owned generation facilities—to meet the electricity demands of the Utility's customers.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

11. I also understand deemed rejection of the Enerland Lease would result in the Enerland Property reverting to the counterparty to the Enerland Lease, and would result in the loss of a substantial amount of capital investment by the Utility and seriously compromise the Utility's ability to access sufficient generation capacity to meet the needs of its customers.

**B. Starpoint Lease**

12. The Starpoint Lease (the "**Starpoint Property**") covers the Utility's Fresno Regional Office. The site is utilized by the Utility's customer care, information technology, gas operations, and electric operations teams, comprising over 500 employees. In addition, the Utility operates a customer service office at the site, which it does not have the regulatory authority to close.

13. I have been informed by the Utility's employees responsible for managing the Starpoint Lease that:

  a. the current rent for the Starpoint Property is approximately at market rate, and the Starpoint Lease contains other favorable terms. Furthermore, pursuant to the terms of the Starpoint Lease, I understand that the Utility has the option, which expires on November 30, 2019, to extend the term of the lease by five (5) years on commercially favorable terms. The Utility wishes to exercise this option, but will only do so following the approval of assumption, to avoid increasing the quantum of rejection damages if assumption is not authorized; and

  b. if the Utility is unable to assume the Starpoint Lease, it would be costly, disruptive and likely impractical to relocate the Fresno Regional Office within the Fresno area. In particular, the cost and time associated with relocating the information technology infrastructure the Utility has installed at the Starpoint Property would be significant. The lease of an alternative location, if a suitable site could even be located in the Fresno area, is expected to be on less favorable terms than those of the Starpoint Lease.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

### C. Alternatives to Assumption

14. To the extent that any rental savings could be achieved by rejecting either of the Real Property Leases and acquiring new property—or obtaining new leases in their place—I believe, based on information provided to me by the Utility's employees and advisors, that such savings would be immaterial and would be outweighed by the costs of rejection, including (a) the expenses that the Utility would incur in moving its equipment and fixtures to new locations, (b) the time, cost, and difficulty of finding replacement leases, (c) the adverse impact and interruption to the Utility's business operations unless and until the Utility is able to negotiate new leases, and (d) the potential claims for damages arising from the rejection the Real Property Leases.

15. Absent the relief sought by the Motion, if the Real Property Leases are deemed rejected, I believe the Utility could face numerous adverse consequences from such deemed rejection, as outlined above. I also believe the Utility and its estate will be deprived of the benefit of the opportunity to realize any potential value from a subsequent assignment of the Real Property Leases if the Utility determines in the future it no longer has a business use for such leases.

### CURE AMOUNTS AND ADEQUATE ASSURANCE

16. Employees of the Utility under my direction, with the assistance of the Debtors' financial advisors, reviewed the Utility's books and records in respect of the Real Property Leases and have attempted to identify any prepetition defaults requiring cure under section 365(b) of the Bankruptcy Code. Where such defaults have been identified, the Utility's employees have calculated a monetary amount that I believe will satisfy the defaults, which amounts are listed in **Exhibit B** of the Motion. In some circumstances, the Utility is obligated under the terms of the Real Property Leases to remove liens that have been placed on the Leased Properties by third parties (the "**Liens**"). Where the Utility has identified a Lien on a Leased Property, such Lien is reflected in **Exhibit B** of the Motion.

17. I believe that the Utility has sufficient financial capacity to meet its obligations under the Real Property Leases, including through the Debtors' access to the $5.5 billion debtor-in-possession financing facility approved by the Bankruptcy Court, which, as I understand it, was intended to satisfy the Debtors' liquidity needs through December 2020. I further believe that

there is adequate assurance of future performance under the Real Property Leases in light of the Utility's history of timely payments and timely performance of obligations thereunder during the Chapter 11 Cases.

18. I understand where required by section 365(d)(3) of the Bankruptcy Code, to the Utility's knowledge, the Utility has timely performed its postpetition obligations under the Real Property Leases and has remained current on such obligations since the Petition Date.

19. Given the matters set out above, I believe the relief requested in the Motion should be granted, and assumption of the Real Property Leases approved as a sound exercise of the Debtors' business judgment.

[*Remainder of this page is intentionally left blank*]

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at San Francisco, California on 10/21/2019.

*Andrew K. Williams*

Andrew K. Williams