DAVID B. LEVANT (*pro hac vice*)
david.levant@stoel.com
ANDREW H. MORTON (*pro hac vice*)
andrew.morton@stoel.com
JENNIFER L. MERSING (*pro hac vice*)
jennifer.mersing@stoel.com
JENNIFER N. SLOCUM (*pro hac vice*)
jennifer.slocum@stoel.com
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500

SETH D. HILTON (SBN 181899)
seth.hilton@stoel.com
SARAH E. KOZAL (SBN 313043)
sarah.kozal@stoel.com
BAO M. VU (SBN 277970)
bao.vu@stoel.com
STOEL RIVES LLP
3 Embarcadero Center, Suite 1120
San Francisco, CA 94111
Telephone: 415.617.8900
Facsimile: 415.617.8907

*Attorneys for the Ad Hoc Group of Interconnection Customers*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>       **Debtors.**<br><br>☐   Affects PG&E Corporation<br>☒   Affects Pacific Gas and Electric Company<br>☐   Affects both Debtors<br><br>*\*All papers shall be filed in the Lead Case, No. 19-3088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF JENNIFER MERSING IN SUPPORT OF THE MOTION BY THE AD HOC GROUP OF INTERCONNECTION CUSTOMERS TO COMPEL PAYMENT OF PASS-THROUGH AMOUNTS WITHHELD BY PACIFIC GAS AND ELECTRIC COMPANY**<br><br>Date: November 13, 2019<br>Time: 10:00 a.m. (PT)<br>Place: United States Bankruptcy Court<br>    Courtroom 17, 16th Floor<br>    San Francisco, CA 94102<br><br>**Objection Deadline:**<br>   **November 8, 2019, at 4:00 p.m. (PT)** |

   Pursuant to 28 U.S.C. § 1746, I, Jennifer Mersing, hereby declare under penalty of perjury as follows:

1. I am an attorney at Stoel Rives LLP, counsel to the Ad Hoc Group of Interconnection Customers. I am admitted to practice in the District of Columbia, the State of Washington, and the State of New York, and I am admitted to practice before this Court *pro hac vice*. (*See* Dkt. No. 4328). I submit this Declaration in Support of the *Motion by Ad Hoc Group of Interconnection Customers to Compel Payment of Pass-Through Amounts Withheld by Pacific Gas and Electric Company* (the "***Motion***", Dkt. No.4400). I have personal knowledge of the facts stated in this Declaration. If called as a witness I could, and would, competently testify under oath as set forth below.

## I. Relationship between CAISO, the Utility (PGEC), and Interconnection Customers

2. The California Independent System Operator Corporation ("***CAISO***") operates and provides open and non-discriminatory access to the bulk of California's wholesale transmission grid. CAISO does not itself own any transmission facilities, but rather operates the transmission facilities of its participating transmission owner ("***PTO***") members. Pacific Gas and Electric Company ("***PGEC***" or the "***Utility***") is a PTO member of CAISO and has turned over operational control of its transmission facilities to CAISO.

3. All CAISO market designs and rates, including interconnection of generation projects to the CAISO-controlled transmission system, are subject to regulation by the Federal Energy Regulatory Commission ("***FERC***") under the Federal Power Act ("***FPA***"). CAISO operates under the terms and conditions of its FERC-approved open access transmission tariff (the "***Tariff***").

4. The Tariff includes a standard form of Small Generator Interconnection Agreement (for projects no larger than 20 MW connecting to the CAISO-controlled transmission system) and a standard form of Large Generator Interconnection Agreement (for projects larger than 20 MW connecting to the CAISO-controlled transmission system).[1] The interconnection agreement is a three-party agreement between CAISO, the project company (as the "***Interconnection Customer***"), and the PTO that owns the transmission facilities to which the project will interconnect. Each

---

[1] The current standard Small Generator Interconnection Agreement (Appendix T of the CAISO Tariff) and the current standard Large Generator Interconnection Agreement (Appendix V of the CAISO Tariff) are attached to this Declaration as **Exhibit 1** and **Exhibit 2**, respectively.

project seeking to interconnect to the CAISO-controlled transmission system is entitled to receive an interconnection agreement if it follows the procedures and satisfies the criteria contained in the Tariff. FERC must approve any deviation from the standard CAISO interconnection agreement. In addition, if parties disagree about a certain term in a draft interconnection agreement, an unexecuted interconnection agreement will be submitted to FERC, and FERC will decide on the disputed term of the interconnection agreement.

