DAVID B. LEVANT (*pro hac vice*)
david.levant@stoel.com
ANDREW H. MORTON (*pro hac vice*)
andrew.morton@stoel.com
JENNIFER L. MERSING (*pro hac vice*)
jennifer.mersing@stoel.com
JENNIFER N. SLOCUM (*pro hac vice*)
jennifer.slocum@stoel.com
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500

SETH D. HILTON (SBN 181899)
seth.hilton@stoel.com
SARAH E. KOZAL (SBN 313043)
sarah.kozal@stoel.com
BAO M. VU (SBN 277970)
bao.vu@stoel.com
STOEL RIVES LLP
3 Embarcadero Center, Suite 1120
San Francisco, CA 94111
Telephone: 415.617.8900
Facsimile: 415.617.8907

*Attorneys for the Ad Hoc Group of Interconnection Customers*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☒ Affects Pacific Gas and Electric Company<br>☐ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case No. 19-30088 (DM)<br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DECLARATION OF ANAND NARAYANAN IN SUPPORT OF THE MOTION AND MEMORANDUM OF THE AD HOC GROUP OF INTERCONNECTION CUSTOMERS TO COMPEL PAYMENT OF PASS-THROUGH AMOUNTS WITHHELD BY PACIFIC GAS AND ELECTRIC COMPANY**<br><br>Date: November 13, 2019<br>Time: 10:00 a.m. (PT)<br>Place: United States Bankruptcy Court<br>Courtroom 17, 16th Floor<br>San Francisco, CA 94102<br><br>**Objection Deadline:**<br>**November 8, 2019, at 4:00 p.m. (PT)** |

I, Anand Narayanan, hereby declare as follows:

1. I am a Director, Asset Management of CD Arevon USA, Inc., dba CD Arevon Asset Management ("**CD Arevon**"). CD Arevon provides comprehensive asset management services to

renewable energy generation projects in which its affiliate Capital Dynamics, Inc. ("**Capital Dynamics**") has interests. Capital Dynamics manages private equity funds that develop, own, and operate, through wholly-owned and partially-owned subsidiaries, renewable electric generation facilities throughout the United States.

2. I have personal knowledge of the facts stated in this Declaration, except as otherwise indicated. If called as a witness I could, and would, competently testify under oath as set forth below.

3. I submit this Declaration on behalf of the Project Companies referred to below in support of the *Motion of the Ad Hoc Group of Interconnection Customers to Compel Payment of Pass-Through Amounts Withheld by Pacific Gas and Electric Company* (the "**Motion**").[1]

4. Capital Dynamics owns the controlling equity interests in CA Flats Solar 130, LLC ("**Cal Flats 130**"), CA Flats Solar 150, LLC ("**Cal Flats 150**" and, together with Cal Flats 130, the "**Cal Flats Project Companies**"), and Solar Star California XIII, LLC ("**Quinto**" and, collectively with the Cal Flats Project Companies, the "**Project Companies**").[2] Each of the Project Companies owns and operates a photovoltaic solar energy generation facility located in California that is interconnected to the California Independent System Operator Corporation ("**CAISO**") controlled grid through facilities owned by Pacific Gas and Electric Company (the "**Utility**").

5. Capital Dynamics acquired its interests in the Cal Flats Project Companies on August 21, 2017 and acquired its interests in Quinto on June 19, 2018. CD Arevon did not provide project management services to the respective Project Companies and their Projects (as defined below) until such dates. Accordingly, my statements herein relating to the Projects for the periods prior to such dates are based on my review of regularly kept business records of regularly conducted business activities of the Project Companies and the Projects.

6. Cal Flats 130 owns an approximately 130 $MW_{AC}$ project (the "**Cal Flats 130 Project**") located in the Cholame Hills area of southeastern Monterey County consisting of two phases—one of 50 $MW_{AC}$ (Phase 1) and another of 80 $MW_{AC}$ (Phase 2)—both of which achieved

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
[2] Certain tax equity investors own indirect passive interests in the Project Companies.

commercial operation on November 22, 2017. Cal Flats 130 has committed to sell the entire output of the Cal Flats 130 Project under a 25-year power purchase agreement with Apple Energy LLC.

