# EXHIBIT G
## Bank Financing Engagement Letter

**JPMORGAN CHASE BANK, N.A.**
383 Madison Avenue
New York, New York 10179

**BARCLAYS**
745 Seventh Avenue
New York, NY 10019

**BofA SECURITIES, INC.**
One Bryant Park
New York, NY 10036

**CITIGROUP GLOBAL MARKETS INC.**
388 Greenwich Street
New York, NY 10013

**GOLDMAN SACHS BANK USA**
**GOLDMAN SACHS LENDING PARTNERS LLC**
200 West Street
New York, NY 10282

**PERSONAL AND CONFIDENTIAL**

October 4, 2019

PG&E Corporation
Pacific Gas and Electric Company
77 Beale Street
P.O. Box 77000
San Francisco, California 94177
Attention:     Nicholas M. Bijur

**PG&E Corporation**
**Pacific Gas and Electric Company**
**Bank Financing Engagement Letter**

Ladies and Gentlemen:

Reference is hereby made to (i) the Chapter 11 bankruptcy cases, jointly administered under lead case number 19-30088 (the "**Chapter 11 Cases**"), currently pending before the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"), in which PG&E Corporation, a California corporation ("**PG&E**"), and Pacific Gas and Electric Company, a California corporation (the "**Utility**" and together with PG&E, the "**Debtors**") are debtors and debtors in possession and (ii) the first amended Chapter 11 plan of reorganization filed by the Debtors with the Bankruptcy Court on September 23, 2019 at ECF No. 3966 (as may be further amended, modified or otherwise changed, the "**Plan**") to implement the terms and conditions of the reorganization of the Debtors as provided therein. You agree that, unless the context otherwise requires, each reference herein to "you", and any provision hereof applicable to you, shall apply to PG&E, the Utility, any entity formed to hold all of the assets of PG&E and/or the Utility upon emergence from bankruptcy ("**NewCo**"), as applicable, and PG&E and the Utility agree to cause NewCo to comply with the terms of this letter agreement as if it were a party hereto.

You have informed us that, in connection with the consummation of the transactions contemplated by the Plan, PG&E intends to (a) enter into a new revolving credit facility in an aggregated committed amount of $500 million (the "**PG&E Revolving Credit Facility**") and (b)(i) issue senior secured notes pursuant to a registered public offering or Rule 144A or other private placement (the "**PG&E Senior Notes**"), (ii) incur term loans under a senior secured term loan facility (the "**PG&E Term Loan Facility**" and the loans thereunder, the "**PG&E Term Loans**" and, together with the PG&E Senior Notes, collectively, the "**Permanent Financing**") or (iii) issue or incur a combination of the foregoing. In connection therewith, PG&E desires to enter into a $7,000 million senior unsecured bridge loan facility (the "**PG&E Facility**") having the terms and subject to the conditions set forth in the PG&E Corporation Commitment Letter among PG&E, the Utility, JPMorgan Chase Bank, N.A. and the other "Commitment Parties" party thereto, dated the date hereof and in the annexes thereto, to be available in the event that the Permanent Financing is not issued and/or incurred on or prior to the Effective Date (as defined in the Plan) of the Plan for any reason.

You have also informed us that, in connection with the consummation of the transactions contemplated by the Plan, the Utility intends to (a) enter into a new revolving credit facility in an aggregated committed amount of $3,500 million (the "**Utility Revolving Credit Facility**" and together with the PG&E Revolving Credit Facility, the "**Revolving Credit Facilities**") and (b) issue senior secured notes pursuant to a registered public offering or Rule 144A or other private placement (the "**Utility Senior Notes**", together with the PG&E Senior Notes, the "**Senior Notes**"). In connection therewith, the Utility desires to enter into a $27,350 million senior secured bridge loan facility (the "**Utility Facility**" and together with the PG&E Facility, the "**Facilities**") having the terms and subject to the conditions set forth in the Pacific Gas and Electric Company Commitment Letter among PG&E, the Utility and JPMorgan Chase Bank, N.A. and the other "Commitment Parties" party thereto, dated the date hereof and in the annexes thereto, to be available in the event that the Utility Senior Notes are not issued on or prior to the Effective Date of the Plan for any reason.

The transactions described in the preceding paragraphs, together with any Bank Financing, are collectively referred to herein as the "**Transactions**."

Accordingly, the parties hereto agree as follows:

1. <u>Titles and Roles</u>.

