| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Ray C. Schrock, P.C. (*pro hac vice*)<br>(ray.schrock@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | CRAVATH, SWAINE & MOORE LLP<br>Paul H. Zumbro (*pro hac vice*)<br>(pzumbro@cravath.com)<br>Kevin J. Orsini (*pro hac vice*)<br>(korsini@cravath.com)<br>Omid H. Nasab (*pro hac vice*)<br>(onasab@cravath.com)<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212 474 1000<br>Fax: 212 474 3700 |

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**PG&E CORPORATION,**<br><br>- and -<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br><br>**Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors<br><br>*\* All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br>(Lead Case)<br>(Jointly Administered)<br><br>**DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 107(B) AND BANKRUPTCY RULE 9018 FOR ENTRY OF AN ORDER AUTHORIZING (I) THE FILING UNDER SEAL OF THE BRIDGE FEE LETTERS AND (II) THE REDACTION OF CERTAIN PORTIONS OF THE DEBT FINANCING ENGAGEMENT LETTERS**<br><br>[No Hearing Requested] |

PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 1001-2(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**") and the *New District Wide Procedures for Electronically Filing Sealed and Redacted Documents* adopted by the United States Bankruptcy Court for the Northern District of California (the "**Local Procedures**"), for entry of an order (i) authorizing the Debtors to file the Bridge Fee Letters (as defined below) under seal and the Debt Financing Engagement Letters (as defined below) with certain portions (the "**Redacted Portions**") under seal, in each case related to the *Debtors' Motion for Entry of Orders (i) Approving Terms of, and Debtors' Entry into and Performance Under, Exit Financing Commitment Letters and (ii) Authorizing Incurrence, Payment and Allowance of Related Fees and/or Premiums, Indemnities, Costs and Expenses as Administrative Expense Claims* (the "**Exit Financing Commitment Motion**"),[1] filed contemporaneously herewith, and (ii) directing that the Bridge Fee Letters and the Redacted Portions of the Debt Financing Engagement Letters shall remain under seal and confidential and not be made available to anyone (except for the parties identified in the immediately following sentence) without the consent of the Debtors and the other parties to the Bridge Fee Letters and the Debt Financing Engagement Letters or further order from the Court. The Debtors shall provide the Bridge Fee Letters and the Redacted Portions of the Debt Financing Engagement Letters to the Court, the Office of the United States Trustee for the Northern District of California (the "**U.S. Trustee**") and to advisors to the Official Committee of Unsecured Creditors, the Official Committee of Tort Claimants and any other official committee established pursuant to section 1102 of the Bankruptcy Code on a confidential and professionals' eyes only basis.

---

[1] Capitalized terms used but not defined in this Motion shall have the meaning used in the Exit Financing Commitment Motion.

In support of the Motion, the Debtors respectfully submit the Declaration of Kenneth S. Ziman (the "**Ziman Declaration**"), filed contemporaneously herewith. A proposed form of order granting the relief requested herein is submitted concurrently herewith in accordance with the Local Procedures (the "**Proposed Order**").

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

Contemporaneously herewith, the Debtors have filed the Exit Financing Commitment Motion seeking, among other things, approval by the Court of:

- that certain Commitment Letter dated as of October 4, 2019 (the "**PG&E Corp. Bridge Commitment Letter**"), by and among PG&E Corp., the Utility, JPMorgan Chase Bank, N.A. ("**JPMorgan**"), Bank of America, N.A. ("**BANA**"), BofA Securities, Inc. ("**BofA**" and, together with BANA, "**Bank of America**"), Barclays Bank PLC ("**Barclays**"), Citigroup Global Markets Inc. ("**Citi**"), Goldman Sachs Bank USA ("**GS Bank**") and Goldman Sachs Lending Partners LLC (together with GS Bank, "**Goldman Sachs**"; JPMorgan, Bank of America, Barclays, Citi and Goldman Sachs, collectively, the "**Initial Bridge Commitment Parties**"[2]);