5. In addition, as the Utility both owns transmission facilities and engages in wholesale power sales transactions, it is subject to FERC's Standards of Conduct, which imposes requirements on a utility to separate its transmission functions from its power marketing functions. The Utility is acting in its transmission function for interconnection matters.

## II. Network Upgrades

6. The interconnection agreement for a project details the specific network upgrades, if any, that are required in order to interconnect the project to the CAISO-controlled transmission system ("***Network Upgrades***"). The required Network Upgrades are determined pursuant to the interconnections study process conducted by CAISO and the relevant PTO. Under the FERC-approved standard CAISO interconnection agreements, the project company (as the Interconnection Customer) is responsible for all of the initial costs to construct the Network Upgrades.[2]

7. Network Upgrades under the interconnection agreement include the additions, modifications and upgrades to the PTO's transmission system at or beyond the point of interconnection that are necessary to interconnect the project safely and reliably to the PTO's transmission facilities and which would not have been necessary but for the interconnection of the project (the Reliability Network Upgrades) and to relieve constraints on the CAISO-controlled

---

[2] The Interconnection Customer is also responsible for the costs of the interconnection facilities and distribution upgrades, if any, needed to interconnect the project to the CAISO-controlled transmission system. The interconnection facilities include all facilities and equipment between the project and the point of interconnection with the CAISO-controlled transmission system. For the interconnection facilities, commencing with the in-service date of the project, the Interconnection Customer is also responsible for on-going operation and maintenance expenses associated with the PTO's interconnection facilities for that project. Distribution upgrades apply to the non-CAISO-controlled transmission and distribution facilities owned by the PTO.

transmission system (the Delivery Network Upgrades). In Order No. 2003 (104 FERC ¶ 61,103 (2003)), FERC required public utilities that own, control or operate transmission facilities to update their tariffs to include standard generator interconnection procedures and a standard interconnection agreement. FERC has found that most improvements to the transmission system, including Network Upgrades, benefit all transmission customers. Thus, as part of Order No. 2003, FERC adopted a policy pursuant to which the Interconnection Customer will initially fund the required Network Upgrades, but then the Interconnection Customer would be entitled to a refund equal to the total amount paid for the Network Upgrades.[3]

8.  In its Order No. 2003 compliance filing, CAISO proposed (and FERC accepted (112 FERC ¶ 61,009 (2005)) that Interconnection Customers would initially fund Network Upgrades and, as reimbursement, would have a choice to receive either cash refunds over a five-year period (dollar-for-dollar reimbursement for the costs of the Network Upgrades plus interest) or alternatively to receive certain transmission financial rights.[4] Thus, under the standard interconnection agreements, CAISO (with FERC's approval) requires that the Interconnection Customer, at the Interconnection Customer's election, receive a repayment (with interest) of the costs spent on the Network Upgrades. More specifically, the Interconnection Customer is entitled a repayment, upon commercial operation of its project, equal to the total amount paid to the PTO for the cost of the Network Upgrades, on a dollar-for-dollar basis either through direct payments made on a levelized basis over the five-year period commencing on the commercial operation date of the project or any alternative payment schedule that is mutually agreeable to the Interconnection Customer and the PTO (provided that the full repayment is made within 5 years from the commercial operation date of the project). The Network Upgrade repayment requirement is contained in Section 5.3.1.1 of the standard Small Generator Interconnection Agreement and

---

[3] Order No. 2003 applied only to projects interconnecting pursuant to a Large Generator Interconnection Agreement, but FERC's network upgrade repayment policy has since been applied to projects interconnecting pursuant to a Small Generator Interconnection Agreement.

[4] Pursuant to the terms of the CAISO Tariff, cash repayments for Reliability Network Upgrades is currently capped at $60,000 per MW of generating capacity. If an Interconnection Customer funded Reliability Network Upgrades in excess of this cap, such Interconnection Customer is entitled to receive certain transmission financial rights for the amounts not covered by the cash repayment.

Section 11.4.1 of the standard Large Generator Interconnection Agreement, and is substantially similar to the Network Upgrade repayment requirement in each of the Ad Hoc Interconnection Customer's interconnection agreements.

**III.     CAISO Rates and PGEC Transmission Revenue Requirement**

9.     The FPA, which was originally passed by Congress in 1935, provides FERC with jurisdiction over transmission and wholesale sales of electric energy in interstate commerce. Under FPA Section 205, rates for transmission and wholesale sales of electric energy must be just and reasonable. Both CAISO and the Utility are "public utilities" under the FPA that are subject to rate regulation by FERC.