7. Cal Flats 150 owns an approximately 150 MW$_{AC}$ project (the "**Cal Flats 150 Project**") in Monterey County located adjacent to the Cal Flats 130 Project, which achieved commercial operation on March 5, 2019. Cal Flats 150 has committed to sell the entire output of the CA Flats 150 Project under a 15-year Power Purchase Agreement with the Utility dated December 19, 2013, as amended by the First Amendment of Power Purchase Agreement dated May 17, 2016 and as further amended by the Second Amendment of Power Purchase Agreement made as of November 29, 2018 (as so amended, the "**Cal Flats 150 PPA**").

8. Both the Cal Flats 130 Project and the Cal Flats 150 Project (together, the "**Cal Flats Projects**") are connected to the Utility's Morro Bay-Gates 230 kV transmission line in Monterey County and the CAISO-controlled grid pursuant to a Large Generator Interconnection Agreement (Q877) by and among California Flats Solar, LLC ("**Cal Flats**"), CAISO, and the Utility dated November 14, 2014, which Cal Flats assigned to Cal Flats 130 and Cal Flats 150, as tenants-in-common, and which was amended pursuant to a First Amendment dated as of May 4, 2017 and a Second Amendment dated as of January 2, 2019 (as so assigned and amended, the "**Cal Flats Interconnection Agreement**").

9. Quinto owns an approximately 108 MW$_{AC}$ project (the "**Quinto Project**" and, together with the Cal Flats Projects, the "**Projects**") located at 30500 McCabe Road, Gustine, Merced County, the entire output of which is committed to Southern California Edison pursuant to a 20-year power purchase agreement. The Quinto Project is connected to the Utility's Los Banos – Westley 230 kV transmission line by an approximately 0.05 mile tie line between the Quinto Project's collector substation and a new switching station of the Utility's that was built to interconnect the Project. The Quinto Project is interconnected to the CAISO-controlled grid pursuant to a Large Generator Interconnection Agreement (Q577) by and among Quinto, CAISO, and the Utility dated March 28, 2013, as amended by a First Amendment thereto dated as of October 1, 2013 and a Second Amendment thereto dated as of December 11, 2014 (as so amended,

the "***Quinto Interconnection Agreement***" and, together with the Cal Flats Interconnection Agreement, the "***Interconnection Agreements***").[3]

10. The Interconnection Agreements required the Project Companies to make certain upgrades to the Utility's transmission system ("***Network Upgrades***") in order to connect the Projects to the CAISO-controlled grid. The Network Upgrades are described in Appendix A to each of the Interconnection Agreements and include both (i) delivery network upgrades to relieve constraints on the CAISO-controlled grid, and (ii) reliability network upgrades necessary to interconnect the Projects safely and reliably to the Utility's transmission system (including additions, modifications, and upgrades necessary to remedy short circuit or stability problems) that would not have been necessary but for the interconnection of the Projects.

11. Section 11.4.1 of each of the Interconnection Agreements requires the Utility to reimburse the Project Companies for the Network Upgrades ("***Network Upgrade Reimbursements***" or "***NUR Payments***") made by them on a dollar-for-dollar basis, capped at $60,000 per $MW_{AC}$ maximum net output for each Project, following the Commercial Operation Date of the Project.

12. The Utility commenced making NUR Payments to Quinto in December 2016 and generally adhered to the schedule for NUR Payments under the Quinto Interconnection Agreement until it filed for bankruptcy protection, at which time the Utility stopped paying Network Upgrade Reimbursements to Quinto.

13. At this time there are three outstanding past due NUR Payments owed to Quinto in the total amount of $6,000,000 and an additional $1,500,000 will be due on or before January 1, 2020. The Utility is aware that the NUR Payments are past due and has advised the Project Companies that the Quinto Network Upgrade Reimbursements cannot be paid during the pendency of its bankruptcy case. The dates on which the Quinto NUR Payments were due, and the dates on

---

[3] The Interconnection Agreements substantially conform to the form Large Generator Interconnection Agreement issued in CAISO's open access transmission tariff, attached to the Mersing Declaration at **Exhibit 2.**

which all of the remaining Network Upgrade Reimbursements for the Quinto Project will become due, are set forth in the following table:

| Due Date | Amounts Past Due | Amounts Not Yet Due |
|---|---|---|
| 4/1/2019 | $3,000,000 | |
| 7/1/2019 | $1,500,000 | |
| 10/1/2019 | $1,500,000 | |
| 1/1/2020 | | $1,500,000 |
| 4/1/2020 | | $1,500,000 |
| 7/1/2020 | | $1,500,000 |
| 11/1/2020 | | $2,716,502 |
| **TOTALS** | **$6,000,000** | **$7,216,502** |

In addition to the foregoing NUR Payments, Quinto is entitled to interest at a rate fixed by FERC. If the Quinto NUR Payments were made timely, the interest on such payments would total $5,508,598.07. The actual amount of interest on the Quinto NUR Payments will be greater than such amount due to PGEC's delay in payment.