Subject to the approval of this letter agreement by the Bankruptcy Court, in connection with the financing of the transactions and distributions contemplated by the Plan, and the refinancing or replacement of the Facilities or other interim debt financing for the transactions and distributions contemplated by the Plan, or any permanent revolving or term credit facility or other financing entered into in connection with the Plan (such financing, refinancing or replacement, collectively, the "**Exit Financing**"), you hereby engage each of JPMorgan Chase Bank, N.A. ("**JPMorgan**"), Barclays Bank PLC, BofA Securities, Inc. (or any of its designated affiliates), Citigroup Global Markets Inc. on behalf of Citi (as defined below), Goldman Sachs Bank USA to act as joint lead arrangers and joint bookrunners (in such capacities, the "**Arrangers**") (in the case of any Bank Financing of PG&E (or any entity formed to hold all of the assets of PG&E), with JPMorgan having "left" placement in all any marketing materials or other documentation) (each, a "**Titled Capacity**") with respect to (i) the Revolving Credit Facilities, (ii) the PG&E Term Loan Facility and (iii) any other bank loan or credit facility (other than a securitization facility) (collectively, the "**Bank Financing**"), in each case constituting an Exit Financing, <u>provided</u> that (x) you agree that JPMorgan may perform such role through its affiliate, J.P. Morgan Securities LLC and (y) no Arranger shall be allocated a greater percentage of the economics with respect to any arrangement or other upfront fees in respect of any Bank Financing than JPMorgan. You may, in consultation with the Arrangers, appoint additional arrangers, agents or co-agents or award additional titles, in ██████████

2

 in respect of any Bank Financing and such arrangers, agents, co-agents and other persons may be allocated up ██████████████████████████████████████████████ (such persons, "**Additional Agents**"); ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (iii) no Additional Agent shall receive a bookrunner title with respect to any Bank Financing and (iv) to the extent any Additional Agents participate in such Bank Financing, the economics allocated to such Additional Agent shall reduce the economics of the Arrangers on a pro rata basis. For purposes of this letter agreement, "Citi" shall mean Citigroup Global Markets Inc., Citibank N.A., Citicorp USA, Inc., Citicorp North America, Inc. and/or any of their affiliates as any of them shall determine to be appropriate to provide the services contemplated herein.

Each Arranger reserves the right not to participate in any Bank Financing, and the foregoing is not an agreement by any Arranger to provide any commitments with respect to any Bank Financing. It is also understood and agreed that this letter agreement shall not constitute an obligation or commitment to purchase any loans or commitments (or to pay any fees) in order to syndicate a proposed Bank Financing. In addition, you acknowledge and agree that this letter agreement (i) is not a guarantee with respect to the successful syndication of a proposed Bank Financing and (ii) does not create an obligation on the part of any Arranger or any affiliate of, or any fund managed by any Arranger, in its capacity as a lender, to participate in any Bank Financing.

2. <u>Cooperation</u>. With respect to any syndicated Bank Financing, you agree to actively assist the Arrangers in achieving a syndication satisfactory to you and us. Such assistance shall include: (a) your use of commercially reasonable efforts to ensure that the Arrangers' syndication efforts benefit from your and your affiliates' existing lending relationships, (b) your using commercially reasonable efforts to assist in the preparation of one or more information packages for any Bank Financing in form and substance customary for transactions of this type regarding your business, operations, financial projections and prospects (after giving effect to the Transactions) (collectively, the "**Confidential Information Memorandum**"), (c) your using commercially reasonable efforts to obtain, as promptly as practical prior to the launch of the syndication of any Bank Financing, public debt ratings for the applicable borrower in respect of such Bank Financing from each of Moody's Investor Services, Inc. ("**Moody's**") and Standard & Poor's Financial Services LLC ("**S&P**"), in each case giving effect to the Transactions, (d) the presentation of one or more customary information packages for any Bank Financing in format and content reasonably satisfactory to the Arrangers (collectively, the "**Lender Presentation**") in a reasonable number of meetings at reasonable times and locations mutually agreed upon, (e) arranging for direct contact between your senior management and representatives, with appropriate seniority and expertise, with prospective lenders and participation of such persons in a reasonable number of meetings at reasonable times and locations mutually agreed upon and (f) the negotiation, execution and delivery of appropriate loan documents (each in form and substance satisfactory to us and to you and containing such terms, covenants, conditions, representations, warranties and indemnities as are consistent with (A) with respect to any Bank Financing of PG&E (or any entity formed to hold all of the assets of PG&E upon emergence from bankruptcy), PG&E's Second Amended and Restated Credit Agreement, dated as of April 27, 2015, among PG&E, the financial institutions from time to time party thereto and Bank of America, N.A., as administrative agent (as amended from time to time prior to the date hereof, the "**PG&E Pre-Petition Credit Agreement**") and (B) any Bank Financing of the Utility (or any entity formed to hold all of the assets of the Utility upon emergence from bankruptcy), the Utility's Second Amended and Restated Credit Agreement, dated as of April 27, 2015, among the Utility, the financial institutions from time to time party thereto and Citibank, N.A., as administrative agent (as amended from time to time prior to the date hereof, the "**Utility**

3

**Pre-Petition Credit Agreement**") (and, to the extent applicable, the Facilities) as modified to the extent customary in the market to reflect transactions comparable to the relevant Bank Financing and any changes in law) relating to such Bank Financing, including, without limitation, a credit agreement, guarantees, opinions of counsel and other related definitive documents all in form and substance consistent with the corresponding documents delivered in connection with the PG&E Pre-Petition Credit Agreement or the Utility Pre-Petition Credit Agreement, as applicable (and, to the extent applicable, the applicable Facility) and otherwise reasonably satisfactory to the Arrangers, you and your respective counsel (collectively, the "**Loan Documents**").  In connection with the Arrangers' syndication efforts, you shall not be required to provide information the disclosure of which would violate any (i) attorney-client privilege (and you shall not be required to waive any such privilege), (ii) law, rule or regulation applicable to you or your affiliates or (iii) obligation of confidentiality from a third party binding on you or your affiliates (so long as (x) such confidentiality obligation was not entered into in contemplation of the Transactions, (y) you use commercially reasonable efforts to obtain a waiver of such confidentiality obligation (but not attorney-client privilege) and to otherwise provide such information that does not violate such confidentiality obligations and (z) you provide the Arrangers notice that information is being withheld due to the existence of such confidentiality obligation or attorney-client privilege); underlined provided that none of the foregoing shall be construed to limit any of your representations and warranties set forth in Section 6 of this letter agreement (and any corresponding representation in the Confidential Information Memorandum or the Loan Documents, as applicable).  You will be solely responsible for the contents of any such Confidential Information Memorandum and Lender Presentation (other than, in each case, any information contained therein that has been provided for inclusion by the Arrangers about the Arrangers) and all other written information, documentation or materials delivered to the Arrangers by or on your behalf in connection therewith (collectively, the "**Information**") and you acknowledge that the Arrangers will be using and relying upon the Information without independent verification thereof.  You agree that Information (including, without limitation, draft and execution versions of the Loan Documents for the relevant Bank Financing, the Confidential Information Memorandum, the Lender Presentation and publicly filed financial statements) may be disseminated to potential lenders through one or more internet sites (including an IntraLinks, SyndTrak or other similar electronic workspace (the "**Platform**")) created for purposes of syndicating the Facilities or otherwise, in accordance with each Arranger's standard syndication practices, and you acknowledge that no Arranger nor any of their respective affiliates will be responsible or liable to you or any other person or entity for damages arising from the use by others of any Information or other materials obtained on the Platform, except to the extent such damages have resulted from the willful misconduct, bad faith or gross negligence of such Arranger or its affiliates (as determined by a court of competent jurisdiction in a final and non-appealable judgment).  You hereby authorize the Arrangers to download copies of your trademark logos from its website and post copies thereof and any Information to any Platform established by the Arrangers to syndicate the relevant Bank Financing, and to use your trademark logos on any confidential information memoranda, presentations and other marketing materials prepared in connection with the syndication of any Bank Financing or in any advertisements (to which you consent, such consent not to be unreasonably withheld) that we may place after the closing of any Bank Financing in financial and other newspapers, journals, the World Wide Web, home page or otherwise, at our own expense describing our services to you hereunder; underlined provided that such consent shall not be required with respect to tombstone, case study or similar advertisements incorporated into promotional materials and not otherwise publicly disseminated.

You acknowledge that certain of the lenders may be "public side" lenders (i.e., lenders that do not wish to receive Private-Side Information (as defined below)) (each, a "**Public Lender**"; and lenders who are not Public Lenders being referred to herein as "**Private Lenders**").  At the request of the Arrangers, you agree to prepare an additional version of the Confidential Information Memorandum and the Lender Presentation to be used by Public Lenders containing a representation that such Confidential Information Memorandum does not contain Private-Side Information.  "**Private-Side Information**" means material non-public information (for purposes of United States federal, state or other applicable securities

4

laws) concerning you and your affiliates or any of their respective securities; and "**Public-Side Information**" means any information that is not Private-Side Information. It is understood that in connection with your assistance described above, you will provide a customary authorization letter to the Arrangers (a) authorizing the distribution of the Information to prospective Private Lenders and the distribution of the Public-Side Information to prospective Public Lenders and (b) containing a customary "10b-5" representation and a representation to the Arrangers, in the case of the public-side version, that such Information does not include material non-public information about you and your affiliates or their respective securities. The Public-Side Information will contain customary language exculpating the Arrangers, you and the respective affiliates of each of the foregoing with respect to any liability related to the use of the contents of the Public-Side Information. In addition, you will clearly designate as such all Information provided to any Arranger by or on behalf of it which contains exclusively Public-Side Information. You acknowledge and agree that the following documents may be distributed to all lenders (including Public Lenders) (unless you promptly notify the Arrangers in writing (including by email) within a reasonable time prior to their intended distribution (after you have been given a reasonable opportunity to review such documents) that any such document should only be distributed to prospective Private Lenders): (a) drafts and final versions of the Loan Documents for the relevant Bank Financing; (b) term sheets and notification of changes in the terms of the relevant Bank Financing and (c) administrative materials prepared by the Arrangers for prospective lenders (such as a lender meeting invitation, allocations and funding and closing memoranda). If you advise us that any of the foregoing items should be distributed only to Private Lenders, then we will not distribute such materials to Public Lenders without further discussions with you.

       3.  <u>Termination</u>. This letter agreement may be terminated by any Arranger (as to itself), in whole or in part, at any time upon written notice to you. This letter agreement may be terminated by you after the earliest of (i) the date that is twelve months after the date hereof, if the Effective Date has not occurred, (ii) the Effective Date, if the Effective Date of the Plan was accomplished without any loans under the Facilities or other interim Exit Financing and so long as any Bank Financing consummated prior to or concurrently with the Effective Date was made in compliance with this letter agreement, (iii) the first anniversary of the Effective Date and (iv) the date of receipt by you of aggregate cash proceeds in an amount equal to at least the then outstanding obligations under the Facilities or any other interim Exit Financing from the incurrence of Bank Financing in a transaction in which each Arranger acts in its Titled Capacity with no less than the percentage of the economics of such transaction applicable to such Arranger established pursuant to paragraph 1 of this letter agreement, if the Bank Financing is consummated after the Effective Date. Upon any termination of this letter agreement, the obligations of the parties hereunder shall terminate, except for their obligations under paragraphs 4, 5, 7 and 8 below.

       4.  <u>Indemnification and Expenses</u>.

       Subject to the approval of this letter agreement by the Bankruptcy Court, you agree, jointly and severally, (a) to indemnify and hold harmless the Arrangers and their affiliates and their respective officers, directors, employees, advisors, and agents (each, an "**indemnified person**") from and against any and all losses, claims, damages, liabilities and related expenses to which any such indemnified person may become subject arising out of or in connection with this letter agreement, any Bank Financing, the use of the proceeds thereof or any related transaction or any actual or prospective claim, litigation, investigation, arbitration or proceeding relating to any of the foregoing (including in relation to enforcing the terms of this paragraph) (each, a "**Proceeding**"), regardless of whether any indemnified person is a party thereto, whether or not such Proceedings are brought by you, your equity holders, affiliates, creditors or any other person, and to reimburse each indemnified person upon demand for reasonable, documents and invoiced out-of-pocket legal expenses of one firm of counsel for all such indemnified persons, taken as a whole, and, if necessary, of a single firm of local counsel in each appropriate jurisdiction (which may include a single firm of special counsel acting in multiple jurisdictions) for all such indemnified persons, taken as a whole

5

(and, in the case of an actual or perceived conflict of interest where the indemnified person affected by such conflict informs you of such conflict and thereafter retains its own counsel, of another firm of counsel for such affected indemnified person and, if necessary, of a single firm of local counsel in each appropriate jurisdiction (which may include a single firm of special counsel acting in multiple jurisdictions) for such affected indemnified person) or other reasonable, documents and invoiced out-of-pocket expenses incurred in connection with investigating or defending any of the foregoing; provided that the foregoing indemnity will not, as to any indemnified person, apply to losses, claims, damages, liabilities or related expenses to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to (i) have arisen or resulted from the willful misconduct, bad faith or gross negligence of such indemnified person, (ii) have resulted from a claim brought by you or any of your subsidiaries against such indemnified person for material breach in bad faith of such indemnified person's obligations hereunder or (iii) have not resulted from an act or omission by you or any of your affiliates and have been brought by an indemnified person against any other indemnified person (other than any claims against any Arranger in its capacity or in fulfilling its role as an arranger or agent or any similar role hereunder, except to the extent such acts or omissions are determined by a court of competent jurisdiction by a final and non-appealable judgment to have constituted the gross negligence, bad faith or willful misconduct of such indemnified party in such capacity), and (b) to reimburse the Arrangers and their affiliates on demand for all out-of-pocket expenses (including due diligence expenses, syndication expenses, travel expenses, and reasonable fees, charges and disbursements of counsel) incurred in connection with any Bank Financing and any related documentation (including this letter agreement and the Loan Documents) or the administration, amendment, modification or waiver thereof. None of the indemnified persons or you shall have any liability for any special, indirect, consequential or punitive damages in connection with activities related to the Bank Financing or the Transactions; provided that nothing contained in this sentence shall limit your indemnity and reimbursement obligations to the extent set forth in this paragraph.

No indemnified person shall be liable for any damages arising from the use by others of Information or other materials obtained through electronic, telecommunications or other information transmission systems, including an Platform or otherwise via the internet, and you agree, to the extent permitted by applicable law, to not assert any claims against any indemnified person with respect to the foregoing.

You shall not, without the prior written consent of an indemnified person (which consent shall not be unreasonably withheld, conditioned or delayed), effect any settlement of any pending or threatened Proceedings in respect of which indemnity could have been sought hereunder by such indemnified person unless (a) such settlement includes an unconditional release of such indemnified person in form and substance reasonably satisfactory to such indemnified person from all liability on claims that are the subject matter of such Proceedings and (b) does not include any statement as to or any admission of fault, culpability or a failure to act by or on behalf of any indemnified person or any injunctive relief or other non-monetary remedy. You acknowledge that any failure to comply with your obligations under the preceding sentence may cause irreparable harm to the Arrangers and the other indemnified persons. You shall not be liable for any settlement of any Proceeding if the amount of such settlement was effected without your consent (which consent shall not be unreasonably withheld, conditioned or delayed), but if settled with your written consent or if there is a judgment by a court of competent jurisdiction in any such Proceeding, you agree to indemnify and hold harmless each indemnified person from and against any and all losses, claims, damages, penalties, liabilities and expenses by reason of such settlement or judgment in accordance with the other provisions of this paragraph.

You agree that the fees, expenses and indemnities payable hereunder and incurred pursuant hereto, and as set forth in, this letter agreement (a) are reasonable, (b) are actual and necessary costs and expenses of preserving the Debtors' estates and (c) subject to the approval of this letter agreement by the

6

Bankruptcy Court, constitute allowed Administrative Claims against the Debtors on a joint and several basis under the Plan.

5. <u>Fees</u>. (a) Subject to the approval of this letter agreement by the Bankruptcy Court, in any Bank Financing that is consummated prior to termination of this letter agreement and in which any Arranger acts in a Titled Capacity, you shall, or shall cause any applicable borrower to, pay aggregate fees



in each case payable at the closing of such Bank Financing out of the proceeds thereof, such fees to be allocated ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ in each case subject to pro rata reduction in connection with the appointment of any Additional Agent in accordance with paragraph 1 above.

(b) Subject to the approval of this letter agreement by the Bankruptcy Court, in the event that during the period commencing on the date hereof and ending 12 months following the termination hereof you or any of your affiliates obtain Exit Financing or any other exit financing in connection with a plan of reorganization other than the Plan (other than an offering of securities) (any such financing, an "**Alternate Financing**") without, with respect to any Arranger, such Arranger acting in its Titled Capacity in connection therewith and without receiving at least the percentage of minimum economics of such financing applicable to such Arranger established pursuant to paragraph 1 above (in accordance with, and with the economics contemplated by, paragraph 1 and 5(a) above) (the "**Requisite Economics**"), then you agree to pay to such Arranger that is not acting in its Titled Capacity at the time of consummation of the Alternate Financing, an amount equal to 50% (or, if such Alternate Financing refinances or replaces any Facility that is outstanding or in effect immediately prior to the consummation of such Alternate Financing, 100%) of the fees that would have been payable pursuant to paragraph 5(a) above if such Arranger acted in its Titled Capacity with the Requisite Economics for such Alternate Financing; provided that no such fee shall be payable to any Arranger that has been offered the opportunity to act in a Titled Capacity with the Requisite Economics with respect to such financing and has elected not to do so (unless such offer was made in connection with an Alternate Financing in respect of an exit financing in connection with a plan of reorganization other than the Plan).

6. <u>Information</u>. You represent and covenant that (i) all written Information (other than projections, estimates and other forward-looking materials and information of a general economic or industry specific nature) provided by or on your behalf to the Arrangers or the lenders in connection with the Transactions is and will be when furnished, when taken as a whole, complete and correct in all material respects and does not and will not contain when furnished, when taken as a whole, any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein not materially misleading in light of the circumstances under which such statements are made (giving effect to all supplements and updates provided thereto); and (ii) the written financial projections and other written forward-looking information (the "**Projections**") that have been or will be made available to the Arrangers or the lenders by or on your behalf in connection with the Transactions have been and will be prepared in good faith based upon assumptions that are believed by you to be reasonable at the time such Projections are furnished to the Arrangers or the lenders, it being understood and agreed that Projections are as to future events and are not to be viewed as facts, are subject to significant uncertainties and contingencies, many of which are out of your control, that no assurance can be given that any particular Projections will be realized and that actual results during the period or periods covered by such Projections may differ significantly from the projected results and such differences may be material.

7

You agree that if at any time prior to the closing of any Bank Financing you become aware that any of the representations in the preceding sentence would be incorrect in any material respect if the Information and Projections were being furnished, and such representations were being made, at such time, then you will promptly supplement, or cause to be supplemented, the Information and Projections so that such representations will be correct in all material respects in light of the circumstances under which such statements are made. We have no obligation to conduct any independent evaluation or appraisal of the assets or liabilities of you or any other party.

7. <u>Confidentiality</u>.

(a) Each Arranger shall use all non-public information provided to it by or on behalf of you or any of your subsidiaries or affiliates solely for the purpose of providing the services that are the subject of this letter agreement and shall treat confidentially all such information and shall not disclose such information to any third party or circulate or refer publicly to such information, except in each case for information that was or becomes publicly available other than by reason of disclosure by in violation of this letter agreement or was or becomes available to such Arranger or its affiliates from a source which is not known by such Arranger to be subject to a confidentiality obligation to you, <u>provided</u> that nothing herein shall prevent such Arranger from disclosing any such information (i) to potential and prospective lenders, participants and any direct or indirect contractual counterparties to any swap or derivative transaction relating to you or your obligations under any Bank Financing, in each case, who have agreed to keep such information confidential on terms not less favorable than the provisions hereof in accordance with the standard syndication processes of the Arrangers or customary market standards for the dissemination of such type of information, (ii) pursuant to the order of any court or administrative agency or in any pending legal or administrative proceeding (in which case we agree to promptly notify you to the extent lawfully permitted to do so), (iii) to rating agencies; <u>provided</u> that such information is limited to the terms and conditions relating to the applicable Bank Financing and is supplied only on a confidential basis, (iv) upon the request or demand of any regulatory authority having jurisdiction over any Arranger or any of their respective affiliates (in which case such person agrees (except with respect to any audit or examination conducted by bank examiners or any governmental bank regulatory authority exercising examination or regulatory authority) to inform you promptly thereof to the extent practicable and not prohibited by applicable law, rule or regulation), (v) to any Arranger's affiliates and to any Arranger's and such affiliates' respective employees, legal counsel, independent auditors, service providers and other experts or agents who need to know such information and are informed of the confidential nature of such information and are instructed to keep such information confidential in accordance with the provisions of this Section 7(a), it being understood that each Arranger shall be responsible for any violation of the provisions of this Section 7(a) by any such person, or (vi) to any other underwriter, initial purchaser or placement agent with respect to such Bank Financing. This undertaking by the Arrangers shall automatically terminate on the earlier of (x) one year following the completion of any Bank Financing or the termination of the Arrangers' engagement hereunder or (y) two years from the date hereof. Nothing in this letter agreement precludes any Arranger or its affiliates from using or disclosing any confidential information in connection with any suit, action or proceeding for the purpose of defending itself, reducing its liability or protecting or exercising any of its rights, remedies or interests.

(b) You agree that you will not disclose this letter agreement, the contents hereof or the activities of the Arrangers pursuant hereto to any person without the prior approval of the Arrangers, except that you may disclose this letter agreement and the contents hereof (i) to your shareholders, directors, employees, advisors and agents (including legal counsel, independent auditors and other experts, professional advisors or agents) who are directly involved in the consideration of this matter or (ii) as may be compelled in a judicial or administrative proceeding or as otherwise required by law (in which case you agree to inform us promptly thereof). Notwithstanding the foregoing, nothing herein shall prevent you from disclosing such information (x) in a manner consistent with the exceptions set forth in clauses (iii)

8

through (vi) in paragraph 7(a); <u>provided</u> that you accept responsibility for compliance by the persons referred to in such clause (v) with the provisions of this paragraph 7 or (y) as permitted by the last sentence of paragraph 7(a) immediately above, in the case of each of the foregoing clauses (x) and (y) substituting "you" for "the Arrangers" therein, in either case as applicable. In addition, following your acceptance hereof, you may disclose (A) the existence, but not the content, of this letter agreement in any public filing in connection with the Plan or the financing thereof to the extent customary or required by applicable law or regulation (and you agree that any such disclosure of any fees shall be subject to customary redactions) and (B) the terms of this letter agreement relating to fees and expenses, but only as part of generic disclosure regarding fees and expenses in the aggregate, including in any presentation of sources and uses in any offering and marketing materials or to the extent necessary or advisable in order to comply with your SEC disclosure obligations.

Notwithstanding anything to the contrary herein, any disclosure of the fees herein to obtain Bankruptcy Court approval shall only be made via a filing under seal and, to the extent required, by providing an unredacted copy thereof directly to the Bankruptcy Court, the Office of the United States Trustee or advisors to the Official Committee of Unsecured Creditors, the Official Committee of Tort Claimants and any other official committee established pursuant to Section 1102 on a confidential and professionals' eyes only basis; *provided*, *however*, that you shall be permitted to publicly disclose the fees payable hereunder, solely on an aggregate basis combined with all other fees payable by you in connection with the financing for which you are seeking the approval of the Bankruptcy Court.

The provisions contained in this paragraph 7 shall remain in full force and effect notwithstanding the termination of this letter agreement.

8. Governing Law and Submission to Jurisdiction. This letter agreement and any claim, controversy or dispute arising under or related to this letter agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York. EACH PARTY HERETO IRREVOCABLY AGREES TO WAIVE (TO THE FULLEST EXTENT PERMITTED BY LAW) TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY OR ON BEHALF OF ANY PARTY RELATED TO OR ARISING OUT OF THIS LETTER AGREEMENT OR THE PERFORMANCE OF SERVICES HEREUNDER.

Each of the parties hereto (for itself and its affiliates) agrees that any suit or proceeding arising in respect of this letter agreement or the Arrangers' agreements hereunder will be tried exclusively in (i) subject to clause (ii)(B), until the Effective Date (as defined in the Plan) of the Plan, the Bankruptcy Court and (ii)(A) thereafter or (B) if the Bankruptcy Court refuses to accept, or the Bankruptcy Court or any appellate court from the Bankruptcy Court determines in a final, non-appealable order that the Bankruptcy Court does not have, jurisdiction, any Federal court of the United States of America sitting in the Borough of Manhattan or, if that court does not have subject matter jurisdiction, in any state court located in the City and County of New York, and each party hereby submits to the exclusive jurisdiction of such court. Service of any process, summons, notice or document by registered mail addressed to you shall be effective service of process against such person for any suit, action or proceeding brought in any such court. Each of the parties hereto irrevocably and unconditionally waives any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding has been brought in an inconvenient forum. A final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding and may be enforced in any other courts to whose jurisdiction you are or may be subject, by suit upon judgment.

9. Absence of Fiduciary Relationship; Affiliates; Etc.

#92454619v27

As you know, each Arranger (together with its affiliates, the "**Affiliated Parties**") is a full service financial institution engaged, either directly or through its affiliates, in a broad array of activities, including commercial and investment banking, financial advisory, market making and trading, investment management (both public and private investing), investment research, principal investment, financial planning, benefits counseling, risk management, hedging, financing, brokerage and other financial and non-financial activities and services globally. In the ordinary course of their various business activities, the Affiliated Parties and funds or other entities in which the Affiliated Parties invest or with which they co-invest, may at any time purchase, sell, hold or vote long or short positions and investments in securities, derivatives, loans, commodities, currencies, credit default swaps and other financial instruments for their own account and for the accounts of their customers. In addition, the Affiliated Parties may at any time communicate independent recommendations and/or publish or express independent research views in respect of such assets, securities or instruments. Any of the aforementioned activities may involve or relate to assets, securities and/or instruments of you and/or other entities and persons which may (i) be involved in transactions arising from or relating to the arrangement contemplated by this letter agreement or (ii) have other relationships with you or your affiliates. In addition, the Affiliated Parties may provide investment banking, commercial banking, underwriting and financial advisory services to such other entities and persons. Although the Affiliated Parties in the course of such other activities and relationships may acquire information about the transactions contemplated by this letter agreement or other entities and persons which may be the subject of the financing contemplated by this letter agreement, the Affiliated Parties shall have no obligation to disclose such information, or the fact that the Affiliated Parties are in possession of such information, to you or to use such information on your behalf.

Consistent with the Affiliated Parties' policies to hold in confidence the affairs of their customers, the Affiliated Parties will not furnish confidential information obtained from you by virtue of the transactions contemplated by this letter agreement to any of their other customers and will treat confidential information relating to you and your affiliates with the same degree of care as they treat their own confidential information and in accordance with Section 7 hereof. Furthermore, you acknowledge that neither the Affiliated Parties nor any of their respective affiliates has an obligation to use in connection with the transactions contemplated by this letter agreement, or to furnish to you, confidential information obtained or that may be obtained by them from any other person.

Each of the Affiliated Parties may have economic interests that conflict with those of you, your equity holders and/or its affiliates. You agree that each Affiliated Party will act under this letter agreement as an independent contractor and that nothing in this letter agreement or otherwise will be deemed to create an advisory, fiduciary or agency relationship or fiduciary or other implied duty between the Affiliated Parties and you, your equity holders or your affiliates. You acknowledge and agree that the transactions contemplated by this letter agreement (including the exercise of rights and remedies hereunder and thereunder) are arm's-length commercial transactions between the Affiliated Parties, on the one hand, and you, on the other, and in connection therewith and with the process leading thereto, (i) the Affiliated Parties have not assumed (A) an advisory responsibility in favor of you, your equity holders or your affiliates with respect to the financing transactions contemplated hereby or (B) a fiduciary responsibility in favor of you, your equity holders or your affiliates with respect to the transactions contemplated hereby, or in each case, the exercise of rights or remedies with respect thereto or the process leading thereto (irrespective of whether the Affiliated Parties have advised, are currently advising or will advise you, your equity holders or your affiliates on other matters) or any other obligation to you except the obligations expressly set forth in this letter agreement and (ii) the Affiliated Parties are acting solely as principals and not as the agents or fiduciaries of you, your management, equity holders, affiliates, creditors or any other person. You acknowledge and agrees that you have consulted your own legal, tax, investment, accounting and financial advisors to the extent it deemed appropriate and that it is responsible for making its own independent judgment with respect to such transactions and the process leading thereto. To the fullest extent permitted by law, you agree that it will not bring any claim that the Affiliated Parties have breached

any fiduciary or similar duty to you with respect to the financing transactions contemplated hereby or owes a fiduciary or similar duty to you, in connection with such financing transactions or the process leading thereto. In addition, each Arranger may employ the services of its affiliates in providing services and/or performing its or their obligations hereunder and may, subject to Section 7, exchange with such affiliates information concerning you and other companies that may be the subject of this arrangement, and such affiliates will be entitled to the benefits afforded to such Arranger hereunder (it being understood that the persons to whom such disclosure is made will be informed of the confidential nature of such information and instructed to keep such information confidential). Notwithstanding the foregoing, nothing herein shall affect your rights in respect of any separate engagement of any Arranger, including as financial advisor, in connection with the Transactions or any other matter.

You further acknowledge that certain of the Arrangers and/or certain of their respective affiliates currently are acting as lenders and as the administrative agent under certain of your credit agreements, and your and your affiliates' rights and obligations under any other agreement with any Arranger or any of its affiliates that currently exist or hereafter may exist are, and shall be, separate and distinct from the rights and obligations of the parties pursuant to this letter agreement, and none of such rights and obligations under such other agreements shall be affected by any Arranger's performance or lack of performance of services hereunder. You hereby agree that each Arranger may render its services under this letter agreement notwithstanding any actual or potential conflict of interest presented by the foregoing, and you agree that you will not claim any conflict of interest relating to the relationship among such Arranger and you and your affiliates in connection with the services contemplated hereby, on the one hand, and the exercise by any Arranger or any of its affiliates of any of their rights and duties under any credit agreement or other agreement on the other hand.

In addition, please note that the Affiliated Parties do not provide accounting, tax or legal advice.

10. <u>Miscellaneous</u>. This letter agreement contains the entire agreement between the parties relating to the subject matter hereof and supersedes all oral statements and prior writings with respect thereto. This letter agreement may not be amended or modified except by a writing executed by each of the parties hereto. Paragraph headings herein are for convenience only and are not a part of this letter agreement. This letter agreement is solely for the benefit of you and the Arrangers, and no other person (except for indemnified persons, to the extent set forth in Section 4) shall acquire or have any rights under or by virtue of this letter agreement. This letter agreement may not be assigned by you without the prior written consent of the Arrangers. You further acknowledge and agree that in accordance with the requirements of the USA PATRIOT Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) and the requirements of the beneficial ownership regulation (31 C.F.R. § 1010.230), each Arranger is required to obtain, verify and record information that identifies their respective clients, including you, which information may include the name and address of their respective clients, as well as other information that will allow such Arranger to properly identify their respective clients.

If any term, provision, covenant or restriction contained in this letter agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions, covenants and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated. You and the Arrangers shall endeavor in good faith negotiations to replace the invalid, void or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, void or unenforceable provisions.

This letter agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

#92454619v27

[*Signature pages follow*]

12

#92454619v27

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate space below and returning to the Arrangers an executed copy hereof, whereupon this letter shall become a binding agreement between us.

Very truly yours,

JPMORGAN CHASE BANK, N.A.

By: _____
Name: Sandeep S. Parihar
Title: Executive Director

**BARCLAYS BANK PLC**

By:_____
Name: Sydney G. Dennis
Title: Director

*[Signature Page to Bank Financing Engagement Letter]*

**BofA SECURITIES, INC.**

By: _____

Name:

Title:        **Sanjay Rijhwani**
               **Managing Director**

**CITIGROUP GLOBAL MARKETS INC.**

By: _____

Name:  Carolyn Kee
Title: Managing Director

**GOLDMAN SACHS BANK USA**

By: _____
Name:
Title:
         Charles D. Johnston
         Authorized Signatory




**GOLDMAN SACHS LENDING PARTNERS LLC**

By: _____
Name:
Title:
         Charles D. Johnston
         Authorized Signatory

Accepted and agreed to as of
the date first above written:

**PG&E CORPORATION**

By: _Jason P. Wells_
    Name: Jason P. Wells
    Title: EVP & CFO

**PACIFIC GAS AND ELECTRIC COMPANY**

By:_____
    Name:
    Title:

Accepted and agreed to as of
the date first above written:

**PG&E CORPORATION**

By:_____
    Name:
    Title:

**PACIFIC GAS AND ELECTRIC COMPANY**

By: *David Shma*
    Name: David Thomason
    Title: CFO rCmtroller