- that certain Commitment Letter dated as of October 4, 2019 (the "**Utility Bridge Commitment Letter**" and, together with the PG&E Corp. Bridge Commitment Letter, the "**Bridge Commitment Letters**"), by and among PG&E Corp., the Utility and the Initial Bridge Commitment Parties;

- that certain Fee Letter dated as of October 4, 2019 (the "**PG&E Corp. Bridge Fee Letter**"), by and among PG&E Corp., the Utility and the Initial Bridge Commitment Parties;

---

[2] The Initial Bridge Commitment Parties, together with any other parties that become party to the Debt Commitment Letters as additional "Commitment Parties", are collectively referred to as the "**Bridge Commitment Parties**", and the Bridge Commitment Parties and the Equity Backstop Parties are collectively referred to as the "**Exit Commitment Parties**".

- that certain Fee Letter dated as of October 4, 2019 (the "**Utility Bridge Fee Letter**" and, together with the PG&E Corp. Bridge Fee Letter, the "**Bridge Fee Letters**"), by and among PG&E Corp., the Utility and the Initial Bridge Commitment Parties;

- that certain Securities Engagement Letter dated as of October 4, 2019 (the "**Securities Engagement Letter**"), by and among PG&E Corp., the Utility, J.P. Morgan Securities LLC, Barclays Capital Inc., BofA, Citi and Goldman Sachs & Co. LLC; and

- that certain Bank Financing Engagement Letter dated as of October 4, 2019 (the "**Bank Financing Engagement Letter**" and, together with the Securities Engagement Letter, the "**Debt Financing Engagement Letters**")[3], by and among PG&E Corp., the Utility, JPMorgan, Barclays, BofA, Citi and Goldman Sachs.

Pursuant to the terms of the Bridge Commitment Letters, the Initial Bridge Commitment Parties have agreed, subject to the terms and conditions thereof, to backstop the incurrence of $34.35 billion in senior debt obligations (the "**New Debt**") contemplated by the Debtors' Joint Chapter 11 Plan of Reorganization, which will be used, among other things, to refinance pre-petition high-coupon Utility bonds and fund the payment in full, in cash, of the Debtors' obligations under their debtor-in-possession financing facilities. The Bridge Fee Letters provide for the payment of certain fees to the Initial Bridge Commitment Parties, and set forth certain "market flex" provisions, which describe permitted modifications to the Bridge Facilities in the interest of achieving a successful syndication of the Initial Bridge Commitment Parties' commitments with respect to the Bridge Facilities. (Ziman Decl. ¶ 6.) The Debt Financing Engagement Letters engage the Initial Bridge Commitment Parties (or their affiliates) in connection with the New Debt incurrences, which are contemplated to occur closer to the Effective Date.

---

[3] The Bridge Commitment Letters, the Bridge Fee Letters and the Debt Financing Engagement Letters are collectively referred to herein as the "**Debt Financing Commitment Letters**".

Because the Bridge Fee Letters and Redacted Portions of the Debt Financing Engagement Letters include sensitive and confidential commercial information, the Debtors and the Initial Bridge Commitment Parties agreed that the Bridge Fee Letters would not be publicly disclosed and that the Redacted Portions of the Debt Financing Engagement Letters would be redacted from the publicly filed Debt Financing Engagement Letters. (*Id*. at ¶ 7.) The Initial Bridge Commitment Parties have, however, consented to the Debtors filing the Bridge Fee Letters and the Redacted Portions of the Debt Financing Engagement Letters under seal with the Court and providing the Bridge Fee Letters and the Redacted Portions of the Debt Financing Engagement Letters to the U.S. Trustee and advisors to the Official Committee of Unsecured Creditors, the Official Committee of Tort Claimants and any other official committee established pursuant to section 1102 of the Bankruptcy Code on a confidential and professionals' eyes only basis. (*Id*.)

## III.  BASIS FOR RELIEF REQUESTED

Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 107(b) further provides:

> On request of a party in interest, the bankruptcy court *shall*, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (1) protect an entity with respect to a trade secret or *confidential* research, development, or *commercial information* . . . .

11 U.S.C. § 107(b) (emphasis added). Parsing the language of 107(b), courts have emphasized that once the court determines that the information falls within one of the enumerated 107(b) categories, the court "is *required* to protect [the movant] and has no discretion to deny the application". *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994). In addition, section 107(b) expressly authorizes the court to grant protection, where warranted, to the confidential commercial information of "an entity". 11 U.S.C. § 107(b). Unlike its counterpart Rule 26(c) of the Federal Rules of Civil Procedure, section 107(b) of the Bankruptcy Code does not require the movant to demonstrate "good cause".

*Orion Pictures Corp.*, 21 F.3d at 28. Indeed, under section 107(b) the movant need only show "that the information it [seeks] to seal [is] 'confidential' and 'commercial' in nature". *Id.* at 27. Commercial information is broadly defined to include information that would produce "an unfair advantage to competitors by providing them information as to the commercial operations" of the entity seeking protection, *see In re Itel Corp.*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982), or information that could have a "chilling effect on [business] negotiations, ultimately affecting the viability of Debtors", *see In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (quoting *In re Lomas Fin. Corp.*, No. 90 Civ. 7827 (LLS), 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991)). Significantly, commercial information need not rise to the level of a trade secret to warrant section 107(b)'s protection. *See Orion Pictures Corp.*, 21 F.3d at 28 (finding that "§ 107(b) is carefully drafted to avoid merging 'trade secrets' with 'confidential commercial information'").

The Bankruptcy Rules similarly authorize the Court to "make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other *confidential* research, development, or *commercial information*." Fed. R. Bankr. P. 9018 (emphasis added), *see also In re Global Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y 2003) ("[T]he whole point of [Bankruptcy Rule 9018] is to protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury"). Finally, Local Procedures require that a request for seal is narrowly tailored to sealable materials. *New District Wide Procedures For Electronically Filing Sealed and Redacted Documents*. Because the Bridge Fee Letters and the Redacted Portions of the Debt Financing Engagement Letters contain confidential commercial information within the scope of section 107(b), this Court should grant the Debtors' request.

Both the Bridge Fee Letters and the Debt Financing Engagement Letters are the product of arm's length, extensive and good faith negotiations, and due to the commercially sensitive nature of the pricing and economic terms included in each, the public disclosure of either the Bridge Fee Letters or the Redacted Portions of the Debt Financing Engagement Letters would likely cause substantial harm to the Debtors and the Initial Bridge Commitment Parties and create an unfair advantage for competitors of the Initial Bridge Commitment Parties. (*See* Ziman Decl. ¶¶ 6-7.) Accordingly, the Debtors agreed to keep the Bridge Fee Letters and the Redacted Portions of the Debt

Financing Engagement Letters confidential. (*Id*.) In the competitive lending and investment banking industry, the disclosure of this information would put the Initial Bridge Commitment Parties at a distinct competitive disadvantage by constraining their ability to negotiate fees and related provisions in future transactions. Further, because exit financings are only a small fraction of all syndicated financings arranged by the Initial Bridge Commitment Parties, requiring them to disclose certain fee information in this context but not in others could have a "chilling effect" that discourages them and other competitor institutions from providing exit financing on terms favorable to the Debtors. Finally, broad disclosure of the agreed upon fees coupled with the market flex and other sealed or redacted provisions could jeopardize the Debtors' ability to obtain the Bridge Facilities or the New Debt or otherwise ensure the availability of exit financing by the AB 1054 deadline on the best terms available for the Debtors' estates. Armed with knowledge of such terms, prospective lenders could insist on the maximum market flex that the Debtors would be obligated to accept in accordance with the terms of the Bridge Fee Letters. (*Id*. ¶ 6.)

It is a widespread practice for courts to authorize the filing of similar confidential financing information under seal. *See, e.g.*, *In re Hexion Holdings LLC*, No. 19-10684 (KG), at 2 (Bankr. D. Del. June 7, 2019) (ECF No. 553) ("The Debtors are authorized to file the Fee Letters and the Notes Engagement Letter under seal and to redact information concerning the fees payable in the form of Notes Engagement Letter annexed to the Motion."); *In re Avaya Inc.*, No. 17-10089 (SMB), at 2 (Bankr. S.D.N.Y Oct. 25, 2017) (ECF No. 1388) ("The Debtors are authorized to file the Exit Fee Letter under seal . . . ."); *In re Optima Specialty Steel, Inc.*, No. 16-12789 (KJC), at 4 (Bankr. D. Del. June 29, 2017) (ECF No. 899) ("The Debtors are authorized to file the Fee Letter under seal . . ."); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI), at 1 (Bankr. S.D. Tex. Feb. 13, 2017) (ECF No. 1125) ("The Debtors are authorized to file in redacted form or under seal the Exit Financing Agreements [including Fee Letters and the Engagement Letter] and Exit Financing Motion."); *In re Homer City Generation, L.P.*, No. 17-10086 (MFW), at 2 (Bankr. D. Del. Jan. 18, 2017) (ECF No. 84) ("The Debtor is authorized to file the Documents [including the Engagement Letter] under seal."); *In re Rotech Healthcare Inc.*, No. 13-10741 (PJW), at 4 (Bankr. D. Del. July 29, 2013) (ECF No. 762) ("[T]he Debtors are authorized to file the First Lien Credit Facilities Fee Letter under seal . . . ."); *In*

*re Smurfit-Stone Container Corp.*, No. 09-10235 (BLS), at 3 (Bankr. D. Del. Feb. 16, 2010) (ECF No. 5056) ("[T]he Debtors are authorized to file the Fee Letters under seal . . . ."); *In re Tribune Co.*, No. 08-13141 (KJC), at 2 (Bankr. D. Del. Dec. 10, 2008) (ECF No. 62) ("Movants are authorized to file the Fee Letters under seal . . . ."); and *In re Adelphia Communications Corp.*, No. 02-41729 (REG), at 2 (Bankr. S.D.N.Y. Mar. 24, 2004) (ECF No. 4260) ("[T]he Confidential Materials [including the Engagement Letter and Fee Letter] . . . shall remain confidential, [and] be filed under seal . . . .").

The Debtors and the Initial Bridge Commitment Parties fully acknowledge the paramount importance of the policy of open access to courts underlying section 107(a)—"[e]xcept as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). In this spirit, the Debtors have narrowly tailored their request to filing the Bridge Fee Letters and only certain portions of the Debt Financing Engagement Letters with the Court under seal according to the Local Procedures, and propose to share copies of the Bridge Fee Letters and the Redacted Portions of the Debt Financing Engagement Letters with the U.S. Trustee and advisors to the Official Committee of Unsecured Creditors, the Official Committee of Tort Claimants and any other official committee established pursuant to section 1102 of the Bankruptcy Code on a confidential and professionals' eyes only basis.

IV. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Andrew Vara, Esq. and Timothy Laffredi, Esq.); (ii) counsel to the Creditors Committee; (iii) counsel to the Tort Claimants Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Office of the California Attorney General; (vii) the California Public Utilities Commission; (viii) the Nuclear Regulatory Commission; (ix) the Federal Energy Regulatory Commission; (x) the Office of the United States Attorney for the Northern District of California; (xi) counsel for the agent under the Debtors' debtor-in-possession financing facilities; (xii) counsel for the Initial Bridge Commitment Parties; and (xiii) those persons who have

formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). The Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors.

[*Signature on next page*]

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: October 23, 2019

**WEIL, GOTSHAL & MANGES LLP**
**CRAVATH, SWAINE & MOORE LLP**
**KELLER & BENVENUTTI LLP**

/s/ *Paul H. Zumbro*

Paul H. Zumbro

*Attorneys for Debtors and Debtors in Possession*