10.     The Utility is subject to cost-of-service ratemaking for its transmission cost recovery. The basic cost of service model accounts for operating expenses and provides a reasonable rate of return on a utility's rate base (the value of the utility's assets) in determining the appropriate cost recovery for a utility. On October 1, 2018, the Utility submitted a rate filing to FERC to convert to a formula rate (from a stated rate) for this cost recovery (FERC Docket No. ER19-13).[5] Under a formula rate, FERC initially accepts methodologies and initial inputs for calculating the rate.[6] Each subsequent year, the Utility would run the updated inputs based on estimated costs for the upcoming year (including any annual true-up adjustments, which would be the difference between the Utility's actual transmission costs incurred in the prior year and the Utility's actual transmission revenues received during that same period) through the accepted methodologies to obtain the rate for that year. The updated rate would be submitted to FERC. The Utility's rate filing was subject to notice and comment procedures at FERC, and numerous parties intervened and filed protests against this filing. On November 30, 2018, FERC accepted the Utility's proposed formula rate, to be effective May 1, 2019, subject to refund, and established hearing and settlement judge procedures. Settlement procedures are still ongoing.

---

[5] This rate proceeding is the Utility's twentieth TO Tariff rate filing (TO20).

[6] A formula rate allows a utility to adjust the rate (without a full FERC rate proceeding) through updates to the rate inputs in accordance with the approved rate formula. In contrast, under a stated rate, FERC approves a specific rate for a utility and a utility has to engage in a full FERC rate proceeding each time it seeks to change it rates.

11.     As the Utility has turned over operation of its transmission facilities to CAISO, the Utility recovers its transmission costs (including a return on equity for its transmission capital investments) through CAISO. CAISO determines its own transmission access rates (which are subject to FERC approval) based on the Utility transmission rate, as well as the transmission rates of the other PTO members. CAISO, in turn, remits the Utility transmission rate back to the Utility. Transmission owners such as the Utility are required by FERC to maintain their books and records in accordance with FERC's Uniform System of Accounts (see 18 C.F.R. Part 101). The entries in the Uniform System of Account are the basis for the rate inputs.

12.     Amounts needed by the Utility for Network Upgrade repayments ("*Network Upgrade Reimbursements*") are included in its Uniform System of Accounts (network upgrade credits in Account 252 (Customer advances for construction) and interest expenses for the network upgrade repayments in Account 431 (Other interest expenses)). In the Utility's formula rate filing, Schedule 15-NUC contains the calculations for amounts to be collected in the formula rate for Network Upgrade Reimbursements. As the Utility described in its rate filing:

> Under the terms of the agreements and their associated tariffs, [PGEC] collects up-front payments from generators to fund design, engineering and construction of the Network Upgrades needed for the project's interconnection. FERC's current policy requires that such Network Upgrade payments made by the customer are subject to refund (Network Upgrade Transmission Credits) to the generator with interest. The cost of Network Upgrades, less refunded Network Upgrade advances, are reduced from Rate Base.

Exhibit No. PGE-0013 – Testimony of Pedram Arani.

13.     In Order No. 2003, FERC established a mechanism that allows transmission providers to include the costs of Interconnection Customer-funded Network Upgrades in transmission rates after it provides credits to the Interconnection Customer. Once the cost of Network Upgrades is included in transmission rate base, the transmission provider is able to earn a return on these Network Upgrade costs.[7] Thus, once the Utility provides an Interconnection

---

[7] Although CAISO is the transmission provider for the CAISO-controlled transmission system, the Utility, as the transmission owner, is entitled to include the costs of the Network Upgrades in its transmission rates (and therefore earn a return on those Network Upgrade costs) after it provides the Network Upgrade repayments to the Interconnection Customers.

Customer with a Network Upgrade Reimbursement, it is then able to place such Network Upgrade costs in transmission rate base and receive a return on equity for such Network Upgrade costs. Prior to providing the Network Upgrade Reimbursement to the Interconnection Customer, the Utility cannot earn a return on the amount advanced by the Interconnection Customer for the Network Upgrades.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 22 day of October, 2019 at Seattle, Washington.

*Jennifer Mersing*
Jennifer Mersing
Stoel Rives LLP

(Exhibits Follow)