14. The Utility has not made any NUR Payments to the Cal Flats Project Companies. The Utility asserts that the obligation to begin making NUR Payments to the Cal Flats Project Companies did not commence until after the Cal Flats 150 Project achieved commercial operation in March 2019, notwithstanding that the Cal Flats 130 Project had achieved commercial operation in November 2017.[4] As with the Quinto Project, the Utility asserts that the Network Upgrade Reimbursements for the Cal Flats Projects cannot be paid during the pendency of its bankruptcy case.

15. Notwithstanding the Utility's position regarding the postponement of Cal Flats 130 NUR Payments until the commencement of Cal Flats 150 NUR Payments, CD Arevon believes that Cal Flats 130 is entitled to $7,800,000 of NUR Payments over a five year period that should already have begun, plus interest at the rate set by FERC in the amount of $1,447,311.88 if such

---

[4] At this time, pursuant to the Motion, the Cal Flats Project Companies are only requesting that the Bankruptcy Court order the Utility to timely pay NUR Payments that are past due and that come due during these bankruptcy cases. They are not seeking a ruling concerning the dates and amounts when NUR Payments are due to Cal Flats 130 and Cal Flats 150, but reserve the right to seek such further relief following resolution of the pending Motion.

NUR Payments were timely paid when due, and a greater amount to the extent paid after their proper due dates. CD Arevon believes that Cal Flats 150 is entitled to $9,000,000 of NUR Payments, plus interest at the rate set by FERC in the amount of $1,669,975.25 if such NUR Payments are timely paid, and a greater amount to the extent paid after their proper due dates.

16. In addition to the Network Upgrade Reimbursements owed to the Project Companies by the Utility pursuant to the Interconnection Agreements, the Cal Flats 150 Project Company is owed $274,159.67 for "test energy" that it generated from December 20, 2018 through January 28, 2019, as follows:

| Test Energy Delivered | CAISO Revenues |
|---|---|
| 12/20/2019 – 12/31/2019 | $ 26,862.36 |
| 1/1/2019 – 1/28/2019 | $247,297.31 |
| **TOTAL** | **$274,159.67** |

17. Test energy is energy produced by a project during its "test period", *i.e.*, the period between (i) the date when CAISO informs the project owner that it may deliver energy from the project to the CAISO grid and (ii) the date when the term of the power purchase agreement begins.

18. Pursuant to section 4.1(c) of the Cal Flats 150 PPA, the parties agreed that Cal Flats 150's compensation for test energy "shall be the CAISO Revenues for the Delivered Energy, which revenues [PGEC], shall forward promptly to [Cal Flats 150]". Section 1.25 of the Cal Flats 150 PPA defines "CAISO Revenues" as a net amount based on "the payments received by [the Utility], as [Cal Flats 150's] Scheduling Coordinator" for the Project. On information and belief, the Utility has received the full $274,159.67 of CAISO Revenues for the Cal Flats 150 test energy.

19. The price paid by CAISO for test energy is determined by the Locational Marginal Price for the relevant pricing node, not a price specified in the Cal Flats 150 PPA or otherwise determined by the Utility.

20. Whereas the Utility has an interest in the output of the Cal Flats 150 Project pursuant to the Cal Flats 150 PPA, the Utility has no interest in the energy produced by the Quinto Project, all of which has been sold to Southern California Edison, or in the energy produced by Cal Flats 130, all of which has been sold to Apple Energy LLC. The Debtors' only relationship with the Quinto Project and the Cal Flats 130 Project is with respect to the transmission of power from such

Projects to the respective Project Companies' customers. These Project Companies are forced to work with the Utility because they have no alternative means to transmit renewable energy from their Projects to their customers.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 18 day of October, 2019 at Scottsdale, Arizona.

_____
Anand Narayanan

103874119.2 0069371